

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, individually and as
natural guardian of plaintiff Jamie A. Sokolow,
RENA M. SOKOLOW, individually and as
natural guardian of plaintiff Jamie A. Sokolow,
JAMIE A. SOKOLOW, minor, by her next
friends and guardians Mark I. Sokolow and Rena
M. Sokolow,

LAUREN M. SOKOLOW,
ELANA R. SOKOLOW,
SHAYNA EILEEN GOULD,
RONALD ALLAN GOULD,
ELISE JANET GOULD,
JESSICA RINE,
SHMUEL WALDMAN,
HENNA NOVACK WALDMAN,
MORRIS WALDMAN,
EVA WALDMAN,

DR. ALAN J. BAUER, individually and as
natural guardian of plaintiffs Yehonathon Bauer,
Binyamin Bauer, Daniel Bauer and Yehuda Bauer,
REVITAL BAUER, individually and as natural
guardian of plaintiffs Yehonathon Bauer, Binyamin
Bauer, Daniel Bauer and Yehuda Bauer,
YEHONATHON BAUER, minor, by his next
friends and guardians Dr. Alan J. Bauer and
Revital Bauer,
BINYAMIN BAUER, minor, by his next friends
and guardians Dr. Alan J. Bauer and Revital Bauer,
DANIEL BAUER, minor, by his next friends and
guardians Dr. Alan J. Bauer and Revital Bauer,
YEHUDA BAUER, minor, by his next friends
and guardians Dr. Alan J. Bauer and Revital Bauer,

RABBI LEONARD MANDELKORN,
SHAUL MANDELKORN,
NURIT MANDELKORN,

OZ JOSEPH GUETTA, minor, by his next friend
and guardian Varda Guetta
VARDA GUETTA, individually and as natural
guardian of plaintiff Oz Joseph Guetta,

Civil Action No.:
1:04-cv-00397-GBD

**FIRST AMENDED COMPLAINT**

ROBERT L. COULTER, SR., individually and
as personal representative of the Estate of Janis
Ruth Coulter,
DIANNE COULTER MILLER,
ROBERT L. COULTER, JR.,

DR. LARRY CARTER, individually and as
personal representative of the Estate of Diane
("Dina") Carter,
SHAUN COFFEL,

DR. RICHARD BLUTSTEIN, individually and
as personal representative of the Estate of
Benjamin Blutstein,
DR. KATHERINE BAKER, individually and
as personal representative of the Estate of
Benjamin Blutstein,
REBEKAH BLUTSTEIN,

NORMAN GRITZ, individually and as
personal representative of the Estate of David
Gritz,
NEVENKA GRITZ, individually and as
personal representative of the Estate of David
Gritz,

KAREN GOLDBERG, individually, as personal
representative of the Estate of Stuart Scott
Goldberg and as natural guardian of plaintiffs
Chana Bracha Goldberg, Esther Zahava Goldberg,
Yitzhak Shalom Goldberg, Shoshana Malka
Goldberg, Eliezer Simcha Goldberg, Yaakov
Moshe Goldberg and Tzvi Yehoshua Goldberg,
CHANA BRACHA GOLDBERG, minor, by
her next friend and guardian Karen Goldberg,
ESTHER ZAHAVA GOLDBERG, minor, by
her next friend and guardian Karen Goldberg,
YITZHAK SHALOM GOLDBERG, minor, by
his next friend and guardian Karen Goldberg,
SHOSHANA MALKA GOLDBERG, minor, by
her next friend and guardian Karen Goldberg,
ELIEZER SIMCHA GOLDBERG, minor,
by his next friend and guardian Karen Goldberg,
YAAKOV MOSHE GOLDBERG minor, by his
next friend and guardian Karen Goldberg, and

TZVI YEHOSHUA GOLDBERG minor, by his
next friend and guardian Karen Goldberg

                        Plaintiffs,

      vs.

THE PALESTINE LIBERATION
ORGANIZATION,
THE PALESTINIAN AUTHORITY (a/k/a
"The Palestinian Interim Self-Government
Authority" and/or "The Palestinian Council"
and/or "The Palestinian National Authority"),
and JOHN DOES 1-99

               Defendants.

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1.     This is a civil action pursuant to the Antiterrorism Act, 18 U.S.C. §2331 *et. seq.*,

and supplemental causes of action, brought by United States citizens, and by the guardians,

family members and the personal representatives of the estates of United States citizens, who

were killed and injured in a series of terrorist attacks carried out by defendants between January

8, 2001 and January 29, 2004, in or near Jerusalem, Israel.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter and over defendants pursuant to 18

U.S.C. §§2333 and 2334 and the rules of supplemental jurisdiction.

3.     The Southern District of New York is the proper venue for this action pursuant to

18 U.S.C. §2334(a) since defendants Palestinian Authority and Palestine Liberation Organization

maintain an office and agent in this district and are resident in this district.

## THE PARTIES

4.    Plaintiff MARK I. SOKOLOW was severely harmed by a terrorist bombing planned and carried out by defendants on January 27, 2002, in Jerusalem, Israel (hereinafter: "the January 27, 2002 bombing"), and is, and at all times relevant hereto was, an American citizen. Plaintiff MARK I. SOKOLOW brings this action individually and on behalf of his minor daughter, plaintiff JAMIE A. SOKOLOW.

5.    Plaintiff RENA M. SOKOLOW was severely harmed by the January 27, 2002 bombing, and is, and at all times relevant hereto was, an American citizen.  Plaintiff RENA M. SOKOLOW brings this action individually and on behalf of her minor daughter, plaintiff JAMIE A. SOKOLOW.

6.    Plaintiff JAMIE A. SOKOLOW was severely harmed by the January 27, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the minor daughter of plaintiffs MARK I. SOKOLOW and RENA M. SOKOLOW and the sister of plaintiffs LAUREN M. SOKOLOW and ELANA R. SOKOLOW.

7.    Plaintiff LAUREN M. SOKOLOW was severely harmed by the January 27, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the daughter of plaintiffs MARK I. SOKOLOW and RENA M. SOKOLOW and the sister of plaintiffs ELANA R. SOKOLOW and JAMIE A. SOKOLOW.

8.    Plaintiff ELANA R. SOKOLOW was severely harmed by the January 27, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the daughter of plaintiffs MARK I. SOKOLOW and RENA M. SOKOLOW and the sister of plaintiffs LAUREN M. SOKOLOW and JAMIE A. SOKOLOW.

9.    Plaintiff SHAYNA EILEEN GOULD (hereinafter: "SHAYNA GOULD") was severely harmed by a terrorist shooting attack planned and carried out by defendants on January 22, 2002, in Jerusalem, Israel (hereinafter: "the January 22, 2002 shooting attack"), and is, and at all times relevant hereto was, an American citizen.

10.    Plaintiff RONALD ALLAN GOULD (hereinafter: "RONALD GOULD") was severely harmed by the January 22, 2002 shooting attack and is, and at all times relevant hereto was, an American citizen and the father of plaintiff SHAYNA GOULD.

11.    Plaintiff ELISE JANET GOULD (hereinafter: "ELISE GOULD") was severely harmed by the January 22, 2002 shooting attack and is, and at all times relevant hereto was, an American citizen and the mother of plaintiff SHAYNA GOULD.

12.    Plaintiff JESSICA RINE was severely harmed by the January 22, 2002 shooting attack and is, and at all times relevant hereto was, an American citizen and the sister of plaintiff SHAYNA GOULD.

13.    Plaintiff SHMUEL WALDMAN was severely harmed by the January 22, 2002 shooting attack and is, and at all times relevant hereto was, an American citizen.

14.    Plaintiff HENNA NOVACK WALDMAN (hereinafter: "HENNA WALDMAN") was severely harmed by the January 22, 2002 shooting attack and is, and at all times relevant hereto was, an American citizen and the wife of plaintiff SHMUEL WALDMAN.

15.    Plaintiff MORRIS WALDMAN was severely harmed by the January 22, 2002 shooting attack and is, and at all times relevant hereto was, an American citizen and the father of plaintiff SHMUEL WALDMAN.

16.    Plaintiff EVA WALDMAN was severely harmed by the January 22, 2002 shooting attack and is, and at all times relevant hereto was, an American citizen and the mother of plaintiff SHMUEL WALDMAN.

17.    Plaintiff DR. ALAN J. BAUER was severely harmed by a terrorist bombing planned and carried out by defendants on March 21, 2002, in Jerusalem, Israel ("the March 21, 2002 bombing"), and is, and at all times relevant hereto was, an American citizen. Plaintiff DR. ALAN J. BAUER brings this action individually and on behalf of his minor children, plaintiffs YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER.

18.    Plaintiff REVITAL BAUER was severely harmed by the March 21, 2002 bombing, and is, and at all times relevant hereto was, the wife of plaintiff DR. ALAN J. BAUER. Plaintiff REVITAL BAUER brings this action individually and on behalf of her minor children, plaintiffs YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER.

19.    Plaintiff YEHONATHON BAUER was severely harmed by the March 21, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the minor son of plaintiffs DR. ALAN J. BAUER and REVITAL BAUER.

20.    Plaintiff BINYAMIN BAUER was severely harmed by the March 21, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the minor son of plaintiffs DR. ALAN J. BAUER and REVITAL BAUER.

21.    Plaintiff DANIEL BAUER was severely harmed by the March 21, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the minor son of plaintiffs DR. ALAN J. BAUER and REVITAL BAUER.

22.    Plaintiff YEHUDA BAUER was severely harmed by the March 21, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the minor son of plaintiffs DR. ALAN J. BAUER and REVITAL BAUER.

23.    Plaintiff RABBI LEONARD MANDELKORN was severely harmed by a terrorist bombing planned and carried out by defendants on June 19, 2002, in Jerusalem, Israel ("the June 19, 2002 bombing"), and is, and at all times relevant hereto was, an American citizen and the father of plaintiff SHAUL MANDELKORN.

24.    Plaintiff SHAUL MANDELKORN was severely harmed by the June 19, 2002 bombing, and is, and at all times relevant hereto was, the son of plaintiffs RABBI LEONARD MANDELKORN and NURIT MANDELKORN.

25.    Plaintiff NURIT MANDELKORN was severely harmed by the June 19, 2002 bombing, and is, and at all times relevant hereto was, the mother of plaintiff SHAUL MANDELKORN.

26.    Plaintiff OZ JOSEPH GUETTA (hereinafter: "JOSEPH GUETTA") was severely harmed by a terrorist shooting attack planned and carried out by defendants on January 8, 2001, near Jerusalem, Israel ("the January 8, 2001 shooting attack"), and is, and at all times relevant hereto was, an American citizen and the minor son of plaintiff VARDA GUETTA.

27.    Plaintiff VARDA GUETTA was severely harmed by the January 8, 2001 shooting attack, and is, and at all times relevant hereto was, the mother of plaintiff JOSEPH GUETTA. Plaintiff VARDA GUETTA brings this action individually and on behalf of her minor son JOSEPH GUETTA.

28.    Plaintiff ROBERT L. COULTER, SR. was severely harmed by a terrorist bombing planned and carried out by defendants on July 31, 2002, in Jerusalem, Israel ("the July

31, 2002 bombing"), and is, and at all times relevant hereto was, an American citizen. Plaintiff ROBERT L. COULTER, SR. is the father of American citizen Janis Ruth Coulter, who was murdered in the July 31, 2002 bombing, and brings this action individually and as the personal representative of the Estate of Janis Ruth Coulter.

29.    Plaintiff DIANNE COULTER MILLER was severely harmed by the July 31, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the sister of decedent Janis Ruth Coulter.

30.    Plaintiff ROBERT L. COULTER, JR. was severely harmed by the July 31, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the brother of decedent Janis Ruth Coulter.

31.    Plaintiff DR. LARRY CARTER was severely harmed by the July 31, 2002 bombing, and is, and at all times relevant hereto was, an American citizen. Plaintiff DR. LARRY CARTER is the father of American citizen Diane ("Dina") Carter, who was murdered in the July 31, 2002 bombing, and brings this action individually and as the personal representative of the Estate of Diane ("Dina") Carter.

32.    Plaintiff SHAUN COFFEL was severely harmed by the July 31, 2002 bombing, and is, and at all times relevant hereto was, an American citizen and the sister of decedent Janis Diane ("Dina") Carter.

33.    Plaintiff DR. RICHARD BLUTSTEIN was severely harmed by the July 31, 2002 bombing, and is, and at all times relevant hereto was, an American citizen. Plaintiff DR. RICHARD BLUTSTEIN is the father of American citizen Benjamin Blutstein, who was murdered in the July 31, 2002 bombing, and brings this action individually and as the personal representative of the Estate of Benjamin Blutstein.

34.    Plaintiff DR. KATHERINE BAKER was severely harmed by the July 31, 2002

bombing, and is, and at all times relevant hereto was, an American citizen.  Plaintiff DR.

KATHERINE BAKER is the mother of American citizen Benjamin Blutstein, who was

murdered in the July 31, 2002 bombing, and brings this action individually and as the personal

representative of the Estate of Benjamin Blutstein.

35.    Plaintiff REBEKAH BLUTSTEIN was severely harmed by the July 31, 2002

bombing, and is, and at all times relevant hereto was, an American citizen and the sister of

decedent Benjamin Blutstein.

36.    Plaintiff NORMAN GRITZ was severely harmed by the July 31, 2002 bombing,

and is, and at all times relevant hereto was, an American citizen.  Plaintiff NORMAN GRITZ is

the father of American citizen David Gritz, who was murdered in the July 31, 2002 bombing, and

brings this action individually and as the personal representative of the Estate of David Gritz.

37.    Plaintiff NEVENKA GRITZ was severely harmed by the July 31, 2002 bombing.

Plaintiff NEVENKA GRITZ is the mother of American citizen David Gritz, who was murdered

in the July 31, 2002 bombing, and brings this action individually and as the personal

representative of the Estate of David Gritz.

38.    Plaintiff KAREN GOLDBERG was severely harmed by a terrorist bombing

planned and carried out by defendants on January 29, 2004, in Jerusalem, Israel ("the January 29,

2004 bombing"), and is, and at all times relevant hereto was, an American citizen.  Plaintiff

KAREN GOLDBERG is the wife of Stuart Scott Goldberg, who was murdered in the January 29,

2004 bombing, and brings this action individually, as the personal representative of the Estate of

Stuart Scott Goldberg and as natural guardian of her minor children plaintiffs Chana Bracha

Goldberg, Esther Zahava Goldberg, Yitzhak Shalom Goldberg, Shoshana Malka Goldberg,

Eliezer Simcha Goldberg, Yaakov Moshe Goldberg and Tzvi Yehoshua Goldberg.

39.    Plaintiff CHANA BRACHA GOLDBERG was severely harmed by the January

29, 2004 bombing, and is, and at all times relevant hereto was, an American citizen and the

minor daughter of plaintiff KAREN GOLDBERG and decedent Stuart Scott Goldberg.

40.    Plaintiff ESTHER ZAHAVA GOLDBERG was severely harmed by the January

29, 2004 bombing, and is, and at all times relevant hereto was, an American citizen and the

minor daughter of plaintiff KAREN GOLDBERG and decedent Stuart Scott Goldberg.

41.    Plaintiff YITZHAK SHALOM GOLDBERG was severely harmed by the January

29, 2004 bombing, and is, and at all times relevant hereto was, an American citizen and the

minor son of plaintiff KAREN GOLDBERG and decedent Stuart Scott Goldberg.

42.    Plaintiff SHOSHANA MALKA GOLDBERG was severely harmed by the

January 29, 2004 bombing, and is, and at all times relevant hereto was, an American citizen and

the minor daughter of plaintiff KAREN GOLDBERG and decedent Stuart Scott Goldberg.

43.    Plaintiff ELIEZER SIMCHA GOLDBERG was severely harmed by the January

29, 2004 bombing, and is, and at all times relevant hereto was, an American citizen and the

minor son of plaintiff KAREN GOLDBERG and decedent Stuart Scott Goldberg.

44.    Plaintiff YAAKOV MOSHE GOLDBERG was severely harmed by the January

29, 2004 bombing, and is, and at all times relevant hereto was, an American citizen and the

minor son of plaintiff KAREN GOLDBERG and decedent Stuart Scott Goldberg.

45.    Plaintiff TZVI YEHOSHUA GOLDBERG was severely harmed by the January

29, 2004 bombing, and is, and at all times relevant hereto was, an American citizen and the

minor son of plaintiff KAREN GOLDBERG and decedent Stuart Scott Goldberg.

46.    Defendant THE PALESTINE LIBERATION ORGANIZATION (hereinafter "PLO") is and at all times relevant hereto was, a legal person as defined in 18 U.S.C. §2331(3).

47.    Defendant THE PALESTINIAN AUTHORITY, also known as The Palestinian Interim Self-Government Authority and/or The Palestinian National Authority and/or The Palestinian Council (hereinafter "PA") is and at all times relevant hereto was, a legal person as defined in 18 U.S.C. §2331(3).

48.    Defendants JOHN DOES 1-99 are natural and/or juridical persons who/which are organs and/or agencies and/or instrumentalities and/or alter egos and/or agents and/or employees and/or co-conspirators of the other defendants. Defendants JOHN DOES 1-99 conspired, agreed and acted in concert with the other defendants to plan and carry out the terrorist attacks described herein, and planned and carried out the terrorist attacks described herein in concert and agreement with the other defendants, and/or pursuant to the directives, instructions, authorization, solicitation and/or inducement of the other defendants and/or with substantial aid, assistance and/or material support and resources provided for that purpose by the other defendants.

## STATEMENT OF FACTS

49.    Since its establishment in the 1960s and until the present day, defendant PLO has funded, planned and carried out thousands of terrorist bombings and shootings, resulting in the deaths of hundreds of innocent civilians and the wounding of thousands more. Dozens of United States citizens have been murdered, and scores more wounded, by terrorist attacks carried out by defendant PLO. Congress has explicitly found that "the PLO and its constituent groups have taken credit for, and been implicated in, the murders of dozens of American citizens abroad." 22 U.S.C. §5201. At all times relevant hereto, the PLO has carried out and utilized these terrorist

11

attacks as an established and systematic policy and practice, as a means of advancing and achieving its political goals.

50.    Since its establishment in 1994 and until the present day, defendant PA has planned and carried out hundreds of terrorist bombings and shootings, resulting in the deaths of hundreds of civilians and the wounding of thousands more. Several United States citizens have been murdered, and many more wounded, by terrorist attacks carried out by defendant PA. At all times relevant hereto, the PA has carried out and utilized these terrorist attacks as an established and systematic policy and practice, as a means of advancing and achieving its political goals.

51.    At all times relevant hereto, defendants PLO and PA planned and carried out terrorist attacks against civilians through their officials, agents and employees. These officials, agents and employees were and are organized into various specially-trained units and cells, which plan and execute terrorist attacks on behalf of and for the PLO and PA. These terrorist units and cells are agents, instrumentalities, agencies, organs and/or alter egos of defendants PLO and PA, and are wholly funded and controlled by defendants PLO and PA (collectively hereinafter: "terrorist units"). The terrorist units of the PLO and PA which at all times relevant hereto planned and carried out terrorist attacks on behalf of and for the PLO and PA, include, without limitation, those known as "Fatah," "Tanzim," "Fatah-Tanzim," "Al Aqsa Brigades," and "Martyrs of Al Aqsa."

52.    At all times relevant hereto, defendants PLO and PA, their terrorist units including without limitation "Fatah," "Tanzim," "Fatah-Tanzim," "Al Aqsa Brigades," and "Martrys of Al Aqsa," and their officials, agents and employees including the other defendants herein, agreed and conspired with one another to carry out acts of international terrorism (within the meaning of 18 U.S.C. §2331), and knowingly aided, abetted, funded and provided a wide range of weapons

12

and other substantial material support and resources to one another for the execution of acts of international terrorism, all with the specific intention of funding, causing and facilitating the commission of acts of international terrorism.

53.     On an unknown date prior to January 8, 2001, defendants PLO and PA authorized, ordered, instructed, solicited and directed their terrorist units, including without limitation "Fatah," "Tanzim," "Fatah-Tanzim," "Al Aqsa Brigades," and "Martrys of Al Aqsa," and their officials, agents and employees including the other defendants herein, to organize, plan and execute a series of terrorist attacks against civilians in Israel and the West Bank. Defendants did so with actual knowledge that their previous terrorist attacks had killed and injured numerous U.S. citizens, and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of further such acts of terrorism.

**The Shooting Attack on January 8, 2001**

54.     Muhanad Abu Halawa, deceased (hereinafter "Abu Halawa") at all times relevant hereto was an employee and agent of the PLO and the PA.

55.     At an unknown date or dates prior to January 8, 2001, acting pursuant to the authorization, instructions, solicitation and directives of the PLO and the PA and within the scope of their agency and employment, Abu Halawa and several of JOHN DOES 1-99 jointly planned, agreed, conspired and made preparations to murder and injure innocent persons by means of a machine-gun attack on a civilian vehicle traveling on the roads near Jerusalem, Israel.

56.     Accordingly, on January 8, 2001, Abu Halawa and three of the JOHN DOE defendants traveled by car to the area of Givon Junction near Jerusalem, in order to carry out the machine-gun attack.

57.    At approximately 7:00 PM on January 8, 2001, Abu Halawa and the three JOHN

DOE defendants with him opened machine-gun fire on a passenger car in which plaintiffs

JOSEPH GUETTA and VARDA GUETTA were traveling near Givon Junction, with the

intention of murdering or injuring plaintiffs JOSEPH GUETTA and VARDA GUETTA.

58.    Plaintiff JOSEPH GUETTA, then 12 years old, was struck by several machine-

gun bullets fired by Abu Halawa and the JOHN DOE defendants, as a direct and proximate result

of which he suffered severe physical, emotional, mental and economic harm and injuries.

59.    Plaintiff VARDA GUETTA, who was driving the car, suffered severe emotional,

mental and economic harm and injuries as a direct and proximate result of the machine-gun

attack.

60.    The shooting attack on January 8, 2001 was planned and carried out by Abu

Halawa and the JOHN DOE defendants acting as agents and employees of the PLO and PA and

within the scope of their agency and employment, pursuant to the prior authorization,

instructions, solicitation and directives of defendants PLO and PA, in furtherance of the goals

and policies of defendants PLO and PA, and using funds, weapons, means of transportation and

communication and other material support and resources supplied by defendants PLO and PA for

the express purpose of carrying out this attack and terrorist attacks of this type. Defendants PLO

and PA conspired, agreed and acted in concert with Abu Halawa and the JOHN DOE defendants

to carry out the January 8, 2001 terrorist shooting, aided and abetted Abu Halawa and the JOHN

DOE defendants to carry out that shooting, and authorized, ratified and participated in that

shooting.

## The Shooting Attack on January 22, 2002

61.    Ahmed Taleb Mustapha Barghouti, a/k/a "Al-Faransi," (hereinafter "Ahmed Barghouti") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

62.    Nasser Mahmoud Ahmed Aweis (hereinafter "Nasser Aweis") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

63.    Majid Al-Masri, a/k/a "Abu Mojahed" (hereinafter "Al-Masri") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

64.    Mahmoud Al-Titi (hereinafter "Al-Titi") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

65.    Mohammed Abdel Rahman Salam Masalah, a/k/a "Abu Satkhah," (hereinafter "Masalah") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

66.    Faras Sadak Mohammed Ghanem, a/k/a "Hitawi," (hereinafter "Ghanem") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

67.    Mohammed Sami Ibrahim Abdullah (hereinafter "Abdullah") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

68.    Said Ramadan, deceased (hereinafter "Ramadan") at all times relevant hereto, was an employee and agent of the PLO and the PA.

69.    At an unknown date or dates prior to January 22, 2002, acting pursuant to the authorization, instructions, solicitation and directives of the PLO and the PA, and within the scope of their agency and employment, Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan and several of JOHN DOES 1-99 jointly planned, agreed,

conspired and made preparations to murder and injure innocent persons by means of a machine-gun attack on innocent passersby in downtown Jerusalem, Israel.

70.    Accordingly, on January 22, 2002, at approximately 4:15 PM, Ramadan arrived at Jaffa Street near the corner of Rav Kook Street in downtown Jerusalem, in order to murder and injure innocent passersby by means of a M-16 machine-gun with which he was provided for this specific purpose by the defendants.

71.    At approximately 4:20 PM on January 22, 2002, Ramadan shouted "Allahu Akbar" ("God is great"), and opened fire with the M-16 machine-gun on scores of innocent passerby on Jaffa Street and Rav Kook Street, with the intention of murdering or injuring as many as possible.

72.    Two elderly women were killed in the January 22, 2002 shooting attack, and over 45 innocent passersby were shot or suffered other physical injures in the attack.

73.    Among those shot and wounded in the January 22, 2002 shooting attack were plaintiffs SHAYNA GOULD and SHMUEL WALDMAN.

74.    Plaintiffs SHAYNA GOULD and SHMUEL WALDMAN suffered severe physical, emotional, mental and economic harm and injuries as a direct and proximate result of the January 22, 2002 shooting attack.

75.    Plaintiffs RONALD GOULD, ELISE GOULD, JESSICA RINE, HENNA WALDMAN, MORRIS WALDMAN and EVA WALDMAN suffered severe emotional, mental and economic harm and injuries as a direct and proximate result of the January 22, 2002 shooting attack.

76.    The shooting attack on January 22, 2002 was planned and carried out by Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan and the

16

JOHN DOE defendants acting as agents and employees of the PLO and PA and within the scope of their agency and employment, pursuant to the prior authorization, instructions, solicitation and directives of defendants PLO and PA, in furtherance of the goals and policies of defendants PLO and PA, and using funds, weapons, means of transportation and communication and other material support and resources supplied by defendants PLO and PA for the express purpose of carrying out this attack and terrorist attacks of this type. Defendants PLO and PA agreed, conspired and acted in concert with Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan and the JOHN DOE defendants to carry out the January 22, 2002 terrorist shooting, aided and abetted Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan and the JOHN DOE defendants to carry out that shooting, and authorized, ratified and participated in that shooting.

## The Bombing Attack on January 27, 2002

77.    Munzar Mahmoud Khalil Noor (hereinafter "Noor") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

78.    Wafa Idris, deceased (hereinafter "Idris") at all times relevant hereto was an employee and agent of the PLO and the PA.

79.    At an unknown date or dates prior to January 27, 2002, acting pursuant to the authorization, instructions, solicitation and directives of the PLO and the PA, and within the scope of their agency and employment, Noor, Idris and several of JOHN DOES 1-99 jointly planned, agreed, conspired and made preparations to murder and injure innocent persons by means of a bombing attack on innocent passersby in downtown Jerusalem, Israel.

80.    Accordingly, on January 27, 2002, at midday, Idris arrived at Jaffa Street in downtown Jerusalem, in order to murder and injure innocent passersby by means of a powerful

explosive device with which she was provided for this specific purpose by the defendants. Idris detonated the explosive device shortly before 12:30 P.M., causing a massive explosion.

81.    An 81 year-old man was killed in the explosion, and over 150 persons were wounded.

82.    Plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW and LAUREN M. SOKOLOW, who were present on Jaffa Street at the time of the explosion and in close proximity to Idris, suffered severe burns, shrapnel wounds, fractures and other serious injuries as a result of the explosion.

83.    Plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW and LAUREN M. SOKOLOW suffered severe physical, emotional, mental and economic harm and injuries as a direct and proximate result of the January 27, 2002 bombing attack.

84.    Plaintiff ELANA R. SOKOLOW suffered severe emotional, mental and economic harm and injuries as a direct and proximate result of the January 27, 2002 bombing attack.

85.    The bombing attack on January 27, 2002 was planned and carried out by defendants Noor, Idris and the JOHN DOE defendants acting as agents and employees of the PLO and PA and within the scope of their agency and employment, pursuant to the prior authorization, instructions, solicitation and directives of defendants PLO and PA, in furtherance of the goals and policies of defendants PLO and PA, and using funds, weapons, means of transportation and communication and other material support and resources supplied by defendants PLO and PA for the express purpose of carrying out this attack and terrorist attacks of this type. Defendants PLO and PA agreed, conspired and acted in concert with Noor, Idris and the JOHN DOE defendants to carry out the January 27, 2002 terrorist bombing, aided and abetted

Noor, Idris and the JOHN DOE defendants to carry out that bombing, and authorized, ratified and participated in that bombing.

**The Bombing Attack on March 21, 2002**

86.     Abdel Karim Ratab Yunis Aweis (hereinafter "Abdel Aweis") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

87.     Nasser Jamal Mousa Shawish (hereinafter "Shawish") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

88.     Toufik Tirawi (hereinafter "Tirawi") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

89.     Hussein Al-Shaykh (hereinafter "Al-Shaykh") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

90.     Sana'a Muhammed Shehadeh (hereinafter "Shehadeh") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

91.     Kaira Said Ali Sadi (hereinafter "Sadi") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

92.     Mohammed Hashaika, deceased (hereinafter "Hashaika"), at all times relevant hereto was an employee and agent of the PLO and the PA.

93.     At an unknown date or dates prior to March 21, 2002, acting pursuant to the authorization, instructions, solicitation and directives of the PLO and the PA, and within the scope of their agency and employment, Abdel Aweis, Shawish, Tirawi, Al-Shaykh, Shehadeh, Sadi, Hashaika and several of JOHN DOES 1-99 jointly planned, agreed, conspired and made preparations to murder and injure innocent persons by means of a bombing attack on innocent passersby in downtown Jerusalem, Israel.

94.     Accordingly, on March 21, 2002, at approximately 4:15 PM, Hashaika arrived at King George Street in downtown Jerusalem, in order to murder and injure innocent passersby by means of a powerful explosive device with which he was provided for this specific purpose by the defendants. Hashaika detonated the explosive at approximately 4:20 PM, causing a massive explosion.

95.     Three innocent passersby were killed in the explosion, and over 80 more were wounded.

96.     Plaintiffs DR. ALAN J. BAUER and YEHONATHON BAUER, who were present on King George Street at the time of the explosion and in close proximity to Hashaika, suffered severe burns, shrapnel wounds, fractures and other serious injuries as a result of the explosion.

97.     Plaintiffs DR. ALAN J. BAUER and YEHONATHON BAUER suffered severe physical, emotional, mental and economic harm and injuries as a direct and proximate result of the March 21, 2002 bombing attack.

98.     Plaintiffs REVITAL BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER suffered severe emotional, mental and economic harm and injuries as a direct and proximate result of the March 21, 2002 bombing attack.

99.     The bombing attack on March 21, 2002 was planned and carried out by defendants Abdel Aweis, Shawish, Tirawi, Al-Shaykh, Shehadeh, Sadi, Hashaika and the JOHN DOE defendants acting as agents and employees of the PLO and PA and within the scope of their agency and employment, pursuant to the prior authorization, instructions, solicitation and directives of defendants PLO and PA, in furtherance of the goals and policies of defendants PLO and PA, and using funds, weapons, means of transportation and communication and other

20

material support and resources supplied by defendants PLO and PA for the express purpose of carrying out this attack and terrorist attacks of this type. Defendants PLO and PA conspired, agreed and acted in concert with Abdel Aweis, Shawish, Tirawi, Al-Shaykh, Shehadeh, Sadi, Hashaika and the JOHN DOE defendants to carry out the March 21, 2002 terrorist bombing, aided and abetted Abdel Aweis, Shawish, Tirawi, Al-Shaykh, Shehadeh, Sadi, Hashaika and the JOHN DOE defendants to carry out that bombing, and authorized, ratified and participated in that bombing.

## The Bombing Attack on June 19, 2002

100.    Mazan Faritach, deceased (hereinafter "Faritach"), at all times relevant hereto, was an employee and agent of the PLO and the PA.

101.    At an unknown date or dates prior to June 19, 2002, acting pursuant to the authorization, instructions, solicitation and directives of the PLO and the PA, and within the scope of their agency and employment, Faritach and several of JOHN DOES 1-99 jointly planned, agreed, conspired and made preparations to murder and injure innocent persons by means of a bombing attack on innocent passersby in Jerusalem, Israel.

102.    Accordingly, on June 19, 2002, at approximately 7:00 PM, two of the JOHN DOE defendants arrived at a crowded bus stop at the French Hill intersection in northern Jerusalem, in order to murder and injure innocent passersby by means of a powerful explosive device with which they were provided for this specific purpose by the other defendants. One of the JOHN DOE defendants detonated the explosive at approximately 7:00 PM, causing a massive explosion. The other JOHN DOE defendant fled the scene of the bombing by car.

103.    Seven innocent persons were killed in the explosion, and over 50 more were wounded.

104.   Plaintiff SHAUL MANDELKORN, then a minor, was present at the site of the bombing and in close proximity to the bomber, and suffered severe burns, shrapnel wounds and other serious injuries as a result of the explosion.

105.   Plaintiff SHAUL MANDELKORN suffered severe physical, emotional, mental and economic harm and injuries as a direct and proximate result of the June 19, 2002 bombing attack.

106.   Plaintiffs RABBI LEONARD MANDELKORN and NURIT MANDELKORN suffered severe emotional, mental and economic harm and injuries as a direct and proximate result of the June 19, 2002 bombing attack.

107.   The bombing attack on June 19, 2002 was planned and carried out by Faritach and the JOHN DOE defendants acting as agents and employees of the PLO and PA and within the scope of their agency and employment, pursuant to the prior authorization, instructions, solicitation and directives of defendants PLO and PA, in furtherance of the goals and policies of defendants PLO and PA, and using funds, weapons, means of transportation and communication and other material support and resources supplied by defendants PLO and PA for the express purpose of carrying out this attack and terrorist attacks of this type. Defendants PLO and PA conspired, agreed and acted in concert with Faritach and the JOHN DOE defendants to carry out the June 19, 2002 terrorist bombing, aided and abetted Faritach and the JOHN DOE defendants to carry out that bombing, and authorized, ratified and participated in that bombing.

**The Bombing Attack on July 31, 2002**

108.   Marwan Bin Khatib Barghouti (hereinafter "Marwan Barghouti") is, and at all times relevant hereto was, an employee and agent of the PLO and the PA.

22

109.    At an unknown date or dates prior to July 31, 2002, acting pursuant to the authorization, instructions, solicitation and directives of the PLO and the PA, and within the scope of their agency and employment, Marwan Barghouti, Ahmed Barghouti, several of JOHN DOES 1-99, the HAMAS terrorist organization and several members of the HAMAS terrorist organization (collectively hereinafter: "the Hebrew University bombing cell") all jointly planned, agreed, conspired and made preparations to murder and injure innocent persons by means of a bombing attack on the campus of the Hebrew University in Jerusalem, Israel.

110.    Accordingly, on or just prior to July 31, 2002, members of the Hebrew University bombing cell planted a powerful explosive device on the campus of the Hebrew University in Jerusalem.  On the afternoon of July 31, 2002, a member of the Hebrew University bombing cell detonated the explosive device in the Frank Sinatra cafeteria on the Hebrew University campus, causing a massive explosion.

111.    Nine innocent persons were murdered in the explosion, including five American citizens.  Over eighty-five others, including numerous American citizens, were wounded.

112.    Among the American citizens murdered in the Hebrew University bombing were Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein and David Gritz.

113.    As a direct and proximate result of a result of the July 31, 2002, bombing attack, American citizens Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein and David Gritz suffered great conscious pain, shock and physical and mental anguish prior to their deaths.

114.    As a direct and proximate result of a result of the July 31, 2002, bombing attack and the murder of Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein and David Gritz, plaintiffs ROBERT L. COULTER, SR., DIANNE COULTER MILLER, ROBERT L. COULTER, JR., DR. LARRY CARTER, SHAUN COFFEL, DR. RICHARD BLUTSTEIN, DR.

23

KATHERINE BAKER, REBEKAH BLUTSTEIN, NORMAN GRITZ and NEVENKA GRITZ suffered severe emotional, mental and economic harm and injuries.

115.    The Hebrew University bombing attack on July 31, 2002, was planned and carried out by Marwan Barghouti, Ahmed Barghouti and the JOHN DOE defendants acting as agents and employees of the PLO and PA and within the scope of their agency and employment, and pursuant to the prior authorization, instructions, solicitation and directives of defendants PLO and PA, and in furtherance of the goals and policies of defendants PLO and PA.

116.    The Hebrew University bombing attack on July 31, 2002, was planned and carried out by Marwan Barghouti, Ahmed Barghouti, the JOHN DOE defendants and the other members of the Hebrew University bombing cell, using funds, weapons, means of transportation and communication and other material support and resources supplied by defendants PLO and PA for the express purpose of carrying out that attack and terrorist attacks of this type.

117.    Defendants PLO and PA conspired, agreed and acted in concert with Marwan Barghouti, Ahmed Barghouti, the JOHN DOE defendants and the other members of the Hebrew University bombing cell to carry out the Hebrew University bombing attack on July 31, 2002, aided and abetted Marwan Barghouti, Ahmed Barghouti, the JOHN DOE defendants and the other members of the Hebrew University bombing cell to carry out that bombing, and authorized, ratified and participated in that bombing.

## The Bombing Attack on January 29, 2004

118.    Ali Yusuf Ja'ara (hereinafter "Ja'ara") at all times relevant hereto was an employee and agent of the PLO and the PA.

119.    At an unknown date or dates prior to January 29, 2004, acting pursuant to the authorization, instructions, solicitation and directives of the PLO and the PA, and within the

24

scope of their agency and employment, Ja'ara and several of JOHN DOES 1-99 jointly planned, agreed, conspired and made preparations to murder and injure innocent persons by means of a bombing attack on a public passenger bus in Jerusalem, Israel.

120.    Accordingly, on January 29, 2004, Ja'ara boarded the Number 10 Egged bus in Jerusalem, in order to murder and injure innocent passengers on the bus by means of a powerful explosive device with which he was provided for this specific purpose by the defendants. Ja'ara detonated the explosive, causing a massive explosion.

121.    Eleven innocent persons were killed in the explosion, and approximately 50 more were wounded.

122.    Among those murdered in the bombing on January 29, 2004, was Stuart Scott Goldberg.

123.    As a direct and proximate result of a result of the January 29, 2004 bombing attack, decedent Stuart Scott Goldberg suffered great conscious pain, shock and physical and mental anguish prior to his death.

124.    As a direct and proximate result of the January 29, 2004 bombing attack and the murder of Stuart Scott Goldberg, plaintiffs KAREN GOLDBERG, CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG and TZVI YEHOSHUA GOLDBERG suffered severe emotional, mental and economic harm and injuries.

125.    The bombing attack on January 29, 2004, was planned and carried out by Ja'ara and the JOHN DOE defendants acting as agents and employees of the PLO and PA and within the scope of their agency and employment, pursuant to the prior authorization, instructions,

solicitation and directives of defendants PLO and PA, in furtherance of the goals and policies of

defendants PLO and PA, and using funds, weapons, means of transportation and communication

and other material support and resources supplied by defendants PLO and PA for the express

purpose of carrying out this attack and terrorist attacks of this type. Defendants PLO and PA

conspired, agreed and acted in concert with Ja'ara and the JOHN DOE defendants to carry out

the January 29, 2004 terrorist bombing, aided and abetted Ja'ara and the JOHN DOE defendants

to carry out that bombing, and authorized, ratified and participated in that bombing.

**FIRST COUNT**

**AGAINST ALL DEFENDANTS ON BEHALF OF ALL
PLAINTIFFS INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. §2333**

126.    The preceding paragraphs are incorporated by reference as though fully set forth

herein.

127.    Defendants' acts constitute a violation of the criminal laws of the United States

and of the several States, or would constitute criminal violations if committed within the

jurisdiction of the United States and of the several States. The actions of defendants violate, or if

committed within U.S. jurisdiction would violate literally scores of federal and state criminal

statutes prohibiting, inter alia and without limitation: homicide, battery, assault and the

construction and use of explosive devices; as well as the criminal prohibitions against aiding and

abetting, attempting, serving as an accessory to, solicitation of and conspiracy to commit these

and other such felonies.

128.    The acts of defendants described herein were performed pursuant to and as

implementation of an established policy of utilizing terrorist attacks in order to achieve their

goals. Specifically, the acts of defendants described herein were intended to terrorize, intimidate

and coerce the civilian population in Israel into acquiescing to defendants' political goals and

demands, and to influence the policy of the United States and Israeli governments in favor of

accepting defendants' political goals and demands. Moreover, defendants, themselves and

through their respective officials, representatives, spokesmen, communications media and other

agents: (a) repeatedly admitted to committing acts of terrorism and violence against the civilian

population in Israel and the West Bank and expressly stated that these acts were intended both to

intimidate and coerce that civilian population into acquiescing to defendants' political goals and

demands and to influence the policy of the United States and Israeli governments in favor of

defendants' political goals and demands, and (b) expressly threatened the further occurrence of

such terrorist acts if their political goals and demands were not achieved.  The acts of defendants

described herein therefore appear to be and were in fact intended to intimidate and coerce a

civilian population, and to influence the policy of a government by intimidation or coercion,

within the meaning of 18 U.S.C. §2331.

129.    Defendants' acts were dangerous to human life, by their nature and as evidenced

by their consequences.

130.    Defendants' acts occurred outside the territorial jurisdiction of the United States.

131.    The acts of defendants are therefore "acts of international terrorism" as defined

under 18 U.S.C. §§2331 and 2333. The behavior of defendants also constitutes aiding and

abetting acts of international terrorism, and conspiracy to commit acts of international terrorism.

132.    As a direct and proximate result of the acts of international terrorism committed

by defendants, and which defendants aided and abetted and/or conspired to commit, plaintiffs

were caused severe injury, including: death, pain and suffering; pecuniary loss and loss of

income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

133.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

134.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

**SECOND COUNT**

**AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS
ROBERT L. COULTER, SR., DIANNE COULTER MILLER,
ROBERT L. COULTER, JR., DR. LARRY CARTER, SHAUN COFFEL,
DR. RICHARD BLUTSTEIN, DR. KATHERINE BAKER,
REBEKAH BLUTSTEIN, NORMAN GRITZ, NEVENKA GRITZ,
KAREN GOLDBERG, CHANA BRACHA GOLDBERG,
ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG,
SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG,
YAAKOV MOSHE GOLDBERG, TZVI YEHOSHUA GOLDBERG
AND THE ESTATES OF JANIS RUTH COULTER,
DIANE ("DINA") CARTER, BENJAMIN BLUTSTEIN,
DAVID GRITZ  AND STUART SCOTT GOLDBERG WRONGFUL DEATH**

135.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

136.    Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the terrorist attacks described above.

137.    Defendants' behavior constituted a breach of legal duties to desist from committing, or aiding, abetting, authorizing, encouraging or conspiring to commit acts of

international terrorism and extrajudicial killing, and to refrain from intentionally, wantonly, and/or negligently authorizing or causing the infliction of death, physical injuries and harm to persons such as the plaintiffs herein.

138.    Defendants' actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the terrorist bombing and the deaths of decedents Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein, David Gritz and Stuart Scott Goldberg.

139.    At the time of their deaths, decedents Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein, David Gritz and Stuart Scott Goldberg enjoyed good health, were industrious and in possession of all their faculties.

140.    The murder of Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein, David Gritz and Stuart Scott Goldberg caused decedents, their estates and plaintiffs ROBERT L. COULTER, SR., DIANNE COULTER MILLER, ROBERT L. COULTER, JR., DR. LARRY CARTER, SHAUN COFFEL, DR. RICHARD BLUTSTEIN, DR. KATHERINE BAKER, REBEKAH BLUTSTEIN, NORMAN GRITZ, NEVENKA GRITZ, KAREN GOLDBERG, CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG and TZVI YEHOSHUA GOLDBERG severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

141.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

142.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

### THIRD COUNT

### AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS THE ESTATES OF JANIS RUTH COULTER, DIANE ("DINA") CARTER, BENJAMIN BLUTSTEIN, DAVID GRITZ AND STUART SCOTT GOLDBERG PAIN AND SUFFERING

143.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

144.    As a result of the terrorist bombings caused by defendants' actions described herein, decedents Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein, David Gritz and Stuart Scott Goldberg, prior to their deaths, sustained great, severe, and permanent injuries to their bodies, heads, and limbs, became sick, sore, lame and disabled. From the time of the bombings until their deaths, decedents Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein, David Gritz and Stuart Scott Goldberg suffered great conscious pain, shock and physical and mental anguish.

145.    Defendants are therefore jointly and severally liable to the estates of decedents Janis Ruth Coulter, Diane ("Dina") Carter, Benjamin Blutstein, David Gritz and Stuart Scott Goldberg for the full amount of decedents' damages, in such sums as may hereinafter be determined.

146.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## FOURTH COUNT

## AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS
## MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW,
## LAUREN M. SOKOLOW, SHAYNA GOULD,
## SHMUEL WALDMAN, DR. ALAN J. BAUER,
## YEHONATHON BAUER, SHAUL MANDELKORN AND JOSEPH GUETTA BATTERY

147.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

148.    The terrorist attacks described herein caused plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN M. SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J. BAUER, YEHONATHON BAUER, SHAUL MANDELKORN and JOSEPH GUETTA severe physical and psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of present and future income.

149.    The terrorist attacks described herein constituted batteries on the persons of plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN M. SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J. BAUER, YEHONATHON BAUER, SHAUL MANDELKORN and JOSEPH GUETTA.

150.    As a result of the severe injuries inflicted on them by the terrorist attacks described herein, plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN M. SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J. BAUER, YEHONATHON BAUER, SHAUL MANDELKORN and JOSEPH GUETTA required hospitalization, surgeries and other medical treatment.

151.    Plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN M. SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J.

31

BAUER, YEHONATHON BAUER, SHAUL MANDELKORN and JOSEPH GUETTA

continue to suffer from permanent injuries caused by the terrorist attacks described herein.

152.    Defendants' actions were willful, malicious, intentional, reckless, unlawful and

were the proximate cause of the terrorist attacks described herein and the batteries on the persons

of plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN

M. SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J. BAUER,

YEHONATHON BAUER, SHAUL MANDELKORN and JOSEPH GUETTA and the injuries

plaintiffs suffered thereby.

153.    Defendants are therefore jointly and severally liable for the full amount of

plaintiffs' damages, in such sums as may hereinafter be determined.

154.    Defendants' conduct was outrageous in the extreme, wanton, willful and

malicious, and constitutes a threat to the public warranting an award of punitive damages.

## FIFTH COUNT

### AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN M. SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J. BAUER, YEHONATHON BAUER, SHAUL MANDELKORN, VARDA GUETTA AND JOSEPH GUETTA ASSAULT

155.    The preceding paragraphs are incorporated by reference as though fully set forth

herein.

156.    The terrorist attacks described herein and the ensuing carnage caused plaintiffs

MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN M.

SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J. BAUER,

YEHONATHON BAUER, SHAUL MANDELKORN, VARDA GUETTA and JOSEPH

GUETTA fear and apprehension of harm and death and/or actual physical harm, and constituted assaults on the persons of these plaintiffs.

157.    The terrorist attacks described herein and assaults on their persons, which were direct and proximate results of defendants' actions, caused plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW, LAUREN M. SOKOLOW, SHAYNA GOULD, SHMUEL WALDMAN, DR. ALAN J. BAUER, YEHONATHON BAUER, SHAUL MANDELKORN, VARDA GUETTA and JOSEPH GUETTA extreme mental anguish and/or actual physical injury and pain and suffering.

158.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

159.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## SIXTH COUNT

### AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS LOSS OF CONSORTIUM AND SOLATIUM

160.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

161.    As a result and by reason of the injuries caused to them by the actions of defendants described herein, plaintiffs MARK I. SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW and LAUREN M. SOKOLOW were deprived of the services, society, company and consortium of one another and of plaintiff ELANA R. SOKOLOW, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

33

162.    As a result and by reason of the injuries caused to plaintiffs MARK I.

SOKOLOW, RENA M. SOKOLOW, JAMIE A. SOKOLOW and LAUREN M. SOKOLOW by

the actions of defendants described herein, plaintiff ELANA R. SOKOLOW was deprived of the

services, society, company and consortium of her parents and siblings, and has suffered and will

continue to suffer severe mental anguish, grief, and injury to her feelings.

163.    As a result and by reason of the injuries caused to her by the actions of defendants

described herein, plaintiff SHAYNA GOULD was deprived of the services, society, company

and consortium of her parents plaintiffs RONALD GOULD and ELISE GOULD and her sister

plaintiff JESSICA RINE, and has suffered and will continue to suffer severe mental anguish,

grief, and injury to her feelings.

164.    As a result and by reason of the injuries caused to plaintiff SHAYNA GOULD by

the actions of defendants described herein, plaintiffs RONALD GOULD, ELISE GOULD and

JESSICA RINE were deprived of the services, society, company and consortium of their

daughter and sister, and have suffered and will continue to suffer severe mental anguish, grief,

and injury to their feelings.

165.    As a result and by reason of the injuries caused to him by the actions of

defendants described herein, plaintiff SHMUEL WALDMAN was deprived of the services,

society, company and consortium of his wife plaintiff HENNA WALDMAN and his parents

plaintiffs MORRIS WALDMAN and EVA WALDMAN, and has suffered and will continue to

suffer severe mental anguish, grief, and injury to his feelings.

166.    As a result and by reason of the injuries caused to plaintiff SHMUEL

WALDMAN by the actions of defendants described herein, plaintiffs HENNA WALDMAN,

MORRIS WALDMAN and EVA WALDMAN were deprived of the services, society, company

and consortium of their husband and son, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

167.    As a result and by reason of the injuries caused to them by the actions of defendants described herein, plaintiffs DR. ALAN J. BAUER and YEHONATHON BAUER were deprived of the services, society, company and consortium of one another and of plaintiffs REVITAL BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

168.    As a result and by reason of the injuries caused to plaintiffs DR. ALAN J. BAUER and YEHONATHON BAUER by the actions of defendants described herein, plaintiffs REVITAL BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER were deprived of the services, society, company and consortium of plaintiffs DR. ALAN J. BAUER and YEHONATHON BAUER and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

169.    As a result and by reason of the injuries caused to him by the actions of defendants described herein, plaintiff SHAUL MANDELKORN was deprived of the services, society, company and consortium of his parents plaintiffs RABBI LEONARD MANDELKORN and NURIT MANDELKORN, and has suffered and will continue to suffer severe mental anguish, grief, and injury to his feelings.

170.    As a result and by reason of the injuries caused to plaintiff SHAUL MANDELKORN by the actions of defendants described herein, plaintiffs RABBI LEONARD MANDELKORN and NURIT MANDELKORN were deprived of the services, society, company and consortium of their son, and have suffered and will continue to suffer severe mental anguish, grief, and injury to their feelings.

35

171.    As a result and by reason of the injuries caused to him by the actions of defendants described herein, plaintiff JOSEPH GUETTA was deprived of the services, society, company and consortium of his mother plaintiff VARDA GUETTA, and has suffered and will continue to suffer severe mental anguish, grief, and injury to his feelings.

172.    As a result and by reason of the injuries caused to plaintiff JOSEPH GUETTA by the actions of defendants described herein, plaintiff VARDA GUETTA was deprived of the services, society, company and consortium of her son, and has suffered and will continue to suffer severe mental anguish, grief, and injury to her feelings.

173.    As a result and by reason of the death of Janis Ruth Coulter, which was caused by the actions of defendants described herein, plaintiff ROBERT L. COULTER, SR., has been deprived of the services, society, consortium and solatium of his deceased daughter, and has suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to his feelings.

174.    As a result and by reason of the death of Janis Ruth Coulter, which was caused by the actions of defendants described herein, plaintiffs DIANNE COULTER MILLER and ROBERT L. COULTER, JR. have been deprived of the services, society, consortium and solatium of their deceased sister, and have suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

175.    As a result and by reason of the death of Diane ("Dina") Carter, which was caused by the actions of defendants described herein, plaintiff DR. LARRY CARTER, has been deprived of the services, society, consortium and solatium of his deceased daughter, and has suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to his feelings.

36

176.    As a result and by reason of the death of Diane ("Dina") Carter, which was caused by the actions of defendants described herein, plaintiff SHAUN COFFEL has been deprived of the services, society, consortium and solatium of her deceased sister, and has suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to her feelings.

177.    As a result and by reason of the death of Benjamin Blutstein, which was caused by the actions of defendants described herein, plaintiffs DR. RICHARD BLUTSTEIN and DR. KATHERINE BAKER have been deprived of the services, society, consortium and solatium of their deceased son, and have suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

178.    As a result and by reason of the death of Benjamin Blutstein, which was caused by the actions of defendants described herein, plaintiff REBEKAH BLUTSTEIN has been deprived of the services, society, consortium and solatium of her deceased brother, and has suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to her feelings.

179.    As a result and by reason of the death of David Gritz, which was caused by the actions of defendants described herein, plaintiffs NORMAN GRITZ and NEVENKA GRITZ have been deprived of the services, society, consortium and solatium of their deceased son, and have suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

180.    As a result and by reason of the death of Stuart Scott Goldberg, which was caused by the actions of defendants described herein, plaintiff KAREN GOLDBERG has been deprived of the services, society, consortium and solatium of her deceased husband, and has suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to her feelings.

181.    As a result and by reason of the death of Stuart Scott Goldberg, which was caused by the actions of defendants described herein, plaintiffs CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG and TZVI YEHOSHUA GOLDBERG have been deprived of the services, society, consortium and solatium of their deceased father, and have suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

182.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

183.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## SEVENTH COUNT

## AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS NEGLIGENCE

184.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

185.    Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately and/or wantonly and/or negligently authorized, organized, planned, provided material support for and executed the terrorist attacks that harmed the plaintiffs.

186.    Defendants had legal duties under local and other applicable law to desist from engaging in, or authorizing and encouraging, acts of violence, and to refrain from deliberately

and/or wantonly, and/or negligently authorizing or causing the infliction of injuries to persons such as the plaintiffs herein.

187.    Defendants' behavior constituted a breach of these legal duties.

188.    Defendants foresaw, or should have reasonably foreseen, that their breach of these legal duties would create unreasonable risk of injuries such as those suffered by the plaintiffs to persons such as the plaintiffs.

189.    As a result of defendants' wrongful and/or unlawful and/or negligent acts, plaintiffs were caused severe injury, including: death; pain and suffering; pecuniary loss and loss of income; loss of guidance, society and companionship; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

190.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

191.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## EIGHTH COUNT

### AGAINST ALL DEFENDANTS
### ON BEHALF OF ALL PLAINTIFFS
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

192.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

193.    Defendants' conduct was willful, outrageous, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

39

194.    Defendants' conduct was intended to and did in fact terrorize the plaintiffs and cause them egregious emotional distress.

195.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

196.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## NINTH COUNT

### AGAINST ALL DEFENDANTS
### ON BEHALF OF ALL PLAINTIFFS
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

197.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

198.    Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

199.    Defendants' conduct caused the plaintiffs egregious emotional distress.

200.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

201.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## TENTH COUNT

### AGAINST ALL DEFENDANTS ON BEHALF
### OF ALL PLAINTIFFS CIVIL CONSPIRACY

202.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

203.    Defendants knowingly and willingly conspired, agreed and acted in concert with each other, with their agents and employees and with the Hebrew University bombing cell, in a common plan and design to facilitate and cause acts of terrorism including the terrorist attacks in which plaintiffs were harmed.

204.    As a result of the terrorist attacks caused, resulting from and facilitated by defendants' conspiracy, plaintiffs suffered the damages enumerated herein.

205.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

206.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

### ELEVENTH COUNT

### AGAINST ALL DEFENDANTS ON BEHALF
### OF ALL PLAINTIFFS AIDING AND ABETTING

207.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

208.    Defendants provided one another, and their organs, agencies, instrumentalities, officials, agents and employees, and their other co-conspirators including the Hebrew University bombing cell, with material support and resources and other substantial aid and assistance, in

41

order to aid, abet, facilitate and cause the commission of acts of terrorism including the terrorist attacks in which plaintiffs were harmed.

209.    As a result of the terrorist attacks caused, resulting from and facilitated by defendants' provision of material support and resources and other acts of aiding and abetting, plaintiffs suffered the damages enumerated herein.

210.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

211.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## TWELFTH COUNT

### AGAINST DEFENDANTS PLO AND PA
### ON BEHALF OF ALL PLAINTIFFS
### VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

212.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

213.    At all relevant times, Marwan Barghouti, Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan, Abdel Aweis, Shawish, Tirawi, Al-Shaykh, Shehadeh, Sadi, Hashaika, Noor, Idris, Faritach, Abu Halawa, Ja'ara and JOHN DOES 1-99 were agents and/or officers and/or employees and/or organs and/or agencies and/or instrumentalities of defendants PLO and PA, and engaged in the actions described herein within the scope of their agency, office and employment and in furtherance of the interests of defendants PLO and PA.

214.    Defendants PLO and PA authorized, ratified and/or condoned the actions described herein of Marwan Barghouti, Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan, Abdel Aweis, Shawish, Tirawi, Al-Shaykh, Shehadeh, Sadi, Hashaika, Noor, Idris, Faritach, Abu Halawa, Ja'ara and JOHN DOES 1-99.

215.    Therefore, defendants PLO and PA are vicariously liable for the acts of Marwan Barghouti, Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan, Abdel Aweis, Shawish, Tirawi, Al-Shaykh, Shehadeh, Sadi, Hashaika, Noor, Idris, Faritach, Abu Halawa, Ja'ara and JOHN DOES 1-99.

216.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

217.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

### THIRTEENTH COUNT

### AGAINST DEFENDANTS PLO AND PA
### ON BEHALF OF ALL PLAINTIFFS INDUCEMENT

218.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

219.    Defendants PLO and PA offered and provided their own and each other's officials, agents and employees, including the other defendants herein, with substantial material and pecuniary inducements and incentives to plan, organize and execute acts of international terrorism, including the terrorist attacks in which plaintiffs were harmed. Defendants PLO and PA did so knowing that the acts for which they provided inducements and incentives were illegal

and/or tortious, and that they would have been directly liable had they performed those acts themselves.

220.    As a result of the terrorist attacks caused, resulting from and facilitated by the substantial material and pecuniary inducements and incentives offered and provided by defendants PLO and PA, plaintiffs suffered the damages enumerated herein.

221.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

222.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

WHEREFORE, plaintiffs demand judgment against the defendants jointly and severally, as to each of the above counts and causes of action, as follows:

A.    Compensatory damages against all defendants, jointly and severally, in the amount of $1,000,000,000.00 (ONE BILLION DOLLARS);

B.    Treble damages, costs and attorneys fees as provided in 18 U.S.C. §2333;

C.    Punitive damages;

D.    Reasonable costs and expenses;

E.    Reasonable attorneys' fees; and,

F.    Such further relief as the Court finds just and equitable.

Plaintiffs demand trial by jury.

Dated: May 17, 2005

SQUITIERI & FEARON, LLP

By: _____

Lee Squitieri (LS-1684)
32 East 57th Street
12th Floor
New York, New York 10022
(212) 421-6492

David Strachman
MCINTYRE, TATE, LYNCH & HOLT
321 South Main Street, Suite 400
Providence, Rhode Island 02903 -7108
(401) 351-7700

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Lee Squitieri, hereby certify that on this 17th day of May, 2005, I caused true and

correct copies of the First Amended Complaint to be served upon counsel for  defendants listed

below via First Class Mail, postage, prepaid, as follows:

> Lawrence W. Schilling
> Ramsey Clark
> 36 East 12[th] Street
> New York, New York 10003

LEE SQUITIERI