# EXHIBIT B

# ANTITERRORISM ACT OF 1991

# HEARING

### BEFORE THE

## SUBCOMMITTEE ON INTELLECTUAL PROPERTY AND JUDICIAL ADMINISTRATION

#### OF THE

## COMMITTEE ON THE JUDICIARY
## HOUSE OF REPRESENTATIVES

### ONE HUNDRED SECOND CONGRESS

#### SECOND SESSION

##### ON

## H.R. 2222

##### ANTITERRORISM ACT OF 1991

##### SEPTEMBER 18, 1992

### Serial No. 110



Legislative
Library
Jones, Day, Reavis & Pogue

Printed for the use of the Committee on the Judiciary

U.S. GOVERNMENT PRINTING OFFICE

65–762 CC        WASHINGTON : 1993

For sale by the U.S. Government Printing Office

## COMMITTEE ON THE JUDICIARY

JACK BROOKS, Texas, *Chairman*

DON EDWARDS, California
JOHN CONYERS, JR., Michigan
ROMANO L. MAZZOLI, Kentucky
WILLIAM J. HUGHES, New Jersey
MIKE SYNAR, Oklahoma
PATRICIA SCHROEDER, Colorado
DAN GLICKMAN, Kansas
BARNEY FRANK, Massachusetts
CHARLES E. SCHUMER, New York
EDWARD F. FEIGHAN, Ohio
HOWARD L. BERMAN, California
RICK BOUCHER, Virginia
HARLEY O. STAGGERS, JR., West Virginia
JOHN BRYANT, Texas
MEL LEVINE, California
GEORGE E. SANGMEISTER, Illinois
CRAIG A. WASHINGTON, Texas
PETER HOAGLAND, Nebraska
MICHAEL J. KOPETSKI, Oregon
JACK REED, Rhode Island

HAMILTON FISH, JR., New York
CARLOS J. MOORHEAD, California
HENRY J. HYDE, Illinois
F. JAMES SENSENBRENNER, JR.,
    Wisconsin
BILL McCOLLUM, Florida
GEORGE W. GEKAS, Pennsylvania
HOWARD COBLE, North Carolina
LAMAR S. SMITH, Texas
CRAIG T. JAMES, Florida
TOM CAMPBELL, California
STEVEN SCHIFF, New Mexico
JIM RAMSTAD, Minnesota
GEORGE ALLEN, Virginia

JONATHAN R. YAROWSKY, *General Counsel*
ROBERT H. BRINK, *Deputy General Counsel*
ALAN F. COFFEY, JR., *Minority Chief Counsel*

---

## SUBCOMMITTEE ON INTELLECTUAL PROPERTY AND JUDICIAL ADMINISTRATION

WILLIAM J. HUGHES, New Jersey, *Chairman*

JOHN CONYERS, JR., Michigan
MIKE SYNAR, Oklahoma
PATRICIA SCHROEDER, Colorado
DAN GLICKMAN, Kansas
BARNEY FRANK, Massachusetts
CHARLES E. SCHUMER, New York
RICK BOUCHER, Virginia
MEL LEVINE, California
GEORGE E. SANGMEISTER, Illinois

CARLOS J. MOORHEAD, California
HOWARD COBLE, North Carolina
HAMILTON FISH, JR., New York
F. JAMES SENSENBRENNER, JR.,
    Wisconsin
CRAIG T. JAMES, Florida
TOM CAMPBELL, California

HAYDEN W. GREGORY, *Counsel*
EDWARD O'CONNELL, *Assistant Counsel*
LINDA C. HALL, *Editor*
PHYLLIS HENDERSON, *Staff Assistant*
VERONICA L. ELIGAN, *Staff Assistant*
THOMAS E. MOONEY, *Minority Counsel*
JOSEPH V. WOLFE, *Minority Counsel*

(II)

# CONTENTS

## HEARING DATE

| | Page |
|---|---|
| September 18, 1992 | 1 |

## TEXT OF BILL

| | |
|---|---|
| H.R. 2222 | 2 |

## OPENING STATEMENT

Hughes, Hon. William J., a Representative in Congress from the State of New Jersey, and chairman, Subcommittee on Intellectual Property and Judicial Administration ........ 1

## WITNESSES

Klinghoffer, Lisa, daughter of Leon and Marilyn Klinghoffer, on behalf of the Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League, accompanied by Jess Hordes, Washington representative, and Michael Lieberman, associate director and counsel, Anti-Defamation League, Washington, DC ........ 14

## LETTERS, STATEMENTS, ETC., SUBMITTED FOR THE HEARING

Feighan, Hon. Edward F., a Representative in Congress from the State of Ohio: Prepared statement ........ 12

Klinghoffer, Lisa, daughter of Leon and Marilyn Klinghoffer, on behalf of the Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League: Prepared statement ........ 16

Moorhead, Hon. Carlos J., a Representative in Congress from the State of California: Letter from Hon. Charles E. Grassley, a Senator in Congress from the State of Iowa ........ 11

# ANTITERRORISM ACT OF 1991

---

**FRIDAY, SEPTEMBER 18, 1992**

House of Representatives,
Subcommittee on Intellectual Property
and Judicial Administration,
Committee on the Judiciary,
*Washington, DC.*

The subcommittee met, pursuant to notice, at 10:20 a.m., in room 2141, Rayburn House Office Building, Hon. William J. Hughes (chairman of the subcommittee) presiding.

Present: Representatives William J. Hughes, George E. Sangmeister, and Carlos J. Moorhead.

Also present: Hayden Gregory, counsel; Edward O'Connell, assistant counsel; Veronica Eligan, staff assistant; Phyllis Henderson, staff assistant; Thomas E. Mooney, minority counsel; Joseph V. Wolfe, minority counsel; and Sandy Strokoff, counsel, House Office of the Legislative Counsel.

## OPENING STATEMENT OF CHAIRMAN HUGHES

Mr. Hughes. The Subcommittee on Intellectual Property and Judicial Administration will come to order. Good morning, and welcome to the hearing of the subcommittee on H.R. 2222, the Antiterrorism Act of 1991.

H.R. 2222 provides a new civil legal cause of action for international terrorism by providing for extraterritorial jurisdiction over terrorist acts against U.S. nationals. It, therefore, parallels criminal legislation which we enacted in 1986, which I might say moved out of this committee and the Foreign Affairs Committee. That law, the so-called "long arm" statute, provides extraterritorial criminal jurisdiction for acts of international terrorism against U.S. nationals.

The provisions of H.R. 2222 have already passed the House as part of H.R. 3371, the 1991 crime bill. However, the conference report on that bill has been lingering in the Senate for almost a year and its fate is relatively uncertain.

I have, therefore, scheduled this hearing and markup on H.R. 2222 as a freestanding bill because of its importance and bipartisan support.

[The bill, H.R. 2222, follows:]

2

I

102D CONGRESS
1ST SESSION

# H. R. 2222

To provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United States nationals.

---

## IN THE HOUSE OF REPRESENTATIVES

### MAY 2, 1991

Mr. FEIGHAN (for himself, Mr. HYDE, Mr. BRYANT, Mr. BERMAN, Mr. GOSS, Mr. LEHMAN of Florida, Mr. ACKERMAN, Mr. DORNAN of California, Mr. COBLE, Mr. HORTON, Mr. APPLEGATE, Mr. LAFALCE, Mr. HUGHES, Ms. KAPTUR, Mr. LENT, Mr. LIPINSKI, Ms. JOHNSON of Connecticut, Mr. DANNEMEYER, Mr. MCNULTY, Mr. STARK, Mr. HERTEL, Mr. KENNEDY, Mr. SOLOMON, Mr. BEREUTER, Mr. KLUG, Mr. LAGOMARSINO, Mr. HANSEN, Mr. PACKARD, Mr. HERGER, Mr. GLICKMAN, Mr. SMITH of Florida, and Mr. BILBRAY) introduced the following bill; which was referred to the Committee on the Judiciary

---

# A BILL

To provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United States nationals.

1      *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE.**

4      This Act may be cited as the "Antiterrorism Act of

5  1991".

3

2

1  SEC. 2. TERRORISM.

2      (a) TERRORISM.—Chapter 113A of title 18, United

3  States Code, is amended—

4          (1) in section 2331 by striking subsection (d)

5      and redesignating subsection (e) as subsection (d);

6          (2) by redesignating section 2331 as 2332 and

7      striking the caption for section 2331 and inserting

8      the following:

9  **"§ 2332. Criminal penalties";**

10          (3) by inserting before section 2332 as redesig-

11      nated the following:

12  **"§ 2331. Definitions**

13      "As used in this chapter—

14          "(1) the term 'international terrorism' means

15      activities that—

16              "(A) involve violent acts or acts dangerous

17          to human life that are a violation of the crimi-

18          nal laws of the United States or of any State,

19          or that would be a criminal violation if commit-

20          ted within the jurisdiction of the United States

21          or of any State;

22              "(B) appear to be intended—

23                  "(i) to intimidate or coerce a civilian

24              population;

25                  "(ii) to influence the policy of a gov-

26              ernment by intimidation or coercion; or

•HR 2222 IH

4

3

1        "(iii) to affect the conduct of a gov-

2        ernment by assassination or kidnapping;

3        and

4        "(C) occur primarily outside the territorial

5        jurisdiction of the United States, or transcend

6        national boundaries in terms of the means by

7        which they are accomplished, the persons they

8        appear intended to intimidate or coerce, or the

9        locale in which their perpetrators operate or

10       seek asylum;

11       "(2) the term 'national of the United States'

12       has the meaning given such term in section

13       101(a)(22) of the Immigration and Nationality Act;

14       "(3) the term 'person' means any individual or

15       entity capable of holding a legal or beneficial interest

16       in property; and

17       "(4) the term 'act of war' means any act occur-

18       ring in the course of—

19       "(A) declared war;

20       "(B) armed conflict, whether or not war

21       has been declared, between two or more na-

22       tions; or

23       "(C) armed conflict between military forces

24       of any origin.".

5

4

1   (4) by adding immediately after section 2332 as

2  redesignated the following new sections:

3 **"§ 2333. Civil remedies**

4  "(a) ACTION AND JURISDICTION.—Any national of

5 the United States injured in his person, property, or busi-

6 ness by reason of an act of international terrorism, or his

7 estate, survivors, or heirs, may sue therefor in any appro-

8 priate district court of the United States and shall recover

9 threefold the damages he sustains and the cost of the suit,

10 including attorney's fees.

11  "(b) ESTOPPED UNDER UNITED STATES LAW.—A

12 final judgment or decree rendered in favor of the United

13 States in any criminal proceeding under section 1116,

14 1201, 1203, or 2332 of this title or section 1472 (i), (k),

15 (l), (n), or (r) of title 49 App. shall estop the defendant

16 from denying the essential allegations of the criminal of-

17 fense in any subsequent civil proceeding under this sec-

18 tion.

19  "(c) ESTOPPED UNDER FOREIGN LAW.—A final

20 judgment or decree rendered in favor of any foreign state

21 in any criminal proceeding shall, to the extent that such

22 judgment or decree may be accorded full faith and credit

23 under the law of the United States, estop the defendant

24 from denying the essential allegations of the criminal of-

6

5

1 fense in any subsequent civil proceeding under this sec-

2 tion.

**3 "§ 2334. Jurisdiction and venue**

4     "(a) GENERAL VENUE.—Any civil action under sec-

5 tion 2333 of this title against any person may be institut-

6 ed in the district court of the United States for any dis-

7 trict where any plaintiff resides or where any defendant

8 resides or is served, or has an agent. Process in such a

9 civil action may be served in any district where the defend-

10 ant resides, is found, or has an agent.

11     "(b) SPECIAL MARITIME OR TERRITORIAL JURISDIC-

12 TION.—If the actions giving rise to the claim occurred

13 within the special maritime and territorial jurisdiction of

14 the United States, as defined in section 7 of this title, then

15 any civil action under section 2333 of this title against

16 any person may be instituted in the district court of the

17 United States for any district in which any plaintiff re-

18 sides or the defendant resides, is served, or has an agent.

19     "(c) SERVICE ON WITNESSES.—A witness in a civil

20 action brought under section 2333 of this title may be

21 served in any other district where the defendant resides,

22 is found, or has an agent.

23     "(d) CONVENIENCE OF THE FORUM.—The district

24 court shall not dismiss any action brought under section

7

6

1 2333 of this title on the grounds of the inconvenience or

2 inappropriateness of the forum chosen, unless—

3     "(1) the action may be maintained in a foreign

4    court that has jurisdiction over the subject matter

5    and over all the defendants;

6     "(2) that foreign court is significantly more

7    convenient and appropriate; and

8     "(3) that foreign court offers a remedy which is

9    substantially the same as the one available in the

10    courts of the United States.

11 **"§ 2335. Limitation of actions**

12   "(a) IN GENERAL.—Subject to subsection (b), a suit

13 for recovery of damages under section 2333 of this title

14 shall not be maintained unless commenced within 4 years

15 from the date the cause of action accrued.

16   "(b) CALCULATION OF PERIOD.—The time of the ab-

17 sence of the defendant from the United States or from

18 any jurisdiction in which the same or a similar action aris-

19 ing from the same facts may be maintained by the plain-

20 tiff, or any concealment of his whereabouts, shall not be

21 reckoned within this period of limitation.

22 **"§ 2336. Other limitations**

23   "No action shall be maintained under section 2333

24 of this title for injury or loss by reason of an act of war.

8

7

1 **"§ 2337. Suits against Government officials**

2    "No action shall be maintained under section 2333

3 of this title against—

4         "(1) the United States, an agency of the United

5         States, or an officer or employee of the United

6         States or any agency thereof acting within his offi-

7         cial capacity or under color of legal authority; or

8         "(2) a foreign state, an agency of a foreign

9         state, or an officer or employee of a foreign state or

10        an agency thereof acting within his official capacity

11        or under color of legal authority.

12 **"§ 2338. Exclusive Federal jurisdiction**

13    "The district courts of the United States shall have

14 exclusive jurisdiction over an action brought under this

15 chapter."; and

16         (5) by amending the table of sections to read as

17        follows:

"CHAPTER 113A—TERRORISM

"Sec.
"2331. Definitions.
"2332. Criminal penalties.
"2333. Civil remedies.
"2334. Jurisdiction and venue.
"2335. Limitation of actions.
"2336. Other limitations.
"2337. Suits against government officials.
"2338. Exclusive Federal jurisdiction.

18    (b) TABLE OF CONTENTS.—The table of contents of

19 part 1, title 18, United States Code, is amended by strik-

20 ing:

9

8

"113A. Extraterritorial jurisdiction over terrorist acts
abroad against United States nationals .... 22331"

1 and inserting in lieu thereof:

"113A. Terrorism .................................................. 22331".

2     (c) EFFECTIVE DATE.—This Act and the amend-

3 ments made by this Act shall apply to any pending case

4 or any cause of action arising on or after 4 years before

5 the date of enactment of this Act.

O

10

Mr. HUGHES. The Chair recognizes the distinguished ranking Republican of the committee, Mr. Moorhead of California.

Mr. MOORHEAD. Thank you, Mr. Chairman. I would like to commend you for holding these important hearings on H.R. 2222, the Antiterrorism Act.

Yesterday, I received a letter from Senator Grassley, who is very supportive of this legislation. The bill before us this morning is the companion to S. 740 which passed the Senate unanimously in April of last year. I ask unanimous consent to make the Senator's one-page letter a part of our hearing record.

Mr. HUGHES. Without objection, so ordered.

[The information follows:]

JOSEPH R. BIDEN, JR., DELAWARE, CHAIRMAN

EDWARD M. KENNEDY, MASSACHUSETTS
HOWARD M. METZENBAUM, OHIO
DENNIS DeCONCINI, ARIZONA
PATRICK J. LEAHY, VERMONT
HOWELL HEFLIN, ALABAMA
PAUL SIMON, ILLINOIS
HERBERT KOHL, WISCONSIN

STROM THURMOND, SOUTH CAROLINA
ORRIN G. HATCH, UTAH
ALAN K. SIMPSON, WYOMING
CHARLES E. GRASSLEY, IOWA
ARLEN SPECTER, PENNSYLVANIA
HANK BROWN, COLORADO

RONALD A. KLAIN, CHIEF COUNSEL
JEFFREY J. PECK, STAFF DIRECTOR
TERRY L. WOOTEN, MINORITY CHIEF COUNSEL
AND STAFF DIRECTOR

# United States Senate

COMMITTEE ON THE JUDICIARY
WASHINGTON, DC 20510-6275

September 17, 1992

The Honorable Carlos J. Moorhead
Ranking Member
Subcommittee on Intellectual
    Property & Jud. Administration
2142 Rayburn House Office Building
Washington, D.C.  20515

Dear Congressman Moorhead:

I am pleased that you have scheduled a mark-up on H.R. 2222, the Anti-Terrorism Act. This bill is the companion to S. 740 which passed the Senate unanimously in April, 1991.

As you know, the bill will create a cause of action for American victims of terrorism abroad and will be an important instrument in the fight against terrorism. It will remove the jurisdictional hurdles in the courts confronting victims and it empowers victims with all the weapons available in civil litigation. The bill has the support of the Anti-Defamation League, as well as the families of the victims of Pan Am 103.

I urge your Subcommittee to report the bill to the full Judiciary Committee, and to reject any weakening amendments or amendments which would in any way expand the common law national security privilege the government may now assert to stay a civil action or pre-trial discovery.

Thank you for your consideration, and congratulations in advance.

Sincerely,

Chuck

Charles E. Grassley
United States Senator

11

Mr. MOORHEAD. Generally, this bill will amend section 2331 of title 17 of the U.S. Code. Currently, this title provides for criminal prosecution of terrorists.

The legislation we are considering today will provide civil sanctions as a counterpart to the criminal statute. The Department of Justice supports the aims of this legislation, although they do have some concerns related to limitations on discovery. The administration also supports the creation of a civil remedy for victims of terrorism as a useful addition to combat terrorists.

I am looking forward to this morning's hearing.

Mr. HUGHES. I thank the gentleman.

The gentleman from Illinois.

Mr. SANGMEISTER. No opening statement.

Mr. HUGHES. Well, I understand that our good friend and colleague, Ed Feighan, cannot be with us this morning because he is ill. I am sorry to hear that, and I hope he is going to be OK.

For purposes of this proceeding, he would like us to move ahead, and he asked unanimous consent to submit his statement, and without objection, it will be so received.

[The prepared statement of Mr. Feighan follows:]

12

Statement by Rep. Edward F. Feighan
before the
Subcommittee on Intellectual Property
and Judicial Administration

Mr. Chairman, it is my pleasure to join the Subcommittee this morning as you receive tesimony and consider legislation on H.R. 2222, the Anti-Terrorism Act of 1992. I want to thank you, Mr. Chairman, not only for co-sponsoring this measure, but also for taking steps to move this bill before we adjourn.

I just want to take a minute to point out to the Members that this bill has already passed the Senate, on three separate occasions and was also passed by the Judiciary Committee as an amendment to the Crime Bill. The bill has broad bipartisan support and I would like to thank Mr. Hyde, who is our lead Republican co-sponsor, as well as Mr. Coble and Mr. Glickman who are Subcommittee co-sponsors of the bill.

As you will hear from our witnesses this morning, the need for this legislation couldn't be clearer. It provides a civil cause of action for American victims of terrorism. The need for this law was demonstrated by the case of Leon Klinghoffer, a passenger aboard the hijacked *Achille Lauro* cruiseliner.

1

13

Mr. Klinghoffer was executed and thrown overboard during the brutal terrorist attack in 1985. The Klinghoffer family took their case to federal court in their home state of New York. Only by virtue of the fact that the attack violated certain admiralty laws and that the organization involved -- the Palestine Liberation Organization -- had assets and carried on activities in New York, was the court able to establish jurisdiction over the case.

This legislation will fill in the gap in our laws and offer American victims of terrorism an opportunity to recover treble damages from their attackers.

I don't think that we're under any illusions that, in many cases, it may be difficult to get custody of known terrorists or to identify terrorist assets held in this country. But there are two additional reasons for passing this legislation. First, for its deterrent effect in putting terrorists' assets at risk and deterring them from using the U.S. financial system to hide and augment their wealth. Second, we hope that the U.S. can set an example with this legislation that will encourage our allies to pass parallel legislation to raise the cost of doing business for these outlaw organizations.

Again, I want to thank the Chairman and the Subcommittee for holding this mark-up and I ask for their support of this important legislation.

2

14

Mr. HUGHES. Our next witness is Lisa Klinghoffer, who is the daughter of Leon and Marilyn Klinghoffer. Lisa lives in New York and is married and has a young son.

After the tragic murder of her father, her mother, Marilyn Klinghoffer, founded the Klinghoffer Foundation, an organization dedicated to combating the deadly threat of terrorism. In 1986, the foundation merged with the Anti-Defamation League. The foundation works actively to counter terrorism through political, legislative and educational means.

It organizes conferences and scholarly symposia to call attention to important developments concerning international terrorism. The Klinghoffer Award is bestowed periodically upon figures who demonstrate leadership in the fight against terrorism.

Ms. Klinghoffer, we welcome you to the Subcommittee on Intellectual Property and Judicial Administration. I was very pleased to welcome Lisa in my congressional district just a few weeks ago, and we are delighted to have you with us today.

Without objection, your full statement will be made a part of the record, and we hope you can summarize, but you may proceed as you see fit. We welcome you this morning.

## STATEMENT OF LISA KLINGHOFFER, DAUGHTER OF LEON AND MARILYN KLINGHOFFER, ON BEHALF OF THE LEON AND MARILYN KLINGHOFFER MEMORIAL FOUNDATION OF THE ANTI-DEFAMATION LEAGUE, ACCOMPANIED BY JESS HORDES, WASHINGTON REPRESENTATIVE, AND MICHAEL LIEBERMAN, ASSOCIATE DIRECTOR AND COUNSEL, ANTI-DEFAMATION LEAGUE, WASHINGTON, DC

Ms. KLINGHOFFER. Thank you. Good morning. My name is Lisa Klinghoffer. I am here on behalf of the Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League. I am accompanied by Jess Hordes, the ADL's Washington representative, and Michael Lieberman, associate director and counsel for the league's Washington office. I am very pleased to testify today in support of H.R. 2222, the Antiterrorism Act.

We appreciate the leadership of the bill's House sponsors, Representative Edward Feighan and Representative Henry Hyde, and your commitment, Chairman Hughes, to action on this important measure before the end of this congressional term.

This committee undoubtedly knows of the brutal murder of my father, Leon, by terrorists on board the *Achille Lauro*. A band of terrorists hijacked the Italian cruise ship in 1985, holding the crew and passengers hostage for several days. Prior to relinquishing control of the ship, the cold-blooded killers shot my father in his wheelchair and threw his body and the wheelchair overboard.

I believe that the Antiterrorism Act serves several important functions, both symbolic and practical. In the domestic arena, it demonstrates that Congress shares with the other branches of government a real commitment to eradicating terrorism.

At the international level, enacting the effective civil remedies to supplement existing criminal penalties for overseas acts of terrorism against Americans would send a real clear and unmistakable message overseas that our country's citizens must be secure from terrorism in the international community. Beyond its political sig-

15

nificance, however, the Antiterrorism Act provides American victims of terrorism with vital legal remedies to the harms caused by international terrorists.

The *Achille Lauro* incident highlights the need for and the value of the Antiterrorism Act. The terrorists who high-jacked the *Achille Lauro* were tried in Italy. Abul Abbas, the mastermind of that operation, was convicted and sentenced in absentia, but he continues to elude the international law enforcement community.

Indeed, when asked to comment on my father's murder at a 1988 press conference in Algiers, Abbas joked about the killing, saying that maybe my father was trying to swim for it.

This legislation would provide explicit statutory authority for American citizens such as those involved in the *Achille Lauro* matter to bring suit in this country against the terrorist who harms them overseas. It would facilitate bringing suit against foreign terrorists by allowing the action to be filed in any district of this country in which the defendant might have a representative.

Finally, the act would encourage the appropriate use of our legal system by allowing plaintiffs to recover three times their actual damages, along with attorney fees.

In sum, the Antiterrorism Act would do more than send an important political sign that this Nation will not tolerate terrorism against American citizens traveling overseas.

Experience teaches that the act would serve a much needed practical purpose. If one such as Abul Abbas or his acts can be found within our borders, he could be made to answer for this deed. American citizens deserve this kind of legal protection. The Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League strongly supports the enactment of H.R. 2222.

This Judiciary Committee and the full House have already approved the provisions of the Anti-Terrorist Act as part of the omnibus crime bill. The companion Senate bill, S. 740, introduced by Senator Grassley, was passed by the Senate in April 1991, and then again more recently as part of S. 1569, the Federal Courts Study Committee Implementation Act.

We strongly urge this committee, and we strongly hope that this committee approves H.R. 2222 without weakening amendments, and I look forward to its enactment into law.

Thank you.

Mr. HUGHES. Thank you very much, Lisa.

[The prepared statement of Ms. Klinghoffer follows:]

16

### Prepared Statement of Lisa Klinghoffer, Daughter of Leon and Marilyn Klinghoffer, on Behalf of the Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League

My name is Lisa Klinghoffer and I am here on behalf of the Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League. I am accompanied by Jess Hordes, the ADL's Washington Representative, and Michael Lieberman, Associate Director and Counsel for the League's Washington Office. I am very pleased to testify today in support of H.R. 2222, the Anti-Terrorism Act.

This committee undoubtedly knows of the brutal murder of my father by terrorists on board the Achille Lauro. A band of terrorists hijacked the Italian cruise ship in 1985, holding the crew and passengers hostage for several days. Prior to relinquishing control of the ship, the cold blooded killers shot my father in his wheelchair, and threw his body and the wheelchair overboard.

Before discussing the bill itself, I would like to say a few words about the Klinghoffer Foundation. My mother, in the final months of her life, founded the Klinghoffer Foundation, an organization dedicated to combatting the deadly threat of terrorism. In 1986, we joined with the Anti-Defamation League. The Foundation actively works to counter terrorism through political, legislative and educational means. We organize conferences and scholarly symposia to call attention to important developments concerning international terrorism. The Klinghoffer Award is bestowed periodically upon figures who demonstrate leadership in the fight against terrorism. Former Assistant

1

17

Secretary of State for Human Rights and Humanitarian Affairs Richard Schifter received this year's Klinghoffer Award.

Supporting legislative measures such as the Anti-Terrorism Act is one of the most important activities of the Foundation. Legislation represents the kind of concrete steps which are essential to opposing international terrorism.

I believe that the Anti-Terrorism Act serves several important functions, both symbolic and practical. In the domestic arena, it demonstrates that Congress shares with the other branches of government a commitment to eradicating terrorism. At the international level, enacting effective civil remedies to supplement existing criminal penalties for overseas acts of terrorism against Americans would send a clear and unmistakable message overseas that our country's citizens must be secure from terrorism in the international community. Beyond its political significance, however, the Anti-Terrorism Act provides American victims of terrorism with vital legal remedies to the harms caused by international terrorists.

The Achille Lauro incident highlights the need for and value of the Anti-Terrorism Act. The terrorists who hijacked the Achille Lauro were tried in Italy. Abul Abbas, the mastermind of that operation was convicted and sentenced in absentia, but he continues to elude the international law enforcement community. Indeed, when asked to comment

2

18

on my father's murder at a 1988 press conference in Algiers, Abbas joked about the killing saying that maybe my father "was trying to swim for it."

My family and others sued the PLO in an effort to hold the organization responsible for the terrorism aboard the Achille Lauro. Without an explicit statutory remedy available to us under federal law, however, we found ourselves bogged down in litigation over procedural issues.

As you may be aware, earlier this summer the United States District Court for the Southern District of New York handed us an unfortunate setback. The court dismissed our suit, without prejudice, "for lack of personal jurisdiction because of ineffective service of process." Our attorney is still exploring other legal options.

It seems likely that the Anti-Terrorism Act would have enabled us to avoid many of the procedural obstacles we have encountered. This legislation would provide explicit statutory authority for American citizens such as those involved in the Achille Lauro matter to bring suit in this country against the terrorists who harm them overseas. It would facilitate bringing suit against foreign terrorists by allowing the action to be filed in any district of this country in which the defendant might have a representative. Finally, the Act would encourage the appropriate use of our legal system by allowing plaintiffs to recover three times their actual damages along with attorney's fees.

3

19

In sum, the Anti-Terrorism Act would do more than send the important political signal that this nation will not tolerate terrorism against American citizens travelling overseas; experience teaches that the Act would serve a much-needed practical purpose. If one such as Abul Abbas or his agents can be found within our borders, he could be made to answer for this deeds. American citizens deserve this kind of legal protection.

The Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League strongly supports the enactment of H.R. 2222. This Judiciary Committee and the full House have already approved the provisions of the Anti-Terrorist Act as part of the omnibus crime bill. The companion Senate bill, S. 740 introduced by Senator Grassley, was passed by the Senate in April, 1991 and then again, more recently, as part of S. 1569, the Federal Courts Study Committee Implementation Act. We urge this Subcommittee to approve H.R. 2222 without weakening amendments and look forward to its enactment into law.

4

20

## THE KLINGHOFFER AWARD

In recognition of those who exercise the political will to combat terrorism, the Foundation has established the Klinghoffer Award, an honor bestowed periodically in appreciation of important contributions in the struggle against terrorism.

In June 1987, the British Consul-General in New York, James Medan, accepted the first Klinghoffer Award on behalf of the government of Margaret Thatcher in a ceremony at the Grand Hyatt Hotel in New York. The award honored Great Britain for its decision to sever diplomatic relations with Syria because of that country's complicity in an attempt to destroy an Israeli passenger airliner.

In response to an overwhelming outpouring of public support following Leon's death, the Klinghoffer family decided to establish a foundation dedicated to educating the world about the deadly realities of terrorism. Appearing before Congressional committees and meeting with the press and civic groups, Leon's widow Marilyn Klinghoffer spearheaded a tireless campaign to stimulate public outcry and governmental action against terrorism. After Marilyn's untimely death from cancer in February 1986, her daughters Ilsa and Lisa and family/friends continued the work of the Klinghoffer Foundation.



In the fall of 1986, the Klinghoffer Foundation became formally affiliated with the Anti-Defamation League. Since then, the Leon and Marilyn Klinghoffer Memorial Foundation of the Anti-Defamation League of B'nai B'rith has worked to combat the threat of terrorism through educational and public awareness activities such as the creation of an award to recognize international commitment to combating terrorism, sponsorship of conferences involving leading authorities on terrorism, and publication of detailed studies and reports on terrorism and responses to terrorism.

Former Secretary of State George Shultz has agreed to accept the Klinghoffer Award in 1989 in honor of his courage in refusing a visa to Yasir Arafat when the PLO leader sought to address the United Nations in November, 1988.

## SCHOLARLY CONFERENCES

In April 1988, the Foundation, in cooperation with several universities, sponsored a conference entitled "Middle East Fundamentalism and Terrorism" at the Carnegie Endowment for International Peace in Washington. Top government officials analyzed global, regional, Arab and non-Arab perspectives on Middle East terrorism, as well as the religious and governmental



*The Achille Lauro following her hijacking.*

features of terrorism in that region.

Last fall, the Klinghoffer Foundation co-sponsored a similar conference at George Washington University. Threats of nihilism and government intelligence specialists reviewed terrorist activities which took place in 1988 and addressed the prospects for increased levels of terrorism facing 1989 and the implications for the Bush Administration.

## MEDIA EVENTS

The Klinghoffer Foundation fosters greater public awareness of the risk of terrorism by organizing year-end conferences on terrorism for the print and electronic media. In December 1988, the Klinghoffer Foundation sponsored a news conference at the headquarters of the Anti-Defamation League in New York, which called attention to this country's vulnerability to terrorism, the increasing financial resources and training of international terrorists, and the possibility that terrorists may one day employ chemical, biological, or even nuclear weapons.

In December 1987, the Klinghoffer Foundation sponsored a news conference at the International Club in Washington which included statistical summaries of terrorist activities during that year as well as a presentation by government officials in the field of domestic and international security. In 1986, the Foundation sponsored a similar event in Washington which focused upon patterns in international terrorism and preventive measures taken in this country and elsewhere.

In addition to hosting news conferences, the Foundation helps to shape an informed domestic response to terrorism by providing statements about terrorism and by addressing inquiries by governmental

21

Mr. HUGHES. I don't really have any questions, because the bill has basically undergone close scrutiny. This would give us a number of different vehicles. It is in the anticrime bill, if that moves. It also is in the Senate version of the Federal Courts Study Act, S. 1569.

We attempted to limit ours to procedural matters, but if there is a conference, there is no question that I would take that, as part of any conference on the Court Study Act legislation. H.R. 2222 will provide us the opportunity, hopefully, to make it a freestanding bill that we can move through the suspension calendar.

In this manner, we are trying to cover all our bases, and we thank you for coming today and for your testimony, and for the great strides you have made in focusing attention upon international terrorism and developing mechanisms to deal with it.

Ms. KLINGHOFFER. I thank you for having me here.

Mr. HUGHES. We congratulate the Anti-Defamation League for their work. They have done yeoman's work in this area and have for many years. The gentleman from California.

Mr. MOORHEAD. Thank you, Mr. Chairman. We were all appalled when we read about what happened to your father. It is real a dastardly thing to do, to take a man that was in a wheelchair and do the things that they did to him.

Both the chairman and I, who are cosponsors of the bill, will do everything we can to push it forward. Whatever we can do to stop this horrible series of international terrorism deeds is a great service, and I want to commend you for this work.

It is important that Americans and people from every country be able to travel without fear of this kind of activity, and I think that if you can accomplish that, your father's death will have a real purpose.

Mr. HUGHES. Thank you.

The gentleman from Illinois.

Mr. SANGMEISTER. No particular questions, either. But for what it is worth, what the family has obviously had to go through here, that you are willing to push this, and the chairman is willing to try to extrapolate this out of the problems we have with the crime bill this year and push it forward, if nothing else, if we get this through, this should be something to show that your father's life was not totally in vain, and that this can be a living memorial to him and to the family, and we are dedicated here to try to get that done for you.

Thank you.

Mr. HUGHES. Thank you very much. That concludes the testimony on——

Ms. KLINGHOFFER. Thank you.

Mr. HUGHES. You are welcome, Lisa. Thank you, and good luck to you. The subcommittee stands adjourned.

[Whereupon, at 10:35 a.m., the subcommittee adjourned, to reconvene subject to the call of the Chair.]

○