# EXHIBIT D

**In the Supreme Court**

**Leave to Civil Appeal 4060/03**

Before:                              The Honorable Vice-President E. Rivlin
                                     The Honorable Justice E. Hayut
                                     The Honorable Justice D. Berliner

The Petitioners:                     The Palestinian Authority et al.

                                     V e r s u s

The Respondents:                     1.   Eliyahu Dayan et al.
                                     2.   Esther Chen Fellus et al.
                                     3.   Tagaya Tevja et al.
                                     4.   Anna Zaslavski et al.
                                     5.   Stella Nuritz
                                     6.   Tehila Cohen
                                     7.   Irena Litvak Nuritz et al.
                                     8.   Mila Welkov et al.
                                     9.   Vladimir Gushtchin et al.
                                     10.  Shmuel Shaitovi et al.
                                     11.  Pedesco (Oil Products) Ltd (in voluntary liquidation)
                                     12.  Menorah Insurance Company Ltd.
                                     13.  Caprice Jewelry Eilat (95) Ltd.
                                     14.  Land of Israel College (Kedumim) Elon Moreh
                                     15.  Zohir Sweetey
                                     16.  The State of Israel

                                     **Petition for leave to appeal against the decision of the
                                     Jerusalem District Court from March 30, 2003 in Civil Case
                                     2538/00 that was handed down by the Honorable Judges, M.
                                     Gal, M. Mizrahi and M. Drori**

Date of Hearing:                     Heshvan 10, 5767          (November 1, 2006)

On Behalf of the Petitioners :       Adv. Yosef Arnon

On Behalf of Respondents 1, 6-7:     Adv. Nitzana Darshan-Leitner
On Behalf of Respondents 2-4, 8-10:  Adv. Roland Roth
On Behalf of Respondent 12:          Adv. Iris Shalmon
On Behalf of Respondent 13:          Adv. Benjamin Taub
On Behalf of Respondent 14:          Adv. Moshe Glick
On Behalf of Respondent 15:          Adv. Nadav Haetzni; Adv. Adi Brenner
On Behalf of Respondent 16:          Adv. Naomi Zameret; Adv Orit Sonn

## RULING

Vice-President E. Rivlin

1.      Citizens and residents of the State of Israel, who were injured (they themselves or members of their families) in terrorist attacks, have filed claims for damages against the Palestinian Authority. Claims have also been filed by owners of businesses for damage that they have sustained due to terrorist attacks. The President of the Jerusalem District Court, the Honorable **V. Zeiler**, ordered that a special panel, set up for this purpose, should clarify a number of questions that are common to the aforementioned claims, and these questions are:

> A.  Immunity of the Authority from the internal jurisdiction of the judicial authorities of the State of Israel.

> B.  The Court's jurisdiction to rule on state and political questions concerning the upholding of the international agreements by virtue of which the Palestinian Authority was established.

> C.  Whether a court in Israel is the appropriate forum to hear disputes concerning the implementation of an international agreement.

> D.  Existence of a cause of action claimed under an international agreement that has not been adopted by internal legislation.

> E.  The argument that, under the choice of law rules, the law in the territory of the Authority applies and the plaintiffs have therefore no cause of action under Israeli law.

These questions are dealt with below, in order, and are referred to as follows: **Question A, Question B, Question C, Question D, and Question E.**

2.      The panel that was established (the Honorable Judges, **M. Gal, M. Mizrahi and M. Drori**) convened and discussed the aforementioned questions, at length. At the end of the day, it was found that the three judges on the panel had reached unanimous conclusions with regard to Questions (C) - (E). The answers given are as follows:

> C.  The question of the appropriateness of the forum is a function of each claim individually, and no all-encompassing answer can be given for all the claims. However, it has already been clarified above that, in the vast majority of the cases, it does not seem that the claim of an improper forum is appropriate to the claims that have been filed.

> D.  The political and international agreements, by virtue of which the Palestinian Authority was established, cannot by themselves serve as a cause of action or as a topic for a hearing in a legal proceeding in the State of Israel, unless the norms have been adopted in internal Israeli legislation or unless they exist in any case in international common law, which is not at variance with domestic law.

    E.  We did not find that the claims being discussed are subject to the law prevailing in the territory of the Palestinian Authority. Under the choice of law rules followed in the State of Israel, it is required that Israeli law be applied with regard to the claims. That which is set forth above does not apply to the Pedesco claim, with regard to which it will be necessary to clarify this matter in the actual case, in accordance with the specific agreement to which the case refers.

As stated, the three judges on the panel reached a unanimous opinion with regard to these topics. However with regard to the other two questions, their positions differed. The majority opinion was expressed by Justices Gal and Mizrahi and was worded as follows:

    A.  The issue of the immunity of the Palestinian Authority from internal jurisdiction in the State of Israel can be decided pursuant to a certificate from the Minister of Foreign Affairs, which will specify the extent to which the State recognizes the Palestinian Authority. Said immunity is procedural and thus the relevant period to which it applies is the time during which proceedings are being conducted.

    B.  The Court does not intervene in matters of a patently political nature and does not hear such matters. Accordingly, the Court must not rule on the governmental and political questions concerning the upholding of international agreements by virtue of which the Palestinian Authority was established.

In contrast, Justice Drori responded to these questions as follows:

    A.  The Palestinian Authority—in accordance with its current legal status—does not have immunity from the internal jurisdiction of the courts of the State of Israel, and this does not require a certificate from the Minister of Foreign Affairs, since this is the law.

    B.  The Court does not generally deal with governmental and political questions concerning the upholding or failure to uphold the international agreements by virtue of which the Palestinian Authority was established. However, the Court is permitted to examine these agreements, as legal material, for the purpose of determining the status of the Palestinian Authority, including a review of the claim made in its defense that, as a state, it is entitled to immunity. Moreover, an Israeli court is required to act in accordance with these international agreements, when these have passed through the crucible of the Israeli legislative process …

3.      A petition for leave to appeal has been filed against the decision of the District Court. The petition, as it itself declares, does not address the determinations of the District Court in their entirety. It pertains to the answer given by the District Court to Questions A, C, D, and E. In other words: to the question of immunity from the internal jurisdiction of the courts in Israel; to the question of the

appropriateness of the forum; to the question of the existence of cause of action based upon an international agreement that has not been adopted by internal legislation; and to the question of choice of law. The petition is not addressed against the answer of the District Court to Question B that was brought before it. Furthermore, as shall be shown forthwith, also within the parameters of the questions that the petition addresses, it is only specific matters that are being contested and not the determinations of the lower court in their entirety. It is hardly necessary to note that the manner in which the petition is worded, and the questions that are raised within the framework thereof, delineate the limits of the hearing at this level.

Pursuant to the decision of this Court, leave to appeal has been granted against the decision of the District Court and supplementary pleadings have been submitted, while clarifying that the granting of the leave to appeal "is not be taken as allowing the nature of the dispute to be extended beyond that dealt with in the decision to which the petition relates." In its decision, this Court went on to state that no stay to the continuation of proceedings is to be ordered in the courts that are hearing the matters, and emphasized the demand that the latter be done for the purpose of the determination of the panels and the hearing procedures as efficiently as possible.

Up to this point, we have been dealing with the background; henceforth, we shall deal with the clarification of the questions that have brought before us:

4.    In all matters pertaining to Question A—this being the question of immunity of the Palestinian Authority from legal proceedings in the civil courts in Israel—the petition for leave to appeal, from its outset, only addresses one issue, and that is the existence or lack thereof of a dominant, governmental character in the actions of the Authority to which the various claims relate. The importance of this question stems from the rule that the laws of foreign sovereign immunity, which constitute part of international common law and as such are also part of the law of the State of Israel, do not grant absolute immunity. This refers to a relative and limited immunity, which is restricted to isolated and clear instances in which the dominant element in the action of the other state, the one that is claiming immunity, has a governmental character (Leave to Civil Appeal 7092/94 *Her Majesty the Queen in Right of Canada v. Edelson*, Decisions of the Supreme Court of Israel 51(1) 625 (1997)).

The District Court did not expand upon this topic and its position with regard thereto is written in an *obiter dictum*. "Though exceeding what is necessary, comment will be made at this stage" - so states Article 9 of the majority opinion—"that the nature of the claims for damages—to the extent that the factual element on which they are based shall be proven—lacks a dominant, governmental character, whereby, even if the Palestinian Authority is entitled to foreign sovereign immunity, this would in fact not be granted to it in respect of these actions." The Court went on to make specific reference to the claim of Respondent 11 (which in the meantime has been withdrawn from the petition before us), regarding which, so it was ruled, the question of the governmental classification of the action to which the claim relates was clarified to the degree necessary within the framework of the hearing of the relevant case (see the comments made in a similar vein by the minority judge in Sections 38-40 of his opinion). The Petitioners dispute these statements. In their opinion, the acts that

have been attributed to them do have a governmental character, and therefore, if the Palestinian Authority is entitled in principle to foreign sovereign immunity, then the immunity applies to the actions which are allegedly attributed to it in the various claims.

We do not deem it fitting to cast this question, which deals with the extent of the immunity, in stone. The District Court did not rule on this matter and its position was stated, as referred to above, in excess of that necessary and as an *obiter dictum*. As the District Court noted, the law on this topic is not necessarily identical with regard to all of the claims. Moreover, prior to making a determination with regard to the extent of the immunity, there is a preliminary question, which is whether the Palestinian Authority is entitled, in principle, to foreign sovereign immunity. With regard to this question, the majority opinion left this to be determined by the Court that will hear each individual claim, in accordance with a certificate from the Minister of Foreign Affairs that will be presented to it; this being from the point of view that the question of the recognition of the status of the Palestinian Authority, for the purpose of immunity, is a question of political fact, the answer to which needs to be provided by the executive branch of the State of Israel, and not by the courts (with regard to this matter, Justice Drori dissented from the majority and ruled that a certificate from the Minister of Foreign Affairs is not necessary, since the Court is required to determine the legal question pertaining to the existence or non-existence of foreign sovereign immunity, and that the Palestinian Authority is not entitled to such immunity). The Attorney General, in his response today, supports the position of the majority judges with regard to the necessity for a certificate from the Minister of Foreign Affairs and emphasizes that the Palestinian Authority does not meet the conditions stipulated in international judicial rules in all matters pertaining to its definition as a state. However, it should be emphasized that **the Petitioners themselves have not raised any argument or objection on this topic**. Both in the petition for leave to appeal and also in the supplementary pleadings dated November 16, 2004, they clarify, time and time again, that they are focusing their appeal solely on the question of the governmental character of the actions, which impacts on the immunity. In other words, the position of the District Court in all matters pertaining to the issue of the existence of immunity for the Palestinian Authority, and for the need in this context for a certificate from the Minister of Foreign Affairs (which reflects the position of the executive branch of the state in which the court has jurisdiction), has not been placed before us for the purpose of the appeal, and, as was decided in the lower court, the question is due to be clarified at the relevant time therefor, viz.: at the time of conducting the proceedings. It should be noted that, in these circumstances, there is no further necessity to require a bill to be proposed with regard to the foreign sovereign immunity, in as much as this has no relevance to the developments that have occurred in the Gaza Strip and in other regions, after the decision was handed down by the District Court. In the supplementary summations on behalf of the Petitioners, dated March 30, 2006, they indeed alleged that a review should be made of the possible change in the status of the Palestinian Authority, following the implementation of the Disengagement Plan and the implications, if any, thereof on the question of immunity. However, this question becomes relevant within the framework of the examination to be conducted with regard to the immunity of the Palestinian Authority—the examination whose method of being conducted is outlined in the decision of the lower court and which, as stated, the Petitioners have not sought to contest.

5.      From that which has been set forth above, it is revealed that the petition for leave to appeal does not make any reference whatsoever to the question of the application of the foreign sovereign immunity to the Palestinian Authority.   The question to which the petition for leave to appeal refers is solely the question of the extent of the immunity—a question that might arise if it were to be determined, after all, that the Palestinian Authority is entitled to foreign sovereign immunity.   However, the question of the extent of the immunity has not been determined in a binding manner and it is possible that this will not be raised at all.   It was discussed in a short *obiter dictum* and its relevance is conditioned to there first being a determination with regard to the issue of the existence of immunity for the Palestinian Authority.   In these circumstances, we do not believe that it would be fitting to make a determination, at this stage and at this level, on the question that is raised in the petition for leave to appeal, this being the question of the governmental character of the actions of the Authority for the purpose of the foreign sovereign immunity. We rule that this question will be discussed, should it be necessary to do so, at a later stage in the proceedings.

        It should be noted that the supplementary pleadings on behalf of the Petitioners included arguments that were outside the framework of the hearing as outlined in the District Court, and included arguments that pertain to the application of the doctrine relating to "state actions" to the pending actions against them and to the question of their jurisdiction in "acts of war." It is hardly necessary to note that it is not deemed fitting and there is no need to hear these arguments at the present time.

6.      Until this point, we have been dealing with Question A.  As referred to above, Question B does not constitute part of the petition for leave to appeal and, according to the Petitioners, "they give their wholehearted support to the decision of the lower court" with regard to this question.  Consequently, we shall not make further reference to this point in this context.  With regard to Question C—the question of the appropriateness of the forum—the Petitioners argue that the appropriate forum for the adjudication of the claims filed against them, if at all, is not an Israeli court, but rather a competent court in the territories of the Palestinian Authority or, alternately, some other mechanism for settling disputes (the Petitioners propose that the claims be adjudicated "by means of a general arrangement by mutual consent or by means of a compromise mechanism or a mutually acceptable arbitration between the State of Israel and the Palestinian Authority, in accordance with the Declaration of Principles and the Interim Agreements").

        However, it appears that again, in relation to the question of the inappropriateness of the forum, the District Court did not deem it fitting to hand down unequivocal determinations and left this topic to be examined specifically in each individual claim.  In the Court's words: "The question of the appropriateness of the forum is a function of each claim individually, and no all-encompassing answer can be given for all the claims."  Nevertheless, the Petitioners are objecting to the statement by the lower court, in stating that "…in the vast majority of the cases, it does not seem that the claim of an improper forum is appropriate to the claims that have been filed."  We believe that this statement-comment is insufficient to justify a full clarification of the issue of the appropriateness of the forum—this being, as stated, in light of the District

Court's avoidance of making a determination on this matter and on the way it is to be analyzed, as well as avoiding an outcome that would be certain to open the way for the Petitioners to have all their arguments heard on this matter in the courts that are hearing the matters.

7.       From here we progress to Question D.  A perusal of the arguments of the Petitioners within this context reveals that rather than contesting something contained in the decision of the District Court, their arguments concern matters not included therein.  In other words, the complaint of the Petitioners is that the Court did in fact address the question of the existence of a cause of action claimed under an international agreement that has not been adopted by internal legislation (and ruled that their method is correct with regard to this question) but **did not discuss** an additional layering of the plea, which deals with the possibility of a cause of action arising by virtue of an international agreement **for a party that is not a party to the agreement**.  Without commenting on the question of whether the additional layering of the plea is included within the parameters of the five questions placed before the District Court for its examination, according to the decision of its President, it would appear that in any event, due to this layering which, in the words of the Petitioners, was neither discussed nor determined, it would not be fitting for this to be clarified for the first time at this stage, particularly as there is nothing to prevent the Petitioners from raising this with the courts that are hearing the matters, in which the claims themselves will be discussed.  The result is that, with regard to this question too, it is not deemed fitting for this Court to involve itself at the current stage of proceedings.

8.       The last question - Question E - deals with the issue of the choice of law.  The District Court determined that Israeli law could be applied to the various claims (with the exception of the claim of Respondent 11, with regard to which the lower court avoided giving a decision at this stage, and which has been withdrawn from the proceedings before us).  The reasoning: "Our concern is with regard to the claims of Israelis, which have been filed in an Israeli court that possesses jurisdiction.  The discussion revolves around causes that, in the majority of the claims, originate in actions, a few or a part of which took place in the territory of the State of Israel or in territories placed under its control in accordance with the agreements.  The alleged damage was caused within the borders of the State of Israel.  The sole foreign element that the claims have in common is the identity of the defendant, i.e. the Palestinian Authority.  In these circumstances, where wrongdoings have been perpetrated within the jurisdiction of the Court, it is deemed fitting to apply Israeli law."  The Court went on to state that, in any case, "This outcome is in line with the procedural approach and buys time for judicial interpretation by the courts in Israel, pursuant to which, in the event that a foreign element is involved, the law that is to be applied is the material law that has the strongest connection to the events and that corresponds to the expectations of the parties involved."

        The Petitioners are contesting the rationale of the District Court.  Under their method, the law to be applied to the pending actions against them is the law that is applied in the territories of the Palestinian Authority.  In their opinion, this choice of law is made necessary pursuant to the rule of torts that directs that the law to be applied is that of the venue in which the wrongdoing was perpetrated.  The Petitioners are arguing that for this purpose it makes no difference where the terrorist attacks themselves took place; rather, it is where the actions that have been attributed to the Petitioners were performed that is relevant, viz.: incitement to terror, its encouragement and its support, non-prevention of vehicle thefts, non-

enforcement of execution processes, etc. As the Petitioners emphasize, these actions are all matters that require policy decisions and execution, and they were carried out in the territories of the Palestinian Authority. Moreover, the Petitioners state that, even with regard to the terrorist attacks themselves, a significant portion of these were perpetrated in territories that are not under the control of the State of Israel or that are regrettably not under its complete control. Furthermore, the Petitioners are of the opinion that the law that applies in the territories of the Palestinian Authority has the strongest ties and most significant relationship to the matters to which the claims relate.

Subsequent to the handing down of the decision of the District Court that is the subject of the appeal before us, a ruling was handed down in Civil Appeal 1432/03 **Yanun Food Products Manufacturing and Marketing Ltd. v. Kanan,** Decisions of the Supreme Court of Israel 59(1) 345. The decision extensively analyzed the issue of choice of law rules in torts. It was decided that the choice of law rule directs that the law to be applied is that of the venue in which the wrongdoing was perpetrated, and that the court is granted the discretion to diverge from this rule in rare instances, where justice requires such a divergence. Due to the nature of things, the District Court in making its determination was unable to take into account the doctrine set out in the **Yanun** case. The written position of the Attorney General was given prior to the decision in the **Yanun** case and in any case had no relevance with regard to the proceedings being decided upon in that case (the Attorney General addressed the decision in the notice on his behalf that was presented on September 12, 2004). There is also no analysis of the choice of law question in light of the **Yanun** case in the pleadings of the other Respondents. On the other hand, the Appellants have submitted supplementary pleadings following the decision in the **Yanun** case and they are seeking to support their position with the doctrine that came out of that case.

On the face of things, even following the decision in the **Yanun** case, there are strong arguments to support the outcome arrived at by the District Court, viz., the application of Israeli law. As to the venue in which the wrongdoing was perpetrated, there does not necessarily have to be uniformity within all the claims and this question cannot necessarily be answered unequivocally in the matter under discussion. This being in light of the fact that the terrorist attacks that are the subject of the various claims were perpetrated in different regions—some in Israel, some outside Israel—and that the actions attributed to the Petitioners in these claims are of different types that do not necessarily have common characteristics in relation to the venue in which they took place. In these circumstances, the answer to the choice of law question, insofar as it is dependent on the venue in which the wrongdoing was perpetrated, is not self-evident. At the same time, even in instances in which the venue in which the wrongdoing was perpetrated is not Israel, an examination has to be made as to whether the particular circumstances that we are dealing with do not necessitate an exception being made to the rule. Thus, for example, one cannot ignore in this context the fact that, among the arguments raised in the various claims, are those that relate to the encouragement and support by the Palestinian Authority for the perpetration of violent acts directed against Israeli citizens and residents. It would appear that there is an inherent difficulty in resolving these claims under the foreign law that applies in the Palestinian Authority (law that has yet to prove itself). It can be assumed that the Israeli law is the law that has a real interest in the resolution of this matter, and that there is a difficulty in

9

subordinating the cause of an action like this to foreign law (it should be noted that there are instances where states have expressly enacted internal legislation that relates to claims against states that support terror, and it is clear that the choice of law rule, which directs that the law to be applied is that of the venue in which the wrongdoing was perpetrated, could frustrate the objective of such statutes. See, for example, *Flatow v. The Islamic Republic of Iran*, 999 F. Supp. 1 (1998)).

In the circumstances described, it is not our intention to make a determination, at this stage, as to which law is to be applied to all the claims. In light of the necessity for the various claims to be examined individually—each according to its own characteristics—taking into account the new doctrine stemming from the decision in the **Yanun** case, whose relevance to the matters we are dealing with does not sufficiently clarify the necessity of the arguments of the parties before us, we are of the opinion that it is befitting that the choice of law question be left to be examined on an individual basis within the context of the courts that are hearing the matters.

The outcome is that the appeal is rejected, subject to the remarks contained in this decision. Under the circumstances of the case, we do not deem it appropriate to issue a costs order in these proceedings.


                                                                    **Vice-President**

**Justice E. Hayut**

    I concur.

                                                                    **Justice**

**Justice D. Berliner**

    I concur.

                                                                    **Justice**

    **Decided as stated in the decision of Vice-President E. Rivlin.**

    **Handed down on 2 Av 5767 (July 17, 2007)**


**Vice-President**                    **Justice**                    **Justice**

This copy is subject to editing and wording changes. [illegible]
Information Center. Tel.: 02-6593666.  Internet Site: www.court.gov.il