# EXHIBIT G

Geneva Convention relative to the Protection of Civilian Persons in Time of War          Page 1 of 52

  

Français | Español

# Geneva Convention relative to the Protection of Civilian Persons in Time of War

**Adopted on 12 August 1949 by the Diplomatic Conference for the Establishment of International Conventions for the Protection of Victims of War, held in Geneva from 21 April to 12 August, 1949**

*entry into force* 21 October 1950

## PART I

GENERAL PROVISIONS

### Article 1

The High Contracting Parties undertake to respect and to ensure respect for the present Convention in all circumstances.

### Article 2

In addition to the provisions which shall be implemented in peacetime, the present Convention shall apply to all cases of declared war or of any other armed conflict which may arise between two or more of the High Contracting Parties, even if the state of war is not recognized by one of them.

The Convention shall also apply to all cases of partial or total occupation of the territory of a High Contracting Party, even if the said occupation meets with no armed resistance.

Although one of the Powers in conflict may not be a party to the present Convention, the Powers who are parties thereto shall remain bound by it in their mutual relations. They shall furthermore be bound by the Convention in relation to the said Power, if the latter accepts and applies the provisions thereof.

### Article 3

In the case of armed conflict not of an international character occurring in the territory of one of the High Contracting Parties, each Party to the conflict shall be bound to apply, as a minimum, the following provisions:

1. Persons taking no active part in the hostilities, including members of armed forces who have laid down their arms and those placed hors de combat by sickness, wounds, detention, or any other cause, shall in all circumstances be treated humanely, without any adverse distinction founded on race, colour, religion or faith, sex, birth or wealth, or any other similar criteria.

present Convention as would, if exercised in the favour of such individual person, be prejudicial to the security of such State.

Where in occupied territory an individual protected person is detained as a spy or saboteur, or as a person under definite suspicion of activity hostile to the security of the Occupying Power, such person shall, in those cases where absolute military security so requires, be regarded as having forfeited rights of communication under the present Convention.

In each case, such persons shall nevertheless be treated with humanity, and in case of trial, shall not be deprived of the rights of fair and regular trial prescribed by the present Convention. They shall also be granted the full rights and privileges of a protected person under the present Convention at the earliest date consistent with the security of the State or Occupying Power, as the case may be.

### Article 6

The present Convention shall apply from the outset of any conflict or occupation mentioned in Article 2.

In the territory of Parties to the conflict, the application of the present Convention shall cease on the general close of military operations.

In the case of occupied territory, the application of the present Convention shall cease one year after the general close of military operations; however, the Occupying Power shall be bound, for the duration of the occupation, to the extent that such Power exercises the functions of government in such territory, by the provisions of the following Articles of the present Convention: I to 12, 27, 29 to 34, 47, 49, 51, 52, 53, 59, 61 to 77, and 143.

Protected persons whose release, repatriation or re-establishment may take place after such dates shall meanwhile continue to benefit by the present Convention. Article 7

In addition to the agreements expressly provided for in Articles 11, 14, 15, 17, 36, 108, 109, 132, 133 and 149, the High Contracting Parties may conclude other special agreements for all matters concerning which they may deem it suitable to make separate provision. No special agreement shall adversely affect the situation of protected persons, as defined by the present Convention, nor restrict the rights which it confers upon them.

Protected persons shall continue to have the benefit of such agreements as long as the Convention is applicable to them, except where express provisions to the contrary are contained in the aforesaid or in subsequent agreements, or where more favourable measures have been taken with regard to them by one or other of the Parties to the conflict.

### Article 8

Protected persons may in no circumstances renounce in part or in entirety the rights secured to them by the present Convention, and by the special agreements referred to in the foregoing Article, if such there be.

### Article 9

establish in accordance with the said Article.

### Article 49

Individual or mass forcible transfers, as well as deportations of protected persons from occupied territory to the territory of the Occupying Power or to that of any other country, occupied or not, are prohibited, regardless of their motive.

Nevertheless, the Occupying Power may undertake total or partial evacuation of a given area if the security of the population or imperative military reasons do demand. Such evacuations may not involve the displacement of protected persons outside the bounds of the occupied territory except when for material reasons it is impossible to avoid such displacement. Persons thus evacuated shall be transferred back to their homes as soon as hostilities in the area in question have ceased.

The Occupying Power undertaking such transfers or evacuations shall ensure, to the greatest practicable extent, that proper accommodation is provided to receive the protected persons, that the removals are effected in satisfactory conditions of hygiene, health, safety and nutrition, and that members of the same family are not separated.

The Protecting Power shall be informed of any transfers and evacuations as soon as they have taken place.

The Occupying Power shall not detain protected persons in an area particularly exposed to the dangers of war unless the security of the population or imperative military reasons so demand.

The Occupying Power shall not deport or transfer parts of its own civilian population into the territory it occupies.

### Article 50

The Occupying Power shall, with the cooperation of the national and local authorities, facilitate the proper working of all institutions devoted to the care and education of children.

The Occupying Power shall take all necessary steps to facilitate the identification of children and the registration of their parentage. It may not, in any case, change their personal status, nor enlist them in formations or organizations subordinate to it.

Should the local institutions be inadequate for the purpose, the Occupying Power shall make arrangements for the maintenance and education, if possible by persons of their own nationality, language and religion, of children who are orphaned or separated from their parents as a result of the war and who cannot be adequately cared for by a near relative or friend.

A special section of the Bureau set up in accordance with Article 136 shall be responsible for taking all necessary steps to identify children whose identity is in doubt. Particulars of their parents or other near relatives should always be recorded if available.

The Occupying Power shall not hinder the application of any preferential measures in regard to food, medical care and protection against the effects of war, which may have been adopted

prior to the occupation in favour of children under fifteen years, expectant mothers, and mothers of children under seven years.

### Article 51

The Occupying Power may not compel protected persons to serve in its armed or auxiliary forces. No pressure or propaganda which aims at securing voluntary enlistment is permitted.

The Occupying Power may not compel protected persons to work unless they are over eighteen years of age, and then only on work which is necessary either for the needs of the army of occupation, or for the public utility services, or for the feeding, sheltering, clothing, transportation or health of the population of the occupied country. Protected persons may not be compelled to undertake any work which would involve them in the obligation of taking part in military operations. The Occupying Power may not compel protected persons to employ forcible means to ensure the security of the installations where they are performing compulsory labour.

The work shall be carried out only in the occupied territory where the persons whose services have been requisitioned are. Every such person shall, so far as possible, be kept in his usual place of employment. Workers shall be paid a fair wage and the work shall be proportionate to their physical and intellectual capacities. The legislation in force in the occupied country concerning working conditions, and safeguards as regards, in particular, such matters as wages, hours of work, equipment, preliminary training and compensation for occupational accidents and diseases, shall be applicable to the protected persons assigned to the work referred to in this Article.

In no case shall requisition of labour lead to a mobilization of workers in an organization of a military or semi-military character.

### Article 52

No contract, agreement or regulation shall impair the right of any worker, whether voluntary or not and wherever he may be, to apply to the representatives of the Protecting Power in order to request the said Power's intervention.

All measures aiming at creating unemployment or at restricting the opportunities offered to workers in an occupied territory, in order to induce them to work for the Occupying Power, are prohibited.

### Article 53

Any destruction by the Occupying Power of real or personal property belonging individually or collectively to private persons, or to the State, or to other public authorities, or to social or cooperative organizations, is prohibited, except where such destruction is rendered absolutely necessary by military operations.

### Article 54

The Occupying Power may not alter the status of public officials or judges in the occupied territories, or in any way apply sanctions to or take any measures of coercion or discrimination