# EXHIBIT H

Document printed from the ICRC web site on the 30.05.2007

# Convention (IV) respecting the Laws and Customs of War on Land and its annex: Regulations concerning the Laws and Customs of War on Land. The Hague, 18 October 1907.
**Full text**

(List of Contracting Parties)

Seeing that while seeking means to preserve peace and prevent armed conflicts between nations, it is likewise necessary to bear in mind the case where the appeal to arms has been brought about by events which their care was unable to avert;

Animated by the desire to serve, even in this extreme case, the interests of humanity and the ever progressive needs of civilization;

Thinking it important, with this object, to revise the general laws and customs of war, either with a view to defining them with greater precision or to confining them within such limits as would mitigate their severity as far as possible;

Have deemed it necessary to complete and explain in certain particulars the work of the First Peace Conference, which, following on the Brussels Conference of 1874, and inspired by the ideas dictated by a wise and generous forethought, adopted provisions intended to define and govern the usages of war on land. According to the views of the High Contracting Parties, these provisions, the wording of which has been inspired by the desire to diminish the evils of war, as far as military requirements permit, are intended to serve as a general rule of conduct for the belligerents in their mutual relations and in their relations with the inhabitants.

It has not, however, been found possible at present to concert regulations covering all the circumstances which arise in practice;

On the other hand, the High Contracting Parties clearly do not intend that unforeseen cases should, in the absence of a written undertaking, be left to the arbitrary judgment of military commanders.

Until a more complete code of the laws of war has been issued, the High Contracting Parties deem it expedient to declare that, in cases not included in the Regulations adopted by them, the inhabitants and the belligerents remain under the protection and the rule of the principles of the law of nations, as they result from the usages established among civilized peoples, from the laws of humanity, and the dictates of the public conscience.

They declare that it is in this sense especially that Articles 1 and 2 of the Regulations adopted must be understood.

The High Contracting Parties, wishing to conclude a fresh Convention to this effect, have appointed the following as their Plenipotentiaries:

(Here follow the names of Plenipotentiaries)

Who, after having deposited their full powers, found in good and due form, have agreed upon the following:

Article 1. The Contracting Powers shall issue instructions to their armed land forces which shall be in conformity with the Regulations respecting the laws and customs of war on land, annexed to the present Convention.

Art. 2. The provisions contained in the Regulations referred to in Article 1, as well as in the present Convention, do not apply except between Contracting powers, and then only if all the belligerents are parties to the Convention.

Art. 3. A belligerent party which violates the provisions of the said Regulations shall, if the case demands, be liable to pay compensation. It shall be responsible for all acts committed by persons forming part of its armed forces.

Art. 4. The present Convention, duly ratified, shall as between the Contracting Powers, be substituted for the Convention of 29 July 1899, respecting the laws and customs of war on land.
The Convention of 1899 remains in force as between the Powers which signed it, and which do not also ratify the present Convention.

Art. 5. The present Convention shall be ratified as soon as possible.
The ratifications shall be deposited at The Hague.
The first deposit of ratifications shall be recorded in a procès-verbal signed by the Representatives of the Powers which take part therein and by the Netherlands Minister for Foreign Affairs.
The subsequent deposits of ratifications shall be made by means of a written notification, addressed to the Netherlands Government and accompanied by the instrument of ratification.
A duly certified copy of the procès-verbal relative to the first deposit of ratifications, of the notifications mentioned in the preceding paragraph, as well as of the instruments of ratification, shall be immediately sent by the Netherlands Government, through the diplomatic channel, to the powers invited to the Second Peace Conference, as well as to the other Powers which have adhered to the Convention. In the cases contemplated in the preceding paragraph the said Government shall at the same time inform them of the date on which it received the notification.

Art. 6. Non-Signatory Powers may adhere to the present Convention.
The Power which desires to adhere notifies in writing its intention to the Netherlands Government, forwarding to it the act of adhesion, which shall be deposited in the archives of the said Government.
This Government shall at once transmit to all the other Powers a duly certified copy of the notification as well as of the act of adhesion, mentioning the date on which it received the notification.

Art. 7. The present Convention shall come into force, in the case of the Powers which were a party to the first deposit of ratifications, sixty days after the date of the procès-verbal of this deposit, and, in the case of the Powers which ratify subsequently or which adhere, sixty days after the notification of their ratification or of their adhesion has been received by the Netherlands Government.

Art. 8. In the event of one of the Contracting Powers wishing to denounce the present Convention, the denunciation shall be notified in writing to the Netherlands Government, which shall at once communicate a duly certified copy of the notification to all the other Powers, informing them of the date on which it was received.
The denunciation shall only have effect in regard to the notifying Power, and one year after the notification has reached the Netherlands Government.

Art. 9. A register kept by the Netherlands Ministry for Foreign Affairs shall give the date of the deposit of ratifications made in virtue of Article 5, paragraphs 3 and 4, as well as the date on which the notifications of adhesion (Article 6, paragraph 2), or of denunciation (Article 8, paragraph 1) were received.
Each Contracting Power is entitled to have access to this register and to be supplied with duly certified extracts.
In faith whereof the Plenipotentiaries have appended their signatures to the present Convention.
Done at The Hague 18 October 1907, in a single copy, which shall remain deposited in the archives of the Netherlands Government, and duly certified copies of which shall be sent, through the diplomatic channel to the Powers which have been invited to the Second Peace Conference.

(Here follow signatures)


ANNEX TO THE CONVENTION

REGULATIONS RESPECTING THE LAWS AND CUSTOMS OF WAR ON LAND

SECTION I
ON BELLIGERENTS

CHAPTER I
The qualifications of belligerents

Article 1. The laws, rights, and duties of war apply not only to armies, but also to militia and volunteer corps fulfilling the following conditions:
1. To be commanded by a person responsible for his subordinates;
2. To have a fixed distinctive emblem recognizable at a distance;
3. To carry arms openly; and
4. To conduct their operations in accordance with the laws and customs of war.

In countries where militia or volunteer corps constitute the army, or form part of it, they are included under the denomination "army."

Art. 2. The inhabitants of a territory which has not been occupied, who, on the approach of the enemy, spontaneously take up arms to resist the invading troops without having had time to organize themselves in accordance with Article 1, shall be regarded as belligerents if they carry arms openly and if they respect the laws and customs of war.

Art. 3. The armed forces of the belligerent parties may consist of combatants and non-combatants. In the case of capture by the enemy, both have a right to be treated as prisoners of war.

CHAPTER II
Prisoners of war

Art. 4. Prisoners of war are in the power of the hostile Government, but not of the individuals or corps who capture them.
They must be humanely treated.
All their personal belongings, except arms, horses, and military papers, remain their property.

Art. 5. Prisoners of war may be interned in a town, fortress, camp, or other place, and bound not to go beyond certain fixed limits; but they cannot be confined except as in indispensable measure of safety and only while the circumstances which necessitate the measure continue to exist.

Art. 6. The State may utilize the labour of prisoners of war according to their rank and aptitude, officers excepted. The tasks shall not be excessive and shall have no connection with the operations of the war.
Prisoners may be authorized to work for the public service, for private persons, or on their own account.
Work done for the State is paid for at the rates in force for work of a similar kind done by soldiers of the national army, or, if there are none in force, at a rate according to the work executed.
When the work is for other branches of the public service or for private persons the conditions are settled in agreement with the military authorities.
The wages of the prisoners shall go towards improving their position, and the balance shall be paid them on their release, after deducting the cost of their maintenance.

Art. 7. The Government into whose hands prisoners of war have fallen is charged with their maintenance.
In the absence of a special agreement between the belligerents, prisoners of war shall be treated as regards board, lodging, and clothing on the same footing as the troops of the Government who captured them.

Art. 8. Prisoners of war shall be subject to the laws, regulations, and orders in force in the army of the State in whose power they are. Any act of insubordination justifies the adoption towards them of such measures of severity as may be considered necessary.
Escaped prisoners who are retaken before being able to rejoin their own army or before leaving the territory occupied by the army which captured them are liable to disciplinary punishment.
Prisoners who, after succeeding in escaping, are again taken prisoners, are not liable to any punishment on account of the previous flight.

Art. 9. Every prisoner of war is bound to give, if he is questioned on the subject, his true name and rank, and if he infringes this rule, he is liable to have the advantages given to prisoners of his class curtailed.

Art. 10. Prisoners of war may be set at liberty on parole if the laws of their country allow, and, in such cases, they are bound, on their personal honour, scrupulously to fulfil, both towards their own Government and the Government by whom they were made prisoners, the engagements they have contracted.
In such cases their own Government is bound neither to require of nor accept from them any service incompatible with the parole given.

Art. 11. A prisoner of war cannot be compelled to accept his liberty on parole; similarly the hostile

Government is not obliged to accede to the request of the prisoner to be set at liberty on parole.

Art. 12. Prisoners of war liberated on parole and recaptured bearing arms against the Government to whom they had pledged their honour, or against the allies of that Government, forfeit their right to be treated as prisoners of war, and can be brought before the courts.

Art. 13. Individuals who follow an army without directly belonging to it, such as newspaper correspondents and reporters, sutlers and contractors, who fall into the enemy's hands and whom the latter thinks expedient to detain, are entitled to be treated as prisoners of war, provided they are in possession of a certificate from the military authorities of the army which they were accompanying.

Art. 14. An inquiry office for prisoners of war is instituted on the commencement of hostilities in each of the belligerent States, and, when necessary, in neutral countries which have received belligerents in their territory. It is the function of this office to reply to all inquiries about the prisoners. It receives from the various services concerned full information respecting internments and transfers, releases on parole, exchanges, escapes, admissions into hospital, deaths, as well as other information necessary to enable it to make out and keep up to date an individual return for each prisoner of war. The office must state in this return the regimental number, name and surname, age, place of origin, rank, unit, wounds, date and place of capture, internment, wounding, and death, as well as any observations of a special character. The individual return shall be sent to the Government of the other belligerent after the conclusion of peace.
It is likewise the function of the inquiry office to receive and collect all objects of personal use, valuables, letters, etc., found on the field of battle or left by prisoners who have been released on parole, or exchanged, or who have escaped, or died in hospitals or ambulances, and to forward them to those concerned.

Art. 15. Relief societies for prisoners of war, which are properly constituted in accordance with the laws of their country and with the object of serving as the channel for charitable effort shall receive from the belligerents, for themselves and their duly accredited agents every facility for the efficient performance of their humane task within the bounds imposed by military necessities and administrative regulations. Agents of these societies may be admitted to the places of internment for the purpose of distributing relief, as also to the halting places of repatriated prisoners, if furnished with a personal permit by the military authorities, and on giving an undertaking in writing to comply with all measures of order and police which the latter may issue.

Art. 16. Inquiry offices enjoy the privilege of free postage. Letters, money orders, and valuables, as well as parcels by post, intended for prisoners of war, or dispatched by them, shall be exempt from all postal duties in the countries of origin and destination, as well as in the countries they pass through.
Presents and relief in kind for prisoners of war shall be admitted free of all import or other duties, as well as of payments for carriage by the State railways.

Art. 17. Officers taken prisoners shall receive the same rate of pay as officers of corresponding rank in the country where they are detained, the amount to be ultimately refunded by their own Government.

Art. 18. Prisoners of war shall enjoy complete liberty in the exercise of their religion, including attendance at the services of whatever church they may belong to, on the sole condition that they comply with the measures of order and police issued by the military authorities.

Art. 19. The wills of prisoners of war are received or drawn up in the same way as for soldiers of the national army.
The same rules shall be observed regarding death certificates as well as for the burial of prisoners of war, due regard being paid to their grade and rank.

Art. 20. After the conclusion of peace, the repatriation of prisoners of war shall be carried out as quickly as possible.

CHAPTER III
The sick and wounded

Art. 21. The obligations of belligerents with regard to the sick and wounded are governed by the Geneva Convention.


SECTION II
HOSTILITIES

CHAPTER I
Means of injuring the enemy, sieges, and bombardments

Art. 22. The right of belligerents to adopt means of injuring the enemy is not unlimited.


Art. 23. In addition to the prohibitions provided by special Conventions, it is especially forbidden
(a) To employ poison or poisoned weapons;
(b) To kill or wound treacherously individuals belonging to the hostile nation or army;
(c) To kill or wound an enemy who, having laid down his arms, or having no longer means of defence, has surrendered at discretion;
(d) To declare that no quarter will be given;
(e) To employ arms, projectiles, or material calculated to cause unnecessary suffering;
(f) To make improper use of a flag of truce, of the national flag or of the military insignia and uniform of the enemy, as well as the distinctive badges of the Geneva Convention;
(g) To destroy or seize the enemy's property, unless such destruction or seizure be imperatively demanded by the necessities of war;
(h) To declare abolished, suspended, or inadmissible in a court of law the rights and actions of the nationals of the hostile party. A belligerent is likewise forbidden to compel the nationals of the hostile party to take part in the operations of war directed against their own country, even if they were in the belligerent's service before the commencement of the war.


Art. 24. Ruses of war and the employment of measures necessary for obtaining information about the enemy and the country are considered permissible.


Art. 25. The attack or bombardment, by whatever means, of towns, villages, dwellings, or buildings which are undefended is prohibited.


Art. 26. The officer in command of an attacking force must, before commencing a bombardment, except in cases of assault, do all in his power to warn the authorities.


Art. 27. In sieges and bombardments all necessary steps must be taken to spare, as far as possible, buildings dedicated to religion, art, science, or charitable purposes, historic monuments, hospitals, and places where the sick and wounded are collected, provided they are not being used at the time for military purposes. It is the duty of the besieged to indicate the presence of such buildings or places by distinctive and visible signs, which shall be notified to the enemy beforehand.


Art. 28. The pillage of a town or place, even when taken by assault, is prohibited.


CHAPTER II
Spies

Art. 29. A person can only be considered a spy when, acting clandestinely or on false pretences, he obtains or endeavours to obtain information in the zone of operations of a belligerent, with the intention of communicating it to the hostile party.
Thus, soldiers not wearing a disguise who have penetrated into the zone of operations of the hostile army, for the purpose of obtaining information, are not considered spies. Similarly, the following are not considered spies: Soldiers and civilians, carrying out their mission openly, entrusted with the delivery of despatches intended either for their own army or for the enemy's army. To this class belong likewise persons sent in balloons for the purpose of carrying despatches and, generally, of maintaining communications between the different parts of an army or a territory.

Art. 30. A spy taken in the act shall not be punished without previous trial.

Art. 31. A spy who, after rejoining the army to which he belongs, is subsequently captured by the enemy, is treated as a prisoner of war, and incurs no responsibility for his previous acts of espionage.

CHAPTER III
Flags of truce

Art. 32. A person is regarded as a parlementaire who has been authorized by one of the belligerents to enter into communication with the other, and who advances bearing a white flag. He has a right to inviolability, as well as the trumpeter, bugler or drummer, the flag-bearer and interpreter who may accompany him.

Art. 33. The commander to whom a parlementaire is sent is not in all cases obliged to receive him.
He may take all the necessary steps to prevent the parlementaire taking advantage of his mission to obtain information.
In case of abuse, he has the right to detain the parlementaire temporarily.

Art. 34. The parlementaire loses his rights of inviolability if it is proved in a clear and incontestable manner that he has taken advantage of his privileged position to provoke or commit an act of treason.

CHAPTER IV
Capitulations

Art. 35. Capitulations agreed upon between the Contracting Parties must take into account the rules of military honour.
Once settled, they must be scrupulously observed by both parties.

CHAPTER V
Armistices

Art. 36. An armistice suspends military operations by mutual agreement between the belligerent parties. If its duration is not defined, the belligerent parties may resume operations at any time, provided always that the enemy is warned within the time agreed upon, in accordance with the terms of the armistice.

Art. 37. An armistice may be general or local. The first suspends the military operations of the belligerent States everywhere; the second only between certain fractions of the belligerent armies and within a fixed radius.

Art. 38. An armistice must be notified officially and in good time to the competent authorities and to the troops. Hostilities are suspended immediately after the notification, or on the date fixed.

Art. 39. It rests with the Contracting Parties to settle, in the terms of the armistice, what communications may be held in the theatre of war with the inhabitants and between the inhabitants of one belligerent State and those of the other.

Art. 40. Any serious violation of the armistice by one of the parties gives the other party the right of denouncing it, and even, in cases of urgency, of recommencing hostilities immediately.

Art. 41. A violation of the terms of the armistice by private persons acting on their own initiative only entitles the injured party to demand the punishment of the offenders or, if necessary, compensation for the losses sustained.

**SECTION III**
**MILITARY AUTHORITY OVER THE TERRITORY OF THE HOSTILE STATE**

Art. 42. Territory is considered occupied when it is actually placed under the authority of the hostile army. The occupation extends only to the territory where such authority has been established and can be exercised.

Art. 43. The authority of the legitimate power having in fact passed into the hands of the occupant, the latter shall take all the measures in his power to restore, and ensure, as far as possible, public order and safety, while respecting, unless absolutely prevented, the laws in force in the country.

Art. 44. A belligerent is forbidden to force the inhabitants of territory occupied by it to furnish information about the army of the other belligerent, or about its means of defense.

Art. 45. It is forbidden to compel the inhabitants of occupied territory to swear allegiance to the hostile Power.

Art. 46. Family honour and rights, the lives of persons, and private property, as well as religious convictions and practice, must be respected.
Private property cannot be confiscated.

Art. 47. Pillage is formally forbidden.

Art. 48. If, in the territory occupied, the occupant collects the taxes, dues, and tolls imposed for the benefit of the State, he shall do so, as far as is possible, in accordance with the rules of assessment and incidence in force, and shall in consequence be bound to defray the expenses of the administration of the occupied territory to the same extent as the legitimate Government was so bound.

Art. 49. If, in addition to the taxes mentioned in the above article, the occupant levies other money contributions in the occupied territory, this shall only be for the needs of the army or of the administration of the territory in question.

Art. 50. No general penalty, pecuniary or otherwise, shall be inflicted upon the population on account of the acts of individuals for which they cannot be regarded as jointly and severally responsible.

Art. 51. No contribution shall be collected except under a written order, and on the responsibility of a commander-in-chief.
The collection of the said contribution shall only be effected as far as possible in accordance with the rules of assessment and incidence of the taxes in force.
For every contribution a receipt shall be given to the contributors.

Art. 52. Requisitions in kind and services shall not be demanded from municipalities or inhabitants except for the needs of the army of occupation. They shall be in proportion to the resources of the country, and of such a nature as not to involve the inhabitants in the obligation of taking part in military operations against their own country.
Such requisitions and services shall only be demanded on the authority of the commander in the locality occupied.
Contributions in kind shall as far is possible be paid for in cash; if not, a receipt shall be given and the payment of the amount due shall be made as soon as possible.

Art. 53. An army of occupation can only take possession of cash, funds, and realizable securities which are strictly the property of the State, depots of arms, means of transport, stores and supplies, and, generally, all movable property belonging to the State which may be used for military operations.
All appliances, whether on land, at sea, or in the air, adapted for the transmission of news, or for the transport

of persons or things, exclusive of cases governed by naval law, depots of arms, and, generally, all kinds of munitions of war, may be seized, even if they belong to private individuals, but must be restored and compensation fixed when peace is made.

Art. 54. Submarine cables connecting an occupied territory with a neutral territory shall not be seized or destroyed except in the case of absolute necessity. They must likewise be restored and compensation fixed when peace is made.

Art. 55. The occupying State shall be regarded only as administrator and usufructuary of public buildings, real estate, forests, and agricultural estates belonging to the hostile State, and situated in the occupied country. It must safeguard the capital of these properties, and administer them in accordance with the rules of usufruct.

Art. 56. The property of municipalities, that of institutions dedicated to religion, charity and education, the arts and sciences, even when State property, shall be treated as private property.
All seizure of, destruction or wilful damage done to institutions of this character, historic monuments, works of art and science, is forbidden, and should be made the subject of legal proceedings.

INTERNATIONAL HUMANITARIAN LAW
International Committee of the Red Cross