**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>         Plaintiffs,<br><br>v.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION, *et al.*,<br><br>         Defendants. | Civil Action No. 04cv397 (GBD) |

## MOTION TO DISMISS

COMES NOW, Defendants The Palestine Liberation Organization and the Palestinian [National] Authority, by and through counsel, and pursuant to Fed. R. Civ. P. 7 and 12(b)(2), and respectfully request that the Court dismiss this action for lack of personal jurisdiction. In support of such motion, Defendants state as follows:

1.      When properly viewing the Defendants as separate entities, neither Defendant has sufficient contacts with the United States for the Court to exercise jurisdiction over either Defendant.

2.      Even if Defendants' contacts with the United States are found to be sufficient for establishing jurisdiction, any exercise of personal jurisdiction over the Defendants in this case would not comport with traditional notions of fair play and substantial justice.

For these reasons, and those set forth in the accompanying Memorandum of Law in Support, the Court should GRANT Defendants motion and dismiss this action without prejudice.

Respectfully Submitted,

July 30, 2007

/s/ Richard A. Hibey
Richard A. Hibey
Mark J. Rochon
MILLER & CHEVALIER CHARTERED
655 15th St., N.W. Suite 900
Washington D.C. 20005-6701
Ph. (202) 626-5800
Fax: (202)626-5801
Email: rhibey@milchev.com

*Attorneys for Defendants The Palestine Authority and the Palestinian Liberation Organization*

775301.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 30th day of July, 2007, a true and genuine copy of the foregoing was sent by electronic mail and first class mail, postage prepaid to the following:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI  02903
> Djs@mtlhlaw.com
> *Attorneys for Plaintiffs*
>
> Olimpio Lee Squitieri
> Squitieri & Fearon, LLP
> 32 East 57th Street, 12th Floor
> New York, NY 10022
> Phone:  (212) 421-6492
> Fax:  (212) 421-6553
> Lee@sfclasslaw.com
> *Attorneys for Plaintiffs*

/s/ Richard A. Hibey_____

775301.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

        Plaintiffs,

v.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

        Defendants.

Civil Action No. 04cv397 (GBD)

**MEMORANDUM OF LAW IN SUPPORT OF THE PALESTINIAN NATIONAL
AUTHORITY'S AND THE PALESTINE LIBERATION ORGANIZATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Defendants the Palestinian [National] Authority and the Palestine Liberation

Organization, by counsel, move to dismiss this action pursuant to Federal Rules of Civil

Procedure 12(b)(2).

**PROCEDURAL BACKGROUND**

In their First Amended Complaint, filed May 23, 2005 [Dkt. No. 4], plaintiffs seek $1

billion in compensatory damages ($3 billion after trebling) under the Anti-Terrorism Act of 1991

("ATA"), 18 U.S.C. § 2331 *et seq.*, for injuries to themselves or their family members resulting

from seven separate alleged terrorism incidents occurring in or near Jerusalem over a three-year

period. Plaintiffs are suing the Palestinian Authority (hereinafter the Palestinian National

Authority or "PNA"), the Palestine Liberation Organization ("PLO"), and John Does 1-99.

When the PNA/PLO's predecessor counsel failed to file an Answer, Plaintiffs moved for

entry of default. [Dkt. No. 22.]  In their opposition, brief, the PNA/PLO argued that the Court

lacked subject matter jurisdiction. *See* Memorandum of Law in Opposition [Dkt. No. 26]. In its

Order of August 4, 2006 [Dkt. No. 28], the Court denied without prejudice Plaintiffs motion for

entry of default and requested further briefing on the subject matter jurisdiction issues. The

Court noted that it "will fully consider the parties' complete submissions and arguments on the

issue of jurisdiction. It will then determine whether this case should be dismissed for lack of

subject matter jurisdiction, or whether judgment of default should be entered if defendants

otherwise willfully decline to defend this case on its merits." Order at 1-2. The subject matter

jurisdiction issues are pending before the Court. After an October 2006 Status Conference, the

Court revised its earlier Order, noting that if it found that the Court *did* have subject matter

jurisdiction over the Defendants, Defendants would be permitted thirty days in which to file an

Answer. [Minute Entry, October 4, 2006].

On June 13, 2007, the Court granted undersigned counsel's motions to appear *pro hac*

*vice* [Dkt. No. 40] on behalf of the PNA/PLO and, on June 28, 2007, granted the withdrawal of

predecessor counsel Ramsey Clark and Lawrence Schilling [Dkt. No. 42]. Undersigned counsel

assures the Court that the PNA/PLO intends to fully defend this case.

## ARGUMENT

In its Order of August 4, 2006, the Court appropriately recognized that a default

judgment cannot be entered where the Court lacks subject matter jurisdiction. But default

judgment also cannot be entered where the Court lacks personal jurisdiction. Before entering

default judgment, the Court has an affirmative duty to ensure that it has jurisdiction over both the

subject matter and the parties. *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d

322, 324 (5th Cir. 2001); *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir.

1986). A default judgment entered by a court lacking personal jurisdiction over the defendants

773108.1

"is void and may be attacked either directly in the rendering court or through collateral attack

upon enforcement of the judgment." 10 Moore's Federal Practice 3d § 55.50[2][b][i]. *See also*

*Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999) (vacating

default judgment and remanding where district court "failed to conduct the necessary factual

inquiry as to whether it had personal jurisdiction over defendants"). Here, default judgment

cannot be entered and, pursuant to Federal Rule of Civil Procedure 12(b)(2), the amended

complaint must be dismissed because the Court lacks personal jurisdiction over the PNA and

PLO.[1]

  "The burden of establishing jurisdiction over a defendant, by a preponderance of the

evidence, is upon the plaintiff." *Hoffritz for Cutlery, Inc v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d

Cir. 1985) (citations omitted); *see also Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42

(D.D.C. 2003) (emphasis added) ("Plaintiff bears the burden of establishing personal jurisdiction

*over each individual defendant.* In order to meet its burden, plaintiff must allege specific facts

on which personal jurisdiction can be based; it cannot rely on conclusory allegations.");

*Stutzman v. Rainbow Yacht Adventures Ltd.*, No. 06-Ccv-300-K, 2007 U.S. Dist. LEXIS 8697,

*5 (N.D. Tex. Feb. 7, 2007) ("Plaintiffs bear the burden of establishing personal jurisdiction over

each Defendant."). In their Memorandum in Support of Plaintiffs' Motion to Enter Default,

Schedule an Inquest on Damages and Enter Judgment by Default [Dkt. No. 23], Plaintiffs allege

that the Court has personal jurisdiction over the PNA and PLO because the courts in *Ungar v.*

*Palestinian Authority*, 153 F. Supp. 2d 76, 86-91 (D.R.I. 2001), and *Biton v. Palestinian Interim*

---

[1] Though this issue was not raised by predecessor counsel, it is nonetheless ripe for this Court's review. Though Defendants conceivably could have awaited this Court's ruling on the separately briefed issues of subject matter jurisdiction, it is a more efficient use of judicial resources to file this motion at this time, so that the Court may consider all jurisdictional issues at the same time.

773108.1

*Self-Government Authority*, 310 F. Supp. 2d 172, 179-80 (D.D.C. 2004), previously found that the PNA and PLO have sufficient minimum contacts with the United States for the exercise of personal jurisdiction.  See Pls.' Memo at 5-6.[2]  Plaintiffs also rely on documents submitted as exhibits in the *Ungar* litigation to establish personal jurisdiction over the PNA and PLO, which they also file as exhibits to their default judgment Memorandum.  [Dkt. No. 24.]

There are three reasons why the *Ungar* and *Biton* decisions do not support a finding of personal jurisdiction here.  First, "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed."  *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) (citing 4 C. Wright & A. Miller, Federal Practice and Procedure, § 1051, at 160-62 (1987)).  The *Ungar* and *Biton* complaints were filed in 2000 and 2001, respectively.  *See Ungar*, 153 F. Supp. 2d at 83; *Biton v. Palestinian Interim Self-Government Authority*, 233 F. Supp. 2d 31, 32.  Some of the minimum contacts on which those courts relied did not exist when the original complaint in this matter was filed in 2004.

Second, the *Ungar* and *Biton* courts inappropriately aggregated the PNA and PLO contacts, rather than determining whether the contacts of each entity, standing alone, were sufficient.  Plaintiffs may not "aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any single defendant."  *Estate of Klieman v. Palestinian Authority (Klieman II)*, 467 F. Supp. 2d 107, 111  (D.D.C. 2006) (citing *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980)).

---

[2] Plaintiffs citation to *Ungar*, 325 F. Supp. 2d at 47-59, is incorrect.  The *Ungar* decision on personal jurisdiction is at *Ungar*, 153 F. Supp. 2d at 88; *see also Ungar*, 325 F. Supp. 2d at 24 ("This Court dealt with the issue of personal jurisdiction at length and rejected this same argument in *Ungar I*, 153 F. Supp. 2d at 86. This writer sees no need to revisit that decision.").

773108.1

Third, the *Ungar* and *Biton* courts engaged in only the first part of the two-part inquiry for determining whether the exercise of jurisdiction is consistent with Due Process. Once a plaintiff has demonstrated the requisite minimum contacts between the defendant and the forum state, "a court is required to continue to the 'reasonableness' stage of the inquiry and apply the five-factor test of *Asahi* to assess whether the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573 (2d Cir. 1996) (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)). Neither the *Ungar* nor *Biton* court engaged in the reasonableness inquiry. Even were this Court to decide that the PNA and PLO had sufficient contacts in the United States to give rise to personal jurisdiction, it is still not reasonable to exercise jurisdiction over Defendants.

"The Court must resolve personal jurisdiction issues on a case-by-case basis, noting in each the particular activities relied upon by the resident plaintiff as providing the supposed basis for jurisdiction." *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 49 (D.D.C. 1994) (internal quotation and citation omitted). As will be explained in further detail below, when the contacts on which Plaintiffs rely are attributed to the proper defendant -- and when only those contacts present when the complaint was filed are considered -- it is evident that Plaintiffs have not established the existence of sufficient minimum contacts. When the Court engages in an independent analysis, it will find that the PNA and PLO lack sufficient minimum contacts with the United States for this Court to exercise jurisdiction and, even were such contacts found to exist, the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice.

773108.1

I.    **The Plaintiffs Did Not Meet Their Burden of Establishing That Either the PNA or PLO Has Sufficient Contacts with the United States to Warrant the Court's Exercise of Personal Jurisdiction.**

To survive a motion to dismiss under Rule 12(b)(2), Plaintiffs must make a prima facie showing that personal jurisdiction exists over each moving defendant. *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997). The court reviews the complaints and affidavits in a light most favorable to Plaintiffs, *id.,* but it does not accept conclusory allegations or draw "argumentative inferences." *Mende v. Milestone Tech., Inc.,* 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994)).

Federal Rule of Civil Procedure 4(k)(2) "permits a federal court to exercise personal jurisdiction over a defendant (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States." *Mwani v. Bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005). Whether the exercise of jurisdiction is consistent with the Constitution for purposes of Rule 4(k)(2) "turns on whether a defendant has sufficient contacts with the nation as a whole to satisfy due process." *Id.* at 11. *See also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (Plaintiffs must establish that the exercise of this jurisdiction comports with federal due process.).

In analyzing a defendant's minimum contacts, courts distinguish between specific and general jurisdiction. Where "the claim arises out of, or relates to, the defendant's contacts with the forum" -- i.e., specific jurisdiction -- minimum contacts exist "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee

being 'haled into court' there." *U.S. Titan, Inc. v. Guangzhou Zen Hua Shipping Co.*, 241 F.3d

135, 152 (2d Cir. 2001); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985).

A forum may assert "general jurisdiction" -- i.e., jurisdiction irrespective of whether the claim

arises from or relates to the defendant's forum contacts -- only where these contacts are

"continuous and systematic." *U.S. Titan*, 241 F.3d at 152; *see also Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

> A. *Plaintiffs Have Not Established That, When Viewed Independently, the PNA and*
> *PLO Have Sufficient Continuous and Systematic Contacts with the United States*
> *to Warrant the Court's Exercise of General Jurisdiction.*

This lawsuit arises out of seven separate shooting or bombing incidents that occurred in

the State of Israel. Where, as here, the cause of action does not arise out of the defendants'

contact with the forum (the United States), plaintiffs must establish that the defendants' contacts

with the United States are "continuous and systematic," such that the Court may exercise general

jurisdiction over them. *U.S. Titan*, 241 F.3d at 152. Because general jurisdiction is not related to

the events giving rise to the suit, the minimum contacts test for general jurisdiction is more

stringent than that for specific jurisdiction and requires sufficiently continuous and systematic

contacts to justify haling the defendant into a court in the forum. *Gorman v. Ameritrade Holding*

*Corp.*, 293 F.3d 506, 510 n.2 (D.C. Cir. 2002) (citing *Metropolitan Life Ins. Co. v. Robertson-*

*Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), and 4 WRIGHT & MILLER § 1067.5, at 499-

507)). Stated another way, sporadic and insubstantial contacts with the forum do not suffice. In

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984), for example,

the Supreme Court held that defendant corporation's contacts with the forum state, consisting of

the chief executive officer's trip to the forum, accepting checks drawn from a bank in the forum,

773108.1

purchasing equipment from a company in the forum, and sending employees to the forum for

training, did not constitute continuous and systematic contacts.

      1.     <u>Offices in Washington, D.C. and New York City</u>

The *Ungar* and *Biton* courts found that the PNA and PLO had several contacts with the

United States. First, they noted that the PLO maintains an office in Washington, D.C. and

another office in New York City. *Ungar*, 153 F. Supp. 2d at 88; *Biton*, 310 F. Supp. 2d at 179-

80. The Washington, D.C. office is the office of the PLO Mission to the United States. It is not

a PNA office. Similarly, the New York office is the office of the Permanent Observer Mission

of Palestine to the United Nations. This also is not a PNA office. The PNA does not have an

official diplomatic relationship with the United States, and is in fact prohibited by the Oslo

Accords from engaging in foreign relations. *See Ungar v. Palestine Liberation Organization*,

402 F.3d 274, 287 (1st Cir. 2005) (noting that the "PA was . . . denied authority over foreign

relations, including the establishment of embassies, the hiring of diplomatic staff, and the

exercise of diplomatic functions"); *id.* at 291 (stating that the "[I]nterim [A]greement expressly

denied the PA the right to conduct foreign relations"). Indeed, the First Circuit in *Ungar* relied

in part on the PNA's inability to exercise diplomatic functions and engage in foreign relations as

a basis for denying the PNA sovereign immunity. Certainly, the plaintiffs cannot now suggest

that the PNA has diplomatic relations with the United States and the United Nations.

With regard to the New York City office of the Permanent Observer Mission of Palestine

to the United Nations, this "contact" cannot be invoked as a basis for establishing personal

jurisdiction over the PLO. As the Second Circuit held in *Klinghoffer v. S.N.C. Anchille Lauro

Lines*, "basing jurisdiction on the PLO's participation in UN-related activities would put an

undue burden on the ability of foreign organizations to participate in the UN's affairs." 937 F.2d 44, 51 (2d Cir. 1991).

Similarly, jurisdiction over the PLO should not be based on the Washington, D.C. office of the PLO Mission to the United States. The PLO Mission serves the important function of representing the interests of the Palestinian people in matters before the U.S. Government. Under the government contact exception, a court may not assert personal jurisdiction over a non-resident based on the non-resident's contacts with Congress or a federal agency. *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005); *see also Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 831 (Fed. Cir. 1999) ("petitioning the national government does not 'count' as a jurisdictional contact in the personal jurisdiction analysis"). As the court explained in *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 50 (D.D.C. 1994), the "District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government." Although this government contact exception is "based in part on the constitutional right to petition the Government for redress of grievances, . . . it also appears to be based on non-constitutional policy considerations, such as the Judiciary's reluctance to interfere with the smooth functioning of other governmental entities." *Klinghoffer*, 937 F.2d at 51 (internal citation and quotation omitted).[3] Thus, the *Klinghoffer* decision and the overriding policy considerations underlying the closely analogous government contacts exception preclude basing

---

[3] Use of the word "government" should not be construed the same as the word "state" and therefore thought to be cloaking a sovereign immunity argument. In its capacity as a governing entity under the Oslo Accords, the PNA, created by the Oslo Accords through the auspices of the PLO, functions as a "government" in dealing with Israel, the United States, the Arab League of States, Russia, and the European Union. Therefore, even if not a "state," as a governing body the PNA should benefit from the judiciary's reluctance to interfere with governing entities.

personal jurisdiction on the PLO's activities in the U.S. related to the United Nations and the PLO Mission to the United States.

The *Ungar* court noted that representatives of the PLO Mission to the United States and the Permanent Observer Mission of Palestine to the United Nations engaged in speaking activities. *Ungar*, 153 F. Supp. 2d at 88 ("For the six month period ending March 31, 1999, the [D.C.] office expended $ 200,132.74 on activities ranging from conducting interviews, giving lectures, and contacting the media."); *id.* ("The Permanent Observer and Deputy Permanent Observer employed by the Observer Mission represent the views of Palestine to the U.N., but also participate in public speaking engagements outside of the U.N."). The PNA/PLO acknowledge that speaking activities unrelated to the United Nations and to contacts with the United States Government arguably could count as contacts with the United States (*see Klinghoffer*, 937 F.2d at 52) for personal jurisdiction purposes (though not necessarily sufficient for due process), but plaintiffs have not identified any such activities during the relevant time frame, i.e., at the time this action commenced. Acquisition of personal jurisdiction is based on contacts with the forum at the time the complaint is filed. *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 236 (D.D.C. 2005). Plaintiffs filed their complaint in 2004, and the amended complaint in 2005. Contacts relevant to the *Ungar* and *Biton* cases, in which complaints were filed in 2000 and 2001, respectively, cannot form the basis for the exercise of personal jurisdiction here. *See Klinghoffer*, 937 F. 2d at 52 (holding that, "on remand, the court should determine whether the PLO's non-UN-related contacts with New York provided a sufficient basis for jurisdiction at the time each of the complaints was filed").

773108.1

2.     Contract with International Technologies Integration, Inc.

The *Ungar* and *Biton* courts also relied on commercial contracts entered into by the PLO and PNA with International Technologies Integration, Inc. ("ITI"), a Virginia corporation, for the purpose of providing telecommunication utilities to the Palestinian Territory. *Ungar*, 153 F. Supp. 2d at 88; *Biton*, 310 F. Supp. 2d at 180. In a recent decision, the U.S. District Court for the District of Columbia explained: "The Supreme Court and D.C. Circuit have been clear that a contract with a resident of the forum is not by itself sufficient to establish minimum contacts; the contract must have a 'substantial connection' with the forum, which depends upon a realistic analysis of the parties' business relationship." *Schutter v. Herskowitz*, 2007 U.S. Dist. LEXIS 48152, *10 (D.D.C. July 5, 2007). *See also Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (holding that "contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction"). The contract between the PNA/PLO and ITI granted ITI the "exclusive, non-terminable right to develop a domestic and international communications and telecommunications network in the *West Bank, Jericho, and the Gaza Strip.*" *Int'l Techs. Integration, Inc. v. Palestine Liberation Organization*, 66 F. Supp. 2d 3, 5 (D.D.C. 1999) (emphasis added). The entire focus of the contract was for services to be provided in Palestine, not the United States. The contract thus lacked the requisite "substantial connection" to the forum to allow it be treated as a U.S. contact of the PLO or PNA.

In any event, the ITI contract is not a contact on which the plaintiffs any longer can rely. The relationship between the PNA, PLO and ITI deteriorated to the point of arbitration (followed by enforcement litigation) in 1996 -- six years before the events set forth in the complaint and eight years before this litigation was filed. *See Int'l Techs. Integration, Inc.*, 66 F. Supp. 2d at 6 ("Approximately three years after the parties executed the Agreement [(October 3, 1993)], ITI

concluded that the PNA wrongfully terminated the Agreement, and . . . commenced

arbitration."). The outdated nature of the ITI contract thus provides another reason why reliance

on this contact represents a clear error of law.

        3.    <u>Bank Accounts</u>

     According to the *Ungar* court, the "proceedings in [the *ITI*] case revealed that the PA and

the PLO maintain several bank accounts in New York with deposits totaling approximately $18

million dollars." 153 F.Supp. 2d at 88, *accord Biton*, 310 F. Supp. 2d at 180. The *Ungar* and

*Biton* courts then relied on the alleged $18 million bank deposit as another contact on which to

base personal jurisdiction. There is, however, no evidence to support this allegation; the $18

million is a reference to the judgment in the *ITI* case, not to the amount of any PNA or PLO bank

account deposits.

     The *ITI* proceedings to which the *Ungar* court referred is an inaccurate reference to a July

1999 temporary restraining order issued by the *ITI* court and attached as an exhibit in the *Ungar*

and *Biton* filings submitted by those plaintiffs. Plaintiffs also rely on the order as an exhibit to

their default judgment Memorandum. *See* Exhibits to Memorandum of Support of Motion [Dkt.

No. 24], Exh. B.1.I. The *ITI* plaintiffs had alleged that the Economic Advisor to Yasser Arafat

"had traveled to New York in order to remove or transfer PNA assets located at Citibank and

Arab Bank in New York and brokerage accounts located at Solomon Smith Barney." *Id.* at 1.

The *ITI* court issued the TRO to preserve up to $18,750,000 in the alleged New York accounts.

The TRO does not indicate the amount of money alleged to be held by the PLO or the PNA in

the New York accounts.

     Even if the evidence of New York bank account deposits was presented in the *ITI*

litigation, this evidence dates back at least five years before the original complaint was filed and

773108.1

is not probative of the PNA's or PLO's contacts with the United States in 2004. As with the ITI contract itself and the speaking and fundraising activities dating back to the *Ungar* and *Biton* complaints, evidence of bank accounts that dates back at least five years before the complaint was filed cannot form a basis for exercising personal jurisdiction.

4.    Relationship with Bannerman Lobbying Firm

The *Ungar* and *Biton* courts also relied on evidence that the PNA employed the lobbying firm of Bannerman & Associates to assist with advocacy training and developing a public relations campaign in the United States. *Ungar*, 153 F. Supp. 2d at 88; *Biton*, 310 F. Supp. 2d at 180. This is not a contact that can be used to establish jurisdiction over the PLO. Moreover, plaintiffs have offered no evidence that this relationship existed in 2004. Minimum contact evidence that was relevant in the *Ungar* and *Biton* cases simply is not relevant here and cannot be used as a basis for asserting jurisdiction unless the contact existed when the complaint was filed.

5.    Summary of Contacts

To review, with respect to the PNA, plaintiffs have not identified any contacts with the United States at the time the complaint was filed. The Washington, D.C. and New York City offices are not PNA offices; the ITI contract ended long before the complaint was filed; plaintiffs have produced no recent evidence of a relationship with the Bannerman lobbying firm; and the plaintiffs have not established that the PNA itself had any bank accounts or assets in the United States during the relevant time period.[4]

---

[4] Though not directly relevant to the 2004 time frame, defendants also note that, following the January 2006 Palestinian elections until only a few weeks ago, U.S. persons were prohibited from engaging in transactions with the PNA unless authorized to do so by special license from the U.S. Treasury's Office of Foreign Assets Control. 31 C.F.R. § 597.407.

773108.1

With respect to the PLO, the only recent contacts the plaintiffs identify are the offices in Washington, D.C. and New York City. Yet, the activities of those offices generally may not be relied upon as a basis for establishing personal jurisdiction because of the U.N. and government contact exceptions. Finally, we note that the *Ungar* plaintiffs, in their effort to satisfy their default judgment, have taken the position in enforcement proceedings in federal district court in Rhode Island that "to the best of plaintiffs' knowledge these defendants have no assets reachable by execution process anywhere in the United States." *See Estate of Ungar v. Palestinian Authority*, C.A. No. 00-105L (D. R.I.), Plaintiffs' Creditor's Bill Pursuant to R.I.G.L. § 9-28-1 [Dkt. No. 370] at 4 n.2 (filed July 3, 2005).

In sum, the plaintiffs have not made a prima facie case that, when the suit was filed, either the PNA or PLO had the sort of "continuous and systematic" contacts with the United States that would justify the Court's exercise of general jurisdiction over either defendant.

> B.    *The Court Lacks Specific Jurisdiction Over the PNA and PLO Because the Alleged Incident Was Not Targeted at the United States.*

Specific jurisdiction exists "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *U.S. Titan, Inc. v. Guangzhou Zehn Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001). The claims before this Court do not arise out of, nor do they relate to, defendants' contacts with the United States. The alleged terrorist acts occurred entirely in Israel. In *Mwani v. Bin Laden*, 417 F.3d 1, 12-13 (D.C. Cir. 2005), the D.C. Circuit held that a U.S. court could exercise specific jurisdiction over a foreign defendant despite the lack of any physical contact with the U.S. where the defendant engages in unabashedly malignant actions directed at and felt in the United States. In *Mwani*, the plaintiffs alleged that the defendants orchestrated the bombing of the U.S. embassy in Nairobi, "not only to kill both American and Kenyan employees inside the building, but to

773108.1

cause pain and sow terror in the embassy's home country, the United States." *Id.* at 13.   The

complaint also "described an ongoing conspiracy to attack the United States, with overt acts

occurring within this country's borders," including "the 1993 World Trade Center bombing, as

well as to the plot to bomb the United Nations, Federal Plaza, and the Lincoln and Holland

Tunnels in New York." *Id.*  In contrast to the allegations of intent to harm the United States

present in *Mwani*, here the complaint alleges that "defendants PLO and PA authorized, ordered,

instructed, solicited and directed their terrorist units . . . to organize, plan and execute a series of

terrorist attacks against civilians in Israel and the West Bank."  First Amended Compl. ¶ 53.

Plaintiffs do not allege that U.S. property or citizens were targeted in the attacks; rather,

plaintiffs allege only that it was foreseeable that U.S. citizens would be killed as a result of acts

of terrorism.  *Id.*

    As the court explained in *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 73

(D.D.C. 2007), "acts of terror or torture . . . standing alone, can support personal jurisdiction only

if the defendant expressly intended the effects of the act to be felt in the United States."  Here,

there are insufficient allegations of intent to cause injury in the United States to warrant the

exercise of specific jurisdiction over the PNA or PLO.

    For the Court to exercise specific jurisdiction, "a defendant must have 'fair warning' that

his activities could subject him to the jurisdiction of the United States."  *Nikbin*, 471 F. Supp. 2d

at 72 (quoting *Mwani*, 417 F.3d at 11).  Nothing about this incident gave the defendants fair

warning that the incident (even assuming they had any knowledge of it) would subject them to

the jurisdiction of the United States.  Because the PNA and PLO lack sufficient contact with the

United States to support the exercise of either general or specific jurisdiction over them, the

plaintiffs' complaint must be dismissed.

773108.1

II.    **Even if Plaintiffs Could Satisfy the Minimum Contacts Requirement for the Exercise of Specific or General Jurisdiction, Such Exercise Would Not Comport with Fair Play and Substantial Justice.**

The required due process inquiry itself has two parts: whether a defendant has "minimum contacts" with the forum state and whether the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice -- that is whether . . . [the exercise of jurisdiction] is reasonable under the circumstances of a particular case." *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027-28 (2d Cir. 1997) (internal quotations omitted). Thus, even if the Court finds that there are sufficient minimum contacts to establish specific or general jurisdiction over the PNA or PLO, the Due Process Clause proscribes the exercise of personal jurisdiction where haling the defendants into court in the United States would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

This second prong of the jurisdictional analysis asks whether it is "reasonable under the circumstances of the particular case" to exercise personal jurisdiction. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). In conducting this reasonableness analysis, the court must apply the five-factor test set forth in *Asahi Metal Industry Co., v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). In evaluating the "reasonableness" of its exercise of personal jurisdiction, the court must balance: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furtherance of substantive social policies. *Id.* (quotations omitted).

16

773108.1

These factors overwhelmingly weigh in favor of the Court declining to exercise personal jurisdiction over the PNA and PLO in this case.

Burden on the Defendants. The exercise of personal jurisdiction will impose a substantial burden on Defendants. Defendants are located in the West Bank and must attend to the pressing affairs of state, particularly in light of recent developments in the Gaza Strip. In addition, the events giving rise to this lawsuit occurred in the State of Israel. With the evidence and witnesses located in Israel, defending this lawsuit in the United States poses an unreasonable burden on the PNA and PLO. Moreover, the current leadership of the PNA, which the United States supports, must focus on restoring and maintaining order and working towards a peaceful resolution of the Palestinian-Israeli conflict. It will thus be highly disruptive for the PNA to be haled into a U.S. court.

Interests of the Forum. With regard to the second factor, the lack of nexus between the forum and the incident and parties at issue in the lawsuit reflects adversely on the interests of the forum. *See, e.g., Nalls v. Rolls-Royce Ltd.*, 702 F.2d 255, 257 (D.C. Cir. 1983). Many of the Plaintiffs are residents of Israel. As the Court explained in *Formica v. Cascade Candle Co.*, "[w]here the plaintiff is not a resident of the forum, the forum state's 'legitimate interests in the dispute have considerably diminished.'" 125 F. Supp. 2d 552, 556 (D.D.C. 2001) (quoting *Asahi*, 480 U.S. at 114).

Interests of the Plaintiffs. For similar reasons, the third *Asahi* factor -- the plaintiffs' interest in obtaining convenient and effective relief -- also does not support this Court's exercise of jurisdiction over the PNA and PLO. Many of the Plaintiffs are Israeli, not U.S. residents. Israel is the proper and more convenient forum for those Plaintiffs to seek relief.

773108.1

Efficient Resolution.  The fourth factor, efficient resolution of the case, generally depends on the location of witnesses and evidence.  *Panterra Engineered Plastics, Inc. v. Transp. Sys. Solutions, LLC*, 455 F. Supp. 2d 104 (D. Conn. 2006).  Again, the witnesses and evidence are located in Israel, not in the United States.  This factor thus also does not support the exercise of jurisdiction.

Social Policies.  Finally, the fifth factor looks to whether resolution of the claim in one forum (here, the United States) will have any effect on another forum's social policies.  *See Am. Builders & Contrs. Supply Co. v. Lyle*, No. 05-2461-CM, 2006 U.S. Dist. LEXIS 88803, 10-11 (D. Kan. Dec. 7 2006).  This factor also weighs heavily in the PNA/PLO's favor.  Israel has a substantially greater interest in providing remedies for acts of terrorism directed at its civilian population and occurring within its borders.  Given Israel's much deeper connection to the dispute and the fact that Israeli authorities already have thoroughly investigated these incidents, the U.S. courts should decline to exercise jurisdiction.

In sum, given the lack of nexus between the events alleged in the complaint and the United States, the inconvenience to the defendants, the non-United States residence of many of the Plaintiffs, Israel's much stronger interest in adjudicating this dispute, and the presence of the witnesses and evidence in Israel, application of the *Asahi* factors leads to the conclusion that the exercise of jurisdiction over the PNA and PLO in the circumstances of this case would be unreasonable.

773108.1

## CONCLUSION

For the reasons set forth above, Defendants PNA and PLO request that the Court dismiss the complaint as to the PNA and PLO for lack of personal jurisdiction.

July 30, 2007

Respectfully Submitted,

/s/ Richard A. Hibey
Richard A. Hibey
Mark J. Rochon
MILLER & CHEVALIER CHARTERED
655 15th St., N.W. Suite 900
Washington D.C. 20005-6701
Ph. (202) 626-5800
Fax: (202)626-5801
Email: rhibey@milchev.com

*Attorneys for Defendants The Palestine Authority and the*
*Palestinian Liberation Organization*

773108.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 30th day of July, 2007, a true and genuine copy of the foregoing was sent by electronic mail and first class mail, postage prepaid to the following:

> David J. Strachman
> McIntyre, Tate & Lynch, LLP
> 321 South Main Street, Suite 400
> Providence, RI 02903
> Djs@mtlhlaw.com
> *Attorneys for Plaintiffs*
>
> Olimpio Lee Squitieri
> Squitieri & Fearon, LLP
> 32 East 57th Street, 12th Floor
> New York, NY 10022
> Phone: (212) 421-6492
> Fax: (212) 421-6553
> Lee@sfclasslaw.com
> *Attorneys for Plaintiffs*

/s/ Richard A. Hibey

773108.1