UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARK I. SOKOLOW, et als,

                Plaintiffs,           04 Civ. 00397- (GBD)

    -against-

THE PALESTINE LIBERATION ORGANIZATION et als,

               Defendants.

-------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY DENIAL OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, FOR JURISDICTIONAL DISCOVERY AND FOR RELATED RELIEF**

**Introduction**

      This is a civil action pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. §2331 *et. seq.* and supplemental causes of action, brought by United States citizens, and by the guardians, family members and the personal representatives of the estates of United States citizens, who were killed and injured in seven terrorist attacks carried out by defendants Palestine Liberation Organization ("PLO") and Palestinian Authority ("PA"), between January 8, 2001 and January 29, 2004.

      Currently pending before the Court are plaintiffs' motion for entry of default and judgment by default, and defendants' motion to dismiss for lack of subject matter jurisdiction.

On July 30, 2007, the defendants filed a motion to dismiss this action for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Dkt. #45.

As shown below, defendants' motion to dismiss for lack of personal jurisdiction is barred by Fed.R.Civ.P. 12(h)(1), because defendants previously moved to dismiss this action for lack of subject-matter jurisdiction, without challenging personal jurisdiction.

Since defendants' motion is barred at the threshold, neither the Court nor the plaintiffs should be required to waste time and resources litigating and disposing of it. Accordingly, plaintiffs hereby move to deny defendants' motion summarily, under Fed.R.Civ.P. 12(h)(1) and/or on the basis of collateral estoppel.

In the event (which plaintiffs respectfully believe to be unlikely) that the Court finds that defendants' motion is not barred, plaintiffs should be permitted jurisdictional discovery regarding defendants' activities and contacts in the United States. The fact that other federal courts have already found – by the preponderance of the evidence – that defendants have minimum contacts with the United States easily satisfies the "sufficient start" showing necessary for jurisdictional discovery. Indeed, in another action brought under § 2333 of the ATA against these defendants in this Court, the defendants were ordered to conduct jurisdictional discovery after they moved to dismiss for lack of personal jurisdiction. *See Knox v. Palestine Liberation Organization*, 2005 WL 712005 (S.D.N.Y. 2005) *aff'd* 229 F.R.D. 65 (S.D.N.Y. 2005).

Therefore, plaintiffs move in the alternative, if their motion for summary denial of defendants' motion is not granted, for an order permitting them to conduct jurisdictional discovery and directing the parties to formulate a joint jurisdictional discovery plan.

For the reasons set forth below, plaintiffs' motion should be granted.

**I.      DEFENDANTS' MOTION IS BARRED BY FED.R.CIV.P. 12(h)(1)**

Rule 12(g) of the Federal Rules of Civil Procedure provides in relevant part that:

> A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted …

Fed.R.Civ.P. 12(g).

Rule (h)(1) of the Federal Rules provides in relevant part that:

> A defense of lack of jurisdiction over the person … is waived … if omitted from a motion in the circumstances described in subdivision (g) …

Fed.R.Civ.P. 12(h)(1).

Thus, by operation of Rules 12(g) and 12(h)(1), a party which moves to dismiss an action for lack of subject-matter jurisdiction without also seeking to dismiss for lack of personal jurisdiction, has irrevocably waived the defense of lack of personal jurisdiction.

On March 7, 2007, defendants filed a memorandum, styled as "Memorandum of Defendants in Reply to Plaintiffs [sic] Supplemental Memorandum (88 pages) dated December 20, 2006", dkt. #35 ("Memo of March 7, 2007").

Despite its title, defendants' Memo of March 7, 2007, does not merely "reply" to plaintiffs' supplemental memorandum in support of their motion for default judgment; rather, it actively and explicitly seeks affirmative relief, in the form of dismissal of this action for lack of subject-matter jurisdiction:

> A motion by Defendants ***to dismiss the complaint*** for lack of subject matter jurisdiction is filed herewith and presented ***as the procedural basis for the Court to rule*** on the issues of subject matter jurisdiction.

Memo of March 7, 2007, at 2 (emphasis added).

Likewise:

> The ***complaint should be dismissed*** because this Court lacks subject matter jurisdiction.

*Id*. at p. 49 (emphasis added).

Thus, defendants have clearly moved to dismiss this action for lack of subject-matter jurisdiction.

There is nothing surprising or unusual about the fact that these defendants have moved to dismiss this action for lack of subject-matter jurisdiction without challenging the Court's *in personam* jurisdiction. For their own strategic reasons, the PA and PLO have ***not*** consistently contested the personal jurisdiction of the U.S. courts in the various actions pending against them under §2333 of the ATA.

For example, in *Gilmore v. Palestinian Interim Self-Government Authority*, (Civ No. 01-853) (D.D.C.), the PA and PLO moved to dismiss the action for lack of subject matter jurisdiction and for lack of personal jurisdiction over several of their individual ***officers***, but specifically refrained from seeking to dismiss for lack of jurisdiction over the PA and PLO themselves. *See Gilmore v. Palestinian Interim Self-Government Authority*, 422 F.Supp.2d 96, 102 fn. 4 (D.D.C. 2006) ("Defendants did not move to dismiss the PLO and the PA from this action for lack of personal jurisdiction.").

Similarly, in *Biton v. Palestinian Interim Self-Government Authority*, the defendants challenged personal jurisdiction over the PA, but not over the PLO. *See Biton*, 310 F.Supp.2d at 179 fn. 6 ("The defendants do not challenge the Court's exercise of personal jurisdiction over the PLO.").

Clearly then, the filing of the Memo of March 7, 2007 in this action, seeking to dismiss for lack of subject-matter jurisdiction but not lack of personal jurisdiction, exactly parallels the strategic tack taken by the PA and PLO in other ATA actions.

While the defendants do not appear to have filed a formal "notice of motion" as required by the Local Rules in respect to their motion to dismiss for lack of subject-matter jurisdiction, it is well established that the absence of a notice of motion in no way detracts from the validity of a motion. *See e.g. United States v. Leonard*, 639 F.2d 101, 106 (2d Cir. 1981) ("The formal defect absence of a separate piece of paper entitled 'notice of motion' did not prejudice appellee … In cases such as this, where the substance of the motion is clearly and promptly communicated to the appellee, and the appellee demonstrates no substantial prejudice, we will not construe technical pleading requirements to defeat consideration of the appeal on the merits."); *Beharry v. M.T.A. New York City Transit Authority*, 1996 WL 622180 *1 fn. 1 (E.D.N.Y. 1996). ("The Court notes that MTA did not file a 'notice of motion' with its memorandum and affidavit, *see* Local Civil Rule 3(c) of the Joint Rules for the Southern and Eastern Districts of New York ('The notice of motion, supporting affidavits and memoranda, with proof of service shall be served in accordance with the following ...'), but perceives no prejudice to the plaintiff therefrom."); *Sands Bros & Co., Ltd. v. Ettinger*, 2004 WL 541846 * 1 fn.1 (S.D.N.Y. 2004) (considering motion despite movant's failure to file a notice of motion); *Dunbar v. Landis Plastics, Inc.*, 996 F.Supp. 174, 177-178 (N.D.N.Y. 1998) (considering motion despite failure to file notice of motion); *U.S. v.*

*Abcasis*, 811 F.Supp. 828, 829 fn. 1 (E.D.N.Y. 1992) (considering motion despite failure to file notice of motion); *Mattel, Inc. v. Robarb's, Inc.* 2001 WL 913894 *1 fn. 1, *9 (S.D.N.Y. 2001) (considering cross-motion for summary judgment despite absence of a notice of motion or Rule 56.1 statement); *Loblaw Companies Ltd. v. Azimi*, 2001 WL 36028016 * fn. 1 (N.D.Cal. 2001) ("Although Azimi did not file a notice of motion with her cross-motion, the Court will hear the motion as if it had been properly noticed.").

The absence of a formal notice of motion therefore does not detract one iota from the fact that defendants have moved to dismiss for lack of subject-matter jurisdiction. Despite the absence of a formal "notice of motion," defendants' motion to dismiss for lack of subject-matter jurisdiction imperils plaintiffs' action just as much as any other motion to dismiss, and if plaintiffs do not successfully oppose it their suit will be extinguished.

It would therefore be absurd to argue (as defendants well may) that their motion to dismiss for lack of subject-matter jurisdiction is not "really" a motion within the meaning of Fed.R.Civ.P. 12(g) and 12(h)(1). Accepting this argument would allow defendants the ***benefit*** of seeking to dismiss this action for lack of subject-matter jurisdiction, without holding them to the ***restrictions*** set forth in Rules 12(g) and 12(h)(1) in respect to such motions. Indeed, if such an argument were accepted by this Court, any future defendant before this Court seeking to "have his cake and eat it too" could avoid the limitations of Rules 12(g) and 12(h)(1), by the simple expedient of purposely omitting a notice of suit. The Court should therefore resoundingly reject any such argument from the defendants.

Notably, defendants went out of their way to ***insist*** that their motion to dismiss serve as "***the procedural basis for the Court to rule*** on the issues of subject matter jurisdiction." Memo of March 7, 2007, at 2 (emphasis added). The defendants should be held to this "procedural basis",

- 6 -

which they established with their own two hands, and the Court should reject any *post hoc* attempts by defendants to explain away their motion. At the time their motion was filed defendants were represented by the former Attorney General of the United States and his long-time partner, who between them have about a century of litigation experience and are fully acquainted with Rules 12(g) and 12(h)(1)

Therefore, defendants' motion to dismiss for lack of subject-matter jurisdiction must be summarily denied as barred under Fed.R.Civ.P. 12(g) and 12(h)(1).

## II. ALTERNATIVELY, PLAINTIFFS SHOULD BE PERMITTED TO CONDUCT PERSONAL JURISDICTIONAL DISCOVERY

Plaintiffs believe that defendants' motion to dismiss for lack of personal jurisdiction can and indeed must be summarily denied for the reasons stated above.

However, purely in the alternative, if the Court does not summarily deny the motion, plaintiffs should be permitted to conduct jurisdictional discovery regarding defendants' jurisdictional conducts.

A plaintiff is entitled to jurisdictional discovery in this circuit whenever she makes a "sufficient start toward establishing personal jurisdiction." *See e.g. Hollins v. U.S. Tennis Ass'n*, 469 F.Supp.2d 67, 70-72 (E.D.N.Y. 2006) ("[D]istrict courts in this Circuit have ordered jurisdictional discovery where plaintiff made less than a prima facie showing but 'made a sufficient start toward establishing personal jurisdiction.'") (quoting *Uebler v. Boss Media*, 363 F.Supp.2d 499, 506-07 (E.D.N.Y. 2005)); *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 28 (2d Cir. 2003) (authorizing jurisdictional discovery where allegations constituted "arguable" jurisdictional basis, so plaintiff could develop facts in support of prima facie showing). A prime facie showing is *not* required. *See Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2nd Cir. 2007).

These defendants have *already* been found by two federal courts to have constitutionally sufficient minimum contacts with the United States. *See e.g. Ungar v. Palestinian Authority*, 325 F. Supp.2d 15 (D.R.I. 2004*) aff'd* 402 F.3d 274 (1st Cir. 2005); *Biton v. Palestinian Interim Self-Government Authority*, 310 F.Supp.2d 172 (D.D.C. 2004).

Moreover, the *Ungar* court conducted an extraordinarily detailed analysis of the contacts of the PA and PLO with the United States, considered all of defendants' arguments, and concluded that the plaintiffs had demonstrated defendants' minimum contacts by *a preponderance of the evidence* and that the court could exercise personal jurisdiction over the PLO and PA without violating the Due Process Clause of the Fifth Amendment. *Ungar*, 325 F.Supp. 2d at 47-59.[1]

Since another federal court has already held by a *preponderance of the evidence* that defendants' contacts with the United States are constitutionally sufficient, it is pellucid that a "sufficient start" for personal jurisdiction exists here.

Indeed, in *Knox v. Palestine Liberation Organization*, defendants moved to dismiss for lack of personal jurisdiction and Judge Marrero ordered defendants to conduct jurisdictional discovery. *See Knox v. Palestine Liberation Organization*, 2005 WL 712005 (S.D.N.Y. 2005) *aff'd* 229 F.R.D. 65 (S.D.N.Y. 2005).

---

[1] The defendants claim that "Plaintiffs [sic] citation to *Ungar*, 325 F.Supp. 2d at 47-59, is incorrect. The *Ungar* decision on personal jurisdiction is at *Ungar*, 153 F.Supp. 2d at 88." Defs' Memo at p. 4 fn. 4. This claim is a frivolous attempt to mislead the Court. The analysis contained in *Ungar*, 325 F.Supp. 2d at 47-59 is part of a Report and Recommendation ("R&R") prepared by the magistrate judge. That R&R was adopted *in toto* by the district court in *Ungar*: "this Court overrules each of the PA's and PLO's objections to Judge Martin's Report and Recommendation, adopts that Report and Recommendation *in toto* and attaches it hereto." *Ungar*, 325 F.Supp. 2d at 21-22. *See also id*. at 25 ("This Court adopts *in toto* Judge Martin's March 31, 2004 Report and Recommendation and publishes it with this Memorandum and Order.").

There is thus direct on-point precedent from a judge of this Court establishing that jurisdictional discovery is proper in precisely these circumstances.

Furthermore, in *Knox*, defendants argued that jurisdictional discovery was unnecessary, because the *Ungar* and *Biton* courts had ***already found*** defendants within the personal jurisdiction of the courts of the United States, which Judge Marrero found to be an ***admission*** by defendants that their personal jurisdiction defense was a bad-faith sham:

> Defendants first argue that the imposition of sanctions on them for failure to comply with jurisdictional discovery demands would be unjust because ***the discovery sought was not necessary for the Court to establish personal jurisdiction over Defendants***. Defendants note that in two other ATA cases filed against them, courts asserted personal jurisdiction over them without requiring jurisdictional discovery. (*See* Objections ¶ 6) (noting that "[p]ersonal jurisdiction over the PA and PLO was upheld without any need for jurisdictional discovery in both *Ungar [v. Palestinian Authority*, 153 F.Supp.2d 76 (D.R.I.2001) ] and *Biton [v. Palestinian Interim Self-Government Authority*, 310 F.Supp.2d 172 (D.D.C. 2004) ]")
>
> \*\*\*
>
> Defendants' approach to jurisdictional discovery reflects either a profound misunderstanding of the law or ***a bad faith desire to impose costs and delays on Plaintiffs***. If Defendants believed that discovery would ***only confirm the propriety of this Court's assertion of personal jurisdiction*** over them (see Objections ¶ 9), they could have waived any objections to personal jurisdiction and avoided altogether the need to respond to any discovery requests related to this matter. If Defendants instead wished to stand on principle and refuse to accede to the Court's assertion of personal jurisdiction over them (*see* Objections ¶ 14), then they should have informed the Court of their decision and allowed it to determine whether jurisdictional sanctions were

> appropriate without generating more than a year's delay and thousands of dollars in legal expenses.
>
> \*\*\*
>
> ***Defendants have essentially conceded in their Objections that assertion of personal jurisdiction over them in this case would not be legally improper***, and personal jurisdiction over them was held to be proper in *Ungar* and *Biton*.

*Knox,* 229 F.R.D. at 67-70 (emphasis added).

Thus, defendants have already admitted that the jurisdictional findings in *Ungar* and *Biton* were valid, and their attempt in this action to (again) challenge the *in personam* jurisdiction of this Court is frivolous and stems solely from defendants' "bad faith desire to impose costs and delays on Plaintiffs." *Id*.

It is clear, moreover, that defendants' admission in *Knox* is more than enough to meet the "sufficient start" standard for personal jurisdictional discovery.

Finally, it is obvious even at this stage that there has been no change in the factual basis of jurisdiction established in *Ungar*. The *Ungar* court based personal jurisdiction primarily on the activities of defendants' office and staff in Washington D.C., which it found to act on behalf of ***both*** the PA and the PLO, on the non-U.N. activities of the defendants' UN Mission, and on defendants' on-going relationship with the Bannerman lobbying firm in Washington. *See Ungar*, 325 F.Supp. 2d at 47-59.

There has been no change in any of these fundamental underlying facts: process in ***this*** action was served on Hassan Abdel Rahman, the Chief Representative of the defendants in the U.S., whom *Ungar* found to be a managing agent of both defendants, and whose U.S. activities on behalf of defendants *Ungar* found to further support jurisdiction. *See* dkt. #2; *Ungar*, 325 F.Supp. 2d at 47-59. Moreover, it is an indisputable matter of public record that at the time of

the filing of the complaint and the amended complaint in this case the defendants maintained their D.C. office and their relationship with Bannerman. *See* Reports of the Attorney General to the Congress of the United States on the Administration of the Foreign Agents Registration Act of 1938 ("FARA") Second Semi-Annual Report - 2005; First Semi-Annual Report - 2005; Second Semi-Annual Report - 2004; First Semi-Annual Report - 2004, all available at http://www.usdoj.gov/criminal/fara/links/annualrpts.html.

Each of the FARA reports shows that the defendants continue to operate their D.C. office, that that office continues to conduct the same types of public activities described in *Ungar*, and that Bannerman continues to act on behalf of defendants. Furthermore, defendants continue to operate their UN Mission in New York.

None of this can be disputed. The sole question (if it is really a question) is whether the scope of the activities conducted by the D.C. office and the non-UN activities conducted by the staff of the UN Mission, are somehow materially different from those described in *Ungar*. Plaintiffs should be permitted to conduct jurisdictional discovery precisely on that issue.

### III. DEFENDANTS' MOTION SHOULD BE ADJOURNED PENDING JURISDICTIONAL DISCOVERY OR THE DISPOSITION OF THIS MOTION

The *Ungar* plaintiffs were forced to retain researchers and investigators, obtain documents from the Justice Department, conduct third-party discovery and search through hundreds of radio and television broadcast transcripts in order to build the factual record showing defendants' contacts with the United States.[2]

This effort took months and cost many thousands of dollars.

---

[2] The undersigned represented the *Ungar* plaintiffs, and has direct personal knowledge of these facts.

- 11 -

The instant plaintiffs are making this motion because they understandably wish to avoid the costs and burdens of a similar scavenger hunt. If, as plaintiffs believe is clear, defendants' motion is barred under Fed.R.Civ.P. 12(h)(1), then plaintiffs should not have to defend the motion at all. If the motion is not barred, then defendants should be ordered to produce the relevant facts through jurisdictional discovery. The plaintiffs, who are the victims of terrorist attacks carried out by the defendants, should not have to expend their very limited resources to uncover information which defendants have at their fingertips.

However, in the event that the Court denies both prongs of this motion, the plaintiffs will of course shoulder that burden, and will obtain and produce to the Court documents and evidence clearly showing that the defendants are subject to the personal jurisdiction of this Court.

Accordingly, plaintiffs respectfully request that defendants' motion to dismiss for lack of personal jurisdiction (if it is not summarily denied as requested *supra*) be adjourned until 30 days after the completion of jurisdictional discovery, or, if jurisdictional discovery is not granted, until 60 days after the order denying jurisdictional discovery. That period of time will allow plaintiffs to assemble the documents and evidence which will demonstrate defendants' minimum contacts.

## IV.    CONCLUSION

Plaintiffs' motion should be granted.


                                    Plaintiffs, by their Attorneys,

                                    /s/David J. Strachman

                    David J. Strachman
                    McIntyre, Tate, & Lynch LLP
                    321 South Main Street, Suite 400
                    Providence, RI 02903
                    (401) 351-7700
                    (401) 331-6095 (fax)


                    Lee Squitieri
                    Squitieri & Fearon
                    32 East 57th Street, 12th Floor
                    New York, NY 10022
                    (212) 421-6492
                    (212) 421-6553 (fax)


      I here by certify that this pleading was sent via ECF on September 21, 2007 to the following counsel of record:


Richard A. Hibey
Mark J. Rochon
Charles F. B. McAleer, Jr.
Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701

                                    /s/David J. Strachman