IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARK I. SOKOLOW, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE PALESTINE LIBERATION ORGANIZATION, *et al.*, <br><br> Defendants. | Civil Action No. 04cv397 (GBD) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY DENIAL OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, FOR JURISDICTIONAL
DISCOVERY AND FOR RELATED RELIEF**

In July 2007, defendants the Palestinian Authority [PA] and Palestine Liberation Organization ["PLO"] moved to dismiss for lack of personal jurisdiction. [Dkt. No. 45]. On September 21, plaintiffs responded by filing a "Motion for Summary Denial of Defendants' Motion . . . or, in the Alternative, for Jurisdictional Discovery and Related Relief." [Dkt. No. 50]. For the following reasons, defendants oppose plaintiffs' motion and renew their request that the Court dismiss the case.

**Procedural Background**

Plaintiffs brought this action under the Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.*, against the PA, the PLO, and "John Does 1-99." Plaintiffs claim that they are entitled to $1 billion in compensatory damages ($3 billion after trebling) for injuries to themselves or their

family members resulting from seven separate alleged terrorism incidents occurring in or near Jerusalem over the 2001-2004 time period.

1. <u>Plaintiffs' Motion for Entry of Default.</u> Plaintiffs filed their First Amended Complaint in May 2005. [Dkt. No. 4]. Defendants sought and received three extensions of time to file their Answer, the latest extension giving them until January 6, 2006. [Doc. No. 16]. When predecessor defense counsel Ramsey Clark and Lawrence Schilling failed to meet the January 6 deadline, the Court issued an order on January 26, 2006, giving plaintiffs permission to "file a formal motion for default judgment with the Court." [Dkt. No. 17]. Five days later, and just days after the elections in which Hamas won a majority of the seats in the Palestinian Parliament and the right to appoint the Cabinet, predecessor defense counsel sought a three-month abatement of the proceedings so that they could seek instructions from the new leadership. [Dkt. No. 19].[1] The court denied the motion for abatement [Dkt. No. 21], and plaintiffs subsequently moved in February 2006 for entry of default. [Dkt. No. 22]. Defendants opposed the motion for entry of default, arguing that the Court lacks subject matter jurisdiction. [Dkt. No. 26].

2. <u>Court-Ordered Briefing on Subject Matter Jurisdiction.</u> In August 2006, the Court denied plaintiffs' motion for entry of default without prejudice. [Dkt. No. 28]. In that Order, the Court explained it would "fully consider the parties' complete submissions and arguments on the issue of jurisdiction" and, after reviewing these submissions, would "then determine whether this case should be dismissed for lack of subject matter jurisdiction, or whether judgment of default

---

[1] Neither Israel nor the United States recognized the Hamas-led government. When, in June 2007, Hamas's forces ousted Fatah as an organized security force from the Gaza Strip, President Abbas fired the Hamas-led government and appointed new leadership, naming Dr. Salam Fayyad as Prime Minister. The United States has since resumed diplomatic relations with the new leadership of the PA, and the new government is actively engaged in diplomatic relations with Israel. The undersigned were retained by Dr. Fayyad.

should be entered if defendants otherwise willfully decline to defend this case on its merits." *Id.* At a subsequent hearing on the subject matter jurisdiction issue, the Court stated: "I would like to give the plaintiffs an opportunity to respond to the argument [defendants] made on the jurisdictional argument . . . and then give the defendant[s] an opportunity to file a reply to that response on the same time frame . . . ." Hrg. Tr. 54:24-55:3 (Oct. 4, 2006). After the hearing, the Court issued an Order, notifying the parties: "If [the] court decides that it has subject matter jurisdiction, defendants have 30 days from that decision to file an answer or default judgment will be entered." [Minute Entry, October 4, 2006].

Consistent with the plan laid out at the hearing, plaintiffs filed their response on the subject matter jurisdiction issue in December 2006 [Dkt. No. 31], which they captioned "Supplemental Memorandum in Support of Plaintiffs' Motion to Enter Default, Schedule an Inquest on Damages and Enter judgment by Default." Defendants' reply ("Memorandum of Defendants in Reply to Plaintiffs Supplemental Memorandum (88 pages) dated December 20, 2006") followed in March 2007. [Dkt. No. 35]. In their Motion for Summary Denial, Plaintiffs argue that defendants waived their right to contest personal jurisdiction when they filed the March 2007 reply brief.

3. <u>New Defense Counsel's 12(b)(2) Motion to Dismiss.</u> The undersigned were retained in April 2007 to represent the PA and PLO in their defense of this and other Anti-Terrorism suits brought against the PA and PLO in the United States. The undersigned were retained specifically to contest jurisdiction where appropriate and, if unsuccessful, to vigorously defend the cases on the merits. After the Court granted the undersigned's motion for admission *pro hac vice*, the parties jointly moved for a revised briefing schedule and a rescheduling of the oral argument. The Court granted the joint motion in July 2007. [Dkt. No. 43]. On July 30, 2007, in

3

addition to filing a Supplemental Brief Regarding Subject Matter Jurisdiction [Dkt. No. 44], the PA and PLO moved to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction [Dkt. No. 45]. A hearing is set for October 10, 2007.

Rather than opposing the PA/PLO's motion to dismiss on the merits, plaintiffs recently filed a "Motion for Summary Denial of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, for Jurisdictional Discovery" ("Pls.' Memo.") [Dkt. No. 50]. Without citing any supporting authority, plaintiffs argue that defendants waived their personal jurisdiction defense when they filed their March 2007 brief in response to the Court's order of August 2006 soliciting additional briefing on subject matter jurisdiction. Apparently conceding they have failed to meet their burden of establishing that the Court has personal jurisdiction over either the PA or PLO, plaintiffs seek jurisdictional discovery as an alternate form of relief.

## Argument

**I.    The PA and PLO Have Not Waived Their Defenses of Lack of Personal Jurisdiction.**

Plaintiffs attempted to obtain a massive (as much as $3 billion) default judgment against the PA and PLO without first establishing that the Court has personal jurisdiction over the defendants. Faced for the first time with opposing counsel prepared to actively defend the PA and PLO and to challenge plaintiffs' unsupported assertion of personal jurisdiction, plaintiffs now attempt to avoid meeting their burden of proof on personal jurisdiction by invoking a creative but untenable waiver theory. Specifically, plaintiffs argue that defendants' March 2007 reply brief, filed in response to the Court's request for additional briefing on subject matter jurisdiction, which in turn was prompted by the plaintiffs' own motion for entry of default, waived defendants' right to contest personal jurisdiction. *See* Pls.' Memo [Dkt. No. 50] at 3-4. The rules do not support finding a waiver in such circumstances.

4

Under Federal Rule of Civil Procedure 12(h)(1), a defense of lack of personal jurisdiction is waived only if it is omitted from the party's initial 12(b) motion "or responsive pleading." *See also* 2 MOORE'S FEDERAL PRACTICE § 12.31[3] (3d ed. 2007) ("A defendant must object to the court's exercise of personal jurisdiction in the first Rule 12 motion or in the responsive pleading or be deemed to have waived the issue . . . ."). Responsive pleadings include only those pleadings listed in Federal Rule of Civil Procedure 7(a). *See Arthur Williams, Inc. v. Helbig*, 2001 U.S. Dist. LEXIS 6576, at *5 (S.D.N.Y. May 21, 2001) (only those pleadings identified in Fed. R. Civ. P. 7(a) constitute "responsive pleadings" for purposes of Rule 12(h)(1)). Defendants' reply brief is not among the categories of papers defined as pleadings for purposes of Rule 7(a).

Defendants' March 2007 reply brief was neither a 12(b) motion nor a "responsive pleading" and thus did not trigger Rule 12(h)(1)'s waiver rule. Plaintiffs offer no case authority supporting their attempt to recast defendants' March 2007 supplemental reply brief as a Rule 12(b) motion for purposes of applying the Rule 12(h)(1) waiver rule. Indeed such a reading would be particularly unwarranted in the circumstances of this case, where the Court asked the parties to provide supplemental briefs specifically on the subject matter jurisdiction issue and the PA and PLO had no reason to believe that providing such a brief would result in a waiver of their Rule 12(b)(2) defenses. Given that the PA's and the PLO's personal jurisdiction defenses raise constitutional issues, the Court should be even more reluctant to recharacterize the supplemental reply brief as causing a waiver. *Cf.* Wright & Miller, 5C FEDERAL PRACTICE & PROCEDURE 3d § 1391 (noting that, unlike other defenses, lack of personal jurisdiction is not waived by default,

5

especially where the defendant's personal jurisdiction argument invokes due process concerns and not defenses related to defective service of process).[2]

Plaintiffs' counsel has for too long counted on the fact that the Palestinian Authority and Palestine Liberation Organization are too embroiled in the ongoing Middle East crisis to come to the United States to defend these actions. The PA and PLO now are prepared to defend. But, this litigation, if it goes forward, will be prolonged, expensive, intrusive, and disruptive of the important work of the Palestinian government, whose new leadership is actively engaged with the United States and Israel in negotiating a peaceful resolution of the Israeli-Palestinian conflict. Plaintiffs are seeking to impose liability on the PA and PLO based on vague assertions that they are responsible for the acts of "John Does 1-99" related to seven different incidents that occurred in Israel as long as six years ago. The difficulty that litigating such a massive, complex lawsuit in the United States will impose on the PA and PLO cannot be overstated. At the very least, before engaging in this process, the PA and PLO are entitled to have this Court decide whether they have sufficient minimum contacts with the United States to warrant the Court's exercise of jurisdiction over them and whether the exercise of such jurisdiction comports with traditional notions of fair play and substantial justice.

## II.     Plaintiffs Have Not Made a Sufficient Showing That They Are Entitled to Jurisdictional Discovery.

Significantly, plaintiffs do not take issue with any of the following arguments defendants made in their 12(b)(2) motion: (1) the plaintiffs have the burden of establishing by a preponderance of the evidence that the Court has personal jurisdiction over the PA and PLO; (2)

---

[2] Indeed, as noted in the brief accompanying defendants' 12(b)(2) motion ("Defs.' Memo."), a federal court has an affirmative duty to establish that it has jurisdiction over both the subject matter *and the parties* before it can enter default judgment. *See* Defs.' Memo. at 2-3 [Dkt. No. 45] and cases cited therein.

6

personal jurisdiction must be based on defendants' contacts with the forum when the lawsuit was filed, making findings of personal jurisdiction in the much earlier *Ungar* and *Biton* cases irrelevant;[3] (3) the contacts of the PA and PLO may not be aggregated for the purpose of determining whether sufficient minimum contacts exist; each defendant's contacts must be considered in isolation; (4) some of the contacts on which *Ungar* and *Biton* relied in finding jurisdiction over the PA and PLO do not withstand scrutiny, such as the supposed $18 million bank account (*see* Defs.' Memo at 12-13); and (4) even if either the PA or PLO has sufficient minimum contacts with the United States to warrant the exercise of personal jurisdiction, the Court would still need to decide whether the exercise of jurisdiction is "reasonable" given the lack of U.S. nexus with the incidents and the potential disruption the litigation will cause in the Middle East peace efforts.

Tacitly acknowledging that they have failed to provide sufficient evidence to establish that the Court has jurisdiction over either the PA or PLO, plaintiffs now seek jurisdictional discovery in an effort to meet their burden of proof. Such discovery is not warranted here, where plaintiffs have not established that they satisfy the second "reasonableness" prong of the due process inquiry. *See Chaiken v. VV Publ. Corp.*, 119 F.3d 1018,1027, 28 (2d Cir. 1997) (in order for the exercise of personal jurisdiction to comport with due process, (1) the defendant must have minimum contacts with the forum state; and (2) the exercise of jurisdiction must be reasonable under the circumstances of a particular case). In any event, plaintiffs are not entitled to jurisdictional discovery because they have not made a sufficient start toward establishing

---

[3] *See Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 86-91 (D.R.I. 2001) (complaint filed in 2000), *aff'd*, 402 F.3d 274 (1st Cir. 2005); *Biton v. Palestinian Interim Self-Government Auth.*, 310 F. Supp. 2d 172, 179-80 (D.D.C. 2004) (complaint filed in 2001).

jurisdiction, nor have they identified specific jurisdictional facts they hope to learn through discovery.

    A.    **Jurisdictional Discovery Is Not Warranted Here, Where Plaintiffs Have Not Even Addressed, Let Alone Convincingly Rebutted, Defendants' Argument that the Reasonableness Prong of the Two-Part Due-Process Inquiry Precludes the Court's Exercise of Jurisdiction over Either the PA or PLO in This Case.**

It is particularly noteworthy that the plaintiffs entirely ignore the reasonableness prong of the due process inquiry. As explained in the memorandum accompanying defendants' 12(b)(2) motion, *see* Defs. Memo. at 16-18, even where sufficient minimum contacts exists, federal courts may not exercise jurisdiction over a defendant, consistent with due process, where doing so is unreasonable "under the circumstance of the particular case." *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). The Supreme Court has adopted a five-factor test for determining whether the exercise of jurisdiction over a defendant is reasonable. *See Asahi Metal Industry Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987). As defendants explained in their 12(b)(2) motion, these factors (including, *inter alia*, burden on the defendants, efficient resolution, interest of the forum) all weigh in favor of the Court declining to exercise jurisdiction over the either the PA or PLO given the "circumstances of th[is] particular case." Defs.' Memo. at 16-18. Plaintiffs have provided no response to the *Asahi* analysis and therefore have conceded the point. Jurisdictional discovery will not remedy the plaintiffs' failure to satisfy the reasonableness prong of the due process analysis. The Court may thus proceed to dismiss the case for lack of personal jurisdiction without subjecting the PA and PLO to pointless jurisdictional discovery.

B. **In Any Event, Plaintiffs Have Not Made a Sufficient Showing of Personal Jurisdiction to Be Entitled to Jurisdictional Discovery.**

Jurisdictional discovery is not available as a matter of right, but is authorized at the court's discretion only where plaintiffs have made a "sufficient start" toward establishing personal jurisdiction. *See* Pls.' Memo. at 7 (noting "sufficient start" requirement). Plaintiffs contend that that they have made this showing because the *Ungar* and *Biton* courts already determined that the PA/PLO had sufficient minimum contacts with the United States. *See id.* at 8. In making this assertion, plaintiffs do not squarely address defendants' point that the decisions in those cases cannot be used to establish that the PA and PLO each had sufficient minimum contacts with the United States when this complaint was filed.[4] (As noted above in footnote 3, the *Ungar* and *Biton* complaints were filed in 2000 and 2001, respectively; the original complaint in this action was filed in 2004). Nor do plaintiffs address the fundamental flaw in the *Ungar* and *Biton* analysis, namely the inappropriate aggregation of PA and PLO contacts.

Plaintiffs continue to identify the Washington, D.C. office of the PLO Mission to the United States and the New York office of the Permanent Observer Mission of Palestine to the United Nations as relevant to the Court's jurisdiction over the PA, without addressing defendants' point that the PA does not engage in foreign relations. *See Ungar v. Palestine Liberation Organization*, 402 F.3d 274, 287 (1st Cir. 2005) ("noting that the PA is "denied authority over foreign relations, including the establishment of embassies, the hiring of

---

[4] Plaintiffs' effort to recast *Ungar*'s personal jurisdiction analysis as relying principally on the PLO's office in D.C., the non-U.N. activities of the PLO's United Nations Mission in New York, and a contract with the Bannerman lobbying firm ignores the other contacts on which the *Ungar* court relied, such as the contract with ITI and the supposed $18 million bank account (*Ungar*, 153 F. Supp. 2d at 88), both contacts that may not be relied on here. *See* Defs.' Memo. at 11-13.

diplomatic staff, and the exercise of diplomatic functions"); *id.* at 291 (stating that the "[I]nterim [A]greement expressly denied the PA the right to conduct foreign relations"). Instead the PLO is the organization authorized to represent the Palestinian people before other nations. *See* Defs. Memo. at 8.

Plaintiffs' "sufficient start" thus consists of the non-U.N. and government-relations activities of the PLO's small Washington, D.C. and New York offices (*see* Defs.' Memo. at 8-10 for discussion of necessity of excluding government and U.N.-related contacts) and the alleged fact that the PA and/or PLO have a relationship with a lobbying firm. Such a showing is insufficient to support subjecting the PLO and certainly the PA to jurisdictional discovery, especially given the "reasonableness" concerns with exercising jurisdiction over a foreign government in a case involving such a sweeping, complex, fact-intensive litigation matter with a minimal nexus to the United States.

We also note that plaintiffs have not identified what additional facts they expect to learn through jurisdictional discovery, which is another factor militating against providing them such discovery. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001) ("[I]n addition to presenting a colorable claim, a plaintiff must be diligent in preserving his rights to be entitled to jurisdictional discovery. This includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted.") (internal citation omitted).

Defendants are concerned that any such discovery is likely to be viewed by plaintiffs' counsel as an invitation to engage in a fishing expedition related to the other cases pending against the PA and PLO, including various enforcement proceedings, in which the same counsel are involved.

## CONCLUSION

For the reasons set forth above, defendants the PA and PLO request that the Court deny plaintiffs' "Motion for Summary Denial of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, for Jurisdictional Discovery" and grant the PA's and the PLO's motion to dismiss for lack of personal jurisdiction.

October 5, 2007

Respectfully Submitted,

/s/ Mark J. Rochon
Richard A. Hibey
Mark J. Rochon
MILLER & CHEVALIER CHARTERED
655 15th St., N.W. Suite 900
Washington D.C. 20005-6701
Ph. (202) 626-5800
Fax: (202)626-5801
Email: mrochon@milchev.com

*Attorneys for Defendants the Palestinian Authority
and the Palestine Liberation Organization*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 5th day of October, 2007, the foregoing was sent via ECF to the following counsel of record:

David J. Strachman
McIntyre, Tate & Lynch, LLP
321 South Main Street, Suite 400
Providence, RI 02903
Djs@mtlhlaw.com
*Attorneys for Plaintiffs*

Olimpio Lee Squitieri
Squitieri & Fearon, LLP
32 East 57th Street, 12th Floor
New York, NY 10022
Phone: (212) 421-6492
Fax: (212) 421-6553
Lee@sfclasslaw.com
*Attorneys for Plaintiffs*

/s/ Mark J. Rochon