```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARK I. SOKOLOW, et al.,                    MEMORANDUM DECISION
                                                 AND ORDER
                    Plaintiffs,             04 CV 397 (GBD)

        -against-
```

THE PALESTINE LIBERATION
ORGANIZATION, THE PALESTINIAN
AUTHORITY (a/k/a "The Palestinian Interim
Self-Government Authority" and/or
"The Palestinian Council" and/or
"The Palestinian National Authority"), and
JOHN DOES 1-99,

                              Defendants.
------------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

       In an action brought under the Antiterrorism Act of 1991, 18 U.S.C. § 2331 *et. seq.* ("ATA"), United States citizens and guardians, family members and the estates of United States citizens, are suing the Palestine Liberation Organization ("PLO") and the Palestinian Authority[1] ("PA"), for injuries and death allegedly suffered as a result of a series of terrorist attacks occurring over a three year period in Israel. Plaintiffs assert causes of action for international terrorism, pursuant to 18 U.S.C. § 2333, and various state law claims.

       The PLO and PA seek dismissal of the amended complaint for lack of subject matter jurisdiction and personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1) and (2), respectively. They also move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the pendent state law causes of action for failure to state a claim for relief. Plaintiffs cross-move seeking the summary denial of defendants' motion to dismiss for want of personal jurisdiction. In the alternative, plaintiffs seek

---

[1] The Palestinian Authority is also known as "The Palestinian Interim Self-Government Authority," "The Palestinian Council" and "The Palestinian National Authority."

an order granting them jurisdictional discovery.[2]

The Court finds that it has subject matter jurisdiction in this action, and hence dismissal on this basis is unwarranted. Defendants' motion to dismiss, for lack of personal jurisdiction and failure to state a claim, is denied without prejudice to renew. Plaintiffs' cross-motion is granted to the extent that limited jurisdictional discovery is ordered.

In the amended complaint, plaintiffs allege that defendants are responsible for planning and carrying out a series of terrorist attacks which specifically targeted civilians. The attacks themselves were allegedly committed by officials, agents and employees of the defendants. Plaintiffs further allege that defendants offered and provided those, acting on their behalf, with substantial material and pecuniary inducements and incentives to plan, organize and execute acts of international terrorism, including the terrorist attacks in which plaintiffs were harmed. Plaintiffs claim that defendants have carried out and utilized these attacks intending to terrorize, intimidate, and coerce the civilian population of Israel into acquiescing to defendants' political goals and demands, and to influence the policy of the United States and Israeli governments in favor of accepting defendants' political goals and demands.

Plaintiffs allege seven separate terrorist attacks; two shooting incidents and five bombings. Specifically, plaintiffs indicate that there were two machine gun attacks. One, in

---

[2] Following the failure of both the PLO and PA to timely respond to the complaint, plaintiffs moved for default. Defendants appeared in this action to oppose the default motion, arguing that no subject matter jurisdiction existed. By Order dated August 4, 2006, plaintiffs' motion was denied without prejudice. The parties were afforded an opportunity to make additional submissions and arguments addressing the issue of jurisdiction. The Court indicated that it would thereafter determine, based on the record as a whole, whether the requisite jurisdiction was present. The Court further advised that, if subject matter jurisdiction was found to exist and if defendants wilfully chose not to further defend against this action, the Court would then consider whether a judgment of default should be entered against the defendants.

which the shooter opened fire at a civilian automobile traveling the roads near Jerusalem and, in the other, at passersby on the streets of downtown Jerusalem. The locations of the subject bombings are identified as: a crowded bus stop in northern Jerusalem; a cafeteria on the Hebrew University campus in Jerusalem; a passenger-filled civilian bus in Jerusalem; and two bombings occurring on the streets of downtown Jerusalem. Plaintiffs allege that, as a result of these attacks, thirty-three innocent persons were killed and hundreds wounded. Among the killed and wounded were purportedly scores of American citizens.

## SUBJECT MATTER JURISDICTION

Defendants contend that no subject matter jurisdiction exists in this case for several reasons. None of their arguments in support thereof has merit. "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (internal quotation marks and citations omitted).

Plaintiffs bring this action under the ATA, which affords civil remedies to United States nationals and their estates, survivors, or heirs, who are injured by reason of an act of international terrorism. 18 U.S.C. § 2333(a). Defendants maintain that the ATA does not provide extraterritorial jurisdiction where, as here, the attacks did not target United States' interests. They further argue that, since this action should be maintained in an Israeli court, this Court is an inappropriate forum.

The ATA bestows subject matter jurisdiction upon the federal courts regardless of

3

whether or not the victims were specifically targeted because of their United States' citizenship. See, Biton v. Palestinian Interim Self-Gov't Auth., 510 F.Supp.2d 144, 146 (D.D.C. 2007) ("Biton IV"); see also, Rubin v. Hamas-Islamic Resistance Movement, 2004 WL 2216489, at *2 (D.D.C. Sept. 27, 2004) (Finding that the court had subject matter jurisdiction by virtue of the plain language of § 2333 of the ATA.). Additionally, a district court should dismiss an action on the grounds of inconvenience or inappropriateness of the forum where the alternative available forum is shown to be significantly more convenient and appropriate. 18 U.S.C. § 2334(d).[3] Defendants have failed to make any showing that an Israeli court is a more appropriate forum in which to litigate this action. See e.g., Knox v. Palestine Liberation Org., 248 F.R.D. 420, 427 (S.D.N.Y. 2008) ("Knox III"); Linde v. Arab Bank, PLC, 382 F.Supp.2d 571, 591 n.13 (E.D.N.Y. 2005); Estates of Ungar ex rel. Strachman v. Palestinian Auth., 153 F.Supp.2d 76, 100 (D.R.I. 2001) ("Ungar I").

Nor does this case, as defendants contend, involve non-justiciable issues precluding federal jurisdiction under the political question doctrine. Defendants warn that, in addition to potentially poisoning any prospect for peace, judicial determinations, made in the course of this litigation, will "interfere with the goals and efforts of the Executive branch to achieve Palestinian statehood through the promotion of President Abbas and the government vehicles of the [PA]

---

[3] Subdivision (d) of § 2334 provides:
The district court shall not dismiss any action brought under section 2333 of this title on the grounds of inconvenience or inappropriateness of the forum, unless --
    (1) the action may be maintained in a foreign court that has jurisdiction over the subject matter and over all the defendants;
    (2) that foreign court is significantly more convenient and appropriate; and
    (3) that foreign court offers a remedy which is substantially the same as the one available in the courts of the United States.
18 U.S.C. § 2334(d).

and PLO ...." (Defs.' Supplemental Opp'n Mem. at 35).

As one court previously observed, "[t]he PA and PLO repeatedly fail to realize that the non-justiciability doctrine is one of political questions and not political cases." Estates of Ungar v. Palestinian Auth., 315 F.Supp.2d 164, 174 (D.R.I. 2004) ("Ungar III"). An action does not lie beyond judicial cognizance solely because it raises questions touching upon foreign relations. Baker v. Carr, 369 U.S. 186, 211 (1962). In responding to similar political and foreign policy concerns previously raised by the PLO, the Second Circuit Court of Appeals, in Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2d Cir. 1991), observed that "[t]he fact that the issues before [the court] arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question." Klinghoffer, 937 F.2d at 49.

The relevant factors to consider, in determining whether a case involves a non-justiciable political question, include: (1) "textually demonstrable constitutional commitment of the issue to a coordinate political department;" (2) "a lack of judicially discoverable and manageable standards for resolving it;" (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;" (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;" (5) "an unusual need for unquestioning adherence to a political decision already made;" and (6) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." Baker, 369 U.S. at 217. Although no one factor is determinative, the first factor (*i.e.*, "textually demonstrable constitutional commitment of the issue to a coordinate political department") is the paramount concern. 767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia, 218 F.3d 152,

5

160 (2d Cir. 2000) (*quoting* Lamont v. Woods, 948 F.2d 825, 831 (2d Cir. 1991)).

By enacting the ATA, "both the Executive and Legislative Branches have expressly endorsed the concept of suing terrorist in federal court[.]" Klinghoffer, 937 F.2d at 49-50; see also, Ungar v. Palestine Liberation Org., 402 F.3d 274, 280-81 (1st Cir. 2005) ("Ungar IV"). Since plaintiffs' action is one in tort, it presents legal questions which have been constitutionally committed to the judicial branch of the government. Klinghoffer, 937 F.2d at 49; see also, Biton v. Palestinian Interim Self-Gov't Auth., 412 F.Supp. 1, 6 (D.D.C. 2005) ("Biton II") (noting that "the ATA provides jurisdiction for suits in federal courts, the basic elements of the claim lies in tort, not in the relations between Palestine and Israel."). Moreover, the ATA and the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602-1611 ("FSIA"), as well as traditional common law tort principles, provide this Court with judicially discoverable and manageable standards necessary to resolve the legal issues applicable to this lawsuit. See, Ungar IV, 402 F.3d at 281; Klinghoffer, 937 F.2d at 49; Ungar III, 315 F.Supp.2d at 174; Biton v. Palestinian Interim Self-Gov't Auth., 310 F.Supp.2d 172, 184 (D.D.C. 2004) ("Biton I"). Litigation of this matter will not require the Court to make nonjudicial policy determinations. After considering all relevant factors, this Court finds that the political question doctrine does not preclude judicial resolution of this case. See, Ungar IV, 402 F.3d at 282; Klinghoffer, 937 F.2d at 50 ; Estate of Klieman v. Palestinian Auth., 424 F.Supp.2d 153, 162 (D.D.C. 2006) ("Klieman I"); Gilmore v. Palestinian Interim Self-Gov't Auth., 422 F.Supp.2d 96, 100 (D.D.C. 2006); Biton II, 412 F.Supp.2d at 4-5; Ungar III, 315 F.Supp.2d at 174; Biton I, 310 F.Supp.2d at 184-85; Knox v. Palestine Liberation Org., 306 F.Supp.2d 424, 449 (S.D.N.Y. 2004) ("Knox I"); Estates of Ungar *ex rel.* Strachman v. Palestinian Auth., 228 F.Supp.2d 40, 45-46 (D.R.I. 2002)

("Ungar II"), *aff'd on other grounds* 2003 WL 2124790 (1st Cir. 2003).

Defendants also argue that sovereign immunity shields them from suit, under the ATA and FSIA, and hence this Court lacks subject matter jurisdiction.[4] The sovereign immunity doctrine, which "is premised upon the perfect equality and absolute independence of sovereigns," "is designed to give foreign states and their instrumentalities some protection from the inconvenience of suit." Republic of Philippines v. Pimentel, - - U.S. - -, 128 S.Ct. 2180, 2189-90 (June 12, 2008) (internal quotation marks and citations omitted). An ATA action may not be maintained against a foreign state, or the agencies, officers and employees thereof, acting within their official capacity or under color of legal authority. 18 U.S.C. § 2337(2). The ATA's exclusion, of foreign states and governmental actors from its coverage, is consistent with, and to be applied in accordance with, the ordinary sovereign immunity principles codified in the FSIA. See, Hurst v. Socialist People's Libyan Arab Jamahiriya, 474 F.Supp.2d 19, 29 n.13 (D.D.C. 2007); Klieman I, 424 F.Supp.2d at 158; Ungar III, 315 F.Supp.2d at 175; Knox I, 306 F.Supp.2d at 430-31. The FSIA provides the sole basis for obtaining jurisdiction over a foreign state. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989).

Under the FSIA, a foreign state is presumptively immune from suit unless certain limited exceptions exists. Permanent Mission of India to the United Nations v. City of New York, - -

---

[4] In previous similar lawsuits, the PLO and PA raised, and the courts rejected, the same sovereign immunity arguments now asserted in this litigation. Defendants have failed to demonstrate any change of circumstances, be it legal or factual in nature, that would affect the applicability and/or preclusive effect of the prior holdings of those courts. Thus, defendants are collaterally estopped from re-litigating the issue of their sovereign immunity. See, Biton IV, 510 F.Supp.2d at 147; Klieman I, 424 F.Supp.2d at159-60; Biton II, 412 F.Supp.2d at 4-5. Notwithstanding such a procedural bar, this Court independently finds that defendants' claim of sovereign immunity lacks substantive merit.

7

U.S. - -, 127 S.Ct. 2352, 2355 (June 14, 2007). A "foreign state" includes a political subdivision of a foreign state and its agencies or instrumentalities. 28 U.S.C. § 1603(a). In seeking dismissal on sovereign immunity grounds, defendants bear the initial burden of presenting a *prima facie* case that they are foreign sovereigns. In re Terrorist Attacks on September 11, 2001, 538 F.3d 71, 80 (2d Cir. 2008) (*quoting* Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002). Neither the PLO nor the PA have satisfied this initial evidentiary burden.

While the PLO and PA argue their sovereignty, they do not claim individual statehood status. Their assertion of immunity derives from the claimed sovereignty of the State of Palestine. Defendants contend that they are essential agencies of Palestine, performing core governmental functions and, as such, are entitled to immunity.

Palestine, whose statehood is not recognized by the United States, does not meet the definition of a "state," under United States and international law, and hence does not constitute a foreign state for FSIA purposes.[5] See, Ungar IV, 402 F.3d at 292; Gilmore, 422 F.Supp.2d at

---

[5] In determining statehood under the FSIA, the Second Circuit Court of Appeals has relied upon the definition of "state," set forth in the Restatement (Third). See e.g., Klinghoffer, 937 F.2d at 47. The Restatement (Third) provides that:

Under international law, a state is an entity that has a defined territory and a permanent population under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with other entities.

*Restatement (Third) of the Foreign Relations Law of the United States* § 201.

The First Circuit Court of Appeals has cautioned that the Restatement standard may be misplaced. Ungar IV, 402 F.3d at 284 n.6. The First Circuit opined that the appropriate standard may be "that a foreign state, for purposes of the FSIA, is an entity that has been recognized as a sovereign by the United States government." Id. The First Circuit, however, noted that even, "[i]f recognition were the test, the result would be the same" because "the United States has not recognized Palestine as a sovereign nation." Id.; see also, Knox I, 306 F.Supp.2d at 438-40 (Finding that, even if Palestine constitutes a "state," the PLO and PA are still not entitled to immunity because the United States does not recognize or otherwise treat Palestine as a

8

101; Ungar III, 315 F.Supp.2d at 178-79; Biton I, 310 F.Supp.2d at 180-81; Knox I, 306 F.Supp.2d at 434; Ungar II, 228 F.Supp.2d at 49; see also, Klinghoffer, 937 F.2d at 47-48. Since Palestine is not recognized, under United States law, as a "foreign state," the defendants cannot derivatively secure sovereign immunity as agencies and/or instrumentalities of Palestine. See, Ungar II, 402 F.3d at 294; Ungar I, 315 F.Supp.2d at 177. Similarly unavailing is defendants' alternative argument that, should Palestinian Statehood be found not to exist, the PA is nevertheless entitled to immunity as a political subdivision of Israel. See, Biton III, 510 F.Supp.2d at 147 (Noting that the Israeli government and the Israeli Supreme Court have both rejected the contention that the PA is a subdivision of Israel.).

Finally, defendants argue that subject matter jurisdiction is lacking because this action is premised on acts of war, which is barred under the ATA, and further is based on conduct which does not meet the statutory definition of "international terrorism."[6] Plaintiffs maintain that the

---

sovereign state, nor does it recognize the PLO and PA as official representatives of the purported State of Palestine.).

[6] "[T]he term 'international terrorism means activities that - -

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
(B) appear to be intended - -
    (i) to intimidate or coerce a civilian population;
    (ii) to influence the policy of a government by intimidation or coercion; or
    (iii) to affect the conduct of a government by mass destruction, assassination, or kidnaping; and
(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the person they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum[.]"
18 U.S.C. § 2331(1)(A-C).

purported failings, of which defendants complain, do not affect subject matter jurisdiction, but rather presents an issue as to the adequacy of the pleadings, under Fed.R.Civ.P. 12(b)(6). The characterization of the legal nature of defendants' objections is irrelevant because the Court finds that the attacks, as alleged to have occurred in the amended complaint, do not constitute acts of war nor do they, as a matter of law, fall outside the statutory definition of "international terrorism."

An ATA action may not be brought "for injury or loss by reason of an act of war." 18 U.S.C. § 2336(a). In pertinent part, "the term 'act of war' means any act occurring in the course of ... armed conflict between military forces of any origin[.]" 18 U.S.C. § 2331(4)(C). Defendants contends that the persistence of violence, between Israelis and Palestinians in the West Bank and Gaza Strip, constitute "armed conflict," under the ATA. They, therefore, conclude that plaintiffs are precluded from maintaining this action because their alleged injuries were sustained in the midst of an armed conflict. They further contend that the attacks were not intended as acts of terrorism. Rather, defendants argue that the attacks were allegedly committed in an attempt to end the illegal occupation of these territories.

Six, of the seven subject attacks occurred in Jerusalem.[7] There has been no showing that the situs of the attacks were in any combat or militarized zone, or were otherwise targeted at military or governmental personnel or interests. Rather, plaintiffs allege that the attacks were intentionally targeted at the civilian population. They were purportedly carried out at locations where non-combatants citizens would be known to congregate, such as in the cafeteria on the

---

[7] One of the machine gun attacks allegedly targeted a civilian's automobile traveling upon a public highway in the West Bank.

Hebrew University campus and on a commercial passenger bus. Additionally, the use of bombs, under such circumstances, is indicative of an intent to cause far-reaching devastation upon the masses. The 'benefit" of such weaponry is its merciless capability of indiscriminately killing and maiming untold numbers in heavily populated civilian areas. Such claimed violent attacks upon non-combatant civilians, who were allegedly simply going about their everyday lives, do not constitute acts of war for purposes of the ATA. See e.g., Klieman I, 424 F.Supp.2d at 167 (Attack, on recognized public transport bus in which all the passengers were noncombatant civilians, found not to have occurred in the course of an armed attack.); Biton II, 412 F.Supp.2d at 10-11 (Finding, as a matter of law, that attack on recognized school bus full of noncombatant students and teachers did not occur during the course of an armed conflict.). Furthermore, such alleged acts of violence do not fall outside the statutory definition of "international terrorism" as a matter of law. See e.g., Biton IV, 510 F.Supp.2d at 147 ("[I]ntentionally bombing a bus load of school children [] is 'terrorism' by any measure, alleged ambiguities in international law notwithstanding."). At this stage of the litigation, the allegations in the amended complaint, accepted as true, are sufficient to demonstrate that the attacks meet the statutory definition of international terrorism. See e.g., Klieman I, 424 F.S.2d at 153; Gilmore, 422 F.Supp.2d at 101-102; Biton I, 310 F.Supp.2d at 185.

After careful examination of all of the parties' submissions and arguments, the Court finds that subject matter jurisdiction exists in this case.

**PERSONAL JURISDICTION**

Defendants have also formally moved, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the

amended complaint for lack of personal jurisdiction. Defendants move for an order summarily denying defendants' motion. They contend that, pursuant to Fed.R.Civ.P. 12(h)(1), defendants waived the defense of lack of personal jurisdiction by failing to assert it when they initially raised the issue of subject matter jurisdiction.[8]

In moving to dismiss the complaint under Rule 12, the failure to include a lack of personal jurisdiction as one of the grounds will result in the waiver of such a defense. Fed.R.Civ.P. 12(g)(2), (h)(1). Here, defendants did not raise the issue of subject matter jurisdiction in the context of a motion to dismiss filed by them. Rather, they advanced such an argument in opposition to plaintiffs' motion for a default judgment. Thus, defendants have not waive their right to challenge personal jurisdiction.

Plaintiffs alternatively seek an order permitting them to conduct jurisdictional discovery and directing the parties to formulate a joint discovery plan. Granting jurisdiction discovery is warranted where plaintiffs have establish a *prima facie* case that the Court has jurisdiction over the defendants. In re Terrorist Attacks, 538 F.3d at 96 (*quoting* Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 186 (2d Cir. 1998)). A number of federal courts have concluded that both the PA and PLO have sufficient minimum contacts with the United States to justify the exercise of personal jurisdiction under the Due Process Clause. See e.g., Estate of Klieman v. Palestinian Auth., 467 F.Supp.2d 107, 113 (D.D.C. 2006) ("Klieman II"); Ungar I, 153 F.Supp.2d at 88; Biton I, 310 F.Supp.2d at 179. Defendants argue that plaintiffs are precluded from relying on the findings made by prior courts because they were either erroneous or there has been a change of

---

[8] Other than a single reference that defendants' motion should also be summarily denied "on the basis of collateral estoppel," plaintiffs advance no legal or factual basis in support of this alternative legal ground. (Pls.' Supp. Mem. at 2).

circumstances relevant to the issue of jurisdiction. Personal jurisdiction must be determined on a case-by-case basis because it is dependent upon the defendants' contacts with the State at the time the lawsuit was commenced. See, Klinghoffer, 937 F.2d at 52. The Court finds that limited jurisdictional discovery is warranted, prior to determining defendants' motion to dismiss for lack of personal jurisdiction.[9] See e.g., Knox v. Palestine Liberation Org., 229 F.R.D. 65, 67 (S.D.N.Y. 2005) ("Knox II").

## CONCLUSION

Accordingly, dismissal for lack of subject matter jurisdiction is denied. Defendants' motion to dismiss, for lack of personal jurisdiction and failure to state a claim, is denied without prejudice to renew. Plaintiffs' cross-motion is granted to the extent they may conduct limited jurisdictional discovery. The matter is referred to Magistrate Judge Ronald L. Ellis for the purpose of supervising jurisdictional discovery.

Defendants are hereby cautioned that, if they wilfully refuse to engage in jurisdictional discovery, it may result in being deemed a concession that the Court has personal jurisdiction over them. See e.g., Knox II, 229 F.R.D. at 71 (Sanctioning defendants, for their failure to comply with court orders regarding jurisdiction discovery, by finding "facts sufficient to permit the exercise of personal jurisdiction over defendants[.]"). Should defendants, in addition to voluntarily foregoing jurisdictional discovery, wilfully choose not to otherwise further defend in

---

[9] Defendants have also moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the pendent law claims for failure to state a claim for relief. It is inappropriate for the Court to address the adequacy of the pleadings until the threshold issue of personal jurisdiction is determined. Accordingly, the Rule 12(b)(6) branch of defendants' motion is similarly denied without prejudice.

this action, plaintiffs may renew their motion for a default judgment.

Dated: New York, New York
      September 30, 2008

SO ORDERED:

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge
