IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Civil Action No. 04cv397 (GBD) (RLE) <br> ) |
| THE PALESTINE LIBERATION ORGANIZATION, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO
RENEWED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Pursuant to the Court's order of March 11 (Dkt. No. 79), Plaintiffs' opposition to Defendants April 15 renewed motion to dismiss (Dkt. Nos. 81, 82) was due on May 17. After seeking three separate extensions, none of which the Court has yet granted and only the first of which Defendants consented to, Plaintiffs filed their opposition on May 28. Dkt. No. 83. Without taking a position on whether the Court should accept Plaintiffs' untimely opposition, Defendants the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") hereby file their reply so there is no further delay in bringing the briefing of the longstanding personal jurisdiction issue to closure in the event the Court grants Plaintiffs' extension requests.

I. **Plaintiffs' Burden of Proof Is Higher as a Result of Jurisdictional Discovery and May Not Be Shifted to the PA/PLO Under the Presumption of Continuity Doctrine.**

Plaintiffs' discussion of their burden of proof (Opp. at 3) does not squarely acknowledge that their burden is higher as a result of having engaged in jurisdictional discovery. Whereas, "[p]rior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction," where the parties "have conducted extensive discovery regarding the

1068132.1

defendant's contacts with the forum state, but no evidentiary hearing has been held[,] the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, *must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant*." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996) (emphasis added) (internal citation and quotation omitted).

This distinction is dispositive as to Plaintiffs' argument that the Court should exercise specific jurisdiction over the PA and PLO. Plaintiffs' allegation that their injuries were caused by "unabashedly malignant actions" the PA/PLO supposedly engaged in that were "directed at and felt in the United States" is not supported by any averment of facts, despite Plaintiffs' opportunity to engage in discovery. *See* Opp. at 19-20. Moreover, Plaintiffs' argument that the mere foreseeability that a terrorist attack in Israel or the West Bank would injure a U.S. national gives rise to specific jurisdiction (*id.* at 20) is unfounded. *See In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 94-95 (2d Cir. 2008) (foreseeability of causing injury in the forum does not give rise to specific jurisdiction in the absence of a showing that defendants personally engaged in intentionally tortuous actions expressly aimed at U.S. residents).

Nor is there any support for Plaintiffs' effort to shift the burden of proof to Defendants. Plaintiffs argue that a finding of personal jurisdiction over the PA/PLO in *Ungar v. PA*, 325 F. Supp. 2d 15 (D.R.I. 2004), "create[s] a presumption of continuity in respect to defendants' minimum contacts, which shifts the burden to the defendants to demonstrate a change in circumstances." Opp. at 8. Three of the four cases on which Plaintiffs rely do not involve personal jurisdiction, where courts must engage in a case-by-case analysis. As this Court previously held when it earlier rejected Plaintiffs' efforts to treat *Ungar* as dispositive: "Personal jurisdiction must be determined on a case-by-case basis because it is dependent upon the

2

defendants' contacts with the State at the time the lawsuit was commenced." Dkt. 58 (Sept. 30, 2008, Memorandum Decision and Order) at 12-13. Indeed, Defendants research identified *no* federal cases in which a court found personal jurisdiction using the presumption of continuity.

The only personal jurisdiction case that even *mentions* the presumption of continuity is the fourth case on which Plaintiffs rely -- *Klinghoffer v. S.N.C. Achille Lauro*, 795 F. Supp. 112 (S.D.N.Y. 1992), a case involving multiple lawsuits arising out of the 1985 Achille Lauro hijacking. *See* Opp. at 9. There, the court did not embrace a new legal principle that a finding of personal jurisdiction over a defendant in one case creates a presumption that future courts in other cases also will have personal jurisdiction over defendants. Rather the *Klinghoffer* court simply held that those plaintiffs who filed their complaints after the 1987 enactment of the Anti-Terrorism Act (which significantly curtailed the PLO's U.S. activities) could not rely on pre-enactment contacts to establish jurisdiction. *Klinghoffer*, 975 F. Supp. at 115. In this respect, the district court was merely following an earlier directive of the Second Circuit that "defects in personal jurisdiction as to those [post-ATA] complaints cannot be overcome by the fact that personal jurisdiction over the PLO may have existed at the time the first complaint was filed." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 n.9 (2d Cir. 1991).

Plaintiffs' reliance on the presumption of continuity also is inexplicable given that the parties have conducted extensive personal jurisdiction discovery -- at Plaintiffs' request -- and have established a factual record regarding the PA/PLO's contacts with the United States during the 1998-2004 period. Plaintiffs do not explain why the Court should disregard the factual record established in this case in favor of a presumption created by a ruling in *Ungar*.

Finally, Plaintiffs' assertion that "defendants have failed to assert -- much less show" that "their U.S. contacts have changed since *Ungar*" (Opp. at 9) is inaccurate. Defendants

1068132.1

extensively briefed this issue in their initial motion to dismiss. Dkt. No. 45. For example, Defendants explained that the PA/PLO contract with International Technologies Integration, an alleged jurisdictional contact on which the *Ungar* court relied, had ended by 1996. *Id.* at 11-12. Defendants also set forth the error in the *Ungar* court's reliance on allegations regarding $18 million in bank account deposits in New York. *Id.* at 12-13. In its Memorandum Decision and Order of September 30, 2008, after noting Defendants' argument "that plaintiffs are precluded from relying on the findings made by prior courts because they were either erroneous *or there has been a change of circumstances relevant to the issue of jurisdiction*," the Court held that "[p]ersonal jurisdiction must be determined on a case-by-case basis because it is dependent upon the defendants' contacts with the State at the time the lawsuit was commenced," and allowed the Plaintiffs to conduct limited jurisdiction discovery to make the necessary showing. Dkt. No. 58 at 12-13 (emphasis added). Thus, the Court previously rejected Plaintiffs' efforts to treat *Ungar* as controlling.[1]

## II. Plaintiffs Failed to Establish That, During the Relevant Period, Either the PA or the PLO Had the Continuous and Systematic Non-Exempt Contacts with the United States Necessary to the Court's Exercise of General Jurisdiction.

In their opposition brief, Plaintiffs identify only a few contacts the PA or PLO had with the United States during the relevant 1998-2004 period: (1) the Washington, D.C. office of the PLO Mission to the United States; (2) the New York office of the Permanent Observer Mission of Palestine to the United Nations; and (3) the PA's contract with Bannerman & Associates, a Washington, D.C. based lobbying firm.

---

[1] Plaintiffs' argument that Defendants are "collaterally estopped from contesting *Ungar*'s factual and legal findings" (Opp. at 6) and that the Court should "summarily deny" Defendants' motion (*id.* at 10) should be rejected for similar reasons and because the Court previously denied Plaintiffs' motion for summary denial. *See* Dkt. Nos. 49, 50.

A. <u>The PLO's Contacts</u>. The only PLO contacts in the U.S. are those associated with maintaining an office in New York to participate as a Permanent Observer in the United Nations and maintaining a foreign mission office in Washington D.C. to have a "diplomatic" presence in the United States. As Defendants explained in their opening brief, under *Fandel v. Arabian American Oil Co.*, 345 F.2d 87 (D.C. Cir. 1965), and progeny a federal district court should not exercise general jurisdiction over a defendant based on the defendant's presence in Washington D.C. when that presence has been established solely to facilitate relations of a "diplomatic rather than business nature." *Dooley v. United Techs., Corp.*, 786 F. Supp. 65, 76 (D.D.C. 1992). *See also* Mem. at 12-14; *id.* at 11-12 (discussing government contacts exception). Under *Klinghoffer*, 937 F.2d at 51-52, the PLO's United Nations related activities also cannot be used to establish jurisdiction. The PLO should not be forced to close its U.S. and United Nations mission offices to avoid being subject to lawsuits in the U.S. whenever a U.S. national is injured in the Palestinian territory and seeks to hold the PA or PLO responsible.

Plaintiffs argue that Defendants' reliance on the government contacts exception is "frivolous" because the "doctrine is based upon the First Amendment right to petition the government" and the PA and PLO are "foreign entities, not U.S. citizens." Opp. at 13. Plaintiffs, however, are forced to concede "there are cases applying the government contacts exception to foreign entities." Opp. at 13 n.10. Plaintiffs rely on a single case from a federal court in California, where the jurisdictional contact at issue was defendant's application for a U.S. trademark. *Monster Cable Products v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001 (N.D. Cal. 2009). There, the court held: "The privilege of trademark registration invokes the benefits and protections of trademark law. It is reasonable and does not offend traditional notions of fair play and substantial justice to require [defendant] to submit to the burden of litigation. For these

1068132.1

reasons, the court refuses to extend the government contacts exception to the facts of this case where jurisdiction over [defendant] otherwise comports with due process." *Id.* at 1010 (internal citation and quotation omitted). In addition to the fact that the trademark application at issue in *Monster Cable Products* is readily distinguishable from operating diplomatic offices, Plaintiffs' assertion that the government contact exception is based solely on the First Amendment and does not apply to foreign entities is contrary to controlling Second Circuit authority holding that jurisdiction over the PLO cannot be based on its United Nations related activity. *Klinghoffer*, 937 F.2d at 51-52 ("Although this 'government contacts' rule is based in part on the constitutional right to petition the Government for redress of grievances . . . it also appears to be based on non-constitutional policy considerations, such as the Judiciary's reluctance to interfere with the smooth functioning of other governmental entities.").

Plaintiffs assert that, even if the government contacts exception applies, the media appearances, interviews, and other public appearances by the heads of the U.S. and United Nations mission offices are not covered by the exception. Plaintiffs characterize as "hairsplitting" Defendants argument that *Klinghoffer*, 937 F.2d at 52, treated media and public speaking appearance as non-exempt contacts only when they constituted "proselytizing and fund-raising" activities. *See* Mem. at 15-16; Opp. at 19. Plaintiffs argue that the district court found jurisdiction on remand despite finding no evidence of ongoing U.S.-based contributions to the PLO's United Nations office for PLO-designated charities. Opp. at 19 (citing *Klinghoffer*, 795 F. Supp. at 114). Plaintiffs neglect to note that the exercise of jurisdiction was based on the presence of certain proselytizing activity that satisfied the "doing business" standard under New York's long-arm statute but that are not found here. *See id.* (listing activity such as purchasing and generating informational material for distribution). Moreover, the PLO's role in the United

1068132.1

States circa 1985-1987 -- the period at issue in *Klinghoffer* -- predates the creation of the Palestinian Authority, the existence of which inevitably changed the focus of the PLO's activities in the United States from proselytizing to state-building.

As to the activities of the office of the PLO Mission to the United States -- the office on which Plaintiffs focus -- the 2004 deposition testimony of Said Hamad, then Deputy Chief of the mission, is particularly instructive as to the scale of the operations of the office as of the year this lawsuit was filed. *See* Opp. Exh. N (Dkt. No. 08-19).[2] According to Hamad's testimony, the office did not create any publications, did not produce a newsletter, did not have a mailing list, and did not send out press releases. Dkt. No. 83-19 at 6, 17. The office could not and did not accept donations. *Id.* at 32. The office did not have any contact with U.S. companies seeking to do business in the Occupied Palestinian Territories. *See id.* at 26 ("Because there is no use to meet with anybody if you don't have stability. Which company would really go to the West Bank and Gaza to do business?"); *see also id.* at 27. The office did not have credit cards, an insurance carrier, an email provider, a website provider, equipment leases, or a service contract on its copier. *Id.* at 17-19, 24-25. *See also id.* at 19 ("We can't pay our own employees. So how could we hire somebody?"). Mr. Hamad describes a small office of eight employees where the modest monthly budget went to rent, salaries ($16,000 for all employees) and basic office expenses ($4000-$5000). *Id.* at 3, 10. Consistent with Defendants' position that the majority of the activities of the Washington, D.C. Office are exempt under the government contacts exception, Mr. Hamad testified that the office facilitated meetings and communications between

---

[2] Plaintiffs' counsel apparently took the deposition in 2004 (Opp. at 18) in an unidentified other matter on behalf of other clients. It is troubling that, in the course of arguing for extensive personal jurisdiction discovery here, counsel never disclosed to the Court or Defendants' current counsel that he previously conducted a deposition regarding the activities of the PLO U.S. mission office.

1068132.1

visiting PA and PLO officials and the State Department, White House, and Congress. *Id.* at 14-15, 28.

 B. <u>The PA's Contacts</u>. Plaintiffs make repeated efforts to characterize the Washington, D.C. office of the PLO Mission to the U.S. as a PA office. *See* Opp. at 11-18. Most of the facts on which Plaintiffs rely are not in dispute. As Defendants previously acknowledged, the PLO Mission in Washington, D.C. represented the PA in the United States and advocated on behalf of the PA's interests. Mem. at 10. Moreover, the PA provided funding and an occasional employee to the PLO Mission. *Id.* Nor do Defendants dispute that the Head of the PLO Mission to the U.S. during the relevant period, Hassan Abdel Rahman, often characterized himself as a representative of the PA and PLO. The fact remains, however, that by virtue of the Oslo Accords and U.S. law (*see* Mem. at 8) and consistent with the PLO Mission's filings under the Foreign Agents Registration Act (*see, e.g.*, Dkt. 82-6), the U.S. mission office necessarily functioned as an office of the PLO. The PA's relationship with the PLO's U.S. mission office -- especially in light of the exempt nature of a substantial share of the activities of that office -- does not constitute continuous and systematic contact with the United States.

 The only other PA contact with the United States Plaintiffs identify is a contract with Bannerman & Associates, a Washington, D.C. based lobbying firm. Given that Bannerman principally was retained to have contact with the U.S. government on the PA's behalf, the PA's contract with Bannerman also is covered by the government contacts exception and, in any event, is not sufficient to constitute continuous and systematic PA contact with the U.S. sufficient for the exercise of general jurisdiction. *See* Mem. at 17-18; *see also, e.g.*, Dkt. No. 83-9 at 4,17-18 (listing Bannerman's meetings with members of Congress, Congressional staff, and Executive Branch officials); Dkt. No. 83-11 at 26-27 (same).

III. **The PA and PLO Are Entitled to Full Due Process Protection.**

Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not offend traditional notions of fair play and substantial justice. "To determine whether this is so, [courts] apply a two-step analysis in any given personal jurisdiction case." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). As explained in *Porina*:

> First, we ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction. . . . If the defendant has sufficient minimum contacts, we proceed to the second stage of the due process inquiry, and consider whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case.

*Id.* (internal citations and quotations omitted). Defendants previously argued why the exercise of jurisdiction is not reasonable here. Mem. at 19-24.

Plaintiffs seek to avoid the two-step analysis by arguing that the PA is not entitled to due process (Opp. at 23), or, alternatively, that the reasonableness prong of the inquiry does not apply in cases where service is accomplished through a nationwide service of process statute (*id.* at 21-22). It is well-established that the U.S. courts' exercise of personal jurisdiction over foreign defendants must comport with due process. *See, e.g., Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 (1987); *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 418-19 (1984). Plaintiffs rely on the Second Circuit's holding in *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 399 (2d Cir. 2009), that foreign states are not "entitled to the jurisdictional protections of the Due Process Clause." *See* Opp. at 23. If, however, the PA is sufficiently akin to a foreign state to be denied due process protections under the *Frontera* ruling than it also is sufficiently akin to a foreign state to enjoy sovereign immunity. Plaintiffs cannot selectively cloak the PA with the attributes of statehood.

Plaintiffs' argument that the reasonableness prong of the due process inquiry is inapplicable where jurisdiction is based on nationwide contacts also is inconsistent with controlling authority. *See, e.g., Porina*, 521 F.3d at 127-29 (applying the "two-step analysis" to determine whether a foreign corporation's contacts with the United States comports with due process, and concluding that "we need not consider whether personal jurisdiction would be 'reasonable' in the particular circumstances of the case," only because the defendant's "contacts with the United States do not satisfy the heightened minimum contacts requirement for general jurisdiction over a non-resident," ending the inquiry). *See also In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 557 (S.D.N.Y. 2005) (whether jurisdiction is based on New York's long-arm statute or on nationwide contacts under Federal Rule of Civil Procedure 4(k)(1) or 4(k)(2), "[t]he analysis is essentially the same"; the "exercise of personal jurisdiction must comport with due process requirements -- there must be minimum contacts and the exercise of jurisdiction must be reasonable").

Plaintiffs' reliance on *Steinberg v. Bombardier Trust*, 2008 WL 2787720, at *2 (S.D.N.Y. 2008), and *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir. 1974), is misplaced. Neither case holds that the reasonableness prong of the due process inquiry is "inapplicable where . . . service is accomplished pursuant to a nationwide service of process statute." *See* Opp. at 21. In *Steinberg*, the defendants lacked the requisite minimum contacts, so the reasonableness inquiry never became relevant. Plaintiffs' alternate theory that the federal interest associated with the Anti-Terrorism Act, 18 U.S.C. § 2333, "easily trumps any considerations of 'fairness,'" Opp. at 22, also fails to find support in the case law. The interests of the forum -- here, the United States -- is but one factor to be considered in the reasonableness inquiry. *See Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (applying a five factor test).

1068132.1

## CONCLUSION

For the reasons set forth above, the PA/PLO's renewed motion to dismiss should be dismissed with prejudice.

Respectfully Submitted,

June 17, 2010
/s/ Mark J. Rochon
Mark J. Rochon
Richard A. Hibey
Laura G. Ferguson
MILLER & CHEVALIER CHARTERED
655 15th St., N.W., Suite 900
Washington D.C. 20005-6701
Ph. (202) 626-5800
Fax: (202)626-5801
Email: mrochon@milchev.com

*Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

1068132.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 17th day of June, 2010, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to the following counsel of record:

>David J. Strachman
>McIntyre, Tate & Lynch, LLP
>321 South Main Street, Suite 400
>Providence, RI 02903
>Phone: (401) 351-7700
>Fax: (401) 331-6095
>Email: djs@mtlhlaw.com
>
>Olimpio Lee Squitieri
>Squitieri & Fearon, LLP
>32 East 57th Street, 12th Floor
>New York, NY 10022
>Phone: (212) 421-6492
>Fax: (212) 421-6553
>Email: lee@sfclasslaw.com
>
>*Attorneys for Plaintiffs*
>
>/s/ Mark J. Rochon

1068132.1