**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 0 MAR 2011

MARK I. SOKOLOW, individually and as a natural guardian of plaintiff Jamie
A. Sokolow; RENA M. SOKOLOW, individually and as a natural guardian of
plaintiff Jamie A. Sokolow; JAMIE A. SOKOLOW, minor, by her next friends
and guardian Mark I. Sokolow and Rena M. Sokolow; LAUREN M.
SOKOLOW; ELANA R. SOKOLOW; SHAYNA EILEEN GOULD; ELISE
JANET GOULD; JESSICA RINE; SHMUEL WALDMAN; HENNA NOVACK
WALDMAN; MORRIS WALDMAN; EVA WALDMAN; DR. ALAN J.
BAUER, individually and as a natural guardian of plaintiffs Yehonathon Bauer,
Binyamin Bauer, Daniel Bauer, and Yehuda Bauer; REVITAL BAUER,
individually and as a natural guardian of plaintiffs Yehonathon Bauer, Binyamin
Bauer, Daniel Bauer, and Yehuda Bauer; YEHONATHON BAUER, minor, by
his next friend and guardians Dr. Alan J. Bauer and Revital Bauer; BINYAMIN
BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital
Bauer; DANIEL BAUER, minor, by his next friend and guardians Dr. Alan J.
Bauer and Revital Bauer; YEHUDA BAUER, minor, by his next friend and
guardians Dr. Alan J. Bauer and Revital Bauer; RABBI LEONARD
MANDELKORN; SHAUL MANDELKORN; NURIT MANDELKORN; OZ
JOSEPH GUETTA, minor, by his next friend and guardian Varda Guetta;
VARDA GUETTA, individually and as natural guardian of plaintiff Oz Joseph
Guetta; DR. KATHERINE BAKER, individually and as personal representative
of the Estate of Benjamin Blutstein; REBEKAH BLUSTEIN, DR. RICHARD
BLUSTEIN, individually and as personal representative of the Estate of
Benjamin Blutstein; DR. LARRY CARTER, individually and as personal
representative of the Estate of Diane ("Dina") Carter; SHAUN COFFEL;
DIANNE COULTER MILLER; ROBERT L. COULTER, JR.; ROBERT L.
COULTER, SR., individually and as personal representative of the Estate of Janis
Ruth Coulter; CHANA BRACHA GOLDBERG, minor, by her next friend and
guardian Karen Goldberg; ELIZER SIMCHA GOLDBERG, minor, by her next
friend and guardian Karen Goldberg; ESTHER ZAHAVA GOLDBERG, minor,
by her next friend and guardian Karen Goldberg; KAREN GOLDBERG,
individually, as pers. rep. of the Est. of Stuart Scott Goldberg/ nat. guard. of pltffs
Chana Bracha Goldberg, Esther Zahava Goldberg, Yitzhak Shalom Goldberg,
Shoshana Malka Goldberg, Eliezer Simcha Goldberg, Yaakov Moshe Goldberg,
Tzvi Yehoshua Goldberg; SHOSHANA MALKA GOLDBERG, minor, by her
next friend and guardian Karen Goldberg; TZVI YEHOSHUA GOLDBERG,
minor, by her next friend and guardian Karen Goldberg; YAAKOV MOSHE
GOLDBERG, minor, by her next friend and guardian Karen Goldberg;
YITZHAK SHALOM GOLDBERG, minor, by her next friend and guardian
Karen Goldberg; NEVENKA GRITZ, individually and as personal representative
of the Estate of David Gritz; NORMAN GRITZ, individually and as personal
representative of the Estate of David Gritz,

Plaintiffs,

v.

PALESTINE LIBERATION ORGANIZATION; and PALESTINE
AUTHORITY, also known as Palestine Interim Self-Government Authority
and/or Palestine Council and/or Palestinian National Authority

Defendants.

___

<u>MEMORANDUM DECISION</u>
<u>AND OPINION</u>

04 CV 00397 (GBD)

1

**GEORGE B. DANIELS, District Judge:**

In the above-captioned action brought under the Antiterrorism Act of 1991, 18 U.S.C. §

2331 et. seq. ("ATA"), United States citizens and guardians, family members, and personal

representatives of the estates of United States citizens, are suing the Palestine Liberation

Organization ("PLO") and the Palestinian Authority[1] ("PA") for injuries and death allegedly

suffered as a result of a series of seven terrorist attacks occurring over a three year period in or

near Jerusalem from January 8, 2001, to January 29, 2004.  See Complaint ¶¶ 54-125.  Plaintiffs

assert causes of action for international terrorism, pursuant to 18 U.S.C. § 2333,[2] and various

state law claims including wrongful death, pain and suffering, battery, assault, loss of

consortium, negligence, and infliction of emotional distress.  Defendants move to dismiss the

Amended Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Defendants' motion is DENIED.

## PROCEDURAL HISTORY

In response to Plaintiff's motion for a default judgment pursuant to Fed. R. Civ. P. 56,

Defendants moved to dismiss the Amended Complaint for lack of subject matter and personal

jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and (2), and to dismiss the pendant state law

causes of action for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  See Docket ##

22, 45.  Plaintiffs opposed Defendants' prior motion to dismiss for lack of personal jurisdiction,

and, in the alternative, sought jurisdictional discovery.  See Docket # 50.  This Court denied

---

[1] The Palestinian Authority is also known as "The Palestinian Interim Self-Government Authority," "The Palestinian Council" and "The Palestinian National Authority."

[2] Section 2333 is the civil provision of the ATA, which provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors or heirs may sue therefore . . ." 18 U.S.C. § 2333(a).

2

Defendants' motion to dismiss for lack of subject matter jurisdiction with prejudice, and denied

their motion to dismiss for lack of personal jurisdiction and failure to state a claim without

prejudice to renew after limited jurisdictional discovery. See Sololow v. Palestine Liberation

Org., 583 F. Supp. 2d 451 (S.D.N.Y. 2008), available at Docket # 58.

      The parties engaged in jurisdictional discovery under the supervision of Magistrate Judge

Ronald L. Ellis. See Docket # 61. Defendants prematurely renewed their motion to dismiss for

lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) during jurisdictional discovery,

and this Court denied the motion without prejudice to renew after the completion of

jurisdictional discovery. See Docket ## 66, 79. After the Magistrate Judge declared discovery

complete, Defendants properly filed the instant motion to dismiss. See Docket ## 80, 67.

## STANDARD OF REVIEW

      To withstand a 12(b)(2) motion to dismiss, the plaintiff "bears the burden of showing [by

a preponderance of the evidence] that the court has jurisdiction over the defendant." In re

Magnetic Audiotape Antitrust Lithog., 334 F.3d 204, 206 (2d Cir. 2003); Landoil Resources

Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). The showing

necessary to satisfy this burden is more demanding when, as is the case here, the parties have

completed jurisdictional discovery.[3] Whereas legally sufficient allegations are alone sufficient to

make a prima facie showing where no evidentiary hearing has been held, or when the parties

have not engaged in jurisdictional discovery, "[a]fter discovery, the plaintiff's prima facie

showing . . . must include an averment of facts that, if credited by the trier, would suffice to

establish jurisdiction over the defendant."[4] Ball v. Metallurgie Hoboken — Overpelt S.A., 902

---

    [3] It is appropriate to apply the higher burden in the present case regardless of how
dissatisfied Plaintiffs may be with Defendants' productions. The appropriate time to seek relief
for such grievances has expired now that jurisdictional discovery is complete.

    [4] Plaintiffs have not provided an exhaustive list of the facts that they believe confer
jurisdiction over the Defendants. However, Plaintiffs have provided all of the materials

F.2d 194, 197 (2d Cir. 1990); see also Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010). The Court is to accept all averments of jurisdictional facts as true, and construe the pleadings, affidavits, and any doubts in plaintiff's favor. See In re Magnetic Audiotape, 334 F.3d at 206; PDK Labs. Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); see also Whitaker v. American Telecasting Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)).

## GENERAL JURISDICTION

In the context of ATA litigation, a plaintiff makes a prima facie showing of personal jurisdiction if: (1) service of process was properly effected as to the defendant, see Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons . . . establishes personal jurisdiction over a defendant . . . when authorized by a federal statute"); 18 U.S.C. § 2334(a) (providing for nationwide service of process and venue); and (2) the defendant has sufficient minimum contacts with the United States as a whole to satisfy a traditional due process analysis. See Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 87, 95 (D.R.I. 2001); see also In re Terrorist Attacks on September 11, 2001, 392 F. Supp. 2d 539, 556-58 (S.D.N.Y. 2005); Burnett v. Al Baraka Inv. & Dev. Corp., 349 F. Supp. 2d 765, 806-07 (S.D.N.Y. 2005); Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 179 (D.D.C. 2004).

Here, Defendants do not assert that service was defective. Defendants do not even dispute that, during the relevant time period, they maintained sufficient contacts with the United States to satisfy the traditional due process analysis for general jurisdiction. Rather, Defendants contend that their contacts with the United States qualify as jurisdictional exceptions and may

---

submitted in Estates of Ungar v. Palestinian Auth., 325 F. Supp. 2d 15 (D.R.I. 2004), as well as additional materials relevant to post-2002 activities.

4

not be relied upon to support the exercise of general jurisdiction over them.  They contend that

any remaining contacts are insubstantial.

**A.    SERVICE**

Plaintiffs' properly served the PLO and the PLA.  Fed. R. Civ. P. 4(h)(1)(B) provides that

a foreign association "must be served[] . . . in a judicial district of the United States . . . by

delivering a copy of the summons and of the complaint to an officer, a managing or general

agent."  Here, Plaintiffs personally served Hassan Abdel Rahman at his home in Virginia.  <u>See</u>

Pls.' Opposition Memo, Ex. B ("Affidavit of Service").  Rahman, based upon the overwhelming

competent evidence produced by Plaintiffs,[5] was the Chief Representative of the PLO and the

PA in the United States at the time of service.  Rahman was thus a valid agent for service of

process on the PLO and the PA.[6]

**B.    DUE PROCESS**

To determine whether the exercise of jurisdiction comports with due process, the Court

must engage in a two part analysis: "the 'minimum contacts' inquiry and the 'reasonableness'

inquiry."  <u>Chloe v. Queen Bee of Beverly Hills. LLC</u>, 616 F.3d 158, 171 (2d Cir. 2010).  The

court must first determine whether a defendant has minimum contacts with the forum such that

---

[5] <u>See</u> Pls.' Opp. Mem., Exs. C (business card identifying him as "Chief Representative" to the "Palestine Liberation Organization" and the "Palestine National Authority"), D (letter written by him to Congressman Abercrombie in which he identifies himself as "Chief Representative of the PLO and PNA"), E (letter sent to him by Richard C. Massey of the United States Department of State identifying him as "Chief Representative PLO & PNA"), M (10/30/2003 Senate Hearing Transcript identifying Rahman as "chief representative of the PLO and the PA in the United States" at 13 and speaking on behalf of "[w]e, the Palestinian Authority" at 28); <u>see also</u> Declaration of David J. Strachman, Ex. 1 (reproducing evidence of Rahman's dual agency from <u>Unger</u>, 325 F.Supp.2d at 55-59).

[6] This finding is consistent with other federal courts.  <u>See, e.g.</u>, <u>Kliman v. Palestine Authority</u>, 547 F.Supp.2d 8, 13-14 (D.D.C. 2008) (considering Haman's successor); <u>Ungar</u>, 325 F. Supp. 2d at 55-59 (considering Haman); <u>Biton</u>, 310 F. Supp. 2d at 179-190 (same).

maintenance of the action does not offend traditional notions of fair play and substantial justice. See State Oil Co. of Azerbaijan Republic v. Frontera, 582 F.3d 393, 396 (2d Cir.2009) (citation omitted). The court must then determine whether it would be reasonable, under the circumstances of the particular case, to exercise jurisdiction over the defendant. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

1.    **Minimum Contacts**[7]

The minimal contacts inquiry necessitates "a distinction . . . between 'specific' jurisdiction and 'general' jurisdiction." Chloe, 616 F.3d at 165. Whereas specific jurisdiction applies where a defendant's contacts are related to the litigation, general jurisdiction applies where they are unrelated, and involves a more stringent minimal contacts test. See Helicopteros Nacionales de Columbia., S.A. v. Hall, 466 U.S. 408, 414, 415 n.9; see also Metro Life, 84 F.3d at 568. General jurisdiction requires that each[8] defendant's contacts with the forum are continuous and systematic. Id. In determining the strength of those contacts, the court is to examine the totality of the defendant's contacts with the forum over a period of time that is

---

[7] This Court conducts a *de novo* review of the minimal contacts of the PLO and the PA. Upon first considering the issue of personal jurisdiction in the above-captioned action, this Court recognized that "[a] number of federal courts [had already] concluded that both the PA and PLO have sufficient minimum contacts with the United States to justify the exercise of personal jurisdiction under the Due Process Clause." Sololow, 583 F. Supp. 2d at 460 (citations omitted). This Court, nevertheless, held that "[p]ersonal jurisdiction must be determined on a case-by-case basis because it is dependent upon the defendants' contacts with the [United States] at the time the lawsuit was commenced." Id. at 460. This Court thus declined to entertain Plaintiffs' arguments that the principles of collateral estoppel and/or the presumption of continuity preclude or otherwise limit Defendants' litigation of the personal jurisdiction issue.

[8] "Each defendant's contacts with the [United States] must be assessed individually," and "jurisdiction cannot be implied or imputed from one defendant to another." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984); Langenberg v. Sofair, 2006 U.S. Dist. LEXIS 65276, at *21 (S.D.N.Y. Sept. 11, 2006); see also Rush v. Savchuk, 444 U.S. 320, 331-32 (1980).

reasonable under the circumstances, up to and including the date the suit was filed.[9]  See Chloe, 616 F.3d at 164; Porina v. Marward Shipping Co., 521 F.3d 122, 128 (2d Cir. 2008) (citation omitted).  Additionally, the defendant must be found to have purposely availed himself of the privilege of conducting activities in the forum.  See Hanson v. Denckla, 357 U.S. 235, 253 (1958).

     *a.*     ***Traditional Jurisdictional Analysis***

     After carefully reviewing the competent evidence produced, this Court finds that Plaintiffs have gone beyond the allegations in the Amended Complaint to demonstrate by a preponderance of the evidence that the PLO and the PA purposely engaged in numerous activities that resulted in both entities having a continuous and systematic presence within the United States.  Therefore, this Court agrees with every federal court to have considered the issue that the totality of activities in the United States by the PLO and the PA justifies the exercise of general personal jurisdiction.[10]

---

[9] For the purpose of discovery, the parties agreed that the relevant time period was the six-year period preceding the filing of the complaint, i.e. January 16, 1998, to January 16, 2004. See Pls. Opp. Mem., at 5; Defs. Opening Mem., at 7-8.  Such periods have been found to be reasonable by the Second Circuit.  See Metro Life, 84 F.3d at 569-70 (collecting cases).

[10] See, e.g., Knox v. PLO, 248 F.R.D. 420, 427 (S.D.N.Y. 2008); Estate of Klieman v. Palestinian Auth., 467 F. Supp. 2d 107, 113 (D.D.C. 2006); Ungar, 325 F. Supp. 2d at 59; Biton v. Palestinian Authority, 310 F. Supp. 2d at 179; Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 88 (D.R.I. 2001); Klinghoffer v. S.N.C. Achille Lauro, 795 F. Supp. 112, 114 (S.D.N.Y. 1992); United States v. Palestine Liberation Organization, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988); cf. Knox, 229 F.R.D. at 67-70; Mohamad v. Rajoub, 2008 U.S. Dist. LEXIS 117400 (S.D.N.Y. Sept. 29, 2008) (finding jurisdictional discovery against the PA and PLO in Washington, D.C. would be unnecessary and cause undue delay and expense as previous courts in Washington, D.C. have reviewed at length the PA and PLO's Washington, D.C. contacts); Estate of Esther Klieman v. Palestinian Auth., 547 F. Supp. 2d 8, 15 (D.D.C. 2008) (Defendants moved to dismiss for lack of personal jurisdiction due to insufficient service of process); Gilmore v. Palestinian Interim Self-Government Auth., 422 F. Supp. 2d 96, 102 n.4 (D.D.C. 2006) ("Defendants did not move to dismiss the PLO and the PA from this action for lack of personal jurisdiction.").

It is undisputed that the PLO maintained an office in Washington, D.C., during the relevant period. See Defs.' Opening Mem., at 8-9; Pls.' Opp. Mem., at 10; see also Strachman Declaration, Ex. 1 Part 5 ("Revised Notice"), Ex. KK (3/10/1998 Registration Statement Pursuant to the Foreign Agents Registration Act of 1938, as amended ("FARA"), by "PLO Washington Office"); id., Exs. 2-12 (FARA Supplemental Statements filed by the PLO from September 1998 to September 2003). It is also undisputed that most of the individuals who worked in the D.C. office were PLO employees. See Defs.' Opening Mem., Ex. 3 (Interrogatories) (listing twelve employees during the relevant period), at 5-6.[11] The evidence suggests that the majority of the twelve employees were present for the entirety of the relevant period. See id., Ex. 3, at 9.

The parties disagree over whether the PA maintained an office in Washington, D.C.; however the weight of the evidence indicates that the D.C. office simultaneously served as an office for the PLO and the PA.[12] The initial registration statement states that "[t]he PLO offices in Washington, D.C. shall represent the PLO and the Palestinian Authority in the United States" and that "[t]he PLO and the Palestinian Authority will pay for the expenses of the office and salaries of its employees." Strachman Declaration, Ex. 1 Part 5, Ex. KK. Rahman, the Chief

---

[11]   Defendants did not provide precise dates of employment. Construing all facts in a light favorable to Plaintiffs, the lack of duplication amongst the titles and job descriptions of the PLO employees suggests that the majority of the twelve employees were present for the entirety of the relevant period. See Defs.' Opening Mem., Ex. 3, at 9.

[12]   Defendants' argument that only the PLO had the authority to conduct foreign affairs is unpersuasive. The fact that the PA should not have been operating an office in the United States does not mean that it did not or could not have done so. Moreover, even if Defendants' are right, "there is nothing in the Oslo Accords . . . prohibit[ing] the PA from conducting other non-diplomatic activities (such as commercial, public relations, lobbying, or educational activities) through its representatives, officers and agents abroad." Unger, 325 F.Supp.2d at 54. Also the fact that only 2 of the 14 employees at the D.C. office were employed by the PA does not demonstrate that D.C. office was not working on behalf of the PA. See Defs.' Opening Mem., Ex. 3 (Interrogatories), at 6, 10-11.

Representative of the PLO and the PA, used and was contacted at a single address -- that of the D.C. office. See Pls.' Opp. Mem., Exs. C-E. The PA entered into a substantial commercial contract that repeatedly described the D.C. office as an office of the PA. See id., F (retainer agreement for 1999-2002). Finally, the PA's Ministry of Finance – rather than the PLO Headquarters in Gaza – provided the vast majority of the D.C. office's income. See Strachman Declaration, Exs. 2-12. Accordingly, the activities of the D.C. office are attributable to both the PLO and the PA.[13]

The Defendants, through the D.C. office, had a substantial commercial presence in the United States. The Defendants operated a fully and continuously functional office in Washington, D.C., during the relevant period. Defendants had thirty-five land line telephone and cell phone numbers and two bank accounts from 2002-2004.[14] See Defs.' Opening Mem., Ex. 3, at 20-22. The Defendants had a CD account as late as January 2003. Id., Ex. 3, at 20. Defendants also had ongoing commercial contracts and transactions with numerous U.S.-based businesses, including for office supplies and equipment, postage/shipping, new services/subscriptions, telecommunications /internet, IT support, accountant and legal services, and credit cards. See id., Ex. 4 ("Document Requests"), at 9-10. Defendants even paid for certain living expenses of Rahman. See id., Ex. 4, at 10.

Furthermore, the PA retained a consulting and lobbying firm through a multi-year, multi-million dollar contract. See Pls.' Opp. Mem., Ex. F. That contract resulted in the performance of services from November 1999 to at least April 2004. See id., Ex G. (11/29/1999 FARA

---

[13] Defendants have not offered any evidence or other basis to attribute particular D.C. office activities to a single entity.

[14] The D.C. office does not have telephone or bank records for 1998-2001.

Registration Statement filed by Firm for services to the PA); id., Ex. H-L (FARA Supplemental

Statements filed by Firm from April 2000 to April 2004) (indicating that services were

continuous and continued after 2002). In particular, these American agents engaged in

numerous political activities on behalf of the PA such as office and lunch meetings with various

U.S. government officials and departments.[15] Id., Exs. H-L (listing each of the activities during

every six month period). These agents also promoted the PA's interests through television and

radio appearances on occasion,[16] and pursuant to the Retainer Agreement, provided the PA with

consulting and public relations services that would not have been disclosed in the required public

filings as such. Id., Ex. F. This included the preparation of "weekly memoranda on

developments in Washington which are relevant to the Palestinian Authority" and "[r]egular

contacts . . . between personnel of the Firm and the Washington Office of the Palestinian

Authority." Id., Ex. F, ¶¶ 3-4.

The Defendants also had a substantial promotional presence in the United States, with the

D.C. office having been permanently dedicated to promoting the interests of the PLO and the

PA. Based upon required disclosures to federal authorities, the D.C. office engaged in extensive

public relations activities throughout the United States, ranging from interviews and speeches to

attending and participating in various public events. See Stachman Declaration, Exs. 2-12.

---

[15] Approximate total are as follows: 36 activities in the six month period ending April 2000. See Pls.' Opp. Mem., Ex. H Part 1. 46 activities in the six month period ending October 2000. Id., Ex. H Part 2. 30 activities in the six month period ending April 2001. Id., Ex. I Part 1. 35 activities in the six month period ending October 2001. Id., Ex. I Part 2. 29 activities in the six month period ending April 2002. Id., Ex. J Part 1. 37 activities in the six month period ending October 2002. Id., Ex. J Part 2. 33 activities in the six month period ending April 2003. Id., Ex. K Part 1. 50 activities in the six month period ending October 2003. Id., Ex. K Part 2. 33 activities in the six month period ending April 2004. Id., Ex. L

[16] 17 activities in the six month period ending October 2000. See id., Ex. H Part 2.

10

Defendants not only participated in a substantial number of events,[17] but also Defendants

expended substantial amounts of money – often exceeding $200K every six months – on these

activities.   See id., Exs. 2-12; see also Unger, 325 F.Supp.2d at 4950 (summarizing the millions

of dollars spend on media and public relations activities from 1999-2001).  Rahman, the Chief

Representative of the PLO and the PA in the United States, participated in at least 158 public

interviews and media appearances between January 1998 and January 2004.[18]  See Stachman

Declaration ¶ 18 (listing events); id., Ex. 13 (providing transcripts).  Most were broadcasted on

major national news networks such as CNN, Fox News Channel, ABC, and MSNBC.

### c.    *Jurisdictional Exceptions*

Certain activities fall under jurisdictional exceptions and may not be properly considered

as a basis of jurisdiction.  See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, 937 F.2d

44, 51 n.7 (2d Cir. 1991) (noting examples).  However, there is not a presumption that a

jurisdictional exception applies where a dispute exists over excluding particular contacts.  A

plaintiff is not required to disprove the applicability of a jurisdictional exception simply because

one is asserted by a defendant.  A defendant bears the burden of demonstrating that it is entitled

to the benefits of a jurisdictional exception, triggering a re-assessment of the sufficiency of a

---

[17]  Approximate total are as follows: 14 events in the six month period ending September
1998.  See Strachman Declaration, Ex. 2.  13 events in the six month period ending March 1999.
Id., Ex. 3.  20 events in the six month period ending September 1999.  Id., Ex. 4.  15 events in
the six month period ending March 2000.  Id., Ex. 5.  19 events in the six month period ending
September 2000.  Id., Ex. 6.  27 events in the six month period ending March 2001.  Id., Ex. 7.
18 events in the six month period ending September 2001.  Id., Ex. 8.  23 events in the six month
period ending September 2002.  Id., Ex. 10.  10 events in the six month period ending March
2003.  Id., Ex. 11.  21 events in the six month period ending September 2003.  Id., Ex. 12.

[18]    Many of these events do not appear to have been disclosed in the required filings.

plaintiff's prima facie case. Unsupported allegations and assertions are simply insufficient after the parties have engaged in jurisdictional discovery.

With respect to foreign entities such as the PLO and the PA engaging in activities in the United States, two exceptions may be applicable. First, jurisdiction in the District of Columbia over a person or entity may not be grounded on the defendant's "contacts with a federal instrumentality," including where contacts only consist of "lobbying activity before federal agencies to secure their own proprietary interests." Bechtel & Cole v. Graceland Broadcasting, 1994 U.S. App. LEXIS 4468, at *3 (D.C. Cir. Mar. 9, 1994) (citing Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc., 355 A.2d 808, 813 (D.C. 1976) (en banc)); id. (citing Naartex Consulting Corp. v. Watt, 232 U.S. App. D.C. 293, 722 F.2d 779, 787 (D.C. Cir. 1983) (citing Rose v. Silver, 394 A.2d 1368, 1373-74 (D.C. 1978))).[19] The "government contacts" exception does not apply where the defendant is engaged in substantial activity beyond lobbying the federal government.

The Second Circuit has also held that participation in the United Nation's affairs by a "foreign organization" may not properly be considered as a basis of jurisdiction in New York. See Klinghoffer, 937 F.2d at 51-52. With respect to the PLO's New York office, the parties have produced little evidence, but no factual dispute appears to exist. The PLO operated and owned an office in New York City during the relevant period, in addition to the residence used by the Permanent Observer Mission of Palestine to the United Nations. See Dfs.' Opening Mem., Ex. 3, at 19-20. The PLO employed twenty employees at the New York office for all or a portion of the relevant period, and the PA employed one. Id., Ex. 3, at 6. The New York office

---

[19] See also Klinghoffer, 937 F.2d at 51 (noting that the government contacts exception covers non-resident's "getting information from or giving information to the government, or getting the government's permission to do something.") (quoting Investment Co. Inst. v. United States, 550 F. Supp. 1213, 1216-17 (D.D.C. 1982)).

had a checking account and at least two telephone lines. Id., Ex. 3, at 20, 22. Finally, Nasser Al-Kidwa, the ambassador during the relevant period, participated on behalf of the PLO in at least 73 media appearances and interviews between 2000 and 2003 on a mix of major national news networks and local stations. See Strachman Declaration ¶ 20 (listing events); id., Ex. 14 (transcripts).

Defendants assert that none of the contacts associated with the D.C. and New York offices can be considered for purposes of establishing personal jurisdiction pursuant to the aforementioned exceptions. Defendants do not, however, provide any evidence demonstrating that either office exclusively and solely dealt with the federal government or the UN. Nor have Defendants made an effort to demonstrate that their activities in Washington, D.C., and New York were commensurate with their special diplomatic need for being present in those cities. See, e.g., Fandel v. Arabian American Oil Co., 345 F.2d 87, 89 (D.C. Cir. 1965). With respect to the activities involving the New York office, Defendants are entitled to the Klinghoffer jurisdictional exception. Plaintiffs have failed to identify any contacts that raise a dispute over the exclusivity of the activities conducted from the New York office, and, in any event, the evidence indicates that the activities were primarily related to the PLO's UN affairs.

With respect to the activities involving the D.C. office, Defendants have failed to demonstrate by a preponderance of the evidence that any of the contacts should be excluded by either jurisdictional exception. The Klinghoffer jurisdictional exception is inapplicable because there is no evidence that the D.C.-based activities involved UN affairs,[20] and because the

---

[20] Defendants never assert that they were conducting UN affairs from the D.C. office. In fact, the evidence – namely, the deposition testimony of Said M. Hamad, Deputy Chief in the D.C. office – indicates that they had no involvement with UN activities.

Q: And the office in New York, are you involved with that office at all? Do you

13

exception does not provide for a blanket immunization of all contacts in the United States. Defendants have failed to demonstrate by a preponderance of the evidence that their activities from the Washington, D.C. office exclusively involved contacting some branch of the federal government. Outside of New York, Defendants are no different than any other political organization based in Washington, D.C.,[21] and yet the record contains overwhelming evidence that Defendants were primarily in Washington, D.C. pursuing their political interest, but were not solely conducting diplomatic activities with our government.

Nevertheless, even after excluding activities conducted in furtherance of the PLO's observer status and contacts with the federal government, the remaining contacts would still provide a sufficient basis to exercise general jurisdiction over the Defendants. See, e.g., Unger, 325 F. Supp. 2d at 53; see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione etc., 795 F. Supp. 112, 114 (S.D.N.Y. 1992). The PLO and the PA were continuously and systematically present in the United States by virtue of their extensive public relations activities. Whether characterized as diplomatic public-speaking or proselytizing, the forums and audiences clearly indicate that the vast majority of these appearances were not directly communicating to or

-------

communicate with them?
A  No.;
Q  Why is that?
A  Because they have their own business at U.N.
Q  And you don't coordinate any activities?
A  Well, there's no activities to coordinate. They have their own business. Their mission is the United States. We have nothing to do with them, they have nothing to do with us, except hello and all.

See Strachman Declaration, Ex. N, at 31.

[21] Palestine, as discussed in this Court's 9/30/2008 Memorandum Decision and Order, "is not recognized, under United States law, as a 'foreign state.'" Sokolow, 583 F. Supp. 2d at 458. "[D]efendants cannot derivatively secure sovereign immunity as agencies and/or instrumentalities of Palestine," and "the PA is [not] . . . entitled to immunity as a political subdivision of Israel." Id.

14

sponsored by the federal government or the United Nations General Assembly.  These appearances were separate from Defendants' diplomatic foreign affairs functions in the United States, such as the PLO's right to speak at the  United Nations General Assembly meetings, or the PLO or the PA's efforts to petition the United States government.  This alone is a sufficient basis to decline to ignore the entire physical presence, commercial transactions, and other activities of the D.C. office.  Thus, as found in Unger, "even if the court excludes from its consideration contacts by the Washington Office of the PLO with the federal government [or by the New York office with the UN], the other activities of that office are sufficient to allow this court to find minimum contacts."  325 F. Supp. 2d at 53; see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, 795 F. Supp. 112, 114 (S.D.N.Y. 1992).

### 3.    **Reasonableness**

The second part of the jurisdictional analysis asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable under the circumstances of the particular case."  Metro. Life, 84 F.3d at 568 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)).  Where a plaintiff makes the threshold showing of the minimum contacts required to meet the first test, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Id. (quoting Burger King, 471 U.S. at 477).  Courts are to consider five factors in evaluating reasonableness: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  Id.

15

at 568 (citing <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 113-14 (1987); <u>Burger King</u>, 471 U.S. at 476-47)).

Here, neither the PLO nor the PA has presented a compelling case that exercising jurisdiction over them in the present action will offend the Constitution or federal law. The reality is that ATA litigation often involves foreign individuals and entities, and thereby, a statutory cause of action for international terrorism exists. There is a strong inherent interest of the United States and Plaintiffs in litigating ATA claims in the United States. The Defendants have not demonstrated that this case would impose a more significant burden than can typically be expected, particularly in light of the fact that they have vigorously engaged in such litigation several times before. The Defendants have also failed to identify an alternative forum where Plaintiffs' claims could be brought, and where the foreign court could grant a substantially similar remedy.

## CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.


Dated: New York, New York
       March 30, 2011


                                        SO ORDERED:

                                        _____
                                        GEORGE B. DANIELS
                                        United States District Judge