# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.

Plaintiffs,

v.                                                          Civ. No. 04-00397-GBD

THE PALESTINE LIBERATION ORGANIZATION, et al.,

Defendants.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO TRANSFER TO THE EASTERN DISTRICT OF NEW YORK (BROOKLYN) AND IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF COLUMBIA OR TO DISMISS

### Introduction

Plaintiffs respectfully submit this memorandum of law in support of their Motion to Transfer to the Eastern District of New York (Brooklyn) and in opposition to Defendants' Motion Pursuant to 28 U.S.C. § 1406(a) to Transfer or Dismiss (dkt. # 93-94).

As shown below: (a) the parties agree that this case should be transferred to a different federal district; (b) the Court can and should transfer the case forthwith, without wasting its time and resources addressing Defendants' claims that venue is not proper in this District, which claims raise several issues of first impression the resolution of which will delay this action; and (c) all relevant factors strongly favor a transfer to the Eastern District of New York, as requested by Plaintiffs, and disfavor a transfer to the District of Columbia, as requested by Defendants.

Therefore, Plaintiffs' motion to transfer this case to the U.S. District Court for the Eastern District of New York (Brooklyn) should be granted and Defendants' motion to transfer this action to the U.S. District Court for the District of Columbia (and all the more so their half-hearted motion to dismiss for lack of personal jurisdiction) should be denied.

## RELEVANT BACKGROUND

This is a civil action pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, and pendent causes of action, brought by U.S. citizens, and the guardians, family members and the personal representatives of the estates of U.S. citizens, who were killed and injured in seven terrorist attacks carried out by the Defendants between January 8, 2001 and January 29, 2004.

Under ATA § 2334, venue in an ATA action is proper in "any district where any plaintiff resides or where any defendant resides or is served, or has an agent." 18 U.S.C. § 2334(a).

In light of § 2334(a) of the ATA, plaintiffs *could* have properly filed this action in the U.S. District Court for the Eastern District of New York, since at the time the complaint and amended complaint in this action were filed seven of the plaintiffs resided in the Eastern District of New York. *See* Declaration of Morris Waldman; Declaration of Eva Waldman; Declaration of Mark I. Sokolow; Declaration of Rena M. Sokolow; Declaration of Jamie A. Sokolow; Declaration of Lauren M. Sokolow and Declaration of Elana R. Sokolow.

In the event, however, this action was filed in this Court because the Defendants have an office and "an agent" (numerous agents in fact) in this District and because other ATA cases have been brought in this District against the instant Defendants (without any objection to venue being raised by the Defendants). *See e.g. Knox v. PLO, et al*., Civ. No. 03-4466 (S.D.N.Y.).

Indeed, significantly, though Defendants moved under Fed.R.Civ.P. 12(b) to dismiss the instant case for lack of subject-matter jurisdiction and lack of personal jurisdiction, Defendants did not challenge the propriety of venue in this federal District.

In September 2008 the Court denied Defendants' motion to dismiss for lack of subject-matter jurisdiction and on March 30, 2011 the Court denied Defendants' motion to dismiss for

lack of personal jurisdiction. *Sokolow v. PLO*, 583 F.Supp.2d 451 (S.D.N.Y. 2008); *Sokolow v. PLO*, 2011 WL 1345086 (S.D.N.Y. 2011).

Now, with Defendants' dispositive motions denied, this action is ready to proceed immediately to discovery and trial. Defendants, however, have other plans. Consistent with their conduct in other ATA cases,[1] Defendants have launched yet another attempt to prevent this case from moving forward to a resolution on the merits: on April 20, 2011, Defendants filed a Motion Pursuant to 28 U.S.C. § 1406(a) to Transfer or Dismiss, which seeks to have this case dismissed or transferred to the U.S. District Court for the District of Columbia. Dkt. # 93-94.

Defendants' latest motion is based on the following four-part argument: (a) that the Court's March 30, 2011 decision held (in reliance on *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2nd Cir. 1991)) that Defendants' contacts with this District should be excluded from the personal jurisdiction analysis because those contacts related to the PLO's UN affairs; (b) that the Court's exclusion of Defendants' contacts in this District from the *personal jurisdiction* analysis also mandates that those contacts be disregarded for purposes of *venue*; (c) that the recent decision in *Wultz v. Islamic Republic of Iran*, ---F.Supp.2d ----, 2011 WL 263676 (D.D.C. 2011) held that the ATA, like the Securities Exchange Act and the Clayton Act, does not allow exercise of personal jurisdiction based on nationwide contacts unless venue is proper; and (d) that therefore, because venue in this Court is improper, under *Wultz* this Court lacks personal jurisdiction over Defendants despite their sufficient nationwide contacts, and so must either transfer the case to a federal district where venue is proper or dismiss it. Dkt. # 94, *passim*.

---

[1] *See e.g. Biton v. PA*, 510 F.Supp.2d 144, 146 (D.D.C. 2007) (finding that papers filed by the instant Defendants were nothing but "an effort to derail conclusion of this hoary litigation.")

As shown in detail in Part IV *infra*, Defendants' argument fails for numerous reasons. ***First***, Defendants failed to challenge venue in their Rule 12(b) motions. Courts have held that a failure to challenge venue constitutes a waiver, and permits a court to look to a defendant's nationwide contacts as a basis for personal jurisdiction without regard to venue, even when the action is brought under a statute that conditions exercise of nationwide personal jurisdiction on proper venue. *See e.g. Martin & Associates, P.L.L.C. v. Malouf*, 2006 WL 279105 at *2 n.3 (D.D.C. 2006) ("[U]nder Section 27 of the SEA, the Court must satisfy itself that venue is proper before concluding it has personal jurisdiction over the defendant. Because Defendant here does not argue that venue is improper, the Court need not address this issue."); *In re Baan Co. Securities Litigation*, 245 F.Supp.2d 117, 126 n.10 (D.D.C. 2003) ("[T]he Securities Act's broad service-of-process provision applies only when Section 27's venue provision is also satisfied … Here, defendants have not argued that venue in this Court is inappropriate; for that reason, and because [defendants] have been served in accordance with Section 27, the statute undoubtedly confers personal jurisdiction over these defendants."). Thus, even assuming that *Wultz* were good law, Defendants' failure to challenge venue timely precludes them from now relying on *Wultz*. ***Second***, as shown in Part IV, *Wultz* should not be followed. ***Third***, there is no basis for the claim that *Klinghoffer*'s personal jurisdiction exception applies to *venue*, especially where, as here, a special federal venue statute is involved. ***Fourth***, Defendants do in fact have agents in this District engaged in non-UN activities and so venue is proper in this Court under ATA § 2334(a).

Thus, Defendants' claims are highly questionable, at best. However, it would obviously take considerable time for the Court to resolve these claims, most of which involve questions of first impression. Plaintiffs are understandably anxious to proceed to discovery, and to avoid the delay that would be created if the Court were to consider and dispose of these novel issues.

Furthermore, even if this Court were to rule in Plaintiffs' favor and retain the case, Plaintiffs would face the danger that, after judgment, Defendants would reassert their arguments on appeal, and that the Second Circuit would reverse and find that this Court lacked personal jurisdiction – which would undo years of litigation. Plaintiffs do not want to take that risk.

Fortunately, the Plaintiffs <u>do not</u> need to incur such a delay or take such a risk, and this Court <u>does not</u> need to waste its time and resources resolving these issues. That is because where, as here, retaining a case would require the court to resolve disputed issues of venue or jurisdiction, or otherwise delay the case, the proper course is to transfer the case to a district where venue is not in dispute. *See e.g. Troyer v. Karcagi*, 488 F.Supp. 1200, 1206 (S.D.N.Y. 1980) (When retaining the case in the Southern District of New York would require the court to "<u>consider the thorny question, apparently an issue of first impression</u>, as to whether stock transactions on national stock exchanges in New York provide a sufficient basis for venue in this district" the case should be transferred to Ohio, where venue was unquestionably proper) (emphasis added); *Matra Et Manurhin v. International Armament Co.*, 628 F.Supp. 1532, 1536 (S.D.N.Y. 1986) ("[T]he interest of justice in seeing that this action is resolved promptly suggests that defendants' motion for transfer should be granted."); *SoccerSpecific.com v. World Class Coaching, Inc.*, 2008 WL 4960232 at *5 (D.Or. 2008) ("Courts have held that a change of venue may conserve judicial resources, and serve the interests of the parties as well, if a case is transferred from a forum where there is a <u>difficult question of personal jurisdiction</u> to a district in which there is not such uncertainty.") (citing numerous cases) (emphasis added).

Therefore, and for the additional reasons detailed below, this case should be transferred forthwith to the Eastern District of New York (Brooklyn), where venue is unquestionably proper.

## ARGUMENT

**I.    The Case Should Be Transferred, Not Dismissed**

A federal court lacking personal jurisdiction is empowered by 28 U.S.C. § 1406(a) to transfer a case to a federal district which has such jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-67 (1962); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n. 9 (2nd Cir. 2000) (Supreme Court has "made clear that a district court lacking both personal jurisdiction and proper venue could transfer under section 1406(a) to a district where both defects were avoided"). Defendants concede this point. Dkt # 94 at 6 (citing *Goldlawr*).

While Defendants seek either transfer or dismissal, they present no arguments whatsoever as to why the case should be dismissed rather than transferred. And for good reason: the ATA has a four-year statute of limitations (see 18 U.S.C. § 2335(a)) which has long expired. Thus, if this case were dismissed it would be extinguished. It is well established that where, as here, dismissal would create a limitations bar, the court should transfer it, not dismiss it. *See e.g. Caremark Theraputic Services v. Leavitt*, 405 F. Supp. 2d 454 (S.D.N.Y. 2005) (venue transferred in interests of justice where claim would be time barred if dismissed); *Domond v. Great American Recreation Inc.*, 116 F. Supp. 2d 368 (E.D.N.Y. 2000) (court transferred venue when it lacked personal jurisdiction and found that interests of justice required transfer to avoid statute of limitations problem); *Off-The-Wall Products v. Hyman Products, Inc.*, 684 F. Supp 36 (S.D.N.Y. 1988) (venue transferred in the interests of justice to enable litigation to continue).

Indeed, the *Wultz* court itself transferred, rather than dismissed, the action, precisely because, *inter alia*, the ATA's limitation period had expired. *Wultz*, 2011 WL 263676 at *11.

Moreover, it would be particularly unjust to dismiss, rather than transfer, this action based on a challenge to venue raised by Defendants for the first time over seven years after the filing of this case and only after their Rule 12(b) motions were considered and denied.

Finally, the Court could not dismiss this case without first determining that Defendants' belated challenges to venue and jurisdiction are correct (which Plaintiffs strongly dispute). As shown herein, such a determination would require the Court to devote considerable time and effort to resolving multiple issues of first impression. Such a course would be a huge and unnecessary waste of judicial resources, since the case can simply be transferred.

Therefore, under no circumstances should the case be dismissed.

## II.    The Case Can and Should Be Transferred Without Addressing Defendants' Claims

The Court can and should grant this motion without ruling on Defendants' venue and personal jurisdiction arguments – a ruling which would both waste the time and resources of the Court and unnecessarily delay the denouement of this case – for three interrelated reasons:

*First*, as discussed above, a court is empowered to transfer a case under § 1406(a) even where it lacks personal jurisdiction. Thus, even assuming purely *arguendo* that defendants are correct in asserting that venue is not proper in this district and that this Court therefore lacks personal jurisdiction (which plaintiffs dispute), the Court has full authority under § 1406(a) to transfer this case to a federal district in which venue and personal jurisdiction are not in dispute.

*Second*, the factors to be considered by a court on a motion to transfer venue are identical whether the transfer is made under § 1406(a) or under 28 U.S.C. § 1404(a) (which permits a court which is a proper venue and has personal jurisdiction to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice.") *See e.g. S & L Birchwood, LLC v. LFC Capital, Inc.*, --- F.Supp.2d ----, 2010 WL 4052187 (E.D.N.Y. Oct. 13, 2010) ("<u>Whether</u>

considered under Section 1404 or 1406 … the court considers the same factors when determining whether to exercise the discretion to transfer.") (emphasis added) (citing *Bank of America, N.A. v. Hensley Properties, LP*, 495 F.Supp.2d 435, 439-40 (S.D.N.Y.2007) and *Sheet Metal Workers' Nat. Pension Fund v. Gallagher*, 669 F.Supp. 88, 91-92 (S.D.N.Y.1987)).

**Third**, a district court need not specify whether a transfer of venue is being ordered under § 1404(a) or under § 1406(a). *See e.g. Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2nd Cir. 1978) (district court properly "declined to elect between reliance on 28 U.S.C. § 1404(a) or on § 1406(a)."); *Unlimited Care, Inc. v. Visiting Nurse Ass'n of Eastern Massachusetts, Inc.*, 42 F.Supp.2d 327, 333 (S.D.N.Y. 1999) ("[W]hen transferring a case in the interest of justice based on the lack of personal jurisdiction, a court need not elect between reliance on 28 U.S.C. § 1404(a) and § 1406(a).") (citation omitted); *Fresca v. Arnold*, 595 F.Supp. 1104, 1105 (E.D.N.Y. 1984) ("It is of no consequence … whether plaintiff's reliance on § 1406(a), as opposed to … § 1404(a), is proper [as a] district court need not elect between the two sections.").

Thus, it simply does not matter whether this Court is a proper venue and has personal jurisdiction over defendants (in which case the transfer is would be authorized under § 1404(a)) or whether proper venue and personal jurisdiction are lacking (in which case the transfer would be authorized under § 1406(a)): the bottom line is that both Defendants and Plaintiffs seek a transfer of venue, the only dispute is whether the case should be transferred to Brooklyn or Washington, D.C., and the factors to be considered by the Court in choosing between these two venues are identical whether the transfer is authorized under § 1404(a) or § 1406(a).

Accordingly, the Court can and should proceed directly to consideration of the relevant factors. As shown below, those factors overwhelmingly favor a transfer to the E.D.N.Y..

III.    **The Case Should Be Transferred to the Eastern District of New York (Brooklyn)**

At the time the complaint and amended complaint in this action were filed seven of the plaintiffs resided in Brooklyn and Long Island – i.e. in the Eastern District of New York. *See* Declaration of Morris Waldman; Declaration of Eva Waldman; Declaration of Mark I. Sokolow; Declaration of Rena M. Sokolow; Declaration of Jamie A. Sokolow; Declaration of Lauren M. Sokolow and Declaration of Elana R. Sokolow.[2]

Thus, the E.D.N.Y. (Brooklyn) is clearly a proper venue for this case under ATA § 2334(a) (venue in an ATA action is proper in "any district where any plaintiff resides").

When considering a motion for transfer:

> [A] court must balance private interest factors, including the convenience of the litigants and all other practical problems that make trial of a case easy, expeditious and inexpensive, and public interest factors, which include the administrative and jurisdictional interests of the districts involved. In analyzing the balance of conveniences, a court should consider: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. As to the public interest factors, a court should consider the transferee court's familiarity with the governing law, as well as trial efficiency and the interests of justice.

*International Securities Exchange, LLC v. Chicago Bd. Options Exchange Inc.*, 2007 WL 1541087 at *2 (S.D.N.Y. 2007) (citations, quotation marks and brackets omitted).

---

[2] When the complaint and amended complaint were filed about half of the plaintiffs resided in Israel, and the others in Massachusetts, North Carolina, Pennsylvania, Illinois, Virginia and France. The federal district with the largest number of plaintiffs was and is, by far, the Eastern District of New York.

All the relevant factors favor transfer to the Eastern District of New York (Brooklyn) and disfavor transfer to the District of Columbia:

**a. Plaintiffs' Choice of Forum**

A "plaintiff's choice of forum should rarely be disturbed." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2nd Cir. 2002). This is true "[e]ven when the plaintiff is not a resident of the chosen forum." *Motown Record Corp. v. Mary Jane Girls, Inc.*, 660 F. Supp. 174, 175 (S.D.N.Y. 1987). Thus, "although plaintiff's choice is entitled to even greater deference when he chooses his 'home turf' as venue for an action, the converse does not follow." *Geiger v. E.I. DuPont Nemours & Co., Inc.*, 1997 WL 83291 at \*5 (S.D.N.Y. 1997).

Plaintiffs filed this action where the greatest number by far of U.S.-based plaintiffs resided – i.e. in New York. Though the New York plaintiffs all lived in the Eastern District of New York when this action was filed, as a practical matter this Court is no less plaintiffs' "home turf" than the Eastern District. "[I]t is difficult to see why [plaintiff's choice of forum] should not also be given weight when the plaintiff <u>lives in a neighboring state</u>." *Burroughs Wellcome v. Giant Food*, 392 F.Supp. 761, 764 at n.4 (D.C.Del. 1975) (emphasis added). All the more so here, where the plaintiffs filed suit in a neighboring district in <u>the same state</u>.

Therefore, the Court should not disturb plaintiffs' choice of a New York forum, and the case should be transferred just across the bridge to Brooklyn, not to the District of Columbia.

**b. The Convenience of the Parties**

As shown below, the balance of convenience between the parties tips sharply – and entirely – in favor of transfer to the Eastern District.

<u>Plaintiffs' Convenience</u>

Currently, six plaintiffs reside in Brooklyn, Queens and Long Island, and one resides in Manhattan. Two other plaintiffs live in northern New Jersey, less than an hour from the Brooklyn courthouse. *See* Declaration of Morris Waldman; Declaration of Eva Waldman; Declaration of Mark I. Sokolow; Declaration of Rena M. Sokolow; Declaration of Jamie A. Sokolow; Declaration of Lauren M. Sokolow; Declaration of Elana R. Sokolow; Declaration of Shmuel Waldman and Declaration of Henna Novack Waldman.

Thus, nine of the plaintiffs live in New York or the New York region. As explained in their declarations, all of these plaintiffs intend to attend and testify at trial in this case and transferring the case to the District of Columbia would severely inconvenience them because they are working, studying, receiving on-going medical treatment, and caring for their own young children and elderly parents, here in New York or the New York area. *See id*., *passim*.

Additionally, plaintiffs Robert L. Coulter, Sr., Dianne Coulter Miller and Robert L. Coulter, Jr., who will also attend and testify at the trial, live and work in southern Massachusetts, a three hour drive from New York, and would therefore be seriously inconvenienced if the case were transferred to the District of Columbia.

While at first glance it might appear that the convenience of the 19 plaintiffs currently residing in Israel will not be affected much by the transfer of venue that is not the case. All of these plaintiffs, who will attend and testify at trial, are observant Jews. Obtaining kosher food and appropriate Sabbath accommodations for them during the course of the trial would be very easy in New York and very difficult in the District of Columbia.

The remaining 13 plaintiffs live in Illinois, Pennsylvania, North Carolina, Virginia and France. With the exception of the single plaintiff in Virginia, the convenience (and inconvenience) to these plaintiffs will be the same in New York or the District of Columbia.

Thus, the convenience of 31 plaintiffs strongly favors a transfer to the Eastern District, 12 plaintiffs are neutral and only one plaintiff would benefit from a transfer to D.C..

In sum, the convenience of the plaintiffs overwhelmingly favors a transfer to the Eastern District, and disfavors a transfer to the District of Columbia.

The Court should attach especially great weight to plaintiffs' convenience in this case, in light of the fact that the ATA is a remedial statute (*see Rothstein v. UBS AG*, ---F.Supp.2d ----, 2011 WL 70354 at *4 (S.D.N.Y. 2011) ("Section 2333 is a remedial civil statute.")) that contains special venue provisions, in which Congress allowed plaintiffs to bring suit in *any* federal district in which *any* plaintiff resides, with no regard whatsoever for the defendant's location or convenience. *See* ATA § 2334(a).

The federal courts have recognized that special venue statutes of this type "are designed primarily for the convenience of the plaintiff." *Cascade Steel Rolling Mills, Inc. v. C. Itoh and Co. (America) Inc.*, 499 F.Supp. 829, 833 (D.C.Or. 1980). *See also e.g. SEC v. Rose Fund, LLC*, 2004 WL 2445242 (N.D.Cal. 2004) (the general rule favoring the plaintiff's choice of forum "applies even more so here where Congress has enacted a special venue provision."); *Lemberger v. Westinghouse Elec. Corp.*, 1976 WL 834 (E.D.N.Y. 1976)("The weight attached to a plaintiff's choice of forum is particularly great where, as here, the applicable venue provision is designed to serve a national policy underlying the Securities Exchange Act: the policy of allowing a plaintiff the widest possible number of choices of a district in which to sue. If transfers were granted in securities cases with too much abandon, the effect would be to

undermine Congressional efforts to enforce securities laws by minimizing burdens on plaintiffs in civil suits."); *see also Ellis v. Costco Wholesale Corp.*, 372 F.Supp.2d 530, 537-38 (N.D.Cal. 2005) (finding that the plaintiff's choice of forum was entitled to greater deference in light of Title VII's special venue provision); *Lee v. Ply*Gem Industries, Inc.*, 593 F.2d 1266, 1272 (D.C. Cir. 1979) ("General venue statutes are drafted to specify trial locations convenient for parties and witnesses. Section 12 [of the Clayton Act], by contrast, is a special venue provision tailored for corporate antitrust defendants, whose convenience Congress was not particularly solicitous of.") (emphasis added) (footnote omitted).

Defendants' Convenience

Defendants are based in the West Bank and their convenience would not be affected in any manner by litigating this case in the Eastern District versus the District of Columbia.

While Defendants have an office in the District of Columbia, that office is not involved with Defendants' defense of the various actions pending against them in the United States. Defendants' U.S. litigation counsel (i.e. their counsel in this and all the other actions pending against them) were retained directly by Palestinian Prime Minister Dr. Salam Fayyad. *See Mohamed v. Rajoub*, 2008 WL 194746 at *2 (S.D.N.Y. 2008) (Defendants' counsel "submitted a letter from Mr. Mahmoud Abbas, President of the PA and Chairman of the PLO, stating unequivocally that he authorized Dr. Fayyad to retain counsel to represent the PA and the PLO in U.S. litigation … [Counsel] also submitted a declaration of Dr. Fayyad, stating that … [he] 'decided to retain new counsel for the PA and the PLO to handle all of the United States lawsuits [and] to provide them with clear instructions about their responsibilities and duties.'").

Moreover, as explained by Prime Minister Fayyad in a sworn declaration submitted in the *Knox* matter, Defendants' counsel in the United States receive their instructions from, and report

to, Dr. Fayyad himself. Those communications are carried out via Walid Najjab, a business consultant in Ramallah in the West Bank (where Defendants' headquarters are located) who serves as the direct liaison between Dr. Fayyad and Defendants' counsel:

> Mr. Najjab has been retained … to facilitate communication between myself and the U.S. attorneys retained to defend the PNA and PLO in litigation brought against them in the United States. <u>This liaison function is a critical means by which I maintain communications with the U.S. litigation counsel</u>. The full-time demands of my office have necessitated establishing this channel, <u>locally, to receive communications from counsel and to deliver instructions to counsel</u>. In that capacity, Mr. Najjab <u>reports directly, and only, to me</u>.

Second Supplemental Declaration of Prime Minister Salam Fayyad, Exhibit A, at ¶ 7 (emphasis added) *See also id*. at ¶ 6 (explaining that Najjab is based in Ramallah).

Thus, Defendants have appointed a liaison "locally" – i.e. in the West Bank – to "receive communications from [U.S.] counsel" to Prime Minister Fayyad and "to deliver instructions to [U.S.] counsel" from Prime Minister Fayyad.

Obviously, then, since their U.S. counsel communicate directly with Defendants' leadership in the West Bank, litigating this action in the Eastern District is no less (and for that matter, no more) convenient for Defendants than litigating it in the District of Columbia.

At bottom, only Defendants' <u>counsel</u>, who are based in the District of Columbia, would benefit from a transfer to the District of Columbia. However, it is basic that "inconvenience to counsel is not an appropriate factor to consider on a motion to transfer venue." *Matra Et Manurhin v. International Armament Co.*, 628 F.Supp. 1532, 1535 n. 5 (S.D.N.Y. 1986).

Therefore, the balance of convenience between the parties tips strongly and exclusively in favor of a transfer to the Eastern District of New York.

### c. The Convenience of Witnesses

This case involves terrorist attacks in Jerusalem, and at this time plaintiffs are unaware of any U.S.-based witnesses in this case other than (1) the plaintiffs themselves and (2) their treating physicians and mental health care providers.

As explained in the previous section regarding convenience to the parties, the Eastern District is far more convenient to the plaintiff-witnesses than the District of Columbia.

Likewise, some of the plaintiffs' treating physicians and mental health care providers are located in the Eastern District or elsewhere in New York, and none of them are located in the District of Columbia.

Therefore, the convenience of the witnesses strongly favors the Eastern District.

### d. The Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*, 2006 WL 846716, at *5 (S.D.N.Y. 2006) (*quoting Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y. 1988)) (emphasis added). *See also National Union Fire Ins. Co. v. Frasch*, 751 F.Supp. 1075, 1080 (S.D.N.Y. 1990) ("In the interests of justice the financial status of the parties must also be considered") (citation, brackets and ellipsis omitted).

The plaintiffs are private individuals whose family members – and in some cases their main or sole breadwinners – were murdered in terrorist attacks, or who themselves were injured in such attacks and who, in many cases, suffered a reduced ability to generate income as a result.

By contrast, Defendant PA has a multi-billion dollar budget, and the federal courts have found Defendants capable of diverting hundreds of millions of dollars for litigation purposes. *See e.g. Ungar v. PA*, 715 F.Supp.2d 253 (D.R.I. 2010) (ordering the instant Defendants to make

installment payments of $15 million a month up to a total of $116 million after finding them able to do so); *Knox v. PLO*, 628 F.Supp.2d 507 (S.D.N.Y. 2009) (ordering the instant Defendants to deposit security in the amount of $120 million after finding them able to so).

Thus, since litigating this case in the Eastern District will be far less costly for Plaintiffs than litigating it in the District of Columbia, in light of the travel and lodging expenses involved, as discussed in Plaintiffs' attached declarations, the transfer should be to the Eastern District.

### e. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof; the Locus of Operative Facts; and the Availability of Process to Compel the Attendance of Unwilling Witnesses

The locus of operative facts in this case, as well as the location of most relevant documents and other sources of proof, are in Israel, the West Bank and Gaza. Plaintiffs are unaware of, and do not believe there are any, unwilling witnesses in the United States.

However, some highly relevant documents – i.e. some of plaintiffs' medical and mental health records – are located in the Eastern District or elsewhere in New York. By contrast, none of plaintiffs' medical and mental health records are in the District of Columbia.

Accordingly, these factors, too, favor the Eastern District.

### f. The Transferee Court's Familiarity with the Governing Law, Trial Efficiency and the Interests of Justice

The instant plaintiffs are also plaintiffs in *Coulter et al v. Arab Bank*, Civ. No. 05-00365-NG-VVP (E.D.N.Y.), *Lev et al v. Arab Bank*, Civ. No. 08-03251-NG -VVP (E.D.N.Y.), *Weiss et al v. National Westminster Bank*, Civ. No. 05-04622-DLI-MDG (E.D.N.Y.) and *Strauss et al v. Credit Lyonnais, S.A.*, Civ. No. 06-00702-DLI-MDG (E.D.N.Y.), all of which are pending in the Eastern District (Brooklyn) ("Related Cases").

The Related Cases are all actions under the ATA arising from the same terrorist attacks that are at issue in this case, brought against other defendants.

While the liability of the defendants in the Related Cases is of course an issue separate and distinct from the liability of the instant Defendants, the Related Cases and the instant case overlap in respect to at least two important questions: (1) regarding proof of the identity of the individual terrorists (i.e. the actual triggermen and bombers) who carried out the attacks; and (2) regarding proof of Plaintiffs' damages.

Since the Eastern District (Brooklyn) is considering these questions, which are common to the instant case, judicial efficiency strongly favors a transfer to that court. *See e.g. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Frasch*, 751 F.Supp. 1075, 1081 (S.D.N.Y. 1990) ("[T]ransferring this action to Colorado, where the Fraschs have commenced a lawsuit arising out of the same facts involved here, may result in coordination of pretrial discovery, be more convenient to the witnesses, the parties, and their attorneys, and save judicial resources."); *Sargent v. Budget Rent-A-Car Corp.*, 1996 WL 413725 at *4 (S.D.N.Y. 1996) (Transferring case to the District of New Jersey because that court "is already familiar with the underlying events of this case, given that an action arising from the same set of facts was brought there.").

Notably, the judges of the Eastern District (Brooklyn) have issued numerous decisions, in the context of the Related Cases, analyzing the scope and application of the ATA, and that court is thus by far the most familiar with the law governing ATA actions.

Finally, if this case is transferred to the District of Columbia, the Defendants will likely seek reconsideration de novo of this Court's decisions denying their motions to dismiss, under the law of the D.C. Circuit. That is exactly what occurred in *Wultz*:

After the *Wultz* court transferred the case to this Court, the defendant in that action, the Bank of China, moved Judge Scheindlin for de novo review under the law of the Second Circuit of the decision of the D.C. federal court denying its motion to dismiss. *See* Exhibit B.

17

It is quite likely that the instant Defendants, who have gained a well-deserved reputation for dilatory conduct in the courts of the United States,[3] intend to follow the Bank of China's playbook and to launch a similar attempt to undo the last seven years of motion practice if this case is transferred to the District of Columbia.

While Plaintiffs believe that any such motion would fail (since there are no relevant differences between the law of this circuit and the law of the D.C. Circuit in respect to the questions raised in Defendants' earlier motions) it would be very unfair, and very much contrary to the interests of justice, to put Plaintiffs in the position of having to defend against such motions, with all the additional delay and expense that they would entail.

For this reason, too, the case should be transferred to the Eastern District of New York.

*** 

In sum, all relevant factors strongly favor a transfer to the Eastern District (Brooklyn) and disfavor a transfer to the District of Columbia.

## IV.    Defendants' Venue and Personal Jurisdiction Arguments Are Meritless

As discussed *supra*, this Court can and should transfer this case forthwith (specifically, to the Eastern District) without wasting any time and resources considering and disposing of Defendants' newly-minted lack of venue and personal jurisdiction arguments.

However, solely for the record, and to avoid any concession thereof, Plaintiffs will now address and refute Defendants' arguments. Those arguments fail for the following reasons:

***First***, Defendants' challenge to venue was not raised in their Rule 12(b) motions and has therefore been waived. A failure to challenge venue constitutes a waiver, and permits a court to

---

[3] *See e.g. Biton v. PA*, 510 F.Supp.2d 144, 146 (D.D.C. 2007) (finding that Defendants had made filings solely in "an effort to derail conclusion of this hoary litigation.").

look to a defendant's nationwide contacts as a basis for personal jurisdiction without regard to venue, <u>even when the action is brought under a statute that conditions exercise of nationwide personal jurisdiction on proper venue</u>. *See e.g. Martin & Associates, P.L.L.C. v. Malouf*, 2006 WL 279105 at *2 n.3  (D.D.C. 2006) ("[U]nder Section 27 of the SEA, the Court must satisfy itself that venue is proper before concluding it has personal jurisdiction over the defendant. Because Defendant here does not argue that venue is improper, the Court need not address this issue."); *In re Baan Co. Securities Litigation*, 245 F.Supp.2d 117, 126 n.10 (D.D.C. 2003) ("[T]he Securities Act's broad service-of-process provision applies only when Section 27's venue provision is also satisfied … Here, defendants have not argued that venue in this Court is inappropriate; for that reason, and because [defendants] have been served in accordance with Section 27, the statute undoubtedly confers personal jurisdiction over these defendants.").

Thus, as a threshold matter, even if *Wultz* were good law, Defendants' failure to challenge venue timely precludes them from now relying on *Wultz*.

***Second***, Defendants' claim that the *Klinghoffer* personal jurisdiction exception for UN activities applies to venue because the government-contacts exception applies to venue is conjured out of thin air. While the Second Circuit *roughly* analogized the exception it was creating for UN activities to the government-contacts exception, it also took care to note that the latter doctrine is based on constitutional concerns which are absent in the UN context. *Id*. at 51.

The *Klinghoffer* court did not even hint that the exception it was creating applied to venue. Moreover, where, as here, a federal statute (ATA § 2334(a)) expressly provides that venue in ATA actions is proper in any federal district in which any defendant has an agent, it is not within the power of the courts to negate that statute by judicial fiat.

**Third**, as a matter of fact Defendants did have agents in this District engaged in non-UN activities at the relevant time. In its decision denying Defendants' motion to dismiss for lack of personal jurisdiction, this Court found only that "the evidence indicates that [Defendants' New York] activities were <u>primarily</u> related to the PLO's UN affairs." *Sokolow v. Palestine Liberation Organization*, 2011 WL 1345086 at *5 (S.D.N.Y. 2011).

Thus, <u>some</u> of the activities of Defendants' agents in New York were not related to the UN. *See* dkt. # 83 at 16 ("A search of Nexis shows that during the relevant period, [New York PLO officer] Al-Kidwa participated in <u>over 80 media appearances and interviews</u> none of which were related to his UN activities. *See* Strachman Decl. at ¶¶ 20-21 and internal Exhibit 14.").

Moreover, as the Court noted, the PA maintained an employee in the PLO's New York office at that time. *Sokolow*, 2011 WL 1345086 at *5. But the PA (in contrast to the PLO) has no status whatsoever at the UN, and therefore whatever that PA employee's activities were, they had nothing to do with any official UN business. Accordingly, the PA had a non-UN affiliated agent in this District at the time, and venue is therefore clearly proper under § 2334(a).

**Fourth**, the decision in *Wultz* should not be followed. *Wultz* reached its result by analogizing the language of § 2334(a) with the venue provisions of the Clayton Act and the Securities Exchange Act ("SEA"). But the ATA's personal jurisdiction provisions differ from of the Clayton Act and SEA in one dispositive and critical respect: both § 12 of the Clayton Act and § 27 of the SEA limit venue to districts in which <u>the defendant is present or does business</u>. By contrast, § 2334(a) does not require that a civil action under § 2333 be brought in a federal district in which the defendant has contacts, and permits such actions to be brought in any district where <u>any plaintiff</u> resides – <u>irrespective</u> of the defendant's contacts with that district.

In other words, unlike the venue provisions of the Clayton Act and SEA, in enacting the venue provisions of § 2334(a) Congress was utterly unconcerned with whether the defendant has jurisdictional contacts with the forum in which the action is brought.

Clearly, then, the venue provisions contained in the first sentence of ATA § 2334(a) cannot be analogized to the venue provisions of the Clayton Act and SEA. Unlike the venue provisions of the Clayton Act and SEA, the venue provisions of § 2334(a) have nothing to do with personal jurisdiction at all, and are therefore unrelated to the nationwide service of process provisions contained in the second sentence of § 2334(a).

Accordingly, since there is no substantive connection between the venue and service provisions of § 2334(a) and the latter are not conditioned on the former, it is clear that the phrase "such a civil action" in the second sentence of § 2334(a) necessarily refers back to the phrase "Any civil action under section 2333" appearing in the first sentence of § 2334(a).[4]

## CONCLUSION

**WHEREFORE**, the Court should grant Plaintiffs' motion and deny Defendants' motion.

---

[4] Notably, in the Clayton Act, the venue and service provisions are contained in a single sentence, whereas in 2334(a) the venue and service provisions are in separate sentences.

Plaintiffs, by their Attorney,
/s/ Robert J. Tolchin
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com

## CERTIFICATION

I hereby certify that on May 11, 2011, a true copy of this Memorandum was sent via ECF

to the following counsel:

Richard A. Hibey
Mark J. Rochon
MILLER & CHEVALIER CHARTERED
655 15th Street, NW
Washington, DC 20005


/s Robert J. Tolchin