IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESLYE KNOX, et al., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>THE PALESTINE LIBERATION )<br>ORGANIZATION, THE PALESTINIAN )<br>AUTHORITY, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 03 CV 4466 (VM) |

## SECOND SUPPLEMENTAL DECLARATION OF
## PRIME MINISTER SALAM FAYYAD

Pursuant to 28 U.S.C. § 1746, I, Dr. Salam Fayyad, declare under penalty of perjury as follows:

1. I am over eighteen years old, and I am competent to make this declaration. Unless otherwise stated herein, the facts set forth below are based on my personal knowledge.

2. I am the Prime Minister and Finance Minister of the Palestinian National Authority ("PNA"). I also serve as the director of the Palestine Liberation Organization's ("PLO") Economic Affairs Department.

3. I submit this declaration in further supplementation to my declaration dated May 8, 2008, and my supplemental declaration dated June 12, 2008, which I understand were previously submitted in support of the Motion to Reduce Amount of Bond filed by Defendants in the *Knox v. PLO* matter. I also am submitting this declaration in response to a request by the Court during a telephone hearing on July 17, 2008, and will, in compliance with the Court's

order of said date, submit another declaration addressing remaining matters on or before August 29, 2008.

4.   I rely on, but will not repeat in this second supplemental declaration, the facts in my May 8, 2008, declaration and my June 12, 2008, supplemental declaration indicating the basis for my knowledge of the information set forth below.

5.   It is my understanding that the Court requested on July 17, 2008, that I submit a declaration describing the following: (1) Walid Najjab's background, (2) whether he has "any official position with," or current relationship to, the PNA (3) whether he can "act on behalf of the [PNA] with regard to any financial matters," and (4) the nature of his relationship, if any, to "related entities" of the PNA. I will address each of these questions in separate paragraphs below. Although the Court's questions focus on Mr. Najjab's relationship to the PNA, I also will address whether Mr. Najjab has any relationship to the PLO.

6.   *Who is Mr. Najjab?* I have known Walid Najjab since 2001. He was educated and trained as a civil engineer and he began his professional career in various construction and project management positions in the Middle East. He returned to Ramallah in 1994. In 1995, Mr. Najjab formed a business consulting firm known as Management Consulting Services ("MCS"), which has its offices in Ramallah, Occupied Palestinian Territory.

7.   *Does Mr. Najjab have any official position with, or current relationship to, the Palestinian National Authority?*

   a.   To my knowledge, Mr. Najjab is not currently, and has never been, an employee of either the PNA or the PLO.

   b.   Although he has no official position with the PNA, since May 2007, Mr. Najjab has been retained, through MCS, to facilitate communication between myself and the

2

U.S. attorneys retained to defend the PNA and PLO in litigation brought against them in the United States. This liaison function is a critical means by which I maintain communications with the U.S. litigation counsel. The full-time demands of my office have necessitated establishing this channel, locally, to receive communications from counsel and to deliver instructions to counsel. In that capacity, Mr. Najjab reports directly, and only, to me. This is Mr. Najjab's only current role in regard to the PNA or the PLO.

8.  *Does Mr. Najjab act on behalf of the PNA with regard to any financial matters?* Mr. Najjab does not act on behalf of the PNA or the PLO with regard to any financial matters. Further, Mr. Najjab does not manage any assets of the PNA or the PLO, nor does he have any authority to purchase, sell, or transfer any assets of the PNA or the PLO.

9.  *What is Mr. Najjab's relationship to "related entities" of the PNA?*

    a.  The Court has asked about Mr. Najjab's relationship to "related entities" of the PNA. I interpret the question posed by the Court to ask about Mr. Najjab's relationship with financial/investment entities the Plaintiffs have alleged are closely related to the PNA or PLO, specifically the following: the Palestinian Commercial Services Company, the Palestine Investment Fund, the Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip, Samed, and the Palestine National Fund. I will address each of these in turn below.

    b.  **Palestinian Commercial Services Company ("PCSC")**: From approximately 1995-2004, Mr. Najjab, through MCS, provided various business and other consulting services to the PCSC, including with respect to PCSC's investments in, among other companies, the Palestine Electricity Company ("PEC"), the Palestine Telecommunications Company ("Paltel"), the Palestinian Cellular Company ("Palcell") and the Casinos Austria Palestine ("CAP"). During the time when Mr. Najjab and MCS were providing consulting

3

services to PCSC, the chairman and chief executive officer of PCSC was Mohamed Rachid, who was also an economic advisor to President Yasser Arafat at the time. Mr. Najjab and MCS continued in their contractual relationship with PCSC until Mr. Najjab became an officer of the Palestine Investment Fund ("PIF") in July 2004. Mr. Najjab served on PCSC's Board of Directors as a non-executive director when the PCSC board was initially formed in 1996. Mr. Najjab continued in that role until April 2005, when he became ex officio Chair of PCSC as a result of assuming the role as acting CEO of PIF. (PCSC became a subsidiary of PIF in 2002.) When Mr. Najjab stepped down as acting CEO of PIF in December 2005, he also ended all relationships with PCSC, including his role as ex officio Chair. Mr. Najjab was never an employee, officer, or shareholder of PCSC.

    c.    **Palestine Investment Fund ("PIF")**: From approximately August 2002, when PIF was organized, to July 2004, Mr. Najjab, through MCS and its contract with PCSC, provided business and other consulting services to PIF, which, after its formation, became the parent company of PCSC. During that time, Mr. Najjab (through MCS) reported to me, in my capacity as Chairman of the Board of PIF, ex officio. He also reported to Mohamed Rachid who was the CEO and board member of PIF during that period. Mr. Rachid left PIF in approximately April 2005. On July 1, 2004, Mr. Najjab was appointed Chief Operating Officer of PIF, and on April 9, 2005, he became acting Chief Executive Officer. During that period, Mr. Najjab had authority to enter into agreements on behalf of PIF, subject to the approval of the investment committee and board of directors, including agreements for the sale or purchase of PIF assets. In December 2005, Mr. Najjab stepped down as acting CEO of PIF and, since his resignation, neither he nor MCS has performed any services for PIF or had any affiliation with PIF. Since

December 2005, Mr. Najjab and MCS have not had authority to enter into any agreements on behalf of PIF, including any agreements for the sale, transfer, or purchase of assets of PIF.

    d. **Palestinian Pension Fund for the State Administrative Employees in the Gaza Strip ("PPF")**: From approximately 1998 to the present, Mr. Najjab, through MCS, has provided business and consulting services to the PPF. When and as requested by the PPF, Mr. Najjab and MCS have, among other things, prepared payment requisitions for payments to consultants who provide investment and other services to the PPF, obtained written reports from investment managers who are managing assets of the PPF, transmitted documents to investment managers and financial institutions with whom the PPF had relationships, attended meetings with investment managers, auditors, counsel, and others on behalf of the PPF, and received account statements relating to custodial accounts held by the PPF at various financial institutions. In performing these services, Mr. Najjab and MCS report directly to the Board of Directors of the PPF. In addition, Mr. Najjab and MCS provide consulting services for the PPF and its counsel in connection with litigation in the United States involving the PPF's assets. Mr. Najjab and MCS have never had authority to enter into any agreements on behalf of the PPF, including agreements for the sale, transfer, or purchase of assets of the PPF. Similarly, he had no authority to conduct any financial transactions for the PPF. Mr. Najjab has never been an employee, officer, or director of the PPF.

    e. **Samed and the Palestine National Fund ("PNF")**: Plaintiff's counsel has also asked about entities alleged to be related to the PLO – Samed and the PNF. To my knowledge, Mr. Najjab has never had any financial, professional, or other dealings with Samed or the PNF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _____ day of July, 2008, in Ramallah, Occupied Palestinian Territory.

_____
Dr. Salam Fayyad
Prime Minister of the Palestinian National Authority
Finance Minister of the Palestinian National Authority
Director of the Economic Department of the PLO

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 25th day of July, 2008, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to the following:

    David J. Strachman
    McIntyre, Tate & Lynch, LLP
    321 South Main Street, Suite 400
    Providence, RI 02903
    djs@mtlhlaw.com

    Robert J. Tolchin
    JAROSLAWICZ & JAROS, LLC
    225 Broadway, 24th Floor
    New York, NY 10007
    rjt@tolchinlaw.com

    Attorneys for Plaintiffs

                                   /s/ Richard A. Hibey