**PATTON BOGGS LLP**
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

March 1, 2011

Mitchell R. Berger
Tel. 202-457-5601
Fax: 202-457-6315
mberger@pattonboggs.com

**VIA FACSIMILE: 1-212-805-7920**

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

      Re:    *Wultz v. Islamic Republic of Iran*, No. 1:11-cv-01266 (SAS)

Dear Judge Scheindlin:

I am counsel, along with Walter P. Loughlin of K&L Gates LLP, for defendant Bank of China ("BOC") in this recently-transferred action. We respectfully request a conference at the Court's earliest convenience to discuss BOC's position that the Court should consider, on a *de novo* basis, BOC's motion to dismiss the First Amended Complaint ("FAC") (Dkt. #12). Although Your Honor's rules do not require a conference prior to filing a motion to dismiss, we believe that a conference is appropriate given the atypical circumstances leading to the severance and transfer of the claims against BOC following the transferor court's denial of BOC's original motion to dismiss.

The transferor court acknowledged that it had mistakenly exercised jurisdiction over BOC when it denied BOC's original motion to dismiss. Dkt. # 102 at 9 ("The Court … holds that it does in fact lack personal jurisdiction over BOC in this case."). "Personal jurisdiction … is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotations and citations omitted); *accord In re Ski Train Fire in Karprun, Austria on Nov. 11, 2000*, 343 F. Supp. 2d 208, 215 (S.D.N.Y. 2004) (Scheindlin, J.). Indeed, in another Anti-Terrorism Act ("ATA") lawsuit, where the transferor court <u>did</u> have full jurisdiction, the transferee judge held that this court nonetheless "must evaluate [defendants'] motion[ ] [to dismiss] <u>on the merits de novo</u>" because "it is bound by Second Circuit precedent while [the transferor court] applied D.C. Circuit law." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 780 n.2 (S.D.N.Y. 2005) (emphasis added) (ruling on defendants' second round of motions to dismiss *de novo* following MDL transfer from the D.D.C.).

The interests of justice and international comity also support BOC's requests for *de novo* consideration of its contentions that the FAC: (i) presents non-justiciable political questions, which foreclose subject matter jurisdiction; (ii) improperly seeks judicial inquiry into alleged sovereign acts of the People's Republic of China ("PRC"), which the act of state doctrine forecloses; and (iii) pleads factually implausible and legally insufficient claims against BOC under the ATA and Israeli

**PATTON BOGGS LLP**
ATTORNEYS AT LAW

Hon. Shira A. Scheindlin
March 1, 2011
Page 2

law. The D.C. Court erroneously rejected these contentions based on its core holding that FAC ¶ 77 "plausibl[y]" alleged that the Chinese government (i) "notified" BOC of Israeli government assertions that a BOC customer was using funds wired to his BOC account in China to facilitate terrorism, and (ii) nonetheless gave express Chinese government "approval" for BOC to continue receiving wire transfers for that purpose. Dkt. #83 ("Opn.") at 53-54, 55, 56-57, 58-60, 62-63, 81, 89-90. This central allegation depicts China as a state sponsor of terrorism, directly contrary to the official position of the United States government. Accordingly, BOC respectfully submits that this Court should review *de novo* BOC's contentions that the FAC should be dismissed because:

A.  The claims against BOC raise non-justiciable political questions. *First*, the allegations of FAC ¶ 77—coupled with plaintiffs' denunciation of Chinese government policies in FAC ¶¶ 112 and 123—demand a judicial determination that China sponsors terrorism through its government policies and a bank that the PRC owns and regulates. The claims therefore impermissibly call into question the U.S. government policy judgment that China is not a state sponsor of terrorism and is, instead, a partner in the fight against terrorism and its financiers. *See Can v. United States*, 14 F.3d 160, 163-64 (2d Cir. 1994) (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962)). Moreover, FAC ¶ 77 alleges acts by China that violate its undertakings in the UN Convention against Financing of Terrorism. *Second*, to prove FAC ¶ 77, plaintiffs must seek discovery from either the Israeli or Chinese governments, and from state-owned BOC about alleged communications with Chinese government agencies and officials. Under the *Baker v. Carr* political question test, there are no judicially manageable standards for such discovery. *E.g., Freund v. Republic of France*, 592 F. Supp. 2d 540, 563 (S.D.N.Y. 2008) ("Plaintiffs' counsel requests broad documentary discovery on behalf of a potentially large class, at least part of which would be conducted in the closed archives of 'foreign states' under the FSIA. These requests raise serious comity concerns insofar as they would require the Court to order a foreign sovereign and its instrumentality to provide access to their sealed archives."). In light of these factors, the D.C. Court was mistaken in concluding that, "[a]lthough plaintiffs' claims allege facts concerning the conduct of the Chinese Government, those allegations do not intrude upon the foreign policy of the United States, and BOC's allegations concerning unsuitability for determination by courts are unripe." Opn. at 15.

B.  Plaintiffs' claims against BOC violate the act of state doctrine, which "precludes the courts of this country from inquiring into the validity of the *public* acts a recognized foreign sovereign power committed within its own territory." *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 72-73 (2d Cir. 1977) (citations and quotations omitted). FAC ¶ 77 alleges two such public acts, *i.e.*, that the Chinese government: (i) "notified BOC" of information and demands allegedly communicated by the Israeli government; and then (ii) conveyed "the approval of the PRC" to continue receiving wire transfers that allegedly facilitated terrorist acts. The act of state doctrine prohibits precisely this type of "judicial inquiry into the acts and conduct of the officials of the foreign state, its affairs and its policies and the underlying reasons and motivations for the actions of the foreign government." *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*, 830 F.2d 449, 452 (2d Cir. 1987). The D.C. Court erroneously concluded that FAC ¶ 77 "do[es] not ask the Court to inquire into the validity of any public act of China." Opn. at 65.

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Hon. Shira A. Scheindlin
March 1, 2011
Page 3

C.   FAC ¶ 77's key allegations of PRC-government notification-and-approval are implausible. As the D.C. Court acknowledged, "it does seem remarkable that BOC—an internationally respected financial institution with branches in this country—would actually intend to facilitate the terroristic murder of American civilians." Opn. 58-59. FAC ¶ 77 makes only conclusory allegations, which cannot be credited under *Twombly* and *Iqbal*, and the D.C. Court mistakenly "accept[ed] plaintiffs' allegations as true" based on its view that "China does exert a measure of control over BOC through China's central bank." *Id.* at 62-63, 89. But it is implausible that China would use such control to direct BOC to facilitate terrorism, unless the Court went further and credited plaintiffs' non-justiciable allegation that "the PRC…facilitate[s] the ongoing campaign of terrorism against Israel…in order…to strengthen the PRC's own position and undermine an ally of the United States." FAC ¶ 112(b); *see* FAC ¶ 123(b). The political question doctrine prohibits that necessary further step. And, even if it did not, the act of state doctrine forecloses the claim that BOC took actions that were "directed and approved" by its home government. *Hargrove v. Underwriters at Lloyd's, London*, 937 F. Supp. 595, 604 (S.D. Tex. 1996); *see Shen v. Japan Airlines*, 918 F. Supp. 686, 691 (S.D.N.Y.) ("A party may assert the act of state doctrine where its conduct has been compelled by a foreign government."), *aff'd*, 43 F.3d 1459 (2d Cir. 1994). Still further, and independently, plaintiffs' causation theory is implausible because "it is not reasonably foreseeable that … routine banking services … would result in the death and bodily injuries suffered by plaintiffs in … attacks launched in Israel." *Licci v. AmEx Bank*, 704 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2010).

We respectfully submit that the Court accordingly should consider BOC's motion to dismiss *de novo* and defer discovery given that BOC's arguments are "not…unfounded in the law" and the FAC suggests that discovery will raise comity concerns and will be otherwise burdensome. *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009).[1]

Respectfully submitted,

Mitchell R. Berger

cc:   Robert J. Tolchin, Esq. (by facsimile 1-718-504-4943)
      Walter P. Loughlin, Esq. (by facsimile 1-212-536-3901)

---

[1] There are two parallel N.Y. state court actions against BOC brought by the same plaintiffs' counsel, who acknowledges (Dkt. #31 at 34) that they "arise[ ] from the same conduct at issue in this case (but…w[ere] brought by non-U.S. victims under non-federal [Israeli law] causes of action)." *See Elmaliach v. Bank of China*, No. 10206/09; *Zamalloa v. Bank of China*, No. 101244/10 (Sup. Court N.Y. Co.). BOC's motions to dismiss those state court actions will be argued on March 8, 2011.