1
                      UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK
2

3      ----------------------------------------X
                                               :
4      SOKOLOW, et al,                          : 04-CV-397
                                               :
5                        Plaintiffs,            : June 21, 2011
                                               :
6               v.                              : 500 Pearl Street
                                               : New York, New York
7      PALESTINE LIBERATION ORGANIZATION, et al, :
                                               :
8                        Defendants.            :
       ----------------------------------------X
9

10              TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
                   BEFORE THE HONORABLE RONALD L. ELLIS
11                   UNITED STATES MAGISTRATE JUDGE

12
       APPEARANCES:
13

14     For the Plaintiff:         ROBERT J. TOLCHIN, ESQ.
                                  Berkman Law Office
15                                111 Livingston Street
                                  Brooklyn, NY 11201
16

17     For the Defendants:        MARK J. ROCHON, ESQ.
                                  BRIAN A. HILL, ESQ.
18                                Miller & Chevalier, Chtd.
                                  655 15th Street, North West #900
19                                Washington, DC 20005

20

21
       Court Transcriber:         MARY GRECO
22                                TypeWrite Word Processing Service
                                  211 N. Milton Road
23                                Saratoga Springs, NY 12866

24

25


       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service

2

```
 1              THE CLERK:  In the matter of Sokolow, et al v.
 2    Palestine Liberation Organization, et al.  All counsel, please
 3    identify yourselves for the record.
 4              MR. TOLCHIN:  Good morning, Your Honor.  Robert
 5    Tolchin with The Berkman Law Office for all the plaintiffs.
 6              THE COURT:  Good morning.
 7              MR. ROCHON:  With me is Brian Hill who has a motion
 8    for admission pro hac vice pending before the Court.
 9              MR. HILL:  Good morning, Your Honor.
10              THE COURT:  The paperwork has been submitted?
11              MR. HILL:  Yes, sir.
12              THE COURT:  Have we gotten it?
13              THE CLERK:  We haven't gotten it.  It's on ECF.
14              THE COURT:  Okay.  Well, I'm assuming the paperwork
15    will be in order, so I'll let him sit there and he'll behave;
16    right?
17              MR. ROCHON:  I think he'll behave, Your Honor.  We'll
18    see.
19              THE COURT:  And we also have here a joint discovery
20    plan.  I'd say there are a number of things that you disagree
21    about.  Why don't we just go through them one at a time.  First
22    of all, I see you agree to I guess 18 months of fact discovery
23    and then four months of expert discovery in broad parameters.
24    What do you anticipate happening during those 18 months?
25    Anybody?
```

3

1          MR. TOLCHIN:  Which side are you addressing?

2          THE COURT:  Well, plaintiff.

3          MR. TOLCHIN:  Well, we anticipate, Your Honor, that

4    there will be initially initial disclosures followed by

5    interrogatories followed by depositions.  The depositions in

6    this case, and this is not the first case of this nature that

7    this pair of opposing counsels has handled with each other, so

8    we have a little perspective of where it may go.  There's a few

9    different kinds of depositions that are going to take place.

10   Because, you know, we're not dealing with General Motors.

11   We're not dealing with an ordinary corporate entity where we

12   could just ask for the logbook for the incident involved or

13   anything like that.  These are terrorist attacks and we're

14   dealing with a quasi-governmental organization being the

15   Palestinian authority and the PLO which is an umbrella group

16   for various organizations that have frequently been described

17   as terrorist organizations.  The notion that they will simply

18   produce the logbook for the terrorist attacks involved is

19   unlikely.

20          So we are going to have to depose people who we

21   believe were in the chain of command or who would have

22   knowledge about particular events.  That's one category.  The

23   second category, because there are individuals who were

24   arrested, tried and convicted and are sitting in Israeli jails

25   in connection with these very attacks, so we may wish to depose

4

1    some of them.  That is a process as we've learned in another

2    case because we would have to have those people produced for

3    deposition by the Israel prison authority which will require a

4    Hague request which has to be processed by the court in Israel

5    and ultimately months and months and months later the

6    depositions will take place.

7            Then there's the issue of authenticating documents

8    and establishing evidentiary foundations for documents.  I

9    predict that the defendants will produce some amount of

10   documents but they will not be willing to stipulate that those

11   documents are authentic or that they're business records kept

12   in the ordinary course of business or that the scribble on the

13   document is the signature of who it purports to be.  So we will

14   have to conduct a series of what I'll call foundational

15   depositions, not lengthy depositions.  It could be 15 minutes,

16   but just to ask the relevant custodian of the documents to

17   identify the documents.

18           The same applies to documents that may be in the

19   possession of third parties.  I could just give an illustration

20   of something that happened in another case.  There was an

21   interview conducted by a BBC reporter and he had spoken to

22   somebody and we wanted to authenticate what he had reported as

23   to what the somebody had said.  So again, these are not lengthy

24   full day of seven hour depositions.  These are short

25   depositions.

1          The next category is because -- there's de bene esse

2   depositions.  Because the witnesses from the defendants' side

3   are all basically outside the subpoena power of the Court, we

4   won't be able to subpoena them for trial.  So in order to have

5   their testimony at trial, we will need to take their

6   depositions de bene esse to preserve them for trial and present

7   them in court either by transcript or by video.

8          So that -- and then there's expert depositions.  The

9   experts -- this is I think going beyond the scope of your

10  question because you asked what we were going to do in the 18

11  months.  So I'll pause there unless you want me to talk about

12  experts as well.

13         THE COURT:  And will you be doing something similar?

14         MR. ROCHON:  Your Honor, on behalf of the defendants,

15  this is Mark Rochon again.

16         First of all, I'm not sure that we agree with all the

17  characterizations within Mr. Tolchin's remarks but I won't

18  argue them here because it won't facilitate the discussion.

19  But the reference to our client that PLO is an umbrella for a

20  variety of terrorist organizations is something that at least

21  the United States of America hasn't agreed with and we reject

22  and don't appreciate that characterization.  The PLO has a

23  mission in New York.  It's the recognized representative of the

24  Palestinian people.  And so I have to take specific objection

25  to that.

6

1          As to the rest of what Mr. Tolchin says, we agree

2    that there'll be those types of depositions.  We have had

3    matters with each other and there are often disagreements as to

4    who is producible and who is not for depositions.  That's an

5    area that is frequently litigated in these case.  Who is an

6    officer of our client's and therefore producible upon notice?

7    You'll have those kinds of issues.  As to the reporters, we had

8    issues when depositions are sought as to their outtakes or

9    notes and the producibility or not of those items and we tend

10   to have litigation on those issues in connection with those

11   depositions.

12          In terms of our own discovery, I think the one thing

13   that Mr. Tolchin and I both agree on is that if there are Hague

14   requests in this case, we are likely to make them as well

15   because each of the incidents here did not occur within the

16   Palestinian territories.  They occurred within areas that are

17   outside the control of the Palestinian territories, so there

18   would be no basis to have a log of the events that would be in

19   our client's possession as the events did not occur within our

20   territory or any place where we have investigative or security

21   control.  Therefore, we will need to conduct discovery from the

22   Israelis through Hague requests in order to obtain discovery

23   from them as to what investigations occurred and what court

24   proceedings occurred as well.  And the bottom line, therefore,

25   is that Hague requests need to be made early or else they will

7

1    delay discovery.  That's one of the larger points I think for

2    the Court to do today.

3            I would ask the Court to encourage, indeed direct,

4    that Hague requests by either side be made properly so any

5    delay in responding to those doesn't delay the close of

6    discovery in this case.

7            THE COURT:  Well, just to stop you there, I don't

8    think it's necessary for me to issue orders of that nature.

9    We're going to have a discovery deadline.  If you don't get

10   your Hague requests in and then you need time, you can't come

11   to me and say I just did my Hague request.  I prefer to tell

12   people look, you know what your deadlines are, you get your

13   request in, you know how long it takes.

14           I mean it would not be the kind of motion you'd win

15   on, for example, if you came to me with three months left in

16   the discovery period and said I just filed my Hague request and

17   those are going to take six months, so I need three extra

18   months.  I'd say well, you should have filed it three months

19   ago.

20           MR. ROCHON:  Yes, sir.  We'll follow your direction.

21           THE COURT:  So I don't need to give you an order on

22   that.  You know, I like to have the parties show that they're

23   working diligently because if I'm going to give any extensions

24   I want to know what you've done in the interim.  And certainly

25   when it comes to anything that you should have filed, if you

8

1   didn't file it in time to get it done during the discovery

2   period, you'd better have a good reason.  I mean if you just

3   discovered somebody and that's why you're just doing it, fine.

4   But otherwise, we all know even under the best of circumstances

5   your Hague requests could take an enormous amount of time.  If

6   you file a Hague request say next month and it's 20 months from

7   now and you haven't gotten it, you'll be in better shape than

8   somebody who filed it six months from now even if it's within

9   the time frame.

10           MR. ROCHON:  Understood.  And that's all I had to say

11  on the general approach to the discovery and the 18 months of

12  fact discovery, Your Honor.

13           THE COURT:  Okay.  All right.  Well, 18 months sounds

14  like a good start to get you moving expeditiously.  What I do

15  is this.  If you start something in a timely manner and through

16  no fault of your own it's not able to be completed, you can

17  make those applications to me.  I mean I've had people get sick

18  and be unavailable.  All sorts of things happen.  Those kind of

19  applications you could make.  But other than that, you have a

20  time limit.  File your discovery with an expectation that it

21  will take time to do it.  So similarly, you can't wait until

22  there's 30 days left and file some interrogatories or something

23  like that.  That's not going to come across too well.

24           Okay.  So we'll do the 18 and 4 that you've

25  scheduled, which brings me to the first issue, that is when do

1    you start the time running for expert disclosure.  As a general

2    rule, I start it at the close of fact discovery.  I understand

3    that the plaintiffs want it at the completion of fact discovery

4    and I understand the reasoning.  Again, the way I do things is

5    this.  If there is a particular problem and something that's

6    needed, then you can make an application.  But the fact of the

7    matter is that not all discovery is going to be necessary for

8    the experts.  So if the thing that's not completed is not

9    necessary for your expert obviously there's no real reason to

10   postpone it.  On the other hand, I don't want to give one side

11   the carte blanche to delay things so that the expert doesn't

12   have the information that they need.  If you want additional

13   time to complete the experts discovery, we'll do it in that way

14   rather than having the period start at a later time.

15        So if your expert gets something belatedly and he

16   could not have gotten it sooner, then you can ask for

17   additional time for the expert to do that report.  But we'll

18   start at the close of discovery so any expert that can start

19   then, I expect them to start.

20        And the other thing is that sometimes what experts

21   can do is they can get the bulk of their things done and then

22   there's one little piece that they need to add and they'll add

23   that piece and we'll wait for that piece.  So we'll start the

24   close of discovery.

25        As to the number of depositions, it seemed pretty

1    clear to me given the number of incidents and the description

2    of what you're going to be doing in discovery that you're going

3    to have more than 20 depositions in this case.  And so I think

4    the number of 20 is artificially low.  I don't like the idea of

5    having an unlimited number of depositions.  So what I'm going

6    to do is I'm going to give you -- assuming that there's going

7    to be some overlap, I'm going to give you the equivalent of 35

8    depositions presumptively.  If you need additional -- if you

9    believe you need additional depositions discuss it with the

10   other side.  The question will be whether or not that

11   deposition is reasonably necessary for the case to be ready for

12   trial.  I only advise the party who would be opposing the

13   deposition not to stand in the way of a deposition which is

14   going to be easy for the other side to make a case to me that

15   this deposition is relevant to the issues in the case.  So if

16   you want to do additional depositions, discuss it and if you

17   don't agree then bring it to me as soon as possible.

18            The one caveat I have here is that occasionally I

19   have a situation where one party basically tries to get their

20   freebies in on the 35 and then get their meatier ones in on the

21   extra ones knowing that they can make a case.  I wouldn't

22   suggest that you do that.  If it turns out that -- if any

23   deposition that you take, I think it would probably be a good

24   idea to make sure that the other side thinks that it's a

25   deposition that you ought to take so that you don't run into

1  problems at the end where they'll say yeah well he took ten

2  depositions which he didn't need to take.  So be advised about

3  that.  I gather you understand what I'm saying.  There will be

4  no free deposition freebies just because we've put a number

5  there.  Of course you could do that whether you had 15 or 25 or

6  35.

7         The time to amend, I don't see any reason why we

8  should change what the federal rules say and the local rules.

9  So if you have a motion to amend, just follow the rules.  I

10  don't know that there's going to be a need to amend.  But then

11  again, I don't know what you're going to find out.  So if

12  something happens in discovery then you might be able to make

13  the showing.

14         The defendants had proposed some limitations on the

15  specifics of meet and confer.  As far as I'm concerned, we get

16  along fairly well with the idea that if you have a discovery

17  dispute you meet and confer about it and then you bring it to

18  me in a timely manner.  That's as much guidance as I'm going

19  to, and as much limitation as I'm going to give you on that.

20  That is when you know you've reached an impasse, then contact

21  my chambers and I'll decide what's a reasonable amount of time

22  depending on the circumstances.

23         I know that unfortunately sometimes the parties

24  disagree on whether or not they've reached an impasse.  So

25  under those circumstances, basically what I want you to do is

1   if you think that there is an issue talk about it and then

2   contact my chambers.  Don't ask for a conference to discuss it.

3   Just the way this will play itself out is this.  If you've made

4   an issue of it, that is if you put in a letter to me or a

5   letter to the other side then you won't be having these

6   discussions about whether or not it was raised timely and the

7   other side can say okay, it's not really a dispute and I've

8   answered it.  But what I don't want to happen is six months

9   after something happened and as discovery is about to close

10  somebody says to me we never got this.  So as long as you're

11  constantly talking about disputes and you've reached an

12  impasse, if you can tell the other side I don't think that

13  we're going to make any progress on this, I think it's time to

14  bring the judge in, document it so that we'll know that it's

15  not a surprise and then let me know.

16          MR. TOLCHIN:  Your Honor?

17          THE COURT:  Yes.

18          MR. TOLCHIN:  One process that sometimes occurs is

19  that an issue arises but it's not an issue -- but at first you

20  don't think it's an issue that's worthwhile to press with the

21  Court.  For example, I ask an interrogatory and I get a less

22  than satisfactory answer.  I say to myself well I could take

23  this up with the Court now but I have a deposition coming up

24  from the person who verified this interrogatory.  So let me ask

25  this guy about it and see what he says and maybe I can get the

13

1   information.  So the deposition might be two months from now

2   and then after the deposition I'll still not be satisfied.  So

3   then I'll say to myself well, I ought to take up that

4   interrogatory that I was waiting to deal with.  I don't think

5   it's fair for me to then be in a position that they'll come in

6   and say you didn't raise it timely when I was trying really to

7   avoid burdening the Court with every little small dispute along

8   the way.  That's what our objection to the verbiage they

9   proposed --

10          THE COURT:  Do you think it would be a problem in

11  that case if you were to say to him the answer to the

12  interrogatory I think is not complete, I think I may be able to

13  get it at the deposition but if not then we'll follow through

14  with it.  I mean isn't that the way you would handle that?

15          MR. TOLCHIN:  Well --

16          MR. ROCHON:  That's what I understand the Court's --

17          MR. TOLCHIN:  -- yes, but you know, sometimes it

18  happens I may come to the deposition and based on the answers

19  at the deposition I might realize that I got a bad

20  interrogatory answer.  All I'm trying to say by my illustration

21  is that the dispute is not always immediately apparent or the

22  dispute is not always --

23          THE COURT:  And let me ask you this, counsel.  Do you

24  think that if you have this deposition and then it becomes

25  apparent that there's a conflict between the interrogatory and

14

1    the deposition that either you won't be able to convey that to

2    me or I won't be able to understand it?

3                MR. TOLCHIN:  Oh, I --

4                THE COURT:  If that's the case --

5                MR. TOLCHIN:  -- I have perfect confidence that --

6                THE COURT:  Then there's no problem.

7                MR. TOLCHIN:  I have perfect confidence that Your

8    Honor would be able to discern that.  What bothered us is that

9    --

10               THE COURT:  And we're not using that framework.

11               MR. TOLCHIN:  Perfect.

12               THE COURT:  If you come to me, and it happens, and

13   you'll do someone's deposition and, you know, maybe you'll even

14   have the interrogatory there and you'll say that's wrong.

15   Okay.  Well, in that case that's where the conflict starts.

16               MR. TOLCHIN:  Okay.  They were just trying to put in

17   a limit, an artificial limit that you had to raise it or lose

18   it.  That would just -

19               THE COURT:  But that would be argument about whether

20   or not there was a conflict before that period of time.

21               MR. TOLCHIN:  And it would also lead to me being

22   obligated to raise with the Court every little petty issue

23   instead of having discretion to wait to see what's really

24   important.

25               THE COURT:  I don't think that's discretion.  I don't

1   think there's a dispute until the deposition the way you

2   described it.  I think you're safe on that.

3               MR. TOLCHIN:  Okay.

4               MR. ROCHON:  Right.  And I understand Mr. Tolchin to

5   be arguing the point that he's already won.  You already told

6   him he could come back and get a strict deadline.  So I'm

7   taking --

8               MR. TOLCHIN:  Mr. Rochon, sit down.

9               MR. ROCHON:  That's what I was thinking.  But I do

10  think that we understand the Court's position.  All we care

11  about is this.  If he knows there's a problem with the

12  interrogatory he ought to let us know.  Now, I'm taking the

13  Court's point, in other words.  Even if he doesn't file the

14  motion, maybe we'll correct it before the deposition.  On the

15  other hand, if he doesn't know there's a problem until the

16  deposition he can't let us know because he doesn't know.  I

17  don't want him to sit on discovery problems because we might be

18  able to cure them.

19              THE COURT:  All right.  I concur that -- frankly, I

20  think any time you get responses to interrogatories or requests

21  for production there should be a dialogue between the parties

22  because sometimes the reason that things are incomplete is just

23  you have different ideas when you read it and you're not going

24  to go through each question before you answer them.  You call

25  the other side and you say well, you know, you gave me these 14

16

1   documents and as far as I know there were 100 documents that

2   fit this description.  And he says well, not the way we

3   understood the description.  And then they'll say oh, that's

4   what you meant.  Okay.  Here's another 5,000 documents.  It was

5   even worse than you thought.  But the idea would be is that if

6   you have the communication and you say okay, you'll have that

7   dialogue and maybe they'll cure it and maybe you'll say okay,

8   I'll see what I get at the deposition, maybe that will clear it

9   up because frankly sometimes what happens is I get from the

10  other side they said this will be clear once you take the

11  deposition.  But if you have this dialogue beforehand, you'll

12  know that, they'll know that.  There won't be any issue where -

13  - they won't feel like you've waited some time and they could

14  have given you a document that would clear it up.  I think

15  that's fair.  None of this is discovery by surprise.  If

16  they've messed up or didn't do something, you know, it may be

17  inadvertent and if it is then whatever it is you're not going

18  to get any point for -- it's not like you're going to do Perry

19  Mason at trial and say ah ha, see I got this thing.

20          So just have the conversation with them and let them

21  know that there's a problem.  Maybe this will be one of those

22  cases where the other party actually cures a defect.  Maybe it

23  will be like the others and they'll say you're off the wall.  I

24  don't know.  But it couldn't hurt.  But you won't be penalized

25  as long as you bring it up to him and I won't think it's petty

1   if you have discussions about discovery.

2            As to the severing issue which is the last one that I

3   have here, well there are a couple of things.  One is I don't

4   think that it's something that needs to be addressed now

5   because frankly it is a trial issue.  And because it's a trial

6   issue, two things.  One is I generally stay out of those trial

7   issues.  I figure a judge who's doing the trial can decide

8   whether or not they wanted to sever or bifurcate or whatever it

9   is.  And secondly, to the extent that there's going to be some

10  discovery, the judge might as well decide that on a full

11  record.  It may be that it gets simplified with the discovery.

12  It may be it gets more complicated.  The judge may be more

13  inclined to sever them after discovery and maybe less inclined.

14  So since you're first beginning discovery, I think this is a

15  motion which is best done frankly certainly after the fact

16  discovery.  Maybe you don't have to wait until the expert

17  discovery but you need to be able to argue some facts as to

18  why.  I understand there's this theory there and you could

19  argue the theory of it, but I don't know as a factual matter,

20  for example, whether or not there's going to be significant

21  overlap in terms of testimony, for example, in which case the

22  judge might say it would be much more efficient to have these

23  parties who are going to talk about structure and this and that

24  and have them all in one case.

25            So two things.  One is I think even were I to decide

18

1    it, I would think it's premature.  But I think as a matter of

2    trial practice it's a motion which I will talk over with the

3    district judge and occasionally district judges will say you

4    decide it, but generally if it has to do with trials or there's

5    motions in limine or bifurcations or severances, it's a matter

6    of the docket controlling the district judge and I think that

7    falls within that purview.  But as I said, I think it's

8    something -- I would hazard a guess that if you make that

9    motion now the judge will say finish discovery.

10           Did I miss anything?

11           MR. TOLCHIN:  No, Your Honor.

12           THE COURT:  Okay.  Now, I guess we should embody this

13   in some kind of an order and I have two choices.  One is I

14   could tell you to take everything I said and do a discovery

15   plan which doesn't have either/ors on it.  The advantage of

16   that of course is that you already have a framework and it also

17   gets you talking because you'll have to collaborate in doing it

18   hopefully.  You did collaborate on this.

19           MR. ROCHON:  We collaborated on this, painfully so,

20   but it got done.

21           THE COURT:  You know, some of my colleagues insist

22   that everything that comes from the parties is a joint effort

23   just for that purpose.

24           MR. ROCHON:  We'd be happy to make the effort to

25   reduce the Court's indications today and to --

19

1          MR. TOLCHIN:  You didn't care what plan B was.

2          MR. ROCHON:  Plan A was to get along and propose

3   something and save the Court some work, so I was going to go

4   with Plan A.

5          THE COURT:  Okay.  Then you passed the test.

6          MR. ROCHON:  No, I think I passed the test.

7          MR. TOLCHIN:  Does that mean his motion for prima

8   facie is granted?

9          THE COURT:  Well, I'll see the paper.  I don't

10  anticipate that there'll be any problems.

11         MR. ROCHON:  Judge, I apologize --

12         THE COURT:  Oh, I'm sorry, there was one other thing.

13  You had talked about having a meeting I think maybe near the

14  end of discovery.  I think this is a case that I'd probably

15  want to meet with you approximately quarterly, so every three

16  or four months.  So we'll probably have the next conference in

17  early September.  That will give you some time to get some

18  momentum.  Michael, what have we got there?

19         THE CLERK:  Tuesday, September 13th at 10 a.m.

20         MR. TOLCHIN:  Does anyone know when the Jewish

21  holidays are this year?  I have to look.

22         MR. ROCHON:  You know, the fact he came to me for

23  this advice, I would just think it's great.

24         THE COURT:  Well, if you're talking about getting

25  along --

20

1          MR. ROCHON:  I'll tell you, Your Honor, anything's

2  possible.

3          MR. TOLCHIN:  I don't make any assumptions about

4  someone's religion.

5          THE COURT:  Is the 13th okay?

6          MR. TOLCHIN:  I'm checking, Your Honor.

7          MR. ROCHON:  It's fine by me, Your Honor.

8          MR. TOLCHIN:  Go to date.

9          THE COURT:  A lot of people keep these electronic

10  devices and it takes them so long to find the information.

11          MR. ROCHON:  Well, they seize them from me at the

12  door like that was contraband.

13          MR. TOLCHIN:  You have to apply for a --

14          THE COURT:  Do you have a pass?

15          MR. ROCHON:  Not yet, Your Honor.

16          MR. TOLCHIN:  You have to come on a Thursday morning.

17          THE COURT:  Yes.  And it is contraband.  It's not

18  quite as bad as bringing a phone into prison.  I think there

19  was just a ruling that said a cell phone in prison is a

20  dangerous --

21          MR. TOLCHIN:  September 13th is fine.

22          THE COURT:  13 okay?

23          MR. ROCHON:  Yes.

24          MR. TOLCHIN:  Yeah.

25          MR. ROCHON:  Your Honor, there was one thing in the

1  plan that the Court didn't address.  We had included a time for

2  filing of summary judgment motions within a certain period of

3  time after the close, no later than a certain period of time

4  after the close of discovery.  We don't need to include that in

5  the order.  I just --

6        MR. TOLCHIN:  I don't think we disagreed about it.

7        MR. ROCHON:  Yeah, just in the submission it didn't

8  have defendant's position.  It just said -- I mean it didn't

9  have plaintiff's position so --

10        MR. TOLCHIN:  No, but I think the judge only

11  discussed the issues that we disagreed about.

12        MR. ROCHON:  Okay.  Fine.  Then we'll put it in.

13        THE COURT:  Okay.  Well, I think you wanted 60 days

14  when I think the default is 30 days.  And most judges ask you

15  to do the motion because as you know, the rules require that

16  you do your final pretrial order 30 days after the close of

17  discovery.  So most of the judges require if you're going to

18  file this, file the motion, that you do that within the same

19  time frame.  But as I recall, you had asked for 60 days.

20        MR. ROCHON:  Yes.

21        THE COURT:  Is there any particular reason?

22        MR. ROCHON:  Just the amount of complexity of the

23  matters that I think --

24        THE COURT:  Okay.  Well why don't we do this.  Why

25  don't you not put that in this order.

22

1          MR. ROCHON:  Okay.

2          THE COURT:  And what we'll do is since we'll be

3    meeting, we'll see how complex it is and then when we do an

4    order saying that fact discovery is over or that this -- at

5    some point I'll have to declare discovery over.  At that point

6    I'll do an order indicating when the motions are due and when

7    the final pretrial order is due.  So we'll make a note of that.

8          MR. TOLCHIN:  Do we have a time of day for the 13th

9    of September?

10         THE COURT:  Yes.  What time did you give them, Mike?

11         THE CLERK:  10 o'clock.

12         THE COURT:  Okay.  We're getting along so far.

13         MR. ROCHON:  Thank you, Your Honor.  Your Honor, may

14   we be excused?

15         THE COURT:  We're adjourned.  Thank you.

16         MR. TOLCHIN:  Thank you.

17                    *  *  *  *  *  *

18

19

20

21

22

23

24

25

23

1       I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                                    _____

6                                            Mary Greco

7   Dated:   June 27, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25