MILLER KORZENIK SOMMERS LLP
David S. Korzenik
Louise Sommers
Itai Maytal
488 Madison Avenue 11th Floor
New York, New York 10022-5702
(212) 752-9200
dkorzenik@mkslex.com
lsommers@mkslex.com
*Attorneys for The British Broadcasting Corporation*

UNITED STATES DISTRICT COURT
S DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

MARK I. SOKOLOW et al.,  :  04-CV-00397 (GBD)(RE)
                                             :
                                             :
                Plaintiffs,     :
                                             :
           -against-         :       <u>ECF CASE</u>
                                             :
                                             :
THE PALESTINIAN LIBERATION ORGANIZATION,  :
et al,
                    Defendants.    :
                                             :

-----------------------------------------------------------------------x


## MEMORANDUM OF LAW OF THE
## BRITISH BROADCASTING CORPORATION
## <u>IN SUPPORT OF MOTION TO QUASH SUBPOENA</u>


                                         Miller Korzenik Sommers LLP
                                         488 Madison Avenue, Suite 1120
                                         New York, NY 10022
                                         (212) 752-9200
                                         dkorzenik@mkslex.com
                                         lsommers@mkslex.com
                                         *Attorneys for The British*
                                         *Broadcasting Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .................................................................................................. 2

      THE BBC PROGRAM ................................................................................ 3

      THE FIRST SUBPOENA ............................................................................ 3

      THE SECOND, AND INSTANT, SUBPOENA ......................................... 6

      EFFECTS OF DISCLOSURE ..................................................................... 6

      LOCATION OF POTENTIAL WITNESSES AND DOCUMENTS ......... 7

ARGUMENT - THE SECOND SUBPOENA SHOULD BE QUASHED ........... 7

I. THE SECOND SUBPOENA VIOLATES THE
   TERRITORIAL LIMITS OF RULE 45 .......................................................... 8

II. THE SECOND SUBPOENA SEEKS
    PROTECTED PRIVILEGED INFORMATION ........................................... 12

      A. New York's Shield Law Protects the BBC's
         Non-Confidential Outtakes
         and Testimony From Disclosure .......................................................... 14

      B. The First Amendment and Federal Law Protects
         the BBC's Unpublished Information From
         Disclosure ........................................................................................... 18

         1. Federal Test Can Be Satisfied Here ................................................. 19

         2. Policy Considerations Also Outweigh Compulsion Here................. 21

III.  THE SUBPOENAED INFORMATION CONTAINS INADMISSIBLE
     HEARSAY AND SHOULD NOT BE COMPELLED ................................. 23

CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

Carter v. City of New York, No. 02 Civ. 8755, 2004 WL 193142, 2004 U.S. Dist. LEXIS 1308
    (S.D.N.Y. Feb. 2, 2004) .................................................................................................. 18, 20

Cates v. LTV Aerospace Corp., 480 F.2d 620 (5th Cir. 1973) .................................................. 10

Chevron Corp. v. Berlinger, 629 F.3d 297 (2d Cir. 2011).......................................................... 21

Concerned Citizens v. Belle Haven Club, No. 3:99 Civ 1467,
    2004 U.S. Dist. LEXIS 27335 (D. Conn. June 21, 2004)....................................................... 23

Doe v. Cummings, No. 91-346, 1994 WL 315640,
    22 Media L. Rep. [BNA] 1510 (Sup. Ct. St. Lawrence Co. Jan. 18, 1994) ............................ 16

Gonzales v. NBC, Inc., 194 F.3d 29 (2d Cir. 1999) ........................................................... passim

Georgia-Pac. LLC v. Am. Int'l Specialty Lines Ins. Co., 2:08-CV-950, 2010 WL 420036, 2010
    U.S. Dist. LEXIS 14220 (S.D. Ohio Jan. 29, 2010) ................................................................ 6

Flynn v. NYP Holdings Inc., 235 A.D.2d 907, 652 N.Y.S.2d 833 (3d Dept. 1997) ................... 16

Krase v. Graco Children Prods., Inc. (In re Application to Quash Subpoena to Nat'l Broad. Co.,
    Inc.), 79 F.3d 346 (2d Cir. 1996)..................................................................................... 16, 18

Ings v. Ferguson, 282 F.2d 149 (2d Cir.1960) ........................................................................... 16

In re Edelman, 295 F.3d 171 (2d Cir. 2002) ................................................................................. 9

In re Subpoena Duces Tecum to American Broadcasting Companies, Inc., 189 Misc.2d 805,
    735 N.Y.S.2d 9191 (Sup. Ct. NY Co. 2001) ................................................................... 15-16

Laker Airways Ltd. v. Pan Am. World Airways, 607 F. Supp. 324 (S.D.N.Y. 1985) ................. 11

Liberty Mut. Ins. Co. v. Diamante, 194 F.R.D. 20 (D. Mass. 2000) ............................................ 6

Matter of Beach v. Shanley, 62 N.Y.2d 241, 476 N.Y.S.2d 765, 465 N.E.2d 304 (1984) .......... 17

N.Y. Times Co. v. Gonzales, 459 F.3d 160 (2d Cir. 2006) ......................................................... 23

O'Neill v. Oakgrove Construction, Inc., 71 N.Y.2d 521, 523 N.E.2d 277,
    528 N.Y.S.2d 1 (1988) ..................................................................................................... 14, 17

Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56 (S.D.N.Y. 1998) .................. 9-12

Prosecutor v Brdjanin, Case No.: IT-99-36-AR73.9, Decision on Interlocutory Appeal (Dec. 11, 2002)(International Criminal Tribunal for the Former Yugoslavia, The Hague) .................... 22

Sikelianos v. City of New York (In re Subpoena Directed to the AP), No. 05 Civ. 7673, 2008 WL 2465120, 2008 U.S. Dist. LEXIS 47560 (S.D.N.Y. June 18, 2008) .......................... 18, 20

Sokolow v. Palestine Liberation Org., No. 04 Civ. 00397 (GBD), 2011 WL 1345086, 2011 LEXIS 36022 (S.D.N.Y. Mar. 30, 2011) ................................................................................. 3

Stanford v. Kuwait Airlines Corp., No. 85 Civ. 0477, 1987 WL 26829, 1987 LEXIS 10981 (S.D.N.Y. Nov. 25, 1987) ................................................................................................. 10-11

St. Paul Fire & Marine Ins. Co. v Royal Ins. Co., No. 91 Civ. 6151 1993 WL 267347, 1993 LEXIS 9415 (S.D.N.Y. July 12, 1993) ................................................................................. 11

The Nissan Fire & Marine Ins. Co., Ltd v. Fortress Re, Inc., No. 1:02CV00054, 2002 WL 1870084, 2002 U.S. Dist Lexis 14928 (S.D.N.Y.  Aug 14, 2002)  ........................................... 9

U.S. v. Grant, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176 (S.D.N.Y. Nov. 17, 2004) ................................................. 18-21

U.S. v. Harwood, 998 F.2d 91 (2d Cir. 1993) ................................................................................. 23

von Bulow by Auersperg v. von Bulow, 811 F.2d 136 (2d Cir. 1987) .................................. 13, 19

## Statutes

N.Y. Civ Rts. L. §79-h ................................................................................................ 12, 14-15, 17

Fed. R. Civ. P. 30(b)(6) ........................................................................................................... 10

Fed. R. Civ. P. 45 ............................................................................................................ passim

Fed. R. Civ. P. 45(b)(2) ............................................................................................................. 9

Fed. R. Civ. P. 45(c)(1) ............................................................................................................. 5

Fed. R. Civ. P. 45(c)(3) ............................................................................................................. 5

Fed. R. Civ. P. 45(c)(3)(A)(ii) ................................................................................................. 9

Fed. R. Civ. P. 45(c)(3)(A)(iii) ............................................................................................... 12

Fed. R. Civ. P. 45(c)(3)(A)(iv) ................................................................................................. 5

Fed. R. Civ. P. 45(d)(2)..................................................................................................................... 10

Fed. R. Evid. 801(d)(2)(C).............................................................................................................. 23

Fed. R. Evid. 801(d)(2)(D) ............................................................................................................. 23

**Other Authorities**

Article 79 of the Protocol Additional to the Geneva Conventions of 12 August 1949 and Relating
    to the Protection of Victims of International Armed Conflicts (Protocol I), 8 June 1977, 1125
    U.N.T.S. 3 ................................................................................................................................. 22

BBC News – Programme – Correspondent, "Arafat Investigated,"
    http://news.bbc.co.uk/nol/shared/spl/hi/programmes/correspondent/transcripts/arafat_investiga
    ted_09_11_03.txt (last visited Sept. 8, 2011) ............................................................................ 1

Committee to Protect Journalists, http://cpj.org/killed/ (last visited Sept. 7, 2011) .................... 22

**MEMORANDUM OF LAW OF THE BRITISH BROADCASTING CORPORATION
IN SUPPORT OF MOTION TO QUASH SUBPOENA**

**PRELIMINARY STATEMENT**

This memorandum of law is submitted on behalf of the British Broadcasting Corporation ("the BBC") in support of its motion to quash the Subpoena to Testify at a Deposition in a Civil Action dated August 25, 2011 (the "Second Subpoena") issued on behalf of Plaintiffs.  This Subpoena – the second served by Plaintiffs on the BBC in a two month span – seeks a deposition witness to testify with respect to the 2003 BBC news program "Arafat Investigated" (the "Program"), accompanied by certain  non-broadcast information ("Outtakes"). [1]

The BBC, headquartered in England, is a total stranger to this litigation and the acts on which it is based. Plaintiffs assert some thirteen federal and state claims against the Palestinian Liberation Organization ("PLO"), the Palestinian Authority ("PA"), and John Doe defendants, seeking to recover for alleged injuries and death suffered by victims of seven attacks in or near Jerusalem, Israel in 2001, 2002 and 2004. None of those acts are the subject of the BBC Program, and one alleged attack postdated the broadcast.

The Second Subpoena should be quashed on numerous grounds.  First, there is no BBC witness with knowledge of the subpoenaed issues, or responsive outtakes, in the United States. Compliance with the Subpoena would require a BBC witness to travel more than 100 miles from where the witness resides, is employed or regularly transacts business in person to testify and produce documents controlled abroad.  As such, the Second Subpoena violates the territorial

---

[1] A copy of the Program previously was provided to Robert Tolchin, counsel for Plaintiffs. Declaration of Louise Sommers dated September 6, 2011 ("Sommers Decl.") ¶2; Declaration of Nicola Cain dated September 6, 2011 ("Cain Decl.") ¶3.  A transcript is publicly available online at the BBC website. Sommers Decl. ¶2; See BBC News – Programme – Correspondent, "Arafat Investigated," http://news.bbc.co.uk/nol/shared/spl/hi/programmes/correspondent/transcripts/arafat_investigated_09_11_03.txt (last visited Sept. 8, 2011)

restrictions of Fed. R. Civ. P. 45.

Second, the testimony and unpublished documents sought by the Second Subpoena are protected from compelled disclosure by the privileges granted journalists' news gathering information. These protections are intended to guard against the unfettered access Plaintiffs seek to sift through non-broadcast BBC information in an attempt to find something, yet unidentified, to assist their federal and state causes of action.  At a minimum, as merit discovery in this case has just recently commenced, Plaintiffs  will be unable to show – as they must – that they attempted to obtain the underlying information sought from alternate sources, and could not do so.

Third, the information sought in the BBC's non-broadcast information is, in any event, incompetent hearsay and inadmissible in this case.

Accordingly, the Second Subpoena is invalid and seeks inadmissible, burdensome and/or privileged information. The BBC's Motion to Quash should be granted.

## BACKGROUND

The BBC is a British public service broadcaster. Its independent news programs are among the many types of programming it provides. In 2003, the BBC broadcast the Program "Arafat Investigated," as part of its news mission to prepare and disseminate information of public concern. Declaration of Stephen Mitchell dated September 6, 2011 ("Mitchell Decl.") ¶1.

The BBC is a stranger to Plaintiffs' litigation.  Plaintiffs seek to hold Defendants PLO and PA liable for injuries and death allegedly sustained during seven attacks that allegedly occurred in Jerusalem, Israel during 2001, 2002 and 2004.  Complaint ¶¶126-222. "Plaintiffs assert causes of action for international terrorism...and various state law claims including wrongful death, pain and suffering, battery, assault, loss of consortium, negligence, and infliction

of emotional distress." <u>Sokolow v. Palestine Liberation Org</u>., No. 04 Civ 00397 (GBD), 2011

WL 1345086, at *1, 2011 LEXIS 36022, at *5 (S.D.N.Y. Mar. 30, 2011).

Despite the extended pendency of this litigation, merit discovery has only recently

commenced and will not be concluded until December 2012. See June 24, 2011 Scheduling

Order [Dkt #131].

**The BBC Program**

The Program was broadcast on November 9, 2003. It was reported by a Middle East

correspondent, and was focused on the isolation at that time of former Palestinian leader Yasir

Arafat ("Arafat") by Israel and the U.S., and Arafat's status and relationship to the Palestinian

people. There were a number of persons interviewed in that program, among them persons who

identified themselves, for example, as various officials, academics, militants and/or residents of

the area. None of the alleged attacks in issue in this case were subjects of, or mentioned in, the

BBC Program, and at least one such alleged attack postdated the 2003 Program.  Declaration of

Itai Maytal dated September 6, 2011 ("Maytal Decl.") ¶¶4-5.

**The First Subpoena**

By Subpoena dated July 8, 2011 (the "First Subpoena") served on the BBC in Manhattan

but issued out of the Eastern District of New York, Plaintiffs noticed the deposition of the BBC

for July 26, 2011 in the Eastern District and tried to compel the same documents sought here.

Sommers Decl. ¶3 and Ex. 1.[2]

This Subpoena raised issues which counsel for the BBC unsuccessfully tried to resolve

with counsel for Plaintiffs in several exchanges. Plaintiffs' counsel refused the BBC's request to

---

[2] Although the outtakes sought in the First Subpoena were originally broader than those sought here,
Plaintiffs agreed to narrow them to those that showed Ata Abu Rumaileh ("Rumaileh") and Zakaria
Zubaidi ("Zubaidi"), two of the interviewees shown in the Program.  Sommers Decl. ¶10.  These are the
same outtakes sought by the Second Subpoena.

substitute a subpoena issued from this Southern District or to transfer the subpoena here so that

the subpoena issues could be heard by the Court most familiar with the privilege, relevance and

admissibility issues implicated. Plaintiffs' counsel was aware that the BBC considered the

subpoenaed outtakes protected by the journalist privilege, and believed that the underlying

information sought could be obtained from more direct alternate sources, most notably, the

defendants in this case. There seemed sufficient time for Plaintiffs to pursue those more

appropriate alternative sources. Sommers Decl. ¶¶4-9.

Any BBC witness knowledgeable about the Topics resides or works in the United

Kingdom, such that no witness could appear in Brooklyn on the noticed date. Cain Decl. ¶5,

Mitchell Decl. ¶6. Despite being informed of this, Plaintiff's counsel insisted that the BBC

produce a witness and refused the BBC's request for an adjournment of the noticed date or

extension of time to object or move so that there could be an orderly, rather than emergency

motion schedule in the Eastern District, as that was the issuing court. Since BBC's counsel was

advised of that refusal two business days before the arbitrary deposition notice date, the BBC

was required to file a motion addressed to the Subpoena the next business day. Sommers Decl.

¶¶5, 10.

Once the BBC's motion to quash the subpoena, or to transfer it to this case, was filed in

the Eastern District of New York – thus commencing a case there – the BBC was compelled to

engage in a wasteful and costly fire drill.  Plaintiffs made an ultimately fruitless motion to strike

the BBC's motion, or have it heard by the Magistrate Judge of Plaintiffs' choice. The Court in

the Eastern District rebuffed Plaintiffs' tactics and denied their motion, ordering the parties to

agree on a briefing schedule for the BBC's motion to quash.  Unhappy with the result of their

attempt to forum shop the BBC subpoena issues to the Eastern District, Plaintiffs forum shopped

their way back out.  Sommers Decl. ¶¶11-12 and Ex. 2.

Plaintiffs' counsel asked the BBC to drop its argument based on Rule 45's territorial restriction if the deposition was conducted in London. When the BBC could not agree to do so, counsel then announced that he would be serving a second subpoena on the BBC, this time from the Southern District – even though he had earlier rejected the BBC's request to be here, causing the BBC to engage in costly, wasteful motion practice in the Eastern District. Counsel also refused the BBC's request to simply agree to the BBC's existing motion insofar as it requested a transfer to the Southern District, so that the BBC would not have to start all over again here, with deadlines and a new motion. Sommers Decl. ¶¶13, 14.

Instead, Plaintiffs' counsel attempted to extract conditions from the BBC, and then claimed to be concerned that on any appeal to the Second Circuit, the BBC, which had requested the transfer, nevertheless might argue that the Southern District would lack subject matter jurisdiction over the motion. Then, without disclosing to the Court in the Eastern District that Plaintiffs intended to serve a second subpoena on the BBC, Plaintiffs' counsel instead unilaterally represented to that Court that "[h]aving given careful thought and consideration to certain arguments raised by the defendants [sic] in their motion, we have decided to withdraw the subpoena..." and "the BBC's motion is now moot." The Court immediately denied the BBC's motion as moot. Plaintiffs then served a Second Subpoena on the BBC. Sommers Decl. ¶15, 16 and Exs. 3 and 4.[3]

---

[3] Rule 45 affirmatively requires that "a party or attorney responsible for issuing or serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" – especially if the recipient is a non-party – and that the court must enforce this duty. Fed. R. Civ. P. 45(c)(1). Similarly, Rule 45(c)(3)(A)(iv) mandates a court to quash or modify a subpoena that "subjects a person to undue burden." Here, Plaintiffs' counsel did just the opposite of what the Rules require: he engaged in a series of purposeful maneuvers for tactical gain, unnecessarily involving two courts and two substantively identical subpoenas, burdening the BBC to engage in wasteful and costly motion practice in another district with respect to the first subpoena – later unilaterally withdrawn – only

**The Second, and Instant, Subpoena**

The Second Subpoena was served on the BBC on August 9, 2011 and noticed the deposition of the BBC for August 25, 2011. Like the First Subpoena, it requested that the witness bring copies of the same documents requested in the First Subpoena: the Program, as well as unpublished

> authentic, complete and unedited audiovisual copies of all audiovisual recordings recorded during the preparation and making of the Program and/or for the purpose of preparing and making the Program that include audio and/or video recordings of Ata Abu Rumaileh and/or Zakaria Zubaidi, including all such recordings which were not ultimately included in the Program as broadcast ["collectively, "Outtakes"].

Cain Decl. ¶¶2, 3 and Ex. A, Sommers Decl. ¶2. The Second Subpoena also commands the BBC to designate a testifying witness regarding four topics: "the authenticity" of the Program and Outtakes (referred to in the Second Subpoena as the "Recordings"), the manner in which they were copied to produce copies to Plaintiffs; the place and manner in which the Recordings were stored, held and maintained, and the manner in which the BBC generally stored, held and maintain these Recordings and other "similar in origin" during specific periods of time (collectively, the "Topics"). Cain Decl. ¶4 and Ex. A. [4]

---

to have to re-commence its efforts here with the second.  All of this could have been avoided at the outset had Plaintiffs' counsel issued the first subpoena out of this court, thereby complying with his duty, but he refused to do so.  The Second Subpoena should be quashed, regardless of whether counsel acted in good faith in maneuvering.  See generally Liberty Mut. Ins. Co. v. Diamante, 194 F.R.D. 20, 23 (D. Mass. 2000)("Subpoena may be issued in 'good faith' but still may be improper if the party serving the subpoena has failed to 'take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena.'"); Georgia-Pac. LLC v. Am. Int'l Specialty Lines Ins. Co., 2:08-CV-950, 2010 WL 420036, at *2, 2010 U.S. Dist. LEXIS 14220, at *4 (S.D. Ohio Jan. 29, 2010)("So long as the duty to avoid imposing an undue burden is violated, it is of no consequence that the party or attorney who served the subpoena acted in good faith.")

[4]The efforts engaged in by counsel for the BBC to resolve the subpoenas with counsel for Plaintiffs are set forth in this Declaration of Louise Sommers which is incorporated herein by reference.

**Effects of Disclosure**

Disclosure of any of the unpublished information from the Program would unduly hamper the BBC's ability to function in its independent editorial role. Among other things, were the BBC drawn into private disputes as a result of favorable or unfavorable coverage of persons and topics on which it reports, its impartiality among sources would be compromised. This would in turn impair the BBC's ability to report on important stories. Even non-confidential sources, as well as viewers, expect journalists to be independent chroniclers of events, not investigative functionaries for private litigants and the government. Mitchell Decl. ¶2.

BBC sources who agree to appear on camera have a reasonable expectation that use of their footage will be subject to BBC's independent editorial judgment and will not be taken out of context, passed on to third parties or employed outside of the broadcast in which they agreed to participate.  If the BBC's judgment to publish, or not to publish, certain footage was wrested from the BBC by private litigants for private purposes, that expectation would not be met, sources would be far less inclined to speak candidly with BBC reporters, if at all, and significant news relationships could be impaired. Mitchell Decl. ¶3.

This issue is of particular concern here where war reporting is involved.  Disclosure of the nature sought by Plaintiffs would jeopardize the security of BBC reporters who must cover stories in war zones or other areas of armed conflict, like the Middle East, and depend upon their neutrality for access and safe passage back to their bureaus. Individuals in conflict zones would be more likely to question the neutrality of BBC reporters if they thought reporters would routinely be called to testify against them or their associates in litigation later. Mitchell Decl. ¶4.

Compulsion under the subpoena also unduly disrupts the BBC's newsgathering activities in general. Given the breadth of topics the BBC covers internationally, if its reporters, editors

and managers were required to provide unpublished evidence in any civil matter merely because of a topic or subject the BBC covered, the BBC would be spending its time and attention as professional witnesses, rather than as professional journalists.  Mitchell Decl. ¶5.

**Location of Potential Witnesses and Documents**

No potential BBC witness knowledgeable about the Topics listed in the Second Subpoena resides, works or regularly transacts business in person in New York and any witness with any such knowledge would have to travel more than 100 miles from his or her residence, place of employment or place where he or she regularly transacts business in person in the United Kingdom in order to comply with the Second Subpoena. Mitchell Decl. ¶6; Cain Decl. ¶¶ 5,7.

It may be the case, moreover, that the necessary knowledge does not reside in one person, but that more than one witness would be needed to respond to all the Topics. In that case, the Second Subpoena poses a double burden as it would also be extremely disruptive to the business of the BBC to have more than one (much less, one) of its employees distracted by compelled testimony in a foreign case in which the BBC is a stranger. In any event, the only individuals from the BBC with knowledge of the Topics in the Second Subpoena are based in the United Kingdom. Cain Decl. ¶¶ 6, 7.

Likewise, no material responsive to the Second Subpoena is located in the United States. The requested material is controlled by the BBC in the United Kingdom. Cain Decl. ¶8.

## ARGUMENT

### THE SECOND SUBPOENA SHOULD BE QUASHED

## I.  THE SECOND SUBPOENA VIOLATES THE TERRITORIAL LIMITS OF RULE 45

The authority to serve a subpoena under Rule 45 is expressly made "subject to the

provisions of Rule 45(c)(3)(A)(ii).[5] That section provides that on timely motion, "the issuing court *must* quash or modify a subpoena" that

> requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed or regularly transacts business in person ...

(emphasis supplied).   This is the case here. Any witness for the BBC knowledgeable about the subpoenaed issues would be required to travel more than 100 miles to testify in the Eastern District. As there is no modification of the subpoena within the court's power that could cure this violation, Rule 45 is mandatory that the Second Subpoena must be quashed.

The territorial restriction of Rule 45 was included "to protect [non-party] witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest." In re Edelman, 295 F.3d 171, 178 (2d Cir. 2002)(*citing* Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56, 62 (S.D.N.Y. 1998)). See also The Nissan Fire & Marine Ins. Co., Ltd v. Fortress Re, Inc., No. 1:02CV00054, 2002 WL 1870084 at *3, 2002 U.S. Dist Lexis 14928, at *9 (S.D.N.Y. Aug 14, 2002)(same).  Its "goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, *not the legal entity for whom those human beings work*." Price Waterhouse LLP v. First American Corp., supra, 182 F.R.D. at 62 (emphasis supplied). See also Fed. R. Civ. P. 26(c)(protects potential non-party deponents from burdensome travel "by authorizing a district court to modify or even quash a subpoena in order 'to protect [the] party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" In re Edelman, supra, 295 F.3d at 178).

It matters not whether the corporate deponent named and served, particularly a nonparty

---

[5] Fed. R. Civ. P. 45(b)(2) provides:

(2) Service in the United States. *Subject to Rule 45(c)(3)(A)(ii),* a subpoena may be served at any place: (A) within the district of the issuing court.... [Listing other places][emphasis supplied].

like the BBC, is itself subject to jurisdiction in the issuing District, or would be required under

Fed. R. Civ. P. 30(b)(6) to produce either a knowledgeable or educated witness in the district if it

were a *party* to this action. Cates v. LTV Aerospace Corp., 480 F. 2d 620, 623-24 (5th Cir.

1973)("A person designated by an organization pursuant to Rule 30(b)(6) could not be required

to travel outside the limits imposed by Rule 45(d)(2)");  Stanford v. Kuwait Airlines Corp., No.

85 Civ. 0477, 1987 WL 26829, at *3, 1987 LEXIS 10981,  at *7 (S.D.N.Y. Nov. 25,

1987)(corporation in district not required to gather information for testimony in district, rather

"case law and logic dictate that the [territorial] proscriptions of [Rule 45] also apply to individual

employees who are the subject of a subpoena served upon a corporation.").

Rule 45's territorial restrictions trump Rule 30(b)(6) in this regard.  "Any contention that

a subpoena served pursuant to Rule 30(b)(6) need not comply with the requirements of Rule

45(c) would "fly in the face of the intent of Rule 45( [c] ) which is to 'protect nonparty witnesses

from being inconvenienced by being compelled to travel inordinate distances to have their

depositions taken.'" Price Waterhouse LLP v. First American Corp., supra, 182 F.R.D. at 62

(internal citation omitted).

If the witness knowledgeable about the matter for the corporation would be required to

travel more than 100 miles from where he or she lives or works or "regularly transacts business

in person" in order to comply and testify – regardless of whether the corporation is in the issuing

District – the Subpoena should be quashed. See, e.g., Stanford v. Kuwait Airlines Corp., supra

(court denied motion to compel deposition of corporation doing business in New York to

produce as knowledgeable employees lived, worked or personally transacted business more than

100 miles away); Price Waterhouse LLP v. First American Corp., supra (court granted motion to

quash subpoena on jurisdictionally present British corporation because witnesses with

knowledge lived and worked more than 100 miles away). <u>See</u> <u>also</u> <u>St. Paul Fire & Marine Ins.</u>

<u>Co. v Royal Ins. Co.</u>, No. 91 Civ. 6151 1993 WL 267347, at *1-*2, 1993 LEXIS 9415, at *2

(S.D.N.Y. July 12, 1993)(subpoena quashed on corporate employee who would be required to

travel more than 100 miles from home and work).

Here, the BBC was served at its news desk in Manhattan. However, it has no employee

who is knowledgeable about the authenticity of the Program, the Outtakes, or the manner in

which the Recordings and other BBC records were copied, stored or maintained during the time

periods requested – in short, the matters Plaintiffs intend to elicit at deposition – in Manhattan, in

the Eastern District, or indeed within 100 miles therefrom. The only individuals from the BBC

with knowledge of the Topics in the Second Subpoena are based in the United Kingdom.

Moreover, the BBC does not maintain in the United States any requested document that would

be responsive to the Second Subpoena; those are controlled from the U.K. Cain Decl. ¶¶5-8;

Mitchell Decl. ¶5.[6] Given that all potential witnesses and relevant documents are located outside

the United States, it does not matter that the BBC is subject to service here.  <u>Stanford v. Kuwait</u>

<u>Airlines Corp.</u>, <u>supra</u>; <u>Price Waterhouse LLP v. First American Corp.</u>, <u>supra</u>; <u>Laker Airways Ltd.</u>

<u>v. Pan Am. World Airways</u>, 607 F. Supp. 324, 326 (S.D.N.Y. 1985)(subpoena duces tecum on

non-party witness vacated where documents and records designated in it were regularly

maintained within the United Kingdom and not within the judicial district).

Based on the circumstances present here, and the fact that the foreign-controlled

documents are requested only as an adjunct to the deposition, the Second Subpoena should be

---

[6] As well, the necessary knowledge may not reside in one person, but may require more than one person's
knowledge to respond to all the Topics. In that case, the Subpoena poses a double burden as it would also
be extremely disruptive to the business of the BBC to have more than one (much less, one) of its
employees distracted if the BBC were compelled to give  testimony in a foreign case to which the BBC is
a stranger. Cain Decl. ¶6.

quashed in its entirety.  The Court lacks the power to change the location or to compel testimony of a foreign witness abroad. Price Waterhouse LLP v. First American Corp., supra, 182 F.R.D. at 63-64 and n.7 (where knowledgeable corporate employees are outside the United States, court lacks the power to modify the subpoena to change the location to a foreign city or to require witness to submit to a deposition in a foreign country). Even so, international comity-based considerations counsel that the Court refrain from compelling testimony under circumstances involving foreign witnesses. See generally Ings v. Ferguson, 282 F.2d 149, 152 (2d Cir.1960)("Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures.").

Since the Second Subpoena violates the territorial limitations of Rule 45, it should be quashed.

## II.  THE SECOND SUBPOENA SEEKS PROTECTED PRIVILEGED INFORMATION

Fed. R. Civ. P. 45(c)(3)(A)(iii) provides that "on timely motion, the issuing court must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies...." (emphasis supplied). As shown, that is the case here.

The Second Subpoena requires documents and testimony protected from disclosure by the journalist privilege. Those protections are granted by the New York Shield Law, N.Y. Civ. Rts. L. §79-h, the New York Constitution, the First Amendment and/or federal law in litigations premised on state or federal claims.[7]

---

[7] Where subpoenaed information is sought for state claims, New York state law governs the privilege issue.  Fed. R. Evid. 501 ("in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness... shall be determined in accordance with State law"). See also In re NBC (Krase v. Graco Children Products, Inc.), 79 F.3d 346, 351, 24 Media L. Rep. 1599 (2d Cir. 1996) (New York state law governs reporters' privilege where production required in New York from broadcaster with office in New York).

Where evidence is sought for both federal and state claims, the Second Circuit has applied the federal privilege, recognizing however, that the applicable state law should be considered as well. von Bulow by Auersperg v. von Bulow, 811 F.2d 136 (2d Cir. 1987)("in examining the boundaries of the journalist's privilege, we may consider also...New York's so called "Shield Law...Although we are not bound to follow New York law, neither should we ignore New York's policy of giving protection to professional journalists"). Accordingly, should Plaintiffs establish that the BBC Outtakes they seek are relevant to both federal and state claims, the New York Shield Law will nevertheless remains applicable, alongside the federal privilege, to guide the Court. Under both set of privileges, the Outtakes are protected from compelled disclosure.

The Court of Appeals for the Second Circuit has recognized that "the pivotal function of reporters to collect information for public dissemination" and "the paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters" require protection of the ability of press and broadcasters to freely collect, edit and publish and broadcast news, unhampered by subpoenas seeking their newsgathering materials:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties... . Incentives would also arise for press entities to clean out files containing potentially valuable information...And permitting litigants unrestricted, court-enforced access to journalistic sources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

Gonzales v. NBC, Inc., 194 F.3d 29, 35 (2d Cir. 1999).

13

The New York Court of Appeals has raised the same concerns as the Second Circuit about reporters becoming enmeshed in litigation that arises from the events that they cover: "The autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes were routinely permitted. ...The practical burdens on time and resources, as well as the consequent diversion of journalistic effort and disruption of newsgathering activity, would be particularly inimical to the vigor of a free press." O'Neill v. Oakgrove Construction, Inc., 71 N.Y.2d 521, 526-27, 523 N.E.2d 277, 279, 528 N.Y.S.2d 1, 3 (1988).

Whether in the form of testimony or documents, the information sought by the Second Subpoena was gathered in connection with a news program broadcast to the public. The wholesale exposure of its unpublished information to litigant scrutiny for private purposes, regardless of how sympathetic those purposes might be, would indeed "burden the press with heavy costs of subpoena compliance" – including, as here, costs of safety and security of journalists in war zones – and "impair its ability to perform its duties." As a broadcaster responsible for preparing and broadcasting news programming intended for the public, the BBC is entitled to avail itself of its journalistic protections to avoid these results. As shown below, Plaintiffs will be unable to overcome these protections.

Accordingly, disclosure of the subpoenaed information should not be compelled. Instead, the Second Subpoena should be quashed in its entirety.

## A. New York's Shield Law Protects the BBC's Outtakes and Testimony From Disclosure

The New York Shield Law, NYCRL § 79-h, provides that a "newscaster" and his or her news organization, here, the BBC, are protected from compelled disclosure of nonconfidential news or "the source of any such news" received "in the course of gathering or obtaining news for

publication or to be published in a newspaper...." NYCRL § 79-h(a)(6), (b), (f). [8] Plaintiffs could not meet the burden of overcoming the qualified privilege that attaches to nonconfidential news under that statute.

NYCRL §79-h (c) allows compelled disclosure of nonconfidential news only a "last resort." In re Subpoena Duces Tecum to American Broadcasting Companies, Inc., 189 Misc.2d 805, 808, 735 N.Y.S.2d 919, 921 (Sup. Ct. NY Co. 2001). It provides a qualified privilege for nonconfidential news, but that qualification can only be overcome by a "clear and specific showing" by the party seeking disclosure – here, Plaintiffs – that the information sought "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source. ..." [9]

The second prong of this test would further require Plaintiffs to show "that the claim for which the information is to be used 'virtually rises or falls with the admission or exclusion of the

---

[8] NYCRL § 79-h(f) provides that the protections so granted "shall apply to ... organization having authority over the [professional journalist or newscaster]." NYCRL § 79-h(a)(8) defines "news" as "written, oral, pictorial photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare."

[9] NYCRL 79-h(c) provides in pertinent part:

(c) Exemption of professional journalists and newscasters from contempt: Qualified protection for nonconfidential news. Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster presently or having previously been employed or otherwise associated with any newspaper, magazine, news agency, press association, wire service, radio or television transmission station or network or other professional medium of communicating news to the public shall be adjudged in contempt by any court in connection with any civil or criminal proceeding...for refusing or failing to disclose any unpublished news obtained or prepared by a journalist...in the course of gathering or obtaining news as provided in subdivision (b) of this section, or the source of any such news, where such news was not obtained or received in confidence, unless the party seeking such news has made a clear and specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source...

proffered evidence'." <u>Flynn v. NYP Holdings Inc.</u>, 235 A.D.2d 907, 908, 652 N.Y.S.2d 833, 835 (3d Dept. 1997)(citing <u>In re NBC (Krase v. Graco Children Products, Inc.)</u>, 79 F.3d 346, 351 (2d Cir. 1996)); <u>In re Subpoena Duces Tecum to American Broadcasting Companies, Inc.</u>, <u>supra</u>, 189 Misc.2d at 808, 735 N.Y.S.2d at 922. That test is "not merely whether that the material be helpful or probative, but *whether or not the defense of the action may be presented without it.*" <u>In re Subpoena Duces Tecum to American Broadcasting Companies, Inc.</u>, <u>supra</u>, 189 Misc.2d at 808, 735 N.Y.S.2d at 922; <u>Doe v. Cummings</u>, No. 91-346, 1994 WL 315640 *1, 22 Media L. Rep. [BNA] 1510, 1511 (Sup. Ct. St. Lawrence Co. Jan. 18, 1994)(emphasis supplied).

 Plaintiffs could not meet this tripartite burden here. The BBC is not a party to this case and has no personal knowledge of the facts underlying it. The Outtakes do not show or concern the alleged attacks in issue, and indeed, contain only hearsay with respect to this action. See Point III, <u>infra</u>.  Plaintiffs could not establish that their success in prosecuting this litigation "virtually rises or falls with the admission or exclusion of," and can not be presented without, those Outtakes.  As well, Plaintiffs could not show clearly and specifically, as they must, that the BBC's unpublished information is a "last resort" after exhausting all other alternatives. Indeed, on this last issue alone, there are other sources and alternatives to burdening the BBC.

 As a start, any information Plaintiffs seek regarding the PLO and PA Defendants in this case can be obtained directly from knowledgeable, first-hand sources –Defendants themselves. Yet merit discovery has only recently commenced, and depositions have yet to be taken. Surely, Plaintiffs must look to parties in their own case before seeking to burden non-parties – particularly so where compelled discovery from BBC must be a "last resort."

 The Program, presented as part of the BBC's news mission to prepare and disseminate information of public concern, focused on Arafat's isolation by Israel and the U.S. and his

relationship to the Palestinian people and unquestionably concerned matters of profound worldwide interest. The attempt by Plaintiffs to compromise the BBC and its sensitive news gathering activities, and to disrupt its vital press functions, is precisely the conduct against which the Shield Law is intended to guard.  O'Neill v. Oakgrove Construction, Inc., supra, 71 N.Y.2d at 527-29, 523 N.E.2d at 280-81, 528 N.Y.S.2d at 4-5; Matter of Beach v. Shanley, supra, 62 N.Y.2d at 249-50, 465 N.E.2d at 308, 476 N.Y.S.2d at 769.

There is no question but that disclosure of any of the Outtakes sought would do just that, and unduly hamper the BBC's ability to function in its independent editorial role. Among other things, were the BBC drawn into private disputes as a result of favorable or unfavorable coverage of persons and topics on which it reports, its impartiality among sources would be compromised. This would in turn impair the BBC's ability to report on important stories. Even non-confidential sources expect journalists to be independent chroniclers of events, not investigative functionaries for private litigants and the government. Mitchell Decl. ¶2.

Crucially, this issue has particular concern here, as war reporting is involved.  Disclosure of the nature sought by Plaintiffs would jeopardize the security of BBC reporters who must cover stories in war zones or other areas of armed conflict, like the Middle East, and depend upon their neutrality for access and safe passage back to their bureaus.  Mitchell Decl. ¶4.[10]

These are precisely the type of reasons that journalist information is protected. The subpoenaed information would be protected from compelled disclosure by the New York Shield

---

[10] The New York Court of Appeals has recognized that the free press guarantees of the N.Y. State Constitution Article I, Section 8 "independently mandates the protection afforded by the qualified privilege to prevent undue diversion of journalistic effort and disruption of press functions." O'Neill v. Oakgrove Construction, Inc., supra, 71 N.Y.2d at 528, 523 N.E.2d at 280, 528 N.Y.S.2d at 4.  Indeed, the "protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment."  Id., 71 N.Y.2d at 529 n.3, 523 N.E.2d at 281 n.3, 528 N.Y.S.2d at 5 n.3.  At a minimum then, for the reasons that Plaintiffs will be unable to satisfy their burden under NYCRL §79-h(c), they cannot meet their burden under the State Constitution.

Law and the Second Subpoena should be quashed on this ground.

**B.  The First Amendment and Federal Law Protects
The BBC's Unpublished Information From Disclosure**

As well, the non-broadcast outtakes and testimony sought is qualifiedly privileged from compelled disclosure under the governing federal law. Gonzales v. NBC, Inc., supra, 194 F.3d at 35; Krase v. Graco Children Prods., Inc. (In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.), supra, 79 F.3d at 351 (subpoena seeking outtakes quashed);  U.S. v. Grant, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176, at *9 (S.D.N.Y. Nov. 17, 2004)(subpoena for video outtakes of program shown on MTV quashed);  Carter v. City of New York, No. 02 Civ. 8755, 2004 WL 193142, at *2, 2004 U.S. Dist. LEXIS 1308, at *5 (S.D.N.Y. Feb. 2, 2004)(subpoena for deposition testimony of reporter quashed). "Whether a reporter should be required to turn over a videotape of an event or be deposed as to his direct perceptions of that event would appear to raise the identical policy issues that the court in Gonzales relied upon in finding that the qualified privilege for journalists extended to nonconfidential information." Carter v. City of New York, 2004 WL 193142, at *1, 2004 U.S. Dist. LEXIS 1308, at *2.

Although the federal privilege against compelled disclosure of non-broadcast news-related information is qualified, "Gonzales makes clear that requiring the press to surrender materials gathered in the course of doing its job is not to be done lightly." U.S. v. Grant, 2004 U.S. Dist. LEXIS 28176 at *8-*9. A party seeking to overcome an assertion of the journalist's privilege must show a "particularized need" for the information sought. Sikelianos v. City of New York (In re Subpoena Directed to the AP), No. 05 Civ. 7673, 2008 WL 2465120, at *1, 2008 U.S. Dist. LEXIS 47560, at 5-6 (S.D.N.Y. June 18, 2008). Further, the litigant "will not be granted unfettered access to 'sift through [journalists'] files in search of information supporting [his] claims,' because such access would undermine the public's perception of the press as an

independent institution and foster the view,' as the Second Circuit noted, 'that it is 'an investigative arm of the judicial system, the government, or private parties.' " <u>Id</u>. (citations omitted).

The burden of overcoming privilege rests squarely on the party seeking disclosure. <u>Gonzales v. NBC</u>, <u>supra</u>, 194 F.3d at 36; <u>von Bulow by Auersperg v. von Bulow</u>, <u>supra</u>, 811 F.2d at 141.  Where non-confidential material is involved, disclosure shall not be compelled unless the party seeking disclosure establishes that the information sought is (1) "of *likely* relevance to a *significant* issue in the case" and (2) "*not reasonably* obtainable from other available sources." <u>Gonzales v. National Broadcasting Co</u>., 194 F.3d at 36 (emphasis added). This showing should be balanced against the public interest in a free press, with disclosure compelled only where that public interest is outweighed.  <u>U.S. v. Grant</u>, 2004 U.S. Dist. LEXIS 28176, *1, 6 (S.D.N.Y. 2004).

### 1.  **The Federal Test Cannot Be Satisfied Here**

As indicated above, the BBC, a stranger to this suit, has no personal knowledge to impart that could assist this case.  Whatever information and documents the BBC acquired in the course of preparing and gathering news for the Program is neither relevant nor material to this case, nor would any of its information not be available from alternative sources.

Plaintiffs could not satisfy the test under <u>Gonzales</u> to obtain the material sought, even were it of limited relevance.  "Limited relevance" to a case is simply not "likely relevance" sufficient to satisfy the test for disclosure of nonconfidential materials.  In <u>Gonzales</u>, the issue in the underlying action was whether a deputy sheriff engaged in a practice of stopping and detaining motorists without probable cause or reasonable suspicion. The outtakes sought included a videotaped stop of a network employee by the same deputy sheriff. As the Court in

19

U.S. v. Grant noted in refusing to order disclosure of the videotape sought there, "in Gonzales, and in other cases in which the journalists' privilege was overcome, the video *contained* images of the tortious conduct or crime itself." 2004 U.S. Dist. LEXIS 28176 at *7. (emphasis supplied).

Here, however, as in U.S. v. Grant, there is no contention that the attacks in issue in this case appear in the Outtakes sought. They do not. And the testimony sought is even more attenuated. To the extent Plaintiffs seek testimony regarding the BBC's storage and maintenance of the Outtakes, as well as its practices concerning the company's storage and maintenance of recordings of other unrelated programs, there is virtually no relevance whatsoever to this case.

Nor is there any indication that the information contained in the Outakes sought is unavailable from alternative sources. To the contrary, any information related to the Defendants in this case can be obtained directly from them, yet they have yet to be deposed. Surely with discovery in their case ongoing until December 2012, Plaintiffs should attempt to obtain what they need from the parties to their case before burdening journalist nonparties. Carter v. City of New York, 2004 WL 193142, at *1, 2004 U.S. Dist. LEXIS 1308, at *4 (quashing subpoena under Gonzales test where defendant did not show that the information sought was "not reasonably obtainable from other sources").

Plaintiffs are simply on a fishing expedition, to try to determine if the BBC has anything that could possibly aid their cause. Under such circumstances, where the Plaintiffs do not know what the material they seek contains, they could not show, as they must, a "particularized need" for the information in the BBC's possession. Sikelianos v. City of New York (In re Subpoena Directed to the AP), supra. Such "unfettered access" to "sift through" the materials sought is precisely what the privilege was intended to guard against. Id. Indeed, compelling the testimony and documents sought here would risk placing the BBC in precisely the situation of burden and

jeopardy that state and federal protections granted a newscaster was intended to avoid. Gonzales v. NBC, Inc., supra.

    2.  **Policy Considerations Also Outweigh Compulsion Here**

Moreover, the likely relevance of the nonconfidential material sought and its availability from alternative sources must be balanced against the public interest in a free press.  Where the latter is not outweighed, disclosure will not be compelled. See, e.g.,  U.S. v. Grant, 2004 U.S. Dist. LEXIS 28176 at *6 ("Applying the Gonzales standard to this case, in which the prosecution seeks nonconfidential information from a non-party newsgatherer, requires balancing the likely relevance of the material sought and its availability from alternative sources against the public interest in a free press"; disclosure not compelled).

Compelling the BBC to provide outtakes and testimony, "even where there was no issue of betrayal of a promised confidence," would not only negate the precise concerns for press freedom (a "paramount public interest" in the "maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters" unhampered by subpoenas) that the Court of Appeals for the Second Circuit hoped to promote.  Chevron Corp. v. Berlinger, 629 F.3d 297, 306-7 (2d Cir. 2011)(citing Gonzales v. NBC, Inc., supra.194 F. 3d at 35.)  It would also jeopardize the autonomy of the press, forcing the BBC's professional journalists to become professional witnesses - a result that New York appellate courts have also sought to avoid. Mitchell Decl. ¶5. O'Neill v. Oakgrove Construction, Inc., supra, 71 N.Y.2d at 526-27, 523 N.E.2d at 279, 528 N.Y.S.2d at 3.  ("[A]utonomy" of the press" is jeopardized by "litigants seeking to utilize the newsgathering efforts of journalists for their private purposes.")

For the BBC, losing its independent editorial status by being forced to comply with the

Plaintiffs' Subpoena could also carry with it the loss of security for its reporters who must cover stories in war zones or other areas of armed conflict. Mitchell Decl. ¶4. The risk to journalists on dangerous assignments – a concern that permeates this motion – is not an abstract one. The Committee to Protect Journalists has identified 871 journalists killed on assignment globally since 1992, of which 34 percent were covering wars. See Committee to Protect Journalists, http://cpj.org/killed/ (last visited Sept. 7, 2011).[11] By reporting in the West Bank and Gaza on the Palestinian-Israeli conflict, the BBC was courting significant risk to the safety of their correspondents. Covering such international conflicts carries with it a particular need for the judicial protection from subpoenas from civil litigants, such as Plaintiffs – however sympathetic they may be – who seek to exploit highly risky newsgathering efforts for personal purposes. The result may be that war zone correspondents – whose reporting is crucial to the public interest – may be left with fewer forthcoming sources, and exposed to significantly more danger than other types of journalists, if they were viewed, as the Second Circuit feared in <u>Gonzales v. NBC</u>, <u>supra</u>, "as an investigative arm of the judicial system, the government, or private parties." [12]

      Plaintiffs' need for the BBC outtakes and testimony for use in this private litigation

---

[11] The Additional Protocol I to the Geneva Convention also recognizes the great danger journalists are exposed to and acknowledges their special status in conflict zones. <u>See</u> Article 79 of the Protocol Additional to the Geneva Conventions of 12 August 1949 and Relating to the Protection of Victims of International Armed Conflicts (Protocol I), 8 June 1977, 1125 U.N.T.S. 3, which sets out specific "Measures of protection for journalists."

[12] This was also the conclusion reached in a recent war tribunal prosecution in The Hague, the International Criminal Tribunal for the Former Yugoslavia. "In war zones, accurate information is often difficult to obtain and may be difficult to distribute or disseminate as well. The transmission of that information is essential to keeping the international public informed about matters of life and death." <u>Prosecutor v Brdjanin,</u> Case No.: IT-99-36-AR73.9, Decision on Interlocutory Appeal at ¶36 (Dec. 11, 2002)(during prosecution of former Bosnian Serb official, tribunal refused to compel testimony from former Washington Post reporter who had interviewed official). Sommers Decl. ¶17 and Ex. 5. In order to bring this information to the public, "[w]ar correspondents must be perceived as independent observers rather than as potential witnesses for the Prosecution. Otherwise, they may face more frequent and grievous threats to their safety and to the safety of their sources." Id. at ¶42.

cannot outweigh the broader concerns implicated here. The consequent undermining of the effectiveness of a free press in obtaining the type of vital and sensitive news reported in BBC's Program is far too heavy a price to pay for compelled disclosure in a private civil matter. The Second Subpoena on the BBC should be quashed.

### III.  THE SUBPOENAED INFORMATION CONTAINS INADMISSIBLE HEARSAY AND SHOULD NOT BE COMPELLED

It is settled that compelled disclosure will not be ordered if the information sought would not be admissible in the action.  See e.g., U.S. v. Harwood, 998 F.2d 91, 97-98 (2d Cir. 1993)(statements to reporter inadmissible hearsay and subpoena to reporter quashed); Concerned Citizens v. Belle Haven Club, No. 3:99 Civ 1467, 2004 U.S. Dist. LEXIS 27335, at *6-7 (D. Conn. June 21, 2004)(subpoena seeking journalist's deposition testimony as to the accuracy of magazine article statements was quashed as they were inadmissible hearsay; the plaintiffs failed to show that the source was authorized to speak for the defendant or on the topics under Fed. R. Evid. 801(d)(2)(C), or that the topics were matters within the scope of his authority under Fed. R. Evid. 801(d)(2)(D)).  This is the situation here.

Statements made to the BBC in both the Program and any Outtakes would be incompetent hearsay in this action. As Judge Sack recognized in his dissenting opinion in N.Y. Times Co. v. Gonzales, 459 F.3d 160, 182-183 (2d Cir. 2006)(Sack, CJ, dissenting):

> [L]ittle of what reporters learn is obtained first hand. Most is, in a broad sense, told to them by others. Most is, therefore, "hearsay" when published. When the government seeks information in a reporter's possession, there is almost always someone other than the reporter and somewhere other than the newsroom from whom or from which to obtain it. Under the qualified privilege, a lawyer – for the government or another party – engaged in litigation of any sort who thinks he or she needs information in a journalist's possession, usually can, and then, under the qualified privilege, therefore must, obtain it elsewhere.

Such hearsay should not be compelled.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Quash the Second Subpoena for testimony and

documents addressed to the BBC should be granted in its entirety.

Dated:    New York, New York            MILLER KORZENIK SOMMERS LLP
        September 8, 2011

By _____
     Louise Sommers
     David S. Korzenik
     Itai Maytal
488 Madison Avenue Suite 1120
New York, New York 10022-5702
212-752-9200
Attorneys for The British Broadcasting Corporation