```
 1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
 2

 3   ----------------------------------------X
                                            :
 4   SOKOLOW, et al,                        : 04-CV-397
                                            :
 5                       Plaintiffs,        : September 13, 2011
                                            :
 6               v.                         : 500 Pearl Street
                                            : New York, New York
 7   PALESTINE LIBERATION ORGANIZATION, et al, :
                                            :
 8                       Defendants.        :
     ----------------------------------------X
 9

10           TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
                BEFORE THE HONORABLE RONALD L. ELLIS
11                UNITED STATES MAGISTRATE JUDGE

12
     APPEARANCES:
13

14   For the Plaintiff:        ROBERT J. TOLCHIN, ESQ.
                               Berkman Law Office
15                             111 Livingston Street
                               Brooklyn, NY 11201
16

17   For the Defendants:       MARK J. ROCHON, ESQ.
                               BRIAN A. HILL, ESQ.
18                             Miller & Chevalier, Chtd.
                               655 15th Street, North West #900
19                             Washington, DC 20005

20

21
     Court Transcriber:        SHARI RIEMER
22                             TypeWrite Word Processing Service
                               211 N. Milton Road
23                             Saratoga Springs, NY 12866

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1          THE CLERK:  In the matter of Sokolow, et al v.

2  Palestine Liberation Organization, et al.

3          Counsel, please state your name for the court.

4          MR. TOLCHIN: Robert Tolchin with the Berkman Law

5  Office for the plaintiffs.

6          THE COURT: Good morning.

7          MR. HILL:  Good morning, Your Honor.  Brian Hill and

8  Mark Rochon from Miller & Chevalier in Washington for the

9  defendants The Palestine Liberation Organization and The

10  Palestinian Authority.

11          THE COURT: Good morning.  I have a series of three

12  letters beginning with a September 6th letter from the

13  defendants. Then the September -- I'm sorry, September 12th

14  letter from the plaintiffs. I also have a copy of a letter in

15  which the defendants sent me the background material which

16  included the original rule --

17          MR. TOLCHIN: The automatic disclosures, Your Honor.

18          THE COURT: Disclosures, Rule 26 disclosures.  I see

19  that the parties have three issues which they raised, the first

20  one having to do with disclosure of the contact information for

21  plaintiffs.  The second issue having to do with calculation of

22  damages, and the third issue having to do with the Rule 35

23  examinations.  As to those three issues, the only one to me

24  that seems to have need of further exposition from the parties

25  is the Rule 35.

1          With respect to the Rule 26 disclosures about

2    information about the plaintiffs, the reason for the Rule 26

3    disclosures is so that the parties can have the opportunity to

4    schedule discovery and contact the individuals.  I don't see

5    anything that indicates that the defendants have any problems

6    contacting the plaintiffs.  Obviously implicit in this is the

7    plaintiffs would be representing that any scheduling or any

8    contact with the plaintiffs would not cause any delays or any

9    problems for either the defendants or the court.  In some cases

10   actually it's probably more efficient to contact counsel than

11   it is to contact the plaintiffs given in some of the cases I

12   have.  Unless there's some practical reason to have the

13   plaintiff's contact information I don't see that this is going

14   to be a big issue.

15          MR. TOLCHIN: Your Honor, I would go a step further

16   and say that they have no business contacting my clients.

17          THE COURT: Given what I've just said, the ball is in

18   his court.  You may not have to say anything more.

19          MR. HILL: Brian Hill for the defendants for the

20   record.  I don't intend to contact Mr. Tolchin's clients.  The

21   reason I want this information is so I can conduct an

22   investigation of the claims in this case.  These plaintiffs are

23   personal injury plaintiffs.  They're making personal injury

24   claims.  I would like to have, and we've agreed to keep it just

25   in my law firm this information so I can search public

4

1    databases for background search information.  So if I need to

2    subpoena third parties and have to provide identification

3    information about which person with the name of the plaintiff I

4    want the data on I can give them an address.  I want the

5    information so I can do the sort of classic investigation we

6    would do fo a personal injury plaintiff if it's appropriate.

7          I mean, for example, some of the plaintiffs claim to

8    be permanently disabled.  We should be entitled to

9    hypothetically go interview their neighbors if they say they

10   can't do yard work and see if they ever mowed their lawn.  If

11   they mowed their lawn which I can't do now because I don't know

12   if they have a lawn and I don't know where they live.  So the

13   only purpose for getting the information is so that we as

14   defense counsel can prepare the case for trial.

15         THE COURT: So when you're going to interview their

16   neighbors will you schedule a deposition so you can take them

17   then or do their Rule 35 examinations while you're doing that?

18         MR. HILL: I hadn't thought about coordinating that

19   but if the court is going to require us to do that sort of

20   thing obviously we can coordinate those sorts of travel.  I

21   imagine there will be travel at some point anyway but that's

22   the reason we want it.  Its not because we intend to engage in

23   contacts with a represented party.

24         THE COURT: Now you may speak, Counsel.

25         MR. TOLCHIN: Your Honor is a hundred percent correct.

5

We're talking about a Rule 26 automatic disclosure.  The

purpose of that is merely to identify the witnesses and tell

the adversary how to serve a subpoena on those witnesses.

There may be other discovery devices.  There may be

depositions.  There may be other -- the defendants may get

information through other means but we're speaking now about

the automatic disclosures and for my clients knowing that they

can serve a subpoena or a demand or schedule a deposition or

anything else through my office is sufficient for purposes of

the Rule 26 automatic disclosure.

             I should say also, and I know this is not really a

legal argument, but it seems to be consistent in just about

every case I handle when I have a corporate defendant with

employees, the employees are always listed as care of

defendant's counsel.  I get responses like this every day and

it's not a substitute for bringing you a case that says this is

the way it should be but it's what I see all the time.

             THE COURT: Okay.  After the initial disclosures the

care of the attorneys is fine.  If you believe that you need

something different and you want to show a particularized need

for it for particular individuals then by all means you can

make application but as it stands now the initial disclosures

are fine.

             With respect to the question of damages, I'm not sure

the parties actually disagree on the damages.  Obviously there

6

1  are two kinds of damages.  There are the subjective kinds of

2  damages which not only are not susceptible to any particular

3  kinds of analyses, and even if you get to trial nobody is going

4  to have any particular road map to them.  It is, however,

5  required that the plaintiffs designate part of the damages are

6  going to be actual damages so that those can be itemized.  As I

7  understand the plaintiff's position is that they intend to do

8  that and the real -- the only question left is the timing for

9  doing that.

10       Did you have -- I know you said that you're pulling

11  it together.  Do you have a time estimate so that we don't have

12  this with an unspecified date?

13       MR. TOLCHIN: Your Honor, I'll answer that.  I just

14  want to clarify one word you used.  You said actual damages.  I

15  suspect you meant economic damages.

16       THE COURT: Economic damages.

17       MR. TOLCHIN: Okay.

18       THE COURT: You suspect correctly.

19       MR. TOLCHIN: Thank you.  I'll take what -- give you a

20  summary of our position one step further.  Several of our

21  clients have looked at the [inaudible] and have come to the

22  conclusion that proving economic damages may be more trouble

23  than it's worth because it's relatively small as compared to

24  witnesses or evidence that they'd have to put together.  So we

25  may actually be withdrawing for at least some of the clients

1  the claims for economic damages.  Plainly the main part of this

2  case is the non economic damages.

3       But your direct question for a time frame and I will

4  abide by any reasonable time frame that the court thinks is --

5  would be fair.

6       THE COURT: You know of course by definition anything

7  I say would be reasonable but I can't make any -- I don't know

8  what it takes for you to do it so you have to give me some time

9  frame and in fact I would have expected that you'd give

10 defendants some time frame so that they could have some idea.

11 They might agree with you.  They know the case better than I

12 do.  So throw something out there, see if it sticks.

13       MR. TOLCHIN: Three weeks, two weeks, three weeks.  We

14 have to reach out to all our clients and --

15       THE COURT: Two, three weeks.

16       MR. HILL: Two weeks is fine.  It was due in July and

17 the case has been around since 2004.  So we'd like to get this

18 as soon as possible.  Two weeks is fine.

19       MR. TOLCHIN: That was uncalled for.  We're now

20 agreeing to something else.  What was due was served. He had an

21 issue with it and now we're making it better for him.

22       THE COURT: Well, I'm not -- anything that's said now

23 in the spirit of cooperation is just sort of bouncing off me.

24 I mean you're not asking me to make any determinations and if

25 he says something which may have seemed unfair it's not

8

1  entering into my determination.  If he can live with two weeks

2  anything else shall we say is dicta.

3          MR. TOLCHIN: Sure.

4          MR. HILL: Two weeks is fine, Your Honor.

5          May I address briefly the issue of the intangible

6  damages?

7          THE COURT: Yes.

8          MR. HILL: One of the points we made in our letter is

9  this.  We've got a unitary number for intangible damages but

10 the plaintiff's initial disclosures have a foot note hanging on

11 it that's got 16 different categories of intangible damages in

12 three different time frames, past, present and future.  May we

13 have from the plaintiffs some breakdown of that into the

14 subsidiary categories or time frames because that is -- as it

15 is now I've got a number of $20 million for past damages,

16 future damages, present damages, physical injuries, emotional

17 injuries, grief, loss of consortium.  All that is together in

18 one big number.  Can we have a more detailed calculation?

19         THE COURT: I understand it's all amalgamated and I

20 don't know how good a lawyer you are but assuming that you had

21 some breakdown, what could you do with this at a trial?

22         MR. HILL: Well, I --

23         THE COURT: Because if you have these intangible

24 damages all you're going to do is you're going to lay out what

25 your past and future and your present -- how much is hurting

1  you.  Regardless of what you -- what they say, what's a good --

2  the jury still gets to decide for themselves.

3           MR. HILL: Well, for example, I might get an expert

4  witness to opine about the reasonableness of the damages that

5  are claimed but as it is now it's hard for them to do any

6  analysis on a unitary figure that has 16 component parts over

7  three time frames.

8           THE COURT: But even the claiming, I mean are you

9  suggesting -- maybe I'm mistaken here but unlike the economic

10 damages which you might do a chart on, what do you expect to

11 happen at a trial with respect to the intangible damages?

12 They're going to say --

13          MR. HILL: For example, Your Honor, I mean some of

14 these are physical injuries and there's several people that

15 were injured in a variety of different ways but it's impossible

16 for me to now tell how much of the large number that I've been

17 given is attributable to the person's physical injury which in

18 some cases appear to be very severe and in some cases are less

19 severe but we don't have any of that information now.  We just

20 got a number that includes as well as grief and physical injury

21 and a bunch of other things.

22          THE COURT: My point is assuming that you get it, how

23 does this work at a trial?  Let us say that plaintiff says $10

24 million of the $20 million is for future pain and suffering and

25 then what happens at the trial?  He doesn't -- that's not the

1  way it's going to be presented at the trial.

2        MR. HILL: Well, I assume the plaintiff is going to be

3  bound by the disclosures in terms of what they ask for at trial

4  and this will allow my experts to make determinations about

5  whether those are reasonable amounts given the type of injuries

6  that are claimed.  Right now I don't have that ability.

7        THE COURT: What is his testimony going to be at trial

8  that you're going to be addressing?

9        MR. HILL: Well, I don't know what his testimony is

10  going to be.

11        THE COURT: Right.  What are any of these plaintiffs

12  going to say about their actual intangible damages? I don't

13  think --

14        MR. HILL: Presumably they're going to testify about

15  the nature of their injuries.

16        THE COURT: Right, but they're not going to put --

17  they're not going to say I've been damaged $10 million for

18  these things, are they?

19        MR. HILL: I assume so but I assume closing argument

20  is going to involve counsel putting a number on that and I

21  would like to have the ability to develop if I can evidence

22  about the appropriateness of the amounts claimed that I just

23  lack the ability to do now given the vagueness and combination

24  of all the categories of damages into this one large category.

25  That's why I'm asking for the court to require the plaintiffs

1  to -- I recognize that you can't necessarily come up with a

2  calculation for how much the dollar value of your grief is but

3  I'd like to know how much of the $20 million claimed is

4  attributable to grief as opposed to loss of consortium, as

5  opposed to physical pain, as opposed to future disability.  All

6  of those claims are together in one number now.

7       THE COURT: And the -- is it your belief that were he

8  to answer that by putting numbers on it that that would somehow

9  restrict something at the trial?

10      MR. HILL: Well, I'm assuming that the exclusionary

11 rule of Rule 37 is going to operate such that whatever is not

12 disclosed in the initial disclosures is not going to be able to

13 be utilized by the plaintiffs at trial.  So I would like to get

14 at this point from the plaintiffs a statement of what their

15 damages are.  They have indicated that these are a sum total of

16 several categories of damages.  I would like to know what the

17 subsidiary parts that make up the total are which I think is

18 the sort of calculation that Rule 26(a)(1) contemplates being

19 disclosed.

20      THE COURT: I'm not quite tracking it although this

21 is -- well, I'm not quite figuring out how this fits in to the

22 overall discovery as opposed to the initial disclosures but as

23 for the initial disclosures we'll -- I'll separate it between

24 intangible and economic, fine.  As to the various breakdowns of

25 the intangibles, without prejudicing you -- well, without

12

1   prejudice for you to continue to explore that issue and bring

2   it up to me again, obviously you will be deposing the

3   individuals, I don't see the efficacy of it in terms of

4   getting -- I don't see the need for it in the initial

5   disclosures and frankly I'm not really seeing it in terms of

6   whether or not under Rule 26 it's going to get you -- lead you

7   to anything that would be particularly helpful at trial.

8           But I'm willing to concede that you can ask them

9   questions about it but as to the initial disclosures I'm more

10  concerned with the difference between economic and intangible.

11  As to the other intangibles we'll have -- I'm just not seeing

12  it so for now --

13          MR. HILL: Thank you, Your Honor.

14          THE COURT: -- you've made your argument.

15          MR. HILL: While I'm up may I?  I apologize for the --

16  may I go back to the witnesses just briefly on one issue?

17          THE COURT: Sure.

18          MR. HILL: One of the witnesses that the plaintiffs

19  have disclosed is neither a plaintiff nor has any affiliation

20  with the defendant.  The plaintiffs have not provided an

21  address for this individual.  We don't have his address and I

22  would just like to confirm that we're in the Rule 37 world

23  where if we don't get the address the plaintiffs are not going

24  to be able to use the witness later.  Obviously it wouldn't be

25  fair to us to not be able to subpoena the person and depose him

13

1  and then for the plaintiffs to show up with their testimony

2  later.

3            THE COURT: Okay.  Well, you're certainly entitled to

4  know whether or not they have the address of the individual.

5  Whether or not that ultimately leads to the preclusion of that

6  person depends on why they don't have the address or why they

7  have not provided it.

8            But if you -- if you understand that if you have the

9  address of anyone you have to give some -- either you have to

10  say care of counsel or provide the actual address. It may be

11  that as happens in some cases somebody lists a witness and they

12  don't know their address for different reasons.  But I've had

13  cases where both sides were trying to find a particular witness

14  and they listed that witness and everybody was hoping they

15  would find him.  But they're only required to give what they

16  have so -- who is this witness and what's the story?

17            MR. HILL: Well, according to the plaintiff's list his

18  name is Musab Hassan Youseff [Ph.] and he is listed as having

19  knowledge that would go to the liability issues in the case and

20  if he is in fact going to be a witness at trial we obviously

21  want to depose him but the only list -- the only information

22  that's listed about him is San Diego, California and I

23  obviously can't subpoena him based on that information.

24            THE COURT: Unless he's a very important person in San

25  Diego.  Obviously you are required to give the information or

14

1   the address if you have it and as I said I've seen cases where

2   both sides think that if they can find somebody to be a witness

3   and they -- I've had people saying they've got detectives

4   looking for people but if you have the address and it turns out

5   that you didn't give it you haven't honored your obligation

6   under Rule 26.

7           Do you know this -- you have no better address than

8   San Diego which I understand is a fairly big city in

9   California?

10          MR. TOLCHIN: That's correct, Your Honor.  The

11  individual at question as counsel well knows is the son of one

12  of the individuals who started the Hamas Terrorist

13  organization.  He has since defected his allegiance from his

14  father, converted to Christianity, moved to the United States.

15  In the interim he was an intelligence operative for the

16  Israelis and he's written a book that received some wide press

17  about his experiences in the Hamas.

18          THE COURT: Do you know any better address than --

19          MR. TOLCHIN: No, no.  He's obviously living -- he's

20  obviously not promulgating his address because I'm sure there's

21  some people who would like to do him harm.  They're also

22  looking for him.  We'd like to find out how to serve a subpoena

23  on him ourselves.  We hope we will figure that out at some

24  point.

25          THE COURT: The representation is they don't have any

15

1  better address but they're looking for him.

2          MR. TOLCHIN: He does have a book publisher.

3          THE COURT: Well, either of you are free to find

4  anybody that you think would have relevant information.  Your

5  obligation under initial disclosures is to the extent that you

6  have it you give the best information to the other side and

7  then we'll move on from then.

8          As to the Rule 35 examinations, let's get to the

9  issue.  First of all, I understand about half of the people are

10  in Israel.  What about the other half?  Are they at issue in

11  this -- on the question of where to get their examination?

12          MR. TOLCHIN: Your Honor, before we parse it that way,

13  coming over here today and going over these materials this

14  morning, it occurred to me, and I blame myself for not having

15  thought about this before, but there's a lot of plaintiffs but

16  not all the plaintiffs are claiming the sorts of injuries that

17  even give rise to a Rule 35 examination. In other words, there

18  are some people who were killed and physically injured.

19  There's some people who claim psychological injury or post

20  traumatic stress disorder, some kind of pathological treatable

21  psychiatric condition that's a result of the attack in

22  question.

23          But there's other people whose claims are limited to

24  grief and distress but not something we would call a doctor to

25  prove at trial.  So when -- I would have to -- I'm sorry I

1   don't -- I can't tell you an exact number right now but I think

2   that when we look at it like this the number of people who

3   actually have to be -- will have to be examined will get a lot

4   smaller than we were talking about.  Somebody's -- if

5   somebody's family member was killed or injured and he has grief

6   and distress but he hasn't gone -- it's not the sort of grief

7   and distress that puts somebody in a -- into psychiatric

8   treatment or psychological treatment I don't think a Rule 35

9   examination is in order there.  I mean it would -- if

10  somebody -- you wouldn't call a doctor to prove the case and

11  you wouldn't call the doctor to refute the case.  That would in

12  effect -- that part of the case would go in just based on the

13  witness' testimony and the discovery for that is the -- for the

14  defendant's side would be the deposition.

15          THE COURT: I don't think you can state unequivocally

16  that if you don't use a psychiatrist somebody wouldn't use one

17  to rebut what they say.

18          MR. TOLCHIN: Nothing is unequivocal, you're right.

19  Generally speaking.

20          THE COURT: But in answer to the question that I asked

21  what about the other half of the people?  Is there even an

22  issue about where they live, any Rule -- you bring up the

23  question of whether or not there ought to be a Rule 35

24  examination.  That's always going to be an issue.  I mean --

25          MR. TOLCHIN: Nineteen of the 42 plaintiffs reside in

17

1   Israel.  One resides in France and --

2          THE COURT: By my quick calculation that leaves 22

3   that don't fit that description.

4          MR. TOLCHIN: I believe they live in the United --

5   some place in the United States.

6          THE COURT: Some place?

7          MR. TOLCHIN: Right.  Not necessarily in the Southern

8   District of New York is my point.

9          THE COURT: So is this -- so my question is, is this

10  dispute only about the ones that are out of the country?

11         MR. TOLCHIN: Well, that's the biggest dispute.  I

12  mean if somebody lives in New Jersey I'll grant you that it's

13  easy to --

14         THE COURT: Even though it's a foreign jurisdiction.

15  Okay.  All right.  We're going to -- if there are issues with

16  respect to the people who are not outside the continental

17  United States then you need to make sure that there isn't -- I

18  mean I don't want to do this piecemeal.  That is, as to the

19  other 22 people if the -- if in this district and if you don't

20  have a compelling reason for doing it some place then I expect

21  that you'll make that known to the defendants so that we're --

22  we don't find out later on that there's somebody who has a

23  problem.  So you do have to ask all of the -- even the ones who

24  are here but are not if they have any issues.  I don't want

25  any assumptions about whether or not there's going to be any --

1  assuming that -- obviously if the defendants are going to do a

2  Rule 35 examinations they may agree -- they may decide not to

3  but I need to know if anybody is going to have a problem with

4  it.

5          As to the question of those that are out of the

6  country, and this one I agree in essence with plaintiff's

7  counsel in this regard, I don't think either side has made --

8  has particularly briefed the issue, either plaintiffs in the

9  nature of a protective order or the defendants in terms of

10 applying the general rule that you're in this district, you

11 get -- obviously I understand in broad terms what some of the

12 considerations are but I think this could benefit from a little

13 bit more exposition from the parties.

14         As I understand it you haven't really scheduled any

15 exams.  You have a fairly generous time for discovery but if we

16 can do this -- but I also don't see that any additional

17 submissions are going to be overly extended in terms of time.

18         MR. HILL: Your Honor, if I could just make a couple

19 of points.  I mean we're happy to brief it.  Does Your Honor

20 have a preference on who goes first?  I mean technically I

21 suppose the plaintiffs are asking for relief beyond the usual

22 rule.  I'm happy to have them go first.  And could we get a

23 schedule for doing it would be my other request.

24         THE COURT: You do raise a point about who goes first.

25 It came to me as an application from you but look, ultimately

1  you're all -- you're going to get a chance because I want to

2  make sure you all get your say but of course you go first you

3  get a rebuttal too.  So there's certain advantages.

4      MR. HILL: I'm happy to see the advantage to the

5  plaintiffs as long as we get a date by which the process

6  starts.

7      THE COURT: How long would it take you to expound on

8  your position?

9      MR. HILL: I can brief this within a week or two.  I'm

10  just going to give you what I gave you in the letter and a

11  couple of more cases probably.  The real substance of the

12  response has to come from the plaintiffs in terms of why they

13  think they can't travel and so forth.

14      THE COURT: I agree with you on that.  So why don't we

15  for the sake of uniformity, why don't we go ahead and make it

16  two weeks that way you won't be -- and then -- are you going to

17  have some problems in a response?

18      MR. TOLCHIN: Your Honor, I was just going to ask for

19  a little more time, the reason being we have -- we have a lot

20  of other deadlines coming up plus we have a lot of Jewish

21  holidays coming up.

22      THE COURT: That's why --

23      MR. TOLCHIN: And these exams are certainly not coming

24  up any time soon because I can't imagine --

25      THE COURT: But he's the one going first.  So it's his

20

1  two weeks.

2          MR. TOLCHIN: Oh, I thought you meant --

3          THE COURT: You have to pay attention here.  He's

4  going first in two weeks.  Then I turn to you okay -- that's

5  why I was saying trying to coordinate because I know you're

6  trying to do something in two weeks for him.  I figured that

7  way you can -- you won't -- even if he did it in a week you're

8  still going to be doing stuff.  So I figured make it two weeks.

9  It will give him extra time and by that time you will have

10 figured out your obligations with respect to the initial

11 disclosures and then you can turn your attention to this.

12         MR. TOLCHIN: The only request I would have is they

13 seem long as we stand here.  Could I have until the end of

14 October to respond?  We have -- I'll be away for a week on

15 depositions in another case and we have about ten days of

16 Jewish holidays in there and there's a lot of plaintiffs to

17 coordinate with to get these answers.  Until they depose the

18 plaintiffs they're not doing a Rule 35 examination.

19         THE COURT: The short answer is the end of October is

20 not unreasonable with the proviso that I expect it to be both.

21 I mean you're not going to get another bite at the apple.

22         MR. TOLCHIN: For sure.

23         THE COURT: You're right, if you're talking about 20

24 people and there's some correspondence issues I think

25 ultimately I trust that the defendants would agree that they'd

21

1  rather have comprehensive answers than something which just

2  creates more problems.  Then they'll get an opportunity to

3  reply.

4         MR. HILL: Within the normal time would be fine for

5  our reply.

6         THE COURT: Two days.

7         MR. HILL:  Two days for normal time?

8         THE COURT: No.

9         MR. TOLCHIN: For discovery of motion.

10        MR. HILL:  A week would be great.

11        THE COURT: A week is fine.  It could have been normal

12  for me.  You don't know -- you say normal but a week is fine.

13  So sometime mid November.  To put actual dates on it it would

14  be September 27th, October 28 and then November 4th.

15        MR. HILL: Your Honor, while I'm up and at the risk of

16  going back to an issue again, something Mr. Tolchin just said

17  is a little distressing and it has to do with the nature of the

18  damages the plaintiffs are claiming.  As Your Honor will recall

19  he said some of them are not claiming a psychological injury.

20  He wrote me a letter on August 14th where he said all the

21  plaintiffs are claiming damages for emotional and mental pain,

22  grief, anguish and distress and psychological injury, trauma

23  and disabilities.  Respectfully, and I know Your Honor has

24  already ruled, but this really just point out why I need the

25  detailed breakdown of the intangible damages because apparently

22

1  even though Mr. Tolchin told me in mid August that some of

2  these folks are claiming these injuries, based upon the basis

3  on which I decided I needed to Rule 35 exams he's now

4  suggesting that maybe they are.  So again I just point out why

5  we need this information.

6            THE COURT: Well --

7            MR. HILL: It would have avoided this whole

8  miscommunication about who needs an exam.

9            THE COURT: I assume that his representation was that

10 to the extent that some of the people are going to pull back on

11 that representation that will benefit everyone.  Once he's made

12 that representation -- if he says some people have decided that

13 it's not worth the trouble to claim certain kinds of damages if

14 he's going to say -- I assume that part of what he's going to

15 do is he's going to indicate whether or not the individuals

16 have been seeing a professional or they're just going to be

17 claiming run of the mill psychological damages then that will

18 be helpful in all of us in determining what needs to be done

19 with respect to those particular plaintiffs.

20            As I stated to him, regardless of whether or not

21 they're going to be run of the mill that doesn't subscribe what

22 you get to do about it.

23            As to the breakdown, when you see what he's produced

24 and when it's all sorted out, as I said, you can still make

25 further application but as to the initial disclosures we stand

1   where I stood in the beginning.

2          MR. HILL: Thank you, Your Honor.  May I -- if we're

3   done with the Rule 35 issue, two other minor items that we

4   discussed in preparation for today.  I've discussed it with Mr.

5   Tolchin but not yet with the court.

6          One of them is we appear to be in agreement that we

7   need some sort of confidentiality order to cover material

8   that's going to be produced in the case.  We're, however, for

9   whatever reason having trouble agreeing on one.  I proposed one

10  to the plaintiffs on July 1st and while I had heard back from

11  Mr. Tolchin that it's not acceptable I haven't gotten a

12  counterproposal and I haven't got a redline and I just ask the

13  court to maybe set us on a schedule so we can either agree on a

14  confidentiality order or submit a dispute to Your Honor so that

15  this issue doesn't linger and delay production from parties or

16  non parties.

17         THE COURT: How much time do you think you -- July 1st

18  is a long time.

19         MR. TOLCHIN: Your Honor, we responded.  The order

20  they proposed sought to make confidential materials

21  confidential even at trial which is just absurd.  It doesn't

22  work that way because trials are public.

23         THE COURT: But you said you responded?

24         MR. TOLCHIN: We told him it's not acceptable.  We had

25  a problem -- we've had other cases --

1          THE COURT: When you say it's not acceptable, did you

2    have a counterproposal or you just said it's not acceptable?

3    I'm not sure.

4          MR. TOLCHIN: We --

5          THE COURT: Did you redline it?

6          MR. TOLCHIN: We did not redline it because it's

7    overall -- it's a non starter.  We have -- they have a

8    [inaudible] for making an onerous lengthy involved complicated

9    confidentiality order that it's just not a place to start.

10   What would be a place to start would be, for example, Judge

11   Rakoff's has posted on his -- with his individual rules a

12   proposed confidentiality order, a model confidentiality order,

13   simple, standard.  The particular concerns that we have

14   obviously whatever comes out -- when it comes to trial

15   confidentiality is off.  Whatever you put in evidence becomes

16   public.

17          The problem we've had in the past is they seem to

18   want to designate everything they produce as confidential and

19   obviously by using the word everything I'm exaggerating but

20   great deals of material.  Then they seem to want us to -- if we

21   don't want it to be confidential they want to put the burden on

22   us to prove why every piece of paper shouldn't be confidential

23   and the procedure that we would prefer and I think is a lot

24   more reasonable, particularly considering that these cases --

25   that this case has -- is a very -- is a case of serious public

1  interest.  If they want to designate something as confidential

2  fine but if we -- if we send them a letter saying we question

3  this designation the burden of proof should shift to them to

4  show us why it's confidential or to seek a ruling from the

5  court.

6       THE COURT: Even granting everything that you just

7  said that doesn't answer the question about procedurally why

8  you have -- why you don't have a confidentiality agreement or

9  if somebody hasn't made an application to me.  If you have a

10  proposal to -- a counterproposal you send it to them or you

11  tell them what it is and if you disagree then you want to make

12  an application to me.  If you have competing confidentiality

13  agreements you submit it to me and I'll decide which one if any

14  with or without modification seems appropriate but -- you have

15  to make some progress.  It can't be just what you've done is

16  unacceptable.

17       MR. TOLCHIN: My general perspective is I don't like

18  confidentiality orders.  I think they're abused.  I think

19  they're used way too much and you wind up with things being

20  designated confidential that aren't in the slightest

21  confidential but then creates a headache every time you file a

22  motion with an exhibit.  You have to file it under seal.

23       THE COURT: That's great.  You can tell it to your

24  class when you talk about procedures in federal court but

25  they -- if you cannot agree then it's up to the court to

26

1  determine whether or not it's appropriate and what the nature

2  of the confidentiality agreement will be.

3          So if your position is that you don't think there

4  should be any and they think there should and they can submit

5  what they want. If you have a counterproposal I'll deal with

6  that also but I don't disagree with you that confidentiality

7  agreements create a lot of problems but they also prevent a lot

8  of problems and they get cases moving.  There are things that

9  happen with confidentiality agreements which wouldn't happen in

10 the absence of them.  If you think they're being overly used or

11 if you think somebody is over designating, most of the

12 confidentiality agreements have a provision for that.  Work

13 this out.

14         I understand that you have things to do in the next

15 couple of weeks but I don't see why this should take more than

16 three weeks.  You talk it over.  If you can't come up with an

17 agreement you can -- the defendants can present it to me as a

18 request for a protective order or you can agree on procedure

19 where you submit competing -- you can agree on much of it and

20 submit to me what you disagree with on.  It's really up to you

21 how you want to do it. It does seem to me that -- it seems

22 rather --

23         On the one hand you as plaintiff's counsel are saying

24 that you think confidentiality agreements are over used but

25 almost everything that we've discussed today had to do with you

1  keeping stuff confidential.  So you can reconcile those notions

2  but it seems to me that implicit in the discussions that we've

3  had today is that either one side or the other is going to want

4  something in this case not to be broadcast and made public

5  because of whether or not you think it's security or whatever

6  or somebody thinks it is.  So if you don't have a

7  confidentiality agreement in place I don't know how you're

8  going to deal with that, whether it's documents or names or

9  people or addresses.  You have to have some way to deal with

10 it.

11          So I'd say you have three weeks.  It's now September

12 13th.  If you're not able to agree by October 7th then -- well,

13 if you're not able to agree in three weeks which is October 5th

14 I want you to give me by October 7th how you want to present it

15 to me.  That can be -- you can each submit to me what you think

16 is an appropriate confidentiality order.  One side could submit

17 and the other side could object.  Whatever way you want to

18 present it but it seems to me that if one thing has become

19 clear is that there's information, documents and otherwise that

20 it seems clear somebody is going to want not to have on Page 6

21 in the newspaper.

22          MR. HILL: Thank you, Your Honor. One more item if I

23 may.

24          THE COURT: Yes.

25          MR. HILL: One of the plaintiffs according to the

1    initial disclosures has some information about the identity of

2    her assailants.  This is Ms. Varda, V-A-R-D-A, Guetta, G-U-E-T-

3    T-A. It's on Page 3 of the initial disclosures. It indicates

4    that she has knowledge regarding identity of the gunman.  As

5    Your Honor knows from our prior discussions, we're not ready at

6    this point to take a deposition of Ms. Guetta about the damages

7    she sustained or her son who was injured in this attack

8    sustained.  However, we would like to as soon as possible take

9    a deposition of her to learn what information she has about

10   liability in case that engenders subsequent discovery that may

11   be overseas and so forth.

12           So I've had a discussion with Mr. Tolchin about

13   potentially bifurcating her deposition. We're willing to limit

14   the total examination to the seven hours but what we'd like to

15   do is in the relatively near future take a deposition of her on

16   the liability issues and reserve the right to come back later

17   after the damages discovery has all been produced and so forth.

18           THE COURT: Is she local?  Is there no issues about --

19           MR. HILL: I don't know, Your Honor.  I don't have the

20   address.

21           MR. TOLCHIN: I don't believe so, Your Honor.

22           THE COURT: You don't believe so?

23           MR. TOLCHIN: I didn't realize he was going to raise

24   this issue here and I have to -- I didn't memorize the

25   addresses.  I could make a phone call and check if that would

1  help you but I can't -- I don't want to make a representation

2  that's erroneous.

3      THE COURT: Well, do you have any problem with the

4  principal of having her deposition bifurcated?

5      MR. TOLCHIN: If she were here in New York, no.  If

6  she's in Israel and we all have to fly over there and hire

7  court reporters and hotels and airplanes --

8      THE COURT: Before you continue, I mean I'm not sure

9  you've discussed this.  Are you saying that with respect to

10 even this part of it you'd want to have her in person?

11     MR. HILL: Well --

12     THE COURT: Or you haven't made that determination

13 yet?

14     MR. HILL: I think I might want to have it in person

15 just based on what Mr. Tolcher has told me about the nature of

16 that identification.  Mr. Tolcher has suggested that maybe she

17 has identified a photograph of the assailant.  So I just want

18 to conduct this examination so I can find out what her

19 testimony is going to be and find out if I need to do any

20 additional discovery but I don't want to wait until we've got

21 all the damages material and done the Rule 35 exam toward the

22 end of the case.

23     THE COURT: It sounds as if there's still a number of

24 uncertainties at this point.  We don't know the -- it's hard to

25 do a balancing when I don't know what else is going on the

30

1   scale. This is probably not --

2        MR. TOLCHIN: Maybe a specific interrogatory.  We give

3   them what she knows and maybe that will help them.

4        THE COURT: Why don't you discuss -- have a further

5   discussion about all of the issues of what she knows, how she

6   knows it, how she did the identification, where she is, what it

7   would take, can it be done, a video, whatever, any number of

8   different issues and what you -- when you have all of that in

9   your minds and you think you've reached an impasse then you can

10  present your arguments to me.  I'll decide under the rules

11  balancing everything which seems to make sense.  It depends on

12  the answers to some of those questions.

13       MR. HILL: I only raised it today because we're with

14  Your Honor and I know it will ultimately take an order just

15  trying to cut through if it was possible.  I understand you'd

16  like to --

17       THE COURT: Okay.  All right.  We will -- I know we

18  have a very long discovery date although what I'm going to do

19  is I'm going to tentatively put you down for a conference in

20  November.  Unfortunately this will also require me to have my

21  law clerk call you.  So that we don't leave it totally without

22  a date I'm going to give you a date which may be subject to

23  change and that will be November 17th at ten a.m.  That way at

24  least you will put it on your calendar and if we have to change

25  it -- I don't like people leaving without a date even if the

31

1   date might change because the triggering mechanism for anybody

2   to do anything is to see a date on their calendar.  I'm just

3   like you in that regard.

4           Other than that, with respect to this last witness I

5   expect that if you do reach an impasse and you need to discuss

6   it you don't have to wait until when we have a conference.  You

7   can have -- you can contact my law clerk and we'll talk about

8   it on the phone so that we don't have to have any unnecessary

9   delays.

10          Other than that we'll be adjourned for now.

11          MR. TOLCHIN: Thank you, Your Honor.

12          MR. HILL: Thank you, Your Honor.

13                  * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

32

1      I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                          _____

6                                    Shari Riemer

7  Dated:   September 19, 2011