UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

MARK I. SOKOLOW et al.,                  :
                                         :        04-CV-00397 (GBD)(RE)
                    Plaintiffs,          :
                                         :
           -against-                     :        ECF CASE
                                         :
                                         :
 THE PALESTINIAN LIBERATION ORGANIZATION, :
 et al,                                  :
                    Defendants.          :
                                         :
-----------------------------------------------------------------------x

**REPLY MEMORANDUM OF THE BRITISH BROADCASTING
CORPORATION IN SUPPORT OF MOTION TO QUASH SUBPOENA AND
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CROSS MOTION TO COMPEL**

MILLER KORZENIK SOMMERS LLP
Louise Sommers
David S. Korzenik
Itai Maytal
488 Madison Avenue 11th Floor
New York, New York 10022-5702
(212) 752-9200
dkorzenik@mkslex.com
lsommers@mkslex.com
*Attorneys for The British Broadcasting Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.  RULE 45 PRECLUDES DISCLOSURE ....................................................................... 3

    A.  Any BBC Witness Is Beyond the Territorial Subpoena Power ....................... 3

    B.  BBC's UK-Situate Documents Are Subject to Comity Concerns ................... 6

    C.  Plaintiffs Have Not Established Relevance ...................................................... 7

    D.  Production Would Be Duplicative and Cumulative,
        and the Information Is Obtainable From Defendants and
        Other Sources without Burdening the BBC ...................................................... 9

II. PLAINTIFF HAVE FAILED TO OVERCOME
    THE BBC'S PRIVILEGE ........................................................................................ 13

    A.  The BBC's Privilege Protects Its Outtakes and Testimony
         From Disclosure .............................................................................................. 13

    B.  Plaintiffs Have Not Shown Relevance Or Particularized Need ..................... 15

    C.  Plaintiffs Have Failed to Show A Lack of Alternate Sources ........................ 16

    D.  Reasons of Policy Outweigh Compulsion ..................................................... 18

III.  THE PROGRAM AND OUTTAKES ARE NOT ADMISSIBLE ............................. 20

CONCLUSION .................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>1920 Enters. v. Hartford Steam Boiler Inspection</u>, No. 06-3780-HGB-SS, 2007 WL 1521019,  2007 U.S.
    Dist. LEXIS 40180**,** 2007 WL 1521019 (E.D. La May 22, 2007) ............................................................ 4

<u>ATSI Communications, Inc. v. Shaar Fund, Ltd</u>. 547 F.3d 109 (2d Cir. 2008)..............................................3

<u>Barber v. Page</u>, 390 U.S. 719 (1968) ...................................................................................................... 22

<u>Blum v. Schlegel</u>, 150 F.R.D. 42 (W.D.N.Y. 1993) ................................................................................ 17

<u>Bulgartabac Holding AD v. Republic of Iraq</u>, 08 CIV 6502 RJH, 2010 WL 3633501
    (S.D.N.Y. Sept. 20, 2010) ................................................................................................................. 19

<u>Bullfrog Films, Inc. v. Wick</u>, 646 F. Supp. 492 (C.D. Cal. 1986)
    aff'd, 847 F.2d 502 (9th Cir. 1988) .................................................................................................... 14

<u>Carter v. The City of New York</u>, No. 02 Civ. 8755, 2004 WL 193142, 2004 U.S. Dist. LEXIS 1308
    (S.D.N.Y. Feb. 2, 2004) ..................................................................................................................... 17

<u>Cates v. LTV Aerospace Corp.</u>, 480 F.2d 620 (5th Cir. 1973) ...................................................................5

<u>Comm-Tract Corp. v Northern Telecom, Inc.</u>, 168 F.R.D. 4 (D. Mass. 1996)..............................................6

<u>Concerned Citizens of Belle Haven v. The Belle Haven Club</u>, CIV. 3:99CV1467(AHN),
    2004 WL 3246719 (D. Conn. Mar. 22, 2004) ..................................................................................... 15

<u>Coryn Group II, LLC v. O.C. Seacrets, Inc.</u>, 265 F.R.D. 235 (D. Md. 2010)...............................................5

<u>Ecclesiastes 9:10-11-12, Inc. v LMC Holding Co.</u>, 497 F. 3d 1135 (10th Cir. 2007) ...................................5

<u>First American Corp. v. Price Waterhouse LLP</u>, 154 F.3d 16 (2d Cir. 1998) .............................................. 7

<u>Fischer v. McGowan</u>, 585 F. Supp. 978 (D.R.I. 1984) ............................................................................. 16

<u>Function Media, LLC v.  Google, Inc.</u>, 2010 WL 276093 (E.D. Tex. Jan. 15, 2010) ...................................5

<u>Gonzales v. NBC, Inc.</u>, 194 F.3d 29 (2d Cir. 1999)................................................................ 15, 17, 18, 20

<u>Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.</u>, 251 F.R.D. 534 (D. Nev. 2008) ......................................5

<u>Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.</u>, 970 F.2d 1138 (2d Cir. 1992) ..................3

<u>In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.</u>, 249 F.R.D. 8
    (D. Mass. 2008) ..................................................................................................................................9

<u>In re British Broadcasting Corporation (Sokolow v. PLO)</u> 1:11-mc-00547-NGG-JO (E.D.N.Y.)...............3

In re Application for Order (The Nissan Fire & Marine Ins. Co., Ltd v. Fortress Re, Inc.),
    No. 1:02CV00054, 2002 WL 1870084, 2002 U.S. Dist Lexis 14928
    (S.D.N.Y.  Aug 14, 2002) ........................................................................................... 6

In re Subpoena to Goldberg (Saperstein v. Palestinian Authority),
    693 F.Supp.2d (D.D.C. 2010) ............................................................................... 14,18

Krase v. Graco Children Prods., Inc.,79 F.3d 346 (2d Cir. 1996) ...................................... 15, 17

Laker Airways Ltd. v. Pan American World Airways, Inc.,
    559 F. Supp. 1124 (D.D.C. 1983) aff'd sub nom, Laker Airways Ltd. v. Sabena, Belgian World
    Airlines,731F.2d 909   (D.C. Cir 1984 .................................................................... 14

Laker Airways Ltd. v. Pan American World Airways, Inc.,
    604 F. Supp. 280 (D.D.C. 1984) .............................................................................. 13

Laker Airways Ltd. v. Pan American World Airways, Inc.,
    607 F. Supp. 324 (S.D.N.Y. 1985)........................................................................... 7

Linde v. Arab Bank, 269 F.R.D. 186 (E.D.N.Y. 2010) ...................................................... 18

Mandal v. City of New York, No. 02CIV1234(WHP)(FM), 2004 WL 2375817
    (S.D.N.Y. October 21, 2004) ................................................................................... 20

Matthias Jans & Assocs. Ltd v Dropic, 2001 WL 1661473
    (W.D. Mich. 2001)................................................................................................. 6

McIntyre v. Reynolds Metals Co., 468 F.2d 1092 (5th Cir. 1972)...................................... 22

Morgan Guar. Trust Co. of New York v. Republic of Palau, 924 F.2d 1237
    (2d Cir. 1991) ....................................................................................................... 19

Plyler v. Doe, 457 U.S. 202 (1982) ................................................................................. 14

Price Waterhouse LLP v. First American Corp., 182 F.R.D.56 (S.D.N.Y. 1998) ................... 4

Rotheram v. Manpower Demonstration Research Corp., No. 88 Civ. 0774(JMW),
    1989 U.S. Dist. LEXIS 13728 (S.D.N.Y. Nov. 20, 1989) ........................................ 21

Saperstein v. Palestinian Authority, 04-20225 Civ. (S.D.Fla.) ................................... 2, 10, 12

Saperstein v. Palestinian Authority, 09-mc-00619 (SLT)(ALC) (E.D.N.Y.) ....................... 3, 8

St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co. of Am., No. 91 Civ. 6151,
    1993 WL 267347, 1993 U.S. Dist. LEXIS 9415 (S.D.N.Y. July 12, 1993) ................. 6

Stanford v. Kuwait Airlines Corp., No. 85 Civ. 0477, 1987 WL 26829
    1987 LEXIS 10981 (S.D.N.Y. Nov. 25, 1987)..................................................... 4, 5

Strauss v. Credit Lyonnais, 242 F.R.D. 199 (E.D.N.Y. 2007)........................................... 18

Strauss v. Credit Lyonnais, 249 F.R.D. 429 (E.D.N.Y. 2008) ................................................... 18

The Nissan Fire & Marine Ins. Co., Ltd v. Fortress Re, Inc.), No. 1:02CV00054, 2002 WL
   1870084, 2002 U.S. Dist Lexis 14928 (S.D.N.Y.  Aug 14, 2002)............................................. 6

Tiffany (NJ) LLC v. Qi Andrew, 2011 WL 3135850, 2011 U.S. Dist. LEXIS 80677,
   (S.D.N.Y. July 25, 2011) ........................................................................................................... 7

U.S. v. Bahadar, 954 F.2d 821 (2d Cir. 1992) .......................................................................... 21

U.S. v. Burke, 700 F.2d 70 (2d Cir. 1983)................................................................................ 15

U.S. v. Grant, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176 (S.D.N.Y. Nov. 17, 2004) ........................ 17

U.S. v. Hubbard, 493 F.Supp. 202 (D.D.C.1979) ...................................................................... 23

U.S v. Kehm, 799 F. 2d 354 (7th Cir. 1986)............................................................................... 22

U.S. v. LeFevour, 798 F.2d 977 (7th Cir. 1986) ........................................................................ 16

U.S. v. Lopez, 777 F.2d 543 (10th Cir. 1985) ........................................................................... 22

U.S. v. Marcos, No. SSSS 87 CR. 598 JFK, 1990 WL 74521 (S.D.N.Y. June 1, 1990)............................ 16

U.S. v. Terrazas-Montano, 747 F.2d 467 (8th Cir.1984) ........................................................... 22

U.S. v. Verdugo-Urquidez, 494 U.S. 259 (1990)........................................................................ 14

Ungar v. Palestinian Authority, 715 F. Supp. 2d 253 (D.R.I. 2010)........................................... 18

W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC, 09-126-SLR,
   2010 WL 181088, 2010 U.S. Dist. LEXIS 3774 (D. Del. January 19, 2010)............................. 4

Weiss v. Nat'l Westminster Bank, 242 F.R.D. 33 (E.D.N.Y. 2007)........................................... 18

**Statutes and Rules**

Fed. R. Civ. P. 25 (a) ................................................................................................................. 8

Fed. R. Civ. P. 26(a)(1)(A) ...................................................................................................... 8

Fed. R. Civ. P. 26(b)(2)(C) .................................................................................................... 1, 9

Fed. R. Civ. P. 26(b)(2)(C)(i) .................................................................................................. 9

Fed. R. Civ. P. 30(b)(6) ........................................................................................................... 1

Fed. R. Civ. P. 45(b)(2) ........................................................................................................... 6

Fed. R. Civ. P. 45(c) ................................................................................................................ 4

Fed. R. Civ. P. 45(c) (1) ...................................................................................................... 9

Fed. R. Civ. P. 45(c) (3)(A)(ii) ...................................................................................... 4,5, 6

Fed. R. Civ. P. 803(6) ...................................................................................................... 16

Fed. R. Evid. 106 ............................................................................................................. 16

Fed. R. Evid. 801(c) .......................................................................................................... 20

Fed. R  Evid. 801(d)(2) ..................................................................................................... 21

Fed. R. Evid. 802 .............................................................................................................. 20

Fed. R. Evid. 804(b) .......................................................................................................... 21

Fed. R. Evid. 804(b)(3) ..................................................................................................... 21

Fed. R. Evid. 805 .............................................................................................................. 20

Red. R. Evid. 807 .............................................................................................................. 22

## **Other Authorities**

Anglo-American Treaty of July 3, 1815, 8 Stat. 228 (1815)
  extended indefinitely on August 6, 1827, 8 Stat. 361). ........................................... 14

Office of the High Commissioner of Human Rights,
  "Journalism - one of the world's most dangerous professions,"
(October 5, 2011) https://www.ohchr.org ..................................................................... 19

Security Council Condemns Attacks Against Journalists in Conflict Situations
  - Unanimously Adopting Resolution 1738U.N. Department of Public Information,
  (2006) http://www.un.org/News/Press/docs/2006/sc8929.doc. htm ........................ 19

Weinstein's Federal Evidence § 804.06(4)(d)(iii) (2011) .......................................... 21

### REPLY MEMORANDUM OF THE BRITISH BROADCASTING CORPORATION IN SUPPORT OF MOTION TO QUASH SUBPOENA AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CROSS MOTION TO COMPEL

The British Broadcasting Corporation ("the BBC") submits this reply memorandum in support of its Motion to Quash Plaintiffs' Second Subpoena and as its memorandum in opposition to Plaintiffs' Cross Motion to Compel.

In attempting to avoid Rule 45's territorial restriction, Plaintiffs confuse nonparties such as the BBC, which are subject to that limitation, with parties – which are not. That restriction precludes the disclosure sought, even if the nonparty is a corporation present in New York, and cannot be evaded by invoking Rule 30(b)(6). And as Plaintiffs do not deny that their counsel was provided with the BBC Program, there is no need to address its production in any event.

Nor is the BBC stripped of its journalist privilege merely because it is British and covered international news. Its New York presence alone – conceded by Plaintiffs – underscores its entitlement to the same protections afforded domestic news organizations. Those protections extend to reporting overseas. And even litigants asserting Anti-Terrorism Act ("ATA") actions must overcome that privilege when seeking to compel unpublished discovery from a nonparty news organization. That privilege is particularly important here, as the public has a significant interest in maintaining an independent and objective press where conflict reporting is involved. Since Plaintiffs have not even attempted to overcome BBC's journalist privilege – and cannot do so – their subpoena for the BBC's protected Outtakes and testimony should be quashed on this ground as well.

Whether as a matter of Rules 26(b)(2)(C), 45 or journalist protections, disclosure should not be compelled as the BBC information sought is not relevant, is unreasonably cumulative and is available from many other sources without burdening non-party BBC. Plaintiffs own

1

submissions contradict the claimed relevance and significance of the statements of Zakaria Zubaidi and Ata Abu Rumaileh to the BBC.  And Plaintiffs admit that qualifying the BBC materials as business records will not render those statements admissible. As Plaintiffs have failed to overcome their inherent hearsay, compelling disclosure would be unavailing.

Plaintiffs have more than one year left to pursue discovery in this action. There is no reason why, in all that time, they cannot seek to obtain the underlying information – proof of whether the Al-Aqsa Martyrs Brigades ("Al-Aqsa") and Fatah or the PLO are the same organization – directly from Defendants PLO and PA, or from the numerous other witnesses with first-hand information, rather than second-hand from the BBC.

Among these sources are **(i)** Zubaidi and Abu Rumaileh themselves, who are not "unavailable" but are accessible in the West Bank, where security has improved and circumstances have changed in the eight years since their interviews with the BBC were broadcast; **(ii)** Ahmed Saleh, named by Plaintiffs as the incarcerated perpetrator of the 2004 Al-Aqsa attack in issue, and statements of other perpetrators of the attacks alleged by Plaintiffs, which statements have already been requested in this case of the Israeli government; **(iii)** other witnesses specifically named in Plaintiffs' initial disclosures as having information on the underlying issues;  **(iv)** original documents made public by Israel addressing the relationships among the organizations in issue; and **(v)** testimony on this issue already taken in the case of Saperstein v. Palestinian Authority, 04-20225-Civ, (S.D. Fla), which Plaintiffs have disclosed that they have and intend to use.  Indeed, there is no indication that the information sought will not merely be cumulative, given the availability and number of even this sampling of other reasonably available sources.

Finally, Plaintiffs flatly misrepresent the subpoena proceedings in Saperstein v.

Palestinian Authority, 09-mc-00619 (SLT)(ALC) (E.D.N.Y.). They fail to disclose that, upon

reconsideration, (i) the Subpoena served on the BBC in that case was *quashed*, and (ii) the non-

final "decision" Plaintiffs cite was *vacated* on the merits. 2010 U.S. Dist. LEXIS 143465

(E.D.N.Y. Dec. 16, 2010)("ORDER granting [Docket Entry #25] Motion for Reconsideration;

granting [Docket Entry #31] Motion to Quash. The 4/6/10 Memorandum and Order [Docket

Entry #23] is hereby vacated."). Indeed, Plaintiffs' exhibit improperly *omits* the red flag "Order

Vacated" designation shown on the vacated decision at 2010 WL 1371384 in Westlaw. That

vacated decision is legally non-existent and cannot collaterally estop the BBC here.[1] Nor is the

closed Saperstein case "related." This is particularly so, as this case involves different incidents

and a different procedural posture, and raises additional Rule 45 restrictions that alone warrant

the relief the BBC seeks.

Accordingly, the BBC's motion to quash should be granted in its entirety and Plaintiffs'

Cross Motion to Compel should be denied.

## ARGUMENT

## I. RULE 45 PRECLUDES DISCLOSURE

### A. Any BBC Witness Is Beyond the Territorial Subpoena Power

As there is no BBC witness in this country that has knowledge of the subpoenaed

---

[1] See, e.g., ATSI Communications, Inc. v. Shaar Fund, Ltd. 547 F.3d 109, 113 n.5 (2d Cir. 2008) ("[V]acatur does have the effect, in a concrete and practical way, of removing [vacated decisions] from the reservoir of legal thought upon which the bench and bar can subsequently draw."); Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 970 F.2d 1138, 1146 (2d Cir. 1992), aff'd, 510 U.S. 86 (1993)("It is well-settled in this circuit that a vacated order has no collateral estoppel effect"). This is Plaintiffs' second attempt to misuse that vacated decision – the first, unsuccessful, caused them to withdraw their first BBC subpoena after the Court in the Eastern District apparently rebuffed their attempt by denying their motion to strike the BBC's motion to quash that subpoena. In re British Broadcasting Corporation (Sokolow v. PLO), No: 1:11-mc-00547-NGG-JO (E.D.N.Y.), Dkt Nos. 3, 4, 5, 6, 7, and Order entered 8/2/11. See also Declaration of Louise Sommers dated Sept. 6, 2011 ("Sommers Decl.")(Dkt #141-4)¶¶11-12 and Ex. 2.

materials, Plaintiffs cannot avoid the 100-mile territorial restriction of Rule 45(c)(3)(A)(ii) merely by contending that the subpoenaed non-party is a corporation. Pl. Opp. 14.[2] Plaintiffs are incorrect in excluding non-party corporations, even ones with New York offices, from the 100-mile restriction, and in contending that Price Waterhouse LLP v. First American Corp., 182 F.R.D.56 (S.D.N.Y. 1998) supports that erroneous view. To the contrary, Price Waterhouse specifically approved Stanford v. Kuwait Airlines Corp., No. 85 Civ. 0477, 1987 WL 26829, at *3, 1987 LEXIS 10981, at *7 (S.D.N.Y. Nov. 25, 1987), which quashed a subpoena served on a corporation *through* its New York office, because it lacked a knowledgeable witness within 100 miles. PriceWaterhouse., supra, 182 F.R.D. at 62. See also W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC, 09-126-SLR, 2010 WL 181088, *2, 2010 U.S. Dist. LEXIS 3774, * (D. Del. January 19, 2010)(subpoena on corporation served through in-state agent quashed under the 100-mile restriction); 1920 Enters. v. Hartford Steam Boiler Inspection, No. 06-3780-HGB-SS, 2007 WL 1521019 at * 2,  2007 U.S. Dist. LEXIS 40180**,** 2007 WL 1521019 at *2 (E.D. La May 22, 2007)(subpoena on corporation served through secretary of state quashed under the 100-mile restriction). There is no question but that the territorial restrictions extend to the non-party BBC.

Plaintiffs are likewise incorrect in contending that the BBC would be required by Rule 30(b)(6) to "create" an individual witness who could testify here. Pl. Opp. 15-16.  They fail to refute BBC's authorities that hold that to so apply Rule 30(b)(6) "flies in the face of the intent" of Rule 45(c) and would improperly strip Rule 45 of meaning or efficacy, thereby subjecting non-parties to burdensome travel and discovery that the rule's express language was intended to

---

[2] Plaintiffs' Memorandum in Opposition to BBC's Motion to Quash Subpoena and In Support of Plaintiffs' Motion to Compel (Dkt #159) and Memorandum of Law of the British Broadcasting Corporation in Support of Motion to Quash Subpoena (Dkt #142) are cited as "Pl. Opp." and "BBC Mem.," respectively, followed by the relevant page number(s).

avoid.  Price Waterhouse, supra, 182 F.R.D. at 62-63. See also Cates v. LTV Aerospace Corp., 480 F.2d 620, 623-24 (5th Cir. 1973); Stanford v. Kuwait Airlines Corp, supra, 1987 WL 26829, at *3, 1987 LEXIS 10981, at *7.  See BBC Mem.10.

The cases on which Plaintiffs rely (Pl. Opp. 15-16) fail to support their argument in any respect, as none of them concern Rule 30(b)(6) in the context of a Rule 45 non-party witness. Rather, they all concern depositions of corporate *parties,* which under Rule 45's express language, are not subject to the 100-mile restriction in the first place.[3] Fed. R. Civ. P. 45(c) (3)(A)(ii)(""the issuing court must quash or modify a subpoena that requires a person *who is neither a party nor a party's officer* to travel other than 100 miles from where than person resides..." etc.)(emphasis supplied). Plaintiffs' cases are thus inapplicable to non-party witnesses like the BBC, to which the 100-mile restriction specifically applies. See BBC Mem. 10-11.

That the BBC has not named any knowledgeable witness abroad (Pl. Opp. 16) is a red herring, since the issue under Rule 45 is whether there is any knowledgeable witness *here* that could be designated.  The BBC has attested that there is none. Declaration of Nicola Cain (Dkt #141-1) ("Cain Decl.") ¶¶5, 7; Declaration of Stephen Mitchell (Dkt #141-3) ("Mitchell Decl.") ¶6. Accordingly, the BBC is not, as Plaintiffs contend (Pl. Opp. 16), "thwart[ing] the subpoena by naming a witness outside of 100 miles." Pl. Opp. 16. It has no witness *within* 100 miles. As shown supra, it need not "educate," "prepare" or "create" a witness here, where no one knowledgeable within 100 miles exists.

Plaintiffs likewise mistake the power of this Court in asking it to modify the subpoena to require the BBC to produce a witness in London. Pl. Opp. 17. Plaintiffs do not dispute the

---

[3] See Pl. Opp. 15-16: Ecclesiastes 9:10-11-12, Inc. v LMC Holding Co., 497 F. 3d 1135 (10th Cir. 2007)(plaintiff); Function Media, LLC v. Google, Inc., 2010 WL 276093 (E.D. Tex. Jan. 15, 2010)(defendant); Coryn Group II, LLC v. O.C. Seacrets, Inc., 265 F.R.D. 235 (D. Md. 2010)(third-party defendant); Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., 251 F.R.D. 534 (D. Nev. 2008)(defendant).

established authority in this Circuit that holds that this Court *lacks* the power to modify a subpoena to compel a party to appear in a *foreign country*. See cases cited in BBC Mem.12. Plaintiff's own authority agrees – regardless of whether Rule 45(b)(2) permits modification of a subpoena within a district or state, it does not permit modification of a subpoena so as to require an appearance in a *foreign country*. Thus, in <u>In re Application for Order (The Nissan Fire & Marine Ins. Co., Ltd v. Fortress Re, Inc</u>.), No. 1:02CV00054, 2002 WL 1870084 at *3, 2002 U.S. Dist Lexis 14928, at *9 (S.D.N.Y.  Aug 14, 2002) ("<u>Nissan Fire</u>") (Pl. Opp. 17), the Court *quashed* rather than modified the subpoena, doubting that it had the power to change the location from New York to Tokyo.[4] <u>See also</u> <u>St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co. of Am</u>., No. 91 Civ. 6151,  1993 WL 267347, at *1, 1993 U.S. Dist. LEXIS 9415, at *2 (S.D.N.Y. July 12, 1993)("Rule 45(c)(3)(A)(ii) appears to *require* the quashing of a subpoena" if travel exceeding 100 miles is required)(emphasis supplied). Accordingly, Plaintiffs' Second Subpoena on the BBC could not be modified to require BBC to appear for a deposition in London. Rather, it should be quashed.

### B.  <u>BBC's UK-Situate Documents Are Subject to Comity Concerns</u>

Nor should the BBC be required to produce its UK-situate documents. See BBC Mem.

---

[4] Indeed,  although <u>Nissan Fire</u> noted the decision of the Massachusetts district court in <u>Comm-Tract Corp. v Northern Telecom, Inc</u>., 168 F.R.D. 4 (D. Mass. 1996) (Pl. Opp. 17), which modified a subpoena to order the defendant's employee to a videotaped deposition in Hong Kong, <u>Nissan Fire</u> instead ruled

> it is not clear, however, that the authority granted in Rule 45(c)(3)(A)(ii) to modify a subpoena extends to the kinds of modifications that would be required to permit the subpoena to comply with these requirements by functioning as the equivalent of a letter rogatory or a court order authorizing a U.S. consular offer to take the deposition. Even less clear is how this Court would be able to modify the subpoena...so as to require [the witness] Sasaki to "consent" to his deposition in Japan. But even if such authority did exist under Rule 45, prudential, international comity-based considerations counsel that the Court refrain under the circumstances of this case.

2002 WL 1870084 at *3 , 2002 U.S. Dist Lexis 14928, at *15.  <u>Matthias Jans & Assocs. Ltd v Dropic</u>, 2001 WL 1661473 *3 (W.D. Mich. 2001)(Pl. Opp. 17) is also of no help to Plaintiffs, as it merely required a change in deposition location in the *same district* as the Court.

11-12. Plaintiffs concede (Pl. Opp. 7, 14) that these materials will not be admissible – and thus cannot be used – without the accompanying deposition of a BBC witness. As that deposition cannot be compelled, the documents are of no probative value here.

Plaintiffs' reliance on Tiffany (NJ) LLC v. Qi Andrew, 2011 WL 3135850, 2011 U.S. Dist. LEXIS 80677, (S.D.N.Y. July 25, 2011), and First American Corp. v. Price Waterhouse LLP, 154 F.3d 16 (2d Cir. 1998) (Pl. Opp. 9), is unavailing.  In Tiffany, under comity, the Court did *not* compel production, which should be the result here. And in First American, while the Court ordered disclosure, it did so because the U.S. financial interest in that lawsuit, to which the British court had yielded, outweighed any competing British interests, and the documents could not be sufficiently identified to comply with the Hague Convention. Here there are no comparable circumstances. [5]  See also, Laker Airways Ltd. v. Pan Am World Airways, 607 F. Supp. 324, 326 (S.D.N.Y. 1985)(disclosure not ordered where "...service of the subpoenas in New York is a transparent attempt to circumvent the Hague Convention..."). Plaintiffs' disregard of established issues of comity here should not be excused. See BBC Mem. 11.  Their Second Subpoena should be quashed.

## C.  Plaintiffs Have Not Established Relevance

Disregarding that neither alleged Al-Aqsa attack in issue is mentioned in the BBC materials, Plaintiffs claim relevance based on their alleged need to show funding of Al-Aqsa by Defendants, and thus that Al-Aqsa and the PLO were the same, "prior to" the attacks in issue. Pl. Opp. 3. However, the statements by Abu Rumaileh and Zubaidi were made in September 2003, broadcast in November 2003 – well *after* the 2002 Al-Aqsa attack alleged by Plaintiffs. Thus,

---

[5] Thus in First American, the U.S. was to receive the proceeds of any award or settlement of the fraud claims involved and the British interests favored proceeding – a British court had already held that its interest in enforcing its laws gave way to the public interest in uncovering the frauds alleged in First American. Id. at 22.

those statements could not be relevant or probative with respect thereto or to other pre-2003 attacks at issue by Al-Aqsa, if any.

Even so as to the 2004 Al-Aqsa attack that Plaintiffs allege, however, Plaintiffs own submission belies their claim of relevance, and contradicts their representation that the Zubaidi and Abu Rumaileh statements to the BBC are "more probative on this issue [that Fatah and Al Aqsa are the same] than any other evidence which plaintiffs can reasonably procure." Pl. Opp. 14.

Thus, Plaintiffs served their initial disclosures in this action on July 27, 2011 – *after* they had served their first Subpoena, dated July 8, 2011, on the BBC for the same information, and *well after* their counsel unsuccessfully attempted to obtain that information from the BBC in the Saperstein action the previous year. See Pl. Initial Rule 26(a)(1)(A) Disclosures ("Pl. Initial Disclosures"), attached as Ex. A. to Defendants Memorandum of Law in Support of its Motion to Compel Rule 25 (a) Examinations Within the Southern District of New York, (Dkt #155-1, filed 9/27/11) p. 10. Despite this prior knowledge of Plaintiffs and their counsel, Plaintiffs did not name either the BBC or Zubaidi or Abu Rumaileh as a witness in their initial disclosures as "likely to have discoverable" – much less relevant – "information that Plaintiffs may use to support their claims or defenses, unless the use would be solely for impeachment."  See Pl. Initial Disclosures at pp. 2-5. [6] The only conclusion that can be drawn from this omission is that the BBC witness and information sought lack the relevance and probative value that Plaintiffs now profess.

---

[6] Here, of course, Plaintiffs contend that they need the BBC information and the Zubaidi and Abu Rumaileh statements to directly prove their case in chief (Pl. Opp. 6). But see p. 15, n. 10, infra. And they pointed out in their disclosures that they do "not suggest that Plaintiffs have the ability to make the individual available or will call the individual to testify at trial." See Pl. Initial Disclosures p. 2.

### D. Production Would Be Duplicative and Cumulative, and the Information Is Obtainable From Defendants and Other Sources without Burdening the BBC

Plaintiffs do not deny that the BBC previously provided their counsel with the Program. BBC Mem. 1 n. 1; Sommers Decl.¶2; Cain Decl. ¶3.  The BBC should not be compelled to duplicate that production. See, e.g., Fed. R. Civ. P. 26(b)(2)(C)(i)(Court is required to limit discovery sought that is "unreasonably cumulative or duplicative.").

Moreover, as to the underlying information sought from the BBC– alleged proof of whether Al-Aqsa and Fatah or the PLO are the same entity or received funding from Defendants "prior to" the attacks in issue, and whether the PA and PLO are liable for the Al-Aqsa attacks (Pl. Opp. 3, 6) – the subpoenaed information, even if admissible (which it is not, see Point III, infra, p. 20) would be unreasonably cumulative.  The underlying information is available – and may have even already been obtained – from the many other sources that could address these issues directly, without burdening non-party BBC. And with discovery extending for another year, Plaintiffs should have ample opportunity to obtain the information sought from these sources.  As such available other sources exist, the disclosure sought should be denied under Rule 26 (b)(2)(C)(i) as well as Rule 45, for this reason alone. See, e.g., In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig., 249 F.R.D. 8, 11 (D. Mass. 2008)(Fed. R. Civ. P. 26(b)(2)(C) "initially governs enforcement of a Rule 45 subpoena."); Fed. R. Civ. P. 26(b)(2)(C)(i), (ii)(Court is required to limit discovery sought that is "unreasonably cumulative or duplicative," "can be obtained from some other source that is more convenient, less burdensome or less expensive" or where there has been "ample opportunity to obtain the information by discovery in the action"); Fed. R. Civ. P.  45(c)(1) (affirmatively mandates a party serving a subpoena "to take reasonable steps to avoid imposing an undue burden or expense" on a nonparty recipient).

Plaintiffs do not contend that they have not obtained this information, or cannot obtain it in discovery in this case or elsewhere. For example, Plaintiffs insist that Defendants have already admitted that they fund Fatah (Pl. Opp. 4) and Plaintiffs have not shown that additional discovery from Defendants in this action will fail to produce proof on the identity issue. Indeed, Plaintiffs submit the Amended Joint Proposed Schedule from the <u>Saperstein</u> case (04-20225-Civ (S.D. Fla.)) (Pl. Opp. Ex. F) which specifically refers to information on this issue that could be obtained from Defendants.  That includes "the admissions that 'Al-Aksa Brigades' is an alias for Fatah, which allegedly appeared on the PA's own website" and in reports published by the Palestinian Authority ("PA") (Ex. F. pp. 4, 5);  "documents captured and published by Israel" and deposition testimony from the PA Minister of Civil Affairs that  allegedly reveal that the PA was funding Fatah (Ex F. p. 6); and statements on PA website by "PA and PLO and their senior officials" allegedly admitting that the "wave of Palestinian terror" in 2000-2002 "was intended to intimidate the Israeli public and government to accept defendants' political demands..."(Ex F. p. 13).

In addition, Zubaidi and Abu Rumaileh themselves would have the direct information that Plaintiffs seek indirectly from the BBC. Pursuing these witnesses is not the futile exercise that Plaintiffs portray it to be (Pl Opp.12 and n.6; Pl. Ex. 1 [Declaration of Professor Barry Rubin "Rubin Decl."]), particularly given that circumstances have changed in the eight years since Zubaidi and Abu Rumaileh made those statements. See Declaration of Dr. Yezid Sayigh dated November 14, 2011, incorporated herein by reference ("Sayigh Decl.") ¶¶20, 22-28.[7] Plaintiffs' assessment through the 2009 Rubin Declaration of the availability and accessibility of those

---

[7] Dr. Sayigh is an internationally acknowledged expert in Palestinian politics and security matters, who has served as a diplomat and consultant as well as a scholar and writer in these fields. Sayigh Decl. ¶¶1-16. His opinions on this issue are presented in detail at ¶¶19-28.

witnesses is unreliable as it rests on faulty assumptions, disregards the current political realities in the West Bank and presents an overly simplistic account of the complex relationships between the PA, the Palestinian Liberation Organization ("PLO"), Fatah and/or al-Aqsa. It is not an accurate assessment of the likelihood of either one appearing for deposition, whether compelled or otherwise. Sayigh Decl. ¶¶17, 19-28 (detailed discussion).

Indeed, Zubaidi has spoken in news accounts of his disillusionment with his militant past and has made himself accessible to non-Palestinians, including Israelis, for interviews as recently as April 2011. Sayigh Decl. ¶¶26, 28. Thus, Zubaidi or Abu Ramaileh can be sought for deposition in Jenin, where security has improved since the two witnesses made their statements to the BBC in 2003, or elsewhere in the West Bank, as Zubaidi has been permitted to travel on occasion and Abu Rumaileh apparently is under no travel restriction. Sayigh Decl. ¶¶26, 28. If, as Plaintiffs contend, the PA or PLO has control over these individuals, the PA and PLO are Defendants to this action and subject to court orders here, which could compel those Defendants to produce those witnesses.[8] Sayigh Decl. ¶30. Further, as to what these Defendants and this Court would do,  it is the Defendants and this Court – and not Plaintiffs' expert – that are the best predictors of their own actions.

In any event, Plaintiffs have named a host of alternate sources for the underlying information sought from the BBC. For example,

- Ahmed Qurei and Yasser Abed Rabbo, each of whom Plaintiffs claim "has knowledge of Fatah terrorist activities, of the provision of funds by the PA and PLO to Fatah in general and to Fatah terrorists specifically..."  Pl. Initial Disclosures, p. 4;

- "Al-Aqsa operative, Ahmed Salah," whom Plaintiffs name as a convicted perpetrator of the 2004 Al-Aqsa attack in issue (Pl. Opp. 3), and whose deposition can be pursued where he is incarcerated;

---

[8] Whether the PA is subject to the Hague Convention (Pl. Opp. 12 n. 6) is thus beside the point as the PA is a party directly subject to this Court's authority and order.

- Deposition testimony from the action <u>Saperstein v Palestinian Authority</u>, 04-20225-Civ (S.D. Fla.) which Plaintiffs claim involved the same issue and which they apparently intend to use. Pl. Initial Disclosures p 6.

Other reasonably available alternate sources exist as well. See Sayigh Decl. ¶¶29-40. To name but a few such sources, publicly available on the website of the Israeli Ministry of Foreign Affairs ("MFA"), or from the MFA directly, in original Arabic and English translation, are a considerable representative sample of the some 500,000 documents seized from Arafat's headquarters by the Israeli Defense Forces in 2002, that contain information that addresses whether there are the relationships between the organizations at issue. Statements made in and to Israeli courts by Palestinians suspects and perpetrators in terror attacks are also available either online or through request to Israeli authorities. Such a request has apparently been made by Defendants in this case and the documents also will be available to Plaintiffs. See Defendants' Letter Request of International Judicial Assistance to the Israeli Government, Dkt #136 filed 08/16/11 pp. 9-11. As well, The Israel Security Agency, which has apprehended and identified Palestinian suspects involved in terror attacks, has a website containing its own assessment of the relationships between these organizations. Sayigh Decl.¶ 34.  All of these sources are more credible and authoritative that the second-hand statements sought from the BBC, and they do not depend, as do the Zubaidi and Abu Rumaileh statements to the BBC, on any personal or political agendas sought to be communicated.  Sayigh Decl. ¶¶35-40 (also noting Zubaidi's self serving and contrary positions in 2004 and 2006 interviews at ¶38).

Accordingly, the Subpoenaed materials are at best cumulative, and the underlying information sought is obtainable from other sources that are more direct, first-hand and authoritative than the BBC materials, at less burden and expense to non-party BBC.

## II. <u>PLAINTIFFS HAVE FAILED TO OVERCOME THE BBC'S PRIVILEGE</u>

### A. <u>The BBC's Privilege Protects Its Outtakes and Testimony From Disclosure</u>

Plaintiffs make no attempt to overcome the BBC's journalist protections. Instead, they assert that the BBC has none. Relying erroneously on <u>Laker Airways Ltd. v. Pan American World Airways, Inc</u>., 604 F. Supp. 280, 287 (D.D.C. 1984), Plaintiffs contend that the "First Amendment does not protect the overseas news gathering of a foreign corporation such as the BBC." Pl. Opp. 17.  But <u>Laker</u> did not deal with journalist privilege, and did not so hold.

<u>Laker</u> was an antitrust action that concerned the "remarkable" and "probably unprecedented" attempt (604 F. Supp. at 286) by defendant British airlines to avoid an injunction by claiming a U.S. constitutional right to petition British legislative and executive authorities for an order preventing the British plaintiff from proceeding against them in that U.S. action. As the Court put it, those British defendants were using the First Amendment "to defeat established constitutional and other rights as well as jurisdiction protected by United States law." 604 F.Supp. at 288. No similar "unprecedented" use of the First Amendment to defeat established federal rights is presented here. Even so, the <u>Laker</u> Court, after considering issues of comity – also present in the instant case – *permitted* the British defendants to proceed with their foreign petition on a limited basis and denied the British plaintiffs' attempt to enjoin them from doing so in any respect. 604 F. Supp. at 293-94.

On its face then, <u>Laker</u> does not support Plaintiffs' argument.  Indeed, the <u>Laker</u> Court expressly recognized with respect to its British defendants, that "[b]y doing business here, defendants voluntarily made themselves subject to... application of United States domestic law; as parties before the Court, they are entitled to the protection of that law…" <u>Id</u>. at 287 n. 21.  So, too is the BBC.

13

Plaintiffs admit that "the BBC is a corporation with its own offices in New York." Pl.

Opp. 15.  Indeed, the BBC was served at its news desk in New York. Cain Decl. ¶2. As such, as

recognized in Laker, the BBC is subject to U.S. domestic laws and is entitled to protection of

those laws. Id. at 287 n. 21. Indeed, our country's "constitutional mandate" – that same U.S.

Constitution which permits a journalist privilege – "likewise guarantees to all those residing or

doing business in the United States ... due process and the equal protection of the law." Laker

Airways Ltd. v. Pan American World Airways, Inc., 559 F. Supp. 1124, 1134 (D.D.C. 1983),

aff'd sub nom, Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 943 (D.C.

Cir. 1984)(also recognizing that a "corporation operating within the United States…qualifies as

an "other person" entitled to the protection of United States law").[9]

Thus, the BBC is entitled to assert its journalist privilege equally as if it were a wholly

domestic company covering the same news. And that protection extends to foreign reporting.

See, e.g., In re Subpoena to Goldberg (Saperstein v. Palestinian Authority), 693 F.Supp.2d 81, 83

n.2 and 3 (D.D.C. 2010) (quashing subpoena seeking testimony of non-party American journalist

concerning his foreign reporting -- interviews held in Israel-- reflected in news article and book

submitted at Dkt # 1-2 and 1-3). See also Bullfrog Films, Inc. v. Wick, 646 F. Supp. 492, 502

(C.D. Cal. 1986) aff'd, 847 F.2d 502 (9th Cir. 1988)("...the First Amendment protects

communications with foreign audiences to the same extent as communications within our

---

[9] See also U.S. v. Verdugo-Urquidez, 494 U.S. 259, 260 (1990)(aliens enjoy certain constitutional rights "when they have come within the territory of, and have developed substantial connections with, this country."); Plyler v. Doe, 457 U.S. 202, 212 (1982)(The provisions of the Fourteenth Amendment " 'are universal in their application, to all persons within the territorial jurisdiction ...' ). That Congress did not intend for courts to impose different standards upon foreign companies doing business in the U.S. than domestic ones is evident from the country's obligation under its various Bilateral Friendship, Commerce, and Navigation treaties to secure equal treatment of domestic and foreign companies within its jurisdiction. See, e.g., Laker Airways Ltd. v. Pan Am. World Airways, supra, 559 F. Supp. at 1134, n. 44 (referencing Anglo-American Treaty of July 3, 1815 8 Stat. 228 (1815), extended indefinitely on August 6, 1827, 8 Stat. 361).

borders."). Thus, the BBC's nationality and the location of the newsgathering is of no consequence under the journalist privilege, particularly in an action, as here, brought by Plaintiffs in a U.S. federal court in New York.

### B. Plaintiffs Have Not Shown Relevance Or Particularized Need

Because they contend that the journalist privilege is inapplicable, Plaintiffs have made no attempt to show that the Outtakes or testimony sought are relevant under Gonzales v. NBC, Inc., 194 F.3d 29, 35 (2d Cir. 1999) – much less, highly relevant and critical under the N.Y. Shield Law, which should also guide the Court. BBC Mem. 13. They simply contend that it is "very likely" that the Outtakes would contain "additional such [highly probative] statements" to those they claim exist in the Program. Pl.Opp. 7.

But there is no basis for that likelihood. Plaintiffs do not contend that every statement made to the BBC by these interviewees concern the relationships they seek to establish. So Plaintiffs' speculation that there are additional such statements in the Outtakes is precisely the type of fishing expedition that the journalist privilege is intended to prevent. See BBC Mem. 18-19. This case is thus unlike Gonzales, where the specific conduct in issue of the defendant was also the subject of the broadcast, so that any outtakes would necessarily show that conduct, and thus be additional "unimpeachably objective evidence of [defendant's] conduct." 194 F.3d at 36.[10]

Plaintiffs' tenuous assertion that the Outtakes are needed to avoid a possible

---

[10] Even were Plaintiffs seeking the Outtakes for impeachment purposes, that would not be a sufficient justification for overriding the journalist privilege either. See, e.g., Krase v. Graco Children Prods., Inc., 79 F.3d 346, 352 (2d Cir. 1996)("[I]mpeachment evidence" not sufficient to overcome the privilege); Concerned Citizens of Belle Haven v. The Belle Haven Club, CIV. 3:99CV1467(AHN), 2004 WL 3246719 (D. Conn. Mar. 22, 2004)(non-confidential, unpublished interview statements of defendant's treasurer "would only be admissible to impeach him at trial [, which is] an insufficient reason to vitiate the privilege"). See also U.S. v. Burke, 700 F.2d 70, 78 (2d Cir. 1983)(materials sought for impeachment purposes not necessary to defense where defendant had much other impeachment material).

"completeness" objection from Defendants if the Program were offered at trial (Pl. Opp. 7), could not defeat the BBC's privilege. Even were Defendants to make such an objection, it would not satisfy Plaintiffs' burden in overcoming the BBC's journalist privilege, particularly in an underlying civil case. U.S. v. Marcos, SSSS 87 CR. 598 JFK, 1990 WL 74521 (S.D.N.Y. June 1, 1990)(government trial subpoena, on non-party news broadcaster for testimony to rebut a "completeness" challenge, quashed); Fischer v. McGowan, 585 F. Supp. 978, 987 (D.R.I. 1984)(motion to compel nonparty reporter, to disclose additional privileged source information for "completeness" purposes, denied). See also U.S. v. LeFevour, 798 F.2d 977, 981 (7th Cir. 1986)("Rule 106 was not intended to override every privilege and other exclusionary rule of evidence in the legal armamentarium, so there must be cases where if an excerpt is misleading the only cure is to exclude it rather to put in other excerpts").

Moreover, the deposition testimony regarding the BBC's manner and method of creating and storing materials *other than* the Program and Outtakes, which Plaintiffs also seek, does not bear on whether the Program and any Outtakes qualify as BBC business records under Fed. R. Civ. P. 803(6) – Plaintiff's stated reason for subpoenaing the testimony.[11]

 Accordingly, the outtakes sought, as well as any so-called "foundational" testimony is not relevant for purposes of overcoming the BBC's qualified privilege from compelled disclosure.

### C.  Plaintiffs Have Failed to Show A Lack of Alternate Sources

While the BBC may be the only source of its own outtakes, there are (as shown pp. 11-12 supra), a significant number of other sources from which to obtain the underlying information Plaintiffs seek. It is the underlying information, and not the video outtakes themselves that

---

[11]And, as shown in Point III, infra, qualifying those materials as business records will not render any statements of Abu Rumaileh and Zubaidi contained in them admissible, in any event.

control.  See Gonzales v. NBC, Inc., supra, 194 F.3d at 36 (holding that "the outtakes contain

*information* that is not reasonably obtainable from other available sources")(emphasis added).

See also U.S. v. Grant, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176, at *7 (S.D.N.Y. Nov. 17,

2004)("The parties dispute whether the video itself must be available elsewhere or whether

alternative sources of the information captured on it would suffice....While it is true that the

Government cannot obtain further video images of the club from any other source, they have

considerable evidence of drug selling and drug use at the Sound Factory [shown in the video].");

Krase v. Graco Children Prods., Inc., supra, 79 F.3d at 353 ("However, it cannot be said that

pertinent material is not obtainable elsewhere just because it is included in some out-takes");

Blum v. Schlegel, 150 F.R.D. 42, 46 (W.D.N.Y. 1993)("where the source [of the interview

sought] is known and can be deposed, the availability of a deposition is an alternate source that

must be pursued"). [12]

     These alternate sources are not exclusive to the BBC, several have been listed or

requested by the parties already and others are publicly available. See discussion in Point I D,

supra, more detailed in Sayigh Decl.¶¶18, 29-40. Plaintiffs should pursue that information from

those other reasonably available sources instead of compelling privileged information and

testimony from non-party BBC. BBC Mem. 20.  Carter v. The City of New York, No. 02 Civ.

8755, 2004 WL 193142 at *1, 2004 U.S. Dist. LEXIS 1308 at *4 (S.D.N.Y. Feb. 2, 2004)

(failure to show that information cannot be obtained elsewhere defeats subpoena on journalist,

particularly where other witnesses exist); U.S. v. Grant, supra, at *8 ("given the availability of

---

[12] Indeed, if the underlying information were not the focus of the Gonzales test and its availability
analysis were limited only to a particular piece of news footage (as opposed to what is in the news
footage), the second prong of that test would be rendered meaningless. Because the news company would
be the only source of the footage, there would never be any alternative source, and the two-prong test
would become, in effect, one-prong.

alternative sources of information and the far more attenuated need for the outtakes," journalist's

privilege not overcome).

 D.  **Reasons  of Policy Outweigh Compulsion**

Plaintiffs argue that there is a national interest in permitting discovery in Anti-Terrorism

Act ("ATA") cases. Pl. Opp. 7**.**  This is a significant concern, but not one of the cases Plaintiffs

cite compelled Rule 45 disclosure from a non-party news organization – as opposed to seeking

discovery from a party *defendant* directly charged with aiding terrorists.[13]

Nor does Plaintiffs' authority involve non-party disclosure governed by the journalist

privilege, which, under the Constitution, federal and state law, also serves public and national

interests.  Those interests – in maintaining an independent and objective press, and a free flow of

information to the public – are of significant concern here, and as Plaintiffs does not dispute,

have long been recognized and protected by courts and legislatures alike. BBC Mem. 13-14, 21-

23. They require litigants, even those asserting ATA actions against others, to satisfy the

privilege's particular requisites before discovery may be compelled. See, e.g., In re Subpoena to

Goldberg (Saperstein v. Palestinian Authority), supra, (ATA action in which journalist subpoena

quashed).

As shown in the BBC's moving memorandum, the Second Circuit in Gonzales v. NBC,

Inc., supra, recognized that compelled production of privileged information would "risk the

symbolic harm of making journalists appear to be an investigative arm of the judicial system, the

government, or private parties," 194 F.3d at 35. See BBC Mem.13. But such symbolic harm

could easily translate into real harm for the BBC and for other news organizations covering

---

[13] See Pl. Opp. 8: Linde v. Arab Bank, 269 F.R.D. 186 (E.D.N.Y. 2010)(Defendant bank ); Weiss v. Nat'l
Westminster Bank, 242 F.R.D. 33 (E.D.N.Y. 2007)(same); Strauss v. Credit Lyonnais, 249 F.R.D. 429
(E.D.N.Y. 2008)(same): Strauss v. Credit Lyonnais, 242 F.R.D. 199 (E.D.N.Y. 2007)(same); Ungar v.
Palestinian Authority, 715 F. Supp. 2d 253 (D.R.I. 2010)(Defendant PA).

conflicts worldwide if their newsgathering materials were compelled. Declaration of Reporters

Without Borders, Jean-Francois Julliard, dated November 15, 2011 ("Julliard Decl."),

incorporated herein by reference. ¶4.

Media coverage brings to the attention of the international community the horrors and

reality of conflict, and provides the public with crucial information—not only the competing

viewpoints between conflicting parties, but also the exposure of violations and provision of

essential material for prosecutorial investigations that often lead to the arrest of war criminals.

The benefits provided by such reporting – which Plaintiffs recognize here by virtue of their

subpoena – are gathered under grave and increasing dangers on the ground, particularly when

covering conflict zones like the Middle East. [14]  News men and woman are subject to unique

physical hazards, and risk harassment, threats, movement restrictions, imprisonment and even

death by parties seeking to limit independent coverage of sensitive issues. Julliard Decl. ¶6.

A journalist compelled to testify or produce unpublished material appears to the outside

world as an advocate of the subpoenaing party. That compulsion, which might be reported or

shown worldwide, effectively undermines journalist credibility. Knowledgeable sources, in

conflict zones, who might otherwise talk to or grant journalists safe passage, may not do so.

They also might not do so upon learning that a reporter chosen to tell their story had surrendered

---

[14] The Court may take judicial notice of the United Nations resolution condemning the escalating trend of violence against journalists in conflict zones. See *Security Council Condemns Attacks Against Journalists in Conflict Situations - Unanimously Adopting Resolution 1738*, U.N. Department of Public Information, (2006) http://www.un.org/News/Press/docs/2006/sc8929.doc. htm  (last visited November 6, 2011); Bulgartabac Holding AD v. Republic of Iraq, 08 CIV 6502 RJH, 2010 WL 3633501 (S.D.N.Y. Sept. 20, 2010)(court took judicial notice that UN sanctions against Iraq began on August 6, 1990.); Morgan Guar. Trust Co. of New York v. Republic of Palau, 924 F.2d 1237, 1244 (2d Cir. 1991)(court took judicial notice of UN Security Council approval of termination of certain trusteeship arrangement). See also Office of the High Commissioner of Human Rights, "Journalism - one of the world's most dangerous professions," (October 5, 2011) https://www.ohchr.org.

his footage to litigants – who could present the material out of context or differently than the trusted reporter.  Julliard Decl. ¶¶7, 10.

Such distrust from sources could extend to other news men and women and their news organizations, and continue long after a conflict has ended and security returned to a region, such as the West Bank. It could likely follow journalists into other parts of the world, compounding the risks and danger to news men and women, and the loss of information to the public. Julliard Decl. ¶9.  These risks far outweigh the tenuous and at best, cumulative, value of the BBC material sought to Plaintiffs' case here.[15]

### III.  THE PROGRAM AND OUTTAKES ARE NOT ADMISSIBLE

Plaintiffs overlook that "in determining whether to quash a subpoena, courts in this Circuit have considered the admissibility of the materials sought from journalists." Mandal v. City of New York, No. 02CIV1234(WHP)(FM), 2004 WL 2375817, at *4 (S.D.N.Y. October 21, 2004)(listing cases). Plaintiffs concede that establishing the BBC materials as business records – Plaintiffs' rationale for seeking BBC testimony – would not be sufficient to render the statements in them admissible.  Pl. Opp. 11.  See, e.g., Fed. R. Evid. 801(c); 802, 805. Yet none of the hearsay exceptions or exclusions that Plaintiffs argue apply.

Although Plaintiffs contend that Abu Rumaileh was a PLO Official whose statements were party admissions (Pl. Opp.  11), the exhibit they cite establishes only that he was a PLO official from 2000 through February 2002 – not in 2003 when his statements were made to the

---

[15] The Second Circuit in Gonzales v. NBC, Inc., supra, 194 F.3d at 35, also was concerned that it would become "standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims." The Court clearly wanted to relieve the "burden" placed on "the press [of] the heavy costs of subpoena compliance...that would impair its duties." Id. Here, of course, the BBC is experiencing that burden, having responded to no less than four subpoenas, three from Plaintiffs' counsel alone, seeking these outtakes and testimony.

BBC. Pl. Opp. Ex. H. p. 10. As Plaintiffs have not shown that Abu Rumaileh and Zubaidi were persons with the authority to make admissions on behalf of Defendant organizations, their statements would not be admissible under Fed. R Evid. 801(d)(2) as admissions of a party opponent.

Nor have Plaintiffs shown that the statements were "declarations against interest" made by "unavailable" witnesses. Fed. R Evid. 804(b). Given the politics of the situation, and the opportunity to get their point of view known, Abu Rumaileh's and Zubaidi's statements to the BBC are not "so far contrary" to their respective interests so as to "clearly indicate" truthfulness, as Plaintiffs concede they must. Pl. Opp. 11.

To be sure, neither man spoke under oath and both attempted to promote his own points of view at the time, which may not necessarily have been adverse to him or the PA, as Plaintiffs contend. See generally Sayigh Decl.¶¶37-38. Statements such as these that at the time further the speaker's own interests do not qualify as admissible under Fed. R. Evid. 804(b)(3). See, e.g., U.S. v. Bahadar, 954 F.2d 821, 828 (2d Cir. 1992)("[R]ule 804(b)(3) requires that the statement—to be admissible—must have been, at the time it was made, so far contrary to the declarant's best interests that a reasonable person would not make the statement unless the declarant believed it to be true."); Rotheram v. Manpower Demonstration Research Corp., No. 88 Civ. 0774(JMW), 1989 U.S. Dist. LEXIS 13728, at *3-4 (S.D.N.Y. Nov. 20, 1989)(statements inadmissible as hearsay as they "were not against [speaker's] interest when made" and "were consistent with his pecuniary interest"). See also 5-804 Weinstein's Federal Evidence § 804.06(4)(d)(iii) (2011)("[i]f the statement or any part of it serves the declarant's interest, it is not admissible as a statement against interest.").

Moreover, Plaintiffs' contention that these statements were "likely" to render Abu Ramaileh and Zubaidi criminally or civilly liable (Pl. Opp. 13) is speculative at best. It is belied by Plaintiffs' failure to show that in the eight years since the statements were made, either man was prosecuted or sued civilly because of those statements to the BBC.

As well, Plaintiffs disregard the law on "unavailability," which requires that they first must have made a reasonable good-faith effort to obtain Zubaidi's and Abu Rumaileh's presences and been unable to obtain to do so. Barber v. Page, 390 U.S. 719, 724 (1968)("In short, a witness is not 'unavailable'…unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial"). As shown, supra, Plaintiffs' predictions of futility (Pl. Opp. 12 and n.6) are based on faulty assumptions. See Sayigh Decl.¶¶20, 22-31 and Point I D, supra).  In any event, these predictions do not relieve Plaintiffs of making such an effort. Barber v. Page, supra.

None of Plaintiffs' cited cases (Pl. Opp.12) assist them on this point. None involved statements, as here, by non-parties that had not been deposed or even requested to appear. Rather they dealt with parties, or witnesses who had been deposed and indicated, by sworn or other statement, their unwillingness to appear at trial.[16]

Lastly, the Rumaileh and Zubaidi statements, as they were not made under oath and as they further the speaker's own agendas, have no "circumstantial guarantees of trustworthiness"

---

[16] See Pl. Opp. 12:  U.S v. Kehm, 799 F. 2d 354 (7th Cir. 1986)(witness submitted an affidavit that he would not voluntarily come to the U.S. for trial for fear of being indicted, his deposition was taken in the Bahamas and court permitted its use at  trial ); U.S. v. Lopez, 777 F.2d 543 (10th Cir. 1985)(indicted co-conspirator failed to appear at trial, jumped bail and search warrant returned unsatisfied); U.S. v. Terrazas-Montano, 747 F.2d 467 (8th Cir.1984)(witnesses gave videotaped depositions while in INS custody and before being deported told INS they would not return to the U.S. as witnesses). Nor does McIntyre v. Reynolds Metals Co., 468 F.2d 1092 (5th Cir. 1972)(Pl. Opp. 12) help Plaintiffs. In that case, the Court reversed the admission into evidence of a witness' previous recorded statement, because although the witness' deposition was permitted, his recorded statement should have been excluded as hearsay. Likewise, Zubaidi and Abu Rumaileh's recorded statements to the BBC here are hearsay and inadmissible.

under Rule 807, as Plaintiffs content.  See Sayigh Decl. ¶¶35-40. Admitting these hearsay statements into evidence here will not further the interests of justice, or serve the public policy behind ATA suits. Pl. Opp. 12. Nor will that policy be harmed by excluding these hearsay statements. This is particularly so, as there exist more direct and first-hand sources for whether the relationships in issue exists that are reasonably available to Plaintiffs. See Point I D supra; Sayigh Decl.¶¶ 35-40.

Accordingly, as Zubaidi and Abu Ramaileh's statements to the BBC are inadmissible, the Second Subpoena should be quashed. See, e.g., U.S. v. Hubbard, 493 F.Supp. 202, 205 (D.D.C.1979) (non-party subpoena quashed because information sought from reporter was hearsay, and since there were available first hand sources, it was "merely cumulative and less than the best evidence available."). See also BBC Mem. 23.

## CONCLUSION

For the foregoing reasons and those in the BBC's moving memorandum, the BBC's Motion to Quash the Subpoena should be granted in its entirety, and Plaintiffs' Motion to Compel should be denied in all respects.

Dated:   New York, New York          MILLER KORZENIK SOMMERS LLP
         November 18, 2011

By _____
         Louise Sommers
         David S. Korzenik
         Itai Maytal
    488 Madison Avenue Suite 1120
    New York, New York 10022-5702
    Phone 212-752-9200  Fax 212 688 3996
    lsommers@mkslex.com
    Attorneys for The British Broadcasting Corporation