UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

Civ. No. 04-397 (GBD) (RLE)

### DECLARATION OF JEREMY STERN

Jeremy Stern, of Beit Shemesh, Israel, declares pursuant to 28 U.S.C. § 1746, as follows:

1. I am a graduate of Princeton University and the Law Faculty of the Hebrew University in Jerusalem. I am member of the Israeli Bar and a member of the New York State Bar, and I currently have my own law practice in Jerusalem.

2. I have no financial or other interest in this litigation.

3. I have been asked by counsel for the plaintiffs in the above-captioned action to address certain claims made in the Declaration of Dr. Yezid Sayigh ("Sayigh Decl.") submitted by the British Broadcasting Corporation that implicate – and ignore – dispositive issues of Israeli law.

4. Dr. Sayigh asserts, without explaining how, that the plaintiffs could compel testimony from witnesses living in the West Bank by having an Israeli court order them to testify. Sayigh Decl. at ¶¶ 21-, 24, 26. This argument is baseless, if not frivolous, for at least two reasons:

5. *First*, there is no provision of Israeli law that would allow the plaintiffs to ask an Israeli court to compel testimony from anyone – much less a Palestinian in the West Bank – for use in a civil action in the United States. Thus, there is simply no legal mechanism for such relief.

6. *Second*, even if there was some legal mechanism that would allow the plaintiffs to ask an Israeli court to issue an order directing Palestinian residents of the West Bank to appear to give testimony for use in this case, such an order would be meaningless. That is because the Israeli courts are effectively unable to enforce their orders and judicial process against residents of the Palestinian cities and villages in the West Bank. Israel's inability to enforce court orders and process against West Bank Palestinians is long and widely recognized by the Israeli courts themselves, and is expressly reflected in their jurisprudence:

> The case law has recognized that the situation of witnesses from the [Palestinian] territories is more complex than that of regular witnesses, <u>both in respect to the ability to order their appearance against their will</u> and in respect to the <u>lack of ability to enforce the penalties provided by law for a person who gives false testimony</u>.

C.A. 13028/05 (Haifa) *M.S. v. Israel* (7/4/2010) (published in "Nevo") at ¶ 28 (emphasis added).[1]

7. Indeed, because of Israel's inability to enforce even <u>criminal</u> process in the West Bank, the Israeli Supreme Court has held that in conducting bail hearings Israeli courts "should give serious weight to the inherent concern of flight from prosecution in the case of defendants

---

[1] The original decision is of course in Hebrew. I am fluent in Hebrew and English and capable of translating accurately between those languages. I affirm that the texts of all the decisional and statutory law quoted herein are accurate translations of the original Hebrew.

who are residents of the [Palestinian] Authority." Misc.Crim.Mot. 6635/10 *Maharana v. State of Israel.* (9/20/2010) (published in "Nevo").

8. Moreover, even the Israeli military courts, which are located in the Israeli-controlled areas of the West Bank and prosecute terrorism offenses, are unable to effectively enforce their process against Palestinians. For example, in Military Appeal 2076/07 *Military Prosecutor v. Saroof* (7/9/07) (published in "Nevo") the Military Court of Appeals for Judea and Samaria (the West Bank) affirmed the acquittal of a Palestinian charged with terrorist offenses by a lower military court, after military prosecutors were repeatedly unable to enforce bench warrants compelling prosecution witnesses living in Palestinian urban areas of the West Bank to appear to testify.

9. In sum, Dr. Sayigh's theory that an Israeli court could compel testimony from Palestinians in the West Bank for use in this case is entirely without foundation.

10. Dr. Sayigh also claims that plaintiffs or their counsel could travel to the West Bank cities of Jenin or Ramallah to interview witnesses in this case. Sayigh Decl. at ¶ 28.

11. But this claim ignores the fact that Israelis – and, as explained below, non-Israelis holding Israeli entry visas – are barred by Israeli law under penalty of criminal prosecution from entering Jenin, Ramallah and any of the other Palestinians cities in the West Bank. As the Jerusalem District Court explained in a recent decision in which it denied a defendant's motion to dismiss a case in favor of litigation in the Palestinian Authority on grounds of forum non conveniens:

> The courts in the Palestinian Authority are located in territory controlled by the Authority. <u>The entry of Israelis into those areas not only involves danger to life, but was barred</u> in orders issued by the military commander in the Judea and Samaria region. (Order Regarding Security

> Directives (Judea and Samaria) (No. 378), 5730-1970 – Proclamation Regarding Closing of Area (Prohibition on Entry and Presence) (Israelis) (Area H1); Order Regarding Security Directives (Judea and Samaria) (No. 378), 5730-1970 – Proclamation Regarding Closing of Area (Prohibition on Entry and Presence) (Israelis) (Area A)).

Misc.Civ.Mot. 9340/09 (Jerusalem District Court) *Rajbi v. Tal Building and Investments Karnei Shomron* (1/3/2010) at ¶ 12 (published by "Nevo") (emphasis supplied).

12. One of the orders referenced by the *Rajbi* court, which was issued in October 2000 and remains in force today, provides that the locations in the West Bank defined as "Area A" – which encompasses all the Palestinian cities in the West Bank including Jenin and Ramallah – is a "closed territory" and that an "Israeli shall not enter or be present" in those cities. Order Regarding Security Directives (Judea and Samaria) (No. 378), 5730-1970 – Proclamation Regarding Closing of Area (Prohibition on Entry and Presence) (Israelis) (Area A) ("Order") at §§ 1-2.

13. Significantly, the Order defines "Israeli" as including both any "resident of Israel" and any person "holding a valid permit to enter Israel." *Id.* at § 1.

14. Thus, Israeli criminal law prohibits any of the plaintiffs who reside in Israel and all other Israeli residents from entering Jenin, Ramallah or any other Palestinian city in the West Bank.

15. Likewise, because this prohibition applies to any person "holding a valid permit to enter Israel" – i.e. any Israeli entry visa – it would be illegal for plaintiffs' U.S. counsel to travel via Israel to Jenin, Ramallah or any other Palestinian city in the West Bank. To avoid violating this prohibition plaintiffs' U.S. counsel would have to travel to the West Bank via Jordan.

16. Section 3 of the Order does provide for the grant of special permits allowing persons otherwise barred by the Order to enter Palestinian cities in the West Bank. However, under the terms of § 3, such a permit must be obtained from the Israeli military commander of the West Bank or his authorized subordinate. The Israeli Supreme Court has held, in a decision denying an action brought to compel the military commander to issue permits under § 3, that the military commander has broad discretion to deny requests for permits, particularly where personal safety concerns are at issue. See H.C.J. 9293/01 *Baraka v. Minister of Defense* 56(2) P.D. 509.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

November 30, 2011

_____
Jeremy Stern