## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

        v.

Civ. No. 04-397 (GBD) (RLE)

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' LETTER OPPOSITION OR, ALTERNATIVELY, IN REPLY TO THE LETTER OPPOSITION

#### Background

Plaintiffs' Motion to Compel compliance with the subpoena served on non-party the British Broadcasting Corporation ("BBC") (DE 159) is currently pending before the Court.

Defendants Palestine Liberation Organization ("PLO") and Palestinian Authority ("PA") did not formally file an opposition to plaintiffs' motion to compel, presumably in light of the rule that "in the absence of privilege, a party lacks standing to seek to quash a subpoena issued to someone who is not a party to the action." *Saperstein v. Palestinian Authority*, 2010 WL 1371384 at *3 (E.D.N.Y. 2010) (striking for lack of standing an opposition improperly filed by the PLO and PA to a motion to compel the BBC to comply with a subpoena).

But in a blatant attempt to evade that rule, during the November 17, 2011, status conference in this matter, defendants' counsel delivered a letter to the Court that challenges aspects of plaintiffs' Motion to Compel. Exhibit A ("Letter Opposition").

The Court has not docketed defendants' Letter Opposition and to date it remains unclear to plaintiffs whether the Court intends to consider it in deciding the pending Motion to Compel.

In light of this uncertainty, the plaintiffs are respectfully filing the instant memorandum (and accompanying motion). As discussed in Part I below, the defendants have no standing to oppose the Motion to Compel and their Letter Opposition is thus improper and should be stricken. Alternatively – i.e. if the Court declines to strike the Letter Opposition – it should reject the defendants' assertions therein as meritless, for the reasons set forth below in Part II.

## ARGUMENT

I.   **Defendants' Letter Opposition Should Be Stricken**

It is black-letter law that a party has no standing to oppose a subpoena served on a non-party "unless the objecting party claims some personal right or privilege with regard to the documents sought." Wright & Miller, 9A *Federal Practice & Procedure* § 2459 (citing cases). *See also McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995) ("[A] party does not have standing to object to a subpoena issued to a third-party witness unless the movant has alleged some personal privacy right or privilege to the documents sought.") (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2nd Cir. 1975); *Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979); *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y. 1967)); *U.S. v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) (same); *U.S. v. Nachamie*, 91 F.Supp.2d 552, 559 (S.D.N.Y. 2000).

The Letter Opposition submitted by the PLO and PA cannot and so does not assert any personal right or privilege with regard to the discovery sought. Thus, it is improper. Moreover, defendants PLO and PA know perfectly well that they have no standing to oppose plaintiffs' subpoena: in the *Saperstein* matter the PLO and PA filed papers opposing a motion to compel BBC to comply with a subpoena seeking the same recordings sought here, which were stricken as improper. *See Saperstein v. Palestinian Authority*, 2010 WL 1371384 at *3 (E.D.N.Y. 2010).

Therefore, the Letter Opposition should be stricken and defendants PLO and PA should <u>again</u> be admonished against any further discovery misconduct. *Sokolow v. PLO*, 583 F.Supp.2d 451, 460 (S.D.N.Y. 2008) (cautioning defendants PLO and PA against discovery misconduct).

## II.     Alternatively, the Arguments in Defendants' Letter Opposition Are Meritless

If the Court declines to strike defendants' Letter Opposition it can and should reject the arguments contained therein on the merits, for the reasons set forth below.

Defendants' Letter Opposition challenges the following assertion contained in plaintiffs' Memorandum in support of their Motion to Compel:

> Importantly, defendants do not dispute, and indeed openly admit, that they fund Fatah. *See* Exhibit F at 18-19 ("[T]here is a money flow from the PA to the PLO and from the PLO to Fatah … Fatah … ought to be funded by the PLO, and it is.").

Letter Opposition at 1, quoting Plaintiffs' Memorandum in Opposition to BBC's Motion to Quash Subpoena and in Support of Plaintiff's Motion to Compel (DE 159) at p. 4.

Defendants admit that plaintiffs' Exhibit F is an Amended Joint Proposed Schedule signed and filed by the instant defendants in the *Saperstein* matter containing the admission quoted by plaintiffs (i.e. "**there is a money flow from the PA to the PLO and from the PLO to Fatah … Fatah … ought to be funded by the PLO, and it is**."). Letter Opposition at 1. Defendants argue, however, that they made this admission "before any discovery had been had" in *Saperstein*, and that the subsequent deposition testimony of the PLO's own employee in that case "revealed" this admission to be incorrect. Letter Opposition at 1. Therefore, defendants claim, the plaintiffs' reliance on defendants' prior admission in *Saperstein* that both the PA and PLO fund Fatah, in support of their Motion to Compel compliance with the BBC subpoena, is a "misstatement of fact" and should be rejected. Letter Opposition, *passim*.

3

The Court should dismiss this line of argument for four reasons:

***First***, the statement contained in defendants' filing in *Saperstein* conceding their funding of Fatah constitutes a binding party admission. *See Purgess v. Sharrock*, 33 F.3d 134, 143-144 (2nd Cir. 1994) (affirming "the admission of a statement made by defense counsel in a footnote in a memorandum of law filed in support of defendants' motion to dismiss the complaint in an earlier related case" notwithstanding that "the lawyer who drafted the statement now states that it was a mistake" since "Counsel's statement of fact constituted an admission of a party. It was made in a legal brief filed with the court subject to the penalty of sanctions.").

Thus, just as in *Purgess*, the instant defendants cannot "undo" their admission that they fund Fatah by now claiming that their lawyer "made a mistake." Nor is the testimony of the PLO's Rule 30(b)(6) witness in *Saperstein* of any moment here: even if that testimony was not hearsay in the *Saperstein* matter (which is far from certain) it is inadmissible hearsay in this case.

Therefore, plaintiffs' assertion that both the PA and PLO fund Fatah not a "misstatement of fact" as defendants' claim in their Letter Opposition; on the contrary, that assertion is founded on a judicial admission in federal court that binds the plaintiffs in this action. *See Purgess*, *id.*.

***Second***, defendants' claim that their admission in *Saperstein* was made "before any discovery had been had" and that the truth was revealed only when the PLO's Rule 30(b)(6) designee testified (Letter Opposition at 1) is risible: obviously, the PLO did not require discovery from itself in order to know whether it funded Fatah. Thus, the claim that the PLO needed the testimony of its own Rule 30(b)(6) designee to learn that it was funding Fatah is absurd. The far more likely and believable scenario is that the defendants told the truth in their initial filing

4

(plaintiffs' Exhibit F) before realizing the significance of their factual concession, and then had their Rule 30(b)(6) designee in Amman attempt to back away from that concession.[1]

***Third***, and critically, defendants do not dispute that defendant PA (as opposed to defendant PLO) did indeed fund Fatah. On the contrary, on June 15, 2010, defendants' counsel, Brian Hill, Esq. (the author of the Letter Opposition), wrote to the instant plaintiffs' undersigned counsel to confirm – indeed to insist – that the PA funded Fatah *circa* 2000-2002:

> Your assertion that my "recent email indicated for the first time that the PA directly funded Fatah" is incorrect. As I told you in that June 4, 2010 email (copy attached), the fact that the PA provided some funds to Fatah during the relevant time period was provided to you on multiple occasions prior to my June 4, 2010 email including, *inter alia*, (1) the PA's October 19, 2009 document production, (2) the PA's November 19, 2009 interrogatory response, (3) the PA's February 24, 2010 supplemental document production, (4) the March 9, 2010 deposition of Prime Minister Fayyad, and (5) the April 29, 2010 hearing. All of these prior disclosures were documented in my attached email.

Exhibit B (emphasis added).

Thus, Mr. Hill has confirmed that defendant PA provided funding to Fatah during the years preceding the attacks at issue in this case, and his claim in the Letter Opposition that plaintiffs' assertion that defendants' funded Fatah is a "misstatement" is therefore frivolous. Moreover, defendants' admission that the PA funds Fatah is sufficient (regardless of whether the PLO also does so) to support plaintiffs' Motion to Compel BBC to comply with the subpoena.

---

[1] In any event, even if the testimony of the PLO's Rule 30(b)(6) witness in another case were admissible in this action (which it is not), it would be for the jury in this case to decide whether it believes defendants' initial admission or their subsequent repudiation of that admission.

*Fourth*, in *Saperstein* the defendants <u>admitted</u> to funding Fatah in order to persuade the federal court in Miami that the American terror victim plaintiff in that action should not be permitted to take certain discovery. *See* DE 159, Exhibit F, at 18 ("Plaintiff has imposed substantial discovery demands, and expresses a desire to impose additional discovery, in an attempt to prove a given: there is a money flow from the PA to the PLO and from the PLO to Fatah."). *See also id*. at 14 ("Plaintiff's discovery regarding payments to Fatah is unnecessary. Defendants do not contest that the PA funds the PLO or that the PLO funds its constituent political entities, including Fatah.").

Now, in <u>this</u> case, they <u>deny</u> that the PLO funded Fatah – once again in order to persuade a federal court that U.S. terror victim plaintiffs should be denied the discovery they seek.

Thus, the only "constant," from the defendants' point of view, is that American victims of terrorist attacks should always be denied the discovery they need to prove defendants' liability – whereas defendants' funding of Fatah can either be denied or admitted to the U.S. federal courts, as may be required by defendants to achieve their goal of blocking discovery.

This Court should put an end once and for all to these defendants' playing fast and loose with the facts before the federal courts, as suits their litigation goals of the moment.

### III.   Conclusion

Defendants' Letter Opposition should be stricken; alternatively, the Court should reject the defendants' assertions therein as meritless.

                            Plaintiffs, by their Attorney,

                            /s/ Robert J. Tolchin
                            Robert J. Tolchin
                            111 Livingston Street, Suite 1928
                            Brooklyn, New York 11201
                            (718) 855-3627
                            Fax: (718) 504-4943
                            rjt.berkman@gmail.com