**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                   )
MARK I. SOKOLOW, *et al.*,          )
                                   )
                 Plaintiffs,        )
                                   )
        v.                          )        Civil Action No. 04cv397 (GBD) (RLE)
                                   )
THE PALESTINE LIBERATION            )
ORGANIZATION, *et al.*,             )
                                   )
                 Defendants.        )
                                   )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.........................................................................................................................1

PROCEDURAL BACKGROUND .............................................................................................2

STANDARD OF REVIEW .........................................................................................................3

ARGUMENT ................................................................................................................................4

      I.        PLAINTIFFS' NON-FEDERAL CLAIMS MUST BE
               DISMISSED FOR LACK OF CAPACITY.........................................................4

               A.       Non-Federal Claims Against an Unincorporated
                        Association Are Not Cognizable in This Court Unless
                        the Association's Entire Membership Had Full
                        Knowledge of and Authorized in Advance or
                        Subsequently Ratified Each Specific Act Complained of.......................4

               B.       The Courts Have Consistently Deemed the PA and the
                        PLO to be Unincorporated Associations for Purposes of
                        Applying the Federal Rules of Civil Procedure. ....................................9

               C.       Because the Pleadings Fail to Allege That the Entire
                        Membership of the PA and the Entire Membership of
                        the PLO Had Full Knowledge of the Seven Attacks at
                        Issue in This Case and Unanimously Authorized or
                      Ratified Those Attacks, the Court Should Enter
                      Judgment in Favor of Defendants on All of Plaintiffs'
                      Non-Federal Claims. ..............................................................................10

      II.      IN THE ALTERNATIVE, THE COURT SHOULD DECLINE
               TO EXERCISE SUPPLEMENTAL JURISDICTION OVER
                PLAINTIFFS' NON-FEDERAL CLAIMS. ....................................................12

               A.       Israeli Tort Law Governs Plaintiffs' Non-Federal
                        Claims.......................................................................................................12

                B.       The Court Should Decline to Exercise Supplemental
                        Jurisdiction over Plaintiffs' Numerous Israeli Law
                        Claims Because They Raise Complex Questions of
                        Foreign Law or Would Predominate the Single Federal
                        Law Claim over Which the Court Has Original
                        Jurisdiction. ............................................................................................15

      CONCLUSION ............................................................................................................20

## <u>INTRODUCTION</u>

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Courts routinely consider motions for partial judgment on the pleadings.  *See*, *e.g.*, *Goodman v. Merrill Lynch & Co.*, 716 F. Supp. 2d 253 (S.D.N.Y. 2010) (granting defendant's motion for partial judgment on the pleadings); *Lessambo v. PricewaterhouseCoopers, L.P.*, No. 08-cv-6272, 2009 U.S. Dist. LEXIS 61912 (S.D.N.Y. June 29, 2009) (same).

Pursuant to Rule 12(c), the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") (collectively "Defendants") respectfully move for dismissal of the non-federal law claims pled in Plaintiffs' First Amended Complaint ("Complaint") (DE 4) including the following:  wrongful death (Second Count); battery (Fourth Count); assault (Fifth Count); negligence (Seventh Count); intentional infliction of emotional distress (Eighth Count); and negligent infliction of emotional distress (Ninth Count).

Plaintiffs' claims for pain and suffering (Third Count), loss of solatium and consortium (Sixth Count), civil conspiracy (Tenth Count), aiding and abetting (Eleventh Count), vicarious liability/respondeat superior (Twelfth Count), and inducement (Thirteenth Count) do not constitute independent private causes of action under U.S. federal law.  To the extent these counts reflect causes of action under the governing non-federal law, Defendants also seek dismissal of those claims.

Defendants' motion is filed "early enough not to delay trial," as required by Rule 12(c). Fact discovery is set to close on December 21, 2012, and expert discovery closes on April 22, 2013.  DE 131.  No trial date has been set.

## PROCEDURAL BACKGROUND

Plaintiffs commenced this action in 2004, seeking $1 billion in compensatory damages ($3 billion after trebling) under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, for injuries allegedly resulting from seven separate alleged terrorism attacks occurring in or near Jerusalem during the 2001-2004 period. *See* DE 4. Under the ATA, treble damages are available where a U.S. national has been killed or injured in an act of international terrorism. 18 U.S.C. § 2333(a). A variety of individuals and groups are alleged to have carried out the terrorist attacks at issue — with no one set of individuals or groups alleged to be responsible for all the attacks. The attacks are linked only by their general geographic location. The Plaintiffs could not obtain personal jurisdiction over those they allege carried out the attacks. Plaintiffs, however, successfully asserted personal jurisdiction over the PA and PLO, as to whom they seek to impose liability under various theories of vicarious or secondary liability.

The 42 Plaintiffs fall into three broad categories: those who were injured in the attacks, family members of those killed in the attacks, and family members of those injured but not killed in the attacks. Most, but not all, of the Plaintiffs are alleged to be U.S. nationals. The residency of the Plaintiffs is not pled in the Complaint and Plaintiffs have objected to discovery regarding their state or country of residence. Some of the Plaintiffs reside in Israel, some live in the United States, and one lives in France. Transcript of Civil Cause for Conference (Sept. 13, 2011) at 16-17 (DE 152).

In addition to the ATA claim (pled as the First Count), the Complaint includes twelve other counts, none of which arises under federal law. The Complaint does not identify the governing law (whether New York, Israeli, or otherwise) for these non-federal claims. Nor have Plaintiffs notified Defendants of an intent to raise an issue of foreign law. *See* Fed. R. Civ. P.

44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.").

Defendants previously had moved to dismiss Plaintiffs' pendent non-federal law claims pursuant to Rule 12(b)(6) and also had moved for dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See* DE 44 at 21-25; DE 45. In its Memorandum Decision and Order of September 30, 2008, the Court denied Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction without prejudice to renew after limited jurisdictional discovery. DE 58. In the same decision, the Court stated that it was "inappropriate" to address Defendants 12(b)(6) argument "until the threshold issue of personal jurisdiction is determined." *Id*. at 13 n.9. The Court thus denied the "Rule 12(b)(6) branch of defendants' motion without prejudice" to renew following resolution of the renewed Rule 12(b)(2) motion. *Id.*

After jurisdictional discovery, Defendants renewed their motion to dismiss for lack of personal jurisdiction. DE 82. In their renewed motion, Defendants preserved their argument that the non-federal claims should be dismissed. *Id.* at 25. In a decision dated March 30, 2011, the Court denied Defendants' renewed motion to dismiss for lack of personal jurisdiction. DE 87. On April 13, 2011, Defendants filed an Answer to Plaintiffs' Complaint. DE 92.

With the threshold issue of personal jurisdiction decided, the dismissal of Plaintiffs' non-federal pendent tort claims is ripe for the Court's consideration.

## STANDARD OF REVIEW

"Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995). When deciding a Rule 12(c) motion, the court applies the standard applicable to a Rule 12(b)(6) motion to dismiss. *Hayden v. Patterson*, 594 F.3d 150, 160 (2d Cir. 2010).

"To survive a Rule 12(c) motion, [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. All factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Id*. However, the Court need not accept as true legal conclusions that are couched as factual allegations. *Id*.

## ARGUMENT

### I.    PLAINTIFFS' NON-FEDERAL CLAIMS MUST BE DISMISSED FOR LACK OF CAPACITY.

In federal court, the law of the forum state controls the capacity of an unincorporated association to be sued for pendent non-federal claims. Fed. R. Civ. P. 17(b)(3). New York law permits a plaintiff to sue an unincorporated association only if the conduct complained of was approved or ratified by each and every member of the association, with full knowledge of such conduct. The PA and PLO are treated as unincorporated associations for purposes of applying the Federal Rules of Civil Procedure. Because the Complaint fails to allege that the entire membership of the PA and the entire membership of the PLO had full knowledge of the seven attacks at issue in this case and unanimously authorized or ratified those attacks, the Court should enter judgment in favor of Defendants on all of Plaintiffs' non-federal law claims.

#### A.    Non-Federal Claims Against an Unincorporated Association Are Not Cognizable in This Court Unless the Association's Entire Membership Had Full Knowledge of and Authorized in Advance or Subsequently Ratified Each Specific Act Complained of.

The Federal Rules of Civil Procedure determine who may be sued in federal court. Under Rule 17(b), an unincorporated association has the capacity to be sued when a plaintiff seeks to enforce a federal statutory or constitutional right. Fed. R. Civ. P. 17(b)(3)(A). By contrast, the law of the forum state in which the district court is located controls the question of

4

an unincorporated association's capacity to be sued when a plaintiff asserts claims that do not

arise under federal law.  Fed. R. Civ. P. 17(b)(3).

In this case, the applicable law for determining party capacity is that of New York.

Under New York law, an unincorporated association has no distinct legal identity or status

separate from that of its members.  *Martin v. Curran*, 101 N.E. 2d 683, 685 (N.Y. 1951).

Moreover, no agency relationship between the members is implied, meaning that the acts of

some members cannot bind the other members without their consent prior to the act or their

knowing ratification after the fact.  *Id.*

At common law, plaintiffs were required to name all of the members of an

unincorporated association in any suit in which associational liability was alleged.  *Id.*  This was

"designed to protect the members of [an] unincorporated association from unwitting liability for

the acts of other members."  *R.M. Perlman, Inc. v. N.Y. Coat, Suit, Dresses, Rainwear & Allied*

*Workers' Union Local 89-22-1*, 789 F. Supp. 127, 131 (S.D.N.Y. 1992).  "To avoid the

inconvenience of naming and serving every member of the association in an action against

them," the statutory provision that is now codified as New York General Associations Law § 13

was enacted.  *Caines v. Prudential Ins. Co.*, 168 N.Y.S.2d 813, 814 (N.Y. Sup. Ct. 1957).[1]

---

[1] "The privilege of naming as defendants, and serving, the officers only, was first conferred by statutes in
1849 (ch. 258) and 1851 (ch. 455).  That statutory authorization has found its way, through the old Code
of Civil Procedure, into section 13 of our present General Associations Law."  *Martin*, 101 N.E. 2d at
685.  Section 13 currently provides:

> An action or special proceeding may be maintained, against the president
> or treasurer of such an association, to recover any property, or upon any
> cause of action, for or upon which the plaintiff may maintain such an
> action or special proceeding, against all the associates, by reason of their
> interest or ownership, or claim of ownership therein, either jointly or in
> common, or their liability therefore, either jointly or severally.

N.Y. Gen. Ass'ns Law § 13 (2011).

5

Under § 13, a plaintiff need only name the president or treasurer of the association as a representative defendant and serve him or her with process.

But in *Martin v. Curran*, the New York Court of Appeals explained that § 13 effected a procedural rather than substantive change in the law of associational liability.  Although § 13 eliminated the requirement that the plaintiff name each individual association member as a defendant and serve him or her with process, § 13 did not absolve the plaintiff of the obligation to allege and prove that all members of the association either authorized in advance the acts complained of or subsequently ratified those acts.  *Martin*, 101 N.E. 2d at 685; *accord Mounteer v. Bayly*, 86 A.D.2d 942, 943 (N.Y. App. Div. 1982).

The pleading standards under *Martin* are rigorous.  First, the alleged authorization or ratification by all of the association's members must be unanimous.  *Duane Reed, Inc. v. Local 338 Retail, Wholesale, Dep't Store Union*, 791 N.Y.S.2d 288, 290 (N.Y. Sup. Ct. 2004), *aff'd*, 794 N.Y.S.2d 25 (N.Y. App. Div. 2005), *appeal denied*, 835 N.E.2d 328 (N.Y. 2005). Unanimity is required whether the association has 2,000 members, *see Girolamo v. Teamsters Local 72, N.Y. State Thruway Employees*, No. 97-cv-9412, 1998 U.S. Dist. LEXIS 19819, at *2, *26 (S.D.N.Y. Dec. 21, 2998), or 30,000 members, *see Martin*, 101 N.E. 2d at 686.  There are no substitutes for the unanimity requirement.  *See, e.g.*, *Duane Reed, Inc. v. Local 338 Retail, Wholesale, Dep't Store Union*, 794 N.Y.S.2d 25, 26 (N.Y. App. Div. 2005) (holding that reliance on the "general language" of an unincorporated association's constitution is no substitute for unanimous authorization or ratification by its membership).[2]

---

[2] *See also Jung Sun Laundry Group Corp. v. Laundry, Dry Cleaning & Allied Workers Joint Bd.*, No. 10-cv-468, 2010 U.S. Dist. LEXIS 116961, at *12 (S.D.N.Y. Nov. 1, 2010) (dismissing non-federal claims where plaintiffs merely alleged that officers of the unincorporated association were involved in the conduct complained of); *Feltington v. Moving Picture Machine Operators' Union Local 306 of L.A.T.S.E.*, No. 77-cv-4417, 1978 U.S. Dist. LEXIS 15293, at *21 (S.D.N.Y. Sept. 27, 1978) (finding no
(footnote continued on next page)

Second, each and every member of the unincorporated association must have <u>known of
and consented to each specific act complained of</u>; a bald assertion of authorization or ratification
is insufficient. *A. Terzi Productions v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 492
(S.D.N.Y. 1998) (Sotomayor, J.); *see also Duane Reed, Inc.*, 794 N.Y.S.2d at 26 (requiring the
pleading of objective facts to support a finding of explicit authorization or ratification).  For
example, in *A. Terzi Productions*, the complaint alleged that "each member of defendant Local
One authorized and ratified the tortious acts of defendants . . . by approving the Agreement that
plaintiffs . . . were coerced into signing."  2 F. Supp. 2d at 491.  Then-Judge Sotomayor found
that such an allegation asked the court to assume that simply because the union's members
approved the agreement in question, they "necessarily knew of and ratified" the alleged tortious
conduct.  *Id*. at 492.  Judge Sotomayor rejected this approach, and held that "[s]uch a leap finds
no support in the Complaint's allegations.  Under basic agency principles, ratification of
another's actions requires full knowledge of the specific acts in question."  *Id*. (alterations
omitted).  Thus, to satisfy *Martin*'s "stringent" pleading requirements, the plaintiff had to "allege
that each and every one of Local One's members had full knowledge of the alleged death threats
made to the Producer, of the content of McGarty's phone calls to Terzi, [and] of the allegedly
defamatory statements made by the picketers."  *Id.* at 492.

---

(footnote continued from previous page)
basis in New York law for plaintiff's contention that an action taken by the association's executive board
should be treated as if consented to, before the act, by the entire membership), *rev'd in part on other
grounds*, 605 F.2d 1251 (2d Cir. 1979); *Saint v. Pope*, 12 A.D.2d 168, 174-76 (N.Y. App. Div. 1961)
(finding a complaint to be to be insufficient under *Martin* when it merely alleged that a "substantial
portion of the membership" of an unincorporated association had confirmed the action complained of);
*Roth v. United Federation of Teachers*, 787 N.Y.S.2d 603, 605, 610 (N.Y. Sup. Ct. 2004) (dismissing
claims for failing to allege unanimous authorization or ratification, even when members of defendant
union had, by vote, approved of the conduct complained of).

The pleading requirements for unincorporated associations impose a "nearly impossible burden to meet," *Building Industry Fund v. Local Union No. 3*, 992 F. Supp. 192, 195 (E.D.N.Y. 1996), which has made the *Martin* rule the target of frequent criticism.  *See*, *e.g.*, *A. Terzi Productions*, 2 F. Supp. 2d at 491; *Building Industry Fund*, 992 F. Supp. at 194; *R.M. Perlman, Inc.*, 789 F. Supp. at 131; *Hoesten v. Best*, 821 N.Y.S.2d 40, 52 (N.Y. App. Div. 2006).  Critics argue that *Martin*'s rationale is outdated, given the potentially large size of many unincorporated associations, and that its rule is "unsound social policy, in that it effectively insulates [unincorporated associations] from liability for damages for the tortious acts of its members." *R.M. Perlman, Inc.*, 789 F. Supp. at 131.

Yet, these same concerns were presented to the Court of Appeals in *Martin*, and they were dismissed.  *Martin*, 101 N.E. 2d at 686.  While recognizing the harshness of its own decision, the Court of Appeals stated that it "does not revise statutes, in an effort to eliminate seeming injustices, or to bring the law into accord with modern fact.  Whatever reasons be pressed on us for such changes, the power to change is not ours.  It is for the Legislature to decide whether or not to overhaul these settled rules . . . ."  *Id.  See also Hoesten*, 821 N.Y.S.2d at 52-53 ("[A]ny argument that these 'stringent pleading and evidentiary requirements for maintaining an action against an unincorporated association . . . should be relaxed is more appropriately directed to the Legislature.").

Thus, as "[u]nwise or outdated though it may be, *Martin* remains the law in New York." *Building Industry Fund*, 992 F. Supp. at 194.  And the courts, including New York's federal courts, are "obligated to follow it."  *Id.  See also Morrissey v. National Maritime Union*, 544 F.2d 19, 33 (2d Cir. 1976) (affirming dismissal of non-federal claims under *Martin*, and holding

that "we must follow the law of New York as declared by its highest court, whatever our own views might be").

Notably, there is no "pendent capacity" exception to this rule for cases such as this one, where Plaintiffs have pled both non-federal claims and federal claims allegedly arising from the same core of operative facts.  In such cases, the non-federal pendent claims remain barred.  *Sisso v. Islamic Rep. of Iran*, 448 F. Supp. 2d 76, 91 (D.D.C. 2006); *see also Caliber Partners, Ltd. v. Affeld*, 583 F. Supp. 1308, 1314 n.16 (N.D. Ill. 1984) (finding capacity lacking for non-federal claims pursuant to Rule 17(b) and rejecting plaintiff's theory of "pendent capacity").

**B.    The Courts Have Consistently Deemed the PA and the PLO to be Unincorporated Associations for Purposes of Applying the Federal Rules of Civil Procedure.**

In the context of other cases filed against Defendants, the courts have routinely treated both the PA and the PLO as unincorporated associations.  For example, in *Klinghoffer v. S.N.C. Achille Lauro*, 739 F. Supp. 854 (S.D.N.Y. 1990), Judge Stanton held that the PLO should "be treated as an unincorporated association."  *Id.* at 858.  More recently, two judges in the United States District Court for the District of Columbia have also held that the PA and the PLO are unincorporated associations.  *Estate of Parsons v. Palestinian Auth.*, No. 07-cv-1847, DE 14 at 13-14 (D.D.C. Sept. 30, 2008) (decision attached hereto as Exhibit A); *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107 (D.D.C. 2006).

There is no reason to treat the PA and the PLO any differently in this case.  "An unincorporated association is defined as a body of persons acting together and using certain methods for prosecuting a special purpose or common enterprise."  *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 485 (1st Cir. 1985) (citing Black's Law Dictionary 111 (5th ed. 1979)), *cert. denied*, 474 U.S. 1033 (1985).  As Judge Friedman explained in *Klieman*:

> It has . . . been determined by other federal courts that the PLO qualifies as an unincorporated association . . . because it is "composed of individuals, without a legal identity apart from its membership, formed for specific objectives." *Ungar v. Palestinian Authority*, 153 F. Supp. 2d at 89 [(D.R.I. 2001)]; *see also Klinghoffer v. S.N.C. Achille Lauro*, 739 F. Supp. 854, 858 (S.D.N.Y. 1990). The PA, which is "not presently recognized as a foreign state by the United States" therefore "also may be categorized as an organization composed of individuals seeking to achieve specific objectives, and which has no legal identity in the United States apart from its membership." *Ungar v. Palestinian Authority*, 153 F. Supp. 2d at 89.

*Klieman*, 467 F. Supp. 2d at 113; *see also Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 89 (D.R.I. 2001) (concluding that the PA qualifies as an unincorporated association); *cf. Sisso*, 448 F. Supp. 2d at 88 (concluding that Hamas qualifies as an unincorporated association).

Moreover, Plaintiffs have implicitly acknowledged that Defendants are unincorporated associations. Plaintiffs served the Complaint on Hassan Abdel Rahman, whom the Court has concluded was the Chief Representative of the PLO and the PA in the United States at the time of service. DE 87 at 5. Plaintiffs effectuated service pursuant to Rule 4(h)(1)(B), *id.*, which governs service on a domestic or foreign corporation, a partnership, or other unincorporated association. Fed. R. Civ. P. 4(h)(1)(B). Because Defendants are neither corporations nor partnerships, Plaintiffs necessarily served Mr. Rahman as a representative of Defendants *qua* unincorporated associations.

**C.    Because the Pleadings Fail to Allege That the Entire Membership of the PA and the Entire Membership of the PLO Had Full Knowledge of the Seven Attacks at Issue in This Case and Unanimously Authorized or Ratified Those Attacks, the Court Should Enter Judgment in Favor of Defendants on All of Plaintiffs' Non-Federal Claims.**

At least one federal court has dismissed pendent non-federal claims against the PA and the PLO for lack of capacity. Exhibit A at 13-14; *cf. Sisso*, 448 F. Supp. 2d at 91-92 (dismissing non-federal claims against Hamas for lack of capacity). This Court should do so as well.

The non-federal counts should be dismissed because, under New York law, an unincorporated association cannot be sued in its own name.  Here, Plaintiffs have sued the PA and the PLO in their own names, warranting dismissal of the non-federal counts.

Moreover, dismissal of those counts should be with prejudice.  Granting Plaintiffs leave to amend the Complaint to name the President or Treasurer of the PA and PLO as representative defendants would be futile.  The Complaint is devoid of allegations sufficient to satisfy the requirements of *Martin*.  It does not allege — and Plaintiffs could never establish — that each member of the PA and PLO knowingly approved or ratified the seven terrorist attacks at issue in this lawsuit.  The Complaint merely asserts that Defendants authorized "a series of terrorist attacks against civilians in Israel and the West Bank," DE 4 ¶ 53, and that the individuals who committed the seven attacks at issue in this case acted "pursuant to the prior authorization" and ratification of Defendants.  *Id.* at ¶¶ 60, 76, 85, 99, 107, 115, 125, 214.  But the Complaint altogether fails to allege that the entire membership of the PA and the entire membership of the PLO <u>unanimously</u> authorized or ratified the seven attacks, much less that they did so with <u>full knowledge of each specific attack</u>.  *A. Terzi Productions*, 2 F. Supp. 2d at 491; *Duane Reed, Inc.*, 791 N.Y.S.2d at 290.  Much like in *A. Terzi Productions*, the Court would have to assume that simply because Defendants purportedly authorized "a series of terrorist attacks against civilians in Israel and the West Bank," DE 4 ¶ 53, all of the members of the PA and all of the members of the PLO necessarily knew of and ratified the seven specific attacks at issue in this case.  "Such a leap finds no support in the Complaint's allegations."  *A. Terzi Productions*, 2 F. Supp. 2d at 492.

Thus, accepting all of the allegations in the Complaint as true and with all reasonable inferences drawn in favor of Plaintiffs, *see Hayden*, 594 F.3d at 160, Defendants are entitled to

judgment as a matter of law as to the Plaintiffs' non-federal pendent claims, including the Second, Fourth, Fifth, Seventh, Eighth, and Ninth Counts. The Court should therefore dismiss all of Plaintiffs' non-federal pendent claims with prejudice. *See*, *e.g.*, *A. Terzi Productions*, 2 F. Supp. 2d at 491; Exhibit A at 13-14; *Sisso*, 448 F. Supp. 2d at 91-92; *Martin*, 101 N.E. 2d at 686.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NON-FEDERAL CLAIMS.

If the Court concludes that Plaintiffs' non-federal claims are not barred by lack of party capacity, the Court should nonetheless decline to exercise supplemental jurisdiction over those claims and enter judgment in favor of Defendants. Dismissal is appropriate because Plaintiffs' non-federal claims, which arise under Israeli law, raise complex questions of foreign law that would ultimately predominate over Plaintiffs' ATA claim. *See* 28 U.S.C. § 1367(c)(1) and (c)(2).

### A.    Israeli Tort Law Governs Plaintiffs' Non-Federal Claims.

When adjudicating state law claims that are pendent to a federal claim, a federal court must apply the choice of law rules of the forum state. *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). As the Second Circuit explained in *Lazard Freres & Co. v. Protective Life Ins. Co.*, "[i]n New York, 'the relevant analytical approach to choice of law in tort actions' is the 'interest analysis,'" under which "'the law of the jurisdiction having the greatest interest in the litigation will be applied.'" 108 F.3d 1531, 1539 (2d Cir. 1997) (quoting *Schultz v. Boy Scouts*, 65 N.Y.2d 189, 480 N.E.2d 679, 684, 491 N.Y.S.2d 90 (N.Y. 1985)). *See also White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (stating that New York courts have adopted a "flexible choice of law approach and seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute") (internal citation and quotation omitted). Under the interest analysis applicable to tort actions, "the significant

12

contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz*, 480 N.E.2d at 684.

As a further refinement to its interest analysis, "the New York Court of Appeals has distinguished between rules regulating conduct and rules governing loss allocation." *Comer v. Titan Tool, Inc.*, 875 F. Supp. 255, 259 (S.D.N.Y. 1995). If conflicting conduct-regulating laws are at issue, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *In re Ski Train Fire in Kaprun, Aus.*, 230 F. Supp. 2d 376, 390 (S.D.N.Y. 2002) (internal citation and quotation omitted).

Because terrorism cases involve conduct-regulating laws, the law where the terrorist attack occurred generally applies. Accordingly, applying New York's choice of law rules, this Court has previously held that Israeli law applies to non-federal tort claims in a case involving an alleged terrorist attack in Israel. *Wultz v. Bank of China, Ltd.*, No. 11-cv-1266, 2011 U.S. Dist. LEXIS 86009, at *29 (S.D.N.Y. Aug. 3, 2011). In that case, Judge Scheindlin reasoned:

> [B]ecause the interest analysis does not conclusively point in favor of only one choice, I defer to the weight of the particular precedent that suggests that when conduct-regulating rules are at issue, and when the suit arises out of personal injury, the locus of the tort controls. I therefore choose to apply the law of Israel.

*Id*. Courts in other jurisdictions applying comparable choice of law factors have likewise concluded that Israeli law governs non-federal tort claims arising from alleged terrorist attacks in Israel. *See Estate of Botvin v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 223-26 (D.D.C. 2011) (concluding that "Israeli law most appropriately governs the plaintiffs' claims" in a case involving a suicide bombing in Israel); *Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 98-99 (D.R.I. 2001) (holding that Israeli law applied to plaintiffs' non-federal tort claims in an Anti-Terrorism Act case arising out of a shooting attack in Israel).

13

The seven attacks at issue in this case all took place in or near Jerusalem; hundreds of Israelis were injured or killed; and Plaintiffs have not alleged that the victims were targeted as Americans.  DE 4 ¶¶ 58-59, 72, 81, 95, 103, 111, 121; *Wultz*, 2011 U.S. Dist. LEXIS 86009, at *27-*28.  Israel, as the locus of the tort, has the most significant interest in the litigation and its law should be applied to the Plaintiffs' non-federal law claims.

The parties' domiciles do not dictate a different result.  Defendants are domiciled in the West Bank.  Plaintiffs refused to disclose their state or country of domicile in their Rule 26(a) disclosures.  At a hearing before Magistrate Judge Ellis on September 13, 2011, Plaintiffs' counsel stated:  "Nineteen of the 42 plaintiffs reside in Israel.  One resides in France. . . ."  DE 152 at 16-17.  In addition, counsel "believe[s]" the remainder live . . . some place in the United States."  *Id.* at 17.[3]  In support of their May 2011 motion to transfer venue to the Eastern District of New York, Plaintiffs stated that 7 of the Plaintiffs resided in the Eastern District of New York at the time the amended complaint was filed.  DE 96 at 2.  In opposing Defendants' motion to transfer venue to the District of Columbia, Plaintiffs did not allege that any of them resided in the Southern District of New York.  *See generally* DE 96.  Thus, based on the information provided by Plaintiffs, it appears that 19 reside in Israel, whereas only 7 reside (or resided) in New York.  Moreover, given that there are 42 Plaintiffs, it appears that the remaining 15 U.S.-based Plaintiffs likely are scattered among different U.S. states, giving no single state a greater interest — based on domicile — than that of Israel.

In any event, because the Plaintiffs' claims involve conduct-regulating laws, under New York choice of law rules, when the interest analysis "does not conclusively point in favor of only

---

[3] The Court denied Defendants' motion to compel Plaintiffs to disclose their contact information in their initial disclosures.  DE 152 at 5.

one choice," the locus of the tort controls. *Wultz v. Bank of China, Ltd.*, No. 11-cv-1266, 2011

U.S. Dist. LEXIS 86009, at *29 (S.D.N.Y. Aug. 3, 2011). Here, that is Israel.

> **B.    The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiffs' Numerous Israeli Law Claims Because They Raise Complex Questions of Foreign Law or Would Predominate the Single Federal Law Claim over Which the Court Has Original Jurisdiction.**

When a court has original jurisdiction over a claim, it has the power to hear any claim

that is so related to the claim over which the court has original jurisdiction that it "form[s] part of

the same case or controversy under Article III of the United States Constitution." 28 U.S.C.

§ 1367(a). Yet, the court need not exercise that power. "It has consistently been recognized that

pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of

Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Thus, a court may decline to exercise supplemental jurisdiction, if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district

court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining

jurisdiction.

28 U.S.C. § 1367(c). Only one of the four prongs of § 1367(c) needs to be satisfied in order to

decline to exercise supplemental jurisdiction. *Correspondent Servs. Corp. v. J.V.W. Invs.*, 205 F.

Supp. 2d 191, 200 (S.D.N.Y. 2002). If the court determines that any of the factors applies, the

court also must consider whether judicial economy, convenience, comity, and fairness to litigants

favors the exercise of jurisdiction. *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d

234, 245 (2d Cir. 2011).

Here, §§ 1367(c)(1) and (c)(2) warrant the Court's exercise of its discretion to decline to exercise supplemental jurisdiction over Plaintiffs' numerous Israeli law claims. Foreign law claims, more so than pendent state law claims, are likely to raise novel and complex questions of law. In fact, in most cases, foreign law claims are inherently novel and complex, for the simple reason that the U.S. court would be required to interpret and apply laws arising under a foreign legal system. The inherent complexity and novelty of foreign law claims, which triggers § 1367(c)(1), often also causes the foreign law claims to predominate over the claim as to which the court has original jurisdiction, triggering § 1367(c)(2). Thus, where foreign law claims are involved, the (c)(1) and (c)(2) analysis is often intertwined, and courts have invoked both factors in declining to exercise supplemental jurisdiction over foreign law claims. *See Leibovitch v. Syrian Arab Republic*, No. 08-cv-1939, 2011 U.S. Dist. LEXIS 11130, at *7 (N.D. Ill. Feb. 1, 2011) (holding that "supplemental jurisdiction will be declined based on §§ 1367(c)(1) and (2) which provide that the court may decline to hear claims that raise complex questions of state (Israeli) law and/or ones that would predominate over the claims which provide original jurisdiction"); *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1222-23 (D. Kan. 2010) (declining to exercise supplemental jurisdiction "based on the presence of novel and complex issues of foreign [EU] law" and because the EU law claims would substantially predominate over litigation of the plaintiff's federal claims); *see also Romero v. Drummond Co.*, 552 F.3d 1303, 1318 (11th Cir. 2008) (holding that the district court was "was well within its discretion to decline jurisdiction" and upholding the district court's conclusion that plaintiffs' claim of wrongful death under Colombian law raised complex issues).

*Wultz v. Bank of China*, No. 11-cv-1266 (S.D.N.Y.), which involves a fraction of the number of Israeli law claims at issue in this case, illustrates the complexity and significant

resources involved in determining the proper scope and application of Israeli law. *Wultz* further demonstrates how complex, pendent foreign law claims can come to "substantially predominate[] over" a federal Anti-Terrorism Act claim. *Wultz* was initially brought in the United States District Court for the District of Columbia. Before it was transferred to this Court, the parties disputed at length the correct interpretation of Israeli law. Over the course of several months in 2009, the parties submitted more than 100 pages of expert declarations on the law of Israel as well as hundreds of pages of translated Israeli Supreme Court decisions and Israeli statutes relevant to the plaintiffs' three Israeli law claims (negligence, breach of statutory duty and vicarious liability). *Wultz v. Islamic Republic of Iran*, No. 08-cv-01460 (D.D.C.), DE 45 at 4. Even with the voluminous information submitted to the court, in August 2009 the plaintiffs (represented by the same counsel who represent the Plaintiffs in this case) moved to depose the defendant's Israeli law experts. According to the plaintiffs, this was necessary because the experts' claims about the substance of Israeli law were "absolutely baseless and even misleading." *Id.*, DE 43 at 5. The plaintiffs urged the court to permit the depositions because the parties were "at total loggerheads about the substance of Israeli law," because the depositions would simplify the court's task "of determining which version of Israeli law is correct," and because the plaintiffs did not see how the court could rule on the viability of their Israeli law claims without such depositions. *Id.*, DE 49 at 4.

As the *Wultz* plaintiffs explained in their motion to depose the defendant's Israeli law expert, determining the substance of Israeli law is not a simple task, especially when "the primary legal sources are in a foreign language, and the court must rely upon the potentially tendentious presentations made by the parties' declarants, translations of whatever statutes and case law the parties submit, and on any available secondary sources (e.g. treatises) in English."

17

*Id.*, DE 43 at 6.  In October 2010, Chief Judge Lamberth denied the plaintiffs' motion and simultaneously issued a 118-page decision, 42 pages of which were dedicated to parsing the plaintiffs' Israeli law claims.  *Id.*, DE 82; DE 83 at 74-116.

Yet even after the case was transferred to the Southern District of New York, the parties relitigated the choice-of-law issue over the course of several months in 2011.  *See Wultz v. Bank of China, Ltd.*, No. 11-cv-1266 (S.D.N.Y.), DE 111, DE 116, and DE 117.  In August 2011, Judge Scheindlin concluded that Israeli law applied to the plaintiffs' claims, and ordered the parties to further brief the state of mind required for liability under Israeli law.  *Wultz*, 2011 U.S. Dist. LEXIS 86009, at *7-*31.  Four months later, it appears that the parties have completed briefing the issue.  *See id.*, DE 132-DE 138; DE 140-DE 143.  But, along the way, the plaintiffs hired a new translator and sought an extension of time in which to file their memorandum of law — because the translations of the Hebrew texts and legal terms quoted by their experts "were totally inadequate."  *Id.*, DE 131 at 1.

Thus, in *Wultz*, as a result of the Israeli law claims, the parties have spent considerable time and expense in procuring hundreds of pages of expert declarations and hundreds of additional pages of translated Israeli Supreme Court decisions and Israeli statutes.  Moreover, the parties' filings have been consumed with matters concerning Israeli law ever since the case was transferred to the Southern District of New York in February 2011.

Here, Plaintiffs have pled at least six and up to eleven non-federal claims in their Complaint — including claims for wrongful death, battery, assault, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.  Each claim would require this Court to determine:  (1) the applicable statute of limitations; (2) who is a proper plaintiff, including whether adult siblings or those not present at the attack may recover; (3) the

elements of the cause of action, including standard of care and causation; (4) the basis for imposing liability on the PA and PLO for the acts of others; and (5) the types of damages available, including whether plaintiffs can recover for emotional damages resulting from injury to family members.  These are complex questions of Israeli law that fall squarely within the scope of § 1367(c)(1).  *See Romero*, 552 F.3d at 1318; *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d at 1222.

Moreover, all of this comes on top of the fact that "controlling Israeli law is written in Hebrew and any authorized English translations have not been updated in more than twenty years."  *Saperstein v. Palestinian Auth.*, No. 04-cv-20225, 2009 U.S. Dist. LEXIS 129484, at *11-*12 n.6 (S.D. Fla. June 12, 2009).  As in *Wultz*, as complicated as the litigation of Plaintiffs' federal Anti-Terrorism Act claim might be, "it appears as though the main federal claim would take a back seat to the resolution of a multitude of foreign law issues," *Elbex Video, Ltd. v. Tyco Int'l, Ltd.*, No. 06-cv-5178, 2008 U.S. Dist. LEXIS 29302, at *28-29 (D.N.J. Apr. 9, 2008); *see* 28 U.S.C. § 1367(c)(2), not the least of which will necessarily include dueling expert opinions on the proper interpretation of Israeli law and battles over translations.

Finally, exercising supplemental jurisdiction over Plaintiffs' Israeli law claims would not promote economy, convenience, fairness, or comity.  *Gibbs*, 383 U.S. at 726.  Instead, for the reasons discussed above, it would increase the costs and burdens on the parties and the Court, especially with respect to such issues as the increased need for expert witnesses and for translation services for documents and witnesses.  And it would delay the resolution of this lawsuit, which has already been pending for more than seven years.

Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' non-federal claims, and it should dismiss them for want of jurisdiction.  *See*, *e.g.*,

*Estate of Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1366-1367 (11th Cir. 2010); *Romero*, 552 F.3d at 1318; *Leibovitch*, 2011 U.S. Dist. LEXIS 11130, at *7; *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d at 1222.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and enter judgment in their favor on Plaintiffs' non-federal law claims and dismiss them with prejudice for lack of party capacity.  In the alternative, the Court should decline to exercise supplemental jurisdiction over those claims and dismiss them for want of jurisdiction.

January 3, 2012                          Respectfully Submitted,

                                         /s/ Mark J. Rochon
                                         Mark J. Rochon
                                         Richard A. Hibey
                                         Laura G. Ferguson
                                         Brian A. Hill
                                         MILLER & CHEVALIER CHARTERED
                                         655 15th Street, NW, Suite 900
                                         Washington D.C. 20005-6701
                                         (202) 626-5800 [tel]
                                         (202) 626-5801 [fax]
                                         mrochon@milchev.com [email]

                                         *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on the 3rd day of January 2012, a true and genuine copy of the foregoing was filed by ECF, which will automatically send notification and a copy of such filing to the following:

> Robert J. Tolchin, Esq.
> The Berkman Law Office, LLC
> 111 Livingston Street – Suite 1928
> Brooklyn, NY 11201
>  (718) 855-3627
>  (718) 855-4696
> rjt@tolchinlaw.com
>
> *Counsel for Plaintiffs*

  /s/ Mark J. Rochon
Mark J. Rochon