# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF MARK PARSONS, *et al.*, :
                                       :
      Plaintiffs,         :
                                         :
  v.                             : Civil Action No. 07-1847 (JR)
                                       :
THE PALESTINIAN AUTHORITY, *et*  :
*al.*,                                :
                                       :
      Defendants.        :

**MEMORANDUM ORDER**

       This action against the Palestinian Authority (PA) and the Palestinian Liberation Organization (PLO) is brought by the estate of Mark Parsons, his siblings, and the estate of his parents under the Antiterrorism Act of 1991 (ATA), 18 U.S.C. § 2331 *et seq*, and asserts as well the state law tort claim of intentional infliction of emotional distress (IIED). For the reasons set forth below, the defendants' motion to dismiss the IIED claim must be granted. The rest of the motion to dismiss is denied.

**Background**

       On a motion to dismiss, the allegations of the complaint are taken as true. Here is what the complaint alleges: On October 15, 2003, a remote control bomb blew up Parsons' vehicle near the Beit Hanoun junction in northern Gaza, Palestine, killing him. Parsons was part of a security detail

escorting United States diplomats to interview applicants for Fulbright scholarships.

The PLO and PA, through the Palestinian Preventive Security (PPS) organization, maintained bomb and munitions factories in Gaza and elsewhere. Arms and bombs from these factories were given by PPS to various named and unnamed terrorist organizations, including Hamas, the Palestinian Islamic Jihad, and the Al-Aqsa Martyrs Brigades for the purpose of carrying out terrorist acts. Parsons was killed by one of these bombs. It was detonated by a person or persons who conspired with one or both of the defendants to attack Parsons' convoy in an act intentionally directed at the United States.

Plaintiffs' ATA claims are that the defendants conspired with and aided and abetted Parsons' murderers, and that they provided material support to terrorists, including the terrorists who killed Parsons, in violation of 18 U.S.C. §§ 2339A and 2339B. Plaintiffs' IIED claim invokes this Court's jurisdiction under 28 U.S.C. 1367.

Defendants assert five grounds for dismissal:[1] (1) that this court lacks personal jurisdiction over them; (2) that the ATA counts fail to allege facts from which liability can

---

[1] Defendants also argue that plaintiffs' allegation of failure to provide adequate security in Gaza failed to state a claim under the ATA (or that such an omissions theory is barred by the tenets of tort law and/or the "political question doctrine") but the complaint does not make that claim.

- 2 -

plausibly be attributed to defendants; (3) that the defendants are analogous to a municipality and cannot be held vicariously liable for the acts of their agents; (4) that plaintiffs' supplemental state tort claim fails because District of Columbia law does not allow for an unincorporated association to be sued under its own name; and (5) that plaintiffs' claims are barred by the doctrine of laches.

**Analysis**

Personal Jurisdiction

A plaintiff need only plead a *prima face* case of personal jurisdiction. *Sisso v. Islamic Republic of Iran*, 448 F.Supp.2d 76, 87 (D.D.C. 2006). When deciding a Rule 12(b)(2) motion, the court may look to information beyond that contained in the complaint to determine if jurisdiction exists. *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947); *Artis v. Greenspan*, 223 F.Supp.2d 149, 152 (D.D.C. 2002).

Rule 4(k)(2) "permits a federal court to exercise personal jurisdiction over a defendant (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States." *Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005). These defendants do not contest service of process

or argue that they are subject to the jurisdiction of any single state court. Instead, they advance due process arguments of insufficient contacts and constitutionally cognizable unfairness. "Whether the exercise of jurisdiction is consistent with the Constitution turns on whether a defendant has sufficient contacts with the nation as a whole to satisfy due process." *Mwani*, 417 F.3d 1 at 11.

Plaintiffs allege that defendants maintain offices and have agents in the District of Columbia. In their opposition to the motion to dismiss, they allege various specific and ongoing contacts that defendants have had with the United States in recent years. Among these are one Mr. Safieh, who has held himself out to be the chief spokesman and representative of both the PLO and PA in the United States, lobbying, speaking and giving interviews to further the purposes of both defendants. Mr. Safieh resides in Washington, D.C., and was served here.

As for unconstitutionally cognizable unfairness, the murder of a U.S. citizen for political purposes is an act from which the resultant injury in the U.S. is a highly foreseeable result, such that defendants should "reasonably anticipate being haled into court" here. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). It is also a plausible inference from the facts alleged in the complaint that the bombing of Parsons' convoy, which included U.S. diplomats, was an act purposefully directed

- 4 -

at the United States. When a defendant purposefully directs an act at a forum "the Supreme court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Mwani v. bin Laden*, 417 F.3d 1, 12-3 (C.A.D.C. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 476.). The complaint alleges more than enough contacts between the defendants and the United States to support personal jurisdiction.

Nor does the assertion of personal jurisdiction in any way offend notions of fair play and substantial justice, despite the burdens that litigating in the United States will impose upon defendants. *Ashai Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113 (1987) ("A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'") (internal citation omitted). Whatever uncertainty there might be about the weight to be assigned the burden upon the defendant, here it has been resolved legislatively. 18 U.S.C.A. § 2334(d) ("Convenience of the Forum. - The district court shall not dismiss any action brought under section 2333 of this title on the grounds of the

inconvenience or inappropriateness of the forum chosen, unless – (1) the action may be maintained in a foreign court that has jurisdiction over the subject matter and over all the defendants; (2) that foreign court is significantly more convenient and appropriate; and (3) that foreign court offers a remedy which is substantially the same as the one available in the courts of the United States."). The defendants have made no showing, no effort of any kind, to bring themselves within these exceptions in this case or (apparently) in any of the other cases in which they have appeared.[2]

Rule 12(b)(6) Motion to Dismiss the ATA Claims

Defendants argue that plaintiffs' ATA claims are not "plausible" under the pleading standard articulated in *Bell Atlantic v. Twombley*, 127 S.Ct. 1955 (2007). They characterize the complaint as containing nothing more than formulaic recitations of liability unsupported by legal or factual grounds; they assert that the conspiracy count fails to specify, among other things, how or when the bomb that killed Parsons was manufactured and by whom, or even which terrorists organization carried out the attack; and they attack the aiding and abetting and material support counts, on similar grounds.

---

[2] *Gilmore v. Palestinian Interim Self Government Authority, et al.*, 422 F.Supp 2d 96, 102 n.4 (D.D.C. 2006); *Biton v. Palestinian Interim Self Government Authority*, 310 F. Supp. 2d 172, 179-80 n.6 (D.D.C. 2004); *Estates of Ungar ex. Rel Strachman v. Palestinian Auth.*, 153 F.Supp. 2d 76, 88 (D.R.I. 2001).

The complaint is concededly sparse, but it makes allegations that, if true, would comprise the elements of Plaintiffs' claims. The ATA provides that:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a). Within this statutory scheme, "international terrorism" is defined as:

> activities that—(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended— (I) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. § 2331(1).

This language casts a broad net, generally recognized by the judges of this and other courts to reach those who aid and abet, conspire with, or provide material support in violation of

18 U.S.C. § 2339A and § 2339B to the terrorist organization that directly causes a plaintiff's injuries. *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1011-1022 (7th Cir. 2002) (*Boim I*); *Burnett v. Al Baraka Inv. and Development Corp.*, 274 F.Supp.2d 86 (D.D.C. 2003); *Linde v. Arab Bank, PLC*, 384 F.Supp.2d 571(E.D.N.Y. 2005).

The next question is whether the complaint meets *Twombley*'s pleadings requirements. A complaint that does not contain "direct allegations . . . 'must contain . . . inferential allegations,'" *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citing *Twombley*, 127 S.Ct. at 1996, 1969), that must in turn be "plausible." *Twombley*, 127 S.Ct. at 1971. Analysis begins with a recitation of the elements of plaintiffs' claims. Title 18 U.S.C. § 2339A(a) proscribes "provid[ing] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out, a violation." The definition of "material support or resources" is broad and includes "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and

- 8 -

transportation, except medicine or religious materials." 18 U.S.C.A. § 2339A(b)(1). Title 18 U.S.C. § 2339B (a) makes unlawful "knowingly providing material support or resources to a foreign terrorist organization" or "attempt[ing] or conspir[ing] to do so" with "knowledge that the organization is a designated terrorist organization" or has engaged or engages in certain terrorist activities.

The elements of aiding and abetting are: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983). In general, "a joint venturer's liability extends to all reasonably foreseeable acts done in connection with the tortious act that the person assisted" commits. *Burnett v. Al Baraka Inv. and Development Corp.*, 274 F.Supp.2d 86, 105 (D.D.C. 2003) (citing *Halberstam*, 705 F.2d at 484). The elements of civil conspiracy are: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam*, 705

- 9 -

F.2d at 477 (citation omitted). "A conspirator may be liable for an injury even if he or she did not plan or know about the particular overt act that caused the injury, 'so long as the purpose of the act was to advance the overall object of the conspiracy.'" *Id.* at 487.

Imposition of secondary liability under the ATA requires knowledge that the organization in question commits acts of terrorism and intent to further these violent activities. *Burnett v. Al Baraka Inv. and Development Corp.*, 274 F.Supp.2d 86 at 106. "It is well-settled that the issue of intent is one for the jury to decide, and not an appropriate basis for ruling on a motion to dismiss." *Gilmore v. The Palestinian Interim Self-Government Authority*, 422 F.Supp.2d 96, 102 (D.D.C. 2006); (citing *McCormick v. United States*, 500 U.S. 257, 270, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991)). Adhering to traditional theories of tort law infused by Congress into the ATA, a plaintiff's injuries must also be the reasonably foreseeable result of a defendant's acts. *Boim I*, 291 F.3d 1000 at 1012.

Citing *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 511 F.3d 707 (C.A. 7 2007) (*BOIM II*), defendants argue that plaintiffs must also establish a "cause in fact" link between their acts and the alleged injury. The decision in *Boim II* was vacated by the en banc Seventh circuit after defendants submitted their briefs in this case. Order,

- 10 -

*Boim v. Quranic Literacy Inst. & Holy Land Foundation for Relief and Dev.*, No. 00-C-2905, (7th Cir. June 16, 2008). The exact contours of causality under the ATA have not yet been defined with certainty. At this stage of the litigation, however, "[i]t is too soon to attempt a precise formulation of the level of knowledge and intent or certainty of causation that will be necessary to get plaintiffs' claims to a jury." *Burnett*, 274 F.Supp.2d 86 at 102. The ultimate resolution of these questions will be informed by the "general common law tort principles" that Congress sought to codify in enacting § 2333. *Boim I*, 291 F.2d 1000 at 1012. Suffice it to say that plaintiffs have made allegations of fact that create an adequate causal link between the acts and the injuries when they allege: (1) that the PLO and PA through the PPS operated bomb and munitions factories in Gaza; (2) that the PPS supplied munitions from these factories to various terrorist organizations to further their terrorist activities; (3) that the PLO and PA supplied money and other assistance to these terrorists groups to further their violent ends; (4) that the bomb that killed Parsons came from a PPS factory; and (5) that the PLO and PA provided haven for terrorist, including those to which they provided bombs and monetary support.

Plaintiffs' inability to name the organization that killed Parsons does not doom their claims at this early stage.

- 11 -

Nor does defendants' theory that they should be given the same immunity against vicarious liability as municipal governments in the face of consistent findings that they are not, in fact governments. *Biton v. Palestinian Interim Self Government Authority*, 310 F. Supp. 2d 172, 179-80 n.6 (D.D.C. 2004); *Estates of Ungar ex. Rel Strachman v. Palestinian Auth.*, 153 F.Supp. 2d 76, 88 (D.R.I. 2001).

The provision of bombs and other munitions and money to terrorist organizations is, of course, the provision of material support and gives rise to considerably more than a "plausible" inference of intent to further violent activities, from which murder is certainly a foreseeable result. The circumstances of Parsons death - including the facts that he was in a security convoy for U.S. diplomats in Gaza that was attacked by a remote control bomb - gives ample support to the plausible inference that the attack was intended to "intimidate or coerce a population" and "influence the policy of a government." 18 U.S.C. § 2331.

<u>Laches</u>

There is an apparent circuit split over whether the doctrine of laches will be applied in a suit sounding solely in law. *Compare Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir.2001) (laches applies only in equity cases) with *Chirco v. Crosswinds Communities, Inc.,* 474 F.3d 227

- 12 -

(6th Cir. 2007) (laches can be asserted in both equity and law). There is no controlling precedent in this Circuit.

The question is an academic one, however, because the facts of this case would not support the defense of laches. Defendants have shown neither lack of diligence by the plaintiffs nor prejudice to themselves, *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005), and the complaint was filed within the statutory period of limitations.

State Tort Law Claims

Fed. R. Civ. P. 17(b) provides that the "state law where the court is located" determines the ability "to sue or be sued" for an "unincorporated association," at least for non-federal claims. See Fed R. Civ. P. 17(b)(3)(A). Under District of Columbia law, unincorporated associations cannot be sued under their own name. *Sisso v. Islamic Republic of Iran*, 448 F.Supp.2d 76, 87 (D.D.C. 2006).

The PLO and PA have been treated as unincorporated associations for purposes of service under Fed. R. Civ. P. 4(h). *Estate of Klieman v. Palestinian Authority*, 467 F.Supp.2d 107, 113 (D.D.C. 2006); *Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 153 F.Supp.2d 76 (D.R.I. 2001). Plaintiffs advance no reason why defendants should not be so treated under Rule 17(b). See *Sisso*, 448 F.Supp.2d 76 at 91 (holding that as an unincorporated association Hamas could not be

- 13 -

sued in the District of Columbia); *see also* 6 Am. Jur. 2d Associations and Clubs § 1("At common law, an unincorporated association is not an entity, and has no status distinct from the persons composing it, but is rather a body of individuals acting together for the prosecution of a common enterprise without a corporate charter but upon methods and forms used by corporations.")

## Conclusion

For the reasons set out above, it is ordered that the defendants' motion to dismiss [#7] the IIED claim is **granted** and the rest of the motion to dismiss is **denied.** The Clerk is directed to set a status conference, to be held within the next 30 days.


                                JAMES ROBERTSON
                          United States District Judge