```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                        :
 4   SOKOLOW, et al.,                   : 04-CV-397
                                        :
 5                       Plaintiffs,    : January 19, 2012
                                        :
 6                v.                    : 500 Pearl Street
                                        : New York, New York
 7   PALESTINE LIBERATION ORGANIZATION, :
      et al.,                           :
 8                                      :
                         Defendants.    :
 9   ------------------------------------X

10

11           TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
              BEFORE THE HONORABLE RONALD L. ELLIS
12             UNITED STATES MAGISTRATE JUDGE

13   APPEARANCES:

14   For the Plaintiffs:        ROBERT J. TOLCHIN, ESQ.
                                Berkman Law Office
15                              111 Livingston Street
                                Brooklyn, NY 11201
16
     For the Defendants:        BRIAN A. HILL, ESQ.
17                              Miller & Chevalier, Chtd.
                                655 15th Street, North West #900
18                              Washington, DC 20005

19

20   Court Transcriber:         RUTH ANN HAGER, C.E.T.**D-641
                                TypeWrite Word Processing Service
21                              211 N. Milton Road
                                Saratoga Springs, NY 12866
22

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1          THE CLERK:  Parties on the docket, Sokolow, et al. v.

2    PLO.

3          Will all counsel please identify yourselves for the

4    record?

5          MR. TOLCHIN:  Good morning, Your Honor.  Robert

6    Tolchin the Berkman law office, 111 Livingston Street,

7    Brooklyn, for the plaintiffs.

8          THE COURT:  Good morning.

9          MR. HILL:  Good morning, Your Honor.  Brian Hill from

10   Miller & Chevalier in Washington for the defendants, the

11   Palestinian Authority and the PLO.

12         THE COURT:  Good morning.  Okay.  Well, I've

13   identified a number of issues based upon your submissions.  You

14   may have other things that you have in mind, but I'll go

15   through what's on my list and then we'll see what's left over.

16         The first thing that's on my list is plaintiff's

17   motion for reconsideration regarding the Hague letters.  At

18   least in my looking at what was submitted by the plaintiff as

19   to whether or not they were any facts that were overlooked by

20   the Court or mistakes of fact, the -- I gather the plaintiff

21   noted that we had referred to Ballal [Ph.] and Abdullah as

22   brothers are indicated that the plaintiff had said that they

23   were brothers and then there was some back and forth between

24   the parties about whether or not there was information or

25   evidence that they were brothers.  Doesn't really matter to me.

3

1  It wasn't the basis for the decision, so if that's the -- if

2  that's he factual dispute, you may work it out sometime during

3  the case but it's not -- it's -- as far as the motion for

4  reconsideration under Rule 59, that's not a fact relied on by

5  the Court.  And so it's truth or lack thereof is not going to

6  change the ruling.  So we'll put that in writing and you can do

7  whatever it is that you want to do after that, Mr. Tolchin.

8          MR. TOLCHIN:  Can I be heard for a moment on that,

9  Your Honor?

10          THE COURT:  Excuse me?

11          MR. TOLCHIN:  May I be heard for that -- on that

12  issue for a moment?

13          THE COURT:  I thought you made your record already.

14  What do you want to say?  I'll give you a minute.  No more.

15          MR. TOLCHIN:  Okay.  The issue of whether they were

16  brothers was a red herring that came from defense counsel and

17  as I read Your Honor's honor it was a central issue of the

18  order that just because someone is a brother doesn't mean you

19  get to take his deposition.

20          We want to take his deposition because he's a witness

21  to material facts relevant to this case.  We have a -- I can

22  run through it, if you like, but he was -- he was detained and

23  prevented of detention by the Palestinian Authority because he

24  and Abdullah Barghouti because of their past history of

25  organizing terrorist attacks and carrying them out he was

4

1    detained preventively to prevent him from doing that.  And then

2    despite the fact that these people were known bomb makers and

3    terrorists they were released into the personal custody of

4    Marwin Barghouti who was a high-level officer of the

5    Palestinian Authority, who instead of doing anything whatsoever

6    to inhibit them from carrying out terrorist attacks gave them

7    an apartment and money enabling them, aiding -- giving them aid

8    and support.  One of them then went on and did the Hebrew

9    University bombing, which is at issue in this case.  But Ballal

10   Barghouti is a fact witness to the preventive detention, to

11   their release, to the terms of their release, how it came to be

12   that these known terrorists who had already carried out

13   terrorist attacks and had blood on their hands were -- came to

14   be detained preventively and then released.  And Marwin

15   Barghouti furnishing them an apartment and money.  And all of

16   those things if established establish the plaintiff's theory of

17   liability in this case.

18          Given those facts and given Ballal Barghouti's

19   knowledge of those facts I can't understand Your Honor's ruling

20   in the slightest as to why Ballal Barghouti is not a proper

21   witness to depose.

22          THE COURT:  Okay.  You've made your record, thank

23   you.  All right.  The next thing is the plaintiff's motion to

24   strike or with respect to the letter in opposition that the

25   defendants filed.  And this is a -- in regard to your motion to

5

1   compel the BBC and I'm not sure for the actual basis for the

2   motion to strike or the particular need to strike it because

3   this is not a case in which there is not a propr party raising

4   the opposition.  I mean, in some cases all I have is a

5   plaintiff and a defendant and there's a third-party deposition

6   and one or the other seeks to raise it.  And there can be

7   question about whether or not one of the parties has a standing

8   to raise an opposition to the subpoena.  But the BBC is here,

9   so I -- regardless of what it is that the defendants want to

10  say I don't see any need for judicial intervention to strike or

11  not to strike.

12         So as to the BBC's argument we can take that that up

13  but all of your back and forth on whether or not -- or what was

14  said in the letter and what shouldn't have been said in the

15  letter I don't see a need for Court action with regard to

16  striking stuff that's in -- that's been sent or otherwise

17  communicated to the Court.  I suppose if anything that the

18  defendant says gets considered by the Court then there might be

19  some issue, but I think the BBC has defended itself

20  sufficiently so that notwithstanding the help offered by Mr.

21  Hill I think the issue has been joined.

22         Now, with respect to the BBC, Mr. Tolchin, I'm -- I

23  would like for you to articulate for me specifically what claim

24  that you have and the tie-in to this BBC documentary and what

25  it is that you want from the documentary and how that would be

6

1  factual information in the documentary that would be of

2  assistance in the claim.

3          MR. TOLCHIN:  I apologize to the Court because I

4  didn't realize that this motion was being argued today and I

5  don't have those papers with me to look it over, but generally

6  speaking the BBC documentary aired a part of an interview and

7  the part of the interview contains statements that are helpful

8  and informative to a certain extent, but it was a part of a

9  longer interview.  Anybody who's been interviewed by a news

10 show knows that they come and interview you for an hour and

11 then use a short portion of it as part of a show.  So since

12 there was this recording we would like to see all the

13 statements.  There's always the claim that the statement that

14 was aired was taken out of context, it didn't show the whole

15 point.

16         THE COURT:  Give me the nub of the statement.  How

17 does the statement relate to your claim and how it suggests

18 that there is more that was on the cutting room floor.

19         MR. TOLCHIN:  Well, we know there's more.

20         THE COURT:  Well --

21         MR. TOLCHIN:  We know there's more because we asked

22 BBC for it and they didn't say we don't have any.  They --

23         THE COURT:  Well, we --

24         MR. TOLCHIN:  -- said "We're not giving it to you."

25         THE COURT:  Okay.  Just to be clear, we know that

1    they didn't air every inch of footage they shot.  My question

2    really is, how do we know there's anything relevant on the

3    cutting room floor.  What are indications from --

4           MR. TOLCHIN:  We don't.  We don't, but we also know

5    that we're here about discovery, which is not only governed by

6    irrelevance but what may lead to relevant information.

7           THE COURT:  And that's my question.  What is it about

8    what was said about what you know that indicates that what's on

9    the cutting room floor might be relevant?  I mean, as well as

10   it could be, I mean, is there anything that would indicate that

11   there's relevant information that didn't --

12          MR. TOLCHIN:  Until I've seen the material I can't

13   speak to that.  If that is what is concerning Your Honor,

14   perhaps viewing it in camera might be an option and then, you

15   know, if Your Honor is concerned that we may be seeking to

16   obtain discovery of materials that might not be relevant or

17   might not lead to relevant information, then perhaps that might

18   be a method to address that.  I can't speak to what it contains

19   not having seen it.  If BBC's counsel were here -- and they're

20   the moving party and frankly, it's a -- I do have some concerns

21   about addressing their motion when they're not here.  But, you

22   know, perhaps their counsel has seen it and can speak to that,

23   but --

24          THE COURT:  Okay.  But what I'm -- what I'm concerned

25   about is this.  And this is not just about the BBC, but

8

1  anything that airs on any station what principles should I use

2  in order to determine whether or not if you -- you view -- you

3  know, they have a documentary on Trump and some of it doesn't

4  make the cutting room floor and somebody is suing Donald Trump

5  and they say, well, Donald Trump might have said something in

6  the interview that might be relevant to my case.  I can't see

7  me saying, well, he might have but, I mean, what the courts

8  look for are some kind of guidepost to say if you have A, B,

9  and C that's an indication that you go further.

10      But as far as -- you -- the principle certainly can't

11 be because that, you know, this person is in the same general

12 area and it must be that they -- it's possible that they may

13 have said something.

14      MR. TOLCHIN:  I want to be perfectly clear, Your

15 Honor.  I was not aware that today we were going to be arguing

16 this motion.  It's not noticed for argument; BBC's counsel is

17 not here.  I don't have the papers in front of me.  The

18 statements of the -- the statements contained in the portion

19 that was aired, which I can't quote or discuss in detail for

20 the reasons I've just told you, they are relevant to our case.

21 That's why we're seeking the rest of the interview.  Okay.

22 Beyond that, I don't think it's fair to proceed to discuss at

23 this time.

24      THE COURT:  Well, it certainly wouldn't be fair to

25 the BBC, but if I were to base my decision just on any

9

1    questions I asked you, but I'm just looking for some kind of

2    entre into my analysis.  Obviously I'll take into account the

3    arguments that the parties have, but I'm looking for a

4    framework in order to determine if in a situation such as this

5    how should the Court go about doing it and --

6              MR. TOLCHIN:  Well, Your Honor's example with Donald

7    Trump if you have, you know, Donald Trump said in an interview,

8    "You know, I always cheat my contractors.  Whenever they send

9    me a bill I don't pay them for six months and then I tell them

10   I'm going to pay them 80 cents on the dollar, that's how come I

11   got to be a gazillionaire," and now you have a case involved

12   with the contractor.  And he says, "Hey, I want to see what

13   else Donald Trump said," you know.

14             THE COURT:  Okay.  And you're saying that the

15   statements as you described them in your papers are of that

16   ilk?

17             MR. TOLCHIN:  Of that ilk.  And I had that case once

18   against Donald Trump.

19             THE COURT:  Okay.  All right.  Well, I figured as

20   long as I have somebody in front of me it's always a good time

21   to see what more I can get from them.  The rest of what I have

22   has to do with defendant's complaints about their discovery

23   response to Mr. Tolchin.  And let me begin with the

24   interrogatories.  Okay.  And I looked at your responses to the

25   interrogatories and I can't help but wonder whether or not you

1    thought that these answers were in the spirit of the rules.

2              MR. TOLCHIN:  You can't help but wonder?  I'm sorry,

3    Your Honor.

4              THE COURT:  Whether or not you think that the answers

5    that you provided to the interrogatories were in the spirit of

6    the rules.

7              MR. TOLCHIN:  I think they were in the spirit of the

8    rules with the huge underlined caveat that these were some

9    really god-awful questions.  There -- these are not focused

10   interrogatories in the slightest.  They're asking us for

11   everyone who knows about something or whom we believe may know

12   about something.

13             THE COURT:  Okay.  But I was under the impression at

14   the last time we were here in our discussions it was clear you

15   were looking for people that you knew about as opposed to, you

16   know, speculation about other people.  And certainly it did

17   not -- it did not contemplate that you would be naming official

18   of the United States, since you're not in privity to them.

19             MR. TOLCHIN:  But that's not so.  I mean, we're not

20   in privity with the United States, but we know for a fact --

21   for example, we talked about the Barghoutis and why -- and how

22   they were put in preventive detention.  We know from the news

23   reports that the reason they were put in preventive detention

24   is because the Palestinian Authority was receiving intense

25   pressure from the United States Government to do something

1    about the string of bombings that was taking place every day in

2    Israel.

3             So there were people -- we know there were people in

4    the United States Government who investigated --

5             THE COURT:  Okay.  All right.

6             MR. TOLCHIN:  -- these things and had information

7    about it.

8             THE COURT:  Perhaps we're not communicating.  All

9    right.  I'll put that on me if we're not communicating.  My

10   preface to this was we're looking for things that the

11   defendants can get from you, not general knowledge.  I mean,

12   the idea that officially the United States knows stuff is not

13   information that the defendants need to get from you; they want

14   to know information that you have.  And if you start naming

15   people that -- I mean, I could have put these answers down.

16   He -- and what would be the point of that?

17            MR. TOLCHIN:  But here's the bind word.  Here's the

18   bind word.  If we -- given the broad question they asked, if we

19   did not give our broad answer as we gave it and then later we

20   found an official in the United States Government who was

21   prepared to come and testify about what the Government knew,

22   they'd say, sorry, you didn't identify him in response to your

23   interrogatory answer.  You only said 1, 2, 3, 4, 5 people.  You

24   didn't mention him and you didn't mention the Government.

25            THE COURT:  Okay.  I'm sorry.  Before you continue,

1    let's be clear.  All right.  That they can say almost anything

2    but you have to assume that there's a court officer who's

3    making reasonable decisions.  If he asked you a question about

4    who knows and you know about a United States official, you name

5    that person.  If you don't know about him and don't name him,

6    he doesn't have any quarrel.  And if he comes in and says, you

7    didn't name this person, and you say you just found out about

8    him yesterday, I don't care what he says.  You can only give

9    the information you know at the time that the question is

10   asked.  So he cannot under the rules complain if you find out

11   about somebody later on.

12                MR. TOLCHIN:  If that's Your Honor's ruling --

13                THE COURT:  That's --

14                MR. TOLCHIN:  -- and if that ruling is binding on the

15   trial judge in the appeals court, that will say that we

16   didn't -- I'm prepared to live with that.  But we also -- until

17   Your Honor makes that ruling and that directive and limits his

18   question in that way and narrows --

19                THE COURT:  Okay.

20                MR. TOLCHIN:  -- the response in that way --

21                THE COURT:  All right.  Mist --

22                MR. TOLCHIN:  -- we have to give a broad answer to a

23   broad question.

24                THE COURT:  Mr. Tolchin, I don't know where -- I

25   don't know any judge who'd take the position that if you don't

13

1   know an answer you are required to give a name.

2           MR. TOLCHIN:  No, we don't know a name for sure but

3   we know, for example, that there were officers of the

4   defendants who were unknown to us but they exist.

5           THE COURT:  And, you know, the requirement that asks

6   that you give information -- and I see these questions in

7   cases -- you know, it's only things that under -- under the --

8   that you have under your knowledge and specific knowledge.  I

9   mean, it -- you know, assuming that you had a question in which

10  everybody in this court knew that an United States official was

11  involved and they asked you a question that's here in the

12  interrogatories and you didn't say United States official, I'm

13  having trouble with the idea that you think that somehow that

14  if you found out the name of that person later on some court is

15  going to say, well, you didn't name that person.

16          MR. TOLCHIN:  Judge, I have been --

17          THE COURT:  You --

18          MR. TOLCHIN:  -- burned more times than I care to

19  count by making assumptions that people will be reasonable

20  later, so when we give an answer -- when there's a really broad

21  question that somebody might come later and say, hey, we asked

22  this really broad question and you didn't tell us what you knew

23  at the time and granted, you didn't know the guy's name but you

24  knew that somebody in the Government or some official of some

25  organization and you didn't tell us that you thought there was

14

1  a government official, that can -- we -- my clients can get

2  harmed by that.

3            THE COURT:  Okay.

4            MR. TOLCHIN:  By the potential --

5            THE COURT:  Now --

6            MR. TOLCHIN:  -- for somebody to interpret the

7  question broadly.

8            THE COURT:  I have two choices here, Mr. Tolchin.

9  And we can move on or I can challenge you to show me a judge

10 that's done that because any judge that's done that I don't see

11 how they function because -- I don't see how any party can be

12 asking for information that's not within their knowledge.  And,

13 you know, this generalization that they are an official of the

14 United States, I don't see it.  And, okay, let's move on.  All

15 right.

16            If you want my ruling then these generalizations

17 about official of the United States, members of the media, all

18 that stuff to me that's not -- first of all, I'm not sure that

19 the word "knowledge" even applies to anything that you say

20 there because you don't know anybody.

21            MR. TOLCHIN:  What this response means is upon

22 information and belief plaintiff believes there are officials

23 in the U.S. Government who may have knowledge.  That's all it

24 means.  It's --

25            THE COURT:  Okay.  And does that mean that this is --

1  I'm more concerned, Mr. Tolchin, so you understand, if you give

2  all these broad answers about the United States and whatever

3  because you think you need to cover yourself.

4          MR. TOLCHIN:  Um-hum.

5          THE COURT:    -- I want to see if after that then you

6  say, okay, all right, in addition to all these broad topics of

7  people who -- on information believe, in addition to that,

8  okay, there is Joe, Frank, Tom, and Larry, because it's not

9  unusual for somebody to answer a question and give a broad

10 answer and it the part -- and notwithstanding our broad answer

11 these specific answers, I don't see that you've done the latter

12 part.

13         MR. TOLCHIN:  Well, the first -- the first broad

14 answer is kind of in a category by itself because we said

15 officials of the defendant.  Now they know -- I don't have

16 access to them, but they know who they are.

17         THE COURT:  Okay.  So you're saying --

18         MR. TOLCHIN:  Yeah.

19         THE COURT:    -- I mean, you're assuming that the

20 defendants know what the defendants are doing.

21         MR. TOLCHIN:  Correct.

22         THE COURT:   I mean, if --

23         MR. TOLCHIN:  We took the deposition of the son of

24 Hamas, you know, the  --

25         THE COURT:  I understand, but Mr. Tolchin, look.  We

16

1   could do this dance all morning but, you know, your answer is,

2   you know, the plaintiff gets asked who knows about

3   discrimination and the deficiency says official, and the

4   plaintiff says --

5            MR. TOLCHIN:  The management of the company.

6            THE COURT:  -- officials of the defendant know about

7   the discrimination and nobody thinks that's going to advance

8   the cause, I mean --

9            MR. TOLCHIN:  Well, I would agree with you completely

10  that by identifying the person that way that's not enough to

11  call them to trial yet.  When we find out who -- which

12  official, which officer, which vice president failed to

13  implement the nondiscrimination policy or whatever, obviously

14  we have to supplement it and --

15           THE COURT:  But you agree that if I get those kinds

16  of answers on a discrimination case it -- the defendant

17  wouldn't have really any information.  He's, I mean --

18           MR. TOLCHIN:  Well --

19           THE COURT:  I mean you can take any case, any kind of

20  topic and what your case -- what your responses amount to is

21  the other side saying, people on your side know the story, I

22  don't have to do it, and I don't -- I don't see the efficacy of

23  that.

24           MR. TOLCHIN:  It's not that I don't have to do it,

1  it's just that I don't know who they are.  I have no way to

2  know who they are.  I know what your client did, I know the

3  actions taken by the organization but --

4          THE COURT:  Right, but what's the point of even

5  making that generalization?

6          MR. TOLCHIN:  Well, it --

7          THE COURT:  Be --

8          MR. TOLCHIN:  I would argue what -- what's the point

9  of asking such a broad question.  People who you believe may

10  have knowledge:  that's not really a helpful question.

11          THE COURT:  Well, okay.  But --

12          MR. TOLCHIN:  That's not even a question that would

13  be allowed to in court.

14          THE COURT:  Mr. Tolchin, look I've had people answer

15  questions like that and they always assume that it's -- they're

16  looking for people that you know, not people that he knows.  I

17  mean, what could happen, for example, is you could answer a

18  question like that and you might think, for example, that the

19  mail deliverer knows something because he happened to be there

20  when certain things were said, but you don't know that he knows

21  it.  But they don't want to know the -- you know, just some

22  broad statement.  But even if that's so, in addition to that

23  did you do any identification of anybody beyond the broad

24  pronouncements?  I don't see where you did that.

18

1          MR. TOLCHIN:  We -- We did not.  We have --

2          MR. HILL:  Your Honor, just so the record is clear,

3     two individuals are named by name in the seven sets of

4     responses I have received.  Two.

5          THE COURT:  Okay.  And just to be clear, I think

6     there's a more serious issue here in terms of you talking about

7     being precluded, if you're saying that the only people that you

8     know are the two people that you've responded to Mr. Hill --

9          MR. TOLCHIN:  At this time.

10         THE COURT:   -- then if you come up with any more

11    names, at least for me, you're going to have to show that

12    you -- how you just came up with the names.  You understand

13    what I mean?

14         MR. TOLCHIN:  But you mean if I -- if I discover a

15    new name tomorrow Your Honor would want to see that I learned

16    it tomorrow and I didn't know it yesterday.

17         THE COURT:  That's correct.

18         MR. TOLCHIN:  I agree with you.

19         THE COURT:  Okay.  As I said, putting aside the dance

20    and basically what you're telling Mr. Hill is, as of today the

21    only people that you know that are responsive to the

22    interrogatories are the two names that you gave.

23         MR. TOLCHIN:  Hundred percent.

24         MR. HILL:  Well, if that's the case, Your Honor, I

1  would just ask that you memorialize this in an order that no

2  witnesses will be -- the plaintiffs will not be allowed to use

3  any witnesses that would have been responsive to any of these

4  interrogatories other than the two persons that have been

5  identified by name which, for the record, are Abdullah

6  Barghouti, who you've heard a lot about and a gentleman named

7  Mohammed Doan [Ph.].

8          THE COURT:  I don't do that.  I mean, the rules are

9  what the rules -- if he doesn't identify somebody, if he comes

10  up with somebody later on we'll consider it then.

11          MR. HILL:  Right.  Well, the reason I do this is

12  because I have categories of Mr. Tolchin's letter that says

13  hundreds of names.  Actually it's probably hundreds of

14  thousands of names including every employee of the U.S.

15  Government from my mailman to Your Honor to President Obama.  I

16  don't want to later be confronted with a witness in an

17  affidavit or a trial and then have the plaintiffs argue that,

18  oh, well, he's one of the defendants or he's one of the

19  plaintiffs and therefore he can testify about this as an

20  employee of the U.S. Government, therefore he can testify about

21  this.

22          THE COURT:  Okay.  All right.  I'll be clear to both

23  of you.  All right.  All the general names, all the general

24  things that Mr. Tolchin did, it doesn't get any names, okay.

25  If he comes -- if he were to come here tomorrow with somebody

20

1  who is an official of the United States and said, this is a

2  witness, the answers to interrogatories won't get him there.

3  He's got to indicate why he's just identified that person, and

4  if he could have identified him before then he's not going to

5  be able to use that at least from my discovery.  He could -- he

6  could make an issue with somebody else but --

7         MR. TOLCHIN:  Your Honor, I want to qualify this

8  because there's the issue of, you know, employees of the United

9  States Government.  That we discussed at length, but the

10  response that we gave also refers to the persons mentioned in

11  the complaint.  We referred to it that way, we referred to the

12  complaint and said all persons mentioned in the complaint and

13  the amended complaint.

14         THE COURT:  What do you mean all persons mentioned in

15  the --

16         MR. TOLCHIN:  There's persons who -- there's persons

17  who are named in the complaint.  For example, take a look at --

18  if we just look at their -- at the questions they ask that

19  these are responses to, just taking at random interrogatory

20  number eight that was "Identify all persons who you know have

21  knowledge or who you believe may have knowledge that" -- and

22  they're quoting the complaint, "defendants PLO and PA aided and

23  abetted Ahmed Barghouti, Nasser Aweis, Hamas Al-Titi, Mosalla

24  Rahman, Abdullah Ramadan, and the John Doe defendants to carry

25  out the 12/22/02 shooting."

21

1          So all those people are identified in the complaint.

2    All those people are named in their question, and we said in

3    our answer all the people we named in the complaint are

4    witnesses.   So by -- we certainly are not meaning to limit

5    ourselves to exclude the people who are named in the complaint,

6    but the --

7          THE COURT:   Okay.  All right.  What do you want to

8    say, Mr. Hill?

9          MR. HILL:  Here's the problem, Your Honor.  I've

10   counted seven sets of interrogatories, each one is ten or 11

11   interrogatories long and they go to specific factual

12   allegations made in the complaint.  I mean, just to pick one

13   example, this is interrogatory number one from the

14   interrogatories directed to the Gould and Waldman plaintiffs.

15   "Identify all the person who you know have knowledge or who you

16   believe may have knowledge that the defendants provided Ramadan

17   with an M16 machine gun for the specific purpose of murdering

18   and injuring an innocent passerby on the January 22, 2002

19   shooting as alleged in paragraph 70 of the first amended

20   complaint."

21          The local rule says that to identify when referring

22   to a person needs to give to the extent the person's full name,

23   present or last address.  Okay.  I got a response that it's the

24   same for all of them which says plaintiffs, defendants, the

25   United States, everybody named in a document in the case,

22

1  everybody named in the complaint, everybody identified in an

2  interrogatory.  That doesn't tell me who knows about the

3  defendants giving the gun to Ramadan, which is the subject of

4  interrogatory number one.  I propounded this interrogatory

5  because I wanted to know which witnesses the plaintiffs believe

6  have this knowledge.  Their answers don't inform me of that,

7  and I'm asking Your Honor to rule that unless they inform me

8  that -- Ramadan, for example, knows about us, I don't know if

9  they believe in those or not.  Somebody is supposed to know,

10  and at this point I can't take any discovery to discover who

11  knows this fact based on these answers.  That's why they're

12  non-answers, that's why they violate the court's order.

13          MR. TOLCHIN:  Your Honor, I would submit that what

14  Mr. Hill just said just shows the gamesmanship that's going on.

15  He seriously is arguing that he doesn't -- that he doesn't know

16  if Ramadan knows who gave him a gun?

17          MR. HILL:  I think Ramadan --

18          MR. TOLCHIN:  Even Ramadan himself wouldn't know,

19  he's saying?

20          THE COURT:  Okay.  With that -- okay.  That's

21  latching onto the last part of what he said, but I understood

22  the point he was trying to make about using Ramadan as an

23  example that you didn't list him specific as somebody with

24  knowledge about the gun, but I -- but the defendant is correct

23

1   in this regard.  To the extent that he asked interrogatories

2   that require you to give specific answers, you can't just paint

3   with a broad brush and say all the defendants, any more than

4   again if we're talking about a contract case or an employment

5   case that you could say if you asked who was -- who knows about

6   the alleged discriminatory statement, you can't just say --

7           MR. TOLCHIN:  I'd agree with you if his question were

8   identify any individual whom you know to have knowledge about

9   this fact.  But once he gives this catch-all, everyone you

10  believe may have knowledge, that's so open-ended that I'm

11  compelled to list everybody.  I -- he may have knowledge?

12          THE COURT:   If you believe that you're compelled, we

13  have a disagreement.  I think that at the very least when

14  you're dealing with questions in a -- in a discovery context

15  you have to give more guidance than to say because the

16  question -- because it's possible that anybody might know, I'm

17  going to list everybody.  Your obligation under discovery is to

18  point the defendant in the direction of the people you believe

19  have knowledge, and just because they say who you think may

20  have knowledge doesn't mean that you get to throw everybody

21  else into the stew.  And if this is the best you could come up

22  with that you want to name everybody, I do not find that you

23  have answered the questions in the manner and in the spirit in

24  which the rules require it.  So to the extent that you may come

25  up with somebody later on who on that particular question was

24

1  about the providing of the weapon --

2       MR. HILL:  Are you saying, Your Honor, that we should

3  notwithstanding the way -- the broad way the questions read but

4  based on Your Honor's ruling we should answer it more the I --

5  the alternative way, saying everyone who you know to have

6  knowledge about these facts, never mind that they said believe

7  may have knowledge.

8       THE COURT:  Okay.  All right.  Now see, this is --

9  this is --

10      MR. TOLCHIN:  Because if that's what you're saying,

11 I'll try to meet you on that.

12      THE COURT:  Okay.  I understand -- I understand, Mr.

13 Tolchin.  This is where -- I'm trying to avoid the games

14 playing, okay.  All right.  You're accusing the defendant of

15 that but if you limit it specifically to the word "no" you're

16 not in the spirit of the question because it's not just no in

17 the sense that one has absolute knowledge of something and it's

18 not speculation either; it's people that you reasonably believe

19 can have information that's going to be helpful to the

20 defendant.  And you may not know because who knows, I mean --

21 but you have to -- you at least have to reasonably point him in

22 the direction of people that you reasonably believe have the

23 information, not just anybody who speculatively might have the

24 information.  So it's somewhere between absolute knowledge and

25 it could be anybody else in the world.  But it's not going to

1   be no, because from a philosophical point of view, I mean, a

2   lawyer could -- a lawyer could dance on the head of a pin with

3   that one.  I mean, because the reality is, what do we know, but

4   if you have some information and if you did a complaint you

5   presumably have somebody who's pointed you in the direction

6   that this is a factual assertion that has some legs --

7            MR. TOLCHIN:  We have a source for everything that's

8   alleged --

9            THE COURT:  Then you need --

10           MR. TOLCHIN:  -- whether it's a person or a new

11  reporter or an article.

12           THE COURT:  Then you need to -- you need to point

13  him in the direction of somebody who -- and if you're really

14  concerned about that you should do what some other people do,

15  notwithstanding the answer that we gave the -- we reserve the

16  right to -- and then describe whatever it is that you want to

17  put in, but you at least you could give the defendant the

18  people that you really believe have the information.

19           MR. TOLCHIN:  Your Honor, I'm prepared to redo the

20  responses in keeping with Your Honor's rulings today and see if

21  we can improve things.

22           THE COURT:  Well, it's either you're prepared to do

23  it or we're -- you're going be stuck with answers that aren't

24  going to get you very far.

26

1          MR. TOLCHIN:  I understand that.

2          THE COURT:   Okay.  Is there any question that you

3    understand what I'm asking you to do?

4          MR. TOLCHIN:  No.  I think I understand, Your Honor.

5          THE COURT:   Okay.  And you understand when I say,

6    no, it involves something more than saying with absolute

7    knowledge, but --

8          MR. TOLCHIN:  I understand that.

9          THE COURT:   -- you know, because the reality is, --

10         MR. TOLCHIN:  I hear you.

11         THE COURT:   -- I'm not sure any of us knows anything

12   about any of these in the sense that scienter means that you,

13   you know, you have knowledge without reservation.  But, you

14   know, as human beings we do a lot of things in which we don't

15   have 100 percent knowledge, but we have enough knowledge to

16   believe that we can act on the information.

17         So if you believe that the information, the fact that

18   you've submitted to Mr. Hill and his client have substance,

19   then you need to provide the person who's -- if it's a person,

20   the person who's provided that substance.  And if there's

21   some -- it may be that official of the United States might know

22   that because they've talked to that person.  I don't know, but

23   that's possible but that's not what they're looking for.  It's

24   certainly not what I'd be looking for.  Two weeks.

27

1          MR. TOLCHIN:  I think I need a little more time for

2     that, Your Honor.

3          THE COURT:   Why would you need more time, Mr.

4     Tolchin?

5          MR. TOLCHIN:  Because there's a lot of -- there's a

6     lot of details to this and I have a lot of other things also.

7          THE COURT:  I mean, am I to understand that with

8     respect to these questions, now broad as they may be, you're --

9     are you representing to me that in those -- in your responses

10    and in preparing the answers, and even though you were cautious

11    to put in these broad descriptions you never got to the point

12    of looking at the specific individuals that might be responsive

13    to these?

14         MR. TOLCHIN:  I'm not saying that but, you see, when

15    we referred -- in our response we referred to all people

16    identified in documents that have been produced, all people

17    named in the complaint, and that's a large body.  And I wanted

18    -- since we're going to be stuck with it, I want to be --

19    make sure that I have enough time to go through it carefully

20    and hit everything.  And it's not holding --

21         THE COURT:   So how much time --

22         MR. TOLCHIN:  -- it's also not holding anything else

23    up right now.

24         THE COURT:  How much time are you asking for, Mr.

28

1  Tolchin?

2           MR. TOLCHIN:  Thirty days.

3           THE COURT:  I mean, this -- you know, this is a 2004

4  case we're talking about.

5           MR. TOLCHIN:  Right, but it's only been -- discovery

6  has only been going on for a much shorter period of time

7  though.

8           MR. HILL:  Your Honor --

9           MR. TOLCHIN:  There's motion practice pending for

10  years.

11           MR. HILL:  Discovery has been going on for seven

12  months, discovery closes in 11 months.

13           MR. TOLCHIN:  Right, but --

14           MR. HILL:  I served these interrogatories at the end

15  of August.

16           MR. TOLCHIN:  But that has nothing to do with 2004.

17           MR. HILL:  And as a result of that I have two names

18  of people that are allegedly percipient witnesses.

19           MR. TOLCHIN:  Okay.  They're --

20           THE COURT:  All right.  Here -- I will give you

21  three weeks.  You got an extra week out of it, don't --

22           MR. TOLCHIN:  I should have asked for six weeks.

23           THE COURT:  Well, you probably still would have only

24  gotten three.  The fact is, I think that you should have had

1  this information when you were preparing the answers the last

2  time.  I'm -- I won't say I'm shocked that you didn't, but I

3  don't see how you could have -- even if you thought that the

4  broad answers were appropriate for caution sake, why you would

5  not have at least -- under the spirit of the rules at least

6  identified specific individuals who would have had the

7  knowledge.  And frankly, three weeks is more time than I think

8  you should get given the circumstances.

9           MR. TOLCHIN:  What date is that?

10          THE COURT:  It is January 19th -- okay.  February

11  9th.

12          MR. HILL:  Your Honor, while we're on this topic of

13  orders and lack of compliance --

14          MR. TOLCHIN:  I thought we were on the topic of the

15  interrogatories.

16          MR. HILL:  -- on Tuesday I received from Mr. Tolchin

17  what purport to be supplemental damages disclosures which

18  purport to be responsive to the order you entered on December

19  9th, requiring calculations of damages -- for economic damages.

20  Would I be able to ask for the court's intervention on this

21  issue as well because I don't have any economic damages

22  calculations notwithstanding the fact that you ordered them

23  twice and I have a copy to show Your Honor.

24          MR. TOLCHIN:  I disagree with the characterization,

30

1  but --

2         THE COURT:   All right.  Send it to me.  As much as

3  it's a joy to have the two of you here I do have other things

4  scheduled, but I gather that you don't have --

5         MR. HILL:  I have no calculations at all.

6         THE COURT:   Okay.

7         MR. HILL:  Should I be -- should I file a motion for

8  sanctions at this point or would the Court like me to send you

9  another letter?

10        MR. TOLCHIN:  There's no basis for --

11        MR. HILL:  Well, I mean, but --

12        MR. TOLCHIN:  It --

13        THE COURT:   Send it to me and we'll look at it and

14  then we'll probably do is we'll get the two of you on the phone

15  and see if we can hatch it out, but I want to look at it first

16  and I don't to be looking at it while we --

17        MR. HILL:  That's perfectly fair for Your Honor.  I

18  guess the other issue is the letter pertaining to the document

19  request.

20        MR. TOLCHIN:  I believe Your Honor said that you had

21  I think five issues that you wanted to address.

22        THE COURT:   I think in our discussions we've come up

23  with those issues.  The last thing was the document request.

24  This is with respect to Mr. Youseff [Ph.].

31

1              MR. TOLCHIN:  Correct.

2              THE COURT:   What kind of documents are we talking

3     about?

4              MR. HILL:  Well, Your Honor, as we related in our

5     letter, this gentleman as you know was subpoenaed for a

6     deposition to happen on the Monday after Thanksgiving.  We

7     served document request.  We asked the plaintiffs to shorten

8     their response time so we could get any documents the

9     plaintiffs had in advance of the deposition.  The witnesses,

10    you know, didn't show up on the 28th of November but did agree

11    to come testify at Mr. Tolchin's office on January the 10th.  I

12    was at his deposition.  And while we were there the witness

13    told us that he had been previously engaged by one of the

14    plaintiffs' Israeli lawyer, who an expert witness; that that

15    lawyer had given him documents which he had reviewed; that he

16    had written a report and sent it to that Israeli lawyer who

17    represents the plaintiffs; and that the plaintiffs' lawyer had

18    paid him between $7,000.00 and $10,000.00.  And when we got

19    that information from the witness I reached out to Mr. Tolchin

20    via email and said, "Did you ever serve responses to our

21    document request?  Did you ever produce these documents?"

22    Excuse me.  "The document request clearly called for them.

23    They called for any communications between Mr. Youseff and you,

24    as that term is defined, which includes the plaintiffs'

25    lawyers."

32

1          THE COURT:  So is it that basically you want the

2   documents that was sent to him and --

3          MR. HILL:  The records of payment, the documents he

4   reviewed, the draft report he sent them.

5          THE COURT:  And, Mr. Tolchin, at one point I believe

6   you said that there were no such documents.

7          MR. TOLCHIN:  And I still stay that.  I still say

8   that.

9          THE COURT:  So --

10         MR. TOLCHIN:  And Mr. Hill asked us when the -- the

11  first time that deposition was noticed, he asked us informally

12  could we accelerate responding to his response, not wait the 30

13  days that we had, and we did.  We responded to him right way

14  and told him there's no documents.  He doesn't like the form of

15  the response.  He wants me to write it out with a caption and

16  write "there's no documents" and then say "yours," et cetera,

17  and sign it and put a certificate of service, but I'm telling

18  him right here, there's no documents.  The witness identified

19  that he had been retained as an expert in a completely

20  different case that happened to involve the same attorneys, not

21  only on our side but on his side, too.  Mr. Hill was the

22  defense counsel in that case and the -- there wasn't an expert

23  report written out by the expert, it's a thing they have in

24  Florida called an expert summary.  It's written out by the

25  lawyer similar to 3101(d) in New York where you say this is --

33

1   my expert is expected to testify to, that was served.  The

2   defendants have it.  There was all sorts of motion practice

3   about it.  In fact it was ultimately stricken in that case.  So

4   Mr. Hill was well aware of it.

5            And that -- that is a document that arguably is in

6   possession of one of plaintiffs' attorneys in a different case

7   in the file of a different client.  And we've cited in our

8   letter cases that say just because I'm an attorney representing

9   a client in this case doesn't give the defendant in this case

10  the right to force me to go look in my other clients' files or

11  my personal files.  Where would that end?  Can ask me for my

12  personal documents?  If I'm representing people in this case

13  because they happen to be a student of world history, going to

14  ask me for my personal notes that I took when I attended a

15  lecture once?  No.

16           THE COURT:   Okay.  Just to be clear, actually the

17  question of -- if you say you don't have documents, I do

18  require parties to do a certification if they don't have

19  documents by the parties.

20           MR. TOLCHIN:  Parties, parties.  What he's -- what

21  he's trying to get, he wants me to go to my client's Israeli

22  attorney and say to the Israeli attorney, go into the file that

23  you have from some other case and get documents.

24           THE COURT:   And, Mr. Hill, what --

25           MR. HILL:  Yeah.  Well, here's the problem, Judge.

34

1    We had a deposition of the witness that they supposedly didn't

2    know how to contact that they characterized as a resistant

3    witness.  We get there and we find out that the same lawyers

4    that are representing the plaintiffs in this case have paid

5    between seven and ten grand.  That's information that I think I

6    should have gotten before the deposition and it's shocking to

7    me that it's now being argued that they could with a straight

8    face tell me they didn't have any documents that responded to

9    my request which clearly called for any communications between

10   the plaintiffs' lawyers and this witness.  They told me they

11   had nothing other than the book.  I don't believe that's true.

12   I never even got the Rule 34 response that the Rule requires

13   that says I don't have any documents.

14           And so the notion that because it was in a different

15   case therefore they didn't even have to object to providing it

16   and they can now be excused with the witness showing up and

17   saying, oh, by the way, I did have all these communications

18   with the plaintiffs' lawyers and they did pay me money and I

19   did write some opinions for them, and now we can't discover

20   them in this case because they're technically in some other

21   case.  None of the cases that Mr. Tolchin have cited go for

22   that proposition.  I don't think he can even assert this

23   objection frankly because Rule 34 says if you have objections

24   to a request you have to serve the objections within 30 days

35

1    and they never did, and that's a waiver of this objection to

2    the extent it was ever a valid objection in the first place.

3            You can look at the cases he cites in his letter.

4    One of them is from 1940, 4-0.  And it involves a decision

5    where the district court judge was apparently just learning

6    what the federal rules required.  He does say its inconceivable

7    that a lawyer would be required to produce something from

8    another client's file.  He also says, though, that it's

9    inconceivable that the defendant would have to produce a prior

10   statement of the plaintiff, which is obviously discoverable

11   under the modern interpretation of the Rule.

12           So I don't think those are good cases.  There's no

13   cases from the Second Circuit or from this court that would say

14   that this sort of thing doesn't have to be provided, and

15   frankly I'm troubled at going to a deposition, finding out that

16   the witness has had communications with plaintiff's counsel and

17   I didn't even know about them beforehand.  And I acknowledge

18   that I did get a document in the Saperstein [Ph.] case that

19   purported to be from counsel.  There was no indication that

20   there had been communications between counsel in that case and

21   the witness.  I always suspected they wrote it without talking

22   to the witness.  It was only when I got to the witness that I

23   found out that there had been these communications and

24   payments.

25           THE COURT:  Okay.  What this really comes down to,

1  Mr. Tolchin, is I gather -- you're not saying that there are

2  physically no documents; you're saying that -- you're either

3  saying that the documents are not in your custody and control

4  or that they're not discoverable.

5          MR. TOLCHIN:  I'm saying both.  I'll lay it all out

6  here.  There's a case called Saperstein that was in Florida.

7  That case is dismissed.

8          About two years ago right around the time that Mr.

9  Youseff's book came out plaintiff's Israeli counsel, who

10  happened to also be the Israeli counsel in the Saperstein

11  case -- so it wasn't me, it was the Israeli counsel -- had

12  communication with Mr. Youseff through is literary agent

13  they -- through his publisher.  There was discussion about

14  retaining him as an expert.  He was paid some money by the

15  Israeli counsel.  I believe the sum he testified to was

16  accurate.  A report -- I take back the word "report" -- a

17  summary of his opinion was prepared and served on Mr. Hill and

18  his co-counsel.  It was not drafted by the witness.  It was

19  prepared and shown to the witness after telephone conversation

20  with Israeli counsel.  I have asked -- even though we don't

21  think we're obligated to produce any of this from the

22  Saperstein case, I have asked the Israeli counsel if they have

23  any written correspondence of any substance with the -- with

24  Mr. Youseff and -- no, it was all -- it was done -- the

25  preparation of that was done over the telephone.  The one

37

1   document that exists was that summary which was served and Mr.

2   Hill has.  So for Mr. Hill to say he didn't know about it is

3   ridiculous and he's kind of acknowledged that in the end that

4   he knew about it.

5          It's of note that -- just to document that this is a

6   bit of crocodile tears, at the deposition of Mr. Youseff, other

7   than establishing the fact that he had served as an expert in

8   the Saperstein case, no questions were asked of him about that.

9   They didn't show him that report that they have in their

10  Saperstein file.  They didn't ask him any questions about the

11  opinion he gave.  Mr. Hill says he always suspected it was done

12  without talking to him.  That wasn't explored other than, did

13  you have communications with -- you know, who spoke to you

14  about it, and he identified the Attorney Lightner [Ph.] that he

15  had conversations with, so that's the history of this.

16         I don't have any documents; my clients don't have any

17  documents.  I imagine the one thing I didn't explore is that

18  probably someplace the Lightners have -- the Lightner -- the

19  attorney in Israel has a copy of the check or wire transfer,

20  whatever form of payment was used to pay him.  I don't -- I

21  didn't ask him that question but I assume if money was paid

22  they have a record of it.  But even that is of little substance

23  because the witness -- Mr. Youseff testified that he got paid

24  and said how much.

25         So I don't think that -- in direct answer to Your

38

1   Honor's question, I don't think that the Sokolow plaintiffs can

2   be said to have in their possession custody or control

3   documents that their Israeli attorney may have, if any, based

4   on their representation of a different client.  And so that's

5   part (a) of Your Honor's question; and (b) even if they had it,

6   even if you could say it was somehow in their control, I don't

7   think it's discoverable because all of that would be within

8   several different privileges of the Israeli counsel and the

9   clients in the other case, work product, for example.  But we

10  don't even have to get to that point because you can't force a

11  lawyer to go into his other client's file.  Maybe they could

12  subpoena -- they could ask the witness, they could ask Mr.

13  Youseff about it.  You --

14           THE COURT:   Okay.  All right.  Counsel --

15           MR. TOLCHIN:  -- could ask the other client about it

16  but --

17           THE COURT:   -- counsel, again as I said, while --

18  it's always interesting when you're here.  Two things.  One is,

19  while I -- I do have questions about how plaintiffs' counsel

20  approached this.  I'm not sure that the bottom line is that

21  with regard to the claims in this case the documents that

22  were -- either existed or didn't exist, were withheld, weren't

23  withheld, have any particular significance to the claims in

24  this case.

25           MR. HILL:  The problem is, Your Honor, I don't know

1  and I, you know, hesitate to say this because I don't yet have

2  the transcript, but when the witness described the work he did

3  it didn't sound to me like the Saperstein case.  Mr. Saperstein

4  as Mr. Tolchin and I know from having litigating that case was

5  somebody was shot in the Gaza strip.  The witness described a

6  shooting that took place in Jerusalem.  This case is about

7  Jerusalem.  So I don't know whether -- what the witness was

8  describing was the Saperstein case or not.  And I think we

9  properly requested these materials.  There was no timely

10  objection be it to lack of custody and control.  Mr. Tolchin

11  just mentioned privilege.  I don't have a privilege log.  I

12  mean there's no timely objection to any production of these

13  materials and they wouldn't be privileged anyway of their

14  communications with an expert witness and between counsel.

15         So I would just ask the Court to order them to be

16  produced.  Let's see what we get and we'll go from there, but I

17  don't think it's appropriate at this point for the Court just

18  to say, okay, well, I'm not going to order it, well, because

19  there's no -- Mr. Tolchin just told us he doesn't exactly know

20  what's in the custody of these Israeli lawyers that's called

21  for by a request.

22         THE COURT:  What I'm saying though, however, is I'm

23  not getting the feel for what it is that -- I mean, assume that

24  there was a -- are you -- you questioned the expert about this?

40

1          MR. HILL:  I asked him some questions.  I didn't have

2    the documents to question him about.

3          THE COURT:   Well, I understand but --

4          MR. TOLCHIN:  Your Honor, in this case, in this case

5    he was a --

6          MR. HILL:  And he may -- he may be here at trial.

7          MR. TOLCHIN:  In this case he was named so at least

8    up to now he's a fact witness.  He's not -- he was not deposed

9    as an expert witness.

10          THE COURT:   Okay.  But understand that it's not even

11    a question of whether or not, as I said, things were produced

12    or not produced.  I'm still not seeing the tie-in to the claims

13    in this case in terms of its relevance in Rule 26.

14          MR. HILL:  Well, they're required -- the witness

15    testified that he wrote a report about an attack in Jerusalem.

16          THE COURT:  And --

17          MR. HILL:  I'd like to get it.  This case is about

18    attacks in Jerusalem.  I don't know if it's about this case or

19    not and I appreciate Mr. Tolchin saying it's about another

20    case, but that's not what the witness said.

21          MR. TOLCHIN:  I can tell you that the only --

22          THE COURT:   Okay.  Sorry, sorry --

23          MR. TOLCHIN:  -- retention of this expert --

24          THE COURT:   Counsel, look.  All right.  And I

41

1  understand that you may have been hampered a little but you

2  just can't leave it like that and then tell me you don't know

3  what it's about.  You had him there.  You don't -- you didn't

4  ask enough questions so that you could --

5          MR. HILL:  Well, I don't have the record now.  I

6  think -- I think the record establishes that it's not the

7  Saperstein case but I don't have it yet.

8          THE COURT:   Right.

9          MR. HILL:  So -- I mean, I don't know what to do in

10  terms of --

11          THE COURT:   Do you believe the record --

12          MR. HILL:  -- do you want me to file a motion once I

13  get it or --

14          THE COURT:   Do you believe that the record

15  establishes that notwithstanding the conversation that we're

16  having now about whether or not it should have been produced or

17  not, whether or not it would be relevant under Rule 26, but

18  that we need to explore it further?

19          MR. HILL:  Well, I would think any prior statement of

20  a witness or prior engagement of a witness by counsel for the

21  party in the case would be relevant; if nothing else, the

22  witness's bias.

23          THE COURT:   Well, that's not relevant to the claim.

24  Now you're talking -- the Rule doesn't require that anymore.

42

1  And it used to be if it was related to the -- to the subject

2  matter and that included claims about whether or not the

3  person's credibility was involved.  I'm asking whether or not

4  it has anything to do with the claims in the case.  Now --

5           MR. HILL:  I don't know it's the answer because he

6  described the shooting in Jerusalem and those are some of the

7  cases that are before Your Honor in this case.  I don't know

8  whether it's this case or not.

9           THE COURT:  Okay.  Well, for now we'll be adjourned.

10           MR. HILL:  Thank you, Your Honor.

11           THE COURT:  Let me -- Michael, sometime in March.

12           COURT CLERK:  March 20th at 10:00 a.m.

13           MR. TOLCHIN:  What day of the week is that?

14           COURT CLERK:  Tuesday.

15           MR. HILL:  Your Honor, I don't think that is my

16  spring break, but if it is I will let the Court be advised of

17  my plans.

18           THE COURT:  Yes.  As long as you don't wait until 48

19  hours before the --

20           MR. HILL:  Oh, certainly.  I'll know as soon as I get

21  back to my phone.

22           THE COURT:  As soon as you get back to the office.

23           MR. HILL:  Yeah.

24                          * * * * *

43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

44

1      I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                          _____

6                          Ruth Ann Hager, C.E.T.**D-641

7  Dated:  January 24, 2012