# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.

Plaintiffs,

v.                                          Civ. No. 04-397(GBD)

THE PALESTINE LIBERATION ORGANIZATION, et al.,

Defendants.

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION IN THE ALTERNATIVE PURSUANT TO RULE 56(d)**

## Introduction

Defendants' Motion for Partial Judgment on the Pleadings seeks to dismiss plaintiffs' non-federal causes of action for lack of capacity. DE 187 at 1-12. In the alternative, defendants request that the Court withdraw jurisdiction over the non-federal causes of action. *Id*. at 12-20.

Defendants' lack of capacity claim fails and should be summarily denied for two threshold reasons: (1) defendants waived any lack of capacity defense by failing to properly assert it in their Answer and (2) defendants are barred by the automatic preclusion provision of Rule 37 from asserting any of the multiple factual predicates necessary to their lack of capacity defense (without which their motion cannot survive) because defendants' mandatory Rule 26 disclosures did not identify any persons with knowledge, or documents, relevant to this defense.

Defendants' lack of capacity claim can and should be summarily denied for another reason: Second Circuit precedent requires that a motion to dismiss (or for judgment on the pleadings) based on a lack of capacity defense, that relies on matters not appearing on the fact of the pleadings – like the instant motion – must be treated as a motion for summary judgment. Yet,

defendants' motion does not present any admissible evidence at all in support of the factual bases of their lack of capacity claim. Therefore, defendants' lack of capacity motion, which must be treated as a motion for partial summary judgment, should be denied for a total failure of proof.

Alternatively, i.e., if the Court does not summarily deny defendants' lack of capacity claim as waived or precluded, or for failure of proof, disposition of the motion should be deferred pursuant to Rule 56(d), to allow plaintiffs an opportunity to take discovery regarding the factual predicates underlying defendants' lack of capacity claim. Plaintiffs are therefore filing herewith a Cross-Motion in the Alternative Pursuant to Rule 56(d) formally seeking such relief.

The second prong of defendants' motion, i.e. their demand that this Court withdraw subject-matter jurisdiction over plaintiffs' non-federal claims, also lacks all merit. This demand is based on the notion that: (1) Israeli law governs plaintiffs' non-federal claims and (2) applying Israeli law in this case will be too difficult and complex for the Court. This line of argument fails for the simple but dispositive reason that defendants have failed to show any conflict between the law of the forum and the law of Israel (or of any other potentially relevant jurisdiction). It is elementary that where, as here, no conflict of law is shown, no "choice-of-law" analysis is necessary or appropriate, and that the law of the forum (i.e. New York) will apply.

Therefore, defendants' argument here fails because it skips a crucial prerequisite step: showing that there is a *conflict* between New York law and Israeli law. Defendants skipped this step because they had to: this Court recently held – in another civil action arising from a terrorist attacks in Israel – that "no actual conflict exists" between relevant New York and Israeli law. *Licci v. American Exp. Bank Ltd.*, 704 F.Supp.2d 403, 409 (S.D.N.Y. 2010) (Daniels, J.). Thus, this prong of defendants' motion demands that this Court revisit and reverse its decision in *Licci*.

Accordingly, and as discussed fully below, defendants' motion should be denied *in toto*. Alternatively, consideration of the motion should be deferred pursuant to Rule 56(d), to allow plaintiffs a fair opportunity to obtain evidence regarding defendants' lack of capacity claim.

## RELEVANT BACKGROUND

This is a civil action by American citizens, and the family members and representatives of the estates of American citizens, who were murdered or injured in seven terrorist bombings and shootings carried out by the defendants between January 8, 2001 and January 29, 2004.

The plaintiffs' First Amended Complaint ("FAC") (DE 4) contains thirteen "counts." Seven counts assert causes of action. Specifically, plaintiffs assert a federal cause of action for "international terrorism" pursuant to the civil provisions of the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a), as well as garden-variety non-federal causes of action for wrongful death, loss of consortium and solatium, assault and battery, negligence, and infliction of emotional distress.

The five remaining "counts" in the FAC (conscious pain and suffering, civil conspiracy, aiding and abetting, vicarious liability/respondeat superior, and inducement) set forth theories of liability and/or types of damages available – not separate causes of action.[1]

---

[1] There is no question that the ATA permits damages for conscious pain and suffering since the ATA "extends civil liability for acts of international terrorism to the full reaches of traditional tort law. …This means that the full range of damages are available to the plaintiffs." *Rubin v. Hamas*, 2004 WL 2216489 at *3 (D.D.C. 2004). Likewise, conspiracy, aiding and abetting, vicarious liability, respondeat superior and inducement are recognized theories of liability under the ATA. *See e.g. Linde v. Arab Bank*, 384 F.Supp.2d 571, 583, 585 (E.D.N.Y. 2005) (aiding and abetting liability and civil conspiracy liability are available under the ATA; inducement of terrorism through provision of financial rewards to terrorists and their families is actionable conduct under the ATA); *In re Chiquita Brands*, 690 F.Supp.2d 1296 (S.D.Fla. 2010) (aiding and abetting liability and civil conspiracy); *Estate of Parsons v. Palestinian Authority*, 651 F.3d 118, 148-150 (D.C.Cir. 2011) (respondeat superior and vicarious liability).

Since these theories of liability and types of damages are all recognized under the federal ATA claim, they *per se* cannot be the subject of a motion to dismiss the non-federal causes of action (wholly irrespective of whether they are *also* available under the non-federal causes of action).

Thirty-seven of the forty-two plaintiffs are, and at the time of the attacks were, American citizens entitled to bring a federal claim under the ATA. Also, one of the five foreign plaintiffs, Nevenka Gritz, is entitled to bring a federal ATA action because her son, decedent David Gritz, was an American citizen.[2] Additionally, four of the five decedents in this case were U.S. citizens. Thus, for thirty-eight of the forty-two plaintiffs, and for the estates of four of the five decedents, the primary cause of action in this case is their federal claim under the ATA, and the non-federal claims are supplemental causes of action; only four plaintiffs and the estate of one decedent are relying solely on non-federal claims.[3] Moreover, <u>none</u> of the seven terrorist attacks in this case is the subject of <u>solely</u> non-federal causes of action. In other words, there is at least one plaintiff with a federal ATA claim arising from each of the seven terrorist attacks underlying this suit.

Thus, as discussed more fully *infra*, the presence of non-federal causes of action, which arise from the same seven terrorist attacks that are the subject of the federal ATA claim, has not had, and will not have, any material effect on the scope and extent of litigation in this case.[4]

---

[2] Section 2333(a) of the ATA creates a cause of action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, *or his or her estate, survivors, or heirs*." 18 U.S.C. § 2333(a) (emphasis added). Thus, "the term 'survivors' as used in § 2333(a) includes the parents … of a U.S. national killed by an act of international terrorism" even where, as in the case of Mrs. Gritz, the parent of the U.S. citizen decedent is not herself a U.S. citizen. *Ungar v. Palestinian Authority*, 304 F.Supp.2d 232, 264 (D.R.I. 2004). *See also Lelchook v. Commerzbank AG*, 2011 WL 4087448 (S.D.N.Y. 2011) (same).

[3] The four plaintiffs relying solely on non-federal claims are Revital Bauer (the Israeli wife and mother of U.S. plaintiffs Alan Bauer and Yehonathon Bauer), Shaul Mandelkorn and Nurit Mandelkorn (the Israeli son and wife of U.S. plaintiff Leonard Mandelkorn) and Varda Guetta (the Israeli mother of U.S. plaintiff Oz Guetta). The one estate relying on non-federal claims only is that of decedent Stuart Goldberg, who was the Canadian husband and father of U.S. plaintiffs Karen Goldberg, Chana Goldberg, Esther Goldberg, Yitzhak Goldberg, Shoshana Goldberg, E.G., Y.G. and T.G..

[4] The federal courts have consistently found that ATA claims and non-federal tort claims arising from the same terrorist attack share a common nucleus of operative fact and so "form part of the same case or controversy" for the purpose of the supplemental jurisdiction statue, 28 U.S.C. § 1367. *See e.g. Biton v. Palestinian Authority*, 310 F.Supp.2d 172, 183 (D.D.C. 2004) ("Ms. Biton has advanced a federal

On July 30, 2007, defendants filed a supplemental brief regarding subject-matter jurisdiction in which they argued (for the first time) that plaintiffs' non-federal claims should be dismissed for lack of capacity because the PA and PLO are unincorporated associations under New York law and therefore subject to suit only in the name of their president or treasurer. DE 44 at 21-25. In response, plaintiffs asserted that the question of defendants' capacity is irrelevant to subject-matter jurisdiction, that defendants' capacity arguments "raise a factual issue … on which plaintiffs are entitled to discovery in the normal course" and that defendants' entire capacity argument "can be obviated by the simple expedient of amending the complaint to assert the supplemental causes of action against the defendants' president or treasurer." DE 52 at 1 n.1. Notably, the defendants *failed* to argue that the Court should not exercise supplemental subject-matter jurisdiction over plaintiffs' non-federal causes of action, despite the fact that their July 2007 brief was dedicated to the topic of subject-matter jurisdiction. DE 44, *passim*.

The Court subsequently denied defendants' motion to dismiss for lack of subject matter jurisdiction with prejudice "and denied their motion to dismiss for lack of personal jurisdiction and failure to state a claim without prejudice to renew after limited jurisdictional discovery." *Sokolow v. Palestine Liberation Organization*, 2011 WL 1345086 *1 (S.D.N.Y. 2011). After jurisdictional discovery defendants filed a renewed motion to dismiss. DE 66-67. Defendants' renewed motion sought dismissal for lack of personal jurisdiction only, and did not request dismissal for lack of capacity (or even seek to preserve that defense). *Id*. In March 2010, the Court denied defendants' renewed motion without prejudice. DE 79. Defendants later filed a

---

cause of action under the ATA over which this Court has original jurisdiction. All of the plaintiffs' claims 'derive from a common nucleus of operative fact' – i.e., the bus bombing in the Gaza Strip. The Court chooses to exercise its discretion to hear these related [non-federal] claims in the interests of 'economy, convenience, fairness, and comity.'") (citations and brackets omitted); *Ungar v. Palestinian Authority*, 153 F.Supp.2d 76, 86 (D.R.I. 2001) (same).

second renewed motion to dismiss. DE 81-82. In their second renewed motion to dismiss defendants asserted and requested to preserve their lack of capacity defense, despite having ignored that defense in their first renewed motion to dismiss. DE 82 at 24-25.

The Court denied the second renewed motion to dismiss on March 30, 2011. In that motion, defendants had stated that "[o]nce the Court rules on the personal jurisdiction question, Defendants will seek … the Court's guidance on whether Defendants are to file a renewed 12(b)(6) motion [regarding their lack of capacity claim] or whether the Court wishes to rule on the issue as earlier briefed." DE 82 at 25. In the event, however, defendants neither filed a "renewed 12(b)(6) motion" to dismiss the non-federal claims for lack of capacity nor sought "the Court's guidance" on that issue. Instead, defendants went ahead and filed their Answer. DE 92.

Defendants' Answer sets forth in telegraphic fashion no less than fourteen affirmative defenses, each more conclusory than the next. *Id*. at 1-3. Defendants' fourth affirmative defense states, as follows: "Defendants lack the capacity to be sued in this Court" with respect to all non-ATA claims. *Id*. at 2. That, in its entirety, is the Answer's sole reference to capacity. There is no mention of New York law, or any claimed "unincorporated association status," or any of the "supporting facts" that Fed.R.Civ.P. 9(a)(2) mandates when pleading a lack of capacity.

Exactly one week after filing their Answer, defendants filed yet another new motion to dismiss – this time for improper venue. DE 93-94. Once again, defendants' motion to dismiss did not seek dismissal of the non-federal causes of action for lack of capacity (or otherwise).

The Court denied defendants' motion to dismiss for improper venue both on the merits and "as untimely and in violation of the limitation on further motions in Rule 12(g)(2), since the motion raises the defense of improper venue that was available, but omitted, when Defendants made their earlier motion to dismiss prior to filing their answer." DE 122.

6

On July 25, 2012, defendants served their Rule 26 disclosures. Rule 26 requires a party to identify all persons who have information, and all documents, that the party "may use to support its … defenses." Fed.R.Civ.P. 26(a)(1)(A)(i)-(ii). Defendants' disclosures do not identify anyone with knowledge, or any documents, relating to any lack of capacity defense. Exhibit A, *passim*.[5]

Plaintiffs, too, served their mandatory disclosures, which they have supplemented as required by the rules. Plaintiffs' disclosures, and their responses to defendants' discovery requests, overwhelmingly demonstrate defendants' liability for the terrorist attacks at issue here. As just one example: the evidence produced by plaintiffs shows that five of the seven attacks were planned and carried out by senior officers and employees of defendant PA's security forces.

Justifiably concerned about the extent of their looming liability, defendants have now moved aggressively into "damage-control mode," seeking to whittle-down their ultimate quantum of exposure. Thus, in proceedings before Magistrate Judge Ellis, defendants are attempting to eliminate some of plaintiffs' damages categories. Likewise, defendants' sudden filing of the instant motion to dismiss the non-federal claims, in which defendants improperly attempt to revive a lack of capacity defense they abandoned long ago, serves the same purpose.

## ARGUMENT

For the reasons set forth below, defendants' motion should be denied; alternatively, plaintiffs' cross-motion in the alternative for Rule 56(d) relief should be granted.

## I.     Defendants Have Waived Any "Lack of Capacity" Defense

Defendants' entire lack of capacity argument should be rejected as waived. "Lack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2nd Cir. 1998).

---

[5] Defendants have not supplemented these disclosures.

In order to avoid a waiver, a defendant must assert a lack of capacity defense in its answer and, as Rule 9(a) demands, "must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." *See e.g. RK Co. v. See*, 622 F.3d 846, 849 n.2 (7th Cir. 2010) ("The Federal Rules of Civil Procedure ... clearly state that capacity to sue must be raised in a specific denial in an appropriate pleading or amendment."); *Montellier v. U.S.*, 202 F.Supp. 384, 390 (E.D.N.Y. 1962) ("Failure to raise this issue by motion or answer constitutes a waiver."); *Pressman v. Estate of Steinvorth*, 860 F.Supp. 171, 176-177 (S.D.N.Y. 1994) (lack of capacity defense was waived where it was not properly raised in answer); *In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F.Supp.2d 717, 727 n.13 (S.D.N.Y. 2003) (lack of capacity is an affirmative defense that should be raised by defendant in its answer in order to avoid waiver); *In re Air Crash Disaster off Coast of Nantucket Island, Massachusetts on October 31, 1999*, 2010 WL 1221401 at *6 (E.D.N.Y. 2010) (same).

Here, defendants' lack of capacity defense in their Answer reads, in entirety, as follows:

> Defendants lack the capacity to be sued in this Court with respect to the Second Count (Wrongful Death), Third Count (Pain and Suffering), Fourth Count (Battery), Fifth Count (Assault), Sixth Count (Loss of Consortium and Solatium), Seventh Count (Negligence), Eighth Count (Intentional Infliction of Emotional Distress), Ninth Count (Negligent Infliction of Emotional Distress), Tenth Count (Civil Conspiracy), Eleventh Count (Aiding and Abetting), Twelfth Count (Vicarious Liability/Respondeat Superior) and Thirteenth Count (Inducement).

DE 92 at 2.

This bald proclamation – "Defendants lack the capacity to be sued in this Court" – fails to fulfill Rule 9(a)'s requirement that a denial of capacity "must state any supporting facts that are peculiarly within the party's knowledge." It is well established that a failure to plead the alleged

"supporting facts" underlying a lack of capacity defense, as explicitly demanded by Rule 9(a),

renders such a putative defense ineffective and constitutes a waiver thereof:

> Pena argues that Pressman waived the capacity defense by waiting more than seven years before raising it. Pressman, on the other hand, contends that he did raise this issue in his answer to Pena's amended complaint and in communications between counsel … [T]he only time that Pressman formally raised anything resembling a lack of capacity defense was in his answer to Pena's amended complaint, where he stated that plaintiff did not have the "requisite legal standing to bring the instant suit." Even accepting Pressman's assertion that standing and capacity are in effect the same … Rule 9(a), F.R.Civ.P. requires not only that the pleader make a specific negative averment of the plaintiff's capacity to sue, but also <u>that the averment include "such supporting particulars as are peculiarly within the pleader's knowledge."</u> In the instant case, <u>Pressman merely asserted that Pena did not have the requisite standing to bring this suit; he gave no particulars or other explanation for this claim</u>. Because Rule 9(a) dictates that a pleader <u>set forth particulars</u> supporting this assertion, <u>Pressman in effect waived the capacity defense by failing to be more explicit in his answer</u>.

*Pressman v. Estate of Steinvorth*, 860 F.Supp. 171, 176-177 (S.D.N.Y. 1994) (emphasis added)

(footnote and citations omitted). *See also e.g. Marston v. American Emp. Ins.*, 439 F.2d 1035,

1041 (1ˢᵗ Cir. 1971) (American's answer denied the administratrices' capacity to sue, but

F.R.Civ.P. 9(a) requires <u>not only</u> that a defendant make a specific negative averment if he

challenges a plaintiff's authority to sue in a representative capacity, but <u>also that the averment

include 'such supporting particulars as are peculiarly within the pleader's knowledge'</u>.")

(emphasis added); *Seghers v. Thompson*, 2006 WL 2807203 at *3 (S.D.N.Y. 2006) (same).

Therefore, because defendants "merely asserted" that they "lack the capacity to be sued in this Court" and "gave no particulars or other explanation for this claim" (*Pressman*, *id.*), as required by Rule 9(a), they have waived any putative lack of capacity defense.[6]

Defendants' failure to plead lack of capacity timely and properly in their Answer, as required by Rule 9(a), is especially egregious for two reasons:

*First*, defendants are denying their *own* capacity to be sued; thus whatever facts they believe support that claim are, and have always been, "peculiarly within [their] knowledge." Rule 9(a). *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1391 ("Rule 9(a) expressly requires a pleader to set forth any particulars supporting the denial of capacity, legal existence, or authority that are peculiarly within his knowledge. This provision normally is relevant <u>when a party is denying his or her own capacity to sue or be sued</u>.") (emphasis added).

*Second*, the defendants have frittered away repeated opportunities to properly raise this defense. The Court expressly directed that defendants should assert any lack of capacity argument after resolution of their motions to dismiss for lack of subject-matter and personal jurisdiction. *See Sokolow*, 2011 WL 1345086 at *1. Defendants acknowledged that directive in their second renewed motion to dismiss, stating that: "Once the Court rules on the personal jurisdiction question, Defendants will seek … the Court's guidance on whether Defendants are to file a renewed 12(b)(6) motion [regarding their lack of capacity claim] or whether the Court wishes to rule on the issue as earlier briefed." DE 82 at 25. But defendants neither filed a "renewed 12(b)(6) motion" to dismiss the non-federal claims nor sought "the Court's guidance,"

---

[6] The insufficiency of defendants' lack of capacity defense is even more glaring if, as most courts have concluded, the *Twombly* and *Iqbal* pleading standard governs affirmative defenses. *See e.g. E.E.O.C. v. Kelley Drye & Warren, LLP*, 2011 WL 3163443 at * 2 (S.D.N.Y. 2011) (citing cases). However, as *Pressman* shows, defendants' have failed to properly plead lack of capacity under Rule 9(a), irrespective of whether *Twombly* and *Iqbal* apply to a lack of capacity defense.

as promised. Instead, defendants filed an Answer, which contains only the woefully inadequate statement that "Defendants lack the capacity to be sued in this Court" in respect to non-federal claims. DE 92 at 2. Worse, defendants then proceeded to file yet *another* motion to dismiss (for improper venue), again without asserting any challenge to the non-federal claims. DE 93-94.

In sum, defendants abandoned their lack of capacity claim: (1) they did not file a new motion asserting lack of capacity following the denial of their jurisdictional motions despite the leave granted by the Court and their own promise to do so; (2) they did not even attempt to plead lack of capacity as required by Rule 9(a) in their Answer; and (3) they omitted their lack of capacity claims from their venue motion. Defendants have had multiple bites at a veritable bushel-full of apples, and there is no reason to now allow them to assert a lack of capacity defense at this late date and after all these missed opportunities.

Furthermore, permitting defendants to raise this defense untimely would severely prejudice the plaintiffs. If defendants' motion is considered and granted, the four plaintiffs (Revital Bauer, Shaul and Nurit Mandelkorn and Varda Guetta) and the one estate (of decedent Stuart Goldberg) with no ATA claims will be immediately dismissed from this case, along with all the non-federal claims of the remaining thirty-eight plaintiffs and four estates. The only other jurisdiction in which the dismissed plaintiffs could bring their claims, and in which the remaining plaintiffs could bring their dismissed non-federal claims, is Israel.[7] But the Israeli

---

[7] Any dismissal for lack of capacity would be without prejudice. *See e.g. Vaiselberg v. Snow*, 2003 WL 1878248 (S.D.N.Y. 2003); *West v. Oklahoma County Jail*, 2009 WL 1751468 (W.D.Okla. 2009); *Pike Cnty. Citizens United for Justice v. Oxy USA, Inc.*, 182 F.3d 918, 1999 WL 435174, at *4-5 (6th Cir. 1999); *RehabCare Group E. v. Camelot Terrace*, 2010 WL 5174369, at *2, 5 (N.D.Ill. 2010).

statute of limitations has long since expired, and the plaintiffs would have the burden of convincing the Israeli court that the limitations period should be tolled because of the pendency of this action. *See* Declaration of Jeremy Stern at ¶¶ 4-13. No Israeli court has so held and, moreover, defendant PLO has expressly argued to the Israeli courts in other cases that the pendency of an American proceeding does *not* toll the Israeli statute of limitations. *Id.* at ¶¶ 9-13.

This court has expressly held that a defendant should not be permitted to assert an untimely lack of capacity defense where, as here, the plaintiff faces merely the *risk* – not the certainty – that its claims will be barred by the limitations period. "Had the objection now sought to be raised been made earlier, the plaintiff could unquestionably have either amended its complaint to sue in another capacity or begun a new action after clearly establishing its corporate status, without risking the possibility of defeat by reason of the limitation statute. I am not ruling here that the statute has barred plaintiff's claim … But, I am saying that in the interests of justice and expedition, the defendant's neglect should not form the basis for a decided advantage to it and if not certainty at least the possibility of putting plaintiff out of court."). *Banking & Trading Corp. v. Reconstruction Finance*, 15 F.R.D. 360, 361-362 (S.D.N.Y. 1954) (emphasis added).

Moreover, even if plaintiffs could overcome the Israeli statute of limitations, it would be prejudicial in the extreme – indeed, it would be absurd – to force them to litigate their non-federal claims in Israel in parallel to the ATA claims in this Court. Considering and granting defendants' untimely motion would mean that Revital Bauer, Shaul and Nurit Mandelkorn, Varda Guetta and the estate of Stuart Goldberg would be dismissed from this case and have to file new actions in Israel, while their American family members pursue their ATA claims in this Court for the very same terrorist attacks. Likewise, the remaining plaintiffs would also have to file suits in Israel – in parallel to their ATA actions in this case – or lose their non-federal claims.

Therefore, defendants' lack of capacity argument should be rejected as waived.

## II.     Defendants' Lack of Capacity Defense Is Barred by Rule 37(c)(1)

Defendants seek to dismiss plaintiffs' non-federal claims on the grounds that under New York law, the defendants are unincorporated associations, and so cannot be held liable in tort unless all their members authorized or ratified the acts complained of. DE 187 at 4-12. Thus, defendants' lack of capacity argument defense is contingent upon on multiple questions of fact or mixed questions of fact and law including: (1) the factual status of the PLO under New York law; (2) the factual status of the Palestinian Authority ("PA") under New York law; (3) whether the PLO actually has any "members"[8] whose authorization or ratification would be a necessary condition of imposing tort liability on the PLO and, if so, the identity of those members; and (4) whether the PA actually has any "members"[9] whose authorization or ratification would be a necessary condition of imposing tort liability on the PA and, if so, the identity of those members.

Rule 26(a)(1)(A) requires a party to identify all persons who have information, and all documents, that the party "may use to support its … defenses" and Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) … the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Here, defendants' mandatory Rule 26 disclosures do not identify *anyone* with knowledge, or *any* documents, relating to any lack of capacity defense – or even *hint* at the existence of such a defense. *See* Exhibit A. Defendants are therefore precluded by Rule 37(c)(1) from seeking to

---

[8] As discussed *infra*, defendants have failed to identify or describe the PLO's "members" and it appears that the PLO, which is an umbrella organization composed of other groups, has no "members."

[9] As explained below, the PA is a municipal government and has no "members." Unsurprisingly, defendants have not attempted to identify the PA's putative "members."

support the underlying factual predicates of their lack of capacity defense. *Cf. Milliken & Co. v. Bank of China*, 758 F.Supp.2d 238, 245 (S.D.N.Y. 2010) ("Bank of China has alleged as an affirmative defense that it has a lien on the subject account superior to that asserted by Milliken. Accordingly, it was required pursuant to Rule 26(a)(1)(A)(ii) to disclose all documents supporting that representation. The Bank cannot be permitted to obstruct production of the very documents that it would use to support its case and then unveil those documents at trial or in response to a dispositive motion. It is therefore precluded from introducing any documents supporting its defense that it has any lien superior to that asserted by Milliken.").

For this reason, too, defendants' motion should be summarily denied.

## III.   Defendants' Lack of Capacity Motion Must Be Deemed a Motion for Partial Summary Judgment and Denied for Failure of Proof

As noted *supra*, defendants' lack of capacity defense is based on multiple factual assertions which are not mentioned anywhere in the pleadings. It is well established in this Circuit that where, as here, a defendant founds its lack of capacity defense on matters outside the pleadings, the motion must be treated as a summary judgment motion. *See Klebanow v. New York Produce Exch.*, 344 F.2d 294, 296 n. 1 (2nd Cir. 1965); *MK Systems, Inc. v. Schmidt,* 2005 WL 237755 at *3 (S.D.N.Y. 2005); *Machne Menachem, Inc. v. Hershkop*, 2001 WL 984943, at *3 (E.D.N.Y. 2001); *Weiner v. Winters*, 50 F.R.D. 306, 308 (S.D.N.Y. 1970).

Thus, if defendants' lack of capacity motion is not denied on grounds of waiver or Rule 37(c)(1) preclusion, it should be treated as a motion for partial summary judgment. And since their motion is properly deemed a summary judgment motion, if defendants "fail to fulfill [their] initial burden of providing admissible evidence of the material facts entitling [them] to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is

presented, for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2nd Cir. 2003) (quotation marks omitted).

Defendants have completely "failed to fulfill their initial burden of providing admissible evidence of the material facts entitling them to summary judgment" regarding their lack of capacity claim, in at least two dispositive respects:

In the first place, defendants have not provided a *scintilla* of evidence – admissible or otherwise – regarding their status and capacity to be sued under New York law. Defendants point to decisions finding that they are "unincorporated associations" under federal law and District of Columbia law, but those decisions (which do not bind the instant plaintiffs, contain no analysis, and merely cite one another) say nothing about defendants' status under New York law.

Defendant PA is a municipal government exercising certain authority in the West Bank and the Gaza Strip. *See generally Knox v. PLO*, 306 F.Supp.2d 424, 431-438 (S.D.N.Y. 2004). Under New York law, the capacity of a local or foreign governmental entity to sue and be sued must be determined by reference to its enabling statute or instrument, and its powers and responsibilities. *See e.g. Town of Riverhead v. New York State Bd. of Real Property Services*, 5 N.Y.3d 36, 41-42 (2005) ("Being artificial creatures of statute, [governmental] entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate … An express grant of authority is not always necessary. Rather, capacity may be inferred as a necessary implication from the powers and responsibilities of a governmental entity."); *Harman v. City of Ft. Lauderdale*, 234 N.Y.S. 196, 198 (N.Y.Sup. 1929) ("The Florida statute … creating said Port Authority … specifically provides that said Port Authority 'shall constitute a body corporate and shall contract on behalf of said district and shall sue and be sued in that name.'");

*Van Horn v. Kittitas County, Wash.*, 59 N.Y.S. 883 (N.Y.Sup. 1899) ("The defendant is, by the statutes of the state of its domicile, a public corporation, capable of suing and of being sued. It rests with the state to determine what the powers and liabilities of a county shall.").

Thus, to assert a lack of capacity pursuant to New York law, defendant PA was required to submit evidence that it does not have the power to sue or be sued under the legal regime that brought it into existence. The PA has not even *attempted* to make such a showing. Moreover, while it is not plaintiffs' burden to "rebut an insufficient showing" *Giannullo*, 322 F.3d at 141, the fact is that the PA's constituent instrument explicitly empowers it to sue and be sued. The PA was created by a series of agreements known as the Oslo Accords. *Knox* at 431-438. The Accords expressly provide that the PA has the power to "sue and be sued." Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip (Sept. 28, 1995) Art. IX, para. 2. *See also* Celia Wasserstein Fassberg, "Legal Aspects of the Israeli-Palestinian Economic Relations" in Eugene Cotran and Chibli Mallat (eds.) The Arab-Israeli Accords: Legal Perspectives, p. 158, n. 6 ("The Cairo Agreement grants the Palestinian Authority … the capacity to sue and be sued … Since the Palestinian Authority has the capacity to sue and be sued … it is presumably subject to suit in any competent court for any legal act for which it might be held liable.").

Thus, under New York law, the PA has the status of a governmental entity with the capacity to be sued, because its enabling instrument provides it with such capacity.

Similarly, in respect to a foreign unincorporated (albeit non-governmental) association such as the PLO, the law of New York requires an examination of the legal regime under which the PLO operates in order to determine capacity. *See e.g. Textile Properties v. M.J. Whittall*, 157 Misc. 108, 282 N.Y.S. 17 (N.Y.Sup. 1934) (Capacity of a foreign entity to be sued is determined under foreign law, not New York law; thus, a Massachusetts trust, which in New York law is

considered an unincorporated association, should not be treated as an unincorporated association, because Massachusetts law "provides that such an association may be sued and its property may be subject to attachment in like manner as if it were a corporation.").

Therefore, in order to prevail on their motion, defendants would need to submit evidence showing that in its home jurisdiction (i.e. in the West Bank) the PLO has no capacity to be sued. Since defendants have failed to make such a showing, their motion must be denied.[10]

The second element regarding which defendants have failed to meet their "initial burden of providing admissible evidence of the material facts entitling them to summary judgment" is the issue of their "members." Though defendants argue at length that plaintiffs have failed to allege, and cannot prove, that the "members" of the PA and the "members" the PLO authorized or ratified the conduct at issue here, defendants never attempt to show that the PA and PLO actually have any "members," nor do they identify those alleged "members."

Indeed, it is clear that governmental entities like the PA have no "members." And it is far from certain that the PLO has any "members" either. In a recent Supreme Court filing, the instant defendants explained, correctly, that "[t]he PLO is an umbrella organization for various political parties and factions." Exhibit B at 8. Thus, the PLO is comprised of other groups and factions, rather than natural persons. Defendants have made no showing that the PLO's constituent factions would be considered "members" under New York law.

---

[10] The directive contained in Rule 17(b) that the capacity of an unincorporated association be determined by state law refers to both state statutory law and state case law. "The various references in Rule 17(b) to the state law should be construed in light of Rule 81(d)(1), which provides that when the law of a state is referred to, the word 'law' includes the statutes of that state and the state's judicial decisions." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1559 (3rd ed.) (citing *Klebanow v. New York Produce Exchange*, 344 F.2d 294 (2nd Cir. 1965)). Thus, where the state law itself looks to the law of the jurisdiction in which the entity is organized in order to determine capacity, the federal court does so as well. *See e.g. HOB Entertainment, Inc. v. SilkHOB, LLC*, 2011 WL 321780 at *5 (D.S.C. 2011).

Since defendants have failed to demonstrate (because they cannot) that they have any "members" whose authorization or ratification would be required as a condition of imposition of tort liability under New York law, their lack of capacity motion should be denied.

***

For the reasons set forth above, defendants' motion to dismiss the non-federal claims for lack of capacity should be denied.

## IV.   Alternatively, Plaintiffs' Rule 56(f) Cross-Motion Should Be Granted

If defendants' lack of capacity motion is not denied outright for the reasons above, the Court should grant plaintiffs' cross-motion pursuant to Rule 56(f) to defer consideration of defendants' motion in order to permit plaintiffs a fair opportunity to conduct discovery regarding the factual predicates of defendants' motion.

As discussed above, defendants failed to properly plead lack of capacity defense in their Answer and their disclosures made no reference to such a defense. Accordingly, plaintiffs had no reason to seek discovery on this issue. If defendants' disclosures had identified witnesses with information or documents relating to this defense, plaintiffs could and would have conducted such discovery. Now that defendants have belatedly asserted this defense, it would be unfair in the extreme (if defendants' motion is not denied outright, as it should be) to deny plaintiffs an opportunity to take discovery on this issue. *See e.g. Trebor Sportswear v. The Limited Stores*, 865 F.2d 506, 511 (2nd Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment."); Rule 56(e) advisory committee's note ("[S]ummary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.").

**V.      Defendants' Motion in the Alternative Pursuant to 28 U.S.C. § 1367(c) to Withdraw Jurisdiction Over the Non-Federal Claims Should Be Denied**

In the alternative, defendants request that the Court withdraw its exercise of supplemental subject-matter jurisdiction over plaintiffs' non-federal claims pursuant to 28 U.S.C. § 1367(c), which provides that "a court may decline to exercise supplemental jurisdiction, if … the claim raises a novel or complex issue of State law." DE 187 at 15-19. According to defendants, plaintiffs' non-federal claims are all governed by Israeli law, and application of Israeli law would require the Court to adjudicate "a novel or complex issue of State law." *Id*.

But, defendants' § 1367(c) argument is fatally flawed because defendants have failed to show any conflict between New York law and the law of Israel or any other relevant forum. *See Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2nd Cir. 2005) ("No choice-of-law analysis need occur in the absence of an 'actual conflict' between the applicable rules of two relevant jurisdictions."); *Int'l Bus. Machs., Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2nd Cir. 2004) ("Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict."). Thus, "[i]n the absence of substantive difference … a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Id.* at 143.

Moreover, this Court has expressly held that "no actual conflict exists" between New York and Israeli law applicable to civil actions arising from a terrorist attacks in Israel. *Licci v. American Exp. Bank Ltd.*, 704 F.Supp.2d 403, 409 (S.D.N.Y. 2010) (Daniels, J.).

Indeed, during a conference in *Licci*, this Court (Judge Daniels) noted that, "I've done it on Israeli law before, and, quite frankly, its not much different tha[n] doing it on New Jersey law; the principles are basically the same." Tr. 3/11/09 in *Licci v. American Express Bank*, Civ. No. 08-7253 (S.D.N.Y.) (GBD), Exhibit C, p. 8 lines 15-18.

Furthermore, in a related case pending before Judge Marrero in this court, the instant defendants asserted that:

> Israeli law provides as remedies in tort actions montary damages for lost wages, pain and suffering, and emotional disability … These remedies are substantially <u>the same as those available in the United States and demonstrate the similarities of the two court systems</u>.

Memorandum in Support of Defendants' Motion for Relief from Judgment *in Knox v. PLO, et al.*, Civ. No. 03-4466 (S.D.N.Y.). DE 96, at 19 (emphasis added).

In sum: the "parade of horribles" that defendants seek to conjure up in respect to Israeli law is a whopping red herring. Having failed to demonstrate any conflict between the law of New York and the law of Israel (or any other jurisdiction) defendants' argument – that this Court must apply Israeli law to the supplemental causes of action – fails as well.

***

**WHEREFORE**, defendants' motion should be denied; alternatively, plaintiffs' corss-motion should be granted.

Plaintiffs, by their Attorney,
<u>/s/ Robert J. Tolchin</u>
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com