UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

        v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

Civ. No. 04-397 (GBD) (RLE)

### REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO STRIKE; OR, ALTERNATIVELY, FOR PARTIAL JUDGMENT ON THE PLEADINGS

#### Introduction

The plaintiffs respectfully submit this Reply to Defendants' Opposition to Plaintiffs' Motion to Strike, or, Alternatively, for Partial Judgment on the Pleadings (DE 211).

Defendants lead off their Opposition by quoting Judge McMahon's colorful adage, coined in *Raymond Weil, S.A. v. Theron*, 585 F.Supp.2d 473 (S.D.N.Y. 2008), that: "There is nothing dumber than a motion to strike boilerplate affirmative defenses." DE 211 at 1. Defendants neglect to mention, however, that after making that pungent observation, Judge McMahon then granted the plaintiff's motion, and struck eight of defendant's boilerplate affirmative defenses. *Raymond Weil*, 585 F.Supp.2d at 490 "[S]ince RW has made such a motion, I have to rule on it … The remaining boilerplate affirmative defenses against which RW moves are dismissed.").

A motion to strike affirmative defenses that are nestling harmlessly in the answer might indeed be "dumb." But where, as here, the defenses are not harmless because – as defendants' out-of-the-blue Motion for Partial Judgment on the Pleadings for lack of capacity shows – the defendants have evinced an intention to unsheathe their fourteen affirmative defenses at their

1

leisure to disrupt the proceedings, it is not only proper but efficient and <u>wise</u> to nip such dilatory and wasteful conduct in the bud by striking those "defenses." And defendants' Opposition to this motion, in which (as discussed *infra*) they <u>refuse</u> to refrain from engaging in such motion practice, confirms the wisdom of removing their "defenses" from this case forthwith.

Simply put: the judicial and party resources that will be <u>saved</u> by preventing defendants from utilizing their improper affirmative defenses for additional wasteful motion practice (exemplified by their pending lack of capacity motion) <u>outweighs many fold</u> the relatively minimal investment of resources needed to rule on the instant motion to strike. "When a defense is insufficient as a matter of law, the defense <u>should be stricken</u> to eliminate <u>the delay and unnecessary expense</u> from litigating the invalid claim." *DGM Investments v. New York Futures Exchange*, 2004 WL 635743 at *2 (S.D.N.Y. 2004) (emphasis added) (quotation marks omitted).

Therefore, and for the reasons below and in their opening papers, plaintiffs' motion should be granted, and defendants' request for leave to amend their answer should be denied.

## ARGUMENT

### I. Rule 12(f) Relief Should Not Be Denied as Untimely

Defendants ask the Court to deny plaintiffs' Rule 12(f) motion as untimely, but proffer no grounds in support other than the bare fact that the Court is entitled to do so. DE 211 at 2-3. Defendants' untimeliness argument should be rejected, since it ignores both the extensive case law holding that Rule 12(f)'s time limit should be disregarded where the motion to strike is

meritorious,[1] and the fact that this motion was necessitated by defendants' recent attempt (via their lack of capacity motion) to use their improper affirmative defenses to disrupt this case.

## II.     Alternatively, the Court Can and Should Grant Relief Under Rule 12(c)

As shown in plaintiffs' opening papers, if the Court declines to consider this motion under Rule 12(f) it can and should dismiss defendants' affirmative defenses under Rule 12(c). Purporting to rely on Wright & Miller § 1369, the defendants argue that Rule 12(c) is not a proper procedural vehicle to dispose of improper affirmative defenses. DE 211 at 3. But defendants have misrepresented Wright & Miller, which in the very same section explains that "a Rule 12(f) motion that succeeds in eliminating the defenses to the action" often has the same effect as a Rule 12(c) motion, that "[m]ore recent cases have recognized the notion of a partial judgment on the pleadings" and "[m]ost significantly, nothing should turn on the designation given the motion." 5A Federal Practice and Procedure § 1369. In fact, defendants' own lack of capacity motion was brought under Rule 12(c), and as they pointed out there: "Courts routinely consider motions for partial judgment on the pleadings." DE 187 at 2 (citing cases).

Among the Rule 12(c) motions for partial judgment on the pleadings "routinely" granted by the courts are motions to strike affirmative defenses. Indeed, aside from the cases doing exactly that cited in plaintiffs' motion[2], <u>in the past few weeks alone at least three different federal courts granted Rule 12(c) motions to dismiss affirmative defenses</u>. *See Pixion. v. Citrix Systems*,

---

[1] *See* DE 205 at 4 (citing *G-I Holdings v. Baron & Budd*, 238 F.Supp.2d 521, 554 (S.D.N.Y. 2002) ("Rule 12(f) … permits a court to strike such material on its own initiative at any time … [T]his provision has been interpreted to allow courts to grant meritorious motions to strike even when they are untimely.") (quotation marks omitted) and *Emmpresa Cubana v. Culbro*, 213 F.R.D. 151, 155, n.2 (S.D.N.Y. 2003) ("[T]he Court's discretion renders the twenty-day rule essentially unimportant, as the Court has the authority to hear a motion to strike at any time.") (quotation marks and citation omitted)).

3

2012 WL 762005 (N.D.Cal. Mar. 8, 2012) (granting Rule 12(c) motion to dismiss affirmative defenses); *City of Joliet v. Mid-City Nat. Bank of Chicago*, 2012 WL 638735 (N.D.Ill. Feb. 22, 2012) (same); *Reed v. AMCO*, 2012 WL 556265 (D.Nev. Feb. 21, 2012) (same).

In sum: plaintiffs' motion can and should be granted under Rule 12(f) or Rule 12(c).

### III. The *Twombly & Iqbal* Standards Apply to Defendants' Affirmative Defenses

Defendants argue that pleading of affirmative defenses is not governed by the standards set forth in in *Twombly* and *Iqbal*. DE 211 at 4-7. But the "vast majority" of federal district courts, including every judge in this district to have considered the issue, have held that the *Twombly* and *Iqbal* standards govern affirmative defenses. *Barnes v. AT & T Pension Ben. Plan– Nonbargained Program*, 718 F.Supp.2d 1167, 1171–72 (N.D.Cal. 2010) ("[T]he vast majority of courts presented with the issue have extended *Twombly*'s heightened pleading standard to affirmative defenses."). Since defendants' arguments against the application of *Twombly* and *Iqbal* to affirmative defenses have been addressed and refuted by these extensive precedents, plaintiffs respectfully refer the Court to the reasoning of those cases, which they incorporate herein by reference. *See Lane v. Page*, 272 F.R.D. 581, 589 n. 5 (D.N.M. 2011) (collecting cases extending *Twombly* and *Iqbal* to affirmative defenses). Plaintiffs add only the following:

*First*, defendants' claim (DE 211 at 6) that affirmative defenses do not increase litigation and discovery costs is empirically baseless. "Boilerplate defenses … create unnecessary work. Opposing counsel generally must respond to such defenses with interrogatories or other discovery aimed at ascertaining which defenses … are merely asserted without factual basis." *Safeco Ins. Co. of America v. O'Hara Corp.*, 2008 WL 2558015 at *1 (E.D.Mich. 2008).

---

[2] *See* DE 205 at 4-5 (citing cases).

4

*Second*, defendants' assertion (DE 211 at 6-7) that defendants (unlike plaintiffs, who are bound only by the statute of limitations) have only 21 days to prepare their pleadings, does not square with reality. A defendant rarely files an answer unless and until its motion to dismiss has been denied, which often takes years –longer than many limitations periods. Indeed, in this case, defendants' Answer was filed some seven years after the Complaint was filed. Thus, defendants had far <u>more</u> time to prepare their Answer than the plaintiffs had to prepare the Complaint.

Finally, defendants ask this Court to create a rule that where, as here, an answer is filed subsequent to *Twombly* and *Iqbal*, it need not comply with the pleading standards set forth in *Twombly* and *Iqbal*, if the complaint was filed prior to *Twombly* and *Iqbal*. DE 211 at 7-8. Needless to say defendants cite no precedent for this peculiar suggestion because none exists. Moreover, when they filed their Answer in 2011, defendants were well aware of the scores of cases holding that *Twombly* and *Iqbal* apply to affirmative defenses – yet, they pled their defenses in the baldest possible fashion. Thus, defendants either intentionally <u>ignored</u> these standards – at their own risk – or they are simply <u>unable</u> to support their defenses with any facts.

## IV. Defendants' Defenses Are Inadequate Under Pre *Twombly & Iqbal* Standards

In any event, as discussed in plaintiffs' opening papers, defendants' affirmative defenses are woefully inadequate even under the pre-*Twombly* and *Iqbal* pleading standards in this Circuit:

> While it is unclear whether *Iqbal*'s "plausibility" pleading standard applies to affirmative defenses, I need not answer that question, for in *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2nd Cir. 1996) (decided long before *Iqbal*), the Second Circuit made clear that "affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy."

*Luvata Buffalo. v. Lombard General*, 2010 WL 826583 at *8 (W.D.N.Y. 2010).

Defendants' affirmative defenses unquestionably suffer from the same fatal defects described in *Shechter*: they are "nothing more than mere conclusions of law" with no "asserted facts," and therefore "have no efficacy." *Shechter*, 79 F.3d at 270. *See also In re Montagne*, 2010 WL 449674 at *3 (Bkrtcy.D.Vt. 2010) (*Shechter* applies to all affirmative defenses).

Ignoring the clear requirements of *Shechter*, defendants argue that their boilerplate defenses are adequate under decisions by district courts in New Jersey and Pennsylvania. DE 211 at 8-9.  Unfortunately for defendants, the law in this Circuit, even prior to *Twombly* and *Iqbal*, is clear: simply "mouthing" defenses, as defendants have done, is nugatory. Therefore, since those defenses are "insufficient as a matter of law [they] should be stricken to eliminate the delay and unnecessary expense from litigating the[m]." *DGM Investments*, 2004 WL 635743 at *2.

## V.     Defendants' Own Opposition Papers Confirm the Existence of Prejudice

Defendants argue that plaintiffs have failed to show that they will be prejudiced if the instant motion is not granted, because plaintiffs merely "speculate" that defendants will use their improper affirmative defenses to generate additional wasteful motion practice. DE 211 at 9-10. This argument is both cynical and revealing: if defendants did not intend to file further disruptive motions on the basis of their "defenses," they could simply have said so. Instead, they mock plaintiffs for "speculating" – i.e. for plaintiffs' inability to read defendants' mind. But defendants obviously know their own mind, and their refusal to simply confirm that they do not intend to utilize their improper defenses to waylay the Court and the plaintiffs as this case proceeds is an effective admission that they do so intend. Thus, rather than put plaintiffs' concerns of prejudicial future motion practice to rest, defendants' Opposition ratifies those concerns as valid.

The resources invested in briefing defendants' lack of capacity motion alone – a motion that should not have been filed and should be summarily denied because it is founded on

defendants' inadequately pled lack of capacity defense – were extensive, and far exceed those of the instant motion. It would be highly prejudicial if plaintiffs were forced to engage in additional such "fire drills" on the basis of defendants thirteen other improper "defenses."

## VI.   The Additional Grounds for Striking/Dismissing the Affirmative Defenses

Plaintiffs' motion presented additional grounds (aside from the fact that they are fatally conclusory) for striking or dismissing defendants' "affirmative defenses," and defendants respond to those grounds with a handful of arguments. DE 211 at 11-14. Defendants' arguments in this regard do nothing to undermine the grounds set forth in plaintiffs' opening papers, and plaintiffs will add only the following:

Defendants claim that their failure to properly assert their fourth affirmative defense (for lack of capacity) should be excused, because they had earlier raised capacity arguments in a motion to dismiss. DE 211 at 12. This notion should be rejected for two reasons: first, it would eliminate rules of the waiver, and would lock a defendant into a position first adopted in its motion to dismiss, irrespective of whether and how it reasserted that position in its answer; second, it violates the rule that "[p]leadings cannot be amended by legal memoranda." *Cebertowicz v. Motorola, Inc.*, 2000 WL 1898525 at *1 (N.D.Ill. 2000). *See also e.g. Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Harris v. N.Y. State Dep't of Health*, 202 F.Supp.2d 143, 175 (S.D.N.Y.2002) ("A plaintiff cannot oppose a motion to dismiss through assertions of facts and references to documents not reflected in the complaint at issue, and the parties' pleadings cannot be amended by these means.").

Indeed, defendants' proposal that affirmative defenses cited in an answer must be read "in tandem" with papers previously filed by the defendant during motion practice is absurd, since it

would render the very concept of defined, finite "pleading" a nullity. A defendant can no more redeem an insufficient defense by pointing to statements he made in motion papers than a plaintiff can rescue an inadequate allegation in such a manner.

## VII.  Defendants' Request for Leave to Amend Should Be Denied

Defendants argue that if the Court strikes some or all of their affirmative defenses, they should be permitted to amend their answer to properly reassert their defenses. DE 211 at 14-15. This request should be rejected for several reasons:

First, some of defendants' affirmative defenses have been waived (improper venue and lack of capacity). Defendants cannot revive waived defenses via amendment.

Second, some of defendants' affirmative defenses are not affirmative defenses at all (e.g. subject-matter jurisdiction, failure to state a claim). Defendants should not have pled these putative defenses to begin with and so should not be allowed to reassert them.

Third, this case arises from terrorist attacks which occurred some ten years ago, it has been pending for eight years, and defendants had seven years to prepare their Answer. Moreover, the parties are already halfway through the discovery period. If defendants are permitted to now re-plead – i.e. expand upon – their affirmative defenses, plaintiffs will need discovery in respect to defendants' new assertions. "Not only would the plaintiff be required to address the newly-argued facts in the … amended affirmative defenses, but it might well have to address new problems of proof." *In re Montagne*, 2010 WL 449674 at *4. Thus, allowing defendants to amend their defective affirmative defenses at this late date will burden the plaintiffs with the need for new discovery, and very likely delay the denouement of this hoary case.

**WHEREFORE**, the instant motion should be granted.

                                      Plaintiffs, by their Attorney,

                                      /s/ Robert J. Tolchin
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com