# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

                  Plaintiffs,

                                             Civ. No. 04-397 (GBD) (RLE)

      v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

                  Defendants.

**PLAINTIFFS' CONSOLIDATED REPLY IN FURTHER SUPPORT OF THEIR *EX PARTE* MOTION TO THE MAGISTRATE JUDGE TO ISSUE A LETTER OF REQUEST FOR JUDICIAL ASSISTANCE FOR THE DEPOSITIONS OF MUNZAR NOOR [DE 221]; ABDEL KARIM AWEIS AND NASSER SHAWISH [DE 223]; AND ABDEL RAHMAN MAKDAD, AHMED SALAH, AHMED SA'AD, <u>HALMI HAMASH AND ALI ABU HALAIL [DE 225]</u>**

## <u>Introduction</u>

      Defendants have filed a consolidated opposition to plaintiffs' motions to issue Hague Convention requests for the depositions of eight persons convicted and serving prison sentences in Israel for their roles in the terrorist attacks from which this action arises. DE 229-231.

      Defendants do not challenge the obvious importance and relevance of the testimony of these individuals, and they neither assert a privilege nor claim that the depositions will prejudice them somehow; instead, they demand that the Court deny plaintiffs' motions because (1) the depositions (allegedly) might not be finished before the December 21, 2012, discovery deadline and (2) plaintiffs have waited until midway through the discovery period to seek them. DE 231.

      As shown below, even if defendants had standing to oppose the depositions (which they do not), their arguments are factually and legally baseless, and their sole purpose in seeking to block the depositions is to prevent plaintiffs from obtaining testimony that will implicate the defendants in the deadly terrorist attacks from which this action arises.

**ARGUMENT**

**A.    Defendants Have No Standing to Oppose Plaintiffs' Motion**

Plaintiffs' opening motion pointed out that defendants have no standing to oppose third-party discovery, and defendants' opposition fails address much less rebut their lack of standing. The fact that defendants oppose the discovery sought by claiming that it might not be completed before the discovery deadline does not provide them with standing. The decision in *Ehrlich v. Incorporated Village of Sea Cliff*, 2007 WL 1593211 (E.D.N.Y. 2007) is precisely on point. There, as here, the defendant sought to bar the plaintiff from obtaining discovery from a non-party by claiming that the discovery "was untimely because it could not be completed within the … discovery deadline." *Id*. at *1. The Eastern District rejected the defendant's request "because parties typically are deemed to lack standing to quash subpoenas issued to non-parties under Rule 45 absent a claim of privilege or some proprietary or personal interest in the subpoenaed matter … Defendant has made no showing of privilege or any proprietary or personal interest in the subpoenaed matter, [and so] lacked the requisite standing sufficient to quash the subpoena." *Id*. (internal quotations and citation omitted).[1] Thus, defendants' opposition should be ignored.[2]

In any event, as shown below, defendants' arguments are baseless on the "merits."

---

[1] Indeed, courts have held that parties lack standing to oppose non-party discovery even where (unlike here) it is sought after the discovery deadline. *Multi-Tech Systems v. Hayes Microcomputer*, 800 F.Supp. 825, 854 (D.Minn. 1992) (Affirming that "defendants have no standing to challenge" a subpoena on the grounds that "the time for discovery closed well before [plaintiff] served the subpoena.").

[2] The Court should note that each and every time that the plaintiffs have sought third-party discovery in this case – on five separate occasions – the defendants have improperly attempted to block it. (Defendants opposed the request to depose convicted murderer Bilal Bargouti, opposed plaintiffs' pending motion to compel discovery from the BBC, sought to delay the deposition of confidential informant Mosab Hassan Yousef, opposed the request to depose convicted terrorist Sana'a Shehadeh and oppose the instant depositions). Defendants will no doubt continue to interfere with third-party discovery and to waste the resources of the Court and the plaintiffs in this way, until the Court puts its foot down.

**B.      The Depositions Can and Will Easily Be Completed Prior to the Discovery Deadline, Which Is Still Nearly Nine Months Away**

Defendants claim that the depositions are unlikely to be held prior to the December 21, 2012 discovery deadline. That claim is frivolous. Experience proves that it takes Israeli authorities between **24 days and 79 days** to approve such requests and send them to an Israeli court for execution. *See* Declaration of Robert J. Tolchin at ¶ 2. Indeed, the Hague request for the deposition of prisoner Abdullah Barghouti that was issued by this Court on December 20, 2011, was approved for execution by Israeli authorities and docketed in the Jerusalem Magistrates Court on February 5, 2012 – i.e., a mere 47 days after this Court issued the request. *Id*.

Moreover, once the request is docketed in an Israeli court, the deposition can be held immediately, whenever the parties choose. *Id*. at ¶¶ 3-4. Of course, it can then take a few weeks to find a date convenient to the participants, but that is true of <u>all</u> depositions.

In sum: there is no reason whatsoever to believe that the depositions sought will not be held long, long before the discovery deadline, which is still nearly nine months away.[3]

---

[3] Defendants point out that two Hague Convention requests previously issued by this Court that seek <u>documents held by the Israeli government</u> have not been answered. That argument is a red-herring: the instant requests seek <u>depositions</u>, not <u>government documents</u>. Indeed, as this Court is aware, FOIA requests and subpoenas on the U.S. government for documents take months or even years to resolve, and often result in no production; little wonder, then, that the Israeli government has not yet responded to Hague requests for its own internal documents.

By contrast – and as shown in the Tolchin Declaration – Israeli authorities respond to requests for prisoner depositions with great alacrity. Thus, comparing requests for prisoner depositions with requests for governmental documents is not apples and oranges – it is apples and ocelots.

**C.**     **There Is No Legal Basis to Suddenly Extinguish Plaintiffs' Right to Seek and Take Depositions With Nearly Nine Months Left in the Discovery Period**

Seizing on remarks made by the Court in a March 20, 2012 conference regarding other matters, defendants claim that the instant motion must be denied unless plaintiffs explain why they waited until this stage in the discovery process to seek these Hague Convention depositions. But defendants distort the Court's remarks in the March 20 conference; the Court expressly stated that its remarks were directed at <u>all</u> depositions, not only Hague depositions. "[I]t'd actually be the same if you had a regular deposition. Forget the Hague letter … if you wanted to start doing depositions of people and you want to start noticing depositions, I want to know why they're coming up now and why they didn't come up earlier." Tr. 3/20/12 at 37.

Plaintiffs respectfully believe that the defendants' understanding of the Court's remarks at the March 20, 2012 is erroneous. The scheduling order in this case sets an eighteen-month fact discovery period ending only on December 21 – which means that the March 20 conference was the midway point, with a full nine months of discovery remaining. DE 131. The scheduling order does not limit the timing of depositions, and allows plaintiffs a minimum of 35 depositions. *Id*. at ¶ 5. (Surely there was no expectation on anyone's part that plaintiffs would or even could take 35 depositions within the first nine months of the discovery period). And in the absence of any contrary provision in the scheduling order plaintiffs were entitled to rely on Rule 26(d)(2), which provides that "methods of discovery may be used in any sequence," and to defer depositions until their paper discovery was well under way. Indeed, defendants' position conflicts with the rule that "the various discovery devices may be utilized independently, simultaneously, or progressively, so long as the requirements of the rule or rules invoked are met. Rules 26 through 37 are an integrated mechanism. Often use of one discovery device will lead naturally to use of

another, but this sequence is solely the choice of the party seeking discovery." Miller & Marcus, *Federal Practice and Procedure* § 2046 (citation and quotation marks omitted).

Defendants also ignore the fact that (unlike plaintiffs) they have not yet taken a single deposition in this case; do defendants seriously believe that they are freely permitted to take their depositions during the second half of the discovery period, but plaintiffs are not?!

In any event, even if plaintiffs were required to explain why they are seeking these depositions now, at the mid-point in the discovery period with nine months left, the explanation is simple and involves two interrelated reasons: *First*, for obvious reasons which guide parties in the vast majority of cases, the plaintiffs wanted to get their paper discovery well underway before proceeding to depositions. During the first half of discovery plaintiffs served defendants with numerous interrogatories and document requests. Unfortunately, defendants have objected and refused to respond to many of these requests, and have replied to others in "drip-irrigation" fashion, doling out scraps of information and the occasional document every month or two, while telling the plaintiffs and the Court that their "investigation" of this 2004 case is "continuing." Thanks to defendants' foot-dragging, paper discovery has progressed very slowly. *Second*, as shown above, based on past experience in this and related cases, the nine months remaining in the discovery period is easily sufficient to complete the Hague depositions sought. Thus, in seeking these Hague depositions now, plaintiffs' counsel is by no means "cutting it close."

In sum: plaintiffs have struck a perfectly reasonable balance between trying to advance paper discovery before taking depositions, and leaving plenty of time to take the depositions.

Therefore, there is no legal basis to cut off or place conditions on plaintiffs' right to take depositions, or to otherwise deviate from the provisions of the scheduling order.

**D.    Denying Plaintiffs' Motions Would Harm the Vital National Interests that ATA Actions Are Intended to Protect**

Plaintiffs' action is brought under the civil provisions of the Antiterrorism Act ("ATA") and, as the courts of this Circuit and others have found, the prosecution of ATA cases serves not only the individual plaintiff's personal interest, but the national interest of the United States:

> The legislative history of the ATA … reveal[s] this country's profound and compelling interest in combating terrorism at every level …
>
> Congress has explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations. Certainly, private tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism vindicate the national and international public interest.

*Weiss v. National Westminster Bank*, 242 F.R.D. 33, 46, 50 (E.D.N.Y. 2007) (emphasis added). *See also e.g. Ungar v. Palestinian Authority*, 715 F.Supp.2d 253, 268 (D.R.I. 2010) ("[T]here is an extremely strong interest in enforcing judgments … entered under the civil provisions of the Antiterrorism Act ("ATA")").

Precisely because of the important public interest vindicated by ATA actions, the courts of this Circuit have repeatedly compelled the production of discovery in ATA cases even when such production violated foreign secrecy laws and placed the producing party in the position of choosing between being penalized abroad or imposition of sanctions. *See e.g. Linde v. Arab Bank*, 269 F.R.D. 186 (E.D.N.Y. 2010); *Weiss*, 242 F.R.D. at 55-56; *Strauss v. Credit Lyonnais*, 242 F.R.D. 199 (E.D.N.Y. 2007); *Strauss v. Credit Lyonnais*, 249 F.R.D. 429 (E.D.N.Y. 2008). All the more so here, where no such weighty countervailing considerations hang in the balance.

Indeed, because ATA actions such as this case serve the <u>national</u> interest, this Court – like the others in this Circuit – should exercise its discretion to the full extent permitted by the bounds of the law in order to permit plaintiffs to obtain all relevant discovery.

**E.    The Court Should Not Issue an Advisory Opinion on Any Hypothetical Enlargement of the Discovery Period**

In the alternative, defendants ask the Court to rule in advance that under no circumstances will the discovery deadline be enlarged to permit these depositions. As discussed above, there is not the slightest reason to believe that any such enlargement will be needed, (barring any unseen, extraordinary force majeure-type events).

At the same time, granting defendants an advance ruling – an advisory opinion, really – that "come heck or high water" the discovery period will not be extended to allow these depositions would be to practically invite defendants to manufacture delays and throw up obstacles in order to prevent these depositions from taking place before the deadline, secure in the knowledge that the Court has already ruled out any enlargements.

Accordingly, no such order should issue.

**WHEREFORE**, the instant motions should be granted, and the Letters of Request attached to plaintiffs' motion papers should be endorsed and issued by the Court forthwith.

Plaintiffs, by their Attorney,

/s/ Robert J. Tolchin
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com