```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3   ----------------------------------X
                                       :
 4   SOKOLOW, et al.,                  : 04-CV-397
                                       :
 5                   Plaintiffs,       : June 28, 2012
                                       :
 6              v.                     : 500 Pearl Street
                                       : New York, New York
 7   PALESTINE LIBERATION ORGANIZATION,:
      et al.,                          :
 8                                     :
                     Defendants.       :
 9   ----------------------------------X

10
            TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
11            BEFORE THE HONORABLE RONALD L. ELLIS
                 UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14   For the Plaintiffs:        ROBERT J. TOLCHIN, ESQ.
                                Berkman Law Office
15                              111 Livingston Street
                                Brooklyn, NY 11201
16
     For the Defendants:        BRIAN A. HILL, ESQ.
17                              Miller & Chevalier, Chtd.
                                655 15th Street, North West #900
18                              Washington, DC 20005

19

20   Court Transcriber:         SHARI RIEMER
                                TypeWrite Word Processing Service
21                              211 N. Milton Road
                                Saratoga Springs, NY 12866
22

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1         THE CLERK: Parties on <u>Sokolow v. Palestine Liberation</u>
2 <u>Organization, et al.</u>
3         All counsel, please identify yourselves for the
4 record.
5         MR. TOLCHIN: Good morning, Your Honor.  Robert
6 Tolchin for the plaintiffs.  With me is Aaron Solomon and our
7 two summer law student interns Avia [inaudible] and Grenn Argon
8 [Phs.].
9         THE COURT: Why do I see three people?
10         MR. TOLCHIN: I didn't realize they were behind me.
11 They were behind me.  I'm sorry.
12         MR. HILL: Hello again, Your Honor.  Brian Hill for he
13 defendants, PLO and [inaudible].
14         THE COURT: Good morning.  I understand from my law
15 clerk that you guys have been working and resolving things on
16 your own.
17         MR. HILL: Your Honor, I can report that immediately
18 before the hearings Mr. Tolchin told me that the letter I had
19 written dated April 30th requesting an order to answer
20 interrogatories and produce documents.  Plaintiffs have decided
21 to withdraw their objections to that and they will be serving
22 supplemental interrogatory answers and making a document
23 production along with that. I just ask the court to issue a
24 date for that to happen since these are now at least a month or
25 two months past due.

1    THE COURT: You were getting along so well. You could
2 have agreed on a date.
3    MR. HILL: Thirty days.
4    MR. TOLCHIN: We have 20 depositions and Rule 35
5 exams also taking place yesterday, this afternoon, all week
6 next week. We're working.
7    THE COURT: Right. But it depends on -- is somebody
8 pulling together the documents and now it's the same person
9 taking the depositions?
10    MR. TOLCHIN: Yes, it's a team effort and it can't
11 happen instantly.
12    THE COURT: Well, there's instantly that's 30 days.
13 Perhaps there's a compromise in there.
14    MR. TOLCHIN: Your Honor, it's not --
15    THE COURT: But before we even get to that, before we
16 talk about that, let's see what -- talk about team effort.
17 What other things are we talking about that need to be
18 resolved?
19    MR. TOLCHIN: There's outstanding motions for Hague
20 letters of request. There's some fully briefed motion.
21    MR. HILL: Your Honor, from my perspective the only
22 things that were new for this hearing are these three letters
23 which have now been resolved due to the plaintiff's change in
24 position. I think there's a couple of issues pending from a
25 January and March hearings that Your Honor has under

4

1  advisement.
2          THE COURT: We're working hard too.  A lot of things
3  are happening.  So you've resolved the new stuff and everything
4  else is on me.
5          MR. HILL: As far as my requests, Your Honor, yes.
6          MR. TOLCHIN: And as far as --
7          THE COURT: Except for the time frame.
8          MR. TOLCHIN:  Correct.  And as far as our Hague
9  requests that the final briefing went in in April and -- to use
10 your terminology, Your Honor, it's on you.
11         THE COURT: So what -- tell me the nature of the
12 discovery.  If you can't agree on the time -- well, let me ask
13 a different question.
14         MR. HILL: They're not [inaudible], Your Honor.  It's
15 three sets of interrogatories asking the plaintiffs to identify
16 persons with knowledge of the alleged arrests or releases or
17 escapes of five individuals from PA custody.  I've propounded
18 these I believe back in February or March so they've known
19 about them for some time, and then related document requests
20 for any documents that pertain to any individuals the
21 plaintiffs identified.  I really don't think it should take an
22 additional 30 days when they've known about it this long.
23         MR. TOLCHIN: It's not prejudice because the -- any
24 individuals that would be identified are likely to be their own
25 staff and employees.  It's people that -- it's not going to be

5

1  any people that they haven't had access to from the beginning
2  of this case in 2004.
3       THE COURT: So basically your window into the future
4  since you're the only one who has it is that you're really not
5  going to identify anybody that's likely to cause him to need to
6  do further discovery.
7       MR. TOLCHIN: I doubt it.
8       MR. HILL: I don't know.  That's why I've asked for
9  the interrogatory.
10      MR. TOLCHIN: I doubt it.
11      THE COURT: You understand that I have two choices.  I
12 could spend some time and see how much we could compress the
13 time frame or I could take you at your representation that this
14 not going to bump any of the dates because it's not --
15      MR. TOLCHIN: Your Honor, I can tell you for certain,
16 for certain if I'm saying 30 days and he wants less we're down
17 to where Your Honor might have said two weeks.  So we're down
18 to the question does 14 days make a significant difference in
19 the grand scheme of things and I'm quite certain it doesn't.
20      THE COURT: Well, that assumes no slipperage.  I
21 understand that when we do these discovery disputes just for
22 example the one that we just had where we did the protective
23 order, they produced the discovery.  That's not the end of it.
24 I mean you produce this in 30 days, if 30 days is the end of it
25 that's fine with me.  If 30 days causes another round of

6

1  disputes and resolutions it's going to last another 30 or 60
2  days then it's a problem.
3          MR. TOLCHIN: I was tempted to give that guy $800.00
4  and move the conference up.
5          THE COURT: But you understand the issue though.
6  Right now I think you're the only person who knows for sure
7  whether or not it's likely to -- the 30 days will end it.
8  Frankly I might be going out on a limb on this one but I think
9  if the defendant were confident that your submission would be a
10 final and last act on this discovery road he wouldn't have as
11 much opposition to 30 days.
12         MR. TOLCHIN: I'll tell you this, Your Honor.  Just
13 saying it's fair that as far as I know from my own knowledge I
14 absolutely don't think that it will cause any delays.  My
15 problem is I work on this case together with other counsel and
16 it could be -- I don't want to speak for them.  Maybe somebody
17 has something in their head that there's this person out there
18 or that person out there who -- I'm not aware of it.  That's
19 what I want the 30 days to straighten out so we make sure we
20 have a comprehensive answer.
21         THE COURT: So this is going to be sort of like for
22 want of a better term is like brainstorming where all of the
23 people who have the information will get together, you'll sort
24 of make a list, you'll compare the list.
25         MR. TOLCHIN: Basically.  Does anyone have anything to

1  add.  Answer might be no.  Come on, answer already.  That kind
2  of thing.
3          THE COURT: Well, the one thing I do agree on is this
4  that what we're really talking about is -- I'm not even sure
5  that Mr. Hill would object to two weeks but is the 30 days
6  going to make a significant difference?  It really is going to
7  depend on where we are within the 30 days and I do want to make
8  one thing clear at this point.  We've been -- we have a lot of
9  things that happened in this case where we do this back and
10 forth between the two of you and something is produced and then
11 it's objected to.
12         Thirty days is fine but after that if you understand
13 that we won't have any applications for any extended periods of
14 time.  Everything will be expedited after that.  So whatever it
15 takes you're going to have to fix what's not right after 30
16 days and it won't be like well, we'll do another 30 days or we
17 do another three weeks or whatever it is.  Everything will be
18 on a short timetable after that if we have issues still
19 remaining after the production.  So you're all forewarned.
20         MR. TOLCHIN: Your Honor, would you like a brief
21 status update about where we stand with the damages discovery?
22         THE COURT: Sure.
23         MR. TOLCHIN: It's good.  Would you like to --
24         THE COURT: Some good news?
25         MALE VOICE: Your Honor, Mr. Hill has requested Rule

8

1  35 mental exams of all the clients, depositions of all 40
2  plaintiffs.  Physical exams of approximately ten or so I
3  believe.  To date we have conducted six mental exams.  We had
4  our first deposition yesterday.  We have a deposition this
5  morning.  We have 20 depositions currently scheduled, 20 mental
6  exams currently scheduled and numerous physical exams for the
7  people who are actually injured scheduled which should all take
8  place by the end of August.  We're looking to carve out a
9  couple of weeks in September and October to finish up whoever
10 is left.  It's not really going to be that many people.
11 They're all family so they'll come together and hopefully we
12 will have everybody deposed and examined by the discovery
13 cutoff point in December.
14          MR. HILL: I also hope to be done by December 21st.
15 I'll note for the court although it's not ripe yet there have
16 been some issues with the plaintiff's document production and
17 we're trying to work those out and if we have any issues or we
18 need Your Honor's assistance we'll proceed according to the
19 rules.
20          THE COURT: Okay.  I want you to understand I'm
21 thinking of this all as trying to get to an end point at the
22 same time.  So if you have any issues we'll try to resolve all
23 of them so that they all get resolved by the end point.  So,
24 for example, even with the 30 days again the idea will be that
25 whatever issues remain after that will still be expedited so

1  that we don't have issues that are going to bump the discovery
2  cutoff.
3           MR. TOLCHIN: Just one thing and that being -- I have
4  to search for a diplomatic way to say this but on the Hague
5  motions there is a process -- after Your Honor signs a Hague
6  letter there's a process we have to go through in Israel and
7  the depositions don't happen right away and I appreciate that
8  the court is busy with a great many things but if we want to
9  get these things moving the ball is in the court and there's
10 nothing we can do about it.  The ball is in the court's court
11 and there's nothing we can do about it.  So if there's any way
12 to expedite that it would be greatly appreciated.
13          MR. HILL: Your Honor, I'd be happy to address this.
14 This is actually the first time this particular Hague request
15 has been before you because they were submitted after the March
16 hearing and they were not a subject of our [inaudible] call in
17 April.
18          MR. TOLCHIN: It's a motion.
19          THE COURT: Yes.
20          MR. HILL: There's two outstanding motions and the
21 issue is frankly whether these should be approved under Rule
22 26(b)(2)(c) which imposes on the court a duty to limit
23 discovery under certain circumstances and as Your Honor knows
24 the rule says on motion or on its own the court must limit the
25 frequency or extent of discovery otherwise allowed by these

rules or by local rule if it determines that subsection 2, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.

As Your Honor will recall, when we were together in March you specifically raised the issue of the timeliness of these requests. Let me just read from the transcript of the March 20th hearing on Page 36. Your Honor says "Understand that one of my considerations particularly when we're going to use something as extraordinary as a Hague letter is the timeliness of the request. That is because these inherently cause delays as everybody knows. If you ask me to do a Hague request for somebody in March of 2012 and I will undoubtedly want to know why it is that we're being asked to do this at this point in time because, you know, I'm going to have six months when a case -- we have a 2004 case I believe here and so at the very least I have some representations about when and why this person became so important that we needed to go through this step and why -- why this was not brought up earlier."

As we pointed out in our opposition to these motions, three of these individuals that the plaintiffs are now asking you to issue a Hague letter request for a deposition of are named in the complaint that they filed in 2004. The plaintiffs offered no reason and I can't imagine a reason why this request couldn't have been brought to you at the beginning of the discovery process last year. The other five individuals are

1  named in documents that the plaintiffs produced to us on
2  October 18th of 2011.  We have no representation from the
3  plaintiffs about when they received those documents or when
4  they learned the identity of those five individuals.  Again,
5  there's no reason offered and I can't imagine one why on
6  October 12th a Hague request couldn't have been brought to Your
7  Honor's attention in a time that would have allowed potentially
8  to get done before the close of discovery in this matter on
9  December 21st.
10             Let me also add an additional data point or two.
11 Abdola Barbuti [Ph.], who Your Honor did issue a Hague request
12 for on December 20th of last year was finally deposed last week
13 on June 20th.  So if we assume it will take about the same
14 amount of time that it took for Mr. Barbuti to actually sit
15 down and -- I'll tell you what happened in a moment.
16             MR. TOLCHIN: Your Honor, [inaudible] postponed it.
17             THE COURT: Okay.  Don't do that.  Counsel, counsel.
18 First of all, everybody on this side sit down.  No word until
19 he's finished.
20             MR. HILL: Thank you, Your Honor.  If we assume it
21 takes the same amount of time that's not going to happen before
22 December 21st even if you were to issue it today.  So that's an
23 important consideration you can take into account.
24             The other consideration is this.  I read the
25 transcript of this proceeding.  This individual refused to

12

1  testify and if Your Honor will recall at one of our earlier
2  hearings you specifically raised whether or not it was likely
3  that any of these prisoners who I believe are all serving life
4  sentences and are probably not subject to any additional
5  compulsion or sanction that they would suffer in any real sense
6  are going to be willing to aid the plaintiffs in testifying in
7  these cases.  We have here a concrete example of where this
8  exactly happened.  Your Honor went to the effort of issuing a
9  Hague request, requiring a foreign state to go through its
10 judicial process, to compel someone in its prison systems be
11 brought to a public hearing.  A former Israeli retired judge
12 had presided over that hearing.  Counsel for the parties had to
13 travel to Israel.  Israeli counsel had to be present.  We had
14 to hire court reporters and videographers and translaters all
15 to get essentially no meaningful evidence at all.
16          I submit that Your Honor can also consider that fact
17 under subsection (b)(2)(c)(3) where the court is required to
18 weigh whether the burden or expense of the proposed discovery
19 outweighs the likely benefit of considering the needs of the
20 case, the amount in controversy, the parties resources, the
21 importance of the issues at stake in the action and the
22 importance of the discovery in resolving the issues.
23          So as we've said in our motion and maybe additional
24 points here today, Your Honor, we respectfully submit that the
25 plaintiffs have not shown any cause for waiting as long as they

13

1  did to bring these requests, that there is a real likelihood
2  that these requests are not going to be completed before the
3  court ordered deadline of December 21st and in any event there's
4  not a reason to think that they're on balance going to produce
5  a lot of or useful evidence given the cost and the potential
6  delay of the case.  We therefore ask that you deny this
7  request.
8        THE COURT: I didn't know we were going to have oral
9  argument but you may respond to defense counsel's argument.
10       MR. TOLCHIN: Your Honor, on the timing -- let's break
11 it down into -- on the timing issue, what can I say.  The word
12 that comes to mind is hutzpa.  We just told Your Honor that the
13 defendants' depositions of the plaintiffs are taking place this
14 week, today, yesterday, next week, all of September.  So he
15 says why didn't we take these depositions earlier but why
16 didn't he take depositions earlier.  We all do the -- we all
17 follow the same course in timing depositions and it's followed
18 by every lawyer in every case.  You try to get your document
19 discovery done first.  Your Honor has seen numerous backs and
20 forth here about interrogatories and document demands.  It's
21 not like nothing has been going on.
22       It is natural to try to do your document demands and
23 your interrogatories first and then proceed to depositions.
24 It's exactly what they did and to impugn -- to hold it against
25 us that we waited not until two weeks before the end of

14

1  discovery.  We waited until approximately the midpoint of
2  discovery.  Your Honor had allowed each side 35 depositions.
3  We haven't come close to that.  We have taken some depositions
4  though and in fact back in February when we made this request
5  our side was the only side that had taken any depositions.
6  Defendant had taken none at that point.
7       About the -- the process of how long it takes, Mr.
8  Hill is just exaggerating and he's -- I'm sorry about my
9  outburst before but I'm offended.  We processed the Hague
10 request through the Israeli court to get Mr. Barbuti's
11 deposition fairly rapidly.  The problem is Mr. Barbuti couldn't
12 come because Mr. Barbuti was on a hunger strike.  When that was
13 over everything was rescheduled but there had been a date
14 months earlier but it had to be rescheduled.
15       He came to the deposition.  It was last -- what, two
16 weeks ago.  It happens that his only testimony was a stream of
17 vulgarities, no substantive answers.  Mr. Hill tells Your Honor
18 that it's all for naught, we're not going to get anything out
19 of that.  I'm not quite so sure that we're not going to get
20 anything out of that because there are evidentiary implications
21 of his refusal to answer.  He has prior statements and those
22 prior statements may -- will now be useable because he refused
23 to answer.  Obviously that's not an issue for this moment but
24 there is a point.  Even of the exercise of having a lawyer
25 going over there and being cursed out by this murdered, even so

15

1 there is a point to that exercise.

2     We had filed our application for the Hague letter
3 back in February.  I fully believe if the court acts on it and
4 issues the Hague letter we will expedite the process of taking
5 it over to Israel.  We will expedite the process of getting it
6 approved by the court.  The Israeli courts in recent times the
7 track record has been in the order of a month and a half to two
8 months or so to process the Hague request and get it out to the
9 Israeli court.  They Israeli prison service has not given us
10 any problems about producing these witnesses.

11     By the way, Mr. Barbuti chose to respond to
12 [inaudible] vulgarities but other witnesses who have been
13 produced have actually answered questions.  I took some
14 depositions of prisoners and I wouldn't say they're all the
15 most cooperative witnesses but we had questions and answers and
16 I would not necessarily assume just because of the way Mr.
17 Barbuti behaved that other people will behave that way.  If
18 they do we'll deal with the consequences.  We'll see if it has
19 any implications.  We'll see what that imputes to the
20 defendant.  It depends on each witness' status and who he is,
21 what his position is and numerous other issues that -- it's
22 extremely premature right now to prejudge that.

23     We have the discovery deadline this December 21st.
24 That's still a long ways off.  There's quite a lot of
25 depositions going on from their side.  We're not asking I don't

```
                                                              16
 1  think for anything unreasonable.
 2            THE COURT: That along with your papers will have to
 3  do.
 4            MR. TOLCHIN: Thank you.
 5            THE COURT: Michael, give me a date in early
 6  September.
 7            THE CLERK: Thursday, September 6th at ten a.m.
 8            THE COURT: I know -- I don't have to tell you that
 9  just because we set that date it's not limiting you for
10  contacting the court.
11            MR. HILL: September 6th is fine.
12            MR. TOLCHIN: That's fine.
13            THE COURT: We're adjourned.  Thank you.
14                           * * * * *
15
16
17
18
19
20
21
22
23
24
25
```

17

1    I certify that the foregoing is a court transcript from an
2 electronic sound recording of the proceedings in the above-
3 entitled matter.

                                    _____
                                            Shari Riemer

Dated:  July 15, 2012