C89QsokC1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  MARK I. SOKOLOW, et al.

4                  Plaintiffs

5           v.                              04 CV 397 (GBD)

6  THE PALESTINE LIBERATION
   ORGANIZATION, et al.
7
                   Defendants
8
   ------------------------------x
9                                           New York, N.Y.
                                            August 9, 2012
10                                          11:00 a.m.

11 Before:

12                 HON. GEORGE B. DANIELS

13                                          District Judge

14                      APPEARANCES

15 DAVID I. SCHOEN Attorney at Law
        Attorney for Plaintiffs
16 2800 Zelda Road, Suite 100-6
   Montgomery, AL 36106
17 DAVID I. SCHOEN

18 MILLER & CHEVALIER CHARTERED
        Attorneys for Defendants
19 655 15th Street NW, Suite 900
   Washington DC 20005
20 DAWN MURPHY-JOHNSON
   LAURA FERGUSON
21

22

23

24

25

C89QsokC1

```
 1              (In open court)

 2              THE DEPUTY CLERK:  Mark Sokolow v. Palestine

 3     Liberation Organization 04 CV 397.

 4              Please stand and state your name for the record

 5     starting with the plaintiffs.

 6              MR. SCHOEN:  Good morning, your Honor.  David Schoen

 7     for the plaintiffs.

 8              THE COURT:  Good morning, Mr. Schoen.

 9              MS. MURPHY-JOHNSON:  Good morning, your Honor.  Dawn

10     Murphy-Johnson and Laura Ferguson on behalf of the defendants.

11              THE COURT:  Good morning.

12              MR. FERGUSON:  Good morning.

13              THE COURT:  Let me first hear from defendants with

14     regard to the motion.

15              MS. MURPHY-JOHNSON:  Would you prefer that I come to

16     the podium?

17              THE COURT:  It would probably be easier for the court

18     reporter.

19              MS. MURPHY-JOHNSON:  Your Honor, this is a complex

20     case that was filed in 2004 by 42 plaintiffs involving seven

21     attacks that occurred around Jerusalem between 2001 and 2004.

22              The complaint asserts 13 counts against the

23     defendants.  The first count is a Federal Anti-Terrorism Act

24     claim.  The second through 13th counts are a mix of non-federal

25     claims and a variety of theories of liability and theories of
```

C89QsokC1

1    damages.

2           The defendants have moved to dismiss plaintiffs

3    non-federal claims based on the defendant's lack of capacity to

4    be sued for those claims.  Those non-federal claims are the

5    second count which is wrongful death, the fourth count which is

6    battery, the fifth count which is assault, the seventh count

7    which is negligence, the eighth count which is the intentional

8    infliction of emotional distress, and the ninth count which is

9    the negligent infliction of emotional distress.  The plaintiffs

10   have also alleged in their papers that the sixth count, loss of

11   solatium and consortium is a cause of action.

12          Under Federal Rules of Civil Procedure 17(b)(3), the

13   law of the forum state controls the capacity of an

14   unincorporated association to be sued for non-federal claims,

15   and here that's New York General Associations's Law Section 13

16   under which an unincorporated association cannot be sued in its

17   own name.  And here the PA and PLO, which are unincorporated

18   associations, have been sued in their own names warranting

19   dismissal of those claims.

20          THE COURT:  Let me first start out with a basic

21   question, because the PLO has been in litigation before and has

22   taken different positions on that issue.  Is it your position

23   that you are conceding, admitting, acknowledging that the PLO

24   is in fact an unincorporated association?

25          MS. MURPHY-JOHNSON:  Well, your Honor, for purposes of

C89QsokC1

1    this motion, yes.

2              THE COURT:  All right.  That's not the way I phrased

3    it, because for purposes of -- the real question is not for

4    purposes of this motion.  The real question is one of two:  If

5    that is what you acknowledge and admit, then that's going to be

6    the PLO's acknowledgment and admission, and every judge is not

7    going to have to go through this depending on what's to the

8    advantage or disadvantage of either party in terms of what they

9    want to assert.  But this is really your affirmative defense.

10             MS. MURPHY-JOHNSON:  Right.

11             THE COURT:  So, you have to tell me whether or not you

12   say that you're asserting this as an affirmative defense

13   because in fact the PLO is an unincorporated association and

14   acknowledges that and admits that and concedes that, and your

15   position is there's significant evidence to support this court

16   and every other court to make that determination for now and

17   all time.

18             MS. MURPHY-JOHNSON:  Well, as you are aware, your

19   Honor, historically, the PA and the PLO have argued that they

20   should be recognized as states or as nations, and routinely

21   every court that's addressed that issue has rejected that.

22             THE COURT:  Right.

23             MS. MURPHY-JOHNSON:  So, we have come to the point

24   where we have to acknowledge that we are unincorporated

25   associations because the courts refuse to acknowledge the

C89QsokC1

1    defendant's status as states.

2            THE COURT:  Well, let's put it this way, you have yet

3    to convince a court that you have any evidence to demonstrate

4    something other than that, so I'm trying to understand whether

5    or not you -- again, this is your affirmative defense.  It's

6    not a question of everybody else has done it so I should do it

7    too.  It seems to me it's a question of fact, and either you

8    say that that is the fact or you say that that is not the fact.

9    It's a little awkward for me to have you argue that I should

10   make decisions on that basis, not because you say it's so, but

11   because you say other judges have assumed that to be the case.

12           MS. MURPHY-JOHNSON:  Could I seek the Court's

13   permission to have Ms. Ferguson address this particular

14   question?

15           THE COURT:  Surely.  Whoever has a straight answer for

16   me can address the question.

17           MR. FERGUSON:  Ms. Murphy-Johnson is at a disadvantage

18   because her exposure with the case is a little more recent than

19   mine.  I have been representing the PA since 2007.  I am

20   familiar with the litigation history of the immunity question,

21   so if I could clarify.  Predecessor counsel, since the lawsuits

22   began in the U.S. against the PA and the PLO, argue that the PA

23   should be treated as a sovereign state.

24           THE COURT:  Right.

25           MR. FERGUSON:  And that argument really focused on the

C89QsokC1

```
 1    PA rather than the PLO.  There is not really a conceivable
 2    argument that the PLO has any even quasi-state status, but the
 3    PA, they argued, as a quasi-state should be accorded sovereign
 4    immunity.  And the courts acknowledged -- the courts found that
 5    the facts just weren't there to support it.  In fact, the whole
 6    conflict is over the PA's desire to be recognized as a state.
 7    That hasn't happened yet.  So, when my firm came in to
 8    represent the PA and PLO, we recognized that there was no
 9    sovereign immunity defense, and that the cases needed to be
10    litigated on the merits.  So, that's what we've proceeded to
11    do.
12         So we are not making a state to a claim for the PLO.
13    We are not making a state to a claim for the PA.  If at some
14    point the PA becomes a recognized state, that would be
15    different, but here and now the PA is not a recognized foreign
16    state.
17         THE COURT:  That's even not my issue.  I am not asking
18    you whether you contend or don't contend in this litigation
19    that the PA or PLO is a sovereign state.  That's not the
20    question.  The question is solely the question of whether or
21    not -- I mean, it has been debated back and forth in almost
22    every single case in which the PLO is in, not just the issue of
23    whether it's a sovereign state, but because the determination
24    of whether it is or isn't a sovereign state is not a
25    determination that it is or is not an unincorporated
```

C89QsokC1

1   association.

2           The only question before me is whether or not in fact

3   the PLO and the PA have the status of being an unincorporated

4   association.  If that is your position, whether or not it is or

5   isn't a sovereign state, whether or not for all purposes -- for

6   purposes of service, for purposes of standing, for every other

7   purpose -- if you are urging me to make the conclusion that you

8   say is acknowledged by the PA and PLO, that you are in fact an

9   unincorporated association.

10          MR. FERGUSON:  There is only a certain number of

11  potential baskets the PA and PLO can fall within.

12          THE COURT:  I mean, I don't know.

13          MR. FERGUSON:  We are not a corporation, not a

14  partnership, not a state.

15          THE COURT:  If you say so.

16          MR. FERGUSON:  Right.  Yes, I think the best framework

17  for these are sui generis entities is under the Federal Rules

18  of Civil Procedure and unincorporated association, and that's

19  how the courts have treated the PLO, how the Southern District

20  of New York treated the PLO in the *Klinghoffer* case.  That's

21  how the District of Columbia has treated the PA and the PLO in

22  the *Kliman* and *Parsons* case, as unincorporated associations.

23  We accept that designation.  And even the plaintiffs have

24  acknowledged the PLO is an unincorporated association.

25          THE COURT:  Well, but that is where I have to start

C89QsokC1

1    because I have been asked basically to take judicial notice of

2    this fact.  While I can take judicial notice that the other

3    courts in their resolutions of the issues that were before them

4    said for the purpose of those issues that the PLO is an

5    unincorporated association, that isn't quite judicial notice.

6    I'm not sure that it's appropriate for me to take judicial

7    notice that that is in fact true because another judge has

8    ruled that way.  If that was the case, I couldn't disagree with

9    my colleague next door because they ruled one way and I've

10   decided to rule a different way.  I can take judicial notice

11   that they've ruled that way, but I can't take judicial notice

12   that that's either a fact independently or that that is the

13   legal consequence for all time in every case or even if I had

14   made the same decision, given the same set of circumstances

15   that I would have made the same judgment.

16          So, as I say, my attitude is it's more in the hands of

17   the PLO and the PA as to what it is that you say the facts

18   demonstrate that you are rather than an argument that simply

19   you've made the opposite argument and have lost that argument,

20   and so, therefore, since you've lost the argument, everybody

21   else has to accept it in every litigation even though your

22   position might be different.

23          MR. FERGUSON:  Your Honor, I don't think there is much

24   dispute or uncertainty about what the basic facts are of what

25   the PA is or what the PLO is.  The question is, how do you

C89QsokC1

1    categorize that sort of sui generis entity for purposes of the

2    U.S. Federal Rules of Civil Procedure.

3              THE COURT:  Well, no, I think that there is --look,

4    the fact is that it may or may not be my role, but I know

5    what's going to happen; that if you are going to argue to me,

6    literally, and I think it's appropriate, it's time to stop

7    debating this issue depending on whether it's to the advantage

8    of some plaintiff or the advantage of the defendant.

9              If you want me to accept the fact that the PLO is in

10   fact an unincorporated association, then you're going to have

11   to tell me that, and you tell me that it is and tell me why it

12   is, and tell me the evidence supports that, and my guess is

13   that people are going to quote this back to you in future

14   litigation because I don't think it's appropriate for me to

15   have you tell me that I should make that determination and the

16   consequences for that determination in this case, and then you

17   represent that to me in this case, and then the next case if

18   it's not to your advantage for either service or some other

19   purpose, then you want to make the opposite argument because,

20   you know, this is not --

21             MR. FERGUSON:  I accept that, your Honor.

22             THE COURT:  -- it's not so much a legal argument.  It

23   is a fact; either you are an unincorporated association or

24   you're not an unincorporated association, and you have to tell

25   me whether or not you believe it is so, and you have to tell me

C89QsokC1

1    on what basis you believe that, particularly in this context

2    because this is your affirmative defense.

3            MR. FERGUSON:  Right.  I believe the PLO is an

4    unincorporated association.  I believe it should be treated as

5    an unincorporated association because it is sort of an umbrella

6    group for a variety of political parties and factions who share

7    a common purpose of a Palestinian national movement with

8    recognition of a Palestinian state.  It's not incorporated.  It

9    is a loose affiliation of members who share a common purpose.

10   So it best falls under the rubric of an unincorporated

11   association.

12           THE COURT:  On what basis do I even have in this

13   record at this stage of the proceeding to say that the PLO has

14   members?  Who are the PLO's members?

15           MR. FERGUSON:  Your Honor, I could first say that the

16   plaintiffs have acknowledged the PA is an unincorporated

17   association.  Their argument is that the law where it is --

18   where the association was formed to govern its capacity to be

19   sued, but they don't contend that it's not an unincorporated

20   association.  There is no dispute between the parties about the

21   PLO's status.

22           But with respect to the membership of the PLO, the PLO

23   represents all the Palestinians, including the Palestinians

24   that are in the Diaspora, so those that are not in the West

25   Bank and the Gaza Strip.  And they represent all those

C89QsokC1

1      Palestinians who share in the Palestinian national movement.

2              THE COURT:  That's not the definition of an

3      unincorporated association.  The fact that they take the

4      position that they represent the interest of all of those

5      individuals does not make all of those individuals members of

6      the PLO.  That is not the definition of an unincorporated

7      association for legal purposes.

8              MR. FERGUSON:  Well, I can refer the Court to the

9      *Kliman* decision in the District of Columbia where it concluded

10     that the PLO fell within the definition of unincorporated

11     association precisely because it's composed of individuals

12     without a legal identity -- I'm quoting from the *Kliman*

13     decision from the District of Columbia.

14              It has been determined by other federal courts that

15     the PLO qualifies as an unincorporated association because it

16     is "composed of individuals without a legal identity apart from

17     its membership formed for specific objectives."  Citing the

18     *Ungar* decision from Rhode Island and also the *Klinghoffer*

19     decision from this court.

20              So, with respect to the PA, again, it's this problem

21     of a sui generis entity.  It has an executive branch.  It has a

22     legislative branch.  It has courts.  It took the position we

23     are close enough to a state, we should be treated as state for

24     some purposes.  That's been rejected.

25              THE COURT:  I understand that.

C89QsokC1

1              MR. FERGUSON:  So that's why I accept that the next

2       best framework is unincorporated association.

3              THE COURT:  But there is no such thing as a default

4       framework.  You see what I'm saying?  So you can't say that

5       because it's not an apple, it must be an orange.  That's not

6       the way it works.  As I say, you have to tell me why you say

7       it's unincorporated -- is your position that the PA is an

8       unincorporated association?

9              MR. FERGUSON:  Yes, it is, and because we have to pick

10      a set of rules that govern capacity to be sued, that govern

11      service of process, that govern immunity, and we have to define

12      for U.S. law purposes how we're going to treat the sui generis

13      purposes for purposes of applying the Federal Rules of Civil

14      Procedure.

15             THE COURT:  But you are defining that because you give

16      me a set of factors that meet that definition, and then you

17      tell me why the PA or the PLO meets those factors.  It's not an

18      analysis that if the PLO or the PA has been rejected, it's one

19      thing, they must be by default something else, that's an

20      unincorporated association.  That's not true.  Because if

21      you're not a state, you could be a corporation.  You could be,

22      you know, a partnership.  There are a lot of things you could

23      be depending on the facts.

24             So, the question is not, you know, is there a space to

25      push them in.  The question is what is the nature of the

C89QsokC1

1    organizations, and in what way does the nature of that

2    organization meet the requirements of being an unincorporated

3    association?  Now, you know, this first question may be much

4    ado about nothing because when I ask them the same question,

5    they may say to me, well, Judge, that's what we think they are,

6    and then they have to give me a good reason then why they

7    shouldn't be treated that way for all purposes.

8         But I just want to first start out with the premise

9    because almost every other case you've cited to me in which the

10   court ruled that -- and not in all contexts, but in most

11   contexts it had to deal with the issue of service, but there

12   were some cases that also had to --

13        MR. FERGUSON:  The *Parsons* case specifically addressed

14   the capacity of the Palestinian Authority to be sued for

15   non-federal law claims.

16        THE COURT:  But in every one of those cases, my

17   recollection is -- and you correct me if I'm wrong -- in every

18   one of those cases the PLO and the PA took the opposite

19   position, said that they were not.

20        MR. FERGUSON:  That they were not?

21        THE COURT:  Unincorporated associations.

22        MR. FERGUSON:  I don't think that's the case in

23   *Parsons*, your Honor.

24        THE COURT:  You think the case in *Parsons* -- I have to

25   look at that, but I don't -- I'm not sure they even

C89QsokC1

 1    specifically took that position.  Maybe in *Parsons* they took

 2    the position for the purpose of capacity and --

 3            MR. FERGUSON:  In *Parsons* we did not argue sovereign

 4    immunity.  That was one of the recent cases that was filed --

 5            THE COURT:  Right.  And my recollection was that not

 6    in *Parsons* that you said -- I don't know if you were in

 7    *Parsons*.

 8            MR. FERGUSON:  I think how we framed it is that the PA

 9    and the PLO -- or especially the PA has argue stages.  That has

10    been rejected.  The PA accepts that that's the consistent

11    ruling of the U.S. courts and, therefore, the PA should be

12    treated as an unincorporated association, as the court did in

13    *Kliman*.

14            THE COURT:  I remember everything that you just stated

15    except the fact that you say you accept that.  I'm not sure

16    that I read -- I don't know what the underlying position was,

17    but in the case law that I read, I am not sure that you said we

18    accept the fact that we are unincorporated association.

19    Obviously, you wanted the benefit of excluding the cause of

20    action, the underlying cause of action, if that was what the

21    finding was going to be, but I'm not sure that you urged upon

22    the court that in any of those cases that the PA and/or the PLO

23    was in fact an unincorporated association.

24            MR. FERGUSON:  I can tell you that the PA is no longer

25    standing on sovereign immunity claims and takes the position

C89QsokC1

1    that it's best treated for the Federal Rules of Civil Procedure

2    as an unincorporated association, and that's what the courts

3    consistently have done.

4              THE COURT:  Well, best treated is not --

5              MR. FERGUSON:  Well, it's not a corporation.  It's not

6    a partnership.  What is it is the problem.

7              THE COURT:  Well, no, I understand that, but the

8    question before me is not what it's best treated as.  The

9    question before me is whether you have an affirmative defense

10   of lack of capacity to be sued because you are in fact an

11   unincorporated association.  Isn't that really the only issue

12   for me at this point?

13             MR. FERGUSON:  There are two issues before you.  One

14   is whether there's a capacity to -- whether the PA and PLO have

15   the capacity to be sued.  The second is whether the Court

16   should decline exercise of supplemental jurisdiction.

17             THE COURT:  But I haven't gotten to that yet.

18             MR. FERGUSON:  But with respect to the capacity

19   question, yes, a threshold determination undoubtedly is that

20   the PA and PLO are unincorporated associations.  I don't think

21   there's any dispute as to the PLO.

22             As to the PA, you know, it's a group of Palestinians

23   living in the West Bank and Gaza Strip, and there is a

24   governmental structure there, but it is not treated as a state.

25             THE COURT:  But as you just described it is not the

C89QsokC1

1     definition of an unincorporated association.

2              MR. FERGUSON:  The question is then how do we

3     determine this thing's capacity to be sued and how it should be

4     served?

5              THE COURT:  I don't know, but that's not my issue at

6     this point.  The only issue for me right now is whether or not

7     in fact the PA should be dismissed from this case because --

8              MR. FERGUSON:  Certainly we're not -- right, the

9     Anti-Terrorism Act may continue the court case.

10             THE COURT:  Yes, I misstated it.  Whether or not

11     the -- I'll call them the common law clauses of action.

12             MR. FERGUSON:  Right.

13             THE COURT:  The common law causes of action should be

14     dismissed because it is an unincorporated association and the

15     law indicates that an unincorporated association does not have

16     the capacity to be sued.

17             MR. FERGUSON:  Your Honor, I can't stand here and kind

18     of neatly tick off the elements of the PA and sort of link them

19     directly to a definition of unincorporated association.  Courts

20     that have looked at this issue have found that that's the best

21     framework.  That's really all I can offer you.  But if this

22     seems too -- you know, the fact that the PA is so sui generis

23     that it makes it difficult to resolve the capacity argument,

24     then that is really sort of another reason that the Court

25     should not take on the seven non-federal law claims because,

C89QsokC1

1    again, this is another aspect of the complexity that these

2    claims bring to the case.

3              THE COURT:  Then the way I am trying to analyze it is

4    that may or may not be -- that may be correct, but the question

5    is, does that mean that this can be resolved at this stage of

6    the proceeding rather than at a later stage of the proceeding.

7              MR. FERGUSON:  I cannot contemplate any discovery that

8    would shed any light on whether the Palestinian Authority

9    should be treated as an unincorporated association.  The Oslo

10   Accords that set up the Palestinian Authority are widely

11   available.  They're a matter of public record.  So the

12   structure of the PA is well-known.  There is no discovery that

13   would aid this inquiry.  Ultimately, we're left with the sui

14   generis entity and we have to decide what basket it best fits

15   into.  I recognize this is a novel question and it doesn't fit

16   neatly into any of the baskets, but that's what we're left

17   with.  I think I've hijacked Ms. Murphy-Johnson's argument.

18             THE COURT:  Go ahead.

19             MS. MURPHY-JOHNSON:  I am looking at to where we

20   should next go.

21             THE COURT:  I mean, your basic argument is fairly

22   straightforward.

23             MS. MURPHY-JOHNSON:  It is.

24             THE COURT:  And your basic argument is that -- if I

25   articulate it correctly -- that the PLO, that you have an

C89QsokC1

1    affirmative defense that requires no further factual

2    examination, and that affirmative defense is that the PLO and

3    the PA are unincorporated associations, meet that definition

4    for all purposes, and, therefore, whatever rules apply to an

5    unincorporated association with regard to the common law claims

6    should apply in this case.

7            MS. MURPHY-JOHNSON:  Correct.

8            THE COURT:  Fairly straightforward argument.  I can

9    accept that if everyone says to me that that's the way the

10   issue is to be viewed.  As I say, it doesn't make the case go

11   away.  The only thing I disagree with initially in terms of the

12   proposition is that I think all of the claims that you ticked

13   off, other than the last claim, would fall into that category

14   because I'm not sure that -- was it Count Six?

15           MS. MURPHY-JOHNSON:  Yes.

16           THE COURT:  I'm not sure that Count Six would qualify

17   as an independent cause of action.

18           MS. MURPHY-JOHNSON:  Right, and we take that position

19   as well.

20           THE COURT:  They can explain to me if they think that

21   that's an independent cause of action, but I don't know of any

22   underlying elements of liability that independently prove to

23   demonstrate that as an independent cause of action unless

24   you've established an underlying cause of action.  That seems

25   to me to be also related to the issue of damages.  I thought

C89QsokC1

1    that the plaintiffs pretty much argued that or at least lumped

2    that into the same category as the other claims, but maybe not.

3    Hold on just a second.

4              MS. MURPHY-JOHNSON:  Your Honor, if I might --

5              THE COURT:  Yes.

6              MS. MURPHY-JOHNSON:  -- in the plaintiff's opposition

7    to our motion -- this is DE-196 at page 3 -- the plaintiffs

8    grouped Count Six in with what they characterized as

9    garden-variety non-federal causes of action.

10             THE COURT:  I'm sorry.  Where are you looking, at page

11   3 of their response?

12             MS. MURPHY-JOHNSON:  Yes.

13             THE COURT:  Oh, I see.  Yes.  Then I will discuss that

14   with them.  All right.

15             Well, if you have anything further to say you want to

16   say about the standing issue, then I will hear you; otherwise,

17   let's just talk briefly about your argument that I should not

18   assert supplemental jurisdiction.

19             MS. MURPHY-JOHNSON:  Certainly.  We'll shift gears

20   then to that argument.

21             So, independent of this capacity issue, the defendants

22   request that the Court nonetheless decline to exercise

23   supplemental jurisdiction over the plaintiff's non-federal

24   claims under 28 U.S.C. 1367 which states that the Court can

25   decline to exercise supplemental jurisdiction if non-federal

C89QsokC1

claims raise complex questions of foreign law or if they would
come to substantially predominate over the federal claim at
issue in the case.

          We strongly feel that that is what would happen here.
The case is already inherently complex on the federal grounds
alone.  There are seven different attacks involved over a
period of three years, all involving different factual
scenarios, potentially different militant groups allegedly
involved.  There are 42 plaintiffs.

          THE COURT:  So why should I double that?

          MS. MURPHY-JOHNSON:  Why should you quadruple that?
Quintuple that?

          THE COURT:  Right.  But my question is different than
your question.  You are asking why should I quadruple that in
this case.  I'm saying why should I quadruple that in two to
four different cases?  What sense does that make?  Why should
you have to go through this twice, here and in another
jurisdiction?

          MS. MURPHY-JOHNSON:  Well, because here doing so would
mean engaging experts on potentially up to four or five
different foreign bodies of law --

          THE COURT:  Well, they argued that -- look, as I said,
this isn't rocket science.  Wrongful death is wrongful death.
What expert do I need to tell me -- I don't see any place where
you argued, one, that -- well, I'm not quite sure what your

C89QsokC1

1    position is as to where these supplemental claims should be

2    litigated and what law should apply.

3              MS. MURPHY-JOHNSON:  The question of what law should

4    apply is actually a very complicated one since the Second

5    Circuit issued its decision in the *Licci* matter.  I don't know

6    if I'm pronouncing that correctly.

7              THE COURT:  OK.

8              MS. MURPHY-JOHNSON:  There the Second Circuit held

9    that the law of the jurisdiction having the greatest interest

10   on litigation should be applied.  And then tort cases such as

11   negligence intentional infliction of emotional distress where

12   conduct-regulating rules apply, the law of the location where

13   the tort occurred applies.

14             THE COURT:  Who is going to make that determination?

15   And what are you urging that determination to be?

16             MS. MURPHY-JOHNSON:  Well, if I could, I'm not sure

17   that it necessarily warrants a definitive determination.  I

18   think that the question itself presents so much complexity and

19   we could engage in years of litigation over which law actually

20   applies.

21             THE COURT:  But why?  I understand that in the

22   abstract, but I don't understand how that applies to this case,

23   and I am not sure how it makes it more efficient to do that in

24   two or three different forums when we're all talking about the

25   same underlying activity --

C89QsokC1

1           MS. MURPHY-JOHNSON:  Sure.

2           THE COURT:  -- that just translates into different

3    causes of action.  I mean, their argument is this:  That there

4    are only two choices.  You are either going to apply New York

5    law or you're going to apply Israeli law.  I don't know if you

6    say there is a third choice, but you haven't articulated a

7    third choice, so at least we've narrowed it down to two

8    choices.

9           MS. MURPHY-JOHNSON:  If I might articulate that now.

10   As we attempted to articulate in our June 6 letter to the

11   Court, because of the *Licci* decision, it does appear that there

12   is another alternative here, aside from New York law and

13   Israeli law, and that would be however we would characterize

14   Palestinian law because that is where the PA and the PLO at

15   least for some part --

16          THE COURT:  Where do I look to find Palestinian law?

17          MS. MURPHY-JOHNSON:  Well, yes.  That's how --

18          THE COURT:  Where does any forum look to find

19   Palestinian law?

20          MS. MURPHY-JOHNSON:  Well, I will tell you.

21          THE COURT:  Wait.  Stop.  So, you are saying that

22   there is such a thing as Palestinian law that's been applied in

23   a court of law to resolve these disputes?

24          MS. MURPHY-JOHNSON:  I can't say for sure because I'm

25   not an expert on Palestinian law.

C89QsokC1

| | |
|---|---|
| 1 | THE COURT:  Well, you got to say for sure, otherwise, |
| 2 | I can't accept that argument.  You can't just make it up. |
| 3 | MS. MURPHY-JOHNSON:  I'm not making it up. |
| 4 | THE COURT:  Well, that's as I say -- let's put it this |
| 5 | way:  They argue that there are certain injuries and deaths |
| 6 | that occurred in Israel, so, therefore, under normal |
| 7 | circumstances, given the fact that there are U.S. citizens, |
| 8 | that the -- and I characterize them as the common law causes of |
| 9 | action will either be causes of action under New York law or |
| 10 | causes of action under Israeli law.  In the first instance that |
| 11 | makes sense. |
| 12 | You say now that there's something else called |
| 13 | Palestinian wrongful death law that is somehow different than |
| 14 | Israeli or New York law that some court needs to go through -- |
| 15 | and I'm not sure which court you say needs to do that -- but |
| 16 | some court needs to go through and determine what that is in |
| 17 | order to litigate that issue.  Is there something called |
| 18 | Palestinian wrongful death law? |
| 19 | MS. MURPHY-JOHNSON:  Just like everything else in this |
| 20 | case, that is also a complicated question, and I know that's |
| 21 | not helpful to you. |
| 22 | THE COURT:  It's not a complicated question.  It's a |
| 23 | very simple question.  If you can tell me there is such a |
| 24 | thing, then I will say, all right, then somebody has to analyze |
| 25 | that.  If you can't tell me that you have a basis to say there |

C89QsokC1

1    is such a thing, then why is that a consideration for me?

2                MS. MURPHY-JOHNSON:  Over history, depending on what

3    foreign nation has governed the region, those various

4    countries' laws have been exercised in the Palestinian

5    territories, and over a time they've all become layered on top

6    of each other.

7                So, for conduct that occurred in the Gaza Strip,

8    arguably Ottoman Law could apply because at some period of time

9    Ottoman Law governed that region.  And if certain conduct

10   occurred in the West Bank, there could be a combination of

11   British Mandate law, Jordanian Law, Israeli mililtary orders or

12   Israeli law, but this has all been --

13               THE COURT:  Well, what does that have to do with the

14   plaintiffs wanting to invoke and having available to them to

15   invoke either the laws of Israel or the laws of New York?  If

16   your argument is that they cannot establish their cause of

17   action under one of those laws, then you may prevail on summary

18   judgment or before a jury in being able to convince the Court

19   or a jury that, no, protections of those laws do not apply

20   here.  But what does that have to do with my declining to

21   assert jurisdiction over this?  How is this somehow easier for

22   some other court to deal with and address than this Court?

23               MS. MURPHY-JOHNSON:  The plaintiffs themselves believe

24   that they could potentially bring these cases, the non-federal

25   claims, in Israeli courts.

C89QsokC1

1          THE COURT:  Right.

2          MS. MURPHY-JOHNSON:  But I'm not saying that the

3    choice is solely between -- and if this court were to exercise

4    supplemental jurisdiction here, that it's a question of

5    choosing between New York law and Israeli law.  My only extra

6    additional point is that if this Court were to address these

7    claims, there is likely this third body of law that's developed

8    over the past several decades in the Palestinian courts

9    involving all these different layers of foreign law.

10         So my point is, that if the Court were to accept

11   supplemental jurisdiction over those claims, even the choice of

12   law issue alone adds so much complexity to an already complex

13   case that there is no doubt that these non-federal claims would

14   come to predominate over the federal ATA claims.

15         THE COURT:  But I don't understand in the detail of

16   that argument what that argument means.  It sounds

17   superficially logical, but what is it that this Court has or

18   any court has to determine?  They will invoke -- and you will

19   either agree or disagree -- that they have the protection of

20   either New York State common law or Israeli law, and they will

21   say that we can prove that those laws do apply and should be

22   applied and we can prove our cause of action under those laws.

23         MS. MURPHY-JOHNSON:  But I think under *Licci* that that

24   is not accurate any more because the defendants -- if the

25   defendants solely committed their tortious acts in Israel, then

C89QsokC1

1    under *Licci*, Israeli law would arguably apply.  But there is a

2    whole list of allegations in the complaint that the PA and PLO

3    from their headquarters, which are not in Israel, acted

4    negligently to, for example, release prisoners who then went on

5    to allegedly commit these acts.

6                THE COURT:  OK.

7                MS. MURPHY-JOHNSON:  Or paid people from their

8    headquarters, which are not in Israel, to commit acts.

9                THE COURT:  What does that have to do with a cause of

10   action for negligence?

11               MS. MURPHY-JOHNSON:  I'm sorry?

12               THE COURT:  I'm just trying to pick a cause of action.

13   Explain to me how that complicates any one of these causes of

14   action.

15               MS. MURPHY-JOHNSON:  Because then the PA or the PLO

16   acted in the West Bank negligently to release a given prisoner

17   who then went and committed an attack.

18               THE COURT:  But that's not the nature of anyone's

19   claim here.

20               MS. MURPHY-JOHNSON:  I'm sorry?

21               THE COURT:  That's not the nature of anyone's claim

22   here.

23               MS. MURPHY-JOHNSON:  It is.

24               THE COURT:  Whose?

25               MS. MURPHY-JOHNSON:  The plaintiffs have alleged that.

C89QsokC1

1          THE COURT:  Have alleged what?

2          MS. MURPHY-JOHNSON:  That the PA or the PLO have

3     released certain people who were in their custody intentionally

4     for the purpose of committing acts of terror.

5          THE COURT:  OK.  Maybe I have to go back to the

6     complaint again.  I will accept your premise for now, but I'm

7     not quite sure where you say that that requires some other

8     alternative choice of law.

9          MS. MURPHY-JOHNSON:  Well, that's what *Licci* tells us.

10    In *Licci* the question was -- and, unfortunately, it was a

11    question between New York law and Israeli law, so I don't want

12    to cabinet in those terms, but there the court found that

13    American Express had acted in New York.

14         THE COURT:  Right.

15         MS. MURPHY-JOHNSON:  Those acts then resulted in

16    rocket attacks in Israel, but New York law applied because New

17    York is where American Express took its actions.  So what I'm

18    saying is Palestinian law, however one eventually comes to

19    define it, would apply to any claim that the plaintiffs have

20    that the PA acted tortiously within the Palestinian

21    territories.

22         THE COURT:  So who is supposed to decide, and why is

23    it somehow more convenient for some other court to decide

24    that -- and even more convenient for the parties for some other

25    court to decide that rather than in the case in which you

C89QsokC1

1    litigated already the issues with regard to the injuries and

2    deaths for the crime?

3         MS. MURPHY-JOHNSON:  Because if it were litigated

4    here, it adds a substantial layer of complexity.

5         THE COURT:  How?  All I have to do is decide if you

6    weren't giving me Ottoman Law.  In their brief it says Ottoman

7    Law applies, and, therefore, this is your defense, I'm sure I

8    could decide that.  That wouldn't take any more time than it

9    has taken me to decide any of the other motions that I have to

10   decide.

11        MS. MURPHY-JOHNSON:  Because I think, your Honor, it

12   would become so much more complex because of the number of

13   claims involved, the number of plaintiffs involved, the

14   theories of liability, whether it's direct liability or

15   respondeat superior.

16        THE COURT:  That's going to be true whether or not the

17   supplemental claims went somewhere else or not.

18        MS. MURPHY-JOHNSON:  True, but on top of that we would

19   have to hire experts.

20        THE COURT:  You're going to have to do that anyway.

21        MS. MURPHY-JOHNSON:  We're going to have to have

22   translators.  Everything is in a foreign language.

23        THE COURT:  You're going to have to do that anyway.

24   I'm sorry, I didn't mean to interrupt you, but I'm trying to

25   focus you on this issue.  Part of my analysis is, you're saying

C89QsokC1

1    that -- and you're not saying that I'm required to do it or you

2    have a right for me to have to settle this on this basis.  I

3    have the discretion to do this, and you're asking me to

4    exercise my discretion appropriately to do this.

5          My question is, first, if I do this, I must consider

6    whether there is a reasonable alternative forum for the parties

7    to litigate this dispute.  What do you claim is the reasonable

8    alternative forum that I should decline jurisdiction over these

9    claims so that those claims can be litigated in another forum?

10   Do you understand my question?

11         MS. MURPHY-JOHNSON:  I do understand your question,

12   but to tell you the truth, I'm wondering if that is more

13   appropriate if this were being raised as a forum non conveniens

14   argument.

15         THE COURT:  But I can't imagine that it would be

16   appropriate for me to act properly and not abuse my discretion

17   by declining to assert supplemental jurisdiction over what

18   would otherwise be valid claims if the consequence of that is

19   that the plaintiff has no forum in which to litigate those

20   claims.

21         MS. MURPHY-JOHNSON:  Well, the plaintiffs themselves

22   have said that they believe that Israel could be a proper forum

23   for these claims.

24         THE COURT:  But you say no.

25         MS. MURPHY-JOHNSON:  No.  I'm saying that Israeli law

C89QsokC1

1   might not necessarily apply; not that Israel might not be the

2   proper forum for the claims.

3        THE COURT:  So are you saying that I should decline

4   jurisdiction over these claims in order that the plaintiffs can

5   re-assert these claims in an Israeli court if they wish.

6        MS. MURPHY-JOHNSON:  Correct.

7        THE COURT:  All right.  That's all I'm trying to say.

8        MS. MURPHY-JOHNSON:  OK.  Let me see if there was

9   anything else.

10        THE COURT:  All right.  Let them respond because I

11   have some questions for them, and then I will let you respond.

12        MS. MURPHY-JOHNSON:  Thank you very much, your Honor.

13        MR. SCHOEN:  Your Honor, I'm David Schoen, and I

14   represent the plaintiffs.  I see the Court has read the papers

15   thoroughly, so I don't intend to just reiterate what's in the

16   papers.  I'd actually like to start at a different place than I

17   intended originally, just to respond to a couple of things that

18   were said, and maybe the lead line is, quite frankly, a comment

19   the Court made.  This applied to Section 1367, the choice of

20   law argument.  The Court said -- I'm paraphrasing -- it

21   understands this argument in the abstract but does not

22   understand how it applies in this case.  That's it in a

23   nutshell.

24        That's exactly, with all due respect, what happened

25   here.  A number of legal arguments were thrown against the wall

C89QsokC1

 1    to see which stick, but when you break it down to this case,

 2    none of them applies to this case.  We don't get, for example,

 3    to the choice of law issue and these so-called complicated

 4    questions of now we hear Palestinian law or Israeli law because

 5    they've never shown there was a conflict between New York law

 6    and those laws.  In fact, the Court well versed in these issues

 7    commented in the *Licci* case that the Court is familiar with

 8    Israeli law, and when it comes to these kinds of things, there

 9    really isn't any difference.

10          But I heard some things today in the argument that,

11    quite frankly -- and, again, I mean it with all due respect --

12    I was quite surprised to hear.  For example, we heard from

13    Ms. Ferguson today the rather shocking proposition which turns

14    everything on its head that if the -- I'm paraphrasing again --

15    the fact that the question of whether the PA is an

16    unincorporated association is too difficult to really determine

17    should argue against hearing these claims, should make you

18    dismiss these claims and send it away because we can't tell if

19    it's an unincorporated association.

20          The defendants have missed their burden here

21    completely and missed the appreciation of their burden in all

22    regards.

23          Again, as the Court noted, we can't appear before this

24    court and say, well, one argument didn't work; therefore, maybe

25    this one will work, and then flowing from that should be the

C89QsokC1

prejudice to these plaintiffs because contrary -- and I know

she believed it when she said it -- but contrary to what

Ms. Murphy-Johnson said, we don't say these claims can be

brought in Israeli court today.  We say that's part of the

extreme prejudice that's happened in this case because they

waited so late to raise these things, the statute of

limitations has run in the Israeli courts, and we submitted an

affidavit from this Jeremy Stern to that effect.

THE COURT:  Let me start you with the basic premise

that I started them with.  Is it your position that they are or

are not an unincorporated association?

MR. SCHOEN:  It is my position that they are not, and

it's my position primarily that they have the burden of

establishing that they are, and on this record they certainly

have not done that.

THE COURT:  Well, I'm in the same position with you as

I am with them is that your position is inconsistent and

inconsistent -- understandably inconsistent because it is one

way depending on what's to your advantage.  Now, the position

has always been consistently for service purposes and for other

purposes that they're an unincorporated association.

They argue, and I don't think you directly addressed

the issue -- they argued that you served them on that basis,

OK?  And that's the way you proceeded on that basis, and,

therefore, you would like to consistently cite every court's

C89QsokC1

1   ruling that they're an unincorporated association for the

2   purpose of service; but then when it's to be applied to the

3   causes of action, now you want to say, oh, they can't prove

4   that.  Well, what do you claim is their status?

5          MR. SCHOEN:  Respectfully, your Honor, let me explain

6   why I believe there is no inconsistency.

7          We've taken the position that they are not a

8   governmental entity entitled to sovereign immunity, but that,

9   as the Court said earlier, doesn't lead to the conclusion that

10  for purposes of New York law they are an unincorporated

11  association with members, therefore, not subject to suing or

12  being sued.

13         And, with all due respect, the argument on service

14  that the defendants have raised is simply wrong.  We didn't

15  serve them or assert that we served them as an unincorporated

16  association.  Under Rule 4(h) that's the catchall for

17  organizations.  Frankly, the argument works in our favor.  Why?

18  Because Rule 4(h) says it applies to organizations or

19  associations subject to suit under a common name.  They have

20  never challenged that part of it.  If they're subject to suit

21  under a common name, that tears asunder their argument that

22  they're not an entity operating under a common name.  Their

23  argument is we need to -- when you're talking about an

24  unincorporated association, it's just a loose conglomeration of

25  members and, therefore, you need to get the approval or

C89QsokC1

1    ratification of every member.  Well, if there is anything to be

2    drawn from Rule 4(h) it is that it authorizes service for an

3    organization or association subject to suit under common name.

4         Again, let me get to a little more basic question.

5    The defendant said, well, it's complicated.  We're not sure

6    what to look at.  Maybe we should look at Palestinian law.

7    We're not sure what to look at about whether they could sue or

8    be sued because it's complicated.

9         Well, how about a basic created document, the Oslo

10   Accords that created the PA and that the PLO negotiated with

11   the United States.  It could not say more expressly that the PA

12   is an entity authorized with the power to sue or be sued.

13   Again, I don't think you could have it both ways.

14        What are they trying to do?  They're trying to say in

15   New York they don't have the right to sue or be sued because

16   it's an unincorporated association.  Well, I would suggest to

17   the Court, with all due respect to the defendants, that the

18   fact that it is this quasi-governmental entity, which is what

19   they argued in the *Knox* case and how the court in *Knox* treated

20   them.  I can give the page cites for that.  It's 306 F.Supp.2d

21   424 to 435.  Either they're that or they're this other kind of

22   organization.  Well, that's exactly why the Court in cases like

23   the *Massachusetts Trust* case that we cited and other cases in

24   the reply, that's exactly why the Court said if they don't

25   really fit into what we call an unincorporated association with

C89QsokC1

1    the members, and, after all, it's the membership that makes it

2    where you can't sue them.  You have to show approval by the

3    individual members because it's such a loosey-goosey

4    organization, but in the *Massachusetts* case, we say we look

5    then how were they treated back home?  And back home that

6    organization that they argued was an unincorporated

7    association, had the power to sue and be sued.

8            They said, wait a minute now.  That's going to be

9    unfair if we go to Massachusetts, and so we're not going to

10   treat them like an unincorporated association here.  Whatever

11   they're called -- again, we have to analyze it under New York

12   law specifically.

13           THE COURT:  But every court that has opined on this

14   issue for any purpose relating to any legal question, has

15   determined that they qualified as an unincorporated

16   association.  What authority are you citing to me that would

17   give you a basis to argue in law or in fact that that is not

18   the case?

19           MR. SCHOEN:  I'm telling the Court, respectfully, that

20   none of those courts has analyzed the question in this

21   framework.  It says it in *Parsons*.  The decision they

22   submitted.  It says the defendants haven't shown us any reason

23   otherwise.  It wasn't analyzed or argued.

24           THE COURT:  It wasn't analyzed or argued, but that

25   status was applied to them in all of those cases to both the

1    advantage and disadvantage of both sides.

2              MR. SCHOEN:  I'm saying, your Honor, I know that this

3    Court is fully capable of analyzing the question on its own,

4    and it has been presented and framed here.  Again, the burden

5    is on them.  They have shown no membership.  Who are the

6    members of the PA?  Who are the members of the PLO?  And,

7    again, respectfully, we do not concede that for purposes of New

8    York law and this question under New York law that the PLO is

9    an unincorporated association.  There's reference made to it as

10   an unincorporated association on page 17 of our papers, but

11   then if you go to page 18, we say they haven't shown they have

12   any members.  So, while it might be called unincorporated

13   association for some purposes, under New York law they've got

14   to show they've got members and so on.  And, frankly, if you

15   had to show -- if we had discovery on the case, and they said,

16   well, what would they determine in discovery?  I suppose we

17   have a laundry list, starting with their charter and the right

18   to sue and be sued.  How do they operate?  Who are their

19   members, and all that?

20             Frankly, if their members are what they said in their

21   United States Supreme Court brief that the PLO is an umbrella

22   organization of different factions, well, frankly, every one of

23   those factions has a charter that would condone, ratify or

24   approve this kind of terrorism that occurred in this case.

25             THE COURT:  Well, my direct question to you is the

C89QsokC1

1    same as to them:  Is it your position that they are or are not

2    an unincorporated association?

3        MR. SCHOEN:  It is my position that as that term is

4    used in New York law for these purposes, they are not.  They

5    are something like a quasi-governmental entity as the Court

6    treated them in *Knox* in analyzing the question.  They are

7    not -- we have seen no proof on this record that they are a

8    voluntary membership organization any more than any

9    administrating authority, whether it's the Port Authority here

10   or a governmental authority like a county government, is a

11   voluntary membership organization.  Its constituents, it has

12   said, are all the factions of the Palestinian people.  That

13   doesn't sound or look like a voluntary membership organization.

14   If they have the proof, they haven't made that proof.

15        But all of it, again -- by the way, I just wanted to

16   take one or two baby steps back.  That is, I know the Court is

17   aware that we also have pending motions to strike these

18   affirmative defenses on procedural grounds, and specifically

19   with this issue, a waiver issue, because this issue was raised

20   a long time ago in a subject matter jurisdiction motion which

21   was denied, and then didn't appear again in the next series of

22   motions to dismiss that we saw, and it's coming up now.  That's

23   relevant both for waiver and for the exercise of this Court's

24   discretion because one of the many important factors for this

25   Court to consider is the prejudice that arose from the way in

C89QsokC1

1  which the defendants have engaged in their litigation of this

2  case specifically with respect to that issue, and that means

3  throwing these folks out of Court and throwing these claims out

4  of court; not just for the plaintiffs who are non-Americans,

5  but for the American plaintiffs that wouldn't be able to have

6  the benefit of these kinds of claims which have different

7  elements from the ATA.

8         THE COURT:  Well, that may go to your argument of

9  whether or not they should be allowed to dismiss those claims

10  on this basis at this time, but the plaintiff was put on notice

11  that they had an affirmative defense.

12         MR. SCHOEN:  In the answer, your Honor?

13         THE COURT:  Yes.

14         MR. SCHOEN:  Yes, your Honor.

15         THE COURT:  So, there is no prejudice in the sense of

16  surprise that at some point during this litigation they were

17  intending to put forth that affirmative defense.

18         MR. SCHOEN:  Your Honor, is distinguishing between

19  surprise and prejudice because that answer was filed after the

20  statute limitations would have run in the Israeli courts, so we

21  didn't have another forum to go to.

22         THE COURT:  But I can't fault them for that aspect of

23  it, as long as their answer was timely filed, whether or not it

24  was timely filed in relationship to the statute of limitations

25  some place else is not their fault.  They get to timely file an

C89QsokC1

answer, and they get to assert affirmative defenses that they

say they're going to rely upon in defending this lawsuit.  So,

it may be prejudice to the plaintiff, but it's not undue

prejudice.

MR. SCHOEN:  I follow your Honor.  My suggestion was

that the waiver argument arises because there were motions to

dismiss -- and this issue had been discussed -- and there were

motions to dismiss before the answer was filed, and this wasn't

raised in those, and we say they abandoned it by not raising

it.

THE COURT:  That may be a waiver of the motion to

dismiss.  It is not a waiver of the affirmative defense.

MR. SCHOEN:  But I think it puts us in the position of

assuming that issue isn't going to be in the case any more

until it arises again in the answer years later.  That is, if

we have to evaluate at some point on our own, well, could it be

that they are going to argue lack of capacity down the road,

therefore, we have to cover our bases and file in Israeli

courts in case somehow a court dismisses these things down the

road.  No reason to believe that until the answer is filed.

When they filed other motions to dismiss when this subject the

lack of capacity had been raised earlier, that motion was

denied in the context of subject matter jurisdiction motion --

sorry -- had been denied and then subsequent motions to dismiss

are filed, it's not raised again.  I'm just saying in terms

C89QsokC1

```
 1    of --
 2              THE COURT:  But that's what I'm saying, I want to
 3    understand your argument.  I understand that argument to be a
 4    waiver of a subsequent motion to dismiss for lack of capacity.
 5              MR. SCHOEN:  I follow you, your Honor.  Your Honor is
 6    being very precise.
 7              THE COURT:  It is not a waiver of an affirmative
 8    defense because they have not yet filed an answer asserting
 9    affirmative defense, and as long as they still have the right
10    to file an answer asserting their affirmative defenses, it
11    doesn't automatically -- as related to your other motion
12    automatically say I'm supposed to strike their affirmative
13    defense because they didn't make it in a motion to dismiss.
14              MR. SCHOEN:  Your Honor is being very precise and
15    absolutely correct, I believe.
16              However, that brings us to the other argument again
17    about how they raised it in the answer.  As your Honor is also
18    aware, we have raised this argument, and under Rule 9 they fail
19    to allege it with particularity and with the supporting facts
20    that are required.  We cite the cases in the brief that require
21    that kind of allegation.  We can't just throw out there lack of
22    capacity.
23              I know I've skipped all around.  I would like to just
24    kind of put in a nutshell a little bit the first argument and
25    just reiterate what our arguments are on this unincorporated
```

C89QsokC1

1    association, and then I would like to just put in a nutshell

2    our 1367 arguments, and then I would like three minutes to

3    discuss with the Court why in all of this, and especially in

4    the exercise of the Court's discretion, it makes absolutely no

5    sense to dismiss these cases for any of the prudential reasons

6    that courts sometimes dismiss what I, in the old days, called

7    pendent supplemental jurisdiction to dismiss those kinds of

8    cases in this case.

9            On the unincorporated association, as I say,

10   fundamental position after we get past the waiver and all

11   that -- and that would be one way to decide it is on waiver --

12   is that the burden is on them because they're looking here for

13   an escape for these claims in this case.  They have the burden

14   of proving that they are an unincorporated association under

15   New York law.  And that doesn't end it.  It's a matter of

16   capacity, even if they are an unincorporated association that

17   they don't have the capacity to sue or be sued.  That's

18   relevant here because they are this unique sort of animal,

19   let's call it -- unique sort of entity, both the PA and the

20   PLO.

21           So, again, I say with respect to the PA, you look to

22   the organic document that created them.  It says expressly,

23   which the PLO negotiated for, we have the right to sue and be

24   sued.  Again, we don't have to guess because we pulled a series

25   -- doing discovery on our own, we pulled a series of about 10

C89QsokC1

1     to 14 case necessary which the PA has sued.  They're the

2     plaintiff in 10 to 14 cases at least.  That was just in one

3     glance in the Israeli court.  So they recognize they have the

4     right to sue and be sued.

5          So what we say in this argument is when you're dealing

6     with, even if it's an unincorporated association --

7          THE COURT:  Slower.

8          MR. SCHOEN:  I'm sorry.  If it's a foreign

9     unincorporated association -- and by foreign, I just mean a

10    non-New York unincorporated association -- we have to look to

11    how that entity is treated back in its domicile.  Those are the

12    cases we've cited that they take issue with, and we cite it

13    again in the reply later on.  I can give the Court the cites to

14    pleadings and all that, but, again, I can see the Court has

15    read them all.  So that is an answer to that.

16         The 4(h) argument we've discussed.  The only reason I

17    raise it is because they've tried to claim mileage out of that

18    saying well, they served it under 4(h) as an unincorporated

19    association.  That's the catchall for organizations.  Again, it

20    undercuts their argument because it only applies to groups that

21    can be sued under a common name.  Their position is we can't be

22    sued under a common name.  You got to name our president or

23    treasurer and then prove all the members approved it or

24    ratified it.  That's a different kind of entity.

25         I think that pretty well covers it.  Again, they have

C89QsokC1

1    the burden of showing what it is and of establishing that they

2    are members, or, as the Court alluded to, or suggested -- I

3    don't see that the Court came to any conclusion -- as the Court

4    threw out as an issue, isn't it fundamentally a question of

5    fact?  If it's a question of fact, then we have no business

6    deciding it at this point.  Certainly nobody has been

7    prejudiced and nobody would be prejudiced by having it go

8    forward all the way through.

9            In fact, two of the five plaintiffs, who they claim

10   shouldn't have any claims here on their demand, on the

11   defendant's demand, have flown over to New York, have had their

12   depositions taken on damages, and have had Rule 35 examinations

13   taken already at great expense and great inconvenience to them.

14           On the Section 1367 argument, your Honor, first of

15   all, again, we don't even get there.  There has been no showing

16   of any conflict of laws in the first place.  Why is that

17   important?  Because they rely on two prongs:  They rely on the

18   prong that you have the discretion to get rid of these claims

19   if it raises a novel issue, that sort of thing.

20           Let me just read from 1367, your Honor.

21           Their claim is that "this case raises a novel or

22   complex issue of state law" -- you know, some jurisdiction

23   other than the federal court -- "and that the claim or

24   Subsection 2" -- I'm reading from 28 U.S.C. 1367(c)(1) and (2).

25           The first one says "it raises a novel or complex issue

C89QsokC1

1    of state law."   The second one is "these claims substantially

2    predominate over the claim or claims over which the district

3    court has jurisdiction" -- the ATA claims.

4            "The last proposition, cannot be supported under any

5    reasonable good faith argument that these garden-variety claims

6    of wrongful death and assault and battery would predominate

7    over this thing."

8            What they mean is, well, we would have to apply

9    foreign law for them, and they would predominate because we'd

10   all get bogged down, as Ms. Murphy-Johnson said, in having

11   experts in here for two or three years with foreign law and all

12   that.   Nonsense.   I don't mean that disrespectfully, but it's a

13   nonsensical argument because we don't get to the first part.

14           First of all, case law ad infinitum, and the

15   commentators all say, as the Court said earlier, when we're

16   dealing with torts, contract claims, and that sort of thing,

17   these are not the kind of novel or complex issues that are

18   contemplated by Section 1367(c).   That's right out of Wright  &

19   Miller and cases that they cite.

20           On the second part of it, will they predominate, this

21   is the classic case in which the state court claims are

22   intertwined -- inextricably intertwined with the federal claim.

23   The proof is the same.   The evidence is the same.   You go

24   through one trial with no difference except maybe the elements

25   are more simple than in the ATA.

C89QsokC1

1           But, again, let's talk about the burden.  The first

2    burden is on them to prove that there is a conflict between New

3    York law and Israeli law or Palestinian law.  And to say to the

4    Court today, well, now we don't know what law would apply in

5    Palestinian territories -- they are the law.  They're the

6    legislature there.  They are the courts there.  They have the

7    burden to tell the Court.  It can't just be let's throw it

8    against the wall, and in the abstract we could have an issue

9    here, and it could be real complicated, maybe Judge.  Can't

10   tell you why.  Can't tell you how.  Can't tell you what the

11   differences are or what that body of law is, but, you know, in

12   the abstract, that could be out there; therefore, Judge, why

13   don't you just get rid of these things and makes things simple?

14   That's not the way it works, the Court knows that, and it's not

15   fair.

16           Another relevant question:  Would it enlarge the scope

17   of the action at all?  Not at all.  Not at all.  Let me

18   explain.  I think the best way for me to explain what I mean by

19   that, it will take me about three minutes because I want to

20   concretize it and put it in real terms.  I want to tell the

21   Court who the five plaintiffs are that we're talking about and

22   how their claims arise to perfectly, I believe -- not me -- the

23   facts perfectly demonstrate the point I'm trying to make here;

24   both why it wouldn't complicate the case at all and why it's

25   perfectly appropriate for these claims to be in this case.  In

C89QsokC1

1    fact, this is the classic case.

2            The first plaintiff -- we're talking, again, about

3    five plaintiffs on these claims.  The first plaintiff is

4    Guetta.  In January of 2001, just outside Jerusalem, four men

5    with Kalashnikov machine guns opened fire on a car in which

6    Varda Guetta was traveling with a 14 year-old son Oz.  The

7    shooters got out of their car and they fired at the Guettas'

8    car just a few feet away.  Varda got a close look at some of

9    them.  We intend to prove in this case that those men were

10   officers with the PA Police Department Security Forces.  Many

11   of them are now sitting in jail for carrying out similar

12   attacks in that same area.  The son, Oz, was struck with

13   machine gun bullets and has serious injuries.  He is an

14   American citizen and has an ATA claim.  Somehow, miraculously,

15   the bullets missed Varda, but she has significant mental health

16   issues, as they know from depositions, and, as a result, she

17   has a physically and emotionally crippled son.  And she deals

18   with that every single day.

19           It would be unfair in the extreme to deny Varda the

20   opportunity to present her claims from this same incident in

21   which the claims for her son's injuries are going to be

22   presented.  She has claims for the emotional distress.  She has

23   claims for the loss of consortium, the loss of her mother/son

24   relationship as it was over the last ten years.  So it doesn't

25   add to the scope of this case because the evidence will be the

C89QsokC1

1    same.  The evidence will be that she was there and what she

2    suffered.  So, yes, if we have to put on some damages evidence

3    about her, that can increase it a little bit.  That's not the

4    kind of thing we talk about in why we have to get rid of these

5    claims because they would predominate.

6            I'll make it real quick on the others.  In the Bauer

7    incident we allege in March 2002, a suicide bomb blew up on

8    King George Street in downtown Jerusalem.  Dr. Alan Bauer and

9    his young son, Yehonathon, were injured severely and several

10   Israelis were killed.  Again, two officers in the PA Security

11   Services, Abdel Akrim Aweis and Nasser Shawish were convicted

12   of planning the attack and sending the bomber.  They proudly

13   admitted it.  This is one of those cases in which General Zinni

14   handed the PA a list of known terrorists, people who were

15   committing these acts.  They locked up Aweis for about a week

16   or two and then released him.  They knew who he was; they knew

17   what he was going to do.

18           The story gets even worse.  Let me cut to the chase

19   here.  Alan Bauer and his son, Yehonathon, are Americans.  They

20   had ATA claims.  But Revital Bauer, who is Alan's wife and

21   Yehonathon's mother, is not American.  She only has the

22   non-federal claims.  So, again, she'd be out of court, but

23   there's no reason for her to be because this case is going to

24   be tried here and now with all of the same evidence at trial.

25           Goldberg is the third case.  January 2004, a PA

C89QsokC1

policeman Ali Jara got into the number 19 bus in Jerusalem.
The attack was planned, we allege, and we will prove, by two
other PA policeman, Achmed Salah and Halmi Hamash, who were
convicted and got multiple sentences for it.  Among those
murdered in the bombing was Stuart Scott Goldberg.  He was
Canadian.  So his estate doesn't have an ATA claim, but his
wife and seven minor children, who are American, do.  They have
their ATA claims here, and they will be litigating it.  So what
an absurd result to throw the estate of the fellow who was
murdered out while the relatives will be in here and have the
right to be in here.

          Finally, there's the Mandelkorn case, which are two of
the plaintiffs.  There in June 2002 a suicide bomber blew up in
a crowded bus stop in Jerusalem, killing a group of Israelis
and wounding plaintiff Shaul Mandelkorn.  He's not American,
but his father, Rabbi Leonard Mandelkorn, is American, and,
therefore, the father has a claim under the ATA; but since
Shaul is not American, he doesn't have a claim, nor does his
mother under the ATA.  But, again, you'll have the father going
forward here, all of the facts of that incident, that terrible
terrorist incident will be put before the Court and jury in
this case in all their detail whether or not those plaintiffs
are here.  Those plaintiffs deserve an opportunity to have
their case heard.

          In terms of the depositions, as I say, Revital Bauer,

C89QsokC1

1    the wife, the husband of Alan and the mother of Yehonathon, was

2    deposed already, and she's already had her Rule 35 examination

3    done.

4            Varda Guetta was deposed already June 28.  She had her

5    mental examination June 27 at their demand.  And they already

6    have demands out there for immediately taking the depositions

7    and Rule 35 examinations of the other plaintiffs.  Well, then

8    they should do it because these claims ought to go forward,

9    your Honor.

10           I hate to even throw this out here because, again, I

11   don't think we get off first base with these claims, but if we

12   did, then we ought to be able to amend the complaint at this

13   point and name the president and the treasurer of the

14   association and prove to the Court then that the kinds of -- we

15   don't know who their members are, but if they claim the members

16   are these factions, that each one of those factions has a

17   charter and a policy and a practice of engaging, approving and

18   ratifying these kinds of terrorist acts, so that we would get

19   them that way also.

20           The bottom line is the estate claims ought to go

21   forward for all the reasons we've said, your Honor.  I

22   appreciate the time.  I know the Court has read the papers.  We

23   also rely on the papers.  And I don't mean to undercut anything

24   in the papers that I've said here today.

25           THE COURT:  Let me ask you a side question with regard

C89QsokC1

```
1     to your Count Six.  Why is that an independent count?

2              MR. SCHOEN:  Your Honor, it could well be a misnomer

3     considering it to be a cause of action.  This is a solatium and

4     consortium count.  The fact of the matter is, under the ATA we

5     have the right to those kinds of damages.

6              THE COURT:  Damages.

7              MR. SCHOEN:  Yes, your Honor.

8              THE COURT:  That's a determination of damages.  That's

9     not, as I understand it, an independent cause of action.  You

10    say that you want to allege it as a separate non-federal cause

11    of action.  The fact that it may be related to damages in a

12    federal cause of action doesn't make it independently a cause

13    of action unless there is such a cause of action in Israeli law

14    or in New York law, and I fail to find it.

15             MR. SCHOEN:  Let me say this, your Honor ---

16             THE COURT:  I assume you put it in that category of

17    other of common law or non-federal claims, but --

18             MR. SCHOEN:  Because we believe those kinds of damages

19    are also recoverable under the state.

20             THE COURT:  That is what you said, let me go to --

21             MR. SCHOEN:  The Court's point is, it's not a separate

22    cause of action.  I have been in the case two days, and I think

23    that's right, and the Court knows it far better than I do, and

24    the Court has been in the case a lot longer.

25             THE COURT:  You've talked about garden-variety
```

C89QsokC1

non-federal causes of action, such as wrongful deaths, loss of

consortium and solatium, assault and battery, negligence and

infliction of emotional distress.  Then you talk about the five

remaining counts:  Conscious pain and suffering, civil

conspiracy, aiding and abetting, vicarious liability and

respondeat superior and inducement.  They set forth theories of

liability and/or types of damages available, not separate

causes of action.

It seems to me that Count Six falls in that category,

not the first category.

MR. SCHOEN:  I can't disagree, your Honor.

THE COURT:  OK.

MR. SCHOEN:  I hesitate to speak for lawyers who have

done ten years of work in the case and I'm in it two days, but

that's the way I read it.

THE COURT:  That's not determinative of this case.

Let me just go back to one other issue with regard to

your motion to strike.

MR. SCHOEN:  Yes, your Honor.

THE COURT:  Let me put aside for a second the lack of

capacity in the affirmative defense.  What is the utility or

purpose of striking all of the affirmative defenses at this

point or striking anything at this point?  I understand the

difference between a motion to dismiss and a motion to strike.

Why am I striking?

C89QsokC1

1              MR. SCHOEN:  Again, your Honor, I think part of this

2      is -- I will tell you how I read it, your Honor.  I have a

3      little bit of my own baggage in this one.  The judge I happened

4      to clerk for was real big on this sort of stuff.  That is, he

5      would call up the parties at the time and say, listen, you've

6      thrown this in your answer, I don't want this all -- we're

7      going to have a have a trial on that.  Let's just clean it up.

8      I think part of that is what this is.  For example, one of the

9      objections in the motion to strike is that the defenses are

10     just too conclusory.  Then we break it down.

11             But as to affirmative defenses three and six, we say

12     these allege personal jurisdiction and improper venue, those

13     have already been ruled on.  No reason for them to be in the

14     answer.  They were dismissed on a motion.

15             THE COURT:  So I ignore them.

16             MR. SCHOEN:  OK.

17             THE COURT:  As I say, it's just a matter of style.

18     You're right.  Your judge may have stricken them.  I don't even

19     want to spend the time having to argue about striking them.  I

20     will just ignore them.  If those issues have been resolved,

21     they've been resolved.  Every time I dismiss something out of a

22     case, I don't need to go back and rewrite the pleadings.  It's

23     not there.  My attitude is that if they have alleged

24     sufficiently and put you on notice of any claim, counterclaims,

25     or affirmative defenses, the only question in my mind for me to

C89QsokC1

1    address is whether or not at the end of discovery there is a

2    basis in which to put forth those affirmative defenses in

3    support of a summary judgment motion or to go to a jury with

4    those affirmative defenses.

5            MR. SCHOEN:  I understand, your Honor.  I think

6    another issue, just as a matter of law, was plaintiffs take the

7    position that *Twombly* and *Iqbal* apply to affirmative defenses,

8    and we cite a whole host of cases that say that, and say if

9    they can't support these things, they ought to go out --

10           THE COURT:  Which affirmative defense don't you

11   understand that they are asserting and why they are asserting

12   them?

13           MR. SCHOEN:  I think we understand them.

14           THE COURT:  So, what else does *Iqbal* and *Twombly*

15   require other than sufficient specificity for you to understand

16   the nature of the affirmative defense so that you can confront

17   that affirmative defense?

18           MR. SCHOEN:  I think specifically, for example, for

19   the fourth defense of lack of capacity, this dovetails with

20   that argument under Rule 9, and, that is, they have the burden

21   of setting out the facts that they know about that make them

22   this unincorporated association.

23           THE COURT:  They don't have to prove it in their

24   answer.  They just have to give you notice of what they claim

25   is the nature of the affirmative defense.  It seems to me that

C89QsokC1

1    when anyone reads from the plaintiff's side that they were

2    asserting a lack of capacity, that the only reasonable

3    conclusion to reach at that point was that they were asserting

4    a lack of capacity based on the fact that they are not an

5    unincorporated association.

6              MR. SCHOEN:  I hear the Court.  I would just say that

7    I think the rules require them to also set out the facts that

8    support it, and, remember, we have this problem with their

9    26(a) disclosures.

10             THE COURT:  Well, that's a different question.

11             MR. SCHOEN:  That's right.

12             THE COURT:  You could have enforced the 26(a)

13   disclosures or moved on the basis that the disclosures are

14   insufficient, but that doesn't go to the pleadings.  The

15   disclosure doesn't go to the pleadings.  It goes to whether or

16   not they made sufficient disclosures.

17             MR. SCHOEN:  Yes, your Honor.  That's raised in our

18   cross motion, of course.  The disclosures were insufficient,

19   and that that's relevant to this issue as well.

20             THE COURT:  Well, the disclosures may be insufficient

21   and may warrant preclusion of certain evidence that wasn't

22   disclosed, but I'm not sure how that independently factors into

23   my evaluation as to whether the pleadings are sufficient.  I

24   assume that you would say I should reject their argument that

25   your disclosures were insufficient, so, therefore, you fail to

C89QsokC1

1    state a cause of action in your complaint.  Those aren't

2    related to each other.  Those are two different legal analyses.

3              MR. SCHOEN:  I hear you, Judge.

4              THE COURT:  So, at this point, as I say, my reaction

5    is for the purpose of cleaning up the pleadings, if I spend

6    most of my time trying to do that in cases, I'd be spending a

7    lot more time doing that than concentrating on the merits of

8    the case.  With regard to any affirmative defense, I'm not sure

9    that you have articulated which affirmative defense -- I

10   understand your arguments about what issues have already been

11   addressed, and that they're no longer in this case; but with

12   regard to an argument as to any particular affirmative defense,

13   I'm not sure which affirmative defense that you say is

14   inadequately pled on the basis that it is not pled in a manner

15   in which you sufficiently understand what is the nature of the

16   affirmative defense that they intend to pursue in order to

17   defeat liability.

18             MR. SCHOEN:  I understand, your Honor.

19             THE COURT:  So, is it your position that -- when you

20   say the underlying facts, I assume it's not your position that

21   even with regard to capacity, if they said that we assert the

22   affirmative defense of lack of capacity because we are an

23   unincorporated association, and, therefore, cannot be sued, you

24   wouldn't argue that some other factual allegation of proof

25   would be necessary beyond that.

C89QsokC1

1          MR. SCHOEN:  Under Rule 9, I would, your Honor.

2          THE COURT:  What else would you say would be -- they

3     would have to give you the proof on that?

4          MR. SCHOEN:  They have to make the assertion with

5     their defense, and that facts are peculiarly within their

6     knowledge.

7          THE COURT:  But what facts are peculiarly within their

8     knowledge?  If they simply said, we have the affirmative

9     defense, and they didn't articulate this, but I think you

10    understood this to be their position.  So if they had

11    specifically articulated in the affirmative defense, that we

12    have the affirmative defense of lack of capacity to be sued

13    because we have been determined to be and we are in fact an

14    unincorporated association which cannot be sued under New York

15    law for these non-federal claims, you are not saying that they

16    would have to lay out in attached chapter and verse what

17    created them and who their members are and how they're an

18    unincorporated association, as long as they put you on -- this

19    is notice to you.  Even in terms of affirmative defenses, that

20    is clearly a plausible theory under *Twombly* and *Iqbal*, and it's

21    clearly sufficient to put you on notice that they claim to

22    establish as a defense to any cause of action that you might

23    otherwise establish that you have sued an entity which cannot

24    be sued.  I'm not quite sure what else you say that they would

25    be required to put in a plea.

C89QsokC1

1           MR. SCHOEN:  Your Honor, I refer the Court to DE 196

2   at page 9.  We just kind of set out sort of the body of case

3   law starting with *the Pressman v. Estate of Steinvorth* case.

4   What they say in there in fleshing this out, what do we mean by

5   Rule 9(a) and what's a waiver?  They say:  He waived the

6   capacity defense by waiting more than seven years before

7   raising it.  That's not what your Honor is talking about right

8   now.

9           THE COURT:  But they're not even raising a waiver

10  argument in that regard.  You're raising an insufficient

11  pleading argument.

12          MR. SCHOEN:  In this argument, of course, the Court's

13  aware we are waiving the waiver argument but they waited so

14  long -- they raised it first and then they, we say abandoned

15  it, and then raised it again.  That's what happened in

16  *Pressman*.

17          THE COURT:  Slow down.  Slow down for a second.

18          I understood your waiver argument and the failure to

19  sufficient plead the affirmative defense argument to be two

20  separate arguments.  Is that not two separate arguments?

21          MR. SCHOEN:  Two separate arguments.  The only reason

22  I raise it now is because in *Pressman*, they put it in that

23  context.

24          THE COURT:  Right, in the waiver context.

25          MR. SCHOEN:  Not just the waiver -- I'm sorry, your

C89QsokC1

Honor.  They say because he failed to be more explicit in his

answer, he has waived it.  So it's a waiver because he didn't

properly or timely raise it.  That's an argument we have.  And

in this context, the way they call it in *Pressman* is they call

it a waiver by not explicitly laying out supporting facts.

Rule 9(a) requires not only pleader to make a specific negative

averment of the plaintiff's capacity to sue, but also that

averment to include "such supporting particulars as are

peculiarly within the pleader's knowledge."

        In this case, they only asserted that we lacked the

requisite standing to bring the case, but they didn't give any

particulars or explanation, the Court said, and the Southern

District here, the Court said, and, therefore, they waived the

issue for not being specifically -- for not laying out the

supporting facts.  In this case, I would say who the members

are, what makes them an unincorporated association, because it

gives us notice then.

        THE COURT:  On what point do you say they waived this

because at some point you knew this, so they didn't.

        MR. SCHOEN:  I still don't know why they claim they're

an unincorporated association.

        THE COURT:  And you say because you don't know at this

point why they claim that they're an unincorporated

association, that they have waived that argument?

        MR. SCHOEN:  Yes, your Honor.  And I don't believe

C89QsokC1

 1    they are a membership organization, as we know that to be

 2    required under unincorporated association.  If they are, I

 3    don't know who their members are, and I say -- they do know.

 4    If they are going to take the position --

 5            THE COURT:  But you do know it to one extent.  You

 6    know it to the extent that they have been determined to be an

 7    unincorporated association in other cases, so you are at

 8    least -- to sort of say it is somehow a surprise to you that

 9    somebody would say this and why they would say that is a little

10    bit --as I said, that's why I say it sounds to me you are

11    making solely a waiver argument.  You are not making anything

12    other than a waiver argument.

13            (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

C895sok2                         argument

1          MR. SCHOEN:  It's a waiver and an insufficiency

2     argument under Rule --

3          THE COURT:  Well, I'm not sure -- as I say, I'm not

4     sure that it's a waiver of argument that they didn't put you on

5     notice as to the nature of the affirmative defense so that you

6     can obviously have an opportunity to either move to dismiss it

7     or to explore any discovery.  I don't understand that you were

8     in such a position.

9          MR. SCHOEN:  Well, we have said we needed discovery on

10    that issue, of course before --

11         THE COURT:  Right.  So, if you get discovery on the

12    issue then why is it waived?

13         MR. SCHOEN:  I still think it is a violation of Rule

14    9.

15         THE COURT:  Have you requested discovery on that

16    issue?

17         MR. SCHOEN:  Yes, your Honor.  We have discovery

18    requests for cases in which they've sued and been sued.

19         THE COURT:  Okay.

20         MR. SCHOEN:  That sort of thing.

21         THE COURT:  Are they somehow in default on responding

22    to those outstanding requests?

23         MR. SCHOEN:  I don't know the answer to that but

24    they're asking your Honor to dismiss these claims and are

25    saying we don't need any discovery.

C895sok2                          argument

 1              THE COURT:  No, but I'm not -- I'm not focusing on

 2      what they're asking me to do, I'm focusing on what you're

 3      asking me do.  I mean, you are saying they have waived it even

 4      though you targeted a discovery request that is still

 5      outstanding, they have not defaulted on appropriately and

 6      timely responded to that discovery request.  So why, under

 7      those circumstances, should I say that they have -- you're in a

 8      position to say that you don't understand the nature of their

 9      claim and that's sufficient for you to confront and disprove

10      that affirmative defense?

11              MR. SCHOEN:  Let me put it like this, your Honor.

12              THE COURT:  Or explore that in discovery.

13              MR. SCHOEN:  Let me put it like this, if may.

14              I think part of the reason for the rule is that

15      requires this so that we are not just engaging in endless

16      motion practice and briefing, let's flesh it out from the start

17      so we know what we're talking about with the answer; not so

18      that, your Honor, we can show up today after all of this

19      motions practice and say -- I don't mean this in any way as a

20      personal attack at all -- but I'm saying from the defendant's

21      perspective, well, I guess we're an unincorporated association

22      because we haven't been anything else so far.

23              THE COURT:  But aren't you already in that position?

24      If you weren't in that position you wouldn't have been in a

25      position to articulate and generate the specific discovery

C895sok2                                argument

1    requests that you say were relevant to that issue.  You have

2    already done that.  Why would a -- if you have already

3    requested what you know is the relevant inquiry to defeat that

4    affirmative defense or to argue that they produce no proof and

5    so order that from the defendants, in what way should I say

6    that?

7            MR. SCHOEN:  If the Court's position is no harm, no

8    foul, in a sense, I hear you.  I think there is a foul because

9    I think it cost us a great deal extra time and effort and money

10   and so on having to deal with the issue without knowing --

11   without them meeting their obligation because it is part of the

12   same obligation carrying a burden of proof, that is, why are

13   you an unincorporated association, who are your members, how do

14   you establish those things.  And in the answer there is a Rule

15   98 for a reason.  It distinguishes between lack of capacity and

16   other kinds of other defenses and it says you have to give us

17   the underlying facts.

18           Judge, are we finished?

19           THE COURT:  Yes.

20           MR. SCHOEN:  I mean you make it -- this is what a

21   lawyer lives for, frankly, to have a Court this prepared when

22   we come in here for argument.

23           THE COURT:  I know.  It is important for all parties.

24           MR. SCHOEN:  I very much appreciate it.

25           THE COURT:  I will let them respond.

C895sok2                          argument

1           MS. FERGUSON:  You have me back again, your Honor.

2           THE COURT:  Sure.

3           MS. FERGUSON:  Just briefly on whether there was sort

4    of a foul in the way in which the affirmative defense of lack

5    of capacity was raised.

6           The PA and PLO fully briefed this issue back in 2007

7    and the Court wanted to defer ruling on that question until the

8    threshold of personal jurisdiction issue was resolved.  That

9    took some time to resolve and, meanwhile, we preserved our lack

10   of capacity argument and then, of course, raised it in the

11   answer so there has been no waiver, there has been no

12   prejudice.  The plaintiff has been on notice since 2007 not

13   just that we intended to raise a lack of capacity defense but

14   of the very nature of the argument and what it rested on

15   because we actually briefed the issue in 2007.  So, I wanted to

16   make that point clear.

17          With respect to the lack of capacity argument, I think

18   it has become somewhat muddled in terms of what the different

19   kind of points of inquiry are and what law one looks to for

20   these different points of inquiry, and I think it is very

21   important to distinguish between the first question of:  What

22   kind of entity is this?  Is it a corporation?  Is it a state?

23   Is it an unincorporated association versus if it is an

24   unincorporated association what law do we look to determine

25   whether it has the capacity to be sued?  And my opposing

C895sok2                        argument

1    counsel has argued that well, sure, the PLO might be an

2    unincorporated association in a general sense, but under New

3    York Law it is not an unincorporated association.  Well, New

4    York Law does not govern the status of the PLO or the PA under

5    the Federal Rules of Civil Procedure.  That's become a question

6    of federal common law, the what is it.

7           What the Federal Rules of Civil Procedure then tell

8    you is that if the PLO is an unincorporated association, then

9    you go to the law of the forum to determine its capacity to be

10   sued.

11          There is also this question that sort of comes into

12   play that creates some confusion about, well, who are its

13   members and did its members ratify the unincorporated

14   association's actions.  Well, we don't even get to that point

15   because if you accept the premise that the PA and the PLO are

16   unincorporated associations and then you go to law of the

17   forum, New York, it tells you that the unincorporated

18   associations cannot be sued in their own name, they have to be

19   sued in the name of the president or the treasurer.  If the

20   plaintiffs had done that, which they didn't, then there would

21   be the question of whether they sufficiently alleged that the

22   members had ratified the conduct.  But we don't have that, the

23   valid complaint even moves forward because it named the PA and

24   PLO, not the president or treasurer and the plaintiffs, even

25   though they have been on notice since 2007 that we have this

C895sok2                          argument

1    lack of capacity defense and the nature of that defense, they

2    have not sought leave to amend.  They haven't filed a complaint

3    against the president or treasurer.  So, the notion that we

4    need discovery to determine every single member of the PLO or

5    whether every single member of the PLO ratified this action,

6    that's putting the cart way before the horse because they don't

7    even have, under New York Law, a valid claim to proceed on

8    because they've sued the wrong entity, or they've sued it in

9    its own name, I should say.  So, I wanted to clarify that point

10   as well.

11              I also think, your Honor, that it would be a mistake

12   to keep sort of kicking this can down the road with respect to

13   these supplemental law claims by suggesting, well, maybe there

14   is some other facts out there that would help us resolve this.

15   These are, I acknowledge, sui generis organizations, the PA and

16   the PLO, but I submit that the plaintiffs have not identified

17   specific discovery that would help us to figure out how, under

18   U.S. law, we are going to treat this sui generis thing that is

19   the PA and PLO and we all sort of know in broad, general terms

20   what they are.  They want discovery on, well, I would like to

21   see charters of every individual member of the organization to

22   see if they've ratified it.  Well, we don't get to that

23   question.  We don't get to that question because they haven't

24   filed a suit against the president or treasurer.  So, there is

25   no reason to keep kicking this can down the road because there

C895sok2                          argument

1    isn't another avenue with respect to the capacity point.

2            With respect to the supplemental, our sort of

3    additional argument under 1367, I understand your Honor's

4    position that well, yes, it is complex here, but it would be

5    complex against Israel as well and I think it is important to

6    understand that we did raise this argument of lack of capacity

7    back in 2007 when the statute of limitations had not run in

8    Israel.  Moreover, this is a highly -- I can't stress enough

9    how difficult it is for the PA and the PLO to litigate complex

10   cases in U.S. Courts and deal with the obligations of U.S.

11   civil discovery.  We have been in discovery for quite a time

12   now, this case has been ongoing since 2004, active since 2007.

13   We are getting -- we are getting very near the end of fact

14   discovery.  Fact discovery is set to close December 21st.  And

15   so, the PA is sort of getting there but now to open up this

16   entire tranche of additional claims involving different sources

17   of foreign law and requiring -- and where all the facts and the

18   experts and the witnesses and the documents, everything is over

19   there, so it is very expensive to litigate it here as opposed

20   to in the region.  It is very burdensome.  The issues are

21   considerable, considerable expense and delay, and it truly is

22   already a complex case.

23            THE COURT:  Well, the PLO and PA has been involved in

24   numerous litigation in the United States in various courts.

25            MS. FERGUSON:  Yes.

C895sok2                          argument

 1          THE COURT:  I don't know why this is any more
 2   burdensome than any other litigation that they must expect,
 3   particularly under the ATA, to be involved in.  And, as I say,
 4   even I if I accept your argument, this case doesn't go away.
 5          MS. FERGUSON:  No, this case does not go away because
 6   under the statute, if a U.S. national has been injured, they
 7   have a right to bring suit here.
 8          THE COURT:  So, I can't give them a more convenient
 9   forum, I can only put them into forums which is less than
10   convenient.
11          MS. FERGUSON:  But, with respect to embarking on what
12   would be a complicated, lengthy, burdensome process of expert
13   discovery and litigation of numerous foreign law claims --
14          THE COURT:  If you don't, give me a scenario where you
15   won't have to do that anyway.
16          MS. FERGUSON:  Well, they should have brought those
17   claims in Israel.
18          THE COURT:  The only argument that I can assume you
19   are making is that if I grant your motion, since they are
20   time-barred in Israel, you won't have to do that again in any
21   other forum because they will have no forum to litigate these
22   common law claims.
23          MS. FERGUSON:  Even if Israel were to toll the statute
24   and allow the claims to move forward.
25          THE COURT:  Then you would have double work.  I mean,

C895sok2                              argument

1    how does that --

2              MS. FERGUSON:  Except the experts are likely to be in

3    the region.

4              THE COURT:  Okay.

5              MS. FERGUSON:  We will have more access to people that

6    speak those languages in the region.

7              THE COURT:  Why is it that you don't have access to

8    those people in the region even if you are litigating

9    ultimately in a case here?

10             MS. FERGUSON:  Well, the PA's U.S. counsel doesn't --

11    we don't read Arabic or Hebrew.

12             THE COURT:  That's not where it should be, that is who

13    the lawyer should be.  Get yourself some lawyers who speak

14    Arabic or Hebrew because that is what is going to have to

15    happen.  That is not a compelling argument about the forum,

16    that's a compelling argument about who is involved and what

17    lawyers and support staff is involved in litigating.

18             MS. FERGUSON:  Your Honor, there is a case in front of

19    the Supreme Court right now, the Kiobel case involving the

20    alien tort statute where the Court is inquiring as to under

21    what circumstances should U.S. Courts exercise jurisdiction

22    over claims involving foreign defendants, involving foreign

23    plaintiffs and actions that occur abroad.  Now, here there is a

24    statute that says, yes, the U.S. Court will take it if the U.S.

25    national has been injured but now that's become the vehicle for

C895sok2                         argument

1    attaching any number of other claims.

2         THE COURT:  That arise out of those incidents.

3         MS. FERGUSON:  Right, but that add even more -- that

4    now have a U.S. Court not just adjudicating a federal statute

5    but now you have the U.S. Court trying to decide whether under

6    the law of the West Bank whether they actually recognize a

7    claim for negligent infliction of emotional distress.

8         THE COURT:  You keep saying that but I haven't

9    confronted that in this case yet and I'm not sure on what

10   scenario you say that this Court is going to have to confront

11   that.  That has not been an issue that's raised by either

12   party, that somehow that we are going to be trying to decide

13   whether or not the defendants are liable under some other law

14   other than the law -- the ATA and the law that is consistent in

15   both New York and Israel.

16        MS. FERGUSON:  Well, that's where we keep going back

17   to the Second Circuit case that says that the choice of law

18   rules for torts would have the Court, as to conduct-regulating

19   activity, apply the law where the conduct occurred.  And some

20   of the conduct here is alleged to have occurred in -- not in

21   Israel but in the West Bank.

22        THE COURT:  Well, that issue, in all of these years,

23   has not been raised in this Court, so now you say that you

24   anticipate that that's what you may raise in the future and

25   make those arguments.  There is only a limited amount of

C895sok2                        argument

1    consideration that I should give to the fact that you say now,

2    Judge, send it someplace else because we think we are going to

3    raise an issue somewhere down the line that some other law

4    should apply other than the law we have all been talking about

5    all of these years.

6            MS. FERGUSON:  Well --

7            THE COURT:  I mean, you have never raised that issue

8    in this case.  That issue has never been raised.

9            MS. FERGUSON:  These aren't our claims.

10           THE COURT:  That's your claim.  That's your issue.

11   They're not raising that issue.

12           MS. FERGUSON:  But the complaint, in a way it puts us

13   at a considerable advantage because they don't say what the

14   source of law is for these claims.  They definitely don't say

15   it is anything other than New York or Israel.  They're silent

16   on it.

17           THE COURT:  They're not silent.  They specifically

18   said in their papers it is New York or Israel and those laws

19   are not inconsistent with each other.  If you have a different

20   position you have not raised a different position with regard

21   to what law applies until today when we started discussing

22   this.  Anybody is going to raise that --

23           MS. FERGUSON:  Subsequent to the briefing the Second

24   Circuit decision came out holding that it is not the place

25   where the injury or the loss occurs that controls but the place

C895sok2                        argument

where the conduct occurred.  So, there was a recent development

that came off our briefs that we alerted the Court to in a

letter so that's why this has come up, because there is this

recent Second Circuit case decided after the briefing that

makes not the law of Israel controlling but the law where the

conduct occurred.

          THE COURT:  Well, even if I were to accept all of that

argument it does not lead to the conclusion in the abstract

that this case should be somewhere other than here because the

majority of the activity that's at issue -- the activity that

you say you want to rely upon and the situs of the activity

that you say you want to rely upon is the minority of the

activity that is at issue here, not the majority of the

activity that is at issue here.  So, you're saying that even

though most of the activity affected U.S. citizens in Israel,

you say because of the connection with activity that you say is

attributed to the PLO or the PA in a different region should

compel that the law of that region be applied.  It is unlikely

that you, on these facts, that that is going to be a compelling

argument because that's not -- you have not even articulated

that that's -- making that analysis would compel one to say

that some other law other than the law of Israel or New York or

the ATA should apply.  You haven't even articulated such a

position.

          MS. FERGUSON:  But with respect to the plaintiff's

C895sok2                              argument

1    claims that the PA and PLO's own conduct creates liability --

2              THE COURT:  That's a limited part of the claim.  That

3    is a limited -- that is not the predominant part of the claim.

4              MS. FERGUSON:  I am missing, then, what the

5    predominant part of the claim is.

6              THE COURT:  The predominant part of the claim is the

7    injury and death that occurred at the locations that they

8    occurred and its effect on United States citizens.  That's the

9    primary part of the claim.  That's not a sophisticated thing.

10             You are saying that because they say the PLO made some

11   decisions in the region that somehow that should mean that all

12   of these claims should be decided in that region or according

13   to that law.  Now, if you want to make that argument maybe

14   there will be appropriate time to make that argument but, right

15   now, as an argument in the abstract, it is not a compelling

16   argument for me to say that, you know, I should -- oh, that's

17   too complicated in this case, it is much less complicated for

18   some other unknown jurisdiction to go do that analysis

19   separately even though we're litigating here, and somehow even

20   a balance of convenience says it is more convenient for that to

21   be done someplace else.  You haven't articulated where and how

22   it is more convenient or that there is really going to be any

23   compelling reason, compelling evidence to indicate that the

24   factors to consider are going weigh, somehow, more heavily

25   somewhere else other than Israel or the United States.

C895sok2                          argument

 1          MS. FERGUSON:  I would just encourage your Honor to

 2   review the recent Second Circuit decision because with respect

 3   to the damages issues there you do look to the place where the

 4   injury occurred and that would be Israel.

 5          THE COURT:  You want me to review --

 6          MS. FERGUSON:  The Second Circuit decision.

 7          THE COURT:  I'm aware of the Second Circuit Licci

 8   decision.  Very familiar with it, even before it was a Second

 9   Circuit decision.

10          MS. FERGUSON:  I understand, your Honor.

11          THE COURT:  I know what the issue is and I know the

12   limited issue that they addressed and I know the more broader

13   issue that I had to address before they got it and I don't

14   think that that changes, at all, my analysis here.  Matter of

15   fact, it is very consistent with my analysis here.  If you were

16   standing here making an argument that you could articulate a

17   basis to conclude that this litigation is more appropriate

18   someplace else or some law is more appropriate to apply, then

19   the laws that we have been discussing, then that would advance

20   that argument.  But, to argue in the abstract, well, we are

21   going to argue at some point that maybe there is connections

22   with the different region and that other laws might be laws

23   that can be considered, that doesn't get you over the hurdle of

24   trying to convince me on this record that I'm aware of at this

25   point that somehow this is more appropriate for a region or to

C895sok2                        argument

1  apply some laws that are different than either the laws of the

2  United States, New York, or Israel; I just haven't articulated

3  the compelling place or set of laws that should apply instead

4  of those.

5        MS. FERGUSON:  I didn't know if it would be useful to

6  have a briefing on some of these choice of law issues.

7        THE COURT:  If that becomes relevant at the

8  appropriate time.  That's usually my response.

9        MS. FERGUSON:  Our foremost argument is the lack of

10  capacity argument, so thank you, your Honor.

11        THE COURT:  You're welcome.

12        MR. SCHOEN:  May I have a minute, your Honor?

13        THE COURT:  Okay.  I will give you one minute.

14        MR. SCHOEN:  Your Honor, just in brief response.

15        I'm not sure how the last thing fits in with not

16  kicking the can down the road but, in any event, I know

17  Ms. Ferguson is trying but the idea here, it is just

18  transparent.  They have different experts in the region.  There

19  is no special expert for Varda Guetta.  There are other mothers

20  in the case who suffered the kind of injury and damage.

21  They're the same experts, that's the whole point here why we

22  don't dismiss the case here, it is the same trial.

23        THE COURT:  I thought she was moreso -- maybe I am

24  incorrect, moreso referring to experts on what law would apply

25  rather than experts.

C895sok2                      argument

1           MR. SCHOEN:  Those were two different subjects.  She

2      raised that and then raised this and because she said how

3      difficult it is for them to conduct discovery in the United

4      States.  That's an argument for Congress.  They're conducting

5      the same discovery -- we have the ATA.  Congress made that

6      decision and the Licci case, again, nobody is going to tell the

7      Court about that case, the Court knows the case better than

8      anyone, but that has to do with the American Express Bank

9      there, their only role in the case was transactions.  That's

10     not someone situated like Ms. Guetta or these other people

11     because that case is already here.  Are you trying that other

12     case?  In that case are you not otherwise trying a bank

13     transaction case?  The facts of this case are the facts of this

14     case and that doesn't change whether these plaintiffs are in it

15     or these state law claims are in it.

16          By the way, the idea of this Palestinian law and that

17     they can just throw this out there again, we have lost all

18     concept of burdens here.  Again, they are the law.  If there is

19     law that's inconsistent or in conflict with New York or Israeli

20     law, they should have told you that.  It probably isn't,

21     frankly, because of the mandated authority that operated there

22     but I don't know, we don't need to guess.  It is not an issue

23     in this case.

24          Anyway, thanks, Judge.

25          THE COURT:  This is what I am going to do because I

C895sok2                         argument

1    think it is time to move this case forward so I am going to

2    rule today on both of these motions.

3            With regard to the defendant's motion I'm going to

4    deny defendant's motion.  I think that in this case that it is

5    inappropriate at this stage of the proceeding to grant the

6    defendant's motion to dismiss for lack of capacity on this

7    record.  I will do so without prejudice to revisit this issue

8    on a record after discovery.

9            This is an affirmative defense.  It is the burden of

10    the defendant to prove this defense and it is the burden of the

11    defendant to demonstrate on what evidence they intend to prove

12    this defense of a lack of capacity either on summary judgment

13    or before -- quite frankly, I'm not even sure that I can

14    imagine a situation where this is a jury question but, you

15    know, if there are factual disputes it could be possibly.  But,

16    clearly, it is the defendant's burden to prove its affirmative

17    defense and having that burden the defendant can't simply rely

18    on the pleadings or prior litigation.  It must specifically

19    point to evidence on which they say indisputably demonstrates

20    that affirmative defense to the exclusion of any other

21    conclusion.  At this stage of the proceeding defendants have

22    not done that nor are they in a position because no discovery

23    is -- even outstanding discovery requests have not -- related

24    to this issue have not yet been responded to.

25            So, on this record I think it is inappropriate for me

C895sok2                          argument

1    to dismiss this case based on any finding that the defendant

2    has demonstrated and met its burden to demonstrate its

3    affirmative defense of lack of capacity when there is no

4    evidence in this record, there has been no discovery in this

5    case, there isn't even an articulable set of facts that have

6    been developed in this case for me to make a decision that

7    these sets of facts demonstrate the affirmative defense of lack

8    of capacity without disputed evidence and leading to only one

9    conclusion for that, the PLO lacks the capacity and the PA

10   lacks the capacity to sue and be sued on New York Law.  In

11   fact, the defendants even raised an additional issue by the

12   discussion today with regard to which actual law applies.  So,

13   if the issue is to be whether or not and it is argued that

14   somehow I should decline to assert jurisdiction over these

15   claims because it is a complicated issue to determine which law

16   applies with regard to non-federal ATA claims, then it is

17   obviously I am not in a position if I can't even determine at

18   this point that, which laws apply with regard to these claims

19   that somehow the defendant has already met its burden to

20   demonstrate that it has an affirmative defense with regard to

21   the applicability of New York Law.  One cannot argue that some

22   other law other than New York Law would apply, might apply with

23   regard to this or other issues and then say at the same time

24   that indisputably they have a lack of capacity to be sued

25   because New York Law says that they cannot be sued as an

C895sok2                              argument

1    unincorporated association.  If the defense wishes to prove

2    that affirmative defense and establish that affirmative

3    defense, then they have an obligation to exchange this

4    information and the evidence on that that they intend to rely

5    upon, the specific evidence that they intend to rely upon, and

6    then they have an obligation to meet their burden of proof to

7    demonstrate that they are in fact what they wish this Court to

8    conclude at this stage without any evidence in the record

9    that's been developed during this litigation, that they are in

10   fact an unincorporated association.  As I stated, I think it is

11   inappropriate for me to simply say that such a determination

12   that that burden is met simply because Courts in other

13   litigation, first with regard to specific issues that the Court

14   was addressing, even with regard to similar issues that have

15   been addressed in this Court, have made a determination that

16   for the purpose of those issues that they would accept that as

17   having a premise and that may prove, in this case, I see no

18   evidence which I can review which gives me basis to understand

19   that any Court has gone through an analysis -- a factual

20   analysis with regard to the nature of the PA and the PLO, its

21   establishment and its organization to articulate on what facts

22   that an independent objective conclusion is to be made, that it

23   is an unincorporated association and that its status is an

24   unincorporated association would preclude their bringing

25   non-federal claims under New York or Israeli law.

C895sok2                         argument

          So, I'm going to deny that motion because the

defendant is not able to demonstrate, based on this record at

this stage of the proceeding, that they have indisputably an

affirmative defense of lack of capacity that would preclude

liability in this case.

          Also, I am denying the application and decline to

assert ancillary pending jurisdiction over the nonfederal

claims.  In this case, given all the consideration of what

factors to consider with regard to assertive or decline to

assert jurisdiction, primarily any issues that are

determinative here that makes no sense to turn this one case

into more than one case in more than one jurisdiction.  There

is no compelling argument for me to do that.  The only

compelling argument to, which would give me a scenario that's

different than that is that, as I say as I heard it in a movie,

to get one big falling object and turn it into a number of big

falling dangerous objects isn't a compelling argument.

          The only argument that this would somehow simplify

rather than complicate for all parties and -- the argument that

this would put a lesser burden than a greater burden on any of

the parties would simply be the argument that I should decline

jurisdiction because it would preclude the plaintiffs from

pursuing these claims in any jurisdiction because of the

statute of limitations.  Again, that is not a compelling

argument for me to decline jurisdiction if I know that it

C895sok2                          argument

1    simply denies the plaintiff the forum that they have already

2    chosen and they have no reasonable alternative of forum at this

3    point to resolve these issues and they have a legal right to

4    resolve those issues in this forum.  If they have a legal right

5    to resolve these issues in this forum it is not compelling to

6    say that I should decline jurisdiction knowing that they will

7    be denied the right to go in an alternative forum because the

8    statute of limitations has already run.

9           All of your arguments made with regard to the

10   complication of proceeding with these issues and resolving

11   these other issues, whether they would be in conflict of law

12   issues or issues of practical discovery and trial, I think that

13   this Court will be, whatever issues that this Court is

14   confronted with in court, any additional Court that has to deal

15   with those issues separately are going to also have to be

16   confronted with.

17          So, I think that this Court, particularly since they

18   are ATA claims and there are ATA claims which will not go away

19   and those claims arise out of the same set of facts and actions

20   which underlie all of the other claims and there is no related

21   claims that don't arise out of the same set of facts, the most

22   efficient and effective way to resolve the issues and the

23   claims that arise out of the activities at issue is in one

24   lawsuit in one jurisdiction and not in duplicate lawsuits in

25   different jurisdictions simply because they're alleged as

C895sok2                         argument

1    different causes of action in different jurisdictions under

2    different law.

3         So, I am going to deny both the motion for partial

4    summary judgment -- I mean motion for judgment on the pleadings

5    and I'm going deny the motion to assert jurisdiction over the

6    pending ancillary claims.

7         There is also a motion -- I believe that there was

8    also a motion by the plaintiffs to, alternatively, to convert

9    this into a Rule 56 motion.  I think that that is inappropriate

10   at this stage of the proceeding.  The defendants have not moved

11   on the basis of independent evidence that's been disclosed in

12   discovery.  Both sides have clearly given indication and

13   particularly the plaintiffs have given an indication that there

14   is significant other evidence that they would be entitled to

15   review in this issue to combat or to determine whether or not

16   the defendants can assert the affirmative defense and so I

17   think that given the status of discovery and the nature of this

18   issue, that it would be inappropriate to convert this to any

19   other motion and the motion as it was stated.

20        With regard to the plaintiff's motion to strike, I'm

21   going to deny that motion.  I think with regard to the issues

22   that have already been resolved a motion to strike is

23   unnecessary and is not appropriate spending time and effort on

24   that.

25        With regard to the motion to strike based on waiver or

C895sok2                        argument

1    and/or failure to state -- sufficiently state the affirmative

2    defenses, I find that the affirmative defenses, as alleged,

3    have articulated what the nature of the affirmative defenses

4    are and sufficiently put the defendant -- the plaintiff on

5    notice as to what affirmative defenses, the nature of those

6    affirmative defenses, and to the extent that there is a

7    question about the underlying facts which would support those

8    affirmative offenses, I believe that is appropriate for

9    discovery.  There it already has been the subject of discovery

10   requests and those issues are to be resolved in discovery.  To

11   the extent that defendant does not wish to engage in discovery

12   in those issues that are relevant to any of the affirmative

13   defenses, then they can withdraw those affirmative defenses or

14   those affirmative defenses can be precluded.

15          So, I think that the appropriate thing is to move

16   forward efficiently with discovery at this point.  I think that

17   I am not satisfied with the pace of discovery.  I think I told

18   Magistrate Judge Ellis that I expected him to be firm with

19   discovery.  I have also indicated to him that any position, if

20   I deny the motions that are on standing here, my issue is going

21   to be that any position is going to be that other than one

22   summary judgment motion after the close of discovery, there are

23   to be no other motions filed without first a pre-motion

24   conference with Magistrate Judge Ellis, and that pre-motion

25   conference must be preceded by no more than a two-page letter

C895sok2                              argument

1    indicating what the nature of the motion is that the parties

2    believe are appropriate at this stage of the proceeding and the

3    nature of the motion and the underlying basis for the motion

4    and why the motion is timely made and is not premature in

5    discovery motion.

6            I think that the motions that have been made, there

7    have been too many piecemeal motions and I think one issue that

8    we have discussed and I think that primarily some is probably

9    even related to the plaintiff's motion to strike in an attempt

10   to preclude piecemeal, untimely motion, I will be able to

11   preclude that from all parties at this stage of the proceeding.

12   All the motions to dismiss should have been made.  If they have

13   not been made I think you need to have a pre-motion conference

14   with the magistrate judge and give him that letter and tell him

15   what motion you intend to make and tell him why that motion is

16   not untimely or premature short of completion of discovery and

17   summary judgment.

18           So, the parties should move forward to complete

19   discovery, move forward in anticipation of full summary

20   judgment briefing if that's the step to take after discovery,

21   and to anticipate that you will be spending, devoting your time

22   to completing discovery on these issues for the rest of the

23   year rather than engaging in further motions generating other

24   pleadings or generating other claims or affirmative defenses.

25           So, what I am going to do is I am going to schedule

C895sok2                         argument

before me -- discovery is supposed to be completed in December.

I am going to schedule before me a conference January 17th at

10:00.  We may not have to meet on that date.  If things move

efficiently I would anticipate that you would be complete with

discovery by then and you can agree upon a motion schedule for

full summary judgment submission and you can give me that

schedule and then I can, unless there are other issues to be

addressed on January 17th, we can move that date until after

the summary judgment motion is fully submitted and if you want

to be heard on summary judgment motion.

        So, as I say, I am going to have further conversation

with Magistrate Judge Ellis to make sure that things are moving

efficiently and that he makes sure that they're moving

efficiently.  If, for some reason, there are some applications,

letter applications that are submitted to Magistrate Judge

Ellis and he holds a pre-motion conference and he determines

that it is a timely and not premature motion that should be

addressed in substance on its merits, then he can indicate to

me the nature of that motion and I will grant him the authority

to tell the parties to go ahead and brief that issue for me or

for him or make an independent determination based on my review

of the nature of the letter response -- the letter and response

and the record before him at the conference whether or not

that's a motion that is both ripe and timely to be made in this

case.

C895sok2                              argument

1          Otherwise, I will see the parties on January 17th at

2     10:00 and we will see where we are at that point in time.  If

3     any issues arise with regard to discovery, they should be

4     raised in writing right away with Judge Ellis.  If we need to

5     meet again before that time let me know and I will schedule a

6     conference before me to address any issues that need to be

7     addressed before that time.  But, otherwise, I will instruct

8     Magistrate Judge Ellis to make sure the parties are on schedule

9     and move forward efficiently and resolve quickly an issue that

10    might otherwise delay the completion of discovery in this case.

11          Is there anything else we need to address?

12          MR. SCHOEN:  No, your Honor.

13          THE COURT:  Anything else by defense?

14          MS. FERGUSON:  No, your Honor.

15          THE COURT:  Thank you, and I will see you, and good

16    luck and I will talk to Magistrate Judge Ellis as soon as I get

17    off the bench.

18          MR. SCHOEN:  Thank you.

19          MS. FERGUSON:  Thank you.

20                              o0o

21

22

23

24

25