1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                     :
4    SOKOLOW, et al.,                : 04-CV-397
                                     :
5                    Plaintiffs,     : October 4, 2012
                                     :
6             v.                     : 500 Pearl Street
                                     : New York, New York
7    PALESTINE LIBERATION ORGANIZATION, :
      et al.,                        :
8                                    :
                    Defendants.      :
9    --------------------------------X

10

             TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
11            BEFORE THE HONORABLE RONALD L. ELLIS
                 UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14   For the Plaintiffs:        DAVID SHONE, ESQ.

15


16
     For the Defendants:        BRIAN A. HILL, ESQ.
17                              Miller & Chevalier, Chtd.
                                655 15th Street, North West #900
18                              Washington, DC 20005

19

20   Court Transcriber:         SHARI RIEMER
                                TypeWrite Word Processing Service
21                              211 N. Milton Road
                                Saratoga Springs, NY 12866
22

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1    (Microphones 3 and 4 not working.)

2              THE CLERK: <u>Sokolow v. Palestine Liberation</u>

3    <u>Organization, et al.</u>

4              All counsel, please identify yourselves for the

5    record and please stand addressing the court.

6              MR. SHONE:  I'm David Shone, Your Honor, [inaudible]

7    representing the plaintiffs in this case.

8              MR. SOLOMON:  Aaron Solomon also representing

9    plaintiffs in this case.

10             MR. HILL:  Good morning, Your Honor. Brian Hill for

11   the PLO and the Palestinian Authority.

12             THE COURT: Good morning.  Most of the communications

13   that we've had recently have come from you, Mr. Hill.

14             MR. HILL: Yes, Your Honor.

15             THE COURT: I did not see anything from the plaintiffs

16   in response to Mr. Hill's request challenging certain things

17   that you've asked for.

18             MR. SHONE: If I may. David Shone.  Here's where we

19   stand on that.  We've been in touch with Mr. Hill by email in

20   the last day or so.  As the court is aware, three letters

21   addressing premotion conference at issue written on October 1st

22   [inaudible] Jewish holiday.  Then I'll skip ahead on who's

23   right and who's wrong about all [inaudible].

24             Mr. Hill has agreed that as to two of those letters,

25   that is the -- there's two letters dated October 1st.  Two of

3

1  those letters, one regarding the deposition of Ms. Alazeer

2  [Ph.], the other regarding answers to certain interrogatories

3  but they should be -- well, we can ask the court to defer those

4  to be able to respond and to take up the next conference which

5  frankly we would like to ask the court at the end to set the

6  next two to three weeks and the defendants would not oppose --

7  the defendants do not oppose deferring as to those two letters.

8       The third letter relates to damages depositions that

9  are ongoing.  Mr. Solomon is here to address orally to the

10  extent he can having received this October 1st letter.

11       Beyond that, Your Honor, if I could by way of

12  housekeeping I think my understanding I suppose what we're here

13  for would be then the status of course and then there was an

14  August 14th letter outstanding that Mr. Hill's colleague wrote

15  asking for a premotion conference and I understood that that

16  would be the subject of this conference.

17       So to sum it up, my understanding is subject to the

18  conference would be a status.  The August 14th letter from Mr.

19  Roshan, Mr. Hill's partner, and the letter -- I'm going to call

20  it the Bluestein letter of October 1st.

21       THE COURT: I should also tell you that we never think

22  of things in terms of dates.  We think of it in terms of

23  issues.

24       MR. SHONE: I see.

25       THE COURT: So you referred to something as a letter

4

1   from Mr. Hill with a date.  I have no idea what that's about.

2          MR. SHONE: I'm sorry, Your Honor.  What I mean to say

3   is the letter regarding initial disclosures.

4          THE COURT: Now I know what you're talking about.

5          MR. SHONE: Yes, Your Honor.

6          MR. HILL: Your Honor, it's obviously up to you which

7   of these four you want to take up today.  By way of explanation

8   of the letter about the interrogatories I sent on Monday was a

9   correction to a letter I did send last week on September 26th.

10  So it was not as last minute as it may have sounded from the

11  plaintiff's presentation.  The letter I sent on Monday

12  regarding the deposition I sent because the plaintiffs had

13  noticed that deposition for yesterday and I was obviously

14  required to seek relief before the date in order to avoid a

15  sanction under Rule 37.

16         But Mr. Shone is correct.  I'm willing to wait on

17  those two if Your Honor prefers although I will say with

18  respect to the interrogatories I'm not sure what the plaintiffs

19  are going to say since you've already ruled that what they did

20  with respect to these interrogatories, namely naming the United

21  States, Israel, the Palestinian Authority and the PLO as

22  persons with knowledge is improper and you previously ruled

23  it's not only improper but sanctionable but I'm happy to wait

24  for them to respond in writing and Your Honor to rule on that.

25         THE COURT: Well, let me recap then.  There's the

1  issue of the initial disclosures.  There's the issue of Alazeer

2  deposition.  There's the issue of the document requests.

3          MR. SHONE: Yes, Your Honor.

4          THE COURT: And the issue of the interrogatories.  The

5  ones that you are suggesting that we defer are the deposition

6  and the interrogatories.

7          MR. SHONE: Yes, Your Honor.

8          THE COURT: Why exactly are we deferring those though?

9  I mean for example, the interrogatories, I think Mr. Hill is

10  right that we've been talking about this for months.  Is there

11  something new that you're going to be adding?

12          MR. SHONE: Well, Your Honor, let me say this.  First

13  of all, I think that it was a cheap shot at the end there.  We

14  have exchanged emails yesterday which we took great exception

15  to Mr. Hill having been told that the offices were closed for

16  the Jewish holidays. [Inaudible] written a letter with a cover

17  that says I understand your office is closed, here's a

18  correction of my letter.  In his original letter he advised the

19  court that he had not received certain information and he

20  corrected it to say that he had received certain information.

21          But, in any event, at the end -- I'm new to this

22  case.  At the end he wrote alternatively if you want to ask

23  Judge Ellis to defer consideration of the latter two letters,

24  these two issues, until you respond to my [inaudible]

25  subsequent hearing is held I will not oppose that request which

6

1    I then responded to him saying fine, that sounds like a good

2    way to proceed in this.  We'll be prepared then to discuss

3    tomorrow the following issues, and not these two issues.  So

4    there is the person who provided the answers to them isn't here

5    today, Mr. Tolchin, and he would respond as to why he believes

6    what was provided in response to his supplemental

7    interrogatories was sufficient and that the back up documents

8    indicate why these people -- although it sounds funny on the

9    face of it I suppose to say well, they threw out the name Colin

10   Powell or General Zhing but that's very general.

11            The information comes from news reports indicating

12   they had knowledge of those things.  This whole issue frankly

13   is turned on its head.  This arose as the court is aware

14   because plaintiffs asked defendants who had knowledge that

15   these people were asked to be arrested and so on and were

16   released.  Defendants then turned around and said well, even

17   the plaintiffs know about it.  The court has been all through

18   this I know.

19            The point is the person who provided these answers

20   based on the agreement I thought we had isn't even here today

21   to respond to that since it was suggested we defer on these

22   issues.  That's why I think from my perspective that's a cheap

23   shot to say oh --

24            THE COURT: Well, forgetting Mr. Hill, even if Mr.

25   Hill had not mentioned it I'm still wondering why this issue

7

1   keeps coming back.  You're going off on him saying it's a cheap

2   shot and I'm reading Mr. Hill's letter and I'm saying this is

3   deja vu.  I still don't know why this issue is -- I keep

4   thinking I've decided it.  I keep thinking I've made myself

5   clear to the plaintiffs and yet I keep getting letters saying

6   that we're still getting these kinds of responses.  I wouldn't

7   use the term funny.  I just find it far fetched that we're

8   going to have anybody like Colin Powell as a witness.

9            What I told Mr. Tolchin is this.  What I really want

10  to find out is who are likely to be witnesses so that we can

11  determine what discovery needs to be done and naming Colin

12  Powell and the President and anybody else in Washington is not

13  really going to get us anywhere.  What I really wanted to know

14  if there was anybody that the plaintiffs knew specifically that

15  had information other than people whose names might pop up on a

16  news site or a website or something.  That's not helping me.

17  That's what this is all about.  I know you weren't here for

18  that but that's what this is all about.  This is not whether or

19  not in theory Colin Powell might know something, or he might.

20  Colin Powell I don't think is going to be at this trial and if

21  -- and everybody could read those articles and they can find it

22  out.

23            What I wanted from Mr. Tolchin is who do you know,

24  not who did you read about.  Did you read a novel and somebody

25  mentioned someone's name. Did you go to the Drudge Report or

8

1  did you go to Huffington Report and you said oh, these people

2  might know something. I said give me the names.  Because if

3  you're not going to give me the names of people that you know

4  it's not going to advance the cause anyway.  So that's why I'm

5  saying what -- if there's no additional information about Colin

6  Powell other than that he read his name some place then this is

7  not helping.  If that's all it is then  e should be finished

8  with this.

9          MR. SHONE: Judge, if I may, two things in response.

10  Number one, my understanding is that since that last proceeding

11  names have been provided.  To the extent that plaintiffs are

12  aware of those names, and of course if the court said at the

13  status conference that's all the plaintiffs can -- give the

14  names of those people it is aware of who made those requests,

15  that's number one.  So I wouldn't say we're nowhere past where

16  we were at the last status conference.  Names have been

17  provided.

18          Number two, these -- Colin Powell or General Zhing,

19  it's really not just a matter of [inaudible].  These people,

20  General Zhing for example, our information is may [inaudible]

21  specific face to face or in writing requests for the arrest of

22  these people. [Inaudible] people been arrested and released

23  that's part of this pattern or practice that's alleged in the

24  case.

25          But let me say this, Judge.  If I could let us have

9

1  then -- well, by the end of this week to file a written

2  response to this letter.

3          THE COURT: The end of this week is tomorrow.

4          MR. SHONE: I guess it will have to be by tomorrow.

5  Monday and Tuesday is the Jewish holiday and all work

6  [inaudible].  So if the court can give us to the end of that

7  next week that would be great.  If the court --

8          THE COURT: This is not a question of speed.  I just

9  want to know if there's -- what you've just argued about Colin

10 Powell, at some point the plaintiffs need to delineate who they

11 know -- and I got into this discussion with Mr. Tolchin.  If

12 you want to know what's happening in my chambers you can name

13 everybody in the court because they've all been there but

14 that's not really helpful.  So if -- I don't know how you or

15 anyone on the plaintiff's side wanted to demarcate this or --

16 maybe you need to come up with categories.  These are people

17 that we know because we've had conversations with.  These are

18 people we read about.  These are people who we saw reports

19 about so that either I or defendants can make a determination

20 about -- because ultimately what someone in discovery needs to

21 be able to determine is whether or not they want to depose or

22 seek any further discovery on it.

23          If you tell me that you got a report that Colin

24 Powell was informed about this I might say well, I'm probably

25 not going to pursue a deposition of Colin Powell.  On the other

1  hand if you say you talked to Colin Powell and he told you that

2  that would be a different story.

3          So if you understand that what I'm concerned about is

4  that I be able to make a determination, the defendants be able

5  to make a determination about whether or not there's a need to

6  pursue additional discovery about the names that are on the

7  list.  Otherwise you could list everybody in the State

8  Department and what would be the point of that.

9          I'll give you until Thursday of next week.  I rather

10 have a good response than just a pro forma response.  As with

11 the depositions of Alazeer, also until Thursday.

12         Now, as to the initial disclosures.  You're going to

13 talk about that.

14         MR. SHONE: I was going to talk about [inaudible].

15         THE COURT: Either of you can go first.

16         MR. SHONE: The court has read Mr. Roshan letter and

17 its complaint appears to be that they're getting too much by

18 the way of initial disclosures or they're not specific enough

19 or something like that.  To be perfectly frank, I mean I've

20 read each of the cases he cited.  The only [inaudible] but I do

21 need to say this.  The only line in any of those cases that's

22 relevant to any of this is in the Norman case which is from the

23 Northern District of Illinois in which the judge says such

24 motions are a waste of her time.  What's going on here?  We can

25 take each of the nine subjects that Mr. Roshan has identified

1    as objecting to and by the way the relief he seeks is we should

2    be barred from using any of these things that we've disclosed

3    in our initial disclosures.  We can go through each one of

4    those and I'm happy to do it but that's --

5           THE COURT: No need to do that.

6           MR. SHONE: The process here is called discovery.  If

7    they get an initial disclosure and they have some question

8    about what is its relevance beyond what's clear from its

9    relevance from the face of it [inaudible] document here that

10   lays out the whole course of the [inaudible] from their

11   perspective a document they complain about and we provided to

12   them in Arabic that is a long document.  These are two

13   [inaudible] major documents they generated which show a pattern

14   or practice.  Serve contention interrogatories if they're

15   appropriate if you want to know why did we give you this

16   disclosure on your manual [inaudible]. Why did we give you a

17   disclosure on how to use terms like resistance when we mean

18   terrorism, that sort of thing.  That's what some of these

19   documents are.

20          There's absolutely no basis for this motion.  As I

21   said, I'm prepared to go through each item.  It doesn't take a

22   long time.

23          THE COURT: Any response, Mr. Hill?

24          MR. HILL: Well, Your Honor, this is akin to what

25   we're dealing with with the interrogatories.  My issue as you

12

1    have identified it is what if any additional discovery do I

2    need to do about these things and I just don't know in all

3    honesty what additional discovery I need to do about number 7,

4    the testimony of Eric Von Dam Bodluinsky at the Nerenberg

5    trials from January 7, 1946.  It seems to me to be completely

6    irrelevant as does an order about -- from the Israeli defense

7    forces closing a territory in October of 2000.

8            To Mr. Shone's point, we sent Mr. Tolchin an email

9    about this saying what is the relevance of these materials to

10   this case, will you tell us, and we got no response.  So from

11   our perspective this is another hide the ball gambit where I

12   get literally over 5,000 pages of foreign language material

13   including everything produced in a lawsuit in Israel and I'm

14   told that that's something they might use in this case.  I

15   don't know where to start and I don't think I should have to

16   incur the expense of having all this translated so that I can

17   try and devise where to start.

18           THE COURT: Well, these are one of those cases where I

19   agree with both of you actually.  First of all, I'm not sure

20   what any of this ever makes it the trial in this case but if

21   all this boils down as to whether or not the defendants need to

22   file formal interrogatories asking why these things are

23   important then I don't think that should have been necessary.

24           But as to initial disclosures I think they're

25   different from the interrogatories which you ask are -- or the

13

1  request for production that you ask because then you're seeking

2  specific information to help you make a determination.

3  Sometimes people think things are important in their initial

4  disclosures which go way beyond what the other party thinks

5  would be important and they can't see why it's important.

6  Sometimes they might not want to disclose why they think it's

7  important.

8         But I think the appropriate thing is to ask why they

9  think it's important and have the issue joined that way through

10  contention.  Mr. Hill says that he asked Mr. Tolchin these

11  questions and he didn't get a response.  I know a lot of things

12  have been done between the parties that have not been reduced

13  to formal discovery requests but I do think that he's entitled

14  to know to the extent you can articulate it why these things

15  are relevant so he can make a determination about what he wants

16  to do afterwards.  As to how you do that, as I said, I don't --

17  I'm not arguing that it be done formally but he says he's asked

18  informally and I do expect parties to cooperate.  So if Mr.

19  Tolchin got an email he should have at least responded to it.

20         MR. SHONE: Judge, we're talking here about for

21  example documents from September of 2011 [inaudible] initial

22  disclosure that they're raising now as an issue.  We're talking

23  here about two documents --

24         THE COURT: Before you continue, make sure you know

25  all of the chronology because I don't know when it was first

14

 1  raised to Mr. Tolchin.  There are a lot of things that happened

 2  in this case.  So I would suggest before anybody starts any

 3  argument make sure you've got all the facts straight.  I don't

 4  want to have this kind of a discussion where then Mr. Hill says

 5  oh, no, I sent him an email here, an email there.  All I'm

 6  telling you is what I want.

 7          MR. SHONE: Yes, Your Honor.

 8          THE COURT: You sit down with Mr. Hill or whoever it

 9  is and you make sure that however it gets done he gets the

10  information because people are asking for information.

11  Discovery is not over and let's see if we can work that one

12  out.

13          MR. SHONE: Your Honor, I just want to make one thing

14  [inaudible].  Some of these documents are documents which they

15  should have provided to us in response to discovery requests.

16  These are basic documents, a guideline -- a guide book for the

17  [inaudible].

18          THE COURT: Before you continue with that, what you're

19  arguing is that what you think is relevant ought to be what

20  they think is relevant and that doesn't work for either side.

21  Your theory of the case and their theory of the defense may be

22  totally different.  They don't agree with some of your basic

23  premises about what the relationship is between them and some

24  of the other people you're alleging they're tied to.  So to say

25  that they should know that they're relevant -- I mean they make

1  the determination what they think is relevant to their defense.

2  You make what you think is relevant to your prosecution.  They

3  may not coincide.  Indeed I think it's likely that you're

4  sitting there saying all these things are obviously relevant to

5  your claim and he's sitting there thinking I can't see why

6  they're relevant.  You see where we might have a disagreement

7  here.  Whether or not they think it's relevant may depend on

8  why you think it's relevant.

9          Let's agree to disagree on this one and -- clearly

10  sometimes there are things in cases where everybody agrees and

11  if you transgress there the court may say how could you not.

12  In this one I can't say by looking at this that obviously this

13  is relevant but I can't say obviously it's not either.  That's

14  why I try to let the parties have that discussion so that when

15  they join the issue I'll have something to work with.

16          MR. SHONE: I understand, Your Honor.  The irony here

17  of course is we're trying to avoid surprise.  That's the point.

18  At least our philosophy as to initial disclosures.  That's why

19  we keep supplementing so they don't say down the road well, we

20  had no notice of this.

21          The second part of it is they just don't seem to

22  [inaudible] these things apply not just to trial evidence but

23  also the rule is clear, 2000 amendments are clear to any

24  [inaudible] why is it relevant that area A was closed.  They

25  should -- again, there was a whole dispute that went on in the

1  case about wether the lawyers could travel to [inaudible] in

2  area A.  So we filed with them the closure notice.  Area A is

3  relevant to a pretrial issue that came up.  That's all.  It's

4  not -- but the sanction they seek that these things should be

5  barred from evidence at this stage.  Anyway, [inaudible]

6  anybody.  I hear everything the court said.

7           THE COURT: Also understand that I'm not talking

8  sanctions here.  So don't defend something I haven't put -- I

9  haven't put on the table.  The lawyers put a lot of things on

10 the table.  If I were talking sanctions we'd be having a

11 different conversation here.

12          MR. SHONE: I understand that.

13          THE COURT: But I do think he's entitled to know what

14 it is and until you prove yourself non cooperative I expect

15 you'll have a conversation with him and he may still disagree

16 with you after you tell him why you think it's important but

17 that's okay.

18          MR. HILL: Your Honor, just for mechanics.  Could we

19 get a date by which the plaintiffs will provide the information

20 about how they believe these particular ones that we complained

21 about are pertinent or which --

22          THE COURT: Given what Mr. Shone has said what I

23 expect you to do is I expect you to have a conversation and you

24 can actually use my jury room right after we finish this and

25 then you can send me a letter and tell me what you've come up

1  with.  A little cooperation.  And then that will be it.  If you

2  can't agree then each of you can send me a letter and I'll

3  choose who's most reasonable.  But I expect by Thursday that

4  you'll either send me a letter agreeing when this is done or

5  each of you will send me a letter saying that the other side is

6  off the wall.

7          MR. SHONE: Judge, if I might.  I know [inaudible]

8  letter.  I'm happy if the court prefers to write them a letter

9  by next Thursday addressing each issue.  Frankly, I don't know

10  they're required to do it but I do know they're required to now

11  because the court has said we are.

12          THE COURT: Not all the lawyers recognize that by the

13  way.

14          MR. SHONE: I recognize that fully, Your Honor, and I

15  recognize the consequences if I don't recognize it.  I'm

16  prepared to write a letter by next Thursday addressing very

17  simply each one of these nine items and saying why they were

18  provided to them if that's -- that way Mr. Roshan will have it

19  and there won't be any problems in translation, that sort of

20  thing.

21          THE COURT: I still invite you to use my jury room so

22  that we don't have any misunderstandings.

23          MR. HILL: It sounds like we've got an understanding

24  here, Your Honor.  Just so we're clear though, would Your Honor

25  direct that this not only include sort of a general discussion

1  about why the material is relevant but whether particualr

2  portions of it are particularly relevant because I do have

3  5,000 pages of foreign language material here and it would be

4  helpful to know generally what the theory of relevance is but

5  obviously if there are particular things relevant to the seven

6  acts in this case for example that would be of great relevance

7  to me in determining what if any additional discovery --

8         THE COURT: I would put it to you this way.  You're

9  having conversations with each other but you have to understand

10  that at some point if you have a disagreement you have to

11  satisfy me.  If I don't find the recitation informative to me

12  then that will be the determinative factor.  Now, I don't know

13  how much detail, Mr. Shone, you want to get into but ultimately

14  it -- think of you're trying to satisfy me, not Mr. Hill.

15         MR. SHONE: Yes, Your Honor.

16         THE COURT: I think that's a good way to go about

17  doing it.

18         Now, as to Bluestein --

19         MR. SHONE: May I be seated, Your Honor?

20         THE COURT: Yes.   You got the floor, Counsel.

21         MR. SHONE: Well, I note that [inaudible] request

22  [inaudible] speak initially that's fine but --

23         THE COURT: But he's already put it in writing.

24         MR. SHONE: Okay.  We contend a whole bunch of damages

25  [inaudible] we've done [inaudible] so far [inaudible] at the

1  end of two weeks from now and [inaudible] things from people's

2  teenage diaries to [inaudible] copies of things [inaudible] he

3  has to videotapes of NBC --

4         THE COURT: But specifically what about this issue?

5         MR. SHONE: Specifically we have to talk about

6  [inaudible] court to determine whether or not this is even

7  relevant, whether or not this is ultimately [inaudible].  Ben

8  was a drug addict.  He was.  He was addicted to cocaine for

9  years.  He got suspended from Dickinson because he was addicted

10  to cocaine.  He got suspended from Brandise because he had an

11  incident with a woman which -- it wasn't rape as Mr. Hill

12  describes.  Rather, it was mixed signals which led to a sexual

13  assault charge and probation.  This is all true.  He cleaned

14  his life up.  He went to Israel.  He was studying at Duke

15  University in a career path to become an addiction counselor

16  and that is where he ultimately was killed.

17         So his only claim here is for [inaudible].  Mr. Hill

18  says all of this relevant.  All of this is -- this sexual

19  assault charge and the details about his addiction is all

20  relevant [inaudible] center.  I say no because if you look at

21  the case law he cited which is a [inaudible] hodgepodge of

22  [inaudible] and jurisprudence from across the 50 states -- the

23  prior criminal convictions have to be probative of the

24  occupational category that [inaudible] enters.  Let's say he

25  was a FBI agent, right, he was using drugs and have convictions

1  he's not going to be an FBI agent.  Let's say he didn't know

2  what he was going to do.  Then it might also be relevant

3  [inaudible] cited but every one of these cases is factually

4  distinct from what is going on here.

5          What Mr. Hill wants to do --

6          THE COURT: So what was he going to be?

7          MR. SHONE: Well, he was going to be an addiction

8  counselor and most addiction counselors are former addicts

9  because they understand the mechanics of addiction.  So what he

10 was going to do really had something to do with what he had

11 overcome and I think that opening up his entire mental health

12 records when his mental health is not otherwise at issue for

13 treatment which predates his death --

14         THE COURT: So what kind of damages are you claiming?

15         MR. SHONE: Future loss of income.

16         THE COURT: That's it?

17         MR. SHONE: That's the estate's claim.  So I don't

18 think it's fair to open up his entire psychological treatment

19 for the period of before his death.  I think it's fair.  His

20 prior [inaudible] records [inaudible] I don't think it's fair

21 that -- I think the document requests for the universities

22 belies what Mr. Hill is trying to do.  What he's basically

23 asking for -- he doesn't care about how well he did in school

24 or what his study [inaudible] which might actually be relevant

25 to future earnings.  What he cares about is why was he

21

1  suspended for the drugs, what was going on with the girl

2  because what he wants to do is put the character of a man on

3  trial, a man who's deceased because of the actions of his

4  clients we allege and who is unable to respond.  I would posit

5  that under the Federal Rules of Evidence if Mr. Bluestein were

6  alive and testifying at trial his prior criminal conviction

7  wouldn't even be admissible under the Federal Rules of

8  Evidence.

9          THE COURT: So what kind of documents are you really

10  looking for?

11          MR. HILL: Here's the issue from my perspective, Your

12  Honor.  I've got contradictory testimony about the nature of

13  this criminal charge.  I have some evidence that it's a rape.

14  I have some suggestion that it's a sexual assault.  I think --

15          THE COURT: Well, even if that's true that doesn't

16  address the way he's raising the issue.

17          MR. SHONE: Fair point on that, Your Honor.

18          MR. HILL: So I've got some evidence of this already

19  but what I don't have are the underlying documents and the

20  family didn't recollect the forum so I can't use them as a

21  matter of public record.

22          THE COURT: Right.  But the point that the plaintiff

23  is making is this is future earnings, that in his past how will

24  -- assuming that you look at the record and it shows that

25  there's this whether uncertainty about whether or not it was a

22

1  rape or not, how is that going to affect the future earnings in

2  your theory?

3          MR. HILL: Well, I don't know if he was convicted of

4  rape.  I don't know what he was convicted of and that could

5  certainly affect his future employment.  I don't know the

6  extent of his drug use or whether he had other issues.  That

7  could affect his future employment.

8          THE COURT: Let me just get this straight.  We are

9  talking about future earnings.  How much future earnings are we

10 talking about about a drug counselor?  Am I missing something

11 here?

12         MR. HILL: The claim in the initial disclosures is $10

13 million, Your Honor.

14         MR. SHONE: I think it's up to expert disclosures,

15 experts to determine how much a drug counselor would make over

16 his career.  I will note that when I was in law school

17 [inaudible] Westlaw and [inaudible] basically look up criminal

18 convictions for almost anybody in the state.  So for Mr. Hill

19 to sit here and say he can't --

20         THE COURT: That's not what I'm asking.  If you're

21 claiming $10 million and you're saying lost earnings, I'm

22 sitting here going that seems to be a lot for a counselor and

23 maybe I suggested the wrong thing for my kids to go into.  How

24 many judges do you think will earn $10 million?

25         MR. SHONE: I would posit that I think that the scope

1    of the [inaudible] might be a little bit overbroad but I don't

2    think that changes whether or not this material is relevant to

3    figuring out if he would have got the job and the career path

4    he was on -- let's keep in mind, the suspensions, for example,

5    didn't affect his ability to do his education.  He was in the

6    university studying --

7            THE COURT: I appreciate what you've just said but

8    what we're dealing with is that when we have these really large

9    numbers for damages and that's why when you said it was just

10   for lost wages for the family I say well, how much could this

11   be.  Now either the answers about damages were unduly inflated

12   or there's something remiss here.

13           I agree with your major premise that if all that's at

14   issue here is lost wages and the issue then for the plaintiff -

15   - for the defendant is how were these lost wages calculated and

16   -- because until I know that frankly I don't know whether or

17   not some question about his --

18           MR. HILL: If Your Honor is having deja vu it's not

19   just you because one of the first issues we raised at the

20   beginning of discovery was the failure of the plaintiffs to

21   provide damages calculations and you remember we went around on

22   this two or three times where I was pressing to get what in my

23   view Rule 26(a)(1) requires which is in fact a numerical

24   calculation of the economic damage is was claimed here.  The

25   plaintiffs -- Mr. Tolchin is not here but if he was would

24

1  acknowledge resisted that claiming that they needed an expert

2  witness in order to calculate that.

3          Now, the way that we've agreed to proceed with

4  discovery is to have fact discovery run through December 21st

5  and have expert discovery run after that period of time.  I

6  think I am entitled now under Rule 26 to get any evidence that

7  could relate to this claim for economic damages or could lead

8  to admissible evidence that would relate to that claim, and

9  that would include materials that my expert witness could

10  potentially rely on to rebut the forthcoming expert opinion of

11  what this man's lifetime earnings would have been had he lived.

12  That's relevant to this.  Whether it's admissible at trial is a

13  different issue.

14          THE COURT: Here's the deal I'll make for you since

15  the plaintiffs are making this -- they were required to provide

16  for you all of the evidence that you would need factually.  If

17  there's anything in their expert report which I find would have

18  been relevant -- would be relevant to the claim that you're now

19  raising in terms of his criminal record or anything in his past

20  if you can make that argument then we get to strike the --

21          MR. SHONE: The objection.

22          THE COURT: The expert report on that.

23          MR. HILL: Just so I'm understanding Your Honor's

24  ruling.  What you're saying is if the forthcoming expert report

25  calculates the decedent's future earnings and his criminal

1  history, his drug addiction would be relevant to that report

2  you will strike the report for failure to produce these

3  materials?

4          THE COURT: If you can make that case, yes.  I don't

5  know -- I haven't seen the expert report but the expert report

6  -- I don't see it getting up to $10 million but it's --

7          MR. SHONE: I don't [inaudible].

8          THE COURT: If the expert report just looks at drug

9  counselors and says okay, he was here and he would have been

10 there and he would have been there obviously plaintiff's

11 counsel is right.  He's not going to be a FBI agent.  If he

12 relies on something where a criminal record would have been a

13 problem then the plaintiffs are forewarned.

14         MR. SHONE: I understand, Your Honor.

15         THE COURT: I don't know what the expert -- what

16 assumption he's going to make but if he makes any assumption

17 that would have been undermined by a criminal record then that

18 gets tossed.

19         MR. HILL: I'm just thinking, Your Honor.

20         MR. SHONE: They're [inaudible] of his drug addiction

21 [inaudible] forthcoming discovery on -- from the family members

22 about the scope --

23         THE COURT: I'm assuming that the expert is going to

24 have this information.

25         MR. SHONE: Right.

1          MR. HILL: I guess what I'm getting here is a bit of a

2     dodge.   Now I'm getting you've already got some information.

3     Therefore, we're going to have an expert -- what I'm saying is

4     I want all of the information about these subjects because I

5     think it is relevant and if Your Honor is saying look, if it in

6     any way my expert could attack the expert conclusions of their

7     proponent by saying this man had a criminal history, this man

8     had a sex charge, this man had a drug addiction, you're not

9     going to allow them [inaudible].

10          THE COURT: I didn't say if any way that your expert

11    can do it.   I'm not tying myself to anybody's expert.

12          MR. HILL: Your Honor has obviously ruled.  I guess

13    I'm in a little bit of a box because now I'm going to be

14    arguing in the future about information I'm not going to have

15    and how it is relevant to opinions that people are going to

16    render.   I don't know what I'm going to find.

17          THE COURT: You're right.  I've ruled.  Let's leave it

18    at that.   I don't -- but if we're talking about lost wages, and

19    it's true that sometimes a criminal record could be an issue

20    when you're dealing with lost wages.  I have not seen or heard

21    anything which suggests that that particular fact will be

22    inappropriately used by some expert but we all know that he's

23    been arrested.  We all know that he's got a record.  I don't

24    know knowing the intimate details of it is going to make a

25    difference at a trial because I don't see that being the issue

27

1 at trial.

2          MR. HILL: Your Honor, may I raise one other request

3 specifically?

4          THE COURT: Yes.

5          MR. HILL: That's for the name of this witness who the

6 family could only recall the first name of.  May I have

7 documents if they have them that identifies this person's name

8 because this person may have knowledge independent of what's in

9 the record so far because the record as it's developed

10 indicates that he was with the decedent on at least one

11 occasion when they were arrested together and that he sold the

12 decedent drugs.  This is obviously someone who has firsthand

13 knowledge of the decedent's criminal activity and may be aware

14 of other things that are not yet in the record and if I don't

15 get that --

16          THE COURT: What's your objection to that?

17          MR. SHONE: A) My clients are looking for whether or

18 not they have their son -- their dead decedent's son drug

19 dealer's home number or address.  So that's one issue my

20 clients may not have that information.  B) I think again it's

21 getting at information which is [inaudible] admissible.

22          THE COURT: But there's a -- understand, there's a

23 difference between him going into the record and trying to find

24 something in the record that somebody else might have missed.

25 I think that's going to be problematic at a trial.

28

 1          MR. SHONE: Right.

 2          THE COURT: On the other hand if you have an actual

 3    witness which I don't know what they're going to say about this

 4    person they may know something about him which might undermine

 5    any claim that he has.

 6          MR. SHONE: That's possible, Your Honor.  I do not

 7    know if my client has that information.  I will respond to it.

 8          THE COURT: If you can't give him stuff -- information

 9    you don't have but if you have it I'm ordering that you give it

10    to him.

11          MR. SHONE: Okay.

12          THE COURT: I think that finishes us.

13          MR. SHONE: Thank you, Your Honor.  If I could.  Could

14    I just ask that we set a conference [inaudible] we'd like to

15    ask that we have a conference within -- sometime around three

16    weeks.  I ask for three weeks.  I know we're going to be before

17    Judge Daniels on November 1st on another completely unrelated

18    issue.  I don't suggest the court should in any way take my

19    problems into account.  I do fly in especially for these

20    things.

21          THE COURT: Lucky you.

22          MR. SHONE: Is it possible to do it on the 1st?

23          THE COURT: What time is your conference with Judge

24    Daniels?

25          MR. SHONE: We don't have a time.  He set it for

1  October 31st on the -- at 10:00 but the other side [inaudible]

2  asked that it be moved to the 1st.  I responded to them that's

3  fine with me.  We don't have the time yet.

4           THE COURT: First of all, what does our 1st look like,

5  Michael?

6           THE CLERK: We have -- [inaudible].

7           THE COURT: We could?

8           THE CLERK: Yes.

9           THE COURT: Well, 10:00 is a possibility.  Let us know

10 when Judge Daniels gives you a time.  Actually I wouldn't mind

11 having it the same time when you're here with Judge Daniels.

12          MR. SHONE: Can I call chambers and just tell chambers

13 what time [inaudible]?

14          THE COURT: Sure.  Anything else?

15          MR. HILL: So tentatively we'll be back before Your

16 Honor on November 1st on the two issues that were deferred

17 today?

18          THE COURT: That's correct.

19          MR. SHONE: And the other issues that might be raised

20 before then.

21          THE COURT: You mean you can come up with other issues

22 between now and then?  We'll see you then.

23          MR. SHONE: Thank you, Your Honor.

24          MR. HILL: Thank you, Your Honor.

25                          * * * * *

30

1      I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                         _____

6                                   Shari Riemer

7  Dated:   October 12, 2012