<u>**Israel Defense Forces**</u>

In the Military Court                    Court Case ........../04
of J U D E A                             Prosecution Case 1247/04
Before a Panel of Judges                 Indictment Details Case 1329/04 Hebron
                                         Special Missions Squad Jerusalem 9891/04
                                         Moriya 178694/04

In the trial between:

**The Military Prosecutor**

**The Prosecutor**

–   Vs. –

**Ahmed Salah Ahmed Salah**
(In custody since 8 March 2004)
<u>ID No. 901739656, DOB 23 January 1977, resident of Bethlehem</u>

**The Accused**


**INDICTMENT**

The abovementioned Accused is hereby charged with perpetrating the following offenses:

<u>**First Count:**</u>
<u>**Nature of the Offense:**</u>     Manufacturing a bomb, offense pursuant to section
                                     53(a)(3) of the Order Concerning Security Instructions
                                     (Judea and Samaria) (No. 378), 1970.
<u>**Details of the Offense:**</u>   During the course of March 2002 or thereabout, the
                                     abovementioned Accused, acting in the region,
                                     manufactured a bomb without permission issued by or
                                     on behalf of a military commander.
                                     Namely, during said time, A.E.-Rahman (Zaher) Yusef
                                     A.E.-Rahman Mekadad (hereinafter: **A.E.-Rahman
                                     Mekadad**) approached the military activist Ahmed
                                     Mugrabi, asking him for explosive devices. Ahmed
                                     Mugrabi referred A.E.-Rahman Mekadad to the
                                     Accused, saying that the Accused will provide him with
                                     some TATP [an explosive a.k.a. UM-ELABED] for the
                                     manufacture of explosive devices.
                                     A.E.-Rahman Mekadad met the Accused and received
                                     from him 4 kilos of TATP explosive. A.E.-Rahman
                                     Mekadad used part of the quantity received for
                                     manufacturing 4 pipe-shaped explosive devices, and
                                     kept the remainder quantity.

**Second Count:**

| | |
|---|---|
| **Nature of the offense:** | Membership in an illegal association, offense under Regulation 85(1)(a) and 84(1)(a) of the Defense(Emergency) Regulations, 1945. |
| **Details of the offense:** | Since the beginning of 2004 or thereabout, the abovementioned Accused was a member of an illegal association in the region, namely: During said time, the abovementioned Accused was a member of a military squad of the Al-Aqsa Martyrs' Brigade. The Accused was a member of this organization up until his arrest. |

**Counts 3-4 omitted from this translation**

**Fifth Count: (Indictment Details 09891/04 Special Missions Squad, Jerusalem)**

**Nature of the offense**: Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968.

**Details of the offense**: The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, i.e.:

1. On or about the beginning of January 2004, A.E.-Rahman Mekadad contacted the military activist Ahmed Mugrabi, asking him to introduce him to military activists who would assist him in manufacturing explosives and explosive devices in order to perpetrate attacks against Israeli targets and in seeking suicide bombers who would perpetrate such attacks.

   Accordingly, Ahmed Mugrabi contacted the military activist Ali Abu-Halil, and asked him to meet someone (who was to be A.E.-Rahman Mekadad), in order to assist him with his military activities. Ali Abu-Halil met A.E.-Rahman Mekadad according to the instructions of Ahmed Mugrabi, and during their meeting, A.E.-Rahman Mekadad asked Ali Abu-Halil to help him manufacture explosives. The latter agreed.

2. About that time, the military activist Hilmi A.E.-Karim Mohammad Hammash (hereinafter: "**Hilmi Hammash**") approached Ali Jaara, and offering to introduce him to a military activist who would send him on a suicide attack mission. Ali Jaara (hereinafter: the "**Suicide Bomber**") agreed.

   Accordingly, Hilmi Hammash introduced the **abovementioned Accused** to the Suicide Bomber, and during that meeting the Accused queried the Suicide

Bomber in order to assess the extent of his willingness to perpetrate a suicide attack.

During said meeting, the Suicide Bomber expressed his willingness to perpetrate the attack. Accordingly, the Accused asked the Suicide Bomber to prepare for the suicide attack.

3. About that time, Ali Abu-Halil approached A.E.-Rahman Mekadad, advising him that he managed to obtain 2 kilos of TATP as well as acetone. Ali Abu-Halil seized this opportunity for delivering to A.E.-Rahman Mekadad the TATP, and the latter asked him to deliver the acetone as well as another chemical – Hydrogen Peroxide, both of which are used in the manufacture of explosives.

4. The next day, A.E.-Rahman Mekadad met with Ali Abu-Halil, who gave him 36 liters of acetone and 10 liters of hydrogen peroxide; A.E.-Rahman Mekadad told Ali Abu-Halil that he intended to use those substances to manufacture explosive for use by the Suicide Bomber in the perpetration of a suicide attack; Ali Abu-Halil seized this opportunity to explain to A.E.-Rahman Mekadad the method of mixing said substances in order to manufacture explosives. A.E.-Rahman Mekadad cached the substances in his home.

5. Several days later, the Accused came to the home of A.E.-Rahman Mekadad, and told him that he has found a person who was ready to perpetrate a suicide attack.

On or about 28 January 2004, the Accused approached A.E.-Rahman Mekadad yet again, requesting him to urgently prepare an explosive bag using the explosives at his disposal, as he intended to send the Suicide Bomber on his suicide attack mission.

Thereupon, A.E.-Rahman Mekadad asked the Accused to purchase for him materials needed for preparing the explosive bag [which included, among other things, a bag, batteries, a switch, etc.]. The Accused agreed and, together with Hilmi Hammash, bought everything requested on behalf of A.E.-Rahman Mekadad, in order for the latter to prepare the explosive bag at the earliest. The Accused and Hilmi Hammash had, furthermore, tried to get a hold of a video camera in order to film the Suicide Bomber before setting out on his mission, but failing that, they decided to send the Suicide Bomber on his suicide attack mission without filming him by video camera.

6. On or about that time, the Accused approached the military activist Mohammad Issa Mehmed Marali (hereinafter: **"Mohammad Marali"**), requesting him to drive the Suicide Bomber, armed with the explosive belt, into Israeli territory where he was to perpetrate the attack. Mohammad Marali agreed.
Accordingly, the Accused introduced Mohammad Marali and the Suicide Bomber to one another.

7. Concurrent with the aforesaid, A.E.-Rahman Mekadad manufactured an additional batch of the TATP explosive, weighing 12 kilos, which he used for preparing the explosive bag for the perpetration of the suicide attack.

   A.E.-Rahman Mekadad asked the Accused to come over to receive the explosive bag.

8. A few minutes later, the Accused arrived at the home of A.E.-Rahman Mekadad, together with the Suicide Bomber and Mohammad Marali; Mohammad Marali waited outside while the Suicide Bomber and the Accused entered the home of A.E.-Rahman Mekadad. The latter explained to the Accused and to the Suicide Bomber how to activate the explosive bag, and gave them the explosive bag to be used in the perpetration of the suicide attack, which was intended to cause the death of Israeli civilians.

9. About that time, the Accused, Mohammad Marali and the Suicide Bomber set out, headed to Bethlehem University; there, the Accused neutralized the safety mechanism of the explosive device, in order to prepare it for operation. Then, the Accused left Mohammad Marali with the Suicide Bomber.

10. Later on, on or about 6:30 Mohammad Marali drove the Suicide Bomber heading to Jerusalem via the village of Vulja, until they arrived nearby the Malha mall, in Jerusalem. There, Mohammad Marali parted with the Suicide Bomber, and returned to the region.

11. About that time, the Suicide Bomber ascended an Egged bus, line 19, headed to Paris Square; when the bus reached the corner of Arlozorov and Azza streets, at about 8:45 the Suicide Bomber detonated the explosive bag which he carried, with the intention of causing the death of a large number of people. Consequently, the explosive bag exploded inside the bus (hereinafter: the **"Suicide Attack"**).

12. The Suicide Attack caused the death of **Abraham Belahsan, z"l.**

**Sixth Count:**        <u>(Indictment Detail 09891/04 Special Missions Squd Jerusalem)</u>

<u>**Nature of the offense:**</u> Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968.

<u>**Details of the offense:**</u> The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely:

The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mrs. Hannah Bonder, z"l**.

**Seventh Count:**     <u>(Indictment Detail 09891/04 Special Missions Squd Jerusalem)</u>

<u>**Nature of the offense:**</u> Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968.

<u>**Details of the offense:**</u> The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely:

The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mrs. Anat Darom, z"l**.

**Eighth Count:**       <u>(Indictment Detail 09891/04 Special Missions Squd Jerusalem)</u>

<u>**Nature of the offense:**</u> Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968.

<u>**Details of the offense:**</u> The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely:

The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set

forth in the Fourth Indictment Detail, resulted in the death of **Mr. Yehezkel Goldberg, z"l**.

| | |
|---|---|
| **Ninth Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely: |

The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mr. Valery Zadik Manbera, z"l**.

| | |
|---|---|
| **Tenth Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely: |

The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mr. Vioral Octavia Floresco, z"l**.

| | |
|---|---|
| **Eleventh Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely: |

The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set

forth in the Fourth Indictment Detail, resulted in the death of **Mrs. Roza Boneh, z"l**.

| | |
|---|---|
| **Twelfth Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely: |
| | The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mrs. Dana Itach, z"l**. |

| | |
|---|---|
| **Thirteenth Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely: |
| | The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mr. Roman Hundiashvilli, z"l**. |

| | |
|---|---|
| **fourteenth Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely: |
| | The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mr. Eli Zipora, z"l**. |

| | |
|---|---|
| **Fifteenth Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentionally causing death, offense pursuant to section 51 (a) and 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 14 and 2 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentionally causing the death of others, namely: |
| | The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the death of **Mrs. Natalia Gamril, z"l**. |

| | |
|---|---|
| **Sixteenth Count**: | **(Indictment Detail 09891/04 Special Missions Squd Jerusalem)** |
| **Nature of the offense**: | Intentional attempt of causing death, offense pursuant to section 51 (a) 7 (c) of the Order Concerning Security Instructions (Judea and Samaria) (No. 378), 1970; and sections 2, 14 and 19-20 of the Order Concerning Rules of Liability for Offense (Judea and Samaria) (No. 225), 1968. |
| **Details of the offense**: | The abovementioned Accused, acting within and outside of the region, was an accomplice on 29 January 2004, in intentional attempt of causing the death of others, i.e.: |
| | The Suicide Attack perpetrated by the Suicide Bomber Ali Jaara with the intention of causing the death of Israeli civilians, of which the Accused was an accomplice, as set forth in the Fourth Indictment Detail, resulted in the injury of 50 civilians in degrees of severe and light wounds heavy; and the death of the suicide. |

**Counts  Seventeen through Twenty five omitted**

<div dir="rtl">

צבא    הגנה    לישראל

| | |
|---|---|
| בבית המשפט הצבאי | תיק בימ"ש /04 |
| ב י ה ו ד ה | תיק תביעה 1247/04 |
| בפני         הרכב | תיק פ.א.   1329/04 חברון |
| | 9891/04 מתי"מ י-ם |
| | 178694/04 מוריה |

במשפט שבין :

התובע הצבאי

- המאשים -

- נ ג ד -

אחמד צלאח אחמד צלאח
(עצור מיום 8/3/04)
ת.ז. 901739656 יליד 23/1/77 מבית-לחם

- הנאשם -

## כתב אישום

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות :

**פרט ראשון** :

**מהות העבירה** : ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשי"ל – 1970.

**פרטי העבירה** : הנאשם הנ"ל, באזור, במהלך חודש מרץ 02' או בסמוך לכך, ייצר פצצה מבלי שהיה ברשותו היתר ממפקד-צבאי או מטעמו.

דהיינו, במועד הנ"ל, פנה ע"א-רחמאן (זאהר) יוסף ע"א-רחמאן מקדאד (להלן –
**ע"א-רחמאן מקדאד**) אל הפעיל הצבאי אחמד מוג'רבי וביקש ממנו מטעני חבלה.
אחמד מוג'רבי הפנה את ע"א-רחמאן מקדאד אל הנאשם ואמר לו כי הנאשם
ימסור לו חומר נפץ מסוג "אום-אלעבד" לייצור מטעני החבלה.

ע"א-רחמאן מקדאד נפגש עם הנאשם וקיבל ממנו 4 ק"ג חומר נפץ מסוג "אום-
אלעבד". ע"א-רחמאן מקדאד ייצר באמצעות חלק מהכמות שקיבל 4 מטעני
צינור, ואת יתר הכמות שמר.

</div>

<div dir="rtl">ת.ת. 366/04</div>

**פרט שני:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) ו- 84(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באזור, החל מתחילת שנת 04' או בסמוך לכך, היה חבר בהתאחדות בלתי מותרת, דהיינו:

במועד הנ"ל, היה הנאשם הנ"ל חבר בחוליה צבאית של ארגון גדודי חללי "אלאקצא".

חברותו של הנאשם בארגון נמשכה עד יום מעצרו.

**פרט שלישי:**

**מהות העבירה:** ירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, עבירה לפי תקנה 58(א) לתקנות ההגנה (שעת חירום), 1945; וסעיף 14 לצו לדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בתחילת שנת 04' או בסמוך לכך, היה שותף לירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, דהיינו:

במועד הנ"ל, יצא הנאשם הנ"ל יחד עם חברי חולייתו הצבאית אחמד תאופיק תאיה, ואיל חיליל פרג' וחלמי ע"א-כרים מוחמד המאש (להלן – **חלמי המאש**) שהיה חמוש ברובה קלצ'ניקוב גרימון יד וזאת ע"מ לבצע פיגוע ירי כנגד כוחות צה"ל בבסיס הצבאי של ה- D.C.O. כשהגיעו למקום ירדו הנאשם ואחמד תאיה מהרכב כשברשותם האמל"ח ע"מ לבצע את פיגוע הירי ואילו חלמי המאש וחברו ואיל פרג' נותרו ברכב.

כעבור מספר דקות ירו הנאשם וחברו לעבר כלי רכב; ואז-אז נמלטו חלמי המאש וחברו מהמקום לכיוון ביתו של הנאשם.

שם המתינו לחזרתו של הנאשם.

**פרט רביעי:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיפים 20-19, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בסוף שנת 03' או בסמוך לכך, היה שותף לניסיון גרימת מוות של אחרים בכוונה, דהיינו:

1. במועד הנ"ל, הציע הנאשם הנ"ל לע"א-רחמאן מקדאד לצאת עימו לבצע פיגוע ירי לעבר כלי רכב כלי רכב ישראליים. האחרון נענה בחיוב, ויצא יחד עם הנאשם וערך סיור מקדים במקום שאותו איתר הנאשם. הנאשם וע"א-רחמאן מקדאד הגיעו לאיזור בית-הספר "תליתא קומי" ומצאו כי מקום זה

2

ת.ת. 366/04

טוב לביצוע הפיגוע. הנאשם הורה לעי"א-רחמאן מקדאד לבצע במקום פיגוע
ירי יחד עם פעילים נוספים.

2. בסמוך לכך, ביקש עי"א-רחמאן מקדאד מהפעיל הצבאי עלי מחמד חמאד
אבו-הלאיל (להלן – **עלי אבו-הלאיל**) לצאת ולבצע סיור מקדים באיזור
בית-הספר "תלניתא קומי" וזאת מכוונן שמתוכנן פיגוע ירי באזור. עלי אבו-
הלאיל נענה בחיוב, ויצא בסמוך לשעה 2:00 למקום וזאת כדי לוודא שאין
מכשולים בדרך. בנוסף גייס עי"א-רחמאן מקדאד את עז-אלדין ח'אלד חסין
חמאמרה (המכונה עז-אלדין עליאן) (להלן – **עז-אלדין עליאן**) והפעיל
הצבאי אסמאעיל עי"א-רחמאן מחמד אלפראגיין (להלן – **אסמאעיל
אלפראגיין**) לביצוע יחד עימם את פיגוע הירי.

3. בסמוך לשעה 3:00, התקשר עלי אבו-הלאיל לעי"א-רחמאן מקדאד ועידכן
אותו כי אין מניעה לבצע את הפיגוע המתוכנן.

4. בהתאם לכך, יצא עי"א-רחמאן מקדאד כשהוא חמוש ברובה קלצ'ניקוב יחד
עם עז-אלדין עליאן שהיה חמוש ברובה M-16 ואסמאעיל אלפראגיין
כשהוא חמוש ברובה 16 – M לכיוון האיזור עי"מ לבצע את הפיגוע;
אסמאעיל אלפראגיין הסיע אותם ברכב שהביא.

5. כשהגיעו לאיזור המתוכנן, הורה עי"א-רחמאן לעלי אבו-הלאיל לחזור
לביתו, ועי"א-רחמאן מקדאד ועז-אלדין עליאן ארבו בסמוך למקום במרחק
20 מטר מהכביש לכלי רכב ישראליים שיעברו במקום. אסמאעיל
אלפראגיין נותר ברכב.

6. בסמוך לשעה 3:30, עבר במקום ג'יפ צבאי; או-אז פתחו עי"א-רחמאן
מקדאד וחברו באש לעבר הג'יפ.

7. הג'יפ המשיך בנסיעה, עי"א-רחמאן מקדאד וחברו נמלטו לכיוון הרכב בו
המתין להם אסמאעיל אלפראגיין, וביחד נמלטו מהמקום.

## פרט חמישי: (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשל"ו – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

1. בתחילת חודש ינואר 04' או בסמוך לכך, יצר עי"א-רחמאן מקדאד קשר עם
הפעיל הצבאי אחמד מוג'רבי וביקש ממנו כי יכיר לו פעילים צבאיים
שיעזרו לו בייצור חומרי נפץ ומטעני חבלה וזאת עי"מ לבצע פיגועים נגד
מטרות ישראליות, וכן איתור מתאבדים לצורך ביצוע פיגועי התאבדות.

ת.ת. 366/04

בהתאם לכך, יצר אחמד מוג'רבי קשר עם הפעיל הצבאי עלי אבו-הלאיל וביקש ממנו כי ייפגש עם פלוני (בכוונו לעי"א-רחמאן מקדאד) ע"מ לעזור לו בפעילותו הצבאית. עלי אבו-הלאיל נפגש עם ע"א-רחמאן מקדאד בהתאם להנחייתו של אחמד מוג'רבי, בפגישה ביקש ממנו ע"א-רחמאן מקדאד כי יעזור לו בייצור חומרי נפץ. הלה הסכים לכך.

2. בסמוך לכך פנה הפעיל הצבאי חלמי ע"א-כרים מחמד המאש (להלן – **חלמי המאש**) אל עלי ג'יאארה והציע לו להפגישו עם פעיל צבאי שישלח אותו לביצוע פיגוע התאבדות. עלי ג'יאארה (להלן – **המתאבד**) הביע נכונות לכך.

בהתאם לכך, הפגיש חלמי המאש את **הנאשם הנ"ל** עם המתאבד בפגישה שבמהלכה בירר הנאשם עם המתאבד את מידת נכונותו לבצע פיגוע התאבדות.

במהלך הפגישה הביע המתאבד נכונות לבצע את הפיגוע. בהתאם ביקש הנאשם מהמתאבד להתכונן לביצוע פיגוע ההתאבדות.

3. בסמוך לכך, פנה עלי אבו-הלאיל לעי"א-רחמאן מקדאד ועידכן אותו כי הצליח להשיג שני ק"ג חומר נפץ מסוג אום-אלעבד וכן חומר כימי מסוג אצטון. בהזדמנות זו העביר עלי אבו-הלאיל לעי"א-רחמאן מקדאד את חומר הנפץ מסוג אום-אלעבד, וע"א-רחמאן מקדאד ביקש ממנו כי יעביר אליו את האצטון ובנוסף חומר כימי מסוג מי-חמצן המשמשים לייצור חומר נפץ.

4. ביום שלמחרת, נפגש ע"א-רחמאן מקדאד עם עלי אבו-הלאיל וקיבל ממנו 36 ליטר של אצטון וכן 10 ליטר של מי-חמצן; ע"א-רחמאן מקדאד סיפר לעלי אבו-הלאיל כי בכוונתו להשתמש בחומרים אלה ע"מ לייצר חומר נפץ שישמש מתאבד בביצוע פיגוע התאבדות; בהזדמנות זו הסביר עלי אבו-הלאיל לעי"א-רחמאן מקדאד כיצד יש לערבב את החומרים כדי ליצור את חומר הנפץ. ע"א-רחמאן מקדאד הסתיר את החומרים בביתו.

5. כעבור מספר ימים הגיע הנאשם לביתו של ע"א-רחמאן מקדאד וסיפר לו כי איתר אדם המוכן לבצע פיגוע התאבדות.

ביום 28/1/04 או בסמוך לכך, פנה שוב הנאשם לעי"א-רחמאן מקדאד, וביקש ממנו כי יכין בדחיפות תיק נפץ באמצעות חומר הנפץ שברשותו וזאת מאחר ובכוונתו לשלוח את המתאבד לפיגוע ההתאבדות.

או-אז, ביקש ע"א-רחמאן מקדאד מהנאשם כי יקנה עבורו חומרים לייצור תיק הנפץ [שכללו בין היתר: תיק, סוללות, מפסק וכי'...]. הנאשם נענה בחיוב וקנה ביחד עם חלמי המאש עבור ע"א-רחמאן מקדאד את כל שנתבקש וזאת כדי שיוכל להכין את תיק הנפץ בהקדם האפשרי. בנוסף, ניסו הנאשם וחלמי המאש למצוא מצלמת וידאו ע"מ לצלם את המתאבד בטרם ביצוע הפיגוע, אולם לא הצליחו בכך – ולפיכך החליטו להוציא את המתאבד לביצוע הפיגוע מבלי לצלמו במצלמת וידאו.

<div align="center">4</div>

<div align="right">ת.ת. 366/04</div>

6. בסמוך לכך, פנה הנאשם אל הפעיל הצבאי מוחמד עיסא מחמד מעאלי
(להלן – **מוחמד מעאלי**) וביקש ממנו להוביל מתאבד החמוש בחגורת נפֶץ
לביצוע פיגוע התאבדות בתוך שטח מדינת ישראל. מוחמד מעאלי הביע
נכונות לכך.

בהתאם לכך, הפגיש הנאשם את מוחמד מעאלי עם המתאבד.

7. במקביל לאמור לעיל, ייצר ע"י א-רחמאן מקדאד כמות נוספת של חומר הנפֶץ
"אום אלעבד" במשקל 12 ק"ג, וייצר באמצעותו תיק נפֶץ לביצוע פיגוע
התאבדות.

ע"י א-רחמאן מקדאד ביקש מהנאשם לבוא ע"מ לקחת את תיק הנפֶץ.

8. כעבור מספר דקות הגיע הנאשם יחד עם המתאבד ומוחמד מעאלי לביתו
של ע"י א-רחמאן מקדאד; מוחמד מעאלי המתין בחוץ ואילו המתאבד
והנאשם נכנסו לביתו של ע"י א-רחמאן מקדאד. ע"י א-רחמאן מקדאד הסביר
לנאשם ולמתאבד כיצד להפעיל את תיק הנפֶץ והעביר להם את תיק הנפֶץ
ע"מ שזה ישמש בפיגוע התאבדות וזאת בכוונה לגרום למותם של אזרחים
ישראליים.

9. בסמוך לכך, יצאו הנאשם, מוחמד מעאלי והמתאבד לכיוון האוניברסיטה
בבית-לחם; שם נטרל הנאשם את מנגנון האבטחה של מטען החבלה ע"מ
להכין אותו לפעולה. לאחר-מכן עזב הנאשם את מוחמד מעאלי עם
המתאבד.

10. לאחר-מכן בסמוך לשעה 6:30, הוביל מוחמד מעאלי את המתאבד לכיוון
ירושלים דרך כפר וולגיה עד שהגיעו סמוך לקניון מלחה בירושלים. שם
נפרד מוחמד מעאלי מהמתאבד וחזר לאיזור.

11. בסמוך לכך, עלה המתאבד לאוטובוס אגד בקו 19 שנסע לכיוון כיכר פריז;
כשהגיע האוטובוס לפינת רחובות ארלוזורוב ועזה, סמוך לשעה 8:45,
הפעיל המתאבד את תיק הנפֶץ שהחזיק עליו בכוונה לגרום למותם של
מספר רב של בני אדם. כתוצאה מכך, התפוצץ תיק הנפֶץ בתוך האוטובוס
(להלן – **פיגוע ההתאבדות**).

12. כתוצאה מפיגוע ההתאבדות נגרם מותו של **אברהם בלחסן ז"ל**.

**פרט שישי :(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאיזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

5

ת.ת. 366/04

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג׳עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של **גב׳ חנה בונדר ז״ל.**

**פרט שביעי: (פ״א 09891/04 מת״מ ירושלים)**

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף (א)51 ו- (ג)7 לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968.

**פרטי העבירה** : הנאשם הנ״ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג׳עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של **גב׳ ענת דרום ז״ל.**

**פרט שמיני: (פ״א 09891/04 מת״מ ירושלים)**

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף (א)51 ו- (ג)7 לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968.

**פרטי העבירה** : הנאשם הנ״ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג׳עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של **מר יחזקאל גולדברג ז״ל.**

ת.ת. 366/04

<div dir="rtl">

**פרט תשיעי: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של **מר ולדי צדיק מנברה ז"ל.**

**פרט עשירי: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של **מר ויורל אוקטביא פלורסקו ז"ל.**

**פרט אחד עשר: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה לו כאמור בפרט האישום הרביעי – נגרם מותה של **גב' רוזה בונה ז"ל.**

</div>

**פרט שנים עשר** :(פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של <u>**גב' דנה איטח ז"ל**</u>.

**פרט שלושה עשר** :(פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של <u>**מר רומן חונדיאשוויילי ז"ל**</u>.

**פרט ארבעה עשר** :(פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של <u>**מר אלי צפורה ז"ל**</u>.

ת.ת. 366/04.

<u>**פרט חמישה עשר** (פ"א 09891/04 מת"מ ירושלים)</u>

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של **גב' נטליה גמריל ז"ל**.

<u>**פרט שישה עשר** (פ"א 09891/04 מת"מ ירושלים)</u>

**מהות העבירה** : ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיפים 20-19, 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לניסיון גרימת מוות של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות ; וכן מת המחבל המתאבד.

<u>**פרט שבעה עשר** (פ"א 17869/04 תחנת מוריה)</u>

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

1.  מספר ימים לפני המועד הנ"ל, תיכננו עז"א-רחמאן מקדאד והפעיל הצבאי עז-אלדין עליאן לבצע פיגוע התאבדות וזאת במטרה לגרום למותם של אזרחים ישראליים.

    עז-אלדין עליאן הודיע לעז"א-רחמאן מקדאד כי איתר אדם בשם מוחמד זעול (להלן – **המתאבד**) המוכן לבצע פיגוע התאבדות.

2.  ביום 17/2/04 או בסמוך לכך, נפגש עז-אלדין עליאן עם המתאבד בכפר חוסאן, במהלך הפגישה הסכים המתאבד לבצע את פיגוע ההתאבדות המתוכנן. בסיומה סיכם עז-אלדין עליאן עם המתאבד להיפגש עימו בסמוך לכנסיית המולד בבית-לחם ביום 21/2/04 בשעה 16:00.

3. עז-אלדין עלזיאן עידכן את ע״א-רחמאן מקדאד בדבר תוכן הפגישה ובדבר הסכמתו של המתאבד לבצע את פיגוע ההתאבדות; בהתאם לכך, יצר ע״א-רחמאן מקדאד קשר עם אחיו הפעיל הצבאי מאהר מקדאד שגר בעזה, עידכן אותו בדבר התכנון לבצע פיגוע ההתאבדות, וביקש ממנו סכום של 3,000 ₪ ע״מ להכין את תיק הנפץ לפיגוע ההתאבדות וכן לקנות מצלמת וידאו לצורך צילום המתאבד (וזאת בהתאם לבקשתו של מאהר מקדאד לצלם את המתאבד בטרם ביצוע פיגוע ההתאבדות).

מאהר מקדאד נענה בחיוב לבקשתו של ע״א-רחמאן מקדאד והעביר לחשבון בבנק הערבי בבית-לחם, שרשום על שמו של ע״א-רחמאן מקדאד, סכום של 3,000 ₪ לצורך מימון פיגוע ההתאבדות, וזאת כפי שסוכם עם ע״א-רחמאן מקדאד.

4. ביום 18/2/04 או בסמוך לכך, ניגש ע״א-רחמאן מקדאד לבנק הערבי בבית-לחם ומשך את סכום הכסף שהועבר אליו ממאהר מקדאד.

ע״א-רחמאן מקדאד רכש באמצעות חלק מסכום הכסף מצלמת וידאו ומצלמה רגילה לצורך צילום המתאבד. כמו-כן העביר ע״א-רחמאן מקדאד לעלי אבו-הלאיל **ולנאשם** סכום כסף וזאת ע״מ שירכשו חומרים לצורך הכנת תיק הנפץ לפיגוע ההתאבדות.

5. בהתאם, עלי אבו-הלאיל קיבל מהפעיל הצבאי חאתם זכריא מחמוד אלאעורג׳ (להלן – **חאתם אלאעורג׳**) ארבעה ליטר של חומר כימי מסוג מי-חמצן ומהפעיל הצבאי אחמד עודה 40 ליטר חומר כימי מסוג אצטון; עלי אבו-הלאיל העביר לע״א-רחמאן מקדאד 12 ליטר חומר כימי מסוג מי-חמצן ו- 12 ליטר חומר כימי מסוג אצטון.

6. ביום 20/2/04 יצר ע״א-רחמאן מקדאד יחד עם עלי אבו-הלאיל ועז-אלדין עליאן בביתו של ע״א-רחמאן מקדאד את חומר הנפץ מסוג ״אום-אלעבד״ המיועד לביצוע פיגוע ההתאבדות. ע״א-רחמאן מקדאד הסביר לעלי אבו-הלאיל כיצד להכין קופסה מעץ לתיק הנפץ, וזה הכין את הקופסה כפי שהסביר לו ע״א-רחמאן מקדאד.

7. בסמוך לכך, ביקש ע״א-רחמאן מקדאד מהנאשם לבדוק עם מוחמד מעאלי אם הוא מוכן להוביל את המתאבד לביצוע פיגוע ההתאבדות. בהתאם לכך, נפגש הנאשם עם מוחמד מעאלי וביקש ממנו כי יוביל מתאבד נוסף לביצוע פיגוע התאבדות בתוך שטח מדינת ישראל. מוחמד מעאלי נענה בחיוב לכך.

באותו יום בשעות הערב, הגיע הנאשם לביתו של ע״א-רחמאן מקדאד כאשר ברשותו כרוז שעליו כתוב ״חוליית אימן גיודה של ארגון גדודי חללי אלאקצא׳״; הנאשם העביר את הכרוז לע״א-רחמאן מקדאד וזאת כדי שישמש כתמונת רקע בעת צילומו של המתאבד – וכמו-כן עידכן את ע״א-רחמאן מקדאד כי מוחמד מעאלי מוכן להוביל את המתאבד.

8. למחרת בבוקר, העביר הנאשם ל ע"א-רחמאן מקדאד מסמרי ברזל, וזאת
ע"מ שהאאחרון ידביק אותם לתיק הנפץ וזאת כדי להגביר ולהחמיר את
הפגיעות בעת פיצוץ מטען הנפץ. ע"א-רחמאן מקדאד קיבל את מסמרי
הברזל והדביק אותם לתיק הנפץ.

באותו יום, בסמוך לשעה 16:10, הגיע עז-אלדין עליאן מלווה במתאבד
לביתו של ע"א-רחמאן מקדאד ע"מ להכין אותו לקראת היציאה לפיגוע.

בנוסף, הביא הנאשם לע"א-רחמאן מקדאד רובה קלצ'ניקוב ורימון יד ע"מ
שע"א-רחמאן מקדאד יצלם את המתאבד כשהוא מחזיק ברשותו אמל"ח
זה.

9. ע"א-רחמאן מקדאד ועז-אלדין עליאן נתנו למתאבד אוכל ובגדים חדשים.
לאחר שסעדו ביחד עם המתאבד את ארוחת הערב כתב עז-אלדין עליאן
צוואה עבור המתאבד; ע"א-רחמאן מקדאד ועז-אלדין עליאן צילמו את
המתאבד כשהוא מקריא את הצוואה שלו. כשסיימו לצלם את המתאבד
החל ע"א-רחמאן מקדאד לייצר את תיק הנפץ שישמש בביצוע פיגוע
ההתאבדות. סמוך לשעה 5:30 בבוקר של היום שלמחרת סיים ע"א-רחמאן
מקדאד לייצר את תיק הנפץ.

10. כשסיים לייצר את תיק הנפץ, כאמור ביום 22/4/04, התקשר ע"א-רחמאן
מקדאד אל הנאשם, הודיע לו כי הכל מוכן וביקש ממנו לבוא ע"מ להוציא
את המתאבד לביצוע פיגוע ההתאבדות.

בהתאם לכך, יצר הנאשם קשר עם מוחמד מעאלי וביקש ממנו כי ייפגש
עימו. שניהם נפגשו וביחד נסעו לכיוון ביתו של ע"א-רחמאן מקדאד שבו
הסתתר המתאבד. הנאשם ביקש ממוחמד מעאלי כי ימתין בסמוך למקום
הנמצא במרכז בית-לחם.

11. בסמוך לשעה 6:00 הגיע הנאשם לביתו של ע"א-רחמאן מקדאד, לקח
מע"א-רחמאן מקדאד את תיק הנפץ ויצא ביחד עם המתאבד לכיוון מרכז
בית-לחם; שם הפגיש את המתאבד עם מוחמד מעאלי. משם יצא המתאבד
יחד עם מוחמד מעאלי לכיוון ירושלים כאשר הם עוברים דרך כפר הוולוגי'ה
וזאת ע"מ לבצע את פיגוע ההתאבדות המתוכנן.

12. סמוך לשעה 6:15 נפש הנאשם עם ע"א-רחמאן מקדאד ועידכן אותו כי
המתאבד יצא עם המוביל לביצוע פיגוע ההתאבדות. בהתאם לכך, עידכן
ע"א-רחמאן מקדאד את אחיו מאהר מוקדאד בדבר יציאתו של המתאבד
לביצוע פיגוע ההתאבדות.

13. מוחמד מעאלי הוביל את המתאבד למקום הנמצא בסמוך לקניון מלחה
בירושלים; שם נפרד ממנו וחזר לאיזור.

14. בסמוך לאחר-מכן עלה המתאבד לאוטובוס אגד בקו 14 שנסע מכיוון דניה
לכיוון גן הפעמון, כשברשותו תיק הנפץ. כשנעצר האוטובוס באחד

הרמזורים הפעיל המתאבד את תיק הנפץ בכוונה לגרום למותם של מספר רב של בני אדם, כתוצאה מכך התפוצץ תיק הנפץ בתוך האוטובוס (להלן – **פיגוע ההתאבדות**).

15. כתוצאה מפיגוע ההתאבדות נגרם מותה של **גב' יפה בן שימול ז"ל**.

**פרט שמונה עשר: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נגרם מותו של **מר יובל אוזנה ז"ל**.

**פרט תשעה עשר: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נגרם מותו של **מר רחמים דוגה ז"ל**.

**פרט עשרים: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של **מר יהודה חיים ז"ל**.

**פרט עשרים ואחד: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של **מר אילן אביסדריס ז"ל**.

**פרט עשרים ושנים: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של **מר בניה יונתן צוקרמן ז"ל**.

ת.ת. 366/04

**פרט עשרים ושלושה: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נגרם מותו של **מר אזולאי ליאור ז"ל**.

**פרט עשרים וארבעה: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נגרם מותו של **מר נתנאל חבשוש ז"ל**.

**פרט עשרים וחמישה: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה :** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיפים 20-19, 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לניסיון גרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות; וכן מת המחבל המתאבד.