UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MARK I. SOKOLOW, et al.,                          :      04 Civ. 00397(GBD)(RLE)
                Plaintiffs,           :
      -against-                                    :      ECF CASE
                                                          :
PALESTINE LIBERATION ORGANIZATION, et al.,  :
                Defendants.          :
------------------------------------------------------------------------x

# REPLY ON OBJECTIONS OF THE BRITISH BROADCASTING CORPORATION TO SEPTEMBER 6, 2012 MEMORANDUM OPINION & ORDER OF MAGISTRATE JUDGE ELLIS DENYING ITS MOTION TO QUASH SUBPOENA AND <u>PARTIALLY GRANTING PLAINTIFFS' CROSS MOTION TO COMPEL</u>

          MILLER KORZENIK SOMMERS LLP
          488 Madison Avenue Suite 1120
          New York, New York 10022-5702
          (212) 752-9200
          lsommers@mkslex.com
          Attorneys for the British Broadcasting Corporation

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** .............................................................................................................................. 3

    **I.**    **FOREIGN WITNESS AFFIDAVITS AND UK-BASED DOCUMENTS WERE IMPROPERLY COMPELLED** ....................................... 3

        **A.**    **The Court Lacks Power to Compel Foreign Affidavits** .............................. 3

        **B.**    **BBC's UK-Situated Documents Are Subject to Comity Concerns** ........... 5

    **II.**    **THE BBC'S JOURNALIST PRIVILEGE WAS NOT OVERCOME** ................. 6

        **A.**    **The BBC Has A Qualified Privilege** .............................................................. 6

        **B.**    **Plaintiffs Never Made Any Showing To Overcome the BBC Privilege** .... 7

            1.    Plaintiffs Did Not Satisfy The Likely Relevance Standard, Which May Have Been Informed By Improper *Ex Parte* Representations.... 8

            2.    Plaintiffs Did Not Satisfy Their Burden of Showing No Alternative Sources ................................................................................ 9

    **III.**    **PLAINTIFFS FAIL TO SHOW ADMISSIBILITY** ............................................. 11

**CONCLUSION** ......................................................................................................................... 12

**REPLY ON OBJECTIONS OF THE BRITISH BROADCASTING CORPORATION TO SEPTEMBER 6, 2012 MEMORANDUM OPINION & ORDER OF MAGISTRATE JUDGE ELLIS DENYING ITS MOTION TO QUASH SUBPOENA AND PARTIALLY GRANTING PLAINTIFFS' CROSS MOTION TO COMPEL**

The British Broadcasting Corporation ("the BBC") submits this reply primarily to address new matter and misstatements of law and fact in Plaintiffs' Response (Dkt No 263)("Pl.") to the Objections of the BBC to the Sept. 6 Order of Magistrate Judge Ellis (Dkt. No. 255)("BBC Obj").

Plaintiffs flatly misrepresent the subpoena proceedings in the unrelated case Saperstein v. Palestinian Authority, 09-mc-00619 (SLT)(ALC) (E.D.N.Y), which, among other things, (i) were not delayed by the BBC, (ii) resulted *only* in then-Magistrate Judge Carter *quashing* the Subpoena served on the BBC, and (iii) *did not compel the BBC* to produce *any* documents or testimony. 2010 U.S. Dist. LEXIS 143465 (E.D.N.Y. Dec. 16, 2010). The so-called "decision" to which Plaintiffs repeatedly and improperly refer (and repeatedly misrepresent) was non-final, erroneous, stayed and then *vacated*. More significantly, having been vacated, it is *legally non-existent*.[1] Neither the BBC Program, nor any other documents were produced by the BBC "in accordance with" it. Pl. 2.

Indeed, Magistrate Judge Orenstein in addressing Plaintiffs' First Subpoena on the BBC *rejected* Plaintiffs' attempt, as here, to misuse that vacated decision to the BBC's detriment. In re British Broadcasting Corporation (Sokolow v. PLO), No: 1:11-mc-00547-NGG-JO (E.D.N.Y.), Dkt Nos. 3, 4, 5, 6, 7, and Order entered 8/2/11. See also App. 26 (¶¶11-12), 35. Without addressing their numerous erroneous references to it, Plaintiffs' misuse of it here should also be rebuffed.

Likewise improper is Plaintiffs' transparent effort to seek reversal of at least *three* rulings of Magistrate Judge Ellis: (i) that BBC witnesses cannot be compelled to testify at a deposition under Rule 45 (App. 6; Compare Pl 9, 24, 26-27), (ii) that the BBC has a qualified journalist privilege in

---

[1] See, e.g., ATSI Communications, Inc. v. Shaar Fund, Ltd. 547 F.3d 109, 113 n.5 (2d Cir. 2008) ("[V]acatur does have the effect, in a concrete and practical way, of removing [vacated decisions] from the reservoir of legal thought upon which the bench and bar can subsequently draw."); Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 970 F.2d 1138, 1146 (2d Cir. 1992), aff'd, 510 U.S. 86 (1993)("It is well-settled in this circuit that a vacated order has no collateral estoppel effect").

1

the first instance (App.5; Compare Pl. 13) and (iii) the partial denial of Plaintiffs' motion to compel, and partial grant of the BBC's motion to quash, with respect to the BBC Program (App. 2, 4, 7; Compare Pl. 2,13 & n. 1, n 7). Regardless of how Plaintiffs portray their arguments on these issues, they urge affirmative relief from the Sept. 6 Order, but filed *no* timely objections to afford the BBC a full and fair opportunity to contest them. Plaintiffs should be barred from doing so now under the guise of a response to the BBC's Objections. As Rule 72(a) makes clear, "A party may not assign as error a defect in the order not timely objected to." Plaintiffs should not be permitted to do so by calling alleged "error" by another name.

As shown, Plaintiffs fail to support the Sept. 6 Order's clearly erroneous rulings:

- they offer no authority under Rule 45 or otherwise that would permit the Court the power to order foreign affidavits to be created by foreign witnesses not subject to jurisdiction here;
- they offer no authority that overcomes Rule 45 and comity concerns to permit the compelled production of UK- situated and controlled documents;
- they do not dispute the two-prong showing they must have made to overcome the BBC's journalist privilege, or the prejudice to BBC, particularly in its war and conflict reporting, and chilling effect on the critical public interest, of the compelled disclosure;
- they concede they do not know what is in the Outtakes, thereby contradicting the "likely relevance" found; indeed, their initial disclosures, which *do not mention* the BBC or its interviewees as knowledgeable witnesses, belie Plaintiffs' claim that the BBC footage is the "most compelling evidence" of the links they seek to establish;
- they do not dispute that (i) Zubaidi was in the physical custody of the PA for most of this year and (ii) Abu Rumaileh is an officer of Fatah, a PLO faction and (iii) thus controlled by Defendants; or (iv) Plaintiffs have access to numerous alternate sources for the links they seek to prove, thereby contradicting the ruling that they met their burden on alternate sources to overcome the BBC's privilege;
- they fail to cite any authority for the unprecedented and improper burden imposed on the BBC to detail burdensomeness of production in order to prevail on its journalist privilege.

As shown, the Sept. 6 Order was clearly erroneous insofar as it denied the BBC's Motion to Quash the Plaintiffs' Subpoena and granted Plaintiff's cross-Motion to Compel. It should be reversed in those respects and the Subpoena should be quashed in its entirety.

2

**ARGUMENT**

**I.  FOREIGN WITNESS AFFIDAVITS AND UK-BASED DOCUMENTS WERE IMPROPERLY COMPELLED**

**A**. **The Court Lacks Power to Compel Foreign Affidavits**.  There is no showing that the UK-based BBC witnesses, compelled to create U.K. affidavits, are subject to jurisdiction here. In no case cited by Plaintiffs (Pl. 23) has a court resolved the territorial restrictions by modifying a subpoena to require the creation of *foreign* discovery by *foreign individuals not* subject to the Court's jurisdiction – even personnel of a subpoenaed non-party company. Thus, in, Davis SR Aviation LLP v. Rolls-Royce Deutschland LTD & Co. KG, 2011 WL 5999332 (W.D. TX Nov. 30, 2011), the 100-mile rule was not mentioned or in issue, and the declarations ordered were in Texas from personnel at Texas companies. And in Estate of Yaron Ungar, 451 F. Supp. 2d 607 (S.D.N.Y. 2006) ("Ungar"), the court made clear: "The chosen procedure recognizes that the non-party witnesses [individuals directed to answer information subpoenas] *are in fact subject to the jurisdiction* of the court by virtue of having been properly served." (emphasis added). [2]

Plaintiffs erroneously focus on jurisdiction over the BBC as the subpoenaed witness in their effort to circumvent Rule 45's 100-mile limitation.  But Rule 45's territorial restriction targets the location of the *testifying individual at the subpoenaed company*.  See BBC Obj. 10, 13 & n.9. [3]

---

[2] Nor could the Court could compel a deposition in London. See BBC Obj. 10-11. Plaintiffs' authority (Pl. 23-24) does not suggest otherwise. Unger doubted the power of the Court "to direct non-party witnesses to appear for deposition in a foreign country" (Id. at 612); Matthias Jans & Assocs. Ltd v. Dropic, 2001 WL 1661473 (W.D. Mich 2001), moved the deposition in the *same district* as the Court; and Comm-Tract Corp. v Northern Telecom, Inc., 168 F.R.D. 4 (D. Mass. 1996) (Pl. 23) was noted, but *rejected* in In re Application for Order, 2002 WL 1870084 at *3 (S.D.N.Y. Aug 14, 2002), which also *doubted* that the Court had that such power and *quashed rather than modified the subpoena*, upon considering "international comity."

[3] See also Stanford v. Kuwait Airlines Corp., 1987 WL 26829, at *3 (S.D.N.Y. Nov. 25, 1987)(approved in Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56, 62 (S.D.N.Y. 1998))(subpoena served on a corporation through NY office quashed for lack of knowledgeable *witness* within 100 miles); W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC, 2010 WL 181088, *2 (D. Del. January 19, 2010) (subpoena on corporation served through in-state agent quashed as employees outside 100-miles); 1920 Enters. v. Hartford Steam Boiler Inspection, 2007 WL 1521019 at *2 (E.D. La May 22, 2007)(subpoena on corporation served through secretary of state quashed under the 100-mile restriction).

3

Even Magistrate Judge Ellis agreed on this issue (App. 6). [4] Even so, Plaintiffs miss the point of NML Capital, LTD. v. Republic of Arg., 2011 U.S. Dist. LEXIS 99502, 2011 WL 3897828 (S.D.N.Y. Sept. 2, 2011) (see BBC Obj. 11). That case, like others cited by the BBC (Obj. 10-12) undisputedly holds that the Court lacks the power under Rule 45 to modify a subpoena to compel foreign discovery *even from a witness over whom it has jurisdiction* – and it was that witness who was subpoenaed for discovery in NML.  The Sept. 6 Order thus cannot compel the creation of foreign discovery from the BBC (simply because it is subject to jurisdiction), and *certainly* cannot compel it from BBC's U.K. personnel over whom jurisdiction is lacking. Moreover, Plaintiffs do not refute that considerations of comity militate against compelling the creation of foreign affidavits for use here without complying with foreign laws and procedures. See BBC Obj. 12 and n.11; See also In re Application for Order, supra 2002 WL 1870084 at *3 (quashing subpoena based on "international comity considerations.")(Pl. 23-24)

     Plaintiffs also are mistaken in contending that under Rule 30(b)(6), the BBC should be required to "create" a domestic witness to testify here (Pl. 25 n.13, 26-27) –  an argument that Magistrate Judge Ellis properly rejected (App 6). Plaintiffs cannot seek to reverse that rejection now, as it failed to timely object to it. Fed. R. Civ. P. 72(a).  Even so, "[a]ny contention that a subpoena served pursuant to Rule 30(b)(6) need not comply with the requirements of Rule 45(c) would fly in the face of the intent of Rule 45([c]) which is to 'protect *nonparty* witnesses from being inconvenienced by being compelled to travel inordinate distances to have their depositions taken.'" Price Waterhouse LLP v. First American Corp., supra, 182 F.R.D. at 62 (citation omitted)(emphasis added). See also Cates v. LTV Aerospace Corp., 480 F.2d 620, 623-24 (5th Cir. 1973); Stanford v. Kuwait Airlines Corp, supra, 1987 WL 26829, at *3. Rule 45's territorial restrictions for non-parties simply trump Rule 30(b)(6).  Indeed, there is nothing "absurd" about

---

[4] In Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 218 F.R.D. 423 (D.Del. 2003), cited by Plaintiffs (Pl. 25), it was not in issue and the Court did not hold otherwise in quashing the Subpoena.

protecting foreign flesh-and-blood witnesses from burdens of testifying (in person or by creating affidavits) for a non-party corporation, particularly when foreign laws are implicated. BBC Obj 12. [5]

Moreover, there is no showing, as Plaintiffs contend, that the BBC tried to "thwart" deposition subpoenas or that it could "just as easily designate a witness in New York as in London." Pl. 24, 27 and n. 13. Non-party BBC showed otherwise, and Plaintiffs' subpoena cannot and should not compel its foreign personnel to testify, or create foreign testimonial affidavits for use, here.

**B. BBC's UK-Situated Documents Are Subject to Comity Concerns.** Plaintiffs disregard their own subpoena in arguing that the subpoenaed documents are not an "adjunct" to a deposition. Plaintiffs served a "Subpoena to Testify at a Deposition in a Civil Case" (App. 14-18), not a Subpoena Duces Tecum. As Rule 45 precludes a deposition, it also precludes any accompanying UK- situated document production. See BBC Obj. 13. Plaintiffs do not dispute *any* of the BBC's authority that supports this conclusion.

Plaintiffs argue that considerations of comity must yield because this case asserts Anti-Terrorism Act ("ATA") claims that are in the national, as well as personal, interest. Pl. 4-8, 12. This is a significant concern, but not one of Plaintiffs' cases on this issue compelled Rule 45 disclosure from a *non-party* news organization – as opposed to seeking discovery from a *party defendant directly charged with aiding terrorists*. When dealing with nonparties under Rule 45, the cases are to the contrary. See, e.g., Estate of Kleiman v. Palestinian Authority, 2012 WL 1744737 (D.D.C. Apr. 1, 2012)(App. 168-71)(in ATA case, subpoena on non-party BBC for documents and testimony quashed under Rule 45); In re Subpoena to Goldberg (Saperstein v. Palestinian Authority), 693 F.Supp.2d 81, 83 n.2 and 3 (D.D.C. 2010) (quashing subpoena in underlying ATA case seeking testimony of non-party journalist concerning his foreign reporting). See BBC Obj. 22.

---

[5] Plaintiffs' cases (Pl. 26-27) fail to address Rule 30(b)(6) in the context of a Rule 45 non-party witness, but rather all concern depositions of corporate *parties, which* are *expressly excluded* from Rule 45's 100-mile rule. Fed. R. Civ. P. 45(c)(3)(A)(ii).

5

It makes no difference to the comity considerations here that the BBC is subject to jurisdiction. See BBC Obj. 13. Plaintiffs' cases (Pl. 22) do not hold to the contrary. Thus, in Tiffany (NJ) LLC v. Qi Andrew, 2011 WL 3135850, 2011 U.S. Dist. LEXIS 80677 (S.D.N.Y. July 25, 2011), as a matter of comity, the Court *did not compel production.* That should be the result here. And although the Court ordered disclosure in First American Corp. v. Price Waterhouse LLP, 154 F.3d 16 (2d Cir. 1998), it did so because (i) a British court had already held that British interests in enforcing its laws gave way to U.S. public and financial interests in uncovering the alleged fraud, and (ii) the documents sought could not be sufficiently identified to comply with the Hague Convention. Here there are no comparable circumstances, and no reason why the Hague Convention could not have been utilized. Id. at 22. See e.g., Laker Airways Ltd. v. Pan Am World Airways, 607 F. Supp. 324, 326 (S.D.N.Y. 1985)(disclosure not ordered where "...service of the subpoenas in New York is a transparent attempt to circumvent the Hague Convention...").

Lastly, Plaintiffs contend that the BBC should produce the BBC Program, even though the Program was the subject of the "denied, in part" portion of Plaintiffs' cross motion in Magistrate Judge Ellis' decision (App.2) and Plaintiffs filed no timely objection thereto as required by Rule 72(a). Plaintiffs "black is white" attempt to argue that Magistrate Judge Ellis was mistaken in his assumption and actually meant to order the production of that Program (Pl. 2 & n.2, 13) should be rejected.[6] That Program should not be compelled now.

## II. THE BBC'S JOURNALIST PRIVILEGE WAS NOT OVERCOME

**A. The BBC Has A Qualified Privilege.** Plaintiffs' claim that the BBC cannot invoke journalist privilege should be rejected out of hand. (Pl. 3, 13) It is incorrect and Plaintiffs, having filed no timely objection to Magistrate Judge Ellis' ruling that the BBC had a qualified privilege

---

[6] It is undisputed that Magistrate Judge Ellis was properly advised that the Program had been previously provided to Robert Tolchin, Plaintiffs' counsel. See App. 11(¶3); BBC Obj 5. The BBC should not be compelled to duplicate that production. See, e.g., Fed. R. Civ. P. 26(b)(2)(C)(i)(Court is required to limit discovery sought that is "unreasonably cumulative or duplicative.").

6

(App. 4-5), cannot be heard on that now. Rule 72(a).[7]

**B. <u>Plaintiffs Never Made Any Showing to Overcome the BBC Privilege</u>**. Plaintiffs did not satisfy their burden of overcoming the BBC's privilege below. Except for relying on the vacated <u>Saperstein</u> decision - which is of no effect - they *only argued erroneously that the BBC had no privilege to overcome.* See Pl Mem. 10/17/11 (Dkt No. 158) pp. 17-18. The finding of the Sept. 6 Order, then, that they somehow demonstrated likely relevance and a lack of available alternative sources is clear error.

Moreover, Plaintiffs do not dispute any of the BBC's authorities that establish the showing they were required to have made to overcome the BBC's privilege. See BBC Obj. 13-16. Nor do they dispute the prejudice to the BBC and negative impact on the public interest, particularly on war and conflict reporting, that that the BBC showed would result from the compulsion here. See BBC Obj. 7; App. 20-22(¶¶2-5), 114-118. And Plaintiffs' tenuous assertion that the Outtakes are needed to avoid a possible "completeness" objection from Defendants if the Program were offered at trial (Pl.8) does not excuse, or satisfy, their burden to overcome the BBC's journalist privilege. <u>U.S. v. Marcos</u>, SSSS 87 CR. 598 JFK, 1990 WL 74521 (S.D.N.Y. June 1, 1990)(government trial subpoena, on non-party news broadcaster for testimony to rebut a "completeness" challenge, quashed). [8]

---

[7] The BBC's nationality and location of its newsgathering does not affect its journalist privilege, particularly in an action, as here, in a U.S. federal court where the BBC was served at its N.Y. news desk. Plaintiffs rely erroneously on <u>Laker Airways Ltd. v. Pan American World Airways, Inc.</u>, 604 F. Supp. 280, 287 (D.D.C. 1984) (Pl.13), which neither dealt with journalist privilege nor held that a company such as the BBC is beyond the protections of the First Amendment. In fact, <u>Laker</u> expressly recognized that "[b]y doing business here, [the British] defendants voluntarily made themselves subject to... application of United States domestic law; as parties before the Court, they are entitled to the protection of that law…" <u>Id</u>. at 287 n. 21. The BBC is entitled to assert a journalist privilege as if it were wholly domestic, even as to foreign reporting. See also <u>In re Subpoena to Goldberg (Saperstein v. Palestinian Authority)</u>, 693 F.Supp.2d at 83; <u>Bullfrog Films, Inc. v. Wick</u>, 646 F. Supp. 492, 502 (C.D. Cal. 1986), <u>aff'd</u>, 847 F.2d 502 (9th Cir. 1988)("...the First Amendment protects communications with foreign audiences to the same extent as communications within our borders."). See also App. 137-39.

[8] <u>See also</u> <u>Fischer v. McGowan</u>, 585 F. Supp. 978, 987 (D.R.I. 1984)(motion to compel nonparty reporter, to disclose additional privileged source information for "completeness" purposes, denied); <u>U.S. v. LeFevour</u>,

7

**1. Plaintiffs Did Not Satisfy The Likely Relevance Standard, Which May Have Been Informed by Improper *Ex Parte* Representations.** Plaintiffs concede that they have no idea what is in the Outtakes, but speculate, nevertheless, that they "contain highly relevant evidence" (Pl. 14) – a conclusion that even Magistrate Judge Ellis expressly *doubted*. App. 5 ("skeptical of a 'smoking gun'" in the Outtakes). There is no basis for Plaintiffs' conclusion. Those Outtakes are just as likely to contain nothing allegedly helpful to their case at all. In re Application to Quash Subpoena to Nat. Broad. Co., Inc., 79 F.3d 346, 353 (2d Cir. 1996)(outtakes not compelled where "…Graco has absolutely no idea of what Mr. Leonard did or did not tell the interviewer"). See BBC Obj. 13, 18.

This is precisely the type of fishing expedition that the journalist privilege was intended to prevent –where litigants attempt to sift through journalists' outtakes to see if there might be something there to bolster or dress up their cases. See BBC Obj. 14, 16. It is not a showing of "likely relevance" of these Outtakes, much less of requisite "specific need" for information in them – the standard that Plaintiffs do not dispute they must have met. See BBC Obj. 16. This case is thus unlike Gonzales, where the specific conduct in issue was also what the broadcast footage was about, so that outtakes would necessarily show that conduct. 194 F.3d at 36. There is no simply no showing that these UK-situated Outtakes are likely relevant, and no basis for the *in camera* review that Plaintiffs now propose. Pl. 15.[9]

Indeed, there is no showing that the broadcast statements meet the relevancy test in the first instance, either. Disregarding that neither alleged 2002 or 2004 Al-Aqsa attack in issue is mentioned in the BBC Program, Plaintiffs claim relevance based on their alleged need to show

---

798 F.2d 977, 981 (7th Cir. 1986)("Rule 106 was not intended to override every privilege and other exclusionary rule of evidence in the legal armamentarium, so there must be cases where if an excerpt is misleading the only cure is to exclude it rather to put in other excerpts"). See App. 15-16

[9] Forstmann Leff Assoc., Inc. v. American Brands, Inc. 1991 U.S. Dist. LEXIS 213, at *6 (S.D.N.Y. 1991) cited by Plaintiffs (Pl. 15) does not support *in camera* review here. In Forstmann, review was ordered of a *plaintiff bank's* documents that showed communications with bank regulators about the investment procedures and junk bond portfolio *at issue*. Here, Outtakes are from a *nonparty*, are *not at issue* in the litigation, and *have not been shown* to contain anything relevant to this case.

funding of Al-Aqsa by Defendants, and that Al-Aqsa and the PLO were the same, "*prior to*" the attacks in issue. Pl. 5. But the September 2003 broadcast statements by Abu Rumaileh and Zubaidi *postdated* the 2002 attack. In any event, Plaintiffs own initial disclosures, served in this action *after* they served their first Subpoena on the BBC, do *not* even mention the BBC, Zubaidi or Abu Rumaileh as a witness "likely to have discoverable" – much less relevant – "information that Plaintiffs may use to support their claims or defenses…" See Pl. Initial Rule 26(a)(1)(A) Disclosures (Dkt #155-1), p. 10 at pp. 2-5. This omission belies both the relevance of Zubaidi's and Abu Ramaileh's broadcast statements to the BBC that Plaintiffs profess, and Plaintiffs' claim that those statements are "the most compelling evidence on this subject" for their case in chief. Pl. 16. [10]

With respect to the *ex parte* discussion about the Outtakes' relevance, the BBC does not intend, and is not engaging in, a "personal attack" on Magistrate Judge Ellis. Nor is it attempting to "discredit" him, as Plaintiffs erroneously charge. Pl. 10. That discussion should not have occurred, and Magistrate Judge Ellis may have been misled by substantive answers to his questions (about how the Court should decide the issue of relevance of the Outtakes and whether those Outtakes were relevant). See App. 180:1-21. This is because the answers given by Plaintiffs' counsel addressed a wholly different scenario, nothing comparable to the situation here.  They could well have prejudiced Magistrate Judge Ellis' view of relevance, even if "the arguments that the parties have" were also taken into account. Pl. 10. The BBC was not given an opportunity to participate, to contest Plaintiffs' argument or to correct that record.

## 2. **Plaintiffs Did Not Satisfy Their Burden of Showing No Alternative Sources.**

Plaintiffs misstate the BBC's position on Abu Ramaileh and Zubaidi.  It is not only that these men "reside in the Palestinian Authority" that Defendants have control over them and could produce them for questioning. It is also that, as Plaintiffs do not contest, Zubaidi was in the *physical*

---

[10] Plaintiffs made clear in those initial disclosures, moreover, that they were including witnesses even though inclusion "did not suggest that Plaintiffs have the ability to make the individual available …" So there would be no reason to omit these witnesses if their statements were at crucial as Plaintiffs now claim. Id. p. 2.

9

*custody* of the PA for most of this year and Abu Ramaileh has been for many years an *officer of Fatah, described by Plaintiffs as a "PLO" faction.* Pl. 2.; App. 160, 164-167. They also describe him as a *PLO "official."* Pl. 19. There is nothing "frivolous," as Plaintiffs suggest (Pl. 16) about requiring Plaintiffs to show why a prisoner or officer could not have been sought for deposition or interview from the Authorities that incarcerated or employed him.[11] Plaintiffs' Jeremy Stern Declaration (Pl. 16), which was served in violation of Fed. R. Civ. P. 44.1 and was contradicted by Israeli government communiques and policy, among other defects, does not show otherwise. [12] Indeed, it did not even address Zubaidi's custodial or Rumaileh's officer status.

Yet there are many more reasonably available alternative sources that were disregarded by Magistrate Judge Ellis here. Plaintiffs do not dispute that it is the underlying information sought about any relationship between Al Aqsa and Defendants that is the keystone here, not necessarily the particular Outtakes. See BBC Obj. 18 & n.17. Yet they never showed, and still do not show, that they do not have this information, or could not obtain it from *Defendants*. Or from the Al Aqsa perpetrator of the attacks in issue that is in custody. Pl. 5. Or from the many, many other sources

---

[11] Whether the PA is subject to the Hague Convention (Pl. 20 n.10) is beside the point as the PA is a party directly subject to this Court's authority. Even so, pursuing these witnesses – even when Zubaidi was not in custody – was not the futile exercise that Plaintiffs portray it to be, particularly given that circumstances have changed in the eight years since Zubaidi and Abu Rumaileh made those statements, and the 3 years since Plaintiffs' expert Barry Rubin signed his 2009 Declaration. Plaintiffs' assessment through Rubin of the accessibility of those witnesses, as Dr. Yezid Sayigh makes clear, rests on faulty assumptions, disregards the current political realities in the West Bank and presents an overly simplistic account of the complex relationships between the PA, the PLO, Fatah and/or al-Aqsa. It is not an accurate assessment of the likelihood of either one appearing for deposition, whether compelled or otherwise. App. 91-113 ¶¶17, 19-28.

[12] Plaintiffs waited until the reply on their motion, after the BBC's briefing was closed, to submit the Declaration of Jeremy Stern, a Jerusalem lawyer, purportedly to show that testimony from Zubaidi and Abu Ramaileh could not be compelled under Israeli law. But that affidavit should have been disregarded as, among other reasons, (i) Plaintiffs did not comply with Fed. R. Civ. P. 44.1 which requires reasonable notice that they intended to raise an issue about Israeli law to prevent undue surprise to the BBC – which they failed to give, (ii) it purported to rebut *legal* opinions of the BBC's expert Dr. Yezid Sayigh, but Dr. Sayigh only offered *political* opinions to rebut those of Plaintiffs' expert Barry Rubin, (iii) Plaintiffs' expert Rubin *assumed* that Israeli courts *could issue* the type of order that Stern asserted they could not, (iv) the Stern affidavit was based entirely on purported *self-translated* (not certified independent ) excerpts of Israeli case law, not provided to the BBC, that could assertedly only be found in a database accessible to Stern, but not to the BBC as it had no subscription, and (v) the law according to Stern is contradicted by Israeli government communiques and policy, as well as Stern's own closing statements. See App. 148-156.

the BBC, or Plaintiffs themselves, have noted. See BBC Obj. 19-20. Indeed, Plaintiffs do not argue that they do not have proof of the connections they seek – only that they like the BBC's information better (Pl. 16-17). That is not a sufficient reason for burdening the nonparty BBC for cumulative proof or overcoming its privilege. See, e.g., U.S. v. Hubbard, 493 F. Supp. 202, 205 (D.D.C. 1979). See also BBC Obj. 19-20 & n.17, n18, n.21.

Whether or not the BBC has necessarily proved Plaintiffs' case for them (see Pl. 16) is not the test. It is not the BBC's burden to show that reasonable alternative sources exist—it is *Plaintiffs' burden to show that they do not*. This burden was not met by Plaintiffs' mere brush-off of the numerous alternative sources noted by the BBC and by Plaintiffs themselves.

Lastly, Plaintiffs provide no justification for Magistrate Judge Ellis' unprecedented imposition of a burden on the proponent of a journalist privilege – to provide a detailed showing that the subpoenaed information would be burdensome to produce – in order to assert the privilege. Instead, they call it merely noting that the BBC "failed to claim that there was any physical impediment to their production…" Pl. 17. *This error significantly curtails the journalist privilege in a manner never intended by the Second Circuit in Gonzales*. See BBC Obj. 21. Neither Gonzales nor its progeny require, as a condition of assertion of the privilege, that the proponent of the privilege make any showing of a "physical impediment" or other specific burden, and Plaintiffs cite *no* authority to support either their view or the erroneous Sept. 6 Order. It should be reversed.

### III.  PLAINTIFFS FAIL TO SHOW ADMISSIBILITY.

"In determining whether to quash a subpoena, courts in this Circuit have considered the admissibility of the materials sought from journalists." Mandal v. City of New York, No. 2004 WL 2375817, at *4 (S.D.N.Y. October 21, 2004). See BBC Obj. 23. Yet Plaintiffs fail to point to any portion of Magistrate Judge Ellis' decision that addressed admissibility of the compelled BBC

11

information. Nor do they rebut the BBC's authority on this requisite.[13] Moreover, Plaintiffs concede that even were they to qualify the BBC Program or Outtakes as business records that would not be sufficient to render the statements in them admissible. Pl. 18. See, e.g., Fed. R. Evid. 801(c); 802, 805. Yet, as the BBC showed (BBC Obj. 23-25; App.144-147), and Plaintiffs' arguments do not rebut, none of the hearsay exceptions or exclusions that Plaintiffs argued apply. The statements to the BBC of Zubaidi and Abu Ramaileh, which are not necessarily adverse to them or Defendants, and were made to serve their own particular personal and political agendas at the time, are inadmissible, and of no probative value. See App. 91, 98, 105-107 (¶¶35-40).[14] The Sept. 6 Order, in compelling the BBC Outtakes and affidavits while failing to consider admissibility, was clearly erroneous.

## CONCLUSION

For the foregoing reasons and those in the BBC's Objections, the Sept. 6 Order should be reversed insofar as it partially granted Plaintiffs' cross Motion to Compel and partially denied the BBC's Motion to Quash. Plaintiffs Subpoena on the BBC should be quashed in its entirety.

Dated:   New York, New York          MILLER KORZENIK SOMMERS LLP
        October 30, 2012

By _/s/ Louise Sommers_
   Louise Sommers
   David S. Korzenik
   Itai Maytal
488 Madison Avenue Suite 1120
New York, New York 10022-5702
Phone (212) 752-9200  Fax (212) 688 3996
lsommers@mkslex.com
Attorneys for The British Broadcasting Corporation

---

[13] In Conopco, Inc. v. Wein, 2007 WL 1040676, at *5 (S.D.N.Y. 2007) cited by Plaintiffs (Pl. 17), Magistrate Judge Katz found that, unlike here, the settlement agreement compelled was unquestionably relevant and there was a "strong likelihood" that it was admissible.

[14] Plaintiffs twist the BBC's argument beyond recognition, accusing it of "blatantly misrepresent[ing]" Rules of Evidence, which it has not. Pl. 21 n.11. The BBC did not suggest that a statement under oath is required under 803(b)(3), but only that there was no statement under oath here that might indicate a belief in the truthfulness of the statement consistent with BBC's authorities. BBC Obj. 24 & n. 24.

# MILLER KORZENIK SOMMERS LLP
488 MADISON AVENUE • NEW YORK, NEW YORK 10022-5702
TEL 212.752.9200 • FAX 212.688.3996 • WWW.MKSLEX.COM

*Via ECF filing and Fax (when Fax becomes available)*
October 30, 2012

Honorable George B. Daniels
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street Room 630
New York, NY 10007

Re: <u>Sokolow v. PLO et. al, 04-CV-00397 (GBD)(RLE)</u>

Dear Judge Daniels:

On behalf of non-party British Broadcasting Corporation (the "BBC"), we write to request that the Court consider the accompanying Reply, occasioned primarily by the new matter and misstatements of law and fact contained in Plaintiffs' Response to Objections of the British Broadcasting Corporation to September 6, 2012 Memorandum and Order of Magistrate Judge Ellis (Dkt No. 263). We also request that the Court permit us a 2- page extension to the 10 pages permitted for replies under this Court's rules, for the reasons indicated below. We are filing this letter and submission as the most efficient method of reaching the Court and the parties during the closing of the courthouse due to the hurricane.

Rather than pressing the requests in the BBC's letter to the Court of October 25, 2012, the BBC requests that the Court consider its Reply. We are filing this letter and submission through ECF as the most efficient method of reaching the Court and the parties during the closing of the Courthouse due to the hurricane.

Plaintiffs have raised *three* separate arguments seeking affirmative relief, notwithstanding that they filed no timely objections to Magistrate Judge Ellis' rulings on these points. These arguments do not respond to the BBC's Objections. Given this new matter and the numerous misstatements of law and fact offered by Plaintiffs, the BBC seeks to avoid prejudice to its position if it is not given any opportunity to respond in advance of the oral argument.

Accordingly, we request that the Court consider the accompanying Reply on Objections of the British Broadcasting Corporation to September 6, 2012 Memorandum Opinion & Order of Magistrate Judge Ellis.

Respectfully Submitted,

*Louise Sommers*
Louise Sommers

cc: Robert J. Tolchin, Esq.
    David I. Schoen, Esq.
    Brian Hill, Esq.