UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

                          Plaintiffs,

                                                                                   Civ. No. 04-397 (GBD) (RLE)

                          v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

                          Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXPAND THE DISCOVERY SCHEDULE AND FOR RELATED RELIEF**

**INTRODUCTION**

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion to Expand the Discovery Schedule and for Related Relief. As detailed in the Declaration of Robert Tolchin (the "Tolchin Declaration"), Plaintiffs have been stymied in their repeated and persistent efforts to obtain relevant discovery from Defendants. Indeed, the facts recited in the Tolchin Declaration show a clear pattern of abusive conduct whereby Defendants appear to have intentionally withheld responsive documents in their possession while innocently claiming that they are "investigating"[1] Plaintiffs' discovery requests. Over the course of the last year plus, Defendants have purposefully made it impossible for Plaintiffs to complete discovery by the upcoming deadline by, *inter alia*, (i) trickling exceedingly small numbers of documents to Plaintiffs over an extended period of time either in an effort to appear cooperative or because Plaintiffs managed to prove, through other sources, the unquestionable existence of the

---

[1] Defendants have also outrightly refused to produce discovery responses in many instances. Those refusals are not at issue herein, though Plaintiffs intend to seek relief for them in the near future via a motion to compel, and certainly those refusals add to the need for an expansion of the discovery deadline.

documents, (ii) providing false explanations for their delays and (iii) significantly impeding Plaintiffs' ability to take critical depositions. As described in the attached Tolchin Declaration, Plaintiffs have made repeated good faith efforts to cajole Defendants into complying with their discovery obligations and, in many instances, have even provided Defendants with information to help them locate the requested information.

By playing these discovery games, Defendants have hamstrung Plaintiffs and have lulled Plaintiffs and the Court into believing that they are "doing their best", when in fact they are using disingenuous excuses *to produce almost nothing at all* and to utilize all means possible of depriving Plaintiffs' of their ability to develop their case. Plaintiffs have innocently believed Defendants' repeated assurances that they were "investigating" and held off seeking relief from this Court earlier due to those promises. However, now that the time for discovery is drawing to a close and Defendants still claim they are investigating while having produced almost nothing, and continue to oppose Plaintiffs' attempts to obtain information through depositions, Plaintiffs have no choice but to bring this Motion.

As a result of Defendants' delay tactics detailed in the Tolchin declaration, Plaintiffs are asking this Court to expand the discovery and expert deadlines first and foremost, and then to require Defendants to make regular reports of their investigative efforts. Should the Court require assistance with the time-consuming task of overseeing and enforcing discovery, Plaintiffs suggest that the Court has the option to appoint a special master if it so desires. Plaintiffs reserve the right to seek sanctions for Defendants' dilatory actions, resulting in significant extra work and unnecessary expense, however do not do so at this time as Plaintiffs' need for an expansion is their priority.

## RELEVANT BACKGROUND

This is a civil action pursuant to the Anti-terrorism Act ("ATA"), 18 U.S.C. § 2333, and pendent causes of action, brought by U.S. citizens, and the guardians, family members and personal representatives of the estates of U.S. citizens, who were killed and injured in seven terrorist attacks carried out by the Defendants between January 8, 2001 and January 29, 2004. The instant lawsuit was filed in 2004 and was amended in 2005. Several motions to dismiss were filed by Defendants over several years. Each motion to dismiss has been without merit and duly denied.

On June 3, 2011, Judge Daniels referred all pretrial matters to Magistrate Ellis, including scheduling, (DE #124); and on June 27, 2011, Magistrate Ellis issued the scheduling order in this matter. (DE #131). Therefore, Plaintiffs file this motion to expand said scheduling order to Magistrate Judge Ellis based on the issues set forth in detail in the attached declaration of Robert Tolchin, each of which is incorporated herein by reference. This is the first time Plaintiffs are seeking such an expansion.

The discovery schedule was first set in June, 2011 and provided for a discovery deadline of December 21, 2012 and an expert discovery deadline of April 22, 2013. Plaintiffs' expert disclosures and reports are due January 21, 2013. Despite Plaintiffs' diligent efforts, as a direct result of Defendants' evasive and intentionally dilatory actions, Plaintiffs require (a) more time to complete discovery and to prepare expert disclosures, and (b) assistance from the Court in their discovery efforts and to oversee Defendants' alleged "investigations."

It is important for the Court to understand both Defendants' pattern of abuse, which exposes their improper agenda of delay and obstruction, and the specific ways in which that agenda is hindering Plaintiffs' to fully and completely present their claims to this Court. In that

regard, Plaintiffs respectfully ask the Court to carefully consider the attached Tolchin Declaration and the exhibits thereto, which methodically demonstrates the nature of the problem and provides very specific examples of the ways in which Defendants have abused the discovery process, requiring the relief Plaintiffs are forced to seek through this motion. In order to explain the need for the requested expansion inside this motion, Plaintiffs will provide some highlights from the Declaration, but again ask the Court to read the declaration in its entirety:

**Summary of the Tolchin Declaration**

Discovery Delays Relating to The August 2011 Suicide Bombing That Maimed the Bauer Plaintiffs

- Defendants have inexplicably delayed in producing relevant employment records showing that the bomber (Hashaika) and the two convicted planners (Shawish and Aweis) were PA employees during the relevant period. With respect to Hashaika and Aweis, Defendants trickled a total of 6 salary-related pages, which they clearly had from the beginning, over a period of seven months. And, Defendants are still investigating. (*See,* Tolchin Declaration, pp. 2-5).

- In response to a request by Plaintiffs to identify anyone with knowledge relating to the PA's arrest and release of Hashaika prior to the bombing, Defendants propounded meritless objections and claimed they could not identify a single person with knowledge. Then, six months later, they supplemented their response with the name of a colonel and senior regional commander who was clearly known to them and could have been identified early on. Defendants are still investigating. (*See,* Tolchin Declaration, pp. 5-7).

- Although it was widely publicized and admitted by PA officials, including Arafat himself, that U.S. and Israeli representatives demanded the arrest of known terrorists, including Hasheika, Aweis and Shawish, Defendants claim they cannot locate any information responsive to a request for all documents relating to those arrests and releases. Moreover, Defendants did not provide Saeb Erekat's name in response to a request for all people with knowledge relating to Hasheika's arrest and release he publicly voiced that he has knowledge. Instead, Defendants disingenuously claim that they are still "investigating" these critical discovery requests, a claim they have been making for over one year. (*See,* Tolchin Declaration, pp. 7-9).

4

Discovery Delays Relating to The July 31, 2002 Hebrew University ("HU") Bombing That Killed Four United States Citizens

- It took Defendants 6 months to disclose the name of one senior PA security officer as someone with relevant knowledge of the bomb maker's (Abdullah Bargouti) arrests by the PA prior to the HU bombing and they have not produced a single other response since then. Defendants are still investigating. (*See,* Tolchin Declaration, pp. 9-10).

- Defendants continue to claim they cannot find a single document responsive to the request for all documents relating to the PA's arrests of Barghouti, but are continuing to "investigate." Defendants have managed to disclose in another case, a document from that same time period which is presumably exculpatory for the PA and which relates to Plaintiffs' outstanding requests concerning PA arrests of Bargouti. This filed document is a mostly illegible fax and now Defendants maintain that they are unable to locate a legible and complete copy of the fax, even though the fax numbers can be traced to 2-3 PA offices who would have received the complete fax. Defendants are still investigating. (*See,* Tolchin Declaration, pp. 10-13).

Discovery Delays Relating to the January 2002 Suicide Bombing Injuring the Sokolow Plaintiffs

- While continuously claiming that they are "investigating," Defendants failed to locate any information relating to the bomber, Wafa Idris (who was publicly honored by the PA), the convicted abettor, Munzar Mahmoud Khalil Noor, or the PA officer who planned the attack according to Noor, Mohammed Muhtasib until 6 months after the discovery request on that issue. At that time, Defendants identified a senior PA security officer as having relevant information. Clearly, this individual was known to the PA and could have been identified sooner. Defendants are still investigating. (*See,* Tolchin Declaration, pp. 14-16).

Discovery Delays Relating to Critical Issues to All Plaintiffs

- Mohammad Dahlan is a well known spokesman for the PA who has made a number of statements in recorded televised interviews which are harmful to the PA and support Plaintiffs' claims in this matter. In an effort to render Dahlan's statements admissible in court as party admissions or admissions against interest, Plaintiffs sought details of Dahlan's employment positions and history with the PA. Since September, 2011, Defendants claim to be looking. In June, 2012, in an attorneys conference, Defendants represented their intended to supplement their responses. Defense counsel claimed to have encountered delays they could not explain, but hoped to resolve later in the week. To date, Defendants have produced very few responsive things. Dahlan is a well-known,

5

senior PA employee, yet responses remain incomplete and the investigation continues. (*See,* Tolchin Declataion, pp. 17-20).

- Since 1994, the Defendant PA has operated a fund to provide financial and other benefits to the families of terrorists. This fund is reported by such organizations as the World Bank as not being for charitable purposes. Therefore, this martyrs fund is critical evidence in the instant lawsuit as it relates to the Defendants' state of mind, as well as its incentivization and ratification of terror. Plaintiffs have, therefore, requested discovery relating to this fund and specifically relating to the terrorists involved in the instant attacks. Defendants have tricked incomplete information to Defendants over time. In early September, Plaintiffs learned of a 436 page dissertation regarding the martyrs fund written by a doctoral candidate named Banat, and researched with the help of Defendants who provided the names of all suicide bombers and the financial benefits their families have received. Indeed a letter from a PA authority, drafted on PA stationary, is included in the dissertation, and confirms the assistance provided. Plaintiffs immediately sought the lists and other information provided. Two months later Defendants are, presumably, still investigating. (See Tolchin Declaration, pp. 20-24).

Obstructionist Tactics Related to Defendants' Lack of Capacity/Unincorporated Association Claim

- Recently, Defendants' gamesmanship was evidenced in a pre-motion letter to Magistrate Ellis, in which they seek a protective order to prevent Plaintiffs from taking depositions on on their own claim of lack of capacity, notwithstanding the Court's express directive in the August 9, 2012 hearing that Plaintiffs are entitled to conduct discovery on this issue. (*See,* Tolchin Declaration, pp. 26).

Defendants Baseless Motions to Delay Plaintiffs' Discovery Efforts

- Instead of making a good faith effort to locate documents in their possession concerning the PA's arrests of HU bomb-maker Barghouti (discussed above), Defendants moved to compel Plaintiffs, *who are private individuals*, to produce *government demands* by Israeli and U.S. officials *to the PA*. It seems clear that Defendants are trying to smoke out what Plaintiffs know in order to decide what they need to produce. Defendants have shown time and again that they will only produce documents they fear Plaintiffs know about or have other means of obtaining. (*See,* Tolchin Declaration, pp. 13-14).

- Defendants moved for the denial of Plaintiffs' requested Hague convention depositions of convicted terrorists involved in the instant terror attacks, claiming they were requested too late, despite the fact that they were requested *nine months* before the close of discovery. Defendants continued to pursue this meritless motion even after Plaintiffs

6

demonstrated that they can arrange for these depositions within 2-3 months. *Plaintiffs still need to take these critical depositions.* (*See*, Tolchin Declaration, pp. 26-27).

Delay Relating to the Recent Production of Documents

- These delay tactics are continuing even now. As recently as October 29, very close to the end of discovery, Plaintiffs received by regular mail carrier a package that was mailed on October 23, 2012 (that could have been emailed and/or over-nighted) with seven disks of documents, along with some other hard copies, many of which are in Arabic. The cover letter simply describes the documents as "additional documents being produced". (*See* Tolchin Declaration, p. 24).

- One of the items produced purports to be the martyr files for Jara'a and Hashaika (two of the suicide bombers from this case). Plaintiffs cannot yet tell if these files are complete or what they contain, but there is no question that these files should have and could have been produced over a year ago. *Indeed, these critical files, (indicating for whom the suicide bombers worked and organizations with which they were affiliated, for example) should have been produced during initial disclosures.* (Id).

As Defendants likely intend, these dilatory tactics cripple Plaintiffs' ability to investigate and pursue their case effectively. In each and every one of these instances, the discovery being sought is critical to Plaintiffs' case and Plaintiffs have made significant, good faith efforts to cajole more information and documents from Defendants, with no success. It has become clear over the course of this discovery process that Defendants are trying to appear cooperative by claiming to be "investigating" and cherry-picking and trickling information and documents to Plaintiffs with large gaps of time between disclosures. Defendants' excuses for the delays are not credible.

These manipulative tactics have had the effect of lulling Plaintiffs and the Court into inaction, and deflecting any attempts to compel compliance. For example, on February 15, 2012, Plaintiffs wrote to the Court seeking a pre-motion conference to compel Defendants to answer the Bauer Plaintiffs' Second Set of Interrogatories. Defendants objected on the grounds that Plaintiffs' request was "premature" and "unnecessary" because Defendants "investigation is

continuing." At the March 20, 2012 status conference, more than one month after Plaintiffs' letter request, Defendants repeated their representation that they were "continuing to investigate," "doing what the rules require," "not withholding anything" and will "supplement as the information becomes available." (*See,* Tolchin Declaration and attached Exhibits). As discussed in the Tolchin Declaration, that representation was patently false because Saeb Erekat, the PA's chief Palestinian negotiator had admitted in an interview with Fox news that he had relevant knowledge. Thus, through false promises of an "investigation," Defendants have successfully managed to avoid a motion to compel, as well as their discovery obligations.

In addition, Defendants are now capitalizing on these abusive practices to hamstring Plaintiffs with respect to their needed 30(b)(6) deposition. Due to Defendants virtual lack of disclosure, Plaintiffs have been unable to identify all of the topics for the 30(b)(6) depositions. In early October, Plaintiffs notified Defendants of their intent to take 30(b)(6) depositions in November and asked for dates of availability. Then over the next couple of weeks, Plaintiffs sent Defendants some of the 30(b)(6) topics they had been able to identify. Defendants took the untenable position that they will not provide dates or identify witnesses unless Plaintiffs send a *complete* 30(b)(6) notice that cannot be supplemented. Compliance with such a demand would, of course, severely prejudice Plaintiffs who are still missing crucial information due to Defendants gamesmanship. By taking this intractable position, Defendants are preventing Plaintiffs from being able to complete these depositions in November and with enough time to allow for follow up discovery requests in advance of the fact discovery deadline.

Defendants' obstructionist delay tactics are causing irreparable harm to Plaintiffs by stymying their ability to effectively prepare this case for trial, as apparently intended. Therefore, it is imperative for a third party to oversee the discovery process to completion. Unfortunately,

Defendants pattern of abuse and their now clear goal of intentionally depriving Plaintiffs of discovery has become evident only over the course of time. It is Defendants abusive conduct that has necessitated this Motion for expansion of the deadlines and for Court intervention from the to hold Defendants accountable and to set time-tables and acceptable parameters for their "investigations." This is the first time such relief is being requested. Of course, it would be ideal if Judge Ellis were able to tightly oversee discovery, but Plaintiffs know how busy his docket already is and do not wish to burden him further. If Magistrate Ellis were to conclude that such micromanagement as Defendants have proven is required, would be too great a burden, Plaintiffs respectfully suggest to the Court that a Rule 53 Special Master appointment is within the Court's power and discretion.

**ARGUMENT**

**I. Good Cause Exists to Expand the Discovery Deadline and Impose Strict Oversight Over Defendants' Compliance with Discovery**

At the outset, Plaintiffs emphasize that this action is brought under the civil provisions of the Antiterrorism Act. As the courts of this Circuit and others have found – the prosecution of ATA cases serves not only Plaintiffs' personal interest, but the national interest of the United States:

> The legislative history of the ATA … reveal[s] this country's profound and compelling interest in combating terrorism at every level …
>
> Congress has explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations. Certainly, private tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism <u>vindicate the national and international public interest</u>.

*Weiss v. National Westminster Bank*, 242 F.R.D. 33, 46, 50 (E.D.N.Y. 2007) (emphasis added). *See also e.g. Ungar v. Palestinian Authority*, 715 F.Supp.2d 253, 268 (D.R.I. 2010) ("[T]here is an extremely strong interest in enforcing judgments … entered under the civil provisions of the

Antiterrorism Act ("ATA")").[2] Therefore, courts have tended to take a liberal approach to allowing discovery in ATA actions. *See e.g. Linde v. Arab Bank*, 269 F.R.D. 186 (E.D.N.Y. 2010); *Weiss*, 242 F.R.D. at 55-56; *Strauss v. Credit Lyonnais*, 242 F.R.D. 199 (E.D.N.Y. 2007); *Strauss v. Credit Lyonnais*, 249 F.R.D. 429 (E.D.N.Y. 2008).

Moreover, Federal Rule of Civil Procedure 16(b)(4) expressly provides that a schedule may be modified for good cause and with the judge's consent. See also *O'Connell v. Hyatt Hotels of P.R.,*357 F.3d 152, 155 (1 st Cir.2004) (Rule 16 recognizes "that the parties will occasionally be unable to meet these deadlines because scheduling order deadlines are established relatively early in the litigation."). As a result of Defendants' actions, and despite Plaintiffs' due diligence, Plaintiffs require an extension of the approaching discovery deadline to be able to effectively investigate and prosecute their claims. Such an extension is clearly justified, particularly in light of the fact that it is Defendants' gamesmanship and dilatory tactics that have caused the current impasse, notwithstanding Plaintiffs' good faith efforts to work through discovery without the need for Court intervention.

In addition, Courts have taken a strong approach against such delay tactics as those used by Defendants herein and have imposed strict oversight over the discovery process when necessary. *See, e.g., Green v. New York City Dept. of Correctional Services*, 1996 WL 3951 at *4 (S.D.N.Y. 1996) (ruling that Defendant could not continue to represent that it was searching for information indefinitely and imposing a final deadline, by which, *inter alia*, Defendant was required to supply an affidavit specifying the steps taken to locate the requested information);

---

[2] *See also* recent, October 29, 2012, opinion of Southern District of New York Judge Shira Scheindlin in the matter of *Wultz, et. al. v. Bank of Chine Ltd., et. al.*, Case No.11 Civ. 1266 (SAS), at 15: "But in light of the significant U.S. interest in eliminating sources of funding for international terrorism, and the other factors discussed below, the law governing discovery disputes in this case must ultimately be the broad discovery rules of the Federal Rules of Civil Procedure," and at 22: "The United States has a "profound and compelling interest in combating terrorism at every level, including disrupting the financial underpinnings of terrorist networks." (quoting *Strauss v. Credit Lyonnais, S.A.*, 249, F.R.D. 429, 438–3919, 442-44 (E.D.N.Y. 2008)).

*Caines v. City of New York*, 2003 WL 21556929 (S.D.N.Y. 2003) (because of Defendants' delays, ordering Defendants to identify the employees conducting the search for discovery and to provide a detailed report on status of Defendants' document production). *See also Alexander v. F.B.I.*, 188 F.R.D. 111 (D.D.C. 1998); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 3173785 (E.D.N.Y., August 11, 2010); *Romero v. Allstate Ins. Co.*. 271 F.R.D. 96 (E.D.Pa. 2010) (cases where parties were compelled to provide detailed reports regarding the steps taken in discovery efforts or lack thereof).

Plaintiffs have established a clear need for such Court intervention here, *inter alia*, to: (a) oversee discovery in this matter, (b) set forth strict deadlines for production of the discovery still outstanding, (c) require Defendants to submit regular statements detailing their investigative efforts, and (d) to hold Defendants accountable for deficiencies in their "investigations."

Should the Court determine that these circumstances warrant, it also has authority to appoint a special master pursuant to Rule 53, which provides for such appointments to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." *See also Schwimmer v. United States,* 232 F.2d 855, 865 (8th Cir. 1956) (*quoting In re: Peterson,* 253 U.S. 300, 311 (1920) ("Beyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a Federal District Court has 'the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential.'"); *United States ex rel. Newsham v. Mercer v. Gerry Baby Prods. Co.*, 160 F.R.D. 576, 577-79 (S.D. Iowa 1995) (appointing master to supervise discovery because disagreement and accusations among lawyers created a chaotic atmosphere for discovery and misuse of discovery motions). However, even if the Court decides not to appoint a Special Master, Plaintiffs respectfully move the court for active intervention on these

discovery matters by this Court or by Magistrate Judge Ellis, as set forth above, and that all deadlines be expanded to allow for said intervention.

WHEREFORE, Plaintiffs respectfully move this Honorable Court for an Order: (i) expanding the fact discovery schedule by at least three months or until such date as it is determined that Defendants have indeed cooperated fully in the discovery process; (ii) expanding the expert discovery schedule to a corresponding extension date; (iii) providing court intervention and support in the discovery process, or appointing a special master to oversee discovery and participate in the setting of a new fact discovery deadline; and (iv) granting any further relief as the Court may deem just and proper. Plaintiffs reserve the right to seek sanctions.

November 19, 2012

Plaintiffs, by their Attorney,

/s/ Robert J. Tolchin
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
334-395-6611
Fax: 917-591-7586
DSchoen593@aol.com