```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3     ----------------------------------X
                                         :
 4     SOKOLOW, et al.,                   : 04-CV-00397 (GBD) (RLE)
                                         :
 5                      Plaintiffs,       :
                                         :
 6               v.                       : 500 Pearl Street
                                         : New York, New York
 7     PALESTINE LIBERATION ORGANIZATION, :
        et al.,                           :
 8                                        : March 20, 2012
                                         :
 9                      Defendants.       :
       ----------------------------------X
10

11           TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
              BEFORE THE HONORABLE RONALD L. ELLIS
12                 UNITED STATES MAGISTRATE JUDGE

13
       APPEARANCES:
14
       For the Plaintiffs:          ROBERT J. TOLCHIN, ESQ.
15                                   Berkman Law Office
                                     111 Livingston Street
16                                   Brooklyn, NY 11201

17     For the Defendants:          BRIAN A. HILL, ESQ.
                                     MARK J. ROCHON, ESQ.
18                                   Miller & Chevalier, Chtd.
                                     655 15th Street, North West #900
19                                   Washington, DC 20005

20

21     Court Transcriber:           RUTH ANN HAGER, C.E.T.**D-641
                                     TypeWrite Word Processing Service
22                                   211 N. Milton Road
                                     Saratoga Springs, NY 12866
23

24

25


       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service
```

1          THE CLERK:  Parties on Sokolow, et al. v. Palestine

2  Liberation Organization, et al.

3                    [Pause in the proceedings.]

4          All counsel please identify yourselves for the

5  record.

6          MR. TOLCHIN:  Robert Tolchin for the Berkman Law

7  Office for the plaintiffs.

8          MR. HILL:  Good morning, Your Honor.  Brian Hill and

9  Mark Rochon for the defendants, the Palestine Liberation

10  Organization and the Palestinian Authority.

11          THE COURT:  Good morning.

12          MR. TOLCHIN:  Good morning, Your Honor.

13          THE COURT:  You bring reinforcements.

14          MR. HILL:  If you consider Mr. Rochon to be

15  reinforcements.

16          THE COURT:  Okay.  We have a number of discovery

17  issues that are still outstanding.  This case is moving at a

18  glacier pace and I must say that I have -- there are some cases

19  which seem to have an inertia which prevents them from moving

20  forward.  This unfortunately is falling into that category and

21  it cannot continue.

22          I'm going to talk about the disputes that are still

23  outstanding, much to my chagrin.  I have -- I will list them

24  for you so that you will know what is on my agenda.  There are

25  the interrogatory disputes.  First, the defendants complain

1  about the plaintiffs' answers to interrogatories which the

2  plaintiffs claim are overbroad, but which seek to get

3  information concerning individuals who might have information

4  concerning allegations in the complaint.  The plaintiffs take

5  issue with the questions they've asked the defendants

6  concerning some suspected terrorists and documents about their

7  being detained and before certain actions had taken place.

8  There is the plaintiffs' motion to issue a request for judicial

9  assistance with regard to Sana'a Shehadeh.  There are the Rule

10  35 examinations and there is the defendants' requests for

11  economic damages from the plaintiffs.  There's also pending,

12  but we -- which we aren't going to discuss today, is the BCC's

13  motion to quash the subpoena which I have *sub judice*.  Okay.

14  Now --

15          MR. HILL:  Your Honor, if I may, there's one

16  housekeeping matter.

17          THE COURT:  Yes.

18          MR. HILL:  It goes back to the November hearing.  We

19  had a dispute, as you remember, about the terms of the

20  confidentiality order which Your Honor reserved -- resolved at

21  that hearing and we submitted through the email the proposed

22  order that contained the resolutions that embody Your Honor's

23  rulings.  That's just not been entered, and I'd ask the Court

24  if you could enter it.  And I brought an extra copy if that

25  helps the Court to get that one on the docket because that

4

1    third party asked me about it.

2              THE COURT:  Okay.  You put that on the docket?  Do

3    you know the docket number?

4              MR. HILL:  I didn't put it on the docket.  What I did

5    is email the order to the orders of judgment email address and

6    I have --

7              MR. TOLCHIN:  I think he said he wanted to put the

8    order on the docket.

9              MR. HILL:  I just need -- we just need Your Honor to

10   execute it.  You've already ruled on it.

11             THE COURT:  All right.  Hand it up to my deputy.

12             MR. HILL:  Yes, Your Honor.

13             THE COURT:  Okay.  All right.  Let's begin with the

14   interrogatories that defendants have asked the plaintiffs

15   concerning the -- since this has been going on for some time

16   and I think we may have had three attempts at responding.

17             MR. HILL:  Yes, Your Honor.

18             MR. TOLCHIN:  Your Honor, it would be helpful to me

19   if he would just say which letter.  The letters have dates.  If

20   we could just identify which date's letter you're bringing up.

21             THE COURT:  Which date's letter?

22             MR. TOLCHIN:  Yeah.  But they wrote a letter on

23   January 13th.  They wrote one on January 20th.  It will just be

24   helpful for the record to know which application we're

25   discussing.

5

1          THE COURT:  Okay.  This has been going on for some

2    time.  I didn't know there was a question about which

3    application there was.  I mean, I know that there's question

4    about which letter, but -- you mean, you're not sure about

5    which dispute we're talking about now?

6          MR. TOLCHIN:  There's a series of letters and

7    responses and chains back and forth and it -- I just thought

8    that since we're on the record it's helpful to know which

9    application and which response we're dealing with because they

10   all seem to involve interrogatories and that doesn't seem to

11   identify the chain specifically enough.  I'm just trying to be

12   helpful.  I apologize if it's created more trouble than it's

13   worth.

14         THE COURT:  Okay.  Well, this one we talked about at

15   our February conference and I had -- I'd ordered the plaintiff

16   to do more specific answers.

17         MR. TOLCHIN:  Um-hum.

18         THE COURT:  I didn't know there were other

19   interrogatories that were in dispute.  Maybe this is more of a

20   problem than I had anticipated.

21         MR. HILL:  No, Your Honor.  I think we are all on the

22   same page.  The most recent letter on this came from me and it

23   was dated February 21st to Your Honor.  February 21, 2012.  And

24   it recites the history, as Your Honor is recalling.  We served

25   these interrogatories in August of last year.  The plaintiffs

6

1   refused to answer them.  We wrote you a letter.  You ordered

2   them to answer them.  They then gave answers which we discussed

3   at our last hearing which consisted of essentially saying, all

4   of the plaintiffs know this, all of the defendants know this,

5   all the employees of the United States know this.  And Your

6   Honor gave them one last chance.  You entered an order finding

7   that their last entry -- their last answers were sanctionable

8   but you deferred entering a sanction to see if they would

9   comply in good faith with your order that they answer them.

10  And I wrote on February 21st to explain why although we now

11  have names we, in fact, have the same 36 names for a whole

12  series of these interrogatories of people that obviously don't

13  have the knowledge that the interrogatories call for.

14          Just to pick one example, looking at interrogatory

15  number 3 of the defendants' first set of interrogatories to the

16  Gould plaintiffs and the Waldman plaintiffs, which requires

17  them to "identify all persons who you know have knowledge or

18  who you believe may have knowledge that the January 22, 2002,

19  shooting was planned and carried out by Ahmed Barghouti, Nasser

20  Aweis, Al-Masri, Al-Titi, Masalah, Ghanem, Abdullah, Ramadan,

21  and the John Doe defendants acting as agents and employees of

22  the P.A. and the PLO within the scope of their agency and

23  employment as alleged in paragraph 76, the first amended

24  complaint."

25          And then the plaintiffs give an answer on page 7 and

7

8 that goes on and lists about 50 people and 36 of them are

answered for every one of these interrogatories about the

defendants' liabilities and they start with the president of

the P.A., Mahmoud Abbas, and they end with former U.S.

Government officials including former Secretaries of State

Condoleezza Rice and Colin Powell, former U.S. Envoy Anthony

Zinni, and former White House Press Secretary Ari Fleischer.

And the plaintiffs have not given us any documents that show

that any of those people know anything about this shooting on

January 22, 2002.

We submit that that's a bad-faith answer and we think

Your Honor should sanction them by excluding any testimony from

these 36 witnesses that they just list over and over again.

Instead of just saying everybody in the defendants or everybody

in the United States they just give me the same 36 names over

and over. We think that's bad faith. Your Honor has ordered

them twice to answer these. They haven't done it in good

faith. We would request that you sanction them by precluding

them from relying these 36 witnesses.

THE COURT: You have something to say in your

defense, Counsel?

MR. TOLCHIN: Yes, I do, Your Honor. And I have -- I

actually have a letter that summarizes what I'm about to say to

Your Honor and I'd ask for permission to hand it up so that the

written record can be complete, but I don't mean that to say

8

1   that I'm going to avoid verbally answering the question.

2           THE COURT:  You will be able to hand it up.

3           MR. TOLCHIN:  Okay.

4           THE COURT:  But I'm interested in your verbal answer.

5           THE COURT:  Okay.  Certainly, Your Honor.  I'm not

6   going to quibble with, you know, every little word that Mr.

7   Hill just said.  Your Honor didn't say you were going to

8   sanction us.  Your Honor directed us to give a better answer.

9   We gave a better answer.

10          What Mr. Hill seems to be saying is, he doesn't like

11  our answer.  Now, I'm going to pick one thing that Mr. Hill

12  spec -- you know, focused on.  He say he can't believe that we

13  named the president of the Palestinian Authority as a witness

14  in response to the interrogatory he named.  My response to that

15  is, of course we did.  Our allegation in this case is that the

16  defendants, which is the Palestinian Authority and the PLO, had

17  a policy and implemented the policy of sponsoring and directing

18  and orchestrating terrorist attacks including the attacks that

19  injured our clients.

20          So it's our allegation that this policy came from the

21  top.  It's our allegation that everybody involved, everyone

22  we've named from the leadership of the Palestinian Authority

23  was directly involved.  Now, I say that Mr. Abbas I believe has

24  knowledge about this policy.  Now, one easy way -- if the

25  defendant -- if the defendant doesn't think that's true, they

9

1    can bring Mr. Abbas for a deposition.  They can bring him to

2    trial.  He can say he didn't have knowledge.  I believe he did

3    have knowledge and I don't for a moment understand the

4    defendants' complaint.  They've asked me, who do I believe has

5    knowledge.  Now --

6                 THE COURT:  Now, let me just stop you.

7                 MR. TOLCHIN:  Yes.

8                 THE COURT:  I hear what you're saying, although what

9    you started out saying seems to totally ignore our conversation

10   from the last time.

11                MR. TOLCHIN:  Not in the slightest, Your Honor.  We

12   identified --

13                THE COURT:  Counsel, counsel, look.  All right.

14                MR. TOLCHIN:  You're --

15                THE COURT:  Just to -- just so to be fair to you so

16   you don't say anything that's going to get you in trouble, all

17   right --

18                MR. TOLCHIN:  Um-hum.

19                THE COURT:  -- I have my recollection.  I knew what I

20   meant and I'm telling you that at least what I meant this does

21   not respond to.  Now, you --

22                MR. TOLCHIN:  Your Honor, with all due respect I'm

23   dumbfounded.  We identified in response to the interrogatory

24   for each attack.  We identified --

25                THE COURT:  Okay.

10

1          MR. TOLCHIN:  -- the actual perpetrators of the

2   attacks --

3          THE COURT:  Counsel, counsel, counsel, two things.

4          MR. TOLCHIN:  Yeah.

5          THE COURT:  One, when I start talking you have to

6   listen.

7          MR. TOLCHIN:  Okay.

8          THE COURT:  Two, I'm going to ask you a question.

9          MR. TOLCHIN:  Um-hum.

10         THE COURT:  And I want you to answer to the best of

11  your ability.  When we discussed this the last time what did I

12  say I wanted you to put in these responses, if you recall?

13         MR. TOLCHIN:  You wanted us to, as much as we could,

14  identify those people whom we believe have knowledge about each

15  of the areas that was inquired about and you didn't want us to

16  say all leadership of the defendant.  You didn't want us to say

17  all people named in these documents.  You wanted us to give

18  names of specific people as best we could for each question.

19         THE COURT:  And that's what you took away from what I

20  said.

21         MR. TOLCHIN:  Hundred percent.

22         THE COURT:  Okay.  Then -- okay.  I'm not sure if

23  it's my ability to communicate or your ability to listen.  All

24  right.  I said the purpose of interrogatories is so that the

25  other party can know which individuals might be witnesses in

1  the case, all right, that you have on your side that will be

2  bringing to bear.  You don't remember that?

3          MR. TOLCHIN:  Only the people on my side?  They asked

4  a question, "Identify each person who has knowledge of the

5  attack."  We identified the attacker --

6          THE COURT:  Counsel, counsel, counsel, all right.

7  I'm telling you what I said.  Is it that you don't remember

8  that?

9          MR. TOLCHIN:  If Your Honor's recollection is that we

10 were supposed to identify only the people --

11         THE COURT:  No.

12         MR. TOLCHIN:  -- from our side that we would be

13 bringing --

14         THE COURT:  What I'm saying is -- Counsel --

15         MR. TOLCHIN:  No, I don't remember anything like

16 that.

17         THE COURT:  Counsel, I said the idea of asking

18 interrogatories is so that you can know who has the information

19 that the other side has that may be coming to trial so they can

20 determine who they want to depose.  You don't remember that.

21         MR. TOLCHIN:  Specifically those words, no.  I have

22 the transcript here.  Is there some part of it that Your Honor

23 wants to refer me to because I --

24         THE COURT:  Okay.  So since you -- you have brought

25 allegations about the leadership of the defendants.  What

1    benefit are your answers to the defendant?

2            MR. TOLCHIN:  The defendants' asked --

3            THE COURT:  What benefit are your answers to the

4    defendant?

5            MR. TOLCHIN:  We're identifying -- what benefit --

6    okay.  By identifying these people we are saying that these are

7    the people whom we have knowledge -- whom we believe have

8    knowledge about these things.

9            THE COURT:  But again --

10            MR. TOLCHIN:  If we try to proceed in the case, to

11    call a trial, to seek to depose, to offer in opposition to a

12    summary judgment motion, evidence from any other people then I

13    presume the defendants will come with these interrogatories and

14    they'll say, no, you limited the universe of people with

15    knowledge to these specified people.  That's what I believe

16    what the benefit is.

17            THE COURT:  And, Counsel, you don't remember me

18    saying that what I want you to do is to give information about

19    people who you currently know and that it would not prevent you

20    from finding out information about people -- and this is --

21            MR. TOLCHIN:  Your Honor, I --

22            THE COURT:  As far as I know, you don't know anything

23    about what these people know.

24            MR. TOLCHIN:  No, that's not true, Your Honor.

25    That's not true.  And I've embarked on saying this a couple of

13

1  times and we've got sidetracked.  We identified different

2  categories of people in response to these interrogatories.  One

3  category of people that we identified is the actual

4  perpetrators of the attack, some of whom were -- many of whom

5  who are sitting in Israeli jails.  These are people who have

6  been tried and convicted, in many cases have proudly admitted

7  what they've done, and we've identified those people as having

8  knowledge of the specific attacks.  Mr. Hill didn't tell you

9  about those people when he's making fun of the fact that we

10 identified Mr. Abbas.

11         THE COURT:  Okay.  Well, first of all, I just --

12 well, shouldn't say first of all.  I think your

13 characterization of him saying "making fun" is not a legal

14 description and it's --

15         MR. TOLCHIN:  Oh, no, I think it is, Your Honor,

16 because he wants to say --

17         THE COURT:  Well, Counsel --

18         MR. TOLCHIN:  -- can you believe, Your Honor --

19         THE COURT:  Counsel, Counsel, I don't think "making

20 fun" is a professional way to describe when a counsel disagrees

21 with you.

22         MR. TOLCHIN:  Okay.  But I don't think what Mr. Hill

23 is doing is a genuine argument.  He wants to -- I heard his

24 remarks.  What he said is he's telling Your Honor "they

25 identified the president, they identified Colin Powell, they

14

1  identified Ari Fleischer," as if by doing that we've done

2  something wrong.  Well, Colin Powell made public statements.

3  Colin Powell made a demand to the Palestinian Authority that

4  particular people be arrested and it's our contention that the

5  Palestinian Authority arrested those people and --

6          THE COURT:  Counsel, Counsel --

7          MR. TOLCHIN:  -- released them.

8          THE COURT:  Counsel, of course remember, when I start

9  talking you have to stop.  All right.  I don't see what -- I

10  mean, I understand that your position is that these questions

11  are too broad.  Okay.  And it's certainly possible for you as

12  counsel to say -- to describe what you did before, that is,

13  members of the administration, Colin Powell, Condoleezza Rice

14  because of statements they had made, but the relevance of that

15  for a trial is *de minimis* because these are not people who are

16  going to be at a trial.  Understand, we're trying to get

17  discovery that's relevant for a trial and I don't see any of

18  these people being relevant to any testimony at a trial.  I

19  don't see them being relevant to any motion that the defendants

20  would make where you would have to come in with anything from

21  any of these people in response to any motion that the

22  defendants would make.

23          MR. TOLCHIN:  Your Honor, what you said is completely

24  wrong.  These people are very relevant.  I see the chairman of

25  the Palestinian Authority as having been -- is exactly a

15

1   witness who we would want to call at trial.  I would want to

2   take his deposition.  We've taken his deposition in other

3   cases.  These are the people who by virtue of their position at

4   the time --

5           THE COURT:  Okay.  Counsel, I --

6           MR. TOLCHIN:  Interrupting me again.

7           THE COURT:  What you did was fine.  I mean, you have

8   36 people that you've listed and obviously to the extent that

9   their leadership of the defendants you can make an argument

10  that you'll -- it would be relevant to have those at the trial.

11          MR. TOLCHIN:  Absolutely.

12          THE COURT:  But what I'm -- but understand that when

13  I ask you the question, when I phrased it I was talking about

14  Colin Powell.  I was talking about Condoleezza Rice.  I don't

15  see them as being relevant to a trial.

16          MR. TOLCHIN:  I don't think that's true, Your Honor.

17  Colin Powell said to the Palestinian Authority, this particular

18  person should be arrested.  That's a fact.  The Palestinian

19  Authority then went and arrested him --

20          THE COURT:  Counsel, counsel --

21          MR. TOLCHIN:  -- and released him.

22          THE COURT:  Counsel --

23          MR. TOLCHIN:  Can I ever finish?

24          THE COURT:  Counsel --

25          MR. TOLCHIN:  Can you --

16

1        THE COURT:  Counsel, look --

2        MR. TOLCHIN:  You're interrupt -- I know you asked me

3   not to interrupt you, but every single time I've tried --

4        THE COURT:  Counsel --

5        MR. TOLCHIN:  -- to talk, you've cut me off.  It's

6   like you're -- it's like --

7        THE COURT:  You know, I -- Counsel, I tell first year

8   law students that when the court is asking questions, that's

9   the thing that you answer.  Regardless of what arguments you

10  want to make, you -- you fail to see the fundamental thing in

11  an argument and that is if the Court has a question, your

12  responsibility is to answer the Court's question, not to make

13  your point.

14       MR. TOLCHIN:  I apologize, Your Honor, but I'm

15  feeling frustrated that I'm answering one question --

16       THE COURT:  Well, but --

17       MR. TOLCHIN:  -- and I never get to finish the

18  answer.

19       THE COURT:  But then you start to say -- well, you

20  start to say something like, of course, Colin Powell is

21  relevant to a trial in this case.

22       MR. TOLCHIN:  Absolutely.

23       THE COURT:  But I'm talking about testimony at a

24  trial.  There is going to be no testimony from Colin Powell at

25  a trial in this case.

1          MR. TOLCHIN:  Why is that?  If I serve him a subpoena

2     I presume he'll come.

3          THE COURT:  And he will -- and you -- you believe

4     that what's going to happen in this trial is you're going to

5     have Government officials from the United States testifying

6     about why they made these statements in the media?

7          MR. TOLCHIN:  No.  The fact that he made the

8     statement.

9          THE COURT:  Well, the fact that he made the

10    statement --

11         MR. TOLCHIN:  I mean, a --

12         THE COURT:  -- what's the relevance to that --

13         MR. TOLCHIN:  Be --

14         THE COURT:  -- to the trial?

15         MR. TOLCHIN:  Okay.  I'm going to try it one more

16    time.  Colin Powell asked the Palestinian Authority -- told the

17    Palestinian Authority that a particular individual should be

18    placed into custody because he had carried out a terrorist

19    attack.  The Palestinian Authority then with that knowledge

20    received from Colin Powell and others -- and other sources,

21    they arrested him and then released him and in short order he

22    went and blew up the cafeteria at the Hebrew University.

23         Our -- one of our theories of liability is that by

24    arresting this person with the full knowledge that this person

25    is a loose cannon, a ticking time bomb of a terrorist, the

18

1  Palestinian Authority went through the motions of arresting him

2  to placate the United States for political reasons and then

3  promptly released him and let him go about his terrorist ways

4  knowing full well that his -- that that was his intention.

5           THE COURT:  So did you --

6           MR. TOLCHIN:  So that chain of events --

7           THE COURT:  Your point being that if an allegation by

8  an official of the United States that establishes it as a fact.

9           MR. TOLCHIN:  The allegation is estab -- but what --

10  I have no doubt that is true but --

11          THE COURT:  That was not my question.

12          MR. TOLCHIN:  -- at least establishes the knowledge,

13  the state of mind of the defendant.  This wasn't an accident

14  that the guy got out on parole and how could they have known

15  that he was going to do a terrorist attack.  They had specific

16  knowledge and we argue it meshes right in with the intention

17  and plan and their other terrorist attacks and their overall

18  policy of orchestrating these terrorist attacks while trying to

19  pretend for a cover story that, oh, how could we have known, it

20  has nothing to do with us.  So --

21          THE COURT:  Okay.  So --

22          MR. TOLCHIN:  -- we have Colin Powell making a public

23  statement.  We have Condoleezza Rice making a public statement.

24  We have -- this guy was arrested and held in the Palestinian

25  Authority headquarters.

1            THE COURT:  Okay.  Just so I'll be clear, though.

2    All of the things that you have in your answers are not

3    based -- is there anything in your answer that's actually based

4    on knowledge or are these just beliefs?

5            MR. TOLCHIN:  No.  Everything is based on their

6    leadership roles, their public statements that they made.

7    These guys go on TV and talk.  They make statements.  There's

8    nothing here -- we didn't just go through their website and

9    pick all their leadership and say, we're going to put them on

10   the list.  Every single person we put on the list --

11           THE COURT:  Okay.  Understand.  Do you hear my

12   question?  Everything that you have here is not based on facts

13   but your belief.  For example, even when you talk about the

14   leadership of the defendants you don't know what they know.

15   This is what you believe that they know.

16           MR. TOLCHIN:  Well, obviously I'm not allowed to talk

17   to them.

18           THE COURT:  Right.

19           MR. TOLCHIN:  Only they're allowed to talk to them.

20           THE COURT:  Okay.  So -- I understand that, but -- so

21   is there anything in any of your answers that's actually based

22   on somebody who has knowledge or is this all based on beliefs?

23           MR. TOLCHIN:  I really don't understand your

24   question, Your Honor.  Our belief is that all these people that

25   we identified have knowledge either of the specific carrying

20

1   out of the attack, and that's mostly the people who were

2   convicted, the perpetrators, or of the overall policy of the

3   Palestinian Authority and the PLO during the relevant years.

4              THE COURT:  So you're saying -- all right.  I'll ask

5   it again.  Of the individuals that you have listed, okay -- and

6   understand that there are -- if I take the leadership of -- I

7   mean, there are people who take leadership of the United States

8   and they might say the president knows this because he's in the

9   leadership role, but the question is, in terms of trial

10  questions or discovery that's going to lead us and help us

11  prepare for trial are you alleging that other than your firm

12  belief that the defendants are guilty, which presumes the fact

13  you're going to try to prove at trial, other than that strong

14  held belief, whatever the basis for that is, is there anybody

15  that you've listed that's based on knowledge as opposed to

16  belief?

17             MR. TOLCHIN:  Knowledge of whom?

18             THE COURT:  Knowledge that the person knows what it

19  is that the --

20             MR. TOLCHIN:  All of them, Your Honor.  We didn't

21  make anything up.

22             THE COURT:  Okay.

23             MR. TOLCHIN:  All of these people to our knowledge

24  were involved in one aspect or another --

25             THE COURT:  You mean, Colin Powell --

21

1          MR. TOLCHIN:  -- setting the policy --

2          THE COURT:  Colin Powell knows that these people were

3     involved in preparing -- read the question again.

4          MR. TOLCHIN:  Colin Powell knows --

5          MR. HILL:  The answer, Your Honor, is that --

6          THE COURT:  Read the question again.

7          MR. HILL:  The answer is that "Colin Powell knows

8     that the January 22, 2002, shooting was planned and carried out

9     by Ahmed Barghouti, Nasser Aweis, Al-Masri, Al-Titi, Masalah,

10    Ghanem, Abdullah, Ramadan, and the John Doe defendants acting

11    as agents and employees of the PLO and P.A. within the scope of

12    their agency" --

13         MR. TOLCHIN:  Based --

14         MR. HILL:  -- that's the answer I've got.

15         MR. TOLCHIN:  Based on Colin Powell's public

16    statements we believe that Colin Powell has some knowledge

17    relevant to those topics.

18         THE COURT:  Okay.  You believe that he has some

19    knowledge.  You understand what you --

20         MR. TOLCHIN:  Yes, based on what he said.

21         THE COURT:  Okay.

22         MR. TOLCHIN:  Believe.

23         THE COURT:  Counsel, let me ask my question again.

24    Maybe I'm not being clear.  All these people based on your

25    belief as opposed to you knowing what they know.  I mean, you

22

1  haven't discussed this with any of these people such that

2  you -- I mean, you put stuff in your complaint and you made

3  allegations.  The defendants say, who do you know that has

4  knowledge of this.  You -- just take Colin Powell, for example.

5  You don't know what Colin Powell knows.

6          MR. TOLCHIN:  We know what Colin Powell has said.

7          THE COURT:  Okay.  So -- but you don't know what he

8  knows.  Is that correct?

9          MR. TOLCHIN:  Other than what he said.  I assume he

10  knows what he said.

11          THE COURT:  Okay.  Did he say he had the knowledge

12  that --

13          MR. HILL:  This is the problem, Your Honor.  I've got

14  document requests outstanding for this sort of material.  There

15  are no statements by Secretary Powell about any of these

16  individuals that the plaintiffs have produced to me.  There is

17  no statement about Secretary Powell about the January 22, 2002,

18  shooting in which Ms. Gould and Mr. Waldman were allegedly

19  injured.  There's nothing like that.  And not only is there

20  nothing like that, there's nothing like that for the six other

21  attacks, let alone for the 40 people that are listed in the

22  same way that Secretary Powell --

23          MR. TOLCHIN:  At the same time --

24          MR. HILL:  Just --

25          MR. TOLCHIN:  -- as these terrorist attacks were

23

1  being carried out at the height of the Intifada --

2          THE COURT:  Counsel, all right.  There's a second

3  rule.  You don't interrupt the other counsel.  I think I've

4  tried to not have you interrupt each other.

5          MR. HILL:  Thank you, Your Honor.  As we said in our

6  letter, it's absurd to believe that these 36 people are part of

7  a conspiracy that know who committed each of these seven

8  attacks and that they did it in their capacity as employees of

9  the P.A. and the PLO, both defendants, within the scope and the

10  agency of their employment.  And that's why it's a bad-faith

11  answer and that's why a sanction is appropriate.

12          And we submit -- Your Honor noted earlier that we're

13  not moving very quickly through discovery.  We've got to be

14  done with fact discovery by December.  We are not going to have

15  time to do depositions of 36 or 40 people --

16          THE COURT:  Okay.  Here --

17          MR. HILL:  -- that don't know anything about the

18  case.

19          THE COURT:  Here's the resolution, gentlemen.  All

20  right.  This is -- that was your answer.  And I'll decide

21  whether or not there's a need for sanctions or how to deal with

22  this issue because the answers are what they are.  I've heard

23  plaintiffs' counsel talk about what it is.  I disagree about

24  what the words "knowledge" and "belief" means, but as to what

25  this means for a trial that's on me.  I'll decide what that

24

1   means.

2            MR. TOLCHIN:  Can I make a suggestion which maybe

3   will be helpful?  I would be happy to prepare -- it would take

4   a little time, but I would be happy to prepare with some form

5   of a list or a chart showing you for each of these witnesses

6   why we -- what the source of it is.  In other words, if I said

7   Colin Powell, I'll point you to the document -- to the publicly

8   available source where we got that from so that you can see

9   that none of this is just made up.  I'd be happy to submit such

10  a chart.

11           THE COURT:  Okay.  And I think you misinterpreted my

12  skepticism, Counsel.  I don't think you made it up in the sense

13  that it's -- you know, you just -- you know, just grabbing

14  things out of air.  I think what you're doing is, you have a

15  view of what happened here and you have a view of who would

16  have necessarily had to know about it based upon your belief

17  and you've extrapolated that and that's the way you've done it.

18  I mean, I believe you believe this.  But it's not -- whether or

19  not it's a fact -- I mean, you're assuming the fact that you're

20  trying to prove and you believe the fact that you're trying to

21  prove and if Colin Powell made statements -- I don't know what

22  things he made.  You want to read things into those things,

23  but --

24           MR. TOLCHIN:  Your Honor, I just want to point out --

25           THE COURT:  I'm not sanctioning you under Rule 11 or

25

1   anything.

2          MR. TOLCHIN:  No, I understand.  I want to -- if I

3   may, I want to say two things.  Number one, the question that

4   we're answering in each case if we look at their

5   interrogatories -- and I'm just reading, for example,

6   interrogatory 2, which I just opened up to, and the pattern

7   repeats:  "Identify all persons you know have knowledge or who

8   you believe may have knowledge that" blah, blah, blah.

9          So the distinction Your Honor is drawing between

10  people we know have knowledge and people who we may believe

11  have knowledge, even though I think we know they all have

12  knowledge, the distinction is not fair given the question.

13  That's the first point I wanted to make.

14         The second thing I wanted to say is the sanction.  I

15  wanted to point out that the sanction that Mr. Hill is arguing

16  for seems a little bit inverted.  He's saying that because we

17  identified these people and he doesn't like how he identified

18  them therefore we shouldn't be able to use these witnesses at

19  trial.  I don't see how that sanction flows.  If he thinks

20  these people really don't have knowledge he should be happy to

21  limit the plaintiffs' case as much as possible to these named

22  witnesses.  It's only because, I would submit, that the people

23  we identified touch a nerve because they really do not have

24  knowledge and they're in charge of the people who have

25  knowledge and they're very close to the people who have

26

1  knowledge.  That's why he's desperate to find some way to

2  juggle out of these witnesses being allowed to testify at

3  trial.  If Mr. Abbas knows nothing, he can come and say he

4  knows nothing, if he's truthful.

5          THE COURT:  Well, what it comes down to, Coun --

6  frankly, Counsel, is whether or not when you're -- if you

7  decide to call these people at trial whether or not the trial

8  judge would think that these answers are appropriate enough for

9  you to call them as witnesses based upon these responses, I

10 suggest to you that regardless of the conversation that we're

11 having here today, I would not -- I would not have the

12 confidence that if you suggested that, well, you know, we

13 disclosed Colin Powell, that the trial judge is going to say,

14 oh, well, okay, I'll issue a subpoena for Colin Powell based

15 upon these answers, but --

16         MR. HILL:  May I respond just briefly, Your Honor?

17         THE COURT:  Yes.

18         MR. HILL:  Here's the concern.  We're halfway through

19 fact discovery.  We've been at this for nine months.  We've got

20 another nine months to go.  And I've got a list of 36 people

21 that appear to me to have no good-faith basis to be named as

22 witnesses for the specific events that I've asked the

23 plaintiffs to identify them about.  The plaintiffs have

24 identified them as persons with knowledge of all seven of these

25 attacks, the details of the attacks, who did it, how they did

27

1    it, who they conspired with, where they got their weapons, et

2    cetera, et cetera.

3              MR. TOLCHIN:  No.

4              MR. HILL:  And my concern is I think it should be

5    obvious to the Court by now.  The plaintiffs are trying to

6    extend the discovery period in the case.  I don't want this to

7    become the basis of trying to extend the discovery period and

8    that's why I'm asking for the sanctions.

9              THE COURT:  Well, okay.  First of all, it's not going

10   to extend the discovery period, but the last thing I'll say is

11   this.  I thought I had made it clear at the last session the

12   distinction between knowing and believing and that if you had

13   some people that you wanted to make it clear that it was based

14   on belief, you could go ahead and do that.  That's why I tried

15   to ask you even today whether or not these are people that it's

16   based on belief because, you know, if the defendants want to

17   discount your belief and say that's not a sufficient basis for

18   us to go forward with depositions then, you know, at least they

19   know it's based on your belief as opposed to any specific

20   knowledge you have that any of the individuals you've listed

21   have specific knowledge of the very precise things that are

22   indicated in the interrogatories.

23             MR. TOLCHIN:  Your Honor, if I may, what Mr. Hill

24   said and what I think Your Honor is picking up on is just

25   inaccurate.  There at -- when we say that Mahmoud Abbas knows

28

1    about the particular attack -- you know, there's different

2    aspects to the attack.  Yes, going out and buying the gun and

3    buying the weapons, and choosing the ambush site, and buying

4    the disguise or those particulars and choosing the date and

5    time, that's one aspect of planning the attack.  But if you're

6    the paymaster, if you're the chairman of the organization

7    that's funding the department or organization or group that's

8    carrying out this attack, that's another form of knowledge.

9    Maybe Mahmoud Abbas doesn't know who bought the gun or what day

10   they were going to do it.  Maybe he wasn't involved in

11   particularly picking the target, but when his organization is

12   funding the group that's carrying out this attack that is also

13   knowledge relevant to the carrying out of the attack.

14           We're not saying, as Mr. Hill seems to be suggesting

15   that we are, we're not saying that the upper echelon

16   Palestinian Authority leadership chose each and every attack

17   and was involved in the nitty-gritty day-to-day planning, but

18   by implementing the policy of encouraging these attacks, by

19   doing such things as giving stipends to the attackers, and

20   pensions to the suicide bombers' families, and paying these

21   people -- if they get arrested paying them a salary while

22   they're in prison, and funding the groups that carried out

23   these attacks, and in some cases in some of the attacks at

24   issue here it was actually employees, police officers,

25   Palestinian Authority Security personnel who were involved in

29

1  carrying out the attack.  So if a Palestinian Authority

2  Security personnel was involved in the attack and he did it

3  with the knowledge or consent of his superiors, we named the

4  superiors too, even though they may not have been involved in

5  the specific carrying out of the plan.

6           He's trying to slice it and dice it and say that all

7  these people have to have not -- had knowledge of the

8  particular attack.  We never said that.  Some of these people

9  are identified because they know about the particulars of

10 individual attacks; some of them have knowledge of the overall

11 plan, call it the conspiracy, call it the bigger picture.  And

12 I think his remarks are just completely unfair.  They're

13 completely wrong.  And I don't think that we have done anything

14 improper.

15          THE COURT:  Okay.  So I take it that you have not

16 sought to distinguish those people in your responses, though.

17          MR. TOLCHIN:  Only be -- no, but only because the way

18 the question was asked, it asked for everything together.  Each

19 question asks for like "identify everybody who has knowledge

20 of" and then like five categories, like meshed together in a

21 compound fashion, so we answered with a list.  They didn't --

22 these were not broken down individual questions.

23          And I would submit, Your Honor, that the -- that

24 complaining that we're going to run out of time, we served

25 these 36 people back I believe it was February 9th.  So here we

30

1  are -- what is today -- March 20th.  I haven't seen a

2  deposition notice.  I haven't seen any -- he's complaining that

3  we're going to run out of time, but what has he done with these

4  names since he got them more than a month ago?

5          THE COURT:  And what did you expect him to do with

6  them?

7          MR. TOLCHIN:  Well, I would expect if he was genuine

8  about wanting to pursue any form of discovery with respect to

9  them he should pursue it, but I don't think --

10          THE COURT:  Well, for example -- no, seriously.

11  Since we're -- since you've mentioned it, what would you have

12  him do with the names that you have?  I mean, let's say you

13  were on his side.  What would you do in that position?

14          MR. TOLCHIN:  Well, in that position if -- as to the

15  witnesses who are his employees, I'd probably do nothing

16  because why should --

17          THE COURT:  Okay.  And with --

18          MR. TOLCHIN:  I'd bring them to trial.

19          THE COURT:  Okay.  But the ones that -- and the ones

20  that aren't his employees, what would you do then?

21          MR. TOLCHIN:  Consider whether you want to --

22          THE COURT:  Based on what?

23          MR. TOLCHIN:  Consider whether you want to seek to

24  depose them or --

25          THE COURT:  Based on what?

31

1          MR. TOLCHIN:  Based on what you know about them and

2    based on --

3          THE COURT:  But what do you --

4          MR. TOLCHIN:  And based on the strategic

5    consideration of whether you think -- whether you assess that

6    the plaintiff is really going to be able to get these people to

7    come to trial or not.

8          THE COURT:  I know, but based upon your description

9    of how you put the people into the answer --

10          MR. TOLCHIN:  Um-hum.

11          THE COURT:  -- how would he be able to determine who

12    to depose?

13          MR. TOLCHIN:  Well, that's why I'm -- I think you're

14    making my point, Your Honor.  It's he's crying crocodile tears.

15    He has no intention of deposing any of these individuals who

16    are functionaries of the defendant.  He has no intention of

17    deposing the perpetrators of the attacks who are convicted and

18    sitting in jail.  There's no reason he would do that because it

19    would be handing me the opportunity to gather evidence.  So

20    that leaves the handful of people, Condoleezza Rice and Colin

21    Powell, who my guess is that his assessment would be, why

22    should I depose these people because the plaintiff is going to

23    have a hard time getting them to come to court.

24          So from his perspective, the answer we gave him is

25    very helpful.  And the fact that he's coming in to Your Honor

32

1  and complaining that because of the answer he's been deprived

2  of the ability to do discovery, how?  How?  We told him these

3  people and they're for the most part people who he controls,

4  who he can talk to every day if he wants to, and who had

5  complete access to.  So how has this hampered him in any way

6  that we should be sanctioned?

7            THE COURT:  Okay.  That's been very helpful.

8  Anything else before I take this under submission?

9            MR. HILL:  Unless Your Honor has something for me I

10  think we've gone at it at length.

11            THE COURT:  No, that's it.  All right.  The plaintiff

12  has issue with some of your answers and that concerns the two

13  suspected alleged or proven terrorists.  Your response says,

14  you know, you can't find anything.  I'm not sure what that

15  means.

16            MR. HILL:  Well, I have an update.  So as I said in

17  our letter, we are continuing our investigation to try and

18  provide the names that are responsive to the interrogatories.

19  Let's put a pin in the issue about whether we have to do to

20  get -- do more than give names.  We have twice supplemented the

21  interrogatory concerning the arrest of Abdullah Barghouti.  We

22  initially provided a name of the person who happens to be the

23  30(b)(6) designee on the Rule 30(b)(6) notice that the

24  defendant -- that the plaintiffs have noticed the P.A. on this

25  same issue.  And then I provided on Friday a second

1   supplemental response with two additional names.

2          At this point in time I have those three names.  I've

3   provided the names of those individuals.  I've provided their

4   identification numbers as the plaintiffs have requested and I

5   am continuing my investigation.  We are continuing preparing

6   the witness to testify at a Rule 30(b)(6) deposition that the

7   plaintiffs have noticed on this very topic.  And I respectfully

8   submit that the Court doesn't need to do anything.  I'm doing

9   what the rules require, which is to supplement as the

10  information becomes available to us as counsel.  We'll continue

11  to do that.  We've done that in good faith twice since the

12  letters were written last month and we're going to have a

13  30(b)(6) deposition on both of these --

14          THE COURT:  You mean --

15          MR. HILL:  -- issues at the end of next --

16          THE COURT:  You're going to have a 30(b)(6) witness

17  on this question about these two individuals being detained and

18  then let go?

19          MR. HILL:  And then released, correct.  The

20  plaintiffs have noticed that deposition and it was originally

21  noticed --

22          THE COURT:  They've noticed a 30(b)(6)?

23          MR. HILL:  They've noticed a 30(b)(6) on that topic.

24  It was originally set for this week by agreement.  We've pushed

25  it back to the end of April.  We anticipate producing General

34

1    Mohammed Jebrini [Ph.], who was a senior official within the

2    Palestinian Security Services during this time frame, to

3    testify about these two individuals as well as three others

4    that the plaintiffs have noticed 30(b)(6) deposition about

5    whether they were arrested by the P.A. at any point in time --

6              THE COURT:  And what about documents?

7              MR. HILL:  -- and were released.  There are no

8    document requests pertaining to these issues that --

9              THE COURT:  There's only about --

10             MR. HILL:  -- I've been -- that I've received.

11             THE COURT:  -- these are the interrogatories or --

12             MR. HILL:  Correct, Your Honor.

13             THE COURT:  And you're going to -- is that correct,

14   Counsel, that that's going to be a 30(b)(6) that's going to

15   address these questions?

16             MR. TOLCHIN:  There is going to be a 30(b)(6).  I'm

17   not holding my breath about how it will address these

18   questions, but I'll wait for my turn to give you a full answer.

19             THE COURT:  Well, that's the answer to the question

20   is there will be a 30(b)(6) to address the question.  Whether

21   or not the addressing of the question is adequate is what's

22   your question.

23             MR. TOLCHIN:  Sure.

24             THE COURT:  So, yes, there will be somebody to

25   address it.

35

1          MR. HILL:  Yes, we've noticed a 30(b)(6) witness --

2          THE COURT:  Okay.

3          MR. HILL:  -- and we'll obviously deal with the

4   adequacy if that effort takes place.

5          THE COURT:  All right.  This question about Sana'a

6   Shehadeh, what's -- first of all, why and why now?  I mean, is

7   this somebody we just found out about?

8          MR. HILL:  Your Honor, Mr. Rochon is going to address

9   that on our behalf.

10          THE COURT:  Okay.  But --

11          MR. ROCHON:  I thought that was for him, though,

12   so --

13          MR. TOLCHIN:  Yeah.

14          THE COURT:  No, that's for you.  I mean, what's -- I

15   know you've asked for this assistance from the Hague and the

16   first question that occurred to me is this case has been going

17   on for some time and I'd be concerned about sort of Johnny-

18   come-lately people.  I mean, is this somebody who you just

19   found out about?

20          MR. TOLCHIN:  I can't answer that question as I stand

21   here.  I don't want to commit myself as to when we found out

22   about it without checking.

23          THE COURT:  Well --

24          MR. TOLCHIN:  I --

25          THE COURT:  -- can you give me a ballpark?  I mean --

36

1          MR. TOLCHIN:  What?

2          THE COURT:  Was this --

3          MR. TOLCHIN:  No, I can't.  If you want -- if we

4    took -- I'd have to check with somebody else and I just don't

5    have that answer for you and I don't want to mis --

6          THE COURT:  All right.  Well, we'll --

7          MR. TOLCHIN:  I don't want to misrepresent.

8          THE COURT:  We'll defer this but what I want you to

9    understand is --

10         MR. TOLCHIN:  I could answer that in writing.

11         THE COURT:  Okay.  You can do that.  Understand that

12   one of my considerations particularly when we're going to use

13   something as extraordinary as a Hague letter is the timeliness

14   of the request, that is, because those inherently cause delays,

15   as everybody knows, if you ask me to do a Hague request for

16   somebody in March of 2012 and I will undoubtedly want to know

17   why is it that we're being asked to do this at this point in

18   time because, you know, I'm not going to have six months when a

19   case -- we have a 2004 case I believe here.  And so at the very

20   least I'd have some representations about when and why this

21   person became so important that we needed to go through this

22   step and why they would not -- why this was not brought up

23   earlier.

24         MR. TOLCHIN:  Your Honor, the fact it is a 2004 case

25   but that time isn't chargeable to the plaintiffs.

37

1          THE COURT:  Okay.

2          MR. TOLCHIN:  So --

3          THE COURT:  It doesn't really matter if it's 2004,

4    2006.  Even if it's 2008, it would still be the same question

5    if you have a period of discovery and you started discovery if

6    you want to depose those -- and it'd actually be the same if

7    you had a regular deposition.  Forget the Hague letter.  And if

8    you wanted to start doing depositions of people and you want to

9    start noticing depositions, I want to know why they're coming

10   up now and why they didn't come up earlier.

11          MR. TOLCHIN:  Your Honor, are we -- I appreciate

12   that.  Are we still addressing the Barghouti and Hashaika

13   issues because I --

14          THE COURT:  I --

15          MR. TOLCHIN:  I'd like to --

16          THE COURT:  There is more you wanted to say about it

17   besides 30(b)(6)?

18          MR. TOLCHIN:  For sure.  For sure.

19          THE COURT:  Oh.  What --

20          MR. TOLCHIN:  No, no.  There really is.  You know,

21   saying that there's a 30(b)(6) witness coming it's -- I think

22   if you -- I'd like Your Honor to see for each of these the

23   bigger picture because I think that there is a -- call it a

24   game a-foot, an evasion by the defendants and, you know,

25   sometimes you have to step back to see the bigger picture.

38

1  Sometimes you don't see it happening step by step.  So I'd just

2  like Your Honor to -- I'd like to run through the facts as they

3  played out on each of these.  I promise not to take up too much

4  time.

5       THE COURT:  Okay.  But why are we through the facts?

6  I mean, is -- my understanding is that you asked the question.

7  You wanted information on these two people who were arrested

8  and then released.  You've now asked for a 30(b)(6).  The

9  defendants said there are no documents.  Whether or not if --

10  is that what you're taking issue with?

11       MR. TOLCHIN:  No, Your Honor.  We asked -- we served

12  interrogatories asking for them to identify people who know

13  about these detentions.  Now, first they told us a whole lot of

14  objections.  We met and conferred and asked them to drop -- I'm

15  talking about Barghouti right now.  We asked them to drop the

16  objections that's in our meet and confer and we wrote Your

17  Honor a letter asking for a conference which I gather is now

18  asking for the objections to be overruled.

19       In the meanwhile, we served a 30(b)(6) notice.  Why?

20  Because one of the things that the defendants said when we

21  asked Your Honor to overrule the objections is they said, why

22  they asked you for this as an interrogatory, they should pursue

23  a 30(b)(6) notice.  Okay.

24       So we accepted the invitation.  We served a 30(b)(6)

25  notice.  However, if they bring us a witness who is a 30(b)(6)

39

1  witness, somebody who they've prepared to speak on behalf of

2  the entity and tell us what the entity claims to know about

3  this detention of Mr. Barghouti, that is not a substitute.

4  That is not a replacement for having them tell us who in their

5  organization has knowledge about the detention of Mr.

6  Barghouti.  Presumably, this 30(b)(6) witness is getting his

7  information from somewhere.  Somebody must be -- either he

8  knows of his personal knowledge, in which case they should

9  identify him, or he's gathering information from others who

10 have knowledge, in which case there's no reason why they

11 shouldn't tell us who in the organization has knowledge or he's

12 reviewing documents, in which case they should tell us there's

13 X, Y and Z documents out there, so --

14        THE COURT:  Okay.  I hear what you're saying,

15 although now I'm not sure why you're in a 30(b)(6).

16        MR. TOLCHIN:  We scheduled a 30(b)(6) because they

17 said -- look, if they had answ -- is they had said --

18        THE COURT:  I understand that, but if what you're

19 saying is a 30(b)(6) is not a resolution to the

20 interrogatories, I'm not sure why we're having a 30(b)(6).  Did

21 I miss something?

22        MR. TOLCHIN:  They had said that the reason why --

23 that if we want to know about this, we should serve a 30(b)(6)

24 notice, so we did.  And if this witness comes and tells us --

25 and by the way, they haven't told us -- one of our -- one

40

1  section of our -- one item in our interrogatory was for anyone

2  you identify tell us what's the general scope of his knowledge

3  and how he comes to know it, what was his rank and position,

4  basic information about who he is and how he knows and what he

5  knows.

6          THE COURT:  Okay.

7          MR. TOLCHIN:  And --

8          THE COURT:  Let me just stop you because I'm only

9  interested in this:  one, there's the issue raised by Barghouti

10 and --

11         MR. HILL:  His name is Hashaika, Your Honor.

12         THE COURT:  Hashaika.  And what the defendants have

13 represented to me is there's going to be a 30(b)(6).  I thought

14 that was in lieu of the interrogatories.

15         MR. HILL:  No.  I'm doing both, Your Honor.

16         THE COURT:  Oh, okay.

17         MR. HILL:  I'm answering the interrogatories --

18         THE COURT:  So --

19         MR. HILL:  -- to the extent required by the Local

20 Rule which is to provide the names.  I've done that.

21 Identified three people who I found know Barghouti.  I'm still

22 look on Mohammed Hashaika --

23         THE COURT:  Okay.  Then why are we still --

24         MR. HILL:  -- and as I find them I will do that.

25         THE COURT:  -- discussing this?

41

1          MR. HILL:  I don't understand.  I think -- we've

2     agreed to answer them to the extent the Local Rules require.

3     We're also going to have a 30(b)(6) at the end of April.  I

4     don't think there's any need for Your Honor to do anything at

5     this point.

6          THE COURT:  Well, then what are we -- why are we

7     discussing this?

8          MR. TOLCHIN:  Your Honor, they have not told us who

9     the people are.  They've said a name but they have not told us

10    a rank.  They have not told us what his position was and they

11    have not told us that these are the only people who have

12    knowledge because everything they tell us --

13         THE COURT:  Wait a minute.  Have they answered them

14    or have they haven't answered them?

15         MR. TOLCHIN:  There's a raft of objections -- a raft

16    of objections.  That's what we wrote to Your Honor saying --

17         THE COURT:  Okay.

18         MR. TOLCHIN:  -- take away these objections so we

19    know --

20         THE COURT:  But you -- okay, are you going to answer

21    them or not?  I'm --

22         MR. HILL:  Your Honor, I have already answered them

23    to the extent the Local Rules allow them to be asked.  They

24    don't just ask for names.  As Your Honor may recall they --

25         MR. TOLCHIN:  But let me --

42

 1          MR. HILL:  They essentially require a biography of

 2  each person, which the Local Rules don't allow and I --

 3          MR. TOLCHIN:  I can short-circuit this --

 4          THE COURT:  Wait, wait, wait, wait, wait.  I'm sorry.

 5          MR. HILL:  So to the extent we have identified the

 6  names of employees with knowledge about the arrests and alleged

 7  release of these two persons, we have provided them.  To the

 8  extent we learn them, we will provide those names and we will

 9  also produce a 30(b)(6) witness in the end of April to testify

10  about the P.A.'s knowledge of these names.

11          THE COURT:  Okay.  But I'm not sure -- what Local

12  Rule are you relying on for this --

13          MR. HILL:  I'm relying on Local Rule --

14          THE COURT:  -- limited --

15          MR. HILL:  -- 33.3(a) which provides that unless

16  otherwise ordered by the Court at the commencement of discovery

17  interrogatories will be restricted to those seeking --

18          THE COURT:  And you think this is the --

19          MR. HILL:  -- names --

20          THE COURT:  -- commencement of discovery now?

21          MR. HILL:  I had thought that that rule applied until

22  the counterveiling rule, which at the end says you can ask for

23  detention in interrogatories.  But here's what the rule asks

24  for beyond names, Your Honor.  The interrogatories.  Excuse me.

25  The interrogatory asks for "The nature and scope of the

43

1  employee's relevant knowledge, the origins and sources of the

2  employee's relevant knowledge, all positions and/or jobs held

3  by the employee in the P.A. and/or the PLO and any, all work or

4  employment performed by the employee for the P.A. and/or the

5  PLO at the times the employee acquired the relevant knowledge,

6  all positions and/or jobs currently held by the employee and

7  the P.A. and the PLO, and any and all work or employment

8  currently performed by the employee for the P.A. and/or the PLO

9  including without limitation a detailed description of (1) the

10  titles, nature, purposes, responsibilities and duties of any

11  and all such positions, jobs, work and/or employment; (2) the

12  ministries, agencies, divisions, bureaus, departments and/or

13  instrumentalities of the P.A. and/or the PLO and/or in" -- I'm

14  sorry -- "in and/or for which the employee performed such

15  positions, jobs, work and/or employment; (3) the rank or ranks

16  held by the employee in all positions, jobs, work and/or

17  employment; and (4) the names, titles and positions of all

18  officials and/or employees of the P.A. and/or the PLO to whom

19  the employee is directly or indirectly subordinate in all such

20  positions, jobs, work and/or employment."  And we submit that

21  that's contrary to the Local Rule.  The Local Rule says when

22  you identify someone, what you have to do is provide their

23  name, present or last address and referring to a natural

24  person, additionally their present or last known place of

25  employment, so --

44

1          THE COURT:  Okay.  So the issue is whether or not he

2   gets to answer those other questions related to these

3   individuals?

4          MR. HILL:  When the [indiscernible] --

5          MR. TOLCHIN:  That's one issue.

6          MR. HILL:  Yeah.

7          MR. TOLCHIN:  First, I think Mr. Hill has to correct

8   himself about something, a factual misstatement.  I believe

9   Mr. Hill said that he produced three names.  I see one.  And

10  Mohammed Mustafa Mohammed Jebrini on page 7 of the response.

11  He says the Local Rules require him to give his address;

12  there's no address.  And I respectfully submit, Your Honor,

13  that require -- requiring that he -- asking for each person to

14  say, what's his job and which entity does he work for, which is

15  basically what all that boils down to, is not unreasonable in

16  the slightest.  Now, this --

17          THE COURT:  Well, if -- actually, if you boiled it

18  down to that, there wouldn't be any question.

19          MR. TOLCHIN:  Now, I would say this.  What I said

20  before I could shortcut all this.  If our -- our application,

21  Your Honor, was to strike their objections.  Now, I don't know

22  whether any -- they've told us that only one person in the

23  whole P.A. has knowledge of the detention of Mr. Barghouti and

24  that person is Mister -- is General Jebrini.  Now, if it truly

25  is their contention that he's the only person who's knowledge,

45

1  than I would ask are there any other people having their names

2  withheld from production because of the raft of objections.  If

3  there are no people whose names are being withheld then how

4  would it prejudice the defendant to either withdraw the

5  objections or have them stricken?  If there are people whose

6  names are being withheld then we should deal with those

7  objections.

8          THE COURT:  Although I have -- well, all I can say

9  is, I don't see how any of the objections based on Local Rule

10  33 would prevent him from giving you names.

11          MR. HILL:  Your Honor, I'm not holding back any

12  names.  As of now we know three names.  Mr. Tolchin hasn't read

13  the FedEx I sent him on Friday apparently but I sent him a

14  second supplemental response on Friday that lists two

15  additional names in addition to General Jebrini.  It provides

16  their identification numbers, which is what they actually asked

17  for as opposed to addresses and that sort of thing.

18          THE COURT:  Okay.

19          MR. HILL:  So I'm not withholding any names that I

20  know right now.  And we as counsel continue to learn names of

21  persons with knowledge, of employees with knowledge that are

22  responsive to these requests, we will produce them.

23          MR. TOLCHIN:  That's --

24          MR. HILL:  I'm moving [indiscernible] supplement --

25          MR. TOLCHIN:  This is what we have here.  We -- after

46

1  months of pursuing this question, the answer -- and if you sent

2  it to Federal Express on Friday I was in a deposition all day

3  yesterday and it could be it's waiting for me, but sending it

4  to me so that it arrives the day before the conference probably

5  isn't fair, but --

6       THE COURT:  Compared to people who hand it to people

7  at the conference I think is not so bad if you get it the day

8  before.

9       MR. TOLCHIN:  Okay.

10      MR. HILL:  I still sent it as soon as I could, Your

11  Honor.

12      MR. TOLCHIN:  The response that we have says we

13  provided the following name, Jebrini, and their investigation

14  is continuing and they'll supplement the answer.

15      Now, look, Jebrini was a general.  I assume the

16  general doesn't go down to the jail cell and watch the prisoner

17  being detained.  I assume that someplace between the jailer and

18  Jebrini there must have been others who had knowledge of this

19  detention.  And Jebrini, the general, has people above him who

20  certainly set the pol -- decided whether to detain this guy or

21  not.  I don't even know if Jebrini is -- if they claimed --

22      THE COURT:  All right.  I will say that it's

23  interesting that you take different approaches.  You do sort of

24  like the broad answer, you give the narrow answer, although

25  given the things that we're talking about you're still in the

47

1  realm of assumption, Counsel.  I should -- I mean, even as

2  you're describing it, it is not -- it does not follow to me

3  logically that the -- down the chain of command people know

4  names and details.

5          MR. TOLCHIN:  So let them tell us --

6          THE COURT:  But I understand --

7          MR. TOLCHIN:  -- that there's nobody else.

8          THE COURT:  Okay.  Look, he's investigating.  What

9  you started to say is, there is a general and people under him.

10 He's not -- the general is not doing -- all I'm responding to

11 and you have to listen when I'm saying this --

12         MR. TOLCHIN:  Um-hum.

13         THE COURT:  -- is the fact that other people below

14 don't know is not to me a surprise.

15         MR. TOLCHIN:  Your Honor --

16         THE COURT:  I mean, the way things happen in life is

17 that sometimes people down the line they know what they're

18 doing.  They don't know who they're doing it to.  They don't

19 know why they're doing it.

20         MR. TOLCHIN:  Okay.

21         THE COURT:  So it doesn't follow that there are

22 people who -- you could ask him, do you -- were you involved in

23 the detention of Barghouti and they'd say, "I have no idea."

24 They don't tell us.  They just tell us, "Go pick somebody up."

25         MR. TOLCHIN:  But here we are, Judge.  Now it's March

48

1    20th.

2            THE COURT:  And --

3            MR. TOLCHIN:  Their first answer was November 10th.

4    On November 10th they said, "Our investigation is continuing."

5    Then they served a second answer which was dated March 9th.

6    And March 9th they say, "Okay, Jebrini, but our investigation

7    is continuing."  Now I'm told there's two more people sitting

8    mi -- so we have November, December, January, February March,

9    we have five months.  I don't -- what is this investigation?

10   When did they find out about Jebrini?  How is it that Jebrini

11   is the 30(b)(6) notice?  Did they -- is the 30(b)(6) witness?

12   Is Jebrini's knowledge only because of the 30(b)(6) notice?

13   They --

14           THE COURT:  Well, aren't you going to ask him that?

15           MR. TOLCHIN:  Well, we are, but before I stand here

16   accused that I'm going to be the cause of making discovery to

17   get extended when they've been hot on this investigation for

18   six months already since these interrogatories were served,

19   that's just not fair.  And we haven't even talked about

20   Hashaika yet.

21           THE COURT:  What's -- I'm not sure what fairness has

22   to do with it.  I mean, I understand lawyers say who's causing

23   delays and who's not causing delays, but all I'm interested in

24   is making sure everybody does what they're supposed to do.  So

25   I'm not basing it on his representation that you're delaying

49

1   anything if that's what he represented.  What difference does

2   it make what he represents?  You --

3          MR. TOLCHIN:  Well, if it doesn't --

4          THE COURT:  Do you think that --

5          MR. TOLCHIN:  I don't know.  If it doesn't make a

6   difference what a lawyer represents or misrepresents to the

7   Court, then I guess it's time to retire.

8          THE COURT:  Well, no, no.  That's not what I said.

9   I'm not going to base any decision on what a lawyer says unless

10  what the lawyer says is in an affidavit and he signs it.

11  Lawyers say lots of things in front of me.  I'm not going to

12  base a decision on that.  You think -- do you really think --

13  well, maybe you do.  I'm sorry.  You said you've had bad

14  experiences with judges.  I don't consider -- I don't make any

15  decision based upon a lawyer's representation because you've

16  been throwing representations back and forth.  You think that

17  I'm sitting here saying, oh, what he says is true, what he says

18  is true?  I'd go crazy.  That's just not going to work.

19          So if all this is in the defense of the question of

20  whether or not you're delaying discovery, I don't care who

21  delayed discovery.  Discovery is going to fold.  And no

22  decision is going to be based on whether or not you are the

23  party that was holding things up or he was the party holding

24  things up.  I don't think either of you has anything to be

25  proud of there.  So if this -- if that's all this is, then we

50

1   can sort of move along on this.

2          MR. TOLCHIN:  Can we talk about Hashaika for a

3   minute?

4          THE COURT:  Is it going to be anything different from

5   Barghouti in the sense that -- he's got to answer to the

6   interrogatories and, by the way, if he doesn't answer to

7   interrogatories and doesn't answer them adequately, he's not --

8   he's not going to cause discovery to end.

9          MR. TOLCHIN:  Your Honor, we want the objections to

10  be ruled on.  That's what we made application to.

11         THE COURT:  I will rule on your objections.  The

12  objections are -- but the objection is based on the Local

13  Rules.

14         MR. TOLCHIN:  No, that's the one that he chose to

15  speak about.  In his res -- in the actual responses there's a

16  litany of objections.  They're all the usual over burdensome,

17  overbroad, et cetera, et cetera objections.  And what -- from

18  our experience is what happens is if that people are not --

19  answers are not given and we don't know.  But when he says the

20  only witness is Jebrini and now Hashaika, by the way, the

21  Jebrini thing becomes even more interesting because for --

22         THE COURT:  Okay.  So what's your point?  What --

23         MR. TOLCHIN:  We don't know if there's more people

24  out there who he's not telling us about because he believes

25  that it's protected by one of the objections that he's made.

51

1  If the objections were to be eliminated we'd get a straight

2  answer.

3          THE COURT:  Which object -- you haven't named any

4  objection that could eliminate a name.

5          MR. HILL:  I haven't made any objections that would

6  eliminate names, Your Honor.  I've objected to the amount of

7  detail that he wants to -- me to provide along with the names

8  and I'm standing --

9          MR. TOLCHIN:  So do we have a representation that no

10  names are --

11          THE COURT:  Counsel --

12          MR. TOLCHIN:  -- being withheld?

13          THE COURT:  Counsel, if -- articulate for me any

14  objection that he has that you think would limit the names that

15  he'd be required to produce and I'll rule on it right now.

16          MR. TOLCHIN:  Just give me a moment and I will.  The

17  objection:

18          "The interrogatory is overly broad.  It's unduly

19  burdensome, particularly with respect to its lack of a time

20  frame and the lack of any reasonable restrictions as to the

21  scope of information it requests, e.g., its request for

22  description of all positions and jobs held by the employee.

23  The interrogatory seeks disclosure of information that is

24  irrelevant to any of the issues presented by plaintiffs' first

25  amended complaint.  The interrogatory is not reached" --

52

1          THE COURT:  Are you saying all of these --

2          MR. TOLCHIN:  All of these.

3          THE COURT:  I don't see how any of these would

4     cause -- I don't see how these could be a defense to naming

5     anybody.

6          MR. TOLCHIN:  Well, he's asserted them.  He says, "I

7     object to this question because of these objections."  The

8     objections go on for two pages.  And then there's general

9     objections that preceded, so there's all together, 1, 2, 3, 4,

10    5, 6 pages of objections.  And the same applies to the

11    Hashaika.  If we strike the objections then we'll get -- then

12    we know we've got a straight answer.

13         THE COURT:  Counsel, is there any -- do any of your

14    objections result in any names not being provided?

15         MR. HILL:  No.

16         MR. TOLCHIN:  Then why are they there?

17         THE COURT:  Because lawyers do that.

18         MR. HILL:  Because you asked for -- because he asked

19    for more than names.  He asked for biographies on all of these

20    people and we object to that.

21         MR. TOLCHIN:  All of these people.  He's told us one

22    guy.

23         THE COURT:  Okay.

24         MR. TOLCHIN:  What do you mean "all of these people"?

25         THE COURT:  Anything else?  Counsel, we're going to

1  finish this in ten minutes if you -- if either you have

2  something more important or if you think this is the most

3  important thing on your list, we'll continue with it.

4        MR. TOLCHIN:  Well, this is important to us, so is

5  Your Honor making a ruling as to the objections to the

6  Barghouti and Hashaika object -- interrogatories or is he

7  withdrawing the objections or --

8        THE COURT:  I'm not going to rule on a multiple-phase

9  objection.  If you're asking for anything in particular you

10  want me to rule on -- you named several things.

11        MR. TOLCHIN:  No, I wanted you to rule as we wrote in

12  our letter.  This was our original --

13        THE COURT:  Okay.

14        MR. TOLCHIN:  -- application.

15        THE COURT:  But understand that the --

16        MR. TOLCHIN:  This is what brought us.

17        THE COURT:  -- the objections go to your entire

18  questions not just the question of names.

19        MR. TOLCHIN:  Well, they don't specify that.

20  There's --

21        THE COURT:  And that's why I asked --

22        MR. TOLCHIN:  -- six pages of objections.

23        THE COURT:  That's why I asked counsel, do any of the

24  objections go to the production of names.  He said no.

25        MR. TOLCHIN:  Okay.  So --

54

1          THE COURT:  You --

2          MR. TOLCHIN:  -- that does not apply -- does that

3    mean that for both Barghouti and Hashaika, because I think the

4    question was only about --

5          MR. HILL:  Yes.  I said that in my letters to the

6    Court.

7          MR. TOLCHIN:  No names are being withheld.

8          THE COURT:  No names are being withheld.

9          MR. TOLCHIN:  And no names will be withheld as their

10   expeditious investigation continues?

11         THE COURT:  Okay.  I'm not sure even what you're

12   asking now.

13         MR. TOLCHIN:  They say that they're still

14   investigating to determine who knows about these things.

15   They're six months into an investigation, so I don't know what

16   that -- that investigation may reveal 100 people who have

17   knowledge.  Are they going to withhold any --

18         THE COURT:  My question --

19         MR. TOLCHIN:  -- of those names --

20         THE COURT:  My question --

21         MR. TOLCHIN:  -- because of these objections?

22         THE COURT:  You understand, my question was do any of

23   the objections go to withholding of names.  The answer was no.

24   That seems to be pretty straightforward.  I'm not sure where

25   you're going beyond that.

55

1          MR. TOLCHIN:  Okay.

2          MR. HILL:  Your Honor, you mentioned we only have ten

3     more minutes.  I do have two issues I'd like you to resolve if

4     we could and I don't want to be filibustered if that's

5     possible.

6          MR. TOLCHIN:  Nobody is filibustering.

7          THE COURT:  Okay.

8          MR. HILL:  Your Honor, particularly with respect to

9     the damages.  You've now --

10         THE COURT:  Okay.

11         MR. HILL:  -- the initial disclosures require the

12    calculations.  You've ordered them twice.  We still don't have

13    them.

14         THE COURT:  Well, what is the story with the damages?

15    We've been going on with that for a while.

16         MR. TOLCHIN:  We answered the interrogatories.

17         THE COURT:  Huh?

18         MR. TOLCHIN:  We supplemented our production.  What

19    we're down to quibbling about is for some categories of damages

20    the plaintiffs -- is what I understand the dispute between us

21    is that for some categories of damages, for example, things --

22    future lost wages, future medical expenses and the like,

23    that -- those categories of damages will have to be supported

24    by expert testimony and under the case law that we cited in

25    our --

56

1          THE COURT:  So you're saying that you've answered

2    everything except things like future lost damages, which

3    require an expert?

4          MR. TOLCHIN:  Correct.  And as to those we gave an

5    answer which said we'll require expert testimony and we pointed

6    out to defendants that under the scheduling order this case --

7          THE COURT:  Okay.  So you disagree with --

8          MR. TOLCHIN:  -- fact discovery --

9          THE COURT:  -- that?

10         MR. HILL:  Well, Your Honor, quickly, the initial

11   disclosure rules require that calculations be disclosed

12   regardless of whether they require expert testimony.  Mr.

13   Tolchin has been before Your Honor twice and twice promised you

14   that he would give us these calculations in open court and you

15   have twice ordered it and we still don't have them.  And it was

16   only on this last time that he now says he needs an expert and

17   he wants to delay and give them to me a year from now.

18         MR. TOLCHIN:  That's not true.

19         MR. HILL:  I respectfully submit that that is not

20   fair.  In addition, the initial --

21         THE COURT:  Well, let me just say --

22         MR. HILL:  -- disclosures require --

23         THE COURT:  -- my recollection of the last conference

24   is this.  You said there -- you had some difficulty getting in

25   touch with the plaintiffs and defense counsel wanted to give

1  you a short period of time to say, okay, we'll -- we need to

2  have an answer by then.  You said, okay, that sounds like too

3  short a period of time.  You don't want to commit to something

4  which you might not be able to meet.  And then we came up with

5  a time frame and I said, okay, let's do it by then.  I don't

6  recall anything about some of the answers not being able to be

7  given.  I agree with defense counsel there.

8         And I don't think that you had said that one of the

9  reasons for the not having answers was that some of it required

10 expert testimony.  I'm not saying that you're not saying that

11 now.

12         MR. TOLCHIN:  And our original response is that they

13 didn't like that brought us here the last time, we had said the

14 same thing.  When -- when I told Your Honor about getting in

15 touch with the plaintiffs was that some of the plaintiffs, in

16 fact many of them have waived numerous categories of damages.

17 Many of the plaintiffs have waived any claim, for example, for

18 future medical expenses or for medical expenses that were

19 reimbursed by a health insurance provider.  So we eliminated --

20 and I'll just hold it up.  You can --

21         THE COURT:  Okay.  But --

22         MR. TOLCHIN:  You can perceive it even from there.

23 We've elimina -- we've provided them a chart.

24         THE COURT:  So Counsel -- no, the bottom line is,

25 what's this issue that you're now raising about certain kind of

58

1  damages.  You're saying you brought that up at the last

2  conference or you put it in your --

3         MR. TOLCHIN:  No.  I'm saying that in the response

4  that they complained about last time, that we discussed at the

5  last conference we already took the position that certain

6  categories of damages would require expert testimony.  That's

7  not something new.

8         THE COURT:  Okay.

9         MR. TOLCHIN:  That was there all along.

10         THE COURT:  All right.

11         MR. TOLCHIN:  Last time Your Honor said we should

12  give more detail.  We should break down the categories of

13  damages even more.  Okay.

14         THE COURT:  Okay.  If -- are you saying that he did

15  not bring this up before?

16         MR. TOLCHIN:  Your Honor, we --

17         MR. HILL:  You're welcome to go back and look at the

18  record.  I don't recollect Mr. Tolchin saying to you, Judge, I

19  need more time because I need an expert.  In fact, I

20  recollect -- and I believe the transcript bears this out -- Mr.

21  Tolchin unequivocally agreeing to provide these in September

22  within two weeks and then he failed to do so.  And in

23  November --

24         THE COURT:  But even if that's true, I --

25         MR. HILL:  So --

59

1            MR. TOLCHIN:  But that means to provide everything

2    that's --

3            THE COURT:  Counsel, Counsel --

4            MR. HILL:  So let me just the merits --

5            MR. TOLCHIN:  Even if that's true --

6            MR. HILL:  Yes.

7            THE COURT:  -- if in his responses he had made it

8    clear that some category of damages are categories which

9    require an expert, I'm not going to -- you know, if he didn't

10   mention it at the conference it doesn't mean that it wasn't an

11   issue that was brought up before.

12           MR. HILL:  Well, I think there's an issue of waiver

13   their having agreed to do it on the record, but get into the

14   merits --

15           THE COURT:  Well, I'd probably disagree with you on

16   that.

17           MR. HILL:  Okay.  Fair enough.  And you're the Judge

18   so you get to do that.

19           THE COURT:  Okay.

20           MR. HILL:  So let me make this point, then.  If we

21   wait until a year from now for me to get these calculations

22   from his experts, I will not effectively be able to do

23   deposition discovery of these plaintiffs.  These plaintiffs are

24   claiming that they have ongoing medical conditions that require

25   future treatment that an expert is then going to calculate the

1    numerical value of it.  Some of these plaintiffs are claiming

2    that they've not been able to work or will not be able to work

3    in the future because of their injuries and that they're going

4    to have an expert do an economic calculation based on that

5    information.

6              Well, 34 document requests that I have issued to

7    these plaintiffs and the initial disclosure rule itself

8    requires them to produce the documents they would rely on in

9    support of that calculation.  I have got no documents about

10   wages from these --

11             THE COURT:  All right.  Counsel --

12             MR. HILL:  -- plaintiffs.  I've had none of that.

13             THE COURT:  At this point, I just disagree with you.

14   All right.  You're certainly entitled to know what the

15   plaintiffs are going to say in terms of what their damages are,

16   but for example, if you took a typical damages case and the --

17   and you asked the plaintiff, okay, what's wrong with you,

18   asking about all their mental and physical ills, I mean, is it

19   continuing to bother you, what kinds of things is affecting

20   you, and then they take an expert and they take the answers

21   that are -- I would certainly say that the expert would be

22   bound by any limitation in the factual answers you elicit from

23   the plaintiffs.  But the fact that an expert then takes the

24   answers and then says what that means in terms of, well,

25   they're going to live this long and this is going to -- I think

61

1  that's the way it works out in --

2          MR. HILL:  Will the experts also be bound by the

3  documents the plaintiffs produce because I've received no

4  documents that support the calculations.

5          THE COURT:  If anything that the plaintiffs are going

6  to rely on in terms of their damages you have not received then

7  I don't expect the experts to rely on them.

8          MR. HILL:  May we have a date by which the plaintiffs

9  will be ordered to produce that material to me so I can begin

10  to use it in --

11          THE COURT:  Okay.  Just in --

12          MR. HILL:  -- depositions --

13          THE COURT:  Just to be clear, I think as a matter of

14  the factual predicate for any damage calculation that the

15  experts do the plaintiffs are required to produce that to you.

16  Two things will happen.  Okay.  He -- the plaintiff will be

17  required to produce that in accordance what they -- what

18  they've been producing in terms of the damages that -- or don't

19  require an expert.  Whatever time limit will --

20          MR. HILL:  Those dates are past, Your Honor.

21          THE COURT:  Okay.  If you have some documents that

22  are going to document injuries of the plaintiffs, Counsel,

23  unless you speak now, you forever hold your peace.

24          MR. TOLCHIN:  Say that again.

25          THE COURT:  If you have any documents about the

62

1  damages that the plaintiffs have suffered and you haven't

2  produced them to the defendants, you either speak now or hold

3  your peace, which --

4          MR. TOLCHIN:  I'm not sure --

5          THE COURT:  Which means that I don't want to -- I

6  don't want an expert coming in here and saying, okay, I looked

7  at document 747 and the defendant says, I've never seen 747.

8  Okay.  If you have an expert who relies on a document you

9  didn't produce to the defendants, that expert's testimony is

10 not going to be allowed.

11         MR. TOLCHIN:  Whatever documents our experts will

12 rely on either have been or will have been produced to the

13 defendants, every document that we have?

14         THE COURT:  Well, I'm not concerned about the "have

15 been."  It's the "will have" been that's the issue.

16         MR. TOLCHIN:  Every document that we have that

17 pertains to -- you know --

18         THE COURT:  I --

19         MR. TOLCHIN:  If we have a person who was killed in a

20 terrorist attack --

21         THE COURT:  Well, Counsel, just look -- Counsel,

22 look --

23         MR. TOLCHIN:  -- and we're talking about fair loss of

24 wages --

25         THE COURT:  Counsel, Counsel, I just want to make it

63

1   clear.  I don't want any last-minute documents being produced

2   by your client.  If they have any documents that pertain to

3   their injuries either physical or emotional, I would expect

4   them to have been produced to the defendant.  And I would

5   expect them to be produced already.  To the extent that they

6   haven't, then you can expect that presumptively you don't get

7   to have your expert opine on what those documents mean.

8          MR. TOLCHIN:  Your Honor, we are -- like the

9   defendants we are constantly investigating and if we come

10  across or discover or realize that we haven't looked for or

11  found some pile of W-2s from the -- from one of the decedents

12  and say, oh, look, here's some additional documents that go to

13  what this poor woman would have earned --

14         THE COURT:  Okay.

15         MR. TOLCHIN:  -- had she not been blown up --

16         THE COURT:  I want to repeat.  Presumptively if you

17  haven't produced it you don't get to produce it.  If you think

18  that you can overcome the presumption, give it a shot.  I'll

19  give you -- and that's -- you always -- each of you has that

20  opportunity if -- I mean, look.  I mean, there could be a

21  document in a safe someplace that nobody has.  If you come in

22  and show that, you know, there was a -- you know, a police raid

23  and they came up with a document and nobody knew it existed

24  before, you know, we'll deal with it then but --

25         MR. TOLCHIN:  The only thing that isn't fair is --

64

1  you know, the -- just take a look.  For six months they've been

2  trying to find out who knows about something.

3          THE COURT:  The next -- be -- Counsel, Counsel --

4          MR. TOLCHIN:  I'm working with estates of dead

5  people.

6          THE COURT:  Counsel, I've made -- I've told you what

7  it is.  If -- somehow you think that I'm unreasonable must be

8  because you're suggesting that your reason won't get in here.

9          MR. TOLCHIN:  No, no.  I'm just suggesting it's not

10 right to -- or it's not fair to foreclose us from supplementing

11 our production.  It's just like they supplemented on -- by

12 FedEx on Friday.  Why can't I serve a supplemental production?

13         THE COURT:  Counsel, sometimes I get the feeling that

14 you don't even listen to me.  Okay.  What I said was, if you

15 haven't produced documents presumptively those documents will

16 not be used.  You know what the word "presumptively" means?  I

17 have to get that?  That means -- and then I said, if you come

18 across something if you think you can carry a burden, by all

19 means do it.  What in there prevents you from doing anything?

20         MR. TOLCHIN:  Well, I just don't understand why there

21 needs to be a burden.  As long as discovery is -- you know, we

22 haven't had a deposition.  And I could understand if we come up

23 with --

24         THE COURT:  Counsel, that's my ruling.

25         Now, with respect to the --

1          MR. HILL:  Whether the Rule 35 should be

2   [indiscernible] --

3          THE COURT:  Rule 35 exams.

4          MR. HILL:  Yes.

5          MR. TOLCHIN:  That application I think was just made

6   and we're still in our time to respond to it.  I don't think

7   that's teed up for today.

8          MR. HILL:  The only reason I ask --

9          THE COURT:  I just want to know what the situation

10  is.

11          MR. TOLCHIN:  Because I do want to put in something

12  in writing on that and I --

13          THE COURT:  Well, what's the situation?  I don't even

14  know what --

15          MR. HILL:  About a month ago I started asking for

16  dates to try and get these 38 plaintiffs that have got mental

17  health claims examined by our psychiatrists and psychologists.

18  I haven't gotten any dates yet from the plaintiffs.  I'm trying

19  to move forward on this --

20          MR. TOLCHIN:  But you have gotten what?  Don't

21  believe that one.  My associates called you yesterday and you

22  didn't call --

23          THE COURT:  Okay.  Counsel, Counsel, Counsel --

24          MR. TOLCHIN:  -- him back to tell the schedule --

25          THE COURT:  Counsel --

66

1          MR. HILL:  One area of disagreement apparently is

2     whether this should be recorded by video or other means.  And

3     the presumption in the case law says they should not be because

4     it negatively impacts the examination.

5          THE COURT:  Okay.  I don't want the arguments.  I

6     just want to know what the party position is on it.

7          MR. HILL:  So my position is they ought not to be

8     recorded; the plaintiffs' position is that they should and

9     we're asking Your Honor to rule on expeditiously.

10         THE COURT:  Okay.  Is that what the dispute is?

11         MR. TOLCHIN:  More or less.  We're dealing with in

12    many cases children and we're dealing with many cases people

13    who are speaking in a foreign language --

14         THE COURT:  Counsel, Counsel, you know, you don't

15    realize how difficult it is, you know.  I like to ask very

16    specific questions and for some reason I can't get answers to

17    the questions I ask.  I get speeches.  All I want to know is

18    that's the dispute.  If that's the dispute you have reasons why

19    you think it shouldn't be, he has reasons why it shouldn't be.

20    I'm not asking why, but if that's the dispute I understand.  I

21    understand what the dispute is.  You'll submit something.  You

22    don't need to argue it now.

23         MR. TOLCHIN:  Okay.

24         THE COURT:  You're not -- I mean, what's the point of

25    arguing it now when you say you've got to do a submission

67

1    anyways?  I don't see that.

2         MR. HILL:  Your Honor, I would ask that you rule as

3    promptly as your calendar allows.  We're trying to start these

4    at the end of April and obviously whether they're recorded or

5    not is material to when they can take place.

6         THE COURT:  Okay.  Anything else?  All right.

7                   [Pause in the proceedings.]

8         Okay.  Michael, put this down for either the last

9    week in April or first week in May or -- I'm not sure what our

10   schedule is.

11        MR. HILL:  And, Your Honor, the parties have

12   discussed taking depositions in the Middle East the last week

13   in April so --

14        THE COURT:  You mean, beginning on the 30th?

15        MR. HILL:  -- perhaps the first week in May.  I'm

16   sorry, no.  Beginning on the 22nd, so it might be the week

17   before Your Honor is referring to.

18        THE COURT:  So this would be great to do it right

19   after that.

20        MR. HILL:  That's okay with me, Your Honor.

21        THE COURT:  We'll all be in a good mood.

22        MR. TOLCHIN:  Judge, in another case Judge Scheindlin

23   suggested that we bring her to rule at the -- to make rulings,

24   that we bring her over there.

25        THE COURT:  I'm sure she meant that in all

68

1  seriousness.

2          MR. TOLCHIN:  Yes, she did.

3          MR. HILL:  So the last week of April, the first week

4  of May she can find [indiscernible].

5          THE COURT:  Michael.

6          THE CLERK:  Yes, sir.  May 7th at 2:30 p.m.

7          MR. HILL:  May I ask -- I don't have my calendar with

8  me because they took it.  Can you tell me what date --

9          MR. TOLCHIN:  That's a Monday.

10         MR. HILL:  If it could be moved to any other day

11 after that.  I'll be in New Orleans that day and that's very

12 important, Your Honor.  That's Jazz Fest.  Never miss Jazz

13 Fest.

14         MR. TOLCHIN:  You didn't invite me.

15         MR. HILL:  No.  Any day after May 7th will be

16 excellent.

17         THE CLERK:  Tuesday, May 8th.

18         MR. HILL:  Thank you.

19         MR. TOLCHIN:  10:00 a.m.?

20         THE CLERK:  10:00 a.m.

21         MR. HILL:  I at least will be in a very good mood.

22         THE COURT:  We're adjourned.

23         MR. HILL:  Thank you, Your Honor.

24         MR. TOLCHIN:  Thank you, Your Honor.

25                         * * * * *

69

1      I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                                    _____

6                                    Ruth Ann Hager, C.E.T.**D-641

7   Dated:   March 21, 2012

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25