UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

MARK SOKOLOW, *et al.*,

                      Plaintiffs,

            - against -

THE PALESTINE LIBERATION ORGANIZATION,
*et al.*,

                Defendants.

-------------------------------------------------------------------X

Docket No:
04-CV-397 (GBD) (RLE)

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO
THE MAGISTRATE JUDGE TO EXPAND THE DISCOVERY SCHEDULE AND FOR
<u>RELATED RELIEF</u>**

1294046.2

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ..................................................................2

ARGUMENT ...................................................................................................5

I.      PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT IS
        PROCEDURALLY IMPROPER ...................................................................5

II.     PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEIR
        PROFFERED JUSTIFICATIONS FOR BRINGING THE MOTION
        ARE MERITLESS ...................................................................................8

III.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY
        HAVE NOT SHOWN "GOOD CAUSE" TO AMEND THE
        SCHEDULING ORDER OR FOR THE OTHER RELIEF THEY
        NOW SEEK ...........................................................................................19

CONCLUSION .................................................................................................23

1294046.2

Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") hereby submit the following Opposition to Plaintiffs' Motion to the Magistrate Judge to Expand the Discovery Schedule and for Related Relief (DE 267).  In their Motion, Plaintiffs request an open-ended extension of the fact-discovery period, which the Court has already repeatedly rejected.  The Court has been steadfast that discovery should move expeditiously, and that its deadlines, but for exceptional circumstances, will not be moved.  Plaintiffs' Motion presents no basis whatsoever for the Court to shift this position now that the eighteen-month fact-discovery period is set to close.  Accordingly, Plaintiffs' Motion should be denied.

## INTRODUCTION AND BACKGROUND

At the outset of discovery, the Court ruled that fact discovery would have a fixed closing date, and that any disagreements about its completion would not delay commencement of the expert-discovery phase.  *See* 6/21/11 Tr. at 8:24-9:24.

Midway through the eighteen-month fact-discovery period, it became apparent to Defendants that Plaintiffs were planning to ask that the dates set by the Court's Scheduling Order be extended.  Defendants raised this concern with the Court at the March 20, 2012 hearing in this matter.  *See* 3/20/12 Tr. at 27:4-8 ("And my concern is I think it should be obvious to the Court by now.  The plaintiffs are trying to extend the discovery period in the case.  I don't want this to become the basis of trying to extend the discovery period and that's why I'm asking for [] sanctions.").  In response, the Court made it plain that Plaintiffs should have no expectation that the fact-discovery deadline would be altered.  *See id.* at 27:9-10 (Well, okay.  First of all, it's not going to extend the discovery period . . . .").

In April of this year, Plaintiffs professed to understand the Court's position that the fact-discovery deadline would not be extended absent genuinely extraordinary circumstances.  At the

1294046.2

outset of discovery, the Court had admonished both parties that any application for Hague

requests should be made promptly, because the Court intended to stick to the discovery deadlines

set in its Scheduling Order:

> I mean if you just discovered somebody and that's why you're just doing it, fine.
> But otherwise, we all know even under the best of circumstances your Hague
> requests could take an enormous amount of time. If you file a Hague request say
> next month [in July of 2011] and it's 20 months from now and you haven't gotten
> it, you'll be in better shape than somebody who filed it six months from now [in
> December 2011] even if it's within the time frame.

6/21/11 Tr. at 8:2-9. To justify their application for a Hague request in March of 2012 – several

months after the timeframe in which the Court suggested that such an application would be well

received – Plaintiffs promised the Court that they would *not* be seeking an extension of the

December 21, 2012 fact-discovery deadline under any conceivable circumstances, calling the

need for such an extension "hypothetical." *See* DE 232 at 7. Indeed, Plaintiffs represented to the

Court in early April 2012 that, with the fact-discovery phase more than halfway completed,

"there is not the slightest reason to believe that any such enlargement will be needed," barring

"extraordinary force majeure-type events." *See id.*

In August of this year, Judge Daniels made it clear to both parties that he was "not

satisfied with the pace of discovery," and that he would not look favorably upon maneuvers

aimed at prolonging discovery:

> So, I think the appropriate thing to do is to move forward efficiently with
> discovery at this point. I think that I am not satisfied with the pace of discovery.
> I think I told Magistrate Judge Ellis that I expected him to be firm with
> discovery. . . . So the parties should move forward to complete discovery, move
> forward in anticipation of full summary judgment briefing if that's the step to take
> after discovery, and to anticipate that you will be spending, devoting your time to
> completing discovery on these issues for the rest of the year rather than engaging
> in further motions generating or other pleadings or generating other claims or
> affirmative defenses. . . . So, as I say, I am going to have further conversation
> with Magistrate Judge Ellis to make sure that things are moving efficiently and
> that he makes sure that they're moving efficiently. . . . I will instruct Magistrate
> Judge Ellis to make sure the parties are on schedule and move forward efficiently

3

and resolve quickly an issue that might otherwise delay the completion of discovery in this case.

8/9/12 Tr. at 82:15-19; 83:18-24; 84:11-14; 85:7-10.

Thus, by the time Plaintiffs filed the instant Motion on November 19, 2012, it was overwhelmingly clear that there would be no extension of the approaching fact-discovery deadline absent truly extraordinary "force majeure-type" circumstances, and certainly no *general* extension of the fact-discovery period of the type sought here. But the Court took pains to reiterate its position once again during the November 20, 2012 hearing in this matter:

> I mean, we have some legal issues, some practical issues, and then we have – you know, even if we're going to be extending discovery, we're not extending discovery for the purpose of opening [] everything up for new stuff. We're – if we extend discovery in this case it's for the purpose of finishing stuff that started, so I don't want anybody to be under the misconception that, you know, if I grant you any extensions of discovery then all of a sudden somebody is going to file some new discovery request. This is all cleanup at this point.

11/20/12 Tr. at 33:3-12.

> Well, let me be clear. If, in fact, somebody is not scheduling discovery in the hope that we'll have an extension, that's not going to work. Let me – I'll reiterate what I said before. We don't – I don't give general extensions. I give extensions for you to complete what you tried to do during a period of the discovery and were unable to complete.

*Id.* at 42:16-22.

> [I]t seems to me as *prima facie* that before you ask for an extension you have to show that you tried to do the discovery during the discovery period and when they were unable to do it if you never tried to schedule anything that's not going to work.

*Id.* at 43:11-15.

Against this backdrop, Plaintiffs now bring their present request that the Court grant them (1) a general extension of the fact-discovery deadline of up to 3 months; (2) a postponement of the expert-discovery deadlines until some indefinite date; (3) Court "intervention" or appointment of a special master; (4) and other unspecified relief. *See* DE 268 at 12.

4

Plaintiffs' Motion should be denied for three simple reasons. First, the Motion is procedurally improper -- primarily because it was filed in violation of Judge Daniel's express direction at the August 9, 2012 hearing. Second, there is no merit to the complaints raised by Plaintiffs in the Motion about the timeliness of Defendants' discovery responses. Third, Plaintiffs have failed to meet the applicable "good cause" showing required to obtain the amendment of the Scheduling Order or any of the other extraordinary relief that they now seek. Indeed, the only discovery Plaintiffs' Motion claimed they were unable to initiate were Rule 30(b)(6) notices for the Defendants, but Plaintiffs did in fact issue such notices on November 28 and 29. *See* Ex. 1, 2. Accordingly, Plaintiffs' Motion should be denied.

## ARGUMENT

### I.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT IS PROCEDURALLY IMPROPER

Plaintiffs' Motion seeks to extend the discovery period pursuant to Federal Rule of Civil Procedure 16(b)(4). DE 267 at 1. Both Judge Daniels' and Judge Ellis' Individual Practices require that parties "follow Local Civil Rule 37.2" "[f]or discovery motions." Individual Practices of Judge Daniels ¶ 2.A; Individual Practices of Magistrate Judge Ellis ¶ 2.A. Local Civil Rule 37.2 requires "counsel for the moving party" to request "an informal conference with the Court by letter" before filing a motion. L. Cv. R. 37.2. Any ambiguity about the application of the Local Rule to this motion was resolved by Judge Daniels at the hearing on August 9, 2012, when he expressly stated that:

> [O]ther than one summary judgment motion after the close of discovery, there are to be no other motions filed without first a pre-motion conference with Magistrate Judge Ellis, and that pre-motion conference must be preceded by no more than a two-page letter indicating what the nature of the motion is that the parties believe are appropriate at this stage of the proceeding and the nature of the motion and the underlying basis for the motion and why the motion is timely made and is not premature . . . .

5

8/9/12 Tr. at 82:22-83:5.   Accordingly, the Court should deny Plaintiffs' Motion for its failure to comply with the directions of Judge Daniels, the Court's Local Rules, and both Judge's Individual Practices. *See United States v. ASCAP*, 323 F. Supp. 2d 588, 590 n.1 (S.D.N.Y. 2004) ("[W]e note with disapproval that this motion was filed without benefit of the pre-motion conference that has long been required by this Court's individual practices, an omission that could properly result in denial of their motion."); *NAS Elecs., Inc. v. Transtech Elecs. Pte Ltd.*, 262 F. Supp. 2d 134, 152 (S.D.N.Y. 2003) ("To the extent these assertions indicate that the plaintiffs' motion to reopen discovery is a means of asserting various allegedly unresolved discovery disputes and objections, such a discovery motion is also denied.") (citing L Cv. R. 37.2).

Moreover, even if a motion could have properly been filed without a pre-motion conference, the Individual Practices of both Judges restrict memoranda in support of any motion to no more than 25 pages in length. *See* Individual Practices of Judge Daniels ¶ 2.C; Individual Practices of Magistrate Judge Ellis ¶ 2.C. But Plaintiffs' Memorandum and its supporting "Declaration" -- which is essentially a second brief in its own right -- span well over 40 pages when considered together.  The Court should not ignore this violation of its practices under the premise that the Declaration is merely an attachment to the Memorandum because Plaintiffs specifically ask the Court to review the Memorandum in support of their Motion and the attached Declaration as an inseparable whole when considering their request for relief.  DE 267 at 2; DE 268 at 1.  In fact, Plaintiffs plainly state that their Memorandum *does not* fully support the relief they now seek when considered without the supplemental briefing contained in their 33-page "Declaration":

> Plaintiffs respectfully ask the Court to carefully consider the attached Tolchin
> Declaration . . . , which methodically demonstrates the nature of the problem and

1294046.2

provides very specific examples of the ways in which Defendants have abused the discovery process, requiring the relief Plaintiffs are forced to seek through this motion. *In order to explain the need for the requested expansion inside this motion, Plaintiffs will provide some highlights from the Declaration, but again ask the Court to read the declaration in its entirety*.

DE 268 at 4 (emphasis added).

The Court should also take note that it is not even clear who is making the representations contained in the sworn Declaration that Plaintiffs ask it to "carefully consider," which is troubling, and which provides an additional basis for rejecting Plaintiffs' non-compliant filing. Plaintiffs are represented by a group of attorneys who are litigating multiple suits against Defendants both here in the U.S. and in Israel. Indeed, a group of plaintiffs in one of these lawsuits, *Shatsky v. Syrian Arab Republic*, currently pending in the United States District Court for the District of Columbia, is represented by the very same two counsel of record for Plaintiffs in this action, Robert Tolchin and David Schoen, and the lengthy Declaration of Robert Tolchin in this case was a recent topic of interest in the *Shatsky* case. Like their clients in this case, Mr. Tolchin's and Mr. Shoen's clients in the *Shatsky* case are also asking for an extension of judicially imposed deadlines. In opposing that request, Defendants pointed out to the *Shatsky* court that plaintiffs there would not have needed the additional time they are seeking had their counsel not been pre-occupied by preparing the lengthy "Declaration" now submitted by Mr. Tolchin one month prior to the discovery deadline in this case. In opposing this argument in a brief filed over Mr. Schoen's and Mr. Tolchin's electronic signatures, the *Shatsky* plaintiffs stated as follows:

> It is true, of course that Plaintiffs in [the *Sokolow* case] made that filing . . . . [But] *the people who drafted and generated the filing in that case were neither the undersigned nor Mr. Tolchin*; so it did not require any of our time at all to draft.

1294046.2

Ex. 3 at 11 (emphasis added).[1] Hence, to win an extension in the *Shatsky* case, counsel

represented to that court that they had not used "any of our time at all" to prepare the instant

Motion, Memorandum, and Declaration. Mr. Shoen's lack of participation in the preparation of

the Motion and its supporting papers also explains his apparent unfamiliarity with its contents at

the November 20, 2012 hearing. *See* 11/20/12 Tr. at 33:14-37:11; 39:15-40:6. The fact that

counsel of record apparently played no role in the preparation of the Motion, Memorandum, and

even the assertedly sworn Declaration to the Court submitted over Mr. Tolchin's name is an

additional reason to deny Plaintiffs' request of relief.

## II.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEIR PROFFERED JUSTIFICATIONS FOR BRINGING THE MOTION ARE MERITLESS

Though Defendants do not believe there is any proper basis for the Court to consider the

"substance" of Plaintiffs' Motion given its procedural defects, the issues raised in the Motion in

no way justify the relief Plaintiffs seek.

Plaintiffs Memorandum makes thirteen specific complaints about Defendants' responses

to discovery requests propounded in this case. Defendants will refrain from responding to the

invective coloring Plaintiffs' description of Defendants' discovery conduct throughout their

Memorandum and Declaration, but none of these complaints support Plaintiffs' claims that

Defendants have engaged in "a clear pattern of abusive conduct," "intentionally withheld

responsive documents in their possession," or "made it impossible for Plaintiffs to complete

---

[1] Apparently this is why Paragraph 18(a) of the original Declaration stated that another lawsuit brought against Defendants by Mr. Tolchin, *Saperstein v. PA*, is "currently pending in the Southern District of Florida." *See* DE 269 ¶ 18(a). But, as Plaintiffs' November 20, 2012 correction to that Declaration points out, that case, in fact, is "no longer pending." DE 270. Indeed, the *Saperstein* case has not been pending ever since Mr. Tolchin *himself* voluntarily dismissed the case with prejudice on the eve of trial when he conceded he could not prove the plaintiff's case. Given the nature of the *Saperstein* dismissal, it seems likely that the error in the original Declaration would not have needed correcting had Mr. Tolchin personally drafted or reviewed the Declaration here submitted over his name prior to its filing with the Court.

1294046.2

discovery by the upcoming deadline." DE 268 at 1. In fact, as Plaintiffs' acknowledge, they have had all the discovery responses they now complain about for weeks or months, and have certainly had the responses at issue in sufficient time to propound any follow-up discovery that was appropriate within the remaining fact-discovery period.

First, Plaintiffs complain that Defendants have "inexplicably delayed in producing relevant employment records" pertaining to certain suspects in the Bauer case. DE 268 at 4. *See also* DE 269 ¶ 5. Plaintiffs' complaint is meritless. As Plaintiffs acknowledge, the discovery request about which they now complain was not a document request, but an interrogatory. DE 269 ¶ 5(a). Defendants timely responded to the interrogatory at issue and made valid objections. DE 269-1. However, rather than standing on those objections, Defendants offered to produce documents that provided some of the information Plaintiffs sought. *Id.* at 7-8. *See also* DE 269-2 at 7-8, DE 269-3 at 7-8. It is true that Defendants objected to making that production prior to the entry of a protective order, DE 269-1 at 4, 7-8, but immediately after the substance of the protective order was approved by the Court at the hearing on November 17, 2011, and Plaintiffs agreed to be bound by its terms pending its formal entry, Defendants made an initial production of documents, DE 269 ¶ 5(e).[2] Defendants then supplemented their production of documents on December 22, 2011, and March 16, 2012. DE 269 ¶¶ 5(f)-(g). Plaintiffs have never sought to compel a further response to this interrogatory, and Plaintiffs have had all the documents about which they now complain for eight months, which provided them with more than sufficient time to propound any additional discovery related to those documents before December 21, 2012. In

---

[2] It is ironic that Plaintiffs now complain about the delay associated with getting a ruling on the protective order, because Plaintiffs repeatedly violated the terms of that order by filing individual witnesses' Palestinian identification numbers (analgous to U.S. Social Security numbers) that had been designated as "Confidential" as exhibits to their declaration. *Compare* DE 219 ¶ d. (specifying method of filing Confidential Discovery Material with the Court) *with* DE 269-4 at 7, 269-5 at 7, 269-17 at 8.

1294046.2

fact, less than a month after the March 16 supplement, Plaintiffs assured the Court that "there is not the slightest reason to believe that any . . . enlargement" in the discovery deadline "will be needed (barring any unseen, extraordinary force majeure type events)." DE 232 at 7. Moreover, on November 21, 2012, Plaintiffs propounded requests for admission about these very documents. *Compare* DE 269-3 at 7 *with* Ex. 4 at 3-4.

Second, Plaintiffs complain that Defendants took too long to identify witnesses with knowledge of the PA's arrest of Hashaika, and failed to identify Saeb Erekat as a witness with such knowledge. DE 268 at 4; DE 269 ¶¶ 6, 7(e). This complaint is also meritless. Defendants timely responded to the interrogatory at issue, asserted valid objections, and indicated that they would provide responsive names if they could be found. Ex. 5. Plaintiffs claim that Defendants' conduct somehow "avoid[ed] a motion to compel" regarding this interrogatory, DE 268 at 8, but Plaintiffs actually sought an order compelling an answer to this interrogatory, and the Court declined to enter such an order. 3/20/12 Tr. at 32:11-35:4, 37:11-54:25. Defendants supplemented their answer on April 23 and May 29, 2012, and identified two responsive witnesses. Ex. 6; DE 269-4.[3] Defendants did not name Mr. Erekat as a witness in response to this interrogatory because he does not have first-hand knowledge of the subject matter of the interrogatory. *See* Letter from Mark J. Rochon to Magistrate Judge Ellis (Mar. 27, 2012). In any event, Plaintiffs have long known of Mr. Erekat's alleged knowledge of these issues, and even noticed his deposition in this matter in March 2012 on that basis. *Id.* Defendants subsequently sought a protective order, *id.*, and Plaintiffs withdrew their notice for Mr. Erekat's deposition on June 26, 2012, Ex. 7. Plaintiffs have never sought to compel a further response to this

---

[3] Defendants have redacted the confidential identity numbers of the witnesses and the confidentiality designations from the versions of the interrogatory answers attached hereto. *See* Ex. 6 at 7, Ex. 8 at 7, Ex. 9 at 7, and Ex. 12 at 8.

1294046.2

interrogatory, and Plaintiffs have had both the names about which they now complain for six months, which provided them with more than sufficient time to propound any additional discovery related to those witnesses before December 21, 2012.  Indeed, on November 21, Plaintiffs propounded requests for admission about the PA's arrest of Hashaika, and on November 29, Plaintiffs noticed a Rule 30(b)(6) deposition about this topic.  *See* Ex. 2 at ¶ 3, 4 at 4.

Third, Plaintiffs complain that Defendants have not been able to locate documents pertaining to alleged requests to arrest Hashaika, Shawish, and Aweis.  DE 268 at 4; DE 269 ¶ 7. This complaint also lacks merit.  Defendants timely responded to the document requests at issue, and informed Plaintiffs that they had not been able to locate responsive documents.  DE 269-6. An extension of discovery will not change that fact.  Plaintiffs assert that "Defendants must have some documentation," DE 269 ¶ 7(d), but, as Defendants (and the BBC) have repeatedly explained, Defendants' headquarters and other security facilities were repeatedly attacked by Israeli Defense Forces after the requests for arrest at issue, and numerous documents stored in those facilities were either destroyed or seized by Israeli forces.  *See* Letter from Brian A. Hill to Magistrate Judge Ellis (Feb. 21, 2012); 11/20/12 Tr. at 55:13-56:15; DE 165 at 13-14; DE 258 at 27.[4]  Indeed, the very March 24, 2002 interview with Mr. Erekat that Plaintiffs rely upon to assert that the PA arrested Haishaka indicates that Haishaka escaped when the jail in which he was being held was destroyed by Israeli forces.  *See* DE 269-7 at 3 ("And he was in Palestinian jails until the glorious Israeli army, with more than 200 tanks, decided to take over Ramallah, destroy our jails.  Mohammed Hasheika (ph) and others ran away from jails. . . .  And we notified the American side and the Israeli side of this fact."); *see also id.* ("Does President Bush

---

[4] Plaintiffs reference one of these allegedly seized documents at paragraph 11(b) of DE 269.

know that the capabilities of the Palestinians have been destroyed by the command centers, the

communication centers, the vehicles, the buildings, the prisons?  Sharon did a marvelous job of

destroying all the security infrastructures of the Palestinians."); DE 269-10 at 2 (noting that

"police buildings have long been favorite Israeli targets").  Plaintiffs have never sought to

compel a further response to the document requests at issue, and Plaintiffs have had the

responses about which they now complain for seven months, which provided them with more

than sufficient time to propound any additional discovery related to those issues before

December 21, 2012.  Indeed, on November 21, Plaintiffs propounded requests for admission

about the PA's arrest of Hashaika, including Mr. Erekat's reported statements about that arrest,

and on November 29, Plaintiffs noticed a Rule 30(b)(6) deposition about these topics.  *See* Ex. 2

¶ 3, 4 at 4.

       Fourth, Plaintiffs complain that Defendants took too long to identify witnesses with

knowledge of alleged requests for the PA to arrest Barghouti.  DE 268 at 5; DE 269 ¶ 8.  This

complaint is also without merit.  Defendants timely responded to the interrogatory at issue,

asserted valid objections, and indicated that they would provide responsive names if they could

be found.  DE 269-13.  Defendants supplemented their answer on March 9 and 16, 2012, and

identified three responsive witnesses.  Ex. 8, 9.  Plaintiffs sought an order compelling a further

answer to this interrogatory, but the Court declined to enter such an order.  DE 269-8 at 32-35,

37-54.  Plaintiffs have never sought to compel a further response to this interrogatory, and

Plaintiffs have had the three names about which they now complain for eight months, which

provided them with more than sufficient time to propound any additional discovery related to

those witnesses before December 21, 2012.  Indeed, on November 21, Plaintiffs propounded

1294046.2

requests for admission about alleged requests that the PA arrest Barghouti, and on November 29, Plaintiffs noticed a Rule 30(b)(6) deposition about this topic.  *See* Ex. 2 ¶ 1, 4 at 5.

Fifth, Plaintiffs complain that Defendants have not been able to locate documents pertaining to alleged requests to the PA to arrest Barghouti, including a "complete, full and legible copy" of a document previously produced by Defendants that Plaintiffs suspect contains Barghouti's name.  DE 268 at 5; DE 269 ¶ 9; DE 269-15; DE 269-16 at 5.  These complaints also lack any merit.  Defendants timely responded to the document requests at issue, and informed Plaintiffs that they had not been able to locate responsive documents.  DE 269-14, DE 269-16 at 6.  Again, a discovery extension will not change this fact.  As Defendants have previously noted, their inquiries have been hampered by the fact that the building in which Plaintiffs claim Barghouti was held by the PA's Preventative Security Service was destroyed by Israeli Defense Forces in early April 2002.  *See* Letter from Brian A. Hill to Magistrate Judge Ellis (Feb. 8, 2012).  To date, Defendants have not able to identify "a complete, full and legible copy" of the illegible document Plaintiffs have requested.  DE 269-16 at 6.  Plaintiffs have never sought to compel a further response to either of the document requests at issue, and Plaintiffs have had the responses about which they now complain for seven and three months respectively, which provided them with more than sufficient time to propound any additional discovery related to those issues before December 21, 2012.  Indeed, on November 21, 2012, Plaintiffs propounded requests for admission about the very document at issue.  *Compare* DE 269 ¶ 9(d) *with* Ex. 4 at 5-6.  This topic is also covered by Plaintiffs' November 29 Rule 30(b)(6) deposition notice.  Ex. 2 ¶ 1(a).

Sixth, Plaintiffs complain that Defendants took too long to identify a witness with knowledge of an alleged letter written after the bombing in which the Sokolow Plaintiffs were

allegedly injured.  DE 268 at 5; DE 269 ¶ 11. This complaint is also meritless.  Defendants timely responded to the interrogatory at issue, identified seven responsive names, and offered to produce documents that provided some of the information Plaintiffs sought.  Ex. 10 at 6-8. Defendants supplemented their answer on November 11 and 22, 2011, and March 16, 2012, produced the offered documents, and identified one additional responsive name and the identification numbers for all eight persons.  *See* Ex. 11, 12; DE 269-17.  Plaintiffs have never sought to compel a further response to this interrogatory, and Plaintiffs have had all eight of the names about which they now complain for eight months, which provided them with more than sufficient time to propound any additional discovery related to those witnesses before December 21, 2012.  Indeed, on November 21, 2012, Plaintiffs propounded requests for admission about the very persons and documents identified in response to the interrogatory at issue.  *Compare* DE 269-17 at 8 *with* Ex. 4 at 6-7.[5]

Seventh, Plaintiffs complain that Defendants took too long to supplement their interrogatory answer regarding the PA's employment of Mohammad Dahlan.  DE 268 at 5-6; DE 269 ¶ 13. Plaintiffs' complaint is meritless.  Defendants timely responded to the interrogatory at issue, asserted valid objections, and offered to produce documents that provided some of the

---

[5] Plaintiffs' Declaration also complains that Defendants took too long to produce certain documents related to Noor.  DE 269 ¶ 12.  Plaintiffs' complaint is meritless.  Defendants timely responded to the document request at issue, and produced responsive documents, including those referenced in Plaintiffs' declaration.  Ex. 13 at 26; DE 269 ¶ 12(b).  When Plaintiffs subsequently inquired about additional documents, defense counsel made further inquiries.  DE 269-18; DE 269-20.  Contrary to Plaintiffs' claim, defense counsel did not "ignore" any emails on this subject, DE 269 ¶ 12(e), but continued their investigation and eventually located and produced the additional documents Plaintiffs sought, Ex. 14.  Plaintiffs never sought to compel a further response to the document request at issue, and received the documents about which they complain in mid-November.  Notably, these documents did not provide any relevant information beyond that which Plaintiffs already had, *i.e.*, that Noor was in prison and had sought associated benefits.  *See* 269 ¶ 12(a)-(b).  In any event, Plaintiffs received the documents at issue in time to propound requests for admission about the very documents at issue.  *See* Ex. 4 at 7.

14

information Plaintiffs sought.  DE 269-21 at 7-8.  Defendants supplemented their answer on

November 11, 2011, DE 269-22, and, following a conference with Plaintiffs' counsel, again on

July 30, 2012, to provide a narrative description of the positions Mr. Dahlan had held with the

Defendants during the relevant time period, DE 269-24 at 8.  Plaintiffs have never sought to

compel a further response to this interrogatory, and Plaintiffs have had the answer about which

they now complain for four months, which provided them with more than sufficient time to

propound any additional discovery related to that answer before December 21, 2012.  Indeed, on

November 21, 2012, Plaintiffs propounded requests for admission regarding Mr. Dahlan's

employment by the PA and the statements at issue.  *See* Ex. 4 at 8.

Eighth, Plaintiffs complain that Defendants have not produced a "list" allegedly provided

by the PLO's Institute for the Care of Martyrs' Families and the Injured to a PhD student.  DE

268 at 6; DE 269 ¶ 14.  This complaint also lacks merit.  On September 12, 2012, Plaintiffs sent

an email claiming that Defendants had improperly failed to produce this "list," which Plaintiffs

assert contains the names of three of the alleged perpetrators of the attacks at issue.  DE 269-26.[6]

Plaintiffs also noticed the deposition of the Institute's Head, Intesar Al-Wazeer, to inquire about

the list.  *See* Letter from Brian A. Hill to Magistrate Judge Ellis (Oct. 1, 2012).  Defendants

sought a protective order from that deposition notice, and in support of that request submitted a

declaration from Ms. Al-Wazeer indicating that the list was irrelevant because it did not contain

the names of any of the alleged perpetrators of the attacks at issue.  *Id.* & Ex. 2.  The Court

subsequently granted Defendants' request for a protective order, and ruled that discovery

regarding the list was unlikely to lead to relevant evidence.  11/20/12 Tr. at 4:10-17.  Plaintiffs

have had ample time to propound additional discovery related to the list before December 21,

---

[6] Plaintiffs have not identified a particular discovery request to which the list is allegedly responsive.

1294046.2

2012, and propounded requests for admission about the list on November 21, 2012.  *See* Ex. 4 at 8-9.[7]

Ninth, Plaintiffs complain that Defendants sought a protective order regarding Plaintiffs' proposed Rule 30(b)(6) topics regarding Defendants' capacity defense.  DE 268 at 6; DE 269 ¶ 16.  Plaintiffs' complaint is meritless.  Defendants timely sought a protective order directing that discovery regarding their capacity defense be had by way of contention interrogatory rather than by Rule 30(b)(6) deposition.  *See* Letter from Brian A. Hill to Magistrate Judge Ellis (Oct. 26, 2012).  There is nothing wrong with Defendants taking such a position, and in response Plaintiffs argued that the issue was not ripe because they had not decided whether to proceed with a Rule 30(b)(6) deposition on the topics at issue.  Letter from David I. Schoen to Magistrate Judge Ellis (Oct. 30, 2012) at 5.  Having sought to forestall resolution of a timely raised issue, Plaintiffs should not now be heard to claim that the issue warrants a discovery extension.  Indeed, on November 21, 2012, Plaintiffs propounded contention interrogatories about Defendants' capacity defense as Defendants had proposed.  *See* Ex. 15 at 2-3.[8]

Tenth, Plaintiffs complain that Defendants sought to compel answers to interrogatories served on Plaintiffs regarding witnesses with knowledge of requests to arrest, *inter alia*, Barghouti, and, after Plaintiffs finally answered those interrogatories, sought sanctions based on

---

[7] Plaintiffs' Declaration also complains that Defendants have not been able to locate documents pertaining to alleged requests to arrest Nasser Aweis. DE 269 ¶ 15.  Defendants timely responded to the document requests at issue, and informed Plaintiffs that they had not been able to locate responsive documents.  DE 269-28.  Extending the discovery period will not change that fact.  Plaintiffs have never sought to compel a further response to the document requests at issue, and Plaintiffs have had the responses about which they now complain for seven months, which provided them with sufficient time to propound requests for admission about Nassar Aweis on November  21 and a Rule 30(b)(6) topic about him on November 29.  *See* Ex. 2 ¶ 4, 4 at 11-13.

[8] Plaintiffs subsequently issued Rule 30(b)(6) notices regarding the capacity defense which duplicate the pending interrogatories, *compare id. with* Ex. 1 ¶ 5, 2 ¶ 12, which the Defendants will raise with the Court if the parties are not able to reach an agreement during their upcoming meet and confer.

16

those answers.  DE 268 at 6; DE 269 ¶ 10; *see also* Letter from Brian A. Hill to Magistrate Judge Ellis (Oct. 1, 2012).  Plaintiffs' complaint is meritless.  Indeed, the Court agreed with Defendants that Plaintiffs' answers were inappropriate, and precluded the Plaintiffs from using those witnesses as a result.  11/20/12 Tr. at 3:16-4:9.  Defendants' actions regarding this issue do not in any way justify extending the discovery period.

Eleventh, Plaintiffs complain that Defendants opposed Plaintiffs' tardy requests for depositions under the Hague convention.  DE 268 at 6-7; DE 269 ¶ 17.  This complaint is also meritless.  Defendants timely noted their objections, and doing so is no basis to extend discovery.  In fact, Defendants objections were based on appropriate timeliness concerns shared by the Court.  Indeed, at the status hearing on March 20, 2012, the Court stated:  "Understand that one of my considerations particularly when we're going to use something as extraordinary as a Hague letter is the timeliness of the request . . . because those inherently cause delays, as everybody knows."  3/20/12 Tr. at 36:11-15.  The Court informed Plaintiffs' counsel:  "[I]f you ask me to do a Hague request for somebody in March of 2012 and I will undoubtedly want to know why is it that we're being asked to do this at this point in time. . . . And so at the very least I'd have some representations about when and why this person became so important that we needed to go through this step and . . . why this was not brought up earlier."  *Id.* at 36:15-23.  On March 23 and 25, 2012, Plaintiffs filed three motions requesting eight depositions under the Hague Convention, but did not attempt to explain why they had waited until that point in the discovery period to make those requests.  *See* DE 221-222; DE 223-224; DE 226-1.  Defendants opposed those requests on timeliness grounds on April 2, 2012, and pointed out that Plaintiffs had named three of these witnesses in the complaint, and had known of the other five since at least October 2011.  DE 229-231.  Plaintiffs replied on April 12, 2012, DE 232, and the Court

17

1294046.2

heard argument on the motions on June 28, 6/28/12 Tr. at 9-16.  The Court has properly declined

to issue the requested letters, and Defendants' actions regarding this issue do not in any way

justify extending the discovery period.[9]

Twelfth, Plaintiffs complain that Defendants made a supplemental document production

on October 23, 2012.  DE 268 at 7.[10]  Plaintiffs' complaint is meritless.  Most of the documents

in the October 23 production were materials obtained by the Defendants from subpoenas served

on third parties.  The "seven disks of documents" referenced by Plaintiffs are, in fact, seven CDs,

each of which contains one voicemail from a third party concerning a subpoena served by

Defendants.  All of these third party materials were produced to Plaintiffs because Plaintiffs

served document requests for such materials.  The October 23 production also contained thirty

eight pages of Arabic materials, thirty seven of which were the "martyr files for Jara'a and

Hashaika," which, as described below, were first requested in late August 2012.  Defendants

timely supplemented their document productions, and their timely responses to discovery cannot

be the basis for a discovery extension.

Thirteenth, Plaintiffs complain that the October 23 production included the "martyr files

for Jara'a and Hashaika."  DE 268 at 7; DE 269 at 27 n.15.  Plaintiffs' complaint is meritless.

Plaintiffs first requested these documents on August 28, 2012, and Defendants timely responded

on October 1, 2012, asserting valid objections, and offering to produce relevant documents.  Ex.

16 at 6-8.  These two files were subsequently produced on October 23.  Plaintiffs' claim that

these files "should have been produced during initial disclosures," DE 268 at 7; DE 269 at 27 n.

---

[9] Plaintiffs' Declaration also complains about conduct by Defendants in other cases.  DE 269 ¶ 18.
Defendants will not respond to these (equally meritless) complaints here other than to note that they
obviously cannot provide a basis to extend the discovery period in this case.

[10] Plaintiffs Memorandum cites their Declaration at 24, *id.,* but the Declaration does not address this
issue.

1294046.2

15, is incorrect.  Rule 26(a)(1) only requires Defendants to produce or identify documents they

"may use to support" their defenses, and these documents do not fall into that category.  *See* Fed.

R. Civ. P. 26(a)(1)(A)(ii).  Plaintiffs have also had ample time to propound additional discovery

related to these documents before December 21, 2012.  Indeed, on November 21, 2012, Plaintiffs

propounded requests for admission about these very documents.  *See* Ex. 4 at 4, 11.

III.    **PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY HAVE NOT
         SHOWN "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER OR FOR
         THE OTHER RELIEF THEY NOW SEEK**

Under Rule 16(b)(4), a "scheduling order may not be modified except upon a showing of

'good cause,'" which "depends upon the diligence of the moving party."  *See G Investors*

*Holding LLC v. Lincoln Benefit Life Co.*, No. 09 Civ. 2980 (ALC) (KNF) 2012 U.S. Dist. LEXIS

140676 , at *6 (S.D.N.Y. Sept. 25, 2012) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d

326, 340 (2d Cir. 2000)) (internal quotation marks omitted).  "A party demonstrates good cause

by a showing that despite its having exercised diligence, the applicable deadline could not have

been reasonably met.  A party does not satisfy the good cause standard when the proposed

amendment rests on information that the party knew, or should have known, in advance of the

deadline."  *Id.* at *6-7 (internal quotation marks and citation omitted).  As the discussion above

demonstrates, there is simply not "good cause" to amend the Scheduling Order in this case.

The Court made it clear at the outset of discovery that it would not allow more than

eighteen months of general fact discovery, and that if fact discovery was to be extended it would

only do so for specific discovery that was started, but could not be completed, during the period.

6/21/11 Tr. at 7:7-8:23.  The Court repeated its position on that issue at the hearing on November

20.  11/20/12 Tr. at 33:5-12, 42:16-43:15.  The Court also made it clear at the outset of discovery

that it would not grant a general extension of the expert-discovery deadlines, but that experts

19

would be expected to comply with those deadlines and supplement their reports with after-discovered material if appropriate.  6/21/11 Tr. at 8:24-9:24.

Plaintiffs repeatedly complain that Defendants are still looking for additional materials responsive to Plaintiffs' discovery requests.  *See*, *e.g.*, DE 268 at 4, 5.  However, as defense counsel explained at the hearing on November 20, defense counsel have continued to investigate the issues raised by Plaintiffs' discovery requests precisely because that is what Rule 26(e) requires.  *See* 11/20/12 Tr. at 46:4-10; Fed. R. Civ. P. 26(e)(1)(a).  Indeed, on prior occasions in this matter, Plaintiffs have justified their own delay in producing documents by explaining that they, "like the defendants . . . are constantly investigating."  3/20/12 Tr. at 63:8-9.  There is, therefore, nothing inappropriate about Defendants' continuing investigation into Plaintiffs' discovery requests because Defendants are only doing what is required by Rule 26.

Plaintiffs also repeatedly complain that Defendants have made productions on a rolling basis, and infer from that fact that Defendants have acted in bad faith.  *See*, *e.g.*, DE 268 at 1, 7. But there is nothing improper about a party continuing to make document productions as a case progresses, even if such productions continue into the tail end of the discovery period.  Indeed, Plaintiffs themselves have sought to justify their own delays in producing documents by asserting that they were properly "not holding it to the end" and "giving it on a rolling basis." 11/17/11 Tr. at 41:11-14.  Moreover, in the last two weeks alone, Plaintiffs have made 11 supplemental document productions consisting of 17 documents and 2 videos, totaling at least 1973 pages, at least 1937 of which are in a language other than English (one of Plaintiffs' "productions" was made by reference, so defense counsel is not presently aware of how many pages are in that production but, given the nature of the referenced documents, it is clear that all

1294046.2

of those additional pages will contain foreign language).  Ex. 17.  It cannot be improper for Defendants to do what Plaintiffs themselves have done.

Furthermore, as the Court noted at the November hearing, it sometimes takes more time than an opponent would like to make document productions in civil litigation, and the amount of time it takes is compounded when the documents are coming from overseas and are in a language which counsel of record do not read.  *See* 11/20/12 Tr. at 38:3-14.  Document productions are obviously also occasionally delayed by counsel's obligations in other cases or for personal reasons.  The mere fact that a document or interrogatory answer could theoretically have been produced a few days or weeks sooner than it was, does not indelibly lead to a conclusion that the failure to do so was bad faith.  Indeed, as Plaintiff's counsel noted when defending the pace of his own document production, all lawyers can do is "our best to get the information and provide it as we get it."  11/17/11 Tr. at 35:14-15.  That is precisely what defense counsel have done here, and Plaintiffs have produced no evidence to the contrary.

The dispositive point, however, is that none of the complaints Plaintiffs have made about Defendants' discovery responses has prevented Plaintiffs from propounding additional discovery during the remaining period.  *See supra* Part II; 11/20/12 Tr. at 52:22-53:2.  To the contrary, in each of the instances about which Plaintiffs now complain, they did in fact propound additional discovery on November 21.  *Id.*  Indeed, the only discovery Plaintiffs claimed in their memorandum that they had been unable to serve were Rule 30(b)(6) deposition notices of the Defendants.  DE 268 at 8.  Plaintiffs asserted that they could not do so because "Defendants took the untenable position that they will not provide dates or identify witnesses unless Plaintiffs send a *complete* 30(b)(6) notice."  *Id.*  But there is nothing "untenable" or improper about Defendants' position.  It is both what Rule 30(b)(6) and this Court expressly require.  The Court made this

21

clear at both the telephonic hearing on this subject in April, and at the hearing on November 20. 4/11/12 Tr. at 12:2-21:1; 11/20/12 Tr. at 45:7-21. Indeed, subsequent events have made it clear that Plaintiffs *can* serve Rule 30(b)(6) notices notwithstanding their complaints in the instant motion because on November 28, 2012, Plaintiffs served a Rule 30(b)(6) notice for the PLO, and on November 29, 2012, Plaintiffs' served a Rule 30(b)(6) notice for the PA. Ex. 1, 2.[11] Accordingly, because none of the complaints in Plaintiffs' motion justify extending the fact-discovery deadline in any fashion, Plaintiffs' request for a general extension of the fact-discovery deadline should be denied.

Similarly, none of the complaints Plaintiffs has made about Defendants' discovery responses have been shown to prevent Plaintiffs' experts from preparing their reports as required by the Scheduling Order. Accordingly, Plaintiffs' request for a general extension of the expert-discovery schedule should be denied.

Finally, Plaintiffs claim that a "third party" is needed to "oversee the discovery process to completion," and suggest the appointment of a special master for this purpose. DE 268 at 8, 9, 11. There is no need for such relief. Magistrate Judge Ellis has carefully overseen discovery since it opened in June 2011 by holding regular hearings and ruling upon those discovery disputes brought to him by the parties. Had Plaintiffs timely brought their issues to the Court, they could have been ruled upon (and in Defendants' view, denied) promptly. Accordingly, Plaintiffs' request that the Court appoint a special master should also be denied.

---

[11] As defense counsel anticipated, 11/20/12 Tr. at 46:25-47:3, the Rule 30(b)(6) notices are overbroad and have other problems. Defendants will bring these issues to the Court's attention in a letter on Monday December 3 (to the extent the parties are not able to resolve them in a meet and confer) so they can be resolved during the telephonic hearing set for December 5, 2012, at 2:30 pm.

1294046.2

## <u>CONCLUSION</u>

For the foregoing reasons and those stated at the hearing on November 20, 2012,

Plaintiffs' Motion to the Magistrate Judge to Expand the Discovery Schedule and for Related

Relief should be denied.


November 30, 2012                          Respectfully Submitted,


                                          ___/s/ Mark J. Rochon_____
                                          Mark J. Rochon
                                          Richard A. Hibey
                                          Laura G. Ferguson
                                          Brian A. Hill
                                          MILLER & CHEVALIER CHARTERED
                                          655 15th Street, NW, Suite 900
                                          Washington D.C. 20005-6701
                                          (202) 626-5800 [tel]
                                          (202) 626-5801 [fax]
                                          mrochon@milchev.com [email]


                                          *Counsel for Defendants the Palestinian Authority and the*
                                          *Palestine Liberation Organization*

1294046.2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 30th day of November 2012, a true and genuine copy

of the foregoing was filed by ECF, which will automatically send notification and a copy of such

filing to the following:

>Robert J. Tolchin
>The Berkman Law Office, LLC
>111 Livingston Street – Suite 1928
>Brooklyn, NY 11201
>rjt@tolchinlaw.com
>
>David I. Schoen
>2800 Zelda Road, Suite 100-6
>Montgomery, AL 36106
>dschoen593@aol.com
>Schoenlawfirm@gmail.com
>
>*Attorneys for Plaintiffs*

>     /s/ Mark J. Rochon
>Mark J. Rochon

1294046.2