# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY, et al.

                Plaintiffs,

                                                        Civ. No. 02- 2280(RJL)

vs.

THE SYRIAN ARAB REPUBLIC, et al.

                Defendants.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR A BRIEF ENLARGEMENT**

On November 19, 2012, due to an unforeseeable emergency security situation in Israel, which required the call-up to national service of Plaintiffs' litigation team's staff members, including translators and document experts with the background necessary to respond to the Motion and Supplemental Memorandum at issue here, Plaintiffs filed a Motion (DE 179) seeking a one week extension of time, until November 26, 2012, for filing their Response to Defendants' Motion seeking the return or destruction of a document Defendants produced to Plaintiffs in connection with a recent deposition. (DE 170)

Defendants claim in that Motion that a document they produced on or about September 12, 2012, in connection with the deposition of their witness, Mr. Dahbour, was "privileged" and was inadvertently produced to Plaintiffs. (DE 170) Defendants' motion was filed on October 31, 2012 (over a month and a half after the matter at issue arose). (DE 170) Ordinarily, a Response to that Motion would have been due to be filed on November 19, 2012. However, on November 7, 2012, Defendants filed a Supplemental Memorandum in support of the October 31st motion,

1

which was inextricably intertwined with the original motion. (DE 174).[1] A Response to that Supplemental Memorandum, if considered alone, would be due to be filed on November 26, 2012, the date on which Plaintiffs seek to file their Response to the entire Motion as supplemented. As noted in their Motion for the one week enlargement, Plaintiffs respectfully submit that the only fair, logical, and complete way to respond to Defendants' Motion as supplemented is to respond to both the Motion and the Supplement in one pleading.

If the Motion and its Supplement were to be responded to together, the only meaningful way to proceed, a Response to them both would be due to be filed on November 26, 2012, requiring no extension of time at all. However, in an abundance of caution, and since Defendants refused to agree that the motion and its supplement should be considered as one filing for purposes of these rules, Plaintiffs moved for an extension of time of one week, so as to be able respond to the submission Defendants made, as supplemented on November 26, 2012. (DE 170)

As indicated in the original Motion for the enlargement of time, DE 179, the undersigned tried unsuccessfully to obtain Defendants' consent to the request. Defense counsel noted that Defendants "may well have different views than (Plaintiffs)" about the Gaza rocket attacks into

---

[1] Defendants' original Motion, DE 170, was supported by a signed sworn statement in English by a person, Mr. Abu Hamid, who claimed to be directly involved in the generation of the document at issue, but who acknowledged that he did not speak English. In other words, as to the sworn statement submitted to this Court over his signature, in support of Defendants' Motion, Mr. Hamid, by definition, could not even have read it, let alone understood it or known whether it comported with the information he had provided in Arabic. Plaintiffs' counsel immediately requested a copy of any Arabic version of the statement which Mr. Hamid might actually have reviewed before his signature was placed on a sworn statement in English that he could not even read. As noted in Plaintiffs' motion for a brief enlargement, (DE 179), Defendants rejected Plaintiffs' request out of hand. Instead, a week after filing their Motion, Defendants filed a Supplemental Memorandum in further support of DE 170, (DE174), and, along with additional argument/accusations (but no translator's certification, as one might reasonably expect), finally provided the Court with the purported Arabic version which the affiant is said to have reviewed, and which Defendants had refused to give to Plaintiffs. The Motion and the Supplemental Memorandum clearly are inextricably intertwined and any response to the earlier filed Motion, had to be informed by an examination of the Arabic statement which purports to have the facts Hamid is said to have provided, in the language in which he purportedly provided them. That required the services of a translator. Responding to the Motion and its Supplement separately would make no sense and just place a completely unnecessary burden on the Court, Plaintiffs, and the record.

Israel and wanted to know who on the Plaintiffs' team had been called up for immediate service. (DE 180-4)

Putting aside the inappropriateness of defense counsel's invocation of his clients' perspective on the current conflict as a factor lawyers should consider with respect to scheduling in a case, the undersigned responded by asking exactly what information it was the defense counsel sought about the people who were called up, and by advising defense counsel that the people at issue were translators and consultants whose work is directly relevant to the document and related matters at issue in the Motion to which Plaintiffs intend to respond. (See email excerpts at DE 180-4)[2]

To be perfectly blunt on this subject, as alleged in the Complaint in this case and as the evidence will show, Defendants are direct supporters of horrific acts of terrorism and have encouraged, fomented, and rewarded terrorism since their founding through today. Their constituents include terrorists who have victimized innocent civilians and, in this very case, Defendants provided the material support that led to the terrible terrorist bombing attack which left two little girls dead and others forever wounded. Plaintiffs' counsel also has had a chance to observe defense counsel's interaction with Defendants and has seen the degree to which defense counsel apparently relies on its clients to comply with our rules of discovery. Given who the Defendants are and the apparent nature and extent of the relationship between clients and counsel, unless directed by this Court to do so, Plaintiffs' counsel simply does not intend to disclose to Defendants or their counsel the names or other identifying information concerning

---

[2] Throughout this case, defense counsel, especially Mr. McAleer, with whom almost all interaction has been centered in this case, has made a practice of writing emails, primarily for the Court's later consumption, and then attaching his emails to whatever pleadings he things they might assist. The undersigned has advised him repeatedly that we write emails instead to try to communicate and actually resolve the matters to which they are addressed.

3

any member of Plaintiffs' litigation team staff or consultants, unless necessary for a specific purpose, and has no intention of doing so here.

Nevertheless, while one hesitates to succumb to the outrageous baiting that is reflected in Defendants' ranting opposition to this one week extension motion, found in DE 180, Plaintiffs have attached as Exhibit "1" hereto an email from one staff member, Roy K ------, whose assistance for the Response to the underlying Motion at issue was required and who was called into immediate service due to the rocket attacks.

This email is a response to an inquiry into his status . Roy K ------ is just one of the several consultants and translators whose work is needed on this matter who were immediately called up. Plaintiffs' counsel have worked diligently to replace them, to the extent possible and that is why the extension request was for only one week.

Hopefully, the temporary ceasefire just achieved will lead to a more permanent situation such that those called up to service can return to their positions soon.

Attached hereto as Exhibit "2" is a BBC News report about the expansion of the security emergency as recently as November 21, 2012, to include the bombing of a bus in Tel Aviv. Interestingly, a Jerusalem Post report on the bus bombing quotes the "Palestinian media" as reporting that the "Fatah-linked Al-Aqsa Martyrs Brigade" took responsibility for the attack, although no perpetrator had yet been confirmed. Another mainstream Israeli newspaper, Haaretz, had a similar report. Fatah, of course, is one of the primary constituents of the Defendants in this case; so perhaps defense counsel was engaging in understatement when he opined that his clients, "may well have different views" on the current terror campaign.

---

Consistent with that notion, the undersigned does not make it a regular practice of attaching emails as exhibits to pleadings. The undersigned will, of course, provide any and all emails in full, upon the Court's direction.

4

Plaintiffs respectfully submit that under all relevant circumstances, they must be permitted to file their Response to Defendants' Motion for return or destruction of the document at issue as supplemented, (DE 170 and DE 174) on November 26, 2012. The tragic emergency security situation that required this Motion for a one week enlargement and the similar motion with respect to Plaintiffs' Replies to DE 168 and DE 169 (DE 176, granted by Order dated November 19, 2012) could not be foreseen and its impact on Plaintiffs' ability to respond to Defendants' Motion has been direct and significant, specifically because the abilities of the translators and consultants who were called into immediate service are directly relevant to this motion. The one week enlargement of time, such that all three documents are due to be filed on November 26, 2012, still places a great deal of pressure on Plaintiffs' counsel, for substitute translators and consultants have to be found and the pleadings to be filed are significant; but Plaintiffs' counsel were determined to ask for only the shortest amount of time by way of extension within which we believed this could be accomplished and that is what has been requested.

**Defendants' Opposition to the One Week Enlargment Has No Merit and is Revealing**

Defendants' Opposition to this request for a one week enlargement of time is outrageous. It is filled with unsupported, unsupportable, misleading, and in some instances downright false assertions and refers (often falsely) to matters that are completely irrelevant to the issue before the Court, generally turning facts absolutely upside down in a tortured effort to somehow try to make them fit defense counsel's agenda. One should hesitate to dignify such a submission with a reply; but Plaintiffs feel compelled to reply to some extent, despite the specious nature of most of its content.

A few preliminary remarks are in order:

5

First, at the beginning of this case, Defendants intentionally defaulted and that default remained in place for a long time. Defendants eventually sought successfully to have the default vacated, purportedly to have the case proceed on the merits. There is little more relevant to the merits of this case than the information Defendants seek to conceal through their Motion for the return or destruction of the document at issue – an effort which Defendants have expanded to include portions of a deposition transcript, comprised of testimony from their own witness which they not only failed to object to, but affirmatively invited and effectively licensed at the time – testimony neither sequestered nor sealed, and which puts the lie to their entire defense in this case and to express and indisputably false representations defense counsel have made to this Court.[3] (See DE 180 at 2, Para. 3).

Secondly, Defendants now oppose a one week extension of time for a Response to their Motion and engage in truly unbelievable, desperate argument in furtherance of that opposition. Yet, Defendants waited some six weeks before they even filed their Motion seeking the

---

[3] On September 1, 2012, defense counsel unequivocally represented to this Court that "… there has been no undermining of the fact that the deplorable bombing in this case was the act of an outlawed group, not supported in any way by the PA or the PLO." (DE 166 at 3) On September 3, 2012, Plaintiffs advised the Court that this representation was absolutely false and demonstrably so – and that was without knowing that Defendants had the information to which its witness Mr. Dahbour testified at deposition concerning the document Defendants wish to conceal and have destroyed. Plaintiffs will not quote from or in any way use the document at issue here so long as it remains under the sequestration agreement which Plaintiffs agreed to (now we know on false premises from defense counsel) solely so that this issue can be litigated fully and fairly; but Mr. Dahbour's testimony is a fully open record for all purposes and, indeed, it was lead defense counsel who insisted on examining him with the document at issue in hand, announcing that it was his burden to prove the privilege and he would do so through Mr. Dahbour. Of course, that attempt failed miserably and succeeded only in demonstrating that the document was not at all privileged and that defense counsel's representations, made after a break in the proceedings for defense counsel to consult among themselves and obtain all relevant facts in order to make an accurate representation on the matter, simply were not true or accurate. That development, of course, led, as it had to, to lead defense counsel's concession that he could not establish the privilege and that we were entitled to examine Mr. Dahbour on the document and on all facts relevant to its appearance and its substance, and that is exactly what next occurred. Now Defendants seek even to have that transcript destroyed. (See DE 170 at 2, para. 3). Defendants simply know no shame. They cannot be permitted to succeed in their attempts to conceal the true facts of the events underlying this case and their full liability for those events, reflected in their own files and known by their own agents and employees and concealed virtually in their entirety prior to September 12, 2012. The rules of our system and the great public interest underlying the Anti-Terrorism Act cannot permit such misconduct and misguided efforts to prevail.

destruction or return of the document at issue and never even sought the sealing of the deposition transcript of the testimony they fully consented to at the time taken and notwithstanding their phony privilege claim as to the document, the contents and appearance of which was the subject of much of their witness, Mr. Dahbour's testimony.[4]

Third, the Court must consider what is going on here with Defendants' claims, as will be much more fully exposed in the Response Defendants seek desperately to avoid. In their Motion seeking the destruction of the document Defendants produced on September 12, 2012, in connection with the deposition of their witness, Mr. Dahbour's, an officer in the PA intelligence service, Defendants (or defense counsel) have put forward a story which they hope will support their claim of privilege (but which raises far more questions than it answers and certainly does not establish a claim of any privilege that would require its destruction or return). (DE 170)

The new story Defendants are now telling, of course, is that some previously unmentioned person, a PA employee named Hamid, generated the document at issue, purportedly at the request of "the GIS Central Operations Center" (no person is named as having made this request), that the document he created had a header and his signature on it, while the one he has now reviewed differs in appearance (apparently the sequestered document),[5] that he apparently

---

[4] No reason is given to explain the six week delay in filing the motion. One attorney involved in the matter has indicated that he was out of the office from September 27th to October 31st, (DE 170-4 at 4); but September 27th was over two weeks after the matter arose. There is no indication that the attorney was unreachable; indeed, other defense counsel during that period of time of this attorney's absence demanded that we continue to include him on our emails circulation list. Additionally, the purported Declaration from Mr. Hamid bears the date of October 16th, again over two weeks before the Motion was filed. This clearly undermines any notion of prejudice from granting Plaintiffs a one week extension for responding.

[5] Notwithstanding Defendants' insistence that the document at issue must be sequestered for all purposes and that Plaintiffs should not refer to it or use it, even for purposes of responding to their Motion, it would appear that Mr. Hamid was given the document and it is appears that he is describing its appearance and referring to its substance in his Declaration. (DE 170-5 at 3) Surely a full response, including an inquiry as to why one version has a header and a signature and another does not is in order. But defense counsel have refused multiple requests for information on this subject and have leveled accusations at Plaintiffs' counsel just for asking them questions about it.

only learned and understood that whoever asked him to generate the report apparently was in turn asked by defense counsel to generate the report (Defendants do not even attempt to address the multiple impediments both to admissibility and to using this to support their absurd attorney-client privilege claim). (DE 170-5) Defense counsel further have the Hamid Declaration characterize the report as "pertaining to Saddek Abdel Hafez." (the terrorist who committed the bombing in this case).

However, defense counsel well know how misleading this is, while hoping such efforts will succeed by keeping the document under wraps. Their undoing, however, as a matter of first course, comes from Mr. Dahbour's detailed testimony about the document on the open record with lead defense counsel's full license – indeed, with defense counsel directing the witness to answer questions on the document.[6]

Defense counsel's gratuitous implication throughout the portion of DE 170 that refers to the deposition, to the effect that defense counsel somehow contended that any portion of the deposition would be confidential and the rendition in DE 170 of why the deposition continued, is a complete figment of defense counsels' imagination and they know far better. In any event, the deposition transcript itself makes clear exactly how and why the deposition continued on this subject with defense counsel's full agreement and license, especially once he failed to establish

---

[6] This much is evident even from the limited excerpts of the deposition transcript that Defendants have submitted (See DE 170-6 at 30-36; Tr. 139-143). Defense counsel insisted that he had the right to examine the witness on the open record about the document, then acknowledged he failed in his effort to prove its privileged nature, directed the witness to answer at one point, and then after failing in his efforts said "We're not going to stand in the way or your questioning of the witness, regarding this document. We - - we know as lawyers, how it was created. And I am telling you that it is a document that was created for us. But since this witness cannot identify the document per se as a document, then I am afraid we will go forward." (DE 170-6 at 35; Tr. 142) Defense counsel chose to redact the remainder of the relevant portions of the open record transcript from its Motion Exhibits of course. However, there was no effort whatsoever to seal any portion of the transcript and as the Court would see, upon its own review of the transcript, Mr. Dahbour was permitted to testify in detail about what the document at issue says, he put it in context, he explained that it reflected information readily found in the Defendants' files – which tellingly Defendants have concealed from Plaintiffs throughout this case, despite their independent obligations to disclose and produce them and their obligations with respect to the same in response to discovery demands outstanding since at least last Spring.

8

his claim of privilege, and it reflects Mr. Dahbour's candid testimony on this subject without objection, in the presence of two experienced defense attorneys fully aware of the situation and of their obligation to object if they had an objection to raise.

This new story is absolutely irreconcilable with the representations of lead defense counsel and one of his partners, who also is a member of the defense team, when the claim of privilege was made orally on the deposition record on September 12, 2012.

Indeed, after the issue of the document arose, and after breaks for counsel on both sides to ascertain the facts and develop positions, lead defense counsel expressly represented to Plaintiffs that it was the deponent, Mr. Dahbour, who "provided the information that is contained in (the) document" and that he provided it to the defense team's "investigator." (DE 170-6 at 33; Tr. 140)

This information was provided to Plaintiffs' counsel by lead defense counsel, after expressly advising Plaintiffs' counsel that he and his partner had the "opportunity to consult." (DE 170-6 at 29; Tr. 136). Further, defense counsel took great exception to any suggestion that the document was "any document other than what (defense counsel) represented it to be." (DE 170-6 at 25; Tr. 132) The stories defense counsel have put forward as to how, by whom, and for whom the document at issue was generated are completely irreconcilable. It should be noted, of course, that with Mr. Dahbour right on front of them, defense counsel never asked him whether the facts he (defense counsel) had represented were true – i.e. whether Mr. Dahbour had given the information in the document to a defense investigator – the very scenario on which defense counsel claimed to base their claim of privilege, and the circumstances under which they obtained Plaintiffs' counsel's consent to treat the document as sequestered under Rule 26(b)(5)(B). Now, according to defense counsel, the facts on which they got the document to be

9

sequestered were not true – and were not "corrected" until over six weeks later. That hardly reflects appropriate conduct with respect to a claim of privilege and in an effort to conceal fully discoverable information, right from its files, according to its Rule 30(b)(6) deponent, Mr. Dahbour ,which leaves no question about Defendants' role and liability in this case – information which Defendants had an absolute obligation to produce long ago.[7]

The story Defendants now put forward in support of a purported claim of privilege, was never put forward until more than six weeks after the foregoing story was represented with respect to the document, notwithstanding defense counsel's full opportunity to consult among themselves and with the clients on September 12, 2012 and at all times after that.

Perhaps most significantly, Defendants still have never explained why the underlying information never was produced to Plaintiffs or how, in light of what was sitting right in their own files all along, they made the representation to this Court just 11 days earlier, in DE 166, that their claim that the bombing in this case was "not supported in any way by the PA or the PLO" has never been undermined. Their own witness, a representative put forward by the Defendants under Rule 30(b)(6) far more than "undermined" that demonstrably false representation – even in the far too modest excerpt submitted by Defendants. (DE 170-6 at 34; Tr. 141 – (Mr. Dahbour (Referring to the document at issue): "After I read these two pages in front of me, most of the information is available within our security files.").

The balance of the Defendants' Opposition to Plaintiffs request for a one week extension of time to respond will not be dignified here with anything other than the following: to the extent defense counsel asserts (and purports to assert facts without any basis for knowledge and not in

---

[7] It is of no minor significance that Mr. Dahbour testified that all such information has been in Defendants files all along, since his testimony followed the testimony of witnesses who put forward Defendants' standard excuse for not

Declaration, sworn, or affirmed form) that the Plaintiffs' request for this one week extension of time is based on some reason other than the emergency situation in Israel, it is offensive, outrageous, and, most importantly, completely false and further reflects defense counsel's unhesitating willingness to engage in personal attacks, with any basis in fact, in order to try to advance a position.

At DE 180, Pages 4-5, defense counsel claims that the "true reason" that Plaintiffs seek the extension of time was because defense counsel was otherwise tied up preparing a comprehensive pleading in another case (which exposes defense counsel's truly striking pattern of discovery conduct extending over the course of the entire discovery period in that case). It is true, of course, that Plaintiffs in that case made that filing and it is equally true that the "Israel-Gaza conflict" did not prevent that filing. In fact, it had nothing to do with it. First, the people who drafted and generated the filing in that case were neither the undersigned nor Mr. Tolchin; so it did not require any of our time at all to draft. Secondly, the translators and consultants needed for the instant Motion and called into national service from the security emergency were not at all involved in the filing in that other case.

Defendants' sarcastic assertion that we "apparently" still do not know the names of the people called up to service will not be dignified further. (DE 180 at 6) The idea that Plaintiffs, or any party, should not be entitled to the original language document of an affidavit or declaration that is submitted in English to a Court, signed in the English version by a declarant who admittedly does not speak or read English and has no idea on personal knowledge of the contents of what he has signed, is beyond the pale, as is the implication that we should just be willing to take on trust the accuracy of the translation (or that there ever was an Arabic version –

---

producing information or documents – that there are no files or that the files were destroyed or seized by the Israelis.

when Defendants refused every request to produce one). The Supplemental Memorandum and the production of the Arabic version of the key witness's statement are an integral part of this Motion, as is the irregularity of the document, appearing in two different forms at two different times, with defense counsel again refusing to explain the missing header and signature from one version. Plaintiffs are fully entitled to evaluate all of these relevant factors in formulating a complete response to the Motion as supplemented and the matter of Supplemental Memorandum is not insignificant as Defendants would have it. (DE 180 at 6).

Finally, Defendants urge the Court to modify the briefing schedule on all sorts of pending pleadings, as well as giving themselves some eleven days to file a Reply to Plaintiffs' Response to the supplemented Motion for destruction or return of a document. (DE 170 and DE 174). Defendants offer no explanation for what appears to be some sort of cross-motion for extension of time on a variety of outstanding matters; so Plaintiffs' counsel will not address that here. Defense counsel, at one point mentioned that if Plaintiffs were granted the one week extension Defendants would want an adjustment of time; but the undersigned understood this to be a reference solely to the Reply with respect to DE 170 and DE 174 and readily consented. (See DE 180-4) Indeed, the undersigned has advised defense counsel repeatedly and without exception that it is the undersigned's practice to always consent to a requested scheduling extension as a professional accommodation and under the assumption that a fellow attorney would not ask if it were not needed.

Defense counsel apparently have concluded that the only chance they have at prevailing on their "privilege" claim, which seeks the destruction of the full story of the terrorist bombing in this case and their direct role in and liability for it, is trying to prevent Plaintiffs from having a

---

Mr. Dahbour's testimony certainly put the lie to that claim.

chance even to respond – for defense counsel know that the response will completely undercut their claim on the facts and the law and they do not want this Court to hear either. This effort is inappropriate and Plaintiffs deserve a full and fair chance to respond on November 26, 2012, based on all of the foregoing.

WHEREFORE, based on the foregoing, the original Motion and supporting Memorandum, and all relevant considerations, it is respectfully submitted that the instant motion should be granted, with the time extended one week, until November 26, 2012.

Respectfully Submitted,

/s/ David I. Schoen
David I. Schoen, Attorney at Law
D.C. Bar No. 391408
2800 Zelda Road, Suite 100-6
Montgomery, Alabama  36106
(334) 395-6611
Fax:  (917) 591-7586
DSchoen593@aol.com

Robert J. Tolchin
D.C. Bar No. NY0088
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com

Counsel for Plaintiffs