# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

    Plaintiffs,

    v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

    Defendants.

Civ. No. 04-397 (GBD) (RLE)

**PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANTS**

Pursuant to Fed. R. Civ. P. 36 all Plaintiffs in the instant matter, by and through undersigned counsel, serve Defendants Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") with the following requests for Admissions which Defendants shall answer in writing within thirty (30) days of the service of these Requests.

**INSTRUCTIONS & GENERAL DEFINITIONS**

1.    Defendants shall respond to these interrogatories as required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

2.    The full text of the rule set forth in Local Civil Rule 36 is incorporated by reference herein and governs these interrogatories.

**SPECIFIC DEFINITIONS**

1.    "PA" means and refers to defendant The Palestinian Authority and any ministry, agency, division, bureau, department or instrumentality thereof.

2.    "PLO" means and refers to defendant The Palestine Liberation Organization and any agency, division, bureau, department or instrumentality thereof.

1

3.   "Defendants" means and refers collectively to Defendants PA and PLO and any ministry, agency, division, bureau, department or instrumentality thereof.

REQUEST FOR ADMISSIONS

**ADMIT THE FOLLOWING STATEMENT ARE TRUE:**

1)   The Palestinian Authority TV and Radio, the Palestinian Broadcasting Corporation, ("PBC") are under the direct control of the PA.

2)   The PBC is the official media service of the PA government.

3)   WAFA Palestine News and Information Agency ("WAFA") is the official PA news service.

4)   WAFA is affiliated with the PLO Executive Committee.

5)   The PLO Executive Committee is headed by Mahmoud Abbas.

6)   The newspaper *Al-Hayat Al-Jadida* is the PA's official daily newspaper.

7)   Mohammed Hasheika ("Hasheika"), was the suicide bomber in the Bauer bombing on March 21, 2002.

8)   Abdel Karim Ratab Yunis Aweis ("Aweis") was convicted in Israeli court for his involvement in the Bauer bombing on March 21, 2002.

9)   Nasser Jamal Mousa Shawish ("Shawish"), was convicted in Israeli court for his involvement in the Bauer bombing on March 21, 2002.

10)  Sana'a Muhammed Shehadeh ("Shehadeh") was convicted in Israeli court for her involvement in the Bauer bombing on March 21, 2002.

11)  Kaira Said Ali Sadi ("Sadi") was convicted in Israeli court for her involvement in the Bauer bombing on March 21, 2002.

12) Hasheika's family, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Bauer Bombing.

13) Aweis, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Bauer Bombing.

14) Shawish, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Bauer Bombing.

15) Shehadeh, her agents or assigns has/have received benefits, financial or otherwise, from the PA since the Bauer Bombing.

16) Sadi, her agents or assigns has/have received benefits, financial or otherwise, from the PA since the Bauer Bombing.

17) Aweis was a PA employee, agent or assign from at least 2000 to 2002.

18) Aweis was a PA employee, agent or assign at the time of the Bauer bombing on March 21, 2002.

19) Hasheika was a PA employee, agent or assign at the time of the Bauer bombing on March 21, 2002.

20) Hasheika had been a PA employee prior to the Bauer bombing on March 21, 2002.

21) The documents produced by Defendants, marked Bates 4473-4475, are genuine and authentic copies.

22) The documents produced by Defendants marked Bates 4497-4499 are genuine and authentic copies.

23) The documents produced by Defendants, marked Bates 4473-4475, are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

24)	The documents produced by Defendants, marked Bates 4497-4499 are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

25)	The Hasheikah martyr file produced by Defendants is a genuine and authentic copy.

26)	The Hasheikah martyr file is made up of records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

27)	Hasheikah was arrested by the PA in February, 2002.

28)	When Hasheikah was arrested he had on his person an explosive device.

29)	Saeb Erekat was the chief Palestinian political negotiator in March, 2002.

30)	In a March 24, 2002 Fox News interview, produced by Plaintiffs on March 14, 2012 via email, Erekat acknowledged that Hasheika had been arrested by the PA before the bombing.

31)	(a) Arafat received a list of wanted men from U.S. Envoy Anthony Zinni in December 2001 ("Zinni List"); (b) Aweis was on the Zinni List.

32)	The documents produced by Defendants, marked Bates 7304-7316, are genuine and authentic copies.

33)	The documents produced by Defendants, marked Bates 7304-7316 are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6)

34)	The documents produced by Defendants, marked Bates 7317-7328, are genuine and authentic copies.

35)	The documents produced by Defendants, marked Bates 7317-7328, are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

36) The video produced called "PA TV on Nasswer Aweis" on November 18, 2012 is a genuine and authentic copy of a broadcast aired on PBC.

37) Abdoullah Barghouti ("Barghouti") was was a PA employee, agent or assign at the time of the Hebrew University bombing on July 31, 2002 ("HU Bombing").

38) Marwan Bin Khatib "M Barghouti"; was was a PA employee, agent or assign at the time of the HU Bombing..

39) Barghouti, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the HU Bombing.

40) M Barghouti, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the HU Bombing.

41) U.S. Secretary of State, Colin Powell demanded that the PA arrest Abdullah Barghouti prior to the HU Bombing.

42) The PA was notified by Israel and/or the United States between September 1, 2000 and July 31, 2002 to detain or arrest Abdullah Barghouti.

43) (a) the PA received a list of terrorists known to be planning imminent attacks prior to the Hebrew University ("HU") bombing on July 31, 2002, and (b)Barghouti was on said list.

44) The documents attached to Plaintiffs' July 20, 2012 6th Request for Production of Documents are genuine and authentic copies.

45) The documents attached to Plaintiffs' July 20, 2012 6th Request for Production of Documents are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

46) The documents attached to Plaintiffs' July 20, 2012 6th Request for Production of Documents are incomplete.

47) The documents attached to Plaintiffs' July 20, 2012 6th Request for Production of Documents are illegible in whole or in part.

48) The video produced via email on October 23, 2012, entitled "PA Honors Hebrew University Bombers" is authentic and genuine copy of a broadcast that was aired on PBC.

49) Wafa Idris ("Idris") was the suicide bomber in the Sokolow bombing in the January, 2002 ("Sokolow Bombing")..

50) Munzar Mahmoud Khalil Noor ("Noor") was convicted in Israeli court for his involvement in the Sokolow bombing.

51) Mohammed Muhtasib (a/k/a Kamle el Abed) was a PA employee, agent or assign at the time of the Sokolow bombing.

52) Noor was a PA employee, agent or assign at the time of the Sokolow bombing.

53) Wafa Idris was a PA employee, agent or assign at the time of the Sokolow bombing.

54) Noor, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Sokolow Bombing.

55) Mohammed Muhtasib, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Sokolow Bombing.

56) Idris' family, agents or assigns has/have received benefits, financial or otherwise, from the PA since the Sokolow Bombing.

57) The document relating to Idris and Tirawi produced to Defendants via email on September 18, 2011 is an authentic and genuine copy of a PA intelligence document.

58) The document relating to Idris and Tirawi produced via email on September 18, 2011 are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

59) The document produced by Defendants Bates 02:004479-81 is a genuine and authentic copy.

60) The document produced by Defendants Bates 02:004479-81 is a record of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

61) The document produced by Defendants Bates 02:004484-86 is an authentic and genuine copy.

62) The document produced by Defendants Bates 02:004484-86 is a record of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

63) The document produced by Defendants Bates 02:006031-33 is an authentic and genuine copy.

64) The document produced by Defendants Bates 02:006031-33 is a record of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

65) The 4 pages of documents produced by Defendants regarding payments made by the PA to Noor are genuine and authentic copies.

66) The 4 pages of documents produced by Defendants regarding payments made by the PA to Noor are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).ta

67) The Noor files, produced on or about November 16, 2012 by Defendants, is a genuine and authentic copy of Noor's prisoner file.

68) The Noor files, produced on or about November 16, 2012 by Defendants are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

7

69) Noor states in The Noor files, produced on or about November 16, 2012 by Defendants, that he was affiliated with Fatah at the time of the Sokolow bombing.

70) At the time of the Sokolow bombing, Noor was affiliated with Fatah.

71) At the time of the Sokolow bombing, the PA provided funding to Fatah.

72) Mohammad Dahlan was an employee of the PA at least from 2006 to date.

73) Mohammad Dahlan was a senior official of the PA from at least 2006 to date.

74) During a January 22, 2006 television broadcast, Dahlan made the statement, "All [Hamas'] military commanders have been protected by the [PA] security establishment throughout this Intifada. They were provided with full protection..."

75) During a June 16, 2007, television interview Dahlan stated that: "The Palestinian security forces were those who protected and hid half of the Hamas leadership and of the Hamas military force during the Intifada."

76) During the same June 16, 2007 interview Dahlan also stated that: "Forty percent of the martyrs in this Intifada belonged to the Palestinian security forces."

77) In a televised interview on July 22, 2009, Dahlan stated, in the context of a discussion on the "proper" use of terrorism, that: "I lived with Chairman Yasser Arafat for years. Arafat would condemn [terror] operations by day while at night he would do honorable things."

78) The "Foundation for the Care of the Families of Martyrs and Wounded, aka the "Fund," the "Institute" or the "Establishment" for the families of martyrs, ("the Fund") is funded by Defendants.

79) The Fund is operated by Defendants.

80) The average benefits paid by the Fund in 2004 were more than 20 percent of the contemporary poverty line; and in 2005 they were more than 33 percent of the poverty line.

81) Yousef Ahmed Jubran ("Jubran") served as director the Fund between 1996 and 2006.

82) Jubran appeared as a witness on behalf of the PA in the Tel Aviv District Court in the matter of *Goldman et al. v. PA et al.*, Civ. No. 1137/05.

83) Jubran testified under oath there that suicide terrorists are considered "martyrs" whose families are entitled to financial benefits under Defendants' program, because "they fell in the course of the struggle, the fighting, the conflict."

84) Representatives of Defendants' Fund assisted Bassam Banat with his/her dissertation.

85) Representatives of Defendants' Fund provided the names of all Palestinian suicide martyrs (Istishhadiyin).

86) Defendants' Fund president, Ms. Intesar Al-Wazeer ("Al-Wazeer"), facilitated Banat and designated a coordinator.

87) Al-Wazeer provided Banat with a list of all the Palestinian Martyrs and the way they implemented the martyrdom operations.

88) The Palestinian Authority published a 12 volume publication called "Al Aqsa Intifada: Diary and Documents" (انتفاضة الأقصى يوميات ووثائق), some volumes of which are captioned as "Diaries of the Intifada" (يوميات الانتفاضة). (Produced instead via email today, November 21, 2012).

89) These documents sent by plaintiffs to defendants by email on November 21, 2012 are genuine copies of volume 1 and volumes 4-12 of the PA's publication "Al Aqsa Intifada:

Diary and Documents" (انتفاضة الأقصى يوميات ووثائق), some volumes of which are captioned as "Diaries of the Intifada" (يوميات الانتفاضة)

90) The document produced to defendants by email on November 21, 2012, at 4:10 am EST, is a genuine copy of a webpage appearing at http://www.palpolice.ps/ar/?p=4830 on November 21, 2012.

91) The website http://www.palpolice.ps is the official website of the PA Police.

92) The webpage appearing at http://www.palpolice.ps/ar/?p=4830 on November 21, 2012 was published by the PA Police.

93) The PA can sue and/or be sued in PA courts.

94) The PA can sue and/or be sued in Israeli courts,

95) The PA can be sued in foreign courts.

96) The PA does not have members.

97) The PA does not have membership dues.

98) The PA holds assets in it own name.

99) The PA can enter into binding contracts inside the Palestinian territory.

100) The PA can enter into binding contracts outside the Palestinian territory.

101) Ali Yusuf "Ja'ara" was the suicide bomber in the Goldberg bombing on Janaury 29, 2004.

102) Ja'ara was a PA employee, agent or assign at the time of the Goldberg bombing on January 29, 2004.

103) Ja'ara's family, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Bauer Bombing.

104) The video produced via email on October 23, 2012, called "Yasser Arafat Immediately After Goldberg Bombing" is authentic and genuine copy of a broadcast that was aired on PBC.

105) The Jara'a martyr file produced by Defendants is an authentic and genuine copy.

106) The Jara'a martye file produced by Defendants are records of regularly conducted activity, as defined by Federal Rule of Evidence 803(6).

107) Jara'a's service as a policeman was terminated due to his martyrdom.

108) The video produced on July 3, 2012 called "A Jaara Funeral-PA TV" on July 3, 2012 is a genuine and authentic copy of a broadcast aired on PBC.

109) Ahmed Taleb Mustapha Barghouti aka Al-Farinsi ("M Barghouti") was a PA employee, agent or assign at the time of the Gould & Waldman Shooting on January 22, 2002 ("Gould shooting").

110) Nasser Mahmoud Ahmed Aweis aka Abu Mojaked ("Aweis") was a PA employee, agent or assign at the time of the Gould Shooting.

111) Majid Al-Masri aka Abu Mojahed ("Al-Masri") was a PA employee, agent or assign at the time of the Gould Shooting.

112) Mahmoud Al-Titi ("Al-Titi") was a PA employee, agent or assign at the time of the Gould Shooting.

113) Mahmoud Abdel Rahman Salam Musalah aka Abu Satkhah ("Musalah") was a PA employee, agent or assign at the time of the Gould Shooting.

114) Faras Sadak Mohammed Ghanem aka Hitawi ("Ghanem") was a PA employee, agent or assign at the time of the Gould Shooting.

115) M Barghouti, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting

116) Aweis, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting.

117) Al-Masri, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting

118) Al-Titi, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting

119) Musalah, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting

120) Ghanem, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting

121) Abdullah, his agents or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting

122) Ramadan's family or assigns has/have received benefits, financial or otherwise, from the PA since the Gould Shooting

123) Al-Masri was convicted in Israeli court for his involvement in the Gould Shooting.

124) Aweis' name appeared on the Zinni List (defined above).

125) Aweis was a captain in the PA National Security Service.

126) The PA continued to pay Aweis his salary without any interruption whatsoever after he appeared on the Zinni List.

127) The PA continued to pay Aweis his salary without any interruption whatsoever after the Gould Shooting.

128) The PA continued to pay Aweis his salary without any interruption after Aweis was arrested by Israel in Spring 2002.

129) The video produced on November 19, 2012 called "Al-Masri" is a genuine and authentic copy of a broadcast aired on PBC.

130) PBC interviewed the daughter of Nasser Al-Shawish on September 22, 2011, (as indicated in the document produced on November 19, 2012).

131) PBC interviewed the family of Majed Al-Masri on September 22, 2011, (as indicated in the document produced on November 19, 2012).

132) Mazan Faritach ("Faritach") was the bomber in the June 19, 2002 Mandelkorn Bombing ("Mandelkorn Bombing").

133) Faritach was an employee, agent or assign of the PA at the time of the Mandelkorn Bombing.

134) Fartiach, his family, agents, or assigns has received benefits from the PA since the Mandelkorn bombing.

135) The video called "On PA TV Glorification of Fogel family murderers - PMW Bulletins" produced on January 29, 2012 is a genuine and authentic copy of a broadcast aired on PBC.

136) The video called "Song dedicated to Palestinian prisoners honors arch-terrorists, on PA TV" on July 3, 2012 is a genuine and authentic copy of a broadcast aired on PBC.

November 21, 2012

Plaintiffs, by their Attorney,

*/s/ Robert J. Tolchin*

Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com

David I. Schoen
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
(334) 395-6611
DSchoen593@aol.com

## CERTIFICATION

I hereby certify that on November 21, 2012, I caused the within to be served by electronic mail and by hand on the counsel listed below:

Brian A. Hill
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701

*/s/ Robert J. Tolchin*

Robert J. Tolchin