UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

                                Civ. No. 04-397 (GBD) (RLE)

v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXPAND THE DISCOVERY SCHEDULE AND FOR RELATED RELIEF (DE 267)**

**Table of Contents**

INTRODUCTION ..................................................................................................................1

A.   DEFENDANTS ASKED PLAINTIFFS, AND THE COURT, TO TRUST THEIR REPRESENTATIONS..................................................................................................1

B.   PLAINTIFFS ALSO RELIED ON THE COURT'S REFUSAL TO SET A DEADLINE TO COMPEL..................................................................................................2

C.   DEFENDANTS HAVE NOW ADMITTED THAT THEIR RESPONSES WERE DELAYED ..............................................................................................................3

D.   DEFENDANTS HAVE ONLY THEMSELVES TO BLAME FOR THE DELAYED HAGUE DEPOSITIONS ................................................................................4

E.  PLAINTIFFS' MOTION IS PROCEDURALLY PROPER..................................................7

F.  DEFENDANTS' REMAINING ARGUMENTS ..................................................................8

CONCLUSION................................................................................................................10

Plaintiffs hereby respectfully submit their reply in further support of their Motion to the Magistrate Judge to Expand the Discovery Schedule and for Related Relief (DE 267).

## Introduction

Discovery disputes are fact-intensive and plaintiffs' motion and defendants' opposition are extremely detail-oriented. Indeed, so much so, that the forest is now being obscured by the trees, to the detriment of the Court and the parties. Plaintiffs will therefore focus most of their reply on a number of overarching points which are not in dispute, which are dispositive of the issues, and which are in danger of being eclipsed by the flood of discovery minutiae.

### A. Defendants Asked Plaintiffs, and the Court, To Trust Their Representations

Plaintiffs' motion shows, and defendants do not dispute, that in response to a very large number of discovery requests in this case – *in at least 19 discovery responses* – defendants represented that they were "investigating" and searching for documents and information, and that when defendants tarried and plaintiffs sought to compel responses, defendants argued that no judicial compulsion was necessary – indeed, that no pre-motion conference was needed – because responses would be forthcoming. Put simply, defendants told the plaintiffs, and the Court: "trust us." Now, defendants are arguing that plaintiffs were delinquent for relying on defendants, and that plaintiffs should have vigorously policed defendants. That argument is not only surprising to the plaintiffs and disrespectful to the Court, it indicates that defendants' approach from day one was a "bait-and-switch."

But whatever defendants' original motives, and whatever adjective best characterizes their current position, the fact remains that defendants asked the plaintiffs and the Court to rely on their efforts, and that plaintiffs *should not be penalized* for having done so. The circumstances and decision in *M2 Software v. M2 Communications* are almost exactly on point:

1

> [T]he present discovery motion would ordinarily be barred by the non-expert discovery cutoff. The movant's evidence in support of this motion demonstrates, however, that *M2 Software responded to document requests with statements that it had produced or will produce documents, that counsel for M2 Software stated in writing thereafter that she planned to make a supplemental production of documents*, that counsel for M2 Communications repeatedly and diligently requested M2 Software to produce the requested documents and things and that M2 Software *never clearly stated that it would not produce the requested and promised documents until it was too late* to file a timely discovery motion within the terms of the non-expert discovery cutoff date.
>
> This court will not rigidly enforce the discovery cutoff by barring the present discovery motion in circumstances in which M2 Communications and its counsel *reasonably relied to its detriment upon the representations of M2 Software and its counsel that M2 Software would produce the documents at issue*. In these circumstances and on these facts, the interest of the court in the efficient management of its caseload by the enforcement of the discovery cutoff should yield to the court's *overriding interest in fairness and equity*. For these reasons, the court will hear and decide the present discovery motion despite the fact that it was filed after the discovery cutoff date.

*M2 Software*, 217 F.R.D. 499, 500 (C.D. Cal. 2003) (emphasis added).

So too here: Plaintiffs "reasonably relied to [their] detriment upon the representations of" defendants regarding "investigations" and productions of documents and information that were extravagantly late and, upon arrival, proved to be inadequate. Therefore, the "overriding interest in fairness and equity" militates strongly against punishing plaintiffs for that reliance. *See id.*

### B. Plaintiffs Also Relied on the Court's Refusal to Set a Deadline to Compel

Defendants' defensive argument that plaintiffs failed to police them effectively constitutes an attempt by defendants to re-litigate a decision by the Court at the outset of discovery *not to set* discovery dispute deadlines. A joint discovery plan with competing provisions was filed by the parties on June 20, 2011 (DE 127). Defendants wanted all informal conferences regarding discovery disputes to take place no later than 30 days after the discovery

2

response. *Id*. at 8. Plaintiffs strongly opposed such deadlines as unfair and inefficient for numerous reasons. (DE 127 at 8-9).

The scheduling order issued by the Court rejected defendants' demand for deadlines and adopted plaintiffs' position by *not setting* such deadlines. DE 131. Plaintiffs' reliance on defendants' representations, and their approach of refraining from involving the Court at every turn, was animated by the Court's refusal to adopt defendants' demand for enforcement deadlines (as well as by Rule 37(a)'s requirement that parties involve the court as a *last resort*).

This Court has already addressed and rejected defendants' request for specified deadlines. Plaintiffs relied on this Court's ruling. Defendants should not be permitted to reopen that discussion and retroactively impose such deadlines, particularly where doing so severely prejudices – indeed, penalizes – the plaintiffs.

### C. Defendants Have Now Admitted That Their Responses Were Delayed

Defendants have furiously denied plaintiffs' charge of intentional delay by blaming their tardiness on Israeli military operations in 2002. *See e.g.* DE 271 at 11 ("as Defendants … have repeatedly explained, Defendants' headquarters and other security facilities were repeatedly attacked by Israeli Defense Forces after the requests for arrest at issue, and numerous documents stored in those facilities were either destroyed or seized by Israeli forces") and 13 ("As Defendants have previously noted, their inquiries have been hampered by the fact that the building … was destroyed by Israeli Defense Forces in early April 2002.").

Notwithstanding their rush to shift blame for the delays from themselves to the Israelis, defendants have now *admitted* that their responses have been delayed. If their representations here are credited, defendants face serious, objective obstacles to responding in a timely fashion

3

to plaintiffs' requests. This means that the eighteen-month discovery period, which does not take into account the possibility of such delay, was too optimistic and too short.

The remedy for this situation is certainly not to punish the *plaintiffs* by cutting-off discovery prematurely. The remedy, rather, is to enlarge the discovery period. In other words, defendants' demand that *they* not be blamed for or prejudiced by purported objective exigencies hampering their discovery response time applies equally, if not more so, to the plaintiffs.[1]

### D.  Defendants Have Only Themselves to Blame for the Delayed Hague Depositions

In March 2012, after having conducted some written discovery and investigations, *with nine months remaining until the fact discovery deadline*, plaintiffs asked the court to issue requests to Israel to take Hague depositions of eight individuals, most of them employees of the defendants, who are serving prison sentences for the attacks at issue in this action (DE 221-226). The defendants filed a completely baseless opposition arguing that that it was too late to request said depositions. Defendants based their opposition exclusively on a comment made by the Court about the timing of deposition requests in general and using Hague depositions as an example. However, plaintiffs suggest that this comment from the Court likely derived from a belief that these depositions take up to a year to arrange with foreign courts (which is often the case). In

---

[1] Plaintiffs do not credit defendants' claims of lost documents or objective impediments. Indeed, in this and other proceedings defendants have demonstrated their ability, when it suits their purposes, to find whatever documents they want and need. But the reasons for defendants' delays are not relevant at this juncture: What matters is that defendants have admitted that there have been delays. Recent proof of defendants' bad faith intention to block plaintiffs' discovery can be found in Mr. Hill's December 3, 2012 letter to this Court seeking to bar plaintiffs' Rule 30(b)(6) depositions. In that letter defendants argue that because they *objected* to plaintiffs' document production requests – albeit while also agreeing to provide documents – plaintiffs should not be allowed to take depositions on the same topics. That is, defendants have tacitly confirmed that the tactic of objecting-but-agreeing-to-produce was aimed at shutting down plaintiffs' discovery, and that defendants are hiding behind their objections while cherry-picking the information and documents they give to plaintiffs.

fact, plaintiffs provided the Court with a declaration proving that, as defendants are well aware, Israel regularly arranges such prisoner depositions within 2-3 months (DE 239).[2] Requesting such depositions *with nine months left in discovery*, therefore, is clearly reasonable and defendants' opposition was factually frivolous and they knew it. Nevertheless, defendants do not want these damaging depositions to proceed. Therefore, defendants have maintained their frivolous position and thereby intentionally complicated a simple issue. Had defendants not done so, the depositions would have been taken long ago, and plaintiffs would also have had plenty of time to conduct follow-up discovery.[3]

The depositions of the individual perpetrators are obviously extremely important to this case. Most of these terrorists were employed as security officers by the defendants when they carried out the attacks and therefore likely have personal knowledge of facts necessary to establish defendants' *respondeat superior* liability. Likewise, many of these individuals were on U.S. or Israeli wanted lists before the attacks; some of them were picked up and released by defendants (whence they proceeded to carry out the attacks), and some were apparently never detained at all. Plaintiffs have not been able to obtain specifics on these issues from defendants, who claim ignorance and/or that they mysteriously cannot find the U.S. or Israeli wanted lists and/or have woven self-serving stories about Israeli attacks knocking down jailhouse walls and allowing the terrorists to escape. Defendants' convenient amnesia about these topics can and will be tested if plaintiffs are allowed to depose the actual terrorists, who of course will be able to

---

[2] *See also* plaintiffs' recent Notice on this issue (DE 272) regarding analogous prisoner depositions requested by the U.S. District Court for the District of Columbia on September 28, 2012, which are *already* scheduled to take place in the Jerusalem Magistrates Court on December 19-20, 2012.

[3] In their recent response memorandum, DE 271 at 17-18, defendants' argued that at the June 28 hearing, "[t]he Court…properly declined to issue the requested letters." That is false. In fact, the Court heard argument, *but did not rule* on the issue. (*Id*, at 15-16).

5

testify about whether they were detained by the defendants, and how they were released from custody.[4]

Additionally, the perpetrators' answers relate directly to important 30(b)(6) topics and questions, and could lead to critical follow-up discovery and 30(b)(6) topics. They might, additionally, impact upon expert reports. Because the defendants and the court have taken the position that all 30(b)(6) depositions should be taken at once (November 20, 2012 Tr. at 45:7-13), plaintiffs cannot formulate a complete 30(b)(6) list without first having taken the perpetrators' depositions. As discussed briefly during the December 5, 2012 Conference, the topics to be addressed during the Hague depositions include (without limitation), the chain of command, the relationship between the defendants and Fatah, funding for the deponents' operations, and other subjects that perpetrators are uniquely situated to answer and must answer before the defendants' 30(b)(6) designees are deposed on these same and related subjects. Their testimony is among the most directly relevant testimony on the entire body of facts underlying the attacks in this case. In short, they know what they did, why, on whose orders, where their funding came from, and how their organizations relate to, interact with, and take orders from defendants. All of that information will impact the 30(b)(6) depositions. Indeed, plaintiffs decided to do the 30(b)(6) depositions last partially in the hope and expectation that the Hague depositions would then be complete and they could conduct the 30(b)(6) depositions armed with directly-relevant information, right from the front line sources – from the terrorists themselves.

Therefore, plaintiffs' inability to conduct their Hague depositions has significantly impacted the timing of other discovery matters. Delay on the Hague depositions is causing

---

[4] Of the eleven terrorists in Israeli custody who have been deposed in ATA cases, eight have testified and only three have refused to talk. In any event, any refusal to testify is independently relevant, because it renders the witness "unavailable," and his prior self-incriminating statements admissible, under the Federal Rules of Evidence. FED. R. EVID. 804.

6

plaintiffs great prejudice and rendering portions of their case uncertain. Defendants' attempt to preclude plaintiffs from taking the individual perpetrators' depositions was frivolous and, along with Defendants' other delay tactics enumerated in the Tolchin Declaration, is a significant cause for the need for an expansion.

### E. Plaintiffs' Motion Is Procedurally Proper

Judge Ellis' individual practices provide: "For discovery motion, follow Local Civil Rule 37.2… For motions other than discovery motions, a pre-motion conference is not required." And, Local Civil Rule 37.2 provides that "No motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court by letter and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference." It was plaintiffs' understanding that Judge Daniels was reminding counsel of those rules at the August 9, 2012 hearing, not expanding them.

Therefore, when plaintiffs' counsel carefully considered this issue prior to drafting their motion to expand, they made the good faith decision that the motion was not a "discovery motion" subject to LR 37.2, because it was not being brought pursuant to Rules 26 through 37, but rather pursuant to Rule 16(b)(4). The thrust of the motion was to expand the scheduling order, not to dispute or compel discovery. Undoubtedly, the present motion is *related* to discovery:  Defendants have promised responses, but produced them late or have not yet produced responses. But that does not make it a motion pursuant to "Rules 26 through 37." Moreover, Plaintiffs clarified that they would issue pre-motion letters to compel regarding any matters where defendants refused to respond. Plaintiffs were prepared to follow that route – there is no reason that they could not have – if they believed that it was the proper course of action.

7

If plaintiffs' counsel were mistaken, they apologize to the Court, but ask that their clients not be punished for an honest mistake made in good faith. Certainly, it was harmless error. Plaintiffs would happily make any corrections to the filing that the Court deems necessary.

Defendants' page limit argument is likewise baseless. Both Judge Ellis and Judge Daniels, in their Individual Practices at ¶2.C provide, "[u]nless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages." There is no limit provided for declarations. Plaintiffs did not exceed any page limit, therefore. But, again if plaintiffs have misunderstood His Honor's preferences, it was a good faith mistake and harmless error. Plaintiffs would happily make any corrections to the filing that the Court deems necessary.

### F.     Defendants' Remaining Arguments

Defendants claim repeatedly that plaintiffs did not seek to compel further responses to the requests about which they complain, apparently as justification for defendants' inaction. That is true.[5] Defendants lulled plaintiffs into believing that they were, in fact, searching and investigating in good faith. Plaintiffs refer the Court to the 19 times that defendants claimed their investigation was ongoing, as set forth in the Tolchin declaration, (DE 267). Plaintiffs did not, therefore, see the need to involve the Court. However, it became apparent as the close of discovery was approaching that defendants were not, in fact, "investigating" as they promised, severely prejudicing the plaintiffs who were facing a quickly-approaching deadline. Regardless

---

[5] Plaintiffs do intend to file pre-motion letters to compel regarding the requests to which Defendants have refused to respond as soon as that is humanly possible and upon receiving confirmation from defendants of which of their investigations have been exhausted. Plaintiffs did not intend, however, to move this Court to compel responses that defendants claimed, and continue to claim, that they are working on. If defendants are now changing their responses to refusals or to state that their investigation has been exhausted, Plaintiffs will consider those responses and act accordingly.

8

of whether this prejudicial delay was intentional, plaintiffs cannot be made to suffer as a result of it. They are entitled to be relieved of the prejudice imposed upon them by defendants.

Defendants also maintain throughout their brief that they looked and cannot find the requested discovery and that an extension will not change that. However, defendants have not claimed that those investigations have been exhausted (though they hint at it in their opposition memorandum). Defendants have repeatedly indicated in the past that they are searching and have never informed the plaintiffs of exhaustion. With regard to many of the requested items, it is simply impossible that defendants do not have them.

Defendants also broadly claim, in a circular and contradictory argument, that plaintiffs must have received all of the evidence that they needed because they were able to formulate and send discovery and admission requests, as well as 30(b)(6) deposition notices. Defendants plan has worked very effectively. Plaintiffs have been forced to produce discovery requests and 30(b)(6) topics as discovery closes, despite the fact that they *do not have everything they need* or all that defendants promised them. Those requests are admittedly incomplete, as plaintiffs have been hamstrung by defendants' promises to investigate and frivolous motions preventing the perpetrator depositions. And, while arguing that plaintiffs have sufficient information because they have *noticed* 30(b)(6) depositions, defendants then have the audacity to argue separately that Plaintiffs should be deprived of *conducting* that essential discovery. (See Hill 12/3/12 letter).

Defendants argue repetitively that Plaintiffs have not done anything with the discovery already provided. This is, frankly, a ridiculous argument. Defendants can have no idea what further investigation or work plaintiffs are doing with regard to any specific piece of evidence. And, it is plaintiffs' right to do so as they please pursuant to their own discretion.

Finally, defendants claim repeatedly that they produced discovery in good faith on a rolling basis. Defendants do not respond, however, to plaintiffs' argument that all of the evidence that was produced "on a rolling basis" *late* – six months to a year late. And it was late despite that the discovery related to Defendants' own employees, records and information that was readily accessible to them. Defendants' failure to address the reasons for purposefully delaying their responses, Plaintiffs suggest, is an admission by defendants that they have no legitimate excuse. Defendants try to deflect blame by arguing that plaintiffs also have produced discovery on a rolling basis. This is true, but all of the plaintiffs' supplemental discovery responses were not things that were in plaintiffs' possession. Quite to the contrary, the discovery consists of items that Plaintiffs had to *search for, painstakingly*.

It again must be stressed that plaintiffs' inability to take the Hague depositions of the perpetrators in this matter – due to defendants' frivolous motion for protective order – alone provides the good cause basis for an expansion herein. Plaintiffs must be permitted to take these critical depositions that were delayed by no fault of their own. And, for all the reasons stated above, they must be permitted time after these depositions to conduct any required follow-up discovery and to present a complete 30(b)(6) notice to defendants. Only then can plaintiffs take all of the 30(b)(6) depositions and, in a reasonable time following the close of fact discovery, produce complete expert reports.

It should be noted that Plaintiffs did not state that a Special Master was needed. Plaintiffs merely suggested it as an option for this Court should timing be an issue.

## Conclusion

For the reasons set forth herein and in plaintiffs' Motion to the Magistrate Judge to Expand the Discovery Schedule and for Related Relief (DE 267), the motion should be granted.

Dated:      Brooklyn, New York
            December 7, 2012

                                        Plaintiffs, by their Attorneys,

                                        <u>/s/ Robert J. Tolchin</u>
                                        Robert J. Tolchin
                                        111 Livingston Street, Suite 1928
                                        Brooklyn, New York 11201
                                        (718) 855-3627
                                        Fax: (718) 504-4943
                                        rjt.berkman@gmail.com

                                        David I. Schoen
                                        Attorney at Law
                                        2800 Zelda Road, Suite 100-6
                                        Montgomery, AL 36106
                                        (334) 395-6611
                                        Fax: (917) 591-7586
                                        DSchoen593@aol.com