# David I. Schoen
Attorney at Law

Admitted in
Alabama
Maryland
New York
District of Columbia

2800 Zelda Road
Suite 100-6
Montgomery, AL 36106

Telephone
334.395.6611

Facsimile
917.591.7586

Email
david@schoenlawfirm.com

October 12, 2012

Honorable Ronald L. Ellis
United States Magistrate Judge
United States District Court
 For the Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *Sokolow, et al. v. Palestine Liberation Organization, et al.*, 04-CV-397 (GBD)(RLE)

Dear Judge Ellis:

    I am writing today to follow up on the matters identified by Your Honor during the October 4, 2012 Status Conference in the above-referenced case.

    First, however, I want to apologize for being a day late with this letter. On October 4th, Your Honor directed that by October 11th, Plaintiffs should: (1) Write a letter to defense counsel providing additional information on the matter of the initial disclosures that were the subject of defense counsel's August 14, 2012 letter to the Court; (2) Provide a written response to the Court concerning the answers to interrogatories at issue in defense counsel's October 1, 2012 letter to the Court; and (3) Provide a written response to the Court concerning the deposition of Ms. Al-Wazeer which was the subject of another letter defense counsel wrote to the Court on October 1, 2012.

    I hesitate to make excuses for any late filing; however, to the extent Your Honor feels it appropriate to consider the following, I would like the Court to know that I did my best to get the responses filed by yesterday and, failing that, I at least ensured that the Court would have them before it today by having them hand-delivered.

    Between October 4th and yesterday, I had three full days on which I was not able to attend to the responses because of religious prohibitions against work and other related activity (Sabbath and the two last days of this year's Jewish high holy days). Then, this Wednesday morning, with the holiday concluded the night before, I was called to New Jersey on a criminal case which required immediate action. I also have had to work on a complicated petition for *certiorari* in a massive fraud case that must be filed October 15th in the United States Supreme Court and I am preparing for a projected 10 week trial in another criminal case in New Jersey. I am a sole practitioner with no staff of any kind and have a pretty heavy docket; but I, of course, place the highest priority on all work that is the subject of a Court directive. I wanted at least to explain and apologize to the Court, even if the excuses provide no real excuse at all.

Honorable Ronald L. Ellis
October 12, 2012
Page 2

Notwithstanding the foregoing, I would Your Honor to know that I was able to complete the first directed task on time and provided defense counsel yesterday evening with a letter responding to their August 14, 2012 letter concerning the initial disclosures. Approximately five pages of my letter to defense counsel provides a detailed explanation for each of the nine items identified in their letter. I would be happy to provide the Court with a copy if Your Honor wishes.

I will now address each of the two remaining matters:

**The October 1 Letter Regarding Answers to Interrogatories:**

On October 1, 2012, Defendants sent Your Honor a pre-motion letter, requesting a conference to discuss whether Defendants should be sanctioned for purportedly failing to comply with a June 28, 2012 order to respond to certain interrogatories directed toward eliciting the identity of witnesses who Plaintiffs believe know about arrests, requests for arrests, and/or releases from detention by the PA of certain identified terrorists responsible for attacks at issue in this case.

The bottom line answer to Defendants' complaint is that the Plaintiffs have complied fully and to the best of their ability, based on the information they have been able to obtain on this subject, following as complete of an investigation into the subject as Plaintiffs could muster. There is no sanctionable conduct whatsoever here. I can assure the Court unequivocally that Plaintiffs' counsel has done absolutely everything they can think of to try to track down the underlying information and the identities of those people who have information about it and we will continue to take every possible step, using every contact we can think of or cultivate, and, to the extent we can supplement the information provided, we absolutely will. Beyond that, of course, we cannot produce or provide what we do not have and have not been able to obtain.

In connection with this issue, I must make the following additional relevant points:

The Defendants have succeeded in turning this issue completely on its head. Plaintiffs learned, from the media and sources in the public domain, about repeated demands by American and Israeli officials for the PA to make arrests of known terrorists like Barghouti both before and after they struck their devastating blows, and learned further that the PA either had refused the arrest demands, or had released these known dangerous terrorists, whose danger and need for detention had been emphasized by the Americans and Israelis.

Plaintiffs then demanded information and documents on this subject from Defendants. Defendants have met those demands with the same pattern of non-responsiveness that

characterizes virtually all of their responses on every material matter. In virtually every instance, they either claim that they have no responsive documents because all such documents were destroyed by the Israelis[1], or they cannot locate them, or they have not found them yet, but will continue to look (often with respect to the most basic documents that had to be readily available). They have engaged in an orchestrated campaign of obstruction and delay with respect to discovery that we intend to make the subject of a comprehensive motion.

We have absolutely no question that someone among the Defendants has information about the day, reported widely in the media, when Colin Powell finally picked up the phone himself and demanded that Arafat arrest Barghouti and other others and keep them detained. Similarly, we have no question that someone among the Defendants has information about the entire system by which the Israelis, at the Cabinet Minister level and through coordinated security forces arrangements, provided the PA with list after list of terrorists who posed an imminent danger and who therefore had to be detained.[2] We have no question that someone among Defendants remembers meeting personally with General Zinni when the arrest and detention of Barghouti and others was demanded. Yet Defendants are silent in response to our demands and no one knows nothin' about nothin.'

After refusing to provide any such information or related documents, Defendants have turned the issue on its head and not only demand that Plaintiffs (private individuals with no direct access to security sources and files, in contrast to Defendants), provide all they know on this subject, and then Defendants seek sanctions when Plaintiffs provide the only bases they have for

---

[1] Tellingly, this repeated claim of the inability to provide information or documents because of the Israelis' destruction or seizure of all relevant documents, raised by these Defendants in another case, has been exposed as a complete fabrication in that case. We will be happy to provide details if the Court so desires.

[2] In this connection, I would note here that Plaintiffs independently obtained a document that was faxed among various PA offices, which reflects a request from Israeli officials dated August 2001 asking that the PA arrest several terrorists from various terrorist groups. The document bears Arafat's signature, acknowledging receipt. We believe that that document and/or others in a series just like it, demanded the arrest of Barghouti and others relevant to this case and so we presented the document to defense counsel with a demand for a legible copy and relevant information. That was months ago and, of course, to date, nothing has been forthcoming. At a good faith conference to ascertain Defendants' position, defense counsel continues to claim that they just cannot locate a legible copy, but they will keep looking. The game continues. Again, we intend to make this the subject of a motion; but it is relevant here to give the Court a full picture of this pattern of obstruction and delay and what is going on behind the scenes.

Honorable Ronald L. Ellis
October 12, 2012
Page 4

knowing that such requests, arrests and releases occurred.

    We have no doubt that Defendants only seek this information to know how much, if anything, to disclose on this subject, figuring their obstruction will only be uncovered if it is on a subject Plaintiffs have some independent way of ascertaining. Additionally, Defendants have just manufactured a situation in which they seek sanctions in an effort to try to intimidate Plaintiffs. They have no genuine interest in the underlying information, other than to try to keep whatever they have from Plaintiffs.

    Indeed, I would respectfully suggest that the course of events preceding Defendants' October 1, 2012 letter to the Court gives some insight into their agenda. The October 1st letter followed and supersedes (See 10/1/12 letter at n.1), a September 26, 2012, seeking sanctions on this subject. In that earlier letter, Defendants represented to Your Honor the following: "If Secretary Powell, Omri Sharon or President Peres have knowledge regarding the arrest of Abdullah Barghouti, Plaintiffs have provided no documents to support that assertion." [Letter of Brian A. Hill, Esq. of September 26, 2012 at 3]. This representation to the Court simply was not true; but most significantly, it was not true on the very matter that is at the heart of Defendants' complaint - the question of whether Plaintiffs have or have not produced information of documents in response to the demands.

    The fact of the matter is that what defense counsel left out of his original letter (and only corrected when my co-counsel sent him an email announcing that unless he withdrew it we would notify the Court of the misrepresentation), is that Plaintiffs sent defense counsel nine separate news articles from the time period in question which expressly report, *inter alia*, that (1) Israel informed the Palestinians a week before one of the suicide attacks that Barghouti was commanding a specified terrorist squad and had to be arrested (the Israelis gave them his whereabouts as well; but the PA did nothing and 15 were killed and 70-100 wounded); (2) this information was passed on to the PA just weeks after another "long list of names" of terrorists who had to be arrested was given to the PA (with no action taken); (3) it was not until Colin Powell himself urgently called Arafat, demanding the arrest of Barghouti and others after the bombing, that the arrests finally were made, only to release them shortly afterward; (4) Israeli Cabinet Minister Gideon Saar had been providing the Palestinians with the names of people who were going to be involved in the bombing - including Barghouti - for over a month before the bombing, but the PA refused to do anything; (5) a "Palestinian security official" told the press that Israel had informed the PA that Barghouti had sent the suicide bomber to Jerusalem; (6) Barghouti was on a list of seven "Islamic militants" given to Arafat just days before the suicide bombing, warning Arafat of the imminent attack and demanding their arrest and that this list of seven was taken from a longer list of over 100 suspects Omri Sharon (the Prime Minister's son) had personally delivered to Arafat two weeks earlier - Shimon Peres also is named as involved in

Honorable Ronald L. Ellis
October 12, 2012
Page 5

the effort; (7) the "U.S. State Department" issued a demand for the Palestinians to arrest those involved.

In short, Plaintiffs have given Defendants everything they know about who might have information on this subject and have given them documents which provide the basis for their belief. They can do no more. Defendants, in sharp contrast, can do much more and, as we will argue in a motion on the subject, must be compelled to do more. We continue to believe Defendants are improperly withholding documents on this subject.

It simply is beyond belief that these kinds of steps were taken at the highest levels, were publicly reported, yet no one in the PA has any documents or information about it. It also is difficult to understand how, in a letter seeking sanctions, this production by Plaintiffs was just inadvertently overlooked. Perhaps if defense counsel had sought to have a good faith discussion about this subject **before** he filed his September 26, 2012 letter, as we believe the Rules require, this erroneous, "unintentional()" accusation could have been avoided; but, of course, he did not.

There is no basis for compelling any action by the Plaintiffs in connection with this matter and there is no basis for ordering any sanctions against the Plaintiffs. Plaintiffs have done all they possibly can do to respond to the discovery requests at issue. Defendants, in sharp contrast, have not.

**The October 1 Letter Regarding the Al-Wazeer Deposition**

Also on October 1, 2012, Defendants wrote the Court a letter asking that the matter of seeking a protective order precluding the deposition of Intesar Al-Wazeer be taken up at the October 4th Conference.

Ms. Al-Wazeer, as Defendants acknowledge, is the head of the "Institute for the Care of Martyr's Families and the Injured, a part of the PLO government, euphemistically named, of course, which rewards the families of suicide terrorists specifically for their acts of terrorism. Literally, as the evidence in this case will show, the terrorist's family makes application for payment after the suicide bomber has successfully killed the Jews he targeted, noting on the application that he/she was a suicide bomber and noting the suicide bombing which he/she is responsible for, and then payment is requested and paid out like a pension.

Plaintiffs learned about this government official and her job, in part through a doctoral dissertation we came across which, in effect, celebrates suicide bombing and takes a special focus on Palestinian Arab terrorist suicide bombers. It appears from the documents we were able to locate on our own, that Ms. Al-Wazeer's office was ready, willing, and able to provide the budding doctor with all of the information he wanted concerning this heroic "martyrdom"

Honorable Ronald L. Ellis
October 12, 2012
Page 6

struggle and, indeed, in a letter written to the Dean of the student's school, in Ms. Al-Wazeer's name and official capacity, her office's "full cooperation" is certified, and the Dean is assured that a list of "all Palestinian Martyrs (caps in original) and the way they implemented the martyrdom operations" has been provided by her office to support the "very important study" which Ms. Al-Wazeer "highly appreciated." "Any help" that her office could provide would be readily provided, the Dean is assured in Ms. Al-Wazeer's name. This was just four years ago.

Plaintiffs do, indeed, seek to take Ms. Al-Wazeer's deposition. However, given the reasons offered by Defendants in support of their argument that they should be permitted to avoid producing her, Plaintiffs respectfully request an additional ten days to provide a substantive response to such reasons as are put forward in the October 1st letter. Such reasons include this government agency head's purported "advanced age" (at age 70)[See Letter at Page 3] and her role in the government.

Plaintiffs have been busily working to address the claims in Defendants' letter and are in the process of obtaining from overseas foreign language documents that we believe will show, *inter alia*, that Ms. Al-Wazeer is, indeed, an officer who Defendants must produce for deposition and that, notwithstanding the claimed limitations due to her "advanced age," in addition to running the government agency, Ms. Al-Wazeer has been busy jetting around the world recently appearing at various PLO and other events. We need the additional time to receive and review the documents in order to be sure of what they provide. We then would be able to substantively address each of Defendants' arguments and can do so at the November 1st Conference, in addition to the written submission we can make if given the additional time.

I respectfully submit that no one would be prejudiced by this request. The date we had set for the deposition has passed. Of course, we offered to move the date if Defendants would simply agree to produce her on a more convenient date; but they would not.

I hope the foregoing addresses, to Your Honor's full satisfaction, all of the issues on which Your Honor directed a response and I again apologize for being a day late in providing it..

Respectfully,

David I. Schoen
Counsel for Plaintiffs

cc: Defense counsel (by email)