## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

                                    Civ. No. 04-397 (GBD) (RLE)

    v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

### PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORAL ORDER OF DECEMBER 5, 2012 ON TWO PRE-MOTION LETTERS RELATING TO DISCOVERY & REQUEST FOR LEAVE TO SUPPLEMENT OR MODIFY OBJECTIONS ON UA ISSUE, IF NECESSARY, PENDING RELATED DISCOVERY RESPONSES

On December 5, 2012, Magistrate Judge Ellis convened an emergency telephone conference, at defendants' request, regarding their December 3, 2012 pre-motion letter seeking to bar all 30(b)(6) depositions noticed by plaintiffs. Plaintiffs rushed to respond in order to frame the issue in advance of the phone conference. The Court has not yet ruled on defendants' application. The 30(b)(6) depositions were stayed pending the Court's ruling. (**Exhibit 5, Dec. 5, 2012 Tr. 16: 10-13).**

However, during that same conference the Judge orally entered two rulings relating to earlier pre-motion letters in this matter:

1.    The Court denied plaintiffs' October 30, 2012, pre-motion letter seeking to compel defendants' responses to requests for production regarding defendants' lack of capacity/unincorporated association affirmative defense (collectively "UA issue"). **Exhibit 2**[1]

---

[1] Plaintiffs' October 30, 2012 letter was written to oppose defendants' letter seeking to bar a Rule 30(b)(6) deposition on the UA issue and to compel the defendants to respond to requests for production on the UA issue.

At the same time, the Court granted defendants' October 26, 2012, pre-motion letter seeking a protective order to bar plaintiffs' from deposing a Rule 30(b)(6) witness on facts related to the UA issue. **Exhibit 1**[2] **See Exhibit 5 at 13.**

2.    The Court also denied plaintiffs' pre-motion letter to compel defendants to produce all items responsive to the Guetta plaintiffs' First and Second Request for Production of Documents ("RPDs), which seek documents concerning plaintiffs' efforts to determine the identity of the gunman in this matter and granted defendants' opposition to the same. *See* **Exhibits 6 and 7.**

### PLAINTIFFS' OBJECTIONS

Pursuant to 28 U.S.C. §636 and Rule 72(a) of the Federal Rules of Civil Procedure, plaintiffs hereby file their Objections to these two oral rulings. Because Judge Ellis's rulings were on non-dispositive matters, they are subject to a clearly erroneous or contrary to law standard of review. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); 28 U.S.C. §636; F.R.C.P. 72.

Plaintiffs also respectfully request leave to supplement their objections relating to the UA issue, if necessary, after defendants respond to outstanding related written discovery on the issue and after any related follow-up and motion work is completed. Depending on defendants'

---

[2]   The Magistrate Judge's ruling on these two pre-motion letters effectively foreclosed any and all discovery by plaintiffs on the UA issue affirmative defenses defendants have interposed and, with all due respect, is clearly erroneous and contrary to law, flowing as it is does from a complete misreading of the transcript from the August 9, 2012 hearing on the UA issue, during which this Court emphasized plaintiffs' need and right to take discovery on these affirmative defenses.  In typical fashion, while defendants were arguing to Magistrate Judge Ellis on November 20, 2012, that plaintiffs should get no discovery on the UA issue, essentially trying to reargue before Judge Ellis their losing argument before this Court on August 9, 2012, they well knew that their own discovery demands which they sought leave from Judge Ellis to serve on plaintiffs' counsel by hand at that November 20th proceeding, contained defendants' demands for discovery from plaintiffs on the UA issue.  Surely, defense counsel had a good faith obligation to let Magistrate Judge Ellis know that defendants' position was that plaintiffs should get no discovery on the UA issue, but defendants should be allowed to - but that was never conveyed to the Court.

interrogatory responses, plaintiffs may be able to moot or limit these objections, or, plaintiffs may move to stay disposition of these objections so that they can be heard together with any objections that are filed regarding defendants' responses to the outstanding discovery requests.[3]

**A.    General Procedural Objection**

Plaintiffs' first objection is a general one to the procedure employed here in first requiring a pre-motion letter to address a substantive issue and then in treating the pre-motion letter as if it were, in effect, a motion on the substantive issue raised. The Magistrate Judge ordered substantive relief based on the pre-motion letter and argument on it, thereby denying the plaintiffs the right or ability to raise the underlying issue by proper and complete motion.

Local Civil Rule 37.2 requires that, with respect to a discovery motion, a pre-motion letter requesting a conference on the desired motion first be submitted. Courts in this Circuit regularly have approved of such a practice, finding that it often allows the parties to narrow, refine, or even eliminate differences or the need altogether for a motion.  See e.g., *Eisemann v. Greene*, 204 F.3d 393, 397, n.4 (2d Cir. 2000); *Milltex Industries Corp. v. Jacquard Lace Company, Ltd.*, 55 F.3d 34, 39 (2d Cir. 1995); *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987).  However, this Circuit has made it just as clear that such pre-motion letters and conferences are **not to be used to decide the substantive relief at issue or to eliminate the party's right to file a motion addressing the underlying issue.**  Id.

---

[3] Defendants' main argument in support of their October 26th application for a protective order regarding the 30(b)(6) notice of deposition on the UA issue was that interrogatories are the more appropriate discovery mechanism for an affirmative defense. **Exhibit 1 at 2; 11/20/12 Tr., generally.** While plaintiffs don't agree, and reserve the right to make their own discovery choices, plaintiffs have served interrogatories on the UA issue, and defendants' responses are due on December 21, 2012. Defendants' responses to those interrogatories (either their initial responses, or, if their responses are inadequate, such responses as may be supplemented and/or compelled by Magistrate Judge Ellis) may moot in whole or in part, or increase, the need for the 30(b)(6) deposition and related document requests 41-44.

In the matters at issue in the pre-motion letters that were filed here, the Magistrate Judge actually ordered substantive relief, in both instances awarding defendants the substantive relief they sought - precluding plaintiffs from seeking certain discovery and from deposing certain witnesses through Rule 30(b)(6). Such action by the Magistrate Judge, with all due respect, in effect denies plaintiffs the right to address these issues in proper, fully briefed motions and goes beyond the authorized use of the pre-motion letter and conference practice required for discovery related motions in this District.

### B.    General Objections Relating to Discovery in ATA Cases

Both of the Orders of the Magistrate Judge at issue herein preclude plaintiffs from seeking certain discovery in this matter. Plaintiffs emphasize, therefore, that this action is brought under the civil provisions of the Antiterrorism Act ("ATA"). Resolution on the merits is critical in light of the "extremely strong [federal] interest" in using Congressional enactments in order to effectively prosecute the war on terror. *Estate of Ungar v. Palestinian Auth.*, 715 F.Supp.2d 253, 268 (D.R.I. 2010). As numerous courts have found – the prosecution of ATA cases serves not only plaintiffs' personal interest, but the national interest of the United States:

> The legislative history of the ATA … reveal[s] this country's profound and compelling interest in combating terrorism at every level …
>
> Congress has explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations. Certainly, private tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism vindicate the national and international public interest.

*Weiss v. National Westminster Bank*, 242 F.R.D. 33, 46, 50 (E.D.N.Y. 2007) (emphasis added).

*See also e.g. Ungar v. Palestinian Authority*, 715 F.Supp.2d 253, 268 (D.R.I. 2010) ("[T]here is an extremely strong interest in enforcing judgments … entered under the civil provisions of the Antiterrorism Act ("ATA")").

Therefore, courts have emphasized the need for a broad and liberal approach to allowing discovery in ATA actions.[4] In her recent October 29, 2012, opinion, Southern District of New York Judge Shira Scheindlin wrote in the case of *Wultz, et. al. v. Bank of Chine Ltd., et. al.*, Case No.11 Civ. 1266 (SAS), at 15, as follows:

> But in light of the significant U.S. interest in eliminating sources of funding for international terrorism, and the other factors discussed below, the law governing discovery disputes in this case must ultimately be the broad discovery rules of the Federal Rules of Civil Procedure;
>
> The United States has a "profound and compelling interest in combating terrorism at every level, including disrupting the financial underpinnings of terrorist networks.

Id at 22. (quoting *Strauss v. Credit Lyonnais,* S.A., 249, F.R.D. 429, 438–3919, 442-44 (E.D.N.Y. 2008)).

The national interests in ATA cases and in the corresponding broad and liberal approach to allowing full discovery in these cases demand that plaintiffs be given the opportunity to fully and meaningfully complete discovery herein.

### C.      Objection to the Court's Order Relating to the UA Issue

Plaintiffs object for the reasons set forth in sections A and B above. In addition, plaintiffs object substantively to the Court's ruling.

On October 26, 2012 defendants sought a protective order regarding 30(b)(6) depositions on the UA issue. (**Exhibit 1**).

On October 30, plaintiffs opposed that pre-motion letter, (**Exhibit 2**), and made a related request to compel defendants to produce all documents responsive to plaintiffs' RPDs numbers 41-44, seeking documents concerning the UA issue. (**Exhibits 2 and 3**).

---

[4] *See e.g. Linde v. Arab Bank*, 269 F.R.D. 186 (E.D.N.Y. 2010); *Weiss*, 242 F.R.D. at 55-56; *Strauss v. Credit Lyonnais*, 242 F.R.D. 199 (E.D.N.Y. 2007); *Strauss v. Credit Lyonnais*, 249 F.R.D. 429 (E.D.N.Y. 2008).

Evidence relating to this issue is critical, plaintiffs should certainly be permitted to conduct discovery on defendants' affirmative defenses, and this Court (Judge Daniels) unequivocally already has ruled that discovery should go forward on this issue.[5]

On January 4, 2012 defendants PA and PLO moved to dismiss the plaintiffs' non-federal, supplemental causes of action arguing in part that the PA and PLO lack the capacity to be sued. (DE 186). Plaintiffs opposed that motion and requested that it be denied, or, alternatively, that plaintiffs be permitted to take discovery on the factual predicates of the UA issue. (DE 196). On August 9, 2012, Judge Daniels denied defendants' motion and found that discovery must go forward on the UA issue, as it is an affirmative defense, which the defendants must prove. (**Exhibit 4**, August 9, 2012,Tr., at p. 78).

Accordingly, pursuant to Judge Daniels' directive that there must be discovery about this issue, the plaintiffs included in their Seventh RPD, four requests (nos. 41-44) relating to the UA issue. Plaintiffs attached the specific requests and set forth their purpose in their October 30, 2012 letter, which is incorporated herein by reference.[6] In sum the purpose of the requests is to enable plaintiffs to obtain the full documentary basis, if any, for the UA affirmative defense, so that plaintiffs are not surprised and ambushed down the road on these issues. *Plaintiffs also have the right to seek evidence that will help them ultimately to counter defendants' affirmative defense.* For example, documents showing that the PA and PLO initiate and maintain lawsuits in

---

[5] It should be noted that at the same time Defendants have sought to block all discovery on the UA issue, other than their own one-sided, self-serving production, defendants have served upon plaintiffs multiple requests for admissions on this issue. **Exhibit 8** (just one example of the many requests defendants served on plaintiffs).

[6] Defendants complained that responding to requests for production on the subject would be too burdensome and might well require the production of a large number of documents. They provided no support for this supposition. Plaintiffs suggested that defendants should first establish that this is the case, if it is, and, if so, plaintiffs have offered to limit/narrow their requests in an effort resolve this issue, and would be happy to further discuss other reasonable accommodations, if they are permitted to pursue their discovery requests. (**Nov. 20 Tr. At 9:17-21, 11:5-25, 12:6-20**).

their home jurisdiction, will collapse their claim to lack capacity to be sued under New York law. *Town of Riverhead*, 5 N.Y.3d 36, 41-42 (2005) ("An express grant of authority is not always necessary. Rather, capacity may be inferred."); *See generally cases cited in DE 196*.

Moreover, plaintiffs should have the ability to take a 30(b)(6) deposition on this subject. Clearly there are factual issues that can and should be addressed in 30(b)(6) depositions relating to the UA issue, such as whether it has members and who its members are (as the court adeptly asked at **Exhibit 4, Tr., at p. 10**).

At the December 5 conference, Magistrate Judge Ellis effectively ruled that discovery should not be and will not be permitted at all on the UA issue. (**Exhibit 5 at 11:11-21; 13:1-4**). While this ruling purportedly was based upon the Court's reading of transcript from the August 9, 2012 hearing on the UA issue, in fact, Judge Ellis's ruling on this issue is directly contrary to Judge Daniels' clearly expressed views that plaintiffs must be permitted to conduct discovery on the UA issue.

Judge Ellis explained that he read Judge Daniels' position on the matter at the August 9, 2012 Hearing as providing simply that defendants should show plaintiffs what they intend to rely on for their affirmative UA defenses, but that plaintiffs should not be permitted to take discovery on the UA issue (and, of course, plaintiffs will have no subpoena power to compel the production of documents relevant to this or any other issue). Indeed, Judge Ellis said that he read Judge Daniels' statement, "to require defendants to basically make sure that they have provided for the plaintiffs anything that they intend to rely on in support of their affirmative defense," but not "an open invitation to have discovery on the affirmative defense or anything broader." **Exhibit 5 at 11:11-21.**

Respectfully, plaintiffs suggest this is a clearly erroneous and completely unsupportable reading of the transcript.

Judge Daniels explicitly ruled that defendants "must specifically point to evidence on which they say indisputably demonstrates that affirmative defense to the exclusion of any other conclusion. At this state defendants have not done that nor are they in a position because…*there has been no discovery...If the defense wishes to…establish that affirmative defense then they have an obligation to **exchange** this information*," (emphasis added) (**Exhibit 4, Tr., at p. 78**). The Court specifically called for an exchange of evidence and discovery and commented:

> I see no evidence which I can review which gives me basis to understand that any Court has gone through an analysis -- *a factual analysis* with regard to the nature of the PA and the PLO, its establishment and its organization to articulate on what facts that an independent objective conclusion is to be made, that it is an unincorporated association and that its status is an unincorporated association would preclude their bringing non-federal claims under New York or Israeli law. *Id.* (emphasis added).

Clearly, the Court intended to provide for an exchange of discovery and not just a unilateral, self-serving disclosure by defendants alone. Again, plaintiffs must have the ability to develop counter-arguments on the UA issue.

Elsewhere in the August 9, 2012 transcript, Judge Daniels made it even clearer that plaintiffs **must** be able to take factual discovery on the UA issue.

Plaintiffs respectfully direct the Court's attention especially to pages 53, 60-61, 76-77, and 82 of **Exhibit 5**.

This Court's clear directions on those pages and elsewhere that there must be full discovery on the UA issue is indisputable and seems to have been missed by Judge Ellis.

On pages 60-61, for example, in the face of plaintiffs' waiver claim as to the UA defense, this Court assures plaintiffs that the full discovery it can take on the UA defense will cure any surprise from defendants' decision to raise the UA defense late in the game.

Similarly, this Court expressly ruled that it would be inappropriate and premature to rule definitively on the UA issue without defendants having even responded to outstanding discovery on the issue, and the Court advised that it would revisit the issue after discovery had been taken on the UA issue and that there could no meaningful hearing or evaluation of the issue before full discovery on it.  **Exhibit 5 at 76-77**.

Finally, this Court said that if the defendants do not want to engage in full discovery on the UA issue, defendants can withdraw the UA defense or have it precluded.  **Exhibit 5 at 82**.

With all due respect, Judge Ellis's conclusions that this Court did not intend to allow plaintiffs to take discovery on the UA issue and that it therefore would not be permitted are clearly erroneous and it is contrary to law and must be overruled.

Plaintiffs should be granted the documentary and 30(b)(6) discovery that they seek.

**D.      Objections to the Court's Order Relating to Mrs. Guetta's Motion to Compel**

Plaintiffs object for the reasons set forth in sections A and B above. In addition, plaintiffs object substantively to the Court's ruling. On November 19, 2012, plaintiffs presented a pre-motion letter to Magistrate Ellis, seeking to compel defendants to produce all items responsive to the Guetta Plaintiffs' First and Second RPDs, which seek documents concerning plaintiffs' efforts to determine the identity of the gunman in this matter. (**Exhibit 6**).

### Background

On the evening of January 8, 2001, while Plaintiff Varda Guetta was driving her 12-year-old son, Plaintiff Joseph Guetta, home from soccer practice, defendants' operatives opened fire on them with machine-guns, striking and seriously wounding Joseph Guetta. They were traveling in their family car on a public highway near Jerusalem. Miraculously, Mrs. Guetta was not hit,

but was a victim of the terror and lasting physical and emotional effects the gunmen caused to her and her son.

Mrs.Guetta clearly saw the face of one of the gunmen, who she recalls was laughing, and she continues to see his face "every time that [she] closes[s] her eyes." Mrs. Guetta testified that if she sees the gunman again, 10 years or even 20 years after the attack, she will know him. "He had a mustache, he was dark skin, and he smiled, he shot and smiled." (Exhibit C to Exhibit 6).[7]

The *modus operandi* of the Guetta terrorist attack was the same as numerous other attacks in the same area, at the same time, for which many people were convicted -- many of them PA security officers. Plaintiffs have reason to believe that one of these convicted terrorists or their accomplices also were involved in the Guetta attack. Therefore, in October and November, 2011, the Guetta Plaintiffs sent their First and Second RPDs to the defendants seeking photographs of seventeen people identified by plaintiffs as having been convicted of carrying out similar attacks in the same area using similar *modus operandi* or who were identified in police statements of other perpetrators as having been involved in such attacks. (**Exhibits A & B to Exhibit 6**). Plaintiffs have the need and the right to produce to Mrs. Guetta photographs of these people and to see if she can identify her attacker. Each of the photographs listed is a person reasonably suspected of having been involved in the Guetta attack. Defendants refused to produce the requested photographs.

---

[7] Contrary to defendants' contention, Mrs. Guetta's 2007 deposition testimony cited by defendants in their pre-motion letter is not inconsistent with the above 2012 testimony. (See Ex. 2 to defendants' Nov. 29 pre-motion letter). Mrs. Guetta was being asked if she could *specifically identify* the gunmen when she saw them--"And so you just saw the people's faces, you couldn't identify them?" In fact, the follow-up question was "And was there anything about the faces that could tell you who they were?" She answered no because she did not, and does know, who the gunmen are.  This is not inconsistent with her 2012 testimony that she *could identify the face* if she saw a picture of it.

**Argument**

Defendants untimely responded to Plaintiffs' November 19, 2012 pre-motion letter on November 29, 2012, (**Exhibit 7**), and claimed that the request cannot lead to the discovery of admissible evidence due to the unreliability of eye-witness testimony. Second, defendants argued that plaintiffs request is irrelevant, since Plaintiffs have not produced evidence that any of the individuals are related to the instant attack. Third, defendants argued, ironically, that Plaintiffs' request was untimely.

*First*, defendants' argument relating to eyewitness testimony may raise a valid weight of the evidence issue for the jury, but it is not a valid basis for denying discovery. In fact, Judge Ellis' ruling is contrary to a very recent Supreme Court case on eyewitness testimony. In *Perry v. New Hampshire,* 132 S. Ct. 716, 719 (2012), the Supreme Court ruled, "The Constitution protects a defendant against a conviction based on evidence of questionable reliability, *not by prohibiting introduction of the evidence*, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Id.* (emphasis added)). "Where the 'indicators of [a witness'] ability to make an accurate identification' are [not] 'outweighed by the corrupting effect' of law enforcement suggestion, *the identification, assuming no other barrier to its admission, should be submitted to the jury.*" *Id.,* quoting *Manson v. Brathwaite*, 432 U.S. 98, 114.). It is axiomatic that eyewitness testimony is generally admissible in Court and "questions of witness credibility fall squarely and exclusively within the jury's purview." *United States v. Delgado, 357 F.3d 1061, 1069 (9th Cir. 2004).* Plaintiffs are requesting an entire array of pictures of people in order to make Mrs. Guetta's viewing as credible and unbiased as possible. The named individuals have also been convicted or linked to similar attacks, using the same *modus operandi* in the same area of the country.

11

Moreover, the test herein is not one of *admissibility*, but one of *discoverability*. Judge Ellis' ruling, made without providing the parties the opportunity to fully brief the issues or to make oral argument, was that discovery could not even be had because any eye-witness identification would not be credible. (**Exhibit 5,** Tr., pp. 13-14). That is a test of admissibility. The test for discoverability, which is proper at this juncture, is whether the discovery is reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' request is clearly reasonably calculated to lead to the discovery of admissible evidence.  F.R.C.P. 26.  If Mrs. Guetta identifies her attacker, *even if such identification eventually is excluded from evidence at trial*, (though Plaintiffs do not believe it should be), it could still lead to the discovery of admissible evidence. Plaintiffs could use the information to seek other evidence, other statements, other witnesses, or to even attempt to interview the identified perpetrator himself.

Plaintiffs emphasize that the Court's denial is a premature decision based upon the credibility of plaintiffs' eyewitness identification *before* she is even given the opportunity to try. Mrs. Guetta should have the right to attempt to make an identification. If she is successful, defendants can still argue about credibility and admissibility based upon factors used in assessing these matters, but a credibility decision is not yet ripe. Plaintiffs should be granted the discovery they seek based upon the liberal rules of discovery in general and more specifically, as they relate to ATA cases.

*Second*, the pictures are obviously relevant to the issue of who perpetrated the attack and whether there is a link between defendants and such perpetrators. The pictures sought are of seventeen people identified by plaintiffs as having been convicted of carrying out similar attacks in the same area using similar modus operandi or who were identified in police statements of

other perpetrators as having been involved in such attacks. Of course plaintiffs have not provided direct evidence that any of the 17 people whose pictures they request is linked to the instant attack, as defendants suggest. *That is exactly what plaintiffs are seeking to do.*  In fact, the request is critical to the Guetta Plaintiffs' case.  As defendants well know, a denial of plaintiffs' motion will be dispositive of the Guetta Plaintiffs' lawsuit.  In addition, plaintiffs note that such photographs should be and most likely would be accessible to the victims in any criminal or civil case where identification of a perpetrator is necessary.

*Third*, plaintiffs request is not untimely and Plaintiffs can clearly explain "how [we got] to this point", as the Magistrate asked at the December 5 conference. (**Exhibit 5, Tr., p. 14:6**). Plaintiffs first sought discovery on this matter in October and November of 2011.  Defendants failed to cooperate. After spending significant time unsuccessfully attempting to cajole defendants into providing responses, plaintiffs made further efforts to avoid motion practice by spending significant time and resources searching for the requested photographs themselves. And, in fact, plaintiffs were able to locate a photograph of the most famous perpetrator of these kinds of attacks, Mohammad Abu Halawa. However, Mrs. Guetta did not identify him as the perpetrator whose face she so clearly remembers.[8] Therefore, plaintiffs had no choice, but to move to compel the photographs and said request was made more than a month prior to the close of discovery.[9] Plaintiffs' efforts were made in good faith, discovery has to be expanded anyway

---

[8] Mrs. Guetta's failure to identify Abu Halawa confers upon her additional credibility. Despite the great need to identify her attacker, she clearly will not do so if she does not recognize the person.

[9] The Magistrate Judge also asked how plaintiffs originally came to name Abu Halawa in the complaint. Id at 14:7-8. Respectfully, this question is irrelevant to plaintiffs' request for photographs, however in response - at the time of filing, plaintiffs had information that Abu Halawa was one of the four people in the terrorists' vehicle. He still would be liable and would have been properly named.  If she can identify the shooter from the pictures she seeks, then additional evidence could be produced to show a link between the shooter and Halawa, that day and more generally is such terrorist activity.  It remains
*(continued...)*

per the Court's order, (**Exhibit 5, Tr. P. 4:4-9**), and effectuation of plaintiffs' request should take mere hours.[10]

For all of the foregoing reasons, plaintiffs respectfully enter the Objections set forth above to the oral Orders entered by Magistrate Judge Ellis in this case on December 5, 2012 and respectfully submit that such Orders are due to be overruled. Plaintiffs also respectfully request leave to supplement their objections relating to the UA issue, based on defendants' responses to outstanding written discovery requests on the UA issue, and any possible follow up discovery, depending on those responses.

Plaintiffs, by their Attorneys,

/s/ David I. Schoen
David I. Schoen (DS 0860)
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
334-395-6611
Fax: 917-591-7586
DSchoen593@aol.com

Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail

---

possible that he was in the car, but Mrs. Guetta could not identify him as the shooter whose face she so clearly saw and, therefore, plaintiffs require the discovery requested.

[10] All residents of the PA have a picture identification to which the defendant PA clearly has access. Moreover, many of the named individuals were PA security officers who also had employee picture identification issued by the PA.