UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
 -------------------------------------------------------------------X

MARK SOKOLOW, *et al.*,

                Plaintiffs,

        - against -

THE PALESTINE LIBERATION ORGANIZATION,
*et al.*,

                Defendants.

 -------------------------------------------------------------------X

Docket No:

04-CV-397 (GBD) (RLE)

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORAL ORDER OF DECEMBER 5, 2012 ON TWO PRE-MOTION LETTERS RELATED TO DISCOVERY & REQUEST FOR LEAVE TO SUPPLEMENT OR MODIFY OBJECTIONS ON UA ISSUE, IF NECESSARY, PENDING RELATED DISCOVERY RESPONSES

      Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") hereby submit the following Opposition to Plaintiffs' Objections to Magistrate Judge's Oral Order of December 5, 2012 on Two Pre-Motion Letters Related to Discovery & Request for Leave to Supplement or Modify Objections on UA Issue, if Necessary, Pending Related Discovery Responses (DE 284).

## INTRODUCTION AND SUMMARY

      Plaintiffs' object to two orders entered by Magistrate Judge Ellis during the December 5, 2012 telephone conference. Their objections should be overruled for four reasons. First, there was nothing clearly erroneous about Magistrate Judge Ellis's decision to issue the orders without requiring the parties to file formal motions, and even if there were, Plaintiffs did not preserve that objection by making it to the Magistrate Judge. Second, there is nothing clearly erroneous about Magistrate Judge Ellis' entry of a protective order requiring that Plaintiffs take discovery from Defendants about their lack of capacity defense through contention interrogatories instead

1297547.1

of Rule 30(b)(6) depositions.  Third, there is nothing clearly erroneous about Magistrate Judge

Ellis' denial of Plaintiffs request that Defendants be compelled to produce "[a]ll documents

concerning the capacity of" the PA or PLO "to sue or be sued" or all documents "filed or served"

by the PA or PLO in "any . . . legal proceeding" "initiated by" the PA or PLO in "any

court" over the course of the last 12 years.  Fourth and finally, there is nothing clearly erroneous

about Magistrate Judge Ellis' decision to deny Plaintiffs' request that the Defendants be

compelled to produce images of seventeen persons, which have no demonstrated connection to

any attack at issue here, for the sole purpose of attempting to create an unreliable and

inadmissible eyewitness identification twelve years after the fact by one of the Plaintiffs.  Thus,

Plaintiffs' objections should be overruled.

## STANDARD OF REVIEW

As Plaintiffs acknowledge, DE 284 at 2, this Court reviews the orders at issue pursuant to

Rule 72(a) of the Federal Rules of Civil Procedure.  Under Rule 72(a), a court must "consider

timely objections and modify or set aside any part of the order that is clearly erroneous or is

contrary to law."  Fed. R. Civ. P. 72(a).   "A finding is 'clearly erroneous' when, although there

is evidence to support it, the reviewing court on the entire record is left with the definite and firm

conviction that a mistake has been committed." *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp.

187, 189 (S.D.N.Y. 1988) (quotation omitted).  This is a highly deferential standard, and "[t]he

party seeking to overturn a magistrate judge's decision thus carries a heavy burden."  *U2 Home

Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 U.S. Dist. LEXIS 59233, at *4 (S.D.N.Y. Aug.

13, 2007).  Accordingly, because Plaintiffs' objections do not demonstrate any clear error by

Magistrate Judge Ellis, their objections should be overruled.

1297547.1

## ARGUMENT

**I.    MAGISTRATE JUDGE ELLIS DID NOT CLEARLY ERR BY RULING WITHOUT THE FILING OF FORMAL MOTIONS**

Plaintiffs initially object to both orders on the grounds that Magistrate Judge Ellis "ordered substantive relief based on the pre-motion letter and argument on it, thereby denying plaintiffs the right or ability to raise the underlying issue by proper and complete motion."  DE 284 at 3.  This objection is meritless for several reasons.  First, with respect to one of the rulings on review, Plaintiffs were not the moving party -- Defendants were.  It was Defendants, not Plaintiffs, who requested that the Court issue an order requiring Plaintiffs to conduct discovery regarding Defendants' lack of capacity defense through contention interrogatories rather than through Rule 30(b)(6) depositions.  *See* DE 284-1 at 1.  Plaintiffs were therefore not "den[ied] . . . the right or ability to raise the underlying issue by proper motion" in any fashion with respect to that ruling.

Second, Magistrate Judge Ellis' orders were expressly authorized by the relevant Local Rule.  Local Civil Rule 37.2 provides that "No motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court by letter and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference." In this case, both Defendants and Plaintiffs sought an "informal conference" regarding proposed motions under Rule 26 (for a protective order requiring that discovery be had by contention interrogatories rather than Rule 30(b)(6) depositions) and Rule 37 (for orders compelling production of documents).  Those requests were "resolved as a consequence of such a conference" on November 20, when Magistrate Judge Ellis heard oral argument on the requests, and December 5, when he issued oral orders resolving those disputes.  There was nothing

3

"clearly erroneous" or "contrary to law" about Magistrate Judge's Ellis' resolution of each

parties' written requests, made after each parties' written responses and oral argument.  *See*

*Moffet v. Anti-Defamation League*, 2012 U.S. Dist. LEXIS 161276, at *1-4 (S.D.N.Y. Nov. 9,

2012) (describing application of Local Rule 37.2 and noting that "it is well-settled that oral

rulings are binding").

Third, the cases relied upon by Plaintiffs are inapposite because they stand only for the

proposition that a court cannot prevent a litigant from filing a motion even when the motion

might be frivolous.  *See* DE 284 at 3 (citing cases).  That proposition has no relevance here

because Magistrate Judge Ellis never prevented the Plaintiffs from filing a motion about these

issues at all.  Moreover, there is nothing improper about a Magistrate Judge orally ruling on the

merits of a proposed motion at a status conference.  Indeed, doing so has been a routine practice

in this case and others pending in this Court.   In *Best Payphones, Inc. v. Manhattan Telecomms.*

*Corp.*, the Second Circuit held that "the district court did not abuse its discretion in construing

the letter as a motion and denying the motion," because "[w]hile a court may not deny a party the

opportunity to file even a frivolous motion, [the plaintiff] had the opportunity to make the

arguments necessary to preserve its sanctions motion for appellate review, and [the plaintiff] has

not pointed to any additional argument it would have made had it filed full motion papers."  450

Fed. Appx. 8, at 15 (2d Cir. 2011).  Similarly here, Plaintiffs do not point to any additional

argument they would have made to Magistrate Judge Ellis had they filed a formal motion.

Finally, even if this objection had any merit, it has been waived because Plaintiffs never

made it to Magistrate Judge Ellis.  "When a plaintiff fails to raise a claim before the magistrate

judge, the claim is not properly before the district court and provides no basis for challenging the

magistrate judge's proposed findings on the claims raised in the proceeding below."  *Seward v.*

*IBM Corp.*, 2012 U.S. Dist. LEXIS 38523, at *6 (S.D.N.Y. Mar. 9, 2012). For all of these

reasons, Plaintiffs' objections should be overruled.

## II.    MAGISTRATE JUDGE ELLIS DID NOT CLEARLY ERR IN PRECLUDING DEPOSITIONS OF DEFENDANTS ON THE LACK OF CAPACITY DEFENSE OR DENYING PLAINTIFFS' REQUEST THAT DEFENDANTS BE COMPELLED TO PRODUCE IRRELEVANT DOCUMENTS

On October 10, Plaintiffs' counsel emailed defense counsel indicating that Plaintiffs

intended to notice "Rule 30(b)(6) depositions of the defendants on multiple topics." DE 284-1 at

14. Two of the topics subsequently identified by Plaintiffs sought identification of facts relating

to Defendants' Fourth Affirmative Defense regarding lack of capacity. *See* DE 92 at 2. This

defense was the subject of Defendants' Motion for Partial Judgment on the Pleadings (DE 186)

which was filed in January and denied without prejudice by the Court following a hearing in

August (DE 251). In that motion Defendants argued, *inter alia*, that the non-federal claims in

this action had to be dismissed because the PA and PLO were "unincorporated associations" that

lacked the capacity to be sued under the governing New York state law. *See* DE 187 at 4-12.

In an email dated October 11, Plaintiffs indicated that they intended to notice depositions

of the PA and PLO regarding "[a]ll facts relating to the PA's lack of capacity defense in this

action," "all facts relating to the PA's claim that it is an 'unincorporated association,'" "[a]ll

facts relating to the PLO's lack of capacity defense in this action, and all facts relating to the

PLO's claim that it is an 'unincorporated association.'" DE 284-1 at 11. While some discovery

on these contentions was concededly relevant, very clear case law requires that it not be had

through the Rule 30(b)(6) mechanism Plaintiffs had proposed, but instead be had through the

more appropriate, efficient and less burdensome mechanism of contention interrogatories

propounded under Rule 33.

Accordingly, on October 26, 2012, Defendants sent a letter to Magistrate Judge Ellis "to request an informal conference with the Court pursuant to Local Civil Rule 37.2 and your Individual Practice 2.A concerning whether the Court should enter a protective order precluding the deposition of the PA and PLO on certain topics regarding the factual basis for Defendants' affirmative defense of lack of capacity, and instead ordering that such discovery be obtained through contention interrogatories." *Id.* at 1. In that letter Defendants argued that "[p]reparing a witness to testify on what are essentially counsel's views of which facts support the defense of lack of capacity for each Defendant is unduly burdensome, wasteful and inappropriate." *Id.* at 2. Defendants also cited ten cases in which courts, including this one, had previously granted the very relief sought by Defendants here. *See id.* at 2-3.

Plaintiffs responded to Defendants' October 26 letter on October 30. DE 284-2. In that letter, Plaintiffs did not substantively oppose Defendants' argument that discovery should be had by way of contention interrogatory rather than by Rule 30(b)(6) depositions. *Id.* Instead, Plaintiffs stated that "Defendants' request for a protective order regarding possible 30(b)(6) depositions on this subject, *which haven't been noticed yet*, is not ripe and should be held in abeyance." *Id.* at 5.

Plaintiffs October 30, 2012 letter also sought to compel Defendants to produce all documents responsive to Plaintiffs' Document Request Nos. 41-44. In a response dated November 8, Defendants pointed out that they had not "wholly refused," DE 284-2 at 1, to provide documents responsive to Request Nos. 41 and 42 as Plaintiffs had claimed. Ex. 1 hereto at 2. In fact, in Defendants' Responses to those requests -- which sought "[a]ll documents concerning the capacity of the PA [and the PLO] to sue or be sued" -- Defendants expressly incorporated by reference the documents listed in their initial disclosures which were already in

6

Plaintiffs' possession.  *See* DE 284-3 at 7-8; Ex. 1 at 10.  Defendants also specified which of the

documents identified in their initial disclosures were responsive to Request Nos. 41 and 42 when

Plaintiffs asked that they do so.  *See* Ex. 1 at 14.  Defendants also clearly stated that "to the

extent Defendants intend to, or intend in the future to, use a publicly available document to

support their lack of capacity defense, they have, or will in the future, provide a copy or

description of such a document."  Ex. 1 at 17.  Accordingly, Plaintiffs would be receiving "the

full documentary basis . . . for Defendants' lack of capacity" claims, which is exactly what

Plaintiffs' claim was their "purpose" in propounding Request Nos. 41 and 42.  DE 284-2 at 3.

Request Nos. 41 and 42 were, however, not limited to documents which Defendants may

use to support their lack of capacity defense, but instead sought an overly broad, unduly

burdensome and partially irrelevant production of what were vaguely described as "[a]ll

documents concerning the capacity of" the PA or PLO "to sue or be sued."  For that reason,

Defendants properly objected that those requests were overly broad, unduly burdensome, vague,

ambiguous, and, in part, irrelevant.  DE 284-3 at 7-8.  Plaintiffs' October 30 letter asserted that

they "are entitled to know exactly what documents Defendants will use in support of their lack of

capacity defense," DE 284-2 at 3, but Defendants had already agreed to produce all such

documents, Ex. 1 at17.  Because Plaintiffs' October 30 letter contained no argument that

Defendants should be compelled to produce documents Defendants will not "use in support of

their lack of capacity defense," Defendants requested that their valid objections to producing *all*

documents responsive to Request Nos. 41 and 42 be sustained, and that Defendants not be

compelled to make a production in response to Request Nos. 41 or 42 beyond that which they

had already agreed to make.  Ex. 1 at 3.

1297547.1

Plaintiffs' October 30 letter also sought to compel production of documents responsive to Request Nos. 43 and 44 which sought "all" documents "filed or served" by the PA or PLO in "any . . . legal proceeding" "initiated by" the PA or PLO in "any court" over the course of the last 12 years. *See* DE 284-3 at 9-10. Although Plaintiffs' October 30 letter contended that such documents were "extremely relevant," DE 284-2 at 4, Defendants' November 8 letter demonstrated that that contention was incorrect as a matter of law and fact. As the Court is aware, because the PA and PLO are neither individuals nor corporations, their capacity to be sued on non-Federal claims is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Plaintiffs' October 30 letter claimed that because the PA was a "purported foreign governmental or quasi-governmental entity" its capacity to be sued is determined by the law of its "home jurisdiction." DE 284-2 at 4. But the cases cited by Plaintiffs for this proposition all involved domestic local governments which were incorporated by state legislatures. *Id.* In such an instance the legislation creating the governmental entity is the source of its capacity to sue or be sued. *See Matter of Vil. of Chestnut Ridge v. Town of Ramapo*, 45 A.D.3d 74, 80-81 (N.Y. App. Div. 2d 2007) ("Being artificial creatures of statute, [governmental] entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate."). The PA, by contrast, has never been incorporated by any state, foreign or domestic, and New York cases have previously held that such unincorporated governmental entities lack the capacity for suit under New York law. *See Royal Norwegian Navy v. David Smith Steel Co.*, 185 Misc. 880, 880 (N.Y. Sup. Ct. 1945) ("Since the moving papers establish that the plaintiff is an agency of a foreign government and is neither a person

nor a corporation, it has no legal capacity to sue."); *Argentine Airlines v. Aircraft Dynamics Corp.*, 9 Misc. 2d 272, 272-273 (N.Y. Sup. Ct. 1957) (same).

Plaintiffs' argument about the PLO was similarly misplaced as it relied upon a case where the trust at issue was granted the capacity for suit by an act of the Massachusetts legislature. DE 284-2 at 4. Here, the PLO, like the PA, has never been endowed with that ability by any statute of any state anywhere in the world. Thus, whether the PA or PLO can sue or be sued in their "home jurisdiction" is irrelevant as a matter of law to the Defendants' capacity defense in this matter. Defendants' November 8 letter also pointed out that the requested documents were facially irrelevant because they pertained to actions brought by the Defendants in foreign fora rather than against the Defendants in New York.

Defendants' November 8 letter also demonstrated that, even if the requested documents were somehow relevant, the production Plaintiffs sought was unreasonably broad, and collecting those documents would be unduly burdensome. For example, because the PA has criminal jurisdiction over offenses committed in the areas under its territorial jurisdiction, over the course of the last dozen years the PA has prosecuted many criminal cases in each of the governorates under its control. The documents associated with those prosecutions are housed in the relevant offices and the courthouses of each governorate. Because those documents alone are numerous and not stored in a single location, it would be unduly burdensome to produce them all. Furthermore, requiring the Defendants to locate and produce "all" documents filed by the PA in PA courts since 2001 would be unduly burdensome because the PA's ability to initiate a legal proceeding there could be demonstrated with a far less burdensome discovery request, such as an interrogatory, than the large production sought by Plaintiffs. Indeed, if the point of this

9

discovery was to demonstrate that the PA brings suits in the Palestinian Territory, then the discovery was not necessary at all as the PA did not deny that it brought suits in its own courts.

Defendants' November 8 letter also demonstrated that the Requests unreasonably called for production of documents which were equally accessible to Plaintiffs. For example, in December 2003, the U.N. General Assembly requested that the International Court of Justice issue an advisory opinion relating to the construction of the wall built by Israel in the West Bank, and Defendants should not have to produce submissions in that action because they are on the ICJ's website and are therefore equally accessible to both parties. *See Robinson v. Adams*, No. 1:08-cv-01380, 2011 U.S. Dist. LEXIS 60370, at *44-45 (E.D. Cal., May 26, 2011) ("The discovery sought by Plaintiff are public records and are equally accessible to him. Plaintiff can retrieve the documents himself or retain someone to obtain them for him. Plaintiff has failed to offer any persuasive argument to shift the cost and burden of retrieving the court documents to Defendants."). *See also* Ex. 1 at 17-18 (collecting additional cases).

At the hearing on November 20, the parties briefly addressed the request for a protective order sought in Defendants' October 26 letter, 11/20/12 Tr. at 5:2-8:23, but Magistrate Judge Ellis ultimately made no ruling on that request at that hearing, *id.* at 8:21-23 (I'm not precluding a 30(b)(6) now. I guess we're not sure where you're going to go with that."). The parties then had a more extended argument regarding Plaintiffs' document requests. *See generally id.* at 6:13-24:21. Defense counsel pointed out that the requested document production was unduly burdensome and irrelevant, and that the point Plaintiffs claimed to need these documents in order to make had already been conceded. *Id.* at 9:3-16, 16:18-19:22. Defense counsel also pointed out that Defendants had already provided all the discovery directed by the district court at the August 9 hearing. *Id.* at 20:7-16. Plaintiffs disagreed, and, at the end of the discussion,

10

Magistrate Judge Ellis accepted a copy of the August 9 transcript from Plaintiffs' counsel, and

took the matter under advisement.  *Id.* at 24:18-21.

> During the telephonic hearing on December 5, Magistrate Judge Ellis ruled as follows:

> > With respect to the two issues which we had discussed previously, with respect to defendant's affirmative defense claim, I have read the transcript and Judge Daniels' statement.  I read Judge Daniels' admonition to require the defendants to basically make sure that they have provided for the plaintiffs anything that they intend to rely on in support of their affirmative defense.  It's not an open invitation to have discovery on the affirmative defense or anything broader.  It's – frankly it's more akin to initial disclosures than anything else.
> > Given that reading as to how broadly Judge Daniels require[d] things to be set forth, the plaintiff's motion to compel is denied in terms of the discovery that they sought with respect to the affirmative defense.

DE 284-5 at 11:8-21.  Plaintiffs' counsel then requested a ruling on the issue of whether

Plaintiffs could take Rule 30(b)(6) depositions regarding the lack of capacity defense.  *Id.* at

11:23-12:9.  In response, Magistrate Judge Ellis granted "the defendant's application with

respect to the production of a 30(b)(6) with respect to the affirmative defense."  *Id.* at 13:2-4.

Plaintiffs now object to this ruling.

> Plaintiffs claim that this ruling "effectively foreclosed any and all discovery by plaintiffs

on the UA issue affirmative defenses."  DE 284 at 2 n.2.  *See also id.* at 7 ("At the December 5

conference, Magistrate Judge Ellis effectively ruled that discovery should not be and will not be

permitted at all on the UA issue.").  Plaintiffs are incorrect.  Magistrate Judge Ellis' December 5

order did not "foreclose any and all discovery" on this subject.  Rather, it denied Plaintiffs'

request to compel a document production beyond that which Defendants had already made, and

granted "the defendant's application," DE 284-5 at 13:2-3, "precluding the deposition of the PA

and PLO on certain topics regarding the factual basis for Defendants' affirmative defense of lack

11

of capacity, and instead order[ed] that such discovery be obtained through contention interrogatories," DE 284-1 at 1.  As Plaintiffs note, they served contention interrogatories on this subject on November 21, 2012, DE 284 at 3 n.3, and Defendants answered them on December 21, 2012, *see* Ex. 2 hereto.  Defendants also separately sent a letter dated December 4, 2012 specifying which documents in their document productions they would be relying upon for their lack of capacity defenses.  *See* Ex. 3 hereto.  Plaintiffs also served requests for admission on Defendants regarding the lack of capacity defense, and Defendants timely responded.  Plaintiffs' objections claim that "the purpose of the requests is to enable plaintiffs to obtain the full documentary basis, if any, for the UA affirmative defense."  DE 284 at 6.  Plaintiffs have now received precisely that discovery on this issue in the form of the documents upon which Defendants will rely, Defendants' answers to contention interrogatories, and Defendants' responses to requests for admissions.  Magistrate Judge Ellis' ruling that further discovery of irrelevant documents and unduly burdensome and inefficient Rule 30(b)(6) depositions would not be permitted is not clearly erroneous or contrary to law.

Plaintiffs also claim that they "should have the ability to take a Rule 30(b)(6) deposition on this subject" because "there are factual issues that can and should be addressed in 30(b)(6) depositions relating to the UA issue, such as whether it has members and who its members are." DE 284 at 7.  Plaintiffs made this same argument verbatim to Magistrate Judge Ellis, but cited no authority supporting their claim that this topic was appropriate for Rule 30(b)(6) depositions. *See* DE 284- 2 at 5.  Defendants, by contrast cited ten cases holding that such discovery should be had only by way of contention interrogatories.  *See* DE 284-1 at 2-3.  Plaintiffs, in fact, posed precisely those questions in contention interrogatories, which Defendants have now answered.

1297547.1

Ex. 2 hereto at 6-11.  Magistrate Judge Ellis' ruling that cumulative Rule 30(b)(6) depositions will not also be had on these topics is therefore not clearly erroneous or contrary to law.

Plaintiffs also claim that "documents showing that the PA and PLO initiate and maintain lawsuits in their home jurisdiction[] will collapse their claim to lack capacity to be sued under New York law."  DE 284 at 6-7.  That contention is incorrect as a matter of law and fact for the reasons set forth in Defendants' November 8 letter, at the November 20 hearing, and above.  *See* Ex. 1 at 4; 11/20/12 Tr. at 16:18-19:22; *supra* at 8-9.  However, no further discovery is needed on this point in any event as the Defendants have already conceded the irrelevant fact that they have participated in litigation in certain foreign fora.  *See* Ex. 1 at 4; 11/20/12 Tr. at 19:3-8.  Thus, Magistrate Judge Ellis did not clearly err in denying this unduly burdensome discovery.

Plaintiffs also claim that "Judge Ellis's ruling on this issue is directly contrary to Judge Daniels' clearly expressed views that plaintiffs must be permitted to conduct discovery on the UA issue."  DE 284 at 7.  However, Plaintiffs point to nothing in the August 9 transcript or otherwise that indicates that Magistrate Judge Ellis' reading of the August 9 transcript is erroneous, let alone clearly erroneous or contrary to law.  In fact, Judge Ellis' paraphrase of Judge Daniels' ruling is entirely accurate.  *Compare* DE 284-4 at 78:1-5 ("if the defense wishes to prove that affirmative defense . . . then they have an obligation to exchange . . . the specific evidence that they intend to rely upon") *with* DE 284-5 at 11:11-17 ("I read Judge Daniels' admonition to require the defendants to basically make sure they have provided for the plaintiffs anything they intend to rely on in support of their affirmative defense.").  Nothing in Judge Daniels' statements on the other pages of the August 9 transcript cited by Plaintiffs contradicts Magistrate Judge Ellis' December 5 ruling.  *See* DE 284-4 at 53, 60-61, 76-77 and 82.

Plaintiffs also repeatedly complain that Defendants served Plaintiffs with requests for admission regarding Defendants' lack of capacity defense, DE 284 at 2 n.2, 6 n.5, but there is nothing improper about the fact that Defendants sought such admissions from Plaintiffs. In fact, because Plaintiffs did not respond to those requests for admission within the 30 days allotted by Rule 36, those requests have been admitted by operation of law. Fed. R. Civ. P. 36(a)(3). As a result, it is now "conclusively established" that each Defendant is "an unincorporated association within the meaning of Federal Rule of Civil Procedure 17(b)(3)(A)." Fed. R. Civ. P. 36(b); DE 284-8 at 2. These requests for admission therefore independently obviate any need for further discovery on Defendants' lack of capacity defense, and, accordingly, Plaintiffs' objections should be overruled for that reason as well.[1]

### III. MAGISTRATE JUDGE ELLIS DID NOT ERR IN DENYING PLAINTIFFS' REQUEST THAT DEFENDANTS BE COMPELLED TO PRODUCE IMAGES OF IRRELEVANT PERSONS

On the afternoon of November 19, 2012, plaintiffs emailed Defendants a copy of a letter to Magistrate Judge Ellis requesting a pre-motion conference to compel Defendants to produce all documents responsive to the Guetta Plaintiffs' First and Second Document Requests. DE 284-6. Plaintiffs had served the Document Requests at issue over a year earlier on October 27 and November 1, 2011. *Id.* at 7-12. The requests sought "[a]ll documents (including without limitation all photographs and all video recordings) constituting or containing still and/or moving images of " seventeen individuals. *Id.* Defendants timely objected on December 1 and 5, 2011. *Id.* at 21-37. The parties conferred about these objections as required by Rule 37(a)(1) on

---

[1] Plaintiffs also "request leave to supplement their objections relating to the UA issue, if necessary, after defendants respond to outstanding related written discovery on this issue." DE 284 at 2. Plaintiffs offer no argument in support of this request and it should be denied. In any event, there is no reason to delay resolution of these objections, which should be overruled for all of the reasons stated above including the fact that each Defendant's status as an unincorporated association has now been conclusively established by operation of law under Rule 36.

January 26, 2012, but Plaintiffs waited until less than twenty-four hours before the hearing set for November 20, 2012 to send their letter.  In other words, Plaintiffs waited until a month before the close of discovery to seek to compel production pursuant to requests that had been ripe for a ruling for nearly a year.

Magistrate Judge Ellis heard oral argument on this issue at the November 20 conference. 11/20/12 Tr. at 25:3-33:12.  At that hearing, Magistrate Judge Ellis expressed skepticism that the document requests at issue could lead to admissible evidence.  *See id.* at 27:8-14 ("the fact that somebody says its indelibly marked, what do you think it – from a psychological point of view, why should I even consider that to be admissible evidence?  . . . I know other situations where people say, you know, 'I'll never forget the face' and eyewitness identification has been time and again proven to be [un]reliable."); *id.* at 27:22-23 ("what do you want to get from this?  So let us say she identifies one of the people.  Then what?").  After hearing further argument from both parties, Magistrate Judge Ellis took the issue under advisement pending Defendants' written response.

Defendants sent their responsive letter on November 29 and advanced three arguments against the relief sought by Plaintiffs.[2]  First, Defendants argued that Plaintiffs' belated request was untimely.  Indeed, Plaintiffs' claim that the Guettas would be unable to pursue their case without these documents, DE 284-6 at 2, made their delay in seeking Court intervention until the eleventh hour appear to be nothing more than a gambit to extend the discovery period.  That conclusion was further supported by the fact that, until the last day for serving written discovery,

---

[2] Plaintiffs claim that Defendants' letter was untimely.  DE 284 at 11.  However, because Plaintiffs served Defendants by email on November 19, Defendants' response was due on November 29.  *See* Local Civil Rule 6.1(a)(2); Fed. R. Civ. P. 6(d).  In any event, even if Defendants' letter were somehow late, that does not provide a basis for sustaining Plaintiffs' objections to the order at issue because Plaintiffs did not raise that issue with Magistrate Judge Ellis below.  *See Seward*, 2012 U.S. Dist. LEXIS 38523, at *6.

15

Plaintiffs had never initiated any other discovery that would attempt to tie these seventeen individuals to the attack at issue. At the June 21, 2011 status conference Magistrate Judge Ellis had made it clear that he expected the parties to bring discovery issues to his attention in a timely manner when they reached an impasse -- "But what I don't want to happen is six months after something happened and as discovery is about to close somebody says to me we never got to this." 6/21/11 Tr. at 12:8-10. Because that is precisely what Plaintiffs had done in this instance, Defendants argued that their request should be denied on that basis alone. DE 284-7 at 2-3.

Defendants also argued that the requests should not be enforced because they sought irrelevant documents regarding individuals with no demonstrated connection to the attack on the Guettas. Although Plaintiffs alleged that these individuals had been linked to "similar attacks in the same area using similar *modus operandi* or . . . were identified in police statements of other perpetrators as having been involved in such attacks," DE 284-6 at 2, Plaintiffs never provided any evidence to support their claim that any of these individuals, let alone all of them, was linked in any way to the attack at issue. Moreover, while the attack on the Guettas was investigated by Israeli authorities, Plaintiffs had apparently never sought to obtain discovery or information from the Israelis regarding their investigation into the shooting. Indeed, to Defendants' knowledge, to date, no one has been arrested, let alone prosecuted, for this attack, only further pointing up the futility and absurdity of the "identification" exercise Plaintiffs had proposed.

Defendants also argued that the requests could not lead to the discovery of admissible evidence. The requests, as the Plaintiffs admitted, were for inclusion in a supposed identification procedure, apparently to be conducted by Plaintiffs' counsel themselves, which would lead, at best, to unreliable and inadmissible evidence of dubious provenance, as Magistrate Judge Ellis had immediately recognized at the November 20, 2012 hearing. *See* 11/20/12 Tr. at 27:8-14.

16

Furthermore, while the requests sought images of Muhanad Abu Halawa, who was the only individual identified by Plaintiffs in the operative Complaint as being connected to the Guetta attack, *see* First Am. Compl. ¶¶ 54-57, Plaintiffs' counsel had already conducted some sort of photo procedure with Ms. Guetta in which she *excluded* Abu Halawa as being one of the attackers she saw. DE 284-6 at 3. Defendants have no idea of what sort of identification procedure yielded this exclusion, or when it was conducted, but noted in their letter that it was undoubtedly rife with unreliability. DE 284-7 at 2. In Defendants' view, the idea that, nearly twelve years after the January 8, 2001 incident, Plaintiffs' counsel were conducting photo identification procedures demonstrated not only the problems with their proof as to the Guettas' claims, but also the objective reasonableness of Defendants' objections to the requests. *Id.*

Defendants also pointed out that Ms. Guetta's testimony regarding her ability to identify her attackers had shifted in a self-serving manner over time. *Id.* In a deposition taken in March 2007 in another civil case brought by Ms. Guetta arising out of this attack, she testified that her attackers never left the car they were shooting from, and that she could not identify the gunmen:

> Q.     Did you see the faces of any of the gunmen yourself?
> A.     I saw some faces when they start with -- I told you that I didn't understand what happened and we saw some faces from the windows. And to recognize them – it didn't make a difference. They didn't have their face covered.
> Q.     And so you just saw people's faces, you couldn't identify them?
> A.     No.
> Q.     And was there anything about the faces that you could tell who they were?
> …
> A.     No.
> …
> Q.     Could you tell just by looking at these people whether they were Palestinians or Israelis?
> A.     No.

17

1297547.1

*Id.* at 2-3.  Despite this prior testimony, Ms. Guetta subsequently and implausibly claimed that she would recognize one of her attackers if she saw him again.  *See* DE 284-6 at 16:9-11.

Defendants therefore argued that, even if Plaintiffs were to engage in the flawed identification process they proposed, what would be generated was an unreliable selection of a photo by Ms. Guetta, which "identification" would be more prejudicial than probative and inadmissible under Federal Rule of Evidence 403.  DE 284-7 at 3.  The prejudicial nature of any such testimony was apparent from the process of identification apparently suggested by the Plaintiffs, Ms. Guetta's own prior testimony, the circumstances of the incident, the lack of a prior description, and the passage of time.  Plaintiffs sought this discovery in order to show Ms. Guetta photos of seventeen individuals they claim are connected to other attacks and "many" of whom are PA security officers.  DE 284-6 at 3.  Accordingly, no matter whom Ms. Guetta identified out of this lineup, Plaintiffs would argue, based on the "identification," that the Defendants are liable for the attack.  Nor were there any indicia of independent reliability to any identification Ms. Guetta might make under these circumstances—particularly after she had now excluded the only person named in her complaint as having been involved.  That she was financially interested in selecting one of the proffered photos so her lawsuit could continue further impeached her ability to offer any identification evidence in this case.  Given the lack of any evidentiary connection between this attack and the seventeen individuals identified by Plaintiffs, and given the infirmities in the identification process Plaintiffs proposed – which was geared to connect someone, *anyone*, to these attacks despite Ms. Guetta's own prior testimony and the complaint in this case – no "evidence" generated out of this discovery would be probative, reliable, or admissible.  Accordingly, the Defendants asked that they not be compelled to supply images for an unreliable identification exercise that would yield no admissible evidence.  DE 284-7 at 3.

18

During the telephonic hearing on December 5, Magistrate Judge Ellis ruled as follows:

> With respect to Guetta, having reviewed what the parties have submitted my ruling is in accordance with the concerns which I raised before and not only that but I will tell you that I am a bit concerned about the forcefulness and the reliance I can put on Guetta's statement that it is indeli[b]ly marked in her mind. I am also concerned that I have not had an explanation about how we got to this point and the person who was identified in the complaint was identified in the complaint. I don't – I'm not relying on that uncertainty. I just want you to know that to the extent that I would – I had concerns as expressed in our last conference much of that really had to do with the reliability of the assertion that Guetta made concerning her ability to determine who was firing the shots and an adjunct to that is really the question of if that is so the secondary question is how did we get to this point and we still had not resolved the question of somebody in – a different person being identified in the complaint. You need not to have to answer that question basically because I've ruled that the discovery is not permitted but you should understand that were I to delve more into it that would be another focus of any decision that I would make.

DE 284-5 at 13:16-14:12. Plaintiffs now object to this ruling.

Plaintiffs initially claim that "defendants' argument related to eyewitness testimony may raise a valid weight of the evidence issue for the jury, but it is not a valid basis for denying discovery," and that Magistrate Judge Ellis erred in denying Plaintiffs' request on that basis. DE 284 at 11, 12. Plaintiffs are incorrect. The discovery sought here was documents containing images of persons which Plaintiffs' counsel hoped would result in testimony from Ms. Guetta that one of the persons shown in the images had shot at her in January 2001. Thus, Plaintiffs did not intend to offer the images themselves as evidence at trial, but a hoped-for identification based on one of the images. Rule 26(b)(1) provides that "[r]elevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Thus, the issue before Magistrate Judge Ellis was whether

the sought-after images "appear[] to be reasonably calculated to lead to the discovery of admissible evidence" in the form of the hoped-for identification by Ms. Guetta.

As Magistrate Judge Ellis noted *sua sponte* at the November 20 hearing, the type of *post hac* eyewitness identification Plaintiffs had proposed is extremely unreliable. That conclusion is reinforced here by the fact that the identification procedure would take place twelve years after the event from photos selected by Plaintiffs' counsel specifically because they would potentially implicate Defendants, by a witness with a financial interest in picking a photo so the case could continue, after the witness had seen the perpetrator for very brief period of time, and the witness had previously testified that she could not even tell if her attackers were Israelis or Palestinians. Magistrate Judge Ellis' decision that this hoped-for identification would not be sufficiently reliable for admission at trial under Federal Rule of Evidence 403, and that the production of the images was therefore not "reasonably calculated to lead to the discovery of admissible evidence," was not clearly erroneous or contrary to law.

Plaintiffs' citation to the Supreme Court's decision in *Perry v. New Hampshire*, 132 S. Ct. 716 (2012) does not require a different result. As both *Perry* and post-*Perry* decisions have noted, courts have a duty regardless of whether an identification is impermissibly suggestive to evaluate the admissibility of such evidence under the equivalent of Federal Rule of Evidence 403 as Magistrate Judge Ellis did here. *See*, *e.g.,* 132 S. Ct. at 721 ("When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably . . . protective rules of evidence"); *State v. Lawson*, 2012 Ore. LEXIS 828, at *25 (Or. Nov. 29, 2012) ("Under the rules of evidence generally in use among the states, relevant evidence may be excluded at trial if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury.  In *Perry* . . . the Supreme Court recently recognized that that evidentiary

rule is an important safeguard against unreliable eyewitness identification evidence.").  In any

event, *Perry* cannot be a basis to sustain Plaintiffs' objections, as they did not cite it to

Magistrate Judge Ellis below.  *Seward*, 2012 U.S. Dist. LEXIS 38523, at *6.

      Plaintiffs also claim that "[i]f Mrs. Guetta identifies her attacker, even if such

identification is eventually excluded from evidence at trial . . . it could still lead to the discovery

of admissible evidence."  DE 284 at 12.  Plaintiffs are incorrect.  Plaintiffs have articulated no

manner in which the images sought could lead to the discovery of evidence other than the hoped-

for identification.  *See* 11/20/12 Tr. at 30:4-8.  Indeed, Plaintiffs subsequently propounded

discovery about the seventeen suspects without the images at issue.  *See* DE 284-7 at 1.

      Plaintiffs also claim that they "should be granted the discovery they seek based upon the

liberal rules of discovery in general and more specifically, as they relate to ATA cases."  DE 284

at 12.  *See also id.* at 4-5.  As the case cited by Plaintiffs notes, it is "the Federal Rules of Civil

Procedure" that govern discovery in this case, *id.* at 5 (citation omitted), and their application is

no different in this ATA case than in any other civil action.  Magistrate Judge Ellis' application

of the standard "rules of discovery" to this issue is not clearly erroneous or contrary to law

simply because this is an ATA case.

      Plaintiffs also claim that "the pictures are obviously relevant to the issue of who

perpetrated the attack and whether there is a link between defendants and such perpetrators."  DE

284 at 12.  However, as Plaintiffs concede, they "have not provided direct evidence that any of

the 17 people whose pictures they request is linked to the instant attack."  *Id.* at 13.  Plaintiffs'

concession thus effectively establishes that Magistrate Judge Ellis' ruling that the pictures were

irrelevant is not clearly erroneous.  Plaintiffs also concede that "a denial of plaintiffs' motion will

21

be dispositive of the Guetta Plaintiffs' lawsuit," DE 284 at 13, but that concession provides no a basis to sustain Plaintiffs' objections to the ruling at issue.

Plaintiffs also claim their request was timely and that they can explain "how we got to this point." DE 284 at 13. Defendants disagree for the reasons stated at the hearing on November 20, in their November 29 letter and above. *See* 11/20/12 Tr. at 28:15-29:5; DE 284-7 at 1-2; *supra* at 14-16. However, the record indicates that Magistrate Judge Ellis did not deny Plaintiffs' requests on timeliness grounds. DE 284-5 at 13:21-25 ("I am also concerned that I have not had an explanation about how we got to this point and the person who was identified in the complaint was identified in the complaint. I don't – *I'm not relying on that uncertainty*.") (emphasis added). Accordingly, even if Plaintiffs' request was timely, that would not provide any basis for overturning Magistrate Judge Ellis' order. Moreover, because Plaintiffs never offered the explanation of "how we got here," below, *id.*, that explanation cannot form a basis for reversal of Magistrate Judge Ellis' ruling. *Seward*, 2012 U.S. Dist. LEXIS 38523, at *6.

Finally, Plaintiffs claim that "discovery has to be expanded anyway" and "effectuation of plaintiffs' request should take mere hours." DE 284 at 13-14. Neither of those contentions was presented to Magistrate Judge Ellis, and they therefore cannot be a basis to reverse him. *Seward*, 2012 U.S. Dist. LEXIS 38523, at *6. In any event, neither contention indicates that Magistrate Judge Ellis' ruling was clearly erroneous or contrary to law. Accordingly, Plaintiffs' objections should be overruled.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Objections to Magistrate Judge's Oral Order of November 5, 2012 on Two Pre-Motion Letters Related to Discovery should be overruled, and

1297547.1

Plaintiffs' Request for Leave to Supplement or Modify Objections on UA Issue, if Necessary,

Pending Related Discovery Responses, should be denied.

January 2, 2012                             Respectfully Submitted,


                                            ___/s/ Mark J. Rochon_____
                                            Mark J. Rochon
                                            Richard A. Hibey
                                            Laura G. Ferguson
                                            Brian A. Hill
                                            MILLER & CHEVALIER CHARTERED
                                            655 15th Street, NW, Suite 900
                                            Washington D.C. 20005-6701
                                            (202) 626-5800 [tel]
                                            (202) 626-5801 [fax]
                                            mrochon@milchev.com [email]


                                            *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

1297547.1