UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

        v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

Civ. No. 04-397 (GBD) (RLE)

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORAL ORDER OF DECEMBER 20, 2012 ON TWO PRE-MOTION LETTERS RELATING TO DISCOVERY & MOTION TO SUPPLEMENT, IF NECESSARY UPON <u>ISSUANCE OF RELATED RULINGS</u>**

        On December 20, 2012, Magistrate Judge Ellis convened a telephone conference on defendants' pre-motion letter seeking to bar all 30(b)(6) depositions noticed by plaintiffs and on the pre-motion letters relating to the Hague depositions of the perpetrators in this matter. Specifically, the Judge orally entered two rulings (Exhibit A):

        1.    The Court denied plaintiffs' March 23, 2012 Ex Parte Motion for Issuance of Letters Rogatory [DE 221] to take depositions pursuant to the Hague Convention of the convicted perpetrators of the attacks at issue in this case who are serving time in Israeli prison. *See* Transcript of 12/20/12 Court Conference at 2:18-4:8; 23:1-5.

        2.    The Court granted defendants' December 3, 2012 pre-motion letter objecting to Plaintiffs' 30(b)(6) notices as formulated. *See* Transcript of 12/20/12 Court Conference at 5:1-7:14; 15:18-23; 23:1-5.

1

**Objections**

Pursuant to 28 U.S.C. §636 and Rule 72(a) of the Federal Rules of Civil Procedure, plaintiffs hereby file their Objections to these two oral rulings. Because Judge Ellis's rulings were on non-dispositive matters, they are subject to a clearly erroneous or contrary to law standard of review. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); 28 U.S.C. §636; F.R.C.P. 72. "A district court reviewing a magistrate judge's recommended ruling 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Seward,* at 1, citing 28 U.S.C. § 636(b)(1)(C).

In the event the Hague depositions ultimately are denied, plaintiffs intend to seek a finding that such witnesses are "unavailable" as a matter of law. That litigation might well have a bearing on these objections. Similarly, there likely will be additional rulings on plaintiffs' 30(b)(6) depositions which will be re-formulated per the Magistrate Judge's directions on December 20, 2012, and such rulings also might well have a bearing on these objections. Accordingly, plaintiffs respectfully reserve the right to supplement or modify these objections upon issuance of those rulings.

**A.    General Procedural Objection**

Plaintiffs' first objection is a general one to the procedure employed here in first requiring a pre-motion letter to address a substantive issue and then in treating the pre-motion letter as if it were, in effect, a motion on the substantive issue raised. The Magistrate Judge ordered substantive relief based on the pre-motion letter and argument on it, thereby denying the plaintiffs the right or ability to raise the underlying issue by proper and complete motion.

Local Civil Rule 37.2 requires that, with respect to a discovery motion, a pre-motion letter requesting a conference on the desired motion first be submitted. Courts in this Circuit regularly have approved of such a practice, finding that it often allows the parties to narrow, refine, or even eliminate differences or the need altogether for a motion. See e.g., *Eisemann v. Greene*, 204 F.3d 393, 397, n.4 (2d Cir. 2000); *Milltex Industries Corp. v. Jacquard Lace Company, Ltd.*, 55 F.3d 34, 39 (2d Cir. 1995); *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir. 1987). However, this Circuit has made it just as clear that such premotion letters and conferences are not to be used to decide the substantive relief at issue or to eliminate the party's right to file a motion addressing the underlying issue. *Id*.

The cases cited by Plaintiffs clearly provide:

> Although we have recognized that "it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion," Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 39 (2d Cir.1995), we have made it clear that "the judge may not require that the court's permission be secured at such a conference before a party may file the motion." Milltex, 55 F.3d at 39; see also MacDraw, 73 F.3d at 1256 n. 2 (same); Richardson, 825 F.2d at 652 ("Absent extraordinary circumstances, ... a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure.").[1]

By ruling on the pre-motion letter, the Magistrate Judge herein prevented plaintiffs from providing full briefing on all of the important legal issues attending their 30(b)(6) notices.

---

[1] *See also*, *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir.1987) (Indeed, we have noted that holding pre-motion conferences with a judge may serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers.)

Moreover, in *Best Payphones, Inc. v. Manhattan Telecomms. Corp.,* 450 Fed. Appx. 8, at 14, (2d Cir. 2011), the Court reaffirmed the *Richardson* case, and provided compelling reasoning for plaintiffs' argument:

> In Richardson, we found that the district judge erred when she effectively prevented the Laus from filing a motion for leave to amend their answer. We have noted that "[f]iling at the trial court level with a view to 'making a record' is crucial because, absent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record." IBM v. Edelstein, 526 F.2d 37, 45 (2d Cir.1975).

Pre-motion letters are not a part of the record and so cannot be used for appellate purposes. Moreover, the letters in this Court, with their three-page limit, are only suitable for summarizing an issue for the Court and cannot possibly fairly be construed as a motion.

### B. General Objection Relating to Discovery in ATA Cases

Both of the Orders of the Magistrate Judge at issue herein preclude plaintiffs from seeking certain discovery in this matter. Plaintiffs emphasize, therefore, that this action is brought under the civil provisions of the Antiterrorism Act ("ATA"). Resolution on the merits is critical in light of the "extremely strong [federal] interest" in using Congressional enactments in order to effectively prosecute the war on terror. *Estate of Ungar v. Palestinian Auth.*, 715 F.Supp.2d 253, 268 (D.R.I. 2010). As numerous courts in several circuits have found – the prosecution of ATA cases serves not only plaintiffs' personal interest, but the national interest of the United States:

> The legislative history of the ATA … reveal[s] this country's profound and compelling interest in combating terrorism at every level …
>
> Congress has explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations. Certainly, private tort actions directed at

compensating victims of terrorism and thwarting the financing of terrorism <u>vindicate the national and international public interest</u>.

*Weiss v. National Westminster Bank*, 242 F.R.D. 33, 46, 50 (E.D.N.Y. 2007) (emphasis added). *See also e.g. Ungar v. Palestinian Authority*, 715 F.Supp.2d 253, 268 (D.R.I. 2010) ("[T]here is an extremely strong interest in enforcing judgments … entered under the civil provisions of the Antiterrorism Act ("ATA")").

Therefore, courts have tended to take a liberal approach to allowing discovery in ATA actions.[2] In her recent October 29, 2012, opinion, Southern District of New York Judge Shira Scheindlin ruled in the matter of *Wultz, et. al. v. Bank of Chine Ltd., et. al.*, Case No.11 Civ. 1266 (SAS), at 15:

> But in light of the significant U.S. interest in eliminating sources of funding for international terrorism, and the other factors discussed below, the law governing discovery disputes in this case must ultimately be the broad discovery rules of the Federal Rules of Civil Procedure;
>
> The United States has a "profound and compelling interest in combating terrorism at every level, including disrupting the financial underpinnings of terrorist networks.

Id at 22. (quoting *Strauss v. Credit Lyonnais,* S.A., 249, F.R.D. 429, 438–3919, 442-44 (E.D.N.Y. 2008)). The national interest in ATA cases and the corresponding liberal approach to allowing full discovery in these cases demand that plaintiffs be given the opportunity to fully and meaningfully complete discovery herein.

### C. Objection to the Court's Order Relating to 30(b)(6) Depositions

Plaintiffs object for the reasons set forth in sections A and B above. In addition, plaintiffs object substantively to the Court's ruling. On December 3, 2012, Defendants

---

[2] *See e.g. Linde v. Arab Bank*, 269 F.R.D. 186 (E.D.N.Y. 2010); *Weiss*, 242 F.R.D. at 55-56; *Strauss v. Credit Lyonnais*, 242 F.R.D. 199 (E.D.N.Y. 2007); *Strauss v. Credit Lyonnais*, 249 F.R.D. 429 (E.D.N.Y. 2008).

5

filed a premotion letter seeking a protective order with regard to plaintiffs' 30(b)(6) notices. (Exhibit B). Plaintiffs timely opposed the application summarizing the reasons why the 30(b)(6) depositions were timely, reasonable and necessary. (Exhibit C). Those arguments are incorporated herein by reference. On December 20, Magistrate Judge Ellis granted defendants' application based upon the formulation of plaintiffs' requests, due to their scope. (Tr. pp. 5-6, 16).[3]

In response to a request by plaintiffs for clarification, the Court made it clear that plaintiffs were not being prevented from conducting more discovery or taking 30(b)(6) depositions. Plaintiffs were given an opportunity to propose the methods by which plaintiffs can get "appropriate discovery on issues that are relevant to the claims in the case," (Tr. at 16-17), either by way of agreement with defendants or by application to the Court. Magistrate Judge Ellis made it clear that "plaintiffs are entitled to discovery" but that he did not want to take the approach of changing plaintiffs' discovery requests himself. His ruling was with regard to the formulation only. Plaintiffs believe that the formulation of their 30(b)(6) notices was proper for all of the reasons set forth in their pre-motion letter and the undersigned's argument at the hearing. Plaintiffs object to the Magistrate's ruling. However, plaintiffs are hopeful these issues will be resolved and plaintiffs will be permitted the discovery they require, in which case this objection will be withdrawn. On the other hand, it is also possible the issues will not be resolved and plaintiffs will need to supplement this objection.

---

[3] A long discussion ensued between Magistrate Judge Ellis and counsel, wherein the undersgined asserted that the 30(b)(6) notice topics were reasonable and not too detailed. Plaintiffs will not repeat these arguments, but rather incorporate them by reference. (See Tr. at 9-14).

While plaintiffs will not address here every argument made by defendants (and again request the ability to fully brief this issue if it is not resolved), Plaintiffs would like to highlight the following: One of defendants' arguments against the 30(b)(6) notices was that the information sought was better suited to other forms of discovery. Plaintiffs disagree with the general proposition that other forms of discovery are necessarily a substitute for 30(b)(6) depositions. Indeed, courts long have held that "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 507 (D.S.D. 2009) citing *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008); *New Jersey v. Sprint Corp.*, 2010 WL 610671, *2 (D. Kan. Feb. 19, 2010) ("Further, plaintiff should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written requests for admissions already served."); *see also, In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) (party did not have to rely on statements contained in authenticated document produced in discovery, but had the right to take a 30(b)(6) deposition to probe those statements - "…*Rule 30(b)(6) deposition is a sworn corporate admission that is binding on the corporation*… it is not up to Bioproducts to determine what discovery Plaintiffs need.") (internal quotation marks omitted).

Nevertheless, as plaintiffs informed the Court at the December 20, 2012 conference [Tr. at 8:17-21], plaintiffs did attempt to obtain much of the information sought in the 30(b)(6) notices by other means, but defendants objected and/or failed to respond in any meaningful way to those discovery efforts.

This type of conduct is exemplified in defendants' responses to plaintiffs' Requests for Admission, Interrogatories and Requests for Production of Documents. (See e.g. Exhibit D). Below are some examples, not intended to be an exhaustive list.

- In RFA's 12-16, 39-40, 54-55, 115-122, 134 plaintiffs asked defendants to admit that the PA pays/paid benefits to the families of particular terrorists. Defendants claimed that they "lacked sufficient knowledge" to admit or deny the RFA's. This is patently absurd. Defendants have an entire agency devoted to making such payments. In response to other discovery requests on the same topic, defendants produced only a handful of documents. *See* Tolchin Declaration, DE 269 at ¶ 14. These RFA's and discovery requests overlap with PA 30(b)(6) topic 19. Plaintiffs are entitled to explore this at a 30(b)(6) deposition.

- Defendants objected to PA 30(b)(6) topic 15 and PLO 30(b)(6) topic 8, a crucial topic seeking essential foundational testimony for defendants' documents produced in this case. While defendants have admitted the authenticity of certain specific documents in their response to plaintiffs' RFA's, they have refused to admit the authenticity of other documents and have refused to admit that any documents produced by them are business records. *See,e.g*., defendants' responses to RFA's 23-24, 26, 33, 35, 44-45, 58, 60, 62, 64, 66, 68, 105. Plaintiffs must be permitted to pursue a 30(b)(6) deposition on this topic, particularly here where all such foundational witnesses are overseas and beyond the subpoena power of the Court.

- Defendants have denied that they provided funding to Fatah. *See* defendants' responses to RFA 71. Defendants also object to providing a 30(b)(6) witness on that topic – PLO topics 1-4 and PA topics 7-11. Of course, the nature and extent of any material support provided by the PA and PLO to Fatah are at the heart of this case and plaintiffs must be permitted to explore this issue further at a deposition. Again, defendants denial is patently absurd.

- In their answers to RFA's 31, 41, 43, 124, defendants claim they lack knowledge with respect to whether the PA was alerted to certain specific terrorists and asked to arrest them in advance of the attacks at issue. Defendants also categorically object to providing 30(b)(6) testimony on this topic. *See* PA 30(b)(6) topics 1(a)-6(a). Public news reports identified such demands, emanating from the highest levels of our government but

- defendants claim to lack knowledge. This is just one more example of the intentional abuse of the discovery process which, unfortunately, they have been allowed to get away with on far too many occasions.

- Related to this, defendants have denied that Abdel-Karim Aweis and Mohamed Hashaika were arrested or requested to be arrested in advance of the Bauer bombing. *See* defendants' responses to RFA's 27, 31. In addition, in response to plaintiffs' interrogatories and requests for documents on this topic, they have identified two high level officers with some knowledge of these facts, but produced no documents, while claiming that their investigation "is continuing." *See* Tolchin Declaration, DE 269 at ¶¶ 6-7. Having failed to provide any meaningful information through other forms of discovery, now defendants are objecting also to PA 30(b)(6) topic 3 on this issue. The defendants have taken the same approach with respect to Abdullah Barghouti and Nasser Aweis. *See* defendants' response to RFA's 41 and 43, 124; Tolchin Declaration, DE 269 at ¶¶ 8-9, 15; PA 30(b)(6) topic 1, 4.

- As it relates to their lack of capacity defenses, defendants denied basic facts such as whether the PA can be sued in Israeli or foreign courts. See RFA's 94-95. In their interrogatories responses, the PA provided general responses that do not touch upon the underlying relevant facts. See defendants' responses to plaintiffs' Fifth Interrogatories 6(a)-10. Plaintiffs are entitled to probe the facts underlying this defense at a 30(b)(6) deposition. *See* PLO 30(b)(6) topic 5 and PA 30(b)(6) topic 12.

- Defendants have denied that certain terrorists involved in and/or convicted in connection with the various attacks at issue in this case were PA employees. *See, e.g.*, defendants' responses to RFA's 18, 19, 20, 37, 38, 51, 52, 53, 102, 109-14, 133. At the same time, in response to interrogatories seeking employment information for some of those terrorists, defendants produced some, but not all or complete, employment records for such terrorists. *See* Tolchin Declaration, DE 269 at ¶ 5. Defendants are also objecting to the related 30(b)(6) topic – PA topics 22 and 23.

Thus, defendants' are making a mockery of the Court and the discovery process when they argue that they should not have to respond to plaintiffs' 30(b)(6) notices because the topics were already covered in other discovery. In truth, they also did not

provide substantive responses to the other discovery and seek simply to avoid providing discovery in any form with respect to areas in which plaintiffs are fully entitled to discovery.

### D.  Objection to the Court's Order Relating to the Hague Depositions

Plaintiffs object for the reasons set forth in sections A and B above. In addition, plaintiffs object substantively to the Court's ruling. On December 3, 2012 plaintiffs submitted a pre-motion letter to suspend the discovery deadline in this matter so that the Hague deposition of the perpetrators in this matter could be taken. (Exhibit E). Plaintiffs first sought these depositions in March, 2012 and Defendants filed a baseless motion opposing those depositions back in April on the grounds that they were untimely. Defendants made this argument despite the fact that there were *nine months* left in the discovery period and plaintiffs had demonstrated their ability to procure Hague depositions in Israel within three months. The issue of timeliness had been fully briefed in early May, however Plaintiffs were never permitted the opportunity to fully brief the efficacy and fact gathering arguments raised by the Court in its ruling.

Plaintiffs pushed hard for the Hague depositions to be permitted by the Court again at the June 28, 2012 conference held before the Court.

At the December 20 hearing Magistrate Judge Ellis categorically denied Plaintiffs the right to take the Hague depositions of the perpetrators in this matter. The Court based this ruling upon the rationale that there is no "efficacy" to taking the depositions because of the likely inability to "garner facts during the discovery process" from them. Judge Ellis indicated that because in one prior deposition (that of Barghouti), the deponent refused to answer, plaintiffs should not be permitted to take a single perpetrator's

10

deposition.

The possibility that witnesses might not testify is not a reason to deny plaintiffs the opportunity to try to obtain such testimony. *See, e.g., In re Urethane Antitrust Litig.*, 267 F.R.D. 361, 364-5 (D. Kans. 2010) ("…in considering motions for the issuance of letters of request, courts ordinarily will not weigh the evidence that is to be adduced by deposition and will not attempt to predict, whether, in fact, the witnesses will be able to give the testimony which is sought.") (citations and internal quotations omitted); *see also Xcentric Ventures, LLC v. Karsen, Ltd.*, 2012 U.S. District LEXIS 138931 (D. Ariz. Sept. 25, 2012) (noting that courts generally grant these requests). Moreover, as plaintiffs' counsel pointed out to the Judge at the December 20 hearing (a) in 11 Hague depositions that have been taken in similar cases of similarly situated witnesses, 8 provided testimony and only 3 refused; and (b) refusal to testify has separate evidentiary value and would permit plaintiff to, for example, utilize the witnesses' prior statements.

In any event, there seems to be a misunderstanding of the very fundamentals of the Hague Convention letters of request process. Indeed, in contrast to the notice and commission methods of securing testimony or documents from the overseas voluntary witness, the Hague Convention letters of request process was designed to be the method for securing the evidence "from an uncooperative witness through the compulsory powers of a foreign court." *Philadelphia Gear Corporation v. American Pfautter Corporation*, 100 F.R.D. 58, 60 (E.D. Pa. 1983), *citing, Pain v. United Technologies Corp., 637 F.2d 775, 788 n. 67 (D.C. Cir. 1980), cert. denied,* 454 U.S. 1128 (1981)*; 6-28 Moore's Federal Practice – Civil* Sec. 28.12 [8] (Matthew Bender; Lexis Nexis Group 2012)("Letters of request provide the only method under the Hague Evidence Convention

11

to secure compulsory process over a proposed witness.")

There is no lawful basis to deny plaintiffs the depositions of the key fact witnesses.

Plaintiffs object to the Magistrate Judge's ruling, but are willing to wait to take the depositions as *de bene esse* depositions after other evidentiary issues are ruled upon if that is what the Court orders (and if a mechanism can be put into place to allow them to obtain any additional discovery that flows from such depositions if only permitted at a late date).

Plaintiffs have been placed in an untenable position. Plaintiffs have been prevented from taking the perpetrators' depositions in this matter, despite their diligent efforts. Plaintiffs believe, and intend to argue at the summary judgment phase and at trial that, based upon the Judge's ruling and their inability to otherwise subpoena these witnesses, the witnesses have been rendered "unavailable" pursuant to Federal Rule of Evidence 804.[4]  Plaintiffs seek permission to fully brief this issue before a ruling is made,

---

[4] Plaintiffs made a reasonable, good-faith effort to secure the witnesses' presence and/or testimony by seeking permission to take their Hague depositions with nine months left in the discovery period. Therefore, the judge can admit the witnesses' prior statements under Rule 804. See, e.g., In *Hardy v. Cross,* 132 S.Ct. 490 (2011); *United States v. Sindona,* 636 F.2d 792 (2d Cir. 1980), *United States v. Losada,* 674 F.2d 167 (2d Cir. 1982). Other courts have not required, in order to render a witness unavailable, any effort to even request a deposition or testimony if the probability that testimony will be given is extremely low, *United States v. Kehm*, 799 F.2d 354, 361 (7th Cir. 1986). This is exactly what this Court ruled in the instant matter.  The Court should also consider the fact that the witnesses – witnesses who have information against the interest of the defendants and many of whom who were employed by defendants and/or were or are receiving benefits from defendants -- have been rendered unavailable by the defendants' actions themselves in opposing the depositions and by raising the efficacy argument. The defendants should not now be permitted to argue against those same witnesses' unavailability.

as the arguments cannot be fully developed in these objections. If plaintiffs' argument is accepted, to the extent witnesses have made prior relevant statements, plaintiffs will not have to depose these witnesses and instead will use their prior statements. However, if the Court should not deem the perpetrators as unavailable, plaintiffs must be permitted to take *de bene esse* depositions of the perpetrators prior to summary judgment and trial.

Plaintiffs do not desire to extend discovery in this matter any more than necessary or to oppose the Magistrate's Order, but Plaintiffs must be permitted to submit the witnesses' statements against interest and against defendants' interest. Plaintiffs can do so by taking their depositions or by admitting their testimony pursuant to Rule 804, but Plaintiffs cannot be cut off of both paths. Plaintiffs have conducted an extensive search and could not find any case denying civil litigants the right to depose the perpetrators. If they are so denied, then they simply must be permitted to treat them as unavailable.

For all of the foregoing reasons, plaintiffs respectfully enter the Objections set forth above to the oral Orders entered by Magistrate Judge Ellis in this case on December 20, 2012 and ask that such rulings be overruled. Plaintiffs also ask that they permitted to supplement these objections upon the issuance of any related rulings.

Plaintiffs, by their Attorneys,

/s/ David I. Schoen (DS0860)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
334-395-6611; Fax: 917-591-7586
DSchoen593@aol.com

Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627; Fax: (718) 504-4943
rjt.berkman@gmail