UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,                      Civ. No. 04-397 (GBD) (RLE)

  v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO THE
MAGISTRATE JUDGE PURSUANT TO HIS DECEMBER 20, 2012 ORDER**

**Introduction**

On December 20, 2012, Magistrate Judge Ellis held a conference in this matter regarding (inter alia) defendants' objections to the Rule 30(b)(6) depositions noticed by the plaintiffs. At that conference, Magistrate Judge Ellis found the formulation of some of the deposition topics problematic, and that some of the information sought might be more efficiently obtained through other methods of discovery. Tr. 12/20/12 (Exhibit A) at 5-6.

But Magistrate Judge Ellis also expressly ruled that "it's clear that matter is not laid to rest … because I think the plaintiffs are entitled to discovery" and that he was therefore quashing the notices only as currently drafted and directed "the parties to get together and to discuss the rights that the plaintiffs have for discovery. If you cannot agree then the plaintiffs can make an application to me." *Id*. at 20-21.

Counsel for the parties conferred as directed but were unable to reach agreement; indeed, defendants' counsel have now taken the position (contrary to Magistrate Judge Ellis' ruling that plaintiffs are entitled to discovery, with the specific scope and method to be determined) that plaintiffs are not entitled to *any* discovery on *any* of the Rule 30(b)(6) topics, or otherwise.

Consistent with that position, defendants refused to discuss any reformulation of the Rule 30(b)(6) notices to obviate defendants' objections to scope and form. Simply put, defendants have utterly stonewalled plaintiffs' efforts to reach some sort agreement on the requests.

Plaintiffs therefore respectfully submit the instant motion, pursuant to the December 20, 2012, order, regarding the Rule 30(b)(6) topics on which they seek discovery.

## ARGUMENT

Plaintiffs require, are entitled to, and seek discovery on the Rule 30(b)(6) topics below, whether through a Rule 30(b)(6) witness, or by such other method as the Court deems proper.

### A. The Authenticity and Admissibility of the Documents Produced By Defendants

About a dozen of the terrorists involved in the seven bombings and shootings from which this case arises were officers and employees of the PA when they carried out the attacks.[1] Moreover, all of the perpetrators convicted for their roles in those attacks, whether or not they were PA employees, are being paid financial benefits by the PA's Ministry of Detainees, by virtue (sic) of the fact that they were imprisoned in Israel for crimes of terrorism. And because the five suicide terrorists in this case are officially considered "martyrs" by the defendants, their families are receiving financial benefits from the defendants' "Martyrs' Foundation."[2]

Unsurprisingly, then, since many of the terrorists who carried out the attacks at issue in this case were defendants' officers at the time, and since defendants are paying monetary benefits to the terrorists and/or their families due to those attacks, defendants have a large number of documents – in the form of employment records, and records from defendants' Detainees Ministry and Martyrs' Foundation – concerning the terrorists and the attacks.

---

[1] We say "About a dozen" because defendants are withholding information regarding the employment status of at least one of the perpetrators.

[2] For background regarding defendants' Martyrs' Foundation *see* DE 269 at 23-24.

Indeed, most of the documents sought by plaintiffs through discovery in this case, and the vast majority of the responsive documents produced by defendants, consist of the terrorists' PA employment and salary records, applications for payments of prisoner or "martyr" benefits submitted to defendants' Detainees Ministry and Martyrs' Foundation, and financial records reflecting defendants' payment of such benefits to the terrorists and their families.

Naturally, then, plaintiffs intend to use the documents produced by defendants to prove their case, and plaintiffs' Rule 30(b)(6) notices therefore requested testimony designed to authenticate the documents, and prove the facts necessary to support their admissibility as business records under Fed.R.Evid. 803(6) and/or as "public records" under Rule 803(8). *See* Exhibit B at ¶ 15; Exhibit C at ¶ 8.

Plaintiffs do not deny that the topics were formulated in a highly-detailed (not to say prolix) fashion. But in drafting any Rule 30(b)(6) topic, plaintiffs walk a fine line: on the one hand, Rule 30(b)(6) demands that plaintiffs "describe with reasonable particularity the matters for examination," which means that bald descriptions of topics (e.g.: "Whether the documents produced by defendants are authentic and admissible") are subject to challenge as not containing sufficient "particularity" and as being conclusory. On the other hand, if plaintiffs provide extensive detail, they are subject to attack for over-burdening the defendants.

Be that as it may, it cannot be disputed that plaintiffs are entitled to discover whether the documents produced by defendants – their own internal records – are authentic, and whether the factual elements necessary to admit them as business records or "public records" are present.

Indeed, defendants' purpose in opposing discovery on this issue is obvious: they are attempting to block plaintiffs from establishing a foundation for the admission of the documents they themselves produced. If that plan succeeds, the entire discovery process in this case will be

rendered pointless, and plaintiffs will be unable to use at trial basic documents they need to prove their case. And denying plaintiffs the ability to lay a foundation for documents already produced by defendants would be no less case-dispositive than barring plaintiffs from seeking any documents from defendants in the first place.

Accordingly, the Court should order defendants to produce a Rule 30(b)(6) witness able to testify as to the authenticity of the documents produced by defendants, and as to the factual predicates of admissibility set forth in F.R.E. 803(6) and F.R.E. 803(8).

### B. Defendants' Refusal to Arrest, and/or Release of, the Terrorist Perpetrators

As plaintiffs have shown, senior U.S. officials, including then-Secretary of State Colin Powell and General Anthony Zinni, along with the Israeli government, demanded that defendant PA arrest and detain notorious terrorists Abdullah Barghouti, Nasser Aweis, Abdel Karim Aweis, Nasser Shawish and Mohammed Hashaika – *prior* to the attacks at issue in this case – but the PA ignored those demands, and either briefly detained and then released them, or refused to detain them at all, and even continued to pay their salaries, whence they proceeded to plan and carry out the attacks at issue here. DE 269 at ¶¶ 7-9; 15.

As plaintiffs have also shown, all of their attempts to obtain documents from the PA regarding these events have been in vain. *Id*. Moreover, defendants have refused to produce, or explain what became of, a missing page from an August 2001 Israeli government request to the PA to arrest certain terrorists, submitted by the defendants themselves to an Israeli court, which almost certainly contains a request to the PA to arrest Abdullah Barghouti. *Id*. at ¶ 9.

Therefore, plaintiffs' Rule 30(b)(6) notice requests that the PA produce a witness knowledgeable about the details of the U.S. and Israeli requests to arrest Barghouti, Nasser Aweis, Abdel Karim Aweis, Shawish and Hashaika, about the actions (if any) taken by the PA in

response to those requests, about any interrogations of these men by the PA, and about the circumstances of their release from PA custody. Exhibit B at ¶¶ 1; 3-4. These topics are obviously relevant to causation, *respondeat superior* liability, and defendants' state of mind. Likewise, plaintiffs seek a witness who can explain what became of missing page of the August 2001 Israeli government request to the PA to arrest terrorists *Id*. at ¶ 18. Plaintiffs are entitled to know whether that missing page still exists, or whether defendants destroyed or failed to preserve it after this action was filed, in which case a spoliation remedy will be appropriate.

Accordingly, the Court should require defendants to produce a knowledgeable witness for ¶ 1 (Barghouti), ¶ 3 (Abdel-Karim Aweis, Shawish and Hashaika) ¶ 4 (regarding Nasser Aweis only) and ¶ 18 (the missing page of the arrest request) of plaintiffs' Amended Notice to the PA of Taking Depositions Pursuant to Fed.R.Civ.P. 30(b)(6) (Exhibit B).[3]

### C. Defendants' Provision of Funds and Military Training to Fatah

The attacks from which this action arises were carried out by or with the participation of the "Fatah" faction of defendant PLO. Therefore, plaintiffs can establish defendants' liability for the attacks under the ATA if they show that defendants provided Fatah with "material support or resources," as defined in 18 U.S.C. § 2339A(b)(1), in the period prior to the attacks. *See e.g. Estate of Parsons v. Palestinian Authority*, 651 F.3d 118 (D.C. Cir. 2011); *Boim v. Holy Land Foundation*, 549 F.3d 685 (7th Cir. 2008).

"Material support or resources" is defined in § 2339A(b)(1) as including virtually every type of asset or benefit imaginable, including financial support and "training."

---

[3] Plaintiffs originally sought a witness regarding any U.S. or Israeli requests to arrest, and any PA arrests, questioning, and release of, many of the other perpetrators. *See* Exhibit B at ¶¶ 2, 4-6. However, in light of the Court's instructions and comments at the December 20, 2012 conference, and because plaintiffs do not have specific knowledge that there were in fact requests to arrest these other perpetrators, plaintiffs are not pressing for a witness regarding the other perpetrators.

Plaintiffs' Rule 30(b)(6) notices therefore request testimony about defendants' provision of material support to Fatah between 1998-2004, including, specifically, the PA's provision of military training to Fatah at that time. Exhibit B at ¶¶ 7; 8(g); 10-11; Exhibit C at ¶¶ 1(i); 3-4.

In light of the Court's instructions and comments at the December 20, 2012 conference, plaintiffs are hereby limiting these requests to funding and military training only.

Evidence of the PA's provision of military training to Fatah is especially important because, unlike money, which obviously has benign uses, the purpose of military training is to kill and injure human beings, and so is directly related to, and directly facilitated, Fatah's use of terrorist violence. Indeed, the defendants have argued that their funding of Fatah is legitimate and innocent because Fatah is "the leading Palestinian political entity" and "is one of the political entities within the PLO, and as such it ought to be funded" since the PLO "is Israel's counter-party in the Oslo accords." Exhibit D at 17-19. Obviously, defendants' provision of military training to Fatah cannot be explained away as innocent.

Therefore, the Court should require defendants to produce a witness regarding:

a) The full details of all military and/or paramilitary training provided to Fatah by the PA between January 1, 1998 and January 29, 2004; and

b) The yearly amounts of funding provided by defendants to or for the benefit of Fatah between January 1, 1998 and January 29, 2004.

Alternatively, the Court should require defendants to provide this information via interrogatory responses.

### D. Defendants' Knowledge of Fatah's Terrorist Activities and Policies

The federal courts have held that that an ATA plaintiff must show that the defendant knew that the organization to which it provided material support, and which carried out the attack at issue, had a policy or practice of engaging in terrorism, or was formally designated as a

Foreign Terrorist Organization ("FTO") by the United States. *See e.g. Boim*, 549 F.3d at 693-694 (a showing that ATA defendant was aware that "the aims and activities of the organization" responsible for the attack included terrorism was sufficient); 18 U.S.C. § 2339B(a)(1) ("To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization [or] that the organization has engaged or engages in terrorist activity.

Fatah is not designated as an FTO, and plaintiffs therefore need to show that the defendants were aware that Fatah "aims and activities" included terrorism. Plaintiffs' need for evidence on this issue is especially acute because, as discussed *supra*, defendants have already indicated that they intend to claim that Fatah is a legitimate political group. Exhibit D at 17-19.

Plaintiffs' Rule 30(b)(6) notices therefore seek testimony regarding defendants' knowledge of "[t]he constitution, charter, program, policies, goals and activities of Fatah between January 1, 1998 and January 29, 2004." Exhibit B at ¶ 9; Exhibit C; at ¶ 2.[4]

The Court should direct defendants to produce a witness on this topic.

### E. Defendants' Provision of a "Safehouse" to Hamas

The July 31, 2002 bombing on the campus of the Hebrew University in Jerusalem, in which decedents Ben Blutstein, Janice Coulter, Dina Carter and David Gritz were murdered, was carried out by the Hamas terrorist organization. Hamas was designated by the United States government as a Foreign Terrorist Organization ("FTO") in 1997. Accordingly, plaintiffs can establish defendants' liability for the bombing under the ATA, if they can show that they provided "material support or resources" to Hamas in the period prior to the bombing. *Linde v.*

---

[4] The notices also seek testimony designed to demonstrate defendants' knowledge of Fatah's activities, by proving that Fatah and defendants share the almost identical leadership. However, because plaintiffs have other means of proving the overlapping leadership, and given the Court's instructions to pare down the topics, plaintiffs are not pressing for that testimony.

*Arab Bank*, 384 F.Supp.2d 571 (E.D.N.Y. 2005) (provision of material support to an FTO renders provider civilly liable under the ATA for attacks carried out by that FTO); *Weiss v. National Westminster Bank*, 453 F.Supp.2d 609 (E.D.N.Y. 2006) (same); *Strauss v. Credit Lyonnais*, 2006 WL 2862704 (E.D.N.Y. 2006) (same).

The phrase "material support or resources" is defined in 18 U.S.C. § 2339A as including provision of a "safehouse." The courts have unanimously held that when a foreign government permits a terrorist organization to operate in its territory, it thereby provides a "safehouse" to that organization within the meaning of § 2339A. *See e.g. Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006); *Owens v. Republic of Sudan*, 826 F.Supp.2d 128 (D.D.C. 2011).

Thus, if the PA allowed Hamas to operate, or otherwise sheltered Hamas, in PA territory in the period prior to the bombing, it is guilty of providing "material support or resources" to Hamas, and therefore liable under the ATA for the July 31, 2002 bombing carried out by Hamas.

Plaintiffs have good reason to believe that the PA did indeed shelter Hamas in PA territory during the years prior to the bombing,[5] and their Rule 30(b)(6) notice on the PA seeks a witness regarding the existence of Hamas offices in PA territory between 1998-2002, and regarding the PA's real-time knowledge of such offices. Exhibit B at ¶ 20.

---

[5] For example, in a January 22, 2006 television broadcast, senior PA official Mohammed Dahlan admitted that during the Second *Intifada* – i.e., the campaign of terrorist violence against Jewish and Israeli targets launched by the defendants in late 2000, in the context of which the terrorist attacks at issue in this suit were carried out – the PA sheltered Hamas' terrorist leadership, stating that: "All [Hamas'] military commanders have been protected by the [PA] security establishment throughout this *Intifada*. They were provided with full protection, and Israel has accused us of this several times, and so has the American administration. I was the prominent person to be accused of this." Similarly, in a June 16, 2007, television interview Dahlan stated that: "The Palestinian security forces were those who protected and hid half of the Hamas leadership and of the Hamas military force during the *Intifada*."

If the PA claims it has no knowledge of such Hamas offices, then this deposition will take 2 minutes; but if the PA has such knowledge, plaintiffs are entitled to know about it.

Therefore, the Court should require a witness on this topic. In the alternative, the Court should require defendants to respond to this question via an interrogatory answer.

**F.  The Internal PA Memorandum Regarding the January 27, 2002 Suicide Bombing**

The Sokolow family plaintiffs were injured by a suicide bombing that was carried out on January 27, 2002, by Fatah activist Wafa Idris. Israeli authorities subsequently captured and published an internal PA document indicating PA involvement in the attack. Exhibit E.

Plaintiffs have asked the PA to produce a witness regarding the substance of this document (Exhibit B at ¶ 26) and the PA should be required to do so.

Plaintiffs, by their Attorneys,

/s/ Robert J. Tolchin
Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
(334) 395-6611
Fax: (917) 591-7586
DSchoen593@aol.com