UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

 ------------------------------------------------------------------X

MARK SOKOLOW, *et al.*,

                         Plaintiffs,

              - against -

THE PALESTINE LIBERATION ORGANIZATION,
*et al.*,

                        Defendants.

  ------------------------------------------------------------------X

Docket No:
04-CV-397 (GBD) (RLE)

### DEFENDANTS' OPPOSITION TO
### PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORAL ORDER OF
### DECEMBER 20, 2012 ON TWO PRE-MOTION LETTERS RELATED TO
### DISCOVERY & MOTION TO SUPPLEMENT, IF NECESSARY UPON
### ISSUANCE OF RELATED RULINGS

Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization

("PLO") hereby submit the following Opposition to Plaintiffs' Objections to Magistrate Judge's

Oral Order of December 20, 2012 on Two Pre-Motion Letters Related to Discovery & Motion to

Supplement, if Necessary upon Issuance of Related Rulings (DE 293).

### INTRODUCTION AND SUMMARY

Plaintiffs object to two orders entered by Magistrate Judge Ellis during the December 20,

2012 telephone conference. Their objections should be overruled for three reasons. First, there

was nothing clearly erroneous or contrary to law about Magistrate Judge Ellis's decision to issue

one of the orders without requiring the Defendants to file a formal motion, and even if there

were, Plaintiffs did not preserve that objection by making it to the Magistrate Judge. Second,

there is nothing clearly erroneous or contrary to law about Magistrate Judge Ellis's entry of a

protective order precluding the taking of Rule 30(b)(6) depositions of the Defendants pursuant to

the unduly burdensome topics propounded by Plaintiffs. Third, there is nothing clearly

1

erroneous or contrary to law about Magistrate Judge Ellis's denial of Plaintiffs' *Ex Parte*

Motions to the Magistrate Judge to Issue a Letter of Request for Judicial Assistance for the

Depositions of Munzar Noor (DE 221); Abdel Karim Aweis and Nasser Shawish (DE 223); and

Abdel Rahman Makdad, Ahmed Salah, Ahmed Sa'ad, Halmi Hamash and Ali Abu Halail (DE

225). Accordingly, Plaintiffs' objections should be overruled.

## **STANDARD OF REVIEW**

As Plaintiffs acknowledge, DE 293 at 2, this Court reviews the magistrate judge's non-

dispositive discovery orders pursuant to Rule 72(a) of the Federal Rules of Civil Procedure.

Under Rule 72(a), a district court may modify or set aside a magistrate judge's non-dispositive

pretrial order only "if it is clearly erroneous or contrary to law." *In re Natural Gas Commodities*

*Litig.*, 235 F.R.D. 241, 243 (S.D.N.Y. 2006). An order may be deemed "contrary to law" if it

"'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id*. at 243-44

(quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

An order is "clearly erroneous" if "although there is evidence to support it, the reviewing court

on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y.

2008) (internal quotation and citation omitted).

Under this highly deferential standard of review, magistrate judges are afforded broad

discretion and reversal is appropriate only if that discretion is abused. *Ritchie Risk-Linked*

*Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 282 F.R.D. 76 (S.D.N.Y. 2012) (citing

*AMBAC Fin. Servs., L.L.C. v. Bay Area Toll Auth.*, No. 09 Civ. 7062, 2010 U.S. Dist. LEXIS

127736, at *2 (S.D.N.Y. Nov. 30, 2010)); *accord Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d

at 178. Accordingly the party seeking to overturn a magistrate judge's decision "carries a heavy

2

burden." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 U.S. Dist. LEXIS 59233, at *4 (S.D.N.Y. Aug. 13, 2007). Plaintiffs here fail to meet that burden.

## ARGUMENT

### I. MAGISTRATE JUDGE ELLIS DID NOT CLEARLY ERR BY GRANTING DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER WITHOUT REQUIRING THE FILING OF A FORMAL MOTION

Plaintiffs initially object to both orders on the grounds that Magistrate Judge Ellis "ordered substantive relief based on the pre-motion letter and argument on it, thereby denying plaintiffs the right or ability to raise the underlying issue by proper and complete motion." DE 293 at 2. This objection is meritless for several reasons. First, as to one of the two orders at issue (the order relating to the Hague depositions), Magistrate Judge Ellis did not deny Plaintiffs the ability to raise the underlying issue by motion. To the contrary, Plaintiffs request for the Hague depositions was the subject of three motions and supporting memoranda (DE 221-226), as well as a supplemental notice filed by Plaintiffs and related reply brief (DE 272, 281).

Second, with respect to the other order on review (the order relating to the Rule 30(b)(6) deposition notices), Plaintiffs were not the moving party -- Defendants were. It was Defendants, not Plaintiffs, who requested by letter dated December 3, 2012 that the Court "enter a protective order directing that the discovery sought in Plaintiffs' Rule 30(b)(6) depositions not be had" "during the telephonic hearing set for 2:30 pm on December 5, 2012, or at another time convenient for the Court." *See* DE 293-2 at 1, 3. Plaintiffs were therefore not "den[ied] . . . the right or ability to raise the underlying issue by proper motion" in any fashion.

Third, Magistrate Judge Ellis' December 20 order granting the relief requested in Defendants' December 3 letter was expressly authorized by Local Civil Rule 37.2. That rule provides that "No motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal

3

conference with the Court by letter and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference." In this case, Defendants sought an "informal conference" regarding a motion under Rule 26 ("for a protective order directing that the discovery sought in Plaintiffs' Rule 30(b)(6) depositions not be had"). DE 293-1 at 1. That request was "resolved as a consequence of such a conference" on December 20, when Magistrate Judge Ellis issued an oral order resolving that dispute. There was nothing "clearly erroneous" or "contrary to law" about Magistrate Judge's Ellis' resolution of Defendants' written request, made after Plaintiffs' written response during a hearing scheduled for that purpose. *See Moffet v. Anti-Defamation League*, 2012 U.S. Dist. LEXIS 161276, at *1-4 (S.D.N.Y. Nov. 9, 2012) (describing application of Local Rule 37.2 and noting that "it is well-settled that oral rulings are binding").

Fourth, the cases relied upon by Plaintiffs are inapposite because they stand only for the proposition that a court cannot prevent a litigant from filing a motion even when the motion might be frivolous. *See* DE 293 at 3 (citing cases). That proposition has no relevance here because Magistrate Judge Ellis never prevented the Plaintiffs from filing a motion about these issues at all. With respect to the Hague depositions, Plaintiffs did in fact file motions. *See* DE 221, 223, 225. In the other instance, Defendants were initially the moving party, but the Plaintiffs subsequently filed a motion seeking Rule 30(b)(6) depositions on some of the very same topics at issue here. *See* DE 296.

Moreover, there is nothing improper about a Magistrate Judge orally ruling on the merits of a proposed motion at a status conference. Indeed, doing so has been a routine practice in this case and others pending in this Court. In *Best Payphones, Inc. v. Manhattan Telecomms. Corp.*, the Second Circuit held that "the district court did not abuse its discretion in construing the letter

4

as a motion and denying the motion," because "[w]hile a court may not deny a party the opportunity to file even a frivolous motion, [the plaintiff] had the opportunity to make the arguments necessary to preserve its sanctions motion for appellate review, and [the plaintiff] has not pointed to any additional argument it would have made had it filed full motion papers." 450 Fed. Appx. 8, at 15 (2d Cir. 2011). Although Plaintiffs claim that "the Magistrate Judge herein prevented plaintiffs from providing full briefing on all of the important legal issue attending their 30(b)(6) notices," DE 293 at 3, they do not point to any additional argument they would have made to Magistrate Judge Ellis had Defendants filed a formal motion. Furthermore, nothing in Magistrate Judge Ellis's order prevented Plaintiffs from filing their own motion regarding the Rule 30(b)(6) depositions if they wished to do so. Indeed, Plaintiffs subsequently did precisely that. DE 296.

Finally, even if this objection had any merit, it has been waived because Plaintiffs never made it to Magistrate Judge Ellis. Plaintiffs now complain that "the letters in this Court, with their three-page limit, are only suitable for summarizing an issue for the Court and cannot possibly fairly be construed as a motion," DE 293 at 4, but Plaintiffs never sought additional briefing from the Magistrate Judge or objected to his ruling on Defendants' letter request on the record the parties had made. Indeed, even after he had ruled, the Magistrate Judge allowed Plaintiffs' counsel to ask questions and continue making his record. *See* DE 293-1 at 6:22-15:17. "When a plaintiff fails to raise a claim before the magistrate judge, the claim is not properly before the district court and provides no basis for challenging the magistrate judge's proposed findings on the claims raised in the proceeding below." *Seward v. IBM Corp.*, 2012 U.S. Dist.

LEXIS 38523, at *6 (S.D.N.Y. Mar. 9, 2012).  For all of these reasons, Plaintiffs' objections should be overruled.[1]

## II.    MAGISTRATE JUDGE ELLIS DID NOT CLEARLY ERR IN PRECLUDING DEPOSITIONS OF DEFENDANTS ON THE TOPICS CONTAINED IN PLAINTIFFS' RULE 30(b)(6) NOTICES

Fact discovery in this matter closed on December 21, 2012.  With less than three weeks left in the discovery period, Plaintiffs served the Rule 30(b)(6) notices at issue on November 28 and December 2, 2012.  DE 294-1 at 6, DE 294-2 at 14.  The notices at issue contained a total of 35 topics consisting of over 170 subparts, and directed each Defendant to appear for deposition less than two weeks later on December 10 or 11, 2012.  Counsel for the parties conferred by telephone on Sunday December 2, shortly after Plaintiffs served the operative PA notice.

On December 3, 2012, Defendants sent a letter to Magistrate Judge Ellis requesting that the Court "enter a protective order directing that the discovery sought in Plaintiffs' Rule 30(b)(6) depositions not be had, or not be had in the matter or at the times noticed."  DE 293-2 at 1. Defendants advanced five arguments in support of their request including, *inter alia*, the undue burden imposed by the topics.  *Id.* at 2.  Plaintiff responded by letter on December 5, 2012.  DE 293-3.  The Court held a telephonic hearing on December 5, 2012, but did not rule on Defendants' request for a protective order regarding the Rule 30(b)(6) depositions.  12/5/12 Tr. at 16:4-9.  On December 10, Defendants responded to Plaintiffs' December 5, 2012 letter and argued, *inter alia*, that the topics were unduly burdensome.  Ex. 1 hereto.

---

[1] Plaintiffs' claim that "[p]re-motion letters are not a part of the record and so cannot be used for appellate purposes," DE 293 at 4, is puzzling.  The only letters that are relevant to the issue at bar are obviously part of the record in this case because the parties have filed them as exhibits to the instant objections.  *See* DE 293-2, 293-3, 293-5; Ex. 1 hereto.

1298123.1

Magistrate Judge Ellis convened a telephonic hearing on December 20, 2012 and ruled as

follows:

> With respect to the 30(b)(6) notices, I know that the whole thrust of the federal rules is that you try to limit the discovery to depositions except in unusual circumstances but with respect to the proposed 30(b)(6)'s in this case and more specifically with the proposed topics, I find that the topics as articulated by the plaintiffs are not contemplated or appropriate for a 30(b)(6) witness. 30(b)(6) witnesses in gene[ral] are designed to have people who can speak about policies and general behavior of a defendant where the party who's seeking the deposition doesn't know the individual who might be able to speak to those kinds of issues. The typical case might be the person who's the chief financial officer who could talk about financial policies or an HR person who could talk about employment policies.
>
> As I have reviewed the depth and breadth of the questions proposed by the plaintiffs, first of all, I have serious doubts about whether or not given the responsibility of a party to bring someone up to speed as a 30(b)(6) witness that anyone short of someone with a photographic memory could fulfill that role with the question and breadth of the – the inquiry proposed by the plaintiffs in this case. Some of the detail requested by the plaintiffs I think would be inappropriate in a 30(b)(6) and the breadth of the questions both temporally and the scope of information sought I think is inappropriate for a 30(b)(6).
>
> So on that basis alone I would grant the defendant's objection to the 30(b)(6) notices formulated by the plaintiffs in this case. I note, for example, that in some of the instances the questions involve knowledge of details either starting at a certain temporal scope or starting from a certain temporal scope and while on its face indicates of full details and all knowledge and all – the use of the [inaudible] that are [inaudible] plaintiffs would cause problems I think that it's – it's inappropriate to use this vehicle at this point in time – frankly I think it only creates issues and it was – I'm not saying intentionally because I have no idea what people intend but on reading these descriptors I can see that the most likely result of this is that [inaudible] continuing litigation over both the scope of the 30(b)(6)'s and the witness who would ever be put forth and its ability to respond to those inquiries.
>
> So, as I said, I do not think a 30(b)(6) is an appropriate way to get the details that the plaintiffs have sought and . . . I grant . . . the defendant's objections to the 30(b)(6) notices.

DE 293-1 at 5:1-6:21. Plaintiffs' counsel then sought clarification of the Court's ruling:

1298123.1

> MR. SCHOEN: Then I'm not clear at all I guess. We have 30(b)(6) notices outstanding. As I understand it the Court has now granted a pre-motion letter for a protective order that seeks to . . . bar the 30(b)(6) depositions that we have noticed. It's my understanding that the Court has granted that.
>
> THE COURT: That's correct. The notices based on – I have exhibits which include 30(b)(6) notices to the PLO, the PA and an amended one I think to the PA –
>
> MR. SCHOEN: Yes, Your Honor.
>
> THE COURT: Those notices are what the order is directed at.

*Id.* at 7:3-14. *See also id.* at 15:18-22 ("Again – I think that you've been very precise in terms of asking me what is it that I've ruled and what I've ruled is that the depositions, the notices that were presented to me, the defendant's application with respect to those notices is granted. That's all I've ruled.").

The Court and counsel then had a lengthy post-ruling discussion regarding the Court's order, during which Magistrate Judge Ellis further explained the basis for his ruling. *See*, *e.g.*, *id.* at 10:3-8 ("The breadth of the topics you have there even given the defendant's obligation to prepare somebody I anticipate that even if they've fulfilled their obligation to the fullest [--] how does someone retain the breadth of information that you've listed here?"); *id.* at 11:5-11 ("I mean even if I translate this to some other litigation if you ask somebody for the details – if this were a 1983 case then I had some witness for the City and you prepare them for all the details of arrest of a witness and then you showed them all the documents, just that one thing would be hard for somebody to retain even if you showed them the documents."), *id.* at 16:5-12 ("the questions as phrased and the scope of the questions are such that . . . the questions would be problematic and even if the defendants were to discharge their duties to prepare a witness or several witnesses . . . the enormity of the scope here would lead to subsequent application from the parties, and that to me is problematic").

1298123.1

The Court then, *sua sponte*, granted Plaintiffs an opportunity to seek further discovery consistent with its ruling:

> So the second part of my ruling is this. I will give the plaintiffs an opportunity to propose to me or to propose in conjunction with discussions with the defendants how to – to make sure that the plaintiffs get appropriate discovery on issues that are relevant to the claims in the case. I will – I'm not going to expect you to give it to me in a week but I will expect that by January 5th I will get from the parties either an agreement from the parties about how to give the plaintiffs appropriate discovery or an application for the plaintiffs for discovery which does not run afoul of the ruling which I've made today.

*Id.* at 16:18-17:3. The Plaintiffs filed a motion pursuant to that order on January 7. DE 296.

In summary, Magistrate Judge Ellis found that Plaintiffs' proposed topics were overly broad and unduly burdensome and appropriately entered an order forbidding the discovery on the proposed topics. DE 293-1 at 5:1-6:21. He also, *sua sponte*, allowed the Plaintiffs an opportunity to propose another less burdensome discovery method "which does not run afoul of the ruling which I've made today." Judge Ellis was expressly empowered to enter the order he did here under Federal Rule of Civil Procedure 26(c)(1), which provides in pertinent part that "[t]he court may, for good cause shown, issue an order to protect a party . . . from . . . undue burden or expense, including" by "forbidding the . . . discovery" or "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(A), (C). *Id.* at 17:2-3. Judge Ellis's order is, thus, not "contrary to law."[2]

---

[2] Plaintiffs claim that "[t]he national interest in ATA cases and the corresponding liberal approach to allowing full discovery in these cases demand that plaintiffs be given the opportunity to fully and meaningfully complete discovery herein," DE 293 at 5, but that objection does not justify reversing the order at issue. Indeed, as the case cited by Plaintiffs notes, it is "the Federal Rules of Civil Procedure" that govern discovery in this case, *id.* (citation omitted), and their application is no different in this ATA case than in any other civil action. Thus, Magistrate Judge Ellis' application of the standard "rules of discovery" to this issue is not clearly erroneous or contrary to law simply because this is an ATA case.

1298123.1

Magistrate Judge Ellis's finding that the topics at issue were overbroad and unduly burdensome also is not clearly erroneous.  Indeed, even a cursory examination of Plaintiffs' topics reveals their overbreadth and the undue burden and expense that attempted compliance with them would require.  For example, several topics seek to require testimony about "the full details" of events involving multiple suspects that allegedly took place more than a decade ago. *See* DE 294-2 at 1-8 (seeking testimony about the "full details" of "all requests to the PA  . . . to arrest and/or detain," twenty-one separate individuals, as well as "any actions taken by the PA in response" to such requests, and "any arrests and/or detentions," any interrogations and/or questioning," and "any releases and/or escapes" of those twenty-one persons "at any time after" either "January 1, 1994" or "September 1, 2000").  Other requests were similarly overbroad and sought the "full details" about all aspects of Defendants' interactions with, and knowledge of, non-party Fatah during a six-year period that began over a decade ago.  *See* DE 294-1 at 1-3; DE 294-2 at 8-9 (seeking testimony about the "full details" of "the organizational, political and financial relationship between the [Defendants] and Fatah,"  "[t]he constitution, charter, program, policies, goals and activities of Fatah," "Fatah's budget," "Fatah's sources of funding," and "all military and/or paramilitary training provided to Fatah by the PA," "between January 1, 1998 and January 29, 2004").  Still other topics sought to require a witness to testify about "all facts relating to" Defendants' lack of capacity defense, "the full details" of every search for documents in this case, "[t]he PA's ability to search its paper and electronic files," the "full details" of documents that Defendants no longer possess, and the origins, locations, reasons for creation, personnel involved, etc. for every document produced by Defendants and certain others produced by Plaintiffs in this case.  DE 294-1 at 3-4; DE 294-2 at 9-14.  The other topics similarly sought overly broad and unduly burdensome discovery about "the full details" of

10

communications with, convictions of, disciplinary actions taken against, promotions given to, or payments made to multiple persons over unspecified time periods, the locations and uses of multiple unspecified real properties over a four-year time period, and "[t]he funding, management and editorial programming policies of PA television" at any time. DE 294-1 at 6; DE 294-2 at 11-12.

In fact, although Plaintiffs' Objections claim to "object substantively" to the order at issue, DE 293 at 5, they do not, in fact, contend that Magistrate Judge Ellis erred, let alone clearly erred, in granting "defendants application based upon the formulation of plaintiffs' requests, due to their scope," *id.* at 6. The closest Plaintiffs' Objections come to asserting that Magistrate Judge Ellis erred is their statement that they "object to the Magistrate's ruling," because they "believe that the formulation of their 30(b)(6) notices was proper for all of the reasons set forth in their pre-motion letter and the undersigned's argument at the hearing." *Id.* But nothing in Plaintiffs' letter or their argument at the hearing justifies reversing Magistrate Judge Ellis's order. Indeed, although Plaintiffs incorporate by reference the arguments in their letter dated December 5, 2012, DE 293 at 6, that letter did not, in fact, address the argument that the topics as formulated were overbroad or unduly burdensome, *see* DE 293-3.

Plaintiffs also incorporate by reference the arguments made after the ruling on December 20, DE 293 at 6 n.3, but nothing in those arguments indicates that Magistrate Judge Ellis's order is clearly erroneous or contrary to law, *see* DE 293-1 at 9:13-15:17. If anything, those arguments further justify Magistrate Judge Ellis's order because they demonstrated how, in a separate case with the same counsel, even though the plaintiffs were permitted to depose multiple Rule 30(b)(6) witnesses on multiple subjects over multiple days, the plaintiffs had still moved to compel additional Rule 30(b)(6) testimony from Defendants based on their claim that the

1298123.1

witnesses were not adequately prepared – and that was in a case involving only a single attack rather than seven. *See id.* at 12:1-15:12. Indeed, after hearing those arguments, Magistrate Judge Ellis restated his early ruling, but expressly did not base that ruling on the arguments regarding the other case. *See id.* at 16:5-12 ("the questions as phrased and the scope of the questions are such that *notwithstanding what may or may not have happened in the other case* I – I find that the questions would be problematic and even if the defendants were to discharge their duties to prepare a witness or several witnesses, multiple witnesses, that this is – the enormity of the scope here would lead to subsequent application from the parties, and that to me is problematic.") (emphasis added). Accordingly, the arguments made at the December 20 hearing do not justify reversing Magistrate Judge Ellis's order.

Plaintiffs' Objections note that they "disagree" with "defendants' argument[] . . . that the information sought was better suited to other forms of discovery," and claim that "courts have long held that 'producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent.'" DE 293 at 7 (citations omitted). That claim provides no basis for reversing Magistrate Judge Ellis' order. Indeed, as Plaintiffs themselves acknowledge, Magistrate Judge Ellis did not preclude Plaintiffs from taking Rule 30(b)(6) depositions; he only precluded them from taking such depositions based on the overbroad topics in their notices. *Id.* at 6. *See also* DE 293-1 at 6:24-7:14, 15:18-22.

Plaintiffs' Objections also complain at some length about Defendants' responses to requests for admission and answers to interrogatories that were served on December 21, 2012, and assert that those responses justify Rule 30(b)(6) depositions. *See* DE 293 at 8-10. Defendants believe their discovery responses were appropriate, but, in any event, those responses cannot be a basis to overrule the order at issue because (1) they were served *after* the order was

issued, and, (2) as the record reveals, the fact that such discovery requests were pending at the time of the ruling was not a basis for the order. *See Seward*, 2012 U.S. Dist. LEXIS 38523, at *6; DE 293-1 at 6:2-4. Accordingly, Plaintiffs' complaints about the sufficiency of Defendants' responses to requests for admission or interrogatories are irrelevant to the only issue presently before the Court, which is whether Magistrate Judge Ellis's ruling that Plaintiffs' Rule 30(b)(6) topics as drafted were overly broad and unduly burdensome was clearly erroneous or contrary to law. Because it was not, Plaintiffs' objections must be overruled.[3]

### III. MAGISTRATE JUDGE ELLIS DID NOT CLEARLY ERR IN DENYING PLAINTIFFS' *EX PARTE* MOTIONS TO ISSUE LETTERS OF REQUEST FOR JUDICIAL ASSISTANCE TO ISRAEL

Although Plaintiffs object only to Magistrate Judge Ellis's December 20, 2012 order regarding their Hague Requests, some background regarding this issue is appropriate to put the order at issue into context.

In the fall of 2011, Plaintiffs requested that Magistrate Judge Ellis issue letters of request pursuant to the Hague Convention to the State of Israel for depositions of two individuals, one of which, Abdullah Barghouti, was allegedly involved in perpetrating one of the attacks at issue in this case. At a hearing held on November 17, 2011, the following exchange occurred between the Court and Plaintiffs' counsel regarding that request:

> MR. TOLCHIN: We submitted a request for letters –
> THE COURT: Yes. And I have a question for you. I understand that the defendants haven't opposed it per se and they just don't want you to get any undo advantage, but since the Hague request is a request from the court, the court also has an independent obligation don't you think to determine whether or not it's appropriate to do a Hague request and that you have the burden

---

[3] Plaintiffs also purport to "reserve the right to supplement or modify" their objections "upon issuance of [future] rulings." DE 293 at 2. Plaintiffs offer no argument in support of this claimed right or the purported "Motion to Supplement" referenced in the Objections' title. In any event, there is no reason to delay resolution of these objections, which should be overruled for all of the reasons stated herein.

1298123.1

of demonstrating to me that it's appropriate under the
circumstances to go to what is an extraordinary proceeding frankly.
        MR. TOLCHIN:  Yes.

11/17/11 Tr. at 9:15-25.

Having agreed that he had that burden, Plaintiffs' counsel then attempted to satisfy it by

arguing that "the individuals in question . . . are in prison in Israel in connection with attacks that

are at issue in this case. . . . They definitely have information.  If they would testify candidly,

they have plenty of information directly relevant to this case.  There's no way for us to obtain

their deposition . . . other than a Hague request asking the Israeli court to direct them to appear

for depositions."  *Id.* at 10:4-17.

The following exchange then occurred:

> THE COURT:  Let me ask you this.  One of the things you
> mentioned today was were they to testify truthfully.  Is there any
> reason to believe that either of them would cooperate in the
> deposition and why would they[?]
>         MR. TOLCHIN:  If they are compelled to testify by a judge
> and they have to sit in the chair and answer questions, I guess any
> hostile witness may have an inclination not to testify candidly.  But
> one would hope that they'd testify.
>         THE COURT:  Well, we have people even here who won't
> testify in depositions in civil cases.
>         MR. TOLCHIN:  If you bring a man to a room and ask him
> a question and he refuses to answer a question, we'll cross that
> bridge when we come to it as to what to do with that. . . .  It could
> also be that these people will testify candidly because as sick as it
> seems, they're actually quite proud of what they've done.  So I
> don't know what they'll do.

*Id.* at 11:7-12:2.  After further argument, Magistrate Judge Ellis took the matter under

advisement, *id.* at 16:18-25, and, on December 20, 2011, the Court issued the letter of request as

to Abdullah Barghouti, DE 176.

On March 23 and 25, 2012, Plaintiffs filed the three motions at issue here which sought

Hague Requests for eight depositions of persons who, like Abdullah Barghouti, were each

14

alleged to have been involved in perpetrating one of the attacks at issue, and to be presently

incarcerated in Israel. DE 221-26. Defendants filed a consolidated opposition to the motions on

April 2, 2012, which was principally based on the timeliness of Plaintiffs' requests. DE 229-31.

Plaintiffs filed a consolidated reply in support of their motions on April 12, 2012. DE 232.[4]

At the hearing on June 28, 2012, defense counsel argued that the pending motions should

also be denied because, *inter alia*, Abdullah Barghouti, who had been deposed on June 20, had

> refused to testify and if Your Honor will recall at one of our earlier
> hearings you specifically raised whether or not it was likely that
> any of these prisoners who I believe are all serving life sentences
> and are probably not subject to any additional compulsion or
> sanction that they would suffer in any real sense are going to be
> willing to aid the plaintiffs in testifying in these cases. We have
> here a concrete example of where this exactly happened. Your
> Honor went to the effort of issuing a Hague request, requiring a
> foreign state to go through its judicial process, to compel someone
> in its prison systems [to] be brought to a public hearing. A former
> Israeli retired judge had [to] preside[] over that hearing. Counsel
> for the parties had to travel to Israel. Israeli counsel had to be
> present. We had to hire court reporters and videographers and
> translat[o]rs all to get essentially no meaningful evidence at all.
>     I submit that Your Honor can also consider that fact under
> [Rule 26] subsection (b)(2)(c)([iii]) where the court is required to
> weigh whether the burden or expense of the proposed discovery
> outweighs the likely benefit . . . considering the needs of the case,
> the amount in controversy, the parties['] resources, the importance
> of the issues at stake in the action and the importance of the
> discovery in resolving the issues.
>     So as we've said in our motion and maybe additional points
> here today, Your Honor, we respectfully submit that . . . . there's
> not a reason to think that they're on balance going to produce a lot
> of or useful evidence given the cost and the potential delay of the
> case. We therefore ask that you deny this request.

6/28/12 Tr. at 11:25-13:7. Plaintiffs' counsel responded by arguing that:

> He came to the deposition. It was last – what, two weeks ago. It
> happens his only testimony was a stream of vulgarities, no

---

[4] The timeliness issue also was the subject of a Notice filed by Plaintiffs on December 3, 2012. *See* DE
272 (Notice), DE 279 (Defendants' Response), DE 281 (Plaintiffs' Reply).

1298123.1

substantive answers.  Mr. Hill tells Your Honor that it's all for
naught, we're not going to get anything out of that.  I'm not quite
so sure we're not going to get anything out of that because there
are evidentiary implications of his refusal to answer.  He has prior
statements and those prior statements may – will now be useable
because he refused to answer.  Obviously that's not an issue for
this moment but there is a point.  Even of the exercise of having a
lawyer going over there and being cursed out by this murdere[r],
even so there is a point to that exercise.
. . . .

By the way, Mr. Bar[ghouti] chose to respond to
[inaudible] vulgarities but other witnesses who have been produced
have actually answered questions.  I took some depositions of
prisoners and I wouldn't say they're all the most cooperative
witnesses but we had questions and answers and I would not
necessarily assume just because of the way Mr. Bar[ghouti]
behaved that others will behave that way.  If they do we'll deal
with the consequences.  We'll see if it has any implications.  We'll
see what that imputes to the defendant.  It depends on each
witness' status and who he is, what his position is and numerous
other issues that – it's extremely premature right now to prejudge
that.

*Id.* at 14:15-15:22.  The Court then took the issue under advisement.  *Id.* at 16:2-3.

The Court heard additional argument about these motions during the telephonic hearing

held on December 5, 2012, and Defendants reiterated their argument that Rule 26(b)(2)(C)(iii)

required that the motions be denied in light of the prior experience in this case:

As I mentioned at the hearing when we had oral arguments on
these motions in June of 2012 we went through all the trouble of
you issuing a letter of request, the Israeli authorities doing
everything they had to do to bring a prisoner to a courthouse in
Jerusalem.  We went through all the trouble of getting lawyers
from the states there, Israeli counsel there, court reporters,
videographers, Arabic and Hebrew translators.  We even hired a
retired Israeli judge to preside over this event and the person gave
no substantive testimony.

I submit as I did in June that that is an additional reason to
deny this request under 26(b)(2)(c)(iii) which says you must limit
the frequency or extent of discovery when the burden or expense
of the proposed discovery outweighs its likely benefit.  It doesn't
make sense from time or expense to order depositions of people

1298123.1

that are serving life sentences and are not inclined to be cooperative as Mr. Bar[ghout]i was already in this particular case.

12/5/12 Tr. at 8:1-18.

During the telephonic hearing on December 20, Magistrate Judge Ellis ruled as follows:

> First, with respect to the Hague letter motions, while I know that the parties made a number of arguments concerning timeliness and certainly the Court had indicated that it wanted the parties to bring up issues in a timely fashion and while I have some concerns about the question of timeliness I certainly have to bear some responsibility for not ruling on the matter earlier. But my main issue with respect to the Hague letter request is that harking back to when we were discussing the Barg[hout]i deposition and the reservations raised by the Court concerning whether or not there was any efficacy to attempting the deposition regardless of how long it took it appears that the Court's concerns with respect to the Barg[hout]i deposition were borne out in terms of the ability of the deposition to garner facts during the discovery process.
>
> I note, however, that in that case I believe that there was a six month difference between the time that the deposition was allowed and it took place, but more importantly as confirmed by the parties – no substantive facts, no substantive answers were provided by the deponent and while the plaintiffs argue that there is some evidentiary value in the fact that Barg[hout]i refused to answer and was uncooperative that is not to me a sufficient basis to go forward with the process of Hague depositions. I'm not saying that I agree with that proposition [that] there's an evidentiary value in refusing to answer.
>
> Indeed, as I recall when I was addressing Mr. Barg[hout]i I expected [inaudible] that I didn't think he was going to answer any questions and didn't think that he had any particular incentive, reason or inclination to answer questions. For the purpose of discovery I find no reason to suspect that there will be any information, facts gathered from the parties who [are] proposed to be the subject of the Hague letters and I have not heard anything that suggests otherwise.
>
> So . . . I'm denying that application.

DE 293-1 at 2:21-4:7. On December 26, 2012, Magistrate Judge Ellis entered a separate written order denying the three motions seeking Hague depositions for the reasons stated on December 20. DE 290.

17

Magistrate Judge Ellis's order was not clearly erroneous or contrary to law.  In their Rule 72 Objections, Plaintiffs assert as the sole basis for overruling the order that Magistrate Judge Ellis was not allowed to consider the unlikelihood that the depositions would yield relevant testimony.  *See* DE 293 at 10-11.  But, such an inquiry is expressly authorized – indeed, required – by Federal Rule of Civil Procedure 26, which provides in pertinent part that:  "[o]n motion or on its own, the court **must** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines" that the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added).  Here, Magistrate Judge Ellis, acting within the scope of his discretion, concluded that the burden, expense, and possible delay associated with arranging eight depositions of Palestinians imprisoned in Israel outweighed the likely benefit.

Rule 26(b)'s balancing test carries no less force when foreign depositions are sought pursuant to Rule 28(b).  There is nothing about resort to the Hague Evidence Convention that divests the court of its authority to supervise discovery.  Rule 28(b) allows depositions to be taken in a foreign country under an applicable treaty or convention under a letter of request, or "letters rogatory."  As this Court previously has held, "Rule 28 does not divest the Court of its authority to control the discovery process, and the course of litigation, pursuant to the Federal Rules of Civil Procedure."  *Horvath v. Deutsche Lufthansa, AG*, No. 02 Civ. 3269, 2004 U.S. Dist. LEXIS 1733, at *11-12 (S.D.N.Y. Feb. 9, 2004).  *See also In re Letters Rogatory from Canada*, No. 08-MC-50465, 2008 U.S. Dist. LEXIS 54983, at *3-4 (E.D. Mich. July 15, 2008) (factors relevant to the court's exercise of discretion to issue letters of request under Rule 28(b)

1298123.1

"include those listed in Fed. R. Civ. P. 26(b) and (c)"); *Kia Motors America, Inc. v. Autoworks Distributing*, No. 06-156, 2007 U.S. Dist. LEXIS 94574, at *8 (D. Minn. Sept. 27, 2007) ("Although some specialized issues are raised by letters rogatory, it is appropriate to begin any discovery analysis with the general guidelines of Rule 26(b)."). *Cf. Ethypharm S.A. France v. Abbott Labs.*, 748 F. Supp. 2d 354, 359 (D. Del. 2010) (Rule 28(b), authorizing foreign discovery, "must be read together with Rule 26(c), which permits a court to make any order 'which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'").

Contrary to Plaintiffs' position that the Magistrate Judge was not permitted to consider the likely benefit of the deposition in exercising his discretion to decline to issue the letters of request, courts routinely have taken just such a factor into consideration in denying requests for foreign discovery pursuant to letters of request. For example in *Horvath*, in denying a request for a foreign deposition on written questions under Rule 28, the court cited as a factor the lack of evidence "that even were this court to issue a commission for the deposition upon written questions . . . , those questions in fact would be answered, let alone answered in a timely fashion." 2004 U.S. Dist. LEXIS 1733, at *13. Similarly, in *Mitre Sports Int'l, Ltd. v. HBO, Inc.*, 2010 U.S. Dist. LEXIS 37494, * 8-9 (S.D.N.Y. Apr. 15, 2010), the court denied the defendant's motion to expand discovery to include the Plaintiffs' manufacturing activities in China because that discovery could be conducted only through the Hague Evidence Convention which, "in practice, is extremely expensive and time consuming" and "there is no reason to believe that there is evidence that would materially alter the record in this matter." The court explained that, although "good cause" is not ordinarily a "condition precedent to a party's right to conduct discovery," because the parties have "already been engaged in discovery for well over

a year, there is testimony from third-party witnesses that allegedly supports defendant's version of the events and the discovery sought is, literally, half a world away, it is appropriate for the court to weigh the probable incremental benefit of the additional discovery sought against the burden the discovery would impose on the parties." *Id.* at *9 (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)). Here, because the parties have been engaged in discovery for over a year, the fact discovery deadline was December 21, 2012 (*see* DE 131), the Plaintiffs claim to have other evidence supporting their version of the events, discovery sought is seven time zones away, and there is very little likelihood that the eight Palestinian prisoners Plaintiffs seek to depose will cooperate by responding to Plaintiffs' questions, it was equally appropriate for Magistrate Judge Ellis to weigh the benefits and burdens of the proposed Hague depositions. *See also Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1074-75 (9th Cir. 2002) (affirming district court's decision to deny a terrorism plaintiff's request for international assistance in deposing former Iranian leaders where the burden and expense of obtaining the discovery outweighed the likely benefit); *In re Letters Rogatory from Canada*, 2008 U.S. Dist. LEXIS 54983, at *5 (a "weak initial showing of the likelihood of discovering relevant information is cause in and of itself to deny Petitioner's request for letters rogatory").

Plaintiffs suggest that Magistrate Judge Ellis's ruling resulted from a "misunderstanding of the very fundamentals of the Hague Convention letters of request process." DE 293 at 11. According to Plaintiffs, Hague Convention letters of request are "'designed to be the method for securing evidence from an uncooperative witness through the compulsory powers of a foreign court.'" *Id.* at 11 (quoting *Philadelphia Gear Corp. v. American Pfautter Corp.*, 100 F,R.D. 58, 60 (E.D. Pa. 1983)). While that may be true as a general matter, here, as a practical matter, the Israeli courts have no compulsory power to compel the proposed deponents to testify. According

to Plaintiffs, each of the eight Palestinian detainees who are the subject of the letters of request is serving a life sentence or multiple life sentences. *See* DE 222 at 2 ("Noor is currently serving two life sentences in an Israeli prison"); DE 224 at 2 (Aweis and Shawish "were sentenced to and are now serving multiple life sentences in Israeli prisons"); DE 226 at 2 (Makdad, Salah, Sa'ad, Hamash and Halail "were sentenced to, and are now serving, life or multiple life sentences in Israeli prisons"). Thus, the eight Palestinian detainees are essentially beyond the power of judicial compulsion, and Magistrate Judge Ellis thus did not clearly err in concluding that the likelihood of obtaining useful information from them was outweighed by the expense, burden, and delay of pursuing the depositions. In any event, the fact that judicial compulsion is available to compel the appearance of non-voluntary witnesses does not mean that the district court does not weigh the benefits and burdens when deciding whether to invoke such a process.

Here, Magistrate Judge Ellis did not clearly err in "find[ing] no reason to suspect that there will be any information, facts gathered from the parties who [are] proposed to be the subject of the Hague letters . . . ." DE 293-1 at 4:1:4. In denying the Plaintiffs' motions for issuance of the Hague letters of request, Magistrate Judge Ellis reasonably considered the Plaintiffs' previous attempt to depose a Palestinian detainee (Abdullah Barghouti), which ended, as Magistrate Judge Ellis had anticipated, with the witness refusing to testify. *Id.* at 3:2-4:4. Magistrate Judge Ellis did not clearly err when he decided against prolonging the litigation to pursue eight additional depositions, likely to conclude with the same result. As Magistrate Judge Ellis noted, he "ha[d] not heard anything that suggests otherwise." *Id.* at 4:4. At the June 28, 2012 hearing on the motions, Plaintiffs' counsel responded to the argument that the proposed deponents were unlikely to testify by responding only, "it's extremely premature right now to prejudge that." Tr. 6/28/12 at 14:15-15:22. In their Rule 72 Objections, Plaintiffs assert that

they pointed out to Magistrate Judge Ellis at the December 20, 2012 hearing that, in other cases, eight "similarly situated witnesses" had provided testimony.  DE 293 at 11.  Aside from a one-sentence assertion in a footnote to a reply brief on a different issue (DE 277 at 8 n.4), Plaintiffs' counsel raised the issue regarding Hague depositions in other cases for the first time at the December 20 hearing and only after Magistrate Judge Ellis had ruled.  DE 293-1 at 4:1-24.  Magistrate Judge Ellis thus did not clearly err in ruling based on his experience with Hague depositions in this case rather than relying on Plaintiffs' conclusory, unsubstantiated assertions regarding Hague depositions in other cases in other jurisdictions.

Because Magistrate Judge Ellis's ruling was not contrary to law or clearly erroneous but instead was a proper exercise of his authority to weigh the benefits and burdens of proposed discovery, Plaintiffs' objections should be overruled.  Plaintiffs' alternate request for relief – that the Court defer ruling on their Objections and allow Plaintiffs to later supplement their Objections – should be denied.  *See* DE 293 at 12-13.  Plaintiffs' musings about future briefing on whether the eight Palestinian detainees should be considered unavailable for purposes of Federal Rule of Evidence 804 has no bearing on the merits of Plaintiffs' Objections.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Objections to Magistrate Judge's Oral Order of November 20, 2012 on Two Pre-Motion Letters Related to Discovery should be overruled, and Plaintiffs' Motion to Supplement, if Necessary upon Issuance of Related Rulings should be denied.

1298123.1

January 14, 2012                    Respectfully Submitted,


                                    ___/s/ Mark J. Rochon_____
                                    Mark J. Rochon
                                    Richard A. Hibey
                                    Laura G. Ferguson
                                    Brian A. Hill
                                    MILLER & CHEVALIER CHARTERED
                                    655 15th Street, NW, Suite 900
                                    Washington D.C. 20005-6701
                                    (202) 626-5800 [tel]
                                    (202) 626-5801 [fax]
                                    mrochon@milchev.com [email]


                                    *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

1298123.1