UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

                          Civ. No. 04-397 (GBD) (RLE)

    v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR OBJECTIONS TO MAGISTRATE JUDGE'S ORAL ORDER OF DECEMBER 5, 2012 ON TWO PRE-MOTION LETTERS RELATED TO DISCOVERY (284)**

        Defendants have filed a consolidated opposition, (DE 291), to plaintiffs' objections to Magistrate Judge Ellis' oral orders of December 5, 2012 on two pre-motion letters relating to discovery. (DE 284). In their objections, (DE 284), plaintiffs sought leave to supplement or modify their objections on the Unincorporated Association/Lack of Capacity issue ("UA issue"), if necessary pending related discovery responses that were received on December 29, 2012. Said discovery responses have been reviewed and plaintiffs' submit the information gleaned therefrom in response to defendants' opposition arguments below.

        In sum, defendants' opposition is baseless and the Magistrate Judge's Orders should be overruled by this Honorable Court. Plaintiffs rely on their Objections (DE 284) in Reply and offer only the following additional points to reply directly to defendants' opposition (DE 291):

        **First**, plaintiffs should be entitled to fully brief the issues herein and defendants have not provided a single valid argument to the contrary.

1

**a.** The fact that defendants were the original "moving" party with regard to the pre-motion applications is irrelevant and, frankly, silly. Plaintiffs' opposition is no less of a motion/application.

**b.** Defendants also argue that the Magistrate Judge's rulings were appropriate, pursuant to rule 37, which provides in relevant part that, "No motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless..*the discovery dispute has…been resolved as a consequence of such a conference*." (Emphasis added). Defendants claim the Magistrate Judge's ruling "resolved" the discovery dispute and therefore a ruling without motion practice was appropriate.

Defendants are misreading and misusing the rule. The intent of rules allowing for pre-motion letters is to prevent the filing of frivolous or unnecessary motions when the parties, with a little help from the Court, can reach an agreement or be convinced that a motion is not necessary. The cases cited by Plaintiffs clearly provide:

> Although we have recognized that "it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion," Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 39 (2d Cir.1995), we have made it clear that "the judge may not require that the court's permission be secured at such a conference before a party may file the motion." Milltex, 55 F.3d at 39; see also MacDraw, 73 F.3d at 1256 n. 2 (same); Richardson, 825 F.2d at 652 ("Absent extraordinary circumstances, ... a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure.").[1]

By ruling on the pre-motion letter, the Magistrate Judge herein prevented plaintiffs from filing a motion, *or even seeking to file a motion*, on the subject.

---

[1] See also, *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir.1987) (Indeed, we have noted that holding pre-motion conferences with a judge may serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers.)

Moreover, the sole case cited by defendants to support their argument *actually supports* plaintiffs' argument. In *Best Payphones, Inc. v. Manhattan Telecomms. Corp.,* 450 Fed. Appx. 8, at 14, (2d Cir. 2011), the Court reaffirmed the *Richardson* case, cited by plaintiffs, and provided compelling reasoning for plaintiffs' argument:

> In Richardson, we found that the district judge erred when she effectively prevented the Laus from filing a motion for leave to amend their answer. We have noted that "[f]iling at the trial court level with a view to 'making a record' is crucial because, absent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record." IBM v. Edelstein, 526 F.2d 37, 45 (2d Cir.1975).

Pre-motion letters are not a part of the record and so cannot be used for appellate purposes. More importantly, the letters in this Court, with their three-page limit, are only suitable for summarizing the issue for the Court. In *Moffat*, the party had filed a single-spaced, seven page, fully-briefed factual and legal argument on a limited issue relating to an apparently completely baseless sanctions application. It was not found to be an abuse of discretion, therefore, for the Court *to construe the letter as a motion*. *Id,* at 15. The three-page premotion letters filed herein, on substantive and critical discovery issues, cannot possibly be construed as motion.

**c.** Defendants' recurring argument that plaintiffs somehow waived their right to ask for the ability to file a full motion because they did not raise it with the Magistrate is also meritless. Plaintiffs are not seeking "new grounds for relief" as used in the cases cited by Defendants by seeking to fully brief the issues that are the subject of the Magistrate's ruling. Plaintiffs are not raising a new issue, but rather are objecting to the methods used in the ruling itself. Plaintiffs are afforded the ability, pursuant to Rule 72 to object to the Magistrate Judge's ruling. Period. The Advisory Committee Notes to the 1983 amendments to Rule 72 (with which defendants indicate in their opposition they are

familiar) state that reconsideration shall be by the district judge. Nowhere in the rules are they afforded the opportunity to seek reconsideration, clarification or the ability to file full briefs on the subject – nor do defendants cite to a single case or rule providing for same. And, in fact, had Plaintiffs filed something directly with the Magistrate they would have missed their deadline to file objections with Judge Daniels. Again, Defendants' argument is silly and a waste of time. The discovery precluded is critical to plaintiffs' case and plaintiffs should have been afforded the opportunity to fully brief the issues prior to ruling. The ruling itself prevented such briefing and plaintiffs, via this objection, are asking the Court to overturn the Orders or to allow full briefing.

**Second**, as and for substantive notes regarding the UA issue. Plaintiffs have fully briefed this issue and will not repeat themselves. In sum however:

a. Clearly, there is some disagreement in the reading of this Honorable Court's August 9 ruling, but plaintiffs again suggest based upon all of the language they already cited – the aggregate of all of Judge Daniels' statements of the subject, rather than one cherry-picked sentence -- that it is clear this Court intended for there to be discovery on the UA issue. *See 8/9/12 Tr. at 53, 60-61, 76-77, 78, and* 82.  Defendants have been acting in clear opposition to that order.

b. Defendants claim that they have produced a list of the documents they intend to use to support their UA claim and that is all plaintiffs are entitled to. However, plaintiffs have the right to conduct their own discovery in order to *counter* the UA affirmative defense. The Court affirmed this right at the August 9, 2012 hearing, and defendants should not be permitted to impose self-serving limits on the evidence.

c. Defendants claim that plaintiffs have been able to obtain the UA discovery they need via other forms of discovery. For example, plaintiffs served interrogatories on this subject on November 21, 2012. Plaintiffs also served requests for admission on Defendants regarding the lack of capacity defense. Plaintiffs received responses to both on December 28. **Defendants' argument is disturbingly disingenuous based upon the inadequate responses provided to that discovery.**

In response to the interrogatories propounded by plaintiffs on November 21 relating to the UA issue, defendants provided vague, incomplete and evasive responses – essentially non-answers. By way of example:

- In their interrogatory responses, (See i.e. Exhibit A at 6), after multiple pages of objections, defendants responds that the PA is not a labor union – per the *Martin v. Curran* case, to which *defendants* have regularly cited, "but the PA does have members in the sense that elected and appointed officials [and employees] assume and cease their positions with the PA in accordance with the pertinent legislation and regulations governing within the Occupied Palestinian Territory." Defendants provide no explanation for how this qualifies as "membership" pursuant to the law or how it is any different than a corporation's or partnership's or other entity's employees and elected officers.
- When asked to list their members, defendants were unable to do so, except to produce excerpts from what amounts essentially to the PA phone book without any explanation about who these people are, how they became "members", what verification there is of same, etc… *Id*. at 9-10.

5

- In response to plaintiffs' interrogatory seeking the factual basis for defendants' UA claim, defendants regurgitate the legal arguments they have already made to, and which have been rejected by, this Court and make blanket statements that, for example, "the PA and PLO are not partnerships", but provide no factual basis for their arguments, as clearly requested. *Id* at 12-13.

In response to the RFAs propounded by plaintiffs on November 21, (Exhibit B, relevant excerpt), defendants, the PA likewise provided vague, contradictory and evasive responses -- essentially non-answers.

By way of example, defendant PA denied for lack of information the requests seeking an admission that the PA can be sued in foreign courts, that the PA does not have members, and that the PA can enter into binding contracts outside the Palestinian territory. **How is it possible the PA lacks information and knowledge about these questions? And, if they do, how could they even set forth a colorable UA lack of capacity defense?** *Id* at RFA#95, 96, 100. If defendants choose not to answer or cannot answer the basic and essential discovery requests on this subject, the appropriate course of action is to drop the affirmative defense (or have it dismissed). 8/9/12 Tr. at 82.[2]

Plaintiffs have the right to investigate the defendants' affirmative defense, especially one that could be dispositive of certain of plaintiffs' claims. Defendants should not be allowed to dictate what kind of discovery plaintiffs can conduct. And, the

---

[2] "… to the extent there is a question about the underlying facts which would support (the affirmative defense of lack of capacity/unincorporated association), I believe that it is appropriate for discovery." " … those issues are to be resolved in discovery." **"To the extent the defendant does not wish to engage in discovery in those issues that are relevant to any of the affirmative defenses, then they can withdraw those affirmative defenses or those affirmative defenses can be precluded."** August 9, 2012 Tr. at 82. [Emphasis added]

responses provided by defendants in their interrogatory and RFA responses, to which defendants decided to grace plaintiffs with responses, are incomplete, contradictory and self-serving. Certainly *these responses* to interrogatories and RFAs cannot serve as a reason to deny plaintiffs discovery on this important topic. Plaintiffs must be provided with responses to their document production requests and to depose a representative of the PA and PLO on these issues in order to be able to probe the issues and question the contradictions, as well as the non-answers.

d. Defendants' final argument claiming that the requests for admissions ("RFAs") propounded upon plaintiffs' have been effectively admitted by virtue of their lateness is now a moot and false argument. Magistrate Judge Ellis granted plaintiffs' an extension to respond to said RFAs until January 10 and they were timely responded to on January 7.

**Third**, as for the substantive arguments regarding the Guetta pre-motion letter to compel photographs of seventeen people identified by plaintiffs as having been convicted of carrying out similar attacks in the same geographical area using similar *modus operandi* or who were identified in police statements of other perpetrators as having been involved in such attacks, plaintiffs have already addressed each of defendant's arguments, but reply in sum:

a. Defendants argue plaintiffs waited too long to raise this issue with the Court and then later admit that the Court did not deny plaintiffs' application due to timing. It is not necessary, therefore, to even respond to this argument. However, plaintiffs clearly set forth the reasons for the timing of their application and the diligent efforts they made in their motion (DE 284, at 13-14). Moreover, the motion was not untimely at all as it was

7

made well before the close of the original discovery cutoff, the Court has agreed discovery will be expanded, and it will take mere hours to effectuate plaintiffs' request.

      b.  Defendants also argue that plaintiffs made no effort to seek discovery linking these individuals to the attack. (1) Any claim by defendants that they would have produced evidence relating to these 17 individuals in response to discovery requests when they would not even produce photographs is clearly disingenuous. (2) Defendants have no idea what efforts plaintiffs made to uncover evidence in this matter. If fact, plaintiffs efforts were great and at a minimum served to uncover evidence linking the 17 individuals to attacks in the same geographical area using the same *modus operendi*. Plaintiffs also located one photograph on their own, but Mrs. Guetta did not identify the man in the photograph, despite the monetary motivations defendants allude to multiple times. And, again, such motivations are an issue for a jury and not for making a premature discovery decision.

      c.  Defendants argue that Mrs. Guetta's identification is unlikely to lead to the discovery of admissible evidence. Again – defendants are making an argument that is not yet ripe. First, Mrs. Guetta needs to be able to attempt to make an identification. *Then*, the Court can make a determination about admissibility after taking into consideration all of the relevant factors, per the Supreme Court in *Perry v. New Hampshire,* 132 S. Ct. 716, 719 (2012). Moreover, as plaintiffs argued prior, Mrs. Guetta's identification will not end the investigation. If she is able to identify the perpetrator, plaintiffs will be able to conduct additional investigation to try to independently link the identified perpetrator to the attack using all resources available to them. Clearly, at this stage it is too soon to make an admissibility decision.

    d.  Defendants argue Mrs. Guetta's testimony has "shifted" and that she had testified in the past that she could not identify her attackers. Again, plaintiffs explained in DE 284, FN7, that Mrs. Guetta's testimony has been consistent. And, defendants' argument that she testified that she could not tell if they were Palestinian or Israeli is as ridiculous as saying that by sight only, one could not tell if someone were from Ohio or Pennsylvania. Clearly that is not a distinction that could be made, but that does not detract from a person's ability to identify someone -- who shot at you and your child and laughed, and whose face is etched upon your brain -- in a photo array. The recent Supreme Court *Perry* case, cited by plaintiffs in their objections, is clear precedent for plaintiffs' argument that plaintiff must be permitted the relief she is seeking.

    e.  Defendants also argue, (in regards to all arguments they clearly cannot overcome), that plaintiffs cannot raise certain things that were not raised below. First, plaintiffs have raised nothing new in their objections -- they have simply provided additional support. Secondly, even if *arguendo*, there were any merit to defendants' assertion factually (and there is not), this would highlight the problem with pre-motion practice and a three-page limit to the extent that it effectively serves to replace motion work. Certainly, defendants are not arguing that pre-motion practice is sufficient for, or intended to be, full motion practice. If the Court agrees with these arguments at all, then plaintiffs must be afforded the opportunity to fully brief these issues.

"A district court reviewing a magistrate judge's recommended ruling 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Seward,* at 1, citing 28 U.S.C. § 636(b)(1)(C).

**WHEREFORE**, plaintiffs request a hearing on their Objections and ask the Court to overrule the Magistrate Judge on the two matters that are the subject of these Objections.

    Plaintiffs, by their Attorney,

/s/ David I. Schoen (DS0860)
David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
334-395-6611
Fax: 917-591-7586
DSchoen593@aol.com

Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
rjt.berkman@gmail.com