

Home | Login | Find a Member | Site Map

Search

For Lawyers

- For Lawyers
- For the Public
- Inside the Bar



Home > For Lawyers > Resources > Publications > Washington Lawyer > May June 2000

## Bar Counsel's Page



Shopping cart



### It's a Great Day to Be Bar Counsel
By Joyce E. Peters

Anyone who has spent time around an Army post has probably heard the expression "It's a great day to be a soldier!" Although I don't know who coined this expression, I heard it many times during my more than 22 years of service as an Army judge advocate. Sometimes I heard it said in jest by a soldier standing in the rain at a muddy field site, or with delight by a fellow soldier as we crossed the parade field on a sunny day at Fort Lewis, Washington, with Mount Rainier towering in the distance. Most often, however, I remember hearing retired general Gordon R. Sullivan, former chief of staff of the Army, and many senior military commanders use this expression at ceremonies, briefings, and meetings when they addressed troops and military leaders.

In many ways this statement is a reflection of their feelings of pride in the competence and professionalism of soldiers all over the world who might be faced with difficult tasks or life-threatening situations in support of national security policy. But more importantly, this statement captures the enthusiasm, energy, commitment, and courage of those who serve the nation. It signals a belief in the importance of each individual's contribution as part of a much larger organization, and it highlights the camaraderie, teamwork, esprit, and integrity that must exist at the core of any large organization if it is to be respected and effective in accomplishing its mission.

As I reflected upon how to introduce myself to the D.C. Bar community as the new Bar counsel, I realized that, just as it has been and still is a great day to be a soldier, it is also a great day to be the Bar counsel! The responsibility and trust reposed in the Bar counsel to oversee the disciplinary system for the more than 73,000 members of the D.C. Bar cannot be taken lightly. Nothing is more important than upholding the integrity of the legal profession and its members and ensuring that those who put their trust in their lawyers receive the undivided attention and competent, zealous representation they deserve.

Being the Bar counsel, like being a soldier, requires dedication, honesty, integrity, fairness, compassion, and absolute professionalism. It also requires perseverance, leadership, and vision to recognize not only the changes in the practice of law resulting from specialization, new technology, and multijurisdictional practice, but also the continuity of the legal profession's essential nature-service to the client-with its longstanding ideals and standards. These issues concern the Bar generally and all lawyers-regardless of whether they are private practitioners, corporate or organizational counsel, government or public practitioners, or simply entrepreneurs in business. The disciplinary standards in the District of Columbia apply to all lawyers-active and inactive-and they must be

In re Alvin G. Douglass. February 3, 2000. The court publicly censured Douglass for failing to act with competence, to represent a client with the skill and care commensurate with that offered by other attorneys in similar matters, to pursue a client's legal objectives, to represent a client diligently, or to act with reasonable promptness in connection with an estate matter.

In re Robert C. Freed. February 15, 2000. In this reciprocal matter from Maryland, where Freed was indefinitely suspended, the court suspended him and directed the Board on Professional Responsibility to determine the nature of the final discipline to be imposed.

In re Kevin C. McDonough. March 2, 2000. In this reciprocal matter from California, the court suspended McDonough and directed the Board on Professional Responsibility to determine the nature of the final discipline to be imposed. The California court suspended him for two years, stayed the execution of all but 60 days of actual suspension, and imposed a two-year probation with conditions.

In re Lorenzo Randle. February 3, 2000. In this reciprocal matter from Maryland, where Randle consented to a 60-day suspension for commingling, the court suspended him for 60 days.

In re Jordan L. Ring. February 17, 2000. In this reciprocal matter from Massachusetts, where Ring was suspended for three months, the court suspended him for three months, nunc pro tunc to October 28, 1998. In connection with his own divorce proceeding, Ring transferred marital assets to private accounts overseas and failed to comply with child support orders. He was adjudicated in contempt on seven occasions and twice incarcerated for his actions.

In re Mark J. Rochon. March 2, 2000. In this reciprocal matter from the United States Court of Appeals for the District of Columbia Circuit, the court publicly censured Rochon for engaging in conduct that seriously interfered with the administration of justice. The federal court publicly reprimanded Rochon for repeatedly ignoring briefing deadlines and filing a motion to withdraw as counsel one week before a briefing deadline that already had been extended.

In re Kevin M. Sabo. January 24, 2000. In this criminal matter from the Circuit Court of Arlington County, Virginia, where Sabo was convicted of attempted malicious wounding, the court suspended him and directed the Board on Professional Responsibility to determine the nature of the final discipline to be imposed.

In re Robert J. Sheridan. February 4, 2000. In this reciprocal matter from Maryland, where Sheridan was indefinitely suspended, the court suspended him and directed the Board on Professional Responsibility to determine the nature of the final discipline to be imposed.

In re Gerald S. Susman. February 15, 2000. In a criminal matter from the United States District Court for the District of New Jersey, where Susman pleaded guilty to a violation of 18 U.S.C. §§ 1027 and 2, and a reciprocal matter from Maryland, where he was suspended by consent, the court suspended him and directed the Board on Professional Responsibility to determine the nature of the final discipline to be imposed.