# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

                                      Civ. No. 04-397 (GBD) (RLE)

        v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
THEIR MOTION TO THE MAGISTRATE JUDGE
PURSUANT TO HIS DECEMBER 20, 2012 ORDER**

Plaintiffs respectfully submit this Reply to defendants' opposition to [DE 305], and in further support of, their Motion to the Magistrate Judge Pursuant to his December 20, 2012 Order [DE 295, 296].

### INTRODUCTION

Of course, defendants would be happy if fact discovery were over, as they continue to misleadingly state is the case [DE 305 at 3], and if they did not have to produce a single 30(b)(6) witness notwithstanding plaintiffs' timely service of the 30(b)(6) deposition notices. Unfortunately for them, that was not the Court's ruling.

Contrary to defendants' representations [DE 305 at 3-5] at the December 20th conference, the Court clearly stated that it was not denying plaintiffs 30(b)(6) depositions altogether. *12/20/12 Conf. Tr.*, attached hereto as **Exhibit 1**, at 6:24-7:2; 20:18-24:

> **Mr. Schoen**: The Court's ruling is that we are not permitted to take any 30(b)(6) depositions in this case? I just want to be clear judge.
> **The Court**: That's not my ruling.
>
> \*\*\*

1

> But as to the issues that were raised in the 30(b)(6) application *while I've ruled on the specific application it's clear that matter is not laid to rest because of what I've asked you to do because I think the plaintiffs are entitled to discovery*… (emphasis added).

Indeed, the Court acknowledged that plaintiffs have the right to "get appropriate discovery on issues that are relevant to the claims in the case." *Id*. at 16:21-23. These statements were fully consistent with statements made by the Court at the December 5, 2012 telephonic conference convened at defendants' request that discovery would be extended.[1] At the December 20th conference, the Court further directed the parties to confer in an attempt to reach agreement about the discovery to which plaintiffs are entitled, and set January 5, 2013 as the deadline for plaintiffs to submit their proposal for more limited 30(b)(6) depositions. *See Id*. at 16:23-17:3; 21:3-8.

Per the Court's clear direction, plaintiffs conducted a telephonic meet and confer on January 3, 2012. On that call, defense counsel wrongly took the position that discovery was over (notwithstanding the Court's rulings to the contrary) and categorically refused to suggest any modifications to plaintiffs' 30(b)(6) topics.[2]

---

[1] Judge Ellis: "[W]ith respect to the question of additional time it certainly seems to me that there is a further need to consider the time. *So the real question is how long as opposed to whether there's a need for an extension. I understand that the defendants [inaudible] but it seems to me we still have some work to do before I can declare that discovery is complete*." 12/5/12 Conf. Tr. at 4, **Exhibit 2** (emphasis added).

[2] Defense counsel also falsely represented that defendants would not be producing any further materials in the case. Yet, late in evening on January 22, 2012, defendants produced some 400 Arabic language documents, which were clearly within their possession all along, were responsive to plaintiffs' earlier discovery requests and should have been produced months ago. This simply underscores defendants' gamesmanship and the need for a discovery expansion (which the Court granted), as described in detail in plaintiffs' comprehensive motion to expand discovery – DE 268; 269. Defendants have continued in their pattern of delay and evasion by refusing to produce to plaintiffs their translations of those late produced documents under the improper claim of work product. Plaintiffs have addressed this issue in their January 24, 2013 premotion letter to the Magistrate Judge.

Therefore, plaintiffs were constrained to file their motion [DE 295] without any input from defendants on what modifications would be palatable to them. Certainly, plaintiffs could not be expected to read defendants' mind and to propose exactly those modifications that would be acceptable to defendants absent defendants' participation in the discussion (nor would they be required to agree to every limitation proposed by defendants). Nevertheless, plaintiffs made a good faith effort to propose limitations and to narrow the topics in compliance with the Court's instructions. Thus, plaintiffs' motion was by no means, as defendants suggest, a motion for reconsideration [DE 305 at 7-9], and it is not necessary for plaintiffs to respond to this claim. Plaintiffs are open to a full discussion of this matter and will be as flexible as possible to find a way to complete discovery in a manner acceptable to the Court.

## ARGUMENT

### A.  There are no Procedural Defects in Plaintiffs' Motion

*First*, the motion was timely filed on January 7, 2013. Defendants' argument otherwise [DE 305 at 6-7] is nothing more than an attempt to be cute and to find a way around the Judge's clearly stated intention at the December 20th status conference. Apparently, neither the Judge nor the parties realized at the time that January 5, 2013 was a Saturday. Therefore, consistent with the Federal Rules and the Local Rules, plaintiffs timely filed their motion on the first business day following January 5, *i.e.*, Monday, January 7, 2013. Fed. R. Civ. P. 6(a)(1)(C); Local Civil Rule 6.4. In any event, no one was harmed by the confusion about dates since January 5 and 6 were on a weekend. The fact that defendants even raised this argument is further evidence of their bad faith and abusive approach to discovery in this case.

---

Plaintiffs may seek leave to supplement DE 295 and 296 and this reply once they have had a chance to translate, review and digest that tardy 400-page production.

*Second*, the motion is not a motion for reconsideration as defendants' argue [DE 305 at 7-9]. As explained above, plaintiffs did exactly what the Court requested by setting forth those 30(b)(6) topics to which they still require responses and explaining why such information is relevant.

### B. Plaintiffs' Proposed Revisions to the 30(b)(6) Notice Are Consistent with the Judge's December 20 Ruling

Before addressing defendants' specific complaints about the 30(b)(6) topics, plaintiffs respond to some of defendants general points below.

*First*, defendants completely brush over, and out-rightly mischaracterize, the enormous work plaintiffs did to limit and reframe their 30(b)(6) notices in an effort to focus on the most important issues and discovery still needed. *Plaintiffs limited their requests from twenty-five 30(b)(6) topics to six overall subject matters*. This is not to say that that the other topics were not also important. However, plaintiffs heard the Court's ruling that their 30(b)(6) notices were too broad and sought to narrow them and/or to seek the information through alternative methods of discovery.

*Second*, Rule 30(b)(6) is a basic discovery tool, which plaintiffs are entitled to utilize in developing their case. *See, e.g.*, *Koch v. Specialized Care Services, Inc.*, 437 F.Supp.2d 362, 390 (D. Md. 2005). Plaintiffs have satisfied their burden under Rule 30(b)(6) to describe "*with reasonable particularity the matters for examination.*" Defendants must now comply with their obligation to designate a person who *must testify about information known or reasonably available to the organization.*" *Id.* (emphasis added). Defendants' cannot avoid this obligation by propounding broad-stroke objections to *all* of plaintiffs' 30(b)(6) topics without making any proposals for appropriate limitations to the topics. Such broad objections must fail because they do not establish good cause by "demonstrat[ing] the specific evidence of the harm that would result" from allowing the topic. *Jennings v. Family Management,* 201 F.R.D.

4

272, 275 (D.D.C. 201) (citation omitted); *see also Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190-91 (D.D.C.1998) (stating that conclusory boilerplate objections, whether asserted in response to discovery requests or in discovery pleadings filed with the court, do not comply with the Federal Rules and offer an inadequate basis for the court to rule on discovery disputes).

*Third*, even if as defendants claim, they already provided discovery on many of the 30(b)(6) topics by other means (which as plaintiffs demonstrate below is not in fact the case), Courts have made clear that written discovery is not necessarily a substitute for 30(b)(6) depositions. *See, e.g.*, *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 507 (D.S.D. 2009) ("[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent.") (citations omitted); *New Jersey v. Sprint Corp.*, 2010 WL 610671, *2 (D. Kan. Feb. 19, 2010) ("Further, plaintiff should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written requests for admissions already served."); *see also, In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) (party did not have to rely on statements contained in authenticated document produced in discovery, but had the right to take a 30(b)(6) deposition to probe those statements - "…*Rule 30(b)(6)* deposition is a sworn corporate admission that is binding on the corporation… it is not up to Bioproducts to determine what discovery Plaintiffs need.") (internal quotation marks omitted).

### A. Topics Relating to Fatah and Hamas

Each of the 30(b)(6) topics relating to Fatah and Hamas go to the heart of plaintiffs' case and the basic elements of their "material support" and *respondeat superior* claims. All of these topics are absolutely appropriate for 30(b)(6) depositions and are not overly broad.

5

PA Topic 7

Defendants generally object to the use of the words "full details" in topic 7. DE 305 at 10. Clearly these words are a term of art, which seek a designee with information on the topic reasonably known to the defendants, as required by Rule 30(b)(6). If defendants have some other reasonable suggestion for alternative wording that captures the intent of the Rule, plaintiffs would be happy to amend the notice accordingly. Defendants also claim that PA topic 7 is vague because plaintiffs fail to define what they mean by providing training to Fatah. DE 305 at 10. This argument is nothing more than an attempt by defendants to create confusion and ambiguity in an obvious matter so as to avoid their discovery obligations. Fatah is a faction of the PA. Plaintiffs specify that they are seeking information regarding *military* training provided by the PA to Fatah, the proof of which is directly relevant to plaintiffs' material support claim. DE 296 at 5. It is obvious that plaintiffs seek such information regarding Fatah as an institution and Fatah's members as such.

Moreover, defendants own publications contained reports of such training. **Exhibit 3a and 3b.**[3] Indeed, in light of defendants' protestations that they do not understand the type of information PA topic 7 is directed to, plaintiffs searched for and located the attached article (Exhibit 3) from the July 1998 edition of Watani, the official magazine of the PA security forces which is published by the PA. The article is entitled "Conclusion of Military Course for Fatah Personnel and Ramallah," and reports on a ceremony marking the conclusion of a two week military course in which

---

[3] Exhibit 3a is the Arabic original; Exhibit 3b is an English translation. Plaintiffs obtained the translation from a professional translator but because plaintiffs only located this document yesterday (though defendants published it and should have produced it long ago) plaintiffs have not had time to get an affidavit of accuracy, and if defendants question the accuracy of the translation they are free to inform plaintiffs and plaintiffs will obtain an affidavit of accuracy.

80 Fatah members "underwent training in a variety of weapons and military skills." According to the article, at the ceremony, a speaker on behalf of Fatah:

> emphasized that the option of armed struggle still exists and that this course *complements the armed struggle which was started by the first heroes of Fatah in their struggle against the Israeli occupation government's policy of recalcitrance, which seeks to take over the land*, to Judaize Jerusalem and to continue its path of aggression and ignore the rights of our people

(emphasis added). Thus, defendants admit through their own publications that the purpose of such military training was to advance terrorism against Israeli targets. Moreover, this was not an isolated military training course, as the article refers to a call for other such courses to be conducted throughout the PA. Clearly, this is relevant to defendants' liability for the terrorist attacks later carried out by Fatah that are the subject of the instant lawsuit.

And, indeed, there is ample evidence that the military training described in the Watani article was just the beginning. A declassified Israeli military intelligence survey dated April 14, 2001 obtained by plaintiffs (**Exhibit 4**) states that in the summer 2000 the PA and Fatah operated <u>dozens</u> of paramilitary training camps in cities throughout the West Bank.[4]

<u>PA Topics 9 and 2</u>

Defendants also claim they cannot produce a witness to testify about the programs, policies and goals of a third party, as requested in topics 9 and 2. However, courts have required plaintiffs to provide proof of such knowledge in ATA cases. DE 296 at 6-7. Plaintiffs have already explained the reasonable basis for seeking 30(b)(6) deposition testimony on these topics. Plaintiffs have attempted to obtain this same information by other means, but defendants have failed to adequately respond.

---

[4] The undersigned is fluent in Hebrew and affirms that the attached document is a declassified Israel intelligence summary and contains the information described in the text above

Furthermore, defendants' claim that they cannot be asked to testify about their knowledge of the programs, polices and goals of Fatah is baseless and conflates and confuses discovery from a party about the *knowledge* of a third party – which is solely in the internal mind of the third party – with discovery about what the party knows about the *externally* stated and expressed polices, goals and program of a third party, of which an observer of the third party can become knowledgeable. Plaintiffs are not seeking to question the defendants about what *Fatah knew*, but rather about the extent to which *defendants knew* what Fatah's objectively observable and knowable programs, polices and goals were – whether on the basis of Fatah's official statements or publications, or otherwise. Courts regularly permit and require such discovery where, as here, a party's knowledge of a third party's *intentions and potential actions* are relevant. *See e.g. Cooper v. Federal Bureau of Prisons*, 453 Fed.Appx. 516, 518 (5th Cir. 2011) ("We conclude that Cooper should have been allowed to conduct discovery on whether prison officials knew that Jeffs was such a danger to his fellow prisoners that they were deliberately indifferent to the safety of other prisoners in failing to take steps to isolate him or otherwise protect other inmates.").

PA Topic 20

Here again, defendants appear to intentionally be creating confusion and ambiguity with respect to the obvious when they complain that topic 20 lacks specificity and requires them to designate a witness with knowledge of, *inter alia*, every store, home, and restaurant that any member of Hamas has ever entered. DE 305 at 11-12. Defendants' claim that a foreign government cannot be held liable for failing to jail or deport all members of a popular political party simply because a minority of the members act illegally misrepresents the law and what plaintiffs are seeking. DE 305 at 12. This claim is an improper attempt by defendants to draw the

Court into a ruling on ultimate issues of law, which the Court should not do, particularly in light of the relevant case law concerning the "safehouse" element of material support under the ATA cited in plaintiffs' motion. DE 296 at 8.

In addition, defendants are intentionally conflating the organization Hamas with its members. Plaintiffs are not seeking to hold defendants liable for allowing individual Hamas members and leaders to go about their private lives in PA territory. Rather, plaintiffs are seeking to hold defendants liable for allowing Hamas, *as an organization*, to operate in and from PA territory. Consistent with that notion, plaintiffs did not ask for information about homes and offices used by Hamas members in their private lives. Indeed, plaintiffs did not ask them for information about *individuals* at all. Instead, plaintiffs asked for information about real properties in PA territory used *by Hamas* – i.e. by the organization.

PA Topic 8(g) and PLO Topic 1(i)

Defendants argue that PA topic 8(g) and PLO topic 1(i), which seek a 30(b)(6) witness to testify about funding provided to Fatah are cumulative of discovery already produced to plaintiffs. DE 305 at 12. However, the produced documents concern only isolated transfers of funds to Fatah and do not reflect the full scope of defendants' financing of Fatah. The likelihood that defendants provided additional funding t Fatah not reflected in the produced documents is exemplified by the 30(b)(6) testimony of the PA's Nadime Barahme in *Shatsky v. Syrian Arab Republic*, Case No. 02-2280, D.D.C.), a case which involves many of the same issues as here. In that case, Barahme admitted that defendants fund all of the PFLP (the PLO faction relevant to that case) offices within the PA, but said that defendants were unable to locate all of the relevant documents because payments are not necessarily in the name of the PFLP, but may be in the name of the individual who received the funds on behalf of

9

the PFLP. *See 9/10/12 Barahme Deposition Testimony in Shatsky at 28:12-29:6; 29:16-30:17; 48:5-14*, attached hereto as **Exhibit 5**. Moreover, where defendants' funding of Fatah is an issue in the case, it is an appropriate topic for 30(b)(6) testimony. *See, e.g.*, *Doe v. District of Columbia*, 230 F.R.D. 47, 53-4 (D.D.C. 2005).

### B. Topics Relating to Documents Authenticity and Admissibility

Plaintiffs seek a 30(b)(6) designee to establish the authenticity and grounds for admissibility of documents defendants produced from their own files establishing their material support for the terrorists in this case. DE 296 at 2-3. Such testimony is proper for a 30(b)(6) designee. *See, e.g., Halbach v. Great-West Life & Annuity Ins. Co.*, 2007 WL 2153569 (E.D. Mo. July 19, 2007) ("The Court does not believe it is unreasonable to request a witness who can identify and authenticate documents provided by the opponent in the course of discovery, so that they can be admitted into evidence in a future court proceeding"); *Sanyo Laser Products, Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003) (noting that 30(b)(6) designee may "authenticate documents produced in discovery"); *see also McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 81 (D.D.C. 1999) (requiring foreign defendant to stipulate as to "authenticity and admissibility of all documents produced by [it]" in advance of telephonic 30(b)(6) deposition).[5]

Defendants oppose this crucial topic which is absolutely required, particularly since any such foundational witnesses are outside the Court's subpoena power and

---

[5] *Sahu v. Union Carbide Corp.*, 2010 U.S. Dist. LEXIS 134445 (S.D.N.Y. Dec. 20, 2010) does not help defendants. There, the court found plaintiffs' need for authentication to be minor because plaintiffs were only seeking explanation as to one document and the parties had not previously indicated that they would contest authenticity. Here, plaintiffs are seeking authenticity and admissibility testimony concerning between 500 and 1000 pages of documents, consisting of two to three categories and defendants have expressly denied requests for admission seeking the same information as to at least a subset of those documents.

plaintiffs cannot admit evidence at trial without the proper foundation. Defendants present this request as extremely burdensome, misleadingly claiming that it asks them for a witness on "9000 pages of documents" they have produced in this case and they cannot be expected to determine the origin of all such documents. DE 305 at 13. However, the request relates only to those documents produced by defendants from their own files, well under 1000 pages of documents from limited sources within the PA (i.e., employment records and payment documents and records of prisoner payments and martyr payments). Most of these documents were produced only recently in December 2012 and January 2013 after defendants were already on notice that plaintiffs would be seeking a 30(b)(6) deposition on this topic. It is hard to believe that defendants would have difficulty determining the sources for these recently produced documents. Plaintiffs cannot know at this stage in the litigation exactly which documents they will need to use at trial and plaintiffs cannot wait to establish foundation for the admissibility of these documents.

Defendants' argument that plaintiffs can seek this information via other means, such as requests for admission, is disingenuous at best. DE 305 at 13. Plaintiffs served requests for admissions upon defendants on November 20, 2012. Many of those requests sought an admission as to the authenticity and admissibility of specified records produced by defendants (though there are more that require foundation, including the 400 pages of late produced reference in n. 2, *supra*). While defendants admitted the authenticity of the specified records, they denied every single request for admission concerning authenticity of the documents as defined in F.R.E. 803(6). *See, e.g.,* defendants' responses to plaintiffs' requests for admissions nos. 23-24, 33, 35, 60, 62, **Exhibits 6a and 6b**.

### C. Topics Relating to Various Palestinian Perpetrators

11

Defendants object to plaintiffs' requests 1, 3 and 4, which seek information regarding the requests made to the PA by the United States and Israeli governments to arrest five of the perpetrators prior to their perpetration of the attacks at issue in the instant lawsuit, and any action taken in response. DE 305 at 14-15. Defendants' sole objection is that plaintiffs did not "reframe these topics." DE 305 at 15. To the contrary, consistent with the Court's direction at the December 20 conference, plaintiffs significantly limited these topics seeking a 30(b)(6) witness concerning only five of the perpetrators. DE 296 at 5, n. 3. Moreover, plaintiffs have explained the relevance of this topic to their claims. DE 296 at 5. Plaintiffs are entitled to discovery on this topic. Defendants are free to come forward with a proposal to further limit it, but cannot avoid their discovery obligations altogether by making blanket claims that topics are overbroad and then refusing to confer about them.

**Wherefore**, plaintiffs respectfully request the Court to grant their motion.

January 28, 2013                            Plaintiffs, by their Attorneys,

                                              /s/ Robert J. Tolchin

                                            Robert J. Tolchin
                                            111 Livingston Street, Suite 1928
                                            Brooklyn, New York 11201
                                            (718) 855-3627
                                            Fax: (718) 504-4943
                                            rjt.berkman@gmail