1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK
2

3   ----------------------------------------X
                                            :
4   SOKOLOW, et al,                         : 04-CV-397 (GBD)
                                            :
5                     Plaintiffs,           : February 13, 2013
                                            :
6              v.                           : 500 Pearl Street
                                            : New York, New York
7   PALESTINE LIBERATION ORGANIZATION, et al, :
                                            :
8                     Defendants.           :
    ----------------------------------------X
9

10        TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
                BEFORE THE HONORABLE RONALD L. ELLIS
11                UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For the Plaintiffs:          ROBERT TOLCHIN, ESQ.
                                 The Berkman Law Office, LLC
14                               111 Livingston Street
                                 Brooklyn, New York  11201
15

16
    For the Defendant:           BRIAN A. HILL, ESQ.
17                               Miller & Chevalier, Chtd.
                                 655 15th Street NW, #900
18                               Washington, D.C.  20005

19

20
    Court Transcriber:           SHARI RIEMER
21                               TypeWrite Word Processing Service
                                 211 N. Milton Road
22                               Saratoga Springs, NY 12866

23

24

25


    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service

2

1          THE CLERK: Good morning.  This is Judge Ellis.

2    Could I have your appearances beginning with the plaintiff?

3    Hello?

4          MR. TOLCHIN:  Good morning, Your Honor.  Can you

5    hear me?

6          THE COURT: I can hear you.  Can you hear me?

7          MR. TOLCHIN:  I hear you fine.  Thank you.  This is

8    Robert Tolchin here for the plaintiffs from the Berkman Law

9    Office in Brooklyn, New York.  I also have on the line with me

10   an associate who's working on the case, Rachel Weiser.  She is

11   a member of the Ohio Bar.  She is in the process of preparing

12   her -- getting her certificate of good standing to move for

13   pro hac vice admission in this case.  Given that she's in some

14   respects the brains of the operation I would respectfully ask

15   that if the need comes up for her to say something that it be

16   allowed in the Court's discretion.

17         THE COURT: All right.  She may appear and

18   participate.

19         For the defendants.

20         MR. HILL:  Your Honor, it's Brian Hill and Marco

21   Roshan from Miller & Chevalier in Washington for the

22   Palestinian Authority and the PLO.

23         THE COURT: Okay.  This is a conference in Sokolow v.

24   PLO, et al., 04-CV-397.  It is Wednesday, February 13th at

25   approximately eleven a.m.

3

1          There are a number of issues that the parties have

2     raised in their submissions to the Court.  Let me begin by

3     saying that the parties are right on the verge of being

4     prohibited from submitting anything to the Court without

5     permission.  You're sending entirely too many things and

6     they're not really moving the ball forward but in any case I

7     will address the -- I have a number of issues that the parties

8     have raised.  Let me -- not in any particular order.

9          The first one concerns discovery deadlines,

10    particularly expert discovery and disclosure deadlines.  If

11    I've not made myself clear let me state my position with

12    respect to discovery.  First of all, with respect to fact

13    discovery, fact discovery is closed except to the extent that

14    matters were raised before the end of the discovery deadline

15    and all of those matters will be resolved if it requires

16    additional discovery because of the resolution of those

17    matters then the Court will order further discovery.

18          So until the matters that have been raised before

19    the deadline have been resolved, those open matters will be

20    before the Court and obviously before Judge Daniels on appeal.

21          With respect to the expert discovery, I did not

22    intend and I did not change the expert discovery deadline when

23    we talked about the factual discovery deadline.  However, that

24    does not prevent either party from asking for an extension of

25    the expert discovery deadline.  The reason I don't change

4

1  expert discovery deadline when we -- unless it's specifically

2  brought up is because it's not -- it's not true in all cases

3  that the expert discovery is necessarily going to be delayed

4  while we address the factual disputes that have not been

5  resolved after the expert -- after the fact discovery deadline

6  has closed.

7          However, there could be any number of reasons why

8  one or other of the parties may seek to have the expert

9  discovery deadline changed and you're certainly free to make

10  application.  Frankly I think that as regards to typical -- as

11  regards to judges, I'm probably liberal in the changing of

12  deadlines as opposed to some judges who are more rigid in

13  their deadlines.  I don't know what issues your experts have

14  in preparing discovery.  I don't know what their availability

15  is but clearly issues can arise with respect to experts which

16  are separate and apart from what happens in fact discovery.

17          With respect to the factual disputes that were not

18  resolved, first regards the plaintiff's motion which is a

19  follow up to the December 20th order concerning the 30(b)(6)

20  request from the plaintiffs, I have reviewed the

21  reformulations that the plaintiffs have with regard to the

22  30(b)(6) topics and it served to confirm my belief that the

23  matters that have been designated as 30(b)(6) topics are not

24  appropriate topics for 30(b)(6) and should have been the

25  subject of either interrogatories or request to admit and that

5

1  given the broad scope of the information sought while it is

2  true that in a 30(b)(6) a party is obligated to bring someone

3  up to speed on the topics, and I believe I expressed this

4  before that the 30(b)(6) is more designed for a witness who

5  can talk about policies and to just fill an empty vessel with

6  factual information is not an appropriate way to use 30(b)(6).

7  So that request is denied for 30(b)(6) designation.

8         With respect to the defendant's request to compel

9  substantive answers to the request to admit, that request for

10  relief from the defendant is denied.  While I think requests

11  to admit are a good vehicle for narrowing the issues that are

12  going to be the subject of trial and certainly for aiding such

13  issues as to whether or not documents are authentic, the

14  specific kinds of things that the defendant sought the

15  plaintiff to admit I find are not appropriate.  That is that

16  to submit documents to the plaintiffs and say now admit that

17  we are corporations or partnerships or unincorporated is not

18  an appropriate use of admissions, that admissions are

19  basically a way to as I said narrow the factual disputes that

20  the parties have but it's useful when there are discrete and

21  non controversial factual matters as I said perfectly suitable

22  for documents, perfectly suitable for facts that are dates or

23  names or other things that are not subjective.  So I find that

24  the request to admit in this case got the kind of response

25  that one gets when one asks those kinds of questions.

6

1      While I don't think that the plaintiff's response
2 was particularly helpful I think that was really a result of
3 the defendant asking the kind of questions that made it
4 problematic for the plaintiffs to answer.  I think it would
5 have been better for the plaintiffs to frankly just object to
6 the request to admit as improper but I'm correcting that issue
7 now.

8      With respect to the defendant's request for
9 plaintiffs to be compelled to provide substantive answers to
10 the November 20th contention interrogatories, I find that the
11 plaintiff's answers -- well, first of all, that the
12 defendant's requests were served timely and are not premature
13 and that the plaintiff should be required to submit proper
14 answers and/or objections to those contention interrogatories.
15 I make no ruling as to what would be an appropriate answer,
16 whether or not the contention interrogatories or the answers
17 would be covered by any privilege but if they -- if the
18 plaintiffs believe that they are then there should be a proper
19 privilege log submitted with respect to any of the
20 interrogatory answers that the plaintiff believes that
21 encroach upon any privilege that would be [inaudible - phone
22 cut out].

23      With respect to the request that the plaintiffs have
24 regarding the production of documents that appear -- as far as
25 I can tell there are in Arabic.  First of all, there seems to

7

1  be a factual dispute and I just wanted to make sure I

2  understood.  I think in the plaintiff's submission they said

3  there were nearly 400 pages of information relating to PA

4  security officers but that the defendant's response that there

5  are only 49 pages of the documents that were in -- that were

6  not in English, if anybody could clear that up for me before I

7  rule.

8          MR. TOLCHIN: Rachel, would you --

9          MS. WEISER: Your Honor, I don't believe that that's

10 true and I also don't think that was actually defendant's

11 representation.  I think what they said was some of the

12 documents had some English in them and some of the documents

13 had some Hebrew and there were only 49 pages that were fully

14 Arabic but the vast majority of the documents even though they

15 had some English, even though they had some Hebrew still had

16 Arabic on them.  So the vast majority of the documents were

17 still Arabic documents.  There may have been a little bit of

18 English on a page here or there, a little bit of Hebrew or

19 maybe not a large amount but as I recall, and I did not go

20 through all of them, Judge, but as I recall the vast majority

21 of the documents did have Arabic on them.

22         MR. HILL: Your Honor, it's Brian Hill if I could

23 just be heard briefly.  So what I wrote in my letter to you

24 dated February 1st which is accurate says the production at

25 issue contains 386 pages of material, 54 pages of which

8

1    contain English, 57 pages of which are in Hebrew, and 49 pages

2    of which contain both Hebrew and Arabic.  So those are the

3    accurate numbers with respect to the document production we

4    made in January on the 18th.

5              THE COURT: Okay.

6              MS. WEISER: Correct.  And then the rest of the

7    documents were all in Arabic.

8              MR. HILL: Unsurprisingly --

9              MS. WEISER: There are still over 150 documents that

10   are all in Arabic and then there were another 100 produced a

11   week later but are also mostly in Arabic.

12             MR. HILL: As Your Honor will expect given that our

13   client's primary and official languages are Arabic that's the

14   native version of the documents.  The issue I think is whether

15   we're required to produce our translations and I'm prepared to

16   address that if the Court wants to hear from me about it.

17             THE COURT: Well, first I guess -- that brings up my

18   second question is in responding to the discovery requests

19   counsel of course has to determine whether or not there are

20   responsive documents.  I'm curious as to how one makes that

21   determination without having a translation.

22             MR. HILL: I have -- we have lawyers at our firm that

23   we can read Arabic, Your Honor.

24             THE COURT: So those lawyers read it and determined

25   that they were responsive to the requests?

1          MR. HILL: Yes, sir.

2          THE COURT: Now, you want to talk to me about how

3    this is work product or something else?

4          MR. HILL: Yes.  What's happened, Your Honor, is as

5    you may expect there are certain documents that we lawyers in

6    consultation among ourselves determine might benefit from an

7    informal written translation.  We have for approximately 100

8    or so pages of the material that was produced in January and

9    February had outside firms prepare informal non certified

10   translations of these materials at our client's expense and we

11   have utilized those materials to make decisions about whether

12   documents are produceable or privileged and responsive, et

13   cetera.  So these are work product for two reasons.

14         One, the translations themselves are at least

15   ordinary work product because they were prepared because of

16   litigation.  They did not preexist the litigation.  They were

17   prepared only for the purposes of determining whether the

18   underlying native Arabic documents were responsive and should

19   be produced.

20         But then there also mental impressions of myself and

21   my fellow attorneys at Miller & Chevalier who decided which

22   documents we wished to have informal translations prepared

23   about because they reflect our views of which ones we thought

24   were worth incurring that expense, and if we're required to

25   turn them over it will not only be giving the plaintiffs our

10

1  ordinary work product which we paid for and our clients paid

2  for but it will be telling them which ones we as lawyers

3  thought were important enough to have translated.

4          So because they are reflective of our mental

5  impressions they are attorney work product and therefore

6  cannot be produced under almost any circumstances but even if

7  Your Honor were to believe they were only ordinary work

8  product they can't be produced unless the plaintiffs can't get

9  the information in another fashion and of course the

10  plaintiffs can get it in exactly the same fashion we have.

11  They have lawyers that they're affiliated with who can read

12  Arabic.  Those lawyers can read the documents and decide what

13  use, if any, the plaintiffs want to make of them or they could

14  as we did have someone informally translate them for them at

15  their own expense.

16          So this is not a scenario where the work product can

17  be pierced.  There's no substantial need for the material and

18  there would be no undo burden on the plaintiffs in obtaining

19  their own translations either from their own lawyers who can

20  read Arabic or from some commercial service.

21          MR. TOLCHIN: Your Honor, it's Bob Tolchin here.  May

22  I be heard in response?

23          THE COURT: Yes, go ahead.

24          MR. TOLCHIN: First of all, it's just not true that

25  we have lawyers who read Arabic or speak Arabic.  I mean I

11

1    took a year of Arabic in college.  I can make out a few items

2    on a menu but that doesn't let me translate legal documents.

3    We have another lawyer who works with us who knows a little

4    pigeon Arabic and could make out some words here and there but

5    he's hardly a translator and he can hardly read these

6    documents.

7         One thing that Mr. Hill just said that surprises me,

8    maybe even shocks me is that when we had a meet and confer

9    about this issue Mr. Hill represented to me that there were 20

10   pages of documents that they had translated.  Now he's telling

11   the Court that it's actually 100 pages of documents that he

12   had translated.  That factual inconsistency catches my

13   attention.

14        More than that, the other issue that jumps out at me

15   is we still have no explanation whatsoever as to why these

16   documents, particularly the documents that are the defendant's

17   own documents, internal records were only produced in January,

18   not -- on three different occasions in January after the end

19   date for discovery.  These are not esoteric documents that

20   they had to go and get from far and wide sources.  These are

21   their own documents and they've been responsive to demands

22   made all along.

23        Did we just lose somebody on this call?

24        THE COURT: Not --

25        MR. TOLCHIN: Or is everybody here?

12

1          THE COURT: The Judge is still here.

2          MR. HILL: The defendants are still here.

3          MR. TOLCHIN: Okay.  I just heard a beep.  I was

4     concerned.

5          What we've had in -- from our perspective what we've

6     had in this case is a pattern from the beginning of the

7     defendants needing time and needing time and then telling us

8     that here's some documents, we're still investigating, there's

9     been an ongoing "investigation" and we've gotten documents in

10    dribs and drabs right down to getting 500 pages in Arabic

11    after the end date, the original end date for discovery with

12    no translations, no explanations where they came from.

13    Nobody -- they're not even prepared to agree that these

14    documents are authentic copies of what's in their -- of their

15    own business records.  So they put us in the position of

16    getting these documents, not knowing what they are, having to

17    engage -- take weeks with translators to go through them and

18    even in the end they're not even going to agree that these

19    documents can be put in evidence.

20         They've left us no avenue to inquire about them, to

21    depose a witness about them, to develop any themes that are in

22    the documents or even -- some of the documents, what we see,

23    and I'm just using this as an illustration, there's a record

24    from August and a record from June but there's no record from

25    July.  So it begs the question where are the records from July

1  and that's the sort of thing you would follow up if this had

2  been produced near the beginning of discovery.

3        We really feel that we have been prejudiced and

4  sandbagged here.  There's still discovery to do.  There's

5  still documents that the documents they've produced make it

6  clear to us that there's other documents that are missing that

7  need to be followed up and I hear everything Your Honor said

8  about the discovery end date and what the Court's intention

9  was.  I'm sorry that I was not at that last appearance when

10 Mr. Schoen was involved when that was [inaudible].  I didn't

11 get to hear it the dialogue personally but we really are being

12 put in a very difficult position here in terms of being able

13 to proceed with the case and ultimately to have it decided on

14 its merits and not by tricks and traps that were engineered in

15 the discovery process.

16       Why did the defendant wait to produce these

17 documents until January even though they keep repeating that

18 the discovery was supposed to end in December and when now we

19 say give us the translation, give us at least the translations

20 you have so that we can expedite the process they tell us no,

21 sorry, that's work product but we don't have to explain

22 ourselves.

23       THE COURT: Well, let me talk -- explain my position

24 to both of you.  First of all, these are documents that were

25 produced by the defendant ostensibly because they are relevant

14

1    to an inquiry made by the plaintiffs, not objected to as

2    irrelevant to any claim or defense in the case.  Therefore,

3    the Court's first determination is that these are documents

4    that ought to be produced and ought to be produced in a manner

5    and a way that makes them useable.

6            Secondly, in order for the document to be used when

7    you're dealing with documents that are in a different language

8    from the language that's going to be used in the Court, the

9    suggestion by the defendants that the plaintiffs get their own

10   translation seems to me to be at odds with practicality and

11   with the rules because what that may mean is that you'll have

12   multiple translations.  Given what happens in foreign

13   languages it seems to me that from the Court's point of view

14   the appropriate thing to do is to have one translation which

15   the parties agree on hopefully but at least one translation

16   instead of having multiple translations so that the Court can

17   have something to determine further if there are any issues

18   that come up concerning the documents.

19           I take it seriously the defendant's representation

20   that there could be implications about work product.  What

21   that suggests however is given the magnitude of the documents

22   they're talking about it makes more sense to produce all of

23   the documents so that we have one unified block of documents

24   that are translated into English.

25           The defendants will be required to provide

15

translations of all of the documents that have been submitted

in discovery with an appropriate English translation.  This

does not require them to say which ones were previously

translated or which ones have -- will be translated in an

effort to provide a full exposition of the English

translations.

        The defendants will, if they so desire, provide for

the Court a tally of the costs of any translations.  If the

defendants want to make any application for shared costs the

Court will consider that without making representations at

this point concerning how the Court will rule but I do think

it benefits not only the plaintiffs but the defendants and the

Court to have one translation.

        MR. HILL: So, Your Honor, let me make a couple of

points if I may.  First, the Court may not appreciate it but

the order you have just given us will require probably

hundreds of thousands of dollars in translation costs.  The

vast majority of the material that we've produced in foreign

languages has not been translated and if we're now required

to --

        THE COURT: Let me stop you.  Obviously you're right,

I did not -- I did not appreciate that a translation of the

number of pages that we're talking about requires hundreds of

thousands of dollars.

        MR. HILL: It does, Your Honor.  And the other point

16

1  about equity --

2          MR. TOLCHIN: Your Honor, could I volunteer a

3  suggestion that I think that might be very practical?

4          MR. HILL: Mr. Tolchin, if I could finish I would

5  appreciate it.

6          THE COURT: Let me hear Mr. Hill first.

7          MR. HILL: Your Honor, we have also received from the

8  plaintiffs over the course of the discovery thousands of pages

9  of Hebrew language documents for which we have received no

10  translations.  So if the Court is concerned about the parties

11  bearing expenses of translating material produced by their

12  opponents -- I don't have the numbers in front of me but I am

13  sure that we have received if not a comparable number of

14  foreign language documents from the plaintiffs for which we've

15  been provided -- Mr. Roshan is indicating to me it may be more

16  than we have produced for which we have been provided no

17  translations.  It would be inequitable if this doesn't run

18  both ways.

19          THE COURT: Well, first --

20          MR. HILL: I would suggest, Your Honor, at this point

21  in the process --

22          THE COURT: Mr. --

23          MR. HILL: Go ahead.  I'm sorry.  I didn't mean to

24  cut the Court off.

25          THE COURT: Mr. Hill, first of all, as I said, once

17

1  you mentioned the terms hundreds of thousands of dollars

2  you've already changed the equation.  No one has -- none of

3  the submissions as far as I can tell said anything about the

4  costs of these translations.

5        MR. HILL: That's right.  Your Honor, if I could make

6  this point.  I don't think the plaintiffs were even asking

7  that we be ordered to translate material that we have not

8  already translated.

9        MR. TOLCHIN: If I could -- maybe I could suggest a

10  practical suggestion.  I agree with Mr. Hill that probably

11  everything that's been produced doesn't necessarily need to be

12  translated.  A lot of things can be duplicative or can be just

13  not particularly important but there's -- probably there would

14  be a benefit to the two sides conferring and we can probably

15  narrow things down to some kind of a practical more limited

16  universe of things to be translated or for translation to

17  be -- that already exists to be produced rather than just

18  saying translate everything.

19        THE COURT: Well, of course the word everything is a

20  broad word.  Am I to understand that if you're going to

21  translate 100 or so pages from Arabic to English, we're

22  talking about hundreds of thousands of dollars?

23        MR. HILL: That would be tens of thousands, Your

24  Honor.

25        THE COURT: And how many pages are we talking about

18

1  then?  Maybe --

2          MR. HILL: I don't have all of the numbers in front

3  of me.  Over the course of discovery we've produced 9,000

4  pages of material.  Not all of that is in foreign languages.

5  Some is in English.

6          THE COURT: I'm only talking about the documents that

7  we were specifically talking about at this point, the 386

8  pages or the 100 or so pages.

9          MR. HILL: I misunderstood the scope of Your Honor's

10  ruling then.  Since the close of discovery we have produced

11  approximately 600 pages of material.  I don't have the numbers

12  of the plaintiff's production.  At the time I wrote my letter

13  a couple of weeks ago they had given us about 250 pages of

14  foreign language material since December 21st.

15          THE COURT: Okay.  Again, I was only addressing the

16  specific translations that had been put into issue that have

17  been raised since December.

18          MR. HILL: Okay.

19          THE COURT: And those numbers that we talked about

20  earlier, 57 pages here, 49 pages there.  It was not an attempt

21  to have you go back and translate everything that's been

22  produced in this case.

23          MR. HILL: Thank you for that clarification, Your

24  Honor.

25          So in light of that let me just make this point

19

1    then.  It would still be 10,000 or more probably in the 20 is

2    my guess to get the material that's been produced since

3    December translated into English.  If Your Honor is requiring

4    that you're requiring it and we'll proceed accordingly.  We

5    really don't think it's equitable or necessary.  The nature of

6    these documents --

7            THE COURT: I understand and I may have misunderstood

8    what you said but I understood that you've already translated

9    some of them.  So we're only talking about the ones that you

10   haven't translated and that the -- but you won't be required

11   to separate which ones were more recently translated from

12   those that were translated before.

13           MR. HILL: I understand.  Your Honor, what Your Honor

14   is attempting to do is conceal my opinion of work product by

15   requiring us to translate the whole group so that they can't

16   tell which ones we had previously translated.

17           THE COURT: Well, that's not my only intent.  I'm

18   taking that into account.  I think frankly to the extent that

19   we're dealing with relevant documents and since the issue was

20   brought up with respect to these documents that the resolution

21   of this particular dispute is best served by having these

22   documents translated but the lateral benefit to you is that to

23   the extent that you have a claim of work product you can

24   maintain that.

25           But, anyway, as I said --

20

1        MR. HILL: Your Honor, if we -- I've been conferring

2    with Mr. Roshan through notes at the table.  It would actually

3    be our preference to not have to incur the expense of the

4    additional translations.  We've produced I think approximately

5    100 or so out of the 600 pages rather --

6        MR. ROSHAN: We translated.

7        MR. HILL: I'm sorry.  I beg your pardon.  We have

8    informal translations of those materials.  If we had the

9    option of just turning over the extent ones as opposed to

10   incurring additional expense that would be our preference I

11   think if Your Honor would allow that.

12       THE COURT: Does that mean that with respect to those

13   you'd waive any claim of work product?

14       MR. HILL: As Your Honor has put me in the position

15   that you have put me in that would be my preference to it as

16   opposed to having our clients incur the additional cost.  Our

17   view is, Your Honor, just as we've mentioned in the letter,

18   you said these are relevant documents.  These are marginally

19   relevant at best.  They are responsive to the plaintiff's

20   requests.  That's why we produced them.  These are not going

21   to be important documents in the course of the case and we'd

22   rather not have our clients incur that additional expense of

23   translating more of these marginally relevant documents.

24       I'd also make this point, Your Honor --

25       THE COURT: Who's speaking?

21

1          MR. HILL: I'm trying to make one point if I could,

2   Your Honor.

3          THE COURT: Mr. Hill, are you finished?

4          MR. HILL: No, Your Honor, I'd like to make one more

5   point if I could.  The translations that we have are not going

6   to be admissible in court.  They are not certified.  They're

7   not the sort of thing that is going to be able to be offered

8   as an English translation in court.  If any of these documents

9   are going to get offered into evidence there's going to have

10  to be another official certified translation for these things

11  to come in.  So these are as I've said just informal quick and

12  dirty written translations that we obtained to make production

13  decisions.  They are not going to be admitted at trial or on a

14  motion in the case.  If any of these documents are going to go

15  into evidence an additional expense is going to have to be

16  incurred in the future anyway to get a certified English

17  translation that can be used.

18          THE COURT: I trust you're telling that to your

19  opposition, not to me.

20          MR. HILL: Well, to the extent Your Honor's ruling

21  was premised on the idea that money had already been spent

22  that was going to be useful for future evidentiary purposes I

23  just wanted the record to reflect that that is not the case in

24  our view.

25          THE COURT: Well, even a preliminary translation is

22

1   going to be useful for future purposes.

2           But anyway, Mr. Tolchin.

3           MR. TOLCHIN: Yes, Your Honor.

4           THE COURT: I thought somebody else was trying to

5   speak.  I thought maybe it was you.

6           MR. TOLCHIN: Yes, I just wanted to say that where

7   Mr. Hill says that these documents are not important in his

8   opinion I don't want my silence to be interpreted as agreeing

9   with that.  They may be important.  Some of them may be very

10  important but I don't think this is the moment we need to hash

11  that out but I didn't want to be construed as agreeing.

12          THE COURT: Okay.  Just so we have a full discussion,

13  what were you about to say about -- you had a suggestion.  I

14  don't know whether it was with what you thought I was ordering

15  or --

16          MR. TOLCHIN: Yes.  The suggestion was that we

17  would -- that rather than translating the entire universe of

18  documents perhaps we could confer and narrow it down to the

19  ones -- to the documents that seem to be more important but I

20  think our conversation has been -- has evolved since that

21  point.

22          THE COURT: All right.  In view of the additional

23  information provided concerning costs, and I do want to remind

24  both sides that as I said I don't think there's anything in

25  rules that prevents either party from requiring a party to

1  share costs when it comes to either translating information or

2  putting information in a way that's useable by both sides,

3  whether it's including e-discovery or whatever it is.

4         Having heard the [inaudible] involved and taking

5  into account that the considerations that the defendant is now

6  waiving I -- and minimizing costs as required by Rule 1, what

7  I'm going to require the defendants to do is produce any

8  translations which they have already made.  Plaintiffs can

9  review those translations informal though they may be and

10  that -- if either party believes that there's any follow up to

11  this particular issue we will follow up on it.

12         MR. HILL: Your Honor, just so I'm clear.  If we do

13  want to seek a portion of the costs that we've incurred for

14  these materials -- I don't have those numbers in front of me

15  now -- could we just send you a letter if we can't agree with

16  Mr. Tolchin on that issue?

17         THE COURT: Okay.  As to -- the short answer is you

18  should confer about it.  As I said, I have -- I've made no

19  representations that -- just because I brought up the issue

20  that there's -- I'm directing that there be sharing because I

21  don't know what the nature of the or the extent of the costs

22  are.  To some extent if you've incurred costs before and

23  without being ordered by the Court it's -- I'm not sure what

24  argument you would be making as to why there should be a post

25  hoc sharing but in any case you may have discussions with Mr.

24

1  Tolchin and Mr. Tolchin, you may get the translations and

2  after that I'll see what you guys come up with.  I'm sure

3  you'll come up with something.

4          MR. HILL: Thank you, Your Honor.

5          Just one final point of clarification.  In light of

6  the ruling Your Honor made at the beginning, I just want to be

7  sure that I understand that my expert reports are still due on

8  February 21st under the terms of the existing scheduling order.

9          THE COURT: If that's what the existing scheduling

10 order says.  As I said, if some of -- if some of the

11 uncertainty that's happened recently requires some -- let me

12 reiterate what I always say is that I expect the parties to

13 discuss it among themselves and if they're not able to agree

14 then they'll make application for me and always admonish the

15 parties that are in discussions that they should never

16 withhold their consent without a good justification because

17 then they'll have to explain it to me.

18         MR. HILL: I didn't want to be in the posture of

19 serving my reports on the 21st only to have an application from

20 the plaintiffs to serve theirs out of time.  That's why I was

21 raising it now.

22         THE COURT: Well, I --

23         MR. TOLCHIN: Well, we've certainly -- I don't need

24 to tell you, Your Honor.  This is Bob Tolchin.  We're

25 certainly going to make that application and I was about to

1  raise with Your Honor on a letter -- does Your Honor feel I

2  should make that application now or by letter?  I'm hesitant

3  to send a letter because --

4          THE COURT: Since I have you --

5          MR. TOLCHIN:  -- I understand we've sent too many

6  letters.

7          THE COURT: Since I have you here and Mr. Hill is

8  obviously interested in why you would need additional time,

9  what's the reason for the need for additional time?

10          MR. TOLCHIN: I need to back up a little bit because

11  there's a second overriding issue that [inaudible] expert

12  issue.  I understand that Your Honor made a ruling about the

13  30(b)(6) topics and Your Honor -- as I understand Your Honor's

14  ruling these issues should be pursued by interrogatory or

15  other discovery means rather than 30(b)(6).

16          THE COURT: Actually, to be clear, Mr. Tolchin, I

17  hope that what I said is that they should have been, not that

18  they should be.  It was not an invitation to tell you that you

19  actually have the ability to follow through with

20  interrogatories.  I guess -- if I left that impression that's

21  not what I meant to say.

22          MR. TOLCHIN: Well, that's why I wanted to clarify

23  because this issue about these 30(b)(6) depositions has been

24  kicking around for months already since well before the

25  discovery end dates, months before the deadlines for experts

26

1  and I understand there was a process.  There was a conference

2  and a motion and then a -- and then Your Honor directed a

3  follow up submission and here we are in February and without

4  these topics being addressed in discovery we really have a

5  problem.  There's [inaudible] topics.  They're important

6  topics to the case and I understand that the choice between

7  one discovery mechanism and another is within the Court's

8  discretion perhaps to a point but we thought that 30(b)(6)

9  notices were the better way to pursue this and the Court has

10  made a ruling but I would make an application right now to be

11  allowed to serve an interrogatory or a set of interrogatories

12  addressing these topics.  All the topics are important.  One

13  jumps out as just critical which is the issue about the

14  authentication of the defendant's own documents, the

15  defendant's own business records produced from the defendant's

16  files which they do not authenticate.  They refuse to even

17  when we have served requests for admission about them they

18  give us back a half answer so that's not -- they agree that

19  they're documents but they refuse to admit business records

20  and admissible under the applicable rule of the Federal Rules

21  of Evidence.  So we -- what we wind up with is documents that

22  [inaudible].

23       Now, we would like to -- we would have liked to

24  depose a record keeper, a custodian of records to authenticate

25  the documents.  I understand Your Honor has made a ruling and

27

1   Your Honor also observed that we could pursue those things

2   through a request to admit.

3               THE COURT: Well, let --

4               MR. TOLCHIN: I'd like an opportunity to do that.

5               THE COURT: Let me, let me also be clear that I try

6   not to impose how I would litigate a case on the litigants

7   although I'm -- it's not entirely clear to me that if you

8   submitted some of the defendant's documents to them in a

9   request to admit and you didn't get an appropriate answer why

10  the issue wasn't a motion to compel, answers to the request to

11  admit instead of seeking a 30(b)(6).  Because if they didn't

12  appropriately answer a request to admit to authenticity of

13  documents that would seem to me have been an appropriate

14  follow-up during the discovery process.

15              MS. WEISER: Your Honor, they denied those requests

16  so there wouldn't have been a motion to compel.

17              MR. HILL: Your Honor, this is Brian Hill.  If I

18  could just be heard on this.  We did not deny requests to

19  admit the authenticity of documents we produced.  The

20  plaintiffs are just incorrect about what our answers say.

21              MR. TOLCHIN: Say it out loud.

22              MS. WEISER: [Inaudible] request to admit that they

23  were business records or some form of a record that we could

24  then admit.  Admitting [inaudible] doesn't complete the

25  problem.

1          THE COURT: All I can -- again, I'm not sure we can

2    resolve this issue.  What I'm saying though is that the

3    documents -- documents are perfectly suitable for request to

4    admit when it comes to authenticity as opposed to trying to

5    get a bunch of documents in with a 30(b)(6) who has no -- who

6    often won't have any independent basis for making that

7    determination even if you fill them full of information.  But,

8    on the other hand, if you do a request to admit then the party

9    has to either admit or deny based on information that's within

10   the organization's collective wisdom.  So Mr. Hill says they

11   did not deny.  I can't relate to the different positions the

12   parties are taking because this was actually never presented

13   to me.

14          MR. TOLCHIN: Your Honor, when we got their answer to

15   the 30(b)(6) -- I'm sorry.  When we got their answer to the

16   request to admit we said okay, they're not going to give us a

17   straight answer that we can -- I'm sure Your Honor has seen in

18   many, many cases -- I know Your Honor litigated cases yourself

19   before being a judge.  Most of the time litigants stipulate to

20   te admissibility of their own records.  That's rarely actually

21   made an issue.  In this case they refused to stipulate and

22   when we asked them to -- in a request to admit just to admit

23   that they're business records admissible under the Federal

24   Rule of Evidence --

25          THE COURT: Okay.  Hold --

29

1              MR. TOLCHIN: I forget the number that applies to

2    business record.  They say a cryptic answer yes, it's

3    authentic but no, we're not going to agree that it's

4    admissible.  They're playing a game with us that here's the

5    documents, we produced them in discovery.  They know that

6    because they're located -- their client is located overseas in

7    Ramalia in West Bank they know we can't subpoena a record

8    keeper for trial and they are using this as a tactical trick.

9    We tried to get an admission in a request to admit.  We've

10   asked will you just agree that your own records are

11   admissible.  They won't agree to that.  We tried with a

12   30(b)(6) notice to get the deposition of a custodian of

13   records to authenticate them and lay the foundation and they

14   objected to that.

15             So we really are -- we really are in a box, not of

16   our own making I would submit, and yes, perhaps we might have

17   come to the Court about the RFA response, the request for

18   admission response before but we decided to try to go about it

19   another route and then bring the whole picture to the Court.

20   So we thought it would be more -- we didn't want to come to

21   Court about the RFAs and then have them argue well, they

22   should have done a 30(b)(6) notice.  We tried to pursue every

23   avenue and then come here and we did come with this issue long

24   before the end of discovery.

25             That's the issue about the authentication but

30

1   frankly the other topics that we wanted to inquire about in

2   the 30(b)(6) depositions are also important.  Why did we

3   pursue it with a 30(b)(6) notice and not interrogatories?

4   Frankly, in my opinion, the responses that we have gotten to

5   interrogatories particularly in this case from these

6   defendants have been singularly unhelpful.  They're couched in

7   myriad objections.  They give very little information and they

8   tend to give information only that they know we have already

9   and they usually are couched with the disclaimer that they're

10  still conducting an investigation and they'll get us more

11  information later.

12          THE COURT: Mr. Tolchin, I understand what you're

13  expressing as some frustration.  However, as I said -- it's

14  hard to second guess if you believe that you're getting the

15  run around but it always seemed to me and I will tell you that

16  when it came to documents and those kinds of things, request

17  for admission always seem to be a good way because if you get

18  an answer from the other side then they either admit or deny

19  or they're required to tell you in detail why they cannot

20  admit or deny.  Any equivocation already presents a problem.

21          Now, I know that you can't go back and know how I

22  would have addressed it but frankly for me if you do a request

23  to admit and the person doesn't admit it they've got some

24  serious explaining to do.

25          MR. TOLCHIN: Well, they have --

1          THE COURT: And I'm not sure because I haven't seen

2    what was in the request to admit whether or not the defendants

3    were making a distinction between admitting the factual

4    underpinnings of admissibility or admitting admissibility

5    because I can see someone receiving requests to admit saying

6    we're not going to admit the legal issues; we're just going to

7    admit the factual issues.  Because admissibility is a tricky

8    thing to admit.

9          But I'm not familiar with what the questions were.

10   I'm not familiar with what the responses were and I'm not even

11   sure whether or not the things that the defendants admitted is

12   as much as you could have gotten from a witness.  So, for

13   example, you would never ask a witness is it admissible.  You

14   would -- regardless of the basis you're trying to get it in

15   you would establish the legal underpinnings of it, you know,

16   is it -- did you keep it in the ordinary course of business,

17   is it your business to keep -- you don't then ask at the end

18   is it admissible.  So if they don't admit the admissibility

19   but they admit all of the underpinnings of it that seems to

20   me -- admissions are for facts and not necessarily for law.

21   So you might get a response which equivocates because lawyers

22   don't want to concede anything.

23          Again, I'm only speculating.  I don't know what was

24   in Mr. Hill's mind or whoever answered the request for

25   admissions but I do know that in many of the responses people

32

1  have been very, very careful about not giving away anything

2  that they didn't have to give away.  As to --

3          MR. TOLCHIN:  -- [inaudible] tell Your Honor,

4  [inaudible] 400 or 500 documents there's obviously been no

5  requests for admission and now custodian of records deposition

6  because just got them.  Those newly produced Arabic documents

7  there's certainly -- there's been nothing done about them

8  because just of the timing of when they provided them to us.

9  That's the other --

10          THE COURT: They might be in a different category

11  from other documents in terms of what you could follow up on.

12          MR. TOLCHIN: I would like to make an application and

13  I'm happy to make it verbally or in writing.  I would like to

14  follow up on our 30(b)(6) topics to recast them as

15  interrogatories and serve them.  I'd like the defendants to be

16  required to respond to them.  I think that doing so is a key

17  thing would be overriding objective which is that this case

18  should ultimately be decided based on the facts and the merits

19  and not by who ran out the clock as to one particular type of

20  discovery or another.

21          THE COURT: If you want to make such an application

22  then you still have to -- you need to submit to me why they

23  were not submitted as interrogatories first.  I know you said

24  some of that now but I need to see exactly what the problem

25  was and make a determination as to whether under the

33

1  circumstances -- part of what you're saying, for example, is

2  you didn't bring the dispute to the Court because you wanted

3  to -- you didn't want to be rebuffed by the Court and saying

4  why did you do A, B and C and you skip right to D. Now, I'm

5  telling you that if you brought it to me I would have thought

6  A was enough perhaps but if your justification is that the

7  answers that the defendants gave reasonably cause you to

8  believe that you needed to do something more lay it out for me

9  and I'll consider it.

10          MR. TOLCHIN: I'm happy to do that. Can I file that?

11  I anticipate a little problem if I have to do that in a three

12  page letter. Can I do that in a regular motion or just

13  something that gives me a little more space?

14          THE COURT: Well, I will grant you additional space

15  because as I understand you'll have to demonstrate to me some

16  of the things -- it won't be just legal argument. It will be

17  putting in some of the responses that the defendants made that

18  led you to believe that some other discovery mechanism might

19  be more fruitful than what you had tried but that you had

20  indeed tried it and that it was reasonable for you to not do

21  that through some form of motion or application to the Court.

22          MR. TOLCHIN: I will -- I will do that.

23          THE COURT: Yes. You won't be limited to three

24  pages. I trust you won't do 100 but I'm not going to --

25          MR. TOLCHIN: I'm already getting carpal tunnel

34

1    syndrome.  It's from typing too much in my career so I'll try

2    to keep it down.

3                THE COURT: Then we'll see what Mr. Hill says in his

4    defense.

5                MR. TOLCHIN: Now, to me --

6                THE COURT: But how does that impact the expert

7    disclosure?

8                MR. TOLCHIN: It impacts the expert -- that's the

9    next step.  As far as we are concerned fact discovery --

10   although the date may have run out, fact discovery is not

11   complete.  We have gotten -- as to many responses we have

12   gotten only partial responses or incomplete responses or

13   responses that are obviously missing things that the

14   defendants plainly have.

15               THE COURT: But that doesn't have -- just to be clear

16   so that you understand what I'm asking, even if fact discovery

17   has not been completed you still have to tell me how the non

18   completion of fact discovery affects the expert disclosures

19   because are you saying that -- assuming that you find out some

20   additional facts from the defendant, I don't know what kind of

21   experts we're talking about.  I don't know if those experts

22   are going to be using any of the facts that you're still

23   trying to sew up.  Are you saying that --

24               MR. TOLCHIN: Several of them are for sure. The way I

25   view it, Your Honor, the -- let me say a couple of points in

35

1   no particular order.

2           The way I view it putting together your experts'

3   reports in a case like this really is tolling up the whole

4   case.  It's the experts throw everything together and lay

5   out -- and typically in an expert report we'll really lay out

6   the narrative of the case.  Doing that -- writing your

7   research paper before you finished your research is not an

8   ideal way to proceed.  It's not how I would prefer to proceed

9   and I had understood that the ordering of discovery as the

10  Court originally set it would the fact discovery to conclude

11  followed by the period of expert discovery.  I had understood

12  that to be the general practice that the Court follows.

13          THE COURT: Well, that is the --

14          MR. TOLCHIN: I understand that this is not binding

15  but at one point I did call Your Honor's chambers and talked

16  to somebody there who confirmed that's how Your Honor

17  generally does things.

18          THE COURT: That -- Mr. Tolchin, that still assumes

19  that the expert report is somehow going to require the

20  information that hasn't been resolved at the end of discovery.

21  I would at the very least suggest that to the extent that you

22  have an expert that you make sure that you have a conversation

23  with your expect about how important this is because -- I mean

24  you could -- you could make these arguments and then your

25  expert could be questioned and Mr. Hill says well, did you use

36

1  any of this information that was gotten in this report and he

2  says no, and then he says would you consider it necessary or

3  important to your conclusion.  He says no and then I'm sitting

4  there and Mr. Hill is sitting there and going well, why did we

5  wait for this report.

6          MR. TOLCHIN: Sometimes the reason is because the

7  expert doesn't want to say something until he knows the

8  universe of information out there because once he sees okay,

9  now we've got the full production he says good, I don't have

10 to change anything.  I don't have to update anything. I don't

11 have to incorporate anything.  I know that I have a complete

12 opinion.  No one wants to take a position before they know

13 everything that they could be -- that could be suggested

14 that --

15         THE COURT: I assume that you're making argument now

16 only because I would never -- I never at least intentionally

17 use phrases like no one would do anything under certain

18 circumstances.  I know many people who make determinations --

19         MR. TOLCHIN: You are correct and you're wiser than I

20 am in that regard.

21         THE COURT: Indeed many of the decisions we make in

22 our lives we don't have all the information but we know that

23 we have to make them.

24         MR. TOLCHIN: But most of the time we're not cross-

25 examined about them and subjected to Daubert hearings and

37

1  deposition testimony.

2          THE COURT: But we may find ourselves in divorce

3  court.

4          MR. TOLCHIN: I try to avoid that although --

5          THE COURT: All I'm saying to you is that you need to

6  put on record why you're doing what you're doing and why you

7  couldn't do what you did before and I'll weigh it.  I don't

8  have a closed mind on it but -- as I said, I -- I'm not going

9  to take the position that just because you didn't do it the

10  way I would have done it that's the end of it.  Some of it

11  depends on the responses you got from the defendant and -- I

12  don't know what those responses are.

13          MR. HILL: Your Honor, if I could --

14          MR. TOLCHIN: Your Honor, my -- I really -- I feel

15  like I have to say this.  My impression, and unfortunately I

16  wasn't there, but after the last appearance when Your Honor

17  made the rulings that discovery -- that some kind of

18  additional -- what Your Honor said was that some kind of

19  additional discovery would be allowed but you needed to -- you

20  needed us to submit something further to let Your Honor

21  determine what it is.  That's where we left off, I don't know,

22  a month and a half ago, and we made our submission which the

23  Court didn't address until today.

24          It was my understanding at that point, maybe it was

25  an erroneous assumption, maybe it was an erroneous assumption

38

1  by Mr. Schoen who for a time was counsel in this case but has

2  sought to be -- sought to withdraw now, but it was my

3  understanding that the general concept that fact discovery

4  would conclude and then expert discovery was going to be

5  maintained.  Maybe this was an erroneous assumption but we

6  anticipated that the result of the briefing and Your Honor's

7  statement that discovery -- that some additional discovery

8  would be allowed would result in an adjusted schedule.  That

9  sort of pushed all the dates off a little bit.

10            THE COURT: And all I'm telling you today is it's not

11  automatic and it depends and sometimes the experts say -- I

12  mean I'll have a personal injury case for example and the

13  expert is going to talk about the witness' prognosis.  He's

14  got to have the latest information concerning the progress.

15  So that seems fairly obvious.  All you have to do is state it.

16  But I'll have cases, for example, where somebody is doing an

17  economic analysis of lost wages and they already know what the

18  relevant dates are.  They don't need to know whether or not

19  there was something that happened afterwards.  It's just not

20  automatic.  It may be in this case it ought to be -- all the

21  facts need to be in.  My point is that we never discussed it

22  and I don't assume that just because there's going to be some

23  factual matters that need to be cleaned up it's going to

24  necessarily affect the expert discovery.  That's the

25  [inaudible].

39

1          MR. TOLCHIN: I hear what you're saying and what's

2     why we did write to the Court back in December asking to

3     clarify this point.  Look, obviously --

4          THE COURT: Okay.  Well, let's -- I think I've --

5          MR. TOLCHIN: [Inaudible] on this issue because --

6          THE COURT: Mr. Tolchin, I -- Mr. Hill, you have

7     something to say before we end this conference?

8          MR. HILL: Your Honor, from my perspective I just

9     want to know is my deadline still February the 21st?

10    Everything that's been said here today indicates that the

11    answer to that is yes.  What I don't -- what I would prefer

12    not to be in the posture of is complying with the Court's

13    order, serving my reports on the 21st and then having the

14    plaintiffs apply for and receive an extension on their expert

15    report deadline which has already passed.  It passed on

16    January 21st and no reports were served.  The plaintiffs have

17    not made out a case under Rule 16 for good cause to extend

18    that deadline and there's been nothing that's been said on the

19    conference today that says they could not have tendered their

20    expert reports at that time, and you told all of us in June of

21    2011 -- let me just -- if you can indulge I'll just read what

22    you said on that date.  You said "As a general rule, I started

23    at the close of fact discovery.  I understand that the

24    plaintiffs want it at the completion of fact discovery and I

25    understand the reasoning."  Again, the way I characterize --

40

1          MR. TOLCHIN: I'm sorry to interrupt.  I got kicked

2   off the call about 30 seconds ago and I just rejoined.

3          MR. HILL: I'm reaching from the transcript in June

4   of 2011.  "Again, the way I do things is this.  If there is a

5   particular problem and something that's needed then you can

6   make an application but the fact of the matter is that not all

7   discovery is going to be necessary for the experts.  So if the

8   thing that's not completed is not necessary for your expert

9   obviously there's no real reason to postpone it.  On the other

10  hand, I don't want to give one side the carte blanche to delay

11  things so that the expert doesn't have the information they

12  need.  If you want additional time to complete the expert's

13  discovery we'll do it that way rather than having the period

14  start at a later time.  So if your expert gets something

15  belatedly and he could not have gotten it sooner then you can

16  ask for additional time for the expert to do the report.  But

17  we'll start at the close of discovery so any expert that can

18  start then I expect them to start.

19          The other thing is that sometimes what experts can

20  do is they can get the bulk of their things done and then

21  there's one little piece that they need to add and they'll add

22  that piece and we'll wait for that piece.  So we'll start at

23  the close of discovery."

24          So, Your Honor, I respectfully submit the plaintiffs

25  have been on notice since June of 2011 that they had to tender

1  whatever expert reports could be completed by the deadline you

2  set of January 21st.  They did write to you shortly before that

3  deadline asking you to confirm that the deadline had been

4  vacated.  You did not confirm that it had been vacated.  I

5  wrote to you on January 18th.  I quoted the very portion of the

6  transcript.  I just read into the record that plaintiffs were

7  absolutely clear that it was our position that the deadlines

8  had not been changed and they chose to proceed without serving

9  expert reports on January 21st, and I think the equitable thing

10 to do at this point in time is leave the schedule in place.

11 If the plaintiffs can claim that the were some information

12 produced after the close of discovery and they have an expert

13 on only that information that is the only possible conceivable

14 good cause for an expert report past the deadline that Your

15 Honor set.

16         I just want you to make it clear to all of us that

17 the deadlines have not moved and so I can proceed with serving

18 on the 21st.  I just don't want to be whipsawed by serving on

19 the 21st and then the plaintiffs getting an extension on the

20 deadline that they've let run.

21         THE COURT: Okay.  Well, all right.  Here's how

22 this -- here's how this is going to be resolved.  As of -- I

23 understand that there -- a number of things have been

24 happening with the plaintiffs.  The net result is that no

25 expert disclosure or reports were filed on January 21st.  The

42

1  contemplation was that the plaintiffs would file their expert

2  report and that the defendant would file a reply report.

3  Given the application which the plaintiffs have made now, it

4  certainly calls into question whether or not it's appropriate

5  to require the defendants to file with the deadline since as I

6  said initially the contemplation was that the plaintiffs would

7  file first.

8            In an effort to make sure that --

9            MR. HILL: Your Honor, I have a suggestion.  I don't

10  mean to interrupt the Court.  I can file them under seal with

11  you.  I just don't want to give them to the plaintiffs and

12  then have them get them out of sequence if in fact they're

13  going to be allowed to have reports.  If you're going to hold

14  the deadlines that's fine, I'll serve my reports as the rule

15  requires and we'll go forward.  I don't want the plaintiffs to

16  gain an unfair advantage from their decision to disobey the

17  deadline.

18            THE COURT: And I appreciate --

19            MR. TOLCHIN: We made no [inaudible].

20            THE COURT: What I think is more likely to be

21  palatable to the Court and more in keeping with the rules is

22  that notwithstanding the Court's admonition about how this

23  should be handled is that the date for the plaintiff's

24  submission be adjusted and that the date for the defendant's

25  submission be adjusted to 30 days after that date.

1          The only question for me at this point is given the

2    application which the plaintiffs are seeking to make I have to

3    make it clear to you, Mr. Tolchin, that while it may be true

4    that any expert may want to say to you I want to see the

5    entire universe before I do anything, that's not going to work

6    for me.  So I would expect that to the extent that we need to

7    keep this case on course that there be a definite date for the

8    plaintiff's report and even if that means supplementation then

9    there will be supplementation.  Bearing in mind that the

10   original schedule allowed the plaintiffs to do rebuttal I

11   don't see that there would be any prejudice to the plaintiff

12   in putting forth the schedule and allowing it to go forward.

13         So in that regard you can anticipate that the most

14   likely result after I've ended this conversation and had a

15   chance to deal with some other things is that I will extend

16   the plaintiff's time to file a report for no more than four

17   weeks from the time that -- four weeks from Friday and that

18   we'll adjust everything else accordingly.

19         MR. TOLCHIN:  Your Honor, I would ask if possible to

20   have an extension a little bit longer than that.  We have

21   other things in that time frame.  Also it may not be workable.

22   If we could have a date that brings us into sometime in April,

23   even early April it would be much more -- I hate to be coming

24   back and saying that I need more time for this or that.  I'd

25   like to be able to take a date that I know we can comply with

44

1  and agree to it.

2           THE COURT: Here's what I'll give you.  If you can

3  get to me Friday what it is that's going to be an impediment I

4  won't issue the order until Friday.  I don't -- you're being

5  more conclusory now as to what might be impediment to doing it

6  and if those things might have -- I'm not sure that they're

7  things that you necessarily need to disclose to the defendant

8  at this point.

9           MR. TOLCHIN: Your Honor, it's just a large volume of

10 work and there's a lot of issues.  The case involves seven

11 different attacks.  There's a lot -- it's a lot to do and

12 between that and other professional commitments --

13          THE COURT: Are you talking about your expert's time

14 or your time?

15          MR. TOLCHIN: Oh, both.  Both.  Both.  It's just a

16 lot of work.  It's a big undertaking.

17          MR. HILL: Your Honor --

18          THE COURT: Are you saying that none of this has

19 started yet?

20          MR. TOLCHIN: It's started.  It's started but to be

21 able to -- I would like to be able to say to Your Honor that

22 whatever date we say it will be done and you have my word on

23 that, and I'd hate to be in a position where I'm worried that

24 I can't comply or that I can only comply by making my hair and

25 the hair of the experts fall out and also adding tremendous

45

 1  additional costs for rushing everything.

 2          THE COURT: Well, again --

 3          MR. TOLCHIN: I'd rather to make a date that's

 4  workable for sure.

 5          THE COURT: I understand what you're saying, Mr.

 6  Tolchin, but it does seem to me that I would have to accept

 7  the proposition that nothing has to been done while this whole

 8  thing has been peculating.  I mean --

 9          MR. TOLCHIN: That would not be true but -- this case

10  is a big responsibility for me, Your Honor.  It's a very heavy

11  case.  It's very serious issues and very serious issues in my

12  clients' lives and I don't want to do a halfway job just to

13  meet a deadline.

14          THE COURT: I --

15          MR. TOLCHIN: We're still working our way through the

16  100 pages of Arabic documents that we just got.

17          THE COURT: I've heard your argument.  I will take

18  them into consideration in setting a date.

19          MR. HILL: Your Honor, it's Brian Hill. I know we've

20  overtaxed you.  If I could have one more thing from Your

21  Honor.  Can I date for them to respond to our interrogatories?

22  Because you did not set one and I fear that in the absence of

23  one it will continue to be weeks and weeks until we get the

24  interrogatories.

25          THE COURT: How many interrogatories were there?

46

1          MR. HILL: I don't know off the top of my head.

2          THE COURT: 25 maybe?

3          MR. HILL: Originally they had 30 days.  That's what

4    the rules allowed.

5          THE COURT: Okay.  Nobody knows exactly how many

6    there were I take it.

7          MR. HILL: We're checking, Your Honor.  I don't have

8    the information on the tip of my tongue.

9                    [Pause in proceedings.]

10         MR. HILL: Your Honor, there are multiple sets.  My

11   estimate is it's 40 or 50 altogether.  I just don't have it in

12   front of me.  I apologize.

13         THE COURT: Then, Mr. Tolchin, hello?  Are you still

14   there?

15         MR. TOLCHIN: Yes, I'm here.  I'm here.

16         THE COURT: Adding more to your plate, we'll give you

17   30 days to answer the interrogatories in accordance with my

18   order.  So that we can have a date to deal with if -- as

19   parties know that if any -- if there's any need for any

20   adjustment for anything talk to the other side and then talk

21   to me.

22         MR. TOLCHIN: Your Honor, just to put flesh on the

23   bones, I asked for additional time just to name a -- if I

24   could have 60 days rather than four weeks.  That brings us to

25   the second week of April.  I would anticipate that I would be

47

1  able to comply with that without having to come back

2  [inaudible]

3        THE COURT: Why -- aside from the fact that just the

4  general statement that this is a big case, why do you need 60

5  days?   I mean the interrogatories seem --

6        MR. TOLCHIN: I'm not talking about the

7  interrogatories.  I'm talking about the experts.

8        THE COURT: Okay.

9        MR. TOLCHIN: The interrogatories is fine.

10       THE COURT: Well, I'll take your request under

11  advisement.  Anybody else?

12       MR. HILL: Your Honor, I would just urge the Court

13  to --

14       MR. TOLCHIN: I just want to be clear.  Is the Court

15  deeming that I made my application now is the Court expecting

16  me to submit a written application?

17       THE COURT: The application for --

18       MR. TOLCHIN: About the experts.

19       THE COURT: The application for the 60 days?  Which

20  application are you talking about?

21       MR. TOLCHIN: About extending the expert deadline by

22  60 days.

23       THE COURT: I think it's been fairly presented and

24  it's been noted in this conference.  We don't need to do any

25  more paper.

48

1          MR. TOLCHIN: Okay.

2          MR. HILL: Your Honor, just so I'm clear about what's

3    happening.  You're going to set a date for the plaintiff's

4    expert reports, and will they be allowed to serve reports that

5    they could have served on the 21st of January or are you

6    reserving that issue?

7          MR. TOLCHIN: Now we're redoing the arguments?

8          THE COURT: No.  The short answer is it will be an

9    adjustment of the date that was set which means that it won't

10   be restricted, yes.  It can include a report that they could

11   have filed on the 21st.

12         MR. HILL: All right.  Your Honor, in that case then

13   I would just respectfully request that the Court not extend

14   this any longer than you already have.  The plaintiffs have

15   been on notice that this stuff was due on January 21st since

16   June of 2011.  The notion that they get another 60 days after

17   they're already three weeks past their deadline there just

18   can't be good cause for that in my view.

19         THE COURT: Your objection is noted.  I will take

20   that into consideration also.

21         MR. HILL: Thank you, Your Honor.

22         THE COURT: Anything else?

23         MS. WEISER:  Your Honor, this is Rachel.  I'm sorry.

24   I just want to add one thing about the 60 day request.  I got

25   cutoff from the call but I didn't hear whether you wanted us

49

1  to submit something or you were taking all of the argument

2  now.

3        MR. TOLCHIN: He's taking it based on what was said

4  now.

5        MS. WEISER: He said what?

6        MR. TOLCHIN: It's entirely based on what was said

7  now during the conference.

8        MS. WEISER: Okay. So then, Your Honor, please if I

9  could just add one thing. As you know there are these 500 new

10 documents that we're wading through and trying to figure out

11 if there are additional needs based on those. There was also

12 a very large production made, Your Honor, timely on December

13 21st. The 500 documents were produced late but there was also

14 a timely production, a large production made on December 21st

15 which frankly, Your Honor, we're still going through. We sent

16 a series of emails to defense counsel about those responses

17 and things that we believed based on those responses must

18 exist and we may need to actually seek the Court's assistance

19 in trying to compel some of those things. So the 60 days is

20 not just because we -- of the things we've already done or how

21 much time we need based on the things we've already done.

22 It's also, Your Honor, based on the follow-up discovery which

23 you've already said we're entitled to following up on the

24 discovery that's already been done on this case.

25        So I anticipate that we're going to need some

50

1  additional assistance or at least we're going to need some

2  additional meet and confers with defense counsel to try to

3  obtain some of these things that we believe are still out

4  there.  So that's also part of the need for the additional

5  time.

6         THE COURT: I'll have the last word since I'm the

7  Judge.  Here's the deal.  First of all, we're probably never

8  going to get this to a point where everything that everybody

9  wants is in place before I'm going to require you to do any

10  reports.  It seems to me that the litigation would be better

11  served if we have deadlines, we get things done.  As I said

12  already, we already have -- we had a schedule which

13  contemplated there would be a plaintiff's expert disclosures,

14  defendant's expert disclosures and the plaintiff's rebuttal.

15         At some point we need to engage the plaintiff and

16  the defendant and then we need to do clean up.  So it's not

17  that we're going to have everything in place before we require

18  the plaintiffs to do anything.  You're just going to have to

19  accept that you're going to have to compromise on that.  All

20  of the discovery issues and disputes will not be resolved.  I

21  forecast that before you will be required to do an expert

22  report and that's just a prescription for us constantly

23  putting off the expert disclosures.  We need to get the case

24  moving.  We need to get the expert disclosures.  We need to

25  have the parties joined on what their experts are going to

51

1   say.  If there's a need for any supplementation or amendment

2   or otherwise, that we can do but we can't wait until

3   everything is done before we start the process.  That's the

4   final word.  We're adjourned.  Thank you.

5           MR. TOLCHIN: Thank you, Your Honor.

6           MR. HILL: Thank you.

7                       *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

52

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                          _____

6                                    Shari Riemer

7   Dated:   February 17, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25