UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/26/13
```

MARK I. SOKOLOW, et al.,

      Plaintiffs,

  - against -

PALESTINE LIBERATION ORGANIZATION, et al.,

      Defendants.

ORDER

04 Civ. 397 (GBD) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

The Court held a telephone conference with the Parties on June 17, 2013. The Court issued a number of rulings at that conference, which are set forth below.

### 1. Plaintiffs' Application Regarding Defendants' Rule 30(b)(6) Depositions

On December 3, 2012, Defendants filed a premotion letter asking the Court to enter a protective order against Plaintiffs' proposed Rule 30(b)(6) depositions. During a December 20, 2012 telephone conference, the Court found that the topics in the deposition notices as then drafted were not contemplated or appropriate for a 30(b)(6) witness, and were overly broad and unduly burdensome. (DE 293-1 at 5: 6-8.) The Court granted the protective order but allowed Plaintiffs an opportunity to propose, or for the Parties to propose jointly, either an agreement about how to give Plaintiffs appropriate discovery or an application from Plaintiffs for discovery which did not run afoul of the Court's ruling. (DE 16:18 - 17:3.) Plaintiffs renewed their motion on January 7, 2013, to have the Court order Defendants to produce witnesses under Rule (30)(b)(6), or by such other method as the Court deemed proper regarding certain topics. (DE 295; DE 296.) Plaintiffs explained that the Parties had conferred as directed, but were unable to reach agreement. (DE 296 at 1-2.) The Court held a telephone conference on February 13, 2013, and denied Plaintiffs' motion on the grounds that the matters designated as

Rule 30(b)(6) topics were again, not appropriate, and could have been the subject of an interrogatory or a request to admit. (2/13/13 Tr., 4: 17-26.) Plaintiffs requested permission to recast their Rule 30(b)(6) topics as interrogatories, and the Court ordered that if Plaintiffs wished to make such an application, they would first have to provide a submission detailing why the information they sought had not originally been submitted as a request to admit or as an interrogatory. (*Id.* at 32: 12-20.) The Court further explained that the submission should explain why Plaintiffs had not challenged Defendants' objections earlier in the fact discovery period. (*Id.* at 33: 15-21.)

On May 16, 2013, Plaintiffs submitted a letter-application to the Court that followed up on the February 13 telephone conference. In their letter, Plaintiffs explain that when Defendants "resisted" Plaintiffs' discovery by way of interrogatories and requests for admissions, Plaintiffs attempted to meet and confer. (5/16/13 Letter at 1.) Plaintiffs stated that most of those efforts were fruitless, and as a result, Plaintiffs ultimately sought the information through Rule 30(b)(6). (*Id.*) Plaintiffs explain that they did not raise Defendants' objections with the Court in an attempt to avoid "burdening the Court with a series of motions to compel." (*Id.* at 2.) In their letter-application, Plaintiffs also detail the responses Defendants provided in response to Plaintiffs' interrogatories and requests for admission that Plaintiffs perceive as either "inadequate" (*id.* at 4), or "clearly unsupportable" (*id.* at 5).

Plaintiffs' application is **DENIED**. During the Parties' June 17, 2013 telephone conference, the Court first explained that as the fact discovery cutoff was in December 2012, any current application requesting a modification to the discovery period had to demonstrate good cause and seek modification for a specific purpose. The Court further explained that it did not find that Plaintiffs' articulated reasons for choosing to seek information through Rule 30(b)(6)

constituted "good cause" under Rule 16(b)(4). Additionally, after reviewing certain of Plaintiffs' interrogatories and requests for admission, the Court does not share Plaintiffs' belief that Defendants' responses evidence "recalcitrance" (*id.* at 3), the existence of "more responsive information and documents" than what was provided to Plaintiffs (*id.* at 5), or "unsupported denials" (*id.*).

## 2. Defendants' and Plaintiffs' Applications Regarding Plaintiff Varda Guetta

Before the Court at its June 17, 2013 telephone conference were: (1) Defendants' application to have fifteen photographs and related testimony from Plaintiff Varda Guetta excluded from evidence (Defs.' 6/7/13 and 6/14/13 Letters); and (2) Plaintiffs' application to allow Plaintiffs to serve document discovery relating to Fawzi Murar including: "(1) Murar's martyr file; (2) Murar's PA personnel file and any payment records; (3) any photographs of Murar, including a color copy of his PA identification card; and (4) Murar's GIS, PSS, NSF, MI, Force 17, and PAP files" (Pls.' 6/13/13 Letter). On November 19, 2012, Plaintiffs requested a premotion conference with the Court to compel Defendants to produce all documents responsive to the Guetta Plaintiffs' First and Second Document Requests. (DE 284-6.) The document requests, served on October 27 and November 1, 2011, sought "[a]ll documents (including without limitation all photographs and all video recordings) constituting or containing still and/or moving images of " seventeen individuals identified by Plaintiffs as having been convicted of carrying out similar attacks, in an effort to determine the identity of one of the gunmen in this matter. (*Id.* at 7-12.) Defendants objected to Plaintiffs' documents requests, and on December 5, 2012, the Court denied Plaintiffs' application on the grounds that the production was not reasonably calculated to lead to the discovery of admissible evidence in the form of a future reliable eyewitness identification. (DE 286 at 13.) After the Court's ruling, Plaintiffs

3

maintain that they began a fresh investigation to try to identify Guetta's shooters involved in the Givon Junction attack, through which they obtained fifteen photographs. (Pls.' 6/13/13 Letter.) From the fifteen photographs, Guetta identified Murar as one of the four shooters involved in the attack. (*Id.*) Plaintiffs state that PA records reveal that Murar was a Lieutenant in the PA's Presidential Security Force. (*Id.*) Plaintiffs disclosed the Murar identification to Defendants on February 19, 2013, and provided Defendants with the photographs [which Plaintiffs assert to be of Murar] that Plaintiffs allege Guetta viewed in making the identification. (*Id.*) Plaintiffs made an application to the Court to allow them to serve document discovery relating to Murar. (*Id.*) Defendants objected and sought exclusion of the fifteen photographs and related testimony because they argue: (1) Plaintiffs failed to produce those photographs during the fact discovery period; (2) Plaintiffs failed to provide discovery responsive to Defendants' interrogatory seeking communications regarding those photographs; and (3) Guetta's selection of the photograph that Plaintiffs' counsel claim is Murar would be inadmissible at trial, and even if it were not, there is no admissible evidence that the person depicted in the photograph Guetta chose is Murar. (Defs.' 6/14/13 Letter.)

Defendants' application is **DENIED**. During the June 17 telephone conference, the Court held that it does not consider the Guetta photograph issue to be a discovery issue, but rather, an evidentiary issue. (*See also* 5/17/13 Tr.; DE 320 at 2-9.) Plaintiffs' application is also **DENIED**. In line with its view that the Guetta photograph admissibility issue is one to be decided for trial, the Court held that there is no justification for belated discovery regarding the photographs.

4

### 3. Plaintiffs' Application Regarding Defendants' PA General Intelligence Service Files

Plaintiffs made an application to the Court to compel production of documents listed on Defendants' March 19, 2013 privilege log. The documents listed in the log are dossiers created by Defendant Palestinian Authority's General Intelligence Service ("GIS") regarding thirty-one individual terrorists. (Pls.' 5/16/13 Letter.) Plaintiffs argued the log failed to provide the information required by Local Civil Rule 26.2, including a description of the type of document, author, addresses and a description of the general subject matter. (*Id.*) Plaintiffs also challenged Defendants' contention that the documents are protected by the state secrets and law enforcement privileges. (*Id.*)

Plaintiffs' application is **GRANTED**. During the June 17 telephone conference, the Court explained that foreign privileges may be invoked during litigation that may conflict with disclosure under the Federal Rules of Civil Procedure, but that the Court may take the asserted privileges into account. The Court further explained that the burden remains with the party asserting a privilege to adequately demonstrate that it applies. Plaintiffs properly raised the absence of certain prerequisites to claiming privilege which Defendants' log failed to detail. Defendants therefore have failed to justify the redactions in their privilege log.

**IT IS HEREBY ORDERED** that time to object to the Court's June 17, 2013 rulings shall run from the date of this Order.

**SO ORDERED this 26th day of July 2013**
**New York, New York**

_____
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**