<u>REDACTED−PUBLICLY FILED VERSION</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SOKOLOW, *ET AL.*,

         *Plaintiffs,*

        v.

PALESTINIAN LIBERATION ORGANIZATION, *ET AL.*,

        *Defendants.*

04 Civ. 397 (GBD) (RLE)

---

**PLAINTIFFS' OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a)**
**<u>TO THE MAGISTRATE JUDGE'S WRITTEN ORDER OF JULY 26, 2013</u>**

**THE BERKMAN LAW OFFICE, LLC**
111 Livingston Street
Brooklyn, NY 11201
(718) 855-3627

**ARNOLD & PORTER LLP**
399 Park Avenue
New York, NY 10022
(212) 715-1000

August 9, 2013

**REDACTED–PUBLICLY FILED VERSION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT ......................................................................................... 3

I.     STANDARD OF REVIEW ......................................................... 3

II.    THE MAGISTRATE JUDGE ERRED IN REFUSING TO ALLOW
PLAINTIFFS TO ESTABLISH THE ADMISSIBILITY OF
DOCUMENTS PRODUCED BY THE PA................................... 4

     A.    The Importance Of The Documents At Issue ...................... 4

     B.    Plaintiffs' Efforts To Establish The Authenticity And
Admissibility Of These Documents...................................... 10

     C.    The Magistrate Judge Erred In Refusing To Allow Plaintiffs An Opportunity
To Establish A Hearsay Exception For The Documents In Discovery ............... 12

         1.    Plaintiffs Have Established "Good Cause" To Extend Discovery........... 12

         2.    Plaintiffs' Requests For Admissions........................................ 13

         3.    Plaintiffs' Notices Of Deposition Under Rule 30(b)(6)........................... 14

     D.    This Court Should Create A Procedure To Establish Authenticity And
Admissibility In Order To Ensure An Orderly And Efficient Trial..................... 16

III.    THE MAGISTRATE JUDGE ERRED IN REFUSING TO ALLOW PLAINTIFFS
TO SERVE A DOCUMENT REQUEST CONCERNING FAWZI MURAR ............... 19

     A.    New Facts Have Developed Since The Close Of Fact Discovery ........................ 19

     B.    These New Facts Constitute Good Cause To Conduct  Limited Documentary
Discovery Concerning Fawzi Murar.................................................... 21

         1.    Plaintiffs Were Diligent In Their Discovery Efforts  Concerning The
Guetta Attack ................................................................... 21

         2.    Discovery Concerning Fawzi Murar Is Relevant And Would Not
Unduly Burden Defendants................................................. 23

         3.    Plaintiffs Should Be Permitted To Take Limited Reciprocal Discovery.. 23

CONCLUSION.................................................................................... 25

REDACTED−PUBLICLY FILED VERSION

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*405 Condo Assocs. LLC v. Greenwich Ins. Co.*,
    No. 11 Civ. 9662 (SAS), 2012 WL 6700225.................................................................19

*Abudiad v. City & Cnty. of San Francisco*,
    No. 09 Civ. 1778 (JSW) (NJV), 2011 WL 5520943 (N.D. Cal. Nov. 14, 2011)...................15

*Agric. Ins. Co., Inc. v. Ace Hardware Corp.*,
    214 F. Supp. 2d 413 (S.D.N.Y. 2002)..............................................................................10

*Bieda v. JCPenney Commc'ns, Inc.*,
    No. 92 Civ. 5910 (JFK), 1995 WL 437689 (S.D.N.Y. July 25, 1995) ...............................17

*Commercial Data Servs., Inc. v. IBM Corp.*,
    262 F. Supp. 2d 50 (S.D.N.Y. 2003)................................................................................16

*Davis v. City of New York*,
    No. 10 Civ. 0699 (SAS), 2013 WL 1288176 (S.D.N.Y. Mar. 28, 2013),
    2013 WL 2298165 (S.D.N.Y. May 24, 2013) ....................................................................9

*Fed. Election Comm'n v. Christian Coal.*,
    52 F. Supp. 2d 45 (D.D.C. 1999)....................................................................................14

*Gucci Am., Inc. v. Guess?, Inc.*,
    No. 09 Civ. 4373 (SAS), 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011)......................................3

*Guest v. Carnival Corp.*,
    917 F. Supp. 2d 1242 (S.D. Fla. 2012) ...........................................................................15

*Halbach v. Great-West Life & Annuity Ins. Co.*,
    No. 4:05 Civ. 02399 (ERW), 2007 WL 2153569 (E.D. Mo. July 19, 2007)..........................15

*Hassan v. Maersk Lines, Ltd.*,
    No. 03 Civ. 5443 (DLI) (MDG), 2005 WL 5712849 (E.D.N.Y. Apr. 15, 2005) ...................17

*High Five Invs., LLC v. Floyd Cnty. Ga.*,
    239 F.R.D. 663 (N.D. Ga. Jan. 10, 2007) .......................................................................16

*John Paul Mitchell Sys. v. Quality King Distribs., Inc.*,
    106 F. Supp. 2d 462 (S.D.N.Y. 2000)..............................................................................17

*JPMorgan Chase Bank, N.A. v. Yuen*,
    No. 11 Civ. 9192 (NRB), 2013 WL 2473013 (S.D.N.Y. June 3, 2013)..................................8

REDACTED—PUBLICLY FILED VERSION

PAGE(S)

*Klieman v. Palestinian Authority*,
 No. 04 Civ. 1173 (PLF) (JMF) (D.D.C. Feb. 11, 2013), Docket Entry No. 190 ....................16

*Linde v. Arab Bank, PLC*,
 No. 04 Civ. 2799 (NG) (VVP), 2009 WL 8691096 (E.D.N.Y. June 1, 2009) ........................14

*Little Hocking Water Ass'n v. E.I. Du Pont de Nemours & Co.*,
 C. A. No. 2:09 Civ. 1081, 2013 WL 1791083 (S.D. Ohio Apr. 26, 2013) ..............................14

*McKesson Corp. v. Islamic Republic of Iran*,
 185 F.R.D. 70 (D.D.C. 1999)..................................................................................................15

*Murphy v. Metro. Transp. Auth.*,
 No. 05 Civ. 376 (LMM), 2009 WL 1044604 (S.D.N.Y. Apr. 14, 2009)...................................9

*Nabisco v. Warner-Lambert Co.*,
 32 F. Supp. 2d 690 (S.D.N.Y. 1999), *aff'd*, 220 F.3d 43 (2d Cir. 2000) ................................17

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
 262 F. Supp. 2d 251 (S.D.N.Y. 2003)......................................................................................10

*Phoenix Assocs. III v. Stone*,
 60 F.3d 95 (2d Cir. 1995)..........................................................................................................8

*Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*,
 629 F.3d 282 (2d Cir. 2010)....................................................................................................18

*Sanyo Laser Prods., Inc. v. Arista Records, Inc.*,
 214 F.R.D. 496 (S.D. Ind. 2003)..............................................................................................16

*Smith v. Pathmark Stores, Inc.*,
 485 F. Supp. 2d 235 (E.D.N.Y. 2007) .......................................................................................9

*Sokolow v. PLO*,
 No. 04 Civ. 397 (GBD) (RLE), 2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012)........................18

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*,
 No. 10 Civ. 1391 (LTS) (JCF), 2012 WL 6554862 (S.D.N.Y. Dec. 13, 2012)................21, 22

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
 900 F.2d 522 (2d Cir. 1990)......................................................................................................3

*United States Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*,
 No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006).......................16

*Wade v. N. Am. Asset Servs., LLC*,
 12 Civ. 1111 (ARR), 2013 WL 593470 (E.D.N.Y. Feb. 14, 2013)..........................................21

**REDACTED−PUBLICLY FILED VERSION**

**STATUTES**                                                              **PAGE(S)**

18 U.S.C. § 2339A ...........................................................................................................7

**FEDERAL RULES**

Fed. R. Civ. P. 16(b)(4)...............................................................................2, 12, 21

Fed. R. Civ. P. 26 .......................................................................................................14

Fed. R. Civ. P. 30(b)(6)................................................................................... *passim*

Fed. R. Civ. P. 36 ..................................................................................................13, 14

Fed. R. Civ. P. 45 ...................................................................................................18

Fed. R. Civ. P. 72(a) ....................................................................................... *passim*

Fed. R. Evid. 801(d)(2)(B), (D) ...............................................................9, 10, 14, 17

Fed. R. Evid. 803(6)........................................................................................7, 8, 15, 19

Fed. R. Evid. 803(8)...................................................................................................8, 9

Fed. R. Evid. 807 .........................................................................................................9

Fed. R. Evid. 902(11)...................................................................................................8

REDACTED—PUBLICLY FILED VERSION

## PRELIMINARY STATEMENT

Plaintiffs, who assert claims under the Anti-Terrorism Act, object, pursuant to Fed. R.

Civ. P. 72(a), to certain discovery rulings in Magistrate Judge Ellis' Order dated July 26, 2013

(the "July 26 Order") (Ex. A). Specifically, plaintiffs seek review of two aspects of that Order,

both of which refused to allow discovery that could not have been taken prior to the close of fact

discovery.

*First*, we object to a ruling that precluded plaintiffs from taking either written discovery

or depositions to establish that documents from defendants' own files—the vast majority of

which they failed to produce until after the close of discovery—are authentic and not excludable

as hearsay. Most of these documents are official forms on defendants' letterhead, and they are

the kind of documents that are routinely admitted as records of regularly conducted activity,

public records, or statements by a party-opponent. Moreover, many of these documents are

critical to this case because they establish defendants' direct financial support of the terrorist acts

at issue.

If admissibility cannot be established prior to trial, plaintiffs will have no choice but to

subpoena representatives of defendants to come to trial for the purpose of establishing facts for

the admission of these documents. Since this is not an efficient way to proceed in a jury trial,

this Court should either allow further discovery on the issue of admissibility or require

defendants—who have refused to stipulate that the documents are not hearsay—to justify their

refusal.

*Second*, we object to a ruling that precluded plaintiffs from conducting limited

documentary discovery regarding a man named Fawzi Murar based on a crucial development

that occurred after fact discovery closed. Prior to that time, plaintiff Varda Guetta did not know

the identity of any of the four perpetrators involved in the shooting attack on Ms. Guetta and her

then 12-year-old son (the "Guetta Attack"). Thus, she was unable to seek discovery regarding any actual known perpetrator. However, in February 2013, approximately two months after discovery closed, she identified Murar from a photograph that her counsel had just then obtained.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Other documents show that Murar personally participated in attacks strikingly similar to the Guetta shooting, and that he also enlisted others to carry out such attacks, at the time and in the place of the Guetta Attack.[1] Thus, there are independent reasons to conclude that Murar was involved in the Guetta Attack.

Prior to this identification, plaintiffs had diligently pursued discovery concerning the Guetta plaintiffs' claims by serving requests for documents with respect to possible perpetrators (not including Murar), but defendants did not produce any documents. Plaintiffs were eventually able to obtain photographs of 15 individuals, and Ms. Guetta identified Murar on or about February 17, 2013. Disclosure was promptly made to defendants, who (1) took a second deposition of Ms. Guetta in May 2013 (long after discovery had closed), and (2) have since proffered an expert witness on the issue of eyewitness identification reliability.

These new facts constitute good cause pursuant to Fed. R. Civ. P. 16(b)(4) to modify the discovery schedule for the Guetta plaintiffs' claims for the limited purpose of allowing document discovery regarding Murar. The July 26 Order ignores the fact that this discovery could not have

---

[1] Most of these documents are discussed in Part VI of the Expert Report of Israel Shrenzel (the "Shrenzel Report") (Ex. B, pp. 73-77), who has held various government intelligence positions in Israel. Specifically, plaintiffs have been able to obtain what they believe to be a copy of Murar's martyr file, and they also have information concerning Murar from the statement of an individual named Freij Adwan to the Israeli police dated April 8, 2002. Plaintiffs have also recently come across the statement of an individual named Issa Natshe to the Israeli police dated February 4, 2002 (Ex. C), which corroborates the materials that are discussed in the Shrenzel Report.

been taken earlier and improperly construed plaintiffs' request as one for "belated discovery regarding the photographs" (Ex. A, p. 4). However, plaintiffs have requested very specific categories of documents relating to Murar himself—his martyr file,[2] his PA personnel file and payment records, and other relevant PA files—for the purpose of establishing defendants' vicarious liability for, and ratification of, the terrorist acts at issue in this case. These are the same categories of documents that defendants have produced with respect to perpetrators involved in the other attacks at issue. Accordingly, these narrowly-tailored requests—which could not have been served any earlier—should have been permitted.

## ARGUMENT

### I.    STANDARD OF REVIEW

Rule 72(a) provides that "[t]he district judge in the case must consider timely objections [to a nondispositive order of a Magistrate Judge] and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373 (SAS), 2011 WL 9375, at *1 (S.D.N.Y. Jan. 3, 2011). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

"A Magistrate Judge's order is considered 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Gucci Am.*, 2011 WL 9375, at *1 (quoting *In re Comverse Tech., Inc. Secs. Litig.*, No. 06 Civ. 1825 (NGG)(RER), 2007 WL 680779, at *2 (E.D.N.Y. Mar. 2, 2007)). "Further, if 'on the entire evidence, [the court] is left with the definite and firm conviction that a mistake has been committed,' such an order is deemed 'clearly erroneous.'" *Id.* (citations omitted; bracketed material in original).

---

[2]    Plaintiffs requested a copy of Murar's martyr file from defendants in order to ensure that the copy in our possession is complete and to authenticate it.

Finally, as discussed in Section II.D below, plaintiffs seek an alternative form of relief with respect to the authenticity and admissibility of the documents that does not require the Court to overturn Judge Ellis's Order and is thus not subject to the standards of Federal Rule of Civil Procedure 72(a). Rather, this request falls squarely within this Court's authority to determine, in the first instance, the admissibility of evidence for trial.

## II.   THE MAGISTRATE JUDGE ERRED IN REFUSING TO ALLOW PLAINTIFFS TO ESTABLISH THE ADMISSIBILITY OF DOCUMENTS PRODUCED BY THE PA

### A.   The Importance Of The Documents At Issue

Plaintiffs seek to establish the admissibility of approximately 841 pages of documents, almost all of which were produced by defendants after the close of discovery. Those documents fall into three main categories: (1) official "martyr" files reflecting payments made by defendants to the families of suicide bombers and other deceased terrorists; (2) records of payments, promotions, and other benefits made to, or conferred upon, incarcerated terrorists and their families; and (3) employment records showing that many of the perpetrators of the attacks at issue in this case were police or other security employees of defendant the PA. Each category of documents is described below.

*"Martyr" Files.* Several of the attacks at issue in this case were carried out by suicide bombers or other terrorists who have died. The PA provides financial support, in the form of both direct payments and benefits, to the families of the deceased terrorists—*precisely because they committed acts of terror.* These payments to families of "martyrs" (as the PA calls them) are made by an organization, known as the "Welfare Fund for the Families of the *Shahid* Martyrs and the Wounded," (the "Welfare Fund") which was established by defendant the Palestinian Liberation Organization (the "PLO"), in 1965 and which is funded by the PA. This organization was administered by the PA's Ministry of Welfare between 1994 and 2005—the period covered

by the attacks at issue here.[3]  This is a major program for the PA; these payments constitute

approximately 3.5% of the PA's entire budget for salaries (Ex. E, p. 2).

The benefits paid under the "martyr" program are well documented by defendants.  For

example, Exhibit F is a translation of the martyr file of ██████████████████████

████████████ January 27, 2002 bombing that killed one person and injured over 100 others,

including the Sokolow plaintiffs.  First Am. Compl., ¶¶ 81-82, dated May 17, 2005 ("Compl.").

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████  This document leaves no doubt—the PA paid the family of a suicide bomber *because*

she carried out this act of terror.

***Files Reflecting Benefits To Incarcerated Terrorists.***[4]  Many of the perpetrators of the

attacks at issue survived, have been convicted by the State of Israel for their crimes, and are now

serving prison terms.  The PA provides benefits to these persons and their families under the

"Prisoners' and Released Prisoners' Law," which the PA enacted in 1996.  Defendant PA treats

incarcerated terrorists as civil servants and pays their salaries along with other benefits to their

families.  Indeed, such terrorists frequently receive promotions and salary increases while in

---

[3]    The history and operation of the "martyr" program is described in detail in Part Four of the Expert Report of Alon Eviatar (the "Eviatar Report") (Ex. D), who has held various government intelligence positions in Israel.  The Welfare Fund was transferred back to the PLO in 2005, although the PA still funds it.

[4]    The PA program that provides benefits to incarcerated terrorists and their families is described in Part Five of the Eviatar Report (Ex. D).

REDACTED−PUBLICLY FILED VERSION

prison. This is also a major PA program, with payments constituting approximately 2.5% of the

PA's budget for salaries (Ex. E, p. 2). In addition, the PA provides benefits to the prisoners

themselves.

These payments are also well documented. For example, we have records of these

payments for approximately 18 of the perpetrators involved in five of the attacks at issue in this

case. Exhibit G is a translation of the PA Ministry of Detainees Affairs file of ████████

████████████████████████████████ at Hebrew University on July 31,

2002. Compl. ¶ 110. Nine people were killed during this attack—including Janis Ruth Coulter,

Diane Carter, Benjamin Blutstein, and David Gritz (whose estates and family are plaintiffs in this

action)—and over 85 others were injured. *Id.* at ¶¶ 111-12. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

***Employment Records***. Approximately 14 of the perpetrators in the attacks at issue in this

case were police or other security employees of the PA. Ex. H is a translation of a PA

employment record that shows ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

5 ████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████

The importance of these documents is difficult to overstate. There is no doubt that the terrorist attacks at issue occurred or that plaintiffs suffered damages. We anticipate, however, that defendants will assert that the perpetrators acted on their own—and not at the behest, or with the support, of defendants. The documentary evidence that defendants provide benefits to the families of both deceased and incarcerated terrorists, *because they perpetrated terrorist acts*, puts the lie to this story. Indeed, these documents are particularly important because the federal Anti-Terrorism Act does not simply outlaw terrorist acts; it also prohibits the provision of "material support" to terrorists. *See* 18 U.S.C. § 2339A. The payment of salaries and benefits to terrorists and their families—as well as the fact that most of the perpetrators in this case were employed by the PA—constitutes such support and shows that the PA ratified the violent acts of its employees.

As the documents show, they should qualify for the so-called business records exception to the hearsay rule in Fed. R. Evid. 803(6). A document is a business record if:

    (A)    the record was made at or near the time by—or from information transmitted by—someone with knowledge;

    (B)    the record was kept in the course of a regularly conducted activity of a business, organization, or calling, whether or not for profit;

    (C)    making the record was a regular practice of that activity;

(D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E)    neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness.

"The primary purpose of these requirements is to ensure that the creator of the document had 'no motive to falsify' it." *JPMorgan Chase Bank, N.A. v. Yuen*, No. 11 Civ. 9192 (NRB), 2013 WL 2473013, at *6 (S.D.N.Y. June 3, 2013) (quoting *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)). "[T]he 'trustworthiness' of the document is the 'principal precondition to admissibility.'" *Id.* (quoting *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995)); *see also Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995). Thus, "[t]he Court of Appeals has adopted a 'generous view' of Rule 803(6), 'construing it to favor the admission of evidence if it has any probative value at all.'" *Id.* (quoting *Strother*, 49 F.3d at 874).

Here, the documents are official forms that bear the letterhead of various PA government agencies. The forms appear on their face to have been filled out by employees of defendants in the regular course of their duties.

Moreover, these documents should qualify for the public records exception to the hearsay rule in Fed. R. Evid. 803(8). A document is a public record if:

(A)    it sets out:

    (i)    the office's activities;

    (ii)    a matter observed while under a legal duty to report . . . ; or

    (iii)    in a civil case . . . , factual findings from a legally authorized investigation; and

(B)    neither the source of information nor other circumstances indicate a lack of trustworthiness.

As noted, these are official government forms that are filled out by PA employees. Nor is there any reason to doubt the trustworthiness of these documents—which were produced by defendants from their own files.[6]

Finally, these documents appear on their face to qualify as admissions by a party-opponent under Fed. R. Evid. 801(d)(2)(B) and (D). These subparts provide that a statement is not hearsay if it "is one the party manifested that it adopted or believed to be true" or if it was "made by the party's agent or employee on a matter with the scope of that relationship and while it existed." Particularly with respect to subpart (D), "the admission into evidence of such statements is not subject to many of the 'technical prerequisites of other evidentiary rules' and 'should be granted freely.'" *Smith v. Pathmark Stores, Inc.*, 485 F. Supp. 2d 235, 238 (E.D.N.Y. 2007) (quoting *Pappas v. Middle Earth Condo Assoc.*, 963 F.2d 534, 537 (2d Cir. 1992)). Moreover, with respect to subpart (B), "[a]doption or acquiescence may be manifested in any appropriate manner . . . . The decision in each case calls for an evaluation in terms of probable human behavior." Adv. Comm. Notes to Fed. R. Evid. 801(d)(2)(B).

These forms, if authentic, contain admissions from the PA that it paid the salaries of, increased the salaries of, or promoted incarcerated terrorists. Accordingly, these documents

---

[6]   *See, e.g., Davis v. City of New York*, No. 10 Civ. 0699 (SAS), 2013 WL 1288176, at *12 (S.D.N.Y. Mar. 28, 2013) ("Based on the record at this stage, I am inclined to allow the admission of the decline to prosecute forms in this case . . . , based either on the public records exception under Federal Rule of Evidence 803(8)(A)(iii), or on the residual hearsay exception under Rule 807.") (footnotes omitted), *further consideration of ruling after briefing*, 2013 WL 2298165 (S.D.N.Y. May 24, 2013) (finding the "DP" forms admissible subject to certain limitations based on the facts of the case); *Murphy v. Metro. Transp. Auth.*, No. 05 Civ. 376 (LMM), 2009 WL 1044604, at **1-3 (S.D.N.Y. Apr. 14, 2009) (finding that the following documents, among others, were properly admissible under Fed. R. Evid. 803(8):  incident reports; Internal Affairs files; IAB Custody Injury forms; IAB files; and records setting forth plaintiff's earnings, overtime, attendance, and personnel records).

should also qualify as admissions by a party-opponent under both subparts (B) and (D).[7]

Notwithstanding the apparently obvious admissibility of these documents as business records, public records, and statements by a party-opponent, defendants refuse to stipulate to their admissibility. Given the documents' relevance, plaintiffs would prefer to establish their admissibility and authenticity through discovery, rather than on the fly, at trial. Unfortunately, the Magistrate Judge has refused to allow plaintiffs to do so.

### B.   Plaintiffs' Efforts To Establish The Authenticity And Admissibility Of These Documents

By November 2012, defendants had produced a mere 145 pages of documents.[8] Plaintiffs promptly served requests to admit both authenticity and the applicability of the business records rule.[9] Although defendants ultimately admitted authenticity with respect to some of these documents, they refused to agree that the documents are not excludable as

---

[7]   *See, e.g., Smith*, 485 F. Supp. 2d at 238 ("The reliability of admissions by a party's employee [pursuant to Fed. R. Evid. 801(d)(2)(D)] is grounded on two premises: first, that 'an employee is usually the person best informed about certain acts committed in the course of his employment,' and second, 'that while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true.'") (quoting *Pappas*, 963 F.2d at 537); *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 258 (S.D.N.Y. 2003) ("A party may adopt a written statement by using it or taking action in response to or in compliance with it.") (citing 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 801.31, at 801.54-57 and citation omitted); *Agric. Ins. Co., Inc. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 416 (S.D.N.Y. 2002) ("[T]he Second Circuit has held that a party admission containing hearsay is admissible [pursuant to Fed. R. Evid. 801(d)(2)(B)] if it 'draws inferences from the underlying hearsay and thus manifest[s] an adoption or belief in its truth.'") (quoting *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 239 (2d Cir. 1999) (internal citation omitted)).

[8]   On the last day of fact discovery, defendants produced approximately 95 pages of documents, which were not received by plaintiffs until December 27, 2012. Defendants then produced the remaining 604 pages of documents at issue in January through March 2013—well after the close of fact discovery.

[9]   Pls.' First Req. for Admis. to Defs., dated Nov. 21, 2012 ("Pls.' RFA") (Ex. I).

REDACTED−PUBLICLY FILED VERSION

hearsay.[10] Plaintiffs then sought depositions of the custodians of records under Rule 30(b)(6) in order to establish exceptions to the hearsay rule, but defendants refused to comply.[11]

Following the close of fact discovery, defendants made several late productions of over 600 pages of documents showing payments to the perpetrators of the attacks in this case. Obviously, plaintiffs never had any opportunity during discovery to establish the authenticity and admissibility of these late-produced documents.

Plaintiffs sought relief from the Magistrate Judge, but, as discussed in detail below, during a conference on February 13, 2013, he indicated that plaintiffs' original requests to admit were inappropriate because they asked defendants to admit that the documents were admissible, rather than asking them to admit the underlying facts required by the rules of evidence.[12] He also stated that it was not appropriate to use depositions under Rule 30(b)(6) to establish admissibility,[13] although he granted plaintiffs leave to seek reconsideration of his rulings.

Plaintiffs did so by letter dated May 16, 2013 (the "May 16 Letter"), requesting that the Magistrate Judge allow them either to revise their requests for admissions to seek admission of the underlying facts, or to depose the custodians of these records under Rule 30(b)(6) (Ex. M, pp. 2-4).[14]

---

[10]   Defs.' Objections and Resp. to Pls.' First Req. for Admis. to Defs. (to the Mandelkorn Pls.), dated Dec. 21, 2012 ("Defs.' Objections and Resp. to Pls.' RFA") (Ex. J), Req. Nos. 21-26, 32-36, 44-45, 57-59, 60, 62-68, 89-90, 104-06, 108, 129, 135-36.

[11]   Pls.' Notice to the PLO of Taking Deps. pursuant to Fed. R. Civ. P. 30(b)(6), dated Nov. 28, 2012 (Ex. K).  These Rule 30(b)(6) notices also sought depositions on a number of specific factual subjects that are not covered by this motion.

[12]   Tr. of Feb. 13, 2013 Hearing ("2/13 Tr.") (Ex. L, pp. 31-32).

[13]   2/13 Tr. (Ex. L, pp. 4-5).

[14]   Specifically, plaintiffs sought a pre-motion conference with respect to the documents produced by defendants prior to and after the close of fact discovery (approximately 841 pages of documents—of which over 600 pages were produced *after* the close of fact discovery). Plaintiffs also raised other discovery matters that are not the subject of these objections.

REDACTED–PUBLICLY FILED VERSION

On July 26, 2013, the Magistrate Judge issued an Order refusing to grant any of the relief sought. Without distinguishing between the admissibility issues and the other discovery matters that are not pertinent to this appeal, he simply stated:

> During the Parties' June 17, 2013 telephone conference, . . . . The Court [ ] explained that it did not find that Plaintiffs' articulated reasons for choosing to seek information through Rule 30(b)(6) constituted "good cause" under Rule 16(b)(4). Additionally, after reviewing certain of Plaintiffs' interrogatories and requests for admission, the Court does not share Plaintiffs' belief that Defendants' responses evidence "recalcitrance" [ ], the existence of "more responsive information and documents" than what was provided to Plaintiffs [ ], or "unsupported denials."

(Ex. A, pp. 2-3).

### C.    The Magistrate Judge Erred In Refusing To Allow Plaintiffs An Opportunity To Establish A Hearsay Exception For The Documents In Discovery

Under Rule 72(a), this Court must modify or set aside any part of an order by a magistrate judge that is clearly erroneous or contrary to law. As explained below, the July 26 Order is erroneous and contrary to law in several respects. In addition, it should be set aside because it will result in substantial wasted time and unnecessary testimony at trial.

### 1.    Plaintiffs Have Established "Good Cause" To Extend Discovery

The Magistrate Judge provided no explanation for his conclusion that plaintiffs failed to demonstrate "good cause" to extend discovery. He also failed to address the specific argument that plaintiffs were seeking to establish the authenticity and admissibility largely of documents produced *after* the close of fact discovery. This was error for two reasons.

*First*, plaintiffs did not seek to extend the discovery cut-off with respect to the documents that were produced before the cut-off—we had already served requests for admissions and notices of deposition before discovery closed, and we sought to compel that discovery. The problem is that the Magistrate Judge found both methods improper as a matter of law. Since, as discussed below, they were fully appropriate, the discovery should be allowed now.

*Second*, defendants waited until after the discovery cut-off to produce most of the documents, thereby making it impossible for plaintiffs to conduct discovery to establish authenticity and admissibility issues during the discovery period.  Again, the July 26 Order ignores this.

Given the obvious relevance of these documents, there is good cause present to allow discovery now, to establish authenticity, thereby streamlining the trial.

### 2.    Plaintiffs' Requests For Admissions

The July 26 Order failed properly to address plaintiffs' requests for admissions to defendants concerning many of the documents that defendants produced prior to the close of fact discovery (Ex. A).  During the February 13 conference, the Magistrate Judge indicated that these requests were inappropriate because they were not limited to requesting admissions as to the factual underpinnings of the exceptions to the hearsay rules:

> And I'm not sure because I haven't seen what was in the request to
> admit whether or not the defendants were making a distinction
> between admitting the factual underpinnings of admissibility or
> admitting admissibility because I can see someone receiving
> requests to admit saying we're not going to admit the legal issues;
> we're just going to admit the factual issues.  Because admissibility
> is a tricky thing to admit.[15]

Federal Rule of Civil Procedure 36(a)(1)(A)—which governs the scope of requests to admit—explicitly rejects any requirement that such requests be limited to requests to admit facts. Rather, the rule states that a party can request admissions relating to "facts, *the application of law to facts*, or opinions about either" (emphasis added).  The Advisory Committee Note to the 1970 amendment that added this language confirms that it "eliminates the requirement that the matters be 'of fact,'" that requests to admit "matters involving 'mixed questions law and fact'"

---

[15]    2/13 Tr. (Ex. L, p. 31).

[are] proper under the rule," and that requests are improper only if they seek "admissions of law unrelated to the facts of this case." Adv. Comm. Notes to Fed. R. Evid. 801(d)(2)(B). Asking whether a specific document satisfies the requirements of an exception to the hearsay rule seeks an admission as to "the application of law to facts."[16] The Magistrate Judge's position on this issue is certainly contrary to law.

Notwithstanding this, in our May 16 Letter, plaintiffs offered to recast their requests to admit to seek admission of the underlying facts necessary to establish that the documents are either not hearsay or are covered by exceptions to the rule against hearsay, and also sought leave to serve an interrogatory requiring defendants to explain any denials. In particular, we asserted that it was important to allow such requests because defendants waited until after the close of discovery to produce the bulk of the documents (over 600 pages). The July 26 Order, however, does not discuss this point, either.

### 3. Plaintiffs' Notices Of Deposition Under Rule 30(b)(6)

Plaintiffs timely served notices of deposition under Rule 30(b)(6) for the custodian(s) of record of the documents in order to establish authenticity and admissibility, in addition to notices

---

[16] *See, e.g., Little Hocking Water Ass'n v. E.I. Du Pont de Nemours & Co.*, C. A. No. 2:09-CV-1081, 2013 WL 1791083, at **4-5 (S.D. Ohio Apr. 26, 2013) (noting that "[a]t least one court has interpreted Rules 26 and 36 of the Federal Rules of Civil Procedure to authorize requests to admit that certain documents qualify as business records, reasoning that such requests are consistent with the interest underlying Rule 36, *i.e.*, the facilitation of proof at trial" and finding the same); *Linde v. Arab Bank, PLC*, No. 04-CV-2799 (NG) (VVP), 2009 WL 8691096, at *11 (E.D.N.Y. June 1, 2009) ("Under Rule 36, if a party fails to provide a proper response to a request for admission, 'the court may order either that the matter is admitted or that an amended answer be served.' Fed. R. Civ. P. 36(a)(6). As the court has specifically overruled the defendant's bank secrecy objections . . . and the defendant has declined to serve an amended answer . . . the court must order that the matters that the defendant has refused to answer . . . are deemed admitted. In addition, to the extent the requests for admissions asked that the defendant confirm the authenticity of the defendant's records obtained from other sources, those records should be deemed admissible as authentic business records of the defendants."); *Fed. Election Comm'n v. Christian Coal.*, 52 F. Supp. 2d 45, n.9 (D.D.C. 1999) ("[I]nexplicably, [defendant] objects to the admissibility of nearly every document on which [plaintiff] relies to establish a material fact on the grounds of authenticity and hearsay. This is so even when [defendant] has separately admitted the fact in response to [plaintiff's] requests for admissions . . . .").

on other issues. The Magistrate Judge refused to allow such depositions on any issue, but the

July 26 Order did not distinguish between the use of Rule 30(b)(6) to establish the authenticity

and admissibility of the documents as opposed to its use for discovery on other factual issues.

During the February 13 conference, the Magistrate Judge stated:

> [T]he matters that have been designated as 30(b)(6) topics are not
> appropriate topics for 30(b)(6) and should have been the subject of
> either interrogatories or requests to admit . . . the 30(b)(6) is more
> designed for a witness who can talk about policies and to just fill
> an empty vessel with factual information is not an appropriate way
> to use 30(b)(6).[17]

This ruling painted with too broad a brush. Rule 30(b)(6) depositions aimed at

custodians of records fit comfortably with the requirement in Fed. R. Evid. 803(6)(D) that the

applicability of the business records exception be established "by the testimony of the custodian

or another qualified witness."

Indeed, courts have repeatedly held that depositions to authenticate documents and

establish their admissibility are appropriate. For example, in *McKesson Corp. v. Islamic*

*Republic of Iran*, 185 F.R.D. 70 (D.D.C. 1999), the plaintiffs sought to compel a deposition of an

official of the Iranian government regarding certain documents. The court ruled that the witness

had to be produced for a deposition in the United States unless Iran agreed to "stipulate to the

authenticity and admissibility of all documents produced by Iran." *Id.* at 81. A number of other

cases have reached similar results.[18] In addition, since defendants waited until after the close of

---

[17]    2/13 Tr. (Ex. L, pp. 4-5).

[18]    *See, e.g., Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1243 (S.D. Fla. 2012) ("Plaintiff may be able to establish, authenticate and attribute [the] statements [at issue] to the Defendant through a Rule 30(b)(6) deposition . . . ."); *Abudiad v. City & Cnty. of San Francisco*, No. 09-CV-1778 (JSW) (NJV), 2011 WL 5520943, at *3 (N.D. Cal. Nov. 14, 2011) ("[I]f the City will not stipulate to the authenticity of documents it produced, the Court will order a limited deposition of a 30(b)(6) deponent for that purpose alone."); *Halbach v. Great-West Life & Annuity Ins. Co.*, No. 4:05-CV-02399-ERW, 2007 WL 2153569, at *1 (E.D. Mo. July 19, 2007)
Footnote continued on next page

discovery to produce most of these important documents, it was clear error not to allow plaintiffs to utilize either requests to admit or depositions under Rule 30(b)(6) to establish authenticity and admissibility.

**D.    This Court Should Create A Procedure To Establish Authenticity And Admissibility In Order To Ensure An Orderly And Efficient Trial**

If authenticity and admissibility cannot be established now, it will negatively impact the trial of this case, as plaintiffs will have to issue trial subpoenas for the appropriate representatives of the defendants and spend time at trial to establish admissibility. This would not be an efficient use of the Court's time and would impose unnecessarily on the jury.

As an alternative, the defendants must be required to identify some basis for contesting authenticity. *See United States Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249, at *6 (S.D.N.Y. Aug. 1, 2006) ("The plaintiffs' argument that the process of discovery provides an implicit guarantee of authenticity is well-founded * * * A party producing a document is in a better position to know whether the document is authentic than the party seeking it in discovery. It is disingenuous for the producing party to dispute the document's authentication without proffering some basis for questioning it.").[19] In *Klieman v. Palestinian Authority*, Civil No. 04-1173 (PLF) (JMF), DE No. 190, p. 7

---

Footnote continued from previous page

("The Court does not believe that it is unreasonable to request a witness who can identify and authenticate documents provided by the opponent in the course of discovery, so that they can be admitted in a future court proceeding."); *High Five Invs., LLC v. Floyd Cnty. Ga.*, 239 F.R.D. 663, 666 (N.D. Ga. Jan. 10, 2007) ("[C]ontrary to Defendant's arguments, Plaintiffs are entitled to inquire concerning the 'origin, timing and authenticity of all materials relied upon for the enactment of said Ordinance,' if only to ensure that those materials, many of which Defendant submitted to the Court, are authentic."); *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 503 (S.D. Ind. 2003) (Rule 30(b)(6) "testimony is particularly important . . . considering the designated witness may authenticate documents [the plaintiff] may produce in discovery").

[19]    *See, e.g., Commercial Data Servs., Inc. v. IBM Corp.*, 262 F. Supp. 2d 50, 58 n.3 (S.D.N.Y. 2003) ("In this Court's experience, it is unprecedented to have reputable counsel (or any counsel,

Footnote continued on next page

(D.D.C. Feb. 11, 2013) (Ex. N), the estate of a woman killed by a terrorist sued both the PA and

the PLO for damages.  The plaintiff sought an extension of the discovery cut-off[20] to take

depositions under Rule 30(b)(6) to establish that documents in the possession of the government

of Israel were both authentic and covered by the business records exception.  The PA and the

PLO opposed the relief.  The court responded by placing the burden on the PA and the PLO to

show why any of the documents should not be admitted:

> I am not going to permit the defendants to play dog in the manger
> and object to the authenticity or hearsay nature of these documents
> while denying plaintiffs the means of overcoming those objections
> through discovery.  Thus, I will deem the documents . . . to be
> authentic and admissible unless defendants show cause within ten
> days why they are not.

This is appropriate here because this case involves documents created and maintained by the

defendants themselves, so they are in the best position to know whether there is any reason why

they would not qualify under an exception to the rule against hearsay.  *Accord Hassan v. Maersk*

*Lines, Ltd.*, No. CV 2003-5443 (DLI) (MDG), 2005 WL 5712849, at *1 (E.D.N.Y. Apr. 15,

2005) ("This Court will address the plaintiff's application because a ruling in advance of trial on

admissibility under Rule 801(d)(2)(D) will not only facilitate the trial process, but will save the

---

Footnote continued from previous page
for that matter) challenge the authenticity of deposition transcripts, discovery responses, and
documents produced from his client's files."); *John Paul Mitchell Sys. v. Quality King Distribs.,
Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) (noting that "the act of production implicitly
authenticated the documents"); *Nabisco v. Warner-Lambert Co.*, 32 F. Supp. 2d 690, 695
(S.D.N.Y. 1999) ("The court finds that the documents prepared by Nabisco and listed as exhibits
by Warner-Lambert are sufficiently reliable, and thus authentic, given that Nabisco produced
most of these documents during discovery and included them on its proposed exhibit list that is
attached to the joint pre-trial order."), *aff'd*, 220 F.3d 43 (2d Cir. 2000); *Bieda v. JCPenney
Commc'ns, Inc.*, No. 92 Civ. 5910 (JFK), 1995 WL 437689, at *1 n.2 (S.D.N.Y. July 25, 1995)
("In addition, the mere fact that Defendants here produced most of the documents in question is
at least circumstantial, if not conclusive, evidence of authenticity.").

[20]    It appears that an extension was necessary because of the time needed to pursue proceedings
in the courts of Israel.

parties time, effort and cost in preparing and presenting their cases.") (internal footnote and citations omitted).

This ruling would comport with another ruling in this case on a different—but somewhat similar—issue. Plaintiffs served a subpoena on the British Broadcasting Corporation (the "BBC"), seeking, among other things, "the deposition of a witness to establish that 'both the documentary and the outtakes [at issue] (a) [were] true copies of the original records and (b) were generated, stored and copied in such a manner as satisfies the business records exception under Fed. R. Evid. 803(b)." *Sokolow v. PLO*, No. 04 Civ. 397 (GBD) (RLE), 2012 WL 3871380, at *2 (S.D.N.Y. Sept. 6, 2012) (citation omitted). The BBC moved to quash the subpoena, arguing that compliance was burdensome and would violate Fed. R. Civ. P. 45. *Id.* Although Judge Ellis found that Fed. R. Civ. P. 45 precluded a deposition as a result of the territorial restrictions contained therein, he directed the BBC to submit "written affidavits from knowledgeable witnesses as to the authenticity of the documentary and outtakes." *Id.* at *4. Defendants should similarly have to respond to what are routine discovery questions.

Accordingly, we ask that the Court, as an alternative to ordering further discovery: (1) require defendants to identify any documents for which they have a good-faith basis for refusing to stipulate to either authenticity or the applicability of one or more exceptions to the hearsay rule; (2) deem as authentic and not excludable as hearsay any documents for which defendants cannot identify such a good-faith basis; and (3) allow plaintiffs to take the depositions of the custodians of any documents as to which defendants can interpose a good-faith objection to authenticity or admissibility.[21]  This relief can be granted under this Court's power to

---

[21]    *Accord Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 290 (2d Cir. 2010) ("The district court did not unfairly shift the burden to Kombassan after it objected . . . . [t]he court merely inquired whether, after the Plan laid a sufficient foundation
Footnote continued on next page

REDACTED—PUBLICLY FILED VERSION

determine the admissibility of evidence for the trial and thus is not subject to the standards of

Rule 72(a).

## III.  THE MAGISTRATE JUDGE ERRED IN REFUSING TO ALLOW PLAINTIFFS TO SERVE A DOCUMENT REQUEST CONCERNING FAWZI MURAR

### A.  New Facts Have Developed Since The Close Of Fact Discovery

Fact discovery closed on December 21, 2012.  Two months later, in February 2013,

plaintiff Varda Guetta ("Ms. Guetta") identified Fawzi Murar, for the first time, as one of the

four shooters involved in the shooting attack on her and her son.  Ms. Guetta identified Murar

after viewing an array of newly obtained photographs.  Prior to that time, the identities of her

attackers were unknown, so it was not possible to seek discovery regarding Murar by name

before the cut-off.

Following this identification, plaintiffs were able to identify other information supporting

Murar's culpability.  As noted, a copy of what appears to be Murar's martyr file ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████  (Ex. O).  The evidence supports the conclusion that Murar was,

bluntly, a terrorist on defendants' payroll and under their control.

Moreover, according to the statement of an individual named Freij Adwan to the Israeli

police dated April 8, 2002, Murar (1) enlisted individuals to carry out other shooting attacks

---

Footnote continued from previous page

for Exhibit 16's admission as an ordinary business record, Kombassan had any good faith reason
to believe it was not such a record."); *405 Condo Assocs. LLC v. Greenwich Ins. Co.*, No. 11 Civ.
9662 (SAS), 2012 WL 6700225, at **5-6 (S.D.N.Y. Dec. 26, 2012) (rejecting defendant's
argument that certain invoices were not admissible pursuant to Fed. R. Evid. 803(6) where
defendant "point[ed] to nothing about the invoices that indicate[d] a lack of trustworthiness" and
"ma[de] no attempt to explain why the invoices fail[ed] to meet the requirements for the business
records exception") (citation omitted).

against Israeli vehicles in the Ramallah area (where the Guettas were shot), (2) personally participated in similar shooting attacks, and (3) dispatched a terrorist to carry out a suicide bombing in Israel (Ex. P). Murar was killed in March 2002 (Ex. B).

Finally, in a statement to the Israeli police dated February 4, 2002, an individual named Issa Natshe made a number of statements corroborating the documents discussed above (Ex. C). For example, Natshe stated: "I want to tell you that I knew that I was going to Taibeh in order to bring a an [sic] Uzi rifle to Fawzi" and also that "Fawzi came to my home early in the morning and told me that he wanted me to take him and his friends to Beit Hanina to carry out a shooting attack . . . ."[22] Finally, Natshe stated: "Fawzi Murar told me that had the three young men carried out the shooting attack, each of them would have received 5000 dollars from Marwan Barghouti."

Plaintiffs sought leave from the Magistrate Judge to serve a document request on defendants concerning Fawzi Murar for specified categories of PA files. The Magistrate Judge, however, failed even to address plaintiffs' inability to have discovered the existence of Murar prior to the close of fact discovery. Rather, as already noted, the Magistrate Judge refused to allow this discovery because he mistook plaintiffs' request as one for "belated discovery *regarding the photographs*" (Ex. A, p. 4) (emphasis added). Plaintiffs' request did not merely go to the Murar photographs, however, but also to establishing defendants' vicarious liability for, and ratification of, the terrorist attack on the Guettas. Plaintiffs seek the same categories of documents regarding Murar that defendants have already produced regarding perpetrators involved in other attacks. In any event, the Magistrate Judge simply missed the point that these requests are "belated" only in the sense that they could not have been made any sooner.

---

[22]    Beit Hanina is near the area where the Guetta Attack occurred.

**B.    These New Facts Constitute Good Cause To Conduct
Limited Documentary Discovery Concerning Fawzi Murar**

    **1.    Plaintiffs Were Diligent In Their Discovery Efforts
Concerning The Guetta Attack**

"As the Second Circuit has reiterated, '[a] finding of good cause [under Fed. R. Civ.

P. 16(b)(4)] depends on the diligence of the moving party.'" *Wade v. N. Am. Asset Servs., LLC*,

12-CV-1111 (ARR), 2013 WL 593470, at \*2 (E.D.N.Y. Feb. 14, 2013) (quoting *Grochowski v.

Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). "In determining whether a party has been

diligent in seeking the requested discovery, courts consider what information 'the party knew, or

should have known,' in advance of the deadline sought to be extended." *Id.* (citation omitted).

Finally, "[a]lthough the moving party's diligence is the 'primary consideration,' courts may also

look to additional facts, including whether the request is opposed, whether the non-moving party

would be prejudiced, and whether further discovery is likely to lead to relevant evidence."

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, No. 10 Civ. 1391 (LTS) (JCF),

2012 WL 6554862, at \*2 (S.D.N.Y. Dec. 13, 2012) (citation omitted).

Here, plaintiffs diligently pursued discovery concerning the Guetta plaintiffs' claims

throughout fact discovery. In the very early stages of discovery—specifically on October 27,

2011 and November 1, 2011—the Guetta plaintiffs served their First and Second Requests for

the Production of Documents on defendants (the "RPDs") (Exs. Q & R).[23] These requests

broadly sought documents concerning the identity of the gunmen involved in the Guetta Attack.

Together, the requests identified 17 individuals whom plaintiffs had reason to believe may have

been involved in the Guetta Attack. Since plaintiffs were not aware that Murar was involved in

the attack at this time, Murar could not have been included in either request.

---

[23]    The Guetta Pls.' First Req. to Produce Docs. & Things, dated Oct. 27, 2011 (Ex. Q); The
Guetta Pls.' Second Req. to Produce Docs. & Things, dated Nov. 1, 2011 (Ex. R).

After conferring with defendants for some time and failing to reach a resolution of their objections, plaintiffs sent a letter dated November 19, 2012 to Judge Ellis requesting a pre-motion conference to compel defendants to produce all responsive documents to the RPDs (Ex. S). Defendants continued to oppose plaintiffs' requests for discovery concerning the Guetta Attack. Judge Ellis denied plaintiffs' motion to compel on December 5, 2012, and this Court overruled plaintiffs' objections on January 16, 2013. This ruling, however, concerned only the Guetta plaintiffs' RPDs—which could not have included (and, in fact, did not include) Murar.

The Guetta plaintiffs also served a third document request on November 21, 2012 (Ex. T).[24] This request sought all documents concerning the Guetta Attack from the PA's General Intelligence Service ("GIS"), the Preventive Security Service ("PSS"), the National Security Forces ("NSF"), the Military Intelligence ("MI"), the Presidential Security Force ("Force 17"), and the civil police force ("PAP"). Defendants similarly objected to the request and did not produce any documents. Following this Court's order affirming Judge Ellis's ruling on the RPDs—and through their own efforts—plaintiffs obtained the photographs shown to Ms. Guetta on or about February 17, 2013.

Based on the foregoing, the Magistrate Judge's ruling is clearly erroneous and contrary to law. Plaintiffs were diligent in pursuing discovery concerning the Guetta Attack and could not have learned about Murar's involvement prior to the close of fact discovery. Defendants produced no responsive documents during discovery, and plaintiffs did the best that they could with the limited information in their possession. *See Soroof Trading Dev. Co.*, 2012 WL 6554862, at **3-4 (permitting plaintiff to depose expert witness after close of discovery where, among other things, (1) plaintiff had asked defendants to identify persons with knowledge of the

---

[24]    The Guetta Pls.' Third Req. to Produce Docs. & Things, dated Nov. 21, 2012 (Ex. T).

facts concerning the case, as well as to produce documents concerning the same, and defendants did not; and (2) plaintiff had acted reasonably and expeditiously in seeking leave to conduct further discovery).

### 2.    Discovery Concerning Fawzi Murar Is Relevant And Would Not Unduly Burden Defendants

Discovery concerning Murar is highly relevant and should have been permitted for a number of reasons. Because Murar is deceased, plaintiffs will not have the option of serving him with a trial subpoena. Moreover, and most importantly, like the other PA files involved in this case—which are described at length above and have already been produced to plaintiffs concerning perpetrators involved in other attacks—Murar's files would go to establishing defendants' vicarious liability for, and ratification of, the terrorist acts at issue.

Plaintiffs also narrowly tailored their request for discovery to avoid serving an unduly burdensome discovery request on defendants after the close of fact discovery. Specifically, in a letter to the Magistrate Judge dated June 13, 2013 (Ex. U), plaintiffs requested the following types of documents: (1) Murar's martyr file; (2) Murar's PA personnel file and any payment records; (3) any photographs of Murar, including a color copy of his PA identification card; and (4) Murar's files from the GIS, PSS, NSF, MI, Force 17, and PAP.

### 3.    Plaintiffs Should Be Permitted To Take Limited Reciprocal Discovery

Plaintiffs also promptly disclosed the Murar identification to defendants on February 19, 2013, and provided defendants with the photograph of Murar that Ms. Guetta viewed in making the identification (Ex. V). Following this disclosure, counsel for defendants immediately requested a second deposition of Ms. Guetta, to which plaintiffs agreed. This deposition was conducted on May 7, 2013. In advance of this deposition, plaintiffs produced the 15 photographs comprising the photo array at issue (Ex. W). Defendants have since proffered an expert report

on the reliability of the identification, and, in fact, insisted that Ms. Guetta's deposition be conducted on a date that would give their expert the opportunity to examine her testimony.

Plaintiffs should be entitled to reciprocal discovery. As the above facts demonstrate, it will be plaintiffs who suffer severe prejudice if discovery concerning Murar is not permitted. Murar is deceased, and plaintiffs have no other way to obtain information concerning his connection to the PA and the PLO. Defendants, on the other hand, would not be prejudiced because: (1) defendants have already conducted discovery with respect to Murar; (2) plaintiffs' request for documentary discovery is not burdensome; and (3) no date has yet been set for either summary judgment motions or trial. It would be fundamentally unfair for defendants to argue at trial that they are not responsible for Murar's violent acts without revealing what their files show about him.

In sum, it was contrary to law and clear error for the Magistrate Judge to deny plaintiffs limited discovery concerning Murar, which goes to a crucial issue in the case.

## CONCLUSION

On the basis of the foregoing, this Court should set aside Judge Ellis's Order dated July 26, 2013 and permit plaintiffs to (1) establish the authenticity and admissibility of the approximately 841 documents at issue prior to trial, and (2) conduct limited discovery concerning Fawzi Murar.


Dated: August 9, 2013


THE BERKMAN LAW OFFICE, LLC

By: _____
Robert J. Tolchin

111 Livingston Street
Brooklyn, NY 10021
(718) 855-3627
E-mail: rtolchin@berkmanlaw.com

ARNOLD & PORTER LLP

By: _____
Kent A. Yalowitz

399 Park Avenue
New York, NY 10022
(212) 715-1000
E-mail: Kent.Yalowitz@aporter.com