# EXHIBIT  Q

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

                                     Civ. No. 04-397 (GBD) (RLE)

    v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

## THE GUETTA PLAINTIFFS'
## FIRST REQUEST TO PRODUCE DOCUMENTS AND THINGS
### (No. 1)

        Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, plaintiffs Varda Guetta and Oz Joseph Guetta ("Plaintiffs"), by counsel, request that Defendants the Palestinian Authority and the Palestine Liberation Organization produce the documents and things described below at The Berkman Law Office, 111 Livingston Street, Suite 1928, Brooklyn, New York 11201, within thirty (30) days of the service of these requests.

## INSTRUCTIONS AND GENERAL DEFINITIONS

    1.     Defendants shall respond to these requests as required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

    2.     The full text of the definitions and rules of construction set forth in Local Civil Rule 26.3(c) and (d) is incorporated by reference herein and governs these requests.

## REQUESTS FOR DOCUMENTS AND THINGS

    1.     All documents (including without limitation all photographs and all video recordings) constituting or containing still and/or moving images of the following individuals:

1. Muhanad Abu Halawa

2. Mohammed Abdel Rahman Maslah, identity no. 902845643

3. Haitham al-Mutfak Hamdan, identity no. 906934823

4. Ziyad Hamouda Yakoub Hamouda, identity no. 902924117

5. Fares Sadak Mahmoud Ghanem, identity no. 025806985

6. Mohammed Sami Ibrahim Abdullah, identity no. 979469954

7. Husam Akel Rajab Shehadeh, identity no. 975564733

8. Zaidan al-Badawi

9. Nizar Wahadan

10. Ali Alian

11. Ahmed Taleb Mustafa Barghouti, identity no. 994466860

12. Freij Asad Salam Awdan, identity no. 410052617

13. Ahmed Abbas, identity no. 42219495

14. Issa Natshe, identity no.  040996514

15. Khaled Jamal Musa al-Shawish, identity no.  959367327

October 27, 2011

Plaintiffs, by their Attorney,

Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com

<u>C E R T I F I C A T I O N</u>

      I hereby certify that on October 27, 2011, I served the within by electronic mail and United States mail on the counsel listed below.

Mark J. Rochon
Richard A. Hibey
Brian A. Hill
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701

 

_____
Robert J. Tolchin

3

# EXHIBIT  R

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

                                 Civ. No. 04-397 (GBD) (RLE)

        v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.

## THE GUETTA PLAINTIFFS'
## SECOND REQUEST TO PRODUCE DOCUMENTS AND THINGS
### (No. 2)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, plaintiffs Varda Guetta and Oz Joseph Guetta ("Plaintiffs"), by counsel, request that Defendants the Palestinian Authority and the Palestine Liberation Organization produce the documents and things described below at The Berkman Law Office, 111 Livingston Street, Suite 1928, Brooklyn, New York 11201, within thirty (30) days of the service of these requests.

## INSTRUCTIONS AND GENERAL DEFINITIONS

1.    Defendants shall respond to these requests as required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

2.    The full text of the definitions and rules of construction set forth in Local Civil Rule 26.3(c) and (d) is incorporated by reference herein and governs these requests.

## REQUESTS FOR DOCUMENTS AND THINGS

2.    All documents (including without limitation all photographs and all video recordings) constituting or containing still and/or moving images of the following individuals:

1.   Iyad Subhi Ahmed Sabahi, identity no. 905283156

2.   Samer Omar, identity no. 906834890

November 1, 2011

Plaintiffs, by their Attorney,

_____

Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com

# C E R T I F I C A T I O N

I hereby certify that on November 1, 2011, I served the within by electronic mail and

United States mail on the counsel listed below.

Mark J. Rochon
Richard A. Hibey
Brian A. Hill
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701

_____

Robert J. Tolchin

# EXHIBIT  S

# THE BERKMAN LAW OFFICE, LLC

111 Livingston Street, Suite 1928
Brooklyn, New York 11201

Tel: (718) 855-3627                                        Fax: (718) 855-4696

November 19, 2012

**BY HAND**
Honorable Ronald L. Ellis
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:   *Sokolow et. al. v. Palestinian Liberation Organization, et. al.*
             <u>Civ. No. 04-397 (GBD)</u>

Dear Magistrate Ellis,

        We write on behalf of Plaintiffs, pursuant to Loc. Civ. R. 37.2 and ¶ 2 of Your Honor's Individual Practices, to request a pre-motion conference to compel Defendants to produce all items responsive to the Guetta Plaintiffs' First and Second Request for Production of Documents ("RPDs") (seeking documents concerning Plaintiffs' efforts to determine the identity of the gunman in this matter). (Exhibits A and B).

        Plaintiffs have attempted to cooperate with Defendants to prevent the need for motion practice without success. Defendants have stood on their objections.

        On the evening of January 8, 2001, while Plaintiff Varda Guetta was driving her 12-year-old son, Plaintiff Joseph Guetta, home from soccer practice, Defendants' operatives opened fire on them with machine-guns, striking and seriously wounding Plaintiff Joseph Guetta. They were traveling in their family car on a public highway near Jerusalem. Miraculously, Mrs. Guetta was not hit, but was a victim of the terror and lasting physical and emotional effects the gunmen caused to her and her son.

Case 1:04-cv-00397-GBD-RLE   Document 326-6   Filed 12/19/12   Page 2 of 7

THE BERKMAN LAW OFFICE, LLC

November 19, 2012
Page 2 of 5

Mrs. Guetta clearly saw the face of one of the gunman, who she recalls was laughing, and she continues to see his face "every time that [she] closes[s] her eyes." Mrs. Guetta testified that if she sees the gunman again, 10 years or even 20 years after the attack, she will know him. "He had a mustache, he was dark skin, and he smiled, he shot and smiled." (Relevant excerpt attached as Exhibit C, pp. 30-33).

The *modus operendi* of the Guetta terrorist attack was the same as numerous other attacks in the same area, at the same time, for which many people were convicted—many of them PA security officers. Plaintiffs therefore have reason to believe that one of these convicted terrorists or their accomplices was also involved in the Guetta attack.

Therefore, in October, 2011 and November, 2011, the Guetta Plaintiffs sent their First and Second RPDs to the Defendants seeking photographs of seventeen people identified by Plaintiffs as having been convicted of carrying out similar attacks in the same area using similar *modus operendi* or who were identified in police statements of other perpetrators as having been involved in such attacks. Plaintiffs have the need and the right to show Mrs. Guetta photographs of these people and to see if she can identify her attacker. Each of the photographs listed is a person reasonably suspected of having been involved in the Guetta attack.

Defendants have refused to produce the requested photographs. After five pages of boilerplate objections, they specifically objected to these requests, claiming that the requests are overly broad and are irrelevant, based mostly upon the arguable unreliability of eyewitness identification. These objections are frivolous. The requests are reasonable and necessary and not unduly burdensome or overly broad. (Exhibit D and E, pp. 6-7).

*First*, the pictures are obviously relevant to the issue of who perpetrated the attack and whether there is a link between Defendants and such perpetrators. In fact, the request is critical to the Guetta Plaintiffs' case. As Defendants well know, if Plaintiffs do not get the pictures Mrs. Guetta and her son will not be able to pursue their lawsuit because there is no other way for Plaintiffs to identify the perpetrators. A denial of Plaintiffs' motion will be dispositive of the Guetta Plaintiffs lawsuit. In addition, Plaintiffs note that such

photographs should be and most likely would be accessible to the victims in any criminal or civil case where identification of a perpetrator is necessary.

*Second*, the request for Defendants to produce the very specific list of pictures that were requested is not burdensome at all. Indeed it is highly specific and limited.  Plaintiffs provided Defendants with all of the names and, where possible, the identification numbers for the individuals whose photographs they seek. All residents of the PA have a picture identification to which the Defendant PA clearly has access. Moreover, many of the named individuals were PA security officers who also had employee picture identification issued by the PA. It would likely take no more than a few hours to make copies of those pictures, which likely are computerized and could be dragged easily into an email.

*Third*, Defendants argument relating to eyewitness testimony may be a weight of the evidence issue for the jury and proper for closing arguments, but it is certainly not a valid basis for denying discovery. It is axiomatic that eyewitness testimony is admissible in Court. Plaintiffs are requesting an entire array of pictures of people in order to make Mrs. Guetta's viewing as credible and unbiased as possible. The named individuals have also been convicted or linked to similar attacks, using the same *modus operendi* in the same area of the country. Plaintiffs' request is clearly reasonably calculated to lead to the discovery of admissible evidence. Defendants' refusal lacks merit and should not be countenanced.

After unsuccessfully attempting to cajole Defendants into providing responses, Plaintiffs made further efforts to avoid motion practice by spending significant time searching for the requested photographs themselves. And, in fact, Plaintiffs were able to locate a photograph of the most famous perpetrator of these kinds of attacks, Mohanad Abu Halawa. However, Mrs. Guetta did not identify him as the perpetrator whose face she so clearly remembers. Therefore, Plaintiffs have no choice, but to move to compel the photographs requested in their first and second RPDs.

It is important to emphasize that this action is brought under the civil provisions of the Antiterrorism Act. As the courts of this Circuit and others

have found—the prosecution of ATA cases serves not only Plaintiffs' personal interest, but the national interest of the United States:

> The legislative history of the ATA … reveal[s] this country's profound and compelling interest in combating terrorism at every level …
>
> Congress has explicitly granted private parties the right to pursue common tort claims against terrorist organizations and those that provide material support or financing to terrorist organizations. Certainly, private tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism <u>vindicate the national and international public interest</u>.

*Weiss v. National Westminster Bank*, 242 F.R.D. 33, 46, 50 (E.D.N.Y. 2007) (emphasis added). *See also e.g. Ungar v. Palestinian Authority*, 715 F.Supp.2d 253, 268 (D.R.I. 2010) ("[T]here is an extremely strong interest in enforcing judgments … entered under the civil provisions of the Antiterrorism Act ("ATA")"). Therefore, courts have tended to take a liberal approach to allowing discovery in ATA actions.[1] *See e.g. Linde v. Arab Bank*, 269 F.R.D. 186 (E.D.N.Y. 2010); *Weiss*, 242 F.R.D. at 55-56; *Strauss v. Credit Lyonnais*, 242 F.R.D. 199 (E.D.N.Y. 2007); *Strauss v. Credit Lyonnais*, 249 F.R.D. 429 (E.D.N.Y. 2008).

---

[1] See *also* recent, October 29, 2012, opinion of Southern District of New York Judge Shira Scheindlin in the matter of *Wultz, et. al. v. Bank of China Ltd., et. al.*, Case No.11 Civ. 1266 (SAS), at 15: "But in light of the significant U.S. interest in eliminating sources of funding for international terrorism, and the other factors discussed below, the law governing discovery disputes in this case must ultimately be the broad discovery rules of the Federal Rules of Civil Procedure," and at 22: "The United States has a "profound and compelling interest in combating terrorism at every level, including disrupting the financial underpinnings of terrorist networks." (quoting *Strauss v. Credit Lyonnais*, S.A., 249, F.R.D. 429, 438–3919, 442-44 (E.D.N.Y. 2008)).

THE BERKMAN LAW OFFICE, LLC

November 19, 2012
Page 5 of 5

          The Guetta Plaintiffs respectfully wish to ask this Court to compel
the Defendants to fully respond to the first and second RPDs, or in the
alternative, ask for time to fully brief the Court on this issue.


                              Respectfully yours,


                              Robert J. Tolchin

# EXHIBIT  T

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, et al.,

        Plaintiffs,

                                     Civ. No. 04-397 (GBD) (RLE)

    v.

THE PALESTINE LIBERATION ORGANIZATION, et al.,

        Defendants.


## THE GUETTA PLAINTIFFS' THIRD REQUEST
## TO PRODUCE DOCUMENTS AND THINGS
### (No. 3-4)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, plaintiffs Varda Guetta and Oz Joseph Guetta ("Plaintiffs"), by counsel, request that Defendants the Palestinian Authority and the Palestine Liberation Organization produce the documents and things described below to Plaintiffs' counsel within 30 days of the service of these requests.

## INSTRUCTIONS AND GENERAL DEFINITIONS

1.      Defendants shall respond to these requests as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. The definitions and rules of construction set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court are incorporated by reference herein and govern these requests.

## SPECIFIC DEFINITIONS

1.      "PA" means and refers to defendant The Palestinian Authority and any ministry, agency, division, bureau, department or instrumentality thereof.

2.      "PLO" means and refers to defendant The Palestine Liberation Organization and any agency, division, bureau, department or instrumentality thereof.

3.      "Defendants" means and refers collectively to Defendants PA and PLO and any ministry, agency, division, bureau, department or instrumentality thereof.

4.      "PA Martyr Form and File" in respect to any deceased or injured person, means and refers to the complete paper form and file regarding that person from the PA's Ministry of Social Affairs, or any predecessor or successor entity thereto. The documents produced by defendants as Bates 02:006827-34 are an illustrative example of a PA Martyr Form and File.

5.      "PA Prisoner Form and File" in respect to any person who is or was a prisoner, means and refers to the complete paper form and file regarding that person from the PA's Ministry of Prisoner Affairs, or any predecessor or successor entity thereto. The existence of PA Prisoner Forms and Files was confirmed in the deposition of Jawad Amawi in the matter of *Klieman v. Palestinian Authority* at pp. 51; 64.

6.      "PLO Martyr File" in respect to any deceased or injured person, means and refers to the complete paper file from the PLO's Social Affairs Institution, or any predecessor or successor entity thereto. The existence of PLO Martyr Files is evidenced by the document produced by defendants in the matter of *Gilmore v. Palestinian Authority* as Bates 06:000086.

7.      "PSS" means and refers to the PA's Preventive Security Service.

8.      "GIS" means and refers to the PA's General Intelligence Service.

9.      "NSF" means and refers to the PA's National Security Forces.

10.      "MI" means and refers to the PA's Military Intelligence.

11.      "Force 17" means and refers to PA's Presidential Security Force.

12.      "PAP" means and refers to the PA's civil police force.

13.     The "Terrorist Attack" means and refers to the January 8, 2001, terrorist shooting attack from which the Plaintiffs' action arises.

## REQUESTS FOR DOCUMENTS AND THINGS

3.      All documents concerning the Terrorist Attack, including without limitation:

      a.   All documents concerning the Terrorist Attack in the paper, computerized, electronic or other files or archives of the PSS.

      b.   All documents concerning the Terrorist Attack in the paper, computerized, electronic or other files or archives of the GIS.

      c.   All documents concerning the Terrorist Attack in the paper, computerized, electronic or other files or archives of the NSF.

      d.   All documents concerning the Terrorist Attack in the paper, computerized, electronic or other files or archives of the MI.

      e.   All documents concerning the Terrorist Attack in the paper, computerized, electronic or other files or archives of Force 17.

      f.   All documents concerning the Terrorist Attack in the paper, computerized, electronic or other files or archives of the PAP.

4.      In respect to all individuals listed below who on January 8, 2011 were employed by the PA or the PLO in a position related to police, security and/or intelligence – all documents concerning the whereabouts of such individuals on January 8, 2001:

      a.   Iyad Subhi Ahmed Sabahi, identity no. 905283156

      b.   Samer Omar, identity no. 906834890

      c.   Muhanad Abu Halawa

      d.   Mohammed Abdel Rahman Maslah, identity no. 902845643

      e.   Haitham al-Mutfak Hamdan, identity no. 906934823

      f.   Ziyad Hamouda Yakoub Hamouda, identity no. 902924117

g.  Fares Sadak Mahmoud Ghanem, identity no. 025806985

h.  Mohammed Sami Ibrahim Abdullah, identity no. 979469954

i.  Husam Akel Rajab Shehadeh, identity no. 975564733

j.  Zaidan al-Badawi

k.  Nizar Wahadan

l.  Ali Alian

m.  Ahmed Taleb Mustafa Barghouti, identity no. 994466860

n.  Freij Asad Salam Awdan, identity no. 410052617

o.  Ahmed Abbas, identity no.  42219495

p.  Issa Natshe, identity no.  040996514

q.  Khaled Jamal Musa al-Shawish, identity no.  959367327


November 21, 2012

Plaintiffs, by their Attorney,

Robert J. Tolchin
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com


David I. Schoen
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama  36106
(334) 395-6611
DSchoen593@aol.com

<u>**CERTIFICATION**</u>

I hereby certify that on November 21, 2012, I caused the within to be served by electronic mail and by hand on the counsel listed below:

Brian A. Hill
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701

_____
Robert J. Tolchin

# EXHIBIT  U

ARNOLD & PORTER LLP

Kent A. Yalowitz
Kent.Yalowitz@aporter.com

212.715.1113
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

June 13, 2013

**BY HAND**

Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
       Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Ellis:

    We write on behalf of plaintiffs in response to defendants' letters to the Court dated May 14 and June 7, 2013 concerning the identification, by plaintiff Varda Guetta, of one of the four shooters involved in the attack on Ms. Guetta and her then 12-year old son.

    *First*, the Court should reject defendants' preclusion request. *Second*, in light of Ms. Guetta's identification of one of the shooters, Fawzi Murar, plaintiffs also respectfully request leave to serve a document request concerning Murar.

I.    **The Court Should Deny Defendants' Preclusion Application**

    Defendants' preclusion application should be denied. On approximately February 17, 2013, Ms. Guetta identified Murar as one of the four shooters involved in the Givon Junction attack. Ms. Guetta identified Murar after viewing 15 photographs, in a photo array provided to her by her counsel, Robert Tolchin.

    According to PA records obtained by plaintiffs, Murar was a Lieutenant in "Force 17," the PA's Presidential Security Force. These PA records also identify Murar as a member of Fatah's Al-Aqsa Brigades. Other documentary materials show that Murar (1) enlisted individuals to carry out other shooting attacks against Israeli vehicles in the Ramallah area (near Givon Junction), and (2) dispatched a terrorist to carry out a suicide bombing in Israel. Murar was killed during an Israeli airstrike in March 2002.

    Plaintiffs promptly disclosed the Murar identification to defendants on February 19, 2013, and provided defendants with the photograph of Murar that Ms. Guetta viewed in making

# ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
June 13, 2013
Page 2

the identification. Following this disclosure, counsel for defendants immediately requested a second deposition of Ms. Guetta, to which plaintiffs agreed. This deposition was conducted on May 7, 2013. In advance of the requested deposition, plaintiffs produced the 15 photographs comprising the photo array at issue. Other than the photographs described above, there are no other documents responsive to defendants' Interrogatory No. 23 or Amended Notice of the Second Deposition of Varda Guetta, dated April 22, 2013.

The timing of Ms. Guetta's identification of Murar is reasonable in the context of this case. As the Court is aware, on October 27, 2011 and November 1, 2011—in the very early stages of discovery—the Guetta plaintiffs served their First and Second Requests for the Production of Documents on defendants (the "RPDs"). These requests broadly sought documents concerning the identity of the gunmen involved in the Guetta attack. Defendants objected to the RPDs in their entirety and refused to produce any responsive documents. The Court denied plaintiffs' motion to compel on December 5, 2012, and Judge Daniels overruled plaintiffs' objections on January 16, 2013. Plaintiffs then began a fresh investigation to try to identify the shooters, through which these 15 photographs were obtained.

Based on this timing, defendants cannot claim prejudice. Not only did defendants receive the full photo array that Ms. Guetta was shown, but they also requested and received a deposition on the specific issue of the Murar identification. Defendants retained an expert to opine on the reliability of the photo array, and insisted that Ms. Guetta's deposition be conducted on a date that would give their expert an opportunity to examine her testimony.

Finally, whether a witness identification is reasonable is a jury question, except in cases where there is a "taint of improper state conduct." *Perry v. New Hampshire*, 132 S. Ct. 716, 728 (2012) ("The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness.").

## II.    The Court Should Grant Plaintiffs' Request for Leave to Serve a Document Request Concerning Fawzi Murar

The Court should allow plaintiffs to serve document discovery relating to Murar. Specifically, plaintiffs seek the following types of documents: (1) Murar's martyr file;[1] (2)

---

[1]    We have, what we believe to be, a copy of Murar's martyr file. We have reached out to counsel for defendants to confirm that this is a true and correct copy of the file.

# ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
June 13, 2013
Page 3


Murar's PA personnel file and any payment records; (3) any photographs of Murar, including a color copy of his PA identification card; and (4) Murar's GIS, PSS, NSF, MI, Force 17, and PAP files. In light of Ms. Guetta's particularized identification of Murar, this documentary discovery is highly relevant. The photographs can be presented at trial so that the jury may reach its own conclusion about the reliability of Ms. Guetta's identification of Murar. Additionally, because Murar is deceased, plaintiffs do not have the option of serving him with a trial subpoena. Finally, like the other PA files involved in this litigation, which have already been produced to plaintiffs, Murar's files are relevant to establishing defendants' vicarious liability and ratification.

As noted above, defendants have themselves taken recent discovery on the Murar identification and plan to proffer an expert on the identification's reliability. Plaintiffs should be permitted to take reciprocal discovery. Plaintiffs' request is also narrowly tailored and will not unduly burden defendants. Plaintiffs seek information relating to only one individual, who is a former PA officer and employee, with a demonstrated connection to this case.

Finally, Murar has never been the subject of any discovery rulings by this Court. The Guetta plaintiffs' initial RPDs did not include Murar because, at the time, he had not been identified as one of the shooters. Now that he has been so identified, the discovery that plaintiffs seek is highly appropriate.

Respectfully yours,

Kent Yalowitz
Arnold & Porter, LLP
*Counsel for Plaintiff Varda Guetta*

cc: Brian Hill, Esq.
   Robert J. Tolchin, Esq.

# EXHIBIT  V

**Hill, Brian**

| | |
|---|---|
| **From:** | tolchinlaw@gmail.com on behalf of Robert Tolchin <rjt.berkman@gmail.com> |
| **Sent:** | Tuesday, February 19, 2013 2:12 PM |
| **To:** | Hibey, Richard |
| **Cc:** | Hill, Brian; Rochon, Mark; Robert Tolchin; Mordechai Haller; Nitsana Darshan-Leitner; Rachel Weiser |
| **Subject:** | Sokolow - Guetta claim - Fawzi Murar |
| **Attachments:** | Fawzi Murar photo.pdf |

Dick,

The *Sokolow* plaintiffs hereby supplement their Rule 26 disclosures and discovery responses with the attached document. Please be advised that the attached document is a photograph of the late Fawzi Murar, who was an officer in Force 17, and that Varda Guetta has identified Fawzi Murar as one of the gunmen that opened fire on her and her son.

--Bob Tolchin