# Exhibit A



Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com

May 27, 2013

VIA FEDERAL EXPRESS

Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Sokolow v. Palestine Liberation Organization et al.* — 04-CV-397 (GBD) (RLE)

Dear Judge Ellis:

I write in response to Plaintiffs' May 16, 2013 letter which requests that the Court allow the Plaintiffs to conduct voluminous additional fact discovery, including serving an unspecified number of new requests for admission, interrogatories and document requests as well as taking an unspecified number of depositions of fact witnesses who were identified to Plaintiffs well before the close of fact discovery. Plaintiffs also request that the Court compel further responses to document requests and requests for admission, all of which also could have been sought during, or shortly after, the fact discovery period and are meritless in any event. All of the additional fact discovery which Plaintiffs now request clearly could have been sought during the eighteen-month fact discovery period in this matter, but Plaintiffs, for whatever reasons, failed to seek this discovery during that period. Plaintiffs' tardy request to now reopen fact discovery on these issues thus fails to demonstrate the "good cause" required by Rule 16(b), and because the Plaintiffs "had ample opportunity to obtain the information by discovery in the action" during the fact discovery period, the Court is independently required by Rule 26(b)(2)(C)(ii) to deny Plaintiffs' requests. Accordingly, Plaintiffs' requests should be denied. *Id.*[1]

### A.   Introduction and Background

Fact discovery in this matter closed by Order of the Court on December 21, 2012. DE 131 ¶ 3.

At the outset of discovery, the Court ruled that fact discovery would have a fixed closing date, and that any disagreements about its completion would not delay the close of discovery. *See* 6/21/11 Tr. at 8:24-9:24. Midway through the eighteen-month fact-discovery period, it

---

[1] Plaintiffs' May 16, 2013 letter makes numerous factual assertions that are incorrect or not supported by the record, but because they do not pertain to any of the issues at bar, Defendants will not attempt to address them here. Defendants will address those assertions in due course as the issues require, and Defendants' failure to address a given assertion should not be regarded as agreement.

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com



**MILLER CHEVALIER**

Hon. Ronald L. Ellis<br>
May 27, 2013<br>
Page 2

became apparent to Defendants that Plaintiffs were planning to ask that the dates set by the Court's Scheduling Order be extended. Defendants raised this concern with the Court at the March 20, 2012 hearing in this matter. *See* 3/20/12 Tr. at 27:4-8 ("And my concern is I think it should be obvious to the Court by now. The plaintiffs are trying to extend the discovery period in the case. I don't want this to become the basis of trying to extend the discovery period and that's why I'm asking for [] sanctions."). In response, the Court made it plain that Plaintiffs should have no expectation that the fact-discovery deadline would be altered. *See id.* at 27:9-10 ("Well, okay. First of all, it's not going to extend the discovery period.").

In April of last year, Plaintiffs professed to understand the Court's position that the fact-discovery deadline would not be extended, absent genuinely extraordinary circumstances. For example, to justify their application for a Hague request in March of 2012 – several months after the timeframe in which the Court suggested that such an application would be well received – Plaintiffs promised the Court that they would *not* be seeking an extension of the December 21, 2012 fact-discovery deadline under any conceivable circumstances, calling the need for such an extension "hypothetical." *See* DE 232 at 7. Similarly, Plaintiffs represented to the Court in early April 2012 that, with the fact-discovery phase more than halfway completed, "there is not the slightest reason to believe that any such enlargement will be needed," barring "extraordinary force majeure-type events." *See id.*

In August of last year, Judge Daniels made it clear to both parties that he was "not satisfied with the pace of discovery," and that he would not look favorably upon maneuvers aimed at prolonging discovery:

> So, I think that the appropriate thing [to do] is to move forward efficiently with discovery at this point. I think that I am not satisfied with the pace of discovery. I think I told Magistrate Judge Ellis that I expected him to be firm with discovery. . . . So the parties should move forward to complete discovery, move forward in anticipation of full summary judgment briefing if that's the step to take after discovery, and to anticipate that you will be spending, devoting your time to completing discovery on these issues for the rest of the year rather than engaging in further motions . . . other pleadings or generating other claims or affirmative defenses. . . . So, as I say, I am going to have further conversation with Magistrate Judge Ellis to make sure that things are moving efficiently and that he makes sure that they're moving efficiently. . . . I will instruct Magistrate Judge Ellis to make sure the parties are on schedule and move forward efficiently and resolve quickly an issue that might otherwise delay the completion of discovery in this case.

8/9/12 Tr. at 82:15-19; 83:18-24; 84:11-14; 85:7-10.

Miller & Chevalier Chartered

1334327.1



Hon. Ronald L. Ellis
May 27, 2013
Page 3

On November 19, 2012, the Plaintiffs filed a Motion to Expand the fact discovery period (DE 267). At a hearing on November 20, 2012, the Court took pains to reiterate its position once again during the hearing in this matter:

> I mean, we have some legal issues, some practical issues, and then we have – you know, even if we're going to be extending discovery, we're not extending discovery for the purpose of opening [] everything up for new stuff. We're – if we extend discovery in this case it's for the purpose of finishing stuff that started, so I don't want anybody to be under the misconception that, you know, if I grant you any extensions of discovery then all of a sudden somebody is going to file some new discovery request. This is all cleanup at this point.

\*\*\*\*

> Well, let me be clear. If, in fact, somebody is not scheduling discovery in a hope that we'll have an extension, that's not going to work. Let me – I'll reiterate what I said before. We don't – I don't give general extensions. I give extensions for you to complete what you tried to do during a period of the discovery and were unable to complete.

\*\*\*\*

> [I]t seems to me as *prima facie* that before you ask for an extension you have to show that you tried to do the discovery during the discovery period and when they were unable to do it if you never tried to schedule anything that's not going to work.

11/20/12 Tr. at 33:3-12, 42:16-22, 43:11-15.

The next day, November 21, 2012, Plaintiffs served Defendants with their final sets of document requests, interrogatories and requests for admission.

A week later, Plaintiffs served Defendants with a Rule 30(b)(6) notice for the PLO. Plaintiffs subsequently served Defendants with an Amended Rule 30(b)(6) notice for the PA on December 2, 2012. DE 294-1 at 6, DE 294-2 at 14. Those notices contained a total of 35 topics consisting of over 170 subparts, and directed each Defendant to appear for deposition less than two weeks later on December 10 and 11, 2012. On December 3, 2012, Defendants filed a pre-motion letter requesting that the Court enter a protective order directing that the discovery sought in Plaintiffs' Rule 30(b)(6) depositions not be permitted. At the hearing on December 20, 2012, the Court entered a protective order preventing the Rule 30(b)(6) depositions of the Defendants which had been noticed by the Plaintiffs on the grounds that "the topics as articulated by the plaintiffs are not contemplated or appropriate for a 30(b)(6) witness." DE 293-1 at 5: 6-8. The



Hon. Ronald L. Ellis
May 27, 2013
Page 4

Court then, *sua sponte*, granted Plaintiffs an opportunity to seek further discovery consistent with its ruling:

> So the second part of my ruling is this. I will give the plaintiffs an opportunity to propose to me or to propose in conjunction with discussions with the defendants how to -- to make sure that the plaintiffs get appropriate discovery on issues that are relevant to the claims in the case. I will -- I'm not going to expect you to give it to me in a week but I will expect that by January 5th I will get from the parties either an agreement from the parties about how to give the plaintiffs appropriate discovery or an application for the plaintiffs for discovery which does not run afoul of the ruling which I've made today.

*Id.* at 16:18-17:3.

The Court then admonished the Parties: "As to the question of whether or not this is going to be a limited extension or an open ended extension, from the very first extension we're not talking about open ended . . . I don't expect anybody to hit me with something that's new and if somebody hits you with something that's totally new or unexpected it's going to be problematic." 12/20/2012 Tr. at 20:9-17. Plaintiffs' subsequently filed Rule 72(a) objections to the oral order issued at the December 20 hearing, which Judge Daniels promptly overruled by Order dated January 16, 2013 (DE 303).

On January 7, 2013, Plaintiffs filed a Motion asking the Court to order the Defendants to produce witnesses under Rule 30(b)(6) to testify regarding exactly the same topics which the Court previously disallowed. DE 295-DE296. During a telephonic hearing on February 13, 2013, the Court denied that motion because "it served to confirm my belief that the matters that have been designated as 30(b)(6) topics are not appropriate topics for 30(b)(6)." 2/13/2013 Tr. at 4:22-24. After further discussion, Mr. Tolchin requested that he be permitted to "follow up on [Plaintiffs'] 30(b)(6) topics to recast them as interrogatories and serve them." The Court said that if Plaintiffs wished to make such an application they "still have to -- you need to submit to me why they were not submitted as interrogatories first." *Id.* at 32:22-23. Mr. Tolchin stated that he would file such an application and asked to be permitted to exceed the 3-page limit for pre-motion letters. The Court then emphasized that

> [Y]ou'll have to demonstrate to me some of the things -- it won't be just legal argument. It will be putting in some of the responses that the defendants made that led you to believe that some other discovery mechanism might be more fruitful than what you had tried but that you had indeed tried it and that it was reasonable for you to not do that through some form of motion or application to the Court.

*Id.* at 33:15-21. Before adjourning, the Court then admonished the parties again: "If I've not made myself clear let me state my position with respect to discovery. First of all, with respect to

Miller & Chevalier Chartered

1334327.1


**MILLER CHEVALIER**

fact discovery, fact discovery is closed except to the extent that matters were raised before the end of the discovery deadline." 2/13/2013 Tr. at 3:10-14.

Three months have passed since that hearing and Plaintiffs are only now making the application they sought leave to file back in February 2013. To make matters worse, Plaintiffs have done so without even attempting to comply with the Court's directives. The Court expressly asked Plaintiffs to explain why they pursued their discovery through a 30(b)(6) notice rather than through another discovery mechanism or an application to the Court seeking an order to compel. Rather than provide the information the Court requested, Plaintiffs have submitted a letter not only accusing the Defendants of discovery misconduct, but Plaintiffs' allegations of discovery wrongdoing lack any factual support. In fact, Plaintiffs have no one to blame but themselves for the failures of their discovery strategies, and their assertion that Defendants' discovery responses forced Plaintiffs' to file broad and over-reaching notices for 30(b)(6) deposition is blame-shifting without support.

Plaintiffs' application should now be denied as a general matter for three reasons. First, it comes far too late in the discovery process of this case. Plaintiffs claim that "[t]he timing of [their] submission has been affected by the fact . . . defendants produced hundreds of pages of documents following the close of discovery – many of which were produced after the February 13 conference." 5/16/2013 Ltr. at 1, n. 1. However, in the weeks and months that followed the February 13 conference, Defendants produced *a total of 14 pages* (3 pages on March 4, 2013, and 11 pages on March 20, 2013). Moreover, all the documents Defendants produced after the close of discovery on December 21, 2012 were responsive *only* to Plaintiffs' document requests which were first propounded on November 21, 2012, *i.e.*, the very last day for serving written discovery. Plaintiffs could have, and would have, obtained those documents during the fact discovery period if they had only bothered to propound the document requests that elicited those documents before November 21. Plaintiffs' decision to wait until the last minute to ask for these irrelevant documents does not justify now reopening fact discovery. Indeed, the supposed criticality of these documents is obviously undercut by the fact that Plaintiffs waited so long to even ask for them. The bottom line is that only Plaintiffs' own delay can explain the tardy requests at issue, and the Court should not countenance Plaintiffs' transparent effort to shift the blame for their own delay to Defendants.

Second, Plaintiffs' application should also be denied because they have not shown the "good cause" necessary to amend the scheduling order and reopen fact discovery. Under Rule 16(b)(4), a "scheduling order may not be modified except upon a showing of good cause," which "depends on the diligence of the moving party." *See G Investors Holding LLC v. Lincoln Benefit Life Co.*, No. 09 Civ. 2980 (ALC) (KNF), 2012 U.S. Dist. LEXIS 140676, at *6 (S.D.N.Y. Sept. 25, 2012) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)) (internal quotation marks omitted). "A party demonstrates good cause by a showing that despite its having exercised diligence, the applicable deadline could not have been reasonably met. A party



**MILLER CHEVALIER**

Hon. Ronald L. Ellis<br>
May 27, 2013<br>
Page 6

does not satisfy the good cause standard when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Id.* at *6-7 (internal quotation marks and citation omitted). In this case, there is simply not "good cause" to amend the Scheduling Order and reopen fact discovery because none of the complaints Plaintiffs have made about Defendants' discovery responses prevented Plaintiffs from propounding the additional discovery they now seek during the eighteen-month long fact discovery period or making an application to the Court to compel any discovery they did seek which they believe Defendants to be improperly withholding. To the contrary, all of the discovery Plaintiffs currently seek could have been sought prior to the close of discovery on December 21, 2012, and Plaintiffs' lack of diligence in this regard is simply an insufficient cause to re-open discovery.

Third, Rule 26(b)(2)(C)(ii) provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Accordingly, because all the new discovery Plaintiffs now seek could have been obtained during the eighteen-month fact discovery period, the Court must deny the instant application to reopen fact discovery for that reason as well.

### B. The Court Should Not Reopen Discovery Regarding the Admissibility of Documents

Plaintiffs initially request that they be allowed to "serve a revised set of requests for admission to establish the authenticity and admissibility" of documents produced by Defendants and "to accompany their revised requests with interrogatories requiring defendants to explain the basis for any denials they may make to the revised requests." 5/16/2013 Ltr. at 3, 4. Plaintiffs' request should be denied for four reasons.

First, Plaintiffs clearly could have served proper requests for admission on these subjects prior to the close of discovery. In fact, as Plaintiffs acknowledge, they did serve "requests for admissions in November 2012 as to the authenticity and admissibility of a number of such documents," and Defendants timely responded to those requests by admitting some requests and denying others. *Id.* at 2. When Plaintiffs complained about certain of Defendants' denials, the Court pointed out that the requests at issue were "inappropriate because they asked the defendants to admit that the documents were admissible as a matter of law." *Id.* at 3. The fact that the Plaintiffs did not propound proper requests for admission is obviously not good cause to allow the Plaintiffs a "do-over" on their requests. Indeed, when Defendants sought to compel a response from Plaintiffs to a request for admission that the Court found to be similarly inappropriate, the Court denied that request without leave to try again. 2/13/2013 Tr. at 5:8-6:7. The same result should obtain here.



Hon. Ronald L. Ellis<br>
May 27, 2013<br>
Page 7

Second, Plaintiffs also clearly could have served interrogatories requiring defendants to explain the basis for any denials they made prior to the close of discovery. In fact, Defendants served precisely such interrogatories on Plaintiffs. *See, e.g.*, Ex. 1 at 53. Plaintiffs, however, objected to those interrogatories, and have refused to answer them even though the Court has ordered them to do so. *Id.*; 2/13/2013 Tr. at 6:8-22. Plaintiffs offer no reason why they could not have served the type of interrogatories they now seek during discovery. Accordingly, there is not good cause to allow Plaintiffs to serve these types of interrogatories at this late date, especially in light of their refusal to provide this very type of discovery to Defendants.

Third, the fact that Defendants have declined to enter into a stipulation about the admissibility of the documents at issue is irrelevant. Plaintiffs will be required to prove their case at trial, and nothing in the applicable Rules or otherwise requires Defendants to waive any objections to the admissibility of documents they may wish to assert at this point in the case. Plaintiffs point to recent rulings in another case pending against Defendants in the District of Columbia, 5/16/2013 Ltr. at 2-3 n. 3, but the ruling in that case actually proves that Defendants are entitled to maintain these type of objections to the admissibility of documents until they can be ruled upon at trial. In the *Klieman* case, the Magistrate Judge ordered the Defendants to show cause regarding their objections to the authenticity and admissibility of certain documents that the plaintiffs in that case claimed were admissible. The Defendants did so and the Magistrate Judge held that "the decision as to the authenticity and admissibility of the . . . documents is where it belongs—with [the District Court Judge], who will rule on the documents either pretrial or at trial." Ex. 2 at 5. In this case, defense counsel have already explained why they are maintaining certain objections to documents during a lengthy conference call with Plaintiffs' counsel. The mere fact that Defendants have elected to put Plaintiffs to their proof at trial is not "good cause" to allow new discovery after fact discovery has closed.

Fourth, the fact that Defendants produced certain documents after December 21, 2012 also does not justify reopening fact discovery. As noted above, all of documents Defendants produced after the close of discovery on December 21, 2012 were responsive *only* to Plaintiffs' document requests which were first propounded on November 21, 2012. Thus, even if Defendants had produced those documents with their responses to the document requests which sought those documents on December 21, 2012, Plaintiffs still would not have been able to serve additional discovery concerning those documents. That fact is, of course, entirely a consequence of Plaintiffs' own decision to wait until November 21, 2012 to serve the document requests which called for the documents at issue. Nothing prevented Plaintiffs from serving those document requests sooner than November 21, and then propounding further discovery once they had an opportunity to review Defendants' documents. The fact that Plaintiffs were not diligent in requesting the documents at issue earlier in the discovery period cannot justify reopening fact discovery at this late date.

Miller & Chevalier Chartered

1334327.1



### C.     The Court Should Not Reopen Discovery Regarding Alleged Detentions of Suspects

Plaintiffs next request that Defendants be ordered to "provide new responses to requests for admission 31, 41, and 43 (including an explanation for the basis of any continued denials)," and to produce documents in response to certain document requests. 5/16/2013 Ltr. at 6. Plaintiffs also request that they be allowed to depose up to five persons identified in interrogatory responses over a year ago or serve additional interrogatories. Plaintiffs' requests should be denied for the following reasons.[2]

First, all of the discovery now sought could have been sought during the discovery period. Defendants identified the five witnesses Plaintiffs now seek leave to depose in March and May 2012, 5/16/2013 Lt. at 6 n. 19, but Plaintiffs never noticed a deposition for any of those individuals or requested that Defendants make them available for deposition prior to the close of fact discovery. Similarly, Defendants served their objections and responses to the document requests at issue in April and August of 2012 and informed Plaintiffs in those responses that they could not locate responsive documents, see Ex. 3-6, but Plaintiffs never sought to compel documents responsive to those requests until the instant application in May of 2013. Plaintiffs also obviously could have served additional interrogatories about these subjects prior to the close of discovery, but inexplicably failed to do so. Accordingly, there is not good cause to now reopen fact discovery on these issues.

Second, Defendants should not be ordered to "provide new responses to requests for admission 31, 41, and 43," because the rules do not contemplate the relief Plaintiffs request. Plaintiffs point to certain hearsay statements and claim that, as a result, Defendants "denials are not credible." 5/16/2013 Ltr. at 6. However, a party may not ask a court to order that the subject matter of a request be admitted because the opposing party's denial is unsupported by evidence. 7 Moore's Federal Practice §36.12[3] (Matthew Bender 3d ed.). Instead, a party may prove the inaccuracy of any denial at trial, and then move for fees and costs (or other sanctions) under Rule 26(g)(3) or 37. Id.; Erickson v. Staples, Inc., 3:08-cv-973 (AWT), 2010 U.S. Dist. LEXIS 6441, at *3 (D. Conn. Jan. 27, 2010) ("'A motion to determine the sufficiency of a response to a request for admission is not to be used as an attempt to litigate the accuracy of a response. Rule 36 does not authorize the court to make determinations on the accuracy of responses before trial. Nor may a court order that the subject matter of a request be admitted because the opposing party's denial is unsupported by evidence.'"). In any event, Defendants should not be ordered to provide an "explanation for the basis of any continued denials," because Plaintiffs failed to serve

---

[2] Plaintiffs also complain generally about Defendants' answers to certain interrogatories that were the subject of a prior motion to compel which the Court denied in March 2012, see 5/16/2013 Ltr. at 5, but do not seek any relief relating to those answers, so Defendants will not address the sufficiency of those previously-litigated answers here.



Hon. Ronald L. Ellis<br>
May 27, 2013<br>
Page 9

an interrogatory requesting such information during the fact discovery period. Moreover, Plaintiffs have unclean hands in requesting such relief because they have refused to answer Defendants' interrogatories seeking similar information, even though the Court has ordered them to do so. *See, e.g.*, Ex. 1 at 53. Furthermore, Defendants' denials are, in fact, based on the information known or readily obtainable by Defendants, and if and when Plaintiffs seek the relief contemplated by the Rules, that relief will be denied.

Third, Defendants should not be ordered to produce documents in response to the document requests at issue. Setting aside the fact that Defendants served their responses indicating that the requested documents could not be found in April and August of 2012, Plaintiffs assertion that there was no way for Defendants to respond to Plaintiffs' requests for admissions without reviewing allegedly unproduced documents ignores the fact that defense counsel could respond to the requests because they spoke to the witnesses identified in Defendants interrogatory answers—the depositions of which Plaintiffs never sought until now.[3]

### D. The Court Should Not Reopen Discovery Regarding Property "Used by" Hamas

Plaintiffs next request that Defendants be ordered to "conduct a diligent search for" and "produce" "[a]ll documents concerning all real properties . . . that were used by Hamas for any purpose between January 1, 1994 and July 31, 2002," in ten towns in the West Bank and Gaza "including without limitation, all documents concerning the description, location, ownership, purchase and/or rental of such properties, the sources of all funds used to purchase and/or or rent such properties, and the uses to which such properties were put by Hamas." 5/16/2013 Ltr. at 8 & Ex. E. Plaintiffs' requests should be denied for the following reasons.

First, the discovery now sought could have been sought during the discovery period. Defendants served their Objections and Responses to the requests at issue on October 1, 2012, Ex. 7, but Plaintiffs waited until now to seek an order compelling a production. Plaintiffs' request should be denied for that reason alone. *See* 6/21/11 Tr. at 12:8-10. ("But what I don't want to happen is six months after something happened and as discovery is about to close somebody says to me we never got to this.").

Second, Defendants have stated numerous valid objections to the requests which should be sustained. The requests are overly broad and unduly burdensome, particularly with respect to their time frame (*i.e.*, a seven-year period prior to the date of the earliest of the incidents at issue

---

[3] Plaintiffs also repeatedly request that the Court reconsider its prior orders denying a Rule 30(b)(6) deposition on certain topics, *see, e.g.*, 5/16/2013 Ltr. at 7, 9, but make no argument that could not have been made prior to the Court's prior rulings denying those requests or Judge Daniels' Order affirming the first of those denials.

Miller & Chevalier Chartered

1334327.1


**MILLER CHEVALIER**

Hon. Ronald L. Ellis
May 27, 2013
Page 10

in the case) and lack of any reasonable restrictions as to the scope of information they request (*e.g.*, its request for "[a]ll documents" regarding the subject matter of the request "including without limitation, all documents concerning the description, location, ownership, purchase and/or rental of such properties, the sources of all funds used to purchase and/or or rent such properties, and the uses to which such properties were put"). The requests are also vague and ambiguous and fail to describe the information or documents sought with sufficient particularity to allow for a meaningful response by Defendants. Further, they seek production of documents that are irrelevant to any party's claims or defenses, and they are not reasonably calculated to lead to the discovery of admissible evidence. Indeed, Plaintiffs have produced no evidence that any property in any of the cities that are the subject of these requests was used in any of the attacks at issue, and the request for "all" property used by Hamas fails to clarify whether Plaintiffs seek documents about property used by Hamas *qua* Hamas, the political faction, or whether Plaintiffs seek documents about members of Hamas. If the request is construed to apply to members of Hamas generally, the PA would have to collect and produce all documents regarding any "use" of real property in Palestinian-controlled territory by anyone affiliated with Hamas. Thus, if Hamas members have homes or go to stores, restaurants, or mosques, such use of real property is covered by the request. Accordingly, Defendants' objections to these vague, irrelevant and unduly burdensome requests should be sustained.[4]

### E.   The Court Should Not Reopen Discovery Regarding the January 27, 2002 Bombing

Plaintiffs next requests that Defendants be ordered to produce additional documents regarding the January 27, 2002 bombing, and that they be allowed to depose up to four persons identified over eighteen months ago in interrogatory responses or serve additional interrogatories. 5/16/2013 Ltr. at 8. Plaintiffs' request should be denied for the following reasons.

First, all of the discovery now sought could have been sought during the discovery period. Defendants identified the witnesses Plaintiffs now seek leave to depose in October 2011, Ex. 8, but Plaintiffs never noticed a deposition for any of those individuals or requested that Defendants make them available for deposition prior to the close of fact discovery. Similarly,

---

[4] If Plaintiffs' position is that they can establish liability over the PA by producing evidence that members of Hamas used real property in Palestinian-controlled territory with the PA's knowledge, *see* DE 296 at 6, then Plaintiffs are proceeding on an untenably overbroad reading of the material support provisions of the Anti-Terrorism Act. *See* 18 U.S.C. §§ 2333, 2339A. A foreign government cannot be liable for material support for failing to jail or deport all members of a popular political party simply because some small minority in that party carry out illegal acts.



Hon. Ronald L. Ellis
May 27, 2013
Page 11

Defendants served their objections and responses to the document requests at issue in May of 2012 and either produced documents or informed Plaintiffs in those responses that they could not locate responsive documents, *see* Ex. 9, but Plaintiffs never sought to compel documents responsive to those requests until the instant application a year later. Plaintiffs also obviously could have served additional interrogatories about these subjects prior to the close of discovery, but failed to do so. Accordingly, there is not good cause to now reopen fact discovery on these issues.

Second, Defendants should not now be ordered to search again for documents responsive to requests served over a year ago. In the requests at issue, the Sokolow Plaintiffs sought all documents in the Defendants' possession, custody or control relating to the January 27, 2002 bombing as well as to certain individuals alleged to have been involved in that bombing. In their May 29, 2012 Objections and Responses, Defendants produced those responsive documents that they were able to locate. Ex. 9. As to remaining requests, Defendants' stated that, notwithstanding their objections, "based on an investigation conducted to date of information and files reasonably available to Defendants, Defendants have been unable to identify any documents within their possession, custody, or control that are responsive to a reasonable interpretation and scope" of Plaintiffs' requests. *Id.* Ex. 9 at 8. The mere fact that Plaintiffs point to certain hearsay statements, which they had in their possession at the time of the responses, and claim that, as a result, Defendants "surely must have additional responsive documents," does not justify a do-over of discovery that was completed many months ago.

### F.  The Court Should Not Reopen Discovery Regarding Fatah

Plaintiffs next request that Defendants be ordered to produce additional documents regarding Fatah, and that they be allowed to serve additional interrogatories regarding Fatah. 5/16/2013 Ltr. at 10. Plaintiffs' request should be denied for the following reasons.

First, all of the discovery now sought could have been sought during the discovery period. Defendants served their objections and responses to the document requests at issue in October of 2011 and May of 2012, Ex. 10-11, but Plaintiffs never sought to compel documents responsive to those requests until the instant application in May of 2013. Plaintiffs also obviously could have served additional interrogatories about Fatah prior to the close of discovery. Accordingly, there is not good cause to now reopen fact discovery on these issues.

Second, Defendants should not be ordered to search for documents responsive to requests served over eighteen months ago. The "charters, constitutions, by-laws, and political platforms" of Fatah are not relevant to any claim in this case, and their production is not likely to lead to admissible evidence. *See* Ex. 10 at 7-8. The PA and PLO are not Fatah, nor are they alter egos of Fatah. The Plaintiffs request to the PA is akin to serving document request on the United States asking it to produce the "charters, constitutions, by-laws, and political platforms" of the

Miller & Chevalier Chartered

1334327.1


MILLER CHEVALIER

Democratic Party from 1998-2004. While many PA officials are members of the Fatah faction, that does not compel the conclusion that that the PA would have in its possession, custody or control the "charters, constitutions, bylaws, and political platforms" of Fatah any more than the United States government would necessarily have in its possession custody or control the most recent political platform of the Democratic Party.

Third, as to the document request regarding the yearly amounts of funding provided by the PA and/or the PLO to, or for the benefit of, Fatah, Plaintiffs misstate the nature of those requests. Requests 21 and 22 of Plaintiffs' Fifth Request to Produce Documents and Things by All Plaintiffs sought "[a]ll documents concerning all provision of material support or resources by the PA [and the PLO] to Fatah between September 30, 2000 and January 29, 2004." Ex. 11 at 17-20. In response, Defendants produced "the deposition transcripts of Majed Faraj, Hasan Abu-Libdeh and Mazen Jedallah and Exhibit 16 thereto (Bates-labeled 04:000493-04:000494) taken in the *Klieman* case which indicate that certain payments were made by the PA to Fatah as a constituent element of the PLO, but not as 'material support or resources' within 'the meaning given that term in 18 U.S.C. § 2339A at the time or times to which the request[s] refer[s].'" *Id.* In addition, Defendants produced documents previously produced in the *Saperstein* case Bates-labeled 03:000653-03:000684 which "indicate that certain payments were made by the PA to Fatah as a constituent element of the PLO, but not as 'material support or resources' within 'the meaning given that term in 18 U.S.C. § 2339A at the time or times to which the request[s] refer[s].'" *Id.* Accordingly, Defendants have already produced documents in response to this request, and there is no need to compel a further production.

Fourth, Plaintiffs never propounded any discovery expressly relating to the PA's alleged provision of military and/or paramilitary training to Fatah until they served their 30(b)(6) notice on November 28, 2012. Plaintiffs were, however, apparently aware of this issue as long ago as October of 2011. *See* Letter to the Court dated December 5, 2012 at 2 n. 9. Plaintiffs should not be permitted to seek discovery on any issue they have known of for over a year and a half at this late date. This late request is also vague because Plaintiffs fail to define what they mean by providing training to Fatah. It is unclear whether Plaintiffs seek documents regarding training provided to Fatah as an institution, to leaders of Fatah, to Palestinians who claim affiliation with Fatah, or all of the above. If Plaintiffs seek documents on everyone who is a member of the Fatah political party who has received military training while employed in one of the Palestinian security forces, then the request is obviously unduly burdensome and not tailored to be relevant to any of Plaintiffs' claims. Plaintiffs' request is no less overly broad than a request asking the United States to provide all documents regarding military training it provided to Republicans.

### G. The Court Should Not Reopen Discovery Regarding Ibrahim Abdel Hai

Finally, Plaintiffs ask the Court to order Defendants to produce documents responsive to the Gould-Waldman Plaintiffs' Third Request to Produce Documents, which Plaintiffs first



Hon. Ronald L. Ellis<br>
May 27, 2013<br>
Page 13

propounded on January 7, 2013—17 days *after* fact discovery closed. Plaintiffs assert that they requested the information in a request served on November 21, 2012, and that the January 7, 2013. Request was propounded so that Plaintiffs could "ensure that they had obtained all responsive documents." 5/16/2013 Ltr. at 10. Plaintiffs request should be denied.

The Gould-Waldman Plaintiffs' Second Request to Produce Documents and Things, propounded on November 21, 2012, sought in Request Number 6 "[a]ll documents concerning the Terrorist Attack" that took place on January 22, 2002. 5/16/2013 Ltr. Ex. I. No reference was made to Abdel Hai, but other individuals were specifically named. In response to Request No. 6, Defendants served Objections and Responses on December 21, 2012 stating that "Defendants have been unable to identify relevant, non-privileged documents or things within their possession, custody, or control that are responsive to a reasonable interpretation and scope" of the Request. There is no reason that Defendants would have identified documents related to Abdel Hai in response to that general request. Plaintiffs offer no reason why they could not have learned about Abdel Hai's alleged involvement in this case in time to propound document requests about him before November 21, 2012. Moreover, once discovery closed Defendants were not required to produce the documents without being directed to do so by the Court.

****

As this Court has repeatedly and rightly noted during the various hearings in this matter, at some point discovery must end. Plaintiffs should not be permitted to extend discovery simply because they failed to take advantage of the time allotted to them during the fact discovery period. Nor should the entry of new counsel (the fourth set of Plaintiffs' counsel in the case) affect the calculus whatsoever. Defendants have complied with the Court's discovery schedule; the Plaintiffs have not, but now seek a "do-over." As the Court of Appeals for the First Circuit has noted, "[t]rial courts have a responsibility to manage their dockets efficiently, and a necessary corollary of that proposition is that litigants are entitled to a reasonable period of time within which to conduct discovery, not a limitless period." *Vineberg v. Bissonnette*, 548 F.3d 50, 55 (1st Cir.2008). Accordingly, and for all the reasons stated above, the relief requested in Plaintiffs' letter dated May 16, 2013 should be denied.

Sincerely,<br><br>
Brian A. Hill

Enclosures

cc:   Robert J. Tolchin, Esq., David I. Schoen, Esq., Kent Yalowitz, Esq.

Miller & Chevalier Chartered

1334327.1