# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF ESTHER KLIEMAN, *et al.*,

    Plaintiffs,

    v.                                                                                    Civil No. 04-1173 (PLF/JMF)

THE PALESTINIAN AUTHORITY, *et al.*,

    Defendants.

## ORDER

In my Memorandum Order of February 11, 2013, I permitted the depositions of 1) Z. Rimawi, 2) Hashash, and 3) Ya'akoboff to go forward as long as they were completed by April 15, 2013, the end date for all fact discovery. Memorandum Order [#190] at 8. I also directed the defendants to show cause with respect to certain issues. Id. at 7. They have done so and the issues are now ripe for resolution.

I.    The Deposition of Ya'akoboff

The depositions of Rimawi and Hashash occurred on March 5, 2013, but the deposition of Ya'akoboff has not yet been approved by the Israeli Directorate of Courts and, unless it took place between March 29, 2013 and April 15, 2013, did not occur before the discovery deadline. See Motion of Defendant the Palestinian Authority for a Protective Order Regarding Plaintiffs' "Amended Supplemental Notice of Deposition of Defendant, Palestinian Authority" Dated March 29, 2013 [#193] at 5. Therefore, this deposition cannot take place.

II.     Outstanding Letters of Request

The Israeli government has not yet indicated whether it would honor two outstanding letters of request. [#190] at 6.

    A.      First Letter of Request

The first letter of request sought five items. Id. As to the first, "documents reflecting the bases upon which Al Aqsa, the Palestinian Liberation Organization, and Tanzim were placed on the Ministry of Defense's List of Declarations and Orders relating to Unlawful Organizations," I declined to delay discovery any further. Id. at 8. That left the following four items: 1) the television and radio broadcasts of interviews with or statements by Marwan Barghouti[1] that were submitted in evidence in his criminal prosecution, 2) the verdict in that trial, and 3) the verdict of the military court in the trial of Fuad Hejazi Shubaki, and 4) custodians to authenticate those records. Id. at 6.

With respect to the broadcasts and verdicts, I rejected any need for a deposition. Id. at 7. Instead, in accordance with Rule 902(3)(A) of the Federal Rules of Evidence, I ordered the broadcasts to "be treated as presumptively authentic without final certification." Id. I reasoned that it was difficult to understand how a legitimate authenticity or hearsay objection could be made as to the broadcasts and the verdicts when they are "documents in a public court file that are being produced by a sovereign at the request of the court of another sovereign state." Id.

We now know more about how these broadcasts came into plaintiffs' possession. According to defendants, in November of 2011, after the issuance of the letter of request seeking the broadcasts, "[p]laintiffs' local counsel in Israel, Mordechai Haller, apparently filed a motion, in Hebrew, in the Jerusalem Magistrate's Court seeking an order to the Clerk of the Tel Aviv

---

[1] In its February 11, 2013 Memorandum Order, the Court stated that Barghouti was convicted of the murder of Esther Kleiman. [#190] at 6. That was incorrect. He was convicted of murder but not of Ms. Kleiman.

2

District Court to provide access to certain contents of the court file in the case . . . of *State of Israel v. Marwan Barghouti*." Defendants' Response to February 11, 2013 Show Cause Order (DE 190) [#191] at 14-15. The order was granted and on January 12, 2012, Haller went to court and made copies of two VHS cassettes that were in the file, converting them to a DVD format. Id. at 15. Haller so advised defendants' counsel and plaintiffs have since confirmed that the recordings Haller copied are the recordings plaintiffs sought from the Israeli government in their letter of request. Id. To date, the Israeli Directorate of Courts has not indicated whether it will grant plaintiffs' letter of request regarding the deposition of an IDF official. Id.

Defendants indicate that they "will not object to the authenticity of those recordings on the basis that they are not the recordings that were submitted into evidence by the Israeli prosecutors during the Barghouti criminal trial." Id. at 16.[2] They protest, however, that it is incorrect to deem them presumptively authentic because of the possibility 1) that the broadcasting media that interviewed Barghouti edited their videotapes of their interviews such that the videotapes are not an accurate and complete rendition of what Barghouti said, or 2) that Barghouti's prosecutor or the Israeli law enforcement officers who worked on his case further edited the videotapes when they received them from the broadcast media. Id. In other words, defendants insist that the question of the authenticity of the tapes is not resolved merely because there is no question that the copies in plaintiffs' possession are copies of the recordings in the court file in the Tel Aviv District Court. Id. at 17.

With respect to plaintiffs' need to authenticate those records, there is now, in defendants' concession, sufficient evidence to permit the conclusion that these recordings are the copies that Haller made, and that is all that is necessary to permit the conclusion that they are what they purport to be. This is all Rule 901(a) of the Federal Rules of Evidence requires. That said,

---

[2] Defendants stipulate to the authenticity of the verdicts rendered against Barghouti and Shubaki. [#191] at 7.

3

defendants of course preserve for trial all of their objections to the admissibility of these records at trial. For example, defendants remain free to argue that under Rule 1002 of the Federal Rules of Evidence, the duplicated copies are not originals and also that it would be unfair to admit a duplicate (what Haller copied) when only the original (the unedited videotaped interview of Barghouti) provides the fair means of ascertaining what Barghouti said. Whether or not defendants prevail on that argument before Judge Friedman remains to be seen. But, defendants' concession that the copies plaintiffs have are presumptively authentic copies of the videotapes in the court file does not in any way prevent defendants from attacking the admissibility of those videotapes.

B.   Second Letter of Request

The second outstanding letter of request sought the production of "full and authentic copies" of certain documents already in plaintiffs' possession, as well as a custodian to authenticate them. [#190] at 6. That resulted in the production of eight documents in Arabic. Id. at 7. Since I had no idea what they were, I indicated that I would deem them authentic and admissible "unless defendants show cause within ten days why they are not." Id.

Unfortunately, plaintiffs, in their response to the show cause order, mischaracterize what I said, claiming that "[t]he Court was correct when it deemed the ITIC documents [i.e. the eight documents in Arabic] authentic and admissible." Plaintiffs Response to Defendants' Response to the Court's February 11, 2013 Show Cause Order (DE 190) [#192] at 10. As is self-evident, I did no such thing. Rather, I provided defendants an opportunity to show cause why the documents should *not* be deemed authentic and admissible. They have now done so by explaining why plaintiffs cannot establish that the documents are authentic. [#191] at 20-24. Plaintiffs, mistakenly believing that I have already concluded the documents are authentic (and

4

admissible), nevertheless insist that defendants have had a reasonable opportunity to investigate the authenticity and accuracy of the documents under Rule 902(3)A) of the Federal Rules of Evidence, thereby making a circumstantial case for their authenticity. [#192] at 10-11. But, the sole obligation the defendants had, under my order, was to show why documents in a foreign language should not be deemed authentic and admissible. Defendants have done so by marshaling the arguments against their authenticity. Now, the decision as to the authenticity and admissibility of the eight documents is where it belongs—with Judge Friedman, who will rule on the documents either pre-trial or at trial.

The Order to Show Cause is discharged.

**SO ORDERED.**

Digitally signed by John M. Facciola
DN: c=US, st=DC, l=Washington, email=john_m._facciola@dcd.uscourts.gov, o=United States District Court for the District of Columbia, cn=John M. Facciola
Date: 2013.05.03 14:51:14 -04'00'

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE