

Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com

October 1, 2013

VIA ECF
Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re: *Sokolow v. Palestine Liberation Organization et al.* — 04-CV-397(GBD) (RLE)

Dear Judge Ellis:

      Pursuant to the teleconference held on September 30, 2013, the Defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") submit the following letter-brief in support of their objections under Federal Rules of Civil Procedure 26(b)(1) and 26(b)(2)(C)(iii) to producing previously withheld material from the files of the PA's General Intelligence Service ("GIS"). Defendants respectfully submit that the withheld material should not be produced because it is not relevant to Plaintiffs' claims in this action, it is inadmissible, and its production would impose an undue burden on Defendants and third parties.[1]

      ***First***, none of the GIS files requested by Plaintiffs are "relevant" to Plaintiffs' claims nor are they "reasonably calculated to lead to the discovery of admissible evidence" as required by Rule 26(b)(1). Fed. R. Civ P. 26(b)(1). The issue in this action is whether, as the Plaintiffs allege, the PA or PLO is liable for the attacks listed in the Complaint under 18 U.S.C. § 2333. Indeed, this Court has noted that the central issue is whether the attacks at issue happened "on the direction and control of the PLO and the PA." Tr. 4/4/13 at 4:24. Among the irrelevant information included in the withheld material is information about the identity of GIS informants, officers and security suspects, private and personal information regarding the files' subjects and their family members and friends (including information regarding their political affiliations and occupations), and GIS investigations unrelated to this action that could be impaired if the contents of the files were disclosed. *See* Declaration of Majed Faraj at ¶¶ 14, 17 (attached as Exhibit B to our letter dated August 13, 2013). The redacted material does not reflect any PA or PLO advance knowledge or information regarding any of the attacks at issue in this case. *Id.* ¶ 16. Earlier this year, the U.S. District Court for the District of Columbia, after

---

[1] On December 21, 2012, Defendants timely objected to each of Plaintiffs' Requests for GIS files on the grounds that, *inter alia*, "the Request is overly broad and unduly burdensome," "the Request seeks production of documents that are irrelevant to any party's claims or defenses and the Request is not reasonably calculated to lead to the discovery of admissible evidence." *See, e.g.*, Defendants' Objections and Responses to the Blutstein, Carter, Coulter and Gritz Plaintiffs' Second Request to Produce Documents and Things at 8 (Dec. 21, 2012) (attached as Ex. 1 hereto).



reviewing similar PA GIS files *in camera*, concluded: "Nowhere in the 25 pages submitted by Defendants is there any admissible evidence that would be relevant to Plaintiffs' case. In other words, there is no information in the files revealing advance knowledge on the part of the PA of the October 30, 2000, shooting which is at the center of this case." *Gilmore v. Palestinian Interim Self-Government Authority*, No. 10-853 (GK), slip. op. at 2 (D.D.C. June 6, 2013) (attached as Ex. 2 hereto). The same holds true of the GIS files at issue here.

The material sought here is also much like the redacted material considered by this Court in *Ortiz v. City of New York*, where the Court found the information sought was "not likely to lead to the discovery of admissible evidence." *Ortiz v. City of New York*, 04-cv-1285, 2006 U.S. Dist. LEXIS 39032, at *3 (S.D.N.Y. June 9, 2006). In *Ortiz*, the Plaintiff sought production of an unredacted search warrant in his claim for various civil rights violations arising out of his arrest in August 1999. The Plaintiff argued "the redacted portions of the search warrant application are relevant to his malicious prosecution claim, as it could reveal that the police officers conducted themselves in bad faith." *Id*. In rejecting Plaintiff's motion for an unredacted version of the document, the Court noted first and foremost that the search warrant application was filled out after Ortiz's arrest and thus, the application did not result in the pivotal event complained of by the Plaintiff. The Court further noted that the warrant contained some information that pertained to the interviews "leading up to their decision to knock on Ortiz's door, and thereafter arrest him." *Id*. at *3. However, this information was all discernible from the unredacted portions of the document. Finally, because the redacted portions of the documents confirmed the reliability of the witnesses who provided information for the search warrant, they did not support Plaintiff's claims of police misconduct. *Id*. Likewise, in this case, the vast majority of the GIS files post-date the attacks at issue (including those that are mis-dated 1/1/1900). In any event, none of the files contain any information that the PA or PLO was aware of the attacks before they occurred, let alone directed or supported them. *See* Declaration of Majed Faraj at ¶ 16.

***Second***, the files consist of inadmissible hearsay, and their production would not lead to the discovery of admissible evidence. *See Estate of Mark Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 34 (D.D.C. 2010), *rev'd on other grounds*, 651 F.3d 118 (D.C. Cir. 2011) ("Intelligence reports that contain multiple levels of hearsay are not admissible evidence."). In *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011), the Fifth Circuit held that PA GIS files constituted "classic hearsay," were not admissible under the residual hearsay exception (Federal Rule of Evidence 807), and did not meet the standard for admissibility under the public records exception. As the Fifth Circuit held: "The matters reported in the PA documents have nothing to do with the PA's own activity, but rather describe the activities and financing of Hamas. Therefore, the guarantee of trustworthiness associated with a public agency merely recording its own actions is not present. *See* Rule 803(8)(A). Moreover, the conclusions stated in the PA documents are not the kind of objective factual matters we have found to be reliable under Rule 803(8)(B) when reported as a matter of course." *Id*. at 499. In concluding that the GIS files lacked sufficient indicia of trustworthiness, the Fifth Circuit explained that "there is nothing in the documents or the record that reveals whether the declarants had firsthand knowledge of the information reported, where or how they obtained the information, and whether there was a legal duty to report the matter," and that there is "also nothing in the documents or the record



showing that the declarants in these documents were especially likely to be telling the truth." *Id.* at 500.

The material at issue here is similar to the GIS files at issue in *Mezain*. The files do not record the activities of the GIS's office, but rather record hearsay of dubious reliability and accuracy collected from, and concerning, third parties. Declaration of Majed Faraj at ¶ 15. Information contained in the files comes from a variety of sources, including public sources (such as news reports), GIS agent investigative fieldwork, interrogations, and confidential sources and informers. *See id.* ¶ 8. Because they are "classic hearsay" lacking indicia of trustworthiness, the GIS files are not admissible.

***Third***, the PA is entitled to a protective order under Rule 26(b)(2)(C)(iii) pursuant to which a Court "must limit" "the extent of discovery" if the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). Under Rule 26(b)(2)(C)(iii), "the Court . . . has considerable discretion to evaluate the practical realities of discovery, balancing the importance of the information against the burdens of production to decide whether fairness does or does not require production, and if so, on what terms." *Jones v. Goord*, 95 Civ. 8026, 2002 U.S. Dist. LEXIS 8707, at *17 (S.D.N.Y. May 15, 2002). The type of burden that must be taken into account in conducting the Rule 26(b)(2)(C)(iii) balancing includes the burden imposed on the PA and third parties by disclosing the type of sensitive and secret information contained in these GIS files. *See* Declaration of Majed Faraj at ¶¶ 12, 14, 17. "Even in a case where there is no federal evidentiary privilege . . . the word 'burden' applies to 'the adverse consequences of the disclosure of sensitive, albeit unprivileged, material.'" *Bennett v. Kingsbridge Heights Rehab. Care Ctr.*, 07-cv-9456, 2009 U.S. Dist. LEXIS 97276, at *9 (S.D.N.Y. Oct. 8, 2009) (quoting *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 561-62 (S.D.N.Y. 1996); *see also Egiazaryan v. Zalmayev*, 11-cv-2670, 2012 U.S. Dist. LEXIS 5901, at *7-8 (S.D.N.Y. Jan. 12, 2012) (taking into account whether a document contains sensitive information when balancing factors under Rule 26(b)(2)(C)(iii)). "The word 'burden' also includes 'risks to ... physical security and privacy.'" *Bennett,* 2009 U.S. Dist. LEXIS 97276, at *8 (quoting *Jones*, 2002 U.S. Dist. LEXIS 8707, at *5).

The PA has established that it faces both the burden of disclosing sensitive material and material that puts its security at risk if it were ordered to produce the GIS files at issue. Turning first to the most serious concern, the revelation of the information in these files would constitute a risk to the physical security of certain individuals and the PA itself. These files contain information that would threaten the security of the PA as it would potentially "subject Palestinian nationals to external dangers" and reveal "intelligence methods regarding dangers such as espionage, collusion, and sabotage." Declaration of Majed Faraj ¶ 12. Likewise, they could reveal the identities of confidential informants and also place these individuals in danger. *Id.* Finally, because disclosure of these files would reveal intelligence gathering and analysis techniques as well as confidential sources, it would ultimately "impair the ability of the GIS to conduct future investigations." *Id.* ¶ 14.

The material in these files is also very sensitive as it would undermine the privacy of third parties and the subjects of the files. As previously noted, the information in these files would reveal political, occupational, and highly personal information about individuals completely unrelated to this

Case 1:04-cv-00397-GBD-RLE   Document 346   Filed 10/01/13   Page 4 of 4



MILLER
CHEVALIER

Hon. Ronald L. Ellis
October 1, 2013
Page 4

litigation. *Id.* Defendants have documented for this Court through their privilege logs that such information is present throughout these files.

Defendants have thus demonstrated the undue burden posed by the production of these documents. Under Rule 26(b)(C)(iii), the Court must balance this burden against the "likely benefit" of these documents to Plaintiffs. Fed. R. Civ. P. Rule 26(b)(C)(iii); *Jones*, 2002 U.S. Dist. LEXIS 8707, at *38 (balancing the burden against the "projected benefits of discovery to plaintiffs and to the truth-seeking process"). The benefit to Plaintiffs in receiving these documents is none. As discussed above, the GIS files will not advance Plaintiffs' claims in any way. They are neither relevant nor admissible. As a result, their production is not warranted in the face of the undue burdens that Defendants and third parties will suffer in producing these files. *See Jacoby v. Conway*, 10-CV-920, 2012 U.S. Dist. LEXIS 128464, at *5-6 (W.D.N.Y. Sept. 10, 2012) (denying the production of confidential information where the information at issue would "not be helpful to establish" Plaintiffs' claims); *see also Gilmore v. Palestinian Interim Self-Government Authority*, No. 10-853 (GK), slip. op. at 3 (D.D.C. June 6, 2013) (denying motion to compel GIS files because "disclosure of the requested files would 'undermine important interests' of the PA").

In sum, one United States District Court judge has found such files to be irrelevant, one Circuit Court has found such files to be inadmissible, and this Court should conclude no differently. Defendants respectfully submit that further production is not required under Rule 26(b)(1) or Rule 26(b)(2)(C)(iii). If the Court wishes to review translations of these files, the Defendants are prepared to submit them for the Court's *in camera* review at the Court's earliest convenience.

Sincerely,

Brian A. Hill

Enclosures

Miller & Chevalier Chartered