1              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF NEW YORK
2

3   ----------------------------------------X
                                            :
4   SOKOLOW, et al,                         : 04-CV-397 (GBD)
                                            :
5              Plaintiffs,                  : October 15, 2013
                                            :
6         v.                                : 500 Pearl Street
                                            : New York, New York
7   PALESTINE LIBERATION ORGANIZATION, et al, :
                                            :
8              Defendants.                  :
    ----------------------------------------X
9

10     TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY DISPUTES
             BEFORE THE HONORABLE RONALD L. ELLIS
11            UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For the Plaintiffs:        ROBERT TOLCHIN, ESQ.
                               The Berkman Law Office, LLC
14                             111 Livingston Street
                               Brooklyn, New York  11201
15
                               KENT YALOWITZ, ESQ.
16                             CARMELLA ROMEO, ESQ.
                               Arnold & Porter
17                             555 12ᵗʰ Street NW
                               Washington, DC 20004
18

19  For the Defendant:         BRIAN A. HILL, ESQ.
                               MARK ROSHAN, ESQ.
20                             Miller & Chevalier, Chtd.
                               655 15th Street NW, #900
21                             Washington, D.C.  20005

22

23  Court Transcriber:         SHARI RIEMER
                               TypeWrite Word Processing Service
24                             211 N. Milton Road
                               Saratoga Springs, NY 12866
25


    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service

1          THE COURT: Good afternoon.  This is Judge Ellis.

2     Can I have your appearances beginning with the plaintiffs?

3          MR. TOLCHIN:  Good afternoon, Your Honor.  For the

4     plaintiff, Robert Tolchin from the Berkman Law Office and with

5     me is --

6          MR. YALOWITZ:  Your Honor, Kent Yalowitz and

7     Carmella Romeo from Arnold & Porter.

8          MR. HILL:  Good afternoon, Your Honor.  It's Brian

9     Hill from Miller & Chevalier for the defendants.

10         THE COURT:  This conference in <u>Sokolow v. Palestine</u>

11    <u>Liberation Organization, et al.</u>, 04-CV-397 is taking place on

12    Tuesday, October 15th at approximately 3:35 p.m.  This

13    conference concerns an application by defense counsel not

14    related to the merits of the case but -- well, I guess

15    everything is related to the merits of the case but

16    specifically seeking sanctions against plaintiff's counsel for

17    using a document which was the subject of a protective order

18    in this case.  It is a letter from Mr. Hill dated October 4,

19    2013.

20         I also understand that there is a pending motion by

21    Mr. Tolchin to intervene by the Gilmore plaintiffs related to

22    the -- what appears to be the subject.  Am I right on the

23    facts?

24         MR. HILL: That is correct, Your Honor.

25         THE COURT: Now, as I indicated to my law clerk, I

1    wanted to make sure the facts to determine what would be the

2    next step in terms of the question of whether or not sanctions

3    are appropriate.

4            Let me begin by asking Mr. Tolchin.  I gather based

5    upon the correspondence that's gone back and forth that there

6    is not dispute that we are talking about a document in which

7    the defendants had designated as confidential.

8            MR. TOLCHIN: There is no dispute and to be precise,

9    Your Honor, and I hope I don't sound [inaudible], there is no

10   dispute that they're stamped confidential at the bottom of the

11   document but they did not properly according to the protective

12   order, they did not properly designate what portion of the

13   document they allegedly contend as confidential which is

14   required by our confidentiality order in this case.  You're

15   not allowed to designate a whole document.  You're supposed to

16   designate only the portion of the documents that contains

17   specified forms of confidential information.

18           THE COURT: I gathered that from your response.  But

19   I also want to establish from a factual point of view your

20   position that they had not properly designated it according to

21   the protective order.  Did you indicate that to Mr. Hill?

22           MR. TOLCHIN: That it was not properly designated?

23           THE COURT: Correct.

24           MR. TOLCHIN: Yes, the issue was -- that issue was

25   raised with Mr. Hill but -- and I understand where Your Honor

4

1   is going and I would just point out that where you're starting

2   from, Your Honor, isn't -- well, bluntly it's not where I

3   would start from.  The first question is did we designate --

4   did we reveal the content of these documents.

5        I mean just to give an analogy and I understand that

6   all analogies only go so far, but for whatever it's worth if I

7   have your social security card and it's been designated as

8   confidential and then I hear you come in and say your social

9   security number is such and such and I say well, I have the

10  social security card and I can't tell you what it says but I

11  can tell you that's not a number.  That's more akin -- maybe

12  not precisely but more akin to what happened here.  We did not

13  reveal the content of the document.  We simply said we have a

14  document that lists the promotion history of this individual.

15       So, yes, to the extent we said what topic the

16  document covers, we talked about it, but we did not reveal the

17  contents of the document and quite frankly in the Gilmore case

18  they produced -- these documents that we're talking about are

19  administrative orders.  I don't know if Your Honor has the

20  motion that was filed in the Gilmore case handy but the doc --

21  the very documents we're talking about are attached as Exhibit

22  A to that, as part of Exhibit A to that --

23       THE COURT: Mr. Tolchin, before you continue, again I

24  understand that you might not start where I would start but I

25  do get to start where I want to start.  The reason I'm asking

1  factually is because I understand that you have disagreement

2  and there might be disagreement about the protective order.

3  There might be disagreement about how properly the parties

4  reacted to the protective order.  From my point of view the

5  issue is if there are disagreements about the protective order

6  which the parties got the court involved in such that they're

7  not able to resolve it, the question is whether or not your

8  approach to what you consider to be Mr. Hill's proper or

9  improper designation is an appropriate way to deal with your

10  disagreement about either whether or not he properly

11  designated it as confidential or whether or not you had

12  revealed the content of the document by indicating that some

13  other thing was inconsistent with what was in the document.

14        I'm concerned because if the question before me is

15  whether or not somebody should be sanctioned, I'm concerned

16  with more about how they approached this than arguing the

17  merits of what's in the protective order.  So that, for

18  example, if I had -- if I had an order that said that you had

19  to do something on the next business day and you thought the

20  next business day was something different I would expect you

21  to clear it up rather than to file it a day after the next day

22  saying well, he could not have met this day because that was a

23  business day in the state.  Do you understand my position?

24        MR. TOLCHIN: Yes, I do, Your Honor.

25        THE COURT: And this is more a question of whether or

6

 1   not -- even if you -- even if everything that you said is

 2   right about the designation whether or not when you have a

 3   court order the appropriate approach is to go ahead and file

 4   something which -- am I to understand that you didn't think

 5   that this was an issue and that's why you felt safe in doing

 6   what you did?

 7           MR. TOLCHIN: We did not file the document. We had

 8   originally wanted to file the actual document in the Gilmore

 9   case but because of the disputed confidentiality designation

10   we did not file the document and we only gave the most

11   circumspect reference to it in a way that we felt did not

12   violate the protective order.

13           THE COURT: So I --

14           MR. TOLCHIN:  So we gave respect to the protective

15   order by opting not to disclose the document.

16           THE COURT: So I understand your answer to be you

17   understood there could be an issue and rather than clearing it

18   up you decided that you had sufficiently avoided violating the

19   order.

20           MR. TOLCHIN: I suppose you could put it that way,

21   yes.

22           THE COURT: If that's the way you approached this I'm

23   just -- I'm asking whether or not you believe that that's an

24   appropriate way to approach a court order.

25           MR. TOLCHIN: I don't think we violated the court

1  order.  We did not disclose the documents.  We did not quote

2  from the document.

3          THE COURT: Mr. Tolchin --

4          MR. TOLCHIN: And we did not --

5          THE COURT: Mr. Tolchin, let me be clear.  I

6  understand that you believe that you did not violate the

7  protective order.  My question is I gather that you had

8  sufficient concern about the impact of the protective order to

9  take your efforts, what you believe necessary to avoid

10  violating the protective order and I take it your position is

11  that that was the appropriate way to deal with what came --

12  what appeared to be a dilemma in terms of how you would

13  approach the protective order.

14          MR. TOLCHIN: I would say yes, Your Honor.  In the

15  original drafting of my declaration, it's quoted from the

16  documents so then we looked at it and we said hey, we can't

17  quote from these documents because they're subject to a

18  confidentiality order and we said well, are we barred from

19  simply referring from them and we thought about it and we

20  looked at the order.  I'll concede, I'll admit that one of the

21  things that we thought about was that these documents were

22  never -- should have been designated as confidential.  They

23  were not -- similar documents of the same type were not

24  designated as confidential in the Gilmore case and -- which I

25  can show Your Honor, and they seem to be public documents

8

1   anyway.  They're administrative orders of the Palestinian

2   government.

3            THE COURT: Before you proceed, Mr. Tolchin.  I can

4   assure you it would not be the first time that something was

5   designated confidential that the other party determined that

6   it should not be classified as confidential and it wouldn't be

7   the first time that if it were brought up the court would

8   agree with the party challenging the designation.  This is

9   pretty standard stuff with confidentiality orders and it's

10  not -- it's actually not that unusual for somebody pursuant to

11  the protective order that's been entered to challenge the

12  confidentiality and have the court agree with them.  I don't

13  see that as the issue here.

14           Indeed your recitation of your position reminds me

15  of the statement that it's better to seek forgiveness than to

16  seek permission because frankly if you had some questions

17  about whether or not this was confidential I'm still not

18  understanding why you would not have challenged the

19  confidentiality of it or if there was some question about the

20  scope of what you could reveal, whether or not you would not

21  have [inaudible] because it seemed to me ripe for discussion

22  with the court and I don't recall any assertion that the court

23  was unavailable to determine whether or not your approach

24  would have violated the order.

25           Understand at this point you're dealing with

1  violating my order, not your interpretation of what the order

2  is.  Was there some reason why you did not bring this matter

3  to the court?

4          MR. TOLCHIN: All I can say, Your Honor, is that we

5  felt that it was not necessary because we felt that we had

6  sufficiently -- that what we put in the declaration was not a

7  violation of the order so that rather than burden the court

8  with an application to use the entire document at that time we

9  simply avoided the need to do so by we felt not violating the

10 order.

11         Now, obviously I understand that Your Honor's

12 interpretation of the order is what controls but we felt that

13 we were not violating the order and that's why we did what we

14 did.

15         THE COURT: Okay.  Let me also make it clear -- and

16 that's why I asked you why you didn't bring it to the court

17 because if you -- if you were right you would have gotten to

18 use the document and there would be no harm.  If your

19 interpretation is wrong then the result is you have revealed

20 documents which would have been deemed confidential.  The

21 balancing of the equities in the status quo -- you chose to

22 act in a way that created more of a conflict.  You understand

23 that, don't you?

24         MR. TOLCHIN: I understand that, Your Honor.  I can

25 simply explain that this was one document.  This is by way of

1  explanation only.  It doesn't necessarily excuse anything but

2  the document was one among a great many exhibits to papers

3  that were due in the Gilmore case and with time running short

4  and many things to do, all of which take a lot of time, we

5  said that -- we felt that the most expedient thing to do was

6  to remove the specific quotations and keep it in a way that we

7  felt did not reveal so much that it would violate the

8  confidentiality order.

9           THE COURT: I'm --

10          MR. TOLCHIN: I don't know -- medical records, for

11  example, are frequently designated confidential and to say I

12  have the records of so and so's treatment, I don't think

13  saying that you -- a general description of what you have

14  without revealing the confidential information -- we felt that

15  that was sufficient particularly given Paragraph 2A of the

16  confidentiality order which provides a very limited, very

17  limited list of types of information that are allowed to be

18  designated as confidential in this case and very little or

19  none of what is in the documents even arguably falls within

20  the category in Paragraph 2A of the protective order.  And

21  there's no trade secrets.  There's no personal private medical

22  information.  There's no addresses of plaintiffs.  The only

23  thing that defendants point to is personal private employment

24  information that there isn't even anything in these documents

25  which comprises personal private employment information.

1          THE COURT: Again --

2          MR. TOLCHIN: The fact that these --

3          THE COURT:  Mr. Tolchin, again, I think you're not

4    focusing on the issue, and that is if you believe that

5    something should not be confidential then there's a procedure

6    having it -- having the confidential designation taken off.

7    If I understand what you -- you're arguing basically that

8    if -- basically if it looks like a duck, quacks like a duck

9    and walks like a duck it's a duck so I don't have to worry

10   about what the confidentiality agreement says.  I mean if

11   that's the position you're going to take -- what's the import

12   of the confidentiality agreement?

13         MR. TOLCHIN: I'm not saying that, Your Honor.  I

14   think that's an unfair --

15         THE COURT: Did Mr. Hill take the same approach in

16   terms of anything that -- if he disagrees with your

17   designation as something as confidential, would he be able to

18   reveal it if he disagrees with it and then --

19         MR. TOLCHIN: No, he shouldn't, Your Honor, but what

20   we did was we tried not to reveal it.  We tried to submit what

21   we submitted in Gilmore in a way that we felt did not reveal

22   any type of confidential information that is protected by

23   Paragraph 2A of the confidentiality order in this case.  We

24   deliberately rephrased the affidavit so -- or the declaration

25   so that it would not reveal any such information.

1    I'm pointing out how it's not confidential

2  information in the first place only as a secondary point.  The

3  first thing we did is we said -- we didn't arrogate to

4  ourselves and said well, we're not -- we're going to disregard

5  this letter and reveal the information because we think it

6  shouldn't have been designated.  We didn't do that.  We knew

7  we couldn't do that and we said to ourselves we can't do that.

8  So we phrased the affidavit in a way that or the declaration

9  in a way that did not reveal any sort of confidential

10  information within the scope of Paragraph 2A of our

11  confidentiality order.

12        So we did not mean to act, and I don't think we did

13  act in a way that arrogated to ourselves the right to be

14  judge, jury and executioner.  We tried to comply with the

15  order.  I believe we did comply with the confidentiality order

16  and that is a completely separate point from the separate

17  argument that this document should never have been designated

18  as confidential in the first place.

19        THE COURT: But isn't it a fact that to the extent

20  that the document was designated confidential and was not

21  otherwise redacted the confidentiality order indicate that the

22  document is confidential?

23        MR. TOLCHIN: Well, I don't read it that way, Your

24  Honor, because the confidentiality order in Paragraph 2A says

25  only those portions of any discovery material that -- and then

13

1   there's a list of criteria containing or are derived from

2   trade secrets is one and then -- I'm summarizing.  Contained

3   or derived from personal private medical information is

4   another and the third and final one is contained or relate to

5   the addresses of the plaintiffs -- I'm sorry, there are four.

6   The fourth and final is contained or relate to personal

7   private financial or employment information.

8          So those are the only types of information that may

9   be designated as confidential under this protective order and

10  nothing that I wrote in my declaration reveals any of those

11  categories of information.

12         THE COURT: That's argumentative though because from

13  your description of it it's a question of whether or not the

14  employment information is confidential, not whether or not it

15  was employment information.

16         MR. TOLCHIN: Personal private employment

17  information.  That's what it has to be.  Personal private

18  employment information.

19         THE COURT: That's not otherwise defined, is it?

20         MR. TOLCHIN: No, it's not but the reason that we

21  felt very confident that nothing I said was personal private

22  employment information is I said that the documents -- you may

23  argue that -- you may say that the documents show or that my

24  declaration shows that the documents, the confidential

25  documents show that Abdul Karim Awese was employed but Abdul

14

1  Karim Awese gave a deposition in the Gilmore case where he

2  testified that he was employed and gave his rank.  So there

3  was nothing confidential about that fact.  It was not personal

4  private information.  He's already testified in a deposition

5  which was not protected by a protective order.

6          Another illustration, and this is all in my October

7  14th letter, there was a trial in Israel of a fellow named

8  Nassa Shawish --

9          THE COURT: Okay.  Let me -- Mr. Tolchin, let me

10 again be clear.  If you -- if you make this argument in saying

11 that you should be able to reveal his employment -- let's say

12 you call the court and you say to the court Judge, this

13 document is marked confidential, it's got this person's

14 employment information in it, it's clearly not confidential

15 because it was revealed in a deposition, we don't think it

16 should be -- and I say well, that sounds reasonable.  What do

17 you have to say, Mr. Hill.  And he makes an argument and I

18 rule on it.  That's like a five minute argument with the

19 court.  I'm not sure what -- you understand that what you're

20 doing is you get the double edged sword.

21          To the extent that you have stronger arguments about

22 lack of confidentiality that undermines the notion that this

23 would burden the court or anyone else because it would have

24 been so straightforward.  Are you not suggesting that if you

25 were to make this argument to the court that there would be

15

1   any difficulty ruling on it?

2         MR. TOLCHIN: No, Your Honor.  I'm suggesting that we

3   were -- frankly we were running out of time and rather than --

4   obviously we would prefer to use the document itself instead

5   of a somewhat wishy-washy illusion to the document.  Obviously

6   it's better to use the document itself than a vague general

7   statement about the document in a lawyer's affidavit but we

8   decided that with all the issues we had to deal with and with

9   our resources that we had available that rather than fighting

10  -- we have to choose our battles and rather than fighting to

11  get this document on confidentialitied [sic] -- undesignated

12  in time to make our submission in the Gilmore case we decided

13  to just remove anything that is confidential and submit it in

14  a water downed form so as to remain in compliance with the

15  confidentiality order in the Sokolow case.

16        THE COURT: Why were you running out of time? What

17  was that all about?

18        MR. TOLCHIN: We had summary judgment papers due in

19  the Gilmore case.  I mean that's what this all comes down to.

20  This has to do --

21        THE COURT: Did the court give you an abbreviated

22  time to submit those papers?

23        MR. TOLCHIN: All -- I suppose by definition all

24  briefing schedules are abbreviated.  Is Your Honor going to

25  say -- is Your Honor going to ask me next why we didn't think

16

1   of this issue on the first day that we had to draft the

2   summary judgment motion?  We didn't.  We were dealing with it

3   near the end and rather than -- rather than raising the issue

4   with Your Honor and leading and deferring and writing to Your

5   Honor and waiting for the responsive letter and setting up a

6   conference we would have been out of time.  So we just removed

7   the -- we removed the document.  We did not use the document

8   because we realized we couldn't.  We thought -- I can't say

9   this strongly enough.  We did what we did in order to remain

10  in compliance with the protective order.

11          Now, at all times when you're governed by a

12  protective order you have to make judgment calls about whether

13  -- can I show documents to a translator, can I give the

14  documents to an outside copy service.  I have to look at the

15  order and decide whether it's allowed or not and in this case

16  we looked at the order and we felt that what we did was

17  allowed.  I understand if you're -- Your Honor is the ultimate

18  arbiter on that but we did what we did in order to comply with

19  the order and we believe we have complied with the order.  And

20  I'm repeating myself.

21          THE COURT: Again, it appears that you seem to assert

22  that you were under some time constraint that did not allow

23  you to raise the issue with the court.  Have there been issues

24  here that you have had difficulty raising with the court

25  without it taking that much time?

17

1          MR. TOLCHIN: Everything takes time, Your Honor, and

2    I think you may be overstating what I said.  I know Your Honor

3    has been on my side of the bar.  I know that you've litigated

4    cases and you -- you need to -- you always need to allocate

5    your time and resources and it's not that we decided -- I

6    can't say this strongly enough.  It's not that we decided to

7    violate the confidentiality order because we ran out of time.

8    We said no, we're going to submit something in Gilmore which

9    is second best rather than spend time which we didn't have at

10   that point to seek to undesignate it.  So rather than giving

11   in to the Gilmore court something that we could not give

12   because of the confidentiality designation we simply did not

13   give it in and I don't believe we violated the order.

14          Separate from that I would say that the defendants

15   violated the order by designating this document in the first

16   place but I understand that's a separate point.

17          THE COURT: Mr. Hill, the question I have for you is

18   this.  It does seem we're dealing with two separate issues.

19   That is one, the procedure that Mr. Tolchin used whether or

20   not it is sanctionable and secondly, if I agree -- whether ro

21   not I agree with him using the improper procedure, whether or

22   not the appropriate response from this court is to have the

23   documents removed from the Gilmore case assume that I had the

24   authority and/or the power to make that happen, given that one

25   of the considerations the court would have in that regard

18

1  would not -- we've moved into the question of whether or not

2  it should have been designated confidential and therefore it

3  would take extraordinary -- from my point of view an

4  extraordinary intervention in order to do that.  What -- the

5  arguments that Mr. Tolchin made, as I said dealing separately

6  with the question of how much harm was created by his alleged

7  breach, what is your -- what are your arguments concerning the

8  confidential nature of these documents?

9          MR. HILL: Yes, Your Honor.  Well, let me address all

10  of those if you don't mind and let me give Your Honor a couple

11  of additional data points which Mr. Tolchin did not give you.

12          You've asked whether there was an abbreviated

13  briefing schedule in the Gilmore matter for summary judgment.

14  We filed the motion for summary judgment in the Gilmore case

15  in August of 2012.  It has been more than a year that that

16  motion has been on file.  The plaintiffs asked for and

17  received until October 1, 2013 to file their opposition in

18  that case.  So the notion that the plaintiffs ran out of time

19  seems -- well, I won't characterize it but the notion that --

20  you had a motion on file for over a year and the opposition

21  jammed you I think should not be credited by the court.

22          Mr. Tolchin identified this issue in an email he

23  sent to me on September 9th which was 21 days before his brief

24  was due on October 1st.  I responded to him on September 12th

25  and I told him that we would not be removing the

19

1  confidentiality designation for these particular documents.

2  In that email, which is attached to my letter of October 4th,

3  Mr. Tolchin recognized that he would have to receive leave

4  from you in order to use that document in the Gilmore case and

5  I in fact told him in my email of September 9th that using that

6  document in the Gilmore case would violate Paragraph 4 --

7  Paragraph 4 of the order as Your Honor may have in front of

8  you says "Confidential discovery materials shall not be used

9  by any person other than the producing party or non party for

10  any purpose other than prosecuting, defending, settling,

11  appealing or enforcing any judgment in the above captioned

12  action."

13        So if I may suggest to Your Honor, I think the

14  clearest violation here is of Paragraph 4 itself.  The fact

15  that the document which was designated as confidential was

16  used in the Gilmore case is [inaudible] a violation of

17  Paragraph 4 and I told Mr. Tolchin that on September 12th.  And

18  he went ahead and indisputably used the document in the

19  Gilmore case anyway.

20        So setting aside whether or not the content of the

21  document was violated, was revealed in violation of Paragraph

22  2B of the order, I think it's indisputable that Paragraph 4 of

23  the order was used -- was violated just because he used the

24  document in a case other than this one.

25        So if you move to the next inquiry which is did what

20

1    he did in his declaration violate Paragraph 2B of the order,

2    and that's the provision that says "The protections conferred

3    by this order cover not only confidential discovery material

4    but also any information copied or extracted therefrom as well

5    as all copies, excerpts, summaries of compilations thereof."

6            THE COURT: Mr. Hill, let me remind you.  I have read

7    your submission.  I understand the arguments and it should be

8    clear from the tenor of my questions that I appreciate the

9    import of what Mr. Tolchin did.  What I would like from you,

10   however, is to focus on the issue which I raised because

11   despite the fact that it's coming in a roundabout way if I'm

12   going to -- separate and apart from whether or not what Mr.

13   Tolchin did is sanctionable and what the appropriate sanction

14   is the question still remains as to what remedy other than

15   sanctions are appropriate given the documents that are at

16   issue.

17           MR. HILL: Yes, Your Honor.  I'm happy to address the

18   remedy issue.  I apologize.  I misunderstood what you wanted

19   me to do.

20           So in terms of remedies, you clearly have the power

21   and authority to require the plaintiffs and the plaintiff's

22   counsel in this case to withdraw the material they filed in

23   the Gilmore case and to withdraw the material they publicly

24   filed in this case.  It's unquestionable that you have

25   jurisdiction to enforce your own order and indeed that is why

21

1  we came to you as opposed to the judge in Gilmore to get the

2  relief here and I think Judge Kessler may have understandably

3  said to us why are you coming to me if you think Judge Ellis'

4  order has been violated.  You want to go to Judge Ellis.

5         So I think, Your Honor, there can be no doubt that

6  you have the jurisdiction to enforce your own order by, among

7  other things, requiring the parties and their counsel to

8  comply with the order and to remedy their breach of it by

9  withdrawing from the public record in the other case the

10 material that they have filed there in violation of your

11 order.

12        I would request a further sanction though because I

13 think that is in effect just a slap on the wrist and to a

14 certain degree the bell cannot be unrung, Your Honor.  Mr.

15 Tolchin's goal was to in violation of Paragraph 4 tell Judge

16 Kessler about this material and he has achieved that goal and

17 if all you do is require him to take it back that doesn't

18 unring the bell.  I think what needs to be done is for the

19 plaintiffs to suffer a real sanction here and I think the

20 appropriate one is the one we've suggested in the letter which

21 you have the authority to do under Rule 16(f) which is to not

22 allow them to use this material further in this case.

23        As you will remember from our lengthy discussion in

24 November of 2001 where Mr. Tolchin opposed having any

25 protective order entered at all you correctly noted that the

22

1   rationale for these sorts of orders is to allow the parties to

2   exchange confidential information without having to require

3   the courts to get involved and whether the information is or

4   is not relevant to the case.

5           If there had been no protective order in ths case I

6   would have resisted producing these precise documents on the

7   grounds of their relevance.  We didn't have to do that because

8   there was a protective order.  But because we know the

9   plaintiffs don't honor the order and are prepared to use the

10  material not only by publicly disclosing it in violation of

11  the order but to use it in other cases when the order

12  expressly says they can't do so I would respectfully request

13  that the court sanction the plaintiffs by not letting them use

14  this material.  They got it --

15          MR. YALOWITZ: Your Honor, Your Honor, this is Kent

16  Yalowitz.  I've been sitting quietly listening to this.

17          MR. HILL: Mr. Yalowitz, may I finish before you

18  interrupt, please?

19          MR. YALOWITZ: I just ask permission to be heard,

20  Your Honor.

21          THE COURT: Mr. Yalowitz, Mr. Hill has to finish

22  first.  Mr. Hill, I gather though from what you're saying

23  though that this -- you don't want what we would do with the

24  jury and instruct them to disregard it because that can't

25  happen but you wanted to sanction that has impact on this case

23

1  and that it's the -- if the sanction having to do with the use

2  of information in this case and whether or not -- and I take

3  it though that you're saying that regardless of whether or not

4  the documents should have been or would have been deemed by

5  the court to be confidential the violation of the court -- the

6  protective order require that sanctions without regard to

7  getting -- the court reaching the issue of what were the

8  appropriate designation of these documents.

9           MR. HILL: That's correct, Your Honor.  As far as the

10  third point goes, which is were they appropriately designated,

11  the fact of the matter is the order required us in good faith

12  to make the designations.  We did designate only those

13  portions, those pages of the documents that contained or

14  related to personal private financial or employment

15  information and there is a procedure in the order that Your

16  Honor entered requiring a party if there is a disagreement to

17  raise it with the opponent, which Mr. Tolchin did on September

18  9th.  I responded on September 12th that I would not withdraw

19  the designation and then he had ten days to come to you and

20  get relief --

21           THE COURT: Mr. Hill --

22           MR. HILL:  -- and he didn't do it.

23           THE COURT: Mr. Hill --

24           MR. HILL: The terms of the order that --

25           THE COURT: If you're not going on the subset I know,

24

1    you know and I gather that at least someone on the plaintiff's

2    side understands it.  Again, we're talking about what is going

3    to happen now.  I have a good idea of what's already happened

4    and again I take it your position is that the court need not

5    reach the question of whether or not your designation of these

6    documents as confidential was appropriate in view of Mr.

7    Tolchin jumping the gun and divulging them without resort to

8    the procedures that were called for in the order.

9            MR. HILL: That's correct, Your Honor.  And I guess

10   I'm making the additional point that under the terms of

11   Paragraph 14 itself the ten days have run and so as the order

12   exists it's actually now too late for the plaintiffs to ask

13   you to change the confidentiality designation.  I understand

14   you can vary your own order but you would now with the party

15   coming to you with unclean hands be saying not only am I going

16   to relieve -- now I'm going to not even hold you to the

17   provision of the order that said you had ten days after

18   September 12th to bring this to my attention.

19           The purpose of that provision is so that these

20   things don't drag on.  If there really is an issue the parties

21   should bring them to you as you've told us --

22           MR. YALOWITZ: Your Honor, may I now be heard on the

23   bizarre relief that the defendants are requesting?

24           THE COURT: Mr. Yalowitz, if you interrupt one more

25   time you won't get to speak.  Do you understand?

25

1          MR. YALOWITZ: Yes, sir.

2          THE COURT: Okay.  Mr. Hill.

3          MR. HILL: Yes, Your Honor.

4          THE COURT: So because of the -- as I said, jumping

5    the gun, and specifically what you want as a sanction is that

6    -- now, in terms of what was used, are you talking about the

7    documents, the information or anything related to this

8    employment?

9          MR. HILL: In terms of relief I would like, Your

10   Honor?

11         THE COURT: Yes.

12         MR. HILL: Your Honor, the relief I'm asking for is

13   systematic.  We produced the documents that we produced in

14   this case that we designated as confidential in good faith

15   with the understanding that the plaintiffs would honor Your

16   Honor's order and use them only as specified in the order.

17   That good faith has been breached in our view and we think in

18   order for there to be a real sanction the plaintiffs need to

19   lose the benefit of that bargain.

20         We would have litigated the relevance,

21   responsiveness, probity of all of the documents that we

22   produced subject to ths confidentiality order.  We did not do

23   so because we believed we had an order that was enforceable by

24   the court that would prevent them from being misused.  That

25   order has proven to be not worth the paper it's printed on and

1  we think the appropriate sanction is that the plaintiffs not

2  be able to use the materials that we designated as

3  confidential in this case.  I don't see another sanction that

4  effectively sanctions them.  If you just say hey, withdraw

5  what you -- that you already rang the bell, you make them pay

6  my fees or something like that, they are --

7          THE COURT: I'm sorry.  Just -- I'm still not clear.

8  Is everything that's been designated as confidential according

9  to the confidentiality order, not just what's -- what was

10 disclosed?  I just need clarity on what it is that you asked.

11 Are you still there?

12         MR. TOLCHIN: Bob Tolchin is still here.

13         FEMALE VOICE:  Your Honor, this is Ami [inaudible]

14 for Brian Hill.  Brian is calling from overseas.  He's taking

15 depositions in this very matter and I think probably what's

16 happened is he's gotten disconnected.  So --

17         MR. TOLCHIN: He'll call back any second.

18         FEMALE VOICE: I'm sure he'll be calling back in any

19 second.

20         THE COURT: Okay.

21                [Pause in proceedings.]

22         THE COURT: I assume that he'd know that he's been

23 disconnected because he won't be -- he won't hear anybody else

24 speaking although sometimes with lawyers I'm not sure.

25         FEMALE VOICE: Your Honor, may I try to conference

27

1  him in?  There he is.

2            MR. TOLCHIN: Wait, there he is.

3            MR. HILL: Your Honor, I beg your pardon.  I lost my

4  telephone connection here in Jerusalem.

5            THE COURT: Okay.  My last question --

6            MR. HILL: Yes, Your Honor.

7            THE COURT: That is it seemed that you were saying

8  that you want all of the documents that have been marked

9  confidential not to be able to be used in this litigation or

10  are we just talking about the documents that you -- that have

11  been submitted in the Gilmore case in this instance?

12            MR. HILL: Your Honor, I would ask for all the

13  documents that we have marked.  If Your Honor is not willing

14  to give that sanction I would ask that at a minimum the

15  particular documents that have been misused here the

16  plaintiffs not be able to use in this case.

17            THE COURT: Okay.  I just wanted to clarify what --

18  make sure that -- okay.  Mr. Yalowitz, you wanted to I assume

19  weigh in on the sanctions issue.  I mean the scope of the

20  sanction requested by Mr. Hill.

21            MR. YALOWITZ: Well, yes, sir. So I've been listening

22  to this and it seems to me first of all that any sanctions

23  that a court enters has to be tailored to fit the

24  transgression if there was a transgression, and the first

25  question it seems to me on any sanction is what -- what was

28

1   the harm and Your Honor's certainly right.  It's better to ask

2   permission than to ask forgiveness but here we're talking

3   about documents that are highly relevant not only to our case

4   but they seem to be highly relevant to the Gilmore case too

5   and documents that really shouldn't be marked as confidential.

6           I can tell you that the cases I understand it is

7   highly impacted by the fact that these individuals like this

8   fellow Awese, Awese was a Palestinian police officer.  He was

9   convicted of crimes of terrorism in a court of law and

10  following his conviction he's remained with the Palestinian

11  police.  He continues to be paid his Palestinian police

12  officer's salary and indeed he's been promoted.  And I can

13  understand why the defendants don't want the jury in this case

14  to hear that but the idea that because there was an honest

15  mistake by counsel that that kind of information would be kept

16  from the jury would be a terrible, terrible miscarriage of

17  justice.

18          I'm not saying that we shouldn't have come to you

19  before.  It's obvious that all this could have been avoided

20  and I can tell you now we're going to go through these

21  documents and we're going to work through them with the

22  defendant and we're going to get them de-designated so that we

23  don't have this problem.  But to tell the plaintiffs in this

24  case or American citizens who lost loved ones in acts of

25  terrorism that the jury can't hear about this it's just way

29

1   beyond the pale, Your Honor.

2          THE COURT: Well, I understand the position that

3   you're taking.  I will say this.  I think as with any

4   penalties imposed by the court whether civil or criminal they

5   ought to be proportionate to the nature of the violation.

6          But that having been said, it appears to me that a

7   couple of things.  One, I agree with Mr. Hill that I certainly

8   have authority over counsel here but what I was referring to

9   as extraordinary is to have documents withdrawn from another

10  case whether or not you should have the power and I have not

11  been convinced that given the circumstances it is appropriate

12  to [inaudible] that the documents be withdrawn because I don't

13  -- I'm not converse with the other case and also unlike the

14  defendants in this case I think it's always a question of

15  whether or not documents are relevant and whether or not

16  they're confidential and I don't have sufficient information

17  to determine the prejudice to either side with respect to what

18  the documents mean with respect to those two topics and

19  therefore whether or not they should not be used.  That of

20  course applies to how they would be used in this case also.

21          However, I think it goes without saying that based

22  upon my questioning that I strongly disagree with the notion

23  that, first of all you should be -- nothing -- no action by

24  the parties should be premised on the notion of the

25  [inaudible] court work or not bringing problems to the court.

30

1    Indeed, the case is referred to me for the specific reason of

2    taking care of those problems and to the extent that lawyers

3    on either side fail to take advantage of the court's ability

4    to resolve conflicts that cannot be encouraged and must be

5    discouraged.

6            That does not mean that the penalties if any that

7    are imposed should necessarily penalize the parties when it

8    seems to me that at the -- what is perfectly clear at this

9    point is that whatever failures of counsel and while in some

10   instances it makes sense to impute counsel's failures to the

11   client that seems to me something that the court ought to

12   weigh in terms of who's the real party that's violated

13   whatever orders there are and who needs to be punished.

14           I have the submissions by the parties.  I don't know

15   if any of my questions today have caused anyone to believe

16   that their submissions are incomplete but I will say this.

17   That if a party fails to take advantage of the court's ability

18   to resolve disputes there has to be a compelling reason for it

19   and that compelling reason could be the inability to reach the

20   court or to get the court's resolution in time.  It could be

21   other exigent circumstances.  But failing that you've got to

22   prove that you made some attempt to get the court involved.

23           So for defendant's benefit I will say that

24   notwithstanding what I considered to be questionable practices

25   on the part of the plaintiff, I think that the defendants are

31

overreaching in what they want the court to do based on Mr.

Hill's October 4th letter.  I will -- if the defendant has some

other sanction it wants to propose or modification of any of

their sanctions they're free to propose that but ultimately

I'm going to review everything that's been submitted to me

including the protective order itself.

As to the question of the harm, and I approach this

with some trepidation, I do think that ultimately it is

important where the documents fall both in terms of relevance

and in terms of confidentiality and I don't know that the

parties addressed that issue except in the broadest terms

where the defendant said they acted in good faith and the

plaintiff said obviously they're not confidential.  Neither

one of those positions actually help me that much.  So if the

parties understand what my position is I will base it on the

record that is before me unless there's something specific

which somebody thinks might aid the court in its

determination.

MR. HILL: Well, Your Honor, this is Brian Hill.  We

will be opposing the motion to intervene and in that briefing

we can address these issues if that will be of aid to Your

Honor in resolving the question of whether you'll sanction the

plaintiffs in this case.

MR. TOLCHIN: Your Honor, this is Bob Tolchin.  That

same motion to intervene and the motion to de-designate by the

1  Gilmores may affect the outcome in a practical way.  It may

2  affect the outcome of this application as well.

3        MR. HILL: Your Honor, may I ask that pending the

4  resolution of this issue that the plaintiffs be required to

5  remove from the public record at the very least in the Gilmore

6  case the materials that are the subject of [inaudible].

7        MR. YALOWITZ:  By that do you mean ask the clerk to

8  seal them?

9        THE COURT: I think that's --

10        MR. HILL: At the very least.

11        THE COURT: I think that is what Mr. Hill is asking

12  and [inaudible] some of the other comments I make that would

13  seem to be the appropriate way to handle this, Mr. Tolchin.

14  You can -- I forget the judge's name but I'm sure --

15        MR. HILL: Kessler.

16        THE COURT: You can -- Kessler.  Oddly enough the

17  name of one of my former law clerks.

18        I do think it's appropriate to request that -- while

19  we can't unring the bell at least until I have determined the

20  appropriate result from the various applications that it be at

21  least sealed in that case and indeed I'm not sure why that

22  wasn't one of the results that was considered here but, Mr.

23  Tolchin, you are directed to request that they be sealed in

24  the Gilmore case.

25        MR. HILL:  Your Honor, there are a couple of filings

1  in this case that have the same issue.  May I ask that you

2  direct that those be placed under seal in this matter so at

3  least they won't be publicly available?

4              THE COURT: I thought all the documents that the

5  parties submitted were under seal.  Did I miss --

6              MR. TOLCHIN:  He's talking about he letters.

7              THE COURT: Right.

8              MR. TOLCHIN: He's talking about the letters that

9  we're dealing with right now.

10             THE COURT: Mr. --

11             MR. HILL: And Gilmore's public filing.

12             THE COURT: I thought Mr. Hill's letter was

13 confidential.

14             MR. TOLCHIN: As to Hill's letter -- my letters were

15 e-filed and Mr. Gilmore's public filing -- Mr. Gilmore's

16 filing -- filed the confidential documents under seal.

17             THE COURT: The motion itself doesn't reveal any

18 confidential information, does it?  So the only thing --

19             MR. TOLCHIN: I don't think so.

20             THE COURT: The only thing we're talking about is the

21 October 10th letter?

22             MR. HILL: Actually the October 14th letter, Your

23 Honor, and I think Gilmore's public filing does run afoul of

24 Paragraph 2B.  I emailed Mr. Tolchin about this and asked him

25 to take appropriate action.  He has not yet done so.

34

1          THE COURT: Okay.  Well, if you can tell me which

2    specific letters should raise questions concerning the

3    confidentiality we can have those temporarily designated as

4    confidential in my order.

5          MR. HILL: Yes, Your Honor.  It will be Mr. Tolchin's

6    letter of the 14th.

7          THE COURT: Do you have document numbers?

8          MR. HILL: Let me just pull that up, Your Honor.

9                    [Pause in proceedings.]

10         MR. HILL: It would be Document 365, Your Honor.

11         THE COURT: We'll have that designated -- we'll have

12   that temporarily sealed.

13         MR. HILL: And I believe the other one is Document

14   356 which is the Gilmore's motion to -- the brief in support

15   of that.

16         THE COURT: And 356, transpose the 5 and the 6.

17   Anything else?

18         MR. HILL: Nothing from me at this time, Your Honor.

19         THE COURT: I don't have a timetable for this.  So I

20   will tell you it's not imminent, that is it's not going to --

21   I'm not going to resolve this to [inaudible] because I do want

22   to consider everything that's been submitted and the arguments

23   that counsel has made tonight.

24         Is there anything else?

25         MR. HILL: No, Your Honor.

35

 1          MR. YALOWITZ:  No, Your Honor.  Just thank you

 2   again. I do apologize for being passionate.  I just care very

 3   much about being able to present these very important

 4   documents to the jury.

 5          THE COURT: I care very much about courtesy

 6   because -- and I know lawyers sometimes want to interrupt but

 7   from me the lawyers who don't know me the implication must be

 8   that they don't think I'm going to give them an opportunity to

 9   state their case and that's -- I hopefully have never been

10   accused of that.

11          So in any case, I have your position and so we'll

12   seal those and then if -- I suspect, however, that I may

13   require a specific submission once I determine what route I'm

14   going to take so that the parties can address what I'm

15   considering if it's going to go the sanction route.  Thank

16   you.  We're adjourned.

17                    *  *  *  *  *

18

19

20

21

22

23

24

25

36

1     I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                       _____

6                                Shari Riemer

7  Dated:  October 31, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25