# MILLER KORZENIK SOMMERS LLP

488 MADISON AVENUE • NEW YORK, NEW YORK 10022-5702
TEL 212.752.9200 • FAX 212.688.3996 • WWW.MKSLEX.COM

Via Federal Express
December 13, 2012

Honorable George B. Daniels
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street Room 630
New York, NY 10007-1312

Re: Sokolow v. PLO et. al, 04-CV-00397 (GBD)(RLE)/Subpoena to BBC

Dear Judge Daniels:

On behalf of non-party British Broadcasting Corporation (the "BBC"), we write in response to Plaintiffs' letter to the Court from David Schoen, Esq. dated November 30, 2012 ("Schoen letter") submitted pursuant to the Court's direction at the Nov. 19, 2012 hearing. Plaintiffs' request for *in camera* inspection of the BBC's Outtakes should be denied.

1. *Plaintiffs have not satisfied their burden of overcoming the BBC's privilege by showing likely relevance and specified need, and no alternate sources, a prerequisite for in camera review:*

   • Even if the Outtakes were deemed relevant (which Plaintiffs have failed to show), they would still be protected as Plaintiffs have not demonstrated the absence of any alternate sources for the information sought in them – to the contrary, even by Plaintiffs' own admissions, numerous unexhausted alternate sources exist;

   • Plaintiffs' mere speculation, and desire for the Court to sift through the Outtakes to see if there might be something helpful to Plaintiffs, does *not* satisfy the requisite threshold relevance showing for *in camera* inspection, particularly as Plaintiffs admitted that they do *not know* what is there;

   • Given "the likelihood that forced disclosure even for *in camera* review will inhibit the [journalist] exercise of First Amendment rights," N.Y. Times Co. v. Jascalevich, 439 U.S. 1331, 1335 (1978), *in camera* review is unwarranted, where, as here, the privilege has not been overcome.

2. *In camera review is, in any event, beyond the power of the Court to order* because compelled production for *in camera* review of the Outtakes, which are controlled from and located outside the U.S., would violate Fed. R. Civ. P. 45 and principles of comity the same as it would if compelled for full disclosure.

Hon. George B. Daniels                            2                         December 13, 2012

     Likewise, Plaintiffs' demand for an affidavit should be rejected.[1] Their description of its desired scope far exceeds even the foreign affidavits that Magistrate Judge Ellis erroneously ordered, and the scope that this Court discussed at the November 19 hearing. Plaintiffs' desired affidavit cannot be obtained through current BBC personnel.

## Background

     There is no dispute that the subject matter of this action – the attacks that caused the death and injuries alleged in the Complaint – are *not* mentioned in the BBC's 2003 broadcast "Arafat Investigated," the Program. And as Plaintiffs' admit, one of the two Al-Aqsa attacks in issue *post-dated* that broadcast and both attacks were in Jerusalem, while the Al-Aqsa brigade shown in the Program operated in Jenin.[2]

     Plaintiffs contend, instead, that a "link" between Defendants and Al-Aqsa is found in broadcast statements made by Ata Abu Ramaileh," identified as a local Fatah official (and who, it is undisputed, continues to serve as such), and Zakaria Zubaidi, identified in the broadcast as the leader of the Jenin Al-Aqsa brigade. Zubaidi, it is undisputed, spent almost this entire past year in the detention facilities of Defendant Palestinian Authority ("PA"). Dkt No. 258 (BBC's Objections), p. 20 n. 19. Plaintiffs do not dispute that:

- Plaintiffs never attempted to speak with either of these BBC interviewees;

- Plaintiffs do not allege that they ever sought to confirm these interviewees' broadcast statements with Defendants;

- in addition to the two interviewees and Defendants themselves, other alternate sources of this alleged "link" were or are reasonably available for the information sought, including but not limited to:

  - earlier published or recorded statements of Defendants that 'Al-Aksa Brigades' is an alias for Fatah, and that the "wave of Palestinian terror" in 2000-2002 "was intended to intimidate the Israeli public and government to accept defendants' political demands..." (PA website), and that the PA was funding Fatah ("documents captured and published by Israel" and deposition testimony in another case from the PA Minister of Civil Affairs) (Dkt. No 159-6 [Pl. Opp. Ex.

---

[1] *BBC's Offer*. Plaintiffs state that such affidavit "would accompany the production of the documentary" (Schoen letter p. 1). But the documentary, previously provided to Plaintiffs' counsel under an agreement prior to the Subpoenas in this case, was not ordered to be produced by Magistrate Judge Ellis, a ruling too which Plaintiffs have not objected. Nevertheless, in a good faith settlement attempt prior to the receipt of the Schoen letter, the BBC offered to Plaintiffs to provide another copy under the same agreement as the first was provided, which terms include its authenticity, so long as Plaintiffs do not contend that doing so waives any rights or position taken by the BBC. To date, Plaintiffs have not responded or accepted that November 30 offer.

[2] Plaintiffs posit new arguments, not raised before Magistrate Judge Ellis or in its prior submission on the BBC's Objections to this Court, regarding alleged causation and admissibility of so-called "bad act" evidence. Schoen Letter pp. 2-3 n.1. While these arguments should be disregarded for that reason, they also do not assist Plaintiffs in obtaining *in camera* review of the Outtakes. These new contentions do not remedy Plaintiffs' abject failure to demonstrate any threshold specific relevance of the *Outtakes*, and do not excuse their failure to show a lack of alternate sources for evidence of the "link" they seek.

F], pp. 4-6, 13);
- o   incarcerated convicted perpetrator (s) of the attacks in issue;
- o   the trove of official documents seized from Arafat headquarters in 2003 (Israeli Ministry of Foreign Affairs or its website)
- o   Israel Security Agency assessments of relationships between the organizations (website).

See generally Dkt  No. 258 (BBC Objections), pp. 19-21.  Indeed, the Court noted to Plaintiffs' counsel at the November 19 conference that "you could probably run down a list of a dozen ways, a half dozen to a dozen ways that you intend to demonstrate this connection [sought in the Outtakes]." Dkt No. 275 (11/19/12 Transcript ["Tr."]) at 90:15-17. [3]

With respect to the Outtakes of the Rumaileh and Zubaidi broadcast interviews, Plaintiffs admitted they have no idea what the Outtakes contain, thereby contradicting their claim of relevance.  Specifically, when asked by Magistrate Judge Ellis, "[H]ow do we know there's anything relevant on the cutting room floor," their counsel Mr. Tolchin conceded, "*We don't…*" Dkt No. 258-2 (App.[1/19/12 Tr.]) 178 :1-4 (emphasis added). The bottom line is that they merely want the Court to sift through them to determine if there is anything conceivably helpful to their case.

It is instructive that Plaintiffs chose *not* to name Rumaileh or Zubaidi, or the BBC for that matter, in their Initial Disclosures as knowledgeable witnesses with any relevant information, even though Plaintiffs were fully aware then of the BBC Program. See Dkt No. 155-1 (Pl. Initial Disclosures filed 9/27/11), p. 10. Those Initial Disclosures were dated *after* Plaintiffs served their July 8, 2011 Subpoena on the BBC for this allegedly "relevant" information and *well after* their counsel unsuccessfully attempted to obtain that same allegedly "relevant" information from the BBC in the Saperstein action the previous year. See Dkt. No. 258-1 (App.[Subpoena]) 28-33. Plaintiffs' purposeful omission belies their present claim that the BBC footage of these interviewees provides "crucial" (Schoen letter p.2) – much less "likely relevant" – evidence on the issue they seek to establish.

### The Outtakes Should Not Be Compelled for *In Camera* Review

*I.*   *In Camera Review Will Not Help Plaintiffs, as the Outtakes Are Protected from Disclosure Regardless of Relevance Since They Have Not Shown a Lack of Alternate Sources to Overcome the BBC's Privilege*

Plaintiffs do not dispute that under Gonzales v. NBC, 194 F.3d 29 (2d Cir. 1999), they are required to show not only "likely relevance" but also a lack of available alternate sources for the information sought in order to defeat the BBC's privilege and obtain compelled disclosure.

---

[3] Since 2009, the BBC has been served with 4 subpoenas in 3 cases seeking the same materials for the same reason. In the other two cases, the BBC's motions to quash the respective subpoenas were granted. Saperstein v. Palestinian Authority, 09-mc-00619, 2012 U.S. Dist. Lexis 143465 (E.D.N.Y. Dec. 16, 2010) ("Saperstein"); Estate of Klieman v. Palestinian Auth., Civ. A. 04-1173, 2012 WL 1744737 (D.D.C. Apr. 10, 2012) ("Klieman"). Yet none of the plaintiffs argued that they had no other proof of the "link" for which the BBC materials were sought, and there is no claim here that since 2009 when Plaintiffs' counsel first sought and failed to obtain the BBC materials in Saperstein, Plaintiffs have been unable to unearth any other source of that proof.  The record is to the contrary.

Hon. George B. Daniels                    4                    December 13, 2012

But *in camera* review is only appropriate when the requesting party has met this burden on both scores. See, e.g., U.S. v. Cuthbertson, 651 F. 2d 189, 200 (3d Cir. 1981)(order for *in camera* review reversed where no showing that information contained in outtakes of interviews could not be obtained from another source, and interviewees had not yet been personally questioned); [4] U.S. v. Marcos, No. SSSS 87 CR. 598 JFK, 1990 WL 74521, at *4 (S.D.N.Y. June 1, 1990) (government denied access to outtakes where broadcast evidence sought was *cumulative* and thus neither crucial nor necessary to its case; request for *in camera* review denied because government "plainly cannot satisfy" the test for overcoming CBS' journalist privilege); Bradowsky v. Volkswagen of Am., Inc., No. M8–85, 1988 WL 5433 at *3 (S.D.N.Y. Jan.15, 1988)(since outtakes are "neither necessary nor unavailable elsewhere" and use of statements in outtakes would be "cumulative," *in camera* review of outtakes not warranted).

Plaintiffs' own authority agrees. Doe v. Kohn, Nast & Graf, 853 F. Supp. 147, 149 (E.D. Pa. 1994)(Schoen letter p. 5) ("…this court cannot compel the production of the tapes, *even for in camera inspection*, *unless* the moving party [on motion to compel] has satisfied certain *threshold requirements*. Specifically the movant must show that the information sought is unavailable elsewhere and consists of 'relevant evidentiary material.'") (citation omitted) (emphasis added).

Here, Plaintiffs have made *no* showing to satisfy their burden of overcoming the BBC's journalist privilege – much less the clear and specific showing that is requisite. See, e.g., Persky v. Yeshiva Univ., No. 01 CIV. 5278 (LMM), 2002 WL 31769704 at *4 (S.D.N.Y. Dec. 10, 2002); Concerned Citizens of Belle Haven v. The Belle Haven Club, No. CIV. 3:99CV1467(AHN), 2004 WL 3246719, at *1-2 (D. Conn. Mar. 22, 2004). They contend that they have satisfied the Gonzales test (Schoen letter p.3) merely by citing Magistrate Judge Ellis' unsupported, and clearly erroneous, conclusions. But particularly as to the alternate sources prong, this Court correctly questioned the soundness of that unsupported conclusion, stating:

> I tend to agree with the BBC…the second part of that [Gonzales] test, I don't see that Magistrate Judge Ellis has directly addressed in terms of its availability elsewhere …I have a much more difficult problem with making [that] finding as Magistrate. [See Dkt No. 275 (11/19/12 Tr.) at 88:23-25, 89:1, 90:8-12, 15-17].

As the Court went on to tell Plaintiffs' counsel, "…you could probably rundown a list of a dozen ways, a half dozen to a dozen ways that you intend to demonstrate this connection [sought in the Outtakes]." Id. at  90:15-17.

That is indeed the situation here – there are many alternate sources from which Plaintiffs can obtain the proof they seek from the BBC, and Plaintiffs themselves have admitted a number of them. See, e.g., p. 2, supra. Magistrate Judge Ellis' conclusion is unsupported for this reason, as well as that Plaintiffs made *no attempt at all to show* that there was a lack of alternate sources, resting instead on their erroneous and rejected argument that the BBC was not entitled to assert a journalist privilege in the first instance. See Dkt No. 158 (Pl. Mem. 10/17/11) pp. 17-18.

---

[4] As the concurring opinion in Cuthbertson made clear regarding the potential threat to the journalist privilege from *in camera* review:  "*Otherwise, a device intended to protect the person opposing disclosure could be converted into a device by which that person must disclose material that could not have been obtained from it directly.*"  651 F.2d at 199 (emphasis supplied).

As they do here, Plaintiffs merely focused on Zubaidi and Rumaileh – largely ignoring the myriad other sources for the information they seek. [5] And they argue again, erroneously, that these men could not be reached for interview or deposition, even though Plaintiffs made no attempt – as they must have – to do so. In this regard, Plaintiffs' references to their Affidavit of Jeremy Stern and Declaration of Professor Barry Rubin are unavailing, as the opinions of these purported experts were completely refuted by the BBC's expert and submissions. See generally Dkt No. 258 (BBC Objections) pp. 19-20; Dkt No. 264 (BBC Reply Objections), pp. 9-10; Dkt No. 258-1, 258-2 (App.) pp. 91, 98-103, 150-156, 164-167. Indeed, Rubin's Declaration was made in December 2009, and the landscape he paints has undergone a sea change in the three years since that time. Dkt No. 258-2 (App. [Sayigh Declaration])102-103, ¶28.

Likewise, Plaintiffs' repeated reliance on the vacated Saperstein decision is unavailing and should be disregarded. [6] Even so, the year *after* the Saperstein court quashed the subpoena served on the BBC in that case, Zubaidi was placed in the physical custody of Defendant PA. See Dkt No 258-2 (App. [international news articles]) 164-167. This wholly negates the erroneous assumption made in Saperstein, and by Rubin or otherwise, that Zubaidi was inaccessible or has been hard to "find." Incarcerated prisoners are regularly sought through the governmental unit that is detaining them, which here was the *Defendant PA*. Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 570 (2d Cir. 2005); Atkins v. City of New York, 856 F. Supp. 755, 759 (E.D.N.Y. 1994). See also Sokolow et. al. v. PLO et. al. Case No. 1:04-cv-00397, Dkt. No 176 (S.D.N.Y. December 20, 2011) (Court issued Hague Letter to Plaintiffs to depose non-party witness represented to be in custody of the Israeli Prisons Service).

As well, the Court should reject Plaintiffs' request to consider that the plaintiffs' counsel in the Klieman case (Schoen Letter p. 4) – who were able to meet with Zubaidi despite Plaintiffs' erroneous claims here of impossibility to find and travel restrictions – were "threatened" by Zubaidi who "refused to confirm" his prior statements. As the BBC previously noted, Klieman's counsel's piecemeal statements failed to disclose the complete story (Dkt No. 258-2 (App. [BBC's Counter Notice])157-62), and in any event, the Klieman Court apparently did not credit counsel's statements, as it *quashed* the subpoena that the plaintiffs in the Klieman Court served on the BBC seeking the same information as is sought here. Estate of Klieman v. Palestinian Auth. supra. The Klieman Court correctly ruled that the territorial restriction of Fed. R. Civ. P. 45 precluded compulsion of any testimony or materials sought. Id. The same result should

---

[5] Plaintiffs only contend that (i) it is "purely speculative" to assume that other unidentified witnesses, including, presumably, those incarcerated for the attacks in issue, could be alternate sources and (ii) there are difficulties in getting their statements. See Schoen Letter p. 4. These conclusory assertions do not excuse Plaintiffs from showing, *as they must*, that they made a good faith effort to obtain the information sought from them and could not do so. See, e.g., In re Application to Quash Subpoena to Nat. Broad. Co., Inc., 79 F.3d 346, 353 (2d Cir. 1996)( (party "failed to make the requisite clear and specific showing of unavailability" because she "simply failed to exhaust all other available sources of information."); Pugh v. Avis Rent A Car Sys., Inc., No. M8-85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997) (quoting Blum v. Schlegel, 150 F.R.D. 42, 46 (W.D.N.Y. 1993) ("Where the source is known and can be deposed, the availability of a deposition is an alternative source that must be pursued. It is not enough to say that questioning would be futile."). See also Dkt No. 258 (BBC Obj.) p. 25.

[6] ATSI Communications, Inc. v. Shaar Fund, Ltd. 547 F.3d 109, 113 n.5 (2d Cir. 2008) ("[V]acatur does have the effect, in a concrete and practical way, of removing [vacated decisions] from the reservoir of legal thought upon which the bench and bar can subsequently draw"). See Dkt No. 264 (BBC Reply) p.1 n.1.

Hon. George B. Daniels                    6                    December 13, 2012

obtain here.

Plaintiffs have never shown, as they must to overcome the BBC's privilege, why the plethora of other sources that exist that would show any connection between Defendants and Al-Aqsa had been exhausted and/or were unavailable. That they could not do so is evidenced by their own concessions, and by the sources shown by the BBC to be available. See pp.2-3, supra. Plaintiffs' argument that there is "no valid or rational basis to put Plaintiffs to the burden of trying to obtain similar statements from others who may or may not cooperate" (Schoen letter p. 5) stands their Gonzales burden on its head. As this Court acknowledged to their counsel, it is their burden to do just that: "I accept that on this case it's your burden, and you have to overcome what starts out as a presumption that…this kind of material gathered by journalists is, even though non-confidential, is presumptively entitled to some privilege, unless you overcome it." Dkt No. 275 (11/19/12 Tr.) at 89:20-15.

Rather than denying that there are numerous other sources for the "link" they seek to prove, Plaintiffs contend only that they deem the BBC's materials "more valuable" as "additional" evidence. Id. at 88:14, 74:10-17. But the interviewees' statements in the BBC materials are not only inadmissible hearsay. [7] According to Plaintiffs' themselves, the Outtakes at best would be nothing more than cumulative proof, if they contain any evidence at all. See, e.g., U.S. v. Hubbard, 493 F. Supp. 202, 205 (D.D.C. 1979). See also BBC Obj. 19-20 & n.17, n18, n.21.

This Court recognized as much when it stated to Plaintiffs' counsel at the November 19 hearing: "It's not a question of whether or not you can get additional information. Additional means you already have it…So that doesn't bode well for an argument that somehow it's not reasonably obtainable from a different source. You just say you already had it. You're looking for additional information [t]hat's consistent with the direct admissions that you say these individuals are making" and "At best, it sounds cumulative." Dkt No. 275 (11/19/12 Tr.) at 74:16-22, 75:9.

As Plaintiffs have not satisfied their burden on alternate sources, there is no basis for overcoming the BBC's privilege. There is thus no reason to order in camera review of the Outtakes on the issue of relevance, because the Outtakes, as so protected, cannot be compelled. None of the cases cited by Plaintiffs to support their in camera request helps them in this respect. [8] To the contrary,  in U.S. v. Burke, 700 F. 2d 70,  78 & n.9 (2d Cir. 1983) (Schoen

---

[7] See Dkt No. 258 (BBC Obj.) p.23-25. See also the comparative assessment of sources made by BBC's expert Dr. Yezid Sayigh, who cited the "innate veracity" and "intrinsic value" of primary documents accessible to Plaintiffs from reasonable alternate sources, particularly those written for "purely internal use" by the PA. Dkt No. 258-2 (App. [Sayigh declaration]) 105-107, ¶¶39-40.

[8] U.S. v. Cutler, 6 F.3d 67 (2d Cir. 1993); U.S. v. LaRouche Campaign, 841 F.2d 1176 (1st Cir. 1988); and Doe v. Kohn, Nast & Graf, 853 F. Supp. 147 (E.D. Pa. 1994) (Schoen Letter, p. 5) fail to support Plaintiffs here. The outtakes in those cases were shown to present unique, non-cumulative, definitive and extremely material evidence, i.e., videotaped interviews with criminal defendant that constituted themselves the basis for a criminal contempt charge, where Sixth Amendment issues are implicated (Cutler); videotaped interview with the plaintiff himself concerning the underlying lawsuit (Doe); videotaped interview with key witness concerning the subject matter of his known general testimony (LaRouche). Here, the BBC Outtakes have not been shown to contain anything relevant or admissible, unlike the information sought in those cases.

Hon. George B. Daniels                    7                    December 13, 2012

letter, p. 5), an *in camera* review was *not* ordered and the subpoena was ultimately quashed (twice) because, the requesting party failed to show that the materials sought would yield any probative evidence that was not "cumulative."

There is thus no basis for compelling disclosure, so *in camera* review to determine relevance is futile. It should not be ordered.

2. ***There is No Basis for an In Camera Review On the Issue of Relevance In Any Event***

In order to warrant *in camera* review, Plaintiffs must not only show unavailability of alternate sources, lacking here. They also must make a threshold showing of relevance, likewise lacking here. <u>Bradowsky v. Volkswagen of Am., Inc.</u>, <u>supra</u>; <u>U.S. v. Cuthbertson</u>, <u>supra</u>; <u>Doe v. Kohn, Nast & Graf</u>, supra. See also <u>In re Selcraig</u>, 705 F. 2d 789 (5th Cir. 1983)(reversing district court order for *in camera* hearing on journalist's information as moving party had not demonstrated necessity of that information).

Plaintiffs contend that they have a "good faith basis to conclude" that the Outtakes contain relevant evidence simply because the Program broadcast a few allegedly relevant statements by the interviewees in issue. See Schoen letter p. 2. But their counsel Mr. Tolchin admitted to Magistrate Judge Ellis just the contrary – that Plaintiffs *do not know* if there is anything relevant in the Outtakes. That their speculation is without any basis is evident from their present claim that they "have a good faith basis to conclude that the outtakes …contain additional evidence concerning the relationship between Fatah and al-Aqsa and Arafat's role in directing their activities, *including…"specific information about the terrorist attacks that are the subject of this lawsuit*…" <u>Id</u>. As the Program does *not* address those attacks, and indeed, one of the two Al-Aqsa attacks in issue *postdated* the Program, there is no basis whatever to conclude that this subject (or any other particular subject) may be addressed in Outtakes.

Plaintiffs' purported "good faith basis" is nothing more than sheer unfounded speculation which differs markedly and significantly from the demonstrations of relevance of outtakes in the cases they cite. See n.8 (p.6), <u>supra</u>. [9] It does not warrant *in camera* review here in any respect. See, e.g., <u>In re Application to Quash Subpoena to Nat. Broad. Co., Inc.</u>, 79 F.3d 346, 353 (2d Cir. 1996)(outtakes not compelled where "…Graco has absolutely no idea of what Mr. Leonard did or did not tell the interviewer").

As Justice Marshall noted in <u>New York Times v. Jascalevich</u>, 439 U.S. at 1335: "Given the likelihood that forced disclosure even on in camera review will inhibit the reporter's and

---

[9] Plaintiffs' reliance in the district court decision in <u>Chevron Corp v. Pallares,</u> 709 F. Supp. 2d 283 (S.D.N.Y. 2010), <u>aff'd sub nom</u>, <u>Chevron Corp v. Berlinger</u>, 629 F.3d 297 (2d Cir. 2011) (Schoen letter p. 3), is misplaced. Unlike here, the Second Circuit in affirming the district court found that the <u>Chevron</u> filmmaker lacked requisite independence and possessed either "no press privilege at all, or in any event, …a privilege that is weaker and more easily overcome." 629 F.3d at 309. The showing in that case thus was judged on appeal by standards not applicable, and much less stringent than here. And in both <u>Gonzales</u> and <u>Don King Productions, Inc. v. Douglas</u>, 131 F.R.D. 421 (S.D.N.Y. 1990) (Schoen letter p. 3), the subpoenaing party, unlike here, showed that the broadcast and tape recordings in issue there, respectively, concerned *actual* challenged conduct in issue in the suits, making it likely that the outtakes would also concern that conduct, and a lack of alternate sources. Here, the broadcast does not concern the acts in issue, there is no basis to divine what the outtakes would contain, and no showing that the "link" sought is not available elsewhere.

newspaper's exercise of First Amendment rights, I believe that some threshold showing of materiality, relevance and necessity should be required." And indeed, the Second Circuit and district courts have quashed subpoenas on the media without engaging in camera review where the plaintiff has failed, as here, to make such a threshold showing. In re Application to Quash Subpoena to Nat. Broad. Co., Inc., supra (reversed trial court's order denying broadcaster motion to quash without in camera inspection); Bradowski v. Volkswagen of Am., Inc., supra (recognizing that "in camera inspection of the outtakes … in and of itself impacts on the First Amendment rights of CBS"). Plaintiffs' own authority agrees. U.S. v. Burke, supra, 700 F. 2d at 74 n.9 (upholding quashing subpoena without *in camera* inspection) (Schoen letter p. 5).

The BBC has detailed the chilling effect on conflict zone reporting that compelled disclosure risks. Dkt No. 258  (BBC Obj.) pp. 23-25; Dkt No. 258-2 (App. [Julliard Declaration]) 114-118.  The Court itself acknowledged the need to balance Plaintiffs' request against that "significant and valuable policy, public policy behind the privilege" because the information Plaintiffs seek "from reporters who are out in dangerous situations, attempting to gather information to report to the public and you want to say, well whatever you got out there, I want it because I think it might help me." Dkt No. 275 (11/19/12 Tr.) at 85:10-18, see also 63:14-15. Those dangers of compelled disclosure equally apply to *in camera* review and far outweigh Plaintiffs' need for a fishing expedition in the Outtakes.

Indeed, if *in camera* review were to be ordered merely to satisfy a party's desire to fish to determine whether outtakes contained anything helpful to that party at all, the carefully calibrated protections granted journalists would be eviscerated entirely. As Plaintiffs have not made a requisite threshold showing of relevance of the Outtakes, their request for *in camera* review should be denied as without basis for this reason as well.

3. ***Under Rule 45 of as a Matter of Comity, the Court Lacks or Should Decline to Exercise the Power to Order An In  Camera Review of the Outtakes***

As shown in the BBC's Objections and the record, (i) the BBC Outtakes are demanded as an adjunct to a deposition, called for in a Deposition Subpoena, that cannot be compelled as it violates the territorial restrictions of Fed. R. Civ. P. 45, and (ii) the Outtakes themselves are also controlled from and situate in the U.K. Dkt No. 258-1 (App. [Cain Declaration]) 12 (¶8). As such, the Outtakes also cannot be compelled under Rule 45, and/or as a matter of comity. See Dkt No 258 (BBC Obj.) p. 13; Laker Airways Ltd. v. Pan Am. World Airways, 607 F. Supp. 324, 326 (S.D.N.Y. 1985)(subpoena duces tecum on non-party witness vacated where documents were regularly maintained within the United Kingdom and not within the judicial district); Miller v. Holzmann, 471 F. Supp. 2d 119 (D.D.C. 2007) ("[T]he limitation in Rule 45 unequivocally applies both to attending a deposition to testify and to being required to produce documents at a distance more than 100 miles from one's home."); Estate of  Klieman v. Palestinian Auth., supra (court quashed subpoena on BBC for the same testimony and documents sought here as violative of Rule 45's territorial restrictions).

Because these foreign Outtakes cannot be compelled for deposition or trial purposes, they cannot be compelled for purposes of *in camera* review. See, e.g., Alltel Communications, LLC v. DeJordy, 675 F.3d 1100, 1102 (8th Cir. 2012)(reversed denial of motion to quash non-party subpoena and order to produce documents for *in camera* review because non-party had immunity barring production); Buyer's Direct Inc. v. Belk, Inc., 5:10-CV-65-H, 2011 WL 6749828 (E.D.N.C. Dec. 23, 2011)(motion for *in camera* inspection of subpoenaed documents denied

Hon. George B. Daniels                           9                         December 13, 2012

upon finding that underlying Rule 45 deposition subpoena was procedurally defective and unenforceable by the court); Hunter v. Heffernan, CIV. A. 94-5340, 1996 WL 363842 (E.D. Pa. June 28, 1996)(noting that the court could not initially order production or review documents *in camera* with respect to subpoena that originally sought a custodian located outside its 100-mile territorial restriction and documents controlled outside the district). For this reason as well, *in camera* review of the BBC Outtakes should not be compelled.

### The BBC Should Not Be Compelled to Create the Affidavit Sought

As the BBC has shown with respect to testifying witnesses – and Magistrate Judge Ellis agreed by ruling that the BBC's testimony could not be compelled (Dkt No. 258-1 (App. [Ellis Opinion and Order]) 6) – Rule's 45's territorial restriction is addressed to the location of that witness and not to his or her corporate employer. See Dkt No. 258 (BBC Obj.) 10, 13 & n. 9; Dkt No. 264 (BBC Reply Obj.) 3-4 & n.2. Although a foreign *party* may be required to "create" a domestic witness to testify here under Rule 30(b)(6), no such compulsion applies to a subpoenaed *non-party*. Id. Rule 45's territorial restriction specifically excludes parties, and its proscription would be rendered ineffective if Rule 30(b)(6) were to be read to as an end- run around Rule 45's territorial restriction for non-parties or their foreign employees. See, e.g., BBC Reply pp. 4-5; Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56, 62 (S.D.N.Y. 1998). See also Cates v. LTV Aerospace Corp., 480 F.2d 620, 623-24 (5th Cir. 1973); Stanford v. Kuwait Airlines Corp, No. 85 Civ. 0477 (SWK), 1987 WL 26829, at *3 (S.D.N.Y. Nov. 25, 1987).

If the BBC's testimony could not be compelled, the affidavits of its foreign personnel – particularly as that personnel is not subject to the jurisdiction of this Court – cannot be compelled either. Dkt No 258 (BBC Obj.) p. 10; Dkt No. 264 (BBC Reply Obj.) pp. 3-5. As this Court stated:

> …[B]ut I'm not quite sure I even agree with the way Judge Ellis has phrased it. If you're [Plaintiffs] not entitled to a -- If you're not entitled to the deposition testimony – if he agrees that you're not entitled to the deposition testimony of somebody who is outside of this district, then I'm not sure that you're entitled to an affidavit by somebody who's outside of this district.
>
> ….
>
> …[B]ut, I mean, my powers are not unlimited. I'm not the Wizard of Oz here. You know, there's some restrictions on what I can do to people in England if they decide they want to ignore your subpoena.

Dkt No. 275 (11/19/12 Tr.) at 98:17-24, 99:24-25, 100:1, 100:5-8.

Here, it is not a matter of ignoring the subpoena. The BBC simply has no personnel in New York knowledgeable about this decade-old Program or its Outtakes who could satisfy Plaintiffs' testimonial demands. See Dkt No. 258-1 (App. [Cain Declaration]) 12 (¶¶5-7). This proof was undisputed before Magistrate Judge Ellis, and his ruling in this regard is not the subject of an objection by Plaintiffs. Dkt No. 258-1 (App. [Ellis Opinion and Order]) 6. As the BBC's foreign personnel cannot be compelled to testify here, they cannot be compelled to create foreign affidavits in response to Plaintiffs' Rule 45 subpoena. Magistrate Judge Ellis' order that they produce such affidavits was erroneous and should be reversed.

Nevertheless, as this Court has requested, the BBC has in good faith considered the

affidavit demand made by Plaintiffs to determine if it could satisfy that request with respect to the Program. Plaintiffs' extremely detailed three-part request, however, far exceeds the scope of Magistrate Judge Ellis's erroneous order, and likewise, goes way beyond what this Court stated it envisioned for the BBC to consider representing: only "that the tape that you have is, in fact, the tape that was aired on the show, the tape that was made and that was aired on the show." Dkt No 275 (11/19/11 Tr.), p.102:3-5.

There are no personnel in New York who could provide the details requested by Plaintiffs. As far as obtaining that information from BBC U.K. personnel, I am advised that there is no single foreign BBC witness who knows all those details – what was there before the camera when the film was shot a decade ago for authentication, how and to whom the footage was transmitted for a chain of custody, and how and by whom the video was stored or maintained as business records – that Plaintiffs are now requesting. I am further advised that some of those details are not known to *any* current U.K. personnel at all, which is not surprising, given the advanced age of the broadcast.

For all of these above reasons, the BBC cannot agree to provide the affidavit Plaintiffs have requested. However, at the time the BBC provided counsel for Plaintiffs with a copy of the Program, the agreement covering that exchange (copy enclosed), which was signed by BBC's Counsel and by Plaintiffs' counsel Robert Tolchin, explicitly stated that the video provided was of the program "Arafat Investigated" that was broadcast by the BBC in 2003. See also n.1 (p. 2), supra. Such agreement, which can be authenticated by Mr. Tolchin, should provide sufficient authentication for that Program, without the need for compromising Rule 45, comity principles and the BBC's privilege.

Respectively Submitted,

David S. Korzenik

cc: David I. Schoen, Esq.
    Robert J. Tolchin, Esq.
    Brian Hill, Esq.

Enclosure to Letter to Judge Daniels from David S. Korzenik for the BBC
dated December 13, 2012 Re: Sokolow v. PLO 04-CV-00397(GBD)(RLE)

BBC will provide you with one copy of a video of the program "Arafat Investigated" which was broadcast by the BBC in or about 2003 (the "Video"). In consideration of our providing you with said copy of the Video, you agree and undertake as follows:

1.    You are using the Video solely for the purposes of a litigation.

2.    That you will inform any other parties to any litigation that the BBC has supplied you with a copy of the Video and that the BBC will, on request, supply any other parties to the litigation with a copy too (copies will be supplied on similar terms and conditions as those set out here);

3.    That you will respect the copyright of the BBC and others in the material supplied;

4.    That you will meet the BBC's reasonable costs and disbursements in complying with this request in the advance sum of £103.50 inclusive of VAT **per item**. Please make your cheque payable to the British Broadcasting Corporation.

THE BERKMAN LAW OFFICE, LLC          MILLER KORZENIK SOMMERS

LLP

By _____          By _____
    Robert J. Tolchin                    David S. Korzenik (DK1767)
111 Livingston Street Suite 1928     488 Madison Avenue Suite 1120
Brooklyn NY 11201                    NY NY 10022-5702
(718) 855-3627                       (212) 752-9200
RTolchin@BerkmanLaw.com              DKorzenik@mkslex.com
Attorney for Plaintiffs              Attorneys for The BBC