

Andrew T. Wise
Member
(202) 626-5818
awise@milchev.com

November 22, 2013

Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re: *Sokolow v. Palestine Liberation Organization et al.* — 04-CV-397(GBD) (RLE)

Dear Judge Ellis:

      On behalf of Defendants the Palestinian Authority and the Palestine Liberation Organization (collectively, "Defendants"), I write to request an informal conference with the Court pursuant to Local Civil Rule 37.2 and your Individual Practice 2.A concerning whether the Court should strike the reports of two of Plaintiffs' liability experts – Jeffrey Addicott and Alon Eviatar – and preclude them from presenting testimony in this matter. As explained in more detail below, neither Mr. Addicott nor Mr. Eviatar wrote or was substantially involved in preparing what was presented by plaintiffs' counsel as their reports.[1] Instead, both men simply reviewed and adopted, with minor edits, reports written by someone else. At his deposition, Mr. Eviatar gave misleading answers about the authorship of the report he signed. During his deposition, Mr. Addicott was not forthcoming about the negligible role he played in preparing the report bearing his signature. As a result, both witnesses should be barred from providing testimony.

      Rule 26(a)(2) of the Federal Rules of Civil Procedure requires that a party disclose the identity of a potential expert witness and provide a "written report – *prepared* and signed by the witness" which contains, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming [the opinions.]" Fed. R. Civ. P. 26(a)(2) (B)(i)-(ii)(emphasis added). While counsel may assist an expert in preparing the report, *see* Fed. R. Civ. P. 26(a)(2)(B) Advisory Committee's Note (1993), the expert witness must "remain[] *substantially involved.*" *CDR-Wantagh, Inc., v. Shell Oil Co.*, 2011 U.S. Dist. LEXIS 19717, at *17 (E.D.N.Y. Feb. 28, 2011) (quoting *Rouson v. Eicoff*, 2007 U.S. Dist. LEXIS 89672, *25 (E.D.N.Y. June 25, 2007) and citing *Keystone Mfg. Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005)) (emphasis added). "[A]n expert report 'ghost-written' from 'whole cloth' violates the spirit, if not the letter of the Rule." *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1118 (D. Or. 2010). Thus, "preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement," because "[a]llowing an expert to sign a report drafted entirely by counsel without prior substantive input from an expert would read the word 'prepared' completely out of the rule." *Crowley v. Chait*, 322 F. Supp. 2d 530, 543 (D.N.J. 2004)(internal quotation omitted).

---

[1] Defendants intend to raise similar Rule 26 issues regarding Plaintiffs' experts Israel Shrenzel, Nick Kaufman, and Dov Weinstein, but defense counsel has not yet received deposition transcripts for those witnesses.

Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900 • Washington, D.C. 20005-5701 • 202-626-5800 • 202-626-5801 FAX • millerchevalier.com

1359173.1



Hon. Ronald L. Ellis
November 22, 2013
Page 2

    The timing and extent of an expert's involvement in the creation of a report are central to the question of whether the expert "prepared" a report in accordance with Rule 26. Extensive consultation with counsel prior to the creation of a report often is enough to warrant a finding of sufficient participation. *See, e.g., Crowley*, 322 F. Supp. 2d at 544; *CDR-Wantagh*, 2011 U.S. Dist. LEXIS 19717 at *18; *Keystone*, 394 F. Supp. 2d at 567-68 (emphasis added). By contrast, where a report was written by counsel (or a third party) prior to consultation with the expert and the expert simply reviewed and adopted the report, courts have stricken the report and barred the expert's testimony. *See, e.g., Stein v. Foamex Int'l, Inc.*, 2001 U.S. Dist. LEXIS 12211 (E.D. Pa. Aug. 15, 2001); *Rouson*, 2007 U.S. Dist. LEXIS 89672, at *25-26; *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 2000 U.S. Dist. LEXIS 1318, at *3 (W.D. Mich. Feb. 8, 2000) (affirming exclusion of an expert's report and testimony because the evidence demonstrated that "counsel's participation so exceeded the bounds of legitimate 'assistance' as to negate the possibility that [the expert] actually prepared his own report within the meaning of Rule 26(a)(2).").

    Expert testimony may be excluded as a sanction for a violation of Rule 26(a). Fed. R. Civ. P. 37(c)(1). Exclusion is particularly appropriate where the expert report is offered in bad faith or where the expert testifies untruthfully about the authorship of the report. In *Jackson*, the court precluded an expert's testimony because the expert's report was prepared by counsel and the expert "gave misleading and evasive answers" about the report's authorship. 2000 U.S. Dist. LEXIS 1318 at *5. Similarly, in *Stein*, the court precluded expert testimony about the contents of an affidavit after finding it was filed in bad faith and defendants were prejudiced by its late filing. 2001 U.S. Dist. LEXIS 12211 at *17-20.

    Mr. Eviatar did not write his report and was not substantially involved in its preparation. On April 10, 2013, plaintiffs' counsel identified Ronni Shaked as a liability expert and tendered a report from him. Dep. Ex. 426. When Mr. Shaked withdrew as an expert for personal reasons, plaintiffs' counsel sought leave to substitute Mr. Eviatar for Mr. Shaked. *See* Letter from Kent Yalowitz to the Hon. Ronald L. Ellis (May 16, 2013). In seeking an additional month for the submission of Mr. Eviatar's report, plaintiffs' counsel informed the Court that Mr. Eviatar "has already begun work," and "expects that he can finalize his expert report by the second week of June." *Id.* at 1. At his deposition, however, Mr. Eviatar testified that he was not asked to write a report; rather, he was asked "to read [Mr. Shaked's] report and to make amendments to it." Ex. 1 at 13:6-12. While Mr. Eviatar claimed that he "wrote part of [his report]," *id.* at 12:12-20, a comparison of the reports demonstrates that he made only minor changes to the report originally submitted on behalf of Mr. Shaked. *Compare* Dep. Ex. 426, *with* Dep. Ex. 420.[2] Mr. Shaked's 90-page report contains 11 sections and 176 footnotes. Mr. Eviatar's 88-page report contains the same 11 sections and nearly the same 178 footnotes, and the two-page difference in the reports largely results from the simple fact that Mr. Shaked's credentials are more extensive than Mr. Eviatar's. Mr. Eviatar's report occasionally adds or omits a sentence not in Mr. Shaked's report, but the edits are minor and infrequent, and he admitted at his deposition that he edited the report in "track changes" mode. Ex. 1 at 27:12-16.

    Indeed, corrections made to Mr. Eviatar's report *after* its submission demonstrate how fully it was drawn from Mr. Shaked's report. For example, on September 16, 2013, plaintiffs' counsel submitted a correction to a sentence in Mr. Eviatar's report regarding terrorist interrogations. The original sentence,

---

[2] The page limits set forth in the Court's Individual Practices prevent us from attaching the actual reports to this letter. If review of the reports and related documents would assist the Court's consideration of this issue, we can provide them.



Hon. Ronald L. Ellis
November 22, 2013
Page 3

which mirrors a sentence from Mr. Shaked's report, read, "I am familiar with such interrogations from, *inter alia*, my work at the Israel Security Agency." The correction struck the phrase "from, inter alia, my work at the Israeli Security Agency." Mr. Eviatar never worked at the Israel Security Agency, Ex. 1 at 11:4-6, and on the eve of Mr. Eviatar's deposition, plaintiffs' counsel withdrew the entire section of his report dealing with interrogations. *Id.* at 7:7-11.

Mr. Eviatar's report copies not only Mr. Shaked's report, but also that of another plaintiffs' expert, Israel Shrenzel. A section of Mr. Eviatar's report entitled "credentials" is virtually identical to a section of Mr. Shrenzel's report,[3] even though Mr. Eviatar and Mr. Shrenzel worked at different agencies and had different titles. At his deposition, Mr. Eviatar maintained that he wrote the passage in his report, even though Mr. Shrenzel's report was submitted a month before Mr. Eviatar was contacted about working on this case. Ex. 1 at 37:17-42:3. The record thus shows that not only did Mr. Eviatar not author that part of his report, he also gave untruthful testimony about it during his deposition.

Similarly, Mr. Addicott did not write his report and his level of involvement in the preparation of the report he signed was even less than that of Mr. Eviatar. On March 21, 2013, Mr. Addicott received two documents from plaintiffs' counsel after having agreed to "look at a draft ... to see what [he] thought about the draft." Ex. 2 at 9:14-16, 12:12-13:4. Mr. Addicott admitted that he has "no idea" who wrote the two documents, *id.* at 26:11-12, which form almost the entirety of the document presented by plaintiffs' counsel as Mr. Addicott's report. *Compare* Dep. Ex. 240 and Dep. Ex. 241, *with* Dep. Ex. 238. The minor additions that Mr. Addicott made to the draft report he received from plaintiffs' counsel mainly concerned his professional experience and speaking engagements. Without providing anything remotely approximating substantive input, Mr. Addicott signed his report on March 22, the very next day after he received the draft documents. Ex. 2 at 7:11-13, 12:1-14:2. Yet, during his deposition he tried to shade his level of purported involvement. *Id.* at 7:20-8:5, 14:3-15:5, 27:3-29:10, 76:21-77:11, 110:19-112:10, 127:4-128:4.

Mr. Eviatar's and Mr. Addicott's reports were "ghost-written" by someone else, and by definition are not based on their "personal knowledge and [their] professional experience." *In re Asbestos Prods. Liab. Litig.*, 714 F. Supp. 2d 535, 542 (E.D. Pa. 2010) (internal quotation omitted). The Court should strike both reports and preclude Mr. Eviatar and Mr. Addicott from providing testimony in this matter.

We are available to address any questions the Court may have regarding this issue at any time convenient for the Court.

Sincerely,

/Andrew T. Wise

---

[3] At his deposition, Mr. Shrenzel admitted that a draft of his report was written by consultants associated with plaintiffs' counsel before he was retained in the case and that he edited that draft to create his report.

Miller & Chevalier Chartered

1359173.1