# ARNOLD & PORTER LLP

Kent A. Yalowitz
Kent.Yalowitz@aporter.com

+1 212.715.1113
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

December 3, 2013

**BY ECF**

Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court
   for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
             Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Ellis:

      I write in response to defendants' letter dated November 22, 2013. Defendants ask the Court to strike the reports and preclude the testimony of two of plaintiffs' experts on terrorism—Alon Eviatar and Jeffrey Addicott—on the ground that they were not sufficiently involved in the drafting of their reports. Both experts substituted for other experts who had to withdraw. Quite properly, both used the reports of the withdrawing experts as the basis for their own reports. Defendants' allegation that this somehow violated Rule 26 is yet another in their long series of efforts to gin up alleged procedural defects to try to prevent the devastating evidence in this case from reaching the jury. As usual, defendants' allegations are baseless and should be rejected out of hand.[1]

      As the Court may recall, one of plaintiffs' original liability experts, Ronni Shaked, withdrew shortly after he submitted a 90-page report because his wife developed a very serious illness. Plaintiffs quickly engaged Mr. Eviatar (a former high-ranking intelligence official responsible for Palestinian affairs in both the Israel Defense Forces and the government agencies responsible for the West Bank and Gaza) to replace Mr.

---

[1] This is particularly true since, as Judge Daniels has stated, "'precluding testimony from the expert under [Rule 26] is a drastic remedy and should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules.'" *Lormé v. Delta Air Lines Inc.*, No. 03 Civ. 5239 (GBD), 2005 WL 1653871, at *4 (S.D.N.Y. July 13, 2005) (citations omitted), *aff'd*, 251 F. App'x 691 (2d Cir. 2007).

# ARNOLD & PORTER LLP

December 3, 2013
Page 2

Shaked, and, by letters dated May 6 and 16, 2013 (Ex. A), sought permission to substitute in Mr. Eviatar and to file his report in the second week of June.

Defendants tried to exploit the illness of Mr. Shaked's wife by opposing the substitution. At a telephone conference held on May 17, 2013, however, this Court granted plaintiffs' request, and plaintiffs submitted Mr. Eviatar's report on June 14, 2013.

The only way that Mr. Eviatar could produce a timely report was to work from Mr. Shaked's report, making whatever changes he found necessary. Defendants concede that Mr. Eviatar made changes, but they complain that he did not change it more. This simply reflects the fact that Mr. Shaked had prepared a high-quality report. Moreover, if plaintiffs had asked for enough time for Mr. Eviatar to draft a brand new report of nearly a hundred pages, there is no question that defendants would have objected on the ground that that would take too long, so they should not be heard now to complain that Mr. Eviatar acted quickly in the face of defendants' complaints about possible delay.

It was also appropriate to revise Mr. Shaked's report because the case law on substituting a new expert for a withdrawing expert provides that a substitute expert should support and hew as much as possible to the opinions offered by the original expert.[2] Thus, if Mr. Eviatar had submitted an entirely new report, defendants would surely have moved to strike it on the ground that it diverged too much from Mr. Shaked's original report. Defendants cannot have it both ways.

Defendants allege that Mr. Eviatar gave "misleading answers" and testified "untruthfully" about the authorship of his report. That is false. To the contrary, Mr. Eviatar very frankly and forthrightly testified that he "was requested to read [Mr. Shaked's] report and to make amendments to it." (Defs.' Ex. 1 at 13:6-12.) The only misleading statements before the Court are the statements in defendants' letter attacking Mr. Eviatar's veracity without any basis.

Defendants also complain that Mr. Eviatar made—and then corrected—a one-word mistake in his report regarding his past work, in a portion of the report that plaintiffs withdrew *before* the deposition. (*Id.* at 42:9 - 43:13.) Defendants' claim that a major expert witness should be prevented from testifying because he appropriately—and timely—corrected a minor wording error regarding his background makes no sense.

---

[2] *E.g., Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, Nos. 1:04-CV-396, 1:06-CV-317, 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2010) ("[T]he substitute expert's report and testimony is frequently limited to the subject matter and theories already espoused by the former expert[.]").

# ARNOLD & PORTER LLP

December 3, 2013
Page 3

Similarly, defendants' complaint that the wording that accurately describes Mr. Eviatar's work background resembles wording in the report of another of plaintiffs' experts regarding that expert's (similar) work background is irrelevant.

Defendants also briefly attack Professor Jeffrey Addicott—one of the country's most prominent experts on terrorism—on the ground that his report was drafted by someone else. Plaintiffs engaged Professor Addicott because another expert had to withdraw just before plaintiffs' expert reports were due. The withdrawing expert had already drafted a report, which plaintiffs furnished to Professor Addicott. Defendants neglect to mention that Professor Addicott testified that he carefully reviewed the draft—including reading the sources cited in it—that he added some additional material because he thought that one part of the draft was too "one-sided," and that he signed the report only after a thorough review and making all necessary changes because "I do not sign anything unless I can affirm that it reflects my professional opinion." (Defs.' Ex. 2 at 14:3-11; 15:6 - 16:7; 27:3 - 29:10.) Defendants' allegation that he "tried to shade his level of purported involvement" is made up out of whole cloth.

Tellingly, defendants cite no cases relating to the use of a withdrawing expert's report (or draft) by his or her substitute. Rather, defendants' cases involve situations in which *counsel* wrote the report of an expert, and the expert did little but sign counsel's draft—and, even in most of those cases, the report was *not* stricken. For example, in *Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 567-68 (W.D.N.Y. 2005), the court refused to strike a report that was drafted by counsel because the expert was involved in its preparation, had read it carefully before signing, and affirmed that the opinions were his own. The court quoted the 1993 Advisory Committee Notes to Rule 26(a)(2)(B), which state that the Rule does not preclude others from assisting with the report, so long as it is "written in a manner that reflects the testimony to be given by the witness."

There is no claim here—nor could there be—that the reports of Mr. Eviatar and Professor Addicott were written by counsel or that either expert signed off on someone else's work without carefully reviewing and editing it to make sure that it accurately reflected their own views. Thus, the Court should deny the request to strike their reports and preclude their testimony.

Respectfully,

Kent A. Yalowitz

cc: All ECF Counsel