

**MILLER CHEVALIER**

Andrew T. Wise
Member
(202) 626-5818
awise@milchev.com

December 6, 2013

Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

   Re: *Sokolow v. Palestine Liberation Organization et al.* — 04-CV-397(GBD) (RLE)

Dear Judge Ellis:

  I write to respond to Plaintiffs' letter dated December 3, 2013, concerning Defendants' request for an informal conference regarding whether the Court should strike the reports of two of Plaintiffs' liability experts – Jeffrey Addicott and Alon Eviatar – and preclude them from presenting testimony in this matter. Three issues bear clarification in light of Plaintiffs' response.

  First, this is the first time Plaintiffs have suggested that Jeffrey Addicott was substituted for another expert who had to withdraw. At his deposition, Addicott testified that he had no idea who wrote "his" March 22, 2013 report, and that he received it from Nitsana Darshan-Leitner in the form of two Word documents the day before he signed it. Ex. 1 (Tr. at 13:5-13:12, 111:7-112:10). Ms. Darshan-Leitner is the director and co-founder of the Israel Law Center (a/k/a Shurat HaDin) along with her husband, Avi Leitner, and represents the Plaintiffs in this case. Ex. 2 (Levitt Tr. at 241:1-245:17). The metadata for those two Word documents lists their "author" as "Avi Lightner." Ex. 3 (metadata for the two documents). And in a May 6, 2013 email, Plaintiffs' counsel Rachel Weiser wrote that the report "was produced by plaintiffs' consultants and provided to Professor Addicott." Ex. 4 (email from R. Weiser to B. Hill (May 6, 2013, 10:36 a.m.)). Plaintiffs' eleventh-hour suggestion that Addicott was a last-minute substitute for some other, still-unidentified expert is not supported by any evidence and Plaintiffs' suggestion that there could be no claim that the report signed by Addicott was written by counsel is inaccurate.

  Second, the party offering an expert witness must provide a "written report – *prepared* and signed by the witness" which contains, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming [the opinions.]" Fed. R. Civ. P. 26(a)(2) (B)(i)-(ii)(emphasis added). Courts sometimes permit the substitution of expert witnesses after the deadline for expert disclosures when unforeseen events make an original expert witness unavailable. But a court's exercise of discretion to allow such a substitution does not obviate the Rule 26-based requirement that an expert witness "remain[] *substantially involved*" in the preparation of the report, *CDR-Wantagh, Inc., v. Shell Oil Co.*, No. 07-cv-4497, 2011 U.S. Dist. LEXIS 19717, at

Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com

1360395.2



*17 (E.D.N.Y. Feb. 28, 2011) (emphasis added) and not simply "perus[e] a report drafted by someone else and sign[] one's name at the bottom to signify agreement." *Crowley v. Chait*, 322 F. Supp. 2d 530, 543 (D.N.J. 2004). Plaintiffs' argument would exempt a "substitute expert" from Rule 26's preparation requirement, but Plaintiffs cite to no support for that proposition.[1] Indeed, in the only case Plaintiffs cite regarding a substitute expert witness, the district court wrote that the substitute expert "should have the opportunity to express his opinions *in his own language* after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform." *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 04-CV-396, 2010 U.S. Dist. LEXIS 103744, at *8 (N.D. Ind. Sept. 30, 2010) (emphasis added) (internal quotations omitted).

It would run counter to the purpose of the Federal Rules to relieve a substitute expert from having to prepare his or her own report. Substitutions are allowed to ensure that a party is not punished for circumstances beyond its control — not to put the party's opponent in a compromised position. In 1993, Rule 26(a)(2)(B) was amended to its present form because the former rule requiring only interrogatory answers about the "substance" of an expert's testimony yielded information that "often was ... of little help in preparing for a deposition of the witness." *See* Advisory Committee Notes to Rule 26(a)(2)(B). Thus, the new rule required the witness to prepare "a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." *Id.* As set forth in Defendants' November 22, 2013 letter, courts have construed Rule 26(a)(2)(B) to require the expert to be substantially involved in the preparation of the report. *See* Dfts' Letter at 1-2. The import of the Rule is heightened in a case like this, where the proposed experts are not applying scientific, repeatable methodologies to quantifiable data, but instead offering theories and drawing conclusions from assertedly historical information, much of which is inadmissible and/or undisclosed hearsay. Whether Mr. Addicott's and Mr. Eviatar's qualifications and methodologies pass muster under *Daubert* is an issue for another day, but it is clear that Defendants were left to depose two witnesses about opinions these witnesses did not prepare, based upon facts and data they did not collect, due to Plaintiffs' failure to comply with Rule 26. Exclusion of the witnesses is therefore warranted under Rule 37.[2]

Plaintiffs suggest that Eviatar could not have been expected to write his own report because the Defendants "would have objected on the ground that that would take too long…" Plts' Letter at 2. Defendants did not have the opportunity to consider or articulate such an objection because Plaintiffs never provided any hint that their intention was to have Eviatar

---

[1] Defendants have found no cases supporting such an exception either.

[2] Plaintiffs write that "defendants cite no cases relating to the use of a withdrawing expert's report (or draft) by his or her substitute." Letter at 3. For the reasons detailed above, whether the report that an expert adopts was written by counsel or some other unknown person is not determinative of the issue, as in either situation the expert has not prepared the report. But courts have striken substitute experts who simply sign onto the opinions of another expert. *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 729 (E.D.N.C. 2007) (granting motion to exclude portions of expert reports that had incorporated verbatim the reports of withdrawn experts).



Hon. Ronald L. Ellis
December 6, 2013
Page 3

simply review and adopt a report bearing Mr. Shaked's name. To the contrary, on May 6, 2013 Plaintiffs' counsel Robert Tolchin represented that Mr. Eviatar (at that time unidentified) had agreed to let counsel know "how much time he will need *to produce his own report*." Letter from Robert J. Tolchin to the Hon. Ronald L. Ellis (May 6, 2013) at 2 (emphasis added). Ten days later, Mr. Tolchin and Mr. Yalowitz informed the Court that Mr. Eviatar "has already begun his work" and "expects that he can finalize *his expert report* by the second week of June." Letter from Robert J. Tolchin & Kent A. Yalowitz to the Hon. Ronald L. Ellis (May 16, 2013) at 1 (emphasis added). Nowhere did Plaintiffs seek leave of the Court to ignore Rule 26's requirements because Eviatar was a "substitute" expert, and their current attempt to blame Defendants for that failure is without merit.

Finally, Plaintiffs deny that Eviatar gave misleading answers about the authorship of his report. The record speaks for itself, and if the Court decides to convene an informal conference, Defendants are able to provide copies of the relevant reports so that the Court can make its own evaluation. Virtually all of Eviatar's report is drawn word-for-word from the report signed by Shaked, belying Eviatar's testimony that he was "a full partner in the drafting of [the] report," Tr. at 10:15-16, and his claim that he "wrote part of [his report]." *Id.* at 12:12-20. Any question whether that testimony was intentionally misleading was resolved later, when Eviatar claimed to have written two paragraphs of his report that are virtually identical to paragraphs in the report of another of the plaintiffs' experts, Israel Shrenzel. Ex. 5 (pages of Eviatar and Shrenzel reports). Mr. Shrenzel's report was signed on April 10, 2013, approximately a month *before* Eviatar began work, and Eviatar testified that he did not speak with Shrenzel about Shrenzel's report before Eviatar signed his own report. Tr. 37:12-14. When confronted with these remarkable similarities, Eviatar could not explain them, but persisted in his testimony that he wrote those passages. *Id.* at 37:17-42:3.

Plaintiffs have failed to comply with either the letter or the spirit of Rule 26(a)(2) with regard to both Eviatar and Addicott. Even if Plaintiffs' new-found claim about Addicott's so-called substitution is accurate, the suggestion that there are different rules for "substitute" expert witnesses finds no support in the law. The Court should exclude both Eviatar and Addicott from testifying in this matter.

We are available to address any questions the Court may have regarding this issue at any time convenient for the Court.

Sincerely,

Andrew T. Wise