IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

MARK SOKOLOW, *et al.*,

                    Plaintiffs,

          - against -

THE PALESTINE LIBERATION ORGANIZATION,
*et al.*,

                 Defendants.

--------------------------------------------------------------------X

Docket No:
04-CV-397 (GBD) (RLE)

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S MARCH 30, 2011 INTERLOCUTORY ORDER ON PERSONAL JURISDICTION IN LIGHT OF RECENT SUPREME COURT DECISION**

Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") respectfully move for reconsideration of the Court's Opinion and Order of March 30, 2011 denying Defendants' motion to dismiss for lack of personal jurisdiction. The ground for the motion is that there has been an intervening change in the controlling law. In *Daimler AG v. Bauman*, No. 11-965, 2014 U.S. Lexis 644 (Jan. 14, 2014), the Supreme Court held that continuous and systematic contacts with the forum are not sufficient for the exercise of general jurisdiction absent a showing that the defendant is essentially "at home" in the forum, thereby rejecting the test used by this Court in denying Defendants' motion to dismiss.

The Court's exercise of general jurisdiction over the PA and PLO based principally on the public relations activities of the PLO Mission office in Washington, D.C. is in direct conflict with the test for general jurisdiction set forth by the Supreme Court in *Daimler*. Neither the PA nor the PLO is "at home" in the United States. Thus, the Court cannot assert general jurisdiction over the Defendants. Moreover, the lawsuit does not arise out of the PA's or PLO's contacts

1

with the United States. Therefore, the Court may not assert specific personal jurisdiction either. There is simply no way to reconcile the Court's ruling with the Supreme Court's recent jurisprudence on personal jurisdiction. Accordingly, the Court must dismiss the case for lack of personal jurisdiction.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

In this lawsuit, Plaintiffs ask the Court to decide responsibility for acts of violence occurring during the Israeli-Palestinian conflict known as the Second Intifada. Specifically, Plaintiffs seek to assign responsibility to the PA and PLO for seven unrelated acts of violence occurring over a three year period in or near Jerusalem between January 8, 2001 and January 29, 2004. The Palestinian Authority and PLO moved to dismiss for lack of personal jurisdiction in July 2007. DE 45.

In its order of September 30, 2008, the Court found that "limited jurisdictional discovery is warranted, prior to determining defendants' motion to dismiss for lack of personal jurisdiction." *Sokolow v. PLO*, 583 F. Supp. 2d 451, 460 (S.D.N.Y. 2008). The Court accordingly denied Defendants' motion without prejudice to renew following jurisdictional discovery. *Id.* Following personal jurisdiction discovery, Defendants renewed their motion to dismiss. DE 81, 82.

### A. Defendants' Renewed Motion to Dismiss

There was no dispute that the PLO operated an office in Washington, D.C. during the relevant period, the office of the PLO Mission to the United States. *See Sokolow v. PLO*, No. 1:04cv397, 2011 U.S. Dist. Lexis 36022, at *15 (S.D.N.Y. Mar. 30, 2011).[1] There also was no dispute that the PLO operated an office in New York during the relevant period, the office of the

_____

[1] That office is now called the General Delegation of the PLO to the United States.

1400927.1

Permanent Observer Mission of Palestine to the United Nations.  *See* DE 82 at 8-10.  In their

renewed motion to dismiss, the Defendants argued that, under the well-established "government

contacts exception," the P.L.O. Mission office in Washington, D.C. and all of its non-

commercial activities could not be treated as jurisdictional contacts.  *See* DE 82, Mem. at 11-15.

The government contacts exception exempts from the jurisdictional analysis, the non-

commercial, political activities of Washington, D.C. offices of corporations and trade

associations and U.S. missions and embassies of foreign governments which set up offices in

D.C. due to proximity to the federal government.[2]  Defendants further argued that even if the

public relations activities of the Washington, D.C. office were considered jurisdictional contacts,

those activities were insufficient to confer general personal jurisdiction.  *See id.* at 8.

Citing the Second Circuit's decision on point in *Klinghoffer v. S.N.C. Achille Lauro*, 937

F.2d 44, 52 (2d Cir. 1991), the Defendants also argued that the PLO's UN office in New York

could not be used as a basis for establishing personal jurisdiction.  DE 82 at 11-12.  In

*Klinghoffer*, the Second Circuit extended the government contacts exception by analogy to the

PLO's UN diplomatic mission.  As the Second Circuit explained:

> Although this "government contacts" rule is based in part on the
> constitutional right to "to petition the Government for redress of
> grievances" – a right not implicated here – it also appears to be based on
> non-constitutional policy considerations, such as the Judiciary's reluctance
> to interfere with the smooth functioning of other governmental entities. . . .
> [T]hese same concerns militate against basing jurisdiction over the PLO
> on its UN-related activities.

---

[2] *See Frontera Res. Azer. Corp. v. State Oil Co.*, 479 F. Supp. 2d 376, 387 n.4 (S.D.N.Y. 2007); *Fasolyak v. Cradle Society, Inc.*, No. 06-01126, 2007 U.S. Dist. Lexis 52041, at *29-34 (D.D.C. July 19, 2007); *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 235 (D.D.C. 2005); *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 76 (D.D.C. 2004); *World Wide Minerals Ltd. v. Republic of Kazakhstan*, 116 F. Supp. 2d 98, 105-106 (D.D.C. 2000); *Cellutech, Inc. v. Centennnial Cellular Corp.*, 871 F. Supp. 46, 50 (D.D.C. 1994); *Dooley v. United Technologies Corp.*, 786 F. Supp. 65, 76 (D.D.C. 1992); *Nalls v. Rolls-Royce Ltd.*, 1980 U.S. App. Lexis 21294, at *5 (D.C. Cir. Jan. 17, 1980); *Fandel v. Arabian American Oil Co.*, 345 F. 2d 87 (D.C. Cir. 1965).

937 F.2d at 51-52 (internal citation omitted).

With respect to the PA, the most significant U.S. contact it had during the relevant period was a contract with the Bannerman & Associates lobbying firm. But, the PA argued in the motion to dismiss, the retention of a lobbying firm falls squarely with the government contacts exception. *See* DE 82 at 18 (citing cases.) But, in any event, the PA argued, it lacked sufficient contacts with the United States for the exercise of personal jurisdiction. *Id.* at 17-18.

### B. The Court's March 2011 Decision Denying Defendants' Motion

The Court began its analysis of general jurisdiction, by stating: "Defendants do not even dispute that, during the relevant time period, they maintained sufficient contacts with the United States to satisfy the traditional due process analysis for general jurisdiction." *Sokolow*, 2011 U.S. Dist. Lexis 36022, at *9. That was not the case. For example, as to the PA, under the heading "The PA's U.S. Contacts Were Insufficient to Establish Personal Jurisdiction," the Defendants' renewed motion to dismiss discussed the few PA contacts with the United States during the relevant period and then argued that they were not sufficiently continuous or systematic to warrant the exercise of general jurisdiction. *See* DE 82 at 17-19.

Turning to the "Traditional Jurisdictional Analysis," the Court then concluded that both the PLO and PA "purposefully engaged in numerous activities that resulted in both entities having a continuous and systematic presence within the United States" and that the totality of these activities "justifies the exercise of general personal jurisdiction." *Sokolow*, 2011 U.S. Dist. Lexis 36022, at *14. In concluding that the PA and PLO had continuous and systematic contacts with the United States, the Court cited the following two contacts: the presence of an office in Washington, D.C. (that of the PLO Mission to the United States) and the PA's retention of a U.S. lobbying firm (Bannerman), whose role was to build U.S. support for Palestinian statehood. *Id.*

1400927.1

at *18-20.  The Court also described a series of activities and relationships all of which were

related to the basic operation of the Washington, D.C. office.  Specifically, the Court identified

the following contacts:

> Defendants had thirty-five land line telephone and cell phone numbers and
> two bank accounts from 2002-2004.  The Defendants had a CD account as
> late as January 2003.  Defendants also had ongoing commercial contracts
> and transactions with numerous U.S.-based businesses, including for
> office supplies and equipment, postage/shipping, news
> services/subscriptions, telecommunications/internet, IT support,
> accountant and legal services, and credit cards.

*Id.* at *18.  In addition to citing the phone lines, bank account, office equipment, etc., needed to

operate the U.S. Mission office in D.C., the Court found that the Palestinian Authority and PLO

had a "substantial promotional presence" in the United States, based on its assessment that the

D.C. office is "permanently dedicated to promoting the interests of the PLO and the PA."  *Id.* at

*20-21.  Specifically, the Court noted that one PLO employee, the Head of the PLO Mission to

the United States (the D.C. office), "participated in at least 158 public interviews and media

appearances between January 1998 and January 2004."  *Id.* at *21.

Even though it was "undisputed that the PLO maintained an office in Washington, D.C."

and "that most of the individuals who worked in the D.C. office were PLO employees," *id.* at

*15-16, the Court attributed the activities of the D.C. office of the PLO Mission to the United

States to the PA.  *Id.* at *17.  The Court did not make any findings that the PLO or PA were alter

egos, or that the PLO Mission to the United States was an agent of the PA for personal

jurisdiction purposes.  Nor did the Court dispute that it was only the PLO (not the PA) that is

authorized by the U.S. State Department to operate a mission in the United States.  *See* DE 82,

Exh. 1 (June 22, 1994, Letter from U.S. Department of State Office of Foreign Missions).  The

Court relied principally on a statement included in the PLO's March 1998 Foreign Agent

5

Registration Act Statement: "The PLO offices in Washington, D.C. shall represent the PLO and the Palestinian Authority in the United States and will promote peace and development with Israel. The PLO and the Palestinian Authority will pay for the expenses of the office and the salaries of its employees." *See* DE 82, Exh. 5 at 3; *Sokolow*, 2011 U.S. Dist. Lexis 36022, at *16-17.

After attributing the activities of the PLO Mission to the United States to the PA, the Court then addressed Defendants' argument that the physical presence of the office and most of the activities of the office were exempt from the jurisdictional analysis as a result of the government contacts exception. The Court agreed with Defendants that the New York office of the Permanent Observer Mission of Palestine to the United Nations could not be treated as a United States contact under *Klinghoffer*, 937 F.2d at 52 (2d Cir. 1991). But, with respect to the Washington, D.C. office of the PLO Mission to the United States, the Court held that the "*Klinghoffer* jurisdictional exception is inapplicable because there is no evidence that the D.C.-based activities involved UN affairs," but rather there was "overwhelming evidence that Defendants were primarily in Washington, D.C. pursuing their political interest." *Sokolow*, 2011 U.S. Dist. Lexis 36022, at *26. Of course, such pursuit placed the PLO's activities squarely within the government contacts exception, which is in no way limited by the *Klinghoffer* exception to UN-related activity.

After discussing the government contacts exception, the Court then ultimately held: "Even after excluding activities in furtherance of the PLO's observer status and contacts with the federal government, the remaining contacts would still provide a sufficient basis to exercise general jurisdiction over the Defendants." *Id.* at *27-28. According to the Court, "[t]he PLO and the PA were continuously and systematically present in the United States by virtue of their

1400927.1

extensive public relations activities." *Id.* at *28 (apparently referring to the 158 public interviews and media appearances of the head of the Washington, D.C. office). The Court then concluded: "This alone is a sufficient basis to decline to ignore the entire physical presence, commercial transactions, and other activities of the D.C. office." *Id.*

In sum, in its March 30, 2011 opinion, the Court held it could assert general personal jurisdiction over both the PA and PLO based on the public relations activities conducted by the Washington, D.C. office of the PLO Mission to the United States. The Court's analysis of what constitutes sufficient continuous and systematic contacts for the assertion of general personal jurisdiction was squarely rejected by the Supreme Court earlier this month in *Daimler AG v. Bauman*, 2014 U.S. Lexis 644 (Jan. 14, 2014). But, even if the government contacts exception did not exempt any aspect of the D.C. office, and thus the office's physical presence in D.C. as well as its non-commercial, political activities were treated as jurisdictional contacts, there would still be no basis for assertion of general personal jurisdiction over the PA or PLO in light of the Supreme Court's holding in *Daimler*. The PLO has missions or embassies in most countries throughout the world. The presence of one such office in the United States does not make the PLO or the PA "at home" in the United States.

## STANDARD OF REVIEW

The Court's denial of Defendants' motion to dismiss for lack of jurisdiction is an interlocutory order. Under Federal Rule of Civil Procedure 54(b), an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Official Comm. of the Unsecured*

*Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003);

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  Here,

reconsideration is warranted because of an intervening change in the controlling law, as well as

to correct what is a clear error that would create manifest injustice if the PA and PLO were

required to continue to defend a case as to which there is no jurisdiction over them.

**ARGUMENT**

The Supreme Court's recent decision in *Daimler AG v. Bauman*, No. 11-965, 2014 U.S.

Lexis 644 (Jan. 14, 2014), greatly limits the circumstances in which courts may exercise general

personal jurisdiction over foreign (either out-of-state, or, in cases such as this involving

nationwide contacts, out-of-country) defendants.   As discussed below, *Daimler* makes clear that

the Court may not assert jurisdiction over the PA or PLO.

**I.    UNDER *DAIMLER*, GENERAL JURISDICTION MAY BE ASSERTED OVER ONLY THOSE DEFENDANTS WHO ARE "AT HOME" IN THE FORUM.**

In *Daimler AG v. Bauman*, No. 11-965, 2014 U.S. Lexis 644 (Jan. 14, 2014), the

Supreme Court clarified earlier precedent regarding when continuous and systematic contacts of

a foreign defendant are sufficient for the exercise of personal jurisdiction.  The Court began by

emphasizing the important distinction between specific personal jurisdiction (which as the name

suggests, is case-specific) and general, or "all purpose," personal jurisdiction.  Because general

jurisdiction allows a court to assert jurisdiction over a defendant for claims unrelated to its

activities in the forum, a substantially greater level of presence is required in the forum.  As the

Court explained in *Daimler*:  "It is one thing to hold a corporation answerable for operations in

the forum State, quite another to expose it to suit on claims having no connection whatever to the

forum State." *Id.* at *42 n.19 (internal citation omitted).

1400927.1

The canonical Supreme Court case on personal jurisdiction is *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which established the "minimum contacts" and "continuous and systematic" standards. As the Supreme Court emphasized in *Daimler*, *International Shoe* was a case involving the exercise of specific, not general, jurisdiction. *Daimler*, 2014 U.S. Lexis 644, at *17-18. In *International Shoe*, the in-state activities of the corporate defendant "ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on." 326 U.S. at 317. "Since *International Shoe*, specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction has played a reduced role." *Daimler*, 2014 U.S. Lexis 644, at *20 (internal quotation, citation and alteration omitted). The Court's post-*International Shoe* opinions on general jurisdiction "are few," with the result that "general and specific jurisdiction have followed markedly different trajectories post-*International Shoe*." *Id.* at *23, *29. "As this Court has increasingly trained on the relationship among the defendant, the forum, and the litigation, *i.e.*, specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Id.* at *29-30 (internal citation and quotation omitted).

General jurisdiction over non-resident defendants is rarely warranted. As the Supreme Court explained in *Daimler*, *Perkins v. Benguet Consol. Mining Co*, 342 U.S. 437 (1952), remains the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." 2014 U.S. Lexis 644, at *23 (internal citation and quotation omitted). There, the defendant mining company (Benguet) was incorporated under the laws of the Philippines, where it had operated gold and silver mines. During World War II, when the Philippines was under Japanese occupation, the mining company ceased its operations in the Philippines. Benguet's president moved to Ohio where he kept an

9

office, maintained the company's files, and oversaw the company's activities. *Perkins*, 342 U.S. at 448; *see also Daimler*, 2014 U.S. Lexis 644, at \*23. Indeed, "[a]ll of Benguet's activities were directed by the company's president from within Ohio." *Daimler*, 2014 U.S. Lexis 644 at \*25 n.8. Because "Ohio was the corporation's principal, if temporary place of business," the Supreme Court held that Ohio courts could exercise general jurisdiction over Benguet on a claim brought by an Ohio resident that neither arose in Ohio nor was related to the Benguet's activities in Ohio. *Id.* at \*24 (internal quotations omitted). Given the wartime circumstances, Ohio was treated as "a surrogate for the place of incorporation or head office." *Id.* at \*25 n.8 (internal quotation and citation omitted). *See also id.* at \*26 n.8 ("No fair reader of the full opinion in *Perkins* could conclude that the Court meant to convey anything other than that Ohio was the center of the corporation's wartime activities.").[3]

In *Daimler*, the Court also revisited and further clarified its decision in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) (decided June 27, 2011). In *Goodyear*, the Court addressed whether a foreign subsidiary of a U.S. parent corporation was amenable to suit in state court on claims unrelated to any activity of the subsidiary in the forum state. *Id.* at 2850. The Court explained that general jurisdiction (as opposed to specific jurisdiction) permits a court to hear any and all claims against a foreign entity only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Id.* at 2851 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). The Court

---

[3] The Court also criticized two decisions from the pre-*International Shoe* era, both cited in *Perkins*, which had upheld the exercise of general jurisdiction based on the presence of a local office (*Barrow S.S. Co. v. Kane*, 170 U.S. 100 (1898), and *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917) (Cardozo, J)). Specifically, the Court cautioned that "these cases, both decided in the era dominated by *Pennoyer*'s territorial thinking, should not attract heavy reliance today." *Daimler*, 2014 U.S. Lexis 644, at \*41-42 n.18.

1400927.1

reversed the North Carolina court of appeals' finding that, because the defendant corporation's products had entered the state's stream of commerce, North Carolina could exercise general jurisdiction. *Id.* Such a limited connection did not "establish the 'continuous and systematic' affiliation necessary to empower North Carolina courts to entertain claims unrelated to the foreign corporation's contacts with the State." *Id.*

In reversing, the Supreme Court observed that the North Carolina court's analysis "elided the essential difference between case-specific and all-purpose (general) jurisdiction." *Id.* at 2855. Elaborating on the "at home" standard for the exercise of general jurisdiction, the Court explained: "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 2853-54. The *Goodyear* Court further identified place of incorporation and principal place of business as paradigm bases for the exercise of general jurisdiction over non-natural persons. *Id.*

Having reviewed its earlier precedent in *Perkins* and *Goodyear*, the *Daimler* Court then held that there was no basis for the assertion of general personal jurisdiction over Daimler because it was not based in the forum (California). *Daimler*, 2014 U.S. Lexis 644, at *42-43. In *Daimler*, the Ninth Circuit had held that a federal court sitting in California could assert general personal jurisdiction over Daimler AG (a German corporation) by imputing the California contacts of Daimler's U.S. subsidiary Mercedes-Benz USA, LLC ("MBUSA"), which was incorporated in Delaware and which had its principal place of business in New Jersey. MBUSA was not a defendant and Daimler failed to argue that MBUSA was not "at home" in California. The Court was thus required to assume "for purposes of this decision only" that MBUSA qualifies as at home in California. *See id.* at *32. Turning to the Ninth Circuit's

11

1400927.1

agency theory, under which the Ninth Circuit imputed MBUSA's contacts to Daimler, the Court rejected it as overbroad. *See id.* at *36 n.15. "The Ninth Circuit's agency theory thus appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." *Id.* at *35 (quoting *Goodyear*, 131 S. Ct. at 2856). But the Court went on to hold that "[e]ven if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at *37.

In reaching this conclusion, the Supreme Court specifically rejected the argument that general jurisdiction may be exercised "in every state in which a corporation engages in a substantial, continuous, and systematic course of business." *Id.* at *39 (internal citation and quotation omitted). That formulation – the one that this Court adopted in denying Defendants' motion – is, according to the Supreme Court, "unacceptably grasping." *Id.* at *39-40.[4] The "continuous and systematic" formulation describes instances in which the exercise of *specific* jurisdiction is appropriate. *Id.* at *40. The test for general jurisdiction under *Goodyear*, the Court emphasized, "is not whether a foreign corporation's in-forum contacts can be said to be in

---

[4] The Supreme Court also noted that the overly expansive view of personal jurisdiction represented by the "continuous and systematic" formulation posed risks to international comity when applied to assert personal jurisdiction over foreign defendants. "Other nations do not share the uninhibited approach to personal jurisdiction advanced by the Court of Appeals in this case. In the European Union, for example, a corporation may generally be sued in the nation in which it is 'domiciled,' a term defined to refer only to the location of the corporation's 'statutory seat,' 'central administration,' or 'principal place of business.' The Solicitor General informs us, in this regard, that 'foreign governments' objections to some domestic courts' expansive views of general jurisdiction have in the past impeded negotiations of international agreements on the reciprocal recognition and enforcement of judgments.' Considerations of international rapport thus reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands." *Daimler*, 2014 U.S. Lexis 644, at *46-48 (internal citation omitted).

1400927.1

some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Id.* at *40-41 (quoting *Goodyear*, 131 S. Ct. at 2851).

Turning to Daimler's and MBUSA's contacts with California, the Court found that "neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there." *Id.* at *42. Thus, even assuming MBUSA's California contacts could be imputed to Daimler, Daimler was not at home in California and therefore not subject to general personal jurisdiction there. *Id.* at *43. In a footnote, the Court clarified that the general jurisdiction inquiry requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at *43 n.20. As the Court explained, a "corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at *43-44 n.20. Moreover, "[n]othing in *International Shoe* and its progeny suggests that 'a particular quantum of local activity' should give a State authority over a 'far larger quantum of . . . activity' having no connection to any in-state activity." *Id.* at *44 n.20 (internal citation omitted).

## II.    BECAUSE NEITHER THE PA NOR THE PLO IS "AT HOME" IN THE UNITED STATES, THE COURT MAY NOT EXERCISE GENERAL JURISDICTION OVER THEM.

In denying the PA's and PLO's motion to dismiss for lack of personal jurisdiction, this Court adopted a test for general personal jurisdiction that the Supreme Court has now definitively rejected. When the correct ("at home") test is applied, it is evident that the Court may not exercise general jurisdiction over the Defendants. Because the Court based its exercise of jurisdiction over the PA and PLO on general jurisdiction and because Plaintiffs' claims do not

13

arise out of the PA's or PLO's alleged jurisdictional contacts with the United States, there also is no basis for the assertion of specific jurisdiction.[5]

The Court erroneously treated "continuous and systematic" as the test for general, not specific, jurisdiction. In setting out the standard for the exercise of jurisdiction, the Court stated: "Whereas specific jurisdiction applies where a defendant's contacts are related to the litigation, general jurisdiction applies where they are unrelated, and involves a more stringent minimal contacts test. General jurisdiction requires that each defendant's contacts with the forum are continuous and systematic." *See Sokolow*, 2011 U.S. Dist. Lexis 36022, at *12-13 (internal quotation and citation omitted). This is precisely the test for general jurisdiction the Supreme Court rejected in *Daimler*. In *Daimler*, the Supreme Court specifically held that "continuous and systematic" contacts with the forum were not sufficient absent a showing that the defendant is "at home" in the forum. *Daimler*, 2014 U.S. Lexis 644, at *40-41.

Erroneously treating the quantum of contacts necessary for the exercise of specific jurisdiction as sufficient for the exercise of general jurisdiction, the Court then asserted jurisdiction over the PA and PLO based on the public relations activities associated with the Washington D.C. office of the PLO Mission to the United States. *Sokolow*, 2011 U.S. Dist. Lexis 36022, at *27-28. This was clear error in light of *Daimler*. Even if those public relations activities could be properly characterized as continuous and systematic, they provide an insufficient basis for the assertion of general jurisdiction. The PA is the government of Palestine. During the relevant period, its home was the West Bank and Gaza Strip, not the United States. The PLO also is based in the West Bank, not the United States. It operates

---

[5] The parties briefed the issue of specific jurisdiction and the Court, in denying Defendants' motion, did not cite any basis for the assertion of specific jurisdiction. Indeed, there is no basis for asserting that Plaintiffs' claims arise from any alleged PA or PLO activities in the United States.

1400927.1

embassies and missions all over the world. As the Court explained in *Daimler*, a "corporation that operates in many places can scarcely be deemed at home in all of them." 2014 U.S. Lexis 644, at *43 n.20. Unlike the mining company in *Perkins*, 342 U.S. 437, this forum is not the center of the PA's or PLO's activities. *See Daimler*, 2014 U.S. Lexis 644, at *26. Thus, even if the entire U.S. office of the PLO Mission to the United States and all its activities were treated as jurisdictional contacts, the government contacts exception notwithstanding, the PLO and PA still would not be at home in the United States.

Because the Court asserted general jurisdiction over the PA and PLO based on a test recently rejected by the Supreme Court and because there is no evidence following jurisdictional discovery supporting a finding that either the PA or PLO is "at home" in the United States, the Court may not consistent with due process exercise general personal jurisdiction over the Defendants. There is simply no way to read *Daimler* and conclude that the PA and PLO can be sued in the United States for any cause of action arising anywhere in the world simply because the PLO has an office in Washington, D.C. and engages in public relations activities here.

## III.    THIS COURT'S ATTRIBUTION OF ACTIVITIES OF THE D.C. OFFICE OF THE PLO MISSION TO THE PALESTINIAN AUTHORITY ALSO CONFLICTS WITH *DAIMLER*.

The Court found that the PA had continuous and systematic contacts with the United States by attributing to the PA the activities of the Washington, D.C. office of the PLO Mission to the United States. *Sokolow*, 2011 U.S. Dist. Lexis 36022, at *16-17. The Court's attribution of contacts of the PLO to the PA through undefined agency theories also must be reconsidered following *Daimler*. *See Daimler*, 2014 U.S. Lexis 644, *33-37 (strongly criticizing Ninth Circuit's attribution of contacts through expansive agency theories); *see also Daimler AG v. Bauman*, No. 11-965, Brief for the United States as Amicus Curiae Supporting Petitioner (taking

1400927.1

the position that the Ninth Circuit's approach to attribution of contacts fails to satisfy due process).

Addressing the Ninth Circuit's agency theory in *Daimler*, the Supreme Court characterized it as "appear[ing] to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate." 2014 U.S. Lexis 644, at *36.   The Court then concluded that such an interpretation "would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." *Id.* (quoting *Goodyear*, 131 S. Ct. at 2856).   Here, the office of the PLO Mission to the United States was not even a U.S. subsidiary or affiliate of the PA.  It was a mission operated by the PLO which received some funding from the PA and advocated for the PA's interests and Palestinian statehood.  But, as *Daimler* instructs, even if the PLO Mission office could be characterized as a U.S. affiliate of the PLO and PA, the court may not assert jurisdiction over the PLO and PA based on the activities of the PLO Mission office.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration should be granted, their motion to dismiss for lack of jurisdiction also should be granted, and this action dismissed with prejudice.

{400927.1}

January 31, 2014                 Respectfully Submitted,

                                  /s/ *Mark J. Rochon*
                                 Mark J. Rochon
                                 Laura G. Ferguson
                                 Brian A. Hill
                                 MILLER & CHEVALIER CHARTERED
                                 655 15th Street, NW, Suite 900
                                 Washington D.C. 20005-6701
                                 (202) 626-5800 [tel]
                                 (202) 626-5801 [fax]
                                 mrochon@milchev.com [email]


                                 *Counsel for Defendants the Palestinian Authority and the*
                                 *Palestine Liberation Organization*

1400927.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 31st day of January, 2014, a true and genuine copy of the foregoing was filed by ECF, which automatically provided service to all ECF counsel, including the following:

> Robert J. Tolchin, Esq.
> The Berkman Law Office, LLC
> 111 Livingston Street – Suite 1928
> Brooklyn, NY 11201
> (718) 855-3627
> E-mail: rtolchin@berkmanlaw.com
>
> Kent A. Yalowitz
> Philip W. Horton
> Arnold & Porter LLP
> 399 Park Avenue
> New York, NY 10022
> (212) 715-1000
> Email: Kent.Yalowitz@aporter.com

_____/s/ Mark J. Rochon_____
Mark J. Rochon

1400927.1