```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3     ----------------------------------------X
                                              :
 4     SOKOLOW, et al,                        : 04-CV-397 (GBD)
                                              :
 5                    Plaintiffs,             : February 10, 2014
                                              :
 6              v.                            : 500 Pearl Street
                                              : New York, New York
 7     PALESTINE LIBERATION ORGANIZATION, et al, :
                                              :
 8                    Defendants.             :
       ----------------------------------------X
 9

10          TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY DISPUTES
                 BEFORE THE HONORABLE RONALD L. ELLIS
11                 UNITED STATES MAGISTRATE JUDGE

12     APPEARANCES:

13     For the Plaintiffs:        KENT YALOWITZ, ESQ.
                                  TAL MACHNES, ESQ.
14                                CARMELLA ROMEO, ESQ.
                                  Arnold & Porter
15                                555 12th Street NW
                                  Washington, DC 20004
16

17
       For the Defendant:         LAURA FERGUSON, ESQ.
18                                BRIAN A. HILL, ESQ.
                                  MARK ROSHAN, ESQ.
19                                Miller & Chevalier, Chtd.
                                  655 15th Street NW, #900
20                                Washington, D.C.  20005

21

22     Court Transcriber:         SHARI RIEMER
                                  TypeWrite Word Processing Service
23                                211 N. Milton Road
                                  Saratoga Springs, NY 12866
24

25


       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service
```

2

1          THE COURT: Good morning.  This is Judge Ellis.  Can

2    I have your appearances?

3          MR. YALOWITZ:  Good morning, Your Honor.  Kent

4    Yalowitz, Carmella Romeo, Tal Machnes, Arnold Porter on behalf

5    of the plaintiffs.

6          MS. FERGUSON:  Good morning, Your Honor.  Laura

7    Ferguson, Mark Roshan and Brian Hill on behalf of the

8    defendants, the Palestinian Authority and PLO.

9          THE COURT: This is a conference in Sokolow v.

10   Palestine Liberation Organization, et al., 04-CV-397.  It is

11   Monday, February 10th at approximately ten a.m.

12          I understand from my law clerk that the parties have

13   been busy writing letters and let me just say two things

14   because it seems the parties may have some misunderstandings.

15          One, with respect to the way the briefing and -- has

16   been set these are all in accord with Judge Daniels' desires

17   of what he wants in terms of motions.  I know that in a number

18   of times the parties have gone to Judge Daniels and given him

19   the impression that you're not leaving me when I say this is

20   what he wants.  So believe me when I say when Judge Daniels

21   wants to have one briefing schedule, he wants to have one

22   briefing schedule.  You can't change that by in treaties to me

23   or going to him.  What happens with different district judges

24   in different cases that's up to the district judge but if it

25   has to do with dispositive motions it's up to the district

1    judge how they want to handle it.

2          Secondly, with respect to the question of the trial,

3    again the trial is obviously something which impacts on Judge

4    Daniels' calendar but in consultation with him I have conveyed

5    to him that the motions that he will be receiving could have

6    some impact on the length and issues at the trial.  His

7    response is that to the extent that there's a request for a

8    firm trial date he will not set a trial date until he has

9    decided the motion and until he knows the extent of the

10   commitment for trial.

11         I understand from the final joint proposed pretrial

12   order that the plaintiff's estimate alone is for 50 trial days

13   and that -- and I'm assuming that's based on the plaintiff's

14   belief that the defendant's motions in limine won't be

15   successful but assuming that it goes forward as it is 50 trial

16   days for the plaintiff and an unspecified number of trial days

17   for the defendant as you are aware the district judges you

18   have to fit their civil docket in with their criminal docket

19   and in order to make an informed decision as to how he's going

20   to set this case down and for an extended period of time the

21   judge has to know what period of time that's going to be.

22         So moving on from the question of a firm trial

23   date --

24         MR. YALOWITZ: Your Honor --

25         THE COURT: Who's speaking?

4

```
 1              MR. YALOWITZ: I apologize for interrupting.  This is
 2   Kent Yalowitz on behalf of the plaintiffs.  I certainly don't
 3   want to rearguing on what Your Honor just said.  Just one
 4   point of clarification which is from the plaintiff's
 5   perspective I don't think this would change Judge Daniels'
 6   views but just to be clear, our 50 days was our best good
 7   faith estimate of what both parties would need to get their
 8   evidence in.
 9              THE COURT: Okay.  All right.  Well, I --
10              MR. YALOWITZ: I don't think it impacts anything Your
11   Honor said but I just wanted to make that clear.
12              THE COURT: Thanks for the clarification and I --
13   you're right on both.  First making the clarification and
14   secondly as to whether or not I believe it would have any
15   impact on Judge Daniels' modus of operating.
16              So let me -- there are three other issues -- I'm
17   going to mention them just so that if there's something I'm
18   missing that you will let me know before I go into what my
19   thinking is on them.
20              First, there is the question of sanctions to
21   defendants for the DIS documents.  Second, there's the
22   defendant's motion for reconsideration on the motion to
23   dismiss, and third is the defendant's request for modification
24   on the briefing schedule.  Is there some other topic that the
25   parties believe should be on the table?
```

1          MR. YALOWITZ: Your Honor, Kent Yalowitz again.  I

2  have one off agenda item which we just need some guidance from

3  the court as to how to raise it but it hasn't -- it hasn't

4  been presented to the court yet and so I just want to describe

5  that at an appropriate time.

6          THE COURT: All right.  I'll make a note to not end

7  the conference before I hear that put on the table.

8          MS. FERGUSON: Your Honor, we don't have any other

9  items for the call.

10          THE COURT: Okay.  Thank you.  Let me address the

11  plaintiff's request on the motion for sanctions.  First of

12  all, I understand that the plaintiffs suggested a briefing

13  schedule.  I don't think that that's a workable solution but I

14  did have some questions for the defendants.  It seemed that

15  the renewed search -- why was there a need for a renewed

16  search because I thought that -- usually it's my idea that

17  when parties put documents at issue they're talking about

18  documents that they know about.  So what did -- what does the

19  term renewed search mean?

20          MR. HILL: Yes, Your Honor.  This is Brian Hill.

21  I'll address that.  So just to remind you of the sort of

22  history here.  The initial discovery requests for GSI files

23  pertaining to individuals was served on November 21, 2012

24  which happened to be the last day for doing so.  We conducted

25  a search for materials in November and December of 2012 and

6

prepared a privilege log of the materials we found at that

time.  That privilege log sat for a number of months and then

eventually in May of 2013 the plaintiffs filed a motion to

compel.  There was a lot of briefing back and forth on that as

you know.  We made a production that was redacted and at that

time the plaintiffs raised the issue of documents that we

produced in redacted form referring to what appeared to be

other documents.

So we went back at that time and did a second search

and found additional material and then when you eventually

ordered a production of material in November we produced both

the stuff we had found in November and December of 2012 and

the material that we had found in August of 2013.  Then in

December right before Christmas of 2013 we got a letter with a

list of additional materials the plaintiffs thought were

referred to and the material that had been produced.  As it

turned out ten of those 64 items the plaintiffs already had.

We then did a third search of GIS and located an additional 22

items and determined that many of the remaining items

apparently were not documents at all but oral reports.

In terms of how we got here, Your Honor, I can only

say that this is a client that's not used to American style

civil discovery.  We did what we believed to be reasonable

searches on all three occasions and we have tendered an

affidavit from the person at GIS who was overseeing the

7

1  searches who has affirmed that the plaintiffs now have

2  everything.  I believe that to be true.  Part of the

3  difficulty here was that the materials that the plaintiffs

4  have asked for are cumulative of other materials.  They're not

5  always filed in the same place.  Some of them are, for

6  example, non substantive internal correspondence that were not

7  with the individual files but had to be separately located in

8  different filing systems but we're comfortable that we've now

9  done all that we can reasonably do to produce the materials

10  that have been requested.

11       Not that this matters I guess for the present

12  inquiry but just to remind the court, these materials are of

13  marginal relevance at best and in our view are going to be

14  inadmissible because they're just after the fact hearsay.

15       But, in any event, that's where we are at this

16  point, Your Honor.  We don't think there's any basis for

17  sanctions and we believe the plaintiffs have now got all of

18  the stuff that the client has.

19       THE COURT: And when you say that there were -- there

20  are 32 documents that could not be located despite the renewed

21  search, are you referring to old documents or is that

22  something else?

23       MR. HILL: Well, we think they're mostly old

24  documents, Your Honor, but it's a little hard to tell.  The

25  documents themselves reference reports.  It's our

8

1    understanding, and the declaration confirms this, that many of

2    these reports were oral.  So we're in a little bit of a black

3    box there but the client's understanding is that the missing

4    material is for the most part oral reports or if there were

5    documents they're cumulative of what the plaintiffs already

6    have.

7                THE COURT: Okay.  And who performed the search?

8                MR. HILL: Your Honor, Mr. Yaman who's the director

9    of operations at GIS who's the declarant oversaw the search on

10   behalf of GIS and instructed his subordinates both of the

11   Ramala headquarters and at the relevant regional offices to

12   perform the searches.

13               THE COURT: All right.  As to this issue, I'm going

14   to review everything that's been submitted.  If I need

15   additional information as to whether or not it's appropriate

16   to -- again, understand that some of the things that the

17   plaintiffs want really I'd have to recommend them to Judge

18   Daniels because they have to do with evidentiary findings and

19   jury instructions and inclusion of defenses which obviously

20   could have some profound dispositive results.  I will be

21   discussing that with him after I've reviewed everything and

22   make a determination as to whether I want any additional

23   information but I don't think briefing is going to be the

24   issue.

25               I understand that the plaintiffs have pointed out

9

1  deficiencies in the defendant's production and I've already

2  indicated that it was my belief that defendants had not

3  complied in a timely manner with the court's order.  As to

4  what's going to be an appropriate remedy for that I think as I

5  said to the extent that it involves how Judge Daniels conducts

6  his trial I will have to have further conversations with him.

7          As to --

8          MR. HILL: Thank you, Your Honor.

9          THE COURT: As to defendant's motion for

10  reconsideration, while it is true that Judge Daniels has been

11  referring significant parts of the pretrial to me obviously

12  the motion for reconsideration involves a dispositive order

13  and therefore -- maybe the defendants can refresh my

14  recollection.  This was an order by Judge Daniels, wasn't it?

15          MS. FERGUSON: Correct, Your Honor.  It was

16  [inaudible] order.

17          THE COURT: Right.  And since -- I think in some

18  respects given the way things have gone I can't fault you for

19  bringing it to me in the first instance.  However, as you

20  might imagine part of the problem with a motion for

21  reconsideration is that you have to know what it is that the

22  judge considered and what the judge considered material in its

23  consideration.  Notwithstanding that you're talking about a

24  Supreme Court decision I think in the first instance the

25  person who can determine whether or not there is new matter

1   legally or factually is the judge who made the determination.

2   Even if I were to read his opinion I think -- as I said, this

3   does not rule out the possibility that it may be referred to

4   me but in the initial instance it is something that in my

5   judgment should be referred to Judge Daniels as a dispositive

6   [inaudible].

7           MS. FERGUSON: Yes, Your Honor.  We intended that

8   Judge Daniels would consider the motion for reconsideration

9   because it relates to an earlier order that he issued but that

10  was our understanding as well.

11          THE COURT: Okay.  Now, let me get to the issue --

12          MR. YALOWITZ: Your Honor, I apologize for

13  interrupting.  Just on this --

14          THE COURT: Speak your name whenever you speak

15  though.

16          MR. YALOWITZ: Yes, sir.  This is Kent Yalowitz

17  again.  On this motion for reconsideration I'm afraid that all

18  of the flurry of letters back and forth has buried the issue

19  that we brought to Your Honor's attention which simply was

20  that we wanted to coordinate the briefing on personal

21  jurisdiction with the briefing on the merits which requires

22  the setting of a schedule that's slightly longer than the

23  default schedule on the motion and that was really the purpose

24  of my letter to Your Honor of February 3rd was just that right

25  now I think the opposition is due next week and we would like

1 until the 28th of February to file our opposition and a cross

2 motion on this issue and then we would propose that the

3 defendants respond on the schedule of the summary judgment

4 motion.  So we weren't thinking that Your Honor would

5 either -- we had no view on whether Your Honor would report or

6 recommend or Judge Daniels would consider the motion in the

7 first instance.  Our view was simply that we wanted a schedule

8 for it.

9         MS. FERGUSON: Your Honor, Laura Ferguson.  Our view

10 is that the Damler [Ph.] case is a significant case

11 development and that it makes no sense to embark on a massive

12 pretrial briefing effort until Judge Daniels has a chance to

13 assess the motion for reconsideration and we will be before

14 Judge Daniels on March 4th.

15         THE COURT: Okay.

16         MR. YALOWITZ:  Just on that point, Your Honor.  We

17 did note that this particular motion for reconsideration is

18 the seventh time that the defendants have asked the court to

19 stay -- to dismiss the case and that the last time Judge

20 Daniels denied a motion like that he told them not to file any

21 more motions without engaging in a pretrial conference with

22 Your Honor.  So they may believe in their hearts that they're

23 going to win the case now that they've filed their seventh

24 motion to dismiss but I think just as a matter of order and

25 fairness to us to sort of spring it in the midst of this and

12

1  say stop the whole train change everything that you're doing

2  seems to use to be really unfair and inappropriate.

3          THE COURT: Well --

4          MR. YALOWITZ: I think Your Honor has the picture.

5          THE COURT: Let me point out to the parties again

6  Judge Daniels has very definite ideas about how this should

7  happen.  I think in this instance I don't think that there's

8  going to be any putting off of motions even if the defendants

9  feel confident.

10         What I can do for you is I can offer you relief in

11 scheduling.  I can offer you relief in how you present the

12 motions but if you're going to present any motions to Judge

13 Daniels, whether they be motions in limine, motions for

14 summary judgment, motions for reconsideration his idea is to

15 consider it altogether.

16         So I am -- I under -- and in that regard the

17 plaintiff's suggestion about putting the briefing schedules in

18 a way that the parties are responding to the multiple

19 submissions at the same time I think would be consistent with

20 the way Judge Daniels wants to do this as opposed to any kind

21 of piecemeal or any kind of other separate motions.  So no

22 bifurcating.  No decide this motion first.  Even if you divide

23 the motions into separate motions they will all be due at the

24 same time.

25         MS. FERGUSON: Your Honor, this is Laura Ferguson.

13

1  Then we do need some scheduling relief for the reasons we

2  stated in our January 27 letter.  The January 22nd proposed

3  joint pretrial order identified some 870 exhibits from

4  plaintiffs, about half of which are not in English.  We don't

5  have plaintiff's translations.  Numerous new witnesses were

6  identified.  Many of the documents on exhibit lists weren't

7  produced during the discovery period.  So it's a major

8  undertaking to deal with all of these documents and motions in

9  limine and the motions for summary judgment.

10         So we would ask to have until March 28th to do the

11 filings of the Daubert motions, the motions in limine and

12 motions for summary judgment.

13         THE COURT: And --

14         MR. YALOWITZ: Your Honor, would you wish to hear

15 from plaintiffs on this?

16         THE COURT: Yes.  Everybody gets their say so they're

17 on the record.

18         MR. YALOWITZ: Thank you, Your Honor.  With regard to

19 the timing the defendants have been planning to file summary

20 judgment since November 1st.  We've heard on many, many

21 occasions from the defendants, the court has heard that there

22 are going to be a lot of documents and a lot of witnesses.

23 They certainly knew that.  They brought that to the court's

24 attention.  As plaintiffs we've had a very difficult time

25 getting the case to this point.  We feel that we've worked

1  hard.  We know that the defendants have worked hard.  If it's

2  a matter of giving them an extra week as a reasonable

3  professional courtesy we're -- I don't want to object to

4  something that would be reasonable but really to go from

5  November to March without filing our summary judgment and in

6  limine motions seems to be quite [inaudible].

7          I would say that we heard that they couldn't

8  possibly get the joint pretrial order done by January 22 and

9  that there was going to be just a complete train wreck for

10  them and they wound up -- I must compliment them.  They were

11  extremely organized.  They did a very effective and efficient

12  job and they wound up with something like 69 trial exhibits

13  and seemed to be able to comply with the court's schedule

14  without any trouble.  So I think March 28th is really quite too

15  far.

16          MS. FERGUSON: May I respond, Your Honor?

17          THE COURT: Proceed.  Go ahead.

18          MS. FERGUSON: Yes.  So it's one thing in theory to

19  understand that the case involves a lot of documents.  It's

20  another to actually have the plaintiffs identify their

21  exhibits.  So we didn't have the exhibit list until January

22  22nd and as I said it's around 870 exhibits.  Plaintiff did not

23  produce copies of the exhibits.  We offered to exchange

24  copies.  They chose not to do so.  They declined to produce

25  translations of the exhibits.  So it's a major undertaking to

15

1    categorize these exhibits, locate them, to get them

2    translated, to prepare the motions in limine, and the summary

3    judgment motion has to be coordinated with the motions in

4    limine.

5           So the notion that we could have been preparing this

6    months before we got their exhibit list is simply not true.

7           MR. YALOWITZ: Your Honor, I apologize for the back

8    and forth but just one point on this.  I believe that the

9    defendants have all of the exhibits on the list.  Part of the

10   reason I believe that is because most of them either were

11   formally produced in discovery or were informally provided to

12   the defendants as part of the expert witness discovery that we

13   had in 2013 and I didn't get any requests from the defendants

14   or copies of any of the documents that they were having

15   trouble finding and indeed they filed an objection list with

16   very specific objections about every single document.  So they

17   must have had them by early January or they wouldn't have been

18   able to prepare that list.

19          MS. FERGUSON: This is Laura Ferguson.

20          THE COURT: Counsel, I understand your arguments.  So

21   you want relief on the date.  Any other relief that you're

22   looking for?

23          MS. FERGUSON: No, Your Honor.

24          THE COURT: Okay.  The conference that you had with

25   Judge Daniels, that's for the status conference?

16

1          MS. FERGUSON: Yes, Your Honor.

2          MR. YALOWITZ: It does appear that Judge Daniels

3   scheduled that for just a few days after the motions were due.

4   I assume that was purposeful on Judge Daniels part but we'll

5   go by whatever schedule you and he provide.

6          THE COURT: Okay.  All right.  Just -- Ms.

7   Ferguson --

8          MS. FERGUSON: Yes, Your Honor.

9          THE COURT: -- how many motions in limine are -- I

10  mean how many components to the motion in limine?  How many

11  experts [inaudible] you're dealing with?

12         MS. FERGUSON: We have 14 experts and then there's

13  numerous categories.  I mean essentially plaintiffs

14  [inaudible] kitchen sink [inaudible] to their exhibit list.

15  So there's numerous categories of documents that we need to

16  exclude.

17         THE COURT: So the motion in limine is about experts

18  and about documents?

19         MS. FERGUSON: Right.  They'll be one set of motions

20  in limine to exclude experts and then another set to exclude

21  various categories of documents.

22         THE COURT: I'll give you -- the odyssey will begin

23  on March 21st.  I want the parties to take the schedule that I

24  had presented initially and give me a unified schedule with

25  the other dates pushed back accordingly.

1          MS. FERGUSON: Your Honor, could we get an order that

2    the plaintiffs produce translations for their exhibits?

3          MR. YALOWITZ: Your Honor, this is --

4          MS. FERGUSON: It's a real challenge for us because

5    we don't have translations for any of the exhibits.

6          MR. YALOWITZ: Your Honor, I must say this is the

7    first time I'm hearing from the defendants that this is a

8    problem.  We'd be glad to work with them on providing

9    certified translations.

10          MR. ROSHAN:  Your Honor, that's nonsense.  We've

11    told them the problems with the translations and the exhibits

12    hadn't been given us immediately after they filed the joint

13    PTO and during the JPTO process.  This is Mark Roshan

14    speaking.

15          THE COURT: Okay.  Who --

16          MR. ROSHAN: So the notion --

17          THE COURT: I'm sorry.  I'm sorry.  Say your name

18    again.

19          MR. ROSHAN: Roshan, Mark.  The notion that this is

20    the first time they've heard about it is nonsense.  We've been

21    talking about this since before the JPTO was filed.  They

22    filed hundreds of pages with no translations.  We can't move

23    to exclude that which we don't know the content of which is

24    why we asked for March 28th because we're incurring the current

25    expense to try to get them translated.  That's why we need

18

1    until March 28th.  If we're not going to get that relief we

2    need the alternative relief of tell them to produce

3    translations.  This is a nonsense way to proceed because if

4    they're exhibits they have to be in the English language

5    because they've chosen to file suit in America.

6            THE COURT: Well, notwithstanding your approach to

7    making the application to the court, which I think was a

8    little bit over the top, I agree with the substance of what

9    you say, that is to the extent that they were presenting

10   exhibits, the exhibits should have been produced in English

11   and the parties should have agreed to the production of them

12   in English because I assume that you're going to run into some

13   problems with Judge Daniels if that has not been agreed to.

14           Mr. Yalowitz has indicated that whether you agree

15   with him or not that it had been brought up before.  I'm

16   directing the parties to get together and for the plaintiffs

17   to make sure that the defendants have translations, certainly

18   to the extent that the plaintiffs have translations.

19           We had an issue come up earlier concerning the

20   production of translation.  I trust that the parties will

21   discuss this and if you have any disputes as to how you're

22   going to arrange for the translation bring that to me as

23   quickly as possible so that we can make sure that Judge --

24   neither Judge Daniels or I need to make any adjustments.

25           So is there any question, Mr. Yalowitz, about what I

19

1    expect you to do?

2              MR. YALOWITZ: No.  Your Honor, I think that's fine.

3    I just -- please don't assume from my silence that I agree

4    with anything Mr. Roshan said but we would be happy to work

5    with the defendants to get them our translations and I assume

6    they're going to do their own translations to check up on us

7    anyway.  So we'll -- I don't think we're going to have a

8    problem with the translation issue.

9              THE COURT: Well, for the benefit of both of you, I'm

10   not making findings about who is making the correct

11   representation and who is not.  I will tell you that if it

12   ever comes to it I will have you -- I will have attorneys if

13   necessary sworn in front of me and we'll see who I find

14   most -- more credible.

15             I also want to point out, Mr. Roshan, that calm

16   detachment of legal argument works a lot better on me than --

17   even if you are upset.  So I don't know whether or not the

18   plaintiffs have caused you to be upset or rightfully so but

19   I'm only trying to deal with what will get this case ready for

20   Judge Daniels and if you have the force of logic on your side

21   it will win in the end.  In this case I think the translations

22   are appropriate.

23             MR. ROSHAN: Understood.  Thank you.

24             THE COURT: Is there anything -- I think it was Mr.

25   Yalowitz who said that there was something that you wanted to

20

1  discuss.

2          MR. YALOWITZ: Yes, Your Honor.  So the topic that we

3  need some guidance from the court on as to how to sort of

4  present it for decision has to do with the use of documents

5  that have been designated as confidential during discovery,

6  the use and filing of those both on summary judgment which is

7  coming up very soon, although not as quite as soon as it was

8  earlier, and ultimately at trial.

9          The confidentiality order is quite broad.  That's

10  fine for discovery but as Your Honor knows once we move to

11  summary judgment and trial the right of public access takes a

12  front seat and a compelling need for privacy is required to

13  overcome the right of public access.

14          We've raised the issue of confidentiality in part

15  with Judge Daniels in connection with the filing of the joint

16  pretrial order.  We've presented that to Judge Daniels for his

17  consideration, not only the joint pretrial order but this

18  issue of certain statements in it that the defendants would

19  like to keep out of the public domain and in addition to that

20  there are 169 documents that the defendants contend merit

21  confidential treatment at trial and on summary judgment and we

22  need a mechanism for the court to test those claims.

23          I don't think they need to be done document by

24  document.  I think they can be done by category but it's

25  important to the plaintiffs that justice be done in public

1  here and not in secret.  So we're looking for some guidance

2  from the court on whether we should present that issue by

3  letter or by letter perhaps a conference and in addition

4  should we present it to Your Honor in the first instance or to

5  Judge Daniels.

6         THE COURT: Okay.  Well, if I recall correctly the

7  confidentiality agreement had a provision that if the parties

8  were concerned about something being over designated

9  confidential there was a mechanism to bring that to the

10  court's attention.  Because the parties didn't take advantage

11  of that during the discovery process to the extent that you

12  want to use it in your motion -- in fact, I think there was an

13  ECF mechanism for that but -- are you -- I'm not sure.  Are

14  you saying that you don't want to submit them under seal or

15  you want them to be unsealed by either Judge Daniels or

16  myself?

17         MR. YALOWITZ: We don't want to submit them under

18  seal.  The court's -- the order's mechanism was for during

19  discovery, Your Honor, and you're remembering correctly that

20  the parties I think to the chagrin of Mr. Tolchin did not

21  avail themselves of the de-designation process with Your

22  Honor.  The truth is that the confidentiality order itself was

23  really extremely broad and I don't have an issue with the

24  breadth of it for purposes of discovery and the order does say

25  that the court will set a new mechanism for dealing with

22

1    hearings and trial.

2            So really we're sort of at the stage where the old

3    mechanism is perhaps out of date and there's now -- we need

4    some new rulings from the court on whether these things are

5    going to remain under seal and we would prefer to have that

6    ruling before summary judgment motions are due.  I'm happy to

7    use the mechanism in the order to present the issue to the

8    court.  I think we've reached impasse with the defendants on

9    this.  We have discussed it and exchanged letters.  So I think

10   we understand their position.  I'm happy to present that to

11   Your Honor.  I just didn't want to do it in a gun jumping way.

12           THE COURT: Okay.  Well, you -- as you recall, the

13   position I took with Mr. Tolchin as to how these things ought

14   to be raised and you're right that we're now in a different

15   stage of the litigation.  I think in the first instance while

16   you may have a desire to have everything in the light of day

17   during the motion process you may have to wait until the trial

18   process which is before Judge Daniels.  I don't want to -- at

19   this point I'd be less than desirous of opening up to the

20   parties the idea of now challenging those designations and

21   opening up to a whole host of submissions from both sides as

22   part of the discovery process.

23           Unless Judge Daniels thinks it's necessary to do

24   this I would not embark upon that process because don't think

25   there's a compelling reason to do it this late in the game.

1          MR. YALOWITZ: Your Honor, I apologize.  I may not

2    have -- I don't think I expressed clearly what I was trying to

3    accomplish.  I certainly don't want to go back and reopen all

4    of the confidentiality designations of the parties during

5    discovery.  There are many, many things that people exchanged

6    during discovery that they routinely designate as confidential

7    and I think the courts and the parties understand that most of

8    the -- the vast majority of things that are exchanged are

9    confidential never become what the -- what you would call

10   judicial documents.  They never become important or germane to

11   the judicial decision making process.

12          So I certainly don't want to revisit any of that but

13   now that we've -- both sides have prepared the JPTO we know

14   what exhibits the parties are planning to use for case

15   dispositive, potentially case dispositive motions as well as a

16   trial and the Second Circuit law on public access to those

17   documents is that there's a presumption of public access.  So

18   it's not the whole vast array of documents that we need

19   guidance on.  It's the documents that the plaintiffs have

20   indicated that we intend to use to oppose summary judgment and

21   to present to the jury at trial and those documents I think do

22   need to -- we do need a ruling from the court in connection

23   with the summary judgment motion just because of the Second

24   Circuit's standard on public access to summary judgment

25   papers.  So that's the guidance we're looking for.

24

1          THE COURT: Well, I understand your concern to public

2    access.  However, I think given how it's being raised to the

3    extent that you believe that any subset of documents by

4    description -- you're talking about classes of documents.

5          MR. YALOWITZ: Correct.

6          THE COURT: There's nothing to prevent you from

7    making that application at the time that you finalize your

8    submission to the court so that in the context of the motion

9    the court can also make the determination as to whether or not

10   documents are -- need to be kept confidential.

11          So certainly in the past I've had situations where

12   parties have indicated that during the process of briefing or

13   pretrial that certain documents which had been previously

14   designated as confidential should no longer be confidential

15   and in the context of trial the court would review them and

16   determine that they in fact should not be kept confidential

17   because they're going to be presented during the trial.

18          But as to -- I think your ultimate desire to do it

19   separately so that either I or Judge Daniels would rule on a

20   class of documents and say that they should not be

21   confidential because they [inaudible] speaking or that at

22   [inaudible] of confidential that people over designate during

23   discovery.  If you want to raise it as an issue I think it's

24   certainly timely enough to raise it at the time that you're

25   presenting the documents to the court so that there's not

25

1  duplication of effort.

2          MR. YALOWITZ: We'll proceed in that way, Your Honor.

3  Thank you for guidance.

4          THE COURT: Okay.  We'll be adjourned.  Obviously I

5  don't know whether this means that you're likely to still have

6  the conference with Judge Daniels but you submit an order for

7  me to sign which adjusts the dates.  I assume you all can work

8  on that together.

9          MS. FERGUSON: Yes, Your Honor.

10          THE COURT: All right.  We'll be adjourned.  Thank

11  you.

12          MR. YALOWITZ: Thank you, Your Honor.

13                      * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

26

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                                   _____

6                                       Shari Riemer

7   Dated:   February 12, 2014