# ARNOLD & PORTER LLP

Kent A. Yalowitz
Kent.Yalowitz@aporter.com

+1 212.715.1113
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

February 7, 2014

**BY ECF**

Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:    *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
               Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Ellis:

      We write in reply to defendants' February 4 response [DE 425] to our letter of February 3 [DE 424], which requested a briefing schedule for defendants' seventh motion to dismiss paralleling the schedule for summary judgment and *in limine* motions.

      Defendants have responded to plaintiffs' modest application for a briefing schedule (which was necessitated by defendants' violation of Judge Daniels' explicit order not to file any further motions without a pre-motion conference), with a demand to "stay" all summary judgment, *in limine* and other pre-trial briefing pending the disposition of their latest motion. Defendants state that they "firmly believe" this seventh motion is "case dispositive."

      Defendants' demand to be relieved from engaging in purportedly unnecessary work on summary judgment and *in limine* papers makes no sense. If defendants "firmly believe" that their new motion is "case dispositive," they are free to rest on that motion and forego the summary judgment and *in limine* motions they are preparing. Summary judgment motions are always optional, and it was *defendants* who requested summary judgment briefing in this case. Defendants cannot both insist that a summary judgment motion is no longer necessary *and* reserve the right to file one later (after their new motion turns out to be not so "dispositive" after all). Rather than enter a "stay," the Court should invite defendants to waive their summary judgment motion and rest on their supposedly "case dispositive" motion to dismiss. If defendants refuse to do so (effectively acknowledging that their new motion is not really "dispositive"), plaintiffs

# ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
February 7, 2014
Page 2

should not be forced to bear the burden and prejudice of further delay in the form of a pointless stay of this case until defendants' latest motion to dismiss is decided.

Defendants' demand to stay these proceedings is frivolous. Indeed, the motion to dismiss should be summarily denied, for three reasons, discussed below. *First*, as foreign political-governmental entities, the PA and PLO are simply not "persons" within the meaning of the Due Process Clause. *Second*, the *Daimler* case on which defendants rely concerned the application of the Fourteenth Amendment to corporate defendants, while this case concerns application of the Fifth Amendment to non-corporate defendants engaged in international commerce. Under applicable law, those differences matter. *Third*, this Court has *specific* personal jurisdiction over defendants because they killed and injured U.S. citizens as part of a campaign of terrorism conducted in order to influence U.S. government policy. These jurisdictional facts are intertwined with the merits of plaintiffs' liability case and therefore must be determined by the jury, if defendants' motion is not denied on other grounds before trial.

### 1. Defendants Do Not Have Due Process Rights.

The PA and the PLO do not have due process rights, because they are foreign political-governmental entities. There is no dispute that the PA is a non-sovereign governmental entity, as this Court and other judges of this District have held. *See e.g. Sokolow v. PLO*, 583 F. Supp. 2d 451, 457-58 (S.D.N.Y. 2008); *Knox v. PLO*, 306 F. Supp. 2d 424, 433-37 (S.D.N.Y. 2004). Similarly, "[t]he PLO is an organization dedicated to ends involving territorial and political rights, and thus inevitably has the characteristics of a 'political entity.'" *Palestine Information Office v. Shultz*, 674 F. Supp. 910, 916-17 (D.D.C. 1987), *aff'd*, 853 F.2d 952 (D.C. Cir. 1988).

As the court held in *Palestine Information Office*, because the PLO is a "foreign political entity," it simply "has no due process right under our Constitution or Laws." *Id.* at 919. That holding comports with the law of the Second Circuit, as well. In *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399-400 (2nd Cir. 2009), the Second Circuit held that "absent some compelling reason to treat foreign sovereigns more favorably than 'States of the Union,' it would make no sense to view foreign states as 'persons' under the Due Process Clause." *Id.* at 399 (discussing *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966), which held that "[t]he word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union.").

ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
February 7, 2014
Page 3

This rule is not limited to "States of the Union" or foreign "sovereigns" (which defendants are not), but is a rule of general applicability to governmental entities of any stripe. *See, e.g., In re Scott Cable*, 259 B.R. 536, 543 (D. Conn. 2001) ("Government entities have no right to due process under the Fifth Amendment's due process clause."); *City of East St. Louis v. Circuit Court for Twentieth Judicial Circuit, St. Clair County, Ill.*, 986 F.2d 1142, 1144 (7th Cir. 1993) ("Municipalities cannot challenge state action on federal constitutional grounds because they are not 'persons' within the meaning of the Due Process Clause."); *Puerto Rico Public Housing Admin. v. U.S. Dept. of Housing & Urban Development*, 59 F. Supp. 2d 310, 325 (D.P.R. 1999) (agencies were "intrinsically part of the Commonwealth of Puerto Rico," and thus "non-persons" under the Fourteenth Amendment without standing to pursue due process claims on their own behalf).

Defendants are well aware of this rule, which dooms their new motion, but failed to address it—not in their motion to dismiss, and not in their breathless letter claiming that *Daimler* is "case dispositive." Defendants' total silence on this threshold obstacle to their motion is an implicit acknowledgment that they cannot overcome it, and reason enough to summarily deny the motion—and certainly the frivolous demand for a "stay."

### 2. *Daimler* Is Inapposite to the Facts of This Case

Defendants also neglect to mention that the *Daimler* case was about "the Due Process Clause of the *Fourteenth Amendment*" as applied to foreign corporations engaged in international commerce. Slip op. at 2. This case does not implicate the Fourteenth Amendment, and defendants are not foreign corporations engaged in international commerce. Both of those facts matter.

*First*, if defendants had any due process rights at all—and they do not—their rights would be governed by the Fifth Amendment, not the Fourteenth. *See Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974); *SEC v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013).

Courts have held that due process rights under the Fifth Amendment are more constrained than due process rights accorded under the Fourteenth Amendment. *See, e.g., Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1271 (6th Cir. 1984). In *Handley*, the court explained that the Fourteenth Amendment's minimum contacts requirement serves two purposes: it not only "protects the defendant against the burdens of litigating in a distant or inconvenient forum" but also "ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.* (internal quotation marks and citation

# ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
February 7, 2014
Page 4

omitted). Obviously, the second of those functions—limiting the states to their proper role in the federal system—does not apply "[w]hen a federal court is hearing and deciding a federal question case." *Id.* Thus, in analyzing the defendants' *Fifth* Amendment due process rights, the court held that it was concerned "only with whether the district court's assertion of jurisdiction unfairly burdened [the defendant] with the requirement of litigating in an inconvenient forum." *Id.*; *see Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 294 (3rd Cir. 1985) ("Although the minimum contacts test established by *International Shoe* is itself a fairness inquiry, the scope of that inquiry necessarily acknowledges that the constitutionality of a state's assertion of *in personam* jurisdiction reflects territorial limitations on the power of an individual state. Those strictures of fourteenth amendment due process analysis which attempt to prevent encroachment by one state upon the sovereignty of another do not apply with equal force to the adjudication of a federal claim in a federal court.") (footnote omitted).

   Here, not only are the concerns about limiting state power absent, but plaintiffs are proceeding under the Antiterrorism Act ("ATA"), a statute governing matters as to which the powers of Congress and the President are at their zenith—national security and the protection of United States citizens from overseas terrorist attacks. "Congress has articulated the United States' strong interest in compensating American victims of terrorism . . . . Private tort actions directed at compensating victims of terrorism and thwarting the financing of terrorism vindicate the national and international public interest." *Wultz v. Bank of China Ltd.*, 811 F. Supp. 2d 841, 848 (S.D.N.Y. 2011) (withdrawn on other grounds) (citations, brackets, quotation marks and ellipsis omitted).

   Defendants do not even claim that they are unfairly burdened with the requirement of litigating in the United States—which is the Fifth Amendment standard as explained by *Handley* and *Max Daetwyler*. Such a claim would be frivolous, given defendants' multi-billion dollar annual budget, their physical headquarters and large staff in Washington, D.C. and New York, and their continuous and systematic activities across the United States.

   *Second*, unlike defendants, Daimler AG is a corporation engaged in international commerce. It is not at all obvious that the *Daimler* Court's protection of corporations engaged in international commerce can be extended to non-corporate non-commercial political entities such as defendants. The *Daimler* Court identified a corporate defendant's place of incorporation and principal place of business as the "paradigm" forum for assertion of general jurisdiction because it was concerned with ensuring "greater predictability" in suits against corporations through "[s]imple jurisdictional

# ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
February 7, 2014
Page 5

rules." Slip op. at 19 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010)); *id*. at 23 ("unpredictable applications of general jurisdiction based on activities of U.S.-based subsidiaries could discourage foreign investors") (citing U.S. *Amicus Curiae* Brief).

There is no reason to believe that *Daimler* sought to provide "greater predictability" to non-corporate foreign political entities who engage in terrorism. Indeed, few entities involved in terrorism are headquartered or incorporated in the United States, and creating "[s]imple jurisdictional rules" and "greater predictability" for such entities is not practicable, necessary, or desirable.

Defendants cannot seriously claim that the *Daimler* Court intended its due process analysis to apply to *all* defendants. Aside from its careful use of the term "corporation," *Daimler* left intact the rule that "an individual defendant whose only contact with a forum State is a one-time visit will be subject to general jurisdiction if served with process during that visit." Slip op. at 18 (Sotomayor, J. concurring) (citing *Burnham v. Superior Court of Cal., County of Marin*, 495 U.S. 604 (1990)). Nor did *Daimler* overthrow the traditional rule is that the physical presence of an agent suitable for service of process in the forum "subjects the foreign corporation to the general jurisdiction of the [local] courts in matters to which [the forum's] tenuous relation would not otherwise extend." *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.* 486 U.S. 888, 892-93 (1988); *see In re Hohorst*, 150 U.S. 653, 663 (1893). To the contrary, the Court specifically left this question open. Slip op. 17 ("we need not pass judgment on invocation of an agency theory in the context of general jurisdiction").

Thus, the best defendants can hope for is an extension of *Daimler* to this case, and it will be their heavy burden to persuade this Court that *Daimler*'s concerns about creating simple, predictable rules for the benefit of corporate "foreign investors" should be extended to protect foreign political entities like the PA and PLO which use terrorist violence to achieve their goals. A hoped-for extension of new law is not the stuff of "case dispositive" motions that supersede the Court's previously entered schedule.

### 3. The Court Has Specific Personal Jurisdiction Over Defendants

In our letter of February 3, we explained that the facts showing the Court's specific jurisdiction over defendants are intertwined with the facts as to merits issues, and that in such cases the jurisdictional issue should await a decision on the merits. *See* 2 Moore's Federal Practice ¶ 12.31[5] & n.14.2 (2013 ed.).

Defendants baldly counter that "there are no factual issues to be decided in resolving Defendants' personal jurisdiction motion." That claim is amazing. Plaintiffs

## ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
February 7, 2014
Page 6

intend to prove that in mid-2000, defendants concluded that they were unable to achieve their political goals through U.S.-sponsored negotiations (which collapsed in July 2000, for which defendants blamed the U.S. and Israel), and began to try to achieve those goals through a resort to terrorist violence. Defendants therefore launched and conducted a terror campaign, which lasted several years, explicitly aimed at influencing the policy of the United States government in favor of defendants' political aims and demands. Plaintiffs' evidence will include expert testimony, as well as official statements by defendants and their leaders directed to and against the United States, which link defendants' terrorist campaign to U.S. policy and actions, and condition its halt on a change in U.S. policy and actions to favor defendants.

Such assertions and evidence goes, of course, to the merits. Plaintiffs must prove under the ATA that defendants' conduct appeared to be intended "to intimidate or coerce a civilian population," or "to influence the policy of a government by intimidation or coercion." *See* 18 U.S.C. § 2331(1)(B).[1] But by proving these facts, plaintiffs will also establish facts relevant to the exercise of specific personal jurisdiction—namely that defendants engaged in actions "expressly aimed at the forum state." *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008) (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)) (ellipsis omitted); *accord Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 54 (D.D.C. 2000) (Iraq's conduct "had a direct effect in the United States and *was consciously designed to affect United States policy*…. It is reasonable that Iraq be held to answer in a United States court for acts of terrorism against United States citizens.") (emphasis added).

Defendants contend that, to find specific jurisdiction, the violent crimes at issue must have occurred on U.S. soil. That is not correct. In *In re Terrorist Attacks*, the Second Circuit cited with approval five prior decisions exercising specific jurisdiction over defendants responsible for terrorist attacks that occurred outside the United States. *See In re Terrorist Attacks*, 538 F.3d at 93-94. Moreover, "[i]n determining whether minimum contacts exist, a court looks to the relationship among the defendant, the forum,

---

[1] This has been plaintiffs' consistent allegation. As Judge Daniels has explained, plaintiffs allege that the terrorist attacks in this case were part of a campaign of terrorism conducted by defendants in order "to influence the policy of the United States and Israeli governments in favor of accepting defendants' political goals and demands." *Sokolow*, 583 F. Supp. 2d at 454; *see* First Amended Compl. ¶ 128; Joint Pretrial Order at 6.

# ARNOLD & PORTER LLP

Hon. Ronald L. Ellis
February 7, 2014
Page 7

and the litigation.  The court's focus should be whether the exercise of jurisdiction is reasonable *under the circumstances of the particular case*."  *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196-97 (2nd Cir. 2000) (citations, quotation marks, brackets and emphasis added).  Where, as here, "the defendant has substantial contacts with the forum (even if not sufficient to establish general jurisdiction), the court may accept a more attenuated relation between the defendant's contacts with the forum and the plaintiff's cause of action."  *Del Ponte v. Universal City Development Partners, Ltd.*, 2008 WL 169358 at *10 (S.D.N.Y. Jan. 16, 2008); *see Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998).  Judge Daniels has already found that defendants have two permanent offices, a large staff and extensive activities across the United States.  Thus, even assuming *arguendo* that those contacts were "not sufficient to establish general jurisdiction" under *Daimler*, they are highly relevant to the overall jurisdictional calculus.

   Shockingly, defendants claim in their letter that "Judge Daniels has explicitly rejected the theory of specific jurisdiction Plaintiffs seek to advance."  That is completely false.  Judge Daniels merely followed every other case against these defendants, holding that general jurisdiction was enough, without reaching the issue of specific jurisdiction.

* * *

   Given the facial lack of merit to defendants' motion, and their unexcused violation of the Court's order in filing it, the Court would be well within its discretion to deny defendants' motion summarily.  If the Court indulges defendants by considering the motion after full briefing, defendants should not be permitted to delay the case further.  Briefing of summary judgment and *in limine* motions, as well as this latest motion, should proceed as proposed in our letter of February 3, which conforms to the schedule for briefing on all motions.  To the extent defendants' motion is not rejected on legal grounds—as it should be—issues of fact regarding jurisdiction are for the jury to decide.

                  Respectfully,

                   Kent A. Yalowitz

cc:  All ECF Counsel