# Exhibit C

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

Date:                          Military Court in Samaria                    File No.:

**Before the Honorable Judges:**        **Maj. Yariv Navon**    **– President of the Court**
                                        **Lt. Col. Moshe Ohad**  **– Judge**
                                        **Lt. Col. Yair Tzadok**  **- Judge**

**The Military Prosecution**
(represented by Counsel, Capt. Inbar Ben Simon)

**– v. –**

**The Defendant: Salah Mohamed Hussein Salah Buhari  Identity No.: 907933667**
(represented by Counsel, Adv. Naji Amar)                    **(detainee – present)**

Court reporter: Pvt. Elinor Zubatov
Interpreter: Sgt. Amir Nimr

**Date of the hearing: August 4, 2011**

**The Court identifies the Defendant.**
**The Defendant declares that he is represented by Adv. Naji Amar.**

<u>**Sentence**</u>

<u>**Summary of the facts of the case with respect to which the Defendant was convicted**</u>

The Defendant who stands before us was convicted pursuant to his guilty plea, within the framework of a plea bargain, of the following offenses:

a.    **Attempt to intentionally cause death**, with respect to his involvement in a terrorist attack which took place in Neve Shaanan Street in the old Central Bus Station of Tel Aviv on January 25, 2002. At the request of Nasser al-Shawish (hereinafter: "**Nasser**"), the Defendant transported the two terrorists who carried out the attack – Sawafat Khalil, a.k.a. "**Shabah**", and Jawad Shalhati, a.k.a. "**Baha**", to the home of a person whom he knew, a resident of Tira in Israel. Subsequently, the Defendant and the two terrorists traveled to the Tel Aviv Central Bus Station. The two of them got out of the taxi, and the Defendant instructed Baha to obey Shabah's instructions, and from there, he continued traveling toward Tira. Shortly thereafter, as they approached Neve Shaanan Street, Shabah told Baha

1

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

that he was about to blow himself up, by means of the explosive charge that was in his possession, and even explained to Baha that, immediately thereafter, he should open fire, using the Kalashnikov rifle that was in his possession, at the persons who were present on the scene, including the rescue forces, in order to increase the number of casualties. A few minutes thereafter, Shabah carried out a suicide bombing attack next to a café in Neve Shaanan Street, by detonating the explosive charge that he was carrying, when dozens of innocent passers-by were on the scene. When Baha heard the explosion, he threw away the bag that contained the rifle and began to run away from the scene, but was arrested by a policewoman. As a result of the explosion, dozens of passers-by were wounded with varying degrees of severity, and great damage was caused to adjacent shops and business premises. Shortly after he left the scene, the Defendant heard from the taxi driver who was transporting him about the terrorist attack that had taken place. The Defendant spoke with Nasser by telephone; shortly thereafter, he met with him and gave him back the balance of the money that he had received from him immediately prior to the terrorist attack.

b.    **Membership in a proscribed organization** – In June 2002, the Defendant joined a military squad belonging to the Palestinian Islamic Jihad organization. In October 2002, the Defendant recruited Tariq Basallat (hereinafter: "**Tariq**"). Within the framework of that membership, the Defendant carried out that which shall be described below.

c.    **Trading in war materiel** – Subsequent to that which has been described above, the Defendant purchased a pistol from another person for the purpose of carrying out military activity. Subsequently, the Defendant handed over his weapon to another person, and, around January 2003, the Defendant fired his pistol at the funeral of Ahmad Jadallah.

d.    **Placing an explosive charge** – Shortly after September 2002, in the Hussein al-Manar Square in Nablus, the Defendant detonated an explosive charge made out of a gas cylinder weighing 15-20 kg, against a tank operated by the security forces.

e.    **Firing at a person** – In November 2002, when the Defendant, who was armed with his pistol, and his armed comrades noticed a military vehicle that was carrying soldiers, the Defendant's comrades fired at the vehicle in question.

f.    **Conspiracy for the purpose of intentionally causing death** – Within the framework of a plan to carry out suicide bombings and to kidnap soldiers in order to have Marwan Barghouti released in exchange for them, Nasser asked the Defendant if he knew a method of kidnapping soldiers. The Defendant proposed to Nasser the kidnapping of two Jews who

2

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

were known to the Defendant by bringing them to the Taiyibe roadblock. This plan was not implemented because the necessary funds were not transferred. Subsequently, at the end of 2002, the Defendant and his comrades in the military squad planned to carry out a suicide bombing attack through the use of a car bomb that was to be detonated by one of them, who even expressed his consent to do so. For that purpose, the Defendant and his comrades acquired a stolen Israeli car, 2 gallons of sulfuric acid and a sack of fertilizer and attempted to prepare explosives from those materials, but did not succeed. In 2003, the Defendant proposed to Rauf Khalili the perpetration of a joint terrorist attack by the al-Aqsa Martyrs Brigades and the Palestinian Islamic Jihad. The Defendant asked Khalili to find a suicide bomber; the Defendant was to look after the remaining preparations. This plan was also not implemented, as a result of Khalili's arrest.

g.  **Attempt to intentionally cause death** – at the end of 2002 [or] the beginning of 2003, the Defendant proposed to Shadi Bahlul (hereinafter: "**Bahlul**") the perpetration of a suicide bombing attack through the use of an explosive belt, and Bahlul agreed to do so. The Defendant filmed Bahlul with a video camera, with Hamas and Palestinian Islamic Jihad flags behind him, while Bahlul read out verses from the Koran and his will. The Defendant also arranged for the preparation of the explosive belt in the Defendant's apartment, by means of another person. On February 6, 2003, the Defendant and another person placed the explosive belt, which weighed approximately 20 kg, on Bahlul's body, and the Defendant subsequently asked Tariq to drive Bahlul in a taxi to Taiyibe. For that purpose, the Defendant gave Bahlul a mobile telephone and NIS 1,500. On the way, the Defendant telephoned Tariq and informed him that people on his behalf were checking out the road for them. When they encountered a military roadblock, Tariq and Bahlul returned to Tulkarm and proceeded from there on foot to Taiyibe. When their attempts to locate a taxi for the purpose of entering Netanya proved fruitless, the Defendant was informed by Tariq of their location and of police presence in the area. The Defendant gave Tariq the telephone numbers of some of his acquaintances, for the purpose of helping them get into Israel, but to no avail. Accordingly, the Defendant proposed that Bahlul should perpetrate the terrorist attack by blowing himself up, through the use of the explosive belt, at a roadblock of the security forces in the Taiyibe area, but Bahlul refused. Subsequently, Bahlul and his comrades were arrested on their way back to Nablus and the explosive belt was confiscated. When the Defendant learned of their arrest, he tore up Bahlul's will and reported to the headquarters in Syria on what had happened. ***The sentencing evidence and arguments by the parties***

3

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

The Military Prosecution submitted the record of the Defendant's previous convictions to us for study. The record includes one conviction, in 1993, of security offenses, with respect to which he served five years' actual imprisonment. Also submitted to us for study were photographs documenting the scene of the terrorist attack in Neve Shaanan Street in Tel Aviv; expert opinions and photographs, from which the serviceability and quality of the explosive belt that constitutes the object of the seventh count of the indictment could be learned; and many medical records, attesting to the injuries that were sustained by the passers-by in the old Central Bus Station as a result of the terrorist attack that constitutes the object of the first count of the indictment. The medical documents attest to many injuries, of varying degrees of severity, from shock with no physical injury, to shrapnel wounds, fractures, multiple penetration wounds, burns and so forth. Some of the injured were hospitalized and even underwent surgery.

Within the framework of the defense's sentencing evidence, the Defendant and his mother testified. They both describe the circumstances that led the Defendant to carry out the offenses of which he was convicted; the fact that they were perpetrated during a different period of time, from the standpoint of security; and the fact that the Defendant's arrest cut short a protracted period of time during which he had chosen a new course and had not perpetrated any additional offenses.

In the sentencing arguments, the prosecuting attorney pointed out that the amended indictment attests to a developing series of offenses, at the height of an unbearably grave intifada. This, according to her definition, was a series of despicable, cruel and wicked activities, which were fraught with terrorism and hatred and dipped in the blood that was shed in the heart of the State of Israel. The Accused, according to her statement, played a central role and became more and more dangerous. This was borne out by his central and significant role in a terrorist attack in the heart of Tel Aviv, in which dozens of passers-by were wounded, as reflected by the incomplete medical documentation and the photographs of the scene, which were submitted to the Court for study. The Defendant did not merely perpetrate this grave terrorist attack; rather, he continued to pursue and promote the path of terrorism. His course included various offenses, culminating in an additional attempt to carry out a suicide bombing through the use of an explosive belt in the city of Netanya – an attempt which, quite fortunately, did not succeed.

In his sentencing arguments, the defense attorney sought to attribute decisive importance to the time that had elapsed between the perpetration of the offenses and the Defendant's arrest, as well as to the fact that he had not repeated his misdeeds since then. According to his statement, the cessation of this activity at the height of the intifada indicates true remorse, which should therefore be encouraged by the Court. In addition, according to his statement, the fact that, for

4

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
[www.legaltrans.com](www.legaltrans.com)

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

many years, the security forces had not taken the trouble to arrest the Defendant can also corroborate the argument to the effect that he is not dangerous. The element of deterrence is not required in this case, because the Defendant, in any event, desisted from his activity many years prior to his arrest.

In addition, the defense attorney stated that the Defendant had committed the offenses as a result of pressure that was exerted upon him by entities which, for a variety of reasons, he could not resist. The prosecuting attorney objected to this argument, which, as she claimed, deviated from the facts that were set forth in the amended indictment, to which the Defendant had pleaded guilty within the framework of the plea bargain.

In this regard, it is fitting and proper to cite verbatim a statement that was made in the Supreme Court in Criminal Appeal 8314/03, **Rajah bin Awad v. State of Israel**. That case concerned a person who had been convicted of manslaughter. The Appellant sought to rely, as grounds for clemency, on the argument that the knife had been brought to the scene of the offense by the victim – the deceased – and not by the Appellant, although this was not stated in the indictment to which he had pleaded guilty. The Supreme Court ruled as follows:

> *There is a new custom in the State, in which defendants plead guilty to an indictment that is filed against them – whether before or after the amendment of the indictment – and then, in the sentencing arguments, seek to rely on evidence that had not been brought before the Court at the time of the decision and which concerns the event of the offense. This custom deserves to be eradicated from Court proceedings. A plea of guilty to the facts described in the indictment means that those facts are what constitutes the infrastructure of the sentence that is to be pronounced upon the defendant. If a defendant, in the sentencing arguments, wishes to add and to rely on additional facts concerning the relevant event, it is incumbent upon him to obtain the agreement of the prosecution thereto in advance, and the prosecution may ask to add additional agreed evidence of its own. However, if there is no agreement with regard to the submission of the events from the police file, it is neither fitting nor proper to rely upon facts that have to do with the event that constitutes the object of the Court proceeding, when the facts in question are not described in the indictment and no agreement has been reached between the defense and the prosecution with respect thereto. This is true as a general rule, and it is true in the matter   at hand. And in the words of the Court of first*

5

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

> instance: **'The origin of the knife cannot be relied upon for either clemency or severity.'**

We shall also refer to Criminal Appeal 6182/02, **Ivanov v. State of Israel**, in which the Supreme Court ruled as follows:

> *In this situation, it may be assumed that, if the prosecuting attorney at the time believed that the indictment was deficient and did not adequately reflect that which actually took place at the scene, she and her client, the Appellant, would have refrained from giving their agreement to it… In this regard, we shall add that, in addition to the advantages conferred upon the litigants by the plea agreement, it also has limitations, which the parties voluntarily took upon themselves…*

In the matter at hand, no agreement whatsoever was given by the prosecution for bringing evidence in accordance with that which has been set forth above, and no such evidence was brought. Quite the opposite is true: the prosecution **expressly** clarified, within the framework of its sentencing arguments, that this factual version was not acceptable to it, and that no evidence supporting it had been brought. More precisely: had the defense believed that the evidence proved the factual version claimed by it – i.e., that the Defendant was forced to commit the offenses of which he was convicted, as a result of pressure that was exerted upon him, it may be presumed that it would not have agreed to have the Defendant plead guilty to the amended indictment without such a statement being included therein; or, at the very least, that it would have asked to bring evidence to that effect, when it had the possibility of doing so.

In addition to that which has been set forth above, it should be added that the Defendant's statements, on which the defense attorney sought to rely, and which, pursuant to a difference of opinion between the parties, were submitted to us for study, do not include any express reference to pressure that was exerted upon the Defendant to perpetrate the offenses attributed to him. Quite the opposite is true. The statements reveal and portray a picture of a person who was extremely determined to perpetrate grave activity directed against the security of the area, while forging contacts with various activists. Even if, at times, he expressed his fears to his comrades, this cannot lead to a deduction that the acts were forced upon him. At the outset of his first statement to the police on December 14, 2009, on page 2, lines 23-25, the Defendant, in this context, even said the following: "**I regret everything that I did; in fact, I did many things; this was in 2001 and up to 2003, and since 2003 and up to the day of my arrest, I did nothing; I abandoned all of the military activity, and I decided to live with my wife and children, like other people.**"

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

## *The gravity of the offenses of which the Defendant was convicted*

The positions of the parties as to the proper sentence in this case are diametrically opposed. Accordingly, the decision in this case is by no means easy. We have before us a Defendant who took part in a series of grave security offenses, including a grave terrorist attack, starting from the initial stages thereof and up to the wounding of dozens of innocent passers-by. We are dealing with offenses which placed the lives of many in real danger and which were founded on criminal intent. On more than one occasion, the Military Court of Appeals has expressed its definitive opinion that, in offenses of this type, it is necessary to adopt a strict approach which will constitute significant deterrence. In Judea and Samaria Appeal 60/02 + 61/02, **Yaqub Zaid and Omar Atatra**, the following was ruled in this context:

> *"Those who decide to kill indiscriminately must know that the judiciary system will prosecute them to the full extent of the law, and if severe punishments as set forth above do not deter them and bring them to reconsider their actions, time and again, before setting out to accomplish their plans, they will, at least, keep them away from the public for a prolonged period of time and thereby eliminate the danger which they could be expected to cause if they were to go free."*

There can be no dispute that the Defendant's actions are extremely grave, and that the Court must convey a sharp, clear message of retribution and deterrence where offenses of this type are concerned. It is necessary to impose severe punishments in cases of criminal terrorist acts which endanger the lives of human beings – both civilians and soldiers. The Supreme Court, in Criminal Appeal 9349/07, **Ismail Hamad v. State of Israel** [not published; see the statement by the Honorable Justice Procaccia dated June 23, 2008], even made the following statement with regard to that need:

> *The State of Israel has a supreme duty of protecting its residents, including the Israel Defense Forces soldiers who are in charge of State security. Terrorist acts, which aim to harm the lives of Israelis – soldiers or civilians – require especially severe sentencing, which will inculcate the message of retribution and deterrence against everyone involved in illegal, life-endangering activity. The Court of first instance correctly assumed that, with regard to offenses of this type, the weight ascribed to the Defendant's personal circumstances is dwarfed by the gravity of the acts and the danger inherent therein. Let every person who is hostile to the State and its residents know*

7

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

> *that he may expect an especially severe sentence, if he is found*
> *to have been involved in terrorist operations intended to impair*
> *the security of Israel's citizens and to take lives…*

The gravest aspect of the case at hand involves the Defendant's conviction of two counts of attempt to intentionally cause death. In this context, in Judea and Samaria Appeal 103/03, **Dar-Musa**, the Court – as stated by the president of the panel, Lt. Col. Yoram Haniel, who was Deputy President of the [Military] Court of Appeals (as his title was then) – ruled as follows:

> *At the outset, I would like to emphasize that, in an offense such*
> *as the one before us, it is necessary to adopt a strict approach. I*
> *believe that the Court must clearly express the full strength of*
> *the repugnance and disgust that it has for such acts. The*
> *danger foreseen for the entire public as a result of these*
> *offenses is great, and is intended to cause bodily harm to others*
> *and to instill terror and fear among the population of the Area.*
> *In addition, its objective is to disrupt the course of daily living*
> *and the delicate fabric of the reciprocal relationship between*
> *the populations of the Area.*

And subsequently:

> *There can be no doubt that the gravity derived from these acts*
> *is principally due to the harm to human life… Accordingly, the*
> *consideration of deterrence should be preferred over other*
> *considerations in sentencing. We had a good reason to*
> *emphasize, in a series of judgments, that, in such a situation,*
> *all of the personal considerations recede before the public*
> *interest, which requires special attention to the extent of the*
> *deterrence.*

In Judea and Samaria Appeal 2064/05, **Nadel Dar al-Sheikh**, the president of the Court, Col. Y. Mina, ruled with regard to the character of the offense:

> *There can be no doubt that this – the attempt to intentionally*
> *cause death – is one of the gravest offenses in the penal code,*
> *and that it is not far removed from actually causing death.*

Notwithstanding that which has been set forth above, we must examine – in the case at hand, as in any case – not only the nature of the offenses, but also the circumstances thereof, the Defendant's personal circumstances, and his chances for rehabilitation. Only by weighing all of the considerations for sentencing will it be possible to pronounce the proper sentence upon the

8

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

Defendant (see Military Court Appeal 1517/09, **Military Prosecutor v. Mahlouf** (not yet published)).

### *The Defendant's role and share in the perpetration of the offenses*

*The Defendant, in accordance with that which has been set forth above, took part in the perpetration of many grave security offenses, the purpose of which was to cause the death of citizens of the State of Israel, merely because they were Israeli citizens, and various attempts to harm the security forces as well. The Defendant constituted a significant element, and his involvement, although it extended over a relatively brief period of time, was neither marginal nor accidental, as his defense attorney attempted to present it. This was not a one-time slip, but a protracted series of grave security offenses, which extended over a period of approximately one year.

In this context, it should be noted that the first count of the amended indictment attests to a well-planned terrorist attack, which was carried out with great determination by all of the parties involved, and which led to an extremely grave outcome, in which the deaths of some of the victims was only avoided by a miracle. Although the Defendant did not initiate the plan to carry out the terrorist attack, he agreed to assist in its execution and took part in important, advanced stages, which, in the end, brought about the terrorist attackers' entry into the heart of Tel Aviv and the completion of their mission – the detonation of the explosive belt by the suicide bomber. The Defendant's actions indicate that he wished to achieve the certainly foreseeable outcome of the detonation of the explosive belt in question – i.e., the death of innocent civilians – although, quite fortunately, this outcome, in the end, was not fully achieved.

And as if this were not enough, apparently as a result of the success of the terrorist attack in question, the Defendant joined the ranks of the Palestine Islamic Jihad. Within the framework of that organization, he went on to perpetrate additional serious offenses, and even developed – this time, at his own initiative – a number of plans for perpetrating suicide bombings in Israel, *inter alia* by means of explosive belts. To this end, as set forth in the seventh count, the Defendant himself, through his cronies, made all of the preparations required for that purpose, including the preparation of an explosive belt; the training of the perpetrators; the supply of means and assistance to the perpetrators, even after they set out, by researching the access routes to the intended location for them. In practical terms, the Defendant did everything that could be done in order to accomplish this suicide bombing, and when he found out about the difficulties involved in the perpetration thereof, he made an alternative proposal, pursuant to which the terrorist attack would be carried out in Taiyibe, and not in Netanya. It can be seen that the Defendant was

9

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

extremely determined and eager for his plan to succeed, and no credit for the fact that, in the end, it did not succeed can be attributed to him.

There are many considerations to the Defendant's detriment in the case at hand, and the heavy cumulative weight of those considerations appears to make it necessary to ensure that the grave offenses in which he failed are reflected in a way that constitutes a sufficient deterrent. We cannot overstate the consequences of the Defendant's acts, which only miraculously ended with no loss of human life. We must principally examine the gravity of the Defendant's acts in light of his intention, which can be clearly learned from the deeds he performed, the means at his and his comrades' disposal, and the initiative and determination that accompanied him.

In light of the Defendant's part in perpetrating the grave offenses of which he was convicted, and primarily his having been involved "up to the neck" in the suicide bombing, in which dozens of persons were wounded, and in the plan that he concocted for the perpetration of an additional terrorist attack in Israel by means of an explosive belt, as set forth above, we wonder how the request for sentencing by the learned defense attorney – pursuant to which we were asked to pronounce a sentence which, as he defined it, "would be measured in terms of a few years" (the defense attorney even expressly stated a figure of four to five years' actual imprisonment!) – could serve the public interest, as he argued.

### *Life imprisonment for attempt to intentionally cause death*

In its sentencing arguments, the military prosecution requested a sentence of life imprisonment for the Defendant. According to the Prosecution, the Defendant's involvement in an attempt to cause the death of innocent passers-by in the Tel Aviv Central Bus Station – which, fortunately, caused nothing worse than injuries, some of them severe – along with an additional attempt at a terrorist attack, which was cut short against the Defendant's will and ambition, makes it necessary to remove him from human society forever. The request by the military prosecution in this context is based on the **Nawfal** ruling (Judea and Samaria Appeal 120/02 + 122/02), in which the president of the Military Court of Appeals at the time, Col. Shaul Gordon, ruled that there are circumstances under which it is appropriate to sentence defendants to life imprisonment, even if they "only" perpetrated offenses of attempt to intentionally cause death, notwithstanding the fact that, in our judicial awareness, this sentence is set aside for persons who actually and intentionally truncated the life of another human being.

10

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

Justification for imposing life imprisonment upon a person who attempts to take another's life is based on the following arguments, as set forth in Appeal 1625/07, **Military Prosecution v. Ayman Yusuf Ahmad Abu Daoud**:

a.  In the offense of attempt, the criminal is not punished for the outcome of his acts – since, after all, he did not succeed in implementing his intentions – but rather, precisely for his intentions, and the closer he was to carrying out those intentions, the higher the bar of his risk to be sentenced to life imprisonment.

b.  The hesitation, by the Courts in the Area, to pronounce a sentence of life imprisonment on persons who were convicted of offenses of attempting to intentionally cause death results from the fact that this is not possible in Israel, although the circumstances in the Area are very different from those in Israel, which, in principle, involve criminal offenders, and not the perpetrators of terrorist attacks.

c.  The penal doctrine must adapt itself to the difficult security conditions prevailing in the Area.

d.  There is no reason for the Court to *a priori* eliminate from its awareness the possibility of imposing a sentence of life imprisonment on a person who unsuccessfully attempted to commit murder.

e.  In Criminal Appeal 2630/93, **State of Israel v. John Doe**, *PDI* 46 (D) 1, the Honorable Justice J. Kedmi emphasized that: ***"The maximum sentence set forth under law is meant to be imposed in practical terms, and should not be considered as 'lip service' or as an 'abstract concept' from the world of values."***

Naturally, it is impossible to compose a closed list of cases in which persons who only committed the offense of attempting to intentionally cause death can be sentenced to life imprisonment. Nonetheless, it is possible to point out signs indicative of such cases:

a.  A considerable number of attempts to take human lives.

b.  How nearly the complete offense was perpetrated.

c.  Cruel means by which the defendant attempted to cause the victim's death.

d.  The volatile nature of the offense.

11

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

However, Col. Shaul Gordon, the president at the time, repeatedly emphasized **the rule** which must be observed, as set forth in the above cited **Nawfal ruling**, as follows:

> **This being the case, and so as not to deviate from the principle which requires a more lenient sentence for the offense of attempt, a practice has taken shape, pursuant to which the sentence for the offense of attempting to intentionally cause death, even if it is likely to be measured in terms of long years in prison, will not amount to life imprisonment.**

We believe that, although the military prosecution's request for a sentence of life imprisonment is a reasonable, proper and obvious request, in light of the Nawfal ruling and the conditions determined for its applicability, and although we devoted considerable debate to the question of whether to apply it in the case at hand, we decided, in the end, not to do so. A number of considerations led us to this conclusion, as shall be set forth below:

1. ***The level of punishment that was determined with regard to the accomplices***

The parties submitted the sentences of the Defendant's accomplices to us for study.

In this context, we have seen fit to call the attention of the military prosecution to the fact that some of the sentences of the accomplices were submitted by it without attaching the judgment that was handed down by the Military Court of Appeals. In some cases, the Court of Appeals even allowed the appeal and intervened in the sentence imposed!

We do not believe (Heaven forbid) that this omission was deliberate or was intended to deceive the Court. Nonetheless, we expect the prosecuting attorney and her staff to make a reasonable effort, as the defense attorney did and as the Court itself did, and – before submitting a decision by any procedural instance as a reference document for their arguments – to first check whether an appeal has been filed  from that decision and what the outcome of the appeal was, and to append it, so that the picture that is presented to the Court will be full and complete.

We shall examine the matter of the accomplices, from the least to the most severe sentences:

**Jamil Fukha** (File 3955/06) was convicted of a number of offenses, including **collaboration in attempting to intentionally cause death**, for his part in the event, which constitutes the object of the seventh count of the amended indictment before us, in that, at the Defendant's request, he

12

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

helped to place the explosive belt on the terrorist's body. **The Court of first instance sentenced Jamil to 16 years' actual imprisonment.** His appeal was denied.

**Shadi Bahlul** (File 5597/03) was convicted of **attempting to intentionally cause death**, for his part in the event, which constitutes the object of the seventh count of the amended indictment before us, in that, at the Defendant's request, he agreed to carry out a suicide bombing through the use of an explosive belt. The Court of first instance sentenced Shadi to 30 years' actual imprisonment. Shadi's appeal was accepted and his sentence was reduced to **20 years' actual imprisonment**.

**Jawad Shalhati** (File 5504/02) was convicted of **attempting to intentionally cause death**, for his part in the event, which constitutes the object of the seventh count of the amended indictment before us. According to his role, Jawad was supposed to fire on the persons who were present at the scene, including the rescue forces who arrived at the scene after the suicide bomber blew himself up and he caused dozens of persons to be injured. The Court of first instance sentenced Jawad to **life imprisonment**. Jawad's appeal was accepted and his sentence was reduced to **30 years' actual imprisonment**.

**Tariq Basallat** (File 5596/03) was convicted of **attempting to intentionally cause death**, for his part in the event, which constitutes the object of the seventh count of the amended indictment before us. Tariq transported the terrorist who was supposed to blow himself up through the use of an explosive belt. **The Court of first instance sentenced Tariq to life imprisonment. Tariq's petition to extend the deadline for filing an appeal was denied by the Military Court of Appeals, because it was filed approximately one year after the sentence was handed down.**

It behooves us to consider the sentences of the accomplices and to examine whether there are differences that justify deviating from the punishment that was determined for them. In this context, the decision in Criminal Appeal 9792/06 stated as follows:

> *The principle of uniform punishment is an important rule, which is intended to prevent the existence of discrimination between equal or similar persons, in order to do justice with defendants and for the purpose of retaining the public's trust in criminal proceedings. However, this principle has a relative weight, compared to the remaining considerations for sentencing, and if there are weightier considerations which justify deviating from it for reasons of justice and the public interest, the Court must deviate from it and must give*

13

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

*preference to other considerations for sentencing, as the Court*
*itself has said.*

As can be seen, the Military Court refrained from pronouncing a sentence of life imprisonment upon the persons involved in the attempts to intentionally cause death that were attributed to the Defendant in the case at hand (with the exception of Tariq, whose case we shall discuss below), and merely pronounced sentences of imprisonment for a predetermined number of years. The persons in question included, *inter alia*, those who actually set out to perpetrate suicide bombings, with the clear intention of causing the death of as many innocent persons as possible.

On the other hand, the Military Court saw fit to sentence Tariq to life imprisonment for his share in transporting the suicide bomber, who was supposed to blow himself up through the use of an explosive belt, as set forth in the seventh count of the indictment before us. This sentence, albeit peremptory, was not reviewed by the instance of appeal, because an appeal in his case was not filed in a timely manner. It appears that, even though the sentence was peremptory, in light of the attitude recently displayed by the Military Court of Appeals with regard to the appropriate penalty for offenses of attempt, and in view of the remaining considerations set forth below, we do not find that his sentence requires us to pronounce an identical sentence.

2.    ___The time that elapsed between the perpetration of the offenses and the Defendant's arrest___

The Defendant perpetrated the offenses of which he was convicted in the years 2002-2003. The Defendant was arrested on December 8, 2009 – i.e., approximately seven years after the perpetration thereof. Since then, it has not been argued that he perpetrated or was convicted of other offenses. According to his statement, he even chose to leave that path and to live the life of a family man.

The decision in Judea and Samaria Appeal 2635/05, **Mohamed Abu Mahlouf v. Military Prosecutor**, stated in this context:

> *In fact, the passage of time, in and of itself, can sometimes*
> *constitute an explanation for leniency in sentencing. As I see it,*
> *however, this is a kind of secondary test: if time has elapsed*
> *since the offense was perpetrated, and no additional offenses*
> *were perpetrated, then it may be assumed that the offender has*
> *abandoned his evil way, and, accordingly, there is a degree of*
> *justification for not dealing severely with him, in light of his*
> *new choice to follow the path of righteousness and goodness.*

14

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

The penal doctrine has not stagnated and must always adapt itself to the changing reality (see Judea and Samaria Military Court Appeal 93/01, **Military Prosecutor v. Salaima**). Even the Military Courts have not exempted themselves from taking into account the changes in the security conditions in the Area. As a general rule, this has been reflected in more stringent sentencing, in light of the increasing numbers of terrorist actions. This, however, does not rule out the possibility of more lenient sentencing during a period of relative calm.

No one can dispute that the offenses of which the Defendant was convicted were committed during a period when terrorist attacks were at their height (and the references which were submitted to us for study by the prosecution also refer to that difficult time). Nor can there be any dispute that the reality of today is different. Although the hands of the security forces still appear to be full to overflowing with the work of thwarting and prevention, it cannot be said that today's reality resembles that which prevailed during the period when the Defendant committed the offenses of which he was convicted. We believe that the long time that has elapsed between the perpetration of the offenses and the filing of the indictment (by contrast to his accomplices, who were sentenced shortly after the offenses were committed; nor have we heard a satisfactory explanation from the prosecution regarding the circumstances of the Defendant's belated arrest), along with the changes in the times and in the Defendant's ways – even though they do not constitute definitive considerations with regard to sentencing – represent an additional stratum in our decision not to sentence the Defendant to life imprisonment, but sufficed with pronouncing a sentence of imprisonment for a predetermined number of years.

3. ***The attitude of the Military Court of Appeals with regard to the proper sentence under similar circumstances***

Since the **Nawfal** ruling was handed down, and especially in recent years, in many cases no less grave than this one, the Military Court of Appeals has **refrained** from sentencing the defendants to life imprisonment, and has sufficed with pronouncing a sentence of imprisonment for a predetermined number of years.

Examples of such cases include a case where a suicide bomber armed with an explosive belt set out, at the command of the Appellant, to perpetrate a suicide bombing in the streets and was arrested shortly before doing so (see Appeal 1086/09, **Hashem Rabhi Mahmoud Qatuni**); another case in which a number of shooting attacks at police vehicles were perpetrated, as a result of which **a policeman was wounded in all parts of his body**, and seven bullets were also fired at an additional vehicle (Appeal 1625/07, **Military Prosecution v. Ayman Yusuf Ahmad Abu Daoud**); the case of a person who repeatedly attempted to bring suicide bombers into the

15

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
[www.legaltrans.com](www.legaltrans.com)

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

territory of the State of Israel, and whose sentence, like the sentences of the other persons involved in that case, was for a predetermined number of years (Appeal 1601/09, **Iyad Ahmad Hussein Fawajra v. Military Prosecution**); a case in which a person was convicted of 13 counts that were attributed to him in an amended indictment, including three offenses of membership in a proscribed organization, two offenses of planting a bomb; three offenses of attempt to intentionally cause death; two offenses of firing at a person, and three offenses of trading in war materiel – in which the Court sentenced that defendant to 33 years' actual imprisonment (see Appeal 4889/08, **Durjam Shuhana v. Military Prosecution**).

In the **Abu Aysha Case** (Judea and Samaria Appeal 2637/05, **Muhannad Mahmoud Mohamed Abu Aysha v. Military Prosecutor**), the circumstances of which resemble the circumstances which are presently at hand, the Court of first instance convicted the appellant of seven grave offenses, including one offense of conspiracy for the purpose of intentionally causing death and an additional offense of attempting to intentionally cause death. With regard to the latter offense, the judgment stated that the appellant had prepared an explosive belt for a suicide bomber and had instructed the suicide bomber in how to operate it, but that, in the end, the terrorist attack had not been perpetrated. The parties agreed on ranges of sentencing, and the sentencing arguments varied from 10 years' imprisonment (the position adopted by the defense) to 30 years' imprisonment (the prosecution's position). The Court of first instance rejected the arrangement and sentenced the appellant to life imprisonment. An appeal that was filed before the Military Court of Appeals was allowed by common consent; the Court restored the arrangement and sentenced the Appellant to 30 years' imprisonment, which does not deviate from the ranges in the arrangement that was reached by the parties.

This is also what happened in the **Majdi Jaber Case** (Appeal 1458/07, **Majdi Amin Jalal Jaber v. Military Prosecutor**), in which the appellant had been convicted by the Court of first instance of grave offenses, including collaboration in an attempt to intentionally cause death, in that he manufactured an explosive belt, by means of which a suicide bombing was carried out, in which three Israel Defense Forces soldiers were wounded and the terrorist himself was killed. The parties agreed on a sentence of 24 years' actual imprisonment, but the Court of first instance rejected the arrangement and sentenced the appellant to life imprisonment. An appeal by the defense was accepted; while the prosecution initially argued that it objected to the acceptance of the appeal, it later stated, after additional consideration, that it would uphold the arrangement, although it felt that the arrangement was wrong. In its decision, the Court stated, *inter alia*, that: "**A sentence of 24 years' imprisonment is not a light sentence, even if it is somewhat lenient**

16

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

**with the Appellant. It cannot justify the decision by the Court of first instance, which sentenced the appellant to life imprisonment.**"

In recent years as well, the Military Court of Appeals has considered this issue, in the matter of **Iyad Masimi** (Appeal 3869/07). An appeal by the defense was allowed, and the sentence of life imprisonment which had been pronounced for the appellant, with respect to his involvement in the terrorist attack at the "Mayor" shwarma stand at the Tel Aviv Central Bus Station, in which 35 persons were wounded with varying degrees of severity, was set aside. Instead, the Military Court of Appeals sentenced the appellant to 30 years' actual imprisonment.

There are many reasons for indecision in the case at hand. On the one hand, the multiple offenses, the gravity thereof, the severe injuries sustained by many innocent civilians and the Defendant's contribution to those injuries indicate that the request for sentencing by the military prosecution is not unfounded. It is a known fact that dispatching a suicide bomber, as the Defendant did in the case at hand, is comparable to pulling the trigger of a rifle (Judea and Samaria Appeal 183/03 + 190/03, **Military Prosecutor v. Jarar**). By sending out the terrorist, the Defendant actually completed his part, and from the standpoint of punishment based on sanctions directed against the Defendant's actions, he deserves the punishment reserved for those whose attempts were nearly completed. In fact, there have been many cases (some of which were even submitted to us for study by the military prosecution) in which, under circumstances similar to the present case, the Court actually pronounced a sentence of life imprisonment.

At the same time, the Military Court of Appeals ruled that it is fitting and proper for the maximum punishment set forth under law to be reserved for the gravest cases, in order to preserve the distinction between the offense of attempt and its older sister, intentionally causing death. It was ruled that it is appropriate for a sentence of life imprisonment to be imposed for the perfected offense, within the framework of which human lives were taken, whereas the punishment for the offense of attempt should be a severe one, in order to reflect the distinction between the two and the value of the sanctity of life.

Therefore, in light of the passage of time, the principle of uniform punishment and the need to make a proper correlation and ranking between the sentences that were imposed upon the various accomplices and the sentence to be imposed upon the Defendant in the case at hand – and even though his role was more prominent than theirs, a fact that will be reflected in the sentence which we have decided to impose upon the Defendant – we believe it would not be appropriate to sentence him to life imprisonment.

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

## *The Defendant's personal circumstances and their effect on the sentence*

The case at hand is an extremely grave one. The Defendant did everything he could in order to ensure the success of the terrorist attacks. He accompanied and organized the activity, starting in the first stages thereof, and oversaw the attempts to bring the perpetrators to carry out that which had been planned. In fact, the actual outcome of the events was only a hair's breadth away from that which the Defendant and his accomplices had planned to do. Under these circumstances, it appears that the "attempt" is extremely close to the perfected offense. On the other hand, there are no significant special circumstances, except for his having pled guilty within the framework of the plea bargain – which undoubtedly saved considerable time for the Court – and the change in his lifestyle in recent years, which was reflected in his having started a family and refrained from perpetrating any new offenses. The Defendant's last statement, within the framework of the sentencing arguments, in which he expressed sorrow and asked us to forgive him in light of the long time that had elapsed and the change in his lifestyle, also constituted a consideration for us in determining his sentence; in practical terms, it succeeded in obtaining some leniency for him.

We believe that, even if preferential status is given to all of the arguments in favor of leniency, as set forth above, the public interest will still be unable to accept a light sentence, such as that suggested by the distinguished defense attorney. Beyond the shadow of a doubt, under the existing circumstances, the public interest will require us to emphasize the gravity of the Defendant's acts. Even though the request by the military prosecution to sentence the Defendant to life imprisonment, as set forth above, is not an improper one in light of the multiple offenses and especially in light of the "nearness of the outcome" as set forth in the first count, in light of the grounds which have been set forth above, we have decided to impose the following sentences upon the Defendant:

a.    **38 years' actual imprisonment, starting on the date of his arrest.**

b.    **24 months' suspended imprisonment, for a period of five years from the date on which he leaves prison, provided that he does not commit an offense pursuant to Regulations 84 + 85 of the Defense Regulations (Time of Emergency) or any offenses related to the possession or manufacture of, or the trading in, war materiel.**

c.    **4 years' suspended imprisonment, for a period of five years from the date on which he leaves prison, provided that he does not commit an offense pursuant to Sections 209, 210 of the Security Provisions [Combined Version] Order (Judea and Samaria) (No. 1651), 5770-2009, or pursuant to Regulation 58 (a) of the Defense Regulations (Time**

18

*Translated from the Hebrew*
*Rina Ne'eman Hebrew Language Services, Inc.*
www.legaltrans.com

Military Prosecution v. Salah Mohamed Hussein Salah Buhari (detainee)

**of Emergency), including an attempt, solicitation or collaboration in committing such an offense.**

**The Court has provided the parties with a copy of the sentence.**

**Right of appeal within 30 days.**

**Handed down and announced, August 4, 2011, in the presence of Counsel for the parties and the Defendant.**

| _____ | _____ | _____ |
|---|---|---|
| Yair Tzadok 54678313 | | |
| **Judge** | **President of the Court** | **Judge** |

The wording of this document is subject to changes in phrasing and editing.

With regard to editing and changes in case law documents, legislation and the like on the Nevo website – click here

19

התביעה הצבאית נ׳ צלאח מוחמד חוסין צאלח בוח׳אארי (עצור )

| תיק מס׳ : | בית המשפט הצבאי בשומרון | תאריך : |
|---|---|---|

בפני כבוד ההרכב: רס״ן יריב נבון    - אב״ד
            סא״ל משה אוהד    - שופט
            סא״ל יאיר צדוק    - שופט

**התביעה הצבאית**

(באמצעות ב״כ סרן ענבר בן סימון)

נגד

**הנאשם : צלאח מוחמד חוסין צאלח בוח׳ארי**     **ת.ז : 907933667 (עצור – נוכח)**

(באמצעות ב״כ עו״ד נאג׳י עאמר)

רמי״שית : טור׳ אלינור זובטוב

מתורגמן :סמל אמיר נימר

**תאריך הדיון : 04/08/11**

**בית המשפט מזהה את הנאשם.**

**הנאשם מצהיר כי מייצג אותו עו״ד נאג׳י עאמר.**

## ג ז ר ד י ן

### תמצית המסכת העובדתית בגינה הורשע הנאשם

הנאשם שלפנינו הורשע על פי הודאתו, במסגרת הסדר טיעון, בעבירות הבאות :

א. **ניסיון לגרימת מוות בכוונה**, בגין מעורבותו בפיגוע שהתרחש ברחוב נווה שאנן בתחנה המרכזית הישנה בתל אביב בתאריך 25/01/02. לבקשתו של נאצר אלשווויש (להלן – **״נאצר״**), הוביל הנאשם את שני המחבלים אשר ביצעו את הפיגוע - צוואפת חליל המכונה **״שבח״** וג׳ואד שלחתי המכונה **״בהאא״**, לביתו של אדם אותו הכיר, תושב טירה שבישראל. בהמשך, נסעו הנאשם ושני המחבלים לתחנה המרכזית בתל אביב. השניים ירדו מהמכונית והנאשם הורה לבהאא למלא אחר הוראותיו של שבח, ומשם המשיך בנסיעה לכיוון טירה. בסמוך לאחר מכן, בהתקרבם לרח׳ נווה שאנן אמר שבח לבהאא כי הוא עומד לפוצץ את עצמו באמצעות מטען החבלה שברשותו ואף הסביר לבהאא כי מיד לאחר מכן עליו לפתוח באש באמצעות רובה הקלצ׳ניקוב שברשותו לעבר הנוכחים, לרבות כוחות החילוץ וההצלה, על מנת להגדיל בכך את מספר הנפגעים. דקות ספורות לאחר

1



מכן, ביצע שבח התאבדות בסמוך לבית קפה ברחוב נווה שאנן, בהפעילו את מטען
החבלה אותו נשא, עת שהו במקום עשרות עוברי אורח תמימים. כששמע בהאא את
הפיצוץ, השליך את התיק בו הרובה והחל להימלט מהמקום, אך נעצר על ידי שוטרת.
כתוצאה מהפיצוץ נפצעו עשרות עוברי אורח בדרגות פציעה שונות, וכן נגרם נזק רב
לחנויות ולבתי עסק סמוכים. בסמוך לאחר עזיבתו את המקום, נודע לנאשם מפי נהג
המונית שהסיעו אודות הפיגוע שבוצע. הנאשם שוחח עם נאצר טלפונית, ובסמוך לאחר
מכן פגשו והחזיר לו יתרת הכסף שקיבל ממנו עובר לפיגוע.

**ב.** **חברות בהתאחדות בלתי מותרת** – ביוני 2002, הצטרף הנאשם לחוליית צבאית השייכת
לארגון הגא״פ. באוקטובר 2002, גייס הנאשם לחולייה זו את טארק בצלאח (להלן –
״**טארק**״). במסגרת חברותו זו, ביצע הנאשם את המתואר להלן.

**ג.** **סחר בציוד מלחמתי** – בהמשך למתואר לעיל, רכש הנאשם אקדח מאחר לשם ביצוע
פעילות צבאית. בהמשך מסר הנאשם את נשקו לאחר, ובסמוך לחודש ינואר 2003, ירה
הנאשם באמצעות אקדחו בלוויית אחמד גיאדאללה.

**ד.** **הנחת מטען חבלה** – בסמוך לאחר חודש ספטמבר 2002, בכיכר חסין אלמנאר בשכם,
הפעיל הנאשם מטען חבלה מבלון גז במשקל 15- 20 ק״ג, וזאת כנגד טנק של כוחות
הביטחון.

**ה.** **ירי לעבר אדם** – בחודש נובמבר 2002, עת הבחינו הנאשם המצויד באקדחו וחבריו
החמושים ברכב צבאי המוביל חיילים, ירו חבריו של הנאשם לעבר הרכב האמור.

**ו.** **קשירת קשר לגרימת מוות בכוונה** – במסגרת תוכנית לביצוע פיגוע התאבדות וחטיפת
חיילים על מנת לשחרר תמורתם את מרואן ברגותי, שאל נאצר את הנאשם האם הוא
מכיר שיטה לחטיפת חיילים. הנאשם הציע לנאצר לחטוף 2 יהודים המוכרים לנאשם ע״י
הבאתם למחסום טייבה. תוכנית זו לא יצאה אל הפועל בשל אי העברת המימון הנדרש.
בהמשך, בשלהי שנת 2002, תכננו הנאשם וחבריו לחוליית הצבאית לבצע פיגוע התאבדות
באמצעות מכונית תופת אשר תופעל על ידי אחד מהם, אשר אף הביע הסכמתו לכך. לשם
כך, רכש הנאשם וחבריו רכב ישראלי גונב, 2 גלוני מי אש ושק דשן וניסו להכין מן
החומרים הללו חומר נפץ, אך ללא הצלחה. בשנת 2003, הציע הנאשם לראון חלילי לבצע
פיגוע משותף של ״גדודי חללי אל אקצא״ וה״גא׳פ״. הנאשם ביקש מחלילי לאתר מחבל
מתאבד בעוד הנאשם ידאג ליתר ההכנות. אף תוכנית זו לא יצאה אל הפועל עקב מעצרו
של חלילי.

**ז.** **ניסיון לגרימת מוות בכוונה** – בשלהי שנת 2002 תחילת 2003, הציע הנאשם לשאדי בהלול
(להלן – ״**בהלול**״) לבצע פיגוע התאבדות באמצעות חגורת נפץ ובהלול הסכים. הנאשם
צילם את בהלול במצלמת וידאו כשמאחוריו דגלי החמא״ס והגא״פ, בעוד בהלול מקריא
פסוקי קוראן ואת צוואתו. הנאשם פעל אף להכנת חגורת הנפץ באמצעות אחר, בדירתו
של הנאשם. בתאריך 06/02/03, הלבישו הנאשם ואחר את חגורת הנפץ שמשקלה כ - 20
ק״ג על גופו של בהלול, ובהמשך ביקש הנאשם מטארק להסיע את בהלול במונית לטייבה.
לשם כך, מסר הנאשם לבהלול פלאפון ו – 1,500 ₪. בדרכם, התקשר הנאשם לטארק
ועדכן אותו כי אנשים מטעמו בודקים עבורם את הדרך. משנתקלו במחסום צבאי, חזרו

טארק ובהלול לטול כרם ומשם המשיכו רגלית לטייבה. משניסיונותיהם לאתר מונית
לצורך כניסה לנתניה עלו בתוהו, עודכן הנאשם ע״י  טארק באשר למיקומם ובדבר
נוכחות משטרתית באזור. הנאשם מסר לטארק מספרי טלפון של מכריו לצורך סיוע
בכניסתם לישראל, אך ללא הועיל. בשל כך, הציע הנאשם כי בהלול יבצע את הפיגוע בכך
שיפוצץ עצמו באמצעות חגורת הנפץ במחסום של כוחות הביטחון באזור טייבה, אך
בהלול סרב. בהמשך, נעצרו בהלול וחבריו בדרכם חזרה לשכם וחגורת הנפץ נתפסה. עת
נודע לנאשם דבר מעצרם, קרע את צוואתו של בהלול ודיווח למפקדה בסוריה על שאירע.

### ראיות לעונש וטענות הצדדים

התובעת הצבאית, הגישה לעיוננו את גיליון הרשעותיו הקודמות של הנאשם המכיל הרשעה אחת
משנת 1993 בעבירות ביטחוניות, בגינן ריצה 5 שנות מאסר בפועל. כמו כן, הוגשו לעיוננו תצלומים
המתעדים את זירת הפיגוע ברחוב נווה שאנן בתל – אביב; חוות דעת ותצלומים מהם ניתן ללמוד
על תקינותה וטיבה של חגורת הנפץ נשוא פרט האישום השביעי וכן מסמכים רפואיים רבים בנוגע
לפציעות שנגרמו לעוברי האורח בתחנה המרכזית הישנה בעקבות הפיגוע נשוא הפרט הראשון. מן
המסמכים הרפואיים ניתן ללמוד על פציעות רבות, בדרגות חומרה שונות, החל מהלם ללא חבלת
גוף וכלה בפציעות מרסיסים, שברים, פצעי חדירה מרובים, כוויות ועוד. חלק מן הפצועים אושפזו
בבתי החולים ואף נותחו.

במסגרת ראיות הגנה לעונש העידו הנאשם העידו הנאשם ואימו. השניים תיארו את הנסיבות אשר הובילו את
הנאשם לבצע את העבירות בהן הורשע, את העובדה כי בוצעו בתקופה שונה מבחינה ביטחונית וכי
מעצרו של הנאשם, גדע תקופה ממושכת בה בחר בדרך חדשה ולא ביצע עבירות נוספות.

בטיעוניה לעונש ציינה התובעת, כי כתב האישום המתוקן מלמד על מסכת הולכת ומתפתחת של
עבירות, בשיאה של אינתיפאדה קשה מנשוא. מדובר כהגדרתה, במסכת של פעילות נתעבת,
אכזרית ומרושעת, רווית טרור ושנאה וטבולה בדם שנשפך בליבה של מדינת ישראל. הנאשם
לדבריה נטל חלק מרכזי והפך מסוכן יותר ויותר. כך באשר לחלקו המרכזי והמשמעותי בפיגוע
בלב תל אביב בו נפצעו עשרות עוברי אורח, כמשתקף במסמכים הרפואיים החלקיים ותצלומי
הזירה אשר הוגשו לעיון בית המשפט. הנאשם לא הסתפק בפיגוע קשה זה אלא המשיך בדרך
הטרור ואף טיפח אותה. דרכו זו כללה עבירות שונות, ולבסוף אף ניסיון נוסף לבצע פיגוע
התאבדות באמצעות חגורת נפץ בעיר נתניה, אשר למרבה המזל לא צלח.

בטיעוניו לעונש, ביקש הסנגור ליתן משקל מכריע לחלוף הזמן מאז ביצוען של העבירות ועד
מעצרו של הנאשם, ולעובדה כי מאז לא חזר על מעשיו. לדבריו, הפסקת פעילותו זו בשיאה של
האינתיפאדה מלמדת על חרטה אמיתית ולכן על בית המשפט לעודדה. כמו כן לדבריו, העובדה כי
במשך שנים רבות לא טרחו כוחות הביטחון לעצור את הנאשם, אף בה יש כדי לחזק את הטענה
בדבר העדר מסוכנות מצידו. אלמנט ההרתעה במקרה זה אינו נדרש, מאחר והנאשם ממילא חדל
מפעילותו שנים רבות טרם מעצרו.

כמו כן ציין הסנגור, כי את העבירות ביצע הנאשם בשל לחץ שהופעל עליו על ידי גורמים להם לא יכול היה להתנגד מסיבות שונות. התובעת התנגדה לטיעון זה, החורג לטענתה מעובדות כתב האישום המתוקן בו הודה הנאשם במסגרת הסדר הטיעון.

לעניין זה, ראוי להביא כלשונם את הדברים שנאמרו בביהמ"ש העליון ב-ע"פ 8314/03 רג'אח בן עווד נ' מדינת ישראל. באותו מקרה דובר במי שהורשע בהריגה. המערער ביקש להסתמך, כנימוק לקולא, על הטענה שהסכין הובאה לזירת העבירה בידי הקורבן-המנוח ולא בידי המערער, אף שהדבר לא צוין בכתב האישום שבו הודה. ביהמ"ש העליון קבע :

> " מינהג חדש בא למדינה, שנאשמים מודים בכתב-אישום המוגש נגדם – בין
> לפני תיקונו של כתב-האישום בין לאחר תיקון בו – ובטיעון לגזר-הדין מבקשים
> הם להסתמך על ראיות שלא הובאו כלל לבית-המשפט בעת הכרעת-הדין ואשר
> עניינן באירוע העבירה. מינהג זה ראוי לשרשו מהליכי בית-משפט. הודאה
> בעובדות המתוארות בכתב-אישום פירושה הוא שאותן עובדות הן המהוות
> תשתית לגזר-הדין שייגזר על הנאשם. אם מבקש נאשם להוסיף ולהסתמך,
> בטיעון לגזר-הדין, על עובדות נוספות מן האירוע שלעניין, שומה עליו להסכים
> על-כך מראש עם התביעה, ואפשר תבקש התביעה להוסיף ראיות מוסכמות
> נוספות משלה. ואולם באין בידי הסכם על הבאתן של עובדות מתוך תיק המשטרה,
> אין כל נכון וראוי להסתמך על עובדות הנסבות על האירוע נושא הדיון, עובדות
> שאינן מתוארות בכתב-האישום ואשר בעניינן לא נעשה הסכם בין הסניגוריה
> לבין התביעה. כך על דרך הכלל וכך בעניינו. וכלשונו של בית-משפט קמא: "אין
> להסתמך לעניין מקורה של הסכין לא לקולה ולא לחומרה".

וכן נפנה לע"פ 6182/02 איוונוב נ' מדינת ישראל, שם נקבע ע"י ביהמ"ש העליון :

> "במצב זה מותר מותר להניח, כי אם סברה הסנגוריה דאז שכתב-האישום
> לוקה בחסר ואין בו ביטוי הולם לאשר התרחש בזירה בפועל, היו
> נמנעים היא ולקוחה, המערער, מלתת לו את הסכמתם... לעניין זה
> נוסיף, כי בצד היתרונות שמקנה הסכם הטיעון לבעלי הדין, יש בו גם
> מגבלות אותן נטלו הצדדים על עצמם מרצון..."

בעניינננו, לא ניתנה הסכמה כלשהי מטעם התביעה להבאת ראיות כאמור, ואלה אף לא הובאו. להיפך, התביעה הבהירה במפורש, במסגרת טיעוניה לעונש, כי גרסה עובדתית זו אינה מקובלת עליה, וכי לא הובאו לה ראיות. ודוק : אילו סברה ההגנה שהראיות מוכיחות את הגרסה העובדתית לה היא טוענת, דהיינו שהנאשם אולץ לבצע את העבירות בהן הורשע בשל לחץ

התביעה הצבאית נ' צלאח מוחמד חוסין צאלח בוחיארי (עצור )

שהופעל כלפיו, חזקה שלא הייתה מסכימה להודות בכתב האישום המתוקן מבלי שהדברים
ייכללו בו ; ולמצער, הייתה מבקשת להביא ראיות לכך, בעת שהייתה האפשרות פתוחה בפניה.

על כך יש להוסיף כי אמרותיו של הנאשם עליהן ביקש הסניגור להסתמך ובשל המחלוקת בין
הצדדים הנוגש לעיננו, אינן כוללות כל התייחסות מפורשת ללחץ שהופעל על הנאשם לבצע את
המיוחס לו. ההיפך הוא הנכון. מן האמרות עולה ומצטיירת תמונה של מי אשר היה נחוש ביותר
לבצע פעילות קשה נגד ביטחון האזור, תוך יצירת קשרים עם פעילים שונים. אף אם לעיתים
הביע בפני חבריו את חששותיו, לא ניתן להסיק מכך כי המעשים נכפו עליו. בפתח אמרתו
הראשונה במשטרה מיום 14/12/09 בעמוד 2 שורות 23- 25, אף אומר הנאשם בהקשר זה את
הדברים הבאים : **"אני מתחרט על כל מה שעשיתי, אני אכן עשיתי הרבה דברים, זה היה בשנת
2001 ועד לשנת 2003 ומאז שנת 2003 ועד ליום מעצרי אני לא עשיתי דבר, עזבתי את כל
הפעילות הצבאית והחלטתי לחיות עם אשתי וילדיי כמו שאר האנשים"**.

<u>**חומרת העבירות בהן הורשע הנאשם**</u>

עמדות הצדדים באשר לעונש הראוי במקרה זה קוטביות לחלוטין. לכן, ההכרעה במקרה זה אינה
קלה כל ועיקר. עניין לנו בנאשם אשר נטל חלק בשורה של עבירות ביטחוניות חמורות, לרבות
בפגיעת חמור, החל משלבית הראשונים ועד לפציעתם של עשרות עוברי אורח תמימים. עסקינן
בעבירות אשר סיכנו באופן ממשי את חייהם של רבים וזאת בכוונה נפשעת. לא אחת הביע בית
המשפט הצבאי לערעורים דעה נחרצת כי בעבירות כגון דא, יש לנקוט בגישה מחמירה, שיחה בה
משום הרתעה משמעותית. בע' איו"ש 60/02+61/02 **יעקב זיד ועומר עטאטרה**, נפסק בהקשר זה
כך :

> *"על אלה הקמים להרוג ללא הבחנה לדעת כי מערכת המשפט תנהג עמם
> בכל חומר הדין, ואם לא יהיה בעונשו מחמירה כאמור כדי להרתיעם,
> ולהביאם לשקול צעדיהם פעם ופעמיים קודם שייגשו להגשמת
> תוכניותיהם, הרי שיהיה בה, לכל הפחות, להרחיקם מן הציבור לתקופה
> ממושכת ובכך להסיר את הסכנה הצפויה מהם בהתהלכם חופשי."*

אין חולק, כי מעשיו של הנאשם מופלגים בחומרתם וכי על ביהמ"ש להעביר מסר חד וברור של
גמול והרתעה בסוג כזה של עבירות. יש צורך לענוש עונשים קשה עברייניות טרור המסכנת חיי אדם
- אזרחים וחיילים כאחת. כך אף ציין ביהמ"ש העליון בע"פ 9349/07 **איסמעיל חאמד נ' מדינת
ישראל** [לא פורסם, ראה דברי כב' השופטת פרוקצ'יה מיום 23/6/08] על צורך זה :

> *" מדינת ישראל חבה חובה עליונה להגן על תושביה, ובכלל זה גם על
> חיילי צה"ל המופקדים על ביטחון המדינה. מעשי טרור המכוונים לפגוע*

5



התביעה הצבאית נ' צלאח מוחמד חוסין צאלח בוחיאארי (עצור )

> *בחיי ישראלים – חיילים או אזרחים – מחייבת ענישה מחמירה במיוחד,*
> *אשר תטמיע את מסר הגמול וההרתעה כלפי כל מי שמעורב בפעילות*
> *בלתי חוקית המסכנת חיים. צדק בית המשפט קמא כאשר הניח שבסוג*
> *זה של עבירות הנסיבות האישיות של הנאשם מתגמדות במשקלן לנוכח*
> *חומרת המעשים והסיכונים הטמונים בהם, למען יידע כל גורם עויין*
> *למדינה ולתושביה כי הוא צפוי לעונש חמור ביותר אם יימצא מעורב*
> *בפעולות טרור שנועדו לפגוע בביטחון אזרחי ישראל, ולקטול חיים...".*

עיקר החומרה במקרה שלפנינו טמון בהרשעת הנאשם בשתי עבירות שעניינן ניסיון לגרימת מוות
בכוונה. בהקשר זה, ב-ע"י אי"ש 103/03 **דאר-מוסא,** קבע בית המשפט לעניין עבירה זו מפי האב"ד
סא"ל יורם חניאל, סגן נשיא ביהמ"ש לערעורים  (כתוארו אז) :

> *"כבר בראשית הדברים, ברצוני להדגיש כי בעבירה כמו זו העומדת לפנינו, יש*
> *לנקוט בגישה מחמירה. סבור אני כי על ביהמ"ש לבטא באופן ברור את עצמת*
> *הסלידה ושאט הנפש שיש לו נוכח מעשים שכאלה. הסכנה הנשקפת לכלל*
> *הציבור ממעשי עבירה אלו היא רבה ונועדה לפגוע בגופם של אחרים, להטיל*
> *אימה ופחד בקרב האוכלוסייה שבאזור, כמו גם מטרתה היא לשבש את*
> *אורחות החיים ואת המרקם העדין שקיים ביחסי הגומלין בין אוכלוסיית*
> *האזור ".*

ובהמשך :

> *"אין ספק כי החומרה הנגזרת ממעשים אלו הינה בעיקר בשל הפגיעה בחיי*
> *אדם... לכן, יש להעדיף את השיקול ההרתעתי על פני שיקולי ענישה אחרים.*
> *לא לחינם הדגשנו בשורה של פסקי דין, כי במצב כזה נסוגים כל השיקולים*
> *האישיים מפני האינטרס הציבורי המחייב התייחסות מיוחדת למידת*
> *ההרתעה."*

בע' אי"ש 2064/05 **נדאל דאר אלשייך,** קבע האב"ד, אל"ם י. מינא, בעניין אופי העבירה :

> *"אין ספק כי מדובר באחת העבירות החמורות שבקודקס הפלילי, והיא ניסיון*
> *לגרימת מוות בכוונה, שהמרוחק בינה לבין גרימת מוות עצמה אינו רב."*

על אף האמור, עלינו לבחון במקרה שלפנינו, כבכל מקרה, לא רק את מהותן של העבירות, אלא גם
את נסיבותיהן, נסיבותיו האישיות של הנאשם, כמו גם את סיכויי השיקום, ורק בשקלול כלל
שיקולי הענישה ניתן יהא לגזור על הנאשם את העונש הראוי (ראו עד"יי 1517/09 **התוב"צ** נ' **מחלוף**
(טרם פורסם)).

התביעה הצבאית נ' צלאח מוחמד חוסין צאלח בוחיארי (עצור )

## חלקו ותפקידו של הנאשם בביצוען של העבירות

הנאשם נטל חלק, כאמור, בביצוען של עבירות ביטחוניות רבות וחמורות, אשר מטרתן גרימת מוות של אזרחי מדינת ישראל אך בשל היותם אזרחים ישראלים וכן ניסיונות שונים לפגוע אף בכוחות הביטחון. הנאשם היווה גורם משמעותי ומעורבותו, הגם שנפרסה על פני תקופה קצרה יחסית, לא הייתה שולית או מקרית כפי שניסה להציגה סנגורו. לא מדובר במעידה חד פעמית, כי אם במסכת מתמשכת של עבירות ביטחוניות חמורות, אשר נפרסה על פני תקופה של כשנה.

בהקשר זה יצוין, כי מן הפרט הראשון בכתב האישום המתוקן למדים אנו על פיגוע מתוכנן היטב, אשר בוצע בנחישות רבה על ידי כלל המעורבים והוביל לתוצאה קשה ביותר, שאך בנס לא הסתיימה במות מי מהנפגעים. הגם שהנאשם לא יזם את תוכנית הפיגוע, הוא נאות לסייע בהוצאתו אל הפועל ונטל חלק בשלבים מתקדמים וחשובים, אשר בסופו של יום הובילו לכניסתם של המפגעים לעירבורה של העיר תל אביב והשלמת משימתם על ידי פיצוץ מטען הנפץ על ידי המחבל המתאבד. מעשיו של הנאשם מלמדים כי חפץ להשיג את התוצאה הוודאית הנשקפת מפיצוצה של חגורת נפץ זו, קרי מות אזרחים תמימים, הגם שלמרבה המזל, בסופו של יום תוצאה זו לא הושגה במלואה.

אם לא די בכך, ככל הנראה נוכח הצלחת הפיגוע האמור, התגייס הנאשם לארגון הגא"פ במסגרתו המשיך וביצע עבירות חמורות נוספות ואף רקם, הפעם מיוזמתו, מספר תוכניות לביצוע פיגועי התאבדות בישראל, בין היתר באמצעות חגורת נפץ. לשם כך, כמפורט בפרט השביעי, עשה הנאשם בעצמו, בעזרת מקורביו, את כל ההכנות הנדרשות לכך, לרבות הכנת חגורת נפץ ; הדרכתם של המבצעים ; אספקת האמצעים וסיוע למבצעים אף לאחר יציאתם לדרך בכך שבירר עבורם את דרכי הגישה למקום המיועד. הלכה למעשה, עשה הנאשם כל שניתן לעשותו כדי להוציא פיגוע התאבדות זה אל הפועל וכאשר נודע לו על הקשיים הכרוכים בביצועו, הציע הצעה חילופית לפיה הפיגוע יבוצע בטייבה ולא בנתניה. ניתן להבחין כי הנאשם היה נחוש עד מאוד וחפץ בהצלחת תוכניתו והעובדה כי זו בסופו של יום זו לא צלחה, לא ניתן לזוקפה לזכותו.

שיקולים רבים עומדים לחובת הנאשם במקרה דנן ודומה כי משקלם הכבד של שיקולים אלו בהצטברם יחדיו, מחייב מתן ביטוי הולם ומרתיע לעבירות החמורות בהן נכשל. לא נוכל ליתן משקל מופרז לתוצאות מעשיו של הנאשם, אשר אך בדרך נס הסתיימו ללא אבידות בנפש. את חומרת מעשיו של הנאשם עלינו לבחון בעיקר לאור כוונתו וזו נלמדת בצורה ברורה ממעשיו, האמצעים אשר עמדו לרשותו ולרשות חבריו והיוזמה והנחישות אשר ליוו אותו.

נוכח חלקו של הנאשם בביצוע העבירות החמורות בהן הורשע ובעיקר מעורבותו עד צוואר בפיגוע ההתאבדות בו נפצעו עשרות אנשים ובתוכנית לביצוע פיגוע נוסף בישראל באמצעות חגורת נפץ כאמור, תמהנו כיצד עתירת הסנגור המלומד לעונש לפיה התבקשנו להסתפק בעונש אשר כהגדרתו "יימדד בשנים ספורות" (הסנגור אף נקב במפורש במספרים - 4-5 שנות מאסר בפועל!), יש בה כדי לשרת את האינטרס הציבורי, כפי שטען.

### מאסר עולם בגין ניסיון לגרימת מוות בכוונה

בטיעוניה לעונש, עתרה התביעה הצבאית להטיל על הנאשם מאסר עולם. לשיטתה, מעורבותו של הנאשם בניסיון למוות לגרום של עוברי אורח תמימים בתחנה המרכזית בת״א אשר למרבה המזל הסתיים אך בפציעות, בחלקן קשות, בצירוף ניסיון פיגוע נוסף אשר נגדע בניגוד לרצונו ושאיפתו של הנאשם, מחייבת הרחקתו לצמיתות מחברה אנושית. עתירת התביעה הצבאית בהקשר זה מבוססת על הלכת **נופל** (ע׳ איו״ש 122/02+120), בה נשיא ביהמ״ש הצבאי לערעורים דאז, אלי״מ שאול גורדון, קבע כי קיימות נסיבות בהן יש מקום לגזור על נאשמים עונש של מאסר עולם, גם אם "רק" ביצעו עבירות של ניסיון לגרימת מוות בכוונה, וזאת למרות שבתודעתנו השיפוטית מיוחד עונש זה רק למי שבפועל קיפד את חייו של האחר בכוונה.

הצדקה להטלת עונש של מאסר עולם על מי שמנסה לקטול את חיי האחר מתבססת על הטיעונים כדלקמן, כפי שפורטו בע׳ 1625/07 **התביעה הצבאית** נ׳ **איימן יוסף אחמד אבו-דאוד** :

**א.** עבירת הניסיון אינה באה להעניש את העבריין בשל תוצאות מעשיו, שהרי לא עלה בידו להוציא את כוונתו אל הפועל, אלא דווקא על כוונותיו, וכי ככל שהיה קרוב יותר לביצוע כוונות אלה, כך יעלה רף הסיכון שלו להידון למאסר עולם.

**ב.** רתיעת בתי המשפט באזור לגזור עונש מאסר עולם על מי שהורשע בעבירות של ניסיון לגרימת מוות בכוונה, נובעת מהעובדה כי הדבר אינו אפשרי בישראל, הגם שהנסיבות באזור שונות מאוד מאלה אשר בישראל, בה מדובר, בעקרון, בעבריינים פליליים ולא במבצעי פיגועי טרור.

**ג.** תורת הענישה צריכה להתאים את עצמה למציאות הביטחונית הקשה השוררת באזור.

**ד.** אין כל סיבה שביהמ״ש ימחק מראש מתודעתו את האפשרות של גזירת עונש מאסר עולם על מי שניסה לרצוח ומבוקשו לא עלה בידו.

**ה.** בע״פ 2630/93, מדינת ישראל נ׳ פלוני, פד״י מ״ז (ד)1, הדגיש כב׳ השופט י׳ קדמי כי : *"עונש מרבי הקבוע נועד ליישום הלכה למעשה, ואין לראות בו "מס שפתיים" ולא "מושג מופשט" מעולם הערכים".*

כמובן שלא ניתן ליצור רשימה סגורה של מקרים בהם ניתן יהיה להטיל עונש של מאסר עולם על מי שעברו רק את עבירת הניסיון לגרימת מוות בכוונה, אולם ניתן לתת בהם סימנים :

**א.** מספר ניכר של ניסיונות לקטול חיי אדם ;

**ב.** מידת הקרבה לביצוע העבירה המושלמת ;

**ג.** אמצעים אכזריים בהם ניסה הנאשם להביא למוות הקורבן ;



**ד.**   נפיצותה של העבירה.

יחד עם זאת, חזר והדגיש הנשיא דאז ש. גורדון בהלכת נופל הנ״ל, את <u>**הכלל**</u> אשר יש לשומרו ולפיו :

> ״משכך ועל מנת שלא לסטות מהעיקרון המחייב ענישה מקלה יותר בעבירת הניסיון, התגבשה פרקטיקה לפיה העונש בגין עבירה של ניסיון לגרימת מוות בכוונה, אף אם הוא עשוי הוא להימדד בשנות מאסר ארוכות, הרי שלכלל מאסר עולם אין הוא בא״.

סבורים אנו, כי הגם שעתירת התביעה הצבאית למאסר עולם הינה עתירה סבירה, ראויה ומתבקשת נוכח הלכת נופל והתנאים שנקבעו לתחולתה ועל אף שהתלבטנו רבות האם לקבלה במקרה זה, החלטנו בסופו של דבר שלא להיעתר לה. מספר שיקולים הובילונו למסקנה זו, כפי שיפורטו להלן :


1.   <u>***רמת הענישה שנקבעה בעניינים של השותפים***</u>

הצדדים הגישו לעיוננו את גזרי הדין בעניינים של שותפיו של הנאשם.


בהקשר זה, מצאנו לנכון להפנות תשומת ליבה של התביעה הצבאית לכך, שחלק מגזרי הדין בעניינים של השותפים הוגשו על ידה בלא בלא שצורף להם פסק הדין שניתן על ידי בית המשפט הצבאי לערעורים. בחלק מן המקרים בית המשפט לערעורים אף קיבל את הערעור והתערב בעונש שנגזר! אין אנו סבורים חלילה כי מחדל זה נעשה במכוון תוך כוונה להטעות את בית המשפט, אך מצפים אנו מגורמי התביעה לעשות מאמץ סביר, כפי שעשתה הסנגור וכפי שעשה בית המשפט בעצמו, ובטרם יגישו פסיקה של ערכאות דיונית כלשהיא כאסמכתא לטיעוניהם, לבדוק תחילה האם הוגש ערעור על פסיקה זו ומה היו תוצאותיו ולהגישו על מנת שהתמונה שתוצג בפני בית המשפט תהא שלמה ומלאה.

<u>נבחן את עניינים של השותפים מן הקל אל הכבד</u> :

**גמיל פוקהא** (תיק 3955/06), הורשע במספר עבירות, לרבות ב**סיוע לניסיון לגרימת מוות בכוונה,** בגין חלקו באירוע נשוא הפרט השביעי בכתב האישום המתוקן שלפנינו, בכך שלבקשת הנאשם, סייע בהלבשת חגורת הנפץ על גופו של המחבל. **בית המשפט קמא גזר על גמיל 16 שנות מאסר לריצוי בפועל.** ערעורו נדחה.


**שאדי בהלול** (תיק 5597/03), הורשע ב**ניסיון לגרימת מוות בכוונה** בגין חלקו באירוע נשוא הפרט השביעי בכתב האישום המתוקן שלפנינו, בכך שלבקשת הנאשם, הסכים לבצע פיגוע התאבדות



באמצעות חגורת נפץ. בית המשפט קמא גזר על שאדי 30 שנות מאסר לריצוי בפועל. ערעורו של שאדי התקבל ועונשו הופחת ל – **20 שנות מאסר לריצוי בפועל.**

**ג'ואד שלחתי** (תיק 5504/02), הורשע **בניסיון לגרימת מוות בכוונה** בגין חלקו באירוע נשוא הפרט הראשון בכתב האישום המתוקן שלפנינו. על פי חלקו, אמור היה ג'ואד לבצע ירי לעבר הנוכחים במקום לרבות כוחות ההצלה אשר הגיעו למקום לאחר שהמחבל המתאבד פוצץ עצמו וגרם לפציעת עשרות בני אדם. בית המשפט קמא גזר על ג'ואד **מאסר עולם.** ערעורו של ג'ואד התקבל ועונשו הופחת ל – **30 שנות מאסר לריצוי בפועל.**

**טארק בצלאת** (תיק 5596/03), הורשע **בניסיון לגרימת מוות בכוונה** בגין חלקו באירוע נשוא הפרט השביעי בכתב האישום המתוקן שלפנינו. טארק הוביל את המחבל אשר אמור היה לפוצץ עצמו באמצעות חגורת נפץ. **בית המשפט קמא גזר על טארק מאסר עולם. בקשתו של טארק להארכת מועד להגשת ערעור נדחתה ע"י בית המשפט הצבאי לערעורים, מאחר שהוגשה כשנה לאחר מתן גזר הדין.**

מצווים אנו ליתן את הדעת לעונשם של השותפים ולבחון באם ישנם הבדלים המצדיקים חריגה מן העונשה שנקבעה בעניינם. בהקשר זה נפסק בע"פ 9792/06 :

> *"עקרון אחידות הענישה הוא כלל חשוב הבא למנוע קיום הפלייה בין שווים או*
> *דומים, למען עשיית צדק עם נאשמים, ולצורך שמירת אמון הציבור בהליך*
> *הפלילי. עם זאת, עקרון זה נושא עמו משקל יחסי ביחס ליתר שיקולי*
> *הענישה, ואם קיימים שיקולים כבדי משקל המצדיקים סטייה ממנו מטעמים*
> *של צדק ואינטרס ציבורי כי אז על בית המשפט לחרוג ממנו ולהעדיף שיקולי*
> *ענישה אחרים. כדברי בית המשפט".*

כפי שניתן להתרשם, בית המשפט הצבאי נמנע מלגזור מאסר עולם על המעורבים בניסיונות לגרימת מוות בכוונה המיוחסים לנאשם שלפנינו (פרט לעניינו של טארק אליו נתייחס להלן), והסתפק בעונשי מאסר קצובים בשנים. בין היתר מדובר במי אשר יצאו בפועל לבצע פיגועי התאבדות בכוונה ברורה למותם של חפים מפשע רבים ככל האפשר.

להבדיל, מצא לנכון בית המשפט הצבאי לגזור על טארק מאסר עולם בגין חלקו בהובלת המחבל המתאבד אשר אמור היה לפוצץ עצמו באמצעות חגורת נפץ, כאמור בפרט השביעי שלפנינו. עונש זה, הגם שהינו חלוט, לא עמד למבחן בפני ערכאת הערעור מאחר וערעור שכזה לא הוגש במועד. נראה כי הגם שמדובר בעונש חלוט, נוכח התייחסותו בית המשפט הצבאי לערעורים בתקופה האחרונה באשר לעונש הראוי לעבירות הניסיון ובשל יתר השיקולים המפורטים להלן, לא מצאנו כי יש בו כדי לחייבנו לגזור עונש זהה.

2.  **חלוף הזמן מאז ביצוען של העבירות ועד מעצרו של הנאשם**

את העבירות בהן הורשע, ביצע הנאשם בין השנים 2002-2003. הנאשם נעצר בתאריך 08/12/09, דהיינו כ – 7 שנים לאחר ביצוען. מאז, לא נטען כי ביצע או הורשע בעבירות אחרות. לדבריו, הוא אף בחר לסטות מדרך זו ולחיות חיי משפחה.

בע' איו"ש 2635/05 **מוחמד אבו מחלוף** נ' **התובע הצבאי** נאמר בהקשר זה :

> *"אכן חלוף הזמן כשלעצמו יכול לעיתים לשמש הסבר להקלה בעונשה. אולם לגבי דידי מדובר במעין מבחן משנה: אם חלף זמן מאז ביצוע העבירה, ולא בוצעו עבירות נוספות, כי אז ניתן להניח כי העבריין סר מדרכו הרעה, ולכן יש מידה של הצדקה שלא להחמיר עימו נוכח בחירתו המחודשת בדרך הישר והטוב."*

תורת הענישה אינה קופאת על שמריה, ולעולם עליה להתאים עצמה למציאות המשתנה (ראו עד"י איו"ש 93/01 **התובע הצבאי** נ' **סלאיימה**). אף בתי המשפט הצבאיים לא פטרו עצמם מלהתחשב במציאות הביטחונית המשתנה באזור. בדרך כלל באו הדברים לידי ביטוי בהחמרת הענישה נוכח התגברות פעולות הטרור אך אין בכך כדי לשלול אפשרות להקל בענישה בתקופה בה קיימת רגיעה יחסית.

אין חולק, כי העבירות בהן הורשע הנאשם בוצעו בתקופה בה פיגועי הטרור היו בשיאם (אף האסמכתאות שהוגשו לעיוננו על ידי התביעה מתייחסות לתקופה קשה זו). לא יכולה להיות מחלוקת כי כיום המציאות שונה. הגם שכל הנראה ידיהם של כוחות הביטחון עדיין עמוסות לעייפה בעבודת סיכול ומניעה, אין לומר כי דומה המציאות כיום לזו שהייתה בתקופה בה בוצע הנאשם את העבירות בהן הורשע. סבורים אנו, כי הזמן הרב שחלף מאז ביצועו של העבירות ועד הגשת כתב האישום (זאת להבדיל משותפיו, אשר נדונו בסמוך לאחר ביצועו של העבירות. על נסיבות מעצרו המאוחר של הנאשם לא שמענו מפי התביעה הסבר מניח את הדעת), בצירוף שינוי העיתים ואורחותיו של הנאשם, הגם שאינם שיקולים מכריעים לעניין העונש, מהווים הם נדבך נוסף להחלטתנו שלא לגזור על הנאשם מאסר עולם, אלא להסתפק בעונש קצוב בשנים.

3.   <u>**התייחסות בית המשפט הצבאי לערעורים לעונש הראוי בנסיבות דומות**</u>

מאז ניתנה הלכת נופל ובעיקר בשנים האחרונות, במקרים רבים אשר חומרתם אינה פחותה, **נמנע** בית המשפט הצבאי לערעורים מלגזור על נאשמים מאסר עולם, ותחת זאת הסתפק בעונש קצוב בשנים.

כך למשל, במקרה בו מחבל מתאבד חמוש בחגורת נפץ יצא לדרכו, בשליחותו של המערער, לשם ביצוע פיגוע התאבדות ברחובות ונעצר בסמוך לכך (ראו ע' 1086/09 **האשם רבחי מחמוד קאטוני**); מקרה אחר בו בוצעו מספר פיגועי ירי לעבר כלי רכב משטרתיים, שכתוצאה מהם **נפצע שוטר בכל חלקי גופו** ושבעה קליעים נורו גם לעבר רכב נוסף (ע' 1625/07 **התביעה הצבאית** נ' **איימן יוסף**

**אחמד אבו-דאוד**); בעניינו של מי אשר עשה ניסיונות חוזרים ונשנים להחדיר מחבלים מתאבדים לתחומי מדינת ישראל ואף עונשו, כעונשם של יתר המעורבים באותה פרשיה, נקצב בשנים (ע׳ 1601/09 **איאד אחמד חוסין פואגרה** נ׳ **התביעה הצבאית**); מקרה בו הורשע נאשם בשלושה עשר פרטי אישום שיוחסו לו בכתב אישום מתוקן, בכללם שלוש עבירות של חברות בהתאחדות שאינה מותרת; שתי עבירות של הנחת פצצה; שלוש עבירות של ניסיון לגרימת מוות בכוונה; שתי עבירות של ירי לעבר אדם ועוד שלוש עבירות של סחר באמל״ח. בימ״ש גזר על נאשם זה 33 שנות מאסר בפועל (ראו ע׳ 4889/08 **דורג׳אם שוהנה** נ׳ **התביעה הצבאית**).

בעניינו של **אבו-עישה** (ע׳ איו״ש 2637/05 **מוהנד מחמוד מוחמד אבו-עישה** נ׳ **התובע הצבאי**) שנסיבותיו דומות לנסיבות שלפנינו, הרשיע בית משפט קמא את המערער בשבע עבירות חמורות, ובכללן עבירה אחת של קשירת קשר לגרימת מוות בכוונה, ועבירה נוספת של ניסיון לגרימת מוות בכוונה, כאשר ביחס לעבירה זו נאמר בפסק הדין כי המערער הכין חגורת נפץ עבור מפגע מתאבד ותדרך את המפגע כיצד להפעילה, אולם בסופו של דבר הפיגוע לא יצא לפועל. הצדדים הסכימו ביניהם על טווחי עונשים וטענו לעונש שבין 10 שנות מאסר כעמדת ההגנה, ל - 30 שנות מאסר ע״פ עתירת התביעה. בימ״ש קמא דחה את ההסדר וגזר על המערער מאסר עולם. ערעור שהוגש לבימ״ש הצבאי לערעורים התקבל בהסכמה, ובית המשפט השיב את ההסדר על כנו, וגזר על המערער עונש של 30 שנות מאסר, שאינו חורג מהסדר הטווחים שהושג בין הצדדים.

כך היה גם בעניין **מג׳די ג׳אבר** (ע׳ 1458/07 **מג׳די אמין ג׳אבר** נ׳ **התובע הצבאי**), שבו הורשע המערער בבימ״ש קמא בשורה של עבירות חמורות, ובכללן סיוע לניסיון לגרימת מוות בכוונה, בכך שייצר חגורת נפץ באמצעותה בוצע פיגוע התאבדות בו נפצעו שלושה חיילי צה״ל והמחבל עצמו נהרג. הצדדים הסכימו ביניהם על עונש של 24 שנות מאסר בפועל אך בימ״ש קמא דחה את ההסדר וגזר על המערער מאסר עולם. ערעור ההגנה התקבל, וההתביעה אמנם טענה בתחילה כי היא מתנגדת לקבלת הערעור, אולם לאחר שיקול דעת נוסף מסרה כי היא עומדת מאחורי ההסדר, אף שלטעמה ההסדר שגוי. בימ״ש ציין בין היתר בפסק הדין כי ״...**עונש של 24 שנות מאסר אינו עונש קל, גם אם הוא מקל קמעא עם המערער, אין בו כדי להצדיק את פסק דינו של בימ״ש קמא, אשר גזר על המערער מאסר עולם**״.

אף לאחרונה התייחס בית המשפט הצבאי לערעורים לסוגייה זו בעניינו של **איאד מסימי** (ע׳ 3869/07). ערעור הסנגוריה התקבל ועונש מאסר עולם אשר נגזר על המערער בגין מעורבותו בפיגוע בשווארמה ״ראש העיר״ בתחנה המרכזית בתל – אביב בו נפצעו 35 בני אדם בדרגות חומרה שונות בוטל, ותחתיו גזר בית המשפט הצבאי לערעורים עונש של 30 שנות מאסר לריצוי בפועל.

ההתלבטות במקרה שלפנינו רבה. מחד, ריבוי העבירות, חומרתן, הפציעות הקשות של אזרחים תמימים רבים ותרומתו של הנאשם לפציעות הללו מלמדות כי עתירת התביעה הצבאית אינה משוללת יסוד. כידוע, שילוחו של מחבל מתאבד אל דרכו, כפי שעשה הנאשם שלפנינו, משול ללחיצה על הדק רובה (ע' איו"ש 190/03+183 **התוב"ץ** נ' **ג'ראאר**). בשלחו את המחבל סיים הנאשם למעשה את חלקו ומן הבחינה העונשית המבוססת על סנקציה כלפי מעשי הנאשם, ראוי הוא לעונש השמור למי שניסיונו כמעט והושלם. ואכן, רבים הם המקרים (חלקם אף הוגשו לעיוננו ע"י התביעה הצבאית) בהם בנסיבות דומות לתיק הנוכחי, אף גזר בית המשפט עונש של מאסר עולם .

יחד עם זאת, בית המשפט הצבאי לערעורים פסק, כי מן הראוי שהעונש המקסימאלי הקבוע בחוק ייוחד למקרים החמורים ביותר וזאת כדי לשמר את האבחנה בין עבירת הניסיון לבין אחותה הבכורה – גרימת המוות בכוונה. נפסק, כי מן הראוי שעונש מאסר עולם יוטל על העבירה המוגמרת אשר במסגרתה קופדו חיי אדם, בעוד שהעונש לצידה של עבירת הניסיון יהא פחות בחומרתו, כך שישקף את האבחנה בין השתיים ואת ערך קדושת החיים .

לכן, נוכח חלוף הזמן, עקרון אחידות הענישה והצורך לערוך התאמה ומדרג ראוי בין העונשים אשר נגזרו על השותפים השונים לבין העונש שייגזר על הנאשם שלפנינו, הגם שחלקו ניכר משלהם דבר אשר יבוא לידי ביטוי בעונש שהחלטנו לגזור על הנאשם, סבורים אנו כי לא יהא זה ראוי לגזור עליו מאסר עולם .

### נסיבותיו האישיות של הנאשם והשפעתן על העונש

בעניינו, החומרה רבה מאוד. הנאשם עשה ככל שלאל ידו על מנת להביא להצלחת הפיגועים. הוא ליווה וארגן את הפעילות החל משלביה הראשונים וניצח על הניסיונות להוביל את המפגעים לעשות את אשר תוכנן. למעשה כפסע היה בין התוצאה בה הסתיימו האירועים לבין מה שתכננו הנאשם ושותפיו לעשות. בנסיבות אלו, דומה כי ה"ניסיון" מצוי קרוב מאוד לעבירה המושלמת, כשמנגד אין כל נסיבות מיוחדות משמעותיות פרט להודאתו במסגרת הסדר הטיעון אשר ללא ספק חסכה זמן שיפוטי נכבד, ולשינוי באורחות חייו בשנים האחרונות אשר בא לידי ביטוי בהקמת משפחה והימנעות מביצוען של עבירות חדשות. אף דבריו האחרונים של הנאשם במסגרת הטיעונים לעונש במסגרתם הביע צער, ביקש כי נמחל לו נוכח הזמן הרב שחלף ושינוי אורחות חייו, היוו שיקול בבואנו לגזור את עונשו, והלכה למעשה, היה בהם כדי להקל במידת מה בעונשו .

סבורים אנו, כי אף אם ניתן מעמד של בכורה לכל טיעוני הקולא כאמור, עדיין לא יוכל האינטרס הציבורי להשלים עם עונש קל, כהצעת הסנגור הנכבד. אין כל של ספק, כי בנסיבות הקיימות יחייבנו האינטרס הציבורי להדגיש את החומרה שבמעשיו של הנאשם. אף שעתירת התביעה הצבאית להטלת עונש מאסר עולם על הנאשם, כאמור, אינה בלתי ראויה בהתחשב בריבוי העבירות ובעיקר נוכח "קרבת התוצאה" כאמור בפרט הראשון, נוכח הנימוקים אשר פורטו לעיל, החלטנו לגזור על הנאשם את העונשים הבאים :

התביעה הצבאית נ׳ צלאח מוחמד חוסין צאלח בוח׳יארי (עצור )

א.   38 שנות מאסר לריצוי בפועל מיום מעצרו.

ב.   24 חודשי מאסר על תנאי למשך 5 שנים מיום צאתו את הכלא והתנאי הוא שלא יעבור
עבירה על תקנות 84+ 85 **לתקנות ההגנה (שעת חירום)**, וכן עבירות שעניינן החזקה,
ייצור או סחר באמל״ח.

ג.   4 שנות מאסר על תנאי למשך 5 שנים מיום צאתו את הכלא והתנאי הוא שלא יעבור
עבירה על סעיפים 209, 210 לצו בדבר הוראות ביטחון [נוסח משולב] (יו״ש) (מס׳ 1651),
תש״ע – 2009, או לפי תקנה 58 (א) **לתקנות ההגנה (שעת חירום)**, לרבות ניסיון, שידול
או סיוע לעבור עבירה זו.


בית המשפט מוסר לצדדים עותק מגזר הדין.

זכות ערעור תוך 30 יום.

ניתן והודע, 04/08/11, בנוכחות באי כוח הצדדים והנאשם.


_____          _____          _____
                                                   יאיר צדוק 54678313

**שופט**                      **אב״ד**                      **שופט**
                         נוסח מסמך זה כפוף לשינויי ניסוח ועריכה

בעניין עריכה ושינויים במסמכי פסיקה, חקיקה ועוד באתר נבו – הקש כאן