E341soka

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARK I. SOKOLOW, et al.,,

4                  Plaintiffs,

5            v.                          04-CV-397 (GBD)

6   PALESTINE LIBERATION
    ORGANIZATION, et al.,
7
                   Defendants.           Oral Argument
8
    ------------------------------x
9                                        New York, N.Y.
                                         March 4, 2014
10                                       10:58 a.m.

11  Before:

12                    HON. GEORGE B. DANIELS,

13                                       District Judge

14                         APPEARANCES

15  ARNOLD & PORTER, LLP
         Attorneys for Plaintiffs
16  BY:  KENT A. YALOWITZ, ESQ.
         PHILIP W. HORTON, ESQ.
17       CARMELA T. ROMEO, ESQ.
         TAL R. MACHNES, ESQ.
18       KEN L. HASHIMOTO, ESQ.

19  ROBERT J. TOLCHIN, ESQ.
         Attorney for Plaintiffs
20
    MILLER & CHEVALIER, CHTD.
21       Attorneys for Defendants
    BY:  MARK JOHN ROCHON, ESQ.
22       LAURA G. FERGUSON, ESQ.
         BRIAN A. HILL, ESQ.
23

24

25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

E341soka

1              (In open court; case called)

2              THE CLERK:  Will the parties please rise and state

3    their appearances, please.

4              MR. YALOWITZ:  Good morning, your Honor.  Kent

5    Yalowitz, Arnold & Porter, on behalf of all plaintiffs.  With

6    me are my colleagues from Arnold & Porter Philip Horton, Tal

7    Machnes, and Carmela Romeo, and Ken Hashimoto, who's afraid

8    he's infectious and so he's staying in the audience.  And also

9    with us today, your Honor, is Robert Tolchin, who has been

10   representing the plaintiffs longer than ourselves.

11             THE COURT:  Good morning.

12             MR. YALOWITZ:  Thank you.

13             MS. FERGUSON:  Good morning, your Honor.  Laura

14   Ferguson on behalf of the Palestinian Authority and PLO.  I'm

15   here on with my colleagues from Miller & Chevalier, Mark Rochon

16   and Brian Hill.

17             THE COURT:  Good morning.

18             MR. ROCHON:  Good morning, your Honor.

19             MR. HILL:  Good morning, your Honor.

20             THE COURT:  There are a number of issues that I wanted

21   to address.  I've gone through all of the papers, and I have

22   sort of a method as to how I want to address these.  I know

23   you've been before Magistrate Judge Ellis and there are still

24   some outstanding objections, and I guess I basically wanted to

25   deal with these issues and sort of in reverse order and mostly

E341soka

1    talk about scheduling.

2           First of all, I know the parties are requesting a

3    trial date.  I need a date for a pretrial order, we need to

4    deal with the issue of summary judgment motions and the motion

5    for reconsideration and application for a stay, and motions *in*

6    *limine* as the schedules are set or to be adjusted, and I put in

7    that category all of what I consider to be trial issues, or

8    issues of admissibility at trial.  I know there's still a

9    number of objections to the magistrate judge's decision and

10   also relating to that, a request for further discovery, and the

11   BBC issue has been percolating for a while and I want to

12   address that.  But I think the easiest way to start is, I want

13   to talk about trial, and then we can work backwards.

14          So the first question that I have for plaintiffs is,

15   for me to pick a tentative or firm trial date, what do you

16   anticipate would be the length of the plaintiffs' case and

17   approximately how many witnesses?

18          MR. YALOWITZ:  So, your Honor, we believe the

19   plaintiffs' case will be about seven weeks.  We have

20   directionally 35 witnesses.  Could be more or less.  A number

21   of the witnesses we've listed are really foundational

22   witnesses, which I'm hoping we can resolve foundational issues

23   before we begin presenting the evidence to the jury.

24          THE COURT:  What number are foundational witnesses of

25   the 35?

E341soka

1          MR. YALOWITZ:  Zero.  So foundational witnesses would

2     be extra.

3          THE COURT:  You believe it's going to take seven weeks

4     to present 35 witnesses?

5          MR. YALOWITZ:  I'm sorry.  I think it's more like 50

6     witnesses.  We have approximately 40 plaintiffs.  We'll have

7     approximately 10 experts.  I misspoke, your Honor.  So I think

8     between the experts and the plaintiffs, we're going to need

9     about seven weeks.

10          THE COURT:  And what's the defense's position with

11     regard to your case and approximately how many witnesses and

12     how long would they take after the plaintiffs rest?

13          MR. HILL:  Your Honor, Brian Hill.  It will depend on

14     what the trial looks like.  As you know, there are seven

15     different incidents.  We don't think there's any chance all

16     seven of them are going to go to trial, and if, after summary

17     judgment, more than one of them is left, we're going to ask for

18     severance at that point in time.  So it's hard to estimate --

19          THE COURT:  Let's assume at this point that all cases

20     are going to trial on that date.

21          MR. HILL:  Well, we have 17 expert witnesses, and

22     depending on what evidence comes in, we may be calling fact

23     rebuttal witnesses as well, so I would say we're looking at

24     maybe three to four weeks of trial for the defense case.

25          THE COURT:  So you're talking 10 to 12 weeks of trial?

E341soka

1              MR. YALOWITZ:  I believe that's correct, your Honor.

2              THE COURT:  If that is the case, I would not be able

3    to give you -- I think one of the parties requested an October

4    date.  I wouldn't be able to do that.  Couldn't clear my

5    calendar for three months this October, and it would be even

6    awkward for jurors, given all of the holidays in between.  What

7    I think would be appropriate is for me to clear my calendar as

8    we begin to approach the end of the year for January, February,

9    and March and prepare to try the case at that time.

10             MR. YALOWITZ:  That would be agreeable to plaintiffs,

11   your Honor.

12             THE COURT:  Defense?

13             MR. HILL:  We're conceivably available at that time,

14   your Honor.

15             THE COURT:  All right.  So what I'm going to say is,

16   let's start with a January 12 trial date.  So if I have to

17   clear my calendar for January through April, as we get closer

18   and see how it unfolds, we can determine exactly what issues

19   would be tried.  So that's where we're going to start.  I'm

20   going to set a January 12 trial date.

21             I will need a joint pretrial order.  I would like to

22   have that --

23             MR. YALOWITZ:  So, your Honor, I apologize for

24   interrupting, but the parties submitted a joint pretrial order

25   for the court's consideration on January 22.  We've not filed

E341soka

1    that on the docket because there was a dispute.

2                THE COURT:  That's true.  I forgot about that.

3                MR. YALOWITZ:  That's all right.  There's a lot of

4    moving pieces.

5                THE COURT:  Okay.  Well, we'll start with that, but I

6    think obviously we may have to revisit it, depending on, you

7    know, any other developments with regard to the motions and/or

8    with regard to the witnesses.  So I don't need to set another

9    date for that.  What I will do, though, is I will set a final

10   pretrial date so we make sure we're all ready to go and address

11   any issues that have to be addressed.  I think it probably

12   makes sense to do it, I'm going to say November 20th, which

13   would be the Thursday before the week of Thanksgiving.  I think

14   that makes sense.  That gives you enough time to finalize your

15   preparations for trial even given the holidays in between.  I'm

16   picking January 12 as the trial date so the week before that

17   can be a full week of work for everybody to fit in rather than

18   setting it right after the new year and the holidays, give you

19   another week there.  And given the other holidays, I think it

20   makes sense for us to have a final conference before

21   Thanksgiving.  So we'll say final pretrial conference on

22   November 20th at 10:30.

23               All right.  So then let's address the motions.  The

24   summary judgment motion, I believe Magistrate Judge Ellis

25   already set a schedule for the motion.  You've already begun.

E341soka

1    And the defense wants to make a motion for reconsideration.

2    And then there are other motions which really address trial

3    issues, motions *in limine*.  I think there are some challenges

4    to experts and that sort of thing.

5            Let's first talk about the motion for reconsideration.

6    I have a lot of papers in front of me.  I want to make sure

7    that the schedule that I have for that -- well, let me look.

8            MS. FERGUSON:  Your Honor, under the current schedule,

9    plaintiffs' opposition would be due on March 21st and the

10   reply brief would be due on May 2nd.

11           THE COURT:  Now what have you filed at this point?

12           MS. FERGUSON:  We have filed a motion for

13   reconsideration based on the Supreme Court's case in *Daimler*.

14           THE COURT:  Right.

15           MS. FERGUSON:  And then we filed the letter motion

16   last week seeking a stay based on another Supreme Court case

17   that came down at the end of February, *Walden v. Fiore*.

18           THE COURT:  The schedule that Judge Ellis set for

19   motions, summary judgment motions *in limine*, was supposed to be

20   March 21st?

21           MR. YALOWITZ:  Correct, your Honor, also March 21.

22           THE COURT:  All right.  The motion for reconsideration

23   is fully submitted at this point?

24           MS. FERGUSON:  No, your Honor.

25           THE COURT:  Excuse me.  That's not what I meant to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E341soka

 1    say.  Plaintiff, you filed the motion in the form that you want

 2    it considered.

 3            MS. FERGUSON:  It's defendant's motion, your Honor.

 4    Yes, yes.

 5            THE COURT:  Right.

 6            MS. FERGUSON:  And that's correct.

 7            THE COURT:  Because you said *Daimler* and then you said

 8    it's all incorporated in the motion you already filed.

 9            MS. FERGUSON:  To be clear, the motion does not

10    address *Walden v. Fiore*, the Supreme Court case on specific

11    jurisdiction, because that came out after we filed our motion

12    for reconsideration.

13            THE COURT:  Okay.

14            MS. FERGUSON:  And our position was that the court

15    doesn't need to reach specific jurisdiction because the court's

16    original ruling that it could exercise jurisdiction was based

17    on general jurisdiction.  It's just that in arguing whether we

18    were entitled to a stay, the plaintiffs had raised the issue of

19    potential *res* for specific jurisdiction and our point is that

20    the new Supreme Court has foreclosed that avenue.

21            THE COURT:  Is it appropriate for you and convenient

22    for you to address that issue if it is to be addressed in your

23    reply?

24            MS. FERGUSON:  Yes, your Honor.

25            THE COURT:  So what is the schedule?  So you filed

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E341soka

1    your motion, and the response is due on the 21st?

2             MR. YALOWITZ:  Correct, your Honor.

3             THE COURT:  Are you prepared to file a response on the

4    21st?

5             MR. YALOWITZ:  We are.

6             THE COURT:  And then the reply would be due the

7    23rd, or some other --

8             MS. FERGUSON:  Under the current schedule the reply

9    would be due May 2nd.

10            THE COURT:  May 2nd?  I'm sorry.  Yes, May 2nd.  I

11   have that in front of me.

12            MS. FERGUSON:  So we could accelerate that schedule,

13   your Honor, if that's helpful.

14            THE COURT:  I think that that makes sense.  If

15   March 21st is the response, how soon can you file a reply?

16            MS. FERGUSON:  Ten days, your Honor?

17            THE COURT:  April 1st?

18            MS. FERGUSON:  That's fine, your Honor, yes.

19            MR. YALOWITZ:  And just to be clear, your Honor, our

20   March 21 paper will also cross-move for summary judgment on the

21   issue of jurisdiction.

22            THE COURT:  On the jurisdictional issue itself, just

23   limited to the jurisdictional issue.

24            MR. YALOWITZ:  I think we're going to cross-move on

25   jurisdiction and capacity.  As your Honor recalls, there was an

E341soka

| | |
|---|---|
| 1 | issue of what is the PLO, what is the PA, and that issue was |
| 2 | deferred, and I think that given some of the briefing, it's |
| 3 | closely related to the jurisdictional issue and -- |
| 4 | THE COURT:  Well, if I deny their motion to |
| 5 | reconsider, dismissing on jurisdictional grounds, what is the |
| 6 | utility of your motion? |
| 7 | MR. YALOWITZ:  My motion on summary judgment -- I'm |
| 8 | sorry -- on jurisdiction will become moot.  On capacity, it |
| 9 | would eliminate a trial issue, which is -- the defendants plan |
| 10 | to raise as a defense to the jury we're an unincorporated |
| 11 | association and therefore we can't be sued under the nonfederal |
| 12 | claims, and so having looked at that, I don't believe that |
| 13 | they're correct about that and I think that's something that |
| 14 | can be eliminated in advance of trial. |
| 15 | MS. FERGUSON:  Your Honor -- |
| 16 | THE COURT:  Yes. |
| 17 | MS. FERGUSON:  -- we have a schedule for filing |
| 18 | motions for summary judgment and so I think it makes more sense |
| 19 | to keep the summary judgment briefing on a similar schedule and |
| 20 | not intertwine it with the jurisdictional issue, and if |
| 21 | plaintiff needs to file a cross-motion for summary judgment and |
| 22 | adds issues of capacity, then I would be filing an opposition |
| 23 | brief, and I don't know exactly what they plan to raise in this |
| 24 | cross-motion for summary judgment, so I may need more time now |
| 25 | than April 1st, but I do think it makes more sense to keep |

E341soka

1    the jurisdictional issues separate from motions for summary

2    judgment briefing, if plaintiffs want to --

3          THE COURT:  Well, plaintiffs, you don't intend to file

4    any further summary judgment motions?

5          MR. YALOWITZ:  I would say we haven't reached a final

6    conclusion on that, your Honor.  It's unlikely that we would

7    file a summary judgment motion directed to the merits on

8    anything other than what we might call "whodunit."  There are

9    21 individuals who were convicted of perpetrating many of the

10   underlying terrorist acts, and we may seek summary judgment

11   that those individuals who were convicted were involved in the

12   acts, committed them, so that's something we're considering.

13         THE COURT:  To what effect?  Entering a judgment

14   against them?

15         MR. YALOWITZ:  It would be partial summary judgment,

16   your Honor.  They're not defendants.

17         THE COURT:  Right.  So that's what I'm saying.  A

18   number of these issues, I'm still keeping clear in my mind the

19   difference between motions *in limine* that go to the proof as

20   opposed to judgment in your favor, which is what I consider to

21   be summary judgment motions, judgment in your favor on a claim

22   against -- or dismissing a count.

23         MR. YALOWITZ:  Right.  So using --

24         THE COURT:  You don't have such a motion.

25         MR. YALOWITZ:  Correct, correct.  You are correct,

E341soka

1    your Honor.

2                THE COURT:  But the defendants still do have motions

3    to dismiss claims against individual defendants.

4                MS. FERGUSON:  Well, there are no individual

5    defendants in the case anymore, your Honor, so --

6                THE COURT:  I mean separate defendants.

7                MS. FERGUSON:  Yes.

8                THE COURT:  And you intended to file those motions

9    when?

10               MR. YALOWITZ:  March 21, your Honor.  As your Honor

11   says, whether you call it *in limine* or you call it, you know,

12   partial summary judgment, I think you're correct.  We're not

13   looking for judgment on less than all claims anyway.  March 21.

14   The schedule that Judge Ellis set is March 21 for any summary

15   judgment motion and any *in limine* motion, and I think the court

16   should add to that any other sort of what you would call

17   pretrial motion.  For example, the defendants are saying they

18   want to septifurcate or bifurcate or sever in some way.  I

19   think the court ought to have the benefit of that now.  I can

20   tell the court we think an anonymous jury is appropriate in

21   this case.  We're prepared to file our motion requesting such

22   an anonymous jury on the same March 21 schedule so that in

23   essence, the court has the parties' full trial position now,

24   you know, in a few weeks, and then May 2 for oppositions,

25   May 23 for replies, so that by Memorial Day, the court will

E341soka

1    have all the briefing that the parties expect to make on the

2    various issues.

3         THE COURT:  So you're prepared to file all your

4    briefing on all issues that need to be decided before trial on

5    March 21st?

6         MR. YALOWITZ:  Yes, sir.  The two things that I think

7    we're not targeting for March 21 that we would need to find

8    some date for with the court is requests to charge and jury

9    questionnaire and possible, you know, voir dire questions.  I

10   can't think of anything else.  I mean, you know, as your Honor

11   knows, there are a lot of moving pieces, everybody's working

12   hard to have everything in, lined up, but I think we'll be

13   prepared to do that.

14        THE COURT:  In light of that discussion, what schedule

15   do you want?

16        MR. YALOWITZ:  For the requests to charge and --

17        THE COURT:  No.  Forget about that.  We can set that.

18   That's easier to set.  I'm just talking about for outstanding

19   motions, summary judgment motions or motions that go to the

20   admissibility of evidence or the appropriateness for witnesses

21   to testify.

22        MR. YALOWITZ:  I think both sides have agreed on the

23   current schedule, which Judge Ellis' memo endorsed in my

24   letter, and we think that's a good schedule.

25        THE COURT:  All right.

E341soka

1          MR. YALOWITZ:  So March 21 for opposition to the

2    motion to reconsider, any summary judgment motion, any *in*

3    *limine* motion.  I would add these other, you know, other

4    pretrial motions like anonymous jury or motion to sever, May 2

5    for oppositions to all those motions, May 23 for replies.

6    That's a good schedule.  I think we can live with that.  Famous

7    last words, but I --

8          THE COURT:  So what's the extent of your motions at

9    this point?

10          MR. YALOWITZ:  So as I said, anonymous jury, capacity,

11   summary judgment -- personal jurisdiction, and then we'll have

12   some *in limine* motions directed to knocking out some of the

13   defendants' evidence.  For example, defendants have a number of

14   law experts, people who know about various law, which I think

15   is useful to the court but not appropriate for the jury.  And

16   we may -- we have certain other motions like that that I think

17   are -- what we're trying to do is have them be targeted.  And

18   then of course, you know, the big issue which was the subject

19   of our objection to Judge Ellis' ruling and which we need to

20   find a process for is, the defendants have produced a number of

21   very, very damaging documents to their case, very helpful

22   documents to my case, things like the payroll records, things

23   like their promotion records of terrorists who were convicted

24   of mass murder and they're sitting in jail and they remain on

25   the police force, getting their pay, getting their promotions

E341soka

1    and so forth.  These are defendants' own documents which they

2    insist have to remain confidential to protect their own

3    interests, but they refuse to concede authenticity, they've

4    refused to concede that they're either admissions or public

5    records or business records.  We need some either -- we need

6    some ruling from the court, some way to get past that.  I don't

7    think it's really -- I mean, I understand they don't want to

8    stipulate.  They're allowed to not stipulate, if they have some

9    reasonable basis.  But to just say:  Our own records are not

10   admissible, they're not authentic, go pound sand --

11              THE COURT:  I thought Judge Ellis indicated a process

12   for that.

13              MR. YALOWITZ:  I don't believe so, your Honor.

14              THE COURT:  All right.  Well, then, Ms. Ferguson, what

15   do you want in terms of schedule?

16              MS. FERGUSON:  Well, your Honor, we believe that the

17   court no longer can exercise personal jurisdiction in light of

18   these two recent Supreme Court rulings.  We believe those are

19   significant rulings.  We believe that it makes imminent sense

20   to stay this pretrial briefing process that we're discussing,

21   which would be very burdensome and costly to our client and all

22   over a case which we believe the court no longer has personal

23   jurisdiction.

24              THE COURT:  Well, what do you intend to file?

25              MS. FERGUSON:  We have filed our motions for

E341soka

1    reconsideration arguing the personal jurisdiction issue --

2            THE COURT:  Besides that.

3            MS. FERGUSON:  -- and that will --

4            THE COURT:  What do you intend to file with regard to

5    summary judgment and motions *in limine*?

6            MS. FERGUSON:  We intend to file a motion for summary

7    judgment.  We also intend to file motions *in limine* addressing

8    particular categories of plaintiffs' exhibits.  They've

9    submitted 870 exhibits.  Many of them are rank hearsay.

10   There's a lot to deal with in terms of the exhibit list.  They

11   have 14 experts, most of which would just rely on hearsay.  So

12   we'll have *Daubert* motions as to some or all of those experts.

13   Again, it's a significant undertaking.  This is a complex case.

14   There's no percipient witnesses here, there's no direct

15   evidence of PA/PLO liability, so we just got this complex sort

16   of mix of hearsay and lots of issues to work through before we

17   could even I think wheel down the issue.

18           THE COURT:  Let me put that aside for a minute.  What

19   is the extent of your summary judgment motion?  What is the

20   nature of your summary judgment motion?

21           MS. FERGUSON:  The nature of it is to argue that even

22   if there is admissible evidence as to PA employee involvement

23   in some of the attacks, and we don't concede that there is,

24   that there's no admissible evidence, no triable issue of fact

25   of PA or PLO responsibility for these attacks.  Plaintiffs are

E341soka

1    relying on very indirect theories of liability, with no

2    evidence linking either PA or PLO as institutions for these

3    attacks.

4              THE COURT:  I assume that you are far down the road or

5    the extent of that motion itself is such that it can be filed

6    on March 21st, that motion alone.

7              MS. FERGUSON:  Your Honor, there's a significant

8    effort involved in dealing with huge categories of evidence,

9    that many of the exhibits were just disclosed recently as part

10   of the joint pretrial order process, and so, I mean, we can --

11   in theory, yes, we could meet that deadline, but we think it

12   makes more sense to resolve the personal jurisdiction issue.

13   We think that our position is sufficiently credible that it

14   warrants staying the pretrial briefing and it would just

15   involve a relatively brief delay and we can get this briefed

16   fairly quickly, and it's a significant enough issue that it's

17   case dispositive and a threshold question that should be

18   decided before we move to the merits.

19             THE COURT:  How brief a delay are you anticipating?

20             MS. FERGUSON:  Well, as I say, we could commit to

21   getting our reply brief filed on April 1.  If plaintiffs want

22   to move up their opposition brief before March 21, we could

23   move our reply brief up as well.

24             MR. YALOWITZ:  Your Honor, may I be heard on this?

25             THE COURT:  Yes.

E341soka

1              MR. YALOWITZ:  Because this is really a frivolous

2     application.  They have -- the defendants already asked that

3     the pretrial proceedings be stayed.  Judge Ellis denied that

4     request.  They're now taking a second bite at the apple, as is

5     their habit, and, you know, we've heard -- I've heard two

6     things from the defendants here today about this application.

7     The first is that it's a credible position.  I do not believe

8     it's a credible position.  Having done significant work in

9     response to this motion for reconsideration, I can say -- I

10    won't say that they're subject to Rule 11 for having made it,

11    but I will say that it is a highly unmeritorious motion and it

12    is not going to prevail.

13             And the second thing I've heard from Ms. Ferguson

14    today, as the defendants have said in the past, is that it's

15    case dispositive.  And it is not case dispositive.  And if it

16    were case dispositive, if they really believed it was case

17    dispositive, then they would say, we don't need to do anything

18    else, we don't need to file motion for summary judgment, we

19    don't need to file motions *in limine*.  Those are things that

20    are optional for the defendants.  They're not required to file

21    a motion for summary judgment.  And if they really believed

22    that their motion for reconsideration was going to end the

23    case, then they would put their money where their mouths are

24    and they would stop talking about summary judgment and motions

25    *in limine* and they would focus only on their personal

E341soka

1    jurisdiction, but their personal jurisdiction motion is not

2    meritorious, it is not going to prevail, it is not going to

3    prevent the trial of this action on the merits.

4            THE COURT:  Well, with regard to your motions, I mean,

5    I have three alternatives that I'm considering.  One is staying

6    with the same schedule that's already been set.  Two is pushing

7    back slightly the motions beyond the submission of the motion

8    for reconsideration, which will be April 1st to a brief time

9    after.  If I get the motions on April 1st, I will probably

10   schedule you to come in and I'll hear you further April 8th,

11   or maybe even sooner than that.  Maybe April 3rd.  I'll read

12   the papers as they come in and I'll be waiting for the reply

13   April 1st.  And so my second alternative is either to

14   slightly push back the other motions to a date that all the

15   parties feel that they can get in all of their motions on that

16   date or simply pushing back the motions other than the summary

17   judgment motion and giving that opportunity for the summary

18   judgment motions to be filed on schedule and the other motions

19   to be filed 30, 60 days beyond that.

20           MR. YALOWITZ:  So I think that the current schedule is

21   the one the court should stick with.  I think that there are

22   issues of personal jurisdiction that are closely intertwined

23   with the merits.  As I know your Honor is aware, when we look

24   at specific jurisdiction, the question is the interrelationship

25   between the defendant and the forum, which is the United

E341soka

1    States, and the claim, and here we know, because the court has

2    found by a preponderance of the evidence, that the defendant

3    was present on a systematic and continuous way promoting its

4    political agenda.  The claim is that the defendant engaged in

5    violence in a way that, it appeared, intended to coerce a

6    civilian population or to influence the policy of a government,

7    and we have said from day one in this case that one of the

8    governments the defendant was trying to influence -- the

9    defendants were trying to influence through their terrorism was

10   the United States government, and so when we look at the

11   evidence on personal jurisdiction with regard to specific

12   jurisdiction, it will be closely related to the evidence on the

13   merits, and I think the court will benefit from seeing both of

14   those motions together.

15        THE COURT:  Well, both of those motions are simply

16   motions that deal with jurisdiction.

17        MR. YALOWITZ:  No, I mean the merits.  The defendants

18   are moving for summary judgment on the merits and one of the

19   elements on the merits is that their conduct appeared to be

20   intended to influence the United States and then all of their

21   United States conduct is relevant, is related to their attempt

22   to influence the United States.  And so on specific

23   jurisdiction, the issue of jurisdiction and the issue of the

24   merits are closely intertwined.  So I think the court would

25   benefit from deciding both motions together.  However, it's

E341soka

```
 1  really up to the court.  We're willing to go faster on any of
 2  the motions or all of the motions.  If the court wants to have
 3  the defendant reply on April 1 and have the parties in on
 4  April 3, I'm fine with that.
 5           THE COURT:  Are you prepared to file all of your
 6  motions on March 21st?
 7           MR. YALOWITZ:  Yes, sir.  In fact, that's the current
 8  schedule.  That's the schedule that Judge Ellis has ordered the
 9  parties to plan for --
10           THE COURT:  I understand.
11           MR. YALOWITZ:  -- and I think that anybody who stood
12  before you and said they weren't prepared to live by that
13  schedule today on March the 4th would be pretty irresponsible.
14           MS. FERGUSON:  Your Honor --
15           THE COURT:  Yes.
16           MS. FERGUSON:  -- the basis for our motion for
17  reconsideration was general jurisdiction.  This court does not
18  have general jurisdiction.  The plaintiffs don't really attempt
19  to defend how this court can continue to exercise general
20  jurisdiction.  They've now switched to a different theory,
21  under specific jurisdiction.  The new Supreme Court case that
22  came out completely undercuts the theory of specific
23  jurisdiction that plaintiffs have laid out, including here
24  today.  There have to be contacts with the forum itself.  There
25  is no lawsuit-related activity by the PA or PLO in the United
```

E341soka

| | |
|---|---|
| 1 | States.  Therefore, there can be no specific jurisdiction. |
| 2 | They did not plead any such contacts, we've had personal |
| 3 | jurisdiction -- sorry -- personal discovery in this case.  No |
| 4 | such forum-related activity having any connection to this |
| 5 | lawsuit was identified.  The only forum-related activity |
| 6 | identified as a result of personal jurisdiction discovery was |
| 7 | the Washington, DC office of the PLO mission to the United |
| 8 | States and a contract with the Bannerman Consulting firm. |
| 9 | Those were the US contacts.  They are not forum related. |
| 10 | Hence, when plaintiffs previously argued there was specific |
| 11 | jurisdiction, the court didn't rest its exercise of |
| 12 | jurisdiction on specific jurisdiction, which requires that the |
| 13 | contacts of the forum be lawsuit related.  Instead, the court |
| 14 | found that the presence of the DC office of the PLO mission to |
| 15 | the United States was continuous and systematic and established |
| 16 | general jurisdiction.  The Supreme Court has now made clear |
| 17 | that continuous and systematic contact with the forum are not |
| 18 | enough unless the defendant is at home in the forum.  There is |
| 19 | no credible basis for arguing that the Palestinian Authority or |
| 20 | PLO are at home in the United States.  This new Supreme Court |
| 21 | case, which came out just at the end of February, is another |
| 22 | attempt by the Supreme Court to make clear that US courts are |
| 23 | not to be taking these sorts of cases which have no nexus to |
| 24 | the United States whatsoever.  This is a lawsuit about attacks |
| 25 | in Jerusalem.  The defendants are foreign.  All of the contacts |

E341soka

```
 1   alleged to have occurred occurred overseas.  This has no nexus
 2   to the United States.  We have more than a credible basis for
 3   arguing that the court lacks personal jurisdiction.  We have an
 4   incredibly strong basis -- but I know the court is not going to
 5   decide that here today.  My point is that it is sufficiently
 6   strong that I think it's important to stay this very burdensome
 7   and costly pretrial briefing, in a case where there has been a
 8   significant game change by two recent Supreme Court decisions
 9   on jurisdiction.  And jurisdiction is a threshold question that
10   needs to be reached before the court turns to the merits.  We,
11   PA/PLO, should not be sued in the United States just because we
12   had a mission office in Washington, DC.  And that's what
13   happened, and the Supreme Court has made clear that's not how
14   jurisdiction is supposed to work.  And their new theory about,
15   you know, about whether the PA, you know, intended to target US
16   residents in some way, the Supreme Court has rejected in this
17   new case involving specific jurisdiction.  So --
18            THE COURT:  This is what I'm willing to do.  As I say,
19   I want the submissions on the motion to reconsider fully
20   submitted by April 1st.  I'm going to set it down for
21   April 8th, Tuesday, April 8th.
22            MS. FERGUSON:  Thank you, your Honor.
23            THE COURT:  I'm going to give plaintiffs this choice.
24            MR. YALOWITZ:  What time, your Honor?
25            THE COURT:  10:30.  I'm going to give plaintiffs this
```

E341soka

```
1    choice.  I'm willing to adjust the schedule for the defendants
2    to file any summary judgment motions or motions in limine to
3    the May 2nd date rather than the March 21st date.
4              MR. YALOWITZ:  We really would rather keep the case
5    moving, your Honor, get all the briefing in.
6              THE COURT:  I understand.
7              MR. YALOWITZ:  We don't think it's going to be a
8    problem.
9              THE COURT:  Well, but the choice that I'm giving you
10   is that if you want to file your motion March 31st --
11             MR. YALOWITZ:  March 21.
12             THE COURT:  Yes, March 21st, then I am going to
13   require that they still reply, respond to your motion by
14   May 2nd.  But I won't require that they have to file their
15   motion until May 2nd.  Now if you want both motions to be
16   filed at the same time, then we can do that, but if you want to
17   move it along, you can file your motions.  You know --
18             MR. YALOWITZ:  Your Honor, let me reflect on it.  I
19   really think you're letting them get away with foot dragging,
20   that that's the name of the game here.
21             THE COURT:  Well, going from March 22nd to May 2nd
22   is not significant foot dragging.
23             MR. YALOWITZ:  Could we set it for April 15th
24   instead of May 2?
25             THE COURT:  No.  I'm going to either resolve their
```

E341soka

1  motion on April 8th or soon thereafter and I will give them

E341soka

 1  motion on April 8th or soon thereafter and I will give them

 2  several weeks to make sure they have full and complete

 3  opportunity to file all their motions because my intent is to

 4  deny any subsequent motions if they have not been filed timely

 5  and if there's not a good reason why those motions weren't

 6  filed on those dates.  So even if I have their motion filed by

 7  May 2nd, I'll give you whatever amount of time that you want

 8  to respond to those motions, shorter or longer, so that those

 9  motions can be fully submitted in June and resolved in June.

10       MR. YALOWITZ:  So I'm wondering, your Honor, if -- is

11  it possible to -- well, let me reflect on it for a moment and

12  speak to my colleagues.  I guess I'm wondering if the court

13  would -- well, the timing that the court is suggesting is May 2

14  for motions, sometime in early June for oppositions.

15       THE COURT:  Unless you want to do it sooner.

16       MR. YALOWITZ:  Well, we need to --

17       THE COURT:  Sounds like you're going to have more work

18  to do on oppositions than them, so you have to tell me what you

19  think is a reasonable amount of time.

20       MR. YALOWITZ:  That's the problem, candidly, is that,

21  you know, the defendants are ready to go March 1 -- I'm

22  sorry -- March 21, they're ready to go, and so by giving them a

23  delay in filing their motions, all you do is give them a

24  tactical advantage of jamming me up on the back end.  You know,

25  that's the real problem.  We then start to stretch the motions

E341soka

1    into the summer.  But I think that's -- if your Honor's not

2    going to hold their feet to the fire --

3              THE COURT:  I want fully submitted motions before the

4    end of June, and the schedule at this point is fully submitted

5    motions before Memorial Day.  So I mean, that concession to

6    them only gives me a greater opportunity to be tougher on

7    motions that people want to make subsequent to that and

8    demanding an explanation why those motions weren't made, having

9    had a full opportunity to fully submit all the motions as is

10   contemplated by Magistrate Judge Ellis' schedule.

11             MR. YALOWITZ:  And by the way, while we're on that

12   topic, your Honor, I should say this motion for reconsideration

13   should have been made two and a half years ago when the Supreme

14   Court announced the essentially at home test in the *Goodyear*

15   case.  So one of the reasons why this motion is not meritorious

16   is because it's quite late.

17             THE COURT:  Well, their argument is not based on the

18   *Goodyear* case.  It's based on --

19             MR. YALOWITZ:  I understand.

20             THE COURT:  -- the *Daimler* case.

21             MR. YALOWITZ:  I'm sorry, your Honor.  I didn't mean

22   to interrupt you.

23             THE COURT:  On the *Daimler* case.

24             MR. YALOWITZ:  I understand that.  I understand that.

25             THE COURT:  That's the basis for their motion to

E341soka

 1    reconsider.  So the only question before me is:  Does the

 2    *Daimler* case change the law?  And that's a fairly

 3    straightforward issue for me to address.

 4              MR. YALOWITZ:  Agree.  Agree.

 5              THE COURT:  So the only thing that I think, in

 6    fairness and generosity, is to say to them:  You're right.  If

 7    there's a possibility that you can convince me that this case

 8    should be dismissed solely on jurisdictional grounds and the

 9    merits of the case not addressed, then you should have the

10    opportunity to present that to me and for me to at least be

11    able to review that before you have to file motions that would

12    be unnecessary.  I don't anticipate that.  That's the status

13    that we're in.  The status that we're in is rulings have been

14    made and unless those rulings have changed, we're going forward

15    with trial.  But my suggestion would be May 2nd for their

16    and/or your motions.  May 30th.  Unless you want more time.

17              MR. YALOWITZ:  I think I would like five weeks, your

18    Honor.

19              THE COURT:  June 6th.  June 6th for response.

20    And --

21              MR. YALOWITZ:  June 28th, perhaps?

22              THE COURT:  June 28th is a Saturday.  I was thinking

23    more of June 23rd for reply.

24              MR. YALOWITZ:  Okay.

25              THE COURT:  Monday, June 23rd for a reply.  And

E341soka

1    setting it down for June 26.

2              MR. YALOWITZ:  I'm sorry.  June 26?

3              THE COURT:  Yeah, Thursday, June 26, to be heard.

4              MR. YALOWITZ:  10:30?

5              THE COURT:  Yes.  So the motions will be fully

6    submitted and argued by June 26, which gives us plenty of time

7    to resolve whatever could be resolved right then and there and

8    to discuss, you know, and resolve in the next 30 days from now,

9    all of those issues so we'll know how this trial is going to

10   proceed.  And I would anticipate scheduling a conference maybe

11   in September, see where we are, and giving you a different

12   opportunity -- I would take out of the schedule issues that you

13   raised.  I don't remember all of them you raised, but issues

14   with regard to jury selection and with regard to, you know,

15   anonymous jurors and the issues related to jury instructions,

16   those kinds of things.  I would put that on a schedule so we

17   can have that in September.  Which is plenty of time for you

18   to --

19             MR. YALOWITZ:  That would be great.

20             So with regard to my motion for an anonymous jury, the

21   defendants' motion for severance, would the court want that on

22   the May 2 schedule or --

23             THE COURT:  No.

24             MR. YALOWITZ:  -- later so that we would have it fully

25   briefed by Labor Day and then we could come in and see your

E341soka

1    Honor?

2            THE COURT:  That's what I would want, fully briefed by

3    Labor Day, because then I'll have already had an opportunity to

4    deal with the more substantive issues, to deal with the motions

5    *in limine*, see exactly how the case is supposed to be laid out

6    and make a, you know, pretty quick decision, probably at that

7    conference, as to how we're going to proceed procedurally on

8    those issues.  So quite frankly, I leave that up to you.  If

9    you agree upon a schedule for that, that we'll have it fully

10   submitted before the end of July.

11           MR. YALOWITZ:  So, I'm sorry.  I just --

12           THE COURT:  Not a problem.

13           MR. YALOWITZ:  That sounds great.  I just want to make

14   sure I understand clearly.  I have sort of a bucket of kind of

15   five items: severance, anonymous jury, voir dire, requests to

16   charge, and jury questionnaire.  There may be something I'm not

17   thinking of, but those are the five, the big five, if you will.

18           THE COURT:  Sure.

19           MR. YALOWITZ:  And did your Honor want to -- and I

20   believe the parties can work together on scheduling, to tee

21   those up for the court.

22           THE COURT:  Right.

23           MR. YALOWITZ:  The question is, do you want them --

24   when would the court wish to have those issues ready for the

25   court to address?

E341soka

1          THE COURT:  Before Labor Day.

2          MR. YALOWITZ:  Okay.

3          THE COURT:  And so, quite frankly, if you agreed upon

4     a schedule that began in July, mid July on those issues, then

5     you would start thinking about those issues and working on it

6     anyway, but mid July submission and mid July/early August

7     response and late August reply.  I'll have the papers on all of

8     those issues, and I'm talking about procedural issues.  I'm not

9     talking about, you know, issues that go to the admissibility of

10    evidence, which I believe is appropriate for the motions *in*

11    *limine*, and I'm not talking about any issues that go to

12    judgment in or against any party, which I believe requires

13    summary judgment.

14         MR. YALOWITZ:  So the schedule and the contours that

15    the court has laid out are agreeable to the plaintiffs, your

16    Honor.

17         THE COURT:  And this is what I expect.  I expect one

18    summary judgment motion and I expect one motion *in limine*.  All

19    right?  I don't expect ten different motions, similar motions

20    *in limine*, and I don't expect ten different summary judgments,

21    all right?

22         MS. FERGUSON:  Your Honor, if I could address that.

23         THE COURT:  Yes.

24         MS. FERGUSON:  With the motions *in limine*, there are

25    many categories of evidence, and I'll just give you one

E341soka

1    example, since the plaintiffs have relied a lot on convictions

2    of Israeli military tribunals so they could establish employee

3    involvement.  There are a whole set of issues involving whether

4    military tribunal convictions are admissible.  And that is just

5    one issue.  There are multiple issues that are raised by --

6           THE COURT:  I want it in one document.

7           MS. FERGUSON:  Then I guess we need a page limit then.

8           THE COURT:  You tell me.  Beyond 25 pages, how many

9    more pages, depending on how many separate issues you want to

10   raise, do you think are necessary?

11          MS. FERGUSON:  So --

12          THE COURT:  Because you'll use as much as I give you

13   is the basic rule.  So if I give you 25 pages, separate motions

14   on every issue, I'm sure I'll get 25 pages.  That's not what I

15   expect to happen.  So you should, you know, tell me, if you

16   believe it takes more than 25 pages, how much more than 25

17   pages it takes because of the number of issues, and then I'll

18   consider whether I'll extend your page limit.

19          MS. FERGUSON:  This is an important issue.  Can I

20   consult with my colleagues and then we can move for a page

21   extension?

22          THE COURT:  Yes.

23          MS. FERGUSON:  Thank you.

24          THE COURT:  What I'll also do is then I'll also say

25   that we'll have a conference --

E341soka

1          MR. YALOWITZ:  I'm sorry.  Was the application that we

2     not decide that now, your Honor?

3          THE COURT:  They wanted to determine how much, if any,

4     additional pages they wish to seek, and I assume they should

5     consult with you, find out whether you have an objection to

6     that being the page limit for both.

7          MR. YALOWITZ:  One would hope that we would consult.

8          THE COURT:  Yes.  And then otherwise they'll request

9     what they think is reasonable and you can object to it and then

10    I'll decide.  You should let me know that before -- well, you

11    know what, you can let me know that on or before the 8th when

12    you come in, April 8th.

13         MS. FERGUSON:  Thank you, your Honor.

14         THE COURT:  The earlier the better.  If you disagree,

15    or even if you agree.  And I think I'm going to set this down

16    for September 16th for a conference.  September 16th.  Is

17    that a problem?

18         MR. HILL:  September 16th is fine, your Honor.  I

19    was going to ask about the April date.  As it turns out, I'm

20    supposed to be out of town on April 8th.  I'm wondering if we

21    could push that back just one week.

22         MR. YALOWITZ:  Or maybe earlier, your Honor.  Because

23    after April 8th is Passover.  That's a problem.

24         THE COURT:  I don't have my calendar.

25         MR. YALOWITZ:  I'm afraid I'm handicapped in that way

E341soka

1    too.  My Southern District pass is expired so I had to leave my

2    calendar with the marshals.

3              THE COURT:  I think Passover is the 14th.  Monday,

4    the 14th.

5              MR. TOLCHIN:  And that whole week.

6              THE COURT:  That's an awkward time.

7              MR. YALOWITZ:  Right.

8              THE COURT:  So you're unavailable on April 8th or

9    that whole week?

10             MR. HILL:  I have spring break that week with my

11   children, your Honor.  I'd like to take that trip.

12             MR. YALOWITZ:  Could we do it earlier than

13   April 8th, your Honor?

14             MR. HILL:  If the plaintiffs want to file their

15   opposition sooner, we can file our reply sooner, it can be

16   briefed up the prior week, if your Honor would prefer.

17             THE COURT:  Well, if you can agree to sooner filings.

18   But that's fine.  I'll read everything before April 1st

19   except the reply.  I'll give you either Thursday the 3rd or

20   Friday the 4th.

21             MR. ROCHON:  Your Honor, if we can just only address

22   that issue that day, then it's not convenient for me, but I'm

23   well represented by my two colleagues and I'd absent myself.

24             THE COURT:  Which day?

25             MR. ROCHON:  I'll be gone the end of that week, but

E341soka

1   Ms. Ferguson or Mr. Hill will be arguing the personal

2   jurisdiction issues, not me, and if that's what that hearing is

3   going to focus upon, then with your permission, I'd absent

4   myself.

5           THE COURT:  Sure.

6           MR. ROCHON:  Thank you.

7           THE COURT:  So what would be better, the 3rd or the

8   4th, Thursday or Friday?

9           MR. HILL:  Friday morning, the 4th.

10          THE COURT:  All right.  Then that will be Friday the

11  4th, at 10:00.  All right?  So we can address that.  All right.

12  So that's the schedule that I think we should proceed on, and

13  I'm going to stick with that schedule.  The only thing that's

14  still outstanding is you need to get to me with regard to page

15  limits.

16          MS. FERGUSON:  Yes, your Honor.

17          THE COURT:  And you need to tell me what the schedule

18  is, and I'm going to anticipate receiving the other motion to

19  be fully submitted before the end of August and then we'll meet

20  on the 16th of September.

21          MR. YALOWITZ:  Your Honor, I don't have my calendar.

22  Could I indulge the court to just look and see when the Jewish

23  high holidays are.

24          THE COURT:  Oh, in September.

25          MR. YALOWITZ:  I believe they're later, but I just

E341soka

```
 1    don't have it in the front of my mind.  I don't think the

 2    16th is a problem because of that.

 3            THE COURT:  I have Rosh Hashanah on the 24th of

 4    September.

 5            MR. YALOWITZ:  Okay.  Great.  So then we're good on

 6    the 16th.

 7            THE COURT:  That's Wednesday the 24th at sundown,

 8    and we're talking about meeting on Tuesday, the 16th.

 9            MR. YALOWITZ:  Perfect.  Okay.  Thank you.  I really

10    do apologize.

11            THE COURT:  No problem.

12            Okay.  So that deals with those issues.  I'm holding

13    up another argument, so let me just quickly address -- I'm not

14    going to be able to resolve all these issues now.  I mean, just

15    tell me the last word on where you were with the BBC.  What did

16    you get?  And just tell me briefly.  Now that you've done other

17    discovery since this issue first arose, I'm not sure what you

18    are looking for.

19            MR. YALOWITZ:  Sure.  So the BBC program is, you know,

20    useful and important evidence.

21            THE COURT:  So what do you expect in the outtakes?

22    You want to look at the outtakes so you see if something's

23    going to be helpful or something you anticipate that --

24            MR. YALOWITZ:  Right.  We think there could be

25    inculpatory evidence in the outtakes and we'd like to see --
```

E341soka

1          THE COURT:  Based on what?

2          MR. YALOWITZ:  Based on the fact that the program had

3    highly inculpatory statements that were aired.

4          THE COURT:  Well, what is it that you think you might

5    find that you didn't already have by the program and you didn't

6    find elsewhere?

7          MR. YALOWITZ:  Well, it's a black box to us, your

8    Honor.

9          THE COURT:  That's what I'm trying to figure out, why

10   your interest in the outtakes is more compelling than their

11   interest in protecting it.

12         MR. YALOWITZ:  Sure.  I understand there's a balance

13   to be made, and it's our view that there may be something

14   useful and --

15         THE COURT:  Well, give me an example of how you would

16   hit the jackpot.

17         MR. YALOWITZ:  Well, you know, I think, frankly, the

18   big concern I have is that the defendant will say that the

19   program as aired had questions and answers that were taken out

20   of context, or they'll object in some way to the admissibility

21   of the program because it's incomplete, and so if we have the

22   outtakes, we can meet that objection, even if they're not --

23         THE COURT:  If that objection is overruled, then

24   what's the purpose of the evidence?

25         MR. YALOWITZ:  I think, frankly, if that objection is

E341soka

1    overruled, we're in a lot safer ground.

2              The other thing that concerns me about the intakes is

3    that it has a -- as aired, the program has a voiceover, so --

4              THE COURT:  Interpreter voiceover?

5              MR. YALOWITZ:  Correct, correct, correct.

6              THE COURT:  Okay.

7              MR. YALOWITZ:  So I expect to hear an objection from

8    the defendants that we have no basis to say that the

9    interpreter was correctly interpreting.

10             THE COURT:  Well, I can tell you my approach on that,

11   and I'll give them full opportunity to make that argument.  My

12   approach on that is not much different than any other tape

13   recording and transcript and translation of the transcript.  If

14   they got an expert who wants to come in and say that's not what

15   was said, that's fine.  You bring in your expert to say, that

16   is what he said.  That doesn't go to the admissibility as far

17   as I'm concerned, as it wouldn't go to the admissibility of, in

18   a drug case or where they're speaking, you know, another

19   language, speaking Spanish and then it's interpreted by an

20   interpreter and the translation and transcript done in English

21   and both sides can fight over whether they say it's an accurate

22   translation and they can provide their own transcript if they

23   think there's a different transcript to be provided, but unless

24   they tell me that they have an expert who's going to come in

25   and say that that's an inaccurate translation, that's not an

E341soka

1    issue as far as I'm concerned, and even if that is what their

2    expert's going to say, my initial reaction would be, well, then

3    you bring in your expert to say that.  I mean, they don't want

4    to say to the jury that it's accurate and the other side can

5    put on somebody who understands the language and who wants to

6    say that it's not accurate.  That doesn't go to its

7    admissibility as it wouldn't go to the admissibility with

8    regard to any other witness, a nonEnglish-speaking translation

9    that is translated.

10           MR. YALOWITZ:  I agree with that approach, your Honor.

11   I think the argument will be from the defendants that the

12   program as aired doesn't actually -- you can't actually hear

13   the underlying Arabic so the -- and I'm sure you've seen these

14   *news type* programs where they interview someone in a foreign

15   language and the individual starts to speak in their native

16   tongue and the engineers at the news program lower down their

17   voice and bring up the voice of the translator.

18           THE COURT:  Okay.

19           MR. YALOWITZ:  So my concern is that without the

20   original recordings, there will be a dispute about whether the

21   BBC's translation is fair and the argument from the defendants

22   will be, without the outtakes, we don't have any way to test

23   whether or not the translation is fair.  So I agree with your

24   approach.  I'm concerned about -- kind of a little different

25   area to worry about.

E341soka

| | |
|---|---|
| 1 | THE COURT:  Well, obviously I haven't seen the video |
| 2 | so I don't know to what extent you claim that it is impossible |
| 3 | even with enhancement to hear what the speaker has said in |
| 4 | Arabic. |
| 5 | MR. YALOWITZ:  I certainly don't know the enhancement |
| 6 | technology. |
| 7 | THE COURT:  Well, even without the enhancement, I |
| 8 | don't know to what level you indicate that you can't hear. |
| 9 | MR. YALOWITZ:  I'm saying they drop it down, they drop |
| 10 | it down and so really the audience is hearing the English. |
| 11 | THE COURT:  And an Arabic translator cannot hear what |
| 12 | is being said in Arabic on the tape, even if you turn it up? |
| 13 | MR. YALOWITZ:  Your Honor, before making a |
| 14 | representation to the court on that, I'd want to go back and |
| 15 | check on that. |
| 16 | THE COURT:  All right. |
| 17 | MR. YALOWITZ:  I believe that's the case, but I'd |
| 18 | really want to double-check before representing a fact to your |
| 19 | Honor about that because I just -- I don't have it clear in my |
| 20 | mind. |
| 21 | THE COURT:  Well, I'm just not sure how any of these |
| 22 | issues will be decided by the outtakes. |
| 23 | MR. YALOWITZ:  Well, it may be something that -- I |
| 24 | know that in the postargument briefing there was discussion of |
| 25 | *in camera* submission, and I hate to burden the court with |

E341soka

1    something like that.

2            THE COURT:  It's not burdening court, but I'm the

3    least qualified to listen to the tape --

4            MR. YALOWITZ:  Particularly in Arabic, yeah.

5            THE COURT:  -- and that it's somehow relevant if I

6    can't understand what they're saying, or if I can't hear what

7    they're saying.  Even if I understood, I couldn't hear.  So I'm

8    not sure an *in camera* review would give either you or me a

9    meaningful answer.

10            MR. YALOWITZ:  I think the outtakes are the best

11    solution to deal with these problems, but --

12            THE COURT:  I understand that.  I will give you a

13    final decision on that in the next few weeks.  I still have to

14    go back and review what my notes were, but my inclination, I

15    can tell you at this point, is -- and I've spoken to Magistrate

16    Judge Ellis about this issue -- is to overrule Magistrate Judge

17    Ellis on that issue.  It doesn't seem to me that the arguments

18    that have been put forward before him in writing or today

19    orally are so compelling that it should overcome their interest

20    in keeping the outtakes confidential.  I think that to the

21    extent that you believe that the information -- the way I

22    understand it is, you believe that the statements made on the

23    tape, if the tape is admissible, provide the adequate and the

24    type of evidence that you wish to present from that witness.

25    And if that is the case, then the only question I hear you

E341soka

arguing is, they may try to make an argument to preclude the

tape as inadmissible because you don't have the outtakes.

          MR. YALOWITZ:  I believe that you fairly capsulated

it, your Honor.

          THE COURT:  I mean, I think they need to give me a

more compelling argument -- since they don't know what the

outtakes have to say, they need to give me a more compelling

argument that somehow there's a basis to believe that whatever,

in whatever form this is offered, whether by stipulation or by

certification or by testimony, that somehow, the question about

whether it is what it purports to be and all it is, as far as I

know and purports to be, is an interview of an individual and a

question and answer period and to the extent that it was aired,

the question and answer that were given by the witness -- now

since they don't have the outtakes, I don't know how compelling

an argument they can make that somehow it's a misrepresentation

of what he meant to say without the outtakes or it's

inadmissible.  How would they know that?  Unless they have a

real compelling argument to make that somehow this is not what

the person said and somehow this is not an accurate translation

and give me some specific indication that they believe this is

beyond just general admissibility, that it is unreliable as to

what it purports to be, I mean, if they make an argument

against its admissibility, it seems to me that -- and I haven't

heard such an argument here and it seems to me that that

E341soka

1    decision can be made regardless, if not dependent on whether

2    they're outtakes or not outtakes -- or, frankly, I'm not sure

3    in any circumstance why that is a determinative factor as to

4    whether or not it's admissible or not.  If they want to come in

5    and argue that it's not a complete statement of what he had

6    said, then they're going to have to offer some evidence that he

7    said something else different someplace else, if they have such

8    evidence.  They know what the outtakes say or they have some

9    witness who was saying I was there and that's not what he said

10   or there's a conflict or he changed that statement or that's

11   not what he meant.  But I'm going to take one final look at

12   that time and see whether or not, given the BBC's argument that

13   they made a immediate subsequent discovery, but I assume over

14   the month the subsequent discovery has not uncovered anything

15   compelling one way or the other.  It may make your argument

16   either weaker or stronger than the argument that you made, with

17   regard to admissibility, and the other side could tell me now

18   or at the appropriate time when the motion *in limine*s are filed

19   whether they have an objection to that tape and on what basis.

20   But obviously otherwise the issue of authenticity and

21   admissibility, you know, those are burdens that they're not

22   going to stipulate to that you have, and you have to tell me

23   how you expect to lay the proper foundation and establish the

24   admissibility.

25          MR. YALOWITZ:  Sure.  So with regard to the BBC, your

E341soka

Honor, I think you've summarized the issues well.  The issue
was briefed quite extensively, and I don't think that we have
anything to add with regard to the outtakes.

I should also report to the court that despite very
good faith efforts, both on the part of BBC's counsel and on
our part, we've not been able to get a certification from the
BBC that the take that we have or the CD that we have now, or
CDs, is an accurate copy of what aired, although we did receive
it directly from the BBC.  So that issue is also before the
court, and I may be misremembering, but I think Judge Ellis did
give us that discovery and we haven't pursued it because --

THE COURT:  To do what?

MR. YALOWITZ:  To get perhaps an authenticating
deposition or some third-party discovery device simply to say
this is indeed a true and correct copy of what we aired and our
procedures were followed here and so on.  And there is a recent
decision which we didn't burden the court with, but I'll tell
you, Judge Scheindlin had a recent decision in *Wultz v. Bank of
China* on a similar issue involving an Israeli bank called Bank
Hapoalim, and I'd be happy to send a copy of that decision to
the court if it would be helpful.

THE COURT:  Well, this is what I --

MR. YALOWITZ:  But that's a separate issue.

THE COURT:  This is what I want.  Even before you file
any motions *in limine* with regard to the admissibility of

E341soka

1    evidence, to the extent that you believe that it would be

2    appropriate, both sides, you believe it would be appropriate

3    for the other side to stipulate to the authenticity,

4    admissibility, part or all of the foundation for admissibility,

5    you should seek that, you should identify it and request it

6    from the other side, in writing, by letter, and they should

7    respond to that within ten days, calendar days, as to whether

8    or not they're going to agree to that.  If they're not going to

9    agree to it, then you'll know what you need to fight about with

10   other additional efforts that you have to take to be able to

11   get the appropriate witness to lay the proper foundation.

12          MR. YALOWITZ:  Thank you, your Honor.

13          THE COURT:  To the extent that there is the rule that

14   examines the reliability of the evidence beyond just the

15   particular rules with regard to foundation, I'll consider it if

16   it is appropriate, but at this point I'm not going to represent

17   that I'm going to relieve either party of their obligations to

18   demonstrate that any evidence that they wish to offer is in

19   fact what it purports to be, by testimony, certification,

20   and/or other indicia of reliability, so that we can address

21   those issues as you raised them, that they lack the proper

22   authority, a waste of time, or to spend the time establishing

23   full foundation when there's no real genuine dispute that the

24   item is what it purports to be.  See if we can address that.

25          MR. YALOWITZ:  All right.  That narrows the other

E341soka

```
 1   objection we raised with regard to Judge Ellis' order, so
 2   that's fine.  We'll take it to the defendants in that way.  I
 3   will say, I'm not optimistic that we will get stipulations, but
 4   I think the exercise is worth doing.
 5           THE COURT:  Well, but at least you can make a
 6   judgment, one, as to whether or not you believe it's going to
 7   be required or necessary for you to bring in foundational
 8   witnesses, or you can make the appropriate application early
 9   on.
10           MR. YALOWITZ:  Right.  I mean, foundational --
11           THE COURT:  Even before you file the motions *in limine*
12   to indicate that you want to offer that evidence over the
13   defense objection without having a foundational witness.
14           MR. YALOWITZ:  Right.  You know, admissibility,
15   foundation, authenticity, these are matters for the court under
16   Rule 104.  They're really not for the jury.
17           THE COURT:  Right.
18           MR. YALOWITZ:  So --
19           THE COURT:  Well, I intend to make those rulings as
20   far in advance of the issue being raised before the jury as
21   possible.
22           MR. YALOWITZ:  Right.
23           THE COURT:  And to the extent I can resolve those
24   issues prior to trial, I will resolve those issues as early as
25   I get those issues teed up.
```

E341soka

1          MR. YALOWITZ:  That's great.  In that regard, if we

2     can't stipulate and there are genuine issues -- so the

3     documents that I have the biggest concern about, because

4     they're -- well, the documents that I have the biggest concern

5     about are the defendants' own documents.  Defendants had the

6     documents produced to us in discovery, most of which the

7     defendants produced, as the court recalls, after the close of

8     discovery; some of which we got only last month, for example.

9     And those are, it seems to me, pretty obviously either

10    admissions or public records or business records, or something

11    like that.  And there are a lot of cases that say that even

12    without a witness sitting there going through 600 pages of

13    documents saying, yup, that's it, that the court can still make

14    findings in that regard based on the face of the documents and

15    the fact that they were produced by the defendants, unless the

16    defendants come forward with some reason to think they're, you

17    know, forgeries or something like that.  So -- which we haven't

18    heard here.  So I think that this is -- it's good that we try

19    to resolve this now, and we'll go back to the defendants to see

20    if we can get stipulations.  If we can't, we'll bring it to the

21    court, you know, in the context of the other --

22         THE COURT:  And I anticipate that I can resolve most

23    of those issues even, if you raise them early enough, by the

24    September conference.  Then to the extent that there are issues

25    that have not been addressed by the September conference, we

E341soka

 1    can resolve those by the November 20th --

 2              MR. YALOWITZ:  Excellent.

 3              And the only other agenda item that I think I have

 4    that I want just to make sure is on your radar screen, your

 5    Honor, is the issue of public filing of judicial documents.

 6              THE COURT:  Right.

 7              MR. YALOWITZ:  And I don't know if your Honor would

 8    like to hear from the parties on that or --

 9              THE COURT:  Well, just tell me again.  I'm not sure I

10    understand in general the extent or the limit of what you want

11    publicly filed and what you don't want publicly filed.

12              MR. YALOWITZ:  Sure.

13              MR. HILL:  Your Honor, I hate to interrupt, but we can

14    avoid talking about the substance since there are people in the

15    room that are not under the protective order.

16              MR. YALOWITZ:  All right.  Well, we're --

17              THE COURT:  That's fine.  That's fine.  I'm just

18    trying to figure it out.  You want to file documents, you want

19    all documents to be public, is that basically your position?

20              MR. YALOWITZ:  Close to my position, your Honor.

21              THE COURT:  Okay.

22              MR. YALOWITZ:  Yes.  For the most part, the trial

23    should be conducted in public.

24              THE COURT:  I understand.  Well, then, you know, I

25    mean, you don't even think that it's appropriate for any

E341soka

```
 1    confidentiality order or stipulation with regard to the use of

 2    documents?

 3            MR. YALOWITZ:  The only thing, there are -- the Second

 4    Circuit has said that there are certain kinds of documents that

 5    are highly private.  And we have a few of those documents here,

 6    your Honor.  For example, photographs of gruesome injuries of

 7    some of the plaintiffs that they just are embarrassed and don't

 8    wish to be seen.

 9            THE COURT:  Well, that's a different issue.  That's a

10    different ground, if they move to either exclude or to somehow

11    limit that evidence because of its prejudicial nature or some

12    other ground, but the bottom line is that this is really not

13    your application at this point.  Your application is that all

14    documents produced before the jury should be public.

15            MR. YALOWITZ:  Correct, and all documents supporting

16    or opposing summary judgment, and this issue was -- this issue

17    first arose because we had a sentence in our description of the

18    claim, in the joint pretrial order, that referenced certain

19    records of the defendant.

20            THE COURT:  I understand that, but at this point

21    nothing has been filed.

22            MR. YALOWITZ:  Correct.

23            THE COURT:  The pretrial order has not been filed.

24            MR. YALOWITZ:  Correct.  We've submitted it --

25            THE COURT:  The only ruling I'm going to make at this
```

E341soka

1    point is that you should discuss it.  To the extent you have,

2    to the extent the defendants have a position that certain

3    documents or information should not be publicly filed, then it

4    should not be publicly filed until you get a ruling from the

5    court, and I'll hear whatever grounds they have, because the

6    presumption is that all documents in this case will be publicly

7    filed unless there is a reason to not do that that's

8    articulated and a motion is made to not do that.  That is the

9    presumption.  So it is their motion.

10            I am going to also suggest that any filings at this

11    point should be exchanged between the parties before they are

12    filed and each party will have 48 hours to look at those

13    documents and indicate that they have an objection to filing

14    the portions of that document unredacted.  Then the documents

15    should be sent to the court.  If there's no objection, the

16    documents would be filed.  To the extent there's an objection,

17    the document should be filed either redacted or not filed at

18    all until a ruling from the court.  So you can submit them to

19    the court but we'll deal with the issue of filing.

20            MR. YALOWITZ:  Okay.  That's a great procedure, your

21    Honor.  That's essentially the procedure that we used with the

22    joint pretrial order, and so the joint pretrial order, which

23    chambers has but which has not been put up on ECF, is ready for

24    a ruling by the court on this issue.  So I think both sides

25    have discussed it, both sides have made their arguments in

E341soka

1   letters to the court, which have also been submitted to

2   chambers but have not yet been put up on ECF, and so frankly --

3        THE COURT:  I have a continuing procedure you should

4   use, I'll look at it right away and make a ruling right away.

5   If I think I need to hear more specifically from you as I

6   review it more closely, then I'll hear from you on April 8th

7   and then we'll decide whether or not things should be put out.

8   But I think that, you know, I need a compelling legal argument

9   from the defense, if that's only a defense issue, why documents

10  in this litigation should not be public documents, and it's got

11  to be more than just, "It may make my clients look bad."

12  Obviously it's got to be some other argument, and if there's

13  another argument to be made, then I will hear it, and if it's

14  appropriate to do so, I will do so, but as I say, the parties,

15  even when they agree, they want to file things under seal.  I

16  say that's not your choice.  This is a public courthouse that

17  resolves public issues in public, not behind closed doors.  And

18  so therefore, the litigation presumption is going to be that

19  unless you articulate the particular reason why certain things

20  should not be made public, documents are made public in the

21  course of litigation, and particularly there's a significant

22  hurdle to overcome if those documents are already somehow in

23  the public domain.  So if the documents are already in the

24  hands of the public, I don't think it's a compelling reason

25  that you don't want it to be public here, so it's got to be

E341soka

```
1    some private document that has not been publicly disclosed that

2    there is a compelling legal reason to not have that evidence

3    available in an open proceeding.  That's basically it.

4         MR. HILL:  Your Honor, I'm happy to address that in

5    our meeting in April on the 4$^{th}$.  Some of it is intelligence

6    material, which is the basis for the concern.

7         THE COURT:  Then the only other thing is there are

8    still some objections that were made that are still outstanding

9    on Judge Ellis' ruling.  Other than the one about the BBC and

10   my discussions with Magistrate Judge Ellis and my review of the

11   papers, I don't have a recollection in my mind that I was

12   particularly compelled to overrule him based on error of law or

13   facts or an abuse of discretion with regard to those issues,

14   but I will look at them one more time.

15        As I say, the BBC issue, I didn't feel that BBC should

16   be forced to give up the outtakes for the reasons that you

17   articulate.  But with regard to further discovery and those

18   kinds of issues, I'll look at them one more time, but it's

19   likely that I'm going to go ahead and sustain United States

20   Magistrate Judge Ellis on all the motions on this issue.

21        MR. YALOWITZ:  So if I may be heard on -- I think

22   there are really two issues there with regard to Judge Ellis'

23   decisions that we've objected to.  The first is one we've

24   discussed, which is the defendants' own document production,

25   and just to be very clear, the vast majority of documents that
```

E341soka

```
 1   were the subject of our objection to Judge Ellis' ruling were
 2   documents produced after the discovery cutoff, and our request
 3   is to have a discovery device so that we can lay foundation and
 4   establish authenticity for admissibility.  So whether that's
 5   30(b)(6) or that's a hearing in some other way, I don't -- I'm
 6   not picky about the form of it, but it is crucially --
 7            THE COURT:  I think the blanket request that you made
 8   to United States Magistrate Judge Ellis, I think it's within
 9   his purview to deny that blanket request, and I don't think it
10   was inappropriate not to give you carte blanche with regard to
11   those issues.  But to the extent that you believe you have a
12   particular argument to make with regard to the admissibility or
13   further action with regard to the things that were produced,
14   you should articulate that specifically to me and I will
15   resolve, item by item, those issues, but that's not the nature
16   of the request that you made to Judge Ellis.  I don't know if
17   you even identified a particular document or piece of evidence
18   that you say falls into this category that you've not been
19   otherwise able to resolve.  So I would include that in the
20   issue of items that you say that if you cannot come to some
21   understanding with the other side, that I will give you an
22   opportunity to articulate, and obviously you will get at least
23   some greater consideration if you're articulating that this is
24   evidence that you received after the close of discovery which
25   would have been items that you should have received in due
```

E341soka

1    course earlier in discovery in order to be prepared to confront

2    any issues with regard to its admissibility.

3            MR. YALOWITZ:  So with regard to timing, your Honor,

4    the timing, is this something we would have the court's

5    permission to put in our *in limine* submission?

6            THE COURT:  Yes.  If you wish.  Remember, we already

7    talked about a process where you'd be able to find out, get an

8    answer from them one way or the other, if it's just an issue of

9    admissibility, whether they're going to object to the

10   admissibility and whether or not, you know, they're going to

11   stipulate to the foundation itself or whether or not it would

12   be necessary for you to present further evidence for witnesses,

13   and then you can articulate to me what you think you don't want

14   to do and what you think that you're unable to do, given the

15   lateness of the production, and, you know, I can rule with

16   regards to the admissibility of those items.  So you can do

17   that in due course and you can do that as early as you can.

18   I'll consider that in the realm of -- because you've only

19   articulated it to be able to overcome their objection to, you

20   know, foundational stuff, and I understand your concern that

21   you don't want to be in a position that the way you are unable

22   to prove your case is because they produced documents after the

23   close of discovery or evidence that now you're at a

24   disadvantage to try to admit into evidence and there's no

25   legitimate reason for them to object to it because they don't

E341soka

 1   dispute its authenticity or that it is what it purports to be,

 2   which would be otherwise admissible.

 3           So you can identify those items you can't come to

 4   terms with and you can articulate, you know, what it is that

 5   you want to do with it, depending on what their position is,

 6   and I'm sure that certain items are going to fall in each of

 7   the categories of things that you need to make proper

 8   foundation or they can't come in or things that you should be

 9   allowed to offer without having to drag in, as you say, another

10   20 or 30 foundational witnesses who are otherwise clearly

11   unnecessary because there's no genuine dispute as to the

12   testimony that the witness would give.  You should address that

13   individually and I'll give those issues --

14           MR. YALOWITZ:  Okay.  And just picking up on what your

15   Honor said, I think that when we filed our objection to Judge

16   Ellis' order, which of course we had to do it within ten days

17   of receiving it, we had not narrowed down our evidence, and so

18   now we're dealing with a more confined set, although I will say

19   that after, there were certain documents that we received, you

20   know, even right up to the eve of filing the joint pretrial

21   order, we had to get translated and we're going to have to

22   designate late, but we now I think have a pretty clear set of

23   what we're dealing with on that so we'll proceed as your Honor

24   suggests with that.

25           The second issue that we took up from Judge Ellis that

E341soka

1    I also feel strongly about is an issue involving one of the

2    plaintiffs named -- two of the plaintiffs named Guetta, and the

3    Guetta attack, unlike most of the other attacks, was never

4    solved.  The crime was not solved.  We had a -- there was a

5    group of Palestinian Authority police officers who were

6    convicted of attacks very similar to the one that happened to

7    our plaintiffs in the same place and during the same general

8    time period.

9              THE COURT:  And your application is what?

10             MR. YALOWITZ:  And so our application was that we

11   didn't know about this particular shooter until after the close

12   of discovery and we wanted to add him to the list of people for

13   whom we were seeking documents from the defendants.  So for

14   example, the defendants should have payroll records on him,

15   they should have -- they have his martyr file, which we have a

16   copy of from another case, but whatever, you know -- they have

17   intelligence files on him.  Whatever they have on him should be

18   turned over.  And the reason we didn't request it during the

19   fact discovery period was because we didn't know he was the

20   shooter and it wasn't --

21             THE COURT:  Well, why not is the question.

22             MR. YALOWITZ:  Because the crime was not solved.

23             THE COURT:  But I mean, why do you know it now and

24   didn't know it then?

25             MR. YALOWITZ:  Sure.  So in February of 2013, our

E341soka

1    investigator procured a photo array that included this

2    individual.

3        THE COURT:  Is there any reason why your investigator

4    couldn't have procured that earlier?

5        MR. YALOWITZ:  Well, your Honor, I will say I don't

6    believe that we thought we were going to have to go to the

7    lengths that we eventually went to because we thought we were

8    going to get more information in discovery, and it was only

9    after discovery was cut off that we understood that we didn't

10   have the information we thought we would have.

11       THE COURT:  Well, you never had the information that

12   you thought you were going to have until you got it.

13       MR. YALOWITZ:  What we got was a photo and we then

14   showed the photo to the plaintiff in an array, and she ID'd the

15   shooter, one of the shooters.  And so we're now in a position

16   where we would like information relating to this individual to

17   show that he was involved in similar crimes, to show that he

18   was on the payroll of the defendants, to link him, if not to

19   the particular crime, to the pattern of crimes that occurred in

20   this area at this time, of which he was a member of the, for

21   lack of a better word, the gang of people that perpetrated the

22   crimes.

23       THE COURT:  But I assume that you asked the general

24   questions that would have included those participants of the

25   defendants and they responded, I assume, that --

E341soka

1          MR. YALOWITZ:  I believe they refused to provide the

2     discovery, your Honor.  It was before I was in the case.

3          THE COURT:  I'm not talking about that.  I assume you

4     asked them for discovery that would have disclosed this

5     individual, had they properly responded to it, and your

6     argument is not that they didn't properly respond to the

7     discovery but that now that you've shown the witness the photo,

8     now you want them to give you more information about this

9     individual when they never disclosed any information about this

10    individual in response to any of your requests.

11         MR. YALOWITZ:  I think that's right, your Honor.

12         THE COURT:  Well, then what makes you --

13         MR. YALOWITZ:  I think what you said is right.  You

14    know, it wasn't -- I wasn't in the case when this occurred --

15         THE COURT:  Right.

16         MR. YALOWITZ:  -- but from reading the papers, what

17    appears to me what happened is, the plaintiffs asked very broad

18    document questions, as plaintiffs generally do.  The defendants

19    objected that it was too broad.

20         THE COURT:  Right.

21         MR. YALOWITZ:  There was a dispute.  The dispute was

22    taken to Judge Ellis and ultimately to your Honor.

23         THE COURT:  Right.

24         MR. YALOWITZ:  And the result was that the defendants

25    successfully resisted the broad discovery that would have given

E341soka

1    us the information about a whole array of people.

2          THE COURT:  But I don't know what that is.  You didn't

3    articulate to Magistrate Judge Ellis, nor have you articulated

4    to me in what way that you stated your direct response request

5    that would have disclosed the information that would have put

6    you in a position during discovery to have what you need.  I

7    still don't have any basis to understand what it is that Judge

8    Ellis -- Judge Ellis just basically said, look, this is a

9    little late for you to tell me after discovery closes that now

10   you want something that you say should have been given to you

11   all along, but you don't tell him or me in response to what

12   request you should have been given this information, how you

13   should have been given a different response.  So I'll look at

14   it more specifically, but at this point, unless you direct my

15   attention to it, I don't have any specifics that gives me a

16   basis to say that you should have a right to now demand further

17   discovery when there's no basis to conclude that they responded

18   inappropriately to your discovery requests and there's no basis

19   to conclude that you thought you had an inadequate response and

20   you asked the court to grant you further relief to make them

21   give you the information that you now say that, you know, you

22   think that they have that you want because now you've done a

23   photo array.

24         MR. YALOWITZ:  So your Honor, we have submitted the

25   original document requests -- they were attached to my

E341soka

```
 1   affidavit -- and our objection.  I'm sure your Honor has had a
 2   chance to look at them, along with the large amount of paper in
 3   this case.  And I've just flipped to Exhibit T, which asks for
 4   all documents concerning the terrorist attack, including
 5   without limitation in the paper files of a variety of agencies.
 6               THE COURT:  Right.
 7               MR. YALOWITZ:  And so I think that --
 8               THE COURT:  And their position was that, and still is,
 9   that this photo was not in response to that and that
10   information about this individual was not their response.  Now
11   your position now is that you've subsequently had an
12   identification that makes this person someone who's been
13   identified, but --
14               MR. YALOWITZ:  Right.  It's newly discovered evidence.
15   It's newly discovered evidence.  So we said give us everything.
16               THE COURT:  It may be newly discovered evidence, but
17   it was not what they say.  You say this is the guy now, after
18   discovery is closed.  They never said this is the guy and they
19   don't say this is the guy now.
20               MR. YALOWITZ:  They don't -- that's true.  I agree.
21               THE COURT:  So it wasn't responsive to your request.
22   You say, give me all the information about this, and their
23   position is, this guy has nothing to do with it.  So they
24   didn't produce that.  See, it's unclear to me how it is you got
25   the photo and what that was in response to and --
```

E341soka

1              MR. YALOWITZ:  We got the photo through our own

2       efforts, and -- we got the photo through our own efforts and --

3              THE COURT:  Well, then, again, my question is the

4       same.  Why couldn't you, through your own efforts, have done

5       what you did to get the photo before discovery had closed?

6              MR. YALOWITZ:  So, your Honor, as I said, I wasn't in

7       the case so I don't know.  I believe the answer is that we were

8       perhaps unwisely thinking that we would get a broader amount of

9       discovery than we got and so --

10             THE COURT:  But not getting it, I can't fault

11      Magistrate Judge Ellis for saying that --

12             (Counsel conferring)

13             THE COURT:  I mean, you want me to fault Magistrate

14      Judge Ellis for saying that he's not going to open up discovery

15      now because you guys made the mistake by not uncovering this

16      sooner and have no legitimate argument that you were somehow

17      prevented from being in this position while discovery was going

18      on for quite some time, and, I mean, you can't even fault the

19      other side for not disclosing this photo to you or this photo

20      array because that wasn't part of their late discovery, it was

21      part of your late determination, and as I say, I don't know

22      what the argument is, that you found this out on Wednesday and

23      Tuesday was the deadline and why you couldn't have found this

24      out on Monday.

25             MR. YALOWITZ:  Well, your Honor, you know, I hear what

E341soka

 1   you're saying, and candidly, I'm just trying to position -- to

 2   explain it.

 3           THE COURT:  I understand.

 4           MR. YALOWITZ:  I can tell you that, you know, this is

 5   a case in which -- this is a case in which a woman and her

 6   12-year-old son were raped by machine gunfire by four men with

 7   Kalashnikov rifles at a place and time where we now know many

 8   employees of the defendants were doing that to civilians, and

 9   so this is a woman who, we thought we had identified one of the

10   shooters.  She had in her mind's eye -- her testimony is, she

11   had in her mind's eye --

12           THE COURT:  Another person.  A different person.

13           MR. YALOWITZ:   -- a very clear picture of the shooter,

14   and we thought it was somebody else, and when we showed her a

15   picture of the person who we thought it was, she said no,

16   that's not him.  So which, you know, to her credit, and

17   that's -- so I don't know as I stand here today the chronology

18   of who did what when, and I'm not -- I don't want to stand here

19   and criticize Judge Ellis.  He's been diligent, he's been, you

20   know, very solicitous of the parties, but I think on this one

21   issue, I think that some mercy is warranted, because we have

22   evidence that we believed to exist that would link this

23   individual quite closely to the defendants.  We have other

24   evidence.  It's not like it's going to kill the case.  I'll --

25           THE COURT:  That's what I was going to say.  Even what

E341soka

 1    you're demanding now seems to me to be cumulative rather than

 2    the only evidence that you think that you have that he had some

 3    connections with the defendants.

 4           MR. YALOWITZ:  Well, you know, we're plaintiffs and so

 5    we -- I mean, we want -- we don't want to overwhelm the jury

 6    with duplicative evidence, but I think the payroll records and

 7    the intelligence reports, which we've gotten for all the other

 8    perpetrators, would be appropriate to get here in the

 9    circumstances, and in particular, although we have a very nice

10    photo of this fellow and we have other photos, it would be good

11    to be able to get the photo from the defendant.  We asked the

12    Israeli authorities for the photo, through like a FOIA type

13    request --

14           THE COURT:  Right.

15           MR. YALOWITZ:  -- and they said, we can't give you the

16    photo without the permission -- it's a joint database, and

17    we're not going to officially provide the photo without the

18    defendant -- without the PA agreeing.  They have a lot of

19    joint, you know, work that they do.

20           THE COURT:  I understand.

21           MR. YALOWITZ:  And so I will say, I'm not going to

22    stand here and say it will kill this woman's case, because I

23    don't think it will kill the case, but I think in fairness, the

24    jury ought to have a complete picture, and I think given the

25    circumstances and given the lack of prejudice to the defendants

E341soka

 1    and given especially how long, you know -- we've been getting

 2    documents trickling out from the defendants in March, over the

 3    summer, in December, even as late as January.  We're still, you

 4    know, almost a year away from trial, and I don't think that in

 5    fairness they would be prejudiced by producing this

 6    information.  And without faulting Judge Ellis, I think this is

 7    a case where justice would warrant asking -- commanding the

 8    defendants to produce this very limited category of

 9    information.

10            THE COURT:  All right.  Well, I'll look at it one

11    final time, but obviously I think that there are two other

12    compelling issues.  One is that there's got to be some finality

13    to discovery and it should be and has been done in a way that's

14    fair to both sides and, you know, and we have to abide by a set

15    of rules.  Otherwise, right up until the trial is over, I'll be

16    hearing mercy arguments.  That's not what compels the rules

17    that have to apply to both sides, because I'm sure that there

18    will be a time when you're going to say that they haven't

19    abided by the rules and sympathy shouldn't persuade me to allow

20    them to skirt those rules even though they were fully aware

21    that those rules had to be abided by, and as you say, it may

22    not be undue prejudice but it is clearly prejudice, because

23    it's clearly not to their benefit and clearly to your benefit.

24    It may be appropriate to do so under the circumstances, but as

25    I say, the parties, you know, had a full opportunity to do

E341soka

1   discovery, everyone knew what the bounds of that discovery and

2   the time frames of that discovery was going to be, and as you

3   say, this is an issue that is not otherwise fatal to your

4   client's case.  It is an additional piece of evidence that you

5   would like to have if it exists that you did not determine in a

6   timely manner.

7           So, you know, it might have been a more compelling

8   argument to make up front to me or to Judge Ellis, not a review

9   of whether or not Judge Ellis made the wrong determination.

10  Again, I don't review it on the basis of if I were in Judge

11  Ellis' situation, would I have made the same decision.  I view

12  it on the basis of whether or not Judge Ellis appropriately

13  made a decision consistent with the law and the facts and

14  didn't misapply them and that it was within Judge Ellis'

15  discretion, consistent with the way he conducted discovery, to

16  deny a request after the close of discovery to reopen discovery

17  on this issue because the plaintiffs now believe that

18  determining it subsequent to discovery might be to their

19  advantage to do so.  So I'll look at it again but that did not

20  compel that any issues had been raised that suggest that Judge

21  Ellis inappropriately handled it with regard to the conduct of

22  discovery.

23          MR. YALOWITZ:  We certainly appreciate your Honor

24  taking one last look at the papers.

25          I'll just leave the court with -- and I hear your

E341soka

1    tentative views and I respect them.  Just two thoughts I think

2    are important.  One, I don't believe the plaintiffs skirted

3    discovery rules here.  I think --

4        THE COURT:  No, I don't think they did at all, but I

5    think it is outside of the rules that are set that now that you

6    have discovery, after discovery is closed, and I'm sure

7    Magistrate Judge Ellis anticipated and the parties anticipated

8    that you might determine that you wish you had asked for

9    something in a timely manner when discovery was open and you

10   still would like it, it would be helpful to you if you could

11   get that, but, you know, the rules don't allow for that.

12       MR. YALOWITZ:  Sure.  The other thing I would ask your

13   Honor is, in reviewing the papers, if you would pay close

14   attention to Exhibit T, which is that very broad request,

15   because I think the court might conclude on review and

16   reflection that the files we're seeking are fairly encompassed

17   within Exhibit T.  But you'll take a look at that I'm sure and

18   reach a just conclusion.

19       THE COURT:  All right.

20       MR. YALOWITZ:  And just -- I don't want to belabor it,

21   but I will say that the defendants requested and received

22   curative discovery from plaintiffs.  They asked for a further

23   deposition of Mrs. Guetta, they gave very -- they spent a long

24   time with her, she gave very fulsome testimony, and to the

25   extent that they might have been prejudiced by the late

E341soka

1   disclosure, I don't think there's any argument that there is

2   because that was cured, and we're just asking for some

3   reciprocity in that regard.

4           THE COURT:  Okay.  I will do that.

5           MR. YALOWITZ:  Thank you so much, sir.

6           THE COURT:  Anything final from defense?

7           MR. ROCHON:  Only by way of scheduling, your Honor.

8   We had previously discussed April 4th and April 8th.  I

9   think the issues are important enough that I would like to be

10  present for the hearing, and I'm wondering if April 11th is a

11  day that would be available to the court.  Mr. Hill would be

12  able to come back early from whatever holiday he has and the

13  three of us could be missing part of our firm retreat, so it

14  would have this added bonus.  Is April 11th a day that you

15  could have the hearing on the motion?

16          THE COURT:  The problem is, I start trial that week.

17  I'm supposed to be on trial.

18          MR. ROCHON:  We had discussed April 8th.  If

19  April 11th is not good for the court, we can fall back to

20  April 8th, and Mr. Hill will not be able to be here.  But I

21  do think that given the issues, that Mr. Hill would like to be

22  present.

23          THE COURT:  I'll do April 11th.

24          MR. ROCHON:  Thank you, your Honor.

25          THE COURT:  The only thing is that, depending on

E341soka

1    whether that trial in fact goes and what the status of the

2    trial is, it's possible that I may push you till the afternoon

3    rather than the morning.

4            MR. ROCHON:  Do you want to just set it for the

5    afternoon, your Honor?

6            THE COURT:  Why don't we set it for 2:00 at this point

7    and I'll send the jury home early for their weekend.  So 2:00.

8            MR. ROCHON:  Thank you for your consideration on that,

9    your Honor.

10            THE COURT:  All right.  Then I'll see all the parties

11    at that time and I'll review the papers and I'll resolve this

12    other issue.

13            MR. YALOWITZ:  Thank you for giving us so much time

14    today, your Honor.

15                              o0o

16

17

18

19

20

21

22

23

24

25