```
15QJSOKM                       Motions
```

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MARK I. SOKOLOW, individually and
     as a natural guardian of plaintiff
 4   Jamie A. Sokolow, et al.,

 5                Plaintiffs,

 6          v.                                04 Civ. 397 GBD RLE

 7   PALESTINE LIBERATION ORGANIZATION,
     et al.,

 8
                 Defendants.
 9
     ------------------------------x
10

11

12                                           May 26, 2011
                                             10:07 a.m.
13

14

15   Before:

16                     HON. GEORGE B. DANIELS,

17                                           District Judge

18

19

20                        APPEARANCES

21
     ROBERT JOSEPH TOLCHIN,
22        Attorney for plaintiffs

23   MARK J. ROCHON,
     BRIAN A. HILL,
24        Attorneys for defendants

25

15QJSOKM                          Motions

```
 1              (In open court)

 2              (Case called)

 3              THE COURT:  Mr. Rochon, let me start with your motion.

 4              MR. ROCHON:  Yes, sir.

 5              THE COURT:  Let me first ask first a basic question

 6    which I don't think any of the parties addressed.

 7              Why is this subsequent motion a motion that is even

 8    allowed by Rule 12?

 9              Rule 12 says that if you have a motion based on venue,

10    and you make a 12 (b) motion, you're supposed to make it in

11    that motion, and if you don't, you can't make your motion.

12              How do you get past that rule?  Even the commentary

13    uses it as the example.  If you have a motion for defense of

14    venue, and you don't raise it in your 12 (b) motion, you can't

15    come back and make a subsequent motion.

16              why is this a motion that should be entertained now?

17              MR. ROCHON:  I imagine Mr. Tolchin will eventually

18    argue to you he has raised that issue more or less because he

19    claimed we have waived this issue.  It is our position, your

20    Honor, we have not filed under 12 (b).  We haven't filed this

21    motion as a motion under 12 (b).  We filed under the transfer

22    venue statute, which provides for, in an instance where a case

23    is misvenued, to either dismiss all or in the interest of

24    justice for transfer to a district or division where it could

25    have been brought.
```

1                THE COURT:  Well, that statute doesn't provide the

2      vehicle by which the court is supposed to make that

3      determination.  There are only certain kinds of motions that

4      can be made.  That section doesn't say you have a right

5      independent of 12 (b) for summary judgment or anything else to

6      make a motion under that section.  That section doesn't deal

7      with your right to make a motion at all.  There are only

8      certain kinds of motions.

9                What kind of motion is this if it is not a 12 (b)

10     motion?  If it is simply a motion as described in 12 (b),

11     raising a defense of venue under the statute, I guess you're

12     talking about 1406?

13               MR. ROCHON:  Yes.

14               THE COURT:  1406 doesn't say you get to raise this

15     issue in any other manner other than as a defense in your

16     answer and a defense at trial or by way of motion under 12 (b)

17     or by way of motion in summary judgment.  What other motion is

18     there other than those motions?

19               MR. ROCHON:  Your Honor, a few comments.

20               The first will be we have raised it as a defense in

21     this case, the venue issue.

22               Secondly, I understand the court, but I might

23     respectfully disagree with the court because I think the

24     statute does provide for relief when a case is misvenued, and

25     that issue can be raised with the court not simply through a 12

15QJSOKM                        Motions

1    (b).  I think it is properly raised under that statute to raise

2    what we call the wrongly venued matter here.

3            The bases for the motion are bases we have argued to

4    the court in our papers, are bases that are properly raised at

5    this time because the factual basis for it turns on your ruling

6    in this case as to personal jurisdiction.

7            We would contend we certainly haven't waived it and it

8    is properly brought under 1406 because 1406 provides for a

9    remedy that is not simply dismissal.

10           THE COURT:  You're seeking dismissal?  Are you not

11   seeking dismissal?  You're only seeking transfer?

12           MR. ROCHON:  We are moving under 1406.  The case is

13   asserting the wrongful venue and saying to the court it can be

14   dismissed, or in the interest of justice, can be transferred.

15           To be candid, this is a case Mr. Tolchin has argued if

16   it were to be dismissed, the plaintiffs would be out of court

17   on the statute of limitations problem or some of them would be.

18   I think actually all of them would be, and I think it is likely

19   you would exercise your discretion to transfer rather than

20   dismiss.

21           THE COURT:  I am not as concerned about my discretion;

22   I am concerned what your motion is.  Are you moving to dismiss

23   this case on venue grounds?

24           MR. ROCHON:  Both to dismiss --

25           THE COURT:  Don't give me both.

15QJSOKM                    Motions

1          MR. ROCHON:  In the alternative, to transfer.

2          THE COURT:  Are you, in fact, asking me to dismiss

3   this case on venue grounds?

4          MR. ROCHON:  Yes.

5          THE COURT:  Is that the nature of your motion?

6          MR. ROCHON:  The answer to your question is yes.

7          THE COURT:  Why is that not a motion to dismiss based

8   on venue that the statute specifically says, and I will read

9   you the commentary about it under Subsection (g):

10          "Thus, if the defendant moves before answer to dismiss

11   the complaint for failure to state a claim, he is barred from

12   making a further motion presenting the defense of improper

13   venue if that defense was available to him when he made his

14   original motion."

15          Isn't that pretty directly on point?

16          MR. ROCHON:  We would suggest to the court that the

17   bases for the defense at this juncture arises out of this

18   court's ruling on the context of the defendant with this

19   jurisdiction.

20          THE COURT:  Well, no.  The argument you made now is

21   the same argument you could have made then.

22          MR. ROCHON:  It is an argument, the factual basis for

23   which we asserted there is no jurisdiction in the United

24   States.

25          THE COURT:  Right.

1          MR. ROCHON:  We asserted there is not jurisdiction

2    here or anywhere.

3          THE COURT:  And you could have asserted there was no

4    venue, either.

5          MR. ROCHON:  That is, of course, if you have no

6    jurisdiction, obviously there is no venue, either.

7          THE COURT:  The grounds even you assert for no venue

8    are the exact same grounds you asserted for no jurisdiction.

9          MR. ROCHON:  And we prevailed in part on those grounds

10   as to this jurisdiction.

11         THE COURT:  Yes, but that is exactly what the rule's

12   trying to preclude, the piecemeal saying I am only going to

13   bring it if I prevail on a motion on jurisdiction, I am only

14   going to raise venue at a later time.

15         There is nothing, I don't hear you saying there was

16   anything that prevented you from making this motion at the time

17   you made the jurisdiction motion and prevailing if you thought

18   that you should have prevailed.  Nothing has changed.  The

19   facts haven't changed as you argue them and as you're arguing

20   for jurisdiction and the law hasn't changed from which you will

21   argue.

22         MR. ROCHON:  Have a couple of responses.

23         The first is, I think procedurally we should not be

24   disqualified from raising this issue either by converting it to

25   a 12 (b), and then you might say we should have raised it

15QJSOKM                         Motions

1    sooner or by raising we can bring, recognizing we can bring it

2    under the statute.

3           There is one critical fact that has changed.  The only

4    person who matters has said there is not sufficient contacts of

5    our client here for the purposes of jurisdiction.

6           THE COURT:  For the purposes of jurisdiction?

7           You made no issue, nor did I opine as to whether or

8    not there was sufficient contacts for the purpose of venue.

9           MR. ROCHON:  I agree with the court, but I also would

10   suggest to the court the case law is clear that contacts for

11   the purposes of jurisdiction are not different than the

12   contacts for the purpose of venue.  If there are disallowed

13   contacts under jurisdiction, there would also be disallowed

14   contacts under venue.

15          THE COURT:  I haven't seen a case that specifically

16   says that.  It depends on whether or not -- we are not talking

17   about -- quite frankly, no determination was made by me that

18   the contacts were insufficient, there were insufficient, few

19   contacts with New York for the purpose of jurisdiction.

20          I said the Klinghofer exception, despite the fact

21   there were great contacts with New York, indicated that the

22   Second Circuit said you cannot use those contacts for the

23   purpose of asserting, constitutionally asserting jurisdiction.

24   Venue is not -- an analysis of venue, and I haven't opined on

25   this, and quite frankly I don't think anyone has opined on

15QJSOKM                        Motions

1    this, that is what the plaintiff is afraid of, but the contacts

2    I analyze for venue have a different purpose than the contacts

3    that I analyze for jurisdiction.

4          The contacts I analyze for jurisdiction have to do

5    with the authority of the court to adjudicate the claim and to

6    have authority to issue judgments and orders against the

7    plaintiff.  The issue of venue primarily deals with the

8    convenience of the parties and whether or not it is fair and

9    within the interest of justice to litigate the claim over which

10   I do have jurisdiction, subject matter and personal

11   jurisdiction, over to litigate those claims in a particular

12   forum.

13         It is not a Constitutional barrier to litigating the

14   claim.  It is a question of whether or not there are sufficient

15   contacts with the jurisdiction so that it is not unfair to drag

16   the party from some foreign place to have to fight the case in

17   this remote jurisdiction.

18         Whether or not I would or the Second Circuit would or

19   any other court would say that under this statute, unique set

20   of circumstances where the assessment of jurisdiction is

21   somewhat different than the assessment of venue, that a

22   determination that certain contacts cannot be used for the

23   purpose of jurisdiction also means even though those contacts

24   exist, that those contacts preclude this district from being a

25   convenient forum for the litigation.

15QJSOKM                        Motions

```
 1              I don't think I have seen any case -- and I have a
 2      stack of cases I have been looking through -- I haven't seen
 3      any case that addresses that point.  I assume your argument, as
 4      I read your argument, is that look, because you said, when I
 5      made a motion to dismiss for personal jurisdiction that is
 6      consistent with Klinghofer, the contacts in New York that the
 7      defendant argues and the plaintiff has not sufficiently
 8      demonstrated are not contacts with the UN, UN activity, that
 9      because I rule that those were not sufficient to lay
10      jurisdiction or the contacts in DC were sufficient for
11      jurisdiction, that that somehow dictates a conclusion that
12      that's a decision with regard to venue or simply it can't be
13      used for the purpose of jurisdiction, that it means it follows
14      it necessarily can't be used for the purpose of venue.
15              Is that basically your position?
16              MR. ROCHON:  I hate to simply say yes because the
17      court did speak for a while.  I think the court has captured
18      some of the essence of the position.  First of all, we haven't
19      carefully used the word cognizable contacts.  I recognize it
20      was based on the Klinghofer decision.  I don't mean to
21      misconstrue your decision.  It is our view the Klinghofer
22      exception, which does apply to a foreign, not just another
23      state, but overseas entity applies with equal force essentially
24      to venue considerations as it does to jurisdiction
25      considerations.
```

15QJSOKM                    Motions

1          I understand that hasn't been ruled on explicitly, but

2     I don't see a meaningful reason to distinguish between hailing

3     a foreign entity, country or nescient country, whatever it may

4     be, into a place where there are not cognizable contacts for

5     jurisdiction, but to say nonetheless they should be held in for

6     the purpose of venue when venue, especially when venue has been

7     pled on the basis of the defendant's contacts, that is the case

8     here, what we have suggested, and you raise thorny issues,

9     Judge.

10          THE COURT:  I don't raise them.

11          MR. ROCHON:  You at least recognize them.  They're

12     resolved by moving the case to the District of Columbia.  We

13     are seeking to move the case there.  In other words, it is not

14     like we can move the case to the District of Columbia and then

15     say oh, you shouldn't have moved it there because you made a

16     finding on contacts there.  We're stuck with it for the

17     purposes of this case.

18          The plaintiffs have argued you shouldn't move it

19     there, and they really have a couple of reasons.  One of them

20     is delay.  There are two parts to the delay argument.  I find

21     one of them to be completely without merit, I have to be

22     honest.  It is there, there would be delay because you wouldn't

23     have to rule on this motion.  I just don't get that.  We

24     briefed it.  I can't imagine this court finding a way to not

25     decide it.  So the idea you avoid delay by not -- by somehow

15QJSOKM                     Motions

1    let's just send it to the Eastern District of New York and then

2    you don't have to grapple with these issues, that is not how

3    this case is pled.  I don't think there is analytical framework

4    in which this court could not reach the issues of the 1406

5    motion.

6           THE COURT:  Aren't you entitled to, though -- if

7    you're entitled -- under your motion if you're entitled to

8    relief based on venue at this point?  Aren't you entitled to

9    one of two things and not one of three things:

10          You're entitled to either dismissal or you're entitled

11   to transfer, but you're not necessarily entitled to transfer

12   where you want to go.  You're entitled to transfer to a place

13   where the case could have been brought at the time this case

14   was brought.

15          Obviously, you want to get to DC.  They want to go

16   across the bridge to Brooklyn.  How is it that you say that

17   you're entitled to be in DC rather than in Brooklyn, legally

18   entitled?

19          MR. ROCHON:  I will address this.

20          There appears to be some desire by the parties to get

21   to certain places.  By the end of this argument you'll see that

22   the defendants think some of the plaintiffs' asserted reasons

23   don't hold water.  Our view of the statute and the words "could

24   have been brought," we have noticed they're different than the

25   words in 1404, when a case is sought to be moved that is

15QJSOKM                      Motions

1  properly venued, that the court can consider in the interest of

2  justice move it to where it might have been brought.

3           THE COURT:  Okay.

4           MR. ROCHON:  1404 is "might."  1406 is "could."

5           THE COURT:  What is the substantive difference that

6  makes a different determination in this case depending on might

7  or could?

8           MR. ROCHON:  If the plaintiffs had pled their

9  complaint differently, they might have been able to bring it in

10  a lot of places.

11           THE COURT:  No, they can only bring it in places where

12  the statute would authorize they could bring it.

13           MR. ROCHON:  Which would include where the plaintiffs

14  reside.  They reside in a lot of places.  There could have been

15  a lot of places where they could have brought it.

16           THE COURT:  And they might have brought it.

17           MR. ROCHON:  Might have brought it.

18           THE COURT:  What is the difference?

19           MR. ROCHON:  When you do speak of "could have" -- and

20  I spoke loosely for a second -- when you talk about where they

21  could have brought this complaint, this complaint which bases

22  venue on the defendants' contacts, they have asserted in the

23  complaint a basis for the assertion of venue.  They did not

24  plead plaintiffs' residences as a basis for venue in this case.

25  They pled defendants' contacts.

15QJSOKM                          Motions

1         THE COURT:  That doesn't matter for the purpose of the

2    statute that you want me to proceed under or the purpose of the

3    statute they want to proceed under.  There is no requirement

4    that I can only entertain one or other motion to transfer

5    depending on how they alleged it in their complaint.  That is

6    not the analysis.  The analysis is whether or not this is a

7    place -- and I'll say it even differently when I have to

8    confront both of you on this issue -- I have to decide whether

9    or not it is a place that they could have and might have

10   brought it at the time.

11        Brooklyn is a place they that could have and might

12   have brought it at the time and DC is a place that they could

13   have and might have brought it at the time.  It doesn't matter

14   what they said in the complaint.  They could have said venue in

15   the complaint was based on contacts in California.  It doesn't

16   matter what they're alleging.  It matters whether or not they

17   could have and might have brought it in a particular

18   jurisdiction.  I still don't understand how you say the

19   language of, "could have" gives you some greater advantage than

20   the language of, "might have."

21        MR. ROCHON:  It is our position, your Honor, and I

22   understand it is our position when the language "could have"

23   refers to where the plaintiffs could have brought this

24   complaint, and the complaint is based on our clients' contacts,

25   what we're suggesting to the court where you filed, our

15QJSOKM                        Motions

1    contacts have contacts in the District of Columbia.  It could

2    have been brought there, this complaint.  This complaint pleads

3    venue based on our clients' contacts could not have been

4    brought in Brooklyn.

5            THE COURT:  No.

6            MR. ROCHON:  We are not present in Brooklyn.

7            THE COURT:  You have just, as they say, your words

8    have just betrayed you because the statute does not say where

9    the complaint, this complaint could have been filed or could

10   have been brought.  It says where the case could have been

11   brought.  So you can't -- if your argument is based on well,

12   the complaint as it is written could only have been brought in

13   New York because they allege New York contacts, that is not

14   what the rules say.  It says where the case could have been

15   brought.

16           If the case at the time could have been brought on

17   this complaint or any other complaint, it seems to me that the

18   law is fairly consistent that that's what's determinative, not

19   whether or not this complaint, an amended complaint, a

20   different complaint, a second amended complaint, would have

21   been sufficient in a particular venue.  It is whether or not

22   this case, there is sufficient facts that are consistent with

23   the venue statute that would have allowed, could have allowed

24   them to bring the case there and is a place they might have

25   brought it if they realized they're going to have all the

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                    Motions

1   problems with you they're having today.

2           You know, I assume it is not your argument that they

3   could not have sued your clients for the claims that they're

4   asserting against your client in Brooklyn.  That is not your

5   position?

6           MR. ROCHON:  When you phrase it that way, our position

7   on interpreting the statute is clear.

8           THE COURT:  I understand that.

9           MR. ROCHON:  If you're saying had the plaintiffs filed

10  an original complaint, and they asserted venue based on where

11  they resided, not where my client resided -- in other words, in

12  a different case, it could have been brought there --

13          THE COURT:  In the standing case.

14          MR. ROCHON:  -- I think it does matter how venue is

15  pled in the complaint.  The plaintiffs brought our clients to

16  the United States of America for this litigation, asserted a

17  basis to have venue in the United States of America, and now

18  want to abandon that theory of venue and go to a new one in

19  light of the fact they had some lack of success on the contacts

20  with this jurisdiction.

21          Our view is they shouldn't then get to pick, and we

22  have to look at, and I think you should look at the complaint

23  as pled and the bases for this.

24          THE COURT:  I don't know of any case law that supports

25  your position because what you would be arguing -- and I think

15QJSOKM                        Motions

1   that both in case law and logic, it is not supported -- what

2   you would be arguing is under any transfer of venue, that I am

3   precluded to transfer venue, I am limited to what they asserted

4   was the basis of the venue in the complaint.

5           So if they asserted that they allege that the

6   defendant resides in New York and that's what they said in the

7   complaint, and now they want to transfer the case for forum non

8   conveniens reasons to California because all of the witnesses

9   and everybody and the parties live in California and all the

10  plaintiffs live in California, your argument would be somehow

11  I'm precluded from transferring it to California because they

12  didn't allege as a basis for venue the fact that they lived in

13  California originally.  There is nothing that jurisdictionally

14  prohibits me from transferring it to a place where it might

15  have been brought.

16          MR. ROCHON:  I don't think I am arguing that.  You're

17  describing a 1404 motion.

18          THE COURT:  That is their motion.

19          MR. ROCHON:  That is their motion, a case which is

20  brought when this case is properly venued, but we are not

21  proper, in our view.  You may disagree with me.  The

22  defendants' view, we are not currently properly venued here.

23  You can't reach the plaintiffs' motion under 1404 unless you

24  determine that we're properly venued here, and we are moving

25  otherwise.

1           THE COURT:  But, no, no.  Even if I would have granted

2      your motion, even if I were to grant your motion and say okay,

3      let me agree with you, that still doesn't tell me where I get

4      to transfer it to, right?

5           Even if I go on 1406 and say you have totally

6      convinced me it shouldn't be here, I have to find another place

7      where it could have been brought, it is still going to give me

8      DC and Brooklyn, isn't it?

9           MR. ROCHON:  Here is where we have sharpened our area

10     of potential disagreement for the purpose of our colloquy.  I

11     hope we agree at the end.

12          For the purpose of this colloquy, I believe 1404 and

13     1406 with their different standards and the different

14     interpretations under which you transfer under 1406, in our

15     view, if the plaintiffs bring a case in a district or division

16     without proper venue, it should not come as a surprise their

17     opportunity to move it elsewhere won't be as liberal as if they

18     brought it in a properly venued jurisdiction.

19          THE COURT:  Why?

20          MR. ROCHON:  Because they already hailed the defendant

21     into the wrong courthouse, and it should not come as a

22     surprise, therefore, they can't just move them about quite as

23     readily as if they brought them into the right courthouse so

24     they were there and there was a discussion whether the case

25     should be moved.  In our view, 1404 -- and cases discuss

15QJSOKM                    Motions

1   this -- in our view, the plaintiffs should not be so easily

2   able to have in a case wrongly venued, move the defendants

3   about as they wish.

4           THE COURT:  Yes, but I am not talking about 1404.  I

5   am talking about let's assume I agree with everything you say

6   about the appropriateness of doing this and having to

7   articulate that I have to do this under 1406.  Even if I do it

8   under 1406, it doesn't necessarily give you the right to choose

9   where it goes.

10          MR. ROCHON:  I think we interpret -- for the purpose

11   of this colloquy, it may be we have disagreed on an aspect of

12   it.  We interpret the language "could have been brought"

13   differently than the court is.

14          THE COURT:  You say "could have" means only how

15   exactly this complaint reads now, that that is the restriction.

16   It doesn't mean, as they say, doesn't mean exactly what it says

17   that the court in the interest of justice can transfer such

18   case to any district or division in which it could have been

19   brought.  The case, that is what it says.  It doesn't say the

20   complaint.  It doesn't say, doesn't limit it to anything other

21   than the nature of the case.

22          MR. ROCHON:  Actually, this language of interest of

23   justice, your Honor, is again in both statutes --

24          THE COURT:  Right.

25          MR. ROCHON:  -- in different places, and you read

15QJSOKM                    Motions

1   those two, interest of justice in 1406 is not modifying the

2   question of where you can send it.  It is modifying whether you

3   dismiss it.

4            THE COURT:  Right.  I understand that.

5            MR. ROCHON:  Whereas, in 1404 when they talk about the

6   interest of justice, they're talking about where you send it.

7   They're different statutes.  I understand the court --

8            THE COURT:  I am trying to understand, you are not

9   arguing it is not in the interest -- as a matter of fact, you

10  argued just the opposite -- you're not arguing it is not in the

11  interest of justice to transfer this case as opposed to dismiss

12  it.

13           You're arguing about whether or not it is in the

14  interest of justice to transfer this action to another

15  district, and I am not sure what else are you saying that the

16  interest of justice means other than for the convenience of the

17  parties and the witnesses under 1404.  I think it is properly

18  broader than that, but that is the only thing that is

19  articulated.

20           I don't hear you saying, you arguing that it is not in

21  the interest of justice to transfer this as opposed to dismiss

22  it or that you're arguing it is not in the interest of justice

23  to transfer it to Brooklyn as opposed to DC?

24           MR. ROCHON:  When you talk about interest of justice,

25  what really matters to the defendants is whether you're talking

1    under 1404 or 1406 how those words, what those words, what they

2    mean.

3            THE COURT:  You're not arguing it is not in the

4    interest -- there is an articulatable way to say it is not in

5    the interest of justice to transfer this case as opposed to

6    dismiss it under 1406, or in the interest of justice not to

7    transfer it to Brooklyn as opposed to the interest of justice

8    demands that I transfer it to DC.

9            MR. ROCHON:  Again I guess where we're -- the

10    defendants -- are, I would like to lay out our analytical

11    position how we think the court ought to approach the issues.

12            The plaintiffs have argued we have waived this issue,

13    and the court has started the argument with questions along

14    those lines.  If you decide we have waived this issue, then I

15    think you reach the plaintiffs motion under 1404; but when you

16    decide we have waived it, now we are properly venued before

17    you.

18            THE COURT:  Let me let you finish, but let me put that

19    issue aside.  That is their argument you have waived it.  My

20    questions were not about waiving.  I am not inquiring whether

21    you have waived it.

22            What I see the circumstances are, you made a motion to

23    dismiss, you made a motion raising the defense of venue.  The

24    statute says, the rule says if you make a motion and you don't

25    raise that in your motion, you can't make a subsequent motion

15QJSOKM                    Motions

1    raising that.

2              Now, I understand that even though you made the motion

3    and you didn't raise it in the motion when you filed the

4    answer, you put it in your answer.  It is a different question

5    whether you still have the right to pursue that defense.  That

6    wasn't my inquiry.  My inquiry is whether or not you have the

7    right to make successive motions, one, two, three, four, 15

8    motions, 15 motions raising defenses, asking to dismiss the

9    case, raising those defenses when the statute says no,

10   procedurally that is not the way, even if you don't waive the

11   defense, procedurally you can't piecemeal the motions that way.

12             That is my question.  I am not trying to imply I was

13   asking you about waiver itself.

14             MR. ROCHON:  Understood.  It is plaintiffs' argument

15   you may never waive this issue, and you are suggesting it might

16   not be properly raised via this statute at this time, which in

17   our view you would then reach, would reach the 1404 motion

18   which has particular problems.  The plaintiffs say we shouldn't

19   go to the District of Columbia and test that.

20             The first thing they say, the delay would come from

21   ruling on this, and I'll frankly hear further from you on that

22   but, Judge Daniels, you will have to decide the issues and you

23   will decide them, I am sure, carefully.  I may not always

24   agree, but I am confident you'll be careful.

25             The next question, they say there will be delay

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                        Motions

1   because you have to revisit all of your rulings in the District

2   of Columbia.  I have two things to say:

3          First of all, the District of Columbia judges, who I

4   know very well, would give short-shrift to such an effort;

5          Secondly, if you moved it to the District of Columbia,

6   we commit not to revisit your rulings.  We are not trying to go

7   to the District of Columbia to file darn near frivolous motions

8   to reconsider rulings issued by this Court.  To the degree they

9   raise that and say of course we are going to do so, on behalf

10  of the defendants, I am telling you we will not.

11         Secondly, they say we are -- they also say it is some

12  sort of delay I guess associated with the going to the District

13  of Columbia.  I live there and practice there.  The judges

14  there I believe are competent and I don't think they will be

15  unnecessarily slow.  Therefore, the idea of delay is not

16  proper.

17         But to the degree you rejected all our other arguments

18  on 1406 and our interpretation of it and their interpretation

19  of 1404, et cetera, and you got to the idea you can send this

20  case to any place where it could have brought, we were served

21  in the Eastern District of Virginia, Alexandria Division.  That

22  is a place if you reject our other arguments where there would,

23  therefore, be venue.

24         THE COURT:  That is not DC.

25         MR. ROCHON:  That is not DC.  I am telling you it is

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15QJSOKM                    Motions

1    the so-called rocket-docket.  If you deny parts of our

2    argument, you can send us there, we'll be done with this case

3    in a year or less.

4             THE COURT:  I don't understand.

5             MR. ROCHON:  His argument that this is about delay,

6    the defendants find -- we haven't delayed this matter, in our

7    view.  Even if they think so, certainly since we have been in

8    the case, we haven't done anything to delay this matter, in our

9    view.

10            Mr. Tolchin says there have been other cases where the

11   defendants have sought extensions of time.  Mr. Tolchin and I

12   litigate with each other in these cases often.  He seeks

13   extensions of discovery.  I oppose them.  That is civil

14   litigation.  A judge can say a defendant has time to end the

15   case, hoary litigation, and calls it to an end.

16            The fact of the matter, there the judges know how to

17   manage their docket.  Worst comes to worst, and you want to

18   send it somewhere and you reject our other arguments, there is

19   also a basis to send it to the Eastern District of Virginia.  I

20   would like the court to ask Mr. Tolchin how do you feel about

21   that if you're so concerned about speed.

22            THE COURT:  I ask you both the same question.  Why

23   don't you want to go to Brooklyn?  And why don't they want to

24   go to DC?  That is the only question.  I don't hear any

25   compelling arguments that indicate to me that I should

15QJSOKM                       Motions

1    naturally assume this case is better off someplace for anybody.

2           The argument you just made to me is that I send the

3    case across the river to the judges over there that I know, and

4    I am sure that the case will be litigated on its merits and

5    there will be a fair and efficient determination.

6           You are broadening your stance now.  We don't have to

7    necessarily have to transfer it to DC.  I can transfer the case

8    to Virginia if you want, but just don't transfer it to

9    Brooklyn?

10          MR. ROCHON:  There is a suggestion by the plaintiffs

11   that somehow the defendants are wrongly motivated in this

12   motion.  I am suggesting to the court that can be tested.

13          THE COURT:  That is not a determinative factor in my

14   assessment of whether or not transfer is appropriate and which

15   district would be an appropriate and not convenient forum in

16   which to resolve these disputes.  I am not sure anyone has

17   articulated for me why any of these forums are more

18   inconvenient than any other forum.

19          MR. ROCHON:  In that regard, I should address a couple

20   of other points made by the plaintiffs before you turn to Mr.

21   Tolchin.  One of the more cleaver things Mr. Tolchin has done

22   on pages 16 to 17 of his initial motion, he referred to the

23   litigation in the Eastern District and cited a few cases that

24   he brought there, and he parenthetically called it "related

25   cases."

15QJSOKM                    Motions

1           Just so it is clear, those are not related cases under

2     that term of art as it is understood.  If the case ended up

3     there it, would not be a related case.  The cases he refers

4     aren't even in the front of the same judge.  Clearly the

5     related case doctrine, I don't want the court to think that is

6     met here.

7           THE COURT:  If you want transfer out of this district,

8     that is what you're entitled to.  I am trying to understand why

9     you don't want to go to Brooklyn, that is all.

10          MR. ROCHON:  Your Honor, I think Mr. Tolchin has made

11    a tactical decision for some reason he doesn't want to go to

12    District of Colombia.

13          THE COURT:  You're making a tactical reason for some

14    reason you don't want to go to Brooklyn.  I am trying to pull

15    it out of both of you.  Is there something you want to

16    articulate to me other than your tactical reason?  I assume he

17    doesn't want to go to DC and it is your tactical reason you

18    don't want to go to Brooklyn.  Is there some other substantive,

19    legitimate reason somebody can articulate to me one forum is

20    inappropriate?

21          MR. ROCHON:  I have a good one which I think is on our

22    argument, your Honor, the forum that the case would need to be

23    transferred to is the District of Colombia.  The degree the

24    plaintiffs say they're worried about the possibility of

25    appellate review and issues being created, et cetera, their

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                    Motions

1    notion is you can resolve all of that by sending it to the

2    Eastern District of New York is not supported because, in fact,

3    our arguments are that the court may not send it there under

4    our analysis of 1406.  I understand you have asked me

5    questions.

6        THE COURT:  Why don't you want me to send it there?

7    That is what I am asking.  You don't care or you don't want to

8    be in Brooklyn?

9        MR. ROCHON:  Frankly, I would like to go to the

10   District of Columbia.  Failing that, your Honor, we don't have

11   an aversion to this courthouse, this court, and this court has

12   had this case for a considerable period of time.

13       THE COURT:  You guys are giving me limited choices,

14   and that is not one of them.  The choices you're giving me,

15   Judge, it is compelling to transfer this case to DC.  The

16   plaintiff is saying, Judge, it is compelling to transfer this

17   case to Brooklyn.  Quite frankly, neither side has articulated

18   a particularly compelling reason to go any particular place or

19   any other place or any particular compelling reason that the

20   place you want to choose is a better forum in which to litigate

21   this case.

22       MR. ROCHON:  Right.

23       THE COURT:  The only thing I can analyze is whether or

24   not -- let me put it this way:  It is unlikely I will dismiss

25   this case.  That is not in the interest of justice.  The

15QJSOKM                     Motions

1    interest of justice is here, unless you have some more

2    legitimate arguments to make, would clearly indicate even under

3    your analysis it would be more appropriate to transfer this

4    case rather than dismiss it if the relief you're looking to is

5    to have it transferred or dismissed.

6           My attitude is that is what you're entitled to.

7    You're entitled to transfer out of this district.  You're

8    entitled to transfer out of this district and entitled to

9    another district where this case can be litigated, this case

10   can be litigated on its merits, and you're entitled, and I

11   should take into consideration with which district I choose,

12   the convenience of the parties and the witnesses..

13          I don't think the statute, whether it is under your --

14   if anything, the statute you're proceeding under gives you less

15   choice about where it should go than the statute that they're

16   proceeding under because the statute they're proceeding under

17   clearly indicates that I should at least consider the

18   convenience of the parties and the witnesses.

19          Your statute is basically, you know, no, you're wrong,

20   in the wrong venue, get out of here.  That is exactly what you

21   have, not the right to pick and choose where you want to go.

22   They have more of a right.  You analyze it another way, I

23   understand the analysis they put it in the wrong forum and they

24   shouldn't expect to pick their forum.  That doesn't get you to

25   pick.  That means I get to choose, not you unless you can tell

15QJSOKM                    Motions

1    me some choice is much more compelling in the abstract than any

2    other.

3          Quite frankly, I'm not quite sure what it is

4    tactically because I don't think there is any substantive

5    reason for either one of these motions.  Tactically, I am not

6    quite sure I can guess, surmise what the two of you even are

7    trying to accomplish by your motion, but I don't have a, I

8    can't articulate for myself a way to describe that DC is the

9    place where it is so compelling to be as opposed to Brooklyn,

10   as opposed to Virginia.

11         MR. ROCHON:  Maybe I can do a better job.  I hope so.

12         I represent a foreign entity that has quasi, through

13   the PLO, diplomatic relations with the United States.  In New

14   York City those contacts aren't cognizable, and in the District

15   of Columbia where they are.  As a foreign litigant,

16   particularly this foreign litigant, being hauled into not the

17   nation's capital has some significance.  It is the place where

18   the business of the United States is principally conducted.  It

19   is where the foreign policy of the United States is principally

20   conducted.  I am not suggesting the State Department will come

21   in and do something there they wouldn't do anything else.

22         If the court recognizes that as a foreign litigant and

23   as a principal litigant that is not overly familiar with the

24   judicial process of the United States, and it is developed over

25   the last several years, you have been witness to it.  You

15QJSOKM                    Motions

1    remember we replaced predecessor counsel, and I am having to

2    tell you there is a seed change how our client reacts to U.S.

3    initiated litigation for conduct that occurred over there.

4            All of those cases were defaulted, being defaulted

5    intentionally prior to us coming in.  We had to move to vacate,

6    convince judges up and down the Eastern seaboard when we meant

7    it, when we said we want to litigate the case.  We have taken

8    cases through discovery and settlement.  We won appeals.  We

9    have had cases dismissed in the trial courts.

10           We have demonstrated, we believe, our client is

11   committed to litigating these cases properly.  Nonetheless, as

12   a foreign litigant, especially this litigant, being hailed

13   into -- I know Brooklyn, you know Brooklyn, but if you're

14   sitting in Ramallah, Brooklyn doesn't sound like either the Big

15   Apple, New York -- excuse my reference -- but everyone knows

16   New York City, Washington, D.C.

17           Judge, it is different as a foreign litigant.  You

18   should take that into strong account especially if this case is

19   misvenued here.  Then you ask about what are my tactical

20   considerations?  My client, when it hears and receives rulings

21   that emanate from Washington, D.C. or New York, they know they

22   are properly in this place.

23           THE COURT:  Brooklyn is New York, too.

24           MR. ROCHON:  I've got worse problems.  I am from the

25   midwest.

15QJSOKM                    Motions

 1              THE COURT:  My colleagues will --

 2              MR. ROCHON:  The people in the audience will beat me

 3    up on the way out.  The point, you can imagine, these are

 4    sensitive and delicate cases for overseas litigants.  There is

 5    some sense to having them heard in the place where they are,

 6    more so than most defendants.

 7              THE COURT:  The only way I can characterize the

 8    argument you just made is that you want to go to DC for your

 9    clients' comfort level.

10              MR. ROCHON:  There are appearance issues.  That is as

11    important over there as it is to folks over here.

12              THE COURT:  You put it in an awkward circumstance by

13    saying we see these decisions come out of, "the real New York

14    City" or DC.

15              MR. ROCHON:  Actually, for my client it is really the

16    District of Columbia.

17              THE COURT:  That is what I was going to say.  You

18    can't back away from that argument because they're the one that

19    wants to leave the real New York State.

20              MR. ROCHON:  Personally, I believe all of these cases,

21    it would make sense to consolidate.  I am not seeking to move

22    for that.  I am seeking to move this one there.

23              THE COURT:  You are not saying that, you are not

24    saying that your client has a greater comfort level and is

25    satisfied with litigating this case in DC and the real New York

15QJSOKM                          Motions

1    City as opposed to Brooklyn because you're the one asking me to

2    take it out of the real New York City.  You are the one not

3    waiving venue.  You are the one that wants to move out of New

4    York City.

5           The argument you're making, that is the problem, the

6    kinds of considerations that you say that are motivating you

7    are not the kinds of considerations -- those are the kinds of

8    considerations related to 1404, not to 1406.  1406 deals with

9    being in a wrong venue.  You're telling me we are in the wrong

10   venue, put us in a right venue, not the right venue, a right

11   venue.

12          MR. ROCHON:  What I said is under 1406, in our

13   interpretation of it, the only place that you could, should

14   send it is the District of Columbia.

15          THE COURT:  Right.

16          MR. ROCHON:  You then would have asked me would you

17   please articulate for me reasons why you would want it in the

18   District of Columbia as opposed to other places.  I will

19   respond to that, and I was being candid with the court.  It

20   doesn't eliminate our position if we think that frankly the

21   place you have to send this to is the District of Columbia

22   which questions presuppose you might not buy that.  You asked

23   me to comment on why there instead of the Eastern District of

24   New York.

25          THE COURT:  This is helpful to me because as we focus

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                     Motions

1    on this, it seems what is determinative, critical if not

2    determinative of your argument, of your position is for me to

3    accept that your very now and unique argument that because it

4    says "could," that that must be interpreted as the way the

5    complaint alleged venue originally, that is the only thing that

6    you can consider with regard to where the case could be.

7            I still don't understand how to get you in DC because

8    it is not alleged that venue --

9            MR. ROCHON:  The theory for venue is contacts.  There

10   is findings of fact in this case by this court as to contacts

11   in the DC.

12           THE COURT:  What language in the complaint to you do

13   you say this complaint could not have been brought in Brooklyn?

14           MR. ROCHON:  The part, Paragraph 4.

15           THE COURT:  That says what?

16           MR. ROCHON:  Says venue based on defendants' contacts.

17           THE COURT:  Just the broad language that says it is

18   based on contacts?

19           MR. ROCHON:  The assertion for Paragraph 4 of the

20   complaint is our contacts, not plaintiffs' residence.

21           THE COURT:  You say, either with or without an

22   amendment, that that restricts the choice of transfer to a

23   venue that is chosen simply based on their character rather

24   than a venue chosen on any other legitimate ground as alleged

25   in the statute that could have been brought?

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15QJSOKM                    Motions

1            MR. ROCHON:  Our argument is you should take the

2     complaint's asserted basis for contacts and that could have

3     been brought in District of Columbia based this court's

4     finding.  So I think you understand our argument even if you're

5     not entirely agreeing with it.

6            THE COURT:  I want to make sure I understand it.  You

7     say at this point since they alleged venue on your clients'

8     contacts, they cannot seek transfer under 1406 in a place where

9     there is proper venue, but there is only proper venue if it is

10    alleged on where they reside?

11           MR. ROCHON:  I think that the court -- another way to

12    put it, in our view, is where plaintiffs have brought a case

13    where it is not properly venued, they shouldn't be given as

14    liberal treatment where they might send it.

15           Under 1404, if you get to 1404, which assuming it is

16    properly venued, we haven't spoken as much about the 1404

17    motion in this argument because if we lose on 1406 for some

18    reason, whether it is because it is not properly brought now,

19    waiver, reconsidering the contacts, what have you, and we

20    reached plaintiffs' motion under -- so we're here, the

21    argument, then the reason to move it under 1404 by plaintiffs

22    just dries up.

23           I don't think if this was properly venued, there would

24    be a very good argument why to go to Brooklyn if it was

25    properly venued.  We have given it short-shrift in our papers,

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                        Motions

1    and I may have ask for rebuttal time.  That is what I wanted to

2    tell the court regarding the issues here.

3            The bottom line for the defendants is that we think

4    the plaintiffs' asserted reasons why we shouldn't go to DC

5    evaporate, meaning they say it will be delayed and we are going

6    to remove on motions.  We are not going to remove on motions

7    and the delay doesn't hold water.  We'll reserve anything else

8    if the court has additional questions.

9            THE COURT:  Yes, sir.

10           MR. TOLCHIN:  Good morning, your Honor.

11           I think one thing I agree is that whatever court this

12   case is heard in, I would like to take your Honor with us.

13           THE COURT:  No offense.

14           MR. TOLCHIN:  I can appreciate the depth of getting

15   into these issues.  I think at the very beginning, your Honor,

16   you touched on something, you touched on the way we actually

17   can wind up keeping your Honor with us because you're a hundred

18   percent right, the issue was waived.

19           Your Honor, in questions touched on the issue of the

20   difference between contacts for the purposes of jurisdiction

21   and contacts for the purposes of venue.  It is not like the

22   defendants aren't here in New York.  They're here.  They have a

23   presence here.  They have a real presence here.  They have a UN

24   presence.  They even have presence that is not connected to the

25   UN.

15QJSOKM                         Motions

1          I recognize your Honor found for jurisdictional

2    purposes it is not enough, but it is not like we hailed them

3    into the Southern District of Idaho or something.  This isn't

4    some random jurisdiction for them.  They're here every single

5    day.  Their prior lawyer was based here in New York.  Right now

6    the only connection, the only thing that differentiates DC from

7    New York, it is not the defendants' contacts or the defendants'

8    presence or convenience of the defendant, frankly, it is the

9    defendants' two new lawyers in DC as opposed to the old lawyer

10   based in New York.

11          THE COURT:  Tell me what you want me to do that

12   doesn't have the word "if" in it.

13          MR. TOLCHIN:  Okay.  I think you should deny their

14   motion and keep the case.  However --

15          THE COURT:  So are you withdrawing your motion?

16          You see, however, that is the tricky part of saying,

17   "however."

18          MR. TOLCHIN:  You told me not to say if, Judge.  Here

19   is the thing.  Really practical, really, really practical, I

20   believe they waived it.  They didn't make the motion.  The case

21   is here 7 years.  They could have made this very same motion

22   when they made a motion to dismiss years ago.  We all know why

23   they didn't make the motion.

24          The reason is what they've danced around but didn't

25   quite say is what is the new circumstance?  Why they're making

         SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15QJSOKM                         Motions

1    the motion today is because they didn't think of it.  The

2    argument the wrong venue has an effect on personal jurisdiction

3    under an ATA claim was something the defendants in another

4    case, Worts versus Bank of China, came up with, and Judge

5    Lambert down in DC first denied it, but on reargument, he said

6    you know, you may have something there, I'll transfer the case

7    to New York.  That just happened recently, a few months ago.

8    They said, oh, my God, there is this argument we could have

9    made, just no one ever made it before, we didn't think of it.

10   That is not a changed circumstance.

11            That is not like the building was standing and then it

12   was demolished.  That was a legal argument that would have been

13   that would have been just as valid had it been made 7 years ago

14   ago as it had been made today.  That is not a changed

15   circumstance, the fact a lawyer didn't think of another ground

16   to move to dismiss.

17            Because it could have been raised and wasn't, it was

18   waived, and the result is we're here.  But, slash if, slash

19   however, there is a danger because I doubt that the defendants

20   will let go of the argument and it will be hanging over our

21   heads forever, ill-will hanging over our heads till the end of

22   the case, we'll do all this work, have a trial and on appeal

23   they may raise it.

24            THE COURT:  Is your application to get out of the

25   Southern District of New York?

SOUTHERN DISTRICT REPORTERS, P.C.            (212) 805-0300

15QJSOKM                    Motions

1        MR. TOLCHIN:  Reluctantly, my application is to go

2    over there to Brooklyn, where at the time this complaint was

3    filed, 7 plaintiffs resided, where today I believe 6 plaintiffs

4    reside in addition to others who reside in New Jersey.

5        It keeps the case in New York, which is just as

6    convenient for the defendants who are in the Southern District.

7    It is only a mile further away.  They cannot possibly claim a

8    greater inconvenience by having to -- frankly, regardless of

9    whether the case is heard in the Southern District or the

10   Eastern District, when it comes time to depositions in New

11   York, for example, they'll probably be in my office which is in

12   Brooklyn, so it is the same thing.

13       We have many considerations.  Handling this case down

14   in DC will be much, much more expensive for the plaintiffs.

15   For the defendants, it will be the same thing because they're

16   present here in New York.  Plaintiffs are individuals.  They

17   would have to stay in hotels.  They will have to be separated

18   from their families during the times of the trial.  There are

19   considerations that are not common.  Many of these people are

20   Orthodox Jews.  Kosher food is not readily available in

21   Washington, D.C.  There are no Kosher restaurants, for example,

22   or maybe one.

23       THE COURT:  You guys are dumping on a bunch of cities

24   today.

25       MR. TOLCHIN:  I'm sorry.

15QJSOKM                        Motions

1           THE COURT:  I apologize to my DC colleagues, too.

2           MR. TOLCHIN:  In the suburbs there are a few pizza

3    shops.

4           THE COURT:  I am glad I live in Manhattan.

5           MR. TOLCHIN:  Manhattan?  Trust me, in Brooklyn you

6    can eat any kind of food, anything at all.

7           THE COURT:  Let's focus on the argument that has been

8    made.  First of all, the argument that has been made -- and

9    obviously their argument is significantly different if I don't

10   accept that argument -- their argument is that you cannot

11   assert Brooklyn is not a place that it could have been brought

12   because you allege that their contacts were the basis for

13   venue.

14          MR. TOLCHIN:  I'll answer that with a topic heading

15   "nonsense" and I'll break it down.

16          First of all, what they're trying to do, and you may

17   have seen me jumping when he said that, I wanted to say

18   something.  What they're trying to do is blur the procedural

19   requirements of jurisdiction, the pleading requirements of

20   jurisdiction with the pleading requirements of venue.

21          Jurisdictional basis has to be pleaded.  If I think

22   this court has subject matter jurisdiction because of

23   diversity, I have to say so.  If I think it is a federal

24   question, I have to say so.  If it is diversity, I have to say

25   what state the plaintiff lives in and what state the defendant

15QJSOKM                    Motions

1    lives in.  I don't plead the facts of jurisdiction.  That

2    complaint is subject to dismissal.

3         Venue does not have to be pleaded at all.  People do

4    it.  I don't know why.  Out of habit?  It is always

5    jurisdiction and venue, but the case after case says there is

6    no requirement to plead jurisdiction.

7         THE COURT:  I don't have the complaint in front of me.

8    I don't remember that language.  What did you -- did you

9    reference venue?

10        MR. TOLCHIN:  When this complaint was filed in 2005,

11   which was obviously well before the court had opined on whether

12   or not the contacts with New York were sufficient for

13   jurisdiction, the allegation was included that the Southern

14   District of New York is proper venue pursuant to 18 U.S.C. 2334

15   (a) since defendants Palestinian Authority and Palestinian

16   Liberation Organization maintain an office, an agent in this

17   district and are resident in this district.

18        Now, what is significant about that, yes, it could

19   also, it could also have -- first of all, it wasn't necessary

20   to have that paragraph.  It is not like that paragraph was a

21   requirement.  Under the well-pleaded complaint rule, it should

22   be disregarded because it was not necessary.  We only should

23   look at what was necessary to be pleaded.

24        Even what it did say was that it invoked 18 U.S.C.

25   2334 (a), and 18 U.S.C. 2334 says that venue in an ATA action

15QJSOKM                          Motions

1    is proper in any district where the plaintiff resides or where

2    any defendant resides or is served or has an agent.  We did

3    invoke the statute that says that this case could have, says

4    this case could have been venued where any plaintiff resides.

5          THE COURT:  Well, that is not what you alleged.  You

6    didn't allege that you were relying on -- I have to give

7    them --

8          MR. TOLCHIN:  Correct, because none of the plaintiffs

9    lived in the Southern District of New York.

10          THE COURT:  I am saying, I have to at least give him

11   up front, that is why I asked about what you pled.  You did, in

12   fact, only reference venue with regard to the defendants.

13          MR. TOLCHIN:  That is a hundred percent correct.  Your

14   Honor was also a hundred percent correct in what you alluded to

15   before in a question to Mr. Rochon, that it is the facts that

16   control venue, not what somebody pleaded.

17          I pleaded they have an office here.  I pleaded they

18   have contacts here.  It turns out that is not true, let's say,

19   okay?  That doesn't mean the case gets dismissed if there is a

20   ground for venue in some other district.  The case gets

21   transferred to that other district.

22          At the time this was pleaded, maybe was no reason at

23   the time the complaint was filed to allege that plaintiffs

24   reside in the Eastern District of New York because we were not

25   filing the case in the Eastern District of New York.  We are

1    not trying with the allegation to document or support a choice

2    of venue in the Eastern District of New York.  We are filing in

3    the Southern District, and even though it wasn't required, we

4    said what we were relying on for coming into the Southern

5    District of New York.

6          Your Honor ruled that is not enough, their contacts in

7    New York are insufficient for jurisdiction, okay?  There is

8    still the question of whether the contacts are sufficient for

9    venue.  Maybe if this had been timely raised, we would win the

10   issue because they certainly do have contacts here, but the

11   issue has not been timely raised.

12         Nevertheless, the plaintiffs did choose a New York

13   forum.  They chose a New York City forum.  Yes, it was not --

14   we didn't file this in the Eastern District, but we do cite a

15   case in our papers saying that the plaintiffs' choice of forum

16   should also be given weight even if the plaintiff lives in a

17   neighboring state.  That was Burroughs Wellcome versus Giant

18   Food.  So you filed it in Delaware when you meant to file it in

19   Maryland or something like that.

20         This is even simpler.  We are here.  It is both just

21   districts of New York.  They're a mile apart from each other.

22   You can see one from the other.  It is no greater burden on the

23   defendant or on anybody to transfer.

24         THE COURT:  What districts do you say are available

25   for me to consider if I grant your or their motion to transfer?

15QJSOKM                    Motions

1          MR. TOLCHIN:  You mean where conceivably might this --

2          THE COURT:  Yes.

3          MR. TOLCHIN:  I believe there are 42 plaintiffs.  Some

4    of them reside in Israel, so that doesn't count.  I am

5    hesitating only because there are two questions.  Where might

6    it have been or could have been commenced at the time it was

7    filed versus if we are talking about convenience of material

8    witnesses.  It would have to do with today, not 7 years ago.

9          THE COURT:  I think the determinative issue is where

10   it could have been brought.

11         MR. TOLCHIN:  Where it could have been brought, we

12   list them out in our paper.  There is a multiplicity of states

13   where plaintiffs reside all over the country.  Seven of them,

14   the greatest concentration was the Eastern District of New

15   York.

16         THE COURT:  Right.

17         MR. TOLCHIN:  Then we have several in New Jersey,

18   leaving out the ones in Israel.  19 plaintiffs live in Israel,

19   and then we have remaining 13 plaintiffs in Illinois,

20   Pennsylvania, North Carolina, Virginia and France.  It is all

21   over the country.

22         THE COURT:  At this point I don't hear anybody saying

23   keep this case in the Southern District of New York.  You both

24   want transfer from the Southern District of New York.

25         MR. TOLCHIN:  You know --

15QJSOKM                          Motions

1          THE COURT:  That is what you asked for.

2          MR. TOLCHIN:  -- that is what I want.  I go through

3     this with my kids.  I want this and I want that.

4          THE COURT:  That is what you're asking for.

5          MR. TOLCHIN:  I chose to bring the case here.  I like

6     this courthouse, I like the Second Circuit, I like your Honor.

7     I don't think we have done badly here.  It is not like I am

8     trying to get out of this court, the judge hates me or the

9     system is against me.  I have no problem with it here.  It is

10    just a hesitation because of this lingering issue, and I would

11    hate to see us years down the road and everything coming

12    undone.

13         THE COURT:  I am trying to figure out what your

14    argument and their argument is since you are both asking me to

15    transfer this, what your argument could conceivably be that

16    transferred this to a district that was somehow legally error.

17         MR. TOLCHIN:  Legally?

18         THE COURT:  Error, E R R O R, yes, error.  What I hear

19    you both saying is judge, while transfer, and we are both

20    asking you to transfer, we'll only consider you to have made an

21    error if you don't transfer it to where I ask you to transfer

22    it to.

23         MR. TOLCHIN:  No, I will not, regardless of what your

24    Honor does, I don't think it is error to keep the case, but I

25    know they will.  I don't think it is error to transfer it to DC

                SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15QJSOKM                    Motions

1   or Brooklyn in the sense that it is discretionary.

2          Whatever you do here, you wouldn't be abusing

3   discretion, although if you transferred it to DC, I would

4   disagree and I would lament it because it will cost my clients

5   thousands and thousands of dollars more to litigate this case.

6          In making that discretionary call -- well, on the

7   issue of error, the only one who is going to holler error is

8   the defendant who will come years later and say when Judge

9   Daniels kept this case in 2011, he should have dismissed it or

10  transferred it, he wasn't allowed to keep it.  Therefore,

11  everything he did should be undone.

12         Now, I don't think, I don't think the Second Circuit

13  will give much credence to that argument, but you never know.

14         THE COURT:  That is not really the argument I am most

15  concerned about because, quite frankly, I don't have any basis

16  to keep it here.  You're asking me to get rid of it and they're

17  asking me to get rid of it.

18         MR. TOLCHIN:  Your Honor --

19         THE COURT:  They're not asking me to keep it?

20         MR. TOLCHIN:  Right.

21         THE COURT:  Why would I keep it in the Southern

22  District of New York when I have both sides arguing with each

23  other and to me about where it is supposed to go, but both

24  sides are asking me to send it someplace else?

25         MR. TOLCHIN:  I'll put myself in what I think your

15QJSOKM                         Motions

perspective or might be my perspective if I were you.  I have

two sides, each trying to -- somehow I can't figure out what

their angle is, but each one is trying to work an angle where

he wants the case, and I should keep this case and don't let

either side get away with anything.  You have a basis to keep

it, which is it is a venue argument that was waived.

          THE COURT:  I don't have a basis to keep it unless

that is your application.

          MR. TOLCHIN:  That is part of our application.  We

make that argument.  We do also say that because they're going

to raise it on appeal, it is playing with fire.

          THE COURT:  I am not talking about what arguments are;

I am talking about what your application is.  Your application

is to transfer the case.  His application is to transfer the

case.  Where am I supposed to look for the application to keep

it here?

          MR. TOLCHIN:  In the portion of the memo of law which

is the opposition to the motion to transfer.

          THE COURT:  Okay.  I understand what your positions

are.  Your positions are transfer it, but if you decide not to

transfer it where I want you to transfer it, I prefer you just

keep it.  That is not the way motions work.  As they say, you

have to --

          MR. TOLCHIN:  That is why there are three sides to the

table here.

          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1          THE COURT:  What three sides?  That is the problem.

2     You can't give me three sides and five alternatives.

3          What do you say is -- I assume what you're saying

4     is -- not assume -- what I read from your papers is you

5     disagree with them that there is anything inappropriate in

6     terms of proper venue in this district, but you believe that it

7     would be, one, more convenient for your -- or as convenient,

8     not more convenient for your parties, and it would settle in

9     your mind with regard to unsettled issues, unresolved and novel

10    issues that you can eliminate by going to Brooklyn as opposed

11    to staying here or going to DC.

12         MR. TOLCHIN:  That is a hundred percent accurate.

13         THE COURT:  That is pretty much what it is?

14         MR. TOLCHIN:  That is a hundred percent accurate.

15         THE COURT:  I am not going to commit reversible error

16    by denying your motion and I am not going to commit reversible

17    error by granting your motion.

18         You might argue I am going to commit reversible error

19    by granting their motion, but with regard to your motion, you

20    basically under 1404 are saying that it is in my discretion to

21    do this, that they have asked for transfer, you have asked for

22    transfer.  You are not opposing transfer, but you are saying

23    that yes, Judge, you can go ahead and transfer this case, but

24    transfer it to Brooklyn.  They'll want to transfer it to DC or

25    Virginia.

15QJSOKM                    Motions

 1          MR. TOLCHIN:  They have asked for the case to be

 2  transferred, their memo of law says to a district where it

 3  might have been brought -- sorry -- where it could have been

 4  brought.  The last line on the first page of their memo of law,

 5  transferred to a district where it could have been brought.

 6          THE COURT:  They say that that district includes DC

 7  and excludes Brooklyn.

 8          MR. TOLCHIN:  They tried to finagle that this

 9  complaint which was plainly pleaded to establish the basis of

10  an S.D.N.Y. jurisdiction and plainly never even attempted to

11  lay out the foundation of an E.D.N.Y. jurisdiction, that they

12  say this complaint should bar us.

13          Well, no, if we had meant to plead the Eastern

14  District of New York, we would have laid out the contacts with

15  the Eastern District of New York.  If the content of the

16  complaint is to be determinative, I would respectfully ask to

17  file an amended complaint, where I would lay out the basis of

18  Eastern District jurisdiction venue that existed at the time

19  the original complaint was filed and it is not different than

20  today.

21          We have the factors for the court to consider are the

22  plaintiffs' choice of forum which was New York, not some other

23  far-flung district, and the convenience of the parties.  That

24  weigh much more heavily in the plaintiffs' favor.  The

25  plaintiffs actually live here.  The defendants are actually

15QJSOKM                    Motions

1    here.  Plaintiffs who don't live here find this forum, the New

2    York, Southern or Eastern District, to be much more convenient

3    because they either live close by or there are personal

4    considerations.

5            The defendant is no more or less inconvenienced in New

6    York or DC.  The statute, Congress deliberately gave, wrote in

7    the statute that the case can be brought where any plaintiff

8    resides.  It was plainly convenience of the plaintiffs that

9    Congress had in mind.

10           Congress, frankly, didn't care where the party accused

11   of terrorism lived.  This case, if we had a plaintiff who lived

12   in Alaska, we could have brought this case in Alaska,

13   notwithstanding the defendants' offices are just in DC and New

14   York.  We could have brought this case in Hawaii or Guam, for

15   that matter.  Congress was concerned about making it more

16   convenient for the plaintiff.

17           In any event, the choice between Brooklyn and DC is no

18   less convenient for the defendants.

19           THE COURT:  Okay, I'll look at it.  I don't have any

20   more questions.  I want to ask Mr. Rochon, because his argument

21   is obviously more of an argument that I am compelled to make

22   certain choices with.  Their argument is that I can't accept

23   the choices.

24           Is it your position that if I were to reject your

25   position that Brooklyn is not available as a place to transfer

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                    Motions

1    this case, do you have any other argument that would say that

2    it can't be transferred to Brooklyn?

3         MR. ROCHON:  If I understand the court's question, if

4    you find my argument it must go to DC unavailing such that

5    you're exercising your discretion where you would send it, you

6    want to know what my argument is?

7         THE COURT:  I would like to know whether or not you

8    have any other argument Brooklyn is not, it can't go to

9    Brooklyn other than they only asserted venue based on the

10   defendants' contacts with the Southern District of New York.

11        MR. ROCHON:  Well, yes, your Honor, ultimately what

12   happens is we've asserted it is improper, venue improperly lays

13   here.  The plaintiffs say, therefore, they should have the

14   benefit of the 1404 criteria in where it goes.  We're

15   suggesting where a case is misvenued, that's not the case.

16        We are also suggesting analytically once you deal with

17   our motion and it is either granted or denied, then if you move

18   the case based on the plaintiffs' motion, certainly the

19   plaintiffs moving their own filed case, and under 1404

20   presumably moving what they claim is a correctly venued case,

21   the kind of discretion given to sometimes consider the issues

22   of the plaintiffs is weighty.  We have cited cases to that.

23        The plaintiffs come in to say venue at that point,

24   after having filed -- in our view, misfiled -- venue should be

25   considered for their benefit.  We don't think the case law

15QJSOKM                         Motions

1    supports that.

2            THE COURT:  You're not arguing if the choice of forum

3    I make -- if I grant your motion to transfer this case, that

4    the choice of forum that I make among the available choices is

5    somehow reversible error if I pick one over the other?

6            MR. ROCHON:  We have suggested you can only send it to

7    the District of Columbia.

8            THE COURT:  I understand why.  That argument is

9    because you say Brooklyn is not available as an option?

10           MR. ROCHON:  Right.

11           THE COURT:  I am asking you if Brooklyn is available

12   as an option?  There is reversible error if I choose Brooklyn

13   or DC?

14           MR. ROCHON:  The plaintiffs have asked you to change

15   the calculus at this point.  The question is would we claim

16   there was error in exercise of your discretion?

17           THE COURT:  Is there an error?

18           MR. ROCHON:  When you're dealing with a foreign

19   litigant, where there is particular sensitivity where they're

20   hailed into court, yes.

21           THE COURT:  That is the compelling, that part we

22   discussed this, I don't mean to be facetious about it, I

23   characterize it as their comfort level because there is no

24   other real substantive difference that you're arguing between

25   the two districts they prefer.  They have a better reaction to

1   be litigating in DC?

2            MR. ROCHON:  It is where they are.

3            THE COURT:  They're here, too.

4            MR. ROCHON:  It is where their characters are

5   cognizable.  You're asking me as between Brooklyn and DC, we

6   are not in Brooklyn.

7            THE COURT:  Ultimately what I am asking you, too, is

8   this:  Is it your position, as I said to the plaintiff, look,

9   both sides are asking me, my first decision that has to be made

10  is whether or not I am going to grant your joint motion to

11  transfer this case, okay?

12           Now, you've got to tell me whether or not, if I am

13  willing to grant your motion to transfer this case, but I am

14  not willing to transfer it to where you want it transferred to,

15  whether or not you are withdrawing that motion?

16           That is what I am trying to figure out.  That is what

17  you came to me to do here.  You both have to tell me.  That is

18  my approach.  You are both asking me to transfer this case.

19           I am ready to grant both of your applications to

20  transfer.  The only question, where is it going to go?  That is

21  the way I will approach this unless you tell me that well,

22  Judge, if you are going to approach it that way, I am

23  withdrawing my motion, I will state right here I most like --

24  you won't be able to complain about my transferring this case

25  because you're both asking me to transfer this case, all right?

15QJSOKM                        Motions

1          You may be able to complain about where it is

2     transferred to based on whether or not -- you probably have a

3     better argument than they have that they can argue where it is

4     transferred to.

5          MR. ROCHON:  Especially since he said he wouldn't

6     complain if it was transferred to DC.

7          THE COURT:  Within my discretion there is no

8     particularly compelling reason to pick one over the other, and

9     even from your perspective, I understand your clients'

10    concerns, but those aren't particularly compelling reasons that

11    make one forum the more compelling forum to transfer the case

12    to if you want to get out of the Southern District of New York.

13         My approach is this:  My approach is look, now both

14    sides have an application to transfer this case.  I am willing

15    to transfer this case, but I will look and decide where I think

16    it is appropriate to transfer it to.  It seems to me the only

17    argument you have with regard to my committing any error in

18    that regard is if I transfer it to a district where it cannot

19    be brought.

20         If I transfer it to Brooklyn, and you have a

21    legitimate argument that venue doesn't lie in Brooklyn or can't

22    be transferred to Brooklyn now because they didn't allege

23    grounds, the plaintiffs' contacts for venue, then that would be

24    error, and it is sent back to me from the Second Circuit on

25    that and tell me no, you can't transfer it to Brooklyn, you

15QJSOKM                         Motions

1   have to find somebody else where you could send it to and send

2   it there.  If I transfer it to DC, they might grumble about it,

3   but it doesn't seem they have a whole lot of bunch of legal

4   arguments I made legal error inconsistent with the law because

5   I transferred it to DC.

6        I am telling you both now that look, it is not going

7   to be my -- I am not sitting here, I am not giving you the

8   option of saying Judge, transfer the case, but I only want you

9   to transfer the case if you transfer it to where I want it to

10  go.  You tell me you want transfer.  I am going to give you

11  transfer.  Then I will tell you where, I will pick a forum that

12  I think is the place that is legally available and a place that

13  I think is within my discretion, a place where this case could

14  have been brought or might have been brought depending on what

15  I think is a distinction to be drawn here, and then if that is

16  a place it couldn't, it couldn't be brought, you can argue

17  about it.

18        MR. ROCHON:  I can see Mr. Tolchin wants to stand.  I

19  will answer the court.  I will be very brief.  If the court

20  were to do that, you have to deny our motion.

21        THE COURT:  No.

22        MR. ROCHON:  Our motion is to transfer it to the

23  District of Columbia.

24        THE COURT:  You do not want me to transfer this case

25  if I don't transfer it to the District of Columbia?

15QJSOKM                    Motions

 1              MR. ROCHON:  That is correct.

 2              THE COURT:  If I don't transfer it to the District of

 3    Columbia --

 4              MR. ROCHON:  On our motion, then you deny our motion

 5    and we are here.

 6              THE COURT:  Your motion is not to transfer this to a

 7    district where it could have been brought?

 8              MR. ROCHON:  Well, in our interpretation, that is one

 9    place --

10              THE COURT:  That is one place.

11              MR. ROCHON:  -- called the District of Columbia.  That

12    is our motion.  We think the case should be transferred and may

13    only be transferred to the District of Columbia which in our

14    reading of 1406 could only have been brought in the District of

15    Columbia.

16              THE COURT:  If I decide not to transfer it to the

17    District of Columbia, you want to stay here?

18              MR. ROCHON:  I'll sit down respectfully and look

19    forward to litigating with this Court.

20              THE COURT:  I am not sure, I am not sure with that

21    position you have preserved your right to appeal.

22              MR. ROCHON:  It will be extremely unpleasant to

23    litigate with the court.  We think that is what you're required

24    to do.

25              THE COURT:  No.  You see the problem is now you

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15QJSOKM                         Motions

 1    changed it into a 1404 motion --

 2              MR. ROCHON:  No.

 3              THE COURT:  -- because you're choosing a place that

 4    you think is most convenient.

 5              MR. ROCHON:  No.

 6              THE COURT:  Why can't I pick Virginia?

 7              MR. ROCHON:  Because, Judge, we have said that our

 8    argument, whether you accept it or not, it could only have been

 9    brought in the District of Columbia because the plaintiffs have

10    premised venue on our contacts.

11              THE COURT:  You just told me you could go to Virginia.

12              MR. ROCHON:  No.  I said you denied all of this and

13    you reached Mr. Tolchin's motion.  I am testing his claim it is

14    all about speed.  Why doesn't he stand up and ask you to go to

15    Virginia?

16              THE COURT:  You said more than.  You said you would be

17    willing to go to Virginia.

18              MR. ROCHON:  What I am suggesting, Judge, you have

19    pointed out each side -- Mr. Tolchin had arguments why he

20    thinks he has to go to Brooklyn.  He claims there is no Kosher

21    food in the District of Columbia.  You think I am exposing some

22    tactical interest.  My good friends who eat kosher would be

23    surprised to find this out and perhaps they can get guidance.

24    The District of Columbia, Silver Spring, Maryland, Montgomery

25    County?  Are you serious?

15QJSOKM                     Motions

1          MR. TOLCHIN:  Which are not the District of Columbia.

2     If you're staying --

3          THE COURT:  Stop, stop, stop.  Please sit down.

4          The reality, substance of both of your arguments why

5     it should be in any particular jurisdiction is not particularly

6     compelling.  It is not because your client feels more

7     comfortable with DC is not something I can get my hands around

8     and because there are not enough Kosher restaurants in DC is

9     not something I can get my hands around.  That won't be

10    determinative.

11         MR. ROCHON:  One thing on the comfort level.

12         My view is that foreign litigants when they're hailed

13    into court are given in context of discovery, in context of

14    consideration of contacts, some beneficial considerations.  I

15    think that those are things that you should weigh heavily, in

16    our view.  When you ask me why I want to be there, it is

17    ultimately for my client.  Mr. Tolchin says because I am there.

18    I litigated with Mr. Tolchin in Florida.  If I would prefer

19    Florida if I prefer to go.  For my convenience, I can pick

20    better places than the District of Columbia for where I would

21    like to be.

22         MR. TOLCHIN:  He likes the judge in Florida.

23         MR. ROCHON:  The point is, your Honor, I don't think

24    the court -- we feel that is a factor that should be weighed

25    heavily if you get to discretion, which we suggested on our

15QJSOKM                    Motions

1   motion you really don't get to.  Thank your Honor.

2          MR. TOLCHIN:  May I just interject two quick things.

3          First of all, your Honor took the words out of my

4   mouth as to one point.  Comfort level is not one of the

5   criteria listed in the statute for the court to consider when

6   deciding convenience of the parties.  Comfort level of a

7   foreign entity who likes Washington over New York, that is just

8   not listed.

9          THE COURT:  I assume your position is a little

10  different than his.  His position, as just articulated, is if I

11  am not willing to transfer it to DC, then he doesn't want to

12  transfer it to anyplace else.  Is that your position that if I

13  am not going to transfer it to Brooklyn, that you don't want it

14  transferred, period?

15         MR. TOLCHIN:  If you're asking me my position, yes,

16  that's correct.

17         THE COURT:  I am asking your position.

18         MR. TOLCHIN:  Mr. Rochon misquoted -- or it is harsh

19  to say misrepresented, but inaccurately portrayed his own

20  motion.  On his notice of motion, which is Docket Entry 93, it

21  begins by saying that they respectfully request the court

22  dismiss the case or transfer the case to a district in which it

23  could have been brought.

24         Yes, he goes on to the second page to say for those

25  reasons and those set forth in the accompanying memorandum of

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                    Motions

1    law, dot, dot, dot, the court should transfer the case to the

2    District of Columbia.  He has it both ways.

3              THE COURT:  That is why I originally asked because the

4    argument you just gave me may apply to transfer, but it doesn't

5    apply to a motion to dismiss.

6              MR. TOLCHIN:  He goes on in his memo of law to say to

7    a district in which it could have been brought.

8              MR. ROCHON:  Your Honor, we have a proposed order that

9    lays out we ask it be dismissed or sent to the District of

10   Columbia.  We interpret where it could have been brought to

11   mean only one place.  We have been clear on that throughout.

12   That is our argument.  Whether you accept it or not, he can't

13   say we are seeking to go move it somewhere else.  That we

14   haven't done.

15             THE COURT:  Your position is that is not based on your

16   convenience or comfort level argument; that is based on your

17   argument that that is the only place where it could have been

18   brought?

19             MR. ROCHON:  Exactly.

20             THE COURT:  Since that is the only place it could have

21   been brought, it should not be sent to Brooklyn.  You're not

22   arguing the convenience, balance of convenience is due a 1404

23   weighing?

24             MR. ROCHON:  I only spoke about that because you asked

25   me.  You said if I have to choose, what would you argue.  I

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15QJSOKM                    Motions

1    have I told you.  I wouldn't say I refuse to answer your

2    question.

3                THE COURT:  Lawyers do that and that usually informs

4    my decision.

5                MR. TOLCHIN:  By that token, if we originally pleaded

6    this case as an Eastern District case in the Eastern District,

7    and we then had come to the same point, they would say that

8    they had no right to transfer it to DC even though that is

9    where they are because we alleged venue based on where the

10   plaintiffs are.  That just belies the whole -- you're stuck

11   with what you pleaded as being nonsense.  You plead what you

12   think you need to get into the courthouse where you're trying

13   to get into.

14               As you can see, there are 20 other courthouses where

15   this case could have been brought into all over the country.

16   We wouldn't plead Texas, a plaintiff lives in Texas if we are

17   not trying to get into a Texas court.

18               THE COURT:  I have one final question.

19               Mr. Rochon, you can either answer it or consider it.

20   If I don't grant your motion to transfer it to DC and I grant

21   the plaintiffs' motion to transfer, or if I am inclined to

22   grant the plaintiffs' motion to transfer it to Brooklyn, do you

23   even want the opportunity to waive venue and stay in this

24   district?

25               MR. ROCHON:  I believe the court offered me the

15QJSOKM                    Motions

1    opportunity to consider your question.  I would like to take

2    the court up on that opportunity, if I may.

3            THE COURT:  Okay.  There is more than one way to skin

4    a cat.  This is helpful.  I am going to resolve this pretty

5    quickly.

6            MR. ROCHON:  The court would like an answer.  You

7    asked me to consider it?

8            THE COURT:  If you want to answer it.

9            MR. ROCHON:  You are asking me to say --

10           THE COURT:  If you want, you don't have to.

11           MR. ROCHON:  Can I reply in writing, by letter?

12           THE COURT:  Do you want to?

13           MR. ROCHON:  Yes, I would like an opportunity.

14           THE COURT:  Do you want to consult first and reply in

15   letter and see what your position is.  If you do that quickly,

16   as soon as I get your letter, I will be prepared to rule.

17           How quickly will you get me a letter on that issue?

18           MR. ROCHON:  Monday is a holiday.  I can still write

19   on holidays, but I won't send it until Tuesday.

20           THE COURT:  Send it over and I will try to give you a

21   decision next week so you can move on or move away.

22           (Court adjourned)

23

24

25