# ARNOLD & PORTER LLP

Kent A. Yalowitz
Kent.Yalowitz@aporter.com

+1 212.715.1113
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

March 27, 2014

**BY HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
   for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*,
             Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

      I write on behalf of plaintiffs in response to defendants' letter motion of March 24, 2014 (undocketed) demanding that the Court seal 57 documents in their entirety (plus 51 pages of expert reports, plus two pages of plaintiffs' opposition to the motion to reconsider).

      Actions to hold accountable those who use terrorism to achieve political goals are matters of substantial public concern. Public concern should be heightened where, as here, the terrorist organization holds itself out as the "embodiment of a national movement" and the "legitimate representative" of a people with aspirations of statehood. Yet defendants demand that the Court evaluate the evidence of their use of terrorism in secret. Defendants invoke two grounds for secrecy: protecting purported "law enforcement" interests; and protecting private third-party information. Defendants have failed to carry their burden with respect to "law enforcement" interests. As for "privacy," the small amount of extraneous and private information can be protected through limited redactions rather than blunderbuss sealing. The Court should not permit defendants to hide the overwhelming evidence of their deep involvement in a relentless terrorism campaign. The motion should be denied, with the limited exceptions described below.

    A.    **Legal Standard**

      "The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 2

"The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

"Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo*, 71 F.3d at 1049. That weight is strongest where the documents play a role in "determining litigants' substantive rights" and weakest where documents "play only a negligible role in the performance of Article III duties." *Id.* at 1049-50.[1]

"Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.' Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo*, 71 F.3d at 1050).

In addition to the common-law right of public access, documents such as motion papers that "'have historically been open to the press and general public'" are subject to a First Amendment right of access. *Lugosch*, 435 F.3d at 120 (quoting *Press Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986)); *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). Under the First Amendment, such documents "'may be sealed [only] if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

---

[1] "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach...." *Amodeo*, 71 F.3d at 1050. For that reason, defendants' designation of documents as "confidential" during discovery—which is the centerpiece of their motion—is simply irrelevant at this stage. Moreover, under its own terms, the Protective Order under which defendants purported to make those designations does not apply to this stage of the case. *See* DE 219, ¶ 8.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 3

### B. The Presumption of Access is At Its Strongest in this Case

Defendants do not and cannot deny that the memorandum in opposition and its exhibits are "judicial documents." Therefore, the presumption of access applies. Moreover, the documents are relevant to what defendants contend is a "case dispositive" motion. Plaintiffs have placed them before the Court to show that defendants themselves directed the terror campaign and to show that the jurisdictional facts are intertwined with the ultimate merits. The documents go to the heart of plaintiffs' substantive legal rights. For such documents, the presumption of access is at its strongest.

### C. Defendants Identify No Countervailing Danger to "Law Enforcement"

*Amodeo* teaches that law enforcement interests may be balanced against the presumption of public access "[i]f release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable." 71 F.3d at 1050.

Defendants do not claim that the documents would hinder the kind of "cooperation" described in *Amodeo*. Instead, they contend that twelve documents "reveal activities of the GIS [General Intelligence Service]." Mar. 24 Letter at 3. Defendants do not discuss any of the twelve documents at all—let alone demonstrate that they would reveal the identities of cooperating witnesses to the detriment of ongoing investigations. The documents reflect ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Such documents not only go to the merits of defendants' liability in this case, but they would also appear to a normal person to be the *opposite* of law enforcement. They prove defendants' *support* of terrorism. Moreover, many of the facts set forth in these documents are already documented in the public record. The ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Similarly, public sources already describe the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Eviatar Report, pp. 28-29 (Ex. C.2 to Opp. to Mot. to Reconsider).

Although defendants contend that public filing of the twelve documents would "undermine" the PA's interests, they do not explain why. Defendants do not point to any "law enforcement information" in the documents and do not say how any alleged "investigative methods" would be revealed. Instead, defendants submit a declaration of one Majed Faraj, a PA official. This declaration does not mention any of the twelve documents. Nor does the declaration mention ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 4

███████████████████████████████████████████████████████ Rather, the declaration states generally that disclosure of *any* GIS document would cause unspecified threats to "security and safety" and "external dangers." Such vague and blunderbuss assertions fall far short of supporting the required "specific, on-the-record findings that sealing is necessary." *See Lugosch*, 435 F.3d at 124. Defendants' approach also fails to seek the "narrowly tailored" relief that the First Amendment demands.

Defendants also assert that the GIS documents should be kept secret out of deference to a PA "blocking statute." This statute is irrelevant. Defendants attempted to convince Judge Ellis that the same statute prevented them from producing the GIS documents, and he rejected that assertion.[2] Defendants did not timely object to Judge Ellis's ruling, and so they have waived any "blocking statute" protections. Fed. R. Civ. P. 72(a); *see Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) (a "litigant who fails to object timely to a magistrate's order on a non-dispositive matter waives the right to appellate review of that order"); *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (same).

### D.     Only Legitimately "Private" Information Should Be Kept Confidential

The Court must balance the right of public access against the privacy interest in information "traditionally considered private rather than public," such as "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters." *Amodeo*, 71 F.3d at 1051.

However, even where privacy interests outweigh the right of access, the privacy interests do not permit sealing documents wholesale. On the contrary, "district courts [should] avoid sealing judicial documents in their entirety unless necessary [since t]ransparency is pivotal to public perception of the judiciary's legitimacy and independence." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008). Where legitimate privacy concerns outweigh the right of access, redaction is the proper course. *See* Fed. R. Civ. P. 5.2(a) (requiring limited redaction of bank account numbers, social security numbers, and other private information).

---

[2] Judge Ellis's decision is consistent with other decisions in this district, holding that foreign non-disclosure statutes could not justify withholding documents in cases under the Anti-Terrorism Act. *See, e.g., Wultz v. Bank of China*, 942 F. Supp. 2d 452, 466-68 (S.D.N.Y. 2013); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 443-54 (E.D.N.Y. 2008).

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 5

      Defendants claim that the 57 documents should be sealed in their entirety because they contain "employment information," "financial information," and "personal information." Defendants discuss eight of these documents. For the Court's convenience, we have enclosed as Exhibit A copies of the English translations of the eight documents, highlighted to show plaintiffs' proposed redactions consistent with Rule 5.2(a).[3]

### 1.  Bank Account Numbers Should Be Redacted

      Several of the documents contain bank account information. Defendants claim that "[b]y their very nature, all of these documents…reflect private financial information" that must be kept from the public. Mar. 24 Letter at 2 (discussing Exs. H.3, H.5). Defendants overreach. Rule 5.2 of the Federal Rules of Civil Procedure describes how the courts should treat bank account information. The documents should be filed publicly, but redacted to show only the "last four digits of the financial-account number." Fed. R. Civ. P. 5.2(a)(4). Included in Exhibit A are copies of Exs. H.3 and H.5, which reflect proper proposed redactions.

### 2.  Amounts Paid to Terrorists Are Not Confidential

      Defendants claim that documents reflecting "the specific amount of each payment" by defendants to terrorists "reflects private information" that must be kept from the public. Mar. 24 Letter at 2. Defendants point in particular to ███████████████████████████████████████ *Id.* (discussing Ex. H.17). ███████████████████████████████ while serving 21 life sentences following conviction for his crimes, which include organizing the suicide bombing that killed Scott Goldberg, father or husband of eight of the plaintiffs in this case.

      The fact that defendants pay generous salaries to convicted terrorists is not confidential. For example, the expert report of one of plaintiffs' liability experts—Alon Eviatar—cites public sources that describe the PA's policy of paying salaries to employees who have been convicted of terrorist acts. As Mr. Eviatar reports, these payments are made pursuant to a statute passed by the PA providing for the payment of salaries to "[a]nyone who is imprisoned in Israel against the background of his participation in the struggle against the occupation." Eviatar Report, pp. 28-29 (Ex. C.2 to Opp. to Mot. to Reconsider). This policy is also discussed in a recent book by historian Edwin Black, entitled "Financing the Flames." As Mr. Black's website states, the book

---

[3] Plaintiffs will work with defendants to ensure that the originals of these exhibits, as well as the 49 other exhibits, can be redacted consistent with the Court's rulings.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 6

describes funding mechanisms by which the PA pays "the salaries of specific terrorists sitting in Israeli prisons, salaries that are among the best paid jobs in the Palestinian Authority, and are calculated to increase with the level of mass murder and destruction." (*available at* http://www.financingtheflames.com/index.php?page=60124.)

The payment of salaries to convicted terrorists like ▬▬▬▬ is highly relevant to defendants' ratification of, and *respondeat superior* liability for, the terrorist crimes committed by their officers and employees in this case. Where, as here, salary information is material, public access is appropriate. *See Cohen v. Gerson Lehrman Grp., Inc.*, 2011 WL 4336679, at *1 (S.D.N.Y. Sept. 15, 2011) (finding in an FLSA case that "it is doubtful that information about wages, salary and bonuses would satisfy *Lugosch*"); *Lytle* v. *JPMorgan Chase*, 810 F. Supp. 2d 616, 631 (S.D.N.Y. 2011) (collecting cases and noting disparate law on redacting salary information, but nonetheless denying motion to seal salary records where no prejudice to employee).

### 3.     Rank and Promotions Are Not Confidential

Defendants claim that documents reflecting "rank and promotions" are "protected employment information" that must be kept from the public. Defendants point in particular to the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Mar. 24 Letter at 2 (discussing Exs. H.18 and H.34). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ while serving 19 life sentences following conviction for his crimes, which include organizing the suicide bombing that killed Scott Goldberg.

The PA's policy of promoting terrorists while they are in jail is not a secret. *See* Dep. of Mahmoud Damara, pp. 6-10, 18, 28, in *Gilmore v. PA, et al.*, Civ. No. 01-0853 (GK), U.S. District Court for the District of Columbia (Ex. B hereto). Indeed, it is hard to imagine that a security officer's rank could ever be confidential—even prisoners of war routinely provide "name, rank and serial number."

Defendants' promotion through the ranks of convicted terrorists like ▬▬▬▬ is highly relevant to show their ratification of the crimes at issue. This, too, makes public access appropriate. *Cf. Cohen.*, 2011 WL 4336679, at *1; *Lytle*, 810 F. Supp. 2d at 631.

### 4.     Arrest Records Are Not Confidential

Defendants claim that arrest records must be kept from the public. In particular, defendants point to a document reflecting ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ one of the terrorists convicted of killing Scott Goldberg. Mar. 24 Letter at 2 (discussing Ex. H.18).

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 7

Arrest records are not confidential. *See, e.g., Johnson ex rel. Johnson v. Columbia Univ.*, 2003 WL 22743675, at *11 (S.D.N.Y. Nov. 19, 2003) ("[C]ourts have held that the right of confidentiality does not prohibit the disclosure of an individual's criminal history, including the individual's arrest records.") (collecting cases).

Further, the fact that defendant PA ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is relevant to defendants' culpability for his later crime. Again, the party opposing public access to the material facts has a "tough road" to travel. *See Cohen*, 2011 WL 4336679, at *1.

### 5. Files Relating to Suicide Terrorists Should Be Redacted In Accordance with Rule 5.2(a)

Defendants claim that documents relating to three suicide terrorists must not be made public. The suicide terrorists are:

- Wafa Idris, who blew herself up on a crowded street in Jerusalem. She killed one and injured more than one hundred civilians, including the Sokolow family (Ex. H.2). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

- Sa'id Ibrahim Sa'id Ramadan, a PA Marine officer who died while machine-gunning civilians on a crowded street in Jerusalem. He killed two and wounded 45, including plaintiffs Shayna Gould and Shmuel Waldman (Ex. H.24). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

- Mohamed Mashhur Mohamed Hashaika, a PA Police Officer who blew himself up on a crowded street in Jerusalem. He killed three and wounded 81, including plaintiffs Alan and Yehonathon Bauer (Ex. H.54). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 8

These files are highly relevant because they show defendants' ███████████████████████████████████████████████████████████████████████████

Defendants claim that these files must be sealed in their entirety because they contain "contact information," "birth certificates," "identification papers," supposed "school records," "bank information," and private information about one of the terrorist's parents. Again, defendants overreach.

Defendants have made no showing that any particular telephone number or other "contact information" is unlisted or confidential. Defendants have made no showing that a birth certificate or identification card of a suicide terrorist is confidential. And defendants' reference to "school records" is a mystery. ███████████████████████████████████████ ████████████████ but defendants have made no showing that such facts should be kept confidential or that anyone has a privacy interest in them.

████████████████ do include government-issued identity numbers. However, such numbers are often publicly available, and are included, for example, in court decisions concerning the bearer. Defendants have made no showing that these numbers are akin to U.S. Social Security numbers or that they should otherwise be treated as confidential. In any event, at most, these numbers should be redacted in accordance with Rule 5.2(a). ████████████ also include bank account numbers. These numbers should be redacted under Rule 5.2(a).

Finally, defendants point to potentially embarrassing information about ████████ ████████████████████████████████████████████ which does not appear to plaintiffs to be germane to the issues in this case. *See* Ex. H.54. Such information may reasonably be treated as confidential in the Court's discretion. *Cf. Barnwell v. FCI Danbury*, 2011 WL 5330215, at *5 (D. Conn. Nov. 3, 2011) ("[f]ederal law generally treats [medical] records as confidential"); *Northrop v. Carucci*, 2007 WL 685173, at *3 n.6 (D. Conn. Mar. 5, 2007) ("plaintiff's medical records will be sealed by the Clerk" because "federal law [HIPAA] treats medical records as confidential").

Plaintiffs have proposed appropriate redactions, as shown by Exhibit A. These are sufficient to protect all legitimate privacy interests.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
March 27, 2014
Page 9

### E. The Expert Reports and Opposition Brief Are Not Confidential

Defendants assert that 51 pages of plaintiffs' expert reports and two pages of the opposition brief must be filed under seal because they "cite or summarize" confidential documents. As discussed above, a blunderbuss approach to confidentiality is improper. It is impossible for plaintiffs (or the Court) to evaluate defendants' vague assertions of confidentiality, because defendants do not identify the purportedly confidential information, describe why they deem the information confidential, or provide any facts on which the Court could make a proper record. This aspect of the motion should be denied.

### F. The Court Should Not Reserve Decision On Public Disclosure

Defendants argue that the Court should seal the plaintiffs' papers pending its decision on the motion for reconsideration. The Second Circuit has expressly rejected this approach. Courts conduct their business in public. Reserving decision on confidentiality determinations until after ruling on the motion at issue does not comport with the presumption of public access or the First Amendment. *See, e.g., Lugosch*, 435 F.3d at 126-27.

In short, the Court should reject defendants' vague confidentiality claims and direct the plaintiffs to file publicly their opposition to the motion to reconsider, with redactions in the form proposed in Exhibit A.

Respectfully,

Kent A. Yalowitz

cc:   Brian A. Hill