UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

MARK SOKOLOW, *et al.*,

    Plaintiffs,

      v.

THE PALESTINE LIBERATION ORGANIZATION,
    *et al.,*

    Defendants.

Docket No.
04-cv-397 (GBD) (RLE)

---

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR RECONSIDERATION OF COURT'S MARCH 30, 2011
INTERLOCUTORY ORDER ON PERSONAL JURISDICTION
IN LIGHTOF RECENT SUPREME COURT DECISION**

Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800 (tel)
(202) 626-5801(fax)

*Counsel for Defendants the Palestinian Authority
and the Palestine Liberation Organization*

April 1, 2014

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

I.   DEFENDANTS DID NOT WAIVE THEIR PERSONAL JURISDICITON DEFENSE
     BECAUSE THEY FILED A TIMELY RULE 12(b)(2) MOTION ................................... 1

     A.   Defendants Did Not Waive Their Rule 12(b)(2) Personal Jurisdiction Defense by
          Waiving The Separate Rule 12(b)(3) Defense of Improper Venue ........................... 2

     B.   Defendants Did Not Waive Their Personal Jurisdiction Defense by Not Moving for
          Reconsideration Following *Goodyear* ....................................................................... 3

II.  PLAINTIFFS FAIL IN THEIR ATTEMPTS TO DISTINGUISH *DAIMLER* ................. 10

     A.   As This Court Previously Held, Defendants Are Entitled to Due Process ................ 10

     B.   The Due Process Test for Personal Jurisdiction Is the Same Under the Fifth
          Amendment as Under the Fourteenth ....................................................................... 13

     C.   The "At Home" Test Is Not Limited to Corporations Engaged in International
          Commerce ................................................................................................................. 15

     D.   *Daimler* Is Not Distinguishable Based on the Method of Service ............................ 15

III. THE COURT CANNOT EXERCISE SPECIFIC PERSONAL JURISDICTION ........... 16

     A.   Plaintiffs' Theory of Specific Jurisdiction Is Barred by the Government Contacts
          Exception ................................................................................................................. 17

     B.   In Any Event, Defendants' U.S.-Based Public Relations Activities Do Not Give
          Rise to Specific Personal Jurisdiction Because They Are Not Sufficiently Related
          and Causally Connected to the Lawsuit ................................................................... 17

CONCLUSION ................................................................................................................... 20

1420390.1

## INTRODUCTION

This lawsuit does not arise out of any U.S.-based conduct of Defendants the Palestinian Authority ("PA") or the Palestine Liberation Organization ("PLO"). The shootings and bombings at issue also occurred abroad. Because the case-in-suit does not arise out of forum-based conduct, there is no basis for the assertion of specific personal jurisdiction. In March 2011, based on the then-current state of the law, the Court held that it could assert general personal jurisdiction over Defendants because of the allegedly continuous and systematic U.S. presence of the office of the PLO Mission to the United States. Earlier this year, the Supreme Court "announce[d] the new rule," that continuously and systematically doing business in a forum is no longer sufficient for the exercise of general jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 770 (2014) (Sotomayor, J. concurring). Under the new rule, the "at home" test for general personal jurisdiction requires a comparison between a defendant's in-forum and out-of-forum contacts. *Id.* at 762 n.20 (requiring an appraisal of the defendant's activities "in their entirety, nationwide and worldwide"). Here, taking into account Defendants' worldwide activities, as *Daimler*'s proportionality test requires, Defendants are unequivocally at home in the Occupied Palestinian Territories, not the United States. Unable to meet the *Daimler* test, Plaintiffs spend the first half of their brief arguing that Defendants cannot rely on *Daimler*, and then spend the second half rearguing their theory that the Court may exercise specific jurisdiction. Defendants address these arguments in turn.

## I. DEFENDANTS DID NOT WAIVE THEIR PERSONAL JURISDICTION DEFENSE BECAUSE THEY FILED A TIMELY RULE 12(b)(2) MOTION.

Plaintiffs' lead argument is that Defendants "repeatedly waived" their personal jurisdiction defense. Opp. at 4. To the contrary, Defendants preserved the defense when they filed a Rule 12(b)(2) motion in 2007. DE 45. Plaintiffs made a waiver argument even then, *see*

DE 50, but the Court held that "defendants have not waive[d] their right to challenge personal jurisdiction." DE 58 at 12. Although the Court denied the initial Rule 12(b)(2) motion, it did so without prejudice to renew after personal jurisdiction discovery. *Id.* at 13. In 2010, at the conclusion of that discovery, Defendants filed their renewed Rule 12(b)(2) motion, DE 81, which the Court subsequently denied, DE 87. By litigating the Rule 12(b)(2) motion to its conclusion, Defendants fully preserved their personal jurisdiction defense.

### A. Defendants Did Not Waive Their Rule 12(b)(2) Personal Jurisdiction Defense by Waiving The Separate Rule 12(b)(3) Defense of Improper Venue.

Plaintiffs erroneously claim that Defendants waived their personal jurisdiction defense when they waived their defense that venue is improper in the Southern District of New York. Opp. at 1-2, 4-5. Venue and personal jurisdiction are entirely separate defenses. In its Order of June 2, 2011, the Court held that Defendants waived their defense of improper venue under Rule 12(g)(2), because Defendants failed to move to dismiss under Rule 12(b)(3) (improper venue) when filing their initial Rule 12(b)(2) motion to dismiss. DE 122 at 1. As just noted, in contrast to the improper venue defense, the Court previously found that Defendants had not waived their Rule 12(b)(2) personal jurisdiction defense. DE 58 at 12.

Plaintiffs refer to a "written waiver" of Defendants' personal jurisdiction defense (Opp. at 5), but the waiver was only as to the defense of improper venue. *See* Opp. Exh. A.1, A.2. Following the Court's denial of their Rule 12(b)(2) motion, Defendants moved for a transfer on the ground that venue was improper in this district. DE 92. Defendants "consented" in writing to venue in this district only after the Court denied Defendants' transfer motion, DE 122, and Defendants were left with the option of remaining in this district or having the case transferred to the Eastern District of New York, as Plaintiffs had sought. *See* DE 107 at 1-2; Opp. Exhs. A.1, A.2; Opp. Exh. F. In contrast to the venue defense, Defendants have consistently argued that the

2

Court lacks personal jurisdiction. In fact, Plaintiffs' counsel recently complained about the frequency with which Defendants have argued lack of personal jurisdiction. *See* DE 424 at 2.

Plaintiffs claim that a "knowing and voluntary waiver of objection to venue is also sufficient to waive personal jurisdiction defenses." Opp. at 4. There are, however, no cases supporting Plaintiffs' position that a party who has timely filed a Rule 12(b)(2) motion is deemed to have waived its personal jurisdiction defense by not also challenging venue. The four cases on which Plaintiffs rely (*id.* at 4-5) all involve the enforceability of forum selection clauses. The PA and PLO did not sign any contracts with Plaintiffs agreeing to submit to the jurisdiction of this Court, and those cases are therefore inapposite.

### B. Defendants Did Not Waive Their Personal Jurisdiction Defense by Not Moving for Reconsideration Following *Goodyear*.

Plaintiffs argue that Defendants waived their personal jurisdiction defense by continuing to litigate the case on the merits after the Supreme Court issued its decision in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011). Plaintiffs' *Goodyear* waiver argument misses the mark for two reasons: (i) Defendants are not required to file a motion for reconsideration of an adverse ruling on a Rule 12(b)(2) motion to preserve their personal jurisdiction defense; and (ii) Defendants' motion for reconsideration is timely because it relies principally on the Supreme Court's 2014 decision in *Daimler*.

1.    *Plaintiffs' Waiver Theory Is Based on Inapposite Cases Where, Unlike Here, the Defendant Did Not Litigate a Rule 12(b)(2) Motion.*

Plaintiffs state that a "party may waive otherwise valid personal jurisdiction arguments by proceeding with litigation, participating in the action, and not raising objections to the assertion of the court's jurisdiction." *Id.* That principle is irrelevant here, where Defendants raised their objections to the assertion of the Court's jurisdiction in their Rule 12(b)(2) motions. Once their renewed Rule 12(b)(2) motion was denied, Defendants did not waive personal

3

jurisdiction by proceeding to litigate the case on the merits.  *See, e.g., IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("There is no merit to the plaintiffs' argument that [Defendant] waived its defense to personal jurisdiction by participating in the litigation on the merits, since it did so at the direction of the district judge after having raised the defense in a timely fashion.") (internal citation omitted).

Plaintiffs' cases are readily distinguishable.  In *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974), the defendant received Court approval of a settlement agreement while its Rule 12(b)(2) motion was pending.  Here, Defendants proceeded to litigate only after obtaining an adverse ruling on their motion.  *See also Securities Training Corp. v. Securities Seminar, Inc.*, 633 F. Supp. 938, 939-40 (S.D.N.Y. 1986) (construing *Tandy* narrowly).  Plaintiffs' reliance on *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 996-97 (1st Cir. 1983), and *Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477, 480-82 (S.D.N.Y. 1985), is even more puzzling.  In those cases, the defendants first asserted their personal jurisdiction defense after extensively litigating the case on the merits.  Similarly, in *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999), "Atlas participated in pretrial proceedings but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer."  Here, Defendants timely filed both an initial Rule 12(b)(2) motion and a renewed Rule 12(b)(2) motion following jurisdictional discovery.

Plaintiffs argue that "a change in controlling law may excuse an otherwise fatal delay, but only if a party conscientiously brings the change to the court's attention."  Opp.at 5.  Here, Defendants did not engage in any "fatal delay" because they timely filed a Rule 12(b)(2) motion. Indeed, the case Plaintiffs cite for the "fatal delay" point, *Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981), deals with a defendant who filed a Rule 12(b)(2) motion only after the

4

Supreme Court issued a favorable decision on personal jurisdiction. The other case Plaintiffs cite (Opp at 6) is farther afield. In *Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004), the defense at issue was not a jurisdictional defense but rather an argument that "plaintiff had failed to satisfy the notice requirement of the Massachusetts whistleblower statute," and the defendant "advanced the defense for the first time in a post-trial motion for relief from judgment." *Id.* at 5, 6. Here, in contrast to *Holzsager* and *Bennett*, Defendants timely filed their Rule 12(b)(2) motion before engaging in any merits litigation. Plaintiffs cite no authority for their claim that litigating and losing a Rule 12(b)(2) motion waives personal jurisdiction by not filing a motion to reconsider. Motions for reconsideration are not required to preserve defenses.

2.      *Defendants' Motion for Reconsideration Was Timely Because It Relied on Daimler's Proportionality Test.*

Plaintiffs object to the timing of Defendants' motion for reconsideration, arguing that it should have been filed in 2011, when the Supreme Court announced the "essentially at home" test in *Goodyear*. As an initial matter, there are no strict timing rules for filing motions to reconsider interlocutory orders based on a change in the controlling law. Local Civ. R. 6.3 generally requires that motions for reconsideration be filed within 14 days of the Court's determination of the original motion, but that timing does not apply where the movant relies on a change in the controlling law. Under Rule 54(b), the district court has discretion to decide a motion for reconsideration "at any time before the entry of a judgment." *See Cohen v. UBS Fin. Servs.*, 2014 U.S. Dist. LEXIS 8017, at *7 (S.D.N.Y. Jan. 22, 2014). *See also Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) (motions for reconsideration are "committed to the sound discretion of the district court").

According to Plaintiffs, Defendants' motion for reconsideration based on *Daimler* was untimely because "[e]verything that defendants argue in their motion for reconsideration, they

1420390.1

could have argued from *Goodyear*." Opp. at 6. In fact, the Supreme Court does not issue decisions just to repeat itself. *Daimler* "announce[d] [a] new rule" for what it means to be "at home" in a forum, resolving an issue that was left undecided by *Goodyear* – whether a defendant is "at home" in every forum in which it has "the kind of continuous and substantial in-state presence that a parallel local company would have." *See Daimler*, 134 S. Ct. at 769 (Sotomayor, J., concurring). *See also* Brief for United States as Amicus Curiae Supporting Petitioner, No. 11-965, *Daimler AG v. Bauman*) at 14 ("Because the foreign corporate defendants in *Goodyear* had only 'attenuated connections to the [forum] State' that 'f[e]ll far short' of the standard for exercising general jurisdiction, this Court did not have occasion there to explain what kinds of contacts would establish that a defendant is 'essentially at home' in a particular forum.").[1] *Daimler* made clear for the first time that a defendant generally is "at home" only in one forum. It is therefore *Daimler*, not *Goodyear*, which constitutes the change in the controlling law warranting the Court's reconsideration of the personal jurisdiction issue.

 *Goodyear,* though an important decision, was not "controlling" of the issue here, because it did not involve a defendant with a continuing physical presence in the forum, with an office and employees. Instead, *Goodyear* rejected the assertion of general jurisdiction where the defendant's only contact with the forum arises as a result of some of its products reaching the forum through a stream of commerce. Unlike here, the *Goodyear* plaintiffs did not allege the defendants had any continuous and systematic physical presence in the forum.

 In *Goodyear*, parents of two North Carolina boys who were killed in a bus accident in France brought suit in North Carolina against three foreign subsidiaries of Goodyear, alleging that the defendants' defective tires caused the accident. The subsidiaries manufactured tires

---

[1] Available at http://www.scotusblog.com/case-files/cases/daimlerchrysler-ag-v-bauman/.

primarily for sale in European and Asian markets, but a small percentage of their tires were

distributed within North Carolina by other affiliates.   131 S. Ct. at 2851-52.  The parent

company, also a defendant, was an Ohio corporation. The trial court asserted general personal

jurisdiction under the "stream of commerce" theory, and the North Carolina Court of Appeals

affirmed. *See id.* at 2851.  Reversing, the Supreme Court held that the sporadic sales of the

foreign subsidiaries' tires in North Carolina through intermediaries were an insufficient basis for

the exercise of general jurisdiction.   In assessing whether the foreign subsidiaries' contacts with

North Carolina could give rise to general personal jurisdiction, the Court found:

> In contrast to the parent company, Goodyear USA, which does not contest
> the North Carolina courts' personal jurisdiction over it, petitioners are not
> registered to do business in North Carolina.  They have no place of
> business, employees, or bank accounts in North Carolina.  They do not
> design, manufacture, or advertise their products in North Carolina.

*Id.* at 2852. *Goodyear* did not announce that it was establishing a new standard for the exercise

of general jurisdiction and instead simply cited the 1945 *International Shoe* case for the

"essentially at home" standard.  *Id.* at 2851.  If *Goodyear* had held that the North Carolina court

could not exercise personal jurisdiction over Goodyear USA, the Ohio corporation, which did

business in North Carolina, Plaintiffs might have a point that Defendants should have filed a

motion for reconsideration sooner.  But that is not what happened.  The Court and litigants took

it as a given that Goodyear USA, even though an Ohio corporation, was "at home" in North

Carolina.  By emphasizing that the foreign subsidiaries had no physical presence in North

Carolina, *Goodyear*, if anything, implied that general jurisdiction would have been warranted if

the foreign subsidiaries had a place of business and employees in North Carolina.[2]

---

[2] In her concurring opinion in *Daimler*, Justice Sotomayor explained *Goodyear* as follows:  "We used the
phrase 'at home' to signify that in order for an out-of-state defendant to be subject to general jurisdiction,
its continuous and substantial contacts with a forum State must be akin to those of a local enterprise that
actually is 'at home' in the State."  *Daimler*, 134 S. Ct. at 769.

Contrary to Plaintiffs' claim that *Daimler* was redundant, courts in this jurisdiction did not interpret *Goodyear* as establishing a rule that continuous physical presence in the forum is not sufficient for general jurisdiction unless the forum is the defendant's primary base of operation. *See, e.g., Bristol-Myers Squibb Co. v. Matrix Labs., Ltd.*, 2013 U.S. Dist. LEXIS 113201 (S.D.N.Y. Aug. 12, 2013) (asserting general personal jurisdiction over an Indian corporation which had its principal place of business in India); *Shovah v. Mercure*, 2013 U.S. Dist. LEXIS 158229, at *5-6 (D. Vt. Nov. 5, 2013) (rejecting defendant's argument that general jurisdiction is limited to the state of incorporation and principal place of business because "*Goodyear* has not been interpreted by courts to define elements of general jurisdiction in such a restrictive way").[3]

Indeed, in decisions from federal courts across the country, courts continued to exercise general jurisdiction over defendants who did not meet *Daimler's* at-home test, because they did not view *Goodyear* as a significant change in the law. *See, e.g., Ashbury Int'l Group, Inc. v. Cadex Defence, Inc.*, 2012 U.S. Dist. LEXIS 134878, at *2, *16-17 (W.D. Va. Sept. 20, 2012) (finding a prima facie case for the exercise of general personal jurisdiction over a Canadian corporation that was not registered to do business in Virginia; had no employees, business records, or bank accounts in Virginia; did not pay taxes in Virginia; and had no Virginia mailing address, telephone number, fax number, or message service); *Ruben v. United States*, 918 F. Supp. 2d 358 (E.D. Pa. 2013) (finding general jurisdiction over an architecture firm that had several high-profile projects in Pennsylvania, but had no office, bank accounts, or property in Pennsylvania and derived only 1% of its U.S. revenue there); *McFadden v. Fuyao N. Am., Inc.*,

---

[3] Following *Daimler*, the Second Circuit granted the defendant's petition for a writ of mandamus and directed the district court to dismiss for lack of personal jurisdiction. *In re Roman Catholic Diocese of Albany*, 2014 U.S. App. LEXIS 2403 (2d Cir. Feb. 7, 2014).

1420390.1

2012 U.S. Dist. LEXIS 51564 (E.D. Mich. Apr. 12, 2012) (finding general jurisdiction over a Chinese manufacturer that had contracted with a wholesale customer in the forum over a number of years); *Hess v. Bumbo Int'l Trust*, 954 F. Supp. 2d 590, 595 (S.D. Tex. 2013) (asserting personal jurisdiction over a non-resident corporation, finding "the fact that a quarter (and at certain points all) of the Bumbo Baby Seats sold in the United States were distributed from Texas distinguishes this case from *Goodyear*"); *J.B. v. Abbott Labs., Inc.*, 2013 U.S. Dist. LEXIS 15768, at *9-11 (N.D. Ill. Feb. 6, 2013) (rejecting non-resident defendant's reliance on *Goodyear*, concluding that the "the Supreme Court did not replace or redefine the well-established standard for establishing general jurisdiction"); *Neeley v. Wolters Kluwer Health, Inc.*, 2013 U.S. Dist. LEXIS 106191, at *17-18 (E.D. Mo. July 30, 2013) (interpreting *Goodyear* to allow multiple forums to exercise general jurisdiction); *Beijing Auto. Indus. Imp. & Exp. Corp. v. Indian Indus.*, 2013 U.S. Dist. LEXIS 115104, at *4-5 (C.D. Cal. Aug. 7, 2013) (interpreting *Goodyear* as requiring only contacts that approximate physical presence in the forum).

Plaintiffs cite numerous cases (Opp. at 3-4) referencing *Goodyear*'s "at home" test but none of the cases extend *Goodyear* to preclude the assertion of general jurisdiction over a defendant who maintains an office and employees in the forum.  For example, in *Monistere v. Losauro*, 2013 U.S. Dist. LEXIS 171608, at *9-10 (E.D. La. Dec. 4, 2013), the court found: "Other than the one product sold to Plaintiff, Defendants do not manufacture, market, advertise, sell, or distribute products in Louisiana, and they have never performed services in Louisiana. Defendants have no offices, property, or bank accounts in Louisiana and are not registered to do business in Louisiana." *Id.* at *9.  The Court then held:  "For these reasons, it could hardly be said that Defendants have substantial, continuous, and systematic contacts with this forum that

1420390.1

render them essentially at home in Louisiana." *Id.* at \*9-10. Similarly, in *Russell v. SNFA*, 987 N.E.2d 778, 787 (Ill. 2013), "defendant [did] not have any offices, assets, property, or employees" in the forum. In fact, in *Russell*, the state court assumed general jurisdiction could be exercised if the defendant had an office in the forum. *See id.* at 786 (holding that general jurisdiction may be exercised if the contacts are "sufficiently extensive and pervasive to approximate physical presence") (internal citation and quotation omitted).

Plaintiffs note that the PA cited *Goodyear* in a motion to dismiss filed in a 2013 case in the Virginia (*Livnat*). Opp. at 7. Although the PA referenced *Goodyear's* "at home" test in the *Livnat* motion, it did not make the argument it advances in the instant motion for reconsideration because that argument did not become available until *Daimler*. In other words, the PA did not argue *Livnat* should be summarily dismissed, regardless of the allegations of continuous and systematic contacts with the forum (allegations the PA disputed) on the ground that the PA's only home was in the West Bank, not the United States. *See* Opp. Exh. G, Mem. at 18-25.

In sum, the Supreme Court does not take cases simply to repeat itself. *Daimler* – not *Goodyear* – squarely addressed the personal jurisdiction issue presented in this case. Defendants' motion for reconsideration was therefore timely.

## II.   PLAINTIFFS FAIL IN THEIR ATTEMPTS TO DISTINGUISH *DAIMLER*.

### A.   As This Court Previously Held, Defendants Are Entitled to Due Process.

Plaintiffs claim that *Daimler* is "utterly irrelevant" because, unlike foreign corporations, the PA and PLO lack due process rights. Opp. at 8-11. Plaintiffs previously briefed Defendants' supposed lack of entitlement to due process. *See* DE 83 at 23. The Court rejected Plaintiffs' argument, requiring Plaintiffs to make a prima facie showing that the PA and PLO have "sufficient minimum contacts with the United States as a whole to satisfy a traditional due

1420390.1

process analysis." DE 87 at 4. That decision is law of the case, and there has been no intervening change in the controlling law that would warrant the Court's reconsideration of that ruling. *See Sea Trade Co. v. FleetBoston Fin. Corp.*, 2009 U.S. Dist. LEXIS 114888, at *11 (S.D.N.Y. Dec. 9, 2009) ("a district court's interlocutory order may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice").

In any event, the Court was clearly right when it concluded that the PA and PLO are entitled to due process. Every other federal court that has analyzed whether it can assert personal jurisdiction over the PA and PLO has applied a due process test. *Estate of Esther Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006); *Biton v. Palestinian Auth.*, 310 F. Supp. 2d 172, 179 (D.D.C. 2004); *Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 91 (D.R.I. 2001); *United States v. PLO*, 695 F. Supp. 1456, 1461 (S.D.N.Y. 1988).

Plaintiffs cite *Palestine Information Office v. Schultz*, 674 F. Supp. 910 (D.D.C. 1987), *aff'd*, 853 F.2d 932 (D.C. Cir. 1988), for the proposition that the PLO has no due process rights. Opp. at 10. That case, however, involves a lawsuit brought by the Palestine Information Office ("PIO"), not the PLO, challenging the State Department's closure of the office under the authority of the Foreign Missions Act. The case does not, therefore, address any due process limits on bringing the PLO or PA to U.S. courts as defendants. Moreover, on appeal, the D.C. Circuit characterized the district court's conclusion that the "PIO's rights were not violated because 'a "foreign mission" qua "foreign mission"' cannot have any due process rights" as "circular," 853 F.2d at 942, and instead held that the PIO had received adequate due process. *Id.* Thus, the *PIO* case supports Defendants', not Plaintiffs', position. Plaintiffs also cite *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1480-81 (S.D.N.Y. 1988), but that case assumes that

11

the PLO, like a foreign sovereign, is not subject to suit in U.S. courts and therefore "lies outside the constitutional system." More recent decisions involving these Defendants consistently have afforded them due process rights when deciding whether to exercise personal jurisdiction.

The Fifth Amendment protects "persons." It is well-established that foreign defendants are persons, enjoying Constitutional due process rights under both the Fifth and Fourteenth Amendments even though they "stand outside the structure of the Union." *See* Opp. at 9. Indeed, most of the recent Supreme Court personal jurisdiction cases (including *Goodyear* and *Daimler*) have involved foreign defendants. "In fact, the entirely foreign nature of the defendants in *Goodyear*, *Nicastro*, *Asahi*, and *Helicopteros* is what enabled them to prevail." *GSS Group Lt. v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012).

The *only* exception to the principle that the exercise of personal jurisdiction over foreign defendants must comport with due process applies to foreign sovereign states, which are subject to the separate regime created by the Foreign Sovereign Immunities Act ("FSIA"), which greatly limits the circumstances under which foreign sovereigns can be sued in the U.S. and has its own personal jurisdiction provisions. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country") (internal quotation omitted). *See also* 28 U.S.C. § 1330(b), (c).

Plaintiffs also cite cases involving domestic municipalities which brought suit, as plaintiffs, to vindicate Constitutional rights. *See* Opp. at 8-10. Those cases are inapposite. There is a longstanding rule that States are not persons who can bring suit to vindicate Fifth Amendment rights. *South Carolina v. Katzenbach*, 383 U.S. 301, 323, 324 (1966).[4] In *City of Salt Ste. Marie, Michigan v. Andrus*, 532 F. Supp. 157, 167 (D.D.C. 1988), the court held that

---

[4] Similarly, U.S. territories, which are treated as States for many purposes, are not entitled to bring suit to vindicate due process rights. *See* Puerto Rico and the Virgin Islands cases cited by Plaintiffs (Opp. at 9).

1420390 1

because states and municipalities "are treated the same for virtually all legal purposes," and the municipality "performs the same function as the state," and "is a creature of the state," municipalities also cannot bring suit to enforce Constitutional due process rights. None of the cases cited by Plaintiffs addresses whether *foreign* governmental entities, which do not enjoy the protections of the Foreign Sovereign Immunities Act, may be deprived of due process rights when haled into U.S. courts. To the contrary, courts have routinely held that personal jurisdiction may be exercised over the PA and PLO only if consistent with due process.

### B. The Due Process Test for Personal Jurisdiction Is the Same Under the Fifth Amendment as Under the Fourteenth.

Plaintiffs also attempt to distinguish *Daimler* by arguing that *Daimler* involved Fourteenth Amendment due process rights, which they claim are more robust than the Fifth Amendment rights at issue here. *See* Opp. at 12-15. Plaintiffs are wrong. *SEC v. Straub*, 921 F. Supp. 2d 244, 253-54 (S.D.N.Y. 2013) ("because the language of the Fifth Amendment's due process clause is identical to that of the Fourteenth Amendment's due process clause, the same general principles guide the minimum contacts analysis"); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 558 (S.D.N.Y. 2005) ("The analysis is essentially the same. The principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only contacts with the forum state may be considered.").

Plaintiffs fail to identify cases establishing that due process standards are materially different under the Fifth Amendment. Instead, Plaintiffs cite cases from the Second Circuit upholding the exercise of personal jurisdiction under the Fifth Amendment based on minimal contacts with the U.S. Opp. at 12-13. Those cases, however, all involved the exercise of specific (not general) personal jurisdiction, and there is no indication the result would have been

13

different under the Fourteenth Amendment.  Plaintiffs also exaggerate the lack of U.S. contacts in these cases.  Plaintiffs claim that the defendant in *Chew*, 143 F.3d 24, "act[ed] entirely overseas."  In fact, the court identifies U.S. contacts directly related to the boat accident at issue.  *See id.* at 25-26, 30-31.  In *SEC v. Unifund Sal*, 910 F.2d 1028, 1033 (2d Cir. 1990), the defendant was alleged "to have traded, on the basis of inside information, options of a United States corporation listed exclusively on a United States stock exchange."

Moreover, one of the cases, *Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003), expressly relies on the Fourteenth Amendment case, *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), and its "effects" test of specific personal jurisdiction.  The *SEC v. Unifund Sal* case also relies on an "effects" test.  910 F.2d at 1033.  *Calder*'s "effects" test has been dramatically circumscribed by the Supreme Court's recent decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014).

Plaintiffs claim that there is a special personal jurisdiction rule in the Second Circuit in terrorism cases which allows "the United States to exercise personal jurisdiction over defendants acting abroad."  Opp. at 13.  Plaintiffs cites do not support their claim the Court may exercise jurisdiction over the PA and PLO.  *United States v. Yousef*, 327 F.3d 56, 78 (2d Cir. 2003), and *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011), involve criminal prosecutions of individuals present in the United States.   Equally off-base is Plaintiffs' musings that the U.S. would not be able to prosecute individuals on the FBI's most-wanted terrorist list if *Daimler* applies to the Fifth Amendment.  *See* Opp. at 15.  Personal jurisdiction in criminal cases is governed by different rules than in civil cases.  In criminal cases involving foreign nationals, the "minimum contacts" test is replaced by a nexus test, which requires only a nexus between the Defendants' activities and the United States.  *See United States v. Angulo-Hernandez*, 576 F.3d

59, 62 (1st Cir. 2009); *United States v. Mohammad-Omar*, 323 Fed. Appx. 259, 261 (4th Cir. 2009); *United States v. Zakharov*, 468 F.3d 1171, 1177 (9th Cir. 2006). *Daimler* did not curtail the reach of U.S. criminal jurisdiction over foreign nationals.

### C.    The "At Home" Test Is Not Limited to Corporations Engaged in International Commerce.

Plaintiffs next imply that *Daimler* applies only to corporations engaged in international commerce. Opp. at 16.   Nowhere has the Supreme Court suggested that there are two tests for personal jurisdiction – one for foreign corporations engaged in commerce and another, less favorable test, for everyone else.   Indeed, cases involving corporate and individual defendants are cited interchangeably in the Supreme Court's personal jurisdiction jurisprudence. *See, e.g.*, *Walden*, 134 S. Ct. 1115, 1121-23 (citing *Daimler* and other landmark personal jurisdiction cases involving corporate defendants in a case involving a non-corporate defendant).   The Supreme Court's recent decision in *Walden* also undercuts Plaintiffs' claim that commercial activity enjoys heightened due process protection. *Id.* at 1123 ("These same principles apply when intentional torts are involved.").   Plaintiffs cite references in *Daimler* to the benefit of providing greater predictability to foreign corporations. *See* Opp. at 16.   But, of particular relevance, here, the Supreme Court also emphasized "the risks to international comity" posed by an expansive view of general jurisdiction. *Daimler*, 134 S. Ct. at 750.   Such risks are acutely present here, where a foreign government is being sued in the U.S. based on alleged extraterritorial conduct.

### D.    *Daimler* Is Not Distinguishable Based on the Method of Service.

Plaintiffs next claim that "*Daimler* did not address the method of service by which jurisdiction attached in this case." Opp. at 17.  Plaintiffs cite Rule 4(k)(1)(C), which provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."  Plaintiffs imply that Rule 4(k)(1)(C)

dispenses with the separate requirement that the exercise of personal jurisdiction comport with Fifth Amendment due process. But Plaintiffs already have acknowledged otherwise. DE 83 at 4 (citing cases). More importantly, the Court in its previous ruling required both that service be properly effected under Rule 4(k)(1)(C) *and* that defendant has sufficient minimum contacts with the U.S. as a whole to satisfy a traditional due process analysis. DE 87 at 4. *Accord In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d at 557-58. And, contrary to Plaintiffs' assertion, *Daimler* did not "expressly [leave] open the question of whether and how service of process on an agent within the territory for general jurisdiction would comport with due process. Opp. at 18 (citing *Daimler*, 134 S. Ct. at 759). *Daimler* left open the question of the showing needed to establish minimum contacts under an agency theory. *See Daimler*, 134 S. Ct. at 758-59. In sum, *Daimler* applies without regard to how Defendants were served.

## III.    THE COURT CANNOT EXERCISE SPECIFIC PERSONAL JURISDICTION.

Plaintiffs previously argued for the exercise of specific jurisdiction. DE 83 at 19-21. The Court declined to exercise specific jurisdiction and instead exercised general jurisdiction, after noting that "[w]hereas specific jurisdiction applies where a defendant's contacts are related to the litigation, general jurisdiction applies where they are unrelated." DE 87 at 6. Without establishing any basis for the Court's reconsideration of its ruling, Plaintiffs improperly seek to relitigate specific jurisdiction, now relying on U.S. conduct previously treated as unrelated to the litigation and giving rise to general jurisdiction. The Court should decline to reconsider. In any event, specific jurisdiction may not be exercised here. The only U.S.-based conduct Plaintiffs identify are hearsay statements by alleged PA or PLO officials in U.S. media outlets supporting a peaceful end to the Occupation and negotiation of Palestinian statehood. *See* Opp. at 21-24.

1420390.1

These statements did not give rise to the instant lawsuit and thus cannot support the exercise of specific jurisdiction.

### A. Plaintiffs' Theory of Specific Jurisdiction Is Barred by the Government Contacts Exception.

In deciding Defendants' renewed motion to dismiss in 2011 – as required by the government contacts exception – the Court excluded from the jurisdictional analysis Defendants' contacts with, and alleged efforts to lobby, the federal government. *See* DE 87 at 12, 14. The Court found, however, that there were sufficient other public relations activity that did not fall within the government contacts exception. *See id.* at 14-15 (finding that Defendants' U.S. "forums and audiences clearly indicate that the vast majority of these appearances were not directly communicating to . . . the [U.S.] federal government"). Indeed, this was the position urged on the Court by Plaintiffs, who argued in their opposition to the renewed Motion to Dismiss: "the vast majority of defendants' contacts have nothing to do with the government – indeed, much of their PR and media activity was not focused on D.C. at all." DE 83 at 18.

Plaintiffs cannot have it both ways. To the extent Defendants were engaged in U.S.-based speech designed to lobby the federal government to change its foreign policy, this is the very sort of speech exempt from the minimum contacts analysis under the government contacts exception. *See* DE 82 at 13-21. To the extent Defendants engaged in speech intended to pressure the U.S. government into changing its policy on the Israeli-Palestinian conflict, *see* Opp. at 32, Plaintiffs cannot rely on that speech to establish specific personal jurisdiction.

### B. In Any Event, Defendants' U.S.-Based Public Relations Activities Do Not Give Rise to Specific Personal Jurisdiction Because They Are Not Sufficiently Related and Causally Connected to the Lawsuit.

In February of this year, the Supreme Court issued an important decision on specific personal jurisdiction holding that, in order for a court to exercise specific personal jurisdiction,

1420390.1

"the defendant's suit-related conduct must create a substantial connection with the forum State,"
or, here, the United States.  *Walden*, 134 S. Ct. at 1121.  As the Court explained, specific or
"case-linked" jurisdiction "depends on an affiliatio[n] between the forum and the underlying
controversy (*i.e.*, an activity or an occurrence *that takes place in the forum* State and is therefore
subject to the State's regulation)."  *Id.* at 1122 n.6 (internal quotation omitted) (emphasis added).
Moreover, "[d]ue process requires that a defendant be haled into court in a forum State based on
his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he
makes by interacting with other persons affiliated with the State.'"  *Id.* at 1123 (internal citation
and quotation omitted).  Here, the alleged tortious conduct occurred in the Middle East.  *See*
Opp. at 32 ("To be sure the violence occurred in Israel.").  Many of the Plaintiffs are not even
U.S. residents, but even if they were, the Defendants' alleged contact with forum residents is an
insufficient basis for the exercise of specific jurisdiction.  *See Walden*, 134 S. Ct. at 1122-23
("our 'minimum contacts' analysis looks to the defendant's contacts with the forum . . . itself, not
the defendant's contacts with persons who reside there").

  As this Court has held, specific jurisdiction is proper only when the Defendants' "in-
forum activity 'gave rise to the episode-in-suit' or a defendant's 'single or occasional acts' in the
forum are sufficient to render that defendant answerable with respect to those acts."  *Absolute
Activist Master Value Fund, Ltd. v. Ficeto*, No. 09-cv-8862, 2013 U.S. Dist. LEXIS 45883, at
*34 (S.D.N.Y. Mar. 28, 2013) (Daniels, J.) (citation omitted).  Here, there is no evidence that
Defendants' U.S.-based public relations activities advocating for a negotiated end of the
Occupation and establishment of a Palestinian State gave rise to *any* attacks on civilians and

certainly not the attacks at issue in this lawsuit.[5]  In fact, Defendants repeatedly condemned

attacks on civilians.  *See, e.g.*, Opp. Exh. H.143 at 205 ("And our position has been always very

clear:  We are against any action against Israeli civilians -- that's directed against Israeli civilians

in the same manner that we condemn and oppose and ask others to do the same when Israel

directs its attacks against Palestinian civilians."); H.147 at 81 ("we condemn any act of violence

that is directed against civilians").

As to Plaintiffs' hyperbolic claim that the U.S.-based public relations activities were

engaged in "in tandem with [Defendants'] campaign of terror and violence in Israel," Opp. at 32,

Plaintiffs have no admissible evidence that Defendants were engaged in such a campaign.  At

most Plaintiffs have evidence which, even if admissible,   shows that a small percentage of

members of the PA's security forces engaged in violence.  Plaintiffs have no admissible evidence

that any such employees did so within the scope of their employment, at the PA's direction, or

with the PA's support.  Moreover, where, as here, a defendant has only limited contact with the

forum, specific jurisdiction can be exercised only if the plaintiff's injury was "proximately

caused" by the forum-based contacts.  *See Absolute Activist*, 2013 U.S. Dist. LEXIS 45883, at

*37.  Plaintiffs cannot identify any evidence that the attacks at issue were proximately caused by

Defendants' U.S. public relations activities.  In fact, Plaintiffs concede they were "injured by

reason of . . . attacks in Israel."  Opp. at 19.

Under Plaintiffs' expansive theory of specific jurisdiction, any defendant who engages in

public relations, advertising, or promotional activities in a forum would always be subject to

specific jurisdiction for lawsuits having no other connection to the forum because plaintiffs could

---

[5] Defendants note that all of Plaintiffs' evidence of U.S.-based conduct constitutes inadmissible hearsay
and cannot be converted into admissible evidence, whether on motion or at trial.  *See* Opp. at 21-24.  At
this stage of the litigation, with fact and expert discovery closed, Plaintiffs cannot rely on inadmissible
hearsay to establish jurisdiction.

1420390.1

always argue that defendants' sales, operations, or other activities outside the forum were "in tandem" with their forum-based promotional activity. Such an approach would not be condoned by the Supreme Court, which has made clear that there must be a close connection between the forum, the defendant, and the litigation. Here, there is no such connection.

Plaintiffs also claim that *Walden* embraced the "effects" test for specific jurisdiction. Specifically, Plaintiff cite *Walden* for their assertion that specific jurisdiction may be asserted "so long as the 'effects' of the terrorism campaign connected the defendants to the United States." Opp. at 33 (citing *Walden*, 134 S. Ct. at 1121). *Walden* says nothing of the kind and in fact limits the "effects" test. *See* 134 S. Ct. at 1125 (requiring that the defendant's conduct connects him to the forum in a meaningful way"); *id.* (distinguishing *Calder* because "the effects of petitioner's conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction"). In any event, here, Plaintiffs cannot identify any "effects" on the United States of Defendants' lawsuit-related conduct.

Finally, there is no basis to delay resolution of Defendants' motion for reconsideration. *See* Opp at 34-35. The alleged U.S.-based activities of Defendants have no relationship to the litigation of the Plaintiffs' ATA claims (*see* Opp. at 21-24), which are all based on conduct in the Middle East. Defendants should not be required to litigate the case on the merits any further given the overwhelming grounds for dismissing the case for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration should be granted, their motion to dismiss for lack of jurisdiction also should be granted, and this action should be dismissed with prejudice.

20

April 1, 2014                                 Respectfully Submitted,


                                              /s/ Laura G. Ferguson
                                             Laura G. Ferguson
                                             Mark J. Rochon
                                             Brian A. Hill
                                             MILLER & CHEVALIER CHARTERED
                                             655 15th Street, NW, Suite 900
                                             Washington D.C. 20005-6701
                                             (202) 626-5800 [tel]
                                             (202) 626-5801 [fax]
                                             lferguson@milchev.com [email]


                                             *Counsel for Defendants the Palestinian Authority and the
                                             Palestine Liberation Organization*

1420390.1