UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK SOKOLOW, *et al.*,

    Plaintiffs,

    v.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

    Defendants.

Docket No.
04-cv-397 (GBD) (RLE)

## MOTION TO CERTIFY *DAIMLER* ISSUE FOR INTERLOCUTORY APPEAL

Following the Supreme Court's January 2014 decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), Defendants the Palestinian Authority (or, "PA") and Palestine Liberation Organization ("PLO") filed a motion seeking dismissal on the ground that the Court cannot exercise general personal jurisdiction over them. DE 421. In a motions hearing on April 11, 2014, the Court denied Defendants' motion. Under 28 U.S.C. § 1292(b), the Court may certify its interlocutory order for appeal if it is of the opinion that (1) the order "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The Court's April 11 interlocutory order meets that test because the Court's ability to assert general personal jurisdiction over the Palestinian Authority and PLO is a controlling

1423513.1

question of law as to which (after *Daimler*) there is a substantial question, resolution of which would result in the termination of the litigation.

## BRIEF PROCEDURAL BACKGROUND

Following personal jurisdiction discovery, Defendants filed a renewed Rule 12(b)(2) motion. DE 81, 82. The Court denied the motion in March 2011. *Sokolow v. PLO*, 2011 U.S. Dist. LEXIS 36022 (S.D.N.Y. Mar. 30, 2011) (DE 87). The Court concluded that it could assert general personal jurisdiction over Defendants on the basis that they "were continuously and systematically present in the United States by virtue of their extensive public relations activities." *Id.* at *28. The Court found that Defendants "expended substantial amounts of money - often exceeding $200K every six months - on these activities." *Id.* at *21. The Court also found that the Defendants "operated a fully and continuously functional office in Washington, D.C., during the relevant period," with approximately 12 employees. *Id.* at *16-18.

Shortly after the Supreme Court's decision in in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), Defendants filed a motion seeking dismissal on the ground that the Court cannot exercise general personal jurisdiction over them. DE 421. In *Daimler*, the Supreme Court expressly rejected the "continuous and systematic" test used by this Court. Instead, the defendant must be "at home" in the forum. 134 S. Ct. at 760-61. *Daimler* made clear that it is only the "exceptional case" where a forum can, consistent with due process, assert general personal jurisdiction over a defendant if the forum is not the defendant's place of incorporation or principal place of operation. *Id.* at 761 n.19 ("We do not foreclose the possibility that in an exceptional case, *see, e.g., Perkins* . . . , a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a

nature as to render the corporation at home in that State.") (referencing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).

In *Daimler*, the Supreme Court found that "Daimler's slim contacts with [California] hardly render it at home there." 134 S. Ct. at 760. *See also id.* at 761 n.19 (noting that Daimler's activities in California "plainly do not approach [the] level" that would make Daimler "at home" in California). Those activities consisted of the following: multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine. *Id.* at 752. Daimler's U.S. distributor was the largest supplier of luxury vehicles to the California market, and its $4.6 billion in California sales "account[ed] for 2.4% of Daimler's worldwide sales." *Id.* at 752, 767 (Sotomayor, J., concurring).[1]

In Defendants' *Daimler* motion and at the motions hearing, they argued that the Court could no longer exercise general personal jurisdiction over them because the allegedly continuous and systematic non-exempt media and public relations activities of the Washington, D.C. office did not make the Palestinian Authority or PLO "at home" in the United States. The United States is not the paradigm "at home" forum for either Defendant, nor do the facts established through discovery provide a basis for treating this as an "exceptional case." The Defendants' contacts with the forum, both in absolute terms and in proportional terms, are less substantial by an order of magnitude than Daimler's and do not approach the facts of *Perkins*, where Ohio was the Philippine company's "principal, if temporary, place of business." *See Daimler*, 134 S. Ct. at 756 (internal citation and quotation omitted). *See also In re Roman Catholic Diocese of Albany, New York*, 2014 WL 485948, at *6-7 (2d Cir. Feb. 7, 2014) (citing

---

[1] At the hearing, this Court sought to distinguish *Daimler* on the basis that the California activities were those of a subsidiary. But the Supreme Court avoided the issue of whether Daimler could be sued based on its subsidiary's contacts by instead treating the contacts as those of Daimler itself. 134 S. Ct. at 760.

3

*Daimler*'s "exceptional case" rule in granting petition for writ of mandamus and directing dismissal because "Daimler's contacts with the forum were far more substantial than the Diocese's with Vermont").

In responding to the Defendants' *Daimler* motion, the Plaintiffs did not once assert that the Palestinian Authority or PLO is "at home" in the United States under *Daimler*. Instead, Plaintiffs argued that the Defendants had waived their *Daimler* arguments and that the Palestinian Authority and PLO are not entitled to due process. Pls.' Opp. at 1-19.

Indeed, one of Plaintiffs' own proposed trial exhibits demonstrates that the Defendants' relevant U.S.-activities were a minute fraction of their total worldwide activities. *See* Exh. 1 at 10 (showing that the PA had approximately 100,000 employees during the relevant period, as compared with the 12 in the United States); *id.* at 9 (showing average annual PA expenditures of approximately $1 billion, compared to approximately $400,000 spent annually on the jurisdictionally relevant activities of the Washington, D.C. office); *see also* DE 84, Declaration of David J. Strachman at ¶¶ 6-16 (summarizing data from Foreign Act Registration Act reports for relevant period on amounts the Washington office received from the PA); *Sokolow*, 2011 U.S. Dist. LEXIS 36022, at *21 (noting that the Washington office often expended $200,000 every six months, or $400,000 annually, on media and public relations activities, *i.e.*, the activities the Court found jurisdictionally significant).

## ARGUMENT

Here, the Court's jurisdiction over the Defendants "involves a controlling question of law" under 28 U.S.C. § 1292(b) because "reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (citing J. Moore & B. Ward, 9 *Moore's Federal Practice* ¶ 110.22[2], at 268 (1990) (collecting cases)). The

4

*Daimler* issue also meets § 1292(b)'s "substantial ground for difference of opinion" requirement. Based on the Court's ruling, there is a substantial ground for difference of opinion as to how the *Daimler* proportionality test should be applied in comparing a defendant's contacts with the forum with its worldwide contacts. *Daimler* is a new decision and district courts are just beginning to interpret it. This Court expressed reluctance to be the first judge to apply the rule to the Palestinian Authority and PLO. Because (1) the assertion of general jurisdiction over the Palestinian Authority and PLO (based on the presence of a U.S. foreign mission office and political speech of the head of that office) raises substantial international comity and foreign policy concerns; (2) a 10-12 week terrorism trial in New York is highly disruptive and burdensome to the Palestinian Authority government and PLO at a critical time; and (3) there is substantial grounds for arguing that the Court has misread *Daimler*, Defendants respectfully ask the Court to seek a ruling from the Second Circuit.

Before a foreign government is subjected to a 10-12 week terrorism trial in New York for decade's old conduct and events unrelated to the United States, the Court should be confident it has a proper basis for the exercise of jurisdiction. *Daimler*, at the very least, has thrown that into doubt. The stakes are simply too high for the Palestinian Authority and PLO to be subjected at this time to the burden and expense of a lengthy trial when there is substantial question about the Court's jurisdiction.

Because *Daimler* is controlling precedent on the scope of general personal jurisdiction and because personal jurisdiction is a case-dispositive, threshold issue, an interlocutory appeal of the Court's order also would meet § 1292(b)'s requirement that "an immediate appeal from the order . . . materially advance the ultimate termination of the litigation." The Seventh Circuit recently issued a writ of mandamus to a district court on a *Daimler* personal jurisdiction issue.

As here, the case involved a high-profile issue, "appreciable foreign policy consequences," substantial financial stakes, and only a tangential connection to the United States. *Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012). As here, the defendant had moved for reconsideration and also sought certification for an interlocutory appeal. *See id.* at 645. In granting the petition and directing the district court to dismiss the defendants, the Court of Appeals emphasized: "The consequences for the plaintiffs themselves are also very substantial. If the claims against these defendants do not belong in U.S. courts, no matter how compelling the claims might be on the merits, we would do the plaintiffs no favors by allowing them to spend more time and money to proceed further toward an inevitable dismissal." *Id.* at 651. The Court concluded: "It is the confluence of these specific factors, together with the crystal clarity of the personal jurisdiction issue, that removes this case from the category of 'ordinary' denials of motions to dismiss." *Id.* Here, a similar confluence of factors warrants certifying the *Daimler* issue for interlocutory appeal.

April 18, 2014                                Respectfully Submitted,

                                             /s/ Laura G. Ferguson
                                            Laura G. Ferguson
                                            Mark J. Rochon
                                            Brian A. Hill
                                            MILLER & CHEVALIER CHARTERED
                                            655 15th Street, NW, Suite 900
                                            Washington D.C. 20005-6701
                                            (202) 626-5800 [tel]
                                            (202) 626-5801 [fax]
                                            lferguson@milchev.com [email]

                                            *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*