פח (ת"א) 1137/02        מדינת ישראל נ' נאסר מחמוד אחמד עוויס

המדינה טוענת כי כתוצאה ממעשיו של הנאשם נרצחו נפצעו ונפגעו אזרחים רבים  והיא מבקשת להרשיעו כמפורט בשמונת האישומים הכלולים בכתב האישום בעבירות המיוחסות לו והן : חברות ופעילות בארגון טרוריסטי עבירות בניגוד לסעיפים 2 ו- 3 לפקודת מניעת טרור התש"ח-1948.

מעשי קשירת קשר לביצוע פשע, עבירות בניגוד לסעיף 499 לחוק העונשין תשל"ז-1977.

מעשי רצח ונסיונות למעשים כאלה עבירות בניגוד לסעיפים 300(א)(2) ו- (1)305 לחוק העונשין התשל"ז-1977.

מעשי גרימת חבלה בכוונה מחמירה ונסיונות למעשים כאלה, עבירות בניגוד לסעיפים 329(1) ו-329(1) ביחד עם סעיף 25 לחוק העונשין התשל"ז-1977.

נשיאת נשק שלא כדין, עבירות בניגוד לסעיף 144(ב) לחוק העונשין תשל"ז-1977.

### קו ההגנה של הנאשם

בתחילת הדרך שכר הנאשם את שרותיו של ע"ד בולוס ושיתף עמו פעולה.

הסנגור קיבל לידיו את מלוא חומר החקירה ואף הודיע כי יטען בשמו של הנאשם טענות מקדמיות כאלה ואחרות ובהן טענת חוסר סמכות.

ניצן לקו ההגנה העתידי של הנאשם נמצא בפרוטוקול ישיבת 10.9.02. בישיבה זו טען הסנגור (בפני הרכב אחר) בין השאר "אחרי שהסברתי לו את הענין, הוא אומר שהוא לא רוצה עורך דין, שהוא מיצג את עצמו אנחנו מקוים שתוך זמן קצר נוכל לדחוף קדימה את הדיון, זמן של לפחות שבועיים".

באותה ישיבה – כעולה מהפרוטוקול – אמר הנאשם לעורך דינו ובאמצעות המתורגמן "אל תדבר בשמי אני עורך הדין של עצמי, אני מיצג את עצמי" וכבר אז החליט ביהמ"ש כי "משרדו של ע"ד בולוס ימשיך ליצג את הנאשם גם אם האחרון יחליט לנהל את הדיון בעצמו".

בישיבת 22.1.03  (בפני ההרכב האחר) הודיע הסנגור את הדברים הבאים "אנחנו חוזרים בנו מהטענה של חוסר סמכות. אני מסכים שהיתה החלטה לחגיש סיכומים תוך 30 יום לגבי טענת חוסר הסמכות, אבל לאור ההתפתחויות שהיו בנושא של ברגותי ולאור החלטת בית המשפט המחוזי לדחות את הטענה הזאת, החלטנו לחזור מהטענה לחוסר סמכות בתיק זה."

לאחר מכן הגיש הסנגור בקשה לפטור אותו מהיצוג והבקשה נדחתה בהחלטתינו מיום 2.3.03.

המשפט החל נמשך ונסתיים בנוכחות הנאשם וסנגורו ובתרגום מלא לשפה הערבית. הנאשם והסנגור שתקו לאורך כל הדרך. הם לא השיבו לכתב האישום (ראינו בכך כפירה גורפת) הם לא טענו טענות מקדמיות, לא חקרו עדים בחקירה נגדית ולא העלו טענות משפטיות. הנאשם לא העיד  ולא הובאו עדים מטעמו. השניים אף בחרו שלא לסכם.

עמדה זו תבחן על רקע הודעתו בכתב של הסנגור לאמור :

2

"...4. החו"מ שוחח עם הנאשם בכמה הזדמנויות ונסה לשכנע אותו לקבל ייצוג במשפט ע"י עו"ד, אולם הנאשם בחר שלא להיות מיוצג ע"י עו"ד.

5. החו"מ הסביר לנאשם כי הוא אמור לייצג את האינטרסים שלו במשפט, בתשובה הבהיר הנאשם כי החליט שלא לקחת חלק פעיל בהליך המשפטי, זכותו לבחור ולנקוט בדרכים שהוא בוחר לעצמו לרבות באמצעות קו הגנה פסיבי של שתיקה במהלך משפטו.

6. הנאשם ביקש שאם ביהמ"ש יכפה עליונו הופעה בדיונים עליונו אך ורק לשתוק.

7. ביום 11.3.03 ולאחר החלטת כב' ביהמ"ש שוב הסביר החו"מ לנאשם את החלטת כבודם ואת הסיטואציה שהוא נמצא בה וכי במידה וישנה טענה משפטית במהלך הדיון מן הראוי שהחו"מ יתייחס אליה, אולם הנאשם שלל אפשרות זו וחזר על דבריו שאינו מעוניין לשתף פעולה ואינו רוצה אותנו כסנגורים שלו ושוב ביקש שעליונו לשתוק...

10. הנאשם מודע היטב למשמעות הדברים, והוא אינו פסול דין ויש לו היכולת השכלית והאינטלקטואלית לבחור כיצד לנהל את המשפט...

13. בהעדר שתוף פעולה עם הנאשם והוראותיו לסנגור לשתוק במהלך המשפט לא לחקור עדים ו/או לטעון טענות משפטיות ו/או אחרות ולא לדבר בשמו ו/או לטעון טענות עובדתיות ו/או משפטיות לא נותר לחו"מ אלא למלות את פיו מים ויהיה מנוע מלעשות אחרת וזאת גם מטעמים מובנים שמקורם בכללי האתיקה המחייבים כל עו"ד...".

שוכנענו מהנאמר בהודעה, מדברים שנאמרו לנו בעניין זה בעל פה ומהתנהגות הנאשם וסנגורו ערב המשפט ובכל עת מהלכו, כי הנאשם נוקט עמדה המבטאת קו הגנה אותו בחר ביודעין ברצון מלא וחופשי ובשיקול דעת.

לפנינו בחירה שהיא פרי מהלך מחושב מכוון מודע מושכל ומניפולטיבי אשר נעשתה על ידי נאשם המבין היטב וער לכל השלכותיה.

לנאשם ניתנה בכל עת האפשרות המלאה ליטול חלק פעיל בדיון אף ניסינו לדרבן את סנגורו לעשות מלאכתו ככל שיוכל גם בהעדר שיתוף פעולה מצדו של הנאשם ולכל הפחות כאשר מדובר בטיעון משפטי גרידא.

הסנגור הנכבד שב והסביר כי אין הוא מתערב בדיון הגם שמדובר בטיעון משפטי מן הטעם שחזקה עליו מצוות קו ההגנה של הלקוח.

במילים אחרות, לא במחדל עסקינן או באדישות לתוצאה אלא בקו הגנה ברור והחלטי.

חזקה על הנאשם וסנגורו שהם מודעים לראשית הדברים לנפקות המשפטית שנושא עמו קו הגנה זה.

### הודאות הנאשם

הנאשם הודה בעבירות המיוחסות לו בכתב האישום במסגרת הודעותיו במשטרה.

3

C:\Users\Owner\Desktop\ito bates stamp\Nasser Aweis Conviction.doc

ההודעת ת/5 מיום 21.4.02, ת/6 מיום 28.4.02 ת/7 מיום 30.4.02 ת/8 מיום 1.5.02 ו- ת/9 מיום 14.5.02
נכתבו על פי עדותו של ע״ת 5 חוקר בחולית פח״ע רוני עמאר בערבית בכתב ידו של הנאשם ולאחר שהסביר
לנאשם בערבית את החשדות המיוחסים לו והזהירו כדת וכדין. על פי עדות החוקר, לאחר שהנאשם אישר
בפניו כי הוא מבין הן את החשדות והן את מהות האזהרה, ביקש הוא לכתוב את הדברים בכתב ידו ועשה
כן מרצונו הטוב והחופשי.

על פי עדות החוקר הנאשם חתם בפניו  על ההודעות. החוקר תרגם את ההודעות מערבית לעברית (לכל
הודעה צמוד תרגומה לעברית ת/5א׳ עד ת/9א׳ כולל בהתאם).


ההודעה ת/22 מיום 27.6.02 נגבתה על ידי ע״ת מס׳ 7 החוקר האדי חלבי אשר הסביר כי גבה את העדות
בשפה הערבית השגורה על פיו לאחר שהנאשם הוזהר כדין, הבין את מהות החקירה ואת האזהרה ומסר
דבריו מרצון טוב וחופשי. הנאשם חתם על ההודעה שהחוקר רשם אותה בערבית. גם חוקר זה תרגם את
ההודעה לערבית והתרגום צמוד להודעה (ת/22א).


נסיבות גביית ההודעות  באופן המתואר לעיל, העובדה שברובן המכריע (חמש מתוך שש הודעות) נכתבו
על ידי הנאשם  בכתב ידו והעובדה שהנאשם שב ואישר בפני שופט צבאי (ראה פרוטוקול מישיבת הארכת
מעצר ת/23 ועדות ע״ית מס׳ 5 ) כי ״אני מאשר כאמיתיות ונכונות האימרות והודאות שמסרתי בחקירתי
בערבית קראתי אותם וחתמתי עליהם. נכון שהייתי מעורב בכל המעשים והפיגועים שהודיתי עליהם. ״כל
אחד והתפקיד שלו״ איננו מתנגד להארכת המעצר המבוקשתי״, הן הנותנות שראיות אלה קבילות ואין
חשש כי הופעל על הנאשם לחץ חיצוני אשר הביאו להודות בביצוע מעשים שאין לו חלק ונחלה בהם.


בחינת תוכן של ההודעות ובכללן ההודאות אכן מעלה שלפנינו דבר דבור על אופניו סיפור דברים
כהוויתם מתוך מחשבה בהירה ברורה והגיונית בדעה צלולה ומיושבת והן בעלות משקל עצמי פנימי גבוה
אשר מצביע לכשעצמו על אמיתותן.


ברי שהודאת הנאשם בפני שופט המעצרים ובפיקוחו נעשתה ללא לחץ או השפעה ובהיותה נושאת עמה
תוצאות חמורות לנאשם, מהווה ראיה מאמתת מהותית ובעלת משקל מיוחד המעצימה את כוחן של
הודיותיו הקודמות מלבד היותה עומדת כראיה עצמאית (עיין ד״נ 3081/91 קוזלי נ׳ מ״י פ״ד מה(4) 441 וכן
ע״פ 6613/99 סטויבן סמירק נ׳ מ״יי, פ״ד נו(3) 529 וע״פ 3338/99 פד נד(5) 667).


הדרישה ל״דבר-מה״ נוסף אשר מפיג חשש שמא לחץ פנימי הוא שהביא את הנאשם להודות ,נמלאה
עד תום, באימרות בכתב שנתנו עדים אחרים מחוץ לכותלי בית המשפט אותן אנו מקבלים כראיות קבילות
ומהימנות כפי שנפרט להלן.


### השותפים

עדי התביעה אחמד אבו חדר (ע״ת מס׳ 6), מחמד יזכ (ע״ת מס׳ 21), אחמד ברגותי (ע״ת מס׳ 23) ויאסר
אבו באכר (ע״ת מס׳ 25) הם שותפיו לעבירות של הנאשם (להלן הארבעה). להוציא ע״ת מס׳ 6 אחמד אבו
חדר אשר דינו הוכרע ונגזר בטרם העיד (עיין כ״א פרוטוקול הכרעת דין וגזר דין אשר סומנו יחדיו ת/11)
שלוש האחרים נקראו להעיד בטרם נסתיים משפטם  ונתעוררה השאלה אם עדותם קבילה אל נוכח הלכת

4

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

קינוי (ע"פ 194/75 מנחם קינוי נ' מ"י פ"ד ל(2) 477), הלכה אשר כבליה לא נתגמשה עדיין (עיון ע"פ 1774/02 שמעון קדוש נ' מ"י) והיא מורה לנו "שאין להעיד נאשם אחד נגד נאשם שני, אפילו הונשו נגדם כתבי אישום נפרדים, כל זמן שיש חשש, כי העד עלול לצפות לטובת הנאה על ידי המתקת דינו במשפט התלוי ועומד נגדו. דבר זה אפשר למנוע בין על ידי כך שמשפטו יתברר לפני מתן העדות ובין על ידי הפיכתו לעד מלך ועיכוב ההליכים או הצהרה מטעם התביעה שהמשפט נגדו יבוטל עם סיום העדות...".

המדינה ניווטה דרכה בהתאם למה שנקבע בע"פ 579/88 סוויסה נגד מדינת ישראל פ"ד מד (1) 529. לטענה, הנאשם לא התנגד להעדת עדים אלה אף שידע היטב כפי שידע סנגורו שמשפטם לא נסתיים, הוא לא הציב מחסום - שעמד לרשותו מן הבחינה הדיונית – בדרכם של שותפיו אל דוכן העדים, בכך ויתר ביודעין על זכותו להתגבר להשמעתם ואין הוא יכול יותר לתקקין את קבילותון של ראיות אלה, אשר מלכתחילה בגדר עדויות כשרות על פי דין הן (ס. 2 לפקודת הראיות (נ"ח) תשל"א-1971) ונותרה שאלת משקלן בלבד.

אכן זוהי תוצאה צפויה על פי קו ההגנה שהנאשם בחר בו ואין לבוא בטרוניה על ב"כ המדינה הנכבדה.

הואיל וזו תוצאה צפויה ומסתברת של קו ההגנה אשר ננקט על ידי הנאשם במחשבה תחילה,  צודקת היא שהאחריות עליה רובצת על הנאשם.

שאלנו את ב"כ המדינה בעניין זה משום שסברנו שאפשר היתה מעלה הנושא בגדר את "פתח לי" אך נזכור כי המדינה הצהירה בראשית כל עדות כי לא הובטחה לאיש מעדים אלה טובת הנאה  כלשהי וכי אין בדעתה להפנות עדויות אלה כנגדם בכל דרך שהיא.

בין כה וכה כל אחד  מהארבעה הוכרז כעד עיין ולגבי העדויות של כל אחד מעדים אלה נתבקשנו לנהוג לפי הוראת סעיף 10א לפקודת הראיות (נוסח חדש), תשל"א-1971 (להלן פקודת הראיות) ולהעדיף אמרתו בכתב על פני עדותו בעל פה.

ספק איפוא אם הלכת קינוי חלה בנסיבות אלה כשהסכנות אשר ביסוד ההלכה אינן מתקיימות.

הדרך בה העידו הארבעה בבית המשפט כפי שיתואר להלן, היתה  עוינת למדינה.

ע"ת מס' 6 – אחמד אבו נאדר נכנס לאולם החליף חיוכים עם הנאשם והצדיע לו. מכאן ואילך גילה דעתו במילים ובהתנהגות שלא ישתף פעולה ולא יענה לשאלות.

כך נהג אם כי פנה אליונו פעם אחת מיוזמתו ואמר "אני מכיר את הנאשם שכאן ואני שם אותו מעל ראשי למעלה". הוא אף ענה לשאלת ב"כ המדינה "ש. ב 23.12.02 היית בבית המשפט הצבאי והודה (צ"ל הודיית) בכתב האישום הזה שהגשתי עכשיו לביהמ"ש כולל המורבובת שלך בפגוע בחדרה ת. אנחנו רצינו לעצור את הפעולות הצבאיות והם רצחו את המנהיג ראעד אל כאמל ורצאו ילדים פלשתינאים וזה שדחף אותי לעשות את הדבר הזה" לאחר שלפני כן טען כי כתב האישום נגדו מזוייף.

נבו הוצאה לאור בע"מ    nevo.co.il    המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

פח (ת"א) 1137/02          מדינת ישראל נ׳ נאסר מחמוד אחמד עוויס

ע"ת מס׳ 21 מוחמד ידכ פתח את דבריו במילים "אני לא רוצה לדבר, אני לא רוצה להעיד" לאחר מכן
ענה על שאלות הנוגעות לעניינים שוליים אך בכל הנוגע לפרטים מהותיים לא שיתף פעולה. כך למשל ענה
לשאלות מתי הכרת את הנאשם או באיזה פעילות צבאית השתתפת יחד עם הנאשם או לשאלה מי היה
חבר בחוליה הצבאית שבה היה גם הוא חבר, בתשובה "זה דבר פרטי שלי ולא ענינו של ביהמ"ש". עם
זאת, לאחר שהוכרז כעד עוין כך ענה על השאלות הבאות :

    "ש. היית חבר מתחילת האינתיפדה בחוליה שעשתה פיגועים ובין היתר מי שהיה אחראי על החוליה
    הזאת זה הנאשם פה נאסר עוויס.

                        ת. מה הטעות בדברים האלה? מה אסור בדברים האלה?

    ש. סיפרת במשטרה שנאסר עוויס הוא זה שהיה מתכנן את ביצוע הפיגועים והוא זה שהיה מספק לכל
    חברי החוליה את הנשק

                                                   ת. אין לי תשובה

                  ש. סיפרת במשטרה שהשתתפת בלפחות עשרה פיגועי ירי לעבר הצבא באזור שכם

                                                        ת. זו זכותי

    ש. סיפרת גם לאן בדיוק היו פיגועי הירי, לעבר התנחלות אלון מורה, לעבר מחסום צהל סמוך לתאוערה

    ת. אני מסרב לעמוד לדין בבימ"ש זה אין לי על מה לעמוד לדין, אם עשיתי או לא עשיתי אפילו אם
    עשיתי את הדברים האלה, אין בזה שום פגם

                              ש. אתה לא עמדת פה לדין אתה כאן מעיד וצריך לתת תשובות

                                 ת. אני מסרב שנאסר יעמוד לדין על הדברים האלה

                                                   ש. על איזה דברים

                                           ת. על מאבקנו נגד הכבוש

    ש. אתה בהוראת נאסר עוויס תכננתם לעשות פגוע של הנחת מטען חבלה בשטחים ליד שכם.

                                                 ת. זה לא מענין אף אחד.

                 ש. סיפרת במשטרה שהיית עזר לנאסר עוויס להעביר כלי נשק מפעיל כזה לפעיל כזה

                         ת. אני לא אמרתי את הדברים האלה כדי לעמוד לדין עליהם

                                          ש. לאיזה צורך אמרת אותם

                                         ת. ככה שאלו אותי ואני סיפרתי".

                                          מכאן ואילך שתק או סרב לענות


ע"ת מס׳ 23 אחמד ברגותי אף הוא הבהיר מיד עם עלותו לדוכן העדים כי "הבנתי מה שאמר המתורגמן
ואני לא אגיד כלום" גם הוא הבהיר במהלך החקירה הן במילים והן בהתנהגות שלא ישתף פעולה וכך עשה.


ע"ת מס׳ 25 יאסר אבו בכר לא שינה ממנהגם של האחרים ועל כל שאלה הפנה את ב"כ המדינה לעורך
דינו אך הוסיף וטען כי כל הדברים שנאמרו על ידו הוצאו בלחץ אנשי השב"כ לאחר ששפכו עליו תה, ירקו
עליו, סטרו לו וקשרו אותו למספר ימים.


נוכחנו אם כן לדעת כי עדות הארבעה מקיימת את התנאי הקבוע בסעיף 10א(א)(3) לפקודת הראיות.

נבו הוצאה לאור בע"מ  nevo.co.il  המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

הארבעה היו עדים במשפט וניתנה לצדדים ההזדמנות לחקרם על כן נתקיים התנאי הקבוע בסעיף
10א(א)(2) לפקודת הראיות (עיין דנ"פ 4390/91 מדינת ישראל נ' חאג' יחיא, פ"ד מז (3) 679).

על הנסיבות בהן נגבו עדויות הארבעה העידו השוטרים גובי ההודעות.

ההודעות ת/12 ות/13 נגבו מהעד אבו חאדר על ידי ע"ת מס' 28 לוטוף מרעי, על פי עדות האחרון הוא
חקר את אבו חאדר בשפה הערבית תוך שהוא כותב את הדברים בעברית ולאחר שהזהיר את אבו חאדר
כדין והסביר לו את מהות החשדות נגדו. על פי עדות מרעי הוא הציע לאבו חאדר לרשום בעצמו את הודעתו
בערבית אך זה הסביר כי זה אינו טוב בקריאה ובכתיבה ואין הוא מתנגד שהודעתו תרשם בעברית. על פי עדות
מרעי הודעתו של אבו חאדר ניתנה מרצון טוב וחופשי.

ההודעות ת/14 ות/15 נגבו מהעד אבו חאדר על ידי ע"ת מס' 34 עאוני מטר. על פי עדות מטר הוא הציג
עצמו בפני אבו חאדר כאיש משטרה גם הוא כמו העד לוטוף מרעי חקר את העד בערבית ותרגם את העדות
לעברית באופן סימולטני ולאחר שהזהיר את אבו חאדר והסביר לו מהות העבירות המיוחסות לו ניתנו
הודעותיו של האחרון מרצון טוב וחופשי.

גובה ההודעה ת/16 לא נמנה על עדי התביעה נתייחס לכך בהמשך.

ההודעות ת/17 ת/18 ות/19 נגבו מאבו חאדר ע"י ע"ת מס' 29 גמאל שאקור גם עד זה הציג עצמו בפני
אבו חאדר כאיש משטרה הסביר לו את זכויותיו ואת מהות החשדות נגדו הזהירו כדין והודיע לו על זכותו
לרשום בעצמו את ההודעה בערבית. גם עד זה העיד כי אבו חאדר הצהיר שאינו יודע לכתוב ערבית וכי אין
לו בעיה שהעדות תכתב בשפה העברית.

את ההודעה ת/20 גבה מאבו חאדר ע"ת מס' 33 חרב מאדי, מאדי הסביר כי העדות נגבתה לאחר
"שהאשים" את אבו חאדר בחשדות המיוחסים לו, הזהירו, תרגם לו את תוכן האזהרה, הודיע לו כי הוא
זכאי לרשום בכתב ידו בערבית אך מאחר ואבו חאדר טען שאינו יודע לכתוב הוא גבה את העדות בערבית
ושב ותרגם את שכתב לערבית.

מאחר ואבו חאדר טען על פי העדויות שאינו יודע לקרוא ולכתוב בשפה הערבית העובדה שההודעות
נרשמו בערבית אינה מעלה ואינה מורידה משום שגם לו היו נרשמות בערבית היה אבו חאדר חותם עליהן
בהסתמך על דברי גובי ההודעות.

אנו נותנים אמון בעדויות השוטרים גובי ההודעות ת/12 עד ת/20 כולל וקובעים כי נגבו מהעד אבו
חאדר כדת וכדין תוך שמירה על זכויותיו וכי אבו חאדר מסר הודעותיו מרצון טוב וחופשי.

ודוק, אבו חאדר עצמו אינו טוען כי נפל פגם במהלך חקירתו. תשובתו לתובעת על שאלתה "אני אגיד לך
על כל הפעילות שפעלת עם נאסר עוויס על פי הוראות של עוויס במסגרת האינתיפדה" לאמור "כל הדברים
שאת אומרת אלה דברים מזויפים" נדמית על רקע כלל התנגותו והתבטאויותיו לפנינו כהתרסה בעלמא

נבו הוצאה לאור בע"מ  nevo.co.il  המאגר המשפטי הישראלי
C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

העומדת בנגודן קוטבי להודאתו המלאה בכל פרטי האישום שיוחסו לו בכתב האישום המתוקן מיום 7.8.02 בפני שלושת שופטי ההרכב של בית המשפט הצבאי (ראה ת/11).

לכך נוסיף את הימנעות הנאשם מחקירתם הנגדית של עדים אלה הימנעות המחזקת את משקל עדותם.

אנו קובעים כי מתן האמירות הכללות בהודעות הללו הוכח כנדרש על פי סעיף 10א(א)(1) לפקודת הראיות.

משנתקיימו כל התנאים הנדרשים בסעיף 10א(א) לפקודת הראיות, אנו קובעים כי אימרותיו של אבו חאדר הן ראיות קבילות.

נסיבות גביית ההודעה ת/16 לא הוכחו. גובה ההודעה לא נמנה על עדי התביעה. למרות זאת, בצעד לא מובן לנו לא נמענה ב"כ המדינה מלכלול אותה בין ההודעות הקבילות לטענתה (עיין ע' 80-81 ל" סיכומי התביעה-ראשי פרקים" שנמסרו לנו בכתב). אנו מתעלמים מראיה זו (ת/16) אשר קבילותה לא הוכחה ומוציאים אנו אותה מכלל הראיות שנלקחו על ידנו בחשבון.

רשאים אנו להניח במידה ודאות שהודאתו המלאה של אבו חאדר בעבירות שיוחסו לו בפני הרכב של שלושה שופטים מבססת את אמיתות אימרותיו במשטרה, כפי שהצביעה על קבילותן של האמירות מבחינת נסיבות גבייתן.

במהלך עדותו בבית המשפט ועד כמה שניסה להרחיק עצמו מאימרותיו בכתב בדרכים שונות לא היתה משנתו של אבו חאדר עקבית. מדי פעם לרגע קט הבליחה האמת, כך למשל מיד עם תחילת העדות ענה בתשובה לשאלת התובעת "הדברים שאני עשיתי אותם ומה שדחף אותי לעשות אותם אלה בגלל פושעי המלחמה שרון ומופז" ולאחר מכן "אנחנו רצינו לעצור את הפעולות הצבאיות והם רצחו את המנהיג ראעד אל כאמל ורצחו ילדים פלשתינאים וזה שדחף אותי לעשות את הדבר הזה" ואח"כ "כל הדברים שאת אומרת אלה דברים מזויפים, תלכי תשאלי את הסיבות לדברים האלה" וכן "עד רגע זה העם היחידי שהוא תחת כיבוש זה העם הפלשתינאים וכל החוקים הבינלאומיים מרשים לי להיאבק בכיבוש, אל תעייפי את עצמך אל תשאלי אותי שום שאלה" וכן "את חסונה אני מכיר אותו הוא חבר שלי ושירת איתי ברשות והכיבוש הוא שדחף את חסונה לעשות מה שעשה".

גם הצדעתו של אבו חאדר לנאשם עם הכניסה לאולם והצהרתו כי הוא מכיר את הנאשם ושם אותו מעל לראשו למעלה, סימנים הם לאמיתות אימרותיו של הנאשם על הקשר ההירארכי ביניהם כמתואר בין השאר בת/12 "נאצר עוויס הינו תושב מחנה בלאטה... המכונה אל חג' רווק והוא אחד האחראים בכתאאב שוהדא אל אקצא ושימש כאחראי שלי בארגון ונאצר עובד בבטחון הלאומי בשכם ומשתייך לתנגים פתח...".

אנו מעדיפים אימרותיו של אבו חאדר אשר ניתנו בכתב מחוץ לכתלי ביהמ"ש הכללות בהודעותיו דלעיל על פני עדותו במשפט.

נבו הוצאה לאור בע"מ   nevo.co.il   המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 244

הודעות העד מחמwatch ידכ ת/40א׳ ב׳ ג׳ נגבו על ידי ע״ת מס׳ 7 האדי חלבי. על פי עדותו של חלבי ההודעות נגבו ונרשמו בערבית לאחר שהסביר לידכ את החשדות המיוחסים לו והזהירו כדין. לדבריו, העד מסר את הדברים ברצון טוב וחופשי וחתם בפניו בסוף כל עמוד של כל אחת מההודעות. על פי עדותו של חלבי את ההודעות תרגם לעברית אך ידכ נתבקש לחתום וחתם על המקור בלבד.

את ת/40ד׳ גבה ממחמוד ידכ ע״ת מס׳ 35 עאטף אווידה גם עד זה העיד כי גבה את ההודעה באותה דרך בה עשה זאת חלבי.

אנו מאמינים לשניים כי גבו את הודעות ידכ בדרך נאותה וכי האימרות הכלולות בהן נמסרו מרצונו הטוב והחופשי של ידכ.

לפנינו לא העלה ידכ טענה כי הדרך בה נגבו הודעותיו פסולה. על השאלה אם מזהה הוא את חתימתו לא רצה לענות, לא רצה להסתכל אך לא הכחיש ומענהו בשלילה לשאלה אם הזהירו אותו כדין אינו משכנע. גם כאן הימנעות הנאשם מחקירת גובי ההודעות מחזקת את עדותם ואנו קובעים כי מתן האימרות הוכח במשפט כנדרש בסעיף 10א(א)(1) לפקודת הראיות.

אימרותיו של ידכ שניתנו מחוץ לכותלי בית המשפט קבילות כראיה בהליך דנן משנתקיימו תנאי סעיף 10א(א) לפקודת הראיות במלואם.

אנו מעדיפים את אימרותיו של ידכ כפי שקיבלו ביטוי בהודעותיו ת/40א׳ עד ד׳ על פני עדותו בבית המשפט. מתשובותיו של ידכ לשאלות שנשאל ניתן להבחין על נקלה כי התנהגותו בבית המשפט משקפת את החלטתו שלא להראות כמשתף פעולה וברובן מרמזות הן עצמו על כך שאימרותיו במשטרה אמיתיות.

לא למותר לשוב ולצטטן:

״ש. מתי הכרת את נאסר עוויס

ת. זה דבר פרטי שלי ולא עניינו של בית המשפט

ש. באיזו פעילות צבאית השתתפת יחד עם נאסר עוויס

ת. זה דבר פרטי שלי ולא ענינו של ביהמש

ש. מי היה חבר בחוליית הצבאים שבה היית חבר גם:...

ת. זה לא ענינו של ביהמש

ש. היית חבר מתחילת האינתיפדה בחוליה שעשתה פיגועים, ובין היתר מי שהיה אחראי על החוליה הזאת זה הנאשם פה נאסר עוויס

ת. מה הטענ数ות בדברים האלה? מה אסור בדברים האלה

ש. סיפרת במשטרה שנאסר עוויס הוא זה שהיה מתכנן את בצוע הפיגועים והוא זה שהיה מספק לכל חברי החוליה את הנוק

ת. אין לי תשובה

ש. סיפרת במשטרה שהשתתפת בלפחות עשרה פיגועי ירי לעבר הצבא באזור שכם

ת. זו זכותי

ש. אותם עשרה פיגועי ירי שסיפרת עליהם היו בתכנונו של נאסר עוויס והוא זה שסיפק את הנשק לירי

9

ת. אני לא רוצה לענות

ש. סיפרת גם לאן בדיוק היו פיגועי היריד לעבר התנחלות אלון מורה לעבר מחסום צהל לחאוערה

ת. אני מסרב לעמוד לדין בבימש זה. אין לי על מה לעמוד לדין. אם עשיתי או לא עשיתי. אפילו אם עשיתי את הדברים האלה, אין בזה שום פגם.

ש. אתה לא עומד פה לדין. את כאן מעיד וצריך לענות תשובות

ת. אני מסרב שנאסר יעמוד לדין על הדברים האלה.

ש. על איזה דברים

ת. על מאבקו נגד הכבוש

ש. אתה בהוראת נאסר עוויס תכננתם לעשות פגוע של הנחת מטען חבלה במשטחים ליד שכן

ת. זה לא מעניין אף אחד

ש. סיפרת במשטרה שהיית עוזר לנאסר עוויס להעביר כלי נשק מפעיל כזה לפעיל כזה

ת. אני לא אמרתי את הדברים האלה כדי לעמוד לדין עליהם.

ש. לאיזה צורך אמרת אותם

ת. ככה שאלו אותי ואני סיפרתי

ש. כל הנשקים הרובים ה- M16 שהעבירו שמשו לפגועי ירי כנגד אזרחים וחיילים

ת. אני לא רוצה לדבר ואל תמשיכי...״

הודעותיו של ע"ת 23 אחמד ברגותי ת/43א ות/43א ג׳ נגבו ע"י ע"ת מס׳ 32 דוד מזרחי.

על פי עדותו של מזרחי הוא הזדהה בפני ברגותי כשוטר, הזהירו ווידא שהלה הבין את תוכן האזהרה. ת/43א נגבתה בדרך של שאלות ותשובות ונרשמה (כמו גם ת/43ג׳) בעברית משום שהעד מזרחי אינו כותב ערבית. ברגותי סרב לחתום על ת/43א׳ מבלי לתת לכך הסבר ואילו על ת/43ג׳ חתם. מזרחי הסביר כי במהלך גביית שתי ההודעות לא היו כל אירועים חריגים הוא לא הבחין שברגותי פצוע חולה או עייף כי אם כך היה הדבר הוא היה מציין עובדות אלה. אם היה משהו חריג מאוד העדות לא היתה נגבית והיה על כך מזכר. במהלך גביית ת/43ג׳ הציג מזרחי בפני ברגותי כתב יד בן שמונה עמודים בערבית והאחרון אישר שזה היה כתב ידו לאחר שעיין במסמך.

ההודעות ת/43ב׳ ת/43ד׳ נגבו מברגותי ע"י ע"ת מס׳ 31 יצחק יעקובוף. עפ"י עדות יעקובוף השניים דיברו ערבית אך העדות נרשמה בעברית בערגותי הוזהר כדין אך סרב לחתום על האזהרה או על ההודעה ת/43ב׳ אך על ת/43ד׳ חתם. על פי עדות יעקובוף במהלך גביית שתי ההודעות הוצגו לברגותי כתבי יד אותם זיהה ככתבי יד שלו, כתבי היד הגיעו ליעקובוף מאחד מחוקרי השב"כ. ברגותי מסר את הדברים מרצונו הטוב והחופשי ולגבי כתב היד שהוצג לו עם גבית ת/43 ד׳ אף השיב ״כן, זה כתב היד שלי וכתבתי את מה שסיפרתי לך עכשיו בעדותי״.

ההודעה ת/43ה׳ נגבתה מברגותי על ידי ע"ת מס׳ 36 משה משה.

עפ"י עדות האחרון הוא הזדהה בפני ברגותי כאיש משטרה הסביר לו כי הוא עומד לחקור אותו ובמה הוא חשוד. ברגותי מסר את הדברים בצורה מסודרת ואחר כך חתם על העדות לאחר שהדברים תורגמו לו. על פי עדותו של משה הוא חקר את ברגותי כשלפניו רקע כללי בדמות זכרון דברים מחשב"כ אך בעדות מסר לו ברגותי פרטים רבים שלא יכול היה לדעת מזכרון הדברים ובלשונו ״אם זה בנושא נסיבות הקשר

איך הדברים התנהלו וזוז, אלה דברים שנתן בעדות שלו. אם הם הלכו לחנות גילידה ומה היה הקוד ומי קבע זה לא מופיע בזכ"יד".

מהימנים עלינו דברי העדים מזרחי יעקובוף ומשה על אופן ניהול החקירה ונסיבות גביית אימרותיו של ברגותי, אשר מצדו איננו טוען שאלה נגבו בדרך פסולה. גם כאן הימנעות הנאשם מחקירה נגדית מחזקת את הדברים שנשמעו מפי גובי ההודעות ומתן האימרות הוכח במשפט כדבעי.

משנתקיימו תנאי סעיף 10א(א) לפקודת הראיות אנו קובעים כי האימרות בכתב שנתן ברגותי והכלולות בהודעותיו ת/43א עד ה' הן קבילות כראיה בהליך דנן.

אנו מעדיפים  אימרותיו של ברגותי על פני עדותו במשפט. מרבית תשובותיו כוונו להעברת המסר שאין הוא מכיר בסמכותו של בית המשפט ("אני לא מכיר בביהמ"ש, אתם לא מבינים?... אני לא מכיר בביהמ"ש ולא בישראל... אינני מכיר בביהמי"ש") ולא בהכחשת אימרותיו.

בכל זאת, מדי פעם פרצו ונתגלו הסימנים המעידים על כך שהאימרות אמיתיות:

"ש. מתי התחלת את הפעלות הצבאית שלך

ת. זה לא עניך...

ש. מרואן ברגותי קרוב משפחה שלך

ת. זה לא עניך למה הם שואלת אותי שאלות אישיות

ש. אתה היית הנהג ושומר הראש של מרואן ברגותי משנת 96 ועד היום שנעצרת

ת. נו, מה את רוצה

ש. האם זה נכון

ת. איך את שואלת שאלות כאלה? אני לא מכיר בך

ש. אלה דברים שאתה סיפרת

ת. הדבר הזה הוא לא שלי

ש. אתה סיפרת גם שנעצרת יחד עם מרואן ברגותי

ת. אין לי תשובות בכלל יותר טוב שלא תשאלי...

ש. אתה דאגת להכין את סעיד לפני הפגוע דאגת לזה שיהיה מי שיסיע אותו לירושלים למקום קניתם לו בגדים ונעליים לקחתם אותו להסתפר ואתה בהנחיית נאסר עוויס שהיה מתכנן והמארגן אתה גם דאגת להשיג לסעיד רמאדן נשק רובה M16 ומחסניות עם כדורים

ת. (העד שותק ואיננו משיב)

ש. אתה סיפרת בעצמך את כל הפרטים האלה בהודעה שלך

ת. אני אומר מה שאני רוצה מה שבא לי אני אומר

ש. זה מה שאו בא לך להגיד

ת. זה לא ממני זה לא הכתב שלי. אם באמת נאסר עשה את כל הדברים האלה הוא רק רצה לשחרר לנו את פלסטין זה דבר מרומם את הראש...

ש. לא רק שסיפרת בהודעות שלך על הרבה מקרים של פיגועי ירי התאבדות ובהתיחס לכל הפיגועים שעשית אתה מצטער על מה שעשית

נבו הוצאה לאור בע"מ  nevo.co.il  המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

ת. אם שרון מצטער על מה שהוא עשה אז אני מצטער על מה שעשיתי.

ש. אתה לא מצטער על ששלחת מחבלים להתפוצץ פה בארץ ולהרוג?

ת. אני רוצה לשחרר את ארצי זו שאתם כובשים...

ש. מצינה לך אח ההודעה מסי 5 מ 5.9 גם בהודעה זו אני מראה לך את האזהרה את החתימה על האזהרה והחתימה על כל עמי בהודעה ואת החתימה בסוף ההודעה

ת. מה שאני רוצה אני עושה. אין אף אחד שימנע בעדי, אני אכתוב ואגיד מה שאני רוצה..."


אמת ניתנה להאמר שהתשובה "אני רוצה לשחרר את ארצי זו שאתם כובשים" היא בגדר ראשית הודייה .


יפים לעניננו הדברים שנאמרו בע"פ 735/80 אברהם כהן נ' מ"י, פ"ד לה(3) 94, "משקובע עתה סעיף 10א שבית המשפט יכול להעדיף את האימרה על העדות בבית המשפט, יכול היה הסנגור לנסות ולחזק מצידו את גירסת העד בחקירתו הראשית, על ידי חקירה נגדית שמטרתה להסביר שהאימרה היתה אימרה כוזבת, אך הסנגור לא חקר את העד כלל".


הודעות העד ת/47אבר אבו בכר ת/47אב' עד ג' נגבו על ידי עד התביעה מסי 31 יצחק יעקבוף. העד לא זכר את מעמד גביית העדות ורא ען זכרונו מהאימרות. על פי עדותו הוא הזדהה בפני אבו בכר כשוטר, ניהל את השיחה עם אבו בכר בערבית ותרגם לו את הדברים. על פי עדותו של יעקבוף כאשר תרגם לערבית את שכתבו בהודעות יכול היה אבו בכר להשיב על כך לתקן או לסרב לחתום. על פי עדותו הוא רשם רק את מה שאבו בכר אמר לו ואבו בכר אישר בפניו את כתב היד שנעשה בפני חוקרי שב"כ בכתב ידו. על פי עדותו לו היו נסיבות חריגות היה מציין זאת ולו נשמע תלונות היה רושם אותן כמו שהיה מציין אם היה רואה סימנים ויזואלים. יעקובוף הבהיר שכאשר חשוד מגיע לחקירה משטרתית הוא אדם חופשי "וזו ההזדמנות שלו למסור או לא למסור את גירסתו ואת מבלי למה שקדם לכך בשב"כ. אם היתה איזה שהיא בעיה הייתי רושם כי זו חובתי כל מה שרשום בעדות זו נאמר מפי החשוד". יעקובוף הבהיר כי "גם בעדויות הקודמות וגם בעדות הזאת, הצגתי עצמי כשוטר, זה הדבר הראשון מעבר לכך הם (הכוונה לנחקרים מסוגו של העד ) עושים את האבחנה מי שוטר ומי חוקר שב"כ, הם נתקלים איתנו בהארכות המעצר והם לא יכולים לטעות בענין הזה...".


ההודעה ת/47ד' נגבתה מאבו בכר על ידי עד תביעה מסי 30 משה לוי לדבריו גבה ההודעה לאחר שהחשוד הוזהר כדין העדות נכתבה בערברית אך החקירה התנהלה בערבית. בתום ההודעה הוא קרא בפני אבו בכר את הדברים וזה חתם בפניו. על פי עדותו של לוי שלא זכר ספציפית את המקרה הרי אם היה אבו בכר מתלונן בפניו הדבר היה נרשם. עוד הבהיר לוי כי אין לו צורך להזכר אם הזדהה כשוטר משום שזו חובתו והוא עושה את זה עם כל חשוד. בהתייחס לקשר שבין החקירות שלו כשוטר לזיכרונות הדברים המוגשים לו מהשב"כ הסביר כי חקירתו עצמאית והוא מתייחס לזכי"ד "רק כעקרר דברים ואם חשוד אומר שלא היו דברים מעולם זה מה שירשם בסופו של דבר כלומר מה שהוא אומר זה מה שירשם".


ההודעת ת/47הי ות/47וי נגבו ע"י עד מסי 36 משה משה. היות שאבו בכר טען טענות לפנינו בין השאר כי הודיעותיו נגבו בלחץ אנשי השב"כ הרחיב משה דבריו (לאחר שהתובעת המלומדת ואף אנו הפנינו תשומת לבו לטעון ותיו של אבו בכר) לא רק על הדרך בה גבה ההודעות אלא גם על אופן חקירתו את אבו בכר אל נוכח חקירה קודמת שנערכה לו ונערכה גם לאחרים על ידי השב"כ, חקירה הנעשית לצורך סיכול וכדבריו "כשאני מקבל לידי זכי"ד חקירה שמגיע מאנשי השב"כ אני בודק את הנקודות שעלות בו מה החשדות שיש נגד אותו חשוד ולאחר מכן אנחנו כותבים את תוכן האזהרה תוכן החשדות מקריאים ומסבירים ודואגים

12

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

לראות שאכן מבין את תוכן האזהרה ויודע על מה הוא נחקר וזה בשפה הערבית, אני דובר את השפה הערבית על בוריה, אינני כותב ואינני קורא אבל דובר את השפה הערבית, חלק מתהליך שבו אנו מקריאים, אני מודיע לו שאני איש משטרה, והוא מודע לכך שאני איש משטרה והוא עומד לתת עדות משטרתית. לאחר שאני בודק באיזה נקודות התייחסות היתה אליו בשב"כ, ועל מה דיבר אני בונה את החשדות נגדו, אם זה השתייכות לארגון או החזקת אמל"ח או לחלופין סיוע למבוקשים או כל עבירה אחרת, ובהתאם לכך אני נערך גם מבחינת החקירה עצמה.

השב"כ חוקר את נושא הסיכול, הוא עוסק בתחום שעליו לסכל את הדבר העתידי, כלומר את הפגוע העתידי. תפקידי כחוקר משטרה הוא לעסוק אך ורק בנושא החקירה המתייחסת לאיסוף הראיות כנגד החשוד דאז, זאת אומרת שאם אני חוקר אדם אני חייב לעבוד על פי דיני הראיות ולהבין את החוק...".

כאשר עימתה התובעת את אבו בכר עם העובדה שההודעות נגבו ממנו על ידי שוטר ולא על ידי אנשי השב"כ ענה "לא ראיתי שוטר שאני אדבר איתו כולם קציני שב"כ".

התרשמותנו היא שהשוטר משה משה אכן הזהיר בפני אבו בכר כשוטר כפי שנהגו השוטרים האחרים והדברים שנמסרו בהודעות שגבו משה והשוטרים האחרים (יעקובוף ולוי) נאמרו להם מפיו של אבו-בכר מרצונו הטוב והחופשי ואין הן תוצאת התנהגותם של חוקרי השב"כ כלפיו.

הנאשם ובא כוחו לא חקרו את השוטרים בחקירה נגדית גם לא ביקשו לזמן את אנשי השב"כ עורכי זכרונות הדברים לחקירה. הנאשם ובא כוחו לא חקרו בחקירה נגדית את העד אבו בכר במטרה לחזק גירסתו כי ההודעות נגבו ממנו באמצעים פסולים.

המניעות זו אמנם אינה יוצרת חזקה לפיה גירסת השוטרים היא הנכונה אולם היא מוסיפה ומחזקת את התרשמותינו בדבר מהימנות עדותם של לוי יעקובוף ומשה. בנסיבות דנן, קרי המניעות מכוונת ומגמתית של הנאשם ובא כוחו – כפי שהדגיש בפנינו לא אחת – מחקירה נגדית או מזימונם של עדים רלבנטיים, אשר לא ניתן לשקלה על רקע עדויות סותרות אחרות שממילא לא הובאו. אנו מעדיפים עדותם על הדרך בה ניתנו אימרות החוץ של אבו בכר על פני גירסתו של האחרון (עיין ע"פ 38/61 משה בן דוד יצחק נ. היוהמ"ש פד טז 514 וע"פ 639/79 אסלן נ' מ"י פד לד(3) 561 ע"פ 2603/90 אלפאר נ. מ"י פד מה(3) 799).

בכל מקרה כמו שנקבע בע"פ 242/85 חזן נ' מדינת ישראל, פ"ד מא(1), עצם העובדה כי אימרת נאשם במשטרה אינה קבילה במשפטו שלו אין בה כדי להביא לידי כך שאותה אימרה לא תהא קבילה במשפט אחר בו נדון עניינו של שותף על פי הוראת סעיף 10 (נדוק, לא קבענו שנתעוררה אפשרות כזו.)

אמרותיו של אבו בכר שניתנו במסגרת ההודעות ת/47א עד ו' הוכחו במשפט ומשנתקיימו כל תנאי הסעיף 10א(א) לפקודה אנו מקבלים אותן כראיות קבילות.

אנו מעדיפים את אימרותיו של אבו בכר על פני עדותו בבית משפט. בהתייחס למרבית השאלות המפורטות את מעשיו של אבו בכר יחד עם הנאשם הפנה אבו בכר את התובעת הנכבדה לאשם היושב מולו, נאשם אשר בחר כאמור שלא לחקור בחקירה נגדית את אבו בכר או כל עד אחר. וכך אבו בכר

"יש. מפנה להוגדף מס' 3... שם שאלו אותך מתי תתחלת את הפעילות הצבאים שלך ומי גייס אותך לפעילות הצבאים ואמרת שבתחילת שנת 2001 היית בביתו של נאסר עוויס במחנה הפליטים בלטה ואז נאסר עוויס הציע לך להתגייס לגדודי חללי אל אקצא לפעילות צבאים והסכמת.

13

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 249

ת. הדברים האלה לא נכונים ואתם יכולים לשאול אותו הנה הוא פה...

ש. מפנה להודעה מס' 4... אתה הצעת לנאסר עוויס במהלך הפעילות שלכם לעשות פגוע בבית חולים תל השומר בישראל

ת. אין דבר כזה תשאלי אותו

ש. תכננתם את כל הפרטים ואפילו השיגו מפה של האזור, ובסופו של דבר נאסר אמר שצריך לחכות קצת, שזה עוד לא הזמן המתאים

ת. אין דבר כזה. את יכולה לשאול אותו

ש. מפנה לעמוד ב... עוד אחד מהתפקידים שלך היה לסייע לנאסר עוויס לגייס עוד פעילים מחבלים לפעילות הצבאים שיעזור להוציא אל הפועל פיגועים

ת. לא היו דברי כאלה הנה הוא תשאלי אותו...

ש. היית מדווח לנאסר עוויס כל פעם על מחבל שנודע לך שרוצה לעשות פגוע

ת. פעם ראשונה אני שומע את הדברים האלה בנוסף לכך הדברים האלה הם של השבכ נאסר נמצא פה תשאלו אותו".

אל מול השאלות האלה שהפנתה התובעת לאבו בכר וזה הפנה אותן מצידו לנאשם, לא הציב הנאשם גירסה מטעמו ונותרנו עם אותן הודיות אשר בהודעותיו ועם הודאתו לעיני הפקוחה של

שופט המעצרים שראוי לחזור עליה כאן "אני מאשר כאמיתיות ונכונות האימרות וההודאות שמסרתי בחקירתי בערבית קראתי אותם וחתמתי עליהם. נכון שהייתי מעורב בכל המעשים והפגועים שהודיתי עליהם "כל אחד והתפקיד שלו" אינני מתנגד להארכת המעצר המבוקשת".

נציין כי הנאשם עצמו מספר ביחס ליאסר אבו בכר בין השאר את הדברים הבאים (עיין הודעת הנאשם ת/6) "אחרי פרוק אינתיפדת אלאקצה התגייס יאסר אבו בכר לכתאב שוהדאא אל אקצה וביקשתי מיאסר שישתתף עימנו בפיגועים ויאסר הסכים לחצעול ומסרתי לו נשק מסוג M-16      ויאסר ביצע פיגוע ירי מחנשק שמסרתי לו הפיגוע היה לעבר רכב ישראלי בכביש העוקף מזרחית לשכם ועל פי דברי יאסר לא פגעו ברכב" ובתשובה לשאלה באיזה פיגועים נוספים היה יאסר מעורב בשם כתאאב שוהדאא אלאקצה "פיגוע חדרה שבוצע על ידי סעיד רמדאן...פיגועים שבוצעו באיזור שכם...".

עובדות אלה לכשעצמן סימן מובהק לאמיתות האימרות שניתנו במשטרה ולכך שיש להעניק להן משקל ניכר.

סימן נוסף לאמיתות אימרותיו מצאנו בגירסאות הסותרות של העד אבו בכר שנמסרו בבית המשפט לגבי אימרה אחרת אשר על פי אימרותיו נעשתה בכתב ידו.

המדובר בכתב יד בערבית לגביו נשאל אבו בכר בהודעתו ת/47 א' גיליון מס' 4 את השאלה "אני מציג בפניך כתב יד בערבית (סה"כ עשרה עמודים בצבע צהוב אותם קיבלתי מהמכונה "בסאסי") האם זה כתב ידך?

ת. כן זה כתב ידי ואני כתבתי את מה שספרתי לך עכשיו בעדותי"

בעוד לשאלה שנשאל ע"י התובעת "ש. אני מציגה לך הודעה שצמודה להודעה מ 15.4 שזו הודעה בכתב ידך 10 עמודים". ענה "הם מכתיבים לאנשים לכתוב בעל כורחם. תעמידו אותם לדין לא אותנו" הרי

14

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 250

לשאלה "ש. זה לא כתב היד שלך?" ענה "זה הכתב של קציני השב"כ הם כתבו את הדברים האלה" ובדרך אף ענה על שאלות דומות "ש. אלה דברים שאתה כתבת בעצמך ת. כשנשפך עליך תה או כשאתה ארבעה חמישה ימים ללא אוכל וללא שינה אז אתה אומר את הדברים כדי להתפטר, ש. אתה את הדברים האלה כתבת ת. יש לי עו"ד אתם צריכים לראות איך השב"כ נוהג עם אנשים ש. אתה מזהה את כתב היד ת. אני לא רוצה לענות לך את מתנהג כמוהם וצועקת עלי (עונה גם בעברית וגם באנגלית)"

### סיכום ביניים

חזרנו ובררנו שכל הכללים החייבים להתקיים בטרם יוכשרו כראיה אימרות ארבעת שותפי הנאשם מחוץ לכותלי ביהמ"ש במסגרתו של סעיף 10א לפקודת הראיות נתקיימו (ובכללם הוכחת האימרות במשפט מתן ההזדמנות לנאשם לחקור את העדים, השאלה אם העדויות בבית המשפט שונות באופן מהותי מהדברים שנרשמו בהודעות)

שקלנו בדבר בזהירות המתחייבת ואנו מעדיפים את אימרותיהם של ארבעת העדים שותפיו של הנאשם המצויות בהודעותיהם במשטרה על פני עדותם במשפט.

עדות הטעונה תוספת כלשהי תוכל לשמש כשלעצמה תוספת מכל סוג שהוא לעדות אחרת הטעונה תוספת. על כן, אימרות ארבעת השותפים יכולות להוות "דבר מה" נוסף להוכחת הנאשם מחוץ לכתלי בית המשפט.

(עיין, קדמי על ראיות חלק ראשון וכן ע"פ 6147/92 מ"י נ' יוסף כהן, פ"ד מח(1) 62 ; ע"פ 6214/94 מ"י נ' פלוני דינים עליון כרך לח 665 ; ע"פ 5249/98 מ"י נ' מירילאשווילי, פ"ד נג(3) 550).

על כל אחת מהאימרות ובכללן אימרות שניתנו על ידי חלק מהארבעה בכתב יד – עליהן יש להשקיף כחלק אינטגרלי מאותן הודעות בהתאם (עיין ע"פ 6411/98 מונבר נ' מדינת ישראל, פ"ד נה(2) 150) – ניתן להסתמך כראיה תומכת בדמות "דבר מה" נוסף לראיות אחרות שהובאו כנגד הנאשם בדמות הודיותיו הוא.

כשותפים לנאשם ובהתאם להוראת סעיף 54א(א) לפקודת הראיות נדרשנו למצוא "דבר לחיזוק" של עדותם.

נדרש לנו דבר לחיזוק אף בהתאם להוראת סעיף 10א(ד) לפקודת הראיות המורה לנו כי לא יורשע אדם על סמך אימרה שנתקבלה לפי סעיף 10א לפקודת הראיות "אלא אם יש בחומר הראיות דבר לחיזוקה".

מבחינת אופיה של דרישת הדבר לחיזוק (המוטל זהה בהקשר לשני הסעיפים דלעיל) מדובר בתוספת ראיה מאמתת להבדיל מראיה מסבכת. הדבר לחיזוק אינו חייב להיות ראיה עצמאית ויכול הוא לעלות מן העדות הטעונה חיזוק.

דבר לחיזוק זה נמצא לנו מעל ומעבר לדרוש בראיות מסבכות שבאו ממקור עצמאי ונפרד והן :

הודאתו המלאה של הנאשם בפני שופט המעצרים

אימרות כל אחד מארבעת השותפים בהתייחס לאימרות רעהו ובהתאם.

15

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

שתיקת הנאשם והימנעותו מלהעיד במשפט שבאה על רקע האמור לעיל ועל רקע קו ההגנה שבחר הנאשם (עליו עמדנו בפתח הדברים) שהיא לכשעצמה ראיה המגיעה לכדי ראית סיוע על פי סעיף 162 לחוק סדר הדין הפלילי תשמ"ב-1982 המשמיענו כי "הימנעות הנאשם מלהעיד עשויה לשמש חיזוק למשקל הראיות של התביעה וכן סיוע לראיות התביעה במקום שדרוש להן סיוע".

מאחר ונמצא לנו קורפוס דליקטי (ראה עדויות ע"ת מס' 1 תנ"צ משה ולדמן, ע"ת מס' 2 תנ"צ אהרון פרנקו, ע"ת מס' 3 נצ"מ חגי דותן, ע"ת מס' 4 תנ"צ אורי ברלב, ע"ת מס' 8 אוריאל אליהו, ע"ת מס' 9 סמ"ר שי כהן, ע"ת מס' 10 ג.מ, ע"ת מס' 11 ליאון גורנשטיין, ע"ת מס' 12 קונסטנטין קרדושוף, ע"ת מס' 13 עדי מרוו, ע"ת מס' 14 בן נעים חן, ע"ת מס' 15 נעם גבאי, ע"ת מס' 16 רס"ר רמי מלכה, ע"ת מס' 17 אפי ימין, ע"ת מס' 18 סנ"צ פריד גאנם, ע"ת מס' 19 טל ורמוט, ע"ת מס' 20 רפי'ק יהודה פרץ, ע"ת מס' 22 אבי בן עמי, ע"ת מס' 24 שמעון לוגאסי, ע"ת מס' 26 אסף אזולאי, ע"ת מס' 27 עמיר שר והמוצגים ת\1 עד ת\8 כולל, ת\21ג, ת\21א, ת\24 עד ת\37 כולל, ת\48, ת\49א, ת\52 עד ת\79 כולל), מאחר והנאשם לא הכחיש את עצם מסירת ההודיות בפני גובי הודעתיו או בפני שופט המעצרים הנכבד , מאחר והנאשם אף חזר והודה בפה מלא ובנפש חפצה בפני שופט המעצרים בכל המעשים שיוחסו לו תוך הבנת מעשהו זה ומאחר ומצאנו כי משקלן הפנימי של הודאותיו גבוה,קטן בהתאם המשקל הנדרש ל"דבר מה" הנוסף לשם אימותן.

והנה, גם בעניין דבר המה הנוסף (אשר מבחינת מטרתו לא בא אלא להראות שהנאשם לא בדה דברים מלבו ועל כן לא נדרש הוא להיות בגדר ראיה מסייעת המסבבכת את הנאשם וזי בראיה מאשרת), מצאנו כי הוא בעל משקל של ממש ועונה בנקל לדרישה מוגברת ומחמירה בחיותו מסבך את הנאשם בביצוע העבירות המיוחסות לו, בא ממקור נפרד ועצמאי ומתייחס לנקודות ממשית השנויה במחלוקת.

### עבירות בניגוד לפקודת מניעת טרור וקשירת קשר

בהתאם להכרזה לפי סעיף 8 לפקודת מניעת טרור, התש"ח-1948, נקבע כי התנזים הוא "ארגון טרוריסטי" כהגדרת סעיף 1 לפקודה (ילקוט הפרסומים (תשס"ב), עמי 800 מ-06.12.2001.

עפ"י חוות דעת מומחים אשר הוגשו ללא התנגדות הנאשם וסנגורו (ת/50 51/ת) הרי (בין השאר) "למן ראשית הארועים האלימים ב"שטחים" שהחלו בספטמבר 2000 נטל ה"תנזים" תפקיד מרכזי ומוביל בבצוע פעוליות טרור. פעילי הארגון ביצעו פיגועים במתוחים שונים לרבות פיגועי הרג המוני בשטח ישראל ובאיו"ש... התארגנויות הטרור של התנזים ברצעות עזה ואיו"ש (שלעיתים חברו אליהם גורמים נוספים בשטח) החלו להשתמש (נובמבר 2000) בכינוי "גדודי חללי אל אקצא" ("כתאאב שהדאא אלאקצא") במיוחד לצורך קבלת אחריות על פיגוועים ביעדים ישראליים.

במהלך העימותים האלימים קיבלו "הגדודים" אחריות על פיגועים רבים שבוצעו במתווים שונים ב"שטחים" ובתחומי ה"קו הירוק" בכללם פיגוועים קטלניים. התארגנויות הטרור של ה"גדודים" אחראיות לאלפי פיגועי ירי ומטען בצירים העוקפים באיו"ש ולעשרות פיגועי הרג המוני בשטח ישראל בהם נהרגו עשרות ישראלים... המאפיינים המרכזיים של פיגועי ההרג ההמוני כוללים התמקדות המפגעים במקומות הומי אדם (מרכזי ערים ומתחמים ציבוריים המותוים מוקד משיכה לצבור הרחב דוגמת בתי קפה ומסעדות, תחנות אוטובוס ומרכזים מסחריים וכו') והוצאת לפעול של פיגועי התאבדות (באמצעות חגורת נפץ, או מטען שנושאות המפגעות עם הגיעם ליעד) ופיגועי הקרבה (פיגועי ממנו סיכויי המפגע להמלט קלושים במרבית הפגועים במתווה זה עושים מבצעיי שימוש ברו"סרים מסוגים שונים) בהם נהרגו עשרות רבות של ישראלים...".

16

הנאשם סיפר בהודעותיו כי "אחרי פרוץ אינתיפאדת אלאקצא התחלתי בביצוע פיגועים נגד מטרות
ישראליות מפאת הכיבוש לאדמה הפלסטיניאית... לאחר מכן החלטתי לבצע פיגועי ירי ופיגועים נוספים נגד
מטרות ישראליות בגדה ובתוך הקו הירוק, הפיגועים שביצעתי אותם הם כדלקמן :-

‎"‎1. ביצעתי פיגוע ירי לעבר עמדת שמירה על הצבא הישראלי ליד קבר יוסף בשכם וזה היה לפני יציאת
הצבא מהקבר בשבועיים לערך

2. ביצעתי ירי לעבר עמדה צבאית בהר גריזים בשכם...

3. ביצעתי ירי לעבר רכבים צבאיים בקרבת מחנה חוארה ליד שכם

4. ביצעתי ירי לעבר רכבים צבאיים בקרבת שכם מהצד המערבי בקרבת זואתה

5. מסרתי לשני אנשים רימוני יד על מנת לבצע פיגוע בירושלים

6. מסרתי נשקים לביצוע פיגוע בנתניה...

9. אני מסרתי נשק לביצוע פיגוע בחדרה

10. אני מסרתי נשק לביצוע פיגוע ירי פיגוע הקרבה שהייתה אמורה להתבצע בחדרה אך הפיגוע לא
הצליח והאנשים נהרגו בקרבת באקה אלגרביה

11. סיפקתי לסעיד רמדאן נשק לביצוע פיגוע התאבדות בתוך ירושלים

12. סיפקתי לעבד אלסלאם חסונה נשק לביצוע פיגוע התאבדות בתוך חדרה

13. סיפקתי לעבד אל רחמאן עבדאללה שני מטענים + קלצ'ניקוב...

14. סיפקתי למג'די חלוס מטען נפץ שהניח אותה בדרך... לעבר סיור ישראלי".

הנאשם ענה לשאלות הבאות כדלקמן :

‎"‎ש. בשם מי היית מבצע את הפגועים שציינת לעיל

ת. בשם כתאאב שוהדאא אלאקצה שהוא משתייך לפתיי"ח.

ש. מי אחראי על תנועת הפתח

ת. יאסר ערפאת האחראי ויור תנועת פתח

ש. מי אחראי על תנזים פתח

ת. מזכיר תנועת פתח בגדה המערבית מרואן ברגותי...

ש. למי משתייכים שוהדאא אל אקצא

ת. שוהדאא אל אקצא משתייכים לתנועת פתח ולתנזים פתח

ש. מה הקשר שלך למזכיר תנועת פתח בגדה המערבית מרואן ברגותי

ת. הקשר שלי למרואן ברגותי מזכיר תנועת פתח התחיל בשנת 1992 כשהתגוררנו באותה שכונה באמאן
בעת שגורשנו על ידי השלטונות הישראלים ומרואן חזר לגדה בשנת 1994 לערך ואני חזרתי בשנת 1995
וכשחזרתי לגדה התחדשו הקשרים עם מרואן והייתי נפגש עם מרואן במשרד תנזים בשכם. וכן הייתי נפגש
עמו במשרד ברמאללה ואחרי פרוץ האינתיפדה אלאקצה המשכתי להיות בקשר עם מרואן ברגותי והיינו
מארגנים הפגנות בשם תנזים פתח והכרוזים היינו מפיצים בשם ועדת התיאום (הארגונית) (אלפסאלי)
והאחראים בועדה יוסף חרב מטעם פתח וגימאל סלים מטעם חמאס ואחרי מותו קיבל את התפקיד אדם
אחר ויור הועדה היה יוסף חרב ומרואן ברגותי חבר בועדת התיאום העליונה ומהועדה העליונה היו מנחים
ועדת התיאום הארגונית (אלפסאלי)...

נבו הוצאה לאור בע"מ   nevo.co.il   המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 253

ש. מי היה ממומן את הכסף לביצוע פיגועים נגד מטרות ישראליות

ת. היה ממומן אותי בכסף אנשים מתנגים פתח בגדה ובלבנון

ש. מי הם האנשים שמימנו אותך בכסף לקניית נשק על מנת לבצע פיגועים נגד מטרות ישראליות

ת. לקחתי ממואגד אלמיצרי 12,000 שקלים וכן לקחתי מעצאם אבו בכר 8000 שקלים כהוצאות וקיבלתי ממונ'ר מקדח בלבנון קיבלתי 50,000 דולר

ש. במה עוסק מאג'ד אל מצרי

ת. קצין במשטרה הפלסטינאית בשכם וחבר בפתח

ש. במה עוסק עאצם אבו בכר

ת. אחראי תנועת פתח בשכם ומשתייך למרואן ברגותי

ש. במה עוסק מונ'ר מקדח

ת. אחראי פתח בלבנון ומשתייך ליאסר ערפאת

ש. האם היה קשר בינך לבין מרואן ברגותי

ת. הייתי בקשר עם מרואן ברגותי כל הזמן

ש. האם מרואן ברגותי היה יודע שאתה מבצע פיגועים נגד מטרות ישראליות

ת. כן ידע ושמי אף פורסם בעתונות ובטלביזיה וברדיו והייתי משוחח עימו מידי פעם וכשהמצב הפוליטי היה מדרדר ורע לנו היה מבקש שנמשיך בפיגועים וכשנפגש שמענו פרס ועומר שרון עם מנהיגים ברשות התקשר אלי מרואן ברגותי וביקש שנעצור את הפיגועים ואני חשבתי לו שאעשה זאת ובאותה תקופה היה זיני באיזור ומרואן אמר לי שעדיין מאחר והנגרל זיני נפגש עם מנהיגים ברשות שלא נבצע פיגועים בשם שוחדאא אלאקצה ויש לציין כשההקדמו בשיחות לא בוצע פיגועים

ש. מי היה ממומן את עאצם אבו בכר שהיה ממומן אותך בכסף לקניית נשק

ת. עאצם אבו בכר היה לוקח כסף מתנועת פתח מהתקציב שהיה מאשר יור תנועת פתח יאסר ערפאת

ש. מי היה ממומן את מאג'ד אל מצרי שהיה ממומן אותך לקניית נשק על מנת לבצע פיגועים נגד מטרות ישראליות

ת. מאג'ד אל מצרי סיפר לי שהוא לוקח כסף ממרואן ברגותי ומאג'ד היה מודע לכך והשתתף עמי במספר פיגועי ירי נגד מטרות ישראליות...

ש. האם מרואן ממומן אותך בכסף באופן ישיר

ת. כן ממומן אותי מרואן ברגותי פעמים באופן ישיר בפעם הראשונה העביר לי באמצעות הפקדה בבנק 3,000 ₪ ובפעם השניה העביר לי דרך הפקדה בבנק 5,000 ₪

ש. האם מרואן ברגותי ידע שאתה מבצע פיגועים נגד מטרות ישראליות

ת. כן ידע וכפי שציינתי לעיל שמי אף פורסם בעיתונות והשלטונות הישראלים מסרו לרשות הפלסטינאית שאני מבוקש בגין פיגועים ושמי גם פורסם בעיתונות העברית ובעיתונות המקומית בגדה וברצועה

ש. האם מרואן ברגותי סייע לך במימון כסף פרט למה שהזכרת לעיל

ת. כן פעם קיבלתי ממנו שיק על סך 2,300 ₪ מאושר על ידי היור ערפאת...". (עיין הודעת הנאשם ת/5).


עוד ענה לשאלות (עיין הודעה ת/6) כדלקמן:

נבו הוצאה לאור בע"מ nevo.co.il     המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 254

"כן היו לי מספר כינויים במהלך ביצוע הפיגועים כמו אלמג אלחאג' אלשיך אלכביר... וכן לקחתי... שני טיילי טנק ישנים על מנת להוציא מהם את החומר נפץ ואשתמש בחומר למטעני נפץ ובמטעינים השתמשתי על כביש העוקף בזוואתה... ואני גייסתי אותו (הכוונה לאדם בשם לואי עודה) לכתאב שוהדאא אל אקצא לפני כחודשיים לערך והמטרה מגויסו לשוהדא אל אקצא על מנת שיסייע לנו בפיגועים באזור ירושלים ושיכניס מתאבדים (מוסתשהידים) לירושלים ואני גם כן ביקשתי מלואי שילמד אותנו ייצור חומר נפץ יותר חזק מחהני'מ שהשתמשנו בו ולואי הסכים לי בטלפון כיצד מייצרים חומר (אומאלעבד) והשבתי לו שאנחנו יודע לייצר אומאלעבד. ולפני חודש וחצי לערך ביקשתי מלואי שיבדוק דרך להכניס מתאבד לירושלים... ותפקידי היה לתאם בין מחמוד ולואי על מנת להכניס את המתאבד לירושלים והפיגוע הזה בוצע אף ללא הצלחה מאחר ושוטרים ירו לעבר המתאבד לפני הביצוע... וג'אזי חוסיני ביקש ממני שאסכים לקבל שיחה מאדם ואחרי מספר ימים התקשר אלי מוניר מקדח המכונה אבו חוסיין וביקש שנמשיך בביצוע פיגועים והציע לי מימון כסף ואני הבעתי את הסכמתי ומסרתי לאבו חוסיין מספר חשבון הבנק שלי בבנק ערבי בשכם על מנת שיעביר לי כסף ואכן אבו חוסיין העביר לי כסף שש פעמים לערך והפקיד 3,000 או 5,000 דולר...

ש. מה עשית בכסף שהעביר לך מוניר מקדח

ת. לשם ביצוע פיגועים... על פי הסיכום עמו היה ממומן אותנו בכסף לביצוע פיגועים ואני הייתי מדווח לו אודות הפיגועים במהלך השיחות שניהלתי עמו באמצעות הטלפון והאינטרנט... שוחחתי עמו אודות הרבה פיגועים... ודיווחתי לו גם כן אודות התאבדות פיגוע בירושלים ובחדרה שביצענו...

ש. איזה קשר צבאי היה בינך לבין יאסר אבו בכר

ת. אחרי פרוץ אינתיפאדת אל אקצא תתגייס יאסר אבו בכר לכתאב שוהדאא אל אקצא וביקשתי מיאסר שישתתף עמנו בפיגועים ויאסר הסכים להצעה ומסרתי לו נשק מסוג M16 ויאסר ביצע פיגוע ירי מהנשק שמסרתי לו. הפיגוע היה לעבר רכב ישראלי בכביש העוקף מזרחית לשכם ועל פי דברי יאסר לא פגעו ברכב...

ש. האם היה קשר ליאסר עם מתאבדים

ת. כן אני ויאסר עבדנו יחד לשלוח מתאבדים עם מחמוד אלטיטי ואחמד אבו חדר... ובמידה והיינו נזקקים לדבר מה כמו צילום המתאבדים או הפצת כרוזים היינו נעזרים ביאסר ולפני כניסת הצבא לשכם כשבועיים ביקשתי מיאסר שינצח להשיג חגורת נפץ למתאבד על מנת לבצע פיגוע בתוך ישראל ואכן הביא חגורת נפץ ומסרנו אותה למתאבד שנסע עם אדם אחר לביצוע פיגוע בישראל וכשהגיע לבאקה אל גרביה ירו חיילים לעברו וניזוק נהרג... מה סוג הרכב שנסעו בו המתאבדים

ת. לא ידוע לי אך מסרתי לאחמד 3,500 ₪ על מנת שיקנה רכב גנוב להעברת המתאבדים ואחמד נסע עמם לטול כרם והראה להם את הדרך וחזר ברכב ציבורי...".

ובהודעתו ת/7 בתשובה לשאלות:

"... ומחמוד פנה אלי בענין זה מאחר ואנחנו חוליה צבאית ואני הבעתי את הסכמתי לפיגוע זה... יש לציין שאחמד אבו חדר פנה אלי כי אני אחראי כתאב שוהדאא אל אקצה... ואחרי ששמעתי ברדיו שנהרגו התקשרתי לכלל תקשורת והודעתי להם שהפיגוע בוצע על ידי כתאב אל אקצא... אך כשהודעתי שאנחנו לוקחים אחריות על הפיגוע מחמוד אמר לי את השמות... כן היה לי קשר בפיגוע הירי בנתניה שבוצע על ידי מתאבדים שלא ידעים לי שמותיהם ולפני הפיגוע הזה בימוזים התקשר אלי אחמד אבו חדר ואמר לי שביכולתנו להכניס שניים לישראל על מנת שיבצעו פיגוע התאבדות ואני פניתי למחמוד טיטי ושאלתי אותו באם הוא יכול להכניס מתאבדים והשיב לי בחיוב ואני מסרתי לאחמד שני רימונים ומחמוד טיטי מסר להם שני נשקים מסוג M16 ואחמד אבו חדר צילם אותם והסביר להם על הפיגוע... ואחרי מספר שעות שמענו בטלוויזיה שהיו חילופי אש בין המתאבדים וכוחות משטרה ליד בית מלון בנתניה ואזרחים

19

פח (ת"א) 1137/02                    מדינת ישראל נ' נאסר מחמוד אחמד עוויס

ושוטרים נפגעו בפיגוע ונרצחו שניים ושניים אחרים נהרגו על ידי המשטרה והתקשרתי לכלל התקשורת ולקחתי אחריות על הפיגוע...".

ובהודעה ת/8

"ש. האם היה לך קשר עם עבד אלכרים עויס

ת. כן... ואני יצרתי איתו קשר וביקשתי ממנו שיבצע פעולות צבאיות...

ש. מה עשה מחמוד במטענים שמסרת לו

ת. לפיגועים ולא זכור לי היכן בוצעו הפיגועים.

ש. האם אתה מכיר אדם בשם מג'די סמיר חילוס

ת. אני מכיר אותו ....ביקש ממני מטען נפץ על מנת לבצע פיגוע נגד סיור צבאי ישראלי ואני הסכמתי לכך ומסרתי לו מטען שקיבלתי...

ש. האם אתה מכיר אדם בשם חאתם אבו חד'ר

ת. ...ואני לקחתי מהאתם באמצעות אחמד כעשרים אקדחים וכעשרים רובה קלצ'ניקוב....ו –

M16 ותמורת האמל"ח היתי משלם מכספי....".

במסגרת הודעתו של הנאשם לפני שופט המעצרים וכעולה מהעבירות המיוחסות לו בבקשה להארכת פקודת המעצר (ת/23) הודה הנאשם בחברות בארגון עיין עיין "כתאב שוהדא אלאקצא" השייך לתנזים פת"ח, בהשתתפות בפיגועי ירי לעבר מטרות ישראליות באזור שומרון, במעורבות בגיוס מתאבדים ושליחתם לתוך ישראל, מתאבדים שביצעו פיגועי רצח כמו כן הודה בגיוס פעילים נוספים לביצוע פיגועים ובייצור חומר נפץ ומטענים.

עד התביעה אחמד אבו חד'ר מספר בהודעתו ת/12 "אני מודה שבמהלך חודש אפריל משנת 2001 הוצע לי ע"י נאצר עוויס להתגייס לכתאב שוהדא אלאקצא והסכמתי להצעה זו ומאז אני חבר פעיל בארגון שוהדא אלאקצה השייך לתנזים פת"ח ועד היום הזה ולאחר שהצטרפתי לארגון הנ"ל נאצר עוויס ביקש ממני להכין כרוזים בשם שוהדא אלאקצה וכן עשיתי את זה...ואחרי זה התחלתי להיות מעורב בפעילות צבאית השתתפתי בפיגועי ירי לעבר הצבא והשתתפתי בהנחת מטעני חבלה והשתתפתי גם בהכנת מס' מתאבדים ושליחתם לתוך ישראל לביצוע פיגועי התאבדות... נאצר עוויס הינו תושב מחנה בלאטה כבן 29 שנים ומכונה אל חאג' רוזק והוא אחד האחראים בכתאב שוהדא אלאקצה ושימש כאחראי שלי בארגון ונאצר עובד בביטחון הלאומי בשכם ומשתייך לתנזים פת"ח...חברי הקבוצה שאליה הצטרפתי בשוהדאא אלאקצה הם 1. נאצר עוויס- שימש כאחראי על כתאב שוהדא אלאקצא...".

בהודעה ת/13 מספר אבו חד'ר "אני מודה שבמהלך חודש מרץ לפני כחודש ביקש ממני נאצר עוויס להוביל מתאבד משכם... ברכב מסוג פונטיאק גנוב שקיבלתי אותו מנאצר... אני הודעתי לעאמר שאיני יודע לייצר מטענים ולכן לקחתי אותו לנאצר עוויס למחנה בלאטה וביקשתי מנאצר שיסדר לו שני מטענים ואז נאצר התקשר למחמוד טיטי... וכעבור שעה מחמוד טיטי הגיע והביא עימו שני מטענים... ואחרי זה עאמר קיבל את המטענים וכל אחד הלך לביתו וכעבור שלושה ימים שמעתי מעאמר שביצע פיגוע נגד ג'יפ צבאי ... ומאחר וסעדי פנה מס' פעמים לכן הודעתי לנאצר עוויס שאיושר לי להמשיך ולתכנן פיגוע התאבדות עבור סעדי ולכן פגשתי את סעדי והצעתי לו לבצע פיגוע משולב...וכעבור שבוע חזר סעדי ואמר לי שהוא מסכים

20

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 256

להצעתי אך בתנאי שהצטרפו אליו שני חבריו עלאא ומחמד חמודה אז פניתי לנאצר והודעתי לו את בקשתו של סעדי ונאצר הורה לי לבדוק באם השלושה רציניים בכוונותיהם לבצע פיגוע התאבדות... לאחר שאימנתי אותם בירי ב M16 צילמתי בוידיאו בביתי את עלאא ואת סעדי ביחד כשכל אחד מהם מחזיק M16 ומאחוריהם דגל פלשתין ודגל שוהדא אלאקצה וסעדי קרא את הצוואה שנאצר עוויס שלח אותה... ובאותו יום דיווחתי לנאצר עוויס שברשותי מתאבד ואז נאצר ביקש לפגוש את המתאבד הזה ולמחרת לקחתי את מג'די לסטודיו בשכם להצטלם ומשם לביתו של נאצר עוויס והשארתי אותו שם וכעבור יומיים נאצר ביקש ממני לרכוש רכב עם לוחית זיהוי ישראלית ואכן קניתי רכב מיצובישי שחור גנב תמורת 3500 שקל ... את הכסף עבור הרכב קיבלתי מנאצר עוויס  אחרי שקניתי את הרכב הלכתי לביתו של נאצר עם הרכב ושם נפגשתי עם נאצר ועם מג'די ... הופתעתי שישנו אדם נוסף בשם פתחי עמירי... ואז נאצר עוויס סיפר לי כי שני הנ"ל מג'די חנפאר ופתחי עמירי עומדים לצאת לפיגוע התאבדות בישראל ואז נאצר מסר למג'די נשק מסוג M16 ולפתחי מסר שני רימוני יד...לפני שנה בערך ביקש ממני נאצר עוויס לקנות לו שני שקים של דשן כימי לצורך ייצור מטעינים... וקניתי... ומסרתי אותם לנאצר עוויס לצורך הכנת מטעני חבלה...לפני כשנה קניתי שני רובים מסוג M16 ...את הכסף עבור הנשקים האלה קיבלתי מנאצר עוויס...

ש. מהיכן היית מקבל את הכספים עבור הוצאת לפעילות הצבאית

ת. מנאצר עוויס ששימש האחראי עלי מטעם שוהדא אלאקצה"

ובהודעה ת18\ "יהה תכנון של מבצעי הפיגוע התאבדות בתוך התחנה המרכזית בחדרה בכך שאני וזיאד... ונאצר עוויס העלינו רעיון שנשלח מתאבד או שניים שיבצעו פיגוע משולב של ירי ולאחר מכן פיצוץ המטען שיהיה על גופם ובכך התוצאה הינה גדולה ותגרום למוות המוני ונאצר עוויס לקח על עצמו גיוס המתאבד ואני לקחתי על עצמי למצוא ישראלי שייסע בהכנסת המתאבד לישראל...ובסופו של דבר לא הצלחנו להוציא פיגוע זה אל הפועל... זיאד עצאчула סיפר לי ...שהוא הבחין במס' דתיים שמתרכזים בבית כנסת ביום בקה אלגרביה לחדרה והציע לי שנארגן פיגוע התאבדות במקום. אני הסכמתי והודעתי זאת לנאצר עוויס האחראי עלי והוא אמר לי הולך ניקח את זה בחשבון אך בסופו של דבר זה לא יצא לפועל. בנוסף לזה אני ומחמוד טיטי ונאצר עוויס שוחחנו האפשרות לבצע פיגוע בתחנת הדלק הראשית בישראל בכך שנמאין להגעת מיכלית דלק שמגיע לחלק דלק בשכם ולהניח מטען חבלה במיכלית בלי שהנהג ירגיש מטען שמחובר לפלא פון ובשלב יותר מאוחר ובעת שהמיכלית חודרת לתחנת האטם אז מפעילים את המטען בכך שמתקשרים לפלא פון שמחובר למטען זה היה רק תכנון ולא יצא לפועל... חשבתי שנבצע פיגוע במשרד הביטחון בתל אביב אני שוחחתי על כך עם נאצר עוויס ומחמוד טיטי והחלטנו לחפש פעילים מאומנים שיבצעו פיגוע שכזה...את הנשקים הייתי מביא מנאצר עוויס לפני כל יציאה לפיגוע... "

ובהודעה ת20\ "... אני בטוח שנאסר (אבו בכר) ידע שהרובים מיועדים למתאבדים שיוצאים לבצע פיגועים בתוך ישראל כי יאסר הוא איש סודו של נאצר עוויס וכי יאסר הוא כותב הכרוזים של נאצר עוויס כרוזי נטילת אחריות על פיגועים שתוכננו על ידי נאצר עוויס... "

העד מחמוד ידכ מספר בהודעתו ת40\ א'  "פנה אלי מחמוד אלטיטי ואמר לי שהוא מתכנן להקים חוליה צבאית שייכת לתנזים פת"ח והציע לי להתגייס לחוליה הצבאית ואמר מחמוד שמטרת הקמת החוליה היא לבצע פיגועים נגד הצבא הישראלי באיזור שכם. אני הסכמתי לקח ובמסגרת החוליה הצבאית אני השתתפתי בעשרה פיגוע ירי לעבר הצקן באיזור שכם. והשתתף איתי בפיגועי הירי ... נאצר עוויס כבן 35 שנה ממחנה בלאטה והוא האחראי התנזים בשכם...

ש. מי היה מתכנן ומכין לביצוע הפיגועים שבהם אתה השתתפת

ת. נאצר עוויס הוא זה שהיה מתכנן לביצוע הפיגועים והוא זה שהיה מספק לנו את כלי הנשק ...."

נבו הוצאה לאור בע"מ  nevo.co.il  המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 257

ובהודעת ת\40בי "בתחילת חודש 10 שנת 2001 נפגשתי אני ומחמוד אלטיטי עם נאצר עוויס ... ושם הציע לנו נאצר ללמד אותנו על אופן הכנת מטעני חבלה לצורך ביצוע פיגועים ולספק מטענים לאחרים בתנזים פת"ח ולאחר הסכמתי והסכמת מחמוד בא אלינו נאצר עוויס לדירה שבה מתגוררים אני ומחמוד אלטיטי ברפידיה והיה ברשות נאצר עוויס חומר נפץ בתוך חמש שקיות כל שק עשרה ק"ג והיה ברשותו בערך 10 בלוני גז בגדלים שונים וחוטי חשמל וסוללות ובדירה נאצר עוויס לימד אותנו על אופן הכנת מטען חבלה ודרך הפעלתם כמו כן לימד אותנו נאצר על אופן הכנת חומר נפץ מחחומרים 1. דשן חקלאי אשלגני 2. גופרית 3. פחם...נאצר עוויס מספק לנו את החומרים הדרושים להכנת המטעניים... הדירה ברפידיה שימשה להכנת חומר נפץ והמטעניים... המטעניים שהכנו היינו מוסרים לאנשים מתנזים לצורך ביצוע פיגועים צבאיים נגד מטרות ישראליות בגדה המערבית..."

בהודעה ת\40גי: "ש. בהודעתך הראשונה מסרת שנאצר עוויס הוא זה שהיה מתכנן ביצוע הפיגועים והיה אחראי על תנזים פת"ח בשכם האם אתה היית מודיע לנאצר עוויס אודות ביצוע הפיגועים שבהם השתתפת והפיגועים שבוצעו על ידי אחרים שלך היה קשר איתם במסגרת תנזים פת"ח

ת. כן אני ומחמוד אלטיטי היינו מודיעים לנאצר עוויס אודות כל פיגוע שביצענו ועל פיגועים שבוצעו על ידי נוספים היינו בקשר איתם ...

ש. האם היה לך קשר עם מרואן ברגותי

ת. לא היה לי כל קשר עימו היה לנאצר עוויס קשר עימו עם מרואן ברגותי והיה מודיע אודות ביצוע הפיגועים שבוצעו נגד מטרות ישראליות ..."

ובהודעה ת\40די " לאחר הפיגוע בהתנחלות גדעונים כחודש הגיע אלי כמאל אבואר וביקש ממני הרובה M16 אשר לקחתי אותו מהשומר שרצחתי בגידעונים ואני נתתי את הנשק לכמאל אבואר להשתמש בו בפיגוע והוא החזיר לי את הנשק לאחר יום ולא סיפר לי מה עשה בנשק ורוצה להוסיף כי נאצר עוויס לקח ממני את נשק M16 פעמיים בכדי שישתמש בו פעילי התנזים ובחודש 9\2001 לקח ממני נאצר עוויס את הנשק בשל הנחת מטען...שביצע אותה אבושהדי פעיל כוח 17 ...בחודש 10\01 לקח ממני נאצר עוויס את הנשק בשל ירי ...נקודת צבאית ..."

העד אחמד ברגותי מספר בהודעתו ת\43אי "ש. למה התקשרת לנאצר עוויס ת. כי הוא האחראי על שוהדא אלאקצה והוא עושה דברים כאלה אני שאלתי את נאצר עוויס אם יוכל לעזור לי בכך שיביא לי מישהו שרוצה לעשות פיגוע ואני אשלח אותו לירושלים שיעשה שם פיגוע ונאצר אמר לי שישלח לי מישהו...

בהודעה ת\43גי "אני אחרי שהתקשרתי לנאצר עוויס ואמרתי לו על הפיגוע (המדובר בפיגוע המתואר באישום הראשון אשר ארע במסעדת "סי פוד מרקט") כי נאצר עוויס הוא אחראי כתאב שוהדא אלאקצה... ש. ספר לי מהיכן הכסף לפעילות ת. אני נתתי לנאצר עוויס את מס' חשבון בנק שלי והוא הכניס לחשבון שלי כ- 7000 שקל...

ש. ספר לי על קשריך עם נאצר עוויס

ת. היה לי את המספר פלא פון של נאצר עוויס ואנחנו היינו מדברים בטלפון על הפעילות ומרואן ברגותי ידע על הקשר הזה שאנחנו מדברים ואיזה יום אמר לי נאצר שישלח לי את פאיז שאני אכין אותו ואשלח אותו לעשות פיגוע התאבדות... ואז עלי אמר לי שמרואן אמר לו לא לתת לי באותו זמן כסף ונשק אני אמרתי זאת לנאצר עוויס ונאצר אמר לי שזה בסדר שנמשיך וכי הוא יביא לי נשק וכסף אני זוכר שנאצר עוויס אמר לי שיש לו עוד אנשים שרוצים לעשות פיגועי התאבדות והוא ישלח לי אותם..."

22

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 258

ובהודעה ת43\ד' " באותו לילה שהיה הפיגוע באולם השמחות בחדרה...אני התקשרתי לנאצר עוויס והוא אמר לי שהוא אחראי על הפיגוע הזה כלומר שגדודי שוהדא אלאקצה עשו את הפיגוע הזה סיכמתי עם נאצר עוויס שלמחרת הוא ייתן לי כרוז שבו הוא לוקח אחריות על הפיגוע למחרת נאצר שלח לי בפקס את הכרוז ואני צילמתי אותו באלף עותקים והפצתי אותו ברמאללה...."

בהודעה ת43\ה' "אני אחמד ברגותי הכינוי שלי פרנס הייתי אחראי ביחד עם נאצר עוויס על גדודי שוהדא אלאקצה ...."

העד יאסר אבו בכר בהודעתו ת47\א' מספר "נאצר עוויס הוא האחראי על גדודי שוהדא אלאקצה ומבוקש לישראל בחודש ספטמבר 2001 נאצר עוויס התקשר אלי וביקש ממני להכין לו כרוז ליום השנה הראשון לאינתיפאדה אל אקצא... הכנתי כרוז כזה ונתתי אותו לנאצר בביתו בבלאטה כמו כן לאחר מותו של ראאד אל כרמי נאצר עוויס היה מתקשר אלי לאחר פיגועים והיה מבקש ממני לכתוב כרוזים שבהם גדודי שוהדא אלאקצה לוקחים אחריות על הפיגועים ואני הסכמתי...לאחר שהיה פיגוע נאצר עוויס היה מתקשר אלי ומספר לי היכן היה הפיגוע ומי היה הבחור שעשה את פיגוע ההתאבדות ואני הייתי מכין את הכרוזים וכותב שגדודי שוהדא אלאקצה לוקחים אחריות על הפיגוע אחר כך הייתי מעביר את הכרוז לנאצר עוויס ונאצר היה שולח את הכרוז בפקס לעיתונאים ש. סיפרת לי קודם שנאצר עוויס אחראי על גדודי שוהדא אלאקצה ומבוקש לישראל ומבוקש לישראל אתה יכול לומר לי מי חבריו של נאצר עוויס לחוליה הצבאית ת. הם חוליה של גדודי שוהדא אלאקצה נאצר עוויס הוא האחראי על החוליה

ובת47\ב' " בערך לפני כשלושה שבועות נאצר עוויס התקשר אלי ואמר לי להשיג לו בדחיפות שתי חגורות נפץ עבור פיגוע ההתאבדות. נאצר עוויס אמר לי להביא חגורות נפץ מאדם אחר ולא ממחמוד טיטי כי הפיצוץ מחגורת הנפץ שהכין ממחמד טיטי היה חלש הם ניסו את חגורת הנפץ הזאת והפיצוץ היה חלש...אני פניתי לחאלד אל אסמאר כי יש לו חבר שיודע לייצר חגורות נפץ...לאחר יומיים חאלד אל אסמאר אמר לי שרביע אבו רוב הכין לנו חגורת נפץ אחת...והעברתי אותה לאחמד אבו חדר..."

בת47\ג' " בתחילת שנת 2001 הייתי בביתו של נאצר עוויס במחנה הפליטים בלאטה ואז נאצר עוויס הציע לי גיוס לפעילות צבאית בגדודי חללי אל אקצא ואני הסכמתי. ש. האם נאצר עוויס אמר לכם מה הפעילות שתעשו ת. כן הוא אמר שנעשה פיגועים נגד מטרות ישראליות ואז הציע לנו לעשות פיגוע מטען וירי על רכב צבאי..."

בת47\ד' " לפני כחודש וחצי בערך התקשרתי לפלאפון של נאצר עוויס אחראי התנזים כתאב אל שוהדא בשכם... והצעתי לנאצר את בית החולים תל השומר בישראל כמקום טוב לבצע פיגוע אני שמעתי שיש חיילים ישראלים בבית החולים תל השומר ולכן הצעתי לבצע פיגוע במקום הזה הנאצר אמר לי עכשיו לשכוח מנושא זה וביקש שאדבר בנושא זה עם אחמד אבו חדר בשנות העשרים לחייו פעיל בכיר בתנזים עוזרו של נאצר עוויס... לפני כחודשיים בערב פנה אלי נאצר עוויס סיפרתי לך עליו וביקש ממני לפנות לפעילי גאפ ולבדוק איתם עזרה בביצוע פעילות צבאית ופיגועים אמרתי לנאצר שאני מכיר פעיל גאפ...נאצר אישר לי ללכת אליו נפגשתי עם ...וסיפרתי לו שאני פועל עם נאצר עוויס..."

ובהודעה ת47\ה' "...גיליל סיפר לי שיש לו בחור שמוכן לבצע פיגוע התאבדות אז אני אחרי מס' דקות התקשרתי לנאצר עוויס ואמרתי לו שיש מפגע מתאבד שמוכן לבצע פיגוע התאבדות ואז נאצר עוויס הנחה

23

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 259

מדינת ישראל נ' נאסר מחמוד אחמד עוויס          פח (ת"א) 1137/02

אותי שהבחור ירד לרמאללה ...אחרי שבוע חמישה ימים בערך שמעתי בחדשות שהיה מפגע מתאבד בשם
ראמי נור משאב שביצע פיגוע ירי באזור דתיית אל ... בירושלים ומהפגינע נהרגו שני יהודים ויש פצועים
וראמי נור נפצע קשה כי נורה על ידי החיילים. אחרי החדשות באותו היום של הפיגוע התקשר אלי נאצר
עוויס ומסר לי שהמפגע הוא ראמי נור פעיל תנזים והנחה אותי להכין כרוז בשם כתאב שוהדא אל אקצה
שבו הארגון לוקח אחריות..."

על פי סעיף 1 לפקודת מניעת טרור התש"ח 1948, "'ארגון טרוריסטי'' פירושו חבר אנשים המשתמש
בפעולותיו במעשי – אלימות העלולים לגרום למותו של אדם או לחבלתו , או באיומים במעשי – אלימות
כאלה, " חבר בארגון טרוריסטי'' פירושו אדם הנמנה עליו , וכולל אדם המשתתף בפעולותיו, המפרסם
דברי-תעמולה לטובת ארגון טרוריסטי , או פעולותיו."

על פי סעיף 2  לפקודה זו  יחשב אדם הממלא בין השאר תפקיד  בהנהלה או בהדרכה של ארגון
טרוריסטי או משותף בדיוניו או בקבלת החלטותיו של ארגון טרוריסטי, פעיל בארגון כזה.

הציטוטים שהבאנו לעיל הם דוגמא מהיריעה הרחבה והמפורטת אשר נפרשה לנו מתוך הודעות הנאשם
והודעות שותפיו עליהן הסתמכנו, יריעה עובדתית המבססת מעל לכל ספק את המסקנה המשפטית  שיסודות
העבירות בניגוד לסעיפים  2 ו 3  לפקודה הוכחו כדבעי כמו גם את המסקנה שהארגונים שהאשם והאשם
הנאשם ושותפיו הם ארגונים טרוריסטים.

מלבד עבירות על פקודת הטרור אותן מייחסת המדינה לנאשם בכל האישומים שפורטו בכתב האישום
היא מייחסת לו בכל האישומים עבירות בניגוד לסעיף 499 לחוק העונשין תשל"ז-1977 .

עיקרה של עבירת הקשר טמון בהסכמה בין שניים או יותר לבצע מעשה בלתי חוקי. ההתקשרות צריכה
להיות לשם השגתה של מטרה משותפת וצריך שההתקשרות תלווה בכוונה שהמטרה המשותפת תוגשם.
המדובר כאמור במטרה שהינה מטרה פסולה בעיני החוק.

היריעה העובדתית שהוזכרה לעיל מבססת מעל מבססת כהלכה אף את המסקנה שהנאשם עבר עבירות בניגוד לסעיף
499 לחוק העונשין תשל"ז-1977 .

הודאתו של הנאשם על תפקידיו מעמדו ופעילותו במסגרת הארגון אליו השתייך, פעילות שמטרתה
ביצוע פעולות טרור שאף הניבו תוצאות רצחניות וחבלניות כפי שעוד יתואר להלן, נתמכת במלואה בדבר
מה נוסף מהותי הנוגע ממקורות נפרדים ועצמאיים,  אימרות כל אחד ואחד מן השותפים, המוסבכות – כל
אחת על פי דרכה – את הנאשם בעבירות המיוחסות לו תוך התייחסות לנקודה ממשית השנויה במחלוקת.
על התוספת המחזקת את עדויות השותפים כבר עמדנו לעיל.

המדינה הוכיחה את המעשים האלה המיוחסים לנאשם.

**האישום הראשון** :

24

בתאריך ה- 5.3.02 הגיע המחבל אברהים חסונה (להלן חסונה) למסעדת "סי פוד מרקט" בתל אביב כשהוא חמוש ברובה M16, רימוני יד וסכין בכוונה לבצע פיגוע רצחני.

בעת שחסונה הגיע למקום המסעדה היתה מלאה בעשרות רבות של אנשים. חסונה החל לירות לעבר האנשים במסעדה מגשר "ביב מערבי" , השליך לתוכה רימוני יד שבדרך נס לא התפוצצו ומיד לאחר מכן התקרב למסעדה ודקר אנשים מיושביה הכל במטרה לגרום בכוונה תחילה למותם של אנשים רבים שהתארחו במסעדה.

באירוע זה נדקרו למוות מסכינו של חסונה רס"ר סלים בריכאת ז"ל, בן 33, שהיה אחד השוטרים הראשונים שהגיעו לזירת הפיגוע והשתער על חסונה במטרה לעצרו, יוסף חבי ז"ל, בן 52, ואליהו דהן ז"ל, בן 53. עשרות אנשים נוספים נפצעו ולחלק מהם נגרמו חבלות חמורות. לאחר שכוחות הביטחון הגיעו למקום הפיגוע נורה חסונה למוות. (עניין עדויות; ע"ת מס' 3 נצ"מ חגי דותן; ע"ת מס' 4 תנ"צ אורי ברלב (מצעד ת\א); ע"ת מס' 8 אוריאל אליהו; ע"ת מס' 9 סמ"ר שי כהן; ע"ת מס' 11 ליאון גורנשטיין; ע"ת מס' 13 עדי מעוז; ע"ת מס' 17 אפי ימין; ת/32 (דו"ח פעולה על הנצחת הזירה ותפיסת מוצגים); ת/33 (רובה -M 16); ת/34 (סכין מגואלת בדם); ת/35 (לוח תצלומים); ת\24(דוח פעולה);ת\25 (דוח פעולה); ת\52 עד ת\57 (חו"ד מומחים)).

לטענת המדינה הנאשם שהיה כאמור אחד ממפקדיו הבכירים של הארגון הטרוריסטי קשר קשר עם פעילים אחרים בארגון ובינהם מחמוד טיטי ואחמד ברגותי (ע"ת מס' 23) להוציא לפועל פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים ובמסגרת התארגנות זו שהנאשם עמד בראשה חסונה גויס צויד והוסע לתל אביב אל מקום המסעדה. הנאשם הורה בין השאר למחמוד טיטי לצלם את חסונה לפני יציאתו לביצוע הפיגוע כמתבד מתאבד זאת על מנת שלאחר מכן ניתן יהיה לשלוח את הקלטת בה הוא מצולם לתחנות הטלוויזיה השונות. ואכן, לאחר הפיגוע במסעדה התקשר אמנם הנאשם לתחנות הטלוויזיה השונות ולאמצעי תקשורת אחרים והודיע להם כי הארגון הטרוריסטי אחראי לפיגוע ואף ביצע אותו.

הודיית הנאשם :

"יש. האם היה לך קשר לפיגועי התאבדות בת"א

ת. כן מחמוד טיטי מסר לי בתחילת חודש מרץ 2002 כשהגיע לביתי במחנה בלאטה על כך שאחמד ברגותי ביקש ממני אדם שיבצע פיגוע התאבדות (איסתחהאד) בת"א והודיע לי שהוא עומד לפנות לאדם בשם אברהים חסונה במקזר מעזה שממשרת בכזח הימי בשכם ומחמוד מסר לאברהים נשק מסוג M16 ורימוני יד ומחמוד פנה אלי בעניין זה מאחר ואנחנו חולים צבאית ואני הבעתי את הסכמתי לפיגוע זה והוא שלח את אברהים ברכב ציבורי לרמאללה וסיכמנו עם אחמד ברגותי שיפגוש את אברהים חסונה ברמאללה וכן סוכם שמחמוד יצלם את אברהים לפני ביצוע הפיגוע ואחרי זה נשלח את הקלטת לתחנות הטלוויזיה, אכן לאחר מכן הגיע אברהים לרמאללה ולפי הידוע לי אחמד הכניס אותו לישראל ואברהים הגיע לת"א ושמעתי בחדשות שירה לכיוון הישראלים למסעדה ונהרג ואז התקשרתי לתחנות הטלוויזיה והתקשרתי ומסרתי שהפיגוע בוצע על ידי כתאב שוהדא אלאקצה

ש. כמה אנשים נהרגו בפיגוע ת"א על פי הידוע לך

ת. על פי הידוע לי נהרגו שניים או שלושה אנשים ונפצעו יותר מעשרים אנשים

ש. לאיזה תחנות טלוויזיה התקשרת והודעת להם שהפיגוע בוצע על ידכם

ת. אלג'זיירה, אבוד'בי – ישראל – אלמנאר – ולתקשורת המקומית

25

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

ש. האם יש לך מה להוסיף בקשר לפיגוע בתל-אביב.

ת. לא, אך באותה תקופה פנה אלי אחמד אבו חאדר מכתאב שוהדאא אלאקצה ואמר לי שישנם שני
אנשים ברצונם לבצע פיגוע בישראל ואני הבעתי הסכמתי לכך והודעתי לאחמד בריגיתי אודות עניין זה
ושאלתי אותו באם יוכל להכניס אותם וסוכם עם אחמד אבו חי'ד'יר שעלאא אבו מוצטפא ואימ'ן בדר יעבירו
את שני האנשים המוסתםשהידים לרמאללה ואחר כך התקשרתי לאחמד בריגיתי ומסרתי לו שהאנשים
בדרך אליו יש לציין שאחמד אבו חי'ד'יר פנה אלי כי אני אחראי כתאב שוהדאא אלאקצהי'.

(ראה ת\7)

דבר מה נוסף:

העד אחמד ברגותי,

"... התקשר אלי נאצר עוויס ואמר לי שיש עוד בחור שרוצה לעשות פיגוע התאבדות כי הוא שולח לי
אותו ואני אמרתי בסדר ואחרי כן התקשר אלי בחור שאמר לי כי הגיע בשמו של נאצר עוויס ואני שלחתי
את א-נוף שיביא אותו ונתתי לא-נוף 1000 שקל ואמרתי לא-נוף שיקנה לבחור הזה בגדים חדשים ושייקח
אותו להסתפר ואמרתי לא-נוף שיביא אותו אחרי כן לדירה השכורה ברמאלה ליד הבנק הערבי שבה היה
לפני כן רמ'ני נור ולאחר מכן כשהגעתי לדירה השכורה ראיתי את הבחור שאמר לי כי שמו אברהים חסונה
שהוא בן 21 והוא אמר שהוא מעזה ואני לאחר מכן אמרתי לא-נוף שייקח את אברהים חסונה לישראל
שיעשה שם פיגוע ואמרתי לא-נוף כי אביא לו גם נשק שיעשה פיגוע ואחרי כן הביא א-נוף רובה M16 ונתן
אותו לאברהים חסונה ואחרי כן לקח א-נוף את אברהים חסונה למ.פ. אמערי לחלום אבו חמיד והם נשארו
שם 3 ימים ובסופם התקשר אלי א-נוף ואמר לי שהוא יצא ולאחר מכן שמעתי שאותו אברהים חסונה עשה
פיגוע בתל אביב במסעדה וכי נסע לשם עם מוראד עגלוני ומאזן אלקאדי שתפסו אותם... לאחר כמה ימים
התקשר אלי מחמוד אלתיתי שהוא פעיל שוהדאא אלאקצה ופועל יחד עם נאצר עוויס ... ומחמוד אמר לי
שיש לו מישהו שרוצה לעשות פיגוע התאבדות וכי ישלח לי אותו לרמאללה ואני אמרתי לו בסדר..." (ראה
ת\43א'\4)

העד אחמד ברגותי בת/43אג' : "ש. ספר לנו על פעילותך בעניין הפיגוע בתל אביב במסעדת סי פוד

ת. מי שעשה את הפיגוע הוא אברהים חסונה שהגיע מאזור שכם מנאצר עוויס... לאחר מכן אני
התקשרתי לפלא פון של מרואן ברגותי שאיתו אני הייתי בקשר ואני הייתי אומר לו שהפיגוע יצא לביצוע.
מרואן ברגותי אמר לי שאינו רוצה שהפיגוע יהיה בפנים בתוך ישראל ואני אמרתי לו שיהיה בסדר ואחרי
כן זה היה בשעה שלוש בלילה התקשר אלי טארק אנוף ואמר לי שעשה את הפיגוע והוא אמר לי להסתכל
בטלוויזיה ואני אז התקשרתי אל מרואן ברגותי ואמרתי לו שבוצע הפיגוע שיסתכל בטלוויזיה ומרואן אמר
לי שהוא רואה בטלוויזיה. מרואן לא אמר לי כלום שהוא שמע שעשו את הפיגוע בתוך ישראל ולא כמו
שהוא אמר שיהיה באיזור הגדמע. אני אחרי כן התקשרתי אל נאצר עוויס ואמרתי לו על הפיגוע כי נאצר
עוויס הוא אחראי כתאב שוהדא אלאקצהי'.

<u>אישום שני</u>

נבו הוצאה לאור בע"מ nevo.co.il   המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 262

בתאריך 17.1.02 הגיע המחבל עבד אל סלאם חסונה( להלן עבד אל סאלם)   לאולם אירועים "ארמון דוד" בחדרה כשהוא חמוש ברובה M16, רימוני יד ועל גופו אפוד ובתוכו מחסניות בכוונה לבצע פיגוע רצחני.

באולם התקיימה מסיבת בת מצווה של הנערה נינה קרדישוב והשתתפו בה עשרות רבות של אורחים. עבד אל סאלם התפרץ לאולם וירה לכל עבר  ובטרם השתלטו עליו כמה מן האורחים הצליח לגרום בכוונה תחילה למותם של שישה מן האורחים והם אנטולי בקשייב ז"ל בן 63, אדוארד בקשייב ז"ל בן 48, בוריס מליחוב ז"ל בן 56, דינה בינייב ז"ל בת 48, אליים בן ישראל (אהרון) ז"ל בת 32, אבי יוזדי ז"ל בן 25 ולפציעתם של עשרות אנשים נוספים אשר לחלק מהם נגרמו חבלות חמורות (עיין עדויות ; ע"ת מס' 1 תנ"צ משה ולדמן ; ע"ת מס' 24 שמעון לוגסי ; ע"ת מס' 12 קונסטנטין קרדישוב ; ע"ת מס' 20 רפ"ק יהודה פרץ ; ת\1 (מוצגת) ; ת\27 (מסמכים רפואיים) ; ת\36 (רובה M 16 ) ; ת\44 (קליטות) ; ת\58 (חו"ד מומחה) ; ת\59(הודעת פטירה אנטולי בקשייב ז"ל) ; ת\60(הודעת פטירה יוזי אבי ז"ל) ; ת\61(הודעת פטירה מליחוב בוריס ז"ל) ; ת\62(הודעת פטירה בינייב דינה ז"ל) ; ת\63 עד ת\66- (חו"ד מומחה)).

לטענת המדינה הנאשם שהיה כאמור אחד ממפקדיו הבכירים של הארגון הטרוריסטי קשר קשר עם אחמד אבו חדר (ע"ת 6) ופעילים נוספים להוציא לפועל פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים ובמסגרת ההתארגנות הזו שהנאשם עמד בראשה גויס עבד אל סאלם אומן בירי ברובה M16 צוייד בנשק ומחסניות לצורך אימוני הירי ולצורך ביצוע המעשה והוסע למקום הפיגוע בחדרה. טרם הפיגוע צולם עבד אל סאלם עפ לפי הוראת הנאשם כשהוא קורא צוואה שנכתבה עבורו על ידי הנאשם וכשהוא מחזיק בידו רובה M16 השייך לנאשם כדי שלאחר הפיגוע ניתן יהיה לשלוח הצילומים לאמצעי התקשורת ולאחר הפיגוע אף הורה הנאשם ליאסר אבו בכר (ע"ת 25 ) להכין כרוזים שהופצו בהם נמסר כי הארגון הטרוריסטי אחראי לפיגוע וביצע אותו.

<br>

הודיית הנאשם :

ת/5:

"12. סיפקתי לעבד אלסלאם חסונה נשק לביצוע פיגוע התאבדות בתוך חדרה".

ת/6:

"ת. שוחחתי עמו אודות הרבה פיגועים וזכור לי ששוחחתי עמו אודות פיגוע ירי שביצעתי אני ומואייד ג'מיל ומחמוד אלטיטי ובאיד אבו מוצטפא בקרבת מחנה חוארה לעבר רכב צבאי וכן שוחחתי עמו אודות הנחת מטעני נפץ בקרת זואתה ובפיגועים הללו השתתפתי מואייד ג'מיל ומחמד – ידכ ומחמוד אטיטי ואחמד אבו חידר ודיווחתי לו גם כן אודות פיגוע ההתאבדות בירושלים ובחדרה שבוצענו

ש. איזה פיגוע התאבדות בחדרה

ת. הפיגוע שבוצע ע"י עבד אלסלאם חסונה".

"האם אתה יכול להסביר איך בוצע פיגוע חדרה וירושלים

ת. כן עבד אלסלאם חסונה תושב בית אמרין פנה – לאחמד אבו חידר (ע"ת מס' 6) ואמר לי שרוצה להתאבד (אללאסת שהאד) ואחמד פנה אליי והודיע לי ואחרי פטירת ראאד אלכרמי החלטנו לבצע פיגוע ואחמד צילם את ע. אלסלאם חסונה במחנה בלאטה ואני מסרתי לו נשק מסוג M16 ורימון יד ומסרנו יד לעבד

27

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

אלסלאם 400 שקלים ונסע לטולכרם ברכב ציבורי ושם נפגש עם מחמוד אלטיטי אצל מנצור שרים תושב טולכרם ושם ע"פ הפיגוע היה מחמוד אחראי לשליחתו לחדרה והפיגוע בוצע באולם ועל פי הידוע לי נהרגו מספר אנשים בפיגוע הזה".

דבר מה נוסף:

אחמד אבו חדר, ת/17, עמ' 3:

"אני מודה גם שאני זה שצילמתי את עבד אלסלאם חסונה מבית אמרין לפני שיצא לבצע פיגוע ההתאבדות בחדרה לפני כחצי שנה בערך".

ת/18, עמ' 14: "את האמנת אני אשר גייסתי את עבד אלסלאם חסונה תושב בית אמרון, עבד אלסלאם הוא חבר שלי ועבדנו יחד בשכם בבטחון הלאומי עבד אלסלאם ביקש ממני לפני כחצי שנה לסדר לו שיבצע פיגוע התאבדות... לאחר שביקש ממני עבד אלסלאם לסדר לו יציאה לבצע פיגוע התאבדות בישראל אני פניתי לנאצר עוויס וסיפרתי לו על עבד אלסלאם, ... ואז החלטנו להוציא אותו לפיגוע התאבדות כנקמה למותו של ראאד אלכרמי. נאצר ביקש ממני לאמן אותו על נשק וכדי שיהיה מוכן לבצע את הפיגוע בהצלחה. ואני עשיתי זאת אמנתי אותו על נשק מסוג M16 ... את הנשק ושמונה מחסניות לקחתי מנאצר עוויס. יום לאחר מכן הבאתי את עבד אלסלאם לבית של נאצר במחנה בלאטה ובביתו של נאצר ובנוכחותו צלמתי את עבד אלסלאם שהוא קורה (כך במקור) את הצוואה שכתב נאצר שהוא מחזיק בנשק M16 של נאצר כשהוא עושה תנועה של השהאדה באצבע, צלמנו אותו במצלמת וידיו ומצלמה רגילה את הקלטת והתמונות לקח נאצר מסרנו לעבד אלסלאם נשק M16 ושש מחסניות ושני רימוני יד אשר הביא נאצר. לאחר הצילום בערך בשעה שמונה בערב אני יצאתי לחפש מונית ואכן מצאתי את אימן נהג מונית תושב בלאטה כבן 26 וביקשתי ממנו סיוע בהעברת בחור לטוכ' מבלי לספר לו שמדובר במתאבד והוא הסכים לכך והסיע את עבד אל סאלם לטוכ'. את הרובה M16 והמחסניות ורימוני היד לקח בתיק לאחר שפירק את ה- M16 לשניים. כאשר עבד אל סאלם נסע לטוכ' במונית של אימן . נאצר התקשר למחמוד טיטי ועדכן אותו שהבחור בדרך אליו, לציין שנאצר דיבר עם מחמוד טיטי לפני כן בכדי שיכין את עצמו לקבלת עבד אלסלאם ובכדי לתת לו סיוע לשם כניסתו לישראל את זה ידעתי מנאצר אני לא היה מעורב בשיחות ביניהם. נודע לי לאחר מכן שמחמוד טיטי קיבל את עבד אלסאלם בטוכ' וכשהוא הגיע לחדרה הוא ביצע פיגוע באולם השמחות ושהוא נהרג והרג מספר ישראלים אני חושב שישה במספר..."

אחמד ברגותי, ת/43ד':

"באותו לילה שהיה הפיגוע באול השמחות בחדרה אני הייתי יחד עם מרואן ברגותי, עם כרים עוויס ו"אבו רביעה" במסעדת האורטודוכסים ברמאללה פתאום הודיעו לנו על הפיגוע באולם השמחות בחדרה. אני התקשרתי לנאצר עוויס והוא אמר לי שהוא אחראי על הפיגוע הזה כלומר שאנשי גדודי שוהדא אל אקצא עשו את הפיגוע הזה סיכמתי עם נאצר עוויס שלמחרת הוא יתן לי כרוז שבו הוא לוקח אחריות על הפיגוע. למחרת נאצר שלח לי בפקס את הכרוז ואני צילמתי אותו באלף עותקים והפצתי אותו ברמאללה".

אישום שלישי:

בתאריך 22.1.02 הגיע המחבל סעיד רמדאן אל רחוב יפו פינת רחוב לונץ במרכז ירושלים כשהוא חמוש
ברובה M16 ושתי מחסניות וזאת בכוונה לבצע פיגוע רצחני. רמדאן ירה לעבר אזרחים שעברו במקום
באותה עת וגרם בכוונה תחילה למותן של שרה המבורגר ז"ל בת 79 ואורה (סבטלנה)סנדלר ז"ל בת 56,
אשר הלכו לתומן ברחוב ולפציעתם של עשרות אנשים נוספים אשר לחלק מהם נגרמו חבלות חמורות.
רמדאן נורה למוות על ידי שוטרים שהגיעו למקום. (עיין עדויות; ע"ת מס' 22 אבי בן עמי; ע"ת מס' 26
אסף אזולאי; ע"ת מס' 3 נצי"מ חגי דותן; ע"ת מס' 14 בן נעים חנן;ע"ת מס' 15 נועם
גבאי;ת\30(מצגת);ת\48 (M-16 )  ; ת\48אי (דו"ח תפיסת מוצגים);ת\77(תצלומים מזירת האירוע); ת\78
(הודעת פטירה של המבורגר שרה ז"ל; ת\79 (הודעת פטירה של סנדלר אורה ז"ל)).

לטענת המדינה הנאשם שהיה כאמור מפקד בכיר בארגון הטרוריסטי קשר קשר עם מחמוד טיטי
ופעילים אחרים לבצע  פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים לשם
קידומו של הקשר והוצאתו אל הפועל בהנחתגנו של הנאשם גויס רמדאן צויד, צולם כמתבד מתאבד הכל על
פי הדפוס האופייני לארגון כפי שתואר באישומים קודמים והוסע למקום הפיגוע. לאחר הפיגוע הופץ
הצילום של המחבל לאמצעי התקשורת.

הודיית הנאשם:

ת/5:

"11. סיפקתי לסעיד רמדאן נשק לביצוע פיגוע התאבדות בתוך ירושלים".

ת/6:

"ש. איזה פיגוע בירושלים

ת. הפיגוע שבוצע על ידי סעיד רמדאן בחודש 9/2001".

"... ופיגוע ירושלים בוצע בכך שסעיד רמדאן פנה אל מחמוד אלטיטי ואמר שהוא חבר של ראאד כרמי
וברצונו לנקום את הריגתו ומחמוד הודיע לי ואז נפגשתי עם סעיד והבנתי שהוא רוצה לבצע את הפיגוע
והתקשרתי לאחמד ברגותי בראמאללה וביקשתי אותו שיוביל אותו לירושלים ואחמד הסכים לכך וסעיד נסע
ברכב ציבורי לרמאללה ושם נפגש עם אחמד ברגותי ולמחרת נסע סעיד לירושלים וירה לעבר קבוצת
שוטרים ואזרחים ובפיגוע הזה נהרגו שני אנשים וסעיד".

דבר מה נוסף:

אחמד ברגותי, ת/43אי:

"אני שאלתי את נאצר עוויס אם יוכל לעזור לי בכך שיביא לי מישהו שרוצה לעשות פיגוע ואני אשלח
אותו לירושלים שיעשה שם פיגוע. ונאצר אמר לי כי ישלח לי מישהו ולאחר כמה זמן הגיע אלי סעיד רמאדן
מכפר תל שכם שהוא כבן 25 ואמר שיעשה את הפיגוע אני פגשתי אותו ליד הקולנוע ברמאללה והתקשרתי
למחמד אבו סטחה שיבוא גם כן ויהיה איתנו ומשם הלכנו לסלון שסעיד הסתפר ואז התקשרנו לפראס
חטאוי ושאלנו אותו אם יוכל להכניס את הבחור הזה שרוצה לעשות פיגוע התאבדות לירושלים ופראס
אמר שהוא יכול לעשות זאת ואז הלך פראס חטאוי במכוניתו לראות את הדרך מה קורה. ואני עם אחמד

נבו הוצאה לאור בע"מ   nevo.co.il   המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

אבו סטרה לקחנו את סעיד שיפלל ויאכל וקניתי לו מכספי בגדים ונעליים חדשים ב- 1,200 ₪ ואחרי כן אני אמרתי למחמד אבו סטרה שיביא רובה M16 ו- 3 מחסניות עם כדורים שייתנן אותם לסעיד והוא הביא ואז הגיעו למקום פראס חטואי ומחמד סאמי במכונית האיסוזו של פראס וזה היה בצהרים שהם נסעו עם סעיד לירושלים. ואנחנו איחלנו להם בהצלחה והם נסעו עם סעיד. אני לא אמרתי להם לאן שיסעו, לאן שרצו הם היו יכולים לקחת אותו.

ש-ת. אנחנו לא צילמנו את סעיד בוידאו לפני הפיגוע כי נאצר עוויס עשה זאת לפני כן.

שאלה: בתחילת העדות אמרת לי שאינם מכיר את פראס חטואי מחמד סאמי וכל השאר ועכשיו אני רואה שפגשת בהם. איך זה.

תשובה: אני הכרתי אותם באוהל האבלים של ראאד כרמי ושם ראיתי אותם. בערך בארבע וחצי בצהרים שמעתי בחדשות שהיה פגוע ירי ברחוב יפו בירושלים ואני ידעתי שזה הפגוע של סעיד. ואז התקשרתי אל פראס חטואי ושאלתי אותו אם זה הם ... שלקחו את סעיד לרחוב יפו ופראס אמר שהם הורידו אותו ברחוב יפו ושמעו את היריות שירה לאחר שירד מהאוטו. למחרת היום לקחתי מעלי פרג' ברגוותי 1000 דולר ואמרתי לו שיצא האנשים לבצע פיגוע וכי אבד הנשק בפגוע. ונתתי לפראס חטואי מחמד אבו סטרה ומחמד סאמי כל אחד 100 דולר על הפגוע הזה. לאחר מכן הגיעו אלי פראס חטואי מחמד סאמי וא-נוף ונוף בחור ששמו חוסאם שתאדה מקטנדוה ושאלו אותי למה לא שילמתי להם על הפגועים שעשו ואמרתי להם שאבדוק זאת".

## אישום רביעי :

בתאריך 9.3.02 הגיעו המחבלים שאהדי אלנג'מי וסעיד בטא לאזור מלון "ג'ירמי" ברח' גד מכנס בנתניה כשהם חמושים ברובי M16 וברימוני רסס. השניים ירו בצרורות לעבר אולם הכניסה של המלון וכן השליכו שני רימוני רסס. השניים הצליחו לגרום בכוונה תחילה למותם של התינוקת אביה מלכה ז"ל בת שנה במהלך השתלטות כוחות הביטחון על השניים נורה גם ויחוא ישראל ז"ל בן 29  אשר שהה בקרבת מקום. כתוצאה ממעשה השניים אף נפצעו עשרות אנשים נוספים ולחלקם נגרמו חבלות חמורות (עיין עדויות; ע"ת מספר 2 תני"צ פרנקו אהרון ; מצגת ת\2 ; ע"ת מספר 10 ג.מ ; ע"ת מספר 16 רסי"ד מלכה ;הדו"ח ת\28 ; ת\26 (מסמכים רפואיים של ע"ת מסי' 11 ; ת\29-ת\30 (רובי סער) ; ת\31(תצלומים) ; ת\67 (חו"ד מומחה) ; ת\68(הודעת פטירה של מלכה אביה ז"ל) ; ת\69- ת\71 (חו"ד מומחה)).

לטענת המדינה הנאשם שהיה כאמור מפקד בכיר בארגון הטרוריסטי קשר קשר עם טיטי וחדר (ע"ת מספר 6) להוציא לפועל פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים ובמסגרת התארגנות זו שבוצעה בהנחתו של הנאשם ולשם הוצאתו אל הפועל גויסו שהאדי וסעיד  צוידו ברובה M16 שתים עשר מחסניות ושני רימוני יד צולמו קוראים את צוואתם כשהם מחזיקים רובה M16 והוסעו למקום הפיגוע. לאחר הפיגוע ועל פי הדפוס האופייני התקשר הנאשם לכלי התקשורת והודיע להם כי הארגון הטרוריסטי אחראי לפיגוע וביצע אותו.

הודיית הנאשם :

ת/5 :

"6. מסרתי נשקים לביצוע פיגוע בנתניה".

נבו הוצאה לאור בע"מ   nevo.co.il   המאגר המשפטי הישראלי