1

בתי המשפט

| | |
|---|---|
| תפ"ח 1158/02 | בבית המשפט המחוזי בתל-אביב-יפו |

<u>בפני הרכב:</u>

כב' השופטת שרה סירוטה, ס.נ.- אב"ד
כב' השופט אברהם טל
כב' השופט ד"ר עמירם בנימיני

<u>המאשימה</u>                    מדינת ישראל

המחלקה לעניינים פליליים, בטחוניים
ועניינים מיוחדים בפרקליטות המדינה
ע"י ב"כ עוה"ד ד. חן, ר. חזן, א. בר-
נתן

- נ ג ד -

<u>הנאשם</u>                    מרואן בן חטיב ברגותי

יליד 1959, ת.ז. 959251745
מרמאללה (במעצר מיום 15.4.02)
ע"י הסניגוריה הציבורית

# הכרעת – דין

## תוכן – עניינים

חלק ראשון: מבוא     עמי 2

חלק שני: מסכת הראיות     עמי 6

א.   הפת"ח התנגים וגדודי אלאקצא כאירגוני טרור     עמי 6

ב.   מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים
כנגד ישראל     עמי 8

ג.   עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם
מעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו     עמי 16

(1) נאצר עויס ......................................................... עמי 16
(2) נאצר נאג'י אבו חמיד ........................................... עמי 20
(3) אחמד ברגותי ...................................................... עמי 22
(4) מוחמד מצלח (אבו סטאחה) ................................. עמי 27
(5) ג'מאל אחויל ....................................................... עמי 27
(6) נאצר א-שויש ...................................................... עמי 28
(7) עלי עיאדיה ......................................................... עמי 30
(8) איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ועד ... עמי 30
(9) נאסר (חלום) נאג'י אבו חמיד ................................ עמי 34
(10) זיאד חמודה ....................................................... עמי 34
(11) ריאד עמור ....................................................... עמי 35
(12) נאצר חאג' ........................................................ עמי 35
(13) תחריר ברגותי ................................................... עמי 36
(14) אחמד מוצפר ..................................................... עמי 37
(15) שריף נאג'י ........................................................ עמי 37
(16) אמיד אבו רדאחה ............................................... עמי 38
(17) אשרף ג'יאבר ..................................................... עמי 39

ד.   דברי הנאשם בחקירתו וראיות נוספות בדבר תפקידו ומעורבותו בפיגועים
נגד ישראל     עמי 40

(1) אחריותו של הנאשם לפעילות חוליות הטרור ומידת
שליטתו בהן ......................................................... עמי 40
(2) מעורבותו האישית של הנאשם בפיגועי הטרור שבוצעו
חוליות שתחת פיקודו ............................................. עמי 44
(אא) הפיגוע בתחנת הדלק בגבעת זאב ....................... עמי 47
(בב) רצח הנזיר היווני במעלה אדומים ....................... עמי 48
(גג) הפיגוע במסעדת "סי פוד מרקט" בתל-אביב ......... עמי 48
(דד) ניסיון לפיגוע ליד קניון מלחה בירושלים ............ עמי 49
(3) אספקת כספים ואמל"ח לשם ביצוע פיגועי טרור ....... עמי 49
(4) סיוע למבוקשים ולמשפחות העצורים והחללים ........... עמי 51
(5) גיוס פעילים לארגוני הטרור והדרכתם .................... עמי 52
(6) קריאותיו הפומביות של הנאשם לבצע פיגועים כנגד ישראל ..... עמי 53

| | |
|---|---|
| ה. **הקשר של הנאשם לפיגועים נשוא כתב האישום** | עמ׳ 56 |
| (1) רצח טליה ובנימין כהנא ז״ל ליד עפרה........................... | עמ׳ 56 |
| (2) רצח עקיבא פשקוס ז״ל באזור התעשיה בעטרות............... | עמ׳ 57 |
| (3) רצח הנזיר היווני ציפופקטיס גרמנוס ז״ל במעלה אדומים....... | עמ׳ 59 |
| (4) רצח יניב ושרון בן שלום ז״ל ודורון יוסף סורו ז״ל בכביש 443 ..עמ׳ 59 | |
| (5) רצח מאיר וייזבוייב ז״ל בכביש מס׳ 9 בירושלים.............. | עמ׳ 61 |
| (6) רצח אליהו כהן ז״ל בפיגוע ירי בכביש 443 ליד גבעת זאב.......... | עמ׳ 62 |
| (7)  רצח יואלה חן ז״ל ליד תחנת דלק גבעונים בכביש 443............. | עמ׳ 63 |
| (8) רצח 6 אנשים באולם השמחות ״ארמון דוד״ בחדרה................ | עמ׳ 64 |
| (9) רצח שתי נשים בפיגוע ירי ברחוב יפו פינת לונץ בירושלים......... | עמ׳ 66 |
| (10) פיגוע ירי בשכונת נוה-יעקב בירושלים בו נהרגה השוטרת גלית | |
| ארביב ז״ל.................................................... | עמ׳ 66 |
| (11) רצח גד רגואן ז״ל במפעל בשקביץ בעטרות................... | עמ׳ 69 |
| (12) הפיגוע במסעדת ״סי פוד מרקט״ בתל אביב................... | עמ׳ 70 |
| (13) פיגוע ירי במלון ״גרמי״ בנתניה.......................... | עמ׳ 72 |
| (14) רצח קונסטנטין דנילוב ז״ל בבאקה אלע׳רביה................ | עמ׳ 73 |
| (15) פיגוע ירי בין עטרת לביר-זית.............................. | עמ׳ 74 |
| (16) ניסיון פיגוע בפאב ״ביאנקיני״ בירושלים................... | עמ׳ 75 |
| (17) פיגוע ירי בכביש 9 ליד הגבעה הצרפתית בירושלים............ | עמ׳ 77 |
| (18) ניסיון לפיגוע התאבדות בבית חנינא בירושלים.............. | עמ׳ 78 |
| (19) פיגוע ירי בכביש בית אל- פסגות......................... | עמ׳ 78 |
| (20) ניסיון פיגוע בקניון מלחה בירושלים...................... | עמ׳ 79 |

| | |
|---|---|
| **חלק שלישי: הערכת הראיות ומשקלן** | עמ׳ 81 |
| **חלק רביעי: ניתוח משפטי ומסקנות** | עמ׳ 92 |
| 1. **פעילות וחברות בארגון טרוריסטי** | עמ׳ 92 |
| 2. **אחריותם של מבצע בצוותא, משדל ומסייע והאבחנה ביניהם** | עמ׳ 94 |
| א. מבצע בצוותא לעומת מסייע........................... | עמ׳ 96 |
| ב. עבירת הסיוע....................................... | עמ׳ 104 |
| ג. עבירת השידול והאבחנה בין מבצע בצוותא למשדל............ | עמ׳ 112 |
| ד. אחריותו של מנהיג חבורה עבריינית כמבצע בצוותא או כמשדל... | עמ׳ 117 |
| 3. **מסקנות בעניין אחריותו של הנאשם כמבצע בצוותא, משדל ומסייע** | עמ׳ 123 |
| א. פיגוע הרצח בתחנת הדלק בגבעת זאב......................... | עמ׳ 135 |
| ב. רצח הנזיר היווני ציפופקטיס גרמנוס ז״ל במעלה אדומים......... | עמ׳ 136 |
| ג. פיגוע הרצח במסעדת ״סי פוד מרקט״ בתל אביב................ | עמ׳ 138 |
| ד. ניסיון פיגוע ליד קניון מלחה בירושלים....................... | עמ׳ 139 |

| | |
|---|---|
| **חלק חמישי: סיכום** | עמ׳ 139 |

# הכרעת – דין

**חלק ראשון:  מבוא**

1.    בתאריך 14.8.2002 הוגש נגד הנאשם כתב-אישום, המייחס לו מספר עבירות של **רצח בכוונה תחילה** לפי סעיף 300(א)(2) לחוק העונשין, התשל"ז-1977 (**להלן: "חוק העונשין"**); **סיוע לרצח** לפי סעיף 300(א)(2) ביחד עם סעיף 31 לחוק העונשין; **שידול לרצח** לפי סעיף 300(א)(2) יחד עם סעיף 30 לחוק העונשין; **ניסיון לרצח** לפי סעיף 305(1) לחוק העונשין; **קשירת קשר לביצוע פשע** לפי סעיף 499 לחוק העונשין; **פעילות וחברות באירגון טרור** לפי סעיפים 2 ו-3 לפקודת מניעת טרור, התש"ח-1948.

2.    כתב-האישום מייחס לנאשם שותפות, אירגון וביצוע של פעולות-טרור כגד מטרות ישראליות, אשר החלו בספטמבר 2000 במסגרת אירועים המכונים "אינתיפאדת אלאקצא" (להלן: **"האינתיפאדה"**). על-פי הנטען בכתב-האישום, עמד הנאשם בראש אירגוני-טרור באיזור יהודה ושומרון (איו"ש): אירגון ה"פתיחי" (להלן: **"הפת"ח"**), אירגון ה"תנזים" השייך לפת"ח (להלן: **"התנזים"**) ואירגון "גדודי חללי אלאקצא", הכולל התארגנויות של פעילי טרור של התנזים שביצעו פעולות טרור כנגד מטרות ישראליות (להלן: **"גדודי חללי אלאקצא"**). הנאשם היה זה שתיאם וקישר בין גורמי השטח הבכירים בשלושת האירגונים הנ"ל (כולם יחד יכונו להלן: **"אירגוני הטרור"**), אשר היו אחראים לביצועו של פעולות-טרור נגד מטרות ישראליות.

כתב האישום מפרט את שמותיהם של שמונה פעילי טרור בכירים, שפעלו תחת הנחגתו של הנאשם בביצוע פעולות הטרור, והם נאסר עויס (להלן: **"עויס"**), אחמד ברגותי, נאצר אבו חמיד (להלן: **"אבו חמיד"**), ראא"ד כרמי (להלן: **"כרמי"**), מהנד דירייה (אבו חלאווה) (להלן: **"מהנד"**), מחמד מצלח (אבו סטחה) (להלן: **"אבו סטחה"**), מנצור שרים (להלן: **"שרים"**) ומחמוד טיטי (להלן: **"טיטי"**).

הנאשם ומפקדי השטח גייסו פעילים לאירגוני הטרור, הפעילו אותם ודאגו לספק להם אמצעי לחימה (אמל"ח) וכסף. הנאשם עסק גם בהכשרת פעילי הטרור למטרתם ובגיוס כספים לאירגוני הטרור. כמו כן שידל הנאשם ועודד את פעילי הטרור לבצע פיגועים כנגד מדינת ישראל באמצעי התקשורת, בכינוסים שונים ובאמצעות הפצת כרוזי הסתה.

כתב-האישום מייחס לנאשם ב**סעיפים 8-15** מעורבות ואחריות לבצוע 37 פיגועים ופעולות-טרור, אשר בוצעו ברובם בתחומי מדינת-ישראל על-ידי מפקדי השטח והפעילים והחודשים דצמבר 2000 ועד אפריל 2002, ושבהם קופחו חייהם של רבים מאוזרחי מדינת-ישראל וחייליה, ונפצעו רבים אחרים. חלק ממעשי הטרור מפורטים בכתב האישום, ורובם מפורטים רק בנספח לכתב האישום.

3.    **ראיות התביעה כוללות** את עדויותיהם של אנשי מערכת הביטחון, חוקרי השב"כ ואנשי המשטרה שעסקו בחקירת הנאשם; עדויותיהם של אזרחים וגורמים אחרים שהיו עדים לפיגועים נשוא כתב האישום; מסמכים שנתפסו על ידי צה"ל במשרדי הפת"ח ובמשרדי של הנאשם; חוות דעת של מומחים ממערכת הביטחון בעניני פעילות ארגוני הטרור ומעמדו ותפקידו של הנאשם בהם; עדויותיהם של פעילים בארגוני הטרור והדברים שמסרו בחקירתם בשב"כ ובמשטרה; אמרות הנאשם שהתועדו על ידי אנשי השב"כ בדו"חות כתובים, ואשר חלקם הוקלטו ותומללו; דברים שאמר הנאשם למדובבים שהוכנסו לתאו במהלך חקירתו ולמקורבו אחמד ברגותי שנעצר עמו; דברי הנאשם בכלי התקשורת לפני מעצרו, והודאות הנאשם במשטרה.

תמלילי חקירתו של הנאשם בשב"כ הוגשו על ידי חוקרי השב"כ שניהלו את החקירה שהוקלטה וזיהו את קולו של הנאשם בה ("מופז" בעמי 58, "נדב" בעמי 79, "סמיח" בעמי 85-86 ו"דני" בעמי 90). שיחתו של הנאשם עם אחמד ברגותי הוגשה על ידי החוקר "רוברט" (עמי 65). הקלטות מחקירת הנאשם ומחקירת המדובבים פלוני 1 ופלוני 3 תומללו על ידי נתן בסו (עמי 174).

חוקרי השב"כ שהעידו אישרו את נכונות הכתוב בזכ"דים שרשמו במהלך חקירתם של הנאשם (זכ"דים ת/6 - ת/96). מדובר בדו"חות שנרשמו בעברית לגבי חקירה שהתנהלה בעברית ובערבית

(הנאשם דובר עברית טובה), בהם נרשמו עיקרי הדברים שנאמרו על ידי הנאשם (ראה החוקר "סטיב" בעמי 53, החוקר "אמילי" בעמי 55 והחוקר "רון" בעמי 60).

4.    אשר להודעות הנאשם במשטרה, הרי שהנאשם הודיע בכל חקירותיו במשטרה - בניגוד לדרך בה נהג בעת חקירותיו בשב"כ - כי הוא כופר בזכותה של המשטרה לחקור אותו, ולכן סירב לענות על שאלות החוקרים (ראה הודעות ת/99-ת/109). לפיכך, הודעותיו של הנאשם כוללות שאלות רבות שהובאו לו על ידי החוקרים, וסירובו להשיב עליהן. במקרים בודדים ביותר התייחס הנאשם בקצרה לדברים שנאמר לו החוקר, ובהזדמנויות אלו הכחיש לחלוטין את כל הטענות שהובאו לו - גם אלה בהם הודה בחקירתו בשב"כ. הנאשם הכחיש כי היה מנהיג של גדודי חללי אלאקצא והתנגד (הודעה ת/101 עמי 6, הודעה ת/105 עמי 2, הודעה ת/106 עמי 3); הכחיש כי הכיר את פעילי הטרור שהעידו כי היו בקשר עמו (כפי שיפורט להלן), ואפילו הכחיש כי הכיר את ראיד כרמוי (ת/104 עמי 8). כל אלו הוכחו, כפי שיבוארה להלן, לא רק מפי פעילי השטח, אלא גם מפי הנאשם עצמו,   מהמסמכים שנתפסו במשרדו, אשר הנאשם הכחיש בחקירתו כל קשר אליהם, וטען כי כתב ידו לא מופיע עליהם (ראה הודעות ת/108-ת/109).

הודעותיו של הנאשם הוגשו על ידי החוקרים דוד זריהן ורפי נוריאל (עמי 113, 38), אשר הסבירו כי הנאשם סירב לחתום על האזהרה ועל ההודעה, וכי הוא נחקר בעברית. זריהן אף העיד כי הנאשם סירב למסור טביעת אצבע ולהטבעם. הנאשם אמר באופן כללי בהודעתו ת/106 כי כל ההאשמות כנגדו אינן נכונות, וכי הוא אחד מכל אשמה.

5.    בפתח משפטו העלה הנאשם טענות מקדמיות הנוגעות לסמכות בית משפט זה לשפוט אותו, ואלה נדחו בהחלטת בית המשפט מיום 19.01.03 (עמי 1-34 לפרוטוקול). הנאשם בחר שלא להסתייע בשירותיו סנגור, ואף דחה את נמרצות ובעקביות כל ניסיון של בית המשפט לשכנע להיעזר בסניגוריה הציבורית או בסניגור מטעמו.

בית המשפט הטיל אמנם על הסניגוריה הציבורית לייצג את הנאשם, חרף בקשותיה החוזרות ונשנות להשתחרר מייצוגו, ולמעשה היא מייצגת את הנאשם גם כיום ונכחה בכל הדיונים. ואולם הסניגוריה הציבורית בחרה להיעתר לבקשת הנאשם שלא להעלות טענות כלשהן מטעמו במהלך המשפט, לרבות טענות משפטיות, ואף לא לחקור את העדים.

כך התנהל ההליך על פי בחירתו של הנאשם, אשר ממשיך לכפור בסמכות בית המשפט לשפוט אותו. בנסיבות אלו בחר הנאשם גם שלא להגיב על כתב האישום. כמו כן נמנע הנאשם מלהעיד בעצמו או להביא עדים מטעמו. עם זאת, הנאשם הגיב מידי פעם על דברי העדים או על טענות שטענה ב"כ המאשימה במהלך הדיון, ודבריו נרשמו בפרוטוקול כלשונם. בנוסף הגיב הנאשם על סיכומי התביעה בעל פה (שהוגשו גם בכתב), בנאום סניגוריה שנשא במסגרת הסיכומים בעל פה, ואשר לא התייחס לגופן של ההאשמות שהועלו כנגדו. למותר לציין כי הנאשם קיבל בעצמו, ובאמצעות הסניגוריה הציבורית, את כל חומר הראיות, הפרוטוקולים והסיכומים.

6.    העבירות נשוא כתב האישום הן ברובן "עבירות פנים" הנוגעות לפיגועים שבוצעו בישראל, וחלקן "עבירות חוץ", שבוצעו בתחומי האיזור (קרי: יהודה ושומרון). ואולם, כפי שהבהרנו בהחלטת שניתנה בנוגע לטענותיו המקדמיות של הנאשם, מוסמך בית משפט בישראל לדון בעבירות חוץ כנגד בטחוני המדינה, או נגד אזרח או תושב ישראלי, יהא מקום ביצוע העבירה אשר יהא (סעיף 13(א)-(ב) לחוק העונשין, תשל"ז-1977). זו היא אותה "תחולה פרוטקטיבית", אשר נועדה להגן על אזרחיה ותושבים ישראלים כנגד פעולות טרור הנעשים בחוצותן ובגיבוזן של מדינות אחרות (ש"ז פלר, מ. קרמניצר, **"תגובה לחיבור בגנות התחולה הנציונלית של דיני העונשין"**, פלילים ה1 (1996) 65, בעמי 83, והשווה דעתו של י. שחר, שם בעמי 5). עוד פסקנו בהחלטה שניתנה בטענותיו המקדמיות של הנאשם, כי לא נראה שהתנאים הקבועים בסעיף 14(ב) לחוק העונשין רלבנטיים למקרה זה, אם הם חלים כלל על הסמכות הפרוטקטיבית שבסעיף 13 לחוק (להבדיל מהסמכות

הפרסונלית שבסעיף 14), שכן הרשות הפלסטינאית איננה מדינה. העבירות המיוחסות לנאשם בכתב האישום הן עבירות כנגד בטחון המדינה, כנגד אזרחיה ותושביה, ועל כן הן נופלות במסגרת סעיף 13 לחוק העונשין, ובית משפט זה מוסמך לדון בהן.

## חלק שני:  מסכת הראיות

### א.    הפת"ח, התנזים וגדודי חללי אלאקצא כאירגוני טרור

7.    ראש חטיבת המחקר באגף המודיעין של צה"ל, תא"ל י. קופרווסר, הגיש במהלך עדותו (עמ' 38) חוות דעת בה התייחס לפעילותם של הפת"ח, התנזים וגדודי חללי אלאקצא (ת/1). אל חוות הדעת צורפו מסמכי שלל שנתפסו על ידי צה"ל במבצע "חומת מגן" הנוגעים לעניין זה. הפת"ח (ראשי תיבות במהופך בערבית של "התנועה לשחרור פלסטין") דגל מאז יסודו על ידי יאסר ערפאת בשנת 1959 במאבק מזוין כנגד ישראל, אשר התבטא בביצוע פיגועי טרור נגד יעדים ישראליים וכחו"ל. לאחר חתימת הסכמי אוסלו נדחק עיקרון "המאבק המזוין" למקום משני, אך נותר כאופציה להשבת מטרות הארגון במקרה שהמו"מ עם ישראל לא יצלח. עם פרוץ האינתיפאדה השנייה בחודש ספטמבר 2000, הוביל הפת"ח את פיגועי הטרור בשטחים, וזאת באמצעות שתי ועדות עליונות המנהלות את הפעילות - האחת באזור יהודה ושומרון, והשניה באזור רצועת עזה. בראש הועדה העליונה של אזור יהודה ושומרון עמד הנאשם עד ליום מעצרו (סעיפים 1-3 לחוו"ד).

הדרג המבצע של הפת"ח כלל את פעילי השטח של התנועה - התנזים (ארגון - בערבית). פעילי התנזים מהווים את חוד החנית בפעילות החבלנית של הפת"ח כנגד ישראל. גדודי חללי אלאקצא הוא שם כיסוי להתארגנויות טרור של הפת"ח, אשר נוטלות אחריות פומבית למעשי הטרור. אנשי "הגדודים" הם למעשה פעיליהם של הפת"ח, כאשר מרבית ההתארגנויות רואות בנאשם מקור סמכות מרכזי לפעילותן (סעיפים 4-5 לחוו"ד).

התנזים וגדודי חללי אלאקצא מהווים, על פי חוות דעתו של תא"ל קופרווסר, את הזרוע הצבאית הבלתי ממוסדת של הפת"ח, שבראשה עמד הנאשם. מסמך שלל המצורף כנספח א' לחוו"ד של תא"ל קופרווסר הוא מכתב החתום בידי הפת"ח וגדודי חללי אלאקצא גם יחד.

מסמכי שלל אחרים שצורפו לחוות הדעת מראים כי גדודי חללי אלאקצא פונים בבקשה לסיוע כספי מיאסר ערפאת (מסמך 2), וכי הפת"ח וגדודי חללי אלאקצא חתומים על כרוזים המשבחים פעילות טרור שבוצעה בתחומי ישראל (מסמכים 3, 5). במסמך 6 שצורף לחוו"ד, ואשר נשלח ביום 8.5.01 מאת גדודי חללי אלאקצא אל הנאשם, מופיע פירוט פעילותם של גדודי חללי אלאקצא במחוז גינין (כולל פיגוע באום אלפאחם), ובקשה לסיוע באמצעי לחימה וכסף לשם המשך ביצוע של פעילות זו. מסמכים אחרים של גדודי חללי אלאקצא שהופנו ליאסר ערפאת, כוללים בקשות לסיוע למבוקשים הנרדפים על ידי ישראל ולמשפחות החללים (נספח ב' ומסמכים 4-2 לנספח זה). חלק מן המסמכים נכתבו על ידי הנאשם. יצויין כי כינויו של הנאשם היה, על שם בנו הבכור, "אבו אלאקסאם" (הודעת הנאשם ת/107 עמ' 1, והדרך בה פנה אחיו אל הנאשם בעמ' 164).

8.    על פי חוות דעתו של תא"ל קופרווסר ביצעו אנשי הפת"ח למעלה מ- 1,200 פיגועים כנגד ישראל (נכון ליום 18.8.02), בהם נהרגו 176 ישראלים ונפצעו רבים אחרים. פיגועים אלו כוללים התאבדות, וירי ממרגמות ונשק קל. במהלך האינתיפאדה עברו התארגנויות הטרור של הפת"ח יותר ויותר לביצוע פיגועי התאבדות בתחומי ישראל (סעיף 5 לחוו"ד). בחודשים שקדמו למבצע "חומת מגן" ביצעו גדודי חללי אלאקצא פיגועי התאבדות בחדרה, ירושלים, תל אביב, מחולה, מחנה 80, מחסום מכבים, נתניה, אשדוד, כפר סבא ואפרת, ובעקבות כך הוכנסו לרשימה האמריקאית של ארגוני הטרור ביום 27.3.02 (סעיף 10 לחוו"ד ונספח ג' המפרט את פיגועי ההתאבדות שבוצעו על ידי תנועת הפת"ח).

**9.** לגבי חוות הדעת של תא"ל קופרווסר יש לומר, כי מבחינת דיני הראיות איננו רשאים
להסתמך על הערכות ומסקנות מודיעיניות אשר מבוססות על מקורות מידע שונים שלא הובאו בפני
בית המשפט, בהיותם עדות שמיעה. נוכל לסמוך על חוו"ד זו רק במידה שהיא תואמת ראיות
קבילות אחרות שהובאו בפנינו. אולם, פעילות הטרור בחסות הפת"ח של שלושת הארגונים הנ"יל
עולה בבירור מראיות ישירות רבות שהובאו במשפט, כולל הודאות שמסרו בחקירותיהם הנאשם
ופעילי הטרור, כפי שיפורט בהמשך הכרעת הדין.

נאצר אבו חמיד, שהיה אחד ממפקדי השטח הבכירים ביהודה ושומרון, סיפר בהודעתו במשטרה
(ת/149(א), בעמ׳ 3-2, 8-7, 17-13), על הקמת גדודי חללי אלאקצא ביום 1.1.01, על מנת שיחוו
מיליציה של הפת"ח, ויבצעו פיגועים כנגד מתנחלים וחיילי צה"ל. הוא מפרט בהודעתו הנ"ל (וכן
בהודעתו ת/149 (ג)) את הפיגועים שבוצעו על ידו ועל ידי אנשיו כנגד מטרות אזרחיות וצבאיות של
ישראל, תחת הנהגתו ובסיועו של הנאשם (כפי שיפורט בהמשך).

**10.** גם מדברים שאמר הנאשם בחקירתו, וממסמכים שנכתבו בכתב ידו, ניתן ללמוד על
פעילותם של ארגוני הטרור הנ"ל. הנאשם הסביר את דרך פעולתו של החוליות המכונות "גדודי
חללי אלאקצא", שלדבריו ביצעו "פעילות צבאית" (ת/19 סעיף 14, שהוגש ואושר על ידי החוקר
"מופד" בעמ׳ 58). כך גם הסביר הנאשם בחקירתו את הדרך שבה נוצרו גדודי חללי אלאקצא באזור
יהודה ושומרון, ופעלו בצורה מפוזרת, וטען כי הפת"ח לא פיקח על פעילותם; אך הוא הודה כי
חוליות אלו פנו אליו לקבלת כסף, משום שראו בו "**האחראי של פת"ח בגדה המערבית**" (תמליל ת/
98 (ה) עמי 61-60). כפי שיבואר בהמשך, הפנו פעילי הטרור מגדודי חללי אלאקצא את בקשותיהם
לסיוע כספי לשם רכישת נשק וביצוע פיגועים אל הנאשם, והלה היה פונה בשמם ועובדים אל יו"ר
הרשות הפלסטינאית ומנהיג הפת"ח, יאסר ערפאת. מכאן ברור הקשר של גדודי חללי אלאקצא
לארגון הפת"ח, והקשר של הנאשם לגדודים אלו.

**ב.    מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים כנגד ישראל**

**11.** תא"ל קופרווסר הגיש בעדותו חוו"ד נוספת, המתייחסת למעורבותו של הנאשם בטרור (ת/
2). לחוו"ד זו צורפה שורה של נספחים הכוללים ראיונות עם הנאשם באמצעי התקשורת השונים
ומסמכים שכתב הנאשם או שנמצאו במשרדו. גם חוות דעת זו כפופה להערה שפורטה בסעיף 9
לעיל, בנוגע לקבילותו של הערכות מודיעיניות הנסמכות על מקורות מידע שלא פורטו ולא הובאו
בפנינו, ולכן גם בנוגע זה נזקק לראיות עצמאיות וקבילות שהובאו במשפט.

**12.** בחוות הדעת של תא"ל קופרווסר ת/2 נאמר כי הנאשם היה עד למעצרו ראש הועדה
העליונה של הפת"ח ביהודה ושומרון, ולפיכך שימש כמנהיג הפת"ח בגדה. זאת ניתן ללמוד מן
המסמכים השונים שכתב הנאשם ושנכתבו אליו, ואשר צורפו לחוות הדעת ת/1 ות/2. בתפקידו
הנ"ל היווה הנאשם מקור סמכות מרכזי לבכירי הפת"ח, וציינו מקשר בין ראש הרשות
הפלסטינאית, יאסר ערפאת, לבין דרגי השטח בתנועה (סעיפים 2-1).

עוד נאמר בחוות הדעת הנ"ל (סעיף 4), כי עם פרוץ האינתיפאדה בחודש ספטמבר 2000, תפס
הנאשם חלק מרכזי ביותר בהובלת הטרור נגד ישראל על ידי גורמי פת"ח ובכלל. מעורבותו באה
לידי ביטוי בדרכים שונות: **ראשית**, הנאשם היווה מקור השראה והתווה את מדיניות הפיגועים,
באמצעות פגישות אישיות עם פעילי הטרור של תנועת הפת"ח והתבטאויות פומביות. **שנית**,
הנאשם היה מקור סמכות ומימון לפעילי הטרור של תנועת הפת"ח: הוא נתפס בעיני גדודי חללי
אלאקצא כמנהיג המרכזי בפעילותם, שימש כצינור קשר בינם לבין יו"ר הרשות הפלסטינאית
והעביר לרשותם סכומי כסף המסתכמים בעשרות אלפי שקלים לצורך פעילות הטרור. **שלישית**,
הנאשם העביר הנחיות ישירות לפעילי הטרור - הן במישור האסטרטגי, והן במישור הטקטי הנוגע
לפיגועים נקודתיים.

**13.** הנאשם לא הסתיר בחקירתו בשב"כ את עמדתו הברורה, לפיה תנועת הפת"ח חייבת להוביל את "המאבק המזוין כנגד ישראלי, וכי זו הדרך היחידה להשגת מטרות התנועה עם הפלסטיני לאחר כשלון תהליך השלום, ולאחר שהנאשם עצמו היה פעיל שנים רבות (זכ"יד ת/59 סי 2-5, שהוגש ואושר על ידי החוקר "ואדי" בעמי 96). הוא הבהיר כי כאשר הוא משתמש בביטוי "מאבק מזוין", הוא מתכוון לפיגועים (תמליל חקירה ת/98יא עמי 2-3). הנאשם הסביר כי מנהיגי הפת"ח חששו מהיחלשות כוחם ברחוב הפלסטיני למול התנועות האיסלאמיות, דבר שדרבן אותם לנקוט קו של פיגועים כנגד ישראל (זכ"ד ת/21 סעיף 5, שהוגש ואושר על ידי החוקר "רוברטי" בעמי 63 (בטענות נרשם בפרוטוקול ת/41); זכ"יד ת/23 סי 5, שהוגש ואושר על ידי החוקר "דני" בעמי 90 ; זכ"יד ת/27 סי 10-12 וזכ"יד ת/55 סי 3 שהוגשו ואושרו על ידי החוקר "סמית" בעמי 85 ; זכ"יד ת/30 סי 8-12 וזכ"יד ת/58 סי 5 שהוגשו ואושרו על ידי החוקר "אמילי" בעמי 54 ; זכ"יד ת/40 סי 15 שהוגש ואושר על ידי החוקר "מופז" בעמי 58 ; זכ"יד ת/70 סי 3 שהוגש ואושר על ידי החוקר "סטיב" בעמי 53).

הנאשם אמר בחקירתו כי **עמדתו המוצהרת הינה מאבק מזוין מול הכיבוש הישראלי, ומי שיש לו נשק שיבצע פיגועים זה הקו הכללי"** (ת/23 סי 5, וכן ראה זכ"יד ת/6 סי 11-12, שהוגש ואושר על ידי החוקר "רוברטי" בעמי 62). הוא הסביר כי לפי השקפתו פיגועים שיכאיבו לישראל יקדמו את השלום, ויגרמו לישראלים להבין שיש להם מה להפסיד (ת/40 סעיף 15, ות/70 סעיף 4). הנאשם הבהיר כי מבחינתו אזרחים ישראלים החיים בהתנחלויות הם אויב שיש לפגוע בו (זכ"יד ת/63 סי 16, שהוגש ואושר על ידי החוקר "נאור" בעמי 82). הוא אף אמר כי פיגועים כנגד מתנחלי יהודה ושומרון הם לגיטימיים, גם כאשר מדובר בנשים וילדים (זכ"יד ת/6 סי 13, שהוגש ואושר ע"י החוקר "רוברטי" בעמוד 62, זכ"יד ת/77 סי 2 שהוגש ואושר על ידי החוקרים "צדוק" ו"אופיר" בעמי 83, 87).

הנאשם חזר והדגיש במהלך חקירתו כי בויכוח שהתנהל בתוך הרשות והפת"ח בעניין סוג הפיגועים כנגד ישראל - דגלו ערפאת והוא בקו הקובע כי יש להתמקד בפיגועים כנגד צה"ל והמתנחלים, בעוד שמנהיגים כמו אבו עלא ואבו מאזן התנגדו לכל סוג של אלימות ; רק מעט מאנשי הפת"ח תמכו בפיגועים בתוך ישראל (ת/27 סעיפים 12-13 ; ת/30 סעיף 8 ; ת/70 סעיף 3). חרף התנגדותם של ערפאת והנאשם לפיגועים בתוך ישראל, הם איבדו שליטה על החוליות ופעילי השטח במהלך האינתיפאדה (זכ"יד ת/55 סי 3'י, שהוגש ואושר על ידי החוקר "סמית" בעמי 85).

**14.** עמדתו של הנאשם כמפורט לעיל באה לידי ביטוי גם בדבריו בחקירה שתוענללו. לגבי עמדתו של הנאשם כי אין לבצע פיגועי התאבדות בתוך ישראל, הוא הסביר כי פגיעה בהתנחלויות כמוה כפגיעה בבבא, ולכן בעניין זה לא היה ויכוח בתוך הפת"ח; אך הוא הודה כי בתקופה האחרונה שלפני מעצרו נטל הפת"ח לבצע גם פיגועי התאבדות בתוך ישראל, ואף אישר כי הפת"ח נגרר לתוך פעילות זו כדי שלא להשאיר את השליטה בשטח לאירגונים האיסלאמים (ת/98ד עמי 27-29). הנאשם הסביר כי הוא באופן אישי הסתייג מכל פעילות בתוך ישראל, אך תמך "במאבק המזוין כנגד הכיבוש הישראלי", ואף עשה זאת בצורה פומבית בטלוויזיה (ת/98ז עמי 7, 10).

הנאשם אישר כי בחמשת החודשים האחרונים שקדמו למעצרו נטל הפת"ח תפקיד מרכזי בהסלמת רמת האלימות, והנהיג את המלחמה ; הנאשם לא אישר כי כיחד כי הוא נטל חלק בכך  (ת/98יב עמי 35, ת/98ה עמי 3-4).

הנאשם הדגיש בחקירתו כי הוא תמך בהסכם השלום, ופעל למענו במשך 10 שנים, אך ההסלמה נבעה לדבריו מהעדר תקווה להשגת פתרון פוליטי עם ראש הממשלה שרון (ת/98יב עמי 44-45). הנאשם אף הביע דעתו כי הפלשתינאים טעו כאשר דחו את הצעות ישראל, ועוד יותר מכך את הצעת הנשיא קלינטון, בועידת "קמפ דייוד", שכן לו קיבלו את ההצעות הללו - היתה להם היום מדינה עצמאית (זכ"יד ת/95, שהוגש ואושר על ידי החוקר "אופיר" בעמי 87).

15. על גישתו של הנאשם בנושא הפיגועים, ועל תפקידו של הפת"ח בביצוע פיגועים כנגד
ישראל, ניתן ללמוד גם משיחות שניהל הנאשם עם המדובבים שהוכנסו לתאו. המדובב שכונה
"פלוני 1", הציג עצמו בפני הנאשם כפלשתינאי משכם, הוא מסר לחוקרי השב"כ את הדברים
שאמר לו הנאשם לאחר קיום השיחות, ואלו נרשמו בוכדי"ים של חוקרי השב"כ שהעידו במשפט
(יירוברטיי בעמי 154, יימיקיי בעמי 155, יאופירי בעמי 156 וימופזי בעמי 157), וכן העיד פלוני 1
עצמו (עמי 101-107). פלוני 1 העיד כי הוא קרא את כל הדו"חות שרשמו אנשי השב"כ על שיחותיו
עם הנאשם, ואישר את תוכנם (עמוד 105). בדרך דומה פעל והופעל המדובב פלוני 3, שזיהה את
קולו של הנאשם בקלטת ת/124ב (ראה עדותו בעמי 107-110, ומוצגים ת/122-ת/125).

על פי עדותו של פלוני 1, סיפר לו הנאשם שהוא היה זה שהקים את גדודי חללי אלאקצא והיה
אחראי עליהם (עמי 106). בזכ"ד שנרשם מפיו (ת/117 שהוגש ואושר על ידי החוקר "רוברט" בעמי
154), אמר פלוני 1 כי הנאשם אמר לו שהאינתיפאדה למעשה היתה מתוכננת לאור המצב המדיני,
הרחבת ההתנחלויות והמשך הכיבוש והלחץ על הפלסטינאים בשטחים, וכי ביקורו של אריאל שרון
בהר הבית היה רק "הקש ששבר את גב הגמל", והצית את האינתיפאדה שהיתה צפויה ממילא
(ראה גם זכ"ד ת/25 סי 18, שהוגש ואושר על ידי החוקר "מופזי" בעמי 58).
לאחר האירוע בהר הבית, ביקשו מגנגוני הביטחון של הפת"ח מערפאת להורות על הפסקת
האינתיפאדה, וערפאת לא הגיב. הנאשם עצמו סיפר כי עזב בזעם את הישיבה לאור בקשת
המגנגונים, וכי הוא שנוא עליהם משום ש"ימשך את העם להשלמת המצב". הנאשם אמר לפלוני 1
כי מטרת האינתיפאדה הייתה פגיעה בחיילים ובמתנחלים כדי לגרום לעזיבתם, וכדי להוכיח
לעולם שהפלסטינאים נלחמים בכיבוש. ואולם לאחר שערפאת החלק במדיניות החיסולים, ובעיקר
לאחר שפגעה בראיד כרמי, עבר הפת"ח לפעול בתוך ישראל במטרה לפגוע באזרחים, על מנת לפגוע
בכלכלת ישראל ובתיירות, ולהפעיל לחץ על הרחוב בישראל שילחץ על הממשלה לסגת מהשטחים
(שם, סי 12-13, 17, 20-21). כמו כן אמר הנאשם לפלוני 1 כי מבחינתו הפיגועים מהווים הגנה
עצמית של הפלסטינים, אשר מוכנים להושיט יד לשלום, וכי פיגועי ההתאבדות נובעים מן הכיבוש
ומן המצב של הפלסטינאים בשטחים (זכ"ד ת/110 סי 22, 27).

עמדתו של הנאשם התומכת בהמשך האינתיפאדה באה לידי ביטוי גם במכתב ששלח ליאסר
ערפאת ביום 31.12.00 (ת/5 (42אא)).

16. באשר למדיניות הפיגועים של הפת"ח, הסביר הנאשם בחקירתו כי כאשר ערפאת היה
מעונין בהפסקת אש, הוא היה דואג להעביר הנחיה זו לגורמים רבים, ובהם הנאשם; אך כאשר
היה מעונין בהמשך הפעולות הוא דאג שהפעילים, כולל הנאשם, יבינו זאת מההגובה, ובעיקר אי-
התגובות שלו. הנאשם אמר: "אם הוא (ערפאת) למשל, לא רוצה בהפסקת אש הוא מסתדר אחרת.
לא אומר שום דבר" (זכ"ד ת/24 סי 3ב, שהוגש ואושר על ידי החוקר "סמית" בעמי 85, ותמליל
חקירתו של הנאשם ת/98ט עמי 32-33). הנאשם אמר שערפאת מעולם לא הורה לו בצורה מפורשת
לבצע פיגועים. אך הוא הוסיף כי  מהעובדה שערפאת התנגד לביצוע פיגועים בתוך ישראל בלבד,
ניתן היה להבין שהוא תומך בפיגועים בשטחים, ולכן גם לא הורה להפסיקם; ערפאת אמר
בתקשורת כמה פעמים כי "מיליון שהידים בדרכם לירושלים", והנאשם שאל באוזני רטורי האם
אין זו הצהרה התומכת בביצוע פיגועים (זכ"ד ת/60 סי 4-7 שהוגש ואושר על ידי החוקר "אמילי"
בעמי 54; זכ"ד ת/61 סי 8-1, שהוגש ואושר על ידי החוקר "מיקי" בעמי 81; זכ"ד ת/62 סי 3-5
שהוגש ואושר על ידי החוקר "דני" בעמי 90).
הנאשם הסביר כי לא היה צורך בהוראות ישירות של ערפאת לביצוע פיגועים, שכן הדברים היו
מובנים מבין השורות (זכ"ד ת/63 סי 11-13 שהוגש ואושר על ידי החוקר "נאור" בעמי 82). הנאשם
הוסיף כי גם האינתיפאדה לא פרצה בהוראתו של ערפאת, אך היא לא היתה ממשיכה להתקיים
אלמלא תמיכתו בה, אף כי הוא לא היה צריך לתת הנחיה מפורשת לביצוע פיגועים (זכ"ד ת/64
שהוגש ואושר על ידי החוקר "רוברט" בעמי 62, ות/66 שהוגש ואושר על ידי החוקר "אמילי" בעמי

54). עוד ציין הנאשם כי הבין את תמיכתו של ערפאת בפיגועים גם לאור העובדה שערפאת היה
מאשר לו את הבקשות הכספיות שהגיש עבור פעילי השטח של הפת"ח שביצעו פיגועים (זכ"יד ת/70
סי 17ח/, שהוגש ואושר על ידי החוקר "סטיב" בעמי 53). הנאשם תיאר את הקשר שלו עם ערפאת
כ"איש/ ו/ש/ר" (תמליל שיחה ת/98ח עמי 55).

גם לנאשם, מסתבר, היתה דרך משלו להודיע לאנשי החוליות על הפסקת הפיגועים ועל חידושם.
הוא הסביר בחקירתו כי כאשר רצה בהפסקת אש היה מתקשר לחוליות הגדולות, אם כי קרה שהיו
אנשים שלא שמעו להוראתו ; כאשר הנאשם היה מעוניין בחידוש האש הוא היה מודיע על כך
בטלויזיה, כאשר קרא "למאבק מזויין". כאשר נשאל כיצד היה מודיע על רצונו בחידוש האש,
השיב הנאשם :

> **"לא רוצה אש, אני מדבר בטלויזיה אם אני רוצה שלום, יעני אני לא מתקשר לפלוני ואומר**
> **לו ואללה תבצע בשבילנו פיגוע. ואללה תעשה לנו לא יודע מה, אין אצלי כזה דבר, אני**
> **דובר בשם התנועה בפועל קורא לאינתיפאדה אני קורא למאבק מזויין"** (ת/98ח עמי 3).

חרף דברים אלו של הנאשם, הרי שמעדותו של פעיל הטרור עויס עולה שהנאשם הורה לו לחדול
מביצוע פיגועים בעת ביקורו של השליח האמריקאי אנתוני זיני באזור (ראה להלן). מן הדברים
שאמר המדובב פלוני 1 בחקירתו, בעקבות שיחותיו עם הנאשם, עולה כי הנאשם הביע כעס רב על
כך שעויס מסר פרטים אלו בחקירתו (זכ"יד ת/113א סי 9-8, זכ"יד ת/114א סי 8 שהוגשו ואושרו על
ידי החוקר "רוברט/" בעמי 154). כמו כן הובאו ראיות על מקורים אחרים בהם הורה הנאשם באופן
ישיר לפעילי הטרור המקורבים אליו לבצע פיגועים כנגד ישראלים (ראה להלן).

**17.**    בתחילת חקירותו בשב"כ הכחיש הנאשם כי היה מנהיג התנזים וגדודי חללי אלאקצא, אך
אישר את אחריותו לפעילות הצבאית של הפת"ח (זכ"יד ת/17 סי 6, שהוגש ואושר על ידי החוקר
"ארבל" בעמי 80, זכ"יד ת/43 סי 6 שהוגש ואושר על ידי החוקר "רוברט/" בעמי 62, ותמליל חקירה
ת/98י עמי 44-43). הנאשם טען כי גדודי חללי אלאקצא אינם אלא חוליות מפוזרות בכל שטח
הגדה המערבית, ושאין להן מבנה מאורגן ומסודר ומפקדת מרכזית (תמליל שיחה ת/98הי עמי -60
61). עוד אמר הנאשם בחקירתו כי ערפאת היה, למעשה, מפקדו הישיר והממונה עליו, ואת עצמו
הגדיר כ"אחראי לכל פעילות פת"ח בגדה מעצם היותו מזכ"ל הארגון בגדה" (ת/24 סי 3ב, 5).

הנאשם אישר כי הוא היה מנהיג "השטח" של הפת"ח, בעוד שיאסר ערפאת עמד בראש הפת"ח
(תמליל שיחה ת/98א עמי 67). כך הסביר הנאשם בחקירתו גם את העובדה שאנשי החוליות פנו
אליו לקבלת כסף, משום שראו בו "מפקד", וכן "אחרא/ של פת"ח בגדה המערב/ת", בשל היותו
הדובר הפוליטי של התנועה, ומשום שנקט ני ועמדת התנומקים בהמשך המאבק בכיבוש (תמליל ת/
98ה עמי 4-3, 61, ת/98ד עמי 35-33). הנאשם הסביר כיצד הוא נראה בעיני אנשי החוליות,
באומרו : **"אנ/ המפקד שלהם, הם חושבים אות/ לסמל שלהם"**, ואף אישר כי אין אדם אחר
שנחשב כמנהיג שלהם (ת/98ט עמי 7-6).

בדברים שהשמיע במהלך משפטו טען הנאשם לא פעם כי הוא היה "מנהיג פוליט/" בפת"ח,
בהדגישו את תפקידו כמזכ"ל הפת"ח בגדה, והיותו חבר הפרלמנט הפלסטינאי. כך גם טען בתחילת
חקירתו בשב"כ. גם בחקירתו במשטרה הכחיש הנאשם כי היה אחראי על התנזים או על גדודי
חללי אלאקצא (ת/106 עמי 3, 6). ואולם במהלך חקירתו בשב"כ הודה הנאשם כי היה מפקד
הפת"ח בגדה ומפקד התנזים (זכ"יד ת/18 סי 3 שהוגש ואושר על ידי החוקר "נדב" בעמי 78), וכי
הקים את גדודי חללי אלאקצא והיה אחראי על פעילותם ; מטעם זה התנגדו לפעילותו מנגנוני
הביטחון של הרשות (דברי פלוני 1 בזכ"יד ת/117 סי 15, שהוגש על ידי החוקר "רוברט/" בעמי 154).

הנאשם אמר למדובב "פלוני 3" בשיחתם, כי הוא אכן אחראי על הפת"ח ועל גדודי חללי אלאקצא,
אך הוא "לא משוגע לחתום" את שמו על דף נייר בו הדברים ירשמו ; כאשר המדובב אמר לנאשם כי
הוא בכל זאת אחראי למעשי המפגעים, השיב הנאשם כי הוא אמנם אחראי אך "הוא לא טיפש
לומר זאת לחוקרים" (זכ"ד ת/123 עמ' 2, שהוגש על ידי החוקר "אופיר"). במפגש בין הנאשם לבין
אחמד ברגותי בעת מעצרם, כאשר הוקלטו ללא ידיעתם, סיפר הנאשם לאחמד כי אמר בחקירתו
שאין לו כל קשר לגדודי חללי אלאקצא. השניים צחקו, ואחמד יעץ לנאשם לומר כי רק לו - לאחמד
- יש קשר עם הגדודים ; הנאשם השיב לו כי אמר בחקירתו שהיה מפטר את אחמד לו ידע שיש לו
קשר עם הגדודים, ואחמד צחק למשמע הדברים (תמליל שיחה ת/127ג עמי 87).

הנאשם אישר בחקירתו כי לבד מהיותו מנהיג פוליטי, הוא גם שימש כאחראי על העניינים
הצבאיים של הפת"ח (זכ"ד ת/59 סי 6 שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). הנאשם
הגדיר עצמו כ**"אחראי על כל הפעילות של התנזים בפת"ח באזור שלו"** (תמליל
ת/98 עמ' 42). הוא אף הודה כי היה **"אחראי לכל הנעשה כגון אספקת כספים לחוליות, רכישות
נשק וביצוע פיגועים"** (זכ"ד ת/29 סי 1ג שהוגש ואושר על ידי החוקר "סמית" בעמ' 85), וכי הוא
נחשב כ**"מפקד צבאי"**, וכי**"אחראי על העניינים הצבאיים של הפת"ח"**, בנוסף להיותו מנהיג פוליטי
ונבחר ציבור (זכ"ד ת/19 סי 2 וזכ"ד ת/59 סי 5- 6, שהוגשו ואושרו על ידי החוקר "מופז" בעמי
58).

הנאשם אמר כי בשנה שקדמה למעצרו **"החל מוצא עצמו יותר ויותר עוסק בענייני אמל"ח ועניייני
פעילות צבאית"** (זכ"ד ת/25 סי 19, שהוגש ואושר על ידי החוקר "מופז" בעמי 58, וכן ראה תמליל
שיחה ת/98 עמי 15). הוא הסביר כי היה חייב ליטול חלק "בפעילות הצבאית" על מנת לשלוט
ברחוב הפלסטינאי ולדחוק את רגלי החמא"ס והג'יהאד האיסלאמי, ועל מנת שיוכל להצביע על
עצמו בעתיד כעל מי שפעל הן למען השלום והן במלחמה (זכ"ד ת/52, שהוגש ואושר על ידי החוקר
"סמית" בעמי 85).

ג.    **עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם ומעורבותו**
**בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו**

18.    התביעה איננה טוענת כי הנאשם יזם או נטל חלק ישיר בביצוע הפיגועים נשוא כתב
האישום, שכן היא ערה לכך שמחומר הראיות עולה כי למפקדי השטח ולפעילי השטח הוקנו
סמכויות רחבות ומרחב תמרון רב בביצוע הפיגועים, והם לא נדרשו לקבל אישור מהנאשם לכל
פיגוע. התביעה גם מסכימה כי הנאשם לא ידע מראש על כל פיגוע ופיגוע: הוא היה מודע באופן
כללי לפעילותם של מפקדי השטח ופעילי הטרור הכפופים לו, אשר פעלו בהתאם למדיניות
הפיגועים שהוא היה שותף לעיצובה; לעיתים עודכן לפני הפיגוע, ולעיתים עודכן בדיעבד (עמ' 47
לסיכומי התביעה).

כפי שעולה מהראיות שתפורטנה להלן, היה הנאשם מנהיגם של חוליות הטרור מקרב התנזים
וגדודי חללי אלאקצא. לפחות חלק מחברי חוליות אלו סרו למרותו, ופעלו על פי המדיניות
שהתווה. בנוסף על כך, עולה בבירור מן הראיות שהנאשם סייע למפקדי החוליות ופעילי הטרור
באספקת אמצעי לחימה ומימון כספי. במספר מקרים אישר הנאשם מראש ביצוע פיגועים כנגד
ישראל. יש, אפוא, לבחון בפרק זה מי היו פעילי הטרור שפעלו תחת הנהגתו של הנאשם, ומה היו
קשריו של הנאשם עם פעילים אלו. בפרק הבא  יבחנו הפיגועים שבהם היו מעורבים פעילי טרור
אלו, ומידת הקשר של הנאשם אליהם.

(1)    **נאצר עויס**

19.    נאצר עויס (להלן: "**עויס**") היה אחד מפעילי הטרור הבכירים של התנזים באזור שכם. בגין
פעילותו זו הוא נדון בבית משפט זה ל - 14 מאסרי עולם ועוד 50 שנות מאסר בפועל במוצבר (ת/
172א-ב). בעדותו (עמ' 182-180) סרב עויס להשיב על שאלות, ולאחר שהוכרז כעד עוין הוגשו
הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/172 –
ת/177). הדבר היחיד שהיה מוכן עויס לומר בעדותו הוא כי כל מה שנרשם בהודעותיו הם שקרים
של השב"כ, וגם כתב היד המופיע בהודעותיו הוא של אנשי השב"כ. הוא טען כי עבר אמצעי חקירה
מאוד קשים.

ההודעות שמסר עויס במשטרה נכתבו בכתב ידו ותורגמו לעבריית על ידי החוקר שגבה את ההודעות
ואישר את גבייתן, ואף העיד כי ההודעות נגבו מרצונו החופשי של עויס (רס"מ רוני עמאר בעמ'
191-192). כמו כן, הוגשו דוחות שרשמו חוקרי השב"כ על דברי עויס בחקירתו (ת/178א-ד).
דברים אלו אושרו על ידי חוקרי השב"כ, שהעידו כי הדברים נאמרו על ידי עויס מרצונו החופשי,
אם כי מדובר במסמך שאינו משקף אלא את תמצית החקירה, ולא את הדברים כפי שנאמרו מילה
במילה ("אריאלי" בעמ' 203, "עדי" בעמ' 204, "יואל" בעמ' 204-205). זכ"ד ת/178ג' נרשם בידי
החוקר "צדוק", שלא התייחס אליו בעדותו (עמ' 84-83), ולא חזר להעיד לאחר עדותו של עויס,
ולכן יש להתעלם ממנו.

20.    עויס סיפר בהודעתו ת/172ב (עמ' 1-2), שנכתבה בכתב ידו, כי לאחר פרוץ "אינתיפאדת
אלאקצא" בחודש ספטמבר 2000, הוא החל לבצע פיגועים כנגד מטרות ישראליות, ובאותה עת
עבד במנגנון הביטחון הלאומי הפלסטיני בשכם בדרגה של סרן (נקיב). הוא ביצע פיגועי ירי
ופיגועים נוספים נגד מטרות ישראליות באזור יהודה ושומרון ובתוך ישראל, ופרט בהודעותיו ת/
172-ת/174 פיגועים אלו, שכללו ירי לעבר עמדות צבאיות ורכבים צבאיים; מסירת אמצעי לחימה
לאחרים לשם ביצוע פיגועי התאבדות בירושלים, בנתניה וחדרה, ועוד.

21.    עויס אמר בהודעותיו כי ביצע את הפיגועים בשם גדודי חללי אלאקצא, בהסבירו כי גוף זה
משתייך לתנועת הפת"ח ותנזים הפת"ח, וכי הנאשם היה האחראי על התנזים    (ת/172ב עמ' 3).
עויס אמר כי המימון לפיגועים בא מאנשי התנזים, וכי הנאשם עצמו מימן את הנשק לפיגועים בהם

היה מעורב עויס - לעיתים באופן ישיר, ולעיתים באמצעות מאג"ד אלמצרי - ביודעו שעויס מבצע פיגועים נגד מטרות ישראליות. במקרה אחד העביר הנאשם לעויס שיק מאושר על ידי היו"ר ערפאת (עמ' 6-7). עוד אמר עויס בחקירתו כי היה בקשר עם הנאשם לכל אורך הזמן; הוא נשאל אם הנאשם ידע על כך שהוא מבצע פיגועים כנגד מטרות ישראליות, והשיב (עמ' 4-5):

"כן ידע ושמי אף פורסם בעיתונות ובטלוויזיה וברדיו והייתי משוחח עמו מידי פעם וכשהמצב הפוליטי היה מתדרדר ורע לנו היה מבקש שנמשיך בפיגועים וכשנפגש שמעון פרס ועמיר שרון עם מנהיגים ברשות התקשר אליי מרואן ברגותי וביקש שנעצור את הפיגועים... באותה תקופה היה זיני באזור ומרואן אמר לי שעדיף מאחד והנגרל זיני נפגש עם מנהיגים ברשות שלא נבצע פיגועים בשם חללי אלאקצא ויש לציין שהתקדמו בשיחות לא בוצעו פיגועים".

הנאשם הביע כעס בפני המדובב "פלוני 1" על כך שעויס הודה בחקירתו כיצד נהג הנאשם בעת ביקורו של הנגרל זיני באזור (ת/113א סעיפים 8-9, ת/114א סעיף 8, שהוגשו ואושרו על ידי החוקר "רוברטי" בעמ' 154, ותמליל חקירת הנאשם ת/98ח עמ' 3).

22.   אשר לקשריו עם הנאשם, אמר עויס בחקירתו בשב"כ כי הגיש לנאשם בקשת סיוע עבור שורה של פעילי שטח, וכי הוא עצמו קיבל שלוש פעמים כסף מהנאשם (זכ"ד ת/178א סעיף 10). הנאשם היה הממונה עליו בתנזים, והעביר לו ולפעילים אחרים סיוע כספי, לאחר קבלת אישור מהיו"ר ערפאת (ת/178ב סעיף 10). בדרך כלל קיבל עויס את הכספים מהנאשם באמצעות המתווך מאג"ד אלמצרי, אך לעיתים היה הנאשם שולח לו כספים בצורה ישירה; עויס לא נהג לומר לנאשם מה מטרת הכסף, אך ברחבי הגדה ידעו היטב מה טיב הפעילות של עויס (ת/178ד סעיף 5יא).

עויס אמר בחקירתו כי הפיגועים של התנזים בוצעו בידיעת מנהיגי התנזים ובסיועם. לאחר הפיגוע באולם השמחות בחדרה, וכל זמן שהתנהלו שיחות עם ישראל, הם היו מורים על הפסקת הפיגועים; ואולם כאשר השיחות לא התקדמו, שבו הפעילים לבצע פיגועים, עד שניתנה להם הוראה חדשה על ידי המנהיגים להפסיקם. במסגרת זו נתן הנאשם הוראה להפסיק את הפיגועים בעת ביקורם של הנגרל זיני ומנהיגים מרוסיה ומאירופה בארץ (ת/178ד סעיף 5י).

23.   דבריו של עויס בחקירתו בכל הנוגע לקשריו עם הנאשם נתמכים בדברים שאמר הנאשם בחקירתו בשב"כ. כאשר הופגשו הנאשם ועויס במהלך החקירה (ת/79ב), ועויס החל לקרוא את הודעתו במשטרה, ציווה עליו הנאשם לומר כי מדובר בזיוף, ועויס אכן מיהר לומר כך (החוקר "צדוק" בעמ' 84). ואולם הנאשם עצמו אישר בחקירתו כי עויס היה הפעיל הצבאי הבכיר ביותר של תנזים פת"ח בשכם, ואחראי על גדודי חללי אלאקצא בשכם (זכ"ד ת/90 ס' 7, שהוגש ואושר על ידה החוקר "סטיבי" בעמ' 53). הנאשם הודה כי ידע שעויס מבצע "פעילות צבאית" ענפה, וכאשר רצה להבטיח הפסקה של הפיגועים היה פונה גם לעויס ומורה לו על הפסקת הפיגועים (זכ"ד ת/24 ס' 6, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85, ותמליל שיחה ת/98ט עמ' 2-3).

הנאשם הודה כי מסר לידי עויס באמצעות מאג"ד אלמצרי ואחמד ברגותי סכום של כ- 20,000 ש, ואולי אף 50,000 - 70,000 ש, למימון פעילותו, וכי קיבל אישור לכך מהיו"ר ערפאת, בלא שציין את מטרת הסיוע הכספי (זכ"ד ת/19 ס' 16, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58; זכ"ד ת/38 ס' 4, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85; זכ"דים ת/40 ס' 8 ו- ת/41 ס' 9, שהוגשו ואושרו על ידי החוקר "מופז" בעמ' 58; תמליל חקירה ת/98ט עמ' 4-3). הנאשם אף הודה

כי חלק מהמכספים שהעביר ליידי עויס נועדו לרכישת 1000 כדורים לרובה M-16 ולרובה מסוג "גלילי", ואף הצהיר כי הוא **"מקבל אחריות על כל הכסף שנאצר (עויס) קיבל עבור מימון פיגועים בשטחים הכבושים, עבור רכישת כלי נשק ותחמושת"** (ת/41 סי 9-6).

עוד אישר הנאשם בחקירתו כי עויס הפעיל חוליות שהיו מאורגנות תחת פיקודו של הנאשם (זכ"ד ת/29 סי 1, שהוגש ואושר על ידי החוקר "סמיתי" בעמי 85). אך הנאשם הדגיש כי הוא עצמו לא הורה לעויס לבצע פיגועים (זכ"ד ת/31 סי 6). לעומת זאת, המדובב "פלוני 1" העיד כי הנאשם אמר לו כי נתן לעויס הוראות לבצע פיגועים (עמי 104).

הנאשם הודה גם כי לאחר הפיגוע בנווה יעקב או בגשר עטרה (הנאשם לא זכר איזה מהם) שלח אליו עויס את הכרוז הנוטל אחריות, והנאשם אישר זאת בשיחה עם עויס (זכ"ד ת/49 סעיף 7, שהוגש ואושר על ידי החוקר "אמילי" בעמי 54, וזכ"ד ת/52 שהוגש ואושר על ידי החוקר "סמיתי" בעמי 85).

### (2)    נאצר נאג'י אבו חמיד

**24.**    נאצר נאג'י אבו חמיד (להלן: **"אבו חמיד"**) היה אחד ממנהיגי התנזים וגדודי חללי אלאקצא באיזור ירושלים ורמאללה, ואף הוא היה כפוף לנאשם וקיבל ממנו סיוע לצורך ביצוע פיגועים כנגד ישראל. בגין פעילותו זו נדון אבו חמיד, על סמך הודאתו, לשבעה מאסרי עולם ועוד 50 שנות מאסר במצטבר (ת/148א-ב). בעדותו סרב אבו חמיד להשיב על שאלות כלשהן, הוכרז כעד עויין והוהעתי משטרה הוגשו לפי סעיף 10א. לפקודת הראיות (עמי 41-40). הודאות אלו (ת/149א-ד) הוגשו באמצעות חוקרי המשטרה אברהים אלקרעאן, יעקב ברזני ומשה לוי (עמי -194 195, 207, 211), אשר העידו כי אבו חמיד מסרן מרצונו החופשי וחתם עליהן. ההודעות נמסרו בעברית לפי בקשתו של אבו חמיד, אשר לדבריו החוקרים דובר עברית היטב.

**25.**    בהודעותיו פרט אבו חמיד את פיגועי הרצח כנגד ישראלים בהם היה מעורב, וסיפר כי פנה אל הנאשם לקבלת סיוע כספי לרכישת תחמושת, והנאשם הפנה אותו אל קרובו אחמד ברגותי המכונה "אלפרנסי"; הלה אכן מסר כמה פעמים לאבו חמיד כסף לרכישת נשק ותחמושת (ת/149 א, עמי 9, ת/149ג עמי 6-5). גם חברים אחרים בחוליה של אבו חמיד פנו לנאשם לקבלת כספים לצורך רכישת נשק (ת/149 עמי 6). בשלב מסוים פנה אבו חמיד לנאשם לשם מימון רכישת מקלע, ובסופו של דבר הכסף למטרה זו ניתן לו על ידי אחמד ברגותי (ת/149ג עמי 7). אבו חמיד אף סיפר כי הנאשם נפגש עם סוחר נשק בעניין רכישת רימוני יד, שהיו לבסוף רק רימוני חלם (עמי 8-7).

אבו חמיד אמר כי הוא הקים את גדודי חללי אלאקצא לאחר תחילת האינתיפאדה בחודש דצמבר 2000 (עמי 4). הוא הסביר כי הוצע לו לצרף את החוליה שברשאתו עמד למנגנוני הביטחון של הרשות הפלשתינאית בראשות תאופיק טיראוי, אך הוא העדיף את הצעתו של הנאשם להיות כפוף לו, ולקבל ממנו משכורת לו ולאנשיו, כיוון שראה בנאשם "מנהיג פוליטי שלא ישקרי" (ת/149א עמי 15-16).

לאחר מכן גייס אבו חמיד פעילים נוספים לתמיכה בנאשם, הקים את גדודי חללי אלאקצא, והחל לבצע פיגועים כנגד מחיומי צה"ל והמתנחלים (עמי 17). הוא אמר לגבי הנאשם כי ראה בו "מנהיג פוליטי", אם כי הוא עצמו השתייך לפלג הצבאי של הארגון (עמי 17). כאשר נהרג מפקד החוליה, הכיר אבו חמיד את יורשו לנאשם (ת/149 עמי 7).

באחת מהודעותיו סיפר אבו חמיד על אירוע בו נכח יחד עם חברי חוליה אחרים, ואחד מהם סיפר לנאשם על כוונתו לבצע פיגוע באזור שכם, וביקש מהנאשם סיוע ברכישת נשק ומכונית, וכן ביקש מהנאשם ליצור קשר עם עויס על מנת שיעזור בביצוע הפיגוע. אבו חמיד אמר כי הנאשם התקשר עם עויס, שאכן סייע לחוליייה לבצע פיגוע; לאחר הפיגוע הוא דיווח לנאשם כי בהיתקלות עם חיילי צה"ל איבדו חברי החוליה את הנשק, והנאשם הבטיח לטפל בנושא (ת/149ג עמי 9).

לקראת סוף שנת 2001, כאשר החל ירי מרגמות לעבר ישובים ישראליים, שוחח אבו חמיד עם הנאשם על הצורך להשיג מרגמות בעלות טווח ירי גדול יותר. אבו חמיד פנה אל הנאשם לשם מימון רכישת פצצות המרגמה, והנאשם השיב לו כי מחירן גבוה מדי, וכי "יש לו הפתעה" בעניין זה, כפי שיסביר לו אחמד ברגותי ; האחרון הסביר לאבו חמיד כי יש כבר בידיהם מרגמה ופצצות (ת/149ג עמי 10). אבו חמיד אף דיווח לנאשם על ביצוע ירי מרגמה לעבר הישוב פסגות, והנאשם ביקש שלא לספר על כך לאיש, באומרו כי אם ערפאת ידע על כך הוא יכניס אותו לכלא (עמי 11).

26.   מהודעותיו של אבו חמיד ניתן להתרשם שהוא השתדל למנוע מן הנאשם מעורבות ישירה בפיגועים, ואף אמר לפעילים האחרים שלא לסבך את הנאשם במעשיהם, שכן הנאשם צריך להישאר "מנהיג פוליטיי" (ת/149א עמי 9-8, 12). במסגרת ניסיונו של אבו חמיד לחפות על מעורבותו של הנאשם בפיגועים, הוא ניסה לגמד גם את חלקו של אחמד ברגותי, שהיה מקורבו ועוזרו של הנאשם ; אבו חמיד הודה כי ניסה תחילה להעלים את חלקו של אחמד ברגותי ברצח טליה ובנימין כהנא ז"ל, אשר בוצע באמצעות נשק שמסר אחמד ברגותי למפגע (ת/149ד עמי 5, וראה פרטי האירוע בפרק ה(1) להלן).

27.   הנאשם הודה בחקירתו כי הנחה את עלי עאידיה (איש הכספים שלו) לרכוש אמלי"ח עבור הפעילות של התנזים, ולהעביר את האמלי"ח לאבו חמיד. הנאשם אף מתייחס בחקירתו לאירוע המתואר בהודעתו של אבו חמיד, הנוגע לרכישת רימונים מקולקלים (זכ"ד ת/43 סי 5-2, שהוגש ואושר על ידי החוקר "רוברטו" בעמי 62). הנאשם הודה כי החוליות של אבו חמיד זכו לסיוע מצדו בסכום של כ- 40,000 ₪ (זכ"ד ת/63 סי 20, שהוגש ואושר על ידי החוקר "גאורי" בעמי 82). הנאשם אמר כי כאשר קיבל החלטה אסטרטגית לבצע פיגועים הוא הקים חוליה, כאשר את הפיגועים הוביל, בין היתר, אבו חמיד (זכ"ד ת/35 סי 1, שהוגש ואושר על ידי החוקר "דני" בעמי 90). כאשר נשאל הנאשם בחקירתו מי מאנשי חוליות הפיגועים היו תחת שליטתו, הוא אמר על אבו חמיד : "**הוא נחשב עלי**" (תמליל שיחה ת/98יא עמי 34, שבו בטעות נרשם בעברית "אחמד" במקום אבו חמיד).

### (3)   אחמד ברגותי

28.   אחמד ברגותי (המכונה "אלפרנסיי") הוא קרוב משפחה של הנאשם, אשר היה עוזרו הקרוב, בנוסף על היותו נהג ושומר ראשו של הנאשם (ראה דבריו בהודעתו ת/165א עמי 1, וזכ"ד ת/165ו שהוגש ואושר על ידי החוקרים "אדם" ו"דני" בעמי 201-200).
אחמד ברגותי אמר בחקירתו כי היה נתון למרותו המלאה והישירה של הנאשם (זכ"ד   ת/165י שהוגש ואושר על ידי החוקר "אדם" בעמי 201). אין זה מקרה שאחמד ברגותי נעצר יחד עם הנאשם, שכן שמו עולה בחומר הראיות בהקשרים רבים הנוגעים לפיגועים שביצעו פעילי השטח של התנזים וגדודי חללי אלאקצא.

אחמד ברגותי סירב להשיב על שאלות כלשהן בעת עדותו (עמי 163-161), ולאחר שהוכרז כעד עוין הוגשו הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/165א-ה).
הודעות אלו הוגשו ואושרו על ידי השוטרים דוד מזרחי, יצחק יעקובוב ומשה משה (בעמי 184, 171 ו- 207-206). החוקרים העידו כי תקתרו את אחמד ברגותי בערבית, אך רשמו את עדותו בערבית (שלא על פי המקובל והנדרש). כל החוקרים העידו כי ההודעות נמסרו מרצונו החופשי של הנחקר.

כמו כן הוגש מסמך שכתב אחמד ברגותי בכתב ידו בערבית ותורגם (ת/165(ג)(1-2)), והוא הודה בחקירתו כי כתב מסמך זה בכתב ידו (מוזרחי בעמי 185). בנוסף, הוגשו על ידי חוקרי השב"כ זכ"דים שנרשמו במהלך חקירתו של אחמד ברגותי (ת/165ו-טו, שהוגשו ואושרו כדלקמן:ת/165 על ידי "אדם" בעמי 201 ו"דני" בעמי 200 ; ת/165י על ידי "אדם" בעמי 201 ; ת/165יג על ידי

"אדם" בעמ' 201; ת/165יד על ידי "דני" בעמו 200). הזכ"דים ת/165ז-ח, ת/165יא-יב ו- ת/165
טו לא זכו להתייחסות כלשהי בעדויותיהם של חוקרי השב"כ "מיקי", "ארבלי", "אדם" ו"דקלי",
ולכן יש להתעלם מהם.

**29.** אחמד ברגותי סיפר בחקירתו כי הוא ועויס היו האחראים על גדודי חללי אלאקצא בשנה
שקדמה למעצרו (הודעה ת/165ה). הוא סיפר בהודעתיו על מעורבותו הישירה והעמיקה בפיגועים
שבוצעו כנגד ישראל, ועל כלי הנשק והרכב שסיפק לפעילי השטח שיצאו לבצע פיגועים שונים
באזור יהודה ושומרון ובתוך ישראל, כולל פיגועי התאבדות.

באשר לפיגוע במסעדת **"סי פוד מרקט"** בתל-אביב, סיפר אחמד ברגותי כי כאשר קיבל הודעה
שהמפגע אברהים חסונה עומד לצאת ולבצע את הפיגוע, וגם כאשר דווח לו כי הלה כבר יצא לדרכו
עם מובילליו, הוא התקשה לנאשם והודיעו על כך; הנאשם אישר את הפיגוע **לפני** ביצועו, אך הורה
שלא יבוצע בתוך ישראל אלא בשטחים; אחמד ברגותי אמר לו: "היתה בסדר" (זכ"ד ת/165י"ג
שהוגש ואושר על ידי החוקר "אדם" בעמ' 201 וזכ"ד ת/165י"ד שהוגש ואושר על ידי החוקר "דני"
בעמ' 200). מייד לאחר ביצוע הפיגוע בי"סי פוד מרקטי", שאחמד ברגותי עצמו היה מעורב בהוצאתו
לפועל, הוא התקשה אל הנאשם בשעה 03:15 לפנות בוקר ודיווח לו על ביצוע הפיגוע; הנאשם
נשמע מרוגז (הודעה ת/165ג עמ' 1, זכ"ד ת/165ג). לדברי אחמד ברגותי, אמר לו הנאשם להודיע
לעויס שלא ליטול אחריות על פיגוע זה קודם שידובר עם הנאשם, שכן הנאשם היה מעוניין לנסח את
הכרוז (ת/165ג עמ' 1, וזכ"ד ת/165יד). אחמד ברגותי נשאל מדוע דיווח על הפיגוע לנאשם, והוא
השיב: **"למרואן ברגותי הודיעתי באופן רגיל"**.

**30.** אחמד ברגותי סיפר בחקירתו גם על הפיגוע **בתחנת הדלק בגבעת זאב**, שנעשה כנקמה על
חיסולו של ראיד כרמי. לדבריו, הוא ביקש מהמבצע אבו סטאחה שלא להודיע על כך מראש לנאשם.
אך אבו סטאחה שוחח עם הנאשם על כך, והנאשם אמר לו שלא לבצע את הפיגוע, כנראה משום
שחשש לחייו של אבו סטאחה שהיה שומר ראשו (זכ"ד ת/165ג עמ' 2 וזכ"ד ת/165יג שהוגש ואושר
על ידי החוקר "אדם" בעמ' 201). זו אחת הדוגמאות לניסיונו של אחמד ברגותי במהלך כל
החקירה לחפות על מעשי הנאשם, שכן הנאשם עצמו נטל בחקירתו אחריות לפיגוע זה, וברור
מדבריו שהוא הורה על ביצועו (ראה סעיפים 66(5) ופרק ה(7) להלן).

במקרה אחר, עליו סיפר אחמד ברגותי בחקירתו, דחה הנאשם את בקשתם של צעירה בת 15 לבצע
פיגוע התאבדות, באומרו **"שהיא עוד צעירה לעשות זאת"**, והורה לאחמד ברגותי להודיע לה זאת
(ת/165ג עמ' 4, וזכ"ד ת/165יג סי 2י, שהוגש ואושר על ידי החוקר "אדם" בעמו 201). גרסה דומה
עולה מדברי הנאשם בחקירתו (זכ"ד ת/25 סי 7-6, שהוגש ואושר על ידי החוקר "סמית" בעמו 85,
ותמליל חקירה ת/98י עמ' 9-8).

במקרה נוסף עליו סיפר אחמד ברגותי, התקשר ג'יהאד ג'וערה לנאשם בבקשה לבצע פיגוע,
והנאשם אמר לו שלא לעשות זאת בתוך ישראל או בירושלים; ואולם ג'וערה השאיר מכונית תופת
שהתפוצצה למחרת ליד קניון מלחה בירושלים, חרף דברי הנאשם (ת/165 עמו 18). דברים אלו
אושרו על ידי הנאשם בחקירתו (ראה סעיף 66(ה) ופרק ה(20) להלן).

**31.** לאורך כל חקירתו, ניכרת אצל אחמד ברגותי מגמה ברורה לגמד ולהעלים את מעורבותו
של הנאשם בפיגועים השונים. כאשר היה מזכיר את שמו של הנאשם, היה זה בדרך כלל על מנת
לציין שהנאשם התנגד לביצוע הפיגוע. עם זאת, אחמד ברגותי אישר בהודעה שנכתבה בכתב ידו כי
שורה של פעילי שטח בחוליות קיבלו כספים ממשרדו של הנאשם ובידיעתו, וכי הכספים שקיבל
מהנאשם שימשו אותו לצורך ביצוע פיגועים שלו ושל אחרים (הודעה ת/165ג(1)) עמ' 6, הודעה ת/

165ג עמ' 2 וזכ"ד ת/165יג סי' 2ג ו- 2ז שהוגש ואושר על ידי החוקר "אדם" בעמ' 201).
כמו כן ברור מדברי אחמד ברגותי כי הנאשם היה מורה לו מדי פעם להפסיק או לדחות את ביצוע
הפיגועים (זכ"ד ת/165יג סי' 2ח, שהוגש ואושר על ידי החוקר "אדם" בעמ' 201). מכאן עולה כי
במקרים אחרים הם בוצעו באישורו של הנאשם, גם אם לא ידע מראש על כל פיגוע ופיגוע.

**32.** בתחילת חקירתו ניסה הנאשם לגונן על קרוב משפחתו אחמד ברגותי, וטען כי נעצר עמו
משום "שעבר במקרה במקום" (זכ"ד ת/9 סי' 10 שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62).
הנאשם טען כי אחמד ברגותי הפסיק לעבוד אצלו כנהג כשמונה חודשים לפני מעצרו, ואין שום
קשר ביניהם בנוגע לביצוע פיגועים (זכ"ד ת/10 סי' 1, שהוגש ואושר על ידי החוקר "זדני" בעמ' 90,
וזכ"ד ת/21 סי' 23, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 63). בחקירתו במשטרה טען
הנאשם כי אחמד ברגותי לא היה מזכיר או או שומר ראש שלו (ת/104 עמ' 4). בפגישה שהיתה בין
הנאשם לאחמד ברגותי בעת מעצרם, ושהוקלטה ללא ידיעתם, תיאמו השניים עמדות לגבי
החקירה, ואחמד ברגותי אמר לנאשם כי שענ בחקירה שהוא איננו קשור לפעילות, אלא רק שימש
כנהג; הנאשם אמר כי גם הוא אמר כך (תמליל שיחה ת/127ג עמ' 3-2). אחמד ברגותי סיפר
לנאשם באותה פגישה מה בדיוק אמר בחקירותיו לגבי הנאשם, כשהם מתייחסים לפיגועים
השונים אליהם התייחס אחמד ברגותי בחקירתו (עמ' 4).

ואולם, בהמשך בחקירתו בשב"כ אישר הנאשם כי ידע שאחמד ברגותי קשור למספר חוליות
ולביצוע פיגועים רבים כנגד ישראל, וכי כאשר ביקש להפסיק את הפיגועים היה מודיע זאת גם
לאחמד ברגותי. לדבריו, אמר לאחמד ברגותי שהוא "לא מרשה" לבצע פיגועים בתוך ישראל
(תמליל ת/98יא עמ' 20-18). הנאשם אמר כי היה תיאום בינו לבין אחמד ברגותי, שכלל דיווח
ומתן כספים, וכי מבחינתו אחמד ברגותי היה אחראי על הפעילות הצבאית באזור רמאללה ביחד
עם אבו חמיד, וכי השניים היו מבצעים פיגועים באמצעות מספר חוליות (זכ"ד ת/27 סי' 3-2 שהוגש
ואושר על ידי החוקר "סמית" עמ' 85).

הנאשם הודה כי היה נותן כסף לאחמד ברגותי, ותמך בפעולותיו, אף כי טען שאחמד ברגותי לא
היה מדווח לו **לפני** ביצוע פיגועים (תמליל ת/98ח עמ' 3, 17, 24-20, וזכ"ד ת/24 סי' 4, שהוגש
ואושר על ידי החוקר "סמית" בעמ' 85).

הנאשם הודה כי אחמד ברגותי היה מדווח לו **לאחר** ביצוע פיגועים (תמליל ת/98ז עמ' 25-19, 40,
ותמליל ת/98יא עמ' 9). בשיחתו עם המדובב "פלוני 1", אמר הנאשם כי אחמד ברגותי שילח
ארבעה פיגועי התאבדות באישורו (עדות המדובב בעמ' 106). דברים אלו תואמים דברים שאמר
הנאשם בחקירתו, כאשר נטל אחריות על כמה פיגועים אותם אישר אישית (ראה סעיף 66 להלן).

הנאשם לא הסתיר כי מסר לאחמד ברגותי עשרות אלפי דולרים לרכישת כלי נשק שונים, כגון רובי
סער ואקדחים, עבור אנשי החוליות שביצעו פיגועים כנגד ישראל. אחמד ברגותי היה האחראי
מטעם הנאשם על רכישת הנשק. הוא פעל תחת פיקודו של הנאשם, והיה אחראי על "הפעילות
הצבאית" באזור רמאללה. הנאשם הודה כי ידע שאחמד ברגותי קשור לפיגועים כנגד ישראל,
ובניהם פיגועים בירושלים ובי-סי-פוד מרקטי" בתל אביב (לכל אלה ראה: זכ"ד ת/23 סי' 5-4
שהוגש ואושר על ידי החוקר "זדני" בעמ' 90 ; זכ"ד ת/25 סי' 11-10 שהוגש ואושר על ידי החוקר
"מופז" בעמ' 58 ; ת/27 סי' 2, 4 ו- ת/29 סי' 1 שהוגש ואושר על ידי החוקר "סמית" בעמ' 85 ; ת/28
סי' 4 שהוגש ואושר על ידי החוקר "אבו ואדי" בעמ' 96 ; ת/65 סי' 4 ו- ת/70 סי' 9 שהוגשו ואושרו
על ידי החוקר "סטיב" בעמ' 53 ; וכן ראה דברי הנאשם בתמלילים ת/98ז עמ' 6-2, ת/98ח עמ' 20-
24, ת/98יא עמ' 11-10 ו-
ת/98יא עמ' 8).

**לסיכום קשרי הנאשם עם אחמד ברגותי**, ניתן לומר כי הקשר של הנאשם עם פעילי הטרור היה
באמצעות קרובו ומקורבו אחמד ברגותי. כפי שאמר הנאשם בחקירתו על אחמד : "**הוא יוצר קשר
עם החוליות האלה. באופן ישיר איתם ישירות. יעני בלעדיו לא היתה לי התקשרות ישירה עם אף**

**חוליה"** (תמליל ת/98יא עמ' 8). כאשר נשאל הנאשם בחקירתו מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, השיב הנאשם כי אחמד ברגותי היה **"חלקית תחת שליטתי וחלקית עבד עם נאצר (עויס)"** (תמליל שיחה ת/98יא עמ' 34).

### (4)　מוחמד מצלח (אבו סטחה)

**33.**　מוחמד מצלח המכונה "אבו סטחה" (להלן: **"אבו סטחה"**) היה פעיל שטח נוסף, שעמד בראש חוליה אשר ביצעה פיגועי רצח. הוא גם היה שומר ראשו של הנאשם בתקופה מסוימת, ומקורב אליו. בגין פעילותו זו הורשע אבו סטחה על פי הודאתו ונדון לעונש של 9 מאסרי עולם במצטבר (ת/155א-ג). בעדותו פתח אבו סטחה בהצהרה כי לא היה לו שום קשר עם הנאשם, וכי הנאשם הוא **"אדם פוליטי"** שאין לו קשר עם הפעולות הצבאיות". מעצר לכך לא היה מוכן אבו סטחה להשיב על שאלה כלשהי, ולפיכך הוכרז כעד עוין והוגשו הודעותיו במשטרה ת/156א-ג לפי סעיף 10א. לפקודת הראיות (עמ' 66-68).

ההודעה ת/156א לא הוגשה באמצעות מי שגבה אותה (השוטר יעקב ברזאני), ולפיכך יש להתעלם ממנה. ההודעות ת/156ב-ג הוגשו ואושרו על ידי השוטרים מרקו דהאן ומשה לוי (בעמ' 198, 210), אשר העידו כי ההודעות נמסרו מרצונו החופשי של אבו סטחה. החקירה התנהלה בשפה הערבית אך ההודעות נרשמו בעברית (שלא על פי המקובל והנדרש).

בהודעותיו מפרט אבו סטחה את הפיגועים שביצע, ומדבריו עולה שאחמד ברגותי, עוזרו הקרוב של הנאשם, היה מעורב ברבים מהם בצורה ממשית.

**34.**　הנאשם אישר בחקירתו כי אבו סטחה עבד במשרדו ופעל תחת אחריותו, באמצעות אחמד ברגותי, וכי הוא ידע שאבו סטחה ביצע פיגועים שונים כנגד אזרחים בגבעת זאב ובפסגת זאב (זכ"ד ת/30 סי' 3-2, שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54, תמליל ת/98יא עמ' 35). כאשר נשאל הנאשם מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, הוא כלל בהם את אבו סטחה, באומרו: **"אני לא בורח מזה"** (תמליל ת/98יא עמ' 34).

### (5)　ג'מאל אחויל

**35.**　ג'מאל אחויל (להלן: **"אחויל"**) היה פעיל שטח נוסף שקיבל סיוע מהנאשם, והיה איש הקשר שלו במחנה הפליטים בג'נין.

אחויל סירב להשיב על שאלות בעת עדותו, הוכרז כעד עוין והוגשה הודעתו במשטרה ת/166 לפי סעיף 10א. לפקודת הראיות (עמ' 165-164), באמצעות השוטר מטאנס חדאד שגבה אותה (עמ' 169). אחויל כתב את הודעתו בכתב ידו, וחדאד תרגם אותה לעברית.

אחויל פעל במסגרת גדודי חללי אלאקצא, ואמר בחקירתו כי קיבל סיוע כספי, בין היתר, מהנאשם, והיה מחלק כסף זה לפעילים אחרים, וביניהם מבוקשים על ידי צה"ל; חלק מהכסף שימש לרכישת נשק (ת/166 עמ' 1). אחויל היה בקשר רצוף עם הנאשם, והיה מדווח לו על פעילות גדודי חללי אלאקצא, ועל המתרחש במחנה ג'נין; לעיתים היו הפעילים היו בגדודים אלו מדווחים לנאשם באופן ישיר, כפי שהיה עושה עויס (ת/166 עמ' 5).

הנאשם הכחיש בחקירתו במשטרה כי הכיר את אחויל (ת/106 עמ' 6). אך בחקירתו בשב"כ אמר הנאשם כי אחויל היה מנהיג מחנה הפליטים בג'נין, וחבר בגדודי חללי אלאקצא, אשר השתייך לחוליות של עויס. הנאשם הכיר היטב את אחויל, אך טען שמעולם לא מסר לידיו נשק או כסף, אם

כי אחוויל פנה אליו בבקשות סיוע; הנאשם הסביר כי היה פועל מול עויס, ועויס היה זה שהיה ממלא את בקשותיו של אחוויל (זכ"ד ת/31 סי 9-7, שהוגש ואושר על ידי החוקר "מופז" בעמי 58). כמו כן אישר הנאשם כי העביר לערפאת את בקשותיו של אחוויל לקבלת סיוע (זכ"ד ת/67 סי 4 שהוגש ואושר על ידי החוקר "אמילי" בעמי 54).

### (6)   נאצר א-שויש

**36.** נאצר א-שויש (להלן: "**שויש**") היה אף הוא פעיל בפיגועים שביצעו גדודי חללי אלאקצא. בגין פעילות זו הורשע על פי הודאתו, ונדון ל- 4 מאסרי עולם במצוטבר (ת/157א-ד). שויש סירב לענות על שאלות בעדותו, אך טען כי הנאשם הוא מנהיג פוליטי שאין לו קשר ל"ענייינים צבאיים". הוא הוכרז כעד עוין, הכחיש את הדברים שאמר בחקירתו, ואף טען כי לא הודה בכלום (עמי 69- 71). הודעותיו של שויש ת/158א-ב הוגשו לפי סעיף 10א. לפקודת הראיות, באמצעות השוטרים מטאנס חדאד ועואד עטאף (עמי 165, 168).

גובי ההודעות העידו כי ההודעות נרשמו בערבית בכתב ידו של הנחקר מרצונו החופשי, ותורגמו לעברית על ידי החוקרים. השוטר חדאד העיד כי נכח במשפטו של שויש, והלה אישר שם את הודעתו בטרם הורשע, שכן לא היה לו סניגור.

**37.** בחקירתו (הודעה ת/158א, עמי 6 והודעה ת/158ב, עמי 2-4) סיפר שויש כי קיבל חגורת נפץ במשקל של כ- 18 ק"ג במפקדת המודיעין המסכל ברמאללה על מנת לשמור אותה ברכבו. לאחר מכן פגש את הנאשם בבית החולים בו טופלה אשתו, והנאשם ביקש לשוחח אתו בנפרד. בשיחתם שאל אותו הנאשם האם הוא מכיר אנשים אשר יודעים כיצד להכין חגורת נפץ, או כאלה שיש להם חגורת נפץ. באותו מעמד התתקשר שויש לאדם שמסר לו את חגורת הנפץ (מוזיד אלמצרי), וקיבל את הסכמתו למסור אותה לנאשם, והנאשם הודיע לו שאחמד ברגותי ישוחח איתו בעניין. למחרת התקשר אחמד ברגותי אל שויש, והאחרון מסר לו את חגורת הנפץ. שויש שמע באותו יום כי האדם שהחזיק את החגורה נתפס בירושלים בדרכו לביצוע פיגוע התאבדות.

שויש נשאל בחקירתו האם הנאשם ידע על פיגועי התאבדות ופעילות צבאית, והשיב כי יום לפני ביצוע פיגוע ההתאבדות על ידי מוחמד חשאייכה נפגש שויש עם הנאשם, וסיפר לו כי אדם בשם עבד אלכרים אמור לשלוח מתאבד לישראל; הנאשם אמר לשויש להתקשר אליו אם יזקקו לדבר מה בקשר לפיגוע, נתן לו סכום של 600 דולר, וביקש לעדכן אותו בפרטי הפיגוע (עמי 7-6). הפיגוע בוצע בירושלים, ואז התקשר הנאשם אל שויש, אשר אמר לו כי הפיגוע בוצע על ידי גדודי חללי אלאקצא. הנאשם ביקש ממנו להביא לו את הקלטת המצולמת של המתאבד חשאייכה (עמי 7-6 להודעה ת/158א). בהודעתו השניה ת/158ב סיפר שויש על הסיוע הכספי שקיבל מהנאשם (עמי 5).

**38.** הנאשם הכחיש בחקירתו במשטרה כי הכיר את שויש, וכן הכחיש בהודעתו את דבריו של שויש (ת/106 עמי 9-7). לא הובאו בפנינו ראיות נוספות על האירועים הני"ל אליהם התייחס שויש בחקירתו, ולכן אין כל חיזוק לדבריו אלו, ולא ניתן לסמוך ממצאים עליהם.

### (7)   עלי עיאדיה

**39.** עלי עיאדיה (להלן: "**עיאדיה**") היה פעיל בתנזים שעסק בעיקר בהדרכת צעירים בשימוש בנשק, ובעניין זה פעל בהנחיית הנאשם. כמו כן השתתף בביצוע פיגועי ירי לעבר חיילים. בעדותו סרב להשיב על שאלות שנשאל, וטען כי הנאשם הוא "איש שלום" (עמי 171-169). לפיכך הוכרז עד עוין, והודעתו ת/168 הוגשה לפי סעיף 10א לפקודת הראיות, באמצעות השוטר יעקב ברזני, שגבה אותה בשפה הערבית ותרגמה לעברית (עמי 208).

**.40** עיאדיה סיפר בחקירתו על מעורבותו של הנאשם בקורס הירי לצעירים (ת/168, עמ' 2-1), ועל הפיגועים שהוא עצמו ביצע. כמו כן אמר עיאדיה: **"ראש התנזים מרואן ברגותי היה יודע מכל אירועי הירי אותם ביצעו פעילי התנזים עוד לפני שעשו אותם והוא הסכים להם"** (עמ' 5). הוא ציין כי כמה חודשים לפני מעצרו ביקש ממנו הנאשם "לקנות נשק מכל סוגי", ולהעבירו דרך אבו חמיד (עמ' 5).

הנאשם הכחיש בחקירתו במשטרה את הדברים שאמר עיאדיה בחקירתו (ת/106 עמ' 7). ואולם באחת מחקירותיו הודה הנאשם כי הורה לעיאדיה לרכוש אמל"ח ולמסרם לאבו חמיד (זכ"ד ת/43 ס' 3, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 92), דבר שמחזק את דברי עיאדיה בחקירתו.

### (8) איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ועד

**.41** איסמעיל רדאידה (להלן: **"רדאידה"**) ביקש לבצע פיגוע, ופנה בעניין זה לנאשם. הוא ביצע את את פיגוע הירי במעלה אדומים שבו נרצה הנזיר היווני גרמנוס ציפוקטקיס ז"ל (ראה פרק ה(3) להלן). בגין פעילותו החבלנית הורשע רדאידה על פי הודאתו, ונדון למאסר עולם ועוד 20 שנות מאסר במצטבר. בעדותו בתיק זה (עמ' 44-42) סירב רדאידה להשיב על שאלות, הוכרז כעד עוין והודעותיו במשטרה הוגשו מכוח סעיף 10א. לפקודת הראיות (הודעות ת/151א-ת/151ג, הודיעה בכתב יד ת/151ד שנקרעה, שוחזרה ותורגמה, וקלטות בה שיחזר רדאידה את רצח הנזיר ותומללה - ת/151א1).

הודעותיו של רדאידה הוגשו על ידי החוקרים מרקן דהאן ויצחק יעקובוב, שגבו את ההודעות בערבית, אך רשמו אותן בעברית (בניגוד למקובל ולנדרש), והעידו כי הן נמסרו מרצונו החופשי של רדאידה. הודעתו של רדאידה ת/151ד נרשמה בכתב ידו בנוכחות יעקובוב (עמ' 171, 198). עורך השיחזור (מרקו דהאן) לא התייחס לכך בעדותו, ועל כן יש להתעלם מקלטת השיחזור, בהיותה אמרת חוץ של עד שלא הוגשה כדין.

**.42** בהודעתו הראשונה (ת/151א) סיפר רדאידה כי החליט לבצע פיגוע כאשר ראה בטלויזיה שתינוקת פלסטינאית נהרגה, ועל כן ניגש למשרדו של הנאשם. השיחה ביניהם התנהלה ביחידות, ורדאידה אמר לנאשם כי הוא רוצה לבצע פיגוע ודרוש לו נשק לשם כך. הנאשם הפנה את רדאידה אל אדם בשם מוהנד (אבו חלאוה) שכינויו "יעלאאו" (להלן: **"מוהנד"**), והורה למוהנד להשיג נשק לרדאידה. בהודעתו השניה (ת/151ב) הוסיף רדאידה כי הוא הבהיר לנאשם שהנשק דרוש לו על מנת לבצע פיגועים נגד מטרות ישראליות, ואז הפנה אותו הנאשם אל מוהנד. מוהנד אמר לרדאידה כי ישיג לו שני רובי קלצ'ניקוב, וכי מעתה ואילך הקשר שלו יהיה עם מוהנד ולא עם הנאשם. כעבור כשבועיים התקשר מוהנד אל רדאידה, אשר בינתיים צירף אדם נוסף לפיגוע, והודיע כי הנשקים מוכנים. רדאידה קיבל את הנשקים והתחמושת ממוהנד, אשר תדרך את רדאידה ואת חברו כיצד להפעילם.

לאחר כמה ימים בהם הכינו רדאידה וחברו יאסר את הפיגוע, ותיצפתו לעבר כביש מעלה אדומים, הם ביצעו את הפיגוע, כאשר פתחו בירי לעבר הרכב שבו נסע הנזיר ונמלטו. למחרת התברר לרדאידה בחדשות כי הרג נזיר יווני, ומוהנד התקשר אליו ובא אליו בטענות על כך ; רדאידה הסביר כי חשב שמדובר במתנחל. רדאידה נשאל בחקירתו מדוע פנה לנאשם כאשר החליט לבצע פיגוע, והשיב כי ראה את הנאשם כמה פעמים בטלוויזיה והבין **"שהוא האדם היחיד שיכול לעזור לי בהשגת הנשק"** (עמ' 5).

בהודעתו השלישית (ת/151ג), גילה רדאידה כי כוונתו המקורית היתה לעשות פיגוע התאבדות, אך הנאשם אמר לו : **"פיגועי התאבדות זה העבודה של החמאס והג'יהאד האיסלמי ושהתנזים עושה פיגועים נגד הצבא והמתנחלים".**

**רדאידה** הוסיף ואמר: **"מרואן ברגותי אמר שהוא מוכן לתת לי אמל"ח כדי שאני אעשה פיגועים נגד חיילים ונגד מתנחלים"** (עמ' 1). גרסתו הנ"ל של רדאידה עולה גם מן המסמך שכתב בכתב ידו (ת/151ד), אם כי בצורה מתומצתת יותר.

43.   דבריו של רדאידה נתמכים בדברי הנאשם בחקירתו (תמליל ת/98יא עמ' 37-38, ותמליל ת/98ד עמ' 2-4, 11-12 שבהם נרשם בטעות שם איסמעיל אלדבע במקום איסמעיל רדאידה). בחקירתו במשטרה הכחיש הנאשם כי מוהנד עבד במשרדו או היה סגנו, ואמר כי מוהנד לא קשור לתנזים (הודעה ת/102 עמ' 3, ת/103 עמ' 5, ת/105 עמ' 2, ת/106 עמ' 1). גם בתחילת חקירתו בשב"כ הכחיש הנאשם כי הכיר את רדאידה, וכי מוהנד עבד במשרדו (זכ"ד ת/9 סי' 8-9 וזכ"ד ת/21 סי' 22 שהוגשו ואושרו ע"י החוקר "רוברטו" בעמי 62-63).

ואולם בהמשך חקירתו הודה הנאשם כי רדאידה בא אליו בהצעה לבצע פיגוע התאבדות, והנאשם אמר לו: **"אנחנו לא עובדים בפיגועי התאבדות".** הנאשם הפנה אותו אל מוהנד, ואמר למוהנד שרדאידה **"צריך אימון...תמצא לו מישהו".** כמו כן אמר הנאשם: **"שיכם איתו מוהנד וניסו לעשות פיגוע פה במעלה אדומים או במקום אחר, אני ידעתי יותר מאוחר... אז הם ירו על הרכב ונפצע מישהו אלחורי... נהרג יעני"** ("אלחורי" משמעותו "כומר" בערבית - ע.ב.). הודאה דומה של הנאשם בניסוס של רדאידה לשם ביצוע פיגועים באמצעות מוהנד עולה מדבריה שאמר בחקירותיו (ראה: זכ"ד ת/22 סי' 12-16 וזכ"ד ת/40 סי' 9 שהוגשו ואושרו על ידי החוקר "מופזי" בעמי 58, זכ"ד ת/23 סי' 6 שהוגש ואושר על ידי החוקר "דני" בעמי 90, ותמליל חקירתו של הנאשם ת/98די עמי 21-26, ות/98ז' עמי 8).

עוד הודה הנאשם בחקירתו כי נפגש עם מוהנד, והעביר לו כספים לצורך ביצוע פיגועים, לאחר שמוהנד סיפר לו כי החוליה שלו ביצעה מספר פיגועים, כולל רצח בני הזוג כהנא ז"ל. הנאשם אמר כי נתן למוהנד סך של כ- 3,000 דולר ואף נשק (זכ"ד ת/43 סי' 14-16 שהוגש ואושר על ידי החוקר "רוברטו" בעמי 62; זכ"ד ת/59 סי' 10 שהוגש ואושר על ידי החוקר "ואדי" בעמי 56; זכ"ד ת/67 סי' 6 שהוגש ואושר על ידי החוקר "אמילי" בעמי 54; זכ"ד ת/68 שהוגש ואושר על ידי החוקר "סטיבי" בעי 53).

בתמליל חקירתו של הנאשם (ת/98ד עמי 21-23), הוא מספר על כך שמוהנד הודיע לו שהחוליה שלו נתפסה, והסביר שמוהנד התייחס **"לאלה שאנחנו סידרנו להם נשק".**

44.   קשריו של הנאשם עם מוהנד עולים גם מדברים שאמר בהודעתו כמאל אבו ועד (להלן: **"ועד"**), לפיהם הוא היה מקבל כסף ממוהנד בידיעתו ובהוראתו של הנאשם. בדרך זו היה מקבל מהנאשם, באמצעות מוהנד, סכום של כ- 25,000 ₪, שרובו יועד לייצור מרגמה וקניית אקדחים. בשלב מסוים החל הנאשם להתקשר ישירות אל ועד, ולברר מהם צרכיו. כמו כן אמר ועד בחקירתו כי הנאשם היה מעביר לו כספים גם דרך ג'מאל אחוויל, וכי לאחר ביצוע הפיגוע במירב התקשר אליו הנאשם כדי לברר שמות האנשים שהשתתפו בפיגוע, על מנת להעביר להם כספים (ת/181ג עמי 4-5 , וזכ"ד ת/181ד סעי 6). ועד אמר בחקירתו כי הוא ומוהנד היו מחליטים ביניהם למה הוא זקוק, ואז הנאשם היה שולח להם את הכסף; הנאשם נהג להתקשר לועד ולברר שהכסף ששלח לו עם מוהנד אכן הגיע (זכ"ד ת/181ד סעי 6.1). בשלב מסוים ניתק הקשר בין ועד לבין מוהנד, והנאשם אמר לועד כי יש לו בעיות כלכליות, ואין לו כסף לקנות כדורים; בשלב זה הפנה הנאשם את ועד לג'מאל אחויל לצורך קבלת כספים (זכ"דים ת/181ג סעי 15 ו- ת/181ד סעי 6.1).

45.   ועד ביצע מספר פיגועי ירי במסגרת פעילותם של גדודי חללי אלאקצא, והוא פרט את הפיגועים בהם השתתף בהודעותיו במשטרה ובחקירתו בשב"כ. בעדותו סרב להשיב על שאלות (עמי 188-189), ולפיכך הוגשה הודעתו במשטרה (ת/181א-ב) לפי סעיף 10א. לפקודת הראיות, באמצעות החוקר גדיר סאלח, שהעיד כי היא נמסרה מרצונו החופשי של ועד בשפה הערבית, אך

נרשמה בעברית (עמ' 209). כמו כן הוגשו שני זכ"דים מחקירתו של וער בשב"כ (ת/181ג-ד, שהוגשו באמצעות החוקר "גווחי" בעמ' 205). אמרות החוף של וער אמנם אינן נתמכות בראיות נוספות, אך הובאו ראיות רבות על הסיוע שהגיש הנאשם לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

### (9)   נאסר (חלום) נאג'י אבו חמיד

46.    נאסר חלום נאג'י אבו חמיד (להלן: **"חלום"**) הוא אחיו של אבו חמיד, והוא ביצע פיגועי ירי מסגרת גדודי חללי אל-אקצא. חלום היה מעורב בפגיגוע בו נורתה למוות השוטרת גלית ארביב ז"ל בנווה יעקב ירושלים (ראה פרק ה(10) להלן). הוא גם השתתף בהכנת הפיגוע הקטלני במסעדת "סי פוד מרקטי" בתל אביב (ראה פרק ה(12) להלן). הוא הורשע על פי הודאתו ונדון לעונש של חמישה מאסרי עולם מצטברים (ת/161א'-ב').

בעדותו סרב חלום להשיב על שאלות (עמי 76-73), וטען כי הנאשם הוא מנהיג פוליטי שאין לו קשר עם "ענייינים צבאיים". לפיכך הוגשו הודעותיו במשטרה (ת/162א'-ג' על ידי השוטרים מזרחי ואלקרעאן בעמ' 184, 194). הקשר של חלום היה עם אחמד ברגותי, שהיה עוזרו הקרוב של הנאשם.

### (10)   זיאד חמודה

47.    זיאד חמודה (להלן: **"חמודה"**) היה פעיל בתנזים. בעדותו סרב חמודה להשיב על שאלות, ולאחר שהוגשה הודעתו לפי סעיף 10א. לפקודת הראיות, כאשר הוכרז כעד עוין, הוא טען כי חתם על הודעתו על מנת שיעשו לו ניתוח אנפרציטו (עמי 197-166). הוא הכחיש את הדברים שאמר בהודעתו ת/167ב', וטען כי הנאשם הוא "איש שלום". הודעתו של חמודה נגבתה על ידי השוטר אבי עקיבא, אשר לא הובא לעדות, ולפיכך היא לא הוגשה כדין ויש להתעלם ממנה.

חמודה הורשע על פי הודאתו בשורה ארוכה של עבירות ביטחוניות (ת/167א). בכתב האישום בו הודה חמודה, נטען כי הוא גויס לתנזים על ידי הנאשם, לצורך הכשרה צבאית, והובטח לו כי הנאשם ידאג לו לסיוע כספי. כמו כן נטען בכתב האישום בו הודה חמודה כי הוא פנה אל הנאשם לקבלת נשק לצורך ביצוע פיגוע ירי לעבר היישוב פסגות, והנאשם הפנה אותו אל מוהנד לצורך קבלת נשק (פרט חמישעי ופרט שביעי לכתב האישום). בחקירתו בשב"כ אישר הנאשם כי חמודה ביקש ממנו נשק, ולמכתב זכרונו לא קיבל זאת (זכ"יד ת/34 ס' 5 שהוגש ואושר על ידי החוקר "איתיי" בעמ' 52).

במקום אחר בחקירתו אמר הנאשם כי ייתכן שחמודה קיבל ממנו רובה MP-5 (תמליל חקירה ת/98הי עמ' 67). אין בחומר הראיות דבר המפליל את הנאשם זולת הודאתו של חמודה בעובדות כתב האישום לפיו הורשע, ולא ניתן לבסס ממצאי כלשהו על סמך הודאה שכזו (ראה סעיף 132(ג) להלן). אך הובאו ראיות רבות אחרות בדבר הסיוע שהגיש הנאשם לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

### (11)   ריאד עמור

48.    ריאד עמור (להלן: **"עמור"**) היה פעיל שטח נוסף של התנזים, שפרט בחקירתו את הפיגועים בהם נטל חלק. בעדותו סרב עמור להשיב על שאלות (עמי 174-172), וטען כי לא היה לו קשר עם הנאשם. הוא הוכרז כעד עויין, והודעותיו ת/169א'-ב' הוגשו באמצעות השוטרים דוד מזרחי ויעקב ברזואני, שהעידו כי עמור מסר אותן ותחם עליהם מרצונו החופשי (עמי 186,208). ההודעות נגבו בערבית אך נרשמו בעברית (שלא על פי המקובל והדרוש). עמור הורשע עפ"י הודאתו בביצוע פיגועים רבים (ת/169ג'-ד').

**.49**    עמור סיפר בחקירתו כי פגש את הנאשם כחצי שנה לפני מעצרו, והנאשם אמר לו כי הוא
מרוצה מהפעילות של עמור וחבריו בבית לחם, וכי עדיף שיעשו פיגועים כנגד הצבא ולא כנגד
מטרות אזרחיות, כי **"זה עושה בעיות"**, וי**"גורם כאב ראש ליו"ר"** (ת/169א' עמי 3, ת/169בי עמי
11). הנאשם טען בחקירתו במשטרה כי איננו מכיר כלל את ריאד עמור
(ת/104 עמי 9), ואין כל ראיה לסתור טענה זו זולת אמרת החוץ של עמור הטעונה חיזוק, שלא
נמצא לה. אך הובאו ראיות רבות אחרות בדבר עמדתו הכללית של הנאשם בעד ביצוע פיגועים כנגד
חיילים ומתנחלים.

**(12)    נאצר חאגי'**

**.50**    נאצר חאגי (להלן: **"חאגי'"**) פעל אף הוא במסגרת הפת"ח, ופרט בהודעתו ת/170אי את
הפיגועים בהם נטל חלק. בעדותו סרב תחילה להשיב על שאלות, ולאחר מכן  הכחיש את כל מה
שאמר בחקירתו (עמי 176-175).

לפיכך הוגשה הודעתו לפי סעי 10א. לפקודת הראיות, באמצעות החוקר משה לוי, שהעיד כי חאגי
מסר את ההודעה מרצונו החופשי לאחר שהוזהר בדבר זכויותיו (עמי 211-212).

בהודעתו הנ"ל אמר חאגי כי פנה יחד עם פעילים אחרים למשרדו של הנאשם בבקשה לקבל כספים
ונשק. הנאשם אמר להם לחפש נשק, וכי הוא ימנן את רכישתו. מאוחר יותר נתן לו הנאשם 1,200
דולר לצורך רכישת נשק (עמי 4-5). אין בחומר הראיות דבר לחיזוק אמרת החוץ הנ"ל של חאגי
הטעונה חיזוק, אך הובאו ראיות רבות לסיוע שהגיש הנאשם לאנשי השטח ברכישת נשק לצורך
ביצוע פיגועים.

**(13)    תחריר ברגותי**

**.51**    תחריר ברגותי (להלן: **"תחריר")**, שהוא קרוב משפחה של הנאשם, ביצע על פי מה שמסר
בחקירתו פיגועי ירי רבים. הוא סרב להשיב על שאלות בבית משפט (עמי 178-177), ולפיכך הוגשו
הודעותיו במשטרה לפי סעי 10א. לפקודת הראיות (ת/171אי-די), באמצעות השוטר יעקב ברזאני
שגבה אותן, והעיד כי ההודעות נמסרו מרצונו החופשי של תחריר בשפה הערבית, ותורגמו לעברית
לאחר מכן (עמי 207).

**.52**    תחריר אמר בחקירתו כי פנה אל הנאשם בבקשה לסייע לו להקים חוליה. הנאשם הבטיח
לעזור לתחריר בכסף ובתחמושת, ולסייע לאנשיו את יעצרו. הנאשם אף הציע לתחריר להיות
אחראי על החוליה, ולהתרחק מפעילות בעצמו. תחריר הסביר בחקירתו כי פנה אל הנאשם על מנת
לקבל נשק לחוליה שהקים (ת/171די עמי 3). לאחר מכן נמשך הקשר באמצעות מוהנד, שרמז לו כי
הנאשם אינו מעונין שהוא יקח חלק בפעילות; הנאשם עצמו הסביר לתחריר כי עמדתו זו נובעת
מכך שחבריו החוליה שלו הם נוכלים (ת/171 עמי 4).

הנאשם הכחיש בחקירתו במשטרה את כל דבריו של תחריר (ת/104 עמי 10-9). ואולם בחקירתו
בשב"כ הודה הנאשם כי תחריר פנה אליו על מנת לבצע פיגועים, וביקש נשק לצורך כך.
אלא שלטענת הנאשם הוא לא נענה לבקשה (זכ"ד ת/30 סי 1, שהוגש ואושר על ידי החוקר "אמילי"
בעמי 54). אין בחומר הראיות דבר זולת אמרת החוץ של תחריר, הטעונה חיזוק שלא נמצא,
לסתירת טענתו של הנאשם. אך הובאו ראיות רבות לכך שהנאשם סייע לאנשי חוליות הטרור
לרכוש נשק לצורך ביצוע פיגועים.

**(14)    אחמד מוצפר**

53. אחמד מוצפר היה סוחר נשק שסיפק כלי נשק לאנשי התנזים ולגדודי חללי אלאקצא. בעדותו (עמ' 186-188) סרב להשיב על שאלות, והתכחש לכל מה שאמר בחקירתו. מוצפר הוכרז כעד עוין והודעתו במשטרה הוגשה לפי סעיף 10א. לפקודת הראיות (ת/179), באמצעות החוקר יעקב ברזאני, שהעיד כי ההודעה נמסרה לאחר שמוצפר קיבל אזהרה לגבי זכויותיו, וחתם על ההודעה שנגבתה בערבית, אך נרשמה בעברית (עמ' 208).

בהודעתו סיפר מוצפר על פגישה שלו ושל חבריו במשרדו של הנאשם, יומיים לפני הריגתו של ראיד כרמי. הנאשם אמר להם כי הם צריכים להמשיך בפעילות בכפר מגוריהם, ולא ברמאללה, והבטיח לעזור להם. לאחר מותו של כרמי קיבל מוצפר הוראה לבצע פיגוע נקמה; ההוראה הגיעה ממחמוד גיאבר, שעבד במשרדו של הנאשם, ולכן הבין מוצפר שמדובר בהנחיה של הנאשם (ת/179 עמ' 7-6). הנאשם הכחיש בחקירתו במשטרה את דבריו של מוצפר (ת/104 עמ' 3), ואין ראיה לחיזוק אמרת החוץ של מוצפר, זולת הראיות הרבות שהובאו בדבר קריאתו של הנאשם לנקום בדרך פיגוע את מותו של כרמי.

## (15) שריף נאג'י

54. שריף נאג'י (להלן: **"שריף"**), היה חבר בחוליה של אחיו אבו חמיד, שביצעה פיגועים כנגד אזרחים ישראלים, והוא גם היה שומר ראשו של הנאשם. שריף היה זה שליווה את המתאבד אברהם חסונה, אשר ביצע את הפיגוע ב"סי פוד מרקט" בתל-אביב, הוא פירט בהודעתו את כל מעלליו.

שריף, כמו יתר חבריו, סרב בעדותו להשיב על שאלות, פרט לכך שטען כי הכיר את הנאשם רק מהטלוויזיה. הוא הוכרז כעד עוין והודעתו ת/182, אליה צורף כתב ידו המתורגם בערבית ת/182א, הוגשה באמצעות החוקר אבי בן לולו, שהעיד כי ההודעה נמסרה מרצונו החופשי של שריף (עמ' 210).

55. בהודעתו ת/182 מספר שריף על פיגועי הירי שביצע לעבר חיילים ומתנחלים במסגרת ארגון התנזים של פתח''ח. הוא הסכיר כי ביצע את הפיגוע/ים על מנת שהאינתיפאדה תימשך דווקא משום שהוא מעונין בשלום, והוסיף: **"כך היו אומרים לנו ערפאת ומרואן ברגותי וחוסין אשיך היו אומרים בטלוויזיה הפלשתינאית ובאלג'זירה... הם היו אומרים שאם האינתיפאדה תימשך אז אנחנו נקבל יותר שטחים ויותר דברים מישראל"** (עמ' 4). הנאשם הכחיש בחקירתו במשטרה אמירת דברים אלו (ת/103 עמ' 5).

לאחר שהחוליה של שריף התפרקה בשל מותו של מוחמד עומסי, החל שריף לשמש כשומר ראשו של הנאשם במשך כחצי שנה עד למעצרו. הוא אמר בחקירתו על הנאשם: **"הייתי שומע אותו אומר לאנשים שלו שימשיכו בפיגועים והיה אומר זאת בטלוויזיה הישראלית והערבית באופן חופשי"** (עמ' 5). בחלקה השני של הודעתו סיפר שריף על חלקו בפיגוע במסעדת "סי פוד מרקט" בתל-אביב, ועל מעורבותו של אחמד ברגותי בפיגוע (עמ' 11-5). הנאשם הכחיש בחקירתו כי היה לו קשר כלשהו עם שריף, אם כי הכיר אותו (זכ''ד 34/ ס' 4, שהוגש ואושר על ידי החוקר "איתי" בעמ' 52). ואולם הדברים שאמר שריף נתמכים בראיות רבות שהובאו על כך שהנאשם היה קורא באמצעי התקשורת לבצע פיגועים כנגד ישראל, וכך אף הורה לאנשיו לעשות.

## (16) אמיד אבו רדאחה

56. אמיד אבו רדאחה (להלן: **"אבו רדאחה"**) היה פעיל נוסף בתנזים שביצע פיגועי ירי לעבר חיילים ומתנחלים, כפי שסיפר בחקירתו. בעדותו טען שלא היה לו שום קשר עם הנאשם ועם אחמד ברגותי, וכי לא קיבל נשק מהנאשם אלא מהרשות הפלשתינאית.