1   הנאשם נשאל לגבי רכישות של סירות עבור פתחי ראזם ומסר כי ערפאת הורה לו בשנת 2000
2   להעביר 150,000 דולר לרכישת 2 סירות דייגים. הנאשם ציין כי כסף זה העביר עוד לפני שהעביר
3   לפתחי 125,000 דולר עבור הקארין A.
4
5   הנאשם סיפר על כספים שהעביר לצורך רכישת תחמושת בבית לחם וכן כי מימן משכורות לאנשי
6   מחמוד עביאת. לטענתו, חלק מהכספים שהעביר שימשו למשכורות (500 ש"ח לאדם) וחלק שימש
7   לרכישת תחמושת.
8
9   ת/7 – אמרת הנאשם מיום 30.3.06: הנאשם נשאל אודות היכרותו עם מחמוד זוהירי ומסר כי זה
10  היה אחראי על רכישת אמל"ח בגדה וכי הוא רכש 1000 רובי קלצ'יניקוב. הנאשם ציין כי הוא
11  העביר למחמוד זוהירי את הכסף לרכישה בסך של כ-2 מיליון דולר.
12
13  הנאשם מסר כי שילם לג'ומעה אבו שכרי 570,000 דולר תמורת 7 טילי סאגר ו-18 רובים
14  מקולקלים אותם החזירו. לדבריו, את הטילים החזיק בידיוואן' ליד ביתו בעזה ומאוחר יותר
15  העבירם לע/ראזק מג'איידה. הנאשם הוסיף ומסר פרטים אודות אנשים שונים אשר הביאו
16  אמל"ח, וציין כי הוא היה מעביר את הכסף, ואת הנשק היו מחזיקים במחסן בתוך המשרד שלו.
17  לטענתו, יאסר ערפאת היה נותן לו הוראה למי להעביר את האמל"ח, והוא היה מורה לסגנו לתת
18  נשקים בהתאם להוראותיו של ערפאת.
19
20  הנאשם מסר כי מחמוד אבו מרזוק ייצר מטעינים לע/ראזק מג'איידה, והוא העביר למג'איידה את
21  הכסף על מנת שיועבר למחמוד אבו מרזוק. הנאשם מסר מידע גם אודות עסקאות נשק נוספות.
22
23  לנאשם הוצג במהלך החקירה מסמך (ת/8) והוא ציין כי המדובר בנייר של מחמוד אבו מרזוק עליו
24  רשומות הצעות מחירים של נשקים, ובהתאם למחירים שצוינו התחשבן איתו על הכסף.
25
26  ת/9 – אמרת הנאשם מיום 2.4.06 שעה 09:50: בראשית חקירתו הופנה הנאשם לאמרתו מיום
27  19.3.06, בה מסר שהבריח נשקים בספינה, והוא אישר כי סיפר זאת. הנאשם נשאל על מעורבותם
28  של אחרים בהברחת הנשקים וסיפר על כך. בין היתר מסר הנאשם כי ביולי 2001 מסר לפתחי
29  ראזם 50,000 דולר בהוראת ערפאת עבור הברחת פצצות ומטולי אר.פי.ג'י. הנאשם ציין כי את
30  הכסף העביר עבור ההברחה ולא עבור האמל"ח, שכן זה ניתן להם בחינם מהחיזבאללה.
31
32  הנאשם התבקש לספר שוב אודות קארין A ומסר כי פגש את פתחי ראזם בירדן, שסיפר לו כי
33  נפגש בלבנון עם נציגי חיזבאללה ואיראן. אלה הסכימו להעביר להם 3 מיכלים עם אמל"ח במימון
34  האיראנים, והם (הפלסטינים – צ.ל.) יצטרכו לשלם רק עבור הוצאות הספינה. הנאשם מסר כי
35  הוצע להם לקחת נשק מאתמד ג'יבריל אולם הם לא עשו זאת. כשנשאל למה, ענה "כי יש לנו נשק
36  בחינם מהחיזבאללה ומהאיראנים אז למה לקחת ממנו". הוא מסר כי התכנון היה להביא ספינות
37  עם נשק לנמל עלי, והוא ופתחי שוחחו עם ערפאת ואמרו לו שצריך 125,000 דולר. יאסר ערפאת
38  אמר לנאשם לתת את הכסף והנאשם אמר כי אין לו. יאסר ערפאת אמר לפתחי לכתוב נייר בקשה

-23-

תאריך: 29/07/09

תיק מס': 3052/06

1   עם הדרישה לכסף, ולאחר שפתחי עשה זאת, הנאשם לקח את הבקשה לרמאללה, העבירה
2   לערפאת וזה כתב לחרבי צרצור שישלם את הכסף. חרבי העביר את הכסף לפתחי.
3
4   הנאשם התבקש לחזור ולספר על המפגש עם האיראנים. לדבריו, פגש בשני נציגים, שלהערכתו
5   הבכיר בהם היה אחד בשם אחמד סאלם.
6
7   ת/10 -- אמרת הנאשם מיום 2.4.06 שעה 14:01: (במאמר מוסגר אציין כי התאריך הרשום על גבי
8   אמרה זו הינו 4.2.06. המדובר בטעות שהובהרה בת/13, והתאריך הנכון הוא 2.4.06. בל נשכח כי
9   לא ייתכן שביום 4.2.06 הנאשם נחקר, כיוון שנעצר רק כחודש וחצי לאחר מכן).
10
11  הנאשם מסר כי הקים ועדת רכש, שהקימה מחסן נשק בו שמו כל מה שהועדה קנתה. הנאשם
12  נשאל על הועדה המדעית ואמר כי פעילות ועדה זו הינה העברת קורסים בייצור אמלייח. תפקיד
13  הועדה בגדה היה לבדוק שהנשק שנרכש היה תקין. הוצג לנאשם מסמך והוא ציין כי המדובר
14  במסמך של הועדה המדעית בו הם מבקשים מכונות הלחמה ומחרטות. הנאשם העביר את
15  הבקשה לערפאת והוא לא יודע מה נעשה איתה. הנאשם מסר כי הועדה המדעית היא של הפתייח,
16  גדודי חללי אל אקצא הם פעילי פתייח, ויאסר ערפאת היה נותן לגדודי חללי אלאקצא כסף
17  לפעילות "מתחת לשולחן".
18
19  הנאשם ציין כי אנשי משרדו העבירו לפתחי ראזם 150,000 דולר על מנת שיקנה שתי סירות דייג,
20  ועוד לפני כן העביר הנאשם 50,000 דולר, כדי שייתן אותם ללבנונים לכיסוי הוצאות הבריחה
21  חביות נשק עליהן סיפר קודם לכן (באמרה קודמת).
22
23  הנאשם מסר כי פתחי ראזם פגש בלבנון את עאדל מוגרבי, את החיזבאללה ואת משמרות
24  המהפכה של האיראנים. הנאשם שאל אותו אם הוא סיפר זאת לערפאת ופתחי אמר לו שהוא
25  סיפר לו על תכנון הברחת הספינה ועל פגישותיו בהקשר זה. פתחי אמר לנאשם כי הוא רוצה
26  שידבר עם ערפאת בי פתחי צריך 125,000 דולר להוצאות הספינה. הנאשם דיבר על כך עם יאסר
27  ערפאת בשדה התעופה בירדן. יאסר ערפאת אמר לנאשם שפתחי יכין נייר בקשה לקבלת הכסף.
28  פתחי עשה זאת ולאחר 3 ימים נתן הנאשם לערפאת את המסמך. ערפאת כתב לנאשם שצריך
29  להעביר את הכסף לפתחי דרך חרבי צרצור והנאשם העביר את הנייר דרך שליח לחרבי צרצור
30  ומסר על כך לפתחי.
31
32  הנאשם מסר כי העביר כסף למחמוד זוהירי, כדי שיקנה נשק "מבחוץ" (היינו: מחוץ לשטחי
33  הרשייפ). הנאשם מסר כי היה לו מחסן ברמאללה, בו שמו את כל הנשקים שקנו ממחמוד זוהירי,
34  והם היו מחלקים את הנשקים בהתאם להוראת יאסר ערפאת.
35
36  הנאשם מסר כי בחודש אוגוסט 2001 קנה מגיימעה אבו זכרי 7 טילים, תמורתם שילם 75,000
37  דולר, והעבירם לעי'ראזק מגיאידה.
38

-24-

תאריך: 29/07/09                                                                                              תיק מס': 3052/06

1   הנאשם מסר כי בשנת 2001 הגיע אליו שליח ממרואן ברגותי עם שני ניירות – באחד בקשה לקנות
2   תחמושת לפעילי גדודי חללי אלאקצא ב-25,000 דינר, והנייר השני פירט את מספר הלוחמים בכל
3   איזור על מנת שתועבר להם משכורת חודשית. הנאשם העביר את הניירות ליאסר ערפאת שיחליט
4   בעניין, ויאסר ערפאת נתן לו הוראה לתת למרואן ברגותי את הכסף שביקש. הנאשם הודיע כי אין
5   לו כסף, ואז נתן ערפאת הוראה למשרד האוצר להעביר את הכסף.
6

7   הנאשם מסר כי כשהגיע לתימן, קיבל את פניו תייסיר עג'ינה, ומסר לו שהספינה של עאדל ופתחי
8   הגיעה אליהם. תייסיר אמר לנאשם כי הכינו לעאדל מוגרבי דרכון והם רצו להכין דרכון גם לעומר
9   עכאווי, הקפטן של הספינה.
10

11  הנאשם הוסיף וסיפר כי העביר כסף לעלי מחסין, בכיר בצבא תימן, במסגרת שותפות שמטרתה
12  מכירת תחמושת של כדורים נותבים תמורת רווח, אולם לבסוף לא התבצעה עיסקה והוא קיבל
13  את הכסף שלהם בחזרה.
14

15  <u>ת/12 – אמרת הנאשם מיום 14.5.06</u>: בפתח החקירה הוצג לנאשם מסמך, והנאשם מסר כי מסמך
16  זה עוסק בבקשה שקיבל לקנות מחרטה וסכינים. את המסמך הזה העביר מרואן ברגותי, והנאשם
17  שלח את המסמך לערפאת. המסמך לא חזר אליו עם הוראת תשלום. הנאשם זכר כי צורפו למסמך
18  זה שני ניירות נוספים, באחד מהם בקשה לרכישת נשק, ובשני בקשה לתשלום משכורות לאנשי
19  "שוהדא אל אקצא", אולם שמותיהם לא הופיעו אצלו ברשימה ולכן לא יכול היה לשלם להם.
20

21  הנאשם נשאל מה יש לו להוסיף לגבי טילי הסאגר שקנו, ואמר כי הגיעה הוראה מערפאת לשלם
22  עבור הטילים, כיוון שפחדו שאנשים יקנו אותם וישתמשו בהם.
23

24  <u>עדות הנאשם בתיק העיקרי – חקירה ראשית</u>
25

26  הנאשם פתח עדותו בכך שהוא מנהל מחלקת הכספים ברשות הפלסטינית וסמכויותיו היו של
27  פקיד שקיבל את הוראותיו מהראיס, יאסר ערפאת, ומסגן חראיס, ע/ראזק מג'אידה. לדבריו, לא
28  הייתה לו כל סמכות לקבל החלטות בעצמו, אלא הוא פעל רק על פי הוראות כתובות.
29

30  הנאשם אישר כי אכן התקיימה פגישה בשנת 2000 של כל האחראים על גופי הביטחון במשרדו של
31  יאסר ערפאת בעזה. הוא ציין כי כל הנוכחים בפגישה מלבדו היו נוהגים להיפגש עם מפקדים
32  ישראלים. לטענתו, מה שנאמר במפגש זה היה כי יש לאסוף את כלי הנשק שבידי הציבור
33  והאזרחים, ואם צריך אף יש לשלם עליהם. לטענתו, תפקידו היה לברר מי הבעלים של כלי הנשק,
34  מה מחירם, ולקבל אישור מהראיס שיחתום על התשלום. רק לאחר קבלת הוראה הוא שחרר את
35  הכסף לתשלום.
36

37  לטענת הנאשם, הנשק נאסף כדי שלא ישמש בידי גורמים כחמאס וכג'יהאד האיסלמי, שאינם
38  מכירים בהסכמי אוסלו. הנאשם טען כי לא נרכש נשק מחוץ לתחומי הרשות. עוד טען הנאשם כי
39  הנשק הגיע למחסן בבניין של הביטחון הלאומי, בו היו גם משרדיו, אולם הוא לא היה אחראי על

1   המחסן. למיטב ידיעתו, מבצע איסוף הנשק היה דבר ידוע בציבור. עוד טען הנאשם כי אינו יודע
2   כמה נשק נרכש וכמה כסף שולם עבורו, וחזר על כך שכל הוצאה אושרה על ידי יאסר ערפאת.
3   הנאשם טען כי לא הוא העביר את כלי הנשק, והוא אינו יודע אם הועברו לארגון התנזים.

5   הנאשם אישר כי הוא מכיר את האנשים אשר שמותיהם מופיעים בפרט האישום הראשון, ובכלל
6   זה מחמוד זוהרי. לטענתו, האחרון היה מושאל למשרדו מראזי גיבאלי, ותפקידו היה להביא את
7   המסמכים החתומים מיאסר ערפאת. הנאשם טען כי לא ידע אם תפקידו של זוהרי כלל את
8   רכישת הנשק, ובכל מקרה לא היה לנאשם מחסן תחת אחריותו. לדבריו, התשלומים היו נערכים
9   בצ'יקים או במזומן, וכל סכום היה נרשם. הנאשם טען כי הוא לא ראה נשק, לא קנה ולא נתן נשק.
10  הוא רק עבד עם המסמכים, והוא עצמו מפחד מנשקים. הנאשם שב והדגיש, כי הוא לא יודע כמה
11  כסף שולם, ואיזה נשק נרכש. כל שעשה היה לקבל מסמכים מגורמי הביטחון השונים, ולתת
12  הוראות תשלום לאנשים. הנאשם הכחיש כי רכש וחילק אקדחים או כי ידוע לו על כך.

14  הנאשם הכחיש תשלום לאנשי הפת"ח והכחיש כי שילם לאנשים באזור בית לחם. לטענתו, הייתה
15  הוראה מיאסר ערפאת לשלם 500 ש"ח אבל הוא לא ידע עבור מה שילמו. אף אחד לא אמר לו כי
16  האנשים הללו שייכים לגדודי חללי אלאקצא. הנאשם הכחיש כי הגיע אליו שליח ממרואן ברגותי,
17  או כי ראה דו"ח כספי שכלל הוצאות רכישת חומרים-כימיים ליצור חומרי נפץ. הוא אף הכחיש
18  כי שילם הוצאות כספיות אחרות של גדודי חללי אלאקצא או כי קיבל הוראה מיאסר ערפאת
19  לשלם למרואן ברגותי 25,000 דינר, ובכל מקרה לא היה לו סכום כזה להעביר.

21  הנאשם הכחיש כל קשר לספינת הנשק קארין A. לטענתו, שמע עליה רק לאחר שנעצר ביריחו.
22  הנאשם אישר כי הוא מכיר את פתחי ראזם, סגן מפקד חיל הים הפלסטיני, ואישר כי פתחי ראזם
23  העביר לו מסמך מיאסר ערפאת לפיו על הנאשם לשלם לפתחי 125,000 דולר. לטענת הנאשם, לא
24  ידע עבור מה נדרש התשלום, והוא סירב לשלם כי לא היה בתקציב סכום כזה.

26  הנאשם אישר כי כשהיה בדובאי למטרות רכש כלי רכב פנה אליו עאדל מוגרבי, וביקש ממנו
27  להעביר מכתב ליאסר ערפאת. הוא פגש את עאדל מוגרבי עם אנשים נוספים, וקיבל מהם מכתב.
28  הוא העבירו ליאסר ערפאת, ובדיעבד נודע לו כי תוכן המכתב עוסק בהצעה של האיראנים לסייע
29  לרשות הפלסטינית, אולם הוא לא ידע ולא מסר דבר בנוגע לספינת נשק.

31  הנאשם אישר כי פגש בתימן את תייסיר עגינה בשגרירות הפלסטינית שם, אולם לא היה מודע
32  לכך שבזמן הזה הגיעה ספינת נשק לנמל חודיידה בתימן. הוא אישר כי תייסיר סיפר לו שמכינים
33  דרכון תימני לעאדל מוגרבי, אך לא ידע מדוע.

35  הנאשם מסר כי הרשות הפלסטינית קיבלה מתנה מעירק של שני מיליון חביות נפט גולמי, והוצע
36  לו ליצור קשר עם האיראנים על מנת שהם ימכרו את החביות עבור הפלסטינים ויתחלקו בתמורה.
37  לצורך כך נפגש עם הנספח המסחרי-כלכלי האיראני. הנאשם הכחיש כל קשר מצידו או ידיעה
38  מצידו בנוגע להצעה מטעם האיראנים לסייע לפלסטינים באימונים ובנשק, או כי היה נוכח

תיק מס׳: 3052/06                                    תאריך: 29/07/09

1   בישיבה בה הועלתה הצעה כזו. הנאשם הכחיש כי חתם על פרוטוקול של ישיבה כזו. לטענתו, רק
2   העביר מכתב מעאד׳ל מוגרבי ליאסר ערפאת, וזה סירב לקשר עם האיראנים.
3
4   עדות הנאשם בתיק העיקרי – חקירה נגדית
5
6   בחקירתו הנגדית נשאל הנאשם אם הוא מכיר את ארגון גדודי חללי אלאקצא, השיב בשלילה,
7   ואמר כי רק שמע עליהם בתקשורת. לטענתו, גם בחקירתו אמר כי אין דבר שקוראים לו ״גדודי
8   חללי אלאקצא״. הנאשם עומת עם שני מסמכים אשר הוצגו לו בחקירתו ביום 14.5.06, וטען כי
9   אינו יודע דבר על המסמכים הללו. כשנמסר לו כי במשטרה אמר שאחד המסמכים הוא בקשה
10  להקמת מחרטה, והשני בקשה למשכורות של גדודי חללי אלאקצא, טען כי אינו יודע ולא אמר את
11  הדברים הללו.
12
13  לטענתו, הוא היה בישיבה עם יאסר ערפאת בה הוחלט על רכש כלי נשק מתוקף תפקידו כאיש
14  כספים, והמטרה הייתה איסוף נשק מידי אזרחים. לדבריו, כל שהוא עשה היה למלא אחר
15  הוראותיו של יאסר ערפאת, אשר אישר באופן פרטני רכישה של כל נשק.
16
17  הנאשם נשאל לגבי פצצות אר.פי.ג׳י שהגיעו בספינה ביוני 2001, ואמר כי קיבל הוראה לשלם
18  לדייגים שמצאו את הפצצות, כפרס כספי. הנאשם אמר כי אינו יודע מהיכן הגיעה הספינה של
19  הפצצות וכאשר נמסר לו כי במשטרה אמר שזו הגיעה מטריפולי, טען כי לא אמר זאת. כך גם
20  כאשר עומת עם הטענה שמסר במשטרה ובשב״כ שנקנה נשק מלבנון וממצרים. לדבריו, הנשק
21  שנרכש על ידי נרכש רק מאזרחים, על מנת שלא יגיע לחמאס, והוא אינו יודע מה נכתב באמרותיו.
22
23  הנאשם אישר כי העביר למחמוד אבו מרזוק 20,000 דולר בהוראתו של יאסר ערפאת. לטענתו לא
24  ידע מה הסיבה לכך. כשנאמר לו שבמשטרה מסר כי הדבר נועד לשם הקמת מפעל לייצור אמל״ח
25  ורימוני יד, טען שאמר כי הבית של מחמוד אבו מרזוק התפוצץ, ולאחר מכן נודע כי השתמשו בו
26  לייצור מטענים.
27
28  הנאשם טען כי אינו יודע מיהם מחמוד עביאת או עאטף עביאת. הנאשם עומת עם דבריו במשטרה
29  לפיהם העביר להם כספים כדי שלא ילכו לחמאס, וטען כי אמר שקיבל הוראה מיאסר ערפאת
30  להעביר 500 שייח לעאטף עביאת (הכוונה כמשכורת חודשית – צ.ל.), אותו הוא לא מכיר באופן
31  אישי, אך הוא מכיר אותו בשם, בניגוד לדבריו קודם לכן.
32
33  הנאשם עומת עם מסמך נוסף שהוצג לו בחקירתו וטען כי אינו מכיר אותו. כשנאמר לו שבחקירתו
34  מסר כי המדובר במסמך של מחמוד זוהירי בו ישנן הצעות מחיר של נשקים אמר כי לא סיפר זאת.
35
36  הנאשם מסר כי היה אחראי על כספים של מנגנוני הביטחון הפלסטיניים, וכי הוא אחראי לשלם
37  בהתאם להוראות בכתב שניתנו על ידי יאסר ערפאת.
38

-27-

תאריך: 29/07/09

תיק מס': 3052/06

1. הנאשם נשאל על ידינו האם הכיר את התקציב וסעיפיו, ואישר כי הכיר אותו, וכי הוראת תשלום
2. צריכה להיות מתאימה לסעיף המצויין בתקציב. משום כך נהגו לשאול את מבקשי התשלום
3. לצורך מה נדרש הכסף שהם מבקשים. אם להוראת תשלום לא היה סעיף תקציבי מתאים, או אם
4. סרבו לומר מה מטרת התשלום – נהג הנאשם לסרב לשלם או מפנה את המבקש ליאסר ערפאת.
5. לטענתו, סעיף רכישת הנשק נקרא "תשלום על הנשקים אשר נאספים מידי האזרחים מתוך
6. המדינה". הנאשם מסר כי אם היה מקבל הוראה חריגה לשלם, למשל, כסף לפעיל חמאס או
7. לקנות ספרי לימוד לבית ספר הוא לא היה מבצע את הפעולה. יתר על כן, הנאשם ציין כי היו לו
8. קשרים טובים עם ערפאת, וכי היו מקרים שבהם התווכח עם יאסר ערפאת על הוצאות מסויימות,
9. ובסופו של דבר אמר לו ערפאת כי הוא צודק. עוד ציין כי הוא זכה לשבחים על דרכו בניהול
10. הכספים. רק לאחר מכן ציין, כי אם לא היה מבצע הוראת תשלום – היו מעמידים אותו לדין.
11. בחקירה החוזרת בידי הסנגור מסר הנאשם, כי כל סכום שצריך היה להוציא מחשבון הרשות
12. הפלסטינית חייב חתימה של שלושת בעלי זכות החתימה בחשבון, והוא לבדו לא יכול היה להוציא
13. "אפילו לא גרוש".
14.
15. **הערכת העדויות – מהימנות ומשקל**
16.
17. **עדות הנאשם – מהימנות ומשקל**
18.
19. עדות הנאשם לא עשתה עלינו רושם אמין. ניכר היה כי הוא דבק בגרסה לפיה אין הוא קשור
20. לספינת הנשק קארין A, אין הוא קשור למגעים עם האיראנים שנגעו לתיאום אימונים ורכישת
21. נשק על ידי הרשות הפלסטינית, ובכל הנוגע לרכישת נשק הוא היה שותף לישיבה שמטרתה
22. רכישת נשק מאזרחים על מנת שלא ישמשו ארגונים כגון החמאס.
23.
24. כאשר הנאשם עומת עם דברים שנרשמו או הוצגו לו בחקירה, ובכלל זה מסמכים מהם עולה כי
25. הכיר וידע למה בוצע תשלום כלשהו, באופן שאינו תואם את גרסתו במשפט, טען כי לא אמר את
26. מה שמיוחס לו בחקירה. אין בידינו לקבל זאת. תמוה כי דברים הרשומים באמרותיו והתואמים
27. את גרסתו במשפט נאמרו על ידו במשטרה ונרשמו, ואילו דברים שאינם תואמים את גרסתו
28. במשפט לא נאמרו על ידו אלא נרשמו על ידי החוקרים ללא ידיעתו. הסבר פשטני זה בדבר
29. הרישום על ידי החוקרים אינו מעורר אמון כלשהו.
30.
31. יתר על כן, חלק מטיעוניו הינם חסרי אמינות על פניהם – כך למשל, טענתו כי אינו מכיר ואינו
32. יודע מהו ארגון גדודי חללי אלקצא, או למשל טענתו כי אינו יודע מיהו עאטף עביאת, כשמיד
33. לאחר מכן הוא ציין כי שולם לאותו אדם כסף על ידי המשרד בבית לחם. כשהבין את טעותו זו,
34. טען כי אינו מכיר את עאטף עביאת באופן אישי.
35.
36. כפי שכבר ציינו ביחס למשפט הזוטא, שוכנענו כי הדברים הרשומים באמרותיו של הנאשם
37. במשטרה נרשמו מפיו והם משקפים דברים שהוא עצמו אמר. לפיכך, יש לקבוע כי טענתו
38. שהדברים לא נאמרו על ידו – הינה שקרית.
39.

-28-

תאריך: 29/07/09
תיק מס': 3052/06

1  כמו כן, טענותיו של הנאשם כי רק מילא הוראות וכי לא ידע בגין מה הועברו חלק מהכספים אינה
2  תואמת את הדברים שמסר בסוף חקירתו, כי הוא תמיד וידא שהתשלום תואם סעיף תקציבי,
3  ופירושו של דבר כי ידע למה נועד התשלום. גרסתו כי הוא רק ממלא הוראות, אינה מתיישבת עם
4  דבריו כי אם היה מקבל הוראה חריגה או מוזרה לתשלום היה מסרב לבצע אותה, או עם דבריו
5  שלו בחקירה כי פעל (בכל הנוגע למפגש עם האיראנים) עוד לפני שיאסר ערפאת אמר לו דבר
6  בעניין, כיוון שהאחרון "רוצה לראות תוצאות".
7
8  **עדותו של מחמוד עביאת – מהימנות ומשקל**
9
10  עדותו בבית המשפט של מחמוד עביאת הייתה חסרת מהימנות בעינינו ולפיכך חסרת משקל.
11  טענתו כי מסר בחקירתו אודות אדם ששמו שומאלי ולא שובאכי, הינה טענה שנועדה בבירור
12  להרחיק את האשמה מעל הנאשם. לא שוכנענו כי יש בטענה זו שמץ של אמת. יש לומר כי הנאשם
13  מסר בחקירתו כי הוא העביר כספים למחמוד עביאת, דבר התואם את אמרתו המשטרתית של
14  מחמוד. לפיכך, אנו מעדיפים את אמרותיו המשטרתיות של מחמוד עביאת על פני עדותו בבית
15  המשפט.
16
17  **התשתית העובדתית – סיכום**
18
19  מצאנו לנכון להעדיף את המצוי באמרותיו המשטרתיות של הנאשם על פני עדותו בפנינו. בכל
20  מקום בו ישנה סתירה בין השניים, סברנו כי הדברים המופיעים באמרות המשטרתיות הינם
21  עדיפים. כך הדבר גם ביחס לאמרותיו המשטרתיות של מחמוד עביאת. לאור תשתית עובדתית זו,
22  עלינו לבדוק כעת את פרטי האישום שיוחסו לנאשם, ולראות האם אשמתו עולה מחומר הראיות
23  שלפנינו.
24
25  עוד קודם לבחינה פרטנית של כל אחד ואחד מפרטי האישום, מאחר שעיקרן של כתב האישום
26  מבוסס על אמרותיו של הנאשם, עלינו לבדוק אם קיימת תוספת ראייתית מסוג "דבר מה נוסף"
27  לאמרות אלה.
28
29  במקרה שלפנינו לא סברנו כי קיים קושי ממשי כלשהו בעניין זה. תוספת ראייתית לאמרותיו של
30  הנאשם מצויה הן באמרתו של מחמוד עביאת, שאישר את העברת המשכורות לו ולאנשיו בבית
31  לחם, כפי שמסר הנאשם, ובנוסף בפנינו ת/8, שהינו מסמך בו פורטו בקשות לרכישת כלי נשק
32  ומחירם, כפי שמסר הנאשם.
33
34  ברע"פ 4142/04 מילשטיין נ' התובע הצבאי הראשי, תק-על 2006(4), 4022, התייחס כב' השופט
35  לוי למהותה של התוספת הראייתית מסוג דבר מה וקבע כדלקמן (בפסקה 20):
36
37  *"דרישת ה"דבר מה נוסף" היא גמישה ובעלת רקמה פתוחה. סוג העניינים*
38  *שעשויים להביא לסיפוקה משתנה ממקרה למקרה, ותלוי גם במהימנות*
39  *ההודאה גופה. ככל שהודאה זו זוכה למשקל גדול יותר – כך יקטן משקלו*

1 של ה"דבר מה" הדרוש לאימות ההודאה, ולהפך, ככל שההודאה זוכה
2 למשקל מועט – כך יגדל משקלו של ה"דבר מה". על כן גם נקבע כי אפשר
3 שיתעורר מקרים שבהם ניתן יהיה להסתפק ב"דבר מה" שמשקלו "קל
4 כנוצה"
5
6 וכפי שציינה כב' השופטת ארבל באותו פסק דין (בפסקה 20 לפסק דינה):
7
8 "הדרישה ל"דבר מה נוסף", הינה – בדומה ל"דבר לחיזוק" ובשונה מן
9 ה"סיוע" – דרישה לתוספת ראייתית "מאמתת". לפיכך, בשונה מן ה"סיוע",
10 ה"דבר מה הנוסף" אינו צריך להצביע על אשמת הנאשם, אלא די בראיה
11 ישירה או נסיבתית, חיצונית להודאת הנאשם, אשר יש בה לאשר במידת מה
12 את תוכן ההודאה ולהצביע על אמיתותה .... דרישת ה"דבר מה הנוסף" באה
13 להסיר חשש שמא הנאשם נוטל על עצמו אחריות למעשה שנעשה על-ידי
14 אדם אחר או שלא נעשה כלל, ולפיכך, עקרונית, מספיקה ראיה קלה מאוד
15 כדי לענות עליה... בהתאם לכך ציינה הפסיקה לא פעם כי ראיה זו "יכולה
16 להיות קלה שבקלות".. ואף בעלת משקל "קל כנוצה". די בכך שתניח את
17 דעתו של בית המשפט שההודאה אינה "בדותא בעלמא", ותשכנעו כי הסיפור
18 שסיפר הנאשם בהודאתו אמנם סיפור אפשרי הוא"
19
20 במקרה שלפנינו עניין לנו בהודאה של הנאשם המתפרשת על פני אמרות רבות, הן במשטרה והן
21 בשב"כ. הודאתו כוללת פרטי פרטים של עסקאות נשק שונות, ובכלל זה שמות, כלי נשק ומחירם
22 כמו גם התייחסות מפורטות למגעיו עם גורמים שונים של הרשות הפלסטינית ועם גורמים מחוצה
23 לה (כאיראנים). המשקל העצמי של אמרות אלה הינו גבוה מאוד. הן תוכנן והן הדרך בה הדברים
24 נאמרו מלמדים על המהימנות הגבוהה שיש להעניק להם (השווה ע"פ 6613/99 סמירק נ' מדינת
25 ישראל, פ"ד נו(3) 529, בפסקה 12 לפסק דינה של כב' השופטת (כתוארה דאז) ביניש).
26
27 אך לא רק מבחן הפרטים הרבים מלמד על האמינות שיש לייחס לאמרות הנאשם, אלא כאמור
28 לעיל, לאמרות אלה ישנן תוספות מאמתות חיצוניות בדמות אמרתו של מחמוד עביאת ובדמות
29 ת/8. לא כל שכן, שתפיסת ספינת הנשק "קארין A" תואמת אף היא את הדברים שמסר הנאשם.
30 בל נשכח כי הנאשם עצמו לא הכחיש בעדותו פרטים רבים מהמופיע באמרותיו, ובכלל זה
31 מפגש עם האיראנים.
32
33 כאמור, משקלן העצמי של האמרות הינו גבוה. הדבר מה הנוסף במקרה זה מצביע על מעורבותו
34 של הנאשם לכל הפחות במקצת העבירות, ומאמת את כלל אמרותיו של הנאשם. ודוק: הדברים
35 המפורטים באמרותיו של הנאשם כולם קשורים לתפקידו ומעמדו כאחראי על מחלקת הכספים
36 של שירותי הביטחון הפלסטיניים. כאשר קיימת זיקה פנימית וקרבה עניינית בין העבירות
37 השונות, התוספת הראייתית הקיימת לעבירה אחת יכולה להתפרש גם על עבירה אחרת (ראו ע"פ
38 241/87 כהן נ' מדינת ישראל, פ"ד מב(1) 743, ע"פ 7758/04 אלקאדר נ' מדינת ישראל, תק-על
39 2007(3) 710, ע"פ 378/03 פלוני נ' מדינת ישראל, תק-על 2005(2) 1128). לפיכך, במקרה שלפנינו,

תאריך: 29/07/09

תיק מס': 3052/06

1. הגם שקיימות תוספות ראייתיות אך למקצת הדברים שמסר הנאשם, הרי לנוכח הקרבה העניינית
2. של המעשים המתוארים בכתב האישום והמפורטים באמרותיו, יש לראות את התוספות
3. הראייתיות כמאמתות את כלל הדברים שמסר הנאשם בחקירותיו. על כן, גם אם לפרט אישום
4. מסויים לא תמצא תוספת ראייתית חיצונית, הרי שלנוכח הזיקה בין כלל האישומים במקרה זה,
5. די יהיה באמרות הנאשם כדי לבסס את ההרשעה, ככל שזו עולה מהאמרות.
6.
7. כעת, ומשהבהרנו את התשתית הראייתית העומדת לפנינו, נפנה לכל אחד ואחד מפרטי האישום.
8.
9. **פרט אישום ראשון:**
10.
11. טענות ההגנה באשר לפרט אישום זה הינן עובדתיות ומשפטיות כאחת. ראשית, מן הפן העובדתי,
12. לא כפרה ההגנה בכך שהנאשם נטל חלק ברכישת האמל"ח כאמור, אלא לטענתה דובר ברכישת
13. אמל"ח שמטרתה איסוף נשק מתושבי הרשות על מנת שיהיה בידי כוחות הרשות הפלסטינית.
14. טענה זו העלה הנאשם הן בבית המשפט והן במהלך חקירתו. שנית, נטען כי הנאשם זכאי להנות
15. מהגנת "מעשה מדינה" כיוון שכל מה שעשה היה לפעול ללא שיקול דעת עצמאי, אלא בהתאם
16. להוראות יו"ר הרשות ערפאת, שאישר העברת כספי הרשות לצורך רכישת הנשק. תפקידו של
17. הנאשם במקרה זה היה חתימה על מסמכים שאישרו תשלום. נטען כי מעשה זה אינו פשע מלחמה
18. או פשע נגד האנושות, שכן לא הוכח שהנאשם ידע שהנשק יגיע לארגון גדודי חללי אלאקצא,
19. שיעשה בו שימוש לטרור.
20.
21. עוד נטען כי עומדת לנאשם הגנת הצידוק, שכן ציות להוראות הרשות שמטרתה איסוף נשק
22. מגורמים לא אחראיים והעברתו לידי שליטה אחראית של הרשות הינה מעשה לגיטימי החוסה
23. תחת הגנת הצידוק.
24.
25. דומה כי אין לקבל את טענות ההגנה, ולו מהטעם העובדתי.
26.
27. על מנת שתתקבל הגנת "מעשה מדינה" של מדינה יש צורך להראות כי הגוף מטעמו פעל הנאשם היה
28. מדינה. כפי שנקבע בהחלטה בטענות המקדמיות מפי חברי סגן הנשיא, הרשות הפלסטינית אינה
29. מדינה, ובוודאי שבתקופה הרלוונטית לכתב האישום הייתה רחוקה הרבה יותר ממעמד של רשות
30. עצמאית. על כן ציין סגן הנשיא כי "לפיכך, אני סבור שיש לקבוע, שמעשיו של הנאשם לפי כתב
31. האישום לא היו פעולות ממשל (ACT OF STATE), שכן לא נעשו מטעם גוף שהוא מדינה, אלא לכל
32. היותר פעולות אישיות בכסות ממשלתית, תוך שימוש במשאבים של ישות מדינית בלתי מגובשת".
33.
34. לא הובאו כל תימוכין נוספים או ראיות נוספות שיש בהם כדי לשנות ממסקנתנו זו בנוגע למעמדה
35. של הרשות הפלסטינית.
36.
37. שנית, הטענה כי איסוף הנשק נועד להעברת כלי נשק מתושבים העלולים לעשות בהם שימוש
38. פרטיזאני לידי גורמים אחראיים, אין לה על מה שתסתמך. אמנם, הנאשם טען זאת במספר
39. הזדמנויות, ובכלל זה בחקירתו, אולם לא התרשמנו כי לטענה זה יש בסיס כלשהו. כאמור, כבר

-31-

1. ציינו לעיל כי התרשמותנו מהנאשם הינה כי המדובר באדם מתוחכם, המנסה להעביר מעליו את
2. נטל האחריות. בד בבד עם הטענה כי איסוף הנשק נועד למנוע מגורמים לא אחראיים את השימוש
3. בו, עולה כי הנאשם אישר מימון פעולות אשר אין בינן ולבין איסוף נשק מגורמים לא אחראיים
4. ולא כלום. כך למשל, נושא מימון הקמת מפעל לייצור חומרי נפץ בידי אנשי הרשות הפלסטינית
5. עצמה, מימון מחרטות, מימון הברחת נשק מגורמי חוץ כחיזבאללה והאיראנים וכדומה. אם כל
6. המטרה הינה איסוף נשק "פרטיזני", מדוע יש צורך למען הבאת נשק נוסף שמקורו מחוץ
7. לשטחי הרשות הפלסטינית, לא כל שכן כשמדובר בנשק התקפי מובהק, כרקטות וטילים מסוגים
8. שונים? אם מדובר רק ברכישת נשק מאזרחים, מדוע פעל הנאשם למימון עלויות הברחת הנשק
9. מהחיזבאללה בידי גורמים של הרשות הפלסטינית?
10. 
11. התשובה לשאלות האמורות הינה ברורה. אין בין איסוף הנשק לבין הרצון למנוע אותו מגורמים
12. "לא אחראיים" העלולים לעשות בו שימוש טרוריסטי ולא כלום. מטרת איסוף הנשק היא העברתו
13. לידי גורמים ברשות הפלסטינית המצייתים לערפאת ואשר מאפשרים לחימה בישראל, בכוחותיה
14. ובאזרחיה. כפי שציין הנאשם עצמו בזכ"ד מיום 15.3.06 שעה 18:15 בסעיף 30: **"יאסר ערפאת**
15. **נתן הוראה שכל הנשק יירכש על ידי הרש"פ ולא על ידי החמאס או ארגונים אחרים וזאת על**
16. **מנת שהוא עצמו יוכל לשלוט בכל מה שקורה. באופן זה יאסר ערפאת יוכל לשלוט בעוצמת**
17. **האינתיפאדה"."**
18. 
19. עינינו הרואות כי אין המדובר במטרה תמימה "ואחראית", אלא במטרה ברורה שנועדה לאפשר
20. לגורמים של הרשות הפלסטינית, ובראשם יאסר ערפאת, לשלוט באמצעות נשק חם והתקפי
21. בעוצמת "האינתיפאדה", היינו: בעוצמת הטרור הפלסטיני.
22. 
23. עוד יש לומר כי הטענה שהנאשם לא ידע שהנשק הועבר לארגון גדודי חללי אלאקצא, שעשה בו
24. שימוש לצרכי טרור, הינה טענה שאינה תואמת את חומר הראיות. כך למשל, בזכ"ד מיום 15.3.06
25. שעה 18:15 בסעיף 36 נרשם: **"והנחקר הסביר כי כל אחד ממנגנוני הבטחון רכשו אמל"ח בכמויות**
26. **גדולות והנחקר אישר את התשלום. כל ארגוני שהדא אל אקצא השתמשו בכלי הנשק שסופקו על**
27. **ידי מנגנוני הבטחון שביצעו את הרכש המאסיבי"."**
28. 
29. עינינו הרואות כי הנאשם ידע היטב שהאמל"ח שנרכש הועבר לידי גדודי חללי אלאקצא שעשו
30. שימוש בנשק זה. ברור כי הנאשם ידע מהו ארגון גדודי חללי אלקאצא ומהם פעילויותיו. ניסיונו
31. לומר בפנינו כי אינו יודע מהו ארגון זה הינו ניסיון מופרך להציגו כאדם תמים. איננו מאמינים
32. לטיעון זה. ברור לנו כי הנאשם – שהיה בעל משרה בכירה בפתח"ח במשך עשרות שנים והיה מקורב
33. ליאסר ערפאת - ידע היטב מהו ארגון גדודי חללי אלקצא, מהן פעילויותיו, והוא ידע היטב כי
34. ארגון זה הוא כלי בידי הרשות הפלסטינית להפעיל טרור נגד מדינת ישראל ותושביה.
35. 
36. עוד יש לציין כי לא התרשמנו כי הנאשם היה פקיד שמילא הוראות ללא שהיה לו שיקול דעת
37. כלשהו. הדבר נובע הן מאופיו הבכיר של תפקידו, אך גם מהעובדות שעלו בפנינו כמו גם הדברים
38. שמסר הנאשם בבית המשפט. כך למשל, במקרים לא־מעטים עולה כי הנאשם פעל מיוזמתו הוא,
39. בלא אישור כלשהו – ובוודאי בלא הוראה מפורשת - של יאסר ערפאת בהוצאת כספים. כך

1　"ביוזמות עסקיות" שנועדו להשיג רווחים לארגון הפת"ח, מגעיו עם האיראנים שהיו ללא ידיעה
2　מראש של יאסר ערפאת (אלא רק בדיעבד), ודבריו של הנאשם כי יאסר ערפאת אהב לראות ולקבל
3　תוצאות ולא היה מעורב בכל התהליך עצמו מלכתחילה. עוד נזכיר, כי הנאשם אישר במו פיו
4　בעדותו בפנינו כי לא העביר כסף אם לא היה בידו הסכום המתאים או שמטרת ההוצאה לא
5　תתאימה לסעיף מוכר בתקציב. דבר זה אינו מתיישב עם מי שרק ממלא כל הוראה של ערפאת,
6　ויתר על כן, הנאשם אמר בעדותו בפנינו ביום 18.11.08 כי אם היה מקבל הוראה שבעיניו היא
7　מוזרה הוא לא היה מבצע את הפעולה, והוסיף כי "היו לי הרבה מחלוקות עם הראיס על דברים
8　כאלה ובסופו של דבר הוא בא ואמר לי שאני צודק". מדברים אלה, שנראה כי נאמרו בגאווה רבה
9　מצידו של הנאשם, עולה כי הנאשם לא היה חותמת גומי. כאשר סבר שישנה בעיה עם הוראה כזו
10　או אחרת של ערפאת הוא היה אומר לו זאת ואף מתווכח איתו.
11
12　במקרה שלפנינו, ובכל הנוגע למעשים המפורטים בכתב האישום, לא מצא הנאשם לנכון להתווכח,
13　אף שאנו יודעים כי לו היה חושב לנכון לעשות כן היה עושה זאת. המסקנה המתבקשת הינה כי
14　לנאשם, הן מתוקף מעמדו, הן דה פקטו ביחסיו מול יאסר ערפאת, והן לאור מעשיו שלו כעולה
15　מחומר הראיות בפנינו, היה שיקול דעת אם לאשר העברת כספים אם לאו. הנאשם ידע היטב מה
16　מטרת העברת הכספים, וידע היטב כי הנשק שנרכש באמצעות אותם הכספים נועד לצורכי ארגון
17　טרור – גדודי חללי אלאקצא.
18
19　סיכום:
20
21　לא הונחה מבחינה עובדתית כל תשתית המאפשרת לתמוך בטענת ההגנה באשר להגנת הצידוק
22　העומדת לנאשם או להגנת "מעשה מדינה". הוכח כי הנאשם ידע היטב כי המדובר ברכישת נשק
23　לצורכי העברתו לשימוש ארגון טרור – גדודי חללי אלאקצא. לא דובר במקרה זה ברכש נשק
24　שמטרתו הוצאת נשק מתושבים והעברתו לי"דיים אחראיות" כטענת ההגנה.
25
26　הרשות הפלסטינית אינה מדינה, ובכל מקרה, העברת נשק לצורכי טרור נגד אזרחי ותושבי מדינת
27　ישראל אינה יכולה לחסות תחת הגנת "מעשה מדינה", אף לו דובר במדינה.
28
29　שנית, גם בנוגע להגנת הצידוק, אף אם נלך לשיטתו של חברי סגן הנשיא, אשר מוכן להכיר בהגנת
30　הצידוק לגורמים של הרשות הפלסטינית בתנאים מסויימים, אין המדובר במעשה לגיטימי מצידה
31　של הרשות, ורכישת נשק שנועד לצורכי ארגון טרור, הינה בבירור מעשה בלתי חוקי.
32
33　מאחר שהנאשם היה שותף לרכישת נשק כמפורט בפרט האישום הראשון, אנו מרשיעים אותו
34　במיוחס לו בפרט אישום זה.
35
36　פרט אישום שני:
37
38　פרט זה עניינו בהעברת משכורות לפעילי גדודי חללי אלאקצא, וכן בהעברת בקשה של מרואן
39　ברגותי לתשלום כסף עבור אמצעי לחימה.

1
2 הבסיס לפרט זה מצוי באמרותיו של הנאשם, אך גם בדברים שמסר מחמוד עביאת במשטרה.
3 הנאשם הודה בחקירתו למעשה כי העביר משכורות-לאנשיו של מחמוד עביאת, ואילו האחרון
4 אישר עניין זה באמרתו. לפיכך, הרישא של פרט אישום זה מבוססת על אמרות הנאשם וזוכה
5 לתוספת ראייתית משמעותית באמרתו של מחמוד עביאת. לפיכך, ולאור הניתוח העובדתי דלעיל,
6 יש בסיס מוצק להרשעת הנאשם ברישא של פרט האישום השני, שכן המדובר בהעברת כספים
7 לפעילי טרור.
8
9 סיפא של פרט האישום השני – נושא האמצעים שביקש מרואן ברגותי, אף הוא מופיע באמרותיו
10 של הנאשם ומפורט שם, והינו במהותו חלק מאותה מסכת כללית המתוארת בפרט האישום
11 הראשון, הנוגעת לחלקו של הנאשם במימון אמצעי לחימה שונים של אנשי הרשות הפלסטינית
12 ושל גדודי חללי אלאקצא.
13
14 בכל הנוגע לסיפא של פרט אישום זה טענה ההגנה כי הנאשם לא ביצע כל עבירה, שכן כל שעשה
15 היה להעביר לערפאת את המסמך. הנאשם לא שילם את הסכום המבוקש בהעדר תקציב במשרדו,
16 והבקשה שולמה בכלל מתקציב משרד האוצר הפלסטיני.
17
18 אין בידי לקבל את הטענה שאין המדובר בעבירה. האישום המיוחס לנאשם הינו ביצוע שירות
19 עבור התאחדות בלתי מותרת. חשירות שהעניק הנאשם לארגון גדודי חללי אלאקצא אמנם לא
20 התבטא בכך שהעביר כסף ממשרדו, אך שירות עדיין נעשה מצידו. שירות זה כלל קבלת הבקשה
21 והעברתה לערפאת. הנאשם היה הצינור באמצעותו סופלה ומומשה הבקשה. כאמור לעיל, וכפי
22 שהראינו בניתוח העובדות בפרט האישום הראשון, הנאשם היה חוליה משמעותית בכל מעשי
23 הרכש והכספים. לא זו אף זו, אלא הוא היה הצינור דרכו עברו כל הבקשות הכספיות ליאסר
24 ערפאת. כך גם במקרה זה. מעשה זה חינו שירות עבור התאחדות בלתי מותרת, ועל כן יש
25 להרשיעו במיוחס לו גם בסיפא של פרט אישום זה.
26
27 עוד יש לומר כי הדברים האמורים ביחס להגנות "מעשה מדינה" וצידוק שהועלו על ידי ההגנה,
28 נכונים גם ביחס לפרט אישום זה וביתר שאת, הואיל ובמקרה זה מדובר בסיוע ושירות ישיר
29 שהעניק הנאשם לארגון הטרור גדודי חללי אלאקצא.
30
31 **פרט אישום שלישי:**
32
33 פרט זה עניינו חלקו של הנאשם ברכש הספינה קארין A.
34
35 לטענת ההגנה הנאשם לא ביצע עבירה כלשהי. הכסף לרכישת הספינה לא הגיע מתקציבו אלא
36 מתקציב משרד אחר, עליו היה אחראי חרבי צרצור. הנאשם לא יזם את הבאת ספינת הנשק,
37 והייתה לו לכל היותר ידיעה עקיפה ולא קונקרטית שהספינה תוביל נשק. כל שעשה היה להעביר
38 את המידע בדבר הספינה ליאסר ערפאת, שחשב שמדובר במזימה לרצוח אותו.
39

1 לאחר שבחנו את חומר הראיות, מצאנו כי העובדות המיוחסות לנאשם בפרט אישום זה הוכחו
2 כנדרש. למעשה, גם ההגנה לא חלקה על כך שהעובדות המפורטות בכתב האישום הוכחו
3 באמרותיו של הנאשם. אעיר כי בכל הנוגע לרכש הספינה לא עלה כלל כי יאסר ערפאת סירב
4 לנושא או חשב כי המדובר במזימה. דברים אלה שנאמרו על ידי הנאשם, התייחסו למפגשים שלו
5 עם האיראנים המפורטים בפרט האישום הרביעי, ולא לנושא רכש הקארין A, אותו אישר ערפאת
6 ללא בעיות כלשהן, בהתאם לאמרות הנאשם.
7
8 השאלה המרכזית אותה העלתה ההגנה הינה האם מעשים אלה מהווים עבירה של סחר בציוד
9 מלחמתי.
10
11 הגדרת המילה "סחר" בצו בדבר איסור סחר בציוד מלחמתי הינה כדלקמן: "קניה, מכירה, תיווך,
12 מסירה, איחסון, הובלה, העברה, משלוח או תיקון".
13
14 פירושו של דבר, שסחר בציוד מלחמתי כולל לא רק פעולות של רכישה ומכירה, אלא גם תיווך
15 והובלה של נשק.
16
17 במקרה שלפנינו, הנאשם נטל חלק במעשים הבאים: הוא קיבל את פנייתו של פתחי ראזם למימון
18 ספינת נשק שתגיע מהאיראנים; הובהר לנאשם כי המשק שיחיה על הספינה יהיה במימון איראני
19 ואילו על הרשות הפלסטינית למממן רק את הספינה והוצאותיה; הנאשם טיפל בפנייה, הוא העביר
20 את הדברים ליאסר ערפאת אשר אישר את הקשר והסכים לרכישה; הנאשם הוא זה שהעביר את
21 בקשת התשלום לערפאת, וזה אישר את העברת הכסף; כאשר הנאשם הודיע כי אין למשרדו
22 תקציב מתאים, הורה ערפאת כי התשלום יבוצע ממשרדו של חרבי צרצור והנאשם העביר גם
23 הוראה זו באמצעות שליח ממשרדו; פתחי ראזם עמד בקשר עם הנאשם לצורך קבלת הידיעה
24 האם ניתנה ההוראה להעברת הכסף.
25
26 מעובדות אלה עולה כי הנאשם היה מעורב בתיווך ובמימון של עסקת הנשק. גם אם משרדו לא
27 שילם את הכסף באופן ישיר, הנאשם הוא זה שיצר את הקשר עם ערפאת והעלה לשיקולו, לעיונו
28 ולהכרעתו את נושא עסקת הנשק. הנאשם היה הגורם המתווך בין פתחי ראזם, האיראנים
29 ואחרים לבין יאסר ערפאת. חלקו של הנאשם, לפיכך, אינו מינורי, אלא משמעותי. ניתן לומר כי
30 הנאשם היה גורם משמעותי בקיומה של העסקה, שכן קשריו עם ערפאת היו בעלי חשיבות עליונה
31 לצורך הוצאתה לפועל של העיסקה.
32
33 גם אם משרדו של הנאשם לא מימן את העסקה מתקציבו השוטף, עדיין יש לומר כי הנאשם היה
34 מעורב בעסקה זו עד צוואר, והוא מהווה גורם אשר פעל באופן מהותי וממשי לצורך השגת
35 המימון לרכישת הספינה. לפיכך, יש לראותו כמי שהיה מעורב בקניה של הנשק במגעים שניהל
36 מלכתחילה עם האיראנים, ברכישת ובאמצעי להובלת הנשק, ולכל הפחות במעשים המהווים תיווך
37 לרכישת הנשק.
38

1. גם במקרה זה, ברור כי לא חלות ההגנות של מעשה מדינה וצידוק. במקרה זה הקשר הראשוני
2. החל עוד בטרם ידע ערפאת על נושא ספינת הנשק, כך שהנאשם ודאי אינו יכול לומר כי פעל מתוך
3. מילוי הוראות בלבד.
4. 
5. על כן יש להרשיע את הנאשם במיוחס לו בפרט אישום זה.
6. 
7. **פרט אישום רביעי:**
8. 
9. פרט זה עניינו מגעים שניהל הנאשם עם נציגים איראנים מחוץ לאזור.
10. 
11. ההגנה לא חלקה בכל הנוגע לפרט זה כי הנאשם קיים פגישה עם מי שהציגו עצמם כאיראנים,
12. וניהל שיחה כללית בדבר אפשרויות שאיורן תסייע לרשות הפלסטינית. ההגנה טענה כי על התביעה
13. להביא הוספת ראייתית מסוג דבר מה על מנת להוכיח כי התקיימה פגישה כזו, וכי בני שיחו של
14. הנאשם היו אכן איראנים. עוד נטען כי מבחינתו של הנאשם היו פגישות אלה רוויות חשדנות
15. וזהירות ולא היו מתוך רצון לשתף פעולה, ועובדה כי ערפאת, שחוצבר אליו מסמך המתאר את
16. הפגישה, דחה את הרעיון שעלה בה.
17. 
18. ראשית, בכל הנוגע לתוספת הראייתית הנדרשת, אנו סבורים כי במקרה זה, גם בהיעדר תוספת
19. ראייתית לפרט זה כשלעצמו, קיומה של תוספת ראייתית לפרטיה האחרים, מהווה תוספת
20. ראייתית גם ביחס לפרט אישום זה.
21. 
22. כפי שציינו לעיל, תוספת מסוג "דבר מה" הינה תוספת שנועדה לאמת את אמרות הנאשם. מכיוון
23. שמדובר בתוספת מאמתת ולא בתוספת מסבכת, אין הכרח כי התוספת תתייחס לכל אחד ואחד
24. מפרטי האישום בנפרד, ובתנאי כי ישנו קשר בין פרטי האישום השונים בהם מדובר.
25. 
26. כאמור, קיימת במקרה שלפנינו זיקה בין מעשיו של הנאשם המפורטים בפרט אישום זה, למעשיו
27. המפורטים בפרטי האישום הקודמים. כולם נוגעים לעבודתו ומעמדו כאחראי הכספים ברשות
28. הפלסטינית וכאדם המקורב לערפאת. לפיכך, התוספות הראייתיות שנמצאו ביחס לפרטי האישום
29. הראשון והשני (ת/8 ואמרתו של מחמוד עביאת) מהוות גם תוספת ראייתית לפרט זה.
30. 
31. עוד יש לדחות את טענת ההגנה כי המדובר במגעים ללא כוונה ממשית. אמנם, נראה כי המדובר
32. במגעים ראשוניים, אולם מעצם טיבם וטבעם של מגעים ראשוניים מסוג זה, הם מלווים, לעתים,
33. בחשדנות. אין פירושו של דבר כי הנאשם לא רצה לקדם את המגעים לאחר מכן, והוא אף העביר
34. את נושא המגעים להחלטתו של יאסר ערפאת.
35. 
36. בל נשכח כי יסודות העבירה בה מדובר דורשים אך את קיומו של מגע, בין הנאשם לבין גורם אחר
37. שהינו חלק מארגון עויין. במקרה שלפנינו נראה מהעובדות שהוכחו כי לא זו בלבד שהנאשם אכן
38. נפגש וקיים מגעים עם פעילי מדינת אויב, אלא שהנאשם פעל מתוך רצון לממש את הסיכום עם

תאריך: 29/07/09

תיק מס': 3052/06

1 האיראנים ו"להביא תוצאות" לערפאת. לפיכך, אנו סבורים כי כל יסודות העבירה התקיימו
2 במקרה זה בנאשם.
3
4 עוד אציין כי גם במקרה זה ברור כי לא חלות ההגנות של צידוק ו"מעשה מדינה", כיוון שהנאשם
5 לא קיבל כל הוראה או הנחייה לבצע את המיוחס לו בפרט זה, אלא פעל מיוזמתו ועל דעתו, ורק
6 בדיעבד העביר את תוצאות המפגש לאישורו של ערפאת.
7
8 לפיכך יש להרשיע את הנאשם במיוחס לו בפרט האישום הרביעי.
9

10 **סוף דבר**
11
12 לא מצאנו לנכון לקבל את טיעוני הזוטא של הנאשם. מצאנו לנכון להעניק לאמרותיו המשטרתיות
13 ולזכ"דים מחקירותיו בשב"כ משקל מלא, ולהעדיף אף אמרותיו בכל מקום בו טען הנאשם אחרת
14 בפנינו. לאור המצוי באמרות הנאשם, סברנו כי קיימת תשתית עובדתית מלאה להוכחת
15 האישומים המיוחסים לנאשם.
16
17 לא עומדת לנאשם כל הגנה במקרה זה. לא חלה במקרה שלפנינו הגנת מעשה מדינה, בין היתר
18 כיוון שהרשות הפלסטינית אינה מדינה, ובתקופה הרלוונטית מעמדה היה רחוק עוד יותר ממדינה
19 מאשר כיום. אף אם הייתה קיימת הגנה זו במשפט האיזור, לא היה הנאשם יכול לחסות בצילה,
20 לאור העובדה כי העביר נשק בידיעה כי זה עתיד לשמש ארגון טרור, כגדודי חללי אלאקצא.
21
22 לא עומדת לנאשם הגנת הצידוק, שכן גם בהתאם לפרשנות המרחיבה ביותר של הגנה זו (כאמור
23 בהחלטת חברי סגן הנשיא באשר לטענות המקדמיות), הנאשם נטל חלק במעשים שאינם
24 לגיטימיים, שלא בהתאם לסמכויות שניתנו לרשות הפלסטינית בהסכמי הביניים, פעל פעמים
25 רבות מיוזמתו, ולאו דווקא כממלא הוראות, ואף אם היו מקרים בהם מילא הוראות, דובר
26 במעשים שהינם בבירור בלתי חוקיים שכן כאמור, דובר בהעברת נשק ואמצעים לגורמי טרור.
27
28 אשר על כן החלטנו להרשיע את הנאשם בכל המיוחס לו בכתב האישום.
29

30 **השופט סא"ל רונן עצמון:**
31 אני מסכים.
32

33 **השופט סא"ל טל בנד:**
34 אני מסכים.
35

36 ניתן והודע היום, 29/07/09, בפומבי ובמעמד הצדדים.
37
38
39  _____        _____        _____
              שופט                        נשיא                        שופט

-37-