UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> THE PALESTINE LIBERATION ORGANIZATION, *et al.*, <br><br> Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL**

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022
(212) 715-1000

*Attorneys for Plaintiffs*

May 5, 2014

Defendants seek 1292(b) certification of the Court's denial of their motion for reconsideration on the issue of personal jurisdiction. The motion meets none of the statutory requirements for certification. It appears to be a *pro forma* prerequisite to defendants' threatened mandamus petition.

**ARGUMENT**

Section 1292(b) permits an interlocutory appeal when the District Court certifies in writing that "the order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). However, the district court "may deny certification even where the statutory criteria are met." *Sussman v. I.C. System, Inc.*, 2013 WL 5863664, at *1 (S.D.N.Y. Oct. 30, 2013).

The Second Circuit has cautioned that district courts are to "exercise great care in making a § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992). Only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Scott v. Couglin*, 1994 WL 150298 at *1 (Apr. 21, 1994 S.D.N.Y) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

**I.   The issue presented is not a controlling question of law**

A controlling question of law is one that involves a "purely legal question about which there are no triable issues of fact." *In re Air Crash off Long Is., N.Y., on July 17, 1996*, 27 F.Supp.2d 431, 435 (S.D.N.Y. 1998). It must be a "question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Worldcom, Inc.*, 2003 WL 21498904, at *9 (S.D.N.Y. Jun 30, 2003) (quotations omitted). Here, the Court's

denial of the defendants' motion to reconsider was not based on a "purely legal question." Instead, the Court expressly founded its decision on its intimate familiarity with the very extensive record in this case—finding not only that defendants' motion "should have been made earlier" in the context of their extensive activities in this case, but also that that the record lacked evidential support for the defendants' factual contentions. Tr. 68-69. Defendants ignore the Court's finding of untimeliness and concede the factual nature of their argument—attempting for the first time to offer fact evidence in their motion for certification, and urging the Court to make a different factual finding from the ones it already made. Def Br. at 4. But the time to offer facts that were readily available to the party offering them is not on a 1292(b) motion—nor even on a motion to reconsider—but at the time of the *original* motion.

## II. There is no substantial ground for difference of opinion

To meet the statutory requirement that there be "substantial ground for difference of opinion as to the legal issue presented for certification," courts require that: "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Lloyd's*, 1997 WL 458739, at *5; *see Mills v. Everest Reinsurance Co.*, 771 F.Supp.2d 270, 274 (S.D.N.Y. 2009); *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 74 (S.D.N.Y. 2007) ("this prong will be satisfied if the issue is difficult and of first impression or if there is conflicting authority on the issue.").

Tellingly, defendants point to no cases that contradict the Court's ruling and instead assert that their own argument that the Court has "misread" *Daimler* should be enough to create a "substantial ground" for difference of opinion. Def. Br. at 5. That is nonsense. Defendants' sloppy analysis ignores their inadequate motion for reconsideration, the fulsome record on which the Court relied, the obvious differences between the Fifth and Fourteenth Amendments, as well

2

as controlling law that governments do not have due process rights, and the facts relevant to specific jurisdiction, which are intertwined with the merits. In essence, defendants want the Court to declare that a federal statute—18 U.S.C. § 2334(a)—is unconstitutional as applied to them. *Daimler* and *Goodyear* simply do not support that claim.

### III. Immediate appeal will not materially advance the ultimate termination of the litigation

Under § 1292(b), the appeal "must advance the time for trial or shorten the time required for trial." *S.E.C. v. Gruss*, 2012 WL 3306166, at *5 (S.D.N.Y. Aug. 13, 2012) (internal citations omitted). As to this element, Defendants make only the self-serving argument that, *if* their appeal is successful, they will be spared a trial. Defendants' chances of success on appeal are remote, meaning that the most likely outcome of an interlocutory appeal would be wasted judicial resources—not to mention the parties' time and money.

### IV. Neither Comity Nor Foreign Policy Warrant Certification on Appeal

Defendants forecast that proceeding with trial will raise "substantial international comity and foreign policy concerns" and assert that "[t]he stakes are simply too high for the Palestinian Authority and PLO to be subjected at this time to the burden and expense of a lengthy trial." Defendants suggest that *Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012), gives reasons for this court to certify the Court's denial of their motion for reconsideration for appeal. *Abelesz* is indeed instructive, but only because it makes plain why defendants' motion is frivolous.

*First*, the Seventh Circuit decided *Abelesz* on August 22, 2012—nearly 17 months before defendants made their belated motion for reconsideration. *Abelesz* highlights that this Court was correct in finding that the defendants should have raised their due process argument "much earlier in this case." Tr. (April 11, 2014) at 68.

3

*Second*, the analysis in *Abelesz* shows that this Court's finding of general jurisdiction was correct. In *Abelesz*, the defendant banks had U.S. account holders, correspondent banking relationships with U.S. banks, contracts with U.S. companies, and sporadic business trips to the United States. *Id.* at 656. The court found that these contacts were not continuous or systematic. *Id.* at 657. The Seventh Circuit found that these contacts were more like the sporadic and occasional contacts present in *Helicopteros Nacionales de Colombia, S.A. v. Hall*,[1] where general jurisdiction was not found, and were dissimilar from those of the defendants in *Perkins v. Benguet Consol. Mining Co.*[2]—the "paradigm" case for finding general jurisdiction elsewhere than in the principal place of business or place of incorporation. *Id.* at 658.

In the present case, this Court performed precisely the same analysis, and correctly found that the defendants' contacts—including establishing an office in the United States, employing an active roster of employees, working closely with a U.S. public relations firm, and conducting significant and systematic campaign of public relations activities—were a sufficiently "continuous and systematic, but limited, part of its general business" to support general jurisdiction.

*Third*, in *Abelesz*, the U.S. government filed a Statement of Interest, pursuant to 28 U.S.C. § 517, seeking dismissal of the claims against one of the defendants, because the relief requested by the plaintiffs would violate a particular agreement entered into by the United States.

---

[1] 466 U.S. 408 (1984) (defendant who purchased helicopters from a Texas company over a seven-year period, negotiated and executed the contracts in Texas, received payment from a Texas bank, and sent employees to Texas for training and technical consulting not subject to general jurisdiction in Texas.)

[2] 342 U.S. 437 (defendant carried on a "continuous and systematic, but limited, part of its general business" in Ohio, sufficient for general jurisdiction, where defendant's president maintained an office, kept company files, held directors' meetings, and carried on correspondence in Ohio, as well as distributed checks drawn on Ohio banks, engaged an Ohio transfer agent.)

692 F.3d at 648. There is no such statement of interest here. To the contrary, the policy of the United States government—to pursue and hold accountable foreign entities that commit acts of international terrorism—is directly aligned with the claims plaintiffs have brought here. Congressional intent in enacting the Anti-Terrorism Act was to provide a forum in the United States for suits by U.S. nationals injured by international terrorism. Indeed, the very terrorist organization Congress had in mind was the PLO itself:

> The legislative history of the ATA, Executive Orders signed by two United States Presidents, and the participation by the United States in international treaties and an international task force, establish this country's profound and compelling interest in combating terrorism at every level…. Section 2333(a) of United States Code Title 18 was first introduced in the wake of *Klinghoffer v. Palestine Liberation Org.*, 739 F.Supp. 854 (S.D.N.Y.1990), in which heirs of an American national killed in a terrorist attack in the Mediterranean sued the Palestinian Liberation Organization.

*Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 443-44 (E.D.N.Y. 2008).

In 1987, Congress made statutory findings "that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law." Pub. L. 100-204, § 1002 (codified at 22 U.S.C. § 5201). Notwithstanding the PLO's periodic renunciation of terrorism, its addiction continues. On April 23, 2014, the PLO and Hamas—a designated terrorist organization—announced a "unity pact."[3] News photographs of the event showed PLO and Hamas delegates smiling and holding hands as they announced the "historic" agreement. *Id.* A "unity pact" with Hamas does not reflect that the PLO has renounced terrorism, and prosecuting this case to judgment will not undermine any U.S. foreign policy

---

[3] http://www.reuters.com/article/2014/04/23/us-palestinian-israel-unity-idUSBREA3M14420140423

goals.  To the contrary, the Court can and should follow the foreign policy decisions of the Political Branches of our government in this case by enforcing the statute as written.

## CONCLUSION

The Court should deny defendants' motion for certification.

Dated: New York, New York
May 5, 2014

**ARNOLD & PORTER LLP**

By:   /s/ Ken A. Yalowitz
Kent A. Yalowitz
*KENT.YALOWITZ@APORTER.COM*
Philip W. Horton
*PHILIP.HORTON@APORTER.COM*
Lucy S. McMillan
*LUCY.MCMILLAN@APORTER.COM*
Ken L. Hashimoto
*KEN.HASHIMOTO@APORTER.COM*
Carmela T. Romeo
*CARMELA.ROMEO@APORTER.COM*
Tal R. Machnes
*TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York  10022
(212) 715-1000