# EXHIBIT A.8

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

## Expert report by Raja Shehadeh

### I.    Introduction

1.    I have been engaged by the Palestinian Authority (PA) and the Palestine Liberation Organization (PLO) to serve as a testifying expert witness. This report is for use in the case of the case of *Sokolow v. Palestinian Liberation Organization*.

2.    Attached as exhibit A is my CV which describes various qualifications that enable me to render the opinions summarized and described below.

3.    I was born in 1951. I come from a family of lawyers and judges and am myself a Palestinian lawyer and writer. I studied law in London where I was called to the Bar at Lincoln's Inn. My grandfather, Salim Shehadeh, served as a District Court judge in the British Mandate on Palestine. My father Aziz was also a lawyer and was one of the first Palestinians to publicly support a two-state solution to the Arab Israeli conflict, a position which I myself continue to support. I am the founder of the Palestinian human rights organization Al Haq, an affiliate of the International Commission of Jurists (ICJ). I have written several books and numerous articles published in international journals on international law, human rights and the Middle East. In 2008, I was awarded the Orwell Prize, Britain's preeminent award for political writing for my recent

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member – Palestinian Bar
−Member – Israeli Bar
+Member – English Bar/Lincoln's Inn
#Member – American Bar Ass./Utah

Ramallah:     26 Main Street
              P.O.Box 74; or
Jerusalem:    P.O.Box 20007
              Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: Info@shehadehlaw.com

book, *Palestinian Walks*. My latest book, *Occupation Diaries*, has been short listed for the Orwell Prize, 2013.

4.  I have served as an expert witness in the cases of *Saperstein v. Palestinian Authority*, *Ungar v. Palestinian Authority*, and *Shatsky v. The Syrian Arab Republic*. I also served as an expert witness for the United States government in the case of *United States v. Union Bank for Savings and Investments (JORDAN)*, Nos. 06-1187, 06-1423, 06-1444 (1st Cir. 2006).

5.  Attached as exhibit B is a list of publications I have authored.

6.  In addition to the material cited in this report and my prior writings and professional and life experiences, I have considered the Complaint filed in this matter and the material referenced in this report in forming my opinions in this case. I have also had the opportunity of reviewing the export reports of Dr. Jeffrey F. Addicott, Dr. Mathew Levitt, Itamar Marcus, Prof. Efraim Karsh, Advocate Nick Kaufman and Alon Eviatar. I will make brief comments below on these six reports.

7.  My Firm is being compensated at a rate of US$ 250 per hour for my time spent on this matter. My compensation does not depend on my opinion in this matter or the outcome of this matter.

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:*    26 Main Street
              *P.O.Box 74; or*
*Jerusalem:*   *P.O.Box 20007*
              *Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

## II.    Summary of Opinions

I intend to render the following principal opinions:

1.    The Oslo Accords grant very limited areas of jurisdiction to the PA that did not rise to the level of control necessary to be able to prevent the attacks at issue in this case. The PA was created by the Oslo Accords, negotiated between the PLO and Israel. The explicit aim of the Oslo negotiations, as stated in the Declaration of Principles of 1993, was to bring about a permanent settlement based on United Nations Security Council Resolution 242 that affirms the principle of withdrawal by Israel from territory occupied in 1967.[1] As a transitional phase the PA was given territorial jurisdiction over a limited area of the Occupied Palestinian Territories (OPT) as well as functional and personal jurisdiction over the Palestinian population living in these areas. It was given no responsibility to protect Jewish settlements, Israeli citizens or other non-Palestinians in the OPT, nor was it given sufficient authority in law or in fact to prevent the attacks at issue in this case.

2.    The PA has no jurisdiction over the areas in which these attacks occurred. According to the Complaint, six of the attacks took place in East or West Jerusalem and one attack took place outside an Israeli settlement in the West Bank. The West Jerusalem attacks include the two on Jaffa Street and one in downtown Jerusalem. West Jerusalem has been under Israeli jurisdiction since 1948. The East Jerusalem attacks include one in French Hill and one at

---

[1] http://unispal.un.org/UNISPAL.NSF/0/7D35E1F729DF491C85256EE700686136

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

the Hebrew University. French Hill is part of the illegal Israeli annexation of East Jerusalem; Hebrew University is situated in an enclave that has been under Israeli jurisdiction since the 1949 armistice agreement. In entering into the Oslo Accords, Israel retained overall responsibility over Jerusalem, including full responsibility for security. The future of Jerusalem (both East and West) was left for future final status negotiations that, to date, have not taken place. The PA has no jurisdiction over roads or junctions that serve the settlements and Palestinians are not allowed on many of these roads.

3.   Under the new regime created under the Oslo Accords, the PLO has no role in the governance of the West Bank. Its role is limited to conducting negotiations and signing agreements with states or international organizations as mentioned in III.xix below. The PLO, therefore, had no authority in law or fact to prevent the attack at issue in this case.

4.   The Jewish settlement enterprise in the West Bank is illegal and creates an environment of injustice and rage that exceeds the PA's ability to control. This settlement enterprise constitutes, at a minimum, a violation of Article 49(6) of the Geneva Convention which states that "the Occupying Power shall not deport or transfer parts of its own civilian population into the territory it occupied."[2] This was confirmed in United Nations General Assembly Resolution 62/108[3] of January 2008 and in dozens of other resolutions to this effect. In Resolution 465 (1980) the United Nations Security Council determined   that "all measures taken by Israel to change the

---

[2] http://www.icrc.org/ihl/WebART/380-600056
[3] http://www.un.org/ga/search/view_doc.asp?symbol=A/RES/62/108&Lang=E

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:    26 Main Street*
*P.O.Box 74; or*
*Jerusalem:    P.O.Box 20007*
*Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

physical character, demographic composition, institutional structure or status of the Palestinian and other Arab territories occupied since 1967, including Jerusalem, or any part thereof, have no legal validity and that Israel's policy and practices of settling parts of its population and new immigrants in those territories constitute a flagrant violation of the Fourth Geneva Convention relative to the Protection of Civilian Persons in Time of War and also constitute a serious obstruction to achieving a comprehensive, just and lasting peace in the Middle East."[4] A fundamental tenet of the international law of belligerent occupation, resting on the principle that occupation is intended to be only a temporary situation, is that the occupying power is prohibited from altering the status of an occupied territory. By contrast, the effect of the settlements in the OPT is to create facts that predetermine the outcome of any political negotiations by making Israeli withdrawal from the settled parts of the territories unfeasible. Its acceleration in the period preceding the attacks at issue in this case caused despair and unrest among the Palestinian population that made it even more difficult for the PA to prevent these attacks.

## III.    Grounds for the Opinions

The grounds for the opinions listed in section II above include the following:

a. The Status of Jerusalem

---

[4] http://unispal.un.org/UNISPAL.NSF/0/5AA254A1C8F8B1CB852560E50075D7D5

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz H. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

i. According to the United Nations, Jerusalem constitutes a *corpus separatum*.[5] However, prior to the 1967 June War, West Jerusalem was under full Israeli jurisdiction. On 27 June, 1967 (i.e. less than a month after the Israeli occupation of the OPT) an extended area of Arab East Jerusalem was also annexed using the following Israeli laws and proclamations:

1. Israel Law and Administration Ordinance (Amendment No. 11) Law, 1967. Article 11B of this law stated that *"the Law, jurisdiction and administration of the State shall extend to any area of Eretz Israel designated by the Government by order."*[6]

2. Municipal Ordinance (Amendment No. 6) Law, 1967. Article 8A stated that "(a) The Minister may, at his discretion and without an inquiry under section 8 being made, enlarge, by proclamation, the area of a particular municipality by the inclusion of an area designated by order under section 11B of the Law and Administration Ordinance, 1948."[7]

ii. As a result of the 1967 war, the Mount Scopus area, including the Hebrew University, and the French Hill area, also located in East Jerusalem, came under full Israeli jurisdiction. In 1980, United

---

[5] http://unispal.un.org/UNISPAL.NSF/5ba47a5c6cef541b802563e000493b8c/2669d6828a262edb852560e50069738a?OpenDocument

[6] http://www.mfa.gov.il/mfa/foreignpolicy/mfadocuments/yearbook1/pages/13%20law%20and%20administration%20ordinance%20-amendment%20no.aspx

[7] Id.

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:    26 Main Street*
*P.O.Box 74; or*
*Jerusalem:    P.O.Box 20007*
*Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

Nations Security Council Resolution 478 determined "that all legislative and administrative measures and actions taken by Israel, the occupying power, which have altered or purported to alter the character and status of the Holy City of Jerusalem, and in particular the recent "basic law" on Jerusalem, are null and void and must be rescinded forthwith."[8]   Nevertheless, Israel retains full control over this area.

b.  The Status of the West Bank and Gaza

Israeli occupation and the rule of the Israeli Defense Forces (IDF) of the West Bank (which term here shall exclude East Jerusalem) and Gaza ("OPT") began on June 7, 1967. It continues until the time of this writing. There is broad international consensus that the Palestinian territories constitute occupied territory.  Even the Israeli High Court of Justice has consistently acknowledged that the West Bank is under belligerent occupation and is not part of the state's sovereign territory.[9]

c.  Law of Occupation

i.      There is a vast literature in international law as to what changes an occupying power may and may not legitimately carry out in the laws that were in force at the time when the occupation took place. An occupying power is prohibited from changing the local law in force in the occupied area, unless such a change is necessary for

---

[8] http://unispal.un.org/UNISPAL.NSF/0/DDE590C6FF232007852560DF0065FDDB
[9] See Mara'abe v. The Prime Minister of Israel, HCJ 7957/04 (June 21, 2005) ("The Judea and Samaria areas are held by the State of Israel in belligerent occupation. The long arm of the state in the area is the military commander.  He is not the sovereign in the territory held in belligerent occupation...  His power is granted him by public international law regarding belligerent occupation."), available at http://elyon1.court.gov.il/files_eng/04/570/079/a14/04079570.a14.pdf

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
−Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

security needs or for the benefit of the local population. Article 43 of the Regulations Respecting the Laws and Customs of War on Land, annexed to Hague Convention (II) of 1899 and (IV) of 1907 (hereinafter the Hague Regulations), is the linchpin of international law on belligerent occupation. Article 43 provides that an Occupying Power must uphold the existing law in occupied territory as far as possible. It states:

> "The authority of the legitimate power having in fact passed into the hands of the occupant, the latter shall take all the measures in his power to restore, and ensure, as far as possible, public order and safety, while respecting unless absolutely prevented, the law in force in the country."[10]

Had Israel not been interested in settling members of its own Israeli Jewish citizens in the Occupied Territories there would have been no need for Israel to carry out the vast changes in the laws in force there. But from early on in the occupation, Israel began settling members of its population and thus necessitating many of the changes in the local law. Over the years 1701 military orders have been issued many of which changed the local law that was applicable in the Occupied Territories when the Occupation took place and also rendered applicable to the settlement areas Israeli civil legislation.

---

[10] http://avalon.law.yale.edu/20th_century/hague04.asp#art42

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:    26 Main Street*
*P.O.Box 74; on*
*Jerusalem:   P.O.Box 20007*
*Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

ii.    International law also forbids the transfer of parts of the Occupier's own civilian population into the occupied territory. This constitutes a war crime under the Statute of the International Criminal Court, Article 8(b)(viii),[11] yet this is also the basis of Israel's settlement enterprise.

iii.   Israeli Proclamation Number 2 declared that all laws in force in the territories remain in force "to the extent that they do not contradict the provision of this or any other proclamation or order issued by [the Military Commander of the Israeli Defense Forces in the Area] or by the changes arising from the establishment of the rule of the Israel Defense Forces in the Area."

iv.    Indicative of the Israeli plan not to consider its presence in the OPT as an occupation was the fact that the first military proclamation issued by the Israeli army when it occupied the OPT in 1967 declared that "today the Israeli Defense Forces have <u>entered</u> the territory…" (Emphasis added). It is noteworthy that the verb used by the IDF in the Proclamation was "entered" not "occupied." This is consistent with the Israeli Law and Administration Ordinance No. 1 of 1948 which in Article 14 (a) stated that "any power vested under… the Government of Palestine, shall henceforth vest in the Provisional Government…" Article 15 of this law stated that "(a) "Palestine", wherever appearing in the law, shall henceforth be read as Israel." In other words the newly established State of Israel considered itself as established over all the territory of British Mandate Palestine which included the West Bank.

---

[11] http://www.icrc.org/ihl/WebART/585-08?OpenDocument

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:      26 Main Street
               P.O.Box 74; or
Jerusalem:     P.O.Box 20007
               Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777; Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

During the first four and a half months, the Israeli army's position was that the Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War, (hereafter "The Geneva Convention") of 12 August 1949 was applicable as evident by the fact that Military Proclamation number 3 issued on June 7, 1967 provided in article 35 that the Military Courts established by the IDF had to observe its provisions in the conduct of their judicial proceedings. This position changed when military order number 144 issued on October 22, 1967 repealed article 35 of military Proclamation number 3. Since then, the IDF and Israel have refused to accept the applicability of the Fourth Geneva Convention to these areas and their Palestinian population. However, the army did accept the applicability of the Hague Regulations which are annexed to the 1907 Hague Convention (IV) respecting the Laws and Customs of War on Land (hereafter The Hague Regulations) because they constitute customary law. In the Advisory Opinion on the *Legal Consequences of Construction of a Wall in the Occupied Palestinian Territory*, the International Court of Justice (ICJ) opined that, alongside the law of belligerent occupation, the human rights treaties to which Israel is a party apply to Israel's actions in the OPT.

v.  I am familiar with the many different theories and legal interpretations Israel has used to justify its occupation of the OPT and its efforts at describing its presence in terms other than "occupation." I am also familiar with Israel's policy of acquiring land and settling its own Jewish population in these territories and the justifications it offered in the course of time for these practices. All these theories have been rejected by the International Tribunal at

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nasser, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:    26 Main Street*
*            P.O.Box 74; or*
*Jerusalem:  P.O.Box 20007*
*            Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

The Hague, the United Nations and most countries of the world. Indeed the United States has consistently considered the Geneva Convention as applicable to the OPT and also considers the establishment of Jewish settlements in these occupied territories as illegal. In the *Legality of the Construction of a Wall in the Occupied Palestinian Territories*, Advisory opinion, ICj Rep. 2004, www.icj-cij.org para. 120, the International Court of Justice at the Hague concluded that "the Israeli settlements in the OPT (including East Jerusalem) have been established in breach of international law." This position has been recently confirmed by the *Report of the Independent International Fact-finding Mission to Investigate the Implications of the Israeli Settlements on the Civil, Political, Economic and Social and Cultural Rights of the Palestinian People Throughout the Occupied Palestinian Territory, including East Jerusalem* submitted pursuant to resolution 19/17 in which the UN Human Rights Council, decided to establish an independent international fact-finding mission to investigate the implications of the Israeli settlements on the human rights of the Palestine people throughout the Occupied Palestinian Territory, including East Jerusalem (UNHRC Report). This is how the Report articulated the Applicable Law: Paragraph *II.10. "The international legal framework applicable to the issue before the Mission is primarily provided for in international human rights law and international humanitarian law. 13. A situation of military occupation prevails in the OPT. As the occupying Power, Israel is bound under international humanitarian law by a set of obligations which are provided for in the Hague Regulations 1907, annexed to the Hague Convention IV respecting the Laws and Customs of War on Land 1907, which are recognized as forming part of customary international law, and Geneva Convention IV relative to the Protection of Civilian Persons*

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member – Palestinian Bar
=Member – Israeli Bar
+Member – English Bar/Lincoln's Inn
#Member – American Bar Ass./Utah

Ramallah:   26 Main Street
            P.O.Box 74; or
Jerusalem:  P.O.Box 20007
            Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

in Time of War 1949 ("Fourth Geneva Convention"), to which Israel is a High Contracting Party."

vi.    In violation of both the Hague Regulations and the Geneva Convention, the Israeli Commander of OPT has continued to issue military orders and proclamations amending local law and administration contrary to Article 43 of the Hague Regulations, cited above. Few of these military orders and proclamations are justified under the Hague Regulations or the Geneva Convention. One of the recent orders issued by the IDF was order number 1650 issued on October 13, 2009 rendering all the inhabitants of the West Bank as "infiltrators" who could be deported en masse unless they obtain a permit from the Israeli military government to reside in the West Bank irrespective of the fact that they are in possession of Identity Cards issued by the PA in coordination with the Israeli authorities.[12]

vii.   By the second decade of the occupation there were two different and parallel systems of law and administration in the OPT with very slight overlap, one that applied to the Jewish settlers residing in these territories, and another that applied to the Palestinian inhabitants of these areas.

viii.  In 1981, the Israeli Area Commander issued military order No. 947 establishing a civil administration to "administer the civilian affairs in the region in accordance with the directives of this order…" This administration was headed by an Israeli army officer. The order codified the administrative separation of Palestinians and Israeli residents of the OPT.

---

[12] http://www.guardian.co.uk/world/2010/apr/11/israeli-groups-attack

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate*=                *Member - Palestinian Bar*          *Ramallah:*    *26 Main Street*
*Raja Shehadeh, Barrister -at -Law*+      =*Member - Israeli Bar*                            *P.O.Box 74; or*
*Nadeem Shehadeh, Jur. Dr. *#             +*Member - English Bar/Lincoln's Inn*   *Jerusalem:*   *P.O.Box 20007*
*Kareem Shehadeh, Jur. Dr. **             #*Member - American Bar Ass./Utah*                 *Jerusalem 91199*
*Hadi Mashal, LL.B, LL.M.**
*Anton H. Nassar, LL.B**
*Nadia El-Khatieb LL.B**
*Lubna Ibrahim LL.B**

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

ix. Israel continued its search to find a formal resolution for the problem of how to create a legal environment which would allow Israeli citizens leaving Israel (of the 1967 borders) and residing in the OPT to live under Israeli law and thus be entitled to all the privileges accorded to them under Israeli law without submitting to the restrictions that military orders imposed on the Palestinian inhabitants of the same territory. This was eventually achieved through Israeli legislation that gave extraterritorial application of Israeli law to Israeli settlers. The effect of this was the de facto annexation to Israel of the territories in which Jewish settlers resided.

d. Settlements under international law.

i. International law regarding occupation is based on the principle that a belligerent occupier should not benefit from its occupation. Occupation is deemed to be a temporary condition pending the resolution of the conflict that led to the belligerent action. A "belligerent occupation" has been described as "a transitional period following invasion and preceding the cessation of hostilities" which "imposes more onerous duties on an Occupying Power than on a party to an international armed conflict."[13]

ii. Article 42 of the Hague Regulations provides a description of occupation upon which, on the whole, the Geneva Convention relies. It states that: "Territory is considered occupied when it is actually placed

---

[13] Prosecutor v. Naletilic and Martinovic, Case No. IT-98-34-T (2003), 73, para 214 available at: www.un.org/icty/naletilic/trialsc/judgement/nat-tj030(2003). www.Un.org/icty/naletilic/trialc/judgement/natl-tjo30331-e.pdf.

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

under the authority of the hostile army. The occupation extends only to the territory where such authority has been established and can be exercised."[14] Article 43 of the Hague Regulations (which, as already quoted above) provides the instances when local law may be amended.

iii. There is a strict prohibition under Article 49 (6) of the Geneva Convention against the transfer of the occupied power's population into occupied territory. This prohibition has attained the status of customary international law. This prohibition was confirmed in the UNHRC Report which stated: "*Article 49 of the Fourth Geneva Convention also prohibits the occupying Power from transferring parts of its own civilian population into the territory that it occupies. This prohibition has attained the status of customary international law. The mission notes that the Israeli settlements in the Occupied Palestinian Territory, including East Jerusalem, violate this provision and are, thus, illegal under international law.*"[15]

iv. Israel uses as a justification for its settlement policy a formalistic argument claiming that they do not "transfer" their own population to the OPT, but that Jewish settlers go there on their own volition. Contrary to Israeli claims, the provision mentioned in Article 49 of the Geneva Convention is not concerned solely with "forcible transfers" but includes cases where the occupant, through a combination of political

---

[14] http://avalon.law.yale.edu/20th_century/hague04.asp#art42
[15] Report of the Independent International Fact-Finding Mission to Investigate the Implications of the Israeli Settlements on the Civil Political, Economic, Social and Cultural Rights of the Palestinian People Throughout the Occupied Palestinian Territory, Including East Jerusalem, sect.    II.16    (Feb.    7,    2013),    available    at http://www.ohchr.org/Documents/HRBodies/HRCouncil/RegularSession/Session22/A-HRC-22-63_en.pdf

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:    26 Main Street*
*             P.O.Box 74; or*
*Jerusalem:   P.O.Box 20007*
*             Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

and economic incentives, actively encourages its own population to colonize the occupied territory, thereby altering its geographic and demographic character, as indeed happened in the OPT. In the words of the Official Commentary, Article 49(6), "is intended to prevent a practice adopted during the Second World War by certain Powers, which transferred portions of their own population to occupied territory for political and racial reasons or in order, as they claimed, to colonize those territories. Such transfers worsened the economic situation of the native population and endangered their separate existence as a race."[16] This describes the situation that has arisen in the OPT in the wake of the establishment of the Jewish settlements by Israel.

v.    Throughout the years of occupation, successive Israeli governments have actively supported the policy of settling Jews in the OPT for which over 17 billion dollars have been spent in the construction of these settlements and in incentives to the Israeli Jewish population to encourage them to settle in the OPT, according to a study by the Macro Center for Political Economics carried out in 2010. This was often at the expense of other Jewish communities in parts of Israel itself. The active involvement of successive Israeli governments in Jewish settlements in the OPT has also been confirmed by the recent UNHRC Report which stated: "Since 1967, the Governments of Israel have openly led and directly participated in the planning, construction, development, consolidation and /or encouragement of settlements by including explicit provisions in the fundamental policy instruments (basic policy guidelines), establishing governmental structures and implementing specific measures. These specific measures include: (a) building infrastructure; (b) encouraging Jewish migrants to Israel to

---

[16] http://web.archive.org/web/20130115204405/http://www.icrc.org/ihl.nsf/COM/380-600056

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:   26 Main Street*
*P.O.Box 74; or*
*Jerusalem:   P.O.Box 20007*
*Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

move to settlements; (c) sponsoring economic activities; (d) supporting settlements through public services delivery and development projects; and (e) seizing Palestinian land, some privately owned, requisitioning land for "military needs", declaring or registering land as "State Land" and expropriating land for "public needs."[17]

vi.    Both the Hague Regulations and the Geneva Convention provide safeguards for the well-being and protection of the local population. However, in a number of decisions, the Israeli High Court has considered the Israeli settlers part of the local population whose benefit should be sought, thus, in effect, turning international law on its head.

e.  Acquisition of Land for Jewish Settlements

When the occupation began, the land owned by Jews before 1948 and administered by the Jordanian Custodian of Enemy Property in the West Bank was estimated at 30,000 dunums (a dunum is equivalent to 1000 square meters) out of a total area of 5.50 million dunums, that is 0.5% of the total area. At present over 60 percent of the West Bank is considered Area C, where Israel retains extensive control, including over security, planning and zoning.

i.    One of the methods in which the IDF acquired land in the OPT for Jewish settlements was to declare the area state land. The area of what the local West Bank law designated as state land in the West Bank prior to the beginning of the occupation was estimated at 750,000 dunums. At the start of the occupation, Israel acquired all this

---

[17]  http://www.ohchr.org/Documents/HRBodies/HRCouncil/RegularSession/Session22/A-HRC-22-63_en.pdf

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:*    26 Main Street
             P.O.Box 74; or
*Jerusalem:*    P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

land, as well as all the lands of Palestinians who were outside the OPT when the 1967 occupation began, whom Israel calls "absentees."

ii.  The Israeli historian, Meron Benvenisti, and former Deputy Mayor of Jerusalem, who carried out extensive research into the policies of Israel's expropriation of Palestinian lands observed: "the Israeli authorities in their quest to take possession of land in the territories, have been using every legal and quasi-legal means in the book and are inventing new ones to attain their objectives."[18] Amongst the means used by the Israeli authorities have been expropriation for public purposes, requisitioning for military purposes, and where possible encouraging purchase by settlers.

iii. However, none of these means has brought more land under Israeli control than the method of declaring unregistered land as state land and placing it under Israeli control for the exclusive use of Jewish settlers. To enable this to happen, Israel suspended the land registration process that had been in place in Palestine since 1928. The only registrations that have been permitted are what came to be declared as "public land" for the exclusive use of Jewish settlers. The declaration policy has three fundamental defects: it contradicts relevant provisions of substantive law; it conflicts with the way the states that previously ruled the area applied the law; and it is incompatible with the rulings of the authorized courts that interpreted the law. What substantively adds to the illegality is that these declarations were made in order to enable Israel to establish settlements in the OPT, an action prohibited under international law.

---

[18] Benvenisti, The West Bank Data Project, A Survey of Israel's Policies, American Enterprise Institute for Public Policy Research, Washington and London, 1984 p.30 (cited in Shehadeh, From Occupation to Interim Accords: Israel and the Palestinian Territories (1997)).

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:    26 Main Street*
*P.O.Box 74; o1*
*Jerusalem:    P.O.Box 20007*
*Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

These so-called "public lands" were not registered at the regular Land Registration Department of the West Bank, which until 1967 had served as the only register for West Bank land. Instead, the Israeli Land Authority became the register of land used and controlled by the Israeli government for the use of the settlers. Although control over the Land Registration Department was transferred to the PA, this did not transfer authority over land declared as "public land" for use by the settlers. Studies on settlements commissioned by the Office of the Prime Minister in 2005 (Sasson Report) and 2012 (Levy Report) document the Government's authorization in the establishment and expansion of settlements up to 1992 and indicate that settlements built afterwards with no Government authorization ("outposts") were established with the "full knowledge of all [authorities], starting with the government ministers and prime minister, and until the lowest enforcing agencies(…) the denial had but one goal only: to withstand criticism by various factors, mostly international".[19] Over the past 33 years the Israeli Civil Administration in the West Bank has allocated less than one percent (0.7 percent) of state land in the West Bank to Palestinians, compared to 39 percent to settlers.[20]

iv.    The distortion of the local laws affecting land also included illegal and discriminatory changes to the Land Use Planning laws and discriminatory application of those laws whereby over 41.9% of the West Bank land ended up being under the control of Jewish

---

[19] A Harsh Indictment, Ha'aretz (Nov. 27, 2012), available at http://www.haaretz.com/opinion/a-harsh-indictment.premium-1.480767
[20] See Association for Civil Rights in Israel, Information Sheet – Allocation of State Land in OPT (Apr. 23, 2013), available at http://www.acri.org.il/en/2013/04/23/info-sheet-state-land-opt/

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:*    *26 Main Street*
             *P.O.Box 74; or*
*Jerusalem:*    *P.O.Box 20007*
             *Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

settlements.[21] Existing Palestinian cities, towns and villages were generally confined to within the built up areas. The Oslo Accords were designed not to allow the PA to alter this blatantly unfair and illegal allocation of land.

v.  The distortion of the local laws also included the publication in 1984 of Road Scheme Number 50 which provided an alternative road network than that which had existed prior to the occupation. Rather than north-south roads, the new scheme proposed east-west roads to connect the Jewish settlements to Israel. Since the signing of the Oslo Accords, and as more settlements were being constructed, many miles of road were built through expropriated Palestinian farmland many of which the Palestinians were not allowed to use.

vi.  The Israeli Military Government set up and operated military appeal tribunals to challenge land expropriation, land use planning, and road plans. These tribunals rarely, if ever, reverse an order for the appropriation of land whatever the method used or for the land use plans that were made for the Palestinian areas. This mirrors my own experience in litigating cases before these tribunals.

vii.  The inequitable allocation of resources between Jewish settlers and Palestinian inhabitants was not only restricted to land. It also includes the vital and scarce resource in the OPT of water. In 1982, Israel placed the water supply system of the OPT under the control of Israel's national water company, Mekorot, thereby fully integrating Palestinian water into the Israeli system and situating it under Israeli control. Article 40 of the Interim Agreement provides the guidelines for

---

[21] http://www.btselem.org/download/200205_land_grab_eng.pdf

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
                      P.O.Box 74; or
Jerusalem:    P.O.Box 20007
                      Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

administration of water between Israelis and Palestinians, however only within the OPT. All access inside Israel is not subject to any joint control and administration. Israeli allocation of water between Palestinians and Israel proper is biased in favor of the settlers with the daily per capita water consumption in the West Bank for domestic, urban and industrial use being 73 liters and in Israeli towns 242 liters. In other words, per capital use in Israel is three and a half times higher than in the West Bank.[22]

f.  The Oslo Accords

i.  Two principal documents were signed between Israel and the PLO which together comprise the Oslo Accords, the Declaration of Principles (DOP) signed on 13 September 1993, and the Interim Agreement signed on 28 September 1995 (Interim Agreement). The DOP sets the parameters for subsequent agreements between the two sides. A fundamental principle established by the DOP is that Jewish settlements and everything to do with the settlers living in them are outside of the jurisdiction of the PA. Thus in more than one Article the DOP confirmed that the jurisdiction of the Palestinian Council, later to be known as the PA, did not include anything to do with settlements or settlers. Lest there should be any doubt whatsoever this was confirmed in the "Agreed Minutes" attached to the DOP. The scope of the Interim Agreement was laid out in Article V and VII where it was made clear that this Agreement shall specify, inter alia, the structure of the PA and the powers and responsibilities to be transferred to it.

---

[22] More information on this is available at: http://www.btselem.org/water/consumption_gap.

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:      26 Main Street*
*P.O.Box 74; or*
*Jerusalem:    P.O.Box 20007*
*Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

ii.    The DOP and Interim Agreement, *inter alia*, entrenched the separate administration and systems of law applicable to the Palestinian and Israeli inhabitants of the OPT developed by Israel in the course of its occupation of the OPT whether as laid out in military order 947 or other Israeli legislation.

iii.   Article IV of the DOP provides that the "Jurisdiction of the [PA] will cover West Bank and Gaza Strip territory, except for issues that will be negotiated in the permanent status negotiations." The Oslo Accords distinguished three levels of jurisdiction, and divided the West Bank into three areas A, B, and C with each subject to a different level of jurisdiction. The PA was to have territorial jurisdiction in Area A, which included the main West Bank cities. In Area B, which included most of the Palestinian villages, the PA was to have functional jurisdiction and shared security responsibilities with Israel. In Area C, constituting about 60% of the Area of the West Bank, Israel would effectively enjoy full jurisdiction except for "personal jurisdiction" (which refers to such personal status matters as marriages, divorce and inheritance) over the Palestinian inhabitants residing there. In addition, according to the Interim Agreement, Israel also retained exclusive personal jurisdiction in criminal matters over Israelis even regarding offences committed in Areas A and B.

iv.    The West Bank was declared, pursuant to military orders, a closed area with Israeli controlling the entry and exit of Palestinians.

v.     It should also be noted that even where the PA had territorial jurisdiction (as was the case in Area A), it governed a population rather than a territory. None of the areas under the PA's territorial jurisdiction were contiguous. The PA's limited competence in some areas was

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*−Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:      26 Main Street*
                *P.O.Box 74; or*
*Jerusalem:    P.O.Box 20007*
                *Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

countered by Israel's continued control over and expansion of settlements, which are scattered between Palestinian population centers. Because the areas formally under the jurisdiction of the PA are not contiguous, Palestinians residing within them remain subject to Israeli control on movement between Palestinian towns and cities.

vi.    The DOP set the parameters for subsequent agreements between the two sides. As such it constitutes the most significant basic text that should be given particular attention if the nature of the arrangements between the parties is to be understood. The DOP distinguishes two stages in the "agreed political process," an interim phase and the permanent status settlement. As laid down in Article I, the objective of the interim phases is "the [establishment of] a Palestinian Interim Self-Government Authority, the elected Council (the "Council") for the Palestinian people in the West Bank and the Gaza Strip, for a transitional period not exceeding five years..." The jurisdiction for the Council according to Article IV "... will cover West Bank and Gaza Strip territory except for issues that will be negotiated in the permanent status negotiations." The absence of the definite article before "West Bank and Gaza Strip," should be noted. It is meant to indicate that what is meant is not the whole of the West Bank and the Gaza Strip territories. This is confirmed in the Agreed Minutes to the article that are attached to the DOP where it is asserted that "it is understood that 1, Jurisdiction of the Council will cover West Bank and Gaza Strip territory except for issues that will be negotiated in the permanent status negotiations: Jerusalem, settlement, military locations and Israelis. 2. The Council's jurisdiction will apply with regard to the agreed powers, responsibilities, spheres and authorities transferred to it."

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: Info@shehadehlaw.com

As will be shown below, the DOP made it very clear that security for Israelis throughout the OPT remained with Israel. To remove any doubt this was confirmed in the Agreed Minutes attached to the agreement.

vii.    According to Article VIII of the DOP, "in order to guarantee public order and internal security for the **Palestinians** [emphasis added] of the West Bank and the Gaza Strip, the [PA] will establish a strong police force, while Israel will continue to carry the responsibility for overall security of **Israelis,** [emphasis added] for the purpose of safeguarding their internal security and public order." To remove any doubt as to Israel's authority, the DOP provided in the Agreed Minutes to Article VII.5 that "the withdrawal of the military government will not prevent Israel from exercising the powers and responsibility not transferred to the [PA]." This meant that residual powers remained with Israel to exercise as it deemed fit. Article 13(2)(a) confirmed this principle, stating, "Israel shall have the overriding responsibility for security for the purpose of protecting **Israelis** [emphasis added] and confronting the threat of terrorism." It should be noted that the reference here is to Israelis and not Israeli settlers which means that Israeli citizens visiting the settlements who are not themselves settlers are also under the protection of the Israeli Forces and not the PA police. This retention of jurisdiction further denies the PA full control of public order and civil life in these areas.

viii.   Article I further asserts that these "interim arrangements" are an integral part of the whole peace process and will lead "to a permanent settlement based on Security Council Resolutions 242 and 338." Resolution 242 affirms the principle of withdrawal by Israel of territory occupied in 1967. The DOP deals with three main subjects: the framework of the Interim Agreement, security and economic matters

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:      26 Main Street*
*                        P.O.Box 74; or*
*Jerusalem:   P.O.Box 20007*
*                      Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

and cooperation (Israeli-Palestinian cooperation concerning regional programs).

ix.  The term used in Article XIII of the DOP in relation to the Israeli forces is "redeployment," not "withdrawal." The Article states that: "After the entry into force of this Declaration of Principles, and not later than the eve of elections for the Council, a redeployment of Israeli military forces in the West Bank and the Gaza Strip will take place…"

x.  Article 1.1 states that "Israel shall transfer powers and responsibilities… to the [PA]…" On 23 November 1995 the "Commander of the Israeli Army in the Area of Judea and Samaria" [the name Israel uses for the West Bank] issued Military Proclamation Number 7, entitled Order for the Implementation of the Interim Agreement. According to Article 4.a. of this Order, "the Military Commander of the Israeli Army in the Area and the head of the Civil Administration shall transfer to the Council and its agencies, powers and responsibilities exercised by them or by those delegated or appointed by them to include legislative, judicial and executive powers. All of this shall be in accordance with the provisions of the Interim Agreement and as provided therein." (This is my translation from the Arabic version of the Proclamation).

xi.  Most of the area in the West Bank came to be defined under the terms of the Interim Agreement as either Area B, where the PA had limited jurisdiction and where Israel "retained the overriding responsibility for security for the purpose of protecting Israelis and confronting the threat of terrorism" or Area C, where the PA had no jurisdiction except for over the personal jurisdiction of Palestinians living there. The Agreement provided that the Palestinian police were responsible for

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
−Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

handling public order incidents in which Palestinians were involved in Area B. Yet the work of the police was hampered, *inter alia*, by the restrictions that were placed on the movement of uniformed police and on the kind and number of rifles the police were allowed to possess. The police were subjected to more stringent restrictions on movement in Area C which comprised around 60% of the territory of the West Bank.

xii.    Despite the establishment in the territory under the PA of a Palestinian police force, Israel continued to carry the responsibility for overall security of Israelis for the purpose of safeguarding their internal security and public order as well as exercising full control over the borders.

xiii.   The Palestinian Police force established under the Oslo Accords had limited jurisdiction and had to act in a fragmented territory. It was generally linked and subordinate to the Israeli military. *"From a legal and political viewpoint, the Palestinian Police was a far cry from a national police force in an independent state. Its greatest anomaly was the fact that it was established not primarily to provide security and render services for the people among whom its members were recruited and whose territory exercised control but to ensure improved security for a foreign state and its citizens."* Lia, Brynjar, A Police Force Without a State, A History of the Palestinian Security Forces in the West Bank and Gaza, Garnet Publishing Limited, Reading, UK 2006, p. 269. Weak to begin with, the IDF destroyed much of the police and security infrastructure during the second intifada. In October 2000, Israeli helicopters fired rockets at the Ramallah police station razing it to the ground. On April 2, 2002' Israeli tanks and APC's surrounded the

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:*    *26 Main Street*
              *P.O.Box 74; or*
*Jerusalem:*   *P.O.Box 20007*
              *Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

headquarters of the Preventive Security Force near Ramallah, forced everyone out and caused severe damage to the buildings.

xiv.   Annex IV of the Interim Agreement, Protocol Concerning Legal Matters, sets out, amongst other things, the criminal jurisdiction of the PA. According to Article I.2. "Israel has sole criminal jurisdiction over the following offences: a. offenses committed outside the Territory, except for the offenses detailed in subparagraph 1.b above."

xv.    According to Article I.1.a. of this annex, "For the purposes of this Annex, "Territory" means West Bank territory except for Area C which except for the Settlements and the military locations, will be gradually transferred to the Palestinian side in accordance with this Agreement, and Gaza Strip territory except for the Settlements and the Military Installation Area."

xvi.   Subparagraph 1.b states that: "In addition the Council [i.e. the PA] has criminal jurisdiction over Palestinians and their visitors who have committed offenses against Palestinians or their visitors in the West Bank and the Gaza Strip in areas outside the Territory provided that the offense is not related to Israeli security interests."

xvii.  The powers of the Commander of the Israeli army in OPT were confirmed by Article 6 of the Israel military Proclamation Number 7 issued on 23 November 1995 after Israel had signed the Interim Agreement. This Article declared that the Commander of the Israeli army, his delegates and appointees shall continue to be the holders of certain powers and responsibilities including legislative, executive and judicial powers as regards each of the following: "settlements and

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*=Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:     26 Main Street*
*                     P.O.Box 74; or*
*Jerusalem:    P.O.Box 20007*
*                     Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

military installations, Area C, Israelis..., [and] Security and public order
in areas under the Israeli security responsibility."

xviii.    The jurisdiction of the PA thus builds on the legal situation that existed
prior to the DOP when the IDF took over full control of the OPT. Article
xviii.a of the Interim Agreement confirmed the dual system of law that
is applicable in the West Bank to Palestinians and Israeli Jews by
preventing the PA from making certain changes in the law in force in
the OPT. It states: "Legislation, including legislation which amends or
abrogates existing laws or military orders, which exceeds the
jurisdiction of the Council or which is otherwise inconsistent with the
provisions of the DOP, this Agreement or of any other agreement that
may be reached between the two sides during the interim period, shall
have no effect and shall be void *ab initio*." When the Israeli army
occupied the West Bank and Gaza Strip in June 1967, the Israeli
military government that was established assumed under Military
proclamation No. 2 all legislative, executive and judicial powers which
it exercised as *de facto* power. As Israeli civilians came to be illegally
settled in the West Bank and the Gaza Strip, the Israeli Knesset
passed legislation that extended the application of certain Israeli laws
to Jewish settlers living outside the area of the Israeli state. The IDF
passed regulations allowing the Jewish settlers to hold arms and
exercise certain powers against the Palestinians to protect their
settlements. This happened despite the fact that, with the exception of
East Jerusalem, annexation of the West Bank and the Gaza Strip to
Israel did not take place. The *de facto* source of authority, executive,
legislative and judicial, was the military commander who exercised
some of his powers through the Head of the Civil Administration whom
he appointed in accordance with Military order 947 of 1982.

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; 01
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

xix.   The Oslo Accords were signed by Israel and the PLO. But the Interim
       Agreement did not transfer power to the PLO. Of the limited powers
       that were transferred, whether executive, judicial or legislative, most
       were transferred to the newly created PA. The only role left in the
       Interim Agreement for the PLO was confirmed in Article IX.5.b where it
       was stated that: "Notwithstanding the provisions of this paragraph the
       PLO may conduct negotiations and sign agreements with states or
       international organizations for the benefit of the Council in the following
       cases only..."

g.  The After Effects of the Oslo Accords

i.   At the time the Oslo Accords were signed, there was jubilation
     amongst the majority of Palestinians living in the OPT. In Israel,
     support for the Oslo Accords was not overwhelming, with the right wing
     voting against the Accords. The Palestinians expected that the
     Accords would lead to an end of the occupation and eventually a
     Palestinian state. Israeli actions, however, such as continuing with the
     settlement enterprise, interposing obstacles to Palestinian economic
     development, and hampering operations of the Palestinian security
     forces, led to more chaos and lack of control over the population. For
     example in 1999 more than 50 new settlements without Government
     authorization ("outpost") were reported to have been established by the
     end of Prime Minister Netanyahu first tenure in Government. Israeli
     Prime Minister Ehud Barak (1999-2001) presented to the Knesset his
     basic policy guidelines. The third strategic line (out of twelve) is entitled
     "Settlement" and indicates the Government support to continue
     developing settlements already established in the West Bank and
     Gaza while indicating that no new settlements will be built: "4.1 the
     Government views all forms of settlement as a valued social and

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member – Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

national enterprise...4.3 The Government will work to ensure the security of the Jewish residents in Judea, Samaria [West Bank] and Gaza..."

ii.   In a 2001 video, Current Israeli Prime Minister Benjamin Netanyahu, unaware he was being recorded, stated: "They asked me before the election if I'd honor [the Oslo Accords] ...I said I would, but [that] I'm going to interpret the accords in such a way that would allow me to put an end to this galloping forward to the '67 borders. How did we do it? Nobody said what defined military zones were. Defined military zones are security zones; as far as I'm concerned, the entire Jordan Valley is a defined military zone. Go argue." As more and more Palestinians lost hope in the future, a similar explosion as had brought about the First Intifada at the end of 1987 eventually led to the outbreak of the Second Intifada. This was used by Israel to suspend many of its obligations and commitments under the Oslo Accords, while retaining all those components of the agreement which were in its favor. Greater restrictions on movement and development of the Palestinian community were applied than had ever been in place before.

iii.   The Oslo Accords did not usher an end to the establishment or expansion of Jewish settlements in the OPT. By the year 2000, the number of settlers more than doubled from the time of the signing of the Accords. Large areas of land were expropriated for this purpose. Many roads built on land expropriated from Palestinian farmers were designated as for the exclusive use of the Jewish settlers. The experience of the present generation of Palestinians is not one of anticipated disaster but of immediate, day-to-day brutalization that inevitably results from the expropriation of a large percentage of the land settled by about half a million Israeli Jews.

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
−Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

iv.   The execution of the Oslo Accords with the PLO never had the effect
      of ending the occupation or removing the settlements which had then
      been established in the OPT. The establishment of the PA under the
      Oslo Accords essentially sub-contracted Israel's management of the
      civilian aspects of the occupation to the PA, thereby easing the burden
      and expense on Israel of administering a hostile population. This was
      attempted without the removal of the causes of this hostility, namely,
      the continuation of an occupation which was colonial in character that
      sought to settle the territory occupied and eventually formally annex it
      to its own. The illegal Israeli settlements and Israeli policies towards
      Palestinian society created an environment in which Israeli incursions
      and Palestinian militant resistance would inevitably occur and which
      the PA and the PLO could neither fully control nor prevent.

v.    Israel's policies were shown by the fact already mentioned that since
      signing the Oslo Accords it proceeded to establish and expand Jewish
      settlements in the OPT at a faster pace than ever before. By such
      actions, successive Israeli governments were indicating to the Israeli
      and Palestinian people that the Accords would not lead to an Israeli
      withdrawal and the creation of a Palestinian state, but rather the
      annexation of most, if not all, of the territories occupied in 1967.

vi.   The enhanced activities created "facts on the ground" by establishing
      new Jewish settlements and expanding existing ones, and contributed
      to the destruction of  any hopes the Palestinian population had
      entertained when they expressed their support for the Oslo Accords.
      This led the leaders of Fateh and of the PA who had been behind
      these accords and were administering the OPT in accordance with its
      provisions, to assume a stance that at least rhetorically would revive

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777; Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

their standing in their own community and remove accusations that their positions and actions in supporting the Oslo Accords were capitulations. Many of the statements made by these leaders were intended for local consumption, and as face-saving mechanisms against the acquisitive actions Israel was carrying out.

vii.    Not only are Jewish settlements in the occupied territories illegal in the eyes of most countries of the world, they constitute an obstacle to the achievement of peace between Israel and Palestine. They have also distorted Palestinian development in the OPT and severely hampered the attempts by the PA to develop the Palestinian economy. The Israeli settlement enterprise in the OPT violated international law and had a devastating impact on Palestinian society. The illegal Israeli settlements and Israeli policies towards Palestinian society enhanced the hostile environment in which Israeli incursions and Palestinian militant resistance would inevitably occur and over which the PA and the PLO could neither fully control nor had the means to prevent.

viii.   The Interim Agreement included measures that would supposedly make access to water more equitable, but in effect it consolidated Israeli control over water in the OPT. Palestinians under occupation can only extract a small amount of the underground water available and are mostly limited to a fraction of what Israeli settlers are permitted to access and use.

ix.     As more and more Palestinian land and water resources (both being scarce resources in the West Bank) were taken over by Jewish settlements, whose presence constituted a hostile group living on Palestinian land interspersed between Palestinian communities, the sense of injustice increased. The small minority of settlers were

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

enjoying most of the resources of the land at the expense of the Palestinian majority. In addition, members of the Palestinian community encountered great difficulties as they tried to continue leading normal lives with the Israeli military and security forces placing ever more restrictions on every aspect of their daily routine. As the US led Sharm El-Sheikh Fact-Finding Committee Report of 2001, known as the Mitchell Report found: "[d]uring our last visit, we observed the impact of 6,400 settlers on 140,000 Palestinians in Hebron and 6,500 settlers on over 1,100,000 Palestinians in the Gaza Strip... we note that many of the confrontations during this conflict have occurred at points where Palestinians, settlers, and security forces protecting the settlers, meet. ...further restrictions on the movement of people and goods have been imposed by Israel on the West Bank and the Gaza strip... of particular concern to the PA has been the destruction by Israeli security forces and settlers of tens of thousands of olive and fruit trees and other agricultural property. The closures have had other adverse effects, such as preventing civilians from access to urgent medical treatment and preventing students from attending schools."[23] As a result of all these actions by the security forces and the settlers a feeling pervaded amongst Palestinians of having their "backs against the wall." Added to this was the loss of hope that the much-heralded negotiations and Oslo Accords would lead to a just peace. All these factors led to the uprising in 2000 that has come to be known as the Second Intifada, in the wake of which the attacks at issue in this case took place.

---

[23] http://2001-2009.state.gov/p/nea/rls/rpt/3060.htm

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

IV.  Comments on the expert reports of Dr. Jeffrey F. Addicott, Dr. Mathew Levitt, Mr. Itamar Marcus, Prof. Efraim Karsh, Advocate Nick Kaufman and Alon Eviatar.

i.   These six experts (The Experts) have not taken any notice in their reports that the shootings and bombings at issue in this case, took place at locations that are subject to different jurisdictions and which, with the exception of the shooting at the Givon Junction, are not in the OPT. Their reports did not reflect the difference in legal status, accessibility and responsibility, or lack of it, of the PA in each of these locations or the extent to which Israel has full control including full security responsibility over these areas.

ii.  Nor did the Experts take into consideration the conditions prevailing at the time when the bombings and shootings took place. For example, the expert Report by Alon Eviatar, which focuses on the Hebrew University bombing. On page 7 he describes the Palestinian Authority as having all the attributes "in the town of Ramallah" (where he claims "the bombing attack of the Hebrew University campus was planned" and which he writes "is under the complete control of the Palestinian Authority'), of a state including "a proper central government: the President of Palestine – a Parliament...; a government with law enforcement mechanisms, a police force, a judicial system, prisons, security mechanisms, intelligence services and other mechanisms of a governmental authority." He fails to mention that prior to and during the time when the Hebrew University bombing took place in July 31, 2002 the Israeli

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

army had invaded Ramallah and other Palestinian towns under the PA's authority and imposed a strict 24 – hour curfew. This invasion which began on 29 March, 2002 was still on-going at the time when the Hebrew University bombing took place. During all this time Ramallah as well as other cities in the West Bank was under curfew imposed by the Israeli army and thus under total Israeli security control. Among other PA institutions and ministries that the army damaged or ransacked was the headquarters of Arafat at the Muqataa, and the Headquarters of the Preventive Security headed by Jibril Rjoub. Earlier in October 2000, as mentioned above in this report, Israeli helicopters had fired rockets at the police station in Ramallah leveling it to the ground. The other experts refer extensively to documents the Israeli army captured when it ransacked Palestinian institutions without mentioning that at least two of the bombings in this case, the Hebrew University bombing and the bombing in French Hill took place while the invasion of Palestinian cities by the Israeli army was taking place and when the Israeli army had placed these cities under total curfew and exercised full security control over the land and its inhabitants. Nor do they mention that all the other bombings took place after the Ramallah police station had been bombed in October 2000.

iii.     The opinions expressed by these experts are of a revisionist view of history more consistent with the right wing Israeli segment of the population who advocate retention of the territories Israel occupied in June 1967. One of them, Alon

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:     26 Main Street
              P.O.Box 74; or
Jerusalem:    P.O.Box 20007
              Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

Eviatar, lives in an illegal settlement in the occupied West Bank which he describes as situated in Israel.[24]

iv.   There is much that one can find to criticize in the Oslo Accords of 1993-5. One of my books, *From Occupation to Interim Accords*, provides a legal analysis of the Accords in which I describe what I believe was their weakness. And yet when they were signed these Accords were welcomed by most of the Israeli and Palestinian populations as an important step towards peace and reconciliation between the two sides, the Israeli nation and the Palestinian nation. The preamble of the Declaration of Principles (DOP) of 1993, states that "the Government of the State of Israel and the PLO team...representing the Palestinian people agree that it is time to end a put an end to decades of confrontation and conflict, recognize their mutual legitimate and political rights and strive to live in peaceful coexistence and mutual dignity and security and achieve a just, last and comprehensive peace settlement and historic reconciliation through the agreed political process." From the outset there were those on both sides who did not want this attempt at peace to succeed. On the Palestinian side it was Hamas which rejected this peace accord,   and on the Israeli side it was the Likud party, to which  the present Prime Minister of Israel belongs,  among  other  right  wing  parties.  There  are

---

[24] http://www.haaretz.com/news/diplomacy-defense/european-union-parts-of-modi-in-do-not-belong-to-israel-1.458222
http://www.ochaopt.org/documents/ochaopt_atlas_settlements_december2011.pdf.

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

numerous statements by leaders of these factions and parties attesting to this position including, as quoted above, by Benjamin Netanyahu who is now the Prime Minister of Israel.

v.  Article 1 of the DOP states that the envisaged process is "based on Security Council Resolution 242 and 338." Resolution 242 refers in the preamble to the "inadmissibility of the acquisition of territory by war." And calls for the "withdrawal of Israel armed forces from territories occupied in the recent conflict…" To this day, Israel has not complied with this legal obligation and refuses to withdraw.

vi. The Experts in their reports have tried to impose on both the conflict and the relationship between Israel and the PA a false frame. They did so by presenting it in terms of terrorism and counter-terrorism rendering the PA merely as an agent for counter-terrorism expected to safeguard Israel and its illegal settlers against acts of violence which the strong Israeli army in full control of security over all the areas where these acts of violence took place was unable to do. This fails to recognize what the Oslo Accords aspired  as indicated in the preamble to the DOP which stated: "The Government of the State of Israel and the PLO team …representing the Palestinian people, agree that it is time to put an end to decades of confrontation and conflict, recognize their mutual legitimate and political rights, and strive to live in peaceful coexistence and mutual dignity and security and achieve a just, lasting and comprehensive peace settlement and historic reconciliation through the agreed political process."

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

*Aziz B. Shehadeh, 1912- 1985*
*Fuad Shehadeh, Advocate\*=*
*Raja Shehadeh, Barrister -at -Law\*+*
*Nadeem Shehadeh, Jur. Dr. \*#*
*Kareem Shehadeh, Jur. Dr. \**
*Hadi Mashal, LL.B, LL.M.\**
*Anton H. Nassar, LL.B\**
*Nadia El-Khatieb LL.B\**
*Lubna Ibrahim LL.B\**

*\*Member - Palestinian Bar*
*−Member - Israeli Bar*
*+Member - English Bar/Lincoln's Inn*
*#Member - American Bar Ass./Utah*

*Ramallah:      26 Main Street*
*P.O.Box 74; or*
*Jerusalem:    P.O.Box 20007*
*Jerusalem 91199*

*Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471*
*Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com*

As the history of the period preceding the attacks at issue in this case reveals, Israel failed in fulfilling its part of the bargain by, *inter alia*, building settlements, doubling the number of Israeli illegal settlers living in the OPT, taking more of the land of the Palestinians and failing to allow the safe passage between the West Bank and the Gaza Strip.

vii.   A July 1996 Report by Human Rights Watch Middle East Report, Vol. 8. No. 3 (E) entitled *Israel's Closure of the West Bank and the Gaza Strip,* stated in the Summary that "The Israeli government has appeared to fall back on the policy of closure in order to prove to an outraged public that it is doing *something* in response to terrorism, regardless of that policy's impact on the welfare of the population." [25] The Human Rights Watch Report concludes that "Both Israel and the international community have the obligation to subject any security measures implemented by Israel to greater scrutiny, in order to ensure that they comply with international law. Israel's policies must reconcile security needs with the rights and welfare of the Palestinian population and stop subjecting the entire Palestinian population of the occupied territories to collective punishment and suffering for the crimes of a few." In imposing their own framework the Experts also failed to recall that the Palestinian people have been living under a foreign occupation for the past forty four years with limited access to the resources of their land and denied of many of their basic human rights. That they should be expected to

---

[25] http://www.hrw.org/reports/1996/Israel1.htm

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister-at-Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:     26 Main Street
              P.O.Box 74; or
Jerusalem:    P.O.Box 20007
              Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

act as policemen to their occupier, especially when the army and police force of the occupier is in full control of the borders and the territories in which these acts of violence took place, is unreasonable and unrealistic. Likewise the expectation that the PA should achieve greater standards in keeping the peace and securing the OPT than the strong Israeli army has been capable of, makes no sense, just as is the notion that the PA had the ability at any time to stop and start the violence against Israel and Israeli civilians at will.

viii.   The PA was created with the hope of developing into a full-fledged state with sovereignty over the territories Israel occupied in 1967. At least this was the expectation of most of the Palestinian people and many amongst the Israeli population. The accelerated rate of establishing Jewish settlements in the West Bank was aimed precisely at rendering such a possibility impossible to achieve. This is not conjecture -- it was the stated aim of the successive governments that carried out the expensive program of settling Israeli Jews in the OPT.[26] This project necessarily meant that more and more Palestinian residents of the OPT were deprived of their land and consequently the hope of reaching a peaceful settlement through negotiations.

ix.   Not only did the Israeli side, by its policy to accelerate the rate of establishing Jewish settlement in the OPT, destroy the hope for future peace and reconciliation between the Israeli and Palestinian people, it also failed to comply with a

---

[26] http://www.israelvotes.com/downloads/Short_Platforms_Download_Reg.pdf

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:     26 Main Street
              P.O.Box 74; 01
Jerusalem:    P.O.Box 20007
              Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

number of commitments made in the Oslo Accords. A few examples include the provision of safe passage connecting the West Bank and the Gaza Strip  for movement of persons, vehicles and goods (Article X.1.a of Annex I to the Interim Agreement), and allowing the PA to establish a Gaza Sea Port (Article VII.4 of the DOP)

x.    One commitment in the Oslo Accords that was critical to the Palestinian public and specifically referenced as a "confidence building measure" in Article XVI of the Interim Agreement was the release of Palestinian prisoners from Israeli prisons.  To this day, Israel has only partially complied with this provision.

xi.    The Israeli state in the reports of the Experts comes across as a passive agent that should not take any responsibility for its actions which included imposing restrictions on the life of the population of the OPT through closures and the refusal to fulfill obligations agreed upon in the Oslo Accords. The Experts fail to take into consideration that these and the continued and accelerated rate  of building settlements were major reasons that led to the failure of the peace process as envisaged in the Oslo Accords and the hoped for peace and reconciliation between the Israeli and Palestinian people.

xii.    As David Kretzmer, Professor Emeritus of International Law at the Hebrew University of Jerusalem, has concluded in his article, *The law of Belligerent Occupation in the Supreme Court of Israel*, in the International Review of the Red Cross, Humanitarian Debate: Law, Policy, Action, Volume 94,

# A. F. & R. SHEHADEH LAW FIRM
## EST. 1935

Aziz B. Shehadeh, 1912- 1985
Fuad Shehadeh, Advocate*=
Raja Shehadeh, Barrister -at -Law*+
Nadeem Shehadeh, Jur. Dr. *#
Kareem Shehadeh, Jur. Dr. *
Hadi Mashal, LL.B, LL.M.*
Anton H. Nassar, LL.B*
Nadia El-Khatieb LL.B*
Lubna Ibrahim LL.B*

*Member - Palestinian Bar
=Member - Israeli Bar
+Member - English Bar/Lincoln's Inn
#Member - American Bar Ass./Utah

Ramallah:    26 Main Street
             P.O.Box 74; or
Jerusalem:   P.O.Box 20007
             Jerusalem 91199

Tel: (02) 2956441, (02) 2984222, (02) 2961111, (02) 2963333, (02) 2967777, Fax: (02) 2953471
Website: www.shehadehlaw.com - e-mail: info@shehadehlaw.com

Number 885, 2012, p.235, "the fact that hostilities are taking place that meet the level and scope of armed violence and organization for them to be regarded as an armed conflict rather than riots or disturbances does not of itself mean that the Occupying Power has lost its effective control over the area. It retains its duties as an Occupying Power." By putting the blame solely on the Palestinians Israel is shunning this duty.

## V. Conclusion

The PA was established as a result of a specific agreement between Israel and the PLO, namely, the Oslo Accords. As has already been made clear, no jurisdiction was given to the PA over any part of Jerusalem, West or East, Jewish settlements, settlers or Israeli citizens all of whom remained subject to the protection of the IDF pending the final status negotiations. A Palestinian police force was established under the Accords which had limited responsibility that did not include the protection of Jewish settlements, settlers, Israeli citizens or Non-Palestinians. Nor was it given sufficient authority in law or in fact to prevent the attacks at issue in this case.

July 15, 2013

Raja Shehadeh
Barrister,
26 Main Street,
Ramallah,
The Palestinian Territories, via Israel

# (EXHIBITS OMITTED)