# EXHIBIT B.4

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

```
MARK I. SOKOLOW, et al.,            )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  ) Civil Action No.
                                    ) 04cv397(GBD)(RLE)
THE PALESTINE LIBERATION            )
ORGANIZATION, et al.,               )
                                    )
        Defendants.                 )
_____)
```

DEPOSITION OF MICHAEL SFARD

JERUSALEM, ISRAEL

OCTOBER 24, 2013

REPORTED BY: BRENDA MATZOV, CA CSR NO. 9243

1  was, under terms of the necessity defense, the criminal
2  defense of necessity, it would be permissible for a
3  GSS investigator, interrogator to use physical means
4  of interrogation. And indeed, in later years, the GSS
5  has invoked the necessity exception.
6      Q.   Does -- does an -- I'm a little ahead of
7  myself. But since you raised it, I'll ask.
8           Is it your understanding that an investigation
9  that -- that evidence obtained through the use of the
10 investigative techniques that were discussed in the
11 Public Committee Against Torture case, is it your
12 understanding that such evidence is admissible in
13 a criminal court case?
14     A.   There is no blanket rule about this.
15 According to the Supreme Court ruling, such statements
16 can be admissible and the court -- the criminal court
17 has to examine on a case-by-case basis whether these
18 techniques have undermined the interviewer -- the
19 interviewee's freedom of will.
20     Q.   And if the court concludes that the accused's
21 freedom of will was interfered with, what does the
22 court do?
23     A.   Then it has to suppress the evidence, the
24 statement.
25     Q.   Has that happened?

1      Q.   So you didn't read any documents that were
2   attached to the report of Alon Eviatar?
3           Do you know who Alon Eviatar is?
4      A.   I know who Alon Eviatar is.  I'm trying to
5   figure out what were the attachments.  But I think I
6   didn't.  So --
7      Q.   And do you know who Israel Shrenzel is?
8      A.   I do.
9      Q.   Did you read his report?
10     A.   I glanced through his report.  I didn't read
11  it word by word.
12     Q.   Did you read any of the attachments to his
13  report?
14     A.   No.
15     Q.   Okay.  Now, I want to ask you a very precise
16  question.  I want you to listen to it very carefully.
17  Not that you -- I mean, you've been very careful.
18  I'm not -- it's not a criticism.
19          But I want to know if you believe, to a
20  reasonable degree of certainty, that any of the 21
21  people who were convicted of the crimes that we're
22  talking about here today are actually innocent?
23     A.   I cannot have any informed opinion about
24  your question.
25          MR. YALOWITZ:  Okay.  It would be a convenient