# EXHIBIT C.13

7. *Requests* the Secretary-General to report to the General Assembly at its twenty-ninth session on relevant developments concerning human rights in armed conflicts, in particular on the proceedings and results of the 1974 session of the Diplomatic Conference;

8. *Decides* to include in the provisional agenda of its twenty-ninth session the item entitled "Respect for human rights in armed conflicts".

*2197th plenary meeting
12 December 1973*

**3103 (XXVIII). Basic principles of the legal status of the combatants struggling against colonial and alien domination and racist régimes**

*The General Assembly,*

*Recalling* that the Charter of the United Nations reaffirms faith in the dignity and worth of the human person,

*Recalling* resolution 2444 (XXIII) of 19 December 1968 in which the General Assembly, *inter alia*, recognized the need for applying basic humanitarian principles in all armed conflicts,

*Recognizing further* the importance of respecting the Hague Convention of 1907,[15] the Geneva Protocol of 1925,[16] the Geneva Conventions of 1949[17] and other universally recognized norms of modern international law for the protection of human rights in armed conflicts,

*Reaffirming* that the continuation of colonialism in all its forms and manifestations, as noted in General Assembly resolution 2621 (XXV) of 12 October 1970, is a crime and that colonial peoples have the inherent right to struggle by all necessary means at their disposal against colonial Powers and alien domination in exercise of their right of self-determination recognized in the Charter of the United Nations and the Declaration on Principles of International Law concerning Friendly Relations and Co-operation among States in accordance with the Charter of the United Nations,[18]

*Stressing* that the policy of *apartheid* and racial oppression has been condemned by all countries and peoples, and that the pursuing of such a policy has been recognized as an international crime,

*Reaffirming* the declarations made in General Assembly resolutions 2548 (XXIV) of 11 December 1969 and 2708 (XXV) of 14 December 1970 that the practice of using mercenaries against national liberation movements in the colonial Territories constitutes a criminal act,

*Recalling* the numerous appeals of the General Assembly to the colonial Powers and those occupying foreign territories as well as to the racist régimes set forth, *inter alia*, in resolutions 2383 (XXIII) of 7 November 1968, 2508 (XXIV) of 21 November 1969, 2547 (XXIV) of 11 December 1969, 2652 (XXV) of 3 December 1970, 2678 (XXV) of 9 December 1970, 2707 (XXV) of 14 December 1970, 2795 (XXVI) and 2796 (XXVI) of 10 December 1971 and 2871 (XXVI) of 20 December 1971, to ensure the application to the fighters for freedom and self-determination of the provisions of the Geneva Convention relative to the Treatment of Prisoners of War, of 12 August 1949,[19] and the Geneva Convention relative to the Protection of Civilian Persons in Time of War, of 12 August 1949,[20]

*Deeply concerned* at the fact that, despite the numerous appeals of the General Assembly, compliance with the provisions of the said Conventions has not yet been ensured,

*Noting* that the treatment of the combatants struggling against colonial and alien domination and racist régimes captured as prisoners still remains inhuman,

*Recalling* its resolutions 2674 (XXV) of 9 December 1970 and 2852 (XXVI) of 20 December 1971, in which it pointed out the need for the elaboration of additional international instruments and norms envisaging, *inter alia*, the increase of the protection of persons struggling for freedom against colonial and alien domination and racist régimes,

*Solemnly proclaims* the following basic principles of the legal status of the combatants struggling against colonial and alien domination and racist régimes without prejudice to their elaboration in future within the framework of the development of international law applying to the protection of human rights in armed conflicts:

1. The struggle of peoples under colonial and alien domination and racist régimes for the implementation of their right to self-determination and independence is legitimate and in full accordance with the principles of international law.

2. Any attempt to suppress the struggle against colonial and alien domination and racist régimes is incompatible with the Charter of the United Nations, the Declaration on Principles of International Law concerning Friendly Relations and Co-operation among States in accordance with the Charter of the United Nations, the Universal Declaration of Human Rights and the Declaration on the Granting of Independence to Colonial Countries and Peoples[21] and constitutes a threat to international peace and security.

3. The armed conflicts involving the struggle of peoples against colonial and alien domination and racist régimes are to be regarded as international armed conflicts in the sense of the 1949 Geneva Conventions, and the legal status envisaged to apply to the combatants in the 1949 Geneva Conventions and other international instruments is to apply to the persons engaged in armed struggle against colonial and alien domination and racist régimes.

4. The combatants struggling against colonial and alien domination and racist régimes captured as prisoners are to be accorded the status of prisoners of war and their treatment should be in accordance with the provisions of the Geneva Convention relative to the Treatment of Prisoners of War, of 12 August 1949.

---

[15] Carnegie Endowment for International Peace, *The Hague Conventions and Declarations of 1899 and 1907* (New York, Oxford University Press, 1915).
[16] League of Nations, *Treaty Series*, vol. XCIV, No. 2138, p. 65.
[17] United Nations, *Treaty Series*, vol. 75, Nos. 970-973.
[18] Resolution 2625 (XXV), annex.

[19] United Nations, *Treaty Series*, vol. 75, No. 972, p. 135.
[20] *Ibid.*, No. 973, p. 287.
[21] Resolution 1514 (XV).



DEFENDANT'S EXHIBIT NO. 13

03:TP000494

02:008130

5. The use of mercenaries by colonial and racist régimes against the national liberation movements struggling for their freedom and independence from the yoke of colonialism and alien domination is considered to be a criminal act and the mercenaries should accordingly be punished as criminals.

6. The violation of the legal status of the combatants struggling against colonial and alien domination and racist régimes in the course of armed conflicts entails full responsibility in accordance with the norms of international law.

*2197th plenary meeting*
*12 December 1973*

**3104 (XXVIII). United Nations Conference on Prescription (Limitation) in the International Sale of Goods**

*The General Assembly,*

*Recalling* its resolution 2929 (XXVII) of 28 November 1972 by which it decided that an international conference of plenipotentiaries should be convened in 1974 to consider the question of prescription (limitation) in the international sale of goods and to embody the results of its work in an international convention and such other instruments as it may deem appropriate,

*Recalling further* that, in the foregoing resolution, it referred to the conference, as the basis for its consideration, the draft convention on prescription (limitation) in the international sale of goods as contained in chapter II of the report of the United Nations Commission on International Trade Law on the work of its fifth session,[22] together with the commentary thereon and such comments and proposals as may be submitted by Governments and interested international organizations,

*Reaffirming* the conviction, expressed in the foregoing resolution, that the harmonization and unification of national rules governing prescription (limitation) in the international sale of goods would contribute to the removal of obstacles to the development of world trade,

*Requests* the Secretary-General:

(*a*) To convene the United Nations Conference on Prescription (Limitation) in the International Sale of Goods at United Nations Headquarters in New York, from 20 May to 14 June 1974;

(*b*) To provide summary records of the proceedings of the plenary meetings of the Conference and of meetings of committees of the whole which the Conference may wish to establish;

(*c*) To invite, in full compliance with General Assembly resolution 2758 (XXVI) of 25 October 1971, States Members of the United Nations or members of specialized agencies or the International Atomic Energy Agency and States parties to the Statute of the International Court of Justice, as well as the Democratic Republic of Viet-Nam, to participate in the Conference;

(*d*) To invite interested specialized agencies and international organizations, as well as the United Nations Council for Namibia, to attend the Conference as observers;

(*e*) To draw the attention of the States and other participants, referred to in subparagraphs (*c*) and (*d*)

above, to the desirability of appointing as their representatives persons especially competent in the field to be considered;

(*f*) To place before the Conference all relevant documentation and recommendations relating to methods of work and procedure, and to arrange for adequate staff and facilities required for the Conference;

(*g*) To report on the results achieved by the Conference to the General Assembly at its twenty-ninth session.

*2197th plenary meeting*
*12 December 1973*

**3105 (XXVIII). Report of the Special Committee on the Question of Defining Aggression**

*The General Assembly,*

*Having considered* the report of the Special Committee on the Question of Defining Aggression on the work of its sixth session,[23] held at Geneva from 25 April to 30 May 1973,

*Noting* the progress so far achieved by the Special Committee in its consideration of the question of defining aggression and on the draft definition, as reflected in its report,

*Believing* that such progress makes it a practical possibility for the Special Committee to elaborate a generally acceptable draft definition of aggression at its next session,

*Considering* that it was not possible for the Special Committee to complete its task at its sixth session,

*Considering* that, in its resolutions 2330 (XXII) of 18 December 1967, 2420 (XXIII) of 18 December 1968, 2549 (XXIV) of 12 December 1969, 2644 (XXV) of 25 November 1970, 2781 (XXVI) of 3 December 1971 and 2967 (XXVII) of 14 December 1972, the General Assembly recognized the widespread conviction of the need to expedite the definition of aggression,

*Considering* the urgency of bringing the work of the Special Committee to a successful conclusion and the desirability of achieving the definition of aggression as soon as possible,

*Noting also* the common desire of the members of the Special Committee to continue their work on the basis of the results achieved and to arrive with due speed at a draft definition in a spirit of mutual understanding and accommodation,

1. *Decides* that the Special Committee on the Question of Defining Aggression shall resume its work, in accordance with General Assembly resolution 2330 (XXII), early in 1974 in New York, with a view to completing its task and to submitting to the Assembly at the twenty-ninth session a draft definition of aggression;

2. *Requests* the Secretary-General to provide the Special Committee with the necessary facilities and services;

3. *Decides* to include in the provisional agenda of its twenty-ninth session the item entitled "Report of the Special Committee on the Question of Defining Aggression".

*2197th plenary meeting*
*12 December 1973*

---

[22] *Official Records of the General Assembly, Twenty-seventh Session, Supplement No. 17* (A/8717), paras. 21 and 22.

[23] *Ibid., Twenty-eighth Session, Supplement No. 19* (A/9019).

03:TP000495

02:008131