UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

MARK I. SOKOLOW, *et al.*,

                     Plaintiffs,

     vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                  Defendants.

---

No. 04 Civ. 00397 (GBD) (RLE)

<br>

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT
<u>ON DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE</u>**

<br><br>

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022
(212) 715-1000

*Attorneys for Plaintiffs*

<br><br>

May 2, 2014

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................... ii

FACTS ........................................................................................................................................1

I.  THE PLO ..........................................................................................................................1

II.  THE PA .............................................................................................................................4

PROCEDURAL POSTURE ......................................................................................................4

SUMMARY JUDGMENT STANDARD ..................................................................................5

ARGUMENT .............................................................................................................................5

I.  THE PLO AND THE PA ARE PUBLIC BODIES, NOT "UNINCORPORATED ASSOCIATIONS," UNDER INTERNAL NEW YORK LAW .......................................6

II.  THE LAW OF ISRAEL APPLIES TO—AND FORECLOSES—DEFENDANTS' SUBSTANTIVE "CAPACITY" DEFENSE .................................................................10

    A.  New York's Choice of Law Rules Apply ........................................................... 10

    B.  Under New York's Choice of Law Rules, Israeli Law Applies .......................... 11

    C.  Defendants Have Capacity To Be Sued Under the Law of Israel ........................ 15

CONCLUSION ........................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

<u>**CASES**</u>:

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................................5

*Antaeus Enters., Inc. v. SD-Barn Real Estate, L.L.C.*,
  480 F. Supp. 2d 734 (S.D.N.Y. 2007)..........................................................................14

*Ass'n for Pres. of Freedom of Choice, Inc. v. Wadmond*,
  215 F. Supp. 648 (S.D.N.Y. 1963) ...............................................................................8

*Banco de Brasil, S.A. v. Calhoon*,
  50 Misc. 2d 512 (Sup. Ct. N.Y. County 1966) .........................................................14

*Barrett v. N.Y. Republican State Comm.*,
  213 A.D.2d 989 (4th Dep't 1995).................................................................................8

*Brink's Ltd. v. S. African Airways*,
  93 F.3d 1022 (2d Cir. 1996).........................................................................................10

*Edwards v. Erie Coach Lines Co.*,
  17 N.Y.3d 306 (2011) ...............................................................................11, 12, 13, 14

*Fennell v. Bache*,
  123 F.2d 905 (D.C. Cir. 1941) .....................................................................................11

*Graziano v. Cnty. of Albany*,
  3 N.Y.3d 475 (2004) ......................................................................................................7

*Harman v. City of Ft. Lauderdale*,
  134 Misc. 133 (Sup. Ct. N.Y. County 1929) ...............................................................7

*Heifetz v. Rockaway Point Volunteer Fire Dep't*,
  124 N.Y.S.2d 257 (Sup. Ct. Kings Co. 1953),
  *aff'd*, 282 A.D. 1062 (2d Dept. 1953)..........................................................................8

*In re Allstate Ins. Co. (Stolarz)*,
  81 N.Y.2d 219 (1993) ..................................................................................................11

*In re Andrejevich's Estate*,
  57 N.Y.S.2d 86 (Surr. Ct. Nassau Co. 1945)................................................................8

*In re Rathbone's Estate*,
  170 Misc. 1030 (Surr. Ct. N.Y. County 1939).............................................................14

*Jund v. Town of Hempstead*,
   941 F.2d 1271 (2d Cir. 1991) ................................................................................8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) ...........................................................................................10

*Klebanow v. NY Produce Exch.*,
   344 F.2d 294 (2d Cir. 1965) ......................................................................... 10, 11

*Klinghoffer v. S.N.C. Achille Lauro*,
   937 F.2d 44 (2d Cir. 1991) ..................................................................................9

*Martin v. Curran*,
   303 N.Y. 276 (1951) .................................................................................. *passim*

*Mount v. Tuttle*,
   183 N.Y. 358 (1906) ...........................................................................................8

*Neumeier v. Kuehner*,
   31 N.Y.2d 121 (1972) ................................................................................... 12, 13

*Padula v. Lilarn Props. Corp.*,
   84 N.Y.2d 519 (1994) .......................................................................................11

*Russian Socialist Federated Soviet Republic v. Cibrario*,
   235 N.Y. 255 (1923) .........................................................................................10

*Schultz v. Boy Scouts of Am., Inc.*,
   65 N.Y.2d 189 (1985) ................................................................................... 12, 13

*Sokolow v. PLO*,
   583 F. Supp. 2d 451 (S.D.N.Y. 2008) ...................................................................1

*Stichting Ter Behartiging Van De Belangen Vab Odaandeelhouder in Het Kapital Van
   Saybolt Int'l B.V. v. Schreiber*,
   407 F.3d 34 (2d Cir. 2005) ................................................................................14

*Strauss v. Credit Lyonnais, S.A.*,
   249 F.R.D. 429 (E.D.N.Y. 2008) .......................................................................10

*Textile Props., Inc. v. M.J. Whittall Assocs.*,
   157 Misc. 108 (Sup. Ct. N.Y. County 1934) ......................................................14

*Town of Riverhead v. N.Y. State Dep't of Envt'l Conservation*,
   50 A.D.3d 811 (2d Dep't 2008) ...........................................................................7

*Ungar v. PLO*,
   402 F.3d 274 (1st Cir. 2005) ...............................................................................4

*United States v. Lumumba*,
  741 F.2d 12 (2d Cir. 1984)........................................................................10

*Van Horn v. Kittitas Co., Wash.*,
  28 Misc. 333 (Sup. Ct. N.Y. County 1899) .............................................7

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
  877 F.2d 1120 (2d Cir. 1989)......................................................................9

<u>STATUTES AND RULES</u>:

22 U.S.C. § 5201 .................................................................................................2

CPLR 1023..................................................................................................1, 6, 9

CPLR 1025......................................................................................................5, 6

N.Y. Gen. Ass'ns L. § 13 ....................................................................................6

Pub. L. 100-204, 101 Stat. 1331 ........................................................................2

Fed. R. Civ. P. 17(b) .........................................................................5, 6, 10, 11

Fed. R. Civ. P. 56(a) ...........................................................................................5

Fed. R. Civ. P. 56(e) ...........................................................................................5

Fed. R. Civ. P. 81(d)(1).....................................................................................11

<u>OTHER AUTHORITIES</u>:

Agreement on Gaza Strip and Jericho Area (May 4, 1994), *available at*
  http://www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/agreement%20on%20ga
  za%20strip%20and%20jericho%20area.aspx ..........................................................2

Agreement on Preparatory Transfer of Powers and Responsibilities (Aug. 29, 1994),
  *available at*
  http://www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/agreement%20on%20
  preparatory%20transfer%20of%20powers%20and%20re.aspx .................................3

Declaration of Principles on Interim Self-Government Arrangements (Sept. 13, 1993),
  *available at* www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/declaration of
  principles.aspx .....................................................................................................2

Rashid Hamid, *What is the PLO?*, 4 J. Palestine Studies 90 (Summer 1975),
  *available at* http://tamtheel.ps/wp-content/uploads/2013/05/1What-is-the-PLO.pdf...............1

Aaron D. Pina, *CRS Report for Congress: Palestinian Factions* (June 8, 2005),
  *available at* http://www.fas.org/sgp/crs/mideast/RS21235.pdf .............................................1, 2

Permanent Observer Mission of the State of Palestine to the United Nations, "About the Palestinian Liberation Organization," *available at* http://palestineun.org/about-palestine/palestine-liberation-organization/...................................................................3

U.N. Doc. A/RES/3237 (XXIX) (1974) *available at* http://unispal.un.org/UNISPAL.NSF/0/512BAA69B5A32794852560DE0054B9B2..............2

Wright & Miller, *Federal Practice and Procedure* (3d ed.) § 1559.............................................11

Jim Zanotti, Congressional Research Service, "U.S. Foreign Aid to the Palestinians," (Sept. 30, 2013), *available at* http://www.fas.org/sgp/crs/mideast/RS22967.pdf http://palestineun.org/about-palestine/palestine-liberation-organization/ .................................3

Defendants' Fourth Affirmative Defense asserts that they lack "capacity" to be sued on non-federal claims because they are unincorporated associations and therefore are immune under the rule described in *Martin v. Curran*, 303 N.Y. 276 (1951). Defendants' position is meritless because defendants are not unincorporated associations—assuming New York law applies, they are instead non-sovereign public bodies that can be sued under CPLR 1023. Moreover, defendants cannot rely on New York's rule of immunity described in *Martin v. Curran*, because the law of Israel does not provide such immunity and, under New York's choice of law rules, the law of Israel controls.

## FACTS

As this Court has noted, defendants' own position is that they are "performing core governmental functions." *Sokolow v. PLO*, 583 F. Supp. 2d 451, 457 (S.D.N.Y. 2008). The Palestinian Authority ("PA") is a non-sovereign government created by an agreement between the Palestine Liberation Organization ("PLO") and the State of Israel. "Although the PLO is separate from the PA, most analysts contend that the PLO dominates PA institutions." Aaron D. Pina, *CRS Report for Congress: Palestinian Factions* at CRS-3 (June 8, 2005), *available at* http://www.fas.org/sgp/crs/mideast/RS21235.pdf.

## I.    THE PLO

The PLO was formed in 1964, with the adoption of a constitution. The PLO Constitution provides for an elected National Assembly (Art. 5), an Executive Committee headquartered in Jerusalem (Art. 17), a Palestine National Army (Art. 22), a Palestine National Fund (Art. 18) and

Departments, such as a Department for Political and Information Affairs.  PLO Constitution (Pls. Trial Ex. 1076) (Yalowitz Declaration ("Yalowitz Dec.") Ex. A.1076).[1]

According to the Congressional Research Service, the PLO "is a diverse organization that represents all Palestinians around the world, administered by an 18-person executive committee, elected by a 124-member Central Council, which in turn is elected by the 400-member Palestine National Council (PNC)."  Pina, *Palestinian Factions* at CRS-3.  "Palestinian factions generally agree that the PLO is the most legitimate representative of Palestinians."  *Id.*

In 1974, the UN General Assembly granted the PLO "observer status at the United Nations."  U.N. Doc. A/RES/3237 (XXIX) (1974) *available at* http://unispal.un.org/UNISPAL.NSF/0/512BAA69B5A32794852560DE0054B9B2.

In 1987, the United States Congress enacted 22 U.S.C. § 5201, which made a series of findings concerning the PLO's involvement in terrorism and determined "that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law."  Pub. L. 100-204, 101 Stat. 1331 at § 1002(b) (1987).

In 1993, the PLO and the State of Israel exchanged letters of recognition and signed a "Declaration of Principles" ("DOP").  The arrangements contemplated in the DOP included Palestinian self-rule in Gaza and Jericho (Art. V), early empowerment for the Palestinians in the West Bank (Art. VI), and an agreement on self-government and the election of a Palestinian council (Art. III).[2]

---

[1] *See also* Rashid Hamid, *What is the PLO?*, 4 J. Palestine Studies 90 (Summer 1975), *available at* http://tamtheel.ps/wp-content/uploads/2013/05/1What-is-the-PLO.pdf.

[2] Declaration of Principles on Interim Self-Government Arrangements (Sept. 13, 1993), *available at* www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/declaration of principles.aspx.

Following further negotiations, the PLO and the State of Israel entered into a series of bilateral agreements.  These agreements included, *inter alia*, the "Gaza-Jericho Agreement," signed in Cairo in 1994;[3] the "Agreement on Preparatory Transfer of Powers and Responsibilities," also signed in 1994;[4] and the "Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip" (the "Interim Agreement"), signed in 1995, Pls. Trial Ex. 532 (Yalowitz Dec. Ex. A.532).

In the Interim Agreement, the PLO and the State of Israel agreed to a carefully constructed allocation of duties among the State of Israel, the PLO, and the PA.  For its part, the PLO was granted authority to "conduct negotiations and sign agreements with states or international organizations" in limited spheres—economic relations, regional development, donor assistance, and cultural, scientific and educational goals.  Interim Agreement (Pls. Trial Ex. 532), Art. 9.5(b)).

Today, the PLO "represents the Palestinian national movement in international bodies, including the United Nations,"[5] and holds itself out as "the embodiment of the Palestinian national movement."[6]

---

[3] Agreement on Gaza Strip and Jericho Area (May 4, 1994), *available at* http://www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/agreement%20on%20gaza%20strip%20and%20jericho%20area.aspx.

[4] Agreement on Preparatory Transfer of Powers and Responsibilities (Aug. 29, 1994), *available at* http://www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/agreement%20on%20preparatory%20transfer%20of%20powers%20and%20re.aspx.

[5] Jim Zanotti, Congressional Research Service, "U.S. Foreign Aid to the Palestinians," at 1 n.1 (Sept. 30, 2013), *available at* http://www.fas.org/sgp/crs/mideast/RS22967.pdf.

[6] *See* Permanent Observer Mission of the State of Palestine to the United Nations, "About the Palestinian Liberation Organization," *available at* http://palestineun.org/about-palestine/palestine-liberation-organization/.

## II.    THE PA

The Interim Agreement established executive, legislative, and judicial functions for the PA and transferred specified "powers and responsibilities" from the Israeli military government to the PA.  Interim Agreement (Pls. Trial Ex. 532), Art. 1.1, 1.2.  Under the Interim Agreement, the PA provides many government services, including local policing and civil authority over traditional matters such as agriculture, banking, employment, environmental protection, unclaimed property, health, labor, zoning, postal services, social welfare, telecommunications, transportation, water and sewage.  *Id.*, Annex III.[7]

The Interim Agreement provides that the PA can "sue and be sued and conclude contracts."  Interim Agreement (Pls. Trial Ex. 532), Art. 9.2.

## PROCEDURAL POSTURE

On January 4, 2012, defendants moved to dismiss plaintiffs' non-federal claims because they claimed to lack capacity to be sued on such claims.  DE 186.  Defendants argued that the Court should find that they were unincorporated associations because other courts had assumed them to be so and because they did not fit into any other "category" of defendant—such as corporations, partnerships or individuals.  *See* Hearing Tr. (Aug. 6, 2012) (DE 252), at 10.  The Court denied defendants' motion from the bench.  *Id.* at 76.[8]  The Court allowed that defendants

---

[7] Although the PA provides governmental services, Article 1.1 of the Interim Agreement provides that "Israel shall continue to exercise powers and responsibilities not so transferred." *Id.*  Thus, the authority transferred to the PA "was limited and, during and after that transition, Israel explicitly reserved control over all matters not transferred." *Ungar v. PLO*, 402 F.3d 274, 291 (1st Cir. 2005).

[8] With regard to defendants' claim that they were unincorporated associations because they did not fit any other category, the Court observed that "you can't say that because it's not an apple it must be an orange." *Id.* at 10.  The Court also declined to give weight to rulings by other courts in the absence of evidence in the record before it. *Id.* at 78.  The Court also rejected plaintiffs' argument that defendants had waived this defense.  Plaintiffs respectfully preserve that argument but will not reargue it on this motion.

could revisit the issue after discovery, but cautioned that defendants' capacity defense was an affirmative defense, and therefore:

> [I]t is the defendant's burden to prove its affirmative defense and having that burden the defendant can't simply rely on the pleadings or prior litigation. It must specifically point to evidence on which they say indisputably demonstrates that affirmative defense to the exclusion of any other conclusion.

*Id.*

During discovery, defendants identified scant evidence regarding their status as "unincorporated associations." To the contrary, defendants admitted that they could not identify their "members" within the meaning of the rule in *Martin v. Curran,* and that they are not "labor union[s] like the unincorporated association at issue in *Martin*" but rather are made up of "constituent political organizations which have their own individual members." Defs.' Answer to Interrog. No. 7 in the [Fifth] Set of Interrogs. from All Pls. (Dec. 21, 2012) (Yalowitz Dec. Ex. B).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The opposing party may not rest merely on allegations. Fed. R. Civ. P. 56(e). The "inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## ARGUMENT

Defendants' Fourth Affirmative Defense alleges that defendants "lack the capacity to be sued in this Court with respect to" non-federal claims. Answer (Apr. 13, 2011) (DE 92).

Defendants' logic is as follows.  They state that Rule 17(b)(3) of the Federal Rules of Civil

Procedure provides that the law of the forum state determines their "capacity to be sued" on non-

federal claims.  From there, they argue that they are "unincorporated associations" under New

York law.  The *procedural* import of a finding that defendants are an "unincorporated

association" would be that they can be sued in the name of certain executives under CPLR 1025.

But it is the *substantive* effect defendants are really after.  They argue that New York law

immunizes them unless liability can be established against each member of the association, under

the rule expressed in *Martin v. Curran*, 303 N.Y. 276 (1951).

The Court should enter summary judgment on this defense for two reasons.  *First*, under

the undisputed material facts, defendants are "public bodies" covered by CPLR 1023, not

"unincorporated associations" covered by CPLR 1025.  *Second*, even if defendants *were*

"unincorporated associations" (and they are not), the substantive law of New York would not

protect them because under New York's choice of law rules, the law of Israel controls and

provides no legal basis for defendants' substantive defense.

## I.    THE PLO AND THE PA ARE PUBLIC BODIES, NOT "UNINCORPORATED ASSOCIATIONS," UNDER INTERNAL NEW YORK LAW

As relevant here, Fed. R. Civ. P. 17(b) provides that defendants' "capacity to be sued is

determined by the law of the state where the court is located" for claims that do not arise under

federal law.  The CPLR has two potentially relevant provisions.  CPLR 1023 provides that

"[w]hen a public officer, body, board, commission or other public agency may sue or be sued in

its official capacity, it may be designated by its official title, subject to the power of the court to

require names to be added."  CPLR 1025 provides that "actions may be brought by or against the

president or treasurer of an unincorporated association on behalf of the association in accordance

with the provisions of the general associations law." New York's General Associations Law, in turn, permits an action to proceed against the president or treasurer of an unincorporated association on any claim that the plaintiff may maintain "against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally." N.Y. Gen. Ass'ns L. § 13.

Assuming, *arguendo*, that the internal law of New York governs the capacity of the PLO and the PA (and it does not, for reasons discussed below), they would be subject to suit as "public bodies" rather than "unincorporated associations." "Capacity to sue may be expressly granted in enabling legislation or it may be inferred from review of the entity's statutory functions or responsibilities." *Graziano v. Cnty. of Albany*, 3 N.Y.3d 475, 479 (2004); *see Town of Riverhead v. N.Y. State Dep't of Envt'l Conservation*, 50 A.D.3d 811, 812 (2d Dep't 2008) (capacity "may be inferred as a necessary implication from the powers and responsibilities of a governmental entity, 'provided, of course, that there is no clear legislative intent negating review'").

The PA's capacity to sue and be sued is express. Interim Agreement, Art. 9.2 (Pls. Trial Ex. 532). A New York court would refer to the Interim Agreement in determining the capacity of the PA to sue and be sued. *See e.g. Harman v. City of Ft. Lauderdale*, 134 Misc. 133, 135 (Sup. Ct. N.Y. County 1929) ("The Florida statute … creating said Port Authority … specifically provides that said Port Authority 'shall constitute a body corporate and shall contract on behalf of said district and shall sue and be sued in that name.'"); *Van Horn v. Kittitas Co., Wash.*, 28 Misc. 333, 333 (Sup. Ct. N.Y. County 1899) ("The defendant is, by the statutes of the state of its domicile, a public corporation, capable of suing and of being sued."). Indeed, accepting

defendants' lack of capacity defense would controvert the express language of an international instrument to which the PLO is a signatory and from which the PA derives its powers.

Moreover, both the PLO and the PA are subject to suit as public bodies using a functional test. Defendants admit that they are "not labor unions like the unincorporated associations at issue in *Martin v. Curran*," Yalowitz Dec. Ex. B at No. 6(a), but claim—without any supporting evidence or authority—that they are still unincorporated associations under New York law. They are not. In New York, unincorporated associations exist purely on a voluntary or consensual basis and have no legal existence separate and apart from their members. *Jund v. Town of Hempstead*, 941 F.2d 1271, 1282 (2d Cir. 1991); *Martin v. Curran*, 303 N.Y. 276, 280 (1951); *Mount v. Tuttle*, 183 N.Y. 358, 366-67 (1906); *Barrett v. N.Y. Republican State Comm.*, 213 A.D.2d 989, 990 (4th Dep't 1995). Except in limited circumstances not relevant here, they cannot hold property, and they lack the capacity to contract absent ratification by all of their members. *Jund*, 941 F.2d at 1282; *Martin*, 303 N.Y. at 280; *In re Andrejevich's Estate*, 57 N.Y.S.2d 86 (Surr. Ct. Nassau Co. 1945).

Thus, voluntary organizations like labor unions and volunteer fire departments are unincorporated associations—but entities organized pursuant to law, like fire districts, are not. *See Heifetz v. Rockaway Point Volunteer Fire Dep't*, 124 N.Y.S.2d 257, 259-60 (Sup. Ct. Kings Co. 1953), *aff'd*, 282 A.D. 1062 (2d Dept. 1953); *see also Ass'n for Pres. of Freedom of Choice, Inc. v. Wadmond*, 215 F. Supp. 648, 650 (S.D.N.Y. 1963) (First Department's Committee on Character and Fitness is not an unincorporated association because it is "neither organized nor exists on a voluntary or consensual basis").

Neither the PA nor the PLO fits the profile of unincorporated associations. Neither exists on a voluntary and consensual basis. The PA has a local police force, levies taxes, and exercises

many law-enforcement functions.  It negotiates and enters into binding contracts.  Interim

Agreement, Art. 9.2 (Pls. Trial Ex. 532).  It provides classical municipal services, such as

sewage, and water service.  *Id.*, Annex III.  The PLO has an army, a legislature, and a "National

Fund."  PLO Constitution (Pls. Trial Ex. 1076), Arts. 5, 18, 22.  It negotiates and enters into

binding international agreements on behalf of the Palestinian people without member

"ratification."  It describes itself as "the internationally recognized representative of a sovereign

people who are seeking to exercise their rights to self-determination, national independence, and

territorial integrity."  *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 46 (2d Cir. 1991).  Both

the PA and the PLO hold property.  *Id.* at 46; Defs.' Resp. to Request for Admission No. 98 in

Pls.' First Requests for Admissions (Dec. 21, 2012)) (Yalowitz Dec. Ex. C).  And both obviously

have a distinct existence separate and apart from their members.  These attributes are not

consistent with being "unincorporated associations."  Indeed, when asked, the PLO could not

even provide a list of its members.  *See* Yalowitz Dec. Ex. B at Nos. 8, 9.

Defendants rely on the Second Circuit's decision in the *Klinghoffer* case.  But in that case

the PLO's status as an unincorporated association was simply assumed, and the parties did not

litigate the application of New York's substantive immunity rule under *Martin*.  *Klinghoffer*

arose from the PLO's hijacking of the cruise ship Achille Lauro in the Mediterranean Sea.  937

F.2d at 47.  The *Klinghoffer* plaintiffs designated the PLO as an unincorporated association in the

caption of the case.  All assumed that the PLO was, in fact, an "unincorporated association."

Neither the parties nor the court considered whether the PLO was instead a public body subject

to suit in its own name under CPLR 1023, or whether its capacity should be determined under

the law of a foreign jurisdiction.  *Klinghoffer* thus does not control this case because "*stare*

*decisis* is limited to actual determinations in respect to litigated and necessarily decided questions." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1128 (2d Cir. 1989).

Defendants have also suggested that they lack capacity to be sued under *Russian Socialist Federated Soviet Republic v. Cibrario*, 235 N.Y. 255 (1923). This argument confuses international "comity" with "capacity" to be sued. When a foreign state receives "comity," it may sue as a plaintiff, and it enjoys immunity as a defendant. In *Russian Socialist Republic*, the non-recognition meant that comity would not be extended to permit the foreign government to sue as a plaintiff. 235 N.Y. at 260-62. Just as non-recognition means that the foreign state cannot sue, non-recognition also means that the alleged government has no immunity as a defendant. *See United States v. Lumumba*, 741 F.2d 12, 14-15 (2d Cir. 1984). Here, the political branches have not granted the defendants recognition as states, so they are entitled to no "comity"—and thus no immunity. Indeed, the Anti-Terrorism Act was passed for the specific purpose of making it easier for U.S. citizens to sue terrorist organizations like the PLO. *See Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 443-44 (E.D.N.Y. 2008). The logic of *Russian Socialist Republic* suggests that the Court should honor that policy decision by permitting suit against the defendants on plaintiffs' non-federal claims as well.

## II.    THE LAW OF ISRAEL APPLIES TO—AND FORECLOSES—DEFENDANTS' SUBSTANTIVE "CAPACITY" DEFENSE

New York's choice of law rules (applicable here through Rule 17(b)) require application of the law of Israel, which does not provide defendants with a "capacity" defense or with immunity.

### A.    New York's Choice of Law Rules Apply

Rule 17(b)'s adoption of New York law includes New York's choice of law principles. "In applying the law of the forum jurisdiction, federal courts must also apply that state's choice

of law rules." *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996) (following

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *Klebanow v. NY Produce Exch.*, 344

F.2d 294, 296-97 (2d Cir. 1965) (reference to state law in Rule 17(b) is to "the 'whole law,' of

the place of suit"); Fed. R. Civ. P. 81(d)(1).  "Although 'the law of the state' as used generally in

the rules refers in most instances to matters of procedure which ordinarily are governed by

statute, the phrase is not expressly so limited, and in Rule 17(b), as in some other instances, it is

employed to designate matters which in some states are governed by statute, in others by the

common law." *Fennell v. Bache*, 123 F.2d 905, 907-08 (D.C. Cir. 1941).  "The various

references in Rule 17(b) to the state law should be construed in light of Rule 81(d)(1), which

provides that when the law of a state is referred to, the word 'law' includes the statutes of that

state and the state's judicial decisions." Wright & Miller, *Federal Practice and Procedure* (3d ed.)

§ 1559 (citing *Klebanow*).

### B.    Under New York's Choice of Law Rules, Israeli Law Applies

Under New York law, the "first step in any case presenting a potential choice of law issue

is to determine whether there is an actual conflict between the laws of the jurisdictions

involved." *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993).  This question is

evaluated for "each plaintiff vis-à-vis each defendant." *Edwards v. Erie Coach Lines Co.*, 17

N.Y.3d 306, 329 (2011).  Unlike New York law, Israeli law does not immunize "unincorporated

associations" and affirmatively allows suits against the PLO and the PA for tortious acts.  *See*

Section II.C, *infra*.

Assuming, *arguendo*, that the PLO or the PA lack capacity under New York law (and

they do not), the next step in the choice of law analysis is to perform an "interest analysis."

*Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994).  To determine which jurisdiction has

a greater interest, courts evaluate: (1) whether the law is "conduct regulating" or "loss allocating"; and (2) the "facts or contacts . . . [with each jurisdiction] which relate to the purpose of the particular law." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197-99 (1985); *see Padula*, 84 N.Y.2d at 521.

The common-law immunity described in *Martin* is loss-allocating, because it would "prohibit, assign, or limit liability after the tort occurs." *Padula*, 84 N.Y.2d at 522; *Schultz*, 65 N.Y.2d at 198 (loss-allocation laws include "those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit"). The plaintiff in *Martin* sued a labor union for libel. 303 N.Y. at 279. The court assumed that the publication was libelous, but nonetheless held that the complaint had to be dismissed because it was not alleged that "the union members themselves authorized or ratified the particular libels." *Id.* at 280. The rule in *Martin* limits an association's liability *after* the tort occurs. It does not regulate conduct prospectively.

For loss-allocating rules, New York employs three domicile-dependent rules, called the "*Neumeier* rules." *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972).

1.  Where the plaintiff and the defendant share a domicile, the loss-allocation rules of the shared domicile govern. *Edwards*, 17 N.Y.3d at 329-30.

2.  Where the plaintiff and the defendant are from different jurisdictions, if the law where the wrongful conduct occurred permits the plaintiff to recover, then the defendant "may not interpose a conflicting law of his state as a defense" absent exceptional circumstances. *Id.* at 321 (citing *Neumeier*).

3.  In other situations, the law where the wrongful conduct occurred governs, unless a contrary rule would "advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Id.* at 331 (quoting *Neumeier*).

12

These rules require that the law of Israel govern the question of whether defendants have capacity to be sued or immunity because of their form of organization.

For plaintiffs domiciled in Israel, the law of Israel governs under the first and second *Neumeier* rules. Under the first *Neumeier* rule, if the plaintiff and the defendant share a domicile, the loss-allocation rules of that domicile govern. *Edwards*, 17 N.Y.3d at 329-30; *Schultz*, 65 N.Y.2d at 199-200. A sound argument can be made that defendants submitted to the law of Israel for purposes of determining the loss-allocation rules for tortious acts involving terrorism. The Interim Agreement—which binds defendants—imposed on both sides an obligation to "take all measures necessary in order to prevent acts of terrorism," and to "take legal measures against attacks," and also provides that Israel retains "the overriding responsibility for security for the purpose of . . . confronting the threat of terrorism." Interim Agreement (Pls. Trial Ex. 532) Arts. 13.2, 15.1. Having agreed to Israel's "overriding" responsibility to confront the threat of terrorism, defendants can hardly complain if Israel's law is applied to them with regard to the allocation of losses caused by terrorism.

Assuming, *arguendo*, that defendants are domiciled some place outside of Israel, the second *Neumeier* rule would apply. Under that rule, where the plaintiff and the defendant are from different jurisdictions, if the law where the wrongful conduct occurred permits the plaintiff to recover, then the defendant "may not interpose a conflicting law of his state as a defense" absent exceptional circumstances. *Edwards*, 17 N.Y.3d at 321. As demonstrated below, the law of Israel permits recovery from the PLO and the PA. Defendants have not offered evidence that non-New York law would immunize them nor exceptional circumstances suggesting that they must be immunized notwithstanding the law of Israel, where their wrongful conduct occurred.

13

Finally, for plaintiffs domiciled in New York (or in any other state that applies the *Martin* rule), the law of Israel also governs—under the third *Neumeier* rule.  In a split-domicile case where no party is benefited by the application of the law of its own domicile, the law of the place of the wrongful conduct normally governs unless it can be shown that application of some other law will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.  *See Edwards*, 17 N.Y.3d at 330-331; *Stichting Ter Behartiging Van De Belangen Vab Odaandeelhouder in Het Kapital Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 50-51 (2d Cir. 2005); *Antaeus Enters., Inc. v. SD-Barn Real Estate, L.L.C.*, 480 F. Supp. 2d 734, 743 (S.D.N.Y. 2007).

New York has no interest in providing the protections of the *Martin* immunity rule to a *foreign* "unincorporated association."  Even before the development of the *Neumeier* rules, New York courts rejected the "capacity" defense asserted here where the defendant was domiciled outside of New York and the tortious conduct took place in jurisdictions that did not follow the *Martin* rule.  *See Banco de Brasil, S.A. v. Calhoon*, 50 Misc. 2d 512, 515-16 (Sup. Ct. N.Y. County 1966) (rejecting labor union's defense of lack of capacity to be sued, because plaintiff was proceeding under Texas law, the complaint was addressed to a cause of action occurring in Texas, and the law of Texas authorized suits against labor unions); *Textile Props., Inc. v. M.J. Whittall Assocs.*, 157 Misc. 108, 109 (Sup. Ct. N.Y. County 1934) ("Plaintiff has rightfully treated defendant as if it were virtually a foreign corporation, and not an unincorporated association, which under our domestic law must be sued in the name of its president or treasurer."); *cf. In re Rathbone's Estate*, 170 Misc. 1030, 1044 (Surr. Ct. N.Y. County 1939) (capacity of unincorporated associations determined by reference to law of states of domicile).

14

Conversely, an "unincorporated association" has no reasonable expectation that it will be protected from tort liability in Israel.  Professor Shnoor explains why there is no analogous rule to *Martin* under Israeli law:

> Tort immunity in general undermines the objectives of tort law— deterring potential tortfeasors by imposing the costs of accidents on them; providing tort victims with compensation; and facilitating corrective justice.  Therefore Israeli law does not give immunity unless an important competing policy consideration requires such an immunity.  The fact that the defendant is unincorporated does not invoke any policy consideration against tort liability, and therefore it is unlikely that a rule that gives immunity from tort liability to such defendants will be adopted into Israeli law in the future.

Declaration of Boaz Shnoor (May 1, 2014) ("Shnoor Dec."), ¶ 6.

### C.    Defendants Have Capacity to Be Sued under the Law of Israel

Under the law of Israel, both the PLO and the PA have capacity to be sued.  Shnoor Dec. ¶ 7.  Indeed, under Israeli law, there is nothing analogous to the rule of *Martin v. Curran.  Id.* ¶ 6.  Thus, the PLO and the PA can be liable in tort in Israel even without evidence that their "members" ratified the conduct giving rise to liability.  *Id.*

Under Israeli law, all legal entities—including unincorporated associations and governmental bodies—have capacity to sue and to be sued.  Shnoor Dec. ¶ 7.  The definition of "person" under Israeli statutes includes "a body of people, whether incorporated or unincorporated."  Shnoor Dec. ¶ 9.

Israeli cases have held specifically that the PLO and PA have capacity to be sued.  Shnoor Dec. ¶ 8.  The logic of these cases flows from the rule, expressed by the Supreme Court of Israel, that any "legal entity" has capacity to be sued, and that even a body not explicitly granted legal capacity may still have capacity implicitly.  Shnoor Dec. ¶ 13.  As Professor

Shnoor explains (and as the case law in Israel holds), the PLO and the PA have both been recognized as "legal entities" in statutes and international agreements.  Shnoor Dec. ¶¶ 17-19, 21-25 (citing cases including C.C. (Jerusalem District Court) 2287/00 *Chaser v. PLO* (2.25.2004); C.C. 2538/00 (Jerusalem District Court) *Noritch v. PA* 2002(2) PM 776, 792-795 (2003); C.M. (Tel-Aviv District Court) 9767/08 *PA v. Peled* S. 6 (12.25.2008)).

**CONCLUSION**

The Court should grant summary judgment to the plaintiffs on the defendants' fourth affirmative defense.

Dated: New York, New York
       May 2, 2014

**ARNOLD & PORTER LLP**

By: _____
    Kent A. Yalowitz
       *KENT.YALOWITZ@APORTER.COM*
    Philip W. Horton
       *PHILIP.HORTON@APORTER.COM*
    Sara K. Pildis
       *SARA.PILDIS@APORTER.COM*
    Ken L. Hashimoto
       *KEN.HASHIMOTO@APORTER.COM*
    Carmela T. Romeo
       *CARMELA.ROMEO@APORTER.COM*
    Tal R. Machnes
       *TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York  10022
(212) 715-1000