UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

MARK I. SOKOLOW, *et al.*,

            Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

            Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

---

### SUPPLEMENTAL DECLARATION OF DR. BOAZ SHNOOR

Dr. Boaz Shnoor, of Jerusalem, Israel, declares pursuant to 28 U.S.C. § 1746 as follows:

### INTRODUCTION

1. I am a senior lecturer at the Academic Center of Law and Business in Ramat Gan, Israel and have been a faculty member since 2004. During this time I also held positions teaching law at the Faculty of Law of the Hebrew University in Jerusalem, Israel, at the College of Management (Academic Studies Division) in Rishon Letzion, Israel, and at the Shaarei Mishpat College, in Hod HaSharon, Israel. During the academic year 2010-2011, I was a visiting scholar at Cornell University's law school.

2. My teaching and research fields focus primarily on Israeli tort law and environmental law. I am author of the book Torts and Pollution (2010, Sacher Institute) (Hebrew), co-author of the book Libel Law - De Lege Lata and De Lege Ferenda and have authored numerous other academic and professional papers on Israeli tort law and other legal topics.

3. I hold LL.B, LL.M and LL.D degrees from the Hebrew University. My doctoral dissertation dealt with Israeli and comparative tort law. I am a member of the Israeli Bar and licensed to practice law in the State of Israel. A copy of my curriculum vitae, which includes all publications authored by me in the past 10 years, is attached hereto as Exhibit A.

4. I have been asked by counsel for the plaintiffs in the above-captioned matter to describe and opine upon Israeli law regarding the capacity of the Palestinian Authority (the "PA") and the Palestinian Liberation Organization (the "PLO") to be sued in tort.

## SUMMARY OF CONCLUSIONS

5. I offer the following conclusions:

   a. Israeli law does not provide substantive immunity from tort liability to unincorporated associations in circumstances described by the New York Court of Appeals in *Martin v. Curran*, 303 N.Y. 276 (1951).

   b. Under the law of Israel, every legal entity has the capacity to sue and be sued in tort without regard to the form of the entity.

   c. The PLO and the PA have the capacity to be sued under the law of Israel.

## *MARTIN V. CURRAN* AND THE LACK OF PARALEL RULE IN ISRAEL

6. I have read *Martin v. Curran*, 303 N.Y. 276, 101 N.E.2d 683 (1951), which states that New York law gives substantive immunity from tort liability to certain "unincorporated associations" unless all members agreed to an act or ratified it. My research has uncovered no analogous rule under Israeli law. Tort immunity in general undermines the objectives of tort law – deterring potential tortfeasors by imposing the costs of accidents on them; providing tort victims with compensation; and facilitating corrective justice. Therefore Israeli law does not give immunity unless an important competing policy consideration requires such an immunity.

The fact that the defendant is unincorporated does not invoke any policy consideration against tort liability, and therefore it is unlikely that a rule that gives immunity from tort liability to such defendants, will be adopted into Israeli law in the future.

### GENERAL RULES REGARDING CAPACITY UNDER ISRAELI LAW

7. Under Israeli law, every legal entity has the capacity to sue and be sued in tort. Israeli law draws no distinction on this issue between natural people, incorporated associations, unincorporated associations, or governmental bodies.

8. Section 2 of The Legal Capacity and Guardianship Law, 1962, states that "Every person has the capacity to perform legal actions, unless that capacity is taken away or limited by a statute or a court order." Filing a civil claim and being sued in a civil matter are considered to be "legal actions" within this statute Therefore, so long as the PLO and the PA are considered "persons" they have the capacity to be sued.

9. Section 1 of the Interpretation Ordinance [New Version] 1954 which defines the meaning of phrases in statutes that were enacted through 1981, states that "[a] person – Includes a corporation or an body of people, whether incorporated or unincorporated."

10. Similarly, Section 4 of the Interpretation Law, 1981, which defines the meaning of phrases in statutes that have been enacted since 1981, states that "[a]ny statute referring to a person means also an body of people, whether incorporated or unincorporated."

11. Because both the PLO and the PA are "persons" under the Interpretation Ordinance and the Interpretation Law, they have the "capacity to perform legal actions" by virtue of the Legal Capacity and Guardianship Law, and thus can be sued in tort.

12. The leading case on the subject of the capacity of legal entities is the Israeli Supreme Court case of C.A. 46/94 *Abramov v. Land Registrar* 50(2) P.D. 202 (1996). In that

case, the Supreme Court defined a legal entity as "[a] phenomenon to which the law gives the capacity for rights and liabilities." *Ibid*, at 205.

13. The Court also stated that legal capacity may be recognized either explicitly or implicitly. "The recognition is implicit if the interpretation of the whole array of statutes, according to their purpose, leads to the conclusion that the phenomenon has been recognized (implicitly) as a legal entity." *Id*.

14. If the law recognizes a phenomenon as a legal entity, the entity may sue and be sued (in the matters regarding which it has legal capacity), whether it is a governmental body, an incorporated legal entity, or an unincorporated legal entity. Thus, governmental bodies may sue and be sued in relation to the fulfillment of their governmental powers even though they are not incorporated (C.A. 324/82 *Bnei Brak Municipality v. Rotbard*, 45(4) P.D. 102, 128-130 (1991)). Similarly, a condominium house committee may sue and be sued in relation to matters in which it has legal capacity, even though it is not an incorporated association (C.A. 98/80 *The Condominium House Committee 77 Rabbi Akiva St., Lod v. Kidmat Lod,* 36(2) P. D. 21).

## THE LEGAL STATUS OF THE PALESTINIAN AUTHORITY

15. Every Israeli court that has addressed the issue has confirmed that the PA has capacity to be sued in tort. In both C.C. 2538/00 (Jerusalem district court) *Noritch v.PA* 2002(2) PM 776 (2003) and C.M. (Tel-Aviv district court) 9767/08 *PA v. Peled* S. 6 (12.25.2008), the courts ruled expressly that the PA is a legal entity that can be sued.

16. The PA's capacity a legal entity that can sue and be sued has been based on the existence of statutes and other binding legal instruments recognizing its status as a legal entity. *Peled, Noritch.* These courts have based their rulings on statutes and legal instruments that

implicitly recognize the PA as a legal entity, making the PA a legal entity with capacity to sue and be sued.

17. For example, certain agreements between Israel and the PLO, such as the Agreement on the Gaza Strip and the Jericho Area (Cairo, May 4, 1994) ("The Cairo Agreement") demonstrate that Israeli law recognizes the PA as a legal entity. Indeed, the Cairo Agreement recognizes that the PA has the power to "sue and be sued":

> a. Article III.1. of the Cairo Agreement states that: "Israel shall transfer authority as specified in this Agreement from the Israeli military government and its Civil Administration to the Palestinian Authority, hereby established, …"
>
> b. Article VI.1.c. of the Cairo Agreement states that, *inter alia*, "[s]ubject to the provisions of this Agreement, the Palestinian Authority, within its jurisdiction: … will have, *inter alia*, power to … sue and be sued and conclude contracts."

18. Similarly, Section 1 of the Implementation of the Agreement on The Preparatory Transfer of Authorities to the Palestinian Authority (Statutory amendments and Miscellaneous) Act, 1995 states that "The purpose of this Act is to implement the arrangements specified in the agreement on the preparatory transfer of authorities and responsibilities to the Palestinian Authority, signed at Erez on 8.29.1994." That law gives the PA different civil and administrative powers. Recognition by the state of Israel that the PA can exercise such authority and bear such responsibility implies that Israel recognizes that the PA is indeed a legal entity.

19. Another example of an act that recognizes the PA as a legal entity is The Implementation of the Agreement on the Gaza Strip and the Jericho Area (Economic Arrangements and Miscellaneous) (Statutory Amendments) Act, 1994. In that Act, Israel

recognizes various powers of the PA. For example, the Act makes arrangements for the transfer of tax money from Israel to the PA, and from the PA to Israel.

### THE LEGAL STATUS OF THE PALESTINIAN LIBERATION ORGANIZATION

20. As with the PA, an Israeli court decision (C.C. (Jerusalem district court) 2287/00 *Chaser v. PLO* (2.25.2004)) has directly addressed the issue of the PLO's capacity to be sued in torts, and has confirmed that it has such capacity. Moreover, in a later decision in the *Chaser* case, LCA 10179/05 *PLO v. Chaser* (10.5.10), the Israeli Supreme Court addressed a preliminary question regarding the PLO's place of residence, and raised no issue with the PLO's legal capacity to be sued.

21. The PLO's status as a legal entity may be seen from a number of agreements between Israel and the PLO. The fact that Israel entered into such agreements demonstrates that Israel views the PLO as a legal entity with capacity to bind itself in an agreement. And, the content of each of these agreements further demonstrates that Israel recognizes the PLO as a legal entity.

22. These agreements include, *inter alia*, the Cairo Agreement, mentioned above. The preamble to that agreement states:

> The Government of the State of Israel and the Palestine Liberation Organization, the representative of the Palestinian people; … recognizing their mutual legitimate and political rights; … REAFFIRMING their adherence to the mutual recognition and commitments expressed in the letters dated September 9, 1993, signed by and exchanged between the Prime Minister of Israel and the Chairman of the PLO; … Hereby agree to
> …

23. Another such agreement is The Agreement on Preparatory Transfer of Powers and Responsibilities done at Erez on August 29, 1994. The preamble to this agreement states:

> The Government of the State of Israel and the Palestine Liberation Organization, the representative of the Palestinian people; …
> REAFFIRMING their adherence to the mutual recognition and

> commitments expressed in the letters dated September 9, 1993, signed by and exchanged between the Prime Minister of Israel and the Chairman of the PLO; ... HEREBY AGREE to the following arrangements

24. Another such agreement is The Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip, done in Washington, D.C. on September 28, 1995. The preamble to this agreement is very similar to the previous two:

> The Government of the State of Israel and the Palestine Liberation Organization ,the representative of the Palestinian people; ... recognizing their mutual legitimate and political rights; ... Reaffirming their adherence to the mutual recognition and commitments expressed in the letters dated September 9, 1993, signed by and exchanged between the Prime Minister of Israel and the Chairman of the PLO; ... Hereby agree as follows ....

25. These agreements demonstrate that the state of Israel recognizes that the PLO is a legal entity. Therefore, according to Israeli law the PLO is a legal entity which may sue and be sued in tort.

26. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 30, 2014

*B. Shnoor*
Boaz Shnoor