# EXHIBIT N

[Emblem of the State of Israel]

## Tel-Aviv-Jaffa District Court

Civil File 1047-04, Estate of the Deceased, Amit Amos Mentin, *et al.* v. Bezeq Israeli Telecommunications Co. Ltd. *et al.*

Before the Hon. Judge Dalia Ganot

| | | |
|---|---|---|
| The Plaintiffs | 1. | Estate of the Deceased, Amit Amos Mentin |
| | 2. | Raines [sic] Nitza Mentin |
| | | Represented by Counsel, Adv. Anat [sic] |

v.

| | | |
|---|---|---|
| The Defendants | 1. | Bezeq Israeli Telecommunications Co. Ltd. |
| | 2. | Asher Ben Naim |
| | 3. | Yekutiel Lavi – Director of the Department for Physical Security |
| | 4. | Dror Overlander |
| | 5. | Yehuda Aryeh |
| | 6. | Lilit Security Ltd. |
| | 7. | The Palestinian Authority |
| | 8. | The Palestinian Council |
| | 9. | Harel Insurance Company Ltd. |

### Judgment

1. I have before me a Statement of Claim that was filed by the Estate of the Deceased, Amos Mentin of blessed memory (hereinafter: the "**Deceased**") and by Ines Nitza Mentin – the mother and the heiress of the Deceased (hereinafter: the "**Mother**") against Bezeq Israeli Telecommunications Co. Ltd., against Asher Ben Naim, against Yekutiel Lavi, against Dror Overlander, against Yehuda Aryeh, against Lilit Security Ltd., against the Palestinian Authority, against the Palestinian Council, and against Harel Insurance Company Ltd.

**The facts relevant to the matter**

2. On June 26, 2036 [sic], Amit Amos Mentin was murdered, when, in the course of his work as a Bezeq technician in the town of Baqa al-Gharbiyya, he was shot by a terrorist.

    The Deceased was murdered in the course of a terrorist attack, which was carried out by a terrorist, a minor who was 15.5 years old on the date of the event. The terrorist was captured and tried, and is serving his sentence in a prison in Israel.

1 of 90

P1: 886



Case 1:04-cv-00397-GBD-RLE   Document 497-85   Filed 05/06/14   Page 3 of 5

[Emblem of the State of Israel]
**Tel-Aviv-Jaffa District Court**
Civil File 1047-04, Estate of the Deceased, Amit Amos Mentin, *et al.* v. Bezeq Israeli Telecommunications Co. Ltd. *et al.*

both the right of individuals to live in peace and their right to file legal actions if their right to live in peace is infringed. After all, if this is not the case, what is the meaning of **"coexistence"**?

In view of all that which has been set forth above, I am of the opinion that the agreements confer the right to file legal actions, with respect to the breach thereof, upon both the State and its individuals, and that, had either of the parties desired to prevent individuals of the State from having that right of action, it would have stipulated this in the agreements – and this, as set forth above, was not done.

In addition to that which has been set forth above, it should be recalled that the Plaintiffs' cause of action against the Palestinian Authority is a cause in torts, and reliance on the agreements is legitimate reliance within the framework of their attempt to prove that the Palestinian Authority is liable for compensating them for the incident which constitutes the object of the action.

As I mentioned, the Palestinian Authority defined itself, in the agreements, as a legal entity competent to file legal actions and to have legal actions filed against it. Regardless of the fact of this admission by a litigant, to the effect that the Palestinian Authority is a legal entity, we cannot ignore the fact that it is a legal entity which, by its conduct, according to the Plaintiffs' argument, caused the damage which constitutes the object of the Statement of Claim. I believe that, in the matter of liability in torts, the law requires the Palestinian Authority to be considered as equal to any legal entity against which a civil action in torts is filed. Accordingly, it should be clarified that the Plaintiffs' cause of action does not stem from the Palestinian Authority's undertakings as set forth within the framework of the agreements, but rather, from its very nature as a legal entity, which committed a tortious act, and against which, as a result of its having done so, and action for compensation of the injured parties has been filed.

41. The Plaintiff has [sic] argued that the Palestinian Authority and the Palestinian Council **"not only did not frustrate terrorism, but actually initiated, exercised and financed terrorism, in contravention of the relevant treaties"** (Section 4 of the Plaintiffs' summation). On the other hand, the Palestinian Authority and the Council have argued that they bear no liability for the terrorist's actions and that they are not in the nature of the **"principal"** of the terrorist with regard to the perpetration of the terrorist attack which constitutes the object of the Statement of Claim (page 8 of the summation by Defendants No. 7 and No. 8).

I do not accept the position of the Palestinian Authority, as I shall now clarify.

The terrorist, Shadi Muhamad Hassain Jawada, gave preliminary testimony before the Court on July 12, 2009.

In his police interrogation and in a Court session before me, the terrorist confessed that he had murdered the Deceased.

In his statement (which was taken from him in the hospital on July 2, 2003, Prosecution Exhibit No. 19), the terrorist stated that, about two and one-half months before the attack he had begun taking a **"physical training and weapons training course"** (sheet 2, lines 7-8),

Case 1:04-cv-00397-GBD-RLE   Document 497-85   Filed 05/06/14   Page 4 of 5

[Emblem of the State of Israel]
**Tel-Aviv-Jaffa District Court**
Civil File 1047-04, Estate of the Deceased, Amit Amos Mentin, *et al.* v. Bezeq Israeli Telecommunications Co. Ltd. *et al.*

and he clarified that he did this in the Palestinian Authority, in Jericho. According to his statement, the course had lasted for 50 days, and had ended about 10 days before the perpetration of the terrorist attack (*ibid.*). In his statement, he described how he had decided to kill a Jew, and how he had carried out his desires; in answer to a question, he answered that he does not belong "**to any organization**" (sheet 5, line 10).

It appears that, after the terrorist's admission that he trained in the Palestinian Authority, there can no longer be any doubt on this point. The problem, however, is that, in his testimony in Court, the terrorist argued for the first time that "**what I said to the police was not correct**" (page 11, line 29), and that, according to his testimony in Court, his training had taken place in Jenin and that "**I was given weapons training in the al-Aqsa Brigades**" (page 14, line 28). Nonetheless, he had no explanation for the change in his version precisely at this time, in total contrast to his original, unsullied version at the time of his interrogation, just after the perpetration of the murder. It accordingly seems reasonable to assume, as suggested by Counsel for the Plaintiffs, that someone in the prison instructed him to change his testimony, so as not to implicate the Palestinian Authority in this case.

In view of his change of version, the terrorist was declared to be a hostile witness (page 12), with no objection by any of the parties, and was cross-examined by the parties.

In its summation, the Palestinian Authority argued that the terrorist's statement to the police that he underwent physical training and weapons training "**in the Palestinian Authority** in Jericho" does not mean that he was given the training in the Palestinian Authority, but rather, "**within the confines**" of the Palestinian Authority in Jericho, and not on behalf of the Palestinian Authority in Jericho.

I totally and categorically reject this argument. First of all, had Counsel for the Palestinian Authority believed that the content of the terrorist's statement had been wrongly interpreted or wrongly translated, he would have been entitled to bring in an expert in linguistics, who would make the necessary clarification. His failure to do so will be held against the Palestinian Authority.

Furthermore, reading the terrorist's statement indicates that his intention was to clarify that he underwent physical and weapons training in the Palestinian Authority in Jericho, and not "**within the confines**" of the Palestinian Authority in Jericho. This can be inferred from the continuation of the statement, where the terrorist explained "**that I underwent weapons training in Jericho...**" (sheet 2, line 14). In other words: when the terrorist intended to indicate a geographic location only, he used the word "Jericho" alone, and the conclusion is that, when he claimed that he underwent physical and weapons training in the Palestinian Authority in Jericho, he meant exactly what he said – that is, that he participated in a training camp on behalf of the Palestinian Authority in Jericho.

44 of 90

P1: 929

Case 1:04-cv-00397-GBD-RLE   Document 497-85   Filed 05/06/14   Page 5 of 5

[Emblem of the State of Israel]

**Tel-Aviv-Jaffa District Court**
Civil File 1047-04, Estate of the Deceased, Amit Amos Mentin, *et al.* v. Bezeq Israeli Telecommunications Co. Ltd. *et al.*

As I mentioned, on the date of the attack, the terrorist was only 15.5 years old, and it seems that he chose to exploit that fact in order to substantiate his change of version, by surprisingly arguing, for the first time, that "**the Palestinian Authority did not allow me to undergo training, and when I went to the Jericho area to volunteer for a military location, and they didn't agree, they refused for only one reason – because of my age**" (page 14, lines 17-18).

As may be seen, there has been a development in the terrorist's version – a development which is intended to distance the Palestinian Authority from liability for the murder that he committed – given that, whereas the terrorist clarified, just a few days after the murder, that he was trained "**in the Palestinian Authority in Jericho**", in the courtroom, six years after the terrorist attack, he knew enough to say that he set out "**for the Jericho area.**" The matter speaks for itself.

The terrorist was asked why he had told the police interrogator that he had been trained in the Palestinian Authority, and now he was claiming that he had been trained in Jenin with the al-Aqsa Brigades; his laconic answer was that "**these were things which happened six, seven years ago. I don't remember what I said at all. When I perpetrated the perpetration [sic], I belonged to the al-Aqsa Brigades.**" The problem is, however, that when the terrorist was interrogated right after the event, he argued, as we may recall, that he did not belong to any organization at all, and when he was confronted with his statements, he said "**They interrogated me, and I was wounded, tired.**" But this statement is also untrue: reading the police statement indicates that, when the interrogator asked the terrorist how he felt before the beginning of the interrogation, his reply was "**Praise God, I feel good… people are very nice to me here, the doctors and the nurses are all very nice to me**" (sheet 1, lines 14, 16).

As we have seen, there can be no doubt that the terrorist's answers to the police interrogator, within the framework of Prosecution Exhibit No. 1 were actually the true answers, and that, as set forth above, the change in his version stemmed from his attempt to distance the Palestinian Authority from the incident which constitutes the object of the Statement of Claim.

In the terrorist's further testimony, it became clear that he had been fed information that somebody wanted to be brought before the Court. For example, he claimed that "**those in Jenin were not brought into the Authority. They are fighting against Israel, and the Authority is not fighting. Jenin takes people who want to carry out an action… The Authority wants security and peace, but in Jenin, everyone who can do so wants to carry out whatever action they assign to him**" (page 23, lines 6-10).

As a parenthetical note, it should be stated that the terrorist argued, in the courtroom, that he had told the police interrogator that he had been trained by the al-Aqsa Brigades. He had no explanation, however, for the fact that his statement, which bears his signature, indicates that he was trained in the Palestinian Territory. In his testimony before the Court, he attempted to justify his statements to the

45 of 90

P1: 930