# Exhibit 34

Nick Kaufman, Advocate
King George 33/3, Jerusalem 94261, Israel
Tel: +972-2-625-3357 Fax: +972-2-622-3052
Mobile: +972-544-863-077 E-mail: nick@nick-kaufman.com
Website: www.nick-kaufman.com

# EXPERT OPINION

# Rebuttal

---

<u>My Instructions</u>

I have been requested by Counsel for the Plaintiffs in the case of *Sokolow et al., v. The Palestine Liberation Organization & The Palestinian Authority* ("Sokolow") to review the expert opinion prepared by Attorney Michael Sfard and to respond to the various criticisms of my first report.

All of the information in my Expert Report dated April 10, 2013 concerning my qualifications, publications in the last ten years, testimony at trial or deposition in the last 4 years and compensation is incorporated herein by reference. My fee for testimony at deposition and the preparation preceding it  is 10,000 USD. I have not yet agreed to a fee for testimony at trial.

The Arab-Israeli conflict is of no relevance to the way that I select my clientele or render my services.  To the contrary, as an attorney in private practice, I represent clients of different nationalities, ethnicities and religions. By way of example, I have assisted Attorney Ibrahim Abu Ghosh of Jerusalem in the representation of a Gaza based construction company "El-Shahabbiyeh" which sued UNRWA by way of arbitration for damages arising out of a building contract frustrated by IDF military operations. I have also advised a Palestinian individual based in Gaza in connection with his rights to compensation for the seizure of lands by the Israeli authorities in 1948-1949. Furthermore, I am presently claiming damages from the State of Israel on behalf of the families of four Egyptian soldiers negligently killed by the IDF.

<u>Attorney Michael Sfard</u>

In his report, Attorney Sfard singles out a number of features of the Military Court procedure and GSS methodology which he feels offend basic human rights and principles of due process. Notable, however, is the fact that Attorney Sfard fails to show how any of these alleged infractions concretely impacted on the statements and/or confessions in the cases proffered by counsel for the Plaintiffs thereby rendering them unreliable. Indeed, the procedures adopted in cases which I examined conform to the standards which I observed at the military courts and, furthermore, are consistent with international norms. Despite Attorney Sfard's reliance on the statement of Carmi Gilon, I am not of the opinion that any of the individuals who offered guilty pleas in the cases which I examined confessed to something that they did not do.

In my experience, the Military Court System is reliable and provides due process to the accused it tries. Nothing contained in Attorney Sfard's report changes this view.

Attorney Sfard criticises the Israeli Military Courts for failing to provide a translation of investigative material to suspects.[1] I do not believe this to be a valid criticism where a suspect is represented by counsel who understands Hebrew as in all of the cases proffered by Counsel for the Plaintiffs. By way of contrast, the jurisprudence of the International Criminal Court does not oblige either the Office of the Prosecutor or the Court Registry to supply an accused with a translation of all investigative material into a language which he understands but, rather, into either of the working languages of the Court (French or English) thereby enabling Counsel to explain the contents of the investigative material to his client. Notwithstanding, I do agree with Attorney Sfard that the charges or the indictment should be read out to the suspect in a language which he understands. This, in my experience, is always done at the plea hearing.

More specifically, with respect to the criticism of courtroom interpretation,[2] most of the testimony heard in the cases that I examined was in Arabic which is the native tongue of the accused. Where testimony was heard in Hebrew, it was normally that of investigating officials and there is nothing to suggest that an appropriate interpretation was not afforded. None of the court interpreters that I have encountered – either in Israel or at the international criminal tribunals have had formal legal education.

With respect to Attorney Sfard's comments on the visiting rights of legal representatives,[3] Most of the counsel involved in the cases which I examined are

---

[1] Paragraph 71 of the Sfard Report.
[2] Paragraph 72 of the Sfard Report.
[3] Paragraph 73 of the Sfard Report.

resident in Israel and thus have no problems visiting their clients. As for the rule whereby a suspect is denied access to an attorney,[4] this is only applied at the very beginning of a criminal investigation for the purpose of preventing witness/evidence tampering and the ongoing commission of a crime. The rule applies, equally, under Israeli procedural law and such denial of access may be challenged by way of application to the competent court.

I do not accept Attorney Sfard's argument that there is lack of jurisprudential publicity which impacts negatively on the right to an effective defence.[5] The principal legal codices relevant to military court proceedings are freely available on the intenet. Furthermore, selected judgments of the military courts, or at least references thereto, may be found on certain NGO websites.

I make no comment on Attorney Sfard's statistics concerning the number of acquittals in 2006.[6] I do not find these statistics to be relevant to the discrete cases which will be under consideration by the Court in the United States. The statistics, in any event, have nothing to do with the presumption of innocence. All accused in military court system are presumed innocent until proved otherwise and any doubt is resolved to their advantage. While it is true that some of the trials examined took a number years to conclude, there is no rule obliging trials to be completed within a specified time period and should it be found that a delay is attributable to the Prosecution, then the military court is entitled, upon periodic review of an accused's detention, to order release.

Attorney Sfard further criticizes the Israeli Military Courts for employing non-lawyer judges.[7] Most, if not all, of the judges sitting in the cases proffered by Counsel for the Plaintiffs have a legal education, two of them previously served as department heads in the Israeli Ministry of Justice – State Attorney's Office (Eli Ben-Tuvim and Renato Yarak) and some of them are Israeli District Court Judges (including, Tehiya Shapira, Miriam Sokolow, Ilan Schiff and Menahem Finkelstein).

I do not find any of the "procedural or evidentiary features" singled out by Attorney Sfard for special attention to be so odd that they impact on due process. In all of the cases submitted by counsel for the Plaintiffs, a professional military judge trained in criminal law presided over the tribunal. The fact that the Israeli Military Courts do not conduct trials by jury does not mean that the procedure is less fair than any other legal system in the world which does not follow Anglo-Saxon jury tradition – including the international criminal tribunals. The corroborative weight given to a defendant's choice to remain silent at trial is adopted in Israeli civil jurisdictions and

---

[4] Paragraph 74 of the Sfard Report.
[5] Paragraph 75 of the Sfard Report.
[6] Paragraph 76 of the Sfard Report.
[7] Paragraph 77 of the Sfard Report.

is not peculiar to the Israeli Military Court.  The rules governing the admission of out-of-court statements,  correctly identified by Attorney Sfard, are, also, equally applied in the courts of Israel.

My response to Attorney Sfard's point that the case files examined are incomplete is as follows: I was asked to render an opinion as to whether or not the defendants in these cases received due process. In order to reach my opinion I reviewed the case files as they are maintained in the Military Court registry and made my conclusions based thereupon.  Investigative material is typically not maintained in the Military Court case files.  Attorney Sfard does not bluntly allege professional negligence on the part of any of the counsel actively involved in the cases examined but rather states that there were "*significant limitations on the ability of the lawyers to provide adequate representation*".[8]  Indeed, Attorney Sfard cannot, in my opinion, appropriately allege professional negligence or willful denial of the right to cross-examine witnesses,[9] without piercing the veil of client-attorney privilege and knowing the nature of advice given and instructions received. Moreover, notwithstanding the right of appeal, few of the defendants here appealed their verdicts and none of the defendants ever raised a claim of ineffective assistance of counsel against the attorneys who represented them.

Attorney Sfard makes a specific criticism concerning an alleged practice adopted by the Military Prosecution not to disclose GSS material. In my experience as a former prosecutor handling security cases at the relevant time period, GSS materials were always disclosed to counsel for an accused in so far as they comprised investigative material and were not subject to an immunity certificate (which in itself could be challenged). Investigative material is very broadly defined under Israeli law and the law applied in the military courts. Jurisprudence requires the law enforcement authorities to carry out an impartial investigation and, thereafter, to disclose anything which is of relevance to the charges and which may assist counsel in conducting his client's defence.

Attorney Sfard points out a perceived "failure to investigate allegations of torture in custody" in the cases of Nasser Shawish, Ibarahim Hamed,  Kahira Sa'adi and Sana'a Shchada.[10] As mentioned in my first report, Nasser Shawish refused to be represented at trial (contrary to the Court's advice) and, thereafter, waived the right to cross-examine a witness who had incriminated him even though the witness had claimed that his statement was the result of torture. Furthermore, Both Kahira Sa'adi and Sana'a Shchada admitted guilt in the context of plea bargains without raising the issue of their alleged humiliation as a mitigating factor at sentencing. It is hard to

---

[8] Paragraph 95(b) of the Sfard Report.
[9]  Paragraphs 95(c) and 96 of the Sfard Report.
[10]  Paragraphs 97-102 of the Sfard Report.

understand, therefore, why the failure to explore allegations of "torture" in these specific cases evidence a lack of due process. In the case of Ibrahim Hamed, at pages 43, 44 and 45 of its judgment, the Military Court <u>did not</u>, in fact, "fail to investigate allegations of torture or coercion" applied to two incriminating witnesses (Abdallah Bargouti and Mohammed Arman) concluding that even if such allegations were true, they did not impact on the accused's guilt. The Court's reasoning was founded, principally, on the fact that both incriminating witnesses were interviewed independently of each other, on separate dates, yet gave mutually corroborating versions of events.

On a more general note, I should like to add that Israeli law and the law applied in the Occupied Territories prohibits torture. The GSS obeys the law and all allegations of torture employed by GSS agents are investigated by an ombudsman in the Israeli Ministry of Justice. There is only one exception to the prohibition of torture and this is highly regulated albeit under terms of extreme confidentiality. This is the so-called "ticking time-bomb" exception in intelligence gathering exercises. This exception is not relevant to any of the cases which I examined.

Notwithstanding the aforementioned, were there instances of torture, then it is reasonable to assume that competent defence counsel would have raised the issue at trial. Moreover, the converse can also be said to be true: where the issue of torture was not raised – it is safe to assume that it did not take place.

****

This opinion consisting of 5 pages is true to the best of my knowledge and belief and I make it knowing that, if it is tendered in evidence, I shall be liable to prosecution if I have willfully stated in it anything which I know to be false or do not believe to be true.

_____     September 16, 2013     _____

Signature                           Date                          Place

5