# Exhibit 40



Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com

May 6, 2013

VIA FEDERAL EXPRESS
Hon. Ronald L. Ellis
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Sokolow v. Palestine Liberation Organization et al.* — 04-CV-397(GBD) (RLE)

Dear Judge Ellis:

On behalf of Defendants the Palestinian Authority and the Palestine Liberation Organization (collectively, "Defendants"), I am writing to request an informal conference with the Court pursuant to Local Civil Rule 37.2 and your Individual Practice 2.A concerning whether the Court should strike the reports of three of Plaintiffs' liability experts — Itamar Marcus, Nick Kaufman and Israel Shrenzel — and preclude them from presenting testimony in this matter. As explained in more detail below, these experts have relied upon thousands of pages of documents that Defendants sought in their August 2011 Requests for the Production of Documents and Things, but which Plaintiffs did not produce during fact discovery. In effect, Plaintiffs have attempted to sandbag Defendants with these documents, which their experts claim demonstrate Defendants' liability for all seven attacks at issue in this case, many months after the close of fact discovery. Given the obvious prejudice to the Defendants — and in light of the repeated warnings from the Court that should this *very situation* arise all such documents and all testimony based upon them would be inadmissible at trial, see March 20, 2012 Hearing Transcript at 62-63, the appropriate remedy is to strike the reports of these experts and bar their testimony.

On August 25, 2011, Defendants requested from Plaintiffs all documents concerning: (1) each of the seven attacks at issue in this case; (2) Defendants' purported "involvement in or support for" each such attack; (3) each of the individuals named in Plaintiffs' complaint as having a role in any of the attacks; (4) all "JOHN DOE defendants"; (5) "any investigations by Israeli police, security, military or other governmental or law enforcement authorities" regarding these attacks; and (6) "any confessions, prosecutions and/or convictions of individuals in connection with" each attack.[1]

During fact discovery, the Court repeatedly warned Plaintiffs that documents that were not produced during fact discovery would not be admissible at trial, and that if their experts relied on any documents that were not produced, the testimony of those experts would not be allowed. *See* Mar. 20, 2012 Tr. at 62 ("I don't want an expert coming in here and saying, okay, I looked at document 747 and the defendant says, I've never seen 747. Okay. *If you have an expert who relied on a document you*

---

[1] Exhibit A at 5-7; Exhibit B at 5-7; Exhibit C at 4-6; Exhibit D at 5-7; Exhibit E at 4-6; Exhibit F at 4-6; Exhibit G at 4-6.

Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900 • Washington, D.C. 20005-5701 • 202-626-5800 • 202-626-5801 FAX • millerchevalier.com

1332425.2



*didn't produce to the defendants, that expert's testimony is not going to be allowed.*") (emphasis added); *see also id.* at 62-63 ("I don't want any last-minute documents being produced by your client . . . I would expect them to be produced already. To the extent that they haven't, then you can expect that presumptively you don't get to have your expert opine on what those documents mean.").[2] Defendants now ask the Court to stand by and enforce its admonitions to the Plaintiffs.

On March 25, 2013, Plaintiffs produced Marcus's report which opines that the PA was responsible for every single act of terrorism committed during the "Palestinian terror campaign" known "among the Palestinians as the 'Al-Aqsa Intifada.'" Exhibit H at 14.[3] Marcus's report contains 66 exhibits on which his opinions are based, all but 4 of which are in a foreign language. Plaintiffs' counsel noted in her transmittal email that, although some of Marcus's exhibits had been produced to defense counsel in another case on February 14, 2013, other exhibits were "new" and had, to that point, not been produced. *See* Exhibit I. Indeed, only two of Marcus's 66 exhibits were produced in their entirety prior to the December 21, 2012 fact discovery cut-off in this matter, and those two exhibits had been produced by the Defendants, not Plaintiffs. *See* Exhibit J.[4] Accordingly, Marcus should not be allowed to "opine on what those documents mean." *See* Mar. 20, 2012 Tr. at 62-63.

On April 10, 2013, Plaintiffs provided to Defendants the reports of Kaufman and Shrenzel. Exhibits K & L. Kaufman's report contains 148 exhibits consisting of 3,390 substantive pages of documents, *see* Exhibit M,[5] pertaining to 21 individuals whom Plaintiffs allege were responsible for 5 of the 7 attacks at issue in this case. *See* Exhibit N. The materials appear to be primarily Israeli police and/or court files – all of which are responsive to Defendants' August 2011 discovery requests and almost all of which are in Hebrew.[6] Kaufman's report states that these materials were "placed at [his] disposal" and "made available to [him]" for his review. *See* Exhibit K at 7. Yet, despite placing these reports at Kaufman's disposal, Plaintiffs produced to Defendants only 508 (or 15%) of the 3,390 pages relied upon by Kaufman prior to prior to the December 21, 2012 fact discovery deadline. Exhibit M. After the close of fact discovery, but before Plaintiffs provided Kaufman's report to Defendants, Plaintiffs produced an additional 377 (or 11%) of the 3,390 pages relied upon by Kaufman. *Id.* Thus, appended to Kaufman's report, as an "integral part" thereof, Exhibit K at 7, are 2,505 pages of

---

[2] *See also, e.g., id.* at 63 ("I want to repeat. Presumptively if you haven't produced it you don't get to produce it. If you think that you can overcome the presumption, give it shot."); July 10, 2012 Tr. at 29-30 ("[I]f I have to do an order at the end of this to make it clear, any responsive documents not produced during discovery will be inadmissible at trial."); *id.* at 31-32 ("[T]he purpose of discovery is that there be no surprises. And that to the extent that individuals . . . [are] asked to produce documents . . . they are required to do those and answer them fully. To the extent that that's not done, then those documents not produced will not be allowed to be at trial.").

[3] *See also id.* at 64 ("The Palestinian Authority bears overall responsibility for the violence and killings of the intifada in general *and every particular act of killing in particular*.") (emphasis added).

[4] Exhibit 1 to Marcus's report is a collection of 63 separate video clips. According to Plaintiffs' transmittal email, at least 14 of these videos are "new." In fact, 43 of the 63 clips were not produced prior to December 21, 2012. Copies of all the Exhibits to Marcus's and Kaufman's reports are contained in the enclosed disc.

[5] While there are actually 4,272 Bates-stamped pages of materials appended to Kaufman's report as exhibits, 882 of those pages are, for whatever reason, blank. Subtracting 882 from 4,272 leaves 3,390 substantive pages.

[6] From our review it appears that all but 26 substantive pages of the 148 exhibits – 3,364 pages – are in a foreign language. Our belief that these foreign language materials are law enforcement and court files is based in significant part upon the fact that Kaufman relied upon these materials as the bases for his opinions that the individuals received due process.



Hon. Ronald L. Ellis
May 6, 2013
Page 3

materials – approximately 74% of the total 3,390 pages upon which Kaufman relied – that are responsive to Defendants' August 2011 discovery requests, but which Defendants never received before Kaufman's report (whether before or after the December 2012 fact discovery deadline). *See id.* Accordingly, because Kaufman clearly "relied on a document [Plaintiffs] didn't produce to the defendants, that expert's testimony [should not] be allowed." Mar. 20, 2012 Tr. at 62.

Shrenzel's report indicates that he considered over 4,500 pages of materials "Produced by Plaintiffs." Exhibit L at 2. The documents he considered bear Bates numbers starting with "P", *id.*, but those Bates ranges were not produced until March 25 and April 11, 2013. Defendants have repeatedly asked Plaintiffs' counsel to provide the dates on which these materials were allegedly produced during the discovery period, but Plaintiffs' counsel has refused to do so. *See* Exhibit O at 1. Accordingly, in light of Plaintiffs' production of "last-minute documents," Plaintiffs should not "get to have [their] expert" Shrenzel "opine on what those documents mean." Mar. 20, 2012 Tr. at 62-63.[7]

The Court should therefore strike the reports of Marcus, Kaufman and Shrenzel and preclude them from providing testimony in this matter pursuant to Rule 37(b)(2)(A)(ii). The Court has made it clear that that "[i]f [Plaintiffs] have an expert who relied on a document [they] didn't produce to the defendants, that expert's testimony is not going to be allowed." Mar. 20, 2012 Tr. at 62. Plaintiffs have disregarded that admonition, and chosen to produce thousands of pages of documents long after the close of fact discovery. Plaintiffs should not now be allowed to offer either those documents or testimony from their experts regarding "what those documents mean" in support of their claims that Defendants are liable in this case. The Court should not condone Plaintiffs' attempt to make an end-run around the rules of discovery and the Court's own prior rulings, and it should enter an order precluding the testimony of Marcus, Kaufman and Shrenzel as it previously indicated that it would.

We are willing to address any questions or concerns the Court may have regarding the foregoing at any time convenient for the Court.

Sincerely,

Brian A. Hill

Enclosures

cc:   Robert J. Tolchin, Esq. (without disc)
      David I. Schoen, Esq. (without disc)

---

[7] Ronni Shaked also relied upon this same set of over 4,500 pages of materials that were not produced to Defendants until March and April of this year, but earlier today Plaintiffs withdrew Shaked's report, so any issues regarding that report are now moot. Exhibit P. Obviously, to the extent that Plaintiffs' arguments concerning the timing, location and expenses of expert depositions were premised on Defendants' agreement to depose Shaked in Jerusalem, those arguments are also moot.

Miller & Chevalier Chartered

1332425.2

| Tab #/ Individual | Pages Produced (A) | Blank Pages Bates Labeled (B) | Substantive Pages Produced (A)-(B) | Substantive Pages Produced Before 12/21/2012 | Substantive Pages Produced Before 4/9/2013 | Substantive Pages Produced for First Time with Report | | % Produced Before 12/21/2012 | % Produced Before 4/9/2013 |
|---|---|---|---|---|---|---|---|---|---|
| 1/ Munzar Mohammad Noor | 184 | 2 | 182 | 8 | 52 | 122 | | 4% | 29% |
| 2/ Abdel Karim Ratheb Younis Aweis | 102 | 51 | 51 | 28 | 0 | 23 | | 55% | 0% |
| 3/ Nasser Jamal Mussa Shawish | 402 | 202 | 200 | 54 | 36 | 110 | | 27% | 18% |
| 4/ Kahura Sa'id Ali Sa'adi | 177 | 69 | 108 | 5 | 35 | 68 | | 5% | 32% |
| 5/ Sanah Mohamed Shahedeh | 230 | 0 | 230 | 45 | 13 | 172 | | 20% | 6% |
| 6/ Abdullah Barghouti | 250 | 0 | 250 | 87 | 27 | 136 | | 35% | 11% |
| 7/ Ibrahim Hamed | 429 | 10 | 419 | 0 | 0 | 419 | | 0% | 0% |
| 8/ Ahmed Barghouti | 206 | 0 | 206 | 54 | 34 | 118 | | 26% | 17% |
| 9/ Mohammed Mousleh | 103 | 0 | 103 | 0 | 18 | 85 | | 0% | 17% |
| 10/ Mohamed Sami Ibrahim Abdullah | 43 | 0 | 43 | 28 | 0 | 15 | | 65% | 0% |
| 11/ Fares Ghanem | 92 | 0 | 92 | 19 | 14 | 59 | | 21% | 15% |
| 12/ Majed Al-Masti | 296 | 148 | 148 | 19 | 0 | 129 | | 13% | 0% |

| Tab #/ Individual | Pages Produced (A) | Blank Pages Bates Labeled (B) | Substantive Pages Produced (A)-(B) | Substantive Pages Produced Before 12/21/2012 | Substantive Pages Produced Before 4/9/2013 | Substantive Pages Produced for First Time with Report | % Produced Before 12/21/2012 | % Produced Before 4/9/2013 |
|---|---|---|---|---|---|---|---|---|
| 13/ Ali Mohammed Hamed Abu Haleil | 70 | 0 | 70 | 14 | 2 | 54 | 20% | 3% |
| 14/ Abdal-Rahman Maqdad | 205 | 53 | 152 | 60 | 0 | 92 | 39% | 0% |
| 15/ Hilmi Abdal Karim Mohamed Hamaash | 252 | 0 | 252 | 8 | 16 | 228 | 3% | 6% |
| 16/ Ahmed Salah | 232 | 116 | 116 | 7 | 22 | 87 | 6% | 19% |
| 17/ Mohammed Issa Ma'ali | 79 | 0 | 79 | 45 | 0 | 34 | 57% | 0% |
| 18/ Ahmed Mohamed Ahmed Sa'ad | 588 | 230 | 358 | 27 | 42 | 289 | 8% | 12% |
| 19/ Ibrahim Abdel Hai | 127 | 1 | 126 | 0 | 19 | 107 | 0% | 15% |
| 20/ Bashar Barghouti | 124 | 0 | 124 | 0 | 23 | 101 | 0% | 19% |
| 21/ Izzadin Hamamra | 81 | 0 | 81 | 0 | 24 | 57 | 0% | 30% |
| TOTALS | 4272 | 882 | 3390 | 508 | 377 | 2505 | 15% | 11% |