UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

SIMSBURY AVON PRESERVATION             :
SOCIETY, L.L.C., ET AL.                :
                                       :
            Plaintiffs,                :
                                       :          CIVIL ACTION
      - v. -                           :          NO. 3:04CV803 (JBA)
                                       :
METACON GUN CLUB, INC.                 :          SEPTEMBER 18, 2006
                                       :
            Defendant.                 :
_____:


### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE


Pursuant to Rule 56 (a)(1) of the Local Rules of Federal Civil Procedure, Defendant, Metacon Gun Club, Inc., submits the following statement of material facts as to which there is no genuine issue to be tried.


1.      Metacon is a private shooting club that has operated an outdoor rifle range (the "Range") at 106 Nod Road, Simsbury (the "Site") since the 1960s, and which provides firearm training facilities for its approximately 650 members and four local police departments. (Ex. 11, G. Lenk Aff., ¶¶ 2, 8.)

2.      Metacon's range is located on an approximately 137 acre site of pristine woods, meadows, wetlands, and mountainside, that is situated on a sparsely developed flood plain in the Farmington River valley of Simsbury, Connecticut. (Ex. 16, Photos of Site location and surroundings ("Photos."))

3.      The Metacon site is bounded immediately to the north by the Connecticut State Police pistol and rifle ranges (the "State Police Range,") to the west by Nod Road, the Farmington

River and forested public land, to the south by a single residence (not involved in this litigation) and

golf course maintenance garage and golf course, and to the east by a 650' to almost 700' cliff that

runs along the entire ½ mile long eastern property boundary. (Ex. 11, G. Lenk Aff., ¶ 10); (Ex. 16,

Photos.)

4.      Access to the Site is restricted by a fence and warning signs around the perimeter

of the approximately 137 acre property, a 650' high- ½ mile long cliff along the eastern boundary

of the property, a chain link fence and card key access system for the Range itself, 'No

Trespassing/Private' signs posted at the entrance and internal rules that restrict access to the

Metacon site to members and invited guests. (Ex. 11, G. Lenk Aff., ¶ 11.)

5.      As of 2001, the United States Environmental Protection Agency ("US EPA")

published a detailed manual that provides extensive guidance and suggested best management

practices for managing lead from fallen ammunition and ammunition fragments at outdoor shooting

ranges. (Ex. 1, US EPA's Best Management Practices for Lead at Outdoor Shooting Ranges ("US

EPA's Shooting Range Guidance."))

6.      US EPA's Shooting Range Guidance recommends that shooting ranges adopt

environmental stewardship plans for managing lead to minimize any potential risk to human health

and the environment. (Ex. 1, US EPA's Shooting Range Guidance, ch. 1,  I-1, I-2.)

7.      Metacon has an Environmental Stewardship Plan for managing lead at the Site,

which includes the periodic collection and recycling of lead among other best management

practices. (Ex. 2, Environmental Stewardship Plan, 4,5,7.)

8.      Metacon operates its Range in accordance with its Environmental Stewardship Plan.

(Ex. 4, M. Palmer Test., 15-16); (Ex. 11, G. Lenk Aff., ¶ 13.)

9.      Metacon's Environmental Stewardship Plan is consistent with and follows the

recommendations for managing lead set forth by US EPA in its Shooting Range Guidance and soil

conditions at Metacon are similar to those anticipated by US EPA's Shooting Range Guidance.

2

(Ex. 1, US EPA's Shooting Range Guidance, I-3 to I-4); (Ex. 3, J. Hankins Test., 36-37); (Ex. 11, G. Lenk Aff., ¶ 14.)

10.    Metacon's Environmental Stewardship Plan provides for the periodic collection of lead from shooting, the periodic mining of the berm for lead, the periodic measurement of pH levels in soils at the Range and appropriate pH adjustments through lime application (to prevent lead dissolving and entering water), and the application of fertilizer to soil (to enhance the binding of lead to soils and prevent lead from entering water) at the Site among other practices. (Ex. 2, Environmental Stewardship Plan, 4, 5.)

11.    Groundwater sampling at the Site in 2004, which was conducted at the request of the Connecticut Department of Environmental Protection ("CT DEP"), shows that there is no lead from Metacon in  groundwater supplies at the Site.  (Ex. 7, Report from Leggette, Brashears & Graham, Inc Re: Groundwater and Surface Water Testing for Lead of 4/8/04 ("LBG Report,") at 1.)

12.    Surface water sampling at the Site in 2004, which was conducted at the request of CT DEP, confirms that there is no lead from Metacon in surface water at the Site, with the exception of lead detected in a single sample at an extremely low level that is within allowable state thresholds.  (Ex. 7, LBG Report, at 1 - 3.)

13.    The CT DEP has determined that lead from Metacon's shooting is not polluting water resources at the Site. (Ex. 6, Letter from Comm'r Rocque to Att'y Gen. Blumenthal of 4/23/04, at 2.)

14.    The CT  DEP uses the US EPA's Shooting Range Guidance for guiding outdoor shooting ranges in Connecticut with respect to appropriate methods of managing on-site lead. (Ex. 3, Hankins Test., 32); (Ex. 6, Letter from Comm'r Rocque to Att'y Gen. Blumenthal of 4/23/04, at 1.)

15.    Metacon's approximately forty years of operations at the Site have not caused any

lead to land in any area off-Site or to migrate to any off-Site natural resource or other location. (Ex. 12, N. Schindler Aff. ¶ 5); (Ex. 11, G. Lenk Aff., ¶ 19); (Ex. 22, G. March Dep., 37, 57, 62, 66-68); (Ex. 23, G. Silpe Dep., 27-32); (Ex. 24, R. Tedeschi Dep., 71-73, 96-98, 113, 144-46); (Ex. 25, D. Tedeschi Dep., 18-19.)

16.     There is no objective reason to believe that lead from Metacon ever would, or could, pollute groundwater supplies at the Site or at any off-site location under longstanding site conditions and existing lead management practices. (Ex. 12, N. Schindler Aff. ¶ **6**); (Ex. 11, G. Lenk Aff., ¶ 19); (Ex. 22, G. March Dep., 37); (Ex. 23, G. Silpe Dep., 27); (Ex. 24, R. Tedeschi Dep., 87-89, 94-97, 119-20.)

17.     Lead from Metacon's site is confined to the Site. (Ex. 11, G. Lenk Aff., ¶ 19.)

18.     Metacon's range rules prohibit trap and skeet shooting and other shooting directed at aerial targets at the Site. (Ex. 11, G. Lenk Aff., ¶ 20.)

19.      All shooting at Metacon's range is directed toward a berm that is designed to stop bullets and over a flat, grassy, mowed  area in front of the berm. (Ex. 11, G. Lenk Aff., ¶ 21.)

20.     No shooting at the Metacon range is directed into or over water.  (Ex. 11, G. Lenk Aff., ¶ 22.)

21.     No evidence has been adduced showing that bullets from shooting at the Site land in any water. (Ex. 11, G. Lenk Aff. ¶ 24.)

22.     Metacon's range rules prohibit use of the Range when rainfall has caused  standing water to accumulate on the Range. (Ex. 11, G. Lenk Aff., ¶ 25.)

23.     Standing water that accumulates on the Range after heavy rainfalls dissipates through absorption into the ground surface of the Range and evaporates. (Ex. 11, G. Lenk Aff., ¶ 26.)

24.     No visible runoff of rainwater from the Range to other areas occurs at the Site. (Ex. 11, G. Lenk Aff., ¶ 27.)

25.     Metacon does not collect or channel rainwater that falls on its grass-covered Range and there is no visible flow of rainwater off of the Range during or after heavy rain events. (Ex. 11, G. Lenk Aff., ¶¶ 26, 28, 30, 32.)

26.     Rainwater on the Range is not collected or channeled into ditches, culverts, pipes, or other conveyance structures and it does not flow from the Range to a water body. (Ex. 11, G. Lenk Aff., ¶¶ 28, 30, 32, 33.)

27.     Site-wide, heavy rainfall events can cause standing water to accumulate on many areas of the Site, including the Range. ((Ex. 11, G. Lenk Aff., ¶ 31.)

28.     Site-wide, accumulated rainfall dissipates by being absorbed by the Site's ground surface and through evaporation, but not by flowing to any navigable water or to any other off-site location. (Ex. 11, G. Lenk Aff., ¶¶ 32, 33.)

29.     Water resources in select wetland areas of the Site do not flow normally, or after heavy rain events, to navigable waters or to any water connected to navigable waters. (Ex. 11, G. Lenk Aff., ¶¶ 30, 32, 33.)

30.     Metacon's Environmental Stewardship Plan does not allow lead to be abandoned in place at the Site. (Ex. 11, G. Lenk Aff., ¶ 35.)

31.     Metacon has not abandoned lead from shooting at the Site, but instead manages it in accordance with its Environmental Stewardship Plan which requires the periodic recovery and removal of lead from shooting. (Ex. 27, R. Ronstrom Aff., ¶¶ 3, 4, 5 & 6); (Ex. 11, G. Lenk Aff., ¶ 36.)

32.     US EPA has stated its position that lead at shooting ranges is only a "pollutant" under the Clean Water Act when lead is left in water and that shot and target residue are "pollutants" when they constitute a form of "solid waste". (Ex. 1, US EPA's Shooting Range Guidance, I-9, I-10.)

33.     US EPA has stated its position in recent correspondence that lead at shooting

5

ranges is not a "solid waste" under RCRA's open dumping or substantial and imminent endangerment analyses when lead is periodically collected and recovered for recycling under management practices of the type outlined in US EPA's Shooting Range Guidance. (Ex. 10, E-mail from E. Guster, III to N. Schindler of 01/27/06, at 1); (Ex. 1, US EPA's Shooting Range Guidance, I-8.)

34. No evidence has been adduced that Metacon's firing range is a wetland, let alone a federal wetland, or that waters from the Site flow to a navigable water, or that water that might flow at the Site actually carries lead. (Ex. 11, G. Lenk Aff., ¶¶ 29, 30, 32, 33, 37.)

35. Despite approximately forty years of shooting activities at Metacon, and Plaintiffs extensive investigations of Metacon's activities, Plaintiffs cannot point to any evidence demonstrating that lead from the Site has impacted any property other than the Site or that lead from the Site is likely to threaten or endanger human health or the environment in the general area of the Site in the future. (Ex. 12, N. Schindler Aff. ¶¶ 7, 8, 9); (Ex. 11, G. Lenk Aff., ¶¶ 18, 19, 39); (Ex. 22, G. March Dep., 36-37, 57, 61-62, 66-68); (Ex. 23, G. Silpe Dep., 27-32); (Ex. 24, R. Tedeschi Dep., 71-73, 89-98, 113, 144-46); (Ex. 25, D. Tedeschi Dep., 18-19.)

36. On the other hand, Defendant has provided undisputed evidence, which has gone unchallenged by any evidence from Plaintiffs, that lead from Metacon's Site *does not* threaten groundwater or other water resources and that wildlife are thriving on Metacon's property. (Ex. 3, J. Hankins Test. 38-41); (Ex. 12, N. Schindler Aff. ¶ 9.)

37. Given the number of years that the Club has been in operation, and its compliance with US EPA best management practices for shooting ranges, it is not objectively reasonable to expect environmental conditions at and in the area of the Site to create new or greater risks to the environment over additional years of substantially similar activities. (Ex. 3, J. Hankins Test. 20-32); (Ex. 11, G. Lenk Aff., ¶¶ 18, 19, 39.)

38. A 1989 wetland permit application cannot be solely relied upon to establish the

federal wetland boundary on Metacon's Range. (Ex. 30, J. Shamas Aff., ¶ 4.)

39.     The U.S. Army Corp federal wetland delineation criteria in 1989 was different from the U.S. Army Corps federal wetland delineation criteria applicable today. (Ex. 30, J. Shamas Aff., ¶ 5.)

40.     Even if a 1989 federal wetland delineation had been performed in accordance with today's delineation criteria and guidance, the 1989 delineation would not be sufficient, on its own, to establish the existence of wetlands at the Site. (Ex. 30, J. Shamas Aff., ¶ 6.)

41.     No professional soil scientist would base a current federal wetlands delineation solely on a 1989 federal wetland delineation. (Ex. 30, J. Shamas Aff., ¶ 7.)

42.     It is necessary to perform a site-specific examination to verify a federal wetland delineation so as to be able to make a determination that specific areas at Metacon's site constitute federally-regulated wetlands under current U.S. Army Corps criteria.  The reasons for this include: vegetative communities and hydrology can change over time due to natural events and other human activities; and it is necessary to verify the data points and transect locations required by the U.S. Army Corps under current federal wetlands delineation criteria.  (Ex. 30, J. Shamas Aff., ¶ 8.)

43.     During normal weather and rain events, there is no surface water connection by which rainwaters, flood waters, or wetland waters on the Site flow directly from the Site to the Farmington River, and the Site is separated from the Farmington River by a high bank and a raised road bed (Nod Road). (Ex. 31, M. Palmer Aff., ¶ 10.)

44.     There is no evidence of any water or indications of the recent or historical presence of water on the eastern side of the culvert to the South of the Site (i.e. the side of the culvert nearest to the Farmington River).  (Ex. 31, M. Palmer Aff., ¶ 11.)

45.     It is impossible to discern from Talcott Mountain State Park and Cobtail Way whether a continuous, indirect surface water connection exists between wetland waters on

Metacon's Site and the Farmington River due to the cover of trees and dense vegetation. (Ex. 31, M. Palmer Aff., ¶ 12.)

46.     The only way for the Plaintiffs to determine whether there is a continuous, indirect surface water connection from the Site to the Farmington River, without gaining formal site access from the various site owners, would be to trespass behind two active shooting ranges (Metacon's and the State Police's), and onto the adjacent water company property. (Ex. 31, M. Palmer Aff., ¶ 13.)

47.     No work performed by Plaintiffs during their site visits was performed to establish the presence of federal wetlands on the Metacon range, to establish that bullets fired at the range land in any water at the Site, or to establish any continuous surface water connection between wetland waters on the Site and any temporary or permanent waters on neighboring properties. (Ex. 31, M. Palmer Aff., ¶ 14.)

48.     Plaintiffs have not requested permission to access the Site for the purposes identified in paragraph 47, above, nor have Plaintiffs walked the Site during permitted site visits in areas of the Site that it would be necessary for them to evaluate for these purposes. (Ex. 31, M. Palmer Aff., ¶ 15.)

49.     The only federal wetlands determination on the Site was one performed on behalf of the Club in 1989 in connection with obtaining a U.S. Army Corps permit to increase the size of Metacon's shooting berm. (Ex. 31, M. Palmer Aff., ¶ 16.)

50.     Plaintiffs have been granted access to the Site on several occasions, and Plaintiffs have not requested to delineate federal wetlands or to search for the possible presence of a continuous surface water connection between wetlands on the Site and any waters located in off-Site areas. (Ex. 31, M. Palmer Aff., ¶ 17.)

51.     Over the years, conditions at the Site and on the Range have changed because of natural erosion and movement of berm materials, shooting, mowing and other activities

8

related to the continuous use of the Range, a 100 year flood event that moved soils at the Site, and the construction of a parking lot and firing line at the Site.  (Ex. 31, M. Palmer Aff., ¶ 18.)

52.      All of the changes noted at the Site in paragraph 18, above, pre-date the discovery period in Plaintiffs' action against Metacon. (Ex. 31, M. Palmer Aff., ¶ 19.)

53.      Metacon's members do not and cannot, under Metacon's rules of operation, shoot into wetland waters located behind the Range's berm due to the physical presence of the berm and the Metacon's rules on the direction of fire.   (Ex. 31, M. Palmer Aff., ¶ 20.)

Defendant

METACON GUN CLUB, INC.

By          /s/ _____

MARTHA A. DEAN, ESQ.
  Federal Bar # CT - 15647
Law Offices of Martha A. Dean
15 Ensign Drive
Avon, Connecticut 06001
Tel.: (860) 676-0033
Fax: (860) 676-1112
mdean@mdeanlaw.com

Attorney for Defendant

CERTIFICATION


This is to certify that a copy of the foregoing was mailed, first class, postage prepaid on this the 18th day of September 2006, to all counsel of record:


T.J. Morelli-Wolfe, Esq.
Law Office of T.J. Morelli-Wolfe, P.C.
P.O. Box 413
Gales Ferry, CT 06335




_____/s/_____
Martha A. Dean, Fed. Bar No. ct-15647