UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

MARK SOKOLOW, *et al.*,            )
                                   )
    Plaintiffs,                    )   Docket No.
                                   )   04-cv-397 (GBD) (RLE)
    v.                             )
                                   )
THE PALESTINE LIBERATION ORGANIZATION, )
    *et al.*,                      )
                                   )
    Defendants.                    )
                                   )
---

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO CERTIFY *DAIMLER* ISSUE FOR INTERLOCUTORY APPEAL

Miller & Chevalier Chartered
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800

*Counsel for Defendants the Palestinian Authority and the PLO*

May 15, 2014

1428556.1

In Plaintiffs' opposition to Defendants' Motion to Certify the *Daimler* Issue for Interlocutory Appeal, Plaintiffs made four arguments, to which Defendants the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") respond as follows:

I. **The Court's Interlocutory Order Presents a Controlling Question of Law.**

To be eligible for interlocutory appeal, an order must involve a "controlling question of law." 28 U.S.C. § 1292(b). Plaintiffs first argue that the *Daimler* issue does not meet this test because of the "factual nature" of Defendants' argument. Opp. at 2. As support for this characterization, Plaintiffs note that Defendants offered "fact evidence" in their motion for certification and claim that Defendants should have offered this evidence in their "original motion" *i.e.*, their original Rule 12(b)(2) motion. *Id.*

As an initial matter, Defendants obviously could not cite facts relevant to *Daimler's* test for general personal jurisdiction in their original Rule 12(b)(2) motion because *Daimler* was not decided until well after the 12(b)(2) motion was fully briefed and decided. In any event, the motion to certify primarily cited the factual findings from the Court's March 30, 2011 order denying the Rule 12(b)(2) motion. *See* DE 472 at 2. The question of whether the Defendants' U.S. contacts, as found by the Court in its March 30, 2011 order, are sufficient for the exercise of personal jurisdiction under *Daimler* is not a question of fact. It is a pure question of law. The Court of Appeals does not need to undertake any fact finding or any complicated factual analysis to decide the question. For purposes of deciding the certified issue, the Court of Appeals may assume the PA's and PLO's U.S. contacts are those set forth in the March 30, 2011 order.

The question presented to the Court of Appeals is a purely legal question. *Daimler* instructs that it is only the "exceptional case" where a forum can, consistent with due process, assert general personal jurisdiction over a defendant if the forum is not the defendant's place of

incorporation or principal place of operation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014). In deciding whether the Defendants' contacts with the forum present the "exceptional case," the Supreme Court articulated a proportionality test, which requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762 n.20. The controlling question of law for the Court of Appeals is whether, in undertaking this proportionality test, the Defendants' forum-based operations must be substantial compared to their worldwide operations *including or excluding* their operations in the place where they are paradigmatically at home, here, Palestine (including the West Bank and Gaza Strip).

If their operations in Palestine must be *included* in the analysis, as Defendants argue, then it is beyond dispute that the Defendants' operations in the United States are not "so substantial and of such a nature" as to present the exceptional case for treating them as being essentially at home here. *Id.* at 761 n.19. The Court found the Defendants had only a dozen employees and one office in the United States during the relevant period. *Sokolow v. PLO*, 2011 U.S. Dist. LEXIS 36022, at *16-18 (S.D.N.Y. Mar. 30, 2011) (DE 87). Plaintiffs never argued and this Court never found that the Defendants' operations here are substantial compared to their operations in Palestine.[1] The Court instead assumed that the test is whether the Defendants' operations in the United States are substantial compared with their other operations *outside of* Palestine. In denying the *Daimler* motion, the Court interpreted *Daimler* to require Defendants to establish that they are not "more at home in the United States than they are any place outside the West Bank." Tr. 4/11/14 Hrg. at 60:19-24; *see also id.* at 60:25-61:1 ("I don't have any

---

[1] In fact, Plaintiffs themselves have alleged the expansive nature of the PA's activities in Palestine. *See* DE 491 at 3 ¶ 9 (stating "the PA provides many government services, including local policing and civil authority over traditional matters such as agriculture, banking, employment, environmental protection, unclaimed property, health, labor, zoning, postal services, social welfare, telecommunications, transportation, water, and sewage. The PA has a police force and levies taxes.").

evidence that they have a greater level of activity any place else outside of the West Bank");
*accord id.* at 57:15-58:2, 61:10-16; 62:4-6, 68:12-22; 69:17-24.

Not only is the question presented a purely legal one, but it also controls here. A question of law is controlling for purposes of 28 U.S.C. § 1292(b) "if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (citing "issues of in personam and subject matter jurisdiction" as examples if issues appropriate for interlocutory appeal). It is self-evident that reversal of this Court's decision holding that, under *Daimler*, the PA and PLO are "essentially at home" in the U.S., and therefore subject to general personal jurisdiction, would result in dismissal of the action.

In arguing that the *Daimler* issue is not suitable for interlocutory appeal, Plaintiffs allude to the Court's supposed "finding of untimeliness." Opp. at 2. Plaintiffs reference the Court's statement that "a motion based on jurisdiction was an argument to be made much earlier in this case and that argument was not made with regard to the lack of due process." Tr. 4/11/14/ at 68:8-11. This statement does not accurately reflect the procedural history in this case. Defendants made a timely Rule 12(b)(2) motion in which they argued that the exercise of personal jurisdiction does not comport with due process. *See* DE 82, Mem. at 3-19. Defendants' reliance on *Daimler* was indisputably timely because the *Daimler* motion was filed 17 days after *Daimler* was issued. *See* DE 421. To be sure, the Court did express doubt whether *Daimler* represented a significant change in the law. *See* Tr. 4/11/14 at 68:2-4; 72:1-6. But, if Defendants are correct in their interpretation of *Daimler*, then it does represent a significant change from the "continuous and systematic" test for general personal jurisdiction that the Court applied in denying Defendants' motion to dismiss.

3

Thus, the "timeliness" issue Plaintiffs identify is bound up with the question that should be certified for interlocutory appeal: what is the test for determining whether a defendant is essentially at home in a forum that is not its principal place of operation or place of incorporation, and how does it differ from the "continuous and systematic" test rejected in *Daimler*? Put simply, after *Daimler*, as a matter of law, can a foreign government be "at home" in the United States when it has one office and 12 employees here? Resolution of that question in Defendants' favor would result in dismissal of this action. Defendants' motion, therefore, satisfies the "controlling question of law" requirement of 28 U.S.C. § 1292.

## II. There Is Substantial Ground for Difference of Opinion.

Plaintiffs next assert that the *Daimler* issue raised by Defendants does not satisfy § 1292(b)'s requirement that the question be one "as to which there is substantial ground for difference of opinion." Plaintiffs give this issue cursory treatment, claiming simply that "defendants point to no cases that contradict the Court's ruling." Opp. at 2. Plaintiffs, for their part, cite no cases that support the Court's ruling. Moreover, Plaintiffs have never argued that Defendants are "at home" in the United States under *Daimler*. They did not make that argument in their opposition to Defendants' motion for reconsideration; their counsel did not make that argument at the April 11 hearing; and Plaintiffs do not make the argument in their opposition to the motion to certify. Plaintiffs have not once articulated how they interpret the *Daimler* test and how they, as the parties with the burden of proof, can satisfy it.[2] Instead, Plaintiffs continue to

---

[2] The Court appeared to erroneously shift the burden of proof on whether Plaintiffs satisfied the new *Daimler* test for personal jurisdiction to Defendants. On a motion for reconsideration, it is the movant's burden to establish a basis for revisiting a prior interlocutory order. Defendants met that burden here by identifying a change in the controlling law after the Court's March 2011 decision. Whether one focuses on *Goodyear*, or *Daimler's* clarification of *Goodyear*, there can be no doubt that the controlling law has changed. The continuous and systematic test articulated and applied in the Court's March 2011 decision is no longer good law. Once Defendants identified a change in the controlling law, it remained Plaintiffs burden to establish a basis for the exercise of personal jurisdiction.

4

rely on the "continuous and systematic" contacts test that the Supreme Court has held no longer applies. Opp. at 4.

Because *Daimler* is such a recent decision, decisions interpreting and applying it are just beginning to emerge. Courts routinely are interpreting *Daimler* as a significant departure from the "continuous and systematic test," and are dismissing for lack of personal jurisdiction cases where defendants' contacts with the forum are less significant than those at issue in *Daimler*. *See, e.g., Sonera Holding B.V. v. Cukurova Holdings A.S.*, No. 12-4280, 2014 U.S. App. Lexis 7809, at *8 (2d Cir. Apr. 25, 2014) (reversing district court's denial of defendant's motion to dismiss "[i]n light of the Supreme Court's decision in *Daimler*"); *In re Roman Catholic Diocese of Albany, New York v. Shovah*, 745 F.3d 30, 40 (2d Cir. 2014) (granting petition for writ of mandamus and instructing the district court to dismiss for lack of personal jurisdiction because "there is no way to reconcile the district court's decision with *Daimler AG*"); *Beach v. Citigroup Alternative Invs. LLC*, 2014 U.S. Dist. LEXIS 30032, at *17-18 (S.D.N.Y. Mar. 7, 2014) (Under *Daimler*, "[t]he locations where a corporation is 'at home' are, absent exceptional circumstances, limited to its principal place of business and place of incorporation."); *Krishanti v. Rajaratnam*, 2014 U.S. Dist. LEXIS 58314, at *20 (D.N.J. Apr. 28, 2014) (finding no general personal jurisdiction over defendant despite allegation of de facto office in forum because "[i]t is clear from *Daimler* that the physical presence of a corporation in a state does not necessarily render the corporation 'at home' in that state"); *Simon v. Republic of Hung.*, 2014 U.S. Dist. LEXIS 64240, at *157 (D.D.C. May 9, 2014) ("In *Daimler*, the Supreme Court found that a physical presence consisting of multiple offices and substantial sales in the selected forum was insufficient to support general jurisdiction."); *see also id.* at *158-59 (In *Daimler*, "the Court found that the substantial physical presence and level of sales in California were not the

'exceptional case' that would warrant exercise of general jurisdiction. The plaintiffs' additional asserted grounds for general jurisdiction over Defendant RCH must be examined in the context of this recent guidance from the Supreme Court."); *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 U.S. Dist. LEXIS 53757, at *17 (N.D. Cal. Apr. 17, 2014) (holding that defendant "Rockstar" was not essentially at home in California under *Daimler*, even though "the Silicon Valley technology industry is Rockstar's main target, . . . Rockstar naturally would have to come into constant contact with the forum state," and Rockstar had "started negotiations with as many as 100 potential licensees" and approached many more).

The Second Circuit's April 25 decision in *Sonera Holding* is of particular note because it applies the proportionality test Defendants advocate. The defendant there, Cukurova Holdings, is "organized under the laws of the Republic of Turkey, with operations, properties, and assets predominantly located in Turkey." 2014 U.S. App. Lexis 7809, at *12. Moreover, "New York is neither Cukurova's place of incorporation nor its primary place of business." *Id.* The plaintiff argued that the New York contacts of affiliates of Cukurova should be imputed to it, including the use of a New York office by one of the affiliates. The Second Circuit held: "Even assuming [the affiliates'] New York contacts should be imputed to Cukurova, they do not shift the company's primary place of business (or place of incorporation) away from Turkey." *Id.* The court did not inquire how defendant's operations in the forum compared with those in countries other than Turkey. Similarly, in *In re Roman Catholic Diocese*, the Second Circuit cited *Daimler*'s proportionality test and held that the Diocese could not be "at home" in Vermont." If the Diocese is "at home in Vermont, it begs the question: how many homes might it have?" 745 F.3d at 40-41. Similarly here, if the PA and PLO are at home in the United States because they have a mission and a dozen employees here and the head of the mission speaks to the media,

then how many homes would the PA and PLO have? They would be "at home" wherever they have a mission or embassy, which is not the result contemplated by *Daimler*.

The Court's interpretation of *Daimler's* proportionality test also differs from the test the United States supported in its amicus brief in *Daimler*. *See* Exh. 1 (U.S. Br.) at 12 (rejecting the exercise of general personal jurisdiction when the defendant's contacts with the forum are modest compared to its contacts with the forum where it is "paradigmatically 'at home.'"); *id.* at 17 (arguing that the "at home" inquiry "weighs against recognizing general jurisdiction where, as here, the defendant's forum contacts are dwarfed (in both qualitative and quantitative senses) by its contacts with a forum in which it is paradigmatically 'at home.'").

The Court's interpretation of the "at home" test is also in conflict with other aspects of the Supreme Court's decision in *Daimler*. First, the Court adopts a test that would often result in a defendant being at home in a forum other than the paradigm forum, which is in conflict with the Supreme Court's position that this result should occur only in an "exceptional case." For example, even if 90% of a defendant's activities are where it has its principal place of business, if the defendant has 6% of its activities in a forum state and is continuous and systematically present there, under this Court's test, the defendant would be "at home" in the forum. Excluding the activities in the paradigm home, the defendant would be more "at home" in the forum than anywhere else. Under this Court's test, it could assert general personal jurisdiction. *Daimler* would not appear to endorse that result.

This Court's approach to the proportionality test also would require significant fact development to determine a defendant's level of activities in a variety of states and/or countries, even though the Supreme Court was contemplating a simple test that would rarely require jurisdictional discovery but instead would require a *Perkins*-type situation to look beyond the

paradigm forum. *Daimler*, 134 S. Ct. at 762 n.20 ("it is hard to see why much in the way of discovery would be needed to determine where a corporation is at home"); *see also id.* at 760 (principal place of business and state of incorporation "have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable").

Defendants' position is that *Daimler* compels dismissal. Courts are interpreting *Daimler* as permitting the exercise of general personal jurisdiction in places other than the paradigmatic forum only in an exceptional case. Plaintiffs have made no effort to show why this is an exceptional case, nor have they explained how the forum activities here are more substantial than those at issue in *Daimler*. Even if the Court does not agree with Defendants' interpretation of *Daimler*, it must agree, in light of numerous other cases interpreting *Daimler*, that there is at least a substantial ground for difference of opinion with its ruling for purposes of § 1292(b).

### III. The Interlocutory Appeal May Materially Advance the Termination of the Litigation.

With respect to the third element of § 1292(b), whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation," Plaintiffs again have nothing of substance to argue. According to Plaintiffs, "Defendants' chances of success on appeal are remote, meaning that the most likely outcome of an interlocutory appeal would be wasted judicial resources." DE 485 at 3. This element of the § 1292(b) test, however, does not look to the merits of the movant's position. Arguing that Defendants' chances of success on appeal are remote is another way of arguing that there is no substantial ground for difference of opinion. As noted, Plaintiffs have never even expressly adopted the Court's interpretation of *Daimler*, let alone demonstrated why they will prevail on appeal. Rather than hinging on the parties' views about how the appeal will be ultimately resolved, the "advance the ultimate termination" inquiry under § 1292(b) looks to the nature of the issue certified. Where, as here,

the issue is case dispositive, this element of § 1292(b) is easily satisfied. Plaintiffs' suggestion that judicial resources and the parties' time and money will be wasted on an appeal with a remote chance of success ignores the role the Court of Appeals plays in deciding whether to accept an issue for interlocutory appeal. If the Court of Appeals decides to take the appeal, it will have necessarily rejected Plaintiffs' position that Defendants' chance of success is "remote."

## IV. The Foreign Policy and International Comity Concerns Presented by This Case Are An Added Reason to Certify the Personal Jurisdiction Issue for Interlocutory Appeal.

In their motion to certify, Defendants noted the risk of interference with foreign policy associated with trying the Palestinian Authority in Manhattan for its alleged role in shootings and bombings which took place during the 2000-2004 Israeli-Palestinian conflict. Plaintiffs' claims have no jurisdictional connection to the United States. The sole basis for the Court's exercise of jurisdiction is that Defendants allegedly operated a U.S. mission in Washington, D.C. and engaged in protected political speech here. Moreover, Plaintiffs seek to have a New York jury sit in judgment of the employment and social welfare policies of the foreign government and statements allegedly made by representatives of the foreign government, where that jury, removed 10 years and 7 time zones from the operative facts, and divided from the Defendants by language, religious and cultural barriers, has no context in which to assess the evidence. Plaintiffs' response is to cite a 1987 Congressional finding that the PLO is a terrorist organization and reference the *Klinghoffer* case of similar vintage. Opp. at 5. The question, however, is not what members of Congress thought about the PLO over two decades ago, before the PA was even created.[3] The question is the impact on foreign policy and international comity of trying the Palestinian Authority (and PLO) in 2014.

---

[3] The U.S. State Department has never designated the PLO or the PA as terrorist organizations.

9

1428556.1

Finally, Plaintiffs' extended discussion of *Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012), also misses the mark. Plaintiffs claim that *Abelesz* demonstrates the untimeliness of Defendants' *Daimler* motion. But defendants in that case were Hungarian banks with no U.S. presence other than occasional travel to U.S. by bank personnel. *Id.* at 656. The case did not, therefore, present the question presented in this case and addressed for the first time in *Daimler*: whether a defendant who maintains an office in the forum is "at home" there. Plaintiffs do not elaborate on their claim that *Abelesz* supports the Court's assertion of general personal jurisdiction. In fact *Abelesz* correctly treats *Perkins v. Benguet Consol. Mining Co.* as the textbook case for finding general personal jurisdiction other than in the principal place of business or place of incorporation. *See* Opp. at 4. In that case, as previously briefed, the mining company made the forum (Ohio) its temporary principal place of business during World War II when it was unable to operate in its usual home (the Philippines). The facts in this case do not come close to the "exceptional case" scenario presented by *Perkins*.

## CONCLUSION

The issue of whether *Daimler*'s "at home" test allows the assertion of general personal jurisdiction over the PA and PLO based on the U.S. activities set forth in the Court's March 30, 2011 Memorandum Opinion is a controlling question of law as to which there is a substantial ground for difference of opinion. Moreover, an immediate appeal from the order may materially advance the litigation in a case that otherwise will proceed to a lengthy trial against a foreign government, with risks of interference with U.S. foreign policy. In addition, because of the frequency with which personal jurisdiction issues occur, other courts in the jurisdiction will benefit from the Court of Appeals' interpretation of the *Daimler* proportionality test. Defendants respectfully request that their motion to certify be granted.

1428556.1

May 15, 2014                Respectfully Submitted,

                                   /s/ Laura G. Ferguson
                                   Laura G. Ferguson
                                   Mark J. Rochon
                                   Brian A. Hill
                                   MILLER & CHEVALIER CHARTERED
                                   655 15th Street, NW, Suite 900
                                   Washington D.C. 20005-6701
                                   (202) 626-5800 [tel]
                                   (202) 626-5801 [fax]
                                   lferguson@milchev.com [email]

                                   *Counsel for Defendants the Palestinian Authority and the*
                                   *Palestine Liberation Organization*

1428556.1