# Exhibit 1

No. 11-965

# In the Supreme Court of the United States

DAIMLERCHRYSLER AG, PETITIONER

*v.*

BARBARA BAUMAN, ET AL.

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PETITIONER**

DONALD B. VERRILLI, JR.
  *Solicitor General
    Counsel of Record*
STUART F. DELERY
  *Acting Assistant Attorney
    General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
BENJAMIN J. HORWICH
  *Assistant to the Solicitor
    General*
MICHAEL S. RAAB
LINDSEY POWELL
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

12

essentially at home in the forum State," 131 S. Ct. at 2851. The Ninth Circuit's approach effectively endorses general jurisdiction whenever an out-of-state corporation does any substantial business in the State, and then extends that test through a nontraditional concept of "agency" to attribute a subsidiary's business to its foreign parent. Substantial reason exists to doubt that merely doing business in a forum makes a corporation "at home" there. Here, for example, MBUSA's contacts with California—the distribution, marketing, and sale in California of 2.4% of petitioner's production—are modest relative to petitioner's contacts with Germany, a forum in which petitioner is paradigmatically "at home." Although general jurisdiction is not measured by mechanical quantitative tests, that fact alone should give this Court pause at the result below.

    The certiorari petition focuses more specifically on whether MBUSA's California contacts should be attributed to petitioner at all. On that issue, the Court should reject the Ninth Circuit's approach. The Due Process Clause does not, as the Ninth Circuit seemed to assume, supply fixed rules that permit or forbid the attribution of contacts from one entity to another. Rather, such rules are the province of positive law that molds the legal expectations of juridical persons and those with whom they interact. Of central relevance here, the principle of separate corporate personality pervades our legal system, but so too do traditional understandings on which substantive alter ego liability is imposed on a parent corporation, and on which a principal is held vicariously liable for its agent's actions. Those understandings, in turn, are appropriate bases on which to attribute contacts of a subsidiary to its parent for jurisdictional purposes. By contrast, the Ninth Cir-

17

ations, but implying that if such operations were ongoing, the result might have been different).

Here, MBUSA's contacts with California, even if properly attributed to petitioner, would be modest relative to petitioner's contacts with the forum in which petitioner is most obviously "at home" and subject to general jurisdiction—Germany. Cf. European Community Council Reg. 1215/2012 Art. 4.1 ("[P]ersons domiciled in a [European Union] Member State shall, whatever their nationality, be sued in the courts of that Member State."); Zivilprozessordnung [ZPO] [Code of Civil Procedure] Dec. 5, 2005, Bundesgesetzblatt [BGBl] 3202, as amended, § 17, ¶ 1, sentences 1-2 ("The general venue of * * * corporate bodies * * * is defined by their registered seat. Unless anything to the contrary is stipulated elsewhere, a legal person's registered seat shall be deemed to be the place at which it has its administrative centre."). Petitioner's headquarters are in Germany, where it manufactures and sells Mercedes-Benz vehicles, and where it presumably orchestrates its corporate operations. J.A. 60a-62a. By contrast, only 2.4% of petitioner's production is ultimately sold in California by MBUSA, Pet. App. 7a, and none is sold by petitioner, whose direct contacts with California appear minimal or nonexistent, see *id.* at 95a.

This Court has eschewed "simply mechanical or quantitative" jurisdictional tests. *International Shoe*, 326 U.S at 319. But *Goodyear*'s "at home" inquiry weighs against recognizing general jurisdiction where, as here, the defendant's forum contacts are dwarfed (in both qualitative and quantitative senses) by its contacts with a forum in which it is paradigmatically "at home." See Pet. Br. 31 n.5; *J. McIntyre*, 131 S. Ct. at 2797 (Ginsburg, J., dissenting) (recognizing that an English