**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **MARK SOKOLOW, et al.,** | ) | |
| **Plaintiffs,** | ) | **Docket No.** |
| **v.** | ) | **04-cv-397 (GBD) (RLE)** |
| **THE PALESTINE LIBERATION ORGANIZATION, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS MOTION TO OVERRULE DEFENDANTS' OBJECTIONS TO 177 TRIAL EXHIBITS**

Miller & Chevalier Chartered
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800

*Counsel for Defendants the Palestinian Authority and the PLO*

May 16, 2014

Having failed to obtain the evidence necessary to establish the admissibility of the exhibits they have designated for trial in this case, Plaintiffs now move to have broad categories of those exhibits, consisting of 177 documents, most of which were produced by Defendants during fact discovery, deemed authentic and not excludable as hearsay. In doing so, Plaintiffs failed to provide the information that is essential before this Court or Defendants may conduct the admissibility analysis under the evidentiary rules Plaintiffs invoke, whether for summary judgment or trial. In effect, Plaintiffs ask this Court to make dispositive evidentiary rulings on exhibits for which Plaintiffs have not even made a true proffer yet.

Defendants timely filed their objections to Plaintiffs trial exhibits, and specified those exhibits to which Defendants have authenticity and hearsay objections. DE 419, 456. As Plaintiffs acknowledge, Defendants did not lodge authenticity objections to most of the exhibits at issue in this motion. During the meet and confer process, Defendants told Plaintiffs precisely what information was needed in order to for defense counsel to reconsider Defendants' assertion of the authenticity and hearsay objections at issue in this motion. Plaintiffs, however, declined to disclose to Defendants, as to the proposed trial exhibits at issue, what *Plaintiffs* claim each document is, what fact(s) *Plaintiffs* claim each document evidences and, most importantly, the purpose for which *Plaintiffs* intend to offer each specific document in evidence. The absence of such information from Plaintiffs was the genesis of many of the objections Defendants have asserted to Plaintiffs' proposed trial exhibits and remains unsatisfied.

As the Court has reminded the parties repeatedly, the proponent of evidence has the burden to establish the admissibility of their trial exhibits. Plaintiffs have failed to disclose to Defendants or the Court the basis on which Plaintiffs seek to establish the admissibility of the 177 exhibits at issue in the pending motion, and the pending motion improperly and prematurely

seeks a ruling on those exhibits by broad category, without presenting the Court or Defendants with the required information on a document-by-document basis. The motion should be denied.

## BACKGROUND

On January 22, 2014, the parties filed the Joint Pretrial Order ("JPTO). Exhibit 3-1 to the JPTO is Plaintiffs' list of their proposed trial exhibits which, as to the exhibits which are the subject of the present motion, does not identify what Plaintiffs claim the exhibits are, instead referring to the exhibits simply by production number. Exhibit 1-1 to the JPTO is Plaintiffs' proposed witness list, which states Plaintiffs' intent to call "a representative designated by Defendants to testify about the creation and maintenance" of files produced by Defendants in the event of a dispute regarding the authenticity and admissibility of these documents. *See* Ex. 1-1 of Joint Pre-trial Order at 4-5 (Ex. B). On January 27, 2014, Defendants timely served objections to Plaintiffs' proposed trial exhibits, doing so on a document-by-document basis. DE 419. As to many of the exhibits that were documents that Defendants produced to Plaintiffs in discovery, Defendants did not assert an objection on authenticity grounds.[1]

During a March 4, 2014 hearing, Plaintiffs alluded to the possibility of seeking depositions, after the close of fact discovery, to obtain authentication and foundational evidence concerning certain of their exhibits, as well as filing a motion in limine to overrule Defendants' pending objections to Plaintiffs' trial exhibits. *See* Hr'g Tr. at 43:13-21 (March 4, 2014) (Ex. C). The Court rejected that idea:

> COURT: This is what I want. Even before you file any motions in limine with regard to the admissibility of evidence, to the extent that you believe that it would be appropriate, both sides, you believe it would be appropriate for the other side

[1] Plaintiffs have sought leave to supplement Exhibit 3-1 to the JPTO. DE 441. On March 25, 2014, the Court set May 2, 2014 as the deadline for Defendants to respond to Plaintiffs' request for leave to supplement. DE 450. Defendants timely filed objections to Plaintiffs' proposed supplemental exhibit list and their response to plaintiffs request to supplement. DE 456, 484. This issue remains pending.

> to stipulate to authenticity, admissibility, part or all of the foundation for admissibility, you should seek that, you should identify it and request it from the other side, in writing, by letter, and they should respond to that within ten days, calendar days, as to whether or not they're going to agree to that. If they're not going to agree to it, then you'll know what you need to fight about with other additional efforts that you have to take to be able to get the appropriate witness to lay the proper foundation.
>
> MR. YALOWITZ: Thank you, your Honor.
>
> COURT: To the extent that there is the rule that examines the reliability of the evidence beyond just the particular rules with regard to foundation, I'll consider it if it is appropriate, but at this point I'm not going to represent that I'm going to relieve either party of their obligations to demonstrate that any evidence that they wish to offer is in fact what it purports to be, by testimony, certification, and/or other indicia of reliability, so that we can address those issues as you raised them, that they lack the proper authority, a waste of time, or to spend the time establishing full foundation when there's no real genuine dispute that the item is what it purports to be. See if we can address that.

*Id.* at 43:24-44:24.

On March 21, Plaintiffs sent a letter to Defendants seeking a stipulation from Defendants that 168 of Plaintiffs' proposed trial exhibits "are both authentic and are not inadmissible as hearsay." *See* Letter from Kent A. Yalowitz to Brian A. Hill (March 21, 2014) (Ex. D). Plaintiffs presented various legal arguments regarding authenticity, hearsay and foundation, but did not include any factual evidence to support those legal arguments. *Id.* On March 31, Defendants timely responded to Plaintiffs' March 21 letter. *See* Letter from Brian A. Hill to Kent A. Yalowitz (March 31, 2014) (Ex. E). On the issue of authenticity, Defendants reiterated that they "do not dispute that [Defendants' counsel] disclosed to Plaintiffs accurate copies of the actual documents in one of [their] clients' custody." *Id.* Indeed, it was for that reason that Defendants had not objected to the authenticity of the majority of the documents at issue. However, Defendants declined to stipulate to the authenticity of those document to which they had lodged authenticity objections because Plaintiffs had not disclosed what Plaintiffs were

claiming the documents at issue were, and many of the documents at issue appeared on their face to have been created by third parties. Similarly, Defendants declined to stipulate regarding the alleged non-hearsay nature of the exhibits at issue because Plaintiffs had not provided the factual basis for meeting the hearsay exceptions and foundational rules Plaintiffs cited. *Id.* Following their receipt of Defendants' March 21 letter, Plaintiffs never supplemented their request for a stipulation with the information that Defendants said was lacking. Instead, Plaintiffs filed the present Motion to Overrule, which does not provide a document-by-document evidentiary proffer, continues to refer to documents simply by production number, and seeks a broad, category-based ruling on authenticity and hearsay issues.

At a hearing on April 11, 2014 hearing, the Court once again rejected Plaintiffs' attempt to shortcut the evidentiary process and directed the parties to conduct meet and confer communications concerning the admissibility of trial exhibits and, in particular, to exchange lists of "what documents [they] want to use at trial and on what basis [a party] want[s] that document to be admitted." *See* Ex. A at 91:7-16 ("I want the plaintiffs to give you a list of the exhibits . . . and on what basis they intend to lay the foundation for their admissibility . . . . I want [Defendants] to respond document by document, as to whether you have an objection.") (April 11, 2014); *see also id.* at 94:8-10, 96:18-98:2, 98:15-99:4, 99:20-23.

Shortly after the April 11 hearing, and to provide for a meaningful opportunity for the parties to conduct the sort of meet and confer process the Court had directed, Defendants sent Plaintiffs an email suggesting that, in light of the Court's comments at the April 11 hearing, Plaintiffs should withdraw their Motion to Overrule without prejudice pending the parties' implementation of the process required by the Court. *See* Email from Brian A. Hill to Kent A. Yalowitz (April 15, 2014) (Ex. F). On April 16, Plaintiffs refused to withdraw the Motion to

Overrule, stated their intent to comply with the process described by the Court, indicated they would be providing a chart to Defendants regarding the 177 proposed trial exhibits and asked Defendants to identify what information from Plaintiffs was necessary to comply with the Court's directive. *See* Email from Kent A. Yalowitz to Brian A. Hill (April 16, 2014) (Ex. G).

Defendants then provided Plaintiffs a list of information that would be necessary for the Court and Defendants to address the authenticity and admissibility of the exhibits at issue. *See* Email from Brian A. Hill to Kent A. Yalowitz (April 17, 2014) (Ex. H). Taking the evidentiary rules that Plaintiffs had invoked, Defendants identified information necessary to have the dialogue the Court referenced at the April 11 hearing. *Id.* Among other things, Defendants asked Plaintiffs to identify the following as to each exhibit: (1) the statement(s) they contend are admissible; (2) the declarant of each such statement; (3) for statements alleged admissible as non-hearsay under Rule 801(d), the basis for so contending and the evidence (including any witnesses) Plaintiffs intend to present to establish such a basis; and (4) for statements alleged to come within an exception to the rule against hearsay, the witnesses and evidence Plaintiffs intend to present to establish each element of the hearsay exception on which Plaintiffs rely.

On April 23, Plaintiffs sent Defendants a letter enclosing a "list" regarding the 177 proposed trial exhibits and arguing that the issue of withdrawing the Motion to Overrule was moot. *See* Letter from Kent A. Yalowitz to Brian A. Hill (April 23, 2014) (Ex. I). Plaintiffs' April 23 list was essentially a repackaged version of their March 21 letter and did not provide the type of information described in Defendants' April 17 email. On April 28, Plaintiffs sent Defendants a revised version of Plaintiffs' April 23 list, which still did not provide the required information. *See* Letter from Kent A. Yalowitz to Brian A. Hill (April 28, 2014) (Ex. J). Defendants responded by noting the deficiencies in Plaintiffs' April 28 list and stating

Defendants' intent to respond to the pending motion, *See* Letter from Brian A. Hill to Kent A. Yalowitz (May 15, 2014) (Ex. K). Given Plaintiffs' refusal to withdraw the pending motion, the parties sought and received a revised briefing scheduling from the Court. DE 480.

## ARGUMENT

### I. PLAINTIFFS' MOTION IS PREMATURE AND IMPROPER.

On March 4, the Court explicitly declined to "relieve either party of their obligations to demonstrate that any evidence that they wish to offer is in fact what it purports to be." Hr'g Tr. 3/4/2014 at 44:17-19 (Ex. C). At that same hearing, and again at the April 11 hearing, the Court also directed the parties to engage in a meet and confer process that required a "document by document" proffer by Plaintiffs regarding their proposed trial exhibits, to which Defendants had objected on a "document by document" basis on January 27, 2014. *See* Ex. A at 91:7-16. When, in response to Plaintiffs' request, Defendants presented a detailed list of the information which the applicable authenticity and hearsay rules require, Plaintiffs still refused to provide the information necessary for the Court or Defendants to make the authenticity and hearsay determinations.

For example, Plaintiffs' April 28th list alleges that the documents at issue are authentic based upon the "face" of these documents, the fact of their production, and their designation as confidential pursuant to the Protective Order entered in this matter. *See* Ex. J at 3, 4, 6, 8, 9.[2] It does not identify any specific statements in these documents that Plaintiffs contend are non-hearsay or fall under an exception to the rule against hearsay. Likewise, it does not identify any evidence Plaintiffs would use to prove the same. Instead, Plaintiffs simply assert in this list that Defendants' hearsay objections are invalid because these documents are admissible under

[2] Only for some documents do Plaintiffs make any particularized argument that Defendants "admitted" to their authenticity. *See id*. at 3, 6.

Federal Rules of Evidence 801(d)(2), 803(6), 803(8), and 807. *Id*. at 3, 5, 6, 8, 9. Plaintiffs then summarily state, as they do in their pre-trial witness list, that if a dispute remains as to the applicability of these rules, they will "require defendant PA to produce a witness or witnesses with knowledge" of these documents "creation, maintenance, and production." *Id*.

During the fact discovery period, Plaintiffs did not conduct and obtain any discovery that would support their application to overrule Defendants' objections to the authenticity and admissibility of the documents at issue. For example, Plaintiffs did not conduct a single deposition of a PA employee during discovery in this matter. Both during and after the close of fact discovery, Plaintiffs attempted to pursue such information through Rule 30(b)(6) notices that Magistrate Judge Ellis found to be unduly broad, overly burdensome, and inappropriate for a Rule 30(b)(6) designee. *See* DE 327 at 1; DE 329-12 (2/13/2013) at 4:22-24. Having failed in this regard, Plaintiffs then asked Magistrate Judge Ellis to allow them to recast their request for a Rule 30(b)(6) designee as interrogatories. DE 329-12 (2/13/2013) at 32:12-15. Magistrate Judge Ellis ruled that, in order to make such an application, Plaintiffs would need to explain why the requested discovery was not submitted in this form in the first place and why Plaintiffs had not challenged Defendants' objections to discovery earlier in the fact discovery period. DE 327 at 2. Finally, in May 2013, Plaintiffs sought leave to serve a revised set of requests for admission in the hopes of establishing authenticity and admissibility of documents produced by Defendants. DE 329-13 at 3-5. Plaintiffs attempted to explain that their strategy of pursuing Rule 30(b)(6) depositions instead of requests for admission during discovery was based on Defendants' refusal to stipulate to the authenticity of documents. DE 327 at 2. Magistrate Judge Ellis found that Plaintiffs' strategy of using a Rule 30(b)(6) designee did not constitute good cause for modifying the Court's scheduling order to reopen discovery on the issue of admissibility and authenticity.

DE 327 at 2. And this Court has twice upheld Magistrate Judge Ellis's denial of Plaintiffs' requests for discovery in this regard. *See* DE 303; DE 447.

Plaintiffs failed deposition strategy has left them without any evidence that would be required to lay a foundation of for the admissibility of the documents at issue in their motion. Lacking such evidence, but likely hoping to use these documents in opposition to Defendants' pending Motion for Summary Judgment, Plaintiffs' strategy is to seek broad rulings on the admissibility of the exhibits without having to make the sort of detailed, document-by-document proffer which the rules require. That strategy, however, cannot and must not obviate the evidentiary analysis that the Court must conduct regarding any documents or other evidence Plaintiffs tender in an effort to create a genuine issue of material fact.

Because Plaintiffs failed to provide, through meet and confer communications or in the present motion, the information the Court must have to make the requested evidentiary determination on a document by document basis, Plaintiffs' motion is premature and improper. It should be denied on that procedural basis alone. Defendants remain willing and prepared to discuss authenticity and hearsay issues with Plaintiffs so long as Plaintiffs agree to provide the information that is required in order to make the evidentiary determinations Plaintiffs are seeking, as outlined by Defendants on April 17. If the Court were to require Plaintiffs to engage on those terms, it is possible that the parties could reach agreement on at least some evidentiary issues, but the present record necessitates that the pending motion be denied.

## II. PLAINTIFFS HAVE FAILED TO PRESENT A BASIS ON WHICH TO OVERRULE DEFENDANTS' AUTHENTICITY AND HEARSAY OBJECTIONS.

If the Court were to consider the merits of the present motion, the Court should deny the motion because Plaintiffs have not presented a proper evidentiary basis for satisfying their burden to establish the authenticity and non-hearsay nature of the exhibits.[3]

### A. Plaintiffs Have Not Provided A Basis For Overruling Defendants' Authenticity Objections.

Plaintiffs claim that Defendants refusal to stipule to the authenticity of certain documents reflects "desperation" on Defendants' part. Pls.' Mot at 10. That is simply not true.

First, in their January 27, 2014 Objections to Plaintiffs' proposed trial exhibits, Defendants did not assert authenticity objections to various documents Plaintiffs designated as trial exhibits from documents produced by Defendants in discovery. Indeed, Plaintiffs move to overrule authenticity objections to only fifty documents. *See* Pls.' Mot. at 15 n.12; *id.* at 11-12 (citing to proposed trial exhibits 233 and 317A).

Second, Defendants do not dispute that they disclosed to Plaintiffs actual and genuine copies of documents found in the files of the PA or PLO. Defendants are willing to engage in a process by which issues regarding the authenticity of the fifty exhibits at issue can be resolved. However, to date, Plaintiffs have not provided the necessary information or completed the requisite meet and confer process. Pending further discussions with Plaintiffs on these issues, Defendants maintain their objection to the authenticity of forty-six exhibits cited in Plaintiffs

---

[3] Plaintiffs are only moving on authenticity and hearsay grounds, and have not sought an evidentiary ruling from the Court on other grounds. Defendants objected to the admissibility of the exhibits at issue for lack of relevance under Rule 402, as well as other grounds set forth in their pending Objections to Plaintiffs' proposed trial exhibits listed in Exhibit 3-1 to the JPTO. *See* 419, 456. Defendants hereby preserve those objections and will address them to the Court at the appropriate time, including if Plaintiffs tender any such exhibits in opposition to Defendants' pending motion for summary judgment.

brief.[4] Wholly apart from Plaintiffs' failure to proffer in Exhibit 3-1 to the JPTO what they claim each document is, questions still exist regarding the exhibits at issue.

Several of the exhibits at issue appear on their face to have been created by foreign governments, private organizations, or private individuals.[5] Other documents were apparently combined by Plaintiffs to form a single proposed trial exhibit.[6] Without the required exhibit description from Plaintiffs or an indication of the nature and original source of the underlying documents, Defendants cannot stipulate generically that the exhibit is "authentic."

Plaintiffs' contention that "since defendants have effectively conceded that all of the documents came from their files, there is no issue regarding authenticity for third-party materials" simply does not comport with the standard for authenticity under the Federal Rules of Evidence. Pls.' Mot. at 23. Under Rule 901(a), "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The fact that a document created by a third party is found in another entity's files indicates nothing about whether that document is what the Plaintiffs claim it is, *i.e*. student records, Israeli court records, birth certificates, or Red Cross documents, Pls.' Mot. at 28. *See United States v. Fox*, 721 F.2d 32, 39 (2d Cir. 1983) (production of a third party's work product is not a "testimony as to its identity and genuineness"). Likewise, when Plaintiffs string documents together in an exhibit, it is unclear what Plaintiffs "claim" the document is such that they can meet their burden under Rule 901(a).

---

[4] Based upon Defendants review, it is clear that Plaintiffs have cured some of the defects that were the basis of Defendants authenticity objections and Defendants are no longer objecting to Plaintiffs proposed exhibits 11A, 11B, 11C, and 36E on authenticity grounds.

[5] *See, e.g*., Exs. 19, 22, 23, 24, 26, 60, 61, 63, 64, 65, 66, 67, 69, 70, 71, 72, 75, 76, 83, 84, 86, 87, 92, 94, 95, 96, 115, 117, 118, 128, 164, 893, 894.

[6] *See, e.g*., Exs 15, 36A, 36B, 36C, 36D, 38, 43, 49, 103, 110, 123

Additionally, some of the exhibits at issue were not produced by Defendants. Pls.' Mot. at 11. Defendants cannot stipulate as to the authenticity of documents that Plaintiffs located on their own, particularly when, as noted above, Plaintiffs have failed to disclose the required information. Moreover, Plaintiffs' claim that certain documents were produced in other lawsuits or were referenced in some context in answers to interrogatories (*see* Pls.' Mot. at 11-12) is not determinative of authenticity and foundational issues in this case. Plaintiffs cannot be relieved of the basic burden, imposed by the Federal Rules of Evidence, to disclose and prove what they claim the documents are and that those documents are authentic.

**B. Plaintiffs Have Not Made The Requisite Showing That These Documents Are Non-Hearsay Or Fall Under Any Exception To The Hearsay Rule.**

"The burden of establishing admissibility, of course, is with the proponent of the evidence." *See Evans v. Port Authority of NY and NJ*, 192 F. Supp. 2d 247, 262 n.121 (S.D.N.Y. 2002). Plaintiffs have not met their burden to prove that any "statement" in any of the exhibits at issue fit within any hearsay exception or exclusion, including statements of a party opponent (Rule 801(d)(2)), records of a regularly conducted activity (Rule 803(6)), public records (Rule 803(8)), and the residual hearsay exception (Rule 807).

**1. Plaintiffs have not satisfied the requirements of Rule 801(d)(2).**

Plaintiffs are improperly attempting to create shortcuts to meet their burden under this Rule because they have no actual evidence of these documents' admissibility. Plaintiffs instead rely on Defendants' productions in this matter, Defendants interrogatory answers, and Defendants confidentiality treatment of certain documents, which are an improper basis to find that these documents are non-hearsay under Rule 801(d)(2). Moreover, even if it were the case that any of the so-called evidence cited by Plaintiffs would provide a basis for admissibility of a

document under rule 801(d)(2), Plaintiffs have provided no foundation to show that the document would be admissible against both the PA or PLO. The documents at issue were produced from the files of the PA *or* PLO, not both, and there is no allegation that they contain statements of individuals representing or adopted by both entities such that they could be perceived as containing admissions against both entities.

As an initial matter, it should be noted that General Intelligence Service ("GIS") documents and Martyrs' Institute files generally repeat hearsay without assessing the veracity of that information and, thus, should not qualify as party admissions under any subpart of Rule 801(d). *See Schering Corp. v. Pfizer Inc*., 189 F.3d 218, 239 (2d Cir. 1999) ("A party admission may . . . be inadmissible when it merely repeats hearsay and thus fails to concede its underlying trustworthiness."). Indeed, courts have so held regarding the very type of intelligence files at issue in the present motion. *See Estate of Mark Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 34 (D.D.C. 2010), *rev'd on other grounds*, 651 F.3d 118 (D.C. Cir. 2011) ("Intelligence reports that contain multiple levels of hearsay are not admissible evidence."). In *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011), the Fifth Circuit held that PA GIS files constituted "classic hearsay," were not admissible under the residual hearsay exception (Federal Rule of Evidence 807), and did not meet the standard for admissibility under the public records exception. As the Fifth Circuit held: "The matters reported in the PA documents have nothing to do with the PA's own activity, but rather describe the activities and financing of Hamas. Therefore, the guarantee of trustworthiness associated with a public agency merely recording its own actions is not present. *See* Rule 803(8)(A). Moreover, the conclusions stated in the PA documents are not the kind of objective factual matters we have found to be reliable under Rule 803(8)(B) when reported as a matter of course." *Id.* at 499. In concluding that the

GIS files lacked sufficient indicia of trustworthiness, the Fifth Circuit explained that "there is nothing in the documents or the record that reveals whether the declarants had firsthand knowledge of the information reported, where or how they obtained the information, and whether there was a legal duty to report the matter," and that there is "also nothing in the documents or the record showing that the declarants in these documents were especially likely to be telling the truth." *Id.* at 500.

The material at issue here is similar to the GIS files at issue in *Mezain*. The files do not record the activities of the GIS's office, but rather record hearsay of dubious reliability and accuracy collected from, and concerning, third parties. Declaration of Majed Faraj at ¶ 15 (Ex. L). Information contained in the files comes from a variety of sources, including public sources (such as news reports), GIS agent investigative fieldwork, interrogations, and confidential sources and informers. *See id.* ¶ 8. It is similarly true that documents from the files of the Martyrs' Institute fundamentally derive from multiple levels of hearsay. *See* Declaration of Suleman Al Deek ¶ 9 (Ex. M). Because they are "classic hearsay" lacking indicia of trustworthiness, the documents from the GIS and Martyrs' Institute files are not admissible.

Plaintiffs' theories for avoiding these obvious hearsay barriers lack merit. Plaintiffs claim that, because Defendants produced these documents, the Court may make a finding that they contain "statements by Defendants" within the meaning of Rule 801(d)(2)(A), Pls' Mot. at 12; that Defendants adopted their contents to be true such that they can be admitted under Rule 801(d)(2)(B), *id*. at 14; and/or that Defendants' employees made any alleged statements in these documents within the scope of their employment or were authorized to make statements in these documents such that they are admissible under Rule 801(d)(2)(C) & (D). *Id*. at 17-18. Plaintiffs' theories should be rejected. Production of a document under Rule 34 merely shows

that a party is complying with its obligation to produce a requested item. Moore's Federal Practice - Civil § 34.02 (discussing the "[r]equirement of Rule 34 that *all responsive* documents within a party's possession, custody or control must be produced regardless of their location") (emphasis added); *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 190 (S.D.N.Y. 2013) ("Rule 34 in turn provides that a party served with a document request *must produce requested items* 'in the responding party's possession, custody or control.'") (emphasis added)). It does not mean that the producing party saw it as relevant to the case or for that fact admissible.[7] In fact, Defendants in this case objected to the document requests that led to the production of these very documents on the grounds that these requests were not calculated to lead to the production of admissible evidence.[8] There is no way that production under such an objection could be interpreted as Defendants' representation that these documents contained statements that they authorized or adopted as true.

Plaintiffs next argue that Defendants' designation of these documents as confidential under the terms of the protective order shows that they adopted their contents as under Rule 801(d)(2)(B), Pls.' Mot. at 15, and that they contain authorized statements and/or statements made by Defendants employees such that they are admissible under Rule 801(d)(2)(C) & D, *id*. at 17, 18. Plaintiffs' argument is a non-sequitur. Courts have entered protective orders to protect

---

[7] Plaintiffs also claim that *United States v. Hubbell*, 167 F.3d 552, 567-68 (D.C. Cir. 1999) stands for the proposition that producing documents pursuant to a subpoena is sufficient to show that the contents of such documents were adopted by the producing party. In fact, all this case stands for is the unremarkable proposition that when responding to a subpoena, the party believes that the documents produced are those that are described in the subpoena. *Id*. at 567-68. The PA's production of, for example, GIS files only shows that GIS files exist, not that they have adopted their contents as true.

[8] *See, e.g.*, Defendants Objections and Responses to the Sokolow Family Plaintiffs' Second Request to Produce Documents and Things at 2. ("Any document production by Defendants in response to the Requests shall not be deemed a waiver of any objection Defendants may wish to interpose at any proceeding, hearing, or trial with respect to the matters disclosed thereby or with respect to the relevancy, materiality, competency, or admissibility of the information referenced or contained in the document(s) produced.") (attached hereto as Ex. N).

confidential employee information, *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 74 (S.D.N.Y. 2010), and financial information, *Orwasher v. A. Orwasher, Inc.*, 2010 U.S. Dist. LEXIS 50036, at *4 (S.D.N.Y. May 20, 2010). The terms of the Protective Order entered by this Court protect the same type of information. DE 219 at 2. Neither the law within this Circuit nor the terms of the Protective Order entered in this case limit Defendants to only designating documents as confidential that contain information that they believe to be true or that contain statements authorized by them. Moreover, the Protective Order in this matter specifically states that a "party's compliance with the terms of this Order shall not operate as an admission that any particular document is . . . admissible in evidence at trial." DE 219 at 10.

Plaintiffs also attempt to rely on Defendants' use of certain documents in their interrogatory answers as proof that they adopted the contents of such documents as true. Reference by Defendants to documents in an interrogatory answer does not constitute an admission to admissibility. *See JIPC Mgmt. v. Incredible Pizza Co.*, 2009 U.S. Dist. LEXIS 133019, at *84 (C.D. Cal. July 14, 2009) (stating that unless it can be established that defendants adopted the reports produced pursuant to Federal Rule of Civil Procedure 33(d) "as true statements, they will not be admissible as party admissions."). Defendants never intended that their conduct would serve as an admission that the documents are admissible, and Plaintiffs cannot show otherwise. *See* 5 Weinstein's Federal Evidence § 801.31[2] (2d ed. 2013) ("The proponent of the statement has the burden of proving that the party's conduct manifested an intent to adopt the statement"). In fact, Defendants stated explicitly in their responses to discovery requests that their production of and reference to documents does not constitute a waiver of any objection to the documents' admissibility.[9]

---

[9] *See, e.g.*, Defendants' Objections and Responses to the Sokolow Family Plaintiffs' First Set of Interrogatories at 2 ("Any answer by Defendants to the Interrogatories shall not be deemed a waiver of

Finally, Plaintiffs try to use the reports of their proposed experts, Alon Eviatar and Israel Shrenzel, to prove that the exhibits at issue are admissible because they claim their "detailed description of the exhibits puts them in context and make it obvious that the employees who created them were authorized to make the statements contained therein." Pls.' Mot. at 17 (stating that these reports would provide a foundation for admissibility under Rule 801(d)(2)(c)); *id*. at 18 (stating that these reports would provide a foundation for admissibility under Rule 801(d)(2)(d)). Defendants have moved to exclude the testimony of those experts, including testimony from those experts designed to fill Plaintiffs' evidentiary gaps. *See* DE 500.

Plaintiffs do not even specify which exhibits Eviatar's and Shrenzel's reports would provide a foundation for such that they would be admissible under Rule 801(d)(2). Eviatar's "expert" report only provides information regarding four of the documents that are the subject of this motion and merely describes what he believes are the contents of these documents, *see* Ex. J to Pls.' Mot at 14 n.31-n.33 (citing Pls.' Trial Exs. 73, 893), or references them. *See id*. at 76 (citing Pls.' Trial. Exs. 94-95). Likewise, while Shrenzel cites to approximately 65 of the documents at issue in his "expert" report, nothing in his report describes the origins of these documents or the alleged statements within them such that it would provide a foundation for their admissibility. Rather, he cites to these documents in support of his own factual assertions. *See, e.g.*, Ex. I to Pls.' Mot. at 37 n.143 (citing and purporting to describe Pls.' Trial Ex. 118). In other cases, he simply asserts what these documents state or states that they are official forms of the PA. *See, e.g.*, *id*. at 50 n.218 (citing and purporting to describe Pls.' Trial Ex. 58); *id*. at 55 n.249 (purporting to describe Pls.' Trial Exs. 23-24 as "official forms" of the PA).

---

any objection Defendants may wish to interpose on any proceeding, hearing, or trial with respect to the matters disclosed thereby and with respect to the relevancy, materiality, competency, or admissibility of the information referenced or contained in the document(s) produced.") (attached hereto as Ex. O).

More importantly, Plaintiffs also offer no evidence as to why Eviatar and Shrenzel, who are former Israeli government employees, would be qualified to testify regarding who made alleged statements within these specific documents, in what capacity they made these statements, and whether or not they were authorized to make these statements within the meaning of Rule 801(d)(2)(B) & (C). Plaintiffs are hoping that by touting these individuals as supposed experts they can cover for the fact that these experts can offer no foundational evidence regarding any of the proposed 177 exhibits and that, indeed, these individuals do not even propose to offer testimony concerning most of these exhibits. It is clear that Plaintiffs cannot lay a foundation that any of these documents are admissible under any subpart of Rule 801(d)(2).

**a. Plaintiffs do not satisfy Rule 801(d)(2)(A).**

Under Rule 801(d)(2)(A), Plaintiffs must show that statements were made by an individual in a representative capacity. Plaintiffs misconstrue the types of statements that Rule 801(d)(2)(A) covers. They assert that "[d]ocuments produced by defendants in response to discovery requests are, by definition, 'statements' by the defendants." Pls.' Mot at 13. However, as entities, the PA and the PLO cannot make statements- they can only speak through their agents. *See Curns v. Wal-Mart Stores, Inc.*, 2011 U.S. App. LEXIS 19845 at *3 (2d Cir. Sep. 28, 2011) (stating that "[a]s a corporation, Wal-Mart… can only speak through its agents"). Plaintiffs have not even identified any individual that was "speaking" in a representative capacity through these documents. As a result, they have completely failed to meet their burden to show that these documents are in fact admissible under Rule 801(d)(2)(A).

Moreover, the evidence shows that many of these documents could not, in fact, represent the statements of Defendants as they contain statements of third parties. *See supra* at 11-14. Even if this Court were to accept the theory that mere production of these documents would

allow for their admission under Rule 801(d)(2)(A), it could not find that documents that clearly contain statements of third parties could be accepted as statements made by a party itself in an individual or representative capacity as set forth by Rule 801(d)(2)(A).

**b. Plaintiffs have not shown that any of the statements in these documents are covered by Rule 801(d)(2)(B).**

Plaintiffs have brought forward no viable indication that the PA adopted any of the statements in these documents. As Plaintiffs point out, "[a]doption or acquiescence may be manifested in any appropriate manner . . . . The decision in each case calls for an evaluation of probable human behavior." 1972 Advisory Committee Note to Fed. R. Evid. 801(d)(2)(B). Plaintiffs' claims in this regard are again based upon Defendants' production of documents, their confidentiality designations, and Defendants' references to documents in interrogatory responses. As discussed, this so called "evidence" does not provide a basis for showing that these documents are admissible. Moreover, the documents that Plaintiffs are trying to move into evidence contain statements of third parties and therefore constitute double hearsay. *See* Faraj Decl. ¶ 8; Al Deek Decl. ¶ 9. Plaintiffs claim that Defendants retention of documents containing such statements would show that they have adopted them as true. However, documents that "'merely repeat[] hearsay and thus fail[] to concede its underlying trustworthiness,' [are] inadmissible" under Rule 801(d)(2). *Agric. Ins. Co. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 416 (S.D.N.Y. 2002) (quoting *Schering Corp.* 189 F.3d at 239).

Plaintiffs claim the PA made payments based upon the Martyrs' Institute files at issue here, and therefore it adopted unspecified "facts" in these files as true. Pls.' Mot. at 15. Plaintiffs are not specific as to what "facts" in these files they believe the PA acted on. Indeed, the only information that is necessary for the Martyrs' Institute to make any payments is that an individual's death or injury occurred in connection with the occupation of Palestine by the State

of Israel and that their family is not receiving monetary benefits from another source. Al Deek Decl. ¶¶ 10-11. Plaintiffs offer no evidence that any specific statements, or in their words "facts," in the Martyrs' files formed the basis of any payment determination, and, thus, were acted on by Defendants.

Outside of the documents of the Martyrs' Institute, Plaintiffs also generally assert that Defendants relied on "other benefit and employment" documents to make payments. Pls.' Mot at 15. Again, Plaintiffs do not specify which document any Defendant relied on to make payments, let alone what statements within these documents were relied on to make such payments. Similarly, the Plaintiffs baldly assert that because documents that they located on their own are assuredly "authentic copies of documents created by defendants' employees, they are necessarily not hearsay under Subpart (B)." Pls.' Mot at 16. Yet in no way do Plaintiffs prove that these documents are (a) authentic or (b) created by Defendants' employees. Plaintiffs provide no bases for their admissibility under the Federal Rules of Evidence.

#### c. **Plaintiffs have not met their burden under 801(d)(2)(C) & (D) to prove that any of these documents are admissible.**

To meet their burden under Rule 801(D)(2)(C), the Plaintiffs must establish by a preponderance of the evidence that a declarant had authority to speak. Weinstein Federal Evidence 801-84.1 (2d ed. 2014); Advisory Committee Note to 1997 Amendment to Rule 801. Plaintiffs again insist that unspecified statements within the 177 documents at issue must fall under Rule 801(d)(2)(C) because these documents were produced by Defendants, treated as confidential by Defendants, and because Eviatar and Shrenzel have given "detailed descriptions" of these exhibits. Pls.' Mot at 17. As already discussed, the first two categories do not even give rise to an inference that any statements contained in these documents were "made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C).

Likewise, Eviatar and Shrenzel's "descriptions" do not provide any evidence that any supposed statements in these documents fall within the ambit of Rule 801(d)(2)(C), even assuming they are not otherwise precluded from testifying pursuant to Defendants' pending Motion in Limine.

Plaintiffs rely on the same exact evidence to lay a foundation that statements in these documents are admissible under Rule 801(d)(2)(D). Under this Rule, Plaintiffs must "lay a sufficient foundation by establishing (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Marcic v. Reinauer Transp. Cos*., 397 F.3d 120, 128-29 (2d Cir. 2005) (internal quotation marks omitted). Plaintiffs must also meet these requirements by a preponderance of the evidence. Weinstein Federal Evidence 801-86 (2d ed. 2014); Advisory Committee Note to 1997 Amendment to Rule 801.

Plaintiffs make no showing that statements contained in any of these documents were made within the scope of an agency relationship with either Defendant. In order to attempt to meet their burden in this regard, Plaintiffs again rely on the fact that most of these documents were produced by Defendants. But, production of a document does not identify a speaker in that document such that it is admissible under Rule 801(d)(2)(D). *See Greene v. V.I. Water & Power Auth*., 2014 U.S. App. LEXIS 2574, at *23 (3d Cir. Feb. 11, 2014) (stating that it is correct that a statement cannot be admitted under Rule 801(d)(2)(D) if an "unnamed declarant cannot be identified [because] there is not a sufficient evidentiary foundation to establish the existence of an agency relationship as required") (internal citations omitted). In the one case that Plaintiffs rely on to assert that mere production is enough for a document to be admissible under Rule 801(d)(2)(D), the Court was able to make a finding that statements in the documents "'were written by [defendant's] own interviewers.'" *See* Pls.' Mot at 18 (quoting *Equal Opportunity*

*Comm'n v. W. Customer Mgmt Grp., LLC*, 899 F. Supp. 2d 1241, 1250 (N.D. Fl. 2012)).[10] Plaintiffs have made no showing that they can identify *any* such speaker in *any* of these exhibits.

**2. Plaintiffs cannot lay a foundation that these documents are records of a regularly conducted activity under Rule 803(6).**

To admit a document or record under Rule 803(6), the proponent of the evidence must prove that (1) the record was made at or near the time of the event recorded by someone with knowledge; (2) the record was kept in the course of a regularly conducted activity of the business or organization; and (3) making the record was a regular practice of that activity. Fed. R. Evid. 803(6). Rule 803(6) explicitly states that its requirements must be met either through the testimony of a qualified witness or by a valid certification. Fed. R. Evid. 803(6)(D).

Plaintiffs have not produced a valid certification, and they lack a qualified witness who can lay the requisite foundation. *See United States v. Rosenstein*, 474 F.2d 705, 710 (2d Cir. 1973) ("someone who is sufficiently familiar with the business practice must testify" to admit a record under the statutory business record exception). In particular, the requirements of Rule 803(6)(D) make it clear that a party is not permitted to lay the foundation for a business record based on the four corners of the document. However, this is exactly what Plaintiffs aim to do by pointing to the documents letterhead and speculating that they "could only have been prepared by defendants' employees in the regular course of their duties." Pls.' Mot. at 19.

Plaintiffs also incorrectly contend that the mere act of production makes these documents admissible under Rule 803(6). "The fact that a party produces a document under Rule 33(d) does not mean that the document qualifies as a business record under Rule 803(6)." *JIPC*

[10] The other cases that Plaintiffs rely on either do not involve a production of documents, *see Yepez*, 2014 U.S. Dist. LEXIS 12206, at *5 or do not hold that mere production satisfies the requirements of Rule 801(d)(2)(D). *Corral v. Chicago Faucet*, No. 98-cv-5812, 2000 WL 628981, at *3 (N.D. Ill. March 9, 2000) (stating that "production is *perhaps* enough to overcome a hearsay objection" under Fed.R.Evid. 803(6) or 802(d)(2)(D) (emphasis added)).

*Management, Inc.,* 2009 U.S. Dist. LEXIS 133019 at *81. Plaintiffs cite *John Paul Mitchell Sys. v. Quality King Distribs*., Inc., 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000), in which the court did allow the admission of a document under Rule 803(6) based on the fact that it was produced by a third party's custodian of records in response to a subpoena. *Quality King* is inconsistent with the specific requirement of Rule 803(6) that there must be a witness or valid certification that testifies to the requirements of Rule 803(6). *See, e.g.*, *Parker v. Reda*, 327 F.3d 211, 215 (2d Cir. 2003) (noting that a qualified witness must testify for documents to be admissible under 803(6)). Furthermore, there is no indication in *Quality King* as to how the Court resolved the requirement of knowledge found in Rule 803(6)(A). *Federal Deposit Ins., Corp. v. Sudamerican Corp., S.A.*, 1991 U.S. Dist. LEXIS 1552, at *1 (S.D.N.Y. Feb. 11, 1991) (documents were inadmissible under Rule 803(6) where an affiant could not testify that the pertinent entries in business records were made at or near the times indicated by one with personal knowledge of their contents). Many of the exhibits from the Martyrs' Institute and GIS files contain information reported by third parties, which the PA did not verify. Faraj Decl. ¶ 8; Al Deek Decl. ¶ 9. As to each of the exhibits Plaintiffs claim are admissible under Rule 803(6), Plaintiffs do not identify how they intend to establish that the record was made at or near the time of the event by a person with knowledge.

Plaintiffs also cannot meet the most important requirement of Rule 803(6) and establish that "neither the source of information nor the method or circumstances indicate a lack of trustworthiness." *See* Fed. R. Evid. 803(6)(E). *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) ("[T]he principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." (internal citations and quotations omitted)). The

Plaintiffs have put forth no indicia of trustworthiness, and, in fact, the record shows, that the documents at issue here are completely untrustworthy as they contain unverified, double hearsay obtained from unknown individuals.

**3. Plaintiffs have not shown that these documents qualify as public records under Rule 803(8).**

Rule 803(8) permits admission of a "record or statement of a public office if (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report…; or (iii)…factual findings from a legally authorized investigation; and (B) neither the sources of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

Plaintiffs cannot establish that these documents are of a "public office." Although Rule 803(8) does not define public office, Rule 902(3) defines a "foreign public document" as "[a] document that purports to be signed or attested by a person who is authorized by a foreign country's law to do so." Fed. R. Evid. 902(3) (emphasis added). Foreign documents are therefore records of a public office only if they are the records of a foreign country. Because the Court has not recognized Palestine to be a foreign country, Plaintiffs cannot establish that the proffered documents are records of a public office.

Moreover, Plaintiffs have not even attempted to show that the documents fall under any of the three circumscribed categories of public records. Instead, they again simply assert that "since many of them pertain to PA/PLO obligations pursuant to statute" they must fall under this Rule. Pls.' Mot at 20. Documents related or relevant to a statutory obligation is not one of the categories of documents that are admissible under Rule 803(8).

### 4. Plaintiffs have not met the standard for the residual hearsay exception under Rule 807.

The residual hearsay exception should only be applied "in the rarest of cases." *United States v. DeVillio*, 983 F.2d 1185, 1190 (2d Cir. 1993). Plaintiffs have not shown how each document meets the rigorous requirements for admission under Rule 807, namely that "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; [and] (iv) its admission is consistent with the rules of evidence and advances the interests of justice." *United States v. Bryce*, 208 F.3d 346, 350-351 (2d Cir. 1999).

As already discussed, there is no indication that several of these documents are trustworthy as they simply record hearsay statements of third parties. *See also El-Mezain*, 664 F.3d at 502. They also do not prove any material fact in this litigation. *See* FRE 807(a)(2). Plaintiffs' theory that employment payments and promotions or welfare payments made after the attacks at issue took place were in order to ratify or support these actions is not confirmed by these documents. For these same reasons, these documents do not satisfy Rule 807(a)(3)'s requirement that they be more probative than any other document that can be obtained by Plaintiffs to prove these points. These documents are simply not probative of Defendants' involvement in the incidents at issue in this case. Finally, because Plaintiffs cannot meet foundational requirements with respect to these documents, there admission would not be consistent with the rules of evidence. Nor could their admission advance the interest of justice; Plaintiffs proffering of witnesses such as Eviatar and Shrenzel to discuss these documents shows that they will not put forward any knowledgeable witness to testify regarding them and will instead wildly mischaracterize their contents and purpose.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion should be denied.

May 16, 2014

Respectfully Submitted,

/s/ Brian A. Hill

Brian A. Hill
Mark J. Rochon
Laura G. Ferguson
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800 [tel]
(202) 626-5801 [fax]
bhill@milchev.com [email]

*Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*