# ARNOLD & PORTER LLP

**Kent A. Yalowitz**
Kent.Yalowitz@aporter.com

+1 212.715.1113
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

June 6, 2014

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

>    Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
>          Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

I write in reply to defendants' letter of May 2, 2014 (DE 484), concerning Exhibit 3-1 to the parties' proposed Joint Pretrial Order.

I also attach Plaintiffs' Second Amended and Supplemental Exhibit 3-1 for the Court's consideration. This list reflects amendments to provide more fulsome descriptions, as well as a statement as to the basis for admission of each exhibit per the Court's request in the conference in this case held April 11. The list has also been supplemented as described in my letter of March 21 (DE 441), and with an additional seven documents described below.

Plaintiffs respectfully request that the Court include this in the Court's Joint Pretrial Order. We understand that defendants consent to some of the amendments and supplementation, but do not consent to the inclusion of 25 of the proposed exhibits. For reasons discussed below, we respectfully ask that the Court include the entire list in the Joint Pretrial Order.

**1.    Background**

On January 22, 2014, the parties submitted for the Court's consideration a proposed Joint Pretrial Order ("Proposed JPTO"), including exhibit lists. Plaintiffs reserved the right to add documents produced on or after January 21, 2014 pursuant to Federal Rule of Civil Procedure 26(e) or order of the court. Proposed JPTO at 30.

ARNOLD & PORTER LLP

Hon. George B. Daniels
June 6, 2014
Page 2

On March 21, 2014, plaintiffs submitted an Amended and Supplemental Exhibit 3-1 for the Court's consideration. DE 441. The list included 81 additional documents, falling into three categories: (1) documents produced late by defendants; (2) documents responsive to defendants' motion for reconsideration; and (3) documents that plaintiffs located after the parties submitted the Proposed JPTO.

On April 11, 2014, the Court asked plaintiffs to prepare a list of their trial exhibits with statements of plaintiffs' basis for overcoming defendants' authenticity and admissibility objections. Tr. at 91-95 (DE 478). The enclosed list responds to this request.

On May 2, 2014, defendants wrote to the court that they had no objection to the supplementation of the list with exhibits in categories (1) and (2) of my letter of March 21 (reserving their substantive objections) but that they do object to the inclusion of exhibits in category (3) of my March 21 letter. DE 484. Defendants say that the JPTO should exclude the "category (3) documents" on the theory that they are not "relevant or admissible" and that plaintiffs have allegedly not shown "good cause" for having left them off their January 22 list.

**2.   Discussion**

The dispute centers on 25 proposed exhibits.[1] Defendants contend that plaintiffs must show "good cause" before amending their proposed exhibit list to include these 25 exhibits. Defendants cite no authority for the proposition that a party may not amend its proposed exhibit list while the Court is considering—but has not entered—a Joint Pretrial Order. We have found no such authority. In addition, questions of admissibility or exclusion (on relevance or any other basis) should be reserved for trial—they are not a reason to exclude exhibits from a Joint Pretrial Order. Indeed, the whole point of the Joint Pretrial Order process is to identify documents as to which there are and are not admissibility objections.

In any event, the documents *are* relevant, and the plaintiffs have good explanations for having left them off the original proposed list:

a.   **Exhibits 1042-1051.** These are family photographs of Janis Coulter, who died in the Hebrew University cafeteria bombing. They are relevant to show

---

[1] Copies of these 25 exhibits are included in Exhibit B (DVD) to the Declaration of Kent A. Yalowitz in Opposition to Defendants' Motion for Summary Judgment and Defendants' Motion In Limine (June 6, 2014).

**ARNOLD & PORTER** LLP

Hon. George B. Daniels
June 6, 2014
Page 3

>   the decedent's circumstances.  *See generally Parilis v. Feinstein*, 49 N.Y.2d 984, 985-86 (1980) (proof of the age, character and condition of the decedent are relevant to show "pecuniary loss"); *Perry v. Metro-N. Commuter R.R.*, 716 F. Supp. 61, 64-65 (D. Conn. 1989) (photo album of decedent may be admissible as relevant to conscious pain and suffering of decedent, lost earning capacity, and pecuniary loss).  They were left off the January 22 list because the family sent them to the undersigned after January 22.

b. **Exhibits 1054-1058.**  These are e-mails between David Gritz—who also died in the Hebrew University cafeteria bombing—and his close friend, Doug Burgess.  The emails are also relevant, under *Parilis*, *Perry*, and similar cases.  They were left off the January 22 list because the undersigned located Mr. Burgess fortuitously in January 2014, and he sent the emails after January 22.

c. **Exhibit 1052**.  This is from one of defendants' "mission" websites.  It provides evidence on a contested issue—the relationship between Fatah (the dominant political faction of the PLO) and the Al Aqsa Martyrs Brigade (a designated "Foreign Terrorist Organization," which accepted responsibility for several of the attacks at issue in this case).  Defendants should have produced it in response to plaintiffs' document requests.  It was left off the January 22 list because plaintiffs did not find it before January 22.  Defendants should not be rewarded for their failure to produce this admission.  As noted above, defendants have agreed that plaintiffs should be allowed to supplement the exhibit list to add documents that defendants produced late.  The same logic applies here; defendants can have no legitimate basis for objecting to exhibits that they failed to produce at all, even though they were required to do so.

d. **Exhibit 1053.**  This is an interview of PA General Tawfiq al-Tirawi on January 23, 2014, in which he calls for a return to the "circle of action" by "resistance" using "weapons."  Tirawi was a senior PA official at the time of the attacks and the evidence in this case directly implicates him in the attack on the Sokolow family.  His statements in favor of violence are relevant to state of mind—he urged violence then and he still is urging violence.  His statements also go to the issue of punitive damages for the non-federal claims.  The statement was left off the January 22 list because it did not exist on January 22.

**ARNOLD & PORTER** LLP

Hon. George B. Daniels
June 6, 2014
Page 4

    e.    **Exhibit 1059**. This is a broadcast on the PA's owned and controlled television station. It aired February 13, 2014. It glorifies the crimes of Abdullah Barghouti, a/k/a "the Engineer," who pled guilty to killing four of the plaintiffs in this case, plus 62 other civilians, in terrorist bombings. The show's hostess calls his crimes "heroic act[s]," and his father is quoted as saying, of the 500 civilians wounded in the attacks, "may god never heal them." The exhibit goes to ratification. Defendants should have produced it themselves, but did not. The video was left off the January 22 list because it did not exist on January 22.

    f.    **Exhibit 1111.** This is a post-arrest statement of Abdullah Barghouti, in which he admits that a PA officer gave him a "new mobile phone in the presence of Marwan Barghouti [head of AAMB] and Hasan Yousef [leader of Hamas] and I called Aiman Halawa [a Hamas co-conspirator] and told him 'that the tomatoes that he sent me to Ramallah are bad and that he should come back to take them.' Aiman Halawa understood that I wanted him to take the weapons that he had sent me and I know this because after I left the prison of the Palestinian Authority, Aiman Halawa told me that he had taken the weapons." This document was relied on in the expert report of plaintiffs' expert, Alon Eviatar (Report p. 12), but was inadvertently left off the exhibit list due to a clerical oversight by counsel. Although counsel regrets the error, the clients should not be punished because of a harmless error by their counsel, particularly in light of the very substantial logistical task of translating, apostiling, and compiling the nearly 1,000 exhibits in this case. Since defendants were notified of plaintiffs' intent to use this document months before the JPTO was filed, they will suffer no prejudice from including it now.

    g.    **Exhibits 1112 to 1117.** These are post-arrest statements of Nasser Shawish, in which Shawish admits to his involvement in the attack on members of the Bauer family. Shawish was one of a group of three individuals arrested by the PA itself a few weeks before the attack—as evidenced by a document addressed to Arafat personally informing him of the arrests and leaving the matter to his "discretion." Pls. Trial Ex. 1016 (a General Intelligence Service document that defendants produced long after Judge Ellis ordered it produced, in violation of court orders requiring it to be produced earlier). Exhibits 1112 to 1117 were found in the court records of the third arrestee's prosecution and were unknown to plaintiffs before defendants' belated disclosure of Exhibit 1016 in March of this year. The confessions contain evidence linking defendants to the attack, including evidence that Arafat himself approved a

## ARNOLD & PORTER LLP

Hon. George B. Daniels
June 6, 2014
Page 5

> payment to Shawish while he was a fugitive from justice, that Fatah leaders Marwan Barghouti and Hussein al-Sheikh paid Shawish in support of his criminal conduct, and that Shawish's PA jailers let him roam the streets freely while he was purportedly under "arrest." These were left off the list because of defendants' violations of Judge Ellis' discovery orders. Until March of this year, when defendants finally produced Ex. 1016, plaintiffs did not know of the third arrestee. Once we were aware that he was linked to Shawish, we investigated his court file and located the Shawish documents. Since defendants have agreed that documents they produced late should be added, there is no reason for them to object to producing documents whose existence was not discovered until an investigation prompted by defendants' belated production.

Respectfully,

Kent A. Yalowitz

Encl.
cc:   All ECF Counsel (with enclosure)