IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 04cv397 (GBD) (RLE) |
| THE PALESTINE LIBERATION ORGANIZATION, *et al.*, | ) |
| Defendants. | ) |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LACK OF CAPACITY DEFENSE

Plaintiffs move for summary judgment on Defendants' affirmative defense of lack of capacity. DE 489, 492. Defendants' Response to Plaintiffs' Rule 56.1 Statement is attached as Exhibit 1. The parties have cross-moved for summary judgment on the capacity defense. *See* DE 496, 497 (Defendants' Motion). For the reasons set forth in Defendant's Motion (DE 497 at 44-45) and Rule 56.1 Statement (DE 497-1 at ¶¶ 1-28) and for the reasons that follow, Plaintiffs' motion should be denied, Defendants' motion should be granted, and judgment should be entered for Defendants on all claims.

### INTRODUCTION

The core premise of Plaintiffs' motion for summary judgment – that Israel's law controls whether the PA and PLO can be sued in this Court – lacks any legal basis. Under Federal Rule of Civil Procedure 17(b)(3)'s choice of law rule, the law of the forum (here, New York) governs capacity of parties that are not individuals or corporations to be sued. New York courts routinely apply New York law on capacity when interpreting Rule 17(b)(3), not New York choice of law

1

rules. Where New York law does not specifically recognize the juridical status of a particular type of entity, that entity necessarily has no capacity to sue or be sued. New York law – whether one looks at statutory or common law – does not confer capacity to sue or be sued on unrecognized foreign governments. In fact, New York courts historically have not recognized the capacity of unrecognized foreign governments to be sued in New York courts. Because Plaintiffs agree that the PA and PLO are unrecognized foreign governments, the PA and PLO lack capacity to be sued for both federal and non-federal law claims.

## ARGUMENT

### I. Under Federal Rule of Civil Procedure 17(b)(3), the Capacity of the PA and PLO to Be Sued in Federal Court is Governed by New York Law.

Federal Rule of Civil Procedure ("Rule") 17(b) is a federal choice of law rule that sets out how capacity to sue or be sued in federal court is determined. For this purpose, it establishes three categories of parties: individuals, corporations, and "all other parties." For an individual, capacity is determined by the law of the individual's domicile. Fed. R. Civ. P. 17(b)(1). Defendants the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") are not individuals. "[F]or a corporation, capacity to be sued is determined by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). The PA and PLO are not corporations; thus their capacity to be sued is not determined by the law under which they were organized. Rule 17(b)(3), the catch-all provision, "applies to all questions of capacity not covered by the subdivison's first two paragraphs." C. A. Wright *et al.*, 6A *Federal Practice & Procedure: Civil* § 1564 (2010). It provides, "for all other parties," *i.e.*, entities that are not individuals or corporations, capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Thus, because they fall into the catch-all provision for "all

2

1430587.1

other parties," the capacity of the PA and PLO to be sued in federal court is determined by the law of New York.

Plaintiffs claim that, in applying the law of New York, the Court should apply New York's choice of law rules, and further claim that the choice of law analysis would result in Israeli law governing whether the PA or PLO can be sued in federal court in New York. *See* Mot. at 10-15.[1]  But Rule 17(b) itself is a choice of law rule and supplies the rule about which state's law of capacity will apply.  For entities that are not individuals or corporations, the law of the forum *on capacity* governs.  Fed. R. Civ. P 17(b)(3); 6A *Federal Practice & Procedure* § 1564 ("The effect of Rule 17(b)(3) is that if the organization lacks capacity to litigate in the state courts, it also will be barred from a federal forum in that state.").  Plaintiffs vaguely cite to a few cases making reference to applying the forum's "whole law," including common law (Mot. at 11), and to Rule 81(d)(1), which provides that references to "state law" in the Rules "include the state's statute's and judicial decisions." Fed. R. Civ. P. 81(d)(1).  But Defendants do not dispute that, in deciding whether the law of New York recognizes the capacity of the PA and PLO to be sued, the Court can consider both New York's statutes and judicial decisions on capacity.

Plaintiffs' attempt to have Israeli law govern is unsupportable.  Plaintiffs cannot identify a single case in which capacity to be sued under Rule 17(b)(3) was determined not by the capacity law of the forum but instead by some other forum's laws on capacity as a result of a choice of law analysis.  In fact, federal courts sitting in New York routinely apply New York law

---

[1] Plaintiffs offer an expert opinion (styled as a "Supplemental Declaration") from Dr. Boaz Shnoor, who "opine[s] upon Israeli law regarding the capacity of the [Defendants] to be sued in tort." DE 493 at ¶ 4. Shnoor's opinion that the PA and PLO can be sued under Israeli law was not disclosed as required by Rule 26(a)(2) in an expert report, and therefore cannot be the basis for a summary judgment motion. Fed. R. Civ. P. 37(c)(1). In any event, his opinion is irrelevant under Rule 17(b)(3), which provides that capacity is determined by the law of the forum for entities that are neither individuals nor corporations.

in making capacity determinations under Rule 17(b)(3) and do not undertake any choice of law analysis. *See, e.g. La Russo v. St. George's Univ. Sch of Med.*, 2014 U.S. App. LEXIS 3991, at *9-10 (2d Cir. Mar. 4, 2014) (New York law governed capacity of Grenada unincorporated association to be sued in New York for alleged malpractice that occurred in Grenada); *Prescription Containers, Inc. v. Cabiles*, 2014 U.S. Dist. LEXIS 40250, at *11-15 (E.D.N.Y. Feb. 14, 2014) (under rule 17(b)(3), New York law governed capacity of unincorporated entity to be sued); *accord Ramirez v. Chip Masters, Inc.*, 2012 U.S. Dist. LEXIS 159814, at *4 (E.D.N.Y. Nov. 7, 2012).

In fact, numerous courts have expressly rejected Plaintiffs' theory that Rule 17(b)(3) allows a forum state to reject the federal choice of law rule established in Rule 17(b) in favor of the forum state's choice of law rules. *See Masood v. Saleemi*, 309 Fed. Appx. 150, 152 (9th Cir. 2009) (Plaintiffs' "assertion that capacity cannot be determined before choice of law is contrary to Rule 17"); *CSA8-Garden Vill., LLC v. Garden Vill. Assocs. at Grayhawk, LP*, 2013 U.S. Dist. LEXIS 80513, at *13-14 (D. Ariz. June 6, 2013) (under Rule 17(b)(3), the law of forum governed capacity of Canadian trust to be sued); *Tigert v. Lord, Bissell & Brook*, 1989 U.S. Dist. LEXIS 4427, at *3 (D.D.C. Apr. 28, 1989) (Rule 17(b) "does not direct that a partnership's susceptibility to suit shall be determined in accordance with the choice of law principles of the forum state"). *See also Argentine Airlines v. Aircraft Dynamics Corp.*, 170 N.Y.S. 2d 600, 601-02 (N.Y. Sup. Ct. 1957) ("It is not the laws of Argentina but rather the laws of this State that determine the right to sue in our courts.").

In sum, under the choice of law rules provided in Rule 17(b), because the PA and PLO are not individuals or corporations, their capacity to be sued is determined by the law of the

forum (without applying the forum's choice of law rules). The question is, therefore, whether under New York law, entities such as the PA and PLO have the capacity to be sued.

## II. New York Law Does Not Recognize the Capacity of Non-Recognized Foreign Governments to Sue and Be Sued.

Capacity to be sued must be provided by state law. "When the state statute is silent on whether a state entity can sue or be sued, then that entity is not amenable to suit under Rule 17(b)(3) and dismissal is appropriate." *B.K. v. 4-H*, 877 F. Supp. 2d 804, 813 (D.S.D. 2012). In determining whether New York law recognizes the capacity of the PA and PLO to be sued, the central threshold question is: what are the PA and PLO?

Here, both parties agree that the PA and PLO perform core governmental functions on behalf of the Palestinian people. Plaintiffs repeatedly characterize Defendants as governmental organizations. *See* Mot. at 1 (describing the PA as a "non-sovereign government"); *id.* (citing approvingly the Court's characterization of Defendants as "performing core governmental functions" ); DE 200 at 15 ("Defendant PA is a municipal government"); *id.* at 16 ("the PA has the status of a governmental entity"); Hrg. Tr. 4/11/14 at 37:9-11 (statement of Plaintiffs' counsel) ("They say they're a government. I looked at the practical test of what they are. I think they're a government. I think they're a government for all purposes."). The PLO exercises a foreign affairs function, *see* Mot. at 3, whereas the PA has "executive, legislative, and judicial functions" and provides numerous other governmental services in the West Bank and Gaza, *see id.* at 4. Both parties also agree that the PA and PLO do not currently enjoy sovereign immunity in the United States. *See* Mot. at 1 (describing Defendants as "non-sovereign public bodies"). As set forth in the Expert Report of Professor John Quigley, attached as Exhibit 2, the PA is the governing authority of the State of Palestine, and the PLO is its foreign affairs arm. Exh. 2 at 1, 4. Palestine has been recognized as a State by at least 132 other States, *see id.* at 4, but has not

received formal recognition from the United States, *see id.* at 1. *See also* DE 497-1 (Defendants' Rule 56.1 Statement) at ¶¶ 5, 7, 9. In sum, the PA and PLO are (1) unincorporated; (2) foreign governmental organizations; of (3) an unrecognized foreign state.[2]

Having established the parties' agreement on what the PA and PLO are, the next question is whether New York law confers on them a capacity to be sued. The answer, clearly, is no. No New York statutory or even common law establishes the capacity of governments of non-recognized foreign states to be sued in New York courts. Where New York law does not expressly confer capacity, there is none. In *Argentine Airlines v. Aircraft Dynamics Corp.*, 170 N.Y.S.2d 600 (N.Y. Sup. Ct. 1957), the Supreme Court of New York considered whether an agency of the Ministry of Transport of the Republic of Argentina had capacity to sue in New York, where Argentine law gave the agency capacity to sue and be sued in its own name. *Id.* at 601. The court dismissed the action because the law of the forum controlled, and "it did not appear that plaintiff was either a person or a corporation and since there was thus no showing that plaintiff had capacity to sue." *Id.* Similarly, in *Royal Norwegian Navy v. David Smith Steel Co.*, 58 N.Y.S.2d 705, 706 (N.Y. Sup. Ct. 1945), the court held that because the plaintiff was "neither a person nor a corporation" but was instead "an agency of a foreign government," it had no legal capacity to sue.

Plaintiffs claim that the PA and PLO can be sued under N.Y. C.P.L.R. § 1023, which provides in its entirety: "When a public officer, body, board, commission or other public agency may sue or be sued in its official capacity, it may be designated by its official title, subject to the power of the court to require names to be added." By its plain terms, § 1023 does not establish the capacity of public bodies to be sued. It simply addresses in what name the suit is brought

---

[2] *See also* DE 497-1 (Defendants' Rule 56.1 Statement) at ¶¶ 1-28 for material facts as to which there is no genuine issue as to the PA's and PLO's status.

when capacity exists.  Other statutes must establish the capacity to sue and be sued.  *See, e.g.*, N.Y.S. C.L.S. Town § 65 (governing capacity of a New York Town to sue and be sued).  Plaintiffs cite no cases interpreting § 1023 as establishing capacity to be sued.  Certainly, there is no indication § 1023 applies in any respect to foreign governments – recognized or not.

  Unable to identify any statutory authority for the capacity of the PA or PLO to be sued under New York law, Plaintiffs cite a few cases providing that the capacity to sue and be sued can be conferred by state statute on governmental corporations.  Mot. at 7.  Plaintiffs then argue that the capacity of the PA to be sued was conferred by the Oslo Accords' Interim Agreement between the PLO and Israel.  *Id.* at 7-8.  Plaintiffs' attempt to analogize the PA and PLO to domestic governmental corporations can be readily dismissed.  The capacity of governmental corporations to sue and be sued is governed by Rule 17(b)(2), not Rule 17(b)(3).  *See* Federal Practice & Procedure § 1562; *see also Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 35-36 (D.D.C. 2013) (capacity of federal-chartered organization is determined in accordance with Rule 17(b)(2)).  Under Rule 17(b)(2), for a corporation, the capacity to sue and be sued is determined "by the law under which it was organized."  Fed. R. Civ. P. 17(b)(2).  The cases Plaintiffs cite (at p. 7) involve governmental entities incorporated by state statute and thus given corporate form.  *See, e.g.*, *Van Horn v. Kittitas Co.*, Wash., 29 Mic. 333, 333 (Sup. Ct. N.Y. County 1899) ("the defendant is, by the statutes of the state of its domicile, *a public corporation*, capable of suing and of being sued") (emphasis added); *Harman v. City of F. Lauderdale*, 134 Misc. 133, 135 (Sup. Ct. N.Y. County 1929) (the state statute creating the Port Authority "specifically provides that said Port Authority 'shall constitute *a body corporate*'") (emphasis added).

1430587.1

Neither the PA nor the PLO has corporate form, so their capacity to be sued is determined by the law of the forum, as provided in Rule 17(b)(3), not by the "law under which it was organized," as provided in Rule 17(b)(2).  Unlike governmental corporations created by act of Congress or a state legislature, neither the PA nor the PLO has been incorporated.  *See* Exh. 2 at 7.  Plaintiffs claim that an Interim Agreement between the PLO and Israel gave the PA capacity to sue and be sued.  Mot. at 4, 7.  The Interim Agreement does not control here because (1) it is an "Interim Agreement," not enabling legislation; and (2) it does not purport to give the PA corporate form.  Thus, Rule 17(b)(2) does not apply.  In any event, its reference to capacity to sue and be sued was not sufficiently particularized to control whether the PA can sue and be sued in U.S. federal courts.  *See American Nat'l Red Cross v. S. G.*, 505 U.S. 247, 255 (1992) ("These cases support the rule that a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts.").

To the extent New York common law speaks to the question of capacity of unrecognized foreign governments to be sued, it holds that they lack capacity to be sued.  In *Telkes v. Hungarian Nat'l Museum*, 38 N.Y.S.2d 419 (N.Y. App. Div. 1942), the court stated:  "Lack of recognition by the United States government, we have recently held, does not permit an individual suitor to bring a *de facto* government before the bar."  *Id.* at 422 (citing *Wulfsohn v. Russian S.FS. Republic*, 234 N.Y. 372 (N.Y. 1923)).  *See also Russian Socialist Federated Republic v. Cibrario*, 235 N.Y. 255, 257 (1923) ("In *Wulfsohn v. Russian Socialist Federated Soviet Republic*, we held that our courts would not entertain jurisdiction of an action brought without its consent against an existing foreign government, in control of the political and military

power within its own territory, whether or not such government had been recognized by the United States.").

As the court explained in *Telkes*, "as viewed by the courts of this State, the rule forbidding suit against foreign sovereign without his consent does not rest on comity, but is applied because such suits involve claims of a political nature which are not entrusted to the municipal courts." 38 N.Y.S. 2d at 423.  Moreover, "[b]ased on this reasoning that the immunity from suit is not a matter of comity, our courts hold that lack of diplomatic recognition does not affect the immunity." *Id.*  Thus, New York courts historically have not granted the capacity of foreign governments – whether recognized or unrecognized – to be sued because such suits would be inherently political and "are not entrusted to the municipal courts."  No recent cases address whether, under New York law, unrecognized foreign states can be sued in New York.  In *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 48 (2d Cir. 1991), the Court of Appeals held that, because the United States had not extended the PLO formal diplomatic recognition, it was not immune from suit as a matter of federal law.  That case is not controlling here because (1) it dealt with immunity, not capacity; (2) did not involve application of Rule 17(b)(3), which makes the law of the forum controlling; and (3) dealt with the status of the PLO in 1991, before the Oslo Accords, and, in any event, does not address the status of the Palestinian Authority, which had not yet been established.

In sum, because the PA and PLO are not individuals or corporations, their capacity to be sued is governed by the capacity law of the state of New York.  No statutory or common law of New York recognizes the capacity of an unrecognized foreign government to sue or be sued.  Accordingly, the Plaintiffs' claims – both federal and non-federal – must be dismissed for lack of capacity.

9

### III. Alternatively, If the Court Treats the PA and PLO as Unincorporated Associations for Purposes of Rule 17(b), Then Plaintiffs' Non-Federal Law Claims Must Be Dismissed.

If the Court nonetheless determines that the PA and PLO are unincorporated associations, as a few other courts have done, then the non-federal law claims – but not the federal ATA claim – must be dismissed for lack of capacity.[3]  Under Rule 17(b), "a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A).  "By contrast," for unincorporated associations, "state law controls on the question of capacity to sue or be sued where plaintiff does not assert a claim arising under federal law." *Modeste v. Local 1199, Drug, Hospital and Health Care Employees Union*, 850 F. Supp. 1156, 1164 (S.D.N.Y. 1994) (Sotomoyor, J.).  Thus, if the PA and PLO fall into Rule 17(b)(3)'s "all other parties" category but not the partnership or other unincorporated association category, then their capacity to be sued for <u>both</u> federal and state law claims is governed by the capacity law of the forum (New York).  If they are treated as unincorporated associations, then they have capacity to be sued for the federal law claim, but their capacity to be sued for the supplemental state law claims is determined by the law of the forum.

Federal law governs whether an entity is an unincorporated association for purposes of Rule 17(b), as to federal law claims.  *See In re Magnetic Audiotape Antitrust Litig.,* 2000 U.S. Dist. LEXIS 18197, at *4 (S.D.N.Y. Dec. 14, 2000)*; Prescription Containers, Inc. v. Cabiles*, 2014 U.S. Dist. LEXIS 40250, at *15-16 (E.D.N.Y. Feb. 14, 2014); James W. Moore, *et al.*, 4 *Moore's Federal Practice* § 17.26[4][c] (3d ed.) ("The question of what constitutes a partnership

---

[3] For cases treating the PA and PLO as an unincorporated associations, *see Estate of Parsons v. Palestinian Auth.*, No. 07-c-1847, DE 14 at 13-14 (D.D.C. Sept. 30, 2008) (dismissing non-federal law claims against PA and PLO for lack of capacity; *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006); *Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 276, 89 (D.R.I. 2001).

10

or unincorporated association with capacity to bring a federal claim is determined by federal law."). As the Eastern District of New York recently observed in *Cabiles*, federal courts have used various formulations for the definition of an unincorporated association. 2014 U.S. Dist. LEXIS 40250, at *15 (providing examples). In general, federal law defines an unincorporated association as a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective. *See id.* at *15-16; *see also In re Magnetic Audiotape Antitrust Litig.*, 2000 U.S. Dist. LEXIS 18197, at *4 (adopting that definition for purposes of Rule 17(b)(3)).

In their Motion for Summary Judgment, Plaintiffs do not contend that either the PA or PLO is an unincorporated association. In fact, Plaintiffs' position is that the PA and PLO are not unincorporated associations. *See, e.g.*, Mot. at 8 ("Neither the PA nor the PLO fits the profile of unincorporated associations."); *see generally id.* at 6-9. Thus, Plaintiffs cannot invoke Rule 17(b)(3)(A)'s savings clause for federal law claims, and the PA and PLO lack capacity to be sued for both federal *and* state law claims.

But, even if the Court were to disagree with the parties and conclude that the PA and PLO should be treated as unincorporated associations for purposes of Rule 17(b), then Plaintiffs' non-federal law claims must be dismissed. Under New York law, unincorporated associations lack the capacity to be sued in their own names. *See* N.Y. Gen. Ass'ns Law § 13 (2014); N.Y. C.P.L.R. § 1025; *Martin v. Curran*, 101 N.E. 2d 683, 685 (N.Y. 1951); *La Russo*, 2014 U.S. App. LEXIS 3991, at *9-10; *Modeste*, 850 F. Supp. 1156, 1158-60; *Cabiles*, 2104 U.S. Dist. LEXIS 40250, at *13-15. Moreover, each and every member of the unincorporated association must have known of and consented to each specific act complained of; a bald assertion of authorization or ratification is insufficient. *A. Terzi Prods. v. Theatrical Protective Union*, 2 F.

1430587.1

Supp. 2d 485, 492 (S.D.N.Y. 1998) (Sotomayor, J.).  Plaintiffs have not so alleged and cannot so establish.  Plaintiffs do not contend that New York law is otherwise, and instead rest on their argument that the PA and PLO are not unincorporated associations.  Thus, even if the Court were to treat the PA and PLO as unincorporated associations, Plaintiffs non-federal law claims must be dismissed for lack of capacity as well as for the additional grounds, including statute of limitations, set forth in Defendants' Motion for Summary Judgment.  *See* DE 497 at 43-49.

## CONCLUSION

     The PA and PLO lack the capacity to be sued under the law of New York.  Because they are not individuals, corporations, or unincorporated associations, they lack capacity to be sued for both federal and non-federal law claims, and accordingly judgment must be entered for the Defendants on all claims.

 June 6, 2014                           Respectfully Submitted,

                                       /s/ Laura G. Ferguson
                                       Laura G. Ferguson
                                       Brian A. Hill
                                       Mark J. Rochon
                                       MILLER & CHEVALIER CHARTERED
                                       655 15th Street, NW, Suite 900
                                       Washington D.C. 20005-6701
                                       (202) 626-5800 [tel]
                                       (202) 626-5801 [fax]
                                       lferguson@milchev.com [email]

                                       *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

1430587.1