IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*, )<br>)<br>　　　　　Plaintiffs, )<br>)<br>　　v. )<br>)<br>THE PALESTINE LIBERATION )<br>ORGANIZATION, *et al.*, )<br>)<br>　　　　　Defendants. )<br>) | Civil Action No. 04cv397 (GBD) (RLE) |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' RULE 56.1 STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT ON DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE**

Pursuant to Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56, Defendants the Palestine Liberation Organization and the Palestinian Authority (collectively "Defendants"), respectfully submit the following Response to Plaintiffs' Rule 56.1 Statement in Support of their Motion for Summary Judgment on Defendant's Fourth Affirmative Defense (DE 491). Defendants respond individually to each of the numbered paragraphs of DE 491 below.

1.　　　The Palestine Liberation Organization ("PLO") was formed in 1964, with the adoption of a constitution. The PLO Constitution provides for an elected National Assembly (Art. 5), an Executive Committee headquartered in Jerusalem (Art. 17), a Palestine National Army (Art. 22), a Palestine National Fund (Art. 18) and various departments.

　　　*Citations in support of paragraph 1:* PLO Constitution (amended 1968) (Pls. Trial Ex. 1076).

RESPONSE: Defendants admit that The Palestine Liberation Organization ("PLO") was formed in 1964.

Defendants deny that Pls. Trial Ex. 1076 constitutes admissible evidence of the facts asserted in paragraph 1 regarding the "PLO Constitution." Pls. Trial Ex. 1076 was not produced

by Plaintiffs prior to the close of fact discovery on December 21, 2012, but was first produced to Defendants on March 18, 2014.  Therefore, it cannot be used to supply evidence on a motion, at a hearing, or at trial.  Fed. R. Civ. P. 37(c)(1); July 10, 2012 Tr. at 30 ("any responsive documents not produced during discovery will be inadmissible at trial."); *id.* at 31-32 ("the purpose of discovery is that there be no surprises.  And that to the extent that individuals are asked . . . to produce documents . . . they are required to do those and answer them fully.  To the extent that that's not done, then those documents not produced will not be allowed to be at trial."); Nov. 20, 2012 Tr. at 6 ("to the extent that you have not identified any evidence either by pointing to it or responding to it, you'd be precluded from presenting such evidence").  Moreover, there is no admissible evidence that Pls. Trial Ex. 1076 is, in fact, an authentic copy of the "PLO Constitution (amended 1968)" as Plaintiffs' claim.  Pls. Trial Ex. 1076 is in English, contains text indicating that it is from something called the "Jewish Virtual Library A Division of the American-Israeli Cooperative Enterprise," and appears on its face to be inauthentic because it contains what are described as "Stuart Hersh comments" (at P1:4501) and skips from Article 12 to Article 17 (at P1: 4502-03).  Thus, Pls. Trial Ex. 1076 is not admissible as evidence of the facts asserted in paragraph 1 regarding the "PLO Constitution."

   2. The PLO is administered by an Executive Committee.  The Executive Committee is elected by the Palestine National Council ("PNC"), which is elected by the Palestinian people.

> ***Citations in support of paragraph 2:***  PLO Constitution (amended 1968) (Pls. Trial Ex. 1076).

RESPONSE:   Defendants admit that The PLO is administered by an Executive Committee and that the Executive Committee is elected by the Palestine National Council ("PNC").

Defendants deny that Pls. Trial Ex. 1076 constitutes admissible evidence of the facts asserted in paragraph 2 regarding the "PLO Constitution."  See response to paragraph No. 1 above.

3.      In 1974, the UN General Assembly granted the PLO "observer status at the United Nations."

> ***Citations in support of paragraph 3:***  U.N. Doc. A/RES/3237 (XXIX) (1974) *available at* http://unispal.un.org/UNISPAL.NSF/0/512BAA69B5A327948525603DE0054B9B2.

RESPONSE:    Admitted.

4.      In 1987, the United States Congress made a series of findings concerning the PLO's involvement in terrorism and determined that "the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States."

> ***Citations in support of paragraph 4:***  Pub. L. 100-204 at § 1002(b), 101 Stat. 1331 (1987).

RESPONSE:    Defendants admit that Pub. L. 100-204 at § 1002(b), 101 Stat. 1331 (1987) has been accurately quoted by the Plaintiffs.  Defendants deny that Pub. L. 100-204 at § 1002(b), 101 Stat. 1331 (1987) is material to any fact at issue, that it has any continuing effect, or that it constitutes admissible evidence of the facts asserted in paragraph No. 4 regarding the PLO.  In fact, the Executive Branch has consistently waived the provisions of Pub. L. 100-204 for the last 20 years. *See* Waiver and Certification of Statutory Provisions Regarding the Palestine Liberation Organization Office, 78 Fed. Reg. 25780 (May 2, 2013), 78 Fed. Reg. 1299 (Jan. 8, 2013), 77 Fed. Reg. 24759 (Apr. 25, 2012), 75 Fed. Reg. 19537 (Apr. 15, 2010), 74 Fed. Reg. 52865 (Oct. 15, 2009), 74 Fed. Reg. 7587 (Apr. 26, 2009), 73 Fed. Reg. 62847 (Oct. 22, 2008), 73 Fed. Reg. 22265 (Apr. 24, 2008), 72 Fed. Reg. 61033 (Oct. 26, 2007), 72 Fed. Reg. 19781(Apr. 20,

2007), 71 Fed. Reg. 64437 (Nov. 1, 2006), 71 Fed. Reg. (May 5, 2006), 70 Fed. Reg. 62225 (Oct. 28, 2005), 70 Fed. Reg. 21611 (Apr. 26, 2005), 69 Fed. Reg. 62795 (Oct. 27, 2004), 69 Fed. Reg. 21679 (Apr. 21, 2004), 68 Fed. Reg. 60841(Oct. 24, 2003), 68 Fed. Reg. 20327 (Apr. 25, 2003), 67 Fed. Reg. 65471 (Oct. 25, 2002), 67 Fed. Reg. 20427 (Apr. 25, 2002), 66 Fed. Reg. 20585 (Apr. 24, 2001), 65 Fed. Reg. 24852 (Apr. 27, 2000), 64 Fed. Reg. 58755 (Nov. 1, 1999), 64 Fed. Reg. 29537 (June 2, 1999), 63 Fed. Reg. 68829 (Dec. 14, 1998), 63 Fed. Reg. 68145 (Dec. 9, 1998), 63 Fed. Reg. 32711 (June 16, 1998), 62 Fed. Reg. 66255 (Dec. 18, 1997), 62 Fed. Reg. 9903 (Mar. 4, 1997), 61 Fed. Reg. 43137 (Aug. 21, 1996), 61 Fed. Reg. 32629 (June 25, 1996), 61 Fed. Reg. 26019 (May 23, 1996), 61 Fed. Reg. 2889 (Jan. 29, 1996), 60 Fed. Reg. 57821 (Nov. 22, 1995), 60 Fed. Reg. 53093 (Oct. 11, 1995), 60 Fed. Reg. 44725 (Aug. 28, 1995), 60 Fed. Reg. 35827 (July 11, 1995), 60 Fed. Reg. 2673 (Jan. 11, 1995), 59 Fed. Reg. 35607 (July 13, 1994), 59 Fed. Reg. 4777 (Feb. 1, 1994).

5. In 1993, the PLO and the State of Israel signed a "Declaration of Principles" (DOP), which followed the signatories' mutual recognition. The DOP anticipated Palestinian self-rule in Gaza and Jericho (Art. V), the transfer of power and responsibilities to Palestinians in the West Bank (Art. VI), and an agreement on self-government and the election of a Palestinian council (Art. III).

> ***Citations in support of paragraph 5:*** Declaration of Principles on Interim Self-Government Arrangements (Sept. 13, 1993), *available at* www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/declaration of principles.aspx.

RESPONSE:   Admitted.

6. Following further negotiations, the PLO and the State of Israel entered into a series of bilateral agreements. These agreements included, *inter alia*, the "Gaza-Jericho Agreement," signed in Cairo in 1994; the "Agreement on Preparatory Transfer of Powers and

4

1431340.1

Responsibilities," also signed in 1994; and the Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip (the "Interim Agreement"), signed in 1995.

> *Citations in support of paragraph 6:*
>
> - Agreement on Gaza Strip and Jericho Area (May 4, 1994), *available at* http://www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/agreement%20on%20gaza%20strip%20and%20jericho%20area.aspx.
> - Agreement on Preparatory Transfer of Powers and Responsibilities (Aug. 29, 1994), *available at* http://www.mfa.gov.il/mfa/foreignpolicy/peace/guide/pages/agreement%20on%20preparatory%20transfer%20of%20powers%20and%20re.aspx.
> - Interim Agreement (Pls. Trial Ex. 532).

RESPONSE:   Admitted.

7.   In the Interim Agreement, the PLO and the State of Israel assigned certain governmental duties in the West Bank and Gaza to the Palestinian Authority (the "PA").

> *Citations in support of paragraph 7:*   Interim Agreement (Pls. Trial Ex. 532).

RESPONSE:   Admitted.

8.   The Interim Agreement provides that the PLO would "conduct negotiations and sign agreements with states or international organizations" in limited spheres—economic relations, regional development, donor assistance, and cultural, scientific and educational goals.

> *Citations in support of paragraph 8:*   Interim Agreement, Art. 9.5(b) (Pls. Trial Ex. 532).

RESPONSE:   Admitted.

9.   The Interim Agreement transferred specified "powers and responsibilities" from the Government of Israel to the PA, and established executive, legislative and judicial functions for the PA.  Under the Interim Agreement, the PA provides many government services, including local policing and civil authority over traditional matters such as agriculture, banking, employment, environmental protection, unclaimed property, health, labor, zoning, postal

5

1431340.1

services, social welfare, telecommunications, transportation, water and sewage. The PA has a police force and levies taxes.

*Citations in support of paragraph 9:*

- Interim Agreement, Art. 1.1 (Pls. Trial Ex. 532).
- Interim Agreement, Annex III, *available at* http://www.mfa.gov.il/MFA/ForeignPolicy/Peace/Guide/Pages/THE%20ISRAELI-PALESTINIAN%20INTERIM%20AGREEMENT%20-%20Annex%20III.aspx.

RESPONSE: Defendants deny that the Interim Agreement transferred specified "powers and responsibilities" from the Government of Israel to the PA, and established executive, legislative and judicial functions for the PA. Defendants admit that the State of Israel and the PLO agreed in the Interim Agreement that such a transfer would take place after the Interim Agreement was signed. *See* Interim Agreement, Art. 1.1 ("Israel *shall* transfer powers and responsibilities . . . ") (emphasis added) (Pls. Trial Ex. 532). The referenced "powers and responsibilities" were in fact transferred from the Government of Israel as the occupying power to the PA by a series of subsequent orders of Israeli Military Commanders. *See* Ex. 1 (Shehadeh Report at 24); Ex. 2 (R. Shehadeh, *From Occupation to Interim Accords: Israel and the Palestinian Territories* 134-37 (1997)). Similarly, executive, legislative and judicial functions for the PA were in fact established by the PLO's subsequent creation of the PA. *See* Ex. 3 (Abu-Libdeh Dep. at 118:2-11); Ex. 4 (Safieh Dep. at 86:1-12, 132:10-15). Defendants also admit that since its creation by the PLO, the PA has provided many government services, including local policing and civil authority over traditional matters such as agriculture, banking, employment, environmental protection, unclaimed property, health, labor, zoning, postal services, social welfare, telecommunications, transportation, water and sewage, and that the PA has a police force and levies taxes.

10.     The Interim Agreement provides that the PA can "sue and be sued and conclude contracts."

>   *Citations in support of paragraph 10:* Interim Agreement, Art. 9.2 (Pls. Trial Ex. 532).

RESPONSE:   Defendants admit that Article 9.2 of the Interim Agreement states that "The executive power of the Palestinian Council shall extend to all matters within its jurisdiction under this Agreement or any future agreement that may be reached between the two Parties during the interim period," and that "[i]t shall include the power to . . . sue and be sued and conclude contracts . . . .," but deny that that statement is material to any fact at issue.  In particular, Defendants deny that that Article gives the PA the legal capacity to be sued in this matter under New York law as required by Fed. R. Civ. P. 17(b).

11.     Both the PA and the PLO hold property.

>   *Citations in support of paragraph 11:* Defs.' Resp. to Request for Admission No. 98 in Pls.' First Requests for Admissions (Dec. 21, 2012).

RESPONSE:    Admitted.

12.     Defendants have not identified their members.

>   *Citations in support of paragraph 12:* Defs.' Answer to Interrog. No. 6(a) in the [Fifth] Set of Interrogs. from All Pls. (Dec. 21, 2012).

RESPONSE:    Denied.  *See* Defs.' Answer to Interrog. No. 6(a), 7, 8 & 9 in the [Fifth] Set of Interrogs. from All Pls. (Dec. 21, 2012) (objecting to identification of all PA and PLO members as unduly burdensome, but describing their members by category and referencing lists of those members who could be identified without undue burden).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment on Defendant's Fourth Affirmative Defense should be denied.

1431340.1

June 6, 2014                              Respectfully Submitted,

                                          /s/ Brian A. Hill
                                          Brian A. Hill
                                          Mark J. Rochon
                                          Laura G. Ferguson
                                          MILLER & CHEVALIER CHARTERED
                                          655 15th Street, NW, Suite 900
                                          Washington D.C. 20005-6701
                                          (202) 626-5800 [tel]
                                          (202) 626-5801 [fax]
                                          bhill@milchev.com [email]

                                          *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*