# Exhibit 2

# From Occupation to Interim Accords: Israel and the Palestinian Territories

**Raja Shehadeh**

CIMEL
SOAS
School of Oriental and African Studies
University of London

KLUWER LAW INTERNATIONAL

Published by Kluwer Law International,
P.O. Box 85889, 2508 CN The Hague, The Netherlands.

Sold and distributed in the U.S.A. and Canada
by Kluwer Law International,
675 Massachusetts Avenue, Cambridge, MA 02139, U.S.A.

In all other countries, sold and distributed
by Kluwer Law International,
P.O. Box 85889, 2508 CN The Hague, The Netherlands.

ISBN 90-411-0618-9

All Rights Reserved.
© 1997 Kluwer Law International
Kluwer Law International incorporates the publishing programs of
Graham & Trotman Ltd, Kluwer Law and Taxation Publishers,
and Martinus Nijhoff Publishers.

No part of the material protected by this copyright notice may be reproduced or utilized in any form or by any means, electronic or mechanical, including photocopying, recording, or by any information storage and retrieval system, without written permission from the copyright owner.

1993 and 4 May 1994'.[1] The Palestinian Covenant was issued by the newly formed Palestine Liberation Organization in 1964 and amended in 1969. It contains provisions regarding the liberation of all the Palestinian territory.

These then were the undertakings by the two sides regarding legislation which they agreed to pass to implement the Agreement. At the same time, the two sides agreed that 'neither side shall initiate or take any step that will change the status of the West Bank and the Gaza Strip pending the outcome of the permanent status negotiations'.[2] We shall now examine the legislation which each of the two sides passed pursuant to these undertakings.

## I. THE ISRAELI SIDE

### A. *Military Proclamations and Orders*

Only three military proclamations were issued by the Israeli Area Commanders of the West Bank and the Gaza Strip from the time when the Israeli army entered these areas and until the signing of the DOP.[3] The first announced the entry of the Israeli forces to these areas. The second vested in the military commander 'all powers of government, legislation, appointment and administration in relation to the area or its inhabitants'.[4] Military Proclamation number 3 established the military courts and the offenses which these courts have jurisdiction over. Military Proclamation number 4 regarding the implementation of the Gaza-Jericho Agreement is dated 15 May 1994. It was followed by two other Proclamations 5 and 6 issued after the signing of the subsequent agreements between the two sides. Military Proclamation number 7 issued in the West Bank after the signing of the Interim Agreement, dated 23 November 1995,[5] canceled all three previous proclamations. It is this latest proclamations that we shall analyze here.

---

[1] The text of these two letters is reproduced in Appendix 8.
[2] Article XXXI.7 of the Interim Agreement.
[3] This is in addition to the 1400 military orders issued from the beginning of the occupation to the date of the signing of the DOP. Order 1400 is dated 6 September 1993 and was the last to be issued before the signing of the DOP.
[4] This Order has been discussed in Chapter Three.
[5] The full text of this proclamation is reproduced in Appendix 17.

### 1. Military Proclamation Number 7

Military Proclamation number 7 regarding the West Bank is entitled: 'Proclamation Regarding the Implementation of the Interim Agreement (Proclamation Number 7). It was signed by General Elan Biran 'the Commander of the Israeli Army in the area of Judea and Samaria'. The preamble states that 'according to my powers as the military commander of the Israeli forces in the area I confirm..'. The Proclamation has five operative articles as follows:

a. Redeployment

> According to the Interim Agreement, the Israeli army were to redeploy in the first stage from the seven West Bank cities. This would then be followed by further redeployment according to intervals set forth in the Agreement. Article two on redeployment declares that 'the Israeli army forces shall re-deploy anew in the area'.[6] The Article then goes on to state that this shall be 'in accordance with the provisions of the Interim Agreement and according to the specifications of the commander of the Israeli forces in the area'. This would imply that the final say in the matter of redeployment is left for the Israeli commander since there is no confirmation that his 'specifications' have to be consistent with what has been agreed in the Interim Agreement regarding re-deployment.
>
> Redeployment of the Israeli army from West Bank towns with the exception of Hebron took place over two months in 1995 ending on 27 December 1995. Redeployment from the city of Hebron took place on 17 January 1997.

b. Transfer of Authorities

> Article Four of the Proclamation declares that 'the Commander of the Israeli Army in the Area and the Head of the Civilian Administration shall transfer to the Council and its agencies, powers and responsibilities exercised by them or their delegates including legislative, judicial and executive powers' as specified in the Interim Agreement.

---

[6] In Proclamation number 4 issued in the Gaza Strip implementing the Gaza-Jericho Agreement of 4 May 1994 it was declared that the Israeli army shall 'withdraw from the area and redeploy in the area of the settlements and military installations'.

This article attempts to confirm that the source of the authorities which the Palestinian Council shall enjoy according to the Agreement is the Israeli Military Commander and his appointee the Head of the Civilian Administration. It also appears to assert that the powers and responsibilities to be exercised by the Palestinian elected Council do not derive from the Interim Agreement signed between Israel and the PLO but from the action of the Israeli Commander who is transferring these powers through the instrument of a military proclamation made and signed by him.

Finally although the article confirms that the Israeli Commander and the Head of the Civil Administration have transferred, in accordance with the Interim Agreement, their powers to the Palestinian Council, it is not confirmed that the civilian administration shall cease to exist. This differs from the implementation mechanism for Gaza. In proclamation number 4 issued by the Israeli commander of the Gaza Strip on 17 May 1994, it was explicitly stated in Article 3(b) that 'upon the completion of the transfer of authorities, powers and responsibilities according to the Agreement [of 4 May 1994] the civilian administration shall cease to exist'. Proclamation number seven is contrary to Article I.5 of the Interim Agreement in which it was agreed that 'after the inauguration of the Council, the Civil Administration in the West Bank will be dissolved..'. In fact the Israeli civilian administration has not been dissolved and at the time of writing [November 1996] has continued to exist. As will be seen below it continues to issue new military orders adding to and amending the law in force in the West Bank.

c. Elections

Article three of Proclamation Number 7 declares that 'the Council [the Interim Self-Government Authority established by the Interim Agreement] and the Head of the Executive Authority shall be elected in elections as specified in the Interim Agreement'.

It was already agreed between Israel and the PLO in Article II of the Interim Agreement that 'direct, free and general political elections will be held for the Council and the Ra'ees of the Executive Authority of the Council in accordance with the provisions set out in the Protocol concerning Elections attached as Annex II to this Agreement'. Therefore, there was no legal necessity for the Commander of the Israeli army to declare in a military proclamation

issued by him that the Council and the head of the Executive Authority shall be elected. That he did so is consistent with the Israeli view that the Interim Agreement does not stand on its own and without an implementational legislation cannot become part of the law of the West Bank. Proclamation number seven is this implementational legislation. By virtue of this legislation, the Israeli military authority, which enjoys the ultimate legislative power, has in effect introduced the enabling legislation that would allow elections to take place in accordance with the Interim Agreement in the area subject to its authority.

d. Transfer of powers and responsibilities

According to Article Five of the Proclamation, the transfer of powers and responsibilities according to Annex III [Protocol Concerning Civil Affairs] of the Interim Agreement, includes the transfer of all rights, liabilities and obligations. As already mentioned above, it was agreed in Article XX.2.a. in the Interim Agreement that 'each side may take the necessary measures, including promulgation of legislation, in order to ensure that such claims by Palestinians, including pending claims ... are brought only before Palestinian courts or tribunals in the West Bank and the Gaza Strip ...'. The Israeli military commander has confirmed in Article five of the Proclamation that the transfer of powers which he declared in Article 4 shall be consistent with Article XX of the Interim Agreement.

e. Validity of existing legislation

Article 7 of the Proclamation declares the continued validity of all laws and security legislation in force at the date of Proclamation number seven 'as long as it is not revoked or replaced or suspended according to the provisions of this proclamation or the provisions of the Interim Agreement'.[7]

The scope of the legislative power of the Palestinian Council has already been discussed in Chapter Two. By declaring that Proclamation number seven is another source of revoking, replacing

---

[7] This was not in Proclamation number 4 of 17 May 1994 issued by the Israeli commander of the Gaza Strip implementing the Gaza - Jericho Agreement of 4 May 1994.