# EXHIBIT 6

**Rick Gaskins, MBA, CPA**
Gaskins Associates, PC

Forensic Economics

PO Box 326
602 Cromwell Whye Lane
Monkton, MD 21111
Telephone: 410-357-9503
E-mail: RRGaskins@aol.com
http://www.RickGaskins.com

15 July 2013

Brian A. Hill, Esq.
Miller & Chevalier, Chartered
Suite 900
655 Fifteenth Street, NW
Washington, DC 20005-5701

Re:    Estate of Benjamin Blutstein
       Economic report of Michael Soudry, MBA

Dear Mr. Hill:

You have asked me to review and comment on the report of plaintiff's forensic economist, Michael Soudry, MBA, assessing economic damages in the matter of the death of Mr. Benjamin Blutstein. In this report I provide my qualifications, information helpful to understanding my findings and opinions, and my findings, explanatory discussion and my opinion. In this report I also provide the disclosures required in Federal Rule of Civil Procedure 26(a)(2)(B) pertaining to expert testimony.

Qualifications

I have thirty four years of experience as an expert witness and consultant in forensic economics and accounting, addressing damages for personal injury, wrongful death, employment torts, commercial damages, and business and financial asset valuation. During that time, forensic economics has been virtually my entire practice, and the assessment of personal damages for injury, death, employment and other torts has been the large majority and focus of my forensic practice. I have addressed personal damages for U.S. citizens and for foreign nationals under the damages laws of numerous jurisdictions and in complex cases where the law of damages was fashioned for the case. For example, I was forensic economic expert for plaintiffs in the following noteworthy cases:

Brian A. Hill, Esq.                    15 July 2013                    Page 2

- The Vietnamese Babylift Aircrash Disaster occurring 4 April 1975 for approximately 140 surviving injured children and for approximately 140 children killed in the crash.[1]

- For the flight crew of Pan Am Flight 103, the Lockerbie Bombing, occurring 21 December 1988.[2]

- For victims of the terrorist-related aircraft crashes of September 11, 2001 under the September 11th Victim Compensation Fund (VCF) established by the U.S. Congress following the disaster.[3]

I have been an officer or director of the major professional organizations for forensic economics: the National Association of Forensic Economics (NAFE), of which I was elected Vice-President; the American Academy of Economic and Financial Experts (AAEFE), for which I served two non-consecutive terms on the board of directors; and the Collegium of Pecuniary Damages Experts (CPDE), of which I am currently past-President.  I have authored publications on forensic economics in peer-reviewed academic journals.  I am frequently invited to speak at professional meetings for forensic economists.  My curriculum vitae is attached.

Background and Understanding

I understand Mr. Blutstein was killed on 31 July 2002.  He was 25 years of age, single with no dependents, and was working to become a substance abuse counselor. Plaintiff's claim for economic damages is expressed in the report of Michael Soudry, MBA, dated 2 May 2013.

Scope of Report

This report addresses the overall quality, correctness, and methodology of Mr. Soudry's opinion of economic damages in this matter.  For judicial economy only major issues are addressed in this report.  I reserve the right to comment further on Mr. Soudry's work and opinion should I receive additional information regarding his opinions.

---

[1] http://en.wikipedia.org/wiki/Tan_Son_Nhut_C-5_accident.
[2] https://en.wikipedia.org/wiki/Pan_Am_Flight_103.
[3] http://www.vcf.gov/faq.html.

Brian A. Hill, Esq.                 15 July 2013                          Page 3

<u>Beyond Scope of Report</u>

I express no opinions regarding liability in the subject action.
<u>Basis</u>

My assessment is based on my education, training and experience in forensic
economics, personal damages generally, and in cases with circumstances similar to the
subject action; on Mr. Soudry's report, his supplemental responses, and the documents
referenced therein; on my experience with the assessment of personal damages in
international disasters and terror incidents involving U.S. citizens and foreign nationals;
on my experience with the law of personal damages in various United States
jurisdictions; on my review of an expert report explaining and contrasting the laws of
Israel and of Palestine[4]; on the damages model adopted for the September 11th Victim
Compensation Fund (VCF); and on the statements of ethics and professional standards
of the two largest associations for forensic economists, both of which have such
statements[56].  Specific sources are identified in Appendix A, Documents Referenced.

<u>Preface: Rule 702 and *Daubert* Standards</u>

Because my findings and opinions relate to the admissibility of Mr. Soudry's proffered
testimony, a recap of standards is presented here for reference.  The Supreme Court's
decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny were codified
in summary form in Federal Rule of Evidence 702, which addresses the admissibility of
expert testimony.  Rule 702 reads:

> Rule 702. Testimony By Expert Witnesses
>
> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a fact in
> issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

---

[4] Expert Report by Advocate Muhammad Dahleh dated 19 November 2012.
[5] National Association of Forensic Economics ethics statement at http://nafe.net/about-nafe/nafes-ethics-statement.html.
[6] American Academy of Economic and Financial Experts ethics statement at http://www.aaefe.org/ethics-statement.

Brian A. Hill, Esq.                    15 July 2013                         Page 4

> (d) the expert has reliably applied the principles and methods to the facts of the case.[7]

"Scrutiny of state and federal jurisprudence on the use of experts reveals common, recurring reasons for excluding expert testimony, such as when experts:

> (i) venture into areas beyond their realm of expertise;

> (ii) offer opinions that cannot be evaluated under any objective, accepted standard within the field or discipline;

> (iii) assume facts or conclusions that are inconsistent with the evidence or ignore other feasible alternative explanations;

> (iv) rely on insufficient or unreliable supporting data;

> (v) apply a lower standard of care to their work in litigation contrasted with the approach customarily used outside the courtroom;

> (vi) select a methodology that does not "fit" the case and context; and

> (vii) fail to bridge the analytical gap between work performed and opinions reached."[8]

Findings, Discussion and Opinion

Findings

As discussed below, the Soudry analysis fails to apply an appropriate methodology for the calculation of damages, would not assist the jury, and could mislead the jury, because it:

- Fails to identify the legal reference basis for damages;

- Reports loss to the estate from earnings without consideration of personal consumption of the decedent; and,

- Uses a reference period that does not correlate to Mr. Blutstein's own worklife expectancy or life expectancy, but rather to the life expectancy of Mr. Blutstein's mother.

---

[7] Fed. R. Evid. 702.

[8] Sofia Adrogue, "The Care and Feeding of Experts: Accountants, Lawyers, Investment Bankers, and Other Non-Scientific Experts," 47 S. Tex. L. Rev. 881, 907 (Summer 2006).

Brian A. Hill, Esq.                15 July 2013                        Page 5

Discussion: Personal Damages Generally

A damages expert is charged with providing an independent, unbiased opinion of economic damages based on the factual elements of the case and on the applicable law of damages.

The following discussion addresses economic damages, and does not address non-economic damages.

Across the United States' many jurisdictions, it is most common for death damages to be structured into two actions: (1) the Survival Action, which addresses losses to the decedent and the decedent's estate, and (2) the Wrongful Death Action, which addresses losses to the decedent's dependent survivors.

The economic damages in a Survival Action typically include costs of last illness/injury and funeral costs, which are known and for which no expert testimony is required, and losses to the decedent's estate, or what the decedent would have accumulated or saved but for the untimely death.

The economic damages in a Wrongful Death action are typically structured to replace the economic support dependent survivors have lost due to the untimely death. The common model for these damages can be expressed as:

Income of the decedent<br>
Less: personal consumption of the decedent<br>
Less: income levied taxes<br>
Less: savings (recovered in the Survival Action)<br>
= Economic support lost (damages)

Loss to dependent survivors is assessed for the years of their dependency, limited to the joint life of the dependent and the decedent — for example, for a child through age 18 or completion of formal education, and for a spouse through the joint life expectancy of the decedent and spouse. It should be noted that pursuant to the common model, when there are no dependent survivors there is no economic support lost, and therefore the damages that might otherwise be pursued in a Wrongful Death action cannot be claimed.

Brian A. Hill, Esq.                    15 July 2013                         Page 6

The above description of the Survival Action and Wrongful Death Action models make good economic sense for the making of victims whole economically, neither compensating too much nor too little.

I am not aware of a legally prescribed definition of the basis for damages assessment under the Antiterrorism Act of 1991 ("ATA").  However, in my early work involving the victims of the Vietnamese Babylift Aircrash, which was a case of unclear controlling law, my recollection is that the general model for death damages above was applied.  The venue was the U.S. District Court for the District of Columbia.  Because the general model above is consistent with District of Columbia law I cannot say after decades whether the Court applied District of Columbia law or the common model for personal damages.  I do recall from my work on victims of the Pan Am 103 Lockerbie terrorist act, which was before a Federal Court in New York, that the damages model the court adopted was described to me as the common model for the assessment of death damages in the United States, and not New York law.  That common model is the model I have described above.

It is noteworthy that for the largest act of terrorism committed on U.S. soil, the attacks of 11 September 2011, that the congressionally authorized Victim Compensation Fund (VCF) adopted a model of compensation that conforms very closely to the common model defined above.

Given the lack of a definition for damages in claims under the ATA, a forensic economist of even minimal experience would be well served by referencing the VCF model in assessing damages for terrorism.  But regardless of the model applied, the forensic economist is obligated to state the legal reference basis for the damages assessed.

Discussion: the Soudry Analysis and His Opinion

   The Soudry analysis fails to identify the legal reference basis for damages.

   Nowhere in his report does Mr. Soudry state the legal basis for his assessment of damages.  Mr. Soudry opines that "Mr. Benjamin Blutstein's earnings had he not been killed on July 31, 2002, total $693,931" and that he "provided these projected earnings analysis to assist the trier of fact in this matter, which may attribute a portion a this amount as loss to the estate of Benjamin Blutstein."  Thus, while Mr. Soudry alludes to the basis of loss to the estate, the Court and jury are left without knowing what model was applied in the first instance.

Brian A. Hill, Esq.                    15 July 2013                              Page 7

Without any explanation of the legal basis for his calculations, his analysis is incomplete.

Had he applied the common model, the resulting loss would have been much lower.  Mr. Blutstein was a single person with no surviving dependents.  As such, only the Survival Action model would apply to assessment of his damages, which would be simply lost accumulations to the estate, or what the decedent would have saved.

The Soudry analysis reports lost earnings without consideration of personal consumption of the decedent.

Mr. Soudry indicates knowledge of the appropriate model for damages but fails to complete the analysis for a Survival Action.  To determine what the decedent would have saved out of earnings it is necessary to deduct the amounts the decedent would have spent in living.  Mr. Soudry fails to make this deduction.

The Soudry analysis uses a reference period that does not correlate to Mr. Blutstein's own worklife expectancy or life expectancy, but rather to the life expectancy of Mr. Blutstein's mother.

Mr. Soudry's analysis applies a period of analysis I do not believe I have ever seen in the matter of a single person with no surviving dependents, which is that he calculated the loss according to the life expectancy of the longest surviving parent, not through the decedent's worklife expectancy or life expectancy.  The very logical and economically reasoned common model discussed above provides no support for this approach, which makes no logical sense.  I know of no jurisdiction that applies this concept to the assessment of damages for Survival Action of a decedent with no dependents.

Opinion

For the reasons stated above, it is my opinion, to a reasonable degree of certainty in forensic economics, that Mr. Soudry's opinion and presentation of damages fails to follow an appropriate methodology, would not assist the trier of jury, and could mislead the jury by overstating the amount that application of an appropriate methodology would yield.

Brian A. Hill, Esq.                15 July 2013                        Page 8

Certification

1.    The statements of fact, reported analyses, opinions and conclusions expressed
      in this study are to the best of my knowledge and belief true and correct.

2.    This valuation was performed on a basis of non-advocacy, and I have no present
      or contemplated interest in the litigation, nor any interest or bias, which would
      impair a fair and unbiased appraisal.  My compensation for this appraisal is
      independent of the value reported and is not contingent on any action or event
      resulting from the appraisal.

3.    This appraisal has been conducted and this report issued in conformity with the
      Statement of Ethical Principles and Principles of Professional Practice of the
      National Association of Forensic Economics and the Statement of Ethical
      Principles of the American Academy of Economic and Financial Experts.

4.    No one provided significant professional assistance to me in the conduct of this
      appraisal.

Appendix A lists the documents I was provided or obtained, reviewed or considered that
were relevant to my opinions in this report.

My qualifications and list of publications authored in the previous ten years are
contained in my resume, which is attached to this report as Appendix B.

A list of all other cases in which I have testified as an expert at trial or by deposition
during at least the previous four years is attached as Appendix C.
My compensation for review, analysis and preparation of this report is at my standard
hourly rate of $380.  Subsequent expert services related to this case, including
deposition and trial testimony, will be at my standard hourly rate of $380 per hour.  No
invoice for services performed has been rendered as of this date.

Should resolution of this matter require my testimony in deposition or trial, I would
appreciate the opportunity to incorporate any additional data then known, and to update
the analyses for the passage of time and its impact on present value.
I hope this information contributes to a fair resolution of this matter.  If you require
further assistance, I would be pleased to respond.

Brian A. Hill, Esq.                    15 July 2013                              Page 9

Very truly yours,

Rick R. Gaskins, MBA, CPA

Attachments: Appendix A, Documents Referenced
             Appendix B, Resume of Rick R. Gaskins, MBA, CPA
             Appendix C, Testimony List, Rick R. Gaskins, MBA, CPA

**Appendix A**

Documents Reviewed

"The Budget and Economic Outlook: Fiscal Years 2013 to 2023", Table B-1, at:
http://www.cbo.gov/sites/default/files/cbofiles/attachments/43907-BudgetOutlook.pdf.

Economic Analysis Report of Michael Soudry M.B.A., 18 March 2013, economic loss to
estate of Benjamin Blutstein.

Economic Analysis Report of Michael Soudry M.B.A., 2 May 2013, economic loss to
estate of Benjamin Blutstein.

Explanation of Process for Computing Presumed Economic Loss, vs_matrices.pdf,
Revised 27 August 2002.

Final Report of the Special Master for the September 11th Victim Compensation Fund
of 2001, Volume 1.

O*NET employment data at: http://www.onetonline.org/help/online/.

Skoog, Gary R., Ciecka, James E. and Kurt V. Krueger, "The Markov Process Model of
Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points,
and Bootstrap Standard Errors", Journal of Forensic Economics, 22(2):165-229, August
2011.

Transcript of the deposition of Katherine Baker, 12 July, 2012.

Transcript of the deposition of Rebekah Blutstein, 13 July, 2012.

Transcript of the deposition of Richard Blutstein, MD, 12 July, 2012.

U.S. Life Tables, 2008, National Center for Health Statistics, at
http://www.cdc.gov/nchs/data/nvsr/nvsr61/nvsr61_03.pdf.

**Appendix B**

**Rick Gaskins, MBA, CPA**
Gaskins Associates, PC                                                    Forensic Economics

PO Box 326
602 Cromwell Whye Lane
Monkton, MD  21111
Telephone:  410-357-9503
E-mail:  RRGaskins@aol.com
http://www.RickGaskins.com

1 May 2013

Resume of Rick R. Gaskins, MBA, CPA

Experience:     Rick Gaskins has 36 years of experience in the public
accounting profession and 34 years of experience as an expert
witness and consultant in the fields of forensic economics and
accounting.  He has extensive experience in performing and
directing consulting engagements involving:

o  Damages for personal injury, death and employment torts
o  Business, pension and financial assets valuation
o  Damages in commercial disputes
o  Complex litigation and proof of damages
o  Punitive damages
o  Civil and criminal matters
o  Alternate dispute resolution

Prior to forming Gaskins Associates he was senior Management
Advisory Services Partner with a regional certified public
accounting (CPA) firm.  Earlier he was a senior consultant with the
health care consulting division of a national CPA firm.  His
experience also includes management positions in banking and
higher education.

He is a past adjunct instructor at the Georgetown University School
of Business Administration where he taught financial and
managerial accounting theory.  He also serves as an instructor for
continuing professional education seminars on forensic economics,
forensic accounting and business damages/valuation.

He augments his consulting capabilities with computer
programming skills in high-level languages, database management
systems, computer modeling and statistical analysis tools.  He has
training and experience in collaborative law and a genuine interest
in contributing to the advancement of alternative dispute resolution.

| Representative Engagements: | Forensic accounting, economic analysis and expert testimony |
|---|---|

Economic loss in personal injury and wrongful death cases, before federal and state courts.

Economic damages in employment law matters.

Economic damages under the Antiterrorism Act of 1991.

Identification, valuation and analysis for distributions of marital property.

Business valuation and lost profits analysis for commercial torts and business interruption, before state courts.

Mediation of business value in alternate dispute resolution.

Damages from violations of lending laws and for damage to credit standing.

Funds flow analysis in criminal fraud and RICO case, before federal court.

Business valuation and pension valuation in marital dissolutions.

Economic analysis of a real estate investment trust's (REIT's) management of a major real estate development project, before bankruptcy court.

Assessment of damages for contract cancellation and misappropriation of intellectual property (software), before federal court.

Analysis of punitive damages claims.

Cost of proposed (injunctive relief) worldwide medical treatment program, financial management, and accounting to the court, in federal court.

Assessment of damages resulting from cancellation of wholesale distribution agreement, before federal court.

Forensic accounting regarding fraud, embezzlement and Securities Acts violations by bank management, before federal court.

Economic loss of foreign nationals for injury and death, before federal courts.

| | |
|---|---|
| Representative Engagements (continued) | **Cost studies and economic analyses not in litigation:** |

Fraud and abuse detection system for a federal health insurance program.

Market assessment and forecast for worldwide demand of a pharmaceutical product for private placement of securities.

Differential costs of two policy options for a federal program.

Stock valuation for wholly-owned subsidiary of national professional association.

Medicare data collection cost.

Economics of burn injury treatment in 500 hospitals.

Business valuation and negotiation for purchase of a technical consulting firm.

**Computer system consulting and software development:**

Comprehensive automation for 245-bed acute care general hospital: system specification and selection.

Distribution system for 500,000-member not-for-profit association: remedy flawed system selection and stalled software development.

Point-of-sale system for 15-store retail chain:  specification and selection.

Real-time order entry and dispatch system for delivery of highly perishable product:  custom software design and development.

Design and development of programs for preparation and transmission of Federal Reserve (NACHA) formatted direct deposit payroll and direct debit transactions to banks via data communications.

| | |
|---|---|
| License: | Certified Public Accountant, Maryland, Certificate 5039, issued January 31, 1977. |

| | |
|---|---|
| <u>Education:</u> | Continuing professional education seminars and teaching |
| | Professional seminars and meetings on forensic economics, valuation and forensic accounting annually |
| | Multi-disciplinary collaborative law |
| | Wharton School, University of Pennsylvania, 1975, Master of Business Administration (emphasis in accounting, economics, finance, statistics and quantitative methods) |
| | University of Rhode Island, studies in mathematics and accounting |
| | Brown University, 1971, BA in English literature, minor in sciences |

| | |
|---|---|
| <u>Professional Affiliations:</u> | American Academy of Economic and Financial Experts<br>      Board of Directors 2001 - 2004<br>      Board of Directors 2006 - 2009 |
| | American Institute of Certified Public Accountants |
| | Collegium of Pecuniary Damages Experts<br>      Past-president Pro-tem 2008 - 2009<br>      Vice-president 2011 - 2012<br>      President 2012 - 2013<br>      Past-president 2013 - |
| | *Journal of Legal Economics*<br>      Board of Editors, 2006 – 2007 |
| | National Association of Forensic Economics<br>      Vice-president, Eastern Region 2002 - 2005 |
| | *The Earnings Analyst*<br>      Board of Editors, 2012 - |

| | |
|---|---|
| <u>Publications:</u> | *The Costs of Acute Care Utilization Review Activities Conducted by Medicare Fiscal Intermediaries, Medicaid State Agencies, and State Licensing and Certification Agencies* (Report OPEL 77-12), Gaskins, Rick R., et al., U.S. National Technical Information Service, Washington, DC. |

| | |
|---|---|
| Publications:<br>(continued) | "Worklife Estimates by Occupation: A Comment", Gaskins, Rick R. and Paul C. Taylor, *Journal of Forensic Economics*, Vol. 11, No. 2, Spring/Summer 1998, pp. 139-141. |
| | "The Effect of the Loss of a Parent on the Future Earnings of a Minor Child", Kane, John, Lawrence M. Spizman, James D. Rodgers and Rick R. Gaskins, *Eastern Economics Journal*, 2010 36, pp. 370-390. |
| | "Damage Awards Using Intermediate Term Government Bond Funds vs. U.S. Treasuries Ladder: Tradeoffs in Theory and Practice", Rosenberg, Joseph I. and Rick R. Gaskins, Journal of Forensic Economics, Vol. 23, No. 1, March 2012, pp. 1-31. |
| Publications<br>in process: | "Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of Maryland", Gaskins, Rick R. and Joseph I. Rosenberg. |
| | "The Application of Time Expectancy Data in Personal Damages Assessment", Gaskins, Rick R. |

GaskinsCV130501.doc

**Appendix C**

Rick R. Gaskins, MBA, CPA
Deposition and trial testimony listing
1 January 2009 to 10 July 2013

| Date | Dep/ Trial | Attorney | Parties | Court | Case # |
|------|------|----------|---------|-------|--------|
| 05/30/09 | T | Johnson, Esq., William C., Jr. | Glover v. AIG et al | MDCirc PG Cnty | |
| 07/13/09 | D | Heatherington, Esq., Robert B. | Wagner v. Moore | | |
| 10/15/09 | D | Palmer, Esq., Mark D. | Blank v. Truffles at the Belvedere | MDCirc Baltimore | 24-C-09-001453 |
| 11/05/09 | D | Decker, Esq., Suzanne W. | Findley v. Mack Trucks | USDist Maryland | 1-08-cv-3509 |
| 11/12/09 | D | Fowler, Esq., Stephen T. | Nguyen v. Roth & Rau AG | USDist Maryland | CCB 06-1290 |
| 12/09/09 | D | Smith, Esq., Douglas R. | Grossman v. Ain & Bank | | |
| 04/08/10 | T | Espo, Esq., Joseph B. | Blank v. Truffles at the Belvedere | MDCirc Baltimore | 24-C-09-001453 |
| 06/16/10 | D | Proctor, Esq., Melissa | St. Holder v. Horton | USDist Maryland | 8:09-cv-2953 |
| 11/23/10 | D | Gunderson, Esq., Eric W. | Sheila Alford v. Providence Hosp | USDist DC | 10-132 (EGS) |
| 12/30/10 | D | Burns, Esq., David M. | Scott v. Merck & Company, Inc. | USDist Baltimore | 1:09-cv-03271-BEL |
| 01/12/11 | T | Freeman, Esq., Andrew D. | Scott v. Merck & Company, Inc. | USDist Baltimore | 1:09-cv-03271-BEL |
| 01/20/11 | D | Williamson, Jr., Esq., Thomas S. | Parks v. Alpharma, Inc. | USDist Baltimore | 06-cv-2411 RDB |
| 05/03/11 | T | May, Esq., John T. | Antoine v. Shapiro & Burson, LLF | USDist DC | 1:08-cv-00615 |
| 07/22/11 | D | Sieler, Esq., Jean Ann | Holland v. Rostocki | CofCP, Lucas Cnty, OH | CI 09-4636 |
| 10/10/11 | D | Parler, Esq., William C. | Erie Ins Co v. Lorton Contracting | MDCirc PG Cnty | CAL10-28643 |
| 10/14/11 | D | Battocchi, Esq., Raymon D. | Nuechterlein v. Ain & Bank | USDist Alexandria | 1:11-cv-454 GBL/TRJ |
| 07/17/12 | D | Santoni, Esq., Jane | Allen v. Paymap | USDist Maryland | 1:11-cv-00033-CCB |
| 09/20/12 | T | Bonello, Esq., John A. | Idexcel Inc. v. Wm Kardias | Fairfax, VA, Circuit | 2011-10159 |

Rick R. Gaskins, MBA, CPA
Deposition and trial testimony listing
1 January 2009 to 10 July 2013

| Date | Dep/ Trial | Attorney | Parties | Court | Case # |
|------|------------|----------|---------|-------|--------|
| 09/26/12 | D | Porwick, Esq., Katharine | Howard v Nexcom, Inc. | USDist Maryland | 8-10-cv-00659-PJM |
| 02/08/13 | D | Shaw, Esq., Clinton | Durose et al. v. Petroleum Recov | USDist Alexandria | 1:12cv1137(LMB/TCE |
| 02/11/13 | D | Jacobovitz, Esq., Jeffrey | William Scherlis v. William Penn | DC Supr | 2008-6144 |
| 04/02/13 | D | Feeley, Esq., Cheryl A. | Daggett v. Landmark | MDCirc AA Cnty | 02-C-12-169832 |
| 05/10/13 | D | Allen, Esq.,Geoffrey D. | Howard v Emmons-Brule | DC Supr | 2011 CA 007592 M |