UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO OVERRULE DEFENDANTS' AUTHENTICITY AND HEARSAY OBJECTIONS TO 177 PROPOSED TRIAL EXHIBITS THAT DEFENDANTS PRODUCED**

ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiffs*

April 9, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

I. DESCRIPTION OF THE PROPOSED EXHIBITS ..... 2

A. Employment Records ..... 3

B. "Ministry of Detainees" Files Reflecting [REDACTED] ..... 5

C. "Martyr" Files Reflecting [REDACTED] ..... 6

D. GIS Documents ..... 8

E. "Ministry of Finance" Account Statements ..... 10

II. THE PROPOSED TRIAL EXHIBITS ARE AUTHENTIC ..... 10

III. THE PROPOSED TRIAL EXHIBITS ARE NOT HEARSAY ..... 12

A. The Exhibits Are Statements Of An Opposing Party Under Rule 801(d)(2) ..... 12

1. Subpart (A): The Exhibits Are Statements Made By Defendants In A Representative Capacity ..... 13

2. Subpart (B): Defendants Adopted/Manifested Their Belief That The Information Contained In The Exhibits Is True ..... 14

3. Subpart (C): The Exhibits Are Statements Made By Persons Authorized To Make A Statement On The Subject ..... 16

4. Subpart (D): The Exhibits Contain Statements Made By The Party's Agent Or Employee On A Matter Within the Scope Of That Relationship And While it Existed ..... 17

B. Alternatively, the Exhibits Constitute Business Records And/Or Public Records ..... 19

C. Alternatively, the Exhibits Qualify Under The Residual Hearsay Exception ..... 21

D. Defendants' Contention That Portions Of Some Of The Documents Were Produced By Third Parties Is Unavailing ..... 23

IV. IN THE ALTERNATIVE, THIS COURT SHOULD ESTABLISH A PROCEDURE TO DETERMINE THE ADMISSIBILITY OF THE EXHIBITS BEFORE TRIAL ..... 24

CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anand v. BP W. Coast Prods. LLC*,
484 F. Supp. 2d 1086 (C.D. Cal. 2007) ....................13

*Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors*,
46 F. Supp. 2d 769 (N.D. Ill. 1999) ....................11, 14

*Bieda v. JCPenney Commc'ns, Inc.*,
1995 WL 437689 (S.D.N.Y. July 25, 1995) ....................11

*Comm. Data Servers, Inc. v. Int'l Bus. Machs. Corp.*,
262 F. Supp. 2d 50 (S.D.N.Y. 2003)....................11

*Corral v. Chicago Faucet Co.*,
2000 WL 628981 (N.D. Ill. Mar. 9, 2000)....................18, 20

*Davis v. City of New York*,
959 F. Supp. 2d 324,
*further consideration after briefing*, 959 F. Supp. 2d 427 (S.D.N.Y. 2013) ....................21

*Equal Employment Opportunity Comm'n v. W. Customer Mgmt. Grp., LLC*,
899 F. Supp. 2d 1241 (N.D. Fla. 2012)....................18

*Fed. Trade Comm'n. v. Hughes*,
710 F. Supp. 1520 (N.D. Tex. 1989) ....................15

*Fed. Trade Comm'n v. Med. Billers Network, Inc.*,
543 F. Supp. 2d 283 (S.D.N.Y. 2008)....................21

*Hannon v. Kiwi Servs.*,
2011 WL 7052795 (N.D. Tex. 2011)....................13, 20

*In re Japanese Electronic Prods. Antitrust Litig.*,
723 F.2d 238 (3d Cir. 1983),
*rev'd on other grounds*,
*Matushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....................16

*Int'l Bus. Machs. Corp. v. BGC Partners, Inc.*,
2013 WL 1775367 (S.D.N.Y. Apr. 25, 2013)....................15

*John Paul Mitchell Sys. v. Quality King Distribs., Inc.*,
106 F. Supp. 2d 462 (S.D.N.Y. 2000)....................11, 20, 22

*JPMorgan Chase Bank, N.A. v. Yuen*,
2013 WL 2473013 (S.D.N.Y. June 3, 2013) ....................19

*Klieman v. Palestinian Authority*,
Civil Action No. 04-1173 (PLF) (JMF) (D.D.C. Feb. 11, 2013), DE No. 190....................24

*Murphy v. Metro. Transp. Auth.*,
2009 WL 1044604 (S.D.N.Y. Apr. 14, 2009)....................21

*Nabisco v. Warner-Lambert Co.*,
32 F. Supp. 2d 690 (S.D.N.Y. 1999),
*aff'd sub nom. Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000)....................11

*Pappas v. Middle Earth Condo. Ass'n.*,
963 F.2d 534 (2d Cir. 1992)....................17, 18

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
262 F. Supp. 2d 251 (S.D.N.Y. 2003)....................16

*Phoenix Assocs. III v. Stone*,
60 F.3d 95 (2d Cir. 1995)....................19

*Smith v. Pathmark Stores, Inc.*,
485 F. Supp. 2d 235 (E.D.N.Y. 2007) ....................18

*United States Info. Sys., Inc. v. Int'l Brotherhood. of Elec. Workers Local Union No. 3*,
2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006),
*adhered to on recons.*, 2006 WL 2556339 (S.D.N.Y. Sept. 5, 2006)....................11

*United States v. Hubbell*,
167 F.3d 552 (D.C. Cir. 1999) ....................14

*United States v. Kaiser*,
609 F.3d 556 (2d Cir. 2010)....................19

*United States v. Marino*,
658 F.2d 1120 (6th Cir. 1981) ....................16

*United States v. Ospina*,
739 F.2d 448 (9th Cir. 1984) ....................15, 16

*United States v. Paulino*,
13 F.3d 20 (1st Cir. 1994)....................15

*United States v. Strother*,
49 F.3d 869 (2d Cir. 1995)....................19

*Yepez v. 44 Court St. LLC*,
2014 WL 345220 (E.D.N.Y. Jan. 30, 2014) ....................18

**OTHER AUTHORITIES**

Fed. R. Evid. 801(d)(2)(A)-(D).................... *passim*

Fed. R. Evid. 803(6)....................12, 19, 20

Fed. R. Evid. 803(8)....................12, 20

Fed. R. Evid. 807 ....................12, 21, 22

Fed. R. Evid. 104 ....................24

This motion concerns 177 of plaintiffs' trial exhibits—of which defendants produced 174 in discovery. The 177 exhibits appear to have been created by defendants' own employees in the ordinary course, and virtually all of them are on defendants' official forms, most of which even bear defendants' letterhead. Defendants have refused to agree that these exhibits are authentic and have also refused to agree that the documents are not inadmissible as hearsay.

The exhibits fall into five categories: (1) employment records [redacted]; (2) records reflecting [redacted]; (3) "martyr" files reflecting [redacted]; (4) documents from the PA's General Intelligence Service ("GIS") [redacted]; and (5) documents from the PA's Ministry of Finance reflecting [redacted][1] Defendants produced almost all of these documents after fact discovery closed.

These 177 exhibits are extremely important. They show not only that [redacted] *because they perpetrated the terrorist acts at issue here.* These actions constitute material support for terrorism and terrorist organizations under the Anti-Terrorism Act ("ATA") and also show that defendants approved and ratified the terrorists' actions and are liable under the doctrine of *respondeat superior*.

During the March 4 Conference, the Court instructed plaintiffs to seek stipulations on

[1] All 177 trial exhibits are attached as Exhibit A, divided into these five categories.

authenticity and foundation for the documents at issue in this motion.[2] On March 21, in accordance with the Court's instructions, plaintiffs sent defendants a letter asking that they stipulate that 175 of the exhibits are authentic and not hearsay. Ex. C.[3] (Plaintiffs had previously asked defendants to stipulate to the other two exhibits at issue, but defendants did not respond. Ex. D.) On March 31, defendants refused to stipulate to the authenticity or non-hearsay status of *any* of the exhibits. Ex. E.

Plaintiffs respectfully ask the Court to rule that these exhibits are authentic and not excludable hearsay. On their face, the documents appear to have been created in the ordinary course, and defendants actually produced them. The record leaves no question that the documents are admissions, business records, public records, or otherwise reliable. In the alternative, plaintiffs respectfully ask the Court to establish a procedure to resolve these issues before trial.

## I. DESCRIPTION OF THE PROPOSED EXHIBITS

During fact discovery, plaintiffs explicitly requested PA/PLO employment records, files reflecting benefits to incarcerated terrorists and their families, martyr files, and GIS files relating to the perpetrators in this case.[4] Defendants produced documents in response. Plaintiffs also propounded interrogatories. Exs. G.1, G.2. Defendants' interrogatory answers incorporated documents now listed as trial exhibits.[5] As noted above, the exhibits at issue fall into five categories.

---

[2] *See* Ex. B at 44-45 (Hearing Tr. (03/04/14), DE 439).

[3] Plaintiffs' letter referred to 168 defendant-produced exhibits, but covered 174 defendant-produced items (plus one exhibit that plaintiffs procured), because some exhibits contain multiple documents.

[4] Plaintiffs' requests are submitted as Ex. F.

[5] *See* Ex. G.3 to G.5.

### A. Employment Records

The first category of exhibits consists of documents produced by defendants relating to [redacted][6] The employment records show [redacted], [redacted]. A few examples suffice to show the Court the nature of the documents and how they relate to the case.

On January 22, 2002, PA Marine Police Officer Sa'id Ramadan opened fire with an M-16 rifle on a crowded street in Jerusalem, murdering two people and wounding over 45 others, including plaintiffs Shayna Gould and Shmuel Waldman. Ramadan was killed by Israeli law enforcement personnel during the attack; *five* [redacted] were tried and convicted for their roles in organizing the attack, including Nasser Aweis, [redacted] (Exs. 3, 112), Ahmed Barghouti, [redacted] (Ex. 36C, 113), and Majed al-Masri, [redacted] (Ex. 36B). The exhibits at issue in this motion show that Nasser Aweis [redacted] (Exs. 91, 112)), that Al-Masri [redacted] (Exs. 36B, 106, 121)), and that the PA [redacted] (Ex. 123).

On March 21, 2002, PA police officer Mohammed Hashaika blew himself up on a crowded street in Jerusalem, killing three people and wounding 81 others, including plaintiffs Alan and Yehonathon Bauer (who was then seven years old and suffered a severe brain injury).

[6] Exs. 1-4, 7-10; 25; 36B; 36C (02:008961-64 only); 36D; 43-44; 46-49; 55, 58-59; 62; 88-91; 94-95; 103-116; 118-23; 125-28; 891-92; and 895-97.



Hashaika did not act alone. Abdel Karim Aweis, [redacted] (Ex. 2), was convicted for his role in the planning and execution of the March 21 bombing. *See* Pls. Ex. 377.[7] In his statement before sentencing, Abdel Karim Aweis said: "I am proud of the acts that I have committed and there is a just reason for my having done them….If I could have murdered more Jews, I would not hesitate." Pls. Ex. 376 (P 5: 43). The exhibits at issue in this motion show that Abdel Karim Aweis [redacted] Ex. 58.

On January 29, 2004, PA Police Officer Ali Ja'ara blew himself up on a crowded bus in Jerusalem, killing eleven (including Scott Goldberg) and wounding 45. The mastermind of the attack, the suicide bomber, and two others involved in executing the attack were [redacted] including Abdul Rahman Yousef Abdul Rahman Maqdad, [redacted] *See* Ex. I, pp. 58-73 (Shrenzel Report); *see also* Ex. 111. Maqdad admitted his role in the attack in open court with his lawyer present. Pls. Ex. 295. In his sentencing statement to the court, Maqdad said: "I admitted to all of the individuals whom I killed in Israel, but I am not guilty, because that is my right: a response to the tens of thousands whom you have killed for no reason, only because you think that you are the best in the world and if you continue this method in your lives, you shall not hear or feel peace or security…." *Id.* (P 2: 315). Exhibits at issue in this motion show that [redacted] (Ex. 116), that [redacted] (Ex. 119), and that [redacted] (Ex. 47).

[7] English translations of plaintiffs' proposed trial exhibits—which are not exhibits at issue in this motion, but are discussed herein (referred to as Pls. Exs. 295, 321, 324, 376-77, 426, and 464)—are attached as Ex. H.

Thus, the employment records show that defendants [redacted]. Defendants have argued to the Court that such employment records must be kept confidential.

**B. "Ministry of Detainees" Files Reflecting [redacted]**

The second category of exhibits at issue consists of documents produced by the PA's "Ministry of Detainees" (bearing its letterhead) reflecting [redacted].[8] [redacted] "Detainees' and Released Detainees' Law," under which the PA treats convicted terrorists as civil servants, paying them salaries and other benefits. Ex. J (Eviatar Report, Part Five). (These payments constitute approximately 2.5% of the PA's budget for salaries. Ex. K, p. 2.) A few examples suffice to show the Court the nature of the documents and how they relate to the case.

On July 31, 2002, Hamas operatives detonated a massive bomb at lunchtime in the Frank Sinatra Cafeteria on the campus of the Hebrew University in Jerusalem. The explosion killed nine people, including Benjamin Blutstein, Diane Carter, Janis Coulter and David Gritz, and injured 81 others. *See* Pls. Ex. 464 (P 7: 11). Hamas operative Abdullah Ghaleb al-Jamal Barghouti (*a/k/a* "the Engineer") manufactured the bomb and delivered it to Hamas coconspirators. Hamas was, and is, a designated terrorist organization. Following a killing spree in which Abdullah Barghouti's bombs killed sixty-six people, he was apprehended, tried, convicted, and sentenced to sixty-six life sentences. Pls. Ex. 426 (P 7: 114). Exhibits at issue in this motion show that the PA [redacted]

[8] Exs. 18; 26; 36C (02:008965-66 only); 36E; 37-42; 50-54; 61; 63-67; 69-73; 75-76; 83-87; 96; 117; and 893-94.

[redacted]. Exs. 73, 893.

On January 27, 2002, Fatah activist Wafa Idris blew herself up on a crowded street in Jerusalem, killing one and injuring 150, including members of the Sokolow family. Idris was the first female Palestinian suicide bomber and became a national hero among Palestinians. *See* Ex. L, pp. 39-45 (Marcus Report). Idris did not act alone. Among others, evidence implicated an informant for PA Military Intelligence named Munzar Noor, who was convicted of murder for his role in the bombing and is serving a life sentence. Pls. Exs. 321, 324. Exhibits at issue in this motion state that Noor was imprisoned [redacted] and show that [redacted] Exs. 18, 26.

The Ministry of Detainees files at issue in this motion also show that [redacted] Exs. 75 (Mohamed Mousleh), 96 (Majid Al-Masri).

Thus, in short, the Ministry of Detainees files show that defendants [redacted] precisely because they carried out acts of terror against innocent civilians. Defendants have argued to the Court that such "Ministry of Detainees" records must be kept confidential.

### C. "Martyr" Files Reflecting [redacted]

The third category of exhibits at issue consists of documents called "Martyr Files."[9] The PA provides the families of suicide terrorists and others who died "resisting" Israel ("martyrs")

[9] Exs. 16-17; 19; 21-24; 27-29; 36A; 45; 60; 92-93; 317A; 326; and 890. Some files comprise more than one exhibit because of the way defendants produced them.



with cash payments and other benefits.[10] [redacted] the "Institute for the Families of the *Shahid* Martyrs and the Wounded," which the PLO established in 1965 and which the PA funds and administers today. This is a major commitment for the PA; martyr payments constitute approximately 3.5% of the PA's entire budget for salaries. *See* Ex. K, p. 2. "Martyr Files" are on the letterheads of both the PA and the Palestinian Liberation Organization ("PLO"). [redacted]

- [redacted] Exs. 36A, 60.
- [redacted] Ex. 17.
- [redacted] Exs. 23-24, 27, 93.
- [redacted] Exs. 16, 19, 21.
- [redacted] Exs. 22, 28-29.
- [redacted] Exs. 317A and 326.

A few examples make clear why the jury needs to see these files. [redacted] file, at issue in this motion, states that [redacted]

[10] The history and operation of the "martyr" program is described in detail in Part Five of the Eviatar Report (Ex. J).



[redacted] Exs. 36A, 60. The PA granted [redacted] and [redacted]. *Id*.

[redacted] file (also at issue in this motion) states that [redacted] Ex. 17. The PA granted [redacted] and [redacted]. *Id.*.

[redacted] martyr file (also at issue in this motion) states that [redacted] Ex. 23. The PA [redacted]. *Id.* In addition, [redacted]. *See* Exs. 23, 93.

Thus, the Martyr Files show that defendants [redacted] precisely *because* they carried out terrorist attacks in the name of performing their national duties. Defendants have argued to the Court that the "Martyr Files" must be kept confidential.

**D. GIS Documents**

The fourth category of exhibits at issue consists of documents that defendants produced



from the files of the PA's GIS.[11] The vast majority of these documents They reflect

For example, a GIS report concerning (*see supra* p. 3), which is at issue in this motion, states that Ex. 140.

A GIS report concerning (also at issue in this motion) states that Ex. 153.

A GIS report, dated February 10, 2002, to Yasser Arafat concerning Mohamed Hashaika and Nasser Shawish, states that the two had been arrested by the PA, that Hashaika "wanted to perpetrate a suicide operation," for which Shawish had "recruited…[and] equipped him," that the two were being interrogated, and that "[t]he matter is at your Excellency's [*i.e.*, Arafat's] discretion." Ex. 1060. (Hashaika and Shawish carried out a suicide bombing a few weeks later, on March 21, 2002. *See supra* pp. 7-8)

The GIS files show that defendants knew about the terrorist attacks described in the documents; in some cases, that defendants knew in advance about them; and that defendants

[11] Exs. 129-43, 145-60; 162-69; 1028-34; 1037-41; and 1060.

approved of the terrorists' actions. Defendants have argued to the Court that the GIS documents must be kept confidential.

### E. "Ministry of Finance" Account Statements

The final category of exhibits at issue consists of documents that defendants produced from the PA's Ministry of Finance reflecting [REDACTED] Exhibits 20 and 173 demonstrate that the PA [REDACTED] which was implicated in a number of the attacks. Exhibit 20 appears on the letterhead of the "Ministry of Finance, Palestine," and Exhibit 173 is similar in substance. Both records of payments were produced by defendants in this litigation.

## II. THE PROPOSED TRIAL EXHIBITS ARE AUTHENTIC

Defendants originally objected to the authenticity of 48 exhibits, even though defendants produced the documents themselves.[12] However, defendants' March 31 letter states that defendants are refusing to stipulate to authenticity of *any* of the 177 exhibits on the ground that plaintiffs must first state "what they believe each document purports to be." Ex. E. This objection is absurd. Plaintiffs identified the documents by bates and exhibit number. Plaintiffs' expert reports discuss the documents in detail. Plaintiffs even provided defendants with actual copies of the documents, bearing exhibit numbers. Defendants' position that they cannot stipulate to the authenticity of their own documents shows that they are desperate to keep these exhibits away from the jury, even as defendants continue to insist that these very same exhibits remain "confidential."

Defendants' position is meritless. When a party produces documents from its own files, those documents are deemed authentic unless the producing party can show why they are not.

---

[12] Exs. 11A-C; 15; 19; 22-24; 26; 36A-E; 38; 43; 49; 60-61; 63-67; 69-72; 75-76; 83-84; 86-87; 92; 94-96; 103; 110; 115; 117-18; 123; 128; 164; and 893-94. *See* DE 419, 456.

Defendants have never attempted to make such a showing—nor could they since they created the documents. *E.g.*, *United States Info. Sys., Inc. v. Int'l Brotherhood. of Elec. Workers Local Union No. 3*, 2006 WL 2136249, at *6 (S.D.N.Y. Aug. 1, 2006) ("The plaintiffs' argument that the process of discovery provides an implicit guarantee of authenticity is well-founded…. A party producing a document is in a better position to know whether the document is authentic than the party seeking it in discovery. It is disingenuous for the producing party to dispute the document's authentication without proffering some basis for questioning it."), *adhered to on recons.*, 2006 WL 2556339 (S.D.N.Y. Sept. 5, 2006); *Comm. Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003) ("It is disingenuous and wasteful for [a party] to object that its own documents are not authenticated, and thus inadmissible at trial and on summary judgment. The appearance of these documents and the circumstances surrounding this motion—most importantly the fact that the [producing party] is in the best position to know if they are authentic and that they have never claimed that they are not—show that these are authentic documents."); *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) ("[T]he act of production implicitly authenticated the documents.").[13]

The Court should also deem authentic the three PA-created documents that plaintiffs located themselves. Exs. 233, 317A, 326. Defendants did not object to the authenticity of Ex. 326 in the objections that they filed with the Court. *See* DE 419, 456. Exhibit 317A, which

[13] Numerous other decisions have reached the same result. *See, e.g.*, *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors*, 46 F. Supp. 2d 769, 772 (N.D. Ill. 1999) ("The case law in this circuit is clear: documents produced in response to discovery are self-authenticating."); *Nabisco v. Warner-Lambert Co.*, 32 F. Supp. 2d 690, 695 (S.D.N.Y. 1999) ("The court finds that the documents prepared by Nabisco and listed as exhibits by Warner-Lambert are sufficiently reliable, and thus authentic, given that Nabisco produced most of these documents during discovery and included them on its proposed exhibit list that is attached to the joint pre-trial order."), *aff'd sub nom. Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000); *Bieda v. JCPenney Commc'ns, Inc.*, 1995 WL 437689, at *1 n.2 (S.D.N.Y. July 25, 1995) ("In addition, the mere fact that Defendants here produced most of the documents in question is at least circumstantial, if not conclusive, evidence of authenticity.").

is part of the martyr file for Fawzi Murar, is authentic for four reasons. First, it is on PA letterhead—a fact which should be conclusive. Second, defendants produced it in another litigation. Third, it is similar to the other martyr files produced by defendants. Fourth, defendants have pointed to no evidence that the document is inauthentic.

Exhibit 233, a PA Preventative Security report, demonstrates that the GIS was involved in the Wafa Idris affair and that a high-ranking GIS official, Tawfiq Tirawi, attempted to cover-up Idris' identity as a suicide bomber. The report is on PA Preventative Security letterhead. Plaintiffs sought information in their interrogatories, which required the defendants to identify the Preventative Security officers who authored the handwritten notations on the document, and defendants provided that information, thereby confirming that the document is authentic.[14]

## III. THE PROPOSED TRIAL EXHIBITS ARE NOT HEARSAY

Defendants object to all 177 exhibits on the grounds of foundation and hearsay. These documents qualify—both on their face and based on extrinsic evidence in the record—as statements by an opposing party under Fed. R. Evid. 801(d)(2); as business records under Fed. R. Evid. 803(6); and as public records under Fed. R. Evid. 803(8). The documents also fall within the residual exception to the rule against hearsay under Fed. R. Evid. 807. Any one of these four bases will suffice to overcome defendants' hearsay objections.

### A. The Exhibits Are Statements Of An Opposing Party Under Rule 801(d)(2)

Since defendants both created and produced these exhibits, they are not hearsay because they are statements by an opposing party under Fed. R. Evid. 801(d). Rule 801(d) reads, in part:

> (2) **An Opposing Party's Statement**. The statement is offered against an opposing party and:

[14] *See* Sokolow Family Pls.' First Set of Interrogs., dated Sept. 19, 2011 (Ex. G.2); Defs.' Objections and Resps. to Sokolow Family Pls.' First Set of Interrogs., dated Oct. 24, 2011 (Ex. G.3).

> (A) was made by the party in an individual or representative capacity;
>
> (B) is one the party manifested that it adopted or believed to be true;
>
> (C) was made by a person whom the party authorized to make a statement on the subject; [or]
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed….

A finding that a document qualifies under any subparagraph resolves the objection. The rule also provides that "[t]he statement must be considered but does not by itself establish the declarant's authority under (C); [or] the existence or scope of the relationship under (D)." *Id.* Thus, courts can find that a document is not hearsay under Subparts (A) and (B) based solely on a review of the face of the document. We discuss each subpart in turn.

**1. Subpart (A): The Exhibits Are Statements Made By Defendants In A Representative Capacity**

Documents produced by defendants in response to discovery requests are, by definition, "statements" by the defendants. Moreover, since the documents had to be prepared by defendants' employees or other representatives, all of the statements in them were made in a representative capacity, as required by Subpart (A). They are therefore not hearsay.

A number of courts have reached this result. In *Hannon v. Kiwi Servs.,* 2011 WL 7052795, at *2 (N.D. Tex. 2011), for example, the court ruled that documents produced by the defendant were admissible under Subpart (A): "Defendant's responses to [plaintiff's] requests for production, including its written warning, tabulations of employment and compensation data for its black and white employees, its termination notice, the email and letter from its employee [ ], and the commission forfeit form are either admissions of a party opponent and therefore not hearsay…or [they] fall in the "business records" exception…." *E.g., Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1092, n.11 (C.D. Cal. 2007) ("[d]ocuments produced in

response to discovery requests…are self-authenticating and constitute the admissions of a party opponent" and referencing Fed. R. Evid. 802(d)(2)(A) as supporting authority); *Architectural Iron Workers*, 47 F. Supp. 2d at 772 (whether created in an individual or representative capacity, "the documents produced by Defendants contain Defendants' own statements and are admissions, not hearsay").

**2. Subpart (B): Defendants Adopted/Manifested Their Belief That The Information Contained In The Exhibits Is True**

The exhibits are also not hearsay under Subpart (B) because, by producing the documents, defendants adopted and/or manifested their belief as to the truth of the statements contained in them. For purposes of this subpart, "[a]doption or acquiescence may be manifested in any appropriate manner….The decision in each case calls for an evaluation in terms of probable human behavior." Advisory Committee Note to Fed. R. Evid. 801(d)(2)(B). As with Subpart (A), there is no extrinsic evidence requirement, and a finding under this subpart alone resolves the hearsay objection.

As discussed above, by producing documents that were prepared by their employees, defendants represented that they contain the information that should be contained in documents such as martyr files, benefits records, employment records, security investigation files, and records of payments to ████ Thus, defendants adopted the statements made by their employees in the documents and manifested their belief in the truth of those statements. In an analogous context, the courts have held that producing documents pursuant to a subpoena adopts them. *See, e.g.*, *United States v. Hubbell*, 167 F.3d 552, 567-68 (D.C. Cir. 1999) ("[T]he act of production [of documents pursuant to a subpoena] communicates at least four different statements. It testifies to the fact that: i) documents responsive to a given subpoena exist; ii) they are in the possession or control of the subpoenaed party; iii) the documents provided in

response to the subpoena are authentic; and iv) the responding party believes that the documents produced are those described in the subpoena."). In addition, defendants' demand that these documents be accorded confidential treatment shows that they have adopted them.

Defendants also responded to plaintiffs' interrogatories by referencing—and thus adopting—statements contained in certain of the exhibits.[15] Accordingly, defendants cannot now claim that those statements constitute hearsay. *See Int'l Bus. Machs. Corp. v. BGC Partners, Inc.*, 2013 WL 1775367, at *8 n.8 (S.D.N.Y. Apr. 25, 2013) ("If a party relies upon an opposing party's answers to interrogatories, the answers are admissible as statements of a party opponent….").

In addition, since defendants relied on [REDACTED] to pay approximately 6% of the PA's budget for salaries, they must believe that those facts are true. A similar situation arose in *United States v. Ospina*, 739 F.2d 448, 451 (9th Cir. 1984), in which the court held that the fact that the defendant acted on instructions written on the documents at issue was sufficient to show that it adopted them within the meaning of Subpart (B). And in *Fed. Trade Comm'n. v. Hughes*, 710 F. Supp. 1520, 1523 (N.D. Tex. 1989), the court found that defendant's production of his financial statement and a written description of its tax return "manifest[ed] his adoption of their truth" (referencing Fed. R. Evid. 801(d)(2)(B)).

Moreover, retention of documents in a party's possession shows its adoption or belief in the truth of the information contained therein. *See*, *e.g.*, *United States v. Paulino*, 13 F.3d 20, 24 (1st Cir. 1994) (for adoptive admission, requiring possession of the document, as well as that the

[15] *See*, *e.g.*, Trial Exs. 4, 6, 11A-C, 13 produced in response to Sokolow Family Pls.' First Set of Interrogs. (Ex. G.4); Trial Ex. 2, 9, 14 produced in response to Bauer Pls.' First Set of Interrogs. (Ex. G.5).

"surrounding circumstances tie the possessor and the document together in some meaningful way"); *Ospina*, 739 F.2d at 451 (possession of documents, and action taken pursuant to them, was sufficient basis for finding that party had adopted documents as admissions); *United States v. Marino*, 658 F.2d 1120, 1124-1125 (6th Cir. 1981) (defendant's possession of documents served as an adoptive admission of their contents).

Although not produced by defendants, similar reasoning applies to the Martyr Files that plaintiffs obtained independently—Exs. 317A and 326. Since, for the reasons discussed above, these are authentic copies of documents created by defendants' employees, they are necessarily not hearsay under Subpart (B).

This is also true for the exhibits referenced by defendants in their interrogatory responses. In *In re Japanese Electronic Prods. Antitrust Litig.*, 723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds, Matushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), a party conceded that its interrogatory responses were not hearsay under Subparts (A) and (B), but argued that the documents it referred to in those responses remained hearsay. The court rejected this claim, stating that "they have adopted the referenced documents as answers, and the documents are properly admissible under Rule 801(d)(2)(B)."

**3. Subpart (C): The Exhibits Are Statements Made By Persons Authorized To Make A Statement On The Subject**

Subpart (C) of Rule 801(d)(2), which provides that a statement is not hearsay if it was "made by a party whom the party authorized to make a statement on the subject," involves a very similar analysis. This subpart applies to statements made by persons with "speaking authority," and the relevant inquiry is whether the person making the statement had the authority to speak on behalf of the party. *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 260 (S.D.N.Y. 2003) (citing 30B Charles A. Wright & Arthur R. Miller,

*Federal Practice and Procedure Evidence*, § 7702 (Interim ed. 2002)). The authority may be impliedly bestowed. *Id.*

As noted above, although the documents themselves must be considered in determining whether their drafters were authorized to write what they did, Subpart (C) also requires the Court to look to evidence beyond the face of the document. That requirement is easily satisfied by the act of production. Again, by seeking martyr files, benefits documents, employment records, investigative files, and records of payments [REDACTED], plaintiffs were seeking documents containing certain kinds of information. By producing these documents, and by referring to them in their interrogatory responses, defendants necessarily confirmed that their employees who created the documents were authorized to do so—and thus were authorized to speak.

Further extrinsic evidence is provided by the expert reports of Alon Eviatar (Ex. J) and Israel Shrenzel (Ex. I), former Israeli security officials who are well versed in the defendants' terrorist operations. The experts' detailed description of the exhibits puts them in context and makes it obvious that the employees who created them were authorized to make the statements contained therein. Finally, defendants' insistence that the documents remain confidential is evidence that the documents contain authorized statements. Why else would defendants demand confidential treatment?

#### 4. Subpart (D): The Exhibits Contain Statements Made By The Party's Agent Or Employee On A Matter Within the Scope Of That Relationship And While it Existed

Finally, the exhibits qualify under Subpart (D), which provides that a statement is not hearsay if it was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." This rule requires a showing that (1) an agency relationship existed; (2) the statement was made during the course of that relationship; and (3) the statement relates to a matter within the scope of agency. *Pappas v. Middle Earth Condo. Ass'n.*, 963 F.2d

534, 537 (2d Cir. 1992). The declarant need not have been specifically authorized to make the statement; all that is required is that the statement involve the subject matter of the agent's employment. *Id.* at 537-38. Moreover, "the admission into evidence of such statements is not subject to many of the 'technical prerequisites of other evidentiary rules' and 'should be granted freely.'" *Smith v. Pathmark Stores, Inc.*, 485 F. Supp. 2d 235, 238 (E.D.N.Y. 2007) (quoting *Pappas*, 963 F.2d at 537).

Here, again, not only the face of the exhibits themselves—including the fact that they are official forms—but also the act of production, the Eviatar and Shrenzel reports, and defendants' insistence on confidentiality, easily satisfy these requirements. All of these documents were prepared by defendants' employees whose duties were to prepare them; indeed, there is no other way they could have been prepared. Since all of the statements were made by agents in the scope of their duties, Subpart (D) applies.

A number of decisions have admitted documents produced by an opposing party under this subpart in analogous circumstances. *See Equal Employment Opportunity Comm'n v. W. Customer Mgmt. Grp., LLC*, 899 F. Supp. 2d 1241, 1250 (N.D. Fla. 2012) (after finding that defendants' production itself authenticated the official forms, the court concluded: "The interview notes and candidate disposition forms were written by [defendant's] own interviewers, who made hiring decisions on [defendant's] behalf, and therefore, they are either business records…or are admissible as statements of a party opponent, made by an agent within the scope of that relationship, and are not hearsay."); *Corral v. Chicago Faucet Co.*, 2000 WL 628981, at *3 (N.D. Ill. Mar. 9, 2000) (defendant's production of a memorandum in discovery was "perhaps enough to overcome a hearsay objection via either Fed. R. Evid. 803(6)…or Fed. R. Evid. 801(d)(2)(D)"); *accord Yepez v. 44 Court St. LLC*, 2014 WL 345220, at *2 (E.D.N.Y. Jan. 30,

2014) (clothing and name tag worn by the declarant were sufficient to identify the declarant as the defendant's employee and agent).

### B. Alternatively, the Exhibits Constitute Business Records And/Or Public Records

Under Fed. R. Evid. 803(6), a document will not be excluded as hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness.

"The primary purpose of these requirements is to ensure that the creator of the document had 'no motive to falsify' it." *JPMorgan Chase Bank, N.A. v. Yuen*, 2013 WL 2473013, at *6 (S.D.N.Y. June 3, 2013) (quoting *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)). "[T]he 'trustworthiness' of the document is the 'principal precondition to admissibility.'" *Id.* (quoting *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995)); *see Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995). Thus, "[t]he Court of Appeals has adopted a 'generous view' of Rule 803(6), 'construing it to favor the admission of evidence if it has any probative value at all.'" *Id.* (quoting *Strother*, 49 F.3d at 874).

These exhibits are textbook examples of "business records" under Rule 803(6). They are on official forms that bear the letterhead of various PA/PLO government agencies and could only have been prepared by defendants' employees in the regular course of their duties. Defendants

cannot credibly contend otherwise. In addition, the large number of documents, and the similarities in form between them, shows that it was defendants' regular practice to prepare such documents. Nor, for the reasons discussed above, is there any reason to question their trustworthiness.

Courts have held that the act of producing similar documents in discovery is sufficient to satisfy Rule 803(6). *See, e.g.*, *John Paul Mitchell Sys.*, 106 F. Supp. 2d at 472 ("[The documents are admissible as business records of [the company] or, in the alternative, pursuant to the residual hearsay exception. [ ] The act of production indicates [defendant's] belief that the documents record the shipment of the Paul Mitchell products to Europe and that the documents were maintained in the ordinary course of [the company's] business.") (citation omitted); *accord Hannon*, 2011 WL 7052795, at *2; *Corral*, 2000 WL 628981, at *3.

These documents also qualify for the public records exception to the hearsay rule under Fed. R. Evid. 803(8), since many of them pertain to PA/PLO obligations pursuant to statute [REDACTED] (*see* Ex. J, Eviatar Report, Parts IV-V). A document is a public record if:

> (A) it sets out:
>
> (i) the office's activities;
>
> (ii) a matter observed while under a legal duty to report…; or
>
> (iii) in a civil case…, factual findings from a legally authorized investigation; and
>
> (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

As noted, the vast majority of these documents are official government forms that are filled out by PA employees for the purpose of fulfilling their statutory obligations. Nor is there any reason to doubt the trustworthiness of these documents—which were produced by

defendants from their own files. In similar circumstances, courts have held that government forms are public records. *See, e.g.*, *Davis v. City of New York*, 959 F. Supp. 2d 324, 352 (S.D.N.Y. 2013) ("Based on the record at this stage, I am inclined to allow the admission of the decline to prosecute forms in this case…, based either on the public records exception under Federal Rule of Evidence 803(8)(A)(iii), or on the residual hearsay exception under Rule 807.") (footnotes omitted), *further consideration of ruling after briefing*, 959 F. Supp. 2d 427, 430-31 (S.D.N.Y. 2013) (finding the "DP" forms admissible subject to certain limitations based on the facts of the case); *Murphy v. Metro. Transp. Auth.*, 2009 WL 1044604, at *1-3 (S.D.N.Y. Apr. 14, 2009) (finding that the following documents, among others, were properly admissible under Fed. R. Evid. 803(8): incident reports; Internal Affairs files; IAB Custody Injury forms; IAB files; and records setting forth plaintiff's earnings, overtime, attendance, and personnel records); *Fed. Trade Comm'n v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 305 n.25 (S.D.N.Y. 2008) (finding public records exception applied based on face of document alone).

### C. Alternatively, the Exhibits Qualify Under The Residual Hearsay Exception

Rule 807 provides, in part:

> (a) **In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> > (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> >
> > (2) it is offered as evidence of a material fact;
> >
> > (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> >
> > (4) admitting it will best serve the purposes of these rules and the interests of justice.

These requirements are met here. *First*, there is no reason to question the trustworthiness

of these official government documents, which were all prepared by defendants' employees in the course of their regular duties.

*Second*, they are all offered as evidence of material facts: that the attacks in this case were performed by defendants' security employees, that defendants supported and ratified their employees' actions by [REDACTED] [REDACTED], that the GIS was well aware of the activities of many of these individuals and their plans and not only failed to stop them, but also determined that they were of [REDACTED] and that the PA provided financial support to [REDACTED] which was implicated in a number of the attacks at issue.

*Third*, there is no evidence more probative than the exhibits with respect to these facts. Nothing could be more probative of [REDACTED] [REDACTED]. Indeed, it is difficult to conceive of any other evidence plaintiffs could obtain, much less obtain with reasonable effort, to [REDACTED]. Similarly, defendants' employment records are the best way to show that the perpetrators were government security employees.

*Fourth*, since these exhibits are, at the very least, the kinds of documents that should not be excluded under other hearsay exceptions, admitting them under Rule 807 serves the purposes of the hearsay rules. In addition, given the overriding public policy behind the ATA to compensate the victims of terrorism, admitting these documents serves the interest of justice.

Judge Stein reached a similar result in *John Paul Mitchell Sys.*, 106 F. Supp. 2d at 472. Although he admitted documents produced by the opposing party as business records, he found that they were also admissible pursuant to the residual hearsay exception: "The act of production indicates [defendant's] belief that the documents record the shipment of the Paul Mitchell

products to Europe and that the documents were maintained in the ordinary course of [the company's] business."). In addition, he found that the documents were sufficiently reliable because of (1) the appearance of the documents; and (2) the fact that the defendant produced the requested documents "against [its] interest in the litigation." *Id.* at 473.

**D. Defendants' Contention That Portions Of Some Of The Documents Were Produced By Third Parties Is Unavailing**

Defendants' response to plaintiffs' letter asserted that they could not stipulate to foundation because "some of the documents appear on their face to have been created by third parties." This claim is a red herring. There are such documents in the martyr files and other [REDACTED]. They were obviously collected by defendants to confirm that [REDACTED] [REDACTED]. For example, the files contain documents such as [REDACTED] [REDACTED] [REDACTED] [REDACTED].

Plaintiffs have not asked defendants to stipulate to the truth of the matter asserted in these documents, and, in any event, most of these are offered simply to show that defendants were being careful to ensure that [REDACTED]. Nothing in these documents has any effect on the fact that the official government forms may not be excluded as hearsay.

Similarly, since defendants have effectively conceded that all of the documents came from their files, there is no issue regarding authenticity for third-party materials. The point of these documents is that defendants collected them in order to [REDACTED] [REDACTED].

## IV. IN THE ALTERNATIVE, THIS COURT SHOULD ESTABLISH A PROCEDURE TO DETERMINE THE ADMISSIBILITY OF THE EXHIBITS BEFORE TRIAL

Under Rule 104, questions of foundation and authenticity are for the Court. In its March 25, 2014, Order, the Court stated: "A reasonable process for determining the admissibility of all trial exhibits will be available prior to trial." DE 447, Ex. M. For the reasons discussed above, it is unnecessary to create such a process because, based on the undisputed facts, all of the exhibits at issue are authentic and are not hearsay.

In *Klieman v. Palestinian Authority*, as here, the Court did not extend discovery to permit Rule 30(b)(6) depositions to authenticate and lay the foundation for documents produced by the defendants. However, the Court ordered the PA and the PLO to show why the documents should not be admitted:

> I am not going to permit the defendants to play dog in the manger and object to the authenticity or hearsay nature of these documents while denying plaintiffs the means of overcoming those objections through discovery. Thus, I will deem the documents…to be authentic and admissible unless defendants show cause within ten days why they are not.

*Id.*, Civil Action No. 04-1173 (PLF) (JMF) (D.D.C. Feb. 11, 2013), DE No. 190, p.7 (Ex. N).

As in *Klieman*, if defendants actually have specific facts with which to dispute the authenticity or foundation of any of these exhibits, they should be put to their proof now, well in advance of trial. If defendants make a plausible showing that there is a dispute with respect to specific documents, the Court should require them to produce a witness at a pretrial hearing to support their claim.

## CONCLUSION

This Court should rule that the 177 proposed trial exhibits are authentic and not hearsay. In the alternative, this Court should establish a process by which plaintiffs can establish that these exhibits are authentic and not hearsay prior to trial.

Dated: New York, New York
April 9, 2014

**ARNOLD & PORTER LLP**

By:_______________________

Kent A. Yalowitz
*KENT.YALOWITZ@APORTER.COM*
Philip W. Horton
*PHILIP.HORTON@APORTER.COM*
Lucy S. McMillan
*LUCY.MCMILLAN@APORTER.COM*
Ken L. Hashimoto
*KEN.HASHIMOTO@APORTER.COM*
Carmela T. Romeo
*CARMELA.ROMEO@APORTER.COM*
Tal R. Machnes
*TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York 10022
(212) 715-1000