# EXHIBIT N

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF ESTHER KLIEMAN, *et al.*,

    Plaintiffs,

        v.                           Civil No. 04-1173 (PLF/JMF)

THE PALESTINIAN AUTHORITY, *et al.*,

    Defendants.

## MEMORANDUM ORDER

This case involves an effort by the survivors and heirs of Esther Klieman, an American citizen, to recover damages from the defendants who allegedly aided and abetted, financially and otherwise, the terrorist group that killed her. This case is in its eighth year of active litigation and, unfortunately, proceedings have now become enmeshed in the Israeli courts. This has occurred because this court has issued letters of requests at the plaintiffs' behest, letters that call for the taking of depositions in Israel, and the production of information by Israeli government agencies. However, the deadline for fact discovery in this case, a deadline which has been extended numerous times, was December 31, 2012. Order [#174] at 1. Therefore, plaintiffs have now filed Plaintiffs' Motion to Extend the Deadline for the Completion of Pending Fact Discovery Matters [#186].

The following chart summarizes those letters of request, listing the witness' name, relevance to the case, anticipated testimony, and the parties' and the court's understanding of the status of the letters of request within the Israeli courts or government agencies:

|   | Name | Relevance to the Case | Anticipated Testimony | Status of Request |
|---|------|----------------------|----------------------|-------------------|
| 1 | Fuad Shabaki | Financier | Palestine Authority ("PA") and Palestine Liberation Organization ("PLO") financing of Al Aqsa | No information given by the parties. |
| 2 | Marwan Barghouti | Head of Al Aqsa | PA's and PLO's financing of Al Aqsa | Deposition held on January 25, 2012, but Barghouti refused to answer any questions. Jerusalem Magistrate's Court declined to issue order compelling the testimony. |
| 3 | Matityahu Kalman | Journalist who has reported on the Second Intifada | PA's and PLO's financing of Al Aqsa | Deposition was approved by Israeli Directorate of Courts ("IDC") but journalist moved to quash and Judge Schneider of the Jerusalem District Court declined to compel his testimony |
| 4 | Khaled Toameh | Journalist who has reported on the Second Intifada | PA's and PLO's financing of Al Aqsa | Deposition was approved by Israeli Directorate of Courts ("IDC") but journalist moved to quash and Judge Schneider of the Jerusalem District Court declined to compel his testimony |
| 5 | Zafer Rimawi | Recruited Tamer Rimawi into Al Aqsa | Recruitment of Tamer Rimawi into Al Aqsa | Letter issued 9/10/12 [#179]. Deposition originally scheduled for 12/19-20/12 but cancelled because defendants identified potentially responsive documents to plaintiffs' previous requests which have not yet been produced and which may be relevant to the deposition. The parties anticipate completing these depositions in February 2013. |
| 6 | Yitzhak Ya'akoboff | Israeli police officer who investigated death of Klieman | Tamer Rimawi's statement that killing Klieman was an Al Aqsa operation | Letter issued 9/27/12 [#182] but still awaiting approval by IDC. |

2

| 7 | Annan Hashash | Directly involved in the attack on Klieman | Circumstances of the attack and that it was sponsored by Al Aqsa | Letter issued 9/10/12 [#180]. Deposition originally scheduled for 12/19-20/12 but cancelled because defendants identified potentially responsive documents to plaintiffs' previous requests which have not yet been produced and which may be relevant to the deposition. The parties anticipate completing these depositions in February 2013. |
| --- | --- | --- | --- | --- |
| 8 | Custodian of Records for 1) the Israeli Defense Forces, 2) the Israeli Ministry of Justice, 3) the Israeli Ministry of Defense, and 4) the Intelligence and Terrorism Information Center | See Plaintiffs' Praecipe Responding to DE 125 [#126] | Production and authentication of government documents | Letter issued March 2011 but still awaiting approval by IDC. |

As the above chart indicates, the parties are agreed that some of the depositions should be taken and anticipate setting dates for them, which will necessarily fall after the December 31, 2012 deadline. Additionally, the parties hope that the documents sought from the Israeli government with reference to police officer Ya'akoboff's testimony will soon be produced and that the deposition could be scheduled and conducted by February 15, 2013. Thus, defendants agree that the discovery deadline should be extended to February 15, 2013, to allow for the depositions of 1) Z. Rimawi, 2) Hashash, and 3) Ya'akoboff.

The parties part company, however, with reference to the remaining depositions listed in the chart. As the chart indicates, the remaining persons to be deposed are: 1) a financier of the PA and Al Aqsa (Shabaki), 2) two journalists (Kalman and Toameh), 3) an actual participant in

3

the murder of Klieman (Barghouti), and 4) custodians of records for four Israeli government agencies.

I.   Shabaki

The parties have not provided any indication as to the status of efforts to depose Shabaki.

II.  Kalman and Toameh

The letter of request issued by this court sought both the journalists' testimony, and their notes pertaining to the interviews they conducted.  See [#128-3].  The Jerusalem District Court, however, has now returned the letter of request to this court because the presiding judge, Judge Anna Schneider, accepted the journalists' argument that, in its present form, the letter of request violated Israeli law.  See [#186-1].

The parties differ radically as to the meaning of this ruling and its significance as to whether the discovery deadline should be extended.  Defendants' view is that Judge Schneider's conclusion that "the Secretariat will transfer the file, on all of its requests and statements of claim, to the courts' administration for its transferring to the Federal Court in the United States" ([#186-1] at 6) is a final denial of the request and there the matter ends. <u>Defendants' Opposition to Plaintiffs' "Motion to Extend the Deadline for the Completion of Pending Fact Discovery Matters" (DE 186)</u> [#187] at 11-12.  Plaintiffs, on the other hand, read the decision to mean that "Judge Schneider ruled that the IDC should seek to obtain further clarification from this Court as to whether the Letters of Request which were issued by the Court could be narrowed by the Israeli court, to address the objections lodged by the journalists." <u>Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Extend the Deadline for the Completion of Fact Discovery</u> [#188] at 9.  Assuming that plaintiffs are right, I am hard pressed to understand how this court can overcome the objections lodged by the journalists.

4

First, at defendants' behest, I inserted the request for documents into the letter of request and the journalists objected to the production of those documents. I cannot, however, eliminate the request for documents because it would be unfair, as a matter of American law, to allow plaintiffs to use the journalists' testimony against defendants without giving defendants an opportunity to cross examine the journalists as to the accuracy of their reporting. In other words, I cannot, under American law, allow a party to take a deposition without also allowing his opponent to utilize, at the deposition, documents that pertain to that deposition testimony.

Moreover, plaintiffs do not explain how the deposition and any document production by the journalists could be narrowed under the law of Israel to meet the journalists' objections, and I am not about to attempt it. Furthermore, there is nothing in the Federal Rules of Civil Procedure, or any statute of which I am aware, that would permit me to summon these journalists from Israel to show cause why I should not issue a particular letter of request. Instead, the journalists can await the issuance of a letter of request and attack it again in the Israeli courts. Furthermore, my modifying a letter of request in the hope of meeting the journalists' objections, based on my analysis of Israeli law, provides no guarantee that the journalists' objections will not be upheld in the Israeli court. In the absence of some showing by plaintiffs that the journalists' objections may be overcome, under Israeli law, granting plaintiffs more time to resolve those objections is improvident and wasteful.

Finally, while I appreciate from Judge Schneider's order that plaintiffs might be content to do no more than have the journalists verify that they wrote the articles in question, I am not certain that their willingness to do so eliminates the defendants' just need for their notes. In any event, I cannot believe that these parties are ready to cross an ocean to authenticate a newspaper article when newspapers are self-authenticating under Rule 902(6) of the Federal Rules of

5

Evidence. I therefore must conclude that delaying the end of discovery to secure the testimony of the journalists cannot be justified.

III. Barghouti

Barghouti was sentenced to life imprisonment for his role in the killing of Kleiman. As the matter now stands, and, as the chart indicates, when he was called to testify, he refused. Assuming for the sake of argument that he is found to be in contempt, it is hard to imagine why this sanction would compel him to testify since he is already serving a life sentence. Additionally, it is hard to understand why this man, said to be the leader of the group that killed Kleiman, would assist the Kleiman family in getting damages against the PLO, if one accepted plaintiffs' assertion that the PLO aided, abetted, and supported Al Aqsa. To await his cooperation is truly to wait for something that may never occur.

IV. Custodian of Records

As noted above, the Israeli government has yet to indicate whether the letters of request for both documents and custodian of records testimony will be approved

One letter of request seeks 1) the television and radio broadcasts of interviews with or statements by Marwan Barghouti that were submitted as evidence in his criminal prosecution, 2) the verdict in that trial, 3) the verdict of the military court in the trial of Fuad Hejazi Shubaki, (4) documents reflecting the bases upon which Al Aqsa, Fatah, the Palestinian Liberation Organization, and Tanzim were placed on the Ministry of Defense's List of Declarations and Orders relating to Unlawful Organizations, and 5) custodians to authenticate these records. [#126-1]. A second letter asks the Intelligence and Terrorism Information Center ("ITIC") to produce "full and authentic copies" of documents already in plaintiffs' possession, which are attached to the letter of request. [#126-2]. In each instance, plaintiff seeks what American

6

lawyers would call a Rule 30(b)(6) deposition, in which a representative of the Israeli government will meet any authenticity and hearsay objections by attesting that the documents being produced are authentic copies of the originals on file in an agency of the Israeli government, and were created and kept in the ordinary course of business.

First of all, and as to the broadcasts and the verdicts, I find that there is no real need for so called 30(b)(6) depositions. It is hard to understand how a legitimate authenticity or hearsay objection can be made as to the broadcasts, admitted into evidence, and the verdicts. We are, after all, talking about documents in a public court file that are being produced by a sovereign state at the request of the court of another sovereign state. Pursuant to Rule 902(A) of the Federal Rules of Evidence, if final certification is not received in accordance with subsection (3) of that rule by the date I am setting for the end of discovery, I will order that these documents "be treated as presumptively authentic without final certification." Fed. R. Evid. 902(3)(A).

With respect to the documents attached to the second letter of request, they are in Arabic and I have no idea what they are. By the same token, I am not going to permit the defendants to play dog in the manger and object to the authenticity or hearsay nature of these documents while denying plaintiffs the means of overcoming those objections through discovery. Thus, I will deem the documents attached to the second letter of request ([#126-2]) to be authentic and admissible unless defendants show cause within ten days why they are not.

Finally, the remaining documents, those sought in the first letter of request, are less easy to handle. These are the documents that purportedly led the Israeli Ministry of Defense to place certain organizations, including Al Aqsa and the PLO, on a list of illegal organizations. All we know about these documents is that they may be relevant if they tended to show the PLO's financial or other support of Al Aqsa. On the other hand, we cannot possibly know any more

7

than that and, without knowing more, we cannot assess whether they are so relevant and crucial to this case that any additional delay to await their production is justified in this eight year old case. Moreover, it seems likely (to put it mildly) that the Israeli government would resist producing any documents that, for example, revealed informants' identities and the government's tactics and strategies in meeting what it perceives to be threats of terrorism from various illegal organizations. One can imagine the U.S. government's response to a similar request under the Freedom of Information Act, where a plaintiff sought the documents that led the Department of State to denominate a particular sovereign a state sponsor of terrorism. Surely, such a request would meet with the ferocious opposition of the federal government on the grounds that revealing that information would threaten national security. It is hard to understand why the response of the Israeli government would be any different. Thus, we are left with documents 1) whose relevance to the plaintiff's case cannot be ascertained with certainty, 2) that, even if relevant, may be cumulative of other evidence, and 3) whose production the Israeli government is likely to resist, if and when they respond to the letter of request. While such an uncertain and indefinite delay in securing these documents may have made sense when the case was in its infancy, it can no longer be justified in the eighth year of its litigation.

In sum, I will only permit the depositions of 1) Z. Rimawi, 2) Hashash, and 3) Ya'akoboff. These depositions must be completed by April 15, 2013, for on that day, all discovery in this case will end. A point of clarification. If any of the other discovery identified in the above chart can be concluded by that deadline, the parties are permitted to do so. It is therefore, hereby,

8

**ORDERED** that <u>Plaintiffs' Motion to Extend the Deadline for the Completion of Pending Fact Discovery Matters</u> [#186] is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

9