- Sa'id Awada

- Naef Abu Sharkh

- Mazen Faritakh

- Kamal Eddin Musa el Abed

5. Pursuant to Chapter II, Article 9 of the General Intelligence Law No. 17 of 2005 of the Palestinian Authority (now, the State of Palestine) (the "General Intelligence Law") the GIS performs numerous functions including:

   a. Taking measures to "prevent acts that may endanger the security and safety of Palestine…"; and

   b. "Reveal[ing] external dangers which may jeopardize the Palestinian national security in the fields of espionage, collusion and sabotage, and any other acts which may threaten the unity, security, independence, and resources of the homeland."

6. In executing these functions, the GIS maintains security files on some, but not all, Palestinians.

7. The GIS maintains these files, among other reasons, in order to help monitor security-related allegations made by Israel, ensure security within the Occupied Palestinian Territories (now, the State of Palestine), monitor militant or subversive activities within the Occupied Palestinian Territories (now, the State of Palestine), engage in law enforcement activities, and execute its functions under the General Intelligence Law.

8. The information in the files is collected through numerous means, including through public sources, GIS agent investigative fieldwork, interrogations, and confidential sources and informers. With respect to persons who have been charged and/or convicted

3

by Israel with security-related offenses, the information in the files often includes or consists of allegations or charges made by Israel against those persons, which the GIS has neither confirmed nor officially adopted as true.

9. In response to Plaintiffs' request, I directed my staff to collect files relating to the individuals listed in ¶ 4. As a result, documents were located for persons that I believe match one or more of the names of nearly all the individuals described in paragraph ¶ 4. In some cases, in response to our attorneys' inquiries, my staff created entries in files that summarize the status of a particular individual or sent correspondence related to the request.

10. I have personally reviewed these files and conclude they constitute State Secrets of the Palestinian Authority (now, the State of Palestine), and I am invoking the State Secrets Privilege on behalf of the State of Palestine.

11. I understand that this affidavit will be public, and I have therefore described many of the below concerns generally, so as not to compromise the very information that ought to be held confidential. I am willing to provide a more detailed affidavit to the Court, should such an affidavit be kept under seal by the Court.

12. Revealing information contained in the files including, but not limited to, the identity of confidential sources, the methods of intelligence collection, and the identity of security suspects identified by the GIS (other than those individuals listed in Plaintiffs discovery requests), would directly threaten GIS's role in securing the homeland because it would endanger the security and safety of Palestinian nationals and potentially subject Palestinian nationals to external dangers, and reveal intelligence methods regarding dangers such as espionage, collusion and sabotage, all in direct contradiction of the

1334903.1

General Intelligence Law. Furthermore, disclosure of this information would potentially reveal GIS intelligence methods to foreign powers and increase the likelihood of security threats from foreign powers.

13. The files additionally contain information relating to GIS law-enforcement investigations, and therefore I am also invoking the Law Enforcement Privilege on behalf of the PA (now, the State of Palestine).

14. The information contained in the files includes information relating to GIS investigatory techniques and law enforcement investigations and should not be disclosed. The success of GIS's investigations depends on the confidentiality of these files and the sources located within them. Specifically, disclosure of these files would:

    a. Expose GIS intelligence gathering and analysis techniques;

    b. Expose the identity of GIS informants, officers, and security suspects;

    c. Undermine the privacy of the subjects of the files as the files contain personal information relating to the subject of the file, such as the names of their family members and friends, political affiliations, and occupations; and

    d. Impair the ability of the GIS to conduct future investigations

15. Moreover, like files maintained by intelligence and security forces in other countries, the information contained in the files is not necessarily completely reliable or accurate. Rather, the files contain information that is often collected from sources outside of the PA (now, the State of Palestine) that are of varying degrees of reliability. This information may or may not be true and may or may not be based on first-hand knowledge.

1334903.1

16. The files do not contain any information which would suggest the PA (now, the State of Palestine) or PLO had advance knowledge or information regarding any of the attacks at issue in this matter.

17. Disclosure of this information to third parties could compromise the GIS's intelligence gathering and law enforcement abilities and result in the disclosure of sensitive intelligence and law enforcement information.

18. Various provisions of the General Intelligence Law generally prohibit and criminalize the disclosure of GIS intelligence information, including the identities of informants or information provided by such informants.  Specifically, Chapter I Article 7.2 of the General Intelligence Law states:

> The Head of Intelligence shall be accountable to the President or the person whom he may authorize to maintain the confidentiality of the work of the Intelligence, the information and the means of accessing it, and its sources.  Investigations or information of the Intelligence may not be viewed except by special permission of the President or the person whom he may authorize.

Chapter VII, Article 30, of General Intelligence Law states:

> Information regarding the regulation of the Intelligence and its activities, functions, documents, headquarters and properties and the data of its members shall be a secret of national security, the revealing of which is prohibited.  Such shall apply to any member of the Intelligence and those working by special contracts, even following the expiration of their service.

and Chapter VII, Article 31 of the General Intelligence Law states:

> Any person who deviates from the requirements of the functional obligation, or commits any of the prohibited acts set forth under this law and its bylaw, or appears in manner that violates the dignity of the function and its requirements shall be punished pursuant to the *Penal Law* in force.

1334903.1

19. Based on the foregoing, I request that this Court permit the PA (now, the

State of Palestine) to withhold production of these documents pursuant to

the State Secrets and Law Enforcement Privileges.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE

UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on this ___ day of May 2013, in the State of Palestine.

_____

Majed Faraj

1334903.1

المحكمة الإقليمية للولايات المتحدة

لإقليم جنوب نيويورك



| | |
|---|---|
| مارك آي. سوكولو    وآخرون | ( |
| | ( |
| مدّعون، | ( |
| | ( |
| ضد | ( |
| | ( |
| منظمة التحرير الفلسطينية    وآخرون | ( |
| | ( |
| مدعى عليهم. | ( |

قضية مدنية رقم (RLE) (GBD) 04cv397

### شهادة ماجد فرج

وفقاً للفقرة 1746 من المادة 28 من قانون الولايات المتحدة، أشهد أنا ماجد فرج، تحت طائلة عقوبة الشهادة الزور حسب قوانين الولايات المتحدة الأمريكية، بما يلي:

1.  أقيم حالياً في رام الله، دولة فلسطين.

2.  أبلغ من العمر أكثر من ثمانية عشر عاماً وأنني مؤهل للإدلاء بهذه الشهادة. باستثناء ما ينص على خلاف ذلك في هذه الوثيقة، فإن الوقائع المدرجة أدناه تستند على معلوماتي الشخصية.

3.  أنا حالياً رئيس جهاز المخابرات العامة ("الجهاز") لدولة فلسطين، سابقا الأراضي الفلسطينية المحتلة، أوالسلطة الوطنية الفلسطينية ("السلطة").

4.  أدرك أن المدعين في القضية المذكورة أعلاه قد طلبوا كل الملفات التي بحوزة السلطة الفلسطينية (الآن دولة فلسطين) والمتعلقة بالأشخاص التالية أسماؤهم:

    - ناصر شاويش

    - محمد حشايكة

- عبد الكريم عويس
- سناء شحادة
- قاهرة السعدي
- مروان برغوثي
- أحمد طالب مصطفى برغوثي
- عبدالله برغوثي
- إبراهيم حامد
- محمد حسن أحمد حسن عرمان
- وائل محمود محمد علي قاسم
- وليد عبد العزيز عبد الهادي أنجاص
- محمد إسحق عودة
- وسام سعيد عباسي
- علي منير جعارة
- عبد الرحمن (زاهر) يوسف عبد الرحمن مقداد
- أحمد صلاح أحمد صلاح
- حلمي عبد الكريم هماش
- أحمد محمد أحمد سعد
- محمد عيسى محمود معالي
- علي محمد حامد أبو هليل
- أحمد أبو رضب
- سعيد رمضان
- ماجد المصري

- محمد عبد الرحمن سلام مصلح
- ناصر عويس
- فراس صادق محمد غانم
- محمد سامي إبراهيم عبدالله
- سائد عواضة
- نايف أبو شرخ
- مازن فريتخ
- كمال الدين موسى العبد

5. . طبقاً للمادة (9) من الفصل الثاني من قانون المخابرات العامة رقم 17 للعام 2005 للسلطة الوطنية الفلسطينية (الآن، دولة فلسطين) (قانون المخابرات العامة)، يقوم الجهاز بعدد من المهام التي تشمل:

أ. اتخاذ الإجراءات لمنع وقع الأعمال التي قد تهدد أمن وسلامة فلسطين، و

ب. "الكشف عن المخاطر الخارجية التي قد تهدد الأمن الوطني الفلسطيني في مجال التجسس والتخابر والتخريب وأي أعمال أخرى قد تهدد وحدة أو أمن أو استقلال أو موارد الوطن."

6. من خلال تنفيذ هذه المهام، يحتفظ الجهاز بملفات أمنية لبعض الفلسطينيين وليس جميعهم.

7. يحتفظ الجهاز بهذه الملفات، من بين أسباب أخرى لغرض متابعة الأدعاءات الأمنية من قبل اسرائيل ، وضمان الأمن في الأراضي الفلسطينية المحتلة (الآن، دولة فلسطين)، ومراقبة النشاطات المتطرفة والتخريبية في الأرض الفلسطينية المحتلة (الآن، دولة فلسطين)، وممارسة نشاطات إنفاذ القانون وتنفيذ مهامه وفقاً لقانون المخابرات العامة.

8. يتم جمع المعلومات المتوفرة في الملفات من خلال وسائل متعددة، بما في ذلك المصادر العامة والتحريات التي يقوم بها عملاء الجهاز ميدانياً والتحقيقات والمصادر السرية والمخبرين. فيما يتعلق

بالأشخاص الذين اتهموا و/أو أدينوا من قبل اسرائيل بجرائم متعلقة بالأمن، فإن المعلومات الواردة في الملفات غالباً ما تتضمن أو تتكون من ادعاءات او اتهامات اختلقتها اسرائيل ضد هؤلاء الأشخاص، والتي لم يؤكد الجهاز عليها او يعتمدها على أنها صحيحة بشكل رسمي.

9. استجابة لطلب المدعين، أُمرت موظفي مكتبي بجمع الملفات المتعلقة بالأفراد المدرجين في الفقرة 4. كنتيجة لذلك، وُجدت وثائق لأشخاص أعتقد أنها تتطابق مع واحد أو أكثر من أسماء ما يقارب جميع الأفراد المدرجين في الفقرة 4. في بعض الحالات، وذلك ردا على استفسارات محامينا، أدخل موظفو مكتبي بيانات في الملفات التي تلخص حالة فرد معين أو إرسالها ضمن المراسلات المتعلقة بالطلب.

10. قمت شخصياً بمراجعة هذه الملفات وقررت أنها تمثل أسرار دولة بالنسبة للسلطة الوطنية الفلسطينية (دولة فلسطين الآن)، فإني هنا أمارس حق عدم الإفشاء عن أسرار الدولة بالنيابة عن دولة فلسطين.

11. إنني أدرك أنه يمكن أن يتم الإعلان عن هذا البيان بصورة علنية، وعليه فإنني وصفت العديد من القضايا بشكل عام، وذلك حتى لا تؤثر سلبا على معلومات ينبغي أن تبقى سرية. وإنني على استعداد لتقديم بيان أكثر تفصيلا إلى المحكمة، شريطة أن يتم الاحتفاظ بهذا البيان بصورة سرية من قبل المحكمة.

12. إن الكشف عن المعلومات التي تحتويها هذه الملفات، ويشمل ذلك، ودون تحديد، هويات المصادر السرية وأساليب جمع المعلومات المخابراتية وهويات المشتبه بهم أمنياً الذين تم تحديد هوياتهم من قبل الجهاز (غير أولئك الأفراد المدرجة أسماؤهم في طلبات الإفصاح التي قدمها المدعون)، سيهدد دور الجهاز بشكل مباشر في ضمان أمن الوطن لأن ذلك سيهدد أمن وسلامة المواطنين الفلسطينيين وقد يعرضهم إلى مخاطر خارجية، كما سيكشف وسائل الاستخبارات فيما يخص المخاطر الخارجية مثل التجسس والتخابر والتخريب، وكل ذلك يتعارض بشكل مباشر مع قانون المخابرات العامة. إضافة إلى ذلك، فإن الإفصاح عن هذه المعلومات قد يكشف لجهات أجنبية وسائل استخبارات الجهاز ويزيد من احتمال التهديدات الأمنية من جهات أجنبية.

13. تحتوي الملفات كذلك على معلومات حول تحقيقات الجهاز في مجال إنفاذ القانون ولذلك فإني هنا أمارس حق عدم الإفصاح عن معلومات إنفاذ القانون بالنيابة عن السلطة الوطنية الفلسطينية (دولة فلسطين الآن).

14. إن المعلومات التي تحتويها الملفات تشمل معلومات متعلقة بأساليب الجهاز في التحقيق وإنفاذ القانون، وهي معلومات لا يجب الإفصاح عنها، يعتمد نجاح تحقيقات الجهاز على سرية هذه الملفات والمصادر المتعلقة بها، خاصة وأن الكشف عن هذه الملفات سيترتب عليه:

أ. الكشف عن أساليب الجهاز في جمع وتحليل المعلومات الاستخباراتية،

ب. الكشف عن هويات مخبري الجهاز وضباطه والمشتبه بهم أمنياً،

ت. إلحاق الضرر بخصوصية أصحاب الملفات حيث أن الملفات تحتوي على معلومات خاصة تتعلق بصاحب الملف مثل أسماء أفراد عائلته وأصدقائه وانتمائه السياسي ومهنته، و

ث. إضعاف قدرة الجهاز على إجراء تحقيقات مستقبلية.

15. علاوة على ذلك، كما هو الحال في البلدان الأخرى حيث يتم الاحتفاظ بالملفات من قبل المخابرات وأجهزة الأمن، فإن المعلومات الواردة في الملفات ليست بالضرورة ذات مصداقية أو دقيقة تماما. بدلا من ذلك، تحتوي الملفات على المعلومات التي يتم جمعها في كثير من الأحيان من مصادر خارج السلطة الفلسطينية (دولة فلسطين الآن) التي تتفاوت درجاتها من حيث المصداقية. قد تكون هذه المعلومات أو قد لا تكون صحيحة، وقد تكون أو قد لا تكون مبنية على المعلومات الأولية المباشرة.

16. لا تحتوي الملفات على أية معلومات ذات دلالة على أن السلطة الوطنية الفلسطينية (دولة فلسطين الآن) أو منظمة التحرير الفلسطينية كان لديها علم أو معلومات مسبقة عن أي من الهجمات موضوع الدعوى.

17.الإفصاح عن هذه المعلومات إلى طرف ثالث قد يضعف قدرات الجهاز على جمع المعلومات الاستخباراتية وأمكانية إنفاذ القانون وسيترتب عليه الكشف عن معلومات استخبارتية حساسة وأخرى تخص إنفاذ القانون.

18.إن مختلف الاحكام والقوانين الخاصة بأجهزة المخابرات العامة، تحظر وتجرم بصورة عامة إفشاء المعلومات الاستخبارية لأجهزة المخابرات العامة، ويشمل ذلك هويات المخبرين أو المعلومات التي يقدمها هؤلاء المخبرين. وبصورة خاصة، ينص الفصل الأول والمادة 7(2) من قانون المخابرات العامة على ما يلي:

" يكون رئيس المخابرات مسؤولاً أمام الرئيس أو من يفوضه على المحافظة على سرية نشاط المخابرات والمعلومات ووسائل الحصول عليها ومصادرها، ولا يجوز الاطلاع على تحريات المخابرات أو معلوماتها إلا بإذن خاص من الرئيس أو من يفوضه,"

وينص الفصل السابع المادة 30 من قانون المخابرات العامة:

" تعتبر المعلومات المتعلقة بتنظيم المخابرات وأنشطتها وأعمالها ووثائقها ومقرها وممتلكاتها وبيانات العاملين  من أسرار الأمن الوطني التي يحظر إفشاؤها، ويسري ذلك على جميع العاملين بالمخابرات والعاملين بعقود خاصة حتى بعد انتهاء خدمتهم."

وينص الفصل السابع المادة 31 من قانون المخابرات العامة:

" يعاقب كل من يخرج على مقتضى الواجب الوظيفي، أو يرتكب أحد الأعمال المحظورة المنصوص عليها في هذا القانون ولائحته، أو يظهر بمظهر مخل بكرامة الوظيفة ومقتضياتها، بموجب قوانين العقوبات النافذة".

بناء على ما سبق، ألتمس من هذه المحكمة السماح للسلطة الوطنية (الآن دولة فلسطين) بعدم توفير هذه الوثائق بموجب حقوق أسرار الدولة وإنفاذ القانون.

أشهد أنا، تحت طائلة عقوبة الشهادة الزور حسب قوانين الولايات المتحدة الأمريكية، بأن ما سبق صادق وصحيح.

تم التوقيع في هذا اليوم الموافق  23  من شهر  أيار  من عام 2013  في دولة فلسطين.



ماجد فرج

# EXHIBIT C

The Security Sector Legislation of the Palestinian National Authority

## *General Intelligence Law No. 17 of 2005*

The Chairman of the Executive Committee of the Palestine Liberation Organisation,
The President of the Palestinian National Authority,

Having reviewed the *Amended Basic Law of 2003* and its Amendments,
Having reviewed the *Law of Civil Service No. 4 of 1998* and its Amendments,
Having reviewed the *Law of Insurance and Pensions of the Palestinian Security Forces No. 16 of 2004* and its Amendments,
Having reviewed the *Law of Public Retirement No. 7 of 2005,*
Having reviewed the *Law of Service in the Palestinian Security Forces No. 8 of 2005,*
Based upon approval of the Legislative Council during its session of 21 September, 2005,
Based upon the powers bestowed upon me, and
In the name of the Arab Palestinian People,

I hereby promulgate the following law:

## Chapter I. Definitions and General Provisions

### Article 1

In applying the provisions of this law, the following terms and expressions shall have the meanings specified below, unless the context determines otherwise:

| | |
|---|---|
| National Authority | The Palestinian National Authority |
| President | The President of the Palestinian National Authority |
| Intelligence | The Palestinian General Intelligence |
| Head of Intelligence | The Head of the Palestinian General Intelligence |
| Member | Any officer, non-commissioned officer, or member of personnel appointed in the Intelligence |

### Article 2

The Intelligence shall be a regular security agency subordinate to the President. It shall perform its functions and commence its jurisdictions pursuant to the provisions of the law under the presidency and command of its Head, who shall issue the decisions necessary for the management of its work and the regulation of all of its affairs.

252



Authority

' of 2005

Palestine  Liberation

ndments,
; Amendments,
estinian Security Forces

r Forces No. 8 of 2005,
ssion of 21 September,

Provisions

r and expressions shall
fmines otherwise:



National Authority.
nce.
eral Intelligence.
officer or number of
ligence.

iinate to the President,
ctions pursuant to the
l of its Head, who shall
vork and the regulation

The Legislative Framework of the PNA Security Forces

### Article 3

The Intelligence shall consist of a Head, a Deputy, and a sufficient number of officers and individuals expedient to carry out the work in accordance with the organisational structure to be issued by the President. The provisions of this law shall apply to all members thereof.

### Article 4

1. The Head of Intelligence shall be appointed by the President in the rank of a minister.
2. The duration of the appointment of the Head of Intelligence shall last for three (3) years. It may be extended for one (1) year only.

### Article 5

The Head of Intelligence shall be the authority competent to enforce the provisions of this law and defining the jurisdictions of the units in the light of the bylaw. He may delegate some of his authority to whomever he deems fit from among the officers.

### Article 6

1. The Deputy-Head of Intelligence shall be appointed by the President and upon the nomination of the Head of Intelligence.
2. The appointment in the function of a director of a department at the Intelligence shall be made by the Head of Intelligence and upon the nomination of the Committee of Officers.
3. The directors of departments shall be part of the executive command of the Intelligence and fully responsible for the implementation of the duties assigned to them.

### Article 7

1. The Head of Intelligence shall assume the authority of supervising the activities of the Intelligence and its members. He may establish necessary committees and issue decisions and orders required for the regulation of the progress of work and the ensurement of good performance.
2. The Head of Intelligence shall be accountable to the President or the person whom he may authorise to maintain the confidentiality of the work of the Intelligence, the information and the means of accessing it, and its sources. Investigations or information of the Intelligence may not be viewed, except by a special permission of the President or the person whom he may authorise.
3. The Head of Intelligence shall notify the President or the person whom he may authorise of all matters of significant or urgent nature.

253

The Security Sector Legislation of the Palestinian National Authority

## Chapter II. The Duties of the Intelligence

### Article 8

1. The Intelligence shall be officially assigned to exercise security activities and duties beyond the geographical boundaries of Palestine.
2. The Intelligence shall exercise specific security duties within the geographical boundaries of the State of Palestine to complete the measures and activities commenced beyond those boundaries.

### Article 9

The Intelligence shall perform the following:

1. Take the measures necessary to prevent acts that may endanger the security and safety of Palestine and expedient measures against their perpetrators pursuant to the provisions of the law.
2. Reveal external dangers which may jeopardise the Palestinian national security in the fields of espionage, collusion and sabotage, and any other acts which may threaten the unity, security, independence, and resources of the homeland.
3. Jointly cooperate with similar agencies of friendly states to fight all acts which may threaten the joint peace and security or any fields of external security, upon the condition of reciprocal treatment.

### Article 10

The acts upon which the provisions under the preceding Article are applicable shall be:

1. Communicating with a foreign state in order to perform a hostile act against Palestine.
2. Joining the service of a foreign entity which is in a state of war with Palestine.
3. Delivering or helping to deliver a secret of the defence of Palestine in the military, political, economic or social domain to a foreign state.
4. Any intentional act which may result in the death, a critical physical injury, or loss of freedom of any of the:
   a) Monarchs and Presidents of States and their spouses or their ascendants or descendants.
   b) The heirs to the throne or deputies of the Presidents of States or Prime Ministers or ministers.
   c) Persons who are in charge of public responsibilities or those occupying public positions, if such acts are directed toward them in their capacities.
   d) Ambassadors or diplomats who are accredited with the State of Palestine.
5. The purposeful sabotage or damage of public or private properties for public purposes which belong to or are subject to the authorities of a state connected with Palestine by diplomatic or friendly relations.

254

onal Authority

.telligence

ise security activities and
tine.
s within the geographical
e measures and activities

endanger the security and
eir perpetrators pursuant

the Palestinian national
otage, and any other acts
ice, and resources of the

ites to fight all acts which
elds of external security,

ng Article are applicable

orm a hostile act against

ate of war with Palestine.
fence of Palestine in the
eign state.
critical physical injury, or

ouses or their ascendants

idents of States or Prime

lities or those occupying
toward them in their

ited with the State of

rate properties for public
rities of a state connected

The Legislative Framework of the PNA Security Forces

6. The manufacturing, possession or acquisition of weapons, explosives or any detrimental materials with the intention to perpetrate any of the aforementioned acts in any state.
7. Any act of violence or threat, whatever its motives or purposes, which occurs in the implementation of an individual or collective criminal plot aimed at creating fear among the people or intimidating them by harming them or putting their life, freedoms or security in danger, or by causing damage to the environment or to any facilities or public properties, or occupying or seizing control of them, or forfeiting land, or subjecting a national resource to danger.

### Article 11

Pursuant to the provisions of the law, the Intelligence shall have the right to collate information in the jurisdictions which the law approves and to request it from the agencies of the National Authority and others without objection. The Head of Intelligence may request from the Attorney-General pursuant to the law the right to bring about legal decisions to prevent foreign nationals from travelling from or to Palestine and, for reasons of national security, to prevent citizens from travelling. Furthermore, the Intelligence shall have, in the cause of the commencement of its jurisdictions set forth under this law, the authority of oversight and investigation through various technical and professional means pursuant to the law.

### Article 12

The Intelligence, in the cause of the commencement of its jurisdiction set forth under this law, shall have the capacity of the Judicial Police.

### Article 13

The Intelligence must heed the rights and guarantees set forth in the Palestinian laws and the rules of the International law in this domain.

### Article 14

Pursuant to the provisions of the law, the Intelligence shall conduct preliminary investigations into incidents ascribed to the detained person; exercise oversight; search; investigate and inspect; may request the attachment of properties and the detention of individuals; may summon and interrogate individuals and hear their statements; and may request data, information and documents from any person or keep them and take such actions as it deems necessary in their regard pursuant to the law.

### Article 15

1. If the detained person is a foreign national, he must be assisted to contact the closest representative of the state to which he is a subject.
2. The Intelligence may notify any other state of interest if it deems appropriate for the fact of such measure and the circumstances which required it to be taken.

295