In a manner not contradicting [illegible] the extradition of [illegible] Authority and [illegible]

[illegible]

1. [illegible]
2. [illegible] amounts or the approval of the General Budget.
3. A financial controller shall be appointed [illegible] and upon the nomination of the Head of Intelligence. The financial controller shall be responsible for reviewing the items of expenditure [illegible] supervision over the auditing of accounts [illegible]

Article 18

1. The Head of Intelligence shall be responsible for preparing the Intelligence's annual budget and submitting it to the President for approval.
2. The Head of Intelligence shall issue the decisions which include the bases and procedures pertaining to the implementation of the items of the budget for the purposes designated thereto. He shall have the power to disburse confidential expenditures in the manner which he decides without abiding by the bylaws and decisions applicable to other governmental agencies. All the items and procedures related thereto shall be deemed confidential.

Article 19

The Head of Intelligence shall prepare a regulation for purchases which shall conform to the nature of the function of the Intelligence, which regulation is subject to approval by the President. The Head of Intelligence shall have the full power to enforce it.

## Chapter IV. The Committees

Article 20

The Head of Intelligence may establish committees in accordance with the requirements of the work. The decision of establishment shall determine the duties, powers and restrictions of the function of a committee, provided that the function of a committee does not conflict with the duties of administrations and units already in existence. Committees of investigation which are established for specific purposes shall be excepted therefrom.



the treaties pertaining to
:ion between the National

:t

;ence shall have its own
figure within the General
; own budget and expend

ittee of three (3) members
budget of the Intelligence,

:lligence by the President
e. The financial controller
expenditure, have direct
re that they are sound.

eparing the Intelligence's
r approval.
iich include the bases and
tems of the budget for the
er to disburse confidential
ut abiding by the bylaws
encies. All the items and
tial.

hases which shall conform
ation is subject to approval
ll power to enforce it.

tees

in accordance with the
nent shall determine the
mittee, provided that the
es of administrations and
which are established for

### Article 21

Pursuant to the provisions of the *Law of Service in the Palestinian Security Forces* and by decision of the Head of Intelligence, a subcommittee of officers shall be established in the Intelligence.

### Article 22

The committee shall exercise its jurisdictions over all members of the Intelligence. It may also include in its meetings persons from whom it deems fit to seek assistance.

## Chapter V. The Obligations of the Members and Prohibited Acts

### Article 23

The Head of Intelligence, his Deputy or any of the members may not bear witness before the courts, even following their retirement from work, with regard to information which came to their knowledge during the performance of their work, but which was not disseminated in a legal manner and which the National Authority did not allow to be disseminated. The permission of the competent authority shall be given to the Head of Intelligence and his Deputy by the President. Other members shall thus be given by the Head of Intelligence.

### [illegible]

1. [illegible]
2. [illegible] and ethics is to [illegible]

### Article 25

In addition to prohibitions set forth under the *Law of Service in the Palestinian Security Forces*, the members shall be prohibited from the following:

1. Combining work at the Intelligence with any other work, unless the interest of the work so requires and by decision of the Head of Intelligence.
2. Negligence or failure due to which a right of the State may be lost.
3. Revealing any data pertaining to the matters of work to the media, whether during the service or thereafter, except through a person authorised thereof.
4. Performing any political or media activity.
5. Affiliating with associations, institutions or clubs, unless the interest of the work thus requires and by decision of the Head of Intelligence.
6. Exploiting the function in order to achieve personal goals.
7. Keeping for themselves any official documents, even if they pertained to activities to which they were assigned.



8. Contravening the security measures of which a decision is issued by the competent authority.
9. Concealing errors and contraventions by their colleagues at work.
10. Communicating or establishing special relationships with foreign nationals or members of embassies and missions accredited at the State, unless the interest of the work so requires and by decision of the Head of Intelligence.

## Chapter VI: Appointments

### Article 26

The following shall be required from a person to be appointed in the Intelligence.

1. Be of Palestinian nationality and Palestinian parents.
2. Not be previously convicted of a crime or misdemeanour violating honour or trust.
3. Be physically fit for service.
4. Not be married to a non-Arab.
5. Be between eighteen (18) and thirty (30) years of age.
6. Not have been dismissed from former service by a disciplinary decision.
7. Be of good conduct and repute.
8. Hold the academic qualifications required for the function.
9. Pass the examinations necessary to occupy the function.

### Article 27

1. Any person who is appointed as an officer in the Intelligence shall swear the *Oath of Allegiance* in accordance with the following formula:

   *'I swear by the Almighty God to be sincere to the homeland and the people, to defend them and sacrifice my soul in their cause, to preserve my weapon and military honour, to respect the laws and regulations and enforce them, to safeguard the secrets of my career, and to perform all of my functional and national obligations in honour, trustworthiness and sincerity. God shall hereby be witness upon what I say.'*

2. The swearing of the oath by the Head of Intelligence and his Deputy shall be before the President.
3. The swearing of the oath shall be before the Hea[illegible] Intelligence or the person whom he delegates therefor. The officer shall sign the form of the 'Swearing of the Oath' which shall be kept in the service file.

### Article 28

Assistance may be sought from experienced retirees who were previously members of the Intelligence for the performance of particular functions by special work contracts for a period of one (1) year that shall be renewable for three (3) years in return for a fixed remuneration.

Chapte

Every member of the
and measures issued

Information regardir
documents, headqua
secret of national sec
to any member of tl
following the expiral

Any person who de
or commits any of tl
appears in a manner
shall be punished pu

In cases other than
a member or intern
Intelligence.

Chap

The Legislative Cour
hold the Head of Inte

1. Pursuant to the p
to prepare, train
2. The Head of Inte
courses and shal
interest and achi

In a manner not contr
*of Service in the Palest*
appointment, seniorit
scholarships, salaries,
badges, and medals, t
any other matter of w

authority

on is issued by the

at work.
foreign nationals or
e, unless the interest
telligence.

d in the Intelligence:

violating honour or

linary decision.

n.

gence shall swear the
da:

*d the people, to defend
n and military honour,
feguard the secrets of
obligations in honour,
on what I say.'*

d his Deputy shall be

ligence or the person
orm of the 'Swearing

previously members
ons by special work
for three (3) years in

## Chapter VII. Confidentiality and Discipline

**Article 29**

Every member of the Intelligence shall be subject to the security directives, restrictions, and measures issued by the Head of Intelligence.

**Article 30**

Information regarding the regulation of the Intelligence and its activities, functions, documents, headquarters and properties and the data of its members shall be a secret of national security, the revealing of which is prohibited. Such shall apply to any member of the Intelligence and those working by special contracts, even following the expiration of their service.

**Article 31**

Any person who deviates from the requirements of the functional obligation, or commits any of the prohibited acts set forth under this law and its bylaw, or appears in a manner that violates the dignity of the function and its requirements shall be punished pursuant to the *Penal Law* in force.

**Article 32**

In cases other than *flagrante delicto*, the competent authorities may not detain a member or interrogate him except following notification of the Head of Intelligence.

## Chapter VIII. Concluding Provisions

**Article 33**

The Legislative Council, through its ad hoc-committees, shall have the right to hold the Head of Intelligence accountable.

**Article 34**

1. Pursuant to the provisions of this law, a security academy shall be established to prepare, train and qualify the members of the Intelligence.
2. The Head of Intelligence shall assume the supervision over the curricula and courses and shall appoint trainers and instructors in accordance with the interest and achievement of the goals.

**Article 35**

In a manner not contradicting the provisions of this law, the provisions of the *Law of Service in the Palestinian Security Forces* shall apply to the members regarding appointment, seniority, promotion, delegation, assignment, transfer, secondment, scholarships, salaries, leaves, obligations, prohibited acts, penalties, decorations, badges, and medals, transfer to provisional retirement, expiration of service, and any other matter of which a relevant provision is not mentioned in this law.

Article 36

The Head of Intelligence shall draft the bylaw of this law and the regulations necessary for the function of the Intelligence, which shall be issued by decision of the President.

Article [illegible]

All competent authorities [illegible] implement the provisions of this law [illegible] its publication in the *Official Gazette*.

**Issued in the city of Ramallah on 26 October, 2005 AD, corresponding to 23 Ramadan 1426 AH.**

**Mahmoud Abbas**
**Chairman of the Executive Committee of the Palestine Liberation Organisation**
**President the Palestinian National Authority**

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**REUVEN GILMORE, *et al.*,**

**Plaintiffs,**

**v.**

**PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY, *et al.*,**

**Defendants.**

**Civil Action No. 01-853 (GK)**

**MEMORANDUM ORDER**

Plaintiffs have filed a Motion to Compel the Defendants' General Intelligence Service ("GIS") to release certain documents over which the PA had asserted the state secrets and law enforcement privileges [Dkt. No. 303]. A Status Conference was held on May 20, 2013, during which the subject matter of the Motion to Compel was discussed at length. As a consequence of that discussion, the Court Ordered the Defendants to provide an *ex parte* memorandum giving more detail about its legal position and to submit the responsive documents from GIS [Dkt. No. 311]. Defendants complied and the materials were submitted under seal, *in camera*, and *ex parte*, on June 3, 2013.

The Court has examined all of the responsive GIS materials submitted by Defendants, and has, of course, also considered the legal arguments made by both Parties. Upon consideration of all these materials, the Court concludes, for the following reasons, that the Motion to Compel should be **denied**.

1. Nowhere in the 25 pages submitted by Defendants is there any admissible evidence that would be relevant to Plaintiffs' case. In other words, there is no information in the files revealing advance knowledge on the part of the PA of the October 30, 2000, shooting which is at the center of this case.

2. As to Abu Halawa's file, it contains no documents which pre-date the October 30, 2000, shooting. As to Damra's file, all but one page, contains only documents created after 2011, more than 10 years after the October 30, 2000, shooting, and that one page is dated after the attack. As to Mislamani's file, there is some brief mention of the attack at the Israeli National Insurance Institute, where the October 30, 2000, shooting took place. None of the information contained in those two portions would be admissible at trial. Finally, Plaintiffs have admitted in their Opposition to Defendants' Motion for Reconsideration that their "sole potentially admissible evidence . . . is a signed statement given to the Israeli police on January 18, 2001, by Mustafa Mislamani." DE 193 at 2. Thus, Plaintiffs already possess a version of the statements given by Mr. Mislamani to the Israeli police.

3. In Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the S.D. Iowa, 483 U.S. 522 (1987), the Supreme Court set forth factors which are relevant in considering whether to compel disclosure of documents where such disclosure is objected to by the foreign government in possession of them. Among the five factors is "(5) the extent to which . . . compliance with the request would undermine important interests of the state where the information is located." Id. at 544.

Defendants have submitted as Exhibit A to their Supplemental Memorandum, the Declaration of Khaled Abu Al-Yaman, who is the Head of the Operations and Information Department of the GIS. In that Declaration, General Al-Yaman sets forth numerous persuasive arguments for concluding that disclosure of the requested files would "undermine important interests" of the PA.

**WHEREFORE**, it is this 6th day of June, 2013, hereby

**ORDERED**, that Plaintiffs' Motion to Compel is **denied**; and it is further

**ORDERED**, that Plaintiffs' Opposition to the pending Motion for Summary Judgment shall be filed **no later than July 9, 2013**; and it is further

**ORDERED**, that Defendants' Reply shall be due **no later than July 15,, 2013.**

Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**