# EXHIBIT I.313



PLAINTIFF'S
EXHIBIT
313

PsakDin.co.il – the Israeli legal website

Date: 30 Av 5766                                                          Case No.: 2303/04
August 24, 2006

## The Judea Military Court

**Before the Honorable President of the Court:   Major Yair Tirosh**
**The Judge:   Major Amir Dahan**
**The Judge:   Major Ze'ev Afik**

**The Military Prosecution**

-v-

**The Defendant: Hilmi Abdel Karim Mohamed Hamash, Identity No. 901415984**
(by Counsel Adv. Osama Ouda)

**Stenographer: Sergeant Moran Weissman**

## Verdict

**Judge Major Amir Dahan**

A.  **The Defendant, Hilmi Abdel Karim Mohamed Hamash, Identity No. 901415984 of the Deheyshe Refugee Camp, has been prosecuted in the indictment in Case 2303/04 that was filed on May 23, 2004 to this Court.**

B.  **The evidential meaning of the procedural arrangements between the parties**

E.  According to the procedural arrangement between the parties, the Court will consider the statements of prosecution witnesses 3, 4, 5 as proven facts, but a conviction pursuant to them will demand verifying additional evidence of the "supportive evidence type".

As per common practice concerning written statements that have been filed in contradiction of oral testimony or written and oral statements of accomplices to an offense or parties implicated in an "offense deal", an increased level of additional evidence of the "supportive evidence type" will be required.

E.  According to the procedural arrangement between the parties, the Court will consider the statements of the Defendant to be facts that have been proven, without a need for additional evidence, and the statements of the Defendant will be considered as statements that have been given freely and voluntarily. Despite this, beyond necessity and for the sake of caution, the Court shall ask to find whether there is additional evidence of the "additional evidence" type that verifies the statements of the Defendant.

**[Stamp] P 2: 52**

1

E.  I have prescribed the types of additional evidence according to the laws of evidence that would be used if the statements had been heard before us as actual testimonies and if the material had been filed under Sections 10A 54(A) A, or 12 of the Evidence Ordinance (New Version) 5731-1971, according to the context of the giver of the statement to the Defendant and the legal proceeding against him.

www.PsakDin.co.il

[Stamp] P 2: 52 [continued]

PsakDin.co.il – the Israeli legal website

## C. Establishing of factual findings and their legal meaning

1. **First count of the indictment:** (Laying of a bomb, an offense pursuant to Regulation 58(B) of the Defense Regulations (Time of Emergency), 1945, attempt to detonate an explosive device against a military vehicle)

   **Arguments of the Prosecution:** The Prosecution asks the Court to consider the statement of the Defendant, P/2 page 3 row 4 to be the key evidence supporting the need for additional evidence in the statement of the Defendant in the Court.

   **Arguments of the defense:** The defense has not argued anything concerning this count of the indictment.

   **Discussion:**

   **Key evidence**: The key evidence indeed lies in the statement of the Defendant, in which the Defendant describes in detail how he initiated, built, laid and operated an explosive device (P/2 page 3 row 4 onward). This statement was filed consensually without a need for additional evidence. (transcript of June 30, 2006).

   **Additional evidence**: Beyond necessity, I must point out that sufficient support has been found in the testimony of the Defendant (transcript page 4 row 20 to page 5 row 10), in which the Defendant discusses his acquaintance with his accomplice Rami Kamal and the attempt to detonate an explosive device of similar composition using his initiation technique, which they performed together; and this testimony sufficiently supports the statement that was consensually filed.

   **The result is that I suggest to my colleagues that the Defendant be convicted of this count of the indictment.**

2. **Second count of indictment:** (membership in the Al Aqsa Martyrs Brigades Organization)

   **Arguments of the Prosecution:** The Prosecution contends that a key piece of evidence for the count is the statement of the Defendant (P/ 1 page 1 row 6), which is supported by the statement of Ahmed Salah P/23 page 4 row 6

   **Arguments of the defense:** The defense has admitted its summations for this count.

[Stamp] P 2: 53

3

**Discussion:**

**Key evidence:** The key evidence is indeed the statement of the Defendant P/1, in which the Defendant describes his enlistment into the cell of the above organization set forth in the indictment, and his recruiter was Ahmed Salah; this statement is corroborated of course by the admission of the defense counsel in his summations.

**Additional evidence:** Beyond necessity, I shall point out that Ahmed Salah, in his statement P/23, confirms the enlistment of the Defendant into the Al Aqsa Martyrs Brigades organization as set forth in the indictment.

**The result is that I suggest to my colleagues that the Defendant be convicted of this count of the indictment.**

3. <u>Third count of indictment</u>: (shooting at a person – shooting at a military vehicle in the district coordination office base with accomplices)

[Stamp] P 2: 53 [continued]

4

**The arguments of the Prosecution**: The Prosecution contends that a key piece of evidence for this count is the statement of the Defendant (P/1 page 1 row 12), which is supported by the statement of Ahmed Salah P/23 page 3 row 10.

**Arguments of the defense**: The defense admits in its summations that the Defendant was in the vehicle and that afterward he drove to Ahmed's home.

**Discussion**:

**Key evidence**: The key evidence is, according to the contention of the Prosecution, the statement of the Defendant P/1 in which the Defendant describes in detail that he traveled with Ahmed Salah and additional people to Beit Jalla where Ahmed told them that "we are going to carry out a shooting attack on Highway 60" using a weapon that the Defendant saw in his possession while boarding the automobile; afterward, the Defendant abided by the instructions of Ahmed Salah, waited until he heard gunshots and traveled to Ahmed's home (as the defense counsel admitted in his summations); the statement P/2 page 2 rows 4-5 describes the attack, and according to that account too, the Defendant waited until hearing a gunshot before fleeing with Ahmed Salah's automobile.

**Additional evidence**: The additional evidence may be found in P/23, in which Ahmed Salah describes how he assigned the Defendant a function of a lookout in the attack, which supports the statement of the defendant, whereby he complied with the instructions of Ahmed Salah by which he was to travel to the home of Ahmed only after the gunshots.

Indeed the Prosecution is correct; the statement of the Defendant in the Court whereby he was surprised by sudden gunfire from Ahmed and traveled to his (Ahmed's) home in his (Ahmed's) automobile cannot be reconciled with the behavior described in the statements and with the fact that they support one another in logical details, while the testimony of the Defendant whereby he took Ahmed's automobile and traveled to Ahmed's home when his sole desire was to get far away from the attack that Ahmed was about to carry out does not pass any test of logic and integration with the other evidence that is before us.

[Stamp] P 2: 54

5

*Mens Rea*:

Support for the required *mens rea* may be found in the fact that the Defendant continued to travel after learning about the purpose of the journey, waited and looked out until he heard the gunshots and afterward continued to obey the instructions of Ahmed Salah, after the things were said and it was clear that a shooting attack had been planned and was being carried out.

In addition to this, the Defendant says in his statement P/1 page 1 10-11 explicitly to Ahmed Salah that he agrees to carry out a shooting attack with him.

All of these indicate a clear *mens rea* of intent to carry out the attack and assist in its execution as set forth in the indictment.

E.   **Counts of indictment 4-15**: (causing intentional death – participation in the execution of a suicide attack on line 19 in Jerusalem)

The parties reduced the dispute concerning these charges to the question of the criminal liability of the Defendant for the attack that had been carried out, the fact that the attack had been carried out, the manner and place of its execution and all of the other details appearing in the indictment concerning the attack were agreed to by the parties.

www.PsakDin.co.il

[Stamp] P 2: 54 [continued]

PsakDin.co.il – the Israeli legal website

In addition, the parties agreed concerning the acts of the Defendant to advance the conspiracy himself, which were as follows:

A. The Defendant heard that Ahmed Salah was looking for a person who was prepared to commit suicide in an attack and introduced to him Ali Ja'ara, from whom he heard that he was having a bad life and was interested in carrying out a suicide attack.

B. The Defendant was also present during the conversation between Ahmed Salah and Ali Ja'ara.

C. The Defendant purchased for Ahmed Salah 7 kg of lemon salt and four batteries.

D. Ahmed Salah asked the Defendant for a video camera and the Defendant tried to get such a camera for him.

E. The Defendant made contact with Ahmed Salah after the attack and Ahmed Salah informed him that it was an attack that Ali Ja'ara had carried out.

**The arguments of the prosecution**: The prosecution has argued that the Defendant demonstrated a full *mens rea* for causing death, i.e. he was well aware of the deadly outcome that could result from his actions and sought it. To support its conclusions, the Prosecution analyzed that which was set forth in the evidence that was filed to the Court and argued that they lead to an unequivocal conclusion of knowledge and intent.

**The arguments of the defense**: The defense does not contend that the Defendant did not commit acts to advance the attack but it contends that the Defendant did not know, at the time of performing the acts that he performed for advancing the attack, that they were intended for a suicide attack using explosives.

To support its arguments, Counsel for the Defendant analyzed that which was set forth in the various pieces of evidence and asked the Court to consider this analysis to lack the *mens rea* required for conviction of causing death.

**Discussion:** After I tried to analyze the statements and the evidence and checked for the existence of the reasonable doubt that the defense counsel argued, I have reached the conclusion that the prosecution successfully proved the charge above and beyond any reasonable doubt.

[Stamp] P 2: 55

**Key evidence**:

7

Firstly, I must point out that the parties have filed consensually the statements of Ahmed Salah (prosecution witness 7) along with the other statements without qualifying them with the need for additional evidence, i.e. consent to everything that is set forth therein.

Secondly, inspection of the statements of Ahmed Salah P/ 23-25 explicitly shows the Defendant's knowledge concerning the results of the mass massacre that was carried out and that he sought this deadly outcome. Some of the statements are cited below:

P/ 23 1 16-17

>*"I talked to Hilmi Hamash, I told you about him and I asked him to look for a suicide terrorist for me to carry out a suicide attack.*
>
>*And what did Hilmi do?*
>
>*He said okay, but had not yet brought me one, and I talked to him a few times about it, after a few weeks Hilmi told me that he had somebody but he was not sure concerning him and then I said*

Page 4 of 8                                                                    www.PsakDin.co.il

[Stamp] P 2: 55 [continued]

8

PsakDin.co.il – the Israeli legal website

> *to Hilmi that he should go again to him and talk to him and
> check about him and see how he Hilmi agreed, he went and
> checked up on him, returned and told me that he was okay and
> prepared to perform a suicide attack… and in his home he
> introduced Ali Ja'ara to me."*

**P/ 24 page 1 row 13**

> *"Why did you ask Hilmi Hamash to come with you? What is the
> reason?*
>
> *In order for him to come with me to Ali Ja'ara, I came to Hilmi
> and said to him that with God's help, Ali Ja'ara is going to carry
> out a suicide attack and that he should come with me to him, and
> then Hilmi told me that he had guests and he was busy."*

**P 23 p. 2 and p. 3 4-5**

> *"What I want to add now is that on the morning after that Ali
> Ja'ara departed for the attack, Hilmi Hamash called me at about
> 8:30-9:00 a.m. and asked me what about Ali. I said to him that
> the fellow was going to work. After that Hilmi called me again
> and told me that the story in the news was that there was a
> suicide attack in Jerusalem and on the following day Hilmi told
> me that there was a Tabour (- morning parade A.D.) in
> Bethlehem at the police center and they were looking for Ali
> Ja'ara and Hilmi did not tell them anything".*

**Thirdly** A check of the testimony of the Defendant before the Court and its comparison
with the other evidence that was consensually filed (P/23, P/24, P/1, P/2) shows that the
version that the Defendant provided does not settle with or explain the order of events in
a manner that inures to the benefit of the Defendant. The Defendant is unable to settle the
contradictions with his statements or with those of Ahmed Salah concerning him; no
objection arose concerning Salah's statements that were filed consensually. When Salah
implicated the Defendant as the man who brought the suicide terrorist to him, followed
the progress of the attack, received a notice the evening before it and announced that he
had covered for the suicide terrorist at his workplace the following morning – the
testimony of the Defendant, which explains nothing out of all the above and attributes a
completely innocent account, can no longer hold water.

[Stamp] P 2: 56

Moreover, the statements of the Defendant in the Court may also serve to support the statements of Ahmed Salah, insofar as he confirms therein their close acquaintance, the purchase of lemon salt together, its delivery with Salah to Zahir, whom he knew by name.

**Fourthly**: The statements of Ahmed Saleh indicate that Hilmi Hamash knew from the outset and until the end that Ali Ja'ara was about to carry out a suicide attack with the guidance of Ahmed Salah.

The Defendant was the one to enlist Ali for the suicide attack and linked himself to Ahmed Salah, meaning that his acts indicate foundations of knowledge and wishing for the result of the mass massacre.

It must be remembered that the Defendant, who knew prior to the commission of the attack of the intent to execute the attack also covered up for the suicide terrorist at their joint workplace at the Palestinian Authority.

The Defendant not only did not sever himself from the conspiracy as argued by the defense counsel, but could also have prevented the outcome of the attack if he had reported the reason for the absence of Ali Ja'ara from the morning parade to his commanders in the Palestinian Authority.

www.PsakDin.co.il

[Stamp] P 2: 56 [continued]

PsakDin.co.il – the Israeli legal website

**Additional evidence:** Although this is not needed, the statements of the Defendant in P/1 and P/2 support P/ 23 and P/24. In his statements, the Defendant states that Ali Ja'ara, who worked with him in the Palestinian Authority, told him that he wanted to carry out a suicide attack and he was the one who led Ahmed Salah who asked for a victim to him.

I shall cite on this matter P/1, to which the defense counsel referred and for which he asked to ignore P/2.

P/ 1 page 2 row 5

> *"Ahmed Al Ghaza talked to me and told me that I should find someone for him who wanted to carry out a suicide attack or shooting attacks and I heard Ali Ja'ara many times talking to people and he told everyone that he wanted to carry out a suicide attack and I knew that he was a miserable person and he was a worker for the Palestinian Police too.*

From this, we learn that the Defendant made a clear distinction between "shooting attacks" and "suicide attacks" and therefore there is no foundation for the differentiation that the defense counsel made, insofar as he invited us to try the Defendant based on his statements in P/1 only; he also thinks that a full "match" was made with full knowledge by the Defendant by the planner of the attack and the miserable man (as he puts it too!) who was supposed to serve as the human fuse for the bomb.

**One way or another, in P/2 that was filed with full consent too, the Defendant elaborates in page 2, row 9**

> *"Ali told me that he wanted a heavy explosive belt in order to destroy the world and then after I saw that Ali was ready mentally for the attack, I transferred him to Ahmed Abu Ghadeb... and a week before the attack, I departed with Ahmed Abu Ghadeb to Bethlehem and there we purchased 7 kg of lemon salt and four batteries and we traveled to Douha, where Ahmed delivered the materials to Zahir while I was waiting in the vehicle, and Ahmed told me that after the attack, he would introduce to me Zahir Maqdad, who prepares the explosive devices and Mohamed Ma'ali, whose job is to transport the suicide terrorists"*

[Stamp] P 2: 57

11

These words represent knowledge of the result and the action to achieve a result that the Defendant undoubtedly wished for as a full accomplice in the commission of the attack, while knowingly exploiting the poor mental state of Ali Ja'ara and using him to advance a plan of a bombing attack and also covers up for the attack and its originators while doing a disservice to his duties at the Palestinian Authority and the duty he had as a uniformed serviceman.

If it were not enough that there was a *mens rea* here of murderous intent, there was also a factual foundation of full control of every stage, tracking and knowledge of every stage and the ability to terminate the planned massacre by a simple act of reporting to the authorities.

The Defendant did not do so and thus served as an essential link without which the attack would not have been executed, and he knowingly and deliberately took an important part in all stages of the planning and execution of the massacre and also prevented the curtailment of the massacre by covering up for Ali Ja'ara. The Defendant is an integral part of the inner circle of the execution of the offense, for which he must be convicted as a full accomplice to its execution and not just as an accessory.

The aggregate indicates that while I sought doubt as to the intentions of the Defendant, I have not found any.

www.PsakDin.co.il

[Stamp] P 2: 57 [continued]

PsakDin.co.il – the Israeli legal website

I suggest to my colleagues to convict the Defendant as an accomplice in the offenses that are attributed to him.

5.   16th count of the indictment: (possession of weapons – possession of a pistol and rifle cartridges in 2001-2002)

**Arguments of the Prosecution**: The Prosecution bases its contention for convicting the Defendant on his statement P/2 only.

**Arguments of the Defense**: The Defense has not argued anything concerning this charge.

**Discussion**:

**Key evidence**: The key evidence for this charge is the statement of the Defendant p/2, which was filed consensually without objections. On page 2 from row 19 the Defendant describes his activity with the pistol and cartridges in a manner that leaves no room for doubt that he possessed the weapon and ammunition set forth in the indictment.

**Additional evidence**: The additional evidence for this charge is the abstention of the Defendant from commenting in any way on its facts within the framework of his primary and cross examination; once the Defendant opted to testify, the lack of response to a count is equivalent to additional evidence that constitutes supportive evidence.

**The result is that I suggest to my colleagues to convict the Defendant of this charge of the indictment.**

D.   The conclusions from the aggregate of findings

**I suggest that my colleagues convict the Defendant of the following offenses:**

**(1) Causing intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (no. 378), 5730-1970.
(Eleven offenses – eleven murder victims)

**(2) Attempt to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (no. 378), 5730-1970 and under Sections 19-20 of the Rules of Liability for an Offense Order (Judea and Samaria) (no. 225), 5728-1968.

[Stamp] P 2: 58

(3) **Laying of a bomb** – an offense pursuant to Regulation 58(B) of the Defense Regulations (Time of Emergency), 1945.

(4) **Membership in an illegal organization** – an offense pursuant to Regulation 85(1)(A) of the Defense Regulations (Time of Emergency), 1945.

(5) **Shooting at a person or a place in which persons may be** – an offense pursuant to Regulation 58(A) of the Defense Regulations (Time of Emergency), 1945.

The President of the Court Yair Tirosh and Judge Major Ze'ev Afik

We agree.

**Handed down and announced today, August 24, 2006, in public and in the presence of the parties.**

[Stamp] P 2: 58 [continued]

PsakDin.co.il – the Israeli legal website

| Judge | **President of the Court** | Judge |
|-------|---------------------------|-------|

Page 8 of 8                                                    www.PsakDin.co.il

[Stamp] P 2: 58

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

No. 04 Civ. 00397 (GBD) (RLE)

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

Defendants.

**DECLARATION OF RINA NE'EMAN**

Rina Ne'eman hereby certifies as follows:

1.  The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 2: 52-58.

2.  I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.  To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P 2: 52-58.

Rina Ne'eman

ss.: New Jersey

On the [ 6 ] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
6 day of February, 2014

_Leonor Troyano_
Notary Public

LEONOR TROYANO
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/3/2014

תיק מס': 2303/04

תאריך: ל' אב, תשס"ו
24, אוגוסט 2006

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה

בפני כב' האב"ד: רס"ן יאיר תירוש
השופט: רס"ן אמיר דהאן
השופט: רס"ן זאב אפיק

התביעה הצבאית

נגד

הנאשם: חלמי עבד אלכרים מוחמד המאש ת.ז 901415984/ שב"ס - נוכח
(באמצעות ב"כ עו"ד אוסאמה עודה)

רשמת: סמל מורן וייסמן

_____

## הכרעת דין

### השופט רס"ן אמיר דהאן

א . הנאשם, חילמי עבד אל כרים מחמד המאש ת.ז 901415984 ממחנה
הפליטים דהיישה, הועמד לדין בכתב אישום בתיק 2303/04 שהוגש ביום
23/5/04 לבית משפט זה.

ב. המשמעות הראייתית של ההסדרים הדיוניים בין הצדדים

1. ע"פ ההסדרים הדיוניים בין הצדדים יראה בית המשפט באמרות עת/3,4,5
עובדות שהוכחו, אך הרשעה על פיהן תדרוש תוספת ראייתית מאמתת מסוג
"דבר לחיזוק".

כמקובל לעניין אמרות בכתב שהוגשו בסתירה לעדות לעדוי בעל"פ או אמרות בכתב
ובע"פ של שותפים לעבירה או מעורבים ב"עסקת עבירה" תדרש תוספת
ראייתית מוגברת מסוג "דבר לחיזוק".

2. ע"פ ההסדרים הדיוניים בין הצדדים יראה בית המשפט באמרות הנאשם
עובדות שהוכחו,ללא צורך בתוספת ראייתית ויראו באמרות הנאשם אמרות
שנתנו באופן חופשי ומרצון,אף על פי כן,למעלה מן הצורך ולשם הזהירות
יבקש בית המשפט למצוא אם קיימת תוספת ראייתית מסוג "דבר מה נוסף"
המאמתת את אמרות הנאשם .

3. את סוגי התוספות הראייתיות קבעתי על פי דיני הראיות שהיו נוהגים אילו
נשמעו האמרות בפנינו כעדויות ממש והחומר היה מוגש לפי סעיפים 10א,
54(א) א, או 12 לפקודת הראיות (נוסח חדש) התשל"א 1971, הכל לפי
ההקשר של נותן האמרה לנאשם ולהליך המשפטי נגדו .

-1-

תאריך : ל' אב, תשס"ו     תיק מס' : 2303/04
24, אוגוסט 2006

**ג.קביעת ממצאים עובדתיים- ומשמעותם המשפטית**

**1. פרט אישום ראשון:** (הנחת פצצה עבירה לפי תקנה 58(ב) לתקנות ההגנה
(שעת חירום), 1945 נסיון להפעיל מטען חבלה כנגד רכב צבאי)

**טענות התביעה:** התביעה מבקשת מבית המשפט לראות באמרת הנאשם
ת/2 עמ' 3 שורה 4 את הראייה המרכזית ותומכת את הצורך בתוספת ראייתית
בעדות הנאשם בבית המשפט.

**טענות ההגנה:** ההגנה לא טענה דבר לגבי פרט אישום זה .

**דיון:**

**ראייה מרכזית:** אכן הראייה המרכזית מצווייה באמרת הנאשם שם מספר
הנאשם בפירוט כיצד יום בנה הניח והפעיל מטען חבלה (ת/2 עמ' 3 שורה 4
ואילך) אמרה זו הוגשה בהסכמה ללא צורך בתוספת ראייתית . (פרוטוקול
.(30/3/06

**תוספת ראייתית:** למעלה מן הצורך אציין כי תימוכין מספיקים נמצאו בעדות
הנאשם (פרוטוקול עמ' 4 שורה 20 עד עמ' 5 שורה 10), שם מספר הנאשם על
היכרותו עם שותפו ראמי כאמל ועל נסיון לפיצוץ מטען דומה בחרכבו ובטכניקת
היזימה שלו, שבצעו יחדיו ואכן עדות זו מחזקת את האמרה שהוגשה בהסכמה
במידה מספקת .

**התוצאה היא שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה .**

**2. פרט אישום שני :** (חברות בארגון גדוד חללי אל אקצ'א)

**טענות התביעה:**התביעה טוענת כי ראיה מרכזית לאישום היא אמרת הנאשם
(ת/1 עמ' 1 שורה 6) וזו מחוזקת באמרתו של אחמד צלאח ת/23 עמ' 4 שורה 6

**טענות ההגנה :** ההגנה הודתה בסיכומיה באישום זה .

**דיון:**

**ראייה מרכזית:** הראייה המרכזית היא אכן אמרת הנאשם ת/1 שם מתאר
הנאשם את גיוסו לחוליה של הארגון האמור בכתב האישום ומגייסו הוא אחמד
צלאח, לאמרה זו מצטרפת כמובן הודאת הסניגור בסיכומיו .

**תוספת ראייתית:** למעלה מן הצורך אציין כי אחמד צלאח באמרתו ת/23
מאשר את גיוסו של הנאשם לארגון "גדודי אל אקס'א כאמור בכתב
האישום .

**התוצאה היא שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה .**

**3 .פרט אישום שלישי:** (ירי לעבר אדם – ירי לעבר כלי רכב צבאי בסיס
התאום והקישור יחד עם שותפים)

**טענות התביעה:** התביעה טוענת כי ראיה מרכזית לאישום היא אמרת הנאשם
(ת/1 עמ' 1 שורה 12) וזו מחוזקת באמרתו של אחמד צלאח ת/23 עמ' 3 שורה
10 .

-2-

P 2: 53

תיק מס' : 2303/04                                                 תאריך : ל' אב, תשס"ו
                                                                  24, אוגוסט 2006

**טענות ההגנה** : ההגנה מודה בסיכומיה שהנאשם היה ברכב ושנסע אח"כ לביתו       1
של אחמד .                                                                        2
                                                                                 3
**דיון :**                                                                       4
                                                                                 5
**ראייה מרכזית** : הראייה המרכזית הינה, כטענת התביעה, אמרת הנאשם ת/1            6
שבה מתאר הנאשם במפורט כי נסע יחד עם אחמד צלאח ואנשים נוספים לבית               7
ג'ילא שם אמר להם אחמד "שאנחנו הולכים לעשות פיגוע ירי בכביש 60" בנשק           8
שהנאשם ראה ברשותו עוד בעלותו למכונית, אח"כ נשמע הנאשם להוראות                 9
אחמד צלאח המתין עד שנשמע יריות ונסע לביתו של אחמד (כפי שהודה הסניגור          10
בסיכומיו) האמרה ת/2 עמ' 2 שורות 4-5 מתארת את הפיגוע וגם שם המתין             11
הנאשם לשמיעתו של קול ירי לפני שהסתלק עם מכוניתו של אחמד צלאח.                12
                                                                                 13
**תוספת ראייתית** : התוספת הראייתית נמצאת בת/23 שם מתאר אחמד צלאח           14
כיצד העיד לנאשם תפקיד של שומר בפיגוע , דבר המחזק את אמרת הנאשם,               15
לפיה מילא אחרי הוראות אחמד צלאח לפיהן יסע לביתו של אחמד <u>רק אחרי</u>       16
<u>היריות .</u>                                                              17
                                                                                 18
אכן דין עם התביעה, גרסת הנאשם בבית המשפט כי הופתע מירי פתאומי                 19
של אחמד וחזר לביתו (של אחמד) במכוניתו (של אחמד) אינה יכולה לעמוד             20
בצוותא עם ההתנהגות המתוארת באמרות ועם העובדה שהן מחזקות זו את זו             21
בפרטים לוגיים , בעוד שעדות הנאשם לפיה נטל את מכוניתו <u>של אחמד</u> ונסע    22
<u>לביתו של אחמד</u> כאשר כל חפצו היה להרחיק עצמו מפיגוע שעמד אחמד         23
לבצע אינה עומדת בכל מבחן של הגיון והשתלבות בראיות האחרות שבפנינו .            24
                                                                                 25
**יסוד נפשי :**                                                             26
תימוכין ליסוד הנפשי הנדרש ניתן למצוא בעובדה שהנאשם המשיך לנסוע               27
לאחר שנודעה לו מטרת הנסיעה , המתין ושמר עד שנשמע את היריות ואח"כ             28
המשיך למלא את הוראות אחמד צלאח כל זה לאחר שהדברים נאמרו והיה                  29
ברור שמתוכנן ומבוצע פיגוע ירי.                                               30
נוסף לכך אומר הנאשם באמרתו ת/1 עמ' 1  11-10 במפורש לאחמד צלאח               31
שהוא  מסכים לבצע איתו פיגוע ירי                                              32
מכל אלה עולה יסוד נפשי ברור של כוונה לבצע את הפיגוע ולסייע בהוצאתו           33
לפועל האמור בכתב האישום.                                                     34
                                                                                 35
4.  <u>פרטי אישום 15-4:</u> (גרימת מוות בכוונה– שותפות בפיגוע התאבדות בקו 19   36
ירושלים)                                                                     37
                                                                                 38
הצדדים צמצמו את המחלוקת בנוגע לאישומים אלה לשאלת אחריותו                     39
הפלילית של הנאשם לפיגוע שהתבצע, עובדת ביצועו של הפיגוע, אופן                 40
ביצועו, מקומו, ויתר הפרטים המופיעים בכתב האישום בנוגע לפיגוע                 41
הוסכמו על ידי הצדדים .                                                       42

-3-

תיק מס׳ : 2303/04                                    תאריך : ל׳ אב, תשס״ו
                                                        24, אוגוסט 2006

כמו כן הסכימו הצדדים לגבי מעשי הנאשם לקידומו של הקשר עצמו ואלה
המעשים :

א.הנאשם שמע כי אחמד צלאח מחפש אדם המוכן להתאבד בפיגוע  והכיר לו
את עלי ג׳ירה אשר ממנו שמע כי רע לו והוא מעוניין לבצע פיגוע התאבדות .

ב.במהלך השיחה בין אחמד צאלח לעלי געארה נכח גם הנאשם .

ג .הנאשם רכש עבור אחמד צאלח מלח לימון בכמות של 7 ק״ג וארבע בטריות .

א.  אחמד צלאח ביקש מהנאשם מצלמת וידאו והנאשם ניסה להשיג לו מצלמה
   זו .

ב.  הנאשם יצר קשר עם אחמד צלאח לאחר הפיגוע ואחמד צלאח מסר לו כי
   המדובר הוא בפיגוע שעשאה עלי געארה .

**טענות התביעה:**התביעה טענה כי הנאשם קיים יסוד נפשי מלא לגרימת מוות
קרי ידע היטב את תוצאת המוות העלולה לצמוח ממעשיו וחפץ בה.
לשם תמיכה במסקנותיה ניתחה התביעה את האמור בראיות שהוגשו לבית
המשפט וטענה כי הן מובילות למסקנה חד משמעית של ידיעה וכוונה .

**טענות ההגנה :** ההגנה אינה טוענת כי הנאשם לא עשה מעשים לקידום הפיגוע
אלא שהיא טוענת כי הנאשם לא ידע בעת ביצוע המעשים שעשה לקידום
הפיגוע כי הם מיועדים לפגוע התאבדות בחומר נפץ.
לשם תמיכה בטענותיו ניתח ב״כ הנאשם את האמור בראיות השונות וביקש
מבית המשפט לראות בניתוח זה את העדר היסוד הנפשי הנדרש להרשעה
בגרימת מוות .

**דיון :** לאחר שניסיתי לנתח את אמרות והראיות ובדקתי את קיומו של הספק
הסביר לו טען הסניגור,הגעתי למסקנה כי התביעה הצליחה להוכיח את
האישום מעל ומעבר לכל ספק סביר .

**ראיה מרכזית :**

**ראשית ,** אציין כי הצדדים הגישו בהסכמה את אמרות אחמד צלאח ( עת/7 )
יחד עם שאר האמרות בלא לסייג בצורך בתוספת ראייתית כלומר בהסכמה
לכל האמור בהן .

**שנית ,** עיון באמרות אחמד צלאח ת/ 25-23 מעלה במפורש את ידיעתו של
הנאשם לעניין תוצאות הטבח ההמוני שבוצע והחפץ בתוצאתו של מוות כזה
אביא כאן מעט מתוכן האמרות :

ת/23 1 16-17

״דיברתי עם חילמי המאש סיפרתי לך עליו וביקשתי ממנו שיחפש לי מתאבד
לבצע פיגוע התאבדות
ומה חילמי עשה ?
אמר בסדר אבל עוד לא הביא לי וזיברתי איתו כמה פעמים על זה ,אחרי כמה
שבועות סיפר לי חילמי שיש לו מישהו אבל הוא לא בטוח בקשר אליו ואז אמרתי
לחילמי שילך שוב אליו וידבר איתו ויבדוק עליו ויראה איך הוא חילמי הסכים
הלך ובדק עליו חזר וסיפר לי שהוא בסדר ומוכן לבצע פיגוע התאבדות ... ובבית
שלו הוא הכיר לי את עלי געארה ״

-4-

תיק מס' : 2303/04

תאריך : ל' אב, תשס"ו
24, אוגוסט 2006

ת/24 עמ' 1 שורה 13

"למה ביקשת שחילמי המאש יבוא איתך? מה הסיבה?
כדי שיבוא איתי לעלי ג'ערה באתי לחילמי ואמרתי לו שבעזרת השם עלי ג'ערה יוצא
בבוקר לעשות פיגוע התאבדות ושיבוא איתי אליו ואז חילמי אמר לי שיש לו אורחים
והוא עסוק ."

ת23/ עמ' 2 ועמ' 3 3-5-4

"מה שאני רוצה להוסיף עכשיו זה שבבוקר אחרי שעלי גערה יצא לפיגוע התקשר
אלי חילמי המאש בערך בשעה 09:00-08:30
בבוקר ושאל אותי מה עם עלי אמרתי לו שבבוקר יצא לעבודה אחרי זה שוב התקשר
אלי חילמי וסיפר לי שסיפרו בחדשות שהיה פיגוע התאבדות בירושלים ולמחרת
סיפר לי חלמי שהיה בוקר (- מסדר בוקר אז ) בבית לחם במרכז המשטרה וחיפשו
את גערה וחילמי לא סיפר להם כלום "

**שלישית** בדיקת עדות הנאשם בפני בית המשפט והשוואתה עם הראיות
האחרות שהוגשו בהסכמה ( ת/23, ת/24, ת/1 , ת/2 ) מראה כי אין הגרסה
אותה גרס הנאשם מתיישבת או מפרשת את סדר הדברים באופן המיטיב עם
הנאשם הנאשם אינו מצליח ליישב את הסתירות עם אמרותיו שלו או עם
אמרות אחמד צלאח בקשר אליו,לגבי אמרות צלאח שהוגשו בהסכמה לא עלתה
כל הסתייגות. משעה שקשר צלאח את הנאשם כאיש שהביא אליו את
המתאבד,עקב אחרי התקדמות הפיגוע, קיבל הודעה ערב לפניו, והודיע כי חיפה
על המתאבד במקום עבודתו בבוקר שלמחרת – הרי עדות הנאשם אשר אינה
מסבירה דבר מכל אלה ומיחסת חזות תמימות לחלוטין אינה יכולה לעמוד עוד .
יותר מזה דברי הנאשם בבית המשפט עשויים לשמש אף חיזוק לדברי אחמד
צלאח באשר הוא מאשר בהם את היכרותם הקרובה, את קניית מלח הלימון
בצוותא את מסירתו עם צאלח לזאהר שאותו הכיר בשמו.

**רביעית** :עולה מאמרות אחמד צלאח שחילמי המאש ידע מתחילה ועד לסוף
שעלי ג'ערה עומד לבצע פיגוע התאבדות בהנחיית אחמד צלאח.

הנאשם היה זה זה שגייס את עלי לפיגוע ההתאבדות וקישר בינו ובין אחמד צאלח
ומכאן שמעשיו מעידים על יסודות הידיעה והחפץ בתוצאת הטבח ההמוני.

יש לזכור כי הנאשם שידע ערב לפני הפיגוע על הכוונה לבצע את הפיגוע אף
חיפה על המתאבד במקום עבודתם המשותף ברש"פ .

הנאשם,לא די שלא ניתק עצמו מהקשר כטענת הסניגור אלא יכול היה אף
למנוע את תוצאת הפיגוע אם היה מדווח למפקדיו ברש"פ את עילת נפקדותו של
עלי ג'ערה ממסדר הבוקר.

**תוספת ראייתית**: אף שאין בכך צורך הרי אמרותיו של הנאשם ת/1 ות/2
מחזקות את ת/23 ו- ת/24.באמרותיו מספר הנאשם שעלי ג'ערה שעבד עימו
ברש"פ סיפר לו שהוא רוצה לעשות פיגוע התאבדות והוא זה שהוליך אליו את
אחמד צלאח אשר ביקש לו קורבן .
אצטט לענין זה דוקא את ת/1 שאליה הפנה הסניגור וביקש בעבורה
להתעלם מת/2 .

-5-

תיק מס' : 2303/04      תאריך : ל' אב, תשס"ו
24, אוגוסט 2006

ת/1 עמ' 2 שורה 5

"דיבר איתי אחמד אל ע'זה ואמר לי שאחפש לו מישהו שרוצה לעשות פיגוע
התאבדות או פיגוע ירי ואני שמעתי את עלי ג'עארה הרבה פעמים שדיבר עם
האנשים ולכולם סיפר שהוא רוצה לעשות פיגוע התאבדות ואני ידעתי שהוא איש
מסכן והוא היה עובד גם במשטרה הפלסטינית"

מכאן אנחנו למדים שהנאשם הבדיל היטב בין "פיגועי ירי" ו"פיגועי התאבדות"
ולכן אין יסוד להבחנה אותה מציע הסניגור אשר הזמין אותנו לדון את הנאשם
על יסוד דבריו בת/1 בלבד גם לשיטתו נעשה על ידי הנאשם בידיעה מלאה שידוך
בין מתכנן הפיגוע לבין האיש המסכן ( גם לדבריו!) שהיה אמור לשמש כמרעום
– אדם לפצצה.

כך או כך בת/2 אשר הוגשה גם היא בהסכמה מלאה מפרט הנאשם עמ' 2
שורה 9

"עלי אמר לי כי רוצה חגורת נפץ כבדה כדי להרוס את העולם ואז לאחר שראיתי כי
עלי מוכן מבחינה נפשית לפיגוע העברתי אותו לאחמד אבו ע'דב ........ ושבוע לפני
הפיגוע יצאתי עם אחמד אבו ע'דב לבית לחם ושם קנינו 7 ק"ג מלח לימון וארבע
בטריות ונסענו לדוחא שם אחמד מסר את החומרים לזאהר בעוד אני ממתין ברכב
ואחמד אמר כי לאחר הפיגוע יכיר לי את זאהר מקדאד שמכין את המטענים ואת
מחמוד מעאלי שתפקידו להוביל את המתאבדים"

דברים אלה, מגלמים ידיעת התוצאה ופעולה למען תוצאה שהנאשם חפץ בה
ללא ספק כשותף מלא בביצוע הפיגוע תוך שהוא מנצל ביודעיו את מצבו הנפשי
הקשה של עלי ג'עארה ומשתמש בו לשם קידום תוכנית של פיגוע נפץ ואף מחפה
על הפיגוע ויוזמיו תוך מעילה בתפקידיו ברש"פ ובחובות שהיו לו כלובש
מדים.

לא די בזאת שהיה כאן יסוד נפשי של כוונה רצחנית אלא יסוד עובדתי של
שליטה מלאה בכל שלב, מעקב וידיעה בכל שלב ויכולת להפסיק את מעשה
הטבח המתוכנן ע"י מעשה פשוט של דיווח לממונים.
הנאשם לא עשה כן ובכך שימש כחוליה הכרחית שבלעדיה אין בביצוע הפיגוע
ונטל חלק חשוב ביודעין ובכוונה בכל שלבי תכנונו וביצועו של הטבח ואף מנע
את סיכולו של הטבח תוך שהוא מחפה על עלי ג'עארה. הנאשם הינו חלק בלתי
נפרד מהמעגל הפנימי של ביצוע העבירה ומכאן שיש להרשיע כשותף מלא
לביצוע ולא כמסייע.

העולה מן המקובץ הוא שביקשתי לי ספק בכוונות הנאשם ולא מצאתיהו .

אני מציע לחברי להרשיע את הנאשם כשותף בעבירות המיוחסות לו.

**פרט אישום 16:** (החזקת אמל"ח – החזקת אקדח וכדורי רובה בשנים
2001-2002 )

**טענות התביעה:**התביעה מבססת את טענתה להרשעת הנאשם על אמרתו ת/2
בלבד.

**טענות ההגנה** : ההגנה לא טענה דבר בנוגע לאישום זה .

**דיון:**

-6-

תיק מס׳: 2303/04                                 תאריך: ל׳ אב, תשס״ו
                                                 24, אוגוסט 2006

**ראיה מרכזית**:הראייה המרכזית לאישום זה הינה אמרת הנאשם ת/2 אשר      1
הוגשה בהסכמה ללא הסתייגות בעמ׳ 2 החל משורה 19 מתאר הנאשם את       2
פעילותו באקדח ובכדורים ובדקדוק שאינו מותיר כל מקום לספק בדבר החזקתו       3
בנשק ובתחמושת האמורים בכתב האישום.       4
                                                                           5
**תוספת ראייתית**: התוספת הראייתית לאישום זה היא המנעות הנאשם       6
מהתייחסות כלשהי לעובדותיו במסגרת חקירתו הראשית והנגדית, משבחר       7
הנאשם להעיד הרי העדר התייחסות לפרט כמוהו כתוספת ראייתית המהווה       8
דבר מה נוסף.       9
                                                                          10
התוצאה היא שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה .       11
                                                                          12
                                                                          13
**ד. העולה מן המקובץ**       14
                                                                          15
אני מציע לחברי להרשיע את הנאשם בעבירות הבאות :       16
(1) **גרימת מוות בכוונה** – עבירה לפי סע׳ 51 לצו בדבר הוראות ביטחון (יהודה       17
ושומרון) (מס׳ 378), התש״ל – 1970.       18
(**אחת עשרה עבירות –אחד עשר נרצחים**)       19
(2) **ניסיון לגרימת מוות בכוונה** עבירה לפי סע׳ 51 לצו בדבר הוראות ביטחון (יהודה       20
ושומרון) (מס׳ 378), התש״ל – 1970 ולפי סע׳ 19,20 לצו בדבר כללי האחריות       21
לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח – 1968.       22
(3) **הנחת פצצה** עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.       23
(4) **חברות בהתאחדות בלתי מותרת** עבירה לפי תקנה 85 (1)(א) לתקנות ההגנה       24
(שעת חירום), 1945.       25
(5) **ירי לעבר אדם או מקום שבני אדם עשויים להימצא בו** עבירה לפי תקנה 58(א)       26
לתקנות ההגנה (שעת חירום), 1945.       27
                                                                          28
                                                                          29
**האב״ד רס״ן יאיר תירוש והשופט רס״ן זאב אפיק**       30
                                                                          31
אנו מסכימים.       32
                                                                          33
**ניתן והודע היום**, 24/08/06 , בפומבי ובמעמד הצדדים.       34
                                                                          35
שופט                           אב״ד                    שופט       36

-7-