# EXHIBIT I.360



PLAINTIFF'S
EXHIBIT
360

**Israel Defense Forces**

Before the Military Court
in Samaria
before a panel

Court Case: 6446/02
Prosecution case: 756/02
Detailed incident case: 4968/02 Petach Tikva
4258/02 Yarkon
502/02 Zion
4685/02 Petach Tikva Station

[Stamp]
The Military Court in Samaria
June 23, 2002
[illegible]

In the trial between:

### The military prosecutor

- The Prosecutor -

- v. -

### Ibrahim Adnan Najib Abdel Hai

(detained since June 3, 2002)

Identity No. 411124423, born on August 20, 1979, from the village Burin

- The Defendant -

### Indictment (Amended)

The above mentioned Defendant is hereby accused of committing the following offenses:

**First count**:

**Nature of the offense:** Membership in an illegal organization, an offense pursuant to Regulations 84(1)(A) and 85(1)(A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, during the course of the month of December 2000 or thereabouts, was a member of a military cell belonging to the Al Aqsa Martyrs Brigades, which is an illegal organization;

[Stamp] P 5: 218

Prosecution Case 444/02 Amended

1

In other words: the above mentioned Defendant, at the time that was set forth above, decided to join a military cell in order to engage in military activity against Israeli targets within the framework thereof.

For this purpose, the Defendant approached his colleague, Mohamed Ahmad Mustafa Alqassam (hereinafter – **Mohamed**), and informed him of his wish to engage in military activity. The above mentioned Mohamed told the Defendant that there was a military cell belonging to the Al Aqsa Martyrs Brigades, which carried out shooting and explosive device laying attacks against Israeli targets. Mohamed suggested that the Defendant join this cell, and the Defendant agreed to do so.

[Stamp] P 5: 218 [continued]

Prosecution Case 444/02 Amended

In addition to the Defendant, the members of this cell, which was known as the "Old City" cell, were: Mahdi Abu Gajala, Basel Albizra, Saad Jawabra, Kamal Shihab and Mueid Jamil.

The Defendant, three months from the day when he joined up with the above mentioned military cell, decided following a personal conflict that he had with one of the members of the cell, to discontinue his membership in this cell.

After the Defendant left the above mentioned cell, in March 2001 he encountered the military operative Raed al-Karmi. The Defendant asked Raed al-Karmi to engage in military activity with him.

Raed al-Karmi consented to the request of the Defendant and introduced to him a military operative of the Al Aqsa Martyrs Brigades, Nasser Aweis.

When the military operatives Mohamed Alqassam, Kamal Yusef Shihab, Assad Jawabra knew that the Defendant was working with Nasser Aweis, they asked him to join the cell to which the Defendant belonged. Nasser Aweis consented to their enrollment into the cell.

The membership of the Defendant in the military cell continued until the day of his arrest.

**Second count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, during October 2001 or thereabouts, attempted with another person to cause the intentional death of another person;

In other words, the above mentioned Defendant, at the time that was set forth above, in the evening hours, departed with his fellow cell members, Mohamed Alqasam, Kamal Yusef Shihab and Saad Jawabra, towards the Dir-Sharaf checkpoint in order to carry out a terrorist attack.

Nasser Aweis gave the Defendant approval to carry out the attack, and provided him with an M-16 rifle with two magazines.

The Defendant and his above mentioned colleagues traveled to the site of the checkpoint using a stolen Volkswagen type vehicle.

[Stamp] P 5: 219

Prosecution Case 444/02 Amended

When they arrived close to the checkpoint, 15 meters away from it, they turned their vehicle in the opposite direction, the Defendant and Mohamed Alqassam opened the rear doors and fired the rifles at the three soldiers who were standing at the checkpoint, while the vehicle in which he was sitting was heading towards Nablus.

The Defendant fired all of the cartridges that were inside the magazine towards the soldiers, and Mohamed Alqassam also fired all of the cartridges that were inside the magazine towards the soldiers.

The soldiers did not shoot back at first; but after the vehicle in which the Defendant was traveling was 300 meters away, the Defendant and his colleagues heard gunshots.

[Stamp] P 5: 219 [continued]

Prosecution Case 444/02 Amended

4

**Third count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, during 2001 or thereabouts, was an accomplice in an attempt to cause the intentional death of another person;

In other words, the above mentioned Defendant, at the above mentioned time, was requested by Mahmoud A-Titi, a military operative of the Al Aqsa Martyrs Brigades, organization, to participate in the execution of a shooting attack against an Israeli vehicle.

Mahmoud Titi told the Defendant that he had tracked the movement of a Subaru type vehicle that was being driven by an Israeli officer.

The Defendant agreed to the suggestion of Mahmoud Titi.

Accordingly, the Defendant, along with Mahmoud Titi, Kamal Shihab and Nasser Alhatib, waited in hiding near Rujeib Junction for the vehicle that was traveling from the Elon Moreh area towards Hawara.

The Defendant was armed with an M-16 type rifle, Nasser Alhatib was armed with a Kalashnikov, and Mahmoud Titi was armed with a machine gun, and Kamal Shihab was armed with an M-16 type rifle.

When the vehicle approached to a distance of approximately 200 meters from the site at which the Defendant and the fellow squad members were waiting, the Defendant fired about two rounds at it, Nasser Alhatib fired about 11 rounds and Mahmoud Titi fired about 10 rounds at it.

**Fourth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, during January 2002 or thereabouts, participated in an attempt to cause the intentional death of another person;

[Stamp] P 5: 220

Prosecution Case 444/02 Amended

In other words,  at the above mentioned time, Kamal Shihab and Mohamed Alqassam conducted surveillance of a mobile home in the Israeli settlement of Yitzhar. Kamal Shihab and Mohamed Alqassam learned from their surveillance that a person would come to the mobile home every day.

After conducting the surveillance, the Defendant conspired with Kamal Hatib , Kamal Shihab, Iad Hamdan, Mohamed Alqassam to carry out a shooting attack at the mobile home.

The Defendant devised the attack execution plan, and according to the plan, he was in charge of the cell during the execution of the attack.

The Defendant departed with the above mentioned gang, whose members were armed with M-16 type rifles, and English rifle, a Kalashnikov, towards the area of the settlement of Yitzhar.

[Stamp] P 5: 220 [continued]

Prosecution Case 444/02 Amended

When they arrived at the site, they waited on a hill that was approximately 300 meters away, overlooking the area.

After an hour, an open pickup type vehicle arrived at the mobile home, and three people alighted from it.

When the people approached the mobile home, the Defendant and his colleagues fired at them using the weapons in their possession. The Defendant fired approximately 10 rounds.

After the gunfire, the Defendant and his colleagues fled from the site.

**Fifth count**:

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in late February 2002, together with others, caused the intentional death of another person, as follows:

1.   The above mentioned Defendant, at the above mentioned time, when he participated in the funeral of Mohamed Ahmed Mustafa Alqassam, attended Rafidia Hospital in Nablus, and during his stay there, Mohamed Burhan said that the late Zahir Turabi (hereinafter – **the Deceased**) was at the hospital. The Defendant told Mahmoud A-Titi about this.

2.   After Mahmoud A-Titi heard about this, he abducted the Deceased from the hospital. Thereafter, Mahmoud A-Titi told the Defendant that he had questioned the Deceased about suspicions of collaboration with the State of Israel, and the Deceased confessed to this, and therefore [he] decided to murder the Deceased.

3.   The Defendant asked Mahmoud A-Titi to meet him in the evening hours in order for him to take them to a suitable place at which he would murder the Deceased. The Defendant met again Mahmoud A-Titi, Mueid Jamil, Yasser Abu Bakhar, and the Deceased was with them. The Defendant and his colleagues drove, using a Volkswagen type vehicle, to the Engineers neighborhood near Jenid.

[Stamp] P 5: 221

Prosecution Case 444/02 Amended

4.  At the above mentioned site, they took the Deceased out of the vehicle. The Defendant asked the Deceased to pray before they murdered him, but the Deceased refused. The Defendant asked him whether he would be prepared to murder the handler from the General Security Service who was responsible for him, but the Deceased refused to do so.

5.  And then Mahmoud A-Titi and Mueid Jamil fired at the Deceased approximately 15 rounds, with the intent of causing his death. Thereafter, the Defendant approached the Deceased and fired one round into his head, in order to make sure that he was dead.

6.  As a result of this, the death of the Deceased was caused.

[Stamp] P 5: 221 [continued]

Prosecution Case 444/02 Amended

7.    The Defendant and his colleagues placed the "confession" of the deceased and a leaflet of the Al Aqsa Martyrs Brigades organization on his body.

**Sixth count**: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on January 22, 2002 or thereabouts, was an accomplice in causing the intentional death of another person, as follows:

1.    During the course of his work in the Palestinian Naval Police, the Defendant met Sa'id Ibrahim Ramadan (hereinafter – "**Sa'id**"). During one of their meetings, Sa'id told the Defendant that he wanted to carry out a suicide attack, and the Defendant asked Sa'id to give him an opportunity to check out the matter.

2.    The Defendant contacted Nasser Aweis and informed him of the intentions of Sa'id; and the former referred him to Mahmoud A-Titi. The Defendant met Mahmoud A-Titi and informed him of Sa'id's intentions. Mahmoud Titi asked the Defendant to check the sincerity of Sa'id's intentions.

3.    The Defendant, with the aim of testing Sa'id, put a "dummy" explosive belt on him and gave him an imaginary telephone number, sent him from the Zawata area to the Tulkarm area, and asked him to call him when he arrived in the Tulkarm area. Said put on the explosive belt and started towards Tulkarm. The Defendant, who found that Sa'id was steadfast, asked him to return, on the pretext that the attack time had changed due to military checkpoints on the way. Sa'id was angry with the Defendant, who asked him to be prepared to carry out the attack at any time.

4.    Accordingly, the Defendant contact Mahmoud A-Titi and told him that Sa'id was prepared to carry out the attack, and he asked the Defendant to have him meet Sa'id.

5.    During that period, Ahmed Taleb Mustafa Barghouti (hereinafter – **Ahmed**) had contacted Nasser Aweis and asked him to send him a person who was prepared to carry out a suicide attack. Ahmed told Nasser Aweis that he himself would see to driving the suicide terrorist to Jerusalem in order for him to carry out the suicide attack.

[Stamp] P 5: 222

Prosecution Case 444/02 Amended

9

6.  The Defendant brought Sa'id to the home of Mahmoud A-Titi, and in Mahmoud's home was a person called Yasser Abu Bakhar, and another person called Majed al-Masri. Mahmoud and Majed filmed Sa'id, and Yasser wrote Sa'id's will. Sa'id was filmed while holding an M-16 type rifle, a Koran and reading out his will.

7.  Thereafter, the Defendant took Sa'id to his family, where he parted from them without informing them of his intentions of committing suicide.

8.  Thereafter, the Defendant asked Sa'id to depart to Ramallah on the following day.

[Stamp] P 5: 222 [continued]

Prosecution Case 444/02 Amended

And in the morning of the following day, the Defendant noticed that Sa'id was departing for Ramallah.

9.  On January 22, 2002, the above mentioned Sa'id met the above mentioned Ahmed in Ramallah and informed him that he had been sent by Nasser Aweis for the purpose of carrying out a suicide attack.

10. The above mentioned Ahmed called Mohamed Abed Rahman Salam Maslah (alias "Abu Satha") and asked him to come to him. Mohamed Maslah met Ahmed and Sa'id in Ramallah. Ahmed and Mohamed Maslah took Sa'id to a barber shop in order for him to have his hair cut before performing the planned suicide attack.

11. Thereafter, the above mentioned Ahmed and Mohamed Maslah called Fares Sadeq Mohamed Ghanem (alias "Hitawi") and asked him to drive a suicide bomber, referring to Sa'id, from Ramallah to Jerusalem in order for the suicide bomber to carry out a suicide attack there and cause the death of as many Israeli civilians as possible.

12. Fares Ghanem arrived in Ramallah along with Mohamed Sami Ibrahim Abdullah (hereinafter – **Mohamed Abdullah**), after the latter had agreed to participate in driving the suicide terrorist from Ramallah to Jerusalem. Fares Ghanem arrived at the meeting in an Isuzu pickup vehicle with Israeli license plates.

13. At the instruction of the above mentioned Ahmed, Fares Ghanem and Mohamed Abdullah traveled in the Isuzu vehicle from Ramallah to Jerusalem in order to find a route that had no police or IDF checkpoints, with the aim of driving the suicide terrorists later on the same route, to carry out the planned attack in Jerusalem.

14. Mohamed Abdullah and Fares Ghanem traveled from Ramallah through Rafat and arrived at the Atarot Industrial Zone; there the two returned to the main Jerusalem – Ramallah road and took a left to the junction leading to Rama Junction, where they turned right and drove to Adam Junction. At Adam Junction the two turned right and traveled to Hizma junction, where they turned right and entered Anta. Through Anta, they arrived at the French Hill junction, where the two turned right and returned to Ramallah.

[Stamp] P 5: 223

Prosecution Case 444/02 Amended

Mohamed Abdullah and Fares Ghanem saw that via the route that they had traveled, they could drive the suicide terrorist to Jerusalem without being stopped at police or IDF checkpoints.

15.  Mohamed Maslah, at the instruction of Ahmed, brought an M-16 assault rifle and 3 magazines for the above mentioned assault rifle, filled with cartridges, two of the magazines being connected by a magazine coupler ("jungle clip").

16.  On the same day, Ahmed, Mohamed Maslah and Sa'id met Mohamed Abdullah and Fares Ghanem in the area of the City Inn Hotel in Al Bira. Ahmed introduced Mohamed Abdullah and Fares Ghanem to the above mentioned Sa'id.

17.  Ahmed explained to Mohamed Abdullah and to Fares Ghanem that Sa'id was the suicide terrorist, whom they had to drive to Jerusalem in order for him to carry out the suicide attack there by shooting at Israeli civilians with the aim of causing the death

[Stamp] P 5: 223 [continued]

Prosecution Case 444/02 Amended

12

of as many civilians as possible.

18.  Mohamed Abdullah and Fares Ghanem hid the above mentioned M-16 assault rifle and magazines in the above mentioned Isuzu vehicle.

19.  Mohamed Abdullah and Fares Ghanem drove Sa'id to Jerusalem via the route that they had checked out earlier that day, as described above.

20.  In Jerusalem, Mohamed Abdullah and Fares Ghanem traveled to Sheikh Jarah Street. There, they took out the M-16 assault rifle and the magazines that were hidden inside the vehicle and handed them over to Sa'id, and continued driving towards Hanevi'im Street. Upon reaching the junction of Strauss and Hanevi'im Streets, the two stopped the Isuzu vehicle.

21.  Mohamed Abdullah and Fares Ghanem told Sa'id to alight on foot to Jaffa Street and start shooting wherever he would see many people.

22.  After Sa'id alighted from the vehicle, at the above mentioned site, with the M-16 and the ammunition, Mohamed Abdullah and Fares Ghanem drove away in the Isuzu vehicle, through the Musrara neighborhood to Highway No. 1, and from there traveled through the main road to Ramallah. At the same time, a few minutes later, Sa'id arrived at Jaffa Street, armed with the M-16 assault rifle and the ammunition.

23.  At about 4:20 p.m., while standing opposite Building No. 47 in Jaffa Street or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he was carrying, shouted "Allahu Akbar" and discharged automatic gunfire indiscriminately at the people who were on Jaffa Street, at the bus stop at the site, aboard the No. 27 Egged bus that was at this stop at the time and at the people who were within the stores nearby with the aim of causing the death of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the site towards the parking lot on Harav Kook Street. There, Sa'id Ramadan changed magazines and continued to shoot at civilians with the aim of causing their death. Sa'id Ramadan fired through the M-16 assault rifle that he carried more than 38 cartridges. Sa'id Ramadan continued to shoot at civilians until he was killed by civilians and policemen who arrived at the site.

24.  By his acts as described above, the above mentioned Defendant caused the intentional death of **the late Ora (Svetlana) Sandlar**, who died as a result of gunshot wounds caused by the bullets that were fired by the aforementioned Sa'id.

[Stamp] P 5: 224

Prosecution Case 444/02 Amended

13

**Seventh count**: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on January 22, 2002 or thereabouts, was an accomplice in causing the intentional deaths of other persons;

[Stamp] P 5: 224 [continued]

Prosecution Case 444/02 Amended

In other words, by the actions of the Defendant described in the previous count of the indictment, **the late Sarah Hamburger** died, having succumbed to the gunshot wounds from the bullets that were fired by Sa'id Ramadan.

### Eighth count: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on January 22, 2002 or thereabouts, was an accomplice in attempting to cause the intentional death of others.

In other words, as a result of the attack described in the previous count of the indictment, the Defendant attempted to cause the death of others. As a result of the attack, more than 45 civilians who were at the site were slightly to severely injured.

### Ninth count: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in causing the intentional death of others, as follows:

1.  At the above mentioned time, Ibrahim Hasouna approached the Defendant and informed him of his wish to carry out a suicide attack. The Defendant, with the aim of examining the sincerity of the intentions of Ibrahim Hasouna, sent him with a "dummy" explosive belt, took him to the Zawata area, gave him a telephone number and told him to call to let him know when he would reach the Tulkarm area.

2.  After the Defendant made sure of the sincerity of the intentions of Ibrahim, they asked him to return and told him that the time of the attack had been deferred. The Defendant took Ibrahim Hasouna to the home of Mahmoud A-Titi, where they filmed him with a video camera.

[Stamp] P 5: 225

Prosecution Case 444/02 Amended

Ibrahim Hasouna read out a will in which he said that the attack was revenge for the death of Mohamed Alqassam and Raed al-Karmi.

3.      During that period, Ahmed Taleb Mustafa Barghouti (hereinafter – **Ahmed**) called Nasser Mahmoud Aweis by telephone, and during the call Nasser Aweis informed the above mentioned Ahmed that he was sending him an additional suicide terrorist in order for Ahmed to send him into the State of Israel for carrying out a shooting attack.

4.      The Defendant took Ibrahim Hasouna to a place in which he often slept in the Almahfia area. On the following day, on March 4, 2002, he sent him to Ramallah, gave him a telephone number, and asked him to call him once he arrived in Ramallah. Ibrahim Hasouna did so, when he arrived in Ramallah.

[Stamp] P 5: 225 [continued]

Prosecution Case 444/02 Amended

5.  Ibrahim Hasouna contacted the above mentioned Ahmed, and told him that he had arrived in Ramallah according to the instruction of Nasser Aweis and that he was the suicide attacker for the purpose of carrying out the planned suicide attack.

6.  Ibrahim Hasouna boarded the vehicle, which Mazen Alkadi was driving, with Murad Ajluni sitting beside him, and the three drove towards Tel Aviv, in order to carry out the planned suicide attack there.

7.  On that night, after Mazen Alkadi, Murad Ajluni and Ibrahim Hasouna arrived in Tel Aviv, near Ma'ariv Bridge on Petach Tikva Road, Murad Ajluni showed Ibrahim Hasouna a crowded place and instructed him to carry out the planned attack there.

8.  Ibrahim Hasouna took out the above mentioned M-16 assault rifle, magazines and hand grenades, which were concealed in the door of the vehicle.

9.  At about 2:15 a.m., on March 5, 2002 or thereabouts, Ibrahim Hasouna, who was armed with the above mentioned M-16 assault rifle, hand grenades and commando knife, alighted from the vehicle near the Seafood Market restaurant (hereinafter – **the Restaurant**) in order for him to carry out the planned attack. At the same time, Murad Ajluni and Mazen Alkadi drove away from the site in the vehicle towards Jerusalem.

10. Ibrahim Hasouna approached the Restaurant and discharged automatic gunfire from the M-16 assault rifle at the occupants of the Restaurant and passersby in Petach Tikva Road with the intent of causing their death.

11. Thereafter, Ibrahim Hasouna threw the two hand grenades at the Restaurant with the intent of causing the death of the occupants of the Restaurant and passersby, but the hand grenades did not detonate.

12. After the M-16 assault rifle, which Ibrahim Hasouna carried, stopped firing due to a stoppage, Ibrahim Hasouna took out the above mentioned commando knife that he was carrying and started to stab Israeli civilians who were at the site with the intent of causing their death.

[Stamp] P 5: 226

Prosecution Case 444/02 Amended

13.    The late policeman Master Sergeant Salim Barikat arrived at the said site, rushed at Ibrahim Hasouna and overpowered him. The late Master Sergeant Salim Barikat had the chance to inform his commanders that he had overpowered the terrorist.

14.    At this stage, Ibrahim Hasouna stabbed the late Master Sergeant Salim Barikat using the above mentioned commando knife with the intent of causing his death. As a result of the stab wound, the late Master Sergeant Salim Barikat died at the site.

15.    By his acts described above, the above mentioned Defendant caused the intentional death of **the late Master Sergeant Salim Barikat.**

[Stamp] P 5: 226 [continued]

Prosecution Case 444/02 Amended

**Tenth count**: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in causing the intentional death of others.

In other words,  by his acts described in the previous count of the indictment, **the late Yosef Habi**, who was stabbed by Ibrahim Hasouna in the chest and other parts of his body, died.

**Eleventh count**: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in causing the intentional death of others.

In other words,  by his acts described in the previous count of the indictment, **the late Eliyahu Dahan**, who was stabbed by Ibrahim Hasouna in the chest and other parts of his body, died.

**Twelfth count**: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in attempting to cause the intentional death of others.

In other words,  the above mentioned Defendant, by his acts described in the previous count of the indictment, attempted to cause the death of as many civilians as possible.

[Stamp] P 5: 227

Prosecution Case 444/02 Amended

As a result of the rounds that were fired by Ibrahim Hasouna, dozens of Israeli civilians were slightly to severely injured.

**Thirteenth count**:

**Nature of the offense:** Possession of war materiel, an offense pursuant to Section 53(A)(1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The aforesaid Defendant, in the Area, during March 2002 or thereabouts, possessed a firearm, ammunition, hand grenade, tool, object or thing designed or capable of causing death

[Stamp] P 5: 227 [continued]

Prosecution Case 444/02 Amended

or severe injury, without a permit certificate issued by or for a military commander;

In other words, the above mentioned Defendant, at the above mentioned time, received from the coordinator of naval security in Nablus, Azam Balidi, 6 magazines for a Kalashnikov rifle, 30 detonators for explosive devices, 2 kg of gunpowder and a grenade launcher.

The Defendant received that which has been set forth above at a frequency of three times a month.

**Fourteenth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, during April 2002 or thereabouts, attempted with others to cause the intentional death of others, as follows:

1.   At the above mentioned time, the Defendant along with Al Aqsa Martyrs Brigades operatives, Kamal Hatib, Mahmoud A-Titi, Iad Hamdan, Ahmed Sawalma and Mohamed A-Titi, fired at IDF forces when they entered the Balata Camp.

2.   The Defendant and his above mentioned colleagues, who anticipated the entry of IDF forces into the camp, placed many explosive devices at the entrance to the camp. When IDF forces entered, the Defendant and his fellow cell members detonated the explosive devices against the military forces and fired at them using weapons.

3.   The Defendant and his fellow cell members acted as set forth for eight days.

4.   After the army departed from the camp. The Defendant and his fellow squad members started to prepare a large number of explosive devices, to use them against the military forces if they reentered the camp.

**Fifteenth count**: **(Detailed Incident 4685/02, Petach Tikva Station)**

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 2 and 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 5: 228

Prosecution Case 444/02 Amended

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, On May 27, 2002, with others, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, at about the time set forth above, was contacted by Jihad Ibrahim A-Titi (hereinafter – **Jihad**) and asked him to prepare him to carry out a suicide attack in Petach Tikva. Jihad told the Defendant that he had worked at the shopping mall in Petach Tikva, and was very familiar with the site.

2.  The Defendant told Abu Ramush and Nihad Sabah that Jihad wanted to carry out a suicide attack in revenge for the death of Mahmoud A-Titi.

[Stamp] P 5: 228 [continued]

Prosecution Case 444/02 Amended

3.   The day before the execution of the attack, with Nihad Sabah, the Defendant brought Jihad to his home in the Balata camp, where they filmed him that a video camera while he was holding an M-16 type rifle.

4.   After the Defendant finished filming Jihad, he asked Wadah Ali Amin Bazra (hereinafter – **Wadah**) to drive him and Jihad to Rafidia. When they arrived at the site, the Defendant called [unidentified abbreviation] and informed him that he had arrived at the café.

Wadah called Nihad Subah and Diaa Altakrouri and checked with them whether they had transferred an explosive belt to Raed Alashkar (hereinafter – **Raed**).

About five minutes later, Raed arrived, carrying a black package, which contained an explosive belt for carrying out the attack. Raed transferred the package to the Defendant. The Defendant transferred the package to Wadah, and asked Raed to join the taxi in which Jihad was traveling. The Defendant asked Jihad [sic] to drive behind the taxi in which Jihad was traveling.

5.   Wadah drove after the taxi in which Jihad was traveling, and when they reached the town Azoun Alatma, at about 1:30 p.m., Wadah transferred the package to Jihad and Raed. Wadah called the Defendant and updated him that he had transferred the package as set forth. Thereafter, Wadah returned to Nablus.

6.   After Jihad arrived with Raed in Kfar Kassem and boarded the taxi, Raed called the Defendant and informed him that Jihad had boarded the taxi en route to carrying out the attack.

7.   At about 6:30 p.m., the above mentioned Jihad arrived at the Em Hamoshavot Shopping Mall in Petach Tikva, as mentioned, near the place at which he had worked previously, while wearing an explosive belt. Jihad approached a crowded place near a patisserie at 1 Rishon le Zion Street and detonated the explosive belt that he was wearing, with the intent of causing the death of other persons.

8.   As a result of the execution of the attack, **the late Ruth Peled** died.

[Stamp] P 5: 229

Prosecution Case 444/02 Amended

**Sixteenth count**: (Detailed Incident 4685/02, Petach Tikva Station)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 2 and 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on May 27, 2002, with others, caused the intentional death of another person;

In other words, as a result of the suicide attack described in the previous account of the indictment that was carried out by Jihad, the **late infant Sinai Keinan** died.

[Stamp] P 5: 229 [continued]

Prosecution Case 444/02 Amended

**Seventeenth count**: **(Detailed Incident 4685/02, Petach Tikva Station)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 19-20, 2 and 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on May 27, 2002, attempted with others to cause the intentional death of others;

In other words,  in the circumstances described in the previous count of the indictment, the Defendant attempted to cause the death of others. As a result of the execution of the attack by Jihad as set forth above, dozens of civilians were injured to varying degrees of severity.

**Eighteenth count**:

**Nature of the offense**: Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, at the time set forth above, met Abu Ramush, who told him that he was planning to carry out a suicide attack in the Israeli settlement Shavei Shomron, for which purpose he was planning to send "Muhannad Abu Zir" to carry out the attack.

The Defendant expressed his consent to the plan of Abu Ramush.

The Defendant provided Abu Ramush three Magazines for a Kalashnikov type rifle, in order for him to use them in the commission of the attack.

**Nineteenth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on several occasions, attempted with others to cause the intentional death of others, as follows:

[Stamp] P 5: 230

Prosecution Case 444/02 Amended

25

1.   In early 2001 or thereabouts, the Defendant departed with his fellow cell members, Basel
     Albizra, Mahdi Abu Gazala, Saed Jawabra, Kamal Yusef Shihab, armed with M-16 type
     rifles, and the Defendant carried a Kalashnikov type rifle, and together they fired at a
     military jeep that was near Tzara Junction. The Defendant fired approximately 16 rounds
     at the military jeep, and his colleagues fired the rifles that they were carrying.

     After the gunfire, the Defendant and his fellow cell members fled to the Beit Alma Camp.

[Stamp] P 5: 230 [continued]

Prosecution Case 444/02 Amended

2.  After a few days, from that which has been stated above, the Defendant departed, **on several occasions**, along with his fellow cell members, towards a military point located near Har Grizim Junction, armed with rifles, and the Defendant was armed with an M-16 type rifle. The Defendant fired at the military point along with his colleagues.

3.  After early 2002, the Defendant, who was armed with a Kalashnikov type rifle, fired with Mohamed Alqassam, Kamal Shahib and Mueid Jamil at a military point located between Tel and Burin.

**Twentieth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on several occasions, attempted with others to cause the intentional death of others, as follows:

1.  In early 2001 or thereabouts, the Defendant, armed with a Kalashnikov type rifle, with Saed Jawabra and Kamal Yusef Shihab, who were armed with M-16 type rifles, laid two explosive devices, then connected a battery and 300 meter long wires to them. On that day, in the evening, a military jeep passed on the road leading to the settlement Bracha, and the above mentioned Kamal detonated the two charges, as a result of which the two explosive devices exploded.

    Thereafter, the Defendant and his colleagues fled to Nablus.

2.  About a week later, the Defendant and his fellow cell members, who were armed with firearms, laid an explosive device weighing 50 kg, at Iba Junction. The Defendant and his colleagues concealed the explosive devices in weeds. The Defendant and his colleagues connected 200 meter long wires to the explosive device.

    When a military jeep and a tank passed by the site, Kamal detonated the explosive device, after the tank stopped.

3.  During October 2001 or thereabouts, the Defendant, with his fellow cell members, Ahmed Sawalma, Kamal Alhatib, Mohamed Qassam, Iad Hamdan, laid two explosive devices on the bypass road overlooking the "Ein Almaa" area in Zawata.

[Stamp] P 5: 231

Prosecution Case 444/02 Amended

When they noticed a military jeep and a tank passing by, the Defendant and his colleagues detonated the explosive devices.

4.    During October 2001 or thereabouts, the Defendant and his fellow cell members laid an explosive on the bypass road leading to Asira Alashmalia. When IDF soldiers noticed the explosive device, they shot at them, and 20 minutes later, the Defendant activated the explosive device, which exploded as a result.

[Stamp] P 5: 231 [continued]

Prosecution Case 444/02 Amended

After the detonation of the explosive device, the Defendant and his fellow squad members fled to the Balata Camp.

**Twenty first count**:

**Nature of the offense**: Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, on several occasions, conspired with others to cause the intentional death of another person, as follows:

1.      During the period after March 2002 or thereabouts, the Defendant asked Ali Zahir Asad Alhalu (hereinafter – **Ali**) to send to Mohamed Burhan Abdu Abdullah (hereinafter – **Mohamed Burhan**) and Murad Sami Ahmed Ghanem (hereafter – **Murad**) and asked them to find a person who was prepared to carry out a suicide attack in the Israeli settlement Kedumim. Ali approached Mohamed Burhan and Murad and informed them of the plan of the Defendant, they agreed to his request and said that they would try to find a person who was prepared to carry out the attack.

Mohamed Burhan carried out surveillance of the above mentioned settlement and informed the Defendant that there were no weak points in the above mentioned settlement, and it would be possible to bring in a suicide terrorist to a point only 100 meters away from the settlement.

The Defendant told Mohamed Burhan that this distance was unsuitable and as a result the attack did not go ahead.

2.      In 2002 or thereabouts, the above mentioned Defendant, planned with Mahmoud A-Titi to carry out an attack in the Hawara Camp. Mahmoud A-Titi told the Defendant that there were two people: A. Ibrahim Abu Zour; B. Mohamed Titi, who were prepared to carry out the suicide attack.

The planning was for one of the attackers to drive a white jeep that looked like a Red Cross vehicle, and for this vehicle to be used as a car bomb. Then the attacker driving the jeep would reach the Hawara checkpoint, he would detonate the vehicle at the checkpoint.

[Stamp] P 5: 232

Prosecution Case 444/02 Amended

After the detonation of the vehicle, two cells of terrorists armed with Kalashnikov rifles and hand grenades would penetrate the camp from two different points: 1. from the direction of Awarta; 2. from the direction of Rujeib.

The `m and Abu Ramush conducted surveillance of the sector of the camp. However, this attack was not executed.

_____
          [Signature]
**Naji Amar, Lieutenant**
**Military Prosecutor**

[Stamp] P 5: 232 [continued]

Prosecution Case 444/02 Amended

**List of witnesses for the prosecution**:

Detailed Incident 4968/02:

1. 911305 First Sergeant Jamil Shakour (taker of the confession of the Defendant dated June 5, 2002).

2. 927384  First Sergeant Jamil Hadad (taker of the confession of the Defendant on June 10, 2002 and June 11, 2002).

3. 100049 Master Sergeant Ataf Awida (taker of the confession of the Defendant on July 9, 2002 and July 11, 2002).

4. 928308 First Sergeant Hadi Halabi (taker of the confession of the Defendant dated August 20, 2002).

5. 93972 Master Sergeant Fuad Maadi (performer of identity parade for witnesses: Murad Ghanem, Ali Alhalu and Abdullah Mohamed).

6. 905631719 Murad Sami Ahmed Ghanem (detained in Prosecution Case 773/02). *Megiddo*

7. 911758365 Ali Zahir Asad Alhalu (detained in Prosecution Case 775/02). *Megiddo*

8. 907129670 Mohamed Burhan Abdu Abdullah (detained in Prosecution Case 774/02). *Megiddo*

9. 907569024 Wadah Ali Amin Bazra (detained in Prosecution Case 906/02). *Sharon*

10. 979469954 Mohamed Sami Ibrahim Abdullah (detained). *Hadarim*

11. 902845643 Mohamed Abed Rahman Salam Maslah (detained).

12. 994466860 Ahmed Taleb Barghouti (detained, Prosecution Case 444/02 Beit-El).

13. 81099095 Murad Nazmi-Razek Ajlouni (detained).

14. 907898134 Mazen Mahmoud Omar Alkadi (detained).

15. 900358664 Nasser Mahmoud Aweis (detailed).

[Stamp] P 5: 233

Prosecution Case 444/02 Amended

31

16. Remand hearing transcripts dated: June 17, 2002, July 10, 2002 and August 12, 2002.

**Detailed Incident 502/02 Zion**

17. 942276 Chief Inspector Dror Asraf (submitter of memorandum, seizure and marking report).

18. Sergeant Major Yigal Daniel (submitter of seizure and marking report).

19. Cadet Zvika Reisner([submitter of memorandum, seizure and marking report + photographs).

20. 1043413 Sergeant First Class Zion Tabadi (submitter of action report – finding of magazine coupler).

21. 47720 Sergeant Major Asher Levi (submitter of seizure and marking report).

22. 303647598 Benny Azriel, (eyewitness – pursued the terrorist)

23. 739037 Amad Anidat (eyewitness)

24. 1042043 Shai Cohen (eyewitness).

25. 33121070 Noam Gabai (eyewitness)

26. 1049188 Chanan Benaim (eyewitness – pursued the terrorist)

27.  309130540 Genadi (Guy) Melik, (eyewitness)

28. 761775 Alon Halfon (eyewitness)

29. 996140 Avi Ben-Ami (eyewitness)

30. 33401019 Chaim Salah (eyewitness)

31.  309086171 Boris Abtisian (eyewitness)

32. 310101647 Yekutiel-Israel Alouche (eyewitness)

33. 6246911 Moshe Maman (eyewitness)

34.  51270353 Tova Yitzhaki (eyewitness)

[Stamp] P 5: 233 [continued]

Prosecution Case 444/02 Amended

35. 4330150 Mazal Yitzhaki (eyewitness)

36. 640712770 Yaron Avrahami (eyewitness)

37. 55611230 Pinchas Bentura (eyewitness)

38. 39381249 Kfir Kedem (eyewitness)

39. 307750984 Yaakov Sandlar, (identification of the body of the late Ora (Svetlana) Sandlar).

40. Dafna Wilner, M.D., License No. 29234, Hadassah Ein Kerem Hospital, Jerusalem.
   (submitter of death notice of the late Ora (Svetlana) Sandlar).

41. Elena Vaslov, M.D., Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of
   the late Sarah Hamburger).

**Detailed Incident Case 5858/02**

42. 55594097 Avshalom Friedman.

43. Efi Yamin, Yarkon Identification, Israel Police.

44. Chief Inspector Mirod Daniel, Yarkon Investigations Branch Officer.

45. Shimon Rachamim, Yarkon Special Investigations Team.

46. 25714502 Yaakov Abed (eyewitness)

47. 321940751 Igor Kotbitzky (eyewitness).

48. 304615230 Adi Moriz, (security guard at the restaurant)

49. 49170392 Yoni Chayal (eyewitness)

50. 27293034 Irit Rachamim (eyewitness)

51. 25377029 Limor Forma (eyewitness)

52. 22280 Shlomo David (injured in the attack)

53. 9802115980 Sharon Yifrach (eyewitness)

[Stamp] P 5: 234

Prosecution Case 444/02 Amended

33

54. 029022902 Yiftach Kariti (eyewitness)

55. 28804599 Eliyahu Tzedaka(eyewitness)

56. 309998540 Ivana Richtman (injured in the attack)

57. 54188644 Yaakov Horovitz (eyewitness)

58. 24315632 Ravit Avishag-Yosefi, (eyewitness)

59. 69828374 William Hazan (eyewitness)

60. 61247623 Ala Mahmoud (eyewitness)

61. 35704568 Bassam Abu Laham (eyewitness)

62. 49824865 Baha Abu Laham (eyewitness)

63. 61247623 Al Mahamid (eyewitness)

64. 33876954 Yomi Kontanta (eyewitness)

65. 56230584 Avinoam Yosef (eyewitness)

66. 311660328 Igor Postinensky (eyewitness)

67. 2234597 Daniel Kradi (eyewitness)

68. 5452229 Meir Habi (identification of the body of the late Yosef Habi)

69. 31877665 Noam Asafi (injured in the attack)

70. 29416740 Yossi Azuz (injured in the attack)

[Stamp] P 5: 234 [continued]

Prosecution Case 444/02 Amended

71. 43401140 Michael Gruber, Identity No. (injured in the attack).

72. Prof. Yehuda Hiss, the National Institution of Forensic Medicine, Tel Aviv.

73. Hospital records – institutional record.

**Detailed Incident 4685/02 Petach Tikva Station**

74.  58634114 Nava Seri (details in the prosecution).

75. 59760520 Yigal Cohen (details in the prosecution).

76. 23880032 Avi Porat (details in the prosecution).

77. 58330671 Pollack Mandy (details in the prosecution).

78. 52079019 Levi David (details in the prosecution).

79. 945931 Shoshani Arnon (bomb disposal laboratory – exhibit cover form)

80. Laboratory expert opinion (will be forwarded later).

81. Prof. Y. Hiss, the Institution of Forensic Medicine (expert opinion – unidentified body).

82. Prof. Y. Hiss, the Institution of Forensic Medicine (expert opinion – the late Ruth Peled).

83. Prof. Y. Hiss, the Institution of Forensic Medicine (expert opinion – the late Sinai Keinan).

84. 1024769 Sergeant First Class Reznik Evgeny (action report).

85. 7122948 Corporal Yesha Hati (action report).

86. 310905773 Pasiev Yuri (memorandum – severely injured).

87. 1082544 Corporal Kfir Hadasi (action report).

88. 57795221 Yigal Shachar (details in prosecution).

89. 27826866 Habibi Hanna (details in prosecution).

90. 43259043 Violet Maslosh (details in prosecution).

[Stamp] P 5: 235

Prosecution Case 444/02 Amended

91. 41862426 Yael Avraham (details in prosecution).

92. Betzalel Maslosh (details in prosecution).

93. 28932382 Menachem Maslosh (details in prosecution).

94. 53392171 Skolnik Natanel (details in prosecution).

95. 5922307 Vered Barel (details in prosecution).

96. 39170196 Baadani Niv (details in prosecution).

97. Oshri Mizrachi (details in prosecution).

98. 22313597 Iva Rachamim (details in prosecution).

99. 28984615 Boaz Lavi (details in prosecution).

100. 38717227 Yaron Magen (details in prosecution).

101. 52079019 David Levi (details in prosecution).

102. 58330671 Mandy Pollack (details in prosecution).

103. 59753822 Shuli Ran Moshe (details in prosecution).

104. 27406081 Lior Keinan (details in prosecution).

105. 23730691 Orly Hacham (details in prosecution).

106. 904631 First Sergeant Shlomi Kurzbert (scene visit report – seizure of exhibits + composer of photograph report).

[Stamp] P 5: 235 [continued]

Prosecution Case 444/02 Amended

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                              Plaintiffs,

                                                    No. 04 Civ. 00397 (GBD) (RLE)

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                              Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the
      document received by Rina Ne'eman Hebrew Language Services, to the best of my
      knowledge and belief. The document is designated as P 5:218-35.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew
      University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in
      Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and
      accurate translation of the Hebrew-language document designated bearing the bates
      number P 5:218-35.

Dated: March 6, 2014

                                                    _____
                                                    Rina Ne'eman

ss.: New Jersey

On the 6 day of March, 2014 before me, the undersigned, personally appeared Rina
Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is signed to this Declaration and acknowledged to me that he executed
the same in his capacity, and that by his signature on this Declaration, the individual executed the
Declaration.

Sworn to me this
6 day of March, 2014

*Leonor Troyano*

Notary Public

LEONOR TROYANO
ID # 2385530
NOTARY PUBLIC OF NEW JERSEY
Comm. Exp. March 17, 2014

צבא          הגנה          לישראל

<div dir="rtl">

בבית המשפט הצבאי      תיק בימ"ש 6446/02

ב ש ו מ ר ו ן        תיק תביעה 756/02

בפני   הרכב       תיק פ.א. 4968/02 פתח-תקווה

                4258/02 ירקון

                502/02 ציון

                4685/02 תחנת פ"ת

במשפט שבין :

התובע הצבאי

- המאשים -



- נ ג ד -

אבראהים עדנאן נג'יב עבד-אלחי

(עצור מיום 3/6/02)

ת.ז. 411124423 יליד 20/8/79 מכפר בורין

- הנאשם -

## כתב אישום (מתוקן)

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות:

**פרט ראשון :**

**מהות העבירה :** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 84(1)(א)(א) ו- 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה :** הנאשם הנ"ל, באזור, במהלך חודש דצמבר 00' או בסמוך לכך, היה חבר בחוליה צבאית השייכת לארגון "כתאאב שוהדאא אלאקצא", שהינה התאחדות בלתי מותרת;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, החליט להצטרף לחוליה צבאית על מנת לפעול במסגרתה בפעילות צבאית נגד מטרות ישראליות.

לשם כך, פנה הנאשם אל חברו מחמד אחמד מוצטפא אלקאסם (להלן- מחמד), והודיע לו על רצונו לפעול בפעילות צבאית. מחמד הנ"ל אמר לנאשם כי ישנה חוליה צבאית השייכת ל"כתאאב שוהדאא אלאקצא", שמבצעת פיגועי ירי והנחת מטעני חבלה נגד מטרות ישראליות. מחמד הציע לנאשם להצטרף לחוליה זו, והנאשם הסכים לכך.

</div>

C:\WINDOWS\שולחן עבודה\תיקיה חדשה\75602.doc