UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO OVERRULE DEFENDANTS' AUTHENTICITY AND HEARSAY OBJECTIONS TO THEIR OWN RECORDS

This motion concerns 177 trial exhibits. The exhibits are defendants' own records—the vast majority of them produced after discovery closed. Plaintiffs respectfully ask the Court either to overrule defendants' authenticity and hearsay objections on the current record, or, alternatively, to compel defendants to bring a witness to New York to testify in advance of trial concerning genuinely disputed foundational facts.

Defendants' opposition is most remarkable for what it does not say. Defendants do not deny that they created the records and produced them from their own files. Defendants do not offer any evidence that the records are anything different from what they appear to be on their face—records created by defendants' own employees in the ordinary course. Defendants do not offer any evidence that the records are untrustworthy or inaccurate.

It is obvious why defendants want these records kept from the jury. They show that defendants ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

I. **Defendants' Procedural Complaints Are Baseless**

Defendants' principal excuse for their recalcitrance is the canard that plaintiffs did not develop testimonial evidence supporting admissibility during discovery. Opp. 7-8. This is gamesmanship—nothing more. Defendants produced the vast majority of the documents *after* the close of discovery—many of them only after violating multiple orders by Judge Ellis. Further, when the Court upheld defendants' objection to Rule 30(b)(6) depositions to establish foundation, it also ruled that "[a] reasonable process for determining the admissibility of all trial exhibits will be available prior to trial." DE 447, Ex. M.

Defendants also claim that the motion is "premature" because they do not have enough "information…to make the requested evidentiary determination." Opp. 8. But plaintiffs' motion—together with the chart that plaintiffs provided at the Court's suggestion—adequately describes the five categories of documents, the facts that they show, and why they are not excludable hearsay. *See* Defs. Ex. J. Defendants' complaint that they do not have enough information about their own records is not the response of a party who is serious about reaching agreement. It is the response of a party who is serious about *avoiding* agreement. If defendants actually had a factual basis for their objection, they were obliged to raise it. As the Court warned:

> I'm not going to go through a technical fight over the admissibility of documents if there's no genuine dispute with regard to their authenticity, particularly if those documents were produced and represented as being such documents by the other side….
>
> I want to know what's [genuinely] in dispute. If there are documents that are [genuinely] in dispute, fine, we'll deal with it.
>
> If your position is we just don't want to make it easy for them, I'll consider that, too, but I'm going to give that significantly less weight than I would that there is [genuinely] a question about

2

> whether or not the purpose for which they're using this document,
> that the document is admissible for that purpose.

Hearing Tr. (04/11/14) at 93-95 (DE 478).

## II. The Exhibits Are Authentic

Defendants "participation" in the meet-and-confer process ordered by the Court was a Bartleby-like refusal to stipulate to the authenticity of *any* of their own records, claiming that they did not understand what plaintiffs "believe each document purports to be." Letter from Hill to Yalowitz (03/31/14), Ex. E.[1]  Plaintiffs then brought this motion.

Defendants now concede that the exhibits are "actual and genuine copies of documents found in the files of the PA or PLO." Opp. 9.  However, defendants still object to the authenticity of 46 of the exhibits. *Id.* at 9-10 n.4.  Their primary argument is that 33 of them (defendants' own files) contain some "third party materials." Opp. 10 n.5.  The files are employment records, "Martyr" files, records from defendants' "Ministry of Detainees' Affairs," and one GIS exhibit. They show ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

But defendants relied on these third-party documents to ███████████████

████████████████████  Having incorporated these documents into their own records, defendants may not contest their authenticity. *U.S. v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity.").

Defendants also contest the authenticity of one letter (on their own letterhead) about which they answered interrogatories seeking identification of the authors of the letter and of the unsigned handwritten notations on it. Ex. A.233, G.2, G.3.  If the document was inauthentic, de-

---

[1] Unless otherwise noted, we use "Ex. [ ]" to refer to the exhibits to plaintiffs' motion submitted to the Court on April 9, 2014.  (Public version filed as DE 526.)

fendants never could have identified its anonymous authors—but they did. Indeed, defendants have submitted to the Court a declaration of one of their employees discussed in the exhibit, ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] Having identified the authors of the document, defendants cannot now honestly dispute its authenticity.

### III. The Exhibits Are Not Excludable Hearsay

#### A. The Exhibits Are Statements Of An Opposing Party Under Rule 801(d)(2)

**1. Subparagraph (A).** Rule 801(d)(2)(A) can be satisfied on the face of a document that appears to be a statement made in a "representative capacity." The records at issue appear on their face to have been prepared by defendants' employees in the ordinary course. Defendants do not argue to the contrary, let alone offer evidence on that point. Indeed, defendants produced these records in response to document requests for their records and continue to insist that the records remain confidential. In our opening brief, we cited cases holding that such documents are admissible under Rule 801(d)(2)(A).[3] Defendants have nothing to say about those cases and do not even cite them. Defendants instead cite an unpublished order by the Second Circuit in *Curns v. Wal-Mart Stores, Inc.*, 439 F. App'x 51 (2d Cir. Sept. 28, 2011), but that case hurts them. The Court explained that entities "can speak only through their agents." That is precisely what happened here: *defendants'* employees created records showing that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ thereby speaking on behalf of defendants; then *defend-*

---

[2] Defendants also say that 11 exhibits consist of multiple "documents" that they admit they created. Opp. 10 n.6. It is hard to believe that defendants' counsel cannot even discuss a simple matter like this directly with the undersigned and instead feel entitled to take up the Court's time with such nonsense. Defendants are obviously knowledgeable about their own documents, and plaintiffs are ready, willing, and able to work with defendants to straighten out any formatting problems in advance of trial.

[3] Pls. Br. 13-14 (discussing *Hannon v. Kiwi Servs.*, 2011 WL 7052795, at *2 (N.D. Tex. 2011); *Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1086 n.11 (C.D. Cal. 2007); *Arch. Iron Workers Local No. 63 Welfare Fund v. United Contractors*, 46 F. Supp. 2d 769, 772 (N.D. Ill. 1999)).

*ants'* lawyers produced the records in response to document requests, again on behalf of defendants. Defendants do not deny that these records were created by their own employees and produced by their own lawyers, both acting in a representative capacity. That is all that is needed.[4]

Defendants also claim that the mere fact that they produced the records in litigation does not automatically turn them into admissions. *E.g.*, Opp. 13-14. This misconstrues plaintiffs' argument. Plaintiffs are not arguing that all documents ever produced by a party in a litigation are admissions. Here, during fact discovery, plaintiffs explicitly requested PA/PLO employment records, files reflecting benefits to incarcerated terrorists and their families, martyr files, and GIS files relating to the perpetrators *in this case*—to which defendants produced documents in response. Pls. Br. 4, 14-15.[5] Plaintiffs also propounded interrogatories, to which defendants responded and incorporated documents now listed as trial exhibits. *Id.* Defendants have nothing to say about the cases holding that when a defendant responds to specific discovery requests and interrogatories by producing and incorporating documents, the documents are admissions.[6]

Finally, defendants also argue that their continuing demand for confidential treatment is not relevant because protective orders are intended to protect confidential information whether or not the designating party believes such information to be true. *E.g.*, Opp. 14-15. But here, defendants have repeatedly represented to the Court that these documents are "employment records" that reflect "private" information. Rule 11 applies to such representations. The Court

---

[4] Defendants say that third-party documents such as ▮▮▮▮▮▮▮▮ embedded in the files are not covered by Rule 801(d)(2). The Second Circuit held otherwise in *Jakobetz*, 955 F.2d at 800-01.

[5] Defendants made a joint document production, so they cannot complain if documents are offered against them both.

[6] Defendants cite (Opp. 15) a case holding that documents created by a *non-party* that happened to be in a party's files were not admissions simply because they were produced in discovery. *JIPC Mgmt. v. Incredible Pizza Co.*, 2009 WL 8591607, at *23 (C.D. Cal. July 14, 2009). Here, the documents appear on their face to have been created by *defendants* or incorporated into *defendants'* records. *Jakobetz* controls, not *JIPC*.

should hold defendants to their counsel's position as to the nature of their documents.

      **2. Subparagraph (B).** Rule 801(d)(2)(B) can be satisfied on the face of a document alone where the document shows that defendants adopted it. The records here appear on their face to have been relied on in the ordinary course to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants offer no contrary evidence and indeed produced these records in response to document requests. In our opening brief, we cited cases holding that such documents are admissible under Rule 801(d)(2)(B).[7] Yet again, defendants have nothing to say about these cases and do not cite them. Defendants do not deny that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ based on these documents, nor do they deny that they continue to retain the documents in their possession such that they have adopted their belief in the truth of the information.

      Defendants take a different tack on their GIS intelligence files, claiming that they "merely repeat hearsay." Indeed, keeping the GIS intelligence files away from the jury seems to be the main thrust of defendants' position. But defendants are wrong. To begin, much in the GIS files is not being offered for the truth, but rather to show that defendants were on notice of their employees' terrorist activities and ratified them. For example, the GIS report for ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A.130. Similarly, many of the reports ▮

---

[7] Pls. Br. 14-16 (discussing *U.S. v. Paulino*, 13 F.3d 20, 24 (1st Cir. 1994); *U.S. v. Ospina*, 739 F.2d 448, 451 (9th Cir. 1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238 (3d Cir. 1983); *U.S. v. Marino*, 658 F.2d 1120, 1124-25 (6th Cir. 1981); *IBM Corp. v. BGC Partners, Inc.*, 2013 WL 1775367, at *8 n.8 (S.D.N.Y. Apr. 25, 2013); *FTC v. Hughes*, 710 F. Supp. 1520, 1523 (N.D. Tex. 1989)).

███████████████████████████████ *E.g.*, Ex. A.140.  Such documents would be admissible to prove state of mind and ratification even if they contained hearsay.

But the intelligence files are also admissible for their truth.  Defendants appear to be arguing that even though the reports were prepared by GIS employees, those employees may have lacked personal knowledge of the facts and therefore could have been relying on hearsay.[8]  To support this theory, defendants cite *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 239 (2d Cir. 1999) for the proposition that "[a] party admission may…be inadmissible when it merely repeats hearsay." Opp. 12.  That case shows why defendants are wrong here.  It held that "a party admission containing hearsay is admissible where…the admission draws inferences from the underlying hearsay and thus 'manifest[s] an adoption or belief in its truth'"—and reversed the district court's decision to exclude the document at issue.[9]  The same analysis applies to these documents—the reports ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Even if the GIS employees were relying on hearsay to reach their conclusions and render their reports—which is unknowable to plaintiffs because defendants failed to produce the underlying documents in violation of Judge Ellis's discovery orders—the documents would still be admissible under *Schering*.

**3. Subparagraphs (C) and (D).**  Rule 801(d)(2)(C) and (D) allows admission of statements made by an employee on a matter within the scope of employment or by an agent or other person "authorized to make a statement."  These subparagraphs require evidence in addition to the face of the documents, but that requirement can be satisfied where the records are produced

---

[8] Defendants' claim that the reports "repeat hearsay" is not evident from the face of the records.

[9] Defendants also cite *Agric. Ins. Co. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 416 (S.D.N.Y. 2002), Opp. 18, another case that admitted the document at issue under Rule 801(d)(2)(B) because an employee drew inferences from underlying hearsay.

7

in discovery. In our opening brief, we cited cases holding that such documents are admissible.[10] Defendants have almost nothing to say about these cases. They do not bother to cite or discuss *Penguin Books v. New Christian Church*, a decision by another Judge of this Court. They try to distinguish *EEOC v. W. Customer Management* by claiming that the documents in that case were written by the defendants' interviewers. But they do not deny that their own employees created the GIS reports or that they have gone to great lengths to keep them secret. They offer no evidence that someone else prepared them. And if there were a genuine dispute about who created the documents, the Court would be correct to compel defendants to bring a witness to New York to explain the truth in advance of trial.

Defendants cite *Greene v. V.I. Water & Power Auth.*, 2014 WL 523363, at *7 (3d Cir. Feb. 11, 2014), for the proposition that an "unnamed" employee cannot qualify as an "agent or employee." Opp. 20-21. *Greene* held no such thing. To the contrary, it stated that "'comments made by unnamed employees *could* fall under the "party agent" exception of Fed. R. Evid. 801(d)(2)(D),'" but held that references by a witness to gossip spread by "unnamed employees" was "'not a sufficient evidentiary foundation to establish the existence of an agency relationship as required under' that Rule." *Id.* This case is not about gossip.

### B. The Documents Are Admissible Under Rules 803(6) & (8)

Defendants do not deny that the exhibits at issue meet the requirements for records of a regularly conducted business activity under Rule 803(6). Rather, they argue that that rule cannot apply in the absence of a "witness." Opp. 21-22. To be sure, the rule requires a "custodian or another qualified witness." Fed. R. Evid. 803(6)(D). Plaintiffs' experts—two former high-

---

[10] Pls. Br. 16-19 (discussing, among other cases, *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 260 (S.D.N.Y. 2003) and *EEOC v. W. Customer Mgmt. Grp., LLC*, 899 F. Supp. 2d 1241, 1250 (N.D. Fla. 2012)).

ranking Israeli intelligence officials—are eminently qualified to explain these documents and defendants' payments to terrorists and their families in great detail, *see* Ex. I at 18-77; Ex. J at 25-38. This testimony, combined with defendants' own act of production, should satisfy paragraph (D), but if defendants have really managed to create a genuine issue of fact on this point by producing documents after the close of discovery and opposing a document-custodian deposition, then they should be compelled to bring a witness to New York to testify in advance of trial.

With respect to Rule 803(8), defendants' only response is that since the PA is not a "recognized" foreign country, its records cannot be "public documents." Opp. 23. Defendants cite no case for the proposition that Rule 803(8) is limited to the records of a "recognized" foreign country, and we have found none.[11]

Finally, defendants argue that plaintiffs have failed to offer evidence of trustworthiness. But the proposed amendments to Rule 803 illustrate that it is actually *defendants'* burden to come forward with evidence of *untrustworthiness*. *See* Order of the Supreme Court Transmitting Proposed Amendments to Fed. R. of Evid. (Apr. 28, 2014). Defendants offer no such evidence.

### C. The Exhibits Qualify Under The Residual Hearsay Exception

With regard to Rule 807, defendants rely on *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011). That case holds that Rule 807 applies where the records were created for reasons independent of the litigation, there is a "'lack of…motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter,'" the documents are prepared by "'public officials doing their legal duties,'" and they reflect "'equivalent circum-

---

[11] Rule 902(3), which implements the Apostille Convention, hurts defendants. Rule 902(3) authentication is available for records of signatories to the Apostille Convention, to which the aspiring "State of Palestine" is not a party. If Rule 803(8) had been intended to be limited to domestic public records and those of parties to the Apostille Convention, it would have been so drafted.

9

stantial guarantees of trustworthiness.'" *Id.* at 497-99. Defendants do not deny that their records of ▌ the employment records of the perpetrators, and the records of payments to Fatah meet this standard.

Relying on *El-Mezain*, defendants contend that their own intelligence files are untrustworthy. In *El-Mezain*, the court stated: "The matters reported in the PA [intelligence] documents have nothing to do with the PA's own activity, but rather describe the activities and financing of Hamas. Therefore, the guarantee of trustworthiness associated with a public agency merely recording its own actions [was] not present." *Id.* at 499. The *El-Mezain* case was not about the PA, and the PA was not a party in that case. Here, unlike *El-Mezain*, the records at issue reflect the "PA's own activity," and the PA had control of the documents up to the date of production.

In addition, because defendants are guilty of violating Judge Ellis's discovery orders by refusing to produce the documents underlying the GIS intelligence reports, defendants should be precluded from challenging the trustworthiness of these documents. Plaintiffs have sought such a preclusion order in their pending motion for sanctions.

## **CONCLUSION**

The Court should overrule defendants' authenticity and hearsay objections to their own records. Alternatively, and to the extent that defendants have raised a genuine issue of fact concerning any of their records, the Court should require them to bring a witness to New York to testify about authenticity and foundational facts in advance of trial.

Dated: New York, New York
June 13, 2014

ARNOLD & PORTER LLP

By: _____
Kent A. Yalowitz
Philip W. Horton
Sara K. Pildis
Ken L. Hashimoto
Carmela T. Romeo
Tal R. Machnes

399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

*kent.yalowitz@aporter.com*
*philip.horton@aporter.com*
*sara.pildis@aporter.com*
*ken.hashimoto@aporter.com*
*carmela.romeo@aporter.com*
*tal.machnes@aporter.com*