# EXHIBIT A.249

PLAINTIFF'S EXHIBIT 249

[Rectangular stamp] True copy of the original

[Round stamp] * The Military Court of Appeals in Judea and Samaria *

Israel Defense Forces

**The Military Court in Judea**        File No.: 4646/06
**Before the Honorable President of the Court: Major Menachem Lieberman**
**The Honorable Judge: Major Sharon Rivlin-Achai**
**The Honorable Judge: Major Zvi Heilbrun**

**The Military Prosecution**
(Represented by Counsel, Captain Tali Karet)

- v. -

**The Defendant: Ibrahim Jamil Abed Algani Hamad, Identity No. 991260886/ Israel Prison Service – present**
(Represented by Counsel, Adv. Salah Mahamid – present)

**Court stenographer: Sergeant Alexandra Zaitsev**
**Interpreter: Sergeant Wiam Abed**

Date of the hearing: July 1, 2012, 11 Tammuz 5772

<u>Sentence</u>

On June 27, 2012, we convicted the Defendant of the majority of the offenses that are attributed to him in the indictment, and we acquitted him of only one count in the indictment. Following the hearing of this case, the Defendant was convicted of the following offenses:

1. **One count of membership in an illegal organization, under Regulation 85A of the Defense Regulations;**

2. **One count of holding an office in an illegal organization, under Regulation 85B of the Defense Regulations;**

3. **One count of performing a service for an illegal organization, under Regulation 85C of the Defense Regulations;**

4. **Two counts of being an accomplice in an attempt to intentionally cause death, offenses under Sections 209(A), 204 and 201(3) of the Security Provisions Order [Combined Version] (Judea and Samaria) (No. 1651) 5770-2009;**

5. **26 counts as the primary perpetrator in intentionally causing death, offenses under Sections 209(A), 204 and 201(1) of the Security Provisions Order [Combined Version] (Judea and Samaria) (No. 1651) 5770-2009;**

6. **4 counts of attempt to intentionally cause death as the primary perpetrator, offenses under Sections 209(A), 204 and 201(1) of the Security Provisions Order [Combined Version] (Judea and Samaria) (No. 1651) 5770-2009;**

P 11-7: 116

| Date: July 1, 2012 | Military Court of Judea | File No. 4646/06 |

7. 20 counts of collaboration in intentionally causing death, offenses under Sections 209(A), 204 and 201(2) of the Security Provisions Order [Combined Version] (Judea and Samaria) (No. 1651) 5770-2009;

8. 4 counts of collaboration in an attempt to intentionally cause death, offenses under Sections 209(A), 204 and 201(2) of the Security Provisions Order [Combined Version] (Judea and Samaria) (No. 1651) 5770-2009;

In her arguments with regard to sentencing, the prosecuting attorney argued that this was one of the most serious cases that the State of Israel and the "Area" had ever known. It was further argued that the Defendant had adopted the objective of harming any and all Israelis, old or young, soldiers or civilians, indiscriminately. The Defendant had been guided by a single rule: the murder of any and all Jewish Israelis.

According to the prosecuting attorney, the Defendant acted with a clear objective, in a carefully planned and calculated manner, as a leader and a policy-shaper. He was the initiator and the planner. He was the guiding and leading character. He was the one who sent others to blow themselves up in the heart of the civilian population zone, whereby he directed his own actions, and theirs as well, with a view to giving rise to a fatal outcome on the greatest possible scale. The Defendant's purpose was to intensify the dimensions of the murder. The prosecuting attorney emphasized that the Defendant acted in a systematic manner in order to murder any and all Israelis. If it had depended upon the Defendant, his murderous task would never have been completed – there is no end to the demands of terrorism.

In consequence of his actions, the prosecuting attorney asked to impose 56 consecutive life sentences, plus an additional finite sentence, upon the Defendant.

The defense attorney for the Defendant refrained from raising any arguments with regard to sentencing. The defense attorney repeated his viewpoint in principle, which he had also expressed during the hearing of the principal case, according to which the Defendant does not recognize the competence of the Court to try him and is therefore unwilling to have his defense attorney raise arguments on his behalf before the Court.

There can be no doubt that the evil that the Court encountered, when the Defendant stood before it in justice, is extraordinarily and exceptionally grave.

The murderous terrorism practiced by the Defendant, in an indiscriminate, determined and consistent manner, cut the thread of forty-six persons' lives. Each of those persons was a world in its own right; each of them was unique and special to those who loved him. Rabbi Moses Maimonides, in his book *The Strong Hand*, wrote of the uniqueness of each human being (Maimonides, *Judges*, Sanhedrin 12:3):

> "Only one man was created in the world. This teaches us that anyone who takes one life from the world may be said to have destroyed an entire world, and anyone who saves one life in the world may be said to have saved an entire world. For all those who come into the world are created in the form of the first man, although the face of each of them does not resemble that of his fellow. Therefore, each and every one of them may say: 'The world was created for me.'"

Furthermore, the Defendant took measures toward the murder of as many Israelis as he could, and even attempted to perpetrate strategic terrorist attacks. Thus, he attempted to cause a terrorist attack at Pi Glilot, and to attack a passenger train and its passengers. It should be emphasized that, following the Defendant's failure in

P 11-7: 116A

2

| Date: July 1, 2012 | Military Court of Judea | File No. 4646/06 |

his first attempt to attack a train, the Defendant ensured that the second explosive charge would contain a larger quantity of explosive material, in order to ensure the success.

Had the terrorist attacks conceived by the Defendant and his accomplices been successful from the Defendant's point of view, the community of bereaved families would have been vastly expanded.

The courts have already stated their opinion on this point in the past: when a person is on trial for a plurality of offenses of intentionally causing death, the rule is that he should be given a separate sentence of actual imprisonment for each victim, in order to emphasize the value of the life of each and every human being.

In addition, we have decided to impose another life sentence upon the Defendant for each of the Defendant's attempts to carry out a terrorist attack in which many innocent civilians would be murdered. We came to this decision in light of the gravity of these offenses and given how nearly they caused additional persons to be killed. On the other hand, we did not see fit to impose a separate life sentence for each terrorist attack that was intended to be launched against a single person.

To conclude, we hereby impose the following sentences upon the Defendant:

[Round stamp] * The Military Court of Appeals in Judea and Samaria *

**Life imprisonment for causing the death of Yosef Elazara of blessed memory, who died at the age of 18.**
**Life imprisonment for causing the death of Assaf Avitan of blessed memory, who died at the age of 15.**
**Life imprisonment for causing the death of Guy Waknin of blessed memory, who died at the age of 19.**
**Life imprisonment for causing the death of Yoni Kurganov of blessed memory, who died at the age of 20.**
**Life imprisonment for causing the death of Yaakov Israel Danino of blessed memory, who died at the age of 17.**
**Life imprisonment for causing the death of Michael Dahan of blessed memory, who died at the age of 20.**
**Life imprisonment for causing the death of Golan Turjeman of blessed memory, who died at the age of 15.**
**Life imprisonment for causing the death of Adam Weinstein of blessed memory, who died at the age of 14.**
**Life imprisonment for causing the death of Moshe Yedid-Levi of blessed memory, who died at the age of 19.**
**Life imprisonment for causing the death of Nir Heftzari of blessed memory, who died at the age of 20.**
**Life imprisonment for causing the death of Ido Cohen of blessed memory, who died at the age of 18.**

[Rectangular stamp] True copy of the original

**Life imprisonment for causing the death of Avraham Rahamim of blessed memory, who died at the age of 28.**
**Life imprisonment for causing the death of Nir Borochov of blessed memory, who died at the age of 28.**
**Life imprisonment for causing the death of Limor Ben Shoham of blessed memory.**
**Life imprisonment for causing the death of Dan Imani of blessed memory, who died at the age of 23.**
**Life imprisonment for causing the death of Danit Dagan of blessed memory, who died at the age of 24.**
**Life imprisonment for causing the death of Uri Felix of blessed memory, who died at the age of 25.**
**Life imprisonment for causing the death of Baruch Lerner of blessed memory, who died at the age of 28.**
**Life imprisonment for causing the death of Tali Eliyahu of blessed memory, who died at the age of 26.**
**Life imprisonment for causing the death of Livnat Dvash of blessed memory, who died at the age of 28.**
**Life imprisonment for causing the death of Orit Ozerov of blessed memory, who died at the age of 28.**
**Life imprisonment for causing the death of Netanel Kochavi of blessed memory, who died at the age of 31.**
**Life imprisonment for causing the death of Rahamim Kimchi of blessed memory, who died at the age of 57.**
**Life imprisonment for causing the death of Rafael Haim of blessed memory, who died at the age of 67.**
**Life imprisonment for causing the death of Annette Tramporush of blessed memory, who died at the age of 36.**

**P 11-7: 116 B**

| Date: July 1, 2012 | Military Court of Judea | File No. 4646/06 |

Life imprisonment for causing the death of Avraham Baiz of blessed memory, who died at the age of 57.

Life imprisonment for causing the death of Esther Bablar of blessed memory, who died at the age of 54.

Life imprisonment for causing the death of Yitzhak Bablar of blessed memory, who died at the age of 58.

Life imprisonment for causing the death of Israel Shikar of blessed memory, who died at the age of 49.

Life imprisonment for causing the death of Shoshana Magmari of blessed memory, who died at the age of 50.

Life imprisonment for causing the death of Sharukh Rassan of blessed memory, who died at the age of 60.

Life imprisonment for causing the death of Nuha Hinnawi of blessed memory, who died at the age of 51.

Life imprisonment for causing the death of Nir Lubatin of blessed memory, who died at the age of 29.

Life imprisonment for causing the death of Malka Buslan of blessed memory, who died at the age of 63.

Life imprisonment for causing the death of Dalia Masa of blessed memory, who died at the age of 56.

Life imprisonment for causing the death of Pnina Hakari of blessed memory, who died at the age of 60.

Life imprisonment for causing the death of Edna Cohen of blessed memory, who died at the age of 61.

Life imprisonment for causing the death of Dafna Spruch of blessed memory, who died at the age of 61.

Life imprisonment for causing the death of Marla Ann Bennett of blessed memory, who died at the age of 28.

Life imprisonment for causing the death of Dina Carter of blessed memory, who died at the age of 37.

Life imprisonment for causing the death of Benjamin Thomas Blutstein of blessed memory, who died at the age of 18.

Life imprisonment for causing the death of Revital Barashi of blessed memory.

Life imprisonment for causing the death of David (Diego) Ladowski of blessed memory, who died at the age of 29.

Life imprisonment for causing the death of Levina Shapira of blessed memory, who died at the age of 53.

Life imprisonment for causing the death of Janis Ruth Coulter of blessed memory, who died at the age of 37.

Life imprisonment for causing the death of David Gritz of blessed memory, who died at the age of 24.

Life imprisonment for wounding approximately 81 persons at the Hebrew University of Jerusalem.

Life imprisonment for wounding approximately 191 persons in downtown Jerusalem.

Life imprisonment for wounding approximately 65 persons at Café Moment.

Life imprisonment for the attempted terrorist attack at Pi Glilot.

Life imprisonment for attempting to blow up a passenger train.

An additional sentence of life imprisonment for attempting to blow up a passenger train.

Life imprisonment for the remaining offenses of which the Defendant was convicted.

In total, 54 sentences of life imprisonment.

The Defendant will serve these sentences consecutively.

Given and notified this day, July 1, 2012, in public and in the presence of the parties.

| [Signature] | [Signature] | [Signature] |
| Judge | President of the Court | Judge |

P 11-7: 116C

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

        Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

        Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 11-7: 116-116C.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as P 11-7: 116-116C.

Dated: May 28, 2014

                                                      Rina Ne'eman

ss.: New Jersey

On the $\underline{8^{th}}$ day of May, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
$\underline{8^{th}}$ day of May, 2014

_____
Notary Public

JACKIE CM CHIANG
Notary Public # 2350150
State of New Jersey
Commission Expires Nov. 9, 2016


צבא ההגנה לישראל



תיק מס': 4646/06

בית המשפט הצבאי ביהודה
1  בפני כב' האב"ד: רס"ן מנחם ליברמן
2  כב' השופטת: רס"ן שרון ריבלין-אחאי
3  כב' השופט: רס"ן צבי היילברון
4
5  התביעה הצבאית
6  (באמצעות ב"כ סרן טלי קרת)
7
8  נגד
9
10 הנאשם: אבראהים גמיל עבד אלגני חאמד ת.ז 991260886 / שב"ס - נוכח
11 (באמצעות ב"כ עו"ד צלאח מתאמיד - נוכח)
12
13 רמ"שית: סמל אלכסנדרה זייצב
14 מתורגמן: סמל ויאם עבד
15
16 תאריך הדיון: 01/07/12, י"א בתמוז תשע"יב
17
18 ## גזר דין

19 ביום 27.6.2012 הרשענו את הנאשם במרבית העבירות המיוחסות לו בכתב האישום, וזיכינו אותו
20 מפרט אישום אחד בלבד. הנאשם הורשע לאחר ניהול תיקו בעבירות הבאות:
21  1. פרט אישום אחד של חברות בהתאחדות בלתי מותרת על פי תקנה 85א לתקנות ההגנה;
22  2. פרט אישום אחד של נשיאת משרה בהתאחדות בלתי מותרת על פי תקנה 85ב לתקנות
23     ההגנה;
24  3. פרט אישום אחד ועל ביצוע שירוג עבור התאחדות בלתי מותרת על פי תקנה 85ג
25     לתקנות ההגנה;
26  4. שני פרטי אישום של מסייע לניסיון לגרימת מוות בכוונה, עבירות לפי סעיפים 209(א),
27     204 ו-201(3) לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה ושומרון)(מס' 1651)
28     התש"ע-2009;
29  5. 26 פרטי אישום כמבצע עיקרי בגרימת מוות בכוונה, עבירות לפי סעיפים 209(א), 204
30     ו-201(1) לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה ושומרון)(מס' 1651) התש"ע-
31     2009;
32  6. 4 פרטי אישום של ניסיון לגרימת מוות בכוונה כמבצע עיקרי, עבירות לפי סעיפים
33     209(א), 204 ו-201(1) לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה ושומרון)(מס'
34     1651) התש"ע-2009;

7. 20 פרטי אישום של שותפות לגרימת מוות בכוונה, עבירות לפי סעיפים 209(א), 204 ו-201(2) לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה ושומרון)(מס' 1651) התש"ע-2009;

8. 4 פרטי אישום של שותפות לניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א), 204 ו-201(2) לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה ושומרון)(מס' 1651) התש"ע-2009;

בטיעוניה לעניין העונש, טענה התובעת כי זהו אחד התיקים החמורים ביותר שידעו מדינת ישראל והאזור. עוד נטען, שהנאשם שם לו למטרה לפגוע בכל ישראלי באשר הוא ישראלי, זקן וטף, חייל ואזרח, ללא אבחנה – כלל אחד הנחה את הנאשם, רצח ישראלים באשר הם ישראלים ויהודים.

לדברי התובעת הנאשם פעל במטרה ברורה, בצורה מחושבת ומתוכננת בקפידה, כמנהיג, כמתווה מדיניות. הוא היה היוזם והמתכנן. הוא היה הדמות שהדריכה והובילה. הוא היה זה ששלח אחרים להתפוצץ בתוך לב האוכלוסייה האזרחית, כאשר הוא מכוון את מעשיו ומעשיהם לכך שיובילו לתוצאה הקטלנית הגדולה ביותר האפשרית. מטרת הנאשם הייתה להעצים את מימדי הרצח. התובעת הדגישה שהנאשם פעל בצורה שיטתית כדי לרצוח ישראלים באשר הם ישראלים. אח הדבר היה תלוי בנאשם, מלאכתו הרצחנית לא הייתה מגיעה לכדי סיום לעולם - הטרור אינו יודע שובע מהו.

בגין מעשיו ביקשה התובעת להטיל על הנאשם 56 מאסרי עולם מצטברים, ועונש קצוב נוסף.

טענותיו של הנאשם נמנע מלטעון לעונש. החוזר חזר על עמדתו העקרונית אותה הביע גם במהלך הדיון בתיק העיקרי, ולפיה הנאשם אינו מכיר בסמכות בית המשפט לדון אותו, ועל כן הוא מוכן שהסנגור יטען עבורו בפני בית המשפט.

אין ספק שהרוע אותו פגש בית המשפט כאשר. הנאשם עמד לדין בפניו, הינו מיוחד וחריג בחומרתו.

הטרור הרצחני אותו הפעיל הנאשם ללא אבחנה בנחישות ובעקביות, קטע פתיל חייהם של ארבעים ושישה בני אדם, כל אחד מהם עולם שלם בפני עצמו, כל אחד מהם יחיד ומיוחד לאוהביו. הרמב"ם בספרו "היי"ד החזקה" כותב על ייחודו של האדם (רמב"ם, שופטים, סנהדרין, יב, ג):

"נברא אדם יחידי בעולם, ללמד, שכל המאבד נפש אחת מן העולם מעלין עליו כאילו איבד עולם מלא, וכל המקיים נפש אחת בעולם מעלין עליו כאילו קיים עולם מלא. הרי כל רואי עולם בצורת אדם הראשון הם נבראים ואין פני כל אחד מהם דומין לפני חברו. לפיכך כל אחד ואחד יכול לומר, בשבילי נברא העולם".

זאת ועוד, הנאשם פעל לרצוח ישראלים ככל שיכל ואף ניסה לבצע פיגועים אסטרטגים. כך ניסה לגרום לפיגוע בפי גלילות, ולפגוע ברכבת נוסעים על נוסעיה. יש להדגיש שלאחר כישלונו של

2

P 11-7: 116A

1. הנאשם בניסיון הראשון לפגע ברכבת, דאג הנאשם לכך שהמטען השני יכיל כמות גדולה יותר של
2. חומר נפץ על מנת להבטיח את הצלחתו.

3. אילו פיגועים אלו, אותם הגה הנאשם ושותפיו, היו נוחלים הצלחה מבחינת הנאשם, משפחת
4. השכול הייתה מתרחבת לאין ערוך.

5. בתי המשפט כבר נתנו דעתם בעבר לכך, שכשאדם עומד לדין בגין מספר עבירות של גרימת מוות
6. בכוונה, הכלל הינו שיש להטיל עונש מאסר בפועל לכל קרבן באופן נפרד, וזאת על מנת להדגיש
7. את ערך החיים של כל אדם ואדם באשר הוא.

8. כמו כן החלטנו להטיל על הנאשם מאסר עולם נוסף בגין כל אחד מניסיונותיו של הנאשם לבצע
9. פיגוע בו יירצחו אזרחים תמימים רבים. הגענו להחלטה זו לאור חומרת ועבירות אלו, וחקרבו
10. שהיה ביניהם לבין קטילת חייהם של אנשים נוספים. לעומת זאת, לא מצאנו להטיל מאסר עולם
11. נפרד בגין כל פיגוע אשר היה מיועד כנגד אדם בודד.

12. סוף דבר, אנו מטילים על הנאשם את העונשים הבאים:

13. מאסר עולם בגין גרימת מותו של יוסף אלעזרה ז"ל, בן 18 במותו;
14. מאסר עולם בגין גרימת מותו של אסף אביטן ז"ל, בן 15 במותו;
15. מאסר עולם בגין גרימת מותו של גיא וקנין ז"ל, בן 19 במותו;
16. מאסר עולם בגין גרימת מותו של יוני קורגנוב ז"ל, בן 20 במותו;
17. מאסר עולם בגין גרימת מותו של יעקב ישראל דנינו ז"ל, בן 17 במותו;
18. מאסר עולם בגין גרימת מותו של מיכאל דהאן ז"ל, בן 20 במותו;
19. מאסר עולם בגין גרימת מותו של גולן תורג'מן ז"ל, בן 15 במותו;
20. מאסר עולם בגין גרימת מותו של אדם ויינשטיין ז"ל, בן 14 במותו;
21. מאסר עולם בגין גרימת מותו של משה ידיד-לוי ז"ל, בן 19 במותו;
22. מאסר עולם בגין גרימת מותו של ניר חפצדי ז"ל, בן 20 במותו;
23. מאסר עולם בגין גרימת מותו של עידו כהן ז"ל, בן 18 במותו;
24. מאסר עולם בגין גרימת מותו של אברהם רחמים ז"ל, בן 28 במותו;
25. מאסר עולם בגין גרימת מותו של ניר בורוכוב ז"ל, בן 22 במותו;
26. מאסר עולם בגין גרימת מותה של לימור בן שוהם ז"ל.
27. מאסר עולם בגין גרימת מותו של ד-דן אימני ז"ל, בן 23 במותו;
28. מאסר עולם בגין גרימת מותה של דנית דגן ז"ל, בת 24 במותה;
29. מאסר עולם בגין גרימת מותו של אורי פליקס ז"ל, בן 25 במותו;
30. מאסר עולם בגין גרימת מותו של ברוך לרנר ז"ל, בן 28 במותו;
31. מאסר עולם בגין גרימת מותה של טלי אליהו ז"ל, בת 26 במותה;
32. מאסר עולם בגין גרימת מותה של לבנת דבש ז"ל, בת 28 במותה;
33. מאסר עולם בגין גרימת מותה של אורית אוזרוב ז"ל, בת 28 במותה;
34. מאסר עולם בגין גרימת מותו של נתנאל כוכבי ז"ל, בן 31 במותו;
35. מאסר עולם בגין גרימת מותו של רחמים קמחי ז"ל, בן 57 במותו;
36. מאסר עולם בגין גרימת מותו של רפאל חיים ז"ל, בן 67 במותו;
37. מאסר עולם בגין גרימת מותה של אנט טרמפורוש ז"ל, בת 36 במותה;



P 11-7: 116B

3



1. מאסר עולם בגין גרימת מותו של אברהם בייז ז"ל, בן 57 במותו;
2. מאסר עולם בגין גרימת מותה של אסתר בבלאר ז"ל, בת 54 במותה;
3. מאסר עולם בגין גרימת מותו של יצחק בבלאר ז"ל, בן 58 במותו;
4. מאסר עולם בגין גרימת מותו של ישראל שיקאר ז"ל, בן 49 במותו;
5. מאסר עולם בגין גרימת מותה של שושנה מגמרי ז"ל, בת 50 במותה;
6. מאסר עולם בגין גרימת מותו של שארוך רסאן ז"ל, בן 60 במותו;
7. מאסר עולם בגין גרימת מותה של נוהא חינאווי ז"ל, בת 51 במותה;
8. מאסר עולם בגין גרימת מותו של ניר לובטין ז"ל, בן 29 במותו;
9. מאסר עולם בגין גרימת מותה של רגינה מלכה בוסלן ז"ל, בת 63 במותה;
10. מאסר עולם בגין גרימת מותה של דליה מסה ז"ל, בת 56 במותה;
11. מאסר עולם בגין גרימת מותה של פנינה הנרי ז"ל, בת 60 במותה;
12. מאסר עולם בגין גרימת גופנית של עדנה מהן ז"ל, בת 61 רחוחה;
13. מאסר עולם בגין גרימת מותה של דפנה שפרוך ז"ל, בת 61 במותה;
14. מאסר עולם בגין גרימת מותה של מהלה אן בנו ז"ל, רזז 28 במותה;
15. מאסר עולם בגין גרימת מותה של דינה קרטר ז"ל, בת 37 במותה;
16. מאסר עולם בגין גרימת מותו של בנימין תומאס בלוטשטיין ז"ל, בן 25 במותו;
17. מאסר עולם בגין גרימת מותה של רויטל בראשי ז"ל.
18. מאסר עולם בגין גרימת מותו של דוד (דיאגו) לדובסקי ז"ל, בן 29 במותו;
19. מאסר עולם בגין גרימת מותה של לוינא שפירא ז"ל, בת 53 במותה;
20. מאסר עולם בגין גרימת מותה של ג'ניט רות קולטר ז"ל, בת 37 במותה;
21. מאסר עולם בגין גרימת מותו של דוד גריץ ז"ל, בן 24 במותו;
22. מאסר עולם בגין פציעתם של כ- 81 אנשים באוניברסיטה העברית בירושלים;
23. מאסר עולם בגין פציעתם של כ- 191 אנשים במרכז העיר ירושלים;
24. מאסר עולם בגין פציעתם של כ- 65 אנשים בקפה מומנט;
25. מאסר עולם בגין פציעתם של כ- 59 אנשים במועדון בראשון לציון;
26. מאסר עולם בגין ניסיון הפיגוע בפי גלילות;
27. מאסר עולם בגין ניסיון לפוצץ רכבת נוסעים;
28. מאסר עולם נוסף בגין ניסיון נוסף לפוצץ רכבת נוסעים;
29. מאסר עולם בגין יתר העבירות בהן הורשע הנאשם.
30. 
31. סך הכל 54 מאסרי עולם.
32. 
33. והאשם ירצה מאסרים אלה באופן מצטבר.
34. זכות ערעור תוך 30 יום.
35. 
36. ניתן והודע היום, 01/07/12, בפומבי ובמעמד הצדדים.

שופט          אב"ד          שופטת

4

P 11-7: 116C