# EXHIBIT A.255

PLAINTIFF'S
EXHIBIT
255



Date:  21Adar II 5763                                           Case No.: 3275/02
          March 25, 2003

## In the Military Court
## Beit-El
## - Transcript -

Court hearing dated: March 25, 2003       Before the Presiding Judge:
                                                          Lieutenant Colonel Nathaniel Benichou
                                           Judge:     Major Yoel Hadar
                                           Judge:     Captain David Shonberg

Prosecutor: Captain Michael Kotlik
Defense Counsel: Adv. Samara – Present

**The Defendant: Haitham Almutfak Hamdan, Identity No. 906934823/ Israel Prison Service**
**– Present**

Stenographer: Corporal Sivan Shemesh
Interpreter: Sergeant Mohamed Nasraladin

**The Presiding Judge opens the session and identifies the Defendant.**

### Course of the Hearing

Prosecutor: I shall ask to argue concerning the three Defendants jointly (cases 3250/02, 3255/02, 3275/02).

Defense Counsel: No objection.

### Decision

As requested.

**Handed down and announced this day, March 25, 2003, in public and in the presence of the parties.**

_____        _____        _____
        **Judge**                              **Presiding Judge**                         **Judge**

Prosecutor: I am filing evidence for the sentencing in Case 3275/02, a criminal record sheet. (Admitted and marked AP/1).

Defense Counsel: There is no evidence for sentencing.

[Stamp] **P 11-9: 52**

Prosecutor summates: Today three Defendants stand before us, and today the Court must sentence them after they have confessed to the commission of a number of attacks and causing the deaths of a total of nine Israeli civilians. We have here before us today the head of the squad, Mohamed Maslah, under whose command operated a small gang of people that aimed to cause the deaths of as many people as possible. The three Defendants before us chose to strike at innocent civilians who chose to travel on the roads of the Area and in Jerusalem. The plan of the three was

1

[Stamp] **P 11-9: 52** [continued]

Date:  21Adar II 5763                                              Case No.: 3275/02
       March 25, 2003

remarkably simple. Taking weapons, boarding a vehicle and trying to kill as many people as possible on the way. A normal person cannot understand what can drive another person to reach such a conclusion, to reach the conclusion that he wants to take the lives of other people only because they are Jews. Mohamed Maslah started his criminal career in late 2000 with the outbreak of the violent events in the Area and inside the State of Israel. He started by shooting at Israel Defense Forces in the Ramallah area. This Defendant also took part in the lynching of the two Israel Defense Forces soldiers in Ramallah, on October 12, 2000. The Defendant, who came to Manara Square, there saw the body of one of the soldiers who had been murdered by the crowd, and fired into it using an M-16 rifle. Following that, this Defendant probably decided that fighting Israel Defense Forces did not give him the proper results and he changed his *modus operandi* and switched to carrying out suicide attacks on roads. This Defendant operated within the al-Aqsa Martyrs Brigades organization, the military arm of the Tanzim of the Fatah, in which he and his colleagues received financing from the heads of the organization for activity. This Defendant did not go out to carry out attacks, but he made sure to equip his colleagues with lethal weapons and to instruct them in shooting at innocent civilians traveling on the roads. The Defendant himself participated in the actual murder of one, and together with another person, murdered Elazar Akiva Pashkos, of blessed memory, on January 25, 2001. About half a year later, in August 2001, Mohamed Maslah sent his colleagues, including the two other Defendants who are here today in the courtroom, Haitham Hamdan and Hussam Shahada, to carry out a lethal attack on Highway 443. On August 25, 2001, these people murdered the couple, Yaniv and Sharon Ben-Shalom, of blessed memory, and Doron Yosef Sviri, of blessed memory. Less than a month later, Mohamed Maslah's two colleagues, together with others guided by Mohamed Maslah, and with the weapons that he had delivered to them, murdered, on Highway No. 9 in Jerusalem, Meir Weissbaus [Translator's note: as written], of blessed memory, and injured Moshe Weiss, who was with him in the vehicle. The Defendants understood that their plan was yielding them the desired results and did not satisfy themselves with these acts. On October 3, 2001, two of Mohamed Maslah's colleagues, guided by Mohamed Maslah, went out to carry out a shooting attack on the Begin Highway in Jerusalem. When they noticed that they had not hit any vehicle, they continued to the Ramot-French Hill road and carried out an additional shooting attack there. As a result of that attack, a pregnant woman and her husband were injured. In early 2002, Mohamed Maslah, together with others, decided to avenge the death of a Tanzim operative, Raed Karmi. Mohamed Maslah and others came to the fuel station next to Givat Ze'ev and fired at point blank range at an Israeli vehicle that had entered that fuel station, in which two women were sitting. As a result of the gunfire from Mohamed Maslah and his colleague, Yoela Chen, of blessed memory, was murdered and her relative was injured.[…]

[Stamp] **P 11-9: 53**

About a week later, on January 22, 2002, Mohamed Maslah participated in carrying out a suicide attack within which a suicide terrorist, Sa'id Ramadan, fired at passersby in Jaffa Street in Jerusalem. In this attack, two women, Ora (Svetlana) Sandler, of blessed memory, and Sarah Hamburger, of blessed memory, were murdered. More than forty five civilians were hurt in that attack. Hussam Shahada started his activity not under the auspices of Mohamed Maslah, but his goal also was murdering innocent Jews. On July 26, 2001, Hussam Shahada participated in a shooting attack on the Jerusalem-Givat Ze'ev road, in which Ronen Landau, of blessed memory, was murdered. On August 18, 2001, Hussam Shahada participated in a shooting attack on an Egged bus in Pisgat Ze'ev in Jerusalem. In this attack, two civilians were injured. Following this, Hussam Shahada, along with Haitham Hamdan, under the direction of Mohamed Maslah, murdered the Ben-Shalom couple, of blessed memory, Doron Yosef Sviri, of blessed memory, and Meir Weissbaus [Translator's note: as written], of blessed memory. Today we have before us three people in their twenties. All of them are single, people who have not yet had a chance to bring children into the world. However, these three people have murdered the children of others. The Military Prosecution asks the Court to punish the three Defendants before us to the fullest extent of the law by sentencing Mohamed Maslah to eight cumulative terms of life imprisonment for each of the people he murdered and an additional term of life imprisonment for the remaining offenses that he has committed, including a number of shooting attacks and participation in the lynching of Israel Defense Forces soldiers in Ramallah. The Military Prosecution asks the Court to sentence Hussam Shahada to five cumulative terms of life imprisonment for each of the people he murdered and a set number of years of imprisonment for all of the other offenses, including injuring of Israeli civilians. The Military Prosecution asks the Court to sentence[…]

2

[Stamp] **P 11-9: 53** [continued]

Date:  21 Adar II 5763                                              Case No.: 3275/02
       March 25, 2003

[…]Haitham Hamdan to four cumulative terms of life imprisonment for causing the deaths of
four Israeli civilians and a number of cumulative years of imprisonment for the other offenses
that he has committed. The Military Prosecution asks for the prison terms to be served
cumulatively to one another in view of the principle of the sanctity of life; the Court cannot bring
the victims back to life; the Court cannot compensate the families upon whom suffering has been
inflicted; the Court cannot compensate children and parents for the loss of their relatives, but the
Court can send a message to the Defendants themselves and to human society at large that there
is a law and it is enforced. The Military Prosecution requests the accumulation of the sentences
in view of the consistent case law of the Supreme Court in the State of Israel and in view of the
case law of this Court. I refer to the words of the Honorable Justice Hashin in Criminal Appeal
1742/91 in the case of Ami Popper (quote). The Military Prosecution is filing with this Court –
the ruling of the Supreme Court and the ruling of this Court on the matter of accumulation of
sentences and on the matter of the duty to hand down a separate sentence for the other acts in
addition to life imprisonment. This is because a person who is sentenced to life imprisonment is
not immune to an additional sentence for an additional criminal act that he has committed.

Defense Counsel summates: Honorable Court, it is true that these are vicious, severe offenses;
according to the indictment there is no need for me to relate to or begin to elaborate on each
count, because it speaks for itself. I do not think that the Court has a duty to ask that question of
why the Defendants carried out all of the offenses that are attributed to them in the indictment; as
my colleague has argued, these are three Defendants in their twenties, who have still not seen life
and have not had an opportunity to beget children. We will not be able to look with perspective
on the one hand and demonstrate disregard on the other hand, for it is the duty of the Court to
examine what is happening on the other side as well. These are events that have been continuing
for more than thirty months, in which so many Palestinian people have been injured by Israel
Defense Forces – adults, small children, the elderly; I do not have their exact number, but
according to publications from time to time, there are three or four times as many people killed
than on the Israeli side. These things must not be considered as my way of justifying it, but I
wanted to inform the Court of the situation so that the Court may reach the conclusion as to the
circumstances that drive young people in their twenties to carry out such acts.

[Stamp] **P 11-9: 54**

It is only one thing, which is the Israeli occupation in the Palestinian territories. Concerning the matter of the fitting sentences, the Defendants here did not gain anything and carried out the offenses on ideological and nationalist grounds. There is no connection or personal hostility between them and the victims, therefore the sentences that my colleague has stated are excessive; it is our request that the Court sentence the Defendants to consecutive years of imprisonment or, alternatively, hand down one sentence of life imprisonment; I will ask not to sentence them to consecutive years of imprisonment that are cumulative to a life sentence, but to make do with those sentences of life imprisonment. The sentence for the remaining effects should be concurrent to the term of life imprisonment.

The Defendant's final words: Concerning my position, I did not stand for the law but for my family; I want to address the Honorable Judge who is responsible for sentencing. If something attacks your house and you need to defend yourself, in the end you reach the point of either he murders you or you murder him – is it a crime or self-defense? The Israeli soldiers are the ones who murder little children; why were they not brought before the Court to be sentenced? If you are requesting peace, you must get out of the Territories. We have done the[se] things based on our refusing the occupation. You came to the conclusion that the Palestinian people love to die; we love to live, but prefer death over life in the case of our people. Am I right in what I say? That you attacked us, we wanted to defend ourselves, not more than that; you put me in the junction and you gave me to the option to die or to die as a soldier, or with my head up and refusing to surrender. If you are interested in peace, you must get out of the Territories. This Court does not recognize it, the law applies to everyone, for there to be equality between Israeli and Palestinian; at that time I will be able to think about accepting the jurisdiction of this Court.

3

Date:  21 Adar II 5763                                        Case No.: 3275/02
       March 25, 2003

## In the Military Court
### B e i t - E l
### - T r a n s c r i p t -

---

Court hearing dated: March 25, 2003      Before the Presiding Judge:
                                              Lieutenant Colonel Nathaniel Benichou
                                         Judge:    Major Yoel Hadar
                                         Judge:    Captain David Shonberg

**The Defendant: Hussam Akil Rajb Shahada, Identity No. 975564733 / Israel Prison Service**
**– Present**
**Mohamed Abed Rahman Salam Maslah, Identity No. 9028456043 / Israel Prison Service**
**– Present**
**Haitham Almutfak Hamdan, Identity No. 906934832 / Israel Prison Service – Present**

---

### Sentence

The three Defendants standing before us today together formed a military cell whose purpose was carrying out attacks against Israeli civilians within and without the Area.

Quickly, the Defendants started to execute their intent and took part, each to different extents, in shooting attacks that in many cases led to the deaths of those who were shot at.

In view of the cooperation among the Defendants in the framework of the military cell and in view of the fact that they had committed many offenses together, we have seen fit to sentence them in a single consolidated sentencing session, despite separate indictments having been filed against each of them from the outset.

The Military Prosecution has petitioned for us to sentence each of the Defendants to cumulative terms of life imprisonment for the murder of each and every one of the victims. Together with this request, the Prosecution has requested that we add a cumulative sentence for the additional offenses of which the Defendants have been convicted. In his summations, the Prosecutor has emphasized the severity of the acts of the Defendants, who operated as a cell, the value of the sanctity of life and the gravity of the loss of life.

Defense Counsel did not dispute the severity of the offenses but asked the Court to consider the motives that drove the Defendants to carry out their acts.

[Stamp] **P 11-9: 55**

The Defendants, in their final words, cast the blame on the Israeli "occupation" and gave a pretext for their actions whereby they were for the purpose of self-defense and revenge for harm to unarmed Palestinians in general and their families in particular.

The misdeeds of the Defendants are many and unbearable, and upon reading their description as reflected in the amended indictments of which they were convicted, the wish to use words sparingly increases, for as will be made clear, words are not powerful enough to be of help. However, despite this feeling, it seems incumbent upon us to elaborate, at least in summary, on the acts of the Defendants in respect for the memory of the victims, and may it be wished that these words will serve as a memorial for their terrible suffering.

We have pondered the order in which we are to describe the acts. Should we begin with the simultaneous murder of two members of the same family, or should we first mention the bitter fate of the female residents of Jerusalem who were murdered when they walked down the main street of this city, or maybe it is better for us to relate,[…]

4

[Stamp] **P 11-9: 55** [continued]

Date:  21Adar II 5763                                                    Case No.: 3275/02
         March 25, 2003

[…]first of all, to the person who met his death when he was driving his vehicle on one of the other roads on which the Defendants operated? We have been taught by many that whoever loses a single person feels as though he has lost a whole world, and therefore we are not able to resolve this dilemma that has arisen before us. Therefore, we see fit to relate to the acts of the Defendants in their chronological order.

On January 25, 2001, the Defendant Mohamed Maslah decided to carry out a shooting attack against the driver of an Israeli vehicle in the Atarot area. For this purpose, the Defendant received a stolen vehicle and a pistol from the bodyguard of the head of the Fatah Tanzim, Marwan Barghouti. The Defendant recruited another person, Jad Maala, and the two started to travel to the industrial zone in Atarot, the Defendant driving the vehicle and his colleague holding the pistol. When they arrived, the noticed the late Elazer Akiva Pashkos, of blessed memory, who was driving a vehicle, and decided to follow him. At a certain stage, Mohamed Maslah overtook the vehicle of the deceased and ordered his colleague to shoot at the driver. Jad opened fire and hit the deceased, who died as a result of these injuries.

On July 26, 2001, Hussam Shahada and two of his colleagues decided to carry out a shooting attack in the Givat Ze'ev area. Armed with automatic weapons, the three traveled to Highway No. 436, which connect Jerusalem to Givat Ze'ev. The Defendant Shahada and one of his colleagues took positions near the road. When an Israeli vehicle arrived, they opened fire at it, as a result of which Ronen Landau, of blessed memory, was murdered.

One month later, on August 25, 2001, members of the military cell to which the three Defendants belonged met up and decided between them to carry out an additional shooting attack. Mohamed Maslah provided a weapon that he had received from Ahmed Barghouti to Haitham Hamdan and Hussam Shahada, for the purpose of carrying out the said attack. The two, together with two other members of the cell, departed to Highway No. 443 armed, and started to drive down it. At about 10:30 p.m. they noticed a vehicle in which the couple Yaniv and Sharon Ben-Shalom, of blessed memory; Doron Sviri, of blessed memory, and the two daughters of the couple were traveling. The partners overtook the couple's vehicle and opened fire at the occupants of the vehicle. As a result of this gunfire, Yaniv and Sharon Ben-Shalom, of blessed memory, and Doron Sviri, of blessed memory, were killed and one of the girls was injured. The shooters returned to Ramallah and reported to Mohamed Maslah about the attack that they had carried out. Mohamed Maslah also reported the attack to Ahmed Barghouti, and he granted the Defendants the amount of 500 dollars.

[Stamp] **P 11-9: 56**

Before a month had passed, on September 15, 2001, Mohamed Maslah was approached by two of his colleagues who asked him to provide a weapon for carrying out a shooting attack against Israeli civilians. The Defendant approached Ahmed Barghouti, received a weapon from him and delivered it to his colleagues, who were joined by Hussam Shahada, Haitham Hamdan and Ahmed Abdullah.

The Defendants, except for Mohamed Maslah, decided to carry out the attack in Jerusalem. The five therefore traveled to Highway No. 9, which connects the neighborhoods of Ramot and French Hill, and when the partners noticed a single vehicle approaching, they drove after it, overtook it and fired at its occupants, thus causing the death of the late Meir Weissbaus, of blessed memory, and the head injury of Moshe Weiss. Later, the partners returned the weapon to the Defendant and reported their acts to him.

On January 15, 2002, the members of the cell, including Mohamed Maslah, met again and decided to carry out another shooting attack. Through this Defendant, the partners received an MP-5 submachine gun and a pistol from Ahmed Barghouti. The partners planned to carry out a shooting attack at the Givonim fuel station on Highway No. 443. For this purpose, they drove to the site and stopped near the station. When the vehicle belonging to Yoela Chen, of blessed memory, entered the station, Mohamed Maslah and one of his accomplices approached her and fired at her, causing her death and injuring the passenger who sat next to her, Ms. Rashel Eini.

5

[Stamp] **P 11-9: 56** [continued]

Date:  21 Adar II 5763                                                Case No.: 3275/02
       March 25, 2003

The Defendant Mohamed Maslah also took part in the planning and execution of another shooting attack that was carried out on January 22, 2002, on Jaffa Street in Jerusalem. In this attack, Ora (Svetlana) Sandler, of blessed memory, and Sarah Hamburger, of blessed memory, were killed and 45 other civilians were injured.

Beyond what is mentioned above, the Defendants also took part in a long list of other attacks. Thus, Haitham Hamdan was an accomplice in shooting at a truck on February 26, 2002, which only miraculously ended without loss of life.

The Defendant Hussam Shahada took part in a shooting attack against an Egged bus and against private vehicles on August 18, 2001, in which two civilians, a 6-year-old girl, Ruth Shapira, and another passenger, Andrew Feitzush [as written], were injured. The Defendants Hussam Shahada and Mohamed Maslah carried out a shooting attack against vehicles on Highway No. 9 in Jerusalem on October 3, 2001, during which the Cohen couple were moderately injured. The two also attempted to carry out an additional attack.

The Defendant Hussam Shahada conspired with others to bring a suicide terrorist into Jerusalem, while Mohamed Maslah was taking part in another shooting attack on January 1, 2001, in which Avraham David was injured, and in a shooting attack on February 25, 2001, during which Yosef Cohen was severely injured.

Finally, we must state that Mohamed Maslah also participated in the lynching that was carried out against two Israel Defense Forces soldiers, Vadim Nurzhitz, of blessed memory, and Yosef Avrahami, of blessed memory, on October 12, 2000, in Ramallah, by shooting into the body of one of the soldiers.

This concludes the description of the Defendants' crimes, which reflect like a golden thread their unrestrained wish to strike at innocent civilians – men, women and children – indiscriminately and mercilessly, to the point that we doubt whether the Defendants are human at all or whether their thirst to shed blood has reduced them to such a low standing that they are no longer fit for this title.

The Defendants terrorized travelers on the roads in the Area and in Jerusalem by choosing their victims at random and attacking time after time, always in a gang, those who appeared to them to be the easiest targets.

[Stamp] **P 11-9: 57**

The Defendants' acts generate revulsion and it seems from them that the lives of others are worthless to them. The Defendants' attempt to justify their actions will not succeed and it would be enough for us to state that there can be no justification to intentional attacking of innocent civilians.

The greater the atrocity, the greater the feeling of helplessness, and no sentence, however harsh it may be, can take time back and bring the dead back to life and the injured back to health.

However, we see fit to emphasize again and again, according to the tradition of civilized man throughout history, that unlike the Defendants, for us the sanctity of life is of supreme value, which sets the value of man to be that of a whole world, as a creature that has wishes and desires, an opinion and view, ambitions, dreams, and hopes and vision, whose premature termination is an unforgivable crime.

We are living in hard times, at their center by an increasing phenomenon in which many have sanctified the taking of life and transformed it from something illicit, corrupt and reprehensible into something worthy and praised in their own eyes and even in the eyes of some of the public in the Area. This reversal in values requires, in our opinion, rethinking of basic concepts in sentencing doctrine as practiced by the Courts in the Area. Would it not be proper, after hundreds of innocent civilians have lost their lives to scoundrels[…]

6

[Stamp] **P 11-9: 57** [continued]

Date:  21 Adar II 5763                                    Case No.: 3275/02
       March 25, 2003

who have no basic human emotion, to examine the possibility of treating murderers in the same way as they have treated others?

It shall be noted that this Court, in its current panel, is not authorized to hand down to the Defendants a sentence any harsher than life imprisonment. But with these remarks, we wish to ask a question that has remained a dead letter for a long time.

We, the mortal Court, do not have the power to fittingly punish the Defendants, who repeatedly deprived their victims of life, thereby desecrating their image and inflicting terrible suffering upon the victims, the casualties and their families. Therefore, all that we can do in view of the atrocity is to order that they be banished from human society, with the confidence that the divine Court above will serve them their due when the time comes.

In view of the above, we reached the opinion that it is not possible to express our deep revulsion for the Defendants' acts unless we inflict upon them a sentence that will have a degree of eternity and retribution, albeit on a small scale, for the suffering and the cruel fate that have been inflicted upon the victims and their families.

We also see fit to act, in this case as well, according to the rule that has taken root, to hand down cumulative terms of life imprisonment to each of the Defendants for each person they killed, and to add to these sentences another prison term for their remaining despicable acts.

Therefore, we decide unanimously to sentence the Defendants as follows:

**For the Defendant Mohamed Maslah:**

- For the murder of **Elazar Akiva Pashkos, of blessed memory,** life imprisonment.

- For the murder of **Yaniv Ben-Shalom, of blessed memory,** life imprisonment.

- For the murder of **Sharon Ben-Shalom, of blessed memory,** life imprisonment.

- For the murder of **Doron Yosef Sviri, of blessed memory,** life imprisonment.

- For the murder of **Meir Weissbaus** [as written]**, of blessed memory,** life imprisonment.

- For the murder of **Yoela Chen, of blessed memory,** life imprisonment.

- For the murder of **Ora (Svetlana) Sandler, of blessed memory,** life imprisonment.

- For the murder of **Sarah Hamburger, of blessed memory,** life imprisonment.

- For the remaining offenses of which he has been convicted, life imprisonment.

[Stamp] **P 11-9: 58**

In total the Defendant shall serve nine cumulative terms of life imprisonment.

**For the Defendant Hussam Shahada:**

- For the murder of **Ronen Landau, of blessed memory,** life imprisonment.

- For the murder of **Yaniv Ben-Shalom, of blessed memory,** life imprisonment.

- For the murder of **Sharon Ben-Shalom, of blessed memory,** life imprisonment.

- For the murder of **Doron Yosef Sviri, of blessed memory,** life imprisonment.

- For the murder of **Meir Weissbaus** [as written]**, of blessed memory,** life imprisonment.

- Although the Prosecution requested that we sentence the Defendant to a set prison term for all of the other offenses of which he was convicted, in view of the severity, frequency and the terrible outcomes of his acts, we have seen fit to sentence the Defendant to an additional term of life imprisonment for these offenses.

In total the Defendant shall serve six cumulative terms of life imprisonment.

7

[Stamp] **P 11-9: 58** [continued]

[Stamp] **P 11-9: 59**

Date:  21Adar II 5763                                          Case No.: 3275/02
       March 25, 2003

**For the Defendant Haitham Hamdan:**

- For the murder of **Yaniv Ben-Shalom, of blessed memory,** life imprisonment.

- For the murder of **Sharon Ben-Shalom, of blessed memory,** life imprisonment.

- For the murder of **Doron Yosef Sviri, of blessed memory,** life imprisonment.

- For the murder of **Meir Weissbaus** [as written]**, of blessed memory,** life imprisonment.

- For the remaining offenses of which he has been convicted, 15 years' imprisonment.

In total the Defendant shall serve four terms of life imprisonment and 15 years' imprisonment, cumulatively.

In view of the criminal acts of the Defendants, we cannot conceive that anybody would consider granting them a pardon for any reason.

**Right of appeal within 30 days of today granted.**

**Handed down and announced this day, March 25, 2003, in public and in the presence of the parties.**

_____     _____     _____
        **Judge**                    **Presiding Judge**                    **Judge**

8

[Stamp] **P 11-9: 60**

The Military       Prosecution
In the             Judea Districts
Tel.:                    02-9970110
GHQ Tel.:              0205-5110
Fax:                  02-9970635
March       25,        2003
21        Adar II        5763

**Military Advocate General Headquarters – Deputy Advocate General
Administrator of Prosecutions in Judea and Samaria – Current Unit
Israel Defense Forces Spokesperson**
Reminder File 242/02
Reminder File 243/02
Reminder File 265/02

Re: <u>Sentence in the case of</u>
<u>Mohamed Abed Rahman Salam Maslah, Identity No. 9028456043</u>
<u>Hussam Akil Rajb Shahada, Identity No. 975564733</u>
<u>Haitham Almutfak Hamdan, Identity No. 906934832</u>

1.  Today, March 25, 2003, in the Military Court in Beit El, the three above-named were sentenced after having been convicted, according to their confessions, of the execution of a number of attacks on the roads of Judea and Samaria and in Jerusalem.

2.  The three above-named Defendants operated within the Al Aqsa Martyrs Brigades – the military arm of the Fatah Tanzim. The three Defendants operated under the auspices of Ahmed Barghouti, the right-hand man and bodyguard of Marwan Barghouti, the head of the Fatah Tanzim.

3.  One of the Defendants, Mohamed Abed Rahman Salam Maslah, acted as the commander of a military cell, which consisted of the two other Defendants and a number of other individuals. The cell's purpose was carrying out shooting attacks on roads near Ramallah and inside Jerusalem.

4.  **Mohamed Abed Rahman Salah Maslah** – was convicted of:

    a.  Participation in the lynching of two Israel Defense Forces soldiers on October 12, 2000, in Ramallah; the Defendant fired an M-16 assault rifle into the body of one of the soldiers after he had been murdered by the Palestinian crowd.

[Stamp] **P 11-9: 61**

b.   Carrying out a shooting attack against an Israeli vehicle on the Qalandia-Adam Junction road on January 1, 2001; one Israeli was injured.

c.   The murder of Elaz [as written] Akiva Pashkos, of blessed memory, on January 25, 2001, in the Atarot Industrial Zone in northern Jerusalem.

d.   The murder of Yaniv Ben-Shalom, of blessed memory; Sharon Ben-Shalom, of blessed memory; and Doron Yosef Sviri, of blessed memory, on August 25, 2003, on Highway No. 443 (Givat Ze'ev-Modiin).

[Stamp] **P11-9: 61** [continued]

e.    The murder of Meir Weissbaus [Translator's note: as written], of blessed memory, on September 15, 2001, on the Ramot-French Hill road in Jerusalem.

f.    Carrying out a shooting attack on the Begin Highway and on the Ramot-French Hill road in Jerusalem on October 3, 2001; two Israeli civilians were injured – a husband and his wife, who was pregnant.

g.    The murder of Yoela Chen, of blessed memory, at the fuel station next to Givat Ze'ev, on January 15, 2001, and the injury of Rashel (Rachel) [Translator's note: as written].

h.    The execution of a suicide attack, which occurred on January 22, 2002, at which time the suicide terrorist opened fire at civilians on Jaffa Street in Jerusalem. The Defendant was convicted of causing the deaths of two civilians who were murdered in the said attack (Ora (Svetlana) Sandler, of blessed memory, and Sarah Hamburger, of blessed memory) and the injury of more than 45 other civilians.

**For all of the offenses above, the Court sentenced the Defendant to nine cumulative terms of life imprisonment.**

5.    **Hussam Akil Rajb Shahada** was convicted of:

a.    The murder of Ronen Landau, of blessed memory, on the Jerusalem-Givat Ze'ev Road on July 29, 2001.

b.    Carrying out a shooting attack against an Egged bus in Givat Ze'ev in Jerusalem on August 18, 2001; as a result of the said attack, two people were injured.

c.    The murder of Yaniv Ben-Shalom, of blessed memory; Sharon Ben-Shalom, of blessed memory; and Doron Yosef Sviri, of blessed memory, on August 25, 2003, on Highway No. 443 (Givat Ze'ev-Modiin).

d.    The murder of Meir Weissbaus [Translator's note: as written], of blessed memory, on September 15, 2001, on the Ramot-French Hill road in Jerusalem.

f.    Carrying out a shooting attack on the Begin Highway and on the Ramot-French Hill road in Jerusalem on October 3, 2001; two Israeli civilians were injured – a husband and his wife, who was pregnant.

[Stamp] **P 11-9: 62**

**For all of the offenses above, the Court sentenced the Defendant to six cumulative terms of life imprisonment.**

6.  **Haitham Almutfak Hamdan** was convicted of:

   a.  The murder of Yaniv Ben-Shalom, of blessed memory; Sharon Ben-Shalom, of blessed memory; and Doron Yosef Sviri, of blessed memory, on August 25, 2003, on Highway No. 443 (Givat Ze'ev-Modiin).

   b.  The murder of Meir Weissbaus [Translator's note: as written], of blessed memory, on September 15, 2001, on the Ramot-French Hill road in Jerusalem.

   c.  Carrying out a shooting attack against a truck on the Givat Ze'ev-Atarot road on February 256, 2002.

**For all of the offenses above, the Court sentenced the Defendant to four cumulative terms of life imprisonment and 15 years' imprisonment to be served cumulatively to the terms of life imprisonment.**

<div align="right">

[Signature]
**Michael Kotlik, Captain**
**Administrator of Prosecution**
**In the Judea Districts**

</div>

References: 242-02 – Sentence
Attachments:  Indictments
              Sentences

<div align="right">

[Stamp] **11-9: 62** [continued]

</div>

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

   vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 11-9: 52-62.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P 11-9: 52-62.

Dated: February 28, 2014

Rina Ne'eman

ss.: New Jersey

On the 28 day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014


Notary Public

```
HENUT J MMRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
ID.# 2222704
```

P 11-9:52

תאריך: כ״א אדר ב׳ תשס״ג        תיק מס׳: 3275/02
25 מרץ    2003

בית המשפט הצבאי
ב י ת - א ל
- פ ר ו ט ו ק ו ל -

| | |
|---|---|
| דיון בית משפט מיום: 25/03/2003 | בפני אב״ד: סא״ל נתנאל בנישו |
| | שופט: רס״ן יואל הדר |
| תובע: סרן מיכאל קוטליק | שופט: סרן דוד שונברג |
| סניגור: עו״ד סמרה- נוכח | |

נאשם: הייתם אלמותפק חמדאן ת.ז.: 906934823 / שב״ס -נוכח

רשמת: רב״ט סיון שמש
מתורגמן: סמ״ר מחמד נסראלדין

אב״ד פותח את הישיבה ומזהה את הנאשם.

## מהלך דיון

תובע: אבקש לטעון בנוגע לשלושת הנאשמים במאוחד (תיקים 3250/02, 3255/02, 3275/02).

סניגור: אין התנגדות.

## ה ח ל ט ה

כמבוקש.

ניתן והודע היום, 25/03/03, בפומבי ובמעמד הצדדים.

| | | |
|---|---|---|
| שופט | אב״ד | שופט |

תובע: אני מגיש ראיות לעונש בתיק 3275/02, גליון רישום פלילי. (מתקבל ומסומן רת/1).

סניגור: אין ראיות לעונש.

תובע מסכם: היום עומדים בפנינו שלושה נאשמים כאשר היום צריך ביהמ״ש לגזור
את דינם וזאת לאחר שחודו בביצוע מספר פיגועים ובגרימת מוות של סך הכל 9
אזרחים ישראלים. נמצא כאן לפנינו היום ראש החוליה מחמד מצלח אשר תחת
פיקודו פעלה חבורה מצמצמת של אנשים אשר שמה לה למטרה לגרום למותם של
אנשים רבים ככל הניתן. שלושת הנאשמים שבפנינו בחרו לפגוע באזרחים חפים
מפשע אשר בחרו לנסוע בכבישי האיזור ובירושלים. תכניתם של השלושה הייתה

1

תאריך :כ"א אדר ב' תשס"ג          תיק מס' :3275/02
25 מרץ 2003

1  פשוטה להפליא. לוקחים נשק, עולים לרכב ונשתדל להרוג בדרך כמה שיותר. אדם
2  נורמטיבי לא יכול להבין מה יכול להביא אדם אחר להגיע למסקנה כזו, להגיע
3  למסקנה שהוא רוצה ליטול חיים מאנשים אחרים רק בגלל שהם יהודים. מחמד
4  מצלח החל את דרכו העבריינית, בסוף שנת 00' עם פרוץ האירועים האלימים
5  באיזור ובתוך מדינת ישראל. הוא החל בירי לעבר כוחות צה"ל באיזור רמאללה.
6  נאשם זה אף נטל חלק בליקוי בשני חיילי צה"ל ברמאללה, ביום 12/10/00. הנאשם
7  אשר הגיע לכיכר מנרה, ראה שם גופת אחד החיילים שנרצח ע"י ההמון, וירה בו
8  באמצעות רובה אמ- 16. לאחר מכן נאשם זה החליט כנראה שלחימה נגד כוחות
9  צה"ל לא מביאה לו את התוצאות הראויות, והוא שינה את דפוס הפעולה ועבר
10  לביצוע פיגועי ירי בכבישים. נאשם זה פעל במסגרת הארגון גדודי חללי אל אקצא,
11  הזרוע הצבאית של התנזים של הפתח, כאשר הוא וחבריו מקבלים מימון לפעילות
12  מראשי הארגון. נאשם זה לא יצא לביצוע פיגועים, אך הוא דאג לצייד את חבריו
13  בכלי נשק קטלניים ולהדריך אותם לירות לעבר אזרחים תמימים הנוסעים
14  בכבישים. הנאשם עצמו השתתף ברצח אחד בפועל, וביחד עם אחר רצח את אלעזר
15  עקיבא פשקוס ז"ל ביום 25/01/01. לאחר כחצי שנה בחודש אוגוסט 01' מחמד
16  מצלח שלח את חבריו ובניהם שני הנאשמים הנוספים שנמצאים כאן באולם,
17  הייתם חמדאן וחוסאם שחאראד לבצע פיגוע קטלני בכביש 443. אנשים אלה, רצחו
18  ביום 25/08/01 את בני הזוג יניב ונעמי בן שלום ז"ל וכן את דורון יוסף סווירי ז"ל.
19  לאחר פחות מחודש שני חבריו של מחמד מצלח ביחד עם אחרים בתחייתם של
20  מחמד מצלח ובנשק ובנשק שהוא מסר להם רצחו בכביש 9 בירושלים, את מאיר וייסבויז
21  ז"ל וכן פצעו את משה נידי שהיה יחד עמו ברכב. הנאשמים הבינו כי תכניתם
22  מביאות להם את התוצאות הרצויות ולא הסתפקו במעשים הללו. ביום 03/10/01
23  שני חבריו של מחמד מצלח בתחייתו של מחמד מצלח יצאו לביצוע פיגועי ירי
24  בכביש בגין בירושלים. מי שהבחינו שלא פגעו באף רכב, המשיכו לכביש רמות גבעה
25  צרפתית ובעלו שם פיגוע ירי נוסף. כתוצאה מאותו פיגוע נפצעה אישה בחריון
26  ובעגלה. בתחילת שנת 02' מחמד מצלח ביחד עם אחרים החליט לנקום את מותו של
27  פעיל ארגון התנזים ראאד קרמי. מחמד מצלח ואחרים הגיעו לתחנת הדלק ליד
28  גבעת זאב וירו מטווח אפס לעבר רכב ישראלי שנכנס לאותה תחנת דלק ואשר בו
29  ישבו שתי נשים. כתוצאה מהירי זה מחמד מצלח וחברו נרצחה יואלה חן ז"ל
30  וקרובת משפחתה נפצעה. מחמד מצלח לאחר כשבוע ימים, ביום 22/01/02, השתתף
31  בהוצאה אל הפועל של פיגוע התאבדות אשר במסגרתו ירה מחבל מתאבד, סעיד
32  רמדאן, לעבר הולכים ושבים ברחוב יפו בירושלים. בפיגוע זה נרצחו שתי נשים
33  אורה (שבלנטה) סנדלר ז"ל, ושרה הסבוגר ז"ל. יותר מארבעים וחמישה אזרחים
34  נפצעו באותו פיגוע. חוסאם שחאדה החל את פעילותו לא תחת חסותו של מחמד
35  מצלח אך גם הוא שם לעצמו מטרה לרצוח יהודים חפים מפשע. ביום 26/07/01
36  חוסאם שחאדה השתתף בפיגוע ירי בכביש ירושלים גבעת זאב אשר בו נרצח רונן
37  לנדאו ז"ל. ביום 18/08/01 חוסאם שחאדה השתתף בפיגוע ירי לעבר אוטובוס
38  נוסעים של אגד בפסגת זאב בירושלים. בפיגוע זה נפגעו שני אזרחים. לאחר מכן
39  חוסאם שחאדה ביחד עם הייתם חמדאן תחת הנחייתו של מחמד מצלח רצח את בני
40  הזוג בן שלום ז"ל, דורון יוסף סווירי ז"ל וכן את מאיר וייסבויז ז"ל. היום עומדים
41  בפנינו שלושה אנשים בשנות העשרים לחייהם. כולם רווקים, אנשים שטרם הספיקו
42  להביא ילדים לעולם. יחד עם זאת, שלושת האנשים הללו רצחו ילדים של אנשים
43  אחרים. התביעה הצבאית מבקשת כי ביהמ"ש ימצה את הדין עם שלושת הנאשמים
44  שבפנינו ויגזור על מחמד מצלח 8 מאסרי עולם מצטברים בגין כל אחד ואחד
45  מהאנשים אותם רצח וכן מאסר עולם בגין שאר העבירות אותן ביצע ובניהן
46  מספר פיגועי ירי וכן השתתפות בליקוי בחיילי צה"ל ברמאללה. התביעה הצבאית
47  מבקשת כי ביהמ"ש יגזור 5 מאסרי עולם מצטברים על חוסאם שחאדה בגין כל אחד
48  ואחד מהאנשים אותם רצח וכן מספר שנות מאסר קצוב בגין שאר העבירות ובניהן
49  פציעתם של אזרחים ישראלים. התביעה הצבאית מבקשת כי ביהמ"ש יגזור 4

2

תיק מס׳ :3275/02                                    תאריך :כ״א אדר ב׳ תשס״ג
                                                    25 מרץ    2003

1 מאסרי עולם מצטברים על היותם חמדאן בגין גרימת מותם של ארבעה אזרחים
2 ישראלים וכן מספר שנות מאסר במצטבר בגין שאר העבירות אותן ביצע. התביעה
3 הצבאית מבקשת כי עונש המאסר ירוצו במצטבר זה לזה וזאת כלפי עיקרון של
4 קדושת החיים, אין ביהמ״ש יכול להחזיר את הנרצחים לחיים, אין ביהמ״ש יכול
5 לפצות את המשפחות שנגרם להן סבל, אין ביהמ״ש יכול לפצות ילדים והורים על
6 אובדן קרוביהם, אך ביהמ״ש יכול למסור מסר לכאשמים עצמם ולכלל החברה
7 האנושית כי יש דין ויש דיין. התביעה הצבאית מבקשת את צבירת העונשים לאור
8 פסיקתם העקבית של ביהמ״ש העליון במדינת ישראל ולאור פסיקתם של בימ״ש זה.
9 אני מפנה לדברים של כב׳ השופט חשין בערעור פלילי 1742/91 בעניינו של עמי פופר
10 (מצטבר). התביעה הצבאית מגישה לביהמ״ש את פסיקתו של ביהמ״ש העליון וכן את
11 פסיקתו של בימ״ש זה לעניין צבירת העונשים ולעניין החוכה לגזור עונש נפרד על
12 שאר המעשים בנוסף למאסר העולם. הרי מי שנדון למאסר עולם אינו מחוסן בפני
13 עונש נוסף בשל מעשה פשע נוסף שביצע.
14

15 סניגור מסכם: כבוד ביהמ״ש, נכון שמדובר בעבירות קשות, חמורות, לפי כתב
16 האישום אין צורך שאתייחס או שאתחיל לפרט כל פרט אישום הרי הוא מדבר בעד
17 עצמו. אני לא חושב שחובה על ביהמ״ש לעלות שאלה והיא כי מדוע הנאשמים
18 ביצעו את כל העבירות המיוחסות להן בכתב האישום, כפי שטען חברי שמדובר
19 בשלושה נאשמים בשנות העשרים עדיין לא ראו את החיים ולא הספיקו להביא
20 ילדים. לא נוכל להסתכל מנקודת מבט מצד אחד ולהתעלם מצד שני הרי חובתו של
21 ביהמ״ש לבחון גם מה שקורה בצד שני. מדובר באירועים שנמשכים כבר יותר
22 משלושים חודש, שכל כך הרבה אנשים פלסטינים נפגעו על ידי כוחות צה״ל, אנשים
23 מבוגרים, ילדים קטנים, זקנים, אין לי בדיוק את המספר שלהם אך כפי שמתפסם
24 מדי פעם זה פי שלושה או פי ארבעה מההרוגים מן הצד הישראלי. אין לראות
25 בדברים אלה שאני מצדיק את זה, אך אני רציתי להביא לביהמ״ש את המצב על
26 מנת שביהמ״ש יכול להגיע למסקנה מה הן הנסיבות המבראות צעירים בשנות
27 העשרים לביצוע מעשים כאלו. רק דבר אחד והוא הכיבוש הישראלי באיזורים
28 הפלסטינים. לעניין העונש הראוי, הנאשמים כאן לא הרוויחו כלום ביצעו את
29 העבירות על רקע אידיאולוגי ולאומני. אין שום קשר או איבה אישית בינם לבן
30 הקורבנות, לכן את העונשים שתביעי נקט בהם, הם מגזמים, בקשתנו היא
31 מביהמ״ש היא לגזור על הנאשמים שנות מאסר רצופות או לחילופין לגזור מאסר
32 עולם אחד, אבש100 לא לגזור עליהם שנות מאסר רצופות במצטבר לעונש מאסר עולם
33 אלא להסתפק באותם מאסרי עולם. את העונש בגין שאר העבירות להיות בחופף
34 לעונש של מאסרי עולם.
35

36 הנאשם בדברו האחרון : בקשר לעמדתי אני לא עמדתי בשביל החוק אלא בשביל
37 משפחתי, אני רוצה לפנות לכבוד השופט האחראי על העונש. אם משהו תוקף את
38 ביתך וזונקקת להגן על עצמך, בסוף הגעת לכך שהוא ירצח אותך או שאתה תרצח
39 אותו, האם זה פשע או על רקע הגנה עצמית. החיילים הישראלים הם אלה
40 שרוצחים את הילדים הקטנים, למה הם לא הובאו בפני ביהמ״ש לגזור עליהם
41 עונשים. אם אתם מבקשים את השלום עליכם לצאת מן השטחים. עשינו את
42 הדברים על סמך שאנו מסרבים לכיבוש. אתם לקחתם מסכנה שהעם הפלסטיני
43 אוהב כמות, אנו אוהבים לחיות אך מעדיפים את המוות על החיים במקרה של עמנו.
44 האם אני צודק בדברי? שתקפתם אותנו רצינו להגן על עצמנו לא יותר, אתה שמת
45 אותי בצומת ונתת לי אופציה למות או    למות כחייל או כראשאי למעלה ומסרב
46 להכנע. אם אתם מעוניינים בשלום אתם חייבים לצאת מן השטחים. ביהמ״ש הזה
47 איני מכיר בו, החוק חל על כולם, שיהיה שוויון בין הישראלי לפלסטיני, באותה עת
48 אני אוכל לחשוב לקבל את סמכות ביהמ״ש זה.

3

תיק מס': 3275/02

תאריך: כ"א אדר ב' תשס"ג
25 מרץ 2003

בית המשפט הצבאי
ב י ת - א ל
- פ ר ו ט ו ק ו ל -

דיון בית משפט מיום: 25/03/2003

בפני אב"ד: סא"ל נתנאל בנישו
שופט: רס"ן יואל הדר
שופט: סרן דוד שונברג

נאשם: חוסאם עקל רג'ב שחאדה    ת.ז 975564733 / שב"ס - נוכח
מחמד ע/רחמאן סאלם מצלח    ת.ז 9028456043 / שב"ס - נוכח
הייתם אלמותפק חמדאן    ת.ז 906934832 / שב"ס - נוכח

## ג ז ר - ד י ן

שלושת הנאשמים העומדים לדין בפנינו היום חברו יחד לחוליה צבאית אשר שמה
לה למטרה לבצע פיגועים נגד אזרחים ישראלים באיזור ומחוצה לו.

עד מהרה החלו הנאשמים להוציא לפועל את כוונתם ונטלו חלק, מי יותר ומי פחות,
בפיגועי ירי אשר במקרים רבים הביאו למותם של אלה כלפיהם כוון ירי זה.

לנוכח שיתוף הפעולה בין הנאשמים במסגרת החוליה הצבאית ולאור העובדה כי
ביצעו עבירות רבות בצוותא חדא, מצאנו לגזור את דינם בגזר דין אחד מאוחד, על
אף שמלכתחילה הוגשו כתבי אישום נפרדים נגד כל אחד מהם.

התביעה הצבאית עתרה כי נטיל על כל אחד מהנאשמים עונשי מאסר עולם
מצטברים בגין רציחת כל אחד ואחד מהנרצחים. לצד בקשה זו ביקשה התביעה כי
נוסיף עונש מצטבר בגין העבירות הנוספות בהן הורשעו הנאשמים. התובע הדגיש
בסיכומיו את חומרת מעשיהם של הנאשמים שפעלו כחוליה, את ערך קדושת החיים
ואת גודל האבידה.

אף הסניגור לא חלק על חומרת העבירות, אך ביקש כי בית המשפט יתחשב
במניעתים שהביאו את הנאשמים לבצע את מעשיהם.

הנאשמים בדברם האחרון, הטילו את האשמה על ה"כיבוש" הישראלי ותירצו את
פעולותיהם בצורך בהגנה עצמית ונקם על הפגיעה בפלסטינים לא חמושים ככלל
ובבני משפחותיהם בפרט.

מעלליהם של הנאשמים רבים וקשים מנשוא, ולמקרא תיאורם כפי שבא לידי ביטוי
בכתבי האישום המתוקנים, בהם הורשעו, גובר הרצון להמעיט במילים שכפי
שיובהר, כוח דל מלהושיע. אולם, על אף תחושה זו, נראה לנו כי חובה עלינו לפרט
ולו במנצות אודות מעשיהם של הנאשמים למען זכרם של הקורבנות, ויהי רצון כי
דברינו אלה ישמשו גל-עד לסבלם הנורא.

התלבטנו על פי איזה סדר נפרוס את המעשים. שמא נתחיל ברציחתם של שני בני
משפחה אחת בין-רגע או שמא עדיף כי נזכיר תחילה את גורלם חמר של תושבות
ירושלים שנרצחו עת פסעו ברחובה הראשי של עיר זו, או אולי עדיף כי נתייחס,

4

99 :6-44 d

תאריך :כ״א אדר ב׳ תשס״ג        תיק מס׳:3275/02
25 מרץ    2003

1 ראשית לכל, למי שמצא את מותו עת נסע ברכבו באחד מהכבישים הנוספים בהם
2 פעלו הנאשמים. אכן לימדונו רבותינו, כי כל המאבד אדם אחד כאילו איבד עולם
3 מלא, ועל כן לא נוכל לפתור דילמה זו שנתעוררה בנו. אי לכך, מצאנו להתייחס
4 למעשיהם של הנאשמים על פי סדרם הכרונולוגי דווקא.
5
6 ביום 25/01/01 החליט הנאשם, מחמד מצלח, לבצע פיגוע ירי לעבר נהג רכב ישראלי
7 באזור עטרות. הנאשם קיבל לצורך זה רכב גנוב ואקדח משומר ראשו של ראש
8 התנועים של הפתיח, מרואן ברגותי. הנאשם צירף אליו אדם אחר, ג׳אד מעלה,
9 והשניים החלו נוסעים לאזור התעשייה בעטרות כשהנאשם נהג ברכב ותברו מחזיק
10 באקדח. בהגיעם, הבחינו במכונית אליעזר עקיבא פשקוס ז״ל, אשר נהג ברכב
11 והחליטו לעקוב אחריו. בשלב מסויים עקף מחמד את הרכב של המכונית והורה
12 לחברו לירות לעבר הנהג. ג׳אד פתח בירי ופגע במנוח אשר נפטר כתוצאה מפגיעות
13 אלה.
14
15 ביום 26/07/01 החליטו חוסאם שחאדה ושניים מחבריו לבצע פיגוע ירי באיזור
16 גבעת זאב. השלושה נסעו כשהם חמושים בשני כלי נשק אוטומטיים לכביש 436,
17 המחבר בין ירושלים לגבעת זאב. הנאשם שחאדה ואחד משותפיו התמקמו בסמוך
18 לכביש. בהגיע רכב ישראלי, פתחו בירי לעברו אשר כתוצאה ממנו נרצח רונן לנדאו
19 ז״ל.
20
21 חודש מאוחר יותר, ביום 25/08/01, נפגשו חברי החוליה הצבאית אליה השתייכו
22 שלושת הנאשמים וסיכמו ביניהם לבצע פיגוע ירי נוסף. מחמד מצלח סיפק להיו יתם
23 חמדאן ולחוסאם שחאדה כלי נשק אותו קיבל מאחמד ברגותי, לשם ביצוע הפיגוע
24 האמור. השניים יחד עם עוד שניים חמושים יצאו חמושים לכביש 443 וחלו
25 נוסעים בו. בסמוך לשעה 22:30 הבחינו ברכב ובו נסעו בני הזוג יניב ושרון בן שלום
26 ז״ל, דורון סוזירי ז״ל ושתי בנותיהם של בני הזוג. השותפים עקפו את הרכב של בני
27 הזוג ופתחו באש לעבר נוסעי הרכב. כתוצאה מירי זה נהרגו יניב ושרון בן שלום ז״ל,
28 דורון סוזירי ז״ל ואחת מהילדות נפצעה. היורים חזרו לרמאללה ודיווחו למחמד
29 מצלח אודות הפיגוע אותו ביצעו. מחמד מצלח דיווח אף הוא לאחמד ברגותי על
30 הפיגוע וזה העניק לנאשמים סכום של 500 דולר.
31
32 לא חלף חודש ובים 15/09/01 פנו למחמד מצלח שניים מחבריו, בבקשה שימסור
33 לידיהם כלי נשק לשם ביצוע פיגוע ירי לעבר אזרחים ישראלים. הנאשם פנה לאחמד
34 ברגותי, קיבל ממנו כלי נשק ומסרו לחבריו, אליהם הצטרפו חוסאם שחאדה,
35 היה ה חמדאן ומחמד עבדאללה. הנאשמים, מלבד מחמד מצלח, החליטו לבצע את
36 הפיגוע בירושלים. החמישה נסעו, על כן, לכביש מספר 9, המחבר בין השכונות רמות
37 והגבעה הצרפתית, וכאשר הבחינו השותפים ברכב בודד המתקרב, נסעו אחריו,
38 עקפו אותו וירו לעבר היושבים בו, ובכך גרמו למותו של מאיר וייסבויז ז״ל ולפציעתו
39 בראשו של משה וייס. בהמשך החזירו השותפים את כלי הנשק לנאשם ודיווחו לו על
40 מעשיהם.
41
42 ביום 15/01/02 נפגשו שוב חברי החוליה, ביניהם מחמד מצלח והחליטו לבצע פיגוע
43 ירי נוסף. השותפים קיבלו, באמצעות נאשם זה תמ״ק MP5 ואקדח מידי אחמד
44 ברגותי. השותפים תכננו לבצע פיגוע ירי בתחנות הדלק ״בבעונים״ שבכביש 443.
45 לצורך זה נסעו למקום ונעצרו בסמוך לתחנה. כשנכנס רכבה של יואלה חן ז״ל
46 לתחנה ניגשה אליה מחמד מצלח ואחד משותפיו וירו לעברה וגרמו למותה ולפציעתה
47 של הנוסעת שישבה לצידה, גבי רשל עיני.
48

5

תיק מס׳ 3275/02:          תאריך :כ״א אדר ב׳ תשס״ג

25 מרץ    2003

1   הנאשם מחמוד מצלח אף נטל חלק בתכנון ובהוצאה לפועל של פיגוע ירי נוסף שבוצע
2   ביום 22/01/02, ברחוב יפו בירושלים. בפיגוע זה נרצחו אורה (סבטלנה) סנדלר ז״ל
3   ושרה המבורגר ז״ל ונפצעו 45 אזרחים נוספים.
4
5   מעבר לאמור השתתפו הנאשמים בשורה ארוכה של פיגועים נוספים. כך היה שותף
6   הנאשם היינם חמדאן בירי לעבר משאית ביום 26/02/02, אשר רק בנס הסתיים
7   ללא נפגעים בנפש.
8
9   הנאשם חוסאם שחאדה נטל חלק בפיגוע ירי לעבר אוטובוס אגד ולעבר כלי רכב
10  פרטיים ביום 18/08/01 ובו נפצעו שני אזרחים, ילדה בת 6, רות שפירא, ונוסע נוסף,
11  אנדריו פיינצוש. הנאשמים חוסאם שחאדה ומחמוד מצלח ביצעו פיגוע ירי לעבר כלי
12  רכב בכביש 9 בירושלים ביום 03/10/01 אשר במהלכו נפצעו בני הזוג כהן באורח
13  בינוני. השניים ניסו אף לבצע פיגוע נוסף .
14
15  הנאשם חוסאם שחאדה קשר קשר עם אחרים להכניס מחבל מתאבד לירושלים,
16  בעוד מחמוד מצלח נטל חלק בפיגוע ירי נוסף ביום 01/01/01 בו נפצע אברהם דוד,
17  ובפיגוע ירי ביום 25/02/01, במהלכו נפצע באורח קשה יוסף כהן.
18
19  לבסוף, נציין כי מחמוד מצלח אף השתתף בליני׳ שבוצע בשני חיילי צה״ל ודים
20  נורזיץ ז״ל ויוסף אברהמי ז״ל ביום 12/10/00, ברמאללה, כאשר ירה בגופתו של
21  אחד החיילים.
22
23  עד כאן באשר לתיאור פשעיהם של הנאשמים, בהם ניכר כחוט השני רצונם הבלתי
24  מרוסן לפגוע באזרחים תמימים, נשים, גברים וטף ללא כל אבחנה וללא רחם, עד
25  שנתעורר בנו הספק  אם אמנם בני אנוש הם הנאשמים או שמא צמאונם לשפוך דם
26  הורידם לדרגה כה שפלה שאינם ראויים יותר לתואר זה.
27
28  הנאשמים הטילו חיתתם על נוסעי הכבישים באיזור ובירושלים כאשר בחרו
29  באקראי את קרבנותיהם ותקפו פעם אחר פעם, תמיד בחבורה, את אלו שנראו להם
30  הקלים ביותר לפגיעה.
31
32  מעשיהם של הנאשמים מעוררים פלצות וניכר מהם כי חיי זולתם חסרי כל ערך
33  עבורם. ניסיונם של הנאשמים להצדיק את מעשיהם לא יצלח ודי אם נציין כי לא
34  תיתכן הצדקה לפגיעה מכוונת באזרחים חפים מפשע.
35
36  כגודל הזוועה, כך גודל תחושת חוסר האונים, שהרי לא יהא בעונש חמור ככל שיהא
37  כדי להחזיר הגלגל לאחור ולהשיב למתים את חייהם ולפצועים את בריאותם.
38
39  יחד עם זאת, מוצאים אנו לחזור ולהדגיש, בהתאם למסורת בני התרבות מקדמת
40  דנא, כי בניגוד לנאשמים, לנו קדושת החיים מהווה ערך עליון, המעמיד את האדם
41  כעולם מלא, כיצור בעל רצונות ומאוויים, דיעה והשקפה, שאיפות, חלומות, כמו גם
42  תקוות וחזון, אשר קטיעתם בטרם עת הינו פשע בל יסולח.
43
44  ימים קשים הם חימים בהם אנו חיים, במרכזם הולכת ופושה תופעת לפיה קידשו
45  רבים את הפגיעה בנפש והפכוה מפסולה, נלוזה ומתועבת, לראויה ומשובחת בעיני
46  עצמם ואף בעיני חלק מהציבור באיזור. היפוך יוצרות זה מחייב לדעתינו חשיבה
47  מחודשת באשר למושכלות יסוד בתורת הענישה כפי שנהגנ בבתי המשפט באיזור.
48  האין יהא זה ראוי, לאחר שמאות אזרחים תמי לב קיפחו חייהם בידי בני עוולה,

6

תאריך :כ"א אדר ב' תשס"ג          תיק מס': 3275/02
25 מרץ 2003

1    חסרי כל רגש אנושי בסיסי, כי תבחן מעמיקה האפשרות לנהוג עם המרצחים
2    מידה כנגד מידה.
3
4    יצויין כי אין בית משפט זה, בהרכבו הנוכחי מוסמך להטיל על הנאשמים עונש חמור
5    יותר ממאסר עולם. אולם בדברינו אלה רצינו ולהעלות  שאלה, אשר נותרה זמן רב
6    כאות מתה, לדיון.
7
8    אנו, בית משפט של מטה, אין בכוחנו להעניש כיאות את הנאשמים אשר קצרו, חזרו
9    וקצרו חיים ובכך חיללו את צלמם והביאו על הנרצחים, הנפגעים ועל בני
10   משפחותיהם סבל נוראי. כל שבכוחנו לעשות, לנוכח הזוועה הוא לצוות, על כן, על
11   הרחקתם מחברת אדם מתוך בטחון כי יבוא אותו בית משפט של מעלה ויפרע מהם.
12
13   לאור האמור לעיל, הגענו לכלל דעה כי לא יהא ניתן לבטא את סלידתנו העמוקה
14   ממעשי הנאשמים, מלבד אם נטיל עליהם עונש שגם הוא יהא בו מידה של נצחיות
15   וגמול, בזעיר אנפין, לסבל ולגורל האכזר שנגזר על הקורבנות ועל בני משפחותיהם.
16
17   אף מוצאים אנו לנכון לפעול, גם במקרה זה, בהתאם להלכה שהשתרשה, להטיל על
18   כל אחד מהנאשמים עונשי מאסר עולם מצטברים בגין כל נפש ונפש ונפח אותה קיפחו
19   ולהוסיף לעונשים אלו מאסר נוסף בגין יתר מעשיהם החמורים.
20
21   אשר על כן, אנו מחליטים לגזור, פה אחד, על הנאשמים את העונשים הבאים :
22
23   **על הנאשם מחמד מצלח:**
24
25   -    בגין רציחתו של **אלעזר עקיבא פשקוס ז"ל**, מאסר עולם.
26   -    בגין רציחתו של **יניב בן שלום ז"ל**, מאסר עולם.
27   -    בגין רציחתה של **שרון בן שלום ז"ל**, מאסר עולם.
28   -    בגין רציחתו של **דורון יוסף סווירי ז"ל**, מאסר עולם.
29   -    בגין רציחתו של **מאיר וייסבויז ז"ל**, מאסר עולם.
30   -    בגין רציחתו של **יואלה חן ז"ל**, מאסר עולם.
31   -    בגין רציחתה של **אורה (סבטלנה) סנדלר ז"ל**, מאסר עולם.
32   -    בגין רציחתה של **שרה המבורגר ז"ל**, מאסר עולם.
33   -    בגין יתר העבירות בהן הורשע, מאסר עולם.
34
35   סך הכל ירצה הנאשם 9 מאסרי עולם מצטברים.
36
37   **על הנאשם חוסאם שחאדה :**
38
39   -    בגין רציחתו של **רונן לנדאו ז"ל**, מאסר עולם.
40   -    בגין רציחתו של **יניב בן שלום ז"ל**, מאסר עולם.
41   -    בגין רציחתו של **שרון בן שלום ז"ל**, מאסר עולם.
42   -    בגין רציחתו של **דורון יוסף סווירי ז"ל**, מאסר עולם.
43   -    בגין רציחתו של **מאיר וייסבויז ז"ל**, מאסר עולם.
44   -    על אף שבקשת התביעה הייתה כי נטיל על הנאשם, בגין יתר העבירות בהן
45   הורשע עונש מאסר קצוב, לנוכח חומרת מעשיו, תדירותם, ותוצאותיהן
46   הקשות, מצאנו לנכון להטיל על הנאשם עונש מאסר עולם נוסף בגין עבירות
47   אלה.
48
49   סך הכל ירצה הנאשם 6 מאסרי עולם מצטברים.

תיק מס׳ :3275/02

תאריך :כ״א אדר ב׳ תשס״ג
25 מרץ    2003

1    על הנאשם היתם חמדאן:
2
3    - בגין רציחתו של **יניב בן שלום** ז״ל, מאסר עולם.
4    - בגין רציחתה של **שרון בן שלום** ז״ל, מאסר עולם.
5    - בגין רציחתו של **דורון יוסף סוויירי** ז״ל, מאסר עולם.
6    - בגין רציחתו של **מאיר וייסבויז** ז״ל, מאסר עולם.
7    - בגין יתר העבירות בכן הורשע, 15 שנות מאסר.
8
9    סך הכל ירצה הנאשם 4 מאסרי עולם ו- 15 שנות מאסר כולם במצטבר.
10
11    לנוכח מעשיהם הנפשעים של הנאשמים, איננו מעלים בדעתנו כי מאן דהו יעלה
12    בדעתו לחון אותם מכל סיבה שהיא.
13
14
15    **זכות ערעור תוך 30 יום מהיום.**
16
17    ניתן והודע היום, 25/03/03, בפומבי ובמעמד הצדדים.
18
19
20
21
22
23

_____          _____          _____
שופט                      אב״ד                      שופט

8

<div dir="rtl">

| התביעה | הצבאית |
|---|---|
| בנפות | יהודה |
| טל/: | 02-9970110 |
| מטכ״לי: | 0205-5110 |
| פקס: | 02-9970635 |
| 25    מרץ | 2003 |
| כ״א  אדר  ב׳  תשס״ג | |

מפצ״ר – ס׳ מצ״ר
יועמ״ש איו״ש – יועמ״ש
הממונה על התביעות באיו״ש – כאן
**דובר צה״ל**
ת.ת. 242/02
ת.ת. 243/02
ת.ת. 265/02

**הנדון: גזר-דין בעניינם של**
**מחמד ע/רחמאן סאלם מצלח, ת.ז 902845643**
**חוסאם עקל רג׳ב שחאדה, ת.ז 975564733**
**הייתם אלמותפקה חמדאן, ת.ז 906934832**

1.  היום, 25.03.03, בבית המשפט הצבאי בבית-אל נגזר דינם של שלושת הנאשמים הנ״ל, אשר הורשעו, על-פי הודאותיהם, בביצוע מספר פיגועים בכבישי איו״ש וברושלים.

2.  שלושת הנאשמים חנ״ל פעלו במסגרת ״גדודי חללי אלאקצא״ – הזרוע הצבאית של ״התנזים״ של הפת״ח. שלושת הנאשמים פעלו תחת חסותו של אחמד ברגותי, מקורבו ושומר ראשו של מרואן ברגותי – ראש ״התנזים״ של הפת״ח.

3.  אחד הנאשמים – מחמד ע/רחמאן סאלם מצלח פעל כמפקד של חוליה צבאית, אשר מנתה את שני הנאשמים האחרים ומספר אנשים נוספים. החוליה שמה לה למטרה ביצוע פיגועי ירי בכבישים הסמוכים לרמאללה ובתוך ירושלים.

4.  **מחמד ע/רחמאן סאלם מצלח – הורשע ב:**
    א.  השתתפות בלווי בשני חיילי צה״ל ביום 12.10.00 ברמאללה – תנאשם ירה ברובה״ר אם-16 בגופת אחד החיילים, לאחר שנרצח על-ידי ההמון הפלסטיני
    ב.  ביצוע פיגוע ירי לעבר רכב ישראלי בכביש קלנדיה – צומת אדם ביום 01.01.01 – נפצע ישראלי אחד
    ג.  רציחתו של אלעו עקיבא פשקוס ז״ל ביום 25.01.01 באיזור תעשיה עטרות בצפון ירושלים
    ד.  רציחתם של ינב בן שלום ז״ל, שרון בן שלום ז״ל ודורון יוסף סווירי ז״ל ביום 25.08.03 בכביש 443 (גבעת-זאב – מודיעין)

</div>

ה. רציחתו של מאיר וייסבויז ז"ל ביום 15.09.01 בכביש רמות – חגבעה הצרפתית בירושלים

ו. ביצוע פיגוע ירי בכביש בגין ובכביש רמות – חגבעה הצרפתית בירושלים ביום 03.10.01 – נפצעו שני אזרחים ישראליים – בעל ואישתו, אשר היתה בהריון

ז. רציחתה של יואלה חן ז"ל בתחנת הדלק ליד גבעת-זאב ביום 15.01.02 ופציחתה של רשל (רחל)

ח. הוצאה לפועל של פיגוע התאבדות, אשר אירע ביום 22.01.02 – אז פתח המחבל התאבד באש לעבר אזרחים ברחוב יפו בירושלים. חאשם הורשע בגרימת מותו של שתי אזרחיות שנרצחו בפיגוע האמור (אורה (סבטלנה) סנדלר ז"ל ושרה המבורגר ז"ל) וכן בפציעתם של מעל 45 אזרחים נוספים

**בגין כל העבירות הנ"ל בית המשפט גזר על הנאשם 9 מאסרי עולם מצטברים**

5. **חוסאם עקל רג'אב שחאדה – חורשע ב:**
   א. רציחתו של רונן לנדאו ז"ל בכביש ירושלים – גבעת-זאב ביום 29.07.01
   ב. ביצוע פיגוע ירי לעבר אוטובוס "אגד" בפסגת-זאב בירושלים ביום 18.08.01 – כתוצאה מהפיגוע האמור נפצעו שני אנשים
   ג. רציחתם של יניב בן שלום ז"ל, שרון בן שלום ז"ל ודורון יוסף סוויירי ז"ל ביום 25.08.03 בכביש 443 (גבעת-זאב – מודיעין)
   ד. רציחתו של מאיר וייסבויז ז"ל ביום 15.09.01 בכביש רמות – חגבעה הצרפתית בירושלים
   ה. ביצוע פיגוע ירי בכביש בגין ובכביש רמות – חגבעה הצרפתית בירושלים ביום 03.10.01 – נפצעו שני אזרחים ישראליים – בעל ואישתו, אשר היתה בהריון

**בגין העבירות הנ"ל בית המשפט גזר על הנאשם 6 מאסרי עולם מצטברים**

6. **חייתם אלמוחפמך חמדאן – חורשע ב:**
   א. רציחתם של יניב בן שלום ז"ל, שרון בן שלום ז"ל ודורון יוסף סוויירי ז"ל ביום 25.08.03 בכביש 443 (גבעת-זאב – מודיעין)
   ב. רציחתו של מאיר וייסבויז ז"ל ביום 15.09.01 בכביש רמות – חגבעה הצרפתית בירושלים
   ג. ביצוע פיגוע ירי לעבר משאית בכביש גבעת-זאב – עטרות ביום 26.02.02

**בגין כל העבירות הנ"ל בית המשפט גזר על הנאשם 4 מאסרי עולם מצטברים וכן 15 שנות מאסר בפועל במצטבר למאסרי העולם**

מיכאל קונפינו                         סרן
הממונה על התביעה
בגמ"ח                    יהודה

סימוכין : 242-02 – גזר
לוט : כתבי-אישום
גזר-הדין