# EXHIBIT A.259


PLAINTIFF'S
EXHIBIT
259

Date:  8 Shevat 5768
     January 15, 2008

Case No.: 2305/04

## The Judea Military Court

**Before Honorable President of the Court:**  **Major Yair Tirosh**
                **Judge:**  **Major Dalia Kaufman**
                **Judge:**  **Major Amir Dahan**

**The military prosecution**
(by Captain Sagiv Lichtman)

- v. -

**Ahmed Mohamed Ahmed Saad, Identity No. 911744878 / IPS**
(by Counsel Adv. Osama Ouda)

---

## Arguments for Sentencing

**Honorable Judge Amir A. Dahan**:

### A.   The indictment and the verdict

The Defendant, born in 1987, from Douha, has been convicted of committing the following offenses:

1. **Aiding in causing intentional death** – an offense pursuant to Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 of the Security Provisions Order (Judea and Samaria) (No. 225), 5728-1968 **(19 offenses)**.

2. **Aiding in an attempt to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 14, 19, 20 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 **(2 offenses)**.

3. **Conspiring to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 21, 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 **(one offense)**.

[Stamp] P2: 133

1

4.   **Conspiring to make a bomb** – an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 **(one offense)**.

5.   **Possession of explosives** – an offense under Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 **(one offense)**.

The main offenses of which the Defendant was convicted surround his involvement in the execution of two deadly suicide attacks in Jerusalem. The first attack occurred on January 29, 2004, on bus no. 19 and the second attack on February 22, 2004, on bus no. 14, in which 19 people were murdered.

[Stamp] P2: 133 [continued]

2

Date:  8 Shevat 5768                                                    Case No.: 2305/04
      January 15, 2008

As set forth in the verdict, the acts of the Defendant constituted aiding another person (Ali Abu Halail, hereinafter: "Ali") in the purchase of raw materials for preparing explosives. Those raw materials, along with additional materials, were used for preparing explosive bags that were prepared by an additional person by the name of Makdad. As set forth in the verdict, the Defendant did not do anything alone but acted under explicit instructions from Ali, who was older than him. In addition, his actions are characterized by recklessness and indifference to the consequences.

### B.   The pleas of the defense

1.   The Prosecution contended that the Defendant took significant part in the process of making the explosive devices and bringing in the raw materials. The prosecution contends that his acts were performed while anticipating the results of the activation of the explosive device. Therefore, he must be punished to a level of severity that will reflect the severity of the acts that he carried out.

2.   The Prosecutor emphasized the terrible results of the suicide attacks: the murder of 19 people in an indiscriminate massacre and the injury of dozens.

3.   The Prosecutor contended that the sentence that would be fitting in the circumstances of the case is one term of life imprisonment for each offense of aiding in causing intentional death. To this sentence, two additional terms of life imprisonment must be added for each offense of aiding an attempt to cause intentional death as well as a sentence in years for the additional offenses. In this, the Prosecutor relied on the case law of the Appellate Court and the principle of the sanctity of life. In view of the ruling of the Military Appellate Court, the Prosecution believes that some of the sentences should be served concurrently to a certain degree, to express correctly the gravity of the acts and the principle of the sanctity of life.

4.   The Prosecutor referred us to the cases of the accomplices, Case (Judea) 2306/04 **The Military Prosecutor v. Ali Abu Halail** and Case (Judea) 2303/04 **The Military Prosecutor v. Hilmi Hamash** and repeated his pleas for sentencing in these cases. The Prosecutor contended that even though the Defendant's part was smaller than that of his partners, smaller in particular than the part of Ali Abu Halail, this is not enough to create a level of differential sentencing that would reduce the sentence of the Defendant to a sentence set in years according to the ruling of the Military Appellate Court.

[Stamp] P2: 134

3

5.  The difference between being an accomplice and aiding and the magnitude of the part that the Defendant took in the offenses and the part that other defendants in the case took in the offenses is supposed to be expressed, in the opinion of the Prosecution, in the cumulative service of some of the sentences of life imprisonment.

6.  The Prosecutor summated his statements with his petition for the following sentences, which in his opinion should be imposed upon the Defendant for his acts as set forth above:

> *"A. For causing the intentional death of each of the victims (reads out the names of the victims), life imprisonment (19 life imprisonment terms). B. For each of the counts of aiding in attempting to cause intentional death, life imprisonment (two life imprisonment terms). C. For the other offenses, a sentence set in years.*
>
> *In view of the case law of the Military Appellate Court and in view of the principle of sanctity of life, the Prosecution asks for the terms of life imprisonment that are related to the first attack be served concurrently, that the terms of life imprisonment that are related to the second attack be served concurrently and these two groups of sentences and the sentence set in years be served cumulatively to one another, so that in effect the Defendant is to serve a sentence of two terms of life imprisonment and a sentence set in years."*

[Stamp] P2: 134 [continued]

4

Date: 8 Shevat 5768                                          Case No.: 2305/04
       January 15, 2008

**C.**  **The pleas of the defense**

1.  The defense counsel focused most of its contentions on the minor part, in his view, that the
    Defendant had in carrying out the attacks. This part was, as set forth, the transfer of acetone
    for the purpose of preparing explosives to Ali Abu Halail. Ali Abu Halail transferred the
    acetone to another person by the name of Abed-Al Rahman Makdad, along with other
    substances for the purpose of preparing the explosive devices.

2.  The defense counsel also contended that in Case (Judea) 2306/04 **The Military Prosecutor
    v. Ali Abu Halail**, Abu Halail was convicted of aiding in the causation of death, although
    his acts and actions, as shown by the materials in evidence, were much more severe and
    graver than those of the Defendant. According to the defense counsel, the Defendant served
    as an accessory to Ali Abu Halail.

3.  In view of that which has been set forth, the defense counsel contended that it could not be
    that the accomplice Ali Abu Halail would be sentenced to concurrent life sentences that
    would mean a single sentence of life imprisonment, while the Defendant, who is younger
    than he is and has committed fewer acts, would be sentenced more harshly. In the view of
    the defense counsel, this does not reflect the principle of uniformity of sentencing.

4.  The defense counsel also contended that the Defendant was a minor at the time of the
    commission of the offenses, which must be taken into consideration.

5.  In addition, the defense counsel referred the Court to his pleas in the case (Judea) 2303/04
    **The Military Prosecutor v. Hilmi Hamash** in the case of another accomplice in the case.

6.  In his final statement, the Defendant said the following with great emotion:

[Stamp] P2: 135

5

*"I thank the Honorable Court for permitting me to speak. I was born to two parents who took great interest in their children's studies and I did what they wanted of me until I reached the age of 17. At this time there was a friend of mine and I made a mistake and I regret that I did it, but the part I did, I admit it, but what I did is part of what I carried out without thinking of the consequences, and I hope that it will be clear to everyone that when I reached a mature age, I thought about my actions and saw that the actions that I had performed were violent and bad actions against humanity, but that was in the past and I cannot change the past, and I intend to do something for restitution, to compensate for it and save people so they will not be like the way I was – a victim of a society that did not really know what the thoughts of the other society were. If you think that I pose a danger to the Area I can, if you agree to my leaving the Area altogether, although I do not prefer it because I want, insistently, to clarify to everyone that I did not want to do it and that I regret it, and to prove it while I am here. I ask the Court to save me from the company of the prison, that knows only of bloodshed and does not talk about peace or about existence, and where whoever talks about this is considered a traitor and is not good for humanity. That is something smaller than what I want to talk to you about, but I know that the wise man understands the whole matter. And I know that Your Honors are the wisest. Everything that I have said, with all due respect to you, do not think that I am talking about this because I am under the influence of the prison or the sentence. I really believe in it and I believe that there is justice. I am now under the influence of the mind, logic and science and I see that science is the correct way. I am studying at the Open University at your facility and I wish to continue my studies in psychology in Israel. Thank you very much."*

[Stamp] P2: 135 [continued]

Date:  8 Shevat 5768                                              Case No.: 2305/04
     January 15, 2008

**D.**   <u>**General guiding principles in sentencing the Defendant**</u>

7.   When sentencing the Defendant, we were aided, *inter alia*, by the Penal Code Bill (Amendment No. 92) (Incorporation of Judicial Discretion in Sentencing) 5766-2006, whose wording and principles appear to the Court to be a suitable template for correct, logical structuring of the sentencing principles.

8.   The wording and the principles are adopted, *mutatis mutandis*, on the account of the lack of a "default sentence", from the difference between the penal laws in the Israeli legal system and the law applying in the Area.

9.   As set forth, the guiding principle in sentencing is the existence of an adequate relationship between the sentence imposed for an offense that the Defendant has committed and the severity of the act of the offense and the guilt of the Defendant. Within the framework of the application of this principle, it has been said that the offenses that were committed are severe and murderous; the Defendant took a minor part in them but was well aware that he constituted an important link in a chain that ended in an indiscriminate massacre.

10.   The Court has considered the social value that was infringed upon as a result of the commission of the offenses, the degree of infringement thereof, the commonly practiced sentencing policy and the befitting sentencing policy and considered, for the purpose of its response, the severity of the acts of the offenses that the Defendant committed and his degree of culpability and the mitigating and aggravating circumstances that are related to the commission of the offenses.

11.   The references indicate a level of sentencing by which a Court, in similar offenses, must hand down terms of imprisonment ranging from decades of imprisonment to cumulative life terms of imprisonment, in accordance with the nuances of the mitigating or aggravating circumstances in each case.

[Stamp] P2: 136

12.  The Court is allowed to deviate from the guiding principle and to sentence more strictly to protect public safety if it has found, *inter alia*, in view of the circumstances of the offense or the susceptibility of the Defendant, that the Defendant is a danger to the public. In order to implement this consideration for sentencing, the Court has taken into account that the Defendant has no criminal record, and has considered his statements of the degree of influence of others upon him, as he was of a young age at the time of committing the offenses when his reasoning was flawed. The Defendant's words in his last address made an honest, credible impression upon us, which in view of their content, reduces his proneness to carry out additional offenses after serving his sentences.

In handing down the sentence, we have considered all of the necessary circumstances.

For this purpose, we have considered all of the relevant factors and have chosen to arrange the considerations according to the following groups of considerations, as worded in the Penal Code Bill (Amendment No. 92) (Incorporation of Judicial Discretion in Sentencing) 5766-2006:

o  **The mitigating circumstances that are related to the commission of the offense.**

o  **The aggravating circumstances that are related to the commission of the offense.**

o  **The mitigating circumstances that are unrelated to the commission of the offense.**

o  **The aggravating circumstances that are unrelated to the commission of the offense.**

[Stamp] P2: 136 [continued]

8

Date:  8 Shevat 5768                                          Case No.: 2305/04
        January 15, 2008

**E.**     **The mitigating circumstances that are related to the commission of the offense:**

1.     The Court has found, based on the evidence in the case, that the Defendant was subject to the influence and authority of Ali Abu Halail and he committed the act of the offense under the inspiration and at the behest of Abu Halail.

2.     The Court has examined the relationships between the various accomplices as indicated by the evidence. This examination raised facts that clearly constitute mitigating circumstances. It turns out that the Defendant did nothing alone but acted under explicit directions and demands from Ali Abu Halail, who was his elder.

3.     The acts of the Defendant show recklessness and indifference to consequences that are characteristic of his age. The Defendant demonstrated a consistent line of obedience in the wake of all of the requests of Ali Abu Halail and showed salient childish tendencies in his behavior.

4.     Several perpetrators participated in the commission of the offense, and the Defendant's part in its commission was smaller than the parts of the others. For fulfilling this sentencing consideration, the Court has examined the Defendant's part in each of the offenses, and found that he had taken a part in each of them while knowing of the deadly outcomes, but with lack of initiative and lack of caring with respect to the possibility that the outcomes would materialize.

5.     The Defendant's part in obtaining acetone did not bear any particular characteristic of a perpetrator or planner, and in effect could have been performed by other people. It can be determined, according to the evidence before us, that the Defendant's part was significantly smaller than the part of Ali Abu Halail.

6.     Ali Abu Halail demonstrated great initiative and used the Defendant as a pawn in order to diffuse and blur the purchase of the raw materials that he was using for preparing large quantities of improvised explosives.

7.     We have given our opinion on the question of the extent of the Defendant's true knowledge (as opposed to retrospective speculations and agreements) with respect to the acts that were carried out using the materials that he purchased. On this matter, the Defendant elaborates in his statements and it turns out that the facts were not "put on the table" and Ali did not specify what results of the materials that he assisted in supplying would be.

[Stamp] P2: 137

9

**The principle of uniformity of sentencing**

8.  The work of deciding on the sentences of accomplices and accessories in the causation of death is difficult and complex; every soul that has been taken is a whole world unto itself and the murderer should have his world taken away for each soul that he has taken. This is equivalent to arithmetic of infinite numbers in which the Court is requested to decide which number is the greater infinity.

9.  In this context, we shall not be able to ignore the verdict of the Court on the matter of Ali Abu Halail who has been referred to above, for whom no appeal has been filed; there is no doubt that the acts of Abu Halail and the charges [against him] and are much more severe than the acts of the Defendant, who functioned as the proxy of Abu Halail, who was his elder and who initiated and directed his actions. In these circumstances, […]

[Stamp] P2: 137 [continued]

Date:  8 Shevat 5768                                                    Case No.: 2305/04
         January 15, 2008

[…] the sentence of the Defendant and the default sentence should be lesser than the
sentence of Ali Abu Halail.

**The words of the Defendant**

10.  It has not been ignored that the words of the Defendant have left an impression upon us.
     The Defendant expressed remorse, and most importantly a correct perspective of his acts
     and their consequences.

11.  The Defendant took full responsibility for his actions and stated that he has now grown up
     a bit and is no longer an adolescent and understands their severity, the stupidity and
     pointlessness of the actions of aiding Ali Abu Halail in advancing his deadly intention.

12.  The Defendant has resumed his studies in prison; his behavior before us is impeccable and
     it appears that he wishes to rehabilitate his life. His retrospective regret of having assisted
     in a massacre of people who did nothing sounds honest and true to us. In good Hebrew that
     he has learned in his prison and with the insights of a person who is more mature than his
     age, the Defendant explained to us his remorse and his responsibility for his terrible acts.
     All of these, along with his special situation compared to his partners and his young age at
     the time of committing the offense, have shifted the weight to his benefit to a certain
     extent.

F.  **The aggravating circumstances that are related to the commission of the offense**

1.  The Court has considered as an aggravating factor the fact that the offense was committed
    in a manner that posed a danger to many people. The responsibility for a large-scale
    massacre bears a clear impression of peril to the public at large.

2.  The Court has considered as an aggravating factor the fact that the that the offenses were
    committed in a series of acts that constitute a single case and included precise planning,
    even though the Defendant was not the one to do the planning.

3.  The Court has considered as an aggravating factor the enormous degree of harm inflicted
    upon people, nineteen cases of violent death and dozens of injuries, as a result of the
    assistance of the Defendant.

[Stamp] P2: 138

11

4.  The Court has taken into account that the motives of the offenses were clearly racist and their aim was to lead to the deaths of Jews or Israelis as such; the planned murder was indiscriminant and was aimed only at Jews or Israelis who would chance upon the site and place that the Defendants determined. As there is no room for doubt that the criterion that sentenced the victims to death was their Jewish nationality or membership in the Israeli public, the Court will consider this to be an aggravating factor.

G.  **The mitigating circumstances that are unrelated to the commission of the offense**:

1.  **The young age of the Defendant.**

The Court has considered as a mitigating factor the fact that the Defendant was seventeen years old at the time of the commission of the offenses; this is a particularly young age that justifies a reduced sentence.

[Stamp] P2: 138 [continued]

12

Date:  8 Shevat 5768                                                                    Case No.: 2305/04
        January 15, 2008

2.    **The Defendant's clean criminal history**

      The Court has considered as a mitigating factor the fact that the Defendant had no criminal
      record. Conversely, the weight of this consideration is significantly diminished considering
      the young age of the Defendant and the great severity of the offenses.

3.    **The cooperation of the Defendant with the law enforcement authorities and the
      assistance rendered to them during the investigation and the trial that were held
      concerning the offense, including concerning the matter of investigation of the
      circumstances of the offense and the participation of others therein.**

4.    For the purpose of implementing this consideration for sentencing, the Court has taken into
      account that the Defendant has admitted that which has been attributed to him and has
      spared the Court precious time. Needless to say, the Defendant has already admitted his
      acts to the police and the evidence was filed before us without objections insofar as the
      Defendant effectively focused the hearing on the questions of the disputed mental
      foundation.

      In the end, this behavior will be imputed as a mitigating circumstance for sentencing the
      Defendant.

H.    **The aggravating circumstances that are unrelated to the commission of the offense
      are the following**:

      **The need to deter potential offenders from carrying out an offense of the type that the
      Defendant committed, due to the nature or frequency of the offense.**

      The Court has considered as an aggravating factor that the offense and the characteristics of
      its commission are somewhat common and that a person extending this kind of aid in the
      commission of purchasing materials may consider his part to be minor and insignificant.

      Therefore, the Court has taken into account that the need for public deterrence is high,
      particularly when we are speaking of actions whose nature and criminal result is not so
      immediately repugnant and of high profile, in which case a person might think that
      "shopping" for an attack is a trivial affair and any person can do so. The Court shall show
      the public the degree of severity that these acts hold. The Court has considered this as an
      aggravating factor.

                                                                                    [Stamp] P2: 139

## I.    The aggregate of the findings:

Taking into account the mitigating and aggravating considerations that have been enumerated, I have suggested to sentence the Defendant as follows:

**(A)**  Thirty years' imprisonment to be served, which will start from the day of arrest of the Defendant.

**(B)**  Five years' suspended imprisonment, on the condition that within five years from the day of his release, the Defendant will not commit a violation of Regulations 85 and 58 of the Defense Regulations (Time of Emergency), 1945, or any other offense in a matter of possession of war materiel or of trading of war materiel or any other offense that is intended to harm human life.

[Stamp] P2: 139 [continued]

14

Date:  8 Shevat 5768                                                                                      Case No.: 2305/04
       January 15, 2008

**The Honorable Judge Yair Tirosh**:

It is very difficult to pronounce on the question of the sentencing that would be fitting in the circumstances of the case. The words of the Honorable Justice M. Alon (as his title was then), who described the complexity of the process of sentencing in Criminal Appeal 359 + 344/81, **State of Israel v. Shachar Segal** *et al.*, *PD* 35 (4), 313, at 322, apply well to our case:

> **"Measurement of the degree of sentencing is as difficult for a judge as parting the Red Sea. When he comes to consider whether to convict or acquit, he possesses principles and rules, details of statutes and tiny nuances of copious mountains of rules, which he applies in the particular case before him. This is not the case when he finishes this task and finds that the defendant must be convicted. Lawmakers have provided him with latitude in sentencing – particularly in the case of a prison sentence – that has a maximum rate but no minimum rate (besides exceptional cases); and the tradition of case law has established general rules concerning the character of the offense, the nature of the offender and public safety. All of these are available for inspection and discussion, but are very difficult to apply in practice, for by nature and essence, they do not serve to direct the view and the decree of the judge except in the most general manner. And if this reality of general, arbitrary guidance for the judge for sentencing is difficult for him, it is vital and essential for the task of sentencing: it comes to teach you that each individual case must be discussed on the merits of the offense and of the offender, and the rules in sentencing methods can be considered merely as a starting point."**

The difficulty that the Honorable Justice Alon discusses in his decision in the work of sentencing is particularly apparent in the case that is the object of this hearing, in view of the complexity of the questions that are being heard.

The Honorable Justice Chaim H. Cohen addressed the complex issue of the complexity of sentencing in his book "Hamishpat" (second amended and expanded edition, 5755-1996, [Hebrew]). The things that he wrote and that are relevant to our case emphasize the great importance of precise examination of each case on its merits when sentencing (page 715 of his book):

[Stamp] P2: 140

15

"The discretion that lawmakers confers upon the judge concerning the degree of sentencing also implies discretion concerning the purposes of sentencing. In practice, a judge consciously or unconsciously considers all of the possible goals and degrees in order to reach a just verdict. Sometimes one goal is equivalent in his mind to all others, and sometimes one degree is preferable to him over others, according to the merits of the defendant who stands before him and the nature and circumstances of his conduct. From here it has been said that our age is the age of individualization of sentencing – for each offender and his particular wrongdoings."

In Criminal Appeal 4379/02, John Doe v. State of Israel, Supreme Court Compendium 2006 (1), 649 (hereinafter: the "**John Doe Case**"), the Supreme Court discussed a list of questions of principle that arose in his case in a panel headed by President Barak (as his title was then). In that case, as written in the verdict of the Supreme Court, the appellant and his colleague conspired to murder the deceased, the father of the appellant. While the deceased was sleeping at the construction site at which he worked as a guard, the two accosted and stabbed him throughout his body with knives. After this act the appellant and his colleague fled from the site. Shortly thereafter, the two returned to the place of the incident to get his collaborator's that had been forgotten there. The colleague noticed that the deceased was still alive and therefore the two decided to complete the task. They therefore wrapped a television antenna cable around the neck of the deceased and garroted him.

[Stamp] P2: 140 [continued]

Date:  8 Shevat 5768                                      Case No.: 2305/04
       January 15, 2008

After the deceased continued to show signs of life, to ensure his death, the appellant and his collaborator pushed his head into a bucket of water and fled from the site in a stolen vehicle. The deceased died as a result of the stab wounds that had caused him to lose blood. At the time of the murder, the appellant was seventeen years and three months old.

In its verdict, the Court discussed a list of questions of principle relating to the sentencing of minors who had been convicted of offenses of causing intentional death. Despite the difference between the law applying in the Area and the law applying in Israel on the issue, a major part of the questions that the Court heard in that case applies to our case. To illustrate this, we shall briefly cite the statements of the Honorable Vice President (as his title was then) Heshin in his decision in this case:

> "The purpose of the instruction of Section 25(B) is self-evident: whoever has been convicted of an act that he committed when he was a minor is not to be burdened in the way that we burden adults. While it is presumed that the mind of a minor is still not mature, and this presumption may be dubious at times, the Court should have discretion as to the sentence that it will inflict upon him without equating it to sentences that have been prescribed from the outset in the law in a rigid manner. Thus, a minor offender will not be subjected to mandatory imprisonment sentences, a minimum sentence or a mandatory prison sentence. However, there is no connection to conferring upon the Court discretion and restriction of "life imprisonment" to twenty years; on the contrary. This is the case of a minor, a short time before his eighteenth birthday, who murdered his father in a vicious, terrible act. For what reason should the Court be limited, when sentencing that minor to prison – who in the meantime has become an adult – to a maximum sentence of twenty years? What purpose would this sentencing limit serve? And if we were not to limit the discretion of the Court, the sentence would be matched to the act and the circumstances of the matter and the Court would be able to hand down a sentence befitting this evil act. In summary: no for mandatory sentencing, yes for optional sentencing. That is the purpose of the law; and the meaning of Law, in our opinion, is that which corresponds with the purpose of the law."

The provisions of the Convention on the Rights of the Child (Convention Texts, 1038, Volume 31, pp. 269-295), which were ratified by Israel on August 4, 1991, and which took effect concerning Israel on November 2, 1991, apply to our case. Article 37 of this convention states, *inter alia*, the following words that relate directly to the question of whether there is room for sentencing to life imprisonment a person who has not yet reached the age of eighteen:

[Stamp] P2: 141

17

> "Neither capital punishment nor life imprisonment without possibility of release shall be imposed for offences committed by persons below eighteen years of age."

Prof. L. Sebba in his article, "Human rights and the sentencing system – did the 1990s yield two constitutional revolutions?", Legal Studies M (5756-1996) 183 believes that the power of pardoning, which allows for the limitation of the sentence of a prisoner sentenced to life imprisonment – does not satisfy the qualification prescribed in Article 37 (a) of the Convention, which deals with "life imprisonment without possibility of release". The point of this is that the power to grant pardons is an extraordinary power that is given to the absolute discretion of the pardoner and is not based on the idea of the right of the prisoner that forms the foundation of the Convention. Some support for this position can be seen in a footnote that was written by Justice Dorner in Criminal Appeal 3112/94, **Sufian Abu Hassan v. State of Israel**, *PD* 53 (1) 422, who adopted at certain points the opinion of Prof. Sebba concerning the pardoning power of the President in Israel.

[Stamp] P2: 141 [continued]

Date:  8 Shevat 5768                                              Case No.: 2305/04
       January 15, 2008

Although the Supreme Court in the John Doe Case dismissed the contentions on this matter and states that the Court has the authority to sentence a minor in Israel to life imprisonment, it is not possible to ignore the principles underlying the Convention on the Rights of the Child. These principles, which relate to the proper way to act when sentencing minors, should be noted by the Court when it applies itself to sentencing.

In the John Doe Case, the Supreme Court decided to sentence the defendant to twenty five years' imprisonment for the cruel murder of his father, primarily on the account of his being a minor at the time of the act. We must emphasize that as indicated by the verdict, the Supreme Court sentenced the defendant's accomplice in the commission of the offense, who was an adult, to life imprisonment, to be served.

The Court explained its decision within the following arguments, which apply to our case:

> **"The fitting sentence for the appellant**
>
> **The last contention of the appellant is that the Lower Court was excessively harsh to him and that his sentence should be comminuted, given his difficult personal circumstances. The appellant contends that the deceased, his father, abandoned his family, which was living in Gaza, emigrated to Israeli territory and there he raised a new family. The deceased's act of disowning his family left the family in great economic distress and instilled in the appellant a feeling of deep frustration. The appellant, who had to resort to supporting the family, hoped to gain assistance from the deceased by obtaining a permit to work and stay in Israel, but the deceased refused to help him and also threatened to hand him over to the authorities in Israel. In view of these difficult circumstances, the appellant formed a decision to cause the death of the deceased, and he contends that the District Court erred when it did not consider the suffering that he had experienced and that pushed him to the act. The appellant also contends that he regrets his acts, understands their severity, and that the District Court erred when it stated that the appellant had not expressed remorse for his actions. The appellant also asks us to consider that at the time of commission of the act, he was a minor and was hurt and confused by the behavior of his father, and did not understand the meaning of his actions. He also asks us to consider that he had confessed to the act, while sparing Court time and taking full responsibility for his actions.**

[Stamp] P2: 142

19

The probation review that was filed with us has shown us that the probation officer was convinced of the honesty of the words of the appellant concerning his regret for his evil acts, which acts were committed out of severe, chronic personal distress. The offense of murder is one of the most severe in the Israeli penal code, and patricide is one of the worst forms of murder. So severe is the offense of patricide that pursuant to Section 300 (A) (1) of the Penal Code, a mental foundation of "malicious" is sufficient for conviction and a mental foundation of premeditation is not required (see Section 90 A of the Penal Code for a definition of the term "malicious"). The appellant, as set forth, was convicted of the offense of murder pursuant to Section 300 (A) (2), an offense of premeditated murder. But instead of going into a verbose account of the severity of the offense of murder, we shall satisfy ourselves with a quote from Maimonides in Mishnah Torah: "Although there are other sins that are more serious than murder, they do not present as serious a danger to society as murder does. Even idol worship – and needless to say, incest or the violation of the Sabbath – are not considered as severe as murder. For these sins involve man's relationship with God, while murder also involves man's relationship with his fellow man. Whoever commits this sin is an utterly wicked person." (Maimonides, Hilchot Rotzeach U'Shmirat Nefesh, Chapter 4, Halacha 9). If this were not enough, [...]

[Stamp] P2: 142 [continued]

Date:  8 Shevat 5768                                                    Case No.: 2305/04
       January 15, 2008

> [...] the act of murder of the deceased was a cruel, atrocious act that was
> carried out with deliberate, calculated intent. The appellant and his
> collaborator did not satisfy themselves with driving a knife into the body of
> the deceased multiple times, but returned and intended to cause his death
> using various cruel methods until he did expire. We shall not be able to
> ignore the cruelty with which the murder was carried out nor the
> determination to kill that was woven into the acts of the appellant and his
> collaborator when examining the sentence that the District Court passed
> against the appellant. See and compare: Criminal Appeal, 6535/01 Dimitri
> Kozirov v. State of Israel, *PD* 57 (3) 562, 574-575.
>
> We therefore decide to uphold the sentence that the District Court handed
> down."

The arguments that were written by Vice President (as his title was then) Heshin, that seemingly
apply to our case as well, indicate difficulty in the sentencing task in the case of minors who are
convicted of the offense of causing intentional death.

In the end, there is no room, in my opinion, for sentencing the Defendant to life imprisonment.

This decision is based primarily on the age of the Defendant at the time of commission of the
offenses and the aggregate of the mitigating circumstances that were elaborated in the sentencing
pleas stage by the Defendant and his attorney.

I shall emphasize that in my opinion, despite the severity of the acts, significant weight should be
attributed to the young age of the Defendant at the time of committing the offenses and there is
no room for punishing him to the full extent of the law.

Therefore, I concur with the result that was given by the decision of my colleague the Honorable
Judge Dahan.

## The Honorable Judge Dalia Kaufman:

I have read with great attention the learned opinions of my fellow panel members. Despite
accepting their basic deliberations, I cannot agree with their application in the concrete case, for
which my arguments are as follows.

[Stamp] P2: 143

21

As the President of the Court, Lieutenant Colonel Tirosh, wrote in his opinion, the Supreme Court has ruled that the Court has discretion as to whether to sentence a minor to life imprisonment or not (see Criminal Appeal, 4379/02 – John Doe v. State of Israel. Supreme Court Compendium 2006 (1), 649, at 652).

> *"Lawmakers have asked to broaden the latitude of power concerning a minor: they had no intention to touch the instruction that prescribes the length of the sentence for murder. The offense of murder has remained in essence and this applies to the sentence handed down for it, and therefore, the possibility of handing down in the appropriate cases a sentence of true life sentence must continue to apply. However, the Court is conferred, as set forth, concerning a minor, with a greater range of options. That and no more…"*

The laws of the Area also confer the upon Court discretion as to whether or not to sentence a defendant who was a minor at the time of the commission of an offense to life imprisonment for the offense of causing intentional death.

It is now asked whether the Defendant, who was convicted for offenses that deal with aiding in the causation of intentional death while he was a minor, is fit for life imprisonment.

[Stamp] P2: 143 [continued]

22

Date:  8 Shevat 5768                                                          Case No.: 2305/04
         January 15, 2008

In my opinion, there are a number of facts that necessitate handing down a sentence of life imprisonment in this case.

Indeed, the part of the Defendant in the execution of the suicide attacks is small relative to that of other accomplices, as the Defendant was the one who purchased materials for preparing the explosive devices only and he did not deal with their preparation or any other part of carrying out the suicide attacks.

It is reasonable to assume that had the Defendant taken part in the first attack alone and had not assisted in the second attack that was carried out, there would have been room to consider making do with a sentence set in years only, in view of his age at the time of commission of the said offense. However, the Defendant, one month after committing the first offense and after having already seen the terrible results of his own actions and those of his collaborators, chose to involve himself again in similar acts, while being aware that this was intended to cause the deaths of great numbers of innocent people. The Defendant was aware and saw before him the results of the explosion of a suicide terrorist aboard a bus. It is important to emphasize that the period in which the offenses were committed by the Defendant was a period in which many particularly murderous suicide attacks were carried out, and it was obvious then to any 17-year-old what the consequences of actions of this type would be.

Not only that, but about a month after carrying out the second attack, which took a huge number of victims, the Defendant conspired with another person to make an explosive bag, weighing 12 kilogram by himself, in order for his collaborator to carry out a suicide attack using it. This attack was prevented only by the arrest of the Defendant. This act shows us that the Defendant had no understanding of the severity of his acts, but sought to increase his activity and take a more significant part in the preparation of a suicide attack. In view of this, the words of the Defendant in the Court assume a weight that differs from that which was presented by my fellow panel members.

In the case before us, in view of the great cruelty and the danger of suicide attacks, public interest requires us to sentence the Defendant to life imprisonment, for all of his acts. This sentence would serve to express the repulsion surrounding the willingness and the insistence of the Defendant to take part in the taking of human life on a massive scale.

[Stamp] P2: 144

23

## Conclusion

**The Defendant is to serve the following sentences:**

(A)  Thirty years' imprisonment to be served, starting from the day of arrest of the Defendant.

(B)  Five years' suspended imprisonment, on the condition that within five years from the day of his release, the Defendant will not commit a violation of Regulations 85 and 58 of the Defense Regulations (Time of Emergency), 1945, or any other offense in a matter of possession of war materiel or of trading of war materiel or any other offense that is intended to harm human life.

**Handed down this day, 8 Shevat 5768, January 15, 2008, in chambers.**

**The secretariat of the Court will distribute the arguments for sentencing to the parties.**

[Stamp]    Amir Dahan
Judge
[Signature]                               [Signature]
_____      _____      _____
**Judge**                         **President of the Court**               **Judge**

[Stamp] P2: 144 [continued]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

                    Plaintiffs,

          vs.                                    No. 04 Civ. 00397 (GBD) (RLE)

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                    Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the
      document received by Rina Ne'eman Hebrew Language Services, to the best of my
      knowledge and belief.  The document is designated as P2: 133-144.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew
      University of Jerusalem (Israel) and 30 years of translation experience.  I am fluent in
      Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and
      accurate translation of the Hebrew-language document bearing the bates number, P2:
      133-144.

                                                _____
                                                Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.


Sworn to me this
28th day of February, 2014


Notary Public


HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
ID # 2382704

<div dir="rtl">

תאריך: ח' בשבט תשס"ח      תיק מס': 2305/04
15 ינואר, 2008

## בית המשפט הצבאי יהודה

בפני כב' האב"ד: סא"ל יאיר תירוש
השופטת: רס"ן דליה קאופמן
השופט: רס"ן אמיר דהאן

התביעה הצבאית
(באמצעות סרן שגיב ליכטמן)

נגד

הנאשם: אחמד מוחמד אחמד סעד ת.ז 911744878 / שב"ס
(באמצעות ב"כ עו"ד אוסאמה עודה)

---

## נימוקי גזר דין

### כב' השופט אמיר א. דהאן:

### א. כתב האישום והכרעת הדין

הנאשם, יליד שנת 1987, מדוחה, הורשע בביצוע העבירות הבאות:

1. **סיוע לגרימת מוות בכוונה**- עבירה לפי סע' 51 לצו בדבר הוראות ביטחון (יהודה ושומרון) (מס' 378), התשל"ל – 1970 ולפי סעיף 14 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 225), תשכ"ח- 1968 **(19 עבירות)**.

2. **סיוע לניסיון גרימת מוות בכוונה**- עבירה לפי סע' 51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ל – 1970 ולפי סעיפים 14,19,20 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח- 1968 **(2 עבירות)**.

3. **קשירת קשר לגרימת מוות בכוונה**- עבירה לפי סע' 51 לצו בדבר הוראות ביטחון (יהודה ושומרון) (מס' 378), התשל"ל – 1970 ולפי סע' 21,22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח – 1968 **(עבירה אחת)**.

4. **קשירת קשר לייצור פצצה**- עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח – 1968 סעיף 53 (א)(3) לצו בדבר הוראות ביטחון (יהודה ושומרון) (מס' 378), התשל"ל – 1970 **(עבירה אחת)**.

5. **החזקת חומר נפיץ**- עבירה לפי סעיף 53 (א)(3) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ל – 1970 **(עבירה אחת)**.

העבירות המרכזיות בהן הורשע הנאשם נסובות סביב מעורבותו בביצועם של שני פיגועי התאבדות קטלניים בירושלים. הפיגוע הראשון התרחש ביום 29/1/04 בקו אוטובוס 19 והפיגוע השני ביום 22/2/04 בקו אוטובוס 14 בהם נרצחו 19 בני אדם.

</div>

תיק מס׳ : 2305/04                           תאריך : ח׳ בשבט תשס״ח
15 ינואר, 2008

| | |
|---|---|
| כמפורט בהכרעת הדין מעשי הנאשם היו בגדר סיוע לאחר (עלי אבו הלאיל, להלן : | 1 |
| "עלי") ברכישה של חומרי גלם לתכנת חומרי נפץ. אותם חומרי גלם, ביחד עם | 2 |
| חומרים נוספים שימשו להכנת תיקו נפץ אשר הוכנו על ידי אדם נוסף בשם מקדאד. | 3 |
| כמפורט בהכרעת הדין הנאשם לא עשה דבר לבדו אלא פעל בהנחיות מפורשות מאת | 4 |
| עלי המבוגר ממנו. כמו כן, מעשיו מאופיינים בקלות דעת ואדישות לתוצאות. | 5 |
| | 6 |

### ב. טיעוני התביעה

| | |
|---|---|
| 1. | התביעה טענה כי לנאשם היה חלק משמעותי בתהליך ייצור המטענים והבאת | 9 |
| | חומרי הגלם. לטענת התביעה מעשיו נעשו תוך צפיית התוצאות מהפעלתו של | 10 |
| | מטען התבלה. אשר על כן, יש להעניש בחומרה שתשקף את חומרת המעשים | 11 |
| | אותם ביצע. | 12 |
| | | 13 |
| 2. | התובע הדגיש את התוצאות הקשות של פיגועי ההתאבדות : רציחתם של 19 | 14 |
| | אנשים בטבח חסר אבחנה ופציעתם של עשרות. | 15 |
| | | 16 |
| 3. | התובע טען כי העונש ההולם בנסיבות המקרה הינו מאסר עולם אחד בגין כל | 17 |
| | עבירה של סיוע לגרימת מוות בכוונה. לעונש זה יש לצרף שני מאסרי עולם | 18 |
| | נוספים בגין כל עבירה של סיוע לניסיון לגרימת מוות וכן עונש קצוב בשנים בגין | 19 |
| | העבירות הנוספות. בכך הסתמך התובע על פסיקת ביהמ״ש לערעורים ועל עקרון | 20 |
| | קדושת החיים. נוכח פסיקת בית המשפט הצבאי לערעורים ראוי לדעת התביעה | 21 |
| | שחלק מהעונשים יחפפו זה לזה באופן מסוים שיבטא נכונה את חומרת | 22 |
| | המעשים ועקרון קדושת החיים. | 23 |
| | | 24 |
| 4. | התובע הפנה אותנו לתיקי השותפים תיק (יהודה) 2306/04 <u>התוב״צ נגד עלי אבו</u> | 25 |
| | <u>הלאיל</u> ולתיק (יהודה) 2303/04 <u>התוב״צ נגד חילמי המאש</u> וחזר על טיעוניו | 26 |
| | לעונש בתיקים אלה. התובע ציין כי אף אם חלקו של הנאשם קטן מזה של | 27 |
| | שותפיו ובמיוחד מחלקו של עלי אבו הלאיל אין בכך כדי ליצור מדרג ענישה | 28 |
| | אשר ימצה את עונשו של הנאשם בעונש קצוב בשנים על פי פסיקת בית המשפט | 29 |
| | הצבאי לערעורים. | 30 |
| | | 31 |
| 5. | ההבדל בין שותפות וסיוע ובין עצמת החלק שנטל הנאשם בעבירות לבין החלק | 32 |
| | של נאשמים אחרים בפרשה נטלו בעבירות אמור להתבטא לדעת התביעה | 33 |
| | בהצטברות חלק ממאסרי העולם זה לזה. | 34 |
| | | 35 |
| 6. | התובע סיים את דבריו בעתירתו לעונשים הבאים אשר ראוי לטעמו שיגזרו על | 36 |
| | הנאשם בגין המעשים שפורטו לעיל : | 37 |
| | | 38 |

| | |
|---|---|
| *"א. בגין גרימת מותו בכוונה של כל אחד מהההרוגים (מקריא את שמות* | 39 |
| *ההרוגים) מאסר עולם (19 מאסרי עולם). ב. בגין כל אחד מפרטי* | 40 |
| *אישום הסיוע לניסיון לגרימת מוות בכוונה מאסר עולם (2 מאסרי* | 41 |
| *עולם). ג.בגין שאר העבירות, עונש קצוב בשנים.* | 42 |
| | 43 |
| *נוכח פסיקת ביהמ״ש הצבאי לערעורים ולנוכח עקרון קדושת החיים* | 44 |
| *מבקשת התביעה כי עונשי מאסר העולם הנוגעים לפיגוע הראשון ירוצו* | 45 |
| *בחופף, עונשי מאסר העולם הנוגעים לפיגוע השני, ירוצו בחופף ושתי* | 46 |
| *קבוצות עונשים אלו והעונש הקצוב ירוצו במצטבר זה לזה כך שבפועל* | 47 |
| *ירצה הנאשם עונש של 2 מאסרי עולם ועונש קצוב בשנים."* | 48 |

תאריך: ח' בשבט תשס"ח    תיק מס': 2305/04
15 ינואר, 2008

## ג. טיעוני ההגנה

1.  הסנגור מיקד את עיקר טענותיו בחלק המינורי, לשיטתו, אותו מילא הנאשם
    בביצוע הפיגועים. חלק זה היה כאמור העברת אצטון לצורך הכנת חומר נפץ
    לידיו של עלי אבו הלאיל. עלי אבו הלאיל העביר את האצטון לאדם אחר בשם
    ע/א רחמאני מקדאד בצירוף עם חומרים אחרים לצורך הכנת הכנת המטעינים.

2.  עוד טען הסנגור כי בתיק (יהודה) 2306/04 **התוב"צ נגד עלי אבו הלאיל**
    הורשע אבו הלאיל בסיוע לגרימת מוות, על אף שמעשיו ופעילותו, כעולה
    מחומר הראיות, היו קשים וחמורים בהרבה משל הנאשם. לדברי הסנגור
    הנאשם שימש כמסייע לאותו עלי אבו הלאיל.

3.  לאור האמור הסנגור טען כי לא יתכן שהשותף עלי אבו הלאיל ייענש במאסרי
    עולם חופפים שפירושם מאסר עולם יחיד, ואילו הנאשם, הרך ממנו בשנים
    וחעני ממנו במעשיו, ייענש בעונש קשה ממנו. לשיטת הסנגור אין הדבר משקף את
    עקרון אחידות הענישה.

4.  עוד טען הסנגור כי הנאשם היה קטין בעת ביצוע העבירות ויש להתחשב בכך.

5.  כמו כן, הפנה הסנגור את בית המשפט לטיעוניו בתיק (יהודה) 2303/04
    **התובע הצבאי נ' חילמי המאש** בעניינו של שותף נוסף בפרשייה.

6.  הנאשם בדברו האחרון אמר בהתרגשות רבה את הדברים הבאים:

    *"אני מודה לכבוד בית המשפט בגלל שמסרתם לי את רשות הדיבור.*
    *נולדתי לשני הורים שהתענגיינו מאד בלימודי הילדים ואני עשיתי את*
    *מה שהם רצו ממני עד שהגעתי לגיל 72. בזמן הזה היה חבר שלי ועשיתי*
    *טעות ואני מתחרט על זה שעשיתי את זה אולם החלק שעשיתי, אני*
    *מודה בו אבל את מה שעשיתי זה חלק שביצעתי אותו בלי לחשוב על*
    *התוצאות ואני מקווה שיהיה ברור לכולם שאני בזמן שהגעתי לגיל בגרות*
    *חשבתי על מעשיי וראיתי שהמעשים שעשיתי אותם הם מעשים*
    *אלימים ולא טובים נגד האנושות אך זה היה בעבר ואני לא יכול לשנות*
    *את העבר ואני מתכוון לעשות דבר כמו גומלין, לגמול את זה ולהציל*
    *אנשים שלא יהיו כמו שאני הייתי קודם של החברה הלא יודעת באמת*
    *מה המחשבות של החברה השנייה. אם אתם חושבים שאני מהווה סכנה*
    *על האיזור אני יכול, אם אתה מסכימים על זה שאצא בכלל מהאזור*
    *למרות שאני לא מעניף את זה בגלל שאני רוצה בעקשנות, להבהיר*
    *לכולם שלא רציתי לעשות את זה ואני מתחרט על זה ולהוכיח את זה*
    *ובזמן שאני פה. אני מבקש מביהמ"ש שתצילו אותי מהחברה של בית*
    *הכלא שלא יודעת אלא שפיכות דמים ולא מדברים על השלום או על דו*
    *קיום ומי שמדבר על זה נחשב בוגד והוא לא טוב נגד האנושות. זה משהו*
    *קטן ממה שאני רוצה לדבר איתכם אולם אני יודע שהגנון מבין את כל*
    *העניין. ואני יודע שכבודם הכי נבונים. כל מה שאמרתי עם כל הכבוד*
    *לכם אל תחשבו שאני מדבר על זה כי אני תחת השפעה הכלא או העונש.*
    *אני באמת מאמין בזה ואני מאמין שיש צדק. אני עכשיו תחת השפעת*
    *השכל, ההיגיון והמדע ואני רואה שהמדע הוא הדרך הנכונה. אני לומד*
    *באוניברסיטה הפתוחה אצלכם ואני רוצה להמשיך את לימודי*
    *בפסיכולוגיה בישראל. תודה רבה."*

<div dir="rtl">

תאריך : ח' בשבט תשס"ח            תיק מס' : 2305/04
15 ינואר, 2008

**ד. עקרונות מנחים כלליים בגזירת דינו של הנאשם**

7. בעת גזירת דינו של הנאשם נעזרנו, בין היתר בהצעת חוק העונשין (תיקון מספר
92) (הבניית שיקול הדעת השיפוטי בענישה) התשס"ו- 2006 אשר נוסחה
ועקרונותיה נראים לבית המשפט כתבנית מתאימה לשם הבנייה נכונה ולוגית
של שיקולי ענישה.

8. הנוסח והעקרונות מאומצים בשינויים המתחייבים מהעדר "עונשי מוצא", מן
השוני בין דיני העונשין במשפט הישראלי לבין הדין החל באזור.

9. כאמור העיקרון המנחה בענישה הוא קיומו של יחס הולם בין העונש המוטל על
עבירה שנאשם ביצע לבין חומרת מעשה העבירה ואשמו של הנאשם. במסגרת
יישום עקרון זה נאמר כי העבירות אשר בוצעו הינן חמורות ורצחניות, הנאשם
לקח בהן חלק מינורי אך ידע היטב כי הוא מהווה חולייה חשובה בשרשרת
שסופה טבח חסר אבחנה.

10. בית המשפט התחשב בערך החברתי שנפגע כתוצאה מביצוע העבירות, במידת
הפגיעה בו, במדיניות הענישה הנהוגה ובמדיניות הענישה הראויה וכן התחשב,
לצורך הערכת חומרת מעשי העבירות שביצע הנאשם ומידת אשמו, בנסיבות
המקלות והמחמירות הקשורות בביצוע העבירה.

11. מן האסמכתאות עולה רמת ענישה אשר לפיה יש לפסוק בעבירות דומות מאסר
בפועל הנע בין עשרות שנות מאסר למאסרי עולם מצטברים והכול בהתאם
לדקויות של הנסיבות המקלות או המחמירות לפי העניין.

12. בית המשפט רשאי לחרוג מהעיקרון המנחה ולהחמיר בענישה, כדי להגן על
שלום הציבור, אם מצא, בין השאר, נוכח נסיבות העבירה או מועדותו של
הנאשם, כי הנאשם מסוכן לציבור. על מנת להגשים שיקול ענישה זה, הבא
ביחמ"ש בחשבון כי הנאשם הינו חסר עבר פלילי, וכן את דבריו על מידת
ההשפעה של אחריכם עליו, בחיותו רך בשנים בעת ביצוע העבירות אשר שיקול
דעתו פגום. דבריו של הנאשם בעת דבר האחרון עשו עלינו רושם כנה ומהימן,
דבר המפחית לאור תוכנם ממועדותו לבצע עבירות נוספות לאחר ריצוי עונשו.

בקביעת העונש התחשבנו בכל הנסיבות הצריכות לעניין.

לצורך כך התחשבנו בכל השיקולים הצריכים לעניין ובחרנו לסדר את השיקולים על
פי הקבוצות הבאות של השיקולים כפי שנוסחו בהצעת חוק העונשין (תיקון מספר
92) (הבניית שיקול הדעת השיפוטי בענישה) התשס"ו- 2006 :

   ○    **הנסיבות המקלות הקשורות בביצוע העבירה.**

   ○    **הנסיבות המחמירות הקשורות בביצוע העבירה.**

   ○    **הנסיבות המקלות שאינן קשורות בביצוע העבירה.**

   ○    **נסיבות המחמירות שאינן קשורות בביצוע העבירה.**

</div>

תיק מס׳ : 2305/04

תאריך : ח׳ בשבט תשס״ח
15 ינואר, 2008

### ה. הנסיבות המקילות הקשורות בביצוע העבירה:

1. בית המשפט מצא על יסוד חומר הראיות בתיק שהנאשם היה נתון להשפעתו ולמרותנו של עלי אבו הלאיל ומעשה העבירה בוצע על ידו בהשראתו ולבקשתו של אבו הלאיל.

2. בית המשפט בדק מה הם היו היחסים בין השותפים השונים כפי שעלתה מן הראיות. בדיקה זו העלתה עובדות אשר מהוות בבירור נסיבות מקילות. מסתבר כי הנאשם לא עשה דבר לבדו אלא בהנחיות ודרישות מפורשות מאת עלי אבו הלאיל המבוגר ממנו.

3. מעשי הנאשם מאופיינים בקלות דעת ואדישות לתוצאות האופייניים לגילו. הנאשם גיבש קו עקבי של ציות לכל מבוקשו של עלי אבו הלאיל וגילה קווים ילדותיים בולטים בהתנהגותו.

4. בביצוע העבירה השתתפו מבצעים אחדים, וחלקו של הנאשם בביצועה היה קטן מחלקם של האחרים. לשם הגשמת שיקול ענישה זה, בדק בית המשפט את חלקים של הנאשם בכל אחת מן העבירות, ומצא כי נטל בכל אחת מהן חלק בידיעו את תוצאתם הקטלנית, אך בחוסר יוזמה ובחוסר אכפתיות לגבי האפשרות שהתוצאות תתרחשנה.

5. חלקו של הנאשם בהשגת האציטון לא נשא חותם מיוחד של מבצע או מתכנן ולמעשה היה ניתן לבצע על ידי אנשים אחרים. ניתן לקבוע, על פי חומר הראיות שבפנינו כי חלקו של הנאשם היה קטן בשיעור ניכר מאד מחלקו של עלי אבו הלאיל.

6. עלי אבו הלאיל גילה יוזמה רבה והשתמש בנאשם ככלי בידיו וזאת על מנת לפזר ולטשטש את קניית חומרי הגלם המשמשים בידיו להכנת חומר נפץ מאולתר בכמות גדולה.

7. נתנו דעתנו לשאלה עד כמה ידיעתו האמיתית של הנאשם (להבדיל מהשערות והסכמות בדיעבד) לדבר המעשים שבוצעו בתומרים שרכש. בעניין זה מפרט הנאשם באמרותיו ומסתבר כי העובדות לא היו "מונחות על השולחן" ועלי לא פירט מה היו תוצאות החומרים שעזר באספקתם.

### עקרון אחידות הענישה

8. מלאכת ההכרעה בעניינת שותפים ומסייעים בגרימת מוות היא קשה ומורכבת, כל נפש היא שניטלה היא עולם מלא וראוי הרוצח כי ייטל ממנו את עולמו בגין כל נפש שנטל. שקול הדבר לאריתמטיקה של מספרים אינסופיים בה מתבקש בית המשפט להכריע איזה הוא האינסוף הגדול יותר.

9. במסגרת זו לא נוכל להתעלם מגזר דינו של בית המשפט בעניין עלי אבו הלאיל שאוזכר לעיל אשר בגינו לא הוגש כל ערעור, אין ספק כי מעשיו של אבו הלאיל ואישומיו חמורים בהרבה ממעשיו של הנאשם אשר תיפקד כשוליה של אבו הלאיל המבוגר ממנו היוזם והמכוון אותו. בנסיבות הללו יש

תאריך : ח׳ בשבט תשס״ח        תיק מס׳ : 2305/04
15 ינואר, 2008

לדרג את עונשו של הנאשם ועונש המוצא יהיה למטה מעונשו של עלי אבו
הלאיל .

### דברי הנאשם

10. לא נכחד כי דברי הנאשם הותירו בנו רושם. הנאשם הביע חרטה ובעיקר
פרספקטיבה נכונה של מעשיו ותוצאותיהם.

11. הנאשם נטל אחריות מלאה על מעשיו וציין כי כעת משבגר מעט ואינו נער עוד
הוא מבין את חומרתם, את סכלותם ואת חוסר טעמם של מעשי העזרה לעלי
אבו הלאיל בקידום כוונתו הקטלנית.

12. הנאשם חידש את לימודיו בכלא, התנהגותו בפנים ללא. דופי ונראה כי
משאלתו לשקם את חייו. צערו בדיעבד על שסייע לטבח אנשים שלא עשו
דבר נשמע לנו כנה ואמיתי. בעברית יפה שלמד בכלאו ובתובנות של אדם
הבוגר מכפי גילו הביאו לנו הנאשם את חרטתו ואת אחריותו למעשיו
האיומים. כל אלה יחד עם מצבו המיוחד מול שותפיו וגילו הצעיר בעת ביצוע
העבירה-היטו את הכף לזכותו מידת מה.

### ו. הנסיבות המחמירות הקשורות בביצוע העבירה

1. בית המשפט שקל לחומרא את העובדה כי העבירה בוצעה באופן היוצר סכנה
לרבים. אחריות לטבח המוני נשארה עמה חותם ברור של סכנה לרבים.

2. בית המשפט שקל לחומרא את העובדה כי העבירות בוצעה בסדרת מעשים
המחווים פרשה אחת וכללו תכנון מדוקדק הגם שלא הנאשם הוא שתכנן.

3. בית המשפט שקל לחומרא את היקף הפגיעה העצום באנשים, תשעה עשר
מקרים של מוות אלים ופצועים בעשרות- כל זאת- תולדת סיועו של הנאשם.

4. בית המשפט הביא בחשבון כי מניעי העבירות היו גזעניים מובהקים ומטרתן
להביא להרג של יהודים או ישראלים באשר הם יהודים או ישראלים, הרצח
המתוכנן- חסר אבחנה היה ולא יוחד אלא ליהודים או ישראלים אשר יזדמנו
למקום ולמומד אותו קבע הנאשם. משלא נותר מקום לספק כי
הקריטריון אשר היה אמור לדון את הקורבנות למות הוא הלאום היהודי או
הציבור הישראלי ישקול בית המשפט שיקול זה לחומרא.

### ז. הנסיבות המקילות שאינן קשורות בביצוע העבירה:

1. **גילו הצעיר של הנאשם.**
בית המשפט שקל לקולא את העובדה שהנאשם היה בן שבע עשרה בעת
ביצוע העבירות, גיל זה הינו גיל צעיר במיוחד ומצדיק הקלה בעונש.

תיק מס׳ : 2305/04

תאריך : ח׳ בשבט תשס״ח
15 ינואר, 2008

2. **העדר עבר פלילי של הנאשם.**
בית המשפט שקל לקולא את העובדה שלנאשם לא היה עבר פלילי, מנגד
משקלו של שיקול זה מופחת משמעותית בהתחשב עם גילו הצעיר של הנאשם
וחומרתן הקשה של העבירות.

3. **שיתוף פעולה של הנאשם עם רשויות אכיפת החוק וסיוע להן במהלך
החקירה והמשפט שהתנהלו בקשר לעבירה, לרבות לעניין חקירת נסיבות
העבירה והשתתפות אחרים בה.**

4. לשם הגשמת שיקול ענישה זה הביא בית המשפט בחשבון כי הנאשם הודה
במיוחס לו וחסך מזמנו היקר של בית המשפט. לא למותר לציין כי הנאשם
הודה כבר במשטרה במעשיו וחומר הראיות הוגש בפנינו ללא הסתייגות בכך
מיקד הנאשם למעשה את הדיון בשאלות היסוד הנפשי שהייתה שנויה
במחלוקת.
בסופו של יום ,תיזקף התנהגות זו כנסיבה לקולא בשעת גזירת עונשו של
הנאשם .

ח. **הנסיבות המחמירות שאינן קשורות בביצוע העבירה הן אלה:**

**הצורך בהרתעת עבריינים פוטנציאליים מפני ביצוע עבירה מסוג העבירה
שביצע הנאשם, בשל מהות העבירה או שכיחותה.**
בית המשפט שקל לחומרה כי העבירה ומאפייני ביצועה הינם שכיחים למדי
ויתכן כי המסייע בדרך כזו של סיוע בביצוע קניית חומרים עלול לחשוב בינו
לבינו כי חלקו פעוט ואינו חמור.

לפיכך הביא בית המשפט בחשבון כי הצורך בהרתעה ציבורית הינו גבוה
בפרט כאשר מדובר במעשים אשר מהותם ותוצאתם העבריינית אינה בוטה
מיידית או בולטת לעין ,עלול לחשוב כי ״עריכת הקניות״ לצורך הפיגוע
היא מעשה של מה בכך ,וכל אדם יכול לעשות כן . יבוא בית המשפט ויראה
לציבור את מידת החומרה הגלומה במעשים אלה .כל זאת שקל בית המשפט
כשיקול לחומרא.

ט.**העולה מן המקובץ :**

בשים לב לשיקולים לקולא ולחומרא אשר נמנו הצעתי לחברייי לגזור על הנאשם את
העונשים הבאים :

(א) שלושים שנות מאסר לריצוי בפועל אשר ימנו מיום מעצרו של הנאשם .
(ב) 5 שנות מאסר על תנאי והתנאי הוא שבמשך 5 שנים מיום שחרורו ממאסר
לא יעבור הנאשם עבירה על תקנות 85 ו- 58 לתקנות ההגנה (שעת חירום),
1945 או כל עבירה אחרת שעניינה החזקת אמצעי לחימה או סחר באמצעי
לחימה או כל עבירה אחרת שנועדה לפגוע בחיי אדם.

תיק מס׳: 2305/04

תאריך: ח׳ בשבט תשס״ח
15 ינואר, 2008

<u>כבוד השופט יאיר תירוש:</u>

קשה מאוד היא ההכרעה בשאלת העונשה הראויה בנסיבות המקרה. יפים לעניינו
דבריו של כבוד השופט מ׳ אלון (כתוארו אז) שתיאר את מורכבות החלקין של גזירת
הדין בע״פ 359+344/81 **מדינת ישראל נ׳ שחר סגל ואח׳** פ״ד לה(4), 313, עמוד 322:

> ״מדידת מידת העונש קשה היא לשופט כקריעת ים סוף. משבא הוא
> לשקול, אם להרשיע או לזכות, מצויים בידיו עקרונות וכללים, פרטי
> דינים ודקדוקי דקדוקים של תלי תלים של הלכות, שאותם הוא מיישם
> לעניין המסוים שלפניו. לא כן משהסיים מלאכה זו, ועלה בידו, שיש
> להרשיע את הנאשם. המחוקק מסר בידו מידת עונש- במיוחד
> כשמדובר בעונש מאסר- שיש לה שיעור למעלה ואין לה שיעור כל
> שהוא למטה (פרט למקרים יוצאים מן הכלל); ובמסורת הפסיקה
> נקבעו כללים כלליים בדבר אופייה של העבירה, טיבו של העבריין
> ושלומו של הציבור. כל אלה יפים הם לעיון ולדיון, אך קשים הם ביותר
> ליישמם להלכה ולמעשה, שהרי מעצם טיבם ומהותם אין בהם כדי
> לכוון את דעתו והכרעתו של השופט אלא בצורה כללית ביותר. ואם
> אמנם מציאות זו של הכוונה כללית וסתמית לשופט בהטלת העונש
> קשה היא לו, הרי חינוכה והכרחית היא לעצם מלאכת העונשה: באה
> היא ללמדך, שכל מקרה ומקרה צריך להיות נדון לגופה של העבירה
> ולגופו של העבריין, והכללים שבדרכי ענישה אינם אלא בבחינת
> נקודות מוצא בלבד.״

הקושי בו דן כבוד השופט אלון בהחלטתו במלאכת גזירת הדין בולט במיוחד
במקרה נשוא הדיון נוכח מורכבות השאלות העומדות לדיון.

כבוד השופט חיים זי׳ כהן התייחס לסוגיה המורכבת של מלאכת גזירת הדין בספרו
״המשפט״ (מהדורה שנייה מתוקנת ומורחבת, תשנ״ה- 1996). הדברים שנכתבו על
ידו ורלוונטיים לעניינו מדגישים את החשיבות הרבה בבחינה מדוקדקת של כל
מקרה לגופה בעת גזירת הדין (עמוד 715 לספרו):

> ״שיקול הדעת שמחוקק מעניק לשופט לעניין מידת העונש, אף שיקול
> דעת עניני מטרות העונשה במשמע. הלכה למעשה שופט שוקל במודע
> או בתת מודע את כל המטרות והמידות האפשריות, כדי שיגיע לגזר דין
> צודק. יש שמטרה אחת שקולה בעיניו כנגד יתרן ויש שמדידה אחת
> עדיפה בעיניו על אחרות- הכל לפי הנאשם העומד לפניו, טיב
> התנהגותו ונסיבותיה. מכאן אמרו, שהעידן שלנו הוא עידן
> האינדיבידואליזציה של העונשה- עבריין עברייני וחטאו שלו.״

בע״פ 4379/02 פלוני נ׳ מדינת ישראל תק-על 2006(1), 649 (להלן: עניין פלוני) דן בית
המשפט העליון בשורה של שאלות עקרוניות העולות בעניינו בהרכב בראשות הנשיא
ברק (כתוארו דאז). באותו מקרה הוא כפי שנכתב בפסק דינו של בית המשפט העליון
המערער וחברו קשרו קשר לרצוח את הממונה, אביו של המערער. השניים בשעה
שהממונה נם את שנתו באתר הבנייה שבו עבד כשומר, התנפלו עליו ודקרוהו בסכינים
בכל חלקי גופו. לאחר מעשה ברחו המערער וחברו מן המקום. זמן קצר לאחר מכן
חזרו השניים למקום האירוע כדי לקחת את משקפי חבר שנשכחו שם. החבר
הבחין כי הממונה עדיין בחיים ולפיכך החליטו השניים להשלים את המלאכה. כרכו
אפוא כבל של אנטנת טלוויזיה סביב צווארו של הממונה וחנקוהו.

P 2: 140

תאריך : ח' בשבט תשס"ח    תיק מסי : 2305/04
15 ינואר, 2008

1  לאחר שהמנוח המשיך להוראות סימני חיים, וכדי לגרום סופית למותו הטביעו
2  המערער וחברו את ראשו בדלי מים ונמלטו השניים מן המקום ברכב גנוב. המנוח
3  נפטר כתוצאה מן הדקירות שנדקר ואשר גרמו לו לאיבוד דם. במועד הרצח היה
4  המערער בן שבע-עשרה שנים ושלושה חודשים.

5
6  בפסק דינו של בית המשפט בשורה של שאלות עקרוניות המתייחסות לענישתם של
7  קטינים שהורשעו בעבירות של גרימת מוות בכוונה. על אף השוני בין הדין החל
8  באזור לבין הדין החל בישראל בסוגיה זו ניכר כי חלק מהשאלות שבהן דן בית המשפט
9  באותו מקרה יפה לעניינו. לשם המחשת הדברים נביא בקצרה את דברי כב' המשנה
10  לנשיא (כתוארו דאז) חשין בהחלטתו במקרה זה :

11
12  "תכליתה של הוראת סעיף 25(ב) גלויה על פניה : מי שהורשע בשל
13  מעשה שעשה לעת שהיה קטין, אין להכביד עליו כשם שמכבידים אנו
14  ידינו על בגירים. קטין, דעתו עדיין לא בָשְׁלָה - זו הנחת היסוד, הנחה
15  העשויה להיות מופקפקת לעיתים - ועל-כן ראוי שיהא לו לבית-
16  משפט שיקול דעת מה עונש יטיל עליו בלא שיהא קשור בעונשים
17  שנקבעו מלכתחילה בחוק באורח נוקשה. כך, לא יוטלו על העבריין
18  הקטין עונשי מאסר חובה, עונש מינימום או עונש מאסר עולם חובה.
19  ואולם אין ולא כלום בין פתיחת שיקול דעתו של בית המשפט לבין
20  הגבלתו של "מאסר עולם" לעשרים שנים ; נהפוך הוא. הנה הוא קטין,
21  מעט לפני יום הולדתו השמונה-עשרה, שרצח את אביו בעונש קשה
22  ונורא. מה טעם נאמר כי בגוזרו על אותו קטין - שביני לביני הפך בגיר
23  - עונש מאסר, יהא בית המשפט מוגבל בעונש מרבי של עשרים שנה ?
24  איזו תכלית תשרת הגבלת עונש זו ? ואילו אם לא נגביל את שיקול דעתו
25  של בית המשפט, יוותאם העונש למעשהו ולנסיבות העניין ובית המשפט
26  יהא בכוחו לתת לרשע רע כרישעתו. בקיצור: עונש חובה - לא; ועונש
27  רשות - כן. זו תכלית החוק, ופירושה של ההלכה הוא, לדעתנו, הקולע
28  לתכלית החוק."

29
30  יפים לעניינו אף הוראות האמנה בדבר זכויות הילד (כ"א 1038, כרך 31, בעמ' 295-
31  269) אשר אושררה על-ידי ישראל ביום 4.8.1991 וקיבלה תוקף ביחס לישראל ביום
32  2.11.1991. סעיף 37 לאמנה זו קובע, בין היתר, את הדברים הבאים המתייחסים
33  ישירות לשאלות האם יש מקום לגזור על מי שטרם מלאו לו שמונה עשרה שנה עונש
34  של מאסר עולם :

35
36  "...לא יוטל עונש מוות, אף לא מאסר עולם בלא אפשרות שחרור, עבור
37  עבירות שנעברו על-ידי אנשים שטרם מלאו להם שמונה-עשרה
38  שנים."

39
40  פרופי ל' סבה במאמרו "זכויות אדם ומערכת הענישה- האם שנות ה-90 הניבו שתי
41  מהפכות חוקתיות?", מחקרי משפט יג (תשנ"ז-1996) 183 סבור כי סמכות החנינה-
42  סמכות המאפשרת לקצוב עונשו של אסיר עולם - אין בה כדי לענות על הסייג הקבוע
43  בסעיף 37(א) לאמנה, ואשר עניינו "עונש מאסר עולם בלא אפשרות שחרור". טעם
44  הדבר : סמכות החנינה סמכות חריגה היא הנתונה לשיקול דעתו המוחלט של נותן
45  החנינה ואין היא מבוססת על רעיון זכות האסיר המוגן ביסודרה של האמנה. ניתן
46  לראות תמיכה מסוימת לעמדתו זו בעמדת אגב שנכתבה על ידי השופטת דורנר בע"פ
47  3112/94 סופיאן אבו חסן נ' מדינת ישראל, פ"ד נג (1) 422 שאימצה בנקודות
48  מסוימות את דעתו של פרופ' סבה לעניין סמכות החנינה של הנשיא בישראל.

49

P 2: 141

תאריך : ח' בשבט תשס"ח
15 ינואר, 2008

תיק מסי : 2305/04

אף שבית המשפט העליון בעניין פלוני דחה את הטענות בעניין זה וקובע כי
קיימת סמכות לבית המשפט לגזור עונש מאסר עולם על קטין בישראל לא ניתן
להתעלם מהעקרונות העומדים בבסיסה של האמנה לזכויות הילד. עקרונות
אלה המתייחסים לדרך הראויה בה יש לפעול בעת ענישתם של קטינים ראוי
שיעמדו בפני בית המשפט בעת ביצוע מלאכת גזירת הדין.

בעניין פלוני החליט בית המשפט העליון לגזור על הנאשם עשרים וחמש שנות
מאסר בגין רציחתו האכזרית של אביו וזאת בעיקר נוכח היותו קטין בעת
המעשה. נדמה כי כפי שעולה מגזר הדין גרסו בית המשפט העליון גזר על שותפו של
הנאשם לביצוע העבירה שהיה בגיר עונש של מאסר עולם לריצוי בפועל.

בית המשפט הסביר את החלטתו בנימוקים הבאים היפים לעניינו :

"העונש הראוי למערער

טענתו האחרונה של המערער היא, כי בית משפט קמא הכביד ידו עליו
וכי נכון וראוי להקל בעונשו ולו מפאת נסיבותיו האישיות הקשות.
לטענת המערער, נטש המנוח, אביו, את משפחתו המתגוררת בעזה,
היגר לשטח ישראל, ושם הקים לעצמו משפחה חדשה. התכחשות
המנוח למשפחתו הותירה את המשפחה במצוקה כלכלית קשה ויצרה
אצל המערער תחושת תסכול עמוקה. המערער, אשר נטל נטל פרנסת
המשפחה היה מוטל על שיכמו, קיווה להסתייע במנוח לשם קבלת
אישור עבודה ושהייה בישראל, ואולם המנוח סירב לעזור לו ואף איים
להסגירו לרשויות ישראל. על רקע נסיבות קשות אלה התגבשה החלטת
המערער להמית את המנוח, ולטענתו, שגה בית-המשפט המחוזי שעה
שלא התחשב בסבל שעבר עליו ואשר דחף אותו למעשה. עוד טען
המערער, כי חרטה אחזה בו על מעשיו, מבין הוא את חומרתם, ושגה
בית המשפט המחוזי משהיסבר כי המערער לא הביע חרטה על מעשיו.
עוד מבקש המערער כי נתחשב בכך שבשעת ביצוע המעשה היה קטין
פגוע ומבולבל מהתנהגות אביו, ולא הבין את משמעות מעשיו. כן
מבקש הוא כי נתחשב בכך שהודה במעשה, תוך חיסכון ניכר בזמן
שיפוטי ותוך לקיחת אחריות מלאה למעשיו.

תסקיר המבחן שהוגש לנו לימדנו כי קציונת המבחן השתכנעה מכנות
דברי המערער על-דבר חרטתו על מעשיו הרעים, מעשים שנעשו מתוך
מצוקה אישית קשה ומתמשכת. אלא שאין די בכך נוכח חומרת מעשיו
והתוצאה האיומה שגרם לה. עבירת הרצח הינה מן העבירות החמורות
שבספר העונשין הישראלי, ורצח אב הוא מן החמורות שבעבירות
הרצח. כה חמורה היא העבירה של רצח אב – patricide – עד כי להרשעה
בה לפי סעיף 300(א)(1) לחוק העונשין, די ביסוד נפשי של "במזיד"
ואין נדרש יסוד נפשי של כוונה תחילה (להגדרת המושב "מזיד" ראו
סעיף 90א לחוק העונשין). המערער, כזכור, הורשע בעבירת רצח לפי
סעיף 300(א)(2), עבירה של רצח בכוונה תחילה. אך למותר להרבות
בדברים על חומרתה של עבירת הרצח, ונסתפק עצמנו במקצת מדבריו
של הרמב"ם במישנה תורה: "אף על פי שיש עוונת חמורין משפיכות
דמים אין בהן בחן השחתת ישובו של עולם כשפיכות דמים, אפילו עבודה
זרה ואין צריך לומר עריות או חילול שבת אינם כשפיכות דמים, שאלו
העוונות הן מעבירות שבין אדם להקב"ה אבל שפיכות דמים מעבירות
שבינו לבין חבירו, וכל מי שיש בידו עוון זה הרי הוא רשע גמור"
(רמב"ם, הלכות רוצח ושמירת נפש, פ"ד, ח"י"ד). אם אין די בכך, הנה

תאריך: ח' בשבט תשס"ח
15 ינואר, 2008

תיק מס': 2305/04

מעשה הרצח של המנוח היה מעשה זוועה אכזרי שנעשה בכוונת מכוון
ובחישוב מחושב. המערער וחברו לא הסתפקו בנעיצות סכין בגופו של
המנוח, ושבו ופיקשו לגרום למותו בשיטות שונות ואכזריות עד כי נפח
את נשמתו. אותה אכזריות שבה בוצע הרצח; אותה נחישות להמית
שניכרת במעשיהם של המערער וחברו; לא נוכל להתעלם מהן בבואנו
לבחון את העונש שגזר בית-המשפט המחוזי על המערער. ראו והשווה:
ע"פ 6535/01 דמיטרי קוזירוב נ' מדינת ישראל, פ"ד נז (3) 562, -575
574.

אנו מחליטים אפוא להותיר על כנו את העונש שגזר בית-המשפט
המחוזי."

נראה כי הנימוקים שנרשמו על ידי המשנה לנשיא חשין (כתוארו דאז) היפים אף
לענייננו מצביעים על הקושי שבמלאכת גזירת הדין מקום בו מדובר בקטינים
המורשעים בעבירה של גרימת מוות בכוונה.

בסופו של דבר, אין מקום לדעתי לגזור על הנאשם עונש של מאסר עולם.

החלטה זו מתבססת בעיקרה על גילו של הנאשם בעת ביצוע העבירות ומכלול
הנסיבות לקולא שפורטו בשלב הטיעונים לעונש על ידי הנאשם ובא כוחו.

אדגיש כי לשיטתי על אף חומרת המעשים ראוי לייחס משקל משמעותי לגילו הצעיר
של הנאשם בעת ביצוע העבירות ואין מקום למצות עימו את מלוא חומרת הדין.

אשר על כן, אני מצטרף לתוצאה שניתנה בהחלטת חברי כב' השופט דהאן.

כבוד השופטת דליה קאופמן:

קראתי בתשומת לב רבה את חוות דעתם המלומדות של חבריי להרכב. אף
שקביעותיהם העקרוניות מקובלות עליי לחלוטין, אינני יכולה להסכים עם
יישומם במקרה הקונקרטי ולהלן נימוקיי.

כפי שכתב אב בית הדין, סא"ל תירוש בחוות דעתו, בית המשפט העליון
קבע שבידי בימ"ש שיקול הדעת אם לגזור על קטין עונש מאסר עולם אם לאו
(ראה ע"פ 4379/02 - פלוני נ' מדינת ישראל . תק-על 2006(1), 649, עמ' 652)

"המחוקק ביקש להרחיב את קשת הסמכויות לגבי קטין: לא היתה לו כל
כוונה לגנוע בהוראה הקובעת את מידת העונש עבור רצח. עבירת רצח נותרת
במהותה, והוא הדין בעונש לצדה, ולכן צריכה להוסיף ולהתקיים האפשרות
להטיל במקרים הראויים עונש מאסר עולם ממש. אולם בידי בית המשפט
מסור, כאמור, לגבי הקטין מרווח רחב יותר של אפשרויות. הא ותו לא...."

אף בדיני האזור מסור לבית המשפט שיקול דעת, אם לגזור על נאשם קטין
בעת ביצוע העבירה עונש מאסר עולם אם לאו בגין עבירת גרימת מוות
בכוונה.

כעת נשאלת השאלה, האם ראוי הנאשם, אשר הורשע בעבירות שעניינן סיוע
לגרימת מוות בכוונה בהיותו קטין, למאסר עולם.

תיק מס׳ 2305/04    תאריך: ח׳ בשבט תשס״ח
15 ינואר, 2008

לטעמי ישנן מספר עובדות המחייבות במקרה זה לגזור על הנאשם מאסר
עולם.

אכן חלקו של הנאשם בביצוע פיגועי ההתאבדות הינו קטן יחסית לשותפים
אחרים, שכן הנאשם היה זה שרכש חומרים לצורך הכנת המטענים בלבד
ולא עסק בהכנתם או בחלק אחר של הוצאת פיגועי ההתאבדות לפועל.

סביר להניח שאילו הנאשם היה נוטל חלק בפיגוע הראשון בלבד ולא מסייע
לפיגוע השני שבוצע היה מקום לשקול להסתפק בעונש קצוב בשנים, נוכח
גילו בעת ביצוע העבירה. ואולם, הנאשם, חודש לאחר ביצוע הפיגוע הראשון
ולאחר שכבר ראה את תוצאותיו הנוראיות של מעשיו ומעשי חבריו, בחר
לשתף את עצמו שוב במעשים דומים מתוך מודעות כי הדבר נעד לגרום
למותם של המונים חפים מפשע. הנאשם היה מודע וראה לנגד עיניו את
התוצאות של התפוצצות מחבל מתאבד בתוך אוטובוס. חשוב להדגיש כי
בתקופה שבו בוצעו העבירות ע״י הנאשם, הייתה תקופה רווית פיגועי
התאבדות רצחניים ביותר ואף לכל בן 17 באשר הוא היה ברור מהן
ההשלכות של מעשים מסוג זה.

לא זו בלבד, אלא שכחודש לאחר ביצוע הפיגוע שני, שגבה מספר עצום של
קרבנות, קשר הנאשם קשר עם אחר ליצור בעצמו תיק נפץ במשקל 12 ק״ג
כדי שתברנו יבצע באמצעותו פיגוע התאבדות. פיגוע זה נמנע אך בשל מעצרו
של הנאשם. מעשה זה, מלמדנו שהנאשם לא הבין כלל את חומרת מעשיו,
אלא חפץ להגביר פעילותו וליטול חלק משמעותי יותר ב בהכנת פיגוע
התאבדות. על רקע זה, אף דבריו של הנאשם בבית המשפט, מקבלים לטעמי
מימד חמור מזה שהוצג ע״י חבריו לחרבר.

במקרה שבפנינו, נוכח האכזריות הרבה והסכנה שבפיגועי התאבדות
האינטרנס הציבורי מחייב אותנו לגזור על הנאשם עונש מאסר עולם, בגין
מכלול מעשיו. עונש זה יש בו כדי להביע את שאת הנפש מכונותו ועיקשותו
של הנאשם ליטול חלק בקיפוח חיי אדם בצורה המונית.

## סוף דבר

הנאשם ירצה את העונשים הבאים:

(א) שלושים שנות מאסר לריצוי בפועל אשר ימנו מיום מעצרו של הנאשם.

(ב) 5 שנות מאסר על תנאי והתנאי הוא שבמשך 5 שנים מיום שחרורו ממאסר
לא יעבור הנאשם עבירה על תקנות 85 ו- 58 לתקנות ההגנה (שעת חירום)
1945 או כל עבירה אחרת שעניינה החזקת אמצעי לחימה או סחר באמצעי
לחימה או כל עבירה אחרת שנועדה לפגוע בחיי אדם.
ניתן היום, ח׳ שבט תשס״ח, 15 לינואר 2008 , בלשכה.
מזכירות ביהמ״ש תפיץ את נימוקי גזר הדין לצדדים.

שופטת                    אב״ד

P.2: 144