# EXHIBIT A.262



PLAINTIFF'S
EXHIBIT
262

Date: September 28, 2006                                          Case No.: 2270/04

## The Judea Military Court

**Before the Honorable Presiding Judge: Major Ronen Atzmon**
**Judge: Major Adrian Agasi**
**Judge: Major Menachem Lieberman**

**The Military Prosecution**
(Represented by Lieutenant Tomer Horovitz)

- v. -

**The Defendant: Ahmed Salah Ahmed Salah, Identity No. 901739656 / Israel Prison Service**
(Represented by Counsel, Adv. Osama Ouda)

**Stenographer: Sergeant Moran Weissman**

### Arguments for Sentence

On July 27, 2006, we sentenced the defendant, Ahmed Salah Ahmed Salah (hereinafter – the Defendant) and stated that the arguments for the sentence would be handed down later. Our arguments follow.

### The offenses of which the Defendant was convicted

The Defendant was convicted of the following offenses by us on July 27, 2006, based on his admission of the facts:

A.  **Making a bomb**, an offense under Regulation 53 (A) (3) of the Security Provisions Order. The manifestation of this offense was that during March 2002, the Defendant delivered to another military operative 4 kilograms of Um Al Abed explosives, with which four pipe bombs were made (first count).

B.  **Membership in an unlawful organization**, an offense under Regulation 85 (1) (A) and 84 (1) (A) of the Defense Regulations (Time of Emergency). The manifestation of this offense was that from 2004 or thereabouts until the Defendant's arrest on March 8, 2004, he was a member of the al-Aqsa Martyrs Brigades organization, which is an unlawful organization (second count).

[Stamp] **P 2: 168**

C.   **Shooting at a person**, an offense under Regulation 58 (A) of the Defense Regulations (Time of Emergency). The manifestation of this offense was that in early 2004 or thereabouts, the Defendant left with three other terrorists, being equipped with a Kalashnikov rifle and a hand grenade, in order to carry out a shooting attack against IDF forces in the military base of the DCO. The Defendant and his colleagues carried out the shooting against vehicles and thereafter the cell members fled to the home of the Defendant (third count).

-1-

[Stamp] **P 2: 168** [continued]

Date: September 28, 2006                                      Case No.: 2270/04

D.   Three counts of **attempting to cause intentional death**, an offense under Section 51 of the
     Security Provisions Order; and Sections 19 and 20 of the Rules of Liability for an Offense
     Order. The manifestation of this was as follows:

- In late 2003 or thereabouts, the Defendant suggested to another operative to go out with
  him to carry out a shooting attack against Israeli vehicles. The Defendant and his
  colleague found a suitable place for carrying out the attack in the area of the Talita
  Kumi School, and then the Defendant ordered the other operative to carry out the attack
  together with other terrorists who he had recruited. The mission that was entrusted to
  the Defendant was carried out, and when a military jeep passed by the planned attack
  site, it was shot at from an M-16 rifle. The jeep continued its journey and the attackers
  fled from the site. The Defendant himself did not take part in the attack, which was
  carried out according to his directions (fourth count)

- On January 29, 2004, the Defendant was an accomplice in the severe suicide attack that
  the terrorist Ali Ja'ara carried out on bus line no. 19 in Jerusalem, in which 11 Israelis
  were killed (fifth count). In that attack, more than fifty civilians were also injured to
  varying degrees, and the Defendant was convicted of attempting to cause intentional
  death (sixteenth count).

- On February 22, 2004, the Defendant was an accomplice in the severe suicide attack
  that the terrorist Mohamed Zaoul carried out on bus line no. 14 in Jerusalem, in which
  eight Israelis were killed (seventeenth count). In that attack, more than 50 civilians
  were also injured to varying degrees, and the Defendant was convicted of the attempt to
  cause their intentional deaths (twenty-fifth count).

E.   **Nineteen counts of causing intentional death,** an offense under Section 51 of the Security
     Provisions Order. The manifestation of this was as follows:

[Stamp] **P 2: 169**

- On January 29, 2004, or thereabouts, the Defendant met with the suicide terrorist Ali Ja'ara following the mediation of an additional operative, and examined the willingness of the terrorist to carry out a suicide attack. Thereafter the Defendant connected the suicide terrorist with another operative, who engaged in preparing explosive devices using chemicals such as hydrogen peroxide and acetone. The Defendant provided a bag of batteries and a switch to the terrorist who installed the explosive device, and additional parts that were required for installing the explosive belt, and also tried to purchase a video camera in order to film the suicide terrorist before the execution of the attack; but he failed in this task and the suicide terrorist went out on his way without first being filmed. The explosive device that was made for the purpose of carrying out the suicide attack weighed 12 kilograms, and it contained Um Al Abed explosives, which were fitted inside a bag.

Shortly before the planned time of the attack, the Defendant arrived with the suicide terrorist in order to take the explosive bag, and the terrorist who made the explosive device explained to the suicide terrorist how to activate the explosive device, with the aim of causing the deaths of Israeli civilians. Thereafter the Defendant and the suicide terrorist went out towards Bethlehem University, where the Defendant deactivated the explosive device in order to prepare it for action. The suicide terrorist was led by another operative to the Malha Mall in Jerusalem, where he boarded Egged bus no. 19, which was traveling towards Paris Square. At the corner of Arlozorov and Gaza Streets,

-2-

[Stamp] **P 2: 169** [continued]

Date: September 28, 2006                                   Case No.: 2270/04

the suicide terrorist activated the explosive device, which exploded aboard a bus filled with passengers.

In the suicide attack, **Avraham Balhasan of blessed memory** (fifth count), **Hannah Bonder of blessed memory** (sixth count), **Anat Barom** [Translator's note: as written] **of blessed memory** (seventh count), **Yechezkel Goldberg of blessed memory** (eighth count), **Vladi Tzadik Menbere of blessed memory** (ninth count), **Yuval Octavia Florescu of blessed memory** (tenth count), **Rosa Boneh of blessed memory** (eleventh count), **Dana Itach of blessed memory** (twelfth count), **Roman Hondiashvili of blessed memory** (thirteenth count), **Eli Zfira of blessed memory** (fourteenth count), and **Natalia Gamril of blessed memory** (fifteenth count) were killed.

- On February 22, 2004, or thereabouts, a plot was devised to carry out a suicide attack using the terrorist Mohamed Zaoul, who undertook to carry out the task. For the purpose of financing the suicide attack, the amount of approximately NIS 3,000 was transferred from Gaza to a bank in Bethlehem, part of which was used for purchasing a video and ordinary camera for filming and photographing the suicide terrorist before the activity – and some was transferred to the Defendant and to an additional operative in order to finance the purchase of materials for preparing the explosive bag for the suicide attack. The explosive bag was prepared by an additional operative, using hydrogen peroxide and acetone. The explosive device that was prepared for carrying out the suicide attack weighed 12 kilograms, and contained Um Al Abed explosives.

The Defendant was asked to see to the transport of the suicide terrorist to the attack site, and he performed the task using another operative whom he recruited for the task. In addition, the Defendant provided iron nails that were attached to the explosive bag, with the aim of increasing and worsening the injuries as a result of the explosion of the explosive device. In addition to this, the Defendant provided the attackers with a Kalashnikov rifle and a hand grenade so that the suicide terrorist could be filmed holding the war materiel before leaving to carry out the suicide attack.

[Stamp] **P 2: 170**

At the time set for the meeting, the Defendant arrived with another operative in Bethlehem, where he introduced his colleague to the suicide terrorist. The additional operative is the one who transported the suicide terrorist to Jerusalem via the village of Walaja, while at the same time the Defendant updated other operatives that the suicide attack had commenced. The suicide terrorist came to Malha Mall in Jerusalem, where he boarded an Egged bus that was headed toward Liberty Bell Park. When the bus stopped at one of the traffic lights, the suicide terrorist activated the explosive bag aboard a crowded bus.

In the suicide attack, **Yuval Ozana of blessed memory** (eighteenth count), **Rahamim Doga of blessed memory** (nineteenth count), **Yehuda Haim of blessed memory** (twentieth count), **Ilan Avisidris of blessed memory** (twenty-first count), **Benaya Yonatan Zuckerman of blessed memory** (twenty-second count), **Azulai Lior of blessed memory** (twenty-third count) and **Netanel Havshush of blessed memory** (twenty-fourth count) were killed.

-3-

[Stamp] **P 2: 170** [continued]

Date: September 28, 2006                                                          Case No.: 2270/04

## The pleas of the parties

The Military Prosecution asked to emphasize that the Defendant had been convicted based on his confession to the involvement in two severe attacks, which caused the deaths of 19 innocent civilians and the injury of dozens more. There was no need to describe at great length the severity of the acts, which resulted in the cold-blooded murder of innocent people. The Defendant did not express any remorse for his acts, and even when he stood before us, he still supported his criminal acts. Therefore, the Military Prosecution asked to sentence the Defendant to a term of life imprisonment for each of the victims who had been murdered in the two attacks, two additional terms of life imprisonment for the injuries that were caused in the vicious attacks and an appropriate sentence for the remaining offenses of which he was convicted.

The Defense Counsel preferred not to elaborate his position concerning the "appropriate sentence" for the Defendant and asked us to make do with what the Defendant would tell us.

The Defendant, in his final words, asked to justify his acts by declaring them a "natural response" to what had happened in Khan Younis before the attack; during the pursuit of and firing at a wanted fugitive, 18 Palestinians we killed, including innocent civilians and infants. According to him, he intended from the outset to attack only the pilot who bombed the Gaza area or the crewmen of the tank that launched a shell at the house in which there were children in the Gaza Strip. In the first attack he intended to attack four soldiers of a combat engineering force who were on the bus, and in the second attack intended to attack two soldiers who were on the bus. The aim of the Defendant was to kill only the soldiers, who he claimed to have been responsible for the murder in the Gaza Strip, but collaterally, innocent people were also killed, just like the case in the Gaza Strip.

## The considerations for the sentence

The acts of which the Defendant was convicted are terrible, and there is no need to discuss their severity at great length. The Defendant was a full and primary accomplice in dispatching two terrorists who carried out suicide attacks on buses in Israel. In the two vicious attacks, 19 people were killed and many dozens of others were injured to varying degrees.

[Stamp] **P 2: 171**

The principle of the sanctity of life is a universal value that every civilized person should respect. The taboo "thou shalt not murder" is laid down in religions, laws and customs of every decent society, and the prohibition of bloodshed is based on the need for "the camp" to be pure (including in wartime), and to expel the murdered from the camp. As a human being, the Defendant should also have honored the sacrosanct value of human life, but instead of this he preferred to participate himself in terrorist attacks that caused bloodshed and murder for the sake of murder. The blood of the 19 victims whose lives were taken by the Defendant and his colleagues without them having committed any wrongdoings calls us from the ground – and no punishment in the world that would be inflicted upon the Defendant for his acts could atone for the bloodshed, eliminate the pain of the loss of the dead or the suffering of the injured.

Ordinarily, sentencing has various purposes, wherein on the one hand it should deter others and protect society against the acts of the Defendant in the future; and on the other hand it is supposed to take into account the circumstances of the Defendant; and the need to rehabilitate him and return him in the end to a normal, constructive framework.

-4-

[Stamp] **P 2: 171** [continued]

Date: September 28, 2006                                    Case No.: 2270/04

Usually, the balance between the various purposes of sentencing is not straightforward or easy; however, in the case that is the object of this hearing, we have no need to ponder the issue – as the considerations that guide us concerning the offenses of which he was convicted are only retribution for the suffering that he inflicted, the need to deter others and the need to protect society from the continued acts of the Defendant – but to keep him behind bars permanently.

The Defendant is trying to present himself as one whose acts were committed in order to protect the Palestinian people against the acts of the Israelis who were killing his fellow countrymen, and he has tried to draw similarities between his criminal act and the actions of IDF soldiers pursuing terrorists like him.

It is clear that the Defendant makes no differentiation between intentional murder and inadvertent, mistaken killing. We have no intent of engaging in an ideological or political argument with the Defendant, who in our view is a lowly murderer who has lost all human image, and does not recognize any restrictions that apply to a civilized society. Concerning a murderer of this type, we find in our Scriptures that he must not be pardoned – even when he tries to escape from the wrath of the law and cling to the horns of the altar, he "is to be taken from my altar" in order to face his punishment.

The acts in which the Defendant was a partner are terrible and cruel, and truth be told, the reaches of sentencing are limited and we do not have a suitable punishment that befits the severity of the Defendant's acts. Cumulative life sentences may serve to express our revulsion at the scope and cruelty of the activity in which the Defendant was involved, but naturally, a man's lifetime is limited; therefore, the Defendant cannot actually serve more than one life sentence (even if cumulative life sentences have been handed down to him).

Despite our great revulsion at the Defendant and his acts, we act, of course, within the limitations of the rule of law; and we are bound by the decree of the Military Appellate Court whereby the "befitting punishment" for a murderer is cumulative life imprisonment for each person he has murdered, life imprisonment for multiple injuries that he has inflicted upon those he was unsuccessful in killing, and an additional cumulative sentence for all other offenses of which he has been convicted. In the case that is the object of the hearing, the Defendant's acts are, as mentioned, vicious and cruel, and therefore we have fully accepted the position of the Military Prosecution concerning the befitting sentence for the Defendant.

[Stamp] **P 2: 172**

## Conclusion:

Therefore, we have decided to sentence the Defendant as follows:

A.  For causing the intentional death of **Mr. Avraham Balhasan of blessed memory** – life imprisonment.

B.  For causing the intentional death of **Ms. Hannah Bonder of blessed memory** – life imprisonment.

C.  For causing the intentional death of **Ms. Anat Darom of blessed memory** – life imprisonment.

D.  For causing the intentional death of **Mr. Yechezkel Goldberg of blessed memory** – life imprisonment.

E.  For causing the intentional death of **Mr. Vladi Tzadik Menbere of blessed memory** – life imprisonment.

F.  For causing the intentional death of **Mr. Viorel Octavia Florescu of blessed memory** – life imprisonment.

G.  For causing the intentional death of **Ms. Rosa Boneh of blessed memory** – life imprisonment.

H.  For causing the intentional death of **Ms. Dana Itach of blessed memory** – life imprisonment.

I.  For causing the intentional death of **Mr. Roman Hondiashvili of blessed memory** – life imprisonment.

J.  For causing the intentional death of **Mr. Eli Zfira of blessed memory** – life imprisonment.

K.  For causing the intentional death of **Ms. Natalia Gamril of blessed memory** – life imprisonment.

L.  For causing the intentional death of **Ms. Yaffa Ben-Shimol of blessed memory** – life imprisonment.

-5-

[Stamp] **P 2: 172** [continued]

Date: September 28, 2006                                    Case No.: 2270/04

M.  For causing the intentional death of **Mr. Yuval Ozana of blessed memory** – life imprisonment.

N.  For causing the intentional death of **Mr. Rahamim Doga of blessed memory** – life imprisonment.

O.  For causing the intentional death of **Mr. Yehuda Haim of blessed memory** – life imprisonment.

P.  For causing the intentional death of **Mr. Ilan Avisidris of blessed memory** – life imprisonment.

Q.  For causing the intentional death of **Mr. Benaya Yonatan Zuckerman of blessed memory** – life imprisonment.

R.  For causing the intentional death of **Mr. Azulai Lior of blessed memory** – life imprisonment.

S.  For causing the intentional death of **Mr. Netanel Havshush of blessed memory** – life imprisonment.

T.  For injuring dozens of people in the attack on January 29, 2004.

U.  For injuring dozens of people in the attack on February 22, 2004.

V.  For all other counts of which the Defendant has been convicted – 10 years.

All sentences are to be served cumulatively.

**Right of appeal within 30 days of publication of the arguments is conferred.**

**The secretariat of the Court will forward a copy of the arguments for sentencing to the parties.**

**Handed down and announced this day, September 28, 2006, in chambers.**

| [Signature] | [Signature] | [Signature] |
|:---:|:---:|:---:|
| **Judge** | **Presiding Judge** | **Judge** |

-6-

[Stamp] **P 2: 173**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

               Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

               Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 2: 168-73.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P 2: 168-73.

Dated: February 26, 2014

                                                  Rina Ne'eman

ss.: New Jersey

On the 25 day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
25 day of February, 2014

Notary Public

NIMMY J NIMMITE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2016
ID # 2322701

תיק מס׳ : 2270/04

תאריך : 28/9/06

ב י ת  ה מ ש פ ט  ה צ ב א י  י ה ו ד ה

בפני כב׳ האב״ד: רס״ן רונן עצמון
השופט: רס״ן אדריאן אגסי
השופט: רס״ן מנחם ליברמן

התביעה הצבאית
(באמצעות סגן תומר הורוביץ׳)

נגד

הנאשם : אחמד צלאח אחמד צלאח ת.ז 901739656/ שב״ס
(באמצעות ב״כ עו״ד אוסאמה עודה)

רמ״שית: סמל מורן וייסמן

---

## <u>נימוקי גזר דין</u>

ביום 27/07/06 גזרנו את עונשו של הנאשם, אחמד צלאח אחמד צלאח (להלן-
הנאשם), וקבענו כי נימוקי גזר הדין יינתנו בהמשך. להלן נימוקינו.

## <u>העבירות בהן הורשע הנאשם</u>

הנאשם הורשע על ידינו ביום 27/07/06 על בסיס הודאתו בעובדות, בעבירות
הבאות :

א. **ייצור פצצה**, עבירה לפי תקנה 53(א)(3) לצו בדבר הוראות בטחון. הדבר בא
לכלל ביטוי בכך שבמהלך חודש מרץ 2002 מסר הנאשם לפעיל נוסף 4
קילוגרם חומר נפץ מסוג ״אום אלעבד״, שבאמצעותו יוצרו 4 מטעני ציונור
(פרט האישום הראשון).

ב. **חברות בהתאחדות בלתי מותרת**, עבירה לפי תקנה 85(1)(א) ו- 84 (1)(א)
לתקנות ההגנה (שעת חירום). הדבר בא לכלל ביטוי בכך שהחל בשנת 2004
או במועד הסמוך לכך ועד למעצרו של הנאשם ביום 08/03/04, הוא היה חבר
בארגון ״גדודי חללי אלאקצא״, שהוא התאחדות בלתי מותרת (פרט אישום
שני).

ג. **ירי לעבר אדם**, עבירה לפי תקנה 58(א) לתקנות ההגנה (שעת חירום). הדבר
בא לכלל ביטוי בכך שבתחילת שנת 2004 או בסמוך לכך יצא הנאשם ביחד
עם שלושה מחבלים נוספים, כשהם מצוידים ברובה קלצ׳ניקוב ורימון יד כדי
לבצע פיגוע ירי כנגד כוחות צה״ל בבסיס הצבאי של ה- DCO. את הירי ביצעו
הנאשם וחבריו כנגד כלי רכב, ולאחר מכן נמלטו חברי החוליה לביתו של
הנאשם (פרט האישום השלישי).

-1-

תיק מס׳: 2270/04                                      תאריך: 28/9/06

| | |
|---|---|
| ד. שלושה פרטים של **ניסיון לגרימת מוות בכוונה**, עבירה לפי סעיף 51 לצו בדבר הוראות בטחון)- וסעיפים 19 ו-20 לצו בדבר כללי האחריות לעבירה. הדבר בא לכלל ביטוי כך : | 1 2 3 |
| • בסוף שנת 2003 או בסמוך לכך, הציע הנאשם לפעיל נוסף לצאת עמו לפיגועים ירי לעבר כלי רכב ישראליים. הנאשם וחברו איתרו מקום מתאים לביצוע הפיגוע באזור בית הספר ״תליתא קומי״, ואז הורה הנאשם לפעיל הנוסף להוציא את הפיגוע אל הפועל ביחד עם מחבלים אחרים שגויסו על ידו. המשימה שהוטלה על ידו, נפתחה כנגדו אש מרובה אמ- 16. הגיף המשיך בנסיעה, והמפגעים נמלטו מהמקום. הנאשם עצמו לא נטל חלק בפיגוע, שבוצע על פי הנחיותיו (פרט האישום הרביעי) | 4 5 6 7 8 9 10 11 12 13 |
| • ביום 29/01/04 היה הנאשם שותף לפיגוע ההתאבדות הקשה שביצע המחבל עלי ג׳עארה בקו 19 בירושלים, ואשר בו נהרגו 11 ישראלים (פרט האישום החמישי). באותו פיגוע גם נפצעו יותר מחמישים אזרחים בדרגות פציעה שונות, שהנאשם הורשע בניסיון לגרימת מוות בכוונה (פרט האישום השישה עשר). | 14 15 16 17 18 19 |
| • ביום 22/02/04 היה הנאשם שותף לפיגוע ההתאבדות הקשה שביצע המחבל מוחמד זעול בקו 14 בירושלים, ואשר בו נהרגו 8 ישראלים (פרט האישום השבעה עשר). באותו פיגוע גם נפצעו יותר מ- 50 אזרחים בדרגות פציעה שונות, שהנאשם הורשע בניסיון לגרום למותם בכוונה (פרט האישום העשרים וחמישה). | 20 21 22 23 24 25 |
| ה. **19 פרטי אישום של גרימת מוות בכוונה**, עבירה לפי סעיף 51 לצו בדבר הוראות בטחון. הדבר בא לכלל ביטוי כך : | 26 27 28 |
| • ביום 29/01/04 או בסמוך לכך, נפגש הנאשם עם המחבל המתאבד עלי ג׳עארה בתיווכו של פעיל נוסף, ובדק את נכונות המחבל לבצע פיגוע התאבדות. לאחר מכן קישר הנאשם בין המחבל המתאבד ופעיל נוסף, שעסק בהכנת מטעני חבלה מחומרים כימיים כמו מי חמצן ואציטון. הנאשם סיפק למחבל שהתקין את מטעני החבלה תיק סוללות ומפסק - וכן חלקים נוספים שהיו דרושים להתקנת חגורת הנפץ. כמו כן ניסה הנאשם לרכוש מצלמת וידאו, על מנת לצלם את המחבל המתאבד קודם לביצוע הפיגוע: אולם הוא כשל במשימה - והמחבל המתאבד יצא לדרכו בלא שיצולם קודם לכן. המטען שיוצר לצורך ביצוע פיגוע ההתאבדות היה במשקל של 12 קילוגרם, והוא כלל חומר נפץ ״אום אלעבד״, שהותקן בתוך תיק. | 29 30 31 32 33 34 35 36 37 38 39 40 |
| סמוך למועד הפיגוע המתוכנן הגיע הנאשם ביחד עם המחבל המתאבד, כדי ליטול את תיק הנפץ – והמחבל שייצר את המטען, הסביר למחבל-המתאבד כיצד להפעיל את מטען החבלה, במטרה לגרום למותם של אזרחים ישראליים. לאחר מכן יצאו הנאשם והמחבל המתאבד לכיוון אוניברסיטת בית לחם, שם ניטרל הנאשם את מטען החבלה, כדי להכינו לפעולה. המחבל המתאבד הובל על ידי פעיל נוסף לכיוון מלחה בירושלים, שם עלה על אוטובוס אגד מס׳ 19, שנסע לכיוון כיכר פריז. בפינת הרחובות ארלוזורוב- עזה הפעיל | 41 42 43 44 45 46 47 48 49 |

-2-

תיק מס' : 2270/04                                                          תאריך : 28/9/06

המחבל המתאבד את תיק הנפץ, שהתפוצץ בתוך אוטובוס מלא                           1
בנוסעים.                                                                    2

בפיגוע ההתאבדות נהרגו **אברהם בלחסן** ז"ל (פרט אישום חמישי),                 3
**חנה בונדר** ז"ל (פרט אישום שישי), **ענת ברום** ז"ל (פרט אישום             4
שביעי), **יחזקאל גולדברג** ז"ל (פרט אישום שמיני), **ולדי צדיק מנגרה**       5
ז"ל (פרט אישום תשיעי), **יובל אקטיביה פלוברסקו** ז"ל (פרט אישום             6
עשירי), **רוזה בונה** ז"ל (פרט אישום אחד עשר), **דנה איטה** ז"ל (פרט        7
אישום שנים עשר), **רומן חונדיאשווילי** ז"ל (פרט אישום שלושה                 8
עשר), **אלי ציפורה** ז"ל (פרט אישום ארבעה עשר) **ונטליה גמריל** ז"ל         9
(פרט אישום חמישה עשר).                                                     10
                                                                           11
                                                                           12
שביום 22/02/04 או בסמוך לכך, נרקמה מזימה לבצע פיגוע התאבדות           •      13
באמצעות המחבל מוחמד זעול, שקיבל על עצמו לבצע את המשימה.                      14
לצורך מימון פיגוע ההתאבדות הועבר מעזה לבנק בבית לחם סכום                     15
של כ- 3,000 ₪, שחלקו שימש לצורך רכישת וידאו ומצלמה רגילה בה                  16
יצולם המחבל המתאבד לפני הפעילות. וחלקו הועבר לנאשם ולפעיל                    17
נוסף, כדי לממן רכישת חומרים לצורך הכנת תיק הנפץ לפיגוע                        18
ההתאבדות. הכנת תיק הנפץ נעשתה על ידי פעיל נוסף, על ידי שימוש                 19
במי חמצן ואציטון. המטען שיוצר לצורך פיגוע ההתאבדות היה במשקל                 20
12 קילוגרם, והוא כלל חומר נפץ "אום אלעבד".                                  21
                                                                           22
הנאשם התבקש לדאוג להובלת המחבל המתאבד למקום הפיגוע,                          23
והוא ביצע המטלה באמצעות פעיל נוסף שגייס למשימה. כמו כן,                      24
סיפק הנאשם מסמרי ברזל שהוצמדו לתיק הנפץ, במטרה להגביר                        25
ולהחמיר את הפגיעות בתוצאה מפיצוץ מטען הנפץ. בנוסף לכך העמיד                  26
הנאשם לרשות המפגעים רובה קלצ'ניקוב ורימון יד, על מנת שיהיה                   27
ניתן לצלם את המחבל המתאבד מחזיק באמל"ח, בטרם צאתו לפיגוע                     28
ההתאבדות.                                                                  29
                                                                           30
במועד הקבוע לפיגוע הגיע הנאשם יחד עם פעיל נוסף לבית לחם, שם                  31
הפגישו את חברו עם המחבל המתאבד. הפעיל הנוסף הוא שהסיע את                     32
המחבל המתאבד לירושלים דרך הכפר וולוגיה, כאשר במקביל מעדכן                    33
הנאשם פעילים נוספים בכך שפיגוע ההתאבדות יצא לדרכו. המחבל                     34
המתאבד הגיע לקניון מלחה בירושלים, שם עלה על אוטובוס אגד                      35
שנסע לכיוון גן הפעמון. כשעצר האוטובוס באחד הרמזורים, הפעיל                   36
המחבל המתאבד את תיק הנפץ, בתוך אוטובוס הומה אדם.                             37
                                                                           38
בפיגוע ההתאבדות נהרג **יובל אוזנה** ז"ל (פרט אישום שמונה עשר),              39
**רחמים דוגה** ז"ל (פרט אישום תשעה עשר), **יהודה חיים** ז"ל (פרט            40
אישום עשרים), **אילן אבישדריס** ז"ל (פרט אישום עשרים ואחד), **בניה**        41
**יונתן צוקרמן** ז"ל (פרט אישום עשרים ושניים), **אזולאי ליאור** ז"ל         42
(פרט אישום עשרים ושלוש) **ונתנאל חבשוש** ז"ל (פרט אישום עשרים               43
וארבע).                                                                    44
                                                                           45
                                                                           46
                                                                           47
                                                                           48
                                                                           49

-3-

תיק מס׳ : 2270/04

תאריך : 28/9/06

## טיעוני הצדדים

התביעה הצבאית ביקשה להדגיש כי הנאשם הורשע על סמך הודאתו במעורבות בשני פיגועים חמורים, שגרמו למותם של 19 אזרחים חפים מפשע- ולפציעתם של עשרות נוספים. לא היה צורך להכביר מילים על חומרת המעשים, שכתוצאה מהם נרצחו בדם קר חפים מפשע. הנאשם לא הביע כל חרטה על מעשיו - וגם כאשר ניצב בפנינו, עדיין תמך במעשיו הנפשעים. לפיכך, ביקשה התביעה הצבאית לגזור על הנאשם את העונש של מאסר עולם בגין כל אחד מהנרצחים שנקטלו בשני הפיגועים, שני מאסרי עולם מצטברים בגין הפציעות שנגרמו בשני הפיגועים הקשים - וכן עונש הולם בגין יתר העבירות בהן הורשע הנאשם.

הסנגור העדיף שלא לפרט את עמדתו לעניין "העונש ההולם", לו ראוי הנאשם, וביקש כי נסתפק במה שהנאשם יאמר בפנינו.

הנאשם בדברו האחרון ביקש להצדיק את מעשיו, בכך שהיו "תגובה טבעית" לאשר התרחש בחאן יונס סמוך לפיגוע – במהלך מרדף וירי על מבוקש נהרגו 18 פלשתינאים, וביניהם אזרחים תמימים ותינוקות חפים מפשע. לדבריו, מלכתחילה התכוון לפגוע רק בטייס אשר מפציץ באזור עזה או באנשי הטנק ששריר פגז לעבר בית בו היו ילדים ברצועת עזה. בפיגוע הראשון התכוון לפגוע בארבעה חיילים מכות הנדסה שהיו באוטובוס - ובפיגוע השני התכוון לפגוע בשני חיילים שנשעו באוטובוס. המטרה של הנאשם הייתה להרוג רק את החיילים, שלרשתו אחראיים לרצח ברצועת עזה, אולם אגב כך נהרגו גם אנשים חפים מפשע, בדיוק כפי שקורה ברצועת עזה.

## השיקולים לעונש

המעשים בהם הורשע הנאשם נוראיים, ואין צורך להרחיב בדברים על חומרתם. הנאשם היה שותף מלא ועיקרי לשילוח שני מחבלים, שביצעו פיגועי התאבדות באוטובוסים בישראל. בשני הפיגועים הקשים נהרגו 19 אנשים, ועשרות רבות של נוספים נפגעו בדרגות שונות של פציעה.

עקרון קדושת החיים הוא ערך אוניברסאלי, שכל בן תרבות אמור לכבדו. האיסור של "לא תרצח" מעוגן בדתות ובמנהגים של כל חברה מתוקנת, ואיסור שפיכות דמים מושתת על כך שה"מחנה" אמור להיות טהור (גם בתקופת מלחמה), ואת הרוצח יש להקיא מקרב המחנה. כבן אנוש היה גם הנאשם אמור לכבד ערך מקודש זה של חיי אדם, אך במקום זאת הוא העדיף להשתתף בעצמו בפיגועי טרור שגרמו לשפיכות דמים ולרצח לשמו. דמם של 19 הנרצחים, שחייהם קופדו על ידי הנאשם וחבריו על לא עוול בכפם, זועק אלינו מן האדמה - ושום עונש בעולם שיוטל על הנאשם בגין מעשיו, אינו מהווה כפרה לשפיכות הדמים, לא יבטל את הכאב על אובדנם של המתים ולא את סבלם של פצועים.

ברגיל, לענישה יש, כידוע, מטרות שונות כאשר מחד היא חייבת להרתיע אחרים, ולהגן על החברה בפני מעולליה של הנאשם בעתיד - ומנגד היא אמורה לקחת בחשבון את הנסיבות האישיות של הנאשם - והצורך לשקמו ולהשיבו בסופו של יום למסגרת נורמטיבית ובונה.

-4-

P 2: 171

תיק מס׳: 2270/04

תאריך: 28/9/06

<div dir="rtl">

בדרך כלל, האיזון בין המטרות השונות של העונשה אינו פשוט וקל, אולם במקרה נשוא הדיון, פטורים אנו מהתלבטות בסוגיה- שכן השיקולים המנחים אותנו בעבירות שבהן הורשעו הם רק גמול על הסבל שגרם, הצורך להרתיע אחרים, והצורך להגן על הציבור מפני המשך מעלליו של הנאשם - ולהרחיקו לצמיתות מאחורי סורג ובריח.

הנאשם מנסה להציג את עצמו כמי שכל מעשיו נעשו כדי להגן על העם הפלסטיני בפני מעשיהם של הישראלים שהורגים את בני עמו, וניסה לשרטט קווי דמיון בין פעולתו הנפשעת לבין פעולתם של חיילי צה"ל הרודפים מחבלים כמוהו.

ברור כי הנאשם אינו מבחין בין רצח מכוון לבין הרג בשגגה. אין לנו כל כוונה להיכנס לוויכוח אידיאולוגי או פוליטי עם הנאשם, שלגרסתנו הוא רוצח שפל שאיבד כל צלם אנוש- ואינו מכיר בשום מגבלות של חברה בת תרבות. לגבי רוצח מסוג זה אנו מוצאים במקורות כי אסור לחוס עליו- וגם כאשר הוא נמלט מאימת הדין ונאחז בקרנות המזבח, "מעם מזבחי תיקחנו", כדי שישא בעונשו.

המעשים שלהם היה הנאשם שותף הם נוראיים ואכזריים, וניתנת האמת להיאמר כי גבולות העונשה מוגבלים, ואין בנמצא בידינו עונש מתאים ההולם את חומרת מעשיו של הנאשם. עונשי עולם מצטברים יכולים אמנם להביע את סלידתנו מהיקף ואכזריות הפעילות בה היה הנאשם מעורב, אולם מטבע הדברים ימיו של האדם קצובים; ולכן בפועל אין הנאשם יכול לרצות יותר ממאסר עולם אחד (גם אם הוטלו עליו עונשי מאסר עולם מצטברים).

למרות הסלידה הקשה מהנאשם וממעשיו, מובן שאנו פועלים במגבלות שלטון החוק; וחזקה עלינו מצוותו של ברומש הצבאי לערערים כי " העונש ההולם" לרוצח הוא מאסר עולם מצטבר בגין כל אדם שרצח, וכן עונש נוסף מצטבר בגין יתר העבירות שבהן הורשע. במקרה נשוא הדיון מעשיו של הנאשם הם כאמור חמורים ואכזריים, ולכן קיבלנו באופן מלא את עמדת התביעה הצבאית בעניין העונש הראוי לגזור על הנאשם.

## <u>סוף דבר:</u>

אשר על כן החלטנו לגזור על הנאשם את העונשים הבאים:

א. בגין גרימת מותו בכוונה של **מר אברהם בלחסן ז"ל** - מאסר עולם.

ב. בגין גרימת מותו בכוונה של **גב׳ חנה בונדר ז"ל** - מאסר עולם.

ג. בגין גרימת מותו בכוונה של **גב׳ ענת דרום ז"ל** - מאסר עולם.

ד. בגין גרימת מותו בכוונה של **מר יחזקאל גולדברג ז"ל** - מאסר עולם.

ה. בגין גרימת מותו בכוונה של **מר ולדי צדיק מנברה ז"ל** - מאסר עולם.

ו. בגין גרימת מותו בכוונה של **מר ויורל אוקטביא פלורסקו ז"ל** - מאסר עולם.

ז. בגין גרימת מותו בכוונה של **גב׳ רוזה בונה ז"ל** - מאסר עולם.

ח. בגין גרימת מותו בכוונה של **גב׳ דנה איטח ז"ל** - מאסר עולם.

ט. בגין גרימת מותו בכוונה של **מר רומן חונדיאשווילי ז"ל** - מאסר עולם.

י. בגין גרימת מותו בכוונה של **מר אלי צפורה ז"ל** - מאסר עולם.

יא. בגין גרימת מותו בכוונה של **גב׳ נטליה גמריל ז"ל** - מאסר עולם.

יב. בגין גרימת מותו בכוונה של **גב׳ יפה בן שימול ז"ל** - מאסר עולם.

</div>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

P 2: 172

תיק מס' : 2270/04

תאריך : 28/9/06

1    יג. בגין גרימת מותו בכוונה של **מר יובל אוזנה ז"ל** - מאסר עולם.

2    יד. בגין גרימת מותו בכוונה של **מר רחמים דגה ז"ל** - מאסר עולם.

3    טו. בגין גרימת מותו בכוונה של **מר יהודה חיים ז"ל** - מאסר עולם.

4    טז. בגין גרימת מותו בכוונה של **מר אילן אביסדריס ז"ל** - מאסר עולם.

5    יז. בגין גרימת מותו בכוונה של **מר בניה יונתן צוקרמן ז"ל** - מאסר עולם.

6    יח. בגין גרימת מותו בכוונה של **מר אזולאי ליאור ז"ל** - מאסר עולם.

7    יט. בגין גרימת מותו בכוונה של **מר נתנאל חבשוש ז"ל** - מאסר עולם.

8    כ.   בגין פציעתם של עשרות אנשים בפיגוע מיום 29/01/04- מאסר עולם.

9    כא. בגין פציעתם של עשרות אנשים בפיגוע מיום 22/02/04- מאסר עולם.

10    כב. בגין יתר פרטי האישום בהם הורשע הנאשם- 10 שנים.

11

12                   כל העונשים ירוצו במצטבר.

13

14            זכות ערעור תוך 30 יום מפרסום הנימוקים.

15

16       מזכירות ביהמ"ש תעביר עותק מנימוקי גזר הדין לצדדים.

17

18               ניתן והודע היום, 28/9/06, בלשכה.

19

20

21

22       שופט             אב"ד              שופט

23

24

25

-6-