# EXHIBIT A.293



PLAINTIFF'S
EXHIBIT
293

**The Military Appellate Court**
**in the Judea and Samaria Area**

**Appeal 1811/08**
**Appeal 3685/08**

[Stamp] Authentic copy

| | | |
|---|---|---|
| **Before a panel** | Colonel Yitzhak Mina | – **President of the Court** |
| | Lieutenant Colonel Natanel Benishu | – **Judge** |
| | Lieutenant Colonel Zvi Lakah | – **Judge** |

**In the matter of:**

> **Ahmed Mohamed Ahmed Saad, Identity No. 911744878** – the Appellant (by Counsel Adv. Wissam Agabria)

                              - v. -                    [Stamp] Authentic copy

> **The Military Prosecution** – the Respondent (by Counsel Major Jenia Walinsky)

**and in the matter of:**

> **The Military Prosecution** – the Appellant (by Counsel Major Jenia Walinsky)

                              - v. -

> **Ahmed Mohamed Ahmed Saad, Identity No. 911744878** – the Respondent (by Counsel Adv. Wissam Agabria)

Appeal against the verdict of the Judea Military Court (before the panel headed by Honorable President of the Court Major Yair Tirosh and Honorable Judges Major Dalia Kaufman and Major Amir Dahan)

in Case No. 2305/04 dated September 19, 2006
(The appeals are dismissed)

Date of session: January 18, 2010, 3 Shevat 5770.

[Stamp] P2: 300

1

Appeal 1811 + 3682/08

## Verdict

**Judge Colonel Y. Mina:**

### The suicide attack on the bus that ran on line No. 19 in Jerusalem

On January 29, 2004, at about 8:45 a.m., a powerful explosion rocked the area of Arlozorov Street at the corner of Gaza Street, in Jerusalem; on the above mentioned bus, which was making its way towards Paris Square, an explosive belt was activated by a suicide terrorist who was aboard the bus, causing a powerful explosion that took the lives of 11 innocent passengers, who included: **Avraham Balahsan, Hanna Bonder, Anat Darom, Yechezkel Goldberg, Vladi Tzadik Manbara, Viorel Octavian Florescu, Rose Boneh, Dana Itah, Roman Homdiashvili, Eli Tzfira** and **Natalia Gamril**, of blessed memory. In addition, 50 other civilians were severely, moderately and slightly injured.

### Additional suicide attack, on a bus that ran on line no. 14 in Jerusalem

About a month thereafter, on February 22, 2004, at approximately 7:00 a.m., another similar attack occurred, which was carried out by a suicide terrorist on a public bus that made its way from the Denia neighborhood towards Liberty Bell Park; again, there was mass carnage of innocent civilians, eight in number, and another 50 people were severely to slightly injured. The victims were: **Yaffa Ben Shimon, Yuval Uzana, Rachamim Duga, Yehuda Chaim, Ilan Avisidris, Benia Yonatan Zuckerman, Lior Azulay** and **Natanel Habshush**, of blessed memory.

Thus, in two close events, 19 innocent victims, men and women, young and old, lost their lives while innocently traveling on a public vehicle, in the heart of the capital of Israel.

The Military Appellate Court has already ruled on more than one occasion that whoever is involved in the commission of terrible mass attacks is fit for but one sentence, which is not being allowed ever again to see daylight outside the walls of prison, on the account of being fit for permanent banishment from human society.

[Stamp] P2: 301

There is no need to go into a lengthy account of the severity of the outcomes of the above mentioned deadly attacks, the terrible loss, bereavement, pain and suffering that were afflicted, both on the victims and on their families, by an offhand act that was committed with unparalleled malice, cruelty and evil; countless plans, expectations, ambitions and dreams of totally innocent civilians whose only 'sin' was to belong to the people residing in Zion were interrupted and completely ruined. It is obvious that the lives of many of the victims were also severely damaged, if not completely ruined, in both the physical and mental aspect alike.

And we have here before us the Appellant, **Ahmed Mohamed Ahmed Sa'id - Ouda**, born in 1987, from Douha, who was convicted of aiding in these terrible attacks, after the Lower Court convicted him and sentenced him to 30 years' imprisonment to be served, and he is now requesting that we cancel the verdict or alternatively reduce his sentence.

On the other hand, the military prosecutor, Captain **Jenia Walinsky**, asks to lengthen the sentence of the Appellant by setting it at life imprisonment.

[Stamp] P2: 301 [continued]

Appeal 1811 + 3682/08

In order to examine the motions of the parties, we shall first inspect the offenses of which the Appellant was convicted:

A.    For the attacks on the above mentioned bus lines no. 14 and no. 19, the Appellant was convicted of 19 offenses of aiding in the causation of intentional death, one for each person whose life was lost.

The part of the Appellant in aiding in the commission of the attacks was as follows:

**In the context of the attack on line no. 19**: The Appellant turned to **Mohamed Dandis** and purchased from him 20 liters of the chemical acetone, with the clear knowledge that this chemical would be used for preparing an explosive device and for carrying out a suicide attack that would cause the deaths of innocent civilians. The Appellant transferred this substance to **Abu Halail** in order for him to use it for the purpose of carrying out the attack; thereafter, the substance reached the possession of another accomplice to the crime by the name of **Makdad** for the purpose of preparing the explosive bag that was supposed to detonate aboard the bus and cause the terrible killing and destruction that did indeed occur.

**In the context of the attack on line no. 14**: The Appellant transferred 40 liters of acetone, with clear knowledge as set forth above. It was actually found that this substance was indeed used for preparing the explosive bag by which use the deadly attack was carried out.

B.    Aiding in an attempt to cause intentional death (two offenses).

C.    Conspiring to cause intentional death (one offense).

D.    Conspiring to make a bomb (one offense).

E.    Possession of explosives (one offense).

[Stamp] P2: 302

4

In the Lower Court, the parties reached procedural arrangements in which the Appellant pleaded guilty to some of the counts of offenses that were attributed to him. Concerning counts 15-23 (attack on line no. 14) the appellant pled guilty to aiding the causation of death and concerning counts 3-14 (attack on line no. 19), the parties agreed concerning the correctness of the facts, but not on the mental foundation that was required for conviction of the offense of aiding in the causation of death, *inter alia*, in view of the contention that the Appellant did not know in advance the details of the attack on line no. 19, but only that the material that he had transferred was intended for carrying out an attack.

At the end of the hearings, Judge Amir Dahan established the verdict to which his colleagues Judge Dalia Kaufman and Judge Amir Tirosh agreed, and of which the Appellant was convicted as set forth above.

The military prosecution asked the Lower Court to sentence the Appellant to two terms of life imprisonment and a sentence set in years, while on the other hand the defense counsel asked to hand down a light sentence considering the fact that the Appellant was a minor (aged 17) at the time of the commission of the offenses and that his part in the actual commission of the offenses was minor, and the only thing that he did was the transfer of the acetone for the purpose of preparing the explosives.

[Stamp] P2: 302 [continued]

Appeal 1811 + 3682/08

The Lower Court considered the pleas of the parties for stiffer and lighter sentencing, including the remorse and the age of the Appellant, and sentenced him, by a majority, to 30 years' imprisonment to be served. Judge Kaufman did not concur with the majority opinion, and her opinion was that the Appellant should be sentenced to life imprisonment, emphasizing her revulsion at the willingness and insistence of the Appellant to take part in the mass taking of human lives.

In accordance with that which has been set forth, we have before us the appeal of the prosecution and the appeal of the defense, and we must decree between them. The learned defense counsel, Adv. **Wissam Agabria**, added contentions that had not been included in the statement of appeal. The contentions of the defense counsel contradict each other. On the one hand, he asks us to return the case to the first instance, while warranting that the extent of the attestation, if the case would be returned, would be limited to just two to three witnesses. The defense counsel is trying to explain that the confessions of and evidence against the Appellant do not make sense, and therefore the factual details must be re-examined, particularly the mental foundation. The defense counsel is trying to portray the image of the Appellant as an inexperienced youngster who was influenced and led astray by his elders to carry out his acts. On the other hand, the defense counsel informed us that he had no material criticism – for the work of the defense within the framework of the hearings in the Lower Court or the keeping of the transcript by that Court. He later states, *"I have not come to appeal the verdict; my first motion (returning of the case) was excessive but I considered it necessary to make sure that the truth would come out".*

Conversely, the military prosecution emphasized that the contentions and requests of the defense counsel were not raised at all in the statement of appeal or in its arguments, and in any case, the Appellant was represented in the lower instance and took a clear line of defense. Concerning the mental foundation, the military prosecution emphasizes that this is clarified in the statement of the Appellant dated March 22, 2004, page 7 line 20 (P/4), quoting:

> *"Q. Tell me what Ali Abu Halail told you before the first attack that occurred in Jerusalem.*
>
> *A. Ali Abu Halail told me that he wanted to give the gallon of hydrogen peroxide to his colleague whose name he did not tell me ......... and on the day on which I brought the first gallon of acetone to him that I bought from Mohamed Dandis, Ali took the two gallons and gave them to a colleague of his and Ali told me that it is better for it to be kept by his colleague and from that he was planning to prepare explosives for an explosive device.*

[Stamp] P2: 303

6

*Q. Did you know what exactly they were going to do with the explosives?*

*A. Of course I knew. I knew that they were going to take explosives and carry out an attack; I did not know exactly that it was going to be a suicide attack, this does not matter to me…………*

*Q. And if you had known that it was going to be a suicide attack, then what?*

*A. Then it is better, there is no difference and there is no problem at all.*

*Q. When you started this activity, did you know what you were going to do?*

*A. Yes, I knew and understood everything, there is no problem.*

*Q. Okay, what was behind the first attack in Jerusalem ………"*

[Stamp] P2: 303 [continued]

Appeal 1811 + 3682/08

By that confession, the Appellant states that he was <u>happy</u> over the outcomes of the first attack.

The military prosecutor also refers to the statement of **Abu Halail** dated March 29, 2004, whereby the Appellant had purchased 20 liters of acetone <u>for the purpose</u> of carrying out the suicide attack.

I have carefully inspected the evidence that was filed to the Lower Court and the verdict of the Lower Court; I have not found any flaw in that decision. The Lower Court thoroughly examined the evidence and reached the necessary conclusion. Thus, for example, concerning counts 3-14, the Lower Court is basing itself on the statements of the Appellant that are supported by the statements of **Ali Abu Halail**, all of which were filed with agreement with regard to their content.

As I have already stated above, the defense counsel did not assert that the verdict should be cancelled – relying on any significant legal argument; and once I found that the verdict is sufficiently substantiated, I shall recommend to my fellow judges to dismiss forthwith the appeal against the verdict, as it contains no substance.

**On the matter of the sentence:** The Lower Court reviewed the aggregate of the circumstances: the aggravating ones on the one hand and the ostensibly mitigating ones on the other, those that were related to the commission of the offenses and those that were unrelated; the conclusion of the Court, which was made by a majority of opinions, stated, as set forth, that the Appellant should be sentenced to a thirty-year prison sentence.

It is my opinion that the appeal of the defense concerning the severity of the sentence must be dismissed, and the appeal of the Prosecution against its lenience must be sustained, for the following arguments:

1.    **The minority of the Appellant**

It is known that a military court is competent to sentence a minor to life imprisonment. In this case, the fact that the Appellant was a minor at the time of his involvement in the preparations for carrying out the terrible killing of innocent civilians does not justify by itself any lenience for him; in addition, the Appellant expressed happiness after learning of the outcomes of the first attack, which indicates his malicious, criminal intentions and his absolute desire and enthusiasm for achieving the terrible results.

[Stamp] P2: 304

8

It cannot be imagined that in the face of such a grave mixture of actions and activities for achieving such a cruel, lowly goal of mass murder of innocent civilians, the Court is to demonstrate its 'consideration' for the Appellant and refrain from sentencing him to the only befitting punishment, which he deserves in every respect. Indeed, the Appellant was 17 years old, but at the same time he was well aware of his acts and acted with determination and indiscriminately out of an "ideology" of murder for its own sake.

The Appellant stated explicitly that once his criminal activity started, he knew and understood well where he was heading, and in his own words: "*Yes, I knew and understood everything, there is no problem*".

[Stamp] P2: 304 [continued]

Appeal 1811 + 3682/08

2. **The part of the Appellant in the execution of the attacks**

The part of the Appellant in the assistance for the attacks that led to the death of so many appears not to be a key part. The Appellant did not initiate the attack and did not enlist the suicide terrorists but 'only' transferred the explosives required for the act of committing the attacks; but inspection of the confession of the Appellant indicates a special level of severity. For example, the Appellant states in P/ 4 page 7 line 20: "*I knew that they were going to take explosives and carry out an attack; I did not know exactly that it was going to be a suicide attack, this does not matter to me*" and in answer to the question of whether he was aware that it was going to be a suicide attack, the Appellant responded "*Then it is better, there is no difference and there is no problem at all*". To this, the joy that the Appellant experienced after learning of the results of the attack, however terrible and awful they were, must be added.

Retrospective expression of remorse on the part of the Appellant impressed the Lower Court to some extent. However, this is not worthy – taking into account the aggregate of the circumstances – for weighty consideration that justifies inflicting a lesser sentence than life imprisonment.

3. **The results of the acts of the Appellant**

There is no doubt that the shocking results of the attack – the murder of 19 men and women and the injury of about 100 more people – are not a matter that the Court cannot take into account when passing sentence.

4. **The need for general deterrence**

I accept completely the position of the Lower Court – which can be expressed as follows: only strict, deterring – nay extreme – sentencing will constitute an unequivocal warning signal and deterrent that is required in order to prevent any potential offender of the type of the Appellant to classify himself as one who has merely 'gone shopping', as though his criminal part in the terrible results – the mass killing of innocent civilians – was petty and of no significant severity.

[Stamp] P2: 305

Finally, and if my opinion will be heard, I shall recommend to my fellow judges to dismiss the appeal of the defense, concerning both the verdict and the sentence, and to sustain the appeal of the prosecution against the severity of the sentence and sentence the Appellant to life imprisonment.

### Judge Lieutenant Colonel Z. Lakah

I concur with the conclusions of my colleague concerning the appeals of the defense against the verdict and the sentence. However, I do not share his view concerning the appeal of the prosecution, and if my opinion will be heard, the appeal of the prosecution against the sentence would also be dismissed.

The relevant facts have been elaborated in the opinion of my colleague, Judge Mina. In his opinion, these are particularly grave acts, and the minority of the Appellant cannot serve to justify abstention from handing down to the Appellant a sentence of life imprisonment.

In my opinion, as set forth, there is no room for intervening in the sentence of the Lower Court, and I shall argue why below.

[Stamp] P2: 305 [continued]

11

Appeal 1811 + 3682/08

Firstly, the acts of which the Appellant has been convicted were acts that are in the more distant circle of the commission of the offense. He is not the originator of the attack, and his part in its execution was minor. The Appellant did provide the raw materials for preparing the explosives, but did not prepare them by himself and was not related to the other parts of the planning or execution of the Attacks.

Secondly, the acts that the Appellant committed were committed while he was a minor. It has already been ruled that the degree of evil malice of a minor is not the same as the degree of evil malice of an adult (Criminal Appeal 1583/91, **State of Israel v. John Does**, Supreme Court Verdict 46 (5) 94, page 99). Despite this, it has been determined that a minor may be sentenced to life imprisonment in the appropriate cases (Criminal Appeal 1789/03, **John Does v. State of Israel**, Supreme Court Verdict 48(4) 420, Criminal Appeal 9937/01, **Horev v. State of Israel**, Supreme Court Verdict 58(6) 738). I do not believe that this case is one of those suitable cases. Usually, life imprisonment will be handed down to a minor if he were the primary perpetrator of the offense or a dominant party in its commission, and sometimes even then, a sentence set in years would be considered sufficient (Criminal Appeal 4279/02, **John Doe v. State of Israel** [Pador (unpublished) 06 (2) 238]).

In accordance with that which has been set forth, the part of the Appellant in the acts was that of an accessory rather than one who was in the inner circle of the perpetrators of the offense. In addition, the Lower Court was convinced of the honesty of his remorse and from this the Appellant had probably learned his lesson, and is today being rehabilitated during his term in prison. I do not believe that this impression of the Lower Court should be cancelled, particularly in the case of a minor (compare to Single Judge Appeal 1517/09, **The Military Prosecution v. Mahlouf**).

Indeed, the greater the extent of the severity of the acts, the lesser the tendency to consider the personal circumstances of the defendant will be. But in the case of a minor, his personal circumstances and the considerations of rehabilitation must also be considered, even in the case of committing the most severe offenses. As was ruled in Criminal Appeal 10715/05, **John Doe v. State of Israel** [Pador (unpublished) 07 (27) 592], page 4, according to Honorable Justice Procaccia:

[Stamp] P2: 306

12

*"Under the commonly practiced and proper sentencing policy, great weight is usually given to the minority of defendants, for two primary aspects: firstly, the young age of a defendant affects the degree of severity with which his acts are to be viewed. Even in the case of criminal liability, the young age of a defendant, before adulthood, may indicate a natural lack of personal maturity for sufficiently understanding the meaning and outcomes of the criminal act. This immaturity is given mitigating weight in the sentencing of minors. Secondly,* **the involvement of minors in criminal offenses, including the most severe ones, will always leave a sense of commitment of society to find any way to rehabilitate juvenile offenders and put them back on a normative, worthy life track. This commitment has a combined purpose: rehabilitation of the individual and opening before him a normative way of life, and ensuring for the general public a life of security and peace in a society that acts to reduce the dimensions of crime. If adult criminality leaves a possible and important gateway for rehabilitation, juvenile delinquency imposes on society a duty to do everything possible to maximize the chances of rehabilitation of a juvenile before it is too late. The duty of society to act to rehabilitate the juvenile offender and the need to maximize rehabilitation efforts are major considerations in the sentencing of a minor, for minor and grave offenses alike"** *(emphasis added – Z.L.)*

[Stamp] P2: 306 [continued]

13

Appeal 1811 + 3682/08

The considerations of rehabilitation of a minor have been given additional weight upon the commencement into the effect of the Youth Law (Trial, Punishment and Modes of Treatment) , 5731-1971, in the last year. Therefore, to my mind, in view of the Appellant being in the outer circle of the perpetrators of the offense, and because the assistance that he provided manifested in the transfer of materials from which they made explosives and not more than that, and in view of his remorse and understanding of the severity of his acts, I do not believe that there is room to hand down a stricter sentence to the Appellant. A sentence of 30 years' imprisonment, as handed down with a majority opinion in the first instance, is a befitting sentence in the circumstances of the case before us and therefore in my opinion the appeal of the prosecution must also be dismissed.

**Vice President Lieutenant Colonel N. Benishu**:

I concur with the opinions of my colleagues concerning the dismissal of the appeal of the defense against the verdict.

However, I have asked myself extensively about the desired penal outcome in the current case.

In conclusion, I share the opinion that in the circumstances of the current case, there is no room to intervene in the sentence of the Lower Court.

My colleagues faithfully explained the scope of the penal dilemma. To this it must be added that the Appellant dealt with the making of chemicals for preparing explosive devices, and in the deliberation of the Lower Court, made "*genuine laboratory infrastructures to start making sophisticated explosives in quantities*." (page 3 of the verdict). Moreover, even after the execution of the attacks described, he conspired with another person to make an explosive bag in order for another suicide attack to be carried out using it. This conspiracy remained at the conceptual level only because of the arrest of the Appellant.

But alongside that which has been set forth, despite the horrific, repulsive results of the attacks, we must remember that the part of the Appellant boiled down to the purchase of acetone and delivering it to another person who masterminded the commission of the attacks. Therefore, we have before us a classic accessory, who had no part at all in the origination, planning or execution of the attacks and whose knowledge concerning these acts remained at a general level. This circumstance constitutes, to my mind, an even more major circumstance than the minority of the Appellant, his remorse or hypothetical chances of rehabilitation after completing the service of decades of imprisonment.

[Stamp] P2: 307

14

In view of that which has been set forth, I also believe that there is room to dismiss the appeals of all parties.

Decided as set forth in the verdict of Vice President Lieutenant Colonel L. Benishu and Honorable Judge Lieutenant Colonel Z. Lakah against the dissenting opinion of Honorable Judge Colonel I. Mina.

[Stamp] Military Appellant Court/ Judea and Samaria Area

Handed down and announced this day, September 20, 2010, 12 Tishrei 5771, in the presence of the Appellant, Counsel and the Military Prosecutor.

[Stamp] Authentic copy

| (-) | (-) | (-) |
|-----|-----|-----|
| Judge | President of the Court | Judge |

Shift supervisor: AA+ HSS

[Stamp] P2: 307 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION, *et al.*,<br><br>                    Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 300-307.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 300-307.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina
Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is signed to this Declaration and acknowledged to me that he executed
the same in his capacity, and that by his signature on this Declaration, the individual executed the
Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

ע/ 1811/08
ע/ 3685/08

בית המשפט הצבאי לערעורים
באזור    יהודה    והשומרון

נאמן למקור

בפני הרכב:    אל"ם יצחק מינא    - אב"ד
סא"ל נתנאל בנישו    - שופט
סא"ל צבי לקח    - שופט

בעניין:

אחמד מוחמד אחמד סעד, ת"ז 911744878 - המערער (באמצעות ב"כ עו"ד ויסאם אגברייה)

נגד

התביעה הצבאית -המשיבה (באמצעות ב"כ סרן גיניה וולינסקי)

ובעניין:

התביעה הצבאית -המערערת (באמצעות ב"כ סרן גיניה וולינסקי)

נגד

אחמד מוחמד אחמד סעד, ת"ז 911744878 - המשיב (באמצעות ב"כ עו"ד ויסאם אגברייה)

ערעור על פסק דינו של ביהמ"ש הצבאי יהודה (בפני הרכב בראשות כב' האב"ד רס"ן יאיר
תירוש וכב' השופטים רס"ן דליה קאופמן ורס"ן אמיר דהאן)
בתיק מס' 2305/04 מיום 19.9.2006
(הערעורים נדחו)

תאריך הישיבה: 18 בינואר 2010, ג' בשבט התש"ע.

P 2: 300

ע/ 1811+3682/08

# פסק דין

<u>השופט אל"ם י' מינא:</u>

## <u>פיגוע התאבדות באוטובוס שפעל בקו מספר 19 בירושלים</u>

בתאריך 29.1.04 בשעה 8:45 בבוקר לערך, החריד פיצוץ עז את אזור רחוב ארלוזורוב, פינת רחוב
עזה, בירושלים; באוטובוס הנ"ל, שעשה את דרכו לכיוון "כיכר פריז" – הופעלה חגורת נפץ ע"י
מחבל - מתאבד שהיה באוטובוס, וניגרם פיצוץ רב עוצמה שקטל את חייהם של 11 נוסעים
תמימים מקרב הנוסעים: **אברהם בלחסן, חנה בונדר, ענת דרום, יחזקאל גולדברג, ולדי צדיק
מנברה, ויורל אוקטביה פלורסקו, רוזה בונה, דנה איטח, רומן חומדישווילי, אלי ציפורה ונטליה
גמריל,** ז"ל. כמו כן, נפצעו 50 אזרחים נוספים בארוח קשה, בינוני וקל.

## <u>פיגוע התאבדות נוסף, באוטובוס שפעל בקו מספר 14 בירושלים</u>

כחודש לאחר מכן, בתאריך 22.2.04, בשעה 7:00 בבוקר לערך – התרחש פיגוע נוסף, דומה, על ידי
מחבל מתאבד, באוטובוס ציבורי שעשה את דרכו משכונת "דניה" לכיוון "גן הפעמון"; שוב, נשפך
דם כמים של אזרחים תמימים, שמונה במספר, ונפצעו בארוח קשה עד קל עד 50 איש. ההרוגים
הם: **יפה בן שמעון, יובל אוזנה, רחמים דוגה, יהודה חיים, אילן אביסדריס, בניה יהונתן
צוקרמן, ליאור אזולאי ונתנאל חבוש** ז"ל.

כך, בשני אירועים סמוכים, קיפחו את חייהם 19 קורבנות תמימים, נשים וגברים, צעירים
ומבוגרים, בעת שנסעו לתומם ברכב ציבורי, בלב ליבה של בירת ישראל.

בביהמ"ש הצבאי לערעורים, כבר נקבע לא אחת, כי כל מי שמעורב בביצוע פיגועים המוניים
מחרידים - אחת דינו, ולא יתאפשר לו לעולם, לראות את אור היום מחוץ לחומות הכלא, שכן
ראוי הוא להרחקה לצמיתות מחברת בני אנוש.

אין צורך להכביר מילים על חומרת תוצאות הפיגועים הקטלניים הנ"ל, על האובדן, השכול, הכאב
והסבל הנוראים שינרגמו, הן לנפגעים והן למשפחותיהם; בחינך יד זדונית, אכזרית ונפשעת מעין
כמוה – ניקטעו ונחרסו כליל אין ספור תוכניות, ציפיות, שאיפות וחלומות של אזרחים חפים מכל
פשע, שכל 'חטאם' הוא עצם השתייכותם לעם היושב בציון. ברור שגם חייהם של רבים מבין
הנפצעים ניפגעו קשות, אם לא נחרסו כליל, מן ההיבט הפיזי ומן ההיבט הנפשי גם יחד.

והנה ניצב בפנינו המערער, **אחמד מוחמד אחמד סעיד- עודה**, יליד 1987 מדוחאט, שהורשע בסיוע
לפיגועים הנוראים הללו, לאחר שבית המשפט קמא, הרשיע אותו וגזר עליו 30 שנות מאסר בפועל,
ומבקש, עתה, כי נבטל את הכרעת הדין, ולחילופין - נקל בעונשו.

מנגד מבקשת התובעת הצבאית, סרן **ג'ניה וולינסקי**, להחמיר בעונשו של המערער, ולהעמידו על
מאסר עולם.

2

ע/ 1811+3682/08

על מנת לבחון את בקשותיהם של הצדדים מעיין תחילה בעבירות שבהן הורשע המערער:

א. בגין הפיגועים בקווי האוטובוסים 14 ו-19 הנ"ל, הורשע המערער ב- 19 עבירות של סיוע לגרימת מוות בכוונה, אחת כנגד כל מי שנקיפדו חייו.

חלקו של המערער בסיוע לביצוע הפיגועים היה כדלקמן:

**בהקשר לפיגוע בקו 19**: המערער פנה בשעתו אל **מוחמד דנדיס** ורכש ממנו 20 ליטרים של החומר הכימי 'אצטון' וזאת מתוך ידיעה ברורה שחומר זה ישמש להכנת מטען חבלה ולביצוע פיגוע התאבדותי' שיגרום לקטילת חייהם של אזרחים תמימים. המערער העביר חומר זה לאחר מכן הגיע החומר לידיו של **אבו הלאיל**, על מנת שזה ישתמש בו למטרת ביצוע הפיגוע; לאחר מכן הגיע החומר לידיו של שותף נוסף למעשה הפשע ושמו **מקדאד**, לצורך הכנת תיק הנפץ שהיה אמור להתפוצץ בתוך האוטובוס, ולגרום להרג ולחרס החנוראים כפי שאכן ארע.

**בהקשר לפיגוע בקו 14**: המערער העביר בשעתו 40 ליטרים של אצטון' וזאת בידיעה ברורה כמפורט לעיל. הוברר בפועל כי אכן חומר זה שימש להכנת תיק הנפץ שבאמצעותו בוצע הפיגוע הקטלני.

ב. סיוע לניסיון לגרימת מוות בכוונה (שתי עבירות).

ג. קשירת קשר לגרימת מוות בכוונה (עבירה אחת).

ד. קשירת קשר לייצור פצצה (עבירה אחת).

ה. החזקת חומר נפיץ (עבירה אחת).

בביהמ"ש קמא הגיעו הצדדים להסדרים דיוניים, כאשר לגבי חלק מהפרטים הודה המערער בעבירות המיוחסות לו. לגבי פרטים 23-15 (פיגוע בקו 14) הודה המערער בסיוע לגרימת מוות ולגבי פרטים 14-3 (פיגוע בקו 19) הסכימו הצדדים על נכונותם של העובדות, אך לא על היסוד הנפשי הדרוש לצורך הרשעה בעבירה של סיוע לגרימת מוות, וזאת בין היתר לאור הטענה כי המערער לא ידע מראש את פרטי הפיגוע בקו 19, אלא רק כי החומר שהוא העביר מיועד לצורך ביצוע פיגוע.

בתום הדיונים, קבע השופט אמיר דהאן את הכרעת הדין, אליה הצטרפו חבריו השופטים דליה קואופמן ויאיר תירוש, ועל פיה הורשע המערער כמפורט לעיל.

התביעה הצבאית ביקשה מביהמ"ש קמא לגזור על המערער שני עונשי מאסר עולם ועונש קצוב בשנים, ומנגד ביקש הסנגור להקל בעונשו בהתחשב בעובדה שהמערער היה קטין (בן 17) בעת ביצוע העבירות, וכי חלקו בביצוע הפיגועים בפועל, היה מינורי, וכל אשר עשה היה היה העברת ה'אצטון' לצורך הכנת חומר הנפץ.

3

עו/ 1811+3682/08

ביהמ"ש קמא שקל את טיעוני הצדדים לקולא ולחומרה, לרבות את חרטתו של המערער ואת גילו,
וגזר עליו, ברוב דעות, 30 שנות מאסר עונש לריצוי בפועל. השופטת קאופמן לא הצטרפה לדעת הרוב,
ודעתה הייתה שראוי לגזור על המערער עונש של מאסר עולם, בהדגישה את שאט הנפש שלה
מכוונותו וממעשקושיו של המערער ליטול חלק בקיפוח חיי אדם באופן המוני.

כאמור, מונחים בפנינו ערעור התביעה וערעור הסנגוריה, ועלינו להכריע בהם. הסנגור המלומד
עו"ד ויסאם אגבריה, הוסיף טענות שלא נכללו כל כ כ כבתב הערעור. טענותיו של הסנגור סותרות
האחת את השנייה. מחד גיסא, הוא מבקש כי נחזיר את התיק לערכאה ראשונה תוך שהוא
מתחייב כי היקף ההעדרה, אם אכן התיק יוחזר, יהא מצומצם לשניים-שלושה עדים בלבד. הסנגור
מנסה להסביר כי אין 'לוגיק'ה בהודאותיו של המערער ובראיות נגדו, ולפיכך יש לחזור ולבדוק
את הפרטים העובדתיים ובמיוחד את היסוד הנפשי. הסנגור מנסה לצייר בפנינו את דמותו של
המערער כצעיר חסר ניסיון, שהושפע ונסחף על ידי המבוגרים ממנו לביצוע מעשיו. מאידך גיסא,
ציין בפנינו הסנגור שאין לו כל ביקורת מהותית – לא על עבודת הסנגוריה במסגרת הדיונים בבית
המשפט קמא ולא על ניהול הפרוטוקול באותו בימ"ש. ובהמשך דבריו... *"אני לא באתי לערער על*
*הכרעת הדין, הבקשה הראשונה שלי (הַחֲזָרַת הַתִּיק) הייתה מוגזמת אך להוראות האמת לאור*
*חשבתי שזה נכון"*.

מנגד, הדגישה התביעה הצבאית כי טענות הסנגור ובקשותיו לא הועלו כלל בכתב הערעור
ובנימוקיו, ומכל מקום המערער היה מיוצג בערכאה קמא ונקט קו הגנה ברור. באשר ליסוד
הנפשי, מדגישה התובעת הצבאית כי הדבר מובהר מאמרתו של המערער מיום 22.3.04, עמ' 7
שורה 20 (ת/4), תוך שהיא מצטטת:

*"ש. ספר לי מה עלי אבו הליאל סיפר לך לפני הפיגוע הראשון שהיה בירושלים?*

*ת. עלי אבו הליאל סיפר לי שהוא רוצה לתת את זה לחבר שלו שאת שמו לא אמר לי את גלון המי*
*חמצן ......... וביום שבו הבאתו את גלון האצטון הראשון שקניתי ממחמד חבר שלו ומזה הוא*
*מתכנן להכין חומר נפץ למטען חבלה.*

*ש. האם אתה יודעת למה בדיוק הולכים לעשות עם חומר הנפץ*

*ת. בטח שידעתי, ידעתי שעם החומר נפץ זה הולכים לעשות פיגוע, זה שלא ידעתי בדיוק שזה*
*הולך לפיגוע התאבדות זה לא משנה לי .........*

*ש. ואם היית יודע שזה הולך לפיגוע התאבדות אז מה?*

*ת. אז יותר טוב, אין הבדל ואין בעיה בכלל*

*ש. כשנכנסת לפעילות הזו הבנת מה אתה הולך לעשות?*

*ת. כן ידעתי והבנתי הכל, אין בעיה*

*ש. בסדר מה היה אחרי הפיגוע הראשון בי"ם..........".*

4

עי 1811+3682/08

באותה הודאה מספר המערער כי <u>שמע</u> על התוצאות של הפיגוע הראשון.

התובעת הצבאית מפנה גם לאימרתו של <b>אבו הלאיל</b> מתאריך 29.3.04, לפיה קנה המערער 20 ליטר 'אצטון <u>לצורך</u> ביצוע פיגוע ההתאבדות.

עיינתי עין היטב בחומר הראיות שהוגש לבית המשפט קמא, ובהכרעת הדין של ביהמ"ש קמא; לא מצאתי כי נפל רבב בהחלטה זו. ביהמ"ש קמא ניתח באופן יסודי ומעמיק את חומר הראיות והגיע למסקנה המתבקשת. כך למשל לגבי האישומים 14-3 מתבסס בימ"ש קמא על אמרותיו של המערער הנתמכות באמרות של <b>עלי אבו הלאיל</b>, ואשר כולן הוגשו תוך הסכמה לתוכן.

כפי שכבר ציינתי לעיל, גם הסנגור לא עמד על כך שיש לבטל את הכרעת הדין – בהסתמך על נימוק משפטי משמעותי כלשהוא; ומשמצאתי כי הכרעת הדין מבוססת דייה, אמליץ לחברי השופטים לדחות מיניה וביה את הערעור על הכרעת הדין, הואיל ואין בו כל ממש.

<u>לעניין העונש</u>: בית המשפט קמא סקר את מכלול הנסיבות: אלו המחמירות מחד גיסא, ואלו שנינתן לראותן לכאורה כמקלות מאידך גיסא, אלה הקשורות לביצוע העבירות ואלה שאינן קשורות; מסקנת בית המשפט שנתקבלה ברוב דעות קבעה, כאמור, כי יש לגזור על המערער תקופת מאסר של שלושים שנה.

דעתי היא כי יש לדחות את ערעור הסנגוריה על חומרת העונש, ולקבל את ערעור התביעה על קולתו; ואלה נימוקיי:

### 1. קטינותו של המערער

כידוע, מוסמך בימ"ש צבאי לגזור על קטין מאסר עולם. במקרה דנן, העובדה כי המערער היה קטין בעת מעורבותו בהכנות לביצוע ההרג הנורא של אזרחים תמימים – אינה מצדיקה, כשלעצמה, להקל עימו, מה גם שהמערער הביע שמחה לאחר היוודע תוצאות הפיגוע הראשון, דבר המלמד על כוונותיו הזדוניות והנפשעות ועל חפצו ולהיטותו המוחלטים להשגת התוצאות המחרידות.

לא יעלה על הדעת כי בתמהיל כה חמור של פעולות ופעילויות להשגת מטרה כה אכזרית ושפלה של רצח המונים, אזרחים תמימים חפים מכל פשע – יפגין בית המשפט 'התחשבותי' במערער וימנע מלגזור עליו את העונש הבלבדי וההולם אשר לו הוא ראוי מכל בחינה שהיא. אכן, המערער היה בן 17, אך בה-בעת מודע היטב למעשיו תוך שהוא פועל בנחישות ומתוך "אידיאולוגיה" של רצח לשמו, ללא כל הבחנה.

המערער ציין בפרשות כי משהחל בפעילותו הנפשעת הוא ידע והבין היטב את מהות פניו, ובלשונו: <b><i>"יכן ידעתי והבנתי הכל, אין בעיה"</i></b>.

עי 1811+3682/08

## 2. חלקו של המערער בביצוע הפיגועים

חלקו של המערער בסיוע לפיגועים שהביאו למותם של כה רבים, נראה לכאורה לא מרכזי. חלקו של המערער אמנם לא יזם את הפיגועים ולא גייס את המתאבדים אלא ירקי העביר את חומר המערער אמנם לא יזם את הפיגועים, אולם עיון בהודאתו של המערער מצביע על חומרה הנפץ שנידרש לעצם ביצוע הפיגועים, אולם עיון בהודאתו של המערער מצביע על חומרה מיוחדת. כך למשל, אומר המערער בת/4 עמ׳ 7 שורה 20: *"ידעתי שהולכים לבצע פיגוע לא ידעתי בדיוק שזה לפיגוע התאבדות, זה לא משנה לי"* ולשאלה אם היה יודע שזה לפיגוע התאבדות השיב המערער *"אז יותר טוב אין הבדל ואין בעיה בכלל"*. לכך יש להוסיף את התאבדות שפקדה את המערער משנודע לו תוצאות הפיגוע, ככל שהיו אימות ונוראות.

תבעת חרטה בדיעבד, של המערער, הרשימה במידה זו או אחרת את בית המשפט קמא, ברם, אין היא ראויה – בשים לב למכלול הנסיבות - להתחשבות בת-משקל המצדיקה הטלת עונש שאינו מאסר עולם.

## 3. תוצאות המעשים של המערער

אין ספק כי התוצאות המזועזעות של הפיגוע - רציחתם של 19 איש ואישה ופציעתם של כ-100 אנשים נוספים - אינם עניין שביהמ״ש לא יוכל להביאו בחשבון בגזירת העונש.

## 4. הצורך בהרתעה כללית

מקובלת עלי לחלוטין עמדת בית המשפט קמא – אותה ניתן לבטא כך : רק עונשה מחמירה ומרתיעה, אפשר לומר-קיצונית, תציב את תמרור האזהרה והתרעה החד משמעי, הנדרש, על מנת למנוע מכל עבריין בכוח, מסוגו של המערער, לסלוח את עצמו כמי שיצא למסע קניות׳ בעלמא, וכאילו חלקו הנפשע בתוצאות הנוראות – הרג המוני של אזרחים תמימים – פעוט וכלל לא חמור.

סוף דבר, ואם דעתי תישמע, אמליץ לחברי השופטים לדחות את ערעור הסנגוריה הן על הכרעת הדין והן על גזר הדין, ולקבל את ערעור התביעה על חומרת גזר הדין, ולגזור על המערער עונש מאסר עולם.

## השופט סא׳׳ל צ׳ לקח:

אני מצטרף למסקנתיו של חברי באשר לערעורי התגנה על הכרעת הדין וגזר הדין. יחד עם זאת, אינני שותף לדעתו בכל הנוגע לערעור התביעה, ולו דעתי תשמע, יידחה אף ערעור התביעה על גזר הדין.

העובדות הרלוונטיות פורטו בחוות דעתו של חברי, השופט מינא. לדעתו, המדובר במעשים חמורים במיוחד, ואין בעובדת קטינותו של המערער כדי להצדיק הימנעות מהטלת מאסר עולם על המערער.

לדעתי, כאמור, אין מקום להתערב בגזר הדין של בית משפט קמא ולהלן אנמק מדוע.

עי 1811+3682/08

ראשית, המעשים בהם הורשע המערער היו מעשים הנמצאים במעגל המרוחק יותר של ביצוע העבירה. אין הוא יוזם הפיגוע, וחלקו בביצועו הינו מינורי. המערער אמנם סיפק את חומרי הגלם להכנת חומרי הנפץ, אך לא הכינם בעצמו ולא היה קשור בחלקים אחרים של תכנון הפיגועים והוצאתם לפועל.

שנית, חמישה מהמעשים שבוצע המערער היו בעת היותו קטין. כבר נקבע כי אין זדון רשעותו של קטין כזדון רשעותו של בגיר (ע"פ 1583/91 **מדינת ישראל נ' פלונים** פ"ד מו (5) 94, עמוד 99). אף על פי כן, נקבע כי ניתן להטיל על קטין עונש מאסר עולם במקרים המתאימים (ע"פ 1789/03 **פלונים נ' מדינת ישראל,** פ"ד נח(4) 420, ע"פ 9937/01 **חורב נ' מדינת ישראל,** פ"ד נח(6) 738). אינני סבור כי מקרה זה הוא אחד מאותם מקרים מתאימים. בדרך כלל ייגזר מאסר עולם על קטין אם היה המבצע העיקרי של העבירה או גורם דומיננטי בביצועה, ולעתים גם אז, יסתפקו בעונש קצוב בשנים (ע"פ 4379/02 **פלוני נ' מדינת ישראל** [פדאור (לא פורסם) 06 (2) 238]).

כאמור, חלקו של המערער במעשים היה של מסייע ולא של מי שנמצא במעגל הפנימי של מבצעי העבירה. בנוסף, בית משפט קמא השתכנע מכנות חרטתו ומכך שכל הנראה המערער למד את לקחו, ונמצא כיום בהליכי שיקום תוך תקופת כלאו. אינני סבור כי יש לבטל התרשמות זו של בית משפט קמא, בייחוד כאשר המדובר בקטין (השווה עד"יי 1517/09 **התביעה הצבאית נ' מחלוף**).

אכן, ככל שחומרת המעשים רבה יותר, כך הנטייה להתחשב בנסיבותיו האישיות של הנאשם הולכת וקטנה. אך כשמדובר בקטין, יש להתחשב בנסיבותיו האישיות ובשיקולי השיקום גם כאשר מדובר בביצוע עבירות חמורות ביותר. כפי שנקבע בע"פ 10715/05 **פלוני נ' מדינת ישראל** [פדאור (לא פורסם) 07 (27) 592], עמוד 4, מפי כבי השופטת פרוקצ'יה:

> "במדיניות הענישה הנוהגת והראויה ניתן, דרך כלל, משקל רב לעובדת קטינותם של נאשמים, וזאת משני היבטים עיקריים: ראשית, גילו הצעיר של נאשם משליך על דרגת החומרה שבה יש להשקיף על מעשיו. גם בקיומה של אחריות פלילית, גילו הצעיר של נאשם, טרם בגרות, עשוי להשביע על חוסר בשלות אישית טבעית להבין לעומקם של דברים את משמעות המעשה הפלילי ותוצאותיו. לחוסר בשלות זה ניתן משקל מקל בעניישתם של קטינים. שנית, מעורבותם של קטינים בעבירות פליליות, ובהן גם חמורות ביותר, מותירה לעולם תחושת מחויבות של החברה למצוא כל דרך לשקם את העבריינים הקטינים ולהעלותם על מסלול חיים תקין וראוי. למחויבות זו תכלית משולבת: לשקם את הפרט ולפתוח בפניו את דרך החיים הנורמטיבית, ולהבטיח לציבור הרחב חיים של ביטחון ושלווה בחברה הטומנת להקטנת ממדיה של הפשיעה. אם עבריינות המבוגר מותירה פתח אפשרי וחשוב לשיקום, הרי עבריינות קטין מטילה על שכם החברה חובה לעשות כל שניתן, על-מנת למצות את סיכויי השיקום של הצעיר בטרם יהיה מאוחר מדי. חובתה של החברה לעשות לשיקום העבריין הצעיר והצורך למצות את דרך השיקום הם שיקולים כבדי משקל בגזרת דינו של קטין, בעבירה קלה כחמורה" (ההדגשה שלי – צ.ל.)

7

ע' 3682+1811/08

שיקולי השיקום של קטין קיבלו משקל נוסף עם כניסתו לתוקף של התיקון לחוק חנוער (שפיטה ענישה ודרכי טיפול), התשל"א -1971, בשנה האחרונה. לפיכך, לטעמי, לאור היותו של המערער ענישה ודרכי טיפול), התשל"א -1971, בשנה האחרונה. לפיכך, לטעמי, לאור היותו של המערער במעגל התיכונני של מבצעי העבירה, וכיוון שהסיוע שהעניק התבטא בהעברת חומרים מהם ייצרו חומרי נפץ, ולא מעבר לכך, ולאור חרטתו והבנתו את חומרת מעשיו, אינני סבור כי יש מקום להחמיר בעונשו של המערער. עונש של 30 שנות מאסר, כפי שגוזר בדעת רוב בערכאה הראשונה, הינו עונש הולך בנסיבות המקרה שלפנינו, ועל כן, יש לדעתי לדחות גם את ערעור התביעה.

### המשנה לנשיא סא"ל נ' בניש:

אף אני מצטרף את דעתי לדעות חבריי בנוגע לדחיית ערעור הסנגוריה נגד הכרעת הדין.

יחד עם זאת, התלבטתי לא מעט באשר לתוצאה העונשית הרצויה במקרה הנוכחי.

סופם של דברים, כי אף אני בדעה שבנסיבות המקרה הנוכחי, אין מקום להתערב בגזר דינו של בימ"ש קמא.

חבריי פרסו בטוב טעם את גדרי הדילמה העונשית. יש להוסיף על דבריהם כי המערער עסק בייצור חומרים כימיים להכנת חומר נפץ, ובקביעת בימ"ש קמא, יצר *"לא תשתית מעבדתית של ממש להתחיל וליצר חומרי נפץ מתוחכמים בכמויות."* (עמוד-3 להכרעת הדין). זאת ועוד, גם לאחר ביצוע הפיגועים המתוארים, קשר עם אחד ליצר תיק נפץ על מנת שיבוצע באמצעותו פיגוע התאבדות נוסף. קשר זה, נותר בגדר רעיון בלבד לנוכח מעצרו של המערער.

אלא שלצד האמור, ועל אף שהתוצאות המחרידות של הפיגועים מעוררות פלצות, עלינו לזכור כי חלקו של המערער התמצה ברכישת "אציטון" ומסירתו לאדם אחר שעמד מאחורי הוצאת הפיגועים אל הפועל. אשר על כן, בפניינו מסייע קלאסי, שלא הייתה לו יד ורגל ביזום, תכנון או ביצוע הפיגועים וידיעתו באשר למעשים אלה נותרה כללית. נסיבה זו, מהווה לטעמי, נסיבה מרכזית אף יותר מקטיעותו של המערער, חרטתו או סיכויי שיקומו ההיפותטיים בתום ריצוי עונש מאסר של עשרות שנים.

לנוכח האמור, אף אני סבור שיש לדחות את ערעורי הצדדים כולם.

הוחלט כאמור בפסק דינם של המשנה לנשיא סא"ל נ' בנישו וכבי השופט סא"ל צ' לקח נגד דעתו החולקת של כבי השופט אל"ם א' מינא.

ניתן והודע היום, 20 בספטמבר 2010, י"ב תשרי התשע"א, בנוכחות המערער, ב"כ והתובי"ץ.

(-)                           (-)                           (-)

שופט                          אב"ד                          שופט

רמי"שית : סא+חשש

8