# EXHIBIT A.297

PLAINTIFF'S
EXHIBIT
297

Date: September 28, 2006                                      Case No.: 2271/04

## The Judea Military Court

**Before the Honorable Presiding Judge:**   **Major Ronen Atzmon**
                                **Judge:**   **Major Menachem Lieberman**
                                **Judge:**   **Major Adrian Agasi**

**The Military Prosecution**
(Represented by Lieutenant Tomer Horovitz)

- v. -

**The Defendant: Abdul Rahman Yousef Abdul Rahman Maqdad, Identity No. 41410066625
/ Israel Prison Service**
(Represented by Counsel, Adv. Osama Ouda)

**Stenographer: Sergeant Moran Weissman**

## Arguments for Sentencing

On June 27, 2006, we sentenced the Defendant, Abdul Rahman Yousef Abdul Rahman Maqdad (hereinafter: the "Defendant"), and stated that the arguments for the sentencing would be given later.

### The offenses of which the Defendant was convicted

The Defendant was convicted by us on July 27, 2006, based on his confession, of the following offenses:

A.   **Shooting at a person**, an offense under Section 58 (A) of the Defense Regulations (Time of Emergency) and Section 22 of the Rules of Liability for an Offense Order. This was manifested insofar as during July 2001 or thereabouts, the Defendant participated in a shooting using a Kalashnikov rifle from the settlement of Beit Jala, in order to hit Israeli citizens on Mount Gilo (first count of the indictment).

[Stamp] P 2: 318

B.  **Possession of war materiel**, an offense under Section 53 (A) (1) of the Security Provisions Order. This was manifested insofar as during March 2002 or thereabouts, the Defendant obtained a quantity of four kilograms of Um Al Abed explosives from another operative, and using part of that quantity, produced four pipe bombs. During operation "Defensive Shield", the Defendant hid in the Church of the Nativity in Bethlehem, while in possession of the explosive devices. In addition to this, the Defendant concealed a pistol, which he found when he was at the site, behind a cupboard in the church (the second count of the indictment).

C.  **Four counts of attempt to cause intentional death**, an offense under Section 51 of the Security Provisions Order, and Sections 14 and 28 of the Rules of Liability for an Offense Order. This was manifested as follows:

-   In late 2003 or thereabouts, the Defendant complied with the request of another operative to carry out a shooting at Israeli vehicles in the area of the Talita Kumi School. For the purpose of the attack, the Defendant enlisted an additional operative who would conduct an early visit to the planned attack site, and two other operatives who participated with him in the attack.

- 1 -

[Stamp] P 2: 318 [continued]

Date: September 28, 2006                                              Case No.: 2271/04

The Defendant and his accomplices hid in waiting at the intended attack site, and when a military jeep passed by, they opened fire upon it. The military jeep continued its journey and the Defendant and his accomplices fled from the attack site (third count of the indictment).

- On January 29, 2004, the Defendant was an accomplice in the vicious suicide attack that the terrorist Ali Ja'ara carried out on Bus No. 19 in Jerusalem, in which 11 Israelis were killed (fourth count of the indictment). In that attack, more than 50 civilians were also injured to varying degrees of severity, for which the Defendant was convicted of an attempt to cause their intentional deaths (fifteenth count of the indictment).

- In February 2004 or thereabouts, the Defendant and another accomplice planned a shooting attack in the Al Khader area, for which purpose he led a visit to the planned attack site. The Defendant enlisted a lookout to help the attackers at the time of the attack, and thereafter departed with his accomplice while armed with an M16 rifle, in order to carry out the attack. Only after the Defendant and his accomplices reached the attack site did they decide to defer the time of commission, with the aim of not harming the preparations for the suicide attacks that were being planned at that time (sixteenth count of the indictment).

- On February 22, 2004, the Defendant was an accomplice in the suicide attack that the terrorist Mohamed Zaoul carried out on the No. 14 in Jerusalem, in which eight Israelis were killed (seventeenth count of the indictment). In that attack, more than 50 Israeli citizens were also injured to varying degrees of severity, for which the Defendant was convicted of attempting to cause intentional death of (twenty-fifth count of the indictment).

D.   Nineteen counts of **causing intentional death**, an offense under Section 51 of the Security Provisions Order. This manifested as follows:

[Stamp] P 2: 319

On January 29, 2004, or thereabouts, the Defendant contacted another operative, and asked him to help find candidates who were capable of manufacturing explosives and explosive devices, which were intended to be used against Israeli targets, and to find suicide terrorists for carrying out suicide attacks. The additional operatives who were enlisted for the hostile activity were able to procure two kilograms of Um Al Abed explosives and a large quantity of acetone and hydrogen peroxide, which were handed over to the Defendant for the purpose of preparing an explosive bag for the terrorist Ali Ja'ara, who had volunteered for the suicide mission. The Defendant prepared the explosive bag for the planned suicide bombing using the materials that had been supplied to him, after additional items were also acquired for him, such as a bag, batteries and a switch. He met the suicide terrorist and his accomplice, and explained to them how to activate the explosive device, with the intent of causing the deaths of Israeli citizens.

The suicide terrorist was transported to Jerusalem by another operative, through the village of Walaja, and arrived at the Malha Mall, where he boarded Egged Bus No. 19 and traveled towards Paris Square. When the bus arrived at the corner of Arlozorov and Aza Streets, the explosive device was activated, and as a result of the explosion, the late Avraham Balhasan (fourth count of the indictment), the late Hannah Bonder (fifth count of the indictment), the late Anat Darom (sixth count of the indictment), the late Yehezkel Goldberg (seventh count of the indictment), the late Vladi Tzadik Mandara (eighth count of the indictment), the late Viorel Octavian Florescu (ninth count of the indictment), the late Rose Boneh (tenth count of the indictment), the late Dana Itach (eleventh count of the indictment), the late Roman Hondiashvili (twelfth count of the indictment), the late Eli Zfira (thirteenth count of the indictment) and the late Natalia Gamril (fourteenth count of the indictment) were killed.

Date: September 28, 2006                                               Case No.: 2271/04

- On February 22, 2004 or thereabouts, the Defendant was an accomplice in a plot to carry out a suicide bombing using the terrorist Mohamed Zaoul, who undertook to carry out the mission. An accomplice of the Defendant in carrying out hostile activity updated the Defendant of having found the suicide terrorist, and the Defendant contacted his brother who lives in Gaza, and asked him for a sum of NIS 3,000 to prepare the explosive bag for the suicide attack, and to purchase a video camera by which the suicide terrorist would be filmed before departing for the mission. The money was transferred to the title of the Defendant to the Arab Bank in Bethlehem.

Using the money that he received, the Defendant purchased a video camera and an ordinary camera and also transferred money to his accomplices who were participating with him in the activity, for the purpose of purchasing materials and preparing the explosive bag for the suicide bombing. For the purpose of preparing the explosive device, hydrogen peroxide and acetone were purchased, and the Defendant had some of the Um Al Abed high explosive manufactured in his home with another accomplice, and this was used for the purpose of preparing the explosive device that was intended for the attack. After the preparation of the explosive device, the Defendant attached iron nails to the device in order to increase and worsen the injuries at the time of detonation of the device.

The suicide terrorist came to the home of the Defendant to prepare him for the attack, and in addition, the Defendant was provided with a Kalashnikov rifle and a grenade for him [to use] to film the suicide terrorist while holding the weapons before departing for the suicide operation. The Defendant was sure to get new clothes for the suicide terrorist and to film him. In addition, the Defendant completed the installation of the explosive device and briefed the suicide terrorist on its operation.

After the completion of the preparations for the suicide bombing, the suicide terrorist was taken from Bethlehem, and from there he was transferred to a place near Malha Mall in Jerusalem. The Defendant received a report of the departure of the suicide terrorist for the attack, and reported this to his brother in Gaza (who financed the execution of the attack). A short time thereafter, the suicide terrorist boarded Egged Bus No. 14, which was traveling toward Liberty Bell Park in Jerusalem, while in possession of the explosive bag. When the bus stopped at a junction with traffic lights, the suicide terrorist detonated the explosive bag, with the aim of harming as many people as possible.

[Stamp] P 2: 320

As a result of the suicide attack, **the late Yaffa Ben-Shimol** (seventeenth count of the indictment), **the late Yuval Ozana** (eighteenth count of the indictment), **the late Rahamim Doga** (nineteenth count of the indictment), **the late Yehuda Haim** (twentieth count of the indictment), **the late Ilan Avisidris** (twenty-first count of the indictment), **the late Benaya Yonatan Zuckerman** (twenty-second count of the indictment), **the late Lior Azulai** (twenty-third count of the indictment) and **the late Netanel Havshush** (twenty-fourth count of the indictment) were killed.

E.  Four counts of conspiring to cause intentional death, an offense under Section 51 of the Security Provisions Order, and Sections 21 and 22 of the Rules of Responsibility for an Offense Order. This manifested as follows:

-  In early March 2003 or thereabouts, the Defendant together with an additional operative planned to place an explosive device in the Beit Jala area, to be detonated alongside an IDF jeep, with the aim of causing the deaths of its occupants. Thereafter they planned to abduct the bodies of the soldiers and conceal them in a hiding place in order to attempt to swap the bodies for Palestinian prisoners. The mission was thwarted because the Defendant and his accomplices were arrested by the Israeli security forces before its commission (twenty-sixth count of the indictment).

[Stamp] P 2: 320 [continued]

Date: September 28, 2006                                        Case No.: 2271/04

- In early March or thereabouts, the Defendant planned to hijack an Israeli bus and have it driven to the Church of the Nativity in Bethlehem; this was in order to secure the release of Palestinian prisoners incarcerated in Israel. The mission was supposed to have been carried out by two suicide terrorists armed with explosive belts, who would force the bus driver to drive to Bethlehem.

The Defendant planned to booby trap the church yard in Bethlehem in order to prevent Israeli forces from approaching the site – and post two terrorists armed with gas cylinders inside the church to detonate the explosive device should IDF soldiers enter the church to free the captives. The Defendant reported the plan to another operative who consented to provide him hydrogen peroxide and other chemicals for preparing the explosive belts of the suicide terrorists. In addition, the Defendant reported the plan to his brother in Gaza, who was not enthusiastic about its chances of success. The plan was thwarted because of the Defendant's arrest. (twenty-seventh count of the indictment).

- In early March 2003 or thereabouts, the Defendant planned a double suicide bombing with another accomplice, in which one of the suicide terrorists was to explode in a crowded place while the other would carry out a suicide bombing using a car bomb nearby where the Government was expected to assemble its forces following the attack. The plot was thwarted because of the arrest of the Defendant and his accomplice (twenty-ninth count of the indictment).

- In early March 2003 or thereabouts, the Defendant and his accomplices planned a suicide attack inside a crowded bus in Israel for which another suicide terrorist dressed in rescue forces clothing and equipped with a 25-kilogram explosive device was supposed to wait near the attack site. Needless to say, the aim of the combined attack was to maximize the number of casualties; the plot was not realized owing to the arrest of the Defendant and his accomplice by the Israeli security forces. (twenty-ninth count of the indictment).

[Stamp] P 2: 321

## The pleas of the parties:

The Military Prosecution asked to emphasize that the Defendant had been convicted based on his confession of involvement in two vicious attacks that caused the deaths of 19 innocent civilians and the injury of dozens more. The severity of the acts, resulting from which innocent people were murdered in cold blood, cannot be understated. The Defendant did not express any remorse for his acts – and even when he stood before us, he was still supporting his criminal acts. Therefore, the Military Prosecution asked to sentence the Defendant to terms of cumulative life imprisonment for each victim who was killed in the two attacks, terms of two cumulative life imprisonments for the injuries that were caused in the two severe attacks – and an appropriate sentence for the other offenses of which the Defendant was convicted.

The Defense Counsel preferred not to elaborate his position on the matter of a "fitting punishment" that the Defendant would deserve. Therefore, he asked us to make do with whatever the Defendant would tell us.

In his last statement, the Defendant admitted that he had killed Israelis, but he stated that he was not to blame because it was his right to act that way as his acts were a response to the tens of thousands of Palestinians whom Israelis had killed without a reason, and as long as Israel would continue its occupation, the situation would not improve. The Defendant longs for peace, but in the existing situation he must fight back.

- 4 -

[Stamp] P 2: 321 [continued]

Date: September 28, 2006                                   Case No.: 2271/04

The Defendant longs for the day of sitting at the bench and judging Israelis for the crimes that they have carried out against the Palestinian people. The Defendant's son would also continue in his footsteps until peace could be achieved.

We must point out that at the time of the reading of the sentence, the Defendant refused to stand up and was therefore removed from the courtroom. After a break, the Defendant was returned to the courtroom, after he expressed willingness to stand up during the reading of the sentence.

### The considerations for sentencing

The acts for which the Defendant was convicted are terrible, and there is no need to elaborate on their brutality. The Defendant was a full and primary accomplice in the dispatching of two suicide terrorists who carried out suicide bombings in Israel. The first attack occurred on January 19, 2004, on an Egged bus that drove along route no. 19 in Jerusalem, and the second attack occurred on February 22, 2004, on an Egged bus that drove along route no. 14 in Jerusalem. In these two brutal attacks, 19 people were killed and many dozens more were injured to varying degrees of injury.

The principle of the sanctity of life and the prohibition in the form of "Thou shalt not murder" are a universal value, which every civilized person should respect. As a human being, the Defendant should also have respected these sacrosanct values, but instead of doing so he preferred to participate himself in terrorist attacks that caused bloodshed and murder for their own sake. The blood of the 19 victims, whose innocent lives were cut short by the Defendant and his accomplices, cries up to us from the ground, and no sentence in the world that could be inflicted upon the Defendant for his deeds can make amends for the bloodshed.

It is a known thing that sentencing has various purposes. On the one hand it must deter others, protect society against the acts of the defendant in the future; and on the other, it is supposed to take into account the personal circumstances of the defendant and the need to rehabilitate him and return him, at the end of the day, to a normative, constructive setting. Usually, the "balance" between the various purposes of sentencing is no simple matter, but in the case that is the object of this hearing, we are exempt from pondering on the issue, as the considerations that will guide us in this case is only what the Defendant deserves for his criminal acts, deterring the many others who are considering to follow in his footsteps, and the need to protect the public against the further acts of the Defendant – and hold him permanently behind bars.

[Stamp] P 2: 322

The Defendant is trying to present himself as acting solely in order to protect the Palestinian people against the acts of the Israelis who, without mercy, are murdering men, women and children. We have no intent to go into the ideological or political debate of the Defendant, who in our view is a lowly murderer who has lost every trace of humanity – and does not recognize any restrictions of civilized society. Concerning a murderer of this kind we find in the sources that he must not be pardoned – even when he seeks refuge for fear of the law and clings to the corner of the altar, "that person is to be taken from my altar" to face his punishment.

The acts to which the Defendant was an accomplice are terrible and cruel, and truth be told, the boundaries of sentencing are limited – and we do not have a suitable sentence that befits the severity of the acts of the Defendant. Cumulative terms of life imprisonment can express our revulsion over the degree and cruelty of the activity in which the Defendant was involved, but naturally, a person's lifetime is limited, and therefore in actual fact the Defendant cannot serve more than one term of life imprisonment (even if sentenced to cumulative life imprisonments).

- 5 -

[Stamp] P 2: 322 [continued]

Date: September 28, 2006

Case No.: 2271/04

Despite our great revulsion over the Defendant and his deeds, of course we function within the limits of the rule of law; and it is presumed for us as the staff of the Military Appellate Court to hold that the "fitting punishment" for a murderer is life imprisonment for every person whom he has murdered, life imprisonment for an attempt to cause death that ends in mass injury, and an additional cumulative sentence for the other offenses of which he has been convicted. In the case that is the object of the hearing, the deeds of the Defendant are, as set forth, severe and cruel, and therefore we have fully accepted the position of the Military Prosecution concerning the sentence to which the Defendant should be sentenced.

## Conclusion

We have decided to sentence the Defendant as follows:

A.    For causing the intentional death of **the late Avraham Balhasan** – life imprisonment.

B.    For causing the intentional death of **the late Hannah Bonder** – life imprisonment.

C.    For causing the intentional death of **the late Anat Darom** – life imprisonment.

D.    For causing the intentional death of **the late Yehezkel Goldberg** – life imprisonment.

E.    For causing the intentional death of **the late Vladi Tzadik Mandara** – life imprisonment.

F.    For causing the intentional death of **the late Viorel Octavian Florescu** – life imprisonment.

G.    For causing the intentional death of **the late Rose Boneh** – life imprisonment.

H.    For causing the intentional death of **the late Dana Itach** – life imprisonment.

I.    For causing the intentional death of **the late Roman Hondiashvili** – life imprisonment.

J.    For causing the intentional death of **the late Eli Zfira** – life imprisonment.

K.    For causing the intentional death of **the late Natalia Gamril** – life imprisonment.

L.    For causing the intentional death of **the late Yaffa Ben-Shimol** – life imprisonment.

M.    For causing the intentional death of **the late Yuval Ozana** – life imprisonment.

N.    For causing the intentional death of **the late Rahamim Doga** – life imprisonment.

[Stamp] P 2: 323

O.  For causing the intentional death of **the late Yehuda Haim** – life imprisonment.

P.  For causing the intentional death of **the late Ilan Avisidris** – life imprisonment.

Q.  For causing the intentional death of **the late Benaya Yonatan Zuckerman** – life imprisonment.

R.  For causing the intentional death of **the late Lior Azulai** – life imprisonment.

S.  For causing the intentional death of **the late Netanel Havshush** – life imprisonment.

T.  For the injury of dozens of people in the attack on January 29, 2004 – life imprisonment.

U.  For the injury of dozens of people in the attack on February 22, 2004 – life imprisonment.

V.  For the other counts of the indictment for which the Defendant has been convicted – 15 years of imprisonment, to be served in fact.

All of the sentences are to be served cumulatively.

**A right of appeal within 30 days of giving the arguments to the parties is conferred.**

**The secretariat of the Court will forward a copy of the arguments for the verdict to the parties.**

**Handed down and announced this day, September 28, 2006, in the absence of the parties.**

| [Signature] | [Signature] | [Signature] |
|:---:|:---:|:---:|
| **Judge** | **Presiding Judge** | **Judge** |

- 5 -

[Stamp] P 2: 323 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

  Plaintiffs,

  vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

  Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 318-323.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 318-323.

Rina Ne'eman

ss.: New Jersey

On the [28]$^{th}$ day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

KIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2392704

תיק מס': 04/2271

תאריך: 28/9/06

בית המשפט הצבאי יהודה

בפני כב' האב"ד: רס"ן רונן עצמון
השופט: רס"ן מנחם ליברמן
השופט: רס"ן אדריאן אגסי

התביעה הצבאית
(באמצעות סגן תומר הורוביץ)

נגד

הנאשם: עבד אלרחמאן יוסף עבד אלרחמאן מקדאד ת.ז 41410066625 שב"ס
(באמצעות ב"כ עו"ד אוסאמה עודה)

רמ"שית: סמל מורן וייסמן

## נימוקי גזר דין

ביום 27/06/06 גזרנו את עונשו של הנאשם, עבד אלרחמאן יוסף עבד אלרחמאן
מקדאד (להלן- הנאשם), וקבענו כי נימוקי גזר הדין יינתנו בהמשך.

### העבירות בהן הורשע הנאשם

הנאשם הורשע על ידינו ביום 27/07/06 על בסיס הודאתו, בעבירות הבאות:

א.  **ירי לעבר אדם**, עבירה לפי תקנה 58(א) לתקנות ההגנה (שעת חירום)- וסעיף
14 לצו בדבר כללי האחריות לעבירה. הדבר בא בסמוך לכך שבמהלך
חודש יולי 2001 או בסמוך לכך, השתתף הנאשם בירי מרובה קלצ'ניקוב
מהיישוב בית ג'אלה, כדי לפגוע באזרחים ישראליים בהר גילה (פרט האישום
הראשון).

ב.  **החזקת אמל"ח**, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון. הדבר
בא לכלל ביטוי בכך שבמהלך חודש מרץ 2002 או בסמוך לכך קיבל הנאשם
מפעיל נוסף כמות של 4 קילוגרם חומר נפץ מסוג "אום אלעבד", וייצר
באמצעות חלק מהכמות 4 מטעני צינור. במהלך מבצע "חומת מגן" התחתר
הנאשם בכנסיית המולד בבית לחם, כשברשותו מטעני חבלה. בנוסף לכך
הסתיר הנאשם מאחורי ארון בכנסיה אקדח, שאותו מצא במהלך שהותו
במקום (פרט האישום השני).

ג.  **4 פרטים של ניסיון גרימת מוות בכוונה**, עבירה לפי סעיף 51 לצו בדבר
הוראות בטחון- וסעיפים 14 ו-28 לצו בדבר כללי האחריות לעבירה. הדבר
בא לידי ביטוי כך:

-  בסוף שנת 2003 או בסמוך לכך, נענה הנאשם לבקשתו של פעיל נוסף
לבצע פיגוע ירי לעבר כלי רכב ישראליים, באזור ביה"ס "תליתא
קומיי". לצורך הפיגוע גייס הנאשם פעיל נוסף שיבצע סיור מוקדם
במקום המתוכנן לפיגוע, ושני פעילים נוספים שהשתתפו יחד עימו
בפיגוע.

- 1 -

תיק מס׳ : 2271/04                                                    תאריך : 28/9/06

הנאשם וחבריו ארבו במקום המיועד לפיגוע, וכאשר חלף במקום ג׳יפ
צבאי, הם פתחו לעברו באש. הג׳יפ הצבאי המשיך בנסיעה והנאשם
וחבריו נמלטו ממקום הפיגוע (פרט האישום השלישי).

- ביום 29/01/04 היה הנאשם שותף לפיגוע ההתאבדות הקשה שביצע
המחבל עלי ג׳עארה בקו 19 בירושלים, ואשר בו נהרגו 11 ישראלים
(פרט האישום הרביעי). באותו פיגוע גם נפצעו יותר מ-50 אזרחים
בדרגות פציעה שונות, שהנאשם הורשע בניסיון לגרימת מוות בכוונה
(פרט האישום ה-15).

- במהלך חודש פברואר 2004 או בסמוך לכך, תכנן הנאשם וחבר נוסף
פיגוע ירי באזור אל-חי׳דר, ולצורך כך ערך סיור במקום המתוכנן
לפיגוע. הנאשם גייס תצפיתן שיסייע למפגעים בעת הפיגוע, ולאחר

מכן יצא עם חברו כשהוא חמוש ברובה M16, כדי לבצע את
הפיגוע. רק לאחר שהנאשם וחבריו הגיעו למקום הפיגוע, הם החליטו
לדחות את מועד הביצוע, מתוך מטרה שלא לפגוע בהכנות לפיגועי
ההתאבדות שתוכננו באותה עת (פרט האישום ה-16).

- ביום 22/02/04 היה הנאשם שותף לפיגוע ההתאבדות שביצע המחבל
מוחמד זעול בקו 14 בירושלים, ואשר בו נהרגו 8 ישראלים (פרט
האישום ה-17). באותו פיגוע גם נפצעו יותר מ-50 אזרחים ישראלים
בדרגות פציעה שונות, שהנאשם הורשע בניסיון לגרום למותם בכוונה
(פרט האישום ה-25).

ד. 19 פרטי אישום של **גרימת מוות בכוונה**, עבירה לפי סעיף 51 לצו בדבר
הוראות בטחון. הדבר בא לכלל ביטוי כך :

ביום 29/01/04 או בסמוך לכך, יצר הנאשם קשר עם פעיל נוסף- וביקש
ממנו כי יסייע באיתור מועמדים המסוגלים לייצר חומרי נפץ ומטעני
חבלה, שאמורים היו לשמש כנגד מטרות ישראליות- וכן באיתור
מתאבדים לצורך ביצועי פיגועי התאבדות. הפעילים הנוספים שגוייסו
לפעילות העניינת,הצליחו להשיג 2 קילוגרם חומר נפץ מסוג אום אל עבד
וכמות גדולה של אטכול ומי חמצן, ואלו נמסרו לנאשם לצורך הכנת תיק
נפץ למחבל עלי ג׳עארה, שהתנדב למשימת ההתאבדות.הנאשם הכין את
תיק הנפץ לפיגוע ההתאבדות המתוכנן מהחומרים שסופקו לו, לאחר
שנרשמו עבורו גם אמצעים נוספים כמו תיק,סוללות ומפסק. הוא נפגש
עם המחבל המתאבד וחברו, והסביר להם כיצד להפעיל את מטען הנפץ,
בכוונה לגרום למותם של אזרחים ישראלים.

המחבל המתאבד הובל ע׳׳י פעיל נוסף לירושלים, דרך הכפר וולג׳ה- והגיע
לקניון מלחה, שם עלה על אוטובוס מס׳ 19 של אגד שנסע לכיוון ככר
פריז. כאשר הגיע האוטובוס לפינת הרחובות ארלוזורוב ועזה, הופעל
המטען- וכתוצאה מהפיצוץ נהרגו אברהם בלחסן ז׳׳ל (פרט האישום
הרביעי), חנה בונדר ז׳׳ל (פרט האישום החמישי), ענת דרום ז׳׳ל (פרט
האישום השישי), יחזקאל גולדברג ז׳׳ל (פרט האישום השביעי), ולרי
צדיק מנדרה ז׳׳ל (פרט האישום השמיני), ויורל אוקטביה פלורסקו ז׳׳ל
(פרט האישום התשיעי), רוזה בונה ז׳׳ל (פרט האישום העשירי), דנה
איטח ז׳׳ל (פרט האישום האחת עשר), רומן מונדיאוסוילי ז׳׳ל (פרט
האישום השנים עשר), אלי ציפורה ז׳׳ל (פרט האישום השלושה עשר)
ונטליה גמריל ז׳׳ל (פרט האישום הארבעה עשר).

- 2 -

תאריך : 28/9/06                              תיק מס׳ : 2271/04

-ביום 22/02/04 או בסמוך לכך, היה הנאשם שותף למזימה לבצע פיגוע
התאבדות באמצעות המחבל מוחמד זעול, שקיבל על עצמו לבצע את
המשימה. חברו של הנאשם לפעילות העוינת, עדכן את הנאשם על דבר
איתור המחבל המתאבד, והנאשם יצר קשר עם אחיו שגר בעזה – וביקש
ממנו סכום של 3,000 ₪ כדי לחכין את תיק הנפץ לפיגוע ההתאבדות, ועל
מנת לרכוש מצלמה וידאו בה יצולם המחבל המתאבד בטרם צאתו
למשימה. הכסף הועבר על שמו של הנאשם לבנק הערבי בבית לחם.

הנאשם רכש באמצעות הכסף שקיבל מצלמת וידאו ומצלמה רגילה וכמו
כן העביר לחבריו כסף לפעילות כסף לצורך רכישת חומרים – והכנת תיק
הנפץ לפיגוע ההתאבדות. לצורך הכנת המטען, נרכשו חומרים כימיים
מסוג מי חמצן ואצטון, והנאשם דאג לייצר בביתו ביחד עם חבר נוסף
חומר נפץ מסוג ״אום אלעבד״, שבו נעשה שימוש לצורך הכנת מטען
החבלה המיועד לפיגוע. לאחר הכנת המטען הצמיד הנאשם למטען
מסמרים ברזל, כל זאת כדי להגביר ולהחמיר את הפגיעות בעת פיצוץ
המטען.

המחבל המתאבד הגיע לביתו של הנאשם כדי להכין אותו לקראת הפיגוע
- וכמו כן הועמד לרשות הנאשם רובה קלצ׳ניקוב ורימון, על מנת שיצלם
את המחבל המתאבד כשהוא מחזיק באמל״ח בטרם צאתו לבצע את
ההתאבדות. הנאשם דאג להשיג בגדים חדשים עבור המחבל המתאבד
ולצלמו. כמו כן סיים הנאשם התקנת מטען החבלה, ותידרך המחבל
המתאבד כיצד להפעילו.

לאחר השלמת ההכנות לפיגוע ההתאבדות, נלקח המחבל המתאבד לבית
לחם, ומשם הועבר למקום הנמצא בסמוך לקניון מלחה בירושלים.
הנאשם קיבל דיווח על יציאת המחבל המתאבד לפיגוע, ודיווח על כך
לאחיו בעזה (שמיקמן את הוצאת הפיגוע אל הפועל). בסמוך לאחר מכן
עלה המחבל המתאבד על אוטובוס מספר 14 של אגד שנסע לכיוון גן
הפעמון בירושלים, כשברשותו תיק הנפץ. כשנעצר האוטובוס בצומת
הרמזורים הפעיל המתאבד את תיק הנפץ, במטרה לפגוע במספר רב של
בני האדם כדי האפשר.

כתוצאה מפיגוע ההתאבדות, נהרגה **יפה בן שימול ז״ל** (פרט האישום 17,
**יובל אואנה ז״ל** (פרט האישום 18), **רחמים דואג ז״ל** (פרט האישום 19),
**יהודה חיים ז״ל** ( פרט האישום 20), **אילן אבו סידריס ז״ל** (פרט האישום
21), **בניה יוסף צוקרמן ז״ל** (פרט האישום 22), **אזולאי ליאור ז״ל** (פרט
האישום 23) **ונתנאל חבשוש ז״ל** (פרט האישום 24).

ה. 4 פרטים של קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 51 לצו
בדבר הוראות בטחון – וסעיפים 21 ו- 22 לצו בדבר האחריות לעבירה. הדבר
בא לכלל ביטוי כך :

-   בתחילת חודש מרץ 2003 או בסמוך לכך, תכנן הנאשם ביחד עם פעיל
נוסף הנחת מטען באזור בית ג׳אלה, שיופעל כנגד ג׳יפ של צה״ל,
בכוונה לגרום למות הנוסעים. לאחר מכן תוכנן לחתוף את גופת
החיילים - ולהסתירה במקום מסתור, על מנת לנסות ולהחליף את
הגופות באסירים פלשתינים. המשימה סוכלה משום שהנאשם וחבריו
נעצרו קודם לביצוע ע״י כוחות הבטחון הישראליים. (פרט אישום 26)

- 3 -

תאריך : 28/9/06                                          תיק מס׳ : 2271/04

- בתחילת חודש מרץ או בסמוך לכך, תכנן הנאשם לחטוף אוטובוס
ישראלי – ולהובילו לכנסיית המולד בבית לחם ; וזאת על מנת להשיג
שחרור אסירים פלשתינים הכלואים בישראל. המשימה אמורה
היתה להתבצע ע״י שני מחבלים מתאבדים החמושים בחגורות נפץ,
שיאלצו את נהג האוטובוס להגיע לבית לחם.

הנאשם תכנן למלכד את חצר הכנסייה בבית לחם, כדי למנוע מכוחות
צה״ל מלהתקרב למקום – ולהציב בתוך הכנסייה שני מחבלים
חמושים בבלוני גז, שיפוצצו את המטענים במידה וכוחות צה״ל יכנסו
לכנסייה כדי לשחרר את החטופים. הנאשם דיווח על התכנית לפעיל
נוסף שחשכים להעמיד לרשותו מי חמצן ואמצעים כימיים נוספים,
לצורך הכנת חגורות הנפץ של המחבלים המתאבדים. כמו כן דיווח
הנאשם על התכנית לאחיו בעזה, אשר לא התלהב מסיכויי הצלחתה.
התכנית סוכלה בשל מעצר הנאשם. (פרט האישום 27).

- בתחילת חודש מרץ 2003 או בסמוך לכך, תכנן הנאשם ביחד עם
חבר נוסף פיגוע התאבדות כפול, שבמסגרתו יתפוצצו אחד המחבלים
המתאבדים במקום הומה אדם – ומחבל נוסף יבצע פיגוע התאבדות
במכונית תופת בסמיכות למקום, שבו אמורה היתה הממשלה
להתכנס בעקבות הפיגוע. המזימה סוכלה, בשל מעצר הנאשם וחברו
(פרט האישום 29).

- בתחילת חודש מרץ 2003 או בסמוך לכך, תכננו הנאשם וחבריו פיגוע
התאבדות בתוך אוטובוס הומה נוסעים בישראל, כאשר בסמוך
למקום הפיגוע ממתין מחבל מתאבד נוסף הלבוש בבגדי כוחות
ההצלה – ומיוזיד במטען חבלה של 25 קילוגרם. אין צריך לומר כי
כוונת הפיגוע המשולב היתה להגדיל ככל הניתן את כמות הנפגעים ;
המזימה לא יצאה לפועל בשל מעצר הנאשם וחברו על ידי כוחות
הביטחון הישראלי. (פרט האישום 29).

<u>טיעוני הצדדים :</u>

התביעה הצבאית ביקשה להדגיש כי הנאשם, הורשע על סמך הודאתו במעורבות
בשני פיגועים חמורים, שגרמו למותם של 19 אזרחים חפים מפשע - ולפציעתם
של עשרות נוספים. אין להכביר במילים על חומרת המעשים, שכתוצאה מהם
נרצחו בדם קר חפים מפשע. הנאשם לא הביע כל חרטה על מעשיו- גם כאשר
ניצב בפנינו, עדיין הוא תומך במעשיו הנפשעים. לפיכך, ביקשה התביעה הצבאית
לגזור על הנאשם את העונש של מאסר עולם מצטבר בגין כל אחד מהנרצחים
שנקטלו בשני הפיגועים, שני מאסרי עולם מצטרפים בגין הפציעות שנגרמו בשני
הפיגועים הקשים- וכן עונש הולם בגין יתר העבירות בהן הורשע הנאשם.

הסנגור העדיף שלא לפרט את עמדתו לעניין ״העונש ההולם״, שלו ראוי הנאשם.
לפיכך, ביקש כי נסתפק במה שהנאשם יאמר בפנינו.

הנאשם בדבריו האחרון הודה בכך שהרג ישראליים, אך לגרסתו הוא איננו אשם,
כי זכותו לנהוג כך, שכן מעשיו הם תגובה לעשרות האלפים של פלסטינאים
שהרגו הישראלים ללא סיבה, וכל עוד תמשיך ישראל בדרך הכיבוש לא ישתפר
המצב. הנאשם מצפה לשלום, אך במצב הקיים הוא חייב להשיב מלחמה.

- 4 -

תיק מס׳ : 2271/04　　　　　　　　　תאריך : 28/9/06

הנאשם מצפה ליום בו הוא ישב על כס השיפוט וישפוט את הישראלים בגין
הפשעים שהם ביצעו כנגד העם הפלשתינאי. גם בנו של הנאשם ימשיך בדרכו עד
להשגת השלום.

נציין כי בעת הקראת גזר הדין סירב הנאשם לעמוד, ולכן הוצא מן האולם.
לאחר הפסקה הוחזר הנאשם לאולם, לאחר שהביע נכונות לעמוד בעת הקראת
גזר הדין.

### השיקולים לעונש

המעשים בהם הורשע הנאשם נוראיים, ואין צורך להרחיב בדברים על חומרתם.
הנאשם היה שותף מלא ועיקרי לשליחת שני מחבלים מתאבדים שביצעו
פיגועי התאבדות בישראל. הפיגוע הראשון התרחש ביום 19/01/04 באוטובוס
אגד שנסע בקו 19 בירושלים. והפיגוע השני התרחש ביום 22/02/04 באוטובוס
אגד שנסע בקו 14 בירושלים. בשני הפיגועים הקשים נהרגו 19 אנשים, ועשרות
רבות של נוספים נפגעו בדרגות שונות של פציעה.

עקרון קדושת החיים והאיסור של "לא תרצח" הם ערכים אוניברסאלי, שכל בן
תרבות אמור לכבדו. כבן אנוש היה גם הנאשם אמור לכבד ערכים מקודשים
אלה, אך במקום זאת הוא העדיף להשתתף בעצמו בפיגועי טרור שגרמו
לשפיכות דמים ורצח לשמו. דמם של 19 הנרצחים, שחייהם קופדו על ידי
הנאשם וחבריו על לא עוול בכפם, זועק אלינו מן האדמה - ושום עונש בעולם
שיוטל על הנאשם בגין מעשיו, אינו מהווה כפרה לשפיכות הדמים.

לענישה יש כידוע מטרות שונות כאשר מחד היא חייבת להרתיע אחרים, ולהגן
על החברה בפני מעלליו של הנאשם בעתיד - ומנגד היא אמורה לקחת בחשבון
את הנסיבות האישיות של הנאשם- והצורך לשקמו ולהשיבו בסופו של יום
למסגרת נורמטיבית ובונה. בדרך כלל, "האיזון" בין המטרות השונות של
הענישה אינו פשוט וקל, אולם במקרה נשוא הדיון, פטורים אנו מהתלבטות
בסוגיה שכן השיקולים שינחו אותנו במקרה זה הם רק הגמול לנאשם על מעשיו
הנפשעים, הרתעת הרבים השוקלים ללכת בדרכו, והצורך להגן על הציבור מפני
המשך מעלליו של הנאשם - ולהרחיקו לצמיתות מאחורי סורג ובריח.

הנאשם מנסה להציג את עצמו כמי שכל מעשיו נעשו כדי להגן על העם
הפלסטיני, בפני מעשי הישראלים שרוצחים גברים נשים וטף ללא רחם. אין לנו
כל כוונה להיכנס לוויכוח אידיאולוגי או פוליטי עם הנאשם, שלגרסתנו הוא
רוצח שפל שאיבד כל צלם אנוש- ואינו מכיר בשום מגבלות של חברה בת
תרבות. לגבי רוצח מסוג זה אנו מוצאים במקורות כי אסור לחוס עליו - וגם
כאשר הוא נמלט מאימת הדין ונאחז בקרנות המזבח, "מעם מזבחי תיקחהו",
כדי שישא בעונשו.

המעשים שלהם היה הנאשם שותף הם נוראיים ואכזריים, וניתנה האמת
להיאמר כי גבולות הענישה מוגבלים - ואין בנמצא בידינו עונש מתאים ההולם
את חומרת מעשיו של הנאשם. עונשי מאסר עולם מצטברים יכולים אמנם
להביע את סלידתנו מהיקף ואכזריות הפעילות בה היה הנאשם מעורב, אולם
מטבע הדברים ימיו של האדם קצובים; ולכן בפועל אין הנאשם יכול לרצות
יותר ממאסר עולם אחד (גם אם הוטלו עליו עונשי מאסר עולם מצטברים).

- 5 -

P 2 : 322

תאריך : 28/9/06                          תיק מס׳ : 2271/04

למרות הסלידה הקשה שלנו מהנאשם וממעשיו, מובן שאנו מתפקדים במגבלות
שלטון החוק; וחזקה עלינו מצוותו של ביהמ״ש הצבאי לערעורים כי ״העונש
ההולך״ לרוצח הוא מאסר עולם מצוטבר בגין כל אדם שרצח, מאסר עולם בגין
ניסיון לגרימת מוות שהסתיים בפציעה חמורה, וכן עונש נוסף מצוטבר בגין יתר
העבירות שבהן הורשע. במקרה נשוא הדיון מעשיו של הנאשם הם כאמור
חמורים ואכזריים, ולכן קיבלנו באופן מלא את עמדת התביעה הצבאית בעניין
העונש שראוי לגזור על הנאשם.

<u>סוף דבר</u>

החלטנו לגזור על הנאשם את העונשים הבאים :

א.  בגין גרימת מותו בכוונה של **מר אברהם בלחסן** ז״ל - מאסר עולם.

ב.  בגין גרימת מותו בכוונה של **גב׳ חנה בונדר** ז״ל - מאסר עולם.

ג.  בגין גרימת מותו בכוונה של **גב׳ ענת דרום** ז״ל - מאסר עולם.

ד.  בגין גרימת מותו בכוונה של **מר יחזקאל גולדברג** ז״ל - מאסר עולם.

ה.  בגין גרימת מותו בכוונה של **מר ולדי צדיק מנברה** ז״ל - מאסר עולם.

ו.  בגין גרימת מותו בכוונה של **מר ויורל אוקטביא פלורסקו** ז״ל - מאסר עולם.

ז.  בגין גרימת מותו בכוונה של **גב׳ רוזה בונה** ז״ל - מאסר עולם.

ח.  בגין גרימת מותו בכוונה של **גב׳ דנה איטח** ז״ל - מאסר עולם.

ט.  בגין גרימת מותו בכוונה של **מר רומן חונדיאשווילי** ז״ל - מאסר עולם.

י.  בגין גרימת מותו בכוונה של **מר אלי צפורה** ז״ל - מאסר עולם.

יא. בגין גרימת מותו בכוונה של **גב׳ נטליה גמריל** ז״ל - מאסר עולם.

יב. בגין גרימת מותו בכוונה של **גב׳ יפה בן שימול** ז״ל - מאסר עולם.

יג. בגין גרימת מותו בכוונה של **מר יובל אזגה** ז״ל - מאסר עולם.

יד. בגין גרימת מותו בכוונה של **מר רחמים דוגה** ז״ל - מאסר עולם.

טו. בגין גרימת מותו בכוונה של **מר יהודה חיים** ז״ל - מאסר עולם.

טז. בגין גרימת מותו בכוונה של **מר אילן אבישדריס** ז״ל- מאסר עולם.

יז. בגין גרימת מותו בכוונה של **מר בניה יונתן צוקרמן** ז״ל - מאסר עולם.

יח. בגין גרימת מותו בכוונה של **מר אזולאי ליאור** ז״ל - מאסר עולם.

יט. בגין גרימת מותו בכוונה של **מר נתנאל חבשוש** ז״ל - מאסר עולם.

כ.  בגין פציעתם של עשרות אנשים בפיגוע מיום 29/01/04 - מאסר עולם.

כא. בגין פציעתם של עשרות אנשים בפיגוע מיום 22/02/04 - מאסר עולם.

כב. בגין יתר פרטי האישום בהם הורשע הנאשם - 15 שנות מאסר בפועל.

כל העונשים ירוצו במצוטבר.

**זכות ערעור תוך 30 יום ממסירת הנימוקים לצדדים.**

**מזכירות ביהמ״ש תעביר העתק נימוקי גזר הדין לצדדים.**

ניתן והודע היום, 28/9/06, שלא במעמד הצדדים.

שופט          אב״ד          שופט

- 6 -