# EXHIBIT A.298



PLAINTIFF'S
EXHIBIT
298

Date: 25 Elul 5766                                        Case No.: 2305/04
   September 18, 2006

### The Judea Military Court          *Verdict*

**Before the Honorable President of the Court:**    **Major Yair Tirosh**
                                            **Judge:**    **Major Dalia**
                                                         **Kaufman**
                                            **Judge:**    **Major Amir Dahan**

**The military prosecution**
(by Captain Sagiv Lichtman)

- v. -

**The Defendant: Ahmed Mohamed Ahmed Saad, Identity No. 911744878 / IPS**
(by Counsel Adv. Osama Ouda)

**Shift supervisor: Corporal Yulia Gelman**

---

## Verdict

### Honorable Judge Major Amir Dahan

A.   The Defendant, Ahmed Mohamed Ahmed Saad, Identity No. 911744878 of Douha, was prosecuted in an indictment in Case 2305/04 that was filed with this Court on May 23, 2004.

B.   **The evidential meaning of the procedural arrangements between the parties**

1.   According to the procedural arrangements between the parties, the Court will consider the statements PW/3,9 to be proven facts, but a conviction according to them will require additional evidence of corroborative evidence type.

     As is common practice concerning statements in writing that have been filed in contradiction to oral testimony of individuals who are accomplices to or are involved in an offense in an offense deal, an increased level of additional evidence of corroborating evidence will be required.

2.   According to the procedural arrangements between the parties, the Court will consider the rest of the material in the statements of the Defendant to be proven facts, without a need for additional evidence, and the statements of the Defendant will be considered as statements that have been given freely and voluntarily.

[Stamp] P2: 324

1

3. In counts 15-22, there is consent and the Defendant admitted therein the offense of aiding in causing death, and in count 23 aiding in an attempt to cause death.

4. In counts 3-14, the parties agreed concerning the correctness of all of the factual details of the event, but not concerning the mental foundation that is required for convicting the Defendant of the offenses of aiding in causing death.

5. The prosecution has informed us that it will not assert these counts but rather aiding in causing death.

6. Concerning counts 1, 2, 24, the Defendant asserts his not guilty plea.

[Stamp] P2: 324 [continued]

Date: 25 Elul 5766                                                          Case No.: 2305/04
    September 18, 2006

7.   I have determined the types of additional evidence according to evidence laws that would
     be used if the statements had been heard before us as actual testimony and had the material
     been filed pursuant to Sections 10 A, 54 (A) A or 12 of the Evidence Ordinance (New
     Version), 5731-1971. This is all within the context of the giver of the statement to the
     Defendant and the legal proceeding against him.

**C.**   **Establishing factual findings and their legal significance**

**1.**   **First count of the indictment: (possession of explosive material to a total weight of 4.5
     kg on two occasions)**

    **Discussion:**

    **Key evidence:**   The key evidence is the statement of the Defendant P/2 from page 1, line
        20 onward, where the Defendant describes how Ali Abu Halail brought the
        explosives, how he elaborated his knowledge concerning its composition
        and properties and how that Defendant [sic] in his home and started to try
        it.

    **Additional evidence:**   According to the consent of the parties, the statements were filed as
        consent to their content.

    **The result is that I suggest to my colleague to convict the Defendant of this count.**

**2.**   **Second count: (conspiring to make a bomb with Ali Abu Halail and Hatam Alaraj)**

    **Key evidence:**   The key evidence is the statement of the defendant P/16 and P/2. This
        statement was filed, as set forth, with full consent, without any need for
        additional evidence.

The Defendant explains in his statement P/6 page 5 from line 26 how he conspired with
others to make explosives for the purpose of attacks on IDF soldiers; the mental foundation
is confirmed by an inspection of the statement, in which the Defendant declares the
conspiracy with additional people and his extensive knowledge of bomb making, all this
being aimed against IDF soldiers in the Area.

                                   [Stamp] P2: 325

In addition, the Defendant adds in P/2 page 1 line 6 onward how the threesome learned to make explosive devices, how it convened and how it planned, while there was a clear mental foundation of knowledge and initiative in planning the future attacks using the bombs that would be made.

**The result is that I suggest to my colleague to convict the defendant of this count.**

3.   **Third to fourteenth counts of the indictment (suicide attack on Line 19)**

**The contentions of the prosecution:**

Due to the statements of the Defendant, which are supported by the statements of Ali Abu Halail, all of which were filed with consent to their content, it is not possible that the Defendant did not know of the purpose of the acetone and the attack and therefore he demonstrates a mental foundation as required.

[Stamp] P2: 325 [continued]

4

Date: 25 Elul 5766                                        Case No.: 2305/04
     September 18, 2006

**Contentions of the defense:**

The Defendant carried out that which has been attributed to him in the indictment without knowledge that his acts constituted aiding in a suicide attack and did not know that the quantity of acetone that he had purchased and his other acts set forth in the indictment may be used for an attack.

The defense counsel focused his contentions on an attempt to convince the Court that the excerpts from the statements that were filed consensually and showing the knowledge and intent of the Defendant relate to the second attack.

**Discussion:**

Indeed, the prosecution is right. The statements of the Defendant and the statements of Abu Halail leave no room for any doubt. I shall cite some of them on the matter of the order of the things and I shall show that there is no doubt that the Defendant knew that he was providing material that was vital for preparing a large quantity of explosives for the purpose of murderous attacks.

Before I go into detail with the intent of examining the contentions of the parties, I shall state the meaning of consensual filing of written evidence.

Consensual filing of written evidence is treated as though the witnesses attested that which is written in their statements.

I must already emphasize now that the interpretation by which detrimental parts of the statements must be chosen instead of relating to beneficial ones is not consistent with the spirit of criminal law evidence rules that are used in it and in my opinion does not constitute correct interpretation of the rule in the Appellate Court.

Facts are facts and testimony is testimony and consent does not mean choosing and discriminating from among the facts based on the question of which party they serve.

**The statements of the Defendant**:

P/2 page 2 line 12, a citation that does not require an explanation:

[Stamp] P2: 326

5

*Even I alone had made small quantities of hydrogen peroxide and acetone, it would be enough to make large quantities of explosives afterward"*

On page 3 of P/2, the Defendant states his great expertise in the secret of making explosives in large quantities and of different types, including chemical formulas and a professional evaluation of types of high explosives.

On P/ 4 line 11, intent and knowledge become, means and the Defendant makes genuine laboratory infrastructures to start making sophisticated explosives in quantities.

[Stamp] P2: 326 [continued]

Date: 25 Elul 5766                                      Case No.: 2305/04
     September 18, 2006

In P/4 page 7 line 20, the Defendant states the following:

> *"Q. Tell me what Ali Abu Halail told you before the first attack that occurred in Jerusalem.*
>
> *A. Ali Abu Halail told me that he wanted to give the gallon of hydrogen peroxide to his collaborator whose name he did not tell me ... and on the day on which I brought to him the first gallon of acetone that I bought from Mohamed Dandis, Ali took the two gallons and gave them to a collaborator of his and Ali told me that it is better for it to be kept by his colleague and from that he was planning to prepare explosives for an explosive device.*
>
> *Q. Did you know what exactly they were going to do with the explosives?*
>
> *A. Of course I knew. I knew that they were going to take explosives and carry out an attack; I did not know exactly that it was going to be a suicide attack, this does not matter to me....*
>
> *Q. And if you had known that it was going to be a suicide attack, then what?*
>
> *A. Then it is better, there is no difference and there is no problem at all.*
>
> *Q. When you started this activity, did you know what you were going to do?*
>
> *A. Yes, I knew and understood everything, there is no problem.*
>
> *Q. Okay, what was behind the first attack in Jerusalem ...."*

This statement clearly shows that it deals with **the first attack** and the mental foundation of the people before it, and it shall be emphasized that his knowledge of the results of death are enough, regardless of whether the fuse would be human or not. The Defendant came and shuffled the cards, without caring what type of attack he would be aiding.

The statements of the Defendant are further strengthened by P/1 page 7 line 7, in which the Defendant describes how back in 2003 Ali Abu Halail told him about an order that required him and Makdad to execute suicide attacks.

[Stamp] P2: 327

7

We shall point out that these statements were filed without a need for additional evidence as evidence of the veracity of their content.

The defense counsel relies in his summations on the statements of the Defendant in Hebrew and in Arabic, which reveal that the Defendant did not know (or did not know exactly) what the acetone that he had brought to Abu Halail would be used for.

This interpretation cannot hold, as the Defendant was involved together with Ali Abu Halail in the preparation of explosives using acetone in quantities and with knowledge, while acting in obedience to the instructions of Ahmed Mugrabi to execute suicide attacks.

Support from the statements of Ali Abu Halail

Further support of the fact that the Defendant had full mental foundations to help cause intentional death in the first attack set forth in counts 3-14 appears in the testimonies of Ali Abu Halail, P/20 and P/19.

In P/20 that was filed with full consent to its content, Abu Halail says as follows (p. 1 line 13-18) "I established a military cell that consisted of 1. I am 2. Ahmed Ouda aged 18, a resident of Douha, and today a detainee, I talked about him, he was a friend of mine and my assistant in activity and helped me make explosive devices and was a partner in all of my plans and Ahmed … he has books and material from which explosives are made".

P/20 page 2 line 17

*Q. Okay. Do you have something to add concerning the first suicide attack? That you did in Jerusalem? … …*

*Did Ahmed Ouda buy something before the attack.*

*Yes, he bought 20 liters of acetone for NIS 400 from Mohamed Dandis in the Douha area. He has a store before Deheyshe Refugee Camp.*

Date: 25 Elul 5766                                        Case No.: 2305/04
     September 18, 2006

*Why did he buy acetone?*

*A. Because I requested it from him for a suicide attack*

*Q. And who is the suicide terrorist who performed the second suicide attack...*

The foregoing indicates in aggregate that the Defendant was well aware before the first attack (with the suicide terrorist Ali Ja'ara – Line 19) what the acetone that he had purchased before and after the attack was intended for and anticipated the deadly outcome and the massacre that could have resulted from his acts.

Therefore, I suggest to my colleague to convict the Defendant of aiding in causing intentional death (counts 3-13 of the indictment) and aiding in an attempt to cause intentional death, count 14.

### Counts 15-23 (suicide attack on line 14)

The Defendant admitted the facts of these counts and there is an agreement as set forth in Section B3 of this verdict.

Therefore, I suggest to my colleague to convict the defendant of counts 15-23 of the Indictment, of aiding in causing intentional death (counts 15-22) and aiding in an attempt to cause intentional death, count 23.

### Count 24: (conspiring with Na'il Masalma to carry out a suicide attack)

Key evidence: In his statement P/16 page 1, lines 21-28, the Defendant talks about the case of charge No. 24 in full. He describes the conspiracy that was interrupted by his arrest, in the framework of which he was supposed to prepare an explosive device with 12 kg of explosives in order for Na'il Masalha [Translator's note: as written] to carry out an attack using it.

The statements of the Defendant provide both the factual foundation of the conspiracy and the mental foundation, including knowledge and anticipation of the outcome.

Because the parties have agreed to file the statement of the Defendant as evidence for the veracity of its content without qualification, I suggest to my colleagues to convict the Defendant of this count.

[Stamp] P2: 328

**Results of the findings**

I suggest to my colleagues to convict the Defendant of the following offenses:

1. **Aiding in causing intentional death** – an offense pursuant to Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 of the Security Provisions Order (Judea and Samaria) (No. 225), 5728-1968. **(19 offenses)**

2. **Aiding in an attempt to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 14, 19, 20 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968. **(2 offenses)**

3. **Conspiring to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 21, 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968. **(one offense)**

[Stamp] P2: 328 [continued]

10

Date: 25 Elul 5766                                                    Case No.: 2305/04
　　　September 18, 2006

4. **Conspiring to make a bomb** – an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970. **(one offense)**

5. **Possession of explosives** 1968 Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970. **(one offense)**.

### Honorable Judge Major Yair Tirosh

I agree.

### Honorable Judge Major Dalia Kaufman

I agree.

### Conclusion

Decreed as delivered by Judge Dahan.

Due to a technical problem, the arguments of the decision were forwarded to the parties belatedly.

**Handed down this day, September 18, 2006, in chambers.**

| _____ | _____ | _____ |
| [Signature] | [Signature] | [Signature] |
| **Judge** | **President of the Court** | **Judge** |

[Stamp] P2: 329

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 324-329.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 324-329.

Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014


Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

<div dir="rtl">

תיק מס׳ : 2305/04     תאריך :כ״ה אלול, תשס״ו
18 ספטמבר, 2006

## בית המשפט הצבאי יהודה

בפני כב׳ האב״ד: רס״ן יאיר תירוש
השופטת: רס״ן דליה קאופמן
השופט: רס״ן אמיר דהאן

התביעה הצבאית
(באמצעות סרן שגיב ליכטמן)

נגד

הנאשם: אחמד מוחמד אחמד סעד ת.ז. 911744878 / שב״ס
(באמצעות ב״כ עו״ד אוסאמה עודה)

רמ״שית: רב״ט יוליה גלמן

---

## הכרעת דין

## כב׳ השופט רס״ן אמיר דהאן

א . הנאשם, אחמד מחמד אחמד סעד ת.ז 911744878 מדוחא, הועמד
לדין בכתב אישום בתיק 2305/04 שהוגש ביום 23/5/04 לבית משפט זה.

ב. המשמעות הראייתית של ההסדרים הדיוניים בין הצדדים

1. ע״פ ההסדרים הדיוניים בין הצדדים יראה בית המשפט באמרות עת/3,9
עובדות שהוכחו, אך הרשעה על פיהן תדרוש תוספת ראייתית מאמתת מסוג
"דבר לחיזוק".

כמקובל לעניין אמרות בכתב שהוגשו בסתירה לעדות בע״פ או אמרות בכתב
ובע״פ של שותפים לעבירה או מעורבים ב״עסקת עבירה״ תידרש תוספת
ראייתית מוגברת מסוג "דבר לחיזוק".

2. ע״פ ההסדרים הדיוניים בין הצדדים יראה בית המשפט בשאר החומר
באמרות הנאשם עובדות שהוכחו, ללא צורך בתוספת ראייתית ויראו
באמרות הנאשם אמרות שניתנו באופן חופשי ומרצון.

3. בפרטי אישום 15-22 ישנה הסכמה והנאשם הודה בהם בעבירת סיוע לגרימת
מוות ובפרט 23 סיוע לנסיון לגרימת מוות.

4. בפרטי האישום 3-14 הסכימו הצדדים על נכונותם של כל הפרטים
העובדתיים של האירוע אך לא ליסוד הנפשי הנדרש להרשיע את הנאשם
בעבירות של סיוע לגרימת מוות.

5. התביעה הודיעה לנו כי לא תעמוד בפרטים אלה אלא על סיוע לגרימת מוות.

6. לגבי פרטי אישום 1,2,24 עומד הנאשם בכפירתו.

</div>

-1-

תיק מס׳: 2305/04                                   תאריך: כ״ה אלול, תשס״ו
                                                    18 ספטמבר, 2006

7. את סוגי התוספות הראייתיות קבעתי על פי דיני הראיות שהיו נוהגים אילו
נשמעו האמרות בפנינו כעדויות ממש והחומר היה מוגש לפי סעיפים 10א,
54(א) א, או 12 לפקודת הראיות (נוסח חדש) התשל״א 1971. הכל לפי
החקשר של נותן האמרה לאשם ולהליך המשפטי נגדו.

<u>ג.קביעת ממצאים עובדתיים- ומשמעותם המשפטית</u>

<u>1. פרט אישום ראשון:</u> (החזקת חומר נפיץ במשקל כולל של 4.5 ק״ג בשתי
הזדמנויות)

דיון:

**ראייה מרכזית:** הראייה המרכזית היא אמרת הנאשם ת/2 החל מדף 1 עמי 20
ואילך שם מתאר הנאשם כיצד הביא עלי אבו הלאיל את
חומר הנפץ כיצד פירק את ידיעתו בחרכבו ותכונותיו וכיצד
אותו הנאשם בביתו וחל לנסותו.

**תוספת ראייתית:** ע״פ הסכמת הצדדים הוגשו האמרות כהסכמה לתוכנן.

**התוצאה** היא שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה.

<u>2. פרט אישום שני:</u> (קשירת קשר לייצור פצצה עם עלי אבו הלאיל וחאתם
אלערג׳)

**ראייה מרכזית:** הראייה המרכזית היא אמרת הנאשם ת/6/ל- ת/2 אמרה זו
הוגשה כאמור בהסכמה מלאה ללא כל צורך בתוספת ראייתית.
הנאשם מסביר באמרתו ת/6 עמי 5 החל משורה 26 איך קשר עם אחרים להכין
חומרי נפץ לצורך פיגועים בחיילי צה״ל, היסוד הנפשי מתאשר בעיון באמרה
שם מצהיר הנאשם על הקשר עם אנשים נוספים ועל הידע הנרחב שלו
בעשיית פצצות כשהכל מכוון נגד חיילי צה״ל באזור.

כן מוסיף הנאשם בת/2 עמי 1 שורה 6 ואילך כיצד למדה השלישייה להכין
מטענים,כיצד התכנסה וכיצד תכננה והכל תוך קיום יסוד נפשי ברור
של ידיעה ויוזמה לתכנן את הפיגועים לעתיד לבוא באמצעות הפצצות שייווצרו.

**התוצאה** היא שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה.

<u>3 .פרט אישום שלישי – ארבעה עשר (פיגוע התאבדות בקו 19)</u>

טענות התביעה:

עקב אמרותיו של הנאשם הנתמכות באמרות עלי אבו הלאיל אשר כולן הוגשו
תוך הסכמה לתוכנן ,לא יתכן כי הנאשם לא ידע כי מטרת האצטון והפיגוע ולכן
הוא מקיים יסוד נפשי כנדרש.

-2-

P 2: 325

תיק מס': 2305/04

תאריך :כ"ה אלול, תשס"ו
18 ספטמבר, 2006

## טענות ההגנה :

הנאשם ביצע את המיוחס לו בכתב האישום ללא ידיעה שמעשיו
מהווים סיוע לפגיעה התאבדות ולא ידע כי כמות האצטון אותו רכש ושאר
מעשיו המפורטים בכתב האישום עלולה לשמש לפיגוע .

את עיקר טענותיו מיקד הסניגור בניסיון לשכנע את בית המשפט כי קטעי
האמרות שהוגשו בהסכמה והמראים את ידיעתו וכוונתו של הנאשם מתייחסים
לפיגוע השני.

## דיון :

אכן הדין עם התביעה  אמרותיו של הנאשם ואמרות עלי אבו הלאיל אין
מותירות מקום לשום ספק . אביא מעט מהן לעניין סדר הדברים וארא כי לא
נותר ספק שהנאשם ידע שהוא מספק חומר חיוני להכנת נפצים בכמות גדולה
לשם פיגועים רצחניים.

לפני שארד לפרטים מתוך מגמה לבחון את טענות הצדדים אציין משמעותה של
הגשת ראיות בכתב בהסכמה.

הגשת ראיות בכתב בהסכמה משמעותה כאילו העידו העדים  את הכתוב
באמרותיהם .

אדגיש כבר כעת כי הפרשנות לפיה יש לברור מתוך האמרות את החובה ולא
להתייחס לזכות אינה תואמת את רוח המשפט הפלילי ודיני הראיות הנהוגים בו
ואף אינה מהווה להערכתי פרשנות נכונה של ההלכה בבית המשפט לערעורים.

עובדות הן עובדות ועדות היא עדות  ואין משמעותה של  הסכמה ברירה ואפליה
של עובדות זו מזו על רקע השאלה איזה צד הן משרתות.

## אמרות הנאשם :

<u>ת/2  עמ' 2 שורה 12</u> ציטוט שאנו דורש הסבר :

*"גם אני לבדי ייצרתי כמויות קטנות של מי חמצן ואצטון די לעשות אח"כ חומר נפץ
בכמויות גדולות "*

<u>בעמ' 3 לת/2</u> פרש הנאשם  מומחיות גדולה בסוד יצור חומרי הנפץ
בכמויות גדולות ומסווגים שונים לרבות נוסחאות כימיות והערכה מקצועית
לסוגים של חומר נפץ מרסק .

<u>בת/4 עמ' 11</u> הופכים הכוונה והידיעה לאמצעים והנאשם יוצר לו תשתית
מעבדתית של ממש להתחיל ולייצר חומרי נפץ מתוחכמים בכמויות.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49

-3-

תיק מס׳ : 2305/04

תאריך :כ״ה אלול, תשס״ו
18 ספטמבר,
2006

בת/4 עמ׳ 7 שורה 20 מפרט הנאשם כך :

‏"ש. ספר לי מה שעלי אבו חלאיל סיפר לך לפני הפיגוע הראשון שהיה בירושלים ?
ת.עלי אבו חלאיל סיפר לי שהוא רוצה לתת את זה לחבר שלו שאת שמו לא אמר לי את
גלון המי חמצן .........ובים שבו הבאתי את גלון האצטון הראשון שקניתי ממחמד
דנדיס לקח עלי את שני הבלונים ונתן אותם לחבר שלו ועלי סיפר לי שיותר טוב שזה אצל
חבר שלו ומזה הוא מתכנן להכין חומר נפץ למטעת תבלה
ש.האם אתה יודע למה בדיוק הולכים לפשות עם חומר הנפץ
ת.בכית שידיעתי ידעתי שעם החומר נפץ הזה הולכים לפשות פיגוע זה שלא ידעתי בדיוק
שזה הולך לפגוע התאבדות זה לא משה לי ..........
ש.ואם היית יודע שזה הולך לפיגוע התאבדות אז מה ?
ת.אני יותר טוב אין הבדל ואין בעייה בכלל
ש.כשנכנסת לפעילות היו הבנת מה אתה הולך לעשות ?
ת.כן ידעתי והבנתי הכל אין בעייה
ש.בסדר מה היה אחרי הפיגוע הראשון ב״ים .........."

העולה מאמרה זו ברור היטב , ענייה בפיגוע הראשון וביסוד הנפשי של הנאשם
לפנין, וידוגש, די בידיעתו על תוצאת המוות ואין זה משנה אם המרתעום יהיה
אנושי או לא בא הנאשם וטורף את הקלפים,לא אכפת לו לאיזה סוג של פיגוע
הוא מעניק סיוע.

אמרות הנאשם מתחזקות עוד ב -ת/1 עמ׳ 7 שורה 7 שם מתאר הנאשם כיצד עוד
באמצע 2003 סיפר לו עלי אבו חלאיל על פקודה המחייבת אותו ואת מקדאד
להוציא לפועל פיגועי התאבדות.
נזכיר כי אמרות אלה הוגשו ללא צורך בתוספת ראייתית כראייה לאמימות תוכנן.

הסנגור מסתמך בסיכומיו על אמרות הנאשם בעברית ובערבית מהן עולה כי הנאשם
לא ידע (או לא ידע במדויק) למה ישמש האצטון שהביא לעלי אבו חלאיל.

פירוש זה אינו יכול לעמוד , הואיל והנאשם היה מעורב יחד עם עלי אבו חלאיל
בהכנת חומרי נפץ מאצטון בכמויות וידע כשהוא פועל להוראת אחמד מוגרבי
להוציא פיגועי התאבדות.

### חיזוקים מאמרות עלי אבו הלאיל

חיזוק נוסף לעובדה שלנאשם היה יסוד נפשי מלא לסיוע לגרימת מוות בכוונה
לפיגוע הראשון האמור בפרטי אישום 14-3 מופיע בעדויות עלי אבו הלאיל
ת/20 ו- ת/19.

ב-ת/20 שהוגש בהסכמה מלאחי לתוכנו אומר אבו הלאיל כך (עמ׳ 1 שורה 18-13)
‏"אני הקמתי חוליה צבאית ובה היו 1 .אני 2 .אחמד עדה בן 18 תושב דוחח היום
עצור סיפרתי עליו הוא חבר שלי והעזור לי ליזצר מטעגים והיה
שותף בכל התכנונים שלי ואחמד....... אצלו ספרים וחומר שממנו עושים חומר נפץ".

### ת/20עמ׳ 2 שורה 17

‏ש. בסדר יש לך מה להוסיף בקשר לפיגועה ההתאבדות הראשון ?
שעשיתם בירושלים ? ..................
האם אחמד עדה קנה משהו לפני הפיגוע ?
כן הוא קנה 20 ליטר אצטון ב -400 ₪ ממחמד דנדיס באזור דוחא יש לו חנות
לפני מ.פ
דהיישה

-4-

<div dir="rtl">

תיק מס׳: 2305/04          תאריך :כ״ה אלול, תשס״ו
18 ספטמבר, 2006

למה הוא קנה אצלו ?       1
ת. כי אני ביקשתי ממנו את זה לפיגוע התאבדות     2
ש .ומי המתאבד שביצע את פיגוע ההתאבדות השני .........   3

העולה מן המקובץ הוא כי הנאשם ידע היטב לפני הפיגוע הראשון (עם המתאבד עלי   4
ג׳ערה – קו 19) למה מיועד האצטון שקנה לפני הפיגוע ולאחריו וצפה את תוצאת   5
המוות והטבע העלולה לנבוע ממעשיו.   6
   7

לפיכך, אני מציע לחברי להרשיע את הנאשם בסיוע לגרימת מוות בכוונה (פרטי   8
אישום 13-3) ובסיוע לניסיון לגרימת מוות בכוונה פרט אישום 14.   9
   10
   11
   12

### פרטי אישום 23-15 (פיגוע התאבדות בקו 14)   13
   14
בעובדות פרטי אישום אלה הודה הנאשם וישנה הסכמה ע״פ האמור בסעיף ב 3   15
להכרעת דין זו.   16
   17
אשר על כן, אני מציע לחברי להרשיע את הנאשם בפרטי אישום 23-15 בסיוע   18
לגרימת מוות בכוונה (פרטי אישום 22-15) ובסיוע לניסיון לגרימת מוות בכוונה   19
פרט אישום 23.   20
   21

### פרט אישום 24 : (קשירת קשר עם נאיל מסאלמה לביצוע פיגוע התאבדות)   22
   23
ראיה מרכזית: באמרתו ת/6 עמ׳ 1 שורות 28-21 מספר הנאשם את פרשת האישום   24
מס׳ 24 במלואה , הוא מתאר את הקשר שנקטע במעצרו ובמסגרתו היה אמור להכין   25
מטען של 12 ק״ג חומר נפץ על מנת שנאיל מסאלמה יבצע בעזרתו פיגוע.   26
בדברי הנאשם טמון גם היסוד העובדתי של הקשר וגם היסוד הנפשי לרבות ידיעת   27
התוצאה וצפייתה.   28
   29
כיוון שהצדדים הסכימו להגיש את אמרת הנאשם כראיה לאמיתות תוכנה וללא   30
הסתייגות הרי שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה.   31
   32
   33

### העולה מן המקובץ   34
   35
אני מציע לחבריי להרשיע את הנאשם בעבירות הבאות:   36
   37
   38
1. **סיוע לגרימת מוות בכוונה** – עבירה לפי סע׳ 51 לצו בדבר הוראות ביטחון (יהודה   39
ושומרון) (מס׳ 378), התש״ל – 1970 ולפי סעיף 14 לצו בדבר הוראות ביטחון   40
(יהודה והשומרון) (מס׳ 225), תשכ״ח- 1968. **(19 עבירות)**   41
   42
2. **סיוע לניסיון גרימת מוות בכוונה** – עבירה לפי סע׳ 51 לצו בדבר הוראות ביטחון   43
(יהודה והשומרון) (מס׳ 378), התש״ל – 1970 ולפי סעיפים 14,19,20 לצו בדבר   44
כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח – 1968.  (2   45
עבירות)   46
   47
3. **קשירת קשר לגרימת מוות בכוונה** – עבירה לפי סע׳ 51 לצו בדבר הוראות ביטחון   48
(יהודה ושומרון) (מס׳ 378), התש״ל – 1970 ולפי סע׳ 21,22 לצו בדבר כללי   49
האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח- 1968. **(עבירה אחת)**   50
   51

-5-

</div>

<div dir="rtl">

תיק מס' 2305/04

תאריך: כ"ה אלול, תשס"ו
18 ספטמבר, 2006

4. **קשירת קשר לייצור פצצה** עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח – 1968 סעיף 53 (א)(3) לצו בדבר הוראות
ביטחון (יהודה ושומרון) (מס' 378), התש"ל – 1970.  (**עבירה אחת**)

5. **החזקת חומר נפיץ** 1968 סעיף 53 (א)(3) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), התש"ל – 1970.  (**עבירה אחת**)

<u>כב' השופט רס"ן יאיר תירוש</u>

אני מסכים.

<u>כב' השופטת רס"ן דליה קאופמן</u>

אני מסכימה.

<u>סוף דבר</u>

הוכרע כדעתו של השופט דהאן.

עקב בעיה טכנית הועברו נימוקי ההחלטה לצדדים באיחור.

ניתן היום, 18/09/06, בלשכה.

_____        _____        _____
      שופטת                     אב"ד                      שופט

</div>

-5-

P 2: 329