# EXHIBIT A.303


PLAINTIFF'S EXHIBIT 303

Date: 28 Shevat 5766
February 26, 2006

Case No.: 2306/04

## The Judea Military Court

**Before the Honorable Presiding Judge: Major Ronen Atzmon**
**Judge: Major Adrian Agasi**
**Judge: Major Menachem Lieberman**

**The Military Prosecution**
(Represented by Lieutenant Sagiv Lichtman)

- v. -

**The Defendant: Ali Mohamed Hamad Haliel, Identity No. 920629276/ Israel Prison Service**
(Represented by Adv. Adv. Araji)

---

### Verdict

### Judge Major Menachem Lieberman

Within a month, in the period from late January to early February 2004, two suicide attacks shocked the city of Jerusalem, in which 19 people were killed and about a hundred more were injured to varying degrees. We are required to pass verdict upon the Defendant, Ali Mohamed Hamash Abu-Haliel, and pronounce his degree of responsibility for these terrible acts.

On May 23, 2004, the Military Prosecution filed an indictment against the Defendant. The indictment consisted of 21 counts; 19 counts of causing intentional death and two counts of attempting to cause intentional death, in view of his part in the two suicide attacks, one on January 29, 2004 on [bus] line 19 and the other on February 22, 2004, on [bus] line 14.

The hearings in this case were deferred from reminder to reminder, but in the end these deferrals spared the Court a lot of time. On August 4, 2005, Counsel for the Defendant announced that his client admitted the facts of the indictment, but denied being guilty. On this day, dates were scheduled for filing summations: for the Prosecution until September 19, 2005, and for the Defense until October 20, 2005.

[Stamp] P 2: 334

On September 18, 2005, the Prosecution filed its summations as required, but for some reason Counsel for the Defendant abstained from filing his summations as he was required to do. In a hearing that was held on October 27, 2005, to examine whether the parties had filed their summations, Defense Counsel announced that he had not had time to file his summations, but asked for an extension to mid-November. The request of Defense Counsel was accepted, and the Deputy Presiding Judge approved an extension for the Defense Counsel until November 15, 2005. Unfortunately, when this date also passed, Defense Counsel did not file his summations, and two more telephone calls that the secretariat of the Court made to him, in which it was clarified to him that if he did not file his summations, it would be considered as his wavier of his right, did not help. To the time of writing this verdict, there are no summations, meaning that the Court will have to do the work of the Defense Counsel.

Despite the absence of summations by Defense Counsel as set forth, it may be understood from him that he does not believe that the Defendant should be acquitted of all charges, but that the Defendant must be convicted only as an accessory to the offense that was carried out rather than as a full accomplice. This is based on the fact that on the day on which Counsel for the Defendant admitted the facts of the indictment, he also[…]

-1-

[Stamp] P 2: 334 [continued]

Date: 28 Shevat 5766
February 26, 2006

Case No.: 2306/04

[…]said that their contention was that the fitting charge for the acts of the Defendant was as an accessory. In contrast, the Prosecution held at that time that the Defendant must be convicted as a full accomplice for all of the offenses.

It has been found that the dispute between the parties is even narrower than this. In accordance with that which has been set forth, despite the fact that the indictment contains 21 counts, there are only two events. In the wake of his actions in these two cases, the Prosecution attributed to him from the outset acting as a full accomplice, but in its summations the Prosecution partially agreed with the Defense Counsel, and asked to convict the Defendant of the first attack as an accessory and not as a full accomplice.

Notwithstanding that which was set forth in the first count of the indictment, to which the Defendant admitted, in early January 2004, the Defendant and others planned to carry out attacks that included suicide attacks – against Israeli targets. Later, the Defendant forwarded materials for preparing an explosive device to one of his accomplices. After another person prepared an explosive device with these materials, on January 29, 2004, Mohamed Ma'ali, a suicide terrorist, boarded bus line 19 in Jerusalem and blew himself up. As a result of this attack, 11 people were killed.

In view of that which has been set forth, and in accordance with the Defendant's confession and the position of the parties on the subject, I suggest to my colleagues to convict the Defendant for each of counts 1-11 as an accessory in causing intentional death, and for Section 12 as an accessory in an attempt to cause intentional death.

And what about the rest of the counts in the indictment, 13-21? As set forth, these counts are wholly based on one event. We shall examine the acts and criminal intentions of the Defendant and then pass a verdict concerning him.

According to the facts in the indictment, to which the Defendant admitted, on February 18, 2004, the Defendant along with another person received an amount of money in order to purchase materials for preparing an explosive bag for a suicide attack. At the same time, the Defendant received four liters of hydrogen peroxide and 40 liters of acetone from a "military" operative. On February 20, 2004, the Defendant, with two other people made, an explosive bag. Forty-eight hours later a suicide terrorist made use of this explosive bag in order to carry out the attack on [bus] line 14 in Jerusalem in which eight people were killed and dozens were injured. The question that is asked is whether by these acts, the Defendant enters the category of an accomplice in an offense, or whether it would be correct to classify him as an accessory only?

[Stamp] P 2: 335

The Military Prosecution in its summations also defined the question, and it is worded there: is a person who collected chemicals and made an explosive bag, knowing that the explosive bag would be used for carrying out a suicide attack, to be sentenced as an accessory or as an accomplice?

The Prosecution is attempting to rely on **Judea and Samaria Appeal 2377/04, the Military Prosecutor v. Rassam Hamamra**, in which it was ruled, allegedly, that a person who makes the explosive device for a suicide terrorist is to be considered as a full accomplice to the completed offense. In my opinion, the Prosecutor has made an error in citing this verdict. In the same case, the Court ruled that a person who was "responsible for preparing explosive devices" could be considered an accomplice. There is a major difference between a person who within the criminal conspiracy undertakes the responsibility to make sure that there will be an explosive device, like a conspirator who sees to a suicide terrorist or vehicle, and a person who is not part of the criminal conspiracy[…]

-2-

[Stamp] P 2: 335 [continued]

Date: 28 Shevat 5766                                                            Case No.: 2306/04
February 26, 2006

[…]from the outset, is not one of the planners, does not initiate anything, and his part boils down to making an explosive device at the request of another person.

It shall be clarified that I do not believe that the Defendant did not know exactly what the explosive bag was intended for, but on the question of whether this knowledge is enough to transform him from an accessory to an accomplice, I believe that the answer is, No. However, a short time ago, the Military Appellate Court handed down a verdict in **Judea and Samaria Appeal 2135 & 2156/05, Safwat Gabur v. the Military Prosecutor,** in which the tests that are used for differentiating between an accomplice in an offense and a person who is an accessory in its commission were elaborated again, expansively. The Honorable Presiding Judge of the Appellate Court, Colonel Shaul Gordon, addressed the possibility of convicting a person as a full accomplice in an offense despite the fact that he is not present at the scene of the incident, and the following is written there:

> Before I come to settle this contention, it must be clarified that both in the Area and in Israel, a person can be considered as an accomplice to an offense, or a co-perpetrator, even if he was not at the scene of the crime. Therefore, absence by itself does not lead to the conclusion that a given person does not belong to the inner circle of the perpetrators of the offense. Thus, in the Butchers' Market Case (Criminal Appeal 2796/95 Johns Does v. State of Israel, PD 51 (3) 388), in which the question of the responsibility of one of the conspirators who was absent from the crime scene at the time of the attack was discussed, the Supreme Court determined as follows:
>
>> *"36. T. was the leader of the group. He participated in the planning. He was prescribed a function that falls under execution. On the critical day he did not turn up for the meeting with his colleagues. N. called him by telephone. T. told him that they were not to carry out the action on that day. N. responded that they would do it without T. To this, T. responded 'Do it'. Is T. criminally liable for murder and attempted murder? The Counsel for T. contended before us that T. severed himself from the criminal activity and therefore he does not assume any liability. The State's attorney considers T. to be an abettor. Who is right?*

[Stamp] P 2: 336

37. The behavior of T. is not to be considered as remorse that exempts him from criminal liability. Remorse, in the circumstances of the matter, should be expressed by more than not participating in the continued action. It should be reflected in activity for preventing the act of the offense or the completion thereof (compare to Section 34(A) of the Penal Code). T. did not do any of this. On the contrary, at the end of his statements he said to N. 'Do it' – which statement contains an element of encouragement.

38. So what is the part of T. in the responsibility for murder and attempted murder? In my opinion, T. should be considered as a co-perpetrator. He constituted part of the gang that decided together to execute the murder. He took a key part in all of the actions required to fulfill the commission of the offense. He constituted one of the arms of this body. He was first and foremost in all of them. The body acted through its various arms. His non-participation in the stage of throwing the grenade – which non-participation does not constitute remorse – cannot serve to detach himself from the multi-participant criminal incident. He was on the wagon of execution and moved[…]

-3-

[Stamp] P 2: 336 [continued]

Date: 28 Shevat 5766  
February 26, 2006

Case No.: 2306/04

> *[…]it until the fulfillment of its goal, without him having done anything to stop the wagon. In these circumstances, he is to be considered as a co-perpetrator.*
>
> *He is not just an abettor, as he did not make do with mere abetting, but in addition to this he performed actions for carrying [it] out as a co-perpetrator. He is not just an accessory, he is an 'insider' and the leader of the gang. Therefore, in the circumstances of the matter, Tal is to be considered as a co-perpetrator."*

Later, the Presiding Judge again emphasizes the fact that in the Area, we are assisted by tests that are commonly used in Israel, the test of control and the test of mastery over the offense, as written there:

> In Judea and Samaria Appeal 101/03, Amuri v. the Military Prosecutor, this Court had to attend to the question of the responsibility of a person who provided a vehicle knowing that it was intended to be used in carrying out a suicide attack within Israel, assisted his colleagues in transferring means for making explosive devices and loading explosive drums into the car bomb, although he did not know anything concerning the planned site of the attack, the timing or the manner of carrying out the attack. On that matter, we have determined as follows:
>
>> *"One way or another, it must be emphasized that the very fact that a person's part comes down to extending assistance to a primary perpetrator does not make him all of a sudden into an 'accessory', and to the extent that he demonstrates the required mental foundation, he may also fall under the category of an 'accomplice' to the offense…*
>>
>> *It should also be clarified that the main part of the responsibility of the accomplice stems from his willingness to assist in the commission of the offense, irrespective of the question of whether the aid is central or minor, whether the offense could also be carried out without this assistance or not."*
>
> To differentiate between an accomplice in an offense and one who only aids in its commission, we have used common tests that are used in Israel, the "test of control" and "the test of mastery of the offense", *i.e.*, whether the offender considered the offense to be his own offense. On this matter, there is nothing better than citing again the words of Honorable Presiding Judge Barak in Criminal Appeal 4497/93, Mordechai v. State of Israel, PD 50 (3) 239, at 252-253):

[Stamp] P 2: 337

> *A co-perpetrator has functional control, along with others, over the criminal act and its development. He is its master. He is part of its joint plan… the accessory – like the abettor – is an indirect, secondary accomplice… he is not the originator or the decider of the execution and he does not control the execution. He is not the master of the perpetration… but part of it is expressed in the actions around the offense.*

We have also clarified that a strong, significant mental position may "cover" for the absence of practical contribution, and on this matter that "parallelogram of forces" about which Justice Goldberg wrote in the Heldstein Case (Criminal Appeal 8710/96, Heldstein v. State of Israel, Dinim, Supreme Court Cases 53 231) may be cited:

-4-

[Stamp] P 2: 337 [continued]

Date: 28 Shevat 5766  
February 26, 2006

Case No.: 2306/04

> *"The combined test is like a parallelogram of forces. The greater the mental foundation of the offender, the lower the degree of factual foundation that need be relied upon is, and vice versa…"*.

(See also: Criminal Appeal 8573/96, Mercado *et al.* v. State of Israel, PD 51 (5) 481, at 546).

Therefore, the classification of a person as an accomplice in an offense is partly based on his practical part and on his contribution to the fulfillment of the offense, but to no lesser degree on his mental participation and his wish for it to be completed.

In view of these points, we shall examine the acts of the Defendant. Was he among the originators of the attack? Did he plan, even the tiniest detail, in the attack? Did he give instructions or show control over any of the parts of the attack? The answer to all of these questions is negative, with certainty.

The Prosecution is also trying to contend that in view of the significant physical acts of the Defendant in carrying out the attack, there will be less need for involvement in the planning of the attack in order to show him to be a full accomplice. I do not dispute this hypothesis, but I do not see how it can be said that the physical acts of the Defendant are so extensive that there is no need for him to have any part of the planning in order to be deemed an accomplice.

Before I conclude, I shall emphasize one more point. If the Defendant before us is indeed to be convicted as a full accomplice to the offense, I find it difficult to describe a situation in which he can be convicted as an accessory.

In the end, in view of that which has been set forth, I suggest to my colleagues to convict the Defendant for counts 13-21 of the indictment, but as an accessory, both to the offenses of causing intentional death and the offense of attempting to cause intentional death, respectively.

**Major Ronen Atzmon**: I concur.

**Major Adrian Agasi**: I concur.

[Stamp] P 2: 338

## Conclusion

We have decided unanimously to convict the Defendant of nineteen counts of being an accessory to causing intentional death and two counts of being an accessory in attempting to cause intentional death.

**Handed down and announced this day, February 26, 2006, in public and in the presence of the parties.**

| [Signature] | [Signature] | [Signature] |
| --- | --- | --- |
| Judge | Presiding Judge | Judge |

-5-

[Stamp] P 2: 338 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

          Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

          Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 334-338.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 334-338.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

Case 1:04-cv-00397-GBD-RLE  Document 547-216  Filed 06/25/14  Page 14 of 19

תיק מס׳: 2306/04                                                    תאריך: כ״ח שבט, תשס״ו
                                                                    26 פברואר, 2006

בית המשפט הצבאי יהודה

בפני כב׳ האב״ד: רס״ן רונן עצמון
השופט: רס״ן אדריאן אגסי
השופט: רס״ן מנחם ליברמן

התביעה הצבאית
(באמצעות סגן שגיב ליכטמן)

נגד

הנאשם: עלי מוחמד חמאד הליל   ת.ז 920629276 / שב״ס
(באמצעות ב״כ עו״ד אערג׳)

_____

הכרעת הדין

השופט רס״ן מנחם ליברמן

תוך כחודש ימים, בתקופה בין סוף חודש ינואר לסוף חודש פברואר 2004, שני פיגועי התאבדות זעזעו את העיר ירושלים, ובהם נרצחו בדם קר 19 אנשים, וכמאה אנשים נוספים נפצעו בדרגות שונות של פציעה. אנו נדרשים להכריע את דינו של הנאשם, עלי מוחמד חמאש אבו-הלאיל, ולקבוע מהי מידת אחריותו למעשים נוראים אלה.

ביום 23.5.2004 הגישה התביעה הצבאית כתב אישום נגד הנאשם. כתב האישום כלל 21 פרטי אישום, תשעה עשר פרטים של גרימת מוות בכוונה, ושני פרטים של ניסיון לגרימת מוות בכוונה, וזאת לנוכח חלקו בשני פיגועי ההתאבדות, האחד ביום 29.1.2004 בקו 19, והשני ביום 22.2.2004 בקו 14.

הדיונים בתיק זה נדחו מתזכורת לתזכורת, אך בסופו של דבר, דחיות אלו חסכו זמן רב מבית המשפט. ביום 4.8.2005 הודיע סנגורו של הנאשם כי מרשו מודה בעובדות כתב האישום, אך כופר באשמה. ביום זה נקבעו מועדי הגשת סיכומים, התביעה עד ליום 19.9.2005 והסנגוריה עד ליום 20.10.2005.

ביום 18.9.2005 הגישה התביעה את סיכומיה כנדרש, אך משום מה סנגורו של הנאשם נמנע מלהגיש את סיכומיו כפי שהוטל עליו. בדיון אשר התקיים ביום 27.10.2005 על מנת לבחון אם הצדדים אכן הגישו את סיכומיהם, הודיע הסנגור כי לא הספיק להגיש את סיכומיו, אך ביקש הארכה עד אמצע חודש נובמבר. בקשתו של הסנגור התקבלה, וסגן הנשיא אישר לסנגור הארכה עד ליום 15.11.2005. למרבה הצער גם בחלוף תאריך זה לא הגיש הסנגור סיכומיו, ואף שתי שיחות טלפון נוספות אשר יזמה מזכירות בית המשפט עימו, שיחות אשר בהן הובהר לו כי אם לא יגיש את סיכומיו הדבר ייראה כוויתור מצדו על זכותו, לא הועילו. לקראת כתיבת הכרעת דין זה סיכומים אין, וכך בית המשפט יצטרך לבצע את עבודתו של הסנגור.

למרות העדר סיכומים של הסנגור כאמור, ניתן להבין ממנו כי אין הוא סבור שיש לזכות את הנאשם מכל אשמה, אלא, שיש להרשיע את הנאשם רק כמסייע לעבירה אשר בוצעה, ולא כשותף מלא. כל זאת, בהתבסס על כך שביום בו הודה סנגורו של הנאשם בעובדות כתב האישום הוא גם

-1-

P 2: 334

תאריך : כ"ח שבט, תשס"ו
26 פברואר, 2006

תיק מס' : 2306/04

1 אמר כי טענתם הינה כי האשמה המתאימה למעשיו של הנאשם הינה סיוע. לעומת זאת, התביעה
2 סברה באותה עת כי יש להרשיע את הנאשם כשותף מלא בכל העבירות.

3
4 מתברר כי המחלוקת בין הצדדים צרה אף מכך. כאמור, למרות העובדה כי יש בכתב האישום 21
5 פרטים, מדובר בשני אירועים בלבד. בעקבות מעשיו בשני מקרים אלה ייחסה לו התביעה
6 מלכתחילה שותפות מלאה, אך בסיכומיה הסכימה התביעה חלקית עם הסנגור, וביקשה להרשיע
7 את הנאשם בגין הפיגוע הראשון רק כמסייע, ולא כשותף מלא.

8
9 על פי האמור בפרט האישום הראשון בכתב האישום, בו הודה הנאשם, בתחילת חודש ינואר 2004
10 תיכננו הנאשם ואחרים לבצע פיגועים נגד מטרות ישראליות שכללו פיגועי התאבדות. בהמשך
11 העביר הנאשם לאחד משותפיו חומרים עבור הכנת מטען חבלה. לאחר שאדם אחר הכין עם
12 חומרים אלה מטען חבלה, ביום 29.1.2004 עלה מוחמד מעאלי, מחבל מתאבד, על אוטובוס קו 19
13 בירושלים ופוצץ את עצמו. כתוצאה מפיגוע זה נהרגו 11 אנשים.

14
15 לנוכח האמור, ובהתאם להודאת הנאשם ועמדת הצדדים בנושא, אני מציע לחברי להרשיע את
16 הנאשם בגין כל אחד מהפרטים 1-11 כמסייע לגרימת מוות בכוונה, ובגין סעיף 12 כמסייע לניסיון
17 לגרימת מוות בכוונה.

18
19 ומה בנוגע ליתר הפרטים, 13-21, בכתב האישום? כאמור, פרטים אלה מבוססים כולם על אירוע
20 אחד. נבחן את מעשיו של הנאשם ואת כוונתו הפלילית, וכך נחרוץ את דינו.

21
22 על פי עובדות כתב האישום בהן הודה הנאשם, ביום 18.2.2004 קיבל הנאשם, יחד עם אחר, סכום
23 כסף על מנת לרכוש חומרים לצורך הכנת תיק נפץ לפיגוע התאבדות. במקביל קיבל הנאשם מפעיל
24 "צבאי" 4 ליטר חומר כימי מסוג מי-חמצן ו-40 ליטר חומר כימי מסוג אצטון. ביום 20.2.2004
25 ייצר הנאשם, יחד עם שניים נוספים, תיק נפץ. כעבור 48 שעות עשה מחבל מתאבד שימוש בתיק
26 נפץ זה על מנת לבצע את הפיגוע בקו 14 בירושלים בו נהרגו 8 אנשים ונפצעו עשרות. השאלה
27 הנשאלת הינה, האם במעשים אלה נכנס הנאשם בגדר שותף לעבירה, או שמא סיווגו הנכון הינו
28 מסייע בלבד?

29
30 התובעת הצבאית בסיכומיה הגדירה גם היא את השאלה, וכך היא מנוסחת שם, האם מי שאסף
31 חומרים כימיים וייצר תיק נפץ ביודעו כי תיק הנפץ ישמש לשם ביצוע פיגוע התאבדות, דינו כשל
32 מסייע או כשל שותף?

33
34 התביעה מנסה להסתמך על ע/ איו"ש 2377/04, התוב"צ נ. ראסם חמאמרה אשר שם נקבע,
35 כביכול, כי אדם אשר מייצר את מטען החבלה עבור מחבל מתאבד ייחשב כשותף מלא לעבירה
36 המושלמת. לדידי נקלעה התביעה לכלל טעות בציטוט פסק דין זה. באותו מקרה פסק בית
37 המשפט כי ניתן לראות באדם אשר "אחראי להכנת מטען החבלה" שותף. הבדל תהומי יש בין
38 אדם אשר במסגרת הקשר העברייני לוקח על עצמו את האחריות לדאוג לכך כי יהיה מטען חבלה,
39 בדומה לקושר אשר דואג למתאבד או לאמצעי תחבורה, לבין אדם אשר אינו חלק מהקשר

-2-

תאריך: כ״ח שבט, תשס״ו	תיק מס׳: 2306/04
26 פברואר, 2006

1. העברייני מלכתחילה, אינו נמנה בין המתכננים אינו יוזם דבר וחלקו מסתכם בייצור מטען חבלה
2. לבקשתו של אדם אחר.
3. 
4. יובהר, אינני סבור כי הנאשם לא ידע בדיוק למה מיועד תיק הנפץ, אך האם עצם ידיעתו זו
5. מספיקה להפוך אותו ממסייע לשותף, סובר אני שלא. אך לפני זמן קצר נתן בית המשפט הצבאי
6. לערעורים פסק דין בע׳ אי״ש 2156/05+2135, צפוות גבור נ. התובע הצבאי בו פורטו שוב,
7. ובהרחבה המבחנים אשר נוהגים להיעזר בהם על מנת להבחין בין שותף לעבירה לבין מי שאך
8. מסייע בביצועה. כבוד נשיא בית המשפט לערעורים, אל״מ שאול גורדון התייחס לאפשרות
9. להרשיע אדם כשותף מלא לעבירה, וזאת למרות העובדה כי אינו נוכח בזירת האירוע וכך נכתב
10. שם:

11. טרם שאבוא להכריע גורל טענה זו, ראוי להבהיר כי הן באזור והן בישראל, עשוי
12. אדם לבוא בגדר שותף לעבירה, או מבצע בצוותא, אף אם לא נכח בזירת הפשע. על
13. כן, אין באי-נוכחות כשלעצמה כדי להוביל למסקנה כי פלוני אינו משתייך למעגל
14. הפנימי של מבצעי העבירה. כך, בפרשת "שוק הקצבים" (ע"פ 2796/95 פלונים נ׳
15. מדינת ישראל, פ"ד נא(3) 388), בו נדונה שאלת אחריותו של אחד הקושרים אשר
16. בעת הפיגוע נעדר מזירת הפשע, קבע ביהמ״ש העליון כך:

17. "36. ט. היה מנהיג הקבוצה. הוא השתתף בתכנון. נקבע לו תפקיד בגדרי
18. הביצוע. ביום הקריטי הוא לא התייצב למפגש עם חבריו. נ. התקשר עימו
19. טלפונית. ט. אמר לו כי לא יעשו את הפעולה באותו יום. נ. הגיב כי יעשו
20. זאת בלעדי ט.. על כך הגיב ט. 'תעשו'. האם ט. אחראי בפלילים לרצח
21. ולניסיון לרצח? בא כוחו של ט. טען בפנינו, כי ט. ניתק עצמו מהפעילות
22. העבריינית, ועל כן אינה מוטלת עליו כל אחריות. בא כוח המדינה רואה בט.
23. משדל. עם מי הדין?

24. 37. אין לראות בהתנהגותו של ט. משום חרטה הפוטרת מאחריות פלילית.
25. חרטה, בנסיבות העניין, צריכה להתבטא ביותר מאשר אי השתתפות
26. בהמשך העשייה. היא צריכה להשתקף בפעילות למניעת עשיית העבירה
27. או השלמתה (השווה סעיף 34(א) לחוק העונשין). כל זאת לא עשה ט..
28. נהפוך הוא: בסוף דבריו אמר לנ. 'תעשו' – אמירה שיש בה היבט של עידוד.

29. 38. מהו, אפוא, חלקו של ט. באחריות לרצח ולניסיון לרצח? לדעתי, יש
30. לראות בט. מבצע בצוותא. הוא היווה חלק מהחבורה שהחליטה בצוותא
31. חדא לבצע את הרצח. הוא נטל חלק מרכזי בכל הפעולות הדרושות להגשמת
32. ביצוע העבירה. הוא היווה אחד הזרועות של הגוף הזה. הוא היה ראש
33. וראשון לכולם. הגוף פעל באמצעות זרועותיו השונות. אי השתתפותו בשלב
34. של זריקת הרימון – אי השתתפות שאינה מגיעה לכדי חרטה – אין בכוחה
35. לנתקו מהאירוע הפלילי רב המשתתפים. הוא עלה על עגלת הביצוע והניע

-3-

P 2: 336

תיק מס': 2306/04                                      תאריך: כ"ח שבט, תשס"ו
                                                      26 פברואר, 2006

1   אותה עד להגשמת מטרתה, בלא שנעשה על ידו דבר לעצירת העגלה.
2   בנסיבות אלה יש לראות בו מבצע בצוותא.

3   אין הוא אך משדל, שהרי לא הסתפק אך בשידול, אלא בנוסף לכך עשה
4   פעולות לביצוע כמבצע בצוותא. אין הוא אך מסייע, שכן הוא איש 'פנים',
5   וראש לחבורה. אכן, בנסיבות העניין יש לראות בטל מבצע בצוותא."

6   בהמשך הדגיש הנשיא שוב את העובדה כי באזור נעזרים אנו במבחנים המקובלים בישראל, מבחן
7   השליטה ומבחן אדנות העבירה, וכך הדברים מופיעים שם:

8   בע' איו"ש 101/03 עמורי נ' התובע הצבאי, נדרש בימ"ש זה לשאלת אחריותו של
9   אדם אשר סיפק רכב ביודעו כי זה אמור לשמש בביצוע פיגוע התאבדות בתחומי
10  ישראל, סייע לחבריו בהעברת אמצעים לייצור מטעני חבלה ובהעמסת חבילות נפץ
11  למכונית התופת, הגם כי לא ידע דבר וחצי דבר באשר למקום הפיגוע המתוכנן,
12  מועד הפיגוע ואופן ביצועו. באותו עניין, קבענו כך:

13  "בין כך ובין אחרת, ראוי להדגיש כי עצם העובדה שחלקו של אדם התמצה
14  במתן סיוע למבצע עיקרי, אין בה כדי להופכו, מניה וביה, ל'מסייע', וככל
15  שהתקיים בו היסוד הנפשי הנדרש, יכול ויבוא הוא אף בגדר 'שותף'
16  לעבירה....

17  עוד ראוי להבהיר כי עיקר אחריותו של השותף נובעת מעצם מעשה נכונותו לסייע
18  בביצועה של העבירה, ללא תלות בשאלה אם מדובר בסיוע מרכזי או שולי,
19  אם ניתן היה לבצע את העבירה אף ללא סיוע זה, אם לאו."

20  כדי להבחין בין השותף לעבירה לבין מי שאך מסייע בביצועה, נהגנו להיעזר
21  במבחנים המקובלים בישראל, "מבחן השליטה" ו"מבחן אדנות העבירה", היינו
22  אם העבריין ראה בעבירה משום עבירה שלו. לעניין זה, אין טוב מלשוב ולצטט
23  מדבריו של כב' הנשיא ברק בע"פ 4497/93 מרדכי נ' מדינת ישראל (פ"ד נ(3) 239,
24  252-253):

25  "למבצע-בצוותא שליטה פונקציונאלית, יחד עם אחרים, על העשייה
26  העבריינית והתפתחותה. הוא אדונה. הוא חלק מתבניתה המשותפת...
27  המסייע - בדומה למשדל - הוא שותף עקיף ומשני... אין הוא יוזם אין הוא
28  מחליט על הביצוע ואין הוא שולט על הביצוע. אין הוא אדון לביצוע... אלא
29  חלקו מתבטא בפעולות החיצוניות לעבירה".

30  עוד הבהרנו כי עמדה נפשית חזקה ומשמעותית עשויה "לחפות" על העדר תרומה
31  מעשית, ובעניין זה ניתן להזכיר את אותה "מקבילית כוחות" עליה כתב כב'
32  השופט גולדברג בעניין "הלדשטיין" (ע"פ 8710/96 הלדשטיין נ' מדינת ישראל,
33  דינים עליון נג 231):

-4-

תאריך: כ"ח שבט, תשס"ו    תיק מס': 2306/04
26 פברואר, 2006

1  "המבחן המשולב כמוהו כמקבילית כוחות. ככל שהיסוד הנפשי של עושה
2  העבירה רב יותר, יש מקום להסתפק בדרגה נמוכה יותר של היסוד
3  העובדתי ולהיפך...".

4  (ראה גם: ע"פ 8573/96 מרקדו ואח' נ' מדינת ישראל פ"ד נא(5) 481, 546).

5  הנה כי כן; סיווגו של אדם כשותף לעבירה מבוסס אמנם על חלקו המעשי ועל
6  תרומתו להגשמת העבירה, אך לא פחות מכך על הלך נפשו ועל רצונו בהשלמתה של
7  זו.

8  לנוכח דברים אלה נבחן את מעשיו של הנאשם. האם היה בין יוזמי הפיגוע? האם תכנן, ולו הפרט
9  הקטן ביותר בפיגוע? האם נתן הוראות או הראה שליטה על חלק מחלקי הפיגוע. התשובה לכל
10 השאלות האלה הינה שלילית באופן ודאי.

11
12 התביעה מנסה לטעון גם, כי לאור מעשיו הפיסיים המשמעותיים של הנאשם בהוצאת הפיגוע אל
13 הפועל, יקטן הצורך במעורבות בתכנון הפיגוע על מנת לראות אותו כשותף מלא. אינני חולק על
14 סברה זו, אך אינני רואה איך ניתן לומר כי המעשים הפיסיים של הנאשם הינם כה נרחבים עד
15 שאין כל צורך שיהיה לו חלק כלשהו בתכנון הפיגוע על מנת לראותו כשותף.

16
17 בטרם אסיים אדגיש נקודה אחת נוספת. אם אכן יש להרשיע את הנאשם שבפנינו כשותף מלא
18 לעבירה, מתקשה אני לתאר מצב בו ניתן יהיה להרשיע אדם כמסייע.

19
20 סוף דבר, לנוכח האמור אני מציע לחברי להרשיע את הנאשם גם בעבירות 13-21 בכתב האישום
21 אך כמסייע, הן לעבירות של גרימת מוות בכוונה, והן בעבירה של ניסיון לגרימת מוות בכוונה
22 בהתאמה.

23
24 רס"ן רונן עצמון: אני מסכים.
25
26 רס"ן אדריאן אגסי: אני מסכים.
27
28
29
30 **סוף דבר**
31
32 החלטנו פה אחד להרשיע את הנאשם בתשע עשרה עבירות של סיוע לגרימת מוות בכוונה ושתי
33 עבירות של סיוע לניסיון לגרימת מוות בכוונה.
34
35 ניתן והודע היום, 26/02/06, בפומבי ובמעמד הצדדים.
36
37
38
39        שופט                אב"ד                שופט
40

-5-