# EXHIBIT A.329



PLAINTIFF'S EXHIBIT 329

[Handwritten amendments appear in *blue italics*]

## Israel Defense Forces

| | |
|---|---|
| **In the Military Court** | **Court File:** 3368/02 |
| **Beit El** | **Prosecution File:** 319/02 |
| **Before Panel** | **Detailed Incident Files:** 475/01, 990/02 Binyamin |

In the case between the Military Prosecutor – **Prosecuting**

- v -

**Freij Asad Salim Adwan**
Identity No. 410052617, born December 18, 1969, resident of Ramallah
Under arrest since March 30, 2002

the Defendant

**INDICTMENT**   *Amended: April 15, 2004*
*Capt. Vladi Borodovski*
*Military Prosecutor*

**The above Defendant is hereby accused of carrying out the following offenses:**

**First Count:**

**Nature of the Offense**: Intentionally attempting to cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970 and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above Defendant, being within the Region, on February 27, [illegible], or thereabouts, intentionally attempted to cause the death of another person, specifically:

The Defendant who was a PA police officer serving in the DCO addressed his associate (Naim al-Qaq), a Tanzim member and arms' dealer, and asked him for a loan. Naim initially replied to the Defendant that he had no money to give him, although, subsequently, Naim left the café and returned approximately ten minutes later. Naim told the Defendant that if he wants to receive money, he should carry out an attack together with Naim and others, the attack would be filmed on a camcorder and when the recording was delivered he would receive some money. The Defendant agreed to carry out the said attack. Naim told the Defendant that they would be perpetrating an attack on Israeli vehicles traveling along the road with the intention of causing the death of their occupants. *The Defendant was not among those who planned the specifics of the attack.*

[Stamp] P 3: 63

The Defendant and Naim drove to the meeting with the other attack perpetrators, Muhind Abu Helwa, a Force 17 leader, who is responsible for perpetrating lethal attacks in the Region and in Israel, Abed Abed, Omar Qaadan, also a Force 17 member and Fawzi Murar, a PA police officer who served with the Defendant in the Joint Patrols.

The Defendant observed that Muhind Abu Helwa possessed an AK-47 [assault] rifle two M16 rifles [sic]. The Defendant and his associates drove in a stolen silver colored Mazda automobile with Israeli registration plates to the place where the planned attack was to be perpetrated. The three men ascended a hill in Rafat village in order to open fire from there at the occupants of Israeli vehicles on the road and to cause their deaths. Fawzi Murar reached the location in his own vehicle and acted as lookout from a distance of approximately 700 meters from his associates, for the purpose of informing them of the presence of I.D.F. forces in the vicinity.

Muhind Abu Helwa provided the Defendant with one of his M16 rifles and a magazine and told him to fire with this weapon at vehicles on the road. Muhind took the AK-47 rifle and two magazines for himself and Naim al-Qaq had the otherM16 rifle and two magazines.

Approximately two minutes after taking up positions at the attack location, Muhind Abu Helwa and Naim al-Qaq opened fire at an Israeli Volkswagen Transporter registration number 72-053-15 traveling along Route 45 below the hill in Rafat Village where the Defendant and his associates had taken up position (near Givat Ze'ev). The Defendant also fired at the vehicle. The Defendant and his associates fired at the vehicle with the intention to cause the deaths of its eight occupants. After the Defendant had fired three shots, his weapon jammed and the Defendant retreated.

The attack was filmed with a camcorder by Abed Abed.

[Stamp]
This Indictment was received_____
on [date] *May 21, 2002*_____
Registered in file registry _____
   [illegible]

1

[Stamp] P 3: 63 [continued]

The Defendant approached the vehicle in which Omar Qaadan was seated and waiting to drive the attackers away from the scene. When he saw the Defendant retreating he followed him away, fearing that the I.D.F. was present in the area. The Defendant explained to him that he had retreated due to a stoppage in his weapon and Omar returned to the vehicle. The Defendant continued to walk and reached Fawzi Murar. The Defendant explained to Fawzi the reason for retreating from the attack location and Fawzi reported this to Muhind Abu Helwa by means of a cell phone in his possession. Approximately ten minutes later, Muhind Abu Helwa, Naim al-Qaq and Abed fled the scene in the vehicle driven by Omar Qaadan. The Defendant and Fawzi escaped to Ramallah as well. The Defendant and his associates met in Ramallah and the Defendant viewed the film Abed Abed had taken with the camcorder during the attack. The Defendant also returned the M16 rifle to Muhind Abu Helwa.

The video cassette was subsequently delivered by Muhind Abu Helwa to Ramallah District Security Chief Abu Hussein Atrae. Subsequently, Muhind Abu Helwa informed the Defendant that the cassette had been delivered to PA Chairman Yasser Arafat.

As a result of the shooting perpetrated by the Defendant and his associates, one of the vehicle's passengers sustained serious injuries to her spine and lungs. As a result of her injuries, the passenger, Shoshanna Gottlieb, is paralyzed from her chest down and is confined to a wheelchair.

Two other passengers sustained light injuries.

**Second Count:**

**Nature of the Offense:** Possessing a firearm, an offense pursuant to Section 53(a)(1) the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above Defendant, being within the Region at the time mentioned in the previous Count, did have in his possession a firearm and ammunition without a signed permit from or on behalf of the Area Commander, specifically:

The Defendant possessed an M16 rifle that he had received from Muhind Abu Helwa, a Force 17 leader and with which he perpetrated the attack as described above.

**Third Count:**

**Nature of the Offense:** Intentionally attempting to cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970 and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above Defendant, being within the Region, in early February, 2001, or thereabouts, intentionally attempted to cause the death of another person, specifically:

[Stamp] P 3: 64

The Defendant when in Ramallah at 10:00 p.m. or thereabouts, met with the above mentioned PA police officer Fawzi Murar who did offer the Defendant 500 dollars in exchange for firing at members of the Pesagot community. The Defendant refused to fire at Pesagot out of fear that fire would be returned and he would be killed. Therefore, the Defendant and Fawzi drove to carry out an attack against a moving vehicle. The Defendant and his associates drove in Fawzi's automobile to a hill adjacent to al-Hashamia school. The Defendant waited there and Fawzi Murar brought his associate, the above mentioned Abed Abed to the location. The Defendant and his associates went up the hill overlooking the road. Fawzi Murar gave the Defendant and his associate Abed Abed one AK-47 rifle each for the purpose of firing at passing Israeli vehicles and causing the death of their occupants. After waiting two hours, the lights of a vehicle were observed. Fawzi ordered the Defendant and Abed to fire at the vehicle. The Defendant said to Fawzi that the vehicle was far away but Fawzi ordered them to open fire at it. The Defendant and Abed each discharged seven rounds from the AK-47 rifles in their possession at the vehicle, with the intention of causing the deaths of its occupants. During the shooting, Fawzi took cover nearby. Following the shooting, Fawzi returned the Defendant and Abed to Ramallah and took the weapons from them.

Fawzi Murar refused to pay the Defendant the money he had promised him.

**Fourth Count:**

**Nature of the Offense**: Possessing a firearm, an offense pursuant to Section 53(a)(1) the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense**: The above Defendant, being within the Region at the time mentioned in the previous Count, did have in his possession a firearm and ammunition without a signed permit from or on behalf of the Area Commander, specifically:

The Defendant possessed an AK-47 rifle he had received from Fawzi Murar, with which he perpetrated the attack described in the previous Count.

2

[Stamp] P 3: 64 [continued]

**Fifth Count:**

*Trading in military hardware, an offense pursuant to Section 2 of the Prohibition of Trading in Military Hardware (Judea and Samaria) Order (No.243), 1968.*

**Nature of the Offense:** ~~Possessing a firearm~~, an offense pursuant to Section 53(a)(1) the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above Defendant, being within the Region several months prior to the time specified in the previous Count, did have in his possession a firearm and ammunition without possessing a permit issued by a military officer or on his behalf, specifically:

1. The Defendant borrowed a vehicle from his associate, the said Fawzi Murar. The Defendant discovered an M1 rifle in this vehicle. The Defendant removed the rifle from the vehicle and pressed the trigger, in consequence of which a round was discharged.

~~**Sixth Count:**~~

~~**Nature of the Offense:** Trading in military hardware, an offense pursuant to Section 2 of the Prohibition of Trading in Military Hardware (Judea and Samaria) Order (No. 243), 5728-1968,~~

~~**Details of the Offense:** The above Defendant, in the Region, in 1999 or thereabouts, did trade in or handle in some other way military hardware, without a signed permit from or on behalf of the Area Commander, specifically:~~

2. The Defendant's associate, Fawzi Murar, who served together with him in the PA police, proposed that the Defendant procure 9 mm pistol rounds. The Defendant procured 1,500 9 mm pistol rounds from Abed Fouad for 800 shekels.

~~**Seventh Count:**~~

~~**Nature of the Offense:** Trading in military hardware, an offense pursuant to Section 2 of the Prohibition of Trading in Military Hardware (Judea and Samaria) Order (No. 243), 5728-1968,~~

~~**Details of the Offense:** The above Defendant, in the Region, at the time specified in the previous Count or thereabouts, did trade in or handle in some other way military hardware, without a signed permit from or on behalf of the Area Commander, specifically:~~

3. The Defendant sold the rounds he had procured as specified in the previous count to various individuals, some 50 60 [sic] pistol rounds each.

[Stamp] P 3: 65

**Eighth Count:**

**Nature of the Offense:** Possessing a firearm, an offense pursuant to Section 53(a)(1) the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above Defendant, being within the Region at the time mentioned in the previous Count, did have in his possession a firearm without a signed permit from or on behalf of the Area Commander, specifically:

4  The Defendant had in his possession a pistol from which he would discharge the rounds he procured from the above Abed Fouad at weddings.

**Ninth Count:**

**Nature of the Offense:** Attempting to Trade in military hardware, an offense pursuant to Section 2 of the Prohibition of Trading in Military Hardware (Judea and Samaria) Order (No. 243), 5730-1968 1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above Defendant, in the Region, at a time unknown to the Prosecution, did attempt to trade in or handle in some other way military hardware, without a signed permit from or on behalf of the Area Commander, specifically:

5  The Defendant offered Ahmad Abas a rifle night vision sight for 3,500 shekels. Ahmad said he would enquire whether anyone was interested in the sight. Ahmad asked an arms' dealer, Lawi, about procuring the night sight but the latter refused and the transaction was not made.

[Stamp] P 3: 65 [continued]

**Tenth Count:**

**Nature of the Offense:** Attempting to Trade in military hardware, an offense pursuant to Section 2 of the Prohibition of Trading in Military Hardware (Judea and Samaria) Order (No. 243), 5730-1968 1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above Defendant, in the Region, at a time unknown to the Prosecution, did attempt to trade in or handle in some other way military hardware, without a signed permit from or on behalf of the Area Commander, specifically:

6  The Defendant and Abu al-Abed offered Ahmad Abas explosive devices. Ahmad Abas went to arms' dealer Lawi to regarding the procurement of explosive devices, but he replied that he did not want to procure them and if he did he would inform Ahmad. In consequence no transaction was undertaken.

**Eleventh Count:**

**Nature of the Offense:** Membership of an illegal organization, an offense pursuant to Section 85(1)(a) of the Defense Regulations (Time of Emergency), 1945.

**Details of the Offense:** The Defendant, both within and outside the Region, as from 2001 or thereabouts and until the time of his arrest, was a member of an illegal organization, specifically:
The Defendant was a member of a paramilitary squad whose members included Naim al-Qaq, a Tanzim member, Muhind Abu Helwa, a Force 17 leader, Abu al-Abed and others. As part of this paramilitary squad, the Defendant perpetrated the mentioned attack.

**Prosecution Witnesses**

*Agreed* 1.  Staff Sergeant Major Avi Ben Lulu, 95314, took the Defendant's statement.
*Agreed* 2.  Advanced Staff Sergeant Major Zion Avraham, 55035, took the Defendant's statement.
*Agreed* 3.  Ahmad Abdallah Ahmad Abas, 42219495, detained + handwriting [as written]]
*Agreed* 4.  Issa Abdallah Issa Natshe, 040996514, detained.
*Agreed* 5.  Shoshanna Gottlieb, 51839678, details held by prosecution.
6.  Leonid Gamburg, 310123666, details held by prosecution.
7.  Margalit Ben Saadon, 027700954, details held by prosecution.
8.  Aamar Aamar Suleiman, 059553222, details held by prosecution.
9.  Haim Cohen, Service No. 7040281, details held by prosecution.
10. Esther Benno, 043299999, details held by prosecution.

[Stamp] P 3: 66

11. Reuven Yissaschar, 000862805, details held by prosecution.
12. Exhibit 60/01 by Staff Sergeant Major Mowabda Nidban Service No. 940312.
13. Zion Sebag, 0632222353, details held by prosecution.
14. Hospital Care and Discharge Forms – Dr. Yair Barzilay Registration No. 31121, Hadassah Medical Center.
15. Superintendent Ami Leifer, National Police Headquarters – Mobile Laboratory – Initial Crime Scene Report + Vehicle Inspection Report + Photographs.
16. Hospital Discharge Forms belonging to Prosecution Witness 6 and Prosecution Witness 7.
17. Obtaining Exhibits for Examination – Public Servant Identity Card – Staff Sergeant Major Ziva Hoter, National Police Headquarters.
18. Superintendent Ami Greiber, Binyamin Station, Crime Scene Report.
19. Advanced Staff Sergeant Major Sari Ovadia, 560441, Vehicle Inspection Report.

[Signature] D.
Dalia Kaufman, Captain.
Military Prosecutor

Date: May: 19, 2002
Reference: 31902
DK/ DK

4

[Stamp] P 3: 66 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THE PALESTINE LIBERATION ORGANIZATION, et al., <br><br> Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P3: 63-66.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P3: 63-66.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

HIRUT J MINRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2132704

צ ב א    ה ג נ ה    ל י ש ר א ל

תיק בימ"ש: 3368/02
תיק תביעה: 319/02
תיקי פ"א: 475/01, 990/02
בנימין

בבית המשפט הצבאי
בבית אל
בפני חרכב

במשפט שבין התובע הצבאי - **המאשים**

נגד

פרג' אסעד סאלם עדואן
ת.ז. 410052617, יליד 18/12/69 תושב רמאללה
עצור מיום 30/3/02

- **הנאשם** -

**כ ת ב    א י ש ו ם**

הנאשם הנ"ל, מואשם בזאת בביצוע העבירות הבאות:

**פרט ראשון:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשל"ל - 1970 ולפי סעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון)(מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באיזור, ביום 27/2/02 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, כדלקמן:

הנאשם, שהיה שוטר פלסטיני אשר שרת ב- DCO פנה לחברו, פעיל התנזים וסוחר בנשק, נעים אל קאק וביקש ממנו חלואה. תחילה השיב נעים לנאשם כי אין לו כסף כעת ט', אולם לאחר מכן יצא נעים מביתו הקפה וחזר בעבור כעשר דקות. נעים מסר לנאשם כי אם הוא רוצה לקבל כסף, אזי שיבצע פיגוע ביחד עם נעים ועם אחרים, הפיגוע יצולם בוידאו ולאחר העברת הקלטת יקבל כסף. הנאשם הסכים לבצע את הפיגוע האמור. נעים מסר לנאשם כי הם יבצעו פיגוע בעבר רכבים ישראליים הנוסעים בכביש במחנה לגרום למותם של הנוסעים.

הנאשם ונעים נסעו להפגש עם שאר מבצעי הפיגוע, מוהנד אבו חלוה מראשי כוח 17 האחראי לביצוע פיגועים קטלניים באיזור ובישראל, עבד עבד, עומר קדאן אף הוא מכוח 17 ופאוזי מוראד שוטר פלסטיני ששרת עם הנאשם בסיורים המשותפים.

הנאשם ראה אצל מוהנד אבו חלואה רובה קלצ'ניקוב שני רובים מסוג M16. הנאשם וחבריו נסעו ברכב מסוג מזדה בצבע כסף, גנובה בעלת לוחיות זיהוי ישראליות לעבר מקום ביצוע הפיגוע המתוכנן. השלושה עלו על גבעה בכבר ראפת על מנת לירות משם על נוסעי הרכבים הישראליים על הכביש ולגרום למיתם. פאוזי מוראד הגיע למקום ברכבו ושימש כתצפיתן במרחק כ- 700 מטרים מחבריו, על מנת לחודיע להם, על המצאות כוחות צה"ל באיזור.

מוהנד אבו חלואה מסר לנאשם את אחד סרובי ה M16 ומחסניות ואמר לו כי הוא ירה בנשק זה לעבר המכוניות בכביש. מוהנד לקח את רובה הקלצ'ניקוב ושתי מחסניות לעצמו ונעים אל קאק החזיק בידיו M16 הנוסף ובשתי מחסניות.

כשתי דקות לאחר שהתמקמו במקום הפיגוע החלו מוהנד אבו חלואה ונעים אל קאק לירות לעבר רכב ישראלי מסוג פולקסווגן טרנספורטר מספר 15-053-72 שנסע בכביש 45 מתחת לגבעה בכפר ראפת עליה התמקמו הנאשם וחבריו [סמוך לבעת זאב. הנאשם ירה אף הוא לעבר הרכב. הנאשם וחבריו ירו לעבר הרכב בכוונה לגרום למות שמונת הנוסעים ברכב. לאחר שהנאשם ירה שלושה כדורים, היה סעצור בנשקו והנאשם נסוג לאחור.

את הפיגוע צילם במצלמת וידאו עבד עבד.


כתב איום זה נתקבל
בתאריך 2/15/02
ונרשם ביומנו בו"ק

הנאשם ניגש לרכב שבו ישב עומר סעדאן, שהמתין כדי להבריח את המפגעים. משראה את הנאשם ברח ברח אף הוא בעקבותיו, מחשש כי כוחות צה"ל נמצאים במקום. הנאשם הסביר לו כי הוא ברח מהמקום עקב מעצור בנשק ועומר חזר לרכב. הנאשם המשיך ללכת והגיע אל פאוזי מוראד. הנאשם הסביר לפאוזי מדוע נמלט ממקום הפיגוע ופאוזי דווח על כך למוהנד אבו חלוואה באמצעות מכשיר מירס שהתחזיק. לאחר כשעה דקות נמלטו מהמקום מוהנד אבו חלוואה, נעים אל קאק ועבד ברכב בו נהג עומר סעדאן. הנאשם ופאוזי נמלטו אף הם לרמאללה. הנאשם וחבריו נפגשו ברמאללה שם צפה הנאשם במצלמת וידאו בצילומים שצילם עבד בעת ביצוע הפיגוע. הנאשם גם החזיר את רובה ה M16 למוהנד אבו חלוואה.

קלטת הוידאו הועברה לאחר מכן ע"י מוהנד אבו חלוואה למפקד הבטחון באיזור רמאללה, אבו חסיין אטראי. לאחר מכן מסר מוהנד אבו חסיואה לנאשם כי הקלטות הועברה לידי יאסר ערפאת, יו"ר הרשות הפלסטינית.

כתוצאה מהירי שביצעו הנאשם וחבריו, נפצעה בארוח קשה בעמוד השדרה ובריאותיה אחת מנוסעות הרכב. כתוצאה מהפציעה נותרה הנוסעת, שושנה גיטליב, משותקת מבית החזה ומטה ומרותקת לכיסא גלגלים.
שני נוסעים נוספים נפצעו באורח קל.

**פרט שני:**

**מהות העבירה:** אחזקת כלי ירייה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון, (יהודה והשומרון)(מס' 378) תש"ל 1970.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באיזור, במועד האמור בפרט אישום קודם, החזיק ברשותו כלי ירייה ותחמושת מבלי להחזיק בתעודת היתר שהוענקה לו ע"י מפקד צבאי או מטעמו, כדלקמן:
הנאשם החזיק רובה M 16 אותו קיבל ממוהנד אבו חלוואה, מראשי כוח 17 ובאמצעותו ביצע את הפיגוע האמור לעיל.

**פרט שלישי:**

**מהות העבירה:** נסיון גרימת מוות בכוונה, עבירה כפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תש"ל-1970 ולפי סעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון)(מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באיזור, בתחילת חודש פברואר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, כדלקמן:
בהיותו ברמאללה בסמוך לשעה 22.00, נפגש הנאשם עם פאוזי מוראד הנ"ל. השוטר הפלסטיני פאוזי מוראד, הציע לנאשם 500 דולאר על מנת לירות לעבר המתיישבים בישוב פסגות. הנאשם סרב לירות לעבר פסגות מחשש שירשימו באש והוא יהרג, לפיכך נסע הנאשם ופאוזי לבצע פיגוע לעבר רכב נוסע. הנאשם וחבריו נסעו ברכבו של פאוזי לבצר גבעון, בסמוך לבית חסך אל השמיע. הנאשם המתין במקום ופאוזי מוראד הביא למקום המפגש את עבד הנ"ל. הנאשם וחבריו עלו לגבעה הצופה על הכביש. פאוזי מוראד נתן לנאשם ולחברו עבד עבד רובה קלצ'ניקוב לכל אחד על מנת לירות לעבר רכב ישראלי שיעבור במקום ולגרום מוות לנוסעי הרכב. לאחר המתנה של שעתיים הבחינו באורות של רכב. פאוזי הורה לנאשם ולעבד לירות לעבר הרכב. הנאשם אמר לפאוזי כי הרוכב רחוק, אולם פאוזי והוא אותם לירות לעברו. הנאשם ועבד ירו כל אחד שבעה כדורים מרובי הקלצ'ניקוב שהתחזיקו לעבר הרכב, בכוונה לגרום למות הנוסעים בו. בעת ביצוע הירי, התחבא פאוזי בסמוך לאחר הירי החזיר פאוזי את הנאשם ואת עבד לרמאללה ולקח מהם את כלי הנשק.
פאוזי מוראד סרב לשלם לנאשם את הכסף שהבטיח לו.

**פרט רביעי:**

**מהות העבירה:** אחזקת כלי ירייה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון, (יהודה והשומרון)(מס' 378) תש"ל 1970.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באיזור, במועד האמור בפרט אישום קודם, החזיק ברשותו כלי ירייה ותחמושת מבלי להחזיק בתעודת היתר שהוענקה לו ע"י מפקד צבאי או מטעמו, כדלקמן:
הנאשם החזיק רובה קלצ'ניקוב אותו קיבל מפאוזי מוראד, ובאמצעותו ביצע את הפיגוע האמור בפרט אישום קודם.

פרט חמישי:

סחר בציוד מלחמתי, לפי סעיף 2 לצו [handwritten]

מהות העבירה: אחזקת כלי ירייה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון, (יהודה והשומרון)(מס' 378) תשי"ל 1970.

פרטי העבירה: הנאשם הנ"ל, בהיותו באיזור, מספר חודשים לפני המועד האמור בפרט אישום קודם, החזיק ברשותו כלי ירייה, מבלי להחזיק בתעודת היתר שהיונעקה לו ע"י מפקד צבאי או מטעמו, כדלקמן: הנאשם השאיל מחברו, פאוזי מוראדי הנ"ל את רכבו. הנאשם מצא ברכב זה רובה M1. הנאשם הוציא את הרובה מהרכב ולחץ על ההדק, כתוצאה מכך נפלט כדור.

פרט שישי:

מהות העבירה: סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי, (יהודה והשומרון)(מס' 243) תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, בהיותו באיזור, בשנת 1999 או בסמוך לכך, סחר בציוד מלחמתי או עיסק בו בכל דרך אחרת, ללא היתר חתום ע"י מפקד צבאי או מטעמו, כדלקמן: חברו של הנאשם, פאוזי מוראד, ששרת עימו במשטרה הפלסטינית וציע לנאשם לרכוש כדורים 9 מ"מ לאקדח. הנאשם רכש מעבד פואד 1,500 כדורי אקדח 9 מ"מ תמורת 800 ש"ח.

פרט שביעי:

מהות העבירה: סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי, (יהודה והשומרון)(מס' 243) תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, בהיותו באיזור, במועד האמור בפרט אישום קודם, או בסמוך לכך, סחר בציוד מלחמתי או עסק בו בכל דרך אחרת, ללא הותר חתום ע"י מפקד צבאי או מטעמו, כדלקמן: הנאשם מכר את הכדורים אותם רכש כאמור בפרט אישום קודם, לאנשים שונים כ- 50-60 כדורי אקדח לכל אחד.

פרט שמיני:

מהות העבירה: אחזקת כלי ירייה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון, (יהודה והשומרון)(מס' 378) תשי"ל 1970.

פרטי העבירה: הנאשם הנ"ל, בהיותו באיזור, במועד האמור בפרט אישום קודם, או בסמוך לכך, החזיק ברשותו כלי ירייה, מבלי להחזיק בתעודת היתר שהיונעקה לו ע"י מפקד צבאי או מטעמו, כדלקמן: הנאשם החזיק ברשותו אקדח שבאמצעותו ירה בחתונות את הכדורים אותם רכש מעבד פואד כאמור לעיל.

פרט תשיעי:

מהות העבירה: נסיון סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצד בדבר איסור סחר בציוד מלחמתי, (יהודה והשומרון)(מס' 243) תשכ"ח-1968 ולפי סעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון)(מס' 225) תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, בהיותו באיזור, במועד שאינו ידוע לתביעה, נסיה לסחור בציוד מלחמתי או עסק בו בכל דרך אחרת, ללא היתר חתום ע"י מפקד צבאי או מטעמו, כדלקמן: הנאשם הציע לאחמד עבאי לרכוש ממנו משקפת לילה להרכבה על רובה תמורת 3,500 ש"ח. אחמד מסר כי ישאל אם מישהו מעוניין לרכוש את המשקפת. אחמד שאל סוחר נשק, לוואי בדבר רכישות משקפת הלילה, אולם הנ"ל, סרב ולכן העסקה לא התבצעה.

פרט עשירי:

**מהות העבירה:** ניסיון סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מיטווני, יהודה והשומרון(מס' 243) תשכ"ח- 1968 ותיקון מס' 19 לצו בידי בללי התאחזרות לעבירה ניהודה והשומרון(מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם חנייך בהיוחו באיזור, במועד שאינו ידוע לתביעה, ניסה לסחור בציוד פלנמחי או עסק בכל דרך אחרת, ללא חיתר חתום ע"י מפקד צבאי או מטעמו, כדלקמן:
הנאשם ואבו אל עבד הציעו לאחמד עבאס לרכוש מטעני חבלה. אחמד עבאס פנה שוב לסוחר הנשק סואי בנוגע לרכישת מטעני החבלה, אולם זה חישב כי אינו רוצה לרכוש אותם וכשירצה יודיע לאחמד. בעיקבות זאת לא יצאה העסקה הנ"ל לפועל.

פרט אחד עשר:

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה, (שעת חרום) 1945.

**פרטי העבירה:** הנאשם חנ"ל, בהיוחו באיזור ומחוצה לו, החל מתחילת שנת 2001 או בסמוך לכך, ועד ליום מעצרו, היה חבר בהתאחדות בלתי מותרת, כדלקמן:
הנאשם היה חבר בחוליה צבאית שבה היו חבריהם גם, נעים אל קאק, מעיל תנזים, מוחמד אבו חלואה. מראשי כח 17 אבו אל עבד ועוד, במסגרת חברותו בחוליה צבאית זו, ביצע הנאשם את הפינוע האמור בפרט אישום ראשון.

עדי תביעה:

1. רס"ר אבי בן לולו, 95314, גובה אמרת הנאשם.
2. רס"מ ציון אברהם, 55035, גובה אמרת הנאשם.
3. אחמד עבדאללה אחמד עבאס, 42219495, עצור + כתב יד.
4. עיסא עבדאללה עיסא נתשה, 040996514, עצור.
5. שושנה גוטליב, 51839678, פרטים בתביעה.
6. לאוניד גמברג, 310123666, פרטים בתביעה.
7. סרגלית בן סעדון, 027700954, פרטים בתביעה.
8. עאמר עאמר סלימאן, 059553222, פרטים בתביעה.
9. חיים כהן, מ"א 7040281, פרטים בתביעה.
10. אסתר בנו, 043299999, פרטים בתביעה.
11. ראובן יששכר, 000862805, פרטים בתביעה.
12. מוצג 60/01 - ע"י רס"ר מובדא נדבאן מ"א 940312.
13. ציון סבג, 0632222335, פרטים בתביעה.
14. גלוון מהלך מחלה וזכתב שחרור - דר' יאיר ברזילי מ"ר 31121, בי"ח הדסה.
15. רפ"ק עמי לייפר, מטא"ר - מעבדה ניידת - דו"ח ביקור ראשוני + דו"ח בדיקת רכב + תצלומים
16. מכתבי שחרור מבי"ח של עיית 6 ועיית 7.
17. קבלת מוצגים לבדיקה - תעודת עובד ציבור - רס"ב זיוה וזטר, מטא"ר
18. רפ"ק עמי גרייבר, ת. בנימין, דו"ח ביקור במקום.
19. רס"מ שרי עובדיה, 560441, דו"ח בדיקת רכב.

דליה קאופמן, סרן
תובעת צבאית

תאריך: 19/5/02
סימוכין: 11902
דסק/דס

P 3: 66