# EXHIBIT A.338

PLAINTIFF'S
EXHIBIT
338

[logo]

1

[logo]

### Israel Police

The National Headquarters
Policing and Security Branch
Bomb Laboratories Section
National Headquarters  Branch
Telephone        02-5308987-8
Printing date:   July 11, 2002
Case BI/23              02190/02

---------------------------
### Expert Opinion
---------------------------

Reference: The Evidence Order (New Version), 5731-1971.

Name of the expert:   Ariel Ya'ari
Address:              The National Headquarters / Bomb Laboratory , Jerusalem

I, the undersigned, have been requested by the Jerusalem District Minorities Unit to express my professional opinion on the following question: examination of exhibits in an investigation that has been conducted by the police unit: Zion Station, Case No.: Detailed Incident 04422/02.

I am giving this expert opinion instead of testimony in Court. I declare hereby that I am well aware that for the purposes of the provisions of the penal laws concerning perjury, this expert opinion, once signed by me, shall be considered as sworn evidence given in a Court of law:

The details of my education are as follows:

1) Graduate of a police bomb disposal course in 1994.

2) Graduate of an electricity and electronics course for Israel Police bomb disposal technicians in 1996.

3) Graduate of an explosion supervisors' course at the Ministry of Labor in 1997.

4) Graduate of a senior bomb disposals technicians' course in 1998.

5) Graduate of a bomb laboratory operation teams' course in 1999.

[Stamp] P 4: 26

My professional
experience:

1) Qualified bomb disposal technician in the bomb disposal department of the Israel Police since 1994.

2) Advanced bomb disposal technician in the bomb disposal department of the Israel Police since 1996.

3) Israel Police bomb laboratory team member since 2001.

My expert opinion

On June 19, 2002, at about 7:10 p.m., along with Chief Inspector Igor Peckerman and Chief Inspector Ron Yaniv of the National Headquarters Bomb Laboratory, I was called by the Jerusalem District bomb disposal unit to the French Hill junction in Jerusalem to examine the circumstances of an explosion that had occurred at the site.

[Stamp] P 4: 26 [continued]

2

When I arrived, I met a bomb disposal officer of the Jerusalem District, Chief Superintendent Avraham Barda.

At the incident scene, near the first bus stop on the east side of the junction, I noticed the remains of human bodies strewn at the site, damage to the stop structure, fragmentation impacts and sprayed blood stains.

As a result of the explosion, seven civilians had been killed and 39 injured. Damage was caused to the bus stop and its surroundings.

The following exhibits were gathered from the scene of the incident.

1.    An electricity switch two which an electric wire and sticky tape were attached.

2.    Various electric wires.

3.    Metal balls.

4.    Nuts and remains of nuts.

5.    Various pieces of cloth.

6.    Various pieces of metal.

7.    Remains of cellular phone handsets.

8.    Remains of various electrical batteries.

The exhibits were put into transparent plastic bags that were marked by me: "A.Y., suicide bomber, French Hill, June 19, 2002" and were taken to the bomb laboratory for further examination.

Exhibits Nos. 3, 4 and samples from exhibit No. 5 were forwarded for examination in the high explosives analytic laboratory on June 20, 2002. The exhibits were received back on July 2, 2002. The expert opinion was received on July 8, 2002.

[Stamp] P 4: 27

**Results of the examination:**

1.  An examination of the incident scene and the exhibits reveals that on the eastern side of the French Hill junction in Jerusalem, near the curb of the pavement next to the first bus stop, an improvised explosive device that had been carried on the person of a suicide bomber had exploded.

2.  Effects at the scene –

    A.  At the scene of the incident, I noticed blast damage that had caused heavy damage to a nearby bus stop.

    B.  Many fragmentation marks were identified on the pavement, remains of the bus stop and nearby guardrails and lampposts.

    C.  According to the effects at the incident scene, I identified the epicenter of the explosion to be at a height of a few dozen centimeters above the surface, near the curb next to the bus stop.

[Stamp] P 4: 27 [continued]

3

D.   According to the effects on the remains of the body of the terrorist, the explosion appeared to have occurred adjacent to his central body.

3.   **Structure of the explosive device –**

A.   **Primary charge -**

No remains of a case that contained explosives were found at the incident scene.

B.   **Primary explosive –**

An examination of the incident scene and the exhibit demonstrates that the explosive device used explosives with [high explosive] detonating properties.

An examination of the exhibits in the analytic laboratory revealed an indication at a low level of certainty of the presence of the high explosive nitroglycerin (N.G) (see attached analytic laboratory expert opinion).

B.   **Activation system –**

[Translator's note: numbering as in the original]

1)   An electric rocker switch with a red rocker button was used for activating the explosive device (exhibit no. 1 above).

2)   The switch is an electric switched used in home electrical appliances (such as spiral heaters) and is typical of explosive devices that are activated by suicide bombers.

3)   Black sticky tape was wrapped around the connection of the electric wires and the switch body. Another piece of sticky tape was found affixed to the rocker to hold the switch in a secure position.

C.   **Initiator –**

No remains of an initiator/s were found at the incident scene or among the exhibits.

D.   **Power source –**

No remains of the power source that was used for activating the explosive device was found at the scene of the incident.

[Stamp] P 4: 28

E.  **Electric wires –**

White double stranded multi-fiber electric wires were used.

F.  **Fragmentation –**

Metal balls of approximately 6.4 mm diameter and metal nuts of approximately 8 mm diameter were used as fragmentation in the explosive device.

Balls of a total weight of approximately 15 grams and nuts of a total weight of approximately 35 grams were collected from the scene of the incident.

G.  **Sticky tape –**

Black 18 mm wide sticky tape was used.

H.  **Camouflage –**

Pieces of dark blue cloth that appear to have been found near the explosion site were found at the scene of the incident. They could have originated from a backpack that was used for camouflaging and carrying the explosive device.

4.  An improvised explosive device of this type has the potential to cause death by its explosion.

5.  The photographs of the incident scene and the photographs of the exhibits are marked by me: "A.Y. B.I. 02190/02" and are attached.

6.  The exhibits are provided in a heat-sealed plastic bag marked "A.Y. B.I. 02190/02" and are attached.

[Signature]
Ariel Ya'ari, First Sergeant
National Headquarters Bomb Laboratory

[Stamp] P 4: 29

Israel [logo] Police

HD145.DOC
National Headquarters /
  Investigations Branch /
  Forensic Identification
The Analytic        Laboratory
Telephone:      02-5309368/7
Fax:                  02-5309360
Editing date:     June 27, 2002
Printing date:     July 3, 2002
**Case BI / 33- 66168/02**
**Serial No.: 36725**

# Expert Opinion

## Reference: The Evidence Ordinance [New Version], 5731-1971

Name of the expert:    **Sarah Abramovich-Bar**

Address:                      The Forensic Identification Department, National Headquarters, Jerusalem

I, the undersigned, have been requested by **the National Headquarters – Bomb Disposal** to express my professional opinion on the following question: examination of exhibits in an investigation that has been conducted by the police unit: Zion Station, Case No.: **Detailed Incident 04422/02**.

I am giving hereby this expert opinion instead of testimony in Court. I declare hereby that I am well aware that for the purposes of the provisions of the penal laws concerning perjury, this expert opinion, once signed by me, shall be considered as sworn evidence given in a Court of law:

**The details of my education are:**

1981 – B.Sc. in chemistry – the Hebrew University, Jerusalem
1984 – M.Sc. in applied chemistry – the Hebrew University, Jerusalem

**My professional experience:**

1984 – Analytic laboratory officer – the Forensic Identification Department, National Headquarters, Jerusalem.

[Stamp] P 4: 30

**My expert opinion:**

The exhibits for examination

On June 20, 2002, the following exhibits were received at the laboratory:

A heat-sealed plastic bag marked "A.Y. B.I. 02190/02 D. 77/02" and "Bomb Laboratory Biohazard", which contained three sealed plastic bags marked "Bomb Laboratory A.Y. BI 02910/02 D. 77/02" and 1, 2, 3, respectively, containing:

1.  Pieces of cloth.

2.  Metal balls.

3.  Metal nuts.

I was requested to check whether the exhibits contain explosives.

**The findings of the examinations**

1.  In the cloth pieces mentioned in Section 1, an indication with low level of certainty of the presence of the high explosive nitroglycerin (N.G) was obtained.

2.  In the balls and nuts mentioned in Sections 2 and 3, I found no explosives.

Information: nitroglycerin can be used, among other things, as one of the main components of smokeless gunpowder.

Page 1 of 2 (HavatDaat36139)

[Stamp] P 4: 30 [continued]

Comments

1.  The details of the tests are elaborated in forensic identification case **BI/33 - 61168/02**.

2.  The cases and the exhibits have been marked as described above and were packed/accompanied by a secure bag whose number is E1820613.

Signature:    [Signature]

Page 2 of 2 (HavatDaat36139)

[Stamp] P 4: 31



**Bomb Laboratory**
**A.Y.**
**BI 02190/02**

Fragmentation strikes
on the curb in the area
where the terrorist was
standing



Fragmentation strikes

[Stamp] P 4: 32



Explosion site

General appearance
of the scene



**Bomb Laboratory**
**A.Y.**
**BI 02190/02**



Close up view of the remains of
the bus stop

[Stamp] P 4: 33



Activation switch

National HQ Bomb Laboratory



Fragmentation of nuts and metal balls

National HQ Bomb Laboratory



**Bomb Laboratory**
A.Y.
BI 02190/02



Pieces of cloth probably originating
from a backpack

[Stamp] P 4: 34

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

                                   No. 04 Civ. 00397 (GBD) (RLE)

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 4: 26-34.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P 4: 26-34.

                                          Rina Ne'eman

ss.: New Jersey

March

On the [ 6 ] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this   March
6 day of February, 2014

Leonor Troyano
Notary Public

LEONOR TROYANO
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/25/14




**מ ש ט ר ת   י ש ר א ל**

המטה הארצי
אגף השיטור והביטחון
מדור מעבדות חבלה
שלוחת          מטא"ר
טלפון  8-5308987-02
ת. הדפסה   11-07-02
תיק זב/23    02190/02

--------------------------
**ח ו ו ת   ד ע ת   ש ל   מ ו מ ח ה**
--------------------------

סימוכין : פקודת ראיות (נוסח חדש) . תשל"א - 1971

שם המומחה    אריאל יערי
מ ע נ ו          המטה הארצי/מחלקת החבלה , ירושלים.

אני החתום מטה , נתבקשתי ע"י מיעוטים מחוז ירושלים   לחוות את דעתי
המקצועית בשאלה דלקמן : בדיקת מוצגים בחקירה שהתנהלה ע"י יחידת המשטרה
תחנת ציון תיק מספר : פי"א 04422/02.

אני נותן את חוות דעתי זו במקום עדות בבית משפט . ואני מצהיר בזאת כי ידוע לי
היטב , שלעניין הוראות דיני העונשין בדבר עדות שקר בבית משפט , דין חוות דעתי
זו כשהיא חתומה על - ידי , כדין עדות בבית משפט.

פרטי השכלתי הם : 1) בוגר קורס ⬤לה משטרתי  משנת 1994.
- - - - - - - - - - - -    2) בוגר קורס חשמל ואלקטרוניקה לחבלני מי"י משנת 1996.
3) בוגר קורס ממונה על פיצוצים של משרד העבודה משנת 1997.
4) בוגר קורס חבלנים בכירים משנת 1998.
5) בוגר קורס  צוותי הפעלה מעבדת חבלה משנת 1999.

ניסיוני  המקצועי : 1) חבלן מוסמך במחלקת החבלה של מי"י משנת 1994.
- - - - - - - - - - - -    2) חבלן מתקדם במחלקת החבלה של מי"י משנת 1996.
3) איש צוות מעבדת החבלה של מי"י משנת 2001.

חוות דעתי :
- - - - - - -
בתאריך 19-06-02 בשעה 19:10 לערך ביחד עם פקד פקרמן איגור ופקד יניב רון
ממעבדת חבלה מטא"ר נקראתי על ידי יחידת חבלה מחוז  ירושלים אל צומת הגבעה
הצרפתית בירושלים לבדוק נסיבות פיצוץ שאירע במקום.

P 4: 26

2

בהגיעי פגשתי בקצין חבלה מחוז ירושלים סנ"ץ ברדה אברהם.

בזירת האירוע, בסמוך לתחנת האוטובוסים הראשונה שבציידה המזרחי של הצומת, הבחנתי בשרידי גופות אדם מוטלות במקום, בנזק למבנה התחנה, פגיעות רסס והתזות דם .

כתוצאה מהפיצוץ נהרגו 7 אזרחים ונפצעו 39. נזקים נגרמו לתחנת האוטובוס וסביבתה.

מזירת האירוע נאספו המוצגים הבאים :

1.   מפסק חשמלי אליו מחוברים מוליך חשמלי וסרט דביק.
2.   מוליכים חשמליים שונים.
3.   כדוריות מתכת.
4.   אומים ושרידי אומים.
5.   פיסות בד שונות.
6.   פיסות מתכת שונות.
7.   שרידי מכשירי טלפון סלולאריס.
8.   שרידי סוללות חשמליות שונות.
9.   פיסות פלסטיק שונות.

המוצגים הוכנסו לשקיות פלסטיק שקופות שסומנו על ידי : "א.י, מתאבד ג. צרפתית, 19-6-02" ונלקחו למעבדת חבלה להמשך בדיקה.

מוצגים מספר 4,3 ודגימות ממוצג מספר 5 הועברו לבדיקה במעבדה אנליטית חני"מ בתאריך 20-06-02. המוצגים התקבלו חזרה בתאריך 02-07-02, חוות הדעת התקבלה בתאריך 08-07-02.

**תוצאות הבדיקה :**

1.   מבדיקת זירת האירוע והמוצגים עולה כי בציידה המזרחי של צומת הגבעה הצרפתית בירושלים. בסמוך לשפת המדרכה הנמצאת ליד תחנת האוטובוס הראשונה, התפוצץ מטען חבלה מאולתר שנישא על גופו של מחבל מתאבד.

2.   אפקטים בזירה -

א.   בזירת האירוע הובחנו על ידי פגיעות הדף אשר גרמו נזק כבד לתחנת אוטובוס סמוכה.

ב.   סימני פגיעות רסס רבות הובחנו על המדרכה, שרידי תחנת האוטובוס ועמודי בטיחות ותאורה סמוכים.

ג.   על פי האפקטים בזירת האירוע, מוקד הפיצוץ הובחן על ידי בגובה של מספר עשרות סמ' מעל פני הקרקע, בסמוך לשפת המדרכה ליד תחנת האוטובוס.

3

ד. על פי האפקטים בשרידי גופת המחבל נראה כי הפיצוץ אירע בצמוד
לפלג גופו המרכזי.

### 3. מבנה מטען החבלה-

**א. מטען עיקרי -**

בזירת האירוע ובין המוצגים לא נמצאו שרידי מארז אשר הכיל חומר
נפץ.

**ב. חומר עיקרי-**

מבדיקת זירת האירוע והמוצגים נראה כי במטען החבלה נעשה שימוש
בחומר נפץ בעל תכונות מרסקות.

בבדיקת המוצגים במעבדה האנליטית נמצאה אינדיקציה ברמת ודאות
נמוכה לנוכחות חומר הנפץ המרסק ניטרוגליצירין (N.G) (ראה חווי"ד
מעבדה אנליטית המצ"ב).

**ב. מערכת הפעלה-**

1) להפעלת מטען החבלה שימש מפסק "נדנדה" חשמלי עם לחצן
נדנדה בצבע אדום (מוצג מס' 1 לעיל).

2) המפסק הינו מפסק חשמלי המשמש במוצרי חשמל ביתיים (כגון
תנור חימום ספירלה) והינו אופייני במטעני חבלה המופעלים על
ידי מתאבדים.

3) סביב חיבור המוליכים החשמליים וגוף המפסק נמצא כרוך סרט
דביק בצבע שחור. פיסה נוספת של סרט דביק נמצאה מודבקת על
"הנדנדה" כמחזיקה את המפסק במצב בטוח.

**ג. יזם-**

בזירת האירוע ובין המוצגים לא נמצאו שרידי יזם/ים.

**ד. מקור מתח-**

בזירת האירוע ובין המוצגים לא נמצאו שרידי מקור המתח ששימש
להפעלת מטען החבלה.

4

ה.   **מוליכים חשמליס-**

שימשו מוליכים חשמליים דו גידיים רב סיביים בצבע לבן.

ו.   **רסס-**

כרסיס במטען החבלה שימשו כדוריות ממתכת בקוטר של כ- 6.4 מ"מ
ואומים ממתכת בקוטר של כ- 8 מ"מ.

מזירת האירוע נאספו כדוריות במשקל כולל של כ- 15 גרם ואומים
במשקל כולל של כ- 35 גרם.

ז.   **סרט דביק-**

שימש סרט דביק ברוחב 18 מ"מ בצבע שחור.

ח.   **הסוואה-**

בזירת האירוע נמצאו פיסות בד בצבע כחול כהה אשר ניכר עליהן כי
נמצאו בסמוך למוקד הפיצוץ. לא מן הנמנע שמקורם בתיק גב ששימש
להסוואתו ונשיאתו של מטען החבלה .

4.   בכוחו של מטען חבלה מאולתר מסוג זה לגרום למוות בעת התפוצצותו.

5.   תצלומי זירת האירוע ותצלומי המוצגים מסומנים על ידי : "א.י ז.ב
02190/02" ומצ"ב.

6.   המוצגים נתונים בשקית פלסטיק אטומה בחום מסומנת :"א.י ז.ב 02190/02"
ומצ"ב.

אריאל יערי,   רס"מ
מעבדת חבלה מטא"ר

משטרת ישראל

HD145.doc
מטא"ר / אח"ק / מז"פ
המעבדה האנליטית
טלפון : 02-5309368/7
פקס : 02-5309360
ת. עריכה : 27/06/02
ת. הדפסה : 03/07/02
תיק ז"ב / 33 - 61168/02
מספר סידורי : 36725

# חוות דעת של מומחה
## סימוכין : פקודת ראיות [נוסח חדש] , תשל"א - 1971

שם המומחה : שרה אברמוביץ-בר
מענו : המחלקה לזיהוי פלילי , מטא"ר , י-ם

אני החתומה מטה , נתבקשתי על - ידי **מטא"ר** - **חבלה** לחוות דעתי המקצועית בשאלה דלקמן : בדיקת מוצגים בחקירה שהתנהלה ע"י יחידת המשטרה ת. ציון תיק מספר :
**פ"א - 04422/02**.
אני נותן בזאת חוות דעתי זו במקום עדות בבית משפט , ואני מצהירה בזאת כי ידוע לי היטב, שלעניין הוראות הדין הפלילי בדבר שקר בבית משפט , דין חוות דעתי זו כשהיא חתומה על - ידי, כדין עדות בבית משפט .

### פרטי השכלתי הם:
B.Sc - 1981 בכימיה - האוניברסיטה העברית, ירושלים .
M.Sc - 1984 בכימיה שימושית - האוניברסיטה העברית, ירושלים .
### ניסיוני המקצועי:
1984 - קצינת מעבדה אנליטית - המחלקה לזיהוי פלילי, מטא"ר ירושלים.

### חוות דעתי :
המוצגים לבדיקה
בתאריך 20/06/02 נתקבלו במעבדה המוצגים הבאים :
שקית פלסטיק סגורה בחום המסומנת "מעבדת חבלה א.י ז.ב 02190/02 פ.77/02 " וכן "מעבדת חבלה סיכון ביולוגי" ובתוכה שלוש שקיות פלסטיק סגורות המסומנות " מעבדת חבלה א.י ז.ב 02190/02 פ.77/02" וכן 1, 2 ו-3 בהתאמה המכילות:
1. פיסות בד.
2. כדוריות מתכת.
3. אומים ממתכת.

נתבקשתי לבדוק האם המוצגים מכילים חומר נפץ.

### ממצאי הבדיקות

1. בפיסות הבד המוזכרות בסעיף 1 התקבלה אינדיקציה ברמת וודאות נמוכה לנוכחות חומר הנפץ הארסק ניטרוגליצרין (NG) .
2. בכדוריות ובאומים המוזכרים בסעיפים 2 ו-3 לא מצאתי חומר נפץ.

מידע : ניטרוגליצרין יכול לשמש בין השאר כאחד המרכיבים העיקריים באבק שריפה ללא עשן.

עמוד 1 מתוך 2 (HavatDaat36139)

P 4: 30

<div dir="rtl">

הערות:

1. פרטי הבדיקות מפורטים בתיק מז"פ זב/33 – 61168/02 .

2. האריזות והמוצגים סומנו כמתואר לעיל ונארזו/מלווים בשקית מאובטחת שמספרה E1820613 .

חתימה: [חתימה]

</div>

<div dir="rtl">

עמוד 2 מתוך 2 ( HavatDaat36139)

</div>

P 4: 31



מעבדת חבלה
ל. ?
.1.
02.190/02

פגיעות רסס על שפת המדרכה
באזור עמידת המחבל



פגיעות רסס



מראה כללי של הזירה



מבט מקרוב לעבר שרידי
תחנת האוטובוס



מפסק ההפעלה



רסס אומים וכדוריות מתכת

פיסות בד שמקורם ככל
הנראה בתיק גב