# EXHIBIT A.345



PLAINTIFF'S EXHIBIT
345

[Line numbering in Hebrew original]

Date: 18 Tammuz 5764                                      File Number: 3544/02
July 7, 2004

### Military Court, Judea

**Before the Presiding Judge: Lieutenant-Colonel Netanel Benichou**
**Judge: Captain Aryeh Dorani**
**Judge: Captain Zeev Afik**

**Military Prosecution**
(represented by Captain Vladi Borodovsky)

- v -

**Defendant: Sanah Mohamed Shehadeh Identity No. 81021198/ Prisons Service – Present**
(represented by her attorney, Adv. Ahlam Hadad)

---

## SENTENCE

What is the appropriate penalty for one who is an accessory to causing the deaths of three civilians, when she transported a suicide terrorist to the place where he carried out the terrorist attack?

This is the question that will concern us in this sentence.

The Defendant was convicted, on the basis of her admission of guilt, of three offenses of being an accessory to intentionally causing death, pursuant to Section 51(a) of the Security Provisions Order, 5730-1970, and Section 19 of the Criminal Liability Order, 5728-168, and the offense of being an accessory to an attempt to intentionally cause death, in that she assisted in the infiltration and transportation of a suicide terrorist into Israeli territory, to carry out the suicide terrorist attack that took place on King George Street, Jerusalem, on March 4 [sic, should be 21], 2002, a terrorist attack that led to the deaths of the late Tzipora Shemesh, her husband Gadi Shemesh, and the late Yitzhak Cohen, and the wounding of 81 innocent civilians.

### Arguments of the Parties

The Military Prosecution requested that we impose on the Defendant a punishment of four terms of life imprisonment, to be served cumulatively, of which three terms of life imprisonment are in respect of each of the lives that she took

[Stamp] P 5: 129

1

[Line numbering in Hebrew original]

Date: 18 Tammuz 5764                                              File Number: 3544/02
July 7, 2004

through her actions, and a further cumulative term of life imprisonment in respect of the assistance she gave to the attempt to take the lives of as many civilians as possible, and the wounding of 81 civilians. As stated, according the Prosecution's argument, the Defendant's actions were not merely technical assistance, but were such as to place her within the inner circle of co-perpetrators of the crime. Her involvement, from the beginning of the planning phase through the actual execution, and her contribution to infiltrating the suicide terrorist by traveling together, by obscuring his identity and intentions, *inter alia*, by purchasing flowers, makes her an integral part of the principle perpetrators. The Prosecution argues that the only reason that the indictment was amended was that, under the law applying in the Region, it would have been difficult to prove the Defendant's involvement in the crime of murder, absent the doctrine of co-perpetration that exists in Israeli law, which broadly defines the principal perpetrator as including, in effect, assistance of the type given by the present Defendant.

The Prosecution further noted that Amendment No. 39 does not apply in the Region, and they brought precedents according to which it is possible to impose a term of life imprisonment on someone who attempts murder. In the context of being an accessory, the Prosecution also referred to Appeals (Judea and Samaria) 64/02, and Military Court Appeals 8/98, in which a term of life imprisonment was imposed on an accessory to murder. The Prosecution demanded that a powerful message be sent to those taking some part or other in executing mass terrorist attacks, and so asked that this be given proper expression in sentencing the Defendant, who made an effort to bring the terrorist safely to his destination.

The Defense argued that the scope of the Defendant's assistance was purely technical. In her opinion, with or without the Defendant, the terrorist attack would have been carried out. Similarly, the Defense Attorney argued that the Defendant had become the victim of a ruse by one of the heads of the cell, named Nasser Shawish, who exploited her strong desire for a personal relationship, and brought her into the incident unwillingly and not of her own initiative, or more accurately as someone drawn in, seeking to find favor.

The Defense further argued that uniformity of punishment, whether deriving from the parallel, more appropriate, jurisdiction of the Israeli court to try this case, or whether this uniformity derives from discussion of the applicability of Amendment No. 39 to the Region as well, leads to the conclusion that the Defendant deserves a punishment of only a few years. The Defense referred us to various precedents, such as Criminal Appeals 5114/97, Criminal File (Tel Aviv) 1050/01, and Criminal File (Tel Aviv) 1083/01, as well as mentioning the penalty imposed on one of the accomplices who made the connection between the Defendant and the originator of the terrorist attack.

[Stamp] P 5: 130

[Line numbering in Hebrew original]

Date: 18 Tammuz 5764                                        File Number: 3544/02
July 7, 2004

The Defendant, in her final statement, said as follows: "I would ask the Court to judge me as a person, and not as its enemy; ultimately, I made no mistake. What caused me to do this were the pressures and the circumstances."

In coming to sentence the Defendant we can state that we follow the road already paved for us with regard to the binding legal framework. In Files 3634/02 and 3438/02, this Court has already analyzed, at length, the fundamental questions arising in the matter of the appropriate penalty for an accessory, while examining the law in the Region in comparison with that applying in Israel. Ultimately, and after the Court addressed the criticism made of the clear distinction in penalty created by Section 32 of the Israeli Penal Law, it stated that the Court in the Region should not abide by this law, and that it would be appropriate and correct on this point for the Court to keep to the language of the law as it exists in the Region, in which there is no limitation as to the maximum penalty that can be imposed on an accessory to causing death.

At the same time, the Court addressed the need to give proper weight to the fact that this was the penalty for an accessory and not that for a principal offender [and compare also Appeals (Judea and Samaria) 64/02 **Hanini v. The Military Prosecution**].

Therefore, we feel that determination of the scope of penalty for the Defendant should be made on the basis of an in-depth examination of the nature of her actions. To the extent that these bring her closer to the status of a principal perpetrator, so too the scope of her punishment should increase and approach that appropriate to one who belongs to the inner circle of the crime, when in the present instance we have no doubt that the appropriate penalty for a principal perpetrator is, as in similar cases, cumulative terms of life imprisonment for each of the victims whose life was cut down through his actions. This is indeed how the Court conducted itself in the case of Nasser Shawish, who was one of the planners of the terrorist attack which is the subject of this case [see File 3739/02].

If so, what was the extent of the Defendant's involvement in execution of this vile terrorist attack? There is no doubt that the Defendant was not one of those who initiated the terrorist attack or planned it, and we are even prepared to accept the Defense Attorney's argument that, even absent the Defendant's contribution, the terrorist attack would have been carried out. This reasoning has some merit, since the Defendant did not transport the terrorist alone, but she joined another woman, Kahira Sa'adi. At the same time, as can be seen from the indictment, the Defendant contributed by her presence, by her identity as a female escort, and by the seemingly legitimate social atmosphere that she gave to the terrorist's journey, a real contribution to accomplishment of the crime.

[Stamp] P 5: 131

[Line numbering in Hebrew original]

Date: 18 Tammuz 5764                                    File Number: 3544/02
July 7, 2004

Furthermore, the Defendant was aware that the suicide terrorist was being sent, at a rather early
stage, when one day prior to execution of the terrorist attack, she consented to the request of
Nasser Shawish to transport the terrorist into the city of Jerusalem.

Moreover, the Defendant showed active involvement in obscuring the terrorist's aims, by
purchasing flowers and handing them to the terrorist, tricking the taxi driver who transported
them, at the Defendant's request, to Jaffa Road, and by her suggestion to carry out the terrorist
attack on a street on which, at that time, many civilians were to be found, so that the effect of the
terrorist attack and the damage would be greater. The Defendant was a full participant in the
final, actual part of the terrorist attack, of her own free will, without any pressure being applied
to her. The Defendant's initiative, the purchase of the flowers, giving a copy of the Quran to the
terrorist, the other transportation acts that she performed, show more than anything else that she
was not a passive subject, forced to participate in an innocent journey that became an unplanned
killing spree. It should not be forgotten that the terrorist's journey, and that of his escorts, was
not one ongoing trip, but a long journey in which she got out of and into a car, the first taxi and
the second taxi, as well as walking past the checkpoint and searching for an appropriate place
along Jaffa Road and King George Street. The Defendant could certainly have had pangs of
conscience at any of the stages described here, abandoned her accomplices and turned back.

The Defendant's statement at the end of the hearing speaks for itself, and instead of expressing
remorse, disgust and repudiation of her vile deeds, the Defendant chose to claim innocence and
state that she had made no error.

Hence, the Defendant made, through her various actions, a real contribution to the terrorist attack
taking place and to its intolerable results. This conduct places the Defendant close to the inner
circle, until we could say that, were it not for the limitations of the law in the Region, and in
keeping with the doctrines applying in Israel, it may certainly be that the Defendant would have
been included among the co-perpetrators of the crime of causing death. This is also the reason
for our inability to drawn an analogy between the penalty that would have been imposed on the
Defendant had she been tried in the State of Israel, and the penalty that ought to be imposed on
her by us. In the absence of absolute identity between the legal doctrines customary in Israel and
those in the Region, we cannot even draw conclusions as to penalty from what is customary in
Israel. Therefore, any use of the rulings presented by the Defense, to the extent that they are
relevant from a factual point of view – something of which we are still in doubt – is not
applicable in the present case.

[Stamp] P 5: 132

4

[Line numbering in Hebrew original]

Date: 18 Tammuz 5764                                          File Number: 3544/02
July 7, 2004

It should not be forgotten that the Defendant has an Israeli identity card, and hence her moral obligation toward the State of Israel and toward its citizens, her neighbors, is heightened.

In any event, the circumstances of the crimes as detailed above, the attitude of the Defendant, who did all that she could to ensure the "success" of her mission, her deep involvement in the criminal activity at its critical junctures, and her determination to bring about the lethal outcome, demand her permanent removal from human society.

At the same time, so that we do not breach the need to determine a scale of penalties between the various persons involved in the crimes, based on their individual roles, we feel it appropriate to impose on the Defendant a single term of life imprisonment in respect of the four crimes of which she was convicted. This would give full and appropriate expression to the Defendant's status, her role, and the extent of her involvement in the terrorist attack as set forth here.

We therefore sentence the Defendant to [a term of] life imprisonment.

**Right of appeal within 30 days.**

**Given and notified this day, July 7, 2004, in public and in the presence of the parties.**


| [Signature] | [Signature] | [Signature] |
| --- | --- | --- |
| Judge | Presiding Judge | Judge |

[Stamp] P 5: 133

5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                    Plaintiffs,

        vs.                                          No. 04 Civ. 00397 (GBD) (RLE)

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                    Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the
      document received by Rina Ne'eman Hebrew Language Services, to the best of my
      knowledge and belief.  The document is designated as P5: 129-133.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew
      University of Jerusalem (Israel) and 30 years of translation experience.  I am fluent in
      Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and
      accurate translation of the Hebrew-language document bearing the bates number, P5:
      129-133.

                                                    _____
                                                    Rina Ne'eman

ss.: New Jersey

On the 28 ] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

MINUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

<div dir="rtl">

תאריך: י"ח תמוז, תשס"ד       תיק מס': 3544/02
7 יולי, 2004

בית המשפט הצבאי יהודה    1

   2

בפני כב' האב"ד: סא"ל נתנאל בנישו    3

שופט: סרן אריה דורני    4

שופט: סרן זאב אפיק    5

   6

התביעה הצבאית    7

(באמצעות סרן ולדי בורודובסקי)    8

נגד    9

   10

הנאשם: סנאא מחמד שחאדה ת.ז. 81021198 / שב"ס - נוכחת    11

(באמצעות ב"כ עו"ד אחלאם חדאד - נוכחת)    12

   13

   14

## גזר דין    15

   16

מהו העונש הראוי למי שסייעה לגרימת מותם של שלושה אזרחים, כאשר הובילה    17

מחבל מתאבד אל המקום בו ביצע את הפיגוע?    18

   19

זו השאלה אשר תעסיק אותנו בגזר דין זה.    20

   21

הנאשמת הורשעה, על יסוד הודאתה באשמה, בשלוש עבירות של סיוע לגרימת מוות    22

בכוונה לפי סעיף 51 (א) לצו בדבר הוראות בטחון, תש"יל - 1970 וסעיף 19 לצו בדבר    23

כללי האחריות לעבירה, תשכ"ח - 1968, ובעבירה של סיוע לניסיון לגרימת מוות    24

בכוונה, בכך שסייעה בהחדרת והובלת מחבל מתאבד לתחומי ישראל לביצוע פיגוע    25

התאבדות שאירע ברחוב קינג ג'ורג' בירושלים ביום 04/03/02, פיגוע שהביא למותם    26

של ציפורה שמש ז"יל, בעלה גדי שמש ז"יל, יצחק כהן ז"יל ולפציעת 81 אזרחים חפים    27

מפשע.    28

   29

## טיעוני הצדדים    30

   31

התביעה הצבאית ביקשה להטיל על הנאשמת עונש של ארבע מאסרי עולם    32

מצטברים, מתוכם שלושה מאסרי עולם בגין כל אחד ואחד שאת חייו נטלה    33

</div>

-1-

תאריך: י״ח תמוז, תשס״ד                  תיק מס׳: 3544/02
7 יולי, 2004

1   במעשיה, ומאסר עולם מצטבר נוסף בגין חסיוע שהעניקה לניסיון ליטול חיי

2   אזרחים רבים ככל הניתן, ופציעתם של 81 אזרחים. כאמור, לטענת התביעה,

3   מעשיה של הנאשמת אינם סיוע טכני, אלא כאלה המציבים אותה במסגרת המעגל

4   הפנימי של המבצעים בצוותא. מעורבותה מתחילתו של שלב התכנון ועד הביצוע

5   בפועל, ותרומתה להחדרתו של המחבל המתאבד בנסיעה יחד, בטשטוש הזהות

6   והמטורנת בין היתר באמצעות קניית פרחים, הופכות אותה לחלק בלתי נפרד

7   מהמבצעים העיקריים. טוענת התביעה כי הסיבה היחידה שבגינה תוקן כתב

8   האישום לסיוע, הוא רק בשל כך שעל פי הדין באזור קשה היה להוכיח את

9   שותפותה של הנאשמת בעבירת רצח בהעדר דוקטרינת המבצעים בצוותא הקיימת

10  בדין הישראלי המגדירה באופן רחב את המבצע העיקרי ככולל למעשה גם סיוע

11  מהסוג שניתן על ידי הנאשמת דנן.

12

13  עוד ציינה התביעה, כי תיקון 39 לא חל באזור, והביאה תקדימים לפיהם ניתן

14  להטיל על המנמה לרצוח עונש של מאסר עולם. גם בהקשר של הסיוע לרצח הפנתה

15  התביעה לפסקי דין ע/איו״ש 64/02, ועבמ״צ 8/98, בהם נגזר עונש של מאסר עולם

16  על מסייע לרצח. התביעה דרשה להעביר מסר תקיף לכל הנוטלים חלק כזה או אחר

17  בביצוע פיגוע המוני, ולפיכך ביקשה למצוא ביטוי הולם בגזר דינה של הנאשמת

18  שהתאמצה להוביל את מחבל בבטחה ליעדו.

19

20  הסניגוריה טענה, כי מידת הסיוע של הנאשמת הייתה ברמה טכנית בלבד. לדעתה,

21  אם או בלי הנאשמת היה יוצא חפיגוע לפועל. כמו כן, טענת הסניגוריה כי הנאשמת

22  הפכה לקורבן של מעשי נכלים של אחד מראשי החולים בשם נאצר שוויש שניצל את

23  רצונה העז לקשר בין אישי והכניס אותה לאירוע שלא מרצונה ושלא מיוזמתה,

24  ויותר נכון כנגררת המבקשת למצוא חן.

25

26  עוד טענה הסניגוריה, כי אחידות העונשה בין אם היא נובעת מהסמכות המקבילה

27  והמתאימה יותר של ביחמ״ש הישראלי לדון במקרה זה, ובין אם אחידות זו נובעת

28  מהדיון בתחולת תיקון 39 גם באזור, מביאה למסקנה שראוי לה לנאשמת עונש של

29  מספר שנים מועט ביותר. הסניגוריה הפנתה אותנו לתקדימים שונים כע״פ 5114/97,

30  ת״פ תל- אביב 1050/01 וכן ת״פ תל-אביב 1083/01, וכן ציינה את עונשה של אחת

31  השותפות שקישרו בין הנאשמת לבין יוזם הפיגוע.

32

-2-

P 5: 130

תאריך : י"ח תמוז, תשס"ד          תיק מס' : 3544/02
7 יולי, 2004

1    הנאשמת בדברה האחרון מסרה כדלקמן : "אבקש מביהמ"ש שישפוט אותי כאדם
2    ולא כאויב בסופו של דבר לא עשיתי שום טעות, מה שגרם לי לעשות את זה היו
3    הלחצים ונסיבותי".
4
5    בבואנו לגזור את דינה של הנאשמת נוכל לקבוע כי הולכים אנו בדרך סלולה באשר
6    למסגרת המשפטית המחייבת. בתיקים 3634/02 ו-3438/02 כבר ניתח בימ"ש זה
7    בהרחבה את השאלות העקרוניות המעוררות בשאלת העונש הראוי למסייע, תוך
8    בחינת הדין באזור ואל מול הדין חחל בישראל. בסופם של דברים ולאחר שביהמ"ש
9    עמד על הביקורות שהוטחה בהבחנה העונשית החותכת שיצר סעיף 32 לחוק העונשין
10   הישראלי, קבע, כי אל לו לביהמ"ש באזור להיצמד לדין זה, וראוי ונכון יהא כי
11   בנקודה זו ייצמד ללשון החוק הקיים באזור ובו אין הגבלה באשר לעונש המרבי
12   אותו ניתן להשית על מי שסייע לגרימת מוות.
13
14   יחד עם זאת, עמד ביהמ"ש על הצורך במתן משקל של ממש לעובדה כי מדובר
15   בעונשו של מסייע ולא של עבריין עיקרי [והשווה גם ע' אי"ש 64/02 **חניני נ'**
16   **התוב"ץ].**
17
18   לפיכך סבורים אנו כי קביעת מידת עונשה של הנאשמת יעשה מתוך בחינת מעמיקה
19   של מהות מעשיה כפי שאלה יקרבת למעמד של עבריין עיקרי; כך תגדל מידת
20   העונש ותתקרב לזו הראויה למי שמשתייך למעגל הפנימי של העבירה, כאשר
21   במקרה הנוכחי אין בלבנו ספק כי העונש הראוי למבצע עיקרי הוא, וכממקרים
22   דומים, עונש מאסר מצטברים בגין כל אחד מן הקורבנות אשר במעשיו גדע את
23   חייהם. כך אכן נהג ביהמ"ש בעניינו של נאצר שווישי, שהיה ממתכנניו של הפיגוע
24   נשוא תיק זה [ראה תיק 3739/02].
25
26   אם כן, מה הייתה מידת מעורבותה של הנאשמת בהוצאתו לפועל של הפיגוע הנתעב.
27   אין ספק כי הנאשמת לא השתייכה ליוזמי הפיגוע ומתכנניו ואף מוכנים אנו לקבל
28   את טענת הסניגורית לפיה גם לולא תרומתה של הנאשמת, היה יוצא פיגוע זה
29   לפועל. לסברה זו רגליים מאחר שהנאשמת לא הובילה את המחבל לבדה אלא
30   צורפה לאישה אחרת, קאהירה סעדי. יחד עם זאת, כעולה מכתב האישום, הנאשמת
31   תרמה בנוכחותה, בזהותה הנשית כמתלווה, ובאווירה החברתית הלגיטימית
32   למראה שהקנתה לנסיעת המחבל, תרומת של ממש להשלמת העבירה.
33

-3-

תאריך: י"ח תמוז, תשס"ד
7 יולי, 2004

תיק מס': 3544/02

1 זאת ועוד, הנאשמת עמדה בסוד שליחת המחבל המתאבד בשלב די מוקדם, כשכבר
2 יום לפני הוצאת הפיגוע אל הפועל הסכימה לבקשת נאצר שווייש להוביל את המחבל
3 לתוככי העיר ירושלים.

4

5 יתרה מזו, הנאשמת גילתה מעורבות אקטיבית בטשטוש מטרותיו של המחבל
6 בקניית פרחים ומסירתם למחבל, הטעיית נהג המונית שהסיעם, על פי בקשת
7 הנאשמת, לרחוב יפו והצעתה לבצע את הפיגוע ברחוב בו שהו אותה העת אזרחים
8 רבים, כך שאפקט הפיגוע והנזק יהיו גדולים יותר. הנאשמת השתתפה השתתפות
9 מלאה בחלקו המעשי האחרון של הפיגוע, על פי רצונה, בלא שהופעל עליה לחץ כל
10 שהוא. יוזמותיה של הנאשמת, קניית הפרחים, מתן קורוא למחבל, יתר פעולות
11 ההובלה אותן נקטה, מראים יותר מכל כי אין מדובר בנגררת, האנוסה להשתתף
12 בנסיעה תמימה שהפכה למסע הרג בלתי מתוכנן. אין לשכוח כי נסיעת המחבל
13 ומלווותיו לא הייתה נסיעה אחת מתמשכת, אלא מסע ארוך בו ירדה ועלתה לרכב
14 ולמונית ראשונה ושנייה, והליכה רגלית במעבר המחסום ובחיפוש אחר מיקום
15 מתאים לאורך רחובות יפו וקינג ג'ורג'. הנאשמת יכלה גם יכלה להתחרט בכל אחד
16 מן השלבים המתוארים, לנטוש את חבריה ולחזור על עקבותיה.

17

18 אמרתה של הנאשמת בסוף הדיון מדברת בעד עצמה ובמקום להביע חרטה, שאט
19 נפש והתנערות ממעשיה המתועבים, בחרה הנאשמת לרחוץ בניקיון כפיה ולציין כי
20 לא עשתה כל טעות.

21

22 הנה כי כן, הנאשמת תרמה במעשיה המגוונים תרומה של ממש להתהוות הפיגוע
23 ולתוצאותיו הקשות ממש. התנהגות זו מצידה את הנאשמת סמוך למעגל הפנימי
24 עד כי נוכל לומר כי לולא מגבלותיי של הדין באזור, ובהתאם להלכות הנוהגות
25 בישראל, יתכן בהחלט כי הנאשמת הייתה נכללת בין מבצעיה בצוותא של עבירת
26 גרימת המוות. זו גם הסיבה לחוסר האפשרות לגזור גזירה שווה בין העונש שהיה
27 מוטל על הנאשמת לו עמדה לדין במדינת ישראל, לבין העונש הראוי כי יושת עליה
28 על ידינו. בהעדר זהות מוחלטת בין הדוקטרינות המשפטיות הנוהגות בישראל
29 ובאזור, לא ניתן אף להסיק ממצאים בנוגע לעונש מן הנהוג בישראל. על כן, כל
30 היזקקות לפסיקה שהוצגה על ידי הסניגוריה, ככל שהיא רלוונטית מבחינה
31 עובדתית ובכך נותרו בנו ספקות, אינה ישימה במקרה זה.

32

-4-

תאריך: י"ח תמוז, תשס"ד          תיק מס': 3544/02
7 יולי, 2004

1   אין לשכוח כי הנאשמת בעלת תעודת זהות ישראלית, ומשכך חובתה המוסרית כלפי
2   מדינת ישראל וכלפי אזרחיה, רעיה, מוגברת היא.
3
4   מכל מקום, נסיבות העבירות כפי שפורטו לעיל, יחסה הנפשי של הנאשמת, שעשתה
5   כל שלאל ידה לחבטחת "הצלחת" משימתה, מעורבותה העמוקה בעשייה העברביינית
6   בשלביה הקריטיים, ונחישותה לגרום לתוצאה הקטלנית, מחייבים הרחקתה
7   לצמיתות מהחברה האנושית.
8
9   עם זאת, לבל יופר הצורך בקביעת מדרג עונשה בין המעורבים השונים בעבירות על
10  פי חלקם, סבורים אנו כי ראוי יהא לחטיל על הנאשמת עונש מאסר עולם אחד בגין
11  ארבע העבירות בהן הורשעה. בכך ייתן ביטוי הולם ומלא למעמדה של הנאשמת,
12  תפקידה, ומידת מעורבותה בהתרחשות הפיגוע כפי שפורטו.
13
14  אנו גוזרים, על כן, על הנאשמת עונש של מאסר עולם.
15
16
17  זכות ערעור תוך 30 יום.
18
19  ניתן והודע היום, 07/07/2004, בפומבי ובמעמד הצדדים.
20
21
22
23

שופט                    אב"ד                    שופט

-5-