# EXHIBIT A.346

PLAINTIFF'S
EXHIBIT
346



**Military Court of Appeal**
**In Judea and Samaria and the Gaza Strip**

**Judea and Samaria Appeal 1776/04**
**Judea and Samaria Appeal 1777/04**
**Judea and Samaria Appeal 2397/04**

Before the Panel:    Colonel Shaul Gordon    **- Presiding Judge**
                     Colonel Eliezer Wolff    **- Judge**
                     Colonel Moshe Tirosh    **- Judge**

**Sanah Mohamed Shehadeh, Identity No. 081021198** (Appellant in File 1776/04 and Respondent in File 1777/04) (Represented by Counsel for the Defense, Adv. Ahlam Haddad)

- v. -

**The Military Prosecutor** (Appellant in File 1777/04 and Respondent in File 1776/04) (Represented by Counsel for the Prosecution, Major Morris Hirsch)

**Kahira Sa'id Al-Sa'di, Identity No. 903946960** (Appellant in File 2397/04) (Represented by Counsel for the Defense, Adv. Azbarga)

- v. -

**The Military Prosecutor** (Respondent in File 2397/04) (Represented by Counsel for the Prosecution, Major Morris Hirsch)

Appeal against the Judgment by the Judea Military Court in File No. 3544/02 (Panel headed by the Honorable Deputy Presiding Judge Colonel Netanel Benichou and the Honorable Judges Major Arie Dorni and Major Zeev Afik) on July 7, 2004

And the Judgment by the Judea Military Court in File No. 3529/02 (Panel headed by the Honorable Presiding Judge Colonel Shlomi Kochav and the Honorable Judges Major Eli Toussia Cohen and Major Abraham Einhorn) on August 29, 2004

(The appeals in Files 1776/04 and 1777/04 were denied
The appeal in File 2397/04 was granted)

Date of Hearing: July 11, 2005, 4 Tamuz 5765

[Stamp] P 5: 134

1

Judea and Samaria Appeal 1776 & 1777/04
Judea and Samaria Appeal 2397/04

## Judgment

**Presiding Judge, Colonel S. Gordon:**

**Main Facts:**

On March 21, 2002, at about 4:20 p.m., a suicide bomber blew himself up on King George Street in Jerusalem. As a result of the bombing, three civilians were killed: the late Zippora Shemesh, who was pregnant at the time; the late Sgt. Major Gadi Shemesh and the late Yitzhak Cohen; and 81 civilians were injured and massive damage was also caused to property.

Following the investigation by the security forces, **Kahira Sa'di**, a resident of a-Ram, was arrested on May 8, 2002 (Appellant in File 2397/04, hereinafter: "**Kahira**"), and **Sanah Shehadeh**, a resident of the Kalandiya Refugee Camp, was arrested on May 24, 2002 (Appellant in File 1776/04, hereinafter: "**Sanah**").

Upon completion of the investigation, indictments were filed against the two, attributing to them a series of offenses, *inter alia*, causing intentional death and causing injury to the victims of said attack.

Eventually, following a plea bargain reached with the Military Prosecutor, the indictments were amended whereby the offenses of causing intentional death were changed to **accessory to causing intentional death**, and the offenses of attempting to cause intentional death with regard to injury of the bombing victims were changed to **accessory to attempting to cause intentional death**.

Since they were both convicted on the basis of admitting to the counts, each in her own case, different panels of judges were required for hearing their cases with regard to the matter of sentencing. First, **Sanah** was sentenced. Although the Prosecution argued that it would be appropriate to sentence her to several consecutive life sentences, the panel of judges hearing her case decided that a single life sentence would suffice. A month later, because the Court required a different panel of judges for sentencing **Kahira**, the panel that heard her case decided to sentence her to three life sentences and another 30 years, all consecutively one after the other.

2

[Stamp] P 5: 135

Consequently, and because these sentences did not satisfy the parties, three appeals have been filed: the Prosecution's appeal of the decision not to sentence **Sanah** to several consecutive life sentences as in the case of **Kahira**, and on the other hand, the appeals filed by both against the ruling sentencing them to life imprisonment as opposed to a set number of years, and particularly the decision to sentence **Kahira** to three consecutive life sentences.

Since we are dealing with a single incident and with the consent of the parties, we have decided to unite the hearings and to hand down a single ruling in these appeals.

### The involvement of the Appellants

The parties agree that notwithstanding certain differences between the two, their part in the above mentioned bombing attack did not differ sufficiently to justify different sentences, and therefore their sentences should be the same. This being the case, and before explaining the matter of their appropriate sentence, we must go back to the days prior to this horrific attack and understand the involvement of the Appellants in carrying it out.

As we see in the indictment filed against them, to which they have admitted, the fugitive **Nasser Shawish** (hereinafter: "**Shawish**") and one **A/Karim Aweis** (hereinafter: "**Aweis**") had arranged for the suicide bombing to be carried out.

2

[Stamp] P 5: 135 [continued]

3

According to the original plan, two suicide bombers were meant to carry out the attack: **Mohamed Hashaika** and a young woman known as **Suzie**. However, after the two were photographed as taking responsibility for the bombing attack, **Suzie** changed her mind and returned to her home in Nablus.

Around the same time, **Sanah** met a school friend by the name of **Obeida**, who was related to the fugitive **Shawish**, and who had sent to him young people who were willing to carrying out suicide attacks, and the latter asked for **Sanah**'s help in this activity. **Shawish** contacted **Sanah** and they met. At first **Sanah** told him that she did not have time to help introduce suicide terrorists, but the two decided to keep in touch.

On March 20, 2002, the day before the bombing in our case, **Shawish** asked **Sanah** to take a suicide bomber into Jerusalem for the purpose of carrying out a suicide bombing attack. **Shawish** told her that another young woman would help her in this matter.

The next day, on March 21, 2002, **Shawish**, **Aweis** and **Sanah** met with the suicide bomber at a hotel. Once the suicide bomber was fitted with the explosive belt, the four of them went to someone's house. At this stage, **Shawish** and **Aweis** instructed **Sanah** and the suicide bomber that if they are discovered by the IDF forces, **Sanah** must run away and the bomber should blow up the explosive belt he was wearing.

Later, because **Aweis** had had some doubts because **Sanah** was having concerns about carrying out the bombing attack, and because she was dressed in traditional Arab clothing, he called someone he knew by the name of **Kahira**, who had previously agreed to take part in carrying out suicide bombings and in accompanying suicide bombers. **Kahira** arrived at the meeting place **Aweis** had picked, where she was introduced to the suicide bomber and to **Sanah**. **Aweis** asked **Kahira** to travel with **Sanah** and the suicide bomber, since she was wearing pants and her head was uncovered. **Kahira** sat in the back seat of the car, next to the suicide bomber, while **Sanah** sat in the front, next to the driver of the car, **Shawish**.

[Stamp] P 5: 136

**Shawish** drove the three of them to the vicinity of the a-Ram checkpoint and from there they continued to Jerusalem on foot, having bypassed the checkpoint. Later, after **Kahira** had bought flowers which she gave to the suicide bomber, the three travelled to Jaffa Street in Jerusalem by taxi. Once they reached Jaffa Street, they looked for a crowded place that would be suitable for carrying out a bombing attack. At this stage, **Kahira** instructed **Sanah** to walk behind her and behind the suicide bomber because she was concerned that her traditional clothing may arouse suspicion.

At some stage, **Sanah** noticed a crowded area and consulted with **Kahira** as to whether the place was suitable for carrying out a suicide bombing. When **Kahira** agreed with her, they sent the suicide bomber to carry out the bombing attack while they hurried away from the place.

Several minutes later, at around 4:20 p.m., the suicide bomber blew himself up, causing the deaths of three civilians, injuring another 81 and causing massive damage to property.

### Criminal liability as Accomplice or as Accessory

Although the previous Court was not required to rule on the criminal liability of the Appellants, either as full accomplices or only as accessories, it appears that this was the decision hanging in the air when the panels of judges were required to address the matter of sentencing, and the parties also argued this issue in the Court of Appeals.

3

[Stamp] P 5: 136 [continued]

In my opinion, since the Prosecution agreed to change the offenses of causing intentional death to accessory to causing intentional death, there is no need to ponder this issue further. Although it is obvious that they came as accomplices to carry out the offense, since the Prosecution has agreed as part of the plea bargain to consider them only as accessories, I am afraid that it cannot now claim that they should be judged as accomplices.

The Military Prosecutor argued before us that with its agreement to amend the indictments the Prosecution intended to consider the two as accomplices under Section 14 (a) (2) of the Order regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 1968, which also mentions an accessory in committing an offense.

With all due respect, it appears to me that in this matter, the Military Prosecutor is mistaken. This Court has frequently had to lay out the differences between the various alternatives in the foregoing Section 14, and even if matters are not clear from the language used in the Section, the basis for the admissibility of this Section in the Penal Code prior to Amendment 39, which is Section 26, and its interpretation, we find that Section 14 (a) (1) deals with the principal perpetrator, Section 14 (a) (2) deals with an accomplice to the crime, Section 14 (a) (3) deals with an accessory and Section 14 (a) (4) deals with the instigator (Judea and Samaria Appeals 320, 323/03 **Military Prosecutor v. Hamdallah Ali**).

Consequently, since the indictment was amended and explicitly states that their liability is as accessories to causing intentional death and since it is also clear that at the outset, the Prosecution did not consider the liability of the Appellants as principal perpetrators but rather as accomplices only, and since there is no doubt that they did not trigger the switch causing the explosive device to go off by their own hand, it is only understandable that by amending the indictment, the Prosecution agreed to consider them as accessories.

Furthermore, it should be noted that whether thus or the other, whether the Prosecution assumed that they fall under Section 14 (a) (2) or Section 14 (a) (3), since the indictment was amended and the word "accessory" was explicitly added, there can be no dispute that it was agreed that they were not accomplices in the offense.

[Stamp] P 5: 137

Moreover, I can only reiterate and emphasize that (as emphasized in the matter of Hamdallah Ali, above) the Prosecution would do well if when attributing liability for an offense under one of the alternatives in Section 14 (a) of the Order regarding Rules of Liability for an Offense, it explicitly states to which alternative in the Section it refers. This issue has already come up in the past and it is unfortunate that in this case also the Prosecution deemed it sufficient to make such a vague mention that the liability of the Appellants falls under Section 14 (a).

**Appropriate sentence for the Appellants**

We have often clarified that by law the principal perpetrators, accomplices, accessories and instigators all bear full responsibility for committing the crime, as set out in the foregoing Section 14 (a), after all, when discussing the question of sentence it is clear that the principal perpetrators and accomplices differ from the accessories and the instigators.

It is simple and clear that if the Appellants were convicted of an offense as principal perpetrators, they should have been sentenced to a number of consecutive life sentences equivalent to the number of victims whose lives they cut short. Nonetheless, as they were convicted only as accessories, this is not the case.

In our case, the Prosecution sought to lend weight to the facts of the case, and given the significant part played by the Appellants, to judge them as though they were full accomplices in committing the offense. This I cannot do. Once the Prosecution has issued an indictment through the front door they cannot now slip back through the window, and once a first instance charge has been waived it cannot be reinstated in the Appeals Court.

4

[Stamp] P 5: 137 [continued]

The Prosecution controls the wording of the indictment, and in this matter the Court relies on what is placed before it. The Prosecution's consent to change the indictment to only accessories to the crime, even if in error, is significant, and the Counsels for the Appellants quite rightly relied on this when they admitted to the counts laid against the two.

In the tension between the need for "the punishment to fit the crime" and the duty to judge and to also lend weight to the interest of reliance, it seems to me that in this case, the scales, quite clearly, lean towards the Appellants.

It should be noted that the Military Prosecutor failed to show a case where this Court imposed a more severe punishment than one life sentence on anyone convicted as accessory to causing intentional death (see for example: Judea and Samaria Appeal 65/02, **Mukdi v. Military Prosecutor**) even when a criminal act causes the deaths of several people, and therefore, in our case, we are required to maintain a level of punishment that distinguishes between an accessory and the principal perpetrator and the accomplice in the offense.

Therefore, I find no substance in the Prosecution's appeal in the case of **Sanah**, and if my opinion bears any weight, this appeal should be dismissed.

Similarly, I find no substance in the appeal made by Counsel for the Defense in the case of **Sanah**. As mentioned, although we are forced, based on what has been heard, to consider her only as an accessory, and so it is, there is no doubt that she is a first degree accessory to the crime. If in the case of the said **Mukdi** we found it appropriate to impose a single life sentence on someone who assisted the suicide bomber in carrying out the bombing attack on the No. 5 bus in Tel Aviv without him being explicitly told that he was assisting in such attack, indeed the sentence to be imposed upon **Sanah**, who was aware of the bomber's intention and even played a significant part in taking him to the scene of the bombing attack and in selecting the suitable target, should certainly not be lighter than his.

With regard to sentencing of **Kahira**, it seems to me that given the sentence handed down for **Sanah**, and given the agreement of the parties that the involvement of the two of them was similar and therefore their punishment should be similar, her appeal should be granted.

[Stamp] P 5: 138

I have read the ruling of the previous Court, which decided to sentence her to three life terms plus 30 years' imprisonment consecutively; however, I cannot accept its arguments. The previous Court was aware of the sentence imposed upon **Sanah** a few weeks earlier, but in its opinion, the Court erred in ignoring the significant part she played in carrying out the attack. Indeed, there is substance in this argument; nonetheless, given the reasons set out above, and particularly the Prosecution's agreement to amend the indictments, its sentence cannot be upheld.

In conclusion: It is appropriate that **Kahira**'s appeal be granted and that instead of the sentence imposed by the previous Court, a sentence of only one life term be imposed upon her.


**Judge Colonel E. Wolff**

I concur.


**Judge Colonel M. Tirosh**

I concur.

5

[Stamp] P 5: 138 [continued]

Judea and Samaria Appeal 1776 & 1777/04
Judea and Samaria Appeal 2397/04

Appeal is granted, as per the opinion of the Presiding Judge, Colonel S. Gordon.

Granted and issued on this day, July 31, 2005, 24 Tamuz 5765, in the presence of the Appellants, their Counsel and the Military Prosecutor.

_____          _____          _____
            Judge                          Presiding Judge                          Judge

Recorded by: LP

6

[Stamp] P 5: 139

FROM : MOSHE S. TIROSH, M.D, LL.B, FCLM  FAX NO. : 972 3 6737756July 14 2005 09:45PM P2

Judea and Samaria Appeal 1776 & 1777/04
Judea and Samaria Appeal 2397/04

Appeal is granted, as per the opinion of the Presiding Judge, Colonel S. Gordon.


Granted and issued on this day, July __, 2005, __ Tamuz 5765, in the presence of the Appellants, their counsel and the Military Prosecutor.


| _____ | _____ | [Signature] |
| Judge | Presiding Judge | _____ |
|  |  | Judge |


[Stamp]    No. 0345059 Colonel Moshe Tirosh
Judge at the Military Court of Appeals


Recorded by:

6

[Stamp] P 5: 140

11

[truncated text]

14-JUL-2005 THU 1:38 PM        02084480                              P. 07

Judea and Samaria Appeal 1776 & 1777/04
Judea and Samaria Appeal 2397/04

Appeal is granted, as per the opinion of Presiding Judge Colonel S. Gordon.

Granted and issued on this day, July __, 2005, __Tamuz 5765, in the presence of the Appellants, their counsel and the Military Prosecutor.

| _____[Signature]_____ | _____[Signature]_____ | _____ |
| Judge | Presiding Judge | Judge |

Recorded by:

6

July 14, 2006  2:30 p.m.       FAX 02084460        LISHKA IRURIM           007
                                                                  [Stamp] P 5: 141

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

                              Plaintiffs,

          vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                              Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 134-141.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 134-141.

Rina Ne'eman

ss.: New Jersey

On the 28 day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

| | בית המשפט הצבאי לערעורים |
|---|---|
| ע/ איו״ש 1776/04 | באיו״ש ובאזח״ע |
| ע/ איו״ש 1777/04 | |
| ע/ איו״ש 2397/04 | |

בפני הרכב:  אל״ם שאול גורדון  – אב״ד

אל״ם אליעזר וולף  – שופט

אל״ם משה תירוש  – שופט

**סנאא מחמד שחאדה, ת״ז 081021198** (המערערת בתיק 1776/04 והמשיבה בתיק 1777/04)
(באמצעות ב״כ עו״ד אחלאם חדאד)

נגד

**התובע הצבאי** (המערער בתיק 1777/04 והמשיב בתיק 1776/04)(באמצעות ב״כ רס״ן מוריס

הירש)

**קאהירה סעיד עלי סעדי, ת״ז 903946960** (המערערת בתיק 2397/04)(באמצעות ב״כ עו״ד

אזברגה)

נגד

**התובע הצבאי** (המשיב בתיק 2397/04)(באמצעות ב״כ רס״ן מוריס הירש)

ערעור על פסק דינו של ביהמ״ש הצבאי יהודה בתיק מס׳ 3544/02 (הרכב בראשות כב׳ המשנה

לנשיא סא״ל נתנאל בנישו וכב׳ השופטים סרן אריה דורני וסרן זאב אפיק) מיום 7.7.04

ועל פסק דינו של ביהמ״ש הצבאי יהודה בתיק מס׳ 3529/02 (הרכב בראשות כב׳ הנשיא סא״ל

שלומי כוכב וכב׳ השופטים סרן אלי תוסיה כהן וסרן אברהם איינהורן) מיום 29.8.04

(הערעורים בתיקים 1776/04 ו-1777/04 נדחו

הערעור בתיק 2397/04 התקבל)

תאריך הישיבה: 11 ביולי 2005, ד׳ בתמוז התשס״ה.

ע/ איו"ש 1777+1776/04
ע/ איו"ש 2397/04

## פסק דין

**הנשיא אל"ם ש/ גורדון:**

**עיקרי העובדות**

ביום 21.3.02, בסביבות השעה 16:20 פוצץ עצמו מחבל מתאבד ברחוב המלך ג'ורג' בירושלים. כתוצאה מהפיצוץ נהרגו 3 אזרחים : ציפורה שמש ז"ל, אשר הייתה בהריון אותה עת, רס"מ גדי שמש ז"ל ויצחק כהן ז"ל, וכן נפצעו 81 אזרחים ונגרם אף נזק רב לרכוש.

בעקבות חקירת גורמי הביטחון נעצרה ביום 8.5.02 **קאהירה סעדי** תושבת א-רם (המערערת בתיק 2397/04, להלן : **קאהירה**), וביום 24.5.02 נעצרה **סנאא שחאדה** תושבת מחנה הפליטים קלנדיה (המערערת בתיק 1776/04, להלן : **סנאא**).

עם השלמת חקירתן הוגשו נגד השתיים כתבי אישום אשר ייחסו להן שורה של עבירות, ביניהן גרימת מוות ופציעתם של קורבנות הפיגוע האמור.

סופם של דברים ; בעקבות הסדר טיעון אשר גובש עם התביעה הצבאית, תוקנו כתבי האישום, באופן שעבירות גרימת המוות בכוונה הומרו בעבירות של **סיוע לגרימת מוות בכוונה** ועבירות הניסיון לגרימת מוות בכוונה, בגין פציעתם של קורבנות הפיגוע, הומרו בעבירות של **סיוע לניסיון לגרימת מוות בכוונה**.

משהורשעו השתיים על-פי הודאתן, כל אחת בתיקה היא, נדרשו החרכבים השונים אשר דנו בעניינן לשאלת העונש. ראשון, נגזר דינה של **סנאא**. הגם שהתביעה טענה כי ראוי היה לגזור לה מספר מאסרי עולם מצטברים, מצא החרכב אשר דן בעניינה להסתפק בעונש של מאסר עולם אחד בלבד. חודש ימים מאוחר יותר, משנדרש ביהמ"ש בחרכב אחר לעונשה של **קאהירה**, מצא החרכב אשר דן בעניינה לגזור לה 3 מאסרי עולם ו-30 שנות מאסר, כולם במצטבר זה לזה.

משכך, ומשלא הניחו עונשים אלה את דעתם של הצדדים, הוגשו לנו 3 עוררים אלה : ערעורה של התביעה על ההחלטה שלא לגזור ל**סנאא** מספר מאסרי עולם מצטברים, כפי שנעשה בעניינה של **קאהירה**, ומנגד ערעוריהן של השתיים על עצם ההחלטה לגזור להן עונש של מאסר עולם, תחת עונש קצוב בשנים, ובפרט על ההחלטה לגזור ל**קאהירה** 3 מאסרי עולם מצטברים.

הואיל ומדובר בפרשה אחת ובהסכמת הצדדים, החלטנו לאחד את הדיון וליתן החלטה אחת בערעורים אלה.

**חלקן של המערערות**

מוסכם על הצדדים כי חרף הבדלים מסוימים בין השתיים, אין חלקן בפיגוע האמור שונה באופן המצדיק גזירת עונשים שונים ועל כן צריך ועונשם יהיה זהה. הואיל וכך, וטרם נדרש לשאלת העונש הראוי להן, נדרשים אנו לשוב לימים שקדמו לפיגוע המחריד האמור ולמידת מעורבותן של המערערות בהוצאתו אל הפועל.

כעולה מכתב האישום שהוגש נגד השתיים, אשר בעובדותיו הודו כאמור, נדברו המבוקש **נאצר שוויש** (להלן : **שוויש**) ואחד **ע/כריב עוויס** (להלן : עוויס) להוציא אל הפועל פיגוע התאבדות.

2

ע' איו״ש 1776+1777/04
ע' איו״ש 2397/04

על פי התכנית המקורית, אמורים היו לבצע את הפיגוע שני מחבלים מתאבדים: **מחמד חשאיקה** וצעירה בשם **סוזי**. יחד עם זאת, לאחר שהשניים צולמו כשהם נוטלים אחריות לפיגוע, החליטה **סוזי** לחזור בה מכוונתה ושבה לביתה בשכם.

באותם ימים פגשה **סנאא** בחברתה ללימודים בשם **עובידה**, אשר הייתה מקורבת למבוקש **שוויש** ואף שלחה אליו צעירים המעוניינים לבצע פיגוע התאבדות, והאחרונה ביקשה מ**סנאא** את עזרתה בפעילויותה הנ״ל. **שוויש** יצר קשר עם **סנאא** והשניים נפגשו. תחילה מסרה **סנאא** כי אין לה זמן לסייע בהחדרת מחבלים מתאבדים, אך השניים קבעו להמשיך ולשמור על קשר.

ביום 20.3.02, יום קודם לביצוע הפיגוע נשוא עניינו, ביקש **שוויש** מ**סנאא** להעביר מחבל מתאבד לתוך ירושלים לצורך ביצוע פיגוע התאבדות. **שוויש** מסר כי בעניין זה תסייע בידה צעירה נוספת.

למחרת, ביום 21.3.02, נפגשו **שוויש, עוויס** ו**סנאא** עם המחבל המתאבד במלון. לאחר שהמחבל המתאבד הולבש בחגורת הנפץ, נסעו הארבעה לביתו של פלוני. בשלב זה חנהו **שוויש** ו**עוויס** את **סנאא** ואת המחבל המתאבד כי אם ייחשפו ע״י כוחות צה״ל, על **סנאא** לברוח ואילו המחבל יפוצץ את חגורת הנפץ שעל גופו.

בהמשך, משהתעורר ספק בליבו של **עוויס** שמא חושבת **סנאא** לבצע את הפיגוע, ומאחר וזו הייתה לבושה בלבוש ערבי-מסורתי, התקשר הוא למכרה בשם **קאהירה**, אשר הסכימה בעבר להשתתף בביצוע פיגוע התאבדות ובהובלת מחבלים מתאבדים. **קאהירה** הגיעה למקום המפגש שקבע **עוויס**, שם הוצגו בפניה המחבל המתאבד ו**סנאא**. **עוויס** ביקש מ**קאהירה** לנסוע יחד עם **סנאא** והמחבל המתאבד, הואיל ולבושה הייתה במכנסיים וראשה גלוי. **קאהירה** התיישבה במושב האחורי של הרכב, ליד המחבל המתאבד, ואילו **סנאא** ישבה במושב הקדמי, ליד נהג הרכב **שוויש**.

**שוויש** הסיע את השלושה עד לקרבת מחסום א-רם ומשם המשיכו רגלית לירושלים, לאחר שעקפו את המחסום. לאחר מכן, ולאחר ש**קאהירה** אף קנתה פרחים אותם מסרה למחבל המתאבד, נסעו השלושה במונית לרחוב יפו בירושלים. משהגיעו לרחוב יפו, תרו הם אחר מקום הומה אדם אשר יתאים לביצוע הפיגוע. בשלב זה הורתה **קאהירה** ל**סנאא** ללכת מאחוריה ומאחורי המחבל המתאבד, מאחר וחששה כי לבושה המסורתי יעורר חשד.

בשלב כלשהו הבחינה **סנאא** באזור הומה אדם והתייעצה עם **קאהירה** אם מתאים המקום לביצוע הפיגוע. משהסכימה עמה **קאהירה**, שילחו השתיים את המחבל המתאבד לביצוע הפיגוע, ואילו הן מיהרו להתרחק מהמקום.

כעבור דקות ספורות, בסביבות השעה 16:20, פוצץ עצמו המחבל המתאבד וגרם כאמור למותם של שלושה אזרחים, לפציעתם של 81 ולנזק רב לרכוש.

## אחריות כ״שותף״ או כ״מסייע״

הגם שבימ״ש קמא לא נדרש להכריע בשאלת האחריות המשפטית של המערערות, אם כשותפות מלאות לעבירה או שמא רק כמסייעות, דומה כי הכרעה זו היא שריחפה בחלל האוויר עת נדרשו הרכבים השונים לשאלת העונש, ואף בבימ״ש לערעורים טענו הצדדים בעניין זה.

לטעמי, משהסכימה התביעה להמיר את העבירות של גרימת מוות בכוונה לעבירות של סיוע לגרימת מוות בכוונה, אין עוד מקום להרהר אחר עניין זה. הגם שכשלעצמו פשוט הוא כי באות הן בגדר שותפות לביצוע העבירה, משהסכימה התביעה, במסגרת הסדר טיעון, לראות בהן מסייעות בלבד, חוששני שמוטעה היא מלטעון כי יש לדון כשותפות.

טען בפנינו התובע הצבאי, כי בהסכמתה של התביעה לתקן את כתבי האישום התכוונה היא לראות בשתיים כשותפות הבאות בגדרו של סעיף 14(A)(2) לצו הוא בדבר כללי האחריות לעבירה (יהודה והשומרון)(מס׳ 225), תשכ״ח – 1968, אשר אף בו מוזכר המסייע בביצוע העבירה.

עם כל הכבוד, דומה כי בעניין זה נקלע התובע הצבאי לכלל טעות. לא אחת עמד בימ״ש זה על ההבדלים שבין החלופות השונות של סעיף 14 הנ״ל, והגם שהדברים אינם עולים באופן ברור מלשון הסעיף, הרי שבהתאם על מקבילו של סעיף זה בחוק העונשין קודם תיקון מס׳ 39, הלא הוא סעיף 26, והפרשנות שניתנה לו, מקובלנו כי סעיף 14(A)(1) עניינו במבצע העיקרי, סעיף 14(A)(2) עניינו בשותף לעבירה, סעיף 14(A)(3) עניינו במסייע ואילו סעיף 14(A)(4) עניינו במשדל (ע׳ איו״ש 323/03, 320 **התובע הצבאי נ׳ חמדאללה עלי**).

על כן, משהוחלט כתב האישום וצוין בו **במפורש** כי מיוחסת להן אחריות בגין **"סיוע לגרימת מוות בכוונה"** ומשברור כי גם לכתחילה לא ייחסה התביעה למערערות אחריות כמבצעות עיקריות אלא כשותפות בלבד, משאין מחלוקת כי לא הן אלה שלחצו על המנגנון וגרמו במו ידיהן להפעלת מנגנון הנפץ, הרי שרק מובן הוא כי בתיקון כתב האישום הסכימה התביעה לראות בהן מסייעות.

למעלה מן הצורך ייאמר, כי בין כך ובין אחרת, בין אם סברה התביעה כי באות הן בגדר סעיף 14(A)(2) ובין אם בגדר סעיף 14(A)(3), משהוחלט כתבי האישום והוספה במפורש המילה **"סיוע"**, שוב לא יכולה להיות מחלוקת כי הוסכם כי אין הן באות בגדר שותפות לעבירה.

בשולי הדברים, אין לי אלא לחזור ולהדגיש (כפי שהודגש בעניין **"חמדאללה עלי"** הנ״ל) כי טוב תעשה התביעה אם בעת ייחוס אחריות לעבירות מכוח אחת מחלופות סעיף 14(A) לצו בדבר כללי האחריות לעבירה, ייאמר **במפורש** לאיזה מחלופות הסעיף מכוונת היא. הערה זו כבר עלתה בעבר, וחבל שגם במקרה זה הסתפקה התביעה בציון הסתמי כי אחריותן של המערערות היא מכוח סעיף 14(A), סתמה ולא פירשה.

## העונש הראוי למערערות

כבר הבהרנו לא אחת כי עצם הכשרת הדין נושאים המבצעים העיקריים, השותפים, המסייעים והמשדלים באחריות מלאה לביצוע העבירה, כקבוע בסעיף 14(A) רישא, הרי שבבואנו לדון בשאלת העונש ברי כי כי הרי המבצעים העיקריים והשותפים כהרי המסייעים והמשדלים.

פשוט וברור הוא כי אילו הורשעו המערערות כשותפות מלאות לעבירה, ראוי היה לגזור להן מספר מאסרי עולם **מצטברים** כמספר הקורבנות אשר את חייהם קיפדו. יחד עם זאת, משהורשעו הן כמסייעות בלבד, אין הדברים כן.

בענייננו, ביקשה התביעה ליתן את עיקר המשקל לעובדות המקרה, ולאור חלקן המשמעותי של המערערות לדון **כאילו היו שותפות מלאות לביצוע העבירה**. כזאת, לא אוכל לעשות. את שהוציאה התביעה מכתב האישום "בדלת הראשית" לא ניתן להגניב חזרה דרך "החלון", ואת שוויתרה התביעה בערכאה הראשונה לא ניתן להחזיר בערכאת הערעור.

4

ע' איי"ש 1776+1777/04
ע' איי"ש 2397/04

התביעה היא השולטת על ניסוח כתב האישום, ובעניין זה חי ביהמ"ש ממה שמונח בפניו. הסכמתה של התביעה להמרת האישומים לסיוע לעבירה בלבד, אף אם בטעות נעשתה, הינה בעלת משמעות, ובצדק רב ראו באי-כוח המערערות לסמוך על כך בבואם להודות באשמות שיוחסו לשתיים.

במתח הקיים בין הצורך ליתן "לרשע רע כרשעתו" לבין החובה לעשות צדק ולהעניק משקל אף לאינטרס ההסתמכות, דומני כי במקרה זה נטה הכף, בבירור, לצד המערערות.

יצוין, כי התביעה הצבאית לא השכילה להצביע על מקרה בו גזר בימ"ש זה עונש חמור ממאסר עולם אחד על מי שהורשע בסיוע לגרימת מוות בכוונה (ראה לדוגמא: ע' איי"ש 65/02 **מוקדי נ' התובע הצבאי**), אף כשברגע המעשה הנפשע למותם של מספר אנשים, ועל כן, חמור ככל שיהיה עניננו, מצווים אנו לשמור על מדרג ענישה המבדיל בין המסייע לבין המבצע העיקרי והשותף לעבירה.

אשר על כן, לא מצאתי ממש בערעור התביעה בעניינה של **סנאא**, ולו דעתי תשמע, יש לדחות ערעור זה.

בדומה, לא מצאתי ממש בערעור הסנגוריה בעניינה של **סנאא**. כאמור, אף אם אנוסים אנו, על פי הדיבור, לראותה כמסייעת בלבד, וכך נעשה, אין ספק כי מצויה היא ברובד העליון של המסייעים. אם בעניינו של אותו **"מוקדי"** מצאנו לגזור עונש של מאסר עולם אחד על מי שסייע למחבל המתאבד בפגיעתו בקו 5 בת"א, מבלי שנאמר לו במפורש כי מסייע הוא לפגיעה כאמור, הרי שעונשה של **סנאא**, אשר ידעה על כוונת המחבל ואף מילאה חלק משמעותי בהובלתו למקום הפיגוע ובבחירת היעד המתאים, בודאי אינו צריך להיות קל ממנו.

אשר לעונשה של **קאהירה**, דומני כי לאור העונש אשר נגזר ל**סנאא**, ולאור הסכמת הצדדים כי חלקן של השתיים דומה ועל כן עונשן יהיה זהה, יש לקבל את ערעורה.

עיינתי בגזר דינו של ביהמ"ש קמא, אשר ראה לגזור לה 3 מאסרי עולם ו-30 שנות מאסר במצטבר, אך אין בידי לקבל נימוקיו. ביהמ"ש קמא היה ער לעונש אשר נגזר ל**סנאא** שבועות ספורים קודם לכן, אך לשיטתו שגה ביהמ"ש בהתעלמו מחלקה המשמעותי בהוצאת הפיגוע אל הפועל. אכן, יש ממש בהנמקה זו, אולם לאור הנימוקים המפורטים מעלה, ועיקרם הסכמת התביעה לתיקון כתב האישום, שוב אין גזר דינו יכול לעמוד.

סופם של דברים; ראוי הוא ערעורה של **קאהירה** להתקבל, ותחת העונש אשר נגזר לה בביהמ"ש קמא יש לגזור לה עונש של מאסר עולם אחד בלבד.

<u>השופט אל"ם א' וולף:</u>

אני מסכים.


<u>השופט אל"ם מ' תירוש:</u>

אני מסכים.


5

P 5: 138

ע' איו"ש 1776+1777/04
ע' איו"ש 2397/04

הוחלט כאמור, בפסק דינו של הנשיא אל"ם ש' גורדון.

ניתן והודע היום, 31 ביולי 2005, כ"ד בתמוז התשס"ה, במוכחות המערערות, באי-כוחן והתובע"ץ.

_____          _____          _____
        שופט                        אב"ד                        שופט

רשמת: לפ

6

ע' א' ר'יש 1776+1777/04
ע' א' ר'יש 2397/04

הוחלט כאמור, בפסק דינו של הנשיא אל"ם ש' גורדון.

ניתן והודע חיום, ___ ביולי 2005, ___ בתמוז התשס"ה, בנוכחות המערערות, באי-כוחן
והתובע"ץ.

| שופט | אב"ד | שופט |

מ/ 0345059 אל"ם משה תירוש
שופט ביהמ"ש הצבאי לערעורים

רשמת:

ע׳ איו״ש 1776+1777/04
ע׳ איו״ש 2397/04

הוחלט כאמור, בפסק דינו של הנשיא אל״ם ש׳ גורדון.

ניתן והודע היום, ___ ביולי 2005, ___ בתמוז התשס״ה, במכחות המוצערות, באי-כוחן
והתוב״ץ.

_____          _____          _____
שופט                                    אב״ד                                 שופט

רשמת: