# EXHIBIT A.350


PLAINTIFF'S
EXHIBIT
350

Date:    October 17, 2004                                      File No.:    3529/02

# Judea Military Court of Appeal

**Before the Honorable Presiding Judge: Lieutenant Colonel Shlomi Kochav**
**Judge: Major Eli Toussia Cohen**
**Judge: Major Abraham Einhorn**

**The Military Prosecutor**
(Counsel for the Prosecution, Lieutenant Rani Amar)

- v. -

**The Defendant:   Kahira Sa'id Al-Sa'di, Identity No. 903946960 / Israel Prison Services -**
**Present**
(Counsel for the Defense, Adv. Abu Ranam)

---

### Arguments for Sentencing

Presiding Judge Lt. Colonel Shlomi Kochav

The Defendant was convicted on the basis of her admitting to offenses of accessory to causing intentional death (three offenses), accessory to attempting to cause intentional death, possession of an explosive device and conspiring to cause intentional death.

According to the amended indictment, at the beginning of 2002 A/Karim Aweis suggested that the Defendant accompany suicide bombers to Jerusalem, and she agreed. And indeed, on March 21, 2002, A/Karim Aweis called the Defendant and asked her to travel to Ramallah. At their meeting place, he showed her a car and told her that sitting in the car was a terrorist on his way to carry out a bombing attack and another woman (Sanah Shehadeh), and he asked her to accompany them to carry out the attack. The Defendant got into the car and sat in the back seat next to the suicide bomber (by the name of Mohamed Hashaika) who was wearing an explosive belt. A fourth person, by the name of Nasser Shawish, was driving the car. Further down the road they separated from the driver and continued on foot as well as by taxi, thus reaching Jaffa Street in Jerusalem. There, the Defendant told Sanah to walk behind her and not next to her because Sanah was dressed in traditional Arab clothing and the Defendant was wearing pants and her head was uncovered. The Defendant saw that there were many people in the street and told Sanah that this was a good place to carry out the bombing attack. Sanah agreed and sent the suicide bomber to carry out the planned attack. [...]

[Stamp] P 5: 149

[…] Both women left, and the suicide bomber blew himself up in King George Street in Jerusalem. As a result of the blast, the late Zippora Shemesh, who was pregnant; the late Sgt. Major Gadi Shemesh and the late Yitzhak Cohen were killed; and 81 other civilians were injured. At the time of the blast, the Defendant was still at the scene and bits of flesh from the victims hit her.

In May 2002, Muhammad Aardeh, a Global Islamic Jihad Movement operative and his friend, Khadr Dabaya, decided to carry out a suicide bombing attack. Khadr met with the Defendant and told her that there was a terrorist willing to carry out a suicide bombing attack in Jerusalem. The Defendant agreed to accompany the suicide bomber to the scene of the attack. After Khadr was detained, the Defendant met with Muhammad Aardeh. He asked her to accompany a suicide bomber to Jerusalem and she agreed; however, because she was detained, this plan was not put into effect.

In his argument, the Military Prosecutor requested that the Defendant be sentenced to four consecutive life sentences. The Prosecutor was aware that the Defendant's partner, Sanah, was sentenced, in File No. […]

-1-

[Stamp] P 5: 149 [continued]

Date:    October 17, 2004                                        File No.:    3529/02

[…] 3544/02 to only one life sentence; nonetheless, he noted that the Prosecution was not satisfied with this sentence and had filed an appeal.

Defense counsel requested that the Defendant be sentenced to less than life imprisonment.

It was noted, with respect to those who send the suicide bombers, in Judea and Samaria File No. 183/03:

"In my opinion, not only should the punishment of the person who sends the terrorist not be easier than that of the terrorist who is willing to carry out a suicide attack, it should be even more severe. A suicide bomber, who is willing to lose his life provided that he is able to cause death and grief and pain, is difficult to deter. However, once their attempts have failed, even these [individuals] request that the Court not impose upon them the full extent of the law, though it is unlikely that the punishment awaiting them, should they fail in their quest, would cause them even the slightest hesitation.

This is not the case with those who send them. These [individuals], despite their desire to cause the deaths of innocent civilians, are not prepared to put their own lives on the line. They believe and hope that they will be able to evade the security forces, hence the need for painful and deterring punishment.

Not only this, the threat posed to the entire world by such person is greater than that of the suicide bomber, since while the latter carries out an attack and is killed, the person who sent him continues in his quest and tries to cause further attacks. Consequently, permanently removing such person from society is a significant contribution to the security of the Area and to public safety."

In the case before us, the Defendant played an active and conscious part in accompanying the suicide bomber to the scene of the bombing, thereby making herself a party to the inner circle of perpetrators, and therefore she is liable, in my opinion, to three consecutive life sentences for the first three counts on which she has been convicted, for the horrific results thereof.

[Stamp] P 5: 150

I have carefully read the ruling in File No. 3544/02, which sentences her partner, Sanah, to a single life sentence; however, I do not agree with that outcome. The main argument (if not the only one) there, for not imposing punishment of more than one life sentence is to maintain the hierarchy of punishment for others whose parts in the same attack were greater than that of the Defendant (reference to File No. 3739/02 in the matter of Nasser Shawish, who was one of the planners of the attack). Indeed, hierarchy of punishment is an argument that must be considered; however, in my opinion, when moving up the scale of severity of an offense to a level as serious as bringing a suicide bomber to his destination, and when such horrific results were caused, it is appropriate to impose a life sentence for each death caused. And the fact that there is someone whose offenses are even more terrible is not a reason to mitigate the punishment in the present case.

With respect to the other counts on which the Defendant has been convicted, including conspiring to accompany another suicide bomber to Jerusalem, these offenses have shown me that the Defendant was not satisfied with her part in the attack that was carried out and that she continued to act and assist in another suicide attack. I find that this, too, strengthens the conclusion I reached above. I also see fit to impose upon the Defendant an additional 30 years' imprisonment for these other offenses.

-2-

[Stamp] P 5: 150 [continued]

Date:     October 17, 2004                                      File No.:     3529/02

**Judge Major Eli Toussia Cohen:**

1.  I have read the judgment given by Lt. Colonel Shlomi Kochav and I concur. I wish to add to what he has stated therein, by emphasizing the following issue.

2.  As aforesaid, according to the original indictment, the Defendant was charged, *inter alia*, with three counts of causing intentional death, in violation of Section 51 (A) of the Security Provisions Order No. 378, and Section 14 of the Rules of Liability for an Offense Order No. 225.

3.  The parties reached, as aforesaid, a plea bargain under which the Defendant was convicted, *inter alia*, on three counts of accessory to causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

4.  Counsel for Defense argued, in his argument for sentencing, that in principle, "hierarchy of punishment between a principal perpetrator and others who assisted him must be taken into account in the Court's rulings".

5.  On the other hand, the Prosecutor argued that in the matter of punishment, the distinction must be found in the level of the Defendant's involvement in carrying out the offense.

6.  In this context, Section 14 of the order regarding Rules of Liability for an Offense defines a principal perpetrator as the person who carries out the offense and/or who assists and/or who incites in carrying out the offense.

7.  From this we find that in fact, the definition of the Defendant's role, that is, as an accessory, is immaterial with respect to punishment.

8.  And indeed what is to be taken into account with respect to sentencing is the level of the Defendant's involvement in committing the offense (whether she is defined as the principal perpetrator or as an accessory or as an instigator). The foregoing principle was expressed in Judea and Samaria Appeals 66/02 and 64/02, in Section 8, where the presiding judge, Colonel Shaul Gordon ruled:

When we come to determine the degree of punishment appropriate for the circumstances of the case, we must examine the degree of involvement of the Appellant in the attack, that is, did he belong to the "inner circle" of perpetrators of the offense or even if he was an accomplice, he was after all a minor accomplice whose part was relatively limited and his liability in the offense is "indirect liability".

[Stamp] P 5: 151

And when examining the degree of the Defendant's involvement as set out in the indictment, I agree with Colonel Shlomi Kochav that her involvement was active and significant and not simply technical.

**Judge Major Abraham Einhorn**: I concur.

**Handed down this day, October 17, 2004, in chambers; the Court secretary will send copies to the parties.**

|  |  |  |
|---|---|---|
| _____[Signature]_____ | _____[Signature]_____ | _____[Signature]_____ |
| Judge | Presiding Judge | Judge |

-3-

[Stamp] P 5: 151 [continued]

Date:    12 Elul 5764                                            File No.:    3529/02
         August 29, 2004

## Judea Military Court of Appeal

**Before the Honorable Presiding Judge: Lt. Colonel Shlomi Kochav**
**Judge: Major Eli Toussia Cohen**
**Judge: Major Abraham Einhorn**

**Military Prosecutor**
(Counsel for the Prosecution, Lieutenant Rani Amar)

- v. -

**Defendant: Kahira Sa'id Al-Sa'di, Identity No. 903946960 / Israel Prison Services - Present**
(Counsel for the Defense, Adv. Abu Ranam)

---

### Ruling

After having considered the arguments of the parties, we have decided to impose upon the Defendant the following sentences:

**Three consecutive life sentences and 30 years' imprisonment, cumulative, one after the other.**

Arguments for sentencing will be issued soon.

**Right to appeal from the date of issuing of arguments.**

**Granted and issued this day, August 29, 2004, in public.**


| [Signature] | [Signature] | [Signature] |
| --- | --- | --- |
| Judge | Presiding Judge | Judge |


-5-

[Stamp] P 5: 152

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                                    Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                                    Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief.  The document is designated as P5: 149-152.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience.  I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 149-152.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

HIRUT J NMRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2322704

תאריך :    17.10.04                                                        תיק מס' : 3529/02

בית המשפט הצבאי יהודה                                                        1
                                                                            2
בפני כב' הנשיא: סא"ל שלומי כוכב                                              3
שופט : סרן אלי תוסיה כהן                                                     4
שופט : סרן אברהם איינהורן                                                    5
                                                                            6
התביעה הצבאית                                                               7
(באמצעות סגן ראני עאמר)                                                      8
                                                                            9
נגד                                                                        10
                                                                           11
הנאשמת: קאהירה סעיד עלי סעיד ת.ז 903946960 / שב"ס                           12
(באמצעות ב"כ עו"ד אבו ראנם )                                                13
                                                                           14
                                                                           15
────────────────────────────────────                                      16
                                                                           17
נימוקי גזר הדין                                                             18
                                                                           19
                                                                           20
האב"ד סא"ל שלומי כוכב                                                        21
                                                                           22
הנאשמת הורשעה על-פי הודאתה בעבירות של סיוע לגרימת מות בכוונה (שלוש            23
עבירות), סיוע לניסיון לגרימת מות בכוונה, אחזקת פצצה וקשירת קשר לגרימת         24
מות בכוונה.                                                                

על-פי כתב האישום המתוקן בתחילת שנת 2002 הציע ע/כרים עוויס לנאשמת             25
להוביל מחבלים מתאבדים לירושלים והיא הסכימה. ואמנם בתאריך 21/03/02            26
התקשר ע/כרים עוויס לנאשמת, וביקש ממנה לבוא לרמאללה. במקום המפגש              27
הראה לה כלי רכב, מסר לה כי בו יושב מחבל בדרך לבצע פיגוע התאבדות ואישה        28
נוספת  (סנאא שתאאדה), וביקש כי תיסע איתם לביצוע הפיגוע. הנאשמת נכנסה         29
לרכב וישבה מאחור ליד המחבל המתאבד (מחמד חשאיקה שמו) אשר היה לבוש             30
בחגורת נפץ. ברכב נהג אדם רביעי, נאצר שוויש שמו. בהמשך הדרך  נפרדו מן הנהג    31
והמשיכו ברגל, ואף במוניות, וכך הגיעו לרחוב יפו בירושלים. שם אמרה הנאשמת      32
לסנאא ללכת מאחוריהם ולא לידם, כיוון שסנאא הייתה לבושה בלבוש ערבי             33
מסורתי, ואילו הנאשמת הייתה במכנסיים וללא כיסוי ראש. הנאשמת ראתה כי           34
ברחוב אנשים רבים ואמרה לסנאא כי זה מקום טוב לבצע פיגוע התאבדות. סנאא         35
הסכימה, ושלחה את המחבל המתאבד לבצע את הפיגוע המתוכנן. שתי הנשים             36
התרחקו, והמחבל המתאבד פוצץ עצמו ברחוב קינג ג'ורג' בירושלים. כתוצאה          37
מהפיצוץ נהרגו, ציפורה שמש ז"ל שהייתה בהריון, רס"מ גדי שמש ז"ל ויצחק כהן      38
ז"ל וכן נפצעו 81 אזרחים נוספים. בעת הפיצוץ עוד הייתה הנאשמת במקום וחלקי     39
בשר של הנפגעים פגעו בה.                                                    40

במאי 2002 החליט מחמד עארדה פעיל ג'יהאד איסלמי צבאי וחברו חאדר דבאעיה        41
לבצע פיגוע התאבדות. חאדר נפגש עם הנאשמת, ואמר לה כי יש מחבל המוכן לבצע       42
פיגוע התאבדות בירושלים. הנאשמת הסכימה להוביל את המתאבד למקום הפיגוע.        43
לאחר מעצרו של חאדר, נפגשה הנאשמת עם מחמד עארדה. הוא ביקש ממנה               44
להוביל מחבל מתאבד לירושלים והיא הסכימה , אולם עקב מעצרה לא יצא התכנון        45
לפועל.                                                                     46
                                                                           47
התובע הצבאי בטיעוניו לעונש ביקש כי יוטלו על הנאשמת 4 מאסרי עולם             48
מצטברים. התובע היה מודע לכך כי על השותפה של הנאשמת, סנאא, הוטל בתיק          49

-1-

P 5: 149

תאריך :  17.10.04                     תיק מס׳ : 3529/02

1    3544/02 מאסר עולם אחד, אולם הוא ציין כי התביעה אינה שלמה עם אותו גזר דין
2    והגישה עליו ערעור.
3    הסניגור מצידו ביקש כי יוטל על הנאשמת עונש שהוא פחות ממאסר עולם.
4
5
6    לגבי משלחי מחבלים מתאבדים כבר נאמר בע׳ איו״ש 183/03 :
7    "לטעמי, לא רק שדינו של המשלח אינו צריך להיות קל מזה של המחבל הנכון לבצע
8    את פיגוע ההתאבדות, אלא שעליו להיות אף חמור ממנו. המחבל המתאבד, הנכון
9    לאבד את חייו ובלבד שיעלה בידו לזרוע מוות ולהביא שכול וכאב, קשה להרתיעו.
10   אמנם, לאחר שנכשל ניסיונם, מבקשים אף אלה מביהמ״ש שלא למצות עמם את
11   מלוא חומרת הדין, אך קשה להניח כי היה בעונש הצפוי להם במקרה בו ייכשל
12   ניסיונם כדי לגרום להיסוס, ולו הקל שבקלים.
13   לא כן המשלחים. אלה, חרף רצונם בגרימת מותם של אזרחים חפים מפשע, אינם
14   מוכנים לשים את נפשם בכפם. אלה, מאמינים ומקווים כי יעלה בידיהם לחמוק
15   מידי כוחות הביטחון, ומכאן הצורך בענישה כואבת ומרתיעה.
16   לא זו אף זו; סכנתו של המשלח לעולם גדולה היא משל המחבל המתאבד, שבעוד
17   שהאחרון מבצע את הפיגוע והולך לעולמו, הרי שהמשלח ממשיך במעשיו ומנסה
18   לגרום לפיגועים נוספים. משכך, בהרחקתו של המשלח מן החברה לצמיתות, יש
19   לתרום תרומה לא מבוטלת לביטחון האזור ולשלום הציבורי".
20
21   במקרה שלפנינו נטלה הנאשמת חלק פעיל ביותר ומודע בהבאת המחבל המתאבד
22   למקום הפיגוע, בכך הפכה עצמה לשותפה למעגל הפנימי של מבצעי העבירה, ולכן
23   היא ראויה לדעתי לשלושה מאסרי עולם מצטברים בגין שלושת העבירות הראשונות
24   בהן הורשעה, על התוצאות הנוראיות שבהן .
25
26   עיינתי ביסודיות בגזר הדין בתיק 3544/02 שם הוטל מאסר עולם אחד על השותפה
27   סנאא, אך אינני מסכים לתוצאה ששם. הנימוק העיקרי (אם לא היחיד) שם ,שלא
28   להטיל יותר ממאסר עולם אחד, הוא על מנת לשמור על מידרג הענישה כלפי אחרים
29   שחלקם באותו פיגוע היה גדול יותר מזו של הנאשמת (מפנים לתיק 3739/02 בעניינו
30   של נאצר שוויש שהיה ממתכנני הפיגוע). אכן מידרג הענישה הוא נימוק שחייבים
31   לשקול, אולם לטעמי, כאשר מטפסים בסולם חומרת המעשים עד לשלב כה חמור
32   של הבאת מחבל מתאבד ליעדו, וכאשר נגרמו תוצאות כה נוראות, מן הראוי להטיל
33   מאסר עולם בעבור כל מוות שנגרם. והעובדה כי יש מי שמעשיו עוד יותר חמורים,
34   אינה טעם להקל בעונש הנוכחי.
35
36   באשר לעבירות הנוספות בהן הורשעה הנאשמת, לרבות קשירת הקשר להוביל
37   מחבל מתאבד נוסף לירושלים לימדוני אותן העבירות כי הנאשמת לא הסתפקה
38   במעשיה בפיגוע שיצא לפועל, וביקשה להוסיף ולפעול ולסייע בפיגוע התאבדות
39   נוסף. גם בכך מצאתי חיזוק לתוצאה אליה הגעתי לעיל. כמו כן ראיתי לנכון להטיל
40   על הנאשמת 30 שנות מאסר במצטבר בגין אותן עבירות נוספות.
41

-2-

תאריך : 17.10.04                              תיק מס' : 3529/02

השופט סרן אלי תוסיה – כהן:

1. קראתי את גזר הדין של סא"ל שלומי כוכב והנני מסכים ומצטרף לאמור בו כשברצוני להדגיש סוגיה כדלקמן.

2. כאמור ע"פ כתב האישום המקורי הואשמה הנאשמת בין היתר בשלוש עבירות של גרימת מוות בכוונה בניגוד לסעיף 51 (א) לצו בדבר הוראות בטחון צו מס' 378 וס' 14 לצו בדבר כללי האחריות לעבירה צו מס' 225.

3. הצדדים הגיעו, כאמור, לידי הסדר טיעון לפיו הנאשמת הורשעה בין היתר בשלוש עבירות של סיוע לגרימת מוות בכוונה בעבירה לפי ס' 51 (א) לצו בדבר הוראות בטחון (יהודה ושומרון) (מס' 378), תש"ל 1970.

4. הסניגור במסגרת טיעוניו לעונש טען כי באופן עקרוני "מדרג העונשה בין המבצע העיקרי לבין אחרים שסייעו צריך למצוא את מקומו בהחלטות ביהמ"ש".

5. מאידך התובע טען כי לעניין העונש, האבחנה צריכה לקבל ביטוי בהיקף מעורבות הנאשמת בביצוע העבירה.

6. בהקשר הנ"ל ס' 14 לצו בדבר כללי האחריות לעבירה קובע כמבצע עיקרי אדם העושה המעשה ו/או המסייע ו/או המשדל.

7. מכאן אנו למדים שבצעם הגדרת תפקידה של הנאשמת, קרי כמסייעת, אין נפקא מינה לעניין העונש.

8. ומה שאכן יובא בחשבון לעניין העונש הינו מידת המעורבות של הנאשמת בביצוע העבירה (בין אם הגדרתה כמבצעת עיקרית או מסייעת או משדלת). העיקרון הנ"ל קיבל ביטוי בע/איו"ש 66/02 , 64/02 בסעיף 8 שם נקבע ע"י כבוד הנשיא אל"מ שאול גורדון :

"בבואנו לקבוע את מידת העונש ההולמת את נסיבות המקרה, עלינו לבחון מה הייתה מידת מעורבותו של המערער בפיגוע , היינו, האם השתייך הוא "למעגל הפנימי", של מבצעי העבירה או שמא אף אם שותף הוא הרי שהיה שותף זוטר אשר חלקו מצומצם יחסית ואחריותו לעבירה הינה "אחריות עקיפה".

ובבחינת מידת מעורבותה של הנאשמת כמפורט בכתב האישום, מסכים אני עם סא"ל שלומי כוכב כי מעורבותה הייתה פעילה ומהותית ולא טכנית גרידא.

השופט סרן אברהם איינהורן: אני מסכים.

ניתן היום, 17/10/2004 , בלשכה, מזכירות בית המשפט תעביר העתק לצדדים.

שופט                        אב"ד                        שופט

-3-

P 5: 151

תיק מסי : 3529/02

תאריך : יבי אלול, תשסייד
29 אוגוסט, 2004

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה

בפני כבי הנשיא: סאייל שלומי כוכב

שופט: סרן אלי תוסיה כהן

שופט: סרן אברהם איינהורן

התביעה הצבאית

(באמצעות סגן ראני עאמר)

נגד

הנאשמת: קאהירה סעיד עלי סעיד ת.ז 903946960 / שבייס  - נוכחת

(באמצעות בייכ עוייד אבו ראנם)

_____

## <u>גזר דין</u>

לאחר ששקלנו את טיעוני הצדדים החלטנו להטיל על הנאשמת את העונשים הבאים :

**שלושה מאסרי עולם, ו-30 שנות מאסר בפועל, כולם במצטבר זה לזה.**

נימוקים לגזר הדין ינתנו בהקדם.

**זכות הערעור מיום מתן הנימוקים.**

**ניתן והודע היום, 29/08/04, בפומבי.**

שופט                     אבייד                     שופט

-5-

P 5: 152