# EXHIBIT A.355

| Site map

| Русский | עברית | | English

| Русский | עברית | | English

MFA    Press Room    About the Ministry    Consular Services    Foreign Policy    International Orgs    About Israel    Video

MFA   MFA Archive   2002   Statement of Indictment- Nasser Mahmoud Ahmed Aweis-16-Jul-2002

2002

Tools     Information

Contact us

Israeli missions worldwide

Historical Documents

Treaties and Agreements

Subscribe to RSS

## Statement of Indictment- Nasser Mahmoud Ahmed Aweis-16-Jul-2002

16 Jul 2002

Statement of Indictment: Nasser Mahmoud Ahmed Aweis

July 16, 2002

Magistrate Court of Tel Aviv and Jaffa

District Court of Tel Aviv and Jaffa

Before a panel

State of Israel - The Prosecutor
- Versus -
Nasser Mahmoud Ahmed Aweis - The Defendant
Born 1970, Identification No. 900358664
Balata Refugee Camp
(in custody since April 13, 2002)

Statement of Indictment

General

1. 1. During the period relevant to the events constituting the subject matter of this indictment, the Defendant was the Nablus and northern Samaria commander for the "Tanzim" - Fatah organization and also served as the commander of the "Katab Shuhada Al-Aqsa" - the Al-Aqsa Martyrs Brigades in this region (hereinafter: "the Terrorist Organization").

The above organizations are a "Terrorist Organization" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and operations of the Terrorist Organization.

The Defendant is a resident of the Balata refugee camp in the Nablus area.

2. After the outbreak of the violent incidents brought on by Palestinian elements at the end of September 2000, referred to by these elements as the "Al-Aqsa Intifada" (hereinafter: "the Al-Aqsa Intifada"), the Defendant, as a senior commander in the Terrorist Organization, initiated, organized and directed attacks against Israeli targets both within the State of Israel and in the Judea and Samaria region, which resulted in the deaths of dozens of citizens of the State of Israel. In addition, hundreds of additional citizens were wounded and hurt.

All this was a direct result of the Defendant's role within the hierarchy of the Terrorist Organization.

The Defendant's actions, in addition to all the above, also



PLAINTIFF'S
EXHIBIT
355

P 5: 161

included the purchase and manufacture of various combat weapons and their conveyance, whether directly or indirectly, into the hands of terrorists who actually perpetrated attacks on behalf of the Terrorist Organization.

3. Since the start of "the Al-Aqsa Intifada'" the Terrorist Organization has engaged in intensive terrorist activities against the State of Israel, including the perpetration of suicide attacks and shooting attacks against Israeli citizens.

4. The Terrorist Organization acted during the entire period relevant to the indictment in the framework of a hierarchical organization, in which the Defendant was subordinate to Marwan Barghouti (hereinafter: "Barghouti"), head of the Tanzim in the Judea and Samaria region, who is subordinate to the chairman of the Palestinian Authority, Yasser Arafat.

5. In order to carry out the terrorist activities, the Defendant received extensive financial funding, both from Barghouti with the approval of Arafat, and from other sources.

6. The facts set out above in the general section should be read as a part of each one of the counts set out below.

Charge 1:

A. The facts:

1. At or about 02:30 on March 5, 2002, the terrorist Ibrahim Hasouna (hereinafter: "Hasouna") arrived at the "Sea Food Market" restaurant on Menachem Begin St. in Tel-Aviv (hereinafter: "the Restaurant") armed with an M-16 rifle, grenades and a knife with the intention to perpetrate a murderous attack.

At that same time, the Restaurant was completely packed with dozens of diners.

2. A. Hasouna arrived at the "Beit Maariv Bridge" located on the aforementioned street opposite the Restaurant and began shooting at the diners with the intention of willfully causing the deaths of many of them.

Near this time Hasouna threw a hand grenade into the Restaurant that miraculously did not explode.

Immediately thereafter Hasouna approached the Restaurant and stabbed those Restaurant diners who got in his way, with the goal of willfully causing the deaths of many of the diners.

B. Immediately after Hasouna began shooting at diners as described above, Police forces were called to the area.

One of the first police officers to arrive at the scene of the attack was the late Staff Sergeant-Major Selim Barakat, who charged at Hasouna with the goal of stopping his murderous activities.

Hasouna stabbed Staff Sergeant-Major Selim Barakat in various parts of his body and neck repeatedly, using a knife he was equipped with, with the intention of willfully causing his death.

C. In his actions as described above, Hassona caused the intentional deaths of the late 33-year old Staff Sergeant-Major Selim Barakat, who died as a result of the fatal stabbings; the late 52-year old Yosef Habi, who died as a result of Hasouna's fatal stabbings in his chest and other parts of his body and was also hit by a bullet in his leg; and the late 53-year old Eli Dahan, who met his death as a result of Hasouna's fatal stabbings in his back and stomach.

D. Likewise, as a result of Hasouna's aforementioned acts, committed with the intention of causing serious harm, dozens of other people were hurt, some of who suffered serious injuries.

E. Hassona was shot to death by Israel's security forces upon their arrival at the scene of the attack.

3. Some time prior to the aforementioned events, the Defendant, who as described above was one of the senior commanders of the Terrorist Organization, conspired with Mahmoud Titi (hereinafter "Titi") and Ahmed Barghouti (hereinafter "Ahmed"), who were key activists in the Terrorist Organization, and with other activists, to carry out an attack with the goal of causing the willful deaths of many Israeli citizens.

4. In the course of the preparations by the Defendant and the other activists in the Terrorist Organization, at the head of which stood the Defendant, to commit the conspiracy, the following activities were committed under the leadership of the Defendant, for the purpose of advancing and perpetrating the conspiracy:

A. Hasouna was recruited with the knowledge and approval of the Defendant to carry out the above attack with the goal of causing the intentional death of many victims.

B. Hasouna was equipped with an M-16 rifle and hand grenades by activists of the Terrorist Organization who had joined together to commit the conspiracy.

C. The Defendant ordered Ahmed to meet Hasouna in Ramallah and have him [Hasouna] meet with other people who would take him to Tel-Aviv, to a place full of people, so that the attack perpetrated by Hasouna would cause a great number of fatalities.

D. Ahmed fulfilled the Defendant's instructions and introduced Hasouna to others who joined together to commit the conspiracy.

Activists of the Terrorist Organization who joined together to commit the conspiracy prepared Hasouna to carry out the suicide attack and near the time of the attack, Morad Agloni and Mazen Al-Kadi - activists in the Terrorist Organization who joined together to commit the conspiracy - drove Hasouna to Tel-Aviv and dispatched him from their car near the Restaurant in which Hasouna perpetrated the attack as detailed above.

E. The Defendant ordered Titi to film Hasouna as a "suicide bomber" before his departure to carry out the attack in order to be able, after the attack, to send the tape, in which Hasouna appears, to various television stations.

This behavioral pattern is typical of the activities of the Terrorist Organization - of which the Defendant was a senior commander - during its preparations to carry out suicide attacks.

F. After the attack in the Restaurant, as detailed above, the Defendant contacted various television stations and other media, and notified them that the Terrorist Organization was responsible for and perpetrated the attack.

Likewise, the Defendant ensured that the films detailed in subsection E above reached the various media.

5. A. In his actions as described above, the Defendant conspired to willfully cause the deaths of 3 people.

B. In his actions as described above, the Defendant unlawfully attempted to cause the death of a large number of people.

C. In his actions as described above, the Defendant intended to cause aggravated harm by the unlawful wounding of dozens of other people.

6. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

7. An M-16 rifle and hand grenades are weapons in accordance with the law.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Premeditated murder, an offense in accordance with Section 300(A)(2) of the Penal Code, 5737-1977 (hereinafter "the Code").

2. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code.

3. Causing harm with aggravated intent, an offense in accordance with Section 329(1) of the above Code.

4. Conspiracy to commit a crime - an offense in accordance with Section 499 of the Code.

5. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

6. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Charge 2:

A. The facts:

1. A. At or about 22:45, on January 17, 2002, the terrorist Abed Al Salem Hasouna (hereinafter "Abed Al Salem") arrived at the Armon David catering hall in Hadera (hereinafter "the Hall"), armed with an M-16 rifle and hand grenades, and wearing a battle webbing containing magazines, all this with the intention of perpetrating a murderous attack.

At that same time a Bat Mitzvah was being held for the girl Nina Kardshov, attended by dozens of guests.

B. Abed Al Salem burst into the Hall and began shooting randomly in all directions at the guests present in the Hall, all this with the intention of causing the willful deaths of many of the guests.

C. After Abed Al Salem discharged multiple machine gun rounds, a number of unarmed guests heroically charged him [Abed Al Salem] and managed to overpower and drag him outside the Hall where he was shot and killed by the security forces called to the scene.

D. In his actions as described above, Abed Al Salem caused the willful death of six of the guests:

The late Anatoly Bakshayev, 63; Edward Bakshayev, 48; Boris Melikhov, 56; Dina Binayev, 48; Aharon Ben Yisrael-Ellis, 32; and Avi Yazdi, 25.

E. Furthermore, as a result of Abed Al Salem's actions as described above, committed with the intention of causing aggravated harm, dozens of other people were hurt, some of who suffered severe injuries.

2. Some time prior to the events described above, the Defendant, who as said above was one of the senior commanders of the Terrorist Organization, conspired with a person named Ahmed Abu Khader (hereinafter "Khader") who was a key activist in the Terrorist Organization, and with other activists, to carry out an attack with the aim of causing the willful deaths of many Israeli citizens.

3. In the framework of the preparations of the Defendant and the other activists in the Terrorist Organization, headed by the Defendant, the following activities were perpetrated under the direction of the Defendant for the purpose of advancing and perpetrating the conspiracy:

A. Prior to the event, Abed Al Salem contacted Khader and notified him that he desired to carry out a suicide attack with the goal of causing the willful deaths of many victims.

B. Soon thereafter, Khader contacted the Defendant and updated him regarding Abed Al Salem.

The Defendant decided to carry out the attack and instructed Khader to carry out the actions to be detailed below.

C. Under the Defendant's instructions, Khader trained Abed Al Salem to shoot an M-16 rifle, for the purpose of perpetrating the attack.

The Defendant supplied Khader and Abed Al Salem with a weapon and eight magazines for the purpose of this shooting training.

D. Soon thereafter, Khader brought Abed Al Salem to the Defendant's home, and there, under the instructions of the Defendant, Khader filmed Abed Al Salem with a video camera and a regular camera, before his Abed Al Salem's departure for the suicide attack.

Abed Al Salem was taped reading his will, written for him by the Defendant, and holding in his hands an M-16 rifle belonging to the Defendant, so that after the attack it would be possible to send the tape with the footage of Abed Al Salem to various television stations. For this purpose the Defendant kept in his possession the tape and pictures.

This behavioral pattern is typical of the activities of the Terrorist Organization - of which the Defendant was a senior commander - during the preparations to carry out suicide attacks.

E. The Defendant gave Abed Al Salem, for the purpose of perpetrating the attack, an M-16 rifle, 6 magazines and two hand grenades as well as NIS 400 in cash.

F. Afterwards, at the directions of the Defendant, Khader and Titi, mentioned in Charge 1, drove Abed Al Salem to the scene of the attack in Hadera.

G. After the attack in the Hall, as detailed above, the Defendant instructed an activist in the Terrorist Organization named Yasser Abu-Bakher (hereinafter "Abu-Bakher") to prepare leaflets, distributed by other activists, announcing that the Terrorist Organization had perpetrated and was responsible for the attack.

Furthermore, the Defendant ensured that the filmed material set out in section 3(D) reached the media.

4. A. In his actions as described above, the Defendant caused the willful death of 6 people.

B. In his actions as described above, the Defendant attempted to unlawfully cause the death of many people.

C. In his actions as described above, the Defendant intended to cause aggravated harm by unlawfully wounding dozens of people.

5. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

6. An M-16 rifle, magazines and hand grenades are "weapons" in accordance with the law, which the Defendant carried and gave others without any lawful permission.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Premeditated murder, an offense in accordance with Section 300(A)(2) of the Penal Code, 5737-1977.

2. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code.

3. Causing harm with aggravated intent, an offense in accordance with Section 329(1) of the above Code.

4. Conspiracy to perpetrate a crime, an offense in accordance with Section 499 of the above Code.

5. Unlawful bearing of weapons, an offense in accordance with

Section 144(B) of the above Code.

6. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

7. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Charge 3:

A. The facts:

1. A. At or about 16:30 on January 22, 2002, the terrorist Said Ramadan (hereinafter "Ramadan") arrived at Jaffa St., on the corner of Luntz St., in the center of Jerusalem, armed with an M-16 rifle and two magazines, with the intention of perpetrating a murderous attack.

B. Upon his arrival at the scene, Ramadan began firing randomly in every direction, at citizens that were in the vicinity at the time, all this with the aim of causing the willful death of many passers-by.

C. In his actions as described above, Ramadan caused the willful death of the late Sarah Hamburger, 79, and Orna (Svetlana) Sandler, 56, who were innocently walking down the street.

D. After Ramadan fired a number of shots, police officers arrived on the scene, overpowered him and shot him to death.

E. Furthermore, as a result of Ramadan's above actions, committed with the intention of causing aggravated harm, dozens of other people were hurt, some of them suffering serious injuries.

2. Some time before the above events, the Defendant, who as noted above was one of the senior commanders of the Terrorist Organization, conspired with Titi, mentioned in the previous counts above, and with other activists, to carry out the attack with the aim of causing the willful death of many Israeli citizens.

3. In the course of the preparations of the Defendant and the other activists in the Terrorist Organization - headed by the Defendant - the following activities were perpetrated under the direction of the Defendant, for the purpose of advancing and perpetrating the conspiracy:

A. Prior to the event, Ramadan contacted Titi and notified him that he wished to carry out a suicide attack, with the aim of causing the willful death of many victims.

Titi notified the Defendant of this.

B. Shortly thereafter, Ramadan came to the Defendant who verified that he [Ramadan] was indeed interested in perpetrating a murderous attack.

C. The Defendant supplied Ramadan with the weapon to carry out the attack.

Furthermore, the Defendant taped Ramadan with a video camera prior to his departure to carry out the attack as a "suicide bomber," so that after the attack it would be possible to send the tape, on which he [Ramadan] was taped, to various television stations.

This behavioral pattern is typical of the activities of the Terrorist Organization - of which the Defendant was a senior commander - during the preparations to carry out suicide attacks.

D. Thereafter, under the Defendant's instructions, Ahmed transported Ramadan to the place in Jerusalem designated for the attack and for performance of the additional logistic activities necessary to perpetrate the attack.

E. After the attack, the Defendant ensured that the filmed material detailed in section 3(C) reached the media.

4. A. In his actions as described above, the Defendant willfully caused the death of two people.

B. In his actions as described above, the Defendant unlawfully attempted to cause the deaths of many people.

C. In his actions as described above, the Defendant intended to cause aggravated harm by unlawfully wounding dozens of people.

5. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

6. An M-16 rifle and magazines are "weapons" in accordance with the law, which the Defendant carried and gave others without any lawful permission.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Premeditated murder, an offense in accordance with Section 300(A)(2) of the Penal Code, 5737-1977.

2. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code.

3. Causing harm with aggravated intent, an offense in accordance with Section 329(1) of the above Code.

4. Conspiracy to commit a crime, an offense in accordance with Section 499 of the above Code.

5. Unlawful bearing of weapons, an offense in accordance with Section 144(B) of the above Code.

6. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

7. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Charge 4:

A. The facts:

1. A. At or about 20:30 on March 9, 2002, the terrorists Shadi Al-Najmi and Said Bata (hereinafter "Shadi and Said") arrived at the Jeremy Hotel on Gad Mechnes Street in Netanya, armed with M-16 rifles and fragmentation grenades, with the intention of perpetrating a murderous attack.

B. Shadi and Said approached the entrance to the Jeremy Hotel and opened fire with machine gun bursts towards the entrance hall of the Hotel and also threw two fragmentation grenades in that direction, all this with the goal of causing the willful deaths of many of the Hotel guests.

As a result of the shooting, one year-old Avia Malka, a guest at the hotel at the time, was killed.

C. Shortly thereafter, Shadi and Said escaped southwards on Gad Machnes St., until they arrived at the rear of the Blue-Ways Hotel, where they were shot by security forces who had been summoned to the scene.

During the security forces' efforts to overcome Shadi and Said, Israel Yihye, 29, who was in the area, was also shot and killed.

D. In their actions as described above, Shadi and Said caused the willful death of the two people detailed above.

E. Furthermore, as a result of their above actions, committed with the intention to cause aggravated harm, dozens of other people were injured, some of whom suffered serious injuries.

2. Some time prior to the above events, the Defendant - who as

noted above was one of the senior commanders of the Terrorist Organization - conspired with Titi and Khader, mentioned in the previous counts above, and with other activists, to perpetrate an attack with the purpose of causing the willful deaths of many Israeli citizens.

3. In the course of the preparations of the Defendant and the other activists in the Terrorist Organization - headed by the Defendant - the following activities were committed under the direction of the Defendant, for the purpose of advancing and perpetrating the conspiracy:

A. Prior to the event Khader contacted the Defendant and notified him of Shadi's and Said's desire to carry out a suicide attack in Israel, with the aim of causing the willful death of many victims.

B. Shortly thereafter, and after the Defendant approved the carrying out of the attack, the Defendant acted to arm Shadi and Said with M-16 rifles, 12 magazines and two hand grenades for perpetrating the attack.

C. Under the instructions of the Defendant, Khader filmed Shadi and Said with a video camera and a regular camera given to him by the Defendant, as they were reading their will - written for them by the Defendant - while each grasped in their arms an M-16 rifle, so that after the attack it would be possible to send the cassette on which they were recorded to the various television stations.

For this purpose, the Defendant received from Khader the cassette on which Shadi and Said were taped as well as the video camera.

This behavioral pattern is typical of the activities of the Terrorist Organization - of which the Defendant was a senior commander - during the preparations to carry out a suicide attack.

D. Thereafter, under the instructions of the Defendant, Titi and other activists in the Terrorist Organization who had joined together for the conspiracy, drove Shadi and Said to a location near Netanya. From there Shadi and Said walked to the scene of the attack.

E. After the attack, as detailed above, the Defendant called the media and notified them that the Terrorist Organization had perpetrated and was responsible for the attack.

Likewise, the Defendant ensured that the footage detailed in section 3(C) above reached the media.

4. A. In his actions as described above, the Defendant caused the willful death of 2 people.

B. In his actions as described above, the Defendant attempted to unlawfully cause the deaths of many people.

C. In his actions as described above, the Defendant intended to cause aggravated harm by the unlawful wounding of dozens of other persons.

5. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

6. An M-16 rifle and hand grenades are "weapons" in accordance with the law.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Premeditated murder, an offense in accordance with Section 300(A)(2) of the Penal Code, 5737-1977.

2. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code.

3. Causing harm with aggravated intent, an offense in accordance with Section 329(1) of the above Code.

4. Conspiracy to commit a crime, an offense in accordance with Section 499 of the above Code.

5. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

6. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Charge 5:

A. The facts:

1. A. At or about 13:30 on March 30, 2002, the terrorists Majdi Jofer and Fathi Amiri (hereinafter "Majdi and Fathi") were on their way to carry out an attack in Israel, while armed with an M-16 rifle, hand grenades and explosives, with the intention of perpetrating a murderous attack.

B. While near Baqa El Garbiyya, Majdi and Fathi encountered border patrol police officers. Majdi and Fathi opened fire on the police officers and threw a hand grenade, with the willful intent to cause the deaths of the police officers.

C. In their actions as described above, Majdi and Fathi caused the willful death of border patrol police officer First Sergeant Constantine Danilov.

D. Likewise, as a result of the above actions of Majdi and Fathi perpetrated with the intention of causing aggravated harm, police officer First Sergeant Amal Ibrahim was wounded.

E. Some time prior to the above events, the Defendant - who as noted above was one of the senior commanders of the Terrorist Organization - conspired with Titi and Khader, mentioned in the previous counts above, and with other activists, to carry out an attack with the purpose of causing the willful deaths of many Israeli citizens.

2. In the course of the preparations of the Defendant and the other activists in the Terrorist Organization - headed by the Defendant - the following activities were carried out under the direction of the Defendant, for the purpose of advancing and perpetrating the conspiracy:

A. Prior to the date mentioned in section 1 above, Majdi and Fathi were recruited with the knowledge and approval of the Defendant, to perpetrate a suicide attack with the purpose of causing the willful death of many victims.

B. Activists in the Terrorist Organization who had joined together to perform the conspiracy, equipped Majdi and Fathi with an M-16 rifle, hand grenades and an explosive belt.

C. The Defendant ordered Khader to ensure the arrival of Majdi and Fathi to Israel, and for this purpose even transferred the sum of NIS 3,500 in cash to Khader which was intended for buying a stolen car that would serve to transport them to Israel.

At the Defendant's instructions, Khader traveled with Majdi and Fathi to Tulkarem, escorted them part of the way and showed them how to continue.

D. Following the attack the Defendant called the various media and notified them that the Terrorist Organization had perpetrated and was responsible for the attack.

3. A. In his actions as described above, the Defendant caused the willful death of 2 people.

B. In his actions as described above, the Defendant attempted to unlawfully cause the death of many people.

C. In his actions as described above, the Defendant intended to cause aggravated harm by the unlawful wounding of dozens of

other people.

4. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

5. An M-16 rifle, magazines and an explosive belt are "weapons" in accordance with the law.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Premeditated murder, an offense in accordance with Section 300(A)(2) of the Penal Code, 5737-1977.

2. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code.

3. Causing harm with aggravated intent, an offense in accordance with Section 329(1) of the above Code.

4. Conspiracy to commit a crime, an offense in accordance with Section 499 of the above Code.

5. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

6. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Charge 6:

A. The facts:

1. A. On an unknown date, during the Al-Aqsa Intifada, two terrorists - whose identities are unknown - were on their way to carry out a suicide attack in Jerusalem, while armed with Kalashnikov riles and hand grenades, with the purpose of causing the willful deaths of many Israeli citizens.

B. The terrorists were caught at an IDF blockade while on their way to the scene of the attack, and were arrested by the security forces.

In this manner, a large-scale terrorist attack was miraculously prevented.

2. Some time prior to the above events, the Defendant - who as noted above was one of the senior commanders of the Terrorist Organization - conspired with Khader and Ahmed, mentioned in the previous charges above, and with other activists, to carry out an attack with the purpose of causing the willful deaths of many Israeli citizens.

3. In the course of the preparations of the Defendant and the other activists in the Terrorist Organization - headed by the Defendant - the following activities were committed under the direction of the Defendant, for the purpose of advancing and perpetrating the conspiracy:

A. The terrorists were recruited, with the knowledge and approval of the Defendant, to carry out the above attack with the purpose of causing the willful death of many Israelis.

B. Activists of the Terrorist Organization who had joined together to commit the conspiracy, equipped the terrorists with Kalashnikov rifles and hand grenades.

C. The Defendant instructed Khader, Ahmed and the other activists who joined together to commit conspiracy to arrive at the intended site of the attack in Jerusalem.

D. Khader, Ahmed and other activists who joined together to commit the conspiracy acted according to the Defendant's instructions, although in the end, the terrorists were miraculously caught at the IDF blockade, as set out above,

before they were able to carry out the murderous attack.

4. A. In his actions as described above, the Defendant unlawfully attempted to cause the deaths of many people.

B. In his actions as described above, the Defendant attempted to cause aggravated harm by the unlawful wounding of dozens of other people.

5. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

6. Kalashnikov rifles and hand grenades are "weapons" in accordance with the law.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code, 5737-1977.

2. Causing harm with aggravated intent, an offense in accordance with Section 329(1) together with Section 25 of the above Code.

3. Conspiracy to commit a crime, an offense in accordance with Section 499 of the above Code.

4. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

5. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Charge 7:

A. The facts:

1. A. On an unknown date, during the Al-Aqsa Intifada, a terrorist, whose identity is unknown, was on his way to carry out a suicide attack in Jerusalem, while armed, with the intention of causing the willful death deaths of many Israeli citizens.

B. While on his way to the attack scene, the terrorist was stopped by police officers near Beit Hanina and was shot to death.

In this manner, a large-scale terrorist attack was miraculously prevented.

2. Some time prior to the above events, the Defendant - who as noted above was one of the senior commanders of the Terrorist Organization - conspired with Titi, mentioned in the previous counts above, and with other activists in the Terrorist Organization, to carry out an attack with the purpose of causing the willful deaths of many Israeli citizens.

3. In the course of the preparations of the Defendant and the other activists in the Terrorist Organization - headed by the Defendant - the following activities were committed under the direction of the Defendant, for the purpose of advancing and perpetrating the conspiracy:

A. The terrorist was recruited with the knowledge and approval of the Defendant to perpetrate the above attack with the purpose of causing the willful death of many victims.

B. Activists of the Terrorist Organization who had joined together to commit the conspiracy armed the terrorist.

C. The Defendant ordered the other activists who had joined together to commit the conspiracy to take actions to ensure the terrorist reached the intended place for carrying out the attack in Jerusalem.

D. The activists who had joined together to commit the

conspiracy acted according to the Defendant's instructions although in the end, miraculously, the terrorists were stopped by police officers, as noted above, before they were able to carry out the murderous attack.

4. A. In his actions as described above, the Defendant unlawfully attempted to cause the deaths of many people.

B. In his actions as described above, the Defendant attempted to cause aggravated harm by the unlawful wounding of dozens of other people.

5. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code, 5737-1977.

2. Causing harm with aggravated intent, an offense in accordance with Section 329(1) together with Section 25 of the above Code.

3. Conspiracy to commit a crime, an offense in accordance with Section 499 of the above Code.

4. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

5. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Charge 8:

A. The facts:

1. A. On an unknown date, after the outbreak of the Al-Aqsa Intifada, the Defendant conspired with other activists in the Terrorist Organization, to carry out a shooting attack on the IDF security post, which was manned by Israeli soldiers next to Joseph's Tomb in Nablus.

On unknown dates, during the period thereafter, the Defendant perpetrated, together with other activists in the Terrorist Organization, shooting attacks at the IDF security post situated next to Joseph's Tomb.

B. Prior to the month of May 2001, the Defendant conspired with other activists in the Terrorist Organization to carry out a shooting attack against an IDF security post, that was manned by Israeli soldiers on Mount Gerizim, and on other IDF security posts in nearby areas.

For the purpose of advancing the purposes of the conspiracy, the Defendant supplied M-16 rifles to the other activists who had joined together for the conspiracy.

During the month of May 2001, on a number of occasions, on unknown dates, the Defendant perpetrated together with other activists in the Terrorist Organization, shooting attacks.

These shooting attacks were perpetrated while the Defendant and other activists were armed with M-16 rifles, against the military outpost in Mount Grizim, against the Ein-Bayit Camp and against military patrols that patrolled the area of the Balata Refugee Camp and against military targets in the area of the Huarah Refugee Camp.

C. On an unknown date, after the outbreak of the Al-Aqsa Intifada, the Defendant conspired with other activists in the Terrorist Organization to carry out attacks against Israeli citizens and IDF soldiers.

In the framework and for the purpose of perpetrating the conspiracy, the Defendant supplied weapons to activists in the Terrorist Organization for the purpose of carrying out the attacks.

The activists in the Terrorist Organization who joined together to commit the conspiracy made use of the weapons, supplied to them by the Defendant, during the following attacks:

1. The shooting attack on the Homesh settlement.
2. Placing an explosive device on the Zuata-Atzira bypass road.
3. A shooting attack with an M-16 rifle on a military patrol in Dir-Sharf.
4. Placing an explosive device in Batsra.

2. In his actions as described above, the Defendant unlawfully attempted to cause the deaths of many people.

3. The Tanzim and the Al-Aqsa Martyrs Brigades are "Terrorist Organizations" as defined in the Prevention of Terrorism Ordinance, and the Defendant was a member and served in a senior position in the management and activities of the Terrorist Organization.

4. M-16 rifles and magazines are "weapons" in accordance with law, which the Defendant carried and gave others without any lawful permission.

B. The legislative provisions in accordance with which the Defendant is charged:

1. Attempted murder, an offense in accordance with Section 305(1) of the Penal Code, 5737-1977.

2. Conspiracy to commit a crime, an offense in accordance with Section 499 of the above Code.

3. Unlawful bearing of weapons, an offense in accordance with Section 144(B) of the above Code.

4. Activity in a terrorist organization, an offense in accordance with Section 2 of the Prevention of Terrorism Ordinance.

5. Membership in a terrorist organization, an offense in accordance with Section 3 of the above Ordinance.

Tel-Aviv,
July 16, 2002
7 Av 5762

Devorah Chen,
Director of the Department for Criminal-Security Affairs and Special Affairs
State Attorney's Office

Prosecution Witnesses:

1. Enlistment No. 739060 First Sergeant Roni Amar, Israel Police.
2. Enlistment No. 928301 First Sergeant Hadi Halaby, Israel Police.
3. Ahmed Barghouti, to be subpoenaed through the IPS.
4. Ahmed Abu Khader, to be subpoenaed through the IPS.
5. Yasser Abu-Bakher, to be subpoenaed through the IPS.
A complete list of prosecution witnesses will be submitted to the court shortly.

SEE ALSO ...
Statement of Indictment: Nasser (Bin Mohammed Yusuf) Naji Abu-Hamid - July 19, 2002
Arrest of Nasser Aweis following IDF operation in Tubas District - Apr 17, 2002
Information on Marwan and Ahmed Barghouti - Apr 15, 2002



Documents seized during Operation Defensive Shield
linking Yasser Arafat to terrorist activities
Additional documents connecting Arafat and the PA to
terrorists and terrorist activities
Operation Defensive Shield: Special Update

Print version    Send To Friend

Share

Terms of Use | Site Map | Contact Us

All rights reserved to the State of Israel © 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

        vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

---

### AFFIDAVIT OF TAL R. MACHNES

Tal R. Machnes hereby certifies, under penalty of perjury of the laws of the United States, pursuant to 28 U.S.C. § 1746(2) as follows:

1.     I am a member of the bar of this court and associated with the firm of Arnold & Porter LLP, attorneys for the plaintiffs in the above-captioned action.

2.     Attached hereto as Plaintiffs' Exhibit 355, pursuant to the Federal Rule of Civil Procedure 44(a)(2), is a true and correct copy of the Indictment of Nasser Mahmoud Ahmed Aweis, retrieved from the District Court of Tel Aviv and Jaffa, dated July 16, 2002.

3.     Accompanying Plaintiffs' Exhibit 355 is a true and correct copy of the English-language translation of Plaintiffs' Exhibit 355, obtained from the official website of the Ministry of Foreign Affairs of the State of Israel:
   http://mfa.gov.il/MFA/MFA-Archive/2002/Pages/Statement%20of%20Indictment-%20Nasser%20Mahmoud%20Ahmed%20Awei.aspx.

Dated:  March 6, 2014

                                    Tal R. Machnes

TO YEDIOT    P.01

כ"א    1161
ת. 07.02

מחוז בתל-אביב-יפו

ת.פ.ח. /02
בפני הרכב

|  |  |
|---|---|
| המאשימה: | מ ד י נ ת   י ש ר א ל |
|  | - נ ג ד - |
| הנאשם: | נ א ס ר   מ ח מ ו ד   א ח מ ד   ע ו ו י ס |

יליד 1970 ת.ז. 900358664
מחנה בלאטה
(כעת במעצר מיום 13.4.02)

## כתב אישום

**כללי:**

1. בתקופה הרלוונטית לאירועים נשוא כתב האישום, היה הנאשם חמפקד של
אזור שכם וצפון השומרון של ארגון "תנזים" – פתייח וכן שימש כמפקד ארגון
"כתאב שוהדא אלאקצא" - גדודי חללי אל אקצא באזור זה (להלן : **"הארגון
הטרוריסטי"**).
הארגונים דלעיל חנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת טרור,
והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון הטרוריסטי וחיזה חבר בו.

   הנאשם הנו תושב מחנה בלאטה באיזור שכם.

2. לאחר פרוץ האירועים האלימים מטעם גורמים פלשתינאים מאז סוף ספטמבר
2000, המכונים בפיהם "אינתיפאדת אל אקצא" (להלן : **"אינתיפאדת
אל-אקצא"**), הנאשם, כמפקד בכיר בארגון הטרוריסטי, יזם, ארגן והפעיל
פיגועים נגד מטרות ישראליות הן בתוך מדינת ישראל וחן באיו"ש, אשר כתוצאה
מהם קיפחו את חייהם עשרות אזרחי מדינת ישראל. כמו כן, נפצעו ונפגעו
מאות אזרחים נוספים.
כל זאת כפועל יוצא מתפקידו במסגרת ההיררכית של הארגון הטרוריסטי

2

פעילותו של הנאשם, בנוסף לאמור לעיל, כללה גם רכישה וייצור של אמצעי לחימה מסוגים שונים והעברתם, בין במישרין ובין בעקיפין, לידי המחבלים שביצעו את הפיגועים בפועל, מטעם הארגון חטרוריסטי.

3.    מאז החלה "אינתיפאדת אל-אקצא", הארגון הטרוריסטי מבצע פעולות טרור אינטנסיביות נגד מדינת ישראל, לרבות ביצוע פיגועי התאבדות ופיגועי ירי נגד אזרחי ישראל.

4.    הארגון חטרוריסטי פעל בכל התקופה הרלוונטית לכתב האישום כמסגרת ארגונית הירארכית, בה היה הנאשם כפוף למרואן ברגותי (להלן : "**ברגותי**"), ראש התנזים באיו"ש, אשר היה כפוף ליו"ר הרשות הפלשתינאית, יאסר ערפאת.

5.    על מנת להוציא לפועל את פעילות הטרור, קיבל הנאשם מימון כספי רב היקף, הן מברגותי באישורו של ערפאת והן ממקורות נוספים.

6.    את העובדות המופיעות דלעיל בפרק הכללי יש לראות כחלק מכל אחד מהאישומים שיפורטו להלן.

<u>**אישום ראשון:**</u>

א. **העובדות:**

1.    בתאריך 5/3/02 בשעה 02:30 או בסמוך לכך, הגיע המחבל אברהים חסונה (להלן : "**חסונה**") אל מסעדת "סי פוד מרקט" ברחוב מנחם בגין בתל-אביב (להלן : "**המסעדה**"), כשהוא חמוש ברובה M-16, רימוני יד וסכין וזאת בכוונה לבצע פיגוע רצחני.
באותה עת, הייתה המסעדה מלאה מפה לפה והיו בה עשרות רבות של סועדים.

2. א. חסונה הגיע ל"נשר בית מערובי" הממוקם ברח' הני"ל מול המסעדה וחל לירות לעבר הסועדים מתוך כוונה תחילה לגרום למותם של רבים מהסועדים.
בסמוך לכך השליך לתוך המסעדה רימוני יד, שבדרך נס לא התפוצצו.
מיד לאחר מכן התקרב חסונה לעבר המסעדה ודקר את יושבי המסעדה שנקרו בדרכו, כל זאת במטרה לגרום בכוונה תחילה למותם של רבים מהסועדים.

3

ב. מיד לאחר שחסונה החל לירות לעבר הסועדים כמתואר לעיל, הוזעקו למקום
כוחות משטרה.

אחד השוטרים הראשונים שהגיע לזירת הפיגוע, היה רס"ר סלים בריכאת ז"ל, אשר
הסתער על חסונה במטרה לעצור את פעילותו הרצחנית.

חסונה דקר את רס"ר סלים בריכאת ז"ל מספר דקירות באיזורים שונים בגופו
ובכלל זה בצווארו באמצעות הסכין בה היה מצויד וזאת בכוונה תחילה לגרום
למותו.

ג. במעשיו הנ"ל גרם חסונה בכוונה תחילה למותם של רס"ר סלים בריכאת ז"ל בן 33,
שמצא את מותו כתוצאה מהדקירות הקטלניות, יוסף הבי ז"ל בן 52, שמצא את
מותו כתוצאה מהדקירות הקטלניות של חסונה בחזהו ובאיזורים נוספים בגופו וכן
נפגע מירייה ברגלו ואליהו דהן ז"ל בן 53, שמצא את מותו כתוצאה מדקירות
קטלניות של חסונה בגבו ובבטנו.

ד. כמו כן כתוצאה ממעשיו הנ"ל של חסונה, שנעשו בכוונה לגרום תבלה חמורה,
נפצעו עשרות אנשים נוספים, אשר לחלק מהם נגרמו חבלות חמורות.

ה. לאחר הגיעם של כוחות הביטחון למקום הפיגוע, נורה חסונה למות.

3. זמן מה עובר לאירועים המתוארים לעיל, הנאשם, שכאמור היה אחד ממפקדיו
הבכירים של הארגון חטרוריסטי, קשר קשר עם מחמוד טיטי (להלן: "טיטי") ואחמד
ברנותי (להלן: "אחמד"), שהיו פעילים מרכזיים בארגון חטרוריסטי, ועם פעילים
נוספים, להוציא לפועל פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים
ישראלים רבים.

4. במסגרת החתארגנות של הנאשם והפעילים האחרים בארגון הטרוריסטי לביצוע
הקשר, שהנאשם עמד בראשה, בוצעו בהנהגתו של הנאשם, לשם קידומו של הקשר
והוצאתו אל הפועל, הפעולות הבאות:

א. חסונה גויס בידיעתו ובאישורו של הנאשם לבצע את הפיגוע חנ"ל שמטרתו
הייתה לגרום בכוונה תחילה למותם של קורבנות רבים.

ב. חסונה צויד ע"י פעילי הארגון הטרוריסטי שחברו לביצוע הקשר, ברובה
M-16 וברימוני יד.

4

ג. הנאשם הורה לאחמד לפגוש את חסונה ברמאללה ולהפגישו עם אנשים
אחרים אשר יסיעו אותו לתל אביב, למקום הומה אדם, על מנת שהפיגוע
שיבצע חסונה יגרום לקורבנות גדולים בנפש.

ד. אחמד ביצע את הנחיותיו של הנאשם והפגיש את חסונה עם אחרים שחברו
לביצוע הקשר.

פעילי הארגון הטרוריסטי, שחברו לביצוע הקשר, הכינו את חסונה לביצוע
פיגוע ההתאבדות ובסמוך למועד ביצוע חפיגוע, הסיעו מורד עג'לוני ומאזן

אל-קאדי, פעילים של הארגון הטרוריסטי שחברו לביצוע הקשר, את חסונה
לתל-אביב והורידו אותו ממכוניתם בסמוך למסעדה שבה ביצע חסונה את
הפיגוע כמפורט לעיל.

ה. חנאשם הורה לטיטי לצלם את חסונה לפני יציאתו לביצוע הפיגוע כ"מחבל
מתאבד", זאת על מנת שלאחר הפיגוע ניתן יהיה לשלוח את הקלטות, בה הוא
מצולם, לתחנות הטלוויזיה השונות.

דפיס פעולה זה אופייני לפעילותזו של הארגון הטרוריסטי, שהנאשם היה
אחד ממפקדיו הבכירים, בעת התארגנות לביצוע פיגוע התאבדות.

ו. לאחר הפיגוע במסעדה, כמפורט לעיל, התקשר הנאשם לתחנות טלוויזיה
שונות ולאמצעי תקשורת נוספים, והודיע להם כי הארגון הטרוריסטי אחראי
לפיגוע והוא אשר ביצע אותו.
כמו כן, הנאשם גרם לכך כי הצילומים המפורטים בס"ק ה' לעיל יגיעו
לאמצעי התקשורת.

5. א. במעשיו הנ"ל גרם הנאשם בכוונה תחילה למותם של 3 אנשים.

ב. במעשיו הנ"ל ניסה חנאשם, שלא כדין, לגרום למותם של אנשים רבים.

ג. במעשיו הנ"ל התכוון הנאשם לגרום חבלה חמורה ע"י פציעתם של עשרות אנשים
נוספים שלא כדין.

5

6. התנגים וגדודי חללי אל-אקצא הנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת
טרור, והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון הטרוריסטי ו/יה חבר
בו.

7. רובה M-16 ורימוני יד חם "נשק" על פי דין.

## ב.  הוראות החיקוק לפיהן מואשם הנאשם:

1. רצח בכוונה תחילה, עבירה על סעיף 300(א)(2) לחוק העונשין, התשל"ז – 1977.

2. ניסיון לרצח, עבירה על סעיף 305(1) לחוק הנ"ל.

3. גרימת חבלה בכוונה מחמירה, עבירה על סעיף 329(1) לחוק הנ"ל.

4. קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ"ל.

5. פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודת מניעת טרור.

6. חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ"ל.

## אישום שני:

### א.  העובדות:

1. א. בתאריך 17/1/02 בשעה 22:45 או בסמוך לכך, הגיע המחבל, עבד אל סאלם
חסונה (להלן: "**עבד אל סאלם**"), אל אולם האירועים "ארמון דוד" בחדרה (להלן:
"**האולם**"), כשהוא חמוש ברובה M-16 ורימוני יד ועל גופו אפוד ובתוכו מחסניות,
כל זאת בכוונה לבצע פיגוע רצחני.
באותה עת התקיימה באולם מסיבת בת-מצווה של הנערה נינה קרדשוב, אשר בה
השתתפו עשרות רבות של אורחים.

ב. עבד אל סאלם התפרץ לתוך האולם והחל לירות ללא הבחנה לכל עבר, על
האורחים הרבים שנכחו באולם, כל זאת במטרה לגרום בכוונה תחילה למותם של
רבים מן האורחים.

FROM LISHKAT DOVER          TO YEDIOT          P. 06

6

ג. לאחר שעבד אל סאלם ירה מספר צרורות, הסתערו עליו, תוך חירוף נפש. כמה מן
האורחים שלא היו חמושים, הצליחו להשתלט עליו ולגרור אותו אל מחוץ לאולם,
שם נורה למוות ע"יי כוחות הביטחון שהוזעקו למקום.

ד. במעשיו חנ"ל של עבד אל סאלם הוא גרם בכוונה תחילה למותם של שישה מן
האורחים:
אנטולי בקשייב ז"ל בן 63, אדוארד בקשייב ז"ל בן 48, בוריס מליחוב ז"ל בן 56,
דונה ביינייב ז"ל בת 48, אליס – בן ישראל (אהרון) ז"ל בת 32, אבי יזדי ז"ל בן 25.

ה. כמו כן, כתוצאה ממעשיו הנ"ל של עבד אל סאלם, שנעשו בכוונה לגרום חבלה
חמורה, נפצעו עשרות אנשים נוספים, אשר לחלק מהם נגרמו חבלות חמורות.

2. זמן מה עובר לאירועים המתוארים לעיל, הנאשם, שכאמור היה אחד ממפקדיו
הבכירים של הארגון הטרוריסטי, קשר קשר עם אדם בשם אחמד אבו חד'יר (להלן:
"חד'יר") שהיה פעיל מרכזי בארגון הטרוריסטי ועם פעילים נוספים, להוציא לפועל
פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים.

3. במסגרת ההתארגנות של הנאשם והפעילים האחרים בארגון הטרוריסטי לביצוע
הקשר, שהנאשם עמד בראשה, בוצעו בהנחייתו של הנאשם, לשם קידומו של הקשר
יהוצאתו אל הפועל, הפעולות הבאות:

א. עובר לאירוע פנה עבד אל סאלם לחד'יר ומסר לו כי ברצונו לבצע פיגוע
התאבדות, שמטרתו הייתה לגרום בכוונה תחילה למותם של קורבנות רבים.

ב. בסמוך לאחר מכן, פנה חד'יר אל הנאשם ועדכן אותו בדבר פנייתו של עבד אל
סאלם אליו.
הנאשם החליט על ביצוע הפיגוע והורה לחד'יר לבצע את הפעולות שיפורטו
להלן.

ג. על פי הוראת הנאשם, אימן חד'יר את עבד אל סאלם בירי ברובה M-16,
לצורך ביצוע הפיגוע.
הנאשם סיפק לחד'יר ועבד אל סאלם נשק ושמונה מחסניות לצורך אימוני
הירי הללו.

7

ד. בסמוך לאחר מכן, הביא חדיר את עבד אל סאלם לביתו של הנאשם, שם על
פי הוראת הנאשם, צילם חדיר את עבד אל סאלם במצלמת וידיאו ובמצלמה
רגילה, לפני צאתו לפיגוע ההתאבדות.

עבד אל סאלם צולם כאשר הוא קורא צוואה שנכתבה עבורו ע"י הנאשם
וכשהוא מחזיק בידו רובה M-16 השייך לנאשם, זאת על מנת שלאחר הפיגוע
ניתן יהיה לשלוח את הקלטת בה מצולם עבד אל סאלם לתחנות הטלוויזיה
השונות. לצורך כך הנאשם השאיר בידיו את הקלטת והתמונות.

דפוס פעולה זה אופייני לפעילותו של הארגון הטרוריסטי, שהנאשם היה אחד
ממפקדיו הבכירים, בעת התארגנות לביצוע פיגוע התאבדות.

ה. הנאשם מסר לעבד אל סאלם, לצורך ביצוע הפיגוע, רובה M-16, 6 מחסניות
ושני רימוני-יד וכן כסף מזומן בסך של 400 ש"ח.

ו. לאחר מכן, על פי הוראות הנאשם, פעלו חדיר וטוטי המוזכר באישום מס' 1,
להסעתו של עבד אל סאלם למקום הפיגוע בחדרה.

ז. לאחר הפיגוע באולם, כמפורט לעיל, הורה הנאשם לפעיל הארגון
הטרוריסטי, בשם יאסר אבו-בכר (להלן: "**אבו-בכר**"), להכין כרוזים, אשר
הופצו ע"י פעילים נוספים בארגון, בהם נמסר כי הארגון הטרוריסטי אחראי
לפיגוע והוא אשר ביצע אותו.

כמו כן, הנאשם גרם לכך כי הצילומים המפורטים בסעיף 3(ד) לעיל יגיעו
לאמצעי התקשורת.

4. א. במעשיו הנ"ל גרם הנאשם בכוונה תחילה למותם של 6 אנשים.

   ב. במעשיו הנ"ל ניסה הנאשם, שלא כדין לגרום למותם של אנשים רבים.

   ג. במעשיו הנ"ל התכוון הנאשם לגרום חבלה חמורה ע"י פציעתם של עשרית אנשים
      נוספים שלא כדין.

5. התנזים וגדודי חללי אל-אקצא חנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת
   טרור, והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון הטרוריסטי והיה חבר
   בו.

6. רובה M-16, מחסניות ורימוני יד הם "נשק" על פי דין והנאשם נשא ומסר אותם
   לאחרים ללא רשות על פי דין.

FROM LISHKAT DOVER    TO YEDIOT    P. 08

8

ב. הוראות החיקוק לפיהן מואשם הנאשם:

1. רצח בכוונה תחילה, עבירה על סעיף 300(א)(2) לחוק העונשין, התשל"ז – 1977.

2. ניסיון לרצח, עבירה על סעיף 305(1) לחוק הנ"ל.

3. גרימת חבלה בכוונה מחמירה, עבירה על סעיף 329(1) לחוק הנ"ל.

4. קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ"ל.

5. נשיאת נשק שלא כדין, עבירה על סעיף 144(ב) לחוק הנ"ל.

6. פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודת מניעת טרור.

7. חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ"ל.

## אישום שלישי:

### א. העובדות:

1. א. בתאריך 22/1/02 בשעה 16:30 או בסמוך לכך, הגיע המחבל סעיד רמדאן (להלן: "רמדאן") אל רח' יפו פינת רח' לונץ במרכז ירושלים, כשהוא חמוש ברובה M-16 ושתי מחסניות, וזאת בכוונה לבצע פיגוע רצחני.

ב. עם הגעתו למקום, החל רמדאן לירות לכל עבר, ללא הבחנה, לעבר אזרחים אשר עברו במקום באותה עת במקום, כל זאת במטרה לגרום בכוונה תחילה למותם של רבים מהעוברים ושבים.

ג. במעשיו הנ"ל של רמדאן הוא גרם בכוונה תחילה למותן של שרה המבורגר ז"ל בת 79 ואורה (סבטלנה) סנדלר ז"ל בת 56, אשר הלכו לתומן ברחוב.

ד. לאחר שירה רמדאן מספר יריות, הגיעו למקום שוטרים אשר השתלטו עליו והוא נורה למוות.

ה. כמו כן, כתוצאה ממעשיו חני"ל של רמדאן, שנעשו בכוונה לגרום חבלה חמורה, נפצעו עשרות אנשים נוספים, אשר לחלק מהם נגרמו חבלות חמורות.

9

2. זמן מה עובר לאירועים המתוארים לעיל, הנאשם, שבאמור לעיל, היה אחד
ממפקדיו הבכירים של הארגון הטרוריסטי, קשר קשר עם טיטי, הנזכר באישומים
הקודמים לעיל ועם פעילים נוספים, לחוציא לפועל פיגוע שמטרתו לגרום למיונה
בכוונה תחילה של אזרחים ישראלים רבים.


3. במסגרת ההתארגנות של הנאשם והפעילים האחרים בארגון הטרוריסטי לביצוע
הקשר, שהנאשם עמד בראשה, בוצעו בהנהגתו של הנאשם, לשם קידומו של הקשר,
והוצאתו אל הפועל הפעולות הבאות :

א. עובר לאירוע פנה רמדאן אל טיטי ומסר לו כי ברצונו לבצע פיגוע התאבדותי,
במטרה לגרום בכוונה תחילה למותם של קורבנות רבים.
טיטי הודיע על כך לנאשם.


ב. בסמוך לאחר מכן, הגיע רמדאן אל הנאשם שווידא עמו שהוא אכן מעוניין
לבצע פיגוע רצחני.


ג. הנאשם סיפק לרמדאן את הנשק לביצוע הפיגוע.
כמו כן, הנאשם צילם את רמדאן במצלמת וידאו בטרם יציאתו לביצוע
הפיגוע, "כמחבל מתאבד", זאת על מנת שלאחר הפיגוע ניתן יהיה לשלוח את
הקלטות, בה הוא מצולם, לתחנות הטלוויזיה השונות.

דפוס פעולה זה אופייני לפעילותו של הארגון הטרוריסטי, שהנאשם היה
אחד ממפקדיו הבכירים, בעת התארגנות לביצוע פיגוע התאבדות.


ד. לאחר מכן, על פי הוראות הנאשם, פעל אחמד להסעתו של רמדאן למקום
שנועד לביצוע הפיגוע בירושלים וכן לביצוע כל הפעולות הלוגיסטיות
הנוספות הדרושות לביצוע הפיגוע.


ה. לאחר הפיגוע, הנאשם גרם לכך כי הצילומים המפורטים בסעיף 3(ג) לעיל
יגיעו לאמצעי התקשורת.

10

4. א. במעשיו הנ"ל גרם הנאשם בכוונה תחילה למותם של 2 אנשים.

ב. במעשיו הנ"ל ניסה הנאשם, שלא כדין לגרום למותם של אנשים רבים.

ג. במעשיו הנ"ל התכוון הנאשם לגרום חבלה חמורה ע"י פציעתם של עשרות אנשים נוספים שלא כדין.

5. התנזים וגדודי חללי אל-אקצא הנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת טרור, והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון הטרוריסטי והיה חבר בו.

6. רובה M-16 ומחסניות הם "נשק" על פי דין והנאשם נשא ומסר אותם לאחרים ללא רשות על פי דין.

ב.   הוראות החיקוק לפיהן מואשם הנאשם:

1. רצח בכוונה תחילה, עבירה על סעיף 300(א)(2) לחוק העונשין, התשל"ז – 1977.

2. ניסיון לרצח, עבירה על סעיף 305(1) לחוק הנ"ל.

3. גרימת חבלה בכוונה מחמירה, עבירה על סעיף 329(1) לחוק הנ"ל.

4. קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ"ל.

5. נשיאת נשק שלא כדין, עבירה על סעיף 144(ב) לחוק הנ"ל.

6. פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודת מניעת טרור.

7. חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ"ל.

TO  YEDIOT

P.11

11

<div dir="rtl">

<u>אישום רביעי:</u>

א. העובדות:

1. א. בתאריך 9/3/02 בשעה 20:30 או בסמוך לכך, הגיעו המחבלים שאהדי אל-נינמי וסעיד בטא (להלן: "שאהדי וסעיד") לאיזור מלון "גירמיי" ברחי גד מכנס בנתניה כשהם חמושים ברובי M-16 וברימוני רסס, וזאת בכוונה לבצע פיגוע רצחני.

ב. שאהדי וסעיד התקרבו לעבר פתח מלון גירמי ופתחו בירי בצרורות לעבר אולם הכניסה של המלון וכן השליכו שני רימוני רסס לכיוון זה, כל זאת במטרה לגרום בכוונה תחילה למותם של רבים מאורחי המלון.

כתוצאה מן הירי נהרגה התינוקת אביה מלכה כבת שנה ז"ל ששהתה באותה עת בכניסה של המלון.

ג. בסמוך לאחר מכן נמלטו שאהדי וסעיד לכיוון דרום ברחי גד מכנס, עד שהגיעו לחלקו האחורי של מלון "בלי-וייס". שם נורו ע"י כוחות הביטחון שהוזעקו למקום.
במהלך השתלטות כוחות הביטחון על שהאדי וסעיד נורה גם יחיא ישראל ז"ל, בן 29 אשר שהה בקרבת מקום.

ד. במעשיהם אלה של שאהדי וסעיד  הם גרמו בכוונה תחילה למותם של 2 המנוחים כפי שפורט לעיל.

ה. כמו כן, כתוצאה ממעשיהם הנ"ל של שהאדי וסעיד, שנעשו בכוונה לגרום חבלה חמורה, נפצעו עשרות אנשים נוספים, אשר לחלק מהם נגרמו חבלות חמורות.

2. זמן מה עובר לאירועים המתוארים לעיל, האשם, שכאמור לעיל, היה אחד ממפקדיו הבכירים של הארגון הטרוריסטי, קשר קשר עם טיטי וחדיר, הנזכרים באישומים הקודמים לעיל ועם פעילים נוספים, להוציא לפועל פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים.

3. במסגרת ההתארגנות של האשם והפעילים האחרים בארגון הטרוריסטי לביצוע הקשר, שהנאשם עמד בראשה, בוצעו בהנחגתו של הנאשם, לשם קידומו של הקשור והוצאתו אל הפועל, הפעולות הבאות:

</div>

12

א. עובר לאירוע פנה חד"ר אל הנאשם ודיווח לו על רצונם של שהאדי וסעיד
לבצע פיגוע התאבדות בישראל, במטרה לגרום בכוונה תחילה למותם של
קורבנות רבים.

ב. בסמוך לאחר מכן, ולאחר שאישר הנאשם את ביצוע הפיגוע, הוא פעל
לציודם של שהאדי וסעיד ברובי M-16, 12 מחסניות ושני רימוני יד לצורך
ביצוע הפיגוע.

ג. על פי הוראותיו של הנאשם, צילם חד"ר את שהאדי וסעיד במצלמת וידיאו,
וכן באמצעות מצלמה רגילה שנתן לו הנאשם, בעודם קוראים את הצוואה
אשר כתב עבורם הנאשם ובעודם מחזיקים בידיהם, כל אחד מהם, רובה
M-16, זאת על מנת שלאחר הפיגוע ניתן יהיה לשלוח את הקלטת בה הם
מצולמים לתחנות הטלוויזיה השונות.
לצורך כך, קיבל הנאשם מחד"ר את הקלטת בה צולמו שהאדי וסעיד ואת
מצלמת הוידיאו.

דפוס פעולה זה אופייני לפעילותו של הארגון הטרוריסטי, שהנאשם היה
אחד ממפקדיו הבכירים, בעת התארגנות לביצוע פיגוע התאבדות.

ד. לאחר מכן, על פי הוראות הנאשם, פעלו טיטי ופעילים נוספים שחברו לביצוע
הקשר, להסעתם של שהאדי וסעיד לאיזור סמוך לנתניה. משם הלכו, שהאדי
וסעיד ברגל למקום הפיגוע.

ה. לאחר הפיגוע, כמפורט לעיל, התקשר הנאשם לכלי התקשורת והודיע עליהם
כי הארגון הטרוריסטי אחראי לפיגוע והוא אשר ביצע אותו.
כמו כן, הנאשם גרם לכך כי הצילומים המפורטים בסעיף 3(ג) לעיל, יגיעו
לאמצעי התקשורת.

4. א. במעשיו הנ"יל גרם הנאשם בכוונה תחילה למותם של 2 אנשים.

ב. במעשיו הנ"יל ניסה הנאשם, שלא כדין, לגרום למותם של אנשים רבים.

ג. במעשיו הנ"יל התכוון הנאשם לגרום חבלה חמורה ע"י פציעתם של עשרות אנשים
נוספים שלא כדין.

TO  YEDIOT    P. 13

13

5. התנזים וגדודי חללי אל-אקצא הנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת
   טרור, והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון הטרוריסטי והיה חבר
   בו.

6. רובה M-16 ורימוני יד הם "נשק" על פי דין.

**ב. הוראות החיקוק לפיהן מואשם הנאשם:**

1. רצח בכוונה תחילה, עבירה על סעיף 300(א)(2) לחוק העונשין, התשל"ז – 1977.

2. ניסיון לרצח, עבירה על סעיף 305(1) לחוק הנ"ל.

3. גרימת חבלה בכוונה מחמירה, עבירה על סעיף 329(1) לחוק הנ"ל.

4. קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ"ל.

5. פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודת מניעת טרור.

6. חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ"ל.

**אישום חמישי:**

**א. העובדות:**

1. א. בתאריך 30/3/02 בשעה 30:13 או בסמוך לכך, היו המחבלים מנידי חנפר ופתחי
   עמירי (להלן : "מנידי ופתחי") בדרכם לביצוע פיגוע בישראל, כשהם חמושים
   ברובה M-16, ברימוני יד ובמטען חומר נפץ, וזאת בכוונה לבצע פיגוע רצחני.

   ב. בהיותם בסמוך לבאקה אל נרביה נתקלו מנידי ופתחי בכוח של שוטרי מג"ב.
   מנידי ופתחי ירו לעבר השוטרים וזרקו רימון רסס שהיה ברשותם, וזאת בכוונה
   תחילה לגרום למותם של השוטרים.

   ג. במעשיהם הנ"ל גרמו מנידי ופתחי בכוונה תחילה למותו של שוטר מג"ב, רס"ל
   קונסטנטין דנילוב ז"ל.

14

ד. כמו כן כתוצאה ממעשיהם הנ״ל של מג'די ופתחי שנעשו בכוונה לגרום חבלה חמורה, נפצע השוטר רס״ב אמל איברהים.

ה. מיד לאחר מכן נורו למוות המחבלים על ידי השוטרים.

2. זמן מה עובר לאירועים המתוארים לעיל, הנאשם, שכאמור לעיל, היה אחד ממפקדיו הבכירים של הארגון הטרוריסטי, קשר קשר עם טיטין, חדיר הנזכרים באישומים הקודמים לעיל ועם פעילים נוספים, להוציא לפועל פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים.

3. במסגרת ההתארגנות של חנאשם והפעילים האחרים בארגון חטרוריסטי לביצוע הקשר, שהנאשם עמד בראשה, בוצעו בהנהגתו של הנאשם, לשם קידומו של הקשר והוצאתו אל הפועל, הפעולות הבאות:

א. עובר לתאריך הנזכר בסעיף 1 לעיל, גיוסו מג'די ופתחי, בידיעתו ובאישורו של הנאשם, לבצע פיגוע התאבדות שמטרתו לגרום בכוונה תחילה למותם של קורבנות רבים.

ב. מג'די ופתחי צוידו ע״י פעילי הארגון הטרוריסטי שחברו לביצוע הקשר, ברובה M-16, ברימוני יד ובחגורת נפץ.

ג. הנאשם הורה לחד״ר לדאוג להגעתם של מג'די ופתחי לישראל, ולצורך כך אף העביר לחד״ר כסף מזומן בסך של 3,500 ש״ח שנועדו לרכישת רכב גנוב שישמש להעברתם לישראל.

על פי הוראות הנאשם, נסע חד״ר עם מג'די ופתחי לטול כרם, ליווה אותם חלק מהדרך והראה להם את המשך חדרך.

ד. לאחר הפיגוע התקשר הנאשם לאמצעי תקשורת שונים והודיע להם כי הארגון הטרוריסטי אחראי לפיגוע והוא אשר ביצע אותו.

4. א. במעשיו הנ״ל גרם חנאשם בכוונה תחילה למותו של השוטר הנ״ל.

ב. במעשיו הנ״ל ניסה הנאשם, שלא כדין לגרום למותם של אנשים רבים.

ג. במעשיו הנ״ל התכוון הנאשם לגרום חבלה חמורה ע״י פציעתם של עשרות אנשים נוספים שלא כדין.

TO  YEDIOT

P.15

15

5. התניים ומדודי חללי אל-אקצא הנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת טרור, והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון הטרוריסטי וריה חבר בו.

6. רובה M-16, רימוני יד וחגורת נפץ הם "נשק" על פי דין.

**ב. הוראות החיקוק לפיהן מואשם הנאשם:**

1. רצח בכוונה תחילה, עבירה על סעיף 300(א)(2) לחוק העונשין, התשל"ז – 1977.

2. ניסיון לרצח, עבירה על סעיף 305(1) לחוק הנ"ל.

3. גרימת חבלה בכוונה מחמירה, עבירה על סעיף 329(1) לחוק הנ"ל.

4. קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ"ל.

5. פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודת מניעת טרור.

6. חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ"ל.

**אישום שישי:**

**א. העובדות:**

1. א. במועד בלתי ידוע, במהלך אינתיפאדת אל-אקצא, היו שני מחבלים, שזהותם אינה ידועה, בדרכם לביצוע פיגוע התאבדות בירושלים, כשהם חמושים ברובי קלצ'ניקוב וברימוני יד, וזאת במטרה לגרום בכוונה תחילה למותם של אזרחים ישראלים רבים.

ב. המחבלים נתפסו במחסום צה"ל בדרכם למקום הפיגוע, ונעצרו ע"י כוחות הביטחון.
בכך נמנע, בדרך נס, פיגוע הרג המוני.

16

2. זמן מה עובר לאירועים המתוארים לעיל, הנאשם, שכאמור היה אחד ממפקדיו הבכירים של הארגון הטרוריסטי, קשר קשר עם חדר ואחמד, הנזכרים באישומים הקודמים לעיל ועם פעילים נוספים בארגון הטרוריסטי, להוציא לפועל פיגוע שמטרתו לגרום למותם בכוונה תחילה של אזרחים ישראלים רבים.

3. במסגרת ההתארגנות של הנאשם וחפעילים האחרים בארגון הטרוריסטי, לביצוע הקשר, שהנאשם עמד בראשה, בוצעו בהנהגתו של הנאשם, לשם קידומו של הקשר והוצאתו אל הפועל, הפעולות הבאות:

א. המחבלים גויסו בידיעתו ובאישורו של הנאשם לבצע את הפיגוע הנ"ל שמטרתו הייתה לגרום תחילה למותם של אזרחים ישראלים רבים.

ב. המחבלים צוידו ע"י פעילי הארגון הטרוריסטי שחברו לביצוע חקשר, ברובי קלצ'ניקוב וברימוני יד.

ג. הנאשם הורה לחד'יר, לאחמד ולפעילים חנוספים שחברו לביצוע הקשר לפעול להגעתם של המחבלים למקום שיועד לביצוע הפיגוע בירושלים.

ד. חד'יר, אחמד והפעילים הנוספים שחברו לביצוע הקשר פעלו על פי הוראותיו של הנאשם, אלא שבסופו של דבר, בדרך נס, נתפסו המחבלים במחסום צה"ל, כאמור לעיל, בטרם הספיקו לבצע את הפיגוע הרצחני.

4. א. במעשיו הנ"ל ניסה הנאשם, שלא כדין, לגרום למותם של אנשים רבים.

ב. במעשיו הנ"ל ניסה הנאשם, לגרום חבלה חמורה ע"י פציעתם של עשרות אנשים נוספים, שלא כדין.

5. התנזים ונד'וד'י חללי אל-אקצא הנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת טרור, והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון חטרוריסטי והיה חבר בו.

6. רובי קלצ'ניקוב ורימוני יד הם "נשק" על פי דין.

17

‫ב.  הוראות החיקוק לפיהן מואשם הנאשם:‬

1. ‫ניסיון לרצח, עבירה על סעיף 305(1) לחוק העונשין, התשל"ז – 1977.‬

2. ‫ניסיון לגרימת חבלה חמורה בכוונה מחמירה, עבירה על סעיף 329(1) ביחד עם סעיף‬
   ‫25 לחוק הנ"ל.‬

3. ‫קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ"ל.‬

4. ‫פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודת מניעת טרור.‬

5. ‫חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ"ל.‬


‫אישום שביעי:‬

‫א.  העובדות:‬

1. ‫א. במועד בלתי ידוע, במהלך אינתיפאדת אל-אקצא, היה מחבל, שזהותו אינה ידועה,‬
   ‫בדרכו לביצוע פיגוע התאבדות בירושלים, כשהוא חמוש, וזאת בכוונה לגרום‬
   ‫בכוונה תחילה למותם של אזרחים רבים.‬

   ‫ב. בהיותו בדרכו למקום הפיגוע, נעצר המחבל ע"י שוטרים ליד בית חנינא ונורה‬
   ‫למוות.‬
   ‫בכך נמנע, בדרך נס, פיגוע הרב חמוני.‬

2. ‫זמן מה עובר לאירועים המתוארים לעיל, הנאשם, שכאמור היה אחד ממפקדיו של‬
   ‫הארגון הטרוריסטי, קשר קשר עם טיטי, הנזכר באישומים הקודמים לעיל ועם‬
   ‫פעילים נוספים בארגון הטרוריסטי, להוציא לפועל פיגוע שמטרתו לגרום למותם‬
   ‫בכוונה תחילה של אזרחים ישראלים רבים.‬

3. ‫במסגרת ההתארגנות של הנאשם והפעילים האחרים בארגון הטרוריסטי, לביצוע‬
   ‫הקשר, שהנאשם עמד בראשה, בוצעו בהנהגתו של הנאשם, לשם קידומו של הקשר‬
   ‫והוצאתו אל הפועל, הפעולות הבאות:‬

   ‫א. המחבל גויס בידיעתו ובאישורו של הנאשם לבצע את הפיגוע הנ"ל שמטרתו‬
   ‫הייתה לגרום בכוונה תחילה למותם של קורבנות רבים.‬

24-JUL-2002 13:50    からか    FROM LISHKAT DOVER          TO YEDIOT          P.18

18

ב. המחבל צויד בנשק ע״י פעילי הארגון הטרוריסטי שחברו לביצוע הקשר.

ג. הנאשם הורה לפעילים הנוספים שחברו לביצוע הקשר, לפעיל להגעתו של המחבל למקום שיועד לביצוע הפיגוע בירושלים.

ד. הפעילים שחברו לביצוע הקשר פעלו על פי הוראותיו של הנאשם, אלא שבסופו של דבר, בדרך נס, נעצר המחבל ע״י שוטרים, כאמור לעיל, בטרם הספיק לבצע את הפיגוע חרצחני.

4.  א. במעשיו הנ״ל ניסה הנאשם, שלא כדין, לגרום למותם של אנשים רבים.

ב. במעשיו חנ״ל ניסח הנאשם, לגרום חבלה חמורה ע״י פציעתם של עשרות אנשים נוספים, שלא כדין.

5.  התנוים וגדודי חללי אל-אקצא הנם ״ארגון טרוריסטי״ כהגדרתו בפקודת מניעת טרור, וחנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון הטרוריסטי והיה חבר בו.

ב. הוראות תחיקוק לפיהן מואשם הנאשם:

1.  ניסיון לרצח, עבירה על סעיף 305(1) לחוק העונשין, התשל״ז – 1977.

2.  ניסיון לגרימת חבלה חמורה בכוונה מחמירה, עבירה על סעיף 329(1) ביחד עם סעיף 25 לחוק הנ״יל.

3.  קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ״יל.

4.  פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודת מניעת טרור.

5.  חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ״יל.

24-JUL-2002  13:05   FROM  LISHKAT DOVER                TO  YEDIOT                    P.19

19

<u>אישום שמיני:</u>

א. העובדות:

1. א. במועד בלתי ידוע, אחרי פרוץ אינתיפאדת אל-אקצא, קשר הנאשם קשר עם
פעילים נוספים בארגון הטרוריסטי, לבצע פיגועי ירי לעבר עמדת שמירה של
צה"ל, שהייתה מאוישת בחיילים ישראלים, בסמוך לקבר יוסף בשכם.
במועדים בלתי ידועים, במהלך התקופה שלאחר מכן, ביצע הנאשם בצוותא עם
פעילים נוספים בארגון הטרוריסטי, פינותי ירי לעבר עמדת צה"ל שהייתה
ממוקמת בסמוך לקבר יוסף.

ב. עובר לחודש מאי 2001, קשר הנאשם קשר עם פעילים נוספים בארגון הטרוריסטי,
לבצע פיגוע ירי לעבר עמדת שמירה של צה"ל, שהייתה מאוישת בחיילים
ישראלים, בהר גריזים, וכן לעבר עמדות נוספות של צה"ל באיזורים סמוכים.
לצורך קידום מטרות הקשר, סיפק הנאשם לפעילים הנוספים שחברו לקשר, רובי
M-16.

במהלך חודש מאי 2001, במספר הזדמנויות, במועדים בלתי ידועים, ביצע הנאשם
בצוותא עם פעילים נוספים בארגון הטרוריסטי, פינועי ירי.
פיגועי הירי בוצעו, כשהנאשם והפעילים הנוספים מצוידים ברובי M-16, לעבר
חעמדה הצבאית בהר גריזים, לעבר מחנה עין-בית ולעבר סיורים של הצבא
שסיירו באיזור מחנה באלטח וכן לעבר מטרות צבאיות באיזור מחנה חוארה.

ג. במועד בלתי ידוע, אחרי פרוץ אינתיפאדת אל-אקצא, קשר הנאשם קשר עם
פעילים נוספים בארגון הטרוריסטי, לבצע פיגועים כנגד אזרחים ישראלים וחיילי
צה"ל.
במסגרת ביצוע חקשר ולשם קידומו, סיפק הנאשם נשק לפעילים בארגון
חטרוריסטי לצורך ביצוע הפיגועים.
חפעילים בארגון הטריריוסטי, שחברו לביצוע הקשר עשו שימוש בנשק, אותו סיפק
להם הנאשם, בפיגועים שיפורטו לחלן :

1.   פיגוע הירי על התנחלות חומש.
2.   הנחת מטען חבלה בכביש עוקף זועתא-עצירה.
3.   פיגוע ירי ברובה M-16 כנגד סייר צבאי בדיר-שארף.
4.   הנחת מטען בצרה.

2. במעשיו חנ"ל ניסח הנאשם, שלא כדין, לגרום למותם לאנשים רבים.

24-JUL-2002  13:06    FROM  LISHKAT DOVER                    TO  YEDIOT                    P.20

20

3. התנזים וגדודי חללי אל-אקצא הנם "ארגון טרוריסטי" כהגדרתו בפקודת מניעת
טרור, והנאשם מילא תפקיד בכיר בהנהלת ובפעילות הארגון חטרוריסטי והיה חבר
בו.

4. רובי M-16 ומחסניות הם "נשק" על פי דין, והנאשם נשא ומסר אותם לאחרים ללא
רשות על פי דין.

ב.  הוראות החיקוק לפיהן מואשם תנאשם:

1. ניסיון לרצח, עבירה על סעיף 305(1) לחוק העונשין, התשל"ז – 1977.

2. קשירת קשר לבצע פשע, עבירה על סעיף 499 לחוק הנ"ל.

3. נשיאת נשק שלא כדין, עבירה על סעיף 144(ב) לחוק הנ"ל.

4. פעילות בארגון טרוריסטי, עבירה על סעיף 2 לפקודה למניעת טרור.

5. חברות בארגון טרוריסטי, עבירה על סעיף 3 לפקודה הנ"ל.

תל-אביב,
16 ביולי 2002
ז' באב תשס"ב

דבורה חן,
מנהלת המחלקה לעניינים פליליים-בטחוניים
וענינים מיוחדים
בפרקליטות המדינה

עדי התביעה:

1. מ.א. 739060 רס"מ רוני עאמר, משטרת ישראל.
2. מ.א. 928301 רס"מ האדי חלבי, משטרת ישראל.
3. אחמד ברגותי, יוזמן באמצעות שב"ס.
4. אחמד אבו חד'ר, יוזמן באמצעות שב"ס.
5. יאסר אבו-בכר, יוזמן באמצעות שב"ס.

רשימה מלאת של עדי תביעה תוגש לבית המשפט בהקדם.
מה ( doc.2169 )