# EXHIBIT A.357
## (1 of 5)

PLAINTIFF'S
EXHIBIT
357


Israel                                    Defense                                          Forces
Before the Military Court                        Court Case:   3459/02
In Beit El                                Prosecution case:   444/02
Before a panel                        Detailed incident case:   1282/02 Binyamin
                                                              1283/02 Binyamin
                                                              1284/02 Binyamin
                                                              1285/02 Binyamin
                                                              234/01 Jerusalem Special
                                                                 Duties Department
                                                              457/01 Binyamin
                                                              2159/01 Binyamin
                                                              7915/01 Zion
                                                              481/01 Zion
                                                              8379/01 Zion
                                                              39/02 Binyamin
                                                              502/02 Zion
                                                              483/02 Shafat
                                                              4258/02 Yarkon
                                                              568/02 Shafat
                                                              783/02 Binyamin

[Stamp]  This indictment was received _____
             on date: October 1, 2002
             and entered into the log in case _____
             by the court [Signature]

## In the trial between the military prosecutor – The Prosecutor

### - v. -

Ahmed Taleb Moustafa Barghouti (alias: "Al Faransi")
Identity No. 994466860, born on March 15, 1976, a resident of Albira – Ramallah
detained since April 15, 2002

### - The Defendant -

### Amended Indictment

## The above mentioned Defendant is accused hereby of committing the following offenses:

**First count:**

**Nature of the offense:** Membership in an illegal organization, an offense pursuant to
Regulations 84 (1) (A) and 85 (1) (A) of the Defense Regulations (Time of Emergency), 1945.

[Stamp] P 5: 175

Prosecution Case 444/02 Amended

1

**Details of the offense:** The above mentioned Defendant, in the Area, from late 2000 until the day of his arrest, was a member or acted as a member of an illegal organization, as follows:

The above mentioned Defendant, from early 2006 until the day of his arrest, acted as the driver and bodyguard of Marwan Barghouti, who is the head of the "Tanzim" of the Fatah.

The above mentioned Defendant, from early 2001 until the day of his arrest, operated within the framework of the "Tanzim" of the Fatah, which is an illegal organization, and conducted military activity against Israeli targets.

During the course of his military activity, the Defendant regularly received financial assistance from operatives of the "Tanzim" of the Fatah. The Defendant received through his bank account an amount of approximately NIS 7,000 from Nasser Mahmoud Aweis, a senior military operative from the Nablus area, and an amount of approximately NIS 10,000 from Faraj Barghouti, a senior operative in the Ramallah area.

[Stamp] P 5: 175 [continued]

Prosecution Case 444/02 Amended

2

During his military activity, the Defendant was in constant contact with the Head of the "Al Aqsa Martyrs' Brigades", the military arm of the "Tanzim" of the Fatah in Nablus – Nasser Mahmoud Aweis, the Head of the "Al Aqsa Martyrs' Brigades" in the Tul-Karm Area – Raed Karmi, the Head of the "Al Aqsa Martyrs' Brigades" in the Jenin area – Abed Karim Rateb Younes Aweis, the Head of the "Al Aqsa Martyrs' Brigades" in the Bethlehem and Hebron area – Jihad Jaara, the Head of the "Al Aqsa Martyrs' Brigades" in the Area – Nasser Mohamed Yusef Naji (Abu-Hamid), and with the Head of the "Tanzim" of the Fatah – Marwan Barghouti.

Within the framework of his above mentioned military activity, the Defendant distributed in Ramallah leaflets on taking the responsibility for attacks that were carried out in Israel and in the Area by operatives of the "Tanzim" of the Fatah.

**Second count:** Holding an office in an illegal organization, an offense under Regulations 84(1) (A) and 85(1) (B) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from 2001 until the day of his arrest, managed or helped in the management of an illegal organization, or held any office or position in or under the authority of an illegal organization, as follows:

The above mentioned Defendant, during the period set forth, was one of the persons responsible for the "Al Aqsa Martyrs Brigades" Organization (Kataib Shuhada al-Aqsa) in the Ramallah area – the military arm of the "Tanzim" of the Fatah, which is an illegal organization. "The Al Aqsa Martyrs Brigades" were responsible for the commission of a large number of attacks against IDF soldiers and Israeli civilians both in the Area and within the territory of the State of Israel, in which a large number of Israeli civilians and IDF soldiers were killed.

Among other things, the Defendant served as the contact person between the other regional coordinators of the "Al Aqsa Martyrs Brigades" and the head of the "Tanzim" of the Fatah – Marwan Barghouti.

**Third count:**

**Nature of the offense:** Execution of a service for an illegal organization, an offense pursuant to Regulations 84(1) (A) and 85(1) (C) of the Defense Regulations (Time of Emergency), 1945.

[Stamp] P 5: 176

Prosecution Case 444/02 Amended

**Details of the offense:** The above mentioned Defendant, in the Area, during the period set forth in the first count of the indictment or thereabouts, performed some work or executed some service for an illegal organization, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, on a large number of different opportunities, distributed money to military operatives of the "Tanzim" of the Fatah. The Defendant frequently received money from the operative of the "Tanzim" of the Fatah Ali Faraj Barghouti and distributed it to many people who carried out attacks against IDF soldiers and Israeli civilians. On each opportunity, the Defendant provided to each of the operatives various amounts of money, from 100 to 300 U.S. dollars. In addition, the Defendant regularly transferred larger amounts to military operatives in the "Tanzim" of the Fatah through bank transfers.

Among other things, the Defendant transferred to Mantzour Sharam, a senior military operative in the "Tanzim" of the Fatah in Tul-Karm, who is deputy of Raed Karmi – the Head of the "Al Aqsa Martyrs Brigades" in Tul-Karm, which is the military arm of the "Tanzim" of the Fatah, the amount of NIS 3,000.

In addition, the Defendant transferred to Nasser Mohamed Yusef Naji (Abu-Hamid), who is the Head of the "Al Aqsa Martyrs Brigades" amounts from NIS 1,000 to 2,000 on approximately 6-7 different occasions, for the purpose of purchasing cartridges.

In addition to money, the Defendant regularly provided military operatives of the "Tanzim" of the Fatah cellular telephone handsets for the purpose of their military activity.

[Stamp] P 5: 176 [continued]

Prosecution Case 444/02 Amended

4

**Fourth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in 1998 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in the Amari Refugee Camp or thereabouts, purchased from Samer Almimi an MP-5 submachine gun for 4,000 Jordanian dinars and a short barreled M-16 assault rifle with telescopic sights in exchange for 5,000 Jordanian dinars, without a permit signed by or on behalf of the commander of the Area. The above mentioned Defendant, during the years 2001-2002, regularly delivered the above mentioned MP-5 submachine gun to various persons for them to use it to carry out shooting attacks against Israeli civilians, as will be described further in the indictment.

**Fifth count:**

**Nature of the offense:** Possession of a firearm, an offense pursuant to Section 53(A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, during the period set forth in the first count of the indictment, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is planned to cause or is capable of causing death or severe injury, without a permit certificate granted by or for a military commander, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, kept in his possession an MP-5 submachine gun, a pistol and a short barreled M-16 assault rifle with telescopic sights, without a permit certificate granted by or for a military commander.

**Sixth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

[Stamp] P 5: 177

Prosecution Case 444/02 Amended

5

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2000 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, at the time set forth, [Translator's note: as written] in Ramallah or thereabouts, delivered to Nasser Mohamed Yusef Naji (Abu-Hamid) – the head of the military arm of the "Tanzim" of the Fatah, a Kalashnikov assault rifle and 50 cartridges for a Kalashnikov assault rifle, without a permit signed by or on behalf of the commander of the Area. Nasser Abu-Hamid delivered the above mentioned Kalashnikov assault rifle and the above mentioned cartridges to Ahmad Andour, an operative in Force 17 of the Palestinian Authority. Ahmad Andour reported to Nasser Abu-Hamid that he had carried out a shooting attack using the above mentioned Kalashnikov assault rifle in which the late Kahane couple were killed, and carried out a shooting attack in which an Israeli civilian was killed, using the above mentioned cartridges.

### Seventh count:

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, from late 2000 until the day of his arrest or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, during the period set forth, in Ramallah or thereabouts, on many different occasions, delivered to Nasser Mohamed Yusef Naji (Abu-Hamid) – the head of the military of the "Tanzim" of the Fatah, large amounts of money totaling some tens of thousands of shekels and tens of thousands of U.S. dollars for the purpose of purchasing arms and cartridges for carrying out shooting attacks against IDF soldiers and Israeli civilians. The Defendant also regularly kept at home cartridges that had been purchased with this money and deliver them to Nasser Abu-Hamid and the latter's colleagues as necessary, without a permit signed by or on behalf of the commander of the Area.

[Stamp] P 5: 177 [continued]

Prosecution Case 444/02 Amended

**Eighth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, from late 2001 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, delivered to Nasser Mohamed Yusef Naji (Abu-Hamid), the head of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, 100 cartridges for an M-16 assault rifle, without a permit signed by or on behalf of the commander of the Area.

**Ninth count:**

**Nature of the offense:** Undermining the security of the area, an offense pursuant to Section 53(A) (4) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2001 or thereabouts, committed an act or an omission constituting an undermining of or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory, institute or equipment that is used or is capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the Israel Defense Forces, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, purchased a stolen white Mazda vehicle, a recent model. The above mentioned Defendant delivered the above mentioned vehicle to Muhannad Abu Halawa, who departed in the above mentioned vehicle to execute attacks against Israeli civilians and IDF soldiers in the Area.

**Tenth count: (Detailed Incident 234/01 Jerusalem Special Duties Department)**

[Stamp] P 5: 178

Prosecution Case 444/02 Amended

7

**Nature of the offense:** Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on January 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

1.    The above mentioned Defendant, at the time set forth, met in Ramallah Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha") and Jad Ibrahim Musa Maala.

2.    Jad Maala and Mohamed Mousleh asked the Defendant for a vehicle for the purpose of carrying out a shooting attack against Jews. The Defendant provided Jad Maala and Mohamed Salah a stolen silver Volkswagen Bora vehicle, bearing Israeli license plates, in order for his above mentioned colleagues to carry out a shooting attack from this vehicle with the intent of causing the death of Israeli civilians.

3.    Mohamed Mousleh drove the Volkswagen vehicle while Jad Maala sat next to him armed with a "16" pistol.

4.    Jad Maala and Mohamed Mousleh traveled in the Volkswagen vehicle in the Atarot area in order to search for an Israeli vehicle with the aim of carrying out a shooting attack against it and causing the death of the vehicle occupants.

5.    At about 6:15 p.m., in the Atarot Industrial Zone, Jad Maala and Mohamed Mousleh noticed a GMC Safari vehicle, license No. 7901306 (hereinafter: "the Vehicle"), which the late Elazar Akiva Fashkos drove.

6.    Jad Maala and Mohamed Mousleh started to drive after the Vehicle. The Defendant and Mohamed Mousleh followed the Vehicle from the Atarot Industrial Zone to A-Ram Junction and back.

7.    When the vehicle returned to the Atarot Industrial Zone and drove on the main road, Jad Maala and Mohamed Mousleh drove the Volkswagen vehicle near the Vehicle.

[Stamp] P 5: 178 [continued]

Prosecution Case 444/02 Amended

8

8.    At this stage, Jad Maala opened the window and fired with the above mentioned "16" pistol approximately 7 rounds at the Vehicle with the intent of causing the death of the driver of the Vehicle. A number of bullets that were fired by Jad Maala hit the Vehicle, one of which hit the late Elazar Akiva Fashkos, who was driving the vehicle in the neck and another hit him in the chest.

9.    Once Jad Maala and Mohamed Mousleh saw that the vehicle had stopped, the two escaped in the Volkswagen vehicle to Ramallah.

[Stamp] P 5: 178 [continued]

Prosecution Case 444/02 Amended

10. In Ramallah, Jad Maala and Mohamed Mousleh returned the Volkswagen vehicle to the Defendant and reported to him on the attack that they had carried out.

11. A day later, the Defendant delivered to Jad Maala approximately 300 U.S. dollars for carrying out the above mentioned attack. The Defendant received the above mentioned money from Ali Faraj Barghouti.

12. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Elazar Akiva Fashkos**, who died as a result of the impact of the bullets that were fired by Jad Maala as described above.

**Eleventh count: (Detailed Incident 457/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on February 25, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, at the time set forth, met in Ramallah Muhannad Abu Halawa, Mohamed Abed Rahman Salam Mousleh ("Abu Satha") and Tarek Malahi (A-Nuf).

2. The Defendant and his above mentioned colleagues discussed the situation in the Area. The Defendant and his above mentioned colleagues contended that there was no activity against Israeli targets. The Defendant asked his above mentioned colleagues what could be done to improve the situation. The above mentioned colleagues of the Defendant asked the Defendant to provide them a vehicle and weapons and they would carry out an attack against Israeli civilians with the aim of causing their death.

3. The Defendant consented to the above mentioned proposal. The Defendant delivered to his above mentioned friends his vehicle, a gray Volkswagen Bora, 2001 model, bearing Israeli license plates, and an MP-5 submachine gun with a magazine and cartridges.

4. Muhannad Abu Halawa, Mohamed Mousleh (alias: "Abu Satha") and Tarek Malahi (A-Nuf) traveled in the vehicle of the Defendant, armed with the above mentioned MP-5

[Stamp] P 5: 179

Prosecution Case 444/02 Amended

10

submachine gun, which they had received from the Defendant. The above mentioned colleagues of the Defendant reached the Atara Bridge area.

5.  At about 1:15 p.m., the above mentioned colleagues of the Defendant noticed a GMC Vandura vehicle, license No. 3082518, which Yosef Cohen was driving, this vehicle departing from the settlement Ateret and turning towards the Atara Bridge.

6.  The above mentioned colleagues of the Defendant decided to carry out a shooting attack against the above mentioned GMC vehicle with the intent of causing the death of its occupants.

7.  The above mentioned colleagues of the Defendant decided to wait until the Citroen vehicle that was driving in front of them would overtake the GMC vehicle and then [they themselves would] overtake the GMC vehicle and carry out the planned shooting attack against it.

8.  In the above mentioned Citroen vehicle, William Sameh Fares el Khatib (Rimawi), Rebhi Zuhdi Alamsar (Rimawi) and Akram Abdullah Mohamed Qassam (Azawi), were traveling, armed with 2 Kalashnikov assault rifles and an M-16 assault rifle. The above mentioned occupants of the Citroen vehicle opened fire using the weapons above at the above mentioned GMC vehicle with the intent of causing the death of its occupants. 29 bullets that were fired by these persons hit the above mentioned GMC vehicle. Three bullets hit the head and neck of Yosef Cohen, who was driving the above mentioned GMC vehicle. As a result of the impact of these bullets and the impact of fragments throughout his body, Yosef Cohen was severely injured.

9.  After the above mentioned colleagues of the Defendant noticed that the GMC vehicle was hit, that it had swerved off the road and the driver of the vehicle was injured as a result of the shooting attack that was carried out from the Citroen vehicle that was driving before them, the colleagues of the Defendant escaped back to Ramallah.

10.  In Ramallah, the above mentioned colleagues of the Defendant returned the above mentioned Volkswagen vehicle and the above mentioned MP-5 submachine gun back to the Defendant. Muhannad Abu Halawa, Tarek Malahi (A-Nuf) and Mohamed Mousleh (alias: "Abu Satha") reported to the Defendant that they had carried out a shooting attack using the above mentioned vehicle and weapons and that a Jewish driver had been wounded as a result.

[Stamp] P 5: 179 [continued]

Prosecution Case 444/02 Amended

**Twelfth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

Ziad Hamuda Yaakub Hamuda together with Mamoun Bassam Abdullah Abu-Shama, Haitham Azat, Sa'id Abrash and Ahmad Abu Alam, at the time set forth, decided to carry out a shooting attack against the settlement of Psagot with the aim of causing the death of Israeli civilians.

The above mentioned persons approached the office of Marwan Barghouti, the head of the "Tanzim" of the Fatah. The above mentioned persons met Marwan Barghouti and asked the latter for weapons for carrying out a shooting attack against Israeli civilians in the settlement of Psagot. Marwan Barghouti was happy to hear this plan to carry out a shooting attack at the settlement of Psagot and promised to supply weapons for carrying out the planned shooting attack.

After about a week, Ziad Hamuda and his above mentioned colleagues approached the office of Marwan Barghouti in Ramallah again. Marwan Barghouti was not in his office at that time and the Defendant was the one who talked with Ziad Hamuda and his above mentioned colleagues. The Defendant promised to talk to Marwan Barghouti concerning the request of his above mentioned colleagues to receive weapons for the purpose of carrying out a shooting attack against the settlement of Psagot.

After about three days, Ziad Hamuda and his above mentioned colleagues approached the office of Marwan Barghouti in Ramallah again. These persons again asked Marwan Barghouti for weapons for carrying out a shooting attack against the settlement of Psagot. Marwan Barghouti called Muhannad Abu Halawa, a senior military operative in the "Tanzim" of the Fatah. It was agreed that Muhannad Abu Halawa would meet the above mentioned persons in Manara Square in Ramallah and would to deliver them weapons there for the purpose of carrying out the planned shooting attack.

[Stamp] P 5: 180

Prosecution Case 444/02 Amended

12

Ziad Hamuda and his above mentioned colleagues met on that day, in Manara Square in Ramallah, Muhannad Abu Halawa. During the said meeting, Muhannad Abu Halawa promised to transfer weapons to them for the purpose of carrying out the planned shooting attack.

That night, the Defendant arrived at the home of Ziad Hamuda in Al-Bira and delivered to Ziad Hamuda an MP-5 submachine gun and cartridges for the purpose of carrying out a shooting attack against Israeli civilians.

After about an hour, Ziad Hamuda departed from his home along with Mamoun Abu-Shama in the vehicle of Ziad Hamuda, while in possession of the above mentioned MP-5 submachine gun. Ziad Hamuda and Mamoun Abu-Shama arrived at a site near the settlement of Psagot. There the two got out of the vehicle. Mamoun Abu-Shama fired all of the cartridges that the Defendant had delivered with the above mentioned MP-5 submachine gun at the settlement of Psagot with the aim of causing the death of the residents of the settlement of Psagot and of IDF soldiers who were in the settlement of Psagot.

Immediately after the shooting, Ziad Hamuda and Mamoun Abu-Shama returned in their above mentioned vehicle to Ramallah.

**Thirteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on June 26, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, in June 2001 or thereabouts, in Ramallah, in the circumstances described in the previous count of the indictment, delivered to Ziad Hamuda Yaakub Hamuda an MP-5 submachine gun for the purpose of carrying out shooting attacks against Israeli civilians and IDF soldiers.

Ziad Hamuda, at the time set forth, with Mamoun Bassam Abdullah Abu-Shama and Haitham Azat, departed from Ramallah towards the road leading from Pisgat Ze'ev to the [neighborhood of French Hill] in Jerusalem, in order to carry out a shooting attack there and cause the intentional death of Israeli civilians. Ziad Hamuda and his above mentioned colleagues departed as set forth armed with an

[Stamp] P 5: 180 [continued]

Prosecution Case 444/02 Amended

13

MP-5 rifle [Translator's note: as written], which had been delivered to them for this purpose by the Defendant as set forth above, and with a "9" pistol. Ziad Hamuda and his colleagues departed to execute the said attack while possessing a drawing of the [neighborhood of] French Hill, which had been made out by Mamoun Abu-Shama where they had planned to carry out the shooting attack.

Ziad Hamuda and his above mentioned colleagues departed to execute the said attack in arrangement with Muhannad Abu Halawa, and also asked the latter to inform Marwan Barghouti, the head of the "Tanzim" of the Fatah, whether any of the perpetrators of the attack would be killed during the execution of the said shooting attack. Ziad Hamuda and his colleagues were unable to reach the place at which they had planned to carry out the shooting attack due to the large presence of IDF forces in the Hizma area.

[Stamp] P 5: 180 [continued]

Prosecution Case 444/02 Amended

**Fourteenth count**: (Detailed Incident 2159/01 Binyamin)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

1.    The above mentioned Defendant, in August 2001, in Ramallah or thereabouts, met Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha"). Mohamed Mousleh (alias: "Abu Satha") informed the Defendant that he had met a number of operatives of the "Tanzim" of the Fatah, who carried out shooting attacks against Israeli civilians. Mohamed Mousleh asked to receive the approval of the Defendant to join this cell and carry out attacks against Israeli civilians with the intent of causing their death. The Defendant permitted Mohamed Mousleh to joint in the said activity.

2.    Mohamed Mousleh met the above mentioned "Tanzim" operatives, who were Hussam Akel Rajb Shahada, Fares Sadak Mohammed Ghanem (alias "al Hittawi") and Tarek Malahi A-Nuf. The above mentioned three persons told Mohamed Mousleh that they intended to carry out a shooting attack with the aim of causing the death of Israeli civilians. The three asked Mohamed Mousleh to provide them weapons for carrying out the planned shooting attack.

3.    On August 25, 2001, Fares Ghanem, Hussam Shahada and Tarek A-Nuf approached Mohamed Mousleh and asked for more weapons that day for the purpose of carrying out the shooting attack.

4.    On that day, Mohamed Mousleh approached the Defendant. Mohamed Mousleh asked the Defendant for weapons for the purpose of carrying out a shooting attack against Israeli civilians. A short time later, on that day, the Defendant delivered to Mohamed Mousleh an MP-5 submachine gun with a magazine filled with cartridges, in order for Mohamed Mousleh and his above mentioned colleagues to use it to carry out a shooting attack and cause the death of Israeli civilians.

[Stamp] P 5: 181

Prosecution Case 444/02 Amended

15

5.    In the evening hours, on the same day, in Ramallah or thereabouts, Mohamed Mousleh delivered the above mentioned MP-5 submachine gun and ammunition to Fares Ghanem and Hussam Shahada, who arrived in an Isuzu pickup vehicle belonging to Fares, in order for Fares and Hussam to use the above mentioned weapon to carry out a shooting attack and cause the death of Israeli civilians.

6.    Immediately after receiving the weapon, Fares Ghanem, Hussam Shahada, Haitham Almutfak Hamdan and Ali Alian departed from Ramallah towards Highway 443 with the aim of carrying out the planned shooting attack there. The above mentioned persons traveled in two vehicles – one was an Isuzu pickup belonging to Fares Ghanem and the other was a stolen Subaru vehicle that Ali Alian had brought for the purpose of carrying out the planned attack.

7.    Upon reaching Highway 443, Fares Ghanem continued to travel alone in the Isuzu vehicle, about a kilometer before the Subaru vehicle in which Hussam, Haitham and Ali Alian were traveling, in order to inform his above mentioned colleagues of IDF and police checkpoints on the way.

8.    All of these individuals traveled on Highway 443 towards Tel Aviv, Ali driving the Subaru vehicle, while Haitham Hamdan, armed with a Kalashnikov assault rifle, sat next to him, while Hussam Shahada, armed with an MP-5 submachine gun, which the Defendant had delivered to him, sat in the rear seat.

9.    On that day, August 25, 2001, at about 10:30 p.m., next to the Dor Energy gas station, the occupants of the above mentioned Subaru vehicle noticed a Volkswagen Passat vehicle, License No. 6902818, in which the late Yaniv and Sharon Ben Sharon with their children and the late Doron Yosef Savari were traveling.

10.   Ali Alian, who was driving the Subaru vehicle, overtook the above mentioned Volkswagen vehicle and drove parallel to it. At this stage, Haitham Hamdan ad Hussam Shahada discharged automatic gunfire using the MP-5 submachine gun, which the Defendant had provided, and the Kalashnikov assault rifle, at the above mentioned Volkswagen vehicle with the aim of causing the death of its occupants.

11.   A large number of bullets that were fired by Haitham Hamdan and Hussam Shahada hit the Volkswagen vehicle and its occupants.

[Stamp] P 5: 181 [continued]

Prosecution Case 444/02 Amended

12. After the occupants of the Subaru vehicle noticed that the Volkswagen vehicle was zigzagging, they sped up and escaped to the village Beit Likia. There, Fares Ghanem waited for them. Ali Alian, Hussam Shahada and Haitham Hamdan boarded Firs Ghanem's Isuzu vehicle and traveled to the village Beit Sira, where they hid the weapons near Haitham Hamdan's house. Thereafter, Hussam Shahada, Fares Ghanem, Haitham Hamdan and Ali Alian returned to Ramallah in Fares Ghanem's vehicle.

13. Immediately after they returned to Ramallah, Mohamed Mousleh met in Ein Um Sharait Fares Ghanem, who reported to Mohamed Mousleh the attack that had been carried out with the weapon that had been delivered for this purpose by the Defendant.

14. A few days later, Fares Ghanem brought the above mentioned MP-5 submachine gun from Beit Sira and returned it to Mohamed Mousleh. Mohamed Mousleh transferred the above mentioned weapon to the Defendant and reported to the latter the shooting attack that had been carried out with this weapon.

15. The Defendant transferred to the perpetrators of the attack a sum of 500 U.S. dollars for executing this attack. The above mentioned Defendant received this money from Ali Faraj Barghouti.

[Stamp] P 5: 181 [continued]

Prosecution Case 444/02 Amended

17

16.    The above mentioned Defendant, by his acts described above, caused the intentional death of **the late Yaniv Ben Shalom**, who died of gunshot wounds to his head and back, from bullets that were fired from the MP-5 submachine gun described above, and from a Kalashnikov assault rifle by Haitham Hamdan and Hussam Shahada.

**Fifteenth count: (Detailed Incident 2159/01 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the fourteenth count of the indictment, by his acts described in the fourteenth count of the indictment, caused the intentional death of **the late Sharon Ben Shalom**, who died of gunshot wounds to her head and back, from bullets that were fired from an MP-5 submachine gun, which the Defendant delivered as described in the fourteenth count of the indictment, and from a Kalashnikov assault rifle.

**Sixteenth count: (Detailed Incident 2159/01 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the fourteenth count of the indictment, by his acts described in the fourteenth count of the indictment, caused the intentional death of **the late Doron Yosef Savari**, who died of gunshot wounds, from bullets that were fired from an MP-5 submachine gun, which the Defendant delivered as described in the fourteenth count of the indictment, and from a Kalashnikov assault rifle.

[Stamp] P 5: 182

Prosecution Case 444/02 Amended

**Seventeenth count: (Detailed Incident 2159/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the fourteenth count of the indictment, by his acts described in the fourteenth count of the indictment, attempted to cause the intentional death of the occupants of the Volkswagen Passat vehicle stated in the fourteenth count of the indictment. As a result of the gunfire set forth in the fourteenth count of the indictment from an MP-5 submachine gun, which the Defendant delivered as described in the fourteenth count of the indictment, and from a Kalashnikov assault rifle, the daughter of the late Ben Shalom couple was slightly injured by fragments in her leg.

[Stamp] P 5: 182 [continued]

Prosecution Case 444/02 Amended

19

**Eighteenth count:**

**Nature of the offense:** Undermining the security of the area, an offense pursuant to Section 53(A) (4) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in September 2001 or thereabouts, committed an act or an omission constituting an undermining of or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory, institute or equipment that is used or is capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the Israel Defense Forces, as follows:

Nasser Mohamed Yusef Naji (Abu-Hamid) – the Head of the "Al Aqsa Martyrs' Brigades" – the military arm of the "Tanzim" of the Fatah in the Area, Tarek Malahi A-Nuf and Abed Bast Shawabka, approached the above mentioned Defendant, at the time set forth, in Ramallah or thereabouts. The above mentioned persons told the Defendant that they had manufactured a mortar and had also purchased a mortar bomb for NIS 1,500. The above mentioned persons asked the Defendant to give them money, which they had paid for the above mentioned mortar bomb. The above mentioned persons said that they intended to fire the above mentioned mortar bomb towards the settlement of Psagot.

The Defendant asserted to these persons that if they would be able to fire the above mentioned mortar bomb at the settlement of Psagot, he would pay them the money for the bomb.

Later, that night, the above mentioned persons returned to the Defendant and informed him that they had fired the above mentioned mortar bomb towards the settlement of Psagot. The above mentioned persons informed the Defendant that they did not know exactly where the mortar bomb that they had fired impacted. In view of that which has been set forth above, the Defendant refused to pay the above mentioned persons money for the above mentioned mortar bomb.

Later, the Defendant reported the firing of the mortar bomb at the settlement of Psagot by the above mentioned persons to Marwan Barghouti, the Head of the "Tanzim" of the Fatah.

**Nineteenth count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51(A) of the Security

[Stamp] P 5: 183

Prosecution Case 444/02 Amended

20

Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on September 15, 2001 or thereabouts, caused the intentional death of another person, as follows:

1.    Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha"), approached the above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, and stated that Fares Sadak Mohammed Ghanem (alias "al Hittawi") had approached him with another person and asked to receive an MP-5 submachine gun in order to use it to carry out a shooting attack with the aim of causing the death of Israeli civilians. Mohamed Mousleh asked the Defendant to deliver the MP-5 submachine gun to him, after he had already delivered it to Mohamed Mousleh previously for carrying out shooting attacks.

2.    The Defendant consented to provide the requested weapon for the purpose of carrying out the planned shooting attack.

3.    The Defendant referred Mohamed Mousleh to Khaled Shawish for receiving the above mentioned MP-5 submachine gun. Mohamed Mousleh contacted Khaled Shawish and received from the latter the MP-5 submachine gun of the Defendant. In addition, the Defendant provided Hussam Akel Rajb Shahada a "14" pistol for carrying out the planned shooting attack.

4.    Later that day, Mohamed Mousleh delivered the above mentioned MP-5 submachine gun to Fares Ghanem with the aim of the latter using it to carry out a shooting attack and cause the death of Israeli civilians.

5.    Later that day, Mohamed Sami Ibrahim Abdullah met Hussam Akel Rajb Shahada, Fares Sadak Mohammed Ghanem (alias "Al Hittawi"), Haitham Almutfak Hamdan and Ali Alian. Hussam Shahada arrived to this meeting armed with an MP-5 submachine gun and a "14" pistol, which the Defendant had supplied to him as set forth above for the purpose of carrying out a shooting attack.

6.    At about 10:00 p.m., on September 15, 2001, the above mentioned Defendants traveled from Ramallah to Jerusalem in Fares Ghanem's Isuzu pickup vehicle.

[Stamp] P 5: 183 [continued]

Prosecution Case 444/02 Amended

7.    Fares Ghanem drove the above mentioned Isuzu vehicle and traveled with Mohamed Abdullah and his colleagues in order to show them a place where they would carry out the planned shooting attack and in order to show his colleagues how to escape after carrying out the attack set forth. Fares Ghanem transported his colleagues to Highway No. 9, connecting the Ramot neighborhood to the [neighborhood of] French Hill neighborhood in Jerusalem. Fares Ghanem showed his colleagues where to carry out

[Stamp] P 5: 183 [continued]

Prosecution Case 444/02 Amended

the planned attack and how to escape thereafter. At the end of the said visit, the above mentioned gang returned to Ramallah.

8.  At about 10:30 p.m. that day, Mohamed Abdullah along with Hussam Shahada and Haitham Hamdan traveled in a stolen gray vehicle with Israeli license plates, which Ali Alian had supplied to them for carrying out the planned attack (hereinafter: the Vehicle). Fares Ghanem drove in front of them, in the above mentioned Isuzu vehicle, in order to inform his colleagues by cellular telephone of police and IDF checkpoints.

9.  Mohamed Abdullah drove the above mentioned Vehicle, next to him sat Haitham Hamdan, who was armed with a "14" pistol, which the Defendant had also supplied.

10. The above mentioned gang stopped on Highway No. 9 near a junction leading to the Ramat Shlomo neighborhood and waited for a single Israeli vehicle to arrive at the site with the aim of carrying out a shooting attack against it and causing the death of the occupants of the vehicle.

11. After a few minutes, at about 11:10 p.m., a white Renault express vehicle, license No. 2273706 (hereinafter: the Renault), arrived at the site from the direction of the Ramat Shlomo nationhood and turned to Highway No. 9 towards the Ramot neighborhood.

12. Mohamed Abdullah started to drive after the Renault and overtook it.

13. When the Vehicle was driving parallel to the Renault, Hussam Shahada and Haitham Hamdan opened fire using an MP-5 submachine gun and "14" pistol, which the Defendant had supplied to them, against the occupants of the Renault with the aim of causing their death.

14. A number of bullets that were fired by Hussam Shahada and Haitham Hamdan hit the Renault and the two occupants of the Renault – the late Moshe Weiss and Meir Weisshaus. Thereafter, Mohamed Abdullah continued to travel towards the neighborhood of Ramot and near a site at which a new bridge was being built, turned right to a dirt track leading to Bir Nabala.

[Stamp] P 5: 184

Prosecution Case 444/02 Amended

15.   Before entering Bir Nabala, Mohamed Abdullah and his colleagues, who were with him in the Vehicle, met Fares Ghanem who was waiting for them at the site in the Isuzu vehicle. From them, they all continued to travel together to Bir Nabala and thereafter escaped to Ramallah.

16.   By his acts described above, the Defendant caused the intentional death of **the late Meir Weisshaus**, who died in hospital later that day as a result of gunshot wounds from bullets that were fired by the colleagues of the Defendant using the MP-5 submachine gun and the "14" pistol, which the Defendant had supplied.

**Twentieth count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on September 15, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at about 11:10 p.m., at the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Moshe Weiss, who was driving a white Renault Express vehicle, license No. 2273706, described in the previous count of the indictment. One of the bullets that were fired by the colleagues of the Defendant, as described in the previous count of the indictment, hit the head of Moshe Weiss and severely injured him.

**Twenty first count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on October 3, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

[Stamp] P 5: 184 [continued]

1.   The above mentioned Defendant, in early October 2001, in Ramallah or thereabouts, Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha"). Mohamed Mousleh asked

Prosecution Case 444/02 Amended

the Defendant for an MP-5 submachine gun, ammunition for the above mentioned MP-5 submachine gun and a vehicle for the purpose of carrying out a shooting attack against Israeli civilians in Jerusalem with the intent of causing their death.

2.   Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha") informed the Defendant that he was planning to carry out the planned attack along with Mohamed Sami Ibrahim Abdullah, Hussam, Akel Rajb Shahada and Fares Sadak Mohammed Ghanem (alias "al Hittawi").

[Stamp] P 5: 184 [continued]

Prosecution Case 444/02 Amended

3.  Initially, the Defendant told Mohamed Mousleh to carry out the planned attack from the vehicle of Fares Ghanem. But Mohamed Mousleh contended that he needed two vehicles, with the spotters traveling in the first vehicle and the shooters traveling in the second. In view of this, the Defendant delivered to Mohamed Mousleh a stolen Mazda 323 vehicle bearing Israeli license plates, which he had purchased for that purpose from Iad Alshafai for NIS 5,000.

4.  For the purpose of carrying out the planned shooting attack, the Defendant delivered to Mohamed Mousleh an MP-5 submachine gun and ammunition for this MP-5 submachine gun.

5.  On October 3, 2001, Mohamed Mousleh departed from Ramallah towards Jerusalem with the aim of carrying out the planned shooting attack, in possession of the above mentioned MP-5 submachine gun and traveling in the above mentioned Mazda vehicle, which Mohamed Abdullah was driving.

6.  Fares Ghanem and Hussam Shahada traveled in an Isuzu pickup vehicle belonging to Fares Ghanem before the Mazda vehicle in which Muhammad Mousleh was traveling, with the aim of informing him of police and IDF checkpoints on the way.

7.  The above mentioned colleagues of the Defendant arrived at New Beit Hanina in Jerusalem. There, Mohamed Abdullah parked the Mazda vehicle and with his other colleagues hid the above mentioned MP-5 submachine gun in the vehicle.

8.  Mohamed Mousleh and Mohamed Abdullah boarded the Isuzu vehicle and from there continued in the Isuzu vehicle with Fares Ghanem and Hussam Shahada towards the Begin Road.

9.  The above mentioned colleagues of the Defendant reached the Begin road. From there, Fares Ghanem showed his other colleagues where to carry out the planned shooting attack and how to escape after carrying out the shooting attack. The above mentioned colleagues of the Defendant decided to carry out the planned shooting attack in the first tunnel of the Begin Road from the direction of Ramot, in order for the gunshots to go unheard. Thereafter, all of these persons were to return to Beit Hanina, to the place at which the above mentioned Mazda Vehicle was left.

[Stamp] P 5: 185

Prosecution Case 444/02 Amended

10. Mohamed Mousleh boarded the Mazda vehicle armed with the above mentioned MP-5 submachine gun, while Mohamed Abdullah drove the said Mazda vehicle. Mohamed Mousleh and Mohamed Abdullah drove the Mazda vehicle to the Begin road with the aim of carrying out the planned shooting attack there and causing the death of Israeli civilians.

11. Mohamed Mousleh and Mohamed Abdullah traveled on the road back and forth several times looking for a single Israeli vehicle with the aim of carrying out the planned shooting attack against it with the aim of causing the death of the occupants of the vehicle.

12. At about 11:35 p.m., while driving northward, in the last tunnel in their direction of travel, Mohamed Mousleh and Mohamed Abdullah noticed a Honda Accord vehicle, License No. 1103217, traveling on the Begin road northward. The occupants of the Honda vehicle were Tonie Amiel, Pini Maimon and Pazit Maimon.

13. Mohamed Abdullah overtook the above mentioned Honda Vehicle. While Mohamed Abdullah was driving parallel to the above mentioned Honda vehicle, Mohamed Mousleh fired a single round from the MP-5 submachine gun, which the Defendant had supplied, at the occupants of the Honda vehicle, with the intent of causing their deaths. The bullet that was fired by Mohamed Mousleh did not hit the above mentioned Honda vehicle.

14. After carrying out the said shooting attack, Mohamed Mousleh and Mohamed Abdullah continued their journey towards Highway No. 9 connecting the Ramot neighborhood to the [neighborhood of] French Hill neighborhood.

**Twenty second count: (Detailed Incident 8379/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on October 3, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

[Stamp] P 5: 185 [continued]

Prosecution Case 444/02 Amended

1.  After Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha") and Mohamed Sami Ibrahim Abdullah carried out the shooting attack as described in the previous count of the indictment, the two continued to travel in the Mazda vehicle, which the Defendant had supplied to them as described in the previous count of the indictment, towards Highway No. 9, connecting the Ramot neighborhood to the [neighborhood of] French Hill neighborhood, with the aim of reaching Beit Hanina from there and then continuing to Ramallah.

2.  During this journey, Mohamed Mousleh, at the request of Mohamed Abdullah, checked the function of the MP-5 submachine gun, which the Defendant had delivered, and also fired several rounds into the air.

3.  During the journey on the above mentioned Highway No. 9, at about 11:45 p.m., Mohamed Mousleh and Mohamed Abdullah noticed a Skoda vehicle, license No. 6567709, which was traveling on Highway No. 9 towards the [neighborhood of] French Hill. Malka Cohen and Pinchas Cohen were traveling in this Skoda vehicle.

4.  Mohamed Abdullah, who as set forth was driving the Mazda vehicle, overtook the Skoda vehicle.

[Stamp] P 5: 185 [continued]

Prosecution Case 444/02 Amended

28

5.  While Mohamed Abdullah was driving parallel to the above mentioned Skoda vehicle, Mohamed Mousleh fired the MP-5 submachine gun, which the Defendant had supplied to them for the purpose of carrying out a shooting attack as described in the previous count of the indictment, discharging a few shots at the above mentioned Skoda vehicle with the aim of causing the death of the occupants of the Skoda vehicle.

6.  A number of bullets that were fired by Mohamed Mousleh hit the Skoda vehicle. Two bullets that were fired by Mohamed Mousleh hit Pinchas Cohen and another bullet hit Malka Cohen.

7.  Pinchas Cohen was moderately injured by gunshot wounds from two bullets in his abdomen, while Malka Cohen, who was 28 weeks pregnant, was moderately injured by a gunshot wound from a bullet to her head.

8.  After carrying out the said shooting attack, Mohamed Mousleh and Mohamed Abdullah continued to drive towards the [neighborhood of] French Hill and from there they reached New Beit Hanina. There, Mohamed Mousleh and Mohamed Abdullah parked the above mentioned Mazda vehicle and contacted by telephone Hussam Akel Rajb Shahada and Fares Sadak Mohammed Ghanem (alias "al Hittawi"), who arrived at the site in the Isuzu vehicle belonging to Fares Ghanem in order to pick up Mohamed Mousleh and Mohamed Abdullah, according to the planning set forth in the previous count of indictment.

9.  Mohamed Mousleh and Mohamed Abdullah concealed the above mentioned MP-5 submachine gun in the Isuzu vehicle and boarded the Isuzu vehicle.

10. These four persons tried to return from Jerusalem to Ramallah, but were unable to do so because of IDF and police checkpoints. The above mentioned colleagues of the Defendant stayed to sleep overnight in the home of Yasser Abu al Hatib, a friend of Hussam Shahada, in New Beit Hanina in Jerusalem.

11. On the following day, October 4, 2001, Mohamed Mousleh and Mohamed Abdullah returned to Ramallah in the vehicle of Fares Ghanem.

12. After returning to Ramallah, Muhammad Mousleh reported to the Defendant the attacks that he had carried out using the Mazda vehicle and the MP-5 submachine gun that he had received from the Defendant.

[Stamp] P 5: 186

**Twenty third count:**

Prosecution Case 444/02 Amended

29

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2001 – early 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, in late 2001 or thereabouts, in Ramallah or thereabouts, when he was with Marwan Barghouti, the head of the "Tanzim" of the Fatah, met Nasser Mohamed Yusef Naji (Abu-Hamid) the Head of the "Al Aqsa Martyrs' Brigades", the military arm of the "Tanzim" of the Fatah. Nasser Abu-Hamid told Marwan Barghouti of his intentions to purchase a mortar and mortar bombs for the purpose of carrying out mortar fire at Israeli settlements with the intent of causing the death of Israeli civilians. Nasser Abu-Hamid asked Marwan Barghouti for financial aid for purchasing the mortar and mortar bombs. Marwan Barghouti refused to provide him the financial aid and referred Nasser Abu-Hamid to the Defendant. The Defendant explained to Nasser Abu-Hamid that there was no need to pay a lot of money for a mortar and mortar bombs, as the Defendant already possessed a makeshift mortar and mortar bombs.

In early 2002, the Defendant referred Nasser Abu-Hamid and the latter's colleague – a senior military operative in the "Al Aqsa Martyrs Brigades" – Muhannad Abu Halawa, to the home of Ali Barghouti in order for them to receive the above mentioned mortar and mortar bombs there.

Nasser Abu-Hamid, Muhannad Abu Halawa and Abed Basat received the above mentioned makeshift mortar and 5 mortar bombs.

Nasser Abu-Hamid, with his above mentioned colleagues, fired using the above mentioned makeshift mortar a mortar bomb at the settlement of Psagot with the intent of causing the death of residents of the above mentioned settlement and IDF soldiers who were in the above mentioned settlement. The above mentioned mortar bomb did not hit the settlement of Psagot and exploded near it.

After carrying out the said attack, Nasser Abu-Hamid, reported what had happened to the Defendant. The Defendant took Nasser Abu-Hamid, to Marwan Barghouti in order to report the mortar bomb firing attack that had been performed for the first time in the Area to Marwan Barghouti too.

[Stamp] P 5: 186 [continued]

**Twenty fourth count: (Detailed Incident 39/02 Binyamin)**

Prosecution Case 444/02 Amended