# EXHIBIT A.357
## (4 of 5)

177.  Sergeant Major Eli Kojman, Badge No. 46951, Yehuda Forensic Identification. [submitter of crime scene visit report + photograph tables]

178.  First Sergeant Avi Menachem, Badge No. 57556, Binyamin Station. [submitter of exhibit cover form + memorandum + exhibits from card No. 106/02]

179.  Samir Karash, Identity No. 080062771 (details in the prosecution) [wounded in the shooting attack]

180.  Shaul Beit, M.D., License No. 33027, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of medical report] (will be summoned upon explicit demand of the defense only)

181.  Query for finding and projection of vehicle and owner details [institutional record].


_____
             [Signature]
         Michael Kotlik, Captain
         Military Prosecutor

Date: September 29, 2002

Reference: 444-02 amended

[Stamp] P 5: 208

Prosecution Case 444/02 Amended

93

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

               Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

               Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 175-208.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 175-208.

                                        Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014


Notary Public

HINUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D. # 2332704

| צבא | הגנה | לישראל |
|---|---|---|

| בית המשפט הצבאי | תיק ביה"מ : | 3459/02 |
| בית אל | תיק תביעה : | 444/02 |
| בפני הרכב | תיק פ.א. : | 1282/02 בנימין |
| | | 1283/02 בנימין |
| | | 1284/02 בנימין |
| | | 1285/02 בנימין |
| | | 234/01 מתימ"מ י-ם |
| | | 457/01 בנימין |
| | | 2159/01 בנימין |
| | | 7915/01 ציון |
| | | 481/01 ציון |
| | | 8379/01 ציון |
| | | 39/02 בנימין |
| | | 502/02 ציון |
| | | 483/02 שפט |
| | | 4258/02 ירקון |
| | | 568/02 שפט |
| | | 783/02 בנימין |

[חותמת:]
כתב אישום זה נהקבל
בתאריך 1/10/02
ונרשם ביומן בתיק
ע"י ביתנוע"ם

## במשפט שבין התובע הצבאי - המאשים

## - נ ג ד -

אחמד טאלב מוצטפא ברגותי (מכונה "אל פראסי")
ת.ז. 994466860, יליד 15.03.76, תושב אלבירה - רמאללה
עצור מיום 15.04.02

## - הנאשם -

# כתב - אישום מתוקן

## הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

### פרט ראשון:

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:

הנאשם הנ"ל, החל משנת 1996 ועד ליום מעצרו עבד כנהג וכשומר ראש של מרואן ברגותי, שהוא ראש "התנזים" של הפתייח.

הנאשם הנ"ל, החל מתחילת שנת 2001 ועד ליום מעצרו פעל במסגרת "התנזים" של הפתייח, שהוא התאחדות בלתי מותרת, פעילות צבאית נגד המטרות הישראליות.

במהלך פעילותו הצבאית, הנאשם נהג לקבל כספי סיוע מפעילי "התנזים" של הפתייח. הנאשם קיבל באמצעות חשבון הבנק שלו סכום של כ-7,000 ש"ח מאנצר מחמוד עוויס, פעיל צבאי בכיר מאיזור שכם, וכן סכום של כ-10,000 ש"ח מעלי פרני ברגותי, פעיל בכיר באיזור ברמאללה.

1

ת.ת. 444/02 מתוקן

במהלך פעילותו הצבאית הנאשם היה בקשר מתמיד עם ראש "גדודי חללי אלאקצא", הזרוע
הצבאית של "התנזים" של הפתי"ח בשכם - נאצר מחמוד עוויס, ראש "גדודי חללי אלאקצא"
באיזור טול-כרם - ראאד כרמי, ראש "גדודי חללי אלאקצא" באיזור ג'נין - ג'כרים ראתב יונס
עוויס, ראש "גדודי חללי אלאקצא" באיזור בית-לחם וחברון - ג'יהאד ג'עארה, ראש "גדודי חללי
אלאקצא" באיזור - נאצר מחמד יוסף נאג'י (אבו-חמיד), וכן עם ראש "התנזים" של הפתי"ח -
מרואן ברגותי.

במסגרת פעילותו הצבאית הנ"ל, הנאשם הפיץ ברמאללה כרוזים בדבר לקיחת האחריות לפיגועים
שבוצעו בישראל ובאיזור על-ידי פעילי "התנזים" של הפתי"ח.

<u>פרט שני:</u>

<u>מהות העבירה:</u> נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(ב)
לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מתחילת שנת 2001 ועד ליום מעצרו, נהל או עזר
להנהלת התאחדות בלתי מותרת, או החזיק בכל משרה או עמדה בהתאחדות בלתי מותרת או
תחת מרותה, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, היה אחד האחראיים על ארגון "גדודי חללי אלאקצא"
(יכונתאיב שהואדה אלאקצא") באיזור רמאללה - הזרוע הצבאית של "התנזים" של הפתי"ח,
שהוא התאחדות בלתי מותרת. "גדודי חללי אלאקצא" היו אחראיים לביצוע מספר רב של
פיגועים נגד חיילי צה"ל ואזרחים ישראליים הן באיזור הן בתוך שטחה של מדינת ישראל, אשר
בהן נהרגו מספר רב של אזרחים ישראליים וחיילי צה"ל.

בין היתר, הנאשם שימש כאיש קשר בין שאר האחראיים האזוריים ב"גדודי חללי אלאקצא" לבין
ראש "התנזים" של הפתי"ח - מרואן ברגותי.

<u>פרט שלישי:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(ג)
לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון או
בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת,
דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, במספר רב של הזדמנויות
שונות, חילק כספים לפעילים צבאיים של "התנזים" של פתי"ח. הנאשם נהג לקבל כספים מפעיל
"התנזים" של הפתי"ח עלי פרג' ברנותי ולחלק אותם לאנשים רבים אשר ביצעו פיגועים נגד חיילי
צה"ל ואזרחים ישראליים. בכל הזדמנות הנאשם מסר לכל אחד מהפעילים סכומי כסף שונים בין
100 ל-300 דולר ארה"ב. כמו כן, הנאשם נהג להעביר סכומים גדולים יותר לפעילים צבאיים
ב"תנזים" של הפתי"ח באמצעות העברות בנקאיות.

בין היתר, הנאשם העביר למנצור שרם, פעיל צבאי בכיר ב"תנזים" של הפתי"ח בטול-כרם, שהוא
סגנו של ראאד כרמי - ראש "גדודי חללי אלאקצא" בטול-כרם, שהוא הזרוע הצבאית של
"התנזים" של פתי"ח, סכום של 3,000 ש"ח.

כמו כן, הנאשם העביר לנאצר מחמד יוסף נאג'י (אבו-חמיד), שהוא ראש "גדודי חללי אלאקצא",
סכומים בין 1,000 ל-2,000 ש"ח בכל 6-7 הזדמנויות שונות וזאת לצורך רכישת כדורים.

בנוסף לכספים, הנאשם נהג לספק לפעילים צבאיים של "התנזים" של פתי"ח מכשירי טלפון
סלולריים לצורכי פעילותם הצבאית.

ת.ת. 444/02 מתוקן

**פרט רביעי:**

**מהות העבירה:** סחר בציוד מלחמתי, עבֵירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 1998 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, במחנה הפליטים אמערי או בסמוך לכך, רכש מידי סאמר אלמימי תמ"יק MP-5 תמורת 4,000 דינר ירדני וכן רוסי"ר M-16 מקוראר עם כוונת טלסקופית תמורת 5,500 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו. הנאשם הנ"ל, במהלך השנים 2002 - 2001, נהג למכור את תמ"יק MP-5 הנ"ל לידי אנשים שונים על מנת שיבצעו באמצעותו פיגועים ירי נגד אזרחים ישראליים וזאת כפי שיתוארו בהמשך כתב-האישום.

**פרט חמישי:**

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק ברשותו תמ"יק MP-5, אקדח וכן רוסי"ר M-16 מקוראר עם כוונת טלסקופית, וזאת ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו.

**פרט שישי:**

**מהות העבירה:** סחר בציוד מלחמתי, עבֵירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2000 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי נאצר מחמד יוסף נאג'י (אבו-חמדי) - ראש הזרוע הצבאית של "תתנזים" של המתיייח, רוסי"ר קלצ'ניקוב 1-50 כדורים לרוסי"ר קלצ'ניקוב, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו. נאצר אבו-חמדי מסר את את רוסי"ר קלצ'ניקוב הנ"ל הכדורים הנ"ל לידי אחמד עידאי, פעיל בכוח 17 של הרשות הפלסטינית. אחמד עידאי דיווח לנאצר אבו-חמדי כי ביצע באמצעות רוסי"ר קלצ'ניקוב הנ"ל פיגוע ירי שבו נהרגו בני הזוג כהנא ז"ל, וכן כי ביצע באמצעות הכדורים הנ"ל פיגוע ירי שבו נהרג אזרח ישראלי.

**פרט שביעי:**

**מהות העבירה:** סחר בציוד מלחמתי, עבֵירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, במספר רב של הזדמנויות שונות, מסר לידי נאצר מחמד יוסף נאגי (אבו-חמדי) - ראש הזרוע הצבאית של "התנזים" של המתייח, סכומי כסף גדולים של עשרות אלפי שקלים ועשרות אלפי דולרים של ארה"ב לצורך רכישת כלי נשק וכדורים לביצוע פיגועי ירי נגד חיילי צה"ל ואזרחים ישראליים. הנאשם אף נהג להשאיר אצלו בבית את הכדורים שנרכשו בכסף הנ"ל ולמסור אותם לידי נאצר אבו-חמדי וחבריו של האחרון לפי מידת הצורך, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

3

ת.ת. 444/02 מתוקן

### פרט שמיני:

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:

הנאשם הנ"ל, מכר לנאצר מחמד יוסף נאג'י אבו-חמרא, ראש "נדודי חללי אלאקצא", הזרוע הצבאית של הפתח"ת, 100 כדורים לרוסי"ר M-16, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

### פרט תשיעי:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2001 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, סכר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש רכב מסדן לבן גנוב, מודל חדיש. הנאשם הנ"ל מסר את הרכב הנ"ל לידי מוהנד אבו חלאווה, אשר יצא ברכב האמור לביצוע פיגועים נגד אזרחים ישראליים וחיילי צה"ל באיזור.

### פרט עשירי: (פ.א. 234/01 מת"מ י-ם)

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם מחמד ערחמאן סאלם מצלח (מכונה "אבו סטנחה") ועם ג'יאד אברהים מוסא מעלא.

2. ג'יאד מעלא ומחמד מצלח ביקשו מהנאשם רכב לצורך ביצוע פיגוע ירי נגד יהודים. הנאשם מסר לידי ג'יאד מעלא ומחמד מצלח רכב פולקסווגן בורה גנוב בצבע כסף, נשא לוחיות רישוי ישראליות, וזאת על מנת שיבצעו הנ"ל יבצעו ברכב זה פיגוע ירי בכוונה לגרום למותם של אזרחים ישראליים.

3. מחמד מצלח נהג ברכב הפולקסווגן ואילו ג'יאד מעלא ישב לידו כשהוא חמוש באקדח 16.

4. ג'יאד מעלא ומחמד מצלח נסעו ברכב הפולקסווגן לאיזור עטרות על מנת לחפש רכב ישראלי במטרה לבצע פיגוע ירי לגרום למותם של נוסעי הרכב.

5. סמוך לשעה 18:15, באיזור התנשיה עטרות, ג'יאד מעלא ומחמד מצלח הבחינו ברכב GMC ספארי, מ.ר. 7901306, (להלן: הרכב) אשר בו נהג אלעזר עקיבא פשקוס ז"ל.

6. ג'יאד מעלא ומחמד מצלח החלו לנסוע אחרי הרכב. הנאשם ומחמד מצלח עקבו אחרי הרכב מאיזור התנשיה עטרות עד צומת א-ראם ובחזרה.

7. כאשר הרכב חזר לאיזור התנשיה עטרות נסע ג'יאד מעלא ומחמד מצלח נסעו ברכב הפולקסווגן בסמוך לרכב.

8. בשלב זה, ג'יאד מעלא פתח את החלון וירה באקדח 16 הנ"ל כ-7 כדורים לעבר הרכב בכוונה לגרום למותם של נהג הרכב. מספר קליעים, אשר נורו על-ידי ג'יאד מעלא, פגעו ברכב, כאשר קליע אחד פגע בצווארו ואחד בחזהו של אלעזר עקיבא פשקוס ז"ל שנהג ברכב.

9. משהבחינו ג'יאד מעלא ומחמד מצלח כי הרכב נעצר, השניים נמלטו ברכב הפולקסווגן לרמאללה.

ת.ת. 444/02 מתוקן

10. ברמאללה, ג'יאד מעלא ומחמד מצלח החזירו את רכב הפולקסווגן לנאשם ודיווחו לו על הפיגוע שביצעו.

11. לאחר יום, הנאשם מסר לג'יאד מעלא כ-300 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את הכסף האמור הנאשם קיבל מידי פרג' ברגותי.

12. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **אלעזר עקיבא פשקוס ז"ל**, אשר נפטר כתוצאה מפגיעת הקליעים שנורו על-ידי ג'יאד מעלא כפי שתואר.

## ז/ פרט אחד-עשר: (פ.א. 457/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.02.01 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם מהנד אבו חלאווה, מחמד ערחמאן סאלם מצלח (אבו סטחה) וטארק מלחי (א-נוף).

2. הנאשם וחבריו הנ"ל דנו במצב באיזור. הנאשם וחבריו הנ"ל טענו כי אין פעילות נגד המטרות הישראליות. הנאשם שאל את חבריו הנ"ל מה ניתן לעשות על מנת לשפר את המצב. חבריו הנ"ל של הנאשם ביקשו כי הנאשם יַפגן להם רכב וכלי נשק, והם יבצעו פיגוע נגד האזרחים הישראליים בכוונה לגרום למותם.

3. הנאשם הסכים להצעת הנ"ל. הנאשם מסר לידי חבריו הנ"ל את רכבו מסוג פולקסווגן בורה, צבע אפור, מודל שנת 2001, נושא לוחיות רישוי ישראליות, וכן תמייק MP-5 עם מחסנית וכדורים.

4. מהנד אבו חלאווה, מחמד מצלח (אבו סטחה) וטארק מלחי (א-נוף) נסע ברכבו של הנאשם, כשהם מחוסמים בתמ"יק MP-5 הנ"ל, אשר אותו קיבלו מהנאשם. חבריו הנ"ל של הנאשם הגיעו לאיזור גשר עטארה.

5. בסמוך לשעה 13:15, חבריו הנ"ל של הנאשם הבחינו ברכב GMC ואמזורד, מ.ר 3082518, אשר בה נהג יוסף כהן, כשהרכב האמור יוצא מישראל עטרה ופנה לכיוון גשר עטארה.

6. חבריו הנ"ל של הנאשם החליטו לבצע פיגוע ירי לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של הנוסעים בו.

7. חבריו הנ"ל של הנאשם החליטו להמתין עד שרכב הסיטרואן שנסע לפניהם יעקוף את רכב ה-GMC ואז לעקוף את רכב ה-GMC ולבצע לעברו את פיגוע הירי המתוכנן.

8. ברכב הסיטרואן הנ"ל נסעו וילאמס סאמח פארס אלחטיב (רימאווי), רבחי זוהדי אלאסמר (רימאווי) ואכרם עבדאללה מחמד קאסם (עזאווי), החמושים ב-2 רוס"רי קלצ'ניקוב ורוס"רי M-16. נסעו רכב הסיטרואן הנ"ל פתחו באש בכלי הנשק הנ"ל לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של הנוסעים בו. 29 קליעים שנורו על-ידי האנשים הנ"ל פגעו ברכב ה-GMC הנ"ל. 3 קליעים פגעו בראשו ובצוארו של יוסף כהן, אשר נהג ברכב ה-GMC הנ"ל. כתוצאה מפגיעת הקליעים הנ"ל וכן מפגיעות הרסיסים בכל חלקי גופו, יוסף כהן נפצע באורח קשה.

9. לאחר שהבחינו הנ"ל של הנאשם הבחינו כי כתוצאה מפגיעת הירי שבוצעו מרכב הסיטרואן שנסע לפניהם, רכב ה-GMC נפצע, ירד מהכביש ונהג הרכב נפצע, חבריו הנ"ל של הנאשם נמלטו בחזרה לרמאללה.

10. ברמאללה, חבריו הנ"ל של הנאשם החזירו את רכב הפולקסווגן הנ"ל ואת תמ"יק MP-5 הנ"ל. מהנד אבו חלאווה, טארק מלחי (א-נוף) ומחמד מצלח (אבו סטחה) דיווחו לנאשם כי ביצעו פיגוע ירי באמצעות הרכב וכלי הנשק הנ"ל וכי כתוצאה מכך נפצע נהג יהודי.

ת.ת. 444/02 מתוקן

## ד פרט שניים-עשר:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

זיאד חמודה יעקוב חמודה ביחד עם מאמון בסאם עבדאללה אבו-שמה, הייתם עזאת, סעיד אבראהים ואחמד אבו אלעם, במועד האמור, החליטו לבצע פיגוע ירי לעבר היישוב פסגות במטרה לגרום למותם של אזרחים ישראליים.

האנשים הנ"ל נפגשו עם מרזאו ברגותי, ראש "היתנזים" של הפת"ח. האנשים הנ"ל נפגשו עם מרזאו ברגותי וביקשו מהאחרון לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים ביישוב פסגות. מרזאו ברגותי שמח לשמוע את התכנית הנ"ל לבצע פיגוע ירי לעבר היישוב פסגות והבטיח לספק כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

לאחר כשבוע ימים, זיאד חמודה וחבריו הנ"ל נגשו שוב למשרדו של מרזאו ברגותי ברמאללה. מרזאו ברגותי לא היה באותה העת ובמשרדו והנאשם היה זה ששוחח עם זיאד חמודה וחבריו הנ"ל. הנאשם הבטיח לדבר עם מרזאו ברגותי בנוגע לבקשת חבריו הנ"ל לקבל כלי נשק לצורך ביצוע פיגוע ירי לעבר היישוב פסגות.

לאחר כשלושה ימים, זיאד חמודה וחבריו הנ"ל נגשו שוב אל משרדו של מרזאו ברגותי ברמאללה. האנשים הנ"ל ביקשו שוב ממרזאו ברגותי לקבל כלי נשק לצורך ביצוע פיגוע ירי לעבר היישוב פסגות. מרזאו ברגותי התקשר אל מהנד אבו חלאווה, פעיל צבאי בכיר ב"יתנזים" של הפת"ח. סוכם כי מהנד אבו חלאווה יפגוש את האנשים הנ"ל בכיכר מנארה ברמאללה ושם ימסור להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

זיאד חמודה וחבריו הנ"ל נפגשו עוד באותו היום, בכיכר מנארה ברמאללה עם מהנד אבו חלאווה. במהלך הפגישה האמורה, מהנד אבו חלאווה הבטיח להעביר לידיהם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

בלילה של אותו היום, הנאשם הגיע לביתו של זיאד חמודה באלבירה ומסר לידי זיאד חמודה תמ"ק MP-5 וכדורים לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים.

לאחר כשעה, זיאד חמודה יצא מביתו ביחד עם מאמון אבו-שמה ברכבו של זיאד חמודה כשהם מחזיקים בתמ"ק MP-5 הנ"ל. זיאד חמודה ומאמון אבו-שמה הגיעו למקום הנמצא בסמוך ליישוב פסגות. שם השניים ירדו מהרכב. מאמון אבו-שמה ירה את כל הכדורים שסמר הנאשם בתמ"ק MP-5 הנ"ל לעבר היישוב פסגות מתוך כוונה לגרום למותם של תושבי היישוב פסגות ושל חיילי צה"ל שהיו ביישוב פסגות.

מיד לאחר הירי, זיאד חמודה ומאמון אבו-שמה חזר ברכבם הנ"ל לרמאללה.

## ל פרט שלושה-עשר:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 26.06.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, בחודש יוני 2001 או בסמוך לכך, ברמאללה, בנסיבות המתוארות בפרטי האישום הקודם, מסר לידי זיאד חמודה יעקוב חמודה תמ"ק MP-5 לצורך ביצוע פיגועי ירי נגד אזרחים ישראליים וחיילי צה"ל.

זיאד חמודה, במועד האמור, ביחד עם מאמון בסאם עבדאללה אבו-שמה והייתם עזאת, יצא מרמאללה לכיוון הכביש המוביל מפסגת זאב לבגת הצרפתית שבירושלים, על מנת לבצע שם פיגוע ירי ולגרום למותם של אזרחים ישראליים. זיאד חמודה וחבריו הנ"ל יצאו כשהם כשהם חמושים ברובה MP-5, אשר נמסר להם מטעה זו על-ידי הנאשם כאמור לעיל, ובאקדח 9.

זיאד חמודה וחבריו יצאו לביצוע הפיגוע האמור כשהם מחזיקים בשרטוט של הגבעה הצרפתית שבה תכנן לבצע את פיגוע הירי, אשר נערך על-ידי מאמון אבו-שמה.

זיאד חמודה וחבריו הנ"ל יצאו לביצוע הפיגוע האמור בתיאום עם מהנד אבו חלאווה, ואף ביקש מהאחרון כי יודיע למרואן ברגותי, ראש "היתנזים" של הפת"ח, אם מי ממבצעי הפיגוע ייהרגו במהלך ביצוע פיגוע הירי המתוכנן. זיאד חמודה וחבריו לא הצליחו להגיע למקום שבו תכננו לבצע את פיגוע הירי עקב מכוונת גדולה של כוחות צה"ל באיזור חיזמא.

6

ת.ת. 444/02 מתוקן

**פרט ארבעה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש אוגוסט 2001, ברמאללה או בסמוך לכך, נפגש עם מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחה"). מחמד מצלח (אבו סטחה) מסר לנאשם כי הכיר מספר פעילי "התנגדות" של הפת"ח, אשר מבצעים פיגועי ירי לעבר אזרחים ישראליים. מחמד מצלח ביקש לקבל את אישורו של הנאשם להצטרף לחוליה הנ"ל ולבצע פיגועים נגד אזרחים ישראליים בכוונה לגרום למותם. הנאשם אישר למחמד מצלח להצטרף לפעילות האמורה.

2. מחמד מצלח נפגש עם פעילי "התנגזים" הנ"ל, שהם חוסאם עקל רניב שחאדה, פראס צאדק מחמד עיאמן (המכונה "אל חיטאווי") וטארק מלחי א-נוף. השלושה הנ"ל אמרו למחמד מצלח כי בכוונתם לבצע פיגועי ירי במטרה לגרום למותם של אזרחים ישראליים. השלושה ביקשו כי מחמד מצלח יספק להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

3. ביום 25.08.01, פנו אל מחמד מצלח פראס עיאמן, חוסאם שחאדה וטאראק א-נוף וביקשו לקבל עד באותו היום כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

4. באותו היום, מחמד מצלח פנה אל הנאשם. מחמד מצלח ביקש מהנאשם לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים. לאחר זמן קצר, עוד באותו היום, הנאשם מסר לידי מחמד מצלח תמי"ק MP-5 עם מחסנית המלאה בכדורים וזאת על מנת שמחמד מצלח וחבריו הנ"ל יבצעו באמצעותו פיגוע ירי וגרומו למותם של אזרחים ישראליים.

5. בשעות הערב, באותו היום, ברמאללה או בסמוך לכך, מחמד מצלח מסר את תמי"ק MP-5 והתחמושת הנ"ל לפראס עיאמן וחוסאם שחאדה, אשר הגיעו ברכב איסוזו נגדר של פראס, וזאת על מנת שפראס וחוסאם יבצעו באמצעות הנשק הנ"ל פיגוע ירי וגרומו למותם של אזרחים ישראליים.

6. מיד לאחר קבלת הנשק, פראס עיאמן, חוסאם שחאדה, היתם אלמותפפק חמדאן ועלי עליאן יצאו מרמאללה לכיוון כביש 443 במטרה לבצע שם את פיגוע הירי המתוכנן. האנשים הנ"ל נסעו בשני כלי רכב - האחד, איסוזו נגדר של פראס עיאמן והשני רכב סובארו נגוב שהבריא עלי עליאן לצורך ביצוע הפיגוע המתוכנן.

7. בהגיעם לכביש 443, פראס עיאמן המשיך לנסוע לבדו ברכב האיסוזו, כפילומטר לפני רכב הסובארו שבו נסעו חוסאם, היתם ועלי עליאן, על מנת להודיע לחבריו הנ"ל על מחסומי צה"ל והמשטורה בדרך.

8. כל האנשים הנ"ל נסעו בכביש 443 לכיוון תל-אביב, כאשר עלי נוהג ברכב הסובארו, לידו יושב היינם חמדאן, החמשאן ברוסיר קלציניקוב, ובמושב האחורי יושב חוסאם שחאדה, החמשאן בתמי"ק MP-5, אשר אותו סיפק הנאשם.

9. באותו היום, 25.08.01, סמוך לשעה 30:22, ליד תחנת הדלק "דור אנרגיה", הבחינו נוסעי רכב הסובארו הנ"ל ברכב פולקסוואגן פאסאט, מר. 6902818, אשר בו נסע בני הזוג יוסף ושרון בן שלום ז"ל עם שני ילדיהם וחדרון יוסף סורדי ז"ל.

10. עלי עליאן, שנהג ברכב הסובארו, עקף את רכב הפולקסוואגן הנ"ל ונסע במקביל אליו. בשלב זה, היתם חמדאן וחוסאם שחאדה פתחו באש אוטומטית בתמי"ק MP-5, אשר אותו סיפק הנאשם, וברוסיר קלציניקוב, לעבר רכב הפולקסוואגן הנ"ל במטרה לגרום למותם של נוסעיו.

11. מספר רב של הקליעים שנורו על-ידי היתם חמדאן וחוסאם שחאדה פגעו ברכב הפולקסוואגן ובנוסעיו.

12. לאחר שנוסעי רכב הסובארו הבחינו כי רכב הפולקסוואגן נוסע בזיגזג, הם האיצו את המהירות ונמלטו לכפר בית ליקיא. שם המתינו להם פראס עיאמן. עלי עליאן, חוסאם שחאדה והיתם חמדאן עלו לרכב האיסוזו של פראס עיאמן ונסעו לכפר בית סירא, שם הם הסתתרו את כלי הנשק בסמוך לביתו של הייתם חמדאן. לאחר מכן, חוסאם שחאדה, פראס עיאמן, היתם חמדאן ועלי עליאן חזרו לרמאללה ברכבו של פראס עיאמן.

13. מיד לאחר חזרתם לרמאללה, מחמד מצלח נפגש בעין אחד שראייט עם פראס עיאמן, אשר דיווח למחמד מצלח על הפעולע שבוצע באמצעות הנשק שנמסר למטרה זו על-ידי הנאשם.

14. לאחר מספר ימים, פראס עיאמן הביא את תמי"ק MP-5 הנ"ל מבית פראס סירא והחזירו למחמד מצלח. מחמד מצלח העביר את כלי הנשק הנ"ל לידי הנאשם ודיווח לאחרון על פיגוע הירי שבוצע בכלי חשק הנ"ל.

15. הנאשם העביר למבצעי הפיגוע הנ"ל סכום של 500 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את הכסף הנ"ל הנאשם קיבל מידי עלי פרני ברנוני.

ת.ת. 444/02 מתוקן

16. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותו של **יניב בן שלום ז"ל**, אשר נפטר כתוצאה מפגיעות קליעים בראשו ובגבו, אשר נורו מתמ"ק MP-5 המתואר לעיל, ומרוס"ר קלצי'ניקוב על-ידי הייתם חמדאן וחוסאם שחאדה.

### **פרט חמישה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, גרם בכוונה למותו של **שרון בן שלום ז"ל**, אשר נפטרה כתוצאה מפגיעות קליעים בראשה ובגבה, אשר נורו מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, וברוס"ר קלצי'ניקוב.

### **פרט שישה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, גרם בכוונה למותו של **דורון יוסף סוויר ז"ל**, אשר נפטר כתוצאה מפגיעות הקליעים, אשר נורו מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, ומרוס"ר קלצי'ניקוב.

### **פרט שבעה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, ניסח לגרום בכוונה למותם של נוסעי רכב פולקסווגן פסואט, האמור בפרט האישום הארבעה-עשר. כתוצאה מהירי שבוצע כאמור בפרט האישום הארבעה-עשר מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, ומרוס"ר קלצי'ניקוב, נפצעה באורח קל מרסיסים ברגלה בתם של בני הזוג של שלום בן ז"ל.

ת.ת. 444/02 מתוקן

**פרט שמונה-עשר:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש ספטמבר 2001 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה לציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצור, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנו נאצר מחמד יוסף נאג'י (אבו-חמזה) - ראש "גדודי חללי אלאקצא" - הזרוע הצבאית של "התנזים" של הפת"ח באיזור, טארק מלחי א-נוף ועבדאטס שוואבקה. האנשים הנ"ל סיפרו לנאשם כי הם יצרו מרגמה וגם רכש פצצת מרגמה תמורה 1,500 ש"ח. האנשים הנ"ל ביקשו מהנאשם לתת להם כסף, אשר אותו שילמו תמורת פצצת המרגמה הנ"ל. האנשים הנ"ל אמרו כי בכוונתם לירות את פצצת המרגמה הנ"ל לעבר היישוב פסגות.

הנאשם טען בפני האנשים הנ"ל כי אם הם יצליחו לירות את פצצת המרגמה הנ"ל על היישוב פסגות, הוא ישלם להם את הכסף עבור הפצצה.

מאוחר יותר, באותו הלילה, האנשים הנ"ל חזרו אל הנאשם והודיעו לו כי הם אכן ירו את פצצת המרגמה הנ"ל לעבר היישוב פסגות. האנשים הנ"ל מסרו לנאשם כי אינם יודעים אם פצצה בדיוק נפלה פצצת המרגמה אותה ירו. לאור האמור, הנאשם סירב לשלם לאנשים הנ"ל כסף עבור פצצת המרגמה הנ"ל.

מאוחר יותר, הנאשם דיווח אודות ירי פצצת המרגמה לעבר היישוב פסגות על-ידי האנשים הנ"ל למרואן ברגותי - ראש "התנזים" של הפת"ח.

---

**פרט תשעה-עשר:**    (פ.א. 7915/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה מחמד ע/רחמאני סאלם מצלח (מכונה "אבו סטחה"), אשר מסר כי פנה אליו פראס צאדק מחמד עיאטס (מכונה "אל חיטאווי") ביחד עם אדם נוסף וביקש לקבל תמ"ק MP-5 על מנת לבצע באמצעותו פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים. מחמד מצלח ביקש כי הנאשם ימסור לו את תמ"ק MP-5, אשר אותו כבר מסר למחמד מצלח לפני כן לצורך ביצוע פיגוע ירי.

2. הנאשם הסכים לספק את כלי הנשק המבוקש לצורך ביצוע פיגוע הירי המתוכנן.

3. הנאשם הפנה את מחמד מצלח אל האדם שוויש לצורך קבלת תמ"ק MP-5 הנ"ל. מחמד מצלח פנה אל האדם שוויש וקיבל מהאחרון תמ"ק MP-5 של הנאשם, כמו כן, הנאשם מסר לידי חוסאם עקל רגיב שחאהדת אחדה 14 לצורך ביצוע פיגוע הירי המתוכנן.

4. מאוחר יותר באותו היום, מחמד מצלח מסר את תמ"ק MP-5 הנ"ל לפראס עיאטס במטרה שהאחרון יבצע באמצעותו פיגוע ירי וגרום למותם של אזרחים ישראליים.

5. יותר מאוחר באותו היום, מחמד סאמר אברהים עבדאללה נפגש ברמאללה עם חוסאם עקל רגיב שחאהדת, פראס צאדק מחמד עיאטס (המכונה "אל חיטאווי"), הייתם אלמומתקן חמדאן ועלי עלהאג. חוסאם שחאהדת הגיע לפגישה הנ"ל כשהוא חמוש בתמ"ק MP-5 ואחדה 14, אשר אותם סיפק הנאשם כאמור לעיל לצורך ביצוע פיגוע ירי.

6. בסביבות השעה 22:00, ביום 15.09.01, האנשים הנ"ל נסעו ברמאללה לירושלים ברכב איסוזו טנדר של פראס עיאטס.

7. פראס עיאטס נהג ברכב האיסוזו הנ"ל ונסע ביחד עם מחמד עבדאללה וחבריו על מנת להראות להם מקום שבו יצעו את פיגוע הירי המתוכנן וכן על מנת להראות לחבריו את היכן להימלט לאחר ביצוע הפיגוע האמור. פראס עיאטס הסיע את חבריו לכביש מסי 9 המרבב בין שכונת רמות לבין שכונת הגבעה הצרפתית בירושלים. פראס ראש הראה היכן לחבריו איפה לבצע את

9

ת.ת. 444/02 מתוקן

הפינוע המתוכנן ואיך להימלט לאחר מכן. בסיום הסיור האמור, החבורה הנ"ל חזרה
לרמאללה.

8. בסביבות השעה 22:30, באותו היום, מחמד עבדאללה ביחד עם חוסאם שחאדה והיותם
חמדאן נסע ברכב גוב בצבע אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם עלי
עליאן לצורך ביצוע הפינוע המתוכנן (להלן: הרכב). לפניהם נסע פראס עיאנם ברכב האיסוזו
הנ"ל וזאת על מנת להודיע באמצעות טלפון סלולרי לחבריו על מחסומי משטרה צה"ל.

9. מחמד עבדאללה נהג ברכב הנ"ל, לידו ישב חוסאם שחאדה, החמומ בתמ"ק 5-MP, אשר אותו
סיפק הנאשם, ובמושב האחורי ישב היותם חמדאן, החמומ באקדח 14, אשר גם אותו סיפק
הנאשם.

10. החבורה הנ"ל נעצרה בכביש מס' 9 בסמוך לצומת המוביל לשכונת רמת שלמה והמתינה לרכב
ישראלי בודד שיגיע למקום במטרה לבצע בעברו פינוע ירי ולגרום למותם של נוסעי הרכב.

11. לאחר מספר דקות, בסמוך לשעה 23:10, הגיע למקום רכב רנו אקספרס לבן, מ.ר. 2273706
(להלן: הרכב) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

12. מחמד עבדאללה החל לנסוע אחרי הרנו ועקף אותו.

13. כשהרכב נסע במקביל לרנו, חוסאם שחאדה והיותם חמדאן פתחו באש בתמ"ק 5-MP
ובאקדח 14, אשר אותם סיפק הנאשם, לעבר נוסעי הרנו במטרה לגרום למותם.

14. מספר קליעים שנורו על-ידי חוסאם שחאדה והיותם חמדאן פגע ברנו ובשני נוסעי הרנו –
משה וייס ומאיר וייסבוז' ז"ל. לאחר מכן, מחמד עבדאללה המשיך לנסוע לכיוון שכונת רמות
ובסמוך למקום שבו בונים גשר חדש פנה ימינה לדרך עפר המובילה לביר נבאללה.

15. לפני הכניסה לביר נבאללה, מחמד עבדאללה וחבריו שהיו עמו ברכב נפגשו עם פראס עיאנם
שהמתין להם במקום ברכב האיסוזו. משם כולם ביחד המשיכו בנסיעה לביר נבאללה ולאחר
מכן נמלטו לרמאללה.

16. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותם של מאיר וייסבוז' ז"ל, אשר נפטר בבית
החולים האמור יותר מאוחר באותו היום כתוצאה מפגיעת הקליעים שנורו על-ידי חברי הנאשם
בתמ"ק 5-MP ובאקדח 14, אשר אותם סיפק הנאשם.

### פרט עשרים: (פ.א. 7915/01 ציון)

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים (א)14 ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 23:10, במקום המתואר בפרט האישום הקודם,
במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותו של משה וייס, אשר נהג
ברכב רנו אקספרס לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד הקליעים שנורו
על-ידי חברי הנאשם, כפי שתוארו בפרט האישום הקודם, פגע בראשו של משה וייס ופצע אותו
באורח קשה.

### פרט עשרים ואחד: (פ.א. 481/01 ציון)

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים (א)14 ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, נפגש עם מחמד
   ערחמאן סאלם מצלח (מכונה "אבו סטחה"). מחמד מצלח ביקש מהנאשם לקבל תמ"ק
   5-MP, תחמושת לתמ"ק 5-MP הנ"ל וכן רכב לצורך לבצע פינוע ירי נגד אזרחים ישראליים
   ברוצאלם בכוונה לגרום למותם.

2. מחמד ערחמאן סאלם מצלח (מכונה "אבו סטחה") מסר לנאשם כי הוא מתכנן לבצע את
   הפינוע המתוכנן ביחד עם מחמד סאמי אברהים עבדאללה, חוסאם עקל רג'ב שחאדה ופראס
   צאדק מחמד עיאנם (המכונה "אל חיטאוויי").

ת.ת. 444/02 מתוקן

3. תחילה הנאשם אמר למחמד מצלח לבצע את הפיגוע המתוכנן מרכבו של פראס עיאנם. אך
מחמד מצלח טען כי יש צורך בשני כלי רכב, כאשר ברכב אחד ייסעו המתריעים והירוי ייסע
ברכב השיני. לאור האמור, הנאשם מסר למחמד מצלח רכב מזדה 323 גונב, הנושא לוחיות
רישוי ישראליות, אשר אותו רכש לצורך כך מידי איאד אלשאפעי תמורת 5,000 ש"ח.

4. לצורך ביצוע פיגוע הירי המתוכנן, הנאשם מסר למחמד מצלח תמ"ק MP-5 ותחמושת לתמ"ק
MP-5 הנ"ל.

5. ביום 03.10.01, מחמד מצלח יצא מרמאללה לכיוון ירושלים במטרה לבצע שם את פיגוע הירי
המתוכנן כשהוא מחזיק בתמ"ק MP-5 הנ"ל ונוסע ברכב המזדה הנ"ל, אשר בו נוהג מחמד
עבדאללה.

6. פראס עיאנם וחוסאם שחאדה נסעו ברכב איסוזו טנדר של פראס עיאנם לפני רכב המזדה שבו
נסע מחמד מצלח וזאת במטרה להודיע על מחסומי המשטרה וצה"ל בדרך.

7. חבריו הנ"ל של הנאשם הגיעו לבית חניא החדשה שבירושלים. שם מחמד עבדאללה החנה
את רכב המזדה וביחד עם שאר חבריו הסתיר את הרכב את תמ"ק MP-5 הנ"ל.

8. מחמד מצלח ומחמד עבדאללה עלו לרכב האיסוזו ומשם המשיכו ברכב האיסוזו ביחד עם
פראס עיאנם וחוסאם שחאדה לכיוון כביש בגין.

9. חבריו הנ"ל של הנאשם הגיעו לכביש בגין. שם, פראס עיאנם הראה לשאר חבריו איפה לבצע
את פיגוע הירי המתוכנן ואיך להימלט לאחר ביצוע פיגוע הירי. חבריו הנ"ל של הנאשם
החליטו לבצע את פיגוע הירי המתוכנן במנהרה הראשונה על כביש בגין מכיוון רמות וזאת על
מנת שלא ישמעו את קולות הירי. לאחר מכן, כל האנשים הנ"ל חזרו לבית חניא, למקום שבו
הושאר רכב המזדה הנ"ל.

10. מחמד מצלח עלה לרכב המזדה כשהוא חמוש בתמ"ק MP-5 הנ"ל, ואילו מחמד עבדאללה נהג
ברכב המזדה האמור. מחמד מצלח ומחמד עבדאללה נסעו ברכב המזדה לכביש בגין במטרה
לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראליים.

11. מחמד מצלח ומחמד עבדאללה נסעו בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב
ישראלי בודד במטרה לבצע לעברו את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי
הרכב.

12. בסמוך לשעה 23:35, כשהם נוסעים לכיוון צפון, במנהרה האחרונה בכיוון נסיעתם, מחמד
מצלח ומחמד עבדאללה הבחינו ברכב הונדה אקורד, מ.ר. 1103217, הנוסע בכביש בגין לכיוון
צפון. ברכב ההונדה נסעו טוני עמיאל, פיני מימון ופזית מימון.

13. מחמד עבדאללה עקף את רכב ההונדה הנ"ל. בעת שמחמד עבדאללה נסע במקביל לרכב
ההונדה הנ"ל, מחמד מצלח ירה כדור אחד בתמ"ק MP-5, אשר אותו סיפק הנאשם, לעבר
נוסעי רכב ההונדה, בכוונה לגרום למותם. הקליע שנורה על-ידי מחמד מצלח לא פגע ברכב
ההונדה הנ"ל.

14. לאחר ביצוע פיגוע הירי האמור, מחמד מצלח ומחמד עבדאללה המשיכו בנסיעתם לכיוון
כביש מס' 9 המחבר בין שכונות רמות לשכונת הגבעה הצרפתית.

## ✓ פרט עשרים ושניים: (ת.פ.א. 8379/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ו-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך,
נסה לגרום בכוונה למותו של אחר, דהיינו:

1. לאחר שמחמד ע'רחמאנ סאלם מצלח (מכונה "אבו סטחה") ומחמד סאמי אברהים עבדאללה
ביצעו את פיגוע הירי כפי שתואר בפרט האישום הקודם, השניים המשיכו בנסיעתם ברכב
המזדה, אשר אותו סיפק הנאשם כפי שתואר בפרט האישום הקודם, לכיוון כביש מס' 9,
המחבר בין שכונות רמות לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חניא ובהמשך
לרמאללה.

2. במהלך הנסיעה הנ"ל, מחמד מצלח, שעל-פי בקשתו של מחמד עבדאללה, בדק את תקינותו של
תמ"ק MP-5, אשר אותו מסר הנאשם, ואף ירה מספר כדורים באוויר.

3. במהלך הנסיעה בכביש מס' 9 הנ"ל, בסמוך לשעה 23:45, מחמד מצלח ומחמד עבדאללה
הבחינו ברכב סקודה, מ.ר. 6567709, אשר נסע בכביש מס' 9 לכיוון הגבעה הצרפתית. ברכב
הסקודה הנ"ל נסעו מלכה כהן ופנחס כהן.

4. מחמד עבדאללה, אשר, כאמור, נהג ברכב המזדה, עקף את רכב הסקודה.

5. בעת שמחמד עבדאללה נסע במקביל לרכב הסקורה הנ״ל, מחמד מצלח ירה בתמ״ק MP-5, אשר אותו סיפק לחם הנאשם לצורך ביצוע פיגוע הירי כפי שתואר בפרט האישום הקודם, מספר יריות לעבר רכב הסקורה הנ״ל בכוונה לגרום למותם של נוסעי רכב הסקורה.

6. מספר קליעים שנורו על-ידי מחמד מצלח פגעו ברכב הסקורה. שני קליעים שנורו על-ידי מחמד מצלח פגעו במפרחס כהן וקליע נוסף פגע במלכה כהן.

7. פנחס כהן נפצע באורח בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע ה-28 להריון, נפצעה באורח בינוני מפגיעת קליע בראשה.

8. לאחר ביצוע פיגוע הירי האמור, מחמד מצלח ומחמד עבדאללה המשיכו בנסיעה לכיוון הגבעה הצרפתית ומשם הגיעו לבית חניא החדשה. שם, מחמד מצלח ומחמד עבדאללה החזו את רכב המזדה הנ״ל וערכו קשר סלפוני עם חוסאם עקל רניב שחאדה ופראס ואנם (מכונה "אל חיטאווי"), אשר הגיעו למקום ברכב האיסוזו של פראס ואנם על מנת לאסוף את מחמד מצלח ומחמד עבדאללה, וזאת לפי התכנון האמור בפרט האישום הקודם.

9. מחמד מצלח ומחמד עבדאללה הסתירו את תמ״ק MP-5 הנ״ל ברכב האיסוזו ועלו לרכב האיסוזו.

10. כל ארבעת אנשים הנ״ל נסו לחזור מירושלים לרמאללה, אך לא הצליחו לעשות כן בגלל מחסומי צה״ל והמשטרה. חבריו הנ״ל של הנאשם נשארו ללון אצל יאסר אבו אלחטיב, חברו של חוסאם שחאדה, בבית חניא החדשה בירושלים.

11. יום למחרת, 04.10.01, מחמד מצלח חזר ברכבו של פראס ואנם לרמאללה.

12. לאחר חזרתו לרמאללה, מחמד מצלח דיווח לנאשם אודות הפיגועים שביצע בעזרת רכב המזדה ותמ״ק MP-5, אשר אותם קיבל מהנאשם.

## פרט עשרים ושלושה:

**מהות העבירה:** ניסיון לגרום מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ״ל, בסוף שנת 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, בעת שחיה עם מוראן ברנותי, ראש "התנונים" של הפתיח, נפגש עם נאצר מחמד יוסף נאג׳י (אבו -חמדי) - ראש "גדודי חללי אלאקצא" - הזרוע הצבאית של הפתיח. נאצר אבו-חמדי סיפר למוראן ברנותי על כוונותיו לרכוש מרגמה ופצצות מרגמה לצורך ביצוע ירי מרגמות לעבר היישובים הישראליים בכוונה לגרום למותם של אזרחים ישראליים. נאצר אבו-חמדי ביקש ממוראן ברנותי הכספי המבוקש לצורך כשית המרגמה ופצצות המרגמה. מוראן ברנותי סירב למסור את הסיוע הכספי המבוקש והפנה את נאצר אבו-חמדי אל הנאשם. הנאשם הסביר לנאצר אבו-חמדי כי אין כל צורך לשלם הרבה כסף עבור מרגמה ופצצות מרגמה שהרי בשירותו של הנאשם כבר יש מרגמה מאולתרת ופצצות מרגמה.

בתחילת שנת 2002, הנאשם הפנה את נאצר אבו-חמדי ואת חברו של האחרון - פעיל צבאי בכיר בייבודי חללי אלאקצאצי - מהנד אבו חלאווה (אל ביתו של עלי ברנותי על מנת שיקבלו שם את המרגמה ואת פצצות המרגמה הנ״ל.

נאצר אבו חמדי, מהנד אבו חלאווה ועבדבסט אכן קיבלו את המרגמה המאולתרת הנ״ל וכן 5 פצצות מרגמה.

נאצר אבו-חמדי, ביחד עם חבריו הנ״ל, ירה באמצעות המרגמה המאולתרת הנ״ל פצצת מרגמה לעבר היישוב פסגות בכוונה לגרום למותם של  תושבי היישוב הנ״ל ושל חיילי צה״ל שהיו בישוב הנ״ל. פצצת המרגמה הנ״ל לא פגעה ביישוב פסגות והתפוצצה בסמוך אליו. לאחר ביצוע הפיגוע הנ״ל, נאצר אבו-חמדי דיווח לנאשם על מה שקרה. הנאשם לקח את נאצר אבו-חמדי אל מוראן ברנותי על מנת שידווח גם למוראן ברנותי אודות פיגוע ירי פצצת מרגמה שבוצע לראשונה באיזור.

ת.ת. 444/02 מתוקן

**פרט עשרים וארבעה:** (פ.א. 39/02 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. ביום 14.01.02 הרב ראאד כרמי אשר היה פעיל צבאי בכיר בכיר ב"תנזים" של ארגון הפת"ח, שהוא התנאחדות בלתי מותרת. בעקבות מותו של ראאד כרמי הנ"ל, ראש "התנזים" של הפת"ח באיזור - מרוואן ברגותי פתח אוהל אבלים ב=אלבירה.

2. הנאשם הנ"ל, ביום 15.01.02, באוהל האבלים הנ"ל, נפגש עם מחמד עארחמאן סאלם מצלח (מכונה "אבן סטוחלי"), מחמד סאמי אברהים עבדאללה, פראס צאדק מחמד עיאמן (המכונה "אל חיטאווי"), טארק מלאח א-נוף וזידאן מחארב אל בדוי.

3. הנאשם מסר לחבריו הנ"ל כי מרואו ברגותי, ראש "התנזים" של הפת"ח באיזור, מבקש כי הם יבצעו באופן מיידי פיגוע נקמה על מותו של ראאד כרמי הנ"ל ויגרמו למותם של אזרחים ישראליים.

4. לצורך ביצוע הפיגוע האמור, הנאשם מסר לחבריו הנ"ל תמ"ק MP-5, אקדח 16, וכן רכב, מזדה, הנושא לוחיות רישוי ישראליות.

5. חבריו הנ"ל של הנאשם, באוהל האבלים הנ"ל, החליטו כי, לאור דרישתו של הנאשם, יבצעו עוד באותו הערב פיגוע בתחנת הדלק הנגבעונים הנמצאת בכביש 443 בסמוך לכניסה לבעת זאב וזאת בכוונה לגרום למותם של אזרחים ישראליים.

6. בשעות הערב באותו היום, 15.01.02, מחמד עבדאללה יצא מאוהל האבלים הנ"ל ביחד עם פראס עיאמן. מחמד עבדאללה ופראס עיאמן נסעו ברכב איסוזו טנדר של פראס עיאמן לתחנת הדלק הנ"ל במכוניח לבצע שם את פיגוע הירי המתוכנן. אחרי רכב האיסוזו הנ"ל נסעו מחמד מצלח, החמוש באקדח 14, זידאן מחארב, החמוש באקדח 16 הנ"ל, וטארק א-נוף, החמוש בתמ"ק MP-5 הנ"ל. השלושה נסעו ברכב מזדה, אשר אותו קיבלו לצורך כך מהנאשם.

7. חבריו הנ"ל של הנאשם הגיעו עד ערמת עפר החוסמת את היציאה מכפרים ביר נבאללה ואלג'יב לכביש 443 במרחק של כ-100 מטר מתחנת הדלק הנגבעונים. חבריו הנ"ל של הנאשם החנו את כלי הרכב שלהם, איסוזו ומזדה, עם הפנים לכיוון הכפר ביר נבאללה על מנת שיוכלו להימלט ממקומם מיד לאחר ביצוע הפיגוע המתוכנן.

8. מחמד מצלח, החמוש באקדח 14, זידאן, החמוש באקדח 16, וטארק א-נוף, החמוש ב-MP-5, ירדו מכלי הרכב והלכו לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראליים.

9. מחמד עבדאללה ופראס עיאמן נשארו בכלי הרכב הנ"ל על מנת לשמור שלא יגיע למקום סיור של צה"ל או אנשים אחרים. מחמד עבדאללה ישב בכיסא הנהג ברכב המזדה על מנת שיוכל למלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מיד לאחר ביצוע הפיגוע.

10. מחמד מצלח וטארק א-נוף נעמדו בכניסה לתחנת הדלק הנ"ל.

11. לאחר מספר דקות, בסמוך לשעה 19:45, מחמד מצלח וטארק א-נוף הבחינו ברכב פיאט אונו לבן, מ.ר. 6424905, שנכנס לתחנת הדלק הנ"ל ואשר בו נהגו יואלה חן ז"ל וילדה ישבה רשל (רחל) עיני.

12. מחמד מצלח וטארק א-נוף ניגשו אל רכב הפיאט הנ"ל במטרה לבצע לעברו פיגוע ירי ולגרום למותם של נוסעות הרכב. נוסעות רכב הפיאט הבחינו באקדח שבו חזיק מחמד מצלח והחלו לצעוק ולצפור. מחמד מצלח הכניס את האקדח למכנסיו ואמר לנוסעות הרכב שלא יפחדו.

13. בשלב זה, טארק א-נוף פתח באש אוטומטית בתמ"ק MP-5, אשר אותו סיפק הנאשם, לעבר נוסעות רכב הפיאט בכוונה לגרום למותן. אז גם מחמד מצלח שוב הוציא את האקדח וחל ליריות לעבר נוסעות הרכב בכוונה לגרום למותן.

14. מחמד מצלח וטארק א-נוף ירו מטוחח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל ולעבר רשל (רחל) עיני שהיו ברכב הפיאט הנ"ל.

15. כ-28 קליעים, שנורו על-ידי מחמד מצלח וטארק א-נוף, פגעו בשמשה הקדמית של הרכב, מספר קליעים פגעו בצד הרכב ובשמשת חלון דלת הנהג.

16. במהלך ביצוע פיגוע הירי המתוכנן, זידאן, אשר עמד במרחק קצר מאחורי מחמד מצלח וטארק א-נוף, שימש כשומר ומתריע.

17. פראס עיאמן, מיד לאחר ששמע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת להודיע לחבריו אם יש מחסומים בדרך לרמאללה.

13

ת.ת. 444/02 מתוקן

18. מחמד מצלח, טארק א-נוף וזידאן, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל רכב המזדה שבו המתין מחמד עבדאללה. לאחר שהשלושה הנ"יל עלו לרכב, מחמד עבדאללה הסיע אותם לרמאללה.

19. ברמאללה נפגשו מחמד מצלח, טארק א-נוף, מחמד עבדאללה וזידאן נפשו עם פראס עיאם.

20. לאחר מכן, מחמד מצלח נפגש ברמאללה עם הנאשם, החזיר לו את תמ"ק 5-MP ואת רכב המזדה, וכך דיווח על הפיגוע שביצעו כמתואר לעיל.

21. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותם של **יואלה חן ז"יל**, אשר נפטרה במקום כתוצאה מפגיעות הקליעים שנורו על-ידי מחמד מצלח טארק א-נוף.

## פרט עשרים וחמישה: (פ.א. 39/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"יל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום למותה של רשל (רחל) עיני, אשר נסעה ברכב פיאט אונו לבן, מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי מחמד ערחמאן סאלם מצלח (מכונה "אבו סטחחי") וטארק מלאח א-נוף בכלי נשק שנמסרו להם על-ידי הנאשם לצורך ביצוע פיגוע הירי, כפי שתואר בפרט האישום הקודם, פגע בראשה של רשל (רחל עיני) ושני קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה באורח בינוני.

## פרט עשרים ושישה: (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"יל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש ינואר 2002, <u>הנאשם החליט כי ברצונו להוציא לפועל פיגוע התאבדות בתוך שטחה של מדינת ישראל על מנת לגרום למותם של אזרחים ישראליים</u> רבים ככל האפשר.

2. הנאשם הנ"ל פנה באמצעות טלפון אל נאצר מחמוד עוויס, פעיל בכיר בו"ייתנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, בשכם. הנאשם ביקש מנאצר עוויס לשלוח אליו אדם המוכן לבצע פיגוע התאבדות. הנאשם <u>מסר לנאצר עוויס כי הוא עצמו ידאג להכניס את המחבל</u> המתאבד לירושלים על מנת שיבצע עם פיגוע התאבדות.

3. לאחר מספר ימים, ביום 22.01.02, ברמאללה, הנאשם נפגש עם סעיד רמדאן, תושב כפר תל בנפת שכם, אשר הודיע לנאשם כי נשלח על-ידי נאצר עוויס לצורך ביצוע פיגוע התאבדות.

4. <u>הנאשם התקשר אל מחמד ערחמאן סאלם מצלח</u> (מכונה "אבו סטחחי") וביקש מהאחרון להגיע אליו.

5. מחמד מצלח נפגש <u>עם הנאשם</u> ועם סעיד רמדאן הנ"ל באותו היום ברמאללה. הנאשם ערך היכרות בין השניים. הנאשם ומחמד מצלח לקחו את סעיד רמדאן למסערה על מנת שיסתתר לפני ביצוע פיגוע התאבדות המתוכנן.

6. לאחר מכן, <u>הנאשם ומחמד מצלח התקשרו אל פראס צאדק צאדק מחמד עיאם</u> (מכונה "חיכטאווי") וביקשו מהאחרון להסיע מחבל מתאבד מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע בירושלים פיגוע התאבדות וינרום למותם של אזרחים ישראליים רבים ככל האפשר.

7. פראס עיאם הגיע לרמאללה ביחד עם מחמד סאמי אברהים עבדאללה, וזאת לאחר שהאחרון הסכים להשתתף בהסעת המחבל המתאבד מרמאללה לירושלים. פראס עיאם הגיע לפגישה ברכבו איסוזו נודיר עם לוחיות רישוי ישראליות.

8. לפי הוראתו של הנאשם, פראס עיאם ומחמד עבדאללה נסעו ברכב האיסוזו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

ת.ת. 444/02 מותקן

P 5: 188

9. מחמד עבדאללה ופראס עיאנס נסעו מרמאללה דרך ראפאת והגיעו לאיזור התעשיה עטרות,
שם השניים חזרו לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה
רמה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם השניים פנו ימינה ונסעו עד
לצומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת הגבעה
הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. מחמד עבדאללה ופראס עיאנס ראו כי
בדרך זהב ונסע ניתן להוביל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה
וצה"ל.

10. באותו הזמן, ברמאללה, הנאשם ומחמד מצלח לקחו את סעיד רמדאן הנ"ל להתפלל ואף קנו
עבור סעיד רמדאן הנ"ל אוכל, בגדים ונעליים חדשים. הנאשם שילם בכסף שלו עבור הקניות
הנ"ל סכום של 1,200 ש"ח.

11. מחמד מצלח, על-פי הוראתו של הנאשם, הביא רוסי"ר 16-M 1-3 מחסניות לרוסי"ר הנ"ל
מלאות בכדורים, כאשר שתי מחסניות היו מחוברות בצולבת.

12. לפי תחכונו של הנאשם וחבריו הנ"ל, היה על סעיד רמדאן להגיע לירושלים ולירות שם
באזרחים ישראליים בכוונה לגרום למותם עד שהוא עצמו ייהרג מאש כוחות הביטחון
הישראליים.

13. לאחר מכן, באותו היום, הנאשם, מחמד מצלח וסעיד רמדאן נפגשו עם מחמד עבדאללה
ופראס עיאנס באיזור ממלון "סיטי אין" באלבירה. הנאשם הכיר למחמד עבדאללה ולפראס
עיאנס את סעיד רמדאן.

14. הנאשם הסביר למחמד עבדאללה ולפראס עיאנס כי סעיד רמדאן הנ"ל הוא המחבל המתאבד,
אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשירות לעבר
אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

15. מחמד עבדאללה ופראס עיאנס הסתירו את רוסי"ר 16-M והמחסניות הנ"ל ברכב האיסוזו
הנ"ל.

16. הנאשם ומחמד מצלח איחלו לסעיד הצלחה והשלושה נסעו לירושלים. הנאשם אמר
למחמד עבדאללה ולפראס עיאנס כי עליהם לקחת את סעיד רמדאן לבצע את פיגוע ההתאבדות
בכל מקום בירושלים שהם יבחרו.

17. פראס עיאנס נהג ברכב האיסוזו, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ומחמד עבדאללה
התיישב במושב האחורי.

18. מחמד עבדאללה ופראס עיאנס הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו
מוקדם יותר באותו היום כפי שתואר לעיל.

19. בירושלים, מחמד עבדאללה ופראס עיאנס נסעו לרחוב שיח' ג'ראח. שם הם הוציאו את רוסי"ר
16-M והמחסניות שהיו מוסתרות בתוך הרכב ומסרו אותם לידי סעיד רמדאן. מחמד
עבדאללה עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי,
כשהוא מחזיק בידיו את רוסי"ר 16-M ואת המחסניות.

20. מחמד עבדאללה ופראס עיאנס הסיעו את סעיד רמדאן לרחוב הנביאים.

21. במהלך הנסיעה, סעיד רמדאן התלונן בפני מחמד עבדאללה ופראס עיאנס כי הנעלים
החדשות, אשר אותם קנה לו הנאשם עבור הפיגוע, קטנות ולוחצות לו. מחמד עבדאללה
הוריד את נעלי "ירובוק" ומסר אותן לסעיד רמדאן באומרו "תעלה לגן עדן עם נעלי
"ירובוק"".

22. בהגיעם לצומת הרחובות שטראוס והנביאים, מחמד עבדאללה ופראס עיאנס עצרו את רכב
האיסוזו.

23. מחמד עבדאללה ופראס עיאנס אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות
במקום שיראה בו הרבה אנשים.

24. לאחר שסעיד רמדאן ירד מהרכב עם רוסי"ר 16-M והתחמושת, מחמד עבדאללה ופראס עיאנס
נסעו מהמקום ברכב האיסוזו, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך
הכביש הראשי לרמאללה.

25. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של מחמד עבדאללה ופראס עיאנס, הגיע לרחוב
יפו.

26. בסביבות השעה 16:20, כשהוא עמד מול בית מסי 47 ברחוב יפו או בסמוך לכך, סעיד רמדאן
טען את רוסי"ר 16-M שבו החזיק, צעק "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר,
לעבר האנשים שהיו ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו
27 שהיה באותה עת בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך החנויות הסמוכות בכוונה
לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך לירות, נמלט
מהמקום לעבר חניון הנמצא ברחוב הרב קוק. שם סעיד רמדאן החליף מחסניות והמשיך
לירות לעבר האזרחים בכוונה לגרום למותם. סעיד רמדאן ירה ברוסי"ר 16-M, שבו החזיק,
מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים
והשוטרים שהגיעו למקום.

ת.ת. 444/02 מתוקן

P 5: 189

27. במעשיו המתוארים לעיל, האשם הנ"ל גרם בכוונה למותה של **אורה (סבטלנה) סנדלר ז"ל,** אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

28. לאחר שנודע לאשם על ביצוע הפיגוע הנ"ל. האשם <u>ניגש אל עלי פרג' ברגותי וקיבל מהאחרון</u> <u>סכום של 1,000 דולר. ארה"ב עבור</u> ביצוע הפיגוע הנ"ל. האשם נתן למחמוד מצלח, מחמד עבדאללה ופראס עיאמנ 100 דולר ארה"ב לכל אחד עבור השתתפותם בהוצאה לפועל של הפיגוע הנ"ל.

√ <u>**פרט עשרים ושבעה :**</u>   **(פ.א. 502/02 ציון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"0-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** האשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

האשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם בכוונה למותה של **שרה המבוראני ז"ל,** אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי האשם.

√ <u>**פרט עשרים ושמונה :**</u>   **(פ.א. 502/02 ציון)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"0-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** האשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

האשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים וששה, במעשיו המתוארים בפרט האישום העשרים וששה, ניסה לגרום בכוונה למותם של אזרחים רבים בכך שניתן שאשר היו באותה עת ברחוב יפו ובקרבתו. כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי האשם, **נפצעו מעל 45 אזרחים.**

√ <u>**פרט עשרים ותשעה :**</u>   **(פ.א. 502/02 ציון)**

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"0-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** האשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

האשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים וששה, במעשיו המתוארים בפרט האישום העשרים וששה, פגע במזיד ושלא כדין ברכוש רב הכולל חנויות ברחוב יפו, תחת אוטובוס "אגד", אוטובוס "אגד" קו 27 וכן כלי רכב רבים, אשר נגע כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי האשם.

ת.ת. 444/02 מתוקן

P 5: 190

## V פרט שלושים:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש ינואר – תחילת חודש פברואר 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם זאפר עג'ואד ע/רחמאן רימאווי.

2. זאפר רימאווי מסר לנאשם כי בן דודו, מוג'הד חידר רימאווי, מוכן לבצע פיגוע התאבדות.

3. על-פי בקשתו של הנאשם, זאפר רימאווי ערך פגישה בין הנאשם לבין מוג'הד רימאווי הנ"ל.

4. לאחר הפגישה הנ"ל, הנאשם הסכים להצעתו של זאפר רימאווי לשלוח את מוג'הד רימאווי לבצע פיגוע התאבדות בירושלים על מנת שמוג'הד רימאווי יגרום למותם של אזרחים ישראליים רבים ככל הניתן.

5. תוכנן כי מוג'הד רימאווי יבצע פיגוע התאבדות באמצעות רובה, דהיינו יירה לעבר אזרחים ישראליים בירושלים בכוונה לגרום למותם של אזרחים ישראליים רבים ככל הניתן וימשיך לירות עד שיהרג על-ידי כוחות הביטחון הישראליים.

6. הנאשם לקח מנשר (חלום) מחמד יוסף נאג'י (אבו-חמזי) רוסי"ר M-16 ומספר מחסניות לרוסי"ר הנ"ל מלאות בכדורים לצורך ביצוע פיגוע התאבדות המתוכנן.

7. הנאשם יצר קשר עם מחמד סאמי אברהים עבדאללה, פראס צאדק מחמד עיאנס (המכונה "אל חינמאווי) וטארק מלחי א-נוף. על-פי בקשתו של הנאשם השלושה הנ"ל הגיעו לרמאללה ונפגשו שם עם הנאשם.

8. הנאשם מסר לחבריו הנ"ל כי הוא מבקש מהם להכניס לירושלים מחבל נוסף, אשר יבצע בירושלים פיגוע התאבדות, דוגמת הפיגוע המתוכנן בפרק האישום העשירים ושישה, במטרה לגרום למותם של אזרחים רבים ככל הניתן. חבריו הנ"ל של הנאשם הסכימו להשתתף בהסעת המחבל המתאבד הנ"ל לירושלים.

9. הנאשם מסר לידי מחמד עבדאללה ופראס עיאנס רכב סובארו אפור, השייך למשפחתו של הנאשם. מחמד עבדאללה חזר עם רכב הסובארו לביתו בבית נבאללה, ואילו פראס עיאנס נסע עם רכב איסוזו טנדר שלו לביתו בכפר עקב.

10. יום למחרת, הנאשם התקשר אל מחמד עבדאללה ואל פראס עיאנס והורה להם להגיע לתחנת הדלק הממוצאת ברמאללה תחתא, לאסוף משם את המחבל המתאבד ולהסיע אותו לירושלים על מנת שיבצע שם את פיגוע ההתאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן.

11. מחמד עבדאללה נסע ברכב הסובארו עד למחסום קלנדיה, שם הוא החנה את הרכב ועלה לרכב האיסוזו של פראס עיאנס שהגיע למקום. משם המשיכו השניים למקום המפגש האמור.

12. ברמאללה, בתחנת הדלק הנ"ל, מחמד עבדאללה ופראס עיאנס נפגשו עם הנאשם, אשר הציג בפניהם את מוג'הד רימאווי שהוא המחבל המתאבד. הנאשם מסר לידי מוג'הד רימאווי רוסי"ר M-16 הנ"ל ושתים מחסניותיות הנ"ל מלאות בכדורים לרוסי"ר M-16.

13. מוחמד עבדאללה ופראס עיאנס הסתירו את רוסי"ר M-16 והמחסניות בתוך רכב האיסוזו.

14. מחמד עבדאללה ופראס עיאנס נסעו ביחד עם המחבל המתאבד לירושלים במטרה שהאחרון יבצע שם פיגוע ירי וגרום למותם של אזרחים רבים ככל הניתן.

15. מחמד עבדאללה, פראס עיאנס ומוג'הד רימאווי הגיעו למחסום קלנדיה ועקפו אותו. לאחר מכן מחמד עבדאללה עבר לרכב הסובארו, שהשאיר במקום קודם לכן ונסע לצומת א-ראם. מחמד עבדאללה עבר לרכב הסובארו והמסום א-ראם והמתין במקום לפראס עיאנס ומוג'הד רימאווי שעקפו את מחסום א-ראם ברגל. לאחר מכן, פראס עיאנס חזר, עלה לרכב האיסוזו, שבו היה מוסתר הנשק, ועבר את מחסום א-ראם כשהוא נסע לבד ברכב האיסוזו עם הנשק.

16. מחמד עבדאללה הסיע את המחבל המתאבד עד למסגד בשועפט. לשם הגיע גם פראס עיאנס ברכב האיסוזו עם הנשק והתחמושת.

17. שם, המחבל המתאבד, מוג'הד רימאווי, ביקש להיכנס למסגד ולהתפלל לפני שיבצע את פיגוע ההתאבדות. מחמד עבדאללה ופראס עיאנס הסכימו לבקשת הנ"ל.

18. בזמן שמוג'הד רימאווי התפלל במסגד האמור, מחמד עבדאללה ופראס עיאנס נסעו ברכב הסובארו הנ"ל לבצוע שאל שביירושלים בכדון אם יש בדרך מחסומי צה"ל או משטרה. השניים החליטו להסיע את המחבל המתאבד לבצע שאל במטרה שיבצע שם את פיגוע הירי המתוכנן וזאת מכיוון שיש במקום האמור אזרחים רבים.

19. כאשר מחמד עבדאללה ופראס עיאנס חזרו למסגד בשועפט על מנת לאסוף משם את מוג'הד רימאווי ולהסיע אותו לבצע שאל במטרה שיבצע שם את פיגוע הירי המתוכנן, השניים לא מצאו את המחבל המתאבד במסגד.

17

P 5: 191

20. מחמד עבדאללה ופראס עיאמה התקשרו אל הנאשם ודיווחו לו כי המחבל המתאבד ברח להם. הנאשם הורה למחמד עבדאללה ופראס עיאמה חזר לרמאללה לחזור לרמאללה.

21. מחמד עבדאללה ופראס עיאמה חזר לרמאללה, נפשו שם את הנאשם ומסרו לידיו את רכב הסוםארו הנ"יל, את רוסי"ר 16-M הנ"יל ואת המרסניות הנ"יל. הנאשם החזיר את רוסי"ר 16-M הנ"יל לידי נצר (חלום) מחמד יוסף טאגי טאני (אבו-חמזה).

22. הנאשם מסר לזאפר רימאווי כי בן דוד נמלט בעת שהיה בדרכו לביצוע פיגוע ירי בירושלים.

## פרט שלושים ואחד:

מהות העבירה: פגיעה בביטחון האיזור, עבירה לפי סעיף 53)א()א()4( לצו בדבר הוראות בטחון (יהודה והשומרון) )מסי 378, תש"י-1970.

פרטי העבירה: הנאשם הנ"יל, באיזור, בתחילת חודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחיילי או לפעולותם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדת תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצאי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד הממשמש או מסוגל לשמש ליצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"יל, במועד האמור, ברמאללה או בסמוך לכך, נפש עם מחמד נאיפה המכונה "אבו רביעי" ועם עכברים ראתב יונס עזויז. השניים הנ"יל מסרו לנאשם כי נמצא אצלם מחבל מתאבד וביקש את עזרתו של הנאשם. הנאשם הסכים לעזור לשלוח את המחבל המתאבד אל תוך מדינת ישראל על מנת שיבצע פיגוע פיגוע התאבדות וגרום למותם של אזרחים ישראלים רבים ככל הניתן. הנאשם הגיע לדירה ברמאללה שבה היו "אבו רביעי", עכברים עזויז וכן אדם שרצה לבצע פיגוע התאבדות. הנאשם שוחח עם מהנד בדר מחמוד אל-שאאר (להלן : המחבל המתאבד) ותרשם כי האחרון רציני בכוונותיו. המחבל המתאבד הנ"יל מסר לנאשם כי גם אביו הינו "שהיד" מכיוון שנהרג על-ידי חיילי צה"ל.

הנאשם העביר לידי אבו רביע רוסי"ר 16-M ו-4 מחסניות מלאות בכדורים על מנת שימסור אותם למחבל המתאבד הנ"יל לצורך ביצוע פיגוע התאבדות המתוכנן.

יום למחרת, הנאשם חזר לדירה הנ"יל עם מצלמת וידאו. עכברים צילם את הנאשם צילום מצלמת הוידיאו הנ"יל את המחבל המתאבד הנ"יל כשהוא מקריא כרוז, וזאת לקראת יציאתו לביצוע פיגוע התאבדות בתוך מדינת ישראל. הנאשם והתברץ הנ"יל אימצו את המחבל המתאבד הנ"יל בשימוש ביניין ברוסי"ר 16-M. לאחר מכן הנאשם העביר את המחבל המתאבד הנ"יל לידיתו של הנאשם ברמאללה תחוזה. הנאשם השאיר את המחבל המתאבד הנ"יל לישון בדירתו על מנת שיצא משם ביום שלמחרת לביצוע פיגוע התאבדות המתוכנן.

כאשר, למחרת בבוקר, הנאשם ועכברים עזויז הגיעו לדירתו הנ"יל של הנאשם, השניים גילו כי המחבל המתאבד נעלם. לאור העעלמותו של המחבל המתאבד הנ"יל, התכנית הנ"יל לביצוע פיגוע התאבדות לא יצאה אל הפועל.

## פרט שלושים ושניים:

מהות העבירה: פגיעה בביטחון האיזור, עבירה לפי סעיף 53)א()א()4( לצו בדבר הוראות בטחון (יהודה והשומרון) )מסי 378, תש"י-1970.

פרטי העבירה: הנאשם הנ"יל, באיזור, בחודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחיילי או לפעולותם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצאי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד הממשמש או מסוגל לשמש ליצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"יל, במועד האמור, שוחח באמצעות טלפון עם נאצר מחמוד עזויז, ראש "גדודי חללי אלאקצא", הזרוע הצבאית של "הנתנזים" שבפתיח, באיזור שכם. נאצר עזויז לנאשם כי הוא שולח אליו שני מחבלים מתאבדים. נאצר עזויז הנ"יל לבין נאצר עזויז כי הנאשם ידאג למסור למחבלים המתאבדים הנ"יל כלי נשק ורימוני-יד וכן ידאג להכניסם אל תוך החלק המערבי של ירושלים על מנת שיבצעו שם פיגוע התאבדות כשירים לעבר אזרחים ישראליים, בכוונה לגרום

18

למותם של אזרחים ישראליים רבים בכל הניתן, ומשיכו לירות עד שייהרגו על-ידי כוחות הביטחון והישראליים.

על-פי הוראות של מ"צ עוו"ם הנ"יל, ביום 17.02.02, אחמד אבו חדר, פעיל בכיר ב"יגדודי חללי אלאקצא", שלח משבכ לרמאללה, אל הנאשם, את סעדי ג'יהאד מחמד-עלי מקבול, עלאא מחמד עלי חסן (מ'עזיז) (מכונה "אסמואדי"), אשר אותם ליווה עולא מחמד ג'ומעה מוצטפא. השניים היו כבר חמושים בשני רימונ-יד.

סעדי מקבול ועלאא חסן היו אמורים לבצע את פיגוע ההתאבדות כפי שתכננו הנאשם ואנצר עווים.

במסגרת ההכנה לפיגוע ההתאבדות הנ"יל, בבית של מחמד אבו חדר, אחיו של אחמד אבו חדר הנ"יל, במחנה הפליטים בלאטה, אחמד אבו חדר צילם את סעדי מקבול ואת עלאא חסן כשהם אוחזים ברוט-מ"16 .M-16. השניים אף קראו בפני מצלמה הוידאו כרוז של "גדודי חללי אלאקצא". אחמד אבו חדר העביר לעלאא חסן ולסעדי מקבול אימון בשימוש בנשק לקראת ביצוע הפיגוע המתוכנן.

ביום 17.02.02, סעדי מקבול ועלאא חסן יצאו משכם לרמאללה ביחד עם עולא מחמד ג'ומעה מוצטפא ואיימן עלאא צאלח בדר. אחמד אבו חדר הסביר לארבעה כי עליהם לנסוע לרמאללה במוניות של איימן בדר. אחמד אבו חדר הסביר כי עולא מוצטפא יהיה אחראי לכך שעלאא חסן וסעדי מקבול ייפגשו ברמאללה עם פעילי "גדודי חללי אלאקצא", אשר יספקו להם כלי נשק ויסיעו אותם לירושלים לפי התכנון הנ"יל.

הארבעה הנ"יל לא הצליחו להגיע לרמאללה ולהיפגש עם הנאשם לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. הארבעה נעצרו במחסום צה"ל, בסמוך לכפר דומא שבנפת רמאללה. שני רימוני-יד שהיו במונית הנ"יל, פוצצו במקום על-ידי החבלן.

/ **פרט שלושים ושלושה:**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"יל, באיזור, באמצע חודש פברואר 2002 או במועד הסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"יל, ביום 15.02.02 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם מחמד סאמי אברהים עבדאללה, חוסאם עקל רגיב שחאדה ופראס צאדק מחמד עיאנם (המכונה "אל חיטאווי").

במהלך הפגישה הנ"יל, הנאשם ביקש מחבריו הנ"יל להכניס לתוך ירושלים מחבל מתאבד, אשר יבצע פיגוע התאבדות במטרה לגרום למותם של אנשים רבים בכל הניתן. חבריו הנ"יל של הנאשם הסכימו להצעת האמורה. הנאשם הבטיח לחבריו הנ"יל 300 דולר ארה"יב בתמורה להובלת המחבל המתאבד לירושלים. הנאשם הודיע לחבריו הנ"יל כי יביא אליהם את המחבל המתאבד בעוד כיום-יומיים.

הנאשם אף נתן לחבריו הנ"יל רכב סובארו אפור, נושא לוחיות רישוי ישראליות, על מנת שחבריו הנ"יל יובילו בו את המחבל המתאבד לירושלים.

מחמד עבדאללה, פראס עיאנם וחוסאם שחאדה, תכננו להכניס את המחבל המתאבד לירושלים ברכב איסוזו טנדר של פראס עיאנם. חברי הנ"יל של הנאשם תכננו להוביל את המחבל המתאבד לאחד המקומות בירושלים שיש בו הרבה אנשים על מנת שהמחבל המתאבד יבצע את פיגוע ההתאבדות המתוכנן. מחמד עבדאללה, פראס עיאנם וחוסאם שחאדה אף ערכו סיור בירושלים ובחרו את המקומות המתאימים לדעתם לביצוע פיגוע ירי נגד אזרחים ישראליים. בין היתר, בחרו חברי הנ"יל של הנאשם במלון "רמדה", המוהרגת של כביש בגין צומת הגבעה הצרפתית.

תכניתם הנ"יל של הנאשם וחבריו הנ"יל לא יצאה אל הפועל מכיוון שכימים שלאחר הגשה הנ"יל, ביום 17.02.02, חוסאם שחאדה נעצר על-ידי כוחות הביטחון הישראליים, וכעבור יום, ביום 18.02.02, פראס עיאנם נעצר על-ידי כוחות הביטחון הישראליים.

לפי הוראתו של הנאשם, מחמד עבדאללה, לאחר מעצרם של פראס עיאנם וחוסאם שחאדה, ביום 19.02.02 או בסמוך לכך, ברמאללה, נפגש עם מחמד צאדק מחמד עיאנם, אחיו של פראס עיאנם הנ"יל, ועם טארק מלאח א-נוף. במהלך הפגישה האמורה, מחמד עבדאללה ומחמד עיאנם הסכימו להצעתו של טארק א-נוף להכניס מחבל מתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים בכל הניתן.

גם התכנית הזו לא יצאה אל הפועל מכיוון שמחמד עבדאללה עצמו נעצר ביום למחרת, יום ה-20.02.02, על-ידי כוחות הביטחון הישראליים.

19

V **פרט שלושים וארבעה: (ת.א. 02/483 שפט)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ק-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, באמצע חודש פברואר 2002, ברמאללה או בסמוך לכך, **הנאשם החליט לשלוח**
מחבל מתאבד לירושלים **על מנת** שיבצע פיגוע ירי לעבר אזרחים ישראלים בכוונה לגרום
למותם אזרחים רבים ככל הניתן. הנאשם תכנן כי המחבל המתאבד יירה לעבר אזרחים
ישראלים עד שייהרג מאש כוחות הביטחון הישראלים.

2. הנאשם יצר קשר טלפוני עם נאצר מחמוד עוויס, פעיל צבאי בכיר ב"תנזים" של הפת"ח,
שהוא התאחדות בלתי מותרת, בשכם. הנאשם ביקש מנאצר עוויס לשלוח אליו לרמאללה
מחבל מתאבד לצורך ביצוע פיגוע התאבדות המתוכנן.

3. לאחר מספר ימים, ראמי מחמד מחמוד נור יצר קשר עם הנאשם והודיע לו כי הוא נשלח
על-ידי נאצר עוויס לצורך ביצוע פיגוע התאבדות המתוכנן וכי הוא נמצא ברמאללה.

4. על-פי הוראתו של הנאשם, טארק מלחי א-נוף נפגש עם ראמי נור. טארק א-נוף הביא את
ראמי נור אל הנאשם.

5. **הנאשם** שוחח עם ראמי נור ולאחר מכן **לקח את** ראמי נור למספרה על מנת שהאחרון יסתפר
לקראת ביצוע פיגוע התאבדות המתוכנן.

6. **הנאשם רכש** עבור ראמי נור **בגדים,** אשר עבורם שילם מכיסו 1,000 ש"ח.

7. לאחר מכן, **הנאשם הובילו** את ראמי נור **דירה** ברמאללה, אשר בה התגוררו הנאשם, טארק
א-נוף וזידאן רמדאן (להלן: - "הדירה").

8. ביום 23.02.02, לדירה הגיע גם שריף מחמד יוסף נאג'י (אבו-חמיד), אשר שהנ"ל רוסי"ר M-16
עבור ביצוע הפיגוע המתוכנן, אשר אותו קיבל מהנאשם. שריף נאג'י (אבו-חמיד) אף הביא
מחסניות לרוסי"ר M-16 הנ"ל מביתו של אחיו, נאצר נאג'י (אבו-חמיד).

9. בשעות הערב באותו היום, שריף נאג'י (אבו-חמיד) וזידאן רמדאן מסרו לראמי נור מידע על
המקום שבו הוטל על ראמי נור לבצע את הפיגוע המתוכנן. הנאשם וחבריו הסבירו לראמי נור
כי עליו לבצע את הפיגוע המתוכנן בשכונת נווה-יעקב בירושלים, במקום, אשר לגביו שריף
נאג'י וזידאן רמדאן אספו מידע קודם לכן.

10. הנאשם, ביחד עם אחרים, צילם את ראמי נור באמצעות מצלמת וידאו במסגרת ההכנות
לקראת ביצוע הפיגוע המתוכנן.

11. על-פי בקשתו של שריף נאג'י (אבו-חמיד), אחיו - נסר (חלום) נאג'י (אבו-חמיד) פנה אל כאמל
עיאם וביקש מהאחרון להסיע את ראמי נור לירושלים.

12. ביום 25.02.02, בשעות הערב, ראמי נור יצא מרמאללה לכיוון ירושלים ברכבו של כאמל
עיאם, כאשר ברכב מוסתר רוסי"ר M-16 הנ"ל, המחסניות וכן רימון-יד, אשר אותו מסר
לראמי נור מסר (חלום) נאג'י (אבו-חמיד).

13. ראמי נור הגיע לכביש הראשי בשכונת נווה-יעקב בירושלים.

14. ראמי נור ירד מהרכב הנ"ל במקום האמור, כשהוא חמוש ברוסי"ר M-16 הנ"ל, מחסניות
ורימון-יד. ראמי נור התקרב אל תחנת האוטובוס של קו 25 של "אגד" הנמצאת במקום ופתח
באש אוטומטית ברוסי"ר M-16 הנ"ל לעבר כלי רכב שעברו במקום וכן לעבר אזרחים
ישראלים שהיו במקום בכוונה לגרום למותם של אנשים רבים ככל האפשר. למקום האמור
הגיעה ניידת המשטרה וראמי נור פתח באש אוטומטית לעבר שוטרי משטרת ישראל שהיו
בניידת הנ"ל בכוונה לגרום למותם. הכדורים שנורו על-ידי ראמי נור פגעו בשני השוטרים
הנ"ל שהשתערעו לעבר ראמי נור וירד לעברו. כתוצאה מפגיעות הכדורים שנורו על-ידי ראמי
נור, השוטרת גלית ארביב ז"ל נפצעה ונפלה על הקרקע. ראמי נור התקרב אל השוטרת גלית
ארביב ז"ל וירה לעברה צרור נוסף ממרחק קצר. כתוצאה מפגיעות הקליעים שנורו על-ידי
ראמי נור, השוטרת גלית ארביב ז"ל נפטרה כעבור מספר שעות.

15. לאחר שלראמי נור נגמרה התחמושת הוא ניסה את רימון-היד שהחזיק לעבר גייף של צה"ל
שנגע למקום בכוונה לגרום למותם של חיילי צה"ל. רק לאחר שראמי נור נפצע ונגמרה לו
התחמושת, השוטרים והאזרחים שהיו במקום הצליחו להשתלט עליו.

16. במעשים המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של השוטרת **גלית ארביב ז"ל.**

√ **פרט שלושים וחמישה: (פ.א. 483/02 שפט)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במעשיו המתוארים בפרט האישום הקודם, ניסה לגרום בכוונה
למותם של אזרחים ישראליים רבים כל האפשר. כתוצאה מפעילות הקליעים שנורו על-ידי ראמי
מחמוד מחמוד נור, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, נפצעו שמונה אזרחים
ושוטרים ישראליים.

√ **פרט שלושים וששה: (פ.א. 483/02 שפט)**

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים וארבעה, במעשיו
המתוארים בפרט האישום השלושים וארבעה, גרם במזיד ושלא כדין נזק רב לתחנת האוטובוס
של קו 25 של "אגד" בוזוה יעקב, לבתים הסמוכים ולכלי רכב שהיו במקום הנ"ל, אשר נפגעו
כתוצאה מהירייה שנורו על-ידי ראמי מחמד מחמוד נור.

√ **פרט שלושים ושבעה: (פ.א. 4258/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה, יצר קשר טלפוני עם נאצר
   מחמוד עוויס, פעיל צבאי בכיר ב"תנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, בשכם.
2. נאצר עוויס הודיע לנאשם כי הוא שולח אליו מחבל מתאבד נוסף על מנת שהנאשם ישלח
   אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי. תוכנן כי המחבל המתאבד יירה לעבר
   אזרחים ישראליים בכוונה לגרום למותם של אזרחים רבים כל הניתן וכי ימשיך לירות עד
   שייהרגו מכוח הכוחות הביטחון הישראליים.
3. ביום 04.03.02, יצר עם הנאשם קשר אברהים חסונה, שוטר במשטרה הימית של הרשות
   הפלסטינית, אשר הודיע כי הגיע לרמאללה על-פי הוראתו של נאצר עוויס וכי הוא המחבל
   המתאבד לצורך ביצוע פיגוע הירי המתוכנן. על-פי הוראתו של הנאשם, טארק מלחי א-נוף
   נפגש ברמאללה עם אברהים חסונה.
4. באותו היום, ברמאללה, טארק א-נוף נפגש עם שריף מחמד יוסף נאג'י (אבו-חמיד). במהלך
   הפגישה האמורה, טארק א-נוף הכיר לשריף נאג'י (אבו-חמיד) את אברהים חסונה.
5. טארק א-נוף הודיע לשריף אבו-חמיד כי הנאשם הביא את אברהים חסונה הנ"ל משכם על
   מנת שיבצע פיגוע התאבדות בכוונה לגרום למותם של אזרחים ישראליים רבים כל האפשר.
6. על-פי הוראתו של הנאשם, טארק א-נוף לקח את אברהים חסונה למספרה על מנת שיסתפר
   לקראת ביצוע פיגוע ההתאבדות המתוכנן. כמו כן, טארק א-נוף ושריף נאג'י (אבו-חמיד) רכש
   עבור אברהים חסונה בגדים חדשים. עבור הבגדים הנ"ל טארק א-נוף שילם 1,000 ש"ח, אשר
   אותם קיבל מהנאשם למטרה זו.
7. לאחר מכן, לפי הוראותו של הנאשם, טארק א-נוף הוביל את אברהים חסונה לדירה ברמאללה
   תוצות, אשר בה התגוררו טארק א-נוף, ויד'אן רמדאן והנאשם (להלן: הדירה).
8. הנאשם הגיע לדירה וצילם באמצעות מצלמת וידאו את אברהים חסונה לקראת ביצוע פיגוע
   ההתאבדות המתוכנן.

ת.ת. 444/02 מותקן

9. הנאשם הורה לטארק א-נוף להוביל את אברהים חסונה אל תוך מדינת ישראל על מנת
שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן. הנאשם הורה לטארק א-נוף להביא נשק
לאברהים חסונה לצורך ביצוע הפיגוע המתוכנן.

10. חבריו הנ"ל של הנאשם החלו לחפש אדם אשר יכניס את אברהים חסונה אל תוך מדינת
ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן ויגרום למותם של אזרחים
ישראליים רבים ככל האפשר.

11. שריף נאג'י (אבו-חמיד) פנה אל מוראד נזמי ריזק עוילוני, בעל תעודת זהות ישראלית
המתגורר בירושלים, וביקש מהאחרון להגיע בדחיפות לרמאללה.

12. שריף נאג'י (אבו-חמיד) נפגש עם מוראד עוילוני הנ"ל בבית קפה ברמאללה וביקש ממנו
להסיע מחבל מתאבד אל תוך מדינת ישראל. מוראד עוילוני הסכים להצעה זו, אך ביקש כי
שריף נאג'י (אבו-חמיד) ידאג לספק למטרה זו רכב לא גנוב בעל לוחיות רישוי ישראליות.

13. שריף נאג'י (אבו-חמיד), זידאן רמדאן עוילוני פגשו ברמאללה את מחמד מחמד יוסף
נאג'י (אבו-חמיד), אשר היה ביחד עם מאזן מחמוד עומר אלקאדי. מאזן אלקאדי נהג ברכב
פורד טרנזיט עם לוחיות רישוי ישראליות, מ.ר. 7014515 (להלן: הרכב). האנשים הנ"ל ביקשו
ממאזן אלקאדי את רכבו וזאת הרשויות של הרכב לצורך הסעת מחבל מתאבד אל תוך שטחה
של מדינת ישראל על מנת שהמחבל המתאבד יבצע שם פיגוע התאבדות. מאזן אלקאדי מסר
את הרכב לידי שריף נאג'י (אבו-חמיד) וזידאן רמדאן, אך ביקש כי הוא עצמו ינהג בו.

14. בשלב הזה, טארק א-נוף ואברהים חסונה הלכו לדירה. שם, אברהים חסונה התקלח ולבש את
הבגדים החדשים, אשר נקנו עבורו על-פי הוראת הנאשם כאמור לעיל.

15. בסביבות השעה 20:00, שריף נאג'י (אבו-חמיד), זידאן רמדאן ומאזן אלקאדי, שנסעו ברכב,
נפגשו בכיכר השעון ברמאללה עם א-נוף ואברהים חסונה. טארק א-נוף ואברהים
חסונה, אשר היו חמושים ברוסי"ר M-16, 6 מחסניות מלאות בכדורים ושני רימוני-יד, עלו
לרכב. למקום הגיע גם נזר (חלום) מחמד יוסף נאג'י (אבו-חמיד), אשר מסר לאברהים חסונה
סכין קומנדו בארך של כ-25 ס"מ. נזר אבו-חמיד אמר לאברהים חסונה לדקור אזרחים
ישראליים על מנת לגרום למותם לאחר שתיגמר לו התחמושת.

16. כל האנשים הנ"ל נסעו ברכב לכיכר פידוץ ברמאללה, מכיוון שבמקום האמור אין הרבה
עוברי אורח.

17. בכיכר פידוץ הנ"ל, נזר (חלום) נאג'י (אבו-חמיד), טארק א-נוף ואברהים חסונה פירקו את
רוסי"ר M-16 הנ"ל והכניסהו אותו אל תוך הדלת הצדדית של הרכב.

18. שריף נאג'י (אבו-חמיד), טארק א-נוף וזידאן רמדאן, נישקו את אברהים חסונה ואיחלו לו
הצלחה.

19. מוראד עוילוני הודיע לחבריו כי הוא עובד בתל-אביב ולכן מכיר מקום בתל-אביב, אשר בו
ניתן לבצע את פיגוע ההתאבדות המתוכנן.

20. הוחלט כי לאחר שמוראד עוילוני ומאזן אלקאדי יורידו את אברהים חסונה בתל-אביב
במקום הומה אדם, אברהים חסונה ימתין מספר דקות על מנת שחבריו הנ"ל יספיקו להימלט
מהמקום ברכב ולאחר מכן יפתח באש אוטומטית ברוסי"ר M-16 הנ"ל לעבר אזרחים
ישראליים שיהיו במקום, בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר
וימשיך לירות עד שייהרג מאש כוחות הביטחון הישראליים שיגיעו למקום.

21. אברהים חסונה עלה לרכב, אשר בו נהג מאזן אלקאדי ולידו ישב מוראד עוילוני, והשלושה
נסעו לכיוון תל-אביב על מנת לבצע שם את פיגוע ההתאבדות המתוכנן.

22. במהלך נסיעתם של מוראד עוילוני, מאזן אלקאדי ואברהים חסונה לתל-אביב, שריף נאג'י
(אבו-חמיד) שוחח עמם באמצעות טלפון סלולרי.

23. באותה לילה, לאחר שמאזן אלקאדי, מוראד עוילוני ואברהים חסונה הגיעו לתל-אביב,
בסמוך לגשר מעריב שבדרך פתח-תקווה, מוראד עוילוני הראה לאברהים חסונה מקום הומה
אדם והנחה אותו לבצע שם את הפיגוע המתוכנן.

24. אברהים חסונה הוציא את רוסי"ר M-16, מחסניות ורימוני-יד הנ"ל, שהיו מוסתרים בדלת
של הרכב כאמור לעיל.

25. בסמוך לשעה 02:15, ביום 05.03.02 או במועד הסמוך לכך, מאזן אלקאדי ומוראד עוילוני
הורידו את אברהים חסונה מן הרכב, כשהוא חמוש ברוסי"ר M-16, רימוני-יד וסכין קומנדו
הנ"ל, בסמוך למסעדה "סי-פוד מרקט" הממוצאת בדרך פתח-תקווה בתל-אביב (להלן:
המסעדה) על מנת שיבצע שם את הפיגוע המתוכנן.

26. מוראד עוילוני ומאזן אלקאדי נסעו ברכב מהמקום לכיוון ירושלים.

27. אברהים חסונה התקרב אל המסעדה "סי-פוד מרקט" ופתח באש אוטומטית ברוסי"ר M-16
לעבר יושבי המסעדה ועוברי האזרח בדרך פתח-תקווה בכוונה לגרום למותם.

28. לאחר מכן, אברהים חסונה השליך את שני רימוני-היד הנ"ל לעבר המסעדה בכוונה לגרום
למותם של יושבי המסעדה ועוברי אורח, אך רימוני-היד לא התפוצצו.

22

ת.פ. 444/02 מתוקן

29. לאחר שרוט"ר 16-M, אשר בו החזיק אברהים חסונה הפסיק לירות עקב מעצור, אברהים
חסונה הוציא את סכין הקומנדו הנ"ל והחל לדקור אזרחים ישראליים שהיו במקום בכוונה
לגרום למותם.

30. למקום האמור, הגיע השוטר רס"ר סלים ברכאת ז"ל. רס"ר סלים ברכאת ז"ל הסתער לעבר
אברהים חסונה והשתלט עליו. רס"ר סלים ברכאת ז"ל הספיק לחודיע למפקדיו על
ההשתלטות על המחבל.

31. בשלב זה, אברהים חסונה דקר באמצעות סכין הקומנדו הנ"ל את רס"ר סלים ברכאת ז"ל
בצוארו בכוונה לגרום למותו. כתוצאה מהדקירה הנ"ל, רס"ר סלים ברכאת ז"ל נפטר
במקום.

32. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **רס"ר סלים ברכאת ז"ל.**

33. לאחר שלשריף נאג'י אבו-חמדי) נודע משידורי הטלויזיה על כך שהפיגוע המתוכנן בוצע
כאמור לעיל, הוא יצר קשר עם הנאשם ועידכן את האחרון בדבר ביצוע הפיגוע האמור.

34. מיד לאחר מכן, הנאשם הודיע למרואן ברגותי, ראש "התנזים" של הפתח"ח באיזור, ולנאצר
מחמד יוסף נאג'י אבו-חמדי), ראש "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של
הפתח, על הפיגוע שבוצע. כמו כן, הנאשם יצר קשר עם סוכנות הידיעות "רויטרס" והודיע
על הפיגוע שבוצע כאמור לעיל.

## פרט שלושים ושמונה: (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו
המתוארים בפרט האישום השלושים ושבעה, גרם בכוונה למותו של **יוסף חבי ז"ל,** אשר נדקר
על-ידי אברהים חסונה בבית חזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

## פרט שלושים ותשעה: (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, ובין איזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו
המתוארים בפרט האישום השלושים ושבעה, גרם בכוונה למותו של **אליחו דהן ז"ל,** אשר נדקר
על-ידי אברהים חסונה בבית חזה, בבטנו ובגבו ונפטר כתוצאה מכך.

## פרט ארבעים: (פ.א. 4258/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"י-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו
המתוארים בפרט האישום השלושים ושבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר.
כתוצאה מהירייות שנורו על-ידי אברהים חסונה נפצעו עשרות אזרחים ישראליים.

23

**פרט ארבעים ואחד: (פ.א. 4258/02 ירקון)** V

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53צ לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"י-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו המתוארים בפרט האישום השלושים ושבעה, גרם במזיד ושלא כדין נזק רב למכוניות "סי-פוד מרקט", למכונית "מפגש הסטייק" וכן לבניינים הסמוכים וכל הרכב שהיו באיזור, אשר נפגעו כתוצאה מהירויות שנורו על-ידי אברהים חסונה.

**פרט ארבעים ושניים: (פ.א. 568/02 שפט)** V

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"י-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 08.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. **הנאשם הנ"ל, במועד האמור,** שוחח באמצעות טלפון עם נאצר מחמוד עוויס, פעיל צבאי בכיר בייתינימקה של הפתח"ח, שהוא התואחזו בלתי מורגות, בשכם.
2. נאצר עוויס ביקש מהנאשם להיפגש ברמאללה עם לואי מחמד אחמד עודה, אשר שוחרר לפני זמן קצר מהכלא של הביטחון המסכל של הרשות הפלסטינית.
3. **הנאשם נפגש ברמאללה עם לואי עודה.** במהלך השיחות בין השניים לואי עודה מסר לנאשם כי יש לו מחבל מתאבד וכי הוא צריך חגורת נפץ על מנת שהמחבל המתאבד יוכל לבצע באמצעותה פיגוע התאבדות בתוך שטחה של מדינת ישראל ובכך יגרום למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הסכים למסור ללואי עודה את חגורת הנפץ המבוקשת לצורך ביצוע פיגוע ההתאבדות המתוכנן. כמו כן, הסכים הנאשם לבקשתו של לואי עודה לארגן מקום לינה ברמאללה עבור המחבל המתאבד.
4. קודם לכן, לואי עודה הנ"ל שוחח עם נאצר עוויס הנ"ל ומסר לו כי יש לו איתור אדם אשר מוכן לבצע פיגוע התאבדות בירושלים, והוא מחמוד צלאח, תושב השומרון. נאצר עוויס ביקש מלואי עודה להעביר את מחמוד צלאח לירושלים על מנת לבצע פיגוע התאבדות בכוונה לגרום למותם של אזרחים ישראליים. לואי עודה הסכים לכך. לואי עודה פגש את מחמוד סעיד ערימוא צלאח. מחמוד צלאח סיפר ללואי עודה, כי בכוונתו לבצע פיגוע התאבדות, וזאת לאחר שארוסתו, דארין, ביצעה גם היא פיגוע התאבדות.
5. לואי עודה התקשר לחיאלד שוקר חביב חלבי, תושב בית חנינא, **פעיל הארגון "החזית העממית לשחרור פלסטין",** והודיע לו, כי בכוונתו לבצע פיגוע בירושלים וזאת על ידי שיגור מחבל מתאבד שברשותו. לואי עודה ביקש מחיאלד חלבי לאתר אנשים, אשר יכניסו את המחבל המתאבד לירושלים. חיאלד חלבי הסכים לבצע את המבוקש ממנו.
6. חיאלד חלבי התקשר לחברו עזאדי עיסא עודה, תושב בית חנינא, פעיל הארגון "החזית העממית לשחרור פלסטין", וזה נפגש עמו ביום 06.03.02 ברמאללה. לואי עודה הגיע לפגישה זו ונפגש עם חיאלד חלבי ועזאדי עודה בסמוך לבית קפה "ירבסקי". לואי עודה וחיאלד חלבי הציעו לעזאדי עודה להכניס מחבל מתאבד מרמאללה לירושלים לצורך ביצוע פיגוע. לואי עודה הדריך את עזאדי עודה לתובל את המחבל המתאבד לגבעה הצרפתית בירושלים, בדרכים עקפות מחסומים, על מנת שיבצע שם פיגוע ויגרום בכך למותם של אזרחים ישראליים. לואי עודה וחיאלד חלבי הציעו לעזאדי עודה חלופות למקום ביצוע הפיגוע: סופרמרקטו בסמוך לתחנת הדלק בשכונת רמת אשכול, מסעדת "פיצת דומינוס" בגבעה הצרפתית או אחת מתחנות האוטובוסים שבמתחם תחנת הצרפתית.
7. לצורך קבלת חגורת הנפץ עבור המחבל המתאבד, **הנאשם הנפגש את לואי עודה עם חיאלד שוויש,** פעיל כוח 17 של הרשות הפלסטינית, אשר הבטיח להעביר לידי לואי עודה וילדי המחבל המתאבד חגורת נפץ שברשותו ולהמציר לרשותו של לואי עודה פעיל כוח 17 של הרשות הפלסטינית בשם מזיד, אשר לביש את חגורת הנפץ על המחבל המתאבד.
8. **הנאשם הוביל את המחבל המתאבד-**אל הדירה ברמאללה תחתא, אשר אותה שכר הנאשם (להלן: הדירה).

24

ת.ת. 444/02 מתוקן

9. ביום 08.03.02 הגיע עיאנדי עודה, לקריאתו של חיאלד חלבי, לרמאללה. ברמאללה המתינו לעיאנדי עודה לואי עודה, אשר הגיע למקום המפגש ברכב, וחיאלד חלבי. לואי עודה וחיאלד חלבי מסרו לעיאנדי עודה כי עליו לחבול את המחבל המתאבד לתחנת האוטובוסים, שבכיוון הנסיעה לים המלח, בצומת תגבות הצרפתית בירושלים. לואי עודה וחיאלד חלבי וידאו כי עיאנדי עודה מכיר את הדרכים העוקפות למקום, ועיאנדי עודה סיפר להם, כי בכוונתו להוביל את המחבל המתאבד תוך עקיפת מחסום קלנדיה בדרך המחצבות, ומשם להמשיך ולהוביל את המחבל למקום ביצוע הפיגוע דרך בית חנינא ושועפט, תוך עקיפת מחסום דחיית אל-בריד.

10. לאחר מכן, לואי עודה נסע לדירה, שם נפגש עם הנאשם ועם מזיד, אשר הביא יחד עמו חגורת נפץ. מזיד חלבש את חגורת הנפץ על המחבל המתאבד והסביר למחמוד צלאח כיצד להפעיל את חגורת הנפץ. כמו כן, מחמוד צלאח גילח את זקנו.

11. לאחר מכן, עצרו הנאשם וחבריו הנ"ל מוניות, והמחבל המתאבד, מחמוד צלאח, לבש בחגורת הנפץ, עלה למונית בדרכו לביצוע פיגוע התאבדות בכוונה לגרום למוותם של אזרחים ישראליים. חיאלד חלבי ליווה את מחמוד צלאח למקום המפגש עם עיאנדי עודה.

12. עיאנדי עודה והמחבל המתאבד, מחמוד צלאח, המשיכו לנסוע במונית, וירדו מן המונית בדרך עפר בסמוך למחצבות בקלנדיה. משם הוביל עיאנדי עודה את המחבל המתאבד ברגל בדרכם לביצוע הפיגוע המתוכנן.

13. בשיקולי נסיבה בבית חנינא בירושלים, נעצרו עיאנדי עודה ומחמוד צלאח, בסמוך לשעה 16:00, על ידי שוטרי משמר הגבול. כאשר ניסה מחמוד צלאח להפעיל את חגורת הנפץ אותה לבש, נורה על ידי אנשי כוחות הביטחון ונהרג.

√ **פרט ארבעים ושלושה:** (פ.א. 783/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 17.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותם של אחר, כדלקמן:

1. ביום 05.03.02 נהרג ברמאללה פעיל צבאי בכיר בידי גדודי חללי אלאקצא" (הזרוע הצבאית של "התנזים" של הפתיח) - מחמד אבו חלאווה.

2. כעשרה ימים לאחר מכן, מג'יד מחמוד אחמד זיאדה החליט לנקום את מותו של מהנד אבו חלאווה על ידי ביצוע פיגוע קטלני.

3. לואי יוסף מנסי וראפאת צלאח הסכימו להצטרף אל מג'יד זיאדה לביצוע פיגוע הנקמה הנ"ל.

4. לואי מנסי יצר קשר עם הנאשם, וקיבל את אישורו לביצוע הפיגוע המתוכנן.

5. בעקבות האישור שניתן על-ידי הנאשם, מג'יד זיאדה ולואי מנסי הגיעו לביתו של הנאשם.

6. הנאשם מסר לידי השניים רובה מסוג "ברטה" ורוס"ר קלצ'ניקוב עם מחסניות לצורך ביצוע הפיגוע המתוכנן.

7. למחרת, ביום 17.03.02, מג'יד זיאדה נסע עם לואי מנסי וראפאת צלאח, ברכבו מסוג "מזדה" לכביש בית-אל-פסגות, כאשר מג'יד זיאדה נוהג ברכב, לואי מנסי מחזיק בידיו את הרובה מסוג "ברטה", וראפאת צלאח מחזיק בידיו רוס"ר קלצ'ניקוב.

8. האנשים הנ"ל הגיעו למקום הפיגוע המתוכנן סמוך לשעה 6:30 בבוקר. לואי מנסי וראפאת צלאח ירדו מן הרכב, בעוד שמג'יד זיאדה נשאר להמתין להם ברכב לצורך מילוטם בסיום ביצוע הפיגוע.

9. כרבע שעה לאחר מכן הגיע למקום רכב פולקסוואגן פאסאט לבן, מ.ר. 7741115, אשר בו נהג סמיר קרש.

10. לואי מנסי וראפאת צלאח ירו לעבר נהג הרכב בצרורות באמצעות כלי הנשק, אשר סיפקו להם למטרות זו הנאשם, כבונה לגרום למותו של נהג רכב הפולקסוואגן הנ"ל.

11. כתוצאה מן הירי, נפצע סמיר קרש בכתפו, בדרך שבית שבריות המקורב משמאל עם ריסוק וריסוסר מתבת לאורך מסלול הקליע, ונזקק לאשפוז וניתוח. כמו כן, נפגע שלושה מן הכדורים שנורו על ידי לואי מנסי וראפאת צלאח ברכב האמור וגרמו לו נזק.

12. לאחר סיום ביצוע הפיגוע, חזרו לואי מנסי וראפאת צלאח לרכבו של מג'יד זיאדה והשלושה נמלטו ממקום הפיגוע לרמאללה.

13. לאחר מכן, לואי מנסי התקשר ודיווח לו על ביצוע המוצלח של הפיגוע.

25

ת.ת. 444/02 מתוקן

<u>פרט ארבעים וארבעה:</u>

<u>מהות העבירה:</u> פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי מטא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם נזאר שאהין, שומר ראשו של גיברילל רג'וב, ראש הביטחון המסכל של הרשות הפלסטינית באיזור. נזאר שאהין הודיע לנאשם כי ברצונו לבצע פיגוע ירי נגד חיילי צה"ל הנמצאים במחסום סורדא ולגרום למותם. הנאשם מסר לנזאר שאהין 2 אקדחים, רובי"ר M-16 מקוצר עם כוונת טלסקופית וכן קופסא של כדורים לצורך ביצוע הפיגוע האמור.

לאחר זמן קצר בוצע פיגוע ירי במחסום סורדא ובמחלקם נהרג חייל צה"ל. הנאשם מיהר ליצור קשר עם נזאר שאהין, אך האחרון מסר כי זה לא הוא שביצע את הפיגוע האמור. לאחר מכן, נזאר שאהין החזיר לנאשם את כלי הנשק, אשר אותם מסר לו הנאשם קודם לכן לצורך ביצוע הפיגוע האמור.

---

<u>פרט ארבעים וחמישה:</u>

<u>מהות העבירה:</u> פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי מטא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם מחמוד אלטיטי, פעיל בכיר בייגאדות חללי אלאקצא, הזרוע הצבאית של "התנועים" של הפתיח, שהוא התאחדות בלתי מותרת. מחמוד אלטיטי מסר לנאשם כי יש לו מחבל מתאבד המוכן לבצע פיגוע התאבדות בתוך מדינת ישראל. הנאשם הסכים לשלוח את המחבל המתאבד אל תוך שטחה של מדינת ישראל על מנת שיגרום למותם של אזרחים ישראליים רבים ככל הניתן.

למחרת היום, הגיע אל הנאשם אדם בשם פאיז משבה. פאיז מסר לנאשם כי נשלח על-ידי מחמוד אלטיטי לצורך ביצוע פיגוע התאבדות בתוך ישראל.

הנאשם שוחח עם פאיז וגילה כי פאיז לא יודע לירות טוב. בעקבות כך הנאשם שוב יצר קשר עם מחמוד אלטיטי. הנאשם מסר למחמוד אלטיטי כי פאיז יוכל לבצע את פיגוע ההתאבדות באמצעות חגורת נפץ שיישיים על גופו. מחמוד אלטיטי הסכים להצעת הנאשם והבטיח לדאוג לשלוח אל הנאשם חגורת נפץ לצורך ביצוע פיגוע ההתאבדות מתוכנן.

אל-פי הוראותו של הנאשם, נארק מלחי א-נוף, רכש עבור פאיז בגדים חדשים ולאחר מכן ליווה את פאיז לדירה ברמאללה תחתא, שבה התגוררו נארק א-נוף, זיד'אן רמד'אן והנאשם (להלן: הדירה).

הפיגוע המתוכנן לא יצא אל הפועל לאחר העבד'ה שמטעני החבלה שנשלחו לנאשם וכן מכוויון שפאיז נעצר על-ידי כוחות הביטחון הישראלים.

לאחר מעצרו של פאיז, הנאשם שוחח עם נאצר עויש אודות הנ"ל וחשש מה שקרה. נאצר עויש הבטיח לנאשם לשלוח אליו מחבלים מתאבדים נוספים על מנת שהנאשם ישלח אותם אל תוך שטחה של מדינת ישראל לצורך ביצוע פיגוע התאבדות. נאצר עויש לא הספיק לשלוח אל הנאשם מחבלים מתאבדים נוספים, מכיוון שהן הנאשם הן נאצר עויש נעצרו על-ידי כוחות צה"ל במחלק המבצע "חומת מגן".

**פרט ארבעים ושישה:**

**מהות העבירה:** ייצור חפץ נפץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס׳ 378), תשל״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, ייצר כלי ירייה, תחמושת פצצה, רימון יד, חפץ נפץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה נפגש עם לואי מחמד אחמד עודה, אשר ביקש מהנאשם לקבל כסף עבור פעילות צבאית. לאור האמור, הנאשם העביר ללואי עודה סכום של 8,000 ש״ח, אשר אותו קיבל עלי פרני ברגותי.
לואי עודה ביחד עם שריף מחמד יוסף נאג׳י (אבו-חמיד) רכש בכסף הנ״ל חומרים כימיים שונים. ע/כרים ראתב יונס עוויס יצר מהחומרים הכימיים הנ״ל מטען חבלה גדול.

**פרט ארבעים ושבעה:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק או בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, מכר לידי ע/כרים ראתב יונס עוויס, ראש "גדודי חללי אלאקצא" - הזרוע הצבאית של "התנזים" של הפת״ח באיזור ג׳נין, אשר שהה אותה עת ברמאללה, אקדח 14, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט ארבעים ושמונה:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק או בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי נסר (חלום) מחמד יוסף נאג׳י (אבו-חמיד) רובי״ר M-16 ארך תמורת 4,000 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט ארבעים ותשעה:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במחצית הראשונה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם אשרף ח׳דר עלי ג׳יאבר (יאסין) וקיבל מהאחרון 1,500 כדורים לרובי״ר M-16. הנאשם שילם לאשרף גיאבר הנ״ל 3,000 ש״ח עבור הכדורים הנ״ל. הנאשם ביצע את המיוחס לו בפרט האישום הזה לפי הוראתו של מרואן ברגותי - ראש "התנזים" של הפת״ח באיזור.

ת.ת. 444/02 מתוקן

P 5: 201