# EXHIBIT A.360
## 2 of 2

2

חברי חוליה זו, שמכונה חוליית "העיר העתיקה", מלבד הנאשם היו: מהדי אבו גילה, באסל אלביזרה, סאאד ג'ווארבה, כמאל שהאב, ומואייד ג'מיל.

הנאשם, כעבור שלושה חודשים מיום הצטרפותו לחוליה הצבאית הנ"ל, החליט בעקבות סכסוך אישי שהיה לו עם אחד מחברי החוליה, להפסיק חברותו בחוליה זו.

לאחר שהנאשם עזב את החוליה הנ"ל, נפגש במהלך חודש מרץ 01', בפעיל הצבאי ראיד אלכרמי. הנאשם ביקש מראיד אלכרמי כי יפעל עימו בפעילות צבאית.

ראיד אלכרמי הסכים לבקשתו של הנאשם, והכיר לו פעיל הצבאי של "כתאיב שוהדאא אלאקצא", נאצר עוויס.

כאשר הפעילים הצבאיים מוחמד אלקאסם, כמאל יוסף שהאב, סאאד ג'ווארבה ידעו כי הנאשם עובד עם נאצר עוויס ביקשו ממנו כי יצטרפו לחוליה שאליה משתייך הנאשם. נאצר עוויס הסכים לצירופם לחוליה.

חברותו של הנאשם בחוליה הצבאית נמשכה עד יום מעצרו.

**פרט שני:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במהלך חודש אוקטובר 01' או בסמוך לכך, ניסה ביחד עם אחר לגרום למותו של אחר בכוונה;

דהיינו, הנאשם הנ"ל, במועד הנ"ל בסמוך לשעות הערב, יצא ביחד עם חברי חוליתו מחמד אלקאסם, כמאל יוסף שהאב וסאאד ג'ווארבה, לכיוון מחסום דיר-שרף על מנת לבצע פיגוע חבלני.

נאצר עוויס אישר לנאשם לבצע את הפיגוע, ומסר לו רובה 16 – M עם שתי מחסניות.

הנאשם וחבריו הנ"ל נסעו למקום המחסום באמצעות רכב מסוג פולקסווגן גנובה.

כשהגיעו בסמוך למקום המחסום במרחק 15 מטר מהמחסום, הפנו את כיוון הרכב לכיוון הנגדי, הנאשם ומחמד אלקאסם פתחו את הדלתות האחוריות וירו באמצעות הרובים לעבר שלושת החיילים שעמדו במחסום, כאשר הרכב בו ישב היה במגמת נסיעה לכיוון שכם.

הנאשם ירה את כל הכדורים שהיו במחסנית לכיוון החיילים, ומחמד אלקאסם גם הוא ירה את כל הכדורים שבמחסנית לעבר החיילים.

החיילים בהתחלה לא הגיבו בירי; אולם, לאחר שהרכב בו נסע הנאשם, היה במרחק 300 מטר, שמעו הנאשם וחבריו קולות ירי.

3

**פרט שלישי:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 20-19, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בסוף שנת 01' או בסמוך לכך, היה שותף לניסיון גרימת מותו של אדם אחר בכוונה;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, נתבקש ע"י מחמוד א-טיטי, פעיל צבאי של ארגון "שוהדאא אלאקצא", להשתתף בביצוע פיגוע ירי לעבר כלי רכב ישראלי.

מחמוד טיטי אמר לנאשם כי ביצע מעקב אחרי תנועת כלי רכב מסוג סובארו שנהוג ע"י קצין ישראלי.

הנאשם הסכים להצעתו של מחמוד טיטי.

בהתאם, ארב הנאשם ביחד עם מחמוד טיטי, כמאל שהאב, נאצר אלחיטיב בסמוך צומת רוג'יב, לכלי הרכב שנסע מאיזור אלון מורה לכיוון חווארה.

הנאשם היה חמוש ברובה מסוג 16 – M, נאצר אלחיטיב היה חמוש בקלצ'ניקוב, ומחמוד טיטי היה חמוש במקלע, וכמאל שהאב היה חמוש ברובה מסוג 16 – M.

כשהתקרב הרכב למרחק כ- 200 מטר מהמקום שבו ארבו הנאשם וחברי החוליה, ירה הנאשם לעברו כ- 2 כדורים, נאצר אלחיטיב ירה כ- 11 כדורים, ומחמוד טיטי ירה לעברו כ- 10 כדורים.

**פרט רביעי:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 20-19, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במהלך חודש ינואר 02' או בסמוך לכך, היה שותף לניסיון גרימת מותו של אדם אחר בכוונה;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, ביצעו כמאל שהאב ומחמד אלקאסם תצפית על קרוואן שנמצא ביישוב הישראלי יצהר. כמאל שהאב ומחמד אלקאסם למדו מהתצפית כי בכל יום מגיע לקרוואן בן-אדם.

לאחר ביצוע התצפית קשר הנאשם ביחד עם כמאל חיטיב, כמאל שהאב, איאד חמדאן, מוחמד אלקאסם, קשר לבצע ירי לעבר הקרוואן.

הנאשם תיכנן את תוכנית ביצוע הפיגוע, ולפי התוכנית שימש כאחראי על החוליה במהלך ביצוע הפיגוע.

הנאשם יצא ביחד עם החבורה הנ"ל, כשהם חמושים ברובים מסוג 16 – M, רובה אנגלי, קלצ'ניקוב, לכיוון איזור היישוב יצהר.

4

כשהגיעו למקום, ארבו על גבעה שנמצאת במרחק כ- 300 מטר מהמקום, ושמשקיפה על האיזור.

כעבור שעה הגיע לקרוואן כלי רכב מסוג טנדר פתוח, וממנו ירדו שלושה אנשים.

כאשר התקרבו האנשים לקרוואן, ירו הנאשם וחבריו לעברם באמצעות כלי היריה שברשותם. הנאשם ירה כ- 10 כדורים.

לאחר הירי, נמלטו הנאשם וחבריו מהמקום.

**פרט חמישי:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש פברואר '02, ביחד עם אחרים גרם למותו של אדם אחר בכוונה, דהיינו:

1. הנאשם הנ"ל, במועד הנ"ל, כאשר השתתף בהלווייתו של מחמד מוצטפא אלקאסם נכד בביה"ח רפידיה בשכם, ובמהלך שהותו שם סיפר לו מוחמד בורחאן כי בביה"ח נמצא זאהר תוראבי ז"ל (להלן – המנוח). הנאשם סיפר למחמוד א-טיטי אודות כך.

2. לאחר שמחמוד א-טיטי שמע על כך, חטף את המנוח מביה"ח. ולאחר-מכן, מחמוד א-טיטי סיפר לנאשם כי חקר את המנוח אודות חשדות לשיתוף פעולה לטובת מדינת ישראל, והמנוח הודה בכך, ולכן החליט לרצוח את המנוח.

3. הנאשם ביקש ממחמוד א-טיטי כי יפגש עימו בשעות הערב על מנת שיקח אותם למקום מתאים שבו ירצח המנוח. הנאשם נפגש שוב עם מחמוד א-טיטי, מואייד ג'מאל, יאסר אבו בכר, והיה עימם המנוח. הנאשם וחבריו נסעו, באמצעות כלי רכב מסוג פולקסווגן, לשכונת המהנדסים שנמצאת בסמוך לג'ניד.

4. במקום הנ"ל הוציאו את המנוח מהרכב. הנאשם ביקש מהמנוח כי יתפלל לפני שירצחו אותו, אולם המנוח סירב. הנאשם שאל אותו אם יהיה מוכן לרצוח את הגורם משירות הביטחון הכללי שאתראי עליו, אולם המנוח סירב לכך.

5. ואז ירו מחמוד א-טיטי ומואייד ג'מאל על המנוח כ- 15 כדורים, בכוונה לגרום למותו. לאחר-מכן, התקרב הנאשם אל המנוח, וירה כדור אחד בראשו וזאת כדי לוודא את מותו.

6. כתוצאה מכך, נגרם מותו של המנוח.

5

7. הנאשם וחבריו הניחו על גופתו של המנוח את "ההודאתי", וכרוז של ארגון "שוהדאא אלאקצא".

**פרט שישי:** (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור ומחוץ לאיזור, ביום 22/01/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. במהלך עבודתו במשטרה הימית הפלסטינית, הכיר הנאשם את סעיד אברהים רמדאן (להלן – **סעיד**). במהלך אחת הפגישות סיפר סעיד לנאשם כי ברצונו לבצע פיגוע התאבדות, והנאשם ביקש מסעיד כי יתן הזדמנות לבדוק את העניין.

2. הנאשם פנה לנאצר עוויס והודיע לו אודות כוונות סעיד; והלה הפנה אותו למחמוד א-טיטי. הנאשם נפגש עם מחמוד א-טיטי, והודיע לו אודות כוונות סעיד. מחמוד טיטי ביקש מהנאשם כי יבדוק את כנות כוונות סעיד.

3. הנאשם, במטרה לבחון את סעיד, הלביש אותו בחגורת נפץ "דמה" ונתן לו מספר טלפון דמיוני, שלח אותו מאיזור זוותא לאיזור טול-כרם, וביקש ממנו כי יתקשר אליו בעת הגעתו לאיזור טול-כרם. סעיד לבש את חגורת הנפץ והחל בדרכו לטול-כרם. הנאשם, שמצא שסעיד איתן בדעתו, ביקש ממנו לחזור, באמתלה כי מועד הפיגוע השתנה בשל מחסומי צבא בדרך. סעיד כעס על הנאשם, והלה ביקש ממנו כי יהיה מוכן לבצע את הפיגוע בכל עת.

4. בהתאם, פנה הנאשם למחמוד א-טיטי וסיפר לו כי סעיד מוכן לביצוע הפיגוע, והלה ביקש מהנאשם כי יפגישו עם סעיד.

5. במהלך אותה תקופה, פנה אחמד טאלב מוצטפא ברגותי (להלן – **אחמד**) אל נאצר עוויס וביקש ממנו כי ישלח אליו אדם המוכן לבצע פיגוע התאבדות. אחמד מסר לנאצר עוויס כי הוא עצמו ידאג להכניס את המחבל המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.

6. הנאשם הביא את סעיד לביתו של מחמוד א-טיטי, ובביתו של מחמוד נכח אדם בשם יאסר אבו בקר ואחר בשם מאג'ד אלמצרי. מחמוד ומאג'ד צילמו את סעיד, ויאסר כתב את צוואתו של סעיד. סעיד הצטלם כשהוא מחזיק עליו רובה מסוג M – 16, ספר קוראן, ומקריא את צוואתו.

7. לאחר-מכן, לקח הנאשם את סעיד למשפחתו, שם נפרד מהם בלי להודיע להם על כוונותיו להתאבד.

8. לאחר-מכן ביקש הנאשם מסעיד כי ביום שלמחרת יצא לרמאללה. וביום

6

שלמחרת בשעות הבוקר, הבחין הנאשם כי סעיד יוצא לרמאללה.

9. בתאריך 22/1/02, נפגש סעיד הנ"ל עם אחמד הנ"ל ברמאללה והודיע לו כי נשלח ע"י נאצר עוויס לצורך ביצוע פיגוע התאבדות.

10. אחמד הנ"ל התקשר אל מחמד ע"י רחמאן סאלם מצלח (מכונה "אבו סטחחי") וביקש ממנו להגיע אליו. מחמד מצלח נפגש עם אחמד ועם סעיד ברמאללה. אחמד ומחמד מצלח לקחו את סעיד למספרה על מנת שיסתפר לפני ביצוע פיגוע ההתאבדות המתוכנן.

11. לאחר-מכן, התקשרו אחמד הנ"ל ומחמד מצלח אל פראס צאדק מחמד עיאנס (מכונה "חיטאווי") וביקשו ממנו להסיע מחבל מתאבד, בהתכוונם לסעיד, מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע שם פיגוע התאבדות ויגרום למותם של אזרחים ישראליים רבים ככל האפשר.

12. פראס עיאנס הגיע לרמאללה ביחד עם מחמד סאמי אברהים עבדאללה (להלן – **מחמד עבדאללה**), וזאת לאחר שהאחרון הסכים להשתתף בהסעת המחבל המתאבד מרמאללה לירושלים. פראס עיאנס הגיע לפגישה ברכב איסוזו טנדר עם לוחיות רישוי ישראליות.

13. לפי הוראתו של אחמד הנ"ל, נסעו פראס עיאנס ומחמד עבדאללה ברכב האיסוזו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

14. מחמד עבדאללה ופראס עיאנס נסעו מרמאללה דרך "ראפאת" והגיעו לאיזור התעשייה עטרות; שם חזרו השניים לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה רמה, שם הם פנו ימינה ונסעו לצומת אדם. בצומת אדם השניים פנו ימינה עד צומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת הגבעה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. מחמד עבדאללה ופראס עיאנס ראו כי בדרך שבה נסעו ניתן להוביל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

15. מחמד מצלח, על פי הוראתו של אחמד, הביא רובי M – 16 ו- 3 מחסניות לרובי הנ"ל מלאות בכדורים, כאשר שתי מחסניות היו מחוברות בצולבת.

16. באותו היום, נפגשו אחמד, מחמד מצלח וסעיד עם מחמד עבדאללה ופראס עיאנס באיזור המלון "סיטי אין" באלבירה. אחמד הכיר למחמד עבדאללה ולפראס עיאנס את סעיד הנ"ל.

17. אחמד הסביר למחמד עבדאללה ולפראס עיאנס כי סעיד הוא המחבל המתאבד, אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשיירה לעבר אזרחים ישראליים במטרה לגרום למותם של

7

אזרחים רבים ככל האפשר.

18. מחמד עבדאללה ופראס עיאנס הסתירו את רוסי"ר ה- M – 16 והמחסניות הנ"ל ברכב האיסוזו הנ"ל.

19. מחמד עבדאללה ופראס עיאנס הסיעו את סעיד לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתואר לעיל.

20. בירושלים, נסעו מחמד עבדאללה ופראס עיאנס לרחוב שיח' ג'ראח. שם הם הוציאו את רוסי"ר ה- M - 16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד, והמשיכו בנסיעה לכיוון רח' הנביאים. בהגיעם לצומת הרחובות שטראוס-הנביאים, השניים עצרו את רכב האיסוזו.

21. מחמד עבדאללה ופראס עיאנס אמרו לסעיד לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שיראה בו הרבה אנשים.

22. לאחר שסעיד ירד מהרכב, במקום הנ"ל, עם רוסי"ר M – 16 והתחמושת, נסעו מחמד עבדאללה ופראס עיאנס מהמקום ברכב האיסוזו, דרך שכונת "מוסררה" לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה. במקביל, ולאחר מספר דקות הגיע סעיד לרחוב יפו, כשהוא חמוש ברוסר 16 M– והתחמושת.

23. בסביבות השעה 16:20, כשהוא עומד מול בית מס' 47 ברחוב יפו או בסמוך לכך, טען סעיד את רוסי"ר M – 16 שבו החזיק, צעק "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו 27 שהיה באותה עת בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך החנויות הסמוכות בכוונה לגרום למותם של אזרחים, רבים ככל הניתן. תוך כדי כך שהוא ממשיך לירות, נמלט סעיד מהמקום לעבר החניון שנמצא ברחוב הרב קוק. שם החליף סעיד מחסניות והמשיך לירות לעבר האזרחים בכוונה לגרום למותם. סעיד ירה ברוסי"ר M – 16, שבו החזיק מעל ל- 38 כדורים. סעיד המשיך לירות לעבר האזרחים עד שנהרג ע"י האזרחים והשוטרים שהגיעו למקום.

24. במעשיו המתוארים לעיל, גרם הנאשם בכוונה למותה של אורה (סבטלנה) סנדלר ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו ע"י סעיד הנ"ל.

**פרט שביעי**: (פ"א 502/02 ציון)

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7-(ג) לצו בדבר הוראות ביטחון (יו"ש) (מסי 378), תשי"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מסי 225), תשכ"ח- 1968.

**פרטי העבירה**: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 22/1/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה;

8

דהיינו, במעשיו של הנאשם המתוארים בפרט האישום הקודם נפטרה שרה המבורגר ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו ע"י סעיד הנ"ל.

**פרט שמיני**: (פ"א 502/02 ציון)

**מהות העבירה**: ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7-(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 20-19, 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה**: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 22/1/02 או בסמוך לכך, היה שותף לניסיון גרימת מותם של אחרים בכוונה.

דהיינו, כתוצאה מהפיגוע המתואר בפרט האישום הקודם, ניסה הנאשם לגרום למותם של אחרים. כתוצאה מהפיגוע נפצעו מעל 45 אזרחים שהיו במקום, ברמות פציעה קלות וקשות.

**פרט תשיעי**: (פ"א 4258/02 ירקון)

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7-(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה**: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. במועד הנ"ל פנה אל הנאשם אבראהים חסונה והודיע לו על רצונו לבצע פיגוע התאבדות. הנאשם במטרה לבחון את כנות כוונותיו של אבראהים חסונה שלח אותו עם חגורת נפץ "דמה", לקח אותו לאיזור זוותא, מסר לו מספר טלפון, ואמר לו לכשיגיע לאיזור טול-כרם שיתקשר ויודיע לו.

2. לאחר שוידא הנאשם את כנות כוונות אברהים, ביקשו לחזור ואמר לו כי מועד הפיגוע נדחה. הנאשם לקח את אבראהים חסונה לביתו של מחמוד א-טיטי, שם צילמו אותו במצלמת וידאו. אבראהים חסונה הקריא צוואה שבה אמר כי הפיגוע הוא נקמה על מותם של מחמד אלקאסם וראאד אלכרמי.

3. באותה תקופה יצר אחמד טאלב מוצטפא ברגותי (להלן – אחמד) קשר טלפוני עם נאצר מחמוד עויס, ובמהלך השיחה הודיע נאצר עויס לאחמד הנ"ל כי הוא שולח אליו מחבל מתאבד נוסף על מנת שאחמד ישלח אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי.

4. הנאשם לקח את אבראהים חסונה למקום שבו נהג ללון באיזור אלמחיפיה. ביום שלמחרת, בתאריך 4/3/02 שלח אותו לרמאללה, מסר לו מספר טלפון, וביקש ממנו כי יתקשר אליו לכשיגיע לרמאללה. אבראהים חסונה עשה כן, כשהגיע לרמאללה.

P 5: 225

9

5. אבראהים חסונה יצר קשר עם אחמד הנ"ל ואמר לו כי הגיע לרמאללה עפ"י הוראתו של נאצר עוויס וכי הוא המחבל המתאבד לצורך ביצוע פיגוע הירי המתוכנן.

6. אבראהים חסונה עלה לרכב, אשר בו נהג מאזן אלקאדי ולידו ישב מוראד עגילוני, והשלושה נסעו לכיוון תל-אביב על מנת לבצע שם את פיגוע ההתאבדות המתוכנן.

7. באותו הלילה, לאחר שמאזן אלקאדי, מוראד עגילוני ואבראהים חסונה הגיעו לתל-אביב, בסמוך לגשר מעריב שבדרך פתח-תקווה, הראה מוראד עגילוני לאבראהים חסונה מקום הומה אדם והנחה אותו לבצע שם את הפיגוע המתוכנן.

8. אבראהים חסונה הוציא רוס"ר 16 – M, מחסניות ורימוני יד, שהיו מוסתרים בדלת של הרכב.

9. בסמוך לשעה 2:15, בתאריך 5/3/02 או במועד הסמוך לכך, ירד אבראהים חסונה מן הרכב, כשהוא חמוש ברוס"ר 16 - M, רימוני יד, וסכין קומנדו, בסמוך למסעדת "סי-פוד מרקט" (להלן – **המסעדה**) על מנת שיבצע את הפיגוע המתוכנן. במקביל, נסעו מוראד עגילוני ומאזן אלקאדי ברכב מהמקום לכיוון ירושלים.

10. אבראהים חסונה התקרב אל המסעדה ופתח באש אוטומטית ברוס"ר 16 – M לעבר יושבי המסעדה ועוברי האורח בדרך פתח-תקווה בכוונה לגרום למותם.

11. לאחר-מכן, השליך אבראהים חסונה את שני רימוני היד לעבר המסעדה בכוונה לגרום למותם של יושבי המסעדה ועוברי אורח, אך רימוני היד לא התפוצצו.

12. לאחר שרוס"ר ה- 16 – M, אשר בו החזיק אבראהים חסונה הפסיק לירות עקב מעצור, הוציא אבראהים סכין הקומנדו שהחזיק והחל לדקור אזרחים ישראליים שהיו במקום בכוונה לגרום למותם.

13. למקום האמור הגיע השוטר רס"ר סלים ברכאת ז"ל, אשר הסתער לעבר אבראהים חסונה והשתלט עליו. רס"ר סלים ברכאת ז"ל הספיק להודיע למפקדיו על ההשתלטות על המחבל.

14. בשלב זה, דקר אבראהים חסונה באמצעות סכין הקומנדו הנ"ל את רס"ר סלים ברכאת ז"ל בצווארו בכוונה לגרום למותו. כתוצאה מהדקירה, נפטר רס"ר סלים ברכאת ז"ל במקום.

15. במעשיו המתוארים לעיל, הנאשם הנ"ל, גרם בכוונה למותו של **רס"ר סלים ברכאת ז"ל**.

10

**פרט עשירי:** (פ"א 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה.

דהיינו, במעשיו המתוארים בפרט האישום הקודם של הנאשם, נפטר יוסף הבי ז"ל, אשר נדקר על-ידי אבראהים חסונה בבית החזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

**פרט אחד-עשר:** (פ"א 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה.

דהיינו, במעשיו המתוארים בפרט האישום הקודם של הנאשם, נפטר אליהו דהן ז"ל, אשר נדקר על-ידי אבראהים חסונה בבית החזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

**פרט שנים-עשר:** (פ"א 4258/02 ירקון)

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לניסיון גרימת מותם של אחרים בכוונה.

דהיינו, הנאשם הנ"ל, במעשיו המתוארים בפרט האישום הקודם, ניסה לגרום למותם של אזרחים רבים ככל האפשר.

כתוצאה מהיריות שנורו ע"י אבראהים חסונה נפצעו עשרות אזרחים ישראליים בדרגות פציעה קלות וקשות.

**פרט שלושה-עשר:**

**מהות העבירה:** החזקת אמל"ח, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך חודש מרץ '02 או בסמוך לכך, החזיק ברשותו כלי ירייה, תחמושת, רימון יד, כלי או חפץ או דבר המתוכנן או המסוגל לגרום מוות

או חבלה חמורה, מבלי שהיתה ברשותו תעודת היתר שהוענקה ע"י מפקד צבאי או מטעמו;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, קיבל מהאחראי על הביטחון הימי בשכב עצאם בלידי, 6 מחסניות לרובה קלצ'ניקוב, 30 נפצים למטעני חבלה, 2 קייג אבק שריפה, מטול רימונים.

הנאשם קיבל את האמור לעיל, בתדירות של שלוש פעמים בחודש.

### פרט ארבעה-עשר:

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א), לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל-1970, וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך חודש אפריל 02' או בסמוך לכך, ניסה ביחד עם אחרים לגרום למותם של אחרים בכוונה, דהיינו:

1. במועד הנ"ל, הנאשם ביחד עם פעילי כתאאב "שוהדאא אלאקצא", כאמל חיטיב, מחמוד א-טיטי, איאד חמדאן, אחמד סוואלמה, ומחמוד א-טיטי ירה לעבר כוחות צה"ל בעת כניסתם למחנה בלאטה.

2. הנאשם וחבריו הנ"ל, שציפו לכניסת כוחות צה"ל למחנה, הניחו מטעני חבלה רבים בכניסה למחנה. בעת כניסת כוחות צה"ל, הנאשם וחברי חולייתו הפעילו את המטענים נגד כוחות הצבא, וירו לעברם באמצעות כלי נשק.

3. הנאשם וחברי חולייתו, פעלו כאמור במשך שמונה ימים.

4. אחרי יציאת הצבא מהמחנה החל הנאשם וחברי חולייתו להכין מספר רב של מטעני חבלה, כדי להשתמש בהם נגד כוחות הצבא במידה ויכנסו שנית למחנה.

### פרט חמישה-עשר: (פ.א. 4685/02 תחנת פ"ת)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל-1970, וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאיזור, בתאריך 27.5.02, ביחד עם אחרים גרם למותו של אדם אחר בכוונה, דהיינו:

1. הנאשם הנ"ל, בסמוך למועד הנ"ל, פנה אליו ג'יהאד אבראהים א-טיטי (להלן – **ג'יהאד**), וביקש ממנו כי יכין אותו לביצוע פיגוע התאבדות בבית ג'יהוד, סיפר לנאשם כי הוא עבד בקניון בפ"ת, ומכיר את המקום היטב.

2. הנאשם סיפר לאבו רמוש וניהאד צבאח כי ג'יהאד ירצה לבצע פיגוע התאבדות כנקמה על מותו של מחמוד א-טיטי.

12

3. יום לפני ביצוע הפיגוע, הביא הנאשם, ביחד עם ניהאד צבאח את ג'יהאד לביתו במחנה בלאטה, שם צילמו אותו במצלמת וידאו כשהוא מחזיק ברובה מסוג 16 – M.

4. אחרי שהנאשם סיים לצלם את ג'יהאד, ביקש מודאח עלי אמין בזרה (להלן – **ודאח**) כי יסיעם הוא וג'יהאד לרפידיה. ודאח הסכים והסיע אותם לבית קפה אלמדיאפה ברפידיה. כשהגיעו למקום, התקשר הנאשם לבלמ"ז והודיע לו כי הגיעו לבית הקפה.

ודאח התקשר לניהאד צובאח ודיאא אלתכרורי ובירר עימם אם העבירו לראאד אלאשקר (להלן - **ראאד**) חגורת נפץ

כעבור כחמש דקות הגיע ראאד נושא עליו חבילה בצבע שחור, ושהכילה חגורת נפץ לביצוע הפיגוע. ראאד העביר לנאשם את החבילה. הנאשם העביר את החבילה לודאח, וביקש מראאד כי יצטרף אל המונית שנוסע בה ג'יהאד. הנאשם ביקש מג'יהאד כי יסע אחרי המונית שנוסע בה ג'יהאד.

5. ודאח נסע אחרי המונית שנסע בה ג'יהאד, וכשהגיעו ליישוב עזון אלעתמה. בסמוך לשעה 13:30 העביר ודאח את החבילה לג'יהאד וראאד. ודאח התקשר לנאשם ועידכן אותו כי העביר את החבילה כאמור. לאחר-מכן חזר ודאח אל שכם.

6. לאחר שהגיע ג'יהאד עם ראאד לכפר קאסם ועלה על מונית, התקשר ראאד אל הנאשם ומסר לו כי ג'יהאד עלה למונית בדרכו לביצוע הפיגוע.

7. סמוך לשעה 18:30 הגיע ג'יהאד הנ"ל לקניון אם-המושבות בפ"ת, כאמור בסמוך למקום שבו הוא עבד בעבר, כשעליו חגורת הנפץ ג'יהאד התקרב אל מקום הומה אדם בסמוך לקונדיטוריה ברח' ראשל"צ 1, ופוצץ את חגורת הנפץ שהייתה עליו, בכוונה לגרום למותם של בני אדם אחרים.

8. כתוצאה מביצוע הפיגוע נפטרה **רות פלד ז"ל**.

**פרט שישה-עשר**: (פ.א. 4685/02 תחנת פ"ת)

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 2, ו- 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאיזור, בתאריך 27/5/02, ביחד עם אחרים גרם למותו של אדם אחר בכוונה;

דהיינו, כתוצאה מפיגוע ההתאבדות המתואר בפרט האישום הקודם שבוצע ע"י ג'יהאד, נפטרה התינוקת **סיני קינן ז"ל**.

13

**פרט שבעה-עשר**: (פ.א. 4685/02 תחנת פ"ת)

**מהות העבירה**: ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 2, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה**: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 27/5/02, ניסה ביחד עם אחרים לגרום למותם של אחרים בכוונה;

דהיינו, בנסיבות המתוארות בפרט האישום הקודם, ניסה הנאשם לגרום למותם של אחרים. כתוצאה מביצוע הפיגוע ע"י נייהאד הנ"ל, נפצעו עשרות אזרחים בדרגות פציעה חמורות וקלות.

**פרט שמונה עשר**:

**מהות העבירה**: קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968 ; וסעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970.

**פרטי העבירה**: הנאשם הנ"ל, באזור, במהלך חודש מאי '02 או בסמוך לכך, קשר קשר עם אדם אחר לגרום למותו של אחר בכוונה;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, נפגש עם אבו רמוש שאמר לו כי הינו מתכנן לבצע פיגוע התאבדות ביישוב הישראלי שבי שומרון, ולשם כך מתכנן לשלוח את "מוהנד אבו זירי" לבצע את הפיגוע.

הנאשם הביע את הסכמתו לתוכניתו של אבו רמוש.

הנאשם מסר לאבו רמוש שלוש מחסניות לרובה מסוג קלצ'ניקוב, על מנת שישמשו בביצוע הפיגוע.

**פרט תשעה-עשר**:

**מהות העבירה**: ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה**: הנאשם הנ"ל, באיזור, במספר רב של הזדמנויות ניסה ביחד עם אחרים לגרום למותם של אחרים בכוונה, דהיינו:

1. בתחילת שנת '01 או בסמוך לכך, יצא הנאשם עם חברי חולייתו, באסל אלביזרה, מהדי אבו גזאלה, סאאד ג'ווברה, כמאל יוסף שהאב, כשהיו חמושים ברובים מסוג 16 - M, והנאשם החזיק ברשותו רובה מסוג קלצ'ניקוב, וביחד ירו לעבר ג'יפ צבאי שהיה בסמוך לצומת צרה. הנאשם ירה כ- 16 כדורים לעבר הג'יפ הצבאי, וחבריו ירו ברובים שהיו ברשותם.

אחרי הירי נמלטו הנאשם וחברי חולייתו למחנה בית-אלמא.

14

2. כעבור מספר ימים, מהאמור לעיל, יצא הנאשם, **במספר הזדמנויות**, יחד עם חברי חולייתו לכיוון נקודה צבאית שנמצאת בסמוך להר גריזים, כשהיו חמושים ברובים, והנאשם היה חמוש ברובה מסוג M – 16. הנאשם ירה יחד עם חבריו לעבר הנקודה הצבאית.

3. לאחר תחילת שנת 02', ירה הנאשם שהיה חמוש ברובה מסוג קלצ'ניקוב, ביחד עם מחמד אלקאסם, כמאל שהאב, ומואיד ג'מיל לעבר נקודה צבאית שנמצאת בין תל ובורין.

פרט עשרים:

מהות העבירה: ניסיון גרימת מוות בכוונה. עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968;

פרטי העבירה: הנאשם הנ"ל, באזור, במספר רב של הזדמנויות, ניסה ביחד עם אחרים לגרום למותם של אחרים, דהיינו:

1. בתחילת שנת 01' או בסמוך לכך, הנאשם הנ"ל, שהיה חמוש ברובה מסוג קלצ'ניקוב, ביחד עם סאאד ג'ואברה וכמאל יוסף שהאב שהיו חמושים ברובים מסוג M – 16, הניחו שני מטעני חבלה שאליהם חיברו סוללה וחוטים באורך 300 מטרים. באותו יום בשעות הערב עבר ג'יפ צבאי על הכביש המוביל לישוב ברכה, וכמאל הנ"ל הפעיל את שני המטענים, וכתוצאה מכך התפוצצו שני מטעני החבלה.

לאחר-מכן נמלטו הנאשם וחבריו לשכם.

2. כעבור שבוע מהאמור לעיל, הניח הנאשם ביחד עם חברי חולייתו שהיו חמושים בכלי יריה, מטען חבלה במשקל 50 ק"ג, בצומת איבא. הנאשם וחבריו הסתירו את המטענים בעשבייה. אל מטען החבלה חיברו הנאשם וחבריו חוטים באורך 200 מטר.

משעבר במקום ג'יפ צבאי וטנק, ופוצץ כמאל את מטען החבלה, לאחר שעצר הטנק.

3. במהלך חודש אוקטובר 01' או בסמוך לכך, הניח הנאשם ביחד עם חברי חולייתו, אחמד סוואלמה, כאמל אלחיטיב, מחמד קאסם, איאד חמדאן, שני מטעני חבלה על הכביש העוקף שמשקיף על האיזור "עין אלמאנו" בזוואתא. כשהבחינו בג'יפ צבאי וטנק עובר במקום, פוצצו הנאשם וחבריו את המטענים.

4. במהלך חודש אוקטובר 01' או בסמוך לכך, הניחו הנאשם יחד עם חברי חולייתו מטען חבלה על הכביש העוקף שמוביל לעצירה אלשמאליה כשהבחינו חיילי צה"ל במטען החבלה ירו לעברם. וכעבור 20 דקות הפעיל הנאשם את מטען החבלה, שהתפוצץ כתוצאה מכך.

15

לאחר פיצוץ מטען החבלה, נמלטו הנאשם וחברי חולייתו למחנה בלאטה.

**פרט עשרים ואחד:**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968 ; וסעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במספר הזדמנויות, קשר קשר עם אחרים לגרום למותו של אחר בכוונה, דהיינו:

1. במהלך התקופה שלאחר חודש מרץ 02' או בסמוך לכך, ביקש הנאשם מעלי זאהר אסעד אלחלו (להלן – **עלי**) כי יפנה למוחמד בורהאן עבדו עבאללה (להלן – **מוחמד בורהאן**) ומוראד סאמי אחמד ג'אנם (להלן – **מוראד**) ויבקש מהם כי יאתרו אדם המוכן לבצע פיגוע התאבדות ביישוב הישראלי קדומים. עלי פנה למוחמד בורהאן ומוראד והודיע להם אודות תוכניתו של הנאשם, הם הסכימו לבקשתו, ואמרו לו כי ינסו לאתר אדם המוכן לבצע את הפיגוע.

מוחמד בורהאן ביצע תצפית על היישוב הנ"ל, והודיע לנאשם כי אין נקודות תורפה ביישוב הנ"ל, ותהיה אפשרות להביא את האדם המתאבד רק למרחק של 100 מטר מהיישוב.

הנאשם, אמר למוחמד בורהאן כי המרחק הנ"ל אינו מתאים, ומשכך הפיגוע לא יצא אל הפועל.

2. במהלך שנת 02' או בסמוך לכך, הנאשם הנ"ל, תיכנן עם מחמוד א-טיטי לבצע פיגוע במחנה חווארה. מחמוד א-טיטי אמר לנאשם כי ישנם שני אנשים: א. אברהים אבו זור  ב. מוחמד טיטי שמוכנים לבצע את פיגוע ההתאבדות.

התכנון היה שאחד המפגעים יסע בג'יפ בצבע לבן שנראה כמו רכב של הצלב האדום, והרכב הזה ישמש כמכונית תופת. כאשר המפגע הנוהג בג'יפ יגיע למחסום חווארה, יפוצץ את הרכב במחסום. לאחר פיצוץ הרכב, שתי חוליות של מחבלים כשהם חמושים ברובי קלצ'ניקוב ורימוני יד יחדרו למחנה משתי נקודות שונות: 1. מכיוון עוורתא 2. מכיוון רוג'יב.

הנאשם ואבו רמוש ביצעו תצפיות על גזרת המחנה. אולם, פיגוע זה לא יצא אל הפועל.

נאג'י עאמר, סגן
תובע צבאי

רשימת עדי התביעה:

פ"א 4968/02:

1. 911305 רס"מ ג'מאל שקור (גובה הודאת הנאשם מיום 5/6/02).
2. 927384 רס"מ מטאנס חדאד (גובה הודאת הנאשם מימים 10/6/02 ו- 11/6/02).
3. 100049 רס"ר עאטף עווידה (גובה הודאת הנאשם מיום 9/7/02 ומיום 11/7/02).
4. 928309 רס"מ האדי חלבי (גובה הודאת הנאשם מיום 20/8/02).
5. 93972 רס"ר פואד מעדי (עורך מסדר זיהוי לעדים: מוראד ג'אנם, עלי אלחלו, ועבדאללה מחמוד).
6. 905631719 מוראד סאמי אחמד ג'אנם (עצור בת.ת. 773/02).
7. 911758365 עלי זאהר אסעד אלחלו (עצור בת.ת. 775/02).
8. 907129670 מוחמד בורהאן עבדו עבדאללה (עצור בת.ת. 774/02).
9. 907569024 ודאח עלי אמין בזרה (עצור בת.ת. 906/02).
10. 979469954 מוחמד סאמי אברהים עבדאללה (עצור).
11. 902845643 מחמד ע"יא רחמאן סאלם מצלח (עצור).
12. 994466860 אחמד טאלב ברגותי (עצור ת.ת. 444/02 בית-אל).
13. 81099095 מוראד נזמי –רזק עג'לוני (עצור).
14. 907898134 מאזן מחמוד עומר אלקאדי (עצור).
15. 900358664 נאצר מחמוד עויס (עצור).
16. פרוטוקולי הארכת מעצר מימים: 17/6/02 ו- 10/7/02 ו- 12/8/02.

פ.א. 502/02 ציון

17. 942276 פקד דרור אסרף (מגיש דו"ח זכ"ד, תפיסה וסימון).
18. רס"ב יגאל דניאל (מגיש דו"ח תפיסה וסימון).
19. צו'ער צביקה רייזנר (מגיש דו"ח זכ"ד, תפיסה וסימון + תצלומים).
20. 1043413 רס"ל ציון טבדי (מגיש דו"ח פעולה – מציאת צולבת).
21. 47720 רס"ב אשר לוי (מגיש דו"ח תפיס וסימון).
22. 303647598 בני עזריאל (עד ראיה – רדף אחרי המחבל).
23. 739037 עמאד ענידת (עד ראיה).
24. 1042043 שי כהן (עד ראיה).
25. 33121070 נועם גבאי (עד ראיה).
26. 1049188 חן דנעים (עד ראיה).
27. 309130540 גנאדי (גיא) מליק (עד ראיה).
28. 761775 אלון חלפון (עד ראיה).
29. 996140 אבי בן-עמי (עד ראיה).
30. 33401019 חיים צאלח (עד ראיה).
31. 309086171 בוריס אבטיסיאן (עד ראיה).
32. 310101647 יקותיאל-ישראל עלוש (עד ראיה).
33. 6246911 משה ממן (עד ראיה).
34. 51270353 טובה יצחקי (עד ראיה).

35. 4330150 מזל יצחקי (עד ראיה).
36. 640712770 ירון אברהמי (עד ראיה).
37. 55611230 פנחס בנטורה (עד ראיה).
38. 39381249 כפיר קדם (עד ראיה).
39. 307750984 יעקב סנדלר (זיהוי גופתה של אורה (סבטלנה) סנדלר ז"ל).
40. ד"ר דפנה וילנה, מ.ר. 29234, ביה"ח הדסה עין-כרם, ירושלים (מגישה הודעת פטירה של אורה (סבטלנה) סנדלר ז"ל).
41. ד"ר ילנה וסלוב, ביה"ח הדסה עין-כרם, ירושלים (מגישה הודעת פטירה של שרה המבורגר ז"ל).

### תיק פ.א. 5258/02

42. 55594097 אבשלום פרידמן.
43. אפי ימין, זיהוי ירקון, משטרת ישראל.
44. פקד מירוד דניאל, קצין אח"ק ירקון.
45. שמעון רחמים, צח"מ ירקון.
46. 25714502 יעקב עבד (עד ראיה).
47. 321940751 איגור קוטביצקי (עד ראיה).
48. 304615230 עדי מוריז (מאבטח במסעדה).
49. 49170392 יוני חייל (עד ראיה).
50. 27293034 אירית רחמים (עד ראיה).
51. 25377029 לימור פורמה (עד ראיה).
52. 22280 שלמה דוד (נפצע בפיגוע).
53. 9802115980 שרון יפרח (עד ראיה).
54. 29022902 יפתח קריתי (עד ראיה).
55. 28804599 אליהו צדקה (עד ראיה).
56. 309998540 איוונה ריכטמן (נפצעה בפיגוע).
57. 54188644 יעקב הורוביץ (עד ראיה).
58. 24315632 רוית אבישג-יוספי (עדת ראיה).
59. 69828374 וויליאם חזן (עד ראיה).
60. 61247623 עלא מחמוד (עד ראיה).
61. 35704568 באסם אבו לחאם (עד ראיה).
62. 49824865 בהאא אבו לחאם (עד ראיה).
63. 61247623 על מתאמיד (עד ראיה).
64. 33876954 יומי קונטנטה (עד ראיה).
65. 56230584 אבינועם יוסף (עד ראיה).
66. 311660328 איגור פוסטייננסקי (עד ראיה).
67. 2234597 דניאל קראדי (עד ראיה).
68. 5452229 מאיר הבי (זיהוי גופתו של יוסף הבי ז"ל).
69. 31877665 נעם אספי (נפצע בפיגוע).
70. 29416740 יוסי אזוז (נפצע בפיגוע).

18

71. 43401140 מיכאל גרובר (נפצע בפיגוע).
72. פרופ' יהודה היס, המכון הלאומי לרפואה משפטית, תל-אביב.
73. רשומות בתי חולים – רשומה מוסדית.

**פ.א. 4685/02 תחנת פ"ת**

74. 58634114 נאוה סרי (פרטים בתביעה).
75. 59760520 יגאל כהן (פרטים בתביעה).
76. 23880032 אבי פורת (פרטים בתביעה).
77. 58330671 פולק מנדי (פרטים בתביעה).
78. 52079019 לוי דוד (פרטים בתביעה).
79. 945931 שושני ארנון (מעבדת חבלה – טופס לוואי מוצגים).
80. חוו"ד מעבדה (תועבר בהמשך).
81. פרופ' י. היס המכון לרפואה משפטית (חוו"ד מומחה – גופת אלמוני).
82. פרופ' י. היס המכון לרפואה משפטית (חוו"ד מומחה – רות פלד ז"ל).
83. פרופ' י. היס המכון לרפואה משפטית (חוו"ד מומחה – סיני קינן ז"ל).
84. 1024769 רס"ל רזניק יבגני (דו"ח פעולה).
85. 7122948 רש"ט ישע האטי (דו"ח פעולה).
86. 310905773 פאשייב יורי (מזכר- פצוע קשה).
87. 1082544 רש"ט כפיר הדסי (דו"ח פעולה).
88. 57795221 יגאל שחר (פרטים בתביעה).
89. 27826866 חביבי חנה (פרטים בתביעה).
90. 43259043 ויולט מסלוש (פרטים בתביעה).
91. 41862426 יעל אברהם (פרטים בתביעה).
92. בצלאל מסלוש (פרטים בתביעה).
93. 28932382 מנחם מסלוש (פרטים בתביעה).
94. 53392171 סקולניק נתנאל (פרטים בתביעה).
95. 5922307 ורד בראל (פרטים בתביעה).
96. 39170196 בעדני ניב (פרטים בתביעה).
97. אושרי מזרחי (פרטים בתביעה).
98. 22313597 איוה רחמים (פרטים בתביעה).
99. 28984615 בועז לביא (פרטים בתביעה).
100. 38717227 ירון מגן (פרטים בתביעה).
101. 52079019 דוד לוי (פרטים בתביעה).
102. 58330671 מנדי פולק (פרטים בתביעה).
103. 59753822 שולי רן משה (פרטים בתביעה).
104. 27406081 ליאור קינן (פרטים בתביעה).
105. 23730691 אורלי חכם (פרטים בתביעה).
106. 904631 רס"מ שלומי קורצברט (דו"ח ביקור בזירה – תפיסת מוצגים + עורך דו"ח תצלומים).