# EXHIBIT A.367



[Line numbering in Hebrew original]

Date: March 10, 2003                                                         File Number: 3739/02

## Military Court
## Beit El
## Transcript

| | |
|---|---|
| Court Hearing dated March 10, 2003 | Before the Presiding Judge: Lieutenant-Colonel Netanel Benichou<br>Judge: Captain Yitzhak Ozadin<br>Judge: Captain Ben Zion Shefer |

**Defendant: Nasser Jamal Mousa Shawish Identity No. 993006188/ Prisons Service – Present**

### SENTENCE

Having weighed up all the necessary considerations in the matter, we decide, unanimously, to sentence the Defendant to 4 terms of life imprisonment, to be served cumulatively,

Reasons for the sentence will be provided as soon as possible.

Right of appeal within 30 days of the date of publication of the reasons for sentence.

**Given and notified this day, March 10, 2003, in public and in the presence of the parties.**

_____     _____     _____
        Judge                              Presiding Judge                         Judge

5

[Stamp] P 5: 313

[Line numbering in Hebrew original]

Date: 29 Adar II, 5763  
April 2, 2003

File Number: 3739/02

## Military Court
## Beit El
## Transcript

| Court Hearing dated April 2, 2003 | Before the Presiding Judge: Lieutenant-Colonel Netanel Benichou<br>Judge: Captain Yitzhak Ozadin<br>Judge: Captain Ben Zion Shefer |
|---|---|

**Defendant: Nasser Jamal Mousa Shawish Identity No. 993006188/ Prisons Service – Present**

# REASONS FOR SENTENCE

On March 21, 2002, a suicide terrorist set off a powerful explosive device carried on his person, when he was standing in a crowd of people in King George Street, Jerusalem. As a result of the explosion, the late Tzipora, who was in her fourth month of pregnancy, and Gadi Shemesh, and the late Yitzhak Cohen, were killed. 81 other civilians were also wounded, and extensive damage to property was caused.

Behind this terrorist attack stood a group of terrorists, members of the al-Aqsa Martyrs Brigades, among them the Defendant, who played a central role in preparing the terrorist, training him, equipping him with the explosive device, and transporting him to the scene of the terrorist attack as set out in the indictment.

This was not the only action by the Defendant, who served as coordinator of military activities for his organization in the Jenin, Tulqarm, Nablus and Ramallah area, and who was involved in the planning and execution of the suicide terrorist attack on January 25, 2002, in Neve Shaanan Street in Tel Aviv, in which 28 people were wounded; in another suicide terrorist attack planned for Jaffa, but which was prevented due to the alertness of the security forces, who stopped the vehicle carrying the suicide terrorist, who detonated the explosive device carried on her person, causing the wounding of three police officers, one of them seriously and in an attempt to infiltrate into the State of Israel another suicide terrorist, who was killed by the security forces when he tried to pass the A-Ram checkpoint on March 10, 2002.

[Stamp] P 5: 314

2

The Defendant was also convicted of carrying out dozens of shooting attacks and placing explosive devices against Israel Defense Forces soldiers and Israeli civilians, from 2000 on.

The Military Prosecutor asked that we impose on the Defendant four cumulative terms of life imprisonment, three for the murders of the late [Gadi and Tzipora] Shemesh, and the late Mr. Cohen, and the fourth in respect of the additional offenses of which the Defendant was convicted. The Prosecutor emphasized that it was only thus that an appropriate expression could be given to the value of the sanctity of life.

The Defendant, for his part, did not express remorse, or argue for any reduction in penalty. Rather, he sought to submit, as he put it, and indictment against the "occupation" which was, in his view, the sole entity responsible for his actions. Moreover, the Defendant [?] also argued that if the Court were to release him today, he would first seek out his weapons and not his children.

We will be brief and say that, although we allowed the Defendant to make his arguments at length, and without interruption, we have not found anything new in them, but rather a wearying repetition of the same arguments aimed at cleansing the vermin of terrorism. Arguments which, even if we were to hear them time and again, they would not

1

[Stamp] P 5: 314 [continued]

[Line numbering in Hebrew original]

Date: 29 Adar II, 5763  
April 2, 2003

File Number: 3739/02

reduce the horror that is awakened by such a contemptuous attitude toward innocent human life.

The Defendant relied extensively in his statements on international law, and so, although this is known to anyone with an ounce of education, we would emphasize that the principal purpose of those international conventions tow which the Defendant referred, and particularly those signed following the Second World War, was to remove civilians from the circle of blood, by creating a clear distinction between military action aimed at striking at enemy soldiers, which was recognized by international law, and harming civilians, which was absolutely forbidden.

Hence it is clear how cynical it is for the Defendant, who did not disdain to attack a pregnant woman, to rely on those international conventions.

Let us therefore say, clearly and unequivocally, that by his cruel deeds, the Defendant has removed himself from human society, and it would be doing him a kindness if it were to limit itself to throwing him behind bars.

We are living in difficult times. Day after day there rise up against us people such as the Defendant, who lack any semblance of humanity, who have made attacking human life into a supreme value, and it seems that, apart from this crazed pursuit of blood, they do not take into consideration any basic human values at all.

Furthermore, we cannot conceal our grief as to the inability of this Court, in coming to sentence the Defendant -- whatever the sentence we impose upon him -- to return the victims to life, and the wounded to their former state of health, which has been lost. At the same time, we wish, through our sentence, to express our deep revulsion, by imposing on the Defendant a penalty that should also bear with it a touch of eternity and finality, a sample, in miniature, of the suffering and the cruel fate that was decreed for the victims and their families, as a result of the Defendant's actions.

We also find it fitting to accept the motion of the Military Prosecution, and to impose on the Defendant a further term of life imprisonment, in respect of the additional offenses of which he has been convicted, which, it should be remembered, caused the willing deaths of two members of his own people, and the wounding of dozens of civilians. The Defendant's determination to strike at human life, time and again, is worthy of a fitting penal response, which must express our will to permanently prevent the danger inherent in the Defendant.

[Stamp] P 5: 315

Of particular severity is the fact that that Defendant operated in an organized framework, whose whole purpose was to strike at human life, and whose roots lay in an apparatus promoted by the Palestinian Authority, with which the Defendant was associated.

Finally, although our sentence does not do justice with the murder victims and the wounded, we have decided to sentence the Defendant to 4 life terms of imprisonment, to be served cumulatively.

Court Secretariat to transmit a copy of these reasons to the parties.

**Right of appeal within 30 days.**

**Given this day, April 2, 2003, in chambers.**

| Judge | Presiding Judge | Judge |
|---|---|---|

2

[Stamp] P 5: 315 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

        Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

        Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 313-315.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 313-315.

                                                    _____
                                                    Rina Ne'eman

ss.: New Jersey


On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
ID # 2332704


תאריך: 10/03/03      תיק מס': 3739/02

## בית המשפט הצבאי
## בית - אל
### - פרוטוקול -

דיון בית משפט מיום: 10/03/2003    בפני אב"ד: סא"ל נתנאל בנישו
שופט: סרן יצחק אוזדין
שופט: סרן בן ציון שפר

נאשם: נאצר ג'מאל מוסא שוויש    ת.ז.: 993006188 / שב"ס - נוכח

### גזר - דין

לאחר ששקלנו את כל השיקולים הצריכים לעניין, אנו מחליטים, פה אחד, לגזור על הנאשם 4 מאסרי עולם שירוצו במצטבר.

נימוקים לגזר דין זה יינתנו בהקדם.

**זכות ערעור תוך 30 יום מיום פרסום הנימוקים.**

**ניתן והודע היום, 10/03/03, בפומבי ובמעמד הצדדים.**

| שופט | אב"ד | שופט |
|---|---|---|

5

תאריך: כ"ט אדר ב', תשס"ג  
2 אפריל, 2003

תיק מס': 3739/02

## בית המשפט הצבאי
## ב י ת - א ל
## - פ ר ו ט ו ק ו ל -

דיון בית משפט מיום: 02/04/2003

בפני האב"ד: סא"ל נתנאל בניש  
שופט: סרן בן-ציון שפר  
שופט: סרן יצחק אוזדין

נאשם: נאצר ג'מאל מוסא שוויש    ת.ז.: 993006138 / שב"ס

## נ י מ ו ק י ם ל ג ז ר - ד י ן

ביום 21/03/02 הפעיל מחבל מתאבד מטען חבלה רב עוצמה איתו נשא על גופו כשעמ" בתוך קהל אנשים ברחוב המלך חמלך גיורגי בירושלים. כתוצאה מחפיצוץ נהרגו בני הזוג צימורה, שהייתה בחודש הרביעי להריונה, יגדי שמש ז"ל ומר יצחק כהן ז"ל. אף נפצעו 81 אזרחים נוספים ונגרם נזק רב לרכוש.

מאחורי פיגוע זה עמדה קבוצה של מחבלים, חברי גדודי חללי אל אקצא, ביניהם הנאשם, אשר נטל חלק מרכזי בהכנת המחבל, הדרכתו, ציידו במטען החבלה והובלתו למקום הפיגוע כמפורט בכתב האישום.

זו לא היתה פעילותו היחידה של הנאשם, ששימש במותאם הפעילות הצבאית של ארגוני גינין, טול כרם, שכם ורמאללה. ואשר חיה מעורב בתכנון ובהוצאה לפועל של פיגוע התאבדות שבוצע ביום 25/01/02 ברחוב נווה שאנן בתל אביב, בו נפצעו 28 אנשים. בפיגוע התאבדות נוסף אשר תוכנן להתבצע ביפו אך נמנע עקב ערנותם של כוחות הבטחון, אשר עצרו את הרכב בה נסעה המחבלת המתאבדת, שהפעילה את מטען החבלה שנשאה על גופה וגרמה לפציעתם של שלושה שוטרים, אחד מהם באורח קשה, ובנסיון להחדיר למדינת ישראל מחבל מתאבד נוסף שנהרג ע"י כוחות הבטחון עת ניסה לעבור במחסום א-ראם ביום 10/03/02.

הנאשב אף הורשע בביצוע עשירות פיגועי ירי והנחת מטעני חבלה כנגד חיילי צה"ל ואזרחים ישראלים החל משנת 2000.

התובע הצבאי ביקש כי נטיל על הנאשם ארבעה מאסרי עולם מצטברים. שלושה בגין רצחתם של בני הזוג שמש ז"ל, ומר כהן ז"ל והרביעי בגין העבירות הנוספות בהן הורשע הנאשם. התובע הדגיש כי רק כך יינתן ביטוי נאות לערך קדושת החיים.

הנאשם מצידו לא הביע חרטה ולא טען כלל לחקלה בעונשו אלא ביקש להגיש, כדבריו, כתב אישום נגד "הכיבוש" אשר הוא האחראי היחיד, לדעתו, למעשיו. יתרה מזאת, הן אף טען כי אם ביהמ"ש היה משחרר אותו היום. היה מחפש תחילה את הנשק ולא את ילדיו.

נקצר ונאמר כי על אף שאפשרנו לנאשם לטעון את טענותיו באריכות וללא כל חפרעה, לא מצאנו בהן כל חידוש, אלא חזרה מייגעת על אותן טענות שנועדו להכשיר את שרץ הטירור. טענית אשר גם אם ישמעו איתן פעם אחר פעם, לא יהא

1

תאריך: כ"ט אדר ב', תשס"ג
2 אפריל, 2003

תיק מט"י: 3739/02

1. בהן להפיח מהזוועה המתעוררת לנוכח התייחסות כה מזלזלת כלפי חיי אדם חפים
2. מפשע.
3. 
4. הנאשם הרבה להסתמך בדבריו על המשפט הבינלאומי, ועל כן, על אף שהדבר ידוע
5. לכל בר בי רב, נדגיש שמטרתן העיקרית של אותן אמנות בינלאומיות אליהן הפנה
6. הנאשם, ובעיקר אלה שנחתמו לאחר מלחמת העולם השנייה, הייתה להוציא את
7. האזרחים ממעגל הדמים תוך יצירת הבחנה ברורה בין פעולה מלחמתית שנועדה
8. לפגוע בחיילי האויב, אשר זכתה להכרה על פי המשפט הבינלאומי, לבין פגיעה
9. באזרחים, אשר נפסלה מכל וכל.
10. מכאן ברור עד כמה צינית יכולה להיות הסתמכותו של הנאשם, אשר לא בחל
11. בפגיעה באשה הרה, על אותן אמנות בינלאומיות.
12. נאמר על כן, בצורה ברורה ישאינה משתמעת לשתי פנים, כי במעשיו האכזריים
13. הוציא עצמו הנאשם מכלל החברה האנושית, ואך חסד תעשה זו עמו אם תסתפק
14. בהרחקתו למאחורי סורג ובריח.
15. 
16. תקופה קשה היא התקופה בה אנו חיים. קמים עלינו מידי יום ביומו אנשים
17. כנאשם, חסרי כל צלם אנוש. אשר הפכו את הפגיעה בחיי אדם למטרתם העליונה,
18. ונראה כי מלבד ריצה סטורפת זו אחרי חדם, כלל אינם מתחשבים בערכים אנושיים
19. בסיסיים.
20. 
21. אף לא נוכל להסתיר את חחושתנו הקשה מקוצר ידו של בימ"ש זה בבואו לגזור את
22. עונשו של הנאשם. יהא העונש אשר נטיל על הנאשם אשר יהא, לא יהיה בו להשיב
23. לנרצחים את חייהם ולפצועים את בריאותם אשר אבדה. ועם זאה, ביקשנו בגזר
24. דיננו לבטא את סלידתנו העמוקה, תוך שהיטלנו על הנאשם עונש שגם הוא יחיה בו
25. נופך של נצחיות וסופיות, דוגמה, בזעיר אנפין, לסבל ולגורל האכזר שנגזר על
26. הקורבנות ועל משפחותיהם כתוצאה ממעשיו של הנאשם.
27. 
28. אף מצאנו לנכון לקבל את בקשת התביעה הצבאית ולהטיל על הנאשם מאסר עולם
29. נוסף בגין העבירות הנוספות בהן הורשע, אשר יש להזכיר גרמו למותם מרצון של
30. שניים מבני עמו ולפציעתם של עשרות אזרחים. נחישותו של הנאשם לפגוע פעם
31. אחר פעם בחיי אדם, ראויה היא לתגובה עונשית הולמת, אשר חייבת לבטא את
32. רצוננו למנוע את הסכנה הטמונה בנאשם באופן תמידי
33. 
34. חומרה מיוחדת יש לראות בעובדה כי הנאשם פעל במסגרת מאורגנת, אשר כל
35. יעודה היה לפגוע בחיי אדם ושורשיה במנגנון פרי טיפוחה של הרשות הפלשתינית,
36. אליה היה קשור הנאשם.
37. 
38. סוף דבר, ועל אף שגזר דיננו אינו עושה צדק עם הנרצחים ועם הנפגעים, החלטנו
39. להטיל על הנאשם 4 מאסרי עולם שירוצו במצטבר.
40. 
41. מזכירות ביהמ"ש תעביר העתק נימוקים אלה לצדדים.
42. 
43. **זמות ערעור תוך 30 יום.**
44. 
45. ניתן היום, 02/04/03, בלשכה.
46. 
47. 
48. 
49. שופט        אב"ד        שופט

2