# EXHIBIT A.371



PLAINTIFF'S EXHIBIT 371

Date: 9th of Kislev, 5763  
November 14, 2002

Case No.: 3739/02

## The Military Court in Beit El

### Transcript of the Hearing of a Panel Session

**Before the Honorable President of the Court: Lieutenant Colonel Nathaniel Benichou**  
**Judge: Captain Ben Zion Shefer**  
**Judge: Captain Yitzhak Ozedin**

**Prosecutor: Judicial Officer Rostislav Pesk – present**  
**Defense counsel: unrepresented**

**The Defendant: Nasser Jamal Musa Shawish, Identity No. 993006188/ Israel Prison Service – present**

**Interpreter: Staff Sergeant Kamal Zidan**  
**Stenographer: Corporal Sivan Harel**

The President of the Court opens the session and identifies the defendant.

## Course of the Hearing

Defendant: In response to the question of the Court, I still do not have a defense counsel. With respect to the case, I still do not know what to do.

**Prosecution witness No. 1 (witness No. 13 in the list of witnesses), Abed Kariem Aweis.**

**The witness is warned to say the truth.**

**Direct examination**

Prosecution: I declare before you that nothing that you say here will be used against you in the trial against you.

Witness: I understand. You have the Defendant before you; you can ask him about himself. The Defendant has been interrogated and he has confessed to everything he has done, so you can ask him.

Q: Tell the Court where you worked before you were arrested.

A: I worked at the [Palestinian] Authority.

Q: In which apparatus?

[Stamp] P 5: 320

A: In the general security service, the intelligence.

Q: Tell the Court how you got to know the Defendant, what you know about his age, his home, his workplace, his marital status.

A: He is a friend of mine and I got to know him at the Jenin Refugee Camp and since then the relationship between us began.

Q: How old his he? Where did he live before he was arrested? Where did he work?

A: I do notknow. He lived in Ramallah, in Jenin, I got to know him when he lived in Jenin, now I do not know where he lived.

Q: What do you know about his marital status?

A: I did not ask him, I do not know. I can guess that he is 20, 25 years old.

Q: I wish to refer you to your interview with the police where you said that the Defendant was aged 30, married and wanted by Israel. What can you say about that?

[Stamp] P 5: 320 [continued]

Date: 9th of Kislev, 5763　　　　　　　　　　　　　　　　　　　　　　　Case No.: 3739/02
November 14, 2002

A: The things that I said at the police [station] I cannot remember now. I do not remember how I got to know him, I am a human. I do not remember these details. I got to know him a year and a half ago at the Jenin Refugee camp, and that is all.

Q: To what organization did the Defendant belong?

A: He worked with the Islamic Jihad and recently worked with the Fatah too.

Q: Tell the Court about the role of the Defendant in the planning and in the execution of a suicide attack on King George Street in Jerusalem, an attack that occurred on March 21, 2002.

A: He and I participated together with Mohamed Hashaika, who is the suicide bomber who carried out the attack and that is all.

Q: What was your role?

A: The suicide bomber approached Nasser Shawish after he was released and Nasser Shawish approached me so that we would help him carry out the attack, so that I would arrange for Nasser Shawish protection from the [Palestinian] Authority, because he was scared of being arrested. I brought a young woman who knew the area but she did not know what I had brought her for. This person committed suicide on King George Street and I and the Defendant sat in a restaurant and heard news in order to know what was happening there.

Q: Tell the Court from the beginning about the planning of the attack. Where did you plan it, how you planned it, where you got the explosive device from and what the role of the Defendant in the planning was.

A: To be honest, I have forgotten. You put us in prison. Do you want us to remember? I am an officer like you and I was arrested in Ramallah; just like you attacked us, we shall also attack you inside of your homes. I confessed to the matters before the Israel Security Agency and the police and the Defendant also confessed to everything. There is no need for me to come and testify before the Court about the Defendant because he has confessed to everything that is attributed to him and I have confessed, as well. Therefore in my opinion there is no need for what I am doing now. What I said to the police is correct.

Defendant: In answer to the question of the Court, I ask to hear what the witness said to the police with respect to me.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　[Stamp] P 5: 321

Q: In your statement, which is dated March 31, 2002, you said, among other things: "And on the day on which they killed my brother Samir, Nasser Shawish approached me and said to me that he wanted to avenge the death of Samir and he wanted help from me. Nasser told me that Mohamed Hashaika was prepared to carry out a suicide attack in Jerusalem and Nasser prepared him for it. Nasser showed me an explosive belt and told me that if he would be arrested after Mohamed carried out the attack, that I should help him and free him from prison. I agreed. Nasser told me that girls from Jerusalem would bring Mohamed to Jerusalem and a lady called me and fixed a meeting on the following day in Ramallah. On the following day Nasser Shawish and I went and met the girl next to the Ramallah Town Hall. I asked her what her name was and where she was from and she did not tell me, I think that she said that she was from Azaria, I am not sure. She wore a black jacket. Mohamed Hashaika was with us and said that that was the girl who would be taking us to Jerusalem and we explained to the girl her function, to take Mohamed to Jerusalem for him to carry out a suicide attack. After that, we went up to Nasser's room in the hotel and there Nasser put the explosive belt onto Mohamed Hashaika Nasser. After that, we called for a taxi with yellow numbers and Mohamed and the daughter traveled to Kalandia and went into Jerusalem, and Mohamed carried out a suicide attack in Jerusalem in King George Street and in this attack a soldier and two people died." Is it right until now?

A: Everything that you have read to me is correct, but with respect to the young woman, I do not know whether she took him there or not.

Q: I continue: "… After Mohamed put on the explosive belt, we went down, blessed him and he and the young woman boarded the taxi and Nasser and I went to a restaurant to eat, and we sat there to watch the television, we waited to hear about a suicide attack and at noontime there was an attack and we saw everything on television. Nasser brought this young woman. I did not ask him and he did not tell me, but I know that Nasser has a lot of connections. Mohamed Hashaika also died in that attack. He exploded. All that was in the evening about a week or two ago. Since then I have not seen this young woman." Is it correct up until now?

[Stamp] P 5: 321 [continued]

Date: 9th of Kislev, 5763  
November 14, 2002

Case No.: 3739/02

A: Yes, it is correct.

**Question of the Court: Is it necessary to continue to read all of the statements?**

Prosecutor: Yes, there are important details that I want the witness to confirm that he said.

Defendant: I want to continue to hear the important things. I confessed before the Court with respect to what I confessed, and I do not regret it. I ask the court to read to me once again the disputed details and I shall respond again.

**After a break**

**Prosecution witness No. 1 continues to testify**

Q: You said here that you do not remember exactly what you said to the police, but everything that you said to the police is true, correct?

A: Yes.

Q: I am showing you your police statement, which is dated March 31, 2002. Are the signatures at the bottom of the pages yours?

A: Yes.

Q: I am showing you your police statement, which is dated April 4, 2002. Are the signatures at the bottom of the pages yours?

A: Yes.

Q: I am showing you your police statement, which is dated April 28, 2002. Are the signatures at the bottom of the pages yours?

A: Yes.

I am showing you the drawings that were seized on April 28, 2002. Are these the drawings that you drew?

A: Yes.

[Stamp] P 5: 322

Q: I am showing you your police statement, which is dated April 29, 2002. Are the signatures at the bottom of the pages yours?

A: Yes.

Q: I am showing you your police statement, which is dated May 8, 2002. Are the signatures at the bottom of the pages yours?

A: No. It says there Abed Kariem Aweis, but that is not my signature on any of the pages.

Q: Do you remember the interview on that day, May 8, 2002?

A: No.

Q: I am showing you your police statement, which is dated May 15, 2002. Are the signatures at the bottom of the pages yours?

A: Yes.

Q: Were these pictures in that interview shown to you?

A: Yes.

Q: I am showing you're your handwriting that was seized on May 8, 2002. Is this your handwriting?

A: Yes.

Q: The handwriting that you now identified was seized during your interview on that day by the investigator whom you claim did not question you and concerning whom you said the signatures are not yours. How can you explain that?

A: That is not my signature.

[Stamp] P 5: 322 [continued]

6

Date: 9th of Kislev, 5763  
November 14, 2002

Case No.: 3739/02

Q: But I am telling you that your handwriting was seized during that interview on which your signature appears.

A: I do not know what it says in the statement and the signature there is not mine.

Q: I am showing you your police statement, which is dated May 28, 2002. Are the signatures are the bottom of the pages yours?

A: Yes.

Q: I am showing you an additional statement, which is dated May 28, 2002. Were the signatures at the bottom of the pages yours?

A: Yes.

Prosecutor: I have no further questions.

Defendant: I have no cross examination for the witness despite the Court explaining to me that I have a right to examine the witness. His words are contradictory because there is a statement to which he does not confess.

Prosecutor: I shall ask to file the statements that the witness has identified as his statements. The witness has informed the Court that the things that were said by him in those statements are correct, but currently he does not remember them. With respect to the statement, which is dated May 8, 2002, I shall ask to summon the taker of the statement, Master Sergeant Moshe Levi, in order to file the statement of the witness.

## Decision

A decision on the motion of the prosecution will be handed down during the course of the day.

The case is postponed for further evidence to November 21, 2002, on which date witnesses 8, 9 have been summoned.

**Handed down and announced on this day, November 14, 2002, in public and in the presence of the parties.**

| [Signature] | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **President of the Court** | **Judge** |

[Stamp] P 5: 323

November 14, 2002                                    Case No.: 3739/02

## The military Court in Beit El

### Transcript of the Hearing of a Panel Session

**Before the Honorable President of the Court: Lieutenant Colonel Nathaniel Benichou**
**Judge: Captain Ben Zion Shefer**
**Judge: Captain Yitzhak Ozedin**

**The Defendant: Nasser Jamal Musa Shawish, Identity No. 993006188/ IPS – present**

### Decision

We have here before us the request of the prosecution for the statements of the witness Abed-Al Kariem Aweis, because he confirmed the accuracy of his statements and also identified his signature on them.

It is a known rule that when a witness confirms that he has given a statement and confirms the accuracy of its content, this statement may also be accepted even if the witness does not repeat its content the Court [Translator's note: as written] [see Criminal Appeal 71/76 Merili and others v. The State of Israel, PD 30(2) 813, 820].

In accordance with this rule, and in view of the fact that the witness Abed Kariem Aweis confirmed before us the accuracy of the content of his statements and the authenticity of his signatures (except with respect to a statement which is dated May 8, 2002), we accept the statements and mark them as follows:

A.   The statement of witness Abed Kariem Aweis dated March 31, 2002 is accepted and marked as P/1.

B.   The statement of witness Abed Kariem Aweis dated April 4, 2002 is accepted and marked as P/2.

C.   The statement of witness Abed Kariem Aweis dated April 28, 2002 is accepted and marked as P/3.

D.   The statement of witness Abed Kariem Aweis dated April 29, 2002 is accepted and marked as P/4.

[Stamp] P 5: 324

E.  The statement of witness Abed Kariem Aweis dated May 15, 2002 is accepted and marked as P/5.

F.  The statement of witness Abed Kariem Aweis dated May 28, 2002 that was drafted at 9:50 a.m. is accepted and marked as P/6.

G.  The statement of witness Abed Kariem Aweis dated May 28, 2002 that was drafted at 12:30 p.m. is accepted and marked as P/7.

We also accept the motion of the prosecution to summon the person who recorded the statement of the witness that is dated May 8, 2002, Master Sergeant Moshe Levi.

**Handed down on this day, November 14, 2002, in chambers.**

| _____[Signature]_____ | _____[Signature]_____ | _____[Signature]_____ |
|:---:|:---:|:---:|
| **Judge** | **President of the Court** | **Judge** |

[Stamp] P 5: 324 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

           Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

           Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 5: 320-24.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P 5: 320-24.

Dated: February 28, 2014

                                                  Rina Ne'eman

ss.: New Jersey

On the 28 day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D. # 2332704

Case 1:04-cv-00397-GBD-RLE    Document 547-276    Filed 06/25/14    Page 13 of 18

תאריך: ט' כסלו, תשס"ג                                                                    מס' תיק: 3739/02
14 נובמבר, 2002

1
בית המשפט הצבאי בבית אל                                    2
3
פרוטוקול הדיון של ישיבת הרכב                                4
5
בפני אב"ד: סא"ל נתנאל בנישו                                 6
שופט: סרן בן ציון שפר                                        7
שופט: סרן יצחק אוזדין                                        8
9
תובע: קמ"ש רוסטיסלב פסק - נוכח                              10
סנגור: ללא ייצוג                                             11
12
נאשם: נאצר ג'מאל מוסא שוויש ת.ז 993006188 / שב"ס - נוכח      13
14
מתורגמן: סמ"ר כאמל זיאן                                     15
רשמת: רב"ט סיון הראל                                         16
------------------------------------------------              17
אב"ד פותח את הישיבה ומזהה את הנאשם.                          18
19
מהלך הדיון                                                   20
21
נאשם: לשאלת ביהמ"ש, עדיין אין לי סניגור. לגבי התיק, אני עדיין לא יודע מה    22
לעשות.                                                       23
24
עד תביעה מס' 1 (עד מס' 13 ברשימת העדים), ע/כרים עוויס.        25
26
העד מוזהר לומר את האמת.                                      27
28
חקירה ראשית                                                  29
30
תובע: אני מצהיר בפניך כי כל מה שתאמר כאן לא ישמש נגדך במשפט שלך.   31
32
עד: הבנתי. יש בפניך את הנאשם, אתה יכול לשאול אותו על עצמו. הנאשם היה   33
בחקירה והוא הודה בכל מה שהוא עשה, אז אתה יכול לשאול אותו.      34
35
ש: ספר לביהמ"ש איפה עבדת לפני שנעצרת?                         36
ת: עבדתי ברשות.                                              37
ש: באיזה מנגנון?                                             38
ת: בשב"כ, המודיעין.                                          39
ש: ספר לביהמ"ש איך הכרת את הנאשם, מה אתה יודע על גילו, על מקום מגוריו,    40
על מקום עבודתו, מצבו המשפחתי.                                41
ת: הוא חבר שלי והכרתי אותו במחנה הפליטים ג'נין ומאז התחיל הקשר בינינו.    42
ש: בן כמה הוא? איפה הוא גר לפני שהוא נעצר? איפה הוא עבד?        43
ת: אני לא יודע. הוא גר ברמאללה, בג'נין, אני הכרתי אותו אז כשהוא גר בג'נין,   44
עכשיו איני יודע איפה הוא גר.                                 45
ש: מה אתה יודע על מצבו המשפחתי?                              46
ת: לא שאלתי אותו, אני לא יודע. אני יכול לנחש שהוא בן 20, 25.    47
ש: אני רוצה להפנות אותך לחקירתך במשטרה שם סיפרת שהנאשם הוא כבן 30,   48
נשוי, מבוקש לישראל. מה אתה יכול להגיד על כך?                  49

1

תאריך: ט' כסלו, תשס"ג  
14 נובמבר, 2002　　　　　　　　　　　　　מס' תיק: 3739/02

1　ת: הדברים אותם אמרתי במשטרה אני לא יכול לזכור אותם עכשיו. אני לא זוכר  
2　איך הכרתי אותו, אני בן אדם. אני לא זוכר את הפרטים האלה. הכרתי אותו לפני  
3　שנה וחצי במ.פ ג'נין, וזהו.  
4　ש: לאיזה ארגון השתייך הנאשם?  
5　ת: הוא עבד עם הג'יהאד האסלמי ובתקופה האחרונה עבד עם הפת"ח.  
6　ש: ספר לביהמ"ש על חלקו של הנאשם בתכנון ובביצוע של פיגוע התאבדות ברחוב  
7　קינג ג'ורג' בירושלים, פיגוע אשר ארע ביום 21/03/02.  
8　ת: אני והוא השתתפנו ביחד עם מחמד חשאיקה שהוא המחבל המתאבד שביצע את  
9　הפיגוע, וזהו.  
10　ש: מה היה חלקכם?  
11　ת: המתאבד פנה לנאצר שוויש לאחר ששוחרר ונאצר שוויש פנה אליי כדי שאנו  
12　נעזור לו לבצע את הפיגוע, כדי שאני אסדר לנאצר שוויש הגנה מהרשות, כי הוא  
13　מפחד שיעצרו אותו. אני הבאתי בחורה שמכירה את האזור אבל היא לא יודעת  
14　לשם מה הבאתי אותה. האדם הזה התאבד ברחוב המלך ג'ורג' ואני והנאשם ישבנו  
15　במסעדה ושמענו חדשות כדי לדעת מה קרה שם.  
16　ש: ספר לביהמ"ש מהתחלה על התכנון של הפיגוע. איפה תכננתם אותו, איך  
17　תכננתם אותו, מאיפה השגתם את מטען הנפץ ומה היה חלקו של הנאשם בתכנון.  
18　ת: האמת היא ששכחתי. שמתם אותנו בכלא, אתה רוצה שאנחנו נזכור? אני קצין  
19　כמוך ונעצרתי ברמאללה, כמו שאתם תקפתם אותנו גם אנחנו נתקוף אותכם בתוך  
20　בתיכם. אני הודיתי בכל הדברים בפני השב"כ והמשטרה וגם הנאשם הודה בכל  
21　הדברים. אין צורך שאני אבוא ואעיד בפני ביהמ"ש על הנאשם כי הוא הודה בכל  
22　המיוחס לו וגם אני הודיתי. לכן לפי דעתי מה שאני עושה עכשיו אין בו צורך. מה  
23　שאמרתי במשטרה זה נכון.  
24　  
25　נאשם: לשאלת ביהמ"ש, אני מבקש לשמוע את מה שאמר העד במשטרה לגביי.  
26　  
27　ש: באמרתך מיום 31/03/02 אתה אמרת בין היתר: "וביום שהרגו את אחי סאמר  
28　פנה אליי נאצר שוויש ואמר לי שהוא רוצה לנקום את מות סאמר והוא רוצה עזרה  
29　ממני. נאצר אמר לי שמחמד חשאיקה מוכן לבצע פיגוע התאבדות בירושלים ונאצר  
30　הכין אותו לזה. נאצר הראה לי חגורת נפץ ואמר לי שאם הוא יעצר אחרי שמחמד  
31　יעשה את הפיגוע, שאעזור לו ואשחרר אותו מהכלא. הסכמתי. נאצר סיפר לי שבנות  
32　מירושלים יכניסו את מחמד לירושלים והתקשר לידי מישהי וקבע איזו פגישה  
33　למחרת ברמאללה. למחרת הלכנו אני ונאצר שוויש ופגשנו את הבת ליד עיריית  
34　רמאללה, שאלתי אותה מה שמה ומאיפה היא והיא לא אמרה לי, אני חושב שהיא  
35　אמרה שהיא מעזרייה, אני לא בטוח. היא לבשה ג'יקט שחור. מחמד חשאיקה היה  
36　איתנו ואמר שזאת הבת שתיקח אותו לירושלים והסברנו לבת את התפקיד שלה,  
37　לקחת את מחמד לירושלים שיעשה פיגוע התאבדות. אחרי זה עלינו לחדר של נאצר  
38　במלון ושם הלביש נאצר את מחמד חשאיקה בחגורת הנפץ. אחרי זה הזמנו מונית  
39　עם מספרים צהובים ומחמד והבת נסעו לקלנדייה ונכנסו לירושלים ומחמד עשה  
40　פיגוע התאבדות בירושלים ברחוב קינג ג'ורג' ומהפיגוע הזה מתו חייל ושני אנשים."  
41　האם עד כאן זה נכון?  
42　ת: כל מה שחקראת לי זה נכון, אבל בקשר לבחורה, אני לא יודע אם היא לקחה  
43　אותו לשם או לא.  
44　ש: אני ממשיך: "...אחרי שמחמד לבש את חגורת הנפץ ירדנו, בירכנו אותו והוא  
45　והבחורה עלו למונית ואני ונאצר הלכנו למסעדה לאכול וישבנו שם לראות טלוויזיה.  
46　חיכינו לשמוע על פיגוע התאבדות ובצהריים היה פיגוע וראינו הכל בטלוויזיה. נאצר  
47　הביא את הבחורה הזאת. אני לא שאלתי אותו והוא לא סיפר לי, אבל אני יודע שיש  
48　לנאצר הרבה קשרים. גם מחמד חשאיקה מת בפיגוע הזה. הוא התפוצץ. כל זה היה  
49　בערב לפני כשבוע שבועיים. מאז לא ראיתי את הבחורה הזאת." זה נכון עד כאן?

2

מס' תיק: 3739/02                                    תאריך: ט' כסלו, תשס"ג
                                                        14 נובמבר, 2002

1   ת: כן, זה נכון.
2
3   שאלת ביהמ"ש: האם יש צורך להמשיך לקרוא את כל האמרות?
4
5   תובע: כן, יש פרטים חשובים שאני רוצה שהעד יאשר יאשר שאכן הוא אמר אותם.
6
7   נאשם: אני רוצה להמשיך לשמוע את הדברים החשובים. אני הודיתי בפני ביהמ"ש
8   במה שהודיתי, ואני לא מתחרט על כך. אני מבקש שביהמ"ש יקריא לי עוד פעם את
9   הפרטים שבמחלוקת ואני אתייחס שוב.
10
11  לאחר הפסקה
12
13  חוזר להעיד עד תביעה מס' 1
14
15  ש: אתה אמרת כאן שאתה לא זוכר בדיוק מה סיפרת במשטרה, אבל כל מה
16  שסיפרת במשטרה זה נכון, נכון?
17  ת: כן.
18  ש: אני מציג בפניך את אמרתך המשטרתית מיום 31/03/02, האם החתימות
19  בתחתית העמודים שלך?
20  ת: כן.
21  ש: אני מציג בפניך את אמרתך המשטרתית מיום 04/04/02, האם החתימות
22  בתחתית העמודים שלך?
23  ת: כן.
24  ש: אני מציג בפניך את אמרתך המשטרתית מיום 28/04/02, האם החתימות
25  בתחתית העמודים שלך?
26  ת: כן.
27  ש: אני מציג בפניך את השרטוטים אשר נתפסו בתאריך 28/04/02, האם אלה
28  השרטוטים שציירת?
29  ת: כן.
30  ש: אני מציג בפניך את אמרתך המשטרתית מיום 29/04/02, האם החתימות
31  בתחתית העמודים שלך?
32  ת: כן.
33  ש: אני מציג בפניך את אמרתך המשטרתית מיום 08/05/02, האם החתימות
34  בתחתית העמודים שלך?
35  ת: לא. כתוב שם ע/כריס עוויס, אך זו לא החתימה שלי על אף אחד מהעמודים.
36  ש: האם אתה זוכר את החקירה מאותו היום, 08/05/02?
37  ת: לא.
38  ש: אני מציג בפניך את אמרתך המשטרתית מיום 15/05/02, האם החתימות
39  בתחתית העמודים שלך?
40  ת: כן.
41  ש: האם התמונות האלה באותה החקירה הוצגו בפניך?
42  ת: כן.
43  ש: אני מציג בפניך את כתב היד שלך אשר נתפס ביום 08/05/02, האם זה כתב היד
44  שלך?
45  ת: כן.
46  ש: כתב היד אותו זיהית עכשיו נתפס במהלך חקירתך באותו היום ע"י אותו החוקר
47  שאתה טוען שלא חקר אותך ושהחתימות הן לא שלך. איך אתה יכול להסביר את
48  זה?
49  ת: זו לא החתימה שלי.

3

תאריך: ט' כסלו, תשס"ג  
14 נובמבר, 2002

מס' תיק: 3739/02

1  ש: אבל אני אומר לך שכתב היד שלך נתפס במהלך החקירה שמופיעה  
2  החתימה שלך עליו.  
3  ת: אני לא יודע מה כתוב בהודעה והחתימה שם היא לא שלי.  
4  ש: אני מציג בפניך את אמרתך המשטרתית מיום 28/05/02, האם החתימות  
5  בתחתית העמודים שלך?  
6  ת: כן.  
7  ש: אני מציג בפניך את אמרה נוספת מיום 28/05/02, האם החתימות בתחתית  
8  העמודים שלך?  
9  ת: כן.  
10  
11  תובע: אין לי שאלות נוספות.  
12  
13  נאשם: אין לי חקירה נגדית לעד למרות שביהמ"ש מסביר לי שזו זכותי לחקור את  
14  העד. דבריו סותרים כי יש הודעה שהוא לא מודה בה.  
15  
16  תובע: אבקש להגיש את האמרות ואתן זיהה העד כאמרות שלו. העד מסר לביהמ"ש  
17  כי הדברים אשר נמסרו על ידו באותן האמרות הם נכונים, אך כרגע אינו זוכר  
18  אותם. לגבי האמרה מיום 08/05/02, אבקש לזמן את גובה האמרה, רס"ר משה לוי,  
19  על מנת להגיש את אמרת העד.  
20  
21  ה ח ל ט ה  
22  
23  החלטה בבקשת התביעה תנתן במהלך היום.  
24  
25  התיק נדחה להמשך הוכחות ליום 21/11/02, מועד אליו זומנו העדים 8,9.  
26  
27  ניתן והודע היום, 14/11/02, בפומבי ובמעמד הצדדים.

_____        _____        _____  
שופט                    אב"ד                    שופט

4

# בית המשפט הצבאי בבית אל

## פרוטוקול הדיון של ישיבת הרכב

בפני האב"ד: סא"ל נתנאל בנישו
השופט: סרן יצחק אוזדין
השופט: סרן בן-ציון שפר

נאשם: נאצר ג'מאל שוויש ת.ז. 993006188 /שב"ס

------------------------------------------------

## החלטה

מונחת בפנינו בקשת התביעה את אמרות העד ע"י כרים עוויס מאחר שזה אישר את נכונות דבריו ואף זיהה את חתימתו עליהן.

הלכה ידועה היא כי עד מקום בו עד מאשר שמסר אמרה ומאשר את נכונות תוכנה, ניתן לקבל אמרה זו גם אם העד אינו חוזר על תוכנה בבית המשפט [ראה ע"פ 71/76 מרילי ואחרים נגד מדינת ישראל פ"ד ל(2) 820,813].

בהתאם להלכה זו, ולאור העובדה כי העד ע/כרים עוויס אישר בפנינו את נכונות תוכן אמרותיו ואמיתות חתימותיו (מלבד לגבי אמרה מיום 8/5/02) אנו מקבלים את האמרות, ומסמנים אותן כדלקמן:

א. אמרת העד ע/כרים עוויס מיום 31/3/02 מתקבלת ומסומנת ת/1.
ב. אמרת העד ע/כרים עוויס מיום 4/4/02 מתקבלת ומסומנת ת/2.
ג. אמרת העד ע/כרים עוויס מיום 28/4/02 מתקבלת ומסומנת ת/3.
ד. אמרת העד ע/כרים עוויס מיום 29/4/02 מתקבלת ומסומנת ת/4.
ה. אמרת העד ע/כרים עוויס מיום 15/5/02 מתקבלת ומסומנת ת/5.
ו. אמרת העד ע/כרים עוויס מיום 28/5/02 שנערכה בשעה 09:50 מתקבלת ומסומנת ת/6.
ז. אמרת העד ע/כרים עוויס מיום 28/5/02 שנערכה בשעה 12:30 מתקבלת ומסומנת ת/7.

עוד אנו מקבלים את בקשת התביעה לזמן את גובה אמרתו של העד מיום 8/5/02 רס"ר משה לוי.

ניתן היום, 14/11/2002, בלשכה.

_____          _____          _____
שופט                    אב"ד                     שופט