# EXHIBIT A.376



PLAINTIFF'S
EXHIBIT
376

Date: 8th of Adar Sheni 5763                                                          Case No.: 3478/02
March 12, 2003

**The Military Court**
**Beit El**
**(in its session in Beit El)**

Hearing of the Court on          Before the President of the Court: Major Eli Bar-On
March 12, 2003
                                 Judge: Captain Shlomi Friedman
                                 Judge: Captain Rafi Netz
Prosecutor: Captain Raed Shanan – present.
Defense counsel: Adv. Samra – present.

**Defendant: Abed Kariem Ratab Yunis Aweis, Identity No. 980136675/ Israel Prison Service**
**– present.**

Stenographer: Private Naama Levi
Interpreter: Corporal Kariem Salameh

---

**The President of the Court opens the session and identifies the Defendant.**

## <u>Course of the Hearing</u>

Prosecutor: I am filing Case 8737/90 as evidence for the sentencing.

**Admitted and marked as P/1.**

Defense counsel: There is no evidence for the sentencing.

Prosecutor summates: We have reached an agreement regarding the sentencing.

**The Court informs the Defendant that he is not bound by the plea bargain.**

Prosecutor summates: The military prosecution asks to impose on the Defendant six life imprisonment terms that are to be served cumulatively. This arrangement is a consensual one between the prosecution and the defense, and it is divided into a number of parts.

Five life imprisonment terms are because of indictment counts 19, 20 and because of indictment counts 39, 40, after the Defendant caused by his acts the death of five persons.

[Stamp] P 5: 42

1

The case law in this Honorable Court, and the case law of the Court in Israel, emphasizes time after time the need to impose a separate life imprisonment term for an offense of causing intentional death in order to emphasize the value of human life. In this case, these are five counts for causing the death of five citizens of the State of Israel. The second part of the arrangement is for the remaining offenses of which the Defendant has been convicted. I ask to refer in particular to the offenses in counts 30, 38. There, the Defendant was responsible for the dispatch of two suicide terrorists, who miraculously did not cause any loss of life, but caused the injury of a number of people and the deaths of those suicide terrorists. That goes without discussing the remaining effects of which the Defendant has been convicted when he took part in violent activity against the security forces of the Area from late 2000 until the day of his arrest in March 2002. In addition, the Defendant has a record against him, having been convicted back in 1991 for the offense of causing the intentional death of a person

[Stamp] P 5: 42 [continued]

2

Date: 8th of Adar Sheni 5763                                    Case No.: 3478/02
March 12, 2003

who was suspected of collaboration with the security forces. The circumstances that I have enumerated above are those that led the military prosecution and the defense counsel to a consensual arrangement for the sentence. Therefore, I ask that this arrangement be honored.

Questions of the Court: In the opinion of the prosecution, is there no justification to sentence the Defendant to a separate life sentence for some of the counts of the indictment, at least for those in which the suicide terrorists had already been dispatched to carry out the attack and also detonated their explosive devices in order to cause the deaths of others?

Prosecutor: As I said at the beginning of my address, the agreed sentence may be divided into two parts; it is possibility that if the offenses of which the Defendant had been convicted were only the offenses of dispatching suicide terrorists without loss of life, the military prosecution would have requested a life imprisonment sentence for those offenses only. But when we have before us a defendant who is answering for five acts of causing intentional death, the military prosecution saw fit to separate the acts that caused actual death, of which there were five, and the rest of the offenses of which the Defendant has been convicted, despite their severity, and for which we have requested one life imprisonment term cumulatively. This is in order to make a distinction between the value of the sanctity of the lives of the victims compared to the other activities of the Defendant. Life imprisonment is a prison sentence until the end of the life of the Defendant. It is not a limited sentence but a [sentence that is defined by an] infinite number. Therefore, the only distinction between the deaths and the other cases is the cumulative number of life imprisonment sentences. I do not ask to downplay the severity of the remaining acts of the Defendant, which caused the injury of a large number of people and the deaths of two suicide terrorists, but the sole purpose was to differentiate between the instances of death [of victims] and all of the other cases.

Defense counsel summates: It is true that it is a plea bargain that is apparently lenient towards the Defendant; it is a very severe sentence, as are the offenses. It is our estimate that this sentence is suitable for the sentencing level for the Defendant. As my colleague said, life imprisonment is not a set number of years but for the rest of one's life. In addition, concerning the other counts of the indictment, I ask to honor the agreement for a separate life imprisonment term. The sentence is fitting; I ask that it be honored.

The Defendant in his last statement: I am proud of the acts that I have committed and there is a just reason for my having done them. The reason is the presence of the Israeli occupation and the Israeli army, which every day kills civilians and the last of these acts was the killing of my brother, Samer.

[Stamp] P 5: 43

3

If I could have murdered more Jews, I would not hesitate. What I wish to point out here too is that this uprising will continue, and the attacks inside Israel will continue until the State of Palestine is founded and the army withdraws from the territories.

[Stamp] P 5: 43 [continued]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 42-43.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 42-43.

Rina Ne'eman

ss.: New Jersey

On the 28 ] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014


_____
Notary Public

KIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D. # 2392704

תיק מס׳:3478/02                                    תאריך:ח׳ אדר ב׳ תשס״ג
                                                   12 במרץ,  2003

1    שנחשד בשיתוף פעולה עם כוחות הביטחון. הנסיבות אשר מניתי לעיל הן אלה אשר
2    הביאו את התביעה הצבאית ואת הסנגוריה להסדר המוסכם לעונש. על כן אבקש
3    לכבד הסדר זה.
4
5    שאלת ביהמ״ש:האם לדעת התביעה אין הצדקה להטיל על הנאשם עונש מאסר
6    עולם נפרד בגין חלק מפרטי האישום, לכל הפחות בגין אלה שבהם כבר שוגרו
7    המתאבדים לביצוע הפיגוע ואף הפעילו את המטעַנים על מנת לגרום למותם של
8    אחרים?
9
10   תובע: כפי שאמרתי בתחילת דברי ניתן לחלק את העונש המוסכם לשני חלקים,
11   יכול להיות ולו היו העבירות בהן הורשע הנאשם רק העבירות של שיגור מתאבדים
12   ללא אבדות בנפש, כן היתה התביעה הצבאית מבקשת להשית מאסר עולם על
13   עבירות אלו בלבד. אולם כאשר עומד בפנינו נאשם שנותן את הדין על חמישה
14   מעשים של גרימת מוות בכוונה, ראתה התביעה הצבאית לנכון להפריד בין המעשים
15   שגרמו בפועל למוות וכאלו היו חמישה בין שאר העבירות שבהן הורשע הנאשם על
16   אף חומרתן ובגין במצבר ביקשנו מאסר עולם אחד. וכל זאת על מנת לאבחן את
17   הערך של קדושת חייהם של ההרוגים למול יתר הפעילות של הנאשם. מאסר עולם
18   הינו מאסר עד סוף חייו של הנאשם. הוא אינו עונש קצוב אלא מס׳ אין סופי. על כן,
19   ההבחנה היחידה בין מקרי המוות לבין יתר המקרים הינו במס׳ המצטברים של
20   מאסרי העולם. אין אני מבקש להקל בחומרה של יתר מעשיו של הנאשם, אשר גרמו
21   לפציעתם של מס׳ רב של אנשים וכן למותם של שני מתאבדים, אולם המטרה
22   היחידה היתה לאבחן בין מקרה המוות לבין יתר המקרים.
23
24   סניגור מסכם: נכון שמדובר בהסדר טיעון שהינו מקל עם הנאשם, מדובר בעונש
25   חמור מאוד כמו כן בעבירות חמורות מאוד. לפי הערכתנו מדובר בעונש שמתאים
26   לרמת העונשה הראויה לנאשם. כמו שאמר חברי, מאסר עולם אינו מס׳ שנים קצוב
27   אלא הוא עד סוף החיים. כמו כן בנוגע לשאמר פרטי האישום אבקש לכבד את
28   ההסכמה למאסר עולם נפרד. העונש הוא ראוי, אבקש לכבדו.
29
30   נאשם בדברו האחרון: המעשים שאני ביצעתי אותם, אני מתגאה בהם ויש סיבה
31   מוצדקת שאני עשיתי את המעשים האלה. הסיבה היא המצאותו של הכיבוש
32   הישראלי והצבא הישראלי אשר כל יום הורג אזרחים ואחרון מבין מעשים אלו
33   היה הריגתו של אחי, שאמר. לו הייתי יכול לרצוח מס׳ רב יותר של יהודים, לא
34   הייתי מהסס. מה שאני מבקש  לציין גם כן; האינתיפאדה הזאת תמשך וגם
35   הפיגועים יימשכו בתוך ישראל עד הקמת מדינת פלסטין ונסיגת הצבא מן השטחים.
36

                                              2