# EXHIBIT A.386
## (1 of 3)



PLAINTIFF'S
EXHIBIT
386

Israel                                      Defense                                              Forces
Before the Military Court                            Court Case:  *3262/02*
In Beit El                                    Prosecution case:  240/02
Before a panel                            Detailed incident case:  1900/01 Binyamin
                                                                    2059/01 Shafat
                                                                    2159/01 Binyamin
                                                                    7915/01 Zion
                                                                    481/01 Zion
                                                                    8379/01 Zion
                                                                    39/02 Binyamin
                                                                    502/02 Zion

[Stamp]    This indictment received _____
           on date: *April 21, 2002*
           and entered into the log in case _____
           by the court [Signature]

### In the trial between the military prosecutor – The Prosecutor

#### - v. -

Fares Sadak Mohamed Ghanem (known as "Hitawi")

Identity No. 025806985, born on September 28, 1974, a resident of Kfar Akab / Samir Amis

detained since February 18, 2002

### - The Defendant -

## Indictment

### The above mentioned Defendant is accused hereby of committing the following offenses:

**First count**:

**Nature of the offense** Membership in an illegal organization, an offense pursuant to Regulations 84 (1) (A) and 85 (1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: the above mentioned Defendant, in the Area, from late 2000 until the day of his arrest, was a member or acted as a member of an illegal organization, as follows:

The above mentioned Defendant, from during the period set forth, was a member of a military cell whose aim was to carry out attacks against Israeli civilians inside and outside the Area.

[Stamp] P 6: 298

1

The Defendant operated in the above mentioned military cell along with Mohamed Abed Rahman Salem Masleh (known as "Abu Satha"), Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada, Haitham Almutfak Hamdan, Zidan Al Badawi, Nizar Wahadan and Ali Alian.

The above mentioned military cell operated under the auspices of the Al Aqsa Martyrs' Brigades – the military arm of the Fatah Tanzim Organization, which is an illegal organization. For the purpose of the activity of the cell, money, cellular telephones and weapons were transferred to its members from the Fatah Tanzim. The Defendant and his fellow members of the above mentioned military cell conveyed regular reports of the attacks that they carried out to senior people in the Fatah Tanzim, while those people made sure to bring the reports to the knowledge of Marwan Barghouti, the head of the Fatah Tanzim in the Area.

The Defendant operated in the above mentioned military cell as will be described in the next counts of the indictment.

Prosecution case 240/02                          1

[Stamp] P 6: 298 [continued]

2

**Second count**:

**Nature of the offense**: Conspiring to cause intentional death, an offense under Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, whether in or outside the Area, in mid-2001 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, with Mohamed Sami Ibrahim Abdullah and Hussam Akel Rajb Shahada, planned to carry out a shooting attack at Israeli vehicles on Highway No. 1 from Jerusalem to Tel Aviv. The defendant and his above mentioned colleagues even chose the place at which they would carry out the planned attack.

In the end, the Defendant and his above mentioned colleagues did not perform the planned attack because their fellow member of the military cell described in the first count of the indictment, Ali Alian, asserted that he and others were planning to carry out an identical attack in the same place that the defendant chose with Hussam Shahada and Mohamed Abdullah.

**Third count**:

**Nature of the offense**: Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in mid-2001 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or for the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in a place that is not known to the prosecution, purchased an MP-5 submachine gun with the aim of using it in attacks against the Israeli targets, which he had planned to execute within the framework of his activity in the military cell set forth in the first count of the indictment. The defendant purchased the above mentioned MP-5 submachine gun without a permit signed by or for the commander of the Area.

**Fourth count**:

**Nature of the offense**: Conspiring to cause intentional death, an offense under Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 6: 299

**Details of the offense**: The above mentioned Defendant, in the Area, in July 2001 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts, conspired with Ali Alian, Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada and Haitham Almutfak Hamdan, to carry out attacks against the Israeli targets. The Defendant and his above mentioned colleagues also planned to obtain war materiel for performing the planned attacks from Marwan Barghouti, the head of the Fatah Tanzim, in the Area, which is an illegal organization.

**Fifth count**: **(Detailed Incident 1900/01 Binyamin)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on June 26, 2001 or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, in the evening hours on the date mentioned above, in Ramallah or thereabouts, met Hussam Akel Rajb Shahada and Ali Alian. Ali Alian brought with him two automatic weapons – an M-16 assault rifle and a Kalashnikov assault rifle, with two magazines filled with cartridges.

2.  Ali Alian informed the Defendant and Hussam Shahada that he intended to carry out a shooting attack in the Givat Ze'ev area with the aim of causing the deaths of Israeli civilians.

3.  The Defendant and Hussam Shahada agreed to the suggestion of Ali Alian to participate in the planned shooting attack.

Prosecution case 240/02                    2

[Stamp] P 6: 299 [continued]

4.  The Defendant, Hussam Shahada and Ali Alian departed from Ramallah in a stolen Subaru, which Ali Alian had brought. The Defendant and his above mentioned colleagues traveled through the Kalandia Refugee Camp and arrived at Kfar Aljib.

5.  Ali Alian parked the above mentioned Subaru in the main street of Kfar Aljib near Highway 436 connecting Jerusalem to Givat Ze'ev.

6.  The Defendant stayed in the Subaru in order to serve as a lookout and spotter.

7.  Hussam Shahada, armed with an M-16 assault rifle, and Ali Alian, armed with a Kalashnikov assault rifle, advanced on foot to Highway 436. Hussam Shahada and Ali Alian positioned themselves at a distance of approximately 150 meters from one another on the side of Highway 436, from the direction of Kfar Aljib. Hussam Shahada and Ali Alian waited for an Israeli vehicle to pass by in order to carry out a shooting attack at it, thus causing the deaths of the vehicle occupants.

8.  After approximately 10 minutes, at about 10:50 p.m., Hussam Shahada and Ali Alian noticed a silver Nissan Almera, license no. 1903129 (hereinafter: the Vehicle) in which the late Shmuel Landau, Meir Levi and Ronen Landau were traveling.

9.  The Vehicle traveled from the direction of Jerusalem to the direction of Givat Ze'ev.

10. Hussam Shahada tried to shoot at the Vehicle with the intent of causing the deaths of the occupants thereof, but due to a technical malfunction, the weapon that he held did not fire.

11. At this stage, Ali Alian discharged automatic gunfire at the Vehicle with the intent of causing the deaths of its occupants.

12. A number of bullets that were fired by Ali Alian hit the vehicle and the late Ronen Landau.

13. Immediately after the shooting, Hussam Shahada and Ali Alian fled on foot to the Subaru, in which the Defendant was waiting for them. Thereafter, the Defendant, Ali Alian and Hussam Shahada fled in the Subaru to Ramallah.

14. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Ronen Landau**, who died on the scene as a result of a gunshot wound from a bullet fired by Ali Alian as described.

**Sixth count**: (Detailed Incident 1900/01 Binyamin)

[Stamp] P 6: 300

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on July 26, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, at about 10:50 p.m., at the place described in the previous count of the indictment, attempted to cause the intentional deaths of Shmuel Landau and Meir Levi – the occupants of the Nissan Almera, license no. 1903129, described in the previous count of the indictment, the death of Moti Namir, the driver of a Daf 45 truck, license no. 7362515, and the deaths of all of the people who were traveling at the time set forth on Highway 436.

**Seventh count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 (A) of the Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on July 26, 2001 or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, at the time set forth, in the circumstances described in the fifth count of the indictment, possessed an M-16 assault rifle, a Kalashnikov assault rifle and two magazines filled with cartridges, without a permit certificate issued by or for a military commander.

Prosecution case 240/02                          3

[Stamp] P 6: 300 [continued]

**Eighth count**:

**Nature of the offense:** Military training without a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in August 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations:

The above mentioned Defendant, at the time set forth, along with Mohamed Sami Ibrahim Abdullah and Hussam Akel Rajb Shahada, came to a quarry belonging to the Tarifi family located between Bitunia and Ramallah. The defendant brought with him an M-16 assault rifle, which he had received from Tarek Malahi A-Nuf.

The above mentioned Defendant, at the time and place set forth, taught Hussam Shahada and Mohamed Abdullah to use an M-16 assault rifle. After the above mentioned theoretical training, the Defendant and each of his above mentioned colleagues fired a number of cartridges from the above mentioned M-16 rifle at empty bottles in order to train in the firing of M-16 assault rifles.

**Ninth count**: **(detailed incident 2059/01 Shafat)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on August 18, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.   The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, met Hussam Akel Rajb Shahada, Alia Alian and Nizar Wahadan.

2.   During the said meeting, the Defendant and his above mentioned colleagues decided to carry out that day a shooting attack at Israeli vehicles with the aim of causing the deaths of civilians traveling in those vehicles.

3.   The Defendant and his above mentioned colleagues decided to carry out the shooting attack at a place in Jerusalem that had been inspected previously by Alian – the junction of Sayeret Duchifat Street and Uzi Narkis Boulevard – the junction leading to Neve Ya'akov, located near New Beit Hanina.

[Stamp] P 6: 301

7

4.  Hussam Shahada, Ali Alian and Nizar traveled from Ramallah to Beit Hanina in a stolen Subaru, which Ali Alian had brought. The Defendant traveled ahead of the above mentioned Subaru using his Isuzu pickup, in order to serve as a spotter and lookout and inform his colleagues of police and IDF checkpoints on the way.

5.  For the purpose of carrying out the planned shooting attack, Ali Alian brought a Kalashnikov assault rifle and an M-16 assault rifle.

6.  After the Defendant and his above mentioned colleagues arrived at the said junction, Hussam Shahada and Ali Alian got out of the Subaru, while Hussam Shahada was holding an M-16 assault rifle, and Ali Alian held a Kalashnikov assault rifle. Nizar Wahadan stayed in the Subaru, ready to drive away from the site immediately in order to extract Hussam Shahada and Ali Alian immediately after they carried out the planned shooting attack.

7.  Hussam Shahada and Ali Alian advanced on foot to the above mentioned junction. There, at about 10:55 p.m. on the date set forth, Hussam Shahada and Ali Alian noticed an Egged bus, bus route 45, license no. 8368901, whose driver was Shimshon Ben Shmuel, which was filled with passengers (hereinafter: the Bus).

8.  Hussam Shahada attempted to shoot at the Bus with the intent of causing the deaths of the passengers thereof using the M-16 assault rifle that he was carrying, but due to a technical malfunction, the above mentioned weapon did not fire.

9.  Ali Alian fired a large number of rounds using the Kalashnikov assault rifle that he was carrying at the Bus with the aim of causing the deaths of its passengers. A number of bullets that were fired by Ali Alian hit the bus.

10. As a result of the impact of the bullets that were fired by the colleague of the Defendant, Ali Alian, Ruth Shapira, a 6 year old girl, who was traveling on the Bus, was hit in the abdomen, while another passenger, Andrew Feitzush, was injured in his leg.

11. A number of bullets that were fired by the colleague of the defendant, Ali Alian, hit a Ford Transit, license no. 9310725, which was being driven by Jamjoum Khalil.

12. Immediately after carrying out the shooting attack, Hussam Shahada and Ali Alian returned to the Subaru and Nizar Wahadan drove them to Ramallah.

Prosecution case 240/02                                    4

[Stamp] P 6: 301 [continued]

**Tenth count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 (A) of the Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, within the Area and elsewhere, on August 18, 2001 or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, at the time set forth, in the circumstances described in the previous count of the indictment, with others, possessed an M-16 assault rifle and a Kalashnikov assault rifle, without a permit certificate issued by or for a military commander.

**Eleventh count**: **(Detailed Incident 2159/01 Binyamin)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

1. Hussam Akel Rajb Shahada, in August 2001, in Ramallah or thereabouts, suggested to the Defendant and Ali Alian to carry out a shooting attack on Highway 443, in the Area of the village Beit Our, with the aim of causing the deaths of Israeli civilians. The Defendant and Ali Alian agreed to the suggestion of Hussam Shahada.

2. The Defendant, Hussam Shahada and Alia Alian decided that they would film the attack that they were planning to execute using a video camera. The Defendant, Ali Alian and Hussam Shahada also applied to Haitham Almutfak Hamdan and enlisted him for filming the planned attack.

3. The above mentioned Defendant, in August 2001, in Um Sharait in Ramallah, met Mohamed Abed Rahman Salam Masleh (known as "Abu Satha"), Hussam Shahada and Ali Alian. The Defendant and his above mentioned colleagues asked Mohamed Masleh to provide them weapons for carrying out the planned shooting attack.

4. On August 25, 2001, the Defendant, Ali Alian and Hussam Shahada approached Mohamed Masleh and asked for weapons that same day for the purpose of carrying out the shooting attack.

[Stamp] P 6: 302

5.  On that day, Mohamed Masleh approached Ahmed Barghouti (known as "Al Faransi"), the bodyguard of Marwan Barghouti, the head of the Fatah Tanzim in the Area, which is an illegal organization. Mohamed Masleh asked Ahmed Barghouti for weapons for the purpose of carrying out a shooting attack against Israeli civilians. A short time later, on that day, Ahmed Barghouti delivered to Mohamed Masleh an MP-5 submachine gun with a magazine filled with cartridges.

6.  In the evening hours, on the same day, in Ramallah or thereabouts, Mohamed Masleh delivered the above mentioned MP-5 submachine gun and ammunition to the Defendant and Hussam Shahada, who arrived in an Isuzu pickup belonging to the Defendant.

7.  Immediately after receiving the weapon, the Defendant, Hussam Shahada, Haitham Almutfak Hamdan and Ali Alian departed from Ramallah towards Highway 443 with the aim of carrying out the planned shooting attack there. The Defendant and his above mentioned colleagues traveled in two vehicles – one was an Isuzu pickup belonging to the Defendant and the other was a stolen Subaru that Ali Alian had brought for the purpose of carrying out the planned attack.

8.  Upon reaching Highway 443, the Defendant continued to travel alone in the Isuzu, about a kilometer before the Subaru in which Hussam Shahada, Haitham Hamdan and Ali Alian were traveling, in order to inform his above mentioned colleagues of IDF and police checkpoints on the way.

9.  All of the above mentioned individuals traveled on Highway 443 towards Tel Aviv, Ali driving the Subaru, while Haitham Hamdan, armed with a Kalashnikov assault rifle, sat next to him, whereas Hussam Shahada, armed with an MP-5 submachine gun, sat in the rear seat.

10. On that day, August 25, 2001, at about 10:30 p.m., next to the Dor Energy fuel station, the above mentioned colleagues of the Defendant noticed a Volkswagen Passat, license no. 6902818, in which the late Yaniv and Sharon Ben-Shalom with their children and the late Doron Yosef Sviri were traveling.

11. Ali Alian, who was driving the Subaru, overtook the above mentioned Volkswagen and drove parallel to it. At this stage, Hussam Shahada and Haitham Hamdan discharged automatic gunfire using the MP-5 submachine gun and the Kalashnikov assault rifle at the above mentioned Volkswagen with the aim of causing the deaths of its occupants.

Prosecution case 240/02                                              5

[Stamp] P 6: 302 [continued]

12. A large number of bullets that were fired by Hussam Shahada and Haitham Hamdan hit the Volkswagen and its occupants.

13. After the above mentioned colleagues of the Defendant noticed that the Volkswagen was zigzagging, they sped up and escaped to the village Beit Likia. There, the Defendant waited for them. Hussam Shahada, Ali Alian and Haitham Hamdan got into the Isuzu of the Defendant and traveled to the village Beit Sira, where they hid the weapons near Haitham Hamdan's house. Thereafter, the Defendant, Hussam Shahada, Haitham Hamdan and Ali Alian returned to Ramallah in the Defendant's vehicle.

14. Immediately after they returned to Ramallah, the defendant met in Ein Um Sharait Mohamed Masleh, and reported to the latter the attack that had been carried out as set forth above.

15. A few days later, the Defendant brought the above mentioned MP-5 submachine gun from Beit Sira and returned it to Mohamed Masleh, who transferred the above mentioned weapon to Ahmed Barghouti and reported to the latter the shooting attack that had been carried out with this weapon.

16. The above mentioned Defendant, by his acts described above, caused the intentional death of **the late Yaniv Ben-Shalom**, who died of gunshot wounds to his head and back, from bullets that were fired from an MP-5 submachine gun and from a Kalashnikov assault rifle by Hussam Shahada and Haitham Hamdan.

17. The day after carrying out the above mentioned attack, the Defendant, Hussam Shahada and Alia Alian met the above mentioned Ahmed Barghouti and reported the execution of the above mentioned attack. Ahmed Barghouti informed the Defendant and his colleagues that he already knew that the Defendant and his above mentioned colleagues were the ones who carried out the attack described above and had already conveyed a report thereof to Marwan Barghouti, the head of the Fatah Tanzim in the Area, which is an illegal organization.

**Twelfth count**: **(Detailed Incident 2159/01 Binyamin)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 6: 303

11

**Details of the offense**: The Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the eleventh count of the indictment, by his acts described in the eleventh count of the indictment, caused the intentional death of **the late Sharon Ben-Shalom**, who died of gunshot wounds to her head and back, from bullets that were fired from an MP-5 submachine gun and from a Kalashnikov assault rifle by Hussam Akel Rajb Shahada and Haitham Almutfak Hamdan.

**Thirteenth count**: (Detailed Incident 2159/01 Binyamin)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the eleventh count of the indictment, by his acts described in the eleventh count of the indictment, caused the intentional death of **the late Doron Yosef Sviri**, who died of gunshot wounds, from bullets that that were fired from an MP-5 submachine gun and from a Kalashnikov assault rifle by Hussam Akel Rajb Shahada and Haitham Almutfak Hamdan.

Prosecution case 240/02                          6

[Stamp] P 6: 303 [continued]

**Fourteenth count**: (Detailed Incident 2159/01 Binyamin)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The Defendant, at the time set forth, at the place set forth in the eleventh count of the indictment, by his acts described in the eleventh count of the indictment, attempted to cause the intentional deaths of the occupants of the Volkswagen Passat stated in the eleventh count of the indictment.

As a result of the gunfire discharged from an MP-5 submachine gun and from a Kalashnikov assault rifle by Hussam Akel Rajb Shahada and Haitham Almutfak Hamdan, as described in the eleventh count of the indictment, the daughter of the couple, the late Sharon and Yaniv Ben-Shalom was slightly injured by fragments in her leg.

**Fifteenth count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001 and about a week thereafter or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, at the times set forth, in the circumstances described in the eleventh count of the indictment, possessed a Kalashnikov assault rifle and an MP-5 submachine gun, without a permit certificate issued by or for a military commander.

**Sixteenth count**: (Detailed Incident 7915/01 Zion)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 6: 304

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on September 15, 2001 or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, at the time set forth, in Ramallah, met Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada, Haitham Almutfak Hamdan and Ali Alian. The defendant came to this meeting armed with an MP-5 submachine gun, which he had received with Hussam Shahada from Mohamed Abed Rahman Salem Masleh (known as "Abu Satha") for carrying out a shooting attack, while Haitham Hamdan arrived armed with a revolver.

2. The Defendant and his above mentioned colleagues decided to depart for Jerusalem and carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

3. At about 10:00 p.m., on September 15, 2001, the Defendant and all of his above mentioned colleagues traveled from Ramallah to Jerusalem in the Defendant's Isuzu pickup.

4. The Defendant drove the above mentioned Isuzu and traveled with his above mentioned colleagues in order to show them a place where they would carry out the planned shooting attack and in order to show them where they could carry out the planned shooting attack and to show his colleagues how to escape after carrying out the attack set forth. The Defendant transported his above mentioned colleagues to Highway No. 9, connecting the Ramot neighborhood to the French Hill neighborhood in Jerusalem. The Defendant showed his colleagues where to carry out the planned attack and how to escape thereafter. At the end of the said visit, the Defendant and his above mentioned colleagues returned to Ramallah.

5. At about 10:30 p.m. that day, Hussam Shahada along with Mohamed Abdullah and Haitham Hamdan traveled in a stolen gray vehicle with Israeli license plates, which Ali Alian had supplied to them for carrying out the planned attack (hereinafter: the Vehicle). The Defendant drove in front of the Vehicle, in the above mentioned Isuzu, in order to inform his colleagues by cellular telephone of police and IDF checkpoints.

Prosecution case 240/02                                7

[Stamp] P 6: 304 [continued]

6.  Mohamed Abdullah drove the above mentioned Vehicle; next to him sat Hussam Shahada, who was armed with an MP-5 submachine gun, and in the rear seat sat Haitham Hamdan, who was armed with a revolver.

7.  The above mentioned colleagues of the Defendant stopped on Highway No. 9 near a junction leading to the Ramat Shlomo neighborhood and waited for a single Israeli vehicle to arrive at the site with the aim of carrying out a shooting attack against it and causing the deaths of the occupants of the vehicle.

8.  After a few minutes, at about 11:10 p.m., a white Renault Express, license no. 2273706 (hereinafter: the Renault), arrived at the site from the direction of the Ramat Shlomo nationhood and turned to Highway No. 9 towards the Ramot neighborhood.

9.  Mohamed Abdullah started to drive after the Renault and overtook it.

10. When the Vehicle, which Mohamed Abdullah was driving, was traveling parallel to the Renault, Hussam Shahada and Haitham Hamdan opened fire against the occupants of the Renault using an MP-5 submachine gun and a revolver with the aim of causing their death.

11. A number of bullets that were fired by Hussam Shahada and Haitham Hamdan hit the Renault and the two occupants of the Renault – the late Moshe Weiss and Meir Weisshaus.

12. Thereafter, Mohamed Abdullah continued to travel towards the Ramot neighborhood and near a site at which a new bridge was being built, turned right to a dirt track leading to Bir Nabala.

13. Before entering Bir Nabala, the above mentioned colleagues of the Defendant met the Defendant who was waiting for them at the site in the Isuzu. From them, the Defendant and his above mentioned colleagues continued to travel together to Bir Nabala and thereafter escaped to Ramallah.

14. During the drive to Ramallah, Hussam Shahada called Mohamed Masleh, reported the commission of the above mentioned shooting attack to him and asked Mohamed Masleh to report the above mentioned attack to Ahmed Barghouti and to Marwan Barghouti, the head of the Fatah Tanzim in the Area, which is an illegal organization.

15. After arriving in Ramallah, Hussam Shahada met Ahmed Barghouti and personally reported to him regarding the execution of the above mentioned shooting.

[Stamp] P 6: 305

15

16.   By his acts described above, the Defendant caused the intentional death of **the late Meir Weisshaus**, who died in hospital later that day as a result of gunshot wounds from bullets that were fired by Hussam Shahada and Haitham Hamdan using an MP-5 submachine gun and revolver as set forth.

**Seventeenth count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on September 15, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at about 11:10 p.m., at the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Moshe Weiss, who was driving a white Renault Express, license no. 2273706, described in the previous count of the indictment. One of the bullets that were fired by Hussam Shahada and Haitham Hamdan, as described in the previous count of the indictment, hit the head of Moshe Weiss and severely injured him.

**Eighteenth count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether in the Area or elsewhere, on September 15, 2001 or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, at the time set forth, in the circumstances described in the sixteenth count of the indictment, possessed an MP-5 submachine gun and a revolver, without a permit certificate issued by or for a military commander.

Prosecution case 240/02                                8

[Stamp] P 6: 305 [continued]

**Nineteenth count**: (Detailed Incident 481/01 Zion)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on October 3, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.    The above mentioned Defendant, in early October 2001, in Ramallah or thereabouts, along with Mohammed Abed Rahman Salem Masleh (known as "Abu Satha"), Mohamed Sami Ibrahim Abdullah and Hussam Akel Rajb Shahada, decided to carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

2.    For the purpose of carrying out the planned shooting attack, Mohamed Abdulla received from Tarek Malah A-Nuf a stolen gray Mazda 323 vehicle with Israeli license plates. For the purpose of carrying out the planned shooting attack, Mohammed Masleh had received from Ahmed Barghouti, the bodyguard of Marwan Barghouti, the head of the Fatah Tanzim in the Area, which is an illegal organization, an MP-5 submachine gun.

3.    On October 3, 2001, the Defendant departed from Ramallah towards Jerusalem with the aim of carrying out the planned shooting attack, driving his Isuzu pickup, and Hussam Shahada traveled with him. With the Defendant and his above mentioned colleague departed Mohamed Abdullah, who drove the above mentioned Mazda, and Mohamed Masleh, who traveled with Mohamed Abdullah, armed with the above mentioned MP-5 submachine gun.

4.    The Defendant and Hussam Shahada traveled in the above mentioned Isuzu in front of the above mentioned Mazda with the aim of informing him of police and IDF checkpoints on the way. The Defendant and all of his above mentioned colleagues arrived at New Beit Hanina in Jerusalem. There, Mohamed Abdullah parked the Mazda and with Mohamed Masleh hid the above mentioned MP-5 submachine gun in the vehicle. Mohamed Abdullah and Mohamed Masleh got into the Isuzu of the Defendant and from there continued in the Isuzu with the Defendant and Hussam Shahada towards the Begin Road.

[Stamp] P 6: 306

17

5. The Defendant and his above mentioned colleagues reached the Begin road. There, the defendant showed his above mentioned colleagues where to carry out the planned shooting attack and how to escape after carrying out the shooting attack. The Defendant and his above mentioned colleagues decided to carry out the planned shooting attack in the first tunnel of the Begin Road from the direction of Ramot, so that the gunshots would be inaudible. Thereafter, the Defendant and his above mentioned colleagues returned to Beit Hanina, to the place at which the above mentioned Mazda was left.

6. Mohamed Abdullah got into the Mazda. Next to him sat Mohamed Masleh, armed with the above mentioned MP-5 submachine gun. From there, Mohamed Abdullah drove the Mazda to the Begin road with the aim of carrying out the planned shooting attack there and causing the deaths of Israeli civilians, whereas the Defendant and Hussam Shahada drove the Isuzu to the Shuafat road and waited for them there.

7 Mohamed Abdullah and Mohamed Masleh traveled on the Begin road back and forth several times looking for a single Israeli vehicle with the aim of carrying out the planned shooting attack against it with the aim of causing the deaths of the occupants of the vehicle.

8. At about 11:35 p.m., while driving northbound, in the last tunnel in their direction of travel, Mohamed Abdullah and Mohamed Masleh noticed a Honda Accord vehicle, license no. 1103217, traveling on the Begin road northward. The occupants of the Honda vehicle were Tonie Amiel, Pini Maimon and Pazit Maimon.

9. Mohamed Abdullah overtook the above mentioned Honda Vehicle. While Mohamed Abdullah was driving parallel to the above mentioned Honda vehicle, Mohamed Masleh fired a single round from the MP-5 submachine gun, which he was carrying, at the occupants of the Honda vehicle, with the intent of causing their deaths. The bullet that was fired by Mohamed Masleh did not hit the above mentioned Honda vehicle.

10. After carrying out the said shooting attack, Mohamed Abdullah and Mohammed Masleh continued their journey towards Highway No. 9 connecting the Ramot neighborhood to the French Hill neighborhood.

**Twentieth count**: (Detailed Incident 8379/01 Zion)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 6: 306 [continued]

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on October 3, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  After Mohamed Sami Ibrahim Abdullah and Mohamed Abel Rahman Salem Masleh (known as "Abu Satha") carried out the shooting attack as described above in the previous count of the indictment, the two continued to travel in the Mazda described in the previous count of the indictment towards Highway No. 9, connecting the Ramot […]

Prosecution case 240/02                           9

[Stamp] P 6: 306 [continued]

[…] neighborhood to the French Hill neighborhood, with the aim of reaching Beit Hanina from there and then continuing to Ramallah, as planned beforehand by the Defendant and his colleagues.

2.  During the above mentioned journey, Mohamed Masleh, at the request of Mohamed Abdullah, checked the function of the MP-5 submachine gun, which he was holding, and also fired several rounds into the air.

3.  During the journey on the above mentioned Highway No. 9, at about 11:45 p.m., Mohamed Abdullah and Mohamed Masleh noticed a Skoda vehicle, license No. 6567709, which was traveling on Highway No. 9 towards the French Hill. Malka Cohen and Pinchas Cohen were traveling in this Skoda vehicle.

4.  Mohamed Abdullah overtook the Skoda vehicle.

5.  While Mohamed Abdullah was driving parallel to the above mentioned Skoda vehicle, Mohamed Masleh fired the a few rounds from MP-5 submachine gun at the above mentioned Skoda vehicle with the aim of causing the deaths of the occupants of the Skoda vehicle.

6.  A number of bullets that were fired by Mohamed Masleh hit the Skoda vehicle. Two bullets that were fired by the Defendant hit Pinchas Cohen and another bullet hit Malka Cohen.

7.  Pinchas Cohen was moderately injured by gunshot wounds from two bullets in his abdomen, while Malka Cohen, who was 28 weeks pregnant, was moderately injured by a gunshot wound from a bullet to her head.

8.  After carrying out the said shooting attack, Mohamed Abdullah and Mohamed Masleh continued to drive towards the French Hill and from there they reached New Beit Hanina. There, Mohamed Abdullah and Mohamed Masleh and parked their vehicle and contacted the Defendant and Hussam Akel Rajb Shahada by telephone, who arrived at the site in the Isuzu belonging to the Defendant in order to pick up Mohamed Abdullah and Mohamed Masleh, according to the planning set forth in the previous count of the indictment.

9.  The Defendant and his above mentioned colleagues concealed the above mentioned MP-5 submachine gun in the Isuzu and got into the Isuzu.

[Stamp] P 6: 307

10.  The Defendant and his three above mentioned colleagues tried to return from Jerusalem to Ramallah, but were unable to do so because of IDF and police checkpoints. The Defendant and his above mentioned colleagues stayed to sleep overnight in the home of Yasser Abu Alhatib, a friend of Hussam Shahada, in New Beit Hanina in Jerusalem.

11.  On the following day, October 4, 2001, the Defendant returned to Ramallah.

**Twenty first count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether in the Area or elsewhere, on October 3-4, 2001 or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, during the period set forth, in the circumstances described in the nineteenth and twentieth counts of the indictment, possessed an MP-5 submachine gun, without a permit certificate issued by or for a military commander.

**Twenty second count**: **(Detailed Incident 39/02 Binyamin)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on January 15, 2002 or thereabouts, caused the intentional death of another person, as follows:

1.  On January 14, 2002, Raed Karmi, who was a senior military operative in the Fatah Tanzim Organization, which is an illegal organization, was killed. Following the death of the above mentioned Raed Karmi, the head of the Fatah Tanzim in the Area, Marwan Barghouti pitched a mourning tent in Albira.

[Stamp] P 6: 307 [continued]

2.   On January 15, 2002, the Defendant came to the above mentioned mourning tent and met there Mohamed Sami Ibrahim Abdullah, Mohamed Abed Rahman Salam Masleh (known as "Abu Satha"), Tarek Malhi A-Nuf and Zidan Al Badawi and Ahmed Barghouti (known as "Al Faransi"), the bodyguard of the above mentioned Marwan Barghouti.

3.   The above mentioned Ahmed Barghouti informed the Defendant and his above mentioned colleagues that Marwan Barghouti, the head of the Fatah Tanzim in the Area, asked for the Defendant and his colleagues to carry out immediately an attack to avenge the death of the above mentioned Raed Karmi and cause the deaths of Israeli civilians. For the purpose of carrying out said attack, Ahmed Barghouti provided Mohamed Masleh an MP-5 submachine gun and a "16" pistol.

Prosecution case 240/02                     10

[Stamp] P 6: 307 [continued]

4. The defendant and his above mentioned colleagues, in the above mentioned mourning tent, decided to carry out that very evening an attack at the Geronimo fuel station, located on Highway 443, near the entrance to Givat Ze'ev, with the intent of causing the deaths of Israeli civilians.

5. In the evening hours of that day, January 15, 2002, the defendant left the above mentioned mourning tent with Mohamed Abdullah. The Defendant and Mohamed Abdullah traveled in the Isuzu pickup belonging to the Defendant to the above mentioned fuel station with the intent of carrying out the planned shooting attack there. Mohamed Masleh, armed with a "14" pistol, Zidan, armed with a "16" pistol, and Tarek A-Nuf, armed with the above mentioned MP-5 submachine gun, drove behind the above mentioned Isuzu. The three traveled in a light brown Mazda towards the above mentioned fuel station with the aim of carrying out the planned shooting attack there.

6. The Defendant and all his above mentioned reached an earth mound that blocked the exit from the villages Bir Nabala and Aljib to Highway 443, about 100 meters from the Geronimo fuel station. The Defendant and his above mentioned colleagues parked their vehicles, the Isuzu and Mazda, facing the village Bir Nabala so that they could escape from the site immediately after carrying out the planned attack.

7. Mohamed Masleh, armed with a "14" pistol, Zidan, armed with a "16" pistol, and Tarek A-Nuf, armed with an MP-5, got out of the vehicles and walked to the above mentioned fuel station with the aim of carrying out the planned shooting attack and causing the deaths of Israeli civilians there.

8. The Defendant and Mohamed Abdullah stayed in the above mentioned vehicles in order to make sure that no IDF patrol or other people would come to the site. Mohamed Abdullah sat in the driver's seat of the Mazda so that he could immediately evacuate his three colleagues who had departed to carry out the planned attack immediately after executing the attack.

9. Mohamed Masleh and Tarek A-Nuf stood at the entrance to the above mentioned fuel station.

10. After a few minutes, at about 7:45 p.m., Mohamed Masleh and Tarek A-Nuf noticed a white Fiat Uno, license no. 6424905, entering the above mentioned fuel station, which was driven by the late Yoela Chen, and Rachel Eini was sitting next to her.

[Stamp] P 6: 308

11. Mohamed Masleh and Tarek A-Nuf approached the above mentioned Fiat vehicle with the aim of carrying out a shooting attack against it and causing the deaths of the vehicle's occupants. The occupants of the Fiat vehicle noticed the pistol that Mohamed Masleh was holding and started to shout and sound the horn. Mohamed Masleh put the pistol into his trousers and told the vehicle occupants not to fear.

12. At this stage, Tarek A-Nuf opened fire with burst from the MP-5 submachine gun at the occupants of the Fiat vehicle with the intent of causing their death. Then, Mohamed Masleh took out his pistol again and started to shoot at the vehicle occupants with the intent of causing their death.

13. Mohamed Masleh and Tarek A-Nuf fired at very close range a large number of rounds at the late Yoela Chen, and at Rachel Eini, who were in the above mentioned Fiat vehicle.

14. Approximately 28 bullets, which were fired by Mohamed Masleh and Tarek A-Nuf, hit the front windshield of the vehicle, a number of bullets hit the side of the vehicle and the driver's door window.

15. During the commission of the described shooting attack, Zidan, who was standing a short distance behind Mohamed Masleh and Tarek A-Nuf, served as a lookout and spotter.

16. The Defendant, immediately after hearing the gunfire, drove from the site with his Isuzu in order to inform his colleagues whether there were checkpoints on the way to Ramallah.

17. Mohamed Masleh, Tarek A-Nuf and Zidan, after having carried out the shooting attack as set forth above, ran back to the Mazda in which Mohamed Abdullah was waiting. After the three got into the vehicle, Mohamed Abdullah drove them to Ramallah.

18. In Ramallah, Mohamed Masleh, Tarek A-Nuf, Mohamed Abdullah and Zidan met the Defendant.

19. Thereafter, Mohamed Masleh met the above mentioned Ahmed Barghouti in Ramallah, returned the MP-5 submachine gun and the Mazda to him and reported the attack that he had carried out as described above.

20. By his acts described above, The Defendant caused the intentional death of **the late Yoela Chen**, who died at the scene as a result of gunshot wounds from bullets that were fired by Mohamed Masleh and Tarek A-Nuf.

Prosecution case 240/02                                11

[Stamp] P 6: 308 [continued]

**Twenty third count**: (detailed incident 39/02 Binyamin)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on January 15, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, on the above mentioned date, at about 7:45 p.m., in the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Rachel Eini, who was traveling in a white Fiat Uno, license no. 6424905, described in the previous count of the indictment. One of the bullets that were fired by Mohamed Masleh and Tarek Malhi A-Nuf as described in the previous count of the indictment hit Rachel Eini in the head and two other bullets hit her left shoulder, injuring her moderately.

**Twenty fourth count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 (A) of the Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 15, 2002 or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, at the time set forth, in the circumstances described in the twenty second count of the indictment, with others possessed an MP-5 submachine gun and two pistols, without a permit certificate issued by or for a military commander.

**Twenty fifth count**: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 6: 309

25

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002 or thereabouts, caused the intentional death of another person, as follows:

1.  In mid-January 2002, the Defendant telephoned Mohamed Sami Ibrahim Abdullah. The Defendant told Mohamed Abdullah that Ahmed Barghouti (known as "Al Faransi"), the bodyguard of Marwan Barghouti, the head of the Fatah Tanzim, which is an illegal organization, was asking to drive into Jerusalem a terrorist who would carry out a suicide attack with the aim of causing the deaths of as many civilians as possible. Mohamed Abdullah agreed to the suggestion of the Defendant to participate in the transporting of the above mentioned suicide terrorist to Jerusalem.

2.  On January 22, 2002, the defendant called Mohamed Abdullah and informed him that Ahmed Barghouti had talked to him and announced that the suicide terrorist for the purpose of carrying out the planned attack was ready and had to be driven to Jerusalem. Mohamed Abdullah again expressed his consent to the suggestion of the Defendant to participate in the execution of the planned attack.

3.  Later that day, the Defendant and Mohamed Abdullah met in Ramallah. The Defendant arrived at the meeting in an Isuzu pickup with Israeli license plates.

4.  The Defendant and Mohamed Abdullah traveled in the above mentioned Isuzu from Ramallah to Jerusalem in order to find a way that had no police or IDF checkpoints, with the aim of driving the suicide terrorist who would carry out the planned attack in Jerusalem later using the same route.

5.  The Defendant and Mohamed Abdullah traveled from Ramallah via Rafat and arrived at the Atarot Industrial Zone, where the two returned to the Jerusalem – Ramallah main road and traveled left to the junction leading to the Rama Camp, where they turned right and traveled to Adam Junction. At Adam Junction the two turned right and traveled to Hizma Junction, where they turned right and entered Anta. Through Anta, they arrived at the French Hill Junction, where the two turned right and returned to Ramallah. The Defendant and Mohamed Abdullah saw that […]

Prosecution case 240/02                    12

[Stamp] P 6: 309 [continued]

[...] on the way that they were traveling the suicide terrorist could be driven to Jerusalem without being stopped at police or IDF checkpoints.

6. When they arrived in Ramallah, the Defendant and Mohamed Abdullah traveled to the City Inn Hotel, which is near Ayosh Junction. In the "City Inn" hotel area, the Defendant and Mohamed Abdullah met the above mentioned Ahmed Barghouti, who introduced to the Defendant and to Mohamed Abdullah Sa'id Ramadan, a resident of Kfar Tal in the Nablus Area, who was armed with an M-16 rifle and two magazines for an M-16 assault rifle, interconnected using a magazine coupler.

7. Ahmed Barghouti informed the Defendant and Mohamed Abdullah that the above mentioned Sa'id Ramadan was the suicide terrorist whom they had to drive to Jerusalem in order for him to carry out a suicide attack there by shooting at Israeli civilians with the aim of causing the deaths of as many civilians as possible.

8. The Defendant and Mohamed Abdullah hid the above mentioned M-16 assault rifle and magazines in the above mentioned Isuzu of the Defendant.

9. The Defendant drove the Isuzu, with Sa'id Ramadan sitting in the seat next to the driver's seat and Mohamed Abdullah sitting in the rear seat.

10. The Defendant and Mohamed Abdullah transported Sa'id Ramadan to Jerusalem on a route that they had inspected earlier that day as described above.

11. In Jerusalem, the Defendant and Mohamed Abdullah traveled to Sheikh Jarah St. There they took out the M-16 assault rifle and magazines that were hidden inside the vehicle of the Defendant and handed them over to Sa'id Ramadan. Mohamed Abdullah moved to the seat next to the driver's seat while Sa'id Ramadan moved to the back seat, holding the M-16 assault rifle and the magazines in his hands.

12. The Defendant and Mohamed Abdullah drove Sa'id Ramadan to Hanevi'im Street.

13. During the drive, Sa'id Ramadan complained to the Defendant and Mohamed Abdullah that the new shoes that they had bought for him for the attack were too small and tight. Mohammed Abdullah took off his Reebok shoes and handed them over to Sa'id Ramadan saying "go up to heaven with Reebok shoes".

14. Upon reaching the junction of Strauss and Hanevi'im Streets, the Defendant and Mohammed Abdullah stopped the Isuzu.

[Stamp] P 6: 310

27

15. The Defendant and Mohammed Abdullah told Sa'id Ramadan to go out on foot on Jaffa Street and start to shoot where he would see many people.

16. After Sa'id Ramadan got out of the vehicle with the M-16 assault rifle and the ammunition, the Defendant and Muhammad Abdullah drove away from the site in the Isuzu, departed through the Musrara neighborhood to Highway No. 1 and from there drove via the main road to Ramallah.

17. Sa'id Ramadan, a few minutes after having gotten out of the vehicle of the Defendant, arrived at Jaffa Street.

18. At about 4:20 p.m., while standing opposite house no. 47 on Jaffa Street or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he was carrying, shouted "Allahu Akbar" and discharged automatic gunfire indiscriminately at the people who were on Jaffa Street, at the bus stop at the site, aboard the Egged bus no. 27 that was this stop at the time and at the people who were within the stores nearby with the aim of causing the deaths of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the site towards the parking lot in Harav Kook Street. There, Sa'id Ramadan changed magazines and continued to shoot at civilians with the aim of causing their death. Using the M-16 assault rifle that he carried, Sa'id Ramadan fired more than 38 cartridges. Sa'id Ramadan continued to shoot at civilians until he was killed by civilians and policemen who arrived at the site.

19. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Ora (Svetlana) Sandler**, who died as a result of gunshot wounds caused by the bullets that were fired by Sa'id Ramadan.

**Twenty sixth count**: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the previous count of the indictment, by his actions described in the previous count of the indictment, caused the intentional death of **the late Sarah Hamburger**, who died of gunshot wounds from the bullets that were fired by Sa'id Ramadan, who was brought to the above mentioned place for carrying out the said attack by the Defendant and Mohamed Sami Ibrahim Abdullah.

Prosecution case 240/02                    13

[Stamp] P 6: 310 [continued]

**Twenty seventh count**: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the twenty fifth count of the indictment, by his actions described in the twenty fifth count of the indictment, attempted to cause the intentional deaths of as many civilians as possible who at the time were on and near Jaffa Street. As a result of the gunfire at the site that was fired by Sa'id Ramadan, who was dispatched to carry out the above shooting attack by the Defendant and Mohamed Sami Ibrahim Abdullah, **more than 45 civilians were injured**.

**Twenty eighth count**: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 (A) of Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002 or thereabouts, maliciously and unlawfully destroyed or damaged property, as follows:

The above mentioned Defendant, at the above mentioned time, at the place set forth in the twenty sixth count of the indictment, through his actions described in the twenty fifth count of the indictment, maliciously and unlawfully damaged a large amount of property, including stores on Jaffa Street, an "Egged" bus stop, an "Egged" company bus, No. 27, and many vehicles, which were damaged by the gunfire that was discharged at the site by Sa'id Ramadan, who had been brought to the above mentioned site to carry out the said attack by the Defendant and Mohamed Sami Ibrahim Abdullah.

**Twenty ninth count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 (A) of the Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 6: 311