# EXHIBIT A.386
## (2 of 3)

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002 or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, at the time set forth, in the circumstances described in the twenty fifth count of the indictment, possessed an M-16 assault rifle, two magazines for an M-16 assault rifle and cartridges, without a permit certificate issued by or for a military commander.

**Thirtieth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late January – early February 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  At the time set forth, the Defendant called Mohamed Sami Ibrahim Abdullah. The Defendant informed Mohamed Abdullah that Ahmed Barghouti (known as "Al Faransi"), the bodyguard of Marwan Barghouti – the head of the Fatah Tanzim, which is an illegal organization, wanted to have another terrorist brought to Jerusalem, who was to carry out a suicide attack in Jerusalem, like the attack described in the twenty [...]

Prosecution case 240/02                   14

[Stamp] P 6: 311 [continued]

fifth count, with the aim of causing the deaths of as many civilians as possible. Mohamed Abdullah agreed to the offer of the Defendant to participate in driving the above mentioned suicide terrorist to Jerusalem.

2.   The Defendant and Mohamed Abdullah agreed that they would drive the suicide terrorist to Jerusalem in a Subaru, which they would request from Ahmed Barghouti.

3.   On that day, the Defendant and Mohamed Abdullah traveled to Ramallah, where they met Ahmed Barghouti. The Defendant and Mohamed Abdullah asked Ahmed to provide them a vehicle to transport the suicide terrorist to Jerusalem. Ahmed Barghouti provided the defendant and Mohamed Abdullah a gray Subaru, which belonged to the family of Ahmed Barghouti. Mohamed Abdullah returned with the Subaru to his home in Bir Nabala, while the Defendant traveled with his Isuzu pickup to his home in Kfar Aqab.

4.   On the following day, Ahmed Barghouti called the Defendant and Mohamed Abdullah and instructed them to come to the fuel station located in downtown Ramallah, pick up the suicide terrorist from there and drive him to Jerusalem in order for him to carry out the suicide attack there with the aim of causing the deaths of as many civilians as possible. The Defendant agreed.

5.   Mohamed Abdullah traveled in the Subaru until the Kalandia checkpoint, where he parked the vehicle and got into the Isuzu of the Defendant, who arrived at the site. From there, the two continued to the said meeting place.

6.   In Ramallah, at the above mentioned fuel station, the Defendant and Mohamed Abdullah met Ahmed Barghouti, who introduced them to the suicide terrorist who was with him. Ahmed Barghouti handed over to the suicide terrorist an M-16 assault rifle and three magazines filled with cartridges for M-16 assault rifles.

7.   The Defendant and Mohamed Abdullah hid the M-16 assault rifle and the magazines inside the Isuzu of the Defendant.

8.   The Defendant, Mohamed Abdullah and the suicide terrorist travelled to Jerusalem with the aim of the latter carrying out a shooting attack there and causing the deaths of as many civilians as possible.

[Stamp] P 6: 312

9.  The Defendant, Mohamed Abdullah and the suicide terrorist arrived at the Kalandia Checkpoint and bypassed it. Thereafter, Mohamed Abdullah switched to the Subaru, which he had left at the site earlier and drove to A-Ram Junction. Mohamed Abdullah passed the A-Ram checkpoint in the Subaru and waited at the site for the Defendant and the suicide terrorist, who had bypassed the A-Ram checkpoint on foot. Thereafter, The Defendant returned, got into the Isuzu, in which the weapon was hidden, and passed the A-Ram checkpoint while driving alone in the Isuzu with the weapon.

10. Mohamed Abdullah drove the suicide terrorist up to a mosque in Shuafat. The Defendant also arrived at this site in the Isuzu with the weapon and the ammunition.

11. There, the suicide terrorist asked to enter the mosque and pray before carrying out the suicide attack. The Defendant and Mohamed Abdullah agreed to the request of the suicide terrorist.

12. While the suicide terrorist was praying at the above mentioned mosque, the Defendant and Mohamed Abdullah traveled in the Subaru to Givat Shaul in Jerusalem with the aim of checking whether there were IDF or police checkpoints on the way. The two decided to drive the suicide terrorist to Givat Shaul with the aim of him carrying out the planned shooting attack there, because there were many civilians at this site.

13. When the Defendant and Mohamed Abdullah returned to the mosque in Shuafat in order to pick up the suicide terrorist from there and drive him to Givat Shaul with the aim of him carrying out the planned shooting attack there, the two did not find the suicide terrorist in the mosque.

14. The Defendant and Mohamed Abdullah called Ahmed Barghouti and reported to him that the suicide terrorist had fled from them. Ahmed Barghouti instructed the Defendant and Mohamed Abdullah to return to Ramallah.

15. The Defendant and Mohamed Abdullah returned to Ramallah, met Ahmed Barghouti there and handed over to the latter the above mentioned Subaru, the M-16 assault rifle and the magazines with the cartridges.

**Thirty first count**:

**Nature of the offense:** Possession of a firearm without a permit, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 (A) of the Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

Prosecution case 240/02                        15

[Stamp] P 6: 312 [continued]

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, at the time set forth in the previous count of the indictment or thereabouts, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed or capable of causing death or severe injury, without a permit certificate issued by or for a military commander, as follows:

The above mentioned Defendant, at the above mentioned time, in the circumstances described in the previous count of the indictment, possessed an M-16 assault rifle, three magazines for M-16 assault rifles and cartridges, without a permit certificate issued by or for a military commander.

[Stamp] P 6: 312 [continued]

**Thirty second count**:

**Nature of the offense**: Conspiring to cause intentional death, an offense under Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in mid-February 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, on February 15, 2002 or thereabouts, in Ramallah or thereabouts, met Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada and Ahmed Barghouti (known as "Al Faransi"), the bodyguard of Marwan Barghouti – the head of the Fatah Tanzim organization in the Area, which is an illegal organization.

During the above mentioned meeting, Ahmed Al Faransi asked the Defendant and his above mentioned colleagues to bring into Jerusalem a suicide terrorist, who would carry out a suicide attack with the aim of causing the deaths of as many people as possible. The Defendant and his above mentioned colleagues agreed to the said proposal. Ahmed Al Faransi informed the Defendant and his colleagues that he would bring the suicide terrorist in another day or two.

The Defendant, Hussam Shahada and Mohamed Abdullah planned to bring the suicide terrorist into Jerusalem in an Isuzu pickup belonging to the Defendant. The defendant and his above mentioned colleagues planned to transport the suicide terrorist to one of the places in Jerusalem that had many people in it for the suicide terrorist to carry out the planned suicide attack there. The Defendant, with Hussam Shahada and Mohamed Abdullah, also conducted a tour of Jerusalem and chose the places that in their opinion were suitable for carrying out a shooting attack against Israeli civilians. Among other places, the Defendant and his above mentioned colleagues chose the "Ramada" hotel, the tunnels of the Begin Highway and the French Hill Junction.

The above mentioned plan of the Defendant and his above mentioned colleagues did not go ahead because about two days after the above mentioned meeting, on February 17, 2002, Hussam Shahada was arrested by the Israeli security forces, and after a day, on February 18, 2002, the Defendant was also arrested by the Israeli security forces, and on February 20, 2003, Mohamed Abdullah was arrested by the Israeli security forces.

Prosecution case 240/02                                16

[Stamp] P 6: 313

**Witnesses of the prosecution**:

1.  Master Sergeant Yitzhak Yaakovof, Badge No. 1008358, Judea Investigations Office. [taker of the statements of The Defendant on April 7, 2002]

2.  Cadet Itamar Burgo, Badge No. 1038272, Minorities Squad – Jerusalem. [taker of the statements of The Defendant on February 24, 2002]

3.  Hussam Akel Rajb Shahada, Identity No. 975564733. (detainee) (Prosecution Case 243/01). – *3255/02 IPS*

4.  Mohamed Abed Rahman Salam Masleh, Identity No. 902845643. (detainee) (Prosecution Case 242/01). - *IPS*

5.  Mohamed Sami Ibrahim Abdullah, Identity No. 979469954. (detainee) (Prosecution Case 241/01) – *Hadarim. IPS.*

6.  Haitham Almutfak Hamdan, Identity No. 906934823. (detainee) (Prosecution Case 265/02). *2375/02 IPS.*

---

**Detailed Incident 1900/01**

7.  Chief Inspector Yuval Ravivo, Badge No. 1001123, Binyamin Station. [submission of initial crime scene visit & head of investigations office visit at crime scene visit report]

8.  Master Sergeant Zvi Sadeh, Badge No. 903286, Binyamin Station [submitter of exhibit cover form]

9.  Master Sergeant Albert Shalev, Badge No. 58159, Binyamin Station [submitter of exhibit cover form]

10. Sergeant Major Ezra Afif, Badge No. 464974, exhibits office – Forensic Identification, National Headquarters, Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

11. Sergeant Major Ziva Hoter, Badge No. 512699, Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 314

35

12. Superintendent Howard Silverwater, firearms laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of two expert opinions from forensic identification case BI/07 – 3811-01] (will be summoned upon explicit demand of the defense only)

13. Sergeant Major Eli Kojeman, Badge No. 46951, Yehuda Forensic Identification. [submitter of photograph tables]

14. Prof. Yehuda Hiss, the National Institution of Forensic Medicine, Tel Aviv. [submitter of expert opinion] (will be summoned upon explicit demand of the defense only)

15. Vladimir Litviniok, M.D., LN 30032, IDF [submitter of death notice]

16. Shmuel Landau, Identity No. 051541092 (details held by the prosecution) (father of the later Ronen Landau – drove a vehicle that was damaged)

17. Meir Levi, Identity No. 036592442 (details held by the prosecution) (was in the vehicle that was damaged)

18. Moti Namir, Identity No. 025002726 (details held by the prosecution) (was in an additional vehicle that was damaged)

19. Galia Amar, Identity No. 022838551. (details held by the prosecution)

---

**Detailed Incident 2059/01 Shafat**

20. Master Sergeant Yoram Hatan, Badge No. 943068, Shafat Station. [submitter of action report]

21. Master Sergeant Avi Dadana, Badge No. 462341, Forensic Identification – Zion Station. [submitter of initial crime scene visit report]

22. Superintendent Lior Nedivi, Badge No. 952127, Forensic Identification – Zion Station. [submitter of vehicle inspection report for Transit License No. 9319725]

23. Shimshon Ben Shmuel, Identity No. 054334495. (details held by the prosecution) (the bus driver).

24. Jamjoum Mohamed Khalil, Identity No. 23358716 (details held by the prosecution) (the Transit driver).

[Stamp] P 6: 314 [continued]

25. Andrew Feitzush, Identity No. 11720639 (details held by the prosecution) (injured in the attack)

26. Hanna Shapira, Identity No. 025290917 (details held by the prosecution) (injured in the attack)

_____

**Detailed Incident 2159/01 Binyamin**

27. Master Sergeant Ronen Amar, Badge No. 956813, Binyamin Station. [submitter of action report]

28. First Sergeant Shabi Ovadia, Badge No. 560441, Binyamin Station. [submitter of photograph tables & seizure and marking report].

29. Superintendent Ofer Chelouche, Badge No. 916718, the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of initial incident scene visit report – seizure of cartridge cases and bullet fragments]

30. Master Sergeant Chaim Toledano, Badge No. 1004332, Binyamin Station. [submitter of memorandum – exhibit chain & exhibit cover form & crime scene visit report]

31. Sergeant First Class Daniel Turgeman, Badge No. 1013796, the Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

32. Superintendent Avi Kofman, Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 – 4238/01] (will be summoned upon explicit demand of the defense only)

33. Vladimir Goler, M.D., License No. 26163, Magen David Adom ambulance service – Lod Station. [submitter of medical reports from scene & death notice & statement]

34. Nir Alon, M.D., Identity No. 031849201, IDF. [statement]

35. Ricardo Nachman, M.D., the National Institution of Forensic Medicine. [submitter of two expert opinions] (will be summoned upon explicit demand of the defense only)

_____

Prosecution case 240/02                    17

[Stamp] P 6: 314 [continued]

**Detailed Incident 7915/01**

36.    Master Sergeant Zion Sasson, Badge No. 957068, Zion Station. [submitter of action report]

37.    Superintendent Lior Nedivi, Badge No. 952127, Forensic Identification – Zion Station. [submitter of initial scene visit report & photograph tables]

38.    Superintendent Yoram Saar, Zion Station. [finder of cartridge cases at the incident scene – chain of evidence]

39.    Superintendent Ami Leifer, Badge No. 959841, the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of vehicle inspection report – seizure of bullet fragments]

40.    Cadet Adva Malka, Badge No. 1049089, Zion Station Special Duties Department. [submitter of exhibit cover form]

41.    Sergeant Major Ziva Hoter, Badge No. 512699, Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

42.    Superintendent Avi Kofman, Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 – 4239/01] (will be summoned upon explicit demand of the defense only)

43.    Eyal Yitzhakiak, M.D., License No. 31004, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Moshe Weiss] (will be summoned upon explicit demand of the defense only)

44.    Yaakov Globerman, M.D., Hadassah Ein Kerem Hospital, Jerusalem. [submitter of death certificate of the late Meir Weisshaus] (will be summoned upon explicit demand of the defense only)

45.    Moshe Weiss, Identity No. 024001505. (details held by the prosecution) (severely injured in the attack)

46.    Yaffa Vaknin, Identity No. 058857863. (details held by the prosecution) (eyewitness)

---

**Detailed Incident 481/01 Zion**

[Stamp] P 6: 315

38

47. Tonie Amiel, Identity No. 032441040. (details held by the prosecution) (driver of the Honda vehicle)

48. Pini Maimon, Identity No. 025759762. (details held by the prosecution) (passenger in the Honda vehicle)

49. Pazit Maimon, Identity No. 040128084. (details held by the prosecution) (passenger in the Honda vehicle)

---

**Detailed Incident 8379/01 Zion**

50. Superintendent Lior Nedivi, Badge No. 952127, Forensic Identification – Zion Station. [submitter of initial scene visit report & seizure and marking report]

51. Master Sergeant Gavriel Abed, Identity No. 958736, Special Duties Department – Zion Station. [submitter of exhibit cover report]

52. Superintendent Ami Leifer, Badge No. 959841, the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of vehicle inspection report – seizure of bullet fragments]

53. Cadet Dror Avram, Badge No. 1039080, Special Duties Department – Zion Station. [submitter of exhibit cover report]

54. Zion Sadeh, Identity No. 029505724, Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

55. Sergeant Major Yossi Ben Israel, Badge No. 44771, Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

56. Superintendent Avi Kofman, Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 – 4723/01] (will be summoned upon explicit demand of the defense only)

57. Sigal Shazu, Zion Station. [finding of cartridge cases in the field – evidence chain]

Prosecution case 240/02                                18

[Stamp] P 6: 315 [continued]

58.  Malka Cohen, Identity No. 038791386. (details held by the prosecution) (injured in the attack)

59.  Pinchas Cohen, Identity No. 038348256. (details held by the prosecution) (injured in the attack)

60.  Ohav Ami Yechiel, Identity No. 059214320. (details held by the prosecution) (eyewitness – cared for casualties)

61.  Yair Eden, M.D., License No. 33272, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Pinchas Cohen] (will be summoned upon explicit demand of the defense only)

62.  Menachem Gross, M.D., License No. 30146, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Malka Cohen] (will be summoned upon explicit demand of the defense only)

---------------------

**Detailed Incident 39/02 Binyamin**

63.  Inspector Michael Malka, Badge No. 1040320, Patrol Unit – Binyamin Station. [submitter of action report]

64.  First Sergeant Kobi Sabag, Badge No. 56494, Binyamin Station. [submitter of investigation memorandum / seizure and marking]

65.  Sergeant Major Eli Kojman, Badge No. 46951, Yehuda Forensic Identification. [submitter of photograph tables & collected cartridge cases from the incident scene]

66.  Superintendent Ami Leifer, Badge No. 959841, the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of photograph tables & vehicle inspection report]

67.  Master Sergeant Meir Vaanunu, Badge No. 1018332, Binyamin Station. [submitter of exhibit cover report]

68.  Sergeant Major Ziva Hoter, Badge No. 512699, Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

69.  Lieutenant Nir Eilon, M.D., License No. 33216, IDF (details held by the prosecution) [statement – pronouncement of the death of the late Yoela Chen & care for the casualty]

[Stamp] P 6: 315 [continued]

70. Shaul Beit, M.D., License No. 33027, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of physician certificate – illness summary of Rachel Eini] (will be summoned upon explicit demand of the defense only)

71. Rachel Eini, Identity No. 075966614. (details held by the prosecution) (injured in the attack)

72. Sami Vaknin, Identity No. 027798040. (details held by the prosecution) [statement & sketch] (eyewitness)

73 Nachshon Barashi, Identity No. 05033235 (details held by the prosecution) (identification of the victim)

---

**Detailed Incident 502/02 Zion**

74. Chief Inspector Dror Asraf, Badge No. 942276, Special Duties Department – Zion Station [submitter of memorandum, seizure and marking report]

75. Sergeant Major Yigal Daniel Special Duties Department – Zion Station [submitter of seizure and marking report]

76. Cadet Zvika Reisner, Special Duties Department – Zion Station [submitter of memorandum, seizure and marking report & photographs]

77. Sergeant First Class Zion Tabadi, Badge No. 1043413, Special Duties Department – Zion Station [submitter of action report – finding of magazine coupler]

78. Sergeant Major Asher Levi, Badge No. 47720, Questioning – Zion Station [submitter of seizure and marking report]

79. Benny Azriel, Identity No. 303647598. (details held by the prosecution) (eyewitness – pursued the terrorist)

80. Amed Anidat, Badge No. 739037, Jerusalem Border Guard. (eyewitness – pursued and shot at the terrorist)

81. Shai Cohen, Badge No. 1042043, Patrol Unit 2 – Zion Station. (eyewitness – shot at the terrorist)

[Stamp] P 6: 316

41

82. Noam Gabai, Identity No. 033121070, Jerusalem Subdistrict Unit. (eyewitness – pursued and shot at the terrorist)

83. Chanan Benaim, Badge No. 1049188, Motorcycle Special Patrol Unit – Shalem Station. (eyewitness – pursued the terrorist, disarmed the terrorist after the terrorist was killed)

84. Genadi (Guy) Melnik, Identity No. 309130540. (details held by the prosecution). (eyewitness – a security guard who was at the site – opened fire and shot the terrorist)

85. Alon Halfon, Badge No. 761775, Detectives – Jerusalem Central Unit. (eyewitness – pursued and shot at the terrorist)

86. Avi Ben-Ami, Badge No. 996140, Detectives – Jerusalem Central Unit. (eyewitness –shot at the terrorist)

87. Chaim Salah, Identity No. 033401019. (details held by the prosecution) (eyewitness – driver of "Egged" bus who was at the site of the attack)

88. Boris Abtisian, Identity No. 309086171. (details held by the prosecution) (eyewitness)

89. Yekutiel-Israel Alouche, Identity No. 310101647. (details held by the prosecution) (eyewitness)

90. Moshe Maman, Identity No. 60246911. (details held by the prosecution) (eyewitness)

91. Tova Yitzhaki, Identity No. 051270353. (details held by the prosecution) (eyewitness)

92. Mazal Yitzhaki, Identity No. 04330150. (details held by the prosecution) (eyewitness)

93. Yaron Avrahami, Identity No. 640712770. (details held by the prosecution) (eyewitness)

94. Pinchas Bentura, Identity No. 055611230. (details held by the prosecution) (eyewitness)

95. Kfir Kedem, Identity No. 039381249. (details held by the prosecution) (eyewitness – saw the terrorist arriving at the attack site on foot)

96. Yaakov Sandler, Identity No. 307750984. (details held by the prosecution) (identification of the body of the late Ora (Svetlana) Sandler)

97. Dafna Wilner, M.D., License No. 29234, Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Ora (Svetlana) Sandler) (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 316 [continued]

98.  Elena Vaslov, M.D., Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Sarah Hamburger) (will be summoned upon explicit demand of the defense only)

An additional list of witnesses concerning the casualties in the attack on Jaffa Street on January 22, 2002 and medical certificates related to their injury will be delivered during the trial

------------------------  [Signature]
Michael Kotlik, Lieutenant
Military Prosecutor

Date: April 21, 2002

Reference: 240-02

Prosecution case 240/02                    19

[Stamp] P 6: 316 [continued]

43

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                        Plaintiffs,

        vs.                                          No. 04 Civ. 00397 (GBD) (RLE)

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                        Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the
      document received by Rina Ne'eman Hebrew Language Services, to the best of my
      knowledge and belief.  The document is designated as P6: 298-316.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew
      University of Jerusalem (Israel) and 30 years of translation experience.  I am fluent in
      Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and
      accurate translation of the Hebrew-language document bearing the bates number, P6:
      298-316.

                                                    _____
                                                    Rina Ne'eman

ss.: New Jersey

On the 28th day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28th day of February, 2014


_____
Notary Public

HALA Y GOBRIAL
Notary Public
State of New Jersey
My Commission Expires Apr. 18, 2017
I.D.# 2418990

<table>
<tr><td>צבא</td><td></td><td>הגנה</td><td></td><td>לישראל</td></tr>
</table>

| צבא | | הגנה | | לישראל |

בבית    המשפט    הצבאי          תיק ביהי"מ :    8262 02/
בבית                      אל                       תיק תביעה :    240/02
בפני                      הרכב                     תיק פ.א.   :    1900/01 בנימין
                                                                2059/01 שפט
                                                                2159/01 בנימין
                                                                7915/01 ציון
                                                                481/01 ציון
                                                                8379/01 ציון
                                                                39/02 בנימין
                                                                502/02 ציון

## במשפט שבין התובע הצבאי - המאשים

### - נ ג ד -



כתב אישום זה נתקבל
בתאריך   21.4.02
ונרשם ביומן בתיק
ע"י ביהמ"ש   (חתימה)

פראס צאדק מחמד עיאנם (מוכנה "חיטאווי")
ת.ז. 025806985, יליד 28.09.74, תושב כפר עקב/סמיר אמיס
עצור מיום 18.02.02

### - ה נ א ש ם -

## כ ת ב - א י ש ו ם

### הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

#### פרט ראשון:

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות
הגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו, היה חבר או פעל
כחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר בחוליה צבאית, אשר שמה לה למטרה ביצוע
פיגועים נגד אזרחים ישראליים הן באיזור, הן מחוצה לו. הנאשם פעל בחוליה הצבאית האמורה
ביחד עם מחמד ע/רחמאן סאלם מצלח (המכונה "אבו סטחה"), מחמד סאמי אברהים עבדאללה,
חוסאם עקל רביע שחאדה, הייתם אלמנ'ופק חמד'אן, זיד'אן אל ב'דוי, ניואר והד'אן וואלי על'יאן.
החוליה הצבאית האמורה פעלה בחסות "גדודי חללי אלאקצא" - הזרוע הצבאית של "התנ'וים"
של ארגון הפת'ח, שהוא התאחדות בלתי מותרת. לצורך פעילות החוליה הועברו לחבר'יה כספים,
טלפ'ונים סלולריים וכלי נשק מ'התנ'וזים" של פת'יח. הנאשם וחבריו לחוליה הצבאית האמורה
העבירו דיווחים שוטפים על הפיגועים, אשר אותם ביצעו לאנשים בכירים ב"תנ'וזים" של הפת'ח,
כאשר אותם האנשים דאגו להעביר את הדיווחים לידיעתו של מרזואן ברגותי, ראש "התתנזים" של
הפת'ח באיזור.

הנאשם פעל בחוליה הצבאית האמורה כפי שיתואר בפרטי האישום הבאים.

**פרט שני:**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 51(א) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, באמצע שנת 2001 או במועד הסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במועד האמור, ביחד עם מחמד סאמי אברהים עבדאללה וחוסאם עקל רגיב שחאדה, תכנן לבצע פיגוע ירי לעבר כלי רכב ישראליים בכביש מספר 1 ירושלים-תל-אביב. הנאשם וחבריו הנ״ל אפילו בחרו את המקום שבו יבצעו את הפיגוע המתוכנן. בסופו של הדבר, הנאשם וחבריו הנ״ל לא ביצעו את הפיגוע המתוכנן כי חברם לחוליה הצבאית המתוארת בפרט האישום הראשון, על עלייאן, טען כי הוא עם אנשים נוספים מתכננים לבצע פיגוע זהה באותו המקום שבחר הנאשם ביחד עם חוסאם שחאדה ומחמד עבדאללה.

**פרט שלישי:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, באמצע שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ״ל, במועד האמור, במקום שאינו בידיעת התביעה, רכש תמ״ק MP-5 במטרה להשתמש בו בפיגועים נגד המטרות הישראליות, אשר אותם תכנן לבצע במסגרת פעילותו בחוליה הצבאית האמורה בפרט האישום הראשון. הנאשם רכש את תמ״ק MP-5 הנ״ל ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט רביעי:**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 51(א) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש יולי 2001 או במועד הסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם על עלייאן, מחמד סאמי אברהים עבדאללה, חוסאם עקל רגיב שחאדה וחיים אלמותפק חמדאן, לבצע פיגועים נגד המטרות הישראליות. הנאשם וחבריו הנ״ל אף תכננו לחשיב אמצעי לחימה לצורך ביצוע הפיגועים המתוכננים ממרוואן ברגותי, ראש ״התנזים״ של הפת״ח באיזור, שהוא התאחדות בלתי מותרת.

**פרט חמישי: (פ.א. 1900/01 בנימין)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, ביום 26.07.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1.  הנאשם הנ״ל, בשעות הערב במועד האמור, ברמאללה או בסמוך לכך, נפגש עם חוסאם עקל רגיב שחאדה ועלי עלייאן. עלי עלייאן הביא עמו שני כלי נשק אוטומטיים - רוס״ר M-16 ורוס״ר קלצ׳ניקוב עם שתי מחסניות מלאות בכדורים.

2.  עלי עלייאן מסר לנאשם ולחוסאם שחאדה כי בכוונתו לבצע פיגוע ירי באיזור גבעת זאב במטרה לגרום למותם של אזרחים ישראליים.

3.  הנאשם וחוסאם שחאדה הסכימו להצעתו של עלי עלייאן להשתתף בפיגוע הירי המתוכנן.

2

4. הנאשם, חוסאם שחאדה ועלי עליאן יצאו מרמאללה ברכב סובארו גנוב, אשר אותו הביא עלי עליאן. הנאשם וחבריו הנ"ל נסעו דרך מחנה הפליטים קלנדיה והגיעו לכפר אלג'יב.

5. עלי עליאן החנה את רכב הסובארו הנ"ל ברחוב הראשי בכפר אלג'יב בסמוך לכביש 436 המחבר בין ירושלים לגבעת זאב.

6. הנאשם נשאר ברכב הסובארו על מנת לשמש כשומר ומתריע.

7. חוסאם שחאדה, כשהוא חמוש ברוס"ר M-16, ועלי עליאן, כשהוא חמוש ברוס"ר קלצ'ניקוב, התקדמו ברגל לעבר כביש 436. חוסאם שחאדה ועלי עליאן התמקמו במרחק של כ-150 מטר אחד מהשני בצד כביש 436, מכיוון הכפר אלג'יב. חוסאם שחאדה ועלי עליאן המתינו לרכב ישראלי שיעבור במקום על מנת לבצע לעברו פיגוע ירי ובכך לגרום למותם של נוסעי הרכב.

8. לאחר כ-10 דקות, בסמוך לשעה 22:50, חוסאם שחאדה ועלי עליאן הבחינו ברכב ניסן אלמרה בצבע כסף, מ.ר. 1903129, (להלן: הרכב) אשר בו נסע שמואל לנדאו, מאיר לוי ורונן לנדאו ז"ל.

9. הרכב נסע מכיוון ירושלים לכיוון גבעת זאב.

10. חוסאם שחאדה ניסה לירות לעבר הרכב בכוונה לגרום למותם של הנוסעים בו, אך עקב תקלה טכנית כלי הנשק שבו הוא החזיק לא ירה.

11. בשלב זה, עלי עליאן פתח באש אוטומטית לעבר הרכב בכוונה לגרום למותם של הנוסעים בו.

12. מספר קליעים שנורו על-ידי עלי עליאן פגעו ברכב וברונן לנדאו ז"ל.

13. מיד לאחר ביצוע הירי, חוסאם שחאדה ועלי עליאן נמלטו בריצה לרכב הסובארו, אשר בו המתין להם הנאשם. לאחר מכן, הנאשם, עלי עליאן וחוסאם שחאדה נמלטו ברכב הסובארו לרמאללה.

14. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **רונן לנדאו ז"ל**, אשר נפטר במקום כתוצאה מפגיעת קליע, אשר נורה על-ידי עלי עליאן כפי שתואר.

## פרט שישי: (פ.א. 1900/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 26.07.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 22:50, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של שמואל לנדאו ומאיר לוי - נוסעי רכב ניסן אלמרה, מ.ר. 1903129, המתוארים בפרט האישום הקודם, למותם של מוטי נמיר - נהג המשאית דאף 45, מ.ר. 7362515, וכן למותם של כל האנשים אשר נסעו במועד האמור בכביש 436.

## פרט שביעי:

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 26.07.01 או במועד הסמוך לכך, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במועד האמור, בנסיבות המתוארות בפרט האישום החמישי, החזיק ברוס"ר M-16, ברוס"ר קלצ'ניקוב ובשתי מחסניות מלאות בכדורים, ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו.

3

P 6: 300

<u>פרט שמיני:</u>

<u>מהות העבירה:</u> אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש אוגוסט 2001 או בסמוך לכך, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם מחמד סאמי אברהים עבדאללה וחוסאם עקל רגיב שחאדה, הגיע למחצבה של משפחת טריפי הנמצאת בין ביתוניא לרמאללה. הנאשם הביא עמו רוסי"ר M-16, אשר אותו קיבל מטארק מאלחי א-נ'וף.

הנאשם הנ"ל, במועד ובמקום האמורים, לימד את חוסאם שחאדה ואת מחמד עבדאללה להשתמש ברוסי"ר M-16. לאחר האימון התיאורטי הנ"ל, הנאשם, וכן כל אחד מחבריו הנ"ל, ירו מספר כדורים ברוסי"ר M-16 הנ"ל לעבר בקבוקים ריקים על מנת להתאמן בירי ברוסי"ר M-16.

<u>פרט תשיעי:</u>  (פ.א. 2059/01 שפט)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14א(א) ו-19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 18.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה ובסמוך לכך, נפגש עם חוסאם עקל רגיב שחאדה, עלי עליאן וניזאר וחדאן.
2. במהלך הפגישה האמורה, הנאשם וחבריו הנ"ל החליטו לבצע באותו היום פיגוע ירי לעבר כלי רכב ישראליים במטרה לגרום למותם של אזרחים הנוסעים בכלי הרכב הנ"ל.
3. הנאשם וחבריו הנ"ל החליטו לבצע את פיגוע הירי במקום בירושלים שנבדק קודם לכן על-ידי עלי עליאן - צומת רחוב דוכיפת ושדרות עוזי נרקיס - הצומת המוביל לשכונת פסגת זאב ונהמצא בסמוך לבית חנינא החדשה.
4. חוסאם שחאדה, עלי עליאן וניזאר נסעו ברמאללה ברכב סובארו כחול גנוב, אשר אותו הביא עלי עליאן. הנאשם נסע לפני רכב הסובארו הנ"ל ברכב איסוזו טנדר שלו וזאת על מנת לשמש כשומר ומתריע ולהודיע לחבריו על מיקומו המשוערת וזהי"ל בדרך.
5. עלי עליאן הביא את לצורך ביצוע פיגוע הירי המתוכנן רוסי"ר קלצ'ניקוב ורוסי"ר M-16.
6. לאחר שהנאשם וחבריו הנ"ל הגיעו לצומת האמור, חוסאם שחאדה ועלי עליאן ירדו מרכב הסובארו, כאשר חוסאם שחאדה מחזיק ברוסי"ר M-16, ואילו עלי עליאן מחזיק ברוסי"ר קלצ'ניקוב. ניזאר וחדאן נשאר ברכב הסובארו כשהוא מוכן לנסוע מהמקום באופן מיידי על מנת למלט את חוסאם שחאדה ואת עלי עליאן מיד לאחר שיבצעו את פיגוע הירי המתוכנן.
7. חוסאם שחאדה ועלי עליאן התקדמו רגלית לצומת הנ"ל. שם, בסמוך לשעה 22:55 במועד האמור, חוסאם שחאדה ועלי עליאן הבחינו באוטובוס "אגד" קו 45, מ.ר. 8368901, אשר בו נהג שמשיון בן שמואל ואשר היה מלא בנוסעים (להלן: האוטובוס).
8. חוסאם שחאדה ניסה לירות לעבר האוטובוס במטרה לגרום למותם של הנוסעים בו ברוסי"ר M-16 שהחזיק, אך בשל תקלה טכנית כלי הנשק הנ"ל לא ירה.
9. עלי עליאן ירה ברוסי"ר קלצ'ניקוב שהחזיקו שחמיוזו מספר רב של כדורים לעבר האוטובוס במטרה לגרום למותם בו. מספר קליעים שנורו על-ידי עלי עליאן פגעו באוטובוס.
10. כתוצאה מפגיעת הקליעים שנורו על-ידי חברו של הנאשם, עלי עליאן, נפצעה בבטנה רות שפירא, בת 6 שנים, אשר נסעה באוטובוס ואילו נוסע נוסף - אנדרו פייצוש נפצע ברגלו.
11. מספר קליעים שנורו על-ידי חברו של הנאשם, עלי עליאן, פגעו ברכב פורד טרנזיט, מ.ר. 9310725, אשר בו נהג גימנזים חליל.
12. מיד לאחר ביצוע פיגוע הירי, חוסאם שחאדה ועלי עליאן חזרו לרכב הסובארו וניזאר וחדאן הסיע אותם לרמאללה.

4

240/02 ת.ת.

## פרט עשירי:

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשייל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מסי 225), תשכייח-1968.

**פרטי העבירה:** הנאשם הנייל, בין באיזור ובין מחוצה לו, ביום 18.08.01 או במועד הסמוך לכך, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר הממתכוון או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהונפקה על-ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנייל, במועד האמור, בנסיבות המתוארות בפרט האישום הקודם, ביחד עם אחרים, החזיק ברוביי M-16 וברוסייר קלצייניקוב, וזאת ללא תעודת היתר שהונפקה על-ידי מפקד צבאי או מטעמו.

## פרט אחד-עשר: (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשייל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכייח-1968.

**פרטי העבירה:** הנאשם הנייל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. חוסאם עקל רגיב שחאדה, בחודש אוגוסט 2001, ברמאללה או בסמוך לכך, הציע לנאשם ועלי עלייאן לבצע פיגוע ירי בכביש 443, באיזור חכפר בית ער, וזאת במטרה לגרום למותם של אזרחים ישראליים. הנאשם ועלי עלייאן הסכימו להצעתו של חוסאם שחאדה.

2. הנאשם, חוסאם שחאדה ועלי עלייאן החליטו כי הם יצלמו את הפיגוע, אשר אותו הם מתכוונים לבצע, באמצעות מצלמת וידאו. הנאשם, עלי עלייאן וחוסאם שחאדה פנו אל היתמם אלמותפק חמדאן ועייסו את האחרון לצורך צילום הפיגוע המתוכנן.

3. הנאשם הנייל, בחודש אוגוסט 2001, בעין אום שראוייט שברמאללה, נפגש עם מחמד ערחמאן סאם מצלת (המכונה ייאבו סטחאיי), חוסאם שחאדה ועלי עלייאן. הנאשם וחבריו הנייל ביקשו כי מחמד מצלת יספק להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

4. ביום 25.08.01, הנאשם, עלי עלייאן וחוסאם שחאדה פנו אל מחמד מצלת וביקשו לקבל עד באותו היום כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

5. באותו היום, מחמד מצלת פנה אל אחמד ברזותי (המכונה ייאל פראנסייי), שומר ראשו של מרזוואן ברגותי, ראש ייהתנזיםיי של הפתייח באיזור, שהוא התאחדות בלתי מותרת. מחמד מצלת ביקש מאחמד ברגותי לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים. לאחר זמן קצר, עד באותו היום, אחמד ברגותי מסר לידי מחמד מצלת תמייק MP-5 עם מחסנית הטעונה בכדורים.

6. בשעות הערב, באותו היום, ברמאללה או בסמוך לכך, מחמד מצלת מסר את תמייק MP-5 והתחממושת הנייל לנאשם וחוסאם שחאדה, אשר הגיעו ברכב איסוזו טנדר של הנאשם.

7. מיד לאחר קבלת כלי הנשק, הנאשם, חוסאם שחאדה, היתמם אלמותפק חמדאן ועלי עלייאן יצאו מרמאללה לכיוון כביש 443 במטרה לבצע עם את פיגוע הירי המתוכנן. הנאשם וחבריו הנייל נסעו בשני כלי רכב - האחד, איסוזו טנדר של הנאשם כשהנני, רכב סובארו גונב שהביא עלי עלייאן לצורך ביצוע הפיגוע המתוכנן.

8. בהגיעם לכביש 443, הנאשם המשיך לנסוע לבדו ברכב האיסוזו, כקילומטר לפני רכב הסובארו שבו נסעו הנאשם חוסאם שחאדה, היתמם חמדאן ועלי עלייאן, על מנת להודיע לחבריו הנייל על מחסומי צהייל והמשטרה בדרך.

9. כל האנשים הנייל נסעו בכביש 443 לכיוון תל-אביב, כאשר עלי נוהג ברכב הסובארו, לידו יושב היתמם חמדאן, החמוש ברוסייר קלצייניקוב, ואילו חוסאם שחאדה יושב במושב האחורי, כשהוא חמוש בתמייק MP-5.

10. באותו היום, 25.08.01, סמוך לשעה 22:30, ליד תחנת הדלק יידור אנרגייהיי, חבריו הנייל של הנאשם הבחינו ברכב פולקסווגון פאסאט, מ.ר. 6902818, אשר בו נסע בני הזוג שרון וינינ בן שלום זייל עם שני ילדיהם ודורון יוסף סוורי זייל.

11. עלי עלייאן, שנהג ברכב הסובארו, עקף את רכב הפולקסווגון הנייל ונסע במקביל אליו. בשלב זה, חוסאם שחאדה והיתמם חמדאן פתחו באש אוטומטית בתמייק MP-5 וברוסייר קלצייניקוב, לעבר רכב הפולקסווגון הנייל במטרה לגרום למותם של נוסעיו.

5

12. מספר רב של הקליעים שנורו על-ידי חוסאם שחתאדה והייתם חמדאן פגעו ברכב הפולקסוואגן ובנוסעיו.

13. לאחר שחבריו הנ"ל של הנאשם הבחינו כי רכב הפולקסוואגן נוסע בזיגזג, הם האיצו את המהירות ונמלטו לכפר בית ליקיא. שם המתין להם הנאשם. חוסאם שחתאדה, עלי עליאן והייתם חמדאן עלו לרכב האיסוזו של הנאשם ונסעו לכפר בית סירא, שם הם הסתירו את כלי הנשק בסמוך לביתו של הייתם חמדאן. לאחר מכן, הנאשם, חוסאם שחתאדה, הייתם חמדאן ועלי עליאן חזרו לרמאללה ברכבו של הנאשם.

14. מיד לאחר חזרתם לרמאללה, הנאשם נפגש בעין ערים שרא"ייט עם מחמד מצלח ודיווח לאחרון על הפיגוע שבוצע כאמור לעיל.

15. לאחר מספר ימים, הנאשם הביא את תמ"ק MP-5 הנ"ל מבית סירא והחזירו למחמד מצלח, אשר העביר את כלי הנשק הנ"ל לידי אחמד ברגותי הנ"ל ודיווח לאחרון על פיגוע הירי שבוצע בכלי הנשק הנ"ל.

16. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותו של **יניב בן שלום ז"ל**, אשר נפטר כתוצאה מפגיעת קליעים בראשו ובגבו, אשר נורו מתמ"ק MP-5 ומרוס"יר קלצ'ניקוב על-ידי חוסאם שחתאדה והייתם חמדאן.

17. יום לאחר ביצוע הפיגוע הנ"ל, הנאשם, חוסאם שחתאדה ועלי עליאן נפגשו עם אחמד ברגותי הנ"ל ודיווחו לו על ביצוע הפיגוע הנ"ל. אחמד ברגותי מסר לנאשם וחבריו כי הוא כבר יודע שהנאשם עם חבריו הנ"ל הם אלה שביצעו את הפיגוע המתואר לעיל וכבר העביר דיווח על כך למרואנ ברגותי, ראש "התנזים" של הפת"ח באיזור, שהוא התאחדות בלתי מותרת.

## **פרט שניים-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א)1 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום האחד-עשר, במעשיו המתוארים בפרט האישום האחד-עשר, גרם בכוונה למותו של **שרון בן שלום ז"ל**, אשר נפטרה כתוצאה מפגיעות הקליעים בראשה ובגבה, אשר נורו מתמ"ק MP-5 ומרוס"יר קלצ'ניקוב על-ידי חוסאם עקל רג'ב שחתאדה והייתם אלמותפ'ק חמדאן.

## **פרט שלושה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א)1 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום האחד-עשר, במעשיו המתוארים בפרט האישום האחד-עשר, גרם בכוונה למותו של **דורון יוסף סוורי ז"ל**, אשר נפטר כתוצאה מפגיעת הקליעים, אשר נורו מתמ"ק MP-5 ומרוס"יר קלצ'ניקוב על-ידי חוסאם עקל רג'ב שחתאדה והייתם אלמותפ'ק חמדאן.

ת.ת. 240/02

P 6: 303

<u>פרט ארבעה-עשר:</u>  (פ.א. 2159/01 בנימין)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום האחד-עשר, במעשיו המתוארים
בפרט האישום האחד-עשר, ניסה לגרום בכוונה למותם של נוסעי רכב פולקסוווגן פסאסט, האמור
בפרט האישום האחד-עשר.
כתוצאה מפעילות הקליעים, אשר נורו מתמ"ק MP-5 ומרוסי"ר קלצ'ניקוב על-ידי חוסאם עקל רגיב
שחאדה והיתום אלמותאפק חמדאן, כפי שתוארו בפרט האישום האחד-עשר, נפצעה באורח קל
מרסיסים ברגלה בתם של בני הזוג שרון וניב בן שלום ז"ל.

<u>פרט חמישה-עשר:</u>

<u>מהות העבירה:</u> החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01, וכן כשבוע לאחר מכן, או במועד הסמוך
לכך, החזיק בלא כלי-יריה, תחמושת, פצצות, רימוני-יד או חפץ נפיץ או מבעיר, כלי או חפץ או
דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהונעקה על-ידי מפקד
צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במעמדים האמורים, בנסיבות המתוארות בפרט האישום האחד-עשר, החזיק
ברשותו רוסי"ר קלצ'ניקוב ותמ"ק MP-5, וזאת ללא תעודת היתר שהונעקה על-ידי מפקד צבאי או
מטעמו.

<u>פרט שישה-עשר:</u>  (פ.א. 7915/01 ציון)

<u>מהות הבעירה:</u> גרימת מוות בכוונה, עבירה לגי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי הבעירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה, נפגש עם מחמד סאמי אברהים עבדאללה, חוסאם
   עקל רגיב שחאדה, הייתם אלמותאפק חמדאן ועלי עליאן. הנאשם הגיע לפגישה הנ"ל כשהוא
   חמוש בתמ"ק MP-5, אשר אותו קיבל ביחד עם חוסאם שחאדה מידי מחמד ע/רחמאן/ סאלם
   מצלח (המכונה "אבו סטאח") לצורך ביצוע פיגוע ירי, ואילו היתם חמדאן הגיע כשהוא חמוש
   באקדח טופי.
2. הנאשם וחבריו הנ"ל החליטו לצאת לירושלים ולבצע שם פיגוע ירי במטרה לגרום למותם של
   אורחים ישראליים.
3. בסביבות השעה 22:00, ביום 15.09.01, הנאשם וכל חבריו הנ"ל נסעו ברמאללה לירושלים
   ברכב איסוזו טנדר של הנאשם.
4. הנאשם נתן ברכב האיסוזו הנ"ל ונסע ביחד עם חבריו הנ"ל על מנת להראות להם מקום שבו
   יצעו את פיגוע היירי המתוכנן וכן על מנת להראות לחבריו איך להימלט לאחר ביצוע הפיגוע
   האמור. הנאשם הסיע את חבריו הנ"ל לכביש מס' 9 המחבר בין שכונת רמות לבין שכונת
   הגבעה הצרפתית בירושלים. הנאשם הראה לחבריו איפה לבצע את הפיגוע המתוכנן ואיך
   להימלט לאחר מכן. בסיום הסיור האמור, הנאשם וחבריו הנ"ל חזרו לרמאללה.
5. בסביבות השעה 22:30, באותו היום, חוסאם שחאדה ביחד עם מחמד עבדאללה והייתם
   חמדאן נסע ברכב גנוב בצבע אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם על-ידי
   עליאן לצורך ביצוע הפיגוע המתוכנן (להלן: הרכב). לפני הרכב נסע הנאשם ברכב האיסוזו
   הנ"ל וזאת על מנת להודיע באמצעות טלפון סלולרי לחבריו הנ"ל על מחסומי המשטרה
   וצה"ל.

7                                                   ת.ת. 240/02

6. מחמד עבדאללה נהג ברכב הנ"ל, לידו ישב חוסאם שחאדה, כשהוא חמוש בתמ"ק MP-5, ובמושב האחורי ישב מחמד חמדאן, כשהוא חמוש באקדח טופי.

7. חבריו הנ"ל של הנאשם נעצרו בכביש מס' 9 בסמוך לצומת המוביל לשכונת רמת שלמה והמתינו לרכב ישראלי בודד שינוע למקום במטרה לבצע לעבור פיגוע ירי ולגרום למותם של נוסעי הרכב.

8. לאחר מספר דקות, בסמוך לשעה 23:10, הגיע למקום רכב רנו אקספרסר לבן, מ.ר. 2273706, (להלן: הרנו) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

9. מחמד עבדאללה החל לנסוע אחרי הרנו ועקף אותו.

10. כשהרכב, שבו נהג מחמד עבדאללה, נסע במקביל לרנו, חוסאם שחאדה והייתם חמדאן פתחו באש בתמ"ק MP-5 ובאקדח טופי לעבר נוסעי הרנו במטרה לגרום למותם.

11. מספר קליעים שנורו על-ידי חוסאם שחאדה והייתם חמדאן פגעו ברנו ובשני נוסעי הרנו – משה וייס ומאיר וייסבוייז ז"ל.

12. לאחר מכן, מחמד עבדאללה המשיך לנסוע רמות שכונת לכיוון ובסמוך למקום שבו נבנה גשר חדש פנה ימינה לדרך עפר המובילה לביר נבאללה.

13. לפני הכניסה לביר נבאללה, חבריו הנ"ל של הנאשם נפשו עם הנאשם שהמתינו להם במקום ברכב האיסוזו. משם הנאשם ביחד עם חבריו הנ"ל המשיכו בנסיעה לביר נבאללה ולאחר מכן נמלטו לרמאללה.

14. במהלך הנסיעה לרמאללה, חוסאם שחאדה התקשר אל מחמד מצלח, דיווח לו על ביצוע פיגוע הירי הנ"ל וביקש כי מחמד מצלח ידווח על הפיגוע הנ"ל לאחמד ברגותי ולמרואן ברגותי, ראש "התקוזים" של הפת"ח באיזור, שהוא התאחדות בלתי מותרת.

15. לאחר שהגיע לרמאללה, חוסאם שחאדה נפגש עם אחמד ברגותי ודיווח לו אישית על ביצוע פיגוע הירי הנ"ל.

16. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של מאיר וייסבוייז ז"ל, אשר נפטר בבית החולים מאוחר יותר באותו היום כתוצאה מפגיעות הקליעים שנורו על-ידי חוסאם שחאדה והייתם חמדאן בתמ"ק MP-5 ואקדח טופי כאמור.

## פרט שבעה-עשר : (פ.א. 7915/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בזמן כלשהו, ביום 15.09.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 23:10, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום למותו של משה וייס, אשר נהג ברכב רנו אקספרסר לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי חוסאם שחאדה והייתם חמדאן, כפי שתוארו בפרט האישום הקודם, פגע בראשו של משה וייס ופצע אותו בצורה קשה.

## פרט שמונה-עשר :

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בזמן כלשהו ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפיץ או מבער, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במועד האמור, ובנסיבות המתוארות בפרט האישום הששה-עשר, החזיק בתמ"ק MP-5 ובאקדח טופי, וזאת ללא תעודת היתר שתיענקה על-ידי מפקד צבאי או מטעמו.

<u>פרט תשעה-עשר:</u>  (פ.א. 481/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, ביחד עם מחמד
ע/רחמאן סאלם מצלח מצלח (מכונה "אבו סטחא"), מחמד סאמי אברהים עבדאללה וחוסאם עקל
רביב שחאדה, החליטו לבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים.

2. לצורך ביצוע פיגוע ירי המתוכנן, מחמד עבדאללה קיבל מידי טארק מאלחי א-נוף רכב מזדה
323 גוב בצבע אפור עם לוחיות רישוי ישראליות. לצורך ביצוע פיגוע הירי המתוכנן, מחמד
מצלח קיבל מאחמד ברנותי, שומר ראשו של מרוואן ברנותי, ראש "התנזים" של הפת"ח
באיזור, שהוא התאחזות בלתי מותרת, תמ"יק MP-5.

3. ביום 03.10.01, הנאשם יצא מרמאללה לכיוון ירושלים במטרה לבצע שם את פיגוע הירי
המתוכנן כשהוא נוהג ברכב איסוזו טנדר שלו וביחד עמו נוסע חוסאם שחאדה. ביחד עם
הנאשם ובריו הנ"ל יצאו גם מחמד עבדאללה, אשר נהג ברכב המזדה הנ"ל, ומחמד מצלח,
אשר נסע ביחד עם מחמד עבדאללה, כשהוא חמוש בתמ"יק MP-5 הנ"ל.

4. הנאשם וחוסאם שחאדה נסעו ברכב איסוזו הנ"ל לפני רכב המזדה הנ"ל וזאת במטרה להודיע
על מחסומי המשטרה וצה"ל בדרך. הנאשם וכל חבריו הנ"ל הגיעו לבית חנינא החדשה
שבירושלים. שם מחמד עבדאללה החנה את רכב המזדה וביחד עם מחמד מצלח הסתיר בתוך
הרכב את תמ"יק MP-5 הנ"ל. מחמד עבדאללה ומחמד מצלח עלו לרכב האיסוזו של הנאשם
ומשם המשיכו ברכב האיסוזו ביחד עם הנאשם וחוסאם שחאדה לכיוון כביש בגין.

5. הנאשם וחבריו הנ"ל הגיעו לכביש בגין. שם, הנאשם הראה לחבריו הנ"ל איפה לבצע את פיגוע
הירי המתוכנן ואיך לחימלט לאחר ביצוע פיגוע הירי. הנאשם וחבריו הנ"ל החליטו לבצע את
פיגוע הירי המתוכנן במנהרה הראשונה של כביש בגין מכיוון רמות וזאת על מנת שלא ישמעו
את קולות הירי. לאחר מכן, הנאשם וכל חבריו הנ"ל חזרו לבית חנינא, למקום שבו הושאר
רכב המזדה.

6. מחמד עבדאללה עלה לרכב המזדה, לידו תיישיב מחמד מצלח החמוש בתמ"יק MP-5. משם
מחמד עבדאללה נהג ברכב המזדה לכביש בגין במטרה לבצע שם את פיגוע הירי המתוכנן
ולגרום למותם של אזרחים ישראליים. ואילו הנאשם וחוסאם שחאדה נסעו ברכב האיסוזו
לכביש שעפאט וחמתינו להם שם.

7. מחמד עבדאללה ומחמד מצלח נסעו בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב
ישראלי בודד במטרה לבצע לעברו את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי
הרכב.

8. בסמוך לשעה 23:35, כשהם נוסעים לכיוון צפון, במנהרה האחרונה בכיוון נסיעתם, מחמד
עבדאללה ומחמד מצלח הבחינו ברכב הונדה אקורד, מ.ר. 1103217, חניוע בכביש בגין לכיוון
צפון. ברכב ההונדה נסעו טוני עמיאל, פיני מימון ופזית מימון.

9. מחמד עבדאללה עקף את רכב ההונדה הנ"ל. בעת שמחמד עבדאללה נסע במקביל לרכב
ההונדה הנ"ל, מחמד מצלח ירה כדור אחד בתמ"יק MP-5, אשר בו החזיק, לעבר נוסעי רכב
ההונדה, במטרה לגרום למותם. הקליע שוגר על-ידי מחמד מצלח לא פגע ברכב ההונדה
הנ"ל.

10. לאחר ביצוע פיגוע הירי האמור, מחמד עבדאללה ומחמד מצלח המשיכו בנסיעתם לכיוון
כביש מס' 9 המחבר בין שכונות רמות לשכונות הגבעה הצרפתית.


<u>פרט עשרים:</u>  (פ.א. 8379/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. לאחר שמחמד סאמי אברהים עבדאללה ביחד עם מחמד ע/רחמאן סאלם מצלח מצלח (המכונה
"אבו סטחא") ביצעו את פיגוע הירי של פרט האישום הקודם, השניים המשיכו
בנסיעם ברכב המזדה, המתואר בפרט האישום הקודם, לכיוון כביש מס' 9, המחבר בין שכונות

9

רמות לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חניה ובהמשך לרמאללה, וזאת
כפי שתוכננו קודם לכן על-ידי הנאשם וחבריו.

2. במהלך הנסיעה הנ"ל, מחמד מצלח, על-פי בקשתו של מחמד עבדאללה, בדק את תקינותו של
תמ"ק MP-5, אשר בו החזיק, ואף ירה מספר כדורים באוויר.

3. במהלך הנסיעה בכביש מס' 9 הנ"ל, בסמוך לשעה 23:45, מחמד עבדאללה ומחמד מצלח
חבינו ברכב סקודה, מ.ר. 6567709, אשר נסע בכביש מס' 9 לכיוון הגבעה הצרפתית. ברכב
הסקודה הנ"ל נסעו מלכה כהן ופנחס כהן.

4. מחמד עבדאללה עקף את רכב הסקודה.

5. בעת שמחמד עבדאללה נסע במקביל לרכב הסקודה הנ"ל, מחמד מצלח ירה בתמ"ק MP-5
מספר יריות לעבר רכב הסקודה הנ"ל במטרה לגרום למותם של נוסעי רכב הסקודה.

6. מספר קליעים שנורו על-ידי מחמד מצלח פגעו ברכב הסקודה. שני קליעים שנורו על-ידי
מחמד מצלח פגעו בפנחס כהן וקליעו נוסף פגע במלכה כהן.

7. פנחס כהן נפצע באורח בינוני מפגיעת שני קליעים בגופו, ואילו מלכה כהן, שהיתה בשבוע
ה-28 להריון, נפצעה באורח בינוני מפגיעת קליע בראשה.

8. לאחר ביצוע פיגוע הירי האמור, מחמד עבדאללה ומחמד מצלח המשיכו בנסיעה לכיוון הגבעה
הצרפתית ומשם הגיעו לבית חניה החדשה. שם, מחמד עבדאללה ומחמד מצלח החנו את
רכבם ויצרו קשר טלפוני עם הנאשם וחותם עקב רביב שתאדרה, אשר הגיעו למקום ברכב
האייסוזו של הנאשם על מנת לאסוף את מחמד עבדאללה ומחמד מצלח, וזאת לפי תכנון
האמור בפרט האישום הקודם.

9. הנאשם וחבריו הנ"ל החתירו את תמ"ק MP-5 הנ"ל ברכב האייסוזו ועלו לרכב האייסוזו.

10. הנאשם ושלושת חבריו הנ"ל ניסו לחזור מירושלים לרמאללה, אך לא הצליחו לעשות כן בגלל
מחסומי צה"ל והמשטרה. הנאשם וחבריו הנ"ל נשארו ללון אצל יאסר אבו אלחטיב, חברו של
חוסאם שחאדה, בבית חניה החדשה בירושלים.

11. יום למחרת, 04.10.01, הנאשם חזר לרמאללה.

### פרט עשרים ואחד:

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, במהלך הימים 03.10.01 - 04.10.01 או
במועד הסמוך לכך, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפץ או מבעיר,
כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה
על-ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, בנסיבות המתוארות בפרט האישום תשעה-עשר
והעשרים, החזיק בתמ"ק MP-5, וזאת ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו.

### פרט עשרים ושניים: (פ.א. 39/02 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14\א(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו
של אחר, דהיינו:

1. ביום 14.01.02 הרג ראאד כרמי, אשר היה פעיל צבאי בכיר ב"תנזים" של ארגון הפת"ח,
שהוא התואתנ‏(?) בלתי מותרת. בעקבות מותו של ראאד כרמי הנ"ל, ראש "התנזים" של
הפת"ח באיזור - מרוואן ברגותי פתח אוהל אבלים באלבירה.

2. ביום 15.01.02, הנאשם הגיע לאוהל האבלים הנ"ל ונפגש שם עם מחמד סאמי אבראהים
עבדאללה, מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחה"), טארק מאלחי א-נוף, זידאן
אל בדוי ואחמד ברגותי (המכונה "אל פראנסי"), שהוא שומר ראשו של מרוואן ברגותי הנ"ל.

3. אחמד ברגותי הנ"ל מסר לנאשם ולחבריו הנ"ל כי מרוואן ברגותי, ראש "התנזים" של הפת"ח
באיזור, מבקש כי הנאשם וחבריו יצעו באופן מיידי פיגוע נקמה על מותו של ראאד כרמי
הנ"ל וינרמו למותם של אזרחים ישראליים. לצורך ביצוע הפיגוע, אחמד ברגותי מסר למחמד
מצלח תמ"ק MP-5 ואקדח 16.

10

4. הנאשם וחבריו הנ"ל, באוהל האבלים הנ"ל, החליטו לבצע עוד באותו חערב פיגוע בתחנת הדלק גבעוניים הנמצאת בכביש 443 בסמוך לכניסה לגבעת זאב ולגרום למותם של אזרחים ישראליים.

5. בשעות הערב באותו היום, 15.01.02, הנאשם יצא מאוהל האבלים הנ"ל ביחד עם מחמד עבדאללה. הנאשם ומחמד עבדאללה נסעו ברכב איסוזו טנדר של הנאשם לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן. אחרי רכב האיסוזו הנ"ל נסעו מחמד מצלח, חממוש באקדח 14, זידאן, החמוש באקדח 15, וטארק א-נוף, החמוש בתמ"ק MP-5. השלושה נסעו ברכב מזדה בצבע חום בהיר לעבר התנה הדלק הנ"ל במטרה לבצע שם את הפיגוע המתוכנן.

6. הנאשם וכל חבריו הנ"ל הגיעו עד ערמת עפר החוסמת את היציאה מכפרים ביר נבאללה ואנ'לביב לכביש 443 במרחק של כ-100 מטר מתחתת הדלק הגבעוניים. הנאשם וחבריו החנו את כלי הרכב שלהם, איסוזו ומזדה, עם הפנים לכיוון הכפר ביר נבאללה על מנת שיוכלו להימלט מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

7. מחמד מצלח, החמוש באקדח 14 שלו, זידאן, החמוש באקדח 16, וטארק א-נוף, החמוש ב-MP-5, ירדו מכלי הרכב והלכו לתחתת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אורחים ישראליים.

8. הנאשם ומחמד עבדאללה נשארו בכלי הרכב הנ"ל על מנת לשמור שלא ינע למקום סיור של צה"ל או אנשים אחרים. מחמד עבדאללה ישב בכיסא הנהג ברכב המזדה על מנת שיוכל למלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מייד לאחר ביצוע הפיגוע.

9. מחמד מצלח וטארק א-נוף נעמדו בכניסה לתחתת הדלק הנ"ל.

10. לאחר מספר דקות, בסמוך לשעה 19:45, מחמד מצלח וטארק א-נוף הבחינו ברכב פיאט אונו לבן, מ.ר. 6424905, שנכנס לתחתת הדלק הנ"ל ואשר בו נהגה יואלה חן ז"ל ולידה ישבה רשל (רחל) עיני.

11. מחמד מצלח וטארק א-נוף ניגשו אל רכב הפיאט הנ"ל במטרה לבצע לעברו פיגוע ירי ולגרום למותן של נוסעות הרכב. נוסעות רכב הפיאט הבחינו באקדח שבו החזיק מחמד מצלח והחלו לצעוק ולצפור. מחמד מצלח הכניס את האקדח למכנסיו ואמר לנוסעות הרכב שלא יפחדו.

12. בשלב זה, טארק א-נוף פתח באש אוטומטית בתמ"ק MP-5 לעבר נוסעות רכב הפיאט במטרה לגרום למותן. אז גם מחמד מצלח שב הוציא את אקדחו והחל לירות לעבר נוסעות הרכב במטרה לגרום למותן.

13. מחמד מצלח וטארק א-נוף ירו מטווח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל ולעבר רשל (רחל) עיני שהיו ברכב הפיאט הנ"ל.

14. כ-28 קליעים, שנורו על-ידי מחמד מצלח וטארק א-נוף, פגעו בשמשה הקדמית של הרכב, מספר קליעים פגעו בצד הרכב ובשמשות חלון דלת הנהג.

15. במהלך ביצוע פיגוע הירי המתואר, זידאן, אשר עמד במרחק קצר מאחורי מחמד מצלח וטארק א-נוף, שימש כשומר ומריע.

16. הנאשם, מיד לאחר ששמע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת להודיע לחבריו הנ"ל אם יש מחסומים בדרך לרמאללה.

17. מחמד מצלח, טארק א-נוף וזידאן, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל רכב המזדה שבו המתין מחמד עבדאללה. לאחר שהשלושה הנ"ל עלו לרכב, מחמד עבדאללה הסיע אותם לרמאללה.

18. ברמאללה מחמד מצלח, טארק א-נוף, מחמד עבדאללה וזידאן נפטשו מן הנאשם.

19. לאחר מכן, מחמד מצלח נפגש ברמאללה עם אחמד ברגותי הנ"ל, החזיר לו את תמ"ק MP-5 ואת הרכב, וכן דיווח על הפיגוע שבוצע כמתואר לעיל.

20. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותה של יואלה חן ז"ל, אשר נפטרה במקום כתוצאה מפגיעות הקליעים שנורו על-ידי מרמחד מצלח וטארק א-נוף.

11

**פרט עשרים ושלושה: (פ.א. 39/02 בנימין)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בסמוך לשעה 19:45, במקום המתואר בפרט האישום הקודם,
במעשיו האמורים בפרט האישום הקודם, ניסה לגרום למותה של רשל (רחל) עיני, אשר
נסעה ברכב פיאט אונו לבן, מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שנורו
על-ידי מחמד מצלח ונאריק א-נוף, פגע בראשה של רשל (רחל)
עיני, ושני קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה באורח בינוני.

**פרט עשרים וארבעה:**

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, החזיק ברשותו
כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפיץ או מבעיר, כלי או חפץ המתוכנן או
מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו,
דהיינו:
הנאשם הנ"ל, במועד האמור, בנסיבות המתוארות בפרטי האישום העשרים ושניים, ביחד עם
אחרים, החזיק בתמ"ק MP-5 ושני אקדחים, וזאת ללא תעודת היתר שהוענקה על-ידי מפקד צבאי
או מטעמו.

**פרט עשרים וחמישה: (פ.א. 502/02 ציון)**

**מהות הבעירה:** גרימת מוות בכוונה, עבירה לצי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
1. באמצע חודש ינואר 2002, הנאשם התקשר אל ממחד סאמי אברהים עבדאללה. הנאשם מסר
   לממחד עבדאללה כי אחמד ברגותי (המכונה "אל פראנסיי"), שומר ראש של מרואן ברגותי -
   ראש "התנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, מבקש להכניס לירושלים מחבל,
   אשר יבצע בירושלים פיגוע התאבדות במטרה לגרום למותם של אורחים רבים ככל הניתן.
   ממחד עבדאללה הסכים להצעתו של הנאשם להשתתף בהסעת המחבל המתאבד הנ"ל
   לירושלים.
2. ביום 22.01.02, הנאשם התקשר אל ממחד עבדאללה והודיע לו כי אחמד ברגותי שוחח עמו
   והודיע כי המחבל המתאבד לצורך ביצוע הפיגוע המתוכנן מוכן וצריך להכניס אותו
   לירושלים. ממחד עבדאללה שוב הביע את הסכמתו להצעת הנאשם להשתתף בהפעל
   של הפיגוע המתוכנן.
3. מאוחר יותר, באותו היום, הנאשם וממחד עבדאללה נפגשו ברמאללה. הנאשם הגיע לפגישה
   ברכבו איסוזו טנדר עם לוחיות רישוי ישראליות.
4. הנאשם וממחד עבדאללה נסעו ברכב האיסוזו הנ"ל, שבו נהג נהג הנאשם, מרמאללה לירושלים
   על מנת למצוא דרך שאין בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר
   באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.
5. הנאשם וממחד עבדאללה נסעו מרמאללה "דרך ראפאת והגיעו לאיזור התעשייה עטרות, שם
   השניים חזרו לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה רמה,
   שם הם פנו ימינה, ונסעו עד לצומת אדם. בצומת אדם הנאשם וחברו פנו ימינה ונסעו עד
   לצומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הנאשם וחברו, הגיעו לצומת
   הגבעה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. הנאשם וממחד עבדאללה ראו כי

12

240/02 ת.ת.

בדרך שבה נסעו ניתן לחוביל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

6. בהגיעם לרמאללה, הנאשם ומחמד עבדאללה נסעו למלון "סיטי אין", הנמצא בסמוך לצומת איו"ש. באיזור המלון "סיטי אין", הנאשם ומחמד עבדאללה נפגשו עם אחמד ברגותי הנ"ל, אשר הכיר לנאשם ולמחמד עבדאללה את סעיד רמדאן, תושב כפר תל באיזור שכם, אשר היה חמוש ברוסי"ר M-16 ושתי מחסניות לרוסי"ר M-16 המחוברות בצולבת.

7. אחמד ברגותי מסר לנאשם ולמחמד עבדאללה כי סעיד רמדאן הנ"ל הוא המחבל המתאבד, אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשיירות לעבר אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

8. הנאשם ומחמד עבדאללה הסתירו את רוסי"ר M-16 והמחסניות הנ"ל ברכב האיסוזו הנ"ל של הנאשם.

9. הנאשם נהג ברכב האיסוזו, סעיד רמדאן ישַב בכיסא שליד כיסא הנהג ואילו מחמד עבדאללה התיישב במושב האחורי.

10. הנאשם ומחמד עבדאללה הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתוארו לעיל.

11. בירושלים, הנאשם ומחמד עבדאללה נסעו לרחוב שיח' ג'ירח. שם הם הוצאו את רוסי"ר M-16 והמחסניות שהיו מוסתרים בתוך הרכב של הנאשם ומסרו אותם לידי סעיד רמדאן. מחמד עבדאללה עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי, כשהוא מחזיק בידיו את רוסי"ר M-16 ואת המחסניות.

12. הנאשם ומחמד עבדאללה הסיעו את סעיד רמדאן לרחוב הנביאים.

13. במהלך הנסיעה, סעיד רמדאן התלונן בפני הנאשם ומחמד עבדאללה כי קנו לו נעליים חדשות עבור הפיגוע, אך הן קטנות ולוחצות לו. מחמד עבדאללה הוריד את נעלוי "ריבוקי" ומסר אותם לסעיד רמדאן באומרו "תעלה לגן עדן עם נעלי "ריבוק"".

14. בהגיעם לצומת הרחובות שטראוס והנביאים, הנאשם ומחמד עבדאללה עצרו את רכב האיסוזו.

15. הנאשם ומחמד עבדאללה אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שיראה בו הרבה אנשים.

16. לאחר שסעיד רמדאן ירד מהרכב עם רוסי"ר M-16 והתחמשת, הנאשם ומחמד עבדאללה נסעו ממקום ברכב האיסוזו, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה.

17. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של הנאשם, הגיע לרחוב יפו.

18. בסביבות השעה 16:20, כשהוא עומד מול בית מס' 47 ברחוב יפו או בסמוך לכך, סעיד רמדאן טען את רוסי"ר M-16 שבו החזיק, צעק "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו. בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו 27 שהיה באותה עת בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך החנויות הסמוכות במטרה לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך לירות, נמלט מהמקום לעבר החניון הנמצא ברחוב הרב קוק. שם סעיד רמדאן החליף מחסניות והמשיך לירות לעבר האזרחים במטרה לגרום למותם. סעיד רמדאן ירה ברוסי"ר M-16, שבו החזיק, מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים והשוטרים שנגעו למקום.

19. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותם של **אורה (סבטלנה) סנדלר** ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

## פרט עשרים ושישה: (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א)(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם בכוונה למותה של **שרה המבורגר** ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן, אשר חובה למקום הנ"ל לצורך ביצוע הפיגוע האמור על-ידי הנאשם ומחמד סאמי אברהים עבדאללה.

13

ת.ז 240/02

P 6: 310