# EXHIBIT A.388



Date: 7 Av 5764
July 25, 2004

Case No.: 3262/02

## The Judea Military Court

**Before Honorable President of Court: Lieutenant Colonel Netanel Benishu**
**Judge: Captain Eli Tusia-Cohen**
**Judge: Captain Avraham Ainhoren**

**The military prosecution**
(by Lieutenant Sergei Morin)

- v. -

**The Defendant: Fares Sadek Mohamed Ghanem  Identity No. 025806985 /
Israel Prison Service – Present**
(by Counsel Adv. Osama Sa'adi)

### S e n t e n c e

The Defendant has been convicted by us of the offenses that are attributed to him in the indictment. This is not the place to elaborate again the 32 offenses of which the Defendant has been convicted, because these have been stated expansively in the verdict that we have handed down. It is enough for us to point out that the Defendant took part in the causation of the death of eight Israeli civilians and the injury of not less than fifty.

The military prosecution has demanded that we sentence the Defendant to cumulative life imprisonment terms for each of the murders, and alongside this an additional life imprisonment sentence for the offenses of attempting to cause death and a befitting sentence for the remaining offenses.

The defense counsel has repeated the not guilty plea of the Defendant to the charges. The defense counsel has also stated that if we accept the verdict, without detracting from the severity of the acts of the Defendant, genuine weight is to be given to the fact that his share in the offenses was minor, and that he did not fire even a single shot, but made do with clearing of roads and extracting the shooters. In the opinion of the defense counsel, a differential sentencing level should be applied between those who actually pulled the trigger and the Defendant.

[Stamp] P 6: 317

1

The defense counsel has also emphasized the family circumstances of the Defendant, who is married to two wives and is the father of four children, his clean record and the fact that he has spared the Court time by consenting to the submission of the evidence in the case. The defense counsel has also stated that as the imposition of more than one life imprisonment has no practical meaning, the court should not grant the request of the prosecution.

We have examined the contentions of the defense counsel, and with all due respect, we shall not be able to agree to any one of them.

We have discussed in our verdict the significant part of the Defendant in the deadly results. As we have ruled, the Defendant was often the originator of the murder and took part in planning the attacks and sometimes provided the war materiel that the gunmen used. Moreover, the Defendant cleared the way for the gunmen, guided them on several occasions concerning the most suitable place for them to carry out the attacks, and also extracted them on several occasions to safety. The prominent contribution of the Defendant to the completion of the offenses has led us to consider him to be a full accomplice to the acts of his colleagues.

It is a written rule that when a group has formed to commit an offense, no great amount of significance is to be attributed to each of the partners, as naturally, an assignment of roles is required for the "success of the task".

- 3 -

[Stamp] P 6: 317 (continued)

Date:  7 Av 5764                                                                                                         Case No.: 3262/02
         July 25, 2004

For this reason, we must not be lenient in sentencing the Defendant only for not having pulled the trigger.

Moreover, we have not seen fit to give weight to the personal and family circumstances of the Defendant, for there is no doubt that these are dwarfed by the destruction that he has sown in the lives of whole families.

On the other hand, there is a list of exacerbating circumstances, to the extent that such circumstances may be discussed, when the person who stands before us is one whose acts have deprived eight innocent civilians of their lives. Firstly, weight must be given to the attribution of the acts, the great boldness that has characterized the Defendant, who not only initiated some of the attacks, but was also always prepared to contribute his part to the attacks that were planned by his colleagues. Secondly, it may be said without doubt that the Defendant made use of his good familiarity with the city of Jerusalem and his ownership of an Israeli identity card, as well as his seemingly innocent appearance. It is not an accident that he was chosen by Ahmed Barghouti to lead two suicide terrorists on two occasions. There is no need to mention that the Defendant has expressed no remorse.

We have therefore gone back to the verdict that was handed down by this Court in the case of three of the accomplices of the Defendant, Hussam Shahada, Mohamed Masleh and Haitham Hamdan (Cases 3250/02, 3255/02, 3275/02), where the Court ruled as follows:

> **"The Defendants left their impression on the users of the roads in the Area and in Jerusalem by randomly selecting their victims and attacking time after time, always in a gang, those who appeared to them as the easiest victims to attack.**
>
> **The acts of the Defendant arouse revulsion and it seems that the lives of others have no value to them. The attempt of the Defendants to justify their acts is doomed to failure and it is enough for us to state that there can be no justification for intentionally attacking innocent civilians.**
>
> **The extent of the atrocity is paralleled by the extent of the feeling of helplessness, because no penalty is harsh enough to take back time, restore the dead to life and the injured to their health.**

[Stamp] P 6: 318

3

> **However, we find that we must reemphasize, in accordance with the tradition of civilized man from days of antiquity, that unlike the Defendants, for us, the sanctity of life is a supreme value, which considers each individual to be a whole world, as a creation with wishes and desires, an opinion and view, ambitions, dreams as well as hopes and a vision, whose premature ending is an unforgiveable crime."**

Regrettably, these statements also apply to the current case, and we may only act in the same manner in the case of the Defendant by sentencing to cumulative life imprisonment sentences for each wick of life that he snuffed out.

Therefore, we sentence the Defendant to the following:

- For the murder of **the late Ronen Landau** – life imprisonment.

- For the murder of **the late Yaniv Ben-Shalom** – life imprisonment.

- For the murder of **the late Sharon Ben-Shalom** – life imprisonment.

- For the murder of **the late Doron Yosef Sviri** – life imprisonment.

- For the murder of **the late Meir Weisshaus** – life imprisonment.

- For the murder of **the late Yoela Chen** – life imprisonment.

- 4 -

[Stamp] P 6: 318 (continued)

| | |
|---|---|
| Date:  7 Av 5764<br>July 25, 2004 | Case No.: 3262/02 |

- For the murder of **the late Ora (Svetlana) Sandler**– life imprisonment.

- For the murder of **the late Sarah Hamburger** – life imprisonment.

In addition to this, we see fit to sentence the Defendant to another term of life imprisonment for the remaining severe offenses of which he has been convicted.

In total, the Defendant is sentenced to 9 cumulative terms of life imprisonment.

**A right of appeal within 30 days is conferred.**

**Handed down and announced this day, July 25, 2004, in public and in the presence of the parties.**

| [Signature] | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **President of Court** | **Judge** |

- 4 -

[Stamp] P 6: 319

5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

    Plaintiffs,

vs.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

    Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P6: 317-319.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P6: 317-319.

_____
Rina Ne'eman

ss.: New Jersey

On the [20th] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28th day of February, 2014

_Hala Y. Gobrial_
Notary Public

**HALA Y GOBRIAL**
Notary Public
State of New Jersey
My Commission Expires Apr. 18, 2017
I.D.# 2419990

תיק מס׳: 3262/02         תאריך: ז׳ אב, תשס״ד
                        25 יולי, 2004

## בית המשפט הצבאי יהודה

בפני כב׳ האב״ד: סא״ל נתנאל בנישו
שופט: סרן אלי תוסיה-כהן
שופט: סרן אברהם איינהורן

התביעה הצבאית
(באמצעות סגן סרגיי מורין)

נגד

הנאשם: פארס צאדק מחמד ע׳אנם   ת.ז 25806985 / שב״ס - נוכח
(באמצעות ב״כ עו״ד אוסאמה סעדי)

### ג ז ר  -  ד י ן

הנאשם הורשע על ידינו בעבירות המיוחסות לו בכתב האישום. אין כאן המקום לחזור ולפרט את 32 העבירות בהן הורשע הנאשם, מאחר שאלה פורטו בהרחבה בהכרעת הדין שניתנה על ידינו. די, על כן, אם נציין כי הנאשם נטל חלק בגרימת מותם של 8 אזרחים ישראליים, ולפציעתם של לא פחות מחמישים.

התביעה הצבאית עתרה כי נטיל על הנאשם עונשי מאסר עולם מצטברים בגין כל אחד ואחד ממעשי הרצח, ולצד זה עונש מאסר עולם נוסף בגין העבירות של ניסיון לגרימת מוות, ועונש הולם בגין יתר העבירות.

הסניגור חזר ועמד על כפירתו של הנאשם במיוחס לו. הסניגור ציין כי גם אם נקבל את הכרעת הדין, הרי שמבלי להמעיט מחומרת מעשיו של הנאשם, יש לתת משקל של ממש לעובדה כי חלקו בעבירות היה מינורי, וכי הוא מעולם לא ירה ולו יריה אחת, אלא הסתפק בפתיחת צירים ומילוט היורים. לדעת הסניגור יש ליצור מדרג עונשי בין אלה שירו בפועל, לבין הנאשם. הסניגור אף הדגיש את נסיבותיו המשפחתיות של הנאשם, שהוא נשוי לשתי נשים ואב לארבעה ילדים, את עברו הנקי, ואת העובדה שחסך מזמנו של ביהמ״ש כאשר הסכים להגיש את הראיות בתיק. הסניגור אף ציין כי מאחר שאין כל משמעות מעשית בהטלת יותר ממאסר עולם אחד, אל לו לביהמ״ש להיעתר לבקשת התביעה.

בחנו את טענות הסניגור, ועם כל הכבוד, לא נוכל להסכים לאחת מהן.

עמדנו בהכרעת דיננו על חלקו המשמעותי של הנאשם להתרחשות תוצאות המוות. כפי שקבענו, הנאשם היה לעיתים קרובות היוזם של מעשה הרצח, ונטל חלק בתכנון הפיגועים, ולעיתים סיפק את אמצעי הלחימה בהם עשו היורים שימוש. יתרה מזו, הנאשם פתח את הדרך בפני היורים, הדריך אותם במספר הזדמנויות אודות המקום המתאים ביותר מבחינתם לביצוע הפיגועים, ואף מילט אותם במספר הזדמנויות אל מקום מבטחים. תרומתו הבולטת של הנאשם להשלמת העבירות הביאה אותנו לראות בו שותף מלא למעשיהם של חבריו.

הלכה פסוקה היא כי כאשר חוברת קבוצה לשם הוצאת עבירה אל הפועל, אין לייחס משמעות רבה לחלקו של כל אחד ואחד מן השותפים, מאחר שמטבע הדברים מתחייבת חלוקת תפקידים לשם ״הצלחת המשימה״.

-3-

תאריך : ז' אב, תשס"ד   תיק מס' : 3262/02
25 יולי, 2004

1   משיכך, אין להקל בדינו של הנאשם אך לאור העובדה כי לא לחץ על ההדק.
2
3   אף לא מצאנו לתת משקל לנסיבותיו האישיות והמשפחתיות של הנאשם, שהרי אין
4   כל ספק שאלה מתגמדות לנוכח ההרס אותו זרע בחייהן של משפחות שלמות.
5
6   מאידך גיסא, קיימת שורה של נסיבות מחמירות, עד כמה שניתן להתייחס לנסיבות
7   כאמור, כאשר עומד בפנינו מי שקיפח במעשיו את חייהם של שמונה אזרחים
8   תמימים. ראשית יש לתת משקל להצטברות המעשים, לתעוזה הרבה שאפיינה את
9   הנאשם, שלא רק יזם חלק מהפיגועים, אלא היה תמיד נכון לתרום את חלקו
10  לפיגועים פרי תכנונם של חבריו. שנית, ניתן לומר ללא ספק כי הנאשם עשה שימוש
11  בהיכרותו הטובה עם העיר ירושלים, ובהיותו בעל תעודת זהות ישראלית, ובחזותו
12  התמימה לכאורה. לא במקרה נבחר הוא על ידי אחמד ברגותי להוביל בשתי
13  הזדמנויות שני מחבלים מתאבדים. אין צורך להזכיר כי הנאשם לא הביע כל חרטה.
14
15  חזרנו, על כן, לגזר הדין שניתן על ידי ביהמ"ש זה בעניינם של שלושה משותפיו של
16  הנאשם, חוסאם שתאדה מחמד מצלח והייתם חמדאן (תיקים 3250/02, 3255/02,
17  3275/02), שם קבע ביהמ"ש כדלקמן :
18
19  "הנאשמים הטילו חיתתם על נוסעי הכבישים באיזור ובירושלים כאשר
20  בחרו באקראי את קרבנותיהם ותקפו פעם אחר פעם, תמיד בחבורה, את
21  אלו שנראו להם הקלים ביותר לפגיעה.
22
23  מעשיהם של הנאשמים מעוררים פלצות וניכר מהם כי חיי זולתם חסרי כל
24  ערך עבורם. ניסיונם של הנאשמים להצדיק את מעשיהם לא יצלח ודי אם
25  נציין כי לא תיתכן הצדקה לפגיעה מכוונת באזרחים חפים מפשע.
26
27  כגודל הזוועה, כך גודל תחושת חוסר האונים, שהרי לא יהא בעונש חמור
28  ככל שיהא כדי להחזיר הגלגל לאחור ולהשיב למתים את חייהם ולפצועים
29  את בריאותם.
30
31  יחד עם זאת, מוצאים אנו לחזור ולהדגיש, בהתאם למסורת בני התרבות
32  מקדמת דנא, כי בניגוד לנאשמים, לנו קדושת החיים מהווה ערך עליון,
33  המעמיד את האדם כעולם מלא, כיציר בעל רצונות ומאוויים, דעה והשקפה
34  שאיפות, חלומות, כמו גם תקוות וחזון, אשר קטיעתם בטרם עת הינו פשע
35  בל יסולח."
36
37  דברים אלה, יפים הם לצערנו גם במקרה הנוכחי, ולא נוכל אלא לנהוג מידה שווה
38  בעניינו של הנאשם ולהטיל עליו עונשי מאסר עולם מצטברים בגין כל פתיל חיים
39  אותו כיבה.
40
41  אשר על כן, אנו גוזרים על הנאשם את העונשים הבאים :
42
43  -   בגין רציחתו של רונן לנדאו ז"ל - מאסר עולם.
44  -   בגין רציחתו של יניב בן שלום ז"ל - מאסר עולם.
45  -   בגין רציחתה של שרון בן שלום ז"ל - מאסר עולם.
46  -   בגין רציחתו של דורון יוסף סווירי ז"ל - מאסר עולם.
47  -   בגין רציחתו של מאיר וייסבויז ז"ל - מאסר עולם.
48  -   בגין רציחתה של יואלה חן ז"ל - מאסר עולם.

-4-

P 6: 318

תאריך : ז' אב, תשס"ד            תיק מס' : 3262/02
25 יולי, 2004

1. - בגין רציחתה של **אורה (סבטלנה) סנדלר** ז"ל - מאסר עולם.
2. - בגין רציחתה של **שרה המבורגר** ז"ל - מאסר עולם.
3.
4. נוסף על כך, אנו מוצאים לנכון להטיל על הנאשם מאסר עולם נוסף בגין יתר
5. העבירות החמורות בהן הורשע.
6.
7. סך הכל מוטלים על הנאשם 9 מאסרי עולם מצטברים.
8.
9.
10. **זכות ערעור תוך 30 יום.**
11.
12. ניתן והודע היום, 25/07/2004, בפומבי ובמעמד הצדדים.
13.
14.
15.
16.
17. שופט       אב"ד       שופט
18.

-5-

P 6: 319