# EXHIBIT A.418
## (1 of 2)

PLAINTIFF'S
EXHIBIT
418

Israel                              Defense                                        Forces

Before the Military Court                      Court Case: 3250/02
in Beit El                                Prosecution case: 242/02
Before a panel                     Detailed incident case: 3135/00 Binyamin
                                                            234/01 Jerusalem Special Duties
                                                                    Department
                                                            2159/01 Binyamin
                                                            7915/01 Zion
                                                            481/01 Zion
                                                            8379/01 Zion
                                                            5/01 Binyamin
                                                            457/01 Binyamin
                                                            502/02 Zion

### In the trial between the military prosecutor – The Prosecutor

#### - v. -

Mohamed Abed Rahman Salem Moslah (known as "Abu Satha")
Identity No. 902845653, born on April 25, 1977, a resident of Ain Um Sharait – Ramallah
Detained since February 17, 2002

### - The Defendant -

## Amended Indictment

### The above mentioned Defendant is accused hereby of committing the following offenses:

### First count: (Detailed Incident 234/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the
Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the
Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere,
on January 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.   The above mentioned Defendant, at the time set forth, met Jad Ibrahim Maala and Taerk
     Malahi A-Nuf in Ramallah. The Defendant conspired with his above mentioned
     collaborators to travel to A-Ram and steal a vehicle from there.

[Stamp] P 6: 44

1

2.    The Defendant, together with Tarek A-Nuf and Jad Maala, traveled to A-Ram. There, the Defendant and his above mentioned collaborators looked for a vehicle to steal. After they did not find a vehicle that they could steal, the Defendant returned to Ramallah, while Tarek A-Nuf and Jad Maala stayed in A-Ram with the aim of continuing to look for a vehicle that could be stolen.

3.    In Ramallah, the Defendant met Ahmed Taleb Mustafa Barghouti, the bodyguard of Marwan Barghouti – the head of the Tanzim Fatah. The Defendant asked Ahmed Barghouti for a pistol and a vehicle for the purpose of carrying out a shooting attack against Jews.

Prosecution Case 242/02 Amended                    1

[Stamp] P 6: 44 [continued]

2

4.  At the request of the Defendant, Ahmad Barghouti provided him with a "16" pistol with a magazine full of cartridges and a stolen silver Volkswagen Bora.

5.  The Defendant drove the above mentioned Volkswagen to A-Ram, while armed with the above mentioned "16" pistol. In A-Ram, the Defendant met Jad Maala and Tarek A-Nuf.

6.  The Defendant suggested to Jad Maala that he get into the Volkswagen and travel to the Atarot area to look for an Israeli vehicle, with the aim of carrying out a shooting attack at it and causing the deaths of the occupants of the vehicle. Jad Maala agreed to the Defendant's suggestion and got into the Volkswagen.

7.  The Defendant continued to drive the Volkswagen and handed the above mentioned "16" pistol to Jad Maala. The Defendant instructed Jad Maala to shoot using the above mentioned pistol at an Israeli vehicle, which the two had found in the Atarot area, with the aim of causing the deaths of the occupants of the vehicle.

8.  At about 6:15 p.m., in the Atarot Industrial Zone, the Defendant and Jad Maala noticed a GMC Safari, license no. 7901306 (hereinafter: the "Vehicle"), which the late Elazar Akiva Fashkos was driving.

9.  The Defendant started to drive after the Vehicle. The Defendant followed the Vehicle from the Atarot Industrial Zone to A-Ram Junction and back.

10. When the Vehicle returned to the Atarot Industrial Zone and drove on the main road, the Defendant drove the Volkswagen near the Vehicle.

11. Jad Maala opened the window and fired with the above mentioned "16" pistol, which the Defendant had delivered to him, approximately seven rounds at the Vehicle, with the intent of causing the death of the Vehicle's driver. A number of bullets hit the Vehicle, one of which hit the late Elazar Akiva Fashkos, who was driving the Vehicle, in the neck and another hit his chest.

12. Once the Defendant saw that the Vehicle had stopped, he fled in the Volkswagen, along with Jad Maala, to Ramallah.

13. In Ramallah, the Defendant returned the Volkswagen and the "16" pistol to Amir Abu Radaha. The Defendant gave Amir Abu Radaha a few cartridges instead of the cartridges that Jad Maala had fired as set forth above.

[Stamp] P 6: 45

14.  Thereafter, the Defendant made contact with Ahmad Barghouti (known as "Al Faransi"), the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the Area, which is an illegal organization, and reported to him the attack that he had carried out with Jad Maala.

15.  By his acts described above, the above mentioned Defendant caused the intentional death of **the late Elazar Akiva Fashkos**, who died as a result of the impact of the bullets that were fired by Jad Maala as described above.

16.  A day later, Ahmad Barghouti delivered approximately 300 U.S. dollars to Jad Maala for carrying out the above mentioned attack. Ahmad Barghouti received the above mentioned money from Ali Faraj Barghouti.

**Second count:**

**Nature of the offense:** Membership in an illegal organization, an offense pursuant to Regulations 84 (1) (A) and 85(1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from mid-2001 until the day of his arrest, was a member or acted as a member of an illegal organization, as follows:

The above mentioned Defendant, during the period set forth, was a member of a military cell whose purpose was carrying out attacks against Israeli civilians within the Area and elsewhere. The Defendant acted in the said military cell along with Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada, Firas Sadak Mohammed Ghanem (known as "al Hittawi"), Haitham Almutfak Hamdan, Zidan Mahareb Al Badawi, Nizar Wahadan and Ali Alian.

For the purpose of his activity in the above mentioned cell, the defendant and his fellow cell members regularly received financial assistance from Ahmed Taleb Barghouti, the assistant of Marwan Barghouti, the head of the Tanzim Fatah. The Defendant himself on several occasions received various amounts of money, from 100 to 300 U.S. dollars each time.

The Defendant operated in the said military cell as described in the various counts of the indictment.

Prosecution Case 242/02 Amended                    2

[Stamp] P 6: 45 [continued]

**Third count**: (Detailed Incident 2159/01 Binyamin)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, in August 2001, in Ein Um Sharait in Ramallah, met Hussam Akel Rajb Shahada, Firas Sadak Mohamed Ghanem (known as "Al Hitawi") and Tarek Malah A-Nuf.

2.  Tarek A-Nuf, Hussam Shahada and Firas Ghanem told the Defendant that they intended to carry out a shooting attack with the intent of causing the deaths of Israeli civilians. The three asked the Defendant to provide them with weapons for carrying out the planned shooting attack.

3.  On August 25, 2001, Firas Ghanem, Shussam Shahada and Tarek A-Nuf approached the Defendant and asked him to provide weapons that day for the purpose of carrying out the planned shooting attack.

4.  On that day, the Defendant approached Ahmad Taleb Mustafa Barghouti (known as "Al Faransi), the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the area, which is an illegal organization. The Defendant asked Ahmad Barghouti for weapons for the purpose of carrying out a shooting attack against Israeli civilians. A short time later, on that day, Ahmad Barghouti delivered to the Defendant an MP-5 submachine gun with a magazine filled with cartridges.

5.  In the evening hours on that same day, in Ramallah or thereabouts, the Defendant delivered the above mentioned MP-5 submachine gun and ammunition to Firas Ghanem and Hussam Shahada, who arrived in an Isuzu pickup belonging to Firas, in order for Firas and Hussam to use the above mentioned weapon to carry out a shooting attack and cause the deaths of Israeli civilians.

[Stamp] P 6: 46

5

6.  Immediately after receiving the weapon, Firas Ghanem, Hussam Shahada, Haitham Almutfak Hamdan and Ali Alian departed from Ramallah towards Highway 443 with the aim of carrying out the planned shooting attack there. The above mentioned individuals traveled in two vehicles – one was an Isuzu pickup belonging to Firas Ghanem and the other was a stolen Subaru that Ali Alian had brought for the purpose of carrying out the planned attack.

7.  Upon reaching Highway 443, Firas Ghanem continued to travel alone in the Isuzu, about a kilometer ahead of the Subaru in which Hussam, Haitham and Ali Alian were traveling, in order to inform his above mentioned collaborators of IDF and police checkpoints along the way.

8.  All of these individuals traveled on Highway 443 towards Tel Aviv, with Ali driving the Subaru; next to him sat Haitham Hamdan, armed with a Kalashnikov assault rifle; in the back seat sat Hussam Shahada, armed with an MP-5 submachine gun, which the Defendant had delivered to him.

9.  On that day, August 25, 2001, at about 10:30 p.m., next to the Dor Energy fuel station, the occupants of the above mentioned Subaru noticed a Volkswagen Passat, license no. 6902818, in which the late Yaniv and Sharon Ben-Sharon and their children and the late Doron Yosef Sviri were traveling.

10. Ali Alian, who was driving the Subaru, overtook the above mentioned Volkswagen and drove parallel to it. At this stage, Haitham Hamdan and Hussam Shahada discharged automatic gunfire with the MP-5 submachine gun, which the Defendant had provided, and with the Kalashnikov assault rifle, at the above mentioned Volkswagen, with the aim of causing the deaths of its occupants.

11. A large number of bullets that were fired by Haitham Hamdan and Hussam Shahada hit the Volkswagen and its occupants.

12. After the occupants of the Subaru noticed that the Volkswagen was zigzagging, they sped up and fled to the village Beit Likia. There, Firas Ghanem waited for them. Ali Alian, Hussam Shahada and Haitham Hamdan got into Firs Ghanem's Isuzu and traveled to the village Beit Sira, where they hid the weapons near Haitham Hamdan's house. Thereafter, Hussam Shahada, Firas Ghanem, Haitham Hamdan and Ali Alian returned to Ramallah in Firas Ghanem's vehicle.

[Stamp] P 6: 46 [continued]

6

13. Immediately after they returned to Ramallah, the Defendant met Firas Ghanem in Ein Um Sharait, who reported to the Defendant the attack that had been carried out with the weapon that had been delivered for this purpose by the Defendant.

14. A few days later, Firas Ghanem brought the above mentioned MP-5 submachine gun from Beit Sira and returned it to the Defendant. The Defendant transferred the above mentioned weapon to Ahmad Barghouti and reported to the latter the shooting attack that had been carried out with this weapon.

15. The above mentioned Defendant, by his acts described above, caused the intentional death of **the late Yaniv Ben-Shalom**, who died of gunshot wounds to his head and back, from bullets that were fired from the MP-5 submachine gun described above, and from a Kalashnikov assault rifle by Haitham Hamdan and Hussam Shahada.

16. After a few days, at the request of the Defendant, Ahmad Barghouti transferred to the Defendant a sum of 500 U.S. dollars for carrying out this attack; this was for the Defendant to distribute to his friends who had carried out the attack described above.

Prosecution Case 242/02 Amended                    3

[Stamp] P 6: 46 [continued]

**Seventh count: (Detailed Incident 2159/01 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the third count of the indictment, by his acts described in the third count of the indictment, caused the intentional death of **the late Sharon Ben-Shalom**, who died of gunshot wounds to her head and back, from bullets that were fired from an MP-5 submachine gun, which the Defendant delivered as described in the third count of the indictment, and from a Kalashnikov assault rifle.

**Fifth count: (Detailed Incident 2159/01 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the third count of the indictment, by his acts described in the third count of the indictment, caused the intentional death of **the late Doron Yosef Sviri**, who died of gunshot wounds from bullets that were fired from an MP-5 submachine gun, which the Defendant had delivered as described in the third count of the indictment, and from a Kalashnikov assault rifle.

**Sixth count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on September 15, 2001, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P 6: 47

8

1.   In mid-September 2001, Firas Sadak Mohammed Ghanem (known as "al Hittawi") and another person approached the Defendant and asked to obtain an MP-5 submachine gun in order to use it to carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

2.   The Defendant consented to provide the requested weapon for the purpose of carrying out the planned shooting attack, and on September 15, 2001, he contacted Ahmad Barghouti, the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the Area, which is an illegal organization. Ahmad Barghouti referred the Defendant to Khaled Shawish. The Defendant contacted Khaled Shawish and obtained the MP-5 submachine gun from the latter.

3.   Later that day, the Defendant delivered the above mentioned MP-5 submachine gun to Firas Ghanem with the aim of the latter using it to carry out a shooting attack and causing the deaths of Israeli civilians.

4.   Later that day, Mohamed Sami Ibrahim Abdullah met Hussam Akel Rajb Shahada, Firas Sadak Mohammed Ghanem (known as "al Hittawi"), Haitham Almutfak Hamdan and Ali Alian. Hussam Shahada arrived to this meeting armed with an MP-5 submachine gun, which Firas Ghanem had obtained from the Defendant for the purpose of carrying out a shooting attack, while Haitham Hamdan arrived armed with a revolver.

5.   The above mentioned collaborators of the Defendant decided to depart for Jerusalem and carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

6.   At about 10:00 p.m. on September 15, 2001, the above mentioned Defendants traveled from Ramallah to Jerusalem in Firas Ghanem's Isuzu pickup.

7.   Firas Ghanem drove the above mentioned Isuzu and traveled with Mohamed Abdullah and his collaborators in order to show them a place where they would carry out the planned shooting attack and in order to show his collaborators how to escape after carrying out the attack as set forth. Firas Ghanem transported his collaborators to Highway No. 9, which connects the [...]

Prosecution Case 242/02 Amended                    4

[Stamp] P 6: 47 [continued]

[...] Ramot neighborhood to the French Hill neighborhood in Jerusalem. Firas Ghanem showed his collaborators where to carry out the planned attack and how to escape thereafter. At the end of the said visit, the above mentioned gang returned to Ramallah.

8.  At about 10:30 p.m. that day, Mohamed Abdullah, along with Hussam Shahada and Haitham Hamdan, traveled in a stolen gray vehicle with Israeli license plates, which Ali Alian had supplied to them for carrying out the planned attack (hereinafter: the "Vehicle"). Ahead of them drove Firas Ghanem, in the above mentioned Isuzu, in order to inform his collaborators by cellular telephone of police and IDF checkpoints.

9.  Mohamed Abdullah drove the above mentioned Vehicle; next to him sat Hussam Shahada, who was armed with an MP-5 submachine gun, and in the rear seat sat Haitham Hamdan, who was armed with a revolver.

10. The above mentioned gang stopped on Highway No. 9 near a junction leading to the Ramat Shlomo neighborhood and waited for a single Israeli vehicle to arrive at the site with the aim of carrying out a shooting attack against it and causing the deaths of the occupants of the vehicle.

11. After a few minutes, at about 11:10 p.m., a white Renault Express, license no. 2273706 (hereinafter: the "Renault"), arrived at the site from the direction of the Ramat Shlomo nationhood and turned to Highway No. 9 towards the Ramot neighborhood.

12. Mohamed Abdullah started to drive after the Renault and overtook it.

13. When the Vehicle was driving parallel to the Renault, Hussam Shahada and Haitham Hamdan opened fire using an MP-5 submachine gun and a revolver against the occupants of the Renault with the aim of causing their deaths.

14. A number of bullets that were fired by Hussam Shahada and Haitham Hamdan hit the Renault and the two occupants of the Renault – the late Moshe Weiss and Meir Weisshaus. Thereafter, Mohamed Abdullah continued to travel towards the Ramot neighborhood and, near a site at which a new bridge was being built, turned right to a dirt track leading to Bir Nabala.

15. Before entering Bir Nabala, Mohamed Abdullah and his collaborators, who were with him in the Vehicle, met Firas Ghanem, who was waiting for them at the site in the Isuzu. From there, they all continued to travel together to Bir Nabala and thereafter fled to Ramallah.

[Stamp] P 6: 48

16. Thereafter, Firas Ghanem, Hussam Shahada, Mohamed Abdullah and Tarek A-Nuf came to the Defendant, returned the above mentioned MP-5 submachine gun to him and reported the attack, which they had carried out using the above mentioned weapons.

17. By his acts described above, the Defendant caused the intentional death of **the late Meir Weisshaus**, who died in the hospital later that day as a result of gunshot wounds from bullets that were fired by the collaborators of the Defendant using the MP-5 submachine gun, which the Defendant had supplied, and the revolver.

**Seventh count: (Detailed Incident 7915/01 Zion)0**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on September 15, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at about 11:10 p.m., at the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Moshe Weiss, who was driving a white Renault Express, license no. 2273706, described in the previous count of the indictment. One of the bullets that were fired by the collaborators of the Defendant, as described in the previous count of the indictment, hit the head of Moshe Weiss and injured him.

**Eighth count: (Detailed Incident 481/01 Zion and Detailed Incident 8379/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on October 3, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early October 2001, in Ramallah or thereabouts, along with Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada and Firas Sadek Ghanem (known as "Abu Hitawi") decided to carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

[Stamp] P 6: 48 [continued]

11

2.  For the purpose of carrying out the planned shooting attack, the Defendant obtained from Majd, a resident of Albira, a stolen gray Mazda 323 with Israeli license plates.

Prosecution Case 242/02 Amended                5

[Stamp] P 6: 48 [continued]

3.  For the purpose of carrying out the planned shooting attack, the Defendant had obtained an MP-5 submachine gun from Ahmad Barghouti, the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the Area, which is an illegal organization.

4.  On October 3, 2001, the Defendant departed from Ramallah towards Jerusalem with the aim of carrying out the planned shooting attack, in possession of the above mentioned MP-5 submachine gun and traveling in the above mentioned Mazda, which Mohamed Abdullah was driving.

5.  Firas Ghanem and Hussam Shahada traveled in an Isuzu pickup belonging to Firas Ghanem ahead of the Mazda in which Muhammad Moslah was traveling, with the aim of informing him of police and IDF checkpoints along the way.

6.  The Defendant and his above mentioned collaborators arrived at New Beit Hanina in Jerusalem. There, Mohamed Abdullah parked the Mazda and with the Defendant, hid the above mentioned MP-5 submachine gun in the vehicle.

7.  The Defendant and Mohamed Abdullah got into the Isuzu and from there continued in the Isuzu with Firas Ghanem and Hussam Shahada towards the Begin Road.

8.  The Defendant and his above mentioned collaborators reached the Begin Road. There, Firas Ghanem showed the Defendant and his other collaborators where to carry out the planned shooting attack and how to escape after carrying out the shooting attack. The Defendant and his above mentioned collaborators decided to carry out the planned shooting attack in the first tunnel of the Begin Road from the direction of Ramot, so that the gunshots would be inaudible. Thereafter, the Defendant and his above mentioned collaborators returned to Beit Hanina, to the place at which the above mentioned Mazda was left.

9.  The Defendant got into the Mazda armed with the above mentioned MP-5 submachine gun while Mohamed Abdullah drove the said Mazda. From there, the Defendant drove the Mazda to the Begin Road with the aim of carrying out the planned shooting attack there and causing the deaths of Israeli civilians.

10. The Defendant and Mohamed Abdullah traveled on the Begin road back and forth several times looking for a single Israeli vehicle with the aim of carrying out the planned shooting attack against it with the aim of causing the deaths of the occupants of the vehicle.

[Stamp] P 6: 49

13

11. At about 11:35 p.m., while driving northward, in the last tunnel in their direction of travel, the Defendant and Mohamed Abdullah noticed a Honda Accord, license no. 1103217, traveling northward on the Begin Road. The occupants of the Honda were Tonie Amiel, Pini Maimon and Pazit Maimon.

12. Mohamed Abdullah overtook the above mentioned Honda. While Mohamed Abdullah drove parallel to the above mentioned Honda, the Defendant fired a single round from the MP-5 submachine gun that he was carrying at the occupants of the Honda, with the intent of causing their deaths. The bullet that was fired by the Defendant did not hit the above mentioned Honda.

13. After carrying out the said shooting attack, the Defendant and Mohamed Abdullah continued their journey towards Highway No. 9, which connects the Ramot neighborhood to the French Hill neighborhood.

14. The Defendant and Mohamed Sami Ibrahim Abdullah carried out the shooting attack as described above; the two continued to travel in the Mazda towards Highway No. 9, which connects the Ramot neighborhood to the French Hill neighborhood, with the aim of reaching Beit Hanina from there continuing to Ramallah.

15. During this journey, the Defendant, at the request of Mohamed Abdullah, checked the function of the MP-5 submachine gun, which he was holding, and also fired several rounds into the air.

16. During the journey on the above mentioned Highway No. 9, at about 11:45 p.m., the Defendant and Mohamed Abdullah noticed a Skoda, license no. 6567709, which was traveling on Highway No. 9 towards French Hill. Malka Cohen and Pinchas Cohen were traveling in this Skoda.

17. The Defendant and Mohamed Abdullah decided to carry out a shooting attack at the above mentioned Skoda and cause the deaths of its occupants. Mohamed Abdullah, who, as stated, was driving the Mazda, overtook the Skoda.

18. While Mohamed Abdullah drove parallel to the above mentioned Skoda, the Defendant fired a number of rounds from MP-5 submachine gun at the above mentioned Skoda with the aim of causing the deaths of the occupants of the Skoda.

19. A number of bullets that were fired by the Defendant hit the Skoda. Two bullets that were fired by the Defendant hit Pinchas Cohen and another bullet hit Malka Cohen.

[Stamp] P 6: 49 [continued]

14

20. Pinchas Cohen was moderately injured by gunshot wounds from two bullets in his abdomen, while Malka Cohen, who was 28 weeks pregnant, was moderately injured by a gunshot wound from a bullet to her head.

21. After carrying out the said shooting attack, the Defendant and Mohamed Abdullah continued to drive towards French Hill and from there they reached New Beit Hanina. There, the Defendant and Mohamed Abdullah parked their vehicle and contacted Hussam Akel Rajb Shahada and Firas Sadak Mohammed Ghanem (known as "al Hittawi") by telephone; they arrived at the site in the Isuzu belonging to Firas Ghanem in order to pick up Mohamed Moslah and Mohamed Abdullah, according to the planning set forth in the previous count of indictment.

22. The Defendant and Mohamed Abdullah concealed the above mentioned MP-5 submachine gun in the Isuzu and got into the Isuzu. The Defendant and his three collaborators tried to return from Jerusalem to Ramallah, but were unable to do so because of IDF and police checkpoints. The Defendant and his above mentioned collaborators stayed to sleep overnight in the home of Yasser Abu Alhatib, a friend of Hussam Shahada, in New Beit Hanina in Jerusalem.

23. On the following day, October 4, 2001, Firas Ghanem transported the Defendant in his Isuzu to Ramallah.

Prosecution Case 242/02 Amended                    6

[Stamp] P 6: 49 [continued]

**Ninth count**: (Detailed Incident 39/02 Binyamin)

**Nature of the offense**: Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on January 15, 2002, or thereabouts, caused the intentional death of another person, as follows:

1.  On January 14, 2002, Raed Karmi, who was a senior military operative in the Tanzim Fatah Organization, which is an illegal organization, was killed. Following the death of the above mentioned Raed Karmi, the head of the Tanzim Fatah in the area, Marwan Barghouti, pitched a mourning tent in Albira.

2.  On January 15, 2002, the Defendant came to the above mentioned mourning tent and met Mohamed Sami Ibrahim Abdullah, Firas Sadak Mohammed Ghanem (known as "al Hittawi"), Tarek Malhi A-Nuf and Zidan Mahareb Al Badawi and Ahmed Barghouti (known as "Al Faransi"), the bodyguard of the above mentioned Marwan Barghouti.

3.  The above mentioned Ahmad Barghouti informed the Defendant and his above mentioned collaborators that Marwan Barghouti, the head of the Tanzim Fatah in the Area, asked for the Defendant and his collaborators to carry out an attack immediately to avenge the death of the above mentioned Raed Karmi and to cause the deaths of Israeli civilians. For the purpose of carrying out the attack, Ahmad Barghouti provided the Defendant with an MP-5 submachine gun and a "16" pistol.

4.  The Defendant and his above mentioned collaborators, in the above mentioned mourning tent, decided to carry out an attack that evening at the Givonim fuel station, located on Highway 443 near the entrance to Givat Ze'ev and to cause the deaths of Israeli civilians.

5.  In the evening hours of that day, January 15, 2002, Mohamed Abdullah left the above mentioned mourning tent with Firas Ghanem. Mohamed Abdullah and Firas Ghanem traveled in an Isuzu pickup belonging to Firas Ghanem to the above mentioned fuel station with the aim of carrying out the planned shooting attack there. The Defendant, armed with a "14" pistol; Zidan, armed with a "16" pistol; and Tarek A-Nuf, armed with an MP-5 submachine gun. The three drove in a light brown Mazda towards the above mentioned fuel station with the aim of carrying out the planned attack there.

[Stamp] P 6: 50

6.  The Defendant and all of his above mentioned collaborators reached an earth mound that blocked the exit from the villages Bir Nabala and Aljib to Highway 443, about 100 meters from the Givonim fuel station. The above mentioned collaborators of Ahmad Barghouti parked their vehicles, the Isuzu and Mazda, facing the village Bir Nabala so that they could escape from the site immediately after carrying out the planned attack.

7.  The Defendant, armed with a "14" pistol; Zidan, armed with a "16" pistol; and Tarek A-Nuf, armed with an MP-5, alighted form the vehicles and walked to the above mentioned fuel station with the aim of carrying out the planned shooting attack and causing the deaths of Israeli civilians there.

8.  Mohamed Abdullah and Firas Ghanem stayed in the above mentioned vehicles in order to make sure that no IDF patrol or other people would come to the site. Mohamed Abdullah sat in the driver's seat of the Mazda so that he could immediately extract his three collaborators who had left to carry out the planned attack immediately after carrying out the attack.

9.  The Defendant and Tarek A-Nuf stood at the entrance to the above mentioned fuel station.

10. After a few minutes, at about 7:45 p.m., the Defendant and Tarek A-Nuf noticed a white Fiat Uno, license no. 6424905, entering the above mentioned fuel station, which was driven by the late Yoela Chen, and Rachel Eini was sitting next to her.

11. The Defendant and Tarek A-Nuf approached the above mentioned Fiat with the aim of carrying out a shooting attack against it and causing the deaths of the vehicle occupants. The occupants of the Fiat noticed the pistol that the Defendant was holding and started to shout and sound the horn. The Defendant put the pistol into his trousers and told the vehicle occupants not to fear.

12. At this stage, Tarek A-Nuf opened fire with bursts from the MP-5 submachine gun at the occupants of the Fiat with the intent of causing their deaths. Then, the Defendant took out his pistol again and started to shoot at the vehicle's occupants, with the intent of causing their deaths.

13. The Defendant and Tarek A-Nuf fired a large number of rounds at very close range at the late Yoela Chen, and at Rachel Eini, who were in the above mentioned Fiat.

14. Approximately 28 bullets, which were fired by the Defendant and Tarek A-Nuf, hit the front windshield of the vehicle; a number of bullets hit the side of the vehicle and the driver's door window.

[Stamp] P 6: 50 [continued]

17

15. During the commission of the described shooting attack, Zidan, who was standing a short distance behind the Defendant and Tarek A-Nuf, served as a lookout and spotter.

16. Firas Ghanem, immediately after hearing the gunfire, drove from the site with his Isuzu in order to inform his collaborators whether there were checkpoints on the way to Ramallah.

Prosecution Case 242/02 Amended                    7

[Stamp] P 6: 50 [continued]

17. The Defendant, Tarek A-Nuf and Zidan, after having carried out the shooting attack as set forth above, ran back to the Mazda in which Mohamed Abdullah was waiting. After the three got into the vehicle, Mohamed Abdullah drove them to Ramallah.

18. In Ramallah, the Defendant, Tarek A-Nuf, Mohamed Abdullah and Zidan met Firas Ghanem.

19. Thereafter, the Defendant met Ahmad Barghouti in Ramallah, returned the MP-5 submachine gun and the vehicle to him and reported the attack that he had carried out as described above.

20. By his acts described above, the Defendant caused the intentional death of **the late Yoela Chen**, who died at the scene as a result of gunshot wounds from bullets that were fired by the Defendant and Tarek A-Nuf.

**Tenth count:** (detailed incident 39/02 Binyamin)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 15, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, at about 7:45 p.m., in the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Rachel Eini, who was traveling in a white Fiat Uno vehicle, license No. 6424905, described in the previous count of the indictment. One of the bullets that were fired by the Defendant and Tarek Malhi A-Nuf, as described in the previous count of the indictment, hit Rachel Eini in the head and two other bullets hit her left shoulder, injuring her moderately.

**Eleventh count:** (Detailed Incident 3135/00 Binyamin)

**Nature of the offense:** Undermining the security of the Area, an offense pursuant to Section 53 (A) (4) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 6: 51

**Details of the offense:** The above mentioned Defendant, in the Area, on October 12, 2000, or thereabouts, committed an act or default constituting an undermining or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory, institute or equipment used or capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the IDF, as follows:

1.   On October 12, 2000, at about 10:00 a.m., two IDF soldiers, the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz, mistakenly entered the city of Ramallah, which was under the control of the Palestinian Authority. Because the two above mentioned IDF soldiers traveled in a vehicle bearing Israeli license plates, the Palestinian policemen serving at the Palestinian police station in Ramallah noticed them and stopped them.

2.   After the Palestinian policemen understood that these were two IDF soldiers, they took away the guns and personal belongings of the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz, took them out of the vehicle in which the two had travelled and brought them to the Palestinian Police station in Ramallah. In the police station, the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were questioned about their arrival in Ramallah and were also beaten by the Palestinian police officers who were at the site.

3.   Near the Palestinian Police station in Ramallah, there was a funeral procession passing by at the time, in which the Defendant participated, and the rumor spread that there were two Israeli soldiers inside the police station. The people who participated in the funeral then went to the police station with the aim of murdering the two IDF soldiers who were there. The Defendant himself continued with the funeral procession.

4.   The riotous crowd, after having reached the Palestinian police station in Ramallah, destroyed and torched the vehicle of the late Corporal Vadim Nurzhitz, which was left outside the above mentioned police station.

5.   The crowd wanted to enter the above mentioned police station with the aim of murdering the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz.

[Stamp] P 6: 51 [continued]

6. The crowd tried to reach the door of the above mentioned police station, but was stopped there by Palestinian police officers, who asked the crowd not to force its way into the station, promising to take the two IDF soldiers outside the police station, so that the crowd could then murder them.

Prosecution Case 242/02 Amended                     8

[Stamp] P 6: 51 [continued]

7.  Despite everything, a large number of rioters succeeded in entering the above mentioned police station while carrying clubs, knives and iron pipes.

8.  The rioters who succeeded in entering the above mentioned police station reached the room on the second floor in which the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were kept at that time. The rioters, with the Palestinian police officers who were at the site, beat with their hands, kicked and struck with blunt instruments and stabbed with sharp implements the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz.

9.  The above mentioned rioters threw the late Corporal Vadim Nurzhitz, who was severely injured, out of the window of the above mentioned room on the second floor of the said police station, into the yard of the station.

10. A large number of rioters came to the late Corporal Vadim Nurzhitz, with the aim of murdering him. The crowd took the late Corporal Vadim Nurzhitz to a street outside the yard of the above mentioned police station, where the crowd of rioters continued to beat the late Corporal Vadim Nurzhitz all over his body.

11. At this stage, people who were in the crowd of rioters dragged the late Corporal Vadim Nurzhitz to Manara Square.

12. The Defendant was in Manara Square, armed with an M-16 assault rifle. The above mentioned Defendant fired a number of rounds using the above mentioned assault rifle into the late Corporal Vadim Nurzhitz. The crowd of people who were at the place lifted the Defendant onto their shoulders in view of the act that he had carried out before their eyes as set forth above.

13. Thereafter, the people who were at the site poured gasoline onto the late Corporal Vadim Nurzhitz and set him on fire.

14. As a result of the blows and stab wounds that the mass of rioters caused, the IDF soldiers the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were killed.

[Stamp] P 6: 52

**Twelfth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2000 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, during the period set forth, near Ayosh Junction, on three different occasions, fired using an M-16 assault rifle that he had obtained from Zidan Almahrab (Albadawi) at IDF soldiers who were at the site, with the intent of causing the deaths of the above mentioned IDF soldiers.

With the Defendant were many other people, who also shot at the above mentioned IDF soldiers, with the aim of causing their deaths.

**Thirteenth count: (Detailed Incident 5/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 1, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, met Tarek Malhi A-Nuf and Zidan Almahrab. Tarek Malhi and Zidan Almahrab traveled in a white Seat, bearing Israeli license plates. Tarek Malhi and Zidan Almahrab were each armed with a pistol. Tarek Malhi and Zidan Almahrab suggested to the Defendant to carry out a shooting attack at Israeli vehicles in the Kalandia area with the intent of causing the deaths of Israeli civilians.

2.  The Defendant agreed to the above mentioned suggestion. The Defendant got into the above mentioned Seat and sat in the driver's seat. The Defendant drove the Seat from Ramallah towards Kalandia in order to carry out the planned shooting attack there. Tarek Malhi and Zidan Almahrab traveled with the Defendant in the above mentioned Seat, armed with the above mentioned pistols.

[Stamp] P 6: 52 [continued]

3.   The Defendant and his above mentioned collaborators traveled to Kalandia Junction and there turned left to the road leading to Adam Junction. After traveling about 500 meters, the Defendant and his above mentioned collaborators noticed a white Renault Kangoo, license no. 4424829, in which Ze'ev Adar and Avraham David were traveling from the direction of Atarot to the direction of the settlement Adam.

4.   The Defendant and his above mentioned collaborators decided to carry out a shooting attack at the above mentioned Renault vehicle with intent of causing the deaths of is occupants.

Prosecution Case 242/02 Amended                 9

[Stamp] P 6: 52 [continued]

5.  The Defendant overtook the Renault, and while the Defendant was traveling parallel to the Renault, Tarek Malhi and Zidan Almahrab opened fire, using the pistols that they were carrying, at the Renault with the aim of causing the deaths of the occupants of the Renault.

6.  A number of bullets that had been fired by the collaborators of the Defendant hit the Renault.

7.  One bullet, which was fired by the above mentioned collaborators of the Defendant, hit Avraham David, who was traveling in the above mentioned Renault, in the upper left back, wounding him.

8.  Immediately after carrying out this shooting attack, the Defendant and his above mentioned collaborators fled to Ramallah.

**Fourteenth count:** (**Detailed Incident 457/01 Binyamin**)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on February 25, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, at the time set forth, met Muhannad Abu Halawa, Tarek Malahi (A-Nuf) and Ahmed Taleb Mustafa Barghouti, the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah, in Ramallah.

2.  The Defendant and his above mentioned collaborators discussed the situation in the Area. Ahmad Barghouti asked the Defendant and his above mentioned collaborators what could be done to improve the situation. The Defendant and his named collaborators asked Ahmad Barghouti to provide them with a vehicle and weapons and they would carry out an attack against Israeli civilians with the aim of causing their deaths.

3.  Ahmad Barghouti consented to the above mentioned proposal. Ahmad Barghouti delivered to the Defendant and his above mentioned collaborators a 2001 model gray Volkswagen Bora bearing Israeli license plates, and an MP-5 submachine gun with a magazine and cartridges.

[Stamp] P 6: 53

4. The Defendant, Muhannad Abu Halawa and Tarek Malahi (A-Nuf) traveled in the above mentioned vehicle, armed with the above mentioned MP-5 submachine gun and a Kalashnikov assault rifle. The Defendant and his above mentioned collaborators reached the Atara Bridge area.

5. At about 1:15 p.m., the Defendant and his above mentioned collaborators noticed a GMC Vandura, license no. 3082518, which Yosef Cohen was driving, this vehicle leaving the settlement Ateret and turning towards the Atara Bridge.

6. The Defendant and his above mentioned collaborators decided to carry out a shooting attack against the above mentioned GMC with the intent of causing the deaths of its occupants.

7. The Defendant and his above mentioned collaborators decided to wait until the Citroen that was driving in front of them would pass the GMC, and then overtake the GMC [themselves] and carry out the planned shooting attack against it.

8. In the above mentioned Citroen were travelling William Sameh Firas el Khatib (Rimawi), Rebhi Zuhdi Alamsar (Rimawi) and Akram Abdullah Mohamed Qassam (Azawi), armed with two Kalashnikov assault rifles and an M-16 assault rifle. The above mentioned occupants of the Citroen opened fire, using the weapons mentioned above, at the above mentioned GMC with the intent of causing the deaths of its occupants. Twenty-nine bullets that were fired by these individuals hit the above mentioned GMC. Three bullets hit the head and neck of Yosef Cohen, who was driving the above mentioned GMC. As a result of the impact of these bullets and the impact of fragments throughout his body, Yosef Cohen was severely injured.

9. After the Defendant and his above mentioned collaborators noticed that the GMC was hit and swerved off the road, and the driver of the vehicle was injured as a result of the shooting attack that was carried out from the Citroen that was driving before them, the Defendant and his above mentioned collaborators fled back to Ramallah.

10. In Ramallah, the Defendant and his above mentioned collaborators returned the above mentioned Volkswagen and the above mentioned MP-5 submachine gun to Ahmad Barghouti. The Defendant, Muhannad Abu Halawa and Tarek Malahi (A-Nuf) reported to Ahmad Barghouti that they had carried out a shooting attack using the above mentioned vehicle and weapons and that a Jewish driver had been wounded as a result.

Prosecution Case 242/02 Amended              10

[Stamp] P 6: 53 [continued]

**Fifteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in mid-2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, met Jad Ibrahim Musa Maala and Nasser Mohamed Yusef Naji (Abu-Hamid) in Ramallah. The Defendant and his above mentioned collaborators decided to carry out a shooting attack in the Atarot area, during which they would shoot at an Israeli vehicle while driving by it with the intent of causing the deaths of Israeli civilians.

The Defendant and his above mentioned collaborators departed from Ramallah by vehicle, which the Defendant drove. Next to the Defendant sat Nasser Abu-Hamid, armed with a Sig-Sauer pistol and an M-16 assault rifle; and in the rear seat sat Jad Maala, armed with a "14" pistol.

The Defendant and his above mentioned collaborators traveled to Atarot. There, the Defendant and his above mentioned collaborators noticed a GMC with Israeli license plates. The Defendant and his above mentioned collaborators decided to travel after the above mentioned GMC with the aim of overtaking it and carrying out a shooting attack against it with the intent of causing the deaths of the occupants in the GMC. But Jad Maala said that the driver of the GMC was an Arab and therefore the Defendant and his above mentioned collaborators did not carry out the planned shooting attack and returned to Ramallah.

**Sixteenth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P 6: 54

1. The Ahmad Taleb Mustafa Barghouti, the bodyguard of the head of the Tanzim Fatah, Marwan Barghouti – in January 2002, decided that he wanted to carry out a suicide attack inside the territory of the State of Israel in order to cause the deaths of as many Israeli civilians as possible.

2. Ahmad Barghouti telephoned Nasser Mahmoud Aweis, a senior operative of the Tanzim Fatah, which is an illegal organization, in Nablus. Ahmad Barghouti asked Nasser Aweis to send him a person who would be prepared to carry out a suicide attack. Ahmad Barghouti told Nasser Aweis that he himself would see to bringing the suicide terrorist into Jerusalem in order to carry out a suicide attack there.

3. A few days later, on January 22, 2002, in Ramallah, Ahmad Barghouti met Sa'id Ramadan, a resident of Kfar Tal in the Nablus district, who informed Ahmad Barghouti that he had been sent by Nasser Aweis for the purpose of carrying out a suicide attack.

4. Ahmad Barghouti called the Defendant and asked the latter to come to him.

5. The Defendant met Ahmad Barghouti and the above mentioned Sa'id Ramadan that day in Ramallah. Ahmad Barghouti introduced the two to each other. The Defendant and Mohamed Masalah took Sa'id Ramadan to a barber shop to have his hair cut before carrying out the planned suicide attack.

6. Thereafter, the Defendant and Ahmad Barghouti called Firas Sadak Mohammed Ghanem (known as "Hittawi") and asked the latter to transport a suicide terrorist from Ramallah to Jerusalem in order for the suicide terrorist to carry out a suicide attack in Jerusalem and to cause the deaths of as many Israeli civilians as possible.

7. Firas Ghanem came to Ramallah with Mohamed Sami Ibrahim Abdullah after the latter agreed to participate in driving the suicide terrorist from Ramallah to Jerusalem. Firas Ghanem came to the meeting in his Isuzu pickup with Israeli license plates.

8. According to the instruction of Ahmad Barghouti, Firas Ghanem and Mohamed Abdullah traveled in the above mentioned Isuzu from Ramallah to Jerusalem in order to find a way that had no police or IDF checkpoints, with the aim of driving the suicide terrorist, who would carry out the planned attack in Jerusalem later, using the same route.

Prosecution Case 242/02 Amended          11

[Stamp] P 6: 54 [continued]

9. Mohamed Abdullah and Firas Ghanem traveled from Ramallah via Rafat and arrived at the Atarot Industrial Zone, where the two returned to the Jerusalem-Ramallah main road and traveled left to the junction leading to the Rama Camp, where they turned right and traveled to Adam Junction. At Adam Junction the two turned right and traveled to Hizma Junction, where they turned right and entered Anta. Through Anta, they arrived at French Hill Junction, where the two turned right and returned to Ramallah. Mohamed Abdullah and Firas Ghanem saw that in the manner that they were traveling, the suicide terrorist could be driven to Jerusalem without being stopped at police or IDF checkpoints.

10. At the same time, in Ramallah, the Defendant and Ahmad Barghouti took the above mentioned Sa'id Ramadan to pray and also bought for the above mentioned Sa'id Ramadan food, new clothes and shoes. Ahmad Barghouti paid for these purchases the amount of NIS 1,200, with his own money. The Defendant and Ahmed Barghouti took Sa'adi [Translator's note: as written] Ramadan to the home of the Defendant's brother in order for him to change his clothes.

11. The Defendant, at the instruction of Ahmad Barghouti, brought an M-16 assault rifle and three magazines for the said assault rifle filled with cartridges, two of which were connected with a magazine coupler.

12. According to the plan of Ahmad Barghouti and his above mentioned collaborators, Sa'id Ramadan was to arrive in Jerusalem and there shoot at Israeli civilians with the intent of causing their deaths until he himself would be killed by the Israeli security forces.

13. Thereafter, on the same day, the Defendant, Ahmad Barghouti, and Sa'id Ramadan met Mohamed Abdullah and Firas Ghanem in the area of the City Inn Hotel in Albira.

14. Ahmad Barghouti explained to Mohamed Abdullah and to Firas Ghanem that the above mentioned Sa'id Ramadan was the suicide terrorist whom they had to drive to Jerusalem in order for him to carry out a suicide attack by shooting at Israeli civilians with the aim of causing the deaths of as many Israeli civilians as possible.

15. Mohamed Abdullah and Firas Ghanem hid the above mentioned M-16 assault rifle and magazines, which the Defendant had brought for carrying out the planned suicide attack, in the above mentioned Isuzu.

[Stamp] P 6: 55

29

16. The Defendant and Ahmad Barghouti wished Sa'id Ramadan luck and the three traveled to Jerusalem. The Defendant told Mohamed Abdullah and Firas Ghanem that they would have to take Sa'id Ramadan to carry out the suicide attack in any place of their choosing in Jerusalem.

17. Firas Ghanem drove the Isuzu, Sa'id Ramadan sat in the seat next to the driver's seat and Mohamed Abdullah sat in the back seat.

18. Mohamed Abdullah and Firas Ghanem transported Sa'id Ramadan to Jerusalem on a route that they had inspected earlier that day as described above.

19. In Jerusalem, Mohamed Abdullah and Firas Ghanem traveled to Sheikh Jarah Street. There they took out the M-16 assault rifle and magazines that were hidden inside the vehicle and handed them over to Sa'id Ramadan. Mohamed Abdullah moved to the seat next to the driver's seat while Sa'id Ramadan moved to the back seat, holding the M-16 assault rifle and the magazines in his hands.

20. Mohamed Abdullah and Firas Ghanem drove Sa'id Ramadan to Hanevi'im Street.

21. During the journey, Sa'id Ramadan complained to Mohamed Abdullah and Firas Ghanem that his new shoes, which Ahmad Barghouti had purchased for him for the attack, were too small and tight. Mohammed Abdullah took off his Reebok shoes and handed them over to Sa'id Ramadan, saying "go up to heaven with Reebok shoes".

22. Upon reaching the junction of Strauss and Hanevi'im Streets, Mohammed Abdullah and Firas Ghanem stopped the Isuzu.

23. Mohammed Abdullah and Firas Ghanem told Sa'id Ramadan to go by foot to Jaffa Street and to start to shoot where he would see many people.

24. After Sa'id Ramadan got out of the vehicle with the M-16 assault rifle and the ammunition, Muhammad Abdullah and Firas Ghanem drove away from the site in the Isuzu, left through the Musrara neighborhood to Highway No. 1 and from there drove via the main road to Ramallah.

25. Sa'id Ramadan, a few minutes after having gotten out of Mohamed Abdullah and Firas Ghanem's vehicle, arrived at Jaffa Street.

[Stamp] P 6: 55 [continued]

26.   At about 4:20 p.m., while standing opposite house no. 47 in Jaffa Street or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he was carrying, shouted "Allahu Akbar" and discharged automatic gunfire indiscriminately at the people who were in Jaffa Street, at the bus stop at the site, aboard the Egged bus no. 27 that was this stop at the time and at the people who were in the stores nearby, with the aim of causing the deaths of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the site towards the parking lot in Harav Kook Street. There, Sa'id Ramadan changed magazines and continued to shoot at civilians with the aim of causing their deaths. Sa'id Ramadan fired more than 38 cartridges with the M-16 assault rifle that he carried. Sa'id Ramadan continued to shoot at civilians until he was killed by civilians and police officers who arrived at the site.

Prosecution Case 242/02 Amended                12

[Stamp] P 6: 55 [continued]

27. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Ora (Svetlana) Sandler**, who died as a result of gunshot wounds caused by the bullets that were fired by Sa'id Ramadan.

28. After Ahmad Barghouti learned about the execution of the above mentioned attack, Ahmad Barghouti approached Ali Faraj Barghouti and received from the latter the amount of 1,000 U.S. dollars for executing the said attack. Ahmad Barghouti gave the Defendant, Mohamed Abdullah and Firas Ghanem 100 U.S. dollars each for their participation in the execution of this attack.

## Seventeenth count: (Detailed Incident 502/02 Zion)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the previous count of the indictment, by his actions described in the previous count of the indictment, caused the intentional death of **the late Sarah Hamburger**, who died of gunshot wounds from the bullets that were fired by Sa'id Ramadan using an M-16 assault rifle, which the Defendant had provided to him.

## Twenty eighth count: (Detailed Incident 502/02 Zion)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the sixteenth count of the indictment, by his actions described in the sixteenth count of the indictment, attempted to cause the intentional death of as many civilians as possible who at the time were in and near Jaffa Street. As a result of the gunfire that was discharged by Sa'id Ramadan at the site, using an M-16 assault rifle that the Defendant had provided, **more than 45 civilians were injured**.

[Stamp] P 6: 56

**Witnesses of the prosecution:**

1.  First Sergeant Yaakov Barazani, Badge No. 99106, Judea Investigations Office [person who recorded the Defendant's statement on February 25, 2002]

2.  First Sergeant Marco Dahan, Badge No. 568394, Judea Investigations Office [person who recorded the Defendant's statement on March 19, 2002]

3.  Master Sergeant Moshe Levi, Badge No. 902845643, Judea Investigations Office [person who recorded the Defendant's statement on April 18, 2002]

4.  Mohamed Sami Ibrahim Abdullah, Identity No. 979469954. (detainee) (Prosecution Case 241/02)

5.  Hussam Akel Rajb Shahada, Identity No. 975564733. (detainee) (Prosecution Case 243/02)

6.  Haitham Almutfak Hamdan, Identity No. 906934823. (detainee) (Prosecution Case 265/02)

7.  Ahmed Taleb Mustafa Barghouti, Identity No. 994466860 (detainee) (Prosecution Case 444/02)

8.  Nasser Mohamed Yusef Naji (Abu-Hamid), Identity No. 923918882 (detainee)

9.  Amir Hassan Sa'id Abu Radaha, Identity No. 954263042. (detainee) (Prosecution Case 356/02)

10. William Sameh Firas el Khatib (Rimawi), Identity No. 904383452. (detainee) (Prosecution Case 322/02)

11. Akram Abdullah Mohamed Qassam, Identity No. 900959677. (detainee)

---

**Detailed Incident 3135/00 Binyamin**

12. Ziad Hamuda Yaakub Hamuda, Identity No. 902924117. (detainee) (Prosecution Case 353/00)

13. Raed Mahmoud Jamil Shaikh, Identity No. 900248998. (detainee) (Prosecution Case 633/00)

14. Mohamed Hisham Ahmed-Hassan Nuara, Identity No. 921746111. (detainee) (Prosecution Case 561/01)