# EXHIBIT A.422

PLAINTIFF'S
EXHIBIT
422



| Israel | Defense | Forces |
|---|---|---|

In the Military Court      Court File:      3251/02
Beit El      Prosecution File:      241/02
Before a Panel      Detailed Incident Files:      39/02 Binyamin
     7915/01 Zion
     481/01 Zion
     8379/01 Zion
     502/02 Zion

### In the case between the Military Prosecutor – Prosecuting

– v. –

[Round Stamp]
Military Appeals
Court
Judea and Samaria

**Mohamed Sami Ibrahim Abdullah**
Identity No. 979469954, born May 4, 1974, resident of Bir Nabala
Under arrest since February 20, 2002

[Stamp] CertifiedCopy

### - the Defendant -

## AMENDED INDICTMENT

### The above named Defendant is hereby accused of committing the following offenses:

**First Count:**

**Nature of the Offense:** Membership in an unlawful association, an offense pursuant to Regulations 84(1)(a) and 85(1)(a) of the Defense Regulations (Time of Emergency), 1945.

**Details of the Offense:** The above named Defendant, within the Area, from the middle of 2001 and up to the date of his arrest, was a member of acted as a member of an unlawful association, specifically:

The above named Defendant, during the said period, was a member of a military cell, which set itself the goal of carrying out terrorist attacks against Israeli civilians, both within the Area and outside it. The Defendant was active in the said military cell together with Mohamed Abed Rahman Salem Maslah (known as "Abu Satha"), Hussam Akal Rajib Shahada, Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi"), Hitham al-Muthafaq Hamdan, Zidan al-Badawi, Nizar Wahdan and Ali Alian.

[Stamp] P 6: 64

1

The Defendant was active in the said military cell, as will be described in the following counts of the indictment.

1

Prosecution File 241/02 Amended

[Stamp] P 6: 64 [continued]

**Second Count: (Detailed Incident File 7915/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14(a) of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Area, on September 15, 2001, or thereabouts, intentionally caused the death of another person, specifically:

1.  The above named Defendant, at the said time, in Ramallah, met with Hussam Akal Rajib Shahada, Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi"), Hitham al-Muthafaq Hamdan and Ali Alian. Hussam Shahada came to the said meeting armed with an MP-5 submachine gun, which he, together with Fares Ghanem, had received from Mohamed Abed Rahman Salem Maslah (known as "Abu Satha") for the purpose of carrying out a shooting terrorist attack, while Hitham Hamdan came armed with a revolver.

2.  The Defendant and his above named comrades decided to leave for Jerusalem and carry out a shooting terrorist attack there with the aim of causing the deaths of Israeli civilians.

3.  At around 10:00 p.m., on September 15, 2001, the Defendant and all of his above named comrades traveled from Ramallah to Jerusalem in Fares Ghanem's Isuzu van.

4.  Fares Ghanem drove the above mentioned Isuzu and traveled together with the Defendant and his comrades so as to show them a place at which to carry out the planned shooting terrorist attack, and also to show the Defendant and his comrades how to escape following execution of the said terrorist attack. Fares Ghanem drove the Defendant and his comrades to Road No. 9 connecting the neighborhoods of Ramot and French Hill in Jerusalem. Fares Ghanem showed the Defendant and his comrades where to carry out the planned terrorist attack and how to escape thereafter. At the end of the said reconnaissance, the Defendant and his above named comrades returned to Ramallah

5.  At around 10:30 p.m., on that same day, the Defendant, together with Hussam Shahada and Hitham Hamdan, drove in a gray stolen vehicle with Israeli license plates, provided to them by Ali Alian for the purpose of carrying out the planned terrorist attack (hereinafter: the Vehicle) Fares Ghanem drove ahead of the Defendant in the above mentioned Isuzu, so as to inform the Defendant and his comrades by cellular phone of police and Israel Defense Forces checkpoints.

[Stamp] P 6: 65

6.   The Defendant drove the above mentioned vehicle, alongside him sat Hussam Shahada, armed with an MP-5 submachine gun, and in the back seat sat Hitham Hamdan, armed with a revolver.

7.   The Defendant and his above named comrades stopped on Road No. 9, adjacent to the intersection leading to the Ramat Shlomo neighborhood, and waited for a lone Israeli vehicle to arrive there with the aim of carrying out a shooting terrorist attack toward it and causing the deaths of the vehicle's passengers.

8.   Some minutes later, at around 11:10 p.m., a white Renault Express, license plate number 2273706 (hereinafter: the Renault), arrived there, having driven from the direction of the Ramat Shlomo neighborhood, and it turned into Road No. 9 in the direction of the Ramot neighborhood.

9.   The Defendant began driving after the Renault and overtook it.

10.  When the Vehicle driven by the Defendant was traveling parallel with the Renault, Hussam Shahada and Hitham Hamdan opened fire with the MP-5 submachine gun and the revolver on the passengers of the Renault with the aim of causing their deaths.

11.  A number of rounds fired by Hussam Shahada and Hitham Hamdan struck the Renault and the two passengers of the Renault – Moshe Weiss and the late Meir Weissboiz [sic]. The Defendant heard one of the passengers of the Renault cry out, "Ay ay."

12.  Subsequently the Defendant continued driving in the direction of the Ramot neighborhood, and near the site where a new bridge is being built he turned right onto a dirt road leading to Bir Nabala.

13.  Before the entrance to Bir Nabala, the Defendant and his comrades who were with him in the vehicle met with Fares Ghanem, who was waiting for them there in his Isuzu. From there the Defendant and his above named comrades, together with Fares Ghanem, continued on their way to Bir Nabala, and subsequently fled to Ramallah.

14.  By his actions as described above, the Defendant intentionally caused the death of the late **Meir Weissboiz** [sic], who died in the hospital later that day as a result of being struck by the rounds fired by the Defendant's comrades.



[Round Stamp]
Military Appeals
Court
Judea and Samaria

Prosecu                          ded

2

[Stamp] Certified
Copy

[Stamp] P 6: 65 [continued]

4

**Third Count: (Detailed Incident File 7915/01 Zion)**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(a) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Area, on September 15, 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, at around the hour of 11:10 p.m., at the location described in previous count of the indictment, by his actions as stated in the previous count of the indictment, attempted to intentionally cause the death of Moshe Weiss, who was driving his vehicle, a white Renault Express, license plate number 2273706, described in the previous count of the indictment. One of the rounds fired by the Defendant's comrades, as described in the previous count of the indictment, struck Moshe Weiss's head and wounded him.

[Stamp] Certified Copy

[Round Stamp]
Military Appeals
Court
Judea and Samaria

**Fourth Count: (Detailed Incident File 481/01 Zion)**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(a) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Area, on October 3, 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.    The above named Defendant, early in October 2001, in or near Ramallah, together with Mohamed Abed Rahman Salem Maslah (known as "Abu Satha"), Hussam Akal Rajib Shahada, and Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi"), decided to carry out a shooting terrorist attack with the aim of causing the deaths of Israeli civilians.

[Stamp] P 6: 66

5

2.  For the purpose of carrying out the planned terrorist attack, the Defendant received from Tarek Malahi A-Nuf a gray stolen Mazda 323 with Israeli license plates. For the purpose of carrying out the planned shooting terrorist attack, Mohamed Maslah received from Ahmed Barghouti, bodyguard to Marwan Barghouti, head of the Fatah Tanzim in the region an unlawful association, an MP-5 submachine gun.

3.  On October 3, 2001, the Defendant, driving the above mentioned Mazda, left from Ramallah in the direction of Jerusalem, with the aim of carrying out the planned shooting terrorist attack there. Mohamed Maslah traveled together with the Defendant, armed with the above mentioned MP-5 submachine gun.

4.  Fares Ghanem and Hussam Shahada traveled in Fares Ghanem's Isuzu van in front of the Mazda in which the Defendant was traveling, for the purpose of informing him of police and Israel Defense Forces checkpoints on the way. The Defendant and all of his above named comrades arrived at the new Beit Hanina [neighborhood] in Jerusalem. There the Defendant parked the Mazda, and together with Mohamed Maslah concealed the above mentioned MP-5 submachine gun within the vehicle. The Defendant and Mohamed Maslah got into the Isuzu and from there continued in the Isuzu together with Fares Ghanem and Hussam Shahada in the direction of the Begin Road.

5.  The Defendant and his above named comrades came to the Begin Road. There, Fares Ghanem showed the Defendant and his other comrades where to carry out the planned shooting terrorist attack and how to escape after execution of the shooting terrorist attack. The Defendant and his above named comrades decided to carry out the planned shooting terrorist attack in the first tunnel on the Begin Road from the direction of Ramot, so that the sounds of gunfire would not be heard. Subsequently, the Defendant and all his above named comrades returned to Beit Hanina, to where the Mazda had been left.

6.  The Defendant got into the Mazda; alongside him sat Mohamed Maslah, armed with the MP-5 submachine gun. From there the Defendant drove the Mazda to the Begin Road with the aim of carrying out the planned shooting terrorist attack there and causing the deaths of Israeli civilians.

7.  The Defendant and Mohamed Maslah traveled up and down the Begin Road a number of times, looking for a lone Israeli vehicle, with the aim of carrying out the planned shooting terrorist attack against it, for causing the deaths of the vehicle's passengers

[Stamp] P 6: 66 [continued]

6

8.  At around 11:35 p.m., as they were traveling in a northerly direction, in the last tunnel in the direction of their journey, the Defendant and Mohamed Maslah noticed a Honda Accord, license plate number 1103217, traveling on the Begin Road in a northerly direction. In the Honda were traveling Tony Amiel, Pini Maimon and Pazit Maimon.

9.  The Defendant overtook the above mentioned Honda. When the Defendant was traveling parallel with the above mentioned Honda, Mohamed Maslah fired one bullet from the MP-5 submachine gun, which he was holding, at the passengers of the Honda, with the aim of causing their deaths. The round fired by Mohamed Maslah did not strike the above mentioned Honda.

10. After carrying out the said shooting terrorist attack, the Defendant and Mohamed Maslah continued their journey in the direction of Road No. 9 which connects the Ramot and French Hill neighborhoods.

3

Prosecution File 241/02 Amended

[Stamp] P 6: 66 [continued]

[Round Stamp]
Military
Appeals Court
Judea and
Samaria

**Fifth Count:** (Detailed Incident File 8379/01 Zion)     [Stamp] Certfied Copy

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(a) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Area, on October 3, 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  After the Defendant, together with Mohamed Abed Rahman Salem Maslah (known as "Abu Satha"), carried out the shooting terrorist attack as described in the previous count of the indictment, the two continued on their journey in the Mazda, described in the previous count of the indictment, in the direction of Road No. 9, which connects the Ramot and French Hill neighborhoods, with the aim of getting from there to Beit Hanina, and subsequently to Ramallah.

2.  During that journey, Mohamed Maslah, at the Defendant's request, checked the working condition of the MP-5 submachine gun, which he was holding, and also fired a number of bullets into the air.

3.  During the journey on the said Road No. 9, at around 11:45 p.m., the Defendant and Mohamed Maslah noticed a Skoda, license plate number 6567709, travelling on Road No. 9 in the direction of French Hill. Traveling in the said Skoda were Malka Cohen and Pinhas Cohen.

4.  The Defendant and Mohamed Maslah decided to carry out a shooting terrorist attack against the said Skoda, and to cause the deaths of its passengers.

5.  The Defendant, who, as stated, was driving the Mazda, overtook the Skoda.

6.  When the Defendant was driving parallel with the above mentioned Skoda, Mohamed Maslah fired a number of shots with the MP-5 submachine gun at the above mentioned Skoda, with the aim of causing the deaths of the Skoda's passengers.

7.  A number of rounds fired by Mohamed Maslah struck the Skoda. Two rounds fired by Mohamed Maslah struck Pinhas Cohen and a further round struck Malka Cohen.

[Stamp] P 6: 67

8

8.     Pinhas Cohen was moderately wounded from being hit by two rounds in his abdomen, while Malka Cohen, who was in her 28th week of pregnancy, was moderately wounded by being struck by a round in her head.

9.     After carrying out the said shooting terrorist attack, the Defendant and Mohamed Maslah continued their journey in the direction of French Hill, and from their they reached New Beit Hanina. There the Defendant and Mohamed Maslah parked their vehicle, and made telephone contact with Hussam Akal Rajib Shahada and Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi"), who arrived there in Fares Ghanem's Isuzu, to pick up the Defendant and Mohamed Maslah, in line with the plan stated in the previous count of the indictment.

10.    The Defendant and Mohamed Maslah concealed the MP-5 submachine gun in the Isuzu, and got into the Isuzu.

11.    The Defendant and his three above named comrades attempted to return from Jerusalem to Ramallah, but were not able to do so because of Israel Defense Forces and police checkpoints. The Defendant and his above named comrades stayed over with Yassir Abu al-Khatib, a friend of Hussam Shahada's, in the New Beit Hanina [neighborhood] in Jerusalem.

12.    The following day, October 4, 2001, the Defendant returned in the above mentioned Mazda to Ramallah, and returned the vehicle to Tarek a-Nuf.

**Sixth Count: (Detailed Incident File 39/02 Binyamin)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14(a) of the Rules of Liability for an Offense Order (Judea and Samaria No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Area, on January 15, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1.     On January 14, 2002, Raed Karmi, a senior military operative in the Fatah organization's Tanzim, which is an unlawful association, was killed. As a result of the death of the said Raed Karmi, the head of the Tanzim in the Area, Marwan Barghouti, opened a mourners' tent in El-Bireh.

[Stamp] P 6: 67 [continued]

9

2.    On January 15, 2002, the Defendant came to the mourners' tent, and there met with Mohamed Abed Rahman Salem Maslah (known as "Abu Satha"), Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi"), Tarek Malahi A-Nuf, Zidan al-Badawi, and Ahmed Barghouti (known as "Al-Fransi"), who was the bodyguard of the above named Marwan Barghouti. The said Ahmed Barghouti informed the Defendant and above named comrades that Marwan Barghouti, head of the Fatah Tanzim in the Area, wanted the Defendant and his comrades to carry out, immediately, a terrorist attack in revenge for the death of the said Raed Karmi, and cause the deaths of Israeli civilians.

4

Prosecution File 241/02 Amended

[Stamp] P 6: 67 [continued]

3.   The Defendant and his above named comrades decided to carry out, that very evening, a terrorist attack at the Givonim gas station on Road 443, near the entrance to Givat Ze'ev, and cause the deaths of Israeli civilians.

4.   In the evening of that day, January 15, 2002, the Defendant left the above mentioned mourners' tent together with Fares Ghanem. The Defendant and Fares Ghanem traveled in Fares Ghanem's Isuzu van to the above mentioned gas station with the aim of carrying out the planned shooting terrorist attack there. Zidan, armed with a Model-16 pistol, Mohamed Maslah, armed with another handgun, and Tarek a-Nuf, armed with an MP-5 submachine gun, traveled behind the said Isuzu. The three traveled in a light brown Mazda toward the above mentioned gas station, with the aim of carrying out the planned terrorist attack there.

5.   The Defendant and all his above named comrades reached the dirt mound blocking the exit from the villages of Bir Nabala and el-Jib to Road 443, at a distance of about 100 meters from the Givonim gas station. The Defendant and comrades parked their vehicles, the Isuzu and the Mazda, facing in the direction of the village of Bir Nabala, so as to flee from the scene immediately after carrying out the planned terrorist attack.

6.   Mohamed Maslah, armed with his Model-14 handgun, Zidan, armed with the Model-16 handgun, and Tarek a-Nuf, armed with the MP-5, got out of the vehicles and walked to the above mentioned gas station with the aim of carrying out the planned shooting terrorist attack there and causing the deaths of Israeli civilians.

7.   The Defendant and Fares Ghanem remained in the said vehicles to watch out for the arrival of an Israel Defense Forces patrol or other people. the Defendant sat in the driver's seat in the Mazda, so as to be able to immediately get his three comrades, who had gone to carry out the planned terrorist attack, immediately after executing the terrorist attack.

8.   Tarek a-Nuf and Mohamed Maslah positioned themselves at the entrance to the above mentioned gas station. Some minutes later, at around 7:45 p.m., Mohamed Maslah and Tarek a-Nuf noticed a white Fiat Uno, license plate number 6424905, entering the gas station, driven by the late Yoela Chen, alongside of whom was Rachelle (Rachel) Eini. Tarek a-Nuf and Mohamed Maslah approached the Fiat with the aim of carrying out a shooting terrorist attack toward it and causing the deaths of the vehicle's passengers. The passengers in the Fiat noticed the handgun held by Mohamed Maslah and began to scream

[Stamp] P 6: 68

11

and sound the horn. Mohamed Maslah put the handgun in his pants and told the passengers in the vehicle not to be afraid. At this stage, Tarek a-Nuf opened fire on the Fiat's passengers, on automatic, with the MP-5 submachine gun, with the aim of causing their deaths. Then Mohamed Maslah again took the handgun out, and commenced firing at the vehicle's passengers, with the aim of causing their deaths.

9.    Mohamed Maslah and Tarek a-Nuf fired a large number of bullets, at very close range, at the late Yoela Chen and Rachelle (Rachel) Eini, who were in the above mentioned Fiat.

10.    About 28 rounds, fired by Tarek a-Nuf and Mohamed Maslah, struck the front windshield of the vehicle, a number of rounds struck the side of the vehicle and the driver's side window.

11.    During the course of the shooting terrorist attack described, Zidan, who stood a short distance behind Mohamed Maslah and Tarek a-Nuf, served as guard to warn them.

12.    Fares Ghanem, immediately upon hearing the sounds of gunfire, drove from there in his Isuzu, in order to inform the Defendant and his comrades whether there were checkpoints on the road to Ramallah.

13.    Tarek a-Nuf, Zidan and Mohamed Maslah, after having carried out the shooting terrorist attack as stated above, ran to return to the Mazda in which the Defendant was waiting. After the above named three got into the vehicle, the Defendant drove them to Ramallah. In Ramallah, the Defendant, Tarek a-Nuf, Mohamed Maslah and Zidan met with Fares Ghanem.

14.    By his action described above, the Defendant intentionally caused the death of the late **Yoela Chen**, who died on the scene as a result of being struck by the rounds fired by Tarek a-Nuf and Mohamed Maslah.

[Stamp] Certified Copy

[Round Stamp]
Military
Appeals Court
Judea and
Samaria

**Seventh Count: (Detailed Incident File 39/02 Binyamin)**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(a) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria No. 225), 5728-1968.

[Stamp] P 6: 68 [continued]

**Details of the Offense:** The above named Defendant, in the Area, on January 15, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at around 7:45 p.m., in the place described in the previous count of the indictment, by his action as stated in the previous count of the indictment, attempted to intentionally cause the death of Rachelle (Rachel) Eini, who was traveling in a white Fiat Uno, license plate number 6424905, as described in the previous count of the indictment. One of the rounds fired by the Defendant's comrades, as described in the previous count of the indictment, struck the head of Rachelle (Rachel) Eini, and two other rounds struck her left shoulder and moderately wounded her.

5

Prosecution File 241/02 Amended

[Stamp] P 6: 68 [continued]

13

**Eighth Count:** **(Detailed Incident File 502/02 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14(a) of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Area, on January 22, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1.  In the middle of January 2002, Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi") called the Defendant. Fares Ghanem informed the Defendant that Ahmed Barghouti (known as "Al-Fransi"), bodyguard of Marwan Barghouti – head of the Fatah Organization's Tanzim, which is an unlawful association, wanted to get a terrorist into Jerusalem, to carry out a suicide terrorist attack in Jerusalem with the aim of causing the deaths of as many civilians as possible. The Defendant consented to participate by transporting the above mentioned suicide terrorist to Jerusalem.

2.  On January 22, 2002, Fares Ghanem called the Defendant and informed him that Ahmed Barghouti had spoken with him and informed him that the suicide terrorist who was to carry out the planned terrorist attack was ready, and had to be gotten into Jerusalem. The Defendant again agreed to participate in executing the planned terrorist attack.

3.  Later on that day, the Defendant and Fares Ghanem met in Ramallah. Fares Ghanem came to the meeting in his Isuzu van with Israeli license plates.

4.  The Defendant and Fares Ghanem traveled in the said Isuzu from Ramallah to Jerusalem so as to find a road without police or Israel Defense Forces checkpoints, so as to later transport the suicide terrorist, who was to carry out the planned terrorist attack in Jerusalem, by the same route.

5.  The Defendant and Fares Ghanem drove from Ramallah via Rafat and arrived at the Atarot Industrial Zone, where the two returned to the main Jerusalem-Ramallah road and turned left toward the junction leading to the Rama camp, there they turned right and traveled to Adam Junction. At Adam Junction the Defendant and his comrade turned right and traveled to Hizme Junction, where they turned right and entered Anata. Through Anata, the

[Stamp] P 6: 69

14

Defendant and his comrade reached the French Hill Junction, where the two turned right and returned to Ramallah. The Defendant and Fares Ghanem saw that it was possible to transport the suicide terrorist to Jerusalem on the route that they had taken without being stopped at police or Israel Defense Forces checkpoints.

6.  Upon their arrival in Ramallah, the Defendant and Fares Ghanem traveled to the City Inn Hotel, located near Ayosh Junction. Near the City Inn Hotel, the Defendant and Fares Ghanem met with the above named Ahmed Barghouti, who introduced the Defendant and Fares Ghanem to Sa'id Ramadan, a resident of the village of Tel in the Nablus region, who was armed with an M-16 assault rifle and two magazines for the M-16 assault rifle, joined together with a magazine coupler.

7.  Ahmed Barghouti informed the Defendant and Fares Ghanem that the above named Sa'id Ramadan was the suicide terrorist whom they were to transport to Jerusalem, so that he could carry out a suicide terrorist attack there by opening fire on Israeli civilians with the aim of causing the deaths of as many civilians as possible.

8.  The Defendant and Fares Ghanem concealed the said M-16 assault rifle and magazines in the above mentioned Isuzu.

9.  Fares Ghanem drove the Isuzu, Sa'id Ramadan sat in the seat next to the driver's seat, while the Defendant sat in the back seat.

10.  The Defendant and Fares Ghanem drove Sa'id Ramadan to Jerusalem via the route that they had checked out earlier that day, as described above.

11.  The Defendant and Fares Ghanem drove to Sheikh Jarrah Street. There they took out the M-16 assault rifle and the magazines that had been concealed in the vehicle, and gave them to Sa'id Ramadan. The Defendant shifted into the seat next to the driver's seat, while Sa'id Ramadan moved to the back seat, holding in his hands the M16 assault rifle and the magazines.

12.  The Defendant and Fares Ghanem drove Sa'id Ramadan to Haneviim Street.

13.  During the trip, Sa'id Ramadan complained to the Defendant and Fares Ghanem that they had bought him new shoes for the terrorist attack, but they were too small and tight on him. The Defendant took off his Reebok shoes and gave them to Sa'id Ramadan, saying, "Go up to heaven with Reebok shoes."

[Stamp] P 6: 69 [continued]

14.  Upon reaching the intersection of Straus and Haneviim Streets, the Defendant and Fares Ghanem stopped the Isuzu.

15.  The Defendant and Fares Ghanem said to Sa'id Ramadan to go down to Jaffa Road on foot and to begin shooting where he saw a large number of people.

16.  After Sa'id Ramadan got out of the vehicle with the M-16 assault rifle and the ammunition, the Defendant and Fares Ghanem drove from there in the Isuzu, went out onto Road no. 1 through the Musrara neighborhood, and from there drove along the main road to Ramallah.

17.  Sa'id Ramadan, some minutes after getting out of the Defendant and Fares Ghanem's vehicle, reached Jaffa Road.

[Stamp] Certified Copy

[Round Stamp]
Military Appeals
Court
Judea and Samaria

6

Prosecution File 241/02 Amended

[Stamp] P 6: 69 [continued]

18.    At around 4:20 p.m., as he stood opposite No. 47 Jaffa Road or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he held, shouted "*Allahu Akbar*," and opened fire on automatic in all directions at the people in Jaffa Road, at the bus stop located there, into the Egged number 27 bus that was at the said stop at that time, and at the people who were inside the nearby shops, with the aim of causing the deaths of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the scene toward the parking lot located in Harav Kook Street. There Sa'id Ramadan changed magazines and continued firing at civilians with the aim of causing their deaths. Sa'id Ramadan fired over 38 bullets from the M-16 assault rifle that he held. Sa'id Ramadan continued firing at civilians until he was killed by the civilians and policemen who arrived on the scene.

19.    By his actions as described above, the above named Defendant intentionally caused the death of the late **Ora (Svetlana) Sandler**, who died as a result of being struck by the rounds fired by Sa'id Ramadan.

**Ninth Count: (Detailed Incident File 502/02 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14(a) of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Area, on January 22, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, on the said date, in the place stated in the previous count of the indictment, by his actions as described in the previous count of the indictment, intentionally caused the death of the late **Sarah Hamburger**, who died as a result of being struck by the bullets fired by Sa'id Ramadan, who had been brought to the said location by the Defendant and Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi") for the purpose of carrying out the said terrorist attack.

> [Round Stamp]
> Military Appeals
> Court
> Judea and Samaria

[Stamp] P 6: 70

**Tenth Count: (Detailed Incident File 502/02 Zion)**                [Stamp] Certified Copy

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(a) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Area, on January 22, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at the place stated in the eighth count of the indictment, by his actions as described in the eighth count of the indictment, attempted to intentionally cause the deaths of as many civilians as possible, who were at that time in Jaffa Road or its vicinity. As a result of the shooting carried out there by Sa'id Ramadan, who had been brought to the above mentioned location by the Defendant and Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi") for the purpose of carrying out the said terrorist attack, **over 45 civilians were wounded**.

**Eleventh Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Area, at the end of January through the beginning of February 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  At the said time, Fares Sadeq Mohamed Ghanem (known as "Al-Hitawi") called the Defendant. Fares Ghanem informed the Defendant that Ahmed Barghouti (known as "Al-Fransi"), bodyguard of Marwan Barghouti – head of the Fatah Organization's Tanzim, which is an unlawful association, wanted to get another terrorist into Jerusalem, to carry out a suicide terrorist attack in Jerusalem, similar to the terrorist attack described in the eighth count of the indictment, with the aim of causing the deaths of as many civilians as possible. The Defendant agreed to participate in transporting the said suicide terrorist to Jerusalem.

[Stamp] P 6: 70 [continued]

2.   The Defendant and Fares Ghanem agreed that they would transport the suicide terrorist to Jerusalem in a Subaru, which they would ask Ahmed Barghouti for.

7

Prosecution File 241/02 Amended

[Stamp] P 6: 70 [continued]

19

3.  On that same day, the Defendant and Fares Ghanem traveled to Ramallah and there met with Ahmed Barghouti. The Defendant and Fares Ghanem asked Ahmed for a vehicle to transport the suicide terrorist to Jerusalem. Ahmed Barghouti gave the Defendant a gray Subaru, belonging to Ahmed Barghouti's family. The Defendant returned to his home in Bir Nabala with the Subaru, while Fares Ghanem drove his Isuzu van to his home in Kafr Akab.

4.  The next day Fares [sic] Barghouti called the Defendant and Fares Ghanem and instructed them to come to the gas station in Ramallah Tachta, to collect the suicide terrorist from there and to transport him to Jerusalem so that he could carry out the suicide terrorist attack there, with the aim of causing the deaths of as many civilians as possible. The Defendant consented.

5.  The Defendant drove the Subaru to the Kalandia checkpoint, where he parked the vehicle and got into Fares Ghanem's Isuzu which arrived there. From there the two continued to the said meeting place.

6.  In Ramallah at the above mentioned gas station, the Defendant and Fares Ghanem met with Ahmed Barghouti, who introduced them to the suicide terrorist who was with them. Ahmed Barghouti gave the suicide terrorist an M-16 assault rifle and three magazines full of bullets for the M-16 assault rifle.

7.  The Defendant and Fares Ghanem concealed the M-16 assault rifle and the magazines within the Isuzu.

8.  The Defendant and Fares Ghanem traveled together with the suicide terrorist to Jerusalem so that the latter could carry out a shooting terrorist attack there and cause the deaths of as many civilians as possible.

9.  The Defendant, Fares Ghanem and the suicide terrorist arrived at the Kalandia checkpoint and bypassed it. Then the Defendant moved to the Subaru, which he had left there previously, and traveled to A-Ram Junction. The Defendant passed the A-Ram checkpoint in the Subaru and waited there for Fares Ghanem and the suicide terrorist, who had bypassed the A-Ram checkpoint on foot. Subsequently, Fares Ghanem went back, got into the Isuzu, in which the weapons were concealed, and passed through A-Ram checkpoint, traveling alone in the Isuzu with the weapons.

10. The Defendant drove the suicide terrorist to the mosque in Shuafat. Fares Ghanem also arrived there in the Isuzu with the weapon and ammunition.

[Stamp] P 6: 71

20

11. There, the suicide terrorist asked to enter the mosque and pray before carrying out the suicide terrorist attack. The Defendant and Fares Ghanem agreed to the suicide terrorist's request.

12. While the suicide terrorist was praying in the said mosque, the Defendant and Fares Ghanem drove in the Subaru to Givat Shaul in Jerusalem, to check whether there were Israel Defense Forces or police checkpoints on the way. The Defendant and Fares Ghanem planned to transport the suicide terrorist to Givat Shaul, to have him carry out the planned shooting terrorist attack there, because there would be numerous civilians in that location.

13. When the Defendant and Fares Ghanem returned to the mosque in Shuafat to pick up the suicide terrorist from there and transport him to Givat Shaul, so that he could carry out the planned shooting terrorist attack there, the two of them did not find the suicide terrorist at the mosque.

14. The Defendant and Fares Ghanem called Ahmed Barghouti and reported to him that the suicide terrorist had run away from them. Ahmed Barghouti instructed the Defendant and Fares Ghanem to return to Ramallah.

15. The Defendant and Fares Ghanem returned to Ramallah; there they met with Ahmed Barghouti and gave him the Subaru, the M-16 assault rifle and the magazines.

[Round Stamp]
Military Appeals
Court
Judea and Samaria

[Stamp] Certified Copy

8

Prosecution File 241/02 Amended

[Stamp] P 6: 71 [continued]

[Stamp] Certified Copy

**Prosecution Witnesses**

1. Advanced Staff Sergeant Major Yaakov Barazani, Badge No. 99106, Investigations Bureau, Judea. (took the Defendant's statement dated March 11, 2002, and submitting the Defendant's handwriting in Arabic, and a Seizure and Marking Report)
2. Staff Sergeant Major Yitzhak Yaakoboff, Badge No. 1008358, Investigations Bureau, Judea. (took the Defendant's statement dated April 1, 2002, and submitting the Defendant's handwriting in Arabic)
3. Mohamed Abed Rahman Salem Maslah, Identity No. 902845643. (under arrest) (Prosecution File 242/01)
4. HussamAkal Rajib Shahada, Identity No. 975564733. (under arrest) (Prosecution File 243/01)
5. Hitham al-Muthafaq Hamdan. (under arrest)

[Round Stamp]
Military Appeals
Court
Judea and Samaria

**Detailed Incident File 7915/01 Zion**

6. Staff Sergeant Major Zion Sasson, Badge No. 957068, Zion Station. [Submitting action report]
7. Superintendent Lior Nedivi, Badge No. 952127, Criminal Identification Department – Zion Station. [Submitting Initial Crime Scene Visit Report + photo board]
8. Superintendent Yoram Saar, Zion Station. [Finder of shell casings at the scene of the incident – chain of evidence]
9. Superintendent Ami Leifer, Badge No. 959841, Mobile Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Vehicle Inspection Report – seizure of remnants of a bullet]
10. Cadet Adva Malka, Badge No. 1049089, Special Duties Department – Zion Station. [Submitting Form Accompanying Exhibits]
11. Senior Staff Sergeant Major Ziva Hoter, Badge No. 512699, Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)
12. Superintendent Avi Kaufman, Weapons Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Expert Opinion from the Criminal Identification Department File 4539/01-07/ZB] (To be summoned only upon the express request of the Defense)

[Stamp] P 6: 72

22

13. Dr. Eyal Yitzhiak, Registration No. 31004, Hadassah Hospital Ein Kerem, Jerusalem. [Submitting discharge certificate for Moshe Weiss] (To be summoned only upon the express request of the Defense)

14. Dr. Yaakov Globerman, Hadassah Hospital Ein Kerem, Jerusalem. [Submitting notice of death for the late Meir Weissboiz [sic., should be Weisshaus]] (To be summoned only upon the express request of the Defense)

15. Moshe Weiss, Identity No. 024001505. (Details held by the Prosecution) [Seriously wounded in the terrorist attack]

16. Yaffa Vaknin, Identity No. 058857863. (Details held by the Prosecution) (Eyewitness)

> [Round Stamp]
> Military Appeals
> Court
> Judea and Samaria

**Detailed Incident File 481/01 Zion**

17. Tony Amiel, Identity No. 032441040. (Details held by the Prosecution) (Driver of the Honda)

18. Pini Maimon, Identity No. 025759762. (Details held by the Prosecution) (Passenger in the Honda)

19. Pazit Maimon, Identity No. 040128084. (Details held by the Prosecution) (Passenger in the Honda)

**Detailed Incident File 8379/01 Zion**

20. Superintendent Lior Nedivi, Badge No. 952127, Criminal Identification Department – Zion Station. [Submitting Initial Crime Scene Visit Report + Seizure and Marking Report]

21. Staff Sergeant Major Gavriel Abed, Badge No. 958736, Special Duties Department – Zion Station. [Submitting Form Accompanying Exhibits]

22. Superintendent Ami Leifer, Badge No. 959841, Mobile Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Vehicle Inspection Report – seizure of remnants of a bullet]

23. Cadet Dror Avram, Badge No. 1039080, Special Duties Department – Zion Station. [Submitting Form Accompanying Exhibits]

24. Zion Sadeh, Identity No. 029505724, Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

[Stamp] P 6: 72 [continued]

25. Senior Staff Sergeant Major Yossi Ben Israel, Badge No.  44771, Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

26. Superintendent Avi Kaufman, Weapons Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting two Expert Opinions from the Criminal Identification Department File 4723/01-07/ZB] (To be summoned only upon the express request of the Defense)

27. Sigal Shazo, Zion Station. [Finder of shell casings at the scene of the incident – chain of evidence]28.    Malka Cohen, Identity No. 038791386. (Details held by the Prosecution) (Wounded in the terrorist attack)

29. Pinhas Cohen, Identity No. 038348256. (Details held by the Prosecution) (Wounded in the terrorist attack)

30. Ohev Ami Yehiel, Identity No. 059214320. (Details held by the Prosecution) (Eyewitness – treated the wounded)

31. Dr. Yair Eden, Registration No. 33272, Hadassah Hospital Ein Kerem, Jerusalem. [Submitting discharge certificate for Pinhas Cohen] (To be summoned only upon the express request of the Defense)

32. Dr. Menachem Gross, Registration No. 30416, Hadassah Hospital Ein Kerem, Jerusalem. [Submitting discharge certificate for Malka Cohen] (To be summoned only upon the express request of the Defense)

**Detailed Incident File 39/02 Binyamin**

33. Inspector Michael Malka, Badge No.  1040320, Patrol – Binyamin Station. [Submitting action report]

9

Prosecution File 241/02 Amended

[Stamp] P 6: 72 [continued]

[Stamp] Certified Copy

34. Advanced Staff Sergeant Major Kobi Sebag, Badge No. 56494, Binyamin Station. [Submitting Investigation Memorandum/Seizure and Marking]

35. Senior Staff Sergeant Major Eli Kojman, Badge No. 46951, Criminal Identification Department, Judea. [Submitting photo boards + collected shell casings at the scene of the incident]

36. Superintendent Ami Leifer, Badge No. 959841, Mobile Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting photo boards + Vehicle Inspection Report]

37. Staff Sergeant Major Meir Vanunu, Badge No. 1018332, Binyamin Station. [Submitting Form Accompanying Exhibits]

38. Senior Staff Sergeant Major Ziva Hoter, Badge No. 512699, Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

39. Lieutenant Dr. Nir Ayalon, Registration No. 33216, Israel Defense Forces (Details held by the Prosecution) [Testimony – Determination of the death of the late Yoela Chen + treatment of wounded person]

40. Dr. Shaul Beit, Registration No. 33027, Hadassah Hospital Ein Kerem, Jerusalem. [Submitting Medical Certificate – Sickness Summary for Rachelle (Rachel) Eini] (To be summoned only upon the express request of the Defense)

41. Rachel (Rachelle) Eini, Identity No. 075966614. (Details held by the Prosecution) (Wounded in the terrorist attack)

42. Sami Vaknin, Identity No. 027798040. (Details held by the Prosecution) [Testimony + Diagram] (eyewitness)

43. Nachshon Barashi, Identity No. 05033235. (Details held by the Prosecution) (Identification of the deceased)

[Round Stamp] Military
Appeals Court
Judea and Samaria

**Detailed Incident File 502/02 Zion**

44. Chief Inspector Dror Asseraf, Badge No. 942276, Special Duties Department – Zion Station. [Submitting Memorandum Report, Seizure and Marking]

45. Senior Staff Sergeant Major Yigal Daniel, Special Duties Department – Zion Station. [Submitting Seizure and Marking Report]

46. Cadet Zvika Reisner, Special Duties Department – Zion Station. [Submitting Memorandum Report, Seizure and Marking + Photographs]

[Stamp] P 6: 73

47. Sergeant Major Zion Tabdi, Badge No.  1043413, Special Duties Department – Zion Station. [Submitting action report + cross findings]

48. Senior Staff Sergeant Major Asher Levy, Badge No.  47720, Interrogations – Zion Station. [Submitting Seizure and Marking Report]

49. Benny Azriel, Identity No. 303647598. (Details held by the Prosecution) (Eyewitness – ran after the terrorist)

50. Amad Anidat, Badge No.  739037, Border Guard, Jerusalem (Eyewitness – ran after the terrorist and shot at the terrorist)

51. Shai Cohen, Badge No.  1042043, Patrol Unit 2 – Zion Station. (Eyewitness – shot at the terrorist)

52. Noam Gabay, Identity No. 033121070, Central Unit – Jerusalem. (Eyewitness – ran after the terrorist and shot at the terrorist)

53. Hanan Benaim, Badge No.  1049188, Special Patrol Unit – Motorcycles – Shalem Station. (Eyewitness – pursued the terrorist, removed the terrorist's weapon after the terrorist was killed)

54. Genady (Guy) Melnik, Identity No. 309130540. (Details held by the Prosecution) (Eyewitness – security guard on the scene – shot at the terrorist and wounded him)

55. Alon Halfon, Badge No.  761775, Detectives – Central Unit, Jerusalem. (Eyewitness – ran after the terrorist, shot at the terrorist)

56. Avi Ben-Ami, Badge No.  996140, Detectives – Central Unit, Jerusalem. (Eyewitness –shot at the terrorist)

57. Haim Tzalah, Identity No. 033401019. (Details held by the Prosecution) (Eyewitness – driver of the Egged bus at the scene of the terrorist attack)

58. Boris Abtissian, Identity No. 309086171. (Details held by the Prosecution) (Eyewitness)

59. Yekutiel-Yisrael Alush, Identity No. 310101647. (Details held by the Prosecution) (Eyewitness)

60. Moshe Maman, Identity No. 06246911. (Details held by the Prosecution) (Eyewitness)

61. Tova Yitzhaki, Identity No. 051270353. (Details held by the Prosecution) (Eyewitness)

62. Mazal Yitzhaki, Identity No. 04330150. (Details held by the Prosecution) (Eyewitness)

63. Yaron Avrahami, Identity No. 640712770. (Details held by the Prosecution) (Eyewitness)

64. Pinhas Bentura, Identity No. 055611230. (Details held by the Prosecution) (Eyewitness)

65. Kfir Kedem, Identity No. 039381249. (Details held by the Prosecution) (Eyewitness – saw the terrorist arrive at the scene of the terrorist attack on foot)

66. Yaakov Sandler, Identity No. 307750984. (Details held by the Prosecution) (Identification of the body of the late Ora (Svetlana) Sandler)

[Stamp] P 6: 73 [continued]

67.  Dr. Dafna Vilner, Registration No. 20234, Hadassah Hospital Ein Kerem, Jerusalem. [Submitting Notification of Death of the late Ora (Svetlana) Sandler] (To be summoned only upon the express request of the Defense)

68.  Dr. Yelena Vesselov, Hadassah Hospital Ein Kerem, Jerusalem. [Submitting Notification of Death of the late Sarah Hamburger] (To be summoned only upon the express request of the Defense)

An additional list of witnesses relating to those wounded in the terrorist attack in Jaffa Road on January 22, 2002, and medical certificates related to their injuries, will be provided during the course of the trial.

> [Signature]
> Michael Kotlick, Captain
> Military Prosecutor

Date: January 12, 2003
Reference: 241-02 Amended

10

Prosecution File 241/02 Amended

[Stamp] P 6: 73 [continued]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                    Plaintiffs,

                                        No. 04 Civ. 00397 (GBD) (RLE)

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                    Defendants.

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 6: 64-73.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated bearing the bates number P 6: 64-73.

Dated: March _6_, 2014

                                        _____
                                        Rina Ne'eman

ss.: New Jersey

On the _6_ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
_6_ day of March, 2014


Notary Public

LEONOR TROYANO
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/5/2014

צבא                           הגנה                          לישראל

בבית      המשפט      הצבאי          תיק ביה"מ : 3251/02
בבית                   אל            תיק תביעה : 241/02
בפני                  הרכב          תיק פ.א. : 39/02 בנימין
                                    ציון 7915/01
                                    ציון 481/01
                                    ציון 8379/01
                                    ציון 502/02



במשפט שבין התובע הצבאי - המאשים

- נ ג ד -

מחמד סאמי אברהים עבדאללה
ת.ז. 979469954, יליד 04.05.74, תושב ביר נבאללה
עצור מיום 20.02.02



- ה נ א ש ם -

כ ת ב - א י ש ו ם  מ ת ו ק ן

הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

פרט ראשון:

מהות העבירה: חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

פרטי העבירה: הנאשם הנ"ל, באיזור, החל מאמצע שנת 2001 ועד ליום מעצרו, היה חבר או פעל
כחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר בחוליה צבאית, אשר שמח לה למטרה ביצוע
פיגועים נגד אזרחים ישראליים הן באיזור, הן מחוצה לו. הנאשם פעל בחוליה הצבאית האמורה
ביחד עם מחמד ע/רחמאן סאלם מצלח (המכונה "אבו סטחא"), חוסאם עקל רגיב שחאדה, פראס
צאדק מחמד עיאנם (המכונה "אל חיטאווי"), הייתם אלמותפק חמדאן, זידאן אל בדווי, ניזאר
והדאן ועלי עליאן.
הנאשם פעל בחוליה הצבאית האמורה כפי שיתואר בפרטי האישום הבאים.

ח.ת. 241/02 מתוקן

P 6: 64

<u>פרט שני:</u> (פ.א. 7915/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, גרם בכוונה למותם של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה, נפגש עם חוסאם עקל רגיב שחאדה, פראס צאדק מחמד עיאנם (המכונה "אל חיטאווי"), הריתם אלמוותמף חמדאן ועלי עליאן. חוסאם שחאדה הגיע לפגישה הנ"ל כשהוא ממוש בתמ"יק MP-5, אשר אותו קיבל ביחד עם פראס עיאנם מידי מחמד ע/רחמאני סאלם מצלח (המכונה "אבו סטחחי") לצורך ביצוע פיגוע ירי, ואילו הריתם חמדאן הגיע כשהוא חמוש באקדח טופי.

2. הנאשם וחבריו הנ"ל החליטו לצאת לירושלים ולבצע שם פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים.

3. בסביבות השעה 22:00, ביום 15.09.01, הנאשם וכל חבריו הנ"ל נסעו מרמאללה לירושלים ברכב איסוזו טנדר של פראס עיאנם.

4. פראס עיאנם נהג ברכב האיסוזו הנ"ל ונסע ביחד עם הנאשם וחבריו על מנת להראות להם מקום שבו יבצעו את פיגוע הירי המתוכנן וכן על מנת להראות לנאשם וחבריו איך להימלט לאחר ביצוע הפיגוע האמור. פראס עיאנם הסיע את הנאשם וחבריו לכביש מס' 9 המחבר בין שכונת רמות לבין שכונת הגבעה הצרפתית בירושלים. פראס עיאנם הראה לנאשם וחבריו איפה לבצע את הפיגוע המתוכנן ואיך להימלט לאחר מכן. בסיום הסיור האמור, הנאשם וחבריו הנ"ל חזרו לרמאללה.

5. בסביבות השעה 22:30, באותו היום, הנאשם ביחד עם חוסאם שחאדה והריתם חמדאן נסע ברכב גנוב בצבע אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם עלי עליאן לצורך ביצוע הפיגוע המתוכנן (להלן: הרכב). לפני הנאשם נסע פראס עיאנם ברכב האיסוזו הנ"ל וזאת על מנת להודיע באמצעות טלפון סלולרי לנאשם וחבריו על מחסומי משטרה וצה"ל.

6. הנאשם נהג ברכב הנ"ל, לידו ישב חוסאם שחאדה, החמוש בתמ"יק MP-5, ובמושב האחורי ישב הריתם חמדאן, החמוש באקדח טופי.

7. הנאשם וחבריו הנ"ל נעצרו בכביש מס' 9 בסמוך לצומת המוביל לשכונת רמת שלמה והמתינו לרכב ישראלי בודד שיגיע למקום במטרה לבצע לעברו פיגוע ירי ולגרום למותם של נוסעי הרכב.

8. לאחר מספר דקות, בסמוך לשעה 23:10, הגיע למקום רכב רנו אקספרס לבן, מ.ר. 2273706, (להלן: הרנו) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

9. הנאשם החל לנסוע אחרי הרנו ועקף אותו.

10. כשהרכב, שבו נהג הנאשם, נסע במקביל לרנו, חוסאם שחאדה והריתם חמדאן פתחו באש בתמ"יק MP-5 ובאקדח טופי לעבר נוסעי הרנו במטרה לגרום למותם.

11. מספר קליעים שנורו על-ידי חוסאם שחאדה והריתם חמדאן פגעו ברנו ובשני נוסעי הרנו - משה וייס ומאיר וייסבויז ז"ל. הנאשם שמע את אחד מנוסעי הרנו צועק "איי איי".

12. לאחר מכן, הנאשם המשיך לנסוע לכיוון שכונת רמות ובסמוך למקום שבו בונים גשר חדש פנה ימינה לדרך עפר המובילה לכיר נבאללה.

13. לפני הכניסה לכיר נבאללה, הנאשם וחבריו שהיו עמו ברכב נפגשו עם פראס עיאנם שהמתין להם במקום ברכב האיסוזו. משם הנאשם וחבריו הנ"ל, ביחד עם פראס עיאנם, המשיכו בנסיעתם לכיר נבאללה ולאחר מכן נמלטו לרמאללה.

14. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של <b>מאיר וייסבויז</b> ז"ל, אשר נפטר בבית החולים מאוחר יותר באותו היום כתוצאה מפגיעות הקליעים שנורו על-ידי חברי הנאשם.



נאמן למקור

2

ת.ז. 741/02 מתוקן

<u>פרט שלישי:</u>  (ת.א. 7915/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"י-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 23:10, במקום המתואר בפרט האישום הקודם,
במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותו של משה וייס, אשר נהג
ברכב רנו אקספרס לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד הקליעים שנורו
על-ידי חברי הנאשם, כפי שתואר בפרט האישום הקודם, פגע בראשו של משה וייס ופצע אותו.

נאמן למקור

<u>פרט רביעי:</u>  (ת.א. 481/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"י-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1.  הנאשם הנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, ביחד עם מחמד
    ע/רחמאן פאלח מצלח (מכונה "אבו סטחה"), חוסאם עקל רג'ב שחאדה ופראס צאדק מחמד
    עיאנם (המכונה "אל חיטאווי"), החליט לבצע פיגוע ירי במטרה לגרום למותם של אזרחים
    ישראליים.

2.  לצורך ביצוע פיגוע הירי המתוכנן, הנאשם קיבל מידי טארק מאלחי א-נוף רכב מזדה 323 גנוב
    בצבע אפור עם לוחיות רישוי ישראליות. לצורך ביצוע פיגוע הירי המתוכנן, מחמד מצלח קיבל
    מאחמד ברנוותי, שומר ראשו של מרוואן ברגותי, ראש "התנזים" של הפת"ח באיזור, שהוא
    התאחדות בלתי מותרת, תמי"ק MP-5.

3.  ביום 03.10.01, הנאשם יצא מרמאללה לכיוון ירושלים במטרה לבצע שם את פיגוע הירי
    המתוכנן כשהוא נוהג ברכב המזדה הנ"ל. מחמד מצלח נסע ביחד עם הנאשם, כשהוא חמוש
    בתמי"ק MP-5 הנ"ל.

4.  פראס עיאנם וחוסאם שחאדה נסע ברכב איסוזו טנדר של פראס עיאנם לפני רכב המזדה שבו
    נסע הנאשם וזאת במטרה להודיע על מחסומי המשטרה וצה"ל בדרך. הנאשם וכל חבריו הנ"ל
    הגיעו לבית חנינא החדשה שבירושלים. שם הנאשם החנה את רכב המזדה, וניהד עם מחמד
    מצלח הסתיר בתוך הרכב את תמי"ק MP-5 הנ"ל. הנאשם ומחמד מצלח עלו לרכב האיסוזו
    ומשם המשיכו ברכב האיסוזו ביחד עם פראס עיאנם וחוסאם שחאדה לכיוון כביש בגין.

5.  הנאשם וחבריו הנ"ל הגיעו לכביש בגין. שם, פראס עיאנם הראה לנאשם ושאר חבריו איפה
    לבצע את פיגוע הירי המתוכנן ואיך להימלט לאחר ביצוע פיגוע הירי. הנאשם וחבריו הנ"ל
    החליטו לבצע את פיגוע הירי המתוכנן במנהרה הראשונה של כביש בגין מכיוון רמות וזאת על
    מנת שלא ישמעו את קולות הירי. לאחר מכן, הנאשם וכל חבריו הנ"ל חזרו לבית חנינא,
    למקום שבו הושאר רכב המזדה.

6.  הנאשם עלה לרכב המזדה, לידו התיישב מחמד מצלח החמוש בתמי"ק MP-5. משם הנאשם
    נהג ברכב המזדה לכביש בגין במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של
    אזרחים ישראליים.

7.  הנאשם ומחמד מצלח נסע בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב ישראלי
    בודד במטרה לבצע לעברו את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי הרכב.

8.  בסמוך לשעה 23:35, כשהם נוסעים לכיוון צפון, במנהרה האחרונה בכיוון נסיעתם, הנאשם
    ומחמד מצלח הבחינו ברכב הונדה אקורד, מ.ר. 1103217, הנוסע בכביש בגין לכיוון צפון.
    ברכב ההונדה נסעו טוני עמיאל, פיני מימון ופוית מימון.

9.  הנאשם עקף את רכב ההונדה הנ"ל. בעת שהנאשם נסע במקביל לרכב ההונדה הנ"ל, מחמד
    מצלח ירה כדור אחד בתמי"ק MP-5, אשר בו החזיק, לעבר נוסעי רכב ההונדה, במטרה לגרום
    למותם. הקליע שנורה על-ידי מחמד מצלח לא פגע ברכב ההונדה הנ"ל.

10. לאחר ביצוע פיגוע הירי האמור, הנאשם ומחמד מצלח המשיכו בנסיעתם לכיוון כביש מס' 9
    המחבר בין שכונת רמות לשכונת הגבעה הצרפתית.

3

הו.ת. 241/02 מתוקן



נאמן למקור

<u>פרט חמישי:</u> (פ.א. 8379/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. לאחר שהנאשם, ביחד עם מחמד ע/רחמאן סאלם מצלח (המכונה "אבו סטחה"), ביצע את פיגוע הירי כפי שתואר בפרט האישום הקודם, חשניים המשיכו בנסיעה ברכב המזדה, המתוארת בפרט האישום הקודם, לכיוון כביש מס' 9, המחבר בין שכונת רמות לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חנינא ובהמשך לרמאללה.

2. במהלך הנסיעה הנ"ל, מחמד מצלח, על-פי בקשת הנאשם, בדק את תקינותו של תמ"ק MP-5, אשר בו החזיק, ואף ירה מספר כדורים באוויר.

3. במהלך הנסיעה בכביש מס' 9 הנ"ל, בסמוך לשעה 23:45, הנאשם ומחמד מצלח הבחינו ברכב סקודה, מ.ר. 6567709, אשר נסע בכביש מס' 9 לכיוון הגבעה הצרפתית. ברכב הסקודה הנ"ל נסעו מלכה כהן ופנחס כהן.

4. הנאשם ומחמד מצלח החליטו לבצע פיגוע ירי לעבר רכב הסקודה הנ"ל ולגרום למותם של הנוסעים בו.

5. הנאשם, אשר, כאמור, נהג ברכב המזדה, עקף את רכב הסקודה.

6. בעת שהנאשם נסע במקביל לרכב הסקודה הנ"ל, מחמד מצלח ירה בתמ"ק MP-5 מספר יריות לעבר רכב הסקודה הנ"ל במטרה לגרום למותם של נוסעי רכב הסקודה.

7. מספר קליעים שנורו על-ידי מחמד מצלח פגעו ברכב הסקודה. שני קליעים שנורו על-ידי מחמד מצלח פגעו בפנסים כהן וקליע נוסף פגע במלכה כהן.

8. פנחס כהן נפצע בפניו ובזרועו בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע ה-28 לחריון, נפצעה באורח בינוני מפגיעת קליע ברגלה.

9. לאחר ביצוע פיגוע הירי האמור, הנאשם ומחמד מצלח המשיכו בנסיעתם לכיוון הגבעה הצרפתית ומשם הגיעו לבית חנינא החדשה. שם, הנאשם ומחמד מצלח החנו את רכבם ויצרו קשר טלפוני עם חוסאם עקל רביב שחאדה ופראס צאדק מחמד עיאמ (המכונה "אל חינאווי"), אשר הגיעו למקום ברכב האיסוזו של פראס עיאמנ על מנת לאסוף את הנאשם ומחמד מצלח, וזאת לפי התבנון האמור בפרט האישום הקודם.

10. הנאשם ומחמד מצלח הסתירו את תמ"ק MP-5 הנ"ל ברכב האיסוזו ועלו לרכב האיסוזו.

11. הנאשם ושלושת חבריו הנ"ל ניסו לחזור לחזור מירושלים לרמאללה, אך לא הצליחו לעשות זאת בגלל מחסומי צה"ל והמשטרה. הנאשם וחבריו הנ"ל נשארו ללון אצל יאסר אבו אלחטיב, חברו של חוסאם שחאדה, בבית חנינא החדשה בירושלים.

12. יום למחרת, 04.10.01, הנאשם חזר ברכב המזדה הנ"ל לרמאללה והחזיר את הרכב לידי טארק א-נוף.

<u>פרט שישי:</u> (פ.א. 39/02 בנימין)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. ביום 14.01.02 הרב ראאד כרמי אשר היה מפעיל צבאי בכיר ב"תנזים" של ארגון הפת"ח, שהוא התנאתו בלתי מותרת. בעקבות מותו של ראאד כרמי הנ"ל, ראש "התנזים" של הפת"ח באיזור - מרוואנ ברגותי פתח אוהל אבלים באלכירה.

2. ביום 15.01.02, הנאשם הגיע לאוהל האבלים הנ"ל ונפגש שם עם מחמד ע/רחמאן סאלם מצלח (המכונה "אבו סטחה"), פראס צאדק מחמד עיאמ (המכונה "אל חיטאווי"), טארק מאלחי א-נוף, זידאן אל בדוי ואחמד ברגותי (המכונה "אל פראנסי") שהוא שומר ראשו של מרוואנ ברגותי הנ"ל. אחמד ברגותי הנ"ל מסר לנאשם ולחבריו הנ"ל כי מרוואנ ברגותי, ראש "התנזים" של הפת"ח באיזור, מבקש כי הנאשם וחבריו יבצעו באופן מיידי פיגוע נקמה על מותו של ראאד כרמי הנ"ל ויגרמו למותם של אזרחים ישראליים.

3. הנאשם וחבריו הנ"ל, באוהל האבלים הנ"ל, החליטו לבצע עוד באותו הערב פיגוע בתחנת הדלק גבעונים הנמצאת בכביש 443 בסמוך לכניסה לגבעת זאב ולגרום למוותם של אזרחים ישראליים.

4. בשעות הערב באותו היום, 15.01.02, הנאשם יצא מאוהל האבלים הנ"ל ביחד עם פראס עיאנם. הנאשם ופראס עיאנם נסעו ברכב איסוזו טנדר של פראס ועימם הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן. אחרי רכב האיסוזו הנ"ל נסעו זיאון, החמוש באקדח 16, ומחמוד מצלח, החמוש באקדח נוסף, וטארק א-נוף, החמוש בתמ"יק MP-5. השלושה נסעו ברכב מזדה בצבע חום בהיר לעבר תחנת הדלק הנ"ל במטרה לבצע שם את הפיגוע המתוכנן.

5. הנאשם וכל חבריו הנ"ל הגיעו עד ערמת עפר החוסמת את היציאה מכפרים ביר נבאללה ואלבירה לכביש 443 במרחק של כ-100 מטר מתחנת הדלק הגבעונים. הנאשם וחבריו החנו את כלי הרכב שלהם, איסוזו ומזדה, עם הפנים לכיוון הכפר ביר נבאללה על מנת שיוכלו להימלט מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

6. מחמוד מצלח, החמוש באקדח 14 שלו, זיאון, החמוש באקדח 16, וטארק א-נוף, החמוש ב-MP-5, ירדו מכלי הרכב והלכו לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למוותם של אזרחים ישראליים.

7. הנאשם ופראס עיאנם נשארו בכלי הרכב הנ"ל על מנת לשמור שלא יגיע למקום סייר של צה"ל או אנשים אחרים. הנאשם שב בכימה הנהג ברכב המזדה על מנת שיוכל למלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מיד לאחר ביצוע הפיגוע.

8. טארק א-נוף ומחמוד מצלח עמדו בכניסה לתחנת הדלק הנ"ל. לאחר מספר דקות, בסמוך לשעה 19:45, מחמוד מצלח וטארק א-נוף הבחינו ברכב פיאט אונו לבן, מ.ר. 6424905, שנכנס לתחנת הדלק הנ"ל ואשר בו נהגה יואלה חן ז"ל ולידה ישבה רשל (רחל) עיני. טארק א-נוף ומחמוד מצלח ניגשו אל רכב הפיאט במטרה לבצע לעברה פיגוע ירי ולגרום למוותן של נוסעות הרכב. נוסעות רכב הפיאט הבחינו באקדח שבו החזיק מחמוד מצלח והחלו לצעוק ולצפור. מחמוד מצלח הכניס את האקדח למכנסיו ואמר לנוסעות הרכב שלא יפחדו. בשלב זה, טארק א-נוף פתח באש אוטומטית בתמ"יק MP-5 לעבר נוסעת רכב הפיאט במטרה לגרום למוותן. אז גם מחמוד מצלח שוב הוציא את אקדחו והחל לירות לעבר נוסעות הרכב במטרה לגרום למוותן.

9. מחמוד מצלח וטארק א-נוף ירו מטווח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל ולעבר רשל (רחל) עיני שהיו ברכב הפיאט הנ"ל.

10. 28-8 קליעים, שנורו על-ידי טארק א-נוף ומחמוד מצלח, פגעו בשמשה הקדמית של הרכב, מספר קליעים פגעו בצד הרכב ובשמשת חלון דלת הנהג.

11. במהלך ביצוע פיגוע הירי המתואר, זיאון, אשר עמד במרחק קצר מאחורי מחמוד מצלח וטארק א-נוף, שימש כשומר ומתריע.

12. פראס עיאנם, מיד לאחר ששמע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת להודיע לנאשם וחבריו אם יש מחסומים בדרך לרמאללה.

13. טארק א-נוף, זיאון ומחמוד מצלח, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל רכב המזדה שבו המתין הנאשם. לאחר שהשלושה הנ"ל עלו לרכב הנאשם הסיע אותם לרמאללה. בדרך לרמאללה, הנאשם, טארק א-נוף, מחמוד מצלח וזיאן נפגשו עם פראס עיאנם.

14. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למוותה של **יואלה חן ז"ל**, אשר נפטרה במקום כתוצאה מפגיעת הקליעים שנורו על-ידי טארק א-נוף ומחמוד מצלח.

נאמן למקור

<u>פרט שביעי:</u> (פ.א. 39/02 בנימין)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים (א)14 ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 19:45, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום למותה של רשל (רחל) עיני, אשר נסעה ברכב פיאט אונו לבן, מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי חברי הנאשם, כפי שתוארו בפרט האישום הקודם, פגע בראשה של רשל (רחל) עיני ושני קליעים נוספים פגעו בכתפה השמאלית ופצעו אותה באורח בינוני.

5

ת.ח 241/02 מתוקן

P 6: 68

<u>פרט שמיני :</u> (פ.א. 502/02 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

1. באמצע חודש ינואר 2002, התקשר אל הנאשם פראס צאדק מחמד עיאנם (המכונה "אל חיטאווי"). פראס עיאנם מסר לנאשם כי אחמד ברגותי (המכונה "אל פראסטי"), שומר ראשו של מרוואנ ברגותי - ראש "התנזים" של ארגון הפתיח, שהוא התאחדות בלתי מותרת, מבקש להכניס לירושלים מחבל, אשר יבצע בירושלים פיגוע התאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן. הנאשם הסכים להשתתף בהצעת המחבל המתאבד הנ"ל לירושלים.

2. ביום 22.01.02, פראס עיאנם התקשר אל הנאשם והודיע לו כי אחמד ברגותי שלח שוחח עמו והודיע כי המחבל המתאבד לצורך ביצוע הפיגוע המתוכנן מוכן וצריך להכניס אותו לירושלים. הנאשם שוב הביע את הסכמתו להשתתף בפועל של הפיגוע המתוכנן.

3. מאוחר יותר, באותו היום, הנאשם ופראס עיאנם נפגשו ברמאללה. פראס עיאנם הגיע לפגישה ברכב אישוו נודד עם לוחיות רישוי ישראליות.

4. הנאשם ופראס עיאנם נסעו ברכב האישוו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאינ בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

5. הנאשם ופראס עיאנם נסעו מרמאללה דרך ראפאת והגיעו לאיזור התעשייה עטרות, שם השניים חזרו לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה רמה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם הנאשם וחברו פנו ימינה ונסעו עד לצומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הנאשם וחברו, הגיעו לצומת הנגבה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. הנאשם ופראס עיאנם ראו כי בדרך שבה נסעו ניתן להגיע אל המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

6. בהגיעם לרמאללה, הנאשם ופראס עיאנם נסעו למלון "סיטי איני", הנמצא בסמוך לצומת איי"ש. באיזור המלון "סיטי איני", הנאשם ופראס עיאנם נפגשו עם אחמד ברגותי הנ"ל, אשר הכיר לנאשם ולפראס עיאנם את סעיד רמדאן, תושב כפר תל באיזור שכם, אשר היה חמוש ברוס"ר M-16 ושתי מחסניות לרוס"ר M-16 המחוברות בצלכם.

7. אחמד ברגותי מסר לנאשם ולפראס עיאנם כי סעיד רמדאן הנ"ל הוא המחבל המתאבד, אשר אותו הם צריכים להביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשיירה לעבר אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

8. הנאשם ופראס עיאנם הסתירו את רוס"ר M-16 והמחסניות הנ"ל ברכב האישוו הנ"ל.

9. פראס עיאנם נהג ברכב האישוו, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ואילו הנאשם התיישב במושב האחורי.

10. הנאשם ופראס עיאנם הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתואר לעיל.

11. בירושלים, הנאשם ופראס עיאנם נסעו לרחוב שיחי ג'ראח. שם הם הוציאו את רוס"ר M-16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד רמדאן. הנאשם עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי, כשהוא מחזיק בידיו את רוס"ר M-16 ואת המחסניות.

12. הנאשם ופראס עיאנם הסיעו את סעיד רמדאן לרחוב יפו הנביאים.

13. במהלך הנסיעה, סעיד רמדאן התלונן בפני הנאשם ופראס עיאנם כי קנו לו נעליים חדשות עבור הפיגוע, אך הן קטנות ולוחצות לו. הנאשם הוריד את נעלי רמדאן "ריבוק" ומסר אותם לסעיד רמדאן באומרו "תעלה לגן עדן עם נעלי "ריבוק"".

14. בהגיעם לצומת הרחובות שטראוס והנביאים, הנאשם ופראס עיאנם עצרו את רכב האישוו.

15. הנאשם ופראס עיאנם אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שירצה בו הרבה אנשים.

16. לאחר שסעיד רמדאן ירד מהרכב עם רוס"ר M-16 והתחמושת, הנאשם ופראס עיאנם נסעו מהמקום ברכב האישוו, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה.

17. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של הנאשם ופראס עיאנם, הגיע לרחוב יפו.



נאמן למקור

ת.ת. 241/02 מתוקנ

18. בסביבות השעה 20:16, כשהוא עומד מול בית מס׳ 47 ברחוב יפו או בסמוך לכך, סעיד רמדאן
טען את רובי״ר M-16 שבו החזיק, צעד "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר,
לעבר האנשים שהיו ברחוב יפו, בחזית האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו
27 שהיה באותה עת בתחנה הנ״ל וכן לעבר האנשים שהיו בתוך החניות הסמוכות במטרה
לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך לירות, נמלט
מהמקום לעבר החניון הנמצא ברחוב הרב קוק. שם סעיד רמדאן החליף מחסנית והמשיך
לירות האזרחים במטרה לגרום למותם. סעיד רמדאן ירה ברובי״ר M-16, שבו החזיק,
מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים
והשוטרים שהגיעו למקום.

19. במעשיו המתוארים לעיל, הנאשם הנ״ל גרם בכוונה למותה של **אורה (סבטלנה) סנדלר ז״ל**,
אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

### <u>פרט תשיעי:</u>  (פ.א. 502/02 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס׳ 378), תש״ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט
האישום הקודם, גרם בכוונה למותה של **שרה המבורגר ז״ל**, אשר נפטרה כתוצאה מפגיעות
הקליעים שנורו על-ידי סעיד רמדאן, אשר הובא למקום הנ״ל לצורך ביצוע הפיגוע האמור על-ידי
הנאשם ופראס צאדק מחמד עיאנם (המכונה "אל חיטאווי").

### <u>פרט עשירי:</u>  (פ.א. 502/02 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס׳ 378), תש״ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמיני, במעשיו המתוארים בפרט
האישום השמיני, ניסה לגרום בכוונה למותם של אזרחים רבים ככל הניתן אשר היו באותה עת
ברחוב יפו ובקרבתו. כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן, אשר הובא למקום הנ״ל
לצורך ביצוע הפיגוע האמור על-ידי הנאשם ופראס צאדק מחמד עיאנם (המכונה "אל חיטאווי"),
נפצעו מעל 45 אזרחים.

### <u>פרט אחד-עשר:</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס׳ 378), תש״ל-1970, וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בסוף חודש ינואר – תחילת חודש פברואר 2002 או בסמוך
לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. במועד האמור, התקשר אל הנאשם פראס צאדק מחמד עיאנם (המכונה "אל חיטאווי").
פראס עיאנם מסר לנאשם כי אחמד ברגותי (המכונה "אל פראנסי"), שומר ראשו של מרואן
ברגותי - ראש "התנזים" של ארגון הפת"ח, שהוא התאחדות בלתי מותרת, מבקש להכניס
לירושלים מחבל נוסף, אשר יבצע בירושלים פיגוע התאבדות, דוגמת הפיגוע המתואר בפרט
האישום השמיני, במטרה לגרום למותם של אזרחים רבים ככל הניתן. הנאשם הסכים
להשתתף בתכנון המחבל המתאבד הנ״ל לירושלים.

2. הנאשם ופראס עיאנם סיכמו כי יסיעו את המחבל המתאבד לירושלים ברכב סוברארו, אשר
אותו יבקש מאחמד ברגותי.

ת.ח. 241/02 מחוזי

3. באותו היום, הנאשם ופראס עיאנם נסעו לרמאללה ושם נפגשו עם אחמד ברגותי. הנאשם ופראס עיאנם ביקש מאחמד לקבל רכב לצורך הסעת המחבל המתאבד לירושלים. אחמד ברגותי מסר לידי הנאשם רכב סובארו אפור, השייך למשפחתו של אחמד ברגותי. הנאשם חזר עם רכב הסובארו לביתו בכפר נבאללה, ואילו פראס עיאנם נסע עם רכב איסוזו טנדר שלו לביתו בכפר עקב.

4. יום למחרת, פראס ברגותי התקשר אל הנאשם ואל פראס עיאנם והורה להם להגיע לתחנת הדלק הנמצאת ברמאללה תחתיה ולאסוף משם את המחבל המתאבד ולהסיע אותו לירושלים על מנת שיבצע שם את פיגוע ההתאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן. הנאשם הסכים.

5. הנאשם נסע ברכב הסובארו עד למחסום קלנדיה, שם הוא החנה את הרכב ועלה לרכב האיסוזו של פראס עיאנם שהגיע למקום. משם המשיכו השניים למקום המפגש האמור.

6. ברמאללה, בתחנת הדלק הנ"ל, הנאשם ופראס עיאנם נפגשו עם אחמד ברגותי, אשר הציג בפניהם את המחבל המתאבד שחיה עמו. אחמד ברגותי מסר לידי המחבל המתאבד רוס"ר M-16 ושלוש מחסניות מלאות בכדורים לרוס"ר M-16.

7. הנאשם ופראס עיאנם הסתירו את רוס"ר M-16 והמחסניות בתוך רכב האיסוזו.

8. הנאשם ופראס עיאנם נסעו ביחד עם המחבל המתאבד לירושלים במטרה שהאחרון יבצע שם פיגוע ירי ויגרום למותם של אזרחים רבים ככל הניתן.

9. הנאשם, פראס עיאנם והמחבל המתאבד הגיעו למחסום קלנדיה ועקפו אותו. לאחר מכן הנאשם עבר לרכב הסובארו, שהשאיר במקום קודם לכן ונסע לצומת א-ראם. הנאשם עבר ברכב הסובארו את מחסום א-ראם והמתין במקום לפראס עיאנם והמחבל המתאבד שעקפו את מחסום א-ראם ברגל. לאחר מכן, פראס עיאנם חזר, עלה לרכב האיסוזו, שבו היה מוסתר הנשק, ועבר את מחסום א-ראם כשהוא נוסע לבד ברכב האיסוזו עם הנשק.

10. הנאשם הסיע את המחבל המתאבד עד למסגד בשועפאט. לשם הגיע גם פראס עיאנם ברכב האיסוזו עם הנשק והתחמושת.

11. שם, המחבל המתאבד ביקש להיכנס למסגד ולהתפלל לפני שיבצע את פיגוע ההתאבדות. הנאשם ופראס עיאנם הסכימו לבקשת המחבל המתאבד.

12. בזמן שהמחבל המתאבד התפלל במסגד האמור, הנאשם ופראס עיאנם נסעו ברכב הסובארו לגבעת שאול שבירושלים במטרה לבדוק אם יש בדרך מחסומי צה"ל או משטרה. הנאשם ופראס עיאנם תכננו להסיע את המחבל המתאבד לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן וזאת מכיוון שיש במקום האמור אזרחים רבים.

13. כאשר הנאשם ופראס עיאנם חזרו למסגד בשועפאט על מנת לאסוף משם את המחבל המתאבד ולהסיע אותו לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן, השניים לא מצאו את המחבל המתאבד במסגד.

14. הנאשם ופראס עיאנם התקשרו אל אחמד ברגותי ודיווחו לו כי המחבל המתאבד ברח להם. אחמד ברגותי הורה לנאשם ולפראס עיאנם לחזור לרמאללה.

15. הנאשם ופראס עיאנם חזרו לרמאללה, נפגשו שם עם אחמד ברגותי ומסרו לידי האחרון את רכב הסובארו, את רוס"ר M-16 ואת המחסניות.





ת.פ. 241/02 מתוקן

P 6: 71



<div dir="rtl">

עדי התביעה:

1. רס"מ יעקב ברזני, מ.א. 99106, לחי"ק יהודה. [גובה אמרת הנאשם מיום 11.03.02 ומגיש כתב-ידו של הנאשם בערבית + דו"ח תפיסה וסימון]
2. רס"ר רצחק יעקבזון, מ.א. 1008358, לחי"ק יהודה. [גובה אמרת הנאשם מיום 01.04.02 ומגיש כתב-ידו של הנאשם בערבית]
3. מחגד ע/רחמאן סאלם מצלח, ת.ז. 902845643. (עצור) (ת.ת. 242/01)
4. חוטאם עקל רביב שחאדה, ת.ז. 975564733. (עצור) (ת.ת. 243/02)
5. הייתם אלמוותפק חמדאן. (עצור)

מ.א. 7915/01 ציון

6. רס"ר ציון ששון, מ.א. 957068, תחנת ציון. [מגיש דו"ח פעולה]
7. רפ"ק ליאור נדיבי, מ.א. 952127, מז"פ - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה + לוחות צילומים]
8. רפ"ק יורם סער, תחנת ציון. [מוצא תרמילים בזירת האירוע - שרשרת ראיות]
9. רפ"ק עמי לייפר, מ.א. 959841, המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח בדיקת רכב - תפיסת שרידי קליע]
10. צערת אדוה אדזה מלכה, מ.א. 1049089, מתי"מ - תחנת ציון. [מגישה טופס לוואי למוצגים]
11. רס"ר זיות חוטר, מ.א. 512699, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגישה תעי"צ - קבלת מוצגים לבדיקה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)
12. רפ"ק אבי קופמן, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ 07/01 - 4539/01] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
13. ד"ר אייל יצחיאק, מר. 31004, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של משה וייס] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
14. ד"ר יעקב גלוברמן, ביה"ח הדסה עין-כרם, ירושלים. [מגיש הודעה פטירה של מאיר וייסבזיו ז"ל] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
15. משה וייס, ת.ז. 024001505. [פרטים בתביעה) (נפגע קשה בפיגוע]
16. יפה וקנין, ת.ז. 058857863. [פרטים בתביעה) (עדות ראיה]

מ.א. 481/01 ציון

17. טוני עמיאל, ת.ז. 032441040. [פרטים בתביעה) (נהגת רכב ההונדה]
18. פיני מימון, ת.ז. 025759762. [פרטים בתביעה) (נוסע רכב ההונדה]
19. פזית מימון, ת.ז. 040128084. [פרטים בתביעה) (נוסעת רכב ההונדה]

מ.א. 8379/01 ציון

20. רפ"ק ליאור נדיבי, מ.א. 952127, מז"פ - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה + דו"ח תפיסה וסימון]
21. רס"ר גבריאל עבד, מ.א. 958736, מתי"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
22. רפ"ק עמי לייפר, מ.א. 959841, המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח בדיקת רכב - תפיסת שרידי קליע]
23. צוער דרור אברם, מ.א. 1039080, מתי"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
24. ציון שדה, ת.ז. 029505724, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגיש תעי"צ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
25. רס"ב יוסי בן ישראל, מ.א. 44771, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגיש תעי"צ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
26. רפ"ק אבי קופמן, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש שתי חוו"ד מומחה מתיק מז"פ 2ב/07 - 4723/01] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
27. סיגל שאוו, תחנת ציון. [מוצאת תרמילים בשטח - שרשרת ראיות]
28. מלכה כהן, ת.ז. 038791386. [פרטים בתביעה) (נפגעת בפיגוע]
29. פנחס כהן, ת.ז. 038348256. [פרטים בתביעה) (נפגע בפיגוע]
30. אוהב עמי יחיאל, ת.ז. 059214320. [פרטים בתביעה) (עד ראיה - טיפל בפצועים]
31. ד"ר יאיר עדן, מ.ר. 33272, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של פנחס כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
32. ד"ר מנחם גרוס, מ.ר. 30416, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של מלכה כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד]

מ.א. 39/02 בנימין

33. מפקח מיכאל מלכה, מ.א. 1040320, סיור - תחנת בנימין. [מגיש דו"ח פעולה]

</div>

9

נאמן למקור

34. רס"מ קובי סבג, מ.א. 56494, תחנת בנימין. [מגיש זכ"ד תחקור/תפיסה וסימון]
35. רס"ב אלי קוג'מן, מ.א. 46951, מז"פ יהודה. [מגיש לוחות תצלומים + אסף תרמילים בזירת הארוע]
36. רפ"ק עמי לייפר, מ.א. 959841, המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש לוחות תצלומים + דו"ח בדיקת רכב]
37. רס"ר מאיר וענונו, מ.א. 1018332, תחנת בנימין. [מגיש טופס לוואי למוצגים]
38. רס"ב זיוה חוטר, מ.א. 512699, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגישה תעו"צ - קבלת מוצגים לבדיקה] (תוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
39. סגן ד"ר ניר אילון, מ.ר. 33216, צה"ל. [פרטים בתביעה] [עדות - קביעת מותה של יואלה חן ז"ל + טיפול בפצ'ועה]
40. ד"ר שאול בייט, מ.ר. 33027, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת רופא - סיכום מחלה של רשל (רחל) עיני] (יוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
41. רשל (רחל) עיני, ת.ז. 075966614. [פרטים בתביעה] [נפצעה בפיגוע]
42. סמי ועקנין, ת.ז. 027798040. [פרטים בתביעה] [עדות + סקיצה] [עד ראיה]
43. נחשון בראשי, ת.ז. 05033235. [פרטים בתביעה] [זיהוי החרוגה]

## פ.א. 502/02 ציון

44. פקד דרור אסרף, מ.א. 942276, מת"מ - תחנת ציון. [מגיש דו"ח זכ"ד, תפיסה וסימון]
45. רס"ב יגאל דניאל, מת"מ - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
46. צוער צביקה רייזור, מת"מ - תחנת ציון. [מגיש דו"ח זכ"ד, תפיסה וסימון + תצלומים]
47. רס"ל ציון טובדי, מ.א. 1043413, מת"מ - תחנת ציון. [מגיש דו"ח פעולה - מציאת צולבת]
48. רס"ב אשר לוי, מ.א. 47720, תשאול - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
49. בני עזריאל, ת.ז. 303647598. [עד ראיה - רדף אחרי המחבל]
50. עמאד ענודת, מ.א. 739037, מג'"ב ירושלים. [עד ראיה - רדף אחרי המחבל וירה לעבר המחבל]
51. שי כהן, מ.א. 1042043, יח"ס 2 - תחנת ציון. [עד ראיה - ירה לעבר המחבל]
52. נועם גבאי, ת.ז. 033121070, ימ"ר ירושלים. [עד ראיה - רדף אחרי המחבל וירה לעבר המחבל]
53. חן בנעים, מ.א. 1049188, יס"מ אופמעים - תחנת שלם. [עד ראיה - רדף אחרי המחבל, הרחיץ את נשקו של המחבל לאחר שהמחבל נהרג]
54. גנאדי (ניא) מלניק, ת.ז. 309130540. [פרטים בתביעה] [עד ראיה - מאבטח שהיה במקום - ירה לעבר המחבל ופגע בו]
55. אלון חלמון, מ.א. 761775, בילוש - ימ"ר ירושלים. [עד ראיה - רדף אחרי המחבל, ירה לעבר המחבל]
56. אבי בן-עמי, מ.א. 996140, בילוש - ימ"ר ירושלים. [עד ראיה - ירה לעבר המחבל]
57. חיים צאלח, ת.ז. 033401019. [פרטים בתביעה] [עד ראיה - נהג אוטובוס "אגד" שהיה במקום הפיגוע]
58. בוריס אבטיטסיאן, ת.ז. 309086171. [פרטים בתביעה] [עד ראיה]
59. יקותיאל-ישראל עלוש, ת.ז. 310101647. [פרטים בתביעה] [עד ראיה]
60. משה ממן, ת.ז. 06246911. [פרטים בתביעה] [עד ראיה]
61. טובה יצחקי , ת.ז. 051270353. [פרטים בתביעה] [עד ראיה]
62. מזל יצחקי, ת.ז. 04330150. [פרטים בתביעה] [עדת ראיה]
63. ירון אברהמוב, ת.ז. 640712770. [פרטים בתביעה] [עד ראיה]
64. פנחס בנטורה, ת.ז. 055611230. [פרטים בתביעה] [עד ראיה]
65. כפיר קדם, ת.ז. 039381249. [פרטים בתביעה] [עד ראיה - ראה את המחבל מגיע למקום הפיגוע ברגל]
66. יעקב סנדלר, ת.ז. 307750984. [פרטים בתביעה] [זיהוי גופתו של אורה (סבטלנה) סנדלר ז"ל]
67. ד"ר דפנה וילנר, מ.ר. 29234, ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של אורה (סבטלנה) סנדלר ז"ל] (תוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
68. ד"ר ילנה וסלוב, ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעה הודעת פטירה של שרה המבורגר ז"ל] (תוזמן לפי דרישה מפורשת של הסניגוריה בלבד)

רשימת עדים נוספת בנוגע לפצועים בפיגוע ברחוב יפו ביום 22.01.02 ותעודות רפואיות הקשורות לפציעתם תימסר במהלך המשפט

סרן<br>צבאי

מיכאל קוסביק,<br>תובע

תאריך : 12.01.2003<br>סימוכין : 241-02 מתוקן

ת.ת. 241/02 מתוקן

10