# EXHIBIT A.447



PLAINTIFF'S EXHIBIT 447

Serious Crimes File (Tel Aviv) 1158/02     State of Israel v. Marwan bin Khatib Barghouti

**Israel Courts**

**District Court Tel Aviv-Jaffa**     Serious Crimes File 1158/02

**Before the Bench:**
The Honorable Judge Sarah Sirota, Deputy President – Presiding
The Honorable Judge Avraham Tal
The Honorable Judge Dr. Amiram Binyamini

**State of Israel**
The Department for Criminal, Security and Special Matters
in the State Attorney's Office
Represented by Advocates D. Chen, R. Hazan, A. Bar-Natan

Prosecutor

- v. -

**Marwan bin Khatib Barghouti**
Born 1959, Identity No. 959251745
from Ramallah (Under arrest since April 15, 2002)
Represented by the Public Defender's Office

Defendant

**Sentence**

1. The Defendant has been convicted, following the hearing of evidence, of carrying out the following crimes:

    a. **Premeditated murder, pursuant to Section 300(a)(2) of the Penal Law, 5737-1977 (in three instances in which five people were murdered);**

    b. **Attempted murder, pursuant to Section 305(1) of the Penal Law, 5737-1977;**

    c. **Activity in a terrorist organization, pursuant to Section 2 of the Prevention of Terrorism Ordinance, 5708-1948;**

[Stamp] P 7: 189

d. **Membership in a terrorist organization, pursuant to Section 3 of the Prevention of Terrorism Ordinance, 5708-1948.**

e. In addition, the offense of **conspiracy to commit a crime, pursuant to Section 499 of the Penal Law, 5737-1977,** has been proven, to the extent that this relates to the four terrorist attacks of which the Defendant has been convicted, and it is subsumed under the principal offense of premeditated murder and attempted murder.

1
Nevo Publishing Ltd.  nevo.co.il  The Israeli Legal Database
C:\Documents and Settings\Mendel\Desktop\Barghouti Sentencing.doc

[Stamp] P 7: 189 [continued]

Serious Crimes File (Tel Aviv) 1158/02      State of Israel v. Marwan bin Khatib Barghouti

2. Details of the facts relating to the crimes of which the Defendant has been convicted appear at length in the verdict. In summary, and to the extent that this is required for sentencing, the following facts should be emphasized:

    a. The Defendant was commander of the terrorist organizations that operated in the West Bank as part of the Fatah, namely: the Tanzim and the al-Aqsa Martyrs Brigades. He led terror cells that sprang from within these organizations to carry out murder and suicide terrorist attacks in Israel and within the borders of Judea and Samaria. The Defendant set out the policies of these organizations, expressed their positions through the media, and ensured that they were supplied with combat materiel and funds required for carrying out the terrorist attacks. For this activity the Defendant was convicted of the crimes of membership and activity in a terrorist organization.

    b. The Defendant's declared position was that terrorist attacks should be carried out against soldiers and settlers, including women and children, in the West Bank. He indeed expressed verbal opposition to carrying out suicide terrorist attacks within Israel, but continued to assist members of the terror cells and support them, even after becoming aware that they were carrying out terrorist attacks of this type.

    c. The Defendant had a great deal of influence over the commanders of the cells and the perpetrators of the terrorist attacks, if only by virtue of the fact that he provided them with funds and combat materiel. From time to time, he would instruct them to end the terrorist attacks against Israel, but subsequently he would turn around and instruct them to renew them – all this being at the behest of the [Palestinian] Authority chairman Yassir Arafat.

    d. It was indeed not proven that the Defendant knew in advance about each and every terrorist attack, or that he was personally involved in the planning and execution of each and every terrorist attack that was perpetrated by members of the Fatah. At the same time, the terrorist attacks referred to in the indictment – including those that the Defendant was not convicted of carrying out – were executed or planned by the Defendant's close associates, who subjected themselves to his authority and were supported by him. These [latter] would deliberately not involve the Defendant

[Stamp] P 7: 190

personally in execution of the terrorist attacks, and this policy suited the needs of the Defendant, who sought – and still seeks – to present himself as a political leader, rather than as a military leader of a terrorist organization.

e. Notwithstanding the format of activities set forth above, the Defendant deviated from his normal custom in four terrorist attacks, which was set forth in the indictment, in which he was personally involved. The Defendant instructed his people to carry out the revenge terrorist attack in which the late Yoela Chen was murdered at the gas station in Givat Ze'ev; he also instructed one of his people to carry out a shooting terrorist attack in which the Greek [Orthodox] monk, the late Germanos Zivokatsakis, was murdered in Maaleh Adumim.

In addition, the Defendant gave his authorization to carry out the terrorist attack at the Seafood Market in Tel Aviv, in which three people were murdered, although his instruction was to carry out the terrorist attack in the West Bank and not within Israel.

2

Nevo Publishing Ltd.  nevo.co.il  The Israeli Legal Database
C:\Documents and Settings\Mendel\Desktop\Barghouti Sentencing.doc

[Stamp] P 7: 190 [continued]

Similarly, the Defendant authorized his people to carry out a suicide terrorist attack by means of a car bomb; here, too, the instruction was to carry out the terrorist attack in the West Bank, but the car blew up alongside the Malha Mall in Jerusalem, when the terrorists in it were driving it to the intended detonation site.

For these four terrorist attacks, the Defendant was convicted of the premeditated murder of 5 people, and the crime of attempted murder.

3. In the verdict. we stated that it was indeed not possible, under Israeli law, to convict the Defendant of carrying out the series of terrorist attacks referred to in the indictment – with the exception of the four terrorist attacks that have been set forth above – however, the Defendant headed the terror apparatus that led to these terrorist attacks being carried out. He provided the planners and perpetrators of the terrorist attacks with general assistance in the form of the provision of funds and combat materiel; he encouraged and motivated his people to continue to carry out murderous terrorist attacks; and he supported, in every way possible, the heads of the terror cells who planned or executed the terrorist attacks. These acts – as stated in the verdict – are indeed not sufficient to convict the Defendant as an accomplice, accessory or instigator of the implementation of each of the terrorist attacks referred to in the indictment, but we emphasized that the Defendant bears heavy moral responsibility for the deaths of numerous people, as a result of the terrorist attacks carried out by members of the terror cells that accepted his authority and were supported by him.

In these circumstances, with the only crime which the Defendant may be convicted of in connection with terrorist attacks in which he was not personally involved being that of activity in the leadership of a terrorist organization, pursuant to Section 2 of the Prevention of Terrorism Ordinance, it is justifiable to impose on the Defendant the maximum penalty that may be imposed on a perpetrator of this crime, namely, 20 years imprisonment.

4. The Defendant, as stated above, has been convicted of the murder of 5 people, during the course of three different terrorist attacks. The doctrine recently confirmed by the Supreme Court in this regard, is that one who carries out a single physical act, in which a number of people are murdered, should be convicted of the number of counts of murder equal to the number of victims murdered. In addition, a person who carried out such an act should be sentenced to consecutive terms of life imprisonment in a number corresponding to the victims he murdered, unless there exist special circumstances that justify the imposition of concurrent terms of life imprisonment (*see* Criminal Appeal 9804/02 **Shimon Sher v. State of Israel** (unpublished)).

[Stamp] P 7: 191

Counsel for the prosecution indeed asked that we impose on the Defendant five consecutive terms of life imprisonment, this being in addition to the maximum penalty that can be imposed for the crimes of activity in a terrorist organization and attempted murder, of which the Defendant was also convicted.

5. The penalty set by law for the crime of premeditated murder is life imprisonment, and only that penalty. We did not find special circumstances that justify our abstaining from imposing consecutive terms of life imprisonment for the murder of each of the victims of whose murder the Defendant has been convicted.

It is proper that the Defendant be punished for each and every individual murdered at his instructions. The Defendant's liability, as leader of the terrorist organizations, cannot be lighter than that of the perpetrators of the terrorist attacks themselves, who have been sentenced to a number of terms of life imprisonment

[Stamp] P 7: 191 [continued]

3
Nevo Publishing Ltd.  nevo.co.il  The Israeli Legal Database
C:\Documents and Settings\Mendel\Desktop\Barghouti Sentencing.doc

4
Nevo Publishing Ltd.  nevo.co.il  The Israeli Legal Database
C:\Documents and Settings\Mendel\Desktop\Barghouti Sentencing.doc

[Stamp] P 7: 192 [Continued]

Serious Crimes File (Tel Aviv) 1158/02   State of Israel v. Marwan bin Khatib Barghouti

to be served consecutively; on the contrary – the Defendant's liability is much heavier, because of his status and authority as a leader. The imposition of a life sentence for each victim who has been murdered is necessary, because of our belief in the sanctity of human life, and so as to give appropriate expression to the depth of the horror at the acts of one person who murdered many others (*See also*: Criminal Appeals 399/89 **State of Israel v. Zalum**, PD 46(2) 187, at 190-192, and Criminal Appeals 1742/91 **Popper v. State of Israel**, PD 41(5) 289, at 303, 307).

6. During the arguments for sentencing, the Defendant repeated what he said in his oral summation, when he repeatedly emphasized his striving for peace. It would appear that, from the Defendant's point of view, the road to peace takes the bloody path of terror. The Defendant sought to present himself as a "political figure," and even declared that he is against the killing of innocent people. These declarations stand in contrast to the Defendant's actions, as demonstrated to us.

   According to the Defendant's own admission in his interrogation, and also in light of a great deal of other evidence, the Defendant was involved up to his neck in terror activity, which he insisted on whitewashing by referring to it as "military activity." Not only was the Defendant personally and substantively involved in three murderous terrorist attacks and in a further attempted murderous attack, all carried out within the Green Line against innocent civilians: the Defendant also led the terrorist organization from within the Fatah to carry out innumerable terrorist attacks against Israeli citizens. It seems that even the Defendant himself feels uncomfortable – in light of the evidence presented – in claiming that he opposes the killing of civilians, and he made do with saying, **"I am in principle against the murder of civilians on both sides."** But actions speak louder than words.

7. Given the background of the facts that have been proven, it is easy to understand why the Defendant chose to hide behind the baseless claim of this Court not having the authority to try him. The Defendant well understood that there is no defense for the vile acts that he carried out, and that his claim as to the necessity of resistance to the occupation also cannot constitute justification for the indiscriminate murder of innocent civilians. The attempt by

[Stamp] P 7: 192

the Defendant, and by witnesses who subject themselves to his authority, to thwart the trial through their silence also derives from that same understanding. The Defendant's "line of
defense," as seen from what he said in his interrogation, was to conduct a political trial, since it was clear to the Defendant that on the criminal level he had nothing to say in his defense.

8. To summarize all of the above, we sentence the Defendant to the following:

   a. Five terms of life imprisonment, to be served consecutively, for the murder of five people (terrorist attacks numbers 3, 7 and 12 in the appendix to the indictment);

   b. 20 years of imprisonment for attempted murder (terrorist attack number 36 in the appendix to the indictment);

   c. 20 years of imprisonment for membership and activity in a terrorist organization;

   d. All of the above punishments are to be served consecutively from the date of the Defendant's arrest, April 15, 2004.

9. Right of appeal to the Supreme Court within 45 days from today.

**Handed down and notified on this day, 17 Sivan 5764 (June 6, 2004), in the presence of Counsel for the prosecution, the Public Defender and the Defendant.**

4

[Stamp] P 7: 192 [Continued]

Serious Crimes File (Tel Aviv) 1158/02        State of Israel v. Marwan bin Khatib Barghouti

| **Sarah Sirota, Deputy President** | **Avraham Tal, Judge** | **Dr. Amiram Binyamini, Judge** |
|---|---|---|
| **Presiding Judge** | | |

The wording of this document is subject changes in wording and editing.

5

Nevo Publishing Ltd.   nevo.co.il   The Israeli Legal Database
C:\Documents and Settings\Mendel\Desktop\Barghouti Sentencing.doc

[Stamp] P 7: 193

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

                Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 7: 189-193.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated bearing the bates number P 7: 189-193.

Dated: March 6, 2014

_____
Rina Ne'eman

ss.: New Jersey

On the _6_ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
_6_ day of March, 2014

_Leonor Troyano_
Notary Public

**LEONOR TROYANO**
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 2/18/2014

2. פירוט העובדות הנוגעות לעבירות בהן הורשע הנאשם מופיע בהרחבה בהכרעת הדין. בתמציתו של דבר, וככל שהדבר נדרש לגזר הדין, יש להדגיש את העובדות הבאות:

א. הנאשם היה מפקדם של ארגוני הטרור שפעלו בגדה המערבית במסגרת הפת"ח, קרי: התנזים וגדודי חללי אלאקצא. הוא הנהיג חוליות טרור שקמו מקרב ארגונים אלו לביצוע פיגועי רצח והתאבדות בישראל ובתחומי יהודה ושומרון. הנאשם התווה את מדיניותם של ארגונים אלה, ביטא את עמדתם באמצעי התקשורת ודאג לספק להם אמצעי לחימה וכספים שנדרשו לשם ביצוע הפיגועים. בגין פעילותו זו הורשע הנאשם בעבירות של חברות ופעילות בארגון טרור.

ב. עמדתו המוצהרת של הנאשם היתה כי יש לבצע פיגועים כנגד חיילים ומתנחלים, כולל נשים וילדים, בגדה המערבית. הוא אמנם הביע התנגדות מילולית לביצוע פיגועי התאבדות ופיגועים בתוך ישראל, אך המשיך לסייע לאנשי חוליות הטרור ולתמוך בהם גם לאחר שנוכח כי הם מבצעים פיגועים מסוג זה.

ג. לנאשם היתה מידה רבה של השפעה על מפקדי החוליות ומבצעי הפיגועים, ולו מכוח העובדה שהוא סיפק להם כספים ואמצעי לחימה. מדי פעם הוא היה מורה להם להפסיק את הפיגועים כנגד ישראל, אך לאחר מכן היה שב ומורה להם לחדשם – הכל על פי הנחיות יו"ר הרשות יאסר ערפאת.

ד. אמנם לא הוכח כי הנאשם ידע מראש על כל פיגוע ופיגוע, או כי היה מעורב באופן אישי בתכנונו ובביצועו של כל פיגוע ופיגוע שבוצעו על-ידי אנשי הפת"ח. עם זאת, הפיגועים נשוא כתב האישום – גם אלה שהנאשם לא הורשע בביצועם – הוצאו לפועל או תוכננו על ידי מקורביו של הנאשם, אשר סרו למרותו ונתמכו על ידו. אלה נהגו במתכוון שלא לערב את הנאשם אישית בביצוע הפיגועים, ומדיניות זו התאימה לצורכי הנאשם, שביקש – ועדיין מבקש – להציג עצמו כמנהיג פוליטי, ולא כמנהיג צבאי של ארגון טרור.

ה. חרף מתכונת הפעילות המפורטת לעיל, חרג הנאשם ממנהגו בארבעה פיגועים שפורטו בכתב האישום, ואשר בהם היה מעורב אישית. הנאשם הורה לאנשיו לבצע את פיגוע הנקם שבמהלכו נרצחה יואלה חן ז"ל בתחנת הדלק בגבעת זאב, וכן הורה לאחד מאנשיו לבצע פיגוע ירי שבמהלכו נרצח הנזיר היוני ציפוקטקיס גרמנוס ז"ל במעלה אדומים.

בנוסף נתן הנאשם את אישורו לביצוע הפיגוע במסעדת "סי פוד מרקט" בתל אביב, בו נרצחו שלושה בני אדם, אם כי הנחייתו היתה לבצע את הפיגוע בגדה המערבית ולא בתוך ישראל.

תפ"ח (ת"א) 1158/02      מדינת ישראל נ' מרואן בן חטיב ברגותי

כמו כן, אישר הנאשם לאנשיו לבצע פיגוע התאבדות באמצעות פיצוץ מכונית תופת; גם כאן ההנחיה היתה לבצע את הפיגוע בגדה המערבית, אך המכונית התפוצצה ליד קניון מלחה בירושלים, בעת שהמחבלים שהיו בתוכה הסיעו אותה למקום הפיצוץ המיועד. בגין ארבעה פיגועים אלו, הורשע הנאשם ברצח תחילה של 5 בני אדם, ובעבירה של ניסיון לרצח.

3. בהכרעת הדין קבענו כי אמנם לא ניתן על פי הדין הישראלי להרשיע את הנאשם בביצוע שורת הפיגועים נשוא כתב האישום – למעט ארבעת הפיגועים שפורטו לעיל – ואולם הנאשם עמד בראש מנגנון הטרור שהביא לביצוע פיגועים אלה. הוא הגיש למתכנני הפיגועים ומבצעיהם סיוע כללי שהתבטא באספקת כספים ואמצעי לחימה; הוא עודד והמריץ את אנשיו להמשיך ולבצע פיגועי רצח; והוא תמך בכל דרך אפשרית בראשי חוליות הטרור שתכננו או הוציאו לפועל את הפיגועים. מעשים אלו – כפי שנקבע בהכרעת הדין – אין די בהם אמנם כדי להרשיע את הנאשם כמבצע בצוותא, כמסייע או כמשדל לביצוע כל אחד ואחד מהפיגועים נשוא כתב האישום, אך הדגשנו כי הנאשם נושא באחריות מוסרית כבדה למותם של אנשים רבים, כתוצאה מן הפיגועים שבוצעו בידי אנשי חוליות הטרור שסרו למרותו ונתמכו על ידו.

בנסיבות אלו, כאשר העבירה היחידה בה ניתן להרשיע את הנאשם בנוגע לפיגועים בהם לא היה מעורב אישית היא פעילות בהנהגה של ארגון טרור לפי סעיף 2 לפקודת מניעת טרור, מוצדק להשית על הנאשם את העונש המירבי שניתן להטיל על מבצע במסגרת עבירה זו, קרי, 20 שנות מאסר.

4. הנאשם, כאמור לעיל, הורשע ברצח של 5 בני אדם, במהלכם של שלושה פיגועים שונים. ההלכה שנתאשרה לאחרונה בבית המשפט העליון בעניין זה, היא שיש להרשיע אדם שביצע מעשה פיזי אחד, בו נרצחו כמה בני אדם, במספר עבירות רצח, כמספר הקורבנות שרצח. בנוסף, יש לגזור על אדם שביצע מעשה פיזי שכזה, מאסרי עולם מצטברים כמניין הקורבנות שרצח, אלא אם כן קיימות נסיבות מיוחדות המצדיקות להטיל מאסרי עולם החופפים זה את זה (ראה: ע"פ 9804/02 <u>שמעון שר נ' מדינת ישראל</u> (טרם פורסם)).

ב"כ התביעה אכן ביקשה להטיל על הנאשם חמישה מאסרי עולם מצטברים, וזאת בנוסף לעונש המירבי שניתן להטיל בגין העבירות של פעילות בארגון טרור וניסיון רצח, שאף בהן הורשע הנאשם.

5. העונש הקבוע בחוק לעבירה של רצח בכוונה תחילה הוא מאסר עולם, ועונש זה בלבד. לא מצאנו נסיבות מיוחדות המצדיקות להימנע מהטלת עונשי מאסר עולם מצטברים בגין רצח של כל אחד מן הקורבנות שהנאשם הורשע ברציחתם.

מן הדין שהנאשם ייענש בגין כל נפש ונפש שנרצחה בהוראתו. אחריותו של הנאשם, כמנהיג ארגוני הטרור, איננה יכולה להיות קלה מזו של מבצעי הפיגועים עצמם, אשר נדונו למספר מאסרי עולם

3

תפ"ח (ת"א) 1158/02                                          מדינת ישראל נ' מרואן בן חטיב ברגותי

מצטברים; נהפוך הוא – אחריותו של הנאשם כבדה יותר, בשל מעמדו וסמכותו כמנהיג. הטלת מאסר עולם בגין כל קורבן שנרצח מתחייבת מן האמונה בקדושת חיי האדם, ועל מנת לתת ביטוי נאות לעומק הזוועה שבמעשהו של אדם אשר רצח רבים (ראה גם: ע"פ 399/89 **מדינת ישראל נ' זלום**, פד"י מו(2) 187, בעמ' 190-192, וע"פ 1742/91 **פופר נ' מדינת ישראל**, פד"י נא(5) 289, בעמ' 303, 307).

6. במעמד הטיעונים לעונש, חזר הנאשם על דברים שאמר בסיכומיו בעל פה, כשהוא חוזר ומדגיש את חתירתו לשלום. נראה כי מבחינת הנאשם הדרך לשלום עוברת בנתיב הדמים של הטרור. הנאשם ביקש להציג עצמו כ"דמות פוליטית", ואף הצהיר כי הוא נגד הרג חפים מפשע. הצהרות אלו עומדות בניגוד למעשיו של הנאשם, כפי שהוכחו בפנינו.

גם על פי הודאת הנאשם עצמו בחקירותיו, וגם לאור ראיות רבות אחרות – היה הנאשם מעורב עד צוואר בפעילות טרור, שהוא התעקש לכנותה במלים המכובסות "פעילות צבאית". לא זו בלבד שהנאשם היה מעורב באופן אישי וממשי בשלושה פיגועי רצח ובניסיון לפיגוע רצח נוסף, שבוצעו כולם בתחומי הקו הירוק כנגד אזרחים חפים מפשע: הנאשם אף הנהיג את ארגוני הטרור מקרב הפת"ח לביצוע אין ספור פיגועים כנגד אזרחי ישראל. דומה כי אפילו הנאשם עצמו חש לא נוח – לנוכח הראיות שהוצגו – לטעון כי הוא מתנגד להרג אזרחים, והוא הסתפק בכך שאמר: "אני עקרונית נגד רצח אזרחים משני הצדדים". עיקרון לחוד - ומעשים לחוד.

7. על רקע העובדות שהוכחו, נקל להבין מדוע בחר הנאשם להסתתר מאחורי הטענה המופרכת של חוסר סמכות בית משפט זה לדון אותו. הנאשם הבין היטב שאין כל הגנה כנגד המעשים הנפשעים שביצע, וכי גם טענתו בדבר הצורך בהתנגדות לכיבוש איננה יכולה להוות הצדקה לרצח אזרחים חפים מפשע ללא כל אבחנה. ניסיונו של הנאשם, ושל העדים הסרים למרותו, לסכל את המשפט באמצעות שתיקתם, נבעה אף היא מאותה הבנה. "קו ההגנה" של הנאשם, כפי שעולה מדברים שאמר בחקירתו, היה ניהול משפט פוליטי, שכן היה ברור לנאשם שבמישור הפלילי אין לו מה לומר להגנתו.

8. לסיכום כל האמור לעיל, אנו גוזרים על הנאשם את העונשים הבאים:

א. חמישה מאסרי עולם שירוצו במצטבר זה לזה בגין רציחתם של חמישה אנשים (פיגועים מספר 3, 7 ו- 12 בנספח לכתב האישום);

ב. 20 שנות מאסר בגין ניסיון רצח (פיגוע מס' 36 בנספח לכתב האישום);

ג. 20 שנות מאסר בגין חברות ופעילות בארגון טרור;

ד. כל העונשים דלעיל ירוצו במצטבר זה לזה מיום מעצרו של הנאשם 15.4.02.

9. זכות ערעור לבית המשפט העליון בתוך 45 יום מהיום.

ניתן והודע היום י"ז בסיון תשס"ד (6 ביוני, 2004), בנוכחות ב"כ התביעה, הסניגוריה הציבורית והנאשם.

תפח (ת"א) 1158/02　　　　　　　　　　　　　　　　מדינת ישראל נ' מרואן בן חטיב ברגותי

| ד"ר עמירם בנימיני, שופט | אברהם טל, שופט | שרה סירוטה, ס"נ |
|---|---|---|
| | | אב"ד |

נוסח מסמך זה כפוף לשינויי ניסוח ועריכה