# EXHIBIT A.451
## (8 of 11)

ss.:  New Jersey

On the _6_ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
_6_ day of March, 2014

_Leonor Troyano_
Notary Public

**LEONOR TROYANO**
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 8/8/2014

1

בתי המשפט

| | תפ"ח 1158/02 | בבית המשפט המחוזי בתל-אביב-יפו |
|---|---|---|

<u>בפני הרכב:</u>

כב' השופטת שרה סירוטה, ס.נ.- אב"ד
כב' השופט אברהם טל
כב' השופט ד"ר עמירם בנימיני

מדינת ישראל         <u>המאשימה</u>
המחלקה לעניינים פליליים, בטחוניים
ועניינים מיוחדים בפרקליטות המדינה
ע"י ב"כ עוה"ד ד. חן, ר. חזן, א. בר-
נתן

**- נ ג ד -**

מרואן בן חטיב ברגותי        <u>הנאשם</u>
יליד 1959, ת.ז. 959251745
מרמאללה (במעצר מיום 15.4.02)
ע"י הסניגוריה הציבורית

# <u>הכרעת – דין</u>

P 7: 000371

# תוכן – עניינים

חלק ראשון: מבוא ........................................................................ עמ' 2

חלק שני: מסכת הראיות ............................................................... עמ' 6

א.  הפת"ח התנגנים וגדודי אלאקצא כאירגוני טרור ........................... עמ' 6

ב.  מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים
    כנגד ישראל .......................................................................... עמ' 8

ג.  עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם
    מעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו .... עמ' 16

    (1) נאצר עויס ................................................................... עמ' 16
    (2) נאצר נאג'י אבו חמיד ...................................................... עמ' 20
    (3) אחמד ברגותי ............................................................... עמ' 22
    (4) מוחמד מצלח (אבו סטחה) ................................................ עמ' 27
    (5) ג'מאל אחויל ................................................................ עמ' 27
    (6) נאצר א-שויש ................................................................ עמ' 28
    (7) עלי עיאדיה ................................................................. עמ' 30
    (8) איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ועד ............... עמ' 30
    (9) נאסר (חלום) נאג'י אבו חמיד ............................................ עמ' 34
    (10) זיאד חמודה ................................................................ עמ' 34
    (11) ריאד עמור ................................................................. עמ' 35
    (12) נאצר חאג' ................................................................. עמ' 35
    (13) תחריר ברגותי ............................................................ עמ' 36
    (14) אחמד מוצפר ............................................................. עמ' 37
    (15) שריף נאג'י ................................................................ עמ' 37
    (16) אמיד אבו רדאחה ......................................................... עמ' 38
    (17) אשרף ג'יאבר .............................................................. עמ' 39

ד.  דברי הנאשם בחקירתו וראיות נוספות בדבר תפקידו ומעורבותו בפיגועים
    נגד ישראל .......................................................................... עמ' 40
    (1)  אחריותו של הנאשם לפעילות חוליות הטרור ומידת
         שליטתו בהן ............................................................... עמ' 40
    (2)  מעורבותו האישית של הנאשם בפיגועי הטרור שבוצעו
         חוליות שתחת פיקודו .................................................... עמ' 44
         (אא) הפיגוע בתחנת הדלק בגבעת זאב ............................. עמ' 47
         (בב) רצח הנזיר היווני במעלה אדומים ............................. עמ' 48
         (גג) הפיגוע במסעדת "סי פוד מרקט" בתל-אביב ................. עמ' 48
         (דד) ניסיון לפיגוע ליד קניון מלחה בירושלים .................... עמ' 49
    (3)  אספקת כספים ואמל"ח לשם ביצוע פיגועי טרור ................... עמ' 49
    (4)  סיוע למבוקשים ולמשפחות העצורים והחללים ...................... עמ' 51
    (5)  גיוס פעילים לארגוני הטרור והדרכתם .............................. עמ' 52
    (6)  קריאותיו הפומביות של הנאשם לבצע פיגועים כנגד ישראל ...... עמ' 53

ה. <u>הקשר של הנאשם לפיגועים נשוא כתב האישום</u> עמי 56

(1) רצח טליה ובנימין כהנא ז"ל ליד עפרה .......................... עמי 56

(2) רצח עקיבא פסקוס ז"ל באזור התעשיה בעטרות .................... עמי 57

(3) רצח הנזיר היווני ציפוקטיקיס גרמנוס ז"ל במעלה אדומים ........ עמי 59

(4) רצח יניב ושרון בן שלום ז"ל והדרון יוסף סוורי ז"ל בכביש 443 ..עמי 59

(5) רצח מאיר וייזבוייז ז"ל בכביש מסי 9 בירושלים ................ עמי 61

(6) רצח אליהו כהן ז"ל בפיגוע ירי בכביש 443 ליד גבעת זאב........... עמי 62

(7) רצח יואלה חן ז"ל ליד תחנת דלק גבעונים בכביש 443.............. עמי 63

(8) רצח 6 אנשים באולם השמחות "ארמון דוד" בחדרה ................. עמי 64

(9) רצח שתי נשים בפיגוע ירי ברחוב יפו פינת לונץ בירושלים ........ עמי 66

(10) פיגוע ירי בשכונת נוה-יעקב בירושלים בו נהרגה השוטרת גלית
ארביב ז"ל........................................................ עמי 66

(11) רצח גד רגואן ז"ל במפעל בשקביץ בעטרות .................... עמי 69

(12) הפיגוע במסעדת "סי פוד מרקט" בתל אביב...................... עמי 70

(13) פיגוע ירי במלון "גירמי" בנתניה ............................... עמי 72

(14) רצח קונסטנטין דנילוב ז"ל בבאקה אלעירביה .................. עמי 73

(15) פיגוע ירי בין עטרת לביר-זית.................................... עמי 74

(16) ניסיון פיגוע בפאב "ביאנקיני" בירושלים ...................... עמי 75

(17) פיגוע ירי בכביש 9 ליד הגבעה הצרפתית בירושלים ............. עמי 77

(18) ניסיון לפיגוע התאבדות בבית חינוא בירושלים ................. עמי 78

(19) פיגוע ירי בכביש בית אל- פסגות.............................. עמי 78

(20) ניסיון פיגוע בקניון מלחה בירושלים .......................... עמי 79

חלק שלישי : הערכת הראיות ומשקלן    עמי 81

חלק רביעי : ניתוח משפטי ומסקנות    עמי 92

1. <u>פעילות וחברות בארגון טרוריסטי</u>    עמי 92

2. <u>אחריותם של מבצע בצוותא, משדל ומסייע והאבחנה ביניהם</u>    עמי 94

א. מבצע בצוותא לעומת מסייע.................................... עמי 96

ב. עבירת הסיוע............................................... עמי 104

ג. עבירת השידול והאבחנה בין מבצע בצוותא למשדל.................. עמי 112

ד. אחריותו של מנהיג חבורה עבריינית כמבצע בצוותא או כמשדל... עמי 117

3. <u>מסקנות בעניין אחריותו של הנאשם כמבצע בצוותא, משדל ומסייע</u>    עמי 123

א. פיגוע הרצח בתחנת הדלק בגבעת זאב............................ עמי 135

ב. רצח הנזיר היווני ציפוקטיקיס גרמנוס ז"ל במעלה אדומים........ עמי 136

ג. פיגוע הרצח במסעדת "סי פוד מרקט" בתל אביב................... עמי 138

ד. ניסיון פיגוע ליד קניון מלחה בירושלים....................... עמי 139

חלק חמישי : סיכום    עמי 139

## <u>הכרעת – דין</u>

חלק ראשון :    <u>מבוא</u>

1. בתאריך 14.8.2002 הוגש נגד הנאשם כתב-אישום, המייחס לו מספר עבירות של **רצח בכוונה תחילה** לפי סעיף 300(א)(2) לחוק העונשין, התשל"ז-1977 (**להלן: "חוק העונשין"**); **סיוע לרצח** לפי סעיף 300(א)(2) ביחד עם סעיף 31 לחוק העונשין; **שידול לרצח** לפי סעיף 300(א)(2) יחד עם סעיף 30 לחוק העונשין; **ניסיון לרצח** לפי סעיף 305(1) לחוק העונשין; **קשירת קשר לביצוע פשע** לפי סעיף 499 לחוק העונשין; **פעילות וחברות באירגון טרור** לפי סעיפים 2 ו-3 לפקודת מניעת טרור, התש"ח-1948.

2. כתב-האישום מייחס לנאשם שותפות, אירגון וביצוע של פעולות-טרור כגד מטרות ישראליות, אשר החלו בספטמבר 2000 במסגרת אירועים המכונים "אינתיפאדת אלאקצא" (להלן: **"האינתיפאדה"**). על-פי הנטען בכתב-האישום, עמד הנאשם בראש אירגוני-טרור באיזור יהודה ושומרון (איו"ש): אירגון הי"פתח"חי" (להלן: **"הפת"ח"**), אירגון הי"תנזים" השייך לפתח"ח (להלן: **"התנזים"**) ואירגון "גדודי חללי אלאקצא", הכולל התארגנויות של פעילי טרור של התנזים שביצעו פעולות טרור כנגד מטרות ישראליות (להלן: **"גדודי חללי אלאקצא"**). הנאשם היה זה שתיאם וקישר בין גורמי השטח הבכירים בשלושת האירגונים הנ"ל (כולם יחד יכונו להלן: **"אירגוני הטרור"**), אשר היו אחראים לביצועם של פעולות-טרור נגד מטרות ישראליות.

כתב האישום מפרט את שמותיהם של שמונה פעילי טרור בכירים, שפעלו תחת הנהגתו של הנאשם בביצוע פעולות הטרור, והם נאסר עויש (להלן: **"עויש"**), אחמד ברגותי, נאצר אבו חמיד (להלן: **"אבו חמיד"**), ראא"ד כרמי (להלן: **"כרמי"**), מהנד דירייה (אבו חלאונה) (להלן: **"מהנד"**), מחמד מצלח (אבו סטחה) (להלן: **"אבו סטחה"**), מנצור שרים (להלן: **"שרים"**) ומחמוד טיטי (להלן: **"טיטי"**).

הנאשם ומפקדי השטח גייסו פעילים לאירגוני הטרור, הפעילו אותם ודאגו לספּק להם אמצעי לחימה (אמל"ח) וכסף. הנאשם עסק גם בהכשרת פעילי הטרור למטרתם ובגיוס כספים לאירגוני הטרור. כמו כן שידל הנאשם ועודד את פעילי הטרור לבצע פיגועים כנגד מדינת ישראל באמצעי התקשורת, בכינוסים שונים ובאמצעות הפצת כרוזי הסתה.

כתב-האישום מייחס לנאשם **בסעיפים 8-15** מעורבות ואחריות לביצוע 37 פיגועים ופעולות-טרור, אשר בוצעו ברובם בתחומי מדינת-ישראל על-ידי מפקדי השטח והפעילים בחודשים דצמבר 2000 ועד אפריל 2002, ושבהם קופחו חייהם של רבים מאזרחי מדינת-ישראל וחיילייה, ונפצעו רבים אחרים. חלק ממעשי הטרור מפורטים בכתב האישום, ורובם מפורטים רק בנספח לכתב האישום.

3. **ראיות התביעה כוללות** את עדויותיהם של אנשי מערכת הביטחון, חוקרי השב"כ ואנשי המשטרה שעסקו בחקירת הנאשם; עדויותיהם של אזרחים וגורמים אחרים שהיו עדים לפיגועים נשוא כתב האישום; מסמכים שנתפסו על ידי צה"ל במשרדי הפת"ח ובמשרדי הנאשם; חוות דעת של מומחים ממערכת הביטחון בעניני פעילות ארגוני הטרור ומעמדו ותפקידו של הנאשם בהם; עדויותיהם של פעילים בארגוני הטרור שמסרו והדברים שמסרו בחקירתם בשב"כ ובמשטרה; אמרות הנאשם שהועידו על ידי אנשי השב"כ בדו"חות כתובים, ואשר חלקם הוקלטו ותומללו; דברים שאמר הנאשם למדובבים שהוכנסו לתאו במהלך חקירתו ולמקורבו אחמד ברגותי שנעצר עמו; דברי הנאשם בכלי התקשורת לפני מעצרו, והודעות הנאשם במשטרה.

תמלילי חקירתו של הנאשם בשב"כ הוגשו על ידי חוקרי השב"כ שניהלו את החקירה שהוקלטה וזיהו את קולו של הנאשם בה ("מופז" בעמ' 58, "נדב" בעמ' 79, "סמיח" בעמ' 85-86 ו"דני" בעמ' 90). שיחתו של הנאשם עם אחמד ברגותי הוגשה על ידי החוקר "רוברט" (עמ' 65). הקלטות מחקירת הנאשם ומחקירת המדובבים פלוני 1 ופלוני 3 תומללו על ידי נתן בסו (עמ' 174).

חוקרי השב"כ שהעידו אישרו את נכונות הכתוב בזכ"דים שרשמו במהלך חקירתם של הנאשם (זכ"דים ת/6 - ת/96). מדובר בדו"חות שנרשמו בעברית לגבי חקירה שהתנהלה בעברית ובערבית

(הנאשם דובר עברית טובה), בהם נרשמו עיקרי הדברים שנאמרו על ידי הנאשם (ראה החוקר "סטיב" בעמ' 53, החוקר "אמילי" בעמ' 55 והחוקר "רוני" בעמ' 60).

4. אשר להודעות הנאשם במשטרה, הרי שהנאשם הודיע בכל חקירותיו במשטרה - בניגוד לדרך בה נהג בעת חקירותיו בשב"כ - כי הוא כופר בזכותה של המשטרה לחקור אותו, ולכן סירב לענות על שאלות החוקרים (ראה הודעה ת/99-ת/109). לפיכך, הודעותיו של הנאשם כוללות שאלות רבות שהובאו לו על ידי החוקרים, וסירוביו לשיב עליהן. במקרים בודדים ביותר התייחס הנאשם בקצרה לדברים שנאמר לו החוקר, ובהזדמנויות אלו הכחיש לחלוטין את כל הטענות שהובאו לו - גם אלה בהם הודה בחקירותיו בשב"כ. הנאשם הכחיש כי היה מנהיגם של גדודי חללי אלאקצא והתנגש (הודעה ת/101 עמ' 6, הודעה ת/105 עמ' 2, הודעה ת/106 עמ' 3); הכחיש כי הכיר את פעילי הטרור שהעידו כי היו בקשר עמו (כפי שיפורט להלן), ואפילו הכחיש כי הכיר את ראיד כרמי (ת/104 עמ' 8). כל אלו הוכחו, כפי שיבואר להלן, לא רק מפי פעילי השטח, אלא גם מפי הנאשם עצמו, מהמסמכים שנתפסו במשרדו, אשר הנאשם הכחיש בחקירתו כל קשר אליהם, וטען כי כתב ידו לא מופיע עליהם (ראה הודעה ת/108-ת/109).

הודעותיו של הנאשם הוגשו על ידי החוקרים דוד זריהן ורפי נוריאל (עמ' 38, 113), אשר הסבירו כי הנאשם סירב לחתום על האזהרה ועל ההודעה, וכי הוא נחקר בערבית. זריהן אף העיד כי הנאשם סירב למסור טביעת אצבע ולהטבעם. הנאשם אמר באופן כללי בהודעתו ת/106 כי כל ההאשמות כנגדו אינן נכונות, וכי הוא מפו מכל אשמה.

5. בפתח משפטו העלה הנאשם טענות מקדמיות הנוגעות לסמכות בית משפט זה לשפוט אותו, ואלה נדחו בהחלטת בית המשפט מיום 19.01.03 (עמ' 1-34 לפרוטוקול). הנאשם בחר שלא להסתייע בשירותיו של סניגור, ואף דחה נמרצות ובעקביות כל ניסיון של בית המשפט לשכנעו להיעזר בסניגוריה הציבורית או בסניגור מטעמו.

בית המשפט הטיל אמנם על הסניגוריה הציבורית לייצג את הנאשם, חרף בקשותיה החוזרות ונשנות להשתחרר מייצוגו, ולמעשה היא מייצגת את הנאשם גם כיום ונכחה בכל הדיונים. ואולם הסניגוריה הציבורית בחרה להיעתר לבקשת הנאשם שלא להעלות טענות כלשהן מטעמו במהלך המשפט, לרבות טענות משפטיות, ואף לא לחקור את העדים.

כך התנהל ההליך על פי בחירתו של הנאשם, אשר ממשיך לכפור בסמכות בית המשפט לשפוט אותו. בנסיבות אלו בחר הנאשם גם שלא להגיב על כתב האישום. כמו כן נמנע הנאשם מלהעיד בעצמו או להביא עדים מטעמו. עם זאת, הנאשם הגיב מידי פעם על דברי העדים או על טענות שטענה ב"כ המאשימה במהלך הדיון, ודבריו נרשמו בפרוטוקול כלשונם. בנוסף הגיב הנאשם על סיכומי התביעה בעל פה (שהוגשו גם בכתב), בנאום סניגוריה שנשא במסגרת הסיכומים בעל פה, ואשר לא התייחס לגופן של ההאשמות שהועלו כנגדו. למותר לציין כי הנאשם קיבל בעצמו, ובאמצעות הסניגוריה הציבורית, את כל חומר הראיות, הפרוטוקולים והסיכומים.

6. העבירות נשוא כתב האישום הן ברובן "עבירות פנים" הנוגעות לפיגועים שבוצעו בישראל, וחלקן "עבירות חוץ", שבוצעו בתחומי האיזור (קרי: יהודה ושומרון). ואולם, כפי שהבהרנו בהחלטה שניתנה בנוגע לטענותיו המקדמיות של הנאשם, מוסמך בית משפט בישראל לדון בעבירות חוץ כנגד בטחון המדינה, או נגד אזרח או תושב ישראלי, יהא מקום ביצוע העבירות אשר יהא (סעיף 13(א)-(ב) לחוק העונשין, תשל"ז-1977). זו היא אותה "תחולה פרוטקטיבית", אשר נועדה להגן על אזרחים ותושבים ישראלים כנגד פעולות טרור הנעשות בחסותן ובניבוין של מדינות אחרות (ש"ז פלר, מ' קרמניצר, **תרומה לחיבור בגנות התחולה הנצ) יונלית של דיני העונשין**, פלילים ה1 (1996) 65, בעמ' 83, והשווה דעתו של י. שחר, שם בעמ' 5). עוד פסקנו בהחלטה שניתנה בטענותיו המקדמיות של הנאשם, כי לא נראה שהתנאים הקבועים בסעיף 14(ב) לחוק העונשין רלבנטיים למקרה זה, אם הם חלים כלל על הסמכות הפרוטקטיבית שבסעיף 13 לחוק (להבדיל מהסמכות

הפרסונלית שבסעיף 14), שכן הרשות הפלסטינאית איננה מדינה. העבירות המיוחסות לנאשם
בכתב האישום הן עבירות כנגד בטחון המדינה, כנגד אזרחיה ותושביה, ועל כן הן נופלות במסגרת
סעיף 13 לחוק העונשין, ובית משפט זה מוסמך לדון בהן.

## חלק שני :  מסכת הראיות

### א.  הפת"ח, התנזים וגדודי חללי אלאקצא כאירגוני טרור

7.    ראש חטיבת המחקר באגף המודיעין של צה"ל, תא"ל י. קופרווסר, הגיש במהלך עדותו
(עמ' 38) חוות דעת בה התייחס לפעילותם של הפת"ח, התנזים וגדודי חללי אלאקצא (ת/1). אל
חוות הדעת צורפו מסמכי שלל שנתפסו על ידי צה"ל במבצע "חומת מגן" הנוגעים לעניין זה.
**הפת"ח** (ראשי תיבות במהופך בערבית של "התנועה לשחרור פלסטין") דגל מאז יסודו על ידי יאסר
ערפאת בשנת 1959 במאבק מזוין כנגד ישראל, אשר התבטא בביצוע פיגועי טרור נגד יעדים
ישראליים בארץ ובחו"ל. לאחר חתימת הסכמי אוסלו נדחק עיקרון "המאבק המזוין" למקום
משני, אך נותר כאופציה להשגת מטרות הארגון במקרה שהמו"מ עם ישראל לא יצלח. עם פרוץ
האינתיפאדה השנייה בחודש ספטמבר 2000, הוביל הפת"ח את פיגועי הטרור בשטחים, וזאת
באמצעות שתי ועדות עליונות המנהלות את הפעילות - האחת באזור יהודה ושומרון, והשנייה
באזור רצועת עזה. בראש הועדה העליונה של אזור יהודה ושומרון עמד הנאשם עד ליום מעצרו
(סעיפים 1-3 לחוו"ד).

הדרג המבצע של הפת"ח כלל את כל פעילי השטח של התנועה - **התנזים** (ארגון - בערבית). פעילי
התנזים מהווים את חוד חנית החנית בפעילות החבלנית של הפת"ח כנגד ישראל. גדודי חללי אלאקצא
הוא שם כיסוי להתארגנויות טרור של הפת"ח, אשר נוטלות אחריות פומבית למעשי הטרור. אנשי
"הגדודים" הם למעשה פעילים של הפת"ח, כאשר מרבית ההתארגנויות רואות בנאשם מקור
סמכות מרכזי לפעילותן (סעיפים 4-5 לחוו"ד).

התנזים וגדודי חללי אלאקצא מהווים, על פי חוות דעתו של תא"ל קופרווסר, את הזרוע הצבאית
הבלתי ממוסדת של הפת"ח, שבראשה עמד הנאשם. מסמך שלל המצורף כנספח א' לחוו"ד של
תא"ל קופרווסר הוא מכתב החתום בידי הפת"ח וגדודי חללי אלאקצא גם יחד.

מסמכי שלל אחרים שצורפו לחוות הדעת מראים כי גדודי חללי אלאקצא פונים בבקשה לסיוע
כספי מיאסר ערפאת (מסמך 2), וכי הפת"ח וגדודי חללי אלאקצא חתומים על כרוזים המשבחים
פעילות טרור שבוצעה בתחומי ישראל (מסמכים 3, 5). במסמך 6 שצורף לחוו"ד, ואשר נשלח ביום
8.5.01 מאת גדודי חללי אלאקצא אל הנאשם, מופיע פירוט פעילותם של גדודי חללי אלאקצא
במחוז ג'נין (כולל פיגועי באום אלפאחם), ובקשה לסיוע באמצעי לחימה וכסף לשם המשך ביצוע
של פעילות זו. ממסמכים אחרים של גדודי חללי אלאקצא שהופנו ליאסר ערפאת, כוללים בקשות
לסיוע למבוקשים הנרדפים על ידי ישראל ולמשפחות החללים (נספח ב' ומסמכים 4-2 לנספח זה).
חלק מן המסמכים נכתבו על ידי הנאשם. יצוין כי כינויו של הנאשם היה, על שם בנו הבכור, "**אבו
אלקסאם**" (הודעת הנאשם ת/107 עמ' 1, והדרך בה פנה אחיו אל הנאשם בעמ' 164).

8.    על פי חוות דעתו של תא"ל קופרווסר ביצעו אנשי הפת"ח למעלה מ- 1,200 פיגועים כנגד
ישראל (נכון ליום 18.8.02), בהם נהרגו 176 ישראלים ונפצעו רבים אחרים. פיגועים אלו כוללים
התאבדות, וירי ממרגמות ונשק קל. במהלך האינתיפאדה עברו התארגנויות הטרור של הפת"ח
יותר ויותר לביצוע פיגועי התאבדות בתחומי ישראל (סעיף 5 לחוו"ד). בחודשים שקדמו למבצע
"חומת מגן" ביצעו גדודי חללי אלאקצא פיגועי התאבדות בחדרה, תל אביב, מחולה,
מחנה 80, מחסום מכבים, נתניה, אשדוד, כפר סבא ואפרת, ובעקבות כך הוכנסו לרשימה
האמריקאית של ארגוני הטרור ביום 27.3.02 (סעיף 10 לחוו"ד ונספח ג' המפרט את פיגועי
ההתאבדות שבוצעו על ידי תנועת הפת"ח).

9. לגבי חוות הדעת של תא"ל קופרווסר יש לומר, כי מבחינת דיני הראיות איננו ראשאים
להסתמך על הערכות ומסקנות מודיעיניות אשר מבוססות על מקורות מידע שונים שלא הובאו בפני
בית המשפט, בהיותם עדות שמיעה. נוכל לסמוך על חוו"ד זו רק במידה שהיא תואמת ראיות
קבילות אחרות שהובאו בפנינו. אולם, פעילות הטרור בחסות הפת"ח של שלושת הארגונים הנ"ל
עולה בבירור מראיות ישירות רבות שהובאו במשפט, כולל הודאות שמסרו בחקירותיהם הנאשם
ופעילי הטרור, כפי שיפורט בהמשך הכרעת הדין.

נאצר אבו חמיד, שהיה אחד מפמקדי השטח הבכירים ביהודה ושומרון, סיפר בהודעתו במשטרה
(ת/149א), בעמ' 2-3, 8-7, 17-13), על הקמת גדודי חללי אלאקצא ביום 1.1.01, על מנת שיחו
מיליציה של הפת"ח, ויבצע פיגועים כנגד מתנחלים וחיילי צה"ל. הוא מפרט בהודעתו הנ"ל (וכן
בהודעתו ת/149 (נ)) את הפגיעים שבוצעו על ידו וע"י אנשיו כנגד מטרות אזרחיות וצבאיות של
ישראל, תחת הנהגתו ובסיועו של הנאשם (כפי שיפורט בהמשך).

10. גם מדברים שאמר הנאשם בחקירתו, וממסמכים שנכתבו בכתב ידו, ניתן ללמוד על
פעילותם של ארגוני הטרור הנ"ל. הנאשם הסביר את דרך פעולתו של החוליות המכונות "גדודי
חללי אלאקצא", שלדבריו ביצעו "פעילות צבאית" (ת/19 סעיף 14, שהוגש ואושר על ידי החוקר
"מופז" בעמ' 58). כך גם הסביר הנאשם בחקירתו את הדרך שבה נוצרו גדודי חללי אלאקצא באזור
יהודה ושומרון, ופעלו בצורה מפוזרת, וטען כי הפת"ח לא פיקח על פעילותם; אך הוא הודה כי
חוליות אלו פנו אליו לקבלת כסף, משום שראו בו "**אחראי של פת"ח בגדה המערבית**" (תמליל ת/
98 (ה) עמ' 60-61). כפי שיבוארר בהמשך, הפנו פעילי הטרור מגדודי חללי אלאקצא את בקשותיהם
לסיוע כספי לשם רכישת נשק וביצוע פיגועים אל הנאשם, והלה היה פונה בשמם ועבורם אל יו"ר
הרשות הפלסטינאית ומנהיג הפת"ח, יאסר ערפאת. מכאן ברור הקשר של גדודי חללי אלאקצא
לארגון הפת"ח, והקשר של הנאשם לגדודים אלו.

**ב.    מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים כנגד ישראל**

11. תא"ל קופרווסר הגיש בעדותו חוו"ד נוספת, המתייחסת למעורבותו של הנאשם בטרור (ת/
2). לחוו"ד זו צורפה שורה של נספחים הכוללים ראיונות עם הנאשם באמצעי התקשורת השונים
ומסמכים שכתב הנאשם או שנמצאו במשרדו. גם חוות דעת זו כפופה להערה שפורטה בסעיף 9
לעיל, בנוגע לקבילותם של הערכות מודיעיניות הנסמכות על מקורות מידע שלא פורטו ולא הובאו
בפנינו, ולכן גם בנוגע לזה נזקק לראיות עצמאיות וקבילות שהובאו במשפט.

12. בחוות הדעת של תא"ל קופרווסר ת/2 נאמר כי הנאשם היה עד למעצרו ראש הוועדה
העליונה של הפת"ח ביהודה ושומרון, ולפיכך שימש כמנהיג הפת"ח בגדה. זאת ניתן ללמוד מן
המסמכים השונים שכתב הנאשם ושנכתבו אליו, ואשר צורפו לחוות הדעת ת/1 ות/2. בתפקידו
הנ"ל היווה הנאשם מוקר סמכות מרכזי לבכירי הפת"ח, וציונר מקשר בין ראש הרשות
הפלסטינאית, יאסר ערפאת, לבין דרני השטח בתנועה (סעיפים 2-1).

עוד נאמר בחוות הדעת הנ"ל (סעיף 4), כי עם פרוץ האינתיפאדה בחודש ספטמבר 2000, תפס
הנאשם חלק מרכזי ביותר בהובלת הטרור נגד ישראל על ידי גורמי פת"ח בכלל. מעורבותו באה
לידי ביטוי בדרכים שונות: **ראשית**, הנאשם היווה מוקר השראה והתוונה את מדיניות הפיגועים,
באמצעות פגישות אישיות עם פעילי הטרור של תנועת הפת"ח והתבטאויות פומביות. **שנית**,
הנאשם היה מוקר סמכות ומימון לפעילי הטרור של תנועת הפת"ח: הוא נתפס בעיני גדודי חללי
אלאקצא כמנהיג המרכזי בפעילותם, שימש כציונר קשר בינם לבין יו"ר הרשות הפלסטינאית
והעביר לרשותם סכומי כסף המסתכמים בעשרות אלפי שקלים לצורך פעילות הטרור. **שלישית**,
הנאשם העביר הנחיות ישירות לפעילי הטרור - הן במישור האסטרטגי, והן במישור הטקטי הנוגע
לפיגועים נקודתיים.

**.13**    הנאשם לא הסתיר בחקירתו בשב"כ את עמדתו הברורה, לפיה תנועת הפת"ח חייבת
להוביל את "המאבק המזוין כנגד ישראל", וכי זו הדרך היחידה להשגת מטרות התנועה עם הפלסטיני
לאחר כשלון תהליך השלום, ולאחר שהנאשם עצמו היה פעיל שלום במשך שנים רבות (זכ"יד ת/59
סי 2-5, שהוגש ואושר על ידי החוקר "ואדיי" בעמי 96). הוא הבהיר  כי כאשר הוא משתמש בביטוי
"מאבק מזוין", הוא מתכוון לפיגועים (תמליל חקירה ת/98יא עמי 3-2). הנאשם הסביר כי מנהיגי
הפת"ח חששו מהיחלשות כוחם ברחוב הפלסטיני למול התנועות האיסלאמיות, דבר שדרבן אותם
לנקוט קו של פיגועים כנגד ישראל (זכ"ד ת/21 סעיף 5, שהוגש ואושר על ידי החוקר "רוברטי" בעמי
63 (בטענות נרשם בפרוטוקול

ת/41); זכ"ד ת/23 סי 5, שהוגש ואושר על ידי החוקר "דני" בעמי 90 ; זכ"ד ת/27 סי 12-10 וזכ"ד
ת/55 סי 3 שהוגשו ואושרו על ידי החוקר "סמית" בעמי 85 ; זכ"ד ת/30 סי 12-8 וזכ"ד ת/58 סי 5
שהוגשו ואושרו על ידי החוקר "אמילי" בעמי 54 ; זכ"ד ת/40 סי 15 שהוגש ואושר על ידי החוקר
"מופזי" בעמי 58 ; זכ"ד ת/70 סי 3 שהוגש ואושר על ידי החוקר "סטיבי" בעמי 53).
הנאשם אמר בחקירתו כי **"עמדתו המוצהרת הינה מזוין מול הכיבוש הישראלי, ומי שיש
לו נשק שיבצע פיגועים זה הקו הכללי"** (ת/23 סי 5, וכן ראה זכ"ד ת/6 סי 12-11, שהוגש ואושר
על ידי החוקר "רוברטי" בעמי 62). הוא הסביר כי לפי השקפתו פיגועים שיכאביבו לישראל יקדמו
את השלום, ויגרמו לישראלים להבין שיש שיש להם מה להפסיד (ת/40 סעיף 15, ות/70 סעיף 4).
הנאשם הבהיר כי מבחינתו אזרחים ישראליים החיים בהתנחלויות הם אויב שיש לפגוע בו (זכ"ד
ת/63 סי 16, שהוגש ואושר על ידי החוקר "נאור" בעמי 82). הוא אף אמר כי פיגועים כנגד מתנחלי
יהודה ושומרון הם לגיטימיים, גם כאשר מדובר בנשים וילדים (זכ"ד ת/6 סי 13, שהוגש ואושר ע"י
החוקר "רוברטי" בעמוד 62, זכ"ד ת/77 סי 2 שהוגש ואושר על ידי החוקרים "צדוקי ו"אופירי"
בעמי 83, 87).

הנאשם חזר והדגיש במהלך חקירתו כי בויכוח שהתנהל בתוך הרשות והפת"ח בעניין סוג הפיגועים
כנגד ישראל - דגל ערפאת והוא בקו הקובע כי יש להתמקד בפיגועים כנגד צה"ל והמתנחלים, בעוד
שמנהיגים כמו אבו עלא ואבו מאזן התנגדו לכל סוג של אלימות ; רק מעט מאנשי הפת"ח תמכו
בפיגועים בתוך ישראל (ת/27 סעיפים 13-12 ; ת/30 סעיף 8 ;
ת/70 סעיף 3). חרף התנגדותם של ערפאת והנאשם לפיגועים בתוך ישראל, הם איבדו שליטה על
החוליות ופעילי השטח במהלך האינתיפאדה (זכ"ד ת/55 סי 3וי, שהוגש ואושר על ידי החוקר
"סמית" בעמי 85).

**.14**    עמדתו של הנאשם כמפורט לעיל באה לידי ביטוי גם בדבריו בחקירה שתוממללו. לגבי
עמדתו של הנאשם כי אין לבצע פיגועי התאבדות בתוך ישראל, הוא הסביר כי פגיעה בהתנחלויות
כמוה כפגיעה בצבא, ולכן בעניין זה לא היה ויכוח בתוך הפת"ח; אך הוא הודה כי בתקופה
האחרונה שלפני מעצרו נטל הפת"ח לבצע גם פיגועי התאבדות בתוך ישראל, ואף אישר כי הפת"ח
נגרר לתוך פעילות זו כדי שלא להשאיר את השליטה בשטח לאירגונים האיסלאמים (ת/98ד עמי
27-29). הנאשם הסביר כי הוא באופן אישי הסתייג מכל פעילות בתוך ישראל, אך תמך "במאבק
המזוין כנגד הכיבוש הישראלי", ואף עשה זאת בצורה פומבית בטלוויזיה (ת/98ז עמי 7, 10).

הנאשם אישר כי בחמשת החודשים האחרונים שקדמו למעצרו נטל הפת"ח תפקיד מרכזי בהסלמת
רמת האלימות, והנהיג את המלחמה; הנאשם לא הכחיש כי כיחד כי הוא נטל חלק בכך     (ת/98יב עמי 35,
ת/98ה עמי 4-3).

הנאשם הדגיש בחקירתו כי הוא תמך בהסכם השלום, ופעל למענו במשך 10 שנים, אך ההסלמה
נבעה לדבריו מהעדר תקווה להשגת פתרון פוליטי עם ראש הממשלה שרון (ת/98יב עמי 44-45).
הנאשם אף הביע דעתו כי הפלשתינאים טעו כאשר דחו את הצעות ישראל, ועוד יותר מכך את
הצעת הנשיא קלינטון, בועידת "קמפ דיויד", שכן לו קיבלו את ההצעות הללו - היתה להם היום
מדינה עצמאית (זכ"ד ת/95, שהוגש ואושר על ידי החוקר "אופירי" בעמי 87).

**15.**    על גישתו של הנאשם בנושא הפיגועים, ועל תפקידו של הפת"ח בביצוע פיגועים כנגד ישראל, ניתן ללמוד גם משיחות שניהל הנאשם עם המזובבים שהוכנסו לתאו. המזובב שכונה "פלוני 1", הציג עצמו בפני הנאשם כפלשתינאי משכם, הוא מסר לחוקרי השב"כ את הדברים שאמר לו הנאשם לאחר קיום השיחות, ואלו נרשמו בזכ"דים של חוקרי השב"כ שהעידו במשפט (ירוברטי" בעמ' 154, "מיקי" בעמ' 155, "אופיר" בעמ' 156 ו"מופז" בעמ' 157), וכן העיד פלוני 1 עצמו (עמ' 101-107). פלוני 1 העיד כי הוא קרא את כל הדו"חות שרשמו אנשי השב"כ על שיחותיו עם הנאשם, ואישר את תוכנם (עמוד 105). בדרך דומה פעל והופעל המזובב פלוני 3, שזיהה את קולו של הנאשם בקלטת ת/124ב (ראה עדותו בעמ' 107-110, ומוצגים ת/122-ת/125).

על פי עדותו של פלוני 1, סיפר לו הנאשם שהוא היה זה שהקים את גדודי חללי אלאקצא והיה אחראי עליהם (עמ' 106). בזכ"ד שנרשם מפיו (ת/117 שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 154), אמר פלוני 1 כי הנאשם אמר לו שהאינתיפאדה למעשה היתה מתוכננת לאור המצב המדיני, הרחבת ההתנחלויות והמשך הכיבוש והלחץ על הפלסטינאים בשטחים, וכי ביקורו של אריאל שרון בהר הבית היה רק "הקש ששבר את גב הגמל", והצית את האינתיפאדה שהיתה צפויה ממילא (ראה גם זכ"ד ת/25 סי 18, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58).

לאחר האירוע בהר הבית, ביקשו מנגנוני הביטחון של הפת"ח מערon, להורות על הפסקת האינתיפאדה, וערפאת לא הגיב. הנאשם עצמו סיפר כי עוד בזעם את הישיבה לאור בקשת המנגנונים, וכי הוא שנוא עליהם משום ש"ימשך את העם להשלמת המצב". הנאשם אמר לפלוני 1 כי מטרת האינתיפאדה היתה פגיעה בחיילים ובמתנחלים כדי לגרום לעזיבתם, וכדי להוכיח לעולם שהפלסטינאים נלחמים בכיבוש. ואולם לאחר שישראל החלה במדיניות החיסולים, ובעיקר לאחר שפגעו בראיד כרמי, עבר הפת"ח לפעול בתוך ישראל במטרה לפגוע באזרחים, על מנת לפגוע בכלכלת ישראל ובתיירות, ולהפעיל לחץ על הרחוב בישראל שיולחץ על הממשלה לסגת מהשטחים (שם, סי 12-13, 17, 20-21). כמו כן אמר הנאשם לפלוני 1 כי מבחינתו הפיגועים מהווים הגנה עצמית של הפלסטינים, אשר מוכנים להושיט יד לשלום, וכי פיגועי ההתאבדות נובעים מן הכיבוש ומן המצב של הפלסטינאים בשטחים (זכ"ד ת/110 סי 22, 27).

עמדתו של הנאשם התומכת בהמשך האינתיפאדה באה לידי ביטוי גם במכתב ששלח ליאסר ערפאת ביום 31.12.00 (ת/5 (ט42אא)).

**16.**    באשר למדיניות הפיגועים של הפת"ח, הסביר הנאשם בחקירתו כי כאשר ערפאת היה מעוניין בהפסקת אש, הוא היה דואג להעביר הנחיה זו לגורמים רבים, ובהם הנאשם; אך כאשר היה מעוניין בהמשך הפעולות הוא דאג שהפעילים, כולל הנאשם, יבינו זאת מהתגובות, ובעיקר אי-התגובות שלו. הנאשם אמר : **"אם הוא (ערפאת) למשל, לא רוצה בהפסקת אש הוא מסתדר אחרת. לא אומר שום דבר"** (זכ"ד ת/24 סי 3ב, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85, ותמליל חקירתו של הנאשם ת/98ט עמ' 32-33). הנאשם אמר שערפאת מעולם לא הורה לו בצורה מפורשת לבצע פיגועים. אם הוא הוסיף כי מהעובדה שערפאת התנגד לביצוע פיגועים בתוך ישראל בלבד, ניתן היה להבין שהוא תומך בפיגועים בשטחים, ולכן גם לא הורה להפסיקם; ערפאת אמר בתקשורת כמה פעמים כי "מיליון שאהידים בדרכם לירושלים", והנאשם שאל באוזני רטורי האם אין זו הצהרה התומכת בביצוע פיגועים (זכ"ד ת/60 סי 4-7 שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54; זכ"ד ת/61 סי 1-8, שהוגש ואושר על ידי החוקר "מיקי" בעמ' 81; זכ"ד ת/62 סי 3-5 שהוגש ואושר על ידי החוקר "זדני" בעמ' 90).

הנאשם הסביר כי לא היה צורך בהוראות ישירות של ערפאת לביצוע פיגועים, שכן הדברים היו מובנים מבין השורות (זכ"ד ת/63 סי 11-13 שהוגש ואושר על ידי החוקר "נאורי" בעמ' 82). הנאשם הוסיף כי גם האינתיפאדה לא פרצה בהוראתו של ערפאת, אך היא לא היתה ממשיכה להתקיים אלמלא תמיכתו בה, אף כי הוא לא היה צריך לתת הנחיה מפורשת לביצוע פיגועים (זכ"ד ת/64 שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 62, ות/66 שהוגש ואושר על ידי החוקר "אמילי" בעמ'

54). עוד ציין הנאשם כי הבין את תמיכתו של ערפאת בפיגועים גם לאור העובדה שערפאת היה
מאשר לו את הבקשות הכספיות שהגיש עבור פעילי השטח של הפת"ח שביצעו פיגועים (זכ"ד ת/70
סי 17ח/, שהוגש ואושר על ידי החוקר "סטייב" בעמ/ 53). הנאשם תיאר את הקשר שלו עם ערפאת
כ"**אישי וישיר**" (תמליל שיחה ת/98ח עמ/ 55).

גם לנאשם, מסתבר, היתה דרך משלו להודיע לאנשי החוליות על הפסקת הפיגועים ועל חידושם.
הוא הסביר בחקירתו כי כאשר רצה בהפסקת אש היה מתקשר לחוליות הגדולות, אם כי קרה שהיו
אנשים שלא שמעו להוראתו; כאשר הנאשם היה מעוניין בחידוש האש הוא היה מודיע על כך
בטלויזיה, כאשר קרא "למאבק מזויין". כאשר נשאל כיצד היה מודיע על רצונו בחידוש האש,
השיב הנאשם:

**"לא רוצה אש, אני מדבר בטלויזיה אם אני רוצה שלום, יעני אני לא מתקשר לפלוני ואומר**
**לו ואללה תבצע בשבילנו פיגוע. ואללה תעשה לנו לא יודע מה, אין אצלי כזה דבר, אני**
**דובר בשם התנועה בפועל קורא לאינתיפאדה אני קורא למאבק מזויין"** (ת/98ח עמ/ 3).

חרף דברים אלו של הנאשם, הרי שמעדותו של פעיל הטרור עויס עולה כי הנאשם הורה לו לחדול
מביצוע פיגועים בעת ביקורו של השליח האמריקאי אנתוני זיני באזור (ראה להלן). מן הדברים
שאמר המדובב פלוני 1 בחקירתו, בעקבות שיחותיו עם הנאשם, עולה כי הנאשם הביע כעס רב על
כך שעויס מסר פרטים אלו בחקירתו (זכ"ד ת/113א סי 9-8, זכ"ד ת/114א סי 8 שהוגשו ואושרו על
ידי החוקר "רוברט" בעמ/ 154). כמו כן הובאו ראיות על מקורות אחרים בהם הורה הנאשם באופן
ישיר לפעילי הטרור המקורבים אליו לבצע פיגועים כנגד ישראלים (ראה להלן).

**17.**    בתחילת חקירתו בשב"כ הכחיש הנאשם כי היה מנהיג התנזים וגדודי חללי אלאקצא, אך
אישר את אחריותו לפעילות הצבאית של הפת"ח (זכ"ד ת/17 סי 6, שהוגש ואושר על ידי החוקר
"ארבל" בעמ/ 80, זכ"ד ת/43 סי 6 שהוגש ואושר על ידי החוקר "רוברט" בעמ/ 62, ותמליל חקירה
ת/98א/ עמ/ 43-44). הנאשם טען כי גדודי חללי אלאקצא אינם אלא חוליות מפוזרות בכל שטח
הגדה המערבית, ושאין להן מבנה מאורגן ומפקדת ומפקדה מרכזית (תמליל שיחה ת/98ה/ עמ/ 60-
61). עוד אמר הנאשם בחקירתו כי ערפאת היה, למעשה, מפקדו הישיר והממונה עליו, ואת עצמו
הגדיר כ"**אחראי לכל פעילות פת"ח בגדה מעצם היותו מזכ"ל הארגון בגדה**" (ת/24 סי 3ב, 5).

הנאשם אישר כי הוא היה מנהיג "השטח" של הפת"ח, בעוד שיאסר ערפאת עמד בראש הפת"ח
(תמליל שיחה ת/98א עמ/ 67). כך הסביר הנאשם בחקירתו גם את העובדה שאנשי החוליות פנו
אליו לקבלת כסף, משום שראו בו "**מפקד**", וכן "**אחראי של פת"ח בגדה המערבית**", בשל היותו
הדובר הפוליטי של התנועה, ומשום שנקט קו ועמדת התנגדות בהמשך המאבק בכיבוש (תמליל ת/
98ה עמ/ 4-3, 61, ת/98ד עמ/ 35-33). הנאשם הסביר כיצד הוא נראה בעיני אנשי החוליות,
באומרו: "**אני המפקד שלהם, הם חושבים אותי לסמל שלהם**", ואף אישר כי אין אדם אחר
שנחשב כמנהיג שלהם (ת/98ט עמ/ 7-6).

בדברים שהשמיע במהלך משפטו טען הנאשם לא פעם כי הוא היה "מנהיג פוליטי" בפת"ח,
בהדגישו את תפקידו כמזכ"ל הפת"ח בגדה, והיותו חבר הפרלמנט הפלסטינאי. כך גם טען בתחילת
חקירתו בשב"כ. גם בחקירתו במשטרה הכחיש הנאשם כי היה אחראי על התנזים או על גדודי
חללי אלאקצא, אולם במהלך חקירתו בשב"כ הודה הנאשם כי היה מפקד
הפת"ח בגדה ומפקד התנזים (זכ"ד ת/18 סי 3 שהוגש ואושר על ידי החוקר "נדב" בעמ/ 78), וכי
הקים את גדודי חללי אלאקצא והיה אחראי על פעילותם; מטעם זה  התנגדו לפעילותו מנגנוני
הביטחון של הרשות (דברי פלוני 1 בזכ"ד ת/117 סי 15, שהוגש על ידי החוקר "רוברט" בעמ/ 154).

הנאשם אמר למדובב "פלוני 3" בשיחתם, כי הוא אכן אחראי על הפת"ח ועל גדודי חללי אלאקצא, אך הוא "לא משוגע לחתום" את שמו על דף נייר בו הדברים ירשמו ; כאשר המדובב אמר לנאשם כי הוא בכל זאת אחראי למעשי המפגעים, השיב הנאשם כי הוא אמנם אחראי אך "הוא לא טיפש לומר זאת לחוקרים" (זכ"ד ת/123 עמ' 2, שהוגש על ידי החוקר "אופיר"). במפגש בין הנאשם לבין אחמד ברגותי בעת מעצרם, כאשר הוקלטו ללא ידיעתם, סיפר הנאשם לאחמד כי אמר בחקירתו שאין לו כל קשר לגדודי חללי אלאקצא. השניים צחקו, ואחמד יעץ לנאשם לומר כי רק לו - לאחמד - יש קשר עם הגדודים ; הנאשם השיב לו כי אמר בחקירתו שהיה מפטר את אחמד לו ידע שיש לו קשר עם הגדולים, ואחמד צחק למשמע הדברים (תמליל שיחה ת/127ג עמי 87).

הנאשם אישר בחקירתו כי לבד מהיותו מנהיג פוליטי, הוא גם שימש כאחראי על העניינים הצבאיים של הפת"ח (זכ"ד ת/59 סי 6 שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). הנאשם הגדיר עצמו כ"**אחראי על כל הפעילות של התנזים בפת"ח באזור שלו**" (תמליל ת/98ד עמ' 42). הוא אף הודה כי היה "**אחראי לכל הנעשה כגון אספקת כספים לחוליות, רכישות נשק וביצוע פיגועים**" (זכ"ד ת/29 סי 1ג שהוגש ואושר על ידי החוקר "סמית" בעמ' 85), וכי הוא נחשב כ"**מפקד צבאי**", וכ"**אחראי על העניינים הצבאיים של הפת"ח**", בנוסף להיותו מנהיג פוליטי ונבחר ציבור (זכ"ד ת/19 סי 2 וזכ"ד ת/59 סי 5- 6, שהוגשו ואושרו על ידי החוקר "מופז" בעמי 58).

הנאשם אמר כי בשנה שקדמה למעצרו "**החל מוצא עצמו יותר ויותר עוסק בענייני אמל"ח וענייני פעילות צבאית**" (זכ"ד ת/25 סי 19, שהוגש ואושר על ידי החוקר "מופז" בעמי 58, וכן ראה תמליל שיחה ת/98ד עמ' 15). הוא הסביר כי היה חייב ליטול חלק "בפעילות הצבאית" על מנת לשלוט ברחוב הפלסטיני ולדחוק את רגלי החמא"ס והג'יהאד האיסלאמי, ועל מנת שיוכל להצביע על עצמו בעתיד כעל מי שפעל הן למען השלום והן במלחמה (זכ"ד ת/52, שהוגש ואושר על ידי החוקר "סמית" בעמי 85).

ג.    **עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם ומעורבותו**
      **בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו**

18.    התביעה איננה טוענת כי הנאשם יזם או נטל חלק ישיר בביצוע הפיגועים נשוא כתב
האישום, שכן היא ערה לכך שמחומר הראיות עולה כי מפקדי השטח ולפעילי השטח הוקנו
סמכויות רחבות ומרחב תמרון רב בביצוע הפיגועים, והם לא נדרשו לקבל אישור מהנאשם לכל
פיגוע. התביעה גם מסכימה כי הנאשם לא ידע מראש על כל פיגוע ופיגוע: הוא היה מודע באופן
כללי לפעילותם של מפקדי השטח ופעילי הטרור הכפופים לו, אשר פעלו בהתאם למדיניות
הפיגועים שהוא היה שותף לעיצובה; לעיתים עודכן לפני הפיגוע, ולעיתים עודכן בדיעבד (עמ' 47
לסיכומי התביעה).

כפי שעולה מהראיות שתפורטנה להלן, היה הנאשם מנהיגם של חוליות הטרור מקרב התנזים
וגדודי חללי אלאקצא. לפחות חלק מחברי חוליות אלו סרו למרותו, ופעלו על פי המדיניות
שהתווה. בנוסף על כך, עולה בבירור מן הראיות שהנאשם סייע למפקדי החוליות ופעילי הטרור
באספקת אמצעי לחימה ומימון כספי. במסכב מקרים אישר הנאשם מראש ביצוע פיגועים כנגד
ישראל. יש, אפוא, לבחון בפרק זה מי היו פעילי הטרור שפעלו תחת הנהגתו של הנאשם, ומה היו
קשריו של הנאשם עם פעילים אלו. בפרק הבא  יבחנו הפיגועים שבהם היו מעורבים פעילי טרור
אלו, ומידת הקשר של הנאשם אליהם.

(1)    **נאצר עויס**

19.    נאצר עויס (להלן : "**עויס**") היה אחד מפעילי הטרור הבכירים של התנזים באזור שכם. בגין
פעילותו זו הוא נדון בבית משפט זה ל - 14 מאסרי עולם ועוד 50 שנות מאסר בפועל במצטבר (ת/
172א-ב). בעדותו (עמ' 180-182) סרב עויס להשיב על שאלות, ולאחר שהוכרז כעד עוין הוגשו
הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/172 –
ת/177). הדבר היחיד שהיה מוכן עויס לומר בעדותו הוא כי כל מה שנרשם בהודעותיו הם שקרים
של השב"כ, וגם כתב היד המופיע בהודעותיו הוא של אנשי השב"כ. הוא טען כי עבר אמצעי חקירה
מאוד קשים.

ההודעות שמסר עויס במשטרה נכתבו בכתב ידו ותורגמו לעבריית על ידי החוקר שגבה את ההודעות
ואישר את גבייתן, ואף העיד כי ההודעות נגבו מרצונו החופשי של עויס (רס"מ רוני עמאר בעמ'
191-192). כמו כן, הוגשו דוחות שרשמו חוקרי השב"כ על דברי עויס בחקירתו (ת/178א-ד).
דברים אלו אושרו על ידי חוקרי השב"כ, שהעידו כי הדברים נאמרו על ידי עויס מרצונו החופשי,
אם כי מדובר במסמך שאיננו משקף אלא את תמצית החקירה, ולא את הדברים כפי שנאמרו מילה
במילה ("אריאל" בעמ' 203, "עדי" בעמ' 204, "יואל" בעמ' 204-205). זכ"ד ת/178ג' נרשם בידי
החוקר "צדוק", שלא התייחס אליו בעדותו (עמ' 83-84), ולא חזר להעיד לאחר עדותו של עויס,
ולכן יש להתעלם ממנו.

20.    עויס סיפר בהודעתו ת/172ב (עמ' 1-2), שנכתבה בכתב ידו, כי לאחר פרוץ "אינתיפאדת
אלאקצא" בחודש ספטמבר 2000, הוא החל לבצע פיגועים כנגד מטרות ישראליות, ובאותה עת
עבד במנגנון הביטחון הלאומי הפלסטינאי בשכם בדרגה של סרן (נק"ף). הוא ביצע פיגועי ירי
ופיגועים נוספים נגד מטרות ישראליות באזור יהודה ושומרון ובתוך ישראל, ופרט בהודעותיו ת/
172-ת/174 פיגועים אלו, שכללו ירי לעבר עמדות צבאיות ורכבים צבאיים; מסירת אמצעי לחימה
לאחרים לשם ביצוע פיגועי התאבדות בירושלים, בנתניה וחדרה, ועוד.

21.    עויס אמר בהודעותיו כי ביצע את הפיגועים בשם גדודי חללי אלאקצא, בהסבירו כי גוף זה
משתייך לתנועת הפת"ח ותנזים הפת"ח, וכי הנאשם היה האחראי על התנזים    (ת/172ב עמ' 3).
עויס אמר כי המימון לפיגועים בא מאנשי התנזים, וכי הנאשם עצמו מימן את הנשק לפיגועים בהם

היה מעורב עויס - לעיתים באופן ישיר, ולעיתים באמצעות מאג'ד אלמצרי - בידיעו שעויס מבצע פיגועים נגד מטרות ישראליות. במקרה אחד העביר הנאשם לעויס שיק מאושר על ידי היו"ר ערפאת (עמ' 7-6). עוד אמר עויס בחקירתו כי היה בקשר עם הנאשם לכל אורך הזמן ; הוא נשאל אם הנאשם ידע על כך שהוא מבצע פיגועים כנגד מטרות ישראליות, והשיב (עמ' 5-4) :

**"כן ידע ושמי אף פורסם בעיתונות ובטלוויזיה וברדיו והייתי משוחח עמו מידי פעם וכשהמצב הפוליטי היה מתדרדר ורע לנו היה מבקש שנמשיך בפיגועים וכשנפגש שמעון פרס ועמרי שרון עם מנהיגים ברשות התקשר אליי מרואן ברג'ותי וביקש שנעצור את הפיגועים... באותה תקופה היה זיני באזור ומרואן אמר לי שעדיף מאחד והנג'רל זיני נפגש עם מנהיגים ברשות שלא נבצע פיגועים בשם חללי אלאקצא ויש לציין שהתקדמו בשיחות לא בוצעו פיגועים".**

הנאשם הביע כעס בפני המדובב "פלוני 1" על כך שעויס הודה בחקירתו כיצד נהג הנאשם בעת ביקורו של הנג'רל זיני באזור (ת/113א סעיפים 9-8, ת/114א סעיף 8, שהוגשו ואושרו על ידי החוקר "רוברטי" בעמ' 154, ותמליל חקירת הנאשם ת/98ח עמ' 3).

22.    אשר לקשריו עם הנאשם, אמר עויס בחקירתו בשב"כ כי הגיש לנאשם בקשת סיווע עבור שורה של פעילי שטח, וכי הוא עצמו קיבל שלוש פעמים כסף מהנאשם (זכ"ד ת/178א סעיף 10). הנאשם היה הממונה עליו בתנזים, והעביר לו ולפעילים אחרים סיוע כספי, לאחר קבלת אישור מהיו"ר ערפאת (ת/178ב סעיף 10). בדרך כלל קיבל עויס את הכספים מהנאשם באמצעות המתווך מאג'ד אלמצרי, אך לעיתים היה הנאשם שולח לו כספים בצורה ישירה ; עויס לא נהג לומר לנאשם מה מטרת הכסף, אך ברחבי הגדה ידעו היטב מה טיב הפעילות של עויס (ת/178ד סעיף 5יא).

עויס אמר בחקירתו כי הפיגועים של התנזים בוצעו בידיעת מנהיגי התנזים ובסיועם. לאחר הפיגוע באולם השמחות בחדרה, וכל זמן שהתנהלו שיחות עם ישראל, הם היו מורים על הפסקת הפיגועים ; ואולם כאשר השיחות לא התקדמו, שבו הפעילים לבצע פיגועים, עד שניתנה להם הוראה חדשה על ידי המנהיגים להפסיקם. במסגרת זו נתן הנאשם הוראה להפסיק את הפיגועים בעת ביקורם של הנג'רל זיני ומנהיגים מרוסיה ומאירופה בארץ (ת/178ד סעיף 5י).

23.    דבריו של עויס בחקירתו בכל הנוגע לקשריו עם הנאשם נתמכים בדברים שאמר הנאשם בחקירתו בשב"כ. כאשר הופגשו הנאשם ועויס במהלך החקירה (ת/79א), ועויס החל לקרוא את הודעתו במשטרה, ציווה עליו הנאשם לומר כי מדובר בזיוף, ועויס אכן מיהר לומר כך (החוקר "צדוק" בעמ' 84). ואולם הנאשם עצמו אישר בחקירתו כי עויס היה הפעיל הצבאי הבכיר ביותר של תנזים פת"ח בשכם, ואחראי על גדודי חללי אלאקצא בשכם (זכ"ד ת/90 סי' 7, שהוגש ואושר על ידי החוקר "סטיבי" בעמ' 53). הנאשם הודה כי ידע שעויס מבצע "פעילות צבאית" ענפה, וכאשר רצה להבטיח הפסקת הפיגועים של הפיגועים היה פונה גם לעויס ומורה לו על הפסקת הפיגועים (זכ"ד ת/24 סי' 6, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85, ותמליל שיחה ת/98ט עמ' 3-2).

הנאשם הודה כי מסר לידי עויס באמצעות מאג'ד אלמצרי ואחמד ברג'ותי סכום של כ- 20,000 ש"ח, ואולי אף 50,000 - 70,000 ש"ח, למימון פעילותו, וכי קיבל אישור לכך מהיו"ר ערפאת, בלא שציין את מטרת הסיווע הכספי (זכ"ד ת/19 סי' 16, שהוגש ואושר על ידי החוקר "מופזי" בעמ' 58 ; זכ"ד ת/38 סי' 4, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85 ; זכ"דים ת/40 סי' 8 ו- ת/41 סי' 9, שהוגשו ואושרו על ידי החוקר "מופזי" בעמ' 58 ; תמליל חקירה ת/98ט עמ' 4-3). הנאשם אף הודה

כי חלק מהכספים שהעביר לידי עויס נועדו לרכישת 1000 כדורים לרובה M-16 ולרובה מסוג "גלילי", ואף הצהיר כי הוא "מקבל אחריות על כל הכסף שנאצר (עויס) קיבל עבור מימון פיגועים בשטחים הכבושים, עבור רכישת כלי נשק ותחמושת" (ת/41 סי 9-6).

עוד אישר הנאשם בחקירתו כי עויס הפעיל חוליות שהיו מאורגנות תחת פיקודו של הנאשם (זכ"ד ת/29 סי 1, שהוגש ואושר על ידי החוקר "סמיתי" בעמי 85). אך הנאשם הדגיש כי הוא עצמו לא הורה לעויס לבצע פיגועים (זכ"ד ת/31 סי 6). לעומת זאת, המדובב "פלוני 1" העיד כי הנאשם אמר לו כי נתן לעויס הוראות לבצע פיגועים (עמי 104).

הנאשם הודה גם כי לאחר הפיגוע בנווה יעקב בו נגזר עטרה (הנאשם לא זכר איזה מהם) שלח אליו עויס את הכרוז הנוטל אחריות, והנאשם אישר זאת בשיחה עם עויס (זכ"ד ת/49 סעיף 7, שהוגש ואושר על ידי החוקר "אמילי" בעמי 54, וזכ"ד ת/52 שהוגש ואושר על ידי החוקר "סמיתי" בעמי 85).

(2)    **נאצר נאג'י אבו חמיד**

**24.**    נאצר נאג'י אבו חמיד (להלן: **"אבו חמיד"**) היה אחד ממנהיגי התנזים וגדודי חללי אלאקצא באיזור ירושלים ורמאללה, ואף הוא היה כפוף לנאשם וקיבל ממנו סיוע לצורך ביצוע פיגועים כנגד ישראל. בגין פעילותו זו נדון אבו חמיד, על סמך הודאתו, לשבעה מאסרי עולם ועוד 50 שנות מאסר במצטבר (ת/148א-א-ב). בעדותו סרב אבו חמיד להשיב על שאלות כלשהן, הוכרז כעד עויין והוהעתיו משטרה הוגשו לפי סעיף 10א. לפקודת הראיות (עמי 41-40). הודעות אלו (ת/ 194- 149א-ד) הוגשו באמצעות חוקרי המשטרה אברהים אלקרעאן, יעקב ברזני ומשה לוי (עמי 194- 195, 207, 211), אשר העידו כי אבו חמיד מסרן מרצונו החופשי וחתם עליהן. ההודעות נמסרו בעברית לפי בקשתו של אבו חמיד, אשר לדבריו החוקרים דובר עברית היטב.

**25.**    בהודעותיו פרט אבו חמיד את פיגועי הרצח כנגד ישראלים בהם היה חלק מעורב, וסיפר כי פנה אל הנאשם לקבלת סיוע כספי לרכישת תחמושת, והנאשם הפנה אותו אל קרובו אחמד ברגותי המכונה "אלפרנסי"; הלה אכן מסר כמה פעמים לאבו חמיד כסף לרכישת נשק ותחמושת (ת/149 א, עמי 9, ת/149ג עמי 6-5). גם חברים אחרים בחוליה של אבו חמיד פנו לנאשם לקבלת כספים לצורך רכישת נשק (ת/149 עמי 6). בשלב מסוים פנה אבו חמיד לנאשם לשם מימון רכישת מקלע, ובסופו של דבר הכסף למטרה זו ניתן לו על ידי אחמד ברגותי (ת/149גא עמי 7). אבו חמיד אף סיפר כי הנאשם נפגש עם סוחר נשק בעניין רכישת רימוני יד, שהיו לבסוף רק רימוני חלם (עמי 8-7).

אבו חמיד אמר כי הוא הקים את גדודי חללי אלאקצא לאחר תחילת האינתיפאדה בחודש דצמבר 2000 (עמי 4). הוא הסביר כי הוצע לו לצרף את החוליה שברשותו עמד למנגנוני הביטחון של הרשות הפלשתינאית בראשות תאופיק טיראוי, אך הוא העדיף את הצעתו של הנאשם להיות כפוף לו, ולקבל ממנו משכורת ולאנשיו, כיוון שראה בנאשם "מנהיג פוליטי שלא ישקר" (ת/149א עמי 16-15).

לאחר מכן גייס אבו חמיד פעילים נוספים לתמיכה בנאשם, הקים את גדודי חללי אלאקצא, והחל לבצע פיגועים כנגד מחסומי צה"ל והמתנחלים (עמי 17). הוא אמר לגבי הנאשם כי ראה בו "מנהיג פוליטי", אם כי הוא עצמו השתייך לפלג הצבאי של הארגון (עמי 17). כאשר נהרג מפקד החוליה, הכיר אבו חמיד את יורשו לנאשם (ת/149 עמי 7).

באחת מהודעותיו סיפר אבו חמיד על אירוע בו נכח יחד עם חברי חוליה אחרים, ואחד מהם סיפר לנאשם על כוונתו לבצע פיגוע באזור שכם, וביקש מהנאשם סיוע ברכישת נשק ומכונית, וכן ביקש מהנאשם ליצור קשר עם עויס על מנת שיעזור בביצוע הפיגוע. אבו חמיד אמר כי הנאשם התקשר עם עויס, שאכן סייע לחולייה לבצע פיגוע; לאחר הפיגוע הוא דיווח לנאשם כי בהתקלות עם חיילי צה"ל איבדו חברי החוליה את הנשק, והנאשם הבטיח לטפל בנושא (ת/149ג עמי 9).

לקראת סוף שנת 2001, כאשר החל ירי מרגמות לעבר ישובים ישראליים, שוחח אבו חמיד עם הנאשם על הצורך להשיג מרגמות בעלות טווח ירי גדול יותר. אבו חמיד פנה אל הנאשם לשם מימון רכישת פצצות המרגמה, והנאשם השיב לו כי מחירן גבוה מדי, וכי "יש לו הפתעה" בעניין זה, כפי שיסביר לו אחמד ברגותי, והאחרון הסביר לאבו חמיד כי יש כבר בידיהם מרגמה ופצצות (ת/149ג עמ' 10). אבו חמיד אף דיווח לנאשם על ביצוע ירי מרגמה לעבר הישוב פסגות, והנאשם ביקש שלא לספר על כך לאיש, באומרו כי אם ערפאת ידע על כך הוא יכניס אותו לכלא (עמ' 11).

26.    מהודעותיו של אבו חמיד ניתן להתרשם שהוא השתדל למנוע מן הנאשם מעורבות ישירה בפיגועים, ואף אמר לפעילים האחרים שלא לסבך את הנאשם במעשיהם, שכן הנאשם צריך להישאר "מנהיג פוליטי" (ת/149ג עמ' 9-8, 12). במסגרת ניסיונו של אבו חמיד לחפות על מעורבותו של הנאשם בפיגועים, הוא ניסה לגמד גם את חלקו של אחמד ברגותי, שהיה מקורבו ועוזרו של הנאשם; אבו חמיד הודה כי ניסה תחילה להעלים את חלקו של אחמד ברגותי ברצח טליה ובנימין כהנא ז"ל, אשר בוצע באמצעות נשק שמסר אחמד ברגותי למפגע (ת/149ד עמ' 5, וראה פרטי האירוע בפרק ה(1) להלן).

27.    הנאשם הודה בחקירתו כי הניאח את עלי עאידיה (איש הכספים שלו) לרכוש אמל"ח עבור הפעילות של התנזים, ולהעביר את האמל"ח לאבו חמיד. הנאשם אף מתייחס בחקירתו לאירוע המתואר בהודעתו של אבו חמיד, הנוגע לרכישת רימונים מקולקלים (זכ"ד ת/43 סי' 5-2, שהונש ואושר על ידי החוקר "רוברטו" בעמ' 62). הנאשם הודה כי החוליות של אבו חמיד זכו לסיוע מצדו בסכום של כ- 40,000 ₪ (זכ"ד ת/63 סי' 20, שהונש ואושר על ידי החוקר "אורי" בעמ' 82). הנאשם אמר כי כאשר קיבל החלטה אסטרטגית לבצע פיגועים הוא הקים חוליה, כאשר את הפיגועים הוביל, בין היתר, אבו חמיד (זכ"ד ת/35 סי' 1, שהונש ואושר על ידי החוקר "דני" בעמ' 90). כאשר נשאל הנאשם בחקירתו מי מאנשי חוליות הפיגועים היו תחת שליטתו, הוא אמר על אבו חמיד: "הוא נחשב עלי" (תמליל שיחה ת/98יא עמ' 34, שבו בטעות נרשם בעברית "אחמד" במקום אבו חמיד).

(3)    אחמד ברגותי

28.    אחמד ברגותי (המכונה "אלפרנסי") הוא קרוב משפחה של הנאשם, אשר היה עוזרו הקרוב, בנוסף על היותו נהג ושומר ראשו של הנאשם (ראה דבריו בהודעתו ת/165א עמ' 1, וזכ"ד ת/165ו שהונש ואושר על ידי החוקרים "אדם" ו"דני" בעמ' 201-200). אחמד ברגותי אמר בחקירתו כי היה נתון למרותו המלאה והישירה של הנאשם (זכ"ד    ת/165י שהונש ואושר על ידי החוקר "אדם" בעמ' 201). אין זה מקרה שאחמד ברגותי נעצר יחד עם הנאשם, שכן שמו עולה בחומר הראיות בהקשרים רבים הנוגעים לפיגועים שביצעו פעילי השטח של התנזים וגדודי חללי אלאקצא.

אחמד ברגותי סירב להשיב על שאלות כלשהן בעת עדותו (עמ' 161-163), ולאחר שהוכרז כעד עוין הוגש הודעתו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/165א-ה).

הודעות אלו הוגשו ואושרו על ידי השוטרים דוד מזרחי, יצחק יעקובוב ומשה משה (בעמ' 184, 171 ו- 207-206). החוקרים העידו כי תחקרו את אחמד ברגותי בערבית, אך רשמו את עדותו בעברית (שלא על פי המקובל והנדרש). כל החוקרים העידו כי ההודעות נמסרו מרצונו החופשי של הנחקר.

כמו כן הוגש מסמך שכתב אחמד ברגותי בכתב ידו בערבית ותורגם (ת/165(ג)(1-2)), והוא הודה בחקירתו כי כתב מסמך זה בכתב ידו (מזרחי בעמ' 185). בנוסף, הוגשו על ידי חוקרי השב"כ זכ"דים שנרשמו במהלך חקירתו של אחמד ברגותי (ת/165ו-טו, שהונשו ואושרו כדלקמן:ת/165ה על ידי "אדם" בעמ' 201 ו"דני" בעמ' 200; ת/165י על ידי "אדם" בעמ' 201; ת/165יג על ידי

"אדם" בעמ' 201; ת/165יד על ידי "דני" בעמ' 200). הזכ"דים ת/165ז-ח, ת/165יא-יב ו- ת/165
טו לא זכו להתייחסות כלשהי בעדויותיהם של חוקרי השב"כ "מיקי", "ארבלי", "אדם" ו"דקל",
ולכן יש להתעלם מהם.

29.    אחמד ברגותי סיפר בחקירתו כי הוא ועויס היו האחראים על גדודי חללי אלאקצא בשנה
שקדמה למעצרו (הודעה ת/165ה). הוא סיפר בהודעתו על מעורבותו הישירה והעקיפה בפיגועים
שבוצעו כנגד ישראל, ועל כלי הנשק והרכב שסיפק לפעילי השטח שיצאו לבצע פיגועים שונים
באזור יהודה ושומרון ובתוך ישראל, כולל פיגועי התאבדות.

באשר לפיגוע במסעדת **"סי פוד מרקט"** בתל-אביב, סיפר אחמד ברגותי כי כאשר קיבל הודעה
שהמפגע אברהים חסונה עומד לצאת ולבצע את הפיגוע, וגם כאשר דווח לו כי הלה כבר יצא לדרכו
עם מוביליו, הוא התקשר לנאשם והודיעו על כך; הנאשם אישר את הפיגוע **לפני** ביצועו, אך הורה
שלא יבוצע בתוך ישראל אלא בשטחים; אחמד ברגותי אמר לו: "ייהיה בסדר"י (זכ"ד ת/165י"ג
שהוגש ואושר על ידי החוקר "אדם" בעמ' 201 וזכ"ד ת/165יד שהוגש ואושר על ידי החוקר "דני"
בעמ' 200). מייד לאחר ביצוע הפיגוע ב"סי פוד מרקט", שאחמד ברגותי עצמו היה מעורב בהוצאתו
לפועל, הוא התקשר אל הנאשם בשעה 03:15 לפנות בוקר ודיווח לו על ביצוע הפיגוע; הנאשם
נשמע מרוגז (הודעה ת/165א עמ' 1, זכ"ד ת/165יד). לדברי אחמד ברגותי, אמר לו הנאשם להודיע
לעויס שלא ליטול אחריות על פיגוע זה קודם שידובר עם הנאשם, שכן הנאשם היה מעוניין לנסח את
הכרוז (ת/165י עמ' 1, וזכ"ד ת/165יד). אחמד ברגותי נשאל מדוע דיווח על הפיגוע לנאשם, והוא
השיב: **"המרואן ברגותי הודעתי באופן רגיל".**

30.    אחמד ברגותי סיפר בחקירתו גם על הפיגוע ב**תחנת הדלק בגבעת זאב**, שנעשה כנקמה על
חיסולו של ראיד כרמי. לדבריו, הוא ביקש מהמבצע אבו סטחה שלא להודיע על כך מראש לנאשם.
אך אבו סטחה שוחח עם הנאשם על כך, והנאשם אמר לו שלא לבצע את הפיגוע, כנראה משום
שחשש לחייו של אבו סטחה שהיה שומר ראשו (זכ"ד ת/165ג עמ' 2 וזכ"ד ת/165יג שהוגש ואושר
על ידי החוקר "אדם" בעמ' 201). זו אחת הדוגמאות לניסיונו של אחמד ברגותי במהלך כל
החקירה לחפות על מעשי הנאשם, שכן הנאשם עצמו נטל בחקירתו אחריות לפיגוע זה, וברור
מדבריו שהוא הורה על ביצועו (ראה סעיפים 66(5) ופרק ה(7) להלן).

במקרה אחר, עליו סיפר אחמד ברגותי בחקירתו, דחה הנאשם את בקשתה של צעירה בת 15 לבצע
פיגוע התאבדות, באומרו **"שהיא עוד צעירה לעשות זאת"**, והורה לאחמד ברגותי להודיע לה זאת
(ת/165ג עמ' 4, וזכ"ד ת/165יג סי' 2, שהוגש ואושר על ידי החוקר "אדם" בעמ' 201). גרסה דומה
עולה מדברי הנאשם בחקירתו (זכ"ד ת/25 סי' 7-6, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85,
ותמליל חקירה ת/98 עמ' 9-8).

במקרה נוסף עליו סיפר אחמד ברגותי, התקשר ג'יהאד ג'יערה לנאשם בבקשה לבצע פיגוע,
והנאשם אמר לו שלא לעשות זאת בתוך ישראל או בירושלים; ואולם ג'יערה השאיר מכונית תופת
שהתפוצצה למחרת ליד קניון מלחה בירושלים, חרף דברי הנאשם (ת/165 עמ' 18). דברים אלו
אושרו על ידי הנאשם בחקירתו (ראה סעיף 66(ה) ופרק ה(20) להלן).

31.    לאורך כל חקירתו, ניכרת אצל אחמד ברגותי מגמה ברורה לגמד ולהעלים את מעורבותו
של הנאשם בפיגועים השונים. כאשר היה מזכיר את שמו של הנאשם, היה זה בדרך כלל על מנת
לציין שהנאשם התנגד לביצוע הפיגוע. עם זאת, אחמד ברגותי אישר בחקירתו שנכתבה בכתב ידו כי
שורה של פעילי שטח בחוליות קיבלו כספים ממשרדו של הנאשם ובידיעתו, וכי הכספים שקיבל
מהנאשם שימשו אותו לצורך ביצוע פיגועים שלו ושל אחרים (הודעה ת/165ג1(1) עמ' 6, הודעה ת/

165ג עמ׳ 2 וזכ״ד ת/165יג סי׳ 2ג ו- 2ז שהוגש ואושר על ידי החוקר ״אדם״ בעמ׳ 201).
כמו כן ברור מדברי אחמד ברגותי כי הנאשם היה מורה לו מדי פעם להפסיק או לדחות את ביצוע
הפיגועים (זכ״ד ת/165יג סי׳ 2ח, שהוגש ואושר על ידי החוקר ״אדם״ בעמ׳ 201). מכאן עולה כי
במקרים אחרים הם בוצעו באישורו של הנאשם, גם אם לא ידע מראש על כל פיגוע ופיגוע.

32.    בתחילת חקירתו ניסה הנאשם לגונן על קרוב משפחתו אחמד ברגותי, וטען כי נעצר עמו
משום ״שעבר במקרה במקום״ (זכ״ד ת/9 סי׳ 10 שהוגש ואושר על ידי החוקר ״רוברט״ בעמ׳ 62).
הנאשם טען כי אחמד ברגותי הפסיק לעבוד אצלו כנהג כשמונה חודשים לפני מעצרו, ואין שום
קשר ביניהם בנוגע לביצוע פיגועים (זכ״ד ת/10 סי׳ 1, שהוגש ואושר על ידי החוקר ״דני״ בעמ׳ 90,
וזכ״ד ת/21 סי׳ 23, שהוגש ואושר על ידי החוקר ״רוברט״ בעמ׳ 63). בחקירתו במשטרה טען
הנאשם כי אחמד ברגותי לא היה מזכיר או או שומר ראש שלו (ת/104 עמ׳ 4). בפגישה שהיתה בין
הנאשם לאחמד ברגותי בעת מעצרם, ושהתקבלה ללא ידיעתם, תיאמו השניים עמדותם לגבי
החקירה, ואחמד ברגותי אמר לנאשם כי טען בחקירה שהוא איננו קשור לנאשם, אלא רק שימש
כנהגו ; הנאשם אמר כי גם הוא אמר כך (תמליל שיחה ת/127ג עמ׳ 2-3). אחמד ברגותי סיפר
לנאשם באותה פגישה מה בדיוק אמר בחקירותיו לגבי הנאשם, כשהם מתייחסים לפיגועים
השונים אליהם התייחס אחמד ברגותי בחקירתו (עמ׳ 4).

ואולם, בהמשך בחקירתו בשב״כ אישר הנאשם כי ידע שאחמד ברגותי קשור למספר חוליות
ולביצוע פיגועים רבים כנגד ישראל, וכי כאשר ביקש להפסיק את הפיגועים היה מודיע זאת גם
לאחמד ברגותי. לדבריו, אמר לאחמד ברגותי שהוא ״לא מרשה״ לבצע פיגועים בתוך ישראל
(תמליל ת/98יא עמ׳ 20-18). הנאשם אמר כי היה תיאום בינו לבין אחמד ברגותי, שכלל דיווח
ומתן כספים, וכי מבחינתו אחמד ברגותי היה אחראי על הפעילות הצבאית באזור רמאללה ביחד
עם אבו אמרג, וכי השניים היו מבצעים פיגועים באמצעות מספר חוליות (זכ״ד ת/27 סי׳ 3-2 שהוגש
ואושר על ידי החוקר ״סמית״ עמ׳ 85).

הנאשם הודה כי היה נותן כסף לאחמד ברגותי, ותמך בפעילותיו, אף כי טען שאחמד ברגותי לא
היה מדווח לו לפני ביצוע פיגועים (תמליל ת/98ח עמ׳ 3, 17, 24-20, וזכ״ד ת/24 סי׳ 4, שהוגש
ואושר על ידי החוקר ״סמית״ בעמ׳ 85).

הנאשם הודה כי אחמד ברגותי היה מדווח לו לאחר ביצוע פיגועים (תמליל ת/98י עמ׳ 25-19, 40,
ותמליל ת/98יא עמ׳ 9). בשיחתו עם המדובב ״פלוני 1״, אמר הנאשם כי אחמד ברגותי שילח
ארבעה פיגועי התאבדות באישורו (עדות המדובב בעמ׳ 106). דברים אלו תואמים דברים שאמר
הנאשם בחקירתו, כאשר נטל אחריות על כמה פיגועים אותם אישר אישית (ראה סעיף 66 להלן).

הנאשם לא הסתיר כי מסר לאחמד ברגותי עשרות אלפי דולרים לרכישת כלי נשק שונים, כגון רובי
סער ואקדחים, עבור אנשי החוליות שביצעו פיגועים כנגד ישראל. אחמד ברגותי היה האחראי
מטעם הנאשם על רכישת הנשק. הוא פעל תחת פיקודו של הנאשם, והיה אחראי על ״הפעילות
הצבאית״ באזור רמאללה. הנאשם הודה כי ידע שאחמד ברגותי קשור לפיגועים כנגד ישראל,
ובניגוד לפיגועים בירושלים ובי׳סי-פוד מרקט׳ בתל אביב (לכל אלה ראה : זכ״ד ת/23 סי׳ 5-4
שהוגש ואושר על ידי החוקר ״דני״ בעמ׳ 90 ; זכ״ד ת/25 סי׳ 11-10 שהוגש ואושר על ידי החוקר
״מופז״ בעמ׳ 58 ; ת/27 סי׳ 2, 4 ו- ת/29 סי׳ 1 שהוגש ואושר על ידי החוקר ״סמית״ בעמ׳ 85 ; ת/28
סי׳ 4 שהוגש ואושר על ידי החוקר ״אבו ואדי״ בעמ׳ 96 ; ת/65 סי׳ 4 ו- ת/70 סי׳ 9 שהוגש ואושרו
על ידי החוקר ״סטיב״ בעמ׳ 53 ; וכן ראה דברי הנאשם בתמלילים ת/98י עמ׳ 6-2, ת/98ח עמ׳ -20
24, ת/98יא עמ׳ 11-10 ו-
ת/98יא עמ׳ 8).

לסיכום קשרי הנאשם עם אחמד ברגותי, ניתן לומר כי הקשר עם הנאשם של פעילי הטרור היה
באמצעות קרובו ומקורבו אחמד ברגותי. כפי שאמר הנאשם בחקירתו על אחמד : ״הוא יוצר קשר
עם החוליות האלה. באופן ישיר איתם ישירות. יעני בלעדיו לא היתה לי התקשרות ישירה עם אף

**חוליה"** (תמליל ת/98יא עמ' 8). כאשר נשאל הנאשם בחקירתו מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, השיב הנאשם כי אחמד ברגותי היה **"חלקית תחת שליטתי וחלקית עבד עם נאצר (עויס)"** (תמליל שיחה ת/98יא עמ' 34).

### (4)    מוחמד מצלח (אבו סטחה)

33.    מוחמד מצלח המכונה "אבו סטחה" (להלן : **"אבו סטחה"**) היה פעיל שטח נוסף, שעמד בראש חוליה אשר ביצעה פיגועי רצח. הוא גם היה שומר ראשו של הנאשם בתקופה מסוימת, ומקורב אליו. בגין פעילותו זו הורשע אבו סטחה על פי הודאתו ונדון לעונש של 9 מאסרי עולם במצטבר (ת/155א-ג). בעדותו פתח אבו סטחה בהצהרה כי לא היה לו שום קשר עם הנאשם, וכי הנאשם הוא **"אדם פוליטי"** שאין לו קשר עם ה"פעולות הצבאיות". מעבר לכך לא היה מוכן אבו סטחה להשיב על שאלה כלשהי, ולפיכך הוכרז כעד עוין והוגשו הודעותיו למשטרה ת/156א-ג לפי סעיף 10א. לפקודת הראיות (עמ' 66-68).

ההודעה ת/156א לא הוגשה באמצעות מי שגבה אותה (השוטר יעקב ברזאני), ולפיכך יש להתעלם ממנה. ההודעות ת/156ב-ג הוגשו ואושרו על ידי השוטרים מרקו דהאן ומשה לוי (בעמ' 198, 210), אשר העידו כי ההודעות נמסרו מרצונו החופשי של אבו סטחה. החקירה התנהלה בשפה הערבית אך ההודעות נרשמו בעברית (שלא על פי המקובל והנדרש).

בהודעותיו מפרט אבו סטחה את הפיגועים שביצע, ומדבריו עולה שאחמד ברגותי, עוזרו הקרוב של הנאשם, היה מעורב ברבים מהם בצורה ממשית.

34.    הנאשם אישר בחקירתו כי אבו סטחה עבד במשרדו ופעל תחת אחריותו, באמצעות אחמד ברגותי, וכי הוא ידע שאבו סטחה ביצע פיגועים שונים כנגד אזרחים בגבעת זאב ובפסגת זאב (זכ"ד ת/30 ס' 2-3, שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54, תמליל ת/98יא עמ' 35). כאשר נשאל הנאשם מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, הוא כלל בהם את אבו סטחה, באומרו : **"אני לא בורח מזה"** (תמליל ת/98יא עמ' 34).

### (5)    ג'מאל אחויל

35.    ג'מאל אחויל (להלן : **"אחויל"**) היה פעיל שטח נוסף שקיבל סיוע מהנאשם, והיה איש הקשר שלו במחנה הפליטים בג'נין.

אחויל סירב להשיב על שאלות בעת עדותו, הוכרז כעד עוין והוגשה הודעתו במשטרה ת/166 לפי סעיף 10א. לפקודת הראיות (עמ' 164-165), באמצעות השוטר מטאנא חדאד שגבה אותה (עמ' 169). אחויל כתב את הודעתו בכתב ידו, וחדאד תרגם אותה לעברית.

אחויל פעל במסגרת גדודי חללי אלאקצא, ואמר בחקירתו כי קיבל סיוע כספי, בין היתר, מהנאשם, והיה מחלק כסף זה לפעילים אחרים, וביניהם מבוקשים על ידי צה"ל ; חלק מהכסף שימש לרכישת נשק (ת/166 עמ' 1). אחויל היה בקשר רצוף עם הנאשם, והיה מדווח לו על פעילות גדודי חללי אלאקצא, ועל המתרחש במחנה ג'נין ; לעיתים היו הפעילים בגדודים אלו מדווחים לנאשם באופן ישיר, כפי שהיה עושה עויס (ת/166 עמ' 5).

הנאשם הכחיש בחקירתו במשטרה כי הכיר את אחויל (ת/106 עמ' 6). אך בחקירתו בשב"כ אמר הנאשם כי אחויל היה מנהיג מחנה הפליטים בג'נין, וחבר בגדודי חללי אלאקצא, אשר השתייך לחוליות של עויס. הנאשם הכיר היטב את אחויל, אך טען שמעולם לא מסר לידיו נשק או כסף, אם

כי אחויל פנה אליו בבקשות סיוע; הנאשם הסביר כי היה פועל מול עויס, ועויס היה זה שהיה
ממלא את בקשותיו של אחויל (זכ"ד ת/31 ס' 9-7, שהונש ואושר על ידי החוקר "מופז" בעמ' 58).
כמו כן אישר הנאשם כי העביר את בקשותיו של אחויל לקבלת סיוע (זכ"ד ת/67 ס' 4
שהונש ואושר על ידי החוקר "אמיל" בעמ' 54).

### (6)    נאצר א-שויש

36.    נאצר א-שויש (להלן: **"שויש"**) היה אף הוא פעיל בפגועים שביצעו גדודי חללי אלאקצא.
בגין פעילות זו הורשע על פי הודאתו, ונדון ל- 4 מאסרי עולם במצטבר (ת/157א-ד). שויש סירב
לענות על שאלות בעדותו, אך טען כי הנאשם הוא מנהיג פוליטי שאין לו קשר ל"עניינים צבאיים".
הוא הוכרז כעד עוין, הכחיש את הדברים שאמר בחקירתו, ואף טען כי לא הודה בכלום (עמ' -69
71). הודעותיו של שויש ת/158א-ב הוגשו לפי סעיף 10א. לפקודת הראיות, באמצעות השוטרים
מטאנס חדאד ועוזאד עטאף (עמ' 165, 168).

גובי ההודעות העידה כי ההודעות נרשמו בערבית בכתב ידו של הנחקר מרצונו החופשי, ותורגמו
לעברית על ידי החוקרים. השוטר חדאד העיד כי נכח במשפטו של שויש, והלה אישר שם את
הודעתו בטרם הורשע, שכן לא היה לו סניגור.

37.    בחקירתו (הודעה ת/158א, הודעה 6 והודעה ת/158ב, עמ' 4-2) סיפר שויש כי קיבל חגורת נפץ
במשקל של כ- 18 ק"ג במפקדת המודיעין המסכל ברמאללה על מנת לשמור אותה ברכבו. לאחר
מכן פגש את הנאשם בבית החולים בו טופלה אשתו, והנאשם ביקש לשוחח אתו בנפרד. בשיחתם
שאל אותו הנאשם האם הוא מכיר אנשים אשר יודעים כיצד להכין חגורת נפץ, או כאלה שיש להם
חגורת נפץ. באותו מעמד התקשר שויש לאדם שמסר לו את חגורת הנפץ (מוזיד אלמצרי), וקיבל
את הסכמתו למסור אותה לנאשם, והנאשם הודיע לו שאחמד ברגותי ישוחח איתו בעניין. למחרת
התקשר אחמד ברגותי אל שויש, והאחרון מסר לו את חגורת הנפץ. שויש שמע באותו יום כי האדם
שהחזיק את החגורה נתפס בירושלים בדרכו לביצוע פיגוע התאבדות.

שויש נשאל בחקירתו האם הנאשם ידע על פיגועי התאבדות ופעילות צבאית, והשיב כי יום לפני
ביצוע פיגוע ההתאבדות על ידי מחמוד חשאביכה נפגש שויש עם הנאשם, וסיפר לו כי אדם בשם עבד
אלכרים אמור לשלוח מתאבד לישראל; הנאשם אמר לשויש להתקשר אליו אם יזקקו לדבר מה
בקשר לפיגוע, נתן לו סכום של 600 דולר, וביקש לעדכן אותו בפרטי הפיגוע (עמ' 7-6). הפיגוע בוצע
בירושלים, ואז התקשר הנאשם אל שויש, אשר אמר לו כי הפיגוע בוצע על ידי גדודי חללי
אלאקצא. הנאשם ביקש ממנו להביא לו את הקלטת המצולמת של המתאבד חשאביכה (עמ' 7-6
להודעה ת/158א). בהודעתו השניה ת/158ב סיפר שויש על הסיוע הכספי שקיבל מהנאשם (עמ' 5).

38.    הנאשם הכחיש בחקירתו במשטרה כי הכיר את שויש, וכן הכחיש בהודעתו את דבריו של
שויש (ת/106 עמ' 9-7). לא הובאו בפנינו ראיות נוספות על האירועים הנ"ל אליהם התייחס שויש
בחקירתו, ולכן אין כל חיזוק לדבריו אלו, ולא ניתן לסמוך ממצאים עליהם.

### (7)    עלי עיאדיה

39.    עלי עיאדיה (להלן: **"עיאדיה"**) היה פעיל בתנזים שעסק בהדרכת צעירים בשימוש
בנשק, ובעניין זה פעל בהנחיית הנאשם. כמו כן השתתף בביצוע פיגועי ירי לעבר חיילים. בעדותו
סרב להשיב על שאלות שנשאל, וטען כי הנאשם הוא "איש שלום" (עמ' 169-171). לפיכך הוכרז עד
עוין, והודעתו ת/168 הוגשה לפי סעיף 10א לפקודת הראיות, באמצעות השוטר יעקב ברזני, שגבה
אותה בשפה הערבית ותרגמה לעברית (עמ' 208).

‎40.‏ עיאדיה סיפר בחקירתו על מעורבותו של הנאשם בקורס הירי לצעירים (ת/168, עמ' 2-1), ועל הפציעות שהוא עצמו ביצע. כמו כן אמר עיאדיה: **"ראש התנזים מרואן ברגותי היה יודע מכל אירועי הירי אותם ביצעו פעילי התנזים עוד לפני שעשו אותם והוא הסכים להם"** (עמ' 5). הוא ציין כי כמה חודשים לפני מעצרו ביקש ממנו הנאשם "לקנות נשק מכל סוגי", ולהעבירו דרך אבו חמיד (עמ' 5).

הנאשם הכחיש בחקירתו את הדברים שאמר עיאדיה בחקירתו (ת/106 עמ' 7). ואולם באחת מחקירותיו הודה הנאשם כי הורה לעיאדיה לרכוש אמל"ח ולמסרם לאבו חמיד (זכ"ד ת/43 ס' 3, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 92), דבר שמחזק את דברי עיאדיה בחקירתו.

‎(8)‏    **איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ועד**

‎41.‏ איסמעיל רדאידה (להלן: **"רדאידה"**) ביקש לבצע פיגוע, ופנה בעניין זה לנאשם. הוא ביצע את את פיגוע הירי במעלה אדומים שבו נרצח הנזיר היווני גרמנוס ציפוקטקיס ז"ל (ראה פרק ה(3) להלן). בגין פעילותו החבלנית הורשע רדאידה על פי הודאתו, ונדון למאסר עולם ועוד 20 שנות מאסר במצטבר. בעדותו בתיק זה (עמ' 44-42) סירב רדאידה להשיב על שאלות, הוכרז כעד עוין והודעותיו במשטרה הוגשו מכוח סעיף 10א. לפקודת הראיות (הודעות ת/151א-ת/151ג, הודעה בכתב יד ת/151ד שנקבעה, שוחזרה ותורגמה, וקלטות בה שיחזר רדאידה את רצח הנזיר ותומללה - ת/151א).

הודעותיו של רדאידה הוגשו על ידי החוקרים מרקן ויצחק דהאן יעקובוב, שגבו את ההודעות בערבית, אך רשמו אותן בעברית (בניגוד למקובל ולנדרש), והעידו כי הן נמסרו מרצונו החופשי של רדאידה. הודעתו של רדאידה ת/151ד נרשמה בכתב ידו בנוכחות יעקובוב (עמ' 171, 198). עורך השיחזור (מרקו דהאן) לא התייחס לכך בעדותו, ועל כן יש להתעלם מקלטת השיחזור, בהיותה אמרת חוץ של עד שלא הוגשה כדין.

‎42.‏ בהודעתו הראשונה (ת/151א) סיפר רדאידה כי החליט לבצע פיגוע כאשר ראה בטלוויזיה שתינוקת פלסטינאית נהרגה, ועל כן ניגש למשרדו של הנאשם. השיחה ביניהם התנהלה ביחידות, ורדאידה אמר לנאשם כי הוא רוצה לבצע פיגוע ודרוש לו נשק לשם כך. הנאשם הפנה את רדאידה אל אדם בשם מוהנד (אבו חלאוה) שכינויו "עלאאא" (להלן: **"מוהנד"**), והורה למוהנד להשיג נשק לרדאידה. בהודעתו השניה (ת/151ב) הוסיף רדאידה כי הוא הביריר לנאשם שהנשק דרוש לו על מנת לבצע פיגועים נגד מטרות ישראליות, ואז הפנה אותו הנאשם אל מוהנד. מוהנד אמר לרדאידה כי ישיג לו שני רובי קלצ'ניקוב, וכי מעתה ואילך הקשר שלו יהיה עם מוהנד ולא עם הנאשם. כעבור כשבועיים התקשר מוהנד אל רדאידה, אשר בינתיים צירף אדם נוסף לפיגוע, והודיע כי הנשקים מוכנים. רדאידה קיבל את הנשקים והתחמושת ממוהנד, אשר תדרך את רדאידה ואת חברו כיצד להפעילם.

לאחר כמה ימים בהם הכינו רדאידה וחברו יאסר את הפיגוע, ותיצפתו לעבר כביש מעלה אדומים, הם ביצעו את הפיגוע, כאשר פתחו בירי לעבר הרכב שבו נסע הנזיר ונמלטו. למחרת התברר לרדאידה בחדשות כי הרג נזיר יווני, ומוהנד התקשר אליו ובא אליו בטענות על כך; רדאידה הסביר כי חשב שמדובר במתנחל. רדאידה נשאל בחקירתו מדוע פנה לנאשם כאשר החליט לבצע פיגוע, והשיב כי ראה את הנאשם כמה פעמים בטלוויזיה והבין **"שהוא האדם היחיד שיכול לעזור לי בהשגת הנשק"** (עמ' 5).

בהודעתו השלישית (ת/151ג), גילה רדאידה כי כוונתו המקורית היתה לעשות פיגוע התאבדות, אך הנאשם אמר לו: **"פיגועי התאבדות זה העבודה של החמאס והג'יהאד האיסלמי ושהתנזים עושה פיגועים נגד הצבא והמתנחלים"**.

**רדאידה** הוסיף ואמר: "מרואן ברגותי אמר שהוא מוכן לתת לי אמל"ח כדי שאני אעשה פיגועים **נגד חיילים ונגד מתנחלים"** (עמ' 1). גרסתו הנ"ל של רדאידה עולה גם מן המסמך שכתב בכתב ידו (ת/151ד), אם כי בצורה מתומצתת יותר.

43.    דבריו של רדאידה נתמכים בדברי הנאשם בחקירתו (תמליל ת/98יא עמ' 37-38, ותמליל ת/98ד עמ' 2-4, 11-12 שבהם נרשם בטעות השם אישמעיל אלדבע במקום אישמעיל רדאידה). בחקירתו במשטרה הכחיש הנאשם כי מוהנד עבד במשרדו או היה סגנו, ואמר כי מוהנד לא קשור לתנזים (הודעה ת/102 עמ' 3, ת/103 עמ' 5, ת/105 עמ' 2, ת/106 עמ' 1). גם בתחילת חקירתו בשב"כ הכחיש הנאשם כי הכיר את רדאידה, וכי מוהנד עבד במשרדו (זכ"ד ת/9 סי' 8-9 וזכ"ד ת/21 סי' 22 שהוגשו ואושרו ע"י החוקר "רוברטי" בעמ' 62-63).

ואולם בהמשך חקירתו הודה הנאשם כי רדאידה בא אליו בהצעה לבצע פיגועי התאבדות, והנאשם אמר לו: **"אנחנו לא עובדים בפיגועי התאבדות".** הנאשם הפנה אותו אל מוהנד, ואמר למהנד שרדאידה **"צריך אימון...תמצא לו מישהו".** כמו כן אמר הנאשם: **"שיכם איתו מוהנד וניסו לעשות פיגוע פה במעלה אדומים או במקום אחר, אני ידעתי יותר מאוחר... אז הם ירו על הרכב ונפצע מישהו אלחורי... נהרג יעני"** (יאלחורי" משמעותו "כומר" בערבית - ע.ב.). הודאה דומה של הנאשם בגיוסו של רדאידה לשם ביצוע פיגועים ובאמצעות מוהנד עולה מדבריה שאמר בחקירותיו (ראה: זכ"ד ת/22 סי' 12-16 וזכ"ד ת/40 סי' 9 שהוגשו ואושרו על ידי החוקר "מופז" בעמ' 58, זכ"ד ת/23 סי' 6 שהוגש ואושר על ידי החוקר "דני" בעמ' 90, ותמליל חקירתו של הנאשם ת/98ד עמ' 26-21, ות/98ז עמ' 8).

עוד הודה הנאשם בחקירתו כי נפגש עם מוהנד, והעביר לו כספים לצורך ביצוע פיגועים, לאחר שמוהנד סיפר לו כי החוליה שלו ביצעה מספר פיגועים, כולל רצח בני הזוג כהנא ז"ל. הנאשם אמר כי נתן למוהנד סך של כ- 3,000 דולר ואף נשק (זכ"ד ת/43 סי' 14-16 שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 62; זכ"ד ת/59 סי' 10 שהוגש ואושר על ידי החוקר "ואדי" בעמ' 56; זכ"ד ת/67 סי' 6 שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54; זכ"ד ת/68 שהוגש ואושר על ידי החוקר "סטיבי" בע' 53).

בתמליל חקירתו של הנאשם (ת/98ד עמ' 21-23), הוא מספר על כך שמוהנד הודיע לו שהחוליה שלו נתפסה, והסביר שמוהנד התייחס "לאלה שאנחנו סידרנו להם נשק".

44.    קשריו של הנאשם עם מוהנד עולים גם מדברים שאמר בהודעתו כמאל אבו ואר (להלן: **"ואר"),** לפיהם הוא היה מקבל כסף ממוהנד בידיעתו ובהוראתו של הנאשם. בדרך זו הוא קיבל מהנאשם, באמצעות מוהנד, סכום של כ- 25,000 ₪, שרובו יועד לייצור מרגמה וקניית אקדחים. בשלב מסוים החל הנאשם להתקשר שירות אל ואר, ולברר מהם צרכיו. כמו כן אמר ואר בחקירתו כי הנאשם היה מעביר לו כספים גם דרך ג'מאל אחויל, וכי לאחר ביצוע הפיגוע במירב התקשר אליו הנאשם כדי לברר שמות האנשים שהשתתפו בפיגוע, על מנת להעביר להם כספים (ת/181ג עמ' 4-5, וזכ"ד ת/181ד סע' 6). ואר אמר בחקירתו כי הוא ומוהנד היו מחליטים ביניהם למה הוא זקוק, ואז הנאשם היה שולח להם את הכסף; הנאשם נהג להתקשר לואר ולברר שהכסף ששלח לו עם מוהנד אכן הגיע (זכ"ד ת/181ד סע' 6.1). בשלב מסוים ניתק הקשר בין ואר לבין מוהנד, והנאשם אמר לואר כי יש לו בעיות כלכליות, ואין לו כסף לקנות כדורים; בשלב זה הפנה הנאשם את ואר לג'מאל אחויל לצורך קבלת כספים (זכ"דים ת/181ג סע' 15 ו- ת/181ד סע' 6.1).

45.    ואר ביצע מספר פיגועי ירי במסגרת פעילותם של גדודי חללי אלאקצא, והוא פרט את הפיגועים בהם השתתף בהודעותיו במשטרה ובחקירתו בשב"כ. בעדותו סרב לחשיב על שאלות (עמי 188-189), ולפיכך הוגשה הודעתו במשטרה (ת/181א-ב) לפי סעיף 10א. לפקודת הראיות, באמצעות החוקר גדיר סאלח, שהעיד כי היא נמסרה מרצונו החופשי של ואר ובשפה הערבית, אך

נרשמה בעברית (עמ׳ 209). כמו כן הוגשו שני זכ״דים מחקירתו של ועד בשב״כ (ת/181ג1-ד, שהוגשו באמצעות החוקר ״נווה״ בעמ׳ 205). אמרות החוץ של ועד אמנם אינן נתמכות בראיות נוספות, אך הובאו ראיות רבות על הסיוע שהגיש הנאשם לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

### (9)    נאסר (חלום) נאג׳י אבו חמיד

**46.**    נאסר חלום נאג׳י אבו חמיד (להלן: **״חלום״**) הוא אחיו של אבו חמיד, והוא ביצע פיגועי ירי מסגרת גדולי חללי אל-אקצא. חלום היה מעורב בפיגוע בו נורתה למוות השוטרת גלית ארביב ז״ל בנווה יעקב ירושלים (ראה פרק ה(10) להלן). הוא גם השתתף בהכנת הפיגוע הקטלני במסעדת ״סי פוד מרקט״ בתל אביב (ראה פרק ה(12) להלן). הוא הורשע על פי הודאתו ונדון לעונש של חמישה מאסרי עולם מצטברים (ת/161א׳-ב׳).

בעדותו סרב חלום להשיב על שאלות (עמ׳ 73-76), וטען כי הנאשם הוא מנהיג פוליטי שאין לו קשר עם ״עניינים צבאיים״. לפיכך הוגשו הודעותיו במשטרה (ת/162א׳-ג׳) על ידי השוטרים מזרחי ואלקרעאן (עמ׳ 184, 194). הקשר של חלום היה עם אחמד ברגותי, שהיה עוזרו הקרוב של הנאשם.

### (10)    זיאד חמודה

**47.**    זיאד חמודה (להלן: **״חמודה״**) היה פעיל בתנזים. בעדותו סרב חמודה להשיב על שאלות, ולאחר שהוגשה הודעתו לפי סעיף 10א. לפקודת הראיות, כאשר הוכרז כעד עוין, הוא טען כי חתם על הודעתו על מנת שיעשו לו ניתוח אמנדציטו (עמ׳ 197-166). הוא הכחיש את הדברים שאמר בהודעתו ת/167ב׳, וטען כי הנאשם הוא ״איש שלום״. הודעתו של חמודה נגבתה על ידי השוטר אבי עקיבא, אשר לא הובא לעדות, ולפיכך היא לא הוגשה כדין ויש להתעלם ממנה.

חמודה הורשע על פי הודאתו בשורה ארוכה של עבירות ביטחוניות (ת/167א). בכתב האישום בו הודה חמודה, נטען כי הוא גויס לתנזים על ידי הנאשם, לצורך הכשרה צבאית, והובטח לו כי הנאשם ידאג לו לסיוע כספי. כמו כן נטען בכתב האישום בו הודה חמודה כי הוא פנה אל הנאשם לקבלת נשק לצורך ביצוע פיגועי ירי לעבר הישוב פסגות, והנאשם הפנה אותו אל מוהנד לצורך קבלת נשק (פרט חמישי ופרט שביעי לכתב האישום). בחקירתו בשב״כ אישר הנאשם כי חמודה ביקש ממנו נשק, ולמיטב זכרונו לא קיבל זאת (זכ״יד ת/34 ס׳ 5 שהוגש ואושר על ידי החוקר ״איתי״ בעמ׳ 52).

במקום אחר בחקירתו אמר הנאשם כי ייתכן שחמודה קיבל ממנו רובה MP-5 (תמליל חקירה ת/98ה׳ עמ׳ 67). אין בחומר הראיות דבר המפליל את הנאשם זולת הודאתו של חמודה בעובדות כתב האישום לפיו הורשע, ולא ניתן לבסס ממצאי כלשהו על סמך הודאה שכזו (ראה סעיף 132(ג) להלן). אך הובאו ראיות רבות אחרות בדבר הסיוע שהגיש הנאשם לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

### (11)    ריאד עמור

**48.**    ריאד עמור (להלן: **״עמור״**) היה פעיל שטח נוסף של התנזים, שפרט בחקירתו את הפיגועים בהם נטל חלק. בעדותו סרב עמור להשיב על שאלות (עמ׳ 172-174), וטען כי לא היה לו קשר עם הנאשם. הוא הוכרז כעד עוין, והודעותיו ת/169א׳-ב׳ הוגשו באמצעות השוטרים דוד מזרחי ויעקב ברזואני, שהעידו כי עמור מסר אותן ותמה עליהם מרצונו החופשי (עמ׳ 186,208). ההודעות נגבו בערבית אך נרשמו בעברית (שלא על פי המקובל והדרוש). עמור הורשע עפ״י הודאתו בביצוע פיגועים רבים (ת/169ג׳-ד׳).

P 7: 000392

**49.** עמור סיפר בחקירתו כי פגש את הנאשם כחצי שנה לפני מעצרו, והנאשם אמר לו כי הוא מרוצה מהפעילות של עמור וחבריו בבית לחם, וכי עדיף שיעשו פיגועים כנגד הצבא ולא כנגד מטרות אזרחיות, כי **"זה עושה בעיות"**, ו**"גורם כאב ראש ליו"ר"** (ת/169אי עמי 3, ת/169בי עמי 11). הנאשם טען בחקירתו במשטרה כי איננו מכיר כלל את ריאד עמור (ת/104 עמי 9), ואין כל ראיה לסתור טענה זו זולת אמרת החוץ של עמור הטעונה חיזוק, שלא נמצא לה. אך הובאו ראיות רבות אחרות בדבר עמדתו הכללית של הנאשם בעד ביצוע פיגועים כנגד חיילים ומתנחלים.

**(12)    נאצר חאגי**

**50.** נאצר חאגי (להלן: **"חאגי"**) פעל אף הוא במסגרת הפת"ח, ופרט בהודעתו ת/170אי את הפיגועים בהם נטל חלק. בעדותו סרב תחילה להשיב על שאלות, ולאחר מכן הכחיש את כל מה שאמר בחקירתו (עמי 176-175).

לפיכך הוגשה הודעתו לפי סעי 10א. לפקודת הראיות, באמצעות החוקר משה לוי, שהעיד כי חאגי מסר את ההודעה מרצונו החופשי לאחר שהוזהר בדבר זכויותיו (עמי 212-211).

בהודעתו הנ"ל אמר חאגי כי פנה יחד עם פעילים אחרים למשרדו של הנאשם בבקשה לקבל כספים ונשק. הנאשם אמר להם לחפש נשק, וכי הוא ימנן את רכישתו. מאוחר יותר נתן לו הנאשם 1,200 דולר לצורך רכישת נשק (עמי 4-5). אין בחומר הראיות דבר לחיזוק אמרת החוץ של חאגי הטעונה חיזוק, אך הובאו ראיות רבות לסיוע שהגיש הנאשם לאנשי השטח ברכישת נשק לצורך ביצוע פיגועים.

**(13)    תחריר ברגותי**

**51.** תחריר ברגותי (להלן: **"תחריר"**), שהוא קרוב משפחה של הנאשם, ביצע על פי מה שמסר בחקירתו פיגועי ירי רבים. הוא סרב להשיב על שאלות בבית משפט (עמי 178-177), ולפיכך הוגשו הודעותיו במשטרה לפי סעי 10א. לפקודת הראיות (ת/171אי-די), באמצעות השוטר יעקב ברזאני שגבה אותן, והעיד כי ההודעות נמסרו מרצונו החופשי של תחריר בשפה הערבית, ותורגמו לעברית לאחר מכן (עמי 207).

**52.** תחריר אמר בחקירתו כי פנה אל הנאשם בבקשה לסייע לו להקים לו חוליה. הנאשם הבטיח לעזור לתחריר בכסף ובתחמושת, ולסייע לאנשיו אם ייעצרו. הנאשם אף הציע לתחריר להיות אחראי על החוליה, ולהתרחק מפעילות בעצמו. תחריר הסביר בחקירתו כי פנה אל הנאשם על מנת לקבל נשק לחוליה שהקים (ת/171די עמי 3). לאחר מכן נמשך הקשר באמצעות מוהנד, שרמז לו כי הנאשם אינו מעוניין שהוא יקח חלק בפעילות; הנאשם עצמו הסביר לתחריר כי עמדתו זו נובעת מכך שחברי החוליה שלו הם נוכלים (ת/171 עמי 4).

הנאשם הכחיש בחקירתו במשטרה את כל דבריו של תחריר (ת/104 עמי 9-10). ואולם בחקירתו בשב"כ הודה הנאשם כי תחריר פנה אליו על מנת לבצע פיגועים, וביקש נשק לצורך כך. אלא שלטענת הנאשם הוא לא נענה לבקשה (זכ"ד ת/30 סי 1, שהוגש ואושר על ידי החוקר "אמילי" בעמי 54). אין בחומר הראיות דבר זולת אמרת החוץ של תחריר, הטעונה חיזוק שלא נמצא, לסתירת טענתו של הנאשם. אך הובאו ראיות רבות לכך שהנאשם סייע לאנשי חוליות הטרור לרכוש נשק לצורך ביצוע פיגועים.

**(14)    אחמד מוצפר**