# EXHIBIT A.452
## (3 of 4)

2.  Salah 2 asked the Defendant to make two explosive belts for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive belts in order for them to be used for carrying out a suicide attack with the intent of causing the deaths of as many people as possible. Following the said request, the Defendant manufactured two explosive belts.

3.  The Defendant delivered the above mentioned explosive belts to Salah 2, who had them transferred through Hasnin Rumana to Mahmoud Hamad Mahmoud Sharitah, a military operative in the Hamas Organization, for the purpose of carrying out the planned suicide attack.

4.  In late July 2004, Hasnin Rumana called Mahmoud Sharitah and asked to arrange a meeting between Iad Naim Subahi Radad, known as Omar, and a person known as Abu Khaled. Hasnin Rumana explained that the said meeting was intended for the purpose of carrying out a suicide attack, which the above mentioned Omar was supposed to carry out. Mahmoud Sharitah called Omar and informed him where and how he must meet Abu Khaled. After two days, Omar reported that Abu Khaled did not arrive to the arranged meeting.

5.  Immediately after the above mentioned conversation, Mahmoud Sharitah returned to Ramallah and met Hasnin Rumana and reported to the latter that the scheduled meeting had not taken place. At the end of the above mentioned meeting, Mahmoud Sharitah called Ashraf Zaghair, known as Abu Sharif.

[Stamp] P7: 62 [continued]

6.  After a few days, Mahmoud Sharitah met Hasnin Rumana again, who asked to arrange another meeting between Omar and Abu Khaled.

7.  After about a week, Hasnin Rumana requested that if Abu Khaled should not show up at the said meeting, Mahmoud Sharitah would take responsibility for Omar and the second suicide terrorist, Rafat Radad.

8.  After the above mentioned conversation, Mahmoud Sharitah met Abu Sharif in Ramallah and asked the latter to find a place within the Israel that would be suitable for carrying out a suicide attack. Mahmoud Sharitah made it clear to Abu Sharif that he would have to lead two suicide terrorists to the place that he would find in order for them to carry out a bombing attack there with the aim of causing the deaths of as many people as possible. Abu Sharif agreed, but contended that it would take time to find a place where a double suicide attack could be carried out. During the above mentioned conversation, Abu Sharif reported that he had rented an apartment in Dahiat Al-Barid.

11. Omar informed Mahmoud Sharitah that he had learned from Rafat Mukadi about a large banquet hall, Whitehall, in Or Yehuda. Omar suggested that he and Rafat Mukadi carry out the suicide attack in the above mentioned banquet hall, after first shooting with weapons at the occupants of the banquet hall and then detonating the explosive belts that they would be carrying on their persons, with the intent of causing the deaths of as many people as possible. Mahmoud Sharitah agreed to the above mentioned idea and sent Abu Sharif to inspect the above mentioned banquet hall. Abu Sharif traveled to the above mentioned banquet hall and reported that the planned attack could not be carried out there because of the large number of security guards who were posted at the site.

12. Mahmoud Sharitah reported to Hasnin Rumana concerning his activity that had been carried out for the purpose of carrying out the planned suicide attack. Mahmoud Sharitah asked Hasnin Rumana to obtain two explosive belts and two small weapons for the purpose of carrying out the planned suicide attack. Hasnin Rumana promised to see to the explosive belts and the weapons.

13. After a few days, Mahmoud Sharitah and Abu Sharif obtained two explosive belts that the Defendant had manufactured as set forth above, and two Uzi submachine guns with magazines filled with cartridges.

[Stamp] P7: 63

14. Thereafter, Mahmoud Sharitah met Omar and informed the latter that the explosive belts were ready and he could depart to carry out the planned suicide attack along with his cousin, Rafat Mukadi. Omar responded that he himself was prepared to carry out the suicide attack as soon as possible, but Rafat Mukadi was not ready to carry out the planned suicide attack, because his sister was in the USA and he wanted to wait until she returned to the Area.

15. Mahmoud Sharitah turned to Abu Sharif again and asked to act urgently to find a suitable place to carry out the planned suicide attack. After a few days, Abu Sharif reported that he had found a place in Tel Aviv that was suitable for carrying out the planned suicide attack.

16. On September 17, 2002, or thereabouts, Mahmoud Sharitah met Omar in the safe-house apartment in A-Ram and explained to the latter how to put on and how to activate the explosive belt. Mahmoud Sharitah stayed in the above mentioned apartment with Omar until September 18, 2002.

17. On September 19, 2002, Omar departed from Ramallah to carry out the planned suicide attack, while carrying one of the suicide belts on his person, which the Defendant had manufactured as set forth above.

Prosecution case 380/03                    38

18. Abu Sharif transported Omar to Tel Aviv in his vehicle. Upon arriving in Tel Aviv, Abu Sharif instructed Omar to explode where there were many people, so that the explosion would cause the deaths of as many people as possible.

19. At about 12:55 p.m., on September 19, 2002, or thereabouts, Omar boarded Dan bus no. 4, license no. 9105201, at 94 Allenby Street in Tel Aviv. As soon as the above mentioned bus started to move, Omar activated the explosive belt that the Defendant had manufactured, which he was carrying on his person, and caused a strong explosion, with the intent of causing the deaths of as many people as possible. The suicide terrorist, Iad Naim Subahi Radad, known as Omar, was killed as a result of the detonation of the above mentioned explosive device.

20. As a result of the explosion of the suicide terrorist with the above mentioned explosive device, six people were killed, as described in the following counts of the indictment.

21. As a result of the explosion of the suicide terrorist with the said explosive device, many other people were injured, as will be described in the following counts of the indictment.

22. As a result of the explosion of the suicide terrorist with the said explosive device, extensive damage was sustained by the above mentioned bus, by the vehicles that were near the site of the explosion and by nearby stores.

23. By his acts described above, the Defendant caused the intentional death of **the late Yossi Mamistavlov**, aged 39 at the time of his death, who was killed as a result of the explosion of the explosive device as set forth above.

**One hundredth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 64

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Ofer Zinger**, aged 39 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred first count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Rosanna Siso**, aged 63 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

[Stamp] P7: 64 [continued]

**One hundred second count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Yaffa Shem-Tov**, aged 49 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred third count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Solomon Hoenig**, aged 79 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred fourth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Jonathan Jesner**, aged 19 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.


**One hundred fifth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, attempted to cause the intentional death of all of the individuals who were in the vicinity of the suicide terrorist, who exploded with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, **approximately 84 people** who were aboard and near the above mentioned bus at the time of the explosion **were injured**.

[Stamp] P7: 65 [continued]

**One hundred sixth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on September 19, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, maliciously and unlawfully caused heavy damage to the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, and caused damage to additional vehicles and to stores and to businesses that were near the site of the attack described in the ninety-ninth count of the indictment, which were damaged as a result of the explosion of the explosive device that the Defendant had manufactured.

**One hundred seventh count: (Detailed incident 21011/02 Yarkon)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on October 11, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early September 2002, in Ramallah or thereabouts, manufactured two explosive belts for the purpose of carrying out suicide attacks with the intent of causing the deaths of as many people as possible, as described in the ninety-ninth count of the indictment.

2. The Defendant transferred the two explosive belts to Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in Hamas, who had them transferred to Mahmoud Hamad Mahmoud Sharitah, as described in the ninety-ninth count of the indictment.

[Stamp] P7: 66

3. After carrying out the attack described in the ninety-ninth count, Mahmoud Sharitah decided to carry out an additional suicide attack using the explosive belt that the Defendant had manufactured for that purpose.

4. For the purpose of advancing his above mentioned plan, Mahmoud Sharitah recruited Rafat Mukadi to carry out the planned suicide attack.

5. Mahmoud Sharitah also met with Ashraf Munir Zaghair, known as Abu Sharif, and instructed the latter to find a suitable site for carrying out the planned suicide attack. After a few days, Abu Sharif reported that he had found two places in Tel Aviv that were suitable for carrying out the planned suicide attack.

6. On October 11, 2002, Abu Sharif brought Rafat Mukadi from the village of Arabeh to the safe house in A-Ram. Mahmoud Sharitah explained to Rafat Mukadi how to put on and how to activate the explosive belt. Mahmoud Sharitah attached the explosive belt that the Defendant had manufactured to the body of Rafat Mukadi.

7. Abu Sharif transported Rafat Mukadi to Tel Aviv in order for the latter to carry out the planned suicide attack there.

8. At about 8:15 p.m., on October 11, 2002, Abu Sharif dropped off Rafat Mukadi on the beach promenade in Tel Aviv and instructed the latter to detonate the explosive belt, which he was carrying on his person, in a restaurant that was full of people.

9. Rafat Mukadi attempted to enter the Yotvata restaurant located on Herbert Samuel Street (Tel Aviv promenade), but the security guard at the site noticed him, suspected that he was a suicide terrorist and prevented

Prosecution case 380/03                    41

[Stamp] P7: 66

his entry. Rafat Mukadi tried to flee from the site, but was caught after a pursuit and with the assistance of other security guards who arrived at the site.

10. By his acts described above, the above mentioned Defendant attempted to cause the deaths of as many people as possible.

**One hundred eighth count:**

**Nature of the offense:** Military training without a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in February 2003 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, administered military training to a person, a resident of Nablus, who had been sent to him by Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area.

During the said training, the Defendant taught the above mentioned person how to manufacture explosive devices, electrical circuits for activating explosive devices and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

During the above mentioned military training, the Defendant and the above mentioned person were masked.

**One hundred ninth count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2003 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

[Stamp] P7: 67

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, conveyed to Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area, computer diskettes containing instructions for manufacturing the explosives and the explosive devices.

Ibrahim Hamad asked the Defendant to obtain the above mentioned diskettes in order to transfer them to the operatives of the Palestinian Islamic Jihad Organization, who had asked to learn how to manufacture explosives and explosive devices.

Prosecution case 380/03                                    42

[Stamp] P7: 67 [continued]

**Witnesses of the Prosecution:**

1. Master Sergeant Yitzhak Ya'akoboff, Badge No. 1008358, Judea Investigations Office. [took the statements of the Defendant dated March 12, 2003, March 13, 2003, March 30, 2003, May 15, 2003 and May 22, 2030, and submitted photographs that were shown before the Defendant on March 30, 2003 & a drawing in the handwriting of the Defendant]

2. Master Sergeant Moshe Levi, Badge No. 953117, Judea Investigations Office. [took the statement of the Defendant on May 12, 2003]

3. Transcript of the remand hearing of the Defendant dated May 12, 2003.

4. Ashraf Munir Zaghair, Identity No. 035660679. (detainee)

5. Rafat Rashid Abdullah Mukadi, Identity No. 907945026. (detainee)

6. Mahmoud Hamad Mahmoud Sharitah, Identity No. 900718750. (detainee) (Prosecution Case 976/02)

7. Mahmoud Taher Mahmoud Barghouti, Identity No. 859121287. (detainee) (Prosecution Case 241/03)

8. Akram Salah Ahmed A-Hasin (Barghouti), Identity No. 988965372. (detainee) (Prosecution Case 210/03).

9. Wasam Sa'id Mussa Abasi, Identity No. 033714403. (prisoner)

10. Waal Mahmoud Mohamed-Ali Qassam, Identity No. 028192755. (prisoner)

11. Mohamed Ashak Ouda, Identity No. 026291302. (prisoner)

12. Alaa A-Din Mahmoud Abasi, Identity No. 029194818. (prisoner)

13. Walid Abed Aziz Abed Hadi Anjas, Identity No. 906448105. (detainee) (Prosecution Case 889/02)

14. Mohamed Hasan Ahmed Arman, Identity No. 901056259. (detainee) (Prosecution Case 888/02)

15. Mohamed Waal Mohamed Daghlas, 905167375. (prisoner) (Prosecution Case 846/01)

16. Ahlam Aref Ahmed Tamimi, Jordanian Passport G052933. (detainee) (Prosecution Case 815/01)

[Stamp] P7: 68

17. Bilal Ya'akub Hamad (Utman) Barghouti, Identity No. 902826262. (prisoner) (Prosecution Case 344/04)

18. Ahmed Taleb Mustafa Barghouti, Identity No. 994466860. (detainee) (Prosecution Case 444/02)

19. Murad Khalil Abed Hak Amira, Identity No. 980743066. (detainee) (Prosecution Case 946/02)

The list of technical witnesses from the detailed following incident cases will be delivered to the Prosecution if necessary, during the trial:

1. 6554/01 Zion

2. 6891/01 Jerusalem Special Duties Department

3. 10283/01 Zion

4. 1512/02 Moria

5. 5601/02 Rishon le Zion

6. 2881/02 Glilot

7. 3975/02 Lod

8. 9913/02 Rehovot

9. 1197/02 Shalem

10. 9638/02 Rishon le Zion

11. 19284/02 Yarkon

12. 21011/02 Yarkon

[Signature]

Michael Kotlik,     Captain
Military Prosecutor

Date: May 29, 2003
Reference: 380-03

Prosecution case 380/03            43

[Stamp] P7: 68 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as "Abdullah Barghouti Indictment."

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as "Abdullah Barghouti Indictment."

Dated: May 8, 2014

_____
Rina Ne'eman

ss.: New Jersey

On the ⸝ day of May, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
⸝ day of May, 2014


Notary Public


> **SHELLY TESSEIN**
> Notary Public
> State of New Jersey
> My Commission Expires Nov. 16, 2017
> I.D.# 2427073

קא"ש/2236ב

| צבא | הגנה | לישראל |
|---|---|---|
| בית המשפט הצבאי | תיק ביהי"מ : 338/03 | |
| בית אל | תיק תביעה : 380/03 | |
| בפני הרכב | תיק פ.א. : 6891/01 מתי"מ י-ם | |
| | 6554/01 ציון | |
| | 10283/01 ציון | |
| | 1512/02 מוריה | |
| | 9638/02 ראשל"צ | |
| | 5601/02 ראשל"צ | |
| | 2881/02 גלילות | |
| | 3975/02 לוד | |
| | 9913/02 רחובות | |
| | 1197/02 שלם | |
| | 19284/02 ירקון | |
| | 21011/02 ירקון | |
| | 1425/03 בנימין | |

## במשפט שבין התובע הצבאי - המאשים

### - נ ג ד -

עבדאללה עיאלב עבדאללה ברגותי (ג'מל) (המכונה "כאמל", "מהנדס")
ת.ז. (פיקטיבי) 030300028 (דרכון ירדני E-891198), יליד 15.10.72, תושב בית-רימא
עצור מיום 05.03.03

### - ה נ א ש ם -

## כ ת ב - א י ש ו ם

### הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

#### פרט ראשון :

**מהות העבירה:** ניסיון ליצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון
(יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מאי 2001 או בסמוך לכך, יצר כלי יריה, תחמושת
פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או
מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בית רימא או בסמוך לכך, נפגש עם אכרם צאלח אכרם אחסין
(ברגותי) וביקש מאהארון כי יכיר לו פעילים צבאיים. אכרם אחסין ביקש כי הנאשם יגיע אליו
לביתו. לאחר שהנאשם הגיע לביתו של אכרם אחסין, האהרון מסר לידי הנאשם מטען חבלה.
הנאשם לקח את המטען עמו ובסופרמרקט של הנאשם בבית רימא פירק את מטען החבלה.
הנאשם ניסה להצית את חומר הנפץ שהוציא ממטען החבלה ונכח לדעת כי מדובר בחומר נפץ
טוב. הנאשם יצר מנגנון הפעלה למטען חבלה הנ"ל משעון מעורר, אך לא הצליח להפעיל את
המטען הנ"ל באמצעות מנגנון ההפעלה הנ"ל.

<u>פרט שני:</u>

<u>מהות העבירה:</u> חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מחודש מאי 2001 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך תקופת האמורה, היה חבר בי"גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, שהוא התאחדות בלתי מותרת.
הנאשם, במסגרת פעילותו בזרוע הצבאית של ארגון החמאס, היה אחראי על ייצור מטעני חבלה ואימון אנשים אחרים בייצור מטעני חבלה. לאור "הצלחתו" בתפקיד האמור הנאשם "זכה" לכינוי "המנהנדיס".
בחודש מאי 2001, בבית רימא או בסמוך לכך, הנאשם פנה אל בלאל יעקוב אחמד ברגותי (עותמאן), פעיל צבאי בארגון החמאס, וביקש כי האחרון יצרף את הנאשם לשורות הזרוע הצבאית של הארגון. הנאשם מסר לבלאל ברגותי כי יכול לייצר מטעני חבלה עבור ארגון החמאס. בלאל ברגותי חפציש את הנאשם בשכם עם אימון חלאווה, פעיל צבאי בכיר בארגון החמאס, אשר גייס את הנאשם לי"גדודי עז א-דין אל קסאם".
בסוף שנת 2001, ברמאללה או בסמוך לכך, הנאשם נפגש עם אבראהים ג'מיל ע/ע/אני אחמד, המכונה "צלאח ג'" או "השטיח", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה. הנאשם הסכים להצעתו של אבראהים אחמד לפעול תחת פיקודו של האחרון ולייצר מטעני חבלה לצורך ביצוע פיגועים נגד המטרות הישראליות. אבראהים אחמד העניק לנאשם כינוי פיי"עי "אבמאלי".
בהמשך, הנאשם פעל כפי שסוכם בינו לבין אבראהים אחמד.
במהלך פעילותו של הנאשם תחת פיקודו של אבראהים אחמד, הנאשם עמד בקשר עם הנ"ל באמצעות האישגרים, אשר הועברו על-ידי סיד ע/ברים חדר שייך-קאסס, המכונה "צלאח 2". בתמורה לפעילותו בארגון החמאס, הנאשם קיבל סיוע כספי מאבראהים אחמד, אשר הועבר לנאשם על-ידי "צלאח 2". סך הכל, הנאשם קיבל מאבראהים אחמד כספים בסכום של 117,000 דולר ארה"ב.
כמו כן, הנאשם קיבל סיוע כספי בסך 500 דולר ארה"ב מידי מרואן ברגותי, ראש "התנזים" של הפתח"ח.


<u>פרט שלישי:</u>

<u>מהות העבירה:</u> אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך החודשים מאי - יוני 2001 או בסמוך לכך, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות בפעולות צבאיות, דהיינו:
הנאשם הנ"ל, במהלך תקופה האמורה, בשכם או בסמוך לכך, ב-3 הזדמנויות שונות, נפגש עם אימן חלאווה, פעיל צבאי בכיר בארגון החמאס.
במהלך המפגשים הנ"ל, אימן חלאווה לימד את הנאשם לייצר חומר נפץ "אום אלעבד" (TATP), מטעני חבלה, מנגנוני הפעלה למטעני חבלה (כולל מנגנונים אלחוטיים), רימוני-יד וחגורות נפץ. אימן חלאווה לימד את הנאשם לייצר רעל מתפוחי אדמה, אשר אותו מכניסים אל מטעני חבלה על מנת להפכם למטעני חבלה כימיים.
בסוף כל אחד מהאימונים הנ"ל, הנאשם קיבל מאימן חלאווה דף, עליו היו רשומים הוראות לייצור מטעני חבלה, אותם למד הנאשם לייצר.

2

<u>פרט רביעי:</u>

<u>מהות העבירה:</u> קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 67א(ד) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בחודש דצמבר 2000 או בסמוך לכך, קשר עם אדם אחר לכפות אדם בכוח או באיומים או לפתותו באמצעות תרמית ללכת מן המקום שהוא נמצא בו, וזאת כדי לסחוט או לאיים, דהיינו:
הנאשם הנ״ל, במועד האמור, קשר עם אריימן חלאווה, מפקדו של הנאשם בארגון החמאס, להשתתף בחטיפת חייל חיל״ל צה״ל. על הנאשם הוטל להחזיק דירה, אשר בה יוחזקו חיילי צה״יל לאחר חטיפתם על-ידי פעילי ארגון החמאס.
במסגרת ההכנות לקראת החטיפה, הנאשם הכין חדר בבית-רימא לצורך החזקתם של חיילי צה״ל החטופים.

<u>פרט חמישי:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בחודש יוני 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בשכם או בסמוך לכך, קיבל מידי איימן חלאווה, פעיל צבאי בכיר בארגון החמאס, 15 ק״ג של חומר נפץ מסוג ״אום אלעבד״ (TATP) ואקדח 9 מ״מ עם מחסנית ו-14 כדורים. הנאשם העביר את חומר הנפץ ואת האקדח לבית רימא והסתירם שם.
לאחר כשבוע, איימן חלאווה העביר אל הנאשם 20 ליטר של מי חמצן, אשר משמשים לייצור חומר נפץ מסוג ״אום אלעבד״ (TATP). גם את מי החמצן הנ״ל, הנאשם הסתיר בבית רימא.

<u>פרט שישי:</u>

<u>מהות העבירה:</u> ייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ייצר כלי יריה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בבית רימא או בסמוך לכך, במוסתן אשר אותו הוא שכר, הקים מעבדה לייצור חומרי נפץ ומטעני חבלה.
הנאשם העביר למעבדה הנ״ל 15 ק״ג של חומר נפץ מסוג ״אום אלעבד״ (TATP), 20 ליטר של מי חמצן וכן מספר מנגנונים אלחוטיים להפעלת מטעני החבלה.
במעבדת החבלה הנ״ל הנאשם ייצר שני מטעני חבלה המוסווים לאבנים.
את מטע חבלה הראשון הנאשם העביר לידי איימן חלאווה, פעיל צבאי בכיר בארגון החמאס, דרך נקודת משולש בסלפית. ביחד עם מטעני החבלה הנ״ל, הנאשם העביר דף עם הנחיות להפעלת מטעני החבלה הנ״ל.
את מטע החבלה השני הנאשם העביר באומו אישי לבלאל יעקוב ברנותי, פעיל צבאי בכיר בארגון החמאס.

3

<u>פרט שביעי :</u>

<u>מהות העבירה:</u> מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעבר עבירתו על תחיקת הביטחון או עסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מוחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו :
הנאשם הנ"ל, במועד האמור, בביתו בבית רימא או בסמוך לכך, במשך לילה אחד, הסתיר את ראמי סלימאן, אשר היה מבוקש לכוחות הביטחון הישראליים. הנאשם שוחח עם ראמי סלימאן והסכימבור כי האחרון היה זה, אשר קיבל את מטען החבלה המוסווה לאבן, המתוארו בפרט האישום החמישי.
בבוקר, הנאשם חסיע את המבוקש הנ"ל לסלפית.

<u>פרט שמיני :</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במועד האמור בפרט האישום הקודם או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, בבית רימא או בסמוך לכך, מסר לראמי סלימאן, האמור בפרט האישום הקודם, את אקדח 14 יחד עם 150 כדורים. בתמורה, הנאשם קיבל מהאדם הנ"ל אקדח 7.

<u>פרט תשיעי :</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.
<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו :
הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, נפגש עם אימן חלאווה, פעיל צבאי בכיר בארגון החמאס, שהוא התאחדות בלתי מותרת. אימן חלאווה מסר לנאשם סכום של 100 דולר ארה"ב. על-פי בקשתו של אימן חלאווה, הנאשם העביר את הכסף הנ"ל לידי המבוקש המתוארו בפרט האישום השביעי.

<u>פרט עשירי :</u> (פ.א. 6554/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר אחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.07.01 או במועד הסמוך לכך, ניסה בכוונה לגרום למותו של אחר, דהיינו :

1. בתחילת חודש יולי 2001, בשכם או בסמוך לכך, הנאשם נפגש עם אימן חלאווה, פעיל צבאי בכיר בארגון החמאס. אימן חלאווה מסר לנאשם כי יש לו אדם המוכן לבצע פיגוע התאבדות בתוך ישראל.

2. על-פי בקשתו של אימן חלאווה, הנאשם פנה אל בלאל יעקוב ברנוטי (עותמאן), פעיל צבאי בכיר בארגון החמאס, וביקש מהאחרון למצוא אדם אשר יוכל להכניס מחבל מתאבד אל תוך

4

מדינת ישראל על מנת שהאחרון יבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בלאל ברגותי גייס למטרה האמורה את מחמד ואל מחמד דגלס. מחמד דגלס גייס למטרה האמורה את אחלאם עארף אחמד תמימי, סטודנטית באוניברסיטת ביר זית, פעילה ב"גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס.

4. לאחר שהנאשם ריווה לאימונו על גיוס האנשים הנ"ל, אימן חלאוה ביקש כי קודם ימסור הנאשם לידי האנשים הנ"ל מטען חבלה קטן, וזאת על שינסה תחילה לבצע פיגוע בישראל באמצעות מטען חבלה קטן, לפני שניתן יהיה לסמוך עליהם ולמסור להם את המחבל המתאבד.

5. יום למחרת, ברמאללה או בסמוך לכך, הנאשם קיבל מטען חבלה קטן, אשר נשלח אליו על-ידי אימן חלאווה משכב באמצעות שליח.

6. ביום 27.07.01, אחלאם תמימי ערכה סיור בירושלים, אשר אותה הכירה היטב, ביחד עם אחיינה, פרבי מוניר מחמוד תמימי, על מנת לאתר מקום שבו יונח מטען חבלה. במהלך הסיור ביקרה אחלאם תמימי בחנות הסופרמרקט "יקו אופי" הנמצא בבניין "המשביר לצרכן" ברחוב קינג גיורג'. למחרת היום, מחמד דגלס הגיע באוניברסיטת ביר זית עם אחלאם תמימי והאחרונה הודיעה לו כי איתרה מקום בירושלים לביצוע פיגוע תופת באמצעות מטען חבלה.

7. הדיווח הנ"ל הועבר באמצעות בלאל ברגותי אל הנאשם. כמו כן, בלאל ברגותי המליץ לנאשם כי מטען החבלה יוסתר בתוך פחית מיץ.

8. בעקבות האמור, הנאשם הכניס את מטען החבלה הנ"ל אל תוך פחית בירה והרכיב מנגנון הפעלה. הנאשם מסר את מטען החבלה הנ"ל לידי בלאל ברגותי על מנת שהאחרון ימסור אותו לידי האנשים אותם גייס, וזאת על מנת שיבצעו באמצעותו פיגוע בכוונה לגרום למותם של אנשים רבים ככל הניתן.

9. בלאל ברגותי מסר את מטען החבלה הנ"ל למחמד דגלס והאחרון, ביום 30.07.01, מסר אותו לידי אחלאם תמימי.

10. באותו היום, בסביבות השעה 11:45, אחלאם תמימי הגיעה לחנות הסופרמרקט "יקו אופי" בירושלים, המתוארת לעיל, כשבתיקה נמצא מטען חבלה האמור אותו קיבלה מה נאשם.

11. אחלאם תמימי הניחה את פחית הבירה שבתוכה הוסתר מטען חבלה הנ"ל בודף של פחיות, בקדמת המדף בחנות הסופרמרקט הנ"ל, וזאת על מנת שכשמטען החבלה יתפוצץ הוא יגרום למותם של האנשים שיהיו בקרבת המקום. אחלאם תמימי הפעילה את מטען החבלה האמור ועזבה את חנות הנ"ל.

12. בסביבות השעה 13:10, באותו היום, מטען החבלה המתואר לעיל התפוצץ בחנות הסופרמרקט האמורה. כתוצאה מפיצוץ מטען החבלה נגרם רב לרכוש בחנות הנ"ל, ורק בגס איש לא נפגע.

פרט אחד-עשר:  (פ.א. 6554/01 ציון)

מהות העבירה: היזק בזדון לרכוש, עבירה לפי סעיף 35ג' לצו ובדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14א(1) לצו בדבר ככלי האחריות לעבירות (יהודה והשומרון (מסי 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור ותן מחוצה לו, ביום 30.07.01 או בסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם נזק כבד לחנות הסופרמרקט "יקו אופי" הנמצא בבניין "המשביר לצרכן" ברחוב קינג גיורג', אשר בו הופעל מטען חבלה, כפי שתואר בפרט האישום הקודם.

5

<u>פרט שנים-עשר</u>:  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, הן באיזור ותן מוחזב לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

1.  לאחר ביצוע הפיגוע בסופרמרקט בירושלים, המתואר בפרט האישום העשירי, הנאשם יצר קשר עם איימן חלאווה, פעיל צבאי בכיר בארגון החמאס, והתבקש לתכנן האמור בפרט האישום העשירי, ביקש כי איימן חלאווה יעביר לנאשם מטען חבלה גדול ואת המחבל המתאבד לצורך ההוצאה לפועל של פיגוע התאבדות המתוכנן.

2.  בתחילת חודש אוגוסט 2001, ברמאללה או בסמוך לכך, הנאשם קיבל מאיימן חלאווה, באמצעות שליח, מטען חבלה גדול, אשר היה מורכב משני בקבוקי שמפו מלאים בחומר נפץ.

3.  על-פי בקשתו של בלאל יעקוב ברנותי, הנאשם הכניס את מטען החבלה הנ"ל אל תוך גיטרה, אותה הביא בלאל ברנותי. בנוסף למטען חבלה הנ"ל, הנאשם הכניס אל תוך הגיטרה הנ"ל שתי שקיות ניילון מלאות בחומר נפץ. כמו כן, הנאשם הדביק בכל הגיטרה ברגים באמצעות דבק. את הפתחה של הגיטרה הנאשם סגר באמצעות וכוכית כך שלא ניתן יהיה לראות מה יש בתוכה. אל מטען החבלה הנ"ל, הנאשם חיבר מנגנון הפעלה.

4.  הנאשם הכניס את הגיטרה הנ"ל אל תוך נרתיק גיטרה שחור. הנאשם הוציא חוט עם כפתור הפעלה של מטען החבלה אל מחוץ לנרתיק, כך שניתן יהיה להפעיל את מטען החבלה בלי לפתוח את הנרתיק של הגיטרה.

5.  הנאשם דיווח אודות הכנת מטען החבלה אל איימן חלאווה וביקש מהאחרון כי ישלח אליו את המחבל המתאבד.

6.  לאחר מספר ימים המחבל המתאבד עד א-דין שהיל אחמד מצרי (להן: המחבל המתאבד), אשר נשלח על-ידי איימן חלאווה הגיע לרמאללה. בלאל ברנותי פגש את המחבל המתאבד וביתה עם מחמד ואול מחמד דגלס הלין אותו ברמאללה.

7.  הנאשם העביר את הגיטרה הממולכדת הנ"ל לידי בלאל ברנותי על מנת שהאחרון ימסור אותה לידי המחבל המתאבד וזאת על מנת שהאחרון יבצע באמצעותה פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל היותו.

8.  ביום 08.08.2001, על-פי הוראתו של מחמד ואול מחמד דגלס (האמור בפרט האישום העשירי), נסעע אחלאם מג'רף אחמד תמימי (האמורה בפרט האישום העשירי) לירושלים על מנת לאתר מקום שבו יבוצע פיגוע התופת, אשר אותו תכנן הנאשם ביחד עם חבריו הנ"ל ואשר לצורך הוצאתו לפועל גויסו מחמד דגלס ואחלאם תמימי הנ"ל. אחלאם תמימי הבחינה כי אמונ ישנה נוכחות גדולה של כוחות ביטחון בירושלים, אך אף אחד לא בדק אותה כי היא לבשה גופיה קצרה מתוך ניסיון להיראות כיהודיה. אחלאם תמימי הגיעה למסקנה כי ניתן לצאת לצאת מרמאללה ולבצע פיגוע במרכז ירוש לים.

9.  באותו היום, בלאל ברנותי הדריך את המחבל המתאבד איך מפעילים את מטען החבלה הנ"ל, אשר יוצר על-יד י הנאשם.

10. ביום 09.08.2001, מחמד דגלס הפגיש את אחלאם תמימי עם המחבל המתאבד, אשר נסע את הגיטרה הממולכדת. המחבל המתאבד התפשר לקראת ביצוע הפיגוע המתוכנן ולבש בגדים, אשר היו אמורים לגרום לו להיראות כיהודי. לאחר מכן, אחלאם תמימי והמחבל המתאבד יצאו לביצוע הפיגוע המתוכנן.

11. לאחר שאחלאם תמימי והמחבל המתאבד נכנסו לירושלים, אחלאם תמימי הורתה למחבל המתאבד לשאת את הגיטרה שהיתה בתוך נרתיק שחור, המתואר לעיל, על הגב על מנת לא

6

רה"ז 383/03

P 7: 34

לעורר חשדם של כוחות הביטחון הישראליים. אחלאם תמימי אף הורידה את הניקט שלבושה ונותרה בגו פיה קצרה.

.12    אחלאם תמימי הובילה את המחבל המתאבד לצומת הרחובות יפו וקינג ג'ורג' בירושלים, שהוא צומת מרכזי והומה אדם. אחלאם תמימי תדרכה את המחבל המתאבד להפעיל את מטען החבלה במרכז הצומת האמורה כשאנשים רבים חוצים אותן וכך לפגוע בכמות גדולה ככל הניתן של האזרחים ונוטעי המכוניות העומדות ברמזור ולגרום למותם. אחלאם תמימי ציינה בפני המחבל המתאבד כי הינו ראשי לבחור גם במקום אחר לביצוע הפיגוע המתוכנן, אולם זה צריך להיות ברחוב קינג ג'ורג' שהוא מלא מלא אנשים.

.13    אחלאם תמימי השאירה את המחבל המתאבד במקום האמור ופנתה לכיוון שער שכם של העיר העתיקה על מנת לחזור לרמא' ללה.

.14    בסמוך לשעה 13:55, המחבל המתאבד, עז א-דין שהיל אחמד' מצרי, נכנס למסעדה "סבארו" הנמצאת בפינת הרחובות יפו וקינג ג'ורג', אשר היתה הומת אדם בשעה זו. שם המחבל המתאבד הפעיל את מטען החבלה, אותו הכין הנאשם כפי שתואר לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל ת.אפשר.

.15    כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו חמישה-עשר בני אדם, כפי שיתואר בפרטי האישום הבאים.

.16    כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

.17    כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לרכוש, הן למסעדה "סבארו", הן למכוניות ומבנים שהיו בסמוך.

.18    במעשיו, המתוארים לעיל, גרם הנאשם בכוונה למותה של פרידה מנדלסון ז"ל, בת 62 במותה, אשר נהרגה כתוצאה מהתפוצצות מטען החבלה כאמור לע'יל.

**פרט שלושה-עשר:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותה של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרטי האישום השנים-עשר, גרם בכוונה למותה של לאלי שימשיאשוילי-מסנניסך ז"ל, בת 33 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

פרט ארבעה-עשר: (פ.א. 6891/01 מת"מ י-ם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון [יהודה והשומרון] (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה [יהודה והשומרון] (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של תמר שימשיאשוילי-מסנגיסר ז"ל, בת 8 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.


פרט חמישה-עשר: (פ.א. 6891/01 מת"מ י-ם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון [יהודה והשומרון] (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה [יהודה והשומרון] (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של תהילה מעוז ז"ל, בת 20 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.


פרט שישה-עשר: (פ.א. 6891/01 מת"מ י-ם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון [יהודה והשומרון] (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה [יהודה והשומרון] (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של מיכל רזיאל ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.


פרט שבעה-עשר: (פ.א. 6891/01 מת"מ י-ם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון [יהודה והשומרון] (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה [יהודה והשומרון] (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של מלכה רוט ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט שמונה-עשר:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **יוכבד
ששון** ז"ל, בת 10 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה
במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום
השנים-עשר.

**פרט תשעה-עשר:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **מרדכי
רפאל סחיוסחורדדר** ז"ל, בן 44 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם
מטען החבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט
האישום השנים-עשר.

**פרט עשרים:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **צירה
סחיוסחורדדר** ז"ל, בת 41 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען
החבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום
השנים-עשר.

**פרט עשרים ואחד:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **רעיה
סחיוסחורדדר** ז"ל, בת 14 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען
החבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום
השנים-עשר.




<u>פרט עשרים ושניים:</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של <b>אברהם יצחק סחייוסחודדר</b> ז"ל, בן 4 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט עשרים ושלושה:</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>חמדה סחייוסחודדר</b> ז"ל, בת שנתיים במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט עשרים וארבעה:</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>ג'ודית ליליאן גרינבוים</b> ז"ל, בת 31 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט עשרים וחמישה:</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של <b>גיורא בלאש</b> ז"ל, בן 69 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט עשרים ושישה:</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של צבי גולומבק ז"ל, בן 26 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען התבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.


<u>פרט עשרים ושבעה:</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען התבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר כתוצאה מהתפוצצות המחבל המתאבד עם מטען התבלה נפצעו יותר מ-127 בני אדם שהיו באיזור מקום ההתפוצצות.


<u>פרט עשרים ושמונה:</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או בסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרטי האישום השנים-עשר, במקום האמור בפרט האישום השנים-עשר, במעשיו המתוארים בפרטי האישום השנים-עשר, גרם נזק כבד למסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, אשר בו הופעל מטען התבלה, כפי שתואר בפרט האישום השנים-עשר, וכן לבניינים הסמוכים ולכלי הרכב שעברו במקום בזמן הפיצוץ.


<u>פרט עשרים ותשעה:</u>

<u>מהות העבירה:</u> עבירות ברשיונות ומסמכים שהוצאו על-פי תחיקת הביטחון, עבירה לפי סעיף 60(ג) ו-(ז) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מהמחצית השניה של שנת 2001 ועד ליום מעצרו או בסמוך לכך, שינה או הניח לאחר לשנות כל מסמך שהוצא על פי תחיקת הביטחון והחזיק ברשותו מסמך שהוצא על פי תחיקת הביטחון שאינו ערוך על שמו, מתוך כוונה להטעות, דהיינו:
הנאשם הנ"ל, במחצית השניה של שנת 2001, ברמאללה או בסמוך לכך, קיבל מידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", שתי תעודות זהות - האחת על שמו של ערפאת טאהר ברנוטי, והשניה על שמו של אשרף אבו אלחאמד. בשתי תעודות הזהות הנ"ל הוכנסו תמונותיו של הנאשם.
במהלך התקופה האמורה לעיל, הנאשם עשה שימוש בתעודת הזהות המזויפת על שמו של ערפאת טאהר ברנוטי בעת שעבר בדיקות על-ידי חיילי צה"ל ברמאללה ובסמוך אליה, וזאת מתוך כוונה להטעות את חיילי צה"ל.

380/03 ת.ח

P 7: 38

<u>פרט שלושים:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במחצית השנייה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חלפן על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, שוחח עם אברהים ג'מיל ע/עאבני חמוד, המכונה "צלאח ג'" או "חיצ'יח", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה. אברהים חמוד ביקש כי הנאשם ירכוש עבורו תמיק עוזי. הנאשם פנה אל אחמד טאלב מוצטפא ברוותי (המכונה "אל פראנסיי"), אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש לרכוש ממנו תמ"ק עוזי. אחמד ברוותי הפנים עם הנאשם עם מהנד אבו חלאווה, פעיל צבאי בכיר ב"גדודי חללי אלאקצא", והנאשם רכש מידי האחרון תמ"ק עוזי. לאחר כשבועיים, הנאשם העביר את תמ"ק עוזי הנ"ל לידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח ז'", אשר העבירו לידי אברהים חמוד.

<u>פרט שלושים ואחד:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במחצית השנייה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חלפן על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה אל אחמד טאלב מוצטפא ברוותי (המכונה "אל פראנסיי"), אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש לרכוש ממנו תמ"ק MP-5. אחמד ברוותי הפנים את הנאשם עם מהנד אבו חלאווה, פעיל צבאי בכיר ב"גדודי חללי אלאקצא", והנאשם רכש מידי האחרון תמ"ק MP-5.

<u>פרט שלושים ושניים:</u>

<u>מהות העבירה:</u> החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל ממועד האמור בפרט האישום הקודם ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, מצאה, רימון יד או חפץ נפיץ או מצביר, כלי או חפץ או דבר המותכן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק בתמ"ק MP-5, תחמושת בפרט האישום הקודם, וכן אקדח.

הנאשם החזיק בכלי הנשק הנ"ל ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.

<u>פרט שלושים ושלושה:</u>

<u>מהות העבירה:</u> יצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מהמחצית השנייה של שנת 2001 ועד ליום מעצרו, יצר כלי-יריה, תחמושת, מצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה ובסמוך אליה, הקים מספר מעבדות לייצור חומרי נפץ ומטעני חבלה. הנאשם נהג לחלץ/ף את המיקום של המעבדה הנ"ל כל כמה חודשים וזאת על מנת שלא תיחשף על-ידי כוחות הביטחון הישראליים.

אל המעבדות הנ"ל, הנאשם וחבריו נהגו לחעביר חומרים כימיים שונים המשמשים לייצור חומרי נפץ. חומרי הנפץ הנ"ל נרכשו ע/ל-ידי הנאשם עצמו, או על-ידי חבריו לארגון החמאס. חומרי הנפץ הנ"ל נרכשו בכספים של ארגון החמאס.

12

הנאשם ייצר מהחומרים הכימיים הנ"ל עשרות קילוגרמים של חומר נפץ, בעיקר מהסוג "אום
אלפבד" (TATP). מחומרי הנפץ, אותם ייצר, הנאשם הכין מספר רב של מטעני חבלה מסוגים
שונים, וזאת בנוסף למטעני החבלה אותם כפי שתוארו בפרטי האישום הקודמים וכפי שיתואר
בפרטי האישום הבאים.

הנאשם ייצר את מטעני החבלה הנ"ל במטרה שפעילי ארגון החמאס יבצעו באמצעותם פיגועים
נגד המטרות הישראליות. הנאשם תדרך את פעילי ארגון החמאס איך להפעיל את מטעני החבלה
הנ"ל.

בנוסף לאמור לעיל, הנאשם ניסה לייצר רימוני-יד ומטען וכן תכנן להרכיב מטען חבלה על רכב
צעצוע המופעל באמצעות שלט רחוק.

במהלך התקופה האמורה, הנאשם אף קיבל הוראות לייצור טילי "קסאם", אך החליט כי אין
ביכולתו לייצר את הטילים.

## פרט שלושים וארבעה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, התאמן,
אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים,
דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, לימד את סיד ע/כרים חדר שייך-קאסם,
המכונה "צלאח 2", פעיל בארגון החמאס, אשר שימש כאיש קשר בין הנאשם לבין מפקדו בארגון
החמאס, לייצר חומרי נפץ ומטעני חבלה.

## פרט שלושים וחמישה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001 או בסמוך לכך, התאמן, אימן או
אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו :
הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון
צבאי למחמד רעמאן חסן אחמד רעמאן (מכונה "אבו מועאז"), פעיל צבאי בארגון החמאס.
במהלך האימון האמור הנאשם לימד את מחמד רעמאן לייצר חומר נפץ תנקבא "אום אלעבד"
(TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנון הפעלה מופעלת חבלה
המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.

בסוף האימון הנאשם העביר למחמד רעמאן תיק עם חומרים שונים המשמשים לייצור חומרי
הנפץ ומטעני החבלה וכן דף עם הוראות לייצורם.

החומרים לצורך האימון הצבאי הנ"ל נרכשו על-ידי אברהים ג'מיל ע/עיאני חאמד, ראש "גדודי עז
א-דין אל קסאם" באיזור רמאללה.

הנאשם הגיב את עצמו בפני מחמד רעמאן בכינוי "יהמהנדס". במהלך האימון הצבאי הנ"ל,
הנאשם ומחמד רעמאן היו רעולי פנים.

## פרט שלושים ושישה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, כיומיים לאחר המועד המוער האמור בפרט
האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים,
תנועות או מערכות פעולה צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון
צבאי לשני אנשים, אשר הובאו לדירה על-ידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2",
פעיל צבאי בארגון החמאס.

ת.ת. 03/093

במהלך האימון האמור הנאשם לימד את שני האנשים חניי"ל לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.

בסוף האימון הנאשם העביר לשני האנשים חניי"ל שני תיקים עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.

### פרט שלושים ושבעה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם חניי"ל, באיזור, בחודש נובמבר 2001, בסמוך לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו :
הנאשם חניי"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי למוראד חליל ע/אחק עמירה, אשר הובא לדירה על-ידי חד סיד ש/עברים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

במהלך האימון האמור הנאשם לימד את מוראד עמירה לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי. כמו כן, הנאשם העביר למוראד עמירה אימון תיאורטי ומעשי בפיריון והרכבה של תמ"ק עוזי ואקדח 14.

בסוף האימון הנאשם העביר למוראד עמירה תיק עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.

בסוף האימון האמור, הנאשם הגניע למוראד עמירה כינוי "עבדאללה 5", וזאת מכיוון שזה היה האדם החמישי, אותו לימד לייצר את חומרי הנפץ ומטעני החבלה.

### פרט שלושים ושמונה: (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה ושומרון) (מס' 378), תשל"ל-1970 וסעיף 14א(א) לצו בדבר כללי האחריות לעבירה (יהודה ושומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם חניי"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

1. הנאשם חניי"ל, במהלך חודש נובמבר 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, ייצר אימון נפץ מסוג "אום אלעבד" (TATP).

2. מחומר הנפץ חניי"ל, הנאשם ייצר שלושה מטעני חבלה. את מטען החבלה הראשון הנאשם הכניס אל תוך מארז מתכב. את מטען החבלה השני הנאשם הכניס אל תוך תיק בד שחור. את מטען החבלה השלישי הנאשם הכין בצורה של חגורת נפץ. בנוסף לחומר הנפץ הנאשם הכניס למטעני החבלה רסס, המורכב ממסמרים ואומים. בשלושת מטעני החבלה חניי"ל הנאשם הרכיב את מנגנוני ההפעלה. כאשר מטעני החבלה שהורכבו בחגורת הנפץ ובמארז מתכת הופעלו על-ידי לחיצה על מפסק ההפעלה ואילו מטען החבלה שהוסתר בתוך תיק בד שחור הופעל באמצעות שעון עצר. בשלושת מטעני החבלה חניי"ל הנאשם הוסיף אומים ומסמרים על מנת להגביר את עצמת הפגיעה של מטעני החבלה. כמו כן, הנאשם הכניס לשלושת מטעני החבלה חומר רעיל, על זאת על מנת להפוך את המטענים לקטלניים יותר.

3. הנאשם ייצר את מטעני החבלה חניי"ל לבקשתו של סיד עיכרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס. "צלאח 2" פנה אל הנאשם על-פי בקשתו של אברהים ג'מיל ע/ע/אני חמוד, המכונה "צלאח 1" או "ישיחין", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

4. הנאשם מסר את שלושת מטעני החבלה הנ"ל ל"צלאח 2" על מנת שהאחרון ידאג
להעבירם לפעילי ארגון החמאס, אשר יבצעו באמצעות מטעני החבלה הלל פיגועי תופת
בכוונה לגרום למותם של אנשים רבים ככל הניתן.

5. "צלאח 2" ואברהים חאמד, בעצמם או באמצעות אנשים אחרים, העבירו את מטעני
החבלה הנ"ל לידי אוסאמה מחמוד בחר ונביל מחמוד חלביה ובן הטמינו את מטען החבלה,
אשר הוסתן בתיק בד שחור, בתוך רכב מסוג אופל קדט, מ.ר. 4774987.

6. ביום 01.12.01, בסמוך לשעה 23:36, בכניסה מכיכר ציון לרחוב בן יהודה בירושלים או
בסמוך לכך, מוחבל מתאבד אוסאמה מחמוד בחר הפעיל את מטען החבלה, אשר יוצר
על-ידי הנאשם והוסתן בתוך מארב מחשב כאמור לעיל, וזאת בכוונה לגרום למותם של
אנשים רבים ככל האפשר. מטען החבלה הנ"ל התפוצץ.

7. באותו היום, בסמוך לשעה הנ"ל, בצומת הרחובות בן-יהודה - לונץ בירושלים או בסמוך
לכך (מרחק של מטרים ספורים ממקום פיצוץ המטען הראשון), מוחבל מתאבד נביל
מחמוד חלביה הפעיל את מטען החבלה, אשר יוצר על-ידי הנאשם בצורה של חגורת נפץ
כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטען החבלה
הנ"ל התפוצץ.

8. באותו היום, מספר דקות לאחר שישני המחבלים המתאבדים הנ"ל הפעילו את מטעני
חבלת הנ"ל, הופעל מטען חבלה שיזצר על-ידי הנאשם והוסתר בתוך תיק בד שחור
כאמור לעיל. מטען החבלה השלישי הופעל ברכב מסוג אופל קדט, מ.ר. 4774987, אשר
חנה ברחוב הרב קוק בסמוך לפינת רחוב יפו בירושלים (מרחק של כמה עשרות מטרים
ממקום פיצוצם של שני מטעני חבלת הנ"ל). מטען החבלה הנ"ל הופעל בכוונה לגרום
למותם של אנשים רבים ככל האפשר.

9. כתוצאה מפיצוץ שלושת מטעני החבלה הנ"ל, אשר פוצצו על-ידי כפי שתואר לעיל, נהרגו
עשרה ונפצעו כ-191 בני אדם, כפי שיפורט בפרטי האישים הבאים.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **יוסף אזרה ז"ל**, בן 18
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה במרכז ירושלים כפי שתואר לעיל.

<u>פרט שלושים ותשעה:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ו-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או בסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישים השלושים ושמונה, גרם בכוונה למותו של **אסף אביטן ז"ל**, בן 15
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים
ושמונה.

15

380/03 .ה.נ

P 7: 42

<u>פרט ארבעים:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, חן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <strong>גיא וקנין ז"ל,</strong> בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ואחד:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <strong>יוני קורנגוב ז"ל,</strong> בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושניים:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <strong>יעקב ישראל דנינו ז"ל,</strong> בן 17 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושלושה:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <strong>מיכאל דהאן ז"ל,</strong> בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים וארבעה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>גולן תורג'מן</b> ז"ל, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים וחמישה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>אדם וינשטיין</b> ז"ל, בן 14 שנה במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושישה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>משה ידיד-לוי</b> ז"ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושבעה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>ניר חפצדי</b> ז"ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושמונה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם חב"ל, הן באיזור יהודה ושומרון ובין מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט תאישום השלושים ושמונה, ניסה לגרום למותם של אזרחים רבים ככל האפשר, כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה, נפצעו 191 בני אדם.

<u>פרט ארבעים ותשעה:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור יהודה ושומרון ובין מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם נזק כבד לבתים ולבתי העסק הנמצאים באיזור הרחובות בן-יהודה, לונץ, יפו, הרב קוק ולכלי רכב אשר היו במקום, אשר בו הופעלו שלושה מטעני החבלה, כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט חמישים:</u>

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של מרואן ברגותי, ראש "התנזים" של הפתיח, ייצר שני מטעני חבלה. מרואן ברגותי ביקש מהנאשם לייצר עבורו שני מטעני חבלה על מנת לעשות בהם שימוש אם כוחות צה"ל ייכנסו לרמאללה.

<u>פרט חמישים ואחד:</u>

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ייצר שלושה מטעני חבלה, אשר היו מוסווים בקרטונים של מיץ, וכן ארבעה מטעני חבלה, אשר היו מוסווים לאבנים.
מטעני החבלה הנ"ל הועברו על-ידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2" לידי אברהים ג'מיל ע/מ'אני אחמד, המכונה "צלאח 1", שהוא ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

<u>פרט חמישים ושניים:</u>

<u>מהות העבירה:</u> סחר בצידוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בצידוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בצידוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי אחמד טאלב מוצטפא ברגותי (המכונה ״אל פראנסי״), אחד מראשי הארגון ״גדדי״ חללי אלאקצא״, רוס״ר קלצ׳ניקוב עם שתי מחסניות מלאות בכדורים וכן אקדח 14 עם מחסנית מלאה בכדורים.
הנאשם ביצע את האמור לעיל על-פי בקשתו של אחמד טאהר מחמוד ברגותי, פעיל צבאי בארגון החמאס.
לאחר רכישת כלי הנשק הנ״ל, הנאשם מסרם לידי מחמוד טאהר ברגותי הנ״ל.

<u>פרט חמישים ושלושה:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בחודש פברואר 2001 או בסמוך לכך, עשה עבודות כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהינו:
הנאשם הנ״ל, במועד האמור, נפגש ברמאללה עם אדם פלוני. הנאשם נפגש עם האדם הנ״ל על-פי בקשתו של אברהים גימל ע/ג/אני אחמד, המכונה ״צלאח 1״ או ״השיח״, ראש ״גדדי״ עז א-דין אל קסאם״, הזרוע הצבאית של ארגון החמאס, באיזור רמאללה. אברהים אחמד מסר לנאשם כי האדם הנ״ל צריך לצאת לביצוע פיגוע התאבדות ובקש כי הנאשם יבדוק אם האדם הנ״ל איתן בדעתו לבצע פיגוע התאבדות.
הנאשם נסכים ושוחח עם האדם הנ״ל. הנאשם התרשם כי האדם הנ״ל איתן בדעתו וזאת לאור העובדה כי האדם הנ״ל מבקש, באמצעות ביצוע פיגוע ההתאבדות, לטהר את שם אביו, שנחשד בשיתוף הפעולה עם כוחות הביטחון הישראליים.
הנאשם מסר את מסקנותיו הנ״ל לאברהים אחמד, אשר השיב כי לא יוצא את האדם הנ״ל לביצוע פיגוע התאבדות, שכן אינו מוכן שאדם יבצע פיגוע התאבדות רק על מנת לטהר את שמו.

<u>פרט חמישים וארבעה:  (פ.א. 1512/02 מוריה)</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשי״ה-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהינו:

1.  בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם האחראי עליו בארגון החמאס, אברהים גימל ע/ג/אני אחמד, המכונה ״צלאח 1״ או ״השיח״. אברהים אחמד ביקש כי הנאשם ייצר חגורת נפץ עבור מחבל מתאבד, על מנת שהאחרון יבצע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל הניתן.

2.  הנאשם נסכים לבקשתו של אברהים אחמד. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ״ל הורכבה מחומרה מכד דמוי עור, עלי הודבקו ברגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ״ל.

3.  לאחר שהנאשם סיים להכין את חגורת הנפץ הנ״ל, הנאשם העבירה באמצעות סיד ע/כריס חדר שייך-קאסם, המכונה ״צלאח 2״, אל אברהים אחמד, וזאת לצורך החוצאת לפועל של פיגוע ההתאבדות המתוכנן.

19

ת.ה. 382/03

P 7: 46

4. אברהים תאמד פנה גם אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאז") וביקש כי האחרון יפנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", ויבקש ממנו לאתר מקום מתאים לביצוע פיגוע ההתאבדות.

5. מחמד ערמאן נפגש עם "אבו סעדי" וביקש לאתר מקום בישראל המתאים לביצוע פיגוע התאבדות. לאחר מספר ימים "אבו סעדי" פנה אל מחמד ערמאן ומסר כי איתר מקום המתאים לביצוע פיגוע ההתאבדות המתוכנן והוא - בית-קפה "מומנטו", הנמצא ברחוב עזה בירושלים. "אבו סעדי", ביחד עם וסאם סעיד מוסא עבאסי ומחמד אסחאק עודה, ביצע סיורים באיזור בית-קפה "מומנטו" לצורך תכנון פיגוע ההתאבדות. הנאשם דיווח ל"שיחי'' אודות המקום שאותר על-ידי "אבו סעדי" וחבריו.

6. ביום שבת, 09.03.02, בסביבות השעה 20:00, ברמאללה או בסמוך לכך, מחמד ערמאן נפגש עם פואד אלחוראני ועם אברהים תאמד. אברהים תאמד ופואד אלחוראני עזבו את מקום המפגש למשך כחצי שעה על מנת שפואד אלחוראני ילבש חגורת נפץ. אברהים תאמד הלביש על פואד חוראני את חגורת הנפץ, אשר הוכנה על-ידי הנאשם, כאמור לעיל, לצורך ביצוע פיגוע התאבדות.

7. לאחר מכן, מחמד ערמאן, ביחד עם וליד אנג'אס, ליוו את פואד אלחוראני, אשר נשא על גופו את חגורת הנפץ הנ''ל, לתחנת מוניית "קלנדיה'' ברמאללה והעלו את האחרון לרכב הסעונת שנסע לבית חנינא. מחמד ערמאן, וליד אנג'אס ופואד אלחוראני נסעו ביחד לבית חנינא ברכב הסעות. מחמד ערמאן וליד אנג'אס הובילו את פואד אלחוראני למקום המפגש, אשר אותו קבע הנאשם עם "אבו סעדי".

8. "אבו סעדי'' נפגש עם המחבל המתאבד, פואד אלחוראני, במקום האמור, ולאחר מכן, ביחד עם וסאם עבאסי, הסיע את המחבל המתאבד לירושלים. "אבו סעדי'' וסאם עבאסי הובילו את פואד אלחוראני לבית-קפה "מומנטו'' הנמצא ברחוב עזה בירושלים.

9. בסמוך לשעה 22:30, ביום 09.03.02 או במועד הסמוך לכך, פואד אלחוראני אשר נשא על גופו את חגורת הנפץ, אותה ייצר למטרה זו הנאשם, נכנס אל תוך בית-קפה "מומנטו'', אשר היה באותה שעה הומה אדם, והפעיל את חגורת הנפץ הנ''ל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

10. במעשיו המתוארים לעיל, הנאשם הנ''ל גרם בכוונה למותו של **אברהם רחמים ז''ל**, אשר נהרג כתוצאה מפיצוץ חגורת הנפץ בבית-קפה "מומנטו'' כפי שתואר לעיל.

<u>פרט חמישים וחמישה</u>: (פ.א. 1512/02 מוריה)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל''ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ''ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ''ל, הן באיזור וזהן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ''ל, במעשיו האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **גיר בורוכוב** ז''ל, אשר נהרג כתוצאה מפיצוץ מיטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

20

<u>פרט חמישים ושישה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **לימור בן שוהם ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושבעה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **דן אימוני ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושמונה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **דנית דנג ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ותשעה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **אורי פליקס ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.