# EXHIBIT A.452
## (4 of 4)

<u>פרט שישים:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **ברוך לרנר** ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ואחד:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **טלי אליהו** ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ושניים:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **לבנת דבש** ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ושלושה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **אוריה אוזרוב** ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

P 7: 49

<u>פרט שישים וארבעה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של <u>נתנאל כוכבי</u> ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים וחמישה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישים וארבעה, ניסה לגרום למותם של אזרחים רבים ככל
האפשר.
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה, נפצעו 65
בני אדם.

<u>פרט שישים ושישה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישים וארבעה, גרם נזק כבד לבית-קפה "מומנט" הנמצא ברחוב
עזה בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ושבעה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גריפת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :

1.   הנאשם הנ"ל, בסוף חודש מרץ - חודש אפריל 2002, ברמאללה או בסמוך לכך, נפגש עם
סיד עיכרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2.   "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ניאני ח'אמד, המכונה "צלאח 1" או "ישיחי",
מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר חגורת
נפץ ותיק נפץ לצורך ביצוע פיגוע התאבדות. הנאשם הסכים לייצר את שני מטעני החבלה



וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מחגורה שמסביבה מכ"ב חוליות, כשעל גבי כל חוליה וחוליה נמצאו מטעני חבלה, כשהמטענים מחוברים ביניהם בחוטי חשמל. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל. חגורת הנפץ הנ"ל הייתה דומה לזו שהנאשם ייצר עבור הפיגוע בבית-קפה "מומנט" בירושלים, המתואר בפרק האישום החמישים וארבעה.

4. כמו כן, הנאשם ייצר, ברמאללה או בסמוך לכך, מטען נפץ, אשר הורכב מבקבוקי שמפו מלאים בחומר נפץ, אשר הוכנסו אל תוך תיק בצבע שחור. הנאשם הכניס אל תוך התיק הנ"ל ברגים לצורך הגברת עצמת הפגיעה של מטען החבלה. הנאשם הרכיב בתיק האמור מנגנון הפעלה למטען החבלה, המורכב משעון עצר.

5. הנאשם מסר את חגורת הנפץ הנ"ל ביחד עם תיק הנפץ הנ"ל לידי "צלאח 2", על מנת שהאחרון יעבירם לידי אברהים חמד ואמד וזה יעבירם לידי המחבל המתאבד.

6. בחודש אפריל 2002 אברהים חמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מועטאז") ומסר לאחרון כי יש צורך לבצע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. אברהים חמד מסר למחמד ערמאן כי יש לו אדם שמוכן לבצע את פיגוע ההתאבדות.

7. לאחר מספר ימים, ברמאללה או בסמוך לכך, אברהים חמד הכיר למחמד ערמאן את מחמד גימיל אחמד מועמר (להלן: המחבל המתאבד), אשר היה אמור לבצע את פיגוע ההתאבדות המתוכנן. במהלך הפגישה סוכם כי לאחר מספר ימים אברהים חמד יביא את המחבל המתאבד לפגישה עם מחמד ערמאן ברמאללה והאחרון ייקח את המחבל המתאבד לביצוע פיגוע ההתאבדות המתוכנן.

8. ביום 07.05.02, מחמד ערמאן נפגש עם המחבל המתאבד ברמאללה לפי הסיכום הנ"ל. על-פי בקשתו של מחמד ערמאן, ולרוב ועיזי עהאדי אנגיאס ליווה את המחבל המתאבד מרמאללה לצפא. בצפא השניים הנ"ל נפגשו עם מחמד ערמאן ונסעו ביחד לבית ענאן. שם מחמד ערמאן מסר לידי המחבל המתאבד את חגורת הנפץ, אשר אותה ייצר הנאשם כאמור לעיל ואשר העבירה לידי מחמד ערמאן על-ידי אברהים חמד. מחמד ערמאן הלביש את חגורת הנפץ הנ"ל על גופו של המחבל המתאבד וכן נתן לאחרון תיק עם מטען חבלה נוסף, אשר גם אותו ייצר הנאשם כאמור לעיל ואשר הועבר לידי מחמד ערמאן על-ידיו אברהים חמד.

9. מחמד ערמאן הסיע וביחד ברכבו את המחבל המתאבד עם מטען החבלה הנ"ל ועם חגורת הנפץ הנ"ל מבית ענאן לבית איכסא.

10. בבית איכסא או בסמוך לכך, הנאשם והמחבל המתאבד פגשו באואל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", אשר לקח את המחבל המתאבד לביצוע הפיגוע המתוכנן.

11. באותו הערב, "אבו סעדי" ביחד עם וסאם סעדי עבאסי, הסיעו את המחבל המתאבד לראשון לציון ושם ליוו אותו עד למועדון "שפילד"-קלאבי הנמצא ברחוב סחרוב 1 באיזור התעשייה החדש, אשר אותר קודם לכן על-ידי "אבו סעדי", מחמד אסמאק עודה, וסאם עבאסי ועלאא א-דין מחמוד עבאסי כמקום מתאים לביצוע פיגוע ההתאבדות. "אבו סעדי" ווסאם עבאסי הביעו למחבל המתאבד על המועדון האמור והסבירו לו כי זה המקום שבו עליו לבצע את פיגוע ההתאבדות המתוכנן.

12. בסמוך לשעה 22:50, ביום 07.05.02 או במועד הסמוך לכך, המחבל המתאבד נכנס למועדון הנ"ל והפעיל את חגורת הנפץ ואת מטען החבלה הנוסף, אשר אותם ייצר הנאשם למטרה זו, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

13. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של **רחמים קמחי ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה כפי שתואר לעיל.



<u>פרט שישים ושמונה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של <b>רפאל חיים ז"ל</b>, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שישים ותשעה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר חוראת ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של <b>ענת טרמפורוש ז"ל</b>, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, גרם בכוונה למותו של <b>אברהם ביז ז"ל</b>, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ואחד:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, גרם בכוונה למותה של <b>אתי בלבלר ז"ל</b>, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

P 7: 51

פרט שבעים ושניים: (פ.א. 5601/02 ראשל"צ)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של יצחק בבלאר ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

פרט שבעים ושלושה: (פ.א. 5601/02 ראשל"צ)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של ישראל שיקאר ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

פרט שבעים וארבעה: (פ.א. 5601/02 ראשל"צ)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של שושנה מגמרי ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

פרט שבעים וחמישה: (פ.א. 5601/02 ראשל"צ)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של שארוק רסאן ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

ת.פ. 380/03

P 7: 52

<u>פרט שבעים ושישה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של <b>נאה חינאווי</b> ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ושבעה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של <b>ניר לובטין</b> ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ושמונה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של <b>רונית מלכה בוסלו</b> ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ותשעה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, גרם בכוונה למותה של <b>דליה מסה</b> ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

P 7: 53

<u>פרט שמונים</u>: (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, הן באיזור ותן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **פנינה הקרי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שמונים ואחד</u>: (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **עדנה כהן ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שמונים ושניים</u>: (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל האפשר. כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה, נפצעו 59 בני אדם.

<u>פרט שמונים ושלושה</u>: (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה</u>: היזק בזדון לרכוש, עבירה לפי סעיף 53. לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם נזק כבד למועדון "שפילד-קלאבי" הנמצא ברחוב סוחרוב 1 בראשון לציון וכן לכל הבניין האמור, אשר בו הופעלו מטעני החבלה, כפי שתואר בפרט האישום השישים ושבעה.

ת.ת 03/560.

P 7: 54

<u>פרט שמוונים וארבעה:</u>  (פ.א. 2881/02 גלילות)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

· <u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 23.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :

1. הנאשם הנ"ל, בחודש מאי 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/ברים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע'אני חמוד, המכונה "צלאח 1" או "שיחי", מפקד הזרוע הצבאית של ארגון חמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה אשר "ידבק" אל ברזל וזאת לצורך ביצוע פיגוע תופת. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר ניתן "להדביקו" לברזל באמצעות המגנטים, אותם הרכיב הנאשם על מטען החבלה, ואשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2" לצורך ההוצאה לפועל של פיגוע התופת המתוכנן. "צלאח 2" העביר את מטען חבלה לידי אברהים חמוד.

5. בחודש מאי 2002 אברהים חמוד נפגש עם מחמד חסן אחמד ערמאן (מכונה "אבו מועאד"), ומסר לאחרון כי ברצונו לבצע פיגוע תופת ולפוצץ מיכלית דלק, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות האמור, מחמד ערמאן נפגש עם ואאל מחמוד מחמוד-עלי קאסם, המכונה "אבו סעדי", וסיפר לו אודות תכנונו של אברהים חמוד לבצע פיגוע תופת. "אבו סעדי" אמר כי יבדוק את העניין ויראה מה ניתן לעשות.

6. לאחר מספר ימים, מחמד ערמאן נפגש שוב עם "אבו סעדי". "אבו סעדי" מסר כי הוא וחבריו איתרו מיכלית דלק הנוסעת באופן קבוע לאתר "פי גלילות".

7. ביום 22.05.02, מחמד ערמאן נפגש עם אברהים חמוד ברמאללה ודיווח לאחרון אודות מיכלית הדלק הנ"ל. אברהים חמוד ביקש להיפגש עם מחמד ערמאן בעוד מספר שעות באותו המקום.

8. לאחר מספר שעות השניים נפגשו שוב. אברהים חמוד מסר לידי מחמד ערמאן את מטען חבלה, אשר אותו ייצר הנאשם כאמור לעיל. כמו כן, אברהים חמוד מסר למחמד ערמאן מכשיר טלפון סלולרי, אשר ממנו יש להתקשר אל המכשיר המחובר למטען החבלה על מנת להפעילו.

9. מחמד ערמאן מסר את מטען החבלה הנ"ל לידי וליד ע/עזיו ע/האדי אנג'אס, אשר העבירו לצפא. מחמד ערמאן הגיע לצפא ומשם נסע במכוניתו, ביחד עם וליד אנג'אס, לבית איכסא.

10. מחמד ערמאן נפגש שם עם "אבו סעדי" וביחד עם וליד אנג'אס מסר לידי "אבו סעדי" את מטען חבלה הנ"ל עם מכשיר טלפון סלולרי המחובר אליו וכן את מכשיר הטלפון הסלולרי הנוסף.

11. בשעות הבוקר המוקדמות למחרת, יום 23.05.02, "אבו סעד" נסע לחולון ביחד עם וסאם סעדי עבאסי, כשברשותם מטען חבלה הנ"ל. בחולון, "אבו סעדי" הצמיד את מטען החבלה הנ"ל באמצעות מגנט אל חלקו הקדמי התחתון של מיכל הדלק המורכב על מיכלית דלק, מ.ר. 2622700. מיכלית הדלק הנ"ל אותרה קודם לכן כיעד לביצוע פיגוע תופת על-ידי וסאם עבאסי ועלאא א-דין מחמוד עבאסי. "אבו סעדי" המתין ברכבו עד



שהגיע נהג מיכלית הדלק ולאחר מכן נסע אחרי מיכלית הדלק הנ"ל עד לאתר "פי גלילות". לאחר שי"אבו סעדי" וידא כי מיכלית הדלק, אשר אליה חובר מטען החבלה הנ"ל, נכנסה אל תוך האתר "פי גלילות", אבו סעד הפעיל את מטען החבלה הנ"ל, אשר אותו יצר הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

12. מטען החבלה הנ"ל התפוצץ וגרם נזק כבד למיכלית הדלק הנ"ל. רק בנס איש לא נפגע.

<u>פרט שמונים וחמישה:</u>  (פ.א. 3975/02 לוד)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.06.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע/אני חאמד, המכונה "צלאח 1" או "שיח'י", מפתח הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים ג'מיל ע/ע/אני חאמד, המכונה "צלאח 1" או "שיח'י", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. אברהים חאמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאד'י") והציע לבצע פיגוע תופת באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", וביקש ממנו לבדוק אפשרות של ביצוע פיגוע תופת על פסי הרכבת בישראל. לאחר זמן מה, "אבו סעדי" פנה אל מחמד ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. מחמד ערמאן דיווח על כך לאברהים חאמד.

7. לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם אברהים חאמד, אשר מסר לו את מטען החבלה, אשר אותו יצר הנאשם כאמור לעיל.

8. ביום 29.06.02 או בסמוך לכך, מחמד ערמאן העביר את מטען החבלה הנ"ל ביחד עם מכשירי הטלפון הסלולריים לידי "אבו סעדי" והסביר לאחרון כיצד מפעילים את מטען החבלה הנ"ל.

9. בשעות הערב באותו היום, "אבו סעדי" ביחד עם וסאם סעיד עבאסי נסע ללוד והניח את מטען החבלה הנ"ל על פסי רכבת בלוד במקום שאותר קודם לכן כמתאים לביצוע הפיגוע המתוכנן על-ידי וסאם עבאסי ועלאא א-דין מחמוד עבאסי. לאחר מכן, "אבו סעדי" ווסאם עבאסי חזרו לירושלים.



10. בשעות המוקדמות של הבוקר למחרת, 30.06.02, "אבו סעד" ווסאם עבאסי נסעו ללוד. וסאם עבאסי התמקם ליד מטען חבלה שהונח כאמור לעיל על פסי הרכבת. בסמוך לשעה 07:00, ברגע שוסאם עבאסי הבחין ברכבת המתקרבת למקום האמור, הוא הודיע ל"אבו סעד", אשר הפעיל את מטען חבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. מטען החבלה הנ"ל התפוצץ.

12. כתוצאה מפיצוץ מטען החבלה הנ"ל נפצעו 4 בני אדם. כמו כן נגרם נזק לקטר הרכבת ולמסילת הברזל.


פרט שמונים ושישה: (פ.א. 9913/02 רחובות)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, תון באיזור ותן מחוצה לו, ביום 21.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותם של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים גמיל ע/עיאני ואמד, המכונה "צלאח 1" או "שיח'י", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופף בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופף בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים גמיל ע/עיאני ואמד, המכונה "צלאח 1" או "שיח'י", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. אברהים ואמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאד'") והציע לבצע פיגוע תופף נוסף באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעד", וביקש ממנו למצוא מקום לביצוע פיגוע תופף נוסף על פסי הרכבת בישראל. לאחר זמן מה, "אבו סעד" פנה אל מחמד ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. מחמד ערמאן דיווח על כך לאברהים ואמד.

7. לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם אברהים ואמד, אשר מסר לו את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל לצורך הוצאה לפועל של הפיגוע המתוכנן.

8. ביום 20.07.02, מחדם ערמאן מסר את מטען החבלה הנ"ל לוליד ע/עזיז ע/תאאדי אנג'אס וביקש מהאחרון להעבירו לצפא. לאחר מכן, מחמד ערמאן הגיע לצפא ונפגש שם עם וליד אנג'אס. משם, השניים נסעו ביחד לבית איכסא.

9. בבית איכסא, מחדם ערמאן ווליד אנג'אס העבירו את מטען החבלה הנ"ל ביחד עם מכשירי הטלפון הסלולריים לידי "אבו סעד".

ה.ת. 380-03

P 7: 56

10. באותו הלילה, "אבו סעדי", ביחד עם וסאם סעיד עבאסי ועלאא א-דין מחמוד עבאסי, נסעו
לאיזור רחובות והניחו את מטען החבלה הנ"ל על פסי הרכבת בסמוך ליציאה מרחובות,
ליד כפר גבירול, מקום שנבחר קודם לכן על-ידי "אבו סעדי" וסאם עבאסי. לאחר מכן
השלושה חזרו לירושלים.

11. למחרת, 21.07.02, בשעות הבוקר המוקדמות, "אבו סעדי" וסאם עבאסי נסעו למקום שבו
הונח מטען החבלה הנ"ל. בסמוך לשעה 07:30, "אבו סעדי" הפעיל את מטען החבלה הנ"ל
בכוונה לגרום למותם של אנשים רבים ככל האפשר, לאחר שוסאם עבאסי דיווח לו
באמצעות מכשיר טלפון סלולרי כי רכבת מגיעה למקום שבו הונח מטען החבלה.

12. מטען החבלה הנ"ל התפוצץ. כתוצאה מפיצוץ מטען החבלה נפצע אדם אחד. כמו כן, נגרם
נזק לקטר הרכבת ולמסילת הברזל.

<u>פרט שמונים ושבעה:</u>   (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יולי 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כריים חדר
שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "ישיח'",
מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען
חבלה המוסתר בתוך תיק וזאת לצורך ביצוע פיגוע תוך כוונה לגרום למותם של אנשים
רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו
לצורך ביצוע פיגוע תוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר הורכב ממיכל שמפו גדול מלא
בחומר נפץ, אשר הוסתר בתוך תיק שחור קשיח מבד (דומה לתיק "ג'יימס בונד"). כמו כן,
הנאשם מילא את התיק הנ"ל באומם לצורך הגברת עוצמת הפגיעה של הממטען. על-פי
בקשתו של "צלאח 2", הנאשם הרכיב למטען החבלה הנ"ל מנגנון הפעלה אלחוטי, כך
שמטען החבלה היה מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל וכן שלושה מיכלי שמפו נוספים, מלאים בחומר נפץ,
לידי "צלאח 2".

5. "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים ג'מיל ע/ע'אני חאמד, המכונה
"צלאח 1" או "ישיח'", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

6. אברהים חאמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מופעז'") ובקש לאתר
מקום בירושלים שבו ניתן לבצע פיגוע תוך כוונה לגרום למותם של אנשים רבים ככל
האפשר. מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, חמכונה "אבו סעדי",
ובקש מהאחרון לאתר מקום מתאים לביצוע פיגוע.

7. לאחר מספר ימים, "אבו סעדי" מסר למחמד ערמאן כי איתר מקום מתאים לביצוע פיגוע
המוני והוא האוניברסיטה העברית בירושלים, קמפוס הר-הצופים. מחמד ערמאן דיווח
אודות המקום שאותר לאברהים חאמד.

32

ת.ת 03/160

8. לצורך ביצוע פיגוע התופת המתוכנן, אברהים תאמד מסר למחדמד ערמאן את מטען החבלה, אשר אותו יצר ונשאם כאמור לעיל. מחמד ערמאן הוסיף אל מטען החבלה האמור את שלושת בקבוקי שמפו, המלאים בחומר נפץ, אותם קיבל "צלאח 2" מהנאשם.

9. לאחר מכן, מחמד ערמאן נסע ביחד עם וליד ע/עזיז ע/האדי אנג'אס לבית איכסא במטרה להעביר את מטען החבלה הנ"ל ל"אבו סעד" על מנת שאהרון ביחד עם חבריו יבצע באמצעותו את פיגוע התופת המתוכנן.

10. בבית איכסא מחמד ערמאן וליד אנג'אס נפגשו עם "אבו סעד". השניים מסרו לידי "אבו סעד" את מטען החבלה הנ"ל יחד עם שני מכשירי טלפון סלולריים, כאשר מכשיר אחד היה מחובר למטען החבלה ושימש כמנגנון הפעלה.

11. ביום 28.07.02, "אבו סעד", ביחד עם מחמד אסחאק עודה, העבירו את מטען החבלה הנ"ל לירושלים. "אבו סעד" ומחמד עודה הכניסו את מטען החבלה הנ"ל אל תוך קמפוס הר-הצופים של האוניברסיטה העברית בירושלים. מחמד עודה הכיר היטב את המקום מכיוון שעבד שם בעבר ואף עשה שימוש בכרטיס עובד, אשר עדיין נשאר ברשותו, כדי להיכנס אל תוך הקמפוס האמור. מחמד עודה הניח את מטען החבלה הנ"ל בתוך הקפיטריה הנמצאת בבניין ע"ש פרנק סינטורה בקמפוס הנ"ל. לאחר מכן, "אבו סעד" ומחמד עודה ניסו להפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, אך מטען החבלה לא התפוצץ עקב תקלה שבו. לאחר מכן, מחמד עודה חזר אל המקום שבו הניח את מטען החבלה הנ"ל, אסף את מטען החבלה וביחד עם "אבו סעד" נסע לבית איכסא.

12. לאחר מכן, ביום 29.07.02, מחמד ערמאן וליד אנג'אס נפגשו שוב עם "אבו סעד". "אבו סעד" החזיר למחמד ערמאן את מטען החבלה הנ"ל. "אבו סעד" מסר כי הוא וחבריו הניחו את מטען החבלה הנ"ל באוניברסיטה העברית בירושלים, בקמפוס הר-הצופים, בכוונה לפוצצו ולגרום למותם של אנשים רבים ככל האפשר, אך מטען החבלה הנ"ל לא התפוצץ. מחמד ערמאן וליד אנג'אס העבירו את מטען החבלה הנ"ל לחורבתא בני חארס.

13. מחמד ערמאן תיקן את מטען החבלה הנ"ל, לאחר שבדק אותו וגילה כי יש בעיה עם חוטי החשמל.

14. יום למחרת, ביום 30.07.02, מחמד ערמאן נפגש שוב עם וליד אנג'אס וביחד עם האחרון העביר את מטען החבלה הנ"ל לבית איכסא.

15. בבית איכסא, מחמד ערמאן וליד אנג'אס נפגשו עם "אבו סעד". מחמד ערמאן מסר לידי "אבו סעד" את מטען החבלה הנ"ל.

16. באותו הלילה, "אבו סעד" ומחמד אסחאק עודה לקחו את מטען החבלה הנ"ל לירושלים והסתירו אותו בין העצים בגן חבוטני בקמפוס הר-הצופים של האוניברסיטה העברית.

17. למחרת, ביום 31.07.02, "אבו סעד" ומחמד עודה נסעו שוב לקמפוס הר-הצופים של האוניברסיטה העברית. בעת ש"אבו סעד" המתין בחוץ, מחמד עודה נכנס אל תוך הקמפוס, אסף את מטען החבלה הנ"ל והניח בקפיטריה הנמצאת בבניין ע"ש פרנק סינטורה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים. לאחר שמחמד עודה, בסמוך לשעה 13:30, עזב את שטח הקמפוס והצטרף אל "אבו סעד", "אבו סעד" הפעיל את מטען החבלה הנ"ל, אשר יוצר על-ידי הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. "אבו סעד" ומחמד עודה בחרו לבצע את הפיגוע דווקא בסמוך לשעה 13:00 מאחר שלפי המידע שאסף מחמד עודה בקפיטריה הנ"ל בשעה האמורה יש ריכוז גדול של בני אדם.

18. במעשיהו המתוארים לעיל, חגנאשם הנ"ל גרם בכוונה למותה של **דפנה שפרוך** ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה באוניברסיטה העברית, כפי שתואר לעיל.

ת.ה. 380/02

P 7: 58

<u>פרט שמונים ושמונה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **מילה אן בנט ז"ל**, אשר הרנה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט שמונים ותשעה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **דינה קרטר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **בנימין תומאס בלוטשטיין ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ואחד:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **רויטל בראשי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

ת. 380/03

P 7: 59

<u>פרט תשעים ושניים:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **דוד (דיאגו) לדובסקי ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושלושה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **לוינא שפירא ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וארבעה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **ג'ניס רות קולטר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וחמישה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **דוד גריץ ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושישה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, ניסה לגרום בכוונה למותם של אורחים רבים ככל
האפשר. כתוצאה מפיגוע מטען חבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה,
נפצעו 81 בני אדם.

<u>פרט תשעים ושבעה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו בזדיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט השמונים ושבעה, במעשיו המתוארים בפרט
האישום השמונים ושבעה, גרם נזק כבד לבניין ע"ש פרנק סינטטרה בקמפוס הר-הצופים של
האוניברסיטה העברית בירושלים, אשר בו הופעל מטען חבלה, כפי שתואר בפרט האישום
השמונים ושבעה.

<u>פרט תשעים ושמונה:</u>  (פ.א. 9638/02 ראשל"צ)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, ביון באיזור ובין מחוצה לו, ביום 07.08.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1.  הנאשם הנ"ל, בתחילת חודש אוגוסט 2002, ברמאללה או בסמוך לכך, נפגש עם סיד
    ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2.  "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "ישיח'י",
    מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר שני
    מטעני חבלה המוסתרים בתוך הקופסאות של ביסקוויטים – אחד המופעל באמצעות
    מכשיר טלפון סלולרי, והשני המופעל שלט רחוק, וזאת לצורך ביצוע פיגוע תופף בכוונה
    לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטעני החבלה
    וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע תופף בכוונה לגרום למותם של אנשים
    רבים ככל האפשר.

3.  בעקבות הבקשה האמורה, הנאשם ייצר שני מטעני חבלה, אשר הוסתרו בתוך קופסאות
    של ביסקוויטים. לאחד מטעני החבלה הנאשם חיבר מנגנון הפעלה המורכב ממכשיר
    טלפון סלולרי, ואילו למטען החבלה השני הנאשם הרכיב מנגנון הפעלה כך שהמטען יופעל
    באמצעות שלט רחוק.

4.  הנאשם מסר את מטעני החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטעני חבלה
    הנ"ל לידי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "ישיח'י", ראש חזרוע
    הצבאית של ארגון החמאס באיזור רמאללה.

5. בראשית חודש אוגוסט 2002, מחמד חסן אחמד ערמאן (מכונה "אבו מועאז") נפגש עם
   ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", אשר ביקש לקבל מטען חבלה. "אבו
   סעדי" הסביר כי בכוונתו להניח את מטען החבלה מתחת לרכב ולפוצצו בכוונה לגרום
   למותם של אזרחים ישראליים רבים ככל האפשר.

6. מחמד ערמאן פנה אל אברהים חאמד וביקש לקבל מטען חבלה לצורך ביצוע הפיגוע
   המתוכנן. לאחר מספר ימים, ברמאללה או בסמוך לכך, אברהים חאמד העביר לידי מחמד
   ערמאן מטען חבלה, אותו ייצר חנאשם, כאמור לעיל, אשר היה מופעל באמצעות מכשיר
   טלפון סלולרי.

7. באותו היום, 06.08.02, מחמד ערמאן, ביחד עם יליד ע/עוזו וע/האדי אנג'אס נסעו לבית
   איכסא כאשר ברשותם מטען חבלה הנ"ל. בבית איכסא, השניים נפגשו עם "אבו סעדי"
   והעבירו לידיו את מטען חבלה הנ"ל.

8. ביום למחרת, 07.08.02, "אבו סעדי" וסאם סעיד עבאסי הצמידו את מטען החבלה הנ"ל
   למיכלית דלק, מ.ר. 3388300, שחנתה בשכונת פסגת זאב בירושלים או בסמוך לכך. לאחר
   מספר שעות, בסמוך לשעה 13:50, "אבו סעדי" הפעיל את מטען החבלה הנ"ל באמצעות
   מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המטען
   שהונח במיכלית הדלק האמורה התפוצץ, וזאת כאשר מיכלית הדלק היתה במוסך ברחוב
   שמוטקין 23 בראשון לציון.

9. כתוצאה מפיצוץ מטען החבלה הנ"ל נגרם נזק למיכלית הדלק ורק בנס איש לא נפגע.

### פרט תשיעים ותשעה: (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002 או בסמוך לכך, ברמאללה או בסמוך לכך,
   נפגש עם סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" ביקש מהנאשם לייצר שתי חגורות נפץ וזאת לצורך ביצוע פיגועי התאבדות
   בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את חגורות
   הנפץ וזאת על מנת שישתמשו בהן לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של
   אנשים רבים ככל האפשר. בעקבות הבקשה האמורה, הנאשם ייצר שתי חגורות נפץ.

3. הנאשם מסר את חגורות הנפץ הנ"ל לידי "צלאח 2", אשר דאג להעבירן באמצעות חסנין
   רומאנה אל מחמוד חמאד מחמוד שריתח, פעיל צבאי בארגון החמאס, וזאת לצורך
   הוצאה לפועל של פיגועי התאבדות המתוכנן.

4. בסוף חודש יולי 2002, חסנין רומאנה התקשר אל מחמוד שריתח וביקש כי לתאם פגישה
   בין אאחד נעים צובחי רדאד, המכונה "יומר", המכונה אדם המכונה "אבו חאלד". חסנין
   רומאנה הסביר כי הפגישה האמורה נועדה לצורך הוצאת של פיגוע התאבדות. חסנין
   אשר אותו היה אמור לבצע "יעמרי" הנ"ל. מחמוד שריתח התקשר אל "יעמר" ומסר
   לאחרון איפה וכיצד עליו לפגוש את אבו חאלד. כעבור יומיים, "יעמר" הודיע כי אבו חאלד
   לא הגיע לפגישה שנקבעה.

5. מיד לאחר שיחה הנ"ל, מחמוד שריתח חזר לרמאללה ונפגש עם חסנין רומאנה ודיווח
   לאחרון כי הפגישה המתוכננת לא יצאה אל הפועל. בתום הפגישה הנ"ל, מחמוד שריתח
   התקשר אל אשרף זעייר, המכונה "אבו שריף".

6. לאחר מספר ימים, מחמודו שריתח נפגש שוב עם חסנין רומאנה, אשר ביקש כי לתאם פגישה נוספת בין "עומר" לאבו חאלד.

7. כעבור כשבוע ימים, חסנין רומאנה ביקש כי במקרה שאבו חאלד לא יגיע לפגישה האמורה, מחמוד שריתח ייקח אחריות על "עומר" ועל המחבל המתאבד השני, ראפת רדאד.

8. לאחר השיחה הנ"ל, מחמוד שריתח עקב אחרי "עומר" וראה כי "עומר" ממתין במקום המפגש וכי אבו חאלד לא הגיע. כעבור רבע שעה של המתנה מחמוד שריתח ניגש אל "עומר" והודיע לאחרון כי מרגע זה חנאשם זה יהיה אחראי ע ליו.

9. "עומר" מסר כי יש לו בן דוד, ראפת מוקדי, אשר גם הוא רוצה לבצע פיגוע התאבדות. "עומר" ביקש לבצע פיגוע התאבדות ביחד עם בן-דודו ה נ"ל.

10. לאחר מספר ימים, מחמוד שריתח נפגש ברמאללה עם "אבו שריף" וחוזרה לאחרון למצוא מקום בתוך מדינת ישראל המתאים לביצוע פיגוע התאבדות. מחמוד שריתח הבהיר ל"אבו שריף" כי יהיה עליו להוביל למקום שאותו יתאר שני מחבלים מתאבדים על מנת שיבצעו שם פיגוע תוך תקופה בכוונה לגרום למותם של אנשים רבים ככל האפשר. "אבו שריף" הסכים, אך טען כי ייקח זמן לאתר מקום ניתן לבצע פיגוע התאבדות כפול. במהלך השיחה הנ"ל, "אבו שריף" דיווח כי שכר דירה בדחיית אל-ב ריד.

11. "עומר" מסר למחמוד שריתח כי נודע לו מראפת מוקדי על אולם שמחות גדול "וייט הול" הנמצא באור-יהודה. "עומר" הציע כי הוא וראפת מוקדי יבצעו את פיגוע ההתאבדות באולם השמחות הנ"ל, כאשר תחילה שניהם יירו בכלי נשק לעבר האנשים שיהיו בתוך אולם השמחות ולאחר מכן יפוצצו את חגורות הנפץ שישאו על גופם, וכל זאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמוד שריתח הסכים לרעיון הנ"ל ושלח את "אבו שריף" לבדוק את אולם השמחות הנ"ל. "אבו שריף" נסע לאולם השמחות הנ"ל ודיווח כי לא ניתן לבצע שם את הפיגוע המתוכנן בגלל מספר גדול של מאבטחים שנמצאים במקום.

12. מחמוד שריתח דיווח לחסנין רומאנה לגבי פעילותו שבוצעה לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. מחמוד שריתח ביקש מחסנין רומאנה לקבל שתי חגורות נפץ ושני כלי נשק קטנים, כל זאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. חסנין רומאנה הבטיח לדאוג לחגורות הנפץ ולכלי הנשק.

13. לאחר מספר ימים מחמוד שריתח ו"אבו שריף" קיבלו שתי חגורות הנפץ, אותן יוצר הנאשם כאמור לעיל, וכן שני תת-מקלעים "עוזי" עם מחסניות מלאות בכדורים.

14. לאחר מכן, מחמוד שריתח נפגש עם "עומר" ומסר לאחרון כי חגורות הנפץ מוכנות והוא יכול לצאת לביצוע פיגוע ההתאבדות המתוכנן ביחד עם בן-דודו, ראפת מוקדי. "עומר" השיב כי הוא עצמו מוכן לבצע את פיגוע ההתאבדות בתקדם האפשרי, אך ראפת מוקדי לא מוכן לבצע את פיגוע ההתאבדות המתוכנן, מכיוון שאחותו שוהה בארה"ב והוא מבקש להמתין לשובה ל איזור.

15. מחמוד שריתח פנה שוב ל"אבו שריף" וביקש לפעול דחוף לאיתור מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן. לאחר מספר ימים, "אבו שריף" דיווח כי איתר מקום בתל-אביב שהוא מתאים לביצוע פיגוע ההתאבדות המתו כן.

16. ביום 17.09.02 או בסמוך לכך, מחמוד שריתח נפגש בדירת המסתור בא-ראם עם "עומר" והסביר לאחרון כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריתח נשאר בדירה הנ"ל, ביחד עם "עומר" עד ליום 18.0 9.02.

17. ביום 19.09.02, "עומר" יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן כשהוא נושא על גופו את אחת מחגורות הנפץ, אשר ייצר הנאשם כאמור לעיל.

380/23 .ת.21

P 7: 63

18. "אבו שריף" הסיע את "עומר" ברכבו לתל-אביב. בהגיעם לתל-אביב, "אבו שריף" הנחה את "עומר" להתפוצץ שבו נמצאים אנשים רבים וזאת על מנת שהפיצוץ יגרום למותם של אנשים רבים ככל הניתן.

19. בסמוך לשעה 12:55, ביום 19.09.02, או במועד הסמוך לכך, "עומר" עלה לאוטובוס בקו 4 של "דן", מ.ר. 9105201, ברחוב אלנבי 94 בתל-אביב. מיד כשהאוטובוס התחיל בנסיעה, "עומר" הפעיל את מטען הנפץ, אותה יוצר הנאשם, שנשא על גופו גרם לפיצוץ עז, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המחבל המתאבד, איאד נעים צובחי רדאד המכונה "עומר", נהרג כתוצאה מפיצוץ מטען החבלה הנ"ל.

20. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו שישה בני אדם, כפי שיתוארו בפרטי האישום ה באים.

21. כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתוארו בפרטי האישום הבאים.

22. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לאוטובוס הנ"ל, לכלי רכב שהיו בסמוך למקום הפיצוץ, וכן לחנויות הס מוכות.

23. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של **יוסי ממיסטולוב** ז"ל, בן 39 במותו, אשר נהרג כתוצאה מהתפוצצות מטען חבלה כאמור לעיל.

<u>פרט מאה: (פ.א. 19284/02 ירקון)</u>

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **עופר זינגר** ז"ל, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתוארו בפרט האישום התשעים ותשעה.

<u>פרט מאה ואחד: (פ.א. 19284/02 ירקון)</u>

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של **רוזנה סיסו** ז"ל, בת 63 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתוארו בפרט האישום התשעים ותשעה.

<u>פרט מאה ושניים:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 52 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של יפה שם-טוב ז"ל, בת 49 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה ושלושה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של סלומון הוניג ז"ל, בן 79 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה וארבעה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של יונתן ג'סנר ז"ל, בן 19 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה וחמישה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.
כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה נפצעו כ-84 בני אדם שהיו באוטובוס הנ"ל ובסמוך אליו בעת הפיצוץ.

380/03 ת.ת.

P 7: 65

<u>פרט מאה ושישה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 453 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד שלא כדין, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישים התשעים ותשעה, גרם במזיד ושלא כדין נזק
כבד לאוטובוס, מ.ר. 9105201, שנסע בכביש מס' 4 של "דן" ברחוב אלנבי בתל-אביב. וכן גרם נזק לכללי
רכב נוספים ולחניית ובתי עסק שהיו בקרבת מקום הפיצוץ המתואר בפרט האישים התשעים
ותשעה, ואשר נפגעו כתוצאה מפיצוץ מטען החבלה, אותו ייצר הנאשם.

<u>פרט מאה ושבעה:</u> (פ.א. 21011/02 ירקון)

<u>מהות העבירה:</u> ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 11.10.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002, ברמאללה או בסמוך לכך, ייצר שתי חגורות
   נפץ לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר,
   וזאת כפי שתוארו בפרט האישים התשעים ותשעה.

2. הנאשם העביר את שתי חגורות הנפץ לידי סיד שייך-קאסם, המכונה "צלאח
   2", פעיל צבאי בארגון החמאס, אשר דאג לאחנובירן למחמוד חמאד מחמוד שריתה, כפי
   שתואר בפרט האישים התשעים ותשעה.

3. לאחר ביצוע הפיגוע המתואר בפרט האישים התשעים ותשעה, מחמוד שריתה החליט
   להוציא לפועל פיגוע התאבדות נוסף באמצעות חגורת הנפץ, אשר אותה ייצר למטרה זו
   הנאשם.

4. לצורך קידום תכניתו הנ"ל, מחמוד שריתה גייס את ראאפת מוקדי לביצוע פיגוע
   ההתאבדות המ תוכנן.

5. מחמוד שריתה נפגש גם עם אשרף מונ יר זעייר, המכונה "באו שריף", והרוה לאחרון.
   לאתר מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן. לאחר מספר ימים, "אבו שריף"
   דיווח כי איתר שני מקומות בתל-אביב המתאימים לביצוע פיגוע ההתאבדות המ תוכ נן.

6. ביום 11.10.02 "אבו שריף" הביא את ראאפת מוקדי מכפר עראבה לדירת המסתור
   בא-ראם. מחמוד שריתה הסביר לראאפת מוקדי כיצד לובשים וכיצד מפעילים את חגורת
   הנפץ. מחמוד שריתה הלביש על גופו של ראאפת מוקדי את חגורת הנפץ, אשר אותה ייצר
   הנאשם.

7. "אבו שריף" הסיע את ראאפת מוקדי לתל-אביב על מנת שהאחרון יבצע שם את פיגוע
   ההתאבדות המ תוכנן.

8. בסמוך לשעה 20:15, ביום 11.10.02, "אבו שריף" הוריד את ראאפת מוקדי בטיילת החוף
   בתל-אביב והנחה את האחרון למצוץ את חגורת הנפץ, שהוא נשא על גופו, במסעדה שיש
   בה אנשים רבים.

9. ראאפת מוקדי ניסה להיכנס למסעדה "יוטבתה" הנמצאת ברחוב הרברט סמואל (טיילת
   תל-אביב), אך המאבטח שהיה במקום הבחין בו, חשד כי מדובר במחבל מתאבד ומנע את

כניסתו פנימה. ראפת מוקדי ניסה להימלט מהמקום, אך נתפס לאחר מרדף ובסיועו של מאבטחים נוספים שהגיעו למקום.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל ניסה לגרום בכוונה למותם של אנשים רבים ככל האפשר.

<u>פרט מאה ושמונה:</u>

<u>מהות העבירה:</u> אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש פברואר 2003 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר אימון צבאי לאדם, תושב שכם, אשר נשלח אליו על-ידי אברהים ג'מיל ע/ע'אאני חאמד, המכונה "צלאח 1" או "יהשיחי", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה.
במהלך האימון האמור הנאשם לימד את האדם הנ"ל לייצר מטעני חבלה, מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.
במהלך האימון הצבאי הנ"ל, הנאשם והאדם הנ"ל היו רעולי פנים.

<u>פרט מאה ותשעה:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בתחילת שנת 2003 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר לידי אברהים ג'מיל ע/ע'אאני חאמד, המכונה "צלאח 1" או "יהשיחי", ראש "גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, באיזור רמאללה, דיסקטים למחשב ועליהם הוראות לייצור חומרי הנפץ ומטעני החבלה.
אברהים חאמד ביקש מהנאשם לקבל את הדיסקטים הנ"ל לצורך העברתם לפעילי הארגון ג'יהאד אסלאמי פלסטיני, אשר ביקשו ללמוד לייצר חומרי נפץ ומטעני חבלה.

42

עדי התביעה:

1. רס״ר יצחק יעקבוף, מ.א. 1008358, לחי״ק יהודה. [נגבה אמרות הנאשם מיום 12.03.03, 13.03.03, 30.03.03, 15.05.03 ומיום 22.05.03 ומגיש תמונות שהוצגו בפני הנאשם ביום 30.03.03 + ציור בכתב-ידו של הנאשם]

2. רס״ר משה לוי, מ.א. 953117, לחי״ק יהודה. [נגבה אמרות הנאשם מיום 12.05.03]

3. פרוטוקול ודיון הארכת המעצר של הנאשם מיום 12.05.03.

4. אשרף מוניר זעייר, ת.ז. 035660679. (עצור)

5. ראפת רשיד עבדאללה מוקדי, ת.ז. 907945026. (עצור)

6. מחמוד חמאד מחמוד שריתח, ת.ז. 900718750. (עצור) (ת.ת. 976/02)

7. מוחמד טאהר מחמוד ברנותי, ת.ז. 859121287. (עצור) (241/03 .ת.ת)

8. אכרם צאלח אחמד א-חסין (ברנותי), ת.ז. 988965372. (עצור) (ת.ת. 210/03)

9. וסאם סעיד מוסא עבאסי, ת.ז. 033714403. (אסיר)

10. ואאל מחמוד מחמד-עלי קאסם, ת.ז. 028192755. (אסיר)

11. מוחמד אסחאק עדה, ת.ז. 026291302. (אסיר)

12. עלאא א-דין מוחמד עבאסי, ת.ז. 029194818. (אסיר)

13. וליד ע/עזיז עה/האדי אגנ/אס, ת.ז. 906448105. (עצור) (ת.ת. 889/02)

14. מוחמד חסן אחמד ערמאן, ת.ז. 901056259. (עצור) (ת.ת. 888/02)

15. מוחמד ואהל מוחמד דעי/לאס, ת.ז. 905167375. (אסיר) (ת.ת. 846/01)

16. אחלאם עאטף אחמד תמימי, דרכון ירדני G052933. (עצורה) (ת.ת. 815/01)

17. בלאל יעקוב אחמד (עת/מאן) ברנותי, ת.ז. 902826262. (אסיר) (ת.ת. 344/02)

18. אחמד טאלב מוצטפא ברנותי, ת.ז. 994466860. (עצור) (ת.ת. 444/02)

19. מוראד חליל ע/חאק עמירה, ת.ז. 980743066. (עצור) (946/02 .ת.ת)


רשימת העדים הטכניים מתיקי הפ.א. הבאים תימסר על-ידי התביעה, במידת הצורך, במהלך המשפט:

1. צ יון 6554/01
2. פ מ ת/ימ י-ם 6891/01
3. ציון 10283/01
4. מוריה 1512/02
5. ראש ל״צ 5601/02
6. גלילות 2881/02
7. לוד 3975/02
8. ר חובות 9913/02
9. שלם 1197/02
10. ראשל״צ 9638/02
11. ירקון 19284/02
12. ירקון 21011/02

מיכאל קוטלביץ                                              סרן
תובע                                                      צבאי

תאריך: 29.05.2003
סימוכין: 03-0 38

43

ת.ת. 380/03