# EXHIBIT A.485



PLAINTIFF'S
EXHIBIT
485

Date: 12 Tammuz 5767                                                    Case No.: 2303/04
June 28, 2007

### The Judea Military Court

**Before Honorable President of Court:  Major Yair Tirosh**
**                        The Judge:  Major Amir Dahan**
**                        The Judge:  Major Ze'ev Afik**

**The Military Prosecution**
(By Adv. Captain Sagiv Lichtman)

                                          -v-

**The Defendant: Hilmi Abed Alkarim Mohamed Hamash, Identity No. 901415984/ IPS**
(by Counsel Adv. Osama Ouda)

---

## Arguments for the Sentence

**Honorable Judge Major Amir Dahan:**

**A. The facts of the case**

The Defendant, Hilmi Abed Al Karim Mohamed Hamash, of the Deheyshe Refugee Camp, was prosecuted by an indictment in Case 2303/04, which was filed on May 23, 2004 to this Court and was convicted by an argued verdict of the following offenses and facts:

- Possession of a pistol and rifle cartridges.

- Attempt to activate an explosive device against a military vehicle.

- Membership in the "Al Aqsa Martyrs Brigades" terrorist organization founded by the Fatah Movement.

- Shooting at a military vehicle with a number of accomplices.

- Eleven counts dealing with causing intentional death and a count of attempting to cause intentional death dealing with the injury of 50 people. The counts all relate to the part of the Defendant in the commission of a suicide attack on the line 19 bus in Jerusalem.

[Stamp] P 8: 61

A breakdown of the acts follows:

1

1)   The Defendant heard that Ahmed Salah was looking for a person who was prepared to commit suicide in an attack. Following this, the Defendant had Ahmed Salah meet Ali Ja'ara, from whom he had heard that he was interested in carrying out a suicide attack.

2)   The Defendant purchased along with Ahmed Abu Ghadeb a number of products for preparing the explosive bag.

[Stamp] P 8: 61 (continued)

Date: 12 Tammuz 5767                                                     Case No.: 2303/04
June 28, 2007

3)    Ahmed Salah asked the Defendant for a video camera and the Defendant tried to get him
       this camera. The video camera was intended for the purpose of filming the suicide
       terrorist before carrying out the attack.

The Court ruled as follows on this matter in the verdict:

> "These words represent knowledge of the result and the action to
> achieve a result that the Defendant undoubtedly wished for as a
> full accomplice in the commission of the attack, while knowingly
> exploiting the poor mental state of Ali Ja'ara and using him to
> advance a plan of a bombing attack and also covers up for the
> attack and its originators while doing a disservice to his duties at
> the Palestinian Authority and the duty he had as a uniformed
> serviceman.
>
> If it were not enough that there was a mental foundation here of
> murderous intent, there was also a factual foundation of full
> control of every stage, tracking and knowledge of every stage and
> the ability to terminate the planned massacre act by a simple act of
> reporting to the authorities.
>
> The Defendant did not do so and thus served as an essential link
> without which the attack would not have been executed, and he
> knowingly and deliberately took an important part in all stages of
> the planning and execution of the massacre and also prevented the
> curtailment of the massacre by covering up for Ali Ja'ara."

As a result of the action, the result of the death of 11 people and the injury of more than fifty
others was caused:

**The names of the victims are as follows:**

**The late Mr. Avraham Balahsan.**

**The late Ms. Hanna Bonder.**

**The late Ms. Anat Darom.**

**The late Mr. Yechezkel Goldberg.**

**The late Vladi Tzadik Manbara.**

[Stamp] P 8: 62

3

The late Mr. Viorel Octavian Florescu.

The late Ms. Rose Boneh.

The late Ms. Dana Itah.

The late Mr. Roman Hondiashvili.

The late Mr. Eli Tzfira.

The late Ms. Natalia Gamril.

**B. The evidence of the prosecution for sentencing and the pleas of the prosecution for sentencing**

[Stamp] P 8: 62 (continued)

Date: 12 Tammuz 5767
June 28, 2007

Case No.: 2303/04

1. The prosecution did not bring forth any evidence for sentencing.

2. The Prosecutor read the names of the victims and added these words:

> "These are the names of the victims who were murdered and of whose intentional death the Defendant has been convicted as an accomplice. People whose only wrongdoing was traveling on bus No. 19, boarding it before reaching the junction of Arlozorov and Aza Streets, and not having time to alight before the suicide bomber detonated himself, thus causing their death. 8:45 in the morning in the month of January, people are on their way, to work, on errands, on studies, each one within his daily routine, which routine was interrupted; and the daily routine of the families of the victims of the casualties was also interrupted all at once by the commission of the attack"

3. Relying on "the principle of the sanctity of life" and the consistent rulings of the Military Appellate Court and the Supreme Court, the Prosecutor has asked to sentence the Defendant to a life imprisonment term for each individual victim and an additional life imprisonment term for the many casualties whose murder was attempted.

4. The Prosecutor has asked to add to these a prison sentence set in years for the remaining offenses that the Defendant has committed and that the sentences be served cumulatively.

## C. The evidence of the defense for sentencing and the pleas of the defense for sentencing

1. The defense did not file any evidence for sentencing to the Court.

2. The main contention of the defense counsel was that the requested sentence did not "correspond" with the sentence of Ali Abu Halail (Case 2306/04), whose part in the occurrences is significantly greater than that of the Defendant, to his mind; and despite this, he was found guilty and convicted of the offense of aiding in causing death and was sentenced to 21 life imprisonment terms **to be served concurrently**.

3. The Court clarified this contention well, took note of the sentence, the verdict and the indictment on the matter of Ali Abu Halail and the parties responded to the questions of the Court on the subject.

[Stamp] P 8: 63

5

## D. General guiding principles in reasoning for the sentence

1.  For the purpose of determining the fitting sentence, the Court has made the necessary considerations. For this purpose, the Court has been assisted, inter alia, by the principles that have been set forth and organized in *the Bill for the Penal Code (Amendment No. 92) (Structuring of Judicial Discretion in Sentencing), 5766-2006* (hereinafter:

[Stamp] P 8: 63 (continued)

Date: 12 Tammuz 5767                                                    Case No.: 2303/04
June 28, 2007

the Bill). According to this Bill, the sentence that is to be imposed on the Defendant should reflect the severity of the offenses at the conceptual level, the circumstances of commission of the offenses and the personal circumstances of the Defendant.

2.  The wording and the principles that are adopted in the necessary changes stem from the absence of "default sentences" and from the difference between the penal rules in Israeli law and the law applying in the Area. Beyond the principles that have been prescribed by the Bill, the Court must also consider all of the additional circumstances that are relevant to sentencing the Defendant.

3.  For the purpose of the hearing for setting the fitting sentence, the relevant circumstances should be divided into four main categories, like the division made in the Bill. On this matter, the following parameters should be considered.

    o   **Mitigating circumstances that are related to the commission of the offense.**

    o   **Aggravating circumstances that are related to the commission of the offense.**

    o   **Mitigating circumstances that are unrelated to the commission of the offense.**

    o   **Aggravating circumstances that are unrelated to the commission of the offense.**

4.  The references of the Prosecution reveal a sentencing level whereby imprisonment to be served is to be handed down for similar offenses, to a rate of multiple life sentences according to the number of victims, to be served cumulatively.

5.  Once the Court had ruled in its verdict that the Defendant was in the inner circle of the commission of the murder, there is no room for nuances of mitigating or aggravating circumstances, as the case may be. Murder is murder and as such causes immeasurable damage. The attitude to this offense has been unique since Cain rose up against his brother Abel and killed him. The taboo accompanying the sanctity of life is deep and rooted in the ancient cultures of Israel and Ishmael:

    **Mohamed the Prophet commanded as follows from the word of God:**

[Stamp] P 8: 64

7

"… if anyone killed a person not in retaliation of murder, or (and) to spread mischief in the land - it would be as if he killed all mankind, and if anyone saved a life, it would be as if he saved the life of all mankind"

[Koran, Surah Al-Ma'ida, verse 35 (sic)]

[Stamp] P 8: 64 (continued)

Date: 12 Tammuz 5767                                     Case No.: 2303/04
June 28, 2007

This verse expresses the attitude of the most qualified and ancient divine scripture of Islam, which measures the value of the offense of murder in infinitesimal terms, meaning that the value of the soul that is murdered or saved from death is infinite and he who destroys it is akin to having destroyed all of mankind.

Our Sages of Blessed Memory state in the Sanhedrin Mishnah, Chapter 4:5.

> "Know that cases of life are not like cases of money! Cases of money, a man gives money and atones through this. In cases of life, (he is responsible for) his blood and the blood of his offspring that would have come until the end of the world," like we see with Cain who murdered his brother, as it is written, "The bloods of your brother calls to me". It does not say the 'blood' of your brother but rather the 'bloods' of your brother, his blood and the blood of his offspring... that man stamps many coins with one seal, and each is like the other, but the King, King of Kings, the Holy One, Blessed be He, stamps every man with the seal of Adam and not one of them is like his fellow. Therefore every man must say "for my sake was the world created."

The victims were murdered maliciously but their identity was by chance; they did not kill the soul and did not spread mischief in the land, their killer took a whole world and therefore he should be sentenced to a full life imprisonment term and a whole world taken from him for each world that he took away.

## E. The mitigating circumstances that are related to the commission of the offense

**Several perpetrators took part in the commission of the offense, and the part of the Defendant in its commission was smaller than that of the others.** For realizing this sentencing consideration, the Court examined the part of the Defendant in each of the offenses and found that he had taken a significant, nay central part in each of them. Therefore, this consideration is not to be considered as a mitigating circumstance for sentencing.

## F. The aggravating circumstances related to the commission of the offense are as follows

[Stamp] P 8: 65

1.    **The Defendant committed the offense using another person**. For realizing this sentencing consideration, we have taken into account that the Defendant was the one who enlisted the suicide terrorist, saw to his training and tracked his "progress". The Defendant covered up for the suicide terrorist at his workplace so that he would not be missed. There is no doubt that this is a vicious, brutal case of committing an offense using another person, who went his way as a human fuse and a human guidance mechanism of a bomb whose purpose was indiscriminate killing that also spelt his own death. There is room for conjecture, after reading the evidence material, that the mental state of the suicide terrorist Ali Ja'ara was bad and the Defendant exploited this state cynically and murderously. Therefore, the Court shall consider this to be an aggravating circumstance for the sentencing.

[Stamp] P 8: 65 (continued)

Date: 12 Tammuz 5767                                                        Case No.: 2303/04
June 28, 2007

2.      **A few perpetrators took part in the commission of the offense, and the part of the Defendant in its commission was greater than that of the others**. For the sake of realizing this sentencing consideration, the Court has taken into account that the part of the Defendant is greater than those of others and is equivalent to the part of his fellow cell members, Zahir Makdad and Ahmed Salah (2304/04, 2305/04). We have checked the contention of the defense counsel whereby the Defendant is not to be discriminated against relative to Alu Abu Halail (2306/04) and found that the manner of conducting the case in the procedural instance and the wording of the indictment led to the conviction of Ali Abu Halail of the offense of aiding in causing death instead of the offense of causing intentional death.

Our Sages of Blessed Memory wrote: **The judge has nothing but what his eyes see** (Babylonian Talmud, Sanhedrin page 6b). In this case, our eyes have seen deep involvement in the inner circle in all stage of the offense, combined with cynical exploitation of every possible party to lead to the purpose of mass murder. The evidence that has been presented before this Court is not the evidence that was presented to the Court that heard the case of Abu Halail, who chose to plead guilty to the indictment and thus opened the way to the raising of doubt as to his part as an accessory or as an accomplice.

Indeed, the sentencing consideration of prevention of discrimination and arbitrariness and the appearance of the face of justice is a strong interest in criminal sentencing, and often the Court will hand down a sentence even if it does not consider it fitting in order to fulfill this important sentencing consideration.

A thorough examination that we have held of the case of Ali Abu Halail has satisfied us that the difference between the results in the verdicts eventually justified the difference in sentencing. There is no doubt that the evidence material that was presented to us portrays Ali Abu Halail in a much more problematic light, but the manner of conducting the trial led to the Court having only the wording of the indictment as evidence and the picture resulting from this wording is much less bleak than the picture that is presented from the evidence material that we have had an opportunity to see. This is where the contention of the defense counsel before us emanates, and here lies its solution. To complete the picture, we shall cite below an excerpt of the verdict in the case of Ali Abu Halail:

[Stamp] P 8: 66

11

"The hearings in this case were deferred from reminder to reminder, but in the end these deferrals spared the Court a lot of time. On August 4, 2005, the defense counsel of the Defendant announced that his client admitted the facts of the indictment but pleads not guilty to the charge. Today, the dates for filing of summations have been set, the prosecution by September 19, 2005 and the defense by October 20, 2005.

The question that is asked is whether by these acts the defendant became an accomplice to the offense or would his correct classification be merely as an accessory?

The military prosecution, in its summations, also defined the question, and it is worded there as such, whether the person who gathered chemicals and made an explosive bag knowing that the explosive bag would be used for the purpose of a suicide attack would be considered as an accessory or as an accomplice.

[Stamp] P 8: 66 (continued)

Date: 12 Tammuz 5767                                    Case No.: 2303/04
June 28, 2007

*The prosecution is attempting to rely on Judea and Samaria
Appeal 2377/04, the Military Prosecutor v. Rassam Hamara, in
which it was allegedly ruled that a person who produces the
explosive device for a suicide terrorist would be considered as a
full accomplice to the completed offense. In my view the
Prosecutor erred by quoting this verdict. In that case, the Court
ruled that a person who was "responsible for the preparation of
the explosive device" may be considered as an accomplice. There
is a huge difference between a person who in the framework of the
criminal conspiracy assumes the responsibility for making sure
that there will be an explosive device, like the conspirator who sees
to a suicide terrorist or vehicle, and a person who is not part of the
criminal conspiracy from the outset, is not one of the planners but
is a maker of something, and his part boils down to the making of
an explosive device at the request of another person.*

*It shall be clarified that I do not believe that the Defendant did not
know exactly what the explosive bag was intended for, but was his
knowledge sufficient to transform him from an accessory an
accomplice? I think not. But a short time ago, the Military
Appellate Court handed down a verdict in Judea and Samaria
Appeal 2135+2156/05, Safwat Gabour v. the Military Prosecutor
in which the tests that are commonly used to differentiate between
an accomplice and an accessory to an offense were again
elaborately described. The honorable President of the Appellate
Court, Colonel Shaul Gordon, discussed the possibility of
convicting a person as a full accomplice to an offense, despite the
fact that he is not at the scene of the event, on which the following
was written:*

*Later, the President reemphasized the fact that in the Area we use
tests that are practiced in Israel, the test of control and the test of
mastery of the offense, and the things appear there:*

*Therefore; the classification of a person as an accomplice to an
offense is based on his practical part and contribution to the
accomplishment of the offense, but to no lesser extent also on the
mental aspect of his desire for it to be accomplished.*

*"In view of these things, we shall examine the acts of the
Defendant. Was he among the originators of the attack?*

[Stamp] P 8: 67

13

*Did he plan even the tiniest detail in the attack? Did he give orders or show control of any of the parts of the attack? The answer to all of these questions is negative, with certainty.*

*The prosecution is also trying to assert that in view of the significant physical acts of the Defendant in the execution of the attack, the need for involvement in the planning of the attack to consider him as a full accomplish would be diminished. I do not dispute this conjecture, but I do not see how it may be said that the physical acts of the Defendant are extensive to the point of there being no need for him to have any part in the planning of the attack in order to consider him as an accomplice."*

In summary: there is inequality between the case of the defendant Abu Halail and the Defendant before us, which does not justify intervention in the sentencing.

3.    **The defendant committed the offense while abusing his authority.** For realizing this sentencing consideration, we have taken into account that the Defendant was a member of a security authority of "the Palestinian Authority",

[Stamp] P 8: 67 (continued)

14

Date: 12 Tammuz 5767                                                    Case No.: 2303/04
June 28, 2007

which was founded pursuant to the interim agreements, within which capacity he was a
uniformed serviceman. While serving in his function, within which he was entrusted with
safeguarding the security of the Area, the Defendant enlisted a suicide terrorist, who was
a police officer like him, while abusing the tools of authority and uniform at his disposal.
This consideration stands against the Defendant.

4.   **The offense was committed in a series of acts that constitute a single case**. For
realizing this sentencing consideration, the Court checked and found that the element of
consistency and precise planning was an aggravating factor, passing like a golden thread
through all of the acts of the Defendant. His acts do not have a monotonous,
characteristic nature (as the Court that heard the case of Abu Halail saw) but his hand was
in everything for advancing and executing the conspiracy: from the recruitment of the
suicide terrorist, through persuading him, preparing the explosive device and in the end
verification of the execution too. All of these prove consistency, persistency and
perseverance without a moment of fear, error, stumbling or temporary *mens rea*. In these
circumstances, the facts are an aggravating factor.

5.   **Several people were hurt by the commission of the offense.** Of course, the element of
increased severity that stems from suicide attacks that involve the use of explosives is the
intent to carry out a massive, indiscriminate attack. This purpose, which was the purpose
of the Defendant, was fulfilled in its entirety, and indeed eleven people were massacred
after the aim was to kill them only because of their national or religious affiliation.

6.   **The act of the offense was preceded by planning**. For realizing this sentencing
consideration, the Court checked and found that the offenses were preceded by precise
planning that constitutes an aggravating factor.

7.   **The offense was committed based on a motive of racism or hostility towards a public
as set forth in Section 144F(A) of the Penal Code, 5737-1977**. For the purpose of
realizing this consideration, the Court took into account that the motives of the offenses
are categorically racist, their aim being to kill Jews or Israelis as such; the murder was
planned, was indiscriminate and was committed only against Jews or Israelis who would
happen to be at the time and place of the defendants' choosing.

[Stamp] P 8: 68

15

As there is no room for doubt that the criterion that was supposed to sentence the victims to death was their Jewish nationality or membership of the Israeli public, the Court shall consider this to be an aggravating factor.

The man whom the Defendant killed with his accomplice met his death for a reason of hostility towards a public, as the reasons for his abduction, torture and death were the connections that were allegedly attributed to him with Israelis, the frequency of such offenses in the Area; and this must not blur the aggravating circumstances that are based on hostility towards a public and simple racism.

## G. The aggravating circumstances that are unrelated to the commission of the offense are as follows

**The need to deter potential offenders from committing an offense of the type that the Defendant has committed, owing to the nature or frequency of the offense.**

[Stamp] P 8: 68 (continued)

16

Date: 12 Tammuz 5767                                              Case No.: 2303/04
June 28, 2007

For realizing this sentencing consideration, the Court has taken into account that the offense and the characteristics of its commission are very common and the need for public deterrence is high.

The court has considered all of this as an aggravating factor. A person who has a hand in the commission of a suicide attack using explosives can no long hide behind the mental element of the suicide terrorist or the originator, for he has an equal part in the killing of each victim, and there is no appropriate punishment for malicious killing but life imprisonment for each victim whom he maliciously killed.

### Endnote

**While we have not administered justice for the dead or their loved ones, we have not made up for the blood that has been spilt with the blood of its spiller, but the trial that we have been able to hold has been held. We sentence the Defendant to the following:**

A.     Life imprisonment for causing the intentional death of **the late Mr. Avraham Balahsan**

B.     Life imprisonment for causing the intentional death of **the late Ms. Hanna Bonder**

C.     Life imprisonment for causing the intentional death of **the late Ms. Anat Darom**

D.     Life imprisonment for causing the intentional death of **the late Mr. Yechezkel Goldberg**

E.     Life imprisonment for causing the intentional death of **the late Vladi Tzadik Manbara**

F.     Life imprisonment for causing the intentional death of **the late Mr. Viorel Octavian Florescu**

G.     Life imprisonment for causing the intentional death of **the late Ms. Rose Boneh**

H.     Life imprisonment for causing the intentional death of **the late Ms. Dana Itah**

I.     Life imprisonment for causing the intentional death of **the late Mr. Roman Hondiashvili**

J.     Life imprisonment for causing the intentional death of **the late Mr. Eli Tzfira**

K.     Life imprisonment for causing the intentional death of **the late Ms. Natalia Gamril**

[Stamp] P 8: 69

17

L.    An additional term of life imprisonment for the additional offenses of which he has been convicted.

**All sentences are to be served cumulatively to the effect that the Defendant will serve twelve life imprisonment terms, to be served cumulatively.**

**Honorable President of the Court Major Yair Tirosh and Honorable Judge Major Ze'ev Afik**

We agree.

**A right of appeal within 30 days is conferred.**

**Handed down in the chamber, June 28, 2007; a copy of the decision will be forwarded to the parties.**

| [Signature] | [Signature] | [Signature] |
|:---:|:---:|:---:|
| **Judge** | **President of the Court** | **Judge** |

[Stamp] P 8: 69 (continued)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

      vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

              Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 8: 61-69.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated bearing the bates number P 8: 61-69.

Dated: March 6, 2014

                                            Rina Ne'eman

ss.: New Jersey

On the _6_ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
_6_ day of March, 2014

_Leonor Troyano_
Notary Public

**LEONOR TROYANO**
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 6/6/20??

תיק מס': 2303/04                                   תאריך: י"ב תמוז, תשס"ז
                                                   28 ביוני, 2007

<div dir="rtl">

## בית המשפט הצבאי יהודה

בפני כב' האב"ד: רס"ן יאיר תירוש
השופט: רס"ן אמיר דהאן
השופט: רס"ן זאב אפיק

**התביעה הצבאית**
(באמצעות עו"ד סרן שגיב ליכטמן)

נגד

**הנאשם:** חלמי עבד אלכרים מוחמד המאש ת.ז 901415984 / שב"ס
(באמצעות ב"כ עו"ד אוסאמה עודה)

---

## נימוקי גזר דין

## כב' השופט רס"ן אמיר דהאן:

## א. עובדות המקרה

הנאשם, חילמי עבד אל כרים מחמד המאש ממחנה הפליטים דהיישה, הועמד לדין בכתב
אישום בתיק 2303/04 שהוגש ביום 23/5/04 לבית משפט זה והורשע בהכרעת דין מנומקת
בעבירות ובעובדות הבאות:

- החזקת אקדח וכדורי רובה.
- ניסיון להפעיל מטען חבלה כנגד רכב צבאי.
- חברות בארגון טרור "גדודי חללי אל אקצא" מיסודה של תנועת הפתח.
- ירי לעבר כלי רכב צבאי יחד עם מספר שותפים.
- אחד עשר פרטי אישום שעניינם גרימת מוות בכוונה ופרט אישום של ניסיון לגרימת מוות
  בכוונה שעניינו פציעתם של 50 אנשים. פרטי האישום מתייחסים כולם לחלקו של הנאשם
  בביצוע פיגוע התאבדות באוטובוס קו 19 בירושלים.

וזהו פירוט המעשים:

1) הנאשם שמע כי אחמד צלאח מחפש אדם המוכן להתאבד בפיגוע. בעקבות זאת הפגיש
   הנאשם את אחמד צלאח עם עלי ג'יאערה  אשר ממנו שמע כי הוא מעוניין לבצע פיגוע
   התאבדות.

2) הנאשם רכש ביחד עם אחמד אבו עידב מספר מוצרים לצורך הכנת תיק הנפץ.

</div>

-1-

תיק מס' : 2303/04          תאריך : י"ב תמוז, תשס"ז
28 ביוני, 2007

3)   אחמד צלאח ביקש מהנאשם מצלמת וידאו והנאשם ניסה להשיג לו מצלמה זו. מצלמת

הווידיאו הייתה מיועדת לצורך צילום המחבל המתאבד בטרם ביצוע הפיגוע.

וכך קבע בית המשפט לעניין זה בהכרעת הדין :


"דברים אלה, מגלמים ידיעת התוצאה ופעילה למען תוצאה שהנאשם
חפץ בה ללא ספק כשותף מלא בביצוע הפיגוע תוך שהוא מנצל בידיעין
את מצבו הנפשי הקשה של עלי גיעארה, ומשתמש בו לשם קידום
תוכנית של פיגוע נפץ ואף מחפה על הפיגוע וייזמיו תוך מעילה בתפקידיו
ברש"פ ובחובות שהיו לו כלובש מדים.

לא די בזאת שהיה כאן יסוד נפשי של כוונה רצחנית אלא יסוד עובדתי
של שליטה מלאה בכל שלב, מעקב וידיעה בכל רמה ויכולת להפסיק את
מעשה הטבח המתוכנן ע"י מעשה פשוט של דיווח לממונים .

הנאשם לא עשה כן, ובכך שימש כחוליה הכרחית שבלעדיה אין בביצוע
הפיגוע. הוא נטל חלק חשוב בידיעין ובכוונה בכל שלבי תכנונו וביצוע
של הטבח ואף מנע את סיכולו של הטבח, תוך שהוא מחפה על עלי
גיעארה."


כתוצאה מן המעשה נגרמה התוצאה של מוות 11 אנשים ופציעת יותר מחמישים נוספים:


ואלה שמות הנרצחים :


אברהם בלחסן ז"ל.

חנה בונדר ז"ל.

ענת דרום ז"ל.

יחזקאל גולדברג ז"ל.

ולדי צדיק מנברה ז"ל.

ויורל אוקטביה פלורסקו ז"ל.

רוזה בונה ז"ל.

דנה איטח ז"ל.

רומן הונדיאשווילי ז"ל.

אלי ציפורה ז"ל.

נטליה גמריל ז"ל.


<u>ב. ראיות התביעה לעונש וטיעוני התביעה לעונש</u>

-2-

תיק מס׳ : 2303/04

תאריך : י״ב תמוז, תשס״ז
28 ביוני, 2007

1. התביעה לא הביאה כל ראיות לעונש.

2. התובע קרא בשמותיהם של ההרוגים והוסיף מילים אלו :

"אלו שמותיהם של ההרוגים אשר נרצחו והנאשם הורשע באחריות
לגרימת מותם בכוונה כשותף. אנשים אשר כל חטאם היה בנסיעה
באוטובוס בקו 19 ובכך שהם עלו עליו טרם הגיע לפינת הרחובות
ארלוזורוב-עזה, ולא הספיקו לרדת בטרם פוצץ החבל המתאבד את
עצמו ונרם בכך למותם. 08:45 בבוקר חודש ינואר, אנשים בדרכם מי
לעבודה, מי לסידוריו, מי ללימודים, כל אחד לשגרת יומו לתוך שגרת
היום שנקטעה ושגרת יומם של משפחות ההרוגים והפצועים אשר נגדעה
באחת עם ביצוע הפיגוע"

3. בהסתמך על "עקרון קדושת החיים" ועל פסיקותיהם העקביות של בית המשפט הצבאי
לערעורים ושל בית המשפט העליון  ביקש התובע לגזור על הנאשם מאסר עולם כנגד כל
נרצח ונרצח וכן מאסר עולם נוסף בגין הפצועים הרבים אשר נעשה ניסיון לרוצחם נפש.

4. התובע ביקש להוסיף על אלה מאסר קצוב בשנים על שאר העבירות אותן ביצע הנאשם
וכן כי העונשים ירוצו במצטבר.

## ג. ראיות ההגנה לעונש וטיעוני ההגנה לעונש

1. ההגנה לא הגישה לבית המשפט כל ראייה לעונש.

2. עיקר טענתו של הסנגור הייתה כי העונש המבוקש אינו עומד ב"קנה מידה" אחד עם
עונשו של עלי אבו הליאל (תיק 2306/04) , אשר חלקו בהתרחשויות משמעותי יותר מזה
של הנאשם, לשיטתו; ולמרות זאת הוכרע דינו והוא הורשע בעבירה של סיוע לגרימת
מוות ונגזר דינו ל – 21 מאסרי עולם שירוצו בחופף.

3. בית המשפט בירר היטב טענה זו, נזקק לגזר הדין, להכרעת הדין ולכתב האישום בעניינו
של עלי אבו הליאל והצדדים הגיבו לשאלות בית המשפט בנושא.

## ד. עקרונות מנחים כלליים בשיקול הדעת לעונש

1. לצורך קביעת העונש הראוי שקל בית המשפט את כל השיקולים הצריכים לעניין. לעניין
זה נעזר בית המשפט, בין היתר, גם בעקרונות שפורטו וארוגנו *בהצעת חוק העונשין*
*(תיקון מס׳ 92) (הבניית שיקול הדעת השיפוטי בענישה), התשס״ו 2006* (להלן: הצעת

-3-

<div dir="rtl">

תאריך: י"ב תמוז, תשס"ז         תיק מס': 2303/04
28 ביוני, 2007

1     החוק). על פי הצעת חוק זו ראוי כי העונש שייגזר על הנאשם ישקף את חומרת העבירות

2     ברמה המשנית, נסיבות ביצוע העבירות ונסיבותיו האישיות של הנאשם.

3    .2   הנוסח והעקרונות המאומצים בשינויים המתחייבים נובעים מהגדר "עונשי מוצא", וכן

4     מהשוני בין דיני העונשין במשפט הישראלי לבין הדין בא זור. מעבר לעקרונות שנקבעו

5     בהצעת החוק על בית המשפט לשקול גם את כל הנסיבות הנוספות, הרלוונטיות לעניין גזירת

6     דינו של הנאשם.

7

8    .3   לצורך הדין בקביעת העונש הראוי ראוי לחלק את הנסיבות הרלבנטיות לארבע קטגוריות

9     עיקריות, בדומה לחלוקה שנקבעה בהצעת החוק, בעניין זה יש להתייחס למדדים הבאים:

10

11    o   הנסיבות המקלות הקשורות בביצוע העבירה.

12    o   הנסיבות המחמירות הקשורות בביצוע העבירה.

13    o   הנסיבות המקלות שאינן קשורות בביצוע העבירה.

14    o   נסיבות המחמירות שאינן קשורות בביצוע העבירה.

15

16    .4   מאסמכתאות של התביעה עולה רמת ענישה אשר לפיה יש לפסוק בעבירות דומות מאסר

17     בפועל, בשיעור של מספר מאסרי עולם כמספר ההרוגים אשר יצטברו זה לזה.

18

19    .5   משקבע ביהמ"ש בהכרעת דינו כי הנאשם מצוי במעגל הפנימי של ביצוע הרצח, אין מקום

20     לדקויות של הנסיבות המקלות או המחמירות לפי העניין. רצח הוא רצח, הוא אינו נזק בר

21     מנייה. היחס לעבירה זו הינו ייחודי מאז קם קין על אחיו הבל במזיד ורצחו נפש. האיסור

22     המלווה בערך קדושת החיים הוא עמוק ומושרש בתרבויות העתיקות של ישראל ושל

23     ישמעאל:

24

25     וכך ציווה הנביא מחמד את המאמינים מפי האל :

26

27     ""כל הורג נפש לא תחת נפש או (על) שהשחיתה את הארץ כאילו הרג

28     את כל האדם יחדיו והמחייה אותה כאילו החיה את כל האדם יחדיו "

29     [קוראן, בשורת השולחן פסוק 35]

30     " انه من قتل نفسا بغير نفس او فساد في الأرض فكأنما قتل الناس جميعا ومن احياها

31     فكأنما احيا الناس جميعا "   القران الكريم سورة المائدة 35

32     אנא מן קטל נפס בר"יר' נפס או פסאד פי אלארד פכאנמא קטל אל נאס

33     ג'מיעא ומן א חיאהא פכאנמא אחיא אל נאס ג'מיעא (אלקוראן אל כרים

34     סורת אל מאאידה 35 )

35

</div>

-4-

<div dir="rtl">

תאריך: י"ב תמוז, תשס"ז                                           תיק מס': 2303/04
28 ביוני, 2007

1  פסוק זה מבטא את יחסו של המקור האלוהי המוסמך והקדום ביותר של האסלאם, המודד
2  את ערכה של עבירת הרצח במונחים אינפיטסימליים, כך ששווי הנפש הנרצחת או המוצלת
3  ממוות הוא אינסופי והמשחית אותה כאילו השחית את האדם כולו .
4
5  וכן הוא מאמר חז"ל: משנה סנהדרין פרק ד' משנה ה'.
6
7  "הוו יודעין שלא כדיני ממונות דיני נפשות. דיני ממונות אדם נותן
8  ממון ומתכפר לו. דיני נפשות דמו ודם זרעיותיו תלויים בו עד סוף
9  העולם, שכן מצינו בקין שהרג את אחיו שנאמר דמי אחיך צועקים
10 אינו אומר דם אחיך אלי דמי אחיך, דמו ודם זרעיותיו...שאדם טובע
11 כמה מטבעות בחותם אחד וכולן דומין זה לזה, ומלך מלכי המלכים
12 הקדוש ברוך הוא טבע כל אדם בחותמו של אדם הראשון. ואין אחד
13 מהן דומה לחברו. לפי כך כל אחד ואחד חייב לאמר בשבילי נברא
14 העולם.

15
16 הנרצחים נרצחו במזיד אך זהותם הייתה מקרה, לא הרגו את הנפש ולא שיחתו את הארץ, ההורג
17 אותם נטל עולם מלא ולפיכך ראוי ככלל, לגזור לו מאסר עולם מלא וליטול ממנו עולם מלא בגין
18 כל עולם ועולם שנטל הוא והעביר מן העולם.
19

## ה. הנסיבות המקלות הקשורות בביצוע העבירה

20
21
22 בביצוע העבירה השתתפו מבצעים אחדים, וחלקו של הנאשם בביצועה היה קטן מחלקם של
23 האחרים. לשם הגשמת שיקול עונשה זה בדק בית המשפט את חלקו של הנאשם בכל אחת מן
24 העבירות, ומצא כי נטל בכל אחת מהן חלק משמעותי ואף מרכזי. לפיכך אין לראות בשיקול זה
25 נסיבה מקילה לעונש.
26

## ו. הנסיבות המחמירות הקשורות בביצוע העבירה הן אלה

27
28
29 1. הנאשם ביצע את העבירה באמצעות אחר. לשם הגשמת שיקול עונשה זה הבאנו בחשבון כי
30 הנאשם הוא זה שגייס את המתאבד, דאג להכשרתו ועקב אחרי "התקדמותיו". הנאשם דאג
31 לכסות את המתאבד במקום עבודתו לכל ירגישו בהיעדרו. אין ספק כי זהו מקרה קשה ובוטה
32 של ביצוע עבירה באמצעות אחר, שאף הלך לדרכו כמרעום אנושי וכמנגנון הנחייה אנושי, של
33 פצצה שמטרתה הרג חסר אבחנה הצופן בכנפיו גם את מותו שלו. יש רגליים לסברה, לאחר
34 קריאת חומר הראיות, כי מצבו הנפשי של המתאבד עלי גיעאדרה היה קשה והנאשם ניצל מצב
35 זה בציניות ובראבחנות. אשר על כן, יראה ביהמ"ש בשיקול זה שיקול עונשה לחומרא.
36

</div>

-5-

תיק מס׳: 2303/04                                תאריך: י״ב תמוז, תשס״ז
                                                28 ביוני, 2007

2.  **בביצוע העבירה השתתפו מבצעים אחדים, וחלקו של הנאשם בביצועה היה גדול מחלקם של**
    **האחרים.** לשם הנשמת שיקול עונשי זה הביא ביהמ״ש בחשבון כי חלקו של הנאשם גדול
    מחלקיהם של אחרים ושקול לחלקם של אנשי חולייתו, זאהר מקדאד ואחמד צאלח
    (2305/04,2304/04). בדחקו את טענת הסנגור לפיה אין להפלות את הנאשם ביחס לעלי אבו
    הלאיל (2306/04), ונראה כי אופן ניהול התיק בערכאה הדיונית וכן ניסוח כתב האישום
    הביאו להרשעת עלי אבו הלאיל בעבירה של סיוע לגרימת מוות תחת עבירה של גרימת מוות
    בכוונה.

    אמרו חז״ל **אין לו לדיין אלא מה שעיניו רואות**, (בבלי ,סנהדרין דף ו׳ עמ׳ ב׳). בתיק זה ראו
    עיניו מערכות עמוקה במעגל הפנימי בכל שלבי העבירה, תוך ניצול ציני של כל גורם אפשרי כדי
    להביא למטרת הרצח ההמוני. הראיות אשר עמדו בפני ביהמ״ש זה אינן הראיות אשר עמדו בפני
    ביהמ״ש שדן בעניינו של אבו הלאיל, אשר בחר להודות בכתב האישום בשלב מוקדם ובכך פתח
    את הדרך לערער ספק בחלקו כמסייע או כשותף.

    אכן שיקול העניישה של מניעת הפלייה ושרירות, ומראית פני הצדק, אינטרס חזק הוא בעניישה
    הפלילית ופעמים יפסוק בית המשפט עונש אף שאינו ראוי בעיניו על מנת להגשים שיקול עניישה
    חשוב זה .

    בדיקה יסודית שערכנו בתיקו של עלי אבו הלאיל הניחה את דעתנו כי השוני בין התוצאות
    בהכרעות הדין הצדיק בסופו של דבר את השוני בעניישה. אין ספק, חומר הראיות שעמד בפנינו
    מציג את עלי אבו הלאיל באור בעיניי הרבה יותר, אך אופן ניהולו של המשפט הביא לכך
    שמהבחינה ראייתית עמד בפני בית המשפט שם נוסח כתב האישום בלבד והתמונה המתקבלת
    מנוסח זה עגומה הרבה פחות מהתמונה המוצגת מחומר הראיות אותו זכינו אנו לראותו. מכאן
    מקור טענת הסנגור בפנינו, ופה פתרונה. לשם השלמות נביא להלן להבהרת הדברים קטע
    מהכרעת הדין בעניינו של עלי אבו הלאיל :

    > "הדיונים בתיק זה נדחו מתזכורת לתזכורת, אך בסופו של דבר, דחיות אלו חסכו זמן
    > רב מבית המשפט. ביום 4.8.2005 הודיע סנגורו של הנאשם כי מרשו מודה בעובדות
    > כתב האישום, אך כופר באשמה. ביום זה נקבעו מועדי הגשת סיכומים, התביעה עד
    > ליום 19.9.2005 והסנגוריה עד ליום 20.10.2005.

    > השאלה המשאלת הינה, האם במעשים אלה נכנס הנאשם בגדר שותף לעבירה, או
    > שמא סיווגו הנכון הינו מסייע בלבד!

    > התובעת הצבאית בסיכומיה הגדירה גם היא את השאלה, וכך היא מנוסחת שם,
    > האם מי שאסף חומרים כימיים וייצר תיק נפץ בידיעה כי תיק הנפץ ישמש לשם ביצוע
    > פיגוע התאבדות, דינו כשל מסייע או כשל שותף?

-6-

<div dir="rtl">

תיק מס׳ : 2303/04          תאריך : י״ב תמוז, תשס״ז
28 ביוני, 2007

1    התביעה מנסה להסתמך על ע׳ איו״ש 2377/04, התוב״ג נ. ראסם חמאמרה אשר שם

2    נקבע, כביכול, כי אדם אשר מייצר את מטען החבלה בעבור מחבל מתאבד ייחשב

3    כשותף מלא לעבירה המושלמת. לדידי נקלעה התובעת לכלל טעות בציטוט פסק דין

4    זה. באותו מקרה פסק בית המשפט כי ניתן לראות באדם אשר ״אחראי להכנת מטען

5    החבלה״ שותף. הבדל תהומי יש בין אדם אשר במסגרת הקשר העברייני לוקח על

6    עצמו את האחריות לדאוג לכך כי יהיה מטען חבלה, בדומה לקושר אשר דואג

7    למתאבד או לאמצעי תחבורה, לבין אדם אשר אינו חלק מהקשר העברייני

8    מלכתחילה, אינו נמנה בין המתכננים אינו יוזם דבר וחלקו מסתכם בייצור מטען

9    חבלה לבקשתו של אדם אחר .

10

11    יובהר, אינני סבור כי הנאשם לא ידע בדיוק למה מיועד תיק הנפץ, אך האם עצם

12    ידיעתו זו מספיקה להפוך אותו ממסייע לשותף, סובר אני שלא. אך לפני זמן קצר

13    נתן בית המשפט הצבאי לערעורים פסק דין בע׳ איו״ש 2156/05+2135, צפורת נבור נ.

14    התובע הצבאי בו פורט שוב, ובהרחבה המבחנים אשר נוהגים להיישם בהם על מנת

15    להבחין בין שותף לעבירה לבין מי שאך מסייע בביצועה. כבוד נשיא בית המשפט

16    לערעורים, אלו״מ שאול גורדון התייחס לאפשרות להרשיע אדם כשותף מלא לעבירה,

17    וזאת למרות העובדה כי אינו נוכח בזירת האירוע וכך נכתב שם :

18    בהמשך הדנש הנשיא שוב את העובדה כי באזור נעזרים אנו במבחנים המקובלים

19    בישראל, מבחן השליטה ומבחן אדנות העבירה, וכך הדברים מופיעים שם :

20    הנה כי כן; סיווגו של אדם כשותף לעבירה מבוסס אמנם על חלקו המעשי ועל

21    תרומתו להגשמת העבירה, אך לא פחות מכך על הלך נפשו ועל רצונו בהשלמתה של

22    זו.

23    ״לנוכח דברים אלה נבחן את מעשיו של הנאשם. האם היה בין יוזמי הפיגוע? האם

24    תכנן, זלו הפרט הקטן ביותר בפיגוע? האם נתן הוראות או הראה שליטה על חלק

25    מחלקי הפיגוע. התשובה לכל השאלות האלה הינה שלילית באופן וודאי .

26

27    התביעה מנסה לטעון גם, כי לאור מעשיו הפיסיים המשמעותיים של הנאשם

28    בהוצאת הפיגוע אל הפועל, יקטן הצורך במערכות בתכנון הפיגוע על מנת לראות

29    אותו כשותף מלא. אינני חולק על סברה זו, אך אינני רואה איך ניתן לומר כי

30    המעשים הפיסיים של הנאשם הינם כה נרחבים עד שאין כל צורך שיהיה לו חלק

31    כלשהו בתכנון הפיגוע על מנת לראותו כשותף.״

32

33    סיכומו של דבר: קיים אי שוויון בין עניינו של הנאשם אבו אלהיל ובין הנאשם שבפנינו, שאינו

34    מצדיק התערבות בעונש.

35

36    3.   **הנאשם ביצע את העבירה תוך שימוש לרעה בסמכותו.** לשם הגשמתו של שיקול עונשה זה

37    הבאנו בחשבון את היותו של הנאשם איש רשות ביטחונית של ה״רשות הפלסטינית״

</div>

P 8: 67

שהוקמה ע"פ הסכמה הביניים ומתוקף זה לובש מדים. בזמן שהוא משמש בתפקידו שעיקרו 1
מתן אמון בו לשם שמירה על בטחון האזור, עומד הנאשם ומגייס מחבל מתאבד, שהינו איש 2
משטרה כמוהו תוך שהוא משתמש לרעה בכלים של סמכות ומדים העומדים לו. שיקול זה 3
עומד לו לנאשם לרעתו. 4

5

4. **העבירה בוצעה בסדרת מעשים המהווים פרשה אחת.** לשם הגשמתו של שיקול עונשה זה 6
בדק בית המשפט ומצא כי יסוד העקביות והתכנון המדוקדק עובר לחומרא, כחוט השני בכל 7
מעשיו של הנאשם. מעשיו אינם נושאים אופי חדגוני ומסוים (כמו שראה בית המשפט שדן 8
בעניינו של אבו הליאל) אלא שידוו בכל לשם קידום הקשר והוצאתו לפועל : מגיוס המתאבד, 9
דרך שכנוע, הכנת המטען ולבסוף גם וידוא הביצוע. כל אלה מוכיחים עקביות דבקות 10
והתמדה ללא רגע של חולשה, טעות, מעידה או מחשבה פלילית זמנית. בנסיבות אלה מהוות 11
העובדות שיקול לחומרא. 12

13

5. **מביצוע העבירה נפגעו כמה אנשים.** מובן כי יסוד החומרה היתרה הנובעת מפיגועי התאבדות 14
המשלבים שימוש בחומר נפץ הינו הכוונה לבצע פגיעה המונית וחסרת אבחנה. מטרה זו 15
שהייתה מטרת הנאשם הוגשמה במלואה ואכן טבחה טבח קשה באחד עשר בני אדם, 16
שהמשטרה הייתה להרגם רק משום השתייכותם הלאומית או הדתית. 17

18

6. **למעשה העבירה קדם תכנון.** לשם הגשמת שיקול עונשה זה בדק בית המשפט ומצא כי 19
לעבירות קדם תכנון מדוקדק אשר צוף בחובו שיקול מתאים לחומרא. 20

21

7. **העבירה נעברה מתוך מניע של גזענות או של עוינות כלפי ציבור כאמור בסעיף 144ו(א) לחוק 22
העונשין, תשל"ז – 1977.** לשם הגשמת שיקול זה הביא בית המשפט בחשבון כי מניעי 23
העבירות היו גזעניים מובהקים ומטרתן להביא להרג של יהודים או ישראלים באשר הם 24
יהודים או ישראלים, הרצח המתוכנן– חסר אבחנה היה ולא יוחד אלא ליהודים או ישראלים 25
אשר יזדמנו למקום ולמועד אותו קבע הנאשם. משלא נותר מקום לספק כי הקריטריון 26
אשר היה אמור לדון את הקורבנות למוות הוא הלאום היהודי או הציבור הישראלי  ישקול 27
בית המשפט שיקול זה לחומרא. 28

29

האיש אשר אותו הרג הנאשם עם שותפו מצא את מותו מסיבה של עוינות כלפי ציבור שכן 30
הסיבות לחטיפתו עיניו ומותו היו הקשרים שיוחסו לו כביכול עם ישראלים, שכיחותן של 31
עבירות כאלה באזור, אל לה לטשטש את הנסיבה המחמירה שיסודן בעוינות כלפי ציבור 32
ובגזענות פשוטה. 33

34

## ז. הנסיבות המחמירות שאינן קשורות בביצוע העבירה הן אלה 35

36

הצורך בהרתעת עבריינים פוטנציאליים מפני ביצוע עבירה מסוג העבירה שביצע הנאשם, בשל 37
מהות העבירה או שכיחותה. 38

-8-

תיק מס׳ : 2303/04          תאריך : י״ב תמוז, תשס״ז
                          28 ביוני, 2007

1   לשם הגשמת שיקול עישה זה הביא בית המשפט בחשבון כי העבירה ומאפייני ביצועה הינם
2   שכיחים ביותר והצורך בהרתעה ציבורית הינו גבוה.

3

4   כל זאת שקל בית המשפט כשיקול לחומרא. אדם אשר יש לו יד בביצוע פיגוע התאבדות בחומרי
5   נפץ אינו יכול להסתתר עוד מאחרי היסוד הנפשי של המתאבד או של היוזם אלא חלק שווה לו
6   בכל הרוג והרוג ואין להורג בזדון עישה מתאימה, אלא מאסר עולם לכל הרוג שהזיד להורג.

7

8   ## סוף דבר
9
10  צדק אמנם לא עשינו עם המתים ועם יקריהם, את הדם השפוך לא כיפרנו בדם שופכו, אך
11  משפט שבכוחנו לעשות נעשה. אנו גוזרים לנאשם את העונשים האמורים :
12
13  א. מאסר עולם בגין גרימת מותו בכוונה של **אברהם בלחסן** ז״ל.
14
15  ב. מאסר עולם בגין גרימת מותה בכוונה של **חנה בונדר** ז״ל.
16
17  ג. מאסר עולם בגין גרימת מותו בכוונה של **ענת דרום** ז״ל.
18
19  ד. מאסר עולם בגין גרימת מותו בכוונה של **יחזקאל גולדברג** ז״ל.
20
21  ה. מאסר עולם בגין גרימת מותו בכוונה של **ולדי צדיק מנברה** ז״ל.
22
23  ו. מאסר עולם בגין גרימת מותו בכוונה של **ויורל אוקטביא פלורסקו** ז״ל.
24
25  ז. מאסר עולם בגין גרימת מותה בכוונה **רוזה בונה** ז״ל.
26
27  ח. מאסר עולם בגין גרימת מותה בכוונה של **דנה איטח** ז״ל.
28
29  ט. מאסר עולם בגין גרימת מותו בכוונה של **רומן חונדיאשווילי** ז״ל.
30
31  י. מאסר עולם בגין גרימת מותו בכוונה של **אלי ציפורה** ז״ל.
32
33  יא. מאסר עולם בגין גרימת מותו בכוונה של **נטליה גמריל** ז״ל.
34
35  יב .מאסר עולם נוסף בגין העבירות הנוספות בהן הורשע.
36
37  כל העונשים ירוצו במצטבר כך שעל הנאשם יושתו שנים עשר שנים עשר מאסרי עולם לריצוי במצטבר.
38
39  ## כב׳ האב״ד רס״ן יאיר תירוש וכב׳ השופט רס״ן זאב אפיק
40
41  אנו מסכימים.
42
43  זכות ערעור תוך 30 יום.
44
45  ניתן בלשכה, 28.06.07, העתק מההחלטה יועבר לצדדים.
46
47
48

        שופט                          אב״ד                        שופט

-9-