# EXHIBIT A.889
## (3 of 4)

Date: July 29, 2009

File No.: 3052/06

The Defendant cannot avail himself of any defense in this case. In the case that is before us, the defense of "act of state" does not apply, *inter alia*, because the Palestinian Authority is not a state and, during the relevant period of time, its status was even farther from statehood than it is today. Even if this defense had existed under law in the Area, the Defendant could not have taken shelter under it, in light of the fact that he transferred weapons, knowing that the weapons were meant to be used by a terrorist organization such as the al-Aqsa Martyrs Brigades.

The Defendant cannot avail himself of the defense of justification, because, even in accordance with the broadest interpretation of this defense (which, in accordance with that which has been set forth above, appears in the ruling which was handed down by my colleague, the Deputy President of the Court, with regard to the preliminary arguments), the Defendant took part in actions which are not legitimate, in a way which is not in accordance with the powers which were granted to the Palestinian Authority in the interim agreements; he acted many times on his own initiative, and not as a follower of orders; and even if there were cases in which he followed orders, the acts in question are clearly illegal, since, in accordance with that which has been set forth above, they have to do with the transfer of weapons and resources to terrorist organizations.

In light of that which has been set forth above, we have decided to convict the Defendant of all of the charges which have been attributed to him in the indictment.

### Judge Lieutenant Colonel Ronen Atzmon:

I concur.

### Judge Lieutenant Colonel Tal Band:

I concur.

**Handed down and notified this day, July 29, 2009, in public and in the presence of the parties.**

| _____ | _____ | _____ |
|:---:|:---:|:---:|
| **Judge** | **President of the Court** | **Judge** |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

    Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as "Israeli Military Court Case File No. 3052/06 The Military Prosecution v. Fuad Hejazi Shubaki, Verdict dated July 29, 2009."

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as "Israeli Military Court Case File No. 3052/06 The Military Prosecution v. Fuad Hejazi Shubaki, Verdict dated July 29, 2009."

Dated: March 7, 2014

                                            Rina Ne'eman

ss.: New Jersey

On the __7__ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
___ day of March, 2014

Notary Public

SHELLY TESSEIN
Notary Public
State of New Jersey
My Commission Expires Nov. 16, 2017
I.D.# 2427073

בית המשפט הצבאי יהודה

בפני כבי הנשיא: סא"ל צבי לקח

השופט: סא"ל רונן עצמון

השופט: סא"ל טל בנד

התביעה הצבאית .

(באמצעות סגן אנדריי ורשצ'גין )

נגד

הנאשם: פואד חג'אזי שובכי ת.ז. 410026173/שב"ס

(באמצעות ב"כ עו"ד אביגדור פלדמן)

## הכרעת דין

### הנשיא סא"ל צבי לקח:

הנאשם שלפנינו מואשם בארבעה פרטי אישום שעניינם העברת כספים לצרכי רכישת אמצעי לחימה כפי שיפורט להלן.

**פרט ראשון – סחר בציוד מלחמתי**: מיוחס לנאשם כי יחחל משנת 2000 ועד לסוף ינואר 2002 עסק בסחר בציוד מלחמתי. נטען כי הנאשם נטל חלק בישיבה בה הורה יאסר ערפאת לו ולראשי מנגנוני הביטחון לרכוש כל כמות של נשק מכל מקום אפשרי. הנאשם פעל ממועד פגישה זו יחד עם אחרים לרכוש כמויות גדולות של אמצעי לחימה. הנאשם שעמד בראש משרד הכספים הפלסטיני ריכז את בקשות אנשי המנגננונים השונים ואלו הועברו אליו כנייירות עבודה. על מנת לוודא שאמצעי הלחימה עליהם הוא משלם אכן קיימים, דרש הנאשם מחתפונים אליו להביא את כלי הנשק למשרדיו ולצורך כך חחזיק מחסן אמצעי לחימה ברמאללה וכן מחסן נוסף ברצועת עזה. לאחר שאמצעי הלחימה הועברו לרשותו, היה הנאשם מגיש את נייר העבודה לאישורו של יאסר ערפאת, ולאחר אישורו של זה, היה הנאשם חותם אף הוא על הבקשה ומאשר לאנשיו להעביר את הכסף לפונים באמצעות העברה בנקאית. במהלך התקופה הנ"ל נרכשו כ- 1000 טונות של אמצעי לחימה תמורת 7-10 מיליון דולר. את אמצעי הלחימה דאג הנאשם להעביר למנגנוני הביטחון הפלסטיניים ביודעו כי חלק ניכר מאנשיהם הינם חברים בזרוע הצבאית של ארגון הפת"ח שביצעה פיגועים רבים אותה עת.

1  **פרט שני – ביצוע שירות עבור התאחדות בלתי מותרת** : נטען כי בתקופה האמורה בפרט האישום
2  הראשון העביר הנאשם לחברי החוליות הצבאיות של ארגון גדוד חללי אלאקצא באזור בית לחם
3  משכורות חודשיות בסך 500 ₪. באותה עת ביצעו חברי חוליות אלה פיגועים רבים. בחודש
4  אוקטובר 2001 קיבל הנאשם בקשה לתשלום של 25,000 דינר מידי מרואן ברגותי לצורך רכישת
5  אמצעי לחימה וחומרים לייצור מטעגים, ולצורך תשלום משכורות ל-268 חברים בגדודי חללי
6  אלאקצא. הנאשם העביר בקשה זו לידי יאסר ערפאת, אשר הורה לו לשלם את הכסף באמצעות
7  משרד האוצר.
8
9  **פרט שלישי - סחר בציוד מלחמתי** : פרט זה מפרט את חלקו לכאורה של הנאשם במימון וארגון
10 ספינת הנשק קארין A, שנתפסה בתאריך 3.1.02 כשעליה כמויות גדולות של אמצעי לחימה
11 מסוגים שונים, ובכלל זה רקטות, מרגמות ומקלעים. נטען כי בחודש ספטמבר 2001 נפגש הנאשם
12 עם פתחי ראזם, וזה עדכן אותו בדבר מגעיו עם האירואנים בכל הנוגע למימון ספינת הנשק. פתחי
13 ראזם הודיע לנאשם כי על חרש"פ לשאת בעלות של 125,000 דולר. הנאשם הסכים לכך ואף
14 הסכים לפנות ליאסר ערפאת לקבלת המימון הדרוש לכך. בשלב מאוחר יותר העביר הנאשם
15 ליאסר ערפאת את דרישת התשלום וזה חתם עליה. הנאשם העביר את הוראתו של יאסר ערפאת
16 באמצעות שליח למשרדו של חרבי צרצור, אחראי על הדלק ברש"פ. הספינה ועליה הציוד
17 המלחמתי עגנה בתימן. הנאשם, שהיה בתימן אותה עת, עודכן בדבר הגעת הספינה וקיבל דיווח
18 על הכוונה לחיץ דרכוניים לשניים מאנשי הספינה. לאחר שהספינה הפליגה מתימן לתעלת סואץ,
19 נתפסה בידי כוחות צה"ל ביום 3.1.02, כאמור.
20
21 **פרט רביעי – מגע עם ארגון עוין מחוץ לאזור** : פרט זה עניינו מגעים שקיים הנאשם עם גורמים
22 איראניים, במסתרה לתאום את שיתוף הפעולות הצבאי בין איראן לבין חרש"פ. בין היתר עלו
23 אפשרויות להקמת מפעלי תחמושת בתחומי חרש"פ, העברת אמצעי לחימה מלבנון דרך
24 החיזבאללה, ואימונים צבאיים לאנשי חרש"פ בלבנון ובאיראן. כמו כן נערך מסמך סיכום המפגש,
25 וזה הוצג לאחר מכן על ידי הנאשם ליאסר ערפאת.
26
27 <u>**גדר הבפירה**</u>
28
29 לא הוכחש כי הנאשם היה אחראי על ענייני הכספים של מנגנוני הביטחון ברשות הפלסטינית,
30 בתקופה הרלוונטית לכתב האישום. עם זאת נטען כי הוא פעל ברשות ובסמכות. עוד נטען, כי חלק
31 מהעובדות המפורטות בכתב האישום אינן נכונות. בנוסף, נטען כי אמרותיו של הנאשם,
32 המבססות את עיקרו המכריע של כתב האישום, נגבו ממנו שלא כדין.
33
34 <u>**ניהול המשפט**</u>
35
36 בראשיתו של ניהול התיק הועלו טענות מקדמיות אולם אלה נדחו בהחלטה שניתנה ביום
37 04.12.06. לאחר החלטה זו, ובעקבות כפירת הנאשם באשמה, החלה פרשת הבאת הראיות.
38 מרבית חומר הראיות הוגש בהסכמה, אולם הסכמה זו התייחסה אך ורק לחומר הראייתי שלא
39 התייחס באופן ישיר לנאשם. כך, למשל, לא הייתה מחלוקת כי נתפסה ספינת הנשק קארין A.

-2-

תיק מס': 3052/06

1   כאמור, כתב האישום מבוסס בעיקרו על אמרות הנאשם. מאחר והייתה מחלוקת על קבילותן של
2   אמרות אלה, נוהל משפט זוטא. הוסכם על ידי הצדדים כי ההכרעה במשפט הזוטא תינתן
3   במסגרת הכרעת הדין בתיק כולו. במסגרת התיק העיקרי נדרשנו לשמוע עד אחד בלבד מטעם
4   התביעה, מחמוד עביאת, וכל יתר חומר הראיות, למעט אמרות הנאשם, הוגש בהסכמה. במסגרת
5   פרשת ההגנה העיד הנאשם.
6

7   התביעה הגישה סיכומיה בכתב, והסניגוריה השמיעה לבסוף את סיכומיה בעל פה, הגם שבאיחור
8   ניכר של 4 חודשים.
9

10   **משפט הזוטא**
11

12   **כללי**
13

14   כאמור, לאור טענת ההגנה כי אמרות הנאשם נגבו באופן שאינו חופשי ומרצון, נוהל משפט זוטא.
15   במסגרתו, ולאור טיעוני הזוטא שהועלו, נשמעו שלושת חוקרי המשטרה שגבו את אמרותיו של
16   הנאשם, וכן שלושה חוקרים של שירות הביטחון הכללי שניהלו את עיקר חקירתו של הנאשם.
17   במסגרת פרשת ההגנה במשפט הזוטא העיד הנאשם וכן העיד מר מחמד חיג'אזי, אשר היה עם
18   הנאשם באותו תא בחלק מהתקופה בה נחקר.
19

20   **טיעוני הזוטא**
21

22   א. נטען כי הנאשם נחקר לאורך חודשיים חקירות ממושכות במשך רוב שעות היממה תוך
23      שנמנעת ממנו שינה.

24   ב. נטען כי הנאשם הינו אדם חולה, שנזקק לטיפול תרופתי במחלות כרוניות, ותרופותיו לא
25      ניתנו לו ואף לא לא סופק לו תחליף הולם.

26   ג. נטען כי הנאשם היה אזוק בידיו וברגליו במהלך החקירה, דבר שגרם לו לכאבים עזים
27      ולתחושת השפלה קשה. עוד נטען שלעתים היו חוקריו משאירים אותו לבד בחדר כשהוא
28      אזוק, למשך ארבע עד שבע שעות, דבר שהביא את הנאשם למצב של כאב, פחד וחרדה
29      עמוקים.

30   ד. במהלך שהותו בחקירה, הרסו כוחות צה"ל את ביתו של הנאשם, עקרו עצי הדר ועצי זית
31      רבים בחלקתו והשמידו טון וחצי דבש. הידיעה אודות ההרס הביאה את הנאשם לחרדה
32      ופחד ביחס לגורל בני משפחתו. החוקרים ניצלו זאת כדי לומר לנאשם שאם יודה יוכל
33      לצאת לחופשי ולסייע לבני משפחתו.

34   ה. נטען כי נאמר לנאשם שבשל העובדה שהוא אדם זקן וחולה ולא נותרו לו שנים רבות
35      לחיות, חוקריו אינם מעוניינים לחקור ולהחזיק אותו במעצר זמן ממושך. על כן, אם יודה
36      יצא מייד לחופשי. הודאותיו ניתנו בכפוף לחבטחות אלה ובשל פעולת פיתוי זו.

37   ו. נטען כי חוקריו של הנאשם הטיחו בו האשמות שווא, וחזרו ואמרו לו שהוא משקר להם.
38      החוקרים נקטו בשיטות של חתשה פיזית ונפשית. הנאשם שהינו אדם מבוגר ומכובד

תיק מס׳: 3052/06                                              תאריך: 29/07/09

1 בקהילתו חש מושפל מהתנהגות החוקרים הצעירים כלפיו, ובצירוף מצבו חפיזי הקשה,
2 ייחל למותו ולרגע שבו יסיים את החקירות.

3 ז. נטען כי הנאשם חתם על הודאותיו על מנת לרצות את חוקריו, ומבלי שידע מה כתוב
4 באמרות שנכתבו בשפה העברית, אותה אינו קורא. חוקרי המשטרה הסתמכו על זכ״דים
5 של תשב״כ וכשעמוד על אי הדיוקים והטעויות המנויים בזכ״דים נתנו לו חוקרי המשטרה
6 להבין כי ״תגתו ובוהו״ יתרחש אם יחזור בו מהודאותיו.
7

8 נקדים ונאמר, כי לאור עדותו של הנאשם עצמו במשפט הזוטא, אשר לא עמד על חלק ניכר
9 מטיעוני הזוטא, צמצמה ההגנה בסיכומיה את טיעוניה לטענות זוטא שעניינן יחס משפיל כלפי
10 הנאשם.
11

12 <u>הראיות במשפט הזוטא</u>
13

14 <u>עדותו של השוטר דוד מזרחי</u>
15

16 עד זה מסר כי הוא דובר ערבית מהבית, מלימודיו ומהעבודה. בעת שהעיד ציין כי הוא זוכר
17 את תווי פניו של הנאשם, אך לא זכר את פרטי חקירתה באמת האחוזים. העד מסר שהוא נוהג
18 לזהות את החשוד שבפניו, ולאחר מכן הוא מזדחח כשוטר. הוא מקריא לו את תוכן האזהרה,
19 ולאחר שהחשוד מבין את תוכנה וחותם עליה, גובית העדות בצורה של שאלות ותשובות. העדות
20 גבית בשפה הערבית, ונכתבת על ידו בשפה העברית. בתום כל עמוד הוא מקריא אותו לחשוד
21 בשפתו, וזה חותם עליו. לפי הרשום באמרות הוא כיבד את הנאשם בסיגריה ואיפשר לו לעשן. העד
22 ציין כי התרשם שמצבו של החשוד היה ״בסדר״ ושהוא מסוגל למסור עדות, שלולא כן היה רושם
23 וכי״ד בעניין, או מציין זאת באמרה, ונמנע מהמשך גביית העדות. כך חדבר גם לגבי אירועים
24 חריגים במהלך העדות. כשהתבקש לציין דוגמאות לאירועים מיוחדים שחיה רושם לו התרחש,
25 מסר כי הדבר יכול להיות למשל, שחשוד מתלונן על כאבי ראש, כי אינו חש בטוב, או כי אינו
26 מסוגל למסור את העדות. הוא ציין כי תוך כדי גביית האמרה הוא מציין אירועים כגון כיבוד
27 החשוד בשתייה, או מתן סיגריה וכדומה.
28

29 העד מסר כי במהלך החקירה שניהל האווירה היתה ניגוחה, והנאשם לא ציין בעיה כלשהי.
30 כשהנאשם ביקש לעשן ניתנה לו האפשרות לעשות כך, ולא היה דבר חריג מעבר לכך. עוד ציין כי
31 במהלך החקירה הנאשם ישב מולו כשרגליו כבולות. העד מסר כי לא יכול להיות שהשאיר את
32 הנאשם בחדר לבד למשך זמן רב, שכן המדובר בחדר חקירה בו נמצאים תיקים נוספים, ובכלל זה
33 תיקו האישי, כך שלא יכול להיות שעזב את החדר.
34

35 העד נשאל לגבי הטענה כי נאמר לנאשם שביתו נהרס, שנעקרו עצי זית והדר והושמדו טון וחצי
36 דבש. הוא השיב כי עד למועד מתן עדותו בבית המשפט כלל לא ידע שלנאשם עצי הדר ודבש, והוא
37 (החוקר) בכל מקרה לא אמר דבר כזה.
38

-4-

תאריך: 29/07/09

תיק מס': 3052/06

1   העד טען שמעולם לא אמר לנאשם כי נותרו לו שנים מעטות לחיות וכי אם יודה ישוחרר מייד,
2   ומסר כי הדבר אסור, והוא אינו נוקט אמצעים כאלה.
3

4   העד ציין כי עיין בזכ"דים של השב"כ לפני גביית העדות, וכי על סמך הזכ"ד הקריא לנאשם את
5   החשד נגדו, וזה היוווה גם קו מנחה לעדות שנגבתה.
6

7   העד הכחיש את הטענה לפיה אמר לנאשם שאם יחזור בו מדבריו בשב"כ יקרה "תוהו ובוהו".
8

9   העד נשאל האם חקירת השב"כ והמשטרה התנהלו באותו מקום, ומסר כי אף שמדובר באותו
10  מתקן, העדזות נגבתה בחדר החוקרים של המשטרה. הוא ציין כי הוא לא נכנס לחדרי חקירות של
11  השב"כ, והם (השב"כ) לא נכנסים לחדרי החקירות של המשטרה. הוא אף ציין שחדר החקירות
12  של המשטרה נראה שונה מחדרי החקירות של השב"כ.
13

14  העד מסר כי אינו יודע לכתוב בערבית ולכן כתב את האמרה בעברית, חזר על כך שאת מה שכתב
15  תרגם לנאשם, וכן ציין כי הזהיר את הנאשם בערבית. העד ציין כי לא ידע כמה שעות ישן הנאשם
16  לפני העדות שנגבה, וגם לא ידע כמה יממות נחקר קודם לכן על ידי השב"כ והמשטרה. העד ציין כי
17  היה בפניו זכ"ד של הדברים שנאמרו במהלך החקירה בשב"כ טרם גביית ההודעה, אך לא
18  השתלשלות של כל החקירה או כל האירועים שקדמו לה. הוא מסר כי בדרך כלל נמצא בפניו זכ"ד
19  אחד, אך הוא אינו זוכר לגבי מקרה זה.
20

21  **עדותו של השוטר משה לוי**
22

23  עד זה ציין בעדותו בפניו כי הוא זוכר את החקירה באופן כללי, אך לא לפרטי פרטים. הוא מסר
24  כי את הודעותיו של הנאשם גבה במתקן אשקלון, לאחר שהוזהירו כחוק. החקירה התנהלה בשפה
25  הערבית והאמרות נכתבו בשפה העברית. לאחר מכן הקריא את ההודעות לנאשם בערבית והוא
26  אישר אותן בחתימת ידו.
27

28  העד מסר כי הוא מתעד אירועים חריגים המתרחשים במהלך חקירה באמרות עצמן או בזכ"ד
29  נפרד. במקרה של הנאשם הוא ציין בגוף האמרות את העובדה שנתן לנאשם לאכול ולשתות. הוא
30  מסר כי האווירה בחקירה הייתה ניוחה. הוא זכר את הנאשם כאדם בעל סבר פנים יפות, חייכן,
31  ששיתף פעולה וענה לשאלות שנשאל.
32

33  הוא זכר שהנאשם נזקק לטיפול תרופתי עקב מצבו הבריאותי – וכי תרופות סופקו לו על ידי
34  מרפאת הכלא. הוא זכר כי פעם אחת נכנס חובש לחדר וביקש לתת לנאשם את התרופה היומית
35  שלו. הוא מסר כי לאחר בירור שעשה, איפשר לנאשם ליטול את תרופתו, והוא תיעד זאת בגוף
36  האמרה (הודעה מס' 7 מיום 2.4.06 גיליון 3 ש' 62).
37

38  העד מסר כי עד כמה שהוא זוכר הנאשם ישב מולו בחקירה לא אזוק. הוא הכחיש שאמר לנאשם
39  כי ביתו נהרס או שעצים נעקרו ודבש הושמד, ואף הכחיש כי אמר לנאשם שאם יודה הוא

תיק מס': 3052/06

1  ישוחרר בשל מצבו הבריאותי וגילו, או כי אם יחזור בו מדברים שמסר בחקירת השב"כ יקרה
2  "תוחו ובוחו".
3
4  העד ציין כי הגופנים (FONT) השונים באמרות המודפסות נובעים מכך שהמדובר בטופס מובנה,
5  והכחיש כי דובר בהעתקה ממקום אחר. הוא ציין כי בפתח הדברים באמרה מיום 19.3.06 שאל
6  את הנאשם לשלומו, והנאשם ענה "ברוך השם בסד"י" והדבר נרשם. הוא טען כי כיוון שהנאשם
7  אדם מבוגר הוא שאל כדי לחיות בטוח לגבי מצבו, ותיעד זאת בגוף האמרה. הוא מסר כי באופן
8  כללי ידע על מצבו הבריאותי של הנאשם, אך לא זכר בדיוק מתי נודע לו עניין זה. העד ציין כי הוא
9  לא זכר שקרא משהו יוצא דופן בזכ"דים של השב"כ לפני החקירה. העד עמד על כך שבחקירה
10 שהוא ערך, הנאשם הבין כי יש לו זכות לשתוק או לספר כל דבר. הוא הוסיף כי בפתח החקירה
11 הוא מציג את עצמו ומסביר לנחקר היכן חיכן הוא נמצא ולאחר מכן מקריא את האזהרה. עניין זה הוא
12 מבצע תמיד לכל חשוד ולכן הוא לא תיעד זאת באמרה, למעט פרטיו האישיים הרשומים. הוא טען
13 כי הוא מקריא כל דבר, גם את פרטיו האישיים של החשוד בפניו כדי לוודא שאכן אלו פרטיו, וגם
14 את האזהרה.
15
16 העד אישר כי החקירה בוצעה בחדר חקירות של המשטרה, הממוצא במתחם חקירות של השב"כ
17 באשקלון.
18
19 העד ציין כי אינו זוכר התייחסות למצבו הרפואי של הנאשם בזכ"דים של השב"כ אותם קרא,
20 והוסיף כי אם הייתה בעיה רפואית הדבר היה עולה. מכיוון שהאמרה אכן נגבתה, משמעות הדבר
21 הינה שהנאשם היה כשיר לחקירה. הוא לא זכר אירוע יוצא דופן לגבי מצבו הרפואי של הנאשם
22 אבל זכר שהוא כיבד את הנאשם בשתייה חמה וקרה ובסיגריות, ושהנאשם עישן הרבה.
23
24 העד ציין כי ההודעה השביעית נגבתה לא בתאריך 4.2.06 כפי שרשום באמרה, אלא בתאריך
25 2.4.06, והמדובר בטעות סופר.
26
27 **עדותו של השוטר יעקב ברזני**
28
29 עד זה מסר כי הוא זוכר את הנאשם אך הוא מסתמך על הכתוב באמרות שגבה. הוא ציין כי הוא
30 גבה את האמרות בשפה הערבית, רשם אותן בעברית, ולאחר מכן תרגם אותן שוב בעל פה לערבית
31 עבור הנאשם. בעדות מיום 26.3.06 הוא הטיח בנאשם דברים שאמרו עליו אחרים, והנאשם
32 התייחס אליהם. העד לא מצא מעניין באמרה כי היו אירועים חריגים במהלך החקירה, אחרת,
33 לדבריו, היו אלה נרשמים. בעדות מיום 14.5.06 הוא הציג לנאשם מסמכים וזה התייחס לכל אחד
34 מהם. הוא ציין כי האווירה בחקירה הייתה טובה, וציין כי מדובר באדם מבוגר. העד מסר כי
35 הנאשם זכר פרטים מתוך המסמכים שהוצגו לו, ולהערכתו יש לנאשם זיכרון טוב.
36
37 העד מסר כי אם הנאשם היה מבקש להיבדק על ידי רופא, הוא היה רושם זאת באמרה ואף
38 מפסיק את גבייתה, שכן ידועה לו משמעותה של אמרה שנגבתה מנחקר שאינו במצב המאפשר
39 למסור עדות בצורה טובה. הוא ציין כי נחקרים המובאים בפניו אינם אזוקים אלא אם כן ישנו

תיק מס': 3052/06

1 חשש כי הם מסוכנים ועלולים להתפרע. במקרה של הנאשם דובר באדם מבוגר ולא היה בכך

2 צורך.

3

4 העד נשאל האם אמר לנאשם כי הרסו את ביתו, עקרו עצים והשמידו דבש, וענה כי זאת הפעם

5 הראשונה שהוא שומע על כך שנהרס ביתו של הנאשם. העד אף הכחיש כי אמר לנאשם שאם יודה

6 אזי בשל גילו המבוגר ומצבו הרפואי ישוחרר מיד. העד ציין כי לא השתמש באמצעי לחץ פיזי או

7 מילולי כלשהו, והכחיש בתוקף כי נתן לנאשם להבין שאם יחזור בו מהודאותיו בשב"כ יקרה

8 "תוהו ובוהו". העד טען כי לא היה צורך להפעיל כוח או לחץ, והכל התרחש באווירה טובה.

9

10 בחקירתו הנגדית ציין העד כי אינו יודע כמה זמן נחקר הנאשם לפני שהוא חקר אותו, אך היו

11 מקרים שבהם הייתה חקירה רצופה לפני כן, ואז המתינו החוקרים על מנת לאפשר לנחקר זמן

12 מנוחה כחוק. הוא אישר כי הוא מסתמך על זכ"דים של השב"כ, הכתובים עברית, וציין כי תרגם

13 לנאשם חלק מהזכ"יד בו יוחסה לו הברחת נשקים. העד אישר כי הוא זה שביקש הארכת מעצר

14 בחלק מהמקרים, אולם לא זכר מהן פעולות החקירה שהתבקשו, ואמר כי לצורך כך יש לבחון את

15 הדו"חות שהוצגו לשופט שדן במעצר. העד ציין כי לא ידע מי תפס את המסמכים שהוצגו לנאשם

16 במסגרת האמרה מיום 14.5.06, או מי תרגם אותם. הוא ציין כי הוא עצמו אינו קורא ערבית, ולכן

17 הסתמך על התרגום, אולם לנאשם הציג את המקור בערבית. עוד ציין כי את העדות של אחר

18 אותה הציג לנאשם תרגם לו לערבית כיוון שזו הייתה כתובה בעברית והנאשם אינו קורא עברית.

19

20 **עדותו של המכונה "יורי"**

21

22 עד זה היה הממונה על חקירת הנאשם מטעם שירות הביטחון הכללי. העד מסר כי הוא זוכר את

23 החקירה ואת הנאשם. הוא טען כי דובר בחקירה מורכבת ובסבך כשבמסך הכל האווירה הייתה מאוד

24 ניגוחה, עם הרבה מאוד כבוד הדדי. העד הוסיף שהנאשם הותק בתא מעצר ככל העצורים, אולם

25 זכה בחקירה ליחס מאוד מכובד בהתאם למעמדו. הוא ציין כי כמעט בכל תקופת החקירה

26 הנאשם כובד באוכל ממטבח החוקרים, עישן סיגריות, וקיבל מענה גם לבקשות מיוחדות כגון

27 לבנים מסוג "בוקסר", ספר קוראן, ואפילו היו מקריים שהוא ביקש להישאר בחקירה כי שיעמם

28 לו.

29

30 העד דחה את הטענה כאילו הנאשם לא זכה לטיפול רפואי, ואמר כי מפאת גילו של הנאשם ועקב

31 תלונותיו נבדק על ידי רופא שב"יס והיה במעקב צמוד של מרפאת שב"ס. הוא הוסיף שהוא אישית

32 היה בקשר עם מרפאת שב"ס ווידא שהנאשם נבדק ובעיותיו הרפואיות טופלו בהתאם לשיקול

33 דעתם המקצועי של הרופאים. העד ציין כי מסר לנאשם שאין אפשרות להעביר לו תרופות, אולם

34 עורך דינו יכול להעביר פירוט של התרופות בהן הנאשם עושה שימוש. יחד עם זאת, העד מסר

35 שהאחריות על הטיפול הרפואי נתונה בידי רופא הכלא.

36

37 העד התבקש לומר את התרשמותו ממצבו של הנאשם, ומסר כי לא התרשם שהנאשם לא יכול

38 היה להיחקר. הוא זכר מקרה אחד בו הנאשם יצא מהתא עייף מאוד ולכן הובא חובש לחדר

החקירה, והנאשם הסביר כי הדבר קשור למצבו הנפשי ולא הפיזי באותו חיום. העד חזר וציין כי    1
היו מקרים בהם הנאשם ביקש להישאר בחדר החקירות דווקא.    2

3

העד התבקש להתייחס לשאלת אזיקתו של הנאשם בחקירה. הוא מסר כי ככלל, במרבית החקירה    4
לא היה הנאשם אזוק כלל. יחד עם זאת, היו מקרים בהם הנאשם התעצבן וסטר לעצמו. על רקע    5
זה נאזק כדי לא לפגוע בעצמו, ומיד לאחר שנרגע הוסרה האזיקה. הוא ציין כי במקרים בהם יצא    6
מחדר החקירה למספר דקות היה הנאשם אזוק לכסא, אולם מדובר באזיקים עם שרשרת ארוכה    7
המאפשרת תנועה ידיים חופשית כולל עישון. הוא הדגיש כי מעולם לא יצא לפרקי זמן של 7-4    8
שעות כפי שנטען בטיעוני הזוטא, ובדרך כלל דובר במספר דקות היותר לכל היותר לחצי שעה. הוא    9
הוסיף כי הנאשם לא התלונן על כך בפניו. לשאלת בית המשפט ענה העד כי לנאשם לא היה שעון.    10

11

העד התבקש להתייחס לטענה כי נאמר לנאשם שביתו נהרס, עצים נעקרו ודשא הושמד. העד ענה    12
כי זו הפעם הראשונה שהוא שומע על כך שלנאשם היה דבר, לא נאמר לנאשם דבר חנוגע לביתו    13
וחקירה כלל לא הגיעה לנושא זה. העד הכחיש כי נאמר לנאשם שאם יודה יוכל להשתחרר לעזור    14
למשפחתו או כי יוכל להשתחרר בשל גילו ומצבו הרפואי.    15

16

העד אישר כי במהלך החקירה הוטחו בנאשם האשמות על בסיס החשדות שהיו בידי החוקרים,    17
והיו מקרים בהם נאמר לו שהוא משקר, אולם לא הייתה כוונה להשפילו. לדבריו, החקירה נוהלה    18
בחדרה כבוד הדדי ובמספר פעמים בחקירה אף ציין הנאשם לחיוב את היחס שקיבל מחעד. העד    19
עמד על כך שלא נעשה שימוש באיומים או בכוח, כי החקירה הותנהלה בשיג ושיח ארוך, וכי הוא    20
זוכר את האווירה בחקירה זו כיוצאת דופן לטובה ביחס לחקירות אחרות שניהל. הנאשם שיתף    21
פעולה בחלקים נרחבים של החקירה, והיו ימים בהם די היה לומר לנאשם כותרת של נושא    22
והנאשם מסר גרסה מפורטת בעניין.    23

24

בחקירתו הנגדית מסר העד כי נודע לו על מעצרו של הנאשם מכלי התקשורת כשעה לפני שפגש    25
אותו במתכון החקירה. עוד ציין העד כי את חקירתו הראשונית של הנאשם ניהל החוקר המכונה    26
"האדי", ואילו הוא לא היה מודע לה באותו זמן, אלא רק בדיעבד.    27

28

העד מסר כי גודלו של התא בו שהה הנאשם הוא סטנדרטי, יש בו חלון אולם זה סגור והאווירור    29
מותבטס על מערכת מיזוג מרכזית.    30

31

העד נשאל מדוע הנאשם נחקר ברצף ביום 15.3.06 החל משעה 10:55 ועד לאחר חצות, וזאת    32
כאשר הנאשם כבר נחקר לפנות בוקר משעה 02:40 ועד 05:45. העד ענה כי דובר בתחילת    33
החקירה, הנאשם ביקש לפרט את פעולותיו באופן כרונולוגי וזה לקח זמן. הנאשם לא הביע רצון    34
להפסיק את החקירה ואו ללכת לישון, ובמהלכה הוא אכל, שתה ועישן להנאתו.    35

36

העד התבקש להתייחס לאמירות המופיעות בזכ"דים שערך החוקר המכונה "ג'ינו", כמו "אתה    37
מתנהג כמו ילד קטן, יושב ומשפך במצח נחושה" ואם חן שומרות על כבודו של הנחקר. העד    38
ענה כי בכל חקירה יש נקודות של עימות ואי הסכמה, ועדיין כבודו של הנחקר נשמר.    39

תאריך: 29/07/09                                      תיק מס': 3052/06

1

העד ציין כי הנאשם לא היה מנוע מפגש עם עו"ד, אך כל נושא הקשר עם עו"ד הוא באחריות
2

המשטרה. למיטב ידיעתו זו הודיעה לעו"ד על מעצרו של הנאשם, אולם הוא לא בדק זאת.
3

4

הסניגור הפנה את העד לזכ"ד מיום 19.3.06 בשעה 35: 16, בו אמר הנאשם שמלבישים לו האשמות
5

ועדיף שיביאו חרב ויקטעו את ראשו, ושאל האם זה מצביע על אדם שקט ושלו. העד השיב כי
6

הוא לא תתרשם שהנאשם הוא אדם שקט ושלו, אלא אדם שנוטה להתפרצויות חימה. הוא
7

הוסיף כי התנהגות זו ודומות לה של הנאשם אפיינו אותו לעיתים, למרות שרוב החקירה נוהלה
8

באווירה חיובית מאוד עם הרבה כבוד הדדי.
9

10

העד התבקש להסביר מהי "שיחת שכנוע" ומסר כי זו שיחה במחלכה מוצע לנחקר להגיע להבנה,
11

להתדות במיוחד לו ומוסבר לו המידע שברשות החוקרים. אופי השיחה תלוי בנחקר ובאופיו.
12

במקרה של הנאשם, עיקר השיחה עסק ברומו של עולם ובנושאים כלליים, כיוון שהנאשם הינו
13

אדם שהסתובב בהרבה מאוד מקומות, אך בסוף השיחה תמיד חוזרת לנושא החקירה. העד לא
14

זכר בדיוק מה נאמר באותה שיחה שלא הניבה פירות חקירתיים, אולם ציין שבין היתר נאמר
15

שעדיף לנאשם להודות.
16

17

העד נשאל האם אמירה לנאשם ש"י'גיע להבנה עם חוקריו" פירושה הסכם שהנאשם יודה ואחר
18

כך ילך הביתה כי הוא זקן. העד ציין כי לא נאמר לנאשם שילך הביתה או כי הוא זקן. העד אמר
19

שלא קרה דבר כשהנאשם לא הודה, אולם הודאה היא לטובתנו שכן כך תסתיים החקירה.
20

21

העד נשאל האם לא הופעל לחץ גדול על הנאשם באופן שגרם לו לרצות לפגוע בעצמו, כפי שמופיע
22

בזכ"ד מיום 21.3.06. העד אמר כי דובר בתחקף זעם של הנאשם בתחילת החקירה, ולאחר מכן
23

הוא נרגע וחזר לשיחה נינוחה, ארוכה ומפורטת.
24

25

העד הכחיש שהובטיח לנאשם שאם יימצא דובר אמת בפוליגרף לא ימשיכו לשאול אותו על אותם
26

דברים בהם יצא דובר אמת. נכון הוא שלאחר הבדיקה התמקדו בנשאים אחרים, אך מניעה
27

לחזור לאותם נושאים. לדבריו, הסיכום וההבנה עם הנאשם היו רק למקרה בו יצא דובר שקר.
28

29

העד הכחיש כי נאמר לנאשם שאם יסיים את החקירה יעבור לבית הסוהר, שם התנאים טובים
30

יותר ולכן עדיף לו לסיים את החקירה. כשהופנה לזכ"ד מיום 9.4.06 שעה 30: 13 סעיף 8 בו נכתב
31

שהנאשם נשאל אם אינו רוצה לסיים את חקירתו ולעבור לכלא, שם יוכה לביקורי משפחתו, ענה
32

העד כי השאלה שהוצגה לנאשם הייתה בעיקר דרך לומר לו לגמור את החקירה. העד הוסיף כי
33

החקירה לא התמקדה רק בנושא הספינה "קארין A" אלא גם בנושא מקורותיו הכספיים וקשריו
34

לתנזים פתי"ח. ה"יהבנה" בה מדובר היא שהנאשם ימסור מידע, לאו דווקא זה המוביל להפללתו.
35

36

37

38

39

תיק מס': 3052/06

1 עדותו של המכונה ״האדי״

2

3 עד זה הוא חוקר השב״כ שחקר את הנאשם ביום בו הגיע למתקן החקירה, ופעם נוספת בשלב
4 מאוחר יותר.

5

6 העד מסר שהנאשם נשאל לשלומו וענה כי הוא חש בטוב אם כי אמר לו שהוא סובל מסרטן.
7 הנאשם לא התלונן על כאבים, ואם היה עושה זאת הוא היה מזמין רופא או חובש. העד אמר כי
8 לא נמסרו לידיו תרופות מעורך דינו של הנאשם, וכלל לא זכור לו שהנאשם ביקש תרופות. העד
9 נשאל לגבי שעת החקירה הראשונה, 02:40 וענה כי נדרש להתחיל בחקירה על ידי ראש הצוות וכך
10 עשה. עוד ציין כי למיטב זכרונו לא חקר את הנאשם כשהיה אזוק, וגם אם היה עם אזיקים,
11 ולהערכתו לא היה, לא דובר באזיקי רגליים. העד הכחיש כי הוא חשאיר את הנאשם פרקי זמן של
12 7-4 שעות בחדר החקירות לבדו כשהוא אזוק. העד אף הכחיש שאמר או כי הכיר אמירה לנאשם
13 שביתו נהרס, עצים נעקרו והושמד דבש. הוא הכחיש כי הבטיח לנאשם כי ישוחרר אם יודה.

14

15 העד אישר כי נאמר לנאשם שהוא משקר, וטען כי המדובר בטענה לגיטימית מצדו של חוקר. הוא
16 מסר כי לא היה שימוש באיומים או בכוח בחקירה, ואם הנאשם פחד זה עניין סובייקטיבי אך
17 הוא לא הפחיד אותו בכוונה.

18

19 בחקירתו הנגדית מסר העד כי הוא ידע מיהו הנאשם וידע שהוא פעיל מאוד ותיק בפת״ח, והיה
20 אחראי על מנגנון הרכש והכספים בארגון זה.

21

22 העד ציין כי מסר לנאשם דף המפרט בשפה הערבית את זכויותיו כעצור וכנחקר, אך הוא לא
23 הקריא לו אותו בעצמו. הוא אישר כי המשפט הראשון שרשם בזכ״ד היה המשפט הראשון שאמר
24 לו הנאשם, והוא כי ״נמאס לנאשם מהסיפור של קארין A״.

25

26 העד התבקש לתאר את התרשמותו ממצבו של הנאשם בחקירה הראשונה שהתנהלה לפנות בוקר,
27 ואמר כי הוא זכר שנכנס איש מבוגר, עייף יחסית, בהתאם לשעה בה הגיע. הם שוחחו כרגיל, והוא
28 זכר כי הנאשם היה מעושן כבד, קיבל הרבה סיגריות, וכי השיחה התנהלה באווירה חיובית. הוא
29 לא זכר אם הנאשם היה נסער או מדוכא, ולא זכר דבר חריג אחר. לדבריו, למיטב הבנתו, האמירה
30 של הנאשם ש״נמאס לו״ מתיישבת עם העובדה שהיה במעצר הגנתי או מניעתי בעקבות פרשת
31 קארין A.

32

33 העד עמד על כך שתפקידו להגיע לחקר האמת, ואם הנאשם היה מוסר תזה הגיונית שהייתה
34 מתיישבת עם המידע המודיעיני, הוא היה מקבל אותה.

35

36 העד חזר ואמר כי הוא לא זוכר אם הנאשם היה אזוק בחקירות שערך, אבל אם היה שימוש
37 באזיקים הרי זה רק אם העד הרגיש מאויים. הוא הוסיף כי הוא לא זוכר דבר כזה, ואם הנאשם
38 היה צועק או משתולל הוא היה רושם זאת.

39

תאריך: 29/07/09                                    תיק מס': 3052/06

העד חזר והדגיש כי נמסר את דף הזכויות והחובות לנאשם, שם רשומות זכויותיו. הוא עצמו לא    1
אמר לנאשם כי זכותו לשמור על זכות השתיקה או להיות מיוצג בידי עו"ד.    2

3

העד עמד על כך שאם הנאשם היה מתלונן בפניו על שלא נותנים לו להכניס למתקן המעצר את    4
תרופותיו, או כי הוא מרגיש רע ואינו מקבל עזרה מרופא הכלא, הוא היה רושם זאת. עם זאת,    5
ציין כי ידע שהנאשם הוא אדם חולה. הוא אישית לא קיבל כל פנייה על הכנסת תרופות.    6

7

העד חזר והדגיש כי חקר האמת הוא "קדוש" והוא המטרה, ולכן כאשר הנאשם אמר לו שהוא    8
מוכן "להתוודות בכל דבר", הסביר לו כי אין מקום לדיבורים אלה ועליו לספר בעצמו מבלי לחתוף    9
או לגרוע. הוא התרשם שהנאשם לא מוכן להתוודות בכל דבר, וידע לעמוד על שלו בחקירה. העד    10
אמר כי חקירת הנאשם נמשכה מאחר שהיו נושאים שדרשו ליבון והבהרה, והיו ידיעות אחרות    11
שהוא בחר להכחיש או לא להסביר אותן.    12

13

עדותו של המכונה "ג'יני"    14

15

עד זה היה חוקר שב"כ שנטל חלק בחקירתו של הנאשם, וציין בפתח דבריו כי מאחר כי שחלפו    16
שנתיים ממועד החקירה, חלק ממנה הוא לא זכר.    17

18

העד עומת עם טיעוני הזוטא, ומסר כי הנאשם קיבל טיפול רפואי ממרפאת הכלא. הוא זכר    19
שבאחד הזכ"דים מסר הנאשם שיש לו פוליפים בקיבה, ותוך זמן קצר הוצא לבדיקה ולטיפול    20
רפואי. העד מסר כי כחוקר הוא אינו חסמכות בנוגע להעברת תרופות לנאשם, וכי ההחלטות    21
בנושא זה הן של רופא הכלא. עוד ציין כי לא זכר לו מקרה בו הנאשם הסב את תשומת ליבו לכך    22
שהוא זקוק לטיפול תרופתי.    23

24

העד הכחיש כי הנאשם היה אזוק ברגליו בחקירות בהן נכח, והוסיף כי הנאשם נאזק בידיו לאחר    25
שחבט בעצמו ולאחר שהוזהר כי אם ימשיך לחבוט בעצמו וייאזק, על מנת שלא יוכל לפגוע בעצמו.    26

27

העד טען כי לא היה מקרה בו הושאר הנאשם אזוק לבדו בחדר למשך 4-7 שעות, וטען כי לא אמר    28
לנאשם שכוחות צה"ל הרסו את ביתו והשמידו עצים ודבש. העד הוסיף כי אף לא נאמר על ידו    29
לנאשם שאם יודה הוא יצא לחופשי לאור גילו.    30

31

העד ציין כי לא פעם אמר לנאשם שהוא מסתיר מידע ומסרב לתיתו לחוקריו, אולם לא השתמש    32
באלימות, איומים או ניסיונות הפחדה.    33

34

בחקירתו הנגדית נשאל העד ביחס למשמעות האמירה לנאשם כי "יובא לחקירה על מנת להתוודות    35
בכבוד". העד מסר כי להתוודות באמת זה כבוד, ומטרתו כחוקר היא שהנחקר יודה הודאת אמת.    36

37

העד ציין כי נושא החקירה היה מעורבותו של הנאשם בנושא הספינה קארין A, קשריו למימון    38
וחברות אמל"ח, וקשריו לאיראנים ולאחרים ממדינות ערב, שמטרתם ביצוע פח"ע נגד ישראל.    39

-11-

תאריך: 29/07/09

תיק מס': 3052/06

1  העד מסר כי ר'שם בזכ"ד שהנאשם "התנהג כילד קטן", שכן חרף גילו המבוגר התנהג לפעמים
2  בחקירה בצורה ילדותית. כשהתבקש להסביר למה הכוונה ענה, שהתנהגות ילדותית היא כשאדם
3  נחקר על מידע ומוסר גרסת כיסוי הפוטרת אותו מאחריות, אף שהוא יודע שחוקריו יודעים על מה
4  הם מדברים איתו.
5

6  העד ציין שנאמר לנאשם כי אל לו "להתנהג כמו פרחח", ובמילה "פרחח" כוונתו הייתה לאדם
7  שצועק, משקר, חסר כבוד שעושה הכול כדי להציל את עורו.
8

9  העד ציין כי ככל הנראה ידע באותה עת על כך שהנאשם נחקר לפנות בוקר על ידי החוקר המכונה
10  'האדי', אולם לא מצא כל מניעה מלחקור את הנאשם עד השעה 18:00.
11

12  העד נשאל על דבריו במחקירה שתועדה בזכ"ד מיום 20.3.06, בה נרשם שאמר לנאשם שאין זה
13  מקרה שמעצרו הוארך ב-18 ימים לאור המידע הרב שהוא מסתיר מחוקריו. נטען בפניו כי בכך
14  הוא אמר לנאשם למעשה, כי ככל שישתיר מידע מעצרו יתמשך. העד חשיב על כך שניתן להבין
15  שבית המשפט החליט להאריך את המעצר בהסתמך על המידע שהיה בפניו. העד נשאל על
16  התבטאות נוספת שלו כלפי הנחקר שתועדה בזכ"ד מיום 27.3.06. שם נרשם כי אמר לנאשם
17  ש"בסופו של דבר יודה". נטען בפני העד כי ההגיון אומר שהמשמעות הינה שעד שהנאשם לא יודה
18  – החקירה לא תסתיים. העד השיב כי זה לא מה שנכתב, ובסופו של דבר הנאשם אכן העביר הרבה
19  מידע.
20

21  העד נשאל על המקרים בהם הנאשם היכה את עצמו ואמר כי הוא זוכר שהנאשם היכה את עצמו
22  מספר פעמים בכפות ידיו, ומספר פעמים הצליחו לחרגיע אותו על ידי בקשות שיפסיק זאת. עוד
23  ציין העד כי לדעתו זו התנהגות ילדותית. העד נשאל אם אין התנהגות זו מעידה על ייאושו של
24  הנאשם, והשיב כי להערכתו זו הייתה הצגה, שכן עובדה שלאחר מכן הנאשם מסר עוד הרבה
25  מידע.
26

## עדויות עדי התביעה במשפט הזוטא – סיכום ביניים

27
28

29  ניתן לחלק את העדויות שנשמעו לעדויות אנשי המשטרה ולעדויות אנשי השב"כ. אנשי המשטרה
30  מסרו כי החקירה נוהלה בניחותא, ללא בעיה כלשהי, וכי הנאשם מסר דברים מרצונו הטוב
31  והחופשי. עוד נמסר כי הנאשם כובד במהלך החקירות במזון ובמשקה, לא הושאר לבדו, ולא
32  הושמעו כלפיו איומים כלשהם, או הבטחות בקשר לחקירתו.
33

34  עדי חשב"כ ציינו כי הנאשם קיבל יחס של כבוד בהתאם למעמדו. הם לא הכחישו כי היו בחקירתו
35  מקרים של "עימותים" במסגרתם הטיחו בנאשם כי הוא משקר וכי הוא מסתיר מידע, אולם טענו כי
36  חדבר הינו טבעי כחלק מחקירות. החוקרים הכחישו כי הנאשם הושאר פרק זמן ארוכים לבדו
37  בחדר החקירות. לדבריהם, אמנם היו מספר מקרים בהם הושאר הנאשם הנחקר לבדו, אולם דובר בפרקי
38  זמן קצרים, במהלכם היה אזוק בידיו באזיקים עם שרשרת ארוכה. עוד צויין כי הנאשם לא היה

-12-

אזוק במהלך החקירות, למעט במקרים בהם סטר לעצמו וניסה לפגוע בעצמו. גם במקרים אלה, 1
לאחר שהנאשם נרגע, הוסרו האזיקים. 2

3

גם חוקרי השב"כ הכחישו כי השמיעו כלפי הנאשם איומים, או כי מסרו לו שביתו נהרס וכיו"ב, 4
או כי הובטחו לו הבטחות שאם יודה ישוחרר מפאת גילו. 5

6

בכל הנוגע למצבו הרפואי, ציינו חוקרי השב"כ כי חטיפול בנאשם היה על ידי מרפאת הכלא, 7
ולאור גילו אף דאגו לכך שיקבל טיפול בהתאם לשיקול הדעת של גורמי הרפואה, עליהם אינם 8
אחראים. 9

10

## עדות הנאשם במשפט הזוטא – החקירה הראשית 11

12

הנאשם פתח וציין כי הוא סובל מיתר לחץ דם, טחורים, אולקוס וכאבי גב. 13

14

הנאשם תיאר כי היה בכלא יריחו תחת פיקוח אמריקאי ובריטי, וכיצד ביום 14.3.06 בשמונה 15
בבוקר החל מצור של צה"ל על המוקטעה ביריחו, עד אשר הגיע דחפור והרס את המבנה. הוא 16
ואחרים נלקחו למת"ק יריחו ובשעות הערב הועבר למגרש הרוסים. הנאשם ציין כי היה לו קר 17
כיוון שחיה לבוש בפיג'מה בלבד. ממגרש הרוסים הועבר לאשקלון, וכל אותו זמן היה נתון 18
באזיקים. 19

20

חקירתו בשב"כ החלה באותו הלילה ונאמר לו כי הוא חייב להודות בכל דבר. הנאשם ציין כי אמר 21
לחוקרו שאין נגדו דבר, והוא אדם שמבצע את עבודתו וממלא הוראות. 22

23

לטענתו, היה אזוק במהלך החקירה בידיו וברגליו, וציין כי ידיו היו מלפנים. הנאשם אמר כי לא 24
קיבל את התרופות שהוא נוטל דרך קבע, ואף שביקש לראות רופא נאמר לו כי יראה אותו רק 25
למחרת. הנאשם טען כי נלקח לרופא רק לאחר שהתחנן פעמים רבות שיועבר לבדיקה. לאחר 26
בדיקת הרופא ניתנו לו תרופה רק נגד לחץ דם, אולם לא טיפלו בבעיותיו האחרות. 27

28

הנאשם ציין כי הוחזק בתא שגודלו מטר וחצי על שני מטר, והוא היה נרדם מחר מרוב עייפות, 29
אולם עקב הכאבים מהם סבל התעורר הרבה. 30

31

הנאשם אמר כי אינו זוכר רבות מחקירתו. הוא זכר שחוקריו רצו שהוא יודה שהוא קנה את 32
קארין A, אולם אין לו קשר לכך. לטענתו, חוקריו דיברו אליו בחוצפה, פעמים התייחסו אליו 33
בצורה אלימה ופעמים בצורה רגועה. 34

35

הנאשם טען כי חוקריו אמרו לו שהם מעוניינים בהודאה מפורשת ומפורטת על כך שהוא יודע על 36
הפרשייה של קארין A, ושאם יודה'– יוכל ללכת הביונה. הנאשם טען כי אמר לחוקריו שהוא מוכן 37
להודות אך לא לשקר. 38

39

1   הנאשם מסר כי עורך דינו אמר לו שהרסו את ביתו, וגרפו עצים וכיורות. לדבריו, החוקרים אמרו

2   לו שהם שמעו על כך, והעניין השפיע עליו באופן שלילי.

3

4   הנאשם נשאל על ביקוריו אצל רופא הכלא, ואמר כי גם כשהיה מתלונן היה מקבל רק אקמול.

5   כשנאמר לו שלאחר שהתלונן בחקירתו על בעיות עיכול קיבל תרופה בשם "גסטרו" ענה כי אינו

6   זוכר זאת. במקרה אחר זכר הנאשם שקיבל פראפין לבעיית העצירות שלו, אולם טען כי זה היה

7   חד פעמני. לדבריו, אף שקיבל תרופות ללחץ דם, הרגיש כי זה לא עזר לו. הנאשם נשאל אם סיפר

8   לרופא על המחלות הכרוניות שלו, ואמר כי סיפר הכל וגם כי יש לו אסטמה, כי הוא מתקשה

9   לנשום בצורה טובה וכי הוא סובל מפעימות לב מואצות.

10

11   עוד ציין כי השוטר שגבה את אמרתו ישב עם דו"ח חשב"כ ושאל אותו לגביו, אולם הוא אינו יודע

12   מה כתב השוטר, שכן החקירה התנהלה בערבית והדברים נרשמו בעברית.

13

14   הנאשם נשאל אם האמין שישוחרר אם ימסור את מה שחוקריו רצו לשמוע וענה שכן. לדבריו,

15   חוקריו סיפרו לו על נחקר אחר שהיה צפוי לקבל 4 מאסרי עולם, אולם מוחמד דחלאן התערב

16   בעניינו והם שחררו אותו.

17

18   הנאשם מסר כי לא ביקש מחוקרים שיתקשרו לעו"ד, ומשפחתו היא זו שהתקשרה לעו"ד עבורו.

19   הנאשם הוסיף כי ביקש מחוקריו לראות עו"ד ותשובתם הייתה שאם יבוא עו"ד וישאל עליו הם

20   יתנו לו לראות אותו.

21

22   **עדות הנאשם במשפט הזוטא – החקירה הנגדית**

23

24   הנאשם מסר כי הרגיש מושפל בחקירתו. עוד מסר כי אמר לחוקריו את כל מה שהם רצו לשמוע.

25   לאחר מכן נשאל הנאשם באיזה שלב של החקירה "נשבר". הנאשם לא השיב על כך ישירות ותחת

26   זאת טען כי מהתחלה אמר לחוקריו שמה שיש לו לומר הוא יספר, ואת מה שהוא ידע הוא אכן

27   סיפר. כשנשאל אם הדברים שמסר ביום הראשון לחקירתו נאמרו לאחר לחץ, ענה כי סיפר את

28   הדברים כי זה מה שקרה וכיוון שלא דובר בעניין סודי. עוד טען כי בחקירתו לא שיקר בשום שלב,

29   וסיפר את מה שהוא ידע, אולם אינו יודע מה נרשם בעברית.

30

31   לטענתו, חוקריו השפילו אותו, אמרו לו שהוא שקרן ודיברו אליו בצורה "מלוכלכת". עוד טען כי

32   היו עוזבים אותו בחדר ריק לבד כשהוא אזוק, וחוזרים רק כעבור כמה שעות.

33

34   הנאשם אמר כי בחקירתו פעל לפי הוראות החוקרים ובודאי לא הכתיב דרישות או את תנאי

35   החקירה. כשנשאל כיצד מצא את הכוח לומר לחוקריו כי "מדינת ישראל חייבת לו כסף", לא

36   השיב תשובה ישירה. הנאשם אישר כי עישן בחקירתו ואמר כי לקח סיגריות מחוקריו בהתאם

37   לבקשתו. הנאשם נשאל מה עוד קיבל והשיב "כלום". כשנשאל באופן ספציפי, אם קיבל קורואן,

38   קפה, תה ולבנים, ענה שקיבל. לדבריו הוא לא ביקש זאת אלא חוקריו הביאו לו.

39

תאריך : 29/07/09                           תיק מס׳: 3052/06

1   הנאשם חזר על כך שהיה נתון בלחץ כבר מהיום הראשון, אולם הדגיש כי בחקירתו מסר רק את
2   האמת. עוד ציין כי ״הכחיש כל קשר לספינה קארין A וכי התעכש על כך.
3

4   לשאלות בית המשפט ענה כי הדברים הרשומים באמרותיו ונורגמו לו, אולם הוא לא ידע מה
5   נרשם בפועל. עוד ציין הנאשם כי היה מתעצבן לעיתים בחקירתו (״מרוב הדיבורים הבן אדם
6   משתגע״) אולם עצביו התבטאו בכך שהוא ״התפוצץ מבפנים״ ולא הראה זאת לחוקריו.
7

8   <u>עדותו של מוחמד חיג׳אזי</u>
9

10  עד זה מסר כי היה עם הנאשם באותו תא בכלא אשקלון באפריל 2006, למשך כשבועיים. הוא
11  מסר כי הנאשם היה חולה וחלש והיה קשה לו לנשום, ללכת או לעמוד על רגליו. הוא טען כי
12  פעמים רבות הוא וחבריו לתא דפקו על דלת התא וביקשו רופא עבור הנאשם, כי ״הוא הולך
13  למות״ והחוסרים נתנו לנאשם ״מקסימום אקמול״. הוא ציין כי מעולם לא הגיע רופא לתא.
14

15  בחקירתו הנגדית ציין העד כי היה עם הנאשם בתא החל מ-12/04/06 למיטב זכרונו. הוא טען כי
16  בתקופה של השבועיים שהיה יחד עם הנאשם בתא יצא זה רק לשירותים ולמקלחת, ולאחר מכן
17  הוסיף כי יצא גם לחקירות. כשנשאל לתגובתו לכך שישנם מסמכים רבים של חובשים ורופאים כי
18  ראו את הנאשם באותה תקופה, ענה כי בתקופה שהיו ביחד זה לא קרה. עוד הוסיף כי כל פעם
19  שהנאשם חזר מחקירה הוא סיפר להם (לחבריו לתא) על כך. העד התבקש לומר שמות אנשים
20  נוספים איתם ישב באותה תקופה וענה כי יש אנשים שהוא זוכר את שמותיהם, אך לא נקב בשם
21  כלשהו.
22

23  העד ציין כי הנאשם אמר לו שהחקירה גורמת לו ללחץ נפשי, שהוא כל הזמן היה כפות לכיסא
24  ושהוא קיבל יחס רע. עוד אמר לו הנאשם שהוא סובל מסרטן והוא צריך תרופות. העד אמר כי
25  הנאשם לא סיפר על הדברים שקיבל מחוקריו, כגון פירות, סיגריות ותחתונים.
26

27  <u>הכרעה במשפט הזוטא</u>
28

29  ניתן לומר שטיעוני הזוטא מעלים טיעונים בתחום ה״השפלה״, נקיטה בשיטות חקירה בלתי הוגנת
30  על ידי יצירת לחץ נפשי כמו גם פיתוי והשאה. ההכרעה במקרה זה הינה הכרעה
31  עובדתית, הנובעת מהתרשמותנו הבלתי אמצעית מהדברים שנאמרו בפנינו.
32
33

-15-

<u>הערכת העדויות במשפט הזוטא – מהימנות ומשקל</u>    1

2

מהימנות עדי התביעה    3

4

לא מצאנו כי עדי התביעה היו חסרי אמינות, כפי שביקשה לטעון ההגנה. אכן, אין ספק כי הנאשם    5
היה נתון בחקירה במהלכה ביקשו החוקרים לקבל מידע רב ככל האפשר מהנאשם בנוגע לפעילותו    6
במימון הטרור הפלסטיני.    7

8

ככל חקירה, היא לא התנהלה בתנאים נוחים ונעימים. הנאשם היה כלוא במתקן חקירות, ונחקר    9
תקופה ממושכת. יחד עם זאת, ישנו פער בין חוסר הנוחות האינהרנטי לקיומה של חקירה, לבין    10
נקיטת אמצעים שיכולים לשלול את רצונו החופשי ואת יכולתו לבחור אם למסור מידע מפליל על    11
עצמו.    12

13

כעולה מהכתוב באמרות, ועל כך לא חלק הנאשם בעדותו, במהלך חקירתו במשטרה הוא קיבל    14
סיגריות לעשינן כאוות נפשו, וכובד בשתייה ובמזון במהלך החקירה. כך למשל, באמרה מיום    15
19.3.06 גליון 5 ש' 132 נרשם "בשלב זה החשוד מבקש להתפלל ותודאת החשוד מופסקת לעניין    16
זה", וכן נרשם בגליון 6 ש' 164 במהלך הודאתו כובד החשוד בשתייה חמה, שתייה קרה ועוגיות    17
וכו". באמרה מיום 20.3.06 עמ' 1 ש' 18 נכתב "החשוד מקבל סיגריות ומעושן" ובהמשך (עמ' 2 ש' 19)    18
נרשם כי "החשוד מקבל מים לבקשתו כדי לבלוע כדורי". באמרה מיום 22.3.06 גליון 5 ש' 118    19
נרשם כי כובד בשתייה חמה, שתיה קרה וסיגריות, ובאמרה מיום 30.3.06 גליון 6 ש' 144 נרשם    20
דבר דומה. גם באמרות שנגבו ביום 2.4.06 (ת/9 ות/10) נרשם כי קיבל כיבוד. קשה לתאר מצב בו    21
חקירה מתנהלת באופן דורסני ואכזרי, כטענת ההגנה, ואגב כך ניתנת לנאשם האפשרות להתפלל,    22
לעשן כרצונו, לאכול ולשתות, וכמובן ליטול תרופות.    23

24

יש לומר כי כיבוד כגון אוכל שתייה וסיגריות ניתן לנאשם גם במהלך חקירותיו בשב"כ. כבר    25
בחקירתו הראשונה (זכ"ד מיום 15.3.06 שעה 02:40) כובד בקפה, ובחקירה שלאחר מכן (זכ"ד    26
מיום 15.3.06 שעה 10:55) כובד בארוחת צהריים, סיגריות וקפה. ניתן לראות כי יחס זה נמשך    27
לאורך כל חקירותיו, וכמעט בכל זכ"ד מופיע כי הנאשם קיבל אוכל, שתייה וסיגריות. אף ניתנו לו    28
קוראן (זכ"ד 16.3.06 שעה 10:00, זכ"ד מיום 21.3.06 שעה 12:00), האפשרות לצאת לשירותים    29
(זכ"ד מיום 20.3.06 שעה 11:40) והאפשרות להעלות בעיות הנוגעות לתנאי כליאתו בפני חוקריו    30
(זכ"ד מיום 3.4.06 שעה 11:00, סעיף 1). הנאשם לא חלק על קביעות אלה שבזכ"דים. יחס זה אינו    31
אופייני למי שמבקשים לרמוס את רצונו החופשי, להשפילו ולפגוע בו.    32

33

מעבר לנושא התקרבות שהוגשה לנאשם, מחזכ"דים מחקירת השב"כ לא עולה כי דובר בנחקר    34
"שבור" ומושפל, שכן הנאשם התייחס פעמים רבות לנושאים שאינם קשורים לחקירה, כנושאים    35
פוליטיים ומדיניים כלליים (זכ"ד מיום 16.3.06 שעה 10:00 סעיפים 24-25, זכ"ד מיום 27.3.06    36
שעה 16:30 סעיף 1, זכ"ד מיום 11.4.06 שעה 10:00 סעיף 12), ואף אמר לחוקריו כי מדינת ישראל    37
חייבת לו 275 אלף דולר שלקחה מארון במוקטעה (זכ"ד מיום 19.3.09 שעה 16:35, סעיף 18).    38
התנהגות כזו אינה אופיינית למי שנשבר בחקירתו ומוכן לרצות את חוקריו ולומר כל דבר שהם    39

-16-

תיק מס׳: 3052/06                                             תאריך: 29/07/09

רוצים רק על מנת שהחקירה תסתיים, אלא למי שמרגיש מספיק בטוח בעצמו כדי לומר את  אשר      1
על ליבו.      2
      3

חשוב להדגיש כי עדי התביעה לא ניסו לייפות את תנאי החקירה. הם לא הכחישו כי היו תקופות      4
קצרות בהן הושאר הנאשם לבדו בחדר, ואז נותר אזוק, אולם נטען כי דובר בפרקי זמן קצרים. הם אף לא      5
הכחישו כי הנאשם נאזק לאחר שסטר לעצמו והחל להשתולל (זכ״יד מיום 21.3.06 שעה 12:00      6
סעיפים 3-2). החוקרים אף לא טענו כי הנאשם היה אדם נינוח ושליו, אלא אמרו כי הנאשם הינו      7
אדם מהיר חימה, ואת זעמו היה מפנה כלפי עצמו, ולכן נדרשו לאזקו לעתים. הם גם לא הכחישו      8
כי מדי פעם פנו לנאשם במילים שלא נעמו לאוזן – כגון אמירה שהנאשם משקר, מתנהג      9
בילדותיות או כפרחח – אך לא חוכח כי נקטו השפלה כשיטת חקירה.      10
      11

תיאור זה של החוקרים נראה לנו אמין. לא מצאנו כי יש בו פירכות או סתירות, והוא תואם את      12
הדברים הרשומים בזכ״דים, ובמידה מסוימת את עדותו של הנאשם בבית המשפט. ודוק: ישנו      13
פער משמעותי אין עדות הנאשם בבית המשפט, לבין טיעוני הזוטא שהעלתה ההגנה בתחילה –      14
טיעונים שנזנחו בשלב הסיכומים לאור עדות הנאשם. כבר עתה ניתן לומר שהרושם העולה      15
מעדותו של הנאשם לא תאם את טיעוני הזוטא שמסר.      16
      17

**אמינות עדותו של מוחמד חיג׳אזי**      18
      19

בטרם נדון במהימנותו של הנאשם נקדים ונאמר כי אמינותו של מוחמד חיג׳אזי בעינינו הייתה      20
נמוכה מאוד. תמונה בעניינו כיצד העד זכר ״היטב״ את כל שקרה לנאשם, וכיצד ״התחנני״ לטיפול      21
רפואי עבורו שלא ניתן, אולם אין ידע לומר מי עוד היה כלוא איתו בתא בתקופה זו. דבריו אף      22
אינם מתיישבים עם תיק הרפואי של הנאשם, ממנו עולה כי גם במהלך התקופה עליה העיד      23
מוחמד חיג׳אזי, טופל הנאשם מספר פעמים על ידי מרפאת הכלא. על פניו נראה היה כי עדותו של      24
מוחמד חיג׳אזי הינה עדות שכל מטרתה לסייע לנאשם במשפטו, וכך, לכל הפחות, חוקצן עד מאוד      25
מצבו הרפואי של הנאשם. עוד יש לומר כי מוחמד חיג׳אזי אמר שהנאשם התונלון בפניו על כך      26
שהוחזק כפות לכיסא – טענה שהנאשם עצמו לא חזר עליה. לפיכך, לא מצאנו לכנון להעניק      27
לעדותו של מוחמד חיג׳אזי משקל כלשהו.      28
      29

**מהימנות הנאשם – כללי**      30
      31

הנאשם טען, באופן חד משמעי, כי לא מסר בחקירתו דבר שאינו אמת. למרות ניסיונו של התובע      32
להבין באיזה שלב ״נשבר״ הנאשם והחל למסור לחוקריו דברים בהתאם לרצונם בכביכול, עמד      33
הנאשם על כך כי מסר להם את כל הידוע לו בלא בעיה כלשהי. הנאשם הכחיש כי קשר עצמו לספינה      34
סארין A, בניגוד למופיע באמרות המשטרתיות.      35
      36

נראה כי הגם שהנאשם טען שיש חש מושפל, לא היה בכך, בהתאם לטענתו, כדי להשפיע עליו לומר      37
דבר שלא היה ברצונו לומר. נדגיש כי הנאשם לא טען שגם את דברי האמת שמסר סירב למסור      38
לחוקריו, וזו הוצאה ממנו שלא באופן חופשי ומרצון. הנאשם טען לאורך עדותו בפנינו כי מסר      39

1  דברי אמת, כי דברים אלה נמסרו מרצונו כיוון שלא התבייש בהם וכיוון שלא היה בהם משום סוד
2  כלשהו.
3
4  כאמור, הדבר היחיד שהנאשם לא היה מוכן לקבל היו הדברים הרשומים באמרותיו, ולטענתו
5  המדובר בדברים שלא נרשמו מפיו, ומכיוון שאינו יודע לקרוא עברית, לא יכול היה לדעת כי אלה
6  נכתבו. נראה כי הנאשם זנח את טיעון הזוטא לפיו חוקרי המשטרה איימו עליו ב״יתנוחו ובוהו״ אם
7  לא יחזור על הרשום בזכ״דיים של חוקרי השב״כ, שכן לא הזכיר זאת בעדותו בפנינו כלל.
8
9  עוד נציין כי הרושם הבלתי אמצעי מעדות הנאשם היה של מי שהגיהים בעוצמת ההשפלה שחש
10 ובטענות בנוגע ליחס שקיבל, בהתאם לקו הנטען במשפט הזוטא. מכל מקום, גם אם סובייקטיבית
11 חש השפלה במצב אליו נקלע, נדגיש כי הוא לא היה מוכן לאשר ולומר כי מסר דבר שאינו נכון, או
12 כי נשבר בחקירתו. הרושם שלנו הוא כי הנאשם נקט קו ״עצמאי״ מקו ההגנה במשפט, ביחס
13 לדברים שהוא חשב שצריך להשמיע לבית המשפט. הנאשם רצה לומר שמסר רק דברים נכונים
14 ואמיתיים מרצונו, אך באותה עת לומר שסבל בחקירתו. הדברים אינם יכולים להתיישב עם
15 הטענה כי אמרותיו נגבו שלא מרצונו החופשי. ברור שסיטואציית של חקירה אינה נוחה ואינה
16 נעימה, ודאי לא לאדם מבוגר שהחזיק בעבר בעמדה בכירה. עם זאת, לא התרשמנו כי הנאשם חש
17 בשלב כלשהו בחקירה מצוקה שמנעה ממנו לבוא בדרישות או שהובילה אותו לומר דברים שלא
18 מרצונו הטוב והחופשי.
19
20 מהימנות הנאשם – הטיפול הרפואי
21
22 טענותיו של הנאשם בנוגע לטיפול רפואי או העדרו אינן מתיישבות כלל עם המצוי בתיקו הרפואי.
23 כך, למשל, במסמך המתעד את בדיקתו לפני קליטתו במתקן הכליאה ביום 14.3.06 נכתב מפיו של
24 הנאשם כי ״מציין שלשול כרוני, נוטל COLATAL לפי הצורך, שולל מחלת לב, סוכר, יל״ד או
25 בעיות אחרות״. ביום 15.3.06 בשעה 14:19 נבדק שוב בכלא שקמה. גם במקרה זה, ואף שנבדק על
26 ידי רופא אחר, הרי בחלק בו נשאל על מחלות בעבר נרשם ״שולל״, וכן נרשם כי הוא משתמש
27 בתרופה אחת והיא COLATAL לקיבה. רישומים אלה אינם מתיישבים כלל עם דבריו כי הוא סבל
28 מבעיות רבות וכי מסר את הדברים לרופאי הכלא. ביום 15.3.06 בשעה 18:15 שוב הובא בפני
29 רופא, ושם נרשם כי הנאשם התלונן על עצרות וצרבת וניתן לו טיפול תרופתי. עניינו הרואות, כי
30 ברגע בו התלונן הנאשם על בעיה כלשהי, לא רק שלא נמנעה ממנו גישה לרופא, אלא הוא נבדק על
31 ידי רופא ארבע שעות בלבד לאחר פעם הקודמת בה נבדק על ידי רופא. כמו כן ראה הנאשם רופא
32 ביום 19.3.06, וגם במקרה זה ניתנו לו תרופות. לא למותר לציין כי התרופות אינן ״אקמולי״ כפי
33 שנטען, אלא תרופות אחרות (משלושה סוגים שונים).
34
35 הנאשם נבדק על ידי רופא וקיבל טיפול לבעיית העצירות גם בימים 20.3.06, ו-21.3.06. ביום
36 22.3.06 הובא הנאשם לבדיקה יזומה, היינו ביוזמת רשויות הכליאה ולא לבקשתו, ובעקבות
37 תלונותיו נקבע כי ייערך לו מעקב לחץ דם יומי ואף נרשמו לו תרופות. באותו יום בשעה 19:00
38 נרשם כי נבדק שוב על ידי רופא **״על פי בקשת של חוקר״**.
39

1 לא רק שנרשמו לו תרופות שונות ומסוגים שונים, אלא גם טענתו כי קיבל רק פעם אחת שמן
2 פראפין אינה תואמת את הרישומים הרפואיים, מהם עולה כי קיבל פראפין במספר הזדמנויות,
3 בתאריכים 20.3.06, 21.3.06, 30.3.06, 1.4.06, 3.4.06, 4.4.06 ו-17.4.06.
4
5 לפיכך, נראה כי טענותיו של הנאשם בכל הנוגע להעדר טיפול רפואי - אין להן על מה לסמוך.
6 הנאשם קיבל תרופות שונות כנדרש בהתאם למצבו, ראה רופא פעמים רבות - אחת מהן אפילו
7 ביוזמת חוקרו - וזכה לטיפול בהתאם לשיקול דעת רופאיו. נראה כי טענותיו בנוגע לטיפול
8 הרפואי נועדו להעצים את טיעוני הזוטא, בלא שיש לחן בסיס כלשהו במציאות, והדבר משליך על
9 חוסר אמינותו בפנינו.
10
11 **מהימנות הנאשם -- שלב החקירה**
12
13 מלבד הנושא הרפואי, עליו עמדנו לעיל, ניתן להצביע על ניסיונו של הנאשם לומר כי לא קיבל דבר
14 מחוקריו כדוגמא נוספת לחוסר האמינות של הנאשם- טענה שנועדה לחפריז בתיאור מצבו הקשת
15 בחקירה. מרגע שעומת עם הדברים שקיבל (ארוחות, זמן לתפילה, סיגריות, קפה, תה, קוראן,
16 תתחונים), "פתאום נזכר" ואישר כי אלה אכן ניתנו לו, אולם הוסיף כי ניתנו לו שלא לבקשתו.
17 בנוסף, הנאשם עצמו ציין כי כל מה שהיה בחקירתו גרם לו "להתפוצץ מבפנים", והוא כלל לא
18 הראה זאת לחוקריו - בניגוד לדברים מפורשים שנכתבו בכי"דים ועלתהם העידו החוקרים, כי
19 הנאשם איבד את שלוותו מפעם לפעם, ועל כן נאלצו לאזוק אותו. אין זה הגיוני כי החוקרים
20 ימציאו וירשמו כי הנאשם סטר לעצמו וכי נאלצו לאזוק אותו בעקבות כך, אם הדבר לא חתרחש.
21 טענת הנאשם כי הוא רק "התפוצץ מפניים" אינה מתיישבת עם רישומו החוקרים ועדויותיהם
22 בפנינו, והיא חלק מהקו בו נקט על מנת להראות כי השפילו אותו מצד אחד, אולם הוא לא נכנע
23 לחוקריו מצד שני. אנו העדפנו את עדותם של החוקרים בעניין זה.
24
25 יש לומר כי הרושם מעדותו של הנאשם היה של אדם חמודע היטב לדברים שנאמרו לו ידו הן
26 בבית המשפט והן בחקירתו בשב"כ ובמשטרה, אולם הוא דבק בגרסה שנעשה לו עוול. עוול זה,
27 לשיטתו, לא נגרם מהדברים שהוא אמר בחקירתו, אלא כתוצאה מהחשפלה שנגקטה כלפי
28 כעומדת בפני עצמה, ולא כעול שהשפיעה עליו בחקירה. עוד גורם לעוול' זה נובע מדברים שנרשמו
29 בעברית ללא אישורו ושלא בהתאם לדברים שאמר. ודוק: הנאשם אישר בעדותו בפנינו כי
30 הדברים הרשומים לכאורה מפיו באמרותיו תורגמו לו, כפי שציינו חוקרי המשטרה, אולם טען כי
31 אינו יודע מה נכתב כיוון שאינו יודע עברית.
32
33 לא מצאנו להאמין לנאשם בנקודה זו. לא התרשמנו כי חוקרי השב"כ והמשטרה רשמו דברים
34 אחרים מאלה שמסר לחם הנאשם, או כי סילפו את הדברים שנרשמו בעברית עת תרגמו לו אותם,
35 או כי הפעילו עליו לחץ ששולל את יכולתו לבחור אם למסור דברים לחוקריו. נראה כי הנאשם ידע
36 היטב מדוע הוא נמצא בחקירה, ידע היטב מה מחפשים חוקריו, ובהתאם לכך תנהל בחקירתו.
37 הנאשם מודע לכך שמסר דברים בנוגע לפעילותו ביחס לקאוין A – דברים שאינם מתיישבים עם
38 גרסתו הנוכחית כי אינו קשור לספינת הנשק.
39

יתר על כן, הדברים הרשומים בזכ"די החקירה מצביעים על כך שהנאשם מסר פרטים רבים, כפי     1
שהעיד בפנינו, כבר בזמנו הראשון בחקירה. יחד עם זאת, הנאשם לא מסר מיד את כל הידוע לו,     2
שכן חקירתו חיינה "חקירה מתפתחת", ונוספו בה עם הזמן פרטים שונים בנוגע לפעילותו. כעולה     3
מהזכ"דים, בתחילה כשהוטחו בו טענות נהג להכחיש, אולם כשהציגו לו ראיות המפריכות את     4
הכחשתו החל לספר את הידוע לו. התנהלות כזו מלמדת דווקא על אדם המתנהל באופן מחושב,     5
ומוכן לספר דברים רק כאשר הוא יודע שממילא יש לחוקריו את המידע על כך, מבלי שהוא מנדב     6
מידע נוסף. אם היינו יכולים לעלות טענה כאילו הפרטים הנוספים שמסר בעקבות הראיות     7
שהוצגו לו נמסרו בעקבות הלחץ שהופעל בחקירה, אזי הנאשם עצמו סתר והפריך טענה זו.     8
9

## מהימנות הנאשם - סיכום     10
11

אל מול הרושם האמין של חוקרי המשטרה והשב"כ, אנו יכולים לומר כי עדותו של הנאשם לא     12
הייתה אמינה במיוחד. כאמור, על פי עדותו של הנאשם עצמו, "השפלתו" ו"מצבו הרפואי" לא     13
שינו דבר מיכולתו לומר את הדברים שרצה לומר, אז לגרום לו לומר דברים שלא רצה. לא היה     14
שלב בו הלחץ בחקירה הוביל אותו להודות בדבר כלשהו בניגוד לרצונו, ולא היה שום שלב בו     15
"נשבר".     16
17

מכלל הראיות במשפט הזוטא שוכנענו כי אמרותיו בפני חוקרי המשטרה נגבו באופן ניגון וללא כל     18
לחץ פסול. בניגוד למה שנטען בטיעוני הזוטא הוא לא ניסה להעמיד את חוקרי המשטרה על     19
טעויות שנפלו בזכ"דים, ואף אחד מהם לא אמר לו כי יקרה "תווהו ובזהו" אם לא יודח. שוכנענו     20
כי חוקריו לא מסרו לו הבטחות כי אם יודה ישוחרר, לא אמרו לו דבר בכל הנוגע לחרס ביתו (דבר     21
אותו חלק מהחוקרים כלל לא ידעו עד מועד הדיון בפנינו) ולפיכך, אין לנו אלא לדחות את     22
טענותיו בדבר "השפלה" כלשהי או פיתוי והבטחות כלשהן שגרמו לו לומר דברים שלא מרצונו     23
החופשי. הנאשם קיבל טיפול רפואי מלא וכנדרש, בניגוד לדבריו, ולא היה במצבו הרפואי כדי     24
לשנות את יכולתו לומר את דבריו באופן חופשי ומרצון.     25
26

## משפט הזוטא - הכרעה     27
28

לאור מסקנותינו העובדתיות בכל הנוגע לאמינות עדי התביעה מחד גיסא, ולהעדר האמינות של     29
עדי ההגנה מאידך גיסא, אנו קובעים כי אמרותיו של הנאשם נגבו באופן חופשי ומרצון והינן     30
קבילות במשפט זה.     31
32

## המשפט העיקרי     33
34

## עדותו של מחמוד עביאת     35
36

עד זה מסר כי היה חבר בחוליה צבאית עליה היה אחראי עאטף עביאת, ונשפט על עבירות רצח     37
אותו ביצע. העד מסר כי הוא וחבריו לחוליה היו חיילים, והם קיבלו משכורת חודשית בסוף כל     38
חודש. העד טען כי הוא לא ידע מי העביר להם את המשכורות. העד עומת עם זכ"ד מחקירתנו     39

1  בשב"כ בו נרשם כי את המשכורות העביר פואד שובכי. העד טען כי אינו מכיר את פואד שובכי,
2  ומעולם לא שמע את השם הזה. העד טען כי מי שהעביר להם את המשכורות היה אדם בשם פואד
3  שומאלי, שהיה פקיד במשרד הכספים. בחקירתו הנגדית ציין כי מעולם לא ראה את הנאשם ולא
4  קיבל ממנו כסף, וכלל אינו יודע מי אחראי הכספים ברש"פ.

5
6  **אמרות הנאשם במשטרה**
7
8  הנאשם מסר שמונה אמרות משטרתיות, מלבד הזי"דים הרבים שנגבו ממנו בשב"כ. להלן נסקור
9  כרונולוגית את האמרות שנגבו ממנו ואת הדברים שמסר בהן -- דברים התואמים ככלל את
10  הדברים שמסר בחקירתו בשב"כ.
11
12  **ת/5 -- אמרת הנאשם מיום 19.3.09**: באמרה זו מסר הנאשם אודות פעילותו במסגרת הארגון
13  לשחרור פלסטין (אשי"ף) לפני שנת 2000. בהמשך האמרה מסר כי בשנת 2000 הייתה פגישה
14  במשרדי יאסר ערפאת בנוכחות ע/ראזק מג'אידה, חאג' אסמעיל ג'אבר, עיאזי גיבאלי, סלים
15  בורדיני, מחמד דחלאן, רשיד אבו שבאכ, אמין אל הינדי, מוסא ערפאת ומחמוד אבו מרזוק. יאסר
16  ערפאת אמר להם לקנות כל נשק שייכנס לעזה או לגדה וכל אחד מהבכירים הללו שהייתה לו
17  הצעה (לרכישת נשק – צ.ל.), היה מגיע אל הנאשם עם נייר עבודה, הנאשם היה מעבירו ליאסר
18  ערפאת, ולאחר שזה חתם היה הנאשם מאשר לאנשיו להעביר כסף לאותו בכיר. הנאשם מפרט
19  דוגמאות לכמויות וסוגי הנשק שניקנו וסכומי הכסף ששולמו תמורתם.
20
21  הנאשם הוסיף כי ביולי 2001, פתחי ראזם ועאדל מוגרבי הבריחו מלבנון מיכל עם פצצות אר.פי.ג'י
22  ומטולים שהגיעו מהחיזבאללה, באישורו של יאסר ערפאת, והכוח הימי לקח אותם. הוא שילם
23  לפתחי ראזם 50,000 דולר באישור ערפאת.
24
25  הנאשם הוסיף כי פגש בירדן את פתחי ראזם, שמסר לו כי נפגש עם פעילי חיזבאללה ועם איראני
26  וסיכם איתם כי הם יעבירו שלושה מיכלים עם נשק על גבי ספינה. הוא ביקש מהנאשם לדבר על
27  כך עם יאסר ערפאת, כדי שיינתן כסף. הנאשם מסר על כך לערפאת וזה נתן הוראה לחתרבי צרצור
28  שיתן לכך כסף. הנאשם גם מסר כי פגש בתימן את תייסיר עינייה שסיפר לו שעאדל מוגרבי ביקש
29  שיכינו לו ולעומר עכאווי דרכון, וכי הוא (עאדל) בא לראות את הספינה קארין A שהגיעה לתימן
30  עם הנשק.
31
32  **ת/1 -- אמרת הנאשם מיום 20.3.06**: באמרה זו מסר הנאשם כי פגש בשנת 2001 בירדן בפתחי
33  ראזם וזה מסר לו אודות מגעים עם האיראנים, לפיהם האחרונים מוכנים לשלם עבור ספינת נשק.
34  פתחי אמר לנאשם כי צריך שהוא (הנאשם) יפגוש בנציג האיראני בדובאי. הנאשם מסר כי הגיע
35  לדובאי ושם יחד עם עאדל מוגרבי פגש שני נציגים איראנים – אבו ממהד ואחמד סאלם.
36  האיראנים מסרו לנאשם ולעאדל כי הם מוכנים למימן אימונים של פלסטינים בלבנון ובאירן וכי
37  הם מוכנים לעזור בכסף ובנשק. הנאשם הוסיף כי עאדל כתב דו"ח לערפאת והם אמרו לאיראנים
38  כי לאחר שתתהיה תשובה מערפאת הם יודיעו על כך לאיראנים. לטענתו, כשערפאת ראה את