# EXHIBIT B.15
## (2 of 11)

Materials made available.

In addition to the case files which were photocopied and prepared for me by representatives of counsel for the Plaintiffs, I have reviewed the statement of claim (complaint) in the matter of *Sokolow*. Most of the case files submitted for my review document proceedings at first instance. Where, however, I was provided with appellate proceedings – I have indicated this fact.

My Opinion

In examining the nature of justice dispensed by the IMC, I have taken, for my starting point, those notions of due process enshrined in the Universal Declaration of Human Rights which are of relevance to my mandate.[1] These include, *inter alia*, the prohibition of torture[2] (in so far as the defendants may claim that abusive practices are applied by Israeli investigating authorities in order to obtain a confession), the right to equal protection of the law and equality before the law,[3] the right to a fair and public hearing by an independent and impartial tribunal[4] and, finally, the right to the presumption of innocence and a competent defence.[5] After giving a general overview of how these basic principles are applied by the IMC, I shall examine how they were enforced and protected in the context of the cases of relevance to *Sokolow*.

By way of introduction, it should be stated that although the State of Israel does not recognize the *de jure* applicability of the 4th Geneva Convention of 1949 to the West Bank, it nevertheless, applies, *de facto*, such principles contained therein which do not conflict with its security interests. Among those principles is the obligation to be found at Article 66 which permits the military commander of an occupied territory to establish criminal courts so long as they sit in the occupied territory itself. By virtue of Military Ordinance No. 378 of 1970 ("MO 378"), the IDF established just such a system of justice in the West Bank which, over the years, has evolved to the extent that, today, it almost parallels the system of justice in force in the State of Israel. Indeed, as an ultimate recourse, defendants at the IMC may, in certain circumstances, petition the Israel Supreme Court for judicial review of decisions pertaining to their fundamental human rights

---

[1] http://www.un.org/en/documents/udhr/index.shtml
[2] UDHR, Article 5.
[3] UDHR, Article 7.
[4] UDHR, Article 10.
[5] UDHR, Article 11.

3

The Prohibition of Torture

The laws of evidence of the State of Israel and the safeguards accruing to a suspect or accused contained therein have been incorporated into the legislation of the West Bank by virtue of Article 9 of MO 378 as amended on 23 December 1992:

> "*Military courts shall conduct themselves in accordance with the same laws of evidence which apply in the Courts of the State of Israel*".

Where it is alleged that statements have been produced as a result of illegal inducements, threats or, worse, torture, the law as applied by the IMC on the West Bank recognizes the *"suppression hearing"* concept familiar to practitioners in the United States and which is, also, utilized in the Israeli civilian courts. Before a statement is introduced to the detriment of a defendant, the judge will hold a "trial within a trial" during which the police officer or General Security Service agent who registered the statement is cross-examined by counsel for the defence. The judge will then decide upon the admissibility of the statement. The criminal procedure applied at the IMC is, in this respect, identical to the law applied in the Israeli civilian judicial system and offers defence counsel a valuable tool to tackle what they might perceive to be unlawfully obtained evidence. The same rationale applies to the statements of co-perpetrators or other hostile witnesses the introduction of whose testimony is sought by the Prosecution in order to incriminate an accused. Although a previous out-of-court statement may be admitted into evidence as an exception to the hearsay rule, it is a necessary pre-condition for such that both the witness and the person who registered the latter's statement be present for cross-examination in Court. The latter requirement gives defence counsel the perfect opportunity to cross-examine the police-officer or security agent who took the statement and to put to him any allegation of unlawful inducement. Furthermore, the out-of-court statement will not be preferred to the evidence heard in court unless the judge/s hearing the case is/are satisfied that other evidence admitted during the trial corroborates it.

The Right to a Fair and Public Hearing

Article 11 of MO 378 mandates that hearings at the military courts be public unless the trial judge/s should order otherwise in which case, an opportunity is given to defence counsel to oppose such an application:

> "*The military court shall hold cases brought before it in public. However, a military court may order that a case brought before it shall be conducted wholly or in part behind closed doors if it considers it appropriate to do so in the interests of the security of the Israeli Defence Forces, justice, or for public safety.*"

Speaking from experience, I have noted, on occasion, the desire of an accused to request a hearing *in camera* so that he may communicate information of a sensitive nature; whether it pertain to his own medical condition or to the fact that he believes himself to be suspected of being a GSS collaborator. I have also noted that family members often use the public trials as an opportunity to visit the accused in cases where they are, otherwise, refused entry into Israeli territory for security reasons and thus access to the detention centres. Given this phenomenon and the extreme heat in the summer months, a purpose-built shelter was, in recent years, installed at the JMC. It is, furthermore, my experience that human-rights NGOs – both Israeli and international – visit the JMC on a frequent basis in order to monitor the conduct of proceedings. The IDF is sensitive to such criticism and, the President of the JMC, has on occasion met with foreign dignitaries and senior human rights officers to hear and address concerns.

It goes without saying that the right to a fair hearing also includes the right to understand the nature of the proceedings. As a consequence, if the defendant does not understand the Hebrew language, he will be provided with simultaneous translation (as a general rule effected by a native Arabic speaker – a Druze or Bedouin soldier). In this respect, I note Article 12 of MO 378:

> "*If the accused does not understand Hebrew the military court shall appoint him an interpreter who will translate for him the statements made during the course of the hearing and the decisions of the court, unless the accused willingly renounces his right to have the proceedings translated wholly or in part. The accused has the right to object to a particular translator and to request that he/she be replaced*".

I should add that most counsel practising before the IMC, save a few exceptions, understand and speak both Arabic and Hebrew.

5