# EXHIBIT B.15
## (5 of 11)

it was not his intention that the physical perpetrator (who was killed while committing the attack) should enter Israeli territory to kill civilians. The defendant also raised a preliminary issue relating to the competence of the Court to try him – arguing that he was a prisoner of war. Having effectively denied the charges relating, *inter alia*, to the attack on King George Street, the case was set down for trial with the presiding judge repeating his recommendation that the defendant do his best to hire a lawyer to represent him.

Also of note is the defendant's apparent understanding of the concept of self-incrimination and an accused's right to avoid such. At the hearing conducted on 21 November 2002, the defendant turned to a witness in open court and gave her the following advice:

> "*Don't testify about the weapons – whether or not I gave you and you gave me…it is a criminal offence for you and you can receive years in prison – so keep your mouth shut…*"

In any event, in so far as the attack perpetrated on King George Street, Jerusalem is concerned, the defendant was incriminated at trial by the above discussed Abd-el Karim Ratheb Younis Aweis who was called as a witness for the Prosecution on 14 November 2002 and, as will be remembered, expressed pride for the acts that he had perpetrated. The defendant acknowledged that the Court had explained to him his right to cross-examine Aweis but he, nevertheless, declared that he had no questions for the witness given that the latter had given one statement in which he had not confessed any guilt and was thus a witness who had given conflicting evidence. This evidence was later corroborated by the defendant himself, who gave evidence on 10 December 2002 after requesting that another witness for the defence give evidence before him – something which is an exception to the general rule. During his testimony, the Court asked for the defendant's comments on the attack perpetrated on King George Street and the events that preceded it. At page 8 of the transcript, line 8 onwards, the defendant admitted that he knew that Aweis had armed the suicide bomber (Mohammed Hashaika) with an explosives belt and confessed to transferring the latter by car to a location from where he made his way to Jerusalem by hitch-hiking. The defendant admitted that he was prominent in taking responsibility for the attack on behalf of his organization – the Al-Aqsa Martyrs' Brigade. On 14 January 2003, and on the basis of the aforementioned admissions, the defendant was convicted of the offences relating to the King George Street attack.

At the sentencing hearing held on 10 March 2003, the defendant delivered an extremely lengthy monologue in which he denounced the Israeli occupation of Palestinian land and, at page 3 of the transcript, line 30 onwards, stated as follows:

> "*What caused me to take up arms and prepare bombs and send suicide bombers? What caused me and the 7000 prisoners and 3000 killed during the last two years of the Intifada – I say – is the occupation*".

To conclude, despite being unrepresented at trial, I am not of the opinion that the defendant was denied due process or confessed to something that he did not do.

### 4. Kahira Sa'id Ali Sa'adi – ID No. 903946960
### Case No. 3529/02 – Appeal 1777/04

This female defendant was initially charged, on 7 July 2002, inter alia, with the homicide of three civilians and the attempted homicide of many others by assisting a suicide bomber to enter Israel and leading him to the place where he detonated himself. The suicide-bombing concerned, in this instance, is the same incident as mentioned in cases 2 and 3 above.

The defendant was represented throughout the criminal proceedings by Attorney Abu-Ganem and Attorney Azbarga who agreed to submit evidential material of a technical nature while insisting on the cross-examination of a witness – once again – the above-mentioned co-perpetrator Abd-el Karim Ratheb Younis Aweis.

There is no reason to doubt that the defendant was ably represented and made fully aware of the charges leveled at her. Indeed, on 1 June 2004, the defendant's counsel concluded a plea bargain with the Prosecution in the context of which the indictment was amended and the defendant admitted guilt for aiding and abetting homicide and attempted homicide as opposed to co-perpetrating the same offences. After a sentencing hearing, the defendant was sentenced, on 29 August 2004, to three life sentences and an additional 30 years imprisonment – all to run consecutively.

Procedural issues of note include the fact that the Court, on 29 August 2004, before submissions were heard as to the appropriate sentence, informed the parties that one of the members of the judicial tribunal had business relations with Attorney Abu-Ganem from time to time. Such a declaration suggests that the Court was fully aware of the need to disclose any conflicting interests so that the impartiality of the tribunal be preserved.

13

I also note that at the sentencing hearing, defence counsel conducted a comprehensive plea in mitigation which included hearing testimony from the defendant's husband in an attempt to persuade the judges to impose a sentence of less than life imprisonment.

While it is not far-fetched, by any means, to argue that aiding and abetting homicide should attract a sentence of less than life imprisonment, it is hard to fault the Court's final decision given the nature of the defendant's admitted involvement in the crimes to which she pleaded guilty. In any event, it is not within my mandate to pronounce upon the reasonableness of the sentence but, rather, whether the defendant received a fair trial and appropriate representation. To this end, the plea bargain was an acceptable achievement for the defence lawyer. The fact that the Court chose not to follow such leniency through to sentence has nothing to do with due process but rather legitimate judicial discretion. In any event, an appeal was filed on behalf of the defendant which, on 31 July 2005, was allowed to the extent that her sentence was reduced from three consecutive life sentences and an additional 30 years to one life sentence alone.

### 5.  Sana'a Mohammed Shchada – ID No. 081021198
   Case No. 3544/02 - Appeal 1776/04

The facts of this case are virtually identical to that of the previous female defendant (Kahira Sa'id Ali Sa'adi - Case No. 4) to such an extent that both cases were co-joined on appeal. This defendant, also, led the suicide bomber, who perpetrated the attack on 21 March 2003, to King George Street where he detonated himself.

The defendant was represented by Attorney Ahlam Hadad – an extremely experienced attorney with whom I am familiar and who I know to represent many individuals facing trial at the JMC.

On 29 April 2004, as with the previous case, the parties reached a plea bargain with the original counts of co-perpetrated homicide being substituted for counts of aiding and abetting homicide. At the hearing, the defendant confirmed her attorney's submissions by clarifying to the Court that she understood the contents of the amended indictment and admitted the facts contained therein.

Two weeks later a sentencing hearing was held during which the defendant's counsel sought to mitigate her client's criminal responsibility by arguing that her "aiding and abetting" was purely technical. Defence counsel also cited precedent which, in her