# EXHIBIT B.15
## (6 of 11)

opinion, obliged the trial court to maintain a unified sentencing policy. At the conclusion of her counsel's comprehensive plea in mitigation, the defendant made the following short statement:

> "*I would ask the Court to judge me as a human being and not as its enemy. At the end of the day, I made no mistake. What caused me to do this were pressures and the circumstances.*"

On 7 July 2004, the defendant was sentenced to one life sentence. As mentioned, above the disparity between her sentence and that of Kahira Sa'id Ali Sa'adi prompted the latter's appeal which was later upheld. This defendant also filed an appeal which was rejected.

To conclude, this defendant was ably represented and I am not of the opinion that she was denied due process or confessed to deeds that she did not perform.


6. **Abdallah Bargouti – ID No. 030300028**
    **Case No. 3380/03**

This defendant was charged on 29 May 2003 with more than 100 offences – including, at counts 87-95 inclusive, offences of homicide and attempted homicide relating to the bombing perpetrated at the Hebrew University Campus on Mount Scopus in Jerusalem on 31 July 2002. The defendant's alleged role in the said bombing was by way of manufacturing the explosives which caused the lethal blast.

During the criminal process, the defendant was represented by Attorney Bassoul who, at the very first remand hearing on 1 June 2003, informed the Court that his client wished to plead guilty. The defendant, himself, acknowledged that he had understood the said indictment and admitted liability for the charges presented against him. The defendant was thus convicted and the sentencing hearing took place on 9 November 2003. Of significance is the fact that the defendant excused his lawyer from making a plea in mitigation and delivered his own lengthy speech notable for its non-conciliatory tone. Extracts thereof are cited below:

> "*I worked as an engineer but after the intifada when I saw the arbitrary murders and the unreasonable revenge exacted on the Palestinian people I decided that I would free (…) despite the occupation and I used all my power and knowledge to free my homeland. I do not regret even one of the acts that I carried out and the Court knows that I taught dozens of engineers who will do the work better than me. You will see in*

15

*the future cases ten times worse than mine. I promise you. With respect to the attacks which you claim that I perpetrated, they began when the [targeted] assassinations began – when you eliminated Jamal Mansoor and Jamal Salim. I committed the first attack in Sbarro Café because of an [Israeli] attack in Nablus…. After Ariel Sharon the terrorist gave the order to bomb Salah Schehada's house I carried out the attack at the University and that was because you crossed a red line by bombing civilians from the air. When you stopped gas and petrol reaching my compatriots in Jenin and Ramallah, I tried to blow up the petrol installation in Gelilot and I am sorry that I did not succeed as keen as I was that the attack should succeed and destroy everything in the vicinity….if you want to prevent these things you should leave my land and return to where you came from and I hope you will not ask to many questions about the things that I did because you will see a lot more. I have one piece of advice for the Israeli people: and that is what Ahmed Yassin promised namely that we will destroy the State of Israel by 2023. I assure you that it will happen much before that date…I do not understand how you are judging me on my grandfather's land … and how it is that the murderer is judging the murdered.*"

For the homicide of 66 individuals, the defendant was sentenced to 66 consecutive life sentences with an extra consecutive life sentence being imposed for the other offences to which he had pled guilty. There is no doubt in my mind that this defendant was eager to plead guilty for ideological reasons and was not minded, in any way at all, to benefit himself of any the procedural safeguards which could have been afforded him. The above cited extract shows that the defendant confessed, freely and without any compunction whatsoever, to committing the attack at the Hebrew University.

7. **Ibrahim Hamed – ID No. 991260886**
   <u>Case No. 4696/06</u>

This defendant was represented throughout the criminal process, bar one hearing, by counsel Attorney Salah Mohammed. It is worth noting that the evidential material in this case was vast given that it related to approximately 70 counts and over 300 witnesses for the Prosecution. More than three years passed without a single witness being heard and with most of the hearings held in the interim dealing with questions of disclosure. While such a delay is considered exceptional, it is worth noting that the Court itself expressed its displeasure. Part of the disclosure issues concerned immunity certificates issued by the Israeli authorities in order to prevent

the disclosure of material which might harm vital security interests. The fact that the Defence is entitled by law to challenge these certificates is an extra guarantee of due process. On receiving such a defence challenge, an appeals tribunal is required to review whether or not the accused will receive a fair trial if the information (in respect of which immunity is sought) is not released; namely, if it is exculpatory.

After a number of hearings during which disclosure issues were discussed and tentative dates for trial were fixed, the Prosecution presented, on 27 June 2010, an amended indictment. The first witness – the above mentioned – Abdallah Bargouti was heard on 7 July 2010 and the evidential hearings continued until 9 October 2011 when the accused was informed of his right to testify in his own defence. It should be noted, that a number of GSS agents were cross-examined by the Defence as to the methods which they adopted in interrogating those witnesses which were liable to incriminate the defendant.

On 9 October 2011, the defendant declined to testify after it had been clearly explained to him by the Court, in the presence of his counsel, that such refusal could comprise corroboration where the Prosecution was obliged to provide such an evidentiary supplement.

On 30 October 2011, and in the presence of his client, counsel for the defence had the following to say:

> "*I have been asked by the accused to tell the Court that his view of the Court – right from the start – is that he does not recognize the competence of the Court to try him. The accused also informs the Court – without pleading guilty to the acts attributed to him and set out in the indictment, that he views this Court as sitting in occupied territory and incompetent to judge. Defence counsel will elaborate on these submissions in his closing arguments. For these reasons, the defendant will not testify and will not be cross-examined by the Prosecution because he does not recognize the competence of the Prosecution or of the Court*".

While such a defence strategy flies in the face of accepted practice, it cannot be argued that it was a strategy that was adopted without the full consent of the defendant. Since a considerable portion of the Prosecution case against him was built on the evidence of co-perpetrators which, as a matter of law, require corroboration, the voluntary refusal of the defendant to testify was a major factor leading to his conviction – as the Court indeed pointed out at page 40, line 22 of its 60 page judgment delivered on 27 June 2012.