

**MILLER CHEVALIER**

Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com

June 30, 2014

BY ECF
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

  Re: *Sokolow v. Palestine Liberation Organization,* No. 04-CV-397(GBD) (RLE)

Dear Judge Daniels:

  I write in response to Plaintiffs' letter to Your Honor dated June 6, 2014 (DE 520) in which, four months after the January 22, 2014 deadline for filing the Joint Proposed Pretrial Order ("JPTO"), Plaintiffs asked the Court to accept into the record, and substitute into the JPTO, the following:

  A. A new version of Exhibit 3-1 to the JPTO that reportedly (i) reflects amendments to provide more fulsome descriptions than the original Exhibit 3-1 and (ii) a statement as to the basis for admission of each exhibit per the Court's request in the conference in this case held on April 11, 2014.

  B. A second amended and supplemented version of Plaintiffs' Exhibit list which seeks, after the deadline for filing the JPTO, to add (1) 7 additional documents (i.e., Exhibits 1111-1117) that have not been listed on any prior list, and (2) 18 other documents and videos that are the subject of their March 21, 2014 request to file a proposed amended and supplemented list (i.e., Exhibits 1042-1059) (DE 441) that Plaintiffs claim to have discovered after the JPTO deadline, some of which Plaintiffs assert "did not exist prior to January 22, 2014."

  On June 19, 2014, Your Honor set today as the deadline for Defendants to respond to Plaintiffs' March 21 letter (DE 538), which Defendants do, as follows:

  Regarding Item A above, Defendants do not object to the inclusion of that document in the JPTO to the extent, as Plaintiffs represent, the document merely provides more fulsome descriptions and provides the information requested by the Court on April 11. Defendants do not concede the accuracy of the descriptions, that the information provided represents what the Court requested on April 11, or that the information provided (which for the most part simply lists subsections of the Federal Rules of Evidence) is sufficient to admit any of the exhibits.

  Defendants oppose Plaintiffs' request for leave to amend their exhibit list to include the information described in Item B above (i.e., the addition to Plaintiffs' Second Amended and Supplemented Exhibit list of 25 documents or videos designated after the January 22, 2014 JPTO

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 • Washington, D.C. 20005-5701 • 202-626-5800 • 202-626-5801 FAX • millerchevalier.com

1435460.1



deadline). With respect to Category B(2) (i.e., Exhibits 1042-1059), Defendants oppose Plaintiffs' request to include those documents in Plaintiffs' Second Amended and Supplemental Exhibit List for the reasons stated in my letter of May 2, 2014 (DE 484) as well as for the reasons below. The Court should deny the Plaintiffs leave to amend their exhibit list because they have not shown good cause to amend the governing Scheduling Order, they did not produce most of the 25 documents or videos at issue prior to the close of fact discovery in this matter, and Defendants will be prejudiced by the requested amendment.

This Court's Scheduling Order required the parties to submit a proposed JPTO by January 22, 2014. DE 410. This Court's Individual Practices required that proposed JPTO to include "[a] list by each party of exhibits to be offered in its case in chief." Individual Practices of Judge George B. Daniels ¶ 4(A)(x) (March 5, 2013). Plaintiffs now seek to amend the Scheduling Order to allow an exhibit list to be filed out of time. Under Rule 16(b)(4), a "scheduling order may not be modified except upon a showing of 'good cause,'" which "depends upon the diligence of the moving party." *See G Investors Holding LLC v. Lincoln Benefit Life Co.*, No. 09 Civ. 2980 (ALC) (KNF) 2012 U.S. Dist. LEXIS 140676, at *6 (S.D.N.Y. Sept. 25, 2012) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)) (internal quotation marks omitted). "A party demonstrates good cause by a showing that despite its having exercised diligence, the applicable deadline could not have been reasonably met. A party does not satisfy the good cause standard when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Id.* at *6-7 (internal quotation marks and citation omitted). Plaintiffs fail to show good cause to add the requested exhibits.

As to those documents which Plaintiffs concede existed prior to the January 22, 2014 deadline for filing the original JPTO, Plaintiffs have made no showing in their letter that they could not have discovered and identified those documents through the exercise of due diligence prior to the JPTO deadline. Exhibits 1042-1051 are photos which were obtained by Plaintiffs' counsel from the Coulter family. Defendants requested these documents in their initial discovery requests which were served nearly three years ago on August 25, 2011. *See* Ex. 1 at 7 ¶ 15 (requesting "All documents concerning any damages or other relief you are seeking . . . ." The fact that Plaintiffs' counsel failed to collect these documents from their clients prior to the January 22, 2014 deadline is not good cause. Plaintiffs' counsel obviously knew how to do so. *See* Ex. 2 (Nov. 17, 2011 Tr.) at 5-6 (representing that Plaintiffs' counsel was "methodically attempting to communicate with each and every plaintiff" in order to respond to Defendants' document requests).

Exhibits 1054-1058 are purportedly emails of David Gritz. These emails are also responsive to Defendants' initial discovery requests. Ex. 1 at 7 ¶ 15. Plaintiffs' counsel represents that he located the other party to the emails (Mr. Gritz's "close friend, Doug Burgess") "fortuitously," but makes no showing that Mr. Burgess could not have been located and the emails obtained from him prior to January 22, 2014 through an exercise of reasonable diligence.

Exhibit 1052 is a print out from a website. Plaintiffs' counsel make no showing that they could not have located the website and printed it out prior to January 22, 2014 through an exercise of reasonable diligence. Plaintiffs claim that Defendants should have produced the website, but





Hon. George B. Daniels
June 30, 2014
Page 3

Defendants specifically objected to Plaintiffs' document requests to the extent that they called for information that was equally accessible to the Plaintiffs because it was in the public domain. *See* Ex. 3 at 4 ¶ 7. *See also id.* at 3 ¶ 6. Plaintiffs never challenged that objection, and cannot now complain that Defendants did not produce documents Plaintiffs could have accessed online if they had exercised reasonable diligence.

Exhibit 1111 is represented to be a statement of Abdullah Barghouti, whom Plaintiffs allege was convicted in connection with the July 31, 2002 bombing. It is therefore responsive to Defendants' initial discovery requests. Ex. 1 at 5 ¶ 8. Plaintiffs' counsel admit that they had the document before January 22, 2014, and even referenced it in the report of their expert Mr. Eviatar. There is no "good cause" to allow it to be listed after the JPTO deadline.

Exhibits 1112-1117 are purportedly statements of Nasser Shawish. They are therefore responsive to Defendants' initial discovery requests. Ex. 4 at 5 ¶ 4. Plaintiffs' claim that they located these documents after January 22, 2014 "in the court records of" a person mentioned in a document produced by Defendants in March of 2014. Plaintiffs' translation of that Arabic document, which Plaintiffs' letter incorrectly identifies as Pls. Trial Ex. 1016, (it is actually Exhibit 1060), references an arrest of Mohamed Hashaika, Nasser Shawish, and "Saleh al-Bukhari." Plaintiffs assert that "Exhibits 1112 to 1117 were found in the court records of the third arrestee's prosecution," *i.e.*, that Exhibits 1112 to 1117 were found in Bukhari's court records. Thus, the issue is whether Plaintiffs could have located the statements contained in Bukhari's court records prior to January 22, 2014 if they had exercised reasonable diligence. Plaintiffs claim that they could not because they "did not know of the third arrestee," Bukhari, and did not think of looking in his records until they became "aware that he was linked to Shawish." The problem with Plaintiffs' argument is that they produced in discovery on August 25, 2011 a Hebrew document that purports to be an indictment of Nasser Shawish which mentions Shawish's alleged affiliation with Bukhari. Plaintiffs have marked that document as Exhibit 366. *See* translation of Pls. Trial Ex. 366 at 13-15 (referencing alleged crimes committed by Shawish and "Salah Hassin Mohamed Buchri").[1] Thus, because a document Plaintiffs produced nearly three years ago informed of Plaintiffs of Bukhari's existence and the fact that he was allegedly "link[ed]" to Shawish, Plaintiffs have not shown good cause for their failure to investigate the contents of Bukhari's court records before January 22, 2014.

As to those documents which Plaintiffs claim did not exist prior to the January 22, 2014 deadline (Exhibits 1053 and 1059), Plaintiffs have likewise not shown good cause by demonstrating that the documents bear any relevance or admissibility to events that allegedly occurred over ten years ago. Plaintiffs claim that Exhibit 1053, which they represent is a 2014 TV interview of Tawfiq al-Tirawi is relevant because he allegedly "urged violence then and he is still urging violence now." Plaintiffs have pointed to no statement of Mr. Tirawi "urging violence" at the relevant time, and his recent hearsay statements are not relevant to any issue in this case. Similarly, Exhibit 1059, which

---

[1] The difference in spelling between the translations is likely due to the fact that in Exhibit 1060 the name is written in Arabic and in Exhibit 366 it is written in Hebrew.



Plaintiffs represent is a February 2014 broadcast of an unsworn interview with Abdullah Barghouti's father, is not relevant to any issue in this case.

Leave to add these exhibits should independently be denied because, with one exception (Exhibit 1111), the exhibits at issue were not produced by the Plaintiffs prior to the close of fact discovery. During the fact discovery period the Court repeatedly told the parties that if documents were not produced during fact discovery, they would not be allowed at trial.

For example, on March 20, 2012, Magistrate Judge Ellis told Plaintiffs' counsel:

> I don't want any last-minute documents being produced by your client. If they have any documents that pertain to their injuries either physical or emotional, I would expect them to have been produced to the defendant. And I would expect them to have been produced already. To the extent that they haven't, then you can expect that presumptively you don't get to have your expert opine on what those documents mean.

Ex. 5 (March 20, 2012 Tr.) at 63.

Indeed, during fact discovery counsel for both parties agreed on the record that documents that were not produced during discovery would not be admissible at trial. During a teleconference at a deposition held on July 10, 2012, Magistrate Judge Ellis asked the undersigned "if any of the people who are alive try to introduce documents that they didn't produce during discovery, doesn't it seem obvious to you that that's improper?" and the undersigned replied "I agree, your Honor." Ex. 6 (July 10, 2012 Tr.) at 28. The Magistrate Judge then told the parties "what I expect:"

> I would expect that to the extent that there are any documents that the estate has, that they be produced to the Defendants.
> And I don't care whether it's - - I don't care whether the Plaintiffs is alive or deceased, to the extent that they were directed to produce documents that were responsive, they produce them during discovery, or those documents are not going to be admissible at – well, at least as far as I'm concerned, and if I have to do an order at the end of this to make it clear, any responsive documents not produced during discovery will be inadmissible at trial.

*Id.* at 29-30. Plaintiffs' counsel responded: "I think you're stating something that nobody disagrees with." *Id.* at 30. The Court then continued:

> All I want you to do is understand from my point of view, the purpose of discovery is that there be no surprises. And that to the extent that individuals are asked, or entities are asked about, or asked to produce documents, or answer questions concerning the claims that are put forth, that they are required to do those and answer them fully.



> To the extent that that's not done, then those documents not produced will not be allowed to be at trial.

*Id.* at 31-32. Plaintiffs' counsel responded "Of course." *Id.* at 32.

Magistrate Judge Ellis repeated that ruling during a discovery hearing on November 20, 2012 in connection with a request by the Plaintiffs to compel discovery from the Defendants. He stated:

> I don't know if they're planning to pursue it, but my ruling on a situation such as this would be that to the extent that you have not identified any evidence either by pointing to it or responding to it, you'd be precluded from presenting such evidence.
>
> To the extent that you have responded that you have given all the evidence and pointed it out to the plaintiffs, then you need not worry.

Ex. 7 (Nov. 20, 2012 Tr.) at 6. That hearing came one day after a hearing before Your Honor where the Court told Plaintiffs' counsel in a hearing about the BBC documentary that "If you intend to use it as evidence, you better make sure, if he's asked for it, that he gets it." Ex. 8 (Nov. 19, 2012 Tr.) at 113.

Thus, the parties have long been on notice, and have even agreed on the record, that documents that were not produced during fact discovery would not be admissible at trial. With the exception of Exhibit 1111, none of the documents Plaintiffs now seek leave to add to their exhibit list were produced by the Plaintiffs during fact discovery, and their request should therefore be denied.

Finally, Plaintiffs' request to add the 25 exhibits should be denied because doing so will obviously prejudice the Defendants. Indeed, the Defendants have already been prejudiced by having to serve objections to the proposed amended exhibit lists and by having to prepare this letter and our letter of May 2. If the amendment is allowed, Defendants will be further prejudiced by having to litigate their objections to these inadmissible exhibits, and, if those objections are overruled, by having to introduce evidence to respond to these exhibits at trial. One purpose of fixed litigation deadlines, is, of course, to protect parties and the Court from continually having to respond to newly produced material after the close of discovery and the submission of the JPTO. As Your Honor recently observed in ruling on another request to modify the Scheduling Order:

> I think that there are two other compelling issues. One is that there has got to be some finality to discovery and it should be and has been done in a way that is fair to both sides and, you know, and we have to abide by a set of rules. Otherwise, right up until the trial is over, I'll be hearing mercy arguments. That's not what compels the rules that have to apply to both sides, because I'm sure that there will be a time when you're going to say that they haven't abided by the rules and sympathy shouldn't persuade me to allow them to skirt the rules even though they were fully aware that those rules had to be abided by, and as you say, it may not be undue prejudice but it is clearly prejudice, because it's clearly



> not to their benefit and clearly to your benefit. It may be appropriate to do so under the circumstances, but as I say, the parties, you know, had a full opportunity to do discovery, everyone knew what the bounds of that discovery and the time frames of that discovery was going to be . . . .

Ex. 9 (March 4, 2014 Tr.) at 63-64.

Accordingly, the Court should now enforce Magistrate Judge Ellis' prior orders and the parties' prior agreement and deny Plaintiffs leave to include the exhibits at issue in an amended exhibit list.

Whether ultimately included in Plaintiffs' Exhibit List or not, Defendants substantively preserve the Objections Defendants timely served to the documents at issue. *See* DE 544.

Defendants will be happy to respond to any issues or questions the Court may have regarding the foregoing and appreciate the Court's consideration of this letter.

Sincerely,

Brian A. Hill

cc: All ECF Counsel (by email)