UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 397 (GBD) (RLE)

---

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION
## FOR SUMMARY JUDGMENT
## ON DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE

For years, defendants have claimed to be "unincorporated associations" protected by the

immunity rule of *Martin v. Curran*, 303 N.Y. 276 (1951).[1]  In 2012, the Court directed defend-

ants to come forward with "evidence in the record that's been developed during this litigation,

that they are in fact an unincorporated association."  DE 252 at 78.  Put to their proof, defendants

now concede that they "are not…unincorporated associations."  DE 523, S.J. Opp. (06/06/14)

("Opp."), at 12.  That should end the capacity sideshow.  It certainly means that there is nothing

for the jury to decide on whether defendants are "unincorporated associations."  They admit that

they are not and should be held to that admission.

---

[1] DE 252 (Aug. 9, 2012) at 3 ("the PA and PLO, which are unincorporated associations, have been sued in their own names warranting dismissal of those claims"), 10 (Ms. Ferguson:  "I believe the PLO is an unincorporated association."), 14-15 (Ms. Ferguson:  "I can tell you that the PA…takes the position that it's best treated for the Federal Rules of Civil Procedure as an unincorporated association."), 18 (defendants' "affirmative defense is that the PLO and the PA are unincorporated associations'"); DE 210 (Feb. 24, 2012) at 4 (defendants have "consistently" taken the position "that for the purposes of applying the Federal Rules of Civil Procedure they are treated as 'unincorporated associations'"); DE 187 (Jan. 4, 2012) at 4 ("The PA and PLO are treated as unincorporated associations…."); DE 44 (July 30, 2007) at 22 ("The courts consistently have treated the PNA and PLO as unincorporated associations.").

Defendants try to keep this defense alive by claiming for the first time that they lack capacity as agencies of "an unrecognized foreign state." *Id.* at 6.  That argument is frivolous because defendants have never been agencies of a "state."[2]  They litigated and lost that issue in this case when this Court held that "Palestine" "does not meet the definition of a 'state,' under United States and international law, and hence does not constitute a foreign state."  *Sokolow v. PLO*, 583 F. Supp. 2d 451, 457-58 (S.D.N.Y. 2008).  This Court's decision comported with the uniform holdings of every court to address the issue, starting with the Second Circuit in *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 47 (2d Cir. 1991).[3]

In *Klinghoffer*, the Second Circuit expressly rejected the *exact* argument defendants make here—that as agencies of an "unrecognized foreign state," they "lack capacity":

> The PLO claims that, because the United States has not extended it formal diplomatic recognition, it lacks the capacity to be sued in United States courts.  This claim is without merit.  While unrecognized regimes are generally precluded from appearing as plaintiffs in an official capacity without the Executive Branch's consent, there is no bar to suit where an unrecognized regime is brought into court as a defendant.  Accordingly, the fact that the United States has not recognized the PLO does not provide a basis for immunity.

*Klinghoffer*, 937 F.2d at 48-49 (citations omitted).  Moreover, under Israeli law, the PA and the

---

[2] More precisely, they were not agencies of a "state" when the complaint was filed, which is the relevant time.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) (jurisdiction "'depends upon the state of things existing at the time the suit was brought'"); *European Cmty. v. RJR Nabisco, Inc.*, 2014 WL 1613878, at *10 n.14 (2d Cir. Apr. 23, 2014) (subject matter jurisdiction and "instrumentality status" of European Community determined as of time when complaint filed, notwithstanding its post-complaint incorporation into the European Union).

[3] *E.g.*, *Ungar v. PLO*, 402 F.3d 274, 292 (1st Cir. 2005) ("defendants have not carried their burden of showing that Palestine satisfied the requirements for statehood under the applicable principles of international law at any point in time"); *Ali Shafi v. Palestinian Auth.*, 686 F. Supp. 2d 23, 29 (D.D.C. 2010) ("the PA and the PLO are non-state actors"), *aff'd*, 642 F.3d 1088 (D.C. Cir. 2011); *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 181 (D.D.C. 2004) (refusing "to declare that Palestine is now a sovereign state among nations"); *Knox v. PLO*, 306 F. Supp. 2d 424, 429-30 (S.D.N.Y. 2004) (PA and PLO failed to establish that Palestine is a state).

PLO have capacity to sue and be sued.  Shnoor Supp. Dec. ¶ 5.  Indeed, the PA's capacity is set out in its organic document, and the PLO's has been determined unequivocally in the Israeli courts.  *Id.*

Defendants try to avoid the holding of *Klinghoffer* and the law of Israel on their non-federal claims based on the following assertions:  (1) internal New York law is different from Second Circuit and Israeli law on the capacity of a non-state government; (2) New York courts do not consider foreign law in deciding issues of capacity; and (3) Rule 17(b)(3) requires application of the internal laws of the State of New York, "without applying [New York's] choice of law rules."  Opp. 5.  Defendants' argument founders at each step.

## I.    Defendants Have Capacity To Be Sued Under Internal New York Law

Defendants' first theory is that if "the state statute is silent on whether a state entity can sue or be sued, then that entity is not amenable to suit."  Opp. 5 (citing *BK ex rel. Kroupa v. 4-H*, 877 F. Supp. 2d 804, 813 (D.S.D. 2012)).  That might be the law applied in South Dakota to a South Dakota state entity, but in New York a public body has capacity to be sued even in the absence of "'express legislative authority.'  Rather, the capacity to sue may also be inferred as a 'necessary implication from [the agency's] power[s] and responsibilit[ies],' provided, of course, that 'there is no clear legislative intent negating review.'"  *Cmty. Bd. 7 of Borough of Manhattan v. Schaffer*, 84 N.Y.2d 148, 156 (1994) (quoting *City of New York v. City Civil Serv. Comm'n.*, 60 N.Y.2d 436, 444-45 (1983)); *see Graziano v. Cnty. of Albany*, 3 N.Y.3d 475, 479 (2004).

Defendants ignore these cases.  They argue for a contrary outcome by citing two cases from the 1940s and 1950s holding that certain foreign agencies lacked capacity to sue.[4]  Howev-

---

[4] The cases are *Argentine Airlines v. Aircraft Dynamics Corp.*, 9 Misc. 2d 272 (Sup. Ct. N.Y. Co. 1957), and *Royal Norwegian Navy v. David Smith Steel Co.*, 185 Misc. 880 (1st Dept. App. Term

Footnote continued on next page

er, in other cases of that era—not cited by defendants—foreign agencies could be sued, so long as they were not entitled to sovereign immunity.[5]  And subsequently, in *French v. Banco Nacional de Cuba*, 23 N.Y.2d 46, 51 (1968) (Fuld, C.J.), the Court of Appeals held that the defendant—an "agency of the Cuban government" (which then, as now, was not recognized by the United States)—could be sued in the New York courts.  The Court of Appeals spoke, and that ended the matter.

Defendants cite cases predating *French v. Banco Nacional de Cuba*, in which the New York state courts extended sovereign immunity to shield unrecognized—but actual—sovereign states.  *Wulfsohn v. Russian Socialist Federated Soviet Republic*, 234 N.Y. 372 (1923); *Telkes v. Hungarian Nat'l Museum*, 265 A.D. 192 (1st Dept. 1942).  Those cases are not good law in light of the contrary holding in *French*.  They are also irrelevant.  Defendants are not sovereigns and are not entitled to sovereign immunity.

Finally, defendants say that they are not a governmental *corporation*.  Opp. 7.  That is irrelevant, too.  Non-corporate public bodies may sue or be sued under New York law.  *See, e.g.*, *City Civil Serv. Comm'n*, 60 N.Y.2d at 444-45 (department of personnel); *Green v. Safir*, 174 Misc. 2d 400, 405-06 (Sup. Ct. N.Y. Co. 1997) (public advocate).

Thus, defendant's first step in their argument—that internal New York law forbids suit against unrecognized foreign governments—is wrong.

---

Footnote continued from previous page

1945).  Defendants say these were decided by the "Supreme Court of New York," perhaps not recognizing that the "Supreme Court of New York" is not New York's highest court.  One of the cases is a decision of a motion court; the other is from the Appellate Term, which hears appeals from certain courts of limited jurisdiction, such as the Civil Court.  *See* 22 NYCRR § 640.1.

[5] *Hannes v. Kingdom of Roumania Monopolies Inst.*, 260 A.D. 189, 198 (1st Dept. 1940) (requiring fact development in order to determine whether the defendant should be accorded sovereign immunity); *Schneider v. City of Rome, Italy*, 193 Misc. 180, 181 (N.Y.C. Ct. 1948) (rejecting blanket assertion of sovereign immunity for a "so-called subdivision of a sovereign power").

## II.    A New York State Court Would Apply Choice-Of-Law Principles To Determine Defendants' Capacity To Be Sued

In our moving brief, we explained that New York's *Neumeier* choice-of-law rules require application of the law of Israel on issues like capacity and immunity. Pls. Br. 10-16. Defendants do not dispute this directly. Instead, they cite one pre-*Neumeier* trial-court decision not applying the *Neumeier* rules. Opp. 4 (citing *Argentine Airlines*, *supra* p.3 n.4). Obviously, to the extent that this case could be read to require courts to disregard choice-of-law rules, it is out of date. Ample authority today establishes that New York law requires applying choice-of-law principles to determine questions of capacity and immunity.[6]

Even before the modern choice-of-law era, New York's Court of Appeals and First Department looked to foreign law in deciding whether foreign agencies and instrumentalities were subject to suit. *See Mexico v. Schmuck*, 293 N.Y. 264, 274 (1944) (agent of Mexican government immune because "under the law of its creation it shares the sovereign immunity of the Government"); *Hannes v. Kingdom of Roumania Monopolies Inst.*, 260 A.D. 189, 198 (1st Dept. 1940) (whether suit against instrumentality of foreign government can go forward "must be gathered from a study of the foreign law").

## III.    Rule 17(b) Incorporates New York's Choice-Of-Law Principles

Defendants also argue that Rule 17(b)(3) is itself a choice of law rule requiring this Court to disregard New York's choice-of-law rules. Contrary to that theory, the judges of this District

---

[6] *See, e.g.*, *Ehrlich-Bober & Co. v. Univ. of Houston*, 49 N.Y.2d 574, 580-82 (1980) (considering choice-of-law interests in determining whether Texas state university was immune from suit); *Long v. Pan Am. World Airways*, 16 N.Y.2d 337 (1965) (applying choice-of-law rules to reverse 23 A.D.2d 386 (1st Dept. 1965), where the First Department had dismissed for lack of capacity); *Intercontinental Hotels Corp. (Puerto Rico) v. Golden*, 15 N.Y.2d 9, 16 (1964) ("the language of the [1936 *Mertz*] opinion indicates that the court was in reality there making a choice of law decision of the kind that this court today follows under the nominal heading of the 'contacts' doctrine"); *Wiener v. Specific Pharms.*, 298 N.Y. 346, 351-52 (1949) (foreign administrator of estate had "legal capacity" to sue in New York if so permitted by applicable foreign law).

have consistently applied traditional choice-of-law principles to determine a party's capacity under Rule 17(b).  In *Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F. Supp. 1155, 1161 (S.D.N.Y. 1995), the Court applied "New York choice of law principles" under Rule 17(b) to determine authority of a French defendant to be sued in a representative capacity.  Likewise, in *Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 107 (S.D.N.Y. 1991), *aff'd*, 996 F.2d 1353 (2d Cir. 1993), the court applied New York choice-of-law rules under Rule 17(b) to conclude that "English law governs" defendant's legal existence.  And, in *IIT v. Cornfield*, 462 F. Supp. 209, 215-17 (S.D.N.Y. 1978), *aff'd in relevant part*, 619 F.2d 909, 916 n.9 (2d Cir. 1980), the court determined the capacity of a Luxembourg entity that was "not a statutorily recognized corporate body" by looking to Luxembourg law under Rule 17(b).[7]

 Defendants counter with two unpublished cases from other jurisdictions.[8]  Those cases do not appear to be consistent with the principle that where state law supplies the rule of decision, as it does for the non-federal claims here, the federal court is, "in effect, only another court of the State."  *Guar. Trust Co. of N.Y. v. N.Y.*, 326 U.S. 99, 108-09 (1945).  The policy of "identity or uniformity between federal and state courts" requires that "for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result."  *Id.* at 109.  Because of that policy, the Federal

---

[7] *Accord Gen. Heat & Power Co. v. Diversified Mortg. Investors*, 552 F.2d 556, 557 n.1 (3d Cir. 1977) (defendant's capacity to be sued was governed by "Pennsylvania's conflict of laws rule"); *Ramirez v. Chip Masters Inc.*, 2012 WL 5448190, at *1 (E.D.N.Y. Nov. 7, 2012) (recognizing that capacity of unincorporated association must be determined under conflicting New York and California laws); *Assoc. of Merger Dealers, LLC v. Tosco Corp.*, 167 F. Supp. 2d 65, 71-72 (D.D.C. 2001) (applying DC choice-of-law rules in determining whether an unincorporated association had capacity to be sued for purposes of Rule 17(b)).  These cases belie defendants' claim that there is not "a single case in which capacity to be sued under Rule 17(b)(3) was determined…as a result of a choice of law analysis."  Opp. 3.

[8] *Masood v. Saleemi*, 309 F. App'x 150 (9th Cir. 2009); *Tigert v. Lord, Bissell & Brook*, 1989 WL 44719 (D.D.C. Apr. 28, 1989).

Rules of Civil Procedure are interpreted to avoid "'substantial variations [in outcomes] between state and federal litigation' which would '[l]ikely…influence the choice of a forum.'" *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504 (2001) (alterations in original). The decisions from this District faithfully apply this principle. Defendants' contrary approach would impermissibly result in this Court reaching a "substantially different result" from the "State court a block away." *Guar. Trust*, 326 U.S. at 109.

Defendants also cite cases in which choice-of-law issues were not raised by the parties, including one from the Second Circuit.[9] The courts in those cases correctly applied local law, by default, because (unlike here) the parties did not address the choice-of-law question. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014) ("'parties by their acquiescence...may induce the trial court to assume that foreign law is similar to that of the forum,' with the result that a court does not err when it articulates its decision by reference to the law of the forum") (ellipses in original).

## IV.    Defendants' Miscellaneous Throw-Away Arguments Are Frivolous

Defendants make a frivolous technical argument about Rule 17(b)(3), saying that something in it should be read to immunize defendants from suit under the Anti-Terrorism Act ("ATA") itself. That argument ignores the text of the ATA, which expressly permits suit against any "entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 2331(3); *see* 18 U.S.C. § 2334(a). Defendants admit that they hold property. Defs. Resp. to Pls. 56.1 Stmt. ¶ 11. Therefore, they can be sued under the ATA. Nothing in the Federal Rules of Civil

---

[9] *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90 (2d Cir. 2014) (applying New York law to determine capacity of a foreign defendant without considering foreign law); *Prescription Containers, Inc. v. Cabiles*, 2014 WL 1236919, at *1 (E.D.N.Y. Mar. 25, 2014) (concerning "an unincorporated entity with a principal place of business [in]…New York"); *CSA8-Garden Vill., LLC v. Garden Vill. Assocs. at Grayhawk, LP*, 2013 WL 2459856 (D. Ariz. June 6, 2013).

Procedure can be used to abridge that substantive right, granted by a federal statute.  *See Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83-84 (2d Cir. 2013) (Rule 17 cannot trump Lanham Act's statutory provisions on who can bring suit).

Finally, in a throw-away, defendants contend that *Martin v. Curran* provides them with substantive immunity—just in case "the Court were to disagree with the parties and conclude that the PA and PLO should be treated as unincorporated associations."  Opp. 11.  That is absurd. Defendants concede that they are not unincorporated associations.  They also have nothing to say about the fact that the immunity rule under *Martin* is a substantive defense, that New York's choice-of-law rules require application of the law of Israel, or, most important, that defendants have no immunity under the law of Israel.

## CONCLUSION

The Court should grant judgment to plaintiffs on defendants' fourth affirmative defense.

Dated:  New York, New York
      June 30, 2014

**ARNOLD & PORTER LLP**

By:    /s/ Kent A. Yalowitz

    Kent A. Yalowitz
      *KENT.YALOWITZ@APORTER.COM*
    Philip W. Horton
      *PHILIP.HORTON@APORTER.COM*
    Sara K. Pildis
      *SARA.PILDIS@APORTER.COM*
    Ken L. Hashimoto
      *KEN.HASHIMOTO@APORTER.COM*
    Carmela T. Romeo
      *CARMELA.ROMEO@APORTER.COM*
    Tal R. Machnes
      *TAL.MACHNES@APORTER.COM*

    399 Park Avenue
    New York, New York  10022
    (212) 715-1000