UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>                          Plaintiffs,<br><br>          vs.<br><br>THE PALESTINE LIBERATION ORGANI-<br>ZATION, *et al.*,<br><br>                          Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE**

**I.     Anti-Israel Polemics Are Not "Rebuttal Evidence"**

         The reports of several of defendants' experts are little more than anti-Israel polemics, de-

crying "settlements" on the West Bank, complaining of a "belligerent military occupation," al-

leging that the State of Israel "tortures" Palestinian "political prisoners" and even analogizing

Israel to "the Nazi Regime."  Defendants' trial exhibits—many of which are decades old—are

almost all to the same effect.  Defendants do not even try to distinguish the cases rebuffing simi-

lar attempts to turn terrorism cases into political show trials.  *See* Pl.Br. 2, 7-8.  Indeed, defend-

ants concede that "neither party should be permitted to admit this evidence."  D.Br. 1.  But they

argue that they need to attack the State of Israel to rebut four of plaintiffs' experts.

         This argument is frivolous.  As explained in our response to defendants' *Daubert* motion,

these experts' testimony is relevant to defendants' official policy, *respondeat superior*, ratifica-

tion, and state of mind and to establish that defendants provided material support and resources

to terrorists and terror organizations.  Defendants' political criticism of the State of Israel does

not even remotely qualify as rebuttal evidence.  How does testimony complaining about "settle-

ments" or "occupation" or "torture" or "political prisoners" rebut defendants' own words evi-

dencing their official policy, ratification or state of mind?  Defendants make almost no effort to

explain.  They do not even address the reports of three of their polemical experts (Shehada, Robinson and Sfard).  They argue only that a snippet of Lori Allen's report, which discusses coverage by the *non*-PA press of alleged wrongdoing by Israel, is offered to rebut Mr. Marcus' evidence of defendants' own public statements.  D.Br. 5.  That is why she needs to liken Israel to the "Nazi regime"?  Allen's evidence regarding *non*-PA media is irrelevant to defendants' official policy, *respondeat superior*, ratification, and state of mind.  Instead, her testimony on media is a subterfuge to make utterly irrelevant allegations about the government of Israel.  This Court should not allow defendants to turn this case into a show trial about Israeli policies.  Nor should defendants be permitted to "justify" their terrorism before the jury by attacking Israeli polices; when Congress enacted the ATA it did not include a "legitimate grievance" exception.

II.    **Generalized Evidence Attacking the IMCs Should Be Excluded**

Defendants should not be allowed to make generalized attacks on the Israeli Military Court system untethered to the actual proceedings in which the perpetrators were convicted.  Defendants assert that this motion is moot because the IMC records of those convictions are not admissible.  D.Br. 6.  That is nonsense.  The admissibility of foreign convictions—indeed IMC convictions in particular—is well established.  Pl.S.J. Opp. Br. (June 6, 2014) 37-41.[1]  As set forth in our brief in opposition to summary judgment (at 37-41), the legal standard for admission is met here, because the IMC provides due process.  *See Strauss v. Credit Lyonnais S.A.,* 925 F.Supp.2d 414, 448 (E.D.N.Y. 2013).  Indeed, the Court need look no further than defendants' own expert, Michael Sfard, who acknowledged that the IMCs provide a full panoply of rights to

---

[1] *See also United States v. Garland*, 991 F.2d 328, 335 (6th Cir. 1993): "Except where foreign judgments appear to lack trustworthiness, the burden should be on the party opposing their admission to show lack of trustworthiness.  Once admitted, foreign judgments should be treated as *prima facie* evidence of the facts and opinions contained therein."

defendants.  Pl.S.J. Opp. Br. (June 6, 2014) 38-39.

Defendants assert that they should be allowed to make generalized attacks on the IMCs because a foreign conviction is not conclusive evidence of the facts on which it is based.  D.Br. 11-12.  That does not follow, and the Court should not allow defendants to gin up every complaint against the IMCs they can dream up, irrespective of whether their critiques relate to these particular convictions.  Defendants' own brief shows why:

> [T]he GSS *may* interrogate individuals suspected of state security offenses without access to an attorney for up to 90 days; the GSS *has the power* to prevent defendant from meeting with his lawyer for up to 30 days; the GSS *may* request and obtain a gag order preventing disclosure of the investigation; the GSS investigator *may* invoke the "necessity" defense to use torture or inhumane or degrading treatment against the suspect….   D.Br. 8-9 (emphasis added).

The reason defendants say that the GSS "may" do these things, of course, is that they have no evidence it did so in any of the specific cases at issue here.  There is no reason to let defendants try to confuse the jury with such speculation.  *Cf. U.S. v. Skiljevic*, 2013 WL 3353960, at *4 n.7 (E.D. Wis. July 3, 2013) (rejecting generalized claim that foreign courts were sometimes given forged documents because defendant "present[ed] no evidence of this in his case").

Defendants' other complaints are speculative.  They say there might be Israeli investigative documents outside the court records that would cast doubt on the convictions (most of which were based on pleas of guilt), but cite no such documents. [2]   As explained in our response to defendants' *Daubert* motion, such speculation is inadmissible.  Pl.Resp.Br. (June 6, 2014) at 33-34.  Neither the perpetrators nor their lawyers appear to have raised such a claim in the IMCs.[3]

---

[2] Nor do defendants claim that they were unable to obtain such investigative documents from the perpetrators' lawyers, with whom defendants can and do communicate and cooperate.

[3] Defendants' suggestion that the perpetrators' confessions might have been *coerced* conflicts directly with their claim that the confessions are unreliable because the perpetrators might have been *bragging* about crimes they did not commit—these diametrically opposed claims show that

Footnote continued on next page

Plaintiffs do not object to the presentation of competent and otherwise admissible evidence of actual facts specific to the particular IMC proceedings in which the perpetrators in this case were convicted.[4]  But speculation or generalized critiques of the IMCs that defendants cannot connect to the convictions at issue should not be allowed.  Even if such critiques had relevance (and they do not) it would be marginal at best and far outweighed by the risk that the jury will be confused into thinking such a connection exists.  *See U.S. v. Parker*, 1989 WL 38135, at *5 (S.D.N.Y. Mar. 7, 1989) (excluding evidence that "could be considered relevant under Rule 401" because "considerations of judicial economy and the need to avoid confusion of the issues at trial easily outweighed its limited probativeness"), *aff'd*, 903 F.2d 91 (2d Cir. 1990).

### III.   <u>Undisclosed Fact Witnesses Should Be Excluded</u>

Defendants listed 21 witnesses in the JPTO even though they never disclosed either their names or the subject matters on which they would testify during discovery.  Plaintiffs will be seriously prejudiced if they have to cross-examine nearly two dozen witnesses without being able to depose them.  The Second Circuit has stated that the purpose of Rule 26 "is to prevent the practice of sandbagging an opposing party with new evidence," as defendants seek to do here.  *Haas v. Delaware and Hudson Railway Co.,* 282 Fed.Appx. 84,86 (2d Cir. 2008).  *See also Moore v. BASF Corp.*, 2012 WL 4344583, at *2 (E.D. La. Sept. 21, 2012) (disclosure inadequate "because it includes no mention of the subject of each individual's information"); *Chenevert v. GC Contractors*, 2011 WL 4054978, at *2 (N.D. Miss. Sept. 12, 2012) (same).  Defendants as-

---

Footnote continued from previous page
defendants' attacks on the convictions are just wild speculation.

[4] Defendants purport to describe such evidence in their brief, but much of it is sheer speculation. For example, they complain that certain allegations "may not have been disclosed to [the perpetrators]' lawyers" and that they were "likely denied access to counsel" or they may have chosen poorly in selecting counsel.  D.Br. 10.

sert that they could not comply because plaintiffs somehow (they do not say how) failed to dis-close "aspects" (they do not say which aspects) of their claims, D.Br.14-15, but they do not ex-plain why this might be so. Defendants also assert that "most" of the witnesses (without saying which) will "explain" (whatever that means) plaintiffs' exhibits (without identifying which ex-hibits). D.Br. 15. In other words, defendants—even in their brief—have disclosed nothing about their witnesses' testimony; they evidently intend to use these witnesses as "pinch hitters" to testi-fy about whatever topics defendants elect during trial.

Defendants' non-disclosure cannot be excused by calling these witnesses "rebuttal" wit-nesses. D.Br. 17-18. Rule 26 contains an exception only for impeachment witnesses, and the courts have made clear that "rebuttal" witnesses, unlike impeachment witnesses, must be dis-closed. *See Lujan v. Cabana Mgmt.*, 284 F.R.D. 50, 74 (E.D.N.Y. 2012) (stating that even if witnesses "were contacted solely for rebuttal purposes, this does not vitiate defendants' obliga-tion to supplement their Rule 26(a) disclosures") (footnotes omitted); *Sarantis v. ADP, Inc.*, 2008 WL 4057007 *5 (D. Ariz. Aug 28, 2008) ("Unlike case-in-chief and rebuttal witnesses, im-peachment witnesses need not be revealed in pretrial disclosures."); *Munnings v. Fedex Ground Package Sys.*, 2008 WL 1849003, at *7 (M.D. Fla. Apr. 22, 2008) ("Plaintiff's second argument that this evidence was intended only for purposes of impeachment is not well taken, as Plaintiff appears to equate rebuttal evidence with impeachment evidence.").

Defendants' arguments with regard to particular witnesses also fall flat. Defendants ar-gue that they are not out of time to disclose witness no. 19, General Khaled Abu Al-Yaman, be-cause his testimony did not become relevant until Judge Ellis required them to produce docu-ments from the PA's General Intelligence Service. D.Br. 16 n.7. Defendants have long known the content of their intelligence documents, and the fact that they thought they could get away

with violating Judge Ellis' discovery orders is not an excuse for failing to list the General as a

witness.  Even worse, defendants submitted a declaration signed by the General in connection

with the motion for sanctions pending before Judge Ellis, but blocked plaintiffs from deposing

him on the ground that "discovery is over."  *See* DE 548.  Defendants should not be allowed to

supplement their witness list after the close of discovery and then refuse to allow a deposition.

Defendants argue that witnesses 17, 18 and 24 were mentioned in the depositions of other

witnesses in other litigations.  D.Br. 16.  Such passing, "needle in the haystack" references do

not satisfy Rule 26.  *Lamothe v. Bal Harbour 101 Condo. Ass'n*, 2007 WL 781909, at *2 (S.D.

Fla. Mar. 13, 2007) (barring testimony by witness who "was only mentioned once and in passing

as having knowledge" during the deposition of another witness).  In any event, these references

are useless because they provide only the witnesses' job titles and say nothing about the subject

of their proposed testimony in this case.  For example, the only reference to witness 18 is a

statement in someone else's deposition that he was the head of the Palestinian National Authori-

ty's Personnel Bureau.  D.Br. 16, Ex. 4.  This does not come close to satisfying Rule 26.

Defendants' claim that witnesses 21, 22 and 23 were mentioned in documents produced

in discovery (D.Br. 16) is also unavailing.  The names of witnesses 22 and 23 do not, in fact, ap-

pear in the documents cited by defendants, and the name of witness 21 appears just one time.

The mere appearance of a name in a document is "plainly insufficient to satisfy the requirements

of Rule 26 for identifying potential witnesses."  *Wallace v. U.S.A.A. Life Gen. Agency, Inc.*, 862

F. Supp. 2d 1062, 1065-67 (D. Nev. 2012); *see also Pal v. NYU*, 2008 WL 2627614, at *4

(S.D.N.Y. June 30, 2008) (rejecting defendant's claim "that it satisfied its disclosure obligations

because it provided documents to [plaintiff] with the [witnesses'] names").

It is also no answer that defendants produced the depositions of witnesses 25-30 from two

- 6 -

other terrorism cases (*Klieman v. PA* and *Shatsky v. Syrian Arab Republic*) to which plaintiffs are not parties.  Defendants never even hinted that they might call these witnesses, and the fact that some pages of their transcripts were responsive to a Rule 34 request does not satisfy Rule 26. Similarly, defendants cannot rely on plaintiffs' disclosure that they might rely on depositions from *Saperstein v. PA*.  Plaintiffs made that protective disclosure because defendants, not plaintiffs, possessed those transcripts.[5]  If defendants intended to rely on witnesses 17 and 25 from *Saperstein*, they needed to disclose that fact.

Defendants argue that witnesses 20 and 31-37 were identified in response to interrogatories seeking persons with knowledge of certain of the perpetrators (D. Br. 16), but their cagy statement that witnesses "will be called to explain certain documents" (D.Br. 17-18) suggests a plan to offer testimony on other, unrelated and undisclosed matters.  Whatever defendants' plan, disclosing "knowledge" in an interrogatory answer is very different from disclosing that defendants intend to call the witness at trial at trial.  Rule 26(a)(1)(A)(i) requires disclosure of persons "that the disclosing party may use to support its claims or defenses," and the courts have made clear that parties must say which persons they may call.  A party receiving a laundry list of individuals with "knowledge" on a topic may forgo depositions on the ground that the testimony would be unnecessary to develop affirmative evidence for trial.  A party receiving a witness list during discovery makes a far different decision—one in which the price of skipping a deposition during discovery is a "cold cross" at trial.  In *Alfano v. Nat'l Geographic Channel*, 2007 WL 2982757, at *1 (E.D.N.Y. Oct. 5, 2007), the Court excluded plaintiff's witness even though plaintiff referred to the witness in his deposition, because he did not disclose that he might call

---

[5] De 155, Ex. A at 6.  Defendants did not even produce the *Saperstein* deposition of witness 17.

the witness at trial: "It is the latter information that is conveyed by the disclosures required under Rule 26(a)(1)—not merely that a person is a potential source of information, but that the party may call upon him to provide it…." This difference was also underscored in *Linde v. Arab Bank*, 04 Civ. 2799 (BMC) (E.D.N.Y. June 23, 2014, Doc #1013)(Ex. A). The defendant argued that it should be allowed to call two former employees because the plaintiffs knew about them, but the Court excluded them: "[T]his is the first indication that defendant intends to call these witnesses at trial. The fact that plaintiffs may have been aware of the existence of these two individuals is insufficient; defendant's obligation under the Federal Rules was to inform plaintiffs that it might call the witnesses in support of its claims or defenses so as to alert plaintiffs of the need to take discovery from them." *Id.* at 5. Similarly, in *Pal v. NYU*, 2008 WL 2627614, at *4, the court excluded two witnesses, stating that plaintiff's "knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if NYU informed Pal that it might call the witness in support of its claims or defenses."[6]

Defendants do not even try to address the Second Circuit's four-factor test for considering whether exclusion is too severe (*see* Pl.Br. 15-17). All four factors call for exclusion. First, defendants' brief is silent as to why they failed to make their disclosures. Second, defendants do not make any showing that any of these witnesses is so important that exclusion is too severe. Indeed, since defendants still have not explained what the witnesses would testify about, there is no way to assess their importance. *See Patterson v. Balsamico,* 440 F.3d 104, 117 (2d Cir. 2006) (importance factor not satisfied because the district court "had no idea what the witnesses' testi-

---

[6] *Accord Lujan*, 284 F.R.D. at 73 ("to satisfy Rule 26, parties must make an unequivocal statement that they may rely upon an individual on a motion or at trial."); *Moore,* 2012 WL 4344583, at *2 (awareness of person did not translate into knowledge that he would be called at trial).

mony would be"). Third, plaintiffs would be prejudiced because it is far too late to depose 21 new witnesses. Fourth, it would be unjust to allow defendants' violations to delay the trial.

## IV.    Testimony On "Expertise" Should Be Excluded

Defendants offer two "experts" who will testify that an expert cannot be an expert unless he or she is an academic or has been "exposed to peer review." *See* Miller Dep. 51:6. That may be the relevant standard among professors of the "sociology of expertise" like Mr. Miller. But it is not true under the Federal Rules of Evidence. Permitting someone to testify to that effect would usurp the Court's rule, confuse the jury, and amount to a critique on expert credibility, which is not allowed. *See U.S. v. Lumpkin*, 192 F.3d 280, 289 (2d. Cir. 1999).

## V.    Testimony on Law Should Be Excluded

Defendants tacitly admit that they cannot offer experts on law, claiming that their lawyer-witnesses will offer facts. Defendants want Mr. Quigley to testify about "the history of the Arab-Israeli conflict" and Messrs. Sfard and Shehadeh to testify about "settlements, the status of Jerusalem, and the occupation" to show "political and social conditions" (D.Br. 25). These are the kind of irrelevancies that should be excluded for the reasons discussed in Part I. Defendants want Ms. Weill to make generalized attacks on the IMCs. *Id.* She does not discuss the 21 cases and did not even read the court files. Weill Dep. 25:15-21. (Mr. Sfard did not provide particularized comments on the 21 convictions in his report, either. Sfard Dep. 149:21-150:2.) This kind of evidence should be excluded for the reasons discussed in Part II. Plaintiffs do not oppose Mr. Dahleh's testimony about the damages he computed in his report—just his legal opinions.

## VI.    Mr. Gaskins Should Not Testify About Non-Economic Damages

This Court need look no further than defendants' brief to understand why Mr. Gaskins should not be allowed to testify about non-economic damages. They concede that he "does not

claim expertise in determining non-economic damages." D.Br. 19. That should end the matter.

Moreover, expert testimony about non-economic damages invades the province of the jury. Pl.Br. 18-19. Defendants' only response is that Mr. Gaskins should be allowed to testify because he will not say what measure of non-economic damages is "best" and because "he does not opine on the proper amount of non-economic damages." D.Br. 20,19. But if Mr. Gaskins is not offering any opinions, he is not offering expert testimony. By telling the jury what it should consider in awarding non-economic damages, he is impinging not only on the jury, but also on the Court's role to instruct the jury on how to measure such damages.

Mr. Gaskins' declaration argues that he needs to testify on non-economic damages because of the danger that the jury will return an unreasonably high verdict. D.Br. Ex. 8 at 3. This suggests a surprising lack of trust in the jury. The cure for an excessive jury award is a remittitur; it is not testimony by an economist about non-economic damages. Mr. Gaskins also complains that he was not given copies of Form W-2 to assist in determining economic damages, but that does not justify allowing him to testify about pain and suffering.

There are many reasons why Mr. Gaskins' proposed testimony lacks an appropriate methodology, such as his apples-to-oranges comparison of the injuries suffered by plaintiffs with average damages awarded in very different kinds of cases. Pl.Br. 20-21. Defendants' response is that Mr. Gaskins' sources are "widely applied" (by whom is not clear) and that two of them "were established and are administered by the U.S. government." D.Br. 19. The reliability of Mr. Gaskins' sources is not the issue; we assume that the reports accurately state the averages. But those averages have nothing to do with plaintiffs' non-economic damages in this case.

## CONCLUSION

Plaintiffs' motion in limine should be granted.

Dated: New York, New York

     June 30, 2014

**ARNOLD & PORTER LLP**

By:                                   

    Kent A. Yalowitz
      *KENT.YALOWITZ@APORTER.COM*
    Philip W. Horton
      *PHILIP.HORTON@APORTER.COM*
    Sara K. Pildis
      *SARA.PILDIS@APORTER.COM*
    Ken L. Hashimoto
      *KEN.HASHIMOTO@APORTER.COM*
    Carmela T. Romeo
      *CARMELA.ROMEO@APORTER.COM*
    Tal R. Machnes
      *TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York  10022
Telephone:   (212) 715-1000
Facsimile:    (212) 715-1399