UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| MARK I. SOKOLOW, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Docket No. |
| | ) | 04-cv-397 (GBD) (RLE) |
| v. | ) | |
| | ) | |
| THE PALESTINE LIBERATION ORGANIZATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

_____


## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800 (tel)
(202) 626-5801 (fax)


*Counsel for Defendants the Palestinian Authority
and the Palestine Liberation Organization*

June 30, 2014

1435616.1

# <u>TABLE OF CONTENTS</u>

Page

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 3

I.    Defendants Are Entitled to Summary Judgment on Plaintiffs' ATA Claims ................... 4

      A.    There Is No Admissible Evidence of PA or PLO Involvement in the January 8, 2001 Shooting (the Guetta Plaintiffs) .................................................... 4

      B.    There Is No Admissible Evidence of PA or PLO Involvement in the January 27, 2002 Bombing (the Sokolow Plaintiffs) ............................................ 7

      C.    There Is No Admissible Evidence of PA or PLO Involvement in the June 19, 2002 Bombing (the Mandelkorn Plaintiffs) .................................................... 8

      D.    There Is No Admissible Evidence of PA or PLO Involvement in the March 21, 2002 Bombing (the Bauer Plaintiffs) .................................................. 10

      E.    There Is No Admissible Evidence of PA or PLO Involvement in the July 31, 2002 Bombing (the Blutstein, Carter, Coulter and Carter Plaintiffs) ........... 11

      F.    There Is No Admissible Evidence of PA or PLO Involvement in the January 22, 2002 Shooting (the Gould and Waldman Plaintiffs) ....................... 13

      G.    There Is No Admissible Evidence of PA or PLO Involvement in the January 29, 2004 Bombing (the Goldberg Plaintiffs) ......................................... 15

      H.    There Is No Triable Issue of Fact on Respondeat Superior Liability ................. 17

      I.    Plaintiffs Lack Admissible Evidence of Proximate Cause and Scienter ............. 19

II.    Defendants Are Entitled to Summary Judgment on the Non-Federal Law Claims ......... 20

Conclusion ........................................................................................................................... 20

1435616.1

# INTRODUCTION

Plaintiffs' strategy is clear from the opening words of their brief:  inflame with rhetoric to distract from the absence of admissible evidence.  Plaintiffs begin by quoting President Obama's 2014 West Point speech to imply that terrorist acts by the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") pose a "direct threat to America at home and abroad." DE 545 ("Opp.") at 1.  Plaintiffs then pronounce:  "Defendants have American blood on their hands."  *Id.*  President Obama was, of course, not talking about the PA and PLO, but was instead talking about the terrorism threat posed by "decentralized Al Qaeda affiliates."[1]  Plaintiffs may hope that the jury will confuse the Defendants with Al Qaeda, but President Obama does not. When President Obama welcomed President Abbas to the White House earlier this year, just a few months before the West Point speech, he stated:  "And I have to commend President Abbas. He has been somebody who has consistently renounced violence, has consistently sought a diplomatic and peaceful solution that allows for two states, side by side, in peace and security; a state that allows for the dignity and sovereignty of the Palestinian people and a state that allows for Israelis to feel secure and at peace with their neighbors."[2]  The notion that Defendants have "American blood on their hands" is offensive and divorced from the facts of this case. Americans died in only one of the seven attacks at issue in this lawsuit (the tragic Hebrew University bombing), which Plaintiffs themselves claim was carried out by Hamas operative Abdullah Barghouti, not by PA or PLO officers or employees.  *See* Opp. at 10-11.

---

[1] http://www.whitehouse.gov/the-press-office/2014/05/28/remarks-president-west-point-academy-commencement-ceremony

[2] http://www.whitehouse.gov/the-press-office/2014/03/17/remarks-president-obama-and-president-abbas-palestinian-authority

REDACTED - PUBLIC FILED VERSION

At pages 4-5 of their Opposition, Plaintiffs collect 9 statements they claim were made by Palestinians, several of which are anti-Semitic, and none of which relates to the seven attacks at issue. The documents cited cannot be authenticated and are not admissible, so are also included only to inflame. The statements are offensive and the sentiments expressed are reprehensible. But the statements were not made by PA or PLO officials, nor is there any admissible evidence they were made by individuals employed by the PA or PLO. *See, e.g.*, Pls. Tr. Exs. 644-46, 492 (quoting statements made by various sheikhs and clerics). Defendants could just as easily collect offensive, violent anti-Arab speech made by Israeli extremists. The fact that the long-running Israeli-Palestinian conflict has elicited hateful speech from extremists on both sides is, however, irrelevant to the issue of Defendants' liability in this case.

Plaintiffs' other strategy is to obscure the absence of admissible evidence by burying the Court and Defendants in 18,400 pages of exhibits and over 10 hours of video clips and making it extremely laborious to identify the cited evidence and assess its admissibility. Many of Plaintiffs' claims, including those that go to key liability issues, lack any citation at all. *See, e.g.* Opp. at 19 ("Defendants used their extensive command and control apparatus to direct their employees' terrorist activities."); *id.* (Defendants "funded acts of terror by their employees, provided money and supplies for such acts"); *id.* at 23 ("Defendants also supplied AAMB and its members with weapons"). Plaintiffs routinely fail to provide pinpoint cites, leaving the Court and Defendants to wade through lengthy documents to hunt for the cited passage. Plaintiffs also cite their expert reports' claims about facts in the case, when those claims are based solely on specific trial exhibits, which are not referenced as such, which requires more hunting to identify what specifically the Plaintiffs are citing. Plaintiffs' Opposition references "Pls. Tr. Exs.," either directly, or indirectly through cites to their 205-page Rule 56.1 Statement, but provides no

1435616.1

description of the type of document Plaintiffs are relying on or the supposed source of the information.  If they did, the lack of evidence would jump off the page.  Once locating the actual statements or documents relied on to support a particular claim, it becomes evident that, in most cases, the statement or document at issue is not admissible or does not support Plaintiffs' claim.

Defendants filed objections to Plaintiffs' trial exhibits, most recently on June 23 (DE 544).  Defendants also sought leave to file a paragraph-by-paragraph response to Plaintiffs' Rule 56.1 Statement.[3]  The Court denied Defendants' request (DE 538).  Under Federal Rule of Civil Procedure 56(c)(1)(B), Defendants are entitled to show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," and under Rule 56(c)(2), "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Defendants cannot in the 20-pages allowed for their reply, address the non-admissibility, mischaracterization, or non-materiality of the 18,400 pages of exhibits referenced in Plaintiffs' over 200-page Rule 56.1 Statement.  Defendants continue to believe they are entitled to respond to Plaintiffs' Rule 56.1 Statement.  If the Court determines such a response would be useful, Defendants are prepared to submit one.

## ARGUMENT

Plaintiffs' claims in Facts, Parts A and B (pp. 2-6) regarding Defendant's supposed relationship with the Al Aqsa Martyrs' Brigades ("AAMB") and supposed incitement of terrorism cannot be presented in a form that would be admissible at trial.  Fed. R. Civ. P. 56(c)(2).  Even if they could, they would not make the PA or PLO liable because none of the cited material demonstrates that any tortious conduct by the PA or PLO was a proximate cause of

---

[3] In response to Defendants' Rule 56.1 Statement, Plaintiffs, with the Court's consent (DE 509), refused to identify admissible evidence to support key factual claims.

any of the Plaintiffs' injuries.  As noted, the statements Plaintiffs cite (at pp. 4-5) are not those of

the PA or  PLO and, in any event, the Anti-Terrorism Act ("ATA") does not impose liability for

speech or mere association.  *See In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d

494 (S.D.N.Y. 2010) ("The ATA does not prohibit mere association with a foreign terrorist

organization, nor is it intended to abridge First Amendment rights.").

The absence of a triable issue of fact becomes even more apparent when Plaintiffs present

their evidence regarding the Defendants' supposed liability for the specific attacks at issue in

Part C (at pp. 6-12), and Argument Part I.E (pp. 32-36).  Although Plaintiffs' principal theory for

imposing liability on the PA and PLO is respondeat superior, Plaintiffs do not identify any PLO

employee involvement in the attacks, and fail to identify any admissible evidence that any PA

employee alleged to be involved was acting within the scope of his employment.  Similarly,

Plaintiffs cite no admissible evidence that any senior PA or PLO official had prior knowledge of

any of the attacks, that any PA or PLO funds or weapons were used in any of the attacks, that

any of the perpetrators consumed any of the allegedly inciting media, or that any of the

perpetrators committed the attacks at issue because of PA or PLO sponsored social programs.

The fact that, out of the PA's 100,000 employees (DE 497-1 ¶ 40), several low-level employees

are alleged to be implicated in some of the attacks does not result in the imposition of liability for

the Defendants.   Employees commit crimes, but employers are only liable under particular well-

established rules, the elements of which the Plaintiffs do not meet.

## I.    Defendants Are Entitled to Summary Judgment on Plaintiffs' ATA Claim.

### A.    There Is No Admissible Evidence of PA or PLO Involvement in the January 8, 2001 Shooting (the Guetta Plaintiffs).

Plaintiffs cite the following evidence in support of their claim that PA employee Fawzi

Murar shot Oz Guetta on January 8, 2001:  (1) Varda Guetta's identification of a man Plaintiffs

1435616.1

claim is Murar from a "photo array of fifteen pictures provided to her by her counsel in February 2013," twelve years after the attack, DE 491 at 29 ¶110; (2) custodial statements of Freij Adwan, Issa Natshe, Ahbed Al-Hadi Hamad, and a related indictment of Adwan, Pls. Tr. Exs. 317C, 329, 331, 335; (3) Murar's file from the Institute for the Care of the Families of Martyrs and the Wounded, Pls. Tr. Ex. 326, and (4) an Israel Ministry of Foreign Affairs press release (Pls. Tr. Ex. 1109). *See* DE 491 at 27-29 ¶¶ 99-112. Plaintiffs also cite a verdict for Adwan, Pls, Tr. Ex. 327, but it does not mention Murar.   None of this evidence is admissible to show that Murar shot Oz Guetta.

As set forth in Defendants' opening brief, Varda Guetta's photo identification 12 years after the shooting is not admissible. DE 497 ("Mot.") at 26-29; DE 497-21. Plaintiffs' claim (Opp. at 32) that "unless there is specific evidence of improper state conduct, the witness identification goes to the jury" is false. Plaintiffs cite *Perry v. New Hampshire*, 132 S. Ct. 716, 728 (2012), but that case deals with the due process constraints on use of photo identifications in criminal cases, not with the Rule 56 standard in civil cases. In fact, *Perry* rests in part on the fact that "[s]tate and federal rules of evidence . . .  permit trial judges to exclude relevant evidence if its probative value is substantially outweighed by its prejudicial impact or potential for misleading the jury." *Id.* at 729 (citing Fed. Rule Evid. 403; N. H. Rule Evid. 403 (2011)).

In any event, Plaintiffs cite no evidence to establish that the man in the photo selected by Varda Guetta is Murar. *See* DE 491 at 27-29 ¶¶ 99-112; *id.* at 112-13 ¶ 119. Even assuming *arguendo* that the photo identification is admissible, Plaintiffs cannot establish that Murar is the alleged shooter. Plaintiffs claim that "[p]erpetrators involved in . . . other attacks confirmed Fawzi Murar's involvement in attacks similar to the January 8 shooting." *Id.* at 28 ¶ 105. In addition to the fact that such evidence is inadmissible under Fed. R. Evid. 404(b), Plaintiffs rely

1435616.1

on purported custodial statements of third parties (*id.* at 28 ¶ 105), which are not admissible under *Williamson v. United States*, 512 U.S. 594 (1994). *See* Mot. at 38-39. Plaintiffs claim that Murar worked to "execute a string of terror attacks between October 2000 and February 2002," DE 491 at 28 ¶ 104, but that claim also is not supported by admissible evidence. In addition to citing an inadmissible custodial statement (Pl. Tr. Ex. 317A), Plaintiffs cite Pl. Tr. Ex. 326, the inadmissible so-called "martyrs' file," which does not support Plaintiffs' claim of Murar's involvement in the Guetta shooting. Plaintiffs also cite Pl. Tr. Ex. 1109, which is an Israel Ministry of Foreign Affairs press release, dated March 5, 2002, relaying hearsay statements of an unidentified IDF spokesperson. On its face, the exhibit does not satisfy criteria for admissibility under Federal Rule of Evidence 803(8). In any event, the press release purports to identify shootings, some of which the IDF alleged Murar was involved in, and notably does not include the January 8, 2001 Guetta shooting. Pls. Tr. Ex. 1109.

The only other evidence Plaintiffs offer to support their claim that Murar shot Guetta is the Shrenzel Report at 76-77. Shrenzel reviews the same inadmissible evidence and concludes that "it is unsurprising that Mrs. Guetta has identified Fawzi Murar, an officer in Force 17, as one of her attackers." Shrenzel Rpt. at 75. A purported expert's absence of surprise is not a basis to take a case to trial, and, in any event, such a conclusion is not the proper subject of expert opinion and thus not admissible to establish that Murar was the shooter.

Even assuming *arguendo* Plaintiffs could establish a triable issue of fact that Murar was the shooter, Plaintiffs fail to identify any admissible evidence that Murar acted within the scope of employment with the PA, or that the PA is otherwise liable for his alleged attack on the Guettas. Absent this evidence, Murar's alleged involvement is irrelevant to PA liability. Plaintiffs have no evidence linking Murar to the PLO.

**B.    There Is No Admissible Evidence of PA or PLO Involvement in the January 27, 2002 Bombing (the Sokolow Plaintiffs).**

Plaintiffs allege that Wafa Idris carried out the January 27, 2002 bombing but do not identify any evidence that Idris was employed by either the PA or PLO.  *See* Opp. at 35-36. Instead, Plaintiffs contend that PA employee "Abu Talal" planned the bombing.  *Id.* at 35. Plaintiffs primarily rely on Pls. Tr. Ex. 465, which is a Hebrew language document whose author is unidentified and which purports to represent the custodial statement of Munzer Noor. According to the exhibit, Noor was instructed that "[a]bstention from responding to questions may strengthen the evidence against you."  Pls. Tr. Ex. 465 at 1.  Plaintiffs have no means of authenticating this document or of establishing that it is a statement of Noor.  In any event, it is inadmissible under Fed. R. Evid. 803(b)(4) to the extent it inculpates a third party (Abu Talal). *Williamson*, 512 U.S. 594.  Plaintiffs' argument that self-inculpatory statements are admissible to establish guilt of a co-conspirator (Opp. at 35-36) misses the point.  Plaintiffs are not seeking to admit the (allegedly) self-inculpatory portion of Noor's statement against Abu Talal in a conspiracy case under a *Pinkerton* theory of liability.  They are seeking to admit Noor's statement about Abu Talal in a civil case against Defendants.  *Williamson* proscribes such a blatant end-run around Rule 804(b)(3).  In any event, Plaintiffs cite no evidence that Abu Talal was acting within the scope of his employment, so any alleged role he had in the bombing cannot conceivably create liability for the PA.  There is no admissible evidence that the PLO had any involvement in the bombing.

The only other evidence Plaintiffs identify is Pls. Tr. Ex. 233.  Opp. at 35, 36.  Plaintiffs rely on a handwritten note at the top of the document dated over two weeks after the bombing, their translation of which states "This information proves that the General Intelligence are involved in the issue of Wafa Idris."  Plaintiffs' own expert testified that the handwriting could

not be deciphered.  Shrenzel Dep. at 128-29.  In any event, the document indicates only that someone with General Intelligence was in communication with Idris's family after the bombing. It does not create a triable issue of fact that the PA carried out, supported or planned the bombing.  In any event, the author of the note is not identified and Plaintiffs have no means of authenticating the hearsay statement.

### C.    There Is No Evidence of PA or PLO Involvement in the June 19, 2002 Bombing (the Mandelkorn Plaintiffs).

Plaintiffs claim that PA employee Abu Sharkh was "behind" the June 19, 2002 bombing. Plaintiffs' sole evidence is Pls. Tr. Ex. 339, which purports to be a page from an Israel Ministry of Foreign Affairs website, which is inadmissible hearsay and cannot be authenticated.  *See* Mot. at 31.  Plaintiffs claim it is a self-authenticating public record and admissible under Rule 803(8) because it sets out "factual findings from a legally authorized investigation."  Opp. at 34.  The document does nothing of the sort.  It relays hearsay ("communicated by the GPO", the Government Press Office), and describes a February 2004 operation by the Israel Defense Forces and Israeli police, "guided by the ISA," to confiscate bank accounts, one of which was the account of Abu Sharkh.  Pls. Tr. Ex. 339.  The document does not set out any factual findings from an investigation into whether Abu Sharkh was involved in the June 19, 2002 bombing.

Plaintiffs' claim that the document meets Rule 803(8)'s requirement that "neither the source of information nor other circumstances indicate lack of trustworthiness," Opp. at 34, also is not borne out by review of the document.  The exhibit does not identify any source for the statement that Abu Sharkh "was behind the . . . 19 June 2002 suicide bombing," and the document on its face is relaying information "communicated by the [Government Press Office]," which itself is likely based on additional layers of hearsay, given the function of a press office. Pls. Tr. Ex. 339 at 1, 4.  Plaintiffs attempt to distinguish *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d

8

542, 571 (E.D.N.Y. 2012), on the basis that the statement in the Israeli government document at

issue in that case was based on a custodial statement, which *Gill* found unreliable.  *See* Opp. at

34.  It is surprising Plaintiffs rely on *Gill* because much of their evidence is based on similarly

unreliable custodial statements.  In any event, here, there is even less ability to assess the

reliability of the Israeli government document than in *Gill*.  There is no indication of *any* source

for the claim regarding Abu Sharkh's involvement in the bombing.  Moreover, Plaintiffs do not

identify any evidence that Abu Sharkh's alleged role in the bombing was within the scope of his

employment with the PA, so there is no triable issue of fact on PA liability.  Plaintiffs do not

identity any basis for imposing liability on the PLO for Abu Sharkh's alleged role.

　　　　Alternatively, Plaintiffs claim that Defendants should be liable for the June 2002

bombing under a "ratification theory," because, ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ Opp. at 34; Pls. Tr. Ex. 19 at 3; Pls. Tr. Ex. 16.  Plaintiffs do not

identify any case law supporting their claim that a ratification theory of liability exists under the

ATA, and indeed no court has imposed such liability.  In any event, the common law elements of

ratification are not met because there is no evidence that Awada acted for the benefit of the PA

or PLO, and the PA and PLO did not "clearly establish" their assent to the bombing.  *See*

*Municipality of Bremanger v. Citigroup Global Mkts., Inc.*, 2013 U.S. Dist. LEXIS 49603, at *64

(S.D.N.Y. Mar. 28, 2013).  To the contrary, Defendants publicly condemned the bombing as

"despicable" and against the national interest.  *See* DE 497-1 at 37-38 ¶¶ 325-26.  Moreover, to

establish liability under the ATA, Plaintiffs must establish that wrongful conduct of the

Defendants *caused* their injury.  Mot. at 6-7, 22-23.  According to Pls. Tr. Ex. 16, ████████

█████████████████████████████████████████████████████.  There is an absence of

REDACTED - PUBLIC FILED VERSION

any admissible evidence that Awada carried out the bombing because of possible future monthly payments to his mother.

Finally, Plaintiffs claim a jury could find the Defendants liable because "Fatah publicly took credit for the attack and carried it out through its 'military wing' AAMB," and "Defendants' support of AAMB is well documented." Opp. at 35. Plaintiffs only evidence of the Fatah claim of responsibility is the Shrenzel Expert Report. Shrenzel simply asserts that Fatah took credit but provides no substantiation for his claim (Report at 56), and his statement cannot create a triable issue of fact as to Fatah's alleged claim of responsibility. *See GE v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert"). The only support Shrenzel offers for his conclusion that the bombing was carried out by AAMB is his assumption that alleged AAMB member Abu Sharkh planned the bombing, which rests solely on the already discussed inadmissible page from the Israel Ministry of Foreign Affairs website. *See* Shrenzel Rpt. at 56, 57. Citing their Rule 56.1 Statement, Part II ¶¶ 37-45, DE 546, Plaintiffs claim that "Defendants' support of AAMB is well documented," Opp. at 35, but the cited portion of their Rule 56.1 Statement does not provide evidence of any PA or PLO material support of AAMB, let alone any support for the alleged perpetrators of the bombing at issue. Plaintiffs also attempt to establish a link between AAMB and Fatah, but provide no admissible evidence that Fatah is an alter ego of either the PA or PLO or that any support of Fatah by the PA or PLO was a proximate cause of Mr. Mandelkorn's injuries.

### D. There Is No Evidence of PA or PLO Involvement in the March 21, 2002 Bombing (the Bauer Plaintiffs).

Plaintiffs claim that Mohammad Hashaika carried out the March 21, 2002 suicide bombing. Hashaika was dismissed from the PA police force over a month before the bombing as

1435616.1

"unfit to be a police officer." Pls. R. 56.1 Stmt. at 41 ¶¶ 181-82. Plaintiffs seek to impose

liability on the PA based on their claim that the PA released Hashaika and alleged co-perpetrator

Nasser Shawish from prison shortly before the bombing. Opp. at 9. Plaintiffs have no

admissible evidence to support this claim, *see id.*, and instead wrongly claim that the

"Defendants failed to turn over any documents concerning their interrogation and release." *Id.*

Defendants are not withholding any documents. *See* Opp. to Sanctions Motion; Al Yamen Decl.

Plaintiffs cannot create evidence from the absence of evidence.

Plaintiffs also claim that PA employee Abdel Karim Aweis planned the bombing. Opp.

at 9. Plaintiffs rely principally on an Israeli Military Court conviction (Pls. Tr. Ex. 377), which

is inadmissible. *See* Mot. at 32-36. In any event, Plaintiffs do not identify any admissible

evidence that Aweis acted within the scope of employment with the PA, and the conviction does

not so indicate. *See* Pls. Tr. Ex. 377. In fact, the conviction describes Aweis acting "to avenge

the death of [his] brother." *Id.* at 5-6. There is thus no evidence Aweis was acting as a PA

employee or for the benefit of the PA or PLO. Relying on the same inadmissible Israeli Military

Court conviction, Plaintiffs claim Aweis received money from Marwan Barghouti and money

and two grenades from the Secretary General of Fatah in the West Bank. Opp. at 10; Pls. R. 56.1

Stmt. at 43 ¶¶ 195-96. Plaintiffs provide no evidence that either individual is a PA or PLO

employee or that those funds or grenades were a proximate cause of the Bauers' injuries.

### E.    There Is No Admissible Evidence of PA or PLO Involvement in the July 31, 2002 Bombing (the Blutstein, Carter, Coulter and Gritz Plaintiffs).

Plaintiffs allege that Hamas operatives detonated a bomb at Hebrew University on July

31, 2002 and that "Hamas operative Abdullah Barghouti . . . manufactured the bomb and

delivered it to his Hamas co-conspirators." Opp. at 10-11. Plaintiffs seek to impose liability on

the PA because, nearly a year before the bombing, a PA employee named Abu Ali Tarifi

11

1435616.1

allegedly allowed Abdullah Barghouti to use a mobile phone to make a single phone call, which had no relationship to the Hebrew University bombing. Opp. at 11; Pls. Ex. 1111 (describing a call about a pistol with a silencer and an Uzi); Pls. R. 56.1 Stmt. at 50 ¶ 245-56. Plaintiffs further claim that the PA released Barghouti from prison prior to the Hebrew University bombing. Opp. at 11. Plaintiffs, however, cite no evidence for that claim. *See id.*; Pls. R. 56.1 Stmt. at 50 ¶ 247. Plaintiffs also claim that the PA did not confiscate bomb-making materials when they initially arrested Barghouti. Opp. at 11. Plaintiffs cite Pls. Tr. Ex. 427 (P7:124-25). *See* Pls. R. 56.1 Stmt. at 49 ¶ 239. The cited passage refers only to an "explosive device that was taken by Preventive Security," not to explosive materials left behind. Pls. Tr. Ex. 427 at P7:125. Plaintiffs also cite the Eviatar Report at 10, which in turn cites Pls. Tr. Ex. 428 (P7:131-146), which also does not support Plaintiffs' claim. In any event, both Trial Exhibit 427 and 428 are purportedly custodial statements of Abdullah Barghouti, which are not admissible to establish what the PA did.

Plaintiffs also claim that PA employee Ahmed Barghouti and "senior PLO leader Marwan Barghouti" provided Abdullah Barghouti a safe house and weapons. Opp. at 11; Pls. R. 56.1 Stmt. at 51 ¶ 249. The referenced exhibit, an inadmissible indictment of Ahmed Barghouti, (Pls. Tr. Ex. 357 (P5:202)) indicates only that they provided him lodging in an apartment for several days in late 2001 and a pistol, neither of which is causally related to a bombing that occurred at least seven months later. As this Court has undoubtedly often stated, "An indictment is not evidence." In any event, there is no evidence that Ahmed Barghouti acted within the scope of his employment with the PA or that Marwan Barghouti is a senior PLO leader or acted within the scope of any employment with the PLO. *See* Pls. R. 56.1 Stmt. at 9 ¶¶ 39-44.

1435616.1

**F.    There Is No Admissible Evidence of PA or PLO Involvement in the January 22, 2002 Shooting (the Gould and Waldman Plaintiffs).**

Plaintiffs identify several PA employees they claim were involved in the January 22, 2002 shooting.  Opp. at 7.  Plaintiffs rely on inadmissible Israeli Military Court convictions and other hearsay to try to establish their role in the shooting.  *See* Pls. R. 56.1 Stmt. at 31-37 ¶¶ 120-157.[4]  But even assuming that Plaintiffs could establish a triable issue of fact that PA employees were involved in the shooting, the PA is not liable unless Plaintiffs can establish, among other things, that the employees were acting within the scope of their employment.  *See* Mot. at 15. Plaintiffs offer no evidence whatsoever to support this essential element of their claim that the PA is liable.  In fact, Plaintiffs repeatedly characterize the shooting as an AAMB operation and the employees as acting as activists in AAMB.  *See, e.g.*, Pls. R. 56.1 Stmt. at 30 ¶ 119 (stating that the AAMB executed the shooting attack); id. at 31 ¶ 120 (describing the perpetrators as "senior members of AAMB"); *id.* at 32 ¶ 121 (describing Nasser Aweis as "commander of AAMB in Nablus and Northern Samaria"); *id.* ¶ 126 (describing Ahmed Barghouti as "head of the AAMB in the Ramallah area").   There is thus no triable issue of fact that the PA is liable under a respondeat superior theory of liability.

---

[4] Plaintiffs claim foreign convictions are "routinely admitted," Opp. at 37, but cite only three published decisions from the last decade, only one of which involved an Israeli military court conviction.  As discussed in Defendants' opening brief, that case (*Strauss*) is wrongly decided.  The cases Plaintiffs cite precluding collateral review of foreign convictions (Opp. at 39) are inapposite.  Plaintiffs claim that "courts of the United States have uniformly found that Israel's courts act fairly and provide due process," *id.* at 38, is not supported by the cases they cite.  In *Demjanjuk v. Petrovsky*, 776 F.2d 571, 583 (6th Cir. 1985), the court simply stated it "will not inquire into the procedures which will apply after [Demjanjuk] is surrendered to Israel."  In *Eain v. Wilkes*, 641 F. 2d 504, 512 n. 9 (7th Cir. 1981), the court declined to take judicial notice of the fact that Israel routinely tortures prisoners.  In *Ahmad v. Wigen*, 726 F. Supp. 389, 416 (E.D.N.Y. 1989), the court allowed extradition to Israel based on finding numerous safeguards not present here, including "petitioner does not fit the profile of the ordinary security suspect against whom the secret police might have reason to exert pressure," the trial would be "held in Israel proper by civilian courts presided over by regular independent judges of the court system," and "Israel has formally provided assurance that petitioner, if extradited, will not be subject to torture or other inhuman and degrading treatment."  *Id.* at 417.

1435616.1

REDACTED - PUBLIC FILED VERSION

In addition to the fact that Plaintiffs did not adequately plead a material support theory of liability as to any of the incidents (Mot. at 18-25), there is an absence of admissible evidence that the PA or PLO provided any material support to the perpetrators that was a proximate cause of Mr. Waldman's or Ms. Gould's injuries.  AAMB was not a designated Foreign Terrorist Organization in January 2002 and 18 U.S.C. § 2339C had not been enacted by that date so Defendants cannot be liable to the Waldmans or Goulds for violating §§ 2339B or 2339C. Plaintiffs have no admissible evidence to support their claim that the PA provided "personnel" to AAMB, and instead rely on the claim that some alleged members of AAMB also happened to be employed by the PA.  Opp. at 22-23.  Plaintiffs also lack admissible evidence for their claim that the PA provided weapons to the AAMB.  *See id.* at 23-24.  They rely principally on an inadmissible Israeli Military Court conviction of Fouad Shubaki, Pls. Tr. Ex. 889, which in turn rests on inadmissible custodial statements purportedly made by Shubaki.  There is absolutely no evidence that the individual who carried out the January 22, 2002 shooting used a weapon provided by the PA or PLO or that any such weapon was provided with the requisite intent to facilitate an act of terrorism.  *See* 18 U.S.C. § 2339A (weapons must be provided "knowing or intending that they are to be used in preparation for, or in carrying out" one of the enumerated predicate criminal acts).

Plaintiffs' claim that Defendants provided funds to AAMB is equally devoid of evidentiary support.  *See* Pls. R. 56.1 Stmt. at 22-24 ¶¶ 83-87.  Other than the inadmissible Shubaki conviction, which in any event does not show funds were provided in connection with any of the attacks at issue, Plaintiffs can identify only a few isolated payments to individuals, some of which post-date the January 22, 2002 shooting at issue.  *See id.* ¶ 84.  Plaintiffs have no admissible evidence to support their claim that these payments actually occurred or that they

1435616.1

REDACTED - PUBLIC FILED VERSION

were a proximate cause of Mr. Waldman's or Ms. Gould's injuries.  Plaintiffs rely on an inadmissible Israel Minister of Foreign Affairs document relaying a report prepared by a Minister of Parliamentary Affairs, Dani Naveh, which itself is based on multiple levels of hearsay.  Pls. Tr. Ex. 539.  Plaintiffs also claim that President Arafat provided a check to Nasser Shawish in "early 2002," and that Shawish "carried out the January 22, 2002 shooting."  Pls. R. 56.1 Stmt. at 23 ¶ 85.  But there is no evidence (admissible or not) that Shawish had anything to do with the January 22, 2002 shooting, let alone that he "carried [it] out."[5]  In any event, Plaintiffs' sole support for the claim regarding the President Arafat payment is a Hebrew language document, whose author is unidentified, which purports to be a memorandum from Shawish's interrogation and does not even purport to quote Shawish.  Pls. Tr. Ex. 1113 at 3.  The unidentified author's summary of what Shawish supposedly said is inadmissible hearsay, and cannot be offered to prove what President Arafat did in any event.  *Williamson*, 512 U.S. 594.

### G.    There Is No Admissible Evidence of PA or PLO Involvement in the January 29, 2004 Bombing (the Goldberg Plaintiffs).

Plaintiffs claim that PA employees also were involved in the January 29, 2004 suicide bombing.  Even assuming *arguendo* Plaintiffs could establish a triable issue of fact to support that claim, Plaintiffs identify no admissible evidence that the PA employees were acting within the scope of their employment.  *See* Opp. at 12; Pls. R. 56.1 Stmt. at 57-65 ¶¶ 299-349.  Therefore, there is no triable issue of fact that the PA (or PLO for that matter) is liable, and Defendants are entitled to summary judgment.

Elsewhere, Plaintiffs argue that Defendants should be liable for the alleged acts of their employees because "Defendants recruited and maintained terrorists in their ranks," "used their

---

[5] Plaintiffs' counsel appears to have confused Nasser Shawish with Nasser Aweis.  *See* Am. Compl. ¶¶ 62, 69-73.

1435616.1

extensive command and control apparatus to direct their employees' terrorist activities," and "funded acts of terrorist by their employees."  Opp. at 19.  Plaintiffs, however, fail to cite *any* evidence to support their claims.   *Id.*  Equally unsupported is their claim that because "scores of terrorists" are on their payroll – presumably a reference to payments to Palestinians imprisoned by the Israeli Military Court system – "terrorism by defendants' employees was commonplace." *Id.*  The PA had 100,000 employees during the relevant time period, DE 497-1 ¶ 40, and Plaintiffs allege (without admissible evidence) that 19 (or .02%) were involved in the attacks at issue, Opp. at 18.  Of those 19, many were not convicted of, or even charged with, involvement in terrorism, including Jibril Rajoub, Abu Talal, and Tawfiq Tirawi.  Others, including Marwan Barghouti, are not PA employees.  Thus, Plaintiffs' claim that terrorism by PA employees was "commonplace" is nothing more than hyperbolic rhetoric designed to inflame.  And although Plaintiffs repeatedly refer to "defendants' employees," Plaintiffs do not identify any PLO employees involved in the attacks at issue.  In any event, it is irrelevant whether a small percentage of employees engaged in illegal activities.  The issue is whether a particular employee was acting within the scope of employment and pursuant to a custom, policy, and practice of the PA.  Here, Plaintiffs have no admissible evidence to establish the threshold requirement that alleged suicide bomber Ali Ja'ara or his alleged co-perpetrators were acting within the scope of their employment.

As with the January 22, 2002 shooting, Plaintiffs claim that the January 29, 2004 bombing was an AAMB operation, *see, e.g.*, Pls. R. 56.1 Stmt. at 57-58, 61 ¶¶ 299, 301, 326, but identify no admissible evidence that would make the PA liable for the alleged bombing.

Plaintiffs seek to impose liability on the PA for actions after the January 29, 2004 suicide bombing, including an alleged PA role at Ali Ja'ara's funeral and support payments to his

1435616.1

family. *Id.* at 61-62 ¶ ¶ 326-32. According to Plaintiffs own trial exhibit, █████████████████████████████████████████████████████████████████████████████████. Pls. Tr. Ex. 22 at 3, 4. (At the time, Israel had a widely criticized punitive home demolition policy, in which the homes of family members of those accused of terrorism would be destroyed). In any event, this alleged post-attack conduct, logically, could not be the proximate cause of the bombing and so cannot form a basis for PA liability.

## H.    There Is No Triable Issue of Fact as to Respondeat Superior Liability.

Plaintiffs claim that Defendants are not entitled to summary judgment because scope of employment is a jury question. Opp. at 17. That is true, however, only if Plaintiffs can present admissible evidence that would allow a reasonable jury to find in their favor. Here, there is a complete absence of evidence that any of the employees acted within the scope of employment. Courts routinely dismiss respondeat superior claims before they reach the jury. *See, e.g. Cruz v. Marchetto*, 2012 U.S. Dist. LEXIS 142662, at *19-20 (S.D.N.Y. Sept. 28, 2012) (dismissing respondeat superior claim on a Rule 12(b)(6) motion); *JG v. Card*, 2009 U.S. Dist. LEXIS 85372 (S.D.N.Y. Sept. 16, 2009) (entering summary judgment in employer's favor); *Garrison v. Toshiba Bus. Solutions (USA)*, Inc., 907 F. Supp. 2d 301, 309 (E.D.N.Y. 2012) (same).

Plaintiffs also claim that they need only establish that the employee's actions were foreseeable. Opp. at 16-17. But mere foreseeability is not enough; the act must be undertaken while on the job and to further the employer's business, not for the employee's own personal motives. *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 428 (E.D.N.Y. 2009) ("whether the assault was reasonably foreseeable is not dispositive"). In *Sclafani*, the district court granted summary judgment for the employer, stating: "If plaintiff's facts are credited, a rational jury

could find that [the employee's] assault was reasonably foreseeable, but a rational jury could not find that the assault was within the scope of [his] employment at PCR.  Although the assault occurred in the PCR parking lot before work, the assault in no way furthered PCR's business.  Instead, it was committed wholly for [the employee's] personal motives." *Id.* at 447.   The cases Plaintiffs cite (Opp. at 16-17) only prove Defendants' point.  In *Riviello v. Waldron*, 47 N.Y.2d 297, 304 (1979), the employee was employed as a cook, bartender, and waiter at a restaurant and, while on the job, injured one of the patrons.  In *Kwon v Yun*, 606, F. Supp. 2d 344, 363 (S.D.N.Y. 2009), the employee was the Chairman of the Board of the employer and made the misrepresentation at issue on company letterhead.  *Almonte v. New York City Hous. Auth.*, 1990 WL 113125, at *3 (S.D.N.Y. July 30, 1990), involved allegations of police brutality where it was undisputed that the police officers were on duty.  In *Bruce v. Port Auth. of N.Y. and N.J.*, 531 F. Supp. 2d 472 (E.D.N.Y. 1998), it was undisputed that the employee was on duty as a toll collector when the assault on a driver trying to pay a toll occurred.  In *Girden v. Sandals, Int'l*, 262 F.3d 195, 205 (2d Cir. 2001), a resort patron was sexually assaulted by a resort employee while he was on duty.  Unlike all of the cases Plaintiffs cite, here, there is no admissible evidence that any of the shootings or bombings were carried out, planned, or directed by PA or PLO employees while on duty.

For the reasons provided in the opening brief, the PA is not subject to respondeat superior liability under the ATA for the unauthorized acts of its employees.  Mot. at 9-18.  In their Opposition, Plaintiffs cannot identify a single case in which a defendant has been subject to respondeat superior liability under the ATA.  *See* Opp. at 15-17.  The Defendants previously addressed the three cases Plaintiffs cite (*Abecassis*, *Gill*, and *Parsons*) in their opening brief.  Mot. at 10-11.  In the opening brief, the PA also argued that assuming, *arguendo*, there is

18

vicarious liability under the ATA, the *Monell* standard should apply.  *Id.* at 11-13.  Plaintiffs'

arguments for distinguishing *Monell* must be rejected.  First, Plaintiffs argue that the *Monell*

exception arose from causation language in 42 U.S.C. § 1983.  Opp. at 20.  But the ATA also has

causation language.  *See, e.g., Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013) (the statute's

"by reason of" language, 18 U.S.C. § 2333(a), requires proximate cause).  Also Plaintiffs claim

that *Monell* arose out of federalism concerns with imposing liability on municipalities.  Opp. at

20.  Plaintiffs ignore that there are comparable international comity concerns with imposing

treble damages on a foreign government, and that the *Monell* standard has been extended to cases

involving foreign governments where federalism concerns are not present.  *See* Mot. at 12-13.

Plaintiffs also ignore another important rationale behind *Monell*, which applies with full force to

the PA, namely protecting the public fisc from enormous liabilities that might result from

mistakes or crimes of public employees.  *Id.* at 13.

Plaintiffs' claim that they have evidence of a PA or PLO custom, policy, or practice of

supporting shooting and bombing attacks on civilians (Opp. at 21) is just that – a claim, without

any evidentiary support.  Plaintiffs state that the evidence of "official sanction by the defendants

is overwhelming" and "includes public incitement to violence by Arafat, Marwan Barghouti, and

other senior PA and PLO leaders."  Opp. at 21.  Plaintiffs, however, cannot identify any

statements of Arafat or senior PA or PLO leaders (and they have no admissible evidence that

Marwan Barghouti falls into such a category) inciting violence against civilians.

## I.   Plaintiffs Lack Admissible Evidence of Proximate Cause and Scienter.

With respect to admissible evidence supporting two additional essential elements of their

ATA claim – proximate cause and scienter – Plaintiffs resort to their refrain that these are

questions for the jury.  Opp. at 27-30.  But they are questions for the jury only if Plaintiffs can, in

opposing the motion for summary judgment, identify admissible evidence that would allow a

reasonable jury to find in their favor.  Plaintiffs have failed to do this.  Plaintiffs contend that a

jury could infer intent from "defendants' repeated statements of support for AAMB, the widely

known terrorist goals of Hamas, and defendants' own records showing their employees'

associations with AAMB."  Opp. at 28.  The second and third categories of evidence – even

assuming it existed in admissible form – does not establish that the PA or PLO acted with the

requisite scienter.  With respect to the Defendants' supposed statements of support for AAMB,

Plaintiffs identify no admissible evidence supporting this claim, instead referring the Court

generally to their Rule 56.1 Statement.  *Id.*  Notably, nowhere in their brief do they identify any

admissible evidence of a statement from a PA or PLO official from the 2000-2004 period

supporting acts of violence against civilians by the AAMB.  With respect to proximate cause,

Plaintiffs claim "the evidence shows that defendants did provide money, weapons, and services

to terrorists and terrorists organizations."  Opp. at 30.  But Plaintiffs provide no citation, and

there is no admissible evidence to support Plaintiffs' claims.

## II.    Defendants Are Entitled to Summary Judgment on the Non-Federal Law Claims.

Plaintiffs' non-federal law claims should be dismissed for the reasons stated in

Defendants' opening brief, Mot. at 43-49, and in Defendants' opposition to Plaintiffs' Motion for

Summary Judgment (DE 523), and because of the absence of admissible evidence to support

their claim of PA and PLO liability.  All claims should be dismissed for lack of personal

jurisdiction because Plaintiffs cannot establish a triable issue of fact that either the PA or PLO is

at home in the United States.

## Conclusion

Defendants are entitled to summary judgment as a matter of law.

REDACTED - PUBLIC FILED VERSION

June 30, 2014                            Respectfully Submitted,


                                          /s/ Laura G. Ferguson
                                        Laura G. Ferguson
                                        Mark J. Rochon
                                        Brian A. Hill
                                        MILLER & CHEVALIER CHARTERED
                                        655 15th Street, NW, Suite 900
                                        Washington D.C. 20005-6701
                                        (202) 626-5800 [tel]
                                        (202) 626-5801 [fax]
                                        lferguson@milchev.com [email]


                                        *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

1435616.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 30th day of June, 2014, a true and genuine copy of the

foregoing was served by email on Plaintiffs' counsel (listed below), and a redacted copy

(pursuant to the protective order) was filed on CM/ECF, which will automatically send

notification and a copy of such filing to the following:

> Robert J. Tolchin, Esq.
> The Berkman Law Office, LLC
> 111 Livingston Street – Suite 1928
> Brooklyn, NY 11201
> (718) 855-3627 (tel.)
> (718) 855-4696 (fax)
> rjt@tolchinlaw.com
>
> Kent A. Yalowitz
> Arnold & Porter, LLP
> 399 Park Avenue
> New York, NY 10022
> (212)-715-1113 (tel.)
> (212)-715-1399 (fax)
> Email: kent.yalowitz@aporter.com
>
> *Counsel for Plaintiffs*
>
> Carmela T. Romeo
> Lucy S. McMillian
> Sarah K. Pildis
> Tal R. Machnes
> Arnold & Porter, LLP
> 399 Park Avenue
> New York, NY 10022
> (212)-715-1000 (tel.)
> (212)-715-1399 (fax)
> Email: carmela.romeo@aporter.com
> lucy.mcmillan@aporter.com
> sara.pildis@aporter.com
> tal.machnes@aporter.com
>
> *Counsel for Certain Plaintiffs*

Philip W Horton
Arnold and Porter
555 12th Street NW
Washington, DC 20004
(202)-942-5787 (tel.)
(202)-942-5999 (fax)
Email: philip.horton@aporter.com

*Counsel for Certain Plaintiffs*


  /s/ Laura G. Ferguson
Laura G. Ferguson