UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>         Plaintiffs,<br><br> vs.<br><br>THE PALESTINE LIBERATION ORGANIZATION, *et al.*,<br><br>         Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## REPLY IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SANCTIONS

  The record leaves no doubt that defendants failed to preserve and collect relevant evidence. They never issued a litigation hold. They improperly redacted information for which they had no colorable claim of privilege. Then they disobeyed this Court's order to produce documents—the Court itself admonished them for doing "precisely what is forbidden in this District: rather than treating the July 26 Order as a directive, [they] regarded it as the beginning of a new conversation in which they apparently feel entitled to advance new legal theories." DE 380. Even after that, the record leaves no doubt that documents are *still* missing.

  Defendants' response is to admit as little as possible and express no remorse. They claim (incredibly) that they "complied with the Court's orders," that they timely produced "everything that could be found," and that the missing documents are "irrelevant" or "inadmissible" anyway. They offer a carefully worded declaration—obviously written by counsel—purporting to explain away their conduct, but they will not even allow the declarant to sit for a deposition. In short, defendants refuse to accept any responsibility for their violation of this Court's orders and have attempted to block all efforts to expose the scope of their misconduct.

## I.     SANCTIONS ARE WARRANTED AGAINST BOTH DEFENDANTS

Defendants have not refuted plaintiffs' showing that sanctions are warranted. Their failure to issue a litigation hold is evidence of their negligence. *Chin v. Port Auth.*, 685 F.3d 135, 162 (2d Cir. 2012). Their improper redactions support a finding of bad faith. *See, e.g.*, *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634, 636-37 (2d Cir. 2012). Indeed, defendants offer no explanation for their improper redaction of documents, which came to light only after the Court ordered the unredacted documents produced. Even a cursory examination shows that the redactions (Yalowitz Dec. Exs. A.16-17) could not possibly have been made under any colorable claim of privilege. Defendants' repeated "representations of full production"—which turned out to be false—"constitute[d] such gross negligence as to rise to intentional misconduct." *See Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 221-22 (S.D.N.Y. 2003). Defendants offer no evidence explaining why their original search, their second search, and even their third search were all incomplete—though those searches were obviously in fact incomplete. Defendants begrudgingly admit that they failed to produce responsive documents that were specifically identified as missing. *See infra* pp. 6-7. A sanction "'is particularly important when, as here, the very material sought to be discovered…will normally be in the possession of a defendant and will frequently be unknown to a plaintiff.'" *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 72 (1988).[1]

Defendants' opposition papers provide yet more evidence of their misconduct. They in-

---

[1] Defendants make the bizarre argument that only the PA should be sanctioned because the GIS is part of the PA. But the PLO sets policy for and controls decision-making within the PA. Moreover, the plaintiffs' requests and this Court's orders were directed to *both* defendants, and the defendants made document productions jointly; thus, a sanction against both is warranted, and well within the Court's authority. *Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 94 (1st Cir. 2010) (rejecting attempt to separate parties against whom sanction was entered where discovery orders were directed against all of them).

clude a declaration signed by General Khaled Abu al-Yaman.  That declaration does not claim that GIS staff members searched *all* GIS field offices, but only "relevant" offices—*i.e.*, only those offices unilaterally (and secretly) chosen by defendants.  Abu al-Yaman Dec. ¶¶ 9, 10.  This admission that an unknown number of GIS field offices were not searched is further evidence supporting sanctions.  The importance of the field offices is illustrated, to take one example, .  Defendants offer no evidence that they searched that field office, ▮▮▮▮  Only defendants know how many other field offices were excluded from their search.

    The Abu al-Yaman declaration also asks the Court to believe the unbelievable:

- ▮▮▮▮  How could the General know that?  Did he memorize the contents of the missing documents?

- ▮▮▮▮  Yet the General does not purport to have been a percipient witness to any such military action and cites not a scintilla of evidence to support this speculation.  In truth, the haphazard pattern of missing documents cannot be squared with the IDF's rigorous system for collecting documents in the field, as detailed in the accompanying declaration of IDF Col. (Ret.) Arieh Spitzen ("Spitzen Dec.") ¶¶ 27-30.

- ▮▮▮▮  In other words, defendants would have the Court believe that the GIS keeps no record of its correspondence with other PA agencies.  (Moreover, the PA was required to retrieve such ▮▮▮▮ from the recipient PA agencies and produce them because they are under its control).

- ▮▮▮▮  Is that how the PA's intelligence service works?  By an oral tradition, like Homeric poetry or folklore?  Of course not.  The GIS is a professional intelligence organization that op-

3

erates like other modern intelligence agencies, owing in part to training and assistance received from other countries.  Spitzen Dec. ¶ 11.

-  Spitzen Dec. ¶¶ 12-16.

The GIS obtains a continuous stream of data generated by its intelligence-gathering activities and, like other modern and professional intelligence services, employs detailed protocols for handling that information.  Spitzen Dec. ¶¶ 19-23.  It is not plausible that in responding to plaintiffs' requests, the GIS—an intelligence organization whose life-blood is information—could not locate all responsive documents after multiple searches, and even now cannot assure the Court with any certainty that all documents have been produced.  Abu al-Yaman Dec. ¶ 12.

Far from giving confidence that the defendants complied with their discovery obligations, defendants' demonstrably false excuses, unfounded assertions and rank speculation smell of prevarication and dissimulation.  Defendants' successful effort to block the General from giving live testimony (rather than lawyer-crafted testimony) does not dispel this impression.

Defendants continue to assert that they were under no obligation to produce documents that plaintiffs did not specifically identify as "missing" from their production.[2]  This "catch-me-if-you-can" argument fundamentally misconceives the process of civil discovery in the United

---

[2] Opp. 18 ("It is inappropriate for Plaintiffs to rely on the asserted absence of this 'Report Source' because Plaintiffs did not include that 'Report Source' on their list of purportedly 'Missing Documents.'"), 15 ("It is somewhat unfair for Plaintiffs to rely on this report for a sanction because Plaintiffs did not even include it in their list of purportedly 'Missing Documents.'"). Plaintiffs have repeatedly told defendants and the Court that their December 2013 list of missing documents was *non-exhaustive* and merely intended to show defendants that their November 2013 production was obviously incomplete.  *See* Yalowitz Dec. Ex. C.2 (letter to B. Hill (Dec. 20, 2013) ("A non-exhaustive list...is attached hereto.")); Mem. 4.

States.  Defendants had an obligation to produce *categories* of documents—not just documents that plaintiffs could identify *specifically*—as defendants surely know.  And defendants' claim that they need not produce documents plaintiffs are unable specifically to identify is worse than just baseless—it is an implicit admission by defendants that their production remains incomplete.

Defendants attempt to excuse their discovery abuses by relying on cases in which courts presumed the good faith of a U.S. federal agency responding to an inquiry under the Freedom of Information Act.[3]  But this is not a FOIA case.  FOIA's requirements are quite different from "the rules of civil discovery."  *Conti v. U.S. Dep't of Homeland Sec.*, 2014 WL 1274517, at *14 (S.D.N.Y. Mar. 24, 2014); *see Stonehill v. IRS*, 558 F.3d 534, 536, 538-40 (D.C. Cir. 2009) (describing "critical differences").  Moreover, defendants are not a U.S. federal agency, and they are not entitled to any presumption available to such agencies under FOIA.  And, even in a FOIA case, an agency's presumption of good faith is overcome where, as here, the search is "patently incomplete."  *Conti*, 2014 WL 1274517, at *13.

## II.   PRECLUSION IS AN APPROPRIATE SANCTION

The Court has "broad discretion in fashioning an appropriate sanction."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).  One obvious remedy is precluding defendants from challenging the reliability and accuracy of their own records.  Mem. 9-10; *see, e.g.*, *In re WRT Energy Secs. Litig.*, 246 F.R.D. 185, 200 (S.D.N.Y. 2007); *Barsoum v. NYC Hous. Auth.*, 202 F.R.D. 396, 401 (S.D.N.Y. 2001).  Preclusion would fit defendants' transgression like a glove.  Defendants failed to produce much of the underlying source material used to create their own intelligence records about the terrorists who perpetrated the crimes in this

---

[3] *Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986); *Conti v. U.S. Dep't of Homeland Sec.*, 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014).

case. Defendants' negligence (or worse) has deprived plaintiffs of the underlying documents necessary to meet defendants' vague suggestions that the source material might be "unreliable."

Defendants do not deny that the Court can order preclusion. Instead, they say that preclusion is unwarranted because plaintiffs have not uncovered direct evidence of spoliation. This is a *non sequitur*. Spoliation is not a prerequisite for preclusion. *See Update Art, Inc.*, 843 F.2d at 69-70 (defendants appropriately precluded from introducing evidence on damages where defendants unreasonably delayed production); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 204 (E.D.N.Y. 2010) (preclusion included in remedies for refusal to produce, without spoliation).[4] Defendants should not be permitted to benefit from the fact that they failed to produce evidence. Allowing them to attack the reliability of their own records would be profoundly unfair given their failure to produce the underlying source material that could rebut defendants' assertions that their own records are unreliable.

### III. ADVERSE INFERENCE INSTRUCTIONS ARE AN APPROPRIATE SANCTION

Adverse inferences are warranted where a court "can only venture guesses with varying degrees of confidence as to what the missing evidence may have revealed." *Kronisch v. United States*, 150 F.3d 112, 126-28 (2d Cir. 1998). "[T]he prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a documents or documents *relevant to substantiating his claim* would have been included among the destroyed

---

[4] *See also Wilson v. Thorn Energy, LLC*, 2010 WL 1712236, at *4 (S.D.N.Y. Mar. 15, 2010) (defendants precluded from offering evidence at trial concerning their financial records, which they failed to produce); *United States v. U.S. Currency in Amount of $34,500.00*, 2003 WL 24298482, at *6 (E.D.N.Y. Dec. 31, 2003) (precluding foreign defendants, who failed to provide adequate discovery responses because of purported difficulties with English and distance from United States, from introducing any evidence at trial in support of affirmative defense); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 1994 WL 419830, at *6-*7 (S.D.N.Y. Aug. 10, 1994) (defendants precluded from introducing evidence on issue of willful infringement because of defendants' conduct over a two-year period to "avoid disclosure of evidence," including documents and interrogatory answers).

files." *Id*. (emphasis added).  Here, plaintiffs merely ask that the jury be told of the transgression and permitted to draw reasonable inferences about the missing documents.

Defendants can no longer deny that they failed to produce documents.  For example, ███

████████████████████████████████████████████

███████████5  ████████████████████████████

████████████████████████████████████

█████████ Defendants admit that ███████████████████

████████████████████████████████████████████

█████████████ Defendants' admissions support adverse inferences related to the January 29, 2004, March 21, 2002, and June 19, 2002 attacks.  *See* Mem. 11-16.

Defendants try to use the declaration signed by Gen. Abu al-Yaman to explain away the obvious gaps.  But defendants' excuses raise more questions than they answer.  Defendants have no convincing explanation for the notable absence of *GIS* documents concerning perpetrators of terror attacks from the PA's own security apparatus.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ They "con-

---

[5] Defendants try to temper their failure to produce the written report by claiming that it "do[es] not contain any substantive information."  Opp. 12.  How do they know?  Did they see the report before destroying it?  ████████████████████████████████████

████████████████████████████████

sist entirely of publicly available court documents and police reports." See Spitzen Dec. ¶ 19(b). Thus, if the Abu al-Yaman declaration is to be believed, the GIS never created a single page of information ████████████████████████████████████████████ even though: (1) Aweis was on the list of wanted terrorists provided to the PA by U.S. mediator General Anthony Zinni (Pls. Tr. Ex. 354); (2) the PA arrested (and then quickly released) Aweis after receiving General Zinni's demand (Pls. Tr. Ex. 377); (3) ████████████████████ ████████████████████████████████████; and (4) Aweis was convicted of violent terrorist acts. This is simply not credible for reasons discussed in paragraph 32 of the Spitzen Declaration. The requested adverse inferences concerning the March 21, 2002 bombing are appropriate. See Mem. 13-15.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████; accord Spitzen Dec. ¶ 34. ████████████████████
████████████████████████████████████████████████
████████████████████████████████ The basis for this argument? The General's professed lack of personal knowledge about the "circumstances" of this particular interrogation. That is not evidence.

Defendants argue against the inference that ████████████████████

███████████████████████████ ███████████████████████████

██████████████████████████[6] But independent evidence indicates that the PA released the terrorists from jail. Shawish himself admitted that ██████████████████████ ████████████████████ Pls. Tr. Exs. 353, 1114. The jury should be told of defendants' misconduct in discovery and permitted to draw an inference in plaintiffs' favor regarding how Hashaika and Shawish got out of jail. *See* Mem. 13-15.

Defendants' explanation for the dearth of GIS documents concerning ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████is similarly suspect. As discussed above, ████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Defendants concede that ████████████████████████████████████████████████████ ████" Opp. 22. ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ Spitzen Dec. ¶¶ 22, 26, 34. This obvious deficiency supports plaintiffs' adverse inference. *See* Mem. 18-20 (1/27/02 attack).

Contrary to defendants' position, it is not necessary to provide detailed evidence showing exactly what was in the missing GIS documents. Rather, "care should be taken not to require too specific a level of proof lest withholding parties profit from their disobedience and innocent par-

---

[6] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Apparently, documents that help defendants are reliable, but documents that hurt them are not.


ties meant to benefit from the adverse inference receive no benefit at all, having been deprived of evidence that may be crucial to their case." *Linde*, 269 F.R.D. at 196 (internal quotation marks omitted, but quoting *Kronisch*, 150 F.3d at 128 and citing 2 Wigmore, *Evidence in Trials at Common Law* § 291, at 228). Here, it is undeniable that there are missing documents, though it is not possible to know with precision their exact substance. The jury is entitled to infer that the missing documents, in the relevant categories, would have been harmful to defendants. As detailed in plaintiffs' original brief, the missing documents suggest that, had defendants effectuated a litigation hold, conducted a proper search and made a complete production of responsive GIS documents, such documents would have provided relevant and inculpatory evidence on particular topics. Mem. 13, 15, 16, 18, 20, 21, 22-23.

## IV.    A MONETARY SANCTION IS ALSO APPROPRIATE

In addition to the evidentiary sanctions that are plainly appropriate here, plaintiffs should be awarded monetary sanctions to punish and deter defendants' conduct, and to make plaintiffs whole for the wasted resources, including (among other things) extensive motion practice, court conferences, and letter-writing that have been required to pursue legitimate discovery in the face of defendants' intransigence. *See, e.g.*, *In re WRT Energy Secs. Litig.*, 246 F.R.D. at 201; *Linde*, 269 F.R.D. at 204-05; *Knox v. PLO*, 229 F.R.D. 65, 70 (S.D.N.Y. 2005) (imposing monetary sanctions on the PA and PLO to compensate plaintiffs for costs and fees incurred in attempting to secure compliance with discovery orders). Even at this late date, defendants express no remorse, claiming to have engaged in "no sanctionable conduct." Opp. 24.

## CONCLUSION

The Court should grant plaintiffs' motion for sanctions.

10

Dated: New York, New York
      June 26, 2014

                    **ARNOLD & PORTER LLP**

                    By: _____
                    Kent A. Yalowitz
                      *KENT.YALOWITZ@APORTER.COM*
                    Philip W. Horton
                      *PHILIP.HORTON@APORTER.COM*
                    Lucy S. McMillan
                      *LUCY.MCMILLAN@APORTER.COM*
                    Ken L. Hashimoto
                      *KEN.HASHIMOTO@APORTER.COM*
                    Carmela T. Romeo
                      *CARMELA.ROMEO@APORTER.COM*
                    Tal R. Machnes
                      *TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York  10022
(212) 715-1000