**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEVER**

ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
(212) 715-1000 [tel]
*Counsel for Plaintiffs*

July 30, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

ARGUMENT .......... 1

I. A SINGLE TRIAL OF ALL FACT ISSUES IN THE CASE IS APPROPRIATE .......... 2

A. The Trial Will Involve Common Issues and Evidence .......... 3

B. A Single Trial Will Not Prejudice the Defendants .......... 6

II. BIFURCATION OF LIABILITY AND DAMAGES IS INAPPROPRIATE .......... 8

A. Bifurcation of Liability and Damages Is Inefficient .......... 9

B. Defendants Will Not Be Prejudiced by a Single Trial of Liability and Damages .......... 10

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Ake v. Gen. Motors Corp.*,
942 F. Supp. 869 (W.D.N.Y. 1996) ....................11

*Aldous v. Honda Co.*,
No. 94 Civ. 1090,
1996 WL 312189 (N.D.N.Y. May 30, 1996) ....................9

*Baergas v. City of New York*,
No. 04 Civ. 2944 (BSJ) (HBP),
2005 WL 2105550 (S.D.N.Y. Sep. 1, 2005) ....................7

*Blyden v. Mancusi*,
186 F.3d 252 (2d Cir. 1999) ....................10

*Buscemi v. Pepsico, Inc.*,
736 F. Supp. 1267 (S.D.N.Y.1990) ....................2

*Dallas v. Goldberg*,
143 F. Supp. 2d 312 (S.D.N.Y. 2001) ....................2

*Deskovic v. City of Peekskill*,
673 F. Supp. 2d 154 (S.D.N.Y. 2009) ....................7

*HCC, Inc. v. R H & M Mach. Co.*,
No. 96 Civ. 4920 (PKL),
1998 WL 849417 (S.D.N.Y. Dec. 4, 1998) ....................9

*In re Blech Secs. Litig.*,
No. 94 Civ. 7696 (RWS),
2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ....................6, 7, 9, 10

*Kerman v. City of New York*,
No. 96 Civ. 7865 (LMM),
1997 WL 666261 (S.D.N.Y. Oct. 24, 1997) ....................10, 11

*Kos Pharm., Inc. v. Barr Labs., Inc.*,
218 F.R.D. 387 (S.D.N.Y. 2003) ....................8

*Laureano v. Goord*,
No. 06 Civ. 7845 (SHS),
2007 WL 2826649 (S.D.N.Y. Aug. 31, 2007) ....................8

*Lewis v. City of New York*,
689 F. Supp. 2d 417 (E.D.N.Y. 2010) ....................11

*Lewis v. Triborough Bridge and Tunnel Auth.*,
No. 97 Civ. 0607 (PKL),
2000 WL 423517 (S.D.N.Y. Apr. 19, 2000)....7

*Marisol A. ex rel. Forbes v. Giuliani*,
929 F. Supp. 662 (S.D.N.Y.1996) ....1

*McGrath v. Nassau Health Care Corp.*,
217 F. Supp. 2d 319 (E.D.N.Y. 2002) ....4

*Monaghan v. SZS 33 Assocs., L.P.*,
827 F. Supp. 233 (S.D.N.Y. 1993) ....1, 2, 6, 10

*Monell v. Dep't of Social Servs. of N.Y.*,
436 U.S. 658 (1978)....4

*Reading Indus. v. Kennecott Copper Corp.*,
61 F.R.D. 662 (S.D.N.Y. 1974) ....2

*Real v. Bunn-O-Matic Corp*,
195 F.R.D. 618 (N.D. Ill. 2000)....8, 9

*Ricciuti v. NYC Transit Auth.*,
941 F.2d 119 (2d Cir. 1991)....3, 4

*Santiago v. Campisi*,
91 F. Supp. 2d 665 (S.D.N.Y. 2000)....4

*Sorlucco v. NYC Police Dep't*,
971 F.2d 864 (2d Cir. 1992)....4

*State of N.Y. v. Hendrickson Bros., Inc.*,
840 F.2d 1065 (2d Cir. 1988)....1

*Streeter v. Joint Indus. Bd. of the Elec. Indus.*,
767 F. Supp. 520 (S.D.N.Y. 1991) ....8

*Svege v. Mercedes-Benz Credit Corp.*,
329 F. Supp. 2d 283 (D. Conn. 2004)....11

*TBC Consoles, Inc. v. Forecast Consoles, Inc.*,
No. 05 Civ. 2756 (KMW) (AJP),
2008 WL 3919197 (S.D.N.Y. Aug. 22, 2008)....8

*Thrower v. Pozzi*,
No. 99 Civ. 5871 (GBD),
2002 WL 91612 (S.D.N.Y. Jan. 24, 2002) ....2

*Vichare v. AMBAC Inc.*,
106 F.3d 457 (2d Cir. 1996)....8

*Zofcin v. Dean*,
144 F.R.D. 203 (S.D.N.Y. 1992) ....10

**STATUTES, RULES AND OTHER AUTHORITIES:**

18 U.S.C. § 2333(a) ....9

Fed. R. Civ. P. 42(b) ....1, 2, 6, 8

Fed. R. Crim. P. 14 ....2, 6

9A Wright & Miller,
*Federal Practice & Procedure* § 2388 (3d ed. 2008)....1, 9

Defendants ask the Court to transform this case into *seven* distinct trials, each one bifurcated into separate liability and damages phases. This would be the height of inefficiency, given the extensive common evidence. If defendants had their way, multiple juries would hear the same witnesses, read the same documents, and decide the same issues of fact concerning liability—seven times. Defendants point to no legitimate concern of prejudice requiring such an extraordinary burden. To the contrary, the actual purpose of the motion appears not to be avoidance of prejudice for the defendants but creation of prejudice to the plaintiffs by dramatically increasing the cost and burden of this litigation. Granting defendants' motion would merely delay their day of reckoning and increase the burden on the Court, the dozens of jurors who would be required to hear the case, and the plaintiffs.

**ARGUMENT**

Severance is a "procedural device to be employed only in exceptional circumstances." *Marisol A. ex rel. Forbes v. Giuliani*, 929 F. Supp. 662, 693 (S.D.N.Y.1996); *see Monaghan v. SZS 33 Assocs., L.P.*, 827 F. Supp. 233, 246 (S.D.N.Y. 1993) ("[B]ifurcation, even in personal injury actions, is reserved for truly extraordinary situations of *undue* prejudice.") (emphasis in original). Whether circumstances are sufficiently exceptional to warrant bifurcation is a question "committed to the sound discretion of the trial court." *E.g.*, *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082-83 (2d Cir. 1988).

The primary interest under Federal Rule of Civil Procedure 42(b) is "efficient judicial administration . . . rather than the wishes of the parties." 9A Wright & Miller, *Federal Practice & Procedure* § 2388, at 92 (3d ed. 2008). Therefore, the "piecemeal trial of . . . the same issue in severed claims is not to be the usual course," *id.*, and the party moving for severance bears a heavy burden of showing that separate trials are "necessary to prevent prejudice or confusion,

and to serve the ends of justice." *Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1271-72 (S.D.N.Y.1990) (citing Wright & Miller).

In deciding whether to apply Rule 42(b) to sever a claim, courts consider several factors, including: (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted. *Thrower v. Pozzi*, No. 99 Civ. 5871 (GBD), 2002 WL 91612, at *6 (S.D.N.Y. Jan. 24, 2002) (citing *Reading Indus. v. Kennecott Copper Corp.*, 61 F.R.D. 662, 664 (S.D.N.Y. 1974)); *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (same).

Defendants say nothing about these factors. Rather, they focus almost exclusively on allegations of prejudice, relying on cases concerning joinder under Criminal Procedure 14(a). Civil Rule 42(b) is different from Criminal Rule 14(a). The Civil Rule expressly seeks to promote "convenience" and "to expedite and economize," while the Criminal Rule says nothing about these concerns. Application of the civil standard leaves no doubt that defendants have not met their burden: the issues are not significantly different from one another; the presence of a jury weighs against severance; discovery has been completed; evidence overlaps extensively; and plaintiffs will be prejudiced if severance is granted. In short, defendants have not met their heavy burden of showing that severance is necessary.

## I. A SINGLE TRIAL OF ALL FACT ISSUES IN THE CASE IS APPROPRIATE

In general, separate trials are "inappropriate 'where the issues, witnesses and documentary evidence' central to the claims overlap." *E.g., Monaghan*, 827 F. Supp. at 245.

**A. The Trial Will Involve Common Issues and Evidence**

This case will involve extensive common issues. These include: (1) defendants' state of mind, which will require the jury to evaluate defendants' own statements in publications that they own and control, as well as other common evidence of defendants' state of mind, such as their pattern of rewarding, promoting and glorifying convicted and other known terrorists; (2) defendants' apparent intent to coerce or intimidate a civilian population or influence the policy of a government by coercion or intimidation, again shown by defendants' own statements and pattern of conduct; (3) *respondeat superior*, which will require the jury to evaluate the foreseeability of defendants' employees' terrorism, based on common evidence such as defendants' pattern of inciting, promoting, facilitating, and rewarding their employees' acts of terrorism, of recruiting and maintaining known terrorists in their ranks, and of using their extensive command and control apparatus to direct and finance their employees' terrorist activities; (4) ratification, which will again require the jury to evaluate evidence of defendants' knowledge of the circumstances of the terror campaign by their own employees; (5) intent with regard to material support, which will require common evidence of the terrorist activities of Al Aqsa Martyrs' Brigades ("AAMB"); (6) the relationships among the PA, PLO, Fatah and AAMB; (7) principal-agent relationship of the PLO and the PA; and (8) material support of the AAMB.

Far from confusing the jury or unfairly prejudicing defendants, the inculpatory evidence concerning defendants' involvement in each of the seven attacks is highly relevant evidence of defendants' vicarious liability for the other attacks. *See, e.g., Ricciuti v. NYC Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (finding that proof of official policy to establish *respondeat superior* liability includes "circumstantial . . . evidence that [defendant] had notice of but repeatedly failed to make any meaningful investigation into charges").

The evidence of all seven attacks is also relevant to prove that defendants ratified each of the attacks—by publicly implementing a policy of making payments to the families of terrorists who carried out the attacks, sponsoring official state funeral ceremonies for suicide bombers, paying and promoting convicted terrorists, and using their own media outlets to distribute articles and broadcast television shows glorifying the acts of convicted terrorists. The evidence of the seven attacks also tends to show that defendants should have foreseen that their employees would believe it was within the scope of their authority to commit terrorist attacks. *Id*.; *see McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 334 (E.D.N.Y. 2002) (previously reported incidents of harassment by perpetrator of assault rendered eventual sexual assault foreseeable).

Ironically, defendants demand that the Court impose a *Monell* standard of proof—which requires evidence of a custom, policy or practice—while claiming "prejudice" from evidence required to meet that standard. It is well-established that "[a] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti*, 941 F.2d at 123; *see also Sorlucco v. NYC Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees."); *Santiago v. Campisi*, 91 F. Supp. 2d 665, 675-76 (S.D.N.Y. 2000) ("A single incident of unconstitutional activity is insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal liability."). The court should not countenance defendants' hold-and-hit tactics.

Severing the case into seven trials would require the parties to present—and separate juries to consider—the same evidence and witnesses over and over. Both sides' liability experts (of whom there are many) offer testimony concerning multiple attacks. Defendants would have

plaintiffs' expert witnesses travel thousands of miles to testify seven times concerning a broad range of issues that are common to all of the attacks—including, *inter alia*:

- the identities of key players and departments within the defendants' organizations (Eviatar, Levitt, Shrenzel);
- defendants' control over their security forces (Eviatar, Shrenzel);
- the close relationships between the defendants and designated terrorist organizations (Eviatar, Levitt, Shrenzel);
- the operation and procedures of Israeli military courts (Kaufman);
- defendants' incitement of violence through official statements and PA/PLO-owned media channels (Karsh, Marcus, Shrenzel);
- defendants' ownership and control of certain media outlets (Marcus);
- defendants' knowledge of the harm to Americans arising from the Al Aqsa Intifada (Addicott);
- defendants' long history of support for terrorism (Karsh); and
- damages (Friedman, Soudry, Strous, Weinstein).

Defendants' experts, too, all offer opinions about all the attacks—with only one exception (Wells). Each jury would have to hear from them, too.

Similarly, the exact same exhibits and deposition testimony would also be presented seven times to establish, *inter alia*:

- the flow of money and weapons from defendants to terrorists and terrorist organizations in order to perpetrate the attacks, *see, e.g.*, Pls. 56.1 Stmt. ¶¶ 28-49, 72-79, 83-90;
- defendants' incitement through publications they authored, edited and distrib-

uted to their security and police forces, *see*, *e.g.*, Pls. 56.1 Stmt. ¶¶ 56, 58;

- defendants' inflammatory broadcasts on the television station they controlled, *see*, *e.g.*, Pls. 56.1 Stmt. ¶¶ 57, 59;
- the steady drumbeat of incitement and hate speech from senior PA and PLO officials, *see*, *e.g.*, Pls. 56.1 Stmt. ¶¶ 50-63; and
- the alter-ego and agency status of the PLO/PA/Fatah/AAMB, *see, e.g.*, Pls. 56.1 Stmt. ¶¶ 28-43.

Defendants argue that the evidence in this case will confuse the jurors, because a number of the perpetrators of the seven attacks have similar-sounding Arabic names. Defs. Mot. at 6-7. But the individual perpetrators of the attacks are not on trial here. Two defendants are. To be sure, there is a significant learning curve with regard to the defendants' conduct and employees. But that learning curve counsels in favor of a single trial, ample demonstrative aids and a single jury, to minimize burden on the Court and the jurors.

Finally, defendants assert that the Court should sever the trial to the cure the "confusion" caused by the fact that their "favorability" rating in the United States is 15%. Def. Mot. at 9. A poor "favorability" rating of one defendant may be of concern to a co-defendant worried about guilt by association, but the two defendants here do not seek separate trials from each other.

**B. <u>A Single Trial Will Not Prejudice the Defendants</u>**

Severance under Rule 42(b) "is reserved for truly extraordinary situations of *undue* prejudice." *Monaghan*, 827 F. Supp. at 246 (emphasis in original). Defendants cite two cases applying the "prejudice" standard found in Criminal Rule 14, but both cases hurt defendants on the question of prejudice. In *Blech*, the court denied severance because, as here, there were only two defendants: "'When many defendants are tried together in a complex case and they have signifi-

cantly different levels of culpability, the risk of prejudice is heightened.' In the present case, jury confusion is less likely since there are only two active defendants." *In re Blech Secs. Litig.*, No. 94 Civ. 7696 (RWS), 2003 WL 1610775, at *14 (S.D.N.Y. Mar. 26, 2003). In *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009), the court severed one defendant because his alleged misconduct was completely unrelated to that of the other defendants—a concern not present here. There, the plaintiff had been convicted of rape and murder and served 16 years in prison before he was exonerated and his indictment was dismissed on grounds of actual innocence. *Id.* at 157-59. He sued the police and prosecutors who jailed him, alleging misconduct including coercive interrogation, hiding exculpatory evidence and offering false testimony. *Id.* The Court severed the case from the plaintiff's claims against a corrections officer who allegedly mistreated the plaintiff 14 years after the conviction. *Id.* at 163, 171.

In contrast, defendants here do not argue that one defendant's conduct is so unrelated to the conduct of the other that unfair prejudice may arise. Rather, they speculate that the jury may be confused by the number of perpetrators and attacks. Mot. at 5-7. But where, as here, different incidents are unified by a defendant's common plan and practice, courts consistently refuse to bifurcate, recognizing the efficiency of trying linked incidents together. *See, e.g.*, *Baergas v. City of New York*, No. 04 Civ. 2944 (BSJ) (HBP), 2005 WL 2105550, at *6 (S.D.N.Y. Sep. 1, 2005) (denying severance where plaintiff's employment discrimination and civil rights claims against former employer and NYPD were "legally intertwined" and depended on a common showing of animus, and would not confuse the jury); *Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97 Civ. 0607 (PKL), 2000 WL 423517, at *4 (S.D.N.Y. Apr. 19, 2000) (denying severance given substantial evidentiary overlap about defendants' harassment complaint practices and procedures, even though plaintiffs' harassment claims required different witnesses to testify

about underlying incidents); *Streeter v. Joint Indus. Bd. of the Elec. Indus.*, 767 F. Supp. 520, 524, 529 (S.D.N.Y. 1991) (denying severance because multiple plaintiffs' discrimination claims "[arose] out of a series of alleged discriminatory terminations" even though "incidents complained of occurred at several different work sites and involved several different employers"); *see also Laureano v. Goord*, No. 06 Civ. 7845 (SHS), 2007 WL 2826649, at *9 (S.D.N.Y. Aug. 31, 2007) (recommending denial of motion to sever claims on behalf of two deceased inmates alleging separate incidents of deliberate indifference to inmates' medical needs).

## II. BIFURCATION OF LIABILITY AND DAMAGES IS INAPPROPRIATE

A district court properly exercises discretion to deny bifurcation where issues of liability and damages are intertwined. *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466-67 (2d Cir. 1996).

To be sure, "[b]ifurcation may be appropriate where the efficiency and convenience to be gained by avoiding trial of damages outweigh the inefficiency, inconvenience, and prejudice that would result if litigating liability does not obviate the need to try damages," but "[i]n most cases bifurcation works against Rule 42(b) values by adding … pretrial disputes, and motions; requiring empanelment of a second jury or extending a single jury's duty; and repeating some witnesses' depositions and testimony." *TBC Consoles, Inc. v. Forecast Consoles, Inc.*, No. 05 Civ. 2756 (KMW) (AJP), 2008 WL 3919197, at *2 (S.D.N.Y. Aug. 22, 2008) (following *Kos Pharm., Inc. v. Barr Labs., Inc.*, 218 F.R.D. 387, 390-91 (S.D.N.Y. 2003))

"The piecemeal trial of separate issues in a single lawsuit is not to be the usual course [and] courts should not order separate trials unless such a disposition is clearly necessary," because it undercuts "the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real v. Bunn-O-Matic Corp*, 195 F.R.D. 618, 620 (N.D. Ill. 2000). In evaluating alleged prejudice, "[t]he Court must balance two types of compet-

ing prejudice: first, prejudice that may arise because of potential confusion of a jury on complicated issues if bifurcation is denied; second, prejudice caused by the considerable delay that will result if separate trials and discovery is ordered." *Id.* at 621.

Here, bifurcation of liability and damages will be enormously inefficient and inconvenient for the parties, and defendants have not identified any prejudice requiring bifurcation.

### A. Bifurcation of Liability and Damages Is Inefficient

Defendants argue that bifurcating liability and damages is efficient because if no liability is found as to certain plaintiffs, no evidence on damages will be needed. Defs. Mem at 9-11. Courts regularly reject this argument as grounds for bifurcation because it is founded only upon speculation regarding the outcome at trial, and because it is true of *any* trial involving damages. *See, e.g.*, Wright & Miller, § 2388, at 100 ("[I]f any saving in time and expense is wholly speculative, it is likely that a separate trial on that issue will be denied") (citing cases); *Blech*, 2003 WL 1610775, at *15 (bifurcation of liability and damages not appropriate given evidentiary overlap, including two expert witnesses who would testify at both stages); *HCC, Inc. v. R H & M Mach. Co.*, No. 96 Civ. 4920 (PKL), 1998 WL 849417, at *2 (S.D.N.Y. Dec. 4, 1998) (rejecting defendant's efficiency argument as speculative and denying bifurcation); *Aldous v. Honda Co.*, No. 94 Civ. 1090, 1996 WL 312189, at *2 (N.D.N.Y. May 30, 1996) (refusing to bifurcate in part because "defendants' projected savings are by no means guaranteed" and noting that reliance on jury to "carry-over" witness testimony from liability to damages phase could deny plaintiff opportunity to litigate both issues fully).

Bifurcation of liability and damages in this case will actually *create* enormous inefficiency. Plaintiffs must offer evidence of their injuries to prove liability, since injury is an element of plaintiffs' ATA claims. 18 U.S.C. § 2333(a). Thus, if the issue of damages is severed from lia-

bility, the plaintiffs in this case—most of whom live out of state and many of whom live overseas—will be required to testify once as to liability and then return to court in New York for additional testimony on damages. The same is true of the medical experts who will testify about the plaintiffs' injuries.

Moreover, because the issues are intertwined, bifurcation places additional burden on the jurors, whose service will be extended so as to prevent a Seventh Amendment violation that would occur if a second jury were permitted to reexamine the first jury's decisions. *See Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999).

**B. <u>Defendants Will Not Be Prejudiced by a Single Trial of Liability and Damages</u>**

Defendants' claim that they will be prejudiced by the presentation of plaintiffs' evidence of damages during the liability phase of trial is spurious. The fact that damages evidence may include evidence of egregious conduct and severe physical injuries does not work an "undue prejudice" that warrants bifurcation of liability and damages. *Monaghan*, 827 F. Supp. at 246 ("There is no exception to the presumption in favor of one trial for personal injury actions involving violent crimes, and the Court declines to take a substantial step in that direction").[1] Instead, courts typically rely on jury instructions, where necessary, to eliminate any potential prejudice from the presentation of evidence on damages during the liability phase of a trial. *See, e.g.*, *Blech*, 2003 WL 1610775, at *16 ("[A] single jury, with appropriate guidance from the Court, will be able to differentiate the issues of liability and damages"); *Kerman v. City of New*

[1] Defendants rely on *Zofcin v. Dean* for the proposition that bifurcation is nevertheless appropriate when the plaintiffs suffered extreme pain. 144 F.R.D. 203, 205-06 (S.D.N.Y. 1992). However, in that case, the court bifurcated liability from damages subject to a bevy of limitations, including stipulations as to the victims' injuries and that some evidence of physical injury might be admitted during the liability phase. *Id.* Defendants have proposed no stipulations here.

*York*, No. 96 Civ. 7865 (LMM), 1997 WL 666261, at *5 (S.D.N.Y. Oct. 24, 1997) (prejudice "normally dealt with through an appropriate charge and curative instructions").

Moreover, given that injury is an element of the ATA claim, there is no guarantee that bifurcation "will eliminate or even substantially reduce the potential prejudice that Defendants fear." *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 284-85 (D. Conn. 2004) ("[W]hether the Court bifurcates the issues or not . . . , [g]raphic photos of the . . . destroyed vehicle, which are needed to illustrate testimony regarding liability, will make it abundantly clear to the jurors that the accident was catastrophic and that any injuries sustained would have been substantial."); *see also, e.g.*, *Lewis v. City of New York*, 689 F. Supp. 2d 417, 429 (E.D.N.Y. 2010) ("bifurcation would not have eliminated or substantially reduced the purported prejudice" in excessive force case because jury would infer that plaintiff was severely injured); *Ake v. Gen. Motors Corp.*, 942 F. Supp. 869, 877 (W.D.N.Y. 1996) (refusing to bifurcate because sympathy might exist even if bifurcation were granted and any danger of prejudice could be minimized through jury instructions). As noted, a bifurcated liability phase would involve at least some evidence of the underlying acts of terrorism and the resultant injuries. It will likely be clear to any jury that injuries and deaths such as those sustained in these attacks were sudden, violent, and gruesome.

**CONCLUSION**

Defendants' motion to sever cannot be taken seriously. It appears to be of a piece with defendants' general stratagem of unreasonably and vexatiously multiplying the proceedings.

The motion should be denied, and a single trial of all issues should proceed.

Dated: New York, New York
July 30, 2014

ARNOLD & PORTER LLP

By:____________________________
Kent A. Yalowitz
*KENT.YALOWITZ@APORTER.COM*
Philip W. Horton
*PHILIP.HORTON@APORTER.COM*
Sara K. Pildis
*SARA.PILDIS@APORTER.COM*
Ken L. Hashimoto
*KEN.HASHIMOTO@APORTER.COM*
Carmela T. Romeo
*CARMELA.ROMEO@APORTER.COM*
Tal R. Machnes
*TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York 10022
(212) 715-1000