UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

            Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

            Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## REPLY IN SUPPORT OF
## PLAINTIFFS' MOTION FOR AN ANONYMOUS JURY

Defendants would have this Court believe that an anonymous jury may not be empanelled unless the Court finds that the defendants have obstructed justice. *E.g.*, Def. Mem. at 5 ("Defendants have never obstructed justice and thus the Court must deny Plaintiffs' motion"); at 6 ("the cases Plaintiffs cite . . . all involve evidence of obstruction of justice); *id.* ("Because that factor is so 'crucial,' the Court should deny Plaintiffs' motion without even considering any of the other factors"). Defendants' claim is patently wrong.

Two recent Second Circuit decisions show that empanelling an anonymous jury is well within this Court's discretion absent findings of witness tampering or obstruction of justice.

In *United States v. Stewart*, 590 F.3d 93, 125 (2d Cir. 2009), the Circuit affirmed the anonymous jury empanelled by another member of this Court in the case of Lynn Stewart. *United States v. Sattar*, No. 02 CR. 395 (JGK), DE 367, at 5 (S.D.N.Y. Apr. 30, 2004) (copy enclosed). The District Court first held that "[t]he serious and violent nature of the conduct charged—including allegations of a conspiracy to kill and kidnap persons in a foreign country, allegations of providing and concealing material support to the conspiracy to kill and kidnap, and

allegations of solicitation of crimes of violence—would give a juror a more than reasonable basis to fear for his or her safety." Slip op. 3. The District Court then went on to point out that Stewart was charged with making false statements to the U.S. Attorney that she would abide by administrative restrictions imposed on her client, a convicted terrorist, and with passing messages to and from her client concerning violence in a foreign country. The District Court held: "The dangerous nature of this alleged conduct by the defendants provides further strong reason to believe the jury needs protection, because it strongly suggests the defendants' continuing willingness to interfere with the ordered procedures of law enforcement and the judicial process, and because it would give a juror a reasonable basis to be concerned about his or her privacy and safety." Slip op. 5-6. Finally, the District Court pointed to the publicity that the case had attracted and "is likely to attract" as "another strong reason to believe the jury needs protection." Slip op. 6.

Thus, in *Stewart*, the defendants did not engage in witness tampering, violence against jurors, or bribery. Instead, the strong reasons for jury protection involved the fact that the defendants provided material support to a known terrorist—their client—by violating administrative restrictions imposed by the Federal Bureau of Prisons.

The Second Circuit affirmed. *United States v. Stewart*, 590 F.3d 93, 99 (2d Cir. 2009). The Circuit made no suggestion that a single factor was dispositive. To the contrary, it evaluated the *entirety* of the factual situation, *including* "(a) the charges against the defendants, which included a terrorist conspiracy to murder, and Stewart's and Yousry's alleged provision of material support to that conspiracy; (b) the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety; (c) the fact that the charges against Stewart and Yousry were in significant part about their alleged corruption of the

judicial process; (d) the widespread pretrial publicity about the case; and (e) the extensiveness of the voir dire administered to the jury by the court," in order to conclude that the District Court did not abuse its discretion. *Id.*

In *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013), the Second Circuit made it crystal clear that there is not one dispositive factor. There, the defendant disputed allegations by two jailhouse informants that he had threatened to harm potential witnesses. The Second Circuit affirmed the District Court's decision to empanel an anonymous jury without resolving the factual dispute, holding that the serious terrorism charges and media coverage of the case "were sufficient *independent* grounds for empanelling an anonymous jury," separate and apart from "the defendant's alleged interference with the case." 718 F.3d at 121. Defendants are therefore simply wrong when they suggest that witness tampering was the basis for the Second Circuit's decision. Defs. Opp. at 6.

Defendants rely primarily on the recent decision against empanelling an anonymous jury in *United States v. Mostafa*, No. 04 CR. 356 (KBF), 2014 WL 963183, at *1 (S.D.N.Y. Mar. 12, 2014). In *Mostafa*, the court said that "This case presents a fact pattern that has only two of the elements the Second Circuit requires: serious charges and significant media attention." *Id.* at 3. In other words, the *Mostafa* court appears to have misread the Second Circuit's standard. Surprisingly, the court in *Mostafa* did not cite the Second Circuit's decision in *Kadir*. To the extent *Mostafa* holds that all three factors set forth in the case law are "require[d]," it appears to be inconsistent with *Kadir*, which held quite clearly that the two factors present in *Mostafa* "were sufficient *independent* grounds for empanelling an anonymous jury." 718 F.3d at 121.

In sum, this Court should reject defendants' demand that it give singular focus to witness and jury tampering, and should instead consider: (1) whether the charges against the defendants

3

are serious; (2) whether there is a substantial threat of corruption to the judicial process; and (3) whether considerable media coverage of the trial is anticipated. *E.g.*, *Kadir*, 718 F.3d at 120; *United States v. Real Prop. Known as 77 E. 3rd Street*, 849 F. Supp. 876 (S.D.N.Y. 1994) (Sotomayor, J.).

I.      **AN ANONYMOUS JURY IS WARRANTED HERE**

There can be no question that threat of potential corruption of the judicial process may arise where the seriousness of the charges generates in the jury a fear of retaliation so that the jury cannot return a fair or impartial verdict. *E.g.*, *Kadir*, 718 F.3d at 120 ("The district court reasonably concluded that the jurors would be fearful if their identities were revealed to these defendants."); *United States v. Thomas*, 757 F.2d 1359, 1364 (2d Cir. 1985) ("[E]ven a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict").

An anonymous jury is also supported by the seriousness of the crimes at issue in this case. Defendants characterize this factor as "dangerousness of defendant." Defs. Mot. at 8 (citing two organized crime cases). "Dangerous of defendant" is one way courts have analyzed the "seriousness" factor, but it is not the only way. In terrorism cases, courts consider "the serious and violent nature of the crimes charged," without specific evaluation of the character of the defendant. *Kadir*, 718 F.3d at 120; *Stewart*, 590 F.3d at 125. In *Stewart*, the defendant was a 65-year old woman who had practiced law in this Court for many years. No one argued that she presented an imminent danger of violence directed at jurors.

The nature of the crimes at issue may alone warrant empanelling an anonymous jury. *E.g.*, *United States v. Spicer*, 10 CR. 657 (SJ) (RML), 2013 WL 5278338, at *2 (E.D.N.Y. Sept. 18, 2013) ("As stated previously in this district, these types of charges alone warrant an anonymous jury because they 'are of the utmost seriousness, indeed as serious as any charge can

4

be, and demonstrate both the extreme dangerousness of the defendant and willingness to obstruct justice.'") (quoting *United States v. Wilson*, 493 F. Supp. 2d 397, 399 (E.D.N.Y.2006) (capital murder case)). The charges and evidence in this case are serious indeed. They involve gruesome, violent crimes against civilians. Pls. Mot. at 1-4. It is therefore well within the Court's discretion to find a "reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety." *Stewart*, 590 F.3d at 125. And, it is of no consequence that defendants are primarily located abroad. *See Kadir*, 718 F.3d at 120 (affirming anonymous jury over defendants' objection that "anonymous jury was inappropriate because he could not have carried out the plot and his co-conspirators were all outside the United States").

Defendants' discussion of the final factor—potential for extensive media coverage during trial—is unconvincing. Where a case involves "[i]ssues that inflame and excite public opinion," courts can reasonably expect it to continue to attract attention, "including potentially intrusive attention, from the press and public." *Sattar*, No. 02 CR. 395 (JGK), DE 367, at 7. Moreover, an anonymous jury may be ordered upon the "'*expectation* of potential publicity'" during trial, even absent pretrial publicity. *See United States v. Herron*, No. 10 CR. 0615 (NGG), 2014 WL 824291, at *4 (E.D.N.Y. Mar. 3, 2014); *Spicer*, 2013 WL 5278338, at *1. The lack of media coverage to date in this case is attributable to defendants' persistent efforts to litigate the case in secret. Pls. Mot. at 8-9. However, once the litigation moves toward trial, it can be expected to attract attention from the press and public—particularly given the extensive press coverage of terrorism, terrorism in Israel, and even the particular facts of this case.[1]

---

[1] To give the Court some sense of it, we searched Westlaw's "Allnews" database for news stories containing the words "Mark Sokolow" and terror! The search returned 84 hits, including stories
Footnote continued on next page

This case involves defendants who have shown a willingness to violate court orders and are accused of organizing and executing violent attacks in order to achieve political goals that—even today—remain highly publicized. It would be well within the Court's discretion to order an anonymous, semi-sequestered jury in this case to address potential juror concerns for their safety and ensure the integrity of the judicial process.

## II. DEFENDANTS WILL NOT BE PREJUDICED BY AN ANONYMOUS JURY

"The law is clear in this Circuit that when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." *United States v. Thai*, 29 F.3d 785, 800-01 (2d Cir. 1994). Defendants suggest that an anonymous jury would "poison the atmosphere of the case." Defs. Mot. at 11 (quoting *Mostafa*). But countless courts in this Circuit have empanelled anonymous juries without fear of "poisoning the atmosphere of the case." *E.g.*, *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) (defendants cannot claim prejudice from anonymous and semi-sequestered jury "so long as the court conducts a careful *voir dire* designed to uncover any bias . . . and takes care to give the jurors a plausible and non-prejudicial reason for not disclosing their identities"); *Kadir*, 718 F.3d at 120-21; *Thai*, 29 F.3d at 800-01. It is sufficient for this Court to instruct prospective jurors that "it is common practice in federal courts to keep the names and identities of jurors anonymous, that this procedure is not unusual, and that it is designed to prevent unwanted curiosity and publicity that could infringe on the jurors' privacy." *Sattar*, No. 02 CR. 395 (JGK), DE 367, at 7 (citing *Thai*, 29 F. 3d at 801; *Paccione*, 949 F.2d at 1193; *Tutino*, 883 F.2d at 1133).

---

Footnote continued from previous page
from CBS News, the New York Post, the Jerusalem Post, the New York Daily News, the Washington Times, and Crain's New York Business.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court order an anonymous and semi-sequestered jury.

Dated: New York, New York
July 30, 2014

ARNOLD & PORTER LLP

By: _____
Kent A. Yalowitz
   *KENT.YALOWITZ@APORTER.COM*
Philip W. Horton
   *PHILIP.HORTON@APORTER.COM*
Sara K. Pildis
   *SARA.PILDIS@APORTER.COM*
Ken L. Hashimoto
   *KEN.HASHIMOTO@APORTER.COM*
Carmela T. Romeo
   *CARMELA.ROMEO@APORTER.COM*
Tal R. Machnes
   *TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York 10022
(212) 715-1000