**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

      – against –                **S1 02 Cr. 395 (JGK)**

**AHMED ABDEL SATTAR,**
      **a/k/a "Abu Omar,"**                   **ORDER**
      **a/k/a "Dr. Ahmed,"**
**LYNNE STEWART, and**
**MOHAMMED YOUSRY,**

                  **Defendants.**

---

**JOHN G. KOELTL, District Judge:**

    The Government moves for an anonymous jury.  The Government
specifically requests an order requiring: (1) that the potential
jurors on the <u>voir dire</u> panel, and the jurors and alternates
eventually selected, not reveal their names, addresses, or
places of employment; (2) that the jurors be kept together
during lunch breaks and other trial recesses by the United
States Marshals Service ("Marshals"); and (3) that the jurors be
transported by the Marshals between the Courthouse and an
undisclosed central location at the beginning and end of each
trial day.  Defendant Yousry opposes the Government's motion,
and defendants Stewart and Sattar join in his opposition papers.
For the reasons explained below, the motion for an anonymous
jury is granted.

I

A

"The law is clear in this Circuit that when genuinely
called for and when properly used, anonymous juries do not
infringe a defendant's constitutional rights." United States v.
Thai, 29 F.3d 785, 800-01 (2d Cir. 1994) (internal quotation
marks omitted). "Anonymity may be warranted when the jury needs
protection, as when the government has demonstrated a
defendant's willingness to tamper with the judicial process, or
when there has been extensive pretrial publicity in cases
involving allegations of violent conduct." Id. at 801 (internal
quotation marks, alterations, and citations omitted). "In
general, the court should not order the empanelling of an
anonymous jury without (a) concluding that there is a strong
reason to believe the jury needs protection, and (b) taking
reasonable precautions to minimize any prejudicial effects on
the defendant and to ensure that his fundamental rights are
protected." United States v. Paccione, 949 F.2d 1183, 1192 (2d
Cir. 1991); United States v. Tutino, 883 F.2d 1125, 1132 (2d
Cir. 1989); United States v. Thomas, 757 F.2d 1359, 1365 (2d
Cir. 1985). In determining whether to grant a motion for an
anonymous jury, the Court must "balance the defendant's interest
in conducting meaningful voir dire and in maintaining the

presumption of innocence, against the jury member's interest in
remaining free from real or threatened violence and the public
interest in having the jury render a fair and impartial
verdict." United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir.
1994). In conducting this analysis, the Court should consider:
"(i) whether defendants are alleged to have engaged in dangerous
and unscrupulous conduct, with particular consideration of
whether such conduct was part of a large-scale organized
criminal enterprise, (ii) whether defendants have engaged in
past attempts to interfere with the judicial process, and (iii)
whether there has been a substantial degree of pretrial
publicity." United States v. Persico, 621 F. Supp. 842, 878
(S.D.N.Y. 1985) (internal quotation marks and citations
omitted), aff'd, 832 F.2d 705 (2d Cir. 1987).

In this case, each of these three considerations provides a
compelling basis to conclude that there is a strong reason to
believe the jury needs protection. The charges in this case are
very serious, and the defendants face substantial prison
sentences if convicted. All three defendants are charged with
conspiracy to defraud the United States by obstructing the
administration and enforcement of the SAMs imposed on Sheikh
Abdel Rahman. Sattar is charged with a conspiracy to kill and
kidnap persons in another country, and with solicitation of

crimes of violence. Stewart and Yousry are charged with conspiring to provide and conceal, and with in fact providing and concealing, material support to the conspiracy to kill and kidnap persons in a foreign country. Stewart is also charged with making false statements to the Government. Sattar is alleged to have solicited other persons to engage in violent terrorist operations worldwide to achieve the objectives of the Islamic Group, an international terrorist group based in Egypt. The Court has already detailed the specific allegations in the superseding Indictment. See generally United States v. Sattar, No. S1 02 Cr. 395, 2004 WL 856320, at *2-*9 (S.D.N.Y. Apr. 20, 2004). The serious and violent nature of the conduct charged-- including allegations of a conspiracy to kill and kidnap persons in a foreign country, allegations of providing and concealing material support to the conspiracy to kill and kidnap, and allegations of solicitation of crimes of violence--would give a juror a more than reasonable basis to fear for his or her safety. See Thai, 29 F.3d at 801; see also Thomas, 757 F.2d at 1364 ("As a practical matter, we cannot expect jurors to 'take their chances' on what might happen to them as a result of a guilty verdict.... Justice requires that when a serious threat to juror safety reasonably is found to exist, precautionary measures must be taken.")

- 4 -

The conduct charged also charges the defendants with having attempted to interfere with the ordered procedures of law enforcement and the judicial process. All three defendants are charged with having conspired to defraud the United States by obstructing the Department of Justice and the Bureau of Prisons in the administration and enforcement of the SAMs imposed on Sheikh Abdel Rahman. Stewart is also charged with having made false statements in the affirmations she submitted to the United States Attorney's Office for the Southern District of New York in May 2000 and May 2001 stating, among other things, that she would abide by the SAMs imposed on Sheikh Abdel Rahman. The thrust of the allegations is that Stewart and Yousry participated in a conspiracy by which messages could be passed to and from Sheikh Abdel Rahman, including a message that Sheikh Abdel Rahman was withdrawing his support for a cease fire. Moreover, Sattar is charged with engaging in violent criminal conduct allegedly motivated, in part, by a desire to secure the release of Sheikh Abdel Rahman from prison. The dangerous nature of this alleged conduct by the defendants provides further strong reason to believe the jury needs protection, because it strongly suggests the defendants' continuing willingness to interfere with the ordered procedures of law enforcement and the judicial process, and because it would give

- 5 -

a juror a reasonable basis to be concerned about his or her privacy and safety.[1]  See Persico, 621 F. Supp. at 878-79 (finding reason to believe that the defendants and their associates "would be willing to use improper and unlawful influence to obstruct the proceedings" where defendants were charged with bribing public officials, including federal prison officials, so that they could, in part, influence the transfer of a federal prisoner and "procure for him other unwarranted benefits").

The publicity that this case has attracted, and is likely to attract as the trial proceeds, also provides another strong reason to believe that the jury needs protection.  Yousry submits that the pretrial publicity in this case has been relatively minimal, and that publicity is unlikely to intensify during the subsequent stages of the trial.  However, there has in fact been a substantial amount of publicity connected with the case, some of it generated by one or more of the defendants. The case has appeared prominently in the New York Times, as well

---

[1] For all of the reasons explained in the text, Yousry's request that the parties be permitted to have access to the jurors' names and other information, even if the jury is anonymous for purposes of the public record, is denied.  The Court's conclusion that there exists a strong reason to believe the jury needs protection is based not just on the likelihood of intense media attention, but also on the alleged conduct of the defendants, including Yousry.  As explained in the text, the alleged conduct would give a juror a reasonable basis to fear for his or safety, a fear that obviously would not be allayed by giving the juror's personal information to the parties even as it was kept out of the public record.

as in numerous other media outlets. (See, e.g., Exs. A-F
attached to Affirmation of Christopher J. Morvillo dated Apr.
23, 2004.)  It is reasonable to anticipate even more public
interest and media attention as the case proceeds.  Indeed,
counsel for defendant Stewart recently contended in a letter to
the Court addressing a separate issue that "a case of this kind"
is "fraught with issues that have inflamed public opinion."
(Letter of Michael E. Tigar to the Court dated Apr. 27, 2004 at
1.)  Issues that inflame and excite public opinion can
reasonably be expected to attract continuing attention,
including potentially intrusive attention, from the press and
public.  The jury must be protected from any anticipated public
attention or publicity that reasonably could be expected to
undermine the jurors' ability to maintain their privacy and
their impartiality.  The likely prospect of heightened media
attention as this case proceeds thus provides a further strong
reason to believe that the jury needs protection.  Such
publicity raises the likely possibility that jurors could become
the subjects of curiosity or harassment, an outcome that would
threaten the jurors' privacy and impartiality.  See United
States v. Wong, 40 F.3d 1347, 1377 (2d Cir. 1994) ("The prospect
of publicity militates in favor of jury anonymity to prevent
exposure of the jurors to intimidation or harassment."); see

- 7 -

also Thai, 29 F.3d at 801; United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991); Paccione, 949 F.2d at 1192-93.

For all of these reasons, the Court finds that there is a more than strong reason to believe the jury needs protection. Therefore, the Government's motion for an anonymous jury is granted. The jurors' names, addresses, and places of employment will not be disclosed to the parties or to the public. The jurors will be kept together by the Marshals during all recesses and lunch breaks, and lunch will be provided for them. Before trial each morning and at the end of each trial day, the jurors will be transported by the Marshals between the Courthouse and a central undisclosed location. These measures are necessary to ensure the protection and impartiality of the jury.

B

The Court of Appeals has cautioned that "[e]mpanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence." Wong, 40 F.3d at 1376. The Court of Appeals has further instructed that "the use of any anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a careful voir dire designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and

nonprejudicial reason for not disclosing their identities."
<u>Aulicino</u>, 44 F.3d at 1116; <u>see also</u> <u>Thai</u>, 29 F. 3d at 801.

There is no doubt that the Court, in cooperation with the
parties, will be able to conduct a searching, careful, and
meaningful <u>voir dire</u> of the prospective jurors.  The Court will
provide prospective jurors with an extensive and detailed jury
questionnaire that will be more than sufficient in providing the
defendants the information to determine any prospective jurors'
biases with respect to the defendants and the issues in the
case.  <u>See</u> <u>Wong</u>, 40 F.3d at 1377; <u>Tutino</u>, 883 F.2d at 1133.  The
detailed questionnaire and the individual <u>voir dire</u> will be more
than sufficient to enable the defendants to exercise their
challenges meaningfully and to obtain a fair and impartial jury.
<u>Id.</u>  There is therefore no basis to conclude that the anonymity
of the jury will infringe on the defendants' rights to conduct
an effective <u>voir dire</u>, to exercise their challenges
meaningfully, and to obtain a fair and impartial jury.

Moreover, as part of an introduction before handing out the
jury questionnaires, the Court will give the prospective jurors
a credible, truthful, and nonprejudicial reason for the jury's
anonymity and for the other protective measures that will be
taken by the Marshals.  The Court will instruct the prospective
jurors, in accord with similar instructions routinely approved

by the Court of Appeals, that it is a common practice in the federal courts to keep the names and identities of jurors anonymous, that this procedure is not unusual, and that it is designed to prevent unwanted curiosity and publicity that could infringe on the jurors' privacy.  See Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1193; Tutino, 883 F.2d at 1133.  The instruction will convey to the jurors that the jury's anonymity is designed to prevent interference by the press and the public. The jurors will be instructed before the case begins and in the final charge to the jury that the presumption of the defendants' innocence continues throughout the trial and throughout the jury's deliberations.  Therefore, there is no basis to conclude that the jury's anonymity will improperly burden the defendants' presumption of innocence.

                              II

     Both Stewart and Yousry move for a severance in the event that the Government's motion for an anonymous jury is granted. The Supreme Court has instructed that a severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993).  There is a preference for joint trials in the

federal system for defendants who are indicted together. Joint trials promote efficiency and promote the interests of justice, by, among other means, avoiding inconsistent verdicts. Id. at 537. Thus, a defendant seeking such a severance "must show that he [will be] so severely prejudiced by the joinder as to [be] denied a fair trial, not that he might have [ ] a better chance for acquittal at a separate trial." United States v. Torres, 901 F.2d 205, 230 (2d Cir. 1990) (citations and internal quotation marks omitted); see also United States v. Sattar, 272 F. Supp. 2d 348, 379-80 (S.D.N.Y. 2003).

There is no basis for a severance for either defendant. As explained above, the Court's conclusion that there is a strong reason to believe that the jury needs protection is based in part on the alleged conduct of Stewart and Yousry, not just that of Sattar. Moreover, the defendants have not shown that a joint trial would compromise a specific trial right. As explained above, the anonymity of the jury will not prevent the defendants from conducting a searching and effective voir dire, exercising their challenges meaningfully, obtaining a fair and impartial jury, and safeguarding the presumption of innocence.

- 11 -

CONCLUSION

The Government's motion for an anonymous jury is granted.
The motions by defendants Stewart and Yousry for a severance are
denied.


**SO ORDERED.**

**Dated:**     **New York, New York**
           **April 29, 2004**
                                    _____
                                       John G. Koeltl
                                **United States District Judge**