# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MARK I. SOKOLOW, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 04cv397 (GBD) (RLE) |
| THE PALESTINE LIBERATION ORGANIZATION, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SEPARATE TRIALS AND FOR BIFURCATION OF THE LIABILITY AND DAMAGES PHASES OF THE TRIAL

Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
Michael J. Satin
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800 (tel)
(202) 626-5801 (fax)

*Counsel for Defendants the Palestinian Authority
and the Palestine Liberation Organization*

August 6, 2014

1442408.1

## ARGUMENT

**I.      SEPARATE TRIALS FOR EACH ATTACK IS WARRANTED UNDER FEDERAL RULE OF CIVIL PROCEDURE 42(b).**

Plaintiffs criticize Defendants because "they focus almost exclusively on allegations of prejudice." DE 571 at 2. But as the district court stated in *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618 (N.D. Ill. 2000), a case cited by Plaintiffs in their brief (*see* DE 571 at 8-9), "[w]hen weighing the competing equities under Rule 42(b), prejudice is the Court's *most important* consideration." *Id.* at 621 (emphasis added). Moreover, of the three conditions that permit bifurcation of a trial – avoidance of prejudice, convenience, and judicial economy – it is well-established "that bifurcation requires the presence of only one of these conditions." *Ricciuti v. New York City Transit Authority*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992). Thus, the Court can and should order separate trials in this case simply because a single trial will cause undue prejudice to Defendants.

Despite the importance of prejudice in analyzing a motion for separate trials under Rule 42(b) and the fact that Defendants "focus almost exclusively" on that issue, Plaintiffs do not address Defendants' argument until the bottom of page six in their eleven-page brief and then devote just two paragraphs to this issue. Most importantly, they do not address Defendants' main argument that Defendants will suffer "spillover prejudice" from the jury's conflation and cumulation of the evidence of the seven attacks. *See* DE 571 at 6-8. Instead, Plaintiffs merely claim that Defendants "speculate that the jury may be confused by the number of perpetrators and attacks." *Id.* at 7. As an initial matter, given that Plaintiffs themselves confused Nasser *Aweis* (allegedly of the January 22, 2002 attack) and Nasser *Shawish* (allegedly of the March 21, 2002 attack) in their Rule 56.1 Response (DE 546 at 23), it is hardly speculation that the jury will become confused. More importantly, it is not the mere fact of confusion that creates undue

prejudice in this case but that such confusion will add to the conflation and cumulation of evidence against Defendants.   Plaintiffs' failure to address *this* argument can mean only one thing: even they recognize that a single trial will cause undue prejudice to Defendants.

Plaintiffs cite a number of cases in their (brief) discussion of Defendants' prejudice.  But none of those cases addresses the kind of prejudice present in this case.  Two of the cases cited by Plaintiffs, *In re Blech Sec. Litig.*, 2003 U.S. Dist. LEXIS 4650 (S.D.N.Y. Mar. 27, 2003), and *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154 (S.D.N.Y. 2009), involve a defendant's motion to sever his trial from that of a co-defendant, not a defendant's motion for separate trials to prevent prejudice from the joinder of multiple incidents.  *See In re Blech Sec. Litig.,* 2003 U.S. Dist. LEXIS 4650, at *30; *Deskovic*, 673 F. Supp. 2d at 159.  To be sure, Defendants cited these cases in their opening brief, but they did so for the limited purpose of showing that "courts in this jurisdiction have looked to criminal cases for guidance in assessing prejudice to defendants from joint trials in civil cases."  DE 561 at 4.  Another case cited by Plaintiffs, *Baergas v. City of New York*, 2005 WL 2105550 (S.D.N.Y. Sept. 1, 2005), is an employment and civil rights case that does not involve allegations that defendants will be prejudiced by the conflation and cumulation of evidence.  *See id.*  Moreover, the court in *Baerges* held that "severance is inappropriate because plaintiff's employment and civil rights claims are *factually* and legally intertwined, and the evidence relevant to each claim will overlap."  *Id.* at *6(emphasis added); *cf.* DE 571 at 7 (quoting *Baergas* to say that the claims were "legally intertwined" but failing to mention that the court stated that the claims are also "factually" intertwined).  Finally, Plaintiffs cite *Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97 Civ. 0607, 2000 WL 423517 (S.D.N.Y. Apr. 19, 2000), which actually involves an allegation of "spillover prejudice" arising from allegedly separate events.  *Id.* at *4.  But the alleged prejudice was from one defendant to another

1442408.1

defendant, and in any event, the court noted that the defendants "do not specify" how the

evidence of one defendant's misconduct might prejudice the other defendant. *Id.* In sum, none

of the cases cited by Plaintiffs involves the kind and degree of spillover prejudice that

Defendants face in this case.[1]

Plaintiffs' main argument against separate trials is that the trial will involve "common

issues and evidence." DE 571 at 3. Plaintiffs allege that eight issues are common to all of the

attacks. *Id.* But four of the issues focus on the Al Aqsa Martyrs' Brigade (AAMB) (*see id.*).

Plaintiffs, however, lack admissible evidence that AAMB carried out the attacks at issue. For

example, Plaintiffs claim that members of "Force 17" carried out the Guetta shooting, although

they lack admissible evidence to support that claim. *See* Plaintiffs' Rule 56.1 Response at ¶¶ 99-

106. Plaintiffs have identified no admissible evidence to support a claim that AAMB carried out

the Guetta shooting. The only evidence of any AAMB role in the Sokolow bombing is an

inadmissible document relaying hearsay that AAMB took credit for the bombing. *See id.* at

¶ 160. Courts have repeatedly found such claims of responsibility inadmissible in Anti-

Terrorism Act cases. *See Gilmore v. Palestinian Interim Self-Government Auth.*, 2014 U.S. Dist.

LEXIS 102093, at *30, *39 (D.D.C. July 28, 2014); *Strauss v. Credit Lyonnais, S.A.*, 925 F.

Supp. 2d 414, 449 (E.D.N.Y. 2013) ("While admitting to a violent attack on innocents typically

is detrimental to a declarant's interests, the interests and motives of terrorists are far from

typical."); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012) ("The motivation

of self-interest in a claim of 'credit' for a terrorist attack on a civilian undermines

trustworthiness. An incentive exists for an individual or an organization to mislead. Under the

---

[1] Plaintiffs cite two other cases in their brief, *Streeter v. Joint Indus. Bd. of Elec. Indus.*, 767 F. Supp. 520 (S.D.N.Y. 1991), and *Laureano v. Goord*, No. 06 Civ. 7845, 2007 WL 2826649 (S.D.N.Y. Aug. 31, 2007), but neither case involves a denial of a motion for separate trials under Rule 42(b).

1442408.1

perverse assumptions of terrorists, an armed attack on civilians reflects glory. Taking 'credit' for such an attack is deemed a benefit, not a detriment, and is not reliable under the circumstances."). Even Plaintiffs concede AAMB did not perpetrate the July 31, 2002 bombing at Hebrew University. *See* Plaintiffs' Rule 56.1 Response at 57-65; *see also* Eviatar Report at 5 ("There is no disputing the fact that Hamas was the party that initiated, planned, and executed the bombing attack in the cafeteria."). Thus, when the inquiry focuses on admissible evidence rather than Plaintiffs' rhetoric, it is evident that the attacks lack commonality.

Moreover, none of the eight issues Plaintiffs identify is unique to these seven attacks. Rather, the issues and evidence purport to establish PA and PLO support for terrorism in general during the Second Intifada. In other words, the issues and evidence that are supposedly common to all seven attacks are just issues and evidence that would connect the PA and the PLO to *any* act of terrorism that occurred during the Second Intifada. But generic claims of support for terrorism cannot give rise to liability, as the Court noted at the July 22 hearing on Defendants' motion for summary judgment. Tr. 7/22/14 at 57:21-58:1 ("The circuit and the Supreme Court have made clear that you can't just say you support terror, you gave money because you knew these guys were terrorist and, therefore, you're liable under the act. They say you have to give money with the reasonable expectation that this is the act that they were going to support; that act of terror.").

Plaintiffs also claim that "[s]evering the case into seven trials would require the parties to present – and separate juries to consider – the same evidence and witnesses over and over." DE 571 at 4. Plaintiffs are wrong. Each attack involves witnesses and documents that are relevant only to that particular attack. The plaintiffs in each attack are different, which means that each plaintiff will testify about only one of the attacks. The alleged perpetrators of each attack are

4

1442408.1

also different, which means that the documentary evidence purporting to show which

perpetrators committed the attack and what, if any, relationship those perpetrators had to the PA

or PLO will be different for each attack.  It is therefore not surprising that Plaintiffs expect a trial

to last ten to twelve weeks if they were to present evidence from seven separate attacks in one

trial.

Plaintiffs are correct that some of Plaintiffs' liability experts in this case "offer testimony

concerning multiple attacks." *Id.*  But none of their liability experts should be permitted to

testify at all.  *See* DE 500.  As this Court stated recently, "This is a fact-based case.  Not an

expert-based case." Tr. 7/22/14 at 112:9-11.  Thus, the Court should not permit Plaintiffs'

experts' testimony to dictate how this case gets tried to a jury.  And Plaintiffs cannot reasonably

complain about the inconvenience of multiple trials to their experts when they selected the venue

for this lawsuit and retained their experts.  Furthermore, Plaintiffs' description of their experts in

their brief makes clear that their expert testimony is cumulative.  Three of Plaintiffs' experts

(Eviatar, Levitt, and Shrenzel) seek to testify about the same things – "the identities of key

players and departments with the defendants' organizations" and "the close relationships

between the defendants and designated terrorist organizations." DE 571 at 5.[2]  Another three

(Karsh, Marcus, and Shrenzel) also seek to testify about the same thing – Defendants' alleged

"incitement of violence through official statements and PA/PLO-owned media channels."  *Id.*

And four of their experts (Marcus, Eviatar, Shrenzel, and Kaufman) devote much of their reports

to transmitting the hearsay statements found in documents.  *See generally* Marcus Report,

---

[2] This is the second time Plaintiffs have claimed their experts will testify about the PA's and PLO's
organizations.  At the July 22 hearing, Plaintiffs' counsel represented to the Court that the Plaintiffs'
experts "are really needed in this case to lay down the context for what is the General Intelligence
Service?  What is the PA police?  How do they work?  That kind of stuff." Tr. 7/22/14 at 112:21-24.
Plaintiffs, experts, however, will not be testifying regarding the PA security services and how they work,
because they did not disclose any opinions on those subject areas as part of their expert disclosures.

5

Eviatar Report, Shrenzel Report, and Kaufman Report.  Thus, Plaintiffs' case does not involve

the "substantial overlap of witnesses or documentary proof" that is necessary to defeat a motion

for separate trials.  *See In re Blech Sec. Litig.*, 2003 U.S. Dist. LEXIS 4650, at *35.

Finally, Plaintiffs argue that the confusion generated by a single trial involving dozens of

Palestinian militants is irrelevant because "the individual perpetrators of the attacks are not on

trial here."  DE 571 at 6.  This argument hardly merits a response.  Defendants' liability for the

seven attacks hinges on the culpability of the alleged perpetrators of each attack and whether the

PA or PLO is responsible for those persons' alleged actions.  Because Defendants, and not the

perpetrators of the attacks, are on trial here, it is only they who can suffer prejudice from juror

confusion in this case.[3]

## II.   BIFURCATION OF THE LIABILITY AND DAMAGES PHASES OF THE TRIAL IS WARRANTED UNDER RULE 42(b).

As an initial matter, Plaintiffs ignore Defendants' argument that bifurcation of the

liability and damages phases of the trial "will enhance the jury's understanding of the complex

issues in this case."  DE 561 at 10.  Yet, one of the cases they cite in their brief, *Svege v.

Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283 (D. Conn. 2004), discusses whether

bifurcation is necessary to avoid juror confusion.  *Id.* at 285.  In that case, the court did not order

bifurcation because neither the liability phase nor the damages phase of the personal injury case

involved complicated issues or numerous witnesses.  *Id.*  Or as the court put it, "this case

involves a motor vehicle accident, not brain surgery."  *Id.*  The instant case, by contrast, is

almost as complicated as brain surgery.  Indeed, even Arnold & Porter cannot keep the alleged

---

[3] Plaintiffs' failure to recognize that Defendants can suffer prejudice from the admission of evidence about the individual perpetrators of the attacks is ironic because Plaintiffs have previously complained about potential prejudice from the admission of so-called anti-Israel evidence, even though they do not represent Israel and Israel is not on trial in this case.  *See* DE 487 at 1-8.

6

1442408.1

perpetrators straight.  At trial, the jury will be asked to do something that no jury has ever been asked to do before – decide whether a foreign governmental entity is liable for injuries sustained by U.S. nationals during terrorist attacks occurring on foreign soil.  And it may have to answer that question for seven separate attacks based on multiple theories of liability, dozens of fact and expert witnesses, and hundreds of documents.  Meanwhile, the damages phase will involve gruesome physical injuries of victims, allegations of emotional and psychological injuries to the families of the victims, and, potentially, calculations of damages by experts.  In sum, each phase of the trial will be quite complicated.  Thus, the Court should bifurcate the liability and damages phases of the trial.

Plaintiffs *do* address Defendants' argument that bifurcation is more efficient than a joint trial because litigating the issue of liability first could obviate the need to litigate the issue of damages altogether.  But they claim that bifurcation "will actually create enormous inefficiency" because the plaintiffs would have to testify first as to liability and then again as to damages.  DE 571 at 9.  Plaintiffs are mistaken.  First, many of the plaintiffs will not testify about their alleged injuries because they lack standing to bring their ATA claims.  *See* DE 497 at 40-43.  The civil liability provision of the ATA provides relief only to "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs."  18 U.S.C. § 2333(a).  Thus, those plaintiffs that are not U.S. nationals, including Varda Guetta, Revital Bauer, Shaul Mandelkorn and Nurit Mandelkorn, and those plaintiffs that were not present at the attacks and are not the heirs or survivors of a U.S. national killed in an attack, including the Goldberg plaintiffs, Leonard Mandelkorn, Ronald Gould, Elise Gould, Jessica Rine, Henna Waldman, Morris Waldman, Eva Waldman, Elana Sokolow, and minors BB, DB, and YB, will not testify about their alleged injuries.  *See* DE 497

7

1442408.1

at 40-43.  In the end, only ten plaintiffs – Oz Guetta, Shayna Gould, Shmuel Waldman, Mark

Sokolow, Rena Sokolow, Jamie Sokolow, Lauren Sokolow, Alan Bauer, Yehonathan Bauer, and

Shaul Mandelkorn – could potentially testify about their alleged injuries, and neither Shayna

Gould nor Yehonathan Bauer has a recollection as to the event in which they were injured.

Moreover, the four Sokolows and Shmuel Waldman are all residents of the greater New York

metropolitan area.

Second, Defendants are not contesting the fact that these ten plaintiffs were injured

during the attacks.   As such, none of the plaintiffs would have to testify during the liability

phase of the trial.  Only Varda Guetta has evidence that is arguably probative of Defendants'

liability.  In any event, even if "Plaintiffs must offer evidence of their injuries to prove liability,"

as Plaintiffs contend (*see* DE 571 at 9), Rule 42(b)'s flexibility still permits bifurcation because

Rule 42(b) allows the Court "'to grant a separate trial of *any kind of issue* in any kind of case.'"

*Chevron Corp. v. Donziger*, 800 F. Supp. 2d 484, 491 (S.D.N.Y. 2011) (quoting 9A Charles

Alan Wright et al., *Federal Practice and Procedure: Civil* 3d § 2398, at 126 (2008)) (emphasis

added).  Thus, the Court can bifurcate the issue of Defendants' responsibility for the attacks from

the issues of fact of injury and damages.  Each plaintiff (with the possible exception of Ms.

Guetta, who was residing with her daughter in New York at the time of her last deposition)

would therefore have to testify only once.  In the end, Plaintiffs cannot reasonably argue that

bifurcation would create inefficiency when Wright & Miller, whom they cite twice in their brief

(*see* DE 571 1,9), has found that bifurcated trials "take twenty percent less time than do cases

tried routinely, with the liability and damage issues submitted simultaneously to the jury." 9A

Charles Alan Wright et al., *Federal Practice and Procedure: Civil* 3d § 2390 at 167-68 (2008).

1442408.1

Finally, Plaintiffs argue that "there is no guarantee that bifurcation will eliminate or even substantially reduce the potential prejudice that Defendants fear" because "a bifurcated liability phase would involve at least some evidence of the underlying acts of terrorism and the resultant injuries." DE 571 at 11 (internal quotation marks omitted). Plaintiffs are wrong. While some evidence of injuries might be admitted during the liability phase of a bifurcated trial, such evidence would not dominate the trial like the damages evidence would dominate a joint trial. Plaintiffs' liability case is unusual in that it is built almost exclusively on documents and a few expert witnesses. They have just one fact witness, Ms. Guetta, who purports to have testimony that is probative of Defendants' liability. Their damages case, on the other hand, is based on dozens of fact witnesses as well as expert witnesses. In all, there are over 40 plaintiffs who potentially would testify about injuries or deaths to them or their loved ones. Their testimony promises to be emotional and heart-breaking. Accordingly, the live testimony about damages will dwarf the documentary evidence about liability. A limiting instruction will therefore not protect Defendants from unfair prejudice.

## CONCLUSION

For the reasons stated above, the Court should order seven separate trials and bifurcate the liability and damages phases of the trial.

9

1442408.1

August 6, 2014                              Respectfully Submitted,

    /s/ Brian A. Hill_____
Brian A. Hill
Mark J. Rochon
Laura G. Ferguson
Michael J. Satin
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington, DC  20005-6701
(202) 626-5800 [tel]
(202) 626-5801 [fax]
bhill@milchev.com [email]

*Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

1442408.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 6th day of August, 2014, a true and genuine copy of

the foregoing was filed by ECF, which automatically provided service to all ECF counsel,

including the following:

Robert J. Tolchin, Esq.
The Berkman Law Office, LLC
111 Livingston Street – Suite 1928
Brooklyn, NY 11201
 (718) 855-3627
E-mail:  rtolchin@berkmanlaw.com

Kent A. Yalowitz
Philip W. Horton
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
(212) 715-1000
Email:  Kent.Yalowitz@aporter.com

/s/ Michael J. Satin
Michael J. Satin

1442408.1