

Mark J. Rochon
Member
(202) 626-5819
mrochon@milchev.com

August 11, 2014

BY ECF AND OVERNIGHT DELIVERY
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re: *Sokolow v. Palestine Liberation Organization,* No. 04-CV-397(GBD) (RLE)

Dear Judge Daniels:

    I write in response to Plaintiffs' letter, dated July 30, 2014, about the proposed jury questionnaire. *See* DE 576. In this letter, Plaintiffs ask the Court to adopt the questions proposed by Plaintiffs but objected to by Defendants (highlighted in blue) and to reject the questions proposed by Defendants but objected to by Plaintiffs (highlighted in yellow). For the reasons discussed below, the Court should reject Plaintiffs' proposed questions and language and adopt Defendants' proposed questions and language.

Introduction, Preliminary Instructions, Questions 14, 15, 16, and 88, Scheduling and Hardship Information

    Plaintiffs filed a motion seeking an anonymous and semi-sequestered jury, and propose language based on the assumption the motion will be granted. The Court should reject the "drastic measure" of using an anonymous and semi-sequestered jury for the reasons discussed in Defendants' opposition brief. *See* DE 570. The Court should therefore use the instructions proposed by Defendants.

Questions 23-24

    Defendants propose a question about attitudes towards U.S. involvement in foreign affairs (question 23) and a question about interest in travel abroad (question 24) because this case, unlike nearly every other case in this courthouse, is based exclusively on events that took place outside of the United States. And many of the plaintiffs in this case were injured or killed while travelling abroad. Jurors that have strong feelings about either U.S. involvement in foreign policy or travel abroad may not be qualified to serve as jurors in this case. Defendants are not seeking "jurors psychologically predisposed to their side," as Plaintiffs allege. DE 576 at 1. Rather, they seek information that could uncover juror bias or might inform their strikes, whether for cause or peremptory challenges. As one treatise explains:

**MILLER CHEVALIER**

> Litigants therefore have the right, at the least, to some surface
> information regarding the prospective jurors. Such information
> may uncover ground for challenge for cause. If it does not, it will
> be available in the intelligent use of the peremptory challenge,
> which is the antithesis of challenge for cause.

9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 2482 (2008) (quoting *Kiernan v. Van Schaik*, 347 F.2d 775, 779 (3d Cir. 1965).

Questions 25-36

Plaintiffs acknowledge that the Court should inquire "into religious matters to ensure that no member of the jury is biased." DE 575 at 2. Yet, they object to most of the proposed questions about religion because they claim that the "questions are extremely intrusive and suggest that religion is an important element in the case." *Id.* Plaintiffs are wrong. First, religion is an element of this case. Plaintiffs allege that anti-Semitism and Islamic ideology inspired and motivated the attacks at the center of this case. *See e.g.,* Marcus Report at 25 (accusing Defendants of the "promotion of killing Jews as Allah's will"); Shrenzel Report at 9 (accusing Defendants of broadcasting "venomous preaching efforts at mosques that gave religious attributes to the struggle against Israel"). Second, asking non-leading questions about religious identification and religiosity in a written questionnaire, as is proposed in the questionnaire, is not intrusive. Finally, the jury will not draw improper inferences about the case from the questions because the Court will have instructed the jury that the purpose of the questionnaire is to assist the Court and counsel in selecting a fair and impartial jury. *See* DE 573-1 at 4. The Court can also inform the jury that they should not draw any inferences about the case from the questionnaire.

Questions 55-56

Because Plaintiffs have alleged that the attacks at issue in this case were hate crimes, Defendants have proposed a question (55) that asks each prospective juror if s/he or someone close to her/him has been the victim of a hate crime. This is no different than asking each prospective juror in a robbery case if s/he or someone close to her/him has been the victim of a robbery. The next question (56) does not ask whether the prospective juror "was the victim of any kind of violent crime," as Plaintiffs claim. *See* DE 576 at 2. Rather, it asks whether the perpetrator of a violent crime against the prospective juror or someone close to the juror was "ever brought to justice." Again, this is a standard question that should be asked in a case like this.

Questions 73-74

Plaintiffs propose a question about what jurors have read or heard about the PA and the PLO (73) and a question about whether jurors have formed an opinion about this case based on what they have read or heard (74). Defendants object to these questions because (1) they are out of place in this section entitled "Contact with Court and Parties" and (2) questions better



designed to uncover juror bias are proposed in the later section of the Questionnaire entitled "Case Specific" (*see e.g.,* questions 101-110).

Question 75

Defendants inserted the word "civil" in this question about the complaint so that the jurors understand that this is not a criminal case, notwithstanding the criminal conduct at the center of the case.

Question 82

Defendants request the phrase "members of your religious community" in this question because this case may feature inflammatory and hateful religious speech (*see e.g.,* Marcus Report at 24) ("The Jews are the Jews . . . They are all liars . . . They must be butchered and they must be killed, as Allah said . . .")), and Defendants want to ensure that jurors will not be influenced by the feelings and opinions of members of their religious community.

Question 83

Plaintiffs propose to ask the prospective jurors if anything "about the nature of the case" causes them to "doubt [their] ability to be fair and impartial." Defendants have no objection to this question. But the prospective jurors will know almost nothing about "the nature of this case" at the time they fill out the questionnaire. Thus, the Court should also ask the jurors whether anything about "the questions in this questionnaire" causes them to "doubt [their] ability to be fair and impartial."

Questions 89-92 v. 95-98

In a case about terrorist attacks allegedly committed by Palestinian Muslims against Israeli Jews, among others, in Jerusalem during the Second Intifada, Defendants propose non-leading questions (89-92) about jurors' experiences with and opinions of Palestinians, Muslims, Israelis, and Jews. Plaintiffs, in contrast, propose more limited questions about only Muslims and Jews. Nationality is, of course, different than religious affiliation. The Court should therefore ask questions 89-92 instead of questions 95-98.

Question 100

Defendants object to the phrase "U.S. efforts to combat terrorism" in this question because jurors may infer – wrongly – that Plaintiffs have brought this case at the behest of the U.S. government or that the U.S. government has an interest in the outcome of this case. The phrase is also redundant because the question already asks jurors if they have written letters or made phone calls about terrorism.



Questions 101-110

      Defendants propose a few questions that gauge jurors' familiarity with and opinions of the very entities, groups, and individuals that will be discussed during the trial, including, for example, the PA, the PLO, Yasser Arafat, and Ariel Sharon. The parties have a right to know whether prospective jurors already have opinions about these entities, groups, and individuals, and if so, whether those opinions will color their evaluation of the evidence. A prospective juror who has strong feelings about Yasser Arafat or Ariel Sharon, for example, might not be qualified to serve as a juror in this case and in any event, such views definitely would inform the use of peremptory strikes. Defendants also propose a few questions about the Israeli-Palestinian conflict because the seven attacks at issue in this case all took place during a Palestinian uprising against Israel known as the Al-Aqsa, or Second, Intifada. Thus, the parties have a right to know whether prospective jurors have opinions about this conflict, and if so, whether those opinions will color their evaluation of the evidence. The only way to ensure that the jury is not made up of individuals whose opinions will cloud their evaluation of the evidence is to ask Defendants' proposed questions during voir dire.

      Plaintiffs' opposition to questions intended to uncover juror bias can mean only one thing: they think New York jurors harbor strong feelings against our clients and they do not want Defendants or the Court to identify those jurors and keep them off the jury. Such gamesmanship has no place in this case. Plaintiffs' claim that Defendants are trying "to inject the 'conflict' into this case rather than sticking to the evidence" (DE 576 at 5) is a subterfuge. In fact, it is Plaintiffs, not the Defendants, who want to inject the Israeli-Palestinian conflict into this case. See DE 524 at 1-5. And it is Defendants, not Plaintiffs, who have specifically moved this Court to preclude both sides from injecting the conflict into this case. See id. at 1 ("The Court should not permit either party to put the Israeli-Palestinian conflict on trial."); id. at 2 ("The Court should preclude both parties from shifting the focus of the lawsuit from the attacks at issue to broader narratives of responsibility towards and attitudes about the longstanding Israeli-Palestinian conflict.") (emphasis in original).

Questions 117-119

      Plaintiffs propose just a single question about bias towards the PA and the PLO (question 117), a single question about bias towards Americans who visit or live in Israel (question 118), and a final catch-all question about bias towards other groups (question 119). Defendants oppose these three questions because questions 101-110 are more likely to uncover juror bias. Merely asking jurors the ultimate question – whether they can be fair and impartial – is not enough, particularly in a case that, according to Plaintiffs, "involves sensitive issues about which we may all have opinions and feelings" (DE 573-1 at 6).

                                                               Respectfully,

                                                                /Mark J. Rochon / MJS

                                                                Mark J. Rochon