UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

MARK I. SOKOLOW, *et al.*,

                              Plaintiffs,

        vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                              Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## PLAINTIFFS' OBJECTIONS TO
## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
(212) 715-1113 [tel]
(212) 715-1399 [fax]
*Counsel for Plaintiffs*

August 29, 2014

68211031v6

# TABLE OF CONTENTS

**Page**

GENERAL OBJECTION .................................................................................... 1

SPECIFIC OBJECTIONS .................................................................................. 3

    Defendants' Requested Instruction 1:  Opening Instructions ............................ 3

    Defendants' Requested Instruction 2:  Order of Trial ...................................... 4

    Defendants' Requested Instruction 3:  Claims and Defenses ............................ 5

    Defendants' Requested Instruction 4:  Foreign Governmental Organization as a
        Party ...................................................................................................... 6

    Defendants' Requested Instruction 5:  Avoiding Prejudice—Terrorism........................... 7

    Defendants' Requested Instruction 6:  Province of Judge and Jury ................... 9

    Defendants' Requested Instruction 7:  Jury Conduct, Contact with Others,
        Publicity ............................................................................................... 10

    Defendants' Requested Instruction 8: No Transcript Available to the Jury, Note-
        taking Permitted .................................................................................... 11

    Defendants' Requested Instruction 9:  Questions by Jury Permitted .............. 12

    Defendants' Requested Instruction 10:  Judge's Questions to Witnesses ....... 13

    Defendants' Requested Instruction 11:  Ruling on Objections...................... 14

    Defendants' Requested Instruction 12:  Official Translations....................... 15

    Defendants' Requested Instruction 13:  Depositions.................................... 16

    Defendants' Requested Instruction 14:  Evidence for Limited Purpose........... 17

    Defendants' Requested Instruction 15:  Juror Attentiveness............................ 18

    Defendants' Requested Instruction 16:  Role of the Court.............................. 19

    Defendants' Requested Instruction 17:  Role of the Jury ............................... 20

    Defendants' Requested Instruction 18:  Juror Oath...................................... 21

    Defendants' Requested Instruction 19:  Common Counsel............................ 22

Defendants' Requested Instruction 20: Race, Religion, National Origin, Sex or Age .................................................................................................. 23

Defendants' Requested Instruction 21:  Sympathy .......................................... 24

Defendants' Requested Instruction 22:  Publicity—Final Charge .................... 25

Defendants' Requested Instruction 23:  Use of Notes ...................................... 26

Defendants' Requested Instruction 24:  Instructions Apply to Each Party ...................... 27

Defendants' Requested Instruction 25:  All Persons Equal Before the Law—Foreign Governmental Organizations .................................................. 28

Defendants' Requested Instruction 26:  Multiple Plaintiffs .............................. 29

Defendants' Requested Instruction 27:  Multiple Defendants ........................... 30

Defendants' Requested Instruction 28:  What Is and Is Not Evidence ............................. 31

Defendants' Requested Instruction 29:  Official Translation ............................ 32

Defendants' Requested Instruction 30:  Burden of Proof—General Instructions ........... 33

Defendants' Requested Instruction 31:  Clear and Convincing Evidence ....................... 35

Defendants' Requested Instruction 32:  Preponderance of the Evidence ....................... 36

Defendants' Requested Instruction 33:  Number of Witnesses ........................................ 37

Defendants' Requested Instruction 34:  Witness Credibility ............................................ 38

Defendants' Requested Instruction 35:  Expert Witnesses—Generally ........................... 39

Defendants' Requested Instruction 36:  Bias .................................................................... 40

Defendants' Requested Instruction 37:  Interest in Outcome ........................................... 41

Defendants' Requested Instruction 38:  Eyewitness Identification .................................. 42

Defendants' Requested Instruction 39:  Liability for Acts of International Terrorism .......................................................................................... 44

Defendants' Requested Instruction 40:  U.S. National ..................................................... 46

Defendants' Requested Instruction 41: Injured in His or Her Person, Property or Business ............................................................................................ 47

Defendants' Requested Instruction 42:  International Terrorism ..................................... 48

Defendants' Requested Instructions 43, 44, and 45 Causation—Generally, "But For" Cause and Proximate Cause ........................................................ 49

Defendants' Requested Instruction 46:  Required Mental State of the Defendant ........... 53

Defendants' Requested Instruction 47: Governmental Organization's Officials ............. 57

Defendants' Requested Instruction 48:  Act of War ......................................................... 61

Defendants' Requested Instruction 49: Lack of Capacity—Foreign Governmental Organization ............................................................................................................ 62

Defendants' Requested Instruction 51:  Consider Damages Only If Necessary .............. 64

Defendants' Requested Instruction 52: Damages Must Have Been Caused by the Defendant ................................................................................................................... 65

Defendants' Requested Instruction 53:  Multiple Claims—Multiple Defendants ........... 66

Defendants' Requested Instruction 54:  Compensatory Damages .................................... 67

Defendants' Requested Instruction 55:  Treble Damages ................................................. 68

Defendants' Requested Instruction 56:  Nominal Damages ............................................. 69

.Defendants' Requested Instruction 57:  Mitigation of Damages ..................................... 69

Defendants' Requested Instruction 57:  Mitigation of Damages ...................................... 70

Defendants' Requested Instruction 58:  Duty to Deliberate, Unanimous Verdict ........... 71

Defendants' Requested Instruction 59:  Effect of Instruction as to Damages ................. 72

Defendants' Requested Instruction 60:  Selection of Foreperson .................................... 73

Defendants' Requested Instruction 61: Right to See Exhibits and Hear Testimony; Communications with Court ...................................................................................... 74

Defendants' Requested Instruction 62:  Special Verdict .................................................. 75

Defendants' Requested Instruction 63:  Return of Verdict ............................................... 76

CONCLUSION ............................................................................................................................ 77

## GENERAL OBJECTION

Defendants make a number of statements in the introduction to their proposed jury instructions that are wrong as a matter of fact and law.  In addition, defendants have failed to comply with the Court's orders regarding the submission of proposed jury instructions.  For example, defendants purport to "reserve the right to supplement, amend, or modify" their proposed instructions; similarly, defendants assert that "it will be important to use a special verdict form" even though they have failed to propose one.  In view of the Court's orders of March 6 [DE 435] and May 23, 2014 [DE 515], requiring defendants to make their requests to charge by August 8, no supplementation, amendment, or modification should be permitted unless defendants show good cause for their failure to comply with the Court's scheduling orders.

Defendants also contend that it was "unduly burdensome" for them to propose instructions concerning the predicate crimes at issue in plaintiffs' claims under the Anti-Terrorism Act, asserting that they do not know what predicate crimes plaintiffs intend to prove.  This is not correct.  Defendants have had a list of the relevant crimes since January 2014, when the parties presented a proposed Joint Pretrial Order for the Court's consideration.  Thus, if defendants wanted to submit instructions on those crimes, they could have done so by August 8.

In addition, defendants contend that they cannot submit instructions on plaintiffs' non-ATA claims because plaintiffs have not stated what substantive law governs those claims.  They even assert that plaintiffs have not provided notice under Federal Rule of Civil Procedure 44.1 of an intent to rely on foreign law.  These assertions are frivolous.  Notice of the applicability of foreign law may be given, as here, by alleging facts in the Complaint that relevant activities took place outside the United States, which is "enough to put all parties on notice that the [case] might be governed by foreign law."  *In re Griffin Trading Co.*, 683 F.3d 819, 822-23 (7th Cir. 2012).

Here, defendants obviously understood that foreign law would apply, because they produced an expert report on the law of Israel, received a rebuttal expert report from plaintiffs' expert on the law of Israel, and even took the deposition of plaintiffs' Israeli law expert.

Defendants contend that their tortious conduct "occurred exclusively in the West Bank" so that "West Bank law" (whatever that is) applies. Again, this is simply not true. With one exception, the attacks all occurred outside the West Bank. Moreover, as discussed in plaintiffs' summary judgment papers, the defendants themselves effectively agreed in the 1995 Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip that Israeli law would govern terrorist incidents against Israelis occurring in the West Bank. *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgment on Defendants' Fourth Affirmative Defense at 3, 13 [DE 492]. In any event, defendants have not proposed any jury instructions of their own on "West Bank law," so they should not be heard to complain.

## **SPECIFIC OBJECTIONS**

### **Defendants' Requested Instruction 1:  Opening Instructions**

No objection.  *See* 1 L. Sand *et al.*, *Modern Fed. Jury Instructions—Crim.*, Instruction 1-1 (2014) ("*Sand Instr.—Crim.*").

**<u>Defendants' Requested Instruction 2:  Order of Trial</u>**

Plaintiffs do not object to the inclusion of the order of trial in the Court's initial instructions.  However, if the Court does so, plaintiffs request that the Court include the fact that plaintiffs may put on a rebuttal case if necessary.

**<u>Defendants' Requested Instruction 3:  Claims and Defenses</u>**

No objection.

**<u>Defendants' Requested Instruction 4:  Foreign Governmental Organization as a Party</u>**

This request reads:

> In this case, both of the defendants are foreign governmental organizations.  The mere fact that these parties are governmental organizations and foreign does not mean they are entitled to any lesser consideration by you.  All litigants are equal before the law, and governmental organizations, big or small, foreign or domestic, are entitled to the same fair consideration as you would give any other individual party

Plaintiffs object to including any instruction on this topic at the opening of trial rather than after the close of the evidence.  Instructing the jury on this topic at the opening of trial would improperly suggest to the jury that the Court views defendants as being in need of special protective treatment.

Plaintiffs also request that the Court use the term "entity" rather than "organization," as this is the relevant term used in the Anti-Terrorism Act, 18 U.S.C. § 2331(3).  *See* Plaintiffs' Proposed Instruction No. 11.

**Defendants' Requested Instruction 5:  Avoiding Prejudice—Terrorism**

This request reads:

> This case also includes allegations of terrorism and alleged liability under the Anti-Terrorism Act.  The words "terrorism" and "terrorist" have certain implications in our society.  Use of those terms in this statute and in this courtroom should be regarded by you as having only the meaning that I will give to you in my instructions on the law, which I will give at the close of the case.

Plaintiffs object to including any instruction on this topic at the opening of trial rather than after the close of the evidence.  Instructing the jury on this topic at the opening of trial would improperly suggest to the jury that the Court views defendants as being in need of special protection from the implications of the word "terrorism" when used by expert and fact witnesses, rather than focusing the jury on the elements of the claim and the word as used in the statute.

Plaintiffs also object to this request as unnecessary.  Defendants state that they adapted this request from Instruction 84-22 for civil RICO cases in 4 L. Sand, *et al.*, *Modern Federal Jury Instructions—Civil* (2014) ("*Sand Instr.—Civ.*").[1]  Because of RICO's expansive applicability, the term "racketeering activity" is used to charge the jury in civil RICO cases "where the defendant has no obvious connection with what the public would conceive to be organized crime."  *Id.* ¶ 84.04, cmt. to Instr. 84-22.  As a result, an instruction may be used "to minimize the potential prejudice from the sinister implications of the word."  *Id.*  Here, in contrast, the statute is quite narrowly focused on actual terrorism, and to our knowledge has

---

[1] Judge Sand's instruction reads:

> The word "racketeering" has certain implications in our society. Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the plaintiff has established the elements of the claim. The term is only a term used by Congress to describe the statute.

*Sand Instr.—Civ.*, Instr. 84-22.

never been construed to apply where the defendant has no obvious connection to what the public would conceive to be terrorism. Indeed, in this case, there can be no legitimate dispute that the underlying conduct at issue *was* terrorism, and the question for the jury will be whether the evidence connects defendants with that terrorism.

Finally, plaintiffs object to including a *caveat* concerning the word "terrorist," as it is not in the statute and the Court has not been asked to give any instructions on the meaning of the word "terrorist."

If the Court were to include any instruction on this topic, it should modify *Plaintiffs'* Proposed Instruction No. 19 to include, immediately after the first paragraph, a paragraph that reads:

> The word "terrorism" has certain implications in our society. Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the plaintiffs have established the elements of the claim. The term is only a term used by Congress to describe the statute.

This instruction would track the actual language in Judge Sand's treatise.

**<u>Defendants' Requested Instruction 6:  Province of Judge and Jury</u>**

No objection.

**<u>Defendants' Requested Instruction 7:  Jury Conduct, Contact with Others, Publicity</u>**

This request is substantially the same as Plaintiffs' Proposed Instruction Nos. 2, 3, and 4.

**Defendants' Requested Instruction 8:**
**No Transcript Available to the Jury, Note-taking Permitted**

Plaintiffs do not object to note-taking by the jury if the Court determines to exercise its

discretion to permit it.  Plaintiffs believe that note-taking may be helpful to the jury in this case,

because of the volume of the evidence.  However, plaintiffs object to certain portions of

defendants' request, highlighted below.  Defendants' request reads:

> If you want to take notes during the course of the trial, you may do
> so.  If you do take notes, be sure that your note-taking does not
> interfere with your listening to and considering all of the evidence.
> Also, if you take notes, do not discuss them with anyone before or
> during your deliberations.  Your notes are to be used solely to
> assist you and are not to substitute for your recollection of the
> evidence in the case.  The fact that a particular juror has taken
> notes entitles that juror's view to no greater weight than those of
> any other juror and your notes are not to be shown to any other
> juror during your deliberations.
>
> If, during your deliberations, you have any doubt as to any of the
> testimony, you will be permitted to request that the official trial
> transcript which is being made of these proceedings be read to you.
> **It is difficult and time-consuming, however, for the reporter to**
> **read back testimony.  I urge you to pay close attention to the**
> **testimony as it is presented at the trial.**
>
> **Otherwise, at the end of the trial, you will not have a written**
> **transcript to read, and you will have to make your decision**
> **based on what you remember about the evidence.**

Plaintiffs object to inclusion of the emphasized portions of defendants' request, which

come from the O'Malley treatise and are not included in Judge Sand's instruction 71-16.  The

additions that defendants propose are unduly confusing in light of the fact that the jury will have

the right to see exhibits and request testimony.  Indeed, both parties ask the Court to instruct the

jury that they will have the right to see and hear evidence.  *See* Defendants' Requested

Instruction 61 (based on  *Sand Instr.—Civ.*, Instr. 78-1); Plaintiffs' Proposed Instruction No.

1(w) (same).  The highlighted text in this proposed instruction would conflict with that

instruction, confuse the jury, and improperly discourage the jury from asking for evidence.

**<u>Defendants' Requested Instruction 9:  Questions by Jury Permitted</u>**

Plaintiffs object to this request.  As the Second Circuit has stated, although "juror questioning of witnesses lies within the trial judge's discretion, we strongly discourage its use." *United States v. Bush*, 47 F.3d 511, 515 (2d Cir. 1995).  "Balancing the risk that a juror's question may be prejudicial against the benefit of issue-clarification will almost always lead trial courts to disallow juror questioning, in the absence of extraordinary or compelling circumstances."  *Id.* at 516; *see Sand Instr.—Civ.*, ¶ 71.02, cmt. to Instr. 71-17 (allowing juror questions "has some potentially serious drawbacks:  jurors may become partisan inquisitors rather than impartial factfinders, the questioning may delay the pace of the trial, the practice runs the risk of undermining trial strategy, and jurors might attach special weight to their own questions.").  In *United States v. Douglas*, 81 F.3d 324, 326 (2d Cir. 1996), the court reiterated that "the risks of adverse consequences make it inappropriate for a trial judge to invite or encourage such questioning," and held that even where the trial judge accepted only written questions, reviewed the questions, with counsel, and asked the questions himself, he nonetheless "exceeded his allowable discretion by inviting questions both at the start of the trial and at the end of each witness's testimony."

Here, no extraordinary or compelling circumstances support defendants' request that the Court invite the jurors to ask questions.

**<u>Defendants' Requested Instruction 10:  Judge's Questions to Witnesses</u>**

No objection.

## **Defendants' Requested Instruction 11:  Ruling on Objections**

No objection.

**<u>Defendants' Requested Instruction 12:  Official Translations</u>**

This request is substantially similar to Plaintiffs' Proposed Instruction No. 5.

**Defendants' Requested Instruction 13:  Depositions**

No objection.  *See Sand Instr.—Civ.*, Instr. 74-14.

## **Defendants' Requested Instruction 14:  Evidence for Limited Purpose**

No objection, if conditions warrant the Court providing such an instruction.

**<u>Defendants' Requested Instruction 15:  Juror Attentiveness</u>**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(b).

## **Defendants' Requested Instruction 16:  Role of the Court**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(c).

**<u>Defendants' Requested Instruction 17:  Role of the Jury</u>**

No objection.  *See* Plaintiffs' Proposed Instruction 1(d).

## **Defendants' Requested Instruction 18:  Juror Oath**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(e).

**<u>Defendants' Requested Instruction 19:  Common Counsel</u>**

Plaintiffs object to this request, which reads:

> Although the defendants in this trial are being represented by the
> same counsel, you are not to treat them as one person.  Each
> defendant is entitled to your separate consideration.  The question
> of whether liability has been proven is personal to each defendant
> and must be decided by you as to each defendant individually.
> Similarly, you must decide the amount of damages separately as to
> each party.

The jury will have to decide whether defendants are alter egos.  *See* Plaintiffs' Proposed

Instruction Nos. 11, 12.  This proposed instruction would directly conflict with applicable law on

alter egos, improperly confuse the jury, and prejudice plaintiffs.

Plaintiffs would not object to the inclusion, at the end of Plaintiffs' Proposed Instruction

No. 12, of text that reads:

> The fact that the defendants in this trial are being represented by
> the same counsel must not be considered in your determination of
> whether or not to treat them as one person.

The remaining substance of this request is already covered by other instructions

defendants have proposed, such as Defendants' Requested Instruction No. 27 (Multiple

Defendants) and Defendants' Requested Instruction No. 53 (Multiple Claims—Multiple

Defendants).

**Defendants' Requested Instruction 20:**
**<u>Race, Religion, National Origin, Sex or Age</u>**

No objection.

**<u>Defendants' Requested Instruction 21:  Sympathy</u>**

No objection.

**Defendants' Requested Instruction 22:  Publicity—Final Charge**

No objection.  *See* Plaintiffs' Proposed Instruction No. 2.

**<u>Defendants' Requested Instruction 23:  Use of Notes</u>**

Plaintiffs do not object to this request.  However, plaintiffs respectfully direct the Court's

attention to *United States v. Bertolotti*, 529 F.2d 149, 160 (2d Cir. 1975), in which the court

approved the following instruction by Judge Robert L. Carter of this Court:

> I have permitted each of you to take notes during the course of the
> trial.  I expect you to use whatever notes you took merely as
> memory aids.  They should not be allowed to take precedence over
> your independent memory of the facts.

If the Court decides to permit note-taking, the Court may prefer Judge Carter's instruction.

**Defendants' Requested Instruction 24:  Instructions Apply to Each Party**

The substance of this instruction is adequately covered by other instructions requested by defendants.  *See* Defendants' Requested Instruction No. 26 (Multiple Plaintiffs), Defendants' Requested Instruction No. 27 (Multiple Defendants), and Defendants' Requested Instruction No. 53 (Multiple Claims—Multiple Defendants).

**Defendants' Requested Instruction 25:  All Persons Equal**
**Before the Law—Foreign Governmental Organizations**

Plaintiffs object to this request because it is redundant to Defendants' Requested

Instruction No. 4.  Plaintiffs also request that the Court use the term "entity" rather than

"organization," as this is the relevant term used in the Anti-Terrorism Act, 18 U.S.C. § 2331(3).

Plaintiffs do not object to an instruction modeled on *Sand Instr.—Civ.*, Instr. 72-1.  *See*

Plaintiffs' Proposed Instruction No. 11.

## **Defendants' Requested Instruction 26:  Multiple Plaintiffs**

No objection.

## **Defendants' Requested Instruction 27:  Multiple Defendants**

No objection.

**Defendants' Requested Instruction 28:  What Is and Is Not Evidence**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(i).

**<u>Defendants' Requested Instruction 29:  Official Translation</u>**

This request is substantially similar to Plaintiffs' Proposed Instruction No. 5.

**Defendants' Requested Instruction 30:  Burden of Proof—General Instructions**

Plaintiffs object to this request, in which defendants ask the Court to impose a "clear and convincing evidence" burden on plaintiffs.  The courts have unanimously held that the "preponderance of the evidence" standard applies to claims under the ATA.  *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 140 (D.C. Cir. 2011); *Knox v. PLO*, 248 F.R.D. 420, 427 (S.D.N.Y. 2008).  Those holdings are correct.  "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, [the Courts] presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'"  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

Neither the statutory text nor the legislative history of the ATA suggests any reason why the Courts should impose the higher "clear and convincing evidence" burden on a plaintiff in an anti-terrorism case.  To the contrary, in enacting the Anti-Terrorism Act, Congress "'intended to incorporate general principles of tort law…into the [civil] cause of action under the ATA.'"  *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 558 (E.D.N.Y. 2012); *Knox v. PLO*, 442 F. Supp. 2d 62, 77 (S.D.N.Y. 2006).

Congress modeled the civil liability provisions of the ATA on Section 4 of the Clayton Act; even at the time of the ATA's enactment, the standard of proof under that statute had long been held to be a preponderance of the evidence.  *Ramsey v. United Mine Workers of Am.*, 401 U.S. 302, 307-11 (1971); *Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 711 (2d Cir. 1983).[2]  Where Congress models a statute on an earlier law, the new statute should be interpreted

---

[2] The standard of proof under RICO's treble damage civil liability provisions was also a preponderance of the evidence at the time Congress enacted the ATA, as it is today.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 491 (1985) (*dicta*); *Cullen v. Margiotta*, 811 F.2d 698, 731-

Footnote continued on next page

as the model had been during the preceding years.  *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-99 (1979).

Defendants try to justify their request for a "clear and convincing" standard without reference to any statutory text or legislative history, but based instead on the policy argument that treble damages have a punitive component.  However, "it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives."  *Cook Cnty, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 130 (2003). Moreover, even conduct supporting classical punitive damages may be proven by a preponderance of the evidence.  *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283-84 (2d Cir. 1990); *accord White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 805-06 (6th Cir. 2004) (collecting cases).  Defendants rely on a statement in *Honda Motor Co. v. Oberg*, 512 U.S. 415, 433 (1994), reciting a litigant's argument that the "clear and convincing standard" of proof required by Oregon state law served as "an important check against unwarranted imposition" of runaway punitive damages.  But nothing in *Honda Motor* suggested that a preponderance standard was an improper basis for awarding punitive damages.  To the contrary, the Supreme Court has specifically upheld punitive damages awarded under the preponderance of the evidence standard.  *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 463, n.29 (1993).

Plaintiffs also object to Defendants' Requests 31, 38, 47, 51, 52, and 54 insofar as they seek incorporation of the "clear and convincing" standard.

---

Footnote continued from previous page
32 (2d Cir. 1987); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 568 (S.D.N.Y. 2014); *Sand Instr.—Civ.*, ¶ 84.01 n.22  (collecting cases).

**<u>Defendants' Requested Instruction 31:  Clear and Convincing Evidence</u>**

Plaintiffs object to this request for the reasons stated in their objection to Requested

Instruction No. 30, *infra*.

**<u>Defendants' Requested Instruction 32:  Preponderance of the Evidence</u>**

Plaintiffs object to the Court submitting any of defendants' affirmative defenses to the jury for the reasons discussed below in plaintiffs' objections to Defendants' Requested Instruction Nos. 48, 49, and 50.

Defendants' affirmative defenses have been rejected as a matter of law ("act of war" and "unrecognized state") or expressly abandoned ("unincorporated association").

Plaintiffs do not object to the Court basing its instructions generally on the preponderance of the evidence standard.  *See Sand Instr.—Civ.*, Instr. 73-2.

**Defendants' Requested Instruction 33:  Number of Witnesses**

Plaintiffs object to this request.  The requested instruction is unbalanced and risks tilting the jury toward skepticism about the fact that there is a larger number of witnesses on one side or another.  "It should go without saying that the trial court should refrain from suggesting that the number of witnesses can be relevant."  1 *Sand Instr.—Crim.*,  ¶ 4.01, cmt to Instr. 4-3.  Even the treatise on which defendants rely warns that "[t]his instruction is not to be given routinely, but it might be given, on request, when there is a disproportionate number of witnesses on one side of the case."  3 O'Malley, *et al.*, *Fed. Jury Prac. & Instrs.* § 105:54 at 184 (2011) (quoting *Third Cir. Model Jury Instrs:  Civil*, Instr. No. 3.2 (2010)).  If any instruction on this topic must be given, the Court should adopt the first paragraph of Instruction 4-3 from Judge Sand's treatise.

## **Defendants' Requested Instruction 34:  Witness Credibility**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(r).

## **Defendants' Requested Instruction 35:  Expert Witnesses—Generally**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(u).

**<u>Defendants' Requested Instruction 36:  Bias</u>**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(s).

**<u>Defendants' Requested Instruction 37:  Interest in Outcome</u>**

No objection.

**Defendants' Requested Instruction 38:  Eyewitness Identification**

Plaintiffs object to this request, which asks the Court to express overwhelming skepticism towards eyewitness testimony and essentially argues defendants' position for them.  Giving this instruction would severely prejudice the jury against the Guetta family's claim.  Defendants' proposed instruction is based on a recently proposed New Jersey criminal instruction.  To plaintiffs' knowledge, it has never been read to a jury in a civil case and it has never been read to *any* jury in the Second Circuit.  It is over four pages long—far longer than any other instruction proposed by defendants.

It is well within this Court's discretion not to give *any* specific "eyewitness identification" instruction.  *United States v. Luis*, 835 F.2d 37, 41-42 (2d Cir. 1987) (upholding district court's refusal to give a specific eyewitness instruction as an appropriate exercise of discretion); *United States v. Evans*, 484 F.2d 1178, 1188 (2d Cir. 1973) (where careful instructions to the jury follow full opportunity to develop identification testimony, no error in refusing to give additional identification charge); *United States v. Labansat*, 94 F.3d 527, 531 (9th Cir. 1996) ("general instructions on the jury's duty to determine the credibility of witnesses" were "fully adequate" to instruct jury on defendant's mistaken identity theory); *United States v. Ofarril*, 779 F.2d 791, 792 (2d Cir. 1985) (same).

Defendants have requested time-tested instruction on witness credibility.  Defendants' Requested Instruction No. 34 (based on *Sand Instr.—Civ.*, Instr. 76-1).  That instruction adequately addresses the witnesses' ability to recall past events, instructing the jurors that they "should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory."  *Sand Instr.—Civ.*, Instr. 76-1.

Any potential insufficiency in the identification may be addressed by defense counsel at

trial by cross-examination, as well as by the expert testimony defendants plan to elicit. *Labansat*, 94 F.3d at 530 ("Any weakness in eyewitness identification testimony can ordinarily be revealed by counsel's careful cross-examination of the eyewitness.").

Even in Circuits that require a detailed eyewitness identification instruction, such an instruction is compelled only where the evidence in the case "strongly suggests the 'likelihood of irreparable misidentification.'" *United States v. Brooks*, 928 F.2d 1403, 1407 (4th Cir. 1991). The evidence in this case suggests no such circumstances. Indeed, defendants were afforded the opportunity to cross-examine Ms. Guetta in a deposition after she made the identification, and they will have an opportunity at trial to make arguments and submit expert testimony regarding identifications. Most tellingly, the strength of Ms. Guetta's identification is supported by the fact that she was previously shown photographs of another suspect, whom she rejected as the shooter she remembered. Defendants' own expert admitted during his deposition that his analysis failed to consider Ms. Guetta's earlier rejection of another possible suspect, even though such negative identification attempts are "quite important." Wells Dep. 58, 199-200.

However, if the Court does decide that a specific charge on eyewitness testimony is required, it should use Instruction 7-20 from *Sand Instr.—Crim.*, ¶ 7-20, based on the charge upheld in *United States v. Kwong*, 69 F.3d 663 (2d Cir. 1995). This charge is simpler than defendants' proposed instruction, and would be less prejudicial.

Plaintiffs also object to the inclusion of any reference to "clear and convincing" in any charge, including this request.

**Defendants' Requested Instruction 39:  Liability for Acts of International Terrorism**

Plaintiffs object to this request, which reads:

> To find the defendant liable under the ATA, you must find:
>
> First that the person injured or killed was a national of the United States.
>
> Second that the plaintiff was "injured in his or her person, property, or business"; and
>
> Third, that the defendant committed an "act of international terrorism"; and
>
> Fourth, that the defendant's act of international terrorism was the "but for" cause of the plaintiff's injuries; and
>
> Fifth, that the defendant's act of international terrorism was the proximate cause of the plaintiff's injuries; and
>
> Sixth, that the defendant engaged in deliberate wrongdoing; and
>
> Seventh, that the defendant intended that Americans would be injured as a result of its actions.

*First*, plaintiffs object to instructing the jury that it must find that the person "injured or killed was a national of the United States."  There is no dispute as to which plaintiffs are and are not nationals of the United States or heirs of nationals of the United States, so the nationality of the plaintiffs asserting claims under the ATA is not an issue for the jury.  *See* Plaintiffs' Objection to Defendants' Requested Instruction No. 40, *infra*.

*Second*, plaintiffs object to instructing the jury that "but for" cause and proximate cause are separate elements, because they are not separate elements.  *See, e.g.*, *Sand Instr.—Civ.*, Instr. 79-3 (elements of the offense in a price-fixing case), 80-3 (same, in a monopolization case), 84-3 (same, in a civil RICO action).

*Third*, plaintiffs object to instructing the jury that "deliberate wrongdoing" is an element. To be sure, courts have used "deliberate wrongdoing" as a shorthand for knowing, intentional, or

reckless conduct.  But using this shorthand as a substitute for knowing, intentional, or reckless conduct would improperly suggest to the jury that a reckless or knowing state of mind is insufficient for liability to attach.  We are not aware of any jury instruction on any topic instructing the jury that a plaintiff must prove "deliberate indifference," let alone such an instruction where recklessness suffices to meet the applicable legal standard.

*Fourth*, plaintiffs object to instructing the jury that intent to injure Americans is an element.  Defendants do not have a single case supporting this request, as discussed below in response to Defendants' Requested Instruction 46.

Plaintiffs respectfully request that the Court use Plaintiffs' Proposed Instruction No. 19, which accurately reflects the legal standards.

## Defendants' Requested Instruction 40:  U.S. National

Plaintiffs object to this request.  There is no dispute that certain plaintiffs are not U.S. Nationals, namely:  Varda Guetta (56.1 Response ¶ 67); Revital Bauer (*id.* ¶ 264); Shaul Mandelkorn (*id.* ¶ 319); Nurit Mandelkorn (*id.* ¶ 320); and Scott Goldberg (*id.* ¶ 473).  These five plaintiffs are not pursuing ATA claims, though Mr. Goldberg's wife and children are themselves U.S. Nationals bringing claims under the ATA.

There is no dispute that the remaining plaintiffs are U.S. Nationals or (in the case of Nevenka Gritz) heirs of a U.S. National.

Therefore, there is no dispute concerning the nationality of any plaintiffs for the jury to resolve.  No charge should be given on a matter "if it is not supported by the evidence."  9C Charles A. Wright, *et al.*, *Fed. Prac. & Proc.: Civ.* § 2556 & n.29 (3d ed. 2014 update).

**Defendants' Requested Instruction 41:**
**Injured in His or Her Person, Property or Business**

Plaintiffs object to this request.  Defendants ask the Court to instruct that jury that an injury to the "person, property or business" of any plaintiff, under § 2333(a), cannot include any "emotional injury."  That is an incorrect statement of law.  "'Any invasion of a personal right, including mental suffering' in addition to physical or financial suffering" is compensable under § 2333(a).  *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 43 (D.D.C. 2010).  "[E]very court that has construed § 2333(a) has reached the same conclusion."  *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009).  That is because "Congress intended for the ATA to have a broad scope . . . [and] courts have interpreted the ATA as permitting claims by U.S. nationals for nonphysical injuries they suffered as a result of a terrorist attack on their non-citizen family."  *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1338 (D. Utah 2006).

Defendants' instruction would thus exclude meritorious claims, including those of family members whose loved ones were murdered.  Such an instruction would severely undermine the ATA's remedial purpose of providing broad recovery to the victims of international terrorism, would prejudice plaintiffs with meritorious claims, and would contradict the decisions of every court to have considered this issue.

**<u>Defendants' Requested Instruction 42:  International Terrorism</u>**

Plaintiffs object to the paragraph of this request that begins "*Fourth*," in which defendants ask the Court to instruct the jury that the activities must have occurred "primarily outside the territorial jurisdiction of the United States."  As with the "U.S. Nationals" request, this asks the jury to decide something that is not in dispute.  Such instructions are unwarranted. *See* 9C Charles A. Wright, *et al.*, *Fed. Prac. & Proc.: Civ.* § 2556 & n.29 (3d ed. 2014 update).

**Defendants' Requested Instructions 43, 44, and 45**
**Causation—Generally, "But For" Cause and Proximate Cause**

Plaintiffs object to defendants' Requested Instructions Nos. 43, 44, and 45. To plaintiffs'

knowledge, none of the three requested instructions has ever been given to any jury. Instead,

they appear to have been made up from (a) a misreading of the Second Circuit's *Rothstein*

decision (discussed below), (b) Section 433 of the *Restatement (Second) of Torts* (1965),

(c) commentary to Section 433, (d) incorrect legalisms about "intervening cause" that do not

appear to have a source in any reported case or treatise, and (e) RICO instructions on causation.

"Jury instructions, however, are not abstract treatises on legal issues; they are instead tailored

instructions that state the applicable law in a specific case to aid a jury in reaching its verdict."

*United States v. Davis*, 724 F.3d 949, 955 (7th Cir. 2013). The mere fact that these instructions

are prolix, slanted, partisan, and argumentative is reason alone not to give them. *See United*

*States v. Maxwell*, 579 F.3d 1282, 1304 (11th Cir. 2009); *United States v. Mata*, 491 F.3d 237,

241 (5th Cir. 2007); *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 784 (9th

Cir. 2006).

In contrast, plaintiffs based their proposed causation instruction (Proposed Instruction

No. 24) on Judge Sand's pattern causation instruction for antitrust cases, which succinctly covers

both "but for" causation and proximate cause. *Sand Instr.—Civ.*, Instr. 79-24. Plaintiffs chose

that instruction because the "by reason of" language in the ATA is modeled on the identical

language in § 4 of the Clayton Act and § 7 of the Sherman Act. *Rothstein v. UBS AG*, 708 F.3d

82, 95 (2d Cir. 2013).

Departing from the time-tested pattern instruction as defendants request would prejudice

plaintiffs for two reasons. *First*, in defendants' Requested Instruction Nos. 43 and 44,

defendants ask the Court to recite (and repeat) an incorrect "but for" standard.  Under Second

Circuit law, an ATA defendant is liable "'to those with respect to whom his *acts were a*

*substantial factor in the sequence of responsible causation* and whose injury was reasonably

foreseeable or anticipated as a natural consequence'"  *Rothstein*, 708 F.3d at 95 (emphasis in

original) (quoting *Lerner v. Fleet Bank*, *N.A.*, 318 F.3d 113, 123 (2d Cir. 2003)); *accord*

*Restatement (Second) Torts* § 431 (1965) (legal cause exists where the defendant's "conduct is a

substantial factor in bringing about the harm"); *id.*, § 434(a) ("It is the function of the jury to

determine, in any case in which it may reasonably differ on the issue, whether the defendant's

conduct has been a substantial factor in causing the harm to the plaintiff").  Plaintiffs' Proposed

Instruction No. 24 closely tracks the Second Circuit's standard (as does Judge Sand's Instruction

79-24.  Further, an instruction based on defendants Requested Instruction Nos. 43 and 44 would

not inform the jury of important legal standards included in Judge Sand's instruction:

- "there may…be a number of causes for a particular injury;"

- plaintiff "does not have to prove that the unlawful activity that the defendants
  allegedly engaged in was the sole cause of its injury;"

- "plaintiff meets its burden if it shows that the defendants' unlawful acts
  substantially contributed to its injury, even though other factors may also have
  contributed significantly;" and

- "plaintiff is not required to show that the defendants' acts were a greater cause of
  the injury than other factors."

*Sand Instr.—Civ.,* Instr. 79-24.

*Second*, in defendants' Requested Instruction No. 45, defendants ask the Court to recite

an incorrect proximate cause standard.  They ask the Court to instruct the jury that the

"defendant's acts may not be a substantial factor in causing an attack that injured a plaintiff if other factors had a predominant effect and the contribution of the defendant's acts was insignificant," that defendants should not be held responsible if "other factors superseded or intervened in the chain of events leading to the attacks," that defendants should not be held liable if "an intervening cause, such as wrongful conduct by others, broke the causal link between the defendant's acts and the harm to the plaintiff," and that the jury should be on the lookout for whether "the effect of the defendant's acts may [have] become so attenuated as to be insignificant and unsubstantial as compared to the aggregate of the other factors which have contributed." These proposed instructions misstate Second Circuit law. "If the intervening act was foreseeable, it does not excuse the original actor that the intervening act was 'reckless,' or intentional, or even intentional and criminal." *Woodling v. Garrett Corp.*, 813 F.2d 543, 556 (2d Cir. 1987); *Warner v. Orange Cnty. Dep't of Probation*, 115 F.3d 1068, 1071 n.2 (2d Cir. 1997) (a defendant "will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have 'directly' caused the harm."); *Stanford v. Kuwait Airways Corp.*, 89 F.3d 117, 127 (2d Cir. 1996) ("The causative link is not broken by the negligent conduct of a third person when such conduct is normal or foreseeable under the circumstances."); *accord Restatement (Second) Torts* § 439 (1965) ("If the effects of the actor's negligent [or intentional] conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious, or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.").

*Finally,* if any intervening cause charge is given—and none should be—it should be modeled on the one approved by the Second Circuit in *Vasina v. Grumman Corp.*, 644 F.2d 112,

115-16 (2d Cir. 1981):

> There may be more than one proximate cause of an accident.
> Grumman has contended that the negligence of the [non-party] was
> the sole proximate cause of the crash.

> If you find that the [non-party's] negligence was the sole
> proximate cause, then plaintiff may not recover.  However, if you
> find that both Grumman and the [non-party], by separate and
> independent acts of negligence proximately caused or were
> substantial factors in proximately causing the death of Lieutenant
> Vasina, then Grumman is responsible for the whole injury even
> though Grumman alone might not have been solely responsible for
> the death of Lieutenant Vasina and even though its acts are not
> equal in degree to the negligence of the [non-party].

> In other words, from the standpoint of proximate cause, it is no
> defense to Grumman merely that the negligence of the [non-party]
> contributed to the death of Lieutenant Vasina.

**<u>Defendants' Requested Instruction 46:  Required Mental State of the Defendant</u>**

Plaintiffs object to this request, which reads:

> In addition to the other requirements under the Anti-Terrorism Act,
> the plaintiff must prove that the defendant acted with the necessary
> mental state.  Thus, the plaintiff must prove that the alleged act of
> international terrorism that caused his or her injuries was the
> product of the defendant's deliberate wrongdoing.  Specifically,
> the plaintiff must prove that the defendant engaged in an act of
> international terrorism intending that Americans would be injured.

The requested charge is improper because:  (1) it recites an incorrect state of mind

requirement under § 2333(a); (2) it incorrectly requires plaintiffs to establish state of mind as to a

jurisdictional fact; and (3) it requires a jury finding where none is required.

*First*, plaintiffs object to any charge instructing the jury that a plaintiff must prove

"deliberate wrongdoing."  Defendants do not cite a single case instructing any jury in any court

that a plaintiff must prove "deliberate wrongdoing," and our research has revealed none.

Defendants have constructed their heightened intent standard based upon a quote from *Boim*

(which is repeated in the other decisions cited by defendants) that uses the term "deliberate

wrongdoing" as a shorthand to describe the required mental state of "intentional, knowing or

reckless" conduct.  But *Boim*—and each of the other decisions cited by defendants—holds that a

showing of reckless or knowing misconduct is sufficient.[3]  Plaintiffs' Proposed Instruction

---

[3] *See Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 428-29 (E.D.N.Y. 2013) ("Plaintiffs
must show that Defendant knew or was deliberately indifferent to the fact that CBSP was
financially supporting terrorist organizations, meaning that Defendant knew there was a
substantial probability that Defendant was supporting terrorists ..."); *Kaplan v. Al Jazeera*, 2011
WL 2314783, at *6 (S.D.N.Y. June 7, 2011) (plaintiff failed to plead facts sufficient to show that
defendants acted with knowledge that their actions "would in all likelihood assist a [terrorist]
organization in accomplishing its violent goals"); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410,
428 (E.D.N.Y. 2009) ("Plaintiffs need not show that the defendant in fact knew its actions would
further terrorism.  Rather, it is sufficient to show that it knew the entity had been designated as a
terrorist organization, and deliberately disregarded that fact while continuing to provide financial
services to the organization with knowledge that the services would in all likelihood assist the
organization in accomplishing its goals."); *Boim v. Holy Land Found. for Relief & Dev.*, 549
F.3d 685, 694 (7th Cir. 2008) (analyzing tort and criminal concepts of "recklessness" for

Footnote continued on next page

No. 22 correctly reflects this standard. Instructing the jury that plaintiffs must establish "deliberate wrongdoing" is confusing, as it suggests that reckless or knowing conduct is insufficient—and that is plainly wrong.

*Second*, plaintiffs object to any charge instructing the jury that plaintiffs must prove that a defendant acted "intending that Americans would be injured." This Court has already rejected that contention: "The ATA bestows subject matter jurisdiction upon the federal courts regardless of whether or not the victims were specifically targeted because of their United States citizenship." Decision & Order (Sept. 30, 2008) at 3-4 [DE 58]. Contrary to defendants' assertions, the nationality of the plaintiff or his or her decedent is properly understood as a *jurisdictional* prerequisite, rather than as an element of the claim. Thus, § 2333(a) is entitled "action and jurisdiction" and creates a right of action for U.S. nationals or their survivors. Injecting a required "intent to injure Americans" would contradict the statute's language, which permits Americans to bring ATA actions for terrorist attacks against their non-American family members. *See, e.g., Biton v. Palestinian Auth.*, 310 F. Supp. 2d 172, 181-82 (D.D.C. 2004) (American entitled to maintain ATA action for terrorist murder of her non-American spouse). Thus, since ATA victims need not be Americans, it makes no sense to read a citizenship-based state-of-mind element into the statute.

Statutory jurisdictional prerequisites do not impose additional scienter requirements. *See United States v. Blackmon*, 839 F.2d 900, 907 (2d Cir. 1988) (no *mens rea* requirement as to "interstate character" of communication under federal wire fraud statute); *SEC v. Straub*, 921 F.

---

Footnote continued from previous page

purposes of a violation of Section 2339A, and noting that a fact-finder's inference of knowledge of a risk concerns the probability of harm).

Supp. 2d 244, 263 (S.D.N.Y. 2013) (under Foreign Corrupt Practices Act, SEC was not required to prove that defendant had intentionally made use of interstate commerce).

   *Third*, no instruction is appropriate on intent to injure Americans because of the doctrine of transferred intent.  Under that doctrine, "if an actor has the requisite intent to cause harm to one person, that intent will be 'transferred' if the actor harms another person, even if that other person is unforeseeable."  *Restatement (Third) of Torts: Liability for Physical & Emotional Harm* § 33 cmt. c (2010).[4]  The doctrine applies in tort cases, including those under the ATA. *See Gill*, 893 F. Supp. 2d at 481-82 ("The concept of 'transferred intent' may have an impact on the developing section 2333(a) tort, so that an intent to help Hamas in shooting an Israeli citizen could be transformed into an intent to assist in shooting Americans"); *Universal Calvary Church v. City of New York*, 2000 WL 1538019, at *46 (S.D.N.Y. Oct. 17, 2000) ("The doctrine of transferred intent applies to the torts of assault and battery."); *Am. Ins. Co. v. Saulnier*, 242 F. Supp. 257, 261 (D. Conn. 1965).

   Without waiving the foregoing, if any instruction is to be given, it should be:

> The wrongful conduct need not have been directed at U.S.
> Nationals; it is sufficient if the conduct was directed at another

---

[4] The doctrine of transferred intent "has common law roots that precede the American Revolution.  It is supported by a substantial body of American cases….  The whole rule and especially that aspect of the rule which permits recovery by a person who was not the target of the defendant embody a strong social policy including obedience to the criminal law by imposing an absolute civil liability to anyone who is physically injured as a result of an intentional harmful contact or a threat thereof directed either at him or a third person."  *Manning v. Grimsley*, 643 F.2d 20, 22 (1st Cir. 1981).  "The doctrine has been recognized by the Supreme Court, *see Yates v. Evatt*, 500 U.S. 391, 409 (1991), and by [the Second Circuit], *see United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992)."  *United States v. Rahman*, 189 F.3d 88, 140-41 (2d Cir. 1999) (approving jury instruction on transferred intent); *United States v. Concepcion*, 983 F.2d at 381 ("[W]e reject Concepcion's contention that the government was required to prove that he set out to kill Gines in particular.  It was sufficient for the government to prove that Concepcion, as a member of a RICO enterprise engaged in racketeering activity, set out to commit a proscribed act of violence in order to maintain or increase his position in the enterprise, and that, in the course of so doing, he committed that act against a person who got in his way.").

person and as a consequence a U.S. National was injured.

This instruction is adapted from a Maryland Pattern Jury Instruction.  *See Hendrix v. Burns*, 43

A.3d 415, 429-30 (Md. Ct. App. 2012).

**Defendants' Requested Instruction 47:**
**Governmental Organization's Officials**

Plaintiffs object to this request, which reads:

> A foreign governmental organization is a legal entity that may act
> only through its officials. The plaintiff must prove by clear and
> convincing evidence that each of the elements for liability that I
> explained to you in these instructions was committed or
> specifically approved by an official of the defendant. It is not
> enough if the actions and knowledge of a lower-level employee
> satisfy the elements required for liability that I explained. Because
> of the seriousness of the alleged misconduct by the defendant, it is
> the actions and state-of-mind of the defendant's officials that must
> be proved by clear and convincing evidence.
>
> In addition, the plaintiff must also prove by clear and convincing
> evidence the following two elements:
>
>> First, that each of the acts committed or specifically
>> approved by the official was within the course and scope of
>> the employment or agency given to the official by the
>> defendant.
>>
>> Second, that the official committed or specifically approved
>> each of the essential elements of liability with the intent to
>> benefit the defendant.
>
> To establish that an act was committed or omitted within the
> course or scope of employment, the evidence must show that the
> act or omission related directly to the general duties that this
> official was expected by the defendant to perform.
>
> An official is not acting within the course or scope of his or her
> employment, however if that person performs an act that the
> defendant has, in good faith, forbidden its officials from
> performing. A defendant organization like an individual defendant
> may not be held responsible for acts that it tries to prevent.

This request is plainly inconsistent with the traditional tort law of *respondeat superior*.

Every court to have considered the issue has determined that *respondeat superior* applies to

claims under the ATA. *See Linde v. Arab Bank*, 04 Civ. 2799 (NG), Hearing Tr. (DE 943) at 71-

72 (E.D.N.Y. Apr. 24, 2013) ("I see no reason that traditional tort principles do not apply here.

There's so much in the history of the ATA that tells us that we are to apply traditional tort

principles and of course those principles include that entity is liable for the acts of agents who act

with apparent authority."); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 558 (E.D.N.Y. 2012)

("Plaintiff is correct in contending that the ATA provides for corporate liability on a theory of

*respondeat superior*."); *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 650 (S.D. Tex. 2011)

(plaintiffs' "allegations [were] sufficient to survive a motion to dismiss on the *respondeat*

*superior* claim" under the ATA); *see also Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118,

148 (D.C. Cir. 2011) (concurring opinion) ("[r]espondeat superior* liability is an elementary

principle of tort law and must therefore inform our interpretation of the federal torts created in

the Anti-Terrorism Act.  Thus, the Palestinian Authority is liable for the acts its employees

committed within the scope of their employment.").

      The proposed instruction directly contravenes *respondeat superior* law.  Defendants

would have the Court tell the jury that "[i]t is not enough if the actions and knowledge of a

lower-level employee satisfy the elements," but the rule in the Second Circuit is that employers

are responsible for the acts of *all* employees—even drunken sailors—"which arise 'out of and in

the course of'" employment.  *Ira S. Bushey & Sons v. United States*, 398 F.2d 167, 171-72 (2d

Cir. 1968).  Defendants would have the Court tell the jury that a senior "official" had to have had

"the intent to benefit the defendant," and that the act had to have "related directly to the general

duties that this official was expected by the defendant," but the rule of *respondeat superior* in the

Second Circuit is that "'the employer should be liable for those faults that may be fairly regarded

as risks of his business, whether they are committed in furthering it or not.'"  *Taber v. Maine*, 67

F.3d 1029, 1037 (2d Cir. 1995).  Defendants would have the Court tell the jury that a defendant

"may not be held responsible for acts that it tries to prevent," but the rule in the Second Circuit is

that even a "compliance program, however extensive, does not immunize the corporation from

liability when its employees, acting within the scope of their authority, fail to comply with the

law." *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 660 (2d Cir. 1989). Defendants would have the Court tell the jury that an act is not within the course of employment if the person "performs an act that the defendant has, in good faith, forbidden its officials from performing," but the rule in the Second Circuit is that even "if conduct by the employees and agents of the defendants was unauthorized at the time, the defendants may still be liable for those acts if the defendants ratified, adopted or approved the wrongful conduct after it occurred." Charge read in *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, No. 08-CV-1659 (BMC) (E.D.N.Y. 2008) (Docket Entry 58, at 92-95), and approved in *Chowdhury v. Wordltel Bangladesh Holding, Ltd.*, 746 F.3d 42, 53 n.11 (2d Cir. 2014); *Restatement (Third) of Agency* §§ 4.03 (2006) (ratification), 4.01 comment (d) (failure to terminate, promotion, or celebration of an employee may constitute ratification).

Defendants do not cite a single case—under any statute or common-law standard—in which a jury was given any instruction even remotely similar to the instruction they propose. Instead, defendants appear to have crafted it based on a series of Rule 12(b)(6) decisions under the civil RICO statute. But the ATA is different from RICO. Unlike the ATA, RICO's language requires "two separate entities, a 'person' and a distinct 'enterprise.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160 (2001). The cases restricting *respondeat superior* in civil RICO cases arise from this "distinctness requirement." *See Moses v. Martin*, 360 F. Supp. 2d 533, 551 (S.D.N.Y. 2004) ("vicarious liability should not be used as an end-run around the distinctness requirement. Accordingly, a corporation may not be held vicariously liable under section 1962(c) for the acts of its employees if that corporation is also named as the RICO enterprise.").

Thus, members of this Court who have limited *respondeat superior* in the context of civil

RICO have done so observing that RICO is unique in that "the language of RICO is clearly aimed at individual 'racketeers' infiltrating legitimate business." *USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 329 n.3 (S.D.N.Y. 2003); *Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.*, No. 89 Civ. 0464 (CSH), 1992 WL 276565, at *7 (S.D.N.Y. Sept. 29, 1992) ("Essentially, vicarious liability has been held to be at odds with Congressional intent in enacting RICO since the statute was designed to protect corporations from criminal infiltration rather than hold them liable"), *aff'd*, 182 F.3d 901 (2d Cir. 1999); *Rush v. Oppenheimer & Co.*, 628 F. Supp. 1188, 1194-95 (S.D.N.Y. 1985) ("[s]uperimposing vicarious liability doctrines on the RICO criminality requirements would in this context permit the 'enterprise' which is the conduit for these activities, to become the defendant by way of imputation").  No court has imported this RICO-specific issue into an ATA case, and doing so would make no sense, as the ATA has no "distinctness requirement" and is concerned with terrorism, not infiltration.

Plaintiffs also object to the inclusion of any reference to "clear and convincing" in any charge, including this request.

**Defendants' Requested Instruction 48:  Act of War**

Plaintiffs object to this request.  This Court has already rejected defendants' "act of war" defense.  Decision and Order (Sept. 30, 2008) at 10-11 [DE 58].  As this Court explained, as a matter of law, "violent attacks upon non-combatant civilians, who were allegedly simply going about their everyday lives, do not constitute acts of war for purposes of the ATA."  *Id.*  The Court held that "[t]here has been no showing that the situs of the attacks were in any combat or militarized zone, or were otherwise targeted at military or governmental personnel or interests." *Id.* at 10; *accord Biton v. Palestinian Interim Self-Gov't Auth.*, 412 F. Supp. 2d 1,10-11 (D.D.C. 2005) (holding, as a matter of law, that an attack on civilians did not occur in the course of an armed conflict);  *Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 166-67 (D.D.C. 2006) (same).

**Defendants' Requested Instruction 49:**
**Lack of Capacity—Foreign Governmental Organization**

Plaintiffs object to this request.  Defendants lost on this defense as a matter of law because "Palestine" "does not meet the definition of a 'state,' under United States and international law, and hence does not constitute a foreign state."  *Sokolow v. PLO*, 583 F. Supp. 2d 451, 457-58 (S.D.N.Y. 2008).  This Court's decision comported with the uniform holdings of every court to address the issue, starting with the Second Circuit in *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 47 (2d Cir. 1991).[5]

In *Klinghoffer*, the Second Circuit expressly rejected the *exact* defense defendants would like to present to the jury here—that as agencies of an "unrecognized foreign state," they "lack capacity":

> The PLO claims that, because the United States has not extended it formal diplomatic recognition, it lacks the capacity to be sued in United States courts.  This claim is without merit.  While unrecognized regimes are generally precluded from appearing as plaintiffs in an official capacity without the Executive Branch's consent, there is no bar to suit where an unrecognized regime is brought into court as a defendant.  Accordingly, the fact that the United States has not recognized the PLO does not provide a basis for immunity.

*Klinghoffer*, 937 F.2d at 48-49; *accord French v. Banco Nacional de Cuba*, 23 N.Y.2d 46, 51 (1968) (Fuld, C.J.) (holding that an "agency of the Cuban government" (which was not recognized by the United States) could be sued in the New York courts).

---

[5] *E.g.*, *Ungar v. PLO*, 402 F.3d 274, 292 (1st Cir. 2005) ("defendants have not carried their burden of showing that Palestine satisfied the requirements for statehood under the applicable principles of international law at any point in time"); *Ali Shafi v. Palestinian Auth.*, 686 F. Supp. 2d 23, 29 (D.D.C. 2010) ("the PA and the PLO are non-state actors"), *aff'd*, 642 F.3d 1088 (D.C. Cir. 2011); *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 181 (D.D.C. 2004) (refusing "to declare that Palestine is now a sovereign state among nations"); *Knox v. PLO*, 306 F. Supp. 2d 424, 429-30 (S.D.N.Y. 2004) (PA and PLO failed to establish that Palestine is a state).

**Defendants' Requested Instruction 50:**
**Lack of Capacity—Unincorporated Association**

Plaintiffs object to this request. In response to plaintiffs' motion for summary judgment, defendants affirmatively conceded that they "are not individuals, corporations, or unincorporated associations." Defendants' Opposition to Motion for Summary Judgment (6/6/14), at 12 [DE 523]. The burden was on defendants to come forward with "evidence in the record that's been developed during this litigation, that they are in fact an unincorporated association." Tr. (8/19/12), at 78 [DE 252]. Defendants' admission precludes asking the jury to determine whether they are unincorporated associations.

**<u>Defendants' Requested Instruction 51:  Consider Damages Only If Necessary</u>**

Plaintiffs do not object to an instruction based on Judge Sand's Instruction 77-1.  *See* Plaintiffs' Proposed Instruction No. 32.  However, plaintiffs object to the inclusion of any reference to "clear and convincing" in any charge, including this request.

**Defendants' Requested Instruction 52:**
**Damages Must Have Been Caused by the Defendant**

Plaintiffs object to this request because it is entirely duplicative of the instructions contained in Judge Sand's Instruction 77-3 (requested by defendants in Requested Instruction No. 54 and by plaintiffs in Proposed Instruction No. 33).

Plaintiffs also object to defendants' request insofar as it references the "clear and convincing" burden of proof.

**<u>Defendants' Requested Instruction 53:  Multiple Claims—Multiple Defendants</u>**

Plaintiffs object to defendants' omission from this instruction of a sentence contained in

Judge Sand's instruction:  "With respect to punitive damages, you may make separate awards on

each claim that is established."

Thus, the full charge should read as follows:

> I have two more cautionary instructions before I define the types of
> damages you may award, if you find that the plaintiff has proved
> liability according to the standards I have enumerated.
>
> First, you should not award compensatory damages more than once
> for the same injury.  For example, if a plaintiff were to prevail on
> two claims and establish a one dollar injury, you could not award
> him one dollar compensatory damages on each claim--he is only
> entitled to be made whole again, not to recover more than he lost.
> Of course, if different injuries are attributed to the separate claims,
> then you must compensate him fully for all of the injuries.
>
> With respect to punitive damages, you may make separate awards
> on each claim that is established.
>
> Second, you must be careful to impose any damages that you may
> award on a claim solely upon the defendant or defendants who you
> find to be liable on that claim.  Although there are (*e.g.*, four)
> defendants in this case, it does not follow that if one is liable, all or
> any one of the others are liable as well.  Each defendant is entitled
> to fair, separate and individual consideration of the case without
> regard to your decision as to the other defendants.  If you find that
> only one defendant is responsible for a particular injury, then you
> must impose damages for that injury only upon that defendant.
>
> Nevertheless, you might find that more than one defendant is liable
> for a particular injury.  If two or more persons unite in an
> intentional act that violates another person's right, then all of those
> persons are jointly liable for the acts of each of them; the law does
> not require the injured party to establish how much of the injury
> was done by each particular defendant that you find liable.  Thus,
> if you find that the defendants who you find to be liable acted
> jointly, then you may treat them jointly for purposes of deciding
> damages.  If you decide that two or more (both) of the defendants
> are jointly liable on a particular claim, then you may simply
> determine the overall amount of damages for which they are liable,
> without breaking that figure down into individual percentages.

*See Sand Instr.—Civ.*, Instr. 77-2.

**<u>Defendants' Requested Instruction 54:  Compensatory Damages</u>**

Plaintiffs object to this request's failure to faithfully include all of Judge Sand's

Instruction 77-3, improperly omitting the text:  "Furthermore, compensatory damages are not

limited merely to expenses that plaintiff may have borne.  A prevailing plaintiff is entitled to

compensatory damages for the physical injury, pain and suffering, mental anguish, shock and

discomfort that he or she has suffered because of a defendant's conduct."

Plaintiffs also object to the fourth paragraph of this request, which reads,

> You should consider the following elements of damage to the
> extent you find them proved by clear and convincing evidence, and
> no others:
>
> (1) The present value of the plaintiff's economic loss; and
>
> (2) The plaintiff's physical or emotional pain and mental anguish.

*First*, this portion of defendants' request improperly limits damages ("and no others") to

economic loss and physical and emotional pain, when certain plaintiffs are entitled to other

damages, such as wrongful death damages.

*Second*, this portion of defendants' request improperly incorporates the "clear and

convincing" standard.

*Third*, this portion of defendants' request gives the jury inadequate guidance on the

calculation of past and future damages.  Plaintiffs respectfully request that the Court use

Plaintiff's Proposed Instruction No. 34, based on Judge Sand's Instruction 77-4.

Plaintiffs also object to the inclusion of any reference to "clear and convincing" in any

charge, including this request.

### Defendants' Requested Instruction 55:  Treble Damages

Plaintiffs object to any reference to treble damages in the Court's instructions.

In *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 46 (2d Cir. 1994), the Second Circuit stated: "courts have uniformly concluded that mentioning treble damages and attorneys' fees to the jury is improper."  Clarifying the law in the Second Circuit, the court held:  "We…now remove any doubts within our own Circuit that district courts should not as a general matter permit reference before the jury to the fact that any eventual award will be trebled under the statute or that attorneys fees will be awarded to a prevailing party."  *Id.* at 45.  In short, treble damages provisions are "irrelevant to the jury questions of liability and damages" and reference to them risks "confus[ing] or prejudic[ing] [the] jury into reducing its eventual award, thus frustrating Congress's goal of deterring improper conduct by assessing treble damages."  *Id.*  Thus, in *HBE*, the Second Circuit affirmed the district court's decision to forbid defense counsel from making *any* reference to RICO's treble damages provision in front of the jury.  *Id.*

One treatise, on which defendants rely extensively, goes so far as to offer a model instruction telling the jury "Your concern is only with determining the actual damages.  You are not to concern yourself with the judgment to be entered by the court in the case."  3A K. O'Malley, *et al.*, *Fed. Jury Prac. & Instrs.* § 150:93 (6th ed. 2011).  That treatise explains that "the weight of authority is to the effect that the jury should not be told of the trebling requirement but should simply be told to determine the actual damages to be awarded."  *Id.*

### Defendants' Requested Instruction 56:  Nominal Damages

Plaintiffs object to any reference to nominal damages in the Court's instructions.  As Judge Sand cautions, "when it is clear that the plaintiff has suffered actual damage, a nominal damage charge should not be given." *Sand Instr.—Civ.,* ¶ 77.01, cmt to Instr. 77-6.  *See Wheatley v. Beetar*, 637 F.2d 863, 865 (2d Cir. 1980) (in light of evidence of beating of plaintiff, "[i]t was error to charge the jury that an award of nominal damages was permissible"); *Atkins v. City of New York*, 143 F.3d 100, 103 (2d Cir. 1998) ("If it is clear from the undisputed evidence, however, that the plaintiff's injuries were caused by the use of excessive force, then the jury's failure to award some compensatory damages should be set aside and a new trial ordered."); *Lexington Prods. Ltd. v. B.D. Commc'ns, Inc.*, 677 F.2d 251, 254 (2d Cir. 1982) ("Where the evidence shows such a clear and definite measure of damages, an award of nominal damages cannot stand.")

:

## **Defendants' Requested Instruction 57:  Mitigation of Damages**

No objection.

**<u>Defendants' Requested Instruction 58:  Duty to Deliberate, Unanimous Verdict</u>**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(x).

**<u>Defendants' Requested Instruction 59:  Effect of Instruction as to Damages</u>**

Plaintiffs object to this request because it is entirely duplicative of the instructions contained in Judge Sand's Instruction 77-1 (requested by defendants in Request No. 51 and by plaintiffs in Proposed Instruction No. 32).

## **Defendants' Requested Instruction 60:  Selection of Foreperson**

No objection.

**Defendants' Requested Instruction 61:**
**Right to See Exhibits and Hear Testimony; Communications with Court**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(w).

**Defendants' Requested Instruction 62:  Special Verdict**

Plaintiffs object to the use of a special verdict.  This Court has "full, uncontrolled discretion" on whether to use a special verdict, and the Second Circuit has long been of the view that "we cannot hold that a district judge errs when, as here, for any reason or no reason whatever, he refuses to demand a special verdict."  *Skidmore v. Baltimore & Ohio R. Co.*, 167 F.2d 54, 66-67 (2d Cir. 1948) (Frank, J.).  *Skidmore* is still good law.  *Ling Nan Zheng v. Liberty Apparel Co.*, 617 F.3d 182, 186 (2d Cir. 2010); *Kirsch v. Fleet Street*, *Ltd.*, 148 F.3d 149, 171 (2d 1998); *Demauro v. Central Gulf SS Corp.*, 514 F.2d 403, 405 (2d 1975).

To be sure, special verdicts have their proponents—particularly those who may distrust the jury.  But even the proponents of special verdicts agree that their use is "'exceedingly treacherous.'"  9B C. Wright, *et al.*, *Federal Practice & Procedure: Civil* § 2505 (3d ed. 2014 update).  Indeed, an unduly confusing special verdict form requires a new trial.  *See Romano v. Howarth*, 998 F.2d 101, 106-07 (2d Cir. 1993).  For this reason, the Court should reject defendant's request.

Further, defendants have forfeited their right to propose a special verdict form, in view of the Court's firm deadline for proposing jury instructions by August 8 and indeed presenting *all* pretrial matters so as to be fully submitted by September 1.  It is well within the Court's discretion to refuse a special verdict request that is made "too late."  *United States v. Aiello*, 864 F.2d 257, 264-65 (2d Cir. 1988).

**<u>Defendants' Requested Instruction 63:  Return of Verdict</u>**

No objection.  *See* Plaintiffs' Proposed Instruction No. 1(y).

## CONCLUSION

For the foregoing reasons, the Court should sustain plaintiffs' objections to defendants'

requests to charge.

Dated: New York, New York
      August 29, 2014

                  **ARNOLD & PORTER LLP**

                  By:_____
                     Kent A. Yalowitz
                       *KENT.YALOWITZ@APORTER.COM*
                     Philip W. Horton
                       *PHILIP.HORTON@APORTER.COM*
                     Sara K. Pildis
                       *SARA.PILDIS@APORTER.COM*
                     Ken L. Hashimoto
                       *KEN.HASHIMOTO@APORTER.COM*
                     Carmela T. Romeo
                       *CARMELA.ROMEO@APORTER.COM*
                     Tal R. Machnes
                       *TAL.MACHNES@APORTER.COM*

                  399 Park Avenue
                  New York, New York  10022
                  (212) 715-1000