# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARK I. SOKOLOW, *et al.*,    ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | |
| v.    ) | Civil Action No. 04cv397 (GBD) (RLE) |
| ) | |
| THE PALESTINE LIBERATION ) | |
| ORGANIZATION, *et al.*,    ) | |
| ) | |
| Defendants.    ) | |

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
Dawn E. Murphy-Johnson
Michael J. Satin
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800 (tel)
(202) 626-5801 (fax)

*Counsel for Defendants the Palestinian Authority
and the Palestine Liberation Organization*

August 29, 2014

1445731.1

## TABLE OF CONTENTS

**Page**

I.   GENERAL INSTRUCTIONS ............................................................................ 1

1.   General Requests ................................................................................................. 1

2.   Publicity—Preliminary, Reminder and Final Instructions .................................. 4

3.   Contact with Others ............................................................................................. 5

4.   Use of Electronic Technology to Conduct Research on or Communicate
     about Case .......................................................................................................... 6

II.  EVIDENCE, BURDENS AND PRESUMPTIONS ....................................... 7

5.   Foreign Language Evidence—General, During Trial ......................................... 7

6.   Burden of Proof ................................................................................................... 8

7.   Convictions As *Prima Facie* Evidence ............................................................... 9

8.   Uncalled Witness Not Equally Available ......................................................... 11

9.   Defendants' Failure to Produce Evidence—GIS Documents ........................... 13

10.  Consciousness of Guilt From Falsification of Evidence ................................... 14

III. LEGAL STANDARDS FOR *RESPONDEAT SUPERIOR,* AGENCY, AND
     RATIFICATION ............................................................................................ 16

11.  Entities ............................................................................................................... 16

12.  Alter Ego Liability ............................................................................................ 17

13.  Entity Liability .................................................................................................. 19

14.  Defendants' Liability for the Acts of Their Managerial Agents ....................... 22

15.  Defendants' Liability for Conduct of Their Employees—Scope of Employment ........ 23

16.  Defendants' Liability for the Conduct of Their Employees—Prohibited Act .............. 25

17.  Defendants' Liability for Unauthorized Acts of Agents and Employees Ratification .. 26

18.  Defendants' Liability for Conduct of Their Employees—Policy Practice or Custom ..... 30

**Page**

**IV.**   **LEGAL STANDARDS FOR ANTI-TERRORISM ACT CLAIMS** ............................ 33

19.   Anti-Terrorism Act—Elements ............................................................... 33

20.   Anti-Terrorism Act—First Element—Violent Acts ................................ 38

21.   Anti-Terrorism Act—Second Element—Criminal Acts........................... 41

      a.   Murder ............................................................................... 44

      b.   Attempted Murder............................................................... 46

      c.   Intentional Homicide .......................................................... 47

      d.   First Degree Manslaughter .................................................. 48

      e.   Criminal Assault ................................................................ 50

      f.   Reckless Endangerment ...................................................... 51

      g.   Promoting a Suicide Attempt............................................... 53

      h.   Hate Crimes ...................................................................... 54

      i.   Accessory .......................................................................... 55

      j.   Bombing of a Mass Transportation Vehicle ......................... 56

      k.   Bombing of a Public Place ................................................. 57

      l.   Harboring a Terrorist ......................................................... 59

      m.   Material Support for Terrorist Acts--18 U.S.C. § 2339A ...................... 60

      n.   Material Support for Hamas or AAMB--18 U.S.C. § 2339B .............. 64

      o.   Material Support for Hamas Weapons Program18 U.S.C. § 832 ............ 67

      p.   Contribution to Benefit Hamas or AAMB--50 U.S.C. § 1705 ............. 68

      q.   Conspiracy ........................................................................ 69

      r.   Conspiracy—Elements ....................................................... 69

      s.   Anti-Terrorism Act—Second Element Concluding Instruction ............ 71

22.   Anti-Terrorism Act—Third Element—Intent......................................... 72

23.   Anti-Terrorism Act—Fourth Element—Appearance of Intent ............... 83

24.   Anti-Terrorism Act – Fifth Element – Causation .................................. 85

25.   Anti-Terrorism Act – Sixth Element – Injury........................................ 87

**Page**

| | | |
|---|---|---|
| **V.** | **LEGAL STANDARDS FOR NON-FEDERAL CLAIMS** .......................................... | 90 |
| 26. | Negligence ...................................................................... | 90 |
| 27. | Civil Assault ..................................................................... | 92 |
| 28. | Battery .......................................................................... | 93 |
| 29. | Intentional Infliction of Emotional Distress ............................... | 94 |
| 30. | Negligent Infliction of Emotional Distress ................................. | 96 |
| 31. | Equitable Estoppel—Statute of Limitations ............................... | 98 |
| **VI.** | **DAMAGES** ..................................................................... | 99 |
| 32. | Damages—General ............................................................ | 99 |
| 33. | Damages—Compensatory Damages ......................................... | 100 |
| 34. | Damages—Calculation of Past and Future Damages ..................... | 103 |
| 35. | Damages—Injury or Disability .............................................. | 104 |
| 36. | Damages—Pain and Suffering ............................................... | 105 |
| 37. | Damages—Medical or Other Expenses ..................................... | 107 |
| 38. | Damages—Lost Earnings or Profit .......................................... | 108 |
| 39. | Damages—Loss of Consortium .............................................. | 110 |
| 40. | Damages—Loss of Services .................................................. | 111 |
| 41. | Damages—Shortening of Life ............................................... | 112 |
| 42. | Damages—Loss of Parental Services Due to Wrongful Death .......... | 113 |
| 43. | Damages—Loss of Solatium ................................................. | 114 |
| 44. | Damages—Punitive Damages ................................................ | 116 |
| **VII.** | **PLAINTIFFS' PROPOSED VERDICT FORMS** .................................... | 117 |

I.  **GENERAL INSTRUCTIONS**

**Plaintiffs' Proposed Instruction No. 1: General Requests**

a.  **Anonymous Jury.**  Plaintiffs' request for this instruction should be denied for the reasons set forth in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for an Anonymous and Semi-Sequestered Jury. *See generally* DE 570.

b.  **Juror Attentiveness.**  Defendants agree that this instruction should be given to the jury at the close of evidence. *See* DE 583 (Defs.' Proposed Jury Instructions) at 23 (No. 15).

c.  **Role of the Court.** Defendants agree that this instruction should be given to the jury at the close of evidence. *See id.* at 24 (No. 16).

d.  **Role of the Jury.** Defendants agree that this instruction should be given to the jury at the close of evidence. *See id.* at 25 (No. 17).

e.  **Juror Oath.**  Defendants agree that this instruction should be given to the jury at the close of evidence. *See id.* at 26 (No. 18).

f.  **Jury to Disregard Court's View.** Plaintiffs' request for this instruction should be denied.  This instruction is redundant of the "Opening Instruction" proposed by Defendants, *see id.* at 8-9 (No. 1), as well as the instructions on the Role of the Court, the Role of the Jury, and Juror Oath.

g.  **Conduct of Counsel.** Plaintiffs' request for this instruction should be denied.  This instruction is redundant of the "Opening Instruction" proposed by Defendants. *See id.*

h.  **Note-Taking by Jury.**  Defendants agree that an instruction on note-taking should be given but urge the Court to use the language proposed by Defendants, which also instructs the jury that a transcript will not be available to them at the end of trial. *See id.* at 16 (No. 8).

i.  **What Is and Is Not Evidence.** Defendants agree that this instruction should be given to the jury at the close of evidence. *See id.* at 36 (No. 28).

j.  **Direct and Circumstantial Evidence.** Defendants are not aware of any admissible circumstantial evidence that provides evidence of Defendants' alleged liability.  But, in the event the Court admits such evidence, Defendants do not object to the proposed instruction.

k.  **Judicial Notice.** Defendants are not aware of any facts as to which the Court would take judicial notice, and Plaintiffs have not identified any.  In the event that the Court

takes judicial notice of certain facts after providing Defendants an opportunity to be heard (Fed. R. Evid. 201(e), Defendants do not object to the proposed instruction.

*l.* **Stipulations.** The parties have not entered into any stipulation of facts, so this instruction is unnecessary. In the event the parties enter into a stipulation of facts, Defendants do not object to the proposed instruction.

*m.* **Summaries and Charts.** Plaintiffs' request for this instruction should be denied because Plaintiffs failed to list any charts or summaries as exhibits in the Joint Pretrial Order. *See* DE 410 (setting deadline for Joint Pretrial Order); Joint Proposed Pretrial Order (Jan. 22, 2014) (filed under seal). Indeed, even at this late date, Plaintiffs have not proffered any charts or summaries. Without knowing what charts and summaries Plaintiffs intend to proffer, it not possible to determine whether the charts or summaries could come into evidence and, if so, the proper instruction. *See* 4 Hon. Leonard B. Sand *et al.*, <u>Modern Federal Jury Instructions - Civil</u> ¶ 74.06, comments to Instruction 74-11.

*n.* **Interrogatories.** Defendants are not aware of any interrogatory answers that provide evidence of Defendants' alleged liability. But, in the event the Court admits interrogatory answers into evidence, Defendants do not object to the proposed instruction.

*o.* **Depositions.** Defendants agree that this instruction should be given to the jury during trial, as necessary. *See* DE 583 at 21 (No. 13).

*p.* **Requests for Admissions.** Plaintiffs' request for this instruction should be denied because Plaintiffs failed list any responses to requests for admissions as exhibits in the Joint Pretrial Order. *See* DE 410 (setting deadline for Joint Pretrial Order); Joint Proposed Pretrial Order (Jan. 22, 2014) (filed under seal).

*q.* **Inference.** Defendants do not object to this instruction, so long as the following instruction is also given:

**Effect of Inference on Burden of Proof – Inference Against Defendant Does Not Shift Burden of Proof**

The mere existence of an inference against the defendant does not relieve the plaintiff of the burden of establishing his case clearly and convincingly. If the plaintiff is to obtain a verdict, you must still believe from the credible evidence that he has sustained the burden cast upon him. If he has failed, then your verdict must for the defendant. If you should find that all of the evidence is evenly balanced, then the plaintiff has failed to sustain the burden of proof and your verdict should be for the defendant.

1445731.1

If and only if you determine, after carefully weighing all the evidence, that the facts favor the plaintiff by the standard I have articulated, then he has met the burden of proof.

4 Hon. Leonard B. Sand *et al.*, <u>Modern Federal Jury Instructions - Civil</u> ¶ 75.01, Instruction 75-2 (modified as to burden of proof).

r. **Witness Credibility.** Defendants agree that this instruction should be given to the jury at the close of evidence. *See* DE 583 at 42 (No. 34).

s. **Bias (of Witness)**. Defendants agree that this instruction should be given to the jury at the close of evidence. *See* DE 583 at 44 (No. 36).

t. **Discrepancies in Testimony.** Defendants do not object to the instruction proposed by Plaintiffs.

u. **Expert Testimony**. Defendants agree that this instruction should be given. *See* DE 583 at 43 (No. 35).

v. **Conflicting Expert Testimony.** Defendants do not object to the instruction proposed by Plaintiffs if the Court admits conflicting expert testimony.

w. **Right to See Exhibits and Hear Testimony; Communications with the Court.** Defendants agree that this instruction should be given to the jury at the close of evidence. *See* DE 583 at 74 (No. 61).

x. **Verdict; Duty to Deliberate/Unanimous Verdict.** Defendants agree that the instruction "Duty to Deliberate, Unanimous Verdict," as set forth in 4 Hon. Leonard B. Sand *et al.*, *Modern Federal Jury Instructions – Civil*, ¶ 78.01, Instruction 78-3 (2014) should be given to the jury at the close of evidence. *See* DE 583 at 71 (No. 58). While Plaintiffs have requested an instruction on "Verdict; Duty to Deliberate/Unanimous Verdict," they have cited to Judge Sand's Instruction No. 78-2, which relates to "Submitting Pleadings." *See* DE 582 at 2.

y. **Return of Verdict.** Plaintiffs' request for this instruction should be denied. For all of the reasons set forth *infra*, for each Plaintiff a special verdict should be returned, not a general verdict.

1445731.1

**Plaintiffs' Proposed Instruction No. 2: Publicity – Preliminary, Reminder and Final Instructions**

Defendants agree that an instruction on publicity should be given. Defendants, however, urge the Court to use the language proposed by Defendants in their Request No. 7 ("Jury Conduct, Contact with Others, Publicity") at the beginning of trial, as it more fully explains the jury's obligations. *See* DE 583 at 15.

Defendants agree that the instruction on "Publicity – Final Charge" should be given at the conclusion of the evidence. *See* DE 583 at 30 (No. 22).

4

**Plaintiffs' Proposed Instruction No. 3: Contact with Others**

Defendants agree that an instruction on contact with others should be given.  Defendants, however, urge the Court to use the language proposed by Defendants in their Request No. 7 ("Jury Conduct, Contact with Others, Publicity") at the beginning of trial, as it more fully explains the jury's obligations.  *See* DE 583 at 15.

1445731.1

**Plaintiffs' Proposed Instruction No. 4: Use of Electronic Technology to Conduct Research or Communicate about Case**

Defendants agree that an instruction on the use of electronic technology to conduct research or communicate about the case should be given.  Defendants, however, urge the Court to use the language proposed by Defendants in their Request No. 7 ("Jury Conduct, Contact with Others, Publicity") at the beginning of trial.  *See* DE 583 at 15.

1445731.1

## II.    EVIDENCE, BURDENS, AND PRESUMPTIONS

**Plaintiffs' Proposed Instruction No. 5: Foreign Language Evidence – General, During Trial**

Defendants agree that an instruction on foreign language evidence should be given.
Defendants, however, urge the Court to use the language proposed by Defendants in their
Request No. 29 ("Official Translation") at the close of evidence.  *See* DE 583 at 37.

**Plaintiffs' Proposed Instruction No. 6: Burden of Proof**

Plaintiffs' request for this instruction should be denied.  Under the Anti-Terrorism Act

("ATA"), a successful civil plaintiff is automatically entitled to recover treble damages.  18

U.S.C. § 2333(a) (providing that an ATA plaintiff "*shall recover threefold the damages* he or she

sustains and the cost of the suit, including attorney's fees) (emphasis added).  This trebling

provision is punitive.  *See, e.g.*, *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685,

692 (7th Cir. 2008) (noting that treble damages are not "compensatory," and have a "punitive

aim"); *Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233, 242 (E.D.N.Y. 2009) (indicating that the

ATA's treble damages provision "reveals an intent to punish past, and to deter future, unlawful

conduct, not to ameliorate the liability of wrongdoers") (quoting *Texas Indus., Inc. v. Radcliff*

*Materials, Inc.*, 451 U.S. 630, 242 (1981)); *Estates of Yaron Ungar & Efrat Ungar v. Palestinian*

*Authority*, 304 F. Supp. 2d 232, 237 (D.R.I. 2004) (finding the ATA's treble damages provision

to be "overwhelmingly punitive").  The punitive nature of the ATA's mandatory treble damages

support the application of the standard of proof requiring clear and convincing evidence to

Plaintiffs' claims.  *See* DE 583 at 38-39.

1445731.1

**Plaintiffs' Proposed Instruction No. 7: Convictions as *Prima Facie* Evidence**

Defendants object to Proposed Instruction No. 7 because evidence of the Israeli court convictions is not admissible at trial.  *See* DE 497 at 32-37; DE 524 at 6-12; *see also* DE 544 (listing Defendants' objections to Plaintiffs' trial exhibits).  Almost all of the convictions are from Israeli military courts.

In the event the Court admits evidence of the Israeli court convictions, the Court should still not give this proposed instruction because it does not comport with the factual record in this case and it misstates the law.  First, the proposed instruction purports to define "prima facie," which is unnecessary and confusing.  Second, the proposed instruction defines it incorrectly: "So if there is no proof to the contrary, you must accept the judgments of conviction as fact." Third, Defendants will present "proof to the contrary" by introducing evidence that calls into question the reliability of the convictions.  *See, e.g.*, Expert Testimony of Michael Sfard. Second, Rule of Evidence 803(22) does not authorize the jury to grant conclusive effect to a prior conviction; rather "it is admissible in evidence for what it is worth." Fed. R. Evid. 803(22) Advisory Committee's Notes (1972).   Fourth, the instruction instructs the jury to treat the convictions' "supporting documentation" as "prima facie evidence that the convicted individuals engaged in the conduct established in the criminal case."   DE 582 at 9.  It is unclear what Plaintiffs mean by "supporting documentation," which could include custodial statements, indictments and other hearsay not admissible under Federal Rule of Evidence 803(22).   In the event the Court allows in any evidence of Israeli convictions under Federal Rule of Evidence 803(22), only the fact of the conviction is admissible.

Finally, the language "who plaintiff argued were agents or employees of the defendants or their agents or alter egos," DE 582 at 9, should not be included in the Final Instruction.

9

Plaintiffs' argument is not evidence, and Plaintiffs' proposed language improperly suggests to the jury that Defendants are vicariously liable for the acts of these individuals.

**Plaintiffs' Proposed Instruction No. 8: Uncalled Witness Not Equally Available**

Defendants object to Proposed Instruction No. 8 because a "missing witness" instruction

regarding Tawfiq Tirawi and "Kamal Al Abed (aka Mohamed Mukhtasab, aka Abu Talal)" is not

appropriate in this case.  A missing witness instruction may be appropriate "[w]hen a party has it

peculiarly within his power to produce witnesses whose testimony would elucidate the

transaction and fails to produce such witnesses." *United States v. Torres*, 845 F.2d 1165, 1169

(2d Cir. 1988) (internal quotation marks omitted).  But "courts have been reluctant to find a

witness practically unavailable when it appears that the [party] has no real interest in calling the

witness to the stand, but merely is engaged in a form of gamesmanship in an effort to obtain a

missing witness charge." *Id.* at 1170.  Indeed, the Second Circuit has noted that "an 'aura of

gamesmanship' frequently accompanies requests for missing witness charges." *United States v.

Gaskins*, 364 F.3d 438, 463 (2d Cir. 2004) (quoting *United States v. Mittelstaedt*, 31 F.3d 1208,

1215 (2d Cir. 1994)).

In this case, there is no question that Plaintiffs are engaging in gamesmanship to obtain a

missing witness instruction.  Plaintiffs have long known about Tirawi and Al Abed, yet they

never sought to depose them. *See Martinez v. Port Authority of NY and NJ*, No. 01-cv-721, 2005

U.S. Dist. LEXIS 19141, at *37 (S.D.N.Y. Sept. 2, 2005) (finding a missing witness instruction

unwarranted where party was aware of two witnesses prior to commencement of trial and did not

seek to call them); *cf. Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1048 (5th Cir. 1990)

(noting that "there is no justification for perpetuating the uncalled-witness rule in civil cases").

Nor did they list them on their witness list. *See* Exhibit 1-1 to the JPTO.  In any event,

Defendants lack the power to produce these two witnesses.  They both live in the West Bank,

and there is no evidence that they would receive permission to travel to the United States for

trial.  Even if they had permission to travel to the United States, Defendants could not force them to travel here.  In fact, Tirawi is not even a PA or PLO employee.

1445731.1

**Plaintiffs' Proposed Instruction No. 9: Defendants' Failure to Produce Evidence – GIS Documents**

Defendants object to Proposed Instruction No. 9 for the reasons set forth in the

Palestinian Authority's Opposition to Plaintiffs' Motion for Discovery Sanctions, dated June 13,

2014 (under seal).    *See also* 4 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions –

Civil ¶ 75.01, comments to Instruction 75-7 (instruction should be given only where

circumstances of non-production manifest bad faith).

13

**Plaintiffs' Proposed Instruction No. 10: Consciousness of Guilt from Falsification of Evidence**

Defendants object to Proposed Instruction No. 10, which instructs the jury that they may draw an inference of consciousness of liability if they find that a defendant "attempted to falsify evidence in order to mislead the public about its involvement in the attack [allegedly perpetrated by Wafa Idris]." DE 582 at 13.  First, Plaintiffs have no evidence, much less admissible evidence, that either of Defendants were involved in this attack.  The document upon which Plaintiffs base their allegation, Pl. Ex. 233, is not admissible because Defendants did not produce it, Plaintiffs have no witnesses who can authenticate it, and it contains hearsay within hearsay that does not fit within any hearsay exception.

Second, even if the document were admissible, it does not establish Defendants' involvement in the attack.  Rather, it indicates only that someone with General Intelligence was in communication with Idris' family *after* the bombing about her alleged role in the bombing, not that the Palestinian Authority ("PA") was trying to cover up *its* alleged role in the bombing.

Third, Plaintiffs have improperly and materially modified the pattern instruction from which it was adapted.  Sands' (criminal) Instruction 6-14 authorizes the instruction only where the "defendant attempted to falsify evidence in order to mislead *investigating authorities*."  4 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions – Criminal ¶ 6.05, Instruction 6-14 (emphasis added).  Plaintiffs' proposed instruction, by contrast, instructs the jury that they may draw an inference of consciousness of liability if the jury finds that a defendant attempted to falsify evidence in order to mislead *the public* about its involvement in the attack." DE 582 at 13 (emphasis added).  Misleading the public does not provide a legal basis for a consciousness of liability instruction. There is no evidence that the Defendants falsified any evidence or did so in order to mislead investigating authorities.  In fact, well before Pls. Ex 233 was written, the

14

investigating authorities (the Israelis) had disclosed the alleged identity of the suicide bomber.

Indeed, within a few days after the bombing, the New York Times printed an expose on Wafa

Idris naming her as the perpetrator of the January 27, 2002 bombing.  *See* James Bennet, *Arab*

*Woman's Path to Unlikely "Martyrdom,"* New York Times (Jan. 31, 2002), *available at*

http://www.nytimes.com/2002/01/31/world/arab-woman-s-path-to-unlikely-martyrdom.html.

Moreover, a government's misleading the public cannot give rise to an inference of

consciousness of liability in a civil action.   The rationale behind the instruction – that a criminal

defendant's falsification of evidence in order to mislead law enforcement is evidence of

consciousness of guilt (*see* 1 Hon. Leonard B. Sand *et al.*, Modern Federal Criminal Jury

Instructions – Criminal  ¶ 6.05, Comment to Instruction 6-14) – does not apply to the actions of

governments vis-à-vis the public.  Indeed, governments mislead the public for reasons having

nothing to do with criminal or civil liability.

## III.   LEGAL STANDARDS FOR RESPONDEAT SUPERIOR, AGENCY, AND RATIFICATION

### Plaintiffs' Proposed Instruction No. 11 – Entities

Defendants' Proposed Instruction No. 4 should be used rather than the first paragraph of Plaintiffs' Proposed Instruction No. 11.  Both versions adapt Sands' civil instruction 72-1, but Defendants' proposed instruction more accurately characterizes the Defendants as governmental organizations.

Defendants object to the second paragraph of Plaintiffs' proposed Instruction No. 11 in its entirety.  First, it conflates principles of alter ego with principles of agency, each of which is the topic of separate proposed instructions, and thus creates confusion.  The jury should be instructed on entity liability once.  Second, the proposed instruction would allow the jury to "find that the PLO is liable for the acts of the PA," DE 582 at 14, upon a showing that "the PA was acting as an agent for the PLO," *id.*, without requiring any finding that the acts were undertaken within the scope of the agency.  The proposed instruction is therefore incomplete and misleading and an incorrect statement of the law.  Third, the Plaintiffs never pled that the PA is an agent of the PLO and so may not now introduce an agency theory of liability into their lawsuit.  Fourth, there is no vicarious liability under 18 U.S.C. § 2333(a) for acts of agents.  *See* DE 497 at 9-11.

1445731.1

**Plaintiffs' Proposed Instruction No. 12 – Alter Ego Liability**

Defendants object to proposed Instruction No. 12.  First, Plaintiffs cite only an Eleventh

Circuit Civil Pattern Jury Instruction, which in turn cites Eleventh and Fifth Circuit law.  Under

New York choice of law rules, the law of the place of the entity's formation determines whether

its separate form will be disregarded.  *Taizhou Zhongneng Import and Export Co. v.*

*Koutsobinas*, 509 F. App'x 54, 56 n. 2 (2d Cir. 2013); *Fletcher v. Atex*, 68 F.3d 1451, 1456 (2d

Cir. 1995); *Radiancy, Inc. v. Viatek Consumer Prods. Group*, 2014 U.S. Dist. LEXIS 46024, at

*11-12 (S.D.N.Y. Apr. 1, 2014).  Palestinian law, therefore, controls whether the PA, PLO, and

Fatah's separate form may be disregarded.  Plaintiffs have not proposed an instruction under the

applicable Palestinian law.

Second, Plaintiffs did not allege facts in their complaint that would support imposition of

liability under an alter ego theory.

Third, the alter ego test Plaintiffs propose applies to corporations.  *See* DE 582 at 15

(citing Eleventh Circuit Civil Pattern Jury Instructions 2013 – Civil 4.27) ("Miscellaneous Issues

– Alter Ego – Subsidiary as Alter Ego of Parent Corporation").  Neither the PA nor the PLO is a

corporation.  The alter ego test has no application to governmental organizations (the PA and

PLO) or political parties (Fatah), which are not set up in corporate form.

Fourth, Plaintiffs' proposed instruction improperly does not require the jury to determine

whether one entity is an alter ego of another, but instead asks the jury to determine that four

entities are all alter egos of one another if they find, for example, that "any caused the formation

of another" or "whether they have directors or officers in common."  If entity A caused the

formation of entity B, and entity B and entity C have certain officers or directors in common,

that does not support a finding that entity A and C are alter egos.

17

Fifth, the U.S. State Department has designated the Al Aqsa Martyrs Brigades – not Fatah, the PA or PLO – as a foreign terror organization.  Plaintiffs' proposed instruction is improper because it would allow the jury to reach a conclusion that is inconsistent with a foreign policy determination of the United States.

Sixth, the instruction uses the preponderance of the evidence standard instead of the clear and convincing standard for the burden of proof.  *See* Defendants' Objections to Plaintiffs' Proposed Instruction No. 6.

1445731.1

**Plaintiffs' Proposed Instruction No. 13 – Entity Liability**

Defendants object to Proposed Instruction No. 13 on a number of grounds.  First, there is no vicarious liability for acts of agents or employees under the ATA, 18 U.S.C. § 2333(a).  *See* DE 497 at 9-11.  Second, even if there is vicarious liability under the ATA, the Defendants may not be held vicariously liable because they are governmental organizations.  The Plaintiffs must establish, through clear and convincing evidence, that their injuries were caused by an official policy, custom, or practice of the Palestinian Authority or PLO.  *Id.* at 11-13.  *See also Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986) ("The 'official policy' requirement [of *Monell*] was intended to distinguish acts of the municipality from acts of the municipality's employees, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible.").  Therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008).

Third, Plaintiffs are seeking an instruction on express authority.  *See* DE 582 at 16 ("Express authority is created by the direct verbal or written giving of that authority by the entity to its agents  For example, express authority to perform certain duties may be part of an employee's contract.").  There is no evidence, admissible or otherwise, that any of the shootings or bombings at issue were undertaken with the express authority of either Defendant.  Nor have Plaintiffs included on their exhibit list any employee contracts.  This instruction bears no relationship to the evidence in the case and will only confuse the jury.

19

Fourth, Plaintiffs' proposed instruction on apparent authority is incomplete and an incorrect statement of the law.  Under Second Circuit law, "apparent authority is created only by the representations of the principal to the third party." *Municipality of Bremanger v. Citigroup Global Mkts., Inc.*, No. 09-cv-7058, 2013 U.S. Dist. LEXIS 49603, at \*60-62 (S.D.N.Y. Mar. 28, 2013) (citing *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989)).  Moreover, the third party "must reasonably believe that an agency relationship exists." *Id.* at \*62 (citing *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 328-29 (2d Cir. 2010).  In this lawsuit, there is an absence of evidence, admissible or otherwise, that either Defendant made any representations to the Plaintiffs that caused them to reasonably believe that an agency relationship existed between either Defendant and the individuals alleged to be responsible for the shootings or bombings at issue.  Indeed at the time of the shootings or bombings, there is no evidence any of the Plaintiffs were aware of any relationship between the alleged perpetrators and the PA or PLO.  *See id.* ("Indeed, several Plaintiffs were not even aware of Citigroup's involvement in the investments in the Notes.").  Indeed, the concept of apparent authority has no role in claims arising from intentional acts of violence.

Fifth, Plaintiffs proposed instruction on inherent authority should not be given.  Plaintiffs have not disclosed and identified through their exhibit or witness list any potential admissible evidence that regarding whether the shootings or bombings were "done substantially within the time and space limits of the [employee's] job."  DE 582 at 17.  Indeed, all of the seven incidents took place in areas outside the PA's control.  (Six occurred in Jerusalem and one in Area C.) Nor do the Plaintiffs have any evidence that the shootings or bombings were carried out "by a purpose to serve" the PA or PLO.  Plaintiffs did not depose any of the alleged perpetrators, none

20

of the alleged perpetrators will testify at trial, and Plaintiffs have proffered no evidence that the perpetrators carried out the bombings or shootings to serve the PA or PLO.

Sixth, because the Defendants are potentially liable only for the acts of their officials, Defendants' proposed Instruction No. 47 should be given instead of Plaintiffs' proposed Instruction Nos. 13-16.

21

1445731.1

**Plaintiffs' Proposed Instruction No. 14 – Defendants' Liability for the Acts of Their Managerial Agents**

Defendants object to this instruction for the reasons stated in their objections to proposed Instruction Nos. 11 and 13.  In addition, Defendants object to this proposed Instruction because it adds yet another formulation of agency liability and is incomplete, vague, confusing, and an incorrect statement of the law.  This proposed instruction would allow the jury to find Defendants liable for the acts of an "agent of the entity having duties of such responsibility that his conduct may fairly be assumed to represent the agency."  DE 582 at 18.  Moreover, the proposed instruction is based solely on an instruction approved in a 1981 Second Circuit decision on the standard of imputed liability in an antitrust case.  Moreover, the complete instruction approved by the Second Circuit was not reproduced in the opinion or in Plaintiffs' proposed instruction.  *Compare id. with United States v. Koppers Co., Inc.*, 652 F.2d 290, 298 (2d Cir. 1981) (providing only partial quotation of instruction).   Finally, this instruction should not be given because no "managerial agents" of the PA or PLO carried out any of the shootings or bombings at issue, so the instruction is irrelevant to the issues to be tried.

Because the Defendants are potentially liable only for the acts of their officials, Defendants' proposed Instruction No. 47 should be given instead of Plaintiffs' proposed Instruction Nos. 13-16.

1445731.1

**Plaintiffs' Proposed Instruction No. 15 – Defendants' Liability for Conduct of Their Employees' – Scope of Employment**

Defendants object to this instruction for the reasons stated in their objections to proposed Instruction Nos. 11 and 13.  In addition, the instruction is an incorrect statement of the law. Plaintiffs propose instructing the jury:  "If you find an employee of the PLO or the PA intentionally or negligently caused injury to a plaintiff while acting within the scope of his or her authority *or* in furtherance of the defendant's business, then the defendant is legally responsible for the employee's conduct."  DE 582 at 19 (emphasis added).  The New York Pattern Jury Instruction Plaintiffs' cite states the following:  "If you find AB negligently caused injury to the plaintiff while acting within the scope of (his, her) authority *and* in furtherance of CD's business, then CD is legally responsible for AB's conduct."  N.Y. Pattern Jury Instruction., Civil 2:235 (emphasis added).  Plaintiffs thus have improperly modified the Pattern Jury Instruction by making a conjunctive test into a disjunctive test.   Thus, Plaintiffs' proposed instruction would improperly allow the jury to find a Defendant liable for an unauthorized act of an employee, even if not within the scope of his or her employment, simply by concluding (or, even, as Plaintiffs propose to instruct elsewhere, inferring from circumstantial evidence) that the employee acted in "furtherance" of the Defendant's business.  This instruction, in addition to being an incorrect statement of the law, is highly prejudicial to Defendants.  Defendants are not commercial employers with a "business."  DE 582 at 19.  The jury is not instructed what the Defendants' "business" allegedly is, nor are they instructed what it means for an employee to act in "furtherance of the Defendant's business."  Plaintiffs likely will tell the jury that the "business" of the PA and PLO is to support an end to the Israeli Occupation and the creation of an independent Palestinian State.  Under Plaintiffs' formulation, the PA or PLO would be liable

23

for the unauthorized acts of employees who generally act in furtherance of Palestinian Statehood and an end of the Occupation.

Because the Defendants are potentially liable only for the acts of their officials, Defendants' proposed Instruction No. 47 should be given instead of Plaintiffs' proposed Instruction Nos. 13-16.

1445731.1

**Plaintiffs' Proposed Instruction No. 16 – Defendants' Liability for the Conduct of Their Employees – Prohibited Acts**

Defendants object to this instruction for the reasons stated in their objections to proposed Instruction Nos. 11 and 13.  In addition, in the context of governmental or political organizations, an instruction that the organization is liable for unauthorized acts of employee's if "done in furtherance" of the organization's business, DE 582 at 20, is prejudicially vague and confusing and would improperly lead to the imposition of liability for terrorism and treble damages based solely on a finding that the employee and employer shared political beliefs.  The Humane Society, for example, is not liable for the unauthorized act of an employee who kills an abusive pet owner simply because the employee was acting in furtherance of a goal to promote humane treatment of animals.  The Environmental Defense Fund is not liable for an employee who blows up a coal plant.  Political organizations are not liable for the unauthorized acts of extremists.

Because the Defendants are potentially liable only for the acts of their officials, Defendants' proposed Instruction No. 47 should be given instead of Plaintiffs' proposed Instruction Nos. 13-16.

1445731.1

**Plaintiffs' Proposed Instruction No. 17 – Defendants' Liability for Unauthorized Acts of Agents and Employees – Ratification**

Defendants object to Plaintiffs' proposed Instruction No. 17 on a number of grounds. First, because the Anti-Terrorism Act, 18 U.S.C. § 2333(a), requires that the Defendant act with deliberate wrongdoing and imposes automatic treble damages, Defendant cannot be vicariously liable for the unauthorized acts of its alleged agents even where there has been an alleged ratification. There are no cases imposing liability under 18 U.S.C. § 2333(a) under a ratification theory. Moreover, because the Anti-Terrorism Act applies extra-territorially to foreign conduct of foreign defendants, it must be construed narrowly. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 442, 455-56 (2007) (where a statute "specifically . . . extend[s] the reach of United States . . . law to cover certain activity abroad," courts must "resist giving the language . . . an expansive interpretation").

Second, Plaintiffs did not plead that Defendants were liable under a ratification theory. Defendants are prejudiced by Plaintiffs' invoking numerous new theories of liability after the close of fact and expert discovery. Plaintiffs, having failed to amend their complaint since 2004, must proceed to trial with the case they pled.

Third, there is no admissible evidence supporting Plaintiffs' claim that either of the Defendants' ratified any of the shootings or bombings at issue in this lawsuit.

Fourth, the proposed instruction is incomplete, misleading, and an inaccurate statement of the law. The proposed instruction fails to include instructions on all necessary elements for a finding of ratification. *See* Restatement (Third) of Agency § 4.01(3). The proposed instruction omits key elements of ratification, including the following:

- In order for a person to ratify an act, the actor must act or purport to act as an agent on the person's behalf. Restatement (Third) of Agency § 4.03 ("A person

1445731.1

may ratify an act if the actor acted or purported to act as an agent on the person's behalf."); *Id.* § 4.01(2) comment b ("It is necessary that the actor have acted or purported to act on behalf of the ratifier.").

- The person ratifying an act must "(a) manifest[] assent that the act shall affect the person's legal relations, or (b) [engage in] conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2).

- Ratification "must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language." *Municipality of Bremanger v. Citigroup Global Mkts., Inc.*, No. 09-cv-7058, 2013 U.S. Dist. LEXIS 49603, at *64. (S.D.N.Y. Mar. 28, 2013) (quoting *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 455 N.Y.S.2d 429, 432 (1982).   Plaintiffs' proposed instruction erroneously allows the jury to infer ratification from "circumstantial evidence, including through evidence of the nature of the acts done." DE 582 at 22.

Fifth, Plaintiffs' proposed instruction is confusing and vague.  For example, the proposed instruction would allow the jury to find ratification "through the relationship of the parties, through the respective interests of the alleged agent, or other circumstances." *Id.*  In regard to the vagueness of the instruction, Defendants note that the proposed instruction is repeatedly circular, stating in several different formulations that ratification can be proven by showing ratification.  The instruction therefore gives the jury little guidance, and leaves it overly free to determine just what might be meant by the term "ratification."  And, when it does offer examples (e.g., "Ratification . . . may be demonstrated through knowing acceptance after the fact . . . ."),

27

they only exacerbate the vagueness, by asking the jury to determine what "knowing acceptance" might mean.

Sixth, the proposed instruction also erroneously would allow the jury to impose liability on the Defendants for failure to terminate an employee if the Defendant "is aware of ongoing conduct encompassing numerous acts by the employee." *Id.* An employer does not "ratify" an employee's unauthorized conduct by continuing to pay the employee's salary. *Hamm v. United States*, 483 F.3d 135, 140 (2d Cir. 2007). The proposed instruction includes language drawn from the commentary to the Restatement (Third) of Agency § 4.01 comment (d) but is incomplete and misleading. Specifically, the proposed instruction states that if an employer may ratify the acts of an employee by "failure to terminate" or through the "promotion or celebration of such an employee." DE 582 at 22. Plaintiffs' proposed instruction fails to include language from the same Restatement comment that "failure to terminate or reprimand an employee by itself is not likely to ratify the employee's unauthorized action because the employer may have varied reasons for failing to take action adverse to an employee" or that promotion or celebration of an employee may constitute ratification only in "some circumstances." Restatement (Third) of Agency § 4.01 comment (d).

Seventh, the proposed instruction incorrectly states that mere "approval" of an employee's or agent's conduct creates liability. *See* DE 582 at 21 ("A defendant is liable for conduct of its employees or agents if, after the fact, the defendant ratified, adopted or *approved* of the conduct even if it was originally unauthorized.") (emphasis added); *see also id.* at 22 (instructing that the "promotion or celebration of an employee may constitute ratification). Plaintiffs' instruction improperly would make a Defendant liable for an act of international terrorism carried out by a third party merely by expressing its approval in a statement.

28

For the foregoing reasons, Plaintiffs' proposed instruction on ratification should not be given.

**Plaintiffs' Proposed Instruction No. 18 – Defendants' Liability for Conduct of Their Employees – Policy Practice or Custom**

Defendants object to proposed Instruction No. 18 for the reasons stated in their objections to proposed Instruction Nos. 11 and 13. If the Court disagrees with Defendants and concludes that Defendants can be liable for the acts of their employees, then the Court should instruct the jury that Defendant can be liable only if the Plaintiff's injury was caused by an official policy, custom or practice of the Defendant.

Defendants' object to Plaintiffs' proposed "Policy Practice or Custom" instruction on a number of grounds. First, the instruction fails to include the requirement that the Plaintiff's injury was caused by the Defendant's official policy or municipal custom. *See* 5 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions – Civil ¶ 87.03, Instruction No. 87-81 ("Before you can hold the municipality liable, the plaintiff must establish . ... that the action of the employee that deprived him of his federal right *was the result* either *of* an official policy of the municipality or a municipal custom that was in place . . .") (emphasis added). *See also id.* Comment ("It must be noted that the causation issue is critical for municipal defendants because immunities, absolute and qualified, available to individuals are not available to municipalities."). Plaintiffs cite *Cash v. County of Erie*, 654 F.3d 324, 332 (2d Cir. 2011), but fail to note that the jury instruction approved in that case required the plaintiff to prove that the defendant's actions were the "proximate cause" of her injury, *i.e.*, that they were "a substantial factor in bringing about [her] injury"). In addition, in *Cash*, the jury was given a special verdict from, which asked, among other things, "Was the violation of [plaintiff's] constitutional rights proximately caused by a custom, policy, or practice of the County of Erie?" *Id.* Rather than requiring the jury to find that the Defendant's alleged official policy or custom was the proximate cause of the

30

Plaintiff's injury, Plaintiffs' proposed instruction merely requires the jury to find "an affirmative link." DE 582 at 23.

Second, the instruction fails to provide a general instruction for municipal liability. *See* 5 Hon. Leonard B. Sand *et al.,* Federal Jury Instructions – Civil, Instruction No. 87-81.

Third, the proposed instruction defines "practice and custom" in a manner that departs significantly from that of 5 Hon. Leonard B. Sand *et al.* Federal Jury Instructions – Civil, Instruction No. 87-83. Defendants propose the following definition of "practice or custom":

> Whether an official practice or custom exists is a question of fact for you to determine. A practice or custom is a persistent, widespread course of conduct by PA or PLO officials that has become the usual and accepted way of carrying out policy, and has acquired the force of law, even though the PA or PLO has not necessarily formally adopted or announced the custom.

Fourth, there is no admissible evidence of any "standard operating procedure" as to which the PA or PLO "acquiesced." In addition, the instruction regarding "standard operating procedure" is vague. Similarly, there is no evidence of any "failure to discipline employees for persistent violations," and "persistent violations" is vague and confusing. Moreover, it is not a correct statement of the law that "a defendant's failure to discipline employees for persistent violations" constitutes a practice or custom. *See* DE 582 at 23. Plaintiffs cite *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983), but that case requires a showing of a "persistent failure to discipline subordinates"). Plaintiffs' proposed instruction improperly removes the requirement that the failure to discipline itself be persistent.

Fifth, Plaintiffs' proposed instruction would allow the jury to impose liability on the PA or PLO where the PA or PLO, "knowing of its employees' past unlawful conduct, failed to take precautions against future violations." DE 582 at 24. There is no legal support for providing such an instruction and such an instruction is vague and confusing because it does not require the

31

jury to find that the unlawful conduct is similar in nature to the conduct at issue in the lawsuit, nor does it define what standard of care is meant by "failed to take precautions."

Sixth, the instruction improperly instructs the jury on the facts. *See* DE 582 at 23 ("I instruct you that Yasser Arafat was a policy-making official whose actions may be attributed to the defendants and that Marwan Barghouti was a policy-making official whose actions may be attributed to the PLO."). In any event, there is no admissible evidence to support instructing the jury that Marwan Barghouti was a policy-making official for the PLO.

Finally, Plaintiffs' proposed instruction references a preponderance of the evidence burden of proof rather than the clear and convincing standard. *See* Defendants' Objections to Plaintiffs' Proposed Instruction No. 6.

1445731.1

## IV.    LEGAL STANDARD FOR ANTI-TERRORISM ACT CLAIM

### Plaintiffs' Proposed Instruction No. 19:  Anti-Terrorism Act – Elements

Defendants object to Plaintiffs' proposed Instruction No. 19 in its entirety because it is not a correct statement of the law and is repetitive, incomplete, misleading and confusing. Defendants' objections to specific provisions are set forth below.

Defendants object to the second and third paragraphs of Plaintiffs' proposed Instruction No. 19 because they are not a correct statement of the law and are repetitive because Plaintiffs' proposed Instruction No. 19 references the incorrect burden of proof on two occasions. *See* DE 582 at 25 (twice referencing "a preponderance of the evidence").  The correct burden of proof for an ATA claim is clear and convincing evidence. *See* DE 583 at 38-39.  Plaintiffs' proposed Instruction No. 19 also repeats the incorrect burden of proof twice.  It is inappropriate to state, let alone to repeat, the burden of proof in an ATA Elements instruction. *Howard v. Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 235 (7th Cir. 1956). ("When an instruction is once given which fully covers a subject, it should not be repeated.  Such needless repetition amounts to an argument on the part of the court and may mislead the jury. It is not always reversible error, but it is always bad practice.")  At a minimum, the references to the burden of proof should be stricken from any final instruction given by the Court on ATA Elements or corrected to reflect the clear and convincing evidence standard.

Defendants object to Plaintiffs' proposed Instruction No. 19 on the grounds that it is not a correct statement of the law and is incomplete because it omits the requirement contained in 18 U.S.C. § 2333(a) that the Plaintiff prove that that the injured party is a "national of the United States."  The omission of that requirement from Plaintiffs' proposed Instruction No. 19 is confusing and misleading because it suggests to the jury that a Defendant may be liable under the

33

ATA even if the injured party is not a "national of the United States" as required by § 2333(a). At a minimum, the Plaintiffs' proposed Instruction No. 19 should be modified to include that specific requirement of § 2333(a).

Defendants object to Plaintiffs' proposed Instruction No. 19 on the grounds that it is not a correct statement of the law and is incomplete because it omits the requirement contained in 18 U.S.C. § 2333(a) that the Plaintiff prove that the Defendant committed an "act of international terrorism." The omission of that requirement from Plaintiffs' proposed Instruction No. 19 is confusing and misleading because it suggests to the jury that a Defendant may be liable even if it did not commit an "act of international terrorism" as required by § 2333(a) and defined in § 2331(1). Moreover, as discussed below, although Plaintiffs' proposed Instruction No. 19 contains some of the language defining "an act of international terrorism" from 18 U.S.C. § 2331(1) in its First, Second and Fourth bullet points, it also omits certain portions of that definition found in § 2331(1)(A) and (B)(iii) and the entirety of § 2331(1)(C). At a minimum, the Plaintiffs' proposed Instruction No. 19 should be modified to include all of the requirements of § 2333(a) and § 2331(1) regarding "international terrorism."

Defendants object to the second bullet point of Plaintiffs' proposed Instruction No. 19 because it is not a correct statement of the law, and is misleading, confusing and incomplete. The second bullet point is not a correct statement of the law and is incomplete because it omits the below-italicized requirement contained in 18 U.S.C. § 2331(1)(A) that the Plaintiff prove that the "violent acts or acts dangerous to human life" the Defendant allegedly committed "are a violation of the criminal laws *of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State.*" The omission of that italicized requirement from Plaintiffs' proposed Instruction No. 19 is confusing and

34

misleading because it suggests to the jury that a Defendant may be liable for any "violation of a criminal law," even if that violation was not of the type specified by 18 U.S.C. § 2331(1)(A), such as, *e.g.*, a violation of foreign criminal law. At a minimum, Plaintiffs' proposed Instruction No. 19 should be modified to include the specific language of 18 U.S.C. § 2331(1)(A).

Defendants object to the third bullet point of Plaintiffs' proposed Instruction No. 19 because it is not a correct statement of the law, and is misleading, confusing and incomplete because it omits the requirement that a Plaintiff prove that the alleged act of international terrorism that caused his or her injuries was the product of the Defendant's deliberate wrongdoing. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 19 is confusing and misleading because it suggests to the jury that a Defendant may be liable if its "conduct was done recklessly, knowingly or intentionally," even if the Defendant was not engaged in deliberate wrongdoing. The jury should not be instructed on recklessness in any event for the reasons previously stated. At a minimum, Plaintiffs' proposed Instruction No. 19 should be modified to include the requirement that the Plaintiff prove the alleged act of international terrorism that caused his or her injuries was the product of the Defendant's deliberate wrongdoing.

Defendants object to Plaintiffs' proposed Instruction No. 19 on the grounds that it is not a correct statement of the law and is incomplete because it omits the requirement that a Plaintiff prove that a Defendant engaged in an act of international terrorism intending to injure a national of the United States. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 19 is confusing and misleading because it suggests to the jury that a Defendant may be liable even if it did not intend to injure a national of the United States. At a minimum, Plaintiffs' proposed Instruction No. 19 should be modified to include the requirement

35

that the Plaintiff prove that the Defendant engaged in an act of international terrorism intending that Americans would be injured.

Defendants object to the fourth bullet point of Plaintiffs' proposed Instruction No. 19 because it is not a correct statement of the law, and is misleading, confusing and incomplete. The fourth bullet point is not a correct statement of the law and is incomplete because it omits the below-italicized requirement contained in 18 U.S.C. § 2331(1)(B)(iii) that the Plaintiff prove that the "violent acts or acts dangerous to human life" the Defendant allegedly committed "appear to be intended to . . . affect the conduct of government *by mass destruction, assassination, or kidnapping*." The omission of that italicized requirement from Plaintiffs' Proposed Instruction No. 19 is confusing and misleading because it suggests to the jury that a Defendant may be liable if its conduct "appear[s] to be intended to . . . affect the conduct of government" by a means other than "mass destruction, assassination, or kidnapping," such as, *e.g.*, speech or other political activity. At a minimum, the fourth bullet point of Plaintiffs' proposed Instruction No. 19 should be modified to include the specific language of 18 U.S.C. § 2331(1)(B)(iii).

Defendants object to Plaintiffs' proposed Instruction No. 19 on the grounds that it is not a correct statement of the law and is incomplete because it omits the requirement contained in 18 U.S.C. § 2331(1)(C) that the Plaintiff prove that the "violent acts or acts dangerous to human life" "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." At a minimum, the Plaintiffs' proposed Instruction No. 19 should be modified to include the specific language of 18 U.S.C. § 2331(1)(C).

J445731.1

Defendants object to the fifth bullet point of Plaintiffs' proposed Instruction No. 19 because it is not a correct statement of the law, and is misleading, confusing and incomplete. The fifth bullet improperly combines "but for" and proximate cause into a single element, when both are required for ATA liability.  *See* DE 583 at 51, 55-58.  At a minimum, the Plaintiffs' proposed Instruction No. 19 should be modified to state that a Plaintiff must prove that the Defendant's act of international terrorism was both the "but for" and the proximate cause of the Plaintiff's injury.

Defendants object to the sixth bullet point of Plaintiffs' proposed Instruction No. 19 because it is not a correct statement of the law.  18 U.S.C. § 2333(a) requires that a Plaintiff prove that he or she was "injured in his or her person, property, or business."  At a minimum, the Plaintiffs' proposed Instruction No. 19 should be modified to include the precise language of § 2333(a).

Defendants object to the third paragraph of Plaintiffs' proposed Instruction No. 19's reference to "seven attacks."  The Court should conduct separate trials as to each of those attacks for the reasons stated in Defendants' pending Motion for Separate Trials, DE 561, and therefore should not mention "seven attacks" in any jury instruction.

For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No. 19.  If the Court is going to give instructions on the ATA, it should instead give Defendants' Request Nos. 39-48, DE 583 at 51-61, or modify Plaintiffs' proposed Instruction No. 19 as set forth above.

1445731.1

**Plaintiffs' Proposed Instruction No. 20:  ATA – First Element – Violent Acts**

Defendants object to Plaintiffs' proposed Instruction No. 20 in its entirety because it is not a correct statement of the law and is repetitive, unnecessary, misleading and confusing. Defendants' objections to specific provisions are set forth below.

Defendants object to Plaintiffs' proposed Instruction No. 20 on the grounds that it is repetitive and unnecessary because, despite its title, it provides the jury with no guidance on what constitutes "Violent Acts."  It does not define the operative phrase "involve violent acts or acts dangerous to human life," which is part of the definition of "international terrorism" contained in 18 U.S.C § 2331(1)(A), or any of the words contained in that phrase.  It just repeats the phrase "involve[d] violent acts or acts dangerous to human life" twice in two sentences which contain essentially the same content.  DE 582 at 26.  The parties agree that this phrase should be conveyed to the jury as either part of the Defendants' "International Terrorism" instruction or the Plaintiffs' "Anti-Terrorism Act—Elements" instruction, *id.* at 25; DE 583 at 54, but there is no need to repeat the phrase, let alone to repeat it three times in two consecutive instructions as Plaintiffs propose, *see* DE 582 at 25-26.  *Howard v. Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 235 (7th Cir. 1956) ("When an instruction is once given which fully covers a subject, it should not be repeated. Such needless repetition amounts to an argument on the part of the court and may mislead the jury. It is not always reversible error, but it is always bad practice.").

Defendants also object to Plaintiffs' proposed Instruction No. 20 on the grounds that it is not a correct statement of the law, and is repetitive, unnecessary, misleading, and confusing because it contains repetitive and incorrect instructions on vicarious liability.  *See* DE 582 at 26 (twice referencing "the conduct of an alter ego, agent, managerial agent or employee of the

38

defendant for whose actions the defendant is liable"). Unlike their proposed "Anti-Terrorism Act—Elements" instruction, which correctly informs the jury that the ATA requires that a plaintiff prove that "the *defendant's* conduct involved violent acts or acts dangerous to human life," DE 582 at 25 (emphasis added), Plaintiffs' proposed Instruction No. 20 seeks to inform the jury (twice) that they can find a defendant liable if "the conduct of an alter ego, agent, managerial agent or employee of the defendant for whose actions the defendant is liable" "involve[d] violent acts or acts dangerous to human life." It would be incorrect as a matter of law to instruct the jury on these vicarious liability theories for the reasons we have previously stated in our summary judgment briefing and in these objections. See DE 497 at 9-18. But even if the Court were to instruct the jury on those vicarious liability theories, it would be repetitive, unnecessary, misleading, and confusing to make a short-hand reference to those theories in an instruction regarding the meaning of "violent acts" in the definition of "international terrorism" under 18 U.S.C. § 2331(1)(A) as Plaintiffs propose here. If the jury is going to be instructed on vicarious liability, it should only be so instructed on one occasion in a comprehensive fashion so the jury will not be confused or mislead by what is required for liability under those theories. Repeating such an instruction would also improperly prejudice the Defendants. *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might have a tendency to force a verdict against an accused by unduly underscoring certain aspects of the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters

39

favorable to either side constitute reversible error.") (citation omitted).  Thus, at a minimum, the references to vicarious liability should be stricken from Plaintiffs' proposed Instruction No. 20.

Defendants further object to the Plaintiffs' proposed Instruction No. 20's reference to "each attack."  The Court should conduct separate trials as to each of the attacks at issue for the reasons stated in Defendants' pending Motion for Separate Trials, DE 561, and therefore should not refer to "each attack" in any jury instruction.

For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No. 20.  If the Court is going to give an instruction on violent acts, it should instead give Defendants' Request No. 42, DE 583 at 54.

1445731.1

**Plaintiffs' Proposed Instruction No. 21: Anti-Terrorism Act – Second Element – Criminal Acts**

Defendants object to Plaintiffs' Proposed Instruction No. 21 for a number of reasons. First, Plaintiffs' Proposed Instruction No. 21 misstates the standard of proof.  The correct standard of proof in this case is clear and convincing evidence, not preponderance of the evidence.  *See* DE 583 at 38-39.

Second, Plaintiffs' Proposed Instruction No. 21 misstates the law by instructing the jury that Defendants' are liable for the conduct of an alter ego, agent, managerial agent, or employee. *See* DE 582 at 27 ("if you determine that a defendant's conduct, *or the conduct of an alter ego, agent, managerial agent or employee of the defendant for whose actions the defendant is liable*, was a violation of any of the criminal laws I am about to describe, then the second element of the ATA will have been met for that defendant, as to that attack") (emphasis added).  It would be incorrect as a matter of law to instruct the jury on these vicarious liability theories for the reasons we have previously stated in our summary judgment briefing (DE 497 at 9-18) and in these objections, but even if the Court were to instruct the jury on those vicarious liability theories, it would be repetitive, unnecessary, misleading, and confusing to make a short-hand reference to those theories in an instruction on the predicate criminal acts, as Plaintiffs propose here.  If the jury is going to be instructed on vicarious liability, it should only be so instructed on one occasion in a comprehensive fashion so the jury will not be confused or mislead by what is required for liability under those theories.  Repeating such an instruction would also improperly prejudice the Defendants.  *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might

41

have a tendency to force a verdict against an accused by unduly underscoring certain aspects of the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error.") (citation omitted). Thus, at a minimum, the references to vicarious liability should be stricken from Plaintiffs' Proposed Instruction No. 21.

Third, Plaintiffs' Proposed Instruction No. 21 fails to inform the jury that they must be unanimous as to the predicate criminal law violation in order to find that Plaintiffs have met their burden for this element. It is not enough for each member of the jury to conclude that a defendant committed *a* criminal law violation; the jury must unanimously agree that a defendant committed the *same* criminal law violation. *Cf.* 4 Leonard B. Sand *et al.*, Modern Federal Jury Instructions – Civil ¶ 84.02, Instruction 84-7 (instructing the jury in a civil RICO case that they must unanimously agree on at least two particular racketeering acts to satisfy the third element of the statute); Fifth Circuit Pattern Jury Instructions – Civil, Instruction 8.1 ("you cannot find that the defendant has engaged in a 'pattern of racketeering activity' unless you unanimously agree to which of the alleged predicate offenses, if any, make up the pattern").

Finally, the proposed instruction is unfairly one-sided. It instructs the jury that "if [they] determine that a defendant's conduct . . . was a violation of any of the criminal laws I am about to describe, then the second element of the ATA will have been met for that defendant, as to that attack." DE 582 at 27. But it does not instruct the jury that if they do *not* determine that a defendant's conduct was a violation of the criminal laws, then the second element of the ATA will not have been met and they must find the defendant not liable.

Should the Court give a preliminary instruction about the predicate criminal law violations, the Court should instruct the jury as follows:

To establish the criminal law violation element of their ATA claim, plaintiffs must prove by clear and convincing evidence that a defendant – the PA or the PLO – violated one of the criminal laws that I am about to describe to you.  To find that this element is met, you must all agree that the defendant committed the *same* criminal law violation.  It is not enough for each member of the jury to find that the defendant committed *a* criminal law violation. For each plaintiff, if you find that the defendant's conduct was a violation of the same criminal law, then the second element of the ATA will have been met for that defendant, as to that plaintiff.  On the other hand, if you do not find that the defendant's conduct was a violation of the same criminal law, then the second element of the ATA will not have been met for that defendant, as to that plaintiff, and you must find the defendant not liable for the ATA claim, as to that plaintiff.

43

### Plaintiffs' Proposed Instruction No. 21-a: Murder

Defendants object to Plaintiffs' Proposed Instruction No. 21-a because it is vague and confusing. It does not set out the elements of the offense of First Degree Murder or the definitions of those elements, as the pattern instruction does. *See* 2Hon. Leonard B. Sand *et al.*, <u>Modern Federal Jury Instructions – Criminal</u> ¶ 41.01. Instead of describing murder, as Plaintiffs propose, the Court should give the actual pattern jury instructions for First Degree Murder. *See id.* at ¶ 41.01, Instructions 41-(2-5). The Court can simply omit the fourth element – offense occurred in federal jurisdiction. *See id.* at 41-6. Specifically, the Court should instruct the jury as follows:

> It is a criminal law violation to commit murder in the first degree. To prove murder in the first degree, Plaintiffs must prove by clear and convincing evidence each of the following elements :
> First, that the defendant unlawfully killed a victim;
> Second, that the defendant acted with malice aforethought; and
> Third, that the defendant acted with premeditation.
> The first element the Plaintiffs must prove by clear and convincing evidence is that the defendant unlawfully killed the victim. In this regard it is the Plaintiffs' burden to prove that the defendant's conduct was the direct cause of the victim's death. This means simply that Plaintiffs must prove that the defendant inflicted an injury or injuries upon the deceased from which the deceased died. An act is done unlawfully if it was done without justification or excuse. While the taking of a human life is a most serious matter, not all killing, even when intentional, is unlawful.
> The second element that the Plaintiffs must prove by clear and convincing evidence is that the defendant acted with malice aforethought. Malice is the state of mind that would cause a person to act without regard to the life of another. To satisfy this element, the defendant must have acted consciously, with the intent to kill another person. In order to establish this element, the Plaintiffs must prove that the defendant acted willfully, with a bad or evil purpose to break the law. However, the Plaintiffs need not prove spite, malevolence, hatred or ill will toward the victim.
> The third element that the Plaintiffs must prove by clear and convincing evidence is that the defendant acted with premeditation. An act is done with premeditation if it done upon

planning or deliberation.  In order to satisfy this element the plaintiffs must prove that the defendant killed the victim only after thinking the matter over, deliberating whether to act before committing the crime.  There is no requirement that the Plaintiffs prove that the defendant deliberated for any particular period of time in order to show premeditation.  The amount of time needed for premeditation of a killing depends on the person and the circumstances.  It is sufficient to satisfy this element if you find that before it acted, the defendant had a period of time to become fully aware of what it intended to do and to think it over before it acted.

Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the offense of murder in the first degree.

On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of murder in the first degree.

Adapted from 2 Hon. Leonard B. Sand *et al.*, <u>Modern Federal Jury Instructions – Criminal</u> ¶

41.01, Instructions 41-(2-5).

## Plaintiffs' Proposed Instruction No. 21-b: Attempted Murder

Plaintiffs' Plaintiffs' Proposed Instruction No. 21-b is generally correct.  Defendants urge

the Court to use the complete language in the pattern instruction.  *See id.* at ¶ 10.01.

Specifically, the Court should instruct the jury as follows:

> It is a criminal law violation to commit the offense of attempting to commit first degree murder.  In order to prove the offense of attempting to commit the crime of first degree murder, the Plaintiffs must prove the following two elements by clear and convincing evidence:
>
> First, that the defendant intended to commit the crime of first degree murder; and
>
> Second, that the defendant did some act that was a substantial step in an effort to bring about or accomplish the crime.
>
> Mere intention to commit a specific crime does not amount to an attempt.  In order to find that the defendant committed an attempt, you must find by clear and convincing evidence that the defendant intended to commit the crime charged, and that it took some action which was a substantial step toward the commission of that crime.
>
> In determining whether the defendant's actions amounted to a substantial step toward the commission of that crime, it is necessary to distinguish between mere preparation on the one hand, and the actual doing of the criminal deed on the other.  Mere preparation, which may consist of planning the offense, or of devising, obtaining, or arranging a means for its commission, is not an attempt, although some preparations may amount to an attempt. The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.
>
> Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the offense of attempted murder.
>
> On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of attempted murder.

Adapted from 1 Hon. Leonard B. Sand *et al.*, <u>Modern Federal Jury Instructions – Criminal</u> ¶

10.01, Instruction 10-1.

1445731.1

**Plaintiffs' Proposed Instruction No. 21-c: Intentional Homicide**

Defendants object to Plaintiffs' Proposed Instruction No. 21-c because the plaintiffs' theory in this case is that the perpetrators of the attacks committed or attempted to commit premeditated murder, not second degree murder. Should the Court instruct the jury on second degree murder, the Court should use the complete language in the pattern instruction. Specifically, the Court should instruct the jury as follows:

> It is a criminal law violation to commit the offense of second degree murder. The elements of second degree murder are:
> First, that the defendant unlawfully killed the victim; and
> Second, that the killing occurred with malice aforethought.
> Again, it is the plaintiffs' burden to prove both of these elements by clear and convincing evidence.
> As you can see, the crime of murder in the second degree does not require the plaintiffs to prove one element required for murder in the first degree, namely premeditation.
> Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the offense of second degree murder.
> On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of second degree murder.

Adapted from 2 Hon. Leonard B. Sand *et al.*, <u>Modern Federal Jury Instructions – Criminal</u> ¶ 41.01, Instruction 41-12.

1445731.1

**Plaintiffs' Proposed Instruction No. 21-d: First Degree Manslaughter**

Defendants object to Plaintiffs' Proposed Instruction No. 21-d because Plaintiffs did not

plead manslaughter in their complaint. *See* DE 4 at 26. In addition, the plaintiffs' theory in this

case is that the perpetrators of the attacks committed or attempted to commit premeditated

murder, not manslaughter. Plaintiffs' Proposed Instruction No. 21-d is also vague and confusing

because it does not set out the elements of the offense of manslaughter or the definitions of those

elements, as the pattern jury instruction does. *See* 2 Hon. Leonard B. Sand *et al.*, Modern

Federal Jury Instructions – Criminal ¶ 41.01. Should the court instruct the jury on manslaughter,

the Court should instruct the jury as follows:

> It is a criminal law violation to commit the offense of
> voluntary manslaughter. To prove the charge of voluntary
> manslaughter, the plaintiffs must establish each of the following
> elements by clear and convincing evidence:
> > First, that the defendant unlawfully killed the victim; and
> > Second, that the defendant intentionally did so while in the
> heat of passion.
> > The first element the plaintiffs must prove is that the
> defendant killed the victim. In this regard, it is the plaintiffs'
> burden to prove that the defendant's conduct was the direct cause
> of the victim's death. This means simply that the plaintiffs must
> prove that the defendant inflicted an injury or injuries upon the
> deceased from which the deceased died. An act is done unlawfully
> if it was done without justification or excuse. While the taking of a
> human life is a most serious matter, not all killing, even when
> intentional, is unlawful.
> > The second element that the plaintiffs must prove by clear
> and convincing evidence is that the defendant acted intentionally
> while in the heat of passion. To establish this element the
> plaintiffs must prove two things: first, that the defendant acted
> intentionally, that is that it intended to kill the victim, or acted
> recklessly with extreme indifference to human life. Second, the
> plaintiffs must prove that defendant acted in the heat of passion.
> What is meant by the expression "heat of passion"? Heat of
> passion is such a passion or emotion as naturally would be aroused
> in the mind of an ordinary reasonable person of average disposition
> in the same or similar circumstances as confronted the defendant at
> the time the killing occurred. It is such a state of passion, or hot

48

blood, or rage, anger, resentment, terror or fear as to indicate the absence of deliberate design to kill or as to cause one to act on impulse without reflection.

Thus, the law does not consider the peculiarities of a particular defendant's nature or temperament or condition. The passion which was aroused from the facts and circumstances that confronted the defendant must be such as also would have aroused the passion of an ordinary reasonable person likewise situated.

The basic inquiry is whether or not at the time of the killing, the reason and judgment of the defendant was obscured or disturbed by passion to such an extent as would cause an ordinary reasonable person of average disposition to act rashly and without deliberation and from passion rather than judgment.

Before you may find that the defendant acted in the heat of passion, you must also find that there was adequate provocation. Here, too, the provocation or acts arousing such passion must be such as to create the same degree of passion in a reasonable person and cause him or her to lose self-control. The question is, was the provocation so slight as to arouse passion, or was it sufficient to cause an ordinary man, a reasonable man, an average man, to become aroused? Would the ordinarily reasonable man, placed in the same position in which the defendant found itself, and knowing what the defendant then knew or believed it knew, have been thrown into such heat of passion?

Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the offense of voluntary manslaughter.

On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of voluntary manslaughter.

Adapted from 2 Hon. Leonard B. Sand *et al.*, Modern Federal Jury Instructions –

Criminal ¶ 41.01; *id.* at ¶ 41.02, Instructions 41-(14-16).

49

1445731.1

**Plaintiffs' Proposed Instruction No. 21-e: Criminal Assault**

Defendants object to proposed Instruction No. 21-e because it does not contain the complete pattern instruction for criminal assault. *See* N.Y. Criminal Jury Instructions – Assault 2 (120.05(1)). Should the Court instruct the jury on criminal assault, the Court should include the following language in addition to the language proposed in Instruction No. 21-e:

> In order for you to find that the defendant committed the offense of assault, the Plaintiffs are required to prove, from all the evidence in the case, by clear and convincing evidence, both of the following two elements:
>
> First, that the defendant caused serious physical injury to the victim; and
>
> Second, that the defendant did so with the intent to cause serious physical injury to the victim.
>
> Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence both of those elements, you must find that Plaintiffs have proven that the defendant committed the offense of criminal assault.
>
> On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence either one or both of those elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of criminal assault.

Adapted from N.Y. Criminal Jury Instructions – Assault 2 (120.05(1)).

1445731.1

**Plaintiffs' Proposed Instruction No. 21-f: Reckless Endangerment**

Defendants object to Plaintiffs' Proposed Instruction No. 21-f because Plaintiffs did not plead reckless endangerment in their complaint. *See* DE 4 at 26. Furthermore, the plaintiffs' theory in this case is that the perpetrators of the attacks committed or attempted to commit premeditated murder or assault, not reckless endangerment. Finally, reckless endangerment cannot constitute an act of "international terrorism" under the ATA because it is a misdemeanor (*see* N.Y. Criminal Jury Instructions – Reckless Endangerment Second Degree (120.20) (defining the offense as "a misdemeanor)), and therefore does not "involve violent acts or acts dangerous to human life" (18 U.S.C. § 2331(1)). Should the Court instruct the jury on reckless endangerment, the Court should use the exact language in the pattern jury instruction. *See* N.Y. Criminal Jury Instructions – Reckless Endangerment Second Degree. Specifically, the Court should instruct the jury as follows:

> It is a criminal law violation to commit the offense of Reckless Endangerment. A person commits the offense of reckless endangerment when that person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.
> Serious physical injury means impairment of a person's physical condition which creates a substantial risk of death, or which causes death, or serious and protracted disfigurement, or protracted impairment of health or protracted loss or impairment of the function of any bodily organ.
> A person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person: (1) when he or she engages in conduct which creates a substantial and unjustifiable risk of serious physical injury to another person, (2) and when he or she is aware of and consistently disregards that risk, (3) and when that risk is of such nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
> In order for you to find that the defendant committed the offense of reckless endangerment, the Plaintiffs are required to prove, from all the evidence in the case, by clear and convincing evidence, that on or about (date), the defendant recklessly engaged

in conduct which created a substantial risk of serious physical injury to another person.

Therefore, if you find that the Plaintiffs have proven the element by clear and convincing evidence, you must find that Plaintiffs have proven that the defendant committed the offense of reckless endangerment.

On the other hand, if you find that the Plaintiffs have not proven that element by clear and convincing evidence, you must find that the Plaintiffs have not proven that the defendant committed the offense of reckless endangerment.

Adapted from N.Y. Criminal Jury Instructions – Reckless Endangerment Second Degree

(120.20)

1445731.1

**Plaintiffs' Proposed Instruction No. 21-g: Promoting a Suicide Attempt**

Defendants object to Plaintiffs' Proposed Instruction No. 21-g because Plaintiffs did not plead promoting a suicide attempt in their complaint. *See* DE 4 at 26. Furthermore, the plaintiffs' theory in this case is that the perpetrators of the attacks committed or attempted to commit premeditated murder or assault, not promoting a suicide attempt. Should the Court instruct the jury on promoting a suicide attempt, the Court should use the exact language in the pattern jury instruction. *See* N.Y. Criminal Jury Instructions – Promoting a Suicide Attempt (120.30). Specifically, the Court should instruct the jury as follows:

> It is a criminal law violation to commit the offense of promoting a suicide attempt. A person commits the offense of promoting a suicide attempt when he or she intentionally causes or aids another person to attempt suicide. The term 'intentionally' used in this definition has its own special meaning in our law. I will now give you the meaning of that term. Intent means conscious objective or purpose. Thus a person intentionally causes or aids another person to attempt suicide when his or her conscious objective or purpose is to do so.
>
> In order for you to find that the defendant committed this offense, the Plaintiffs are required to prove from all the evidence in this case, by clear and convincing evidence, both of the following two elements:
>
> First, that a person attempted suicide; and
>
> Second, that the defendant intentionally caused or aided him/her to do so.
>
> Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence both of those elements, you must find that Plaintiffs have proven that the defendant committed the offense of promoting a suicide attempt.
>
> On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence either one or both of those elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of promoting a suicide attempt.

Adapted from N.Y. Criminal Jury Instructions – Promoting a Suicide Attempt (120.30).

53

**Plaintiffs' Proposed Instruction No. 21-h: Hate Crimes**

Defendants object to Plaintiffs' Proposed Instruction No. 21-h because Plaintiffs did not plead hate crimes in their complaint . *See* DE 4 at 26.  In addition, Plaintiffs' Proposed Instruction No. 21-h is superfluous because the jury has to make the preliminary finding that the defendant committed the underlying offense before determining whether he did so as a hate crime.  Plaintiffs' Proposed Instruction No. 21-h therefore appears intended to arouse the emotion of the jury by suggesting that the underlying attacks at issue were hate crimes.  Should the Court instruct the jury on hate crimes, the Court should use the exact language in the pattern jury instruction.  *See* N.Y. Criminal Jury Instructions -- Hate Crime (485.05).

1445731.1

**Plaintiffs' Proposed Instruction No. 21-i: Accessory**

Defendants object to Plaintiffs' Proposed Instruction No. 21-i because "accessory" is not a criminal law violation but a theory of liability. Instruction No. 21-i does not even indicate the underlying criminal offense to which the defendant is accused of being an accessory. In any event, it follows from the Second Circuit's holding in *Rothstein v. UBS AG*, 708 F.3d 82, 97-98 (2d Cir. 2013) that the civil liability provision of the ATA does not permit aiding and abetting liability that it also does not permit accessory liability.

**Plaintiffs' Proposed Instruction No. 21-j: Bombing of a Mass Transportation Vehicle**

Defendants object to Plaintiffs' Proposed Instruction No. 21-j because Plaintiffs did not plead bombing of a mass transportation vehicle in their complaint. *See* DE 4 at 26. Defendants further object to this instruction because it is based on a crime contained in 18 U.S.C. § 1992, which was not enacted until March 9, 2006. Accordingly, because § 1992 was not in effect at time the acts at issue occurred, Plaintiffs cannot rely on it to meet § 2333(a)'s predicate criminal act requirement.

56

**Plaintiffs' Proposed Instruction No. 21-k: Bombing of a Public Place**

Defendants object to Plaintiffs' Proposed Instruction No. 21-k because Plaintiffs did not plead bombing of a public place in their complaint. *See* DE 4 at 26. Defendants further object to the proposed instruction because it is based on 18 U.S.C. § 2332f, which was not enacted until June 25, 2002. The instruction can thus only be used for the bombings that occurred after June 25, 2002. Only two of the five bombings at issue occurred after that date. If the Court instructs the jury on this statute, it will have to make clear that it applies only to certain alleged bombings. Avoiding this potential confusion is another reason to have separate trials in this matter.

The proposed instruction is also vague and confusing. Should the Court instruct the jury on bombing of a mass transportation vehicle, the Court should instruct the jury as follows:

> It is a criminal law violation to commit the offense of bombing of a public place. This instruction applies only to the alleged July 31, 2002 bombing and January 29, 2004 bombing. You many not consider this alleged law violation for any other attack at issue in this case. In order to establish that the defendant committed this offense the plaintiffs must prove by clear and convincing evidence each of the following elements:
>
> First, that the defendant unlawfully delivered, placed, discharged, or detonated an explosive device or other lethal device in a place of public use, a state or government facility, a public transportation system, or an infrastructure facility, and
>
> Second, that he or she did so with intent to cause death or serious bodily injury, or with intent to cause extensive destruction of such a place, facility, or system, where such destruction results in or is likely to result in major economic loss.
>
> A person acts intentionally if he acts deliberately and purposely. That is, a defendant's acts must have been the product of defendant's conscious objective rather than the product of a mistake or accident.
>
> A person acts with reckless disregard for the safety of human life if he acts in conscious disregard of known probable consequences to the safety of human life. In other words, even if a person did not intentionally seek to harm another, if he nevertheless purposely disregarded the high probability that his actions would cause harm to another, then he acted with reckless disregard for the safety of human life.

1445731.1

Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the offense of bombing of a public place.

On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of bombing of a public place.

Adapted from 18 U.S.C. § 2332f(a)(1); 1 Leonard B. Sand *et al.*, <u>Modern Federal Jury</u>

<u>Instructions – Criminal</u> ¶ 3A.01, Instruction 3A-4.

1445731.1

**Plaintiffs' Proposed Instruction No. 21-l: Harboring a Terrorist**

Defendants object to Plaintiffs' Proposed Instruction No. 21-l because Plaintiffs did not

plead harboring a terrorist in their complaint.  *See* DE 4 at 26.  The proposed instruction is also

vague and confusing.   Should the Court instruct the jury on harboring a terrorist, the Court

should instruct the jury as follows:

> It is a criminal law violation to conceal or harbor a terrorist. In order to establish that the defendant committed this offense the plaintiffs must prove by clear and convincing evidence each of the following elements:
>
> First, that the defendant harbored or concealed a person; and
>
> Second, that at the time the defendant harbored or concealed a person, he knew or had reasonable grounds to believe that the person has committed, or is about to commit, one of the acts that injured a plaintiff in this case.
>
> To harbor and conceal means to do any physical act of providing assistance to aid the person in avoiding detection or apprehension.
>
> Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the offense of harboring a terrorist.
>
> On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of harboring a terrorist.

Adapted from 18 U.S.C. § 2332f(a)(1); *United States v. Kutas*, 542 F.2d 527, 528 (9th Cir.

1976).

59

1445731.1

**Plaintiffs' Proposed Instruction No. 21-m: Material Support for Terrorist Acts – 18 U.S.C. § 2339A**

Defendants object to Plaintiffs' Proposed Instruction No. 21-m for a number of reasons. First, Plaintiffs did not plead material support for terrorist acts in the FAC. *See* DE 4 at 26. Second, Plaintiffs cannot rely on the three predicate criminal offenses they cite in Plaintiffs' Proposed Instruction No. 21-m: bombing of a mass transportation vehicle, bombing of a public place, and conspiracy to commit murder. *See* DE 582 at 40. Bombing of a mass transportation vehicle, 18 U.S.C. § 1992, was not enacted until 2006 (*see id.*), at which time all of the attacks at issue in this case had already occurred, while bombing of a public place, 18 U.S.C. 2332f, was enacted on June 25, 2002 (*see id.*), at which time five of the seven attacks had already occurred. Because the ATA is first a criminal statute that only "piggy-backs" civil remedies, it would violate the Ex Post Facto and Due Process Clauses of the U.S. Constitution to apply the predicate criminal offenses retroactively. *See Snowden v. Lexmark International, Inc.*, 237 F.3d 620, 624 (6th cir. 2001) (dismissing a civil RICO case because the alleged criminal conduct giving rise to the suit occurred before the enactment of the predicate criminal offense); *see also Landgraf v. USI Film Products*, 511 U.S. 244 (1994) (discussing the presumption against retroactivity of civil statutes); *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 U.S. Dist. LEXIS 15109, at *34-35 (D.D.C. Oct. 6, 2000) (noting that retroactive application of a treble damages statute would raise potential constitutional concerns under the ex post facto and due process clauses). Conspiracy to commit murder, 18 U.S.C. § 956, had been enacted at the time of the seven attacks at issue, but Plaintiffs did not provide a separate jury instruction for that offense. *See generally* DE 582 at 28-49. They merely provide a generic conspiracy instruction, which instructs the jury generally on "a conspiracy to violate a criminal law," does not reference 18 U.S.C. § 956, and does not even list the object of the conspiracy or the overt acts that were allegedly taken in

60

furtherance of the conspiracy. *Id.* at 46-48.  Having failed to request a specific instruction

related to 18 U.S.C. § 956, Plaintiffs cannot rely on conspiracy to commit murder as a predicate

criminal offense under 18 U.S.C. § 2339A.  In any event, as discussed below, conspiracy is not a

proper predicate criminal offense for civil liability under the ATA.  *See Linde v. Arab Bank,*

*PLC*, 944 F. Supp. 2d 215, 216-17 (E.D.N.Y. 2013).  In the end, the only potential predicate

offense instruction that may be given is bombing of a place and it may only be given for the two

attacks that occurred after it was enacted on June 25, 2002.[1]

Third, Plaintiffs' Proposed Instruction No. 21-m's definition of "material support or

resources" is wrong because it includes "services" even though "services" did not appear in the

definition of 18 U.S.C. § 2339A until December 2004, at which time all of the attacks in this

case had occurred.  *See* Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA").

Dec. 17, 2004, P.L. 108-458, § 6603(b), 118 Stat. 3762.  *See Holder v. Humanitarian Law*

*Project*, 130 S. Ct. 2705, 2715 (2010) (with IRTPA, Congress "added the term 'service' to the

definition of 'material support or resources'"); *Humanitarian Law Project v. Mukasey*, 552 F.3d

916, 923 (9th Cir. 2009) ("In enacting IRTPA, Congress amended the definition of 'material

support or resources' to include an additional ban on providing 'service.'").

Fourth, Plaintiffs' Proposed Instruction No. 21-m misstates the scienter requirement for

this offense by informing the jury that "[they] need not find that the person for whose conduct a

defendant is liable intended that specific crimes or terror attacks be carried out."  DE 582 at 40

(emphasis added).  In fact, the Second Circuit has held that "[s]ection 2339A requires . . . that the

defendant provide support or resources with the knowledge or intent that such resources be used

---

[1] That the 18 U.S.C. § 2339A instruction can only be given for two of the seven attacks at issue is yet
another reason why the Court should order separate trials in this case.  Instructing the jury on 18 U.S.C. §
2339A for only two of the attacks will further confuse the jury.

1445731.1

to commit *specific* violent crimes." *United States v. Stewart*, 590 F.3d 93, 113 (2d Cir. 2009) (emphasis added).  Finally, Plaintiffs' Proposed Instruction No. 21-m fails to instruct the jury that they must be unanimous as to at least one form of material support or resources that the defendant provided.

Should the Court instruct the jury on this offense, the Court should instruct the jury as follows:

> I will now instruct you on the criminal law violation of material support for terrorist acts.  This instruction applies only to the alleged July 31, 2002 bombing and January 29, 2004 bombing. You may not consider this alleged law violation for any of the other attacks at issue in this case.
>
> It is a criminal law violation to provide material support for a terrorist act.   In order to establish that the defendant committed this offense the plaintiffs must prove by clear and convincing evidence each of the following elements:
>
> First, that a bombing of a public place occurred;
>
> Second, that the defendant provided material support or resources for that specific bombing of a public place; and
>
> Third, that the defendant's provision of material support or resources was done knowing or intending that the support or resources were to be used in preparation for, or in carrying out, that specific bombing of a public place.
>
> I have already instructed you on the elements of a bombing of a public place.  You should apply those instructions here in order to determine whether the plaintiffs have proven that a bombing of a public place occurred.
>
> The phrase "material support or resources" means currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, and transportation, except medicine or religious materials.
>
> A person acts knowingly if he acts intentionally and voluntarily and not because of ignorance, mistake, accident, or carelessness.  Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.  A person acts intentionally if he acts deliberately and purposely.  That is, a defendant's acts must have been the product of defendant's conscious objective rather than the product of a mistake or accident.

1445731.1

For each attack, you must be unanimous as to at least one form of material support or resources that the defendant provided. Thus, if you cannot all agree on one form of material support or resources that the defendant provided for the attack, then you must find that plaintiffs have not met their burden as to that attack.

Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the offense of material support for terrorist acts.

On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of material support for terrorist acts.

Adapted from 18 U.S.C. § 2339A; 1 Leonard B. Sand *et al.*, Modern Federal Jury Instructions – Criminal ¶ 3A.01, Instructions 3A-1, 3A-4.

1445731.1

**Plaintiffs' Proposed Instruction No. 21-n: Material Support for Hamas or AAMB — 18 U.S.C. § 2339B**

Defendants object to Plaintiffs' Proposed Instruction No. 21-n because Plaintiffs did not plead material support for Hamas or AAMB in their complaint. *See* DE 4 at 26. In addition, Plaintiffs' cannot satisfy the statute's jurisdictional requirements. 18 U.S.C. § 2339B(d)(1). *See* DE 497, Mem. at 21.

Further, Plaintiffs' Proposed Instruction No. 21-n misstates the scienter requirement for this offense by failing to instruct that "that the aid [to the designated foreign terrorist organization] be intentional" (*United States v. Al Kassar*, 660 F.3d 108, 129 (2d Cir. 2011)) and by instructing that the jury can find liability based on the defendant's "conscious purpose to avoid learning the truth about the organization's links to terrorism" (DE 582 at 42). As the Second Circuit stated in *Al Kassar*, "The statute thus imposes two express scienter requirements: that the aid be *intentional* and that the defendant *know* the organization he is aiding is a terrorist organization or engages in acts of terrorism." 660 F.3d at 129 (emphasis added). Furthermore, the proposed instruction invades the province of the jury by instructing the jury "as a matter of law" that AAMB and Hamas were designated foreign terrorist organizations.

Should the Court instruct the jury on this offense, the Court should instruct the jury as follows:

> It is a criminal law violation to provide material support to a foreign terrorist organization. This instruction applies only to the alleged June 19, 2002, July 31, 2002, and January 29, 2004 bombings. You may not consider this alleged law violation for any other attack at issue in this case. In a minute I will tell you the elements of this offense. Before I do that, recall that there are two alleged foreign terrorist organizations to whom defendants are accused for proving material support, Hamas and Al Aqsa Martyrs Brigade (AAMB). You must apply the elements I am about to tell you for each group separately. The elements of this offense, each

1445731.1

of which the plaintiffs must prove by clear and convincing evidence, are:

First, that at the time of the attack at issue, [Hamas/AAMB] was a designated terrorist organization.

Second, that the defendant intentionally provided material support or resources to [Hamas/AAMB]. The alleged material support or resources must given to [Hamas/AAMB], not merely to individuals who are members of the organization. In other words, the alleged material support or resources must be given knowing that they will further the activities of the organization and not just the personal interests or needs of its individual members; and

Third, that at the time of the provision of material support or resources, the defendant knew that [Hamas/AAMB] was designated by the United States Secretary of State as a foreign terrorist organization or that [Hamas/AAMB] has engaged or engages in terrorist activity or terrorism.

The phrase "material support or resources" means currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, and transportation, except medicine or religious materials.

The phrase "terrorist activity" means any activity which would be unlawful under the laws of the United States or any State and which involves the highjacking or sabotage of any conveyance, the seizing or detaining, and threatening to kill, injure or continue to detain, another individual in order to compel a third person, including a governmental organization, to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained, or the violent attack upon an internationally protected person.

The word "terrorism" means premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents.

A person acts intentionally if he acts deliberately and purposely. That is, a defendant's acts must have been the product of defendant's conscious objective rather than the product of a mistake or accident.

A person acts knowingly if he acts intentionally and voluntarily and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

Therefore, if you find that the Plaintiffs have proven by clear and convincing evidence each of the elements, you must find that Plaintiffs have proven that the defendant committed the

65

offense of providing material support to a foreign terrorist organization.

On the other hand, if you find that the Plaintiffs have not proven by clear and convincing evidence each of the elements, you must find that the Plaintiffs have not proven that the defendant committed the offense of providing material support to a foreign terrorist organization.

Adapted from 18 U.S.C. § 2339B; 8 U.S.C. § 1182(a)(3)(B); 22 U.S.C. § 2656f(d)(2); *United States v. Al Kassar*, 660 F.3d 108, 129 (2d Cir. 2011); 1 Leonard B. Sand *et al.*, <u>Modern Federal Jury Instructions – Criminal</u> ¶ 3A.01, Instructions 3A-1, 3A-4.

1445731.1

**Plaintiffs' Proposed Instruction No. 21-o: Material Support for Hamas Weapons Program**
**— 18 U.S.C. § 832**

Defendants object to Plaintiffs' Proposed Instruction No. 21-o because Plaintiffs did not plead material support for Hamas weapons program in their complaint. *See* DE 4 at 26. Defendants further object to this instruction because it is based on a crime contained in 18 U.S.C. § 832, which was not enacted until December 17, 2004. Accordingly, because § 832 was not in effect at the time of the acts at issue, Plaintiffs cannot rely on it to satisfy § 2333(a)'s predicate criminal act requirement.

1445731.1

**Plaintiffs' Proposed Instruction No. 21-p: Contribution to Benefit Hamas or AAMB – 50 U.S.C. § 1705**

Defendants object to Plaintiffs' Proposed Instruction No. 21-p because Plaintiffs did not plead contribution to benefit Hamas or AAMB in the FAC. *See* DE 4 at 26. In addition, the underlying law violation, 31 C.F.R. § 595.204, does not apply to the facts of this case because it proscribes conduct by a "U.S. person" and neither Defendant is a "U.S. person," nor is any of the alleged perpetrators of the attacks at issue. *See* 31 C.F.R. §§ 595.204, 595.304, 595.315. The instruction is also not a correct statement of the law because it is not limited to U.S. persons and should not be given for that reason in any event.

1445731.1

**Plaintiffs' Proposed Instructions No. 21-q: Conspiracy and No. 21-r: Elements –**
**Conspiracy**

Defendants object to the Plaintiffs' Proposed Instructions Nos. 21-q and 21-r because

Plaintiffs did not plead conspiracy to commit each of the substantive crimes in the FAC. *See* DE

4 at 26. Furthermore, the civil liability provision of the ATA "does not provide for claims for

civil conspiracy." *Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 215, 217 (E.D.N.Y. 2013).

Plaintiffs cannot bootstrap their way to conspiracy liability under 18 U.S.C. § 2333(a) by

charging conspiracy as a predicate criminal offense, particularly where, as here, they allege

conspiracy for a laundry-list of criminal offenses. *See* DE 582 at 46 (requesting a conspiracy

instruction for "any of the criminal acts I have just described").  Plaintiffs' failure describe the

object of the alleged conspiracy or conspiracies or any of the overt acts allegedly taken in

furtherance of the conspiracy or conspiracies evidences not only the flaws in their instructions

but that their principal motivation in seeking a conspiracy instruction is to (impermissibly)

bootstrap their way to civil liability through a conspiracy theory of liability.  Most telling of all,

Plaintiffs seek to "convict" Defendants of conspiracy by having the jury instructed that "[i]n

order for defendants to be *guilty* of a conspiracy to violate a criminal law, the plaintiffs must

prove by a preponderance of the evidence, first, that such a conspiracy existed . . ." *Id.* at 47

(emphasis added).  Of course, Defendants are not charged with any crimes here, and even if they

were, they could not be found guilty unless plaintiffs proved their guilt beyond a reasonable

doubt.

In any event, the intracorporate conspiracy doctrine bars Plaintiffs from charging the PA

with conspiracy because the alleged conspirators were, according to Plaintiffs,  all members of

the same entity acting within the scope of their employment. *See Little v. City of New York*, 487

F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) ("Under the 'intracorporate conspiracy' doctrine, the

69

officers, agents, and employees of a single corporate entity, each acting within the scope of her

employment, are legally incapable of conspiring together.") (internal quotation marks omitted).

**Plaintiffs' Proposed Instruction No. 21-s: Anti-Terrorism Act – Second Element Concluding Instruction**

Defendants object to Plaintiffs' Proposed Instruction No. 21-s because it is not even-handed. Defendants' further object to the language "or the conduct of an alter ego, agent, managerial agent or employee of the defendant for whose actions the defendant is liable" for the reasons stated in their objections to proposed Instruction Nos. 11-18.

The Court should instead instruct the jury as follows:

> To conclude, to find that the plaintiffs have established the criminal law violation element of the ATA for one of the defendants, you must all unanimously agree that that defendant – the PA or the PLO – committed the same criminal law violation. For each attack, if you find that the defendant's conduct was a violation of the same criminal law, then the criminal law violation element of the ATA will have been met for that defendant, as to that attack. On the other hand, if you do not find that the defendant's conduct was a violation of the same criminal law, then the criminal law violation element of ATA will not have been met for that defendant, as to that attack, and you must find the defendant not liable for the ATA claim, as to that attack.

71

**Plaintiffs' Proposed Instruction No. 22 – ATA – Third Element – Intent**

Defendants object to Plaintiffs' proposed Instruction No. 22 in its entirety because it is not a correct statement of the law and is repetitive, incomplete, misleading and confusing. Defendants' objections to specific provisions are set forth below.

Defendants object to the Plaintiffs' proposed Instruction No. 22 because it omits the requirement that a Plaintiff prove that the alleged act of international terrorism that caused his or her injuries was the product of the Defendant's deliberate wrongdoing. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22 is confusing and misleading because it suggests to the jury that a Defendant may be liable if its "conduct was done recklessly, knowingly or intentionally," even if the Defendant was not engaged in deliberate wrongdoing. The jury should not be instructed on recklessness in any event for the reasons previously stated. At a minimum, Plaintiffs' proposed Instruction No. 22 should be modified to include the requirement that the Plaintiff prove the alleged act of international terrorism that caused his or her injuries was the product of the Defendant's deliberate wrongdoing.

Defendants object to Plaintiffs' proposed Instruction No. 22 on the ground that it omits the requirement that a Plaintiff prove that a Defendant engaged in an act of international terrorism intending to injure a national of the United States. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22 is confusing and misleading because it suggests to the jury that a Defendant may be liable even if it did not intend to injure a national of the United States. At a minimum, Plaintiffs' proposed Instruction No. 22 should be modified to include the requirement that the plaintiff prove that the defendant engaged in an act

1445731.1

of international terrorism intending that Americans would be injured.  *See* DE 583 at 59 (No. 46).

Defendants also object to Plaintiffs' proposed Instruction No. 22 because it contains repetitive and incorrect instructions on vicarious liability.  *See* DE 582 at 50 (proposing that the Court "remind" the jury that "you may also find a defendant liable for the acts of its alter ego, agent, managing agent or employee").  It would be incorrect as a matter of law to instruct the jury on these vicarious liability theories for the reasons we have previously stated in our summary judgment briefing and in these objections, DE 497 at 9-18; *supra* at __, but even if the Court were to instruct the jury on those vicarious liability theories, it would be repetitive, unnecessary, misleading, and confusing to make a short-hand reference to those theories in an instruction regarding "Intent" as Plaintiffs propose here.  If the jury is going to be instructed on vicarious liability, it should only be so instructed on one occasion in a comprehensive fashion so the jury will not be confused or mislead by what is required for liability under those theories. Repeating such an instruction would also improperly prejudice the Defendants.  *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might have a tendency to force a verdict against an accused by unduly underscoring certain aspects of the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error.") (citation omitted).  Thus, at a minimum, the reference to vicarious liability should be stricken from Plaintiffs' proposed Instruction No. 22.

73

1445731.1

For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No. 22. but should instead give Defendants' Request No. 46, DE 583 at 59.

1445731.1

**Objections to Plaintiffs' Proposed Instruction No. 22-1: Knowingly**

Defendants object to Plaintiffs' proposed Instruction No. 22-1 because it omits the requirement that a Plaintiff prove that the alleged act of international terrorism that caused his or her injuries was the product of the Defendant's deliberate wrongdoing. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22-1 is confusing and misleading because it suggests to the jury that a Defendant may be liable if its conduct was done "knowingly" even if the Defendant was not engaged in deliberate wrongdoing. At a minimum, Plaintiffs' proposed Instruction No. 22-1 should be modified to include the requirement that the plaintiff prove the alleged act of international terrorism that caused his or her injuries was the product of the defendant's deliberate wrongdoing.

Defendants further object to Plaintiffs' proposed Instruction No. 22-1 because it omits the requirement that a Plaintiff prove that a Defendant engaged in an act of international terrorism intending to injure a national of the United States. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22-1 is confusing and misleading because it suggests to the jury that a Defendant may be liable even if it did not intend to injure a national of the United States. At a minimum, Plaintiffs' proposed Instruction No. 22-1 should be modified to include the requirement that the plaintiff prove that the defendant engaged in an act of international terrorism intending that Americans would be injured.

Defendants also object to Plaintiffs' proposed Instruction No. 22-1 because it is not based on the ATA or any cases construing the ATA, but is instead based upon a pattern instruction for securities fraud. It is also not a useful instruction because it does not inform the jury regarding what type of knowledge would make a defendant liable under 18 U.S.C. § 2333(a). Because section 2333(a) allows recovery only for an act of "international terrorism" committed against a

75

1445731.1

"national of the United States," a plaintiff must show that a defendant intended that its actions would result in injury to an American. 18 U.S.C. § 2333(a). It would not proper to the jury to tell them that a Defendant can be liable for "knowing" conduct, because § 2333(a) requires intentional conduct. Moreover, the jury will likely have difficulty in distinguishing "knowing" conduct from "intentional" conduct in the context of this case. Plaintiffs' proposed Instruction No. 22-1 regarding scienter for securities fraud will also not assist the jury in this regard because it tells the jury that to act "knowingly" is to act "intentionally and deliberately," DE 582 at 50, thus equating the two concepts and making one a component of the other. It will thus confuse the jury to tell them that can find a defendant liable if it acts either "knowingly" or "intentionally,' but that that "knowingly" "means to act" both "intentionally and deliberately." Moreover, both "intentionally and deliberately" are already covered in Defendants' proposed instruction that "the plaintiff must prove that the alleged act of international terrorism that caused his or her injuries was the product of the defendant's *deliberate* wrongdoing. Specifically, the plaintiff must prove that the defendant engaged in an act of international terrorism *intending* that Americans would be injured." DE 583 at 59 (emphasis added).

For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No. 22-1. If the Court is going to give an instruction using the term "knowing," it should just give Defendants' Request No. 46, DE 583 at 59, and modify it to add the term "knowing" as follows:

> In addition to the other requirements under the Anti-Terrorism Act, the plaintiff must prove that the defendant acted with the necessary mental state. Thus, the plaintiff must prove that the alleged act of international terrorism that caused his or her injuries was the product of the defendant's deliberate wrongdoing. Specifically, the plaintiff must prove that the defendant engaged in an act of international terrorism *knowing or intending* that Americans would be injured." DE 583 at 59 (proposed alternative modification in italics).

76

*Cf. Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 664 (S.D. Tex. 2010) ("The defendant must know (or intend) that its money is going to a group engaged in terrorist acts or is being used to support terrorist acts.  Because civil liability under the ATA is restricted to American victims, the defendant must also know (or intend) that the terrorism or terrorist group it is supporting targets Americans.").

1445731.1

**Plaintiffs' Proposed Instruction No. 22-2: Intentional**

Defendants object to Plaintiffs' proposed Instruction No. 22-2 because it omits the requirement that a Plaintiff prove that the alleged act of international terrorism that caused his or her injuries was the product of the Defendant's deliberate wrongdoing. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22-2 is confusing and misleading because it suggests to the jury that a Defendant may be liable if its conduct was "intentional" even if the Defendant was not engaged in deliberate wrongdoing. At a minimum, Plaintiffs' proposed Instruction No. 22-2 should be modified to include the requirement that the plaintiff prove the alleged act of international terrorism that caused his or her injuries was the product of the defendant's deliberate wrongdoing.

Defendants further object to Plaintiffs' proposed Instruction No. 22-2 because it omits the requirement that a Plaintiff prove that a Defendant engaged in an act of international terrorism intending to injure a national of the United States. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22-2 is confusing and misleading because it suggests to the jury that a Defendant may be liable even if it did not intend to injure a national of the United States. At a minimum, Plaintiffs' proposed Instruction No. 22-2 should be modified to include the requirement that the plaintiff prove that the defendant engaged in an act of international terrorism intending that Americans would be injured.

Defendants also object to the second sentence of Plaintiffs' proposed Instruction No. 22-2 on the grounds that it is repetitive, unnecessary, misleading, and confusing because it contains a repetitive instruction on circumstantial evidence. *See* DE 582 at 50 (requesting that the Court ask the jury to "Please note that intent can be proved directly or it can be proved by reasonable inference from circumstantial evidence."). Defendants do not believe an instruction on circumstantial evidence is warranted, but even if the Court is going to instruct the jury on

78

circumstantial evidence, it would be repetitive, unnecessary, misleading, and confusing to make a short-hand reference to that theory in an instruction regarding the meaning of "intentional" as Plaintiffs propose here. If the jury is going to be instructed on circumstantial evidence, it should only be so instructed on one occasion in a comprehensive fashion so the jury will not be confused or mislead by what is required. Repeating such an instruction would also improperly prejudice the Defendants. *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might have a tendency to force a verdict against an accused by unduly underscoring certain aspects of the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error.") (citation omitted). Thus, at a minimum, the second sentence should be stricken from Plaintiffs' proposed Instruction No. 22-2.

For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No. 22-2. If the Court is going to give an instruction on the term "intentional," it should just give Defendants' Request No. 46. DE 583 at 59.

1445731.1

## Plaintiffs' Proposed Instruction No. 22-3: Recklessness

Defendants object to Plaintiffs' proposed Instruction No. 22-3 because it omits the requirement that a Plaintiff prove that the alleged act of international terrorism that caused his or her injuries was the product of the defendant's deliberate wrongdoing. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22-3 is confusing and misleading because it suggests to the jury that a Defendant may be liable if its conduct was "reckless" even if the Defendant was not engaged in deliberate wrongdoing. At a minimum, Plaintiffs' proposed Instruction No. 22-3 should be modified to include the requirement that the Plaintiff prove the alleged act of international terrorism that caused his or her injuries was the product of the defendant's deliberate wrongdoing.

Defendants further object to Plaintiffs' proposed Instruction No. 22-3 because it omits the requirement that a Plaintiff prove that a Defendant engaged in an act of international terrorism intending to injure a national of the United States. *See* DE 583 at 51, 59. The omission of that requirement from Plaintiffs' proposed Instruction No. 22-3 is confusing and misleading because it suggests to the jury that a Defendant may be liable even if it did not intend to injure a national of the United States. At a minimum, Plaintiffs' proposed Instruction No. 22-3 should be modified to include the requirement that the Plaintiff prove that the Defendant engaged in an act of international terrorism intending that Americans would be injured.

Defendants also object to Plaintiffs' proposed Instruction No. 22-3 because it is not based on the ATA or any cases construing the ATA, but is instead based upon a pattern instruction for civil rights violations. It is also not a useful instruction because it does not inform the jury regarding what state of mind would make a defendant liable under 18 U.S.C. § 2333(a). Because section 2333(a) allows recovery only for an act of "international terrorism" committed against a "national of the United States," a plaintiff must show that a defendant intended that its actions

80

would result in injury to an American.  18 U.S.C. § 2333(a).  It would not be proper to tell the

jury that a defendant can be liable for "reckless" conduct, because § 2333(a) requires intentional

conduct.  Defendants acknowledge that courts are divided over whether recklessness is a

sufficient state of mind for liability under 18 U.S.C. 2333(a).  *See Gill v. Arab Bank, PLC*, 891 F.

Supp. 2d 335, 363 (E.D.N.Y. 2012) ("The courts are split regarding the mental state required for

a violation of section 2333(a).").  Defendants' position is that specific intent to harm Americans

is required, and that mere recklessness is not sufficient.  *See* DE 583 at 59 n.45.  That view is

compelled by the language of § 2333(a) which creates an intentional tort for "[a]ny National of

the United States injured in his or her person, property or business by reason of an act of

international terrorism."  *See Gill*, 891 F. Supp. 2d at 365 (acknowledging argument of other

courts that "since section 2333(a) allows recovery only for acts of international terrorism

committed against 'national[s] of the United States,' a section 2333 plaintiff must show that a

section 2333 defendant knew that its actions would result in harm to Americans, or intended that

they would.") (citing *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 692-95 (7th

Cir. 2008) (*en banc*) (Wood, J., concurring in part and dissenting in part) and *Abecassis v. Wyatt*,

704 F. Supp. 2d 623, 664 (S.D. Tex. 2010)).

 For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No.

22-3.  If the Court is going to give an instruction using the term "reckless," it should give the

following instruction drawn from ATA cases that have found recklessness to be a sufficient state

of mind:

> Recklessness requires the defendant to be conscious of the risk of harm
> created by its conduct while the precaution that would eliminate or reduce
> the risk involves burdens that are so slight relative to the magnitude of the
> risk as to render the defendant's failure to adopt the precaution a
> demonstration of the defendant's indifference to the risk.  Recklessness
> means wantonness, which has been defined as the conscious doing of

1445731.1

some act under knowledge of existing conditions and conscious that from the doing of such act injury to an American will likely or probably result. In other words, there must be circumstances of aggravation or outrage, such as spite or malice, or an evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of Americans that the conduct may be called willful or wanton.  Willful and wanton misconduct approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon Americans in conscious disregard of it by exhibiting an utter indifference to or conscious disregard for the safety of Americans.  In other words, the defendant must consciously disregard a substantial and unjustifiable risk that injury to an American exists or will result from its conduct.  An activity is reckless when the potential harm to Americans that it creates is wildly disproportionate to any benefits that the activity might be expected to confer.  The risk to Americans must be weighed against the lack of social utility of the activity in adjudging its reasonableness.

See Gill v. Arab Bank, PLC, 893 F. Supp. 2d 542, 557 (E.D.N.Y. 2012); Boim v. Holy Land

Found. for Relief & Dev., 549 F.3d 685, 692-95 (7th Cir. 2008) (en banc).

1445731.1

**Objections to Plaintiffs' Proposed Instruction No. 23 – ATA – Fourth Element –**
**Appearance of Intent to Influence Government**

Defendants object to Plaintiffs' proposed Instruction No. 23 in its entirety because it is
not a correct statement of the law and is repetitive, incomplete, misleading and confusing.
Defendants' objections to specific provisions are set forth below.

Defendants object to the first sentence of Plaintiffs' proposed Instruction No. 23 because
it references the incorrect burden of proof. *See* DE 582 at 52 (referencing "a preponderance of
the evidence"). The correct burden of proof for an ATA claim is clear and convincing evidence.
*See* DE 583 at 38-39. It is inappropriate to state, let alone to repeat, the burden of proof in an
Appearance of Intent to Influence Government instruction. *Howard v. Cincinnati Sheet Metal &
Roofing Co.*, 234 F.2d 233, 235 (7th Cir. 1956). ("When an instruction is once given which fully
covers a subject, it should not be repeated. Such needless repetition amounts to an argument on
the part of the court and may mislead the jury. It is not always reversible error, but it is always
bad practice."). At a minimum, the references to the burden of proof should be stricken from
any final instruction given by the Court on Appearance of Intent to Influence Government or
corrected to reflect the clear and convincing evidence standard.

Defendants further object Plaintiffs' proposed Instruction No. 23 because, despite its title,
it provides the jury with no guidance on what constitutes an "Intent to Influence Government."
It does not define the operative phrases "intimidate or coerce a civilian population" or "influence
the policy of a government by intimidation or coercion" which are parts of the definition of
"international terrorism" contained in 18 U.S.C § 2331(1)(A).

Defendants also object to the first and third sentences of Plaintiffs' proposed Instruction
No. 23 because it contains repetitive and incorrect instructions on vicarious liability. *See* DE 582

at 52 (referring to "the conduct of an alter ego, agent, managerial agent or employee of the defendant for whose actions the defendant is liable" and "a person for whose conduct a defendant is liable").  It would be incorrect as a matter of law to instruct the jury on these vicarious liability theories for the reasons we have previously stated in our summary judgment briefing and in these objections, *see* DE 497 at 9-18, but even if the Court were to instruct the jury on those vicarious liability theories, it would be repetitive, unnecessary, misleading, and confusing to make a short-hand reference to those theories in an instruction regarding "Appearance of Intent to Influence Government" as Plaintiffs propose here.  If the jury is going to be instructed on vicarious liability, it should only be so instructed on one occasion in a comprehensive fashion so the jury will not be confused or mislead by what is required for liability under those theories.  Repeating such an instruction would also improperly prejudice the Defendants.  *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might have a tendency to force a verdict against an accused by unduly underscoring certain aspects of the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error.") (citation omitted).  Thus, at a minimum, the reference to vicarious liability should be stricken from Plaintiffs' proposed Instruction No. 23.

For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No. 23.  If the Court is going to give an instruction on appearance of intent to influence a government, it should instead give Defendants' Requests Nos. 42 and 46, DE 583 at 54 and 59.

84

**Proposed Instruction No. 24 – Anti-Terrorism Act – Fifth Element—Causation**

Defendants object to Plaintiffs' proposed Instruction No. 24 in its entirety because it is not a correct statement of the law and is repetitive, incomplete, misleading and confusing. Defendants' objections to specific provisions are set forth below.

Defendants object to the Plaintiffs' proposed Instruction No. 24 because it improperly combines "but for" and proximate cause into a single element, when both are required for ATA liability. *See* DE 583 at 51, 55-58. At a minimum, the Plaintiffs' proposed Instruction No. 24 should be modified to state that a Plaintiff must prove that the Defendant's act of international terrorism was both the "but for" and the proximate cause of the Plaintiff's injury.

Defendants also object to Plaintiffs' proposed Instruction No. 24   because it twice contains repetitive and incorrect instructions on vicarious liability. *See* DE 582 at 53.  It would be incorrect as a matter of law to instruct the jury on these vicarious liability theories for the reasons we have previously stated in our summary judgment briefing and in these objections, *see* DE 497 at 9-18, but even if the Court were to instruct the jury on those vicarious liability theories, it would be repetitive, unnecessary, misleading, and confusing to make a short-hand reference to those theories in an instruction regarding "Causation" as Plaintiffs propose here.  If the jury is going to be instructed on vicarious liability, it should only be so instructed on one occasion in a comprehensive fashion so the jury will not be confused or mislead by what is required for liability under those theories.  Repeating such an instruction would also improperly prejudice the Defendants. *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might have a tendency to force a verdict against an accused by unduly underscoring certain aspects of

85

the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error.") (citation omitted).  Thus, at a minimum, the reference to vicarious liability should be stricken from Plaintiffs' proposed Instruction No. 24.

For the foregoing reasons, the Court should not give Plaintiffs' proposed Instruction No. 24 but should instead give Defendants' Request Nos. 43-45, DE 583 at 55-57.

1445731.1

**Plaintiffs' Proposed Instruction No. 25 – Anti-Terrorism Act – Sixth Element -- Injury**

Defendants object to Plaintiffs' Proposed Instruction No. 25 in its entirety because it is not a correct statement of the law and is repetitive, misleading and confusing.  Defendants' objections to specific provisions are set forth below.

Defendants object to the first sentence of Plaintiffs' Proposed Instruction No. 25 because it references the incorrect burden of proof.  *See* DE 582 at 54 (referencing "a preponderance of the evidence").  The correct burden of proof for an ATA claim is clear and convincing evidence. *See* DE 583 at 38-39.  It is inappropriate to state, let alone to repeat, the burden of proof in an injury instruction.  *Howard v. Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 235 (7th Cir. 1956). ("When an instruction is once given which fully covers a subject, it should not be repeated. Such needless repetition amounts to an argument on the part of the court and may mislead the jury. It is not always reversible error, but it is always bad practice.") At a minimum, the references to the burden of proof should be stricken from any final instruction given by the Court on injury or corrected to reflect the clear and convincing evidence standard.

Defendants object to the second and third sentences of Plaintiffs' Proposed Instruction No. 25 on the grounds that they are not a correct statement of the law and are misleading and confusing.  As we demonstrated in our summary judgment briefing, 18 U.S.C. § 2333(a)'s requirement that a plaintiff be "injured in his or her person" requires that a plaintiff suffer a physical injury, or, at the very least, be physically present at the attack, in order to recover under § 2333(a).  *See* DE 497 at 40-43.  As a result, the second sentence, which proposes to instruct the jury that "[i]n this case, injury includes any invasion of a personal right, including emotional or mental suffering, in addition to physical or financial suffering," and the third sentence, which proposes to instruct the jury that "[a]s such, family members of decedents, for example, can

87

suffer mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice or counsel," should not be included in any instruction on injury. The inclusion of that language would be confusing and misleading because it suggests to the jury that a Defendant may be liable under the ATA even if the plaintiff was not physically injured or physically present at the attack as required by § 2333(a). Thus, at a minimum, the second and third sentences should be stricken from any final instruction given by the Court on injury.

Defendants object to the fourth, fifth and sixth sentences of Plaintiffs Proposed Instruction No. 25 because they attempt to differentiate between "injury" and "damages" in a manner that is not helpful or necessary in this case. Under the terms of 18 U.S.C. § 2333(a), only those U.S. nationals who were physically injured, or at least physically present at the time of an attack, have standing to sue. *See* DE 497 at 40-43. The jury will have no difficulty in determining at trial which of the U.S. national plaintiffs were physically injured or physically present at the attacks at issue. The fourth, fifth and sixth sentences of Plaintiffs' Proposed Instruction No. 25 are drawn from a model instruction relating to claims for injury to business or property from restraint of trade. *See* L. Sand, *et al.*, <u>Modern Federal Jury Instructions – Civil</u> ¶ 79.02, Instruction 79-23. In that type of a case, drawing a distinction between fact of injury and amount of damage may be appropriate, but in this case, which involves only claims that a given plaintiff was "injured in his or her person" rather than "in his or her . . . property or business," the distinction Plaintiffs attempt to draw is both unnecessary and likely to confuse the jury. Thus, the third, fourth and fifth sentences should be stricken from any final instruction given by the Court on injury.

88

1445731.1

For the foregoing reasons, the Court should not give Plaintiffs' Proposed Instruction No. 25, but should instead give Defendants' Request Nos. 39 and 41, DE 583 at 51, 53.

## V.     LEGAL STANDARDS FOR NON-FEDERAL CLAIMS

### Plaintiffs' Proposed Instruction No. 26 – Negligence, including 26-a, 26-b, and 26-c

Defendants object to proposed Instruction No. 26 on a number of grounds.  First,

Plaintiffs do not identify the substantive law that governs their claim.  Plaintiffs appear to rely on

some combination of Connecticut, Israeli, and New York law.  *See* DE 582 at 55.  Plaintiffs cite

two cases in which Israeli law was applied.  The first is *Wultz v. Islamic Republic of Iran*, 755 F.

Supp. 2d 1, 67-78 (D.D.C. 2010).  That lawsuit was subsequently transferred to New York

where, applying New York choice of law rules, the court held that Chinese law applies because

the allegedly tortious conduct occurred in China, not Israel.  *Wultz v. Bank of China Ltd.*, 865 F.

Supp. 2d 425, 429 (S.D.N.Y. 2012).  *See also Licci v. Lebanese Canadian Bank*, SAL, 672 F.3d

155 (2d Cir. 2012) (holding that for, conduct-regulating rules, the law of the place where the

alleged tortious conduct occurred, not the place where the injury occurred).  Neither Defendant is

alleged to have engaged in negligent conduct in Israel, Connecticut or New York.  The second

case Plaintiffs cite, *Elmaliach v. Bank of China Ltd.*, 110 A.D.3d 192 (1st Dept. 2013), has been

criticized by the U.S. Court of Appeals for the Second Circuit.  *Licci v. Lebanese Canadian

Bank*, 739 F.3d 45, 48 (2d Cir. 2013) ("We conclude that we are not bound by the First

Department's decision in Bank of China.")

Second, with the exception of the Goldberg plaintiffs, the Plaintiffs' negligence claims

are barred by the one-year, 90 day statute of limitations for commencing tort actions against

municipal defendants.  *Gonzalez v. City of New York*, 20 Misc. 3d 1130(A), 11 (N.Y. Sup. Ct.

2008).

Third, for the reasons stated in Defendants' objections to proposed Instruction Nos. 11-

18, Defendants also object to the language in the proposed instruction on "an alter ego, agent,

managerial agent or employee of the defendant for whose actions the defendant is liable." DE 582 at 55.

Fourth, Defendants object on the grounds that Defendants did not owe a duty of care to Plaintiffs and no statute imposed a duty of care on Defendants. With respect to statutory negligence, Plaintiffs cite New York and Israeli Penal laws, which have no application here. The alleged negligent conduct did not occur in New York or Israel. Moreover, Plaintiffs did not plead a violation of these laws in their complaint. *See* DE 4 at ¶¶ 185-87.

Fifth, Plaintiffs' proposed instruction No. 26-c on "Breach of Duty and Causation" appears to derive entirely from Israeli law, which, applying New York choice of law rules, has not application here. Moreover, Plaintiffs have not provided adequate notice under Federal Rule of Civil Procedure 44.1 of an intent to rely on Israeli law.

1445731.1

**Plaintiffs' Proposed Instruction No. 27 – Assault**

Defendants object to Plaintiffs' proposed Instruction on a number of grounds.  First, Plaintiffs do not identify what substantive law governs their claim.  Plaintiffs appear to be relying on New York law, but the alleged assault did not occur in New York.

Second, with the exception of Plaintiffs Jamie Sokolow, Yehonathan Bauer, and Joseph Guetta, the Plaintiffs' assault claims are barred by the New York statute of limitations for assault, which is one year.  NY CLS CPLR § 215 (2013).

**Plaintiffs' Proposed Instruction No. 28 – Battery**

Defendants object to Plaintiffs' proposed Instruction No 28 on a number of grounds.

First, under New York law, there is a one-year statute of limitations for battery.  NY CLS CPLR

§ 215 (2013).  Plaintiffs filed their Complaint on January 15, 2004.  Only three Plaintiffs

potentially have battery claims that are not barred by the statute of limitations:  Jamie Sokolow,

Yehonathan Bauer, and Joseph Guetta.

Second, the instruction is not framed in terms of the Defendants' alleged conduct.  It

does not, for example, require the Plaintiff to find that the Defendant engaged in the offensive

bodily contact with the Plaintiff.  Instead, the proposed instruction would allow the jury to

impose liability on the Defendants for the battery of "relevant individuals" and that "the

defendants are liable for the acts of the individuals."  DE 582 at 62.  The proposed instruction

does not instruct the jury on how it should determine whether the "defendants are liable for the

acts of the individual" under the applicable substantive law.  The last sentence of the instruction

implies that the Defendants could be liable if the individual is an "alter ego, agent, managerial

agent or employee" without any other showing.

Third, the proposed instruction improperly injects a conspiracy theory of liability into the

battery instruction, allowing the jury to find the Defendants is liable if an individual merely

conspires to engage in a battery.  *See id.* at 62 ("If you find that the relevant individuals

intentionally carried out bombings or shootings or conspired to do so").  The proposed

instruction does not, however, instruct the jury on the elements of a conspiracy.

Fourth, the proposed instruction refers to "civil assault" in the last sentence, rather than

"battery."

93

**Plaintiffs' Proposed Instruction No. 29 – Intentional Infliction of Emotional Distress**

Defendants object to Plaintiffs' proposed instruction on intentional infliction of emotional distress ("IIED"). No such instruction should be given.

First, no Plaintiff has a viable claim for IIED. Only Mark Sokolow, Rena Sokolow, Jamie Sokolow, Shana Gould, Shmuel Waldman, Alan Bauer, Yehonathan Bauer, Shaul Mandelkorn, Oz Guetta, and Varda Guetta could have standing to seek recovery for IIED. *See* DE 497 at 48. Yet, all of their IIED claims are barred by the applicable one-year statute of limitations. *Id.* Should the court find that the one-year statute of limitations does not bar Plaintiffs' IIED claims, then the first sentence of Plaintiffs' proposed instruction should be modified to name only those Plaintiffs listed above.

Second, Defendants cannot be sued for IIED, as public policy bars such claims against a governmental entity. *Id.*

Third, to the extent Plaintiffs seek to impose liability for conduct that constitutes verbal expression, the claim is barred by the First Amendment. *Id.* (citing *Snyder v. Phelps*, 131 S. Ct. 1207 (2011)).

Fourth, to the extent Plaintiff rely on Israeli law for their IIED claims, they failed to comply with Federal Rule of Civil Procedure 44.1.

Fifth, the second paragraph of Plaintiffs' proposed instruction alters the pattern instruction on which they rely. The second paragraph of the pattern instruction starts with the sentence: "Intent involves the state of mind with which an act is done." Plaintiffs have omitted this sentence. Should the Court find that an instruction on IIED should be given, the Court should include this sentence, as it frames the concept of intent for the jury, which is critical to a claim of *intentional* infliction of emotional distress.

94

Sixth, the pattern instruction refers to whether "first, that the *defendant's* conduct toward plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency… and, second, that *defendant's* conduct caused severe emotional distress to plaintiff and, third, that *defendant* acted with the desire to cause such distress to plaintiff…." The pattern instruction similarly refers to whether "first, *defendant's* conduct was not so outrageous and shocking as to exceed all reasonable bounds of decency…or, second, that although it was, *defendant's* conduct did not cause severe emotional distress to plaintiff or, third, that although *defendant's* conduct was outrageous and shocking and did cause severe emotional distress to plaintiff, *defendant* did not act with the desire to cause such distress to plaintiff…" Plaintiffs have altered the instruction such that instead of referring to the actions and intent of the defendant, it refers to "a person." Plaintiffs seek to hold Defendants liable for IIED. Should the Court conclude that an instruction on IIED should be given to the jury, the instruction should refer to Defendants' conduct and intent, not that of "a person."

**Plaintiffs' Proposed Instruction No. 30 – Negligent Infliction of Emotional Distress**

Defendants object to Plaintiffs' proposed instruction on negligent infliction of emotional distress ("NIED"). No such instruction should be given.

First, no Plaintiff has a viable claim for NIED. Only Mark Sokolow, Rena Sokolow, Jamie Sokolow, Shana Gould, Shmuel Waldman, Alan Bauer, Yehonathan Bauer, Shaul Mandelkorn, Oz Guetta, and Varda Guetta could have standing to seek recovery for NIED. *See* DE 497 at 48. Yet, all of their NIED claims are barred by the applicable 1-year, 90-day statute of limitations. *Id*. Should the court find that the 1-year, 90-day statute of limitations does not bar Plaintiffs' NIED claims, then the first sentence of Plaintiffs' proposed instruction should be modified to name only those Plaintiffs listed above.

Second, to the extent Plaintiffs seek to impose liability for conduct that constitutes verbal expression, the claim is barred by the First Amendment. *Id*. (citing *Snyder v. Phelps*, 131 S. Ct. 1207 (2011)).

Third, to the extent that Plaintiffs' proposed instruction is premised on New York law, is not a correct statement of the law. "A claim of negligent infliction of emotional distress under New York law has four elements: (1) breach of a duty owed to the plaintiff, which breach either unreasonably endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Silman v. Utica College*, No. 6:14-cv-0432, 2014 U.S. Dist. LEXIS 66668, at *13-14 (N.D.N.Y Apr. 30, 2014). The duty in question must be one "owed directly to the plaintiff." *E.B. v. Liberation Publs., Inc.*, 7 A.D.3d 566, 567 (N.Y. App. Div. 2d Dep't 2004). And, as with IIED, the defendant's conduct must have been "'so outrageous in character, and so extreme in degree, as to go beyond all possible

96

bounds of decency.'" *De Ratafia v. County of Columbia*, No. 1:13-cv-174, 2013 U.S. Dist.

LEXIS 138169, at *33 (N.D.N.Y Sept. 26, 2013) (quoting *Tartaro v. Allstate Indem. Co.*, 56

A.D.3d 758, 759 (N.Y. App. Div. 2nd Dep't 2008)).  Plaintiffs' proposed instruction on NIED

includes none of these elements.  Should the Court determine that it should instruct the jury on

Plaintiffs' NIED claims, and should it determine that New York law applies to Plaintiffs' NIED

claims, it should use the following instruction instead of that proposed by Plaintiffs:

> **Negligent Infliction of Emotional Distress**
>
> A plaintiff may recover for a claim of negligent infliction of
> emotional distress only when that plaintiff has proven the
> following five elements:
>
> First, that the defendant owed a duty directly to the plaintiff.
>
> Second, that the defendant breached that duty.
>
> Third, that the breach either unreasonably endangered the
> plaintiff's physical safety or caused the plaintiff to fear for his or
> her safety.
>
> Fourth, that the defendant's breach was by virtue of conduct so
> shocking and outrageous in character, and so extreme in degree, as
> to go beyond all possible bounds of decency.
>
> Fifth, the defendant's breach caused the plaintiff severe emotional
> distress.
>
> Emotional distress is severe when it is of such intensity and
> duration that no reasonable person should be expected to endure it.

*Silman*, 2014 U.S. Dist. LEXIS 66668, at *13-14; *Liberation Publs., Inc.*, 7 A.D.3d at 567.

Fourth, to the extent Plaintiffs rely on Israeli law for their IIED claims, they failed to

comply with Federal Rule of Civil Procedure 44.1.

**Plaintiffs' Proposed Instruction No. 31 – Equitable Estoppel – Statute of Limitations**

Defendants object to this proposed instruction. "Equitable estoppel is an extraordinary remedy. Under New York law, the doctrine should be invoked sparingly and only under exceptional circumstances . . . Such fraud, misrepresentation, or deception must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough nor are broad misstatements to the community at large." *Twersky v. Yeshiva University*, 2014 WL 314728, at *9 (S.N.Y.Y. Jan. 29, 2014). There is no evidence that would support such an instruction. And in any event, equitable estoppel is a question for the Court.

98

## VI.    DAMAGES

### Plaintiffs' Proposed Instruction No. 32 – Damages – General

Defendants object to the first sentence of Plaintiffs' Proposed Instruction No. 32 because it references the incorrect burden of proof.  *See* DE 582 at 52 (referencing "a preponderance of the evidence").  The correct standard is clear and convincing evidence standard.

Defendants also object to the second sentence in Plaintiffs' Proposed Instruction No. 32 – "Your verdict sheets will inform you of the claims that each plaintiff is bringing" (DE 582 at 69) – because it is irrelevant and alters the meaning of the subsequent sentence, which begins "However" and is intended to follow the first sentence in the instruction.  *See* 4 Leonard B. Sand *et al.*, Modern Federal Jury Instructions – Civil ¶ 77.01, Instruction 77-1.

For the foregoing reasons, the Court should not give Plaintiffs' Proposed Instruction No. 32, but should instead give Defendants' Request No. 51, DE 583 at 64.

1445731.1

**Plaintiffs' Proposed Instruction No. 33 – Damages – Compensatory Damages**

Defendants object to the second sentence of the second paragraph of Plaintiffs' Proposed Instruction No. 33 on the grounds that it is inapplicable to this case and would be misleading and confusing. That sentence would instruct the jury that "[f]urthermore, compensatory damages are not limited merely to expenses that plaintiff may have borne." That sentence should not be included in the instructions because all plaintiffs have waived any claims for "expenses" they "may have borne." There is, therefore, no need to instruct the jury that such expenses are part of compensatory damages. Doing so will only confuse and mislead the jury and may cause them to include an award for such expenses in any damages even though Plaintiffs have waived those claims.

Defendants object to the third sentence of the second paragraph of Plaintiffs' Proposed Instruction No. 33 on the grounds that it is likewise inapplicable to this case and would again be misleading and confusing. That sentence would instruct the jury that "[a] prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he or she has suffered because of a defendant's conduct." The pattern instruction notes that this sentence should only be included "[i]f applicable," and not all of the plaintiffs have suffered the elements of damages mentioned in that sentence. A better formulation of the elements of compensatory damages that could conceivably be awarded in this case can be found in Defendants' proposed instruction which would inform the jury that:

> You should consider the following elements of damage to the extent you find them proved by clear and convincing evidence, and no others:
>
> (1)     The present value of the plaintiff's economic loss; and
>
> (2)     The plaintiff's physical or emotional pain and mental anguish.

DE 583 at 67.

Defendants also object to Plaintiffs' proposed alteration of the final sentence of the third full paragraph of the pattern instruction on compensatory damages. *Compare* DE 582 at 70 (Plaintiffs' Proposed Instruction No. 33: Damages – Compensatory Damages) ("You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he or she is reasonably likely to suffer *in the future*."), *with* 4 Hon. Leonard Sand *et al.*, *Modern Federal Jury Instructions – Civil* ¶ 77.01, Instruction 77-3 ("You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he or she is reasonably likely to suffer *in the near future*.") (emphasis added). Plaintiffs have omitted the word "near," and have failed to support this expansion of the pattern instruction.

Defendants further object to Plaintiffs' Proposed Instruction No. 33 on the grounds that it is an incorrect statement of law and incomplete to the extent that Israeli or Palestinian law applies and it (or another instruction) fails to inform the jury that any damages awarded to a plaintiff must be reduced by the amount of any prior compensation that plaintiff has received. Under Israeli and Palestinian law, any financial benefit that the plaintiff received as a result of the tort and its aftermath must be deduced from the plaintiff's compensation. *See* Report of Muhammad Dahleh ¶ 103 (attached as Exhibit 1). A number of the plaintiffs have received compensation for the injuries they claim in this case from the Government of Israel and other sources, including recoveries from other lawsuits. Accordingly, to the extent New York's choice of law rules require that either Israeli or Palestinian law be applied, the jury must be instructed that it must reduce any award to a plaintiff by the amount that plaintiff has received from any other sources as compensation for the injuries claimed in this case.

For the foregoing reasons, the Court should not give Plaintiffs' Proposed Instruction No. 33, but should instead give Defendants' Request No. 54, DE 583 at 67, and, to the extent Israeli or Palestinian law applies, instruct the jury to reduce any award to a plaintiff by the amount that plaintiff has received from any other sources as compensation for the injuries claimed in this case.

1445731.1

**Plaintiffs' Proposed Instruction No. 34 – Damages – Calculation of Past and Future Damages**

Defendants object to section "a" of Plaintiffs' Proposed Instruction No. 34 on the grounds that it is repetitive of the first sentence of Plaintiffs' Proposed Instruction No. 33 and Defendants' Request No. 54, either of which would inform the jury that a plaintiff should receive "just and fair" compensation for any loss for which a defendant is liable.  That point should not be repeated, let alone repeated in consecutive instructions as Plaintiffs propose, as doing so will prejudice the Defendants.  *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might have a tendency to force a verdict against an accused by unduly underscoring certain aspects of the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error.") (citation omitted).

103

1445731.1

**Plaintiffs' Proposed Instruction No. 35 – Damages – Injury or Disability**

Defendants object to Plaintiffs' Proposed Instruction No. 35 on the grounds that it is not a correct statement of the law and is repetitive because Plaintiffs' Proposed Instruction No. 35 references the incorrect burden of proof.  *See* DE 582 at 75 (referencing "a preponderance of the evidence").  The correct burden of proof for an ATA claim is clear and convincing evidence. *See* DE 583 at 38-39.

Defendants further object to Plaintiffs' Proposed Instruction No. 35 on the grounds that its proposed addition of the word "impairment" to the cited pattern instruction is unhelpful and confusing.  The instruction does not define "impairment" or differentiate it from the other terms included in the instruction (*i.e.*, "disability or disfigurement").  If the Court is going to give an instruction on "Damages – Injury or Disability," it should give the pattern instruction without adding the undefined term "impairment."

**Plaintiffs' Proposed Instruction No. 36 – Damages – Pain and Suffering**

Defendants object to the first sentence of Plaintiffs' Proposed Instruction No. 36 on the grounds that it is repetitive of Plaintiffs Proposed Instruction No. 33 and Defendants' Request No. 54, either of which would inform the jury that a plaintiff should receive "reasonable" compensation for any loss for which a defendant is liable. That point should not be repeated as Plaintiffs propose, as doing so will prejudice the defendants. *Dupre v. Fru-Con Eng'g*, 112 F.3d 329, 335 (8th Cir. 1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case so as to prejudice the jury require reversal.") (citation omitted); *United States v. McCracken*, 488 F.2d 406, 414 (5th Cir. 1974) ("Under some conditions the repetition of particular instructions might have a tendency to force a verdict against an accused by unduly underscoring certain aspects of the case."); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973) ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error.") (citation omitted). Thus, at a minimum, this sentence should be stricken from Plaintiffs' Proposed Instruction No. 36.

Defendants also object to the scope of Plaintiffs' Proposed Instruction No. 36. Whereas Plaintiffs' Proposed Instruction No. 36 appears to apply to all of the Plaintiffs, only those Plaintiffs who claim to have been physically injured in an alleged terrorist attack (but survived) are actually entitled to or seeking damages based on pain and suffering. *See* Joint Proposed Pretrial Order at 12 ("No plaintiffs assert claims for the conscious pain and suffering of the decedents"). The Court should instruct the jury that only certain Plaintiffs are seeking this category of damages and list for the jury those Plaintiffs who are seeking this category of damages. Those Plaintiffs are: Mark Sokolow, Rena Sokolow, Jamie Sokolow, Lauren Sokolow,

Shayna Gould Elliott, Shmuel Waldman, Alan Bauer, Yehonathan Bauer, Shaul Mandelkorn, and Oz Joseph Guetta.

1445731.1

**Plaintiffs' Proposed Instruction No. 37 – Damages – Medical or Other Expenses**

Defendants object to Plaintiffs' Proposed Instruction No. 37 on "Damages – Medical or Other Expenses" on the grounds that Plaintiffs have waived any such damages by failing to disclose them as required in their initial disclosures or discovery in this matter. With two exceptions, all of the Plaintiffs abandoned their claims for past medical expenses in February 2012 in their Rule 26(a)(1)(A) Disclosures. *See* Plaintiffs' Second Supplemental Damages Disclosures at 5-7 (Feb. 6, 2012) (attached as Exhibit 2). The two exceptions were Dr. Katherine Baker and Rebekah Blutstein, *id.* at 6-7, who subsequently waived their claims for both past and future medical expenses a few weeks later. *See* Email from Robert Tolchin to Brian Hill (Feb. 23, 2012) (attached as Exhibit 3). While other Plaintiffs continued to nominally assert claims for future medical expenses in their Rule 26(a)(1)(A) Disclosures, they stated that expert analysis was needed to calculate those claims. *See* Exhibit 2 at 5-7. No such expert calculations were ever produced to Defendants, thus waiving any potentially remaining claims for future medical expenses. Fed. R. Civ. P. 37(c)(1). Accordingly, Plaintiffs' Proposed Instruction No. 37 should not be given because none of the Plaintiffs can seek compensatory damages for their past or future medical expenses.

1445731.1

**Plaintiffs' Proposed Instruction No. 38 – Damages – Lost Earning or Profit**

Defendants object to the scope of Plaintiffs' Proposed Instruction No. 38 on "Damages --

Lost Earnings or Profit." Only a small subset of Plaintiffs are entitled to seek such damages,

whereas Plaintiffs' proposed instruction appears to apply to all of the Plaintiffs. In February

2012, Plaintiffs' Rule 26(a)(1)(A) Disclosures listed who among them were seeking damages

based on loss of past and future income. *See* Plaintiffs' Second Supplemental Damages

Disclosures at 6-7 (Feb. 6, 2012) (attached as Exhibit 2). Only the following Plaintiffs claimed

to seek both past and future income: Shayna Gould, Shmuel Waldman, Henna Waldman, Shaul

Mandelkorn, Oz Joseph Guetta, and Karen Goldberg. *Id.* at 6-7. And the following Plaintiffs

claimed to seek loss of future income only: Elise Gould, Yehonathon Bauer, the Estate of Janis

Ruth Coulter, the Estate of Diane Carter, the Estate of Benjamin Blutstein, the Estate of David

Gritz, the Estate of Stuart Scott Goldberg, Chana Goldberg, Esther Goldberg, Yitzhak Goldberg,

Shoshana Goldberg, Eliezer Goldberg, Yaakov Goldberg, and Tzvi Goldberg. *Id.* Indeed,

Plaintiffs explicitly stated that most of them "do not have or have waived claims for economic

damages." *Id.* at 5. For those who purported to claim economic damages, Plaintiffs asserted that

expert analysis was required. *Id.* Expert reports were produced, however, for only eight of those

Plaintiffs: Shayna Gould, Shaul Mandelkorn, Karen Goldberg, the Estate of Janis Ruth Coulter

(for future income only), the Estate of Diane Carter (same), the Estate of Benjamin Blutstein

(same), the Estate of David Gritz (same), and the Estate of Stuart Scott Goldberg (same). All

other Plaintiffs therefore waived any potentially remaining claims for the loss of past income and

for the loss of future income. Fed. R. Civ. P. 37(c)(1). In addition, Varda Guetta should not be

allowed to pursue a claim for past or future income because her claim for those damages was not

included in Plaintiffs' initial disclosures or the amendments thereto. *Id.* Thus, the jury

1445731.1

instruction should be limited to the eight Plaintiffs for whom initial disclosures were made and expert reports were produced.

Defendants further object to Plaintiffs' Proposed Instruction No. 38 on the grounds that it is an incorrect statement of law to the extent that it fails to convey the method for calculating lost earnings under Israeli or Palestinian law. Palestinian law does not allow damages for lost earnings if a decedent is single and has no children. *See* Report of Muhammed Dahleh at ¶¶ 64, 75 (attached as Exhibit 1). Thus, the Estates of Ms. Coulter, Ms. Carter, Mr. Blutstein and Mr. Gritz cannot recover lost income if Palestinian law applies. Israeli law does recognize such a claim, but provides for a method of calculation different than the one in the instruction. *Id.* at ¶¶ 58, 71-74. Thus, an instruction on that methodology will have to be given if Israeli law applies. Israeli and Palestinian law would likewise require different calculations for lost earnings or support for the Goldberg plaintiffs. *Id.* at ¶¶ 57-58, 61-64, 76-86.

**Plaintiffs' Proposed Instruction No. 39 – Damages – Loss of Consortium**

Defendants object to Plaintiffs' Proposed Instruction No. 38 on "Damages – Loss of Consortium" on the grounds that it is not a correct statement of the law to the extent Israeli or Palestinian law apply.  Damages for Loss of Consortium are not available under Israeli or Palestinian law.  *See* Report of Muhammad Dahleh ¶¶ 88-89 (attached as Exhibit 1). Accordingly, to the extent New York's choice-of-law rules require that either Israeli or Palestinian law apply, the jury should not be instructed on Loss of Consortium.

110

**Plaintiffs' Proposed Instruction No. 40 – Damages – Loss of Services**

Defendants object to Plaintiffs' proposed instruction on "Damages – Loss of Services" on the grounds that it is not a correct statement of the law to the extent Israeli or Palestinian law apply. Damages for Loss of Services are not available under Palestinian law. *See* Report of Muhammad Dahleh ¶¶ 63-64, 96 (attached as Exhibit 1). Accordingly, to the extent New York's choice-of-law rules require that Palestinian law apply, the jury should not be instructed on Loss of Services. Damages for loss of services are also not available under Israeli law if the spouse is injured but survives. *Id.* ¶¶ 90, 96. So this instruction cannot be given for any of the surviving plaintiffs or their spouses if Israeli law applies.

1445731.1

**Plaintiffs' Proposed Instruction No. 41 – Damages – Shortening of Life**

Defendants object to Plaintiffs' proposed instruction on "Damages – Shortening of Life" on the grounds that Plaintiffs' Rule 26(a)(1)(A) Disclosures never claimed such damages on behalf of the decedents' Estates.  *See* Plaintiffs' Second Supplemental Damages Disclosures at 6-7 (Feb. 6, 2012) (attached as Exhibit 2).  Any such damages have therefore been waived. Defendants also object to Plaintiffs' proposed instruction on "Shortening of Life" on the grounds that it is not a correct statement of the law to the extent Palestinian law applies.  Damages for Shortening of Life are not available under Palestinian law.  *See* Report of Muhammad Dahleh ¶¶ 64(c), 70 (attached as Exhibit 1).  Accordingly, to the extent New York's choice-of-law rules require that Palestinian law apply, the jury should not be instructed on Shortening of Life.

**Plaintiffs' Proposed Instruction No. 42 – Damages – Loss of Parental Services Due to Wrongful Death**

Defendants object to Plaintiffs' proposed instruction on "Damages – Loss of Parental Services Due to Wrongful Death" on the grounds that it is not a correct statement of the law to the extent Palestinian law applies.  Damages for Loss of Parental Services are not available under Palestinian law.  *See* Report of Muhammad Dahleh ¶¶ 63-64 (attached as Exhibit 1). Accordingly, to the extent New York's choice-of-law rules require that Palestinian law apply, the jury should not be instructed on Loss of Parental Services.

**Plaintiffs' Proposed Instruction No. 43 – Damages – Loss of Solatium**

Defendants object to Plaintiffs' proposed instruction on "Damages – Loss of Solatium" on the grounds that it is not a correct statement of the law to the extent Israeli or Palestinian law applies. Damages for Loss of Solatium are not available under Israeli or Palestinian law. *See* Report of Muhammad Dahleh ¶¶ 88-89 (attached as Exhibit 1). Accordingly, to the extent New York's choice-of-law rules require that either Israeli or Palestinian law apply, the jury should not be instructed on Loss of Solatium.

The ATA limits damages to those available under traditional tort law. *See* 137 CONG. REC. S4511 (1991) (statement of Sen. Grassley) ("The ATA accords victims of terrorism the remedies of American tort law, including treble damages and attorney's fees"). Loss of solatium, however, is not a category of damages recognized by traditional American tort law, as demonstrated by the fact that is it not available under New York law. *Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 98 (E.D.N.Y. 2010) ("[L]ooking to 'traditional tort law' in the instant case is not necessarily determinative, since it is far from uniform on the availability of loss of solatium damages. For example, New York law does not permit such damages in wrongful death cases."). Moreover, damages for loss of solatium are not available under either Israeli law or Palestinian law. *See* Report of Muhammad Dahleh ¶¶ 88-89 (attached as Exhibit 1). Accordingly, the Court should not instruct the jury on loss of solatium.

Plaintiffs rely principally on *Smith ex. Rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y.), for the proposition that the plaintiffs are entitled to damages for loss of solatium in an ATA case. That case, which arose out of the September 11, 2001 attack on the World Trade Center, was brought pursuant to both the ATA, 18 U.S.C. § 2333, and the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a)(7). *Id.* at 225. Yet, the *Smith* court awarded damages for loss of solatium only pursuant to the FSIA, which, unlike the ATA,

114

expressly permits damages for loss of solatium. *Id.* at 232, 234-37. Thus, *Smith* does not support Plaintiffs' position that the ATA permits damages for loss of solatium. If anything, *Smith* suggests that loss of solatium damages are not proper under the ATA.

1445731.1

**Plaintiffs' Proposed Instruction No. 44 – Damages – Punitive Damages**

Defendants object to Plaintiffs' proposed instruction on "Damages – Punitive Damages." No such instruction should be given for Plaintiffs' ATA claims. *See Smith v. Islamic Emirate of Afg.*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) (holding that punitive damages are not available under the ATA, which already provides for treble damages); *cf. Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232, 239 (D.R.I. 2004) ("[T]he treble damages provision of Section 2333 is overwhelmingly punitive."). Moreover, there are no punitive damages under a vicarious liability / respondeat superior liability theory, and municipalities such as non-sovereign governmental organizations are not subject to punitive damages. *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981). Defendants also object to Plaintiffs' proposed instruction on punitive damages on the grounds that such damages are not available under Palestinian law. *See* Report of Muhammad Dahleh ¶¶ 98-102 (attached as Exhibit 1). Accordingly, to the extent New York's choice-of-law rules require that Palestinian law apply, the jury should not be instructed on punitive damages. To the extent that Israeli law applies to Plaintiffs' damages claims, it is questionable whether such damages are available, and if they are, they should be "modest." *Id.* at ¶¶ 98-101.

116

## VII.   PLAINTIFFS' PROPOSED VERDICT FORMS

Defendants object to all of Plaintiffs' proposed verdict forms, *see* DE 582 at ECF pgs.

92-181, which the Court should reject for numerous reasons.

First, as Defendants explained when submitting their own proposed jury instructions, *see*

DE 583 at 3, Defendants believe it will be important to use a special verdict form to avoid juror

confusion and prejudice to the Defendants.  General verdict forms, such as those proposed by

Plaintiffs, are inappropriate for this complex case.  More than 65 years ago, the Second Circuit

found the special verdict "clearly better" in civil cases than "the opaque general verdict," and, in

fact, hoped that Federal Rule of Civil Procedure 49 would make special verdicts compulsory.

*Skidmore v. Baltimore & O. R. Co.*, 167 F.2d 54, 67, 70 (2d Cir. 1948).  In reaching this

conclusion, the Court held that "the general verdict . . . confers on the jury a vast power to

commit error and do mischief by loading it with technical burdens far beyond its ability to

perform, by confusing it in aggregating instead of segregating the issues, and by shrouding in

secrecy and mystery the actual results of its deliberations."  *Id.* at 61.  Moreover, a "general

verdict enhances, to the maximum, the power of appeals to the biases and prejudices of the

jurors, and usually converts into a futile ritual the use of stock phrases about dispassionateness

almost always included in judges' charges."  *Id.*  But

> [p]erhaps the least desirable feature of the general verdict, a feature
> which the [special] verdict wipes out, is this: The theory of the
> general verdict involves the assumption that the jury fully
> comprehends the judge's instructions concerning the applicable
> substantive legal rules.  Yet, often the judge must state those rules
> to the jury with such niceties that many lawyers do not
> comprehend them, and it is impossible that the jury can.

*Id.* at 64.

Through a special verdict, "the jury answers primarily factual questions for the benefit of

the trial court which then applies the law to those answers."  *Bradway v. Gonzales*, 26 F.3d 313,

316-17 (2d Cir. 1994). Thus, "[t]he purpose of a Rule 49(a) special verdict is to identify the

basis for the jury's verdict, and thus to avoid confusion, appellate uncertainty, and the need for

additional proceedings." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1310 (2d Cir. 1993).

Indeed, in cases such as this, which "require[] proof of a specific number of predicate facts...the

trial court would be well advised to submit to the jury interrogatories that would allow an

assessment of whether the jury's determination of guilt rested on permissible bases." *United

States v. Roman*, 870 F.2d 65, 73 (2d Cir. 1989); *cf. United States v. Ruggiero*, 726 F.2d 913, 922

(2d Cir. 1984) ("We take this opportunity to alert bench and bar that in a complex RICO trial

such as this one, it can be extremely useful for a trial judge to request the jury to record their

specific dispositions of the separate predicate acts charged...").

When this case goes to trial, up to 42 individual plaintiffs and the estates of 5 decedents

will present to the jury their purported evidence that the Defendants are allegedly responsible for

seven separate alleged terrorist attacks that took place on different dates over a 3-year period in

different locations in or near Jerusalem. Plaintiffs assert that Defendants are liable for all of the

attacks under a respondeat superior theory, DE 545 at 18, but the legal standard differs

depending on whether the actor was an official of the PA or PLO, an agent of the PA or PLO, or

an employee of the PA or PLO. *See* DE 583 at 60; DE 582 at 14-24. Plaintiffs also claim that

Defendants, as to certain unspecified incidences, committed direct violations of the ATA by

providing personnel, weapons, and funds to AAMB, and by harboring alleged terrorists. DE 545

at 22-26. Moreover, they assert that Defendants violated the ATA by supposedly supporting

Hamas and Abdullah Barghouti. *Id.* at 26-27. In addition, Plaintiffs have asked the Court to

present the jury with instructions on 19 predicate acts that might apply to one incident, but not to

others. DE 582 at 28-49. Faced with all of this, and much more, if the jury were asked to submit

118

1445731.1

a general verdict it would almost certainly lead to error and juror confusion. *Skidmore*, 167 F.2d at 61.

While Defendants urge the Court to reject all of Plaintiffs' general verdict forms, it remains premature for Defendants to propose a special verdict form because of the number of issues the Court has not yet resolved (*e.g.*, which claims will go to trial, what predicate criminal acts will be tried, and what law controls Plaintiffs' supplemental law claims). *Id.* Defendants continue to reserve the right to propose a special verdict form at an appropriate time closer to trial.

<u>Second</u>, in their First Amended Complaint, Plaintiffs did not bring claims for battery on behalf of the Estates of the decedents. DE 4 at 31-32. Accordingly, Plaintiffs have waived any such claims and "Battery" should be stricken as a claim from Plaintiffs' proposed verdict forms for the Estates of Benjamin Blutstein, Diane Carter, Janis Ruth Coulter, Stuart Scott Goldberg, and David Gritz.

<u>Third</u>, more than half of Plaintiffs' proposed general verdict forms include a "Special Interrogatory" that seeks to ask the jury whether the "defendants induced [certain plaintiffs] by fraud, misrepresentation or deception to refrain from filing a suit until around the time it was filed." *See, e.g.*, DE 582 at ECF pg. 92, 96, 105, 107, 112, 114, 117, 119, 121, 141, 143, 145, 147, 150, 152, 156, 158, 160, 162, 164, 166, 170, 172, 174, 176, 178, 180. This interrogatory, which appears to be aimed at tolling the statute of limitations of Plaintiffs' supplemental law claims, is altogether unsupported. *See* Defendants' Objections to Plaintiffs' Proposed Instruction No. 31 ("Equitable Estoppel"), *supra*. As discussed above, Plaintiffs' argument that equitable estoppel bars Defendants from asserting a statute of limitations defense because Defendants purportedly induced them by "fraud, misrepresentation or deception" to refrain from filing a

1445731.1

timely action is frivolous. *Id.* This Special Interrogatory should therefore be stricken from all of the Plaintiffs' proposed verdict forms.

Fourth, relatedly, as described in Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment (DE 497), many of Plaintiffs' supplemental law claims are, in fact, barred by the applicable statutes of limitations, making Plaintiffs' proposed verdict forms overly inclusive. The battery claims of Shayna Gould; Shmuel Waldman; Mark, Rena, and Lauren Sokolow; Alan Bauer; and Shaul Mandelkorn are barred by New York's one-year statute of limitations because their alleged batteries all occurred more than one year before the filing of the Complaint. *See* DE 497 at 46 (citing NY CLS CPLR § 215 (2013)). Likewise, the assault claims of Shayna Gould; Shmuel Waldman; Mark, Rena, and Lauren Sokolow; Alan Bauer; Shaul Mandelkorn; and Varda Guetta are barred by New York's one-year statute of limitations. *Id.* at 46. With the exception of the Goldberg plaintiffs, the Plaintiffs' negligence claims are barred by the one-year, 90-day statute of limitations for commencing tort actions against municipal defendants. *Id.* at 47 (citing *Gonzalez v. City of New York*, 20 Misc. 3d 1130(A), 1130A (N.Y. Sup. Ct. 2008)). Similarly, with the exception of the Goldberg plaintiffs, the Plaintiffs' intentional infliction of emotional distress claims are barred by the one-year statute of limitations, and their negligent infliction of emotional distress claims are barred by the one-year, 90-day statute of limitations for commencing tort actions against municipal defendants. *Id.* at 48 (citing NY CPLR § 215(3) and *Gonzalez*, 20 Misc. 3d at 1130A, respectively). All of these claims should be stricken from the Plaintiffs' proposed verdict forms.

Fifth, because Plaintiffs have never identified the operative substantive law for their damages claims, it is impossible to address whether it is appropriate for the jury to assess categories of compensatory damages such as "shortening of life," *see, e.g.*, DE 582 at ECF pgs.

104, 111, 116, 124; "loss of solatium," *see, e.g., id.* at 106, 108, 110, 113, 115, 118, 120, 122, 126, 128, 130, 132, 134, 136, 138, 140, 151, 153; "loss of parental services," *see, e.g., id.* at 124; "loss of consortium," *see, e.g., id.* at 97, 126, 165, 167, 177; and "loss of spousal services," *see, e.g., id.* at 97, 126, 177. In fact, it appears that Plaintiffs have chosen to mix-and-match whatever law supports their selection of any given instruction. *Compare id.* at 88-89 (citing New York pattern jury instruction and Israeli law for proposed instruction on "Loss of Parental Services Due to Wrongful Death"), *with id.* at 82 (citing Connecticut law and Israeli law for proposed instruction on "Shortening of Life"). Accordingly, all of these claims should be stricken from all of the Plaintiffs' proposed verdict forms.

Sixth, as described in Defendants' objections to Plaintiffs' Proposed Instruction No. 44 ("Damages – Punitive Damages"), none of the Plaintiffs are entitled to punitive damages. Accordingly, this category of damages should be stricken from all of the Plaintiffs' proposed verdict forms.

Seventh, many of the verdict forms purport to claim past and future pain and suffering for Plaintiffs who were not physically injured during an alleged terrorist attack (and for many Plaintiffs who were not even present during an alleged terrorist attack). None of those Plaintiffs claimed damages for past or future pain and suffering in their Rule 26(a)(1)(A) Disclosures, and there is no basis in fact for the jury to award them such damages. *See* Plaintiffs' Second Supplemental Damages Disclosures at 5-7 (Feb. 6, 2012) (attached as Exhibit 2). As a result, "Past Pain and Suffering" and "Future Pain and Suffering" should be stricken as categories of damages from Plaintiffs' proposed verdict forms for: Revital Bauer, Binyamin Bauer, Daniel Bauer, Yehuda Bauer, Katherine Baker, Richard Blutstein, Rebekah Blutstein, Larry Carter, Shaun Choffel, Robert Coulter, Sr., Diane Coulter Miller, Robert Coulter, Jr., Karen Goldberg,

1445731.1

Chana Goldberg, Eliezer Goldberg, Esther Goldberg, Shoshana Goldberg, Tzvi Goldberg,

Yaakov Goldberg, Yitzhak Goldberg, Elise Gould, Ronald Gould, Jessica Rine, Nevenka Gritz,

Norman Gritz (deceased), Varda Guetta, Leonard Mandelkorn, Nurit Mandelkorn, Elana

Sokolow, Henna Waldman, Eva Waldman, and Morris Waldman.

 Eighth, in Plaintiffs' Rule 26(a)(1)(A) Disclosures, plaintiff Varda Guetta did not claim

damages for past or future lost earnings. *See generally* Plaintiffs' Second Supplemental

Damages Disclosures at (Feb. 6, 2012) (attached as Exhibit 2). As a result, any such claims by

Ms. Guetta have been waived, and the categories of "Past Lost Earnings or Wages" and "Future

Lost Earnings or Wages" should be stricken from Plaintiffs' proposed verdict form for Ms.

Guetta.

 Ninth, as described in Defendants' objections to Plaintiffs' Proposed Instruction No. 37

("Damages – Medical or Other Expenses"), none of the Plaintiffs can seek compensatory

damages for their past medical expenses or their future medical expenses. Accordingly, this

category of damages should be stricken from all of the Plaintiffs' proposed verdict forms.

 Tenth, in their Rule 26(a)(1)(A) Disclosures, Plaintiffs never claimed a category of

damages called "Shortening of Life" on behalf of the decedents' Estates. *See* generally

Plaintiffs' Second Supplemental Damages Disclosures (Feb. 6, 2012) (attached as Exhibit 2). To

the extent that such a category of damages is proper under the law governing Plaintiffs' damages

claims, it has been waived. Accordingly, "Shortening of Life" should be stricken as a category

of damages from Plaintiffs' proposed verdict forms for the Estates of Benjamin Blutstein, Diane

Carter, Janis Ruth Coulter, Stuart Scott Goldberg, and David Gritz.

 Eleventh, during his deposition, Dr. Alan Bauer disclaimed any damages for "Past

Mental...Impairment," for "Future Mental or Physical Impairment," and for "Future Pain and

Suffering." *See* Dep. of Alan Bauer at 9, 35-42 (Aug. 1, 2012) (attached as Exhibit 4). Accordingly, those three categories of damages should be stricken from Plaintiffs' Proposed verdict form for Dr. Bauer.

> Twelfth, during his deposition, Yehonathon Bauer similarly disclaimed any damages for "Past Mental…Impairment" and for "Future Mental…Impairment." *See* Dep. of Yehonathan Bauer at 60-61 (Aug. 2, 2012) (attached as Exhibit 5); *see also* Dep. of Alan Bauer at 18 (Aug. 1, 2012) (attached as Exhibit 4). As a result, those two categories of damages should be stricken from Plaintiffs' Proposed verdict form for Yehonathan Bauer.

1445731.1

August 29, 2014

Respectfully Submitted,

/s/ Mark J. Rochon
Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
Dawn E. Murphy-Johnson
Michael J. Satin
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington, DC  20005-6701
(202) 626-5800 [tel]
(202) 626-5801 [fax]
mrochon@milchev.com [email]

*Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*

1445731.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 29th day of August, 2014, a true and genuine copy of

the foregoing was filed by ECF, which automatically provided service to all ECF counsel,

including the following:

> Robert J. Tolchin, Esq.
> The Berkman Law Office, LLC
> 111 Livingston Street – Suite 1928
> Brooklyn, NY 11201
> (718) 855-3627
> E-mail:  rtolchin@berkmanlaw.com
>
> Kent A. Yalowitz
> Philip W. Horton
> Arnold & Porter LLP
> 399 Park Avenue
> New York, NY 10022
> (212) 715-1000
> Email:  Kent.Yalowitz@aporter.com
>
>
> /s/ Mark J. Rochon
> Mark J. Rochon

1445731.1