# EXHIBIT 1

**13-1618-cv**
**Weiss v. Nat'l Westminster Bank PLC**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: March 11, 2014                    Decided: September 22, 2014)

Docket No. 13-1618-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TZVI WEISS ET AL., NATAN APPLEBAUM, ET AL.,

*Plaintiff-Appellants*,

v.

NATIONAL WESTMINSTER BANK PLC,

*Defendant-Appellee*.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Before: JACOBS, LEVAL, and POOLER, *Circuit Judges*.

Plaintiffs Weiss et al. appeal from the judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*) dismissing, on summary judgment, their claims against Defendant National Westminster Bank PLC for civil remedies pursuant to the Antiterrorism Act, 18 U.S.C. §§ 2331(1)(A), 2333(a), 2339B(a)(1), and 2339C. The Court of Appeals (Leval, *J.*) concludes that the district court misapplied § 2339B(a)(1)'s scienter requirement and finds that there was a triable issue of fact as to whether Defendant possessed the mental state required for liability under §§ 2333(a) and 2339B(a)(1). The judgment of the district court is, therefore, VACATED and the case REMANDED with instructions to consider Defendant's other arguments in support of summary judgment.

---

[1] The Clerk of the Court is directed to amend the caption in this case to conform to the listing of the parties above.

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

PETER RAVEN-HANSEN (Gary M. Osen, Aaron Schlanger, Joshua D. Glatter & Ari Ungar, Osen LLC, Hackensack, New Jersey; Steven M. Steingard & Stephen H. Schwartz, Kohn, Swift & Graf, P.C., Philadelphia, Pennsylvania; Aitan D. Goelman, Zuckerman Spaeder LLC, Washington, D.C.; C. Tab Turner, Turner & Associates, P.A., North Little Rock, Arkansas, *on the brief*), Osen LLC, Hackensack, New Jersey, for *Plaintiff-Appellants Weiss et al.*

Mark S. Werbner & Joel Israel, Sayles Werbner, Dallas, Texas; James P. Bonner, Susan M. Davies, Stone Bonner & Rocco LLP, New York, New York; Richard D. Heideman, Noel J. Nudelman & Tracy R. Kalik, Heideman Nudelman & Kalik, P.C., Washington, D.C., *on the brief*, for *Plaintiff-Appellants Applebaum et al.*

JONATHAN I. BLACKMAN (Lawrence B. Friedman & Avi E. Luft, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, New York, for *Defendant-Appellee*.

LEVAL, *Circuit Judge*:

Plaintiffs, who are approximately 200 United States nationals (or their estates, survivors or heirs) who were victims of terrorist attacks launched in Israel by Hamas, appeal from the judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*), dismissing, on summary judgment, their suit against Defendant National Westminster Bank PLC ("NatWest"). The claimed basis of liability is that NatWest provided material support and resources to a terrorist organization in violation of the Antiterrorism Act ("ATA"), 18 U.S.C. §§ 2331(1)(A), 2333(a) and 2339B(a)(1), and collected and provided funds for the financing of

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

terrorism in violation of 18 U.S.C. §§ 2331(1)(A), 2333(a) and 2339C.[2] The complaint accuses NatWest of providing material support and resources to a foreign terrorist organization by maintaining bank accounts and transferring funds for the Palestine Relief & Development Fund, a/k/a Interpal ("Interpal"). Interpal allegedly engaged in "terrorist activity" by soliciting funds, and otherwise providing support, for Hamas.

NatWest moved for summary judgment on the grounds that Plaintiffs could not show that NatWest acted with the requisite scienter to support an award of civil remedies under the ATA, that its acts were the proximate cause of the Plaintiffs' injuries, that Plaintiffs had Article III standing, and that Hamas was responsible for the terrorist attacks at issue. The district court granted the motion for summary judgment on the basis of Plaintiffs' failure to establish a triable issue of fact as to whether NatWest had the requisite scienter, and did not address the other asserted grounds. *Weiss v. Nat'l Westminster Bank PLC*, 936 F. Supp. 2d 100 (E.D.N.Y. 2013).

Plaintiffs contend on this appeal that the district court used an incorrect standard for determining whether NatWest acted with the requisite scienter for liability under 18 U.S.C. § 2333(a) predicated on a violation of 18 U.S.C. § 2339B(a)(1),[3] by focusing on whether NatWest had knowledge that, or exhibited deliberate indifference to whether, Interpal funded terrorist *activities*. We conclude that the statute's requirement is less exacting, and requires only

---

[2] Plaintiffs also sought civil remedies under § 2333(a) based on alleged violations of 18 U.S.C. § 2332 for aiding and abetting the murder of United States citizens. This claim was dismissed for failure to state a claim pursuant to Rule 12(b)(6). *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006). Plaintiffs do not challenge that dismissal here.

[3] Plaintiffs have not argued on appeal that the district court erred in dismissing their claims based on 18 U.S.C. § 2339C.

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

a showing that NatWest had knowledge that, or exhibited deliberate indifference to whether, Interpal provided material support *to a terrorist organization,* irrespective of whether Interpal's support aided *terrorist activities* of the terrorist organization. As Hamas is an organization designated as a Foreign Terrorist Organization ("FTO") by the United States Secretary of State, Plaintiffs can fulfill this burden by demonstrating either that NatWest had actual knowledge that Interpal provided material support to Hamas, or that NatWest exhibited deliberate indifference to whether Interpal provided material support to Hamas. There is a triable issue of fact as to whether NatWest possessed the requisite scienter. Therefore, we vacate the judgment and remand for the district court to consider NatWest's other arguments in support of summary judgment.

## BACKGROUND

I.   **Factual Background**

Interpal is a non-profit organization registered with the Charity Commission for England & Wales (the "Charity Commission"). Its Declaration of Trust states that Interpal collects funds for humanitarian aid, which it transfers to various charitable organizations in England and Wales, Jordan, Lebanon, and the Palestinian Territories. NatWest maintained accounts for Interpal from 1994, the year Interpal was founded, until 2007.[4] During that time, NatWest recorded unusual activity in a permanent database and reported certain suspicious activity to British authorities. NatWest is a member of the Royal Bank of Scotland Group and is incorporated and headquartered in the United Kingdom.

---

[4] NatWest provided banking services to Interpal's predecessor, the Palestine & Lebanon Relief Fund, beginning in 1987.

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

On August 21, 2003, the United States Treasury Department Office of Foreign Assets Control ("OFAC") designated Interpal as a Specially Designated Global Terrorist ("SDGT"). OFAC issued a press release stating:

> Interpal . . . has been a principal charity utilized to hide the flow of money to HAMAS. Reporting indicates it is the conduit through which money flows to HAMAS from other charities . . . . Reporting indicates that Interpal is the fundraising coordinator of HAMAS. This role is of the type that includes supervising activities of charities, developing new charities in targeted areas, instructing how funds should be transferred from one charity to another, and even determining public relations policy.

Joint App'x ("JA") at 1681, *Weiss v. Nat'l Westminster Bank PLC*, No. 13-1618 (Aug. 5, 2013).

On August 26, 2003, the Charity Commission issued an order freezing Interpal's accounts and commenced an investigation of Interpal's activities. On September 24, 2003, the Charity Commission published a report, announcing that it had completed its investigation and cleared Interpal of any allegations of terror financing. The Report concluded that: (1) "The US Authorities were unable to provide evidence to support allegations made against INTERPAL . . . ," and (2) "in the absence of any clear evidence showing INTERPAL had links to Hamas' political or violent militant activities, INTERPAL's bank accounts should be unfrozen and the Inquiry closed." JA at 702-03. According to internal NatWest communications, the Metropolitan Police Special Branch (the "Special Branch") also investigated OFAC's SDGT designation and "found that there was insufficient evidence to prove a link [of Interpal] to terrorism, so no UK action was taken against INTERPAL . . . ." JA at 736.

Following OFAC's designation of Interpal as an SDGT, NatWest sought guidance from the Financial Sanctions Unit of the Bank of England. On October 3, 2003, the Bank of England

informed NatWest that "there are presently no plans to list [Interpal] under the Terrorism Order in the UK" and "there is no need to take any further action . . . ." JA at 2996. The Financial Sanctions Unit also informed NatWest that "any payments to, or for the benefit of, Hamas are prohibited," and any suspicion of such payments should be reported to the Charities Commission, the Bank of England, and the Special Branch. JA at 2996. NatWest began conducting reviews of Interpal's accounts every six months.

In May 2005, while conducting one of these reviews, NatWest uncovered a payment by Interpal to an organization that was subsequently designated by the Bank of England as "an organisation suspected of supporting terrorism." JA at 736. NatWest's reviews also revealed that some of the organizations receiving funds from Interpal were suspected of having connections with Hamas, including at least five committees alleged by United States authorities to be "operated on behalf of, or under the control of, Hamas" in a 2004 indictment. Superseding Indictment, *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-P (N.D. Tex. July 26, 2004), JA at 2707. On the other hand, there is no evidence NatWest was aware of any Interpal payments to any organizations that were designated as terrorist organizations by the Bank of England or OFAC at the time of the payment.

NatWest closed the last of Interpal's accounts in March 2007.

## DISCUSSION

**I.     Analysis**

Plaintiffs argue that, in its focus on whether NatWest was shown to have awareness of Interpal's financing of *terrorist activities*, the district court employed an incorrect scienter

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

standard. We agree. As we understand the statute, in order to establish entitlement to a civil remedy under 18 U.S.C. § 2333(a) predicated on a violation of § 2339B(a)(1), Plaintiffs were obliged to show that NatWest had actual knowledge that, or exhibited deliberate indifference to whether, Interpal provided material support to a *terrorist organization,* irrespective of whether the support aided terrorist activities.

### a. The Statutory Framework

Plaintiffs seek relief under a complex statutory framework involving the ATA, 18 U.S.C. §§ 2331(1)(A), 2333, and 2339B, and the Immigration and Nationality Act, 8 U.S.C. §§ 1182, 1189. Through a series of statutory incorporations, in order for NatWest to be liable under § 2333(a), it must have had knowledge that (or exhibited deliberate indifference to whether) Interpal provided material support to Hamas (an FTO), regardless of whether that support was for terrorist activities.

Section 2333(a) provides civil remedies for United States nationals injured by acts of international terrorism:

> Any national of the United States injured in his or her person, property, or business by reason of an *act of international terrorism*, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a) (emphasis added). The term "international terrorism," as used in that Section, is defined by § 2331(1) to mean:

> [A]ctivities that (A) involve violent acts or acts dangerous to human life *that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State*; (B) appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

>coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States . . . .

18 U.S.C. § 2331(1) (emphasis added).[5] This wording is sufficient indication that Congress intended extra-territorial application.[6]

The complaint alleges that NatWest committed acts that fall within § 2331(1)(A) by providing banking services to Interpal in violation of 18 U.S.C. § 2339B(a)(1). That section imposes criminal penalties on

>[w]hoever *knowingly* provides material support or resources to a foreign terrorist organization . . . . To violate this paragraph, a person *must have knowledge* . . . that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act) . . . .

18 U.S.C. § 2339B(a)(1).

---

[5] In *Morrison v. National Australia Bank Ltd.*, the Supreme Court recognized a presumption against extraterritoriality pursuant to which we must presume a statute does not apply extraterritorially "unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect." 561 U.S. 247, 255 (2010) (internal quotation marks and citation omitted). Congress clearly expressed its intention for § 2333(a) to apply extraterritorially by focusing on "international terrorism" and defining it to include exclusively activities that "occur primarily outside the territorial jurisdiction of the United States." 18 U.S.C. § 2331(1); *see In re September 11 Litig.*, 751 F.3d 86, 93 (2d Cir. 2014) ("The purpose of the ATA was '[t]o provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United Sates nationals.'" (quoting H.R. 2222, 102d Cong. (1992))). Accordingly, we find that NatWest may be found liable under § 2333(a) for conduct that occurred in the United Kingdom.

[6] The requirement to "appear to be intended . . ." does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions. *Cf. Boim v. Holy Land Found. for Relief and* Dev., 549 F.3d 685, 693-94 (7th Cir. 2008) (en banc) (Posner, *J.*) (describing the appearance-of-intention requirement "not [as] a state-of-mind requirement" and stating that "it is a matter of external appearance rather than subjective intent . . . ."). On appeal, we review only whether there is a triable issue of fact as to whether NatWest fulfilled §§ 2333(a) and 2339B's scienter requirement; we do not address whether NatWest fulfilled this definitional requirement or the other requirements of the statute.

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

While § 2333(a) does not include a mental state requirement on its face, it incorporates the knowledge requirement from § 2339B(a)(1), which prohibits the knowing provision of *any* material support to terrorist organizations without regard to the types of activities supported. Its application is not limited to the provision of support to the terrorist activities of a terrorist organization. *Id.* In upholding the constitutionality of § 2339B against as applied challenges for vagueness and violations of the First Amendment rights to freedom of association and speech, the Supreme Court found that "Congress plainly spoke to the necessary mental state for a violation of § 2339B, and it chose knowledge about the organization's connection to terrorism, not specific intent to further the organization's terrorist activities." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16-17 (2010); *see also* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 301(a)(7), 110 Stat. 1214, 1247, note following 18 U.S.C. § 2339B (Findings and Purpose) ("[F]oreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct."). The Court explained:

> Money is fungible, and when foreign terrorist organizations that have a dual structure raise funds, they highlight the civilian and humanitarian ends to which such moneys could be put. But there is reason to believe that foreign terrorist organizations do not maintain legitimate *financial* firewalls between those funds raised for civil, nonviolent activities, and those ultimately used to support violent, terrorist operations. Thus, funds raised ostensibly for charitable purposes have in the past been redirected by some terrorist groups to fund the purchase of arms and explosives.

*Humanitarian Law Project*, 561 U.S. at 31 (internal quotation marks, citations, and alterations omitted); *cf. Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 698 (7th Cir. 2008) (en banc) (Posner, *J.*) ("If Hamas budgets $2 million for terrorism and $2 million for

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

social services and receives a donation of $ 100,000 for those services, there is nothing to prevent its using that money for them while at the same time taking $100,000 out of its social services 'account' and depositing it in its terrorism 'account.'").

Thus, to fulfill § 2339B(a)(1)'s scienter requirement, incorporated into § 2333(a), Plaintiffs must show that NatWest both knew that it was providing material support to Interpal and knew that Interpal engaged in terrorist activity. Section 2339B(a)(1) does not require a showing that NatWest knew it was providing material support for terrorist activity.

For the purposes of § 2339B(a)(1), a defendant has knowledge that an organization engages in terrorist activity if the defendant has actual knowledge of such activity or if the defendant exhibited deliberate indifference to whether the organization engages in such activity. *See Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 428-29 (E.D.N.Y. 2013); *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 517 (S.D.N.Y. 2010). A defendant exhibits deliberate indifference if it "knows there is a substantial probability that the organization engages in terrorism but . . . does not care." *Boim*, 549 F.3d at 693.

Section 2339B(a)(1) explicitly incorporates the meaning of "engage[] in terrorist activity" from § 212(a)(3)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(3)(B)(iv)(IV), which defines "engage in terrorist activity" to include "solicit[ing] funds or other things of value for . . . (bb) a terrorist organization described in clause (vi)(I) . . . ." Clause (vi)(I) defines "terrorist organization" to mean "an organization . . . designated under section 1189 of this title . . . ," 8 U.S.C. § 1182(a)(3)(B)(vi)(I), and § 1189 authorizes the

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

Secretary of State to designate an organization as a foreign terrorist organization ("FTO").[7] Pursuant to § 1189, the Secretary of State designated Hamas as an FTO on October 8, 1997. U.S. Dep't of State Bureau of Counterterrorism, *Foreign Terrorist Organizations*, http://www.state.gov/j/ct/rls/other/des/ 123085.htm (last visited August 6, 2014). Thus, if Interpal solicited funds for Hamas, then Interpal engaged in terrorist activity within the meaning of Section 212(a)(3)(B) of the Immigration and Nationality Act.

In sum, through this complex series of statutory incorporation—18 U.S.C. § 2333(a) to 18 U.S.C. § 2331(1) to 18 U.S.C. § 2339B(a)(1) to 8 U.S.C. § 1182(a)(3)(B)—a defendant may be liable for civil remedies under § 2333(a) for providing material support to an organization that solicits funds for an FTO. Under Plaintiffs' theory of liability, in order for Plaintiffs to establish that NatWest came within the scienter requirement of § 2339B, they must present evidence showing that NatWest provided material support to Interpal while having knowledge that, or exhibiting deliberate indifference to whether, Interpal "solicit[ed] funds or other things of value" for Hamas, regardless of whether those funds were used for terrorist or non-terrorist activities. 8 U.S.C. § 1182(a)(3)(B)(vi)(IV); 18 U.S.C. § 2339B(a)(1).

    **b. The District Court's Decision**

As we understand the district court's reasoning, it imposed on Plaintiffs a more onerous burden with respect to NatWest's scienter than § 2339B(a)(1) requires. The court focused on NatWest's employees' knowledge of Interpal's *terror financing* as opposed to their knowledge of Interpal's financing of *a terrorist organization*. *See, e.g.*, *Weiss v. Nat'l Westminster Bank*

---

[7] OFAC's SDGT designation is distinct from the State Department's FTO designation. While an organization designated as an FTO by the State Department is a terrorist organization for the purposes of § 2339B, that is not true for organizations designated as SDGT by OFAC.

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

*PLC*, 936 F. Supp. 2d 100, 115 (E.D.N.Y. 2013) ("The filing of [Suspicious Activity Reports] does not equate to knowledge or even legitimate suspicion of *terror financing* . . . ." (emphasis added)); *id.* ("It is undisputed that none of the [Suspicious Activity Reports] and resulting investigations led to any credible evidence of *terror financing*." (emphasis added)); *id.* ("NatWest employees involved with internal investigations of Interpal testified that NatWest had a zero tolerance policy for *terror financing*." (emphasis added)); *id.* at 117 ("There is no evidence to suggest that, had NatWest known or actually suspected Interpal of *terror financing*, it would have done anything other than close its accounts." (emphasis added)). This focus on "terror financing," as opposed to the financing of a terrorist organization, regardless of the character of the activities being financed, is not consistent with the text of § 2339B(a)(1) or the Supreme Court's opinion in *Humanitarian Law Project*. *See* 561 U.S. at 16.

Moreover, the district court found that NatWest did not exhibit deliberate indifference to whether Interpal was a terrorist organization following Interpal's SDGT designation, in part, because British authorities—the Charity Commission, the Special Branch, and the Bank of England—condoned NatWest's relationship with Interpal. *Weiss*, 936 F. Supp. 2d at 114. In this regard, the court gave inappropriate weight to the British authorities' decisions. The Charity Commission and the Bank of England condoned NatWest's relationship with Interpal based on the Charity Commission's 2003 investigation, which focused on only a subset of conduct that is criminalized under United States law. The Charity Commission investigated whether Interpal financed Hamas's political and violent militant activities, not whether Interpal provided any material support to Hamas, regardless of purpose. While the Charity Commission's 2003 report found no clear evidence showing that Interpal supported Hamas's political or violent militant

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

activities, the report made no findings regarding whether Interpal provided material support to Hamas for non-political and non-violent activities.[8] Thus the conclusions of the British authorities were in response to a different question than is posed by the United States statutes. The British authorities' guidance, based on the Charity Commission's 2003 report, is not inconsistent with a finding that NatWest had knowledge that, or exhibited deliberate indifference to whether, Interpal financed Hamas's *non-political* and *non-violent* activities.

The same observations apply to the conclusions of the Special Branch. An internal NatWest memorandum reported that the Special Branch investigated OFAC's SDGT designation of Interpal and found "insufficient evidence to prove a *link to terrorism*, so no UK action was taken against Interpal . . . ." JA at 736. There is no evidence, however, that the Special Branch investigated whether Interpal financed Hamas's non-terrorist activities. As with the Charity Commission's investigation, the Special Branch's conclusion is in no way incompatible with a finding that NatWest met § 2339B(a)(1)'s scienter requirement.

Even if the British authorities had investigated whether Interpal provided material support to Hamas for any purpose and had concluded that Interpal had no links to Hamas at all, the British authorities' conclusion would not be inconsistent with liability under the United

---

[8] The Charity Commission previously investigated Interpal's connections with Hamas in 1996. In its 1996 report, the Charity Commission explained, "The allegation that funds were going to supporters of Hamas and in particular the families of suicide bombers was not of direct concern so long as the funds were being applied within the objects of the charity." JA at 557. The Charity Commission found no evidence of pro-terrorist activity, and the Charity Commission's review of Interpal's bank accounts "provided evidence of an appropriate end use for its funds." JA at 566. It recommended closing its investigation and prescribed that "[w]hat [Interpal needs] to do is to take whatever steps [it] can to ensure that [its] donations only go to charitable purposes within [its] objects." JA at 566.

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

States statutes and could not justify summary judgment in the face of contrary evidence. The views of foreign governments, particularly when addressed to the same questions of fact as are pertinent under United States law, could support NatWest's contentions to the jury that it believed Interpal was not supporting a terrorist organization just as its inquiries to the U.K. authorities (and the answers it received) could support the contention that it was not indifferent to the issue. However, in the face of contrary findings—in this case by the United States Treasury Department—such views of foreign governments could not support summary judgment. *See* Fed. R. Civ. Pro. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

As with the extraterritorial application of any law, applying § 2333(a) to non-domestic activities risks creating circumstances where United States law conflicts with foreign law. The Supreme Court acknowledged the importance of avoiding such conflicts in *Morrison v. National Australia Bank Ltd. See* 561 U.S. 247, 255 (2010); *see also supra* note 6. But, as the Court explained, whether a United States law applies extraterritorially (risking conflict with foreign laws) is a question of congressional intent. *Morrison*, 561 U.S. at 255. The presumption against extraterritoriality is only a *presumption*; it is overcome by clearly expressed Congressional intent for a statute to apply extraterritorially. When Congress has manifested clear intent that a statute apply extraterritorially, it will generally apply extraterritorially regardless of whether there is a risk of conflict with foreign law. *Cf. id.* Although the British government's approval of NatWest's relationship with Interpal and decision not to designate Interpal as a terrorist organization creates tension with OFAC's decision to designate Interpal as an SDGT, Congress

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

clearly expressed its intention for § 2333(a) to apply to extraterritorial activities when the statute's standards are met, regardless of the views and laws of other nations. *See supra* note 6.

### c. Evidence Supporting a Finding that NatWest Knew Interpal Provided Material Support to Hamas

We conclude that Plaintiffs have presented sufficient evidence to create a triable issue of fact as to whether NatWest fulfilled § 2339B(a)(1)'s scienter requirement, especially if assessed under the "lenient" standard we have approved for ruling on the sufficiency of evidence of scienter issues. *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) ("We are . . . lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences, because such issues are appropriate for resolution by the trier of fact." (internal quotation marks omitted)). First, NatWest was aware of OFAC's designation of Interpal as an SDGT[9] in August 2003 and of its press release announcing that Interpal provided material support to Hamas, which stated:

> Interpal . . . has been a principal charity utilized to hide the flow of money to HAMAS. Reporting indicates it is the conduit through which money flows to HAMAS from other charities . . . . Reporting indicates that Interpal is the fundraising coordinator of HAMAS. This role is of the type that includes supervising activities of charities, developing new charities in targeted areas, instructing how funds should be transferred from one charity to another, and even determining public relations policy.

JA at 1681.

---

[9] We do not mean to suggest that the designation of an organization as an SDGT is sufficient, without more, to create a triable issue of fact regarding a foreign defendant's scienter. Interpal's SDGT status is, of course, significant, but we consider it only as one of several pieces of evidence that we view in the light most favorable to Plaintiffs.

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

Second, in December 2004, Amanda Holt, the head of NatWest's Group Enterprise Risk, the department responsible for the oversight of terrorism-related matters, sent an internal email stating, "[W]e were aware that we had accounts for people connected to Hamas, but not Hamas itself." JA at 2640.

Third, Michael Hoseason, the head of NatWest's Group Security and Fraud Office, which is responsible for reviewing suspicious activities and reporting suspicions of terror financing to British authorities, testified that NatWest would cease banking with a customer on the basis that the customer engaged in unlawful activity only "[i]f [NatWest] knew with *absolute certainty* that the customer was engaged in any kind of illegal activity." JA at 1767 (emphasis added). He testified that he would not recommend ending NatWest's relationship with a customer suspected of terror financing unless the customer was "[c]onvicted in a court of law . . . ." JA at 1769-70. Furthermore, he stated that NatWest would need "proof of the purpose of the transfers," in other words, "if [NatWest] had been supplied with clear evidence that demonstrated that . . . funds were subsequently utilized to buy bullets . . . ." JA at 1795. When asked, "[S]hort of evidence that the funds were used to buy bullets or explosives, is there anything else that you would consider to be proof of the nefarious purposes of the transfers?", Hoseason responded, "No." JA at 1795.

Fourth, through its biannual reviews of Interpal's accounts, NatWest discovered that Interpal made payments to organizations suspected of "being connected with terrorism, in particular Hamas." JA at 2666. Specifically, in December 2004, NatWest uncovered Interpal payments to at least five committees, which the United States alleged were "operated on behalf of, or under the control of, Hamas" in a 2004 indictment. Superseding Indictment, *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-P (N.D. Tex. July 26, 2004), JA at

**Weiss v. Nat'l Westminster Bank PLC**
**Docket No. 13-1618-cv**

2707. That indictment alleged that Holy Land Foundation for Relief and Development et al. conspired to provide material support to foreign terrorist organizations in violation of § 2339B(a)(1) by providing funds to, *inter alia*, those committees. JA 2702-07.[10]

Fifth, in May 2005, NatWest discovered that Interpal made a payment to an organization which in June 2005 was designated by the Bank of England as "an organisation suspected of supporting terrorism." JA at 736.

This evidence was sufficient to create a triable issue of fact as to whether NatWest's knowledge and behavior in response satisfied the statutory scienter requirements.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED and the case REMANDED for further proceedings, including consideration of NatWest's other asserted grounds for summary judgment.

---

[10] *United States v. Holy Land Found. for Relief & Dev.* did not proceed to trial until after NatWest closed Interpal's accounts in March 2007. After an initial mistrial, the defendants were convicted of conspiracy to provide material support to foreign terrorist organizations in violation of § 2339B(a)(1). *United States v. El-Mezain*, 664 F.3d 467, 489 (5th Cir. 2011) (affirming the convictions and noting that "[t]he evidence of Hamas control of the . . . committees was substantial").