E9GMSOKC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

MARK I. SOKOLOW, et al.,

                    Plaintiffs,

          v.                          04 Civ. 397 (GBD)

PALESTINE LIBERATION
ORGANIZATION, et al.,

                    Defendants.

------------------------------x

                                      New York, N.Y.
                                      September 16, 2014
                                      10:40 a.m.

Before:

                    HON. GEORGE B. DANIELS,

                                      District Judge

                         APPEARANCES

ARNOLD & PORTER
     Attorneys for Plaintiffs
BY:  KENT A. YALOWITZ
     PHILIP A. HORTON
     KEN HASHIMOTO
     TAL MACHNES
     CARMELA ROMEO
     SARA PILDIS

MILLER & CHEVALIER
     Attorneys for Defendants
BY:  MARK ROCHON
     BRIAN HILL
     MICHAEL SATIN

E9GMSOKC

```
 1              (Case called)

 2              MR. YALOWITZ:  Good morning, your Honor, Ken Yalowitz

 3       from Arnold & Porter on behalf of the plaintiffs.  With me are

 4       my colleagues:  Phil Horton, Ken Hashimoto, Carmela Romeo, Tal

 5       Machnes, and Sara Pildis, who is sitting in the audience, by

 6       choice, I suppose.

 7              THE COURT:  Good morning.

 8              MR. ROCHON:  Good morning, your Honor, Mark Rochon on

 9       behalf of the defendants.  With me are Brian Hill and Michael

10       Satin.

11              THE COURT:  Let me do this.  We have what I describe

12       an ambitious schedule for a trial on January 12.  I just want

13       to discuss in general some issues, but I have a significant

14       amount of paper to go through before I can give you final

15       decisions on most of these motions.  I am going to see if we

16       can address all the issues pretty much on this schedule.

17              I want to be able to resolve all the outstanding

18       summary judgment motions hopefully by our next conference date,

19       which is November 20, I believe.  That's what I am going to

20       concentrate between now and the 20th.  I am going to discuss

21       some of the other trial issues today and maybe on the 20th.

22              But what I'd like to do is the issues with regard to

23       the jury, jury selection, and the motions to sever and

24       bifurcate.  I'll discuss it briefly today, but I want to be

25       able to resolve those, and particularly the primary thing is
```

E9GMSOKC

1    the dispute over the exhibits and the admissibility of the

2    exhibits.  I want to be able to resolve that by December 16 at

3    the latest.  And I want to set a conference date, pretrial

4    conference date for that date.  And then I want to set a final

5    pretrial conference date the week before the trial, on January

6    6, so that we can address any other outstanding motions in

7    limine by that time and discuss in more detail, see where we

8    are and where I am with regard to drafts of jury instructions

9    so we will know before that time.  If I can address some of

10   those issues earlier than that, I will attempt to do so.

11          The first thing I need to do is get past the summary

12   judgment motion so we can know what parties and claims are

13   still in the case and then make decisions with regard to the

14   other issues.

15          I spoke briefly to Magistrate Judge Ellis yesterday.

16   I need to speak to him again.  I know that in the list that

17   Mr. Yalowitz submitted about outstanding issues, there is still

18   a sanctions motion.  I am going to discuss with him on what

19   schedule he is going to resolve that.  I am going to let him

20   resolve that so I can concentrate on the more substantive

21   issues that are related to trial.

22          I'm in the process of going through the issues on the

23   summary judgment motions.  As I said, hopefully I will have

24   that resolved by the 20th.

25          With regard to some of the issues, let me just give

E9GMSOKC

```
 1    you, without giving you any firm rulings at this point because
 2    I have got to look at the papers further.  But with regard to
 3    some of the jury issues.
 4              First of all, I don't have a problem doing a jury
 5    questionnaire.  I have to go through in detail what the nature
 6    of the questions the parties are proposing alternatively and,
 7    quite frankly, I never found it necessary to do a
 8    questionnaire, but I'm willing to do it if the parties want to
 9    do it in this case to efficiently select a jury in this case.
10    Some of the issues that have arisen, I think the parties may or
11    may not be the appropriate way to look at that.  But the
12    parties are considering this case as if it was a criminal case
13    rather than a civil case, and I am not sure that all of the
14    issues that the parties are raising with regard to concern
15    about the jury are going to be significant issues in this case.
16              But I do want to think of a process, a total process
17    that will particularly get us a fair jury and protect the jury
18    from any outside interference.  Quite frankly, I'm less
19    concerned about the parties.  I'm more concerned about things
20    we don't have control over with regard to other interested
21    parties who may decide that they want to observe or attend the
22    trial.
23              I may decide that an anonymous jury is appropriate.  I
24    am not sure I am going to do that.  I think I will probably at
25    least think of a process so that the names and addresses of
```

E9GMSOKC

1    jurors are not disclosed publicly beyond jury selection and to

2    the parties other than the lawyers and the parties here.  I

3    still have to give that some more thought.

4              It is probably not likely that I am going to put the

5    burden on the jurors to sequester them.  I don't have a basis

6    to conclude that that's necessary in this case at this point in

7    time.  But I have given thought to different ways to make sure

8    that there is no interference and minimal contact between

9    jurors and outside parties during the trial.  Whether or not

10   that is making sure that jurors are escorted in and out or some

11   other more formal process, I haven't completely thought it out

12   yet.  But I will probably take some steps to minimize the

13   contact between jurors and the other people who may be have an

14   interest in this case.  And what that will entail, at this

15   point I don't know.  At this point my inclination is not to

16   sequester this jury, but if I can put in place adequate

17   safeguards to protect the jurors from any outside interference,

18   then I will probably at least take some steps.

19             I have read the papers on the severance and the

20   bifurcation.  I am going to give more thought to that.  I can

21   tell you at this point, my inclination is not to do that.  But

22   I need to decide the summary judgment motions and figure out

23   who is going to be in this case, what the overlapping proof of

24   witnesses are going to be, whether there is really any

25   efficiency at all or any prejudice with regard to making that

E9GMSOKC

1    decision.

2            At this point, I am not sure it's going to take that

3    long.  If we are talking about putting aside 10 to 12 weeks of

4    trial, I'm not particularly interested in adding to that

5    burden.  I don't have a whole lot of confidence that the

6    bifurcated trial is going to be less time as opposed to more

7    time than a trial on both liability and damages, if necessary.

8    And, obviously, if it's appropriate to sever, I will sever.

9    But, obviously, that's not going to save us time.  It is going

10   to add time to separate trials.  I'll give those some more

11   thought as I determine the summary judgment motion.  I have a

12   pretty good idea, at least my inclination, as I organize what

13   the nature of the proof will be with regard to all of the

14   claims and the plaintiffs.  I want to be able to resolve that

15   on or before our meeting in December so we will know.  The

16   earlier the better if we need to resolve that.

17           But at this point I think, as I say, until I rule

18   otherwise, I think all the parties should prepare for a trial

19   with all the parties in it and a trial on both liability and

20   damages.  But I wanted to look at the papers more fully in the

21   context of where I think the issues are and the parties, who

22   the parties are to these specific claims.

23           I am going to try to start putting together at least a

24   draft based on what the parties have given and proposed draft

25   of the jury instructions and get that to you as quickly as

E9GMSOKC

1    possible.  In this case and in several cases, usually, quite

2    frankly, I think it's more useful for me to take a look at that

3    before I make a final decision on that to see if I can draft a

4    verdict form because that's really the guidance.

5         When you think about it, there are limited issues in

6    this case, very limited issues.  As we used to say in criminal

7    cases, this is a whodunit, not a what happened case.  The

8    disputed issues are primarily going to be the jury making the

9    determination whether the defendants were involved in the acts

10   that the proof is going to concentrate on.  And that's a more

11   discrete issue than if we were trying to determine some factual

12   dispute as to what happened in these incidents.

13        I think I want to start concentrating on that.  I

14   don't know if the parties have given me anything yet as a

15   proposed verdict form.

16        Did you submit that?  I have not gotten it.

17        MR. YALOWITZ:  Your Honor, for plaintiffs we submitted

18   a proposed general verdict and that's our request to the Court.

19   Obviously, it's discretionary.  But between all the various

20   claims, I think a general verdict, liable or not liable, and

21   then damages amounts would be the easiest for the jury to deal

22   with.  Obviously, it's a discretionary issue.

23        THE COURT:  Is that the defendants' position?  Did I

24   receive anything.

25        MR. HILL:  You did not, your Honor.  There are so many

E9GMSOKC

1    moving pieces.  What we propose to do is get your rulings on

2    summary judgment, bifurcation, and at that point propose a

3    special verdict form, which I think would be the most

4    efficient.  Once we have the instructions, we could key it off

5    the Court's instructions.

6         MR. YALOWITZ:  Just to be clear, your Honor, our view

7    is that a special verdict in this case is a bad idea.  We are

8    in favor of a general verdict.  And that's the general guidance

9    of the circuit.  They like general verdicts, although they are

10   not opposed to special verdicts if they are done right, because

11   it's a process fraught with peril.

12        THE COURT:  I don't disagree with you.  The simpler

13   the better.  I want the jury to obviously make a clear

14   determination with regard to liability on the part of the

15   defendants.  As I say, that's really more a issue of semantics

16   rather than an issue of substantive determinations.  We are

17   seeing what language is necessary and what claims of

18   determinations are appropriate for this jury, given, as I say,

19   the limited disputed issues of fact involved in this case.

20        Most trials, usually most trials, 85 percent of the

21   facts are not in dispute.  It's the 10 or 15 percent that the

22   jury has to decide.  I want to get that as early and as

23   possible, but it's not likely I am going to get to that before

24   the summary judgment motion.  If I can get something to you by

25   or before the 16th of December, I'd like to do that.  But I

1    will give you something that we can at least work with.

2                It's clear to me, just like every other case that I

3    try, final jury instructions are going to have to ultimately be

4    finalized probably some time during the trial.  I want to give

5    you as much guidance beforehand.  And if we agree upon the

6    appropriate issues or determination about the jury, I would

7    like that as early as possible.  Again, depends on who is in

8    the case what the questions are going to be.  So I'll start

9    reviewing that.

10               I think it would be helpful if some time between soon

11   after the 20th of November, if I can get something proposed, if

12   you want to propose something specifically, if I can get that

13   and consider that between the 20th and December 16, resolve all

14   of those issues by then, it will be good.  Because I'm hopeful

15   that we will have minimal issues that will have to be

16   ultimately resolved the week before trial, and we know how the

17   case is going to unfold.

18               MR. YALOWITZ:  Your Honor, if the Court is going to

19   permit the defendants to propose a special verdict, we would

20   really like to get a look at that before the 20th.  Obviously,

21   totally within your discretion.  I'm just worried that with

22   trial prep and the holidays, if we get something on the eve of

23   the 16th, we won't really won't have adequate time to look at

24   it and react to it.

25               MR. ROCHON:  Your Honor, we would be happy to submit

E9GMSOKC

1    something seven days after the ruling on the motion for summary

2    judgment.

3              MR. YALOWITZ:  Thank you, your Honor, and thank you,

4    Mr. Rochon.

5              THE COURT:  Obviously, I've got your submissions with

6    regard to the admissibility of trial exhibits.  Obviously, it's

7    a painstaking process for me to go through each one of those

8    and determine their relevance and whether or not there is

9    sufficient validation for admissibility.  But I am going to try

10   to resolve that as quickly as possible.  Hopefully, on the 6th

11   of January we will simply be in a position to sort of refine

12   what decision was in the process and the determinations.  But I

13   will give you as much guidance as I possibly have, as early as

14   I can give it to you, given a lot of work that needs to be done

15   between now and then.

16             That's more so a process more than anything else is

17   really what I wanted to lay out today, given the amount of

18   issues that I have to go through before that time.

19             Also, I spoke to Magistrate Judge Ellis.  I wasn't

20   sure whether or not there were other issues that are before

21   Judge Ellis that I need to emphasize to him.

22             MR. YALOWITZ:  Not that I can think of, your Honor,

23   for the plaintiffs.

24             THE COURT:  The only other more recent issue is the

25   addition of certain exhibits to the joint pretrial order.

E9GMSOKC

1    Quite frankly, I'm less concerned about whether they are added

2    to the joint pretrial order.  I'm more concerned about whether

3    or not they are going to be admitted into evidence at the

4    trial.  My view is that if the timing is such that it is not

5    likely, unless some articulation of some prejudice, it is not

6    likely a significant amount of prejudice to the party on that

7    submission.  But to the extent that there is or to the extent

8    that those exhibits remain inadmissible or if they are

9    inadmissible, or to the extent that some surprises created some

10   prejudice, I will review that.

11            I know Magistrate Judge Ellis was making some

12   determinations with regard to certain -- I thought it was with

13   regard to certain exhibits.  Maybe it's beyond him at this

14   point.

15            MR. HILL:  During discovery, Magistrate Judge Ellis

16   did rule repeatedly that material not produced during the fact

17   discovery period would not be allowed at trial.  That's a

18   portion of our objection, is that a certain amount of material

19   on the plaintiffs' trial exhibit was not produced prior to the

20   close of fact discovery.  Your Honor should just enforce that

21   order.

22            MR. YALOWITZ:  There they go again, your Honor.  It's

23   not a fair and accurate statement of what happened during

24   discovery and it's not the rule that you have to produce things

25   that are the defendants' own documents that are available from

E9GMSOKC

1    public sources.  We disclosed all of our trial exhibits with

2    many, many months to go before trial.  And most of these

3    documents are things the defendants themselves should have

4    produced and didn't.

5          So the idea that we have to produce documents that are

6    publicly available in order to use them at trial is just not

7    consistent with normal pretrial practice and I don't think

8    there was anything that Judge Ellis said that suggested that.

9    I think what he was saying is, if we want to show medical

10   damages or medical evidence or some documents that are in the

11   plaintiffs' possession, those better be produced and that, of

12   course, makes sense.

13         THE COURT:  My view is a little more focused usually,

14   and I'll talk to Magistrate Judge Ellis and I will get his

15   guidance as to what he intended at the time.  My view is

16   usually the first analysis is fairly simple.  If it was

17   something that was requested during discovery and wasn't

18   produced in response to that request, then you better have a

19   pretty good reason why you didn't produce it, and it has

20   nothing to do with whether or not it was in their possession or

21   not in their possession.  Your response should have been one of

22   three things:  I don't have it, I have it and will produce it,

23   or I have it and I won't produce it.

24         And unless you get one of these three responses, to

25   now say that you have a document that you intend to use at

E9GMSOKC

trial that they were not aware that was in your possession, you

are going to have to explain to me how that can be possible if

they made a specific request for something that would have been

included in the production of these documents, or at least a

direct response to that request.

MR. YALOWITZ:  I'll give you some examples that at

least spring to mind.  Frankly, I wasn't here, so I didn't live

through the discovery phase.  But, for example, the parties

exchanged expert reports in 2013.  And the expert reports had

extensive footnotes with citations to various public source

documents as well as documents that had been exchanged earlier

in the discovery process.

Mr. Hill sent us a bunch of correspondence.  We don't

have this document, we don't have that document.  So we went

and got those for him.  Some documents he already had or he was

able to find from public sources.  By the time he deposed my

experts, he had everything he needed or at least he didn't

communicate to me that there was something missing.  So some of

those documents we have listed as trial exhibits.  Either we

provided them to the experts or we provided them to the

defendants during the expert process or, frankly, the

defendants already had them.  Maybe they exhibited them at

depositions.

To come now and say, we didn't produce them with a

Bates number on them during fact discovery, that's what the

E9GMSOKC

1    defendants are saying here and, frankly, it's just more of the

2    same, you know, tried to do whatever they can to avoid having

3    the case tried on the merits.  They are not claiming about

4    unfair surprise.  They are just trying to get some tactical

5    advantage to keep damaging evidence away from the jury.

6           THE COURT:  My first basic questions are two.  I want

7    to know from them whether they requested these documents and I

8    want to know from you what their response was to that request.

9    And if you had those documents and your response was not, we

10   produced those documents to them in response to that request,

11   then I am going to want to know what good reason that if they

12   requested those documents and wanted to know if you had them

13   and would you produce them to them or what other response you

14   gave and why the response was an inaccurate response.  Or if

15   you gave no response, what would have been the valid reason for

16   not giving any response when you had the documents and it was

17   likely from the nature of the documents that you would have

18   utilized or intended to utilize those documents at trial.

19          MR. YALOWITZ:  We will have to go through those on a

20   case-by-case basis.

21          THE COURT:  Unfortunately, I'll have to go through

22   those on a case-by-case basis.

23          Did defense want --

24          MR. HILL:  Your Honor, I am going to note that in the

25   objections that we filed, which I believe is number 544, we

E9GMSOKC

1    have indicated those particular exhibits that we believe were

2    not produced by the close of fact discovery.  I think we used

3    NP as the notation to indicate that.  As the Court is reviewing

4    the materials, that's the indication that we objected to that

5    particular ground.

6              THE COURT:  Your objection is why?

7              MR. HILL:  We did ask for these documents during

8    discovery repeatedly and Judge Ellis, as I laid out in the

9    letter dated June 30, which is document 551 on the record,

10   repeatedly told the parties.  At one point plaintiffs' counsel

11   even agreed that material that was not produced during fact

12   discovery would not be offered at trial.

13             THE COURT:  I am not sure whether your position with

14   regard to these documents is that you didn't have these

15   documents or were unaware that they were in the plaintiffs'

16   possession, or whether your argument is simply that because

17   they didn't let you know that they had them that you want to

18   keep it out.

19             MR. HILL:  I was not aware that they had them and it's

20   the former of the two choices your Honor gave me.  We did not

21   know they gave the documents.  We asked for them.  We didn't

22   get them until the end of fact discovery --

23             THE COURT:  That's not the first issue.  That's the

24   second issue.  The first issue is whether or not you had those

25   documents.

E9GMSOKC

1          MR. HILL:  We did not, your Honor.

2          THE COURT:  In your possession.

3          MR. HILL:  We did not and we are not objecting to

4    documents we produced.  Just documents that they produced after

5    the close of fact discovery.

6          THE COURT:  Give me an example.

7          MR. HILL:  Your Honor, it's a bunch of stuff,

8    including a bunch of Israeli military court files that the

9    plaintiffs provided to their experts, but never produced to us

10   prior to the close of fact discovery, a bunch of hearsay off

11   the Internet articles, books.  When you review the thousand or

12   so exhibits, it's almost entirely hearsay.  And almost all of

13   that we got after the close of fact discovery.

14         THE COURT:  Was it the nature of your request that

15   they should have been produced in response to specific requests

16   that you made?

17         MR. HILL:  Not only would you have to produce it

18   automatically under Rule 26(a)(1) if you intended to use it at

19   trial, but we specifically propounded repeated discovery

20   requests for documents related to the plaintiffs' claims, any

21   document the plaintiffs might use at trial, the standard sort

22   of document requests you would expect in a case like this.  We

23   propounded them at the beginning of the case, we propounded

24   them at the end of the fact discovery period.  And the response

25   we got is, we will produce that, but they didn't produce it

E9GMSOKC

1    prior to the close of fact discovery, and Judge Ellis has

2    already ruled that they can't use it.

3            THE COURT:  I'll discuss it first in general with

4    Judge Ellis and see if he gives me a position that would simply

5    be a blanket prohibition because of the violation of his order.

6    If not, then I will review the nature of the documents and

7    review the reasons why they weren't produced in the timely

8    manner if they weren't and what the nature and prejudice might

9    be to the defendant, if any, by that production.

10           MR. YALOWITZ:  May I just be heard on just one

11   example.  I am not crediting or discrediting Mr. Hill's

12   representation of what he did.  I'd have to go back and check,

13   which certainly I will do before just accepting his

14   representation.

15           But take, for example, these military court files

16   because I do know what happened with those.  Those are publicly

17   available.  Anybody can go into the courthouse, make an

18   appointment, go into the courthouse and pull the files.  We

19   produced during fact discovery, we gathered up the ones that we

20   thought were interesting and important.  We produced those

21   during the fact discovery period.  We hired an expert on the

22   military court system.  He said, I want to see everything.  We

23   sent somebody to the courthouse.  We pulled everything, we gave

24   it to him.  We gave it to the defendants.  It wasn't during

25   fact discovery, but in advance of his expert report.

E9GMSOKC

1          He then issued an expert report.  The defendants

2     questioned him using those documents.  The defendants produced

3     their own expert report with an expert who had all of those

4     documents.  And he rendered his opinions based on the entire

5     court file, not just the selected documents.

6          So the idea that there is some sort of prejudice here

7     or -- I'm not accepting Mr. Hill's representation that there

8     was some kind of foot fault because I don't think it's our job

9     to go find all of the military court documents for him when he

10     can just as easily send somebody to the courthouse as I can.

11          THE COURT:  But you would agree that you would have a

12     responsibility to produce those documents upon which your

13     expert relied.

14          MR. YALOWITZ:  I agree with that and that's why we did

15     it, without question, right.  We provided them to the expert.

16     We provided them to the defense; if not simultaneously,

17     certainly contemporaneously.

18          THE COURT:  There is a category of documents in this

19     category that are documents of these kinds of files that the

20     expert didn't rely upon that you want to admit into evidence.

21          MR. YALOWITZ:  I'm sorry.  Say the question again,

22     your Honor.

23          THE COURT:  Is there a category of documents that the

24     expert did not rely upon that you want to now use, admitted

25     into evidence?  I am not quite sure --

E9GMSOKC

1              MR. YALOWITZ:  On the military files, on the court

2      files?

3              THE COURT:  Yes.

4              MR. YALOWITZ:  No, no.  All the court files were given

5      to both experts.  Both experts had them.  They are even Bates

6      numbers.  But I heard Mr. Hill stand here and tell the Court

7      those should be precluded because I didn't produce them in 2012

8      or my predecessor didn't produce them in 2012.  We waited until

9      2013, during the expert process.

10             THE COURT:  I see.

11             MR. YALOWITZ:  That's his complaint.

12             THE COURT:  Your position is not that that category of

13     documents were not produced.  Your position isn't that they

14     weren't produced.  Your position is is that they are

15     complaining that they weren't produced during fact discovery

16     and only produced during expert discovery prior to their

17     deposing the expert.

18             MR. YALOWITZ:  Correct.  And I didn't have them during

19     fact discovery.  It's not like I was holding back.  It's not

20     like the plaintiffs were holding back.  It's that the

21     plaintiffs gave the defense what they had.  The expert said I

22     wanted more.  Expert said I want everything.  Plaintiffs

23     gathered everything for the expert, gave everything to the

24     defense, at least everything we could find in the court file.

25             THE COURT:  Is that something that I can determine

E9GMSOKC

1    based on the papers that I have?

2         MR. YALOWITZ:  I don't think so.  I think that the

3    correspondence between the parties and so forth, I don't think

4    there has been a filing on that.  I think that's just --

5         THE COURT:  Is that even an argument that you

6    responded in that manner to their objection?

7         MR. HORTON:  It is, your Honor.  It is in their

8    response to their motion to strike, Mr. Kaufman, who is the

9    expert at issue.  We briefed it there.  I don't think we

10   attached every piece of correspondence that might have gone

11   back and forth between the parties.  Everything Mr. Yalowitz

12   just said is in our response to our Daubert motion on

13   Mr. Kaufman.

14        MR. HILL:  Your Honor, at the beginning of the

15   discovery process the parties agreed that we were going to

16   bifurcate expert and fact discovery.  The rationale of that is

17   when we get to expert discovery, there will be a fixed factual

18   record for the experts to work on.  That was made clear to the

19   parties at the outset of the case.  That was always Judge

20   Ellis' approach to the case and that's the source, as you'll

21   see in document 551, for his repeated warnings on multiple

22   occasions, that if you are not going to produce something

23   during the fact discovery it's not going to be used at trial.

24   To say that it was produced with the expert materials undercuts

25   the whole rationale for bifurcating two discovery periods.

E9GMSOKC

1          Let me make another point about military court files.
2    This military court we are talking about is not a court like
3    this.  The allocution we witnessed this morning, that doesn't
4    happen at that place.  This is in a military prison.  It's
5    inaccessible to Palestinians.  Our expert, who is an Israeli
6    human rights lawyer, was not allowed to go there --

7          MR. YALOWITZ:  That's a misrepresentation.

8          THE COURT:  Let him finish.

9          MR. HILL:  -- was not allowed to go there and look at
10   the files.  The plaintiffs hired someone who is a reserve judge
11   at this military court and that person and the plaintiffs'
12   lawyers were allowed, apparently, to access the files.

13         Now, we asked for all this material as a factual
14   matter during fact discovery so the record would be fixed.  And
15   the plaintiffs gave us some of it, but not all of it.  And we
16   have objected to the portion they didn't give during factual
17   discovery.

18         THE COURT:  Is it your position that they were in
19   possession of that material at the time you asked for it?

20         MR. HILL:  My position is that they were in
21   possession, custody, and control.  And the control, which is
22   what Rule 34 requires, is demonstrated by their subsequent, as
23   they claim, efforts to go gather it through the expert that
24   they had retained.

25         THE COURT:  How does that make it control?

E9GMSOKC

1          MR. HILL:  Because they could access the materials and

2     we could not.  There is another layer here.

3          THE COURT:  That's like saying, I'm in control of the

4     bank's records because I could have asked for them six months

5     ago and I didn't, and so I didn't have them in my possession

6     when you asked me for the bank records.  How is that in my

7     control?

8          MR. HILL:  Rule 34 requires a party to produce

9     documents that are in its possession, custody, or control.

10    These plaintiffs, through their lawyers and through their

11    experts, obviously controlled access to these materials.

12         THE COURT:  When you say obviously, but I don't

13    understand how they had control of the Israeli military

14    material, how these individual plaintiffs had control of them.

15         MR. HILL:  They did through their counsel.

16         THE COURT:  How did counsel have control of them?

17         MR. HILL:  This counsel, this organization, Shurat

18    HaDin, which we mentioned in the summary judgment papers, this

19    is an organization that specializes in, among other things,

20    providing tours of this military court.  There is a very close

21    relationship between this group of plaintiffs' lawyers and the

22    Israeli government and that is why at this time particularly

23    important.

24         At the beginning of discovery in this case we

25    requested and Magistrate Judge Ellis issued Hague letters of

E9GMSOKC

1    request to the government of Israel and that Hague letter which

2    is issued under the auspices of this Court, requested all

3    Israeli government materials that would be pertinent to these

4    cases and to the then known perpetrators.

5            The Israeli government, upon receiving this Court's

6    request, seeing that it came from the defendants, never honored

7    that request, so we never got access to Israeli government

8    materials.  But the plaintiffs' lawyers, who have apparently

9    some connections with the Israeli government, have selectively

10   picked, as Mr. Yalowitz said, the things they think are

11   interesting to produce.

12           And the Court should be troubled, I think, when a

13   party is using its connections with a foreign government to

14   gain materials on a selective basis and choose just the ones

15   they like to use as evidence at the trial.  That's a whole

16   different rationale than why they should have been produced

17   during fact discovery.

18           MR. YALOWITZ:  Your Honor, I can't abide --

19           THE COURT:  Don't interrupt him.  I don't let him

20   interrupt you.

21           I can decipher what's relevant and what's not.

22           MR. YALOWITZ:  Thank you, your Honor.

23           MR. HILL:  You can see where I'm coming from.

24           THE COURT:  I can see partially where you're coming

25   from.

E9GMSOKC

1          The bottom line is, no, I don't accept the argument,

2     they simply could have asked for it and they would have gotten

3     it makes it in their control if it's not their document.

4     Because the Israeli government could have said to them, we are

5     not going to give you that and you don't know whether the

6     Israeli government has said to them, we are going to give you

7     everything they have with the security concerns and other

8     things.

9          I don't know what basis that I can determine that

10    somehow documents that are not in their possession or custody

11    or in their control because they are plaintiffs in this case

12    and the Israeli government would look more favorably upon

13    giving documents to advance their case than they would to give

14    you documents to advance your case.  I am not sure I know a

15    definition of control that that falls under.

16         If I want my next-door neighbor to give me something

17    and I'm suing you, just because my next door neighbor says, I

18    might give it to you, but I am not going to give it to them, if

19    I don't have it in my custody or in my possession, I am not

20    sure that puts it in my control that somehow if I had asked for

21    it I would have gotten it so, therefore, I violated the rule of

22    production because I didn't go out and ask my friendly source

23    to give me something that's not in my possession or custody.

24         MR. HILL:  Your Honor, I'm happy to brief it, if you'd

25    like.  I do think they were required to produce any documents

E9GMSOKC

1    they controlled.

2              THE COURT:  I understand that.  But you don't give me

3    their control.  I don't think that you have a pretty

4    particularly strong argument that these plaintiffs controlled

5    the Israeli government.

6              MR. HILL:  I am not saying they controlled the Israeli

7    government.

8              THE COURT:  I don't know what kind of control you are

9    talking about.

10              MR. HILL:  They controlled the documents that they

11    subsequently produced after the close of fact discovery.

12    That's the only issue.  They obviously control things they can

13    produce at a later date.

14              THE COURT:  No.  They only control things that they

15    can produce at a later date if they had those things in their

16    possession and custody.  Just because they got them later

17    doesn't mean they controlled them before they got them.

18              MR. HILL:  That's what control must mean, your Honor.

19    Otherwise it would mean --

20              THE COURT:  That's not what control means.  Control

21    means that you requested it of them and that they should have

22    reasonably been in a situation that they should have responded

23    to you and given you those documents because they have control

24    over the person or entity that has the documents.

25              Just to say, I asked you for, you didn't have it in

E9GMSOKC

 1    your possession or custody, but you could have asked somebody

 2    else for and they probably would have given it to you, that's

 3    an argument that you can always make, if you think that

 4    somebody might favorably entertain their request.  But that

 5    doesn't tell me that they have the obligation to make the

 6    request on your behalf or make a determination at that time

 7    that they are going to get the documents subsequently.  If they

 8    never got these documents, you wouldn't have that argument.

 9              MR. HILL:  That's the issue that's before you.  It's

10    not whether Rule 34 was violated in the first instance by the

11    failure to produce.  It is whether the failure to timely

12    produce in accordance with the Court's scheduling order and the

13    Court's repeated admonitions that they had to be done by that

14    date merits an exclusion now.  We think Rule 37 requires that

15    automatically.  We think Judge Ellis' repeated orders to that

16    effect require it now.  If you would like us to brief it

17    further on an individual document-by-document basis, we are

18    happy to.

19              THE COURT:  I have to look at it.  I am not sure

20    whether or not I need further briefing.  As I've indicated, my

21    first review is going to be whether or not this is something

22    that they were in a position to respond to you that, yes, we

23    have it in our custody, possession, or control and we are going

24    to either say we don't have it in our custody, possession or

25    control, or we are going to respond that even though we have it

E9GMSOKC

1    in our custody, possession, and control, we are not going to

2    give it to you.

3            If their response was, we don't have it, then we have

4    no obligation to go out and ask somebody who had it to give it

5    to us so we can give it to you.  You have to give me a more

6    compelling argument that they had a responsibility to go out at

7    the time that you requested it and get those documents.

8            What they would have a responsibility to do is that if

9    they subsequently obtained those documents during discovery, at

10    the earliest possible time, after you requested them, they

11    would have had an obligation to turn those documents over to

12    you.  But to simply say that there is some obligation, I am not

13    sure where you make the distinction between -- if they had

14    control of the document, they had an obligation to give it to

15    you, whether they subsequently obtained it or not.  That's the

16    rule.

17            So the question is not whether or not they

18    subsequently personally obtained it.  The question is, when you

19    requested it, during discovery and at any time during

20    discovery, did they have control over it that they had an

21    obligation, regardless of whether they wanted to produce it

22    later, whether they had an obligation to produce it to you.  If

23    they did have an obligation to produce it to you, because it

24    was in their control, then they violated the rule.  If they

25    didn't have an obligation to produce it to you at that time, if

E9GMSOKC

they subsequently got a hold of it, because they decided it

dawned on them that somebody else may have something that would

be useful to them and they decided at that point that they

would reasonably request it and the party was friendly to them

and decided to give it to them, at that point they had the

obligation to immediately give it to you.  I am not sure why

their subsequent obtaining the document outside of discovery is

related to the initial analysis of whether it is in their

custody, possession, or control.  It's in their possession,

custody, or control.  They got an obligation to give it to you

if you asked for it, whether they got it later or whether they

intended to use it.  If they violated that rule, then they

violated that rule and sanctions are imposed.  I don't think

it's changed by the fact that subsequently they asked for it

and got it.

        I'll review it.  I'll look at the nature of the

documents and the nature of, as I say, if Judge Ellis gives me

the impression that he had set down a clear bright line rule on

this and that the parties understood that the consequences of

violating that rule would be preclusion, and he says this is a

violation of that rule, then I'll first consider that.  But if

he doesn't say it that way, then I am going to review what it

is that you received, when you received it, whether or not

there is a basis to argue that you should have received it

early and what was the prejudice to you in not receiving it, if

E9GMSOKC

1   you did not receive it in a timely manner.  I'll start with

2   that analysis.  As I say, I am sure we will discuss it further

3   once I more completely look at the documents and the arguments

4   and get more informed with regard to the nature of the

5   arguments.

6           Is there anything else you wanted to add?

7           MR. YALOWITZ:  No.  I think your Honor has captured it

8   well.  I would just throw into the mix of things that the Court

9   would have to consider the defendants' own diligence in

10  pursuing or not pursuing public source information.

11          THE COURT:  Unless you can give me a strong likelihood

12  that if they had asked the Israeli government for it, the

13  Israeli government would have kindly turned it over to them, I

14  am not sure that I have much of an analysis to go through.

15          MR. YALOWITZ:  I have to go back and look at the

16  depositions.  But he and I talked about that issue.  And my

17  recollection is that he expressed --

18          THE COURT:  He who?

19          MR. YALOWITZ:  This is Michael Sfard.  He is the

20  defendants' expert.  My recollection is he said -- he's a

21  prominent kind.  He would be like a Kuntsler or Kuby or

22  something like that, well known over there.  And he said for

23  him to get access, he has had in the past to have to go bring

24  an injunction at the high court to get in there.  I said, how

25  hard is it to do that.  He said it's a small fee and they let

E9GMSOKC

me do it.  I have to see what the deposition said about that.

But I don't think that he would have had any trouble getting in

there.

          The other thing is, there is evidence in the record in

this case that the defendants' top security people have quite a

close cooperative relationship these days with the government

of Israel on security issues.  And, frankly, I don't think that

had they used their internal sources to go to the government of

Israel and say, our lawyers are having trouble getting these

court documents.  I don't think they would have had a problem,

but I have to look and see what Sfard said on that issue.

          THE COURT:  If I were to determine that those

documents were in your possession, custody, or control, that

your argument would not be that, well, they could have gone and

got a court injunction to try to get these documents and,

therefore, we didn't have an obligation to give it to them when

they asked for it.

          MR. YALOWITZ:  My focus would be on the factors that

the Second Circuit tells us to look at, which is the reason for

the delay in production, prejudice to the defendants.  There is

a four-factor test and so that what I'm saying might flow into

the mix of prejudice.  But I think, frankly, the prejudice

issue here is dispositive because they have the documents well

before they deposed my expert, well before their expert issued

a report.  I think we have --

E9GMSOKC

1          THE COURT:  Was this issue raised at the time that you

2     produced the documents?

3          MR. YALOWITZ:  Not that I can recall.  The defendants

4     have sort of a rote e-mail that they send.  We have made a

5     number of Rule 26(f) supplements.  We get a document.  We

6     provide it.  And Mr. Hill has sort of a rote e-mail that says

7     something to the effect that, by timing, form, and substance,

8     you are too late, so we are treating your production as a

9     nullity.

10          THE COURT:  Was this brought to the attention of

11     Magistrate Judge Ellis at that time?

12          MR. YALOWITZ:  Not that I can recall at that time,

13     your Honor, no.

14          MR. HILL:  Your Honor, we did raise the late

15     production of these military files with Judge Ellis.  He

16     indicated that he would wait until the record was developed at

17     a deposition.

18          THE COURT:  That was at what point in time?

19          MR. HILL:  When they were done in early 2013.

20          THE COURT:  Before the deposition?

21          MR. HILL:  Yes, sir.

22          THE COURT:  Soon after the production?

23          MR. HILL:  Yes, your Honor.

24          THE COURT:  Let me look at that.

25          MR. HORTON:  Your Honor, there is one other thing.

E9GMSOKC

1    Mr. Hill just referred to the record of the depositions.

2    Mr. Yalowitz referred to Mr. Sfard, who is their expert.  Judge

3    Kaufman, our expert, was actually asked by them at his

4    deposition, could we have gotten these documents if we had gone

5    to the military court.  He said yes.  If you made the proper

6    application to the military court, you will get them.

7         Their complaint is, they went through the Hague

8    convention and apparently never heard anything again.  We don't

9    know if they did anything to follow up with that.  But he said,

10   forget about the Hague convention.  If you want records from a

11   court, go to the Court and say, may I have the records.  That's

12   what we did.  That's what they apparently didn't do.

13        Judge Kaufman, who should be in a better position than

14   anyone to know, because he's a judge of that court, said, if

15   they had gone, they should have been able to get them.  They

16   apparently never did that and that's what this is all about.

17        THE COURT:  My attitude would be, if you wanted to

18   join that issue, you could have joined that issue at the time,

19   like respond in that way.  That's not the way you responded.

20   In hindsight, that's an argument.  But at the time they

21   requested the documents, I assume you gave them a response

22   which wasn't, you can go to the Israeli court and get it

23   yourself.  You responded that you had it, you didn't have it,

24   or you had it and wasn't going to give it to them.

25        MR. HORTON:  Our response would have been just like

E9GMSOKC

your example with your neighbor.  The neighbor had given us the

documents that we had asked for, which was less than every

document that the Court had, so we produced them.  We didn't

respond, we didn't go to them and I don't think the law

requires us to go and say, you should ask my neighbor and see

if he's willing to give them to you.  Our job is to produce

what we have.  We produced what we have.  What we didn't have

was publicly available and I don't think any party is ever

under an obligation to go get publicly-available documents.

They keep talking about Judge Ellis.  I would like to

see Mr. Hill point to language where Judge Ellis says, when I

say you have to produce a document during fact discovery to

rely on it later, I am including not only documents that are

normally within one's possession custody and control, but I am

adding the additional requirement that you must go out, find

documents which are not in your possession, custody, and

control and produce those in fact in discovery.  He never said

that, but Mr. Hill is proceeding as if he did.

THE COURT:  My analysis is more basic than that.  I

think the way you characterized it is, if you didn't have it

and they could have gotten it from another source, then there

is no violation.  Quite frankly, I don't even have to get to

the other source part.  If you didn't have it, you didn't have

it.  I don't have to analyze whether they should have tried to

get it someplace else.  The question is whether you had an

E9GMSOKC

1    obligation to produce it or you had an obligation to go out and

2    get it, because it was somehow in your possession, custody, or

3    control.  If it wasn't in your possession, custody, and

4    control, my attitude would be that you didn't have an

5    obligation to turn it over until a reasonable time quickly,

6    immediately after it got into your possession, custody, and

7    control.

8              MR. HORTON:  That is exactly our position, your Honor.

9              THE COURT:  Unless they can convince me that you

10   should have, as I say, rather than they have to jump through

11   hoops, you should have jumped through hoops to get it for them.

12             MR. HORTON:  That's a good description.

13             THE COURT:  I will see at what point how you responded

14   and at what point was it reasonable for you to understand that

15   you would want to utilize these documents and whether or not

16   you produced these documents in a timely manner after you

17   obtained these documents or had otherwise custody or control.

18   I don't hear them saying that you misrepresented at this point

19   your response to them when you responded to their request, but

20   I will look at that.

21             My approach and what the issues that I'm looking at,

22   as I say, let me get through the substantive part first, and

23   also that gives me a real informed framework to know the nature

24   of the witnesses and case on the different incidents so I can

25   make a more informed judgment with regard to each one of those

E9GMSOKC

1    plaintiff's claims.

2          I will do that and hopefully on or before the 20th of

3    November we can be in a position to more specifically move

4    forward with regard to resolving as many of these issues as

5    possible so we can stay on the schedule related to trial.

6          Is there anything else we need to address today by the

7    plaintiffs?

8          MR. YALOWITZ:  I don't think so, your Honor.  Thank

9    you very much.  This has been a very helpful meeting.

10          THE COURT:  What about defense, anything else?

11          MR. ROCHON:  No, sir.  Thank you.

12          THE COURT:  Let's proceed that way.  I have a lot of

13    work to do.  I have to put aside some other things to stay on

14    the schedule for literally the next six months.  I'll try to

15    see if we can all keep up and we can be ready to go and be

16    prepared to pick a jury on January 12.

17          MR. YALOWITZ:  Thank you, your Honor.

18                    o0o

19

20

21

22

23

24

25