UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

    *Plaintiffs,*

    *vs.*

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

    *Defendants.*

No. 04 Civ. 00397 (GBD) (RLE)

___

**MEMORANDUM OF LAW ON BEHALF OF
PRESS APPLICATIONS IN SUPPORT OF MOTION TO
INTERVENE AND TO UNSEAL JUDICIAL DOCUMENTS**

___

Ronald D. Coleman (RC 3875)
Rosalie Valentino (RV 1232)
GOETZ FITZPATRICK LLP
One Penn Plaza—Suite 3100
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
*Attorneys for Intervenors
Sharyl Attkisson, Edwin Black and Steven Emerson*

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **PRELIMINARY STATEMENT** | …………………………………………….. | 1 |
| BACKGROUND | …………………………………………….. | 3 |
| THE INTERVENORS | …………………………………………….. | 5 |
| **ARGUMENT** | …………………………………………….. | 7 |
| I.   THE PRESS APPLICANTS SHOULD BE PERMITTED TO INTERVENE. | …………………………………………….. | 7 |
| II.   THE PUBLIC AND THE PRESS HAVE AN AFFIRMATIVE, PRESUMPTIVE RIGHT TO INSPECT ALL MOTION PAPERS AND THE RECORD IN THIS ACTION. | …………………………………………….. | 7 |
| III.   THERE IS NO BASIS IN THE RECORD FOR FINDING THAT THE STRICT STANDARD NECESSARY TO DEFEAT THE PUBLIC'S RIGHT OF ACCESS HAS BEEN SATISFIED. | …………………………………………….. | 9 |
| **CONCLUSION** | …………………………………………….. | 11 |

## PRELIMINARY STATEMENT

This is a motion by three world-renowned investigative journalists to intervene in this action bearing on issues of critical public interest for the limited purpose of vindicating the public's presumptive legal right of access to records that have been filed under seal or heavily redacted. The intervenors respectfully submit that, under well-established law – much of it established by this Court – there is no legal basis for maintaining a cloak of secrecy over the contents of public filings in this litigation to which the press and public are presumptively entitled access.

This litigation, of course, is an effort by American citizens to assign legal responsibility for terrorist attacks against them and, unfortunately, loved ones murdered in those attacks to an organization which, as plaintiffs urge and defendant does not deny, is widely considered "the sole legitimate representative of the Palestinian people." Considering the scope and effects of these attacks, the paucity of accounting which to date defendants have had to make for them, as well as the policy implications raised by the litigation, it is hardly controversial that this is a case involving issues and information of great public interest.

Ironically, however, due to the purported "sensitivity" of these issues, the defendant has been permitted to make dozens of filings, including hundreds of attachments to motion papers directed to the merits, partially or fully under seal. By all indications, the Court has permitted this practice, and plaintiffs have acquiesced in it, to avoid delay and in the interest of judicial efficiency; thus, the record does not reflect any consideration by the Court of the propriety of maintaining such confidentiality based on the legal merits. But notwithstanding the validity of such interests in their own rights, the right of the public to access of these filings – each of which

is a "judicial document" presumptively available for public scrutiny – is entitled to, and in fact demands, independent vindication.

This motion to intervene is made by three leading journalists with particular expertise and interest in the global, political and moral issues being litigated in this Court: Sharyl Attkisson, Edwin Black and Steven Emerson (the "Press Applicants"). Their world-class investigative journalism backgrounds and credentials are set out in greater detail below. They respectfully submit that the public's right of access to judicial records in a case of such profound public concern – and where the presumption of public access is, under well-established precedent, strongest – should not, and as a matter of law cannot, be denied without a judicial determination on the record, that extraordinary circumstances justify the sealing of documents filed with the court. Nothing in the record indicates that such a finding has been or could be made here.

In particular, the Press Applicants seek an order to unseal documents and for the disclosure of redacted content because, given the nature of the litigation and the documents involved, there is substantial reason to believe that the information thus freed from improper occlusion would reveal an unlawful, pernicious and murderous system established and organized by the defendant to reward or "compensate" the families of suicide bombers and other self-styled Palestinian "martyrs."

The Press Applicants have previously reported on Palestinian "suicide-murder for hire" in amounts that so dwarf the wage of an ordinary Palestinian worker that the social and economic pressure on Palestinians to claim such rewards and ensure their families' economic survival can, in some circumstances, be irresistible – thus constituting on ongoing danger to the public, regardless of nationality and location, that extends far beyond the immediate pecuniary interests the plaintiffs in this matter seek to vindicate. It is worthwhile to note that this case concerns

2

facts and issues that were the subject of a widely followed case recently decided by jurors in the Eastern District of New York and entitled, *Linde v. Arab Bank*, 04-CV-2799, which revealed that money was used to reward terrorists and their families after attacks on Israelis and U.S. nationals visiting Israel between 2000 and 2005 during the second intifada or Palestinian uprising.

For these reasons, the Press Applicants respectfully request that the Court order the sealed documents of record unsealed as well as the disclosure by defendant of redacted content which, as set out in further detail below, bears on issue of grave, immediate and ongoing concern and which – as a matter of black-letter law – are not entitled to judicial protection from public scrutiny.

## BACKGROUND

The terror attacks at issue in this case have been the subject of significant media coverage,[1] and the question of Palestinian Authority responsibility for terror attacks has been the subject of congressional hearings as recently as March 5, 2014.[2] The United States Government also donates large amounts of money to the Defendants.[3]

On March 21, 2012, this Court entered a protective order permitting the parties to invoke confidential treatment of documents exchanged in discovery. Protective Order § 2 (DE 219).

---

[1] *See*, e.g., Robert D. McFadden, "Death on the Campus: The Victims," *New York Times*, Aug. 2, 2002, http://www.nytimes.com/2002/08/02/world/death-on-the-campus-the-victims-maelstrom-swallows-5-americans-on-a-quest.html; James Bennet, "Arab Press Glorifies Bomber as Heroine," *New York Times*, Feb. 11, 2002, http://www.nytimes.com/2002/02/11/world/arab-press-glorifies-bomber-as-heroine.html; "Suicide Attack on Jerusalem Bus," BBC NEWS, Jan. 29, 2004, http://news.bbc.co.uk/2/hi/middle_east/3440265.stm.

[2] Federal News Services, "Hearing of the Terrorism, Nonproliferation and Trade Subcommittee of the House Foreign Affairs Committee; Subject: Threats to Israel: Terrorist Funding and Trade Boycotts." Similarly the public interest in the sealed information was highlighted by the "Report on Terrorist Activity in Which United States Citizens Were Killed and Related Matters" which was mandated by Pub.L. 106-113 as amended by Pub.L. 107-228, (codified as a note to 22 U.S.C. § 2656f). This report was required to include, among other relevant items, a list of any terror suspects from the period of this litigation "who are members of Palestinian police or security forces, the Palestine Liberation Organization, or any Palestinian governing body."

[3] Jim Zanotti, *CRS Report:* "U.S. Foreign Aid to the Palestinians," Congressional Research Service*,* July 3, 2014, found at http://fas.org/sgp/crs/mideast/RS22967.pdf.

Like most protective orders, it requires the parties to file under seal all briefs and other materials in support of motions to the extent that they contain or refer to documents or other information designated by one of the parties as confidential during the discovery process. *Id.* § 3(d). On March 6, 2014, the Court entered an order stating, "If a party objects to the public filing of any motion papers, that party must make an application to the Court for confidential treatment within 48 hours of the receipt of the papers." (DE 435). The ECF docket suggests that the parties did make such applications, but the record concerning the Court's adjudication of these applications is incomplete. *See*, e.g., DE 437, 454, 455. In this regard, much of the correspondence with the Court on these issues has not been docketed and is not available to the public.[4]

The record does indicate that the sealed documents concern "promotion records of terrorists who were convicted of mass murder" who are "sitting in jail and they remain on the police force, getting their pay, getting their promotions and so forth." Tr. (Mar. 4, 2014) at 15 (DE 439). The sealed documents are also said to reflect "'the specific amount of each payment' by defendants to terrorists" who committed the attacks at issue in this case, as well as "rank and promotions" of such terrorists. DE 455. The record also suggests that the sealed documents reveal information about and identities of suicide terrorists who killed or injured American citizens. DE 455 at 7. Additionally, publicly available versions of certain summary judgment, in limine, and sanctions papers (DE 487, 529, 545) suggest that a substantial amount of the evidence in this case continues to be filed under seal.

There is no ruling on the record, however, constituting specific findings by the Court with respect to the reason for this. So far as the Press Applicants have been able to discern, the Court's only ruling on this issue is one that accepts as its premise the confidential status of these

---

[4] For example, plaintiffs' March 18, 2014 and March 28, 2014 letters (DE 437, 454) are heavily redacted and make reference to other, undocketed letters from defendants.

materials, in which the Court states, "[T]here's a confidentiality agreement and protective order in this case. The confidentiality agreement and protective order via Section 2A designates the kinds of documents that qualify as confidential. If it doesn't fall under that category, it is not confidential. If it does fall under that category, it is confidential. That's the ruling." Apr. 11 Tr. at 72-73.

## THE INTERVENORS

**Sharyl Attkisson** is an American investigative reporter who spent 20 of her more than 30 years in the field as a correspondent for CBS News for over two decades, having begun her career in broadcast journalism in 1982 at CNN. She has won five Emmy awards for investigate journalism, exposing scandals and reporting beneath the headlines of controversies involving a wide range of topics, including leading political figures and institutions of both Republican and Democratic administrations. Attkisson was one of the first journalists to fly on a military combat mission (a B-52 sortie in Kosovo). Her published news articles detail precisely the topic addressed above and which is central to this litigation: payments received by Palestinian "martyrs" or their families as bounties for acts of terrorism as well as the funding and routing of such payments through a network of Middle Eastern "charities," which she has documented by obtaining and analyzing banking and financial documents from around the world.

**Edwin Black** is an award-winning investigative journalist and a *New York Times* bestseller author of numerous s books that have appeared 120 editions in 14 languages in 65 countries. With more than a million books in print, his has appeared reporting in scores of newspaper and magazines, encompassing the periodicals of the United States, Europe and Israel. Specializing in the historical interplay between economics and politics in the Middle East, his work focuses on human rights, genocide and hate, corporate criminality and corruption,

5

governmental misconduct, academic fraud, philanthropic abuse, oil addiction, alternative energy and historical investigation. One of his more recent works is *Financing the Flames: How Tax-Exempt and Public Money Fuel a Culture of Confrontation and Terrorism in Israel* (Dialog Press 2013), in which he documents the direct relationship between taxpayer assistance to the Palestinian Authority and its distribution of much of these funds as payment for terrorist acts that follows a schedule of compensation pegged directly to the number of victims murdered and the amount of carnage inflicted.

**Steven Emerson** is considered one of the leading authorities on Islamic extremist networks, financing and operations. He serves as the Executive Director of The Investigative Project on Terrorism, one of the world's largest storehouses of archival data and intelligence on Islamic and Middle Eastern terrorist groups. Mr. Emerson and his staff frequently provide briefings to U.S. government and law enforcement agencies, members of Congress and congressional committees, and print and electronic media, both national and international. Since 9-11, Mr. Emerson has testified before and briefed Congress dozens of times on terrorist financing and operational networks of Al Qaeda, Hamas, Hezbollah, Islamic Jihad, and the rest of the worldwide Islamic militant spectrum. He is the author or co-author of six books on terrorism and national security, including, most recently, *Jihad Incorporated: A Guide to Militant Islam in the U.S.* (Prometheus, 2006).

Neither the Press Applicants' credentials nor their professional interest in this matter (which should not arouse material dispute) are of material significance to this application, which is premised, rather, on the right of the public to know. For this reason they request that the Court accept the foregoing précis of their respective profiles based on the attached declaration of counsel which collates, as exhibits, their respective self-published Internet professional

information. In the event, of course, that the question of the Press Applicants' qualifications were deemed to be of material significance in determining this motion, they will promptly provide the Court with whatever additional supporting information may be required.

## ARGUMENT

### I. THE PRESS APPLICANTS SHOULD BE PERMITTED TO INTERVENE.

It is well settled that members of the press and public have a right to intervene to challenge the continued sealing of court records and the closure of court proceedings. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 117-19, 126-27 (2d Cir. 2006) (recognizing press right to oppose sealing of motion papers in civil litigation); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982). Federal courts routinely permit news organizations to intervene under Fed. R. Civ. P. 24 to challenge restrictions on the public's right of access to civil court records and proceedings. Indeed, "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998); *accord Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir. 1979); *Lugosch*, 435 F.3d at 117-18, 126-27.

Based on the foregoing, the Press Applicants should be permitted to intervene for the limited purposes of challenging the sealing of court records.

### II. THE PUBLIC AND THE PRESS HAVE AN AFFIRMATIVE, PRESUMPTIVE RIGHT TO INSPECT ALL MOTION PAPERS AND THE RECORD IN THIS ACTION.

It is settled beyond dispute that both the First Amendment and common law rights of access extend fully to records in civil litigation. *See*, e.g., *Lugosch*, 435 F.3d at 119-24 (First Amendment and common law secure a right of access to motions in civil cases); *Hartford*

7

*Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) (First Amendment secures right of access to court dockets); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) ("[T]he public and the press possess a First Amendment and a common law right of access to civil proceedings; indeed, there is a presumption that these proceedings will be open."). Nothing in the record suggests any reason the same standard, and outcome, should not apply to this civil litigation matter.

In a case directly on point, *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988), the court held that the public and press had a First Amendment right of access to summary judgment motion papers, including attached exhibits, which had been filed under seal. *Id.* at 253. Because summary judgment motion papers are "a public component of a civil trial," *id.,* their sealing is prohibited without specific factual findings, which had not been made in *Rushford*. *Id.*, 846 F.2d at 253; see also, *Publicker Industries*, 733 F.2d at 1070, 1071. Because no finding on the merits justifying the continued sealing of the materials underlying the motions by the various parties in this matter – and because, as discussed below, nothing appears that could provide such justification in light of the high burden on parties seeking to prevent public disclosure of materials submitted to public courts – this constitutional interest mandates the unsealing of the court records requested by Press Applicants on this motion, and that such action be taken swiftly. "To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression" and therefore a "district court must make its findings quickly." *Lugosch*, 435 F.3d at 126-127 (2d Cir. 2006).

### III. THERE IS NO BASIS IN THE RECORD FOR FINDING THAT THE STRICT STANDARD NECESSARY TO DEFEAT THE PUBLIC'S RIGHT OF ACCESS HAS BEEN SATISFIED.

A party advocating a restriction on public access to court records bears a heavy burden. *Lugosch*, 435 F.3d at 123-24; *ABC, Inc. v. Stewart*, 360 F.3d 90, 106 (2d Cir. 2004). The

8

governing standard applied by the Supreme Court for sealing public records encompasses four distinct factors:

**1. There must be a substantial probability of prejudice to a compelling interest.** Anyone seeking to restrict the access right must demonstrate a substantial probability that openness will cause harm to a compelling interest. *See, e.g.*, *Richmond Newspapers*, 448 U.S. at 581; *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"); *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986) ("*Press-Enterprise II*"); *ABC, Inc.,* 360 F.3d at 106.

**2. There must be no alternative to adequately protect the threatened interest.** Anyone seeking to defeat access must further demonstrate that there is nothing short of a limitation on access that can adequately protect the threatened interest. As the Second Circuit has explained, a "trial judge must consider alternatives and reach a reasoned conclusion that closure is a preferable course to follow to safeguard the interests at issue." *In re The Herald Co.*, 734 F.2d 93, 100 (2d Cir. 1984); *Press-Enterprise II*, 478 U.S. at 13-14; *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995); *United States v. Brooklier*, 685 F.2d 1162, 116768 (9th Cir. 1982).

**3. Any restriction on access must be narrowly tailored.** Where no adequate alternative to closure or sealing exists, any limitation imposed on public access must be no broader than necessary to protect the threatened interest. *Press-Enterprise II*, 478 U.S. at 13-14; *Lugosch*, 435 F.3d at 124; *ABC, Inc*., 360 F.3d at 104; *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

**4. Any restriction on access that is imposed must be effective.** Any order limiting access must be effective in protecting the threatened interest for which the limitation is imposed. The party seeking secrecy must demonstrate "that closure would prevent" the harm sought to be avoided. *Press-Enterprise II*, 478 U.S. at 14; *accord In re The Herald Co.*, 734 F.2d at 101 (closure order cannot stand if "the information sought to be kept confidential has already been given sufficient public exposure").

Even where an arrangement governing confidentiality is given the Court's imprimatur in a protective order, the designation of broad categories of confidential "topics" does not constitute sufficient grounds for overcoming the presumptive treatment of all materials filed with a court during litigation absent a judicial finding of cause based on application of the governing legal standard to the specific documents sought to be kept confidential. *See*, e.g., *U.S. ex rel. Davis v. Prince*, 753 F. Supp.2d 561 (E.D. Va. 2010) (magistrate judge's protective order "violates Rule 26(c) by delegating the good cause determination to the parties, thereby erasing the rule's requirement that there be a judicial determination of good cause"). As mentioned above, there is no indication in the public record that any of the forgoing showings were made or can be made by any party – plaintiff or defendant – in this litigation. There are no facts of record upon which to find a substantial likelihood of injury to a compelling interest recognized by the law in such circumstances. Nor is there any reason to believe that any legitimate concern cannot adequately be addressed through measures other than keeping motions and other documents under seal.

The motion papers of the parties together with their supporting documents should be unsealed, and all future filings and proceedings should be available to the public, unless a showing – upon notice and an opportunity to respond being provided to the Press Applicants as

intervenors – is made demonstrating that some narrow restriction on access is essential to protect, not either party's desire or "need" for confidentiality, prompt resolution of the underlying litigation or other desideratum – but a compelling, lawful interest.

## CONCLUSION

For each and all the foregoing reasons, the Court should unseal the motion papers and all other sealed documents filed on the docket and, as appropriate, permit the disclosure of all substantive correspondence or other unfiled submissions by the parties.

GOETZ FITZPATRICK LLP

By: _____
RONALD D. COLEMAN (RC 3875)

Rosalie Valentino (RV 1232)
One Penn Plaza—Suite 3100
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
*Attorneys for Intervenors*
*Sharyl Attkisson, Edwin Black and Steven Emerson*

Dated:  New York, New York
        October 27, 2014

11