**REDACTED - PUBLICLY FILED VERSION**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                                        Plaintiffs,

        vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                                        Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE
JUDGE'S ORDER DENYING MOTION FOR SANCTIONS**

**ARNOLD & PORTER LLP**
399 Park Avenue
New York, NY  10022
(212) 715-1000

*Attorneys for Plaintiffs*

October 15, 2014

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

BACKGROUND ..................................................................................................................... 2

      A.    Defendants' Violation of Discovery Orders .................................................... 2

      B.    Defendants' Incomplete Production ............................................................... 3

      C.    Plaintiffs' Letter Request for a Pre-Motion Conference .......................... 5

      D.    The Tirawi Letter ............................................................................................. 6

      E.    Plaintiffs' Motion for Sanctions ..................................................................... 6

ARGUMENT .......................................................................................................................... 7

I.      STANDARD OF REVIEW ......................................................................................... 7

II.    THE DENIAL OF SANCTIONS WAS CLEARLY ERRONEOUS ................................ 8

      A.    The Missing Evidence Is Relevant, But the Magistrate Judge
             Did Not Consider It ......................................................................................... 8

            1.    The French Hill Bombing ............................................................ 9

            2.    The Wafa Idris Bombing .......................................................... 10

      B.    The Order's Conclusion that Defendants Lacked Culpability Was Error ........... 12

      C.    Failing To Recommend or Impose Trial-Related Sanctions Was Error ............... 15

      D.    Refusing To Order Any Sanction Was Error ........................................................ 17

CONCLUSION .................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agiwal v. Mid Island Mortg. Corp.*,
    555 F.3d 298 (2d Cir. 2009).........................................................................................15

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
    483 F. App'x 634 (2d Cir. 2012) .................................................................................14

*Arista Records LLC v. Usenet.com Inc.*,
    633 F. Supp. 2d 124 (S.D.N.Y. 2009)..........................................................................16

*Barney v. ConEdison*,
    No. 99-CV-0823 (DGT),
    2007 WL 952035 (E.D.N.Y. Mar. 28, 2007) ..............................................................16

*Barsoum v. NYC Hous. Auth.*,
    202 F.R.D. 396 (S.D.N.Y. 2001) ............................................................................ 15-16

*Chin v. Port Auth.*,
    685 F.3d 135 (2d Cir. 2012)..........................................................................................13

*Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir. 1979)........................................................................................18

*Cordius Trust v. Kummerfeld*,
    No. 99 Civ. 3200 (DLC),
    2008 WL 113664 (S.D.N.Y. Jan. 11, 2008) ................................................................17

*Estate of Jackson v. Suffolk Cnty.*,
    No. 12-CV-1455 (JFB),
    2014 WL 3513403 (E.D.N.Y. July 15, 2014) ...............................................................7

*FTC v. Consumer Health Benefits Ass'n*,
    10-CV-3551 (ILG),
    2011 WL 2341097 (E.D.N.Y. June 8, 2011) .................................................................7

*In re Sept. 11th Liab. Ins. Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007) ..................................................................................8

*In re WRT Energy Sec. Litig.*,
    246 F.R.D. 185 (S.D.N.Y. 2007) ................................................................................15

*Jones v. Niagara Frontier Transp. Auth.*,
    836 F.2d 731 (2d Cir.1987)...........................................................................................18

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010)........................................................................................7

*Kronisch v. United States*,
    150 F.3d 112 (2d. Cir. 1998)....................................................................................17

*Linde v. Arab Bank, PLC*,
    269 F.R.D. 186 (E.D.N.Y.),
    *motion to certify appeal denied*, 2010 WL 3926080 (E.D.N.Y. Oct. 5, 2010),
    *appeal dismissed*, 706 F.3d 92 (2d Cir. 2013) ...............................................15, 16

*Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003),
    *adhered to on reconsideration*, 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) ......14

*R.F.M.A.S., Inc. v. So*,
    271 F.R.D. 13 (S.D.N.Y.) (R&R),
    *adopted at* 271 F.R.D. 55 (S.D.N.Y. 2010) ...............................................................8

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002)....................................................................................8, 17

*S. New England Tel. Co. v. Global NAPS Inc.*,
    624 F.3d 123 (2d Cir. 2010)....................................................................................15

*Sekisui Am. Corp. v. Hart*,
    945 F. Supp. 2d 494 (S.D.N.Y. 2013).......................................................12, 13, 15

*Short v. Manhattan Apartments, Inc.*,
    286 F.R.D. 248 (S.D.N.Y. 2012) ..............................................................................13

*Slovin v. Target Corp.*,
    No. 12 CV 863 (HB),
    2013 WL 840865 (S.D.N.Y. Mar. 7, 2013) ..............................................................17

*Smolowitz v. Sherwin-Williams Co.*,
    No. 02-CV-5940 (CBA),
    2008 WL 4862981 (E.D.N.Y. Nov. 10, 2008)..........................................................16

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
    900 F.2d 522 (2d Cir. 1990).......................................................................................7

*Valentini v. Citigroup, Inc.*,
    No. 11 Civ. 1355 (JMF),
    2013 WL 4407065 (S.D.N.Y. Aug. 16, 2013) ..........................................................13

*West v. Goodyear Tire & Rubber Co.*,
    167 F.3d 776 (2d Cir. 1999).......................................................................................8

*Zubulake v. UBS Warburg LLC*,
   229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................................................8

**STATUTES**

28 U.S.C. § 636(b)(1)(A) ...........................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(a) ...............................................................................................................7

Defendants engaged in substantial discovery misconduct with regard to documents created by the PA's General Intelligence Service (the "GIS"). The misconduct resulted in defendants' failure to produce responsive documents even after many such documents were identified with specificity. The misconduct included: (1) failure to issue a litigation hold; (2) documented failure to conduct adequate searches; (3) improper redaction of responsive documents; (4) misleading descriptions of the redactions; and (5) failure to comply in a timely manner with the Court's order to produce the documents.

In a motion filed on May 15, 2014, plaintiffs documented these violations. Plaintiffs described in particular detail the evidence that missing documents exist—indeed some of that evidence appears on the face of the limited number of GIS documents defendants did produce. Plaintiffs sought (1) a narrowly-tailored preclusion order preventing defendants from attacking the reliability of the records they did produce where the underlying files had not been produced; (2) an adverse inference instruction; and (3) monetary sanctions.

In an Order dated September 30, 2014 (the "Order"), Magistrate Judge Ellis denied plaintiffs' motion. DE 605 (copy enclosed). The Order is clearly erroneous and contrary to law.

*First,* the Order finds that plaintiffs have "provided no proof to support their claim that Defendants withheld documents." Order at 7. There is no possible basis for that finding. Indeed, the Order makes no reference whatsoever to the extensive evidence set forth in plaintiffs' actual motion papers—including ███████████████████████████ ███████████████████████ Instead, the Order evaluates only the parties' pre-motion letters. This failure even to address plaintiffs' evidence, standing alone, renders the Order clearly erroneous. As this Court's review of that evidence will show, that evidence is overwhelming.

*Second,* the Order concludes that the preclusion sanctions sought by plaintiffs are equiva-

lent to a sanction of default judgment. Order at 6–7. This conclusion is contrary to law, as it grossly overstates the effect of the limited and tailored preclusion order requested by the plaintiffs.

*Third*, the Order fails to consider plaintiffs' other two proposed sanctions, including adverse inference instructions and monetary sanctions.

By failing to award sanctions, the Order rewards defendants for their culpable misconduct and prejudices plaintiffs at trial. The consequence of the Order is that defendants will be allowed to attack the reliability of documents produced from their very own files, even when they have failed to produce the underlying documents that would demonstrate that defendants' GIS records *are* reliable. In refusing to grant adverse inference instructions as to specific missing documents and facts, the Order leaves unaddressed the evidentiary imbalance created by defendants' wrongful failure to produce relevant evidence. And, in refusing to grant plaintiffs monetary sanctions, the Order denies plaintiffs even the most basic remedy available.

## BACKGROUND

### A.    Defendants' Violation of Discovery Orders

As early as October 2011, plaintiffs requested documents from defendants concerning the terrorists convicted of, or implicated in, the attacks on plaintiffs. Declaration of Kent A. Yalowitz (Apr. 23, 2014) ("Yalowitz Decl."), Exs. A.8–A.14 (discovery requests). Defendants failed to produce any documents from the files of the GIS, so plaintiffs issued a set of requests directed specifically to the GIS records. Yalowitz Decl. Exs. A.1–A.7. Again, defendants failed to produce responsive GIS records. Instead, they served a purported "privilege log." Yalowitz Decl. Ex. A.15. The log violated Local Civil Rule 26.2.

Plaintiffs sought Magistrate Judge Ellis' assistance. In a written order dated July 26, 2013, Magistrate Judge Ellis rejected defendants' claims of privilege because they "failed to jus-

tify the redactions in their privilege log" and ordered defendants to produce the documents.  DE 327 at 5 (July 26 Order).  Defendants did not object to the July 26 Order.  Instead, they violated the order by producing 202 pages of heavily redacted GIS documents—removing the very information that the Court ruled could not be withheld—and asked the Court to "modify its Order in order to permit these redactions."  Yalowitz Decl. Ex. C.1 (Letter from Hill to Ellis (Aug. 13, 2013)).

After receiving additional letter-briefing, Magistrate Judge Ellis issued a second order, dated November 4, 2013, explaining that defendants had been "unambiguously required . . . to produce the GIS documents" and that by redacting the documents and continuing to argue about those redactions, defendants did "precisely what is forbidden in this District:  rather than treating the July 26 Order as a directive, [they] regarded it as the beginning of a new conversation in which they apparently feel entitled to advance new legal theories."  DE 380 at 4 (Nov. 4 Order).  Defendants did not object to the November 4 Order.

### B.    <u>Defendants' Incomplete Production</u>

Finally, on November 6, 2013—nearly a year after the close of discovery—defendants produced a set of unredacted GIS documents.  A comparison of the unredacted documents with the redacted documents produced in August 2013 reveals that very few of defendants' redactions were of the type that defendants had represented to the court.  *See* Yalowitz Decl. Exs. A.16– A.17.  In other words, defendants *never* had a good-faith basis for asserting that the vast majority of the documents were privileged.

The GIS documents are highly relevant.  They show, for example, that █████████ █████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████[1]

Once plaintiffs had the GIS documents translated from Arabic, it was obvious that the production was woefully incomplete. Files of high-profile terrorists were missing completely. The production consisted almost entirely of ████████████████████████████ ████████████████████████████████████████████████

████ It is "extremely unlikely that such reports, created years after the events in question [were] created solely from memory. Instead, it is far more likely that the reports were prepared using underlying source documents that have not been produced by defendants." Yalowitz Decl. Ex. B, ¶ 5(b) (Decl. of Arieh Dan Spitzen (Aug. 27, 2013) ("Spitzen Decl. I")); *see also* Reply Mem., Decl. of Arieh Spitzen (June 25, 2014) ("Spitzen Decl. II"). The production did not include the types of documents typically found in GIS files, such as "handwritten notes" and "substantive reports about the subject's adult life." Spitzen Decl. ¶ 5(a); ██████████████ ████████████████████████████

Tellingly, the documents that were produced were obviously incomplete on their face. ██ ██████████████████████████████████████ ██████████████████████████████████ These ████████████ were never produced. Some of the documents produced by defendants ██████████████████ ████████████████████ Many of these were not produced either.

Plaintiffs detailed these omissions for defendants, providing them with a non-exhaustive list of missing documents. Yalowitz Decl. Ex. C.2 (Letter from Yalowitz to Hill (Dec. 20, 2013)). As discussed below, defendants failed to produce all of the documents on plaintiffs' non-exhaustive list, as well as never addressed their overall failure to conduct comprehensive

---

[1] All of plaintiffs' trial exhibits cited in this memorandum are compiled behind Tab I of the Yalowitz Decl.

searches for all responsive documents.

### C.    Plaintiffs' Letter Request for a Pre-Motion Conference

On January 15, 2013, plaintiffs requested a pre-motion conference with Magistrate Judge Ellis "to consider appropriate sanctions for defendants' violation of this Court's multiple orders requiring them to produce documents from" the GIS files.  DE 413 (Letter from Yalowitz to Ellis (Jan. 15, 2014)) (copy enclosed).  Plaintiffs' 3-page letter explained that defendants "concede that they have not even bothered to look for the documents they have twice been ordered to produce, and will not even commit to producing the missing materials," and that this failure was "egregious because defendants attempted to hide the existence of these missing documents by improperly redacting references to them from their initial production of GIS documents."  DE 413 at 2.

In response, defendants made additional productions in January 2014, each consisting only of some documents identified on plaintiffs' non-exhaustive list of missing documents.  DE 423, Ex. A (Letter from Yalowitz to Hill (Jan. 28, 2014)).  Defendants confirmed that their efforts to locate the newly-produced material consisted only of "a search for the documents on the [December 20 List]."  DE 418, Ex. A (Decl. of Gen. Khaled Abu Al-Yaman (Jan. 27, 2014)) ("Al-Yaman Decl.")) (copy enclosed).

Plaintiffs pointed out that defendants effectively admitted that they had *never* conducted an adequate search:  "There is no indication in your papers whether all regional and field offices were searched, or only some . . . . If we do not hear from you, we will understand that defendants did not search in all responsive locations."  DE 423, Ex. A at 2 (Letter from Yalowitz to Hill (Jan. 28, 2014)).  Defendants never contested that conclusion.

At the pre-motion conference, Magistrate Judge Ellis stated:  "I've already indicated that it was my belief that defendants had not complied in a timely manner with the court's order.  As

to what's going to be an appropriate remedy for that I think as I said to the extent that it involves

how Judge Daniels conducts his trial I will have to have further conversations with him."  DE

430, Hearing Tr. (Feb. 10, 2014) at 9.  Magistrate Judge Ellis continued:

> As to this issue, I'm going to review everything that's been submitted.  If I need additional information as to whether or not it's appropriate to—again, understand that some of the things that the plaintiffs want really I'd have to recommend them to Judge Daniels because they have to do with evidentiary findings and jury instructions and inclusion of defenses which obviously could have some profound dispositive results.

Tr. (Feb. 10, 2014) at 8.

### D.    The Tirawi Letter

After the conference, defendants produced yet another document (the "Tirawi Letter")

that defendants had failed to locate or produce earlier.  This letter confirms that Yasser Arafat

was personally informed that the PA had detained and interrogated two individuals who, only a

few weeks later, perpetrated a suicide bombing.  Plaintiffs notified Magistrate Judge Ellis that

this development was additional evidence that defendants had never conducted a comprehensive

search for documents.  DE 469 (Letter from Yalowitz to Ellis (Mar. 18, 2014)).  (In particular,

defendants to this day have never produced the records of the interrogation.)

### E.    Plaintiffs' Motion for Sanctions

On May 15, 2014, plaintiffs filed their motion for sanctions.  DE 507.  On June 3, 2014,

Magistrate Judge Ellis ordered a briefing schedule (DE 519), pursuant to which defendants

served their response on June 13, 2014, and plaintiffs filed a reply on June 26, 2014 (DE 563).

On September 30, 2014, the Magistrate Judge issued the Order denying the motion.  DE

605.

## ARGUMENT

### I.    STANDARD OF REVIEW

A non-dispositive order of a Magistrate Judge must be modified or set aside if "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Matters concerning discovery are usually deemed "nondispositive," and the Second Circuit long ago suggested that a Magistrate Judge's decision under Rule 37 is generally "reviewable by the district court under the 'clearly erroneous or contrary to law' standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (citations omitted). More recently, however, the standard of review has been thrown into doubt by *Kiobel v. Millson*, 592 F.3d 78, 79-80 (2d Cir. 2010), in which the Panel could not agree on the proper standard for reviewing a Rule 11 sanctions order. For that reason, some courts in the Second Circuit treat Rule 37 orders as Reports and Recommendations requiring *de novo* review. *E.g.*, *Estate of Jackson v. Suffolk Cnty.*, No. 12-CV-1455 (JFB), 2014 WL 3513403, at *3 (E.D.N.Y. July 15, 2014); *FTC v. Consumer Health Benefits Ass'n*, 10-CV-3551 (ILG), 2011 WL 2341097, at *1 n.4 (E.D.N.Y. June 8, 2011). (Indeed, in *Thomas E. Hoar* itself, the District Judge engaged in a *de novo* review. 900 F.2d at 526.)

Here, that approach is sensible, because the District Judge must maintain plenary power over the conduct of the trial, and Congress has limited the power of a Magistrate Judge to "hear and determine" only specified "*pretrial*" matters. 28 U.S.C. § 636(b)(1)(A) ("a judge may designate a magistrate judge to hear and determine any pretrial matter" with specified exceptions). How the District Judge conducts trial is not a "pretrial" matter. "Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control liti-

gation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).[2]

## II.    THE DENIAL OF SANCTIONS WAS CLEARLY ERRONEOUS

A court should award sanctions when it concludes: "(1) that the party having control

over the evidence had an obligation to timely produce it; (2) that the party that failed to timely

produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'rele-

vant' to the party's claim or defense such that a reasonable trier of fact could find it would sup-

port that claim or defense." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125

(S.D.N.Y. 2007) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107

(2d Cir. 2002)). These elements are met here.

*First*, defendants had an obligation to search for, preserve, and produce the GIS docu-

ments. Indeed, Magistrate Judge Ellis twice ordered the documents produced. DE 327, 380.

Defendants' obligation included instituting a litigation hold so that "all sources of potentially rel-

evant information are identified and placed 'on hold' . . . . " *Zubulake v. UBS Warburg LLC*,

229 F.R.D. 422, 431–32 (S.D.N.Y. 2004).

*Second*, as discussed in Part II.B below, the evidence shows that defendants had a "cul-

pable state of mind." In the Second Circuit, "negligence is sufficient to establish culpability."

*R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y.) (Dolinger, M.J. (R&R)) (citing *Residential

Funding*, 306 F.3d at 108), *adopted at* 271 F.R.D. 55 (S.D.N.Y. 2010) (Marrero, D.J.).

*Third*, the missing evidence is highly relevant, as discussed immediately below.

### A.    The Missing Evidence Is Relevant, But the Magistrate Judge Did Not Consider It

The Order failed to consider essential evidence submitted concerning the existence of

---

[2] Although plaintiffs believe a *de novo* review is appropriate, plaintiffs have applied a "clearly erroneous" standard, which is more strict yet still necessitates reversal.

documents that defendants failed to produce.  This is clear error warranting reversal.

The Order concluded that the plaintiffs' request for sanctions was "meritless" because the plaintiffs "provided no proof to support their claim that Defendants have withheld documents." Order at 7.  In fact, however, plaintiffs devoted over eleven pages of their opening memorandum to a detailed explanation of the evidence showing that defendants withheld documents and the reasons the documents were relevant.  Pl. Mem. at 11–22.  Critically, plaintiffs also submitted the evidence itself—including 59 trial exhibits and numerous pleadings—as exhibits to a declaration.  DE 530 at Ex. I.   Two examples suffice:

### 1.    The French Hill Bombing

On June 19, 2002, Sa'id Wadah Hamid Awada ("Awada") blew himself up at a bus stop in the French Hill section of Jerusalem, killing seven people and wounding 35 others, including plaintiff Shaul Mandelkorn.  ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Awada did not act alone.  Evidence implicates Naef Abu Sharkh ("Sharkh"), ███████████ ██████████████████████████████ who was killed during a military operation in 2004.  *See, e.g.*, Pls. Trial Exs. 44, 336, 339.  Defendants produced only ████████████████████████.  This production was facially incomplete.

████████████████████████████████████████

███████████████████████████ Defendants admit that ██████████████████████ ███████████████████████████████████████ but they were never located or produced.  *See* Defs' Opp. at 17.

Had defendants effectuated a litigation hold in 2004 when this litigation began, searched all relevant locations, and made a complete production of responsive GIS documents, such doc-

uments would likely have provided relevant evidence of (1) the role in the terror attack of Abu Sharkh, who was implicated for this crime in other materials; (2) the relationship among Sharkh and other senior PA officials; and (3) defendants' knowledge about this particular terror attack.

## 2.    The Wafa Idris Bombing

On January 27, 2002, Wafa Idris ("Idris") blew herself up on a crowded street in Jerusalem, killing one and injuring 150, including members of the Sokolow family.  Idris was the first female Palestinian suicide bomber and became a hero among Palestinians.  *See, e.g.*, Yalowitz Decl. Ex. G.2 (Expert Report of Itamar Marcus (Mar. 22, 2012)), at 39-45.

Idris did not act alone.  Evidence incriminates a PA Military Intelligence officer, ████ ████ Kamal Al Abed ("Al Abed") (a/k/a "Mohamad Mukhtasah" a/k/a "Abu Talal"), among others.  Israeli courts found that Al Abed asked an informant named Munzar Noor ("Noor") to recruit Idris.  *E.g.*, Pls. Trial Ex. 321.  Al Abed also provided the bomb and instructions for Idris to carry out the attack.  *Id*. ████████████████████████

████████████████████████████████████

████████████

Although Al Abed was not apprehended, the court deciding Noor's case had this to say about Al Abed's role in the terror attack:

> [Al Abed] served in the Military Intelligence of the Palestinian Authority . . . . Mohamed [Al Abed] said the he was interested in sending a woman for a suicide terrorist attack, and he raised Wafa's name . . . . Mohamed [Al Abed] asked [Noor] to persuade Wafa to carry out a terrorist attack because [Noor and Wafa] were good friends . . . ."

*Id*.  The evidence also shows that other intelligence officials in the PA's GIS also knew of Idris's identity as the bomber before medics or the press identified her.  On the day of the bombing— before any group took responsibility and before Idris's identity was released to the media—

Tawfik Tirawi, the head of the GIS, contacted Idris's family and asked them not to announce that she had been the bomber. *See* Pls. Trial Ex. 233 (PA Preventative Security letter reporting on Tirawi's request); Pls. Trial Ex. 880 (defendants' interrogatory response providing information about handwriting on Pls. Trial Ex. 233); Yalowitz Decl. Ex. G.3 (Expert Report of Israel Shrenzel (Apr. 22, 2012)), at 38 (referencing letter).  These senior GIS officials knew Idris's identity as a suicide terrorist before it became public.

The Sokolow plaintiffs requested documents related to Al Abed.  Given  and the public findings concerning his involvement in a notorious terrorist incident, one would expect to see documents reflecting the GIS's investigation into those allegations and his character and fitness to serve as an officer.  Yet defendants' initial production included only one document relating to Al Abed—

Plaintiffs pointed out that the

Defendants then produced

*Id.*  Defendants did not produce

The evidence suggests that, had defendants effectuated a litigation hold, searched all relevant locations, and made a complete production of responsive GIS documents, such documents would likely have provided relevant evidence of Al Abed's role in the Idris bombing and de-

fendants' knowledge about this particular terror attack.

* * *

Plaintiffs' motion papers similarly detail missing documents regarding all seven attacks. Pl. Mem. at 11–22 (citing and discussing more than 50 trial exhibits). Plaintiffs' reply papers further detailed the evidentiary basis for their argument, attaching a detailed sworn declaration by an expert refuting defendants' speculation that the documents were "taken" by the Israeli army, that they would be "duplicative" of documents that were produced, and that the PA's intelligence service may have taken oral reports without writing them down. *E.g.*, Reply Mem. at 2–5; Spitzen Dec. II ¶¶ 9–34. We respectfully refer the Court to those papers for a full discussion of the missing documents.

Unfortunately, the Order denying the motion fails to mention, let alone analyze, *any* of this proof. To the contrary, the only evidence mentioned in the Order's analysis is a single letter—the "Tirawi Letter" submitted to the Magistrate Judge *before* plaintiffs filed their motion for sanctions. Indeed, the Order suggests that the motion was based on this one document: "Based on Defendants['] belated production of one GIS document, Plaintiffs maintain that 'there must surely be more such documents.'" Order at 7. The Order then builds on the erroneous finding that the motion was based on the "one" GIS document by evaluating *only* that document without any mention of the extensive evidence that other documents—some specifically identified—are actually missing. *Id.* at 8 (repeating "the document" or "this document" seven times).

In failing to address the arguments and evidence in raised in plaintiffs' motion, the Order is "contrary to law and clearly erroneous." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507 (S.D.N.Y. 2013) (reversing magistrate judge order because it "failed to perform any analysis").

### B.     The Order's Conclusion that Defendants Lacked Culpability Was Error

The Order concludes erroneously that plaintiffs "have not shown that defendants willful-

ly, in bad faith, or in any otherwise culpable manner failed to respond to court-ordered discovery so as to justify the severe sanction of preclusion." Order at 7. This ruling ignores the overwhelming evidence of defendants' culpability detailed in plaintiffs' motion papers, as well as the tailored sanctions requested by the plaintiffs. *See* Pl. Mem. at 6–7.

*First*, defendants never placed a litigation hold on the GIS documents, obviously failed to identify "all sources of relevant information" with respect to the GIS documents, and did not timely search for GIS documents. Those failures are evidence of defendants' culpability and weigh in favor of sanctions. *See, e.g.*, *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 505-08 (S.D.N.Y. 2013) (failure to issue litigation hold for 15 months and to notify IT vendor of duty to preserve, along with destruction of relevant documents, grounds for finding of gross negligence); *see also Chin v. Port Auth.*, 685 F.3d 135, 162 (2d Cir. 2012) (failure to adopt "good preservation practices" is factor weighing in favor of sanctions). The Order does not discuss this fact, other than to mention it.

*Second*, defendants violated two Court orders in failing to turn over the documents. Indeed, even after they were told that their production was facially incomplete, they failed to conduct a comprehensive search. Repeated violation of the Court's orders is additional evidence of culpability and supports sanctions. *E.g.*, *Valentini v. Citigroup, Inc.*, No. 11 Civ. 1355 (JMF), 2013 WL 4407065, at *2-*3 (S.D.N.Y. Aug. 16, 2013) (sanctions warranted given defendants' repeated failures to produce discovery materials, in violation of court order); *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 254 (S.D.N.Y. 2012) ("[R]epeated refusal to turn over relevant documents—in direct violation of three separate Court orders—is enough to establish culpability."). The Order acknowledges these violations, but says they are "not currently before this Court." Order at 7. That statement is contrary to pages 5–8 of Plaintiffs' Memorandum, which

puts those violations directly in issue.

*Third*, defendants' improper redactions also indicate bad faith.  *E.g.*, *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634, 636-37 (2d Cir. 2012) (bad faith finding included improper redactions).  The unredacted documents show that defendants' redactions, as well as the asserted bases for withholding the documents in the first place—such as disclosure of names of confidential informants—were entirely improper and intended only to hide relevant evidence. Plaintiffs put the "before" and "after" documents before the Magistrate Judge (Yalowitz Dec. Exs. A.16–A.17), but the Order does not mention them.  Even before flouting the Court's order on redactions, defendants refused to produce the documents and provided a facially deficient privilege log.  Pls. Mem. at 2; Yalowitz Decl. Ex. A.15.   The Order does not mention the improper redactions.

*Fourth*, defendants' representations that plaintiffs had received all existing responsive GIS documents also reflect bad-faith.  "[R]epeated representations of full production" which turn out to be false, "constitute[] such gross negligence as to rise to intentional misconduct."  *Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 221-22 (S.D.N.Y. 2003), *adhered to on reconsideration*, 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004). The Order does not mention these misrepresentations.

*Finally*, defendants' response after plaintiffs complained of the incomplete production further indicates bad faith.  Defendants searched *only* for missing documents that plaintiffs specifically identified as missing.  But plaintiffs' ability to know which of defendants' documents were missing was extremely limited, in contrast to defendants' complete access to their own documents.  In effect, defendants tried to turn the process into a game of "blind man's bluff." The Order does not discuss this conduct.

14

Whether taken together or separately, these facts establish defendants' culpability. It was error simply to ignore them in the Order. *Sekisui Am. Corp.*, 945 F. Supp. 2d at 507.

### C.    Failing To Recommend or Impose Trial-Related Sanctions Was Error

In evaluating the appropriateness of a particular sanction, courts consider the following factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Global NAPS Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). When the actual evidence of missing documents and culpability is held up to this standard, the need for two sanctions becomes obvious.

*First*, defendants should not be permitted to challenge the reliability and accuracy of GIS records where they have failed to produce the underlying source files on which those documents are based. *See* Pl. Mem. at 9-10. To allow defendants to undermine their own records when they have not produced the complete files on which those records are based would reward defendants for their violation of the Court's orders and give defendants an unfair advantage arising out of their own misconduct. *See, e.g.*, *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 204 (E.D.N.Y.) (precluding defendant from "making any argument about its state of mind that would find proof or refutation in the withheld documents"), *motion to certify appeal denied*, 2010 WL 3926080 (E.D.N.Y. Oct. 5, 2010), *appeal dismissed*, 706 F.3d 92 (2d Cir. 2013); *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 200 (S.D.N.Y. 2007) (precluding party who had permitted evidence to be destroyed from challenging representativeness of the limited evidence offered by injured party); *Barsoum v. NYC Hous. Auth.*, 202 F.R.D. 396, 401 (S.D.N.Y. 2001) (precluding testimony about meeting where videotape of meeting was not produced because "[defendant], unlike [plaintiff] has had the benefit of having listened to a tape recording of the meeting and even of taking notes

herself of the recording").

The Order characterizes this relief as having the effect of a default judgment. Order at 7. This is incorrect. Forbidding defendants to challenge the reliability and accuracy of their own records in cases where they have failed to produce the underlying documentation is very different from entering a default judgment. The narrow preclusion order sought here *requires* a trial. It would merely put the parties on an even footing. How can plaintiffs respond to defendants' arguments about the reliability of their own GIS records when defendants wrongfully failed to produce the documents that would show reliability and accuracy?

Contrary to the Order, courts frequently employ a narrow preclusion order as a "lesser" sanction than outright dismissal or default. *See, e.g.*, *Linde*, 269 F.R.D. at 204; *Arista Records LLC v. Usenet.com Inc.*, 633 F. Supp. 2d 124, 141-42 (S.D.N.Y. 2009) (declining to strike pleading, and instead ordering preclusion of evidence concerning affirmative defense based upon destruction of evidence relevant to that defense); *Smolowitz v. Sherwin-Williams Co.*, No. 02-CV-5940 (CBA), 2008 WL 4862981, at *4-*5 (E.D.N.Y. Nov. 10, 2008) (preclusion ordered as a "lesser sanction" in response to party's failure to make appropriate expert disclosures); *Barney v. ConEdison*, No. 99-CV-0823 (DGT), 2007 WL 952035, at *7 (E.D.N.Y. Mar. 28, 2007) (declining to dismiss, and instead precluding testimony by expert based on party's failure to provide discovery); *Barsoum*, 202 F.R.D. at 401 (declining to dismiss, and instead precluding testimony about meeting where videotape of meeting was not produced).

*Second*, the jury should be permitted (but not required) to make specific inferences about what the missing files and documents would have shown. *See* Pl. Mem. at 10–24. "[T]he prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a document or documents relevant to substantiating his claim would have

been included among the destroyed files." *Kronisch v. United States*, 150 F.3d 112, 128 (2d. Cir. 1998); *see also Residential Funding Corp.*, 306 F.3d at 112-13 (remanding to determine, in part, whether adverse inference was warranted based on producing party's "purposeful sluggishness" resulting in non-production of evidence). In *Kronisch*, the Second Circuit found a "chain of circumstantial evidence . . . sufficient to suggest the reasonable possibility" that missing documents "may have contained evidence" to substantiate the plaintiff's claim was sufficient to support an adverse inference in the plaintiff's favor. 150 F.3d at 129.

The Order did not even consider an adverse inference instruction, which is commonly employed as a "lesser" sanction in cases where default judgment or preclusion of evidence is deemed to be too severe. *See Slovin v. Target Corp.*, No. 12 CV 863 (HB), 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013) (declining to strike answer or preclude use of video excerpts, but ordering adverse inference instruction as sanction for defendant's destruction of video footage); *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200 (DLC), 2008 WL 113664, at *4, *6 (S.D.N.Y. Jan. 11, 2008) (imposing adverse inference sanction where "Defendants' . . . long-term and purposeful evasion of discovery requests give rise to an inference that the evidence sought would be unfavorable to them.").

### D.    Refusing To Order Any Sanction Was Error

The Order also fails to address the plaintiffs' request for monetary sanctions, the least harsh sanction available. At the pre-motion conference, Magistrate Judge Ellis stated:

> I've already indicated that it was my belief that defendants had not complied in a timely manner with the court's order. As to what's going to be an appropriate remedy for that I think as I said to the extent that it involves how Judge Daniels conducts his trial I will have to have further conversations with him.

DE 430, Hearing Tr. (Feb. 10, 2014) at 8.

Having found that defendants failed to comply in a timely manner with court orders, the sole issue was what sanctions were appropriate, based upon the defendants' culpability. Defendants' "scorched earth" tactics warrant a monetary sanction, both as a deterrent and to compensate plaintiffs for having been forced to pursue the discovery in the face of improper privilege claims, bad faith redactions, willful violations of the Court's orders and continued efforts to reargue meritless positions—even after the Court ordered defendants to produce the documents. "'[I]n this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where they are clearly warranted.'" *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 735 (2d Cir.1987) (quoting *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)). The Order's failure to impose *any* sanction on defendants is clear error.

## CONCLUSION

This Court should impose the sanctions requested by plaintiffs: defendants should be precluded from attacking or questioning the reliability and accuracy of GIS records with respect to which they did not produce the underlying source documents; the jury should be permitted to infer that the missing documents would hurt the defendants' case; and the Court should impose a monetary penalty.

Dated: New York, New York
October 15, 2014

ARNOLD & PORTER LLP

By: _____
Kent A. Yalowitz
*KENT.YALOWITZ@APORTER.COM*
Philip W. Horton
*PHILIP.HORTON@APORTER.COM*
Sara K. Pildis
*SARA.PILDIS@APORTER.COM*

18

Ken L. Hashimoto
    *KEN.HASHIMOTO@APORTER.COM*
Carmela T. Romeo
    *CARMELA.ROMEO@APORTER.COM*
Tal R. Machnes
    *TAL.MACHNES@APORTER.COM*

399 Park Avenue
New York, New York  10022
(212) 715-1000

*Attorneys for Plaintiffs*