

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

                        Plaintiffs,

      - against -

PALESTINE LIBERATION ORGANIZATION, et al.,

                        Defendants.

**MEMORANDUM OPINION & ORDER**

**04-CV-397 (GBD) (RLE)
(UNDER SEAL)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiffs are family members, guardians, and personal representatives of the estates of United States citizens who were allegedly killed and injured in terrorist attacks in Jerusalem, Israel, between January 8, 2001, and January 29, 2004. Defendants are the Palestine Liberation Organization ("PLO"), the Palestinian Authority ("PA"), and several individuals that Plaintiffs allege were responsible for planning and carrying out the killings and injuries. Plaintiffs bring suit under the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C. §§ 2331-2339d, for international terrorism, and related torts. United States District Judge George B. Daniels referred the case to the undersigned on September 30, 2008, to supervise discovery and for general pretrial purposes. (*See* Doc. Nos. 58, 61.) Before the Court is Plaintiffs' request to impose evidentiary sanctions for Defendants' failure to produce documents from the PA's General Intelligence Service ("GIS"). For the reasons that follow, Plaintiffs' request is **DENIED**.

## II. BACKGROUND

The issue of sanctions stems from Defendants' untimely production of documents created by the GIS regarding individual terrorists. Defendants resisted producing the documents, first by asserting that they were protected by various privileges, then by arguing that they were not

relevant under Rule 26 of the Federal Rules of Civil Procedure.[1] On November 4, 2013, over Defendants' objections and assertions of privilege and lack of relevance, the Court ordered Defendants to produce materials from the files of the GIS by November 6, 2013. (*See* Doc. No. 380.) The Court received no complaints regarding compliance with the November 4 Order until mid-January 2014.

On January 15, 2014, Plaintiffs requested a pre-motion conference "to consider appropriate sanctions for [D]efendants' violation of this Court's multiple orders requiring them to produce" such materials. (Doc. No. 413.) Plaintiffs claimed that Defendants were "still withholding GIS documents" and that sanctions – in the form of evidentiary findings, preclusion of defense, and/or remedial jury instructions – were necessary. (*Id.*)

By letter dated January 27, 2014, Defendants denied all allegations that they were withholding documents, and responded that Plaintiffs' request "contained information that is cumulative of information that is already in their possession." (Doc. No. 418.) Defendants further asserted that many of the reports sought by Plaintiffs were "likely oral communications, for which no corresponding document ever existed." (*Id.*) Plaintiffs replied on February 3, 2014, stating that Defendants have failed to produce "entire categories of documents." (Doc. No. 423.)

On February 10, 2014, the Court held a telephone conference at which the Parties presented their positions. The Court indicated it would review the Parties' submissions, determine whether Defendants' behavior was sanctionable, and discuss with Judge Daniels the upcoming trial scheduling issues to assess the impact of any of the proposed sanctions on the trial.

---

[1] The history of this dispute is detailed in the Court's November 4, 2013 Memorandum Opinion & Order.

2

On March 18, 2014, while the Court was preparing to issue a decision based on the issues raised during the February 10, 2014 telephone conference, Plaintiffs wrote to advise the Court that Defendants had "now belatedly produced yet another GIS document" that "shows why tailored sanctions are necessary." (Pls.' Letter dated March 18, 2014, filed under seal, at 1.) Plaintiffs stated that the document produced was "a letter dated February 10, 2002 from GIS commander Tawfiq Tirawi to [PA leader Yasser] Arafat, regarding the arrest of Mohammed Hashaika and Nasser Shawish, who were then released only to carry out the March 21, 2002 suicide bombing in Jerusalem that badly maimed" individually named Plaintiffs. Plaintiffs' counsel asserted that the document:

> [P]roves plaintiffs' allegations that high-ranking representatives of the defendants—including Arafat himself—knew that Hashaika and Shawish intended to execute a suicide bombing but nonetheless released them. The document leaves no doubt as to Arafat's knowledge; Tirawi expressly told him that Hashaika 'wanted to perpetrate a suicide operation,' that Shawish . . . 'recruited him [and] equipped him,' and that '[t]he matter is at your Excellency's [i.e., Arafat's] discretion.' Defendants exercised that discretion by quickly releasing the two, after which they carried out the bombing.

(Id. at 2.) Plaintiffs argue that Defendants' late production of the document "makes clear" that Defendants will not comply with the Court's orders to produce GIS documents "and that there must surely be more such documents." (Id.) They suggest that an "appropriate sanction would be an instruction to the jury that it could find that Arafat and other high-ranking officials . . . were aware that Hashaika and Shawish intended to carry out a suicide attack and that they were released to allow them to do so." (Id. at 3.)

Defendants responded that "there is actually nothing nefarious about the document" in question, that it "supports the PA's claim that it was attempting to prevent attacks on Israeli civilians" and that it was "promptly produced following its recent discovery by GIS personnel." (Defs.' Letter dated March 27, 2014, filed under seal ("Defs.' Letter"), at 1.) Defendants

3

disputed Plaintiffs' interpretation of the document and provided two sworn declarations to support Defendants' position. (Defs.' Letter Exs. 1, 2.) Defendants assert that the document, rather than proving Plaintiffs' allegations, in fact "demonstrates that the GIS and other PA security forces were 'operating under orders from President Arafat to take all possible actions to prevent actions of violence by any Palestinian against Israeli civilians.'" (Defs.' Letter at 2.) Defendants state that the phrase "[t]he matter is at your Excellency's discretion" is a "common phrase routinely used . . . when closing correspondence with superiors." (*Id.*)

Defendants concede that this latest document was produced belatedly, but explain that "the document was located earlier [in March] by the director of the GIS archives (who had been involved in the prior document collection efforts) during a review of files unrelated to this litigation" and that the document was then "promptly" conveyed to defense counsel, who provided it to Plaintiffs the following day. (*Id.*) Based on this sequence of events, Defendants assert that they have "proceeded in good faith precisely as Rule 26(e) requires" and that "there is no basis for any sanction based upon the timing of the production of this document." (*Id.* at 3.)

On May 16, 2014, Plaintiffs submitted a motion for discovery sanctions, arguing that the Court should: (1) preclude Defendants from challenging the reliability of the GIS documents at trial; (2) allow the jury to make inferences about what the missing documents would have shown; and (3) impose monetary sanctions against the Defendants. (Pls.' Memorandum of Law in Support of Plaintiffs' Motion for Discovery Sanctions dated May 15, 2014, filed under seal, at 1-2.) Plaintiffs argue that such sanctions are appropriate because Defendants failed to produce certain documents from the GIS files and some of the documents produced were not accompanied by the source files on which those documents are based. (*Id.*) On June 16, 2014, Defendants submitted a response, arguing that sanctions are not warranted because "the PA has

4

not withheld or intentionally destroyed responsive GIS documents." (Defs.' The Palestinian Authority's Opposition to Plaintiffs' Motion for Discovery Sanctions dated June 13, 2014, filed under seal, at 1.) As for the underlying source files, Defendants contend that such files do not exist because the documents were based on oral reports. (*Id.* at 5.) On June 27, 2014, Plaintiffs submitted a reply, maintaining that sanctions are appropriate because Defendants failed to preserve, collect, and produce relevant evidence. (Pls.' Reply in Support of Plaintiffs' Motion for Sanctions dated June 26, 2014, filed under seal, at 1.)

### III. DISCUSSION

Plaintiffs seek sanctions against Defendants for failing to place a litigation hold on documents and for failing to fully comply with the Court's orders to produce relevant documents. Rule 26(e) requires a party who has made disclosures under Rule 26(a) to supplemental or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect" or "as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B). Rule 37(b)(2)(A) allows a court to sanction a party for "fail[ing] to obey an order to provide or permit discovery" by "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A). Rule 37(c)(1) provides that "a party [who] fails to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information . . . to supply evidence on a motion, at the hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Rule continues: "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions . . . ." *Id.*

5

While a court has "wide discretion in imposing sanctions, including severe sanctions under Rule 37(b)(2)," *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991), "[s]trong sanctions should be imposed only for serious violations of discovery orders . . . when failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Id.* at 1367. In determining whether to impose sanctions under Rule 37 generally, courts should consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of non-compliance." *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002), *aff'd*, 93 F. App'x 328 (2d Cir. 2004).

Plaintiffs have asked the Court to sanction Defendants by precluding them from challenging the accuracy and reliability of the GIS documents produced. Plaintiffs additionally seek adverse inference instructions and a monetary sanction.

## A. Sanctions Against the Defendants are Unwarranted

The preclusion sanctions and adverse inference instructions Plaintiffs seek are particularly harsh because they would have the effect of influencing the jury. Before using the "extreme" sanction of preclusion, courts "should inquire more fully into the actual difficulties which the violation causes and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988). Courts in this Circuit prefer to "resolv[e] disputes on the merits," *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("Accordingly, in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits."). Therefore, when preclusion has the effect of granting default judgment to a

6

Party, courts have generally favored less drastic alternatives. *See Dragon Yu Bag Mfg. Co. Ltd. v. Brand Sci. LLC*, 282 F.R.D. 343, 345 (S.D.N.Y. 2012) (rejecting the sanction of preclusion of testimony when the testimony was so central to the defendant's defenses and counterclaims that preclusion "would effectively amount to default judgment").

Plaintiffs have not shown that Defendants willfully, in bad faith, or in any otherwise culpable manner failed to respond to court-ordered discovery so as to justify the severe sanction of preclusion. Based on the evidence presented to the Court, Plaintiffs' request for sanctions appears meritless. It is true that Defendants were dilatory in complying with the Court's orders to produce the GIS documents, and that Defendants attempted to litigate their claims in a piecemeal fashion. Those issues, however, are not currently before the Court. Plaintiffs have provided no proof to support their claim that Defendants have withheld documents. Based on Defendants belated production of one GIS document, Plaintiffs maintain that "there must surely be more such documents," and seek "appropriate evidentiary sanctions." (Pls.' Letter at 2, 3.) To this, Defendants respond that "it simply does not follow that because one document was located and produced that 'there must surely be more.'" (Defs.' Letter at 3.) The Court agrees with Defendants.

Plaintiffs argue that the late production "makes clear" the sinister behavior of Defendants. If this be so, the proposed sanctions are unnecessary. The document has been produced. It is available for the jury. Both parties can present their case to the jury, which can make its own findings. It should be noted that Plaintiffs have also prolonged the litigation by filing additional letters and by filing a motion for sanctions after the Court directed the Parties that there would be no additional briefing on the issue.

7

The Court finds that Plaintiffs have failed to demonstrate there are missing, deliberately unproduced documents. The arguments made based on the later production are logically flawed. If Defendants have other documents that they are withholding, why produce the document in question at all? The Court is aware of many cases in which a party has been accused of producing favorable documents and withholding unfavorable ones. This is the first time a party has asserted that a document produced by the adversary clearly supports its claims. Plaintiffs do not opine why Defendants would produce this document after the discovery cut-off date, yet more than ten months prior to the start of the trial. There is no claim that the document would have surfaced were it not disclosed at this time. In short, there is dubious logic in producing it if the aim is to keep relevant documents out of the hands of Plaintiffs.

Each side claims that the document is favorable to it. The Court is confident that there is a better decisionmaker than these parties or the Court itself. Because the document has been produced, it is available if either Party wishes to introduce it into evidence. The Parties can argue to the jury what is made clear by the document.

## IV. CONCLUSION

Because Plaintiffs have not carried their burden in justifying a preclusion order or any other proposed sanction, their motion for sanctions is **DENIED**.

**SO ORDERED this 30th day of September 2014**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

8