```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3    ----------------------------------------X
                                              :
 4    SOKOLOW, et al,                         : 04-CV-397 (GBD)
                                              :
 5                    Plaintiffs,             : October 21, 2014
                                              :
 6              v.                            : 500 Pearl Street
                                              : New York, New York
 7    PALESTINE LIBERATION ORGANIZATION, et al, :
                                              :
 8                    Defendants.             :
      ----------------------------------------X
 9

10         TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY DISPUTES
                 BEFORE THE HONORABLE RONALD L. ELLIS
11                 UNITED STATES MAGISTRATE JUDGE

12    APPEARANCES:

13    For the Plaintiffs:        PHILIP HORTON,
                                 KENT YALOWITZ, ESQ.
14                               Arnold & Porter
                                 555 12ᵗʰ Street NW
15                               Washington, DC 20004

16
      For the Defendant:         LAURA FERGUSON, ESQ.
17                               BRIAN A. HILL, ESQ.
                                 Miller & Chevalier, Chtd.
18                               655 15th Street NW, #900
                                 Washington, D.C.  20005
19

20

21    Court Transcriber:         SHARI RIEMER, CET-805
                                 TypeWrite Word Processing Service
22                               211 N. Milton Road
                                 Saratoga Springs, NY 12866
23

24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

2

1      THE COURT: Good afternoon.  This is Judge Ellis.

2  Can I have your appearances beginning with the plaintiff?

3      MR. HORTON:  Yes, Your Honor.  Good morning.  This

4  is Phil Horton of Arnold & Porter and I also have with me on

5  the phone Kent Yalowitz.  Mr. Yalowitz is out of town and

6  dialing in by cell phone.  His connection may be a bit spotty

7  but he's on.

8      THE COURT: Thank you.

9      MR. HILL:  Good morning, Your Honor.  It's Brian

10  Hill and Laura Ferguson for the defendants.

11      THE COURT: This is a conference in <u>Sokolow, et al.</u>

12  <u>v. PLO, et al.</u>, 04-CV-397.  It is Tuesday, October 21st at

13  approximately twelve noon.

14      This is a conference involving discovery matters

15  although discovery has officially closed.  To the extent that

16  any issues arise as the parties prepare for trial that relate

17  to matters that began in discovery Judge Daniels has indicated

18  that those should be resolved by me.

19      Two issues have been brought up by the parties, at

20  least that I'm aware of.  One is defendant's motion for a

21  preclusion sanction based upon the plaintiff's filing on ECF

22  material that quoted matters that had been designated

23  confidential during discovery and the second issue concerns

24  plaintiff's motion to compel supplementary discovery material

25  pertaining to documents that record payments to families of

3

1    suicide terrorists.

2            So with regard to those issues, I have the -- I

3    believe I have all of the parties submissions although I

4    believe someone sent in something that we received today.

5            MR. HILL: Your Honor, this is Brian Hill on behalf

6    of the defendants.  I sent a FedEx on Friday that I understand

7    was delivered on Monday.  I hope you had received that.

8    That's the latest submission.

9            MR. HORTON: Your Honor, this is Phil Horton for the

10   plaintiffs.  We had received -- I assume this is the same

11   submission that Mr. Hill just mentioned -- around the close of

12   business on Friday.  We submitted a response to that I think

13   early afternoon yesterday.  So you should have that but you

14   may have gotten our response before you got his letter

15   depending on what time they came into your chambers.

16           THE COURT: Okay.  I have -- is your response dated

17   October 20th?

18           MR. HORTON: Yes, sir.

19           THE COURT: All right.  I have those and I -- to

20   begin with let's start with the first issue, that is

21   concerning the preclusion sanctions.  I begin by reminding the

22   parties that I have discussed the standards that I believe is

23   necessary for preclusion in the prior motion in which the

24   plaintiffs had made a request for preclusion and under those

25   circumstances I do want to make clear that I find it be an

4

extraordinary sanction that should only be used in situations where it is beyond cavil that the party is being non responsive so much so that the only possible way to deal with them is to make an order of preclusion.

As I said in that opinion in a typical situation the default is that matters be decided on the merits.  Fortunately for this particular issue I have some familiarity with the history of the parties and their disagreements about what -- what happened, what should have been designated confidential and what transgressions the plaintiffs have made over the course of my supervision.  I know the defendants say that this is the fourth time that there's been a violation of the confidentiality agreement that the parties have.

And as to the facts of this case it is -- I take it though that in their vigilance the defendants noted the transgression such that it was publicly available for approximately one hour.  Is that true or is there some dispute about that?

MR. HILL: I don't think there's any dispute about how long it was available, Your Honor.

THE COURT: Okay.  Essentially the plaintiff's position is that it was inadvertent.

MR. HORTON: That's correct, Your Honor.

MR. YALOWITZ: Correct, Your Honor.

THE COURT: In that regard, again, taking -- keeping

1    in mind that as I said preclusion is like the final resort to

2    courts when there's been a series of behaviors in defiance of

3    the court I -- it seems to me that what this really turns on

4    is whether or not the circumstances suggest that the violation

5    by the plaintiffs was willful and in bad faith and deliberate

6    and I guess the -- my disconnect here is given the way this

7    case has progressed I'm not sure how -- what the thinking is

8    as to what -- why the plaintiffs would have deliberately done

9    this and what could they have -- how could they have

10   benefitted from it.

11            MR. HILL: Your Honor, this is Brian Hill.  I can

12   make speculation if that's what Your Honor is inviting us.  I

13   don't know -- I can't imagine frankly why plaintiff's counsel

14   did this.  It's apparent from the document itself that it's

15   not labeled as filed under seal which is what the order

16   requires.  So it appears to me that there was a decision to

17   file it in the open and that they did so.  I can speculate

18   that they hoped it would be publicly disclosed.  They've

19   argued in the past that this material should be publicly

20   disclosed.  There are cases proceeding against our clients in

21   other nations, particularly Israel that these lawyers are

22   hooked in with.  Maybe they were hoping the material could be

23   useful there.

24            I'm really in the posture of having litigated this

25   with Your Honor now for three years I guess.  The original

6

1  idea was that we could produce material with the assurance

2  that it would be held confidential and not publicly disclosed

3  and we wouldn't have to fight about its relevance and under

4  those terms the plaintiffs were allowed to get the material

5  and potentially use it in this case and that benefit of the

6  bargain I've effectively lost.

7          The plaintiffs have filed by their own admission the

8  content of 177 documents.  We have no idea who may have

9  downloaded them during that one-hour period.  We know that

10 people within the public are following the case.  For example,

11 there's an article in the *New York Law Journal* this morning

12 about Your Honor's prior order on sanctions and these included

13 among other things intelligent files of our client which under

14 our client's law are state secrets and confidential and the

15 content of them was posted on the web for anyone with a PACER

16 login to download.

17          So honestly, Your Honor, I don't know what sanction

18 you could give other than to rescind the benefit of the

19 bargain and not allow the plaintiffs to use at trial the

20 material they obtained pursuant to a promise to keep it

21 confidential which has been breached.

22          THE COURT: Mr. Horton.

23          MR. HORTON: Your Honor, I'm going to let Mr.

24 Yalowitz respond.  I think there's a delay of a few seconds

25 between when he talks and you hear him because of the phone

7

1    connection but as long as he's still on he'll respond.  Ken.

2            MR. YALOWITZ: Thanks, Phil.  Thank you, Your Honor.

3    I apologize for the technical problems I'm having.

4            I don't really want to dignify Mr. Hill's

5    speculation with a lengthy rebuttal.  This was an accident.

6    It was inadvertent.  This is nonsense that I'm trying to get

7    it to the public in Israel.  It's absolutely untrue.  As a

8    matter of fact, there's a seven hour time difference.  So this

9    event transpired in the middle of the night in Israel.  So Mr.

10   Hill -- this is just another example of the defendants being

11   vexatious and harassing and trying to run up the costs for the

12   plaintiffs in order to make litigation burdensome and avoid a

13   trial.  Thank you, Your Honor.

14           THE COURT: Well, I will say that from my point of

15   view there's a lot of speculation on either side.  I

16   understand that there's a lack of trust on either side and

17   certainly with respect to any time a matter has come to my

18   attention the opponents have not gotten the benefit of a

19   doubt.

20           I think ultimately as I said there's two overarching

21   issues here.  One, that preclusion is an extraordinary

22   sanction; and two, given the concerns that the defendants

23   have, is there some lesser sanction or approach that could

24   address the possibility that the plaintiffs were negligent

25   after a history of concern about disclosures.  The other --

8

1  added to that is the question of well, if these issues -- if

2  these documents are potentially going to be used at trial

3  there is still the question that Judge Daniels would have to

4  decide concerning the probative value of any of the

5  information that's sought to be introduced.

6        I find that based upon the record before me that the

7  defendants have not made out a case that preclusion is

8  appropriate.  While I -- in the normal course writing on a

9  clean slate I might not have even had a conference under these

10 circumstances but since it does appear that the plaintiffs

11 have had more than one failure so to speak -- it's also true

12 that there's a -- there are a lot of documents in this case

13 and that the potential for missteps on either side do exist

14 and -- while I'm not going to -- I'm not going to speculate

15 about anyone's motives for bringing any motion on either side,

16 I will tell the parties that I always impose a higher standard

17 at the end of -- once discovery is complete to sort of go back

18 and try to figure out how to rectify some failure.

19        But as to the question of preclusion, I think many

20 of the things I've said with respect to the plaintiff's motion

21 apply here in terms of when a court should apply preclusion

22 and I don't think that's been made out in this case

23 notwithstanding that the offense was on ECF for approximately

24 an hour.  So as to that -- as to the preclusion sanction, that

25 is denied.

1      As to the plaintiff's motion to compel supplementary

2   discovery material, and I gather the parties do not dispute

3   the fact that discovery was produced in 2012 concerning the

4   payment and the question is whether or not any payments that

5   came after the close of discovery fit within the parameters of

6   the rule requiring supplementation of discovery.  Is that --

7   is that what the -- is that where the --

8      MR. HORTON: Yes, Your Honor, that's correct and at

9   this point I don't think there's any question either but that

10   such documents do exist.  The defendants are saying well, they

11   would be merely cumulative of the documents we produced in

12   2012 and we explained in our letters why we don't believe

13   that's so.  These could easily hold additional information.

14   So the documents appear to be there.  Everybody knows what

15   they are and where they are and I think what we're really down

16   to is a question of whether they have a duty to supplement or

17   not and I think the weight of the case law is clear on that.

18      THE COURT: When you -- again, you use the term

19   whether or not they contain new information.  Now, new is one

20   of those interesting words in English.  It can be new in the

21   sense that there is information which was not in the prior

22   disclosures or it could mean information that's of a different

23   character that that's in the prior information.  And while I

24   grant you that if you're talking about payments that have been

25   made after the close of discovery they would be new in a sense

1  that it would be information that was not -- you could have

2  information that was not in the prior disclosures.  But as to

3  the character of the information what -- because we're talking

4  about -- supplementation is basically designed that a party is

5  not prejudiced because there is new information -- there is

6  information which is relevant which materially affects how

7  they might approach the evidence in the case.

8         While the defendants characterize they're cumulative

9  I prefer to characterize it as well, is it -- is -- is there

10 any reason to believe that we're talking about something new

11 in nature because we understand that the payments have been

12 made.  We know that the payments have been made to a number of

13 different families.  What would be the additional information

14 materially for trial or for the jury that supplementation

15 would provide?

16        MR. HORTON: There are two things, Your Honor.  One

17 is that the original payments are not -- the original records

18 of payments produced in 2012 are not simply just ledger

19 figures relating to X [inaudible] were paid on X date to this

20 person but they contain certain commentary on the perpetrators

21 and advocating for them saying what a wonderful thing it was

22 they did, that's why we did it, and so since they -- since

23 that sort of information tends to show up in these records it

24 may very well be that there are additional new and culpatory

25 statements going beyond simply the record of payments

1    contained in these documents.  Obviously I can't know that

2    because I can't see them right now but since we've seen it

3    before it's reasonable to think that we will see it again.  So

4    it's clearly reasonably calculated to lead to the discovery of

5    new information beyond simply the fact of the payments

6    themselves.

7            The second is that the mere fact that payments

8    continue essentially right up to date at trial is relevant to

9    our claim for punitive damages.  While punitive damages are

10   automatic for our federal claims in which damages are trebled,

11   we have non federal claims in which they are -- the old

12   fashioned standard for punitive damages to apply of want,

13   willful malicious misconduct and we would like to be able to

14   argue to the jury that the fact that they have continued to

15   make these payments not only throughout the litigation but are

16   making them right up to the eve of trial and apparently now as

17   we are in the trial is -- could be a highly relevant fact for

18   the jury to consider in deciding whether the standard of

19   willful, want and malicious conduct has occurred here.

20           THE COURT: Okay.

21           MR. HORTON: And it seems particularly appropriate

22   since from what I hear they're not denying in their letters

23   before you today that the payments have been made.  They just

24   don't want the jury to find out that they've been made.

25           THE COURT: Well, that's -- but that's a different

1  issue from whether or not the documents are going to provide

2  any additional information of whether supplementation is

3  necessary.  In any case in which there is an allegation that

4  something was taking place, and it's not restricted to this

5  kind of a case, whether or not the practice continues is

6  something that the parties can explore.  You don't need to

7  have additional documents.

8          I mean if your question -- if your issue is whether

9  or not the defendants would be required to admit either before

10 Judge Daniels or otherwise that the practice continues because

11 it does seem to me that you can -- you can make an issue of

12 that for trial purposes but --

13         MR. HORTON: The difficulty, Your Honor, is I have

14 not the slightest doubt that when we get in front of Judge

15 Daniels if the discovery is not made their position will be

16 there is no documentary proof of on this, we refuse to agree

17 to it and they can't prove it.  So both sides will be sitting

18 there knowing that the payments have been made as we all know

19 on this call but I would be stunned if they are willing to

20 stipulate to the jury that that is in fact the case.  If

21 they're willing to enter into such a stipulation now that

22 might make it better.  We would still have the problem of

23 wanting to see if there are additional and culpatory

24 statements.

25         THE COURT: I understand that, but Mr. Hill, are you

13

1  denying that the payments have been made or continue to be

2  made?  Because you argued that it was cumulative.  That

3  suggested to me that there was no dispute as to whether or not

4  the payments continued.

5        MR. HILL: I'm not prepared to represent for each of

6  the alleged perpetrators what their current payment status is,

7  Your Honor.

8        THE COURT: Well, I understand that --

9        MR. HILL: But the [inaudible] of the policies

10 haven't changed that I'm aware of.

11       THE COURT: Okay.  So as a -- so the question is

12 whether or not the -- I under -- you understand from the

13 plaintiff's position they -- notwithstanding their position

14 here as to the potential inculpatory information they want to

15 be able to assert that the payments continue and I don't think

16 this is a question of any particular individual payment

17 continuing but that the fact this continues that individuals

18 who are likely the persons who families have been made

19 payments this practice continues.  From an evidentiary point

20 of view I think that does have some evidentiary value and the

21 mere fact that we had a discovery cutoff does not make that

22 information -- that factor relevant despite the fact that I

23 might not impose upon a party the requirement that they

24 produce documents.

25       The mere fact of continuance is a relevant inquiry

14

1  and I don't want this to be a trial issue.  So I need to have

2  some idea of what it is that you'd be representing as to the

3  payments.  Otherwise it may be that the -- just to demonstrate

4  that the fact it continues the defendants may need to have

5  documents.  Most of the district judges don't mind having

6  discovery continue up until the time of trial.  I have not

7  discussed this with Judge Daniels but my view is that unless –

8  – at this point the case has not been made out that the

9  individual documents are necessary but that the plaintiffs

10 have a right to determine whether or not a practice that was

11 in existence at the end of discovery continues.

12         MR. HILL: I don't think the plaintiffs need me to

13 prove that.  They've asserted in their letters that they have

14 evidence of that including from one of the people they

15 designated as an expert.

16         MR. HORTON: What will happen, Your Honor, is we'll

17 get to the trial and he'll argue that our proof is

18 insufficient and we'll be back in the same position we are

19 right now which is the payments appear to be continuing and we

20 won't be able to show it.

21         THE COURT: I agree with the plaintiff because I

22 don't know what the proof is and I don't know whether the

23 plaintiffs are -- what the plaintiffs are getting is informal

24 or whether or not it would meet the standards of admissibility

25 but my view is that to the extent that there was a practice

15

1  that was relevant even though discovery has ended the party

2  who is trying to demonstrate that practice has a right to

3  demonstrate and to know whether or not it continues.  And I

4  would not leave this to some unspecified and unknown

5  information which may have come to the plaintiffs which made

6  them suspicious that it does continue.  I think to the extent

7  that it was relevant that the practice existed it's relevant

8  that it continues.

9        MR. HILL: Yes, but it's not relevant in the first

10 place, Your Honor.  We objected to the relevance of these

11 requests contemporaneously with the request at the end of

12 discovery.  The plaintiffs never challenged that and these

13 document requests don't request discovery after the end of

14 discovery.

15        THE COURT: Well, let me answer that this way.  If

16 the information they have as of 2012 is not relevant and Judge

17 Daniels agrees with that then you can exclude it from the

18 trial.  If, however, he believes that it is relevant, and he

19 will make that determination -- remember, this is -- we're

20 talking about discovery, not admissibility.  If he believes

21 that it's relevant then it's also relevant whether or not it

22 continues.  So we can't fix that at the time of trial.

23        So to the extent that it's a discovery issue what

24 I'm saying to you is that plaintiffs have a right to know

25 whether or not it continues.  If you're right that it's not

1  relevant you can argue to Judge Daniels and it won't see the

2  light of trial but as to a discovery issue to the extent that

3  we have the information up until 2012 the parties will either

4  find some way to agree that the practice continues or I'll

5  leave it at the issue.

6         MR. HILL:  Well, Your Honor, in all honesty we did

7  not produce material up to 2012 for all the categories they're

8  seeking.  We produced it through the period of the attacks and

9  to the extent it was produced post attack it was because it

10 was on the same sheet of paper for the most part and we didn't

11 cut the paper in half or white out what we viewed to be

12 irrelevant post attack dates on the sorts of documents.

13        So we objected contemporaneously to post attacks

14 material like this.  The plaintiffs never sought a ruling from

15 Your Honor to overrule those objections and now they're

16 essentially asking to reopen discovery for conduct by the PA

17 that took place during 2013 or 2014.  Conduct by the PA in

18 2013 or 2014 is not going to make the PA liable for injuries

19 that occurred in 2001 to 2004 and if post attack conduct is

20 relevant and would make our client liable the plaintiffs

21 either have or had a chance to get that information during

22 discovery.  So to come now and say continuing payments are

23 relevant is not correct.  This claim that it goes to punitive

24 damages is wrong.  It doesn't show willful or wantedness and

25 punitive damages are not available for these claims anyway.

17

1   The claim that it goes to ratification is also wrong because

2   in order to be ratifying the perpetrator has to have claimed

3   to have been an agent of PA and there's no evidence that any

4   of these people made that claim.

5        So Your Honor is suggesting that we should now

6   reopen discovery for the period after fact discovery is closed

7   and we submit that's contrary to the language of the rule.

8   It's contrary to the discovery requests which didn't even seek

9   the information and it's unfair to the defendants because we

10  objected and made production subject to that objection and the

11  plaintiffs never sought to overrule that until now.

12       MR. HORTON: Well, Your Honor, Mr. Hill is now not

13  only making the arguments you told him to make to Judge

14  Daniels, what I'm hearing is his closing argument to the jury

15  as to the weight of the evidence here.  I've [inaudible].

16  This is discovery.  It seems clear that the documents exist.

17  The fact that he's resisting producing them so mindedly speaks

18  volumes about how relevant they actually are.  They should be

19  produced or at the very least he should stipulate that all the

20  payments that were being made before to all of these

21  perpetrators and their families are still being made.

22       MR. HILL: Well, that's discovery that was not sought

23  during the discovery period and the fact that I'm resisting

24  says nothing about what I view as its probative value.  It's

25  about the burden of reopening discovery two years after it's

18

1   closed.

2           THE COURT: Okay.  Well, first of all, I don't know

3   that we're talking about a burden here because it's really a

4   representation as to whether or not the policy of making

5   payments continues.

6           Secondly, as to the issue of whether or not the --

7   or how this -- how they were produced and subject to objection

8   I don't remember either side making an issue of that.  All I'm

9   saying is to the extent that they were produced either subject

10  to objection or not subject to objections, whether or not the

11  practice continues subject to objection is still -- it falls

12  into the same category.  That is I don't mind if you object to

13  it but indicate that the practice continues.  I mean it's

14  still -- I don't see how that's different in kind from

15  producing the information and objecting to it because

16  ultimately as to whether or not it's relevant for trial that

17  gets -- that gets sorted out at trial.

18          As to whether or not it's a discovery issue, that

19  seems to met hat to the extent that information was produced

20  about a practice whether or not you objected to it, whether or

21  not there had been -- the simple question of whether or not

22  the practice continues is not -- is not an opening of

23  discovery.  It is just a -- it's just -- it's just indicating

24  that the status at the time of the production has not changed.

25  I mean sometimes that's relevant and sometimes it's not.

1          But as to the arguments that either side are making

2   concerning what should happen for the jury, I don't know if

3   any of this will ever see the jury.  That's not what discovery

4   is about.

5          So I repeat, to the extent that the information was

6   produced I find that the continuation of the practice, and

7   that does not mean that it's a detailed description of every

8   payment that was made but only a statement as to the

9   continuation of the policy of the information that's already

10  been produced whether or not it was part of a page or not part

11  of a page, I know that payments had come up in the prior

12  discovery discussions we've had.  So I'm not exactly sure what

13  parsing the defendants did in terms of reserving the expense

14  of the disclosures.

15         But, Mr. Hill --

16         MR. HILL: Yes, Your Honor.

17         THE COURT: -- I don't think this is the -- this

18  falls into the category of supplementation and that I agree

19  with you on.  But I do believe, as I said, to the extent that

20  information was produced about a practice, I mean if -- if,

21  for example, the police had a practice of stopping and

22  frisking people and it was true as of a certain date I think

23  at trial it would be relevant whether or not the practice

24  continued.  You could argue whether or not the information was

25  relevant to begin with but to the extent that it was relevant

1    what the practice were it's relevant from a discovery point of

2    view whether or not the practice continues.  I think you're

3    perfectly free to argue before Judge Daniels that even the

4    information that you've produced already should not be

5    admitted at trial but to the extent that that information he

6    finds relevant I'm sure he'll find that the continuation of

7    the practice is also relevant.

8          MR. HILL: Your Honor, I guess my only point is that

9    if the plaintiffs want to take discovery on this particular

10    practice and whether it would continue post trial, the time to

11    propound that discovery was during the fact discovery period

12    and had they not done so Your Honor is in essence allowing

13    them to reopen discovery on this albeit narrow issue of the

14    continuation of past policy or practice.

15          And Your Honor's example about stopping and

16    frisking, I don't know what case Your Honor has in mind, but I

17    presume it's not a tort case where the injury occurred a

18    decade ago.  So we're talking about material which couldn't

19    possibly make the defendants liable but if post attack

20    materials could make the defendants liable the plaintiffs

21    already could have got that during discovery and that's the

22    basis for my objection.  I agree with you that no

23    supplementation is required and what Your Honor appears to be

24    complimenting here -- or contemplating here is a relief that

25    plaintiffs haven't even asked for which is reopening discovery

1  on this question of policy and I've already informed the court

2  and I presume the call is being recorded and there will be a

3  transcript about my understanding of the lack of any change in

4  the policy.  So I'm not sure what more the plaintiffs can

5  expect under Your Honor's view of the circumstances here.

6        MR. HORTON: Well, Your Honor, we've heard -- I think

7  I've heard Mr. Hill to say that he personally does not

8  understand that there is any change in the policy but he

9  doesn't know if that is true as with respect -- as an actual

10 fact with respect to whether payments are still being made to

11 the perpetrators and the family of the perpetrators in this

12 case, and I don't want to get in front of Judge Daniels and

13 have him say oh, yes, the policy hasn't changed but we

14 actually stopped making payments to the actual perpetrators in

15 this case.  I want to know now whether that's -- whether

16 they're actually making those payments or not.  If Mr. Hill

17 doesn't know that today I can understand that but he needs to

18 find out and add that to his representations that in fact the

19 payments are still being made.

20        MR. HILL: Your Honor, if Mr. Horton's predecessor

21 had wanted to propound that discovery during fact discovery

22 that would have been the time to do it.  We're essentially now

23 contemplating new discovery after the close of discovery about

24 this policy.  There's no discovery that I'm aware of on this

25 particular issue of these policies or their continuing nature.

1          THE COURT: Well, how would someone frame discovery

2   about a continuing practice?

3          MR. HORTON:  That's what I was about to say, Your

4   Honor.  I don't understand -- I can only imagine Mr. Hill's

5   response if we had sent in discovery request before 2013 which

6   says please detail the payments made during 2013 and 2014,

7   periods which haven't arrived yet on the calendar.

8          MR. HILL: Well, the way they would have done it

9   would be propound discovery that said through the date of

10  trial continue to tell us what these things are, and there was

11  no discovery [inaudible] policies at all.

12         MR. YALOWITZ: Can I [inaudible], Your Honor?

13         MR. HILL: I mean that's the problem [inaudible]

14  reopening discovery.

15         MR. YALOWITZ: I think Mr. Hill is misrepresenting

16  the record here.  We asked for the entire, the complete

17  personnel files on these perpetrators and now the personnel

18  file includes [inaudible] paying them through the date of

19  trial.  We asked for this information.  For him to sit there

20  on the phone and [inaudible] about we asked for it, it's

21  really a misrepresentation and I'm sorry for the interruption

22  but I think that it's very important when Mr. Hill makes a

23  representation about the facts of record that he checks

24  because he often makes misrepresentations.

25         MR. HORTON:  Your Honor, actually something similar.

23

1  If you will look at the letter we sent you yesterday we

2  actually quote back the language from our request which makes

3  clear that we sought all of these documents.

4         MR. HILL: [Inaudible] objection, Your Honor.

5         THE COURT: Counsel, counsel --

6         MR. HILL: It's unlimited in time and that objection

7  was never sought to be overruled.

8         THE COURT: Counsel, let -- again, because I have the

9  benefit of having the last word I think I made myself clear.

10  It seems to me that consistent with the federal rules I have

11  the ability and the authority to say that notwithstanding what

12  the parties present resolving a dispute consistent with Rule 1

13  could involve the least intrusive and expensive and use of

14  time in terms -- to establish what it is that the parties have

15  raised as an issue.

16       It seems to me that what the plaintiffs have

17  essentially raised as an issue is -- putting aside for the

18  moment that they assert that maybe there might be some new

19  information but what they've essentially asserted is that they

20  believe that the practice even after the incidents that have

21  been -- that have been set forth as evidence of all the

22  violence and the terror that they allege payments after that

23  are relevant.  They have alleged that.  They've asked for it.

24  They've gotten some information on it.

25       To the extent that they have gotten that information

24

1 and to the extent that Judge Daniels decides that it's

2 relevant then the continuation of the practice also has some

3 relevance.  He may -- the judge may decide that payments after

4 any bombing is irrelevant in which case all this will fall

5 out.  He may decide that both payments up to the time of

6 discovery and up to the time of trial are relevant and non

7 cumulative.  He may decide that -- to cut it off at a

8 particular point.  I don't know.

9        But to the extent -- my holding is to the extent

10 that the information has been provided concerning payments

11 after the fact, however you want to characterize the people

12 who are getting the payment, however you want to characterize

13 the family members that -- to the extent that that's been

14 done, whether or not the practice continues is something that

15 I think you should be prepared not only to respond to now as

16 it continues but I think Judge Daniels would be interested as

17 to whether this matter continues even as of the date of trial.

18        So as far as the plaintiff's request for a motion to

19 compel I don't see a basis for compelling a detailed

20 documentation because I don't think this falls into the

21 category of new as contemplated by the rule but I do think

22 that the issue raised by the plaintiffs as to the continuation

23 of the payments is relevant and arguably falls within the

24 parameters of supplementation.

25        So I understand the representations that Mr. Hill

25

1  has made but I think something more than just Mr. Hill's

2  belief would be sufficient to satisfy the court.

3          So that's where I'm leaving it.  Mr. Hill, I think

4  it's always -- as always the parties are encouraged to see if

5  they can work out something that does not involve the court

6  but if you disagree as to what's a relevant -- what's an

7  appropriate solution to the question of continuation you can

8  each submit to me what your view of what would be an

9  appropriate stipulation and I will decide which one is

10 sufficient and adequate to address the question of the

11 continuation of the policy of payments.

12         If you're not able to resolve that among yourselves

13 after hearing what I've said you may bring it up to me but I

14 expect that I will hear -- I will get your different views on

15 this no later than Friday.

16         MR. YALOWITZ: Your Honor --

17         THE COURT: Yes.  Mr. Yalowitz?

18         MR. YALOWITZ: Yes.  I don't think -- thank you, I'm

19 sorry.

20         THE COURT:  All I had was "Your Honor."  I thought

21 you were about to say something.

22         MR. YALOWITZ: No, no.  Just I got the ruling that we

23 asked for so we're appreciative of the court's assistance.

24         THE COURT: Okay.  Again, as I said, this is just --

25 to me this is a simple question of whether or not a policy

26

1    continues which had to do with payments that were made with

2    documents that were produced concerning payments that were

3    made after the incident that are at issue.  You're certainly

4    at some point you're free to argue this before Judge Daniels

5    but what Judge Daniels doesn't want is for this to be a

6    discovery dispute and that is so I'm resolving the discovery

7    dispute by ruling that the continuation is relevant and should

8    be indicated.

9           Knowing the history you might disagree on what would

10   be an appropriate formulation but if you disagree you can each

11   submit a proposed -- if you can't agree on a stipulation you

12   can do a proposed order to me and I will take it upon myself

13   to direct the parties -- direct the defendants to do what I

14   believe is necessary to comply with the rules.

15          MR. HORTON: Your Honor, this is Phil Horton.  With

16   some trepidation I raise just one wrinkle which is while most

17   of what we're looking for are payments the other issue is

18   whether the perpetrators had received further promotions

19   during 2013 and 2014 because prior to that time perpetrators

20   who are serving lengthy sentences for these acts have received

21   promotions from say captain to major while they've been

22   imprisoned for these acts.  So we want to know whether that is

23   continuing as well.

24          MR. HILL: Your Honor, I just call your attention to

25   the specific document request which says all documents

27

1  concerning the rank or ranks held by Salai between January 1,

2  2000 and today, and today as of the date of that document was

3  November 21, 2012.  Rank was specifically limited in the

4  document request to the date of the request.

5      MR. YALOWITZ: Your Honor, personnel files includes

6  his promotions.  So that's why you issued multiple requests to

7  cover the same ground from different angles so that the party

8  producing the information [inaudible] play games like this.

9      MR. HILL: It's not playing a game.  It's objecting

10  and it's the language of the request that plaintiffs chose.

11      THE COURT: Well --

12      MR. HORTON: Your Honor, we will submit a proposal to

13  the defendants and if we can't agree on it then we will submit

14  it to you.

15      THE COURT: Okay.  That's the approach to take

16  because we could go round and round on this but ultimately

17  there's going to be the distinction -- I will make the

18  distinction between what is supplementation, what is

19  cumulative and what is a fair statement of what happened to

20  the policy from the time of discovery to the time of trial.

21      So hopefully -- I always -- I'm always optimistic

22  that the parties will do their best efforts to agree because

23  you can't be sure whether or not your position will be

24  approved by the court.  So if you have a compromise it always

25  seems to me to be the better course for parties at least do

28

1    what you can live with and move on.

2         We'll be adjourned.  If I hear -- if you submit

3    anything on Friday or if you have any questions call my law

4    clerk.

5         MR. HORTON: Thank you very much, Your Honor.

6         MR. HILL: Thank you, Your Honor.

7         THE COURT: We're adjourned.

8                       * * * * *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

29

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                        _____

6                                Shari Riemer, CET-805

7   Dated:   October 22, 2014

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25