UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

    *Plaintiffs,*

    *vs.*

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

    *Defendants.*

No. 04 Civ. 00397 (GBD) (RLE)

---

**REPLY MEMORANDUM OF LAW ON BEHALF OF
PRESS APPLICATIONS IN SUPPORT OF MOTION TO
INTERVENE AND TO UNSEAL JUDICIAL DOCUMENTS**

---

    Ronald D. Coleman (RC 3875)
    Rosalie Valentino (RV 1232)
    GOETZ FITZPATRICK LLP
    One Penn Plaza – Suite 3100
    New York, New York 10119
    (212) 695-8100
    rcoleman@goetzfitz.com
    *Attorneys for Intervenors*
    *Sharyl Attkisson, Edwin Black and Steven Emerson*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ……………………………………… 1

**ARGUMENT** ……………………………………… 1

I.   **DEFENDANTS FAIL TO DEMONSTRATE A LEGALLY VALID REASON WHY THE COURT SHOULD NOT PERMIT THE PRESS APPLICANTS TO INTERVENE.** ……………………………………… 1

II.   **DEFENDANTS FAILED TO DEMONSTRATE A NEED TO MAINTAIN THE CONFIDENTIALITY OF THE SEALED JUDICIAL DOCUMENTS UNDER THE APPLICABLE LEGAL STANDARD.** ……………………………………… 4

A.   All Documents Referred to in the Parties' Respective Summary Judgment Submissions Constitute Judicial Documents as a Matter of Law. ……………………………………… 5

B.   Defendants' Proffered Reasons for Shrouding the Judicial Documents In Secrecy Are Meritless. ……………………………………… 6

(1)   The Law Enforcement Privilege Does Not Bar Disclosure of the Judicial Documents. ……………………………………… 7

(2)   The Purported Palestinian Blocking Statute is Not a Bar to Disclosure of Judicial Documents. ……………………………………………… 8

(3)   Defendants' Purported Concerns Regarding Confidential Personal Information Are Imagined. ……………………………………… 9

**CONCLUSION** ……………………………………… 10

**PRELIMINARY STATEMENT**

Defendants, in responding to the motion of intervenors Press Applicant's, had one job: To overcome the virtually irrebuttable presumption against the extraordinary relief this Court would, when presented with the issue, need to grant them to justify keeping documents and motion papers in this case sealed. The way to do that job was to make a particularized showing of **need** under the crystal-clear legal standard.

Instead, mindful of the virtually insurmountable legal burden they face, especially in this Circuit, defendants chose to attack the intervenors. These scurrilous and factually inaccurate attacks on the Press Intervenors are gratuitous, however, for the identity, "qualifications" or motivations of these intervenors are irrelevant to the Court's consideration of this application, which is premised on the public's right to know, not that of any particular intervenor. Because defendants have not shown any legal justification for continuing or even delaying the state of secrecy over what are manifestly public documents, the Press Applicants' motion to intervene and for disclosure of previously-sealed judicial documents and information should be granted.

**ARGUMENT**

**I.   DEFENDANTS FAIL TO DEMONSTRATE A LEGALLY VALID REASON WHY THE COURT SHOULD NOT PERMIT THE PRESS APPLICANTS TO INTERVENE.**

Since the time intervenors filed this motion, the Court has denied defendants' summary judgment motion and issued a detailed opinion supporting its decision. This development both underlines the legal urgency of the Press Applicants' motion and clarifies intervenors' entitlement to prompt relief. As the Second Circuit noted in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), a court may not tarry in response to a valid motion to disclose judicial documents after a dispositive motion relying on the sealed materials has been made. *Id*. at 118, *quoting Nebraska Press Ass'n v. Stuart,* 423 U.S. 1327, 1329 ( 1975)

(Blackmun, *J.,* in chambers) (where state supreme court has not taken timely action to address prior restraint on media raising First Amendment issues "delay itself is a final decision").

In opposing the Press Applicants' motion, however, defendants did not deign to wrestle with the legal and constitutional issues before the Court.  They declined to identify, even in veiled terms, a single datum in a single document that could meet the legal standard justifying the blanket sealing order to which they insist they are entitled.  Instead, defendants offered up nothing but personal attacks on the Press Intervenors' credentials and invective toward the plaintiffs.  Defendants accuse the latter of pressing a "global, political and moral agenda of demonizing and delegitimizing the Palestinian government," all of which, evidently, defendants maintain would be the result of providing the public the access to which it is entitled by law including, *inter alia*, submissions relied upon by this Court in rendering its summary judgment ruling.  But defendants do not, and cannot, explain why this Court should protect any person or institution amenable to being demonized or delegitimized by the mere disclosure of plain facts about his or its activities, especially if that party describes itself as a "government."

Such protestations only reinforce the First Amendment and common law concerns that **mandate** disclosure here.  Despite defendants' inflammatory rhetoric, in deciding this motion the Court need not venture into a political minefield.  It is not charged with making foreign policy or choosing sides in matters of war and peace.  The merits of the underlying action and of the parties litigating it are of no moment with respect to the legal question of whether this Court should retain a seal over the judicial documents that are the subject of this application, because the treatment of judicial documents is, under the law, the same whether the parties seeking to protect them from public disclosure merely imagine they are being demonized, are correct in so assessing their reputations or if in fact they are actually demonic.

Either way, the question is resolved by reference to neutral legal standards that apply equally to all parties before the Court. As the Second Circuit has noted, these considerations also render the motivations or other characteristics of parties seeking disclosure, such as Intervenors here, "generally to be irrelevant to defining the weight accorded the presumption of access. . . . journalists may seek access to judicial documents for reasons unrelated to the monitoring of Article III functions." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). In other words, the public interest is all the "motive" needed here, and it is readily manifest in this case.

Similarly immaterial is any presumptuous attempt to reckon if a given intervenor "qualifies" as a "legitimate" reporter – a concept fully obnoxious to the concept of a free press but, again, one that has nothing to do with the applicable law. It is not intervenors but the **public** whose rights are compromised with every passing day of court-ordered confidentiality over the judicial documents here. "It is this **public right** of access that gives third party press intervenors standing to intervene on appeal to seek review of sealing orders of the district courts." *Rosenfeld v. Montgomery Cnty. Pub. Sch.*, 25 F. App'x 123, 131-32 (4th Cir. 2001) (emphasis added). *See also*, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (press representative have standing "notwithstanding the fact that 'they assert rights that may belong to a broad portion of the public at large'"). In fact, the role of an intervenor as proxy for the public interest is particularly appropriate where, as here, the parties have voluntarily entered into a protective order for their own reasons. *See*, *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 158 (S.D.N.Y. 2003) (intervenor had standing because its "interest is not represented by the other parties, all of whom seek to maintain the confidentiality of the record"). Thus while intervenors concede no part of the calumny directed at them, nor the moral standing of defendants to lecture

3

anyone about journalistic standards, these are, ultimately, of no legal consequence and will not be addressed further.

Rather, as intervenors set out in their moving papers and as this Court has repeatedly acknowledged, the Press Applicants return merely to the axiom that proceedings in this Court are not conducted in secret. And it is settled law in this Circuit that papers submitted in support of summary judgment motions are judicial documents entitled to the strongest presumption of immediate public access under the First Amendment and the common law. *Lugosch*, 435 F.3d at 120-121. Neither the identities of the parties, the worthiness of their causes, or their views concerning the careers of the respective intervenors have any bearing on the legal standards that govern this motion. As shown below, defendants – who are burdened with overcoming the presumption favoring disclosure – have failed completely to meet that burden.

## II. DEFENDANTS FAILED TO DEMONSTRATE A NEED TO MAINTAIN THE CONFIDENTIALITY OF THE SEALED JUDICIAL DOCUMENTS UNDER THE APPLICABLE LEGAL STANDARD.

Defendants assert that there are "less [*sic*] than two dozen" documents properly characterized as judicial documents in the record. Def. Br. at 10. Even if this statement could provide a ground for denying the Press Applicants' motion, it is inaccurate. Defendants can only make such a claim by ignoring the hundreds of documents cited in the parties' statements of material undisputed fact pursuant to Local Rule 56.1 and which are, as of now, subject to a protective order. To the extent, however, that defendants refer merely to the small quantum of arguably "legitimately confidential" information entitled to protection out of the vast quantity of judicial documents now improperly under seal, the Press Applicants submit that the trivial amount of legitimately confidential information contained in these materials can be redacted with relatively little inconvenience. In any event, even if the tasks of redacting or collating the

material to be disclosed were arduous, there is no "inconvenience" exception to the clear law in this Circuit requiring prompt disclosure.

### A. All Documents Referred to in the Parties' Respective Summary Judgment Submissions Constitute Judicial Documents as a Matter of Law.

Defendants' 56.1 statement spanned 565 paragraphs, *see* Docket Entry 527; plaintiffs proffered extensive evidence in their own right to refute it. Defendants nonetheless assert that there are "relatively few documents that arguably [can] be characterized as judicial documents," Def. Opp. at 9. It is remarkable to observe such a lack of candor before the Court by parties seeking the extraordinary helping of judicial grace as would be required to overcome the black-letter rule of *Lugosch*. On this record, in any event, there is no occasion to extend it.

Intervenors have no way of knowing, of course, how extensively defendants have so far managed to exclude from public scrutiny documents and other information, such as, for example, trial exhibits, that are directly relevant to the issues, claims and defenses briefed during summary judgment. But this they do know: "As a matter of law . . . contested documents – by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment – are unquestionably judicial documents under the common law." *Lugosch*, *supra*, 435 F.3d at 123. *See also*, *In re Parlamat Secs. Litig.*, 258 F.R.D. 236, 247-248 (S.D.N.Y. 2009) (common law right of access applies to "documents cited in parties' 56.1 Statements."); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 2009 WL 1138116 (S.D.N.Y. Apr. 27, 2009) (all documents submitted at summary judgment, including 56.1 statement deemed judicial documents subject to the presumption of access); *United States v. Martoma*, 2014 WL 164181, at *5-7 (S.D.N.Y. Jan. 9, 2014) (motions *in limine* judicial documents). Thus there is no question but that as a matter of law each and every document cited

5

in the parties' respective Rule 56.1 statements, and certainly all evidence relied on by the Court relied upon in deciding the summary judgment motion, must be unsealed.

Defendants nonetheless argue that whether material filed with the Court in connection with a summary judgment constitutes a judicial document turns on the extent to which it is explicitly or even implicitly relied on in the Court's ultimate ruling on the summary judgment motion. Such a vague and broad exception to the general rule mandating timely disclosure would quickly digest it whole, and was flatly rejected the Second Circuit in *Lugosch*, 435 F.3d at 121 ("Defendants read the above reference as standing for the proposition that until a district court knows the disposition of the underlying motion, any attempt at calling something a judicial document is premature. This reading cannot stand."). Neither the outcome of the motion or the framing of the opinion affect the question. These materials are judicial documents because they constitute the foundation of a judicial ruling. Indeed, by virtue of the Court's discussion and analysis of them, they are essentially no longer confidential anyway, even if the underlying materials remain sealed at the moment.[1] *Id.*

The law is clear that the judicial documents in this case must inevitably be made public, and defendants have given no reason why the Court should delay in doing so. Nor, it is respectfully submitted, is there any basis in this record on which the Court might rely in so delaying.

---

[1] The Court's decision on summary judgment cites and discusses, as sources of material disputed facts such that summary judgment could not be granted – i.e., facts on which a reasonable a jury could base a verdict for plaintiffs – in materials referred to in the following paragraphs from plaintiffs' Rule 56.1 statement, which are nonetheless still redacted and therefore not publicly available: Pl. 56.1 paragraphs 81, 82, 115, 120, 145, 157, 146, 152, 164, 165, 170, 172, 175, 165, 180, 181, 182, 187, 190, 199, 202, 204, 215, 290, 294, 304, 305, 309, 317, 320, 321, 333, 337, 338, 339, 340. Under *Lugosch*, the materials referred to in these paragraphs of the Rule 56.1 Statement, as well as that document itself, should be made public immediately.

### B. Defendants' Proffered Reasons for Shrouding the Judicial Documents In Secrecy Are Meritless.

Because the "more stringent First Amendment framework applies" to the summary judgment documents submitted by the parties, "continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124; see also *Macromavens, LLC v. Deutsche Bank Secs., Inc.*, 2011 WL 1796138, at *2 (S.D.N.Y. Apr. 27, 2011) (rejecting attempt to seal documents because "Plaintiff [did] not make a particularized showing of the injury that public disclosure of this information would cause."). The Court not having made any such findings until now, defendants were, by virtue on this motion, charged with the task of providing some basis for such findings, even if, *arguendo*, they were amenable to being made retroactively. Again, however, regardless of the sequence of events, defendants have completely failed to make the required showing or so much as suggested a means by which the Court might narrowly tailor a sealing order going forward. Absent the same, under the law prompt disclosure must proceed.

### (1) The Law Enforcement Privilege Does Not Bar Disclosure of the Judicial Documents.

Defendants have provided no factual basis either for their assertion of the so-called "law enforcement privilege" to bar disclosure here. A party asserting the law enforcement privilege bears the burden of demonstrating "that the documents contain information that the law enforcement privilege is intended to protect," and must establish that the privilege applies to the specific documents at issue. *In re the City of New York*, 607 F.3d 923, 948 (2d Cir. 2010). That party must then establish that **each** document contains information that, if disclosed, would (i) disclose law enforcement techniques and procedures; (ii) undermine the confidentiality of sources; (iii) endanger witness and law enforcement personnel; (iii) undermine the privacy of

7

individuals involved in an investigation; or (iv) seriously impair the ability of a law enforcement agency to conduct investigations. *Id.*

No showing of the sort has been made by defendants. They make no effort to meet their burden of describing the nature of the "law enforcement information" they claim is contained in the documents or to put any meaning, sufficient to rebut the presumption against them, in their claims that "investigative methods" that would be revealed by disclosure. While defendants proffer a months-old declaration from a Palestinian intelligence service official, Majed Faraj, the Faraj declaration answers none of these questions. It only states broadly that disclosure of **any** information in a GIS document would cause unspecified threats to "security and safety" and "external dangers." But even if the "security and safety" claims by Faraj were, considering the allegations in this litigation, legally legitimate ones, such "[v]ague and conclusory statements … without any particularized facts," are insufficient to rebut the presumption favoring disclosure, for "the invocation of the privilege requires more." *Kitevski v. City of New York*, 2006 WL 680527 (S.D.N.Y. March 16, 2006).

The ruling in *Kitevski* involved the court-ordered disclosure of New York City police records, which this Court found were not privileged. Similarly, in *Floyd v. City of New York*, 739 F. Supp. 2d 376, 379, 384-86 (S.D.N.Y. 2010), this Court wrote, regarding a similar law-enforcement invocation of privilege, "The law enforcement privilege is not an instrument by which law enforcement agencies may shield themselves from public scrutiny. Therefore, courts must vigilantly review an assertion of the privilege . . ." And in *Zhao v. City of New York*, 07 Civ. 3636 (LAK)(MHD, 2007 WL 4358470, at *4-*6 (S.D.N.Y. Dec. 5, 2007), the Court refused to apply the law enforcement privilege because the City of New York, which was asserting it on behalf of its police department, failed "to document with any specificity the factual basis for their

invocation of the law – enforcement privilege, including particularly the nature and extent of the harms that would result from required production." The Faraj declaration is similarly deficient.

Finally, it should be noted that the above cases, which demonstrate the narrow bounds of the law enforcement privilege, all involved the New York City Police Department. The extent to which the PA's claimed law enforcement organs might be entitled to the presumptions of legality and legitimacy afforded the NYPD when the latter asserts the law enforcement privilege is an intriguing question. But it need not be answered, for the simple reason that defendants' submission completely fails to provide the Court with a factual basis for the required "specific, on-the-record findings that sealing is necessary" or a way to construct a "narrowly tailored" seal order under any circumstances. *See*, *Lugosch*, 435 F.3d at 124. For this reason, the Court should reject defendants' privilege argument entirely.

### (2) The Purported Palestinian Blocking Statute is Not a Bar to Disclosure of Judicial Documents.

Defendants assert that documents obtained from the Palestinian Authority's General Intelligence Service (GIS) should be kept secret out of deference to a supposed Palestinian Authority "blocking statute." But in cases under the Anti-Terrorism Act, this Court has repeatedly refused to withhold disclosure of presumptively public information based on foreign non-disclosure statutes. *See,* e.g., *Wultz v. Bank of China*, 942 F. Supp. 2d 452, 466 -68 (S.D.N.Y. 2013); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 443 -47 (E.D.N.Y. 2008). Moreover, even by its own terms, the Palestinian blocking statute does not forbid the Court from unsealing documents. It instead prohibits individuals under its jurisdiction from disseminating documents to third parties. Defendants, however, have already produced the documents in discovery. Nor is the supposed risk of "penalties" for such disclosure asserted by the defendants

9

a plausible basis for non-disclosure, considering that the entity empowered to impose such penalties is none other than the Palestinian Authority itself.

### (3) Defendants' Purported Concerns Regarding Confidential Personal Information Are Imagined.

Defendants suggest that disclosure of documents filed in this case will disclose birth years, government issued ID numbers and bank account information, though they do so without making any effort to identify such information. Def. Opp. at 12-13. Defendants concede that the confidentiality of bank account numbers and information concerning an individual's mental health can be protected with redactions consistent with Rule 5 of the Federal Rules of Civil Procedure, but it is incumbent upon defendants to propose them. Defendants' failure to propose such redactions, however, is not a ground for sealing these documents, nor innumerable other judicial documents in this matter, in violation of the First Amendment and the common law right of public access.

### CONCLUSION

For the foregoing reasons, the Court should grant the applications by the proposed intervenors to intervene and to unseal judicial documents immediately.

GOETZ FITZPATRICK LLP

By: _/s/ Ronald D. Coleman_
RONALD D. COLEMAN (RC 3875)

Rosalie Valentino (RV 1232)
One Penn Plaza – Suite 3100
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
*Attorneys for Intervenors*
*Sharyl Attkisson, Edwin Black and Steven Emerson*

Dated:  November 24, 2014

10