1    ebk0soka                          Argument

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    MARK I. SOKOLOW, et al,

5                    Plaintiff,

6           v.                              04 CV 00397

7    PALESTINE LIBERATION
     ORGANIZATION, et al,
8
                    Defendant.
9
     ------------------------------x
10                                          New York, N.Y.
                                            November 20, 2014
11                                          11:30 A.M.

12   Before:

13                   HON. GEORGE B. DANIELS,

14                                          District Judge

15                       APPEARANCES

16   ARNOLD & PORTER, LLP
          Attorneys for Plaintiff
17   BY:  KENT A. YALOWITZ
          PHILIP W. HORTON
18        KEN HASHIMOTO
          LUCY MCMILLAN
19        SARA PILDIS
          CARMELA ROMEO
20        Tal Machnes

21   MILLER & CHEVALIER, CHARTERED
          Attorneys for Defendant
22   BY:  LAURA G. FERGUSON
          BRIAN A. HILL
23        MARK JOHN ROCHON
          MICHAEL SATIN

24

25

1          THE DEPUTY CLERK:  Be seated.  I think the court

2     reporter has everyone's appearances, and I have them in front

3     of me, we need not go through that.

4          (Case called)

5          THE COURT:  Okay.  All right.  First of all, I have

6     rendered a decision on the summary judgment motions.  You

7     should have that.  If you don't, then let the Court know.

8          I intend to keep us on schedule.  We are going to

9     trial in January.  January 12 is our trial date.  I'm working

10    with Jury, in terms of how we're going to coordinate jury

11    selection.

12         There are a number of issues that they noticed as

13    issues that are outstanding and need be resolved between now

14    and then.  And I intend to resolve them as early as possible.

15         Today, I'm going to give you some indication of what

16    my position is, and I'll be issuing decisions or orders with

17    regard to some other issues.  And then we can discuss my

18    position and the scheduling for deciding some other issues.

19         But, now that summary judgment motions are put aside,

20    let me first just go through some other issues.

21         I am going to issue an order overruling plaintiff's

22    objections to Judge Ellis' denial of the motion for sanctions.

23         And I am denying the request that this Court impose

24    evidentiary sanctions for defendant's failure to timely produce

25    documents from the PA General Intelligence Service.

1          I have reviewed the decision by Magistrate Judge

2   Ellis, and the circumstances that have been indicated that were

3   relevant to that motion.  I agree with Judge Ellis, that the

4   determination of the circumstances, as presented to him, do not

5   warrant sanctions as argued by the plaintiffs.  So I am going

6   to deny that motion; overrule those objections, deny that

7   motion.  And I'm going to issue an order within the next few

8   days to that effect.

9          Let me go to the defendant's motion for separate trial

10  and bifurcation.  I'm going to deny that motion for separate

11  trials and for bifurcation of the liability and damages phases

12  of the trial.  I see no real efficiency in doing that, nor any

13  requirement that that need be done.

14         I think that my decision with regard to summary

15  judgment has streamlined some of the case and eliminated some

16  issues.  I have also determined that a significant amount of

17  evidence might even otherwise be admissible, even if other

18  plaintiffs were not in the same case.  And I see no undue

19  prejudice to the defendant in efficiently trying all of these

20  related issues, and putting it before the jury, and putting the

21  issue of liability and damages before a jury which can hear the

22  evidence.  Bring in all of the witnesses at one time, present

23  all of the evidence, and have them make the determinations as

24  to individual plaintiffs and individual claims.  And I think

25  that that can efficiently be done without prejudice to either

1    party, so I'm going to deny that motion.

2           With regard to the process, I'm just going through the

3    ones that I think I have already sufficiently satisfied myself

4    as to what my ruling was going to be and had an opportunity to

5    review the relevance submissions and material.

6           With regard to the plaintiff's motion for an anonymous

7    jury, I'm going to grant that motion.  To the extent that the

8    names and addresses and workplaces of the jurors in the jury

9    panel, when we give them questionnaires, and continue through

10   the jurors that are selected, I am going to have that

11   information not provided.

12          I'm thinking about a process, and have already been

13   discussing with the jury panel, a process for getting access to

14   enough jurors, going through and having them fill out the

15   questionnaires, and having them appear before the parties.

16          My thought, and we can discuss it further, I will take

17   some suggestions.  Because it's January, the number of cases

18   that are scheduled for trial, we will either have a jury panel

19   on the 12th who will be here to start and fill out

20   questionnaires, or to ensure that we have enough jurors, I may

21   bring the jurors in a couple of days earlier so that I don't

22   have to compete with my other colleagues for jurors.  I have

23   already been notified that there are a number of trials that

24   are scheduled.  It's clear to me that, as it exists now, there

25   are not -- if all of those trials go, there are not enough

1    jurors who are going to be here on that day to satisfy all of

2    the judges who want to try cases on that day.

3         So I'm in the process of ordering additional jurors

4    and on deciding whether or not we can get those jurors on the

5    12th or if we have to get them Monday, the 12th, or we have to

6    get those jurors maybe Wednesday, Thursday, or Friday the week

7    before.

8         As a matter of fact, I can say even publicly on the

9    record, that Judge Cogan, I have spoken with him about the

10    process, procedurally, how he has proceeded with his case that

11    he tried with regard to the bank.  And, you know, in terms of

12    how he selected jurors, the questionnaires, those kinds of

13    things.  So he has been very helpful to me in that regard.

14         And what I anticipate, is doing some of the things

15    that I think were appropriate in that case, to do here, and

16    some other things which I think are more appropriate for this

17    case, that may not have been relevant to his case.  What I

18    think that we will need is, clearly, we need no less than 100,

19    probably no more than 300 jurors to fill out questionnaires.

20    My thought, right now, is to figure out whether or not 200

21    jurors will be enough to start with in terms of questionnaires.

22    At this point, given the estimated 10 to 12 week trial, which I

23    hope will end up being less -- I'm not sure that the nature of

24    the live witnesses is going to warrant that time frame.  But

25    we'll go with that time frame if that is what the parties still

think at this point that it is going to take.  But as we get
closer, we'll talk about, more specifically, what's going to be
admissible and what witnesses are really going to testify, how
long it will take to present them.

        But what I anticipate is, right now, my thought is the
cover sheet that I looked at, which was proposed by the
parties, I probably won't use.  Because I'll probably tell the
jurors that I don't want that information.  What I'll probably
say to them is that, in order to give them a full opportunity
to be as forthcoming and candid as they possibly can with
regard to actually answering questions on the questionnaire,
that I will assign them numbers.  And they will fill out
questionnaires based on the number that is assigned to them.

        To assist the parties, I'm thinking about doing this,
it's bringing in, if logistically it works and makes sense, to
maybe bring in the jurors.  And maybe if we have as many as 200
or 300, we may have to go to the ceremonial courtroom so we can
get everybody in the room at the same time.  I would like to
get all of the jurors in the room at the same time.  And I
would like to call the jurors up to get their questionnaires
that are numbered, so that will at least give the parties an
opportunity to see who the individuals are.

        I think that's an advantage that's sometimes not
given.  I think it would be helpful to the parties to make
informed judgments about jury selection in this case.  At least

```
1    even if we don't disclose the names and addresses and

2    workplaces, the work addresses of the potential jurors, that

3    you see what they look like in terms of juror number one, and

4    in terms of potential juror number one, in terms of potential

5    juror number 12 to 200, 300, so you can factor that in your

6    assessment of the juror, evaluation of that juror.

7         I have to go through, and I have gone through, the

8    proposed questionnaire with the objections.  Quite frankly,

9    which is not surprising, I agree with some on one side, and

10   agree with others on the other side.  And there is some things

11   you both agree to that I'm not sure that I agree to.

12        I'm a little concerned, I can tell you, about the

13   direct nature of the questions about people's religions.  I am

14   probably going to see if I can fashion a question that might go

15   more directly to whether or not they have any views, religious

16   or political or otherwise, that might affect their ability to

17   be a fair and impartial juror.  I am not comfortable with the

18   questions are you Jewish, are you Muslim, are you -- those

19   kinds of questions.  But I'm going to think that out more and

20   we can talk about that further as we get closer.

21        But I'm still trying to figure out a process for after

22   we get the questionnaires.  What I want to do is get the

23   questionnaires the first day, and maybe give you a day or two

24   to go through the questionnaires.  And, then, a process for

25   having you get, to me, people that we can all agree, or at
```

1    least are at least eligible to serve as jurors.

2         My thought at this point is to -- I'm thinking about

3    impaneling about 16 jurors.  And whatever 10 are left at the

4    end of the case, they will render a verdict in this case, and

5    impanel them in the order in which they were randomly assigned

6    numbers.

7         So, what I would like to do is end up with a number of

8    jurors, at least a number that are qualified to serve, and a

9    number for which we will end up with 16 if the parties exercise

10   all of their peremptory challenges.  And at this point, I

11   intend to stick with three peremptories per side.  And we can

12   discuss that further.  But I don't, given the process with the

13   questionnaire, I'm not sure I see a need for any greater number

14   of peremptories.  But we can discuss that.  And so be able to

15   have at least 22, exercise peremptories, and end up with 16 to

16   sit through the trial.  First 10 will decide the case.

17        But I have a lot more work to do with the jury

18   questionnaire, so we can discuss that.  And, hopefully, we'll

19   be in a position to discuss that the next time we meet.

20        Or, I can even give you something to look at and work

21   on and propose, or urge me to change, or object to before the

22   next time we are scheduled to meet, which is December 16th.

23        So we can discuss that process further, but that's

24   sort of the general framework of where I am in conjunction with

25   all of the other things that I have to do on this case, in

1    terms of how far I have gotten in terms of thinking about the

2    process of jury selection.

3              So to that extent, I would anticipate that we can pick

4    16 jurors.  I want to make the record clear that I am not

5    compelled, at all -- I am confident to say the record does not

6    support any conclusion or argument by the plaintiffs that

7    sequestration and an anonymous jury is warranted because of

8    some possible threat or danger to jurors and, particularly, on

9    the part of the defendants.

10             The reason I think that we should proceed with the

11   anonymous juror, is that my primary concern is to make sure the

12   jury selection and jury's evaluation of this case is not

13   influenced by any outside influences.  And I don't know who is

14   going to have an interest in this trial.  I don't know who is

15   going to show up for this trial.  I don't know what people are

16   going to say in this trial.  So to the extent that -- I guess

17   I'll finish with my ruling with regard to the motion.  Because

18   the motion was for an anonymous jury, a sequestered jury, or at

19   least partially sequestered jury.

20             I'm going to grant the anonymous jury, only to the

21   extent, as I say, the names, addresses, and workplaces of the

22   potential jurors, and jurors will not be revealed.

23             I am going to deny the motion for sequestration during

24   the trial.  I think that this case is a civil case.  It doesn't

25   warrant sequestration.  I think that there is a significant

1    danger of prejudice to the parties to make them think that

2    somehow this case warrants sequestration because of some

3    dangers to the jurors, or some other related issue.

4           So I am going to deny the plaintiff's motion that the

5    jury be sequestered during the trial and during deliberations.

6           I will say this.  We will discuss, and I will take

7    reasonable steps, to ensure a fair and impartial juror is not

8    tainted by outside influences during trial, during juror

9    selection, trial, and deliberations.  So whether or not that

10   means that, as minimal as simply nobody leaves the courtroom

11   until all of the jurors are off the floor, to whether or not we

12   have court officers that are assigned to this case that ensure

13   that the jurors are escorted out of the building, or some other

14   process so that the jurors go one way and the parties and

15   lawyers go another way.

16          And that is of concern to me.  Some of you may already

17   know that I was in a criminal trial within the last year, in

18   which the issue during the trial was that a lawyer in the

19   criminal case claimed that the juror and defendant were trying

20   to get into the same cab at the same time, and the defendant

21   happened to get there first, and that the juror gave the

22   defendant the finger after the defendant jumped in the cab.

23   And it ended up being an issue.  When that occurred, it

24   affected a very high profile trial that we were trying for

25   about six weeks.  So I'm sensitive to those minimal issues, and

1    sensitive to a little bit more control over the jurors and

2    doing what is reasonable, without prejudicing the case, to make

3    sure that they are not affected by anything outside of this

4    courtroom during the trial, or during their deliberations, or

5    even during jury selection.

6         So I'm going to go ahead and I will issue an order to

7    that effect in the next couple of days.

8         I will characterize this as -- I have notice of a new

9    Second Circuit authority, Daimler, referring to Gucci.  I will

10   consider that to be a renewed motion for reconsideration.  I'm

11   not going to change my decision with regard to the jurisdiction

12   issue.  And I am going to issue a short order or opinion, also,

13   probably in the next several days.

14        First of all, I will indicate for the record here

15   that -- and I'll make it, make that order or decision

16   consistent with that, that the motion was not denied based on

17   weight.  I heard the merits of this argument.  And my

18   determination was that, and still is, that the PA and PLO's

19   continuous and systematic contacts with the U.S. is sufficient

20   to support the exercise of general jurisdiction apart from that

21   standard.  And even undertaking the further common analysis, a

22   certain person of jurisdiction does not conflict with any

23   foreign country's applicable laws or sovereign interests.  This

24   case does fall, I believe, outside of the traditional analysis

25   that the Court in Daimler and also in Gucci laid out with

regard to a foreign corporation.  Even if the defendant is a

foreign corporation, where the traditional analysis and place

of the corporation and principle place of business would be

controlling, it is that rare instance that the Court referred

to in Daimler in which an analysis of the business, commercial

or otherwise appropriate contacts with the U.S. were so

continuous and systematic that it is sufficient to support the

exercise of jurisdiction.  That was my determination on the

merits, originally.  That's still my determination.

    My position was, with regard to Daimler, I did not

preclude the defendants from making that argument based on

waiver.  But, I have indicated that Daimler does not change --

an analysis under Daimler does not change my determination that

a certain personal jurisdiction under the ATA or PA and PLO,

based on the conclusion that their continuous and systematic

contacts render it at home in the U.S. is still an appropriate

decision, and is not a contravention of the laws of any foreign

country in going further with the common analysis.

    So that assessment, I think that assessment is

consistent with the rule in Daimler.  It is consistent with the

rule in Gucci.  And further, I should add that Gucci -- not

only does Daimler deal with primarily the circumstances dealing

with a foreign corporation, it discusses traditional analysis

and place of incorporation and principle place of business,

which I think this circumstance uniquely isn't compelled by

1     that strict analysis that Gucci deals with.  I think it is

2     important that Gucci also deals with a different circumstance.

3     It deals with whether or not, specifically whether or not a

4     bank's branches in the forum is sufficient to assert general

5     jurisdiction.  And the Court in Gucci said that that is not

6     sufficient under Daimler.  And I don't disagree with that.  And

7     I don't think that my decision is in conflict with that.

8          So I am going to issue a decision or order on that,

9     indicating that I have reviewed the subsequent authority that

10    was submitted to the Court and my decision with regard to

11    personal jurisdiction is still the same.

12         I still have a number of issues to address, work left

13    to do.  I want to see -- as I say, I already indicated I think

14    the last time we discussed it, what time frame I was trying to

15    deal with issues.  I want to still see if -- I'm not sure I

16    will be able to address all of the motions in limine, and the

17    motion to the objections to the 177 trial exhibits, by

18    December 16th.  But that's my goal at this point.  Minimally, I

19    want to address the 177 trial exhibits and see if I can

20    address, additionally, by that time, the motions in limine to

21    exclude the experts, so you can know as early as possible what

22    my position is with regard to the experts.  But I know there

23    are related motions in limine to exclude certain fact witnesses

24    and further objections to trial exhibits that should be

25    addressed.  And even objections to deposition designations,

1    which I will get to as soon as possible, if not by that date,

2    clearly after.

3         I am going to first concentrate on the 177 trial

4    exhibits, motion objections, experts.  And, also, I want to

5    spend some time, between now and then, trying to get to at

6    least a draft of the jury questionnaires.  Because I think I

7    want to give you as much time as possible to think about the

8    jury selection.

9         With regard to the proposed jury instructions given,

10   we can discuss whether or not you want to submit something

11   different, or further, or less, given the nature of my summary

12   judgment decision.  It obviously moots the jury instructions

13   with regard to the state claims.  And it defines, limits the

14   nature of the ATA claims against certain plaintiffs against the

15   defendants.

16        Obviously, we don't -- I will try to give you as much

17   guidance as possible on jury instructions as early as possible,

18   but I think that the first priority is something we are going

19   to need at the end of the trial, not necessarily the beginning

20   of the trial.  But we'll try to get them in as an early

21   indication of what you can anticipate is the final jury

22   instructions, as early as possible.  Some indication before

23   trial, and if not a final indication prior to trial.

24        The only other issue, and then I will let you raise or

25   ask questions about the things that I have focused on.  Also, I

1    want to work on a verdict form.  Quite frankly, I find

2    sometimes it is easier to try to put together a verdict sheet,

3    verdict form, before doing the jury instructions, because

4    that's where we want the jury to end up.  So I will try to get

5    something consistent with my summary judgment ruling to you as

6    early as possible.

7            The only other issues that I have written down is the

8    question, is the application from three, I believe three

9    individuals, who have identified themselves as representatives

10   of the press, to intervene and unseal certain, unseal all of

11   the material that has been under the confidentiality order part

12   of the agreement and protective order of the Court.

13           I am not going to make a final decision on that

14   until -- well, let's put it this way.  I'm not going to make a

15   final decision about disclosing material until I have made a

16   determination as to what material is admissible at this trial.

17   So I will either postpone the decision on that -- I know I have

18   gotten a response to the motion.  I didn't know whether or not

19   I was going to get a further response or a reply.  So over the

20   next couple of days, I'll see if that is coming.  But

21   my inclination at this point is to either deny the application

22   to intervene without prejudice to renew, or to postpone the

23   decision on that until I have made some decision with regard to

24   the admissibility of exhibits.

25           My overarching approach is that the standard sort of

1    redacted material of identification numbers, and addresses, and

2    things like that of individuals, that kind of material will

3    probably not be disclosed.  Maybe even some further material

4    with regard to the identities of certain individuals not really

5    directly involved in disputes between the parties.  Maybe some

6    of that, in terms of redaction.  My initial guidance, and I'll

7    see whether or not that's an appropriate way for me to look at

8    things, but my initial thought is that the material that will

9    be admissible at this trial will be publicly available.  The

10   material that is not determined to be admissible at this trial

11   will probably not be public material.

12        There is some, I don't say dispute, but it seems to be

13   some disagreement about the extent to which judicial material

14   is under seal or protective order, and it is not.  I know that

15   the defendant's position is basically that most of the judicial

16   record is already, judicial documents as the interveners want

17   to characterize it.  The defendant's position is mostly that is

18   already public.  I mean that's true and not true.  And some of

19   it is, some of it isn't, and some of it is redacted, and some

20   of it is still under seal.

21        You know, I am not sure that it's clear that all --

22   I'm not sure that all of the motion papers are fully available

23   either as motions on related submissions, or -- and clearly not

24   fully available in unredacted form.  But we can discuss that.

25   I'm more concerned about I can't spend the time going through

1    each document, each redacted document.  But I'll set basic

2    guidance for what is going to be disclosed and not disclosed.

3    And my first basic guidance is that those materials that are

4    admissible at trial will be disclosed at the appropriate time.

5    The reason for my delay in making the decision and even,

6    depending on what the decision is, will be a delay in making

7    those disclosures.  Because, clearly, I do not want to

8    prejudice a potential juror that's not even selected yet, or

9    prejudice the jury that is selected prior to the beginning of

10   this trial.

11       So I want to minimize the kind of isolated material

12   that others who may wish to publicly disseminate it may wish to

13   comment upon and take a risk that that was going to prejudice

14   the parties in this case, one side or the other, with regard to

15   being able to select and maintain a fair and impartial jury for

16   the trial and during the trial.

17       So, I will start to look, again, at the categories of

18   material that are at issue, and what things are relevant and

19   admissible, that will be at this trial.

20       Pretty much I can say that the parties should

21   anticipate that if it is going to be admissible at this trial,

22   other than personal information and standing redacted

23   information in the trial, if there are documents that are going

24   to be put before this jury, they are documents that are going

25   to be disclosed publicly.  We can discuss that further as I get

1   a better handle on the documents and get a better handle on

2   what is really at issue here.

3          So, as I say, obviously, there is a lot for all of us

4   to do between now and January.  That's where I am.

5          As I say, I have done a significant amount of work,

6   but I have a significant and greater amount to further

7   undertake.  But that's my approach.

8          You know, I will try to do as much as we can do

9   between now and December 16th, and only put off the things

10  that, in my judgment, the parties, it will still give the

11  parties an opportunity to be ready for trial, and will not be

12  issues that the parties would necessarily have been better off

13  if they had somehow gotten a decision on that much earlier.

14         So as I say, things like final jury instructions and

15  that sort of stuff, obviously we need that.  And you would like

16  it as early as possible.  But I don't think that is a priority

17  over some of the other things.  And I think you'd probably want

18  better guidance as to particularly with regard to what

19  documents and witnesses and testimony of witnesses that's

20  likely to be admissible as early as possible.  So that's where

21  I'm going to concentrate, first, between now and December 16th.

22         So that is pretty much where I am.  And why don't I

23  turn to the parties, and you we can discuss it further, or you

24  can discuss other issues that you think we ought to be focused

25  on.

1          THE COURT:  Start with the plaintiff.

2          MR. YALOWITZ:  Thank you.  First of all, your Honor, I

3     want to thank the Court for all of the hard work that you and

4     your chambers are doing.  I can tell that the Court is working

5     as hard as we are.  And we will be ready and I'm sure you will

6     be ready, as well.

7          There are sort of three things I want to talk about

8     with you today.

9          First, I need some guidance from you on the scheduling

10    in terms of how many days a week does the Court plan to sit,

11    how long are those days.  I notice your Honor was scheduling

12    some sentencings and other things in late March that seem to be

13    sort of random days.

14         THE COURT:  I assume we are going to be finished by

15    then.

16         MR. YALOWITZ:  I'm going to work real hard for that,

17    but I can't control how long the defendants take for cross or

18    for their case, as you know.  What I would like to do is have,

19    as early as possible, as clear an idea of what time are we

20    going to start in the morning, what days are we going to sit.

21         THE COURT:  Sure.

22         MR. YALOWITZ:  Because most of my witnesses are from

23    out of town.

24         THE COURT:  Sure.

25         MR. YALOWITZ:  While I --

```
 1              THE COURT:  I can tell you that now.

 2              MR. YALOWITZ:  Great.

 3              THE COURT:  We will start 9:45 or 10:00, depending on

 4     how quickly the jurors arrive.  And we'll usually schedule one

 5     or two small matters, quick matters, like at 9:30 on some days,

 6     that I can't put off.  So I'll get those done before 10:00.  So

 7     we can start as early as 9:45 with the jury's day.  And as late

 8     as 10:00.  I intend to try the case every day that is not a

 9     holiday.  And I intend to try the case full days, which means

10     that's sometime between 4:30 and 5:00 most days.  So, I would

11     anticipate a flow of witnesses and evidence between as early as

12     9:45 in the morning to as late as 5:00, five days a week.

13              MR. YALOWITZ:  Okay, that's excellent, your Honor.

14              One small wrinkle that we'll just have to be aware of.

15     Some of our witnesses are orthodox Jews.  And we're going to

16     have to get them out of the courtroom pretty early in January

17     on Fridays.  So there may be -- we just may have to work around

18     that a little bit.

19              THE COURT:  And what do you think, are you thinking at

20     this point 3:00 or --

21              MR. YALOWITZ:  I don't -- you know, it is -- I don't

22     observe it, so I don't -- I don't have it kind of -- but I

23     think that's -- I tried a case with Judge Kahn and that's what

24     he used to do about 2:30, 3:00 he would wrap it up.

25              THE COURT:  Well, you know, I --
```

1              MR. YALOWITZ:  But it depends on the witness, too.

2      Because we have a lot of witnesses who, you know, they are

3      going to be fine.

4              THE COURT:  Right.  So I would try not to put those

5      witnesses on for Friday afternoons.

6              MR. YALOWITZ:  Yeah.

7              THE COURT:  I am sure that on certain days,

8      particularly if we are starting to go weeks, I would probably

9      pick a few Fridays where we would adjourn a little early for

10     the jurors, to give them a little rest, a longer weekend.

11             At this point, we are talking about January 19th as a

12     holiday.

13             MR. YALOWITZ:  Right, President's Day.

14             THE COURT:  We are talking about February 12 is

15     usually a day this Court is closed.  Not an official holiday,

16     Lincoln's birthday.  Depending on where we are and how many

17     weeks we really anticipate, the question is if we are off

18     February 12th, the question is whether we are going to be

19     sitting Friday, February 13.  If we need that day, we will.  If

20     it looks like we're ahead of schedule and we don't need that

21     day, I might give the jurors, and you, a longer weekend on

22     that.  But that's fairly early in the trial, so I'm not sure

23     that that is going to be appropriate.  But, again, depends on

24     what the jurors' plans are, too.  Because a little bit of the

25     awkwardness is that February 12 is Thursday.  February 16, the

1    Monday, is President's Day.  So Thursday is a holiday, Monday

2    is a holiday, but Friday is not a holiday.  So, we'll talk

3    about that.  And we'll plan tentatively around that and for

4    that.  But you know, we'll do a full March, if we need a full

5    March.  But I'm not -- I mean, as a matter of fact, at this

6    point, approximately how many live witnesses do you think that

7    you would call?

8             MR. YALOWITZ:  I think that I am going to have about

9    50 live witnesses, your Honor.  I have to sort of think through

10   how your Honor's ruling of yesterday --

11            THE COURT:  Sure.

12            MR. YALOWITZ:  -- affects that.

13            I know some of the witnesses are going to be shorter,

14   economists who are going to opine on the damages for some of

15   the witnesses that got knocked out.  But, directionally, it is

16   kind of 45, 50 witnesses, many of whom I hope, and expect, will

17   be on and off quite quickly.

18            THE COURT:  Right.

19            MR. YALOWITZ:  You know, I don't think we need family

20   members to spend three days on the witness stand or anything

21   close to that.  So it's just a matter of we've got to line them

22   up, get them on, get them off.  And it's, truthfully, it is a

23   logistical challenge, but having the five-day week is going to

24   be very helpful in that regard.

25            THE COURT:  Right.  And, you know, I am anticipating,

```
 1    as I say, usually, the lawyers tell me that they anticipate the
 2    case to be a certain length and, usually, it is.  I don't
 3    anticipate it being that long.  And it's usually not that long.
 4            My basic rule is that there should be a witness on the
 5    stand, there should be a witness in the witness room waiting,
 6    so that we don't have any gaps, so we can move efficiently.  I
 7    would think that the nature of this case and the nature of the
 8    witnesses are that we might be able to do somewhere between
 9    three and six witnesses a day, and some days even more than
10    that.
11            So if you are talking about six witnesses a day, I'm
12    not good at math, that's why I became a lawyer, but now we are
13    talking about nine days of trial.
14            MR. YALOWITZ:  Yeah.
15            THE COURT:  Nine days of testimony.  So that's not
16    nine weeks of testimony.
17            MR. YALOWITZ:  Right.
18            THE COURT:  So as I say, we put aside 10 to 12 weeks,
19    so unless they have a case that is twice as long as yours,
20    which I don't anticipate, this is not going to be a 12 week
21    trial.
22            MR. YALOWITZ:  I hope you are right.  I don't think
23    we're going to do six witnesses a day at the beginning.
24            THE COURT:  Right, no, I understand.  I'm talking
25    about an average, over the time period.
```

 1          MR. YALOWITZ:  So, but look, we'll learn together.

 2     One of the things I have learned is I'm very bad at predicting

 3     how long a trial is going to take.  I had one in front of Judge

 4     Gleeson that we all thought was three days, and it was four

 5     weeks.  So you just can never tell, but, okay, that's great.

 6          THE COURT:  That's my best guidance.

 7          MR. YALOWITZ:  Very helpful.

 8          THE COURT:  At this point, I'm going to devote and

 9     even the matters you see me schedule during a trial, what I

10     will do is sort of anticipate, the weeks before, whether or not

11     there are one or two of those matters that can be handled,

12     whether we can shift them.  If I have oral argument scheduled,

13     they will have to step aside, unless there is some reason we

14     cannot sit or are not sitting on that date.  And you'll have

15     full days, and all day, in full weeks until we finish.

16          MR. YALOWITZ:  Okay, that's great.

17          The second topic I just want to talk a little bit

18     about, the jury veneer.  And I don't have it clearly in mind,

19     but I think if we're going for 16 qualified jurors in the box,

20     I am a little worried that 200 wouldn't be enough.  You know,

21     my experience is anecdotal.  I was actually a juror.  I didn't

22     get picked, but I filled out one of those questionnaires on a

23     terrorism trial.  And I think I was in the 400s as a juror.

24     And I know Judge Kaplan just picked a jury.  And my partner was

25     also questioning.  He was questioning.  And he said there were

1    hundreds.  But, look, the Court has experience in these kinds

2    of trials, and we do them in the Southern District.  Just 200

3    sounded a little low to me, and I just put that out there for

4    your Honor.

5         THE COURT:  As I say, I spoke to Judge Cogan in his

6    case --  I think he told me he had 200 or 300 and they ended up

7    with 10 jurors and didn't have a problem.

8         Now, you know, whether or not that would be a similar

9    experience, I don't know.  I think that my thought is that at

10   least 200.  Really, what it's going to do, it's really going to

11   depend on finding a place, particularly.  Let's put it this

12   way.  I have two choices, but we can discuss that as we get

13   closer.  My choice is to simply have jurors fill out

14   questionnaires, give you the questionnaires, and then bring

15   those jurors in who are qualified to be brought in after that,

16   and that's when you meet them for the first time.  I think

17   that's the way Judge Cogan did it in his case.  If that's the

18   way you want to do it, that's fine with me, then logistically,

19   that's easy.  But my intent was to, as they say, let you

20   eyeball the jurors before they even start filling out

21   questionnaires, and speak to the jurors.  And emphasize the

22   importance of picking a fair and impartial juror, as I always

23   do.  And a lot of the information that you have in the

24   questionnaires that I use, I will say to the jurors.  I find it

25   much more compelling to say to the jurors than simply have them

1    read it on the form.

2            So I would rather have the potential jurors meet you

3    and me.  And to have you see who they are.  And have them

4    listen to what I have to say about the importance of being a

5    juror; that we need a fair and impartial juror, and despite the

6    length of the trial that I'm going to efficiently move forward

7    and not waste their time, and keep them informed on a daily

8    basis whether I think we're ahead of schedule, behind schedule,

9    on schedule.  And give them those assurances that I usually

10   give jurors that, look, we're in this together; you know, I

11   have done this before.  I'm going to keep control of the case.

12   I'm not going to waste your time.  And we're going to present

13   this case to you in an efficient, effective manner.  And be

14   able to at least have that initial conversation with them now.

15   If we can do that, that's fine.  If it looks like we are not

16   going to be able to efficiently do that, and we should just

17   simply have them, you know, 300, 400, potential jurors fill out

18   questionnaires, and then have you go through the questionnaires

19   and the questionnaires that look like they are qualified

20   people, then bring them in and have you meet those people.

21   That's usually the way it is done -- not usually.  That's the

22   way Judge Cogan did it.  I have spoken to others who have

23   spoken to jurors before they fill out the questionnaires.  My

24   preference is to speak to the jurors as early as possible.  But

25   it's going to be limited in the capacity that I can find a room

1    to get all of the jurors in to be able to do that.  And, quite

2    frankly, I think the only room that I am going to do that to

3    hold 200 or 300 potential jurors, is going to be the ceremonial

4    courtroom.

5            MR. YALOWITZ:  Right, right.

6            THE COURT:  So if I'm going to do that --

7            MR. YALOWITZ:  I think that room is big enough.

8            THE COURT:  But that still limits the number.  So if

9    it is more than 200 or 300, and we're gonna speak to the jurors

10    first, we are going to have to do it twice.

11            So, you know, there is no way that, unless you say,

12    give me 500 jurors, let them fill out questionnaires, and then

13    we'll winnow it down to 100, then we'll bring them in and you

14    meet the hundred.  If you want to do it that way, that's fine

15    with me.  I don't have any problems with that.  And that's an

16    effective way to do it.  And I'm sure you can get a fair and

17    impartial jury that way.  But if you want me to say, you know,

18    ladies and gentlemen, you have your cards, each of those cards

19    has a number on it.  When we call your number, come up and get

20    your questionnaire.  And I introduce myself.  I introduce the

21    lawyers.  I introduce the parties.  Tell the jury what the case

22    is about, so they can start thinking about this.  And tell them

23    what that process is.  And, then, call them up individually and

24    hand them their questionnaires and have them go back to Central

25    Jurors and spend the rest of the day filling out their

questionnaires.  And so you can size up, you know, Ms. X, or
Mr. Y, as you see them.  And, you know, that gives you some
other, not necessarily legitimate basis to want them or not
want them, but at least you know what they look like.

MR. YALOWITZ:  I'm sure Mr. Y would be an excellent
juror.

So, look, I like that idea.  I like the idea of you
talking to them, and us, you know, being able to eyeball them.
And so I like that idea.  And I think the ceremonial courtroom
is big enough to achieve it.

I like that idea a lot more, like maybe the sixth or
seventh of January, than I like it the twelfth of January.
Because, again, if we use that week before productively and we
get the cause challenges done, and we can actually pick the
jury on the morning of the twelfth and get started with opening
and witnesses, that's a lot better than kind of lingering as
the week of the 12 drifts by, and --

THE COURT:  Well, as I say, part of it is in my
negotiations with the chief judge and the jury, so that we
could figure out how many people we can get in here.  And, you
know, clearly, there are a lot of people.  I mean it's the new
year.  Clearly, the 12 -- there are a lot of judges who start a
trial.  So we want that number.  I mean we may be talking about
using the whole day's jury panel, which will give no one else
an opportunity to utilize that panel.  So if we were to do

1    that, we may have to do that a day or two before the 12th, if

2    we want to grab all of those jurors.

3         MR. YALOWITZ:  I would rather do it before the 12th

4    anyway, because that will help us with the --

5         THE COURT:  If we can't get the jurors before the

6    12th, then that may define it, also.

7         MR. ROCHON:  Before we turn away from that, your

8    Honor, I don't want to make Mr. Yalowitz nervous, but we agree

9    that it's better that the jurors first hear from the Court in

10   connection with their questionnaires and not some other person.

11   I don't think we get as much out of it, but I believe the

12   system works better when they hear it from you.

13        THE COURT:  Yeah.  Yeah, I agree.  Jurors usually like

14   me, so.  I'm on their side.  They understand that very quickly.

15   Particularly, when I talk about being efficient, and moving

16   forward, and not wasting their time, and making sure that time

17   is used efficiently, and keeping them informed.  And the jurors

18   get some assurance early on that -- and sometimes, I don't know

19   if I'll tell them in this case -- sometimes I tell them, look,

20   this is -- if this is a two or three week case, and you have a

21   good excuse why you can't do that for the next two, three

22   weeks, if I excuse you from this case, you don't go home, you

23   go back to Central Jury.  You may go to one of my colleagues

24   who is not as nice as me.  They may have a six-month trial for

25   you to sit on, and that may be the case you sit on.  I

1    emphasize what their responsibilities are, that they are here,

2    and we expect them, and I don't listen to -- I cannot excuse

3    them because jury service is an inconvenience.  They get

4    serious about it.  And they take it seriously.  And I find as

5    long as they know that I understand that this is a minor or

6    major disruption in their personal and professional lives, but

7    it is something that is important that is required of them, I

8    think they are very serious about taking on this

9    responsibility.  And it's much easier for me to get a jury

10    panel.

11            MR. YALOWITZ:  That's great.  So let's do it that way.

12            THE COURT:  We'll talk about it again on the next day

13    as we get closer, and I can get more information about what the

14    logistics would be.

15            MR. YALOWITZ:  The other thing, just to sort of maybe

16    put in your mind, when you were talking, your Honor, about

17    figuring out some way to keep the jury from -- some process

18    with regard to assembly and, you know, arrival and departure.

19    And sometimes what the marshal will do is have a designated

20    spot, off the premises, and they can just assemble there and

21    come into the courthouse in a van from the marshals' office or

22    something, and that might be something that would work well.

23            THE COURT:  I will think of those things.  And we can

24    discuss them.  As they say, I have to balance it with letting

25    the jury know that we respect their privacy.  And, obviously,

they should decide this case solely on the evidence presented
at the trial, and not anything that they may read, or hear, or
be confronted by anybody who might have an interest in this
case one way or the other.

            But I have to do that in the context of not making the
jury think that there is something they should be particularly
concerned about with regard to one of the parties, or somehow
thinking that, you know, this case is -- this is not a criminal
case in which the charges will give the jury some reason to
fear for their lives.  And I don't want them to think that that
is the case.  And I have to balance it.  And I don't want to
be -- clearly, obviously, I understand that concern about not
being prejudiced in that way, thinking somebody should fear
something from the defendants.  But, quite frankly, I find that
sometimes it turns out that some juror, in their mind, has some
concern about the plaintiffs, rather than the defendants.  And
I have no control over it, and I don't know what people are
going to be like if they think that somehow I have to put a
hood over them and bring them in and out of the courthouse
every day.  And so I will clearly set up some process so that
they are not interfered by, you know, by spectators or press or
otherwise.  But I'm going to emphasize to them that's the
purpose of this.  And I'm not going to make the sole choice of
somehow there is something else they should be concerned about.
I have spoken to other judges who have had cases, and this has

1    not been an issue.  I know with Judge Cogan it wasn't an issue.

2    I think that this, ultimately, once we get started, the jury

3    will be able to handle this appropriately, and as seriously as

4    they would any other trial, civil trial in which, you know,

5    serious injury is alleged.  And that, you know, defendants are

6    accused of serious conduct.

7            So, we can discuss it further.  Whatever we can all

8    agree upon that would be comfortable, we'll do.  To the extent

9    we can agree, I'll make an independent judgment about how and

10   what, how best to protect the jurors from those inappropriate

11   contacts with people outside of this court.

12           MR. YALOWITZ:  Thank you.

13           One other -- I guess I have two other sort of process

14   issues for the Court.

15           One is I know the Court is going to be working on the

16   motions in limine.  One of the issues that I have is that the

17   defendants have listed about 20 witnesses as to whom they made

18   no disclosures under Rule 26A.  And so some of those I have

19   depositions in other cases, so I kind of know who they are.

20   But some of them I have never heard of, can't figure out who

21   they are, have absolutely no idea why they are listed as

22   witnesses, and never had an opportunity to get any discovery

23   about them, even a deposition.  And so I know that's -- I mean

24   it has been fully briefed, I don't need to reargue it here.

25   But to the extent that we're going to have a process in which

1    the Court permits the defendants to bring witnesses, in that

2    circumstance, first of all, I hope that the Court doesn't allow

3    it under the theory that we talked about, that disclosure had

4    to be done during the discovery phase.  But if we are going to

5    allow it, I would like enough time that we have some process to

6    find out who these people are, and what they are going to talk

7    about, and maybe take their measure in a brief deposition.  I

8    don't need seven hours, but --

9            THE COURT:  Well, we can discuss that further, if

10   that's appropriate.  I mean I think at this point that you

11   should prepare for trial, assuming that all of the evidence

12   that you want to put in will be in, and all of the evidence

13   that they want to put in will be in.

14           MR. YALOWITZ:  I understand that.

15           THE COURT:  To make it easier for you to be prepared,

16   if you don't have to deal with it.

17           MR. YALOWITZ:  Right, I understand that.  And that's

18   why I just wanted to put it maybe higher on your list than it

19   had been, because I would like that process, if you're going

20   to -- if you're going to give them that leniency.

21           THE COURT:  In order to prioritize the limit of time

22   between now and then, I will try to get all of those issues

23   that particularly have to do with what you might anticipate as

24   evidence in this case, try to resolve that as early as

25   possible, and try to resolve most, if not all of that, between

1    now and December 16.

2                MR. YALOWITZ:  That's great.

3                And then just the last sort of process issue is I

4    would like to package for you, in some way, a set of the

5    exhibits that we believe are the convictions of the

6    perpetrators and other individuals.  And I think that the

7    admissibility of those convictions has been well briefed.  I

8    don't know that the Court needs more briefing on it.  I think

9    you have got plenty of briefing on everything, but I think it

10   would be useful for you to have sort of a physical set of those

11   convictions, so you can see them.  And that might assist us.

12   And, also, I don't think it is appropriate to suss out the

13   defendant's objections to those convictions in front of the

14   jury, because the defendants' argument is that their argument

15   is the whole court system in Israel is unreliable.  And that's

16   really not something the jury should be hearing.  And it's not

17   really an issue for the jury anyway, it's an issue for --

18               THE COURT:  Well, the jury is not going to hear any

19   argument with regard to objections to testimony or evidence.

20   Make your objection.  If you have a ground for the objection,

21   you can state a one word ground for it.  But in most cases I'll

22   know why you are objecting.  And if you want further argument,

23   it will have to happen outside of the presence of the jury.

24               MR. YALOWITZ:  Of course.

25               My goal is to get you some kind of a package that will

1   help us get the objections to those documents ruled on in

2   advance of trial, because I expect them to --

3              THE COURT:  Well, I.

4              MR. YALOWITZ:  -- come up early.

5              THE COURT:  Let me hear from the other side, but this

6   may moot it.  I think I will prefer for you to give me, first,

7   an opportunity to review the motions, and then reach out.  You

8   can prepare it and be prepared to give it to me, but I'll reach

9   out to you if I need something further submitted to me to make

10  that determination.  I'll also --

11             MR. YALOWITZ:  The issue, if I may, your Honor, with

12  the convictions is there is no in limine motion on it.  It was

13  both sides briefed it kind of inside the summary judgment.  So

14  there is briefing on it, but there is not an application for

15  relief by either side.

16             THE COURT:  Well, the only thing that I am interested

17  in, in the first instance, is in what form you are intending to

18  offer the conviction.  And if you had said you have a certified

19  judgment of conviction, that's all I need to know.  And they

20  are going to have to argue to me why that is not good enough.

21  And it can't be because it comes from Israel.  It has to be

22  because there is some reason to believe that that doesn't meet

23  the standard requirements of admissibility.  Whether or not you

24  need a witness to set that foundation is a different question.

25  But, you know, at this point, if you need further guidance, or

1   ruling with regard to those convictions, then indicate to them

2   which convictions you intend to offer, and see if they have an

3   articulable reason to object.  And if they do, then you tell me

4   why it is admissible, and they can tell me why it is not.  And,

5   quite frankly, not determinative by what the conviction is,

6   it's determined by -- I don't think.  It is determined

7   by whether or not it reliably reflects an actual conviction

8   that occurred.  If it does, there are not a whole lot of

9   legitimate objections to it.  Even if it was, as they say, even

10  if a defendant was framed, it still doesn't change the fact

11  that there is a conviction.  So I handle convictions the same

12  way.  You couldn't come in, now, and litigate whether or not

13  the person is guilty of it or not guilty of it, if the limited

14  purpose of the conviction is to show the witness or person is,

15  in fact, convicted.

16          Now whether you want to argue whether or not that is

17  evidence that indicates there was a legitimate conviction or

18  illegitimate conviction, or whether or not what's supposed to

19  be inferred from that conviction, you know, that's a different

20  issue, and that may be an argument about what the conviction is

21  being offered -- or the purpose it is being offered.  But if

22  you can articulate for me, if you think that that's going to be

23  an issue, in a letter, tell me you think that they are going to

24  have a problem with this, and you want an early ruling, during

25  the trial or before trial with regard to whether it is likely

1    that you are going to get that in based on what you say it is,

2    and based on some foundation to demonstrate that it is, in

3    fact, what it is.  And obviously, if it's written on a yellow

4    pad that you found on the street, that is not good enough, give

5    me something else.  And you have to tell me what basis it is

6    admissible under the rules.

7         MR. YALOWITZ:  I think we'll get you a letter as soon

8    as we can put it together.  It won't be overly long.  And it

9    will, I think, be helpful to you.  And I'm sure it will be

10   helpful to me.

11        THE COURT:  I know what the defense is going to say,

12   they are going to say, Judge, I don't want them to just keep

13   slipping stuff into the record --

14        MR. ROCHON:  No, Judge, I apologize for interrupting

15   you.  But the reason I stand when Mr. Yalowitz is talking, is

16   not to disagree with him.  I was going to wait till he sat down

17   to disagree with him.  I agree with him.  I think it would be

18   helpful to the Court if he were to provide the Court with that

19   which he seeks to admit.  And so I don't object.

20        THE COURT:  You know, I assumed that you guys were

21   already beyond that, but --

22        MR. ROCHON:  I don't think the Court has had the

23   benefit of seeing how convictions are produced there.  And I

24   think it would be helpful to your analysis, so I support the

25   request.

1          THE COURT:  Fine.  If you want to, put it in a binder

2    and send it to me.  Then I'll look at it.

3          Anything else?

4          MR. YALOWITZ:  I think we won't get that to your Honor

5    before Thanksgiving, but --

6          THE COURT:  Okay, I have plenty to do between now and

7    then.

8          MR. YALOWITZ:  Okay, I don't have anything else,

9    unless your Honor has questions.

10         THE COURT:  Let me see what issues need to be

11   addressed at this point, or what comments are going to be made

12   by defense.

13         MR. ROCHON:  Thank you, your Honor.

14         First, a few administrative things.  And then some

15   areas where we might disagree with the plaintiffs.

16         The first is just on the witnesses and the length of

17   trial.  There is a lot of civilian witnesses we'll be calling.

18   It's gonna be very short crosses.  They should be ready to roll

19   these people in and out.  I figure everyone knows that, but I

20   thought I would say it.

21         Hopefully, we are not going to be silly enough to be

22   cross-examining the people who suffered from these injuries a

23   long time, when they don't offer real evidence as to liability.

24   I am not giving away any state secrets there.

25         I think the trial will go relatively quickly, more

1    quickly than estimated by the plaintiffs.

2            And the second, and you can decide this later, but on

3    February 12, given that we are all from out of town, it would

4    be nice for us to not come up and have a -- you get the point.

5            THE COURT:  The 13th, you are saying.

6            MR. ROCHON:  Yeah, I will be pushing you for a

7    five-day weekend.

8            THE COURT:  I understand that.  And as I say, usually

9    my approach is usually this way.  If we get a good start, and

10   it looks like we're ahead of what I told the jury we were going

11   to do, then I am comfortable doing that, and may be comfortable

12   having that.  And I am usually in a situation where I give the

13   jury what I think is the outside time, and we end up not using

14   that much time, so they are not disappointed.  They are happy

15   that we have efficiently moved forward.

16           We'll talk about that as we get closer.  But it would

17   be -- if we are moving efficiently, I think even the jurors

18   might appreciate that long weekend.

19           MR. ROCHON:  Yes.  And you would look like a hero.

20           So the other thing is, on the anonymous jury, do you

21   plan on telling the jury that the parties don't know their

22   names and addresses, or do you --

23           THE COURT:  Yes.  I intend to tell the jurors that I

24   am not disclosing their names and addresses to anyone, not even

25   the parties, because I want them to fill it out, and I'm going

1    to concentrate on what I'm going to do.  That's another reason

2    why I want to bring them in and speak with them before they

3    even start the questionnaires.

4          MR. ROCHON:  Yeah.

5          THE COURT:  Because I want them to have that.  And

6    I'll say it in an appropriate way that, look, you know, this is

7    what the case is about.  And then I will ask you to fill out

8    questionnaires.  And I would like you to be obviously honest

9    and straightforward about your answers.  This is a process.

10   And I emphasize to the jurors, even when I, you know, regularly

11   pick jurors that, look, this is not a process for the parties

12   or the Court to figure out whether you can be a fair and

13   impartial juror.  We don't know.  We can only go by what you

14   say.  It's for you to determine whether you can be a fair and

15   impartial juror, and to let us know.  So I want you to think

16   about these questions, and be honest and candid, and let us

17   know so we can make sure.  Because we can't -- if we have a 10,

18   12 week trial, we can't find out eight weeks into the process

19   that this is something that is difficult or not possible for

20   you to do, you can't be a fair and impartial juror at that

21   time.  So, you know, as I say, I have enough trial experience

22   that I know how to appropriately deal with the jurors and to

23   emphasize the point, but not prejudice the parties.  So I think

24   if I can give them that assurance, right up front, then they

25   can be much more comfortable to be forthright and candid with

1    you in these questionnaires, or in further questions if we have

2    to individually question.

3         MR. ROCHON:  And recognizing that if we didn't prevail

4    on that issue, I think having not prevailed, and I'm not trying

5    to reargue it, it is much more important we do that with you,

6    live, to see how they react to it.

7         THE COURT:  It is unclear to me, from looking at the

8    questionnaire, what your position really was.  Because the

9    questionnaire was set -- I mean you objected to an anonymous

10   jury.  And I was not sure whether or not you were simply

11   concerned about not, you know, setting this up so that the jury

12   is anonymous, sequestered, and thinks that there is something

13   nefarious going on, or some dangers to them, or something like

14   that.  But in the questionnaire, I didn't -- and I don't have

15   it in my mind clearly, the yellow and the blue, but I didn't --

16   I mean you didn't object to the cover sheet that said -- and I

17   don't know if you -- you may have rejected the language that

18   said that you are giving this information and only the Court is

19   going to have it.  But I don't remember if you objected to

20   that.

21        MR. ROCHON:  We did object.  And I understand.  I am

22   not trying to re --

23        THE COURT:  If you feel strongly about it, I'm willing

24   to hear you further on that.  Because if you think that there

25   is some prejudice, that there may be to your client if that is

1    done.  But, you know, quite frankly, I think you're going to

2    lose what would otherwise be more of an opportunity to really

3    assess the questionnaires and really determine, particularly if

4    I give, as they say, I let you eyeball the jurors beforehand.

5    I'm not sure if you want to give up that opportunity to let

6    them be as candid as they can be, because they know that they

7    are not publicly being disclosed, their names and addresses,

8    and the individuals, who they are.

9            MR. ROCHON:  Our preference would be to get the names

10   and addresses.  I do hear the Court.  And I have done it all

11   ways, myself, in terms of trial experience.  Our preference

12   would be to know the names and addresses and have them not be

13   made publicly available, only counsel would know those names

14   and addresses.  Because I think it helps the counsel in picking

15   a jury.  That's our preference.  Recognizing, you can go many

16   ways.  And, look, I have to be honest, this is one where you

17   have a fair amount of discretion.  I'm going to save the other

18   arguments for where I think maybe your discretion is more

19   limited.  So we'll respect the Court's approach to it.  Our

20   preference is to get the names and addresses and have them not

21   shared with others.

22           THE COURT:  Okay.  All right.

23           MR. ROCHON:  In terms of juror issues, the one thing I

24   was going to ask is if the Court sometimes tells the jurors to

25   use one of the Court's entrances, and all the parties and their

1    witnesses and their hangers-on to use the other so we don't

2    have inadvertent contacts.  I suggest that might be a workable

3    solution here.

4            THE COURT:  That might be one of the approaches that I

5    take.

6            MR. ROCHON:  Okay.  Now, getting to the more

7    controversial issues.

8            On your ruling on the Daimler Gucci, I'm not trying to

9    reargue it.

10            THE COURT:  That's fine.

11            MR. ROCHON:  The motion for summary judgment, we also

12    included that as an issue.  You have obviously indicated your

13    views on this issue more than once.  We also moved for summary

14    judgment on personal jurisdiction.  Your order did not

15    explicitly say that was denied.  You made your point very

16    clearly.  I take it that aspect of our motion for summary

17    judgment is --

18            THE COURT:  Yes, that aspect is denied.  Obviously, if

19    my position, if my ruling is that there is personal

20    jurisdiction, clearly no way I can grant summary judgment, you

21    know, inconsistent with that.

22            MR. ROCHON:  Right.  I wanted to clear that up.  Our

23    client is considering whether it would seek appellate relief on

24    that issue, and therefore wanted to solidify it.

25            THE COURT:  Sure.

1          MR. ROCHON:  Next issue is, the focus is, and let me

2     be clear before Mr. Yalowitz says anything.  I know that won't

3     stop this schedule.  We are not pretending it would stop the

4     schedule for moving forward.

5          There is issues we would like to get guidance from the

6     Court on sooner, rather than later.  I thought I would tell you

7     what they are.

8          THE COURT:  Okay.

9          MR. ROCHON:  The jury instructions on material support

10    and respondeat superior are the heart of the jury instructions.

11    There is a lot of other dreck.  It is important dreck, but

12    that's the heart.  Knowing where the Court is on those two

13    instructions, I think would help both sides

14    a lot.  So if we can put those up front, I think everybody

15    would benefit.

16         THE COURT:  What I will attempt to do, is to at least

17    give you some draft of the substantive instruction by the 16th

18    of December.  And whether or not we can accomplish all of that,

19    you know, literally, I have to -- we've already begun, weeks

20    ago, spending the majority of my time on this case, as opposed

21    to other cases.  And I anticipate that that's going to continue

22    to be the case, and even be the case through the holidays.  So,

23    you know, I'll try to do that.  But what I will do, then, I

24    will focus on trying to give you some draft before, or by that

25    time, of the substantive instruction.  And I will even try to

1    put the whole thing together, the standard sort of instructions

2    about burden of proof, and witnesses, and that kind of stuff.

3    I'll just redecide so we can refocus on it.  We can discuss the

4    kind of substantive instruction.

5              MR. ROCHON:  That would be great.  And our main area

6    of focus is just --

7              THE COURT:  Let me stop you for a second.  I'm not

8    sure that I got a proposed instruction from you on that.  Did

9    I?

10             MR. ROCHON:  Yes, sir.

11             MR. HILL:  They may have been tendered with the

12   objections.

13             THE COURT:  Right, it was tendered with the

14   objections.

15             MR. HILL:  -- plaintiff's theory, when we were

16   proposing them.

17             THE COURT:  My recollection was that I got a set of

18   proposed jury instructions from the plaintiff, but I did not

19   get a separate set of jury instructions from the defense.

20             MR. ROCHON:  We did.  But our objections on those

21   are -- our views are made known in our objections.

22             THE COURT:  All right.  So you fully propose, in your

23   objections, what the substantive instructions should be with

24   regard to the issues still in the case.

25             MR. ROCHON:  Yes.

1            And, Judge, a lawyer told the truth today.  That's all

2    I have.

3            THE COURT:  Okay.  Anything else?

4            As I say, this is where I am focused.  This is how I

5    am approaching it.  You should figure out what's the most

6    efficient way, and what you need to know early, and so we can

7    discuss that.  And if there is something that we forgot to

8    discuss here, give me a letter, and then I'll quick respond.

9    But, otherwise, we will make progress between now and

10   December 16.  And then we will have as much as we can determine

11   and discuss further on the December 16 on those issues that are

12   relevant to trying an efficient case, okay.

13           All right, thank you all.

14           One thing I will do, I'm going to push the

15   December 16th time to 11:00.  Because the problem is any time

16   before trial, I'm really not available, because I'm trying to

17   get things done before the trial starts, so I'll probably have

18   a couple of matters.  Let's say 11:00 o'clock.

19           ALL:  Thank you, your Honor.

20           (Adjourned)

21

22

23

24

25