

PLAINTIFF'S EXHIBIT
356

Israel Defense Forces
Before the Military Court
In Beit El
Before a panel

| | |
|---|---|
| Court Case: | 3478/02 |
| Prosecution case: | 422/02 |
| Detailed incident case: | 2504/02 Ariel |
| | 2505/02 Ariel |
| | 2506/02 Ariel |
| | 2507/02 Ariel |
| | 2508/02 Ariel |
| | 4753/01 Afula |
| | 1073/02 Binyamin |
| | 412/02 Binyamin |
| | 580/02 Shafat |
| | 2069/02 Jerusalem Special |
| | Duties Department |

### In the trial between the military prosecutor – the Prosecutor

### -v-

Abdel Kariem Rateb Yunes Aweis

Identity No. 980136675, born August 26, 1970, a resident of Jenin / Ramallah

detained since March 30, 2002

### -The Defendant-

### Amended Indictment

**The above mentioned Defendant is accused hereby of committing the following offenses**:

**First count**:

**Nature of the offense** Membership and activity in an illegal organization, an offense pursuant to Regulations 84(1)(A) and 85(1)(A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, from October 2000 until the day of his arrest, was a member or acted as a member of an organization that is an illegal organization, as follows:

[Stamp] P 5: 17

Prosecution Case 422/02 Amended

1

The above mentioned Defendant, during the period set forth, was a member of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, which is an illegal organization.

The Defendant operated within the "Al Aqsa Martyrs Brigades" as will be described in the following counts of the indictment.

[Stamp] P 5: 17 [continued]

Prosecution Case 422/02 Amended

2

**Second count**: Holding an office in an illegal organization, an offense pursuant to Regulation 85(1)(B) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, from late 2000 until the day of his arrest, managed or helped in the management of an illegal organization, or held any office or position in or under the authority of an illegal organization, as follows:

The above mentioned Defendant, from late 2000 until he moved from Jenin to Ramallah in December 2001, served as the head of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, which is an illegal organization, in the Jenin area.

In December 2001 the Defendant moved to Ramallah and then left the above mentioned function and joined the leadership of the "Al Aqsa Martyrs Brigades" in the Ramallah area.

### Third count:

**Nature of the offense**: Execution of a service for an illegal organization, an offense pursuant to Regulation 85(1)(C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, from late 2001 until the day of his arrest or thereabouts, did any work or performed any service for an illegal organization, as follows:

The above mentioned Defendant, in late 2001, recruited into the ranks of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, which is an illegal organization, his brother Hassan, Majdi Abu Alwafa and Mahmoud Abu Juldi. The Defendant appointed the above mentioned persons to be responsible for the activity of the "Al Aqsa Martyrs Brigades" in Jenin. After the Defendant moved to Ramallah in late 2001, the Defendant continued to be in constant contact with the above mentioned persons and also made sure to send to each of them the amount of NIS 1,000 once a month for the purposes of their activity in the said organization.

### Fourth count:

**Nature of the offense**: Possession of a firearm, an offense pursuant to Section 53(A)(1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 5: 18

Prosecution Case 422/02 Amended

3

**Details of the offense**: The above mentioned Defendant, in the Area, from 1994 until the day of his arrest, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is designed to cause or is capable of causing death or severe injury, without a permit certificate granted by or for a military commander, as follows:

The above mentioned Defendant, during the above mentioned period, both in Jenin and in Ramallah, possessed a large number of weapons of different types, without a permit certificate granted by or for a military commander.

Among other things, the Defendant possessed at different periods of time, from a month to several years, a Belgian "14" pistol, a "16" pistol, a Beretta 16 pistol, a 9 mm Halwani pistol, a revolver, a 9 mm .22 caliber pistol [sic], a 9 mm pistol, a Star pistol, an M-16 assault rifle, an Uzi submachine gun, [and] a Kalashnikov assault rifle.

**Fifth count:**

**Nature of the offense**: Throwing of stones at a person or property, an offense pursuant to Section 53A(2) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, during late 2000 or thereabouts, threw something, including a stone, at a person or property, with the intent of harming a person or property, as follows:

The above mentioned Defendant, during the period set forth, in the Jenin area or thereabouts, along with Yusef Rashdi Kaisi, Maher Mohamed Nubani and others, on many different occasions, on a daily basis, threw stones at IDF soldiers that were at the site with the attempt of hurting them.

[Stamp] P 5: 18 [continued]

Prosecution Case 422/02 Amended

4

**Sixth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in late October 2000 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time above, in Jenin or thereabouts, met Yusef Rashdi Kaisi, Mohamed Aref Fakiya, known as "Alaref". The Defendant and his above mentioned colleagues conspired to carry out a shooting attack at IDF soldiers that were standing at the "Altala" point on the Jenin bypass road, with the intent of causing the death of the above mentioned IDF soldiers. The Defendant undertook to provide for the purpose of carrying out the above mentioned shooting attack a Kalashnikov assault rifle, which he possessed within his work in the General Intelligence of the Palestinian Authority.

The Defendant enlisted for the purpose of the said attack Akrama Satiti, Mohamed Abed Rahman Amuri, Ala'a Sabar, Mastem Sebar and Yusef Kaisi.

The Defendant, along with all of his above mentioned colleagues, all of whom were armed with Kalashnikov and M-16 assault rifles, drove in his vehicle to the place at which the shooting attack was planned. The Defendant and his colleagues positioned themselves at the site and the Defendant briefed his colleagues to shoot at IDF soldiers with the aim of causing their death. The Defendant and his colleagues fired at the above mentioned IDF soldiers from a distance of approximately 100 meters, with the aim of causing the deaths of the IDF soldiers. Immediately after the Defendant and his colleagues opened fire as set forth above, IDF forces that were present at the site returned fire on a massive scale and the Defendant along with his above mentioned colleagues fled back to Jenin.

**Seventh count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 5: 19

Prosecution Case 422/02 Amended

5

**Details of the offense:** The above mentioned Defendant, in the Area, in early November, 2000 or thereabouts, a few days after performing that which is attributed to him in the previous count of the indictment or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in Jenin or thereabouts, met Mohamed Aref Fakiya, alias Alaref. The Defendant received from the above mentioned Yusef Fakiya a landmine for the purpose of carrying out an attack against Israeli vehicles or against IDF soldiers. On the following day, in the early morning hours, the above mentioned Defendant, along with Mohamed Fakiya, Yusef Rashadi and Maher Mohamed Nubani, placed the above mentioned landmine at the Jalameh Junction on the Jenin bypass road, with the aim of causing the deaths of IDF soldiers who were traveling at the above mentioned place. At the time of laying the above mentioned landmine, the Defendant and his above mentioned colleagues placed it in such a manner that Palestinian civilians would not step on the above mentioned landmine by accident. Thereafter, the Defendant and his above mentioned colleagues stayed [at the] site and observed it in order to assess the results of the attack.

At noontime, IDF soldiers who were at the site discovered the above mentioned landmine and detonated it.

### Eighth count:

**Nature of the offense:** Manufacturing a firearm, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378) 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2001 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the time set forth, following the "failure" of the shooting attacks at IDF forces in the Jenin area, decided to carry out attacks against the Israeli targets using mortars. The above mentioned approached Maatsam Sabar, a turner by trade, and asked the latter to manufacture a mortar. The Defendant and Maatsam approached Mahmoud Khalil Twalba, a military operative in the Palestinian Islamic Jihad Organization, and the latter agreed to assist in the manufacturing of the mortar. Thereafter, the Defendant and Matsam Sabar contacted Tarek Sharib, the owner of a lathe, and requested the manufacture of a pipe for them that would serve as the muzzle of the mortar.

[Stamp] P 5: 19 [continued]

Prosecution Case 422/02 Amended

After the Defendant and his colleague received the requested pipe from the above mentioned person, Matsam soldered the parts of the mortar and also produced a baseplate for the mortar.

Thereafter, the Defendant with Matsam and Ala'a Sabar and Nadal Ibrahim Badawi, known as "Abu Adnan", manufactured mortar bombs.

[Stamp] P 5: 19 [continued]

Prosecution Case 422/02 Amended

7

**Ninth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** the above mentioned Defendant, in the Area, on May 2, 2001 or about that time, attempted to cause the intentional death of another person as follows:

The above mentioned Defendant, at the said time, in Jenin or thereabouts, with Ala'a Sabar, Nadal Ibrahim Badawi, known as "Abu Adnan", and with Matsam Sabar, decided to carry out mortar bomb firing at the settlement Kadim with the intent of causing the deaths of residents of the above mentioned settlement.

In order to carry out the above mentioned plan, the Defendant and his above mentioned colleagues loaded the mortar and the mortar bomb, which they had manufactured as stated in the previous count of indictment, onto the vehicle of the Defendant and traveled towards the settlement Kadim.

At a distance of approximately 500 meters from the settlement Kadim, the Defendant and his above mentioned colleagues prepared the above mentioned mortar for firing and the Defendant lit the fuse of the mortar bomb, with the intent of the above mentioned mortar bomb hitting residents of the settlement of Kadim and causing their deaths. The above mentioned mortar bomb was fired, but did not reach the settlement Kadim and dropped approximately 200 meters from the Defendant and his colleagues.

Immediately subsequent to firing the mortar bomb, the Defendant and his colleagues collected the mortar and returned to Jenin with it.

**Tenth count:**

**Nature of the offense:** Manufacturing a firearm, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378) 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 5: 20

Prosecution Case 422/02 Amended

8

**Details of the offense**: The above mentioned Defendant, in the Area, on May 2, 2001 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the above mentioned time, in Jenin or thereabouts, with Matsam Sabar, Ala'a Sabar and Nadal Ibrahim Badawi, known as "Abu Adnan", manufactured two mortar bombs.

**Eleventh count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on May 3, 2001 or at about that time, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, in Jenin or thereabouts, with Muhammad Amouri, Akrama Satiti and Matsam Sabar, decided to fire a mortar bomb at the "Bazak" IDF camp with the intent of causing the death of IDF soldiers.

For the purpose of carrying out the above mentioned plan, the Defendant and his above mentioned colleagues loaded the mortar and the mortar bombs, which they had manufactured as stated in the previous count of indictment, onto the vehicle of the Defendant and traveled towards the "Bazak" IDF camp.

At a distance of approximately 300 meters from the "Bazak" IDF camp, the Defendant and his above mentioned colleagues prepared the above mentioned mortar for firing and fired two mortar bombs at the above mentioned IDF camp, with the intent of the above mentioned mortar bombs hitting the above mentioned IDF camp and causing the deaths of IDF soldiers. The above mentioned mortar bombs did not hit the above mentioned IDF camp and dropped short of it.

Immediately after the firing of the mortar bombs, the Defendant and his colleagues collected the mortar and returned with it to Jenin.

[Stamp] P 5: 20 [continued]

Prosecution Case 422/02 Amended

9

**Twelfth count:**

**Nature of the offense:** Manufacturing a firearm, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378) 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on May 3, 2001 or about that time, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the said time, in Jenin or thereabouts, with Matsam Sabar, Ala'a Sabar and Nadal Ibrahim Badawi, known as "Abu Adnan", manufactured two mortar bombs.

**Thirteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on May 4, 2001 or about that time, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in Jenin or thereabouts, with Haj Ali Safouri, Muhammad Amouri, Akram Satiti and with Matsam Sabar, decided to carry out a mortar bomb firing attack at the settlement Kadim with the intent of causing the death of residents of the above mentioned settlement.

For realizing the above mentioned plan, the Defendant and his above mentioned colleagues loaded the mortar and the mortar bombs, which they had manufactured as stated in the previous count of the indictment, onto the vehicle of the Defendant and traveled towards the settlement Kadim.

The Defendant and his above mentioned colleagues prepared the above mentioned mortar for firing and the Defendant and his colleagues fired two mortar bombs at the settlement Kadim with the intent of the above mentioned mortar bomb hitting the residents of the settlement Kadim and causing their death.

[Stamp] P 5: 21

Prosecution Case 422/02 Amended

10

The above mentioned mortar bombs did not hit the settlement Kadim.

Immediately after the firing of the mortar bomb, The Defendant and his colleagues collected the mortar and returned to Jenin with it.

**Fourteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on May 9, 2001 or about that time, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, at the Dir Abu Saif junction near Jenin, with Muhammad Amouri and with Matsam Sabar, fired a mortar bomb at an Israeli tank that was at the above mentioned junction, with the intent of causing the death of IDF soldiers who were inside that tank.

[Stamp] P 5: 21 [continued]

Prosecution Case 422/02 Amended

11

## Fifteenth Count:

**Nature of the offense:** Manufacturing a bomb, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in October 2001 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the said time, in Jenin or thereabouts, met Muhammad Abu-Tul. Muhammad Abu-Tul informed the Defendant that he was in contact with a cell from Tzur Hanna, whose members wished to carry out a bombing attack inside the State of Israel, for which purpose they needed an explosive device. The Defendant also met two members of the above mentioned "Israeli" cell in Jenin.

The Defendant agreed to help on the issue and manufactured for the above mentioned cell, an explosive device weighting 15 kg. for carrying out the attack planned within the State of Israel. The Defendant delivered the above mentioned explosive device to Muhammad Abu-Tul, who came with one of the members of the "Israeli" cell. The Defendant also explained to that person how to operate the above mentioned explosive device.

Thereafter, Abu Tul reported to the Defendant that the above mentioned cell placed the explosive device, which the Defendant had manufactured, at Golani Junction inside the State of Israel, with the aim of carrying out a bombing attack. The explosive device exploded, but nobody was hurt.

## Sixteenth count:

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in the second half of 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, with Akrama Satiti, decided to carry out a shooting attack against an Israeli vehicle on the Jenin bypass road with the intent of causing the death of Israeli citizens. The Defendant and his above mentioned colleague arrived at the Jenin bypass road, armed with a Type 250 machine gun. The Defendant and his colleagues noticed an IDF jeep that was driving on the Jenin bypass road.

[Stamp] P 5: 22

Prosecution Case 422/02 Amended

12

The Defendant and his above mentioned colleague opened fire at the above mentioned IDF jeep with automatic gunfire with the intent of causing the death of IDF soldiers who were traveling in the above mentioned jeep. Immediately after carrying out this shooting attack, the Defendant and his colleague fled the scene.

## Seventeenth count:

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in October 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, at the said time, in Jenin or thereabouts, met Haj Ali Safouri and Majd Abu Sharar. During the said meeting, Majd Abu Sharar said that he was very familiar with the settlement Kadim and suggested that the Defendant and Ali Safouri bring him two people to carry out a large attack with him inside the settlement Kadim and cause the deaths of as many people as possible.

2. The Defendant and Ali Safouri agreed to the said proposal. The Defendant and Ali Safouri approached Samer Rateb Yunes Aweis, Mustafa Abu Siria and Rashid and recruited them to carry out the planned attack inside the settlement Kadim, the Defendant and Ali Safouri explaining that it was a suicide attack.

3. According to the planning of the Defendant and of Ali Safouri, the three above mentioned people should have entered the settlement Kadim, murder IDF soldiers guarding the settlement, enter one of the houses of the settlement and murder all the occupants of the house. It was planned that thereafter, the attackers would barricade inside the house and fight IDF forces until they would meet their deaths.

4. The Defendant and Ali Safouri filmed the three above mentioned people using a video camera in preparation for carrying out the planned attack.

[Stamp] P 5: 22 [continued]

Prosecution Case 422/02 Amended

13

5. Thereafter, according to the instructions of the Defendant and of Ali Safroui, Majd Abu Sharar picked up the three above mentioned people and departed with them in a taxi towards the settlement Kadim for carrying out the planned attack.

6. After two hours, the above mentioned people returned and reported to the Defendant and to Ali Safouri that they had not succeeded in penetrating the settlement Kadim due to the presence of IDF tanks at the site.

7. On the following day, the Defendant and Ali Safouri handed Majd Abu Sharar a video camera so that he could film the settlement Kadim. After Majd Abu Sharar did so, the Defendant and Ali Safouri watched the videotape and planned the attack again.

8. On the following day, the Defendant recruited for carrying out the attack in the settlement Kadim Iad Nadir Arsan Omar and Wa'al Ahmad Salem Jalamna. Using a video camera the Defendant and Ali Safouri filmed the two above mentioned people in preparation for performing the planned attack.

9. On the following day, according to the instruction of the Defendant and Ali Safouri, Majd Abu Sharar picked up the two above mentioned people and the above mentioned Rashid, armed with weapons that had been given to them for carrying out the attack by the Defendant and Ali Safouri. After a few hours, the above mentioned people returned and reported that they had not carried out the planned attack because they were afraid of dying before entering the settlement Kadim, due to the presence of large IDF forces at the site.

**Eighteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in early November 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in the Jenin Refugee Camp or thereabouts, with Akrama Satiti, fired at IDF soldiers who entered the above mentioned refugee camp, with the intent of causing the death of IDF soldiers.

[Stamp] P 5: 23

Prosecution Case 422/02 Amended

14

The Defendant fired an M-16 assault rifle, whereas Akrama Satiti fired a Type 250 machine gun.

**Nineteenth count: (Detailed Incident 4753/01 Afula)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on November 27, 2001 or thereabouts, caused the intentional death of another person, as follows:

1. In early November 2001, in Jenin or thereabouts, the Defendant met Ali Saliman Safouri. The Defendant and Ali Safouri decided to execute an attack inside the State of Israel with the intent of causing the death of as many Israeli civilians as possible, in revenge for the death of you [sic] Majdi Jaradat and Akrama Satiti.

2. Ali Safouri informed the Defendant that he had two people who were prepared to carry out a suicide attack in Afula in the State of Israel, these people firing at Israeli citizens in Afula with the aim of causing the deaths of as many people as possible and continuing to fire until killed by Israeli security force gunfire.

3. The Defendant agreed to the request of Ali Safouri to supply weapons to the two above mentioned suicide terrorists for carrying out the planned suicide attack.

4. Following the above mentioned consent, the Defendant provided Ali Safouri two Kalashnikov assault rifles for executing the planned attack. The Defendant received one of these weapons within his work in the general intelligence of the Palestinian authority, whereas the Defendant purchased the other weapon for executing the planned attack for NIS 8,000 from Fouad Bisharat, who was working in Force 17 of the Palestinian Authority.

5. Using a video camera, the Defendant and Ali Safouri filmed Mustafa Abu Siria and Abd-Al Kariem Omar Ahmad (Abu-Na'asa) before carrying out the planned suicide attack. After the filming, the Defendant gave each of these persons a sum of NIS 500 for purchasing new clothes for carrying out the planned suicide attack.

6. On the following day, the Defendant met Moueid Ali Muhammad Jardat and asked the latter to "clear the way" from Jenin to Afula for the two above mentioned suicide terrorists in order for them to be able to arrive in Afula without

[Stamp] P 5: 23 [continued]

Prosecution Case 422/02 Amended

15

being caught by the Israeli security forces and carry out the planned attack. Moueid agreed to the request of the Defendant.

7. For driving the two suicide terrorists to Afula, the Defendant and Ali Safouri purchased a Subaru vehicle for NIS 4,500 and placed the two Kalashnikov rifles described above into the automobile with 8 magazines filled with cartridges.

8. On November 27, 2001, Moueid Jardat, in accordance with the instructions of the Defendant, with Muhammad Jalamna and Hassan Rateb Yunis Aweis, accompanied Mustafa Abu-Siria and Abd-Al Kariem Omar Ahmad (Abu-Na'asa), who were armed with Kalashnikov assault rifles, which the Defendant had supplied as stated above, from Jenin to a place close to the territory of the State of Israel.

9. From the above mentioned place, Mustafa Abu-Siria and Abd-Al Kariem Abu Na'asa continued to travel in a Subaru vehicle towards Afula for executing the planned suicide attack.

10. At about 11:30 a.m., on November 27, 2001 or thereabouts, Mustafa Abu-Siria and Abd-al Kariem Abu-Na'asa reached the Area of the central bus station in Afula. There, the two above mentioned individuals alighted from their vehicle and opened fire at people who at the site, using the Kalashnikov assault rifles which were supplied to them for this purpose by the Defendant, with the intent to cause the deaths of as many people as possible.

11. Mustafa Abu-Siria and Abd-Al Kariem Abu-Na'asa continued their shooting spree in the central station area in Afula until they were killed by Israeli security force personnel who arrived at the site.

12. The above mentioned Defendant, by his acts described above, caused the intentional death of the late Michal Mor, who was killed by gunshot wounds from rounds that were fired by Mustafa Siria and Abd-Al Kariem Abu Na'asa from weapons that were supplied for this purpose by the Defendant.

13. After the Defendant and Ali Safouri learned of the results of the attack described above, Ali Safouri contacted Ramadan Shalah, a member of the Palestinian Islamic Jihad Organization, and informed the latter that the attack had been executed as a cooperation effort between the "Al Aqsa Martyrs brigades" and the Palestinian Islamic Jihad.

**Twentieth count: (Detailed Case 4753/01 Afula)**

[Stamp] P 5: 24

Prosecution Case 422/02 Amended

16

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on November 27, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, by his acts described in the nineteenth count of the indictment, caused the intentional death of the late **Noam Gozovsky**, who was killed near the central bus station in Afula by gunshot wounds from rounds that were fired by Mustafa Siria and Abd-Al Kariem (Abu Na'asa) from weapons that were supplied for this purpose by the Defendant.

**Twenty first count: (Detailed incident 4753/01 Afula)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on November 27, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, at the place stated in the nineteenth count of the indictment, by his acts described in the nineteenth count of the indictment, attempted to cause the deaths of as many people as possible.

As a result of gunshot wounds from rounds that were fired by Mustafa Siria and Abd-Al Kariem (Abu Na'asa) from weapons that were supplied for this purpose by the Defendant, as described in the nineteenth count of the indictment, **ten** people were severely wounded and **dozens** of other people were slightly to moderately hurt.

[Stamp] P 5: 24 [continued]

Prosecution Case 422/02 Amended

**Twenty second count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in November 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, with Ala'a Sabar, decided to carry out a shooting attack at an Israeli vehicle on the Jenin bypass road with the intent of causing the deaths of Israeli citizens. The Defendant and his above mentioned colleagues arrived at the Jenin bypass road, the Defendant armed with a Kalashnikov assault rifle and his colleague with an M-16 assault rifle. The Defendant and his colleague noticed a white Israeli vehicle of Renault Express type, which was traveling on the Jenin bypass road towards the settlement Kadim. The Defendant and his above mentioned colleague opened fire at the above mentioned vehicle with automatic gunfire from approximately 100 meters away with the intent of causing the deaths of the occupants of the vehicle. A number of bullets that were fired by the Defendant and his colleague hit the above mentioned vehicle and it was miraculous that nobody was hurt. Immediately after carrying out the above mentioned shooting attack, the Defendant and his colleague fled from the site.

**Twenty third count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in November 2001, about two days after committing the act attributed to him in the previous count of the indictment, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, with Ala'a Sabar, decided to carry out a shooting attack at an Israeli vehicle on the Jenin bypass road with the intent of causing the death of Israeli citizens. The Defendant and his above mentioned colleague arrived at the Jenin bypass road, the Defendant armed with an M-16 assault rifle and each of his colleagues [sic] with an M-16 assault rifle.

[Stamp] P 5: 25

Prosecution Case 422/02 Amended

18

The Defendant and his colleague noticed an Israeli vehicle that was driving on the Jenin bypass road. The Defendant and his above mentioned colleague opened fire with automatic gunfire towards the above mentioned vehicle with the intent of causing the deaths of the occupants of the vehicle. Immediately after executing the above mentioned shooting attack, the Defendant and his colleague fled from the site.

## Twenty fourth count:

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late November 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, with Matsam Sabar, Yusef Rashdi Alkaisi and Mahar Alnoubani, decided to carry out a shooting attack at an Israeli vehicle on the Jenin bypass road with the intent of causing the deaths of Israeli citizens. The Defendant and his above mentioned colleague arrived in the vehicle of the Defendant at the Jenin bypass road, armed with automatic weapons. The Defendant and his colleagues noticed IDF soldiers standing next to the IDF jeep at one of the junctions. The Defendant and his colleague opened fire with automatic gunfire at the above mentioned IDF soldiers with the intent of causing their deaths. After the above mentioned IDF soldiers returned fire at the Defendant and his colleagues, the Defendant and his colleagues fled from the site.

[Stamp] P 5: 25 [continued]

Prosecution Case 422/02 Amended

19

## Twenty fifth count:

**Nature of the offense:** Attempt to manufacture a bomb, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** the above mentioned Defendant, in the Area, in December 2001 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the above mentioned time, in Jenin or thereabouts, attempted to manufacture explosives from chemicals, which he had purchased from Zid Yunes. In the end the Defendant was unable to manufacture explosives. The Defendant planned to use the explosives, which he had tried to manufacture, against IDF forces, if they would attempt to enter the Jenin refugee camp.

## Twenty sixth count:

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, during 2001 or thereabouts, traded or otherwise dealt with war materiel without a permit signed by or for the regional commander, as follows:

The above mentioned Defendant, during the said period, in Jenin or thereabouts, on many different occasions, met operatives of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, including Majdi Saoud Al-Wafa, Muhammad Abu-Tul.

The Defendant handed over to the above mentioned persons a large number of weapons of various types, ammunition, ready to use explosive devices, chemicals for manufacturing explosive devices and cellular telephone sets for use as activation mechanisms of the explosive devices.

The above mentioned persons reported to the Defendant the attacks that they had performed using the weapons, ammunition and explosive devices that they had received from the Defendant.

[Stamp] P 5: 26

Prosecution Case 422/02 Amended

**Twenty seventh count**:

**Nature of the offense**: Military training without a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, in 2001 or thereabouts, trained with, provided military training on or was provided military training on military weapons or exercises, movements or operation systems, as follows:

The above mentioned Defendant, at the said time, in Jenin or thereabouts, on different opportunities, met various operatives of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, including Majdi Saoud Al-Wafa, Muhammad Abu-Tul.

The above mentioned Defendant taught the above mentioned operatives how to manufacture explosives of various types, explosive devices and wireless activation mechanisms for the explosive devices from cellular telephone handsets.

[Stamp] P 5: 26 [continued]

Prosecution Case 422/02 Amended

21

**Twenty eighth count**:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in February 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts, conspired with Muhammad Naifa, known as "Abu Rabia", Muhannad Abu Halawa and Faouzi Marar, senior military operatives in the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, to carry out a shooting attack in Atarot, with the intent of causing the deaths of Israeli citizens. Initially, the Defendant and his above mentioned colleagues planned to carry out the above mentioned attack on one of the bypass roads near Ramallah, but after making a number of observations, in which the Defendant participated, it was decided that due to the presence of large IDF forces in the Area, the planned attack would be carried out in Atarot.

In the end, Muhannad Abu Halawa and Faouzi Marar departed to carry out the planned attack without the Defendant because the Defendant did not have room in the vehicle in which the above mentioned people departed to execute the attack.

**Twenty ninth count**:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense** The above mentioned Defendant, in the Area, in February 2002, a few days after the event described in the previous count of the indictment, or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, in Ramallah or thereabouts, conspired with Muhannad Abu-Halawa, a senior military operative in the "Al Aqsa Martyrs Brigades" organization, the military arm of the "Tanzim" of the Fatah, to carry out a shooting attack in Atarot, with the intent of causing the deaths of Israeli citizens.

[Stamp] P 5: 27

Prosecution Case 422/02 Amended

22

**Thirtieth count:** (Detailed Incident 412/02 Binyamin)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on July 27, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. Nasser Jamal Musa Shawish, in late January – early February 2002 or thereabouts, met Darin Abu Aisha (hereinafter: Darin) in Nablus, who informed him of her wish to carry out a suicide attack. In February 2002, in Ramallah, Nasser Shawish met Darin again, who again asked to carry out a suicide attack in order to cause the deaths of as many Israeli civilians as possible.

2. Nasser Shawish contacted the Defendant and Muhannad Abu Halawa and Muhammad Naifa and reported to them that there was a young woman who wanted to carry out a suicide attack. The Defendant stated that he agreed to send the above mentioned young woman to carry out the suicide attack and that he would prepare an explosive device for this purpose. The Defendant informed Nasser Shawish that he would have to photograph the young woman before she would go out to carry out the planned suicide attack.

3. Nasser Shawish brought Darin to the apartment of his brother, Khaled Shawish, which is in Bituniya. Nasser Shawish brought a photographer, Ahmad A'asi, to that apartment and with the latter photographed Darin before the commission of the planned suicide attack. During the photographing, Darin read a will.

4. On the following day, February 27, 2002, the Defendant came to the above mentioned apartment with Muhannad Abu Halawa and Muhammad Naifa (Abu Rabia). The Defendant and his above mentioned colleagues brought a belt with them, which contained an explosive device, for carrying out the planned suicide attack.

5. Because Darin refused to let a man fit the explosive belt onto her, Lila Muhammad Salah Bukhari, according to the request of Nasser Shawish, whose elder sister he was married to, fitted the above mentioned explosive belt onto the body of Darin. While Lila Bukhari was fitting the explosive belt on Darin's body, she noticed that one of the shoulder straps of the explosive belt was loose and secured it using a pin.

[Stamp] P 5: 27 [continued]

Prosecution Case 422/02 Amended

6. The Defendant and his above mentioned colleagues planned for Darin to reach the Israel Police station in Jaffa where she would detonate the explosive device that she was carrying on her person in order to cause the death of as many Israeli civilians as possible.

7. Faouzi Marar was recruited for transporting Darin into the State of Israel to carry out the planned suicide attack there with Musa Sari Hassouna and Hafez Abd-Al Fatah Makbal.

8. In the evening hours of that day, Nasser Shawish came with Lila Bukhari and Darin, who carried the above mentioned explosive belt on her body, to Abu Ria Hospital in Ramallah, where they met the Defendant, Muhammad Abu Rabia, Faouzi Marar and Muhannad Abu Halawa.

9. From there, the Defendant and the above mentioned persons transferred Darin to the A-Ram checkpoint. At the A-Ram checkpoint, Darin boarded a blue Subaru vehicle, license number 7797787, of Musa Sari Hassouna and Hafez Abd-Al Fatah Makbal, who arrived at the site at the request of Faouzi Marar, and were meant to transport Darin to the Israel Police station in Jaffa in order for Darin to activate the explosive device that she was carrying on her body there, thus intentionally causing the deaths of as many Israeli civilians as possible. The Defendant ordered Faouzi Marar not to disclose to the people who were recruited to transport Darin the true goal of the journey, but state that she was a "prostitute", and to convince the above mentioned people that this was the case, the Defendant ordered Faouzi Marar to offer the drivers to have sex with Darin on the way. The Defendant also instructed Darin not to talk with the drivers and not to disclose the aim of the journey to them.

10. On February 27, 2002, at about 10:27 p.m., at the "Maccabim" IDF and Israel Police checkpoint on highway 443, the vehicle in which Darin, Musa Hassouna and Hafez Makbal were in was stopped for inspection by IDF offices and Israel Police officers. At that moment, Faouzi Marad called Musa Hassouna and Hafez Makbal. The Defendant who was with Faouzi Marar during the call understood from the latter that the vehicle that Darin had been traveling in had been detained by the Israel Police. The Defendant asked Faouzi Marar to order Darin to activate the explosive device at the checkpoint in order to cause the deaths of the policemen posted there. When Darin understood that she would not succeed in crossing the above mentioned "Maccabim" checkpoint, enter the territory of the State of Israel and carry out the suicide attack as planned, she activated the explosive device that she was carrying on her body with the intent of causing the death of the Israel Police officers and IDF soldiers who were at this checkpoint.

[Stamp] P 5: 28

Prosecution Case 422/02 Amended

24

11. As a result of the detonation of the explosive device, which Darin carried on her body, an Israel Police officer, Mordechai Tal, was severely injured in his abdomen, and two other policemen, David Cohen and Shaul Cohen, were slightly injured.

12. Darin was killed on the spot as a result of the explosion of the above mentioned explosive device.

### Thirty first count:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in February 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts, delivered to Yasser Sawalha, Rami Zidan and Samer Rateb Yunes Aweis a Kalashnikov assault rifle and an M-16 assault rifle, in order for the above mentioned persons to carry out a shooting attack against the settlement Beit El using these weapons.

Thereafter, the three above mentioned persons returned the above mentioned weapons to the Defendant and reported that they had used them to carry out a shooting attack against the guard at the gate of the settlement Beit El.

### Thirty second count:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

[Stamp] P 5: 28 [continued]

Prosecution Case 422/02 Amended

25

**Details of the offense**: The above mentioned Defendant, in the Area, in February 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:[continued]

Operatives of the operational unit of the General Intelligence of the Palestinian Authority, Ahmad Dib Maarai, Taer Abu Murad and Samer Rateb Yunes Aweis, contacted the above mentioned Defendant, at the above mentioned time, asking for the Defendant to help them execute a shooting attack on the Ramallah bypass road leading to Beit El. The Defendant agreed to help execute the said attack. The Defendant, with Muhannad Abu Halawa, Nasser Muhammad Yusef Naji

[Stamp] P 5: 28 [continued]

Prosecution Case 422/02 Amended

26

(Abu Hamid) and Muhammad Naifa, known as "Abu Rabia", photographed the three above mentioned people before the execution of the planned attack. After a few days, Samer Aweis informed the Defendant that his colleagues had changed their minds and were not interested in carrying out the planned attack. In view of this, the plan for executing the said attack was canceled.

### Thirty third count:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in early March 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, in Ramallah or thereabouts, conspired with Muhannad Abu Halawa, a senior military operative of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, to carry out a shooting attack using an M-16 assault rifle against IDF soldiers posted at an IDF checkpoint near Bir Zeit, with the intent of causing the deaths of IDF soldiers.

The planned shooting attack was not executed due to the presence of large IDF forces in the Bir Zeit Area, the Defendant and his colleagues understanding that in view of the extent of IDF forces, their chances of escaping alive after committing the planned attack were nonexistent.

### Thirty fourth count:

**Nature of the offense**: Undermining the security of the Area, an offense pursuant to Section 53(A)(4) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in late February – early March 2002 or thereabouts, committed an act or default constituting an undermining or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory,

[Stamp] P 5: 29

Prosecution Case 422/02 Amended

institute or equipment used or capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the IDF, as follows:

The above mentioned Defendant, at the above mentioned time, in Ramallah or thereabouts, conspired with Muhammad Naifa, known as "Abu Rabia", and with Ahmad Taleb Mustafa Barghouti, known as "Alfransi", to send a suicide terrorist into the State of Israel, in order for him to carry out a suicide attack there with the intent of causing the deaths of as many people as possible. Muhammad Naifa introduced to the Defendant and his colleagues to Muhannad Alshaib, who was recruited for carrying out the planned suicide attack.

At the request of the Defendant and of Muhammad Naifa, Ahmad Barghouti brought an M-16 assault rifle for carrying out the planned suicide attack. Within the preparations for executing the above mentioned attack, the Defendant and his two above mentioned colleagues using a video camera, filmed Muhammad Alshaib, explaining that the attack was in the name of the "Al Aqsa Martyrs Brigades".

Thereafter, the Defendant and his above mentioned colleagues gave Muhannad Alshaib theoretical and practical training in the use of the M-16 assault rifle. During the above mentioned training, Muhannad Elshaib fired two magazines using the said assault rifle.

Thereafter, the Defendant and his colleagues led Muhannad Alshaib to an apartment in Ramallah Tahta, which Ahmad Barghouti had rented, and instructed Muhannad Alshaib to stay there for a few days until the situation would calm down somewhat and that negotiating roads in the Area would be easier.

The planned suicide attack did not take place because the above mentioned Muhannad Alshaib fled from the said apartment.

[Stamp] P 5: 29 [continued]

Prosecution Case 422/02 Amended

28

**Thirty fifth count:**

**Nature of the offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, while staying in Ramallah, talked by telephone with Omar Sharif Asad Hanfar and with Hamad Abu-Juldi. The two informed the Defendant that Wa'al Ahmad Salam Jalamna (Nursi) and Ta'ar Basam Mustafa Jabarin (Taha) were interested in carrying out a suicide attack. The Defendant ordered the two suicide terrorists to be sent to him in Ramallah on the following day. On the following day, Wa'al Nursi and Ta'ar Jabarin called the Defendant and said that they were at the Jericho checkpoint on their way to Ramallah, but had forgotten their identity cards at home. Following this, the Defendant ordered the two to return to their home to retrieve their identity cards and then return to Ramallah. During the evening that day, Muhammad Abu Juldi called the Defendant and said that the two above mentioned suicide terrorists had been arrested by the Palestinian Authority.

In view of the foregoing, the plan to carry out the suicide attack was not executed.

**Thirty sixth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. In late February – early March 2002, in Ramallah or thereabouts, the Defendant met Ghassan Mahmoud Naief Stita, who informed the Defendant that he wanted to carry out an attack. The Defendant convinced Ghassan Stita to carry out a suicide attack in Tel Aviv with the intent of causing the deaths of as many Israeli civilians as possible.

[Stamp] P 5: 30

Prosecution Case 422/02 Amended

2. Following the above mentioned planning, the Defendant contacted Muhammad Naifa, known as "Abu Rabia" and Nasser Muhammad Yusef Naji (Abu Hamid), senior military operatives in the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, with a request for assistance in effecting the planned suicide attack. The Defendant asked Nasser Abu Hamid for an explosive device with which Ghassan Stita would carry out the planned suicide attack. Nasser Abu Hamid informed the Defendant that he possessed a powerful explosive device and he was interested in delivering it for carrying out a large attack, which would be planned well. Nasser Abu Hamid also asked the Defendant to prepare a detailed plan for carrying out the attack and meeting the person who was intended to carry out the suicide attack.

3. With the mediation of the Defendant, Ghassan Stita met Nasser Abu Hamid in the Amari Refugee Camp. Ghassan Stita informed Nasser Abu Hamid that he was interested in carrying out a large suicide attack that would cause the deaths of many people. This meeting was attended by the Defendant himself, as well as Muhannad Abu Halawa and Muhammad Naeifa, known as "Abu Rabia", who also took part in planning the suicide attack that Ghassan Stita was meant to execute.

4. During the above mentioned meeting, Ghassan Stita was filmed using Nasser Abu Hamid's video camera, standing before PLO and "Al Aqsa Martyrs Brigades" flags, giving a farewell speech and taking responsibility on behalf of the "Al Aqsa Martyrs Brigades" for executing the planned suicide attack, whose words were written by the Defendant. The Defendant, Nasser Abu Hamid and their other colleagues involved in executing the attack, planned to give the cassette on which Ghassan Stita was filmed to the press, upon the execution of the attack.

5. After Ghassan Stita was filmed as stated above, he had his hair cut, shaved and dressed in new clothes, which had been bought for him, in order not to be discovered en route to executing the attack.

6. Thereafter, Nasser Abu Hamid taught Ghassan Stita how to activate the explosive device that he would carry on his person. The explosive device was composed of a fire extinguisher filled with explosives, which was hidden in a backpack. Ghassan Stita was meant to operate the explosive device using a switch that was affixed to his hand. The switch was connected to a charger in the bag using a wire that was concealed in Ghassan Stita's clothes.

7. To complete the preparations for dispatching Ghassan Stita to execute the planned suicide attack, Isa Jabarin, whose function was to drive Ghassan Stita to the attack execution site

[Stamp] P 5: 30 [continued]

Prosecution Case 422/02 Amended

in Tel Aviv, arrived. Isa Jabarin was recruited to take part in executing the attack by Hamad Naeifa, known as "Abu Rabia". Isa Jabarin came to the place where the Defendant and the other persons involved in planning the attack were in a Mazda type vehicle with Palestinian license plates. Nasser Abu Hamid ordered the replacement of the license plates to Israeli license plates and Muhannad Abu Halawa did so.

8. Ghassan Stita, equipped with the bag containing the explosive device, got into the Mazda vehicle that Isa Jabarin was driving and sat on the back seat, while Muhannad Abu Halawa sat in the front seat. The Defendant, Nasser Abu Hamid and Muhammad Naeifa "Abu Rabia" traveled in Nasser Abu Hamid's vehicle as an escort vehicle. The two vehicles departed on their way to executing the planned suicide attack. The plan was that the vehicles would drive through Rafat-Atarot and from there the vehicle in which Ghassan Stita was sitting would continue to Tel Aviv, where he was meant to carry out the planned suicide attack with the intent of causing the deaths of as many people as possible.

9. When the vehicles arrived at a checkpoint of Force 17 of the Palestinian Authority, Nasser Abu Hamid and Muhannad Abu Halawa conducted an inquiry with the Palestinian policemen at the checkpoint. The inquiry indicated that two IDF jeeps had passed by. At that time, there was also the noise of helicopters in the air. These raised the suspicion of Nasser Abu Hamid, who decided to defer the commission of the attack. The Defendant and his other colleagues returned to Amari Refugee Camp.

10. On the following day, Ghassan Stita departed again to carry out the planned suicide attack. Nasser Abu Hamid fitted the bag with the explosive device on Ghassan Stita's back. The latter drove in the Mazda vehicle with Isa Jabarin. Another vehicle that departed was of the Ford Transit type, in which Muhannad Abu Halawa was traveling. The function of the additional vehicle was to drive ahead of the first to check the way.

11. Upon approaching Rafat, the two above mentioned vehicles encountered an IDF checkpoint and decided to return to Amari Refugee Camp.

### Thirty seventh count:

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 5: 31

Prosecution Case 422/02 Amended

31

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. On March 5, 2002, Muhannad Abu Halawa was killed. The Defendant met Nasser Muhammad Yusef Naji (Abu Hamid) and asked him to carry out a revenge attack with the intent of causing the deaths of as many Israeli civilians as possible. Nasser Abu Hamid asked the Defendant to wait until after Abu Halawa's funeral.

2. On March 6, 2002, after Muhannad Abu Halawa's funeral, the Defendant met Nasser Abu Hamid and Ghassan Mahmoud Naief Stita at the bus stop in Ramallah. The Defendant informed Nasser Abu Hamid that an attack must be carried out as quickly as possible and that he had decided to execute the suicide attack at a different place to the one which was planned as elaborated in the previous count of indictment. Following the above mentioned instruction of the Defendant, Ghassan Stita traveled with Nasser Abu Hamid to the Amari Refugee Camp, where the explosive device described in the previous count of indictment was hidden. Nasser Abu Hamid fitted the above mentioned explosive device on the back of Ghassan Stita and the two returned to Ramallah and again met the Defendant and Muhammad Naifa, known as "Abu Rabia".

3. Nasser Abu Hamid demonstrated to the Defendant how to fix the explosive device to the back of Ghassan Stita and traveled back to his hiding place.

4. From there, Ghassan Stita departed towards Jerusalem to carry out the planned suicide attack with the intent of causing the deaths of as many people as possible, carrying the explosive device in a pack on his back.

5. Near the Kalandia checkpoint, Ghassan Stita noticed IDF jeeps and IDF soldiers, who suspected him. Ghassan Stita was fearful, threw away the bag with the explosive device and fled the site towards Ramallah.

[Stamp] P 5: 31 [continued]

Prosecution Case 422/02 Amended

32

**Thirty eighth count: (detailed incident 580/02 Shafat)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, in late October 2000 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early March 2002, in Ramallah or thereabouts, talked to Majdi Abu Alwafa, who stated that he had a person who was ready to carry out a suicide attack. The Defendant asked to talk with the above mentioned person.

2. On the following day, in Ramallah, the Defendant met Douram Azat Muhammad Said Zakarna, who stated that he was the person whom Majd Abu Alwafa talked about and that he was willing to carry out a suicide attack.

3. The Defendant met Nasser Jamal Musa Shawish and said that there was a person who wanted to carry out a suicide attack inside the State of Israel with the intent of causing the deaths of as many people as possible.

4. The Defendant asked Nasser Shawish to help in photographing the suicide terrorist before the departure of the latter for carrying out the planned suicide attack. Nasser Shawish asked to photograph the suicide terrorist in the home of his brother, Khaled Shawish, which was in Bitunia.

5. On March 9, 2002, the Defendant and Nasser Shawish came to the said apartment in Bitunia. The suicide terrorist, Douram Azat Muhammad Said Zakarna, and photographer Ahmad A'asi and another female journalist also came to the house. During the photographing of the suicide terrorist, the brother of the Defendant, Samer Aweis, was also present.

6. Thereafter, Samer Aweis traveled with Douram Zakarna to the Defendant's home in Amari Refugee Camp. On their way to this place, a helicopter fired a missile at the vehicle. Douram Zakarna successfully escaped from this vehicle, whereas Samer Aweis was killed as a result of the impact of the above mentioned missile.

[Stamp] P 5: 32

Prosecution Case 422/02 Amended

33

7. Douram Zakarna received, in accordance with a plan that was made earlier between the Defendant and his colleagues, from Muhammad Naifa, known as "Abu Rabia", a Kalashnikov assault rifle, ammunition and two hand grenades, and on March 10, 2002, he left Ramallah to carry out the planned suicide attack with the aim of causing the deaths of as many people as possible.

8. On March 10, 2002, at about 2:30 p.m., the above mentioned suicide terrorist (Douram Zakarna), attempted to penetrate the State of Israel while armed with a Kalashnikov assault rifle, magazines filled with cartridges and two hand grenades, for the purpose of carrying out the planned suicide attack and intentionally cause the deaths of as many citizens as possible. Douram Zakarna was brought to the A-Ram checkpoint by Isa Muhammad Mahmoud Jabarin, who had been recruited for this task by the head of the general intelligence of the Palestinian Authority – Tawfik Tirawi.

9. At the said date and time, at A-Ram checkpoint or thereabouts, the above mentioned suicide terrorist, Douram Zakarna, was killed by the Israeli security forces during his attempt to penetrate into the State of Israel as stated above.

**Thirty ninth count: (Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002, or at around that time, intentionally caused the death of another person, as follows:

1. During the stay of the Defendant in Ramallah in early 2002, the Defendant met Nasser Jamal Musa Shawish, a senior military operative in the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah.

2. The Defendant learned from Nasser Shawish that Muhammad Hashaika, whom Nasser Shawish had attempted to send to execute a suicide bombing in the territory of the State of Israel, was in Ramallah.

[Stamp] P 5: 32 [continued]

Prosecution Case 422/02 Amended

3. In early March 2002, Muhammad Hashaika was remanded in the "Mukta'ah" complex of the Palestinian Authority in Ramallah. Following the request of the Defendant, who is the general intelligence of the Palestinian Authority [sic], Muhammad Hashaika was released from the said remand.

4. After his release, Muhammad Hashaika contacted the Defendant and Nasser Shawish, and announced his wish to carry out a suicide attack. The Defendant and Nasser Shawish agreed to prepare Muhammad Hashaika and equip him with all measures required to carry out the suicide attack inside the State of Israel. Nasser Shawish informed the Defendant that the planned attack

[Stamp] P 5: 32 [continued]

Prosecution Case 422/02 Amended

35

was a revenge attack for the death of the brother of the Defendant, Samer Aweis, who was killed on March 9, 2002.

5. The Defendant promised to Nasser Shawish that he would act to have the latter released from custody in the Palestinian Authority if he would be arrested following the execution of the planned attack.

6. Muhammad Hashaika told the Defendant and Nasser Shawish that he had been contacted by Iad Alshamah, an officer in the intelligence of the Palestinian Authority in Ramallah, and suggested that he send Muhammad Hashaika to carry out a suicide attack. The Defendant and Nasser Shawish convinced Muhammad Hashaika not to believe the Palestinian Authority intelligence officer out of fear that he would hand him over to Israel. The Defendant and Nasser Shawish convinced Muhammad Hashaika that they would take care of everything to send him to carry out a suicide attack inside the State of Israel.

7. Nasser Shawish found a rented apartment in Ramallah, in which he and his colleagues were to have prepared the planned suicide attack.

8. Nasser Shawish led the Defendant and Muhammad Hashaika to the said apartment.

9. At the request of the Defendant, Nasser Shawish recruited Sigoud Shuli, a resident of Asira Shmalia, to carry out the above mentioned suicide attack, after the Defendant and Nasser Shawish decided that there would be two suicide terrorists, a man and a woman, who would carry out a double suicide attack, with the intent of causing the death of as many Israeli civilians as possible. Sigoud Shuli also arrived at the above mentioned apartment.

10. In the above mentioned apartment, at the request of Nasser Shawish, photographer Ahmad Aasi using a video camera, filmed Muhammad Hashaika and Sigoud Shuli before carrying out the planned suicide attack.

11. The Defendant guided Muhammad Hashaika to detonate his charge and cause the deaths of as many Israeli civilians as possible. The Defendant clarified to Muhammad Hashaika that if he would be arrested, he would have to detonate his charge on the spot and that the main thing was that he would kill a Jew – at least one, but he would nonetheless kill.

[Stamp] P 5: 33

Prosecution Case 422/02 Amended

36

12. At this stage, Nasser Shawish decided that he did not want Sigoud Shuli to participate in the commission of the suicide attack, and informed the latter's family of the intentions of their daughter. As a result, Sigoud Shuli returned to the Nablus area, from which she fled to Jordan.

13. The Defendant contacted the office of the head of the general intelligence in the Palestinian Authority, Tawfik Tirawi, and brought explosives from there. The Defendant used these explosives to make an explosive device for carrying out the planned suicide attack.

14. Thereafter, the Defendant and Nasser Shawish made the explosive belt.

15. The Defendant recruited Kahira Said Sa'adi for conveying Muhammad Hashaika into the State of Israel for carrying out the planned suicide attack.

16. Nasser Shawish recruited Sana'a Muhammad Shahada for conveying Muhammad Hashaika into the State of Israel for carrying out the planned suicide attack.

17. On March 20, 2002, Nasser Shawish met Marwan Barghouti, the head of the "Tanzim" of the Fatah in the Area in Ramallah. Nasser Shawish informed Marwan Barghouti that the Defendant was about to send a suicide terrorist for carrying out a suicide attack inside the State of Israel. Marwan Barghouti asked to know whether the Defendant and Nasser Shawish needed anything for executing the planned attack. Despite Nasser Shawish giving a negative answer to this question, Marwan Barghouti gave the latter a sum of 600 U.S. dollars.

18. On March 21, 2002, the Defendant met Nasser Shawish and Sana'a Shahada. The Defendant explained to Sana'a Shahada that she would have to transport the suicide terrorist into Jerusalem for him to carry out the planned suicide bombing, because she was closely familiar with Jerusalem and the roads leading to it.

19. That day, the Defendant, Nasser Shawish and Muhammad Hashaika visited the office of Hassin A-Sheikh, the Secretary General of the Fatah Organization in the Area. There, the Defendant received from Hassin A-Sheikh money and two hand grenades for executing the planned attack.

20. The Defendant and his above mentioned colleagues purchased, using this money, clothes for Muhammad Hashaika, with which the latter carried out the suicide attack, which is described below.

[Stamp] P 5: 33 [continued]

Prosecution Case 422/02 Amended

37

21. Thereafter, the Defendant and his above mentioned colleagues arrived at an apartment in Ramallah, in which there were the above mentioned Muhammad Hashaika, Haj Khader and Musid Almasri. The Defendant and Musid Almasri prepared Muhammad Hashaika before executing the planned suicide attack and fitted the above mentioned explosive belt to him.

22. Thereafter, the Defendant contacted Kahira Sa'adi and asked the latter to help convey the suicide terrorist to Jerusalem.

23. After some time, Kahira Sa'adi reached the Defendant and his above mentioned colleagues.

24. At noontime, on March 21, 2002, Nasser Shawish drove Muhammad Hashaika, who was carrying the above mentioned explosive belt on his person, and Sana'a Shahada and Kahira Sa'adi, who accompanied the above mentioned suicide terrorist, from Ramallah to the Kalandia checkpoint.

25. Thereafter, after he parted from Muhammad Hashaika with a kiss, Nasser Shawish returned to Ramallah.

[Stamp] P 5: 33 [continued]

Prosecution Case 422/02 Amended

26. Kahira Sa'adi and Sana'a Shahada transported Muhammad Hashaika, who was carrying the above mentioned explosive belt on his body, to King George Street in Jerusalem. The two chose this place because it was crowded in the afternoon, so the two decided that it was "suitable" for carrying out the planned suicide attack.

27. After Sana'a Shahada and Kahira Sa'adi left Muhammad Hashaika in King George Street, Muhammad Hashaika arrived at a zebra crossing that was near the Aroma Café and near the junction of King George and Hahistadrut Streets.

28. At the said site, at about 4:20 p.m. that day, Muhammad Hashaika activated the explosive device, which he carried on his body, while inside the crowd, with the aim of causing the deaths of as many people as possible.

29. After the Defendant and his colleagues learned of the commission of the planned suicide attack, Nasser Shawish forwarded a video cassette with the filmed "will" of Muhammad Hashaika to journalist Hamad A'asi.

30. Thereafter, the Defendant and Nasser Shawish contacted Hassin A-Sheikh, the secretary general of the Fatah organization in the Area, and drafted an announcement, in which the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, took responsibility for executing the bombing attack described above. After composing the announcement, Nasser Shawish approached the offices of the ANN news company and was filmed there reading the above mentioned announcement of taking responsibility for the attack described above.

31. By his acts described above, the above mentioned Defendant, at the said time, caused the intentional death of the late First Sergeant Gadi Shemesh, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described above.

**Fortieth count: (Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, caused the intentional death of another person, as follows:

[Stamp] P 5: 34

Prosecution Case 422/02 Amended

39

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused the intentional death of the late Tzipora Shemesh, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment. **The late Tzipora Shemesh was four months pregnant at the time of her death.**

**Forty first count: Detailed Incident (2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused the intentional death of the late Yitzhak Cohen, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment.

[Stamp] P 5: 34 [continued]

Prosecution Case 422/02 Amended

**Forty second count: (Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, attempted to cause the intentional death of as many citizens as possible. As a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment, **81 human beings** were injured.

**Forty third count: (Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, destroyed or damaged property maliciously and unlawfully, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused heavy damage to buildings and businesses near the said place and to many vehicles, which were near the place described in the thirty ninth count of the indictment, at which Muhammad Hashaika activated the explosive device, as described in the thirty ninth count of the indictment.

**Forty fourth count:**

**Nature of the offense:** Manufacturing a bomb, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 5: 35

Prosecution Case 422/02 Amended

41

**Details of the offense**: The above mentioned Defendant, in the Area, in mid-March 2002 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts met Amar Mardi, who introduced Louis Ouda to the Defendant. Amar Mardi told the Defendant that Louis Ouda could bring the Defendant chemicals so that the Defendant could make explosive devices out of them. Louis Ouda asked the Defendant to manufacture explosive devices for him so that the latter could carry out an attack against and IDF jeep using them. The Defendant agreed to the said request.

After two days, in Ramallah or thereabouts, the Defendant manufactured an explosive device using an iron pipe and chemicals that Louis Ouda had brought. Louis Ouda explained to the Defendant that using the above mentioned explosive device, he would carry out an attack against an IDF jeep on the Ramallah bypass road.

[Stamp] P 5: 35 [continued]

Prosecution Case 422/02 Amended

**Forty fifth count:**

**Nature of the offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense:** the above mentioned Defendant, in the Area, in mid-March 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts, met Muhammad Arda, an operative in the Palestinian Islamic Jihad organization. Muhammad Arda suggested carrying out a suicide attack as a cooperation effort between the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, and the military arm of the Palestinian Islamic Jihad. The Defendant agreed to this suggestion. The Defendant and Muhammad Arda concluded that they would act jointly to execute a suicide attack in which two suicide terrorists would participate – one for the "Al Aqsa Martyrs Brigades" and the other for the Palestinian Islamic Jihad. The Defendant agreed to the said proposal, but asked Muhammad Arda to act to bring weapons and explosives.

The Defendant also received from Muhammad Arda a loan of 1,000 Jordanian dinars for purchasing the weapons.

The above mentioned plan was not executed due to the arrest of the Defendant by the Israeli security forces on March 30, 2002.

**Forty sixth count:**

**Nature of the offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in late March 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

[Stamp] P 5: 36

Prosecution Case 422/02 Amended

43

The above mentioned Defendant, at the said time, in Ramallah or thereabouts, met Muhammad Kablawi. The Defendant suggested that Muhammad Kablawi carry out a shooting attack and the latter agreed. Muhammad Kablawi clarified to the Defendant that he knew how to use a handgun. Muhammad Kablawi told the Defendant that there was a senior Jewish officer who frequented a grocery store in Azaria while armed with a Mini Uzi, and that there were Border Guard officers who visited the same grocery store in Azaria. The Defendant concluded with Muhammad Kablawi that the Defendant would provide the latter with a handgun and Muhammad Kablawi would murder the above mentioned officer, and if possible would also murder the Border Guard officers when they came to Azaria, using the above mentioned handgun. Muhammad Kablawi agreed to the suggestion of the Defendant. That day, the Defendant received from Ahmad Taleb Mustafa Barghouti a "14" pistol. After two days, the Defendant forwarded the above mentioned handgun to Muhammad Kablawi for carrying out the planned attack. The Defendant ordered Muhammad Kablawi to carry out the planned attack that very evening.

That evening, Muhammad Kablawi contacted the Defendant via Khader Dabaia and stated that he had not carried out the planned attack. The Defendant told Khader Dabaia to tell Muhammad Kablawi to carry out the planned attack in another day or two.

A few days thereafter, the Defendant was arrested by the Israeli security forces.

[Stamp] P 5: 36 [continued]

Prosecution Case 422/02 Amended

44

**Witnesses for the prosecution:**

1. Master Sergeant Moshe Levi, Badge No. 953117, Judea investigations office: [taker of statements of the Defendant of March 31, 2002, April 28, 2002, April 29, 2002, May 8, 2002 and submitter of the handwriting of the Defendant in Arabic + seizure and marking memorandum + drawings in the handwriting of the Defendant].

2. Master Sergeant David Mizrachi, Badge No. 94857, Judea investigations office [taker of the statement of the Defendant of April 4, 2002 and filer of handwriting of the Defendant in Arabic].

3. Master Sergeant David Zrihan, Badge No. 588798; Beit Shemesh Border Guard [taker of statement of the Defendant of May 15, 2002]

4. Sergeant Major Shlomo Cohen, Badge No. 53377, minorities unit, Jerusalem [taker of two statements of the Defendant on May 28, 2002].

5. Musa Sari Hasouna, Identity No. 040951592. (detainee)

6. Hafez Abd-Al Fatah Makbal, Identity No. 040976136. (detainee)

7. Nasser Jamal Musa Shawish, Identity No. 993006188. (detainee) (prosecution case 733/02)

8. Ghassan Mahmoud Naief Stita, Identity No. 941165466. (detainee) (prosecution case 320/02)

9. Nasser Muhammad Yusef Naji (Abu Hamid), Identity No. 923918882. (prisoner)

10. Zid Yunes Ahmad Yunes, Identity No. 966647653. (detainee)

11. Nasser Mahmoud Aweis, Identity No. 900358664. (detainee)

12. Lila Muhammad Salah Bukhari, Identity No. 900128737. (detainee) (prosecution case 595/02)

13. Matkal Nasser Abd-Al Razek Nalousi, Identity No. 975080854. (detainee)

14. Iad Nadir Arsan Omar, Identity No. 907360739. (detainee)

15. Wa'al Ahmad Salem Jalamna (Nursi), Identity No. 941176695. (detainee)

16. Ahmad Hussein Muhammad Abu Jalda, Identity No. 905697389. (detainee)

[Stamp] P 5: 37

Prosecution Case 422/02 Amended

45

17. Omar Sharif Asad Hanfar, Identity No. 900102369. (detainee)

18. Majdi Saourd Salim Abu Alwafa, Identity No. 901078188. (detainee)

19. Ta'ar Basam Mustafa Jabarin (Taha), Identity No. 910675867. (detainee)

20. Jasser Khalil Ismail A'asi, Identity No. 988353215. (detainee)

21. Moueid Ali Muhammad Jaradat, Identity No. 941690224. (detainee)

22. Hassan Rateb Yunes Aweis, Identity No. 938150026. (detainee)

23. Kahira Said Sa'adi, Identity No. 903946960. (detainee) (prosecution case 451/02)

24. Ahmad Taleb Mustafa Barghouti, Identity No. 994466860. (detainee) (prosecution case 444/02)

25. Sana'a Muhammad Shahada, Identity No. 081021198. (detainee) (prosecution case 484/02)

26. Isa Muhammad Mahmoud Jabarin, Identity No. 906446521. (detainee) (prosecution case 427/02)

27. Ubeida Abd-Al Rahman Muhammad Jaber, Identity No. 989498118. (detainee)

28. Rabia Rafik Sharif Abu-Roub, Identity No. 901815191. (detainee)

---

### Detailed Incident 4753/01 Afula

29. Master Sergeant Yoram Ben, Badge No. 969466, Afula station. [submitter of action report + photograph plates]

30. Roudin Nafsu, Badge No. 418137, forensic identification – Afula station [submitter of photograph pates]

31. First Sergeant Shai Katz, Badge No. 572941, Afula station. [submitter of action report]

32. First Sergeant Ya'akov Mizrachi, Afula station. [submitter of action report]

33. Sergeant First Class Nur Shukron, Afula station. [submitter of action report]

[Stamp] P 5: 37 [continued]

Prosecution Case 422/02 Amended

34. Sergeant Major Arieh Benasuli, Afula station. [submitter of memorandum report]

35. First Sergeant Samir Hinu, Badge No. 968222, Afula station [submitter of exhibit cover form]

36. Sergeant First Class Yuval Kimchi, Badge No. 755322, Afula station [submitter of memorandum]

37. Master Sergeant Shlomi Edri, Badge No. 948984, Afula station. [submitter of seizure and marking report]

38. Master Sergeant Haim Fingboim, Badge No. 949842, Afula station [submitter of action report].

39. Chief Inspector Moti Hariv, Badge No. 93400, Afula station. [submitter of seizure and marking report + Identity No. seized on the scene]

40. Medical certificates of the casualties.

41. Death certificate of the late Michal Mor.

42. Death certificate of the late Noam Gozovsky.

43. Prof. Yehuda Hiss, the National Center for Forensic Medicine. [submitter of expert opinion] (will be called upon explicit demand of the defense only)

An additional list of witnesses concerning the casualties and victims of the attack at the Central bus station in Afula on November 27, 2001 will be provided during the trial

[Stamp] P 5: 37 [continued]

Prosecution Case 422/02 Amended

**Detailed Incident 412/02 Binyamin**

44. Shaul Cohen, Badge No. 759407, Binyamin Station. [testimony]

45. David Cohen, Identity No. 028999910, Binyamin Station. [testimony]

46. Mordechai Tal, Identity No. 29501590, Binyamin Station. [severely injured in the attack]

47. Eli Teva, Identity No. 025716218 (details in the prosecution) [reserve soldier, was at the checkpoint at the time of the attack – saw the suicide terrorist]

48. Lior Steindem, Identity No. 025044421 (details in the prosecution] (commander of reserve force at the checkpoint at the time of the attack, talked to the suicide terrorist before the explosion]

49. Ilan Factor, Identity No. 308900141(details in the prosecution) [reserve soldier at the checkpoint at the time of the attack – inspected the vehicle in which the suicide terrorist was traveling]

50. Hanania Schneid, Identity No. 032781072 (details in the prosecution) [arrived at the site immediately after the attack]

51. Sergeant Major Shai Algrabli, Badge No. 1010065, Modi'in Station. [submitter of action report]

52. Sergeant Major Eli Hajaj, Badge No. 1054782, Modi'in Station. [submitter of action report]

53. Inspector Arnon Shoshani, National Headquarters, Policing and Security Branch, bomb laboratories section, Tel Aviv branch [submitter of initial expert opinion and expert opinion in case ZB23/ - 0821/2002 + photographs + exhibit cover form] (will be called upon explicit demand of the defense only)

54. Sarah Abramovich-Bar, forensic identification – analytic laboratory, National Headquarters, Jerusalem [submitter of expert opinion in file BI/33 – 54484/02] (will be called upon explicit demand of the defense only)

[Stamp] P 5: 38

Prosecution Case 422/02 Amended

48

**Detailed incident 580/02 Shafat**

55. Yigal Meir, Identity No. 040202418, Sivan Border Guard, 42nd company. (details in the prosecution) [testimony]

56. Chief Inspector Moshe Hidra, Identity No. 037537412, Lavi Border Guard. (details in the prosecution) [testimony]

57. Chief Inspector Leonid Rabinovich, Badge No. 71055859, Lavi Border Guard. (details in the prosecution) [testimony]

58. Inspector Asaf Zguri, Badge No. 1049196, Lavi Border Guard. (details in the prosecution) [testimony]

59. Master Sergeant Oded Meiri, Badge No. 1065937, Special Duties Department, central unit, Jerusalem [submitter of action / seizure and marking report + exhibit cover form]

60. Superintendent Lior Nadivi, Badge No. 952127, forensic identification – Zion station [submitter of photograph plates]

61. Fouad Cohen, Identity No. 1048701, Special Duties Department, central unit – Jerusalem [submitter of memorandum + Polaroid pictures]

---

**2069/02 Jerusalem Special Duties Department**

62. First Sergeant Ariel Ya'ari, bomb laboratory, national headquarters – Jerusalem. [submitter of seizure and marking report + expert opinion] (will be called upon explicit demand of the defense only)

63. Sarah Abramovich-Bar, analytic laboratory, national headquarters – Jerusalem [submitted of expert opinion] (will be called upon explicit demand of the defense only)

64. Dror Cohen, Zion Station forensics - Jerusalem. [submitter of pictures from attack scene]

65. Yigal Shemesh, Identity No. 028077964 (details in the prosecution) [identification of the body of the late Gadi Shemesh]

[Stamp] P 5: 38 [continued]

Prosecution Case 422/02 Amended

49

66. Yaniv Yosef, Identity No. 027454958 (details in the prosecution) [identification of the body of the late Gadi Shemesh]

67. Hagai Pinchas, Identity No. 028766723 (details in the prosecution) [identification of the body of the late Gadi Shemesh]

68. Yahiya Ben Hemo, Identity No. 038342986 (details in the prosecution) [identification of the body of the late Tzipora Shemesh]

69. Lior Mika, Identity No. 036386753 (details in the prosecution) [saw the terrorist exploding, injured in the attack]

70. Ilan Bauer, US passport number 700767376 (details in the prosecution) [was with his son, a minor, near the terrorist at the time of the explosion, both were injured]

71. Shiran Dervish, Identity No. 039888862 (details in the prosecution) [was near the terrorist at the time of the explosion, injured]

72. Hezkiya Lenenstein, Dutch passport number 115402413 (details in the prosecution) [injured in the attack, saw the terrorist at the time of the explosion]

73. Marion Kempler, Identity No. 016432148 (details in the prosecution) [injured in the attack]

74. Asi Armoza, Identity No. 051910735 (details in the prosecution) [injured in the attack]

75. Lawrence Salem, Identity No. 312738537 (details in the prosecution) [injured in the attack]

76. Tal Cohen, Identity No. 029506270 (details in the prosecution) [injured in the attack]

77. Faizula Haim Ya'akovian, Identity No. 011573441 (details in the prosecution) [injured in the attack, her store was damaged]

78. Eli Levi, Identity No. 033643438 (details in the prosecution) [injured in the attack]

79. Natanel Gideon, Identity No. 018176707 (details in the prosecution) [slightly injured, his store was damaged]

80. Astrid (Rivka) Gorno, Identity No. 301921169 (details in the prosecution) [injured in the attack]

[Stamp] P 5: 38 [continued]

Prosecution Case 422/02 Amended

50

81. Mazal Hachamov, Identity No. 304119407 (details in the prosecution) [injured in the attack]

82. Bosmat Cohen, Identity No. 061273413 (details in the prosecution) [injured in the attack]

83. Moshe Fich, Identity No. 015776636 (details in the prosecution) [slightly injured in the attack]

84. Yaffa Levi, Identity No. 055466924 (details in the prosecution) [slightly injured in the attack]

[Stamp] P 5: 38 [continued]

Prosecution Case 422/02 Amended

51

85. Rubi Asraf, Identity No. 021398011 (details in the prosecution) [saw the terrorist at the time of the explosion]

86. Ora Faizakov, Identity No. 039526371 (details in the prosecution) [was near the explosion site]

87. Hillel Adam, Identity No. 302040969 (details in the prosecution) [eye witness, cared for casualties]

88. Rachamim Habler, Identity No. 059732735 (details in the prosecution) [his store was damaged]

89. Hen Kugel, M.D., the National Center for Forensic Medicine. [submitter of expert opinion] (will be called upon explicit demand of the defense only)

90. Prof. Yehuda Hiss, the National Center for Forensic Medicine. [submitter of expert opinion] (will be called upon explicit demand of the defense only)

91. Death certificate – the late Yitzhak Cohen.

92. List of casualties of the attack from the Jerusalem Municipal Council – 106 call center (institutional record)

93. Medical certificates

Another list of witnesses concerning the casualties and victims of the attack in King George Street in Jerusalem on March 21, 2002 will be given during the trial

[Signature]
Michael Kotlik, Captain
Military Prosecutor

Date: January 14, 2003

Reference: 422-02 amended

[Stamp] P 5: 39

Prosecution Case 422/02 Amended

52

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                           Plaintiffs,

                                                    No. 04 Civ. 00397 (GBD) (RLE)

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                           Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the
      document received by Rina Ne'eman Hebrew Language Services, to the best of my
      knowledge and belief. The document is designated as P5: 17-39.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew
      University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in
      Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and
      accurate translation of the Hebrew-language document bearing the bates number, P5: 17-
      39.

                                                    Rina Ne'eman

ss.: New Jersey

On the 28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2392704

| לישראל | הגנה | צבא |
|---|---|---|

| 3478/02 | : תיק ביה"מ | הצבאי | חמשפט | בבית |
| 422/02 | : תיק תביעה | אל | | בבית |
| 2504/02 אריאל | : תיק פ.א. | הרכב | | בפני |
| 2505/02 אריאל | | | | |
| 2506/02 אריאל | | | | |
| 2507/02 אריאל | | | | |
| 2508/02 אריאל | | | | |
| 4753/01 עפולה | | | | |
| 1073/02 בנימין | | | | |
| 412/02 בנימין | | | | |
| 580/02 שפט | | | | |
| 2069/02 מתיים י-ם | | | | |

## <u>במשפט שבין התובע הצבאי - המאשים</u>

## <u>- נ ג ד -</u>

ע/כרים ראתב יונס עוויס
ת.ז. 980136675, יליד 26.08.70, תושב ג'נין/רמאללה
עצור.מיום 30.03.02

## <u>- הנאשם -</u>

# <u>כ ת ב - א י ש ו ם    מ ת ו ק ן</u>

## <u>הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:</u>

### פרט ראשון:

<u>מהות העבירה:</u> חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א)
לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מחודש אוקטובר 2000 ועד ליום מעצרו, היה חבר או
פעל כחבר בארגון שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך חתקופה האמורה, היה חבר ב"גדודי חללי אלאקצא" ("כתאיב שוהאדא
אלאקצא"), הזרוע הצבאית של "התנזים" של הפתי"ח, שהוא התאחדות בלתי מותרת.
הנאשם פעל במסגרת "גדודי חללי אלאקצא" כפי שיתואר בפרטי האישום הבאים.

ת.ת. 422/02 מתוקן

1

### <u>פרט שני:</u>

**מהות העבירה:** נשיאות משרה בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו, ניהל או עזר להנהלת התאחדות בלתי מותרת, או החזיק במשרה או עמדה כל שהיא בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, החל מסוף שנת 2000 ועד למעברו מניין לרמאללה בחודש דצמבר 2001, שימש כראש של "גדודי חללי אלאקצא" ("כתאיב שוהאדא אלאקצא"), הזרוע הצבאית של "התנזים" של הפתח"ה, שהוא התאחדות בלתי מותרת, באיזור גינין.
בחודש דצמבר 2001 הנאשם עבר לתחגורר ברמאללה ואז עזב את התפקיד הנ"ל וחצטרף להנהגה של "גדודי חללי אלאקצא" באיזור רמאללה.

### <u>פרט שלישי:</u>

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2001 ועד ליום מעצרו או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, בסוף שנת 2001, גייס לשורות "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפתח"ה, שהוא התאחדות בלתי מותרת, את אחיו חסאן, מגידי אבו אללומא ומחמוד אבו גילדי. הנאשם מינה את האנשים הנ"ל להיות אחראים על פעילותם של "גדודי חללי אלאקצא" בגינין. לאחר מעברו של הנאשם לרמאללה בסוף 2001, הנאשם המשיך להיות בקשר מתמיד עם האנשים הנ"ל ואף דאג לשלוח לכל אחד מהם סכום של 1,000 ש"ח פעם בחודש לצורכי פעילותם בארגון האמור.

### <u>פרט רביעי:</u>

**מהות העבירה:** החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל משנת 1994 ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהתעוקה על ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, הן בגינין והן ברמאללה, החזיק במספר רב של כלי נשק מסוגים שונים, וזאת ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.
בין היתר החזיק הנאשם במשך פרקי זמן שונים, החל מהודש ימים ועד מספר שנים, באקדח בלני 14, אקדח 16, אקדח ברטה 16, אקדח חלואני 9 מ"מ, אקדח טופי, אקדח טוטו 9 מ"מ, אקדח 9 מ"מ, אקדח "סטאריי", רוס"יר אס-16, תמ"ק עוזי, רוס"יר קלצניקוב

### <u>פרט חמישי:</u>

**מהות העבירה:** יידוי אבנים לעבר אדם או רכוש, עבירה לפי סעיף 53א(2) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך סוף שנת 2000 או בסמוך לכך, זרק דבר לרבות אבן לעבר אדם או רכוש, בכוונה לפגוע באדם או ברכוש, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, באיזור גינין או בסמוך לכך, ביחד עם יוסף רשאד קייסי, מאחר מחמד עובאני ואחרים, במספר רב של הזדמנויות שונות, מדי יום ביומו, יידה אבנים לעבר חיילי צה"ל שהיו במקום בכוונה לפגוע בהם.

2                                          ת.ת. 422/02 מחוזקן

**פרט שישי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש אוקטובר 2000, או בסמוך לכך, ניסה לגרום
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בניין או בסמוך לכך, נפגש עם יוסף רשאד קייסי, מחמוד שארף
פקירה, המכונה "יאלאשארף". הנאשם וחבריו הנ"ל קשרו לבצע פיגוע ירי לעבר חיילי צה"ל
העומדים בנקודת ד"אלתלתי" על הכביש העוקף גינין, וזאת בכוונה לגרום למותם של חיילי צה"ל
הנ"ל. הנאשם התחייב לספק לצורך ביצוע פיגוע הירי הנ"ל רוסי"ר קלצ'ניקוב, אשר בו החזיק
במסגרת עבודתו במודיעין הכללי של הרשות הפלסטינית.
הנאשם גיים לביצוע הפיגוע האמור את עכרמה סטיטי, מחמד ע/רחמאן עמורי, עלאא סבאר,
מעתצם סבאר ואת יוסף קייסי.
הנאשם ביחד עם כל חבריו הנ"ל, כאשר כולם חמושים ברוסי"רי קלצ'ניקוב ואם16-, נסע ברכבו
למקום שבו תוכנן לבצע את פיגוע הירי. הנאשם וחבריו התמקמו במקום והנאשם הדריך את
חבריו לירות לעבר חיילי צה"ל במטרה לגרום למותם. הנאשם וחבריו ירו לעבר חיילי צה"ל הנ"ל
ממרחק של כ100- מטר, בכוונה לגרום למותם של חיילי צה"ל. מיד לאחר שהנאשם וחבריו פתחו
באש כאמור לעיל, כוחות צה"ל שנכחו במקום השיבו באש מסיבית והנאשם ביחד עם חבריו הנ"ל
נמלטו בחזרה לג'נין.

**פרט שביעי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש נובמבר 2000, מספר ימים לאחר שביצע את
המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בגינין או בסמוך לכך, נפגש עם מחמד שארף פקירה, המכונה
אלפארף. הנאשם קיבל מידי יוסף פקירה הנ"ל מוקש לצורך ביצוע פיגוע נגד כלי רכב ישראליים
או נגד חיילי צה"ל. יום למחרת, בשעות התבוקר המוקדמות, הנאשם הנ"ל, ביחד עם מחמד פקירה,
יוסף רשאד קייסי ומאהר מחמד נובאני, הניח את המוקש הנ"ל בצומת גילמה בכביש עוקף גינין,
וזאת במטרה לגרום למותם של חיילי צה"ל הנוסעים במקום הנ"ל. בעת הנחת המוקש הנ"ל,
הנאשם וחבריו הנ"ל הניחו אותו בצורה כזו שאזרחים פלסטינים לא יעלו בטעות על המוקש הנ"ל.
לאחר מכן, הנאשם וחבריו הנ"ל נשארו מקום ובצעו תצפיות על מנת לעמוד על תוצאות הפיגוע.
בשעות הבהרים חיילי צה"ל הנ"ל שהיו במקום גילו את המוקש הנ"ל ופוצצו אותו.

**פרט שמיני:**

**מהות העבירה:** יצור כלי-יריה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2001 או בסמוך לכך, ייצר כלי-יריה,
תחמושת, פצצות, חפץ נפיץ או מבעיר, ללא תעודת היתר שחוענקה בידי מפקד צבאי או מטעמו,
דהיינו:
הנאשם הנ"ל, במועד האמור, בעקבות "אי-הצלחת" פיגועי הירי לעבר כוחות צה"ל באיזור גינין,
החליטו לבצע פיגועים נגד המטרות הישראליות באמצעות מרגמות. הנאשם פנה אל מעתצם
סבאר, חרט במקצועו, וביקש מהאחרון לייצר מרגמה. הנאשם ומעתצם פנו גם אל מחמוד חליל
טווילאה, פעיל צבאי בארגון הג'יהאד האסלאמי הפלסטיני, והאחרון הסכים לסייע בייצור
המרגמה. לאחר מכן, הנאשם ומעתצם סבאר פנו אל טארק שריב, בעל מחרטה, בכקשה לייצר
עבורם צינור שישמש כלוע של המרגמה. לאחר שהנאשם וחברו קיבלו מהאדם הנ"ל את הצינור
המבוקש, מעתצם הלחים את התלקים של המרגמה ואף ייצר מעמד עבור המרגמה.
לאחר מכן, הנאשם ביחד עם מעתצם ועם עלאא סבאר ונדאל אברהים בדאווי, המכונה "אבו
עדטאף", ייצר פצצות מרגמה.

**פרט תשיעי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 02.05.01 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בניין או בסמוך לכך, ביחד עם עלאא סבאר, נדאל אבראהים
בדאוי, המכונה "אבו עדנאן", ועם מעתצם סבאר, החליט לבצע ירי פצצת מרגמה לעבר היישוב
כדים בכוונה לגרום למותם של תושבי היישוב הנ"ל.
לצורך מימוש התכנית הנ"ל, הנאשם וחבריו הנ"ל העמיסו את המרגמה ואת פצצת המרגמה, אשר
אותם ייצרו כאמור בפרט האישום הקודם, לרכבו של הנאשם ונסעו לכיוון היישוב כדים.
במרחק של כ-500 מטר מהיישוב כדים, הנאשם וחבריו הנ"ל הכינו את המרגמה הנ"ל לירי
והנאשם הציית את הפתיל של פצצת המרגמה וזאת מתוך כוונה שפצצת המרגמה הנ"ל תפגע
בתושבי היישוב כדים ותגרום למותם. פצצת המרגמה הנ"ל נורתה, אך לא הגיעה אל היישוב כדים
ונפלה במרחק של כ-200 מטר מהנאשם וחבריו.
מיד לאחר ירי פצצת המרגמה, הנאשם וחבריו אספו את המרגמה וחזרו עמה לגינין.

**פרט עשירי:**

**מהות העבירה:** ייצור כלי-יריה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 02.05.01 או במועד הסמוך לכך, ייצר כלי-יריה,
תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו,
דהיינו:
הנאשם הנ"ל, במועד האמור, בניין או בסמוך לכך, ביחד עם מעתצם סבאר, עלאא סבאר ונדאל
אברהים בדאוי, המכונה "אבו עדנאן", ייצר שתי פצצות מרגמה.

**פרט אחד-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 03.05.01 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בניין או בסמוך לכך, ביחד עם מחמד עמורי, עכרמה סטיטי ועם
מעתצם סבאר, החליט לבצע ירי פצצת מרגמה לעבר מחנה צה"ל "בזק" בכוונה לגרום למותם של
חיילי צה"ל.
לצורך מימוש התכנית הנ"ל, הנאשם וחבריו הנ"ל העמיסו את המרגמה ואת פצצות המרגמה,
אשר אותם ייצרו כאמור בפרט האישום הקודם, לרכבו של הנאשם ונסעו לכיוון מחנה צה"ל
"בזק".
במרחק של כ-300 מטר ממחנה צה"ל "בזק", הנאשם וחבריו הנ"ל הכינו את המרגמה הנ"ל לירי
וירו שתי פצצות מרגמה לעבר מחנה צה"ל הנ"ל וזאת מתוך כוונה שפצצות המרגמה הנ"ל יפגעו
במחנה צה"ל הנ"ל ויגרמו למותם של חיילי צה"ל. פצצות המרגמה הנ"ל לא פגעו במחנה צה"ל
הנ"ל ונפלו לפניו.
מיד לאחר ירי פצצות המרגמה, הנאשם וחבריו אספו את המרגמה וחזרו עמה לגינין.

ת.ת. 422/02 מתוקן

<u>פרט שניים-עשר:</u>

**מהות העבירה:** ייצור כלי-יריה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 03.05.01 או במועד הסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בנינין או בסמוך לכך, ביחד עם מעתצם סבאר, עלאא סבאר ונדאל אברהים בדאוי, המכונה "אבו עדנאני", ייצר שתי פצצות מרגמה.

<u>פרט שלושה-עשר:</u>

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 04.05.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בנינין או בסמוך לכך, ביחד עם חג'י עלי צפורי, מחמד עמורי, עכרמה סטויטי ועם מעתצם סבאר, החליט לבצע ירי פצצת מרגמה לעבר היישוב כדים בכוונה לגרום למותם של תושבי היישוב הנ"ל.
לצורך מימוש התכנית הנ"ל, הנאשם וחבריו הנ"ל העמיסו את המרגמה ואת פצצות המרגמה, אשר אותם ייצרו כאמור בפרט האישום הקודם, לרכבו של הנאשם ונסעו לכיוון היישוב כדים.
הנאשם וחבריו הנ"ל הכינו את המרגמה הנ"ל לירי והנאשם וחבריו ירו שתי פצצות מרגמה לעבר היישוב כדים מתוך כוונה שפצצת המרגמה הנ"ל תפגע בתושבי היישוב כדים ותגרום למותם. פצצות המרגמה הנ"ל לא פגעו ביישוב כדים.
מיד לאחר ירי פצצת המרגמה, הנאשם וחבריו אספו את המרגמה וחזרו עמה לנינין.

<u>פרט ארבעה-עשר:</u>

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 09.05.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בצומת דיר אבו צעיף הסמוך לנינין, ביחד עם מחמד עמורי ועם מעתצם סבאר, ירה פצצת מרגמה לעבר טנק ישראלי שהיה בצומת הנ"ל וזאת בכוונה לגרום למותם של חיילי צה"ל שהיו בטנק האמור.

ת.ת. 422/02 מתוקן

<u>פרט חמישה-עשר:</u>

<u>מהות העבירה:</u> ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש אוקטובר 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במועד האמור, בנגין או בסמוך לכך, נפגש עם מחמד אבו-טול. מחמד אבו-טול מסר לנאשם כי הוא נמצא בקשר עם חוליה מאזור חנא, אשר חבריה מבקשים לבצע פיגוע תופת בתוך מדינת ישראל ולמסור זו הם זקוקים למטען חבלה. הנאשם אף נפגש בנגין עם שני חברי החוליה "היישראליתיי הנ"ל.

הנאשם הסכים לסייע בנושא וייצר עבור החוליה הנ"ל, לצורך ביצוע הפיגוע המתוכנן בתוך מדינת ישראל, מטען חבלה במשקל של 15 ק"ג. הנאשם מסר את מטען החבלה הנ"ל לידי מחמד אבו-טול שהגיע ביחד עם אחד מחברי החולים "הישראלית". הנאשם אף הסביר לאותם אדם איך מפעילים את מטען החבלה הנ"ל.

לאחר מכן, מחמד אבו-טול דיווח לנאשם כי החוליה הנ"ל הניחה את מטען החבלה, אשר אותו ייצר הנאשם, בצומת גולני בתוך מדינת ישראל במטרה לבצע פיגוע תופת, מטען החבלה התפוצץ, אך איש לא נפגע.

<u>פרט שישה-עשר:</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במחצית השנייה של שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל במועד האמור, ביחד עם עברמה סטיוטי החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף גינין בכוונה לגרום למותם של אורחים ישראליים. הנאשם וחברו הנ"ל הגיעו לכביש עוקף גינין, כאשר הם חמושים במקלע 250. הנאשם וחברו הבחינו בג'יפ של צה"ל אשר נסע בכביש עוקף גינין. הנאשם וחברו הנ"ל פתחו באש אוטומטית לעבר ג'יפ צה"ל הנ"ל בכוונה לגרום למותם של חיילי צה"ל שנסעו בג'יפ הנ"ל. מיד לאחר ביצוע פיגוע הירי הנ"ל, הנאשם וחברו נמלטו מהמקום.

<u>פרט שבעה-עשר:</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש אוקטובר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל במועד האמור, בנגין או בסמוך לכך, נפגש עם חג׳ עלי צפורי ועם מאניד אבו שראאו. במהלך הפגישה האמורה, מאניד אבו שראאו מסר כי הוא מכיר היטב את היישוב כדים והציע כי הנאשם ועלי צפורי יבואו לו שני אנשים כדי שיבצעו ביחד עמו פיגוע גדול בתוך חיישוב כדים בכוונה לגרום למותם של אנשים רבים ככל הניתן.

2. הנאשם ועלי צפורי הסכימו להצעה האמורה. הנאשם ועלי צפורי פנו אל סאמר ראתב יונס עוויס, מוצטפא אבו-סירדה ורשיד וגייסו אותם לביצוע הפיגוע המתוכנן בתוך היישוב כדים, כאשר הנאשם ועלי צפורי מסבירים כי מדובר בפיגוע התאבדות.

3. על-פי התכנון של הנאשם ושל עלי צפורי, שלושת האנשים הנ"ל היו אמורים להיכנס אל תוך היישוב כדים, לרצות את חיילי צה"ל השומרים על היישוב, להיכנס אל תוך אחד בתי היישוב, לרצות את כל תושבי הבית. תוכנן כי לאחר מכן, המפגעים יסתגרו בתוך הבית וינהלו קרב עם כוחות צה"ל עד שימצאו את מותם.

4. הנאשם ועלי צפורי צילמו את שלושת האנשים הנ"ל באמצעות מצלמת וידאו לקראת ביצוע הפיגוע המתוכנן.

ת.ז. 422/02 מתוקן

5. לאחר מכן, על-פי הוראתם של הנאשם ושל עלי צפורי, מאג'ד אבו שראר אסף את שלושת האנשים הנ"ל ויצא עמם במכונית לכיוון היישוב כדים לצורך ביצוע הפיגוע המתוכנן.

6. לאחר שעתיים האנשים הנ"ל חזרו ודיווחו לנאשם ולעלי צפורי כי לא הצליחו לחדור אל תוך היישוב כדים עקב נוכחותם של טנקים של צה"ל במקום.

7. יום למחרת, הנאשם ועלי צפורי מסרו למאג'ד אבו שראר מצלמת וידאו על מנת שיצלם את היישוב כדים. לאחר שמאג'ד אבו שראר עשה זאת, הנאשם ועלי צפורי צפו בקלטת הוידאו ותכננו את הפיגוע שוב.

8. למחרת היום, הנאשם גייס לצורך ביצוע הפיגוע ביישוב כדים את איאד נדיר ערסאן עומר ואת ואאל אחמד סאלם גילאמנה. הנאשם ועלי צפורי צילמו את שני האנשים הנ"ל באמצעות מצלמת וידאו לקראת ביצוע הפיגוע המתוכנן.

9. יום למחרת, הנאשם ועלי צפורי מאג'ד אבו שראר אסף את שני האנשים הנ"ל וכן את רשיד, האמור לעיל, כשהם חמושים בכלי הנשק אשר נמסרו להם לצורך ביצוע הפיגוע על-ידי הנאשם ועלי צפורי. לאחר מספר שעות האנשים הנ"ל חזרו ודיווחו כי לא ביצעו את הפיגוע המתוכנן מכיוון שפחדו לנוע עוד בכניסה ליישוב כדים זואת עקב נוכחות כוחות גדולים של צה"ל במקום.

---

**פרט שמונה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש נובמבר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל במועד האמור, במהלך הפליטים ג'נין או בסמוך לכך, ביחד עם עכרמה סטיוי, ירה לעבר חייל צה"ל שנכנס למחנה הפליטים האמור, וזאת בכוונה לגרום למותם של חיילי צה"ל. הנאשם ירה ברובי"ר אם-16 ואילו עכרמה סטיוי ירה במקלע 250.

---

**פרט תשעה-עשר: (פ.א. 4753/01 עפולה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. בתחילת חודש נובמבר 2001, בנין או בסמוך לכך, הנאשם נפגש עם עלי סלימאן צפורי. הנאשם ועלי צפורי החליטו להוציא לפועל פיגוע בתוך מדינת ישראל בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר וזאת כנקמה על מותם שלך מג'די גירדאת ועכרמה סטיוי.

2. עלי צפורי מסר לנאשם כי לו שני אנשים המוכנים לבצע פיגוע התאבדות בעפולה במדינת ישראל, כאשר הנשאם הנ"ל ירה לעבר האזרחים הישראליים בעפולה במטרה לגרום למותם של אנשים רבים ככל האפשר וישמיכו לירות עד שייהרגו מאש כוחות הביטחון הישראליים.

3. הנאשם הסכים לבקשתו של עלי צפורי לספק לשני המבחלים המתאבדים הנ"ל כלי נשק לצורך ביצוע פיגוע התאבדות המתוכנן.

4. בעקבות ההסכמה הנ"ל, הנאשם מסר לידי עלי צפורי שני רוסי"רי קלצ'ניקוב לצורך ההוצאה לפועל של הפיגוע המתוכנן. את אחד מכלי הנשק הנ"ל הנאשם קיבל במסגרת עבודתו במודיעין הכללי של הרשות הפלסטינית, ואילו את כלי הנשק השני הנאשם רכש לצורך ההוצאה לפועל של הפיגוע המתוכנן תמורת 8,000 ש"ח מידי פואד בשאראת, שעובד בכוח 17 של הרשות הפלסטינית.

5. הנאשם ועלי צפורי צילמו באמצעות מצלמת וידאו את מוצטפא ואת סיריח ואת ע/כרים עומר אחמד (אבו-נעטה) לקראת ביצוע פיגוע התאבדות המתוכנן. לאחר הצילום הנאשם נתן לכל אחד מהאנשים חייל סכום של 500 ש"ח על שיירכשו בגדים חדשים לצורך ביצוע פיגוע ההתאבדות המתוכנן.

6. יום למחרת, הנאשם נפגש עם מואייד עלי מחמד גירדאת וביקש מהאחרון "לפטחון דרך" מג'נין לעפולה עבור שני המתחבלים המתאבדים הנ"ל על מנת שיוכלו להגיע לעפולה מבלי

להיתפס על-ידי כוחות הביטחון הישראליים ולבצע שם את הפיגוע המתוכנן. מואייד הסכים
לבקשת הנאשם.

7. לצורך הסעת שני המחבלים המתאבדים לעפולה, הנאשם ועלי צפורי רכשו רכב סובארו
תמורת 4,500 ש"ח והניחו בתוך הרכב ג'יל את שני רוסיי'רי קלצי'ניקוב המתוארים לעיל עם 8
מחסניות מלאות בכדורים.

8. ביום 27.11.01, מואייד ג'ירדאת, בהתאם להוראות הנאשם, ביחד עם מחמד גילאמנה וחסאן
ראתב יונס עוויס, ליווה את מוצטפא אבו-סיריה ואת ע/כרים עומר אחמד (אבו-נעסה), אשר
היו חמושים ברוסי'רי קלצ'ניקוב, אותם סיפק הנאשם כאמור לעיל, מגיניין עד למקוין הקרוב
לשטחה של מדינת ישראל.

9. מהמקום האמור לעיל, מוצטפא אבו-סיריה וע/כרים אבו-נעסה המשיכו בנסיעתם ברכב
הסובארו לכיוון עפולה לצורך התוצאה לפועל של פיגוע התאבדות המתוכנן.

10. בסמוך לשעה 11:30, ביום 27.11.01 או במועד הסמוך לכך, מוצטפא אבו-סיריה וע/כרים
אבו-נעסה הגיעו לאיזור התחנה המרכזית בעפולה. שם ירדו השניים הנ"ל מרכבם ופתחו באש
ברוסי'רי קלצ'ניקוב, אשר סופקו להם למטרה זו על-ידי הנאשם, לעבר האנשים שהיו במקום
וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. מוצטפא אבו-סיריה וע/כרים אבו-נעסה המשיכו בפעל הירי באיזור התחנה המרכזית
בעפולה עד אשר נהרגו על-ידי אנשי כוחות הביטחון הישראליים שהגיעו למקום.

12. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותם של מיכל מור ז"ל, אשר נהרגה
כתוצאה מפגיעת הכדורים שנורו על-ידי מוצטפא אבו-סיריה וע/כרים אבו-נעסה מכלי הנשק
שסופקו למטרה זו על-ידי הנאשם.

13. לאחר שלנאשם ולעלי צפורי נודע על תוצאות הפיגוע המתואר לעיל, עלי צפורי התקשר אל
רמדאן שלח, ראש ארגון הג'יהאד האסלאמי הפלסטיני, והודיע לאחרון כי הפיגוע בוצע תוך
שיתוף פעולה בין "ג'דודי חללי אלאקצא" לבין הג'יהאד האסלאמי הפלסטיני.

## פרט עשרים: (פ.א. 4753/01 עפולה)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"יל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במעשיו המתוארים בפרט האישום תשעה-עשר, גרם בכוונה למותו
של נועם גווגטסקי ז"ל, אשר נהרג בסמוך לתחנה המרכזית בעפולה כתוצאה מפגיעת הכדורים
שנורו על-ידי מוצטפא אבו-סיריה וע/כרים עומר אחמד (אבו-נעסה) מכלי הנשק שסופקו למטרה
זו על-ידי הנאשם.

## פרט עשרים ואחד: (פ.א. 4753/01 עפולה)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"יל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום תשעה-עשר, במעשיו המתוארים
בפרט האישום תשעה-עשר, ניסה לגרום למותם של אנשים רבים ככל האפשר.
כתוצאה מפגיעת הכדורים שנורו על-ידי מוצטפא אבו-סיריה וע/כרים עומר אחמד (אבו-נעסה)
מכלי הנשק שסופקו למטרה זו על-ידי הנאשם, כפי שתואר בפרט האישום תשעה-עשר, נפצעו
עשרה אנשים באורח קשה ועשרות אנשים נוספים נפצעו באורח קל עד בינוני.

ת.ת. 422/02 מתוקן

<u>פרט עשרים ושניים:</u>

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001 או בסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:

הנאשם הנ"ל במועד האמור, ביחד עם עלאא סבאר, החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי
בכביש עוקף גינין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחבריו הנ"ל הגיעו לכביש
עוקף גינין, כאשר הנאשם חמוש ברוסי"ר קלצ'ניקוב וחברו חמוש ברוסי"ר אם-16. הנאשם וחברו
הבתינו ברכב ישראלי מסוג רנו אקספרס בצבע לבן אשר נסע בכביש עוקף גינין לכיוון חישוב
כדים. הנאשם וחברו הנ"ל פתחו באש אוטומטית לעבר הרכב הנ"ל ממרחק של כ-100 מטר בכוונה
לגרום למותם של נוסעי הרכב. מספר קליעים שגרו על-ידי הנאשם וחברו פגעו בדרכב הנ"ל ורק
בנס איש לא נפגע. מיד לאחר ביצוע פיגוע הירי הנ"ל, הנאשם וחברו נמלטו מהמקום.

<u>פרט עשרים ושלושה:</u>

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, כיומיים לאחר שביצע את המיוחס לו
בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל במועד האמור, ביחד עם עלאא סבאר, החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי
בכביש עוקף גינין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחברו הנ"ל הגיעו לכביש
עוקף גינין, כאשר הנאשם חמוש ברוסי"ר אם-16 וכל אחד מחבריו חמוש ברוסי"ר אם-16. הנאשם
וחברו הבתינו ברכב ישראלי אשר נסע בכביש עוקף גינין. הנאשם וחברו הנ"ל פתחו באש
אוטומטית לעבר הרכב הנ"ל בכוונה לגרום למותם של נוסעי הרכב. מיד לאחר ביצוע פיגוע הירי
הנ"ל, הנאשם וחברו נמלטו מהמקום.

<u>פרט עשרים וארבעה:</u>

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש נובמבר 2001 או בסמוך לכך, ניסה לגרום
בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל במועד האמור, ביחד עם מעתצם סבאר, יוסף רשדי אלקיוסי ומאהר אללצאני,
החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף גינין בכוונה לגרום למותם של אזרחים
ישראליים. הנאשם וחבריו הנ"ל הגיעו ברכבו של הנאשם לכביש עוקף גינין, כאשר הם חמושים
בכלי נשק אוטומטיים. הנאשם וחבריו הבתינו בחיילי צה"ל העומדים ליד חגיפ של צה"ל באחד
הצמתים. הנאשם וחבריו הנ"ל פתחו באש אוטומטית לעבר חיילי צה"ל הנ"ל בכוונה לגרום
למותם. לאחר שחיילי צה"ל הנ"ל השיבו באש לעבר הנאשם וחבריו, הנאשם וחבריו נמלטו
מהמקום.

9

**פרט עשרים וחמישה:**

**מהות העבירה:** ניסיון לייצר פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה
והשומרון) (מסי 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון)
(מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש דצמבר 2001 או בסמוך לכך, ייצר כלי-יריה,
תחמושת, פצצה, חפץ נפץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו,
דהיינו:
הנאשם הנ"ל, במועד האמור, בגינן או בסמוך לכך, ניסה לייצר חומר נפץ מחומרים כימיים, אשר
אותם רכש מידי זיד יונס. בסופו של הדבר הנאשם לא הצליח לייצר חומר נפץ. הנאשם תכנן
לעשות שימוש בחומר הנפץ, אותו ניסה לייצר, נגד כוחות צה"ל אם יוסו להיכנס למחנה הפליטים
בינין.

**פרט עשרים ושישה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מסי 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, סחר או עסק בצורה
אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, בגינין או בסמוך לכך, במספר בר של הזדמנויות שונות,
נפגש עם פעילים שונים של "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח,
וביניהם מג'די סעדד אל-וופא, מחמד אבו-טול.
הנאשם מסר לאנשים הנ"ל מספר רב של כלי נשק מסוגים שונים, תחמושת, מטעני חבלה מוכנים,
הומרים כימיים לצורך ייצור מטעני חבלה וכן מכשירי טלפון סלולריים על מנת שישמשו כמנגנוני
הפעלה של מטעני החבלה.
האנשים הנ"ל דיווחו לנאשם אודות הפגיעות שביצעו באמצעות כלי הנשק, התחמושת ומטעני
החבלה שקיבלו מהנאשם.

**פרט עשרים ושבעה:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, התאמן, אימן או אומן
אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בגינין או בסמוך לכך, במספר הזדמנויות שונות, נפגש עם פעילים
שונים של "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, וביניהם מג'די סעדד
אל-וופא, מחמד אבו-טול.
הנאשם לימד את הפעילים הנ"ל לייצר חומרי נפץ מסוגים שונים, מטעני החבלה ומנגנוני הפעלה
אלחוטיים למטעני החבלה ממכשירי טלפון סלולריים.

10

ת.ת. 422/02 מתוקן

P 5: 26

<u>פרט עשרים ושמונה:</u>

<u>מהות העבירה:</u> קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מחמוד נאיפה, המכונה "אבו רביעי", מחוד אבו-חלאווה ופאהרי מראר, פעילים צבאיים בכירים בארגון "ג'יהאד אסלאמי", הורע הצבאית של "חתנויים" של הפתייח, לבצע פיגוע ירי בעצרות, וזאת בכוונה לגרום למותם של אזרחים ישראלים. תחילה, הנאשם וחבריו הנ"ל תכננו לבצע את הפיגוע האמור באחד הכבישים העוקפים בסמוך לרמאללה, אך לאחר ביצוע מספר תצפיות, אשר בהן השתתף הנאשם, הוחלט כי עקב נוכחות כוחות גדולים של צה"ל באיזור, הפיגוע המתוכנן יבוצע בעצרות.
בסופו של דבר מחוד אבו חלאווה ופאהרי מראר יצאו לביצוע הפיגוע המתוכנן ללא הנאשם כי לנאשם לא היה מקום ברכב שבו האנשים הנ"ל יצאו לביצוע הפיגוע.

<u>פרט עשרים ותשעה:</u>

<u>מהות העבירה:</u> קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש פברואר 2002, מספר ימים לאחר האירוע המתואר בפרט האישום הקודם, או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מחוד אבו-חלאווה, פעיל צבאי בכיר בארגון "ג'זדוזי חללי אלאקצאי", הורע הצבאית של "התנויים" של הפתייח, לבצע פיגוע ירי בעצרות, וזאת בכוונה לגרום למותם של אזרחים ישראליים.

<u>פרט שלושים:  (פ.א. 412/02 בנימין)</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 27.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1.  נאצר ג'מאל מוסא שוויש, בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, נפגש בשכם עם דארין אבו-עיישה (להלן: דארין), אשר הביעה בפניו את רצונה לבצע פיגוע התאבדות. בחודש פברואר 2002, ברמאללה, נאצר שוויש נפגש שוב עם דארין, אשר שוב ביקשה לבצע פיגוע התאבדות על מנת לגרום למותם של אזרחים ישראליים רבים בכל הניתן.
2.  נאצר שוויש מנה את הנאשם וכן אל מחוד אבו חלאווה ומחמד נאיפה וזדיוח הנ"ל כי ישנה בחורה המפשפשת לבצע פיגוע התאבדות. הנאשם מסר כי הוא מסכים לשלוח את הבחורה האמורה לביצוע פיגוע התאבדות וכי הוא יכין מטען חבלה לצורך כך. הנאשם הודיע לנאצר שוויש כי עליו לעלם את הבחורה לפני שתצא לביצוע פיגוע התאבדות המתוכנן.
3.  נאצר שוויש הביא את דארין לדירתו של אחוי, חאלד שוויש, הנמצאת בבית חנינא. נאצר שוויש הביא לאות הדירה צלם בשם אחמד עשאי ובחדר עם האחרוני צילם את דארין לקראת ביצוע פיגוע ההתאבדות המתוכנן. במהלך הצילום, דארין קראה צוואה.
4.  יום למחרת, 27.02.02, הגיעו לדירה הנ"ל הנאשם ביחד עם מחוד אבו-חלאווה ומחמד נאיפה (אבו-רביע). הנאשם וחבריו הנ"ל הביאו עמם חגורה, שבה היה מטען חבלה, לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.
5.  מכיוון שדארין סירבה לכך שיעבור עליה את חגורת הנפץ, לילה מחמד צאלח בוכארי, על-פי בקשתו של נאצר שוויש, שהוא נשוי לאחותה הגדולה, הלבישה על גופה של דארין את מטען החבלה הנ"ל. בעת שלילה בוכארי הלבישה את חגורת הנפץ על גופה של דארין, היא הבחינה כי אחת הכתפיות של חגורת הנפץ רופפת וחיזקה אותה באמצעות סיכה.

11

ת.ת. 422/02 מתוקן

6. הנאשם וחבריו הנ"יל תכננו כי דארין תגיע אל תחנת משטרת ישראל ביפו ושם תפוצץ את
מטען הנפץ שהיא נושאת על גופה והכל כדי לגרום למותם של אזרחים ישראליים רבים ככל
האפשר.

7. פאווי מראר גייס לצורך העברתם של דארין אל תוך מדינת ישראל על מנת שתבצע שם את
פיגוע ההתאבדות המתוכנן את מוסא סרי חסונה והאפו עפאתח מקבל.

8. בשעות הערב מראר בעשת שורווי הגיע ביחד עם לילא בוכארי ודארין, אשר נשאה על
גופה את מטען החבלה הנ"יל, לבית החולים "אבני-ריאי" ברמאללה. שם הם נפגשו עם הנאשם,
מחמוד אבו רביע, פאווי מראר ומחמד אבו-חלאווה.

9. משם, הנאשם ביחד עם האנשים הנ"יל העבירו את דארין למחסום אי-ראם. במחסום אי-ראם,
דארין עלתה לרכב סובארו כחול, מ.ר. 7797787, של מוסא סרי חסונה והאפו עפאתח מקבל,
אשר הגיעו למקום על-פי בקשתו של פאווי מראר והיו אמורים להסיע את דארין לתחנת
משטרת ישראל ביפו על מנת שם שם דארין תפעיל את מטען החבלה, אותו נשאה על גופה, ובכך
תגרום בכוונה למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הורה לפאווי מראר
לא לגלות לאנשים שגויסו להסיע את דארין את המטרה האמיתית של הנסיעה, אלא למסור
כי מדובר ביישווני" ועל מנת לשכנע את האנשים הנ"יל כי אלו הם פני הדברים, הנאשם הורה
לפאווי מראר להציע למסיעים לקיים בדרך יחסי מין עם דארין. הנאשם גם הדריך את דארין
לא לשוחח עם המסיעים ולא לגלות להם את מטרת הנסיעה.

10. ביום 27.02.02, סמוך לשעה 22:27, במחסום של צה"יל ומשטרת ישראל "מכביים" בכביש 443
הרכב שבו נסעו דארין, מוסא חסונה והאפו מקבל נעצר לביקורת על-ידי חיילי צה"יל ושוטרי
משטרת ישראל. באותו הרגע פאווי מראר תתקקשר אל מוסא חסונה והאפו מקבל. הנאשם
שהיה יחד עם פאווי מראר בשעת השיחה הבין מהאחרון כי הרכב בו נסעה דארין עוכב על-ידי
משטרת ישראל. הנאשם ביקש מפאווי מראר להנחות לדארין להפעיל את מטען החבלה
במחסום בכוונה לגרום למותם של השוטרים הנמצאים שם. משהוכיחה דארין כי לא תצליח
לעבור את מחסום "מכביים" הנ"יל, להיכנס לשטחה של מדינת ישראל ולבצע את פיגוע
ההתאבדות כפי שתוכנן, היא  הפעילה את מטען החבלה שנשאה על גופה בכוונה לגרום
למותם של שוטרי משטרת ישראל וחיילי צה"יל שחיו במחסום הנ"יל.

11. כתוצאה מפיצוץ מטען החבלה, אשר אותו דארין נשאה על גופה נפצע באורח קשה בבטנו
שוטר משטרת ישראל, מרדכי טל, שני שוטר נוספים, דוד כהן ושאול כהן, נפצעו באורח קל.

12. דארין נהרגה במקום כתוצאה מפיצוץ מטען החבלה הנ"יל.

## פרט שלושים ואחד:

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22
לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ"ח-1968 וסעיף 51(א) לצו
בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"יל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר
לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"יל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי יאסר צוואלחה, ראמי זידאן
וסאמר ראתב יונס עוויס רוסייר קלצ'ניקוב ורוסייר אם-16, וזאת על מנת שהאנשים הנ"יל יבצעו
באמצעות כלי הנשק הנ"יל פיגוע ירי לעבר בישוב בית-אל.
לאחר מכן, השלושה הנ"יל התחייבו לנאשם את כלי הנשק הנ"יל וידיווחו כי ביצעו באמצעותם פיגוע
ירי לעבר השומר בשער הישוב בית-אל.

## פרט שלושים ושניים:

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22
לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ"ח-1968 וסעיף 51(א) לצו
בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"יל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר
לגרום בכוונה למותו של אחר, דהיינו:
אל הנאשם הנ"יל, במועד האמור, פנו פעילי היחידה המבצעית של המודיעין הכללי של הרשות
הפלסטינית, אחמד דיב מרעי, תאאר אבן מורחאד וסאמר ראתב יונס עוויס, אשר ביקשו כי הנאשם
יסייע להם להוציא לפועל פיגוע ירי בבניני שקף ברמאללה המוביל לבית-אל. הנאשם הסכים לסייע
להוציא לפועל את הפיגוע האמור. הנאשם, ביחד עם מהנד אבו מהנד אבו-חלאווה, נאצר מחמד יוסף נאגי

ת.ת. 422/02 מתוקן

P 5: 28

(אבו-חמיד) ומחמד נאיפה, המכונה "אבו רביעי", צילמו את שלושת האנשים הנ"ל לקראת ביצוע הפיגוע המתוכנן. לאחר מספר ימים, סאמר עזווה הודיע לנאשם כי חבריו שינו את דעתם ואינם מעוניינים לבצע את הפיגוע המתוכנן. לאור האמור, התכנית לביצוע הפיגוע האמור בוטלה.

## פרט שלושים ושלושה:

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מחנד אבו-חלאווה, פעיל צבאי בכיר בארגון "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, לבצע פיגוע ירי באמצעות רוסי"ר אם-16 לעבר חיילי צה"ל תנמצאים במחסום צה"ל הסמוך לביר-זית, וזאת בכוונה לגרום למותם של חיילי צה"ל.

פיגוע חירי המתוכנן לא בוצע עקב נוכחות כוחות גדולים של צה"ל באיזור ביר-זית, כאשר הנאשם וחברו הנ"ל הביעו כי לאור כמות כוחות צה"ל סיכוייהם להימלט בחיים לאחר ביצוע הפיגוע המתוכנן הינם אפסיים.

## פרט שלושים וארבעה:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש פברואר - תחילת חודש מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונום של כל אחד מאלה: אניה, אווירון, גמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש לייצור, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מחמד נאיפה, המכונה "אבו רביעי", ועם אחמד טאלב מוצטפא ברגותי, המכונה "אלפראנסיי", לשלוח מחבל מתאבד אל תוך מדינת ישראל, על מנת שיבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמד נאיפה הכיר לנאשם וחברו את מחנד אלשאיב, אשר גויס לביצוע פיגוע ההתאבדות המתוכנן.

על-פי בקשתם של הנאשם ושל מחמד נאיפה, אחמד ברגותי הביא רוסי"ר אם-16 לצורך ביצוע פיגוע ההתאבדות המתוכנן. במסגרת ההכנות לביצוע הפיגוע האמור, הנאשם ושני חבריו הנ"ל צילמו באמצעות מצלמת וידאו את מחנד אלשאיב כשהוא מסביר כי הפיגוע הינו בשם "גדודי חללי אלאקצא".

לאחר מכן, הנאשם וחבריו הנ"ל העבירו למחנד אלשאיב אימון תיאורטי ומעשי בשימוש ברוסי"ר אם-16. במהלך האימון הנ"ל, מחנד אלשאיב ירה שתי מהומניות ברוסי"ר האמור.

לאחר מכן, הנאשם וחבריו הובילו את מחנד אלשאיב אל דירה ברמאללה תתחזא, אותה שכר אחמד ברגותי, והורו למהנד אלשאיב לשהות שם מספר ימים עד שהמצב יירגע ומעט ומעבר בכבישי האיזור יהיה קל יותר.

פיגוע ההתאבדות המתוכנן לא יצא אל הפועל מכיוון שמחנד אלשאיב הנ"ל נמלט מהדירה האמורה.

13    ת.פ. 422/02 מתוקן

א

<u>פרט שלושים וחמישה:</u>

<u>מהות העבירה:</u> קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בתחילת חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בעת ששהה ברמאללה, שוחח באמצעות טלפון עם עומר שריף אספעד חינפר ועם מחמד אבו-גיולדי. השניים מסרו לנאשם כי ואאל אחמד סאלם גילאמנה (נורסי) ותאאר באסם מוצטפא גיבארין (טהא) מעוניינים לבצע פיגוע התאבדות. הנאשם הורה לשלוח את שני המתאבדים המתאבדים אליו לרמאללה ביום למחרת. ביום למחרת ואאל נורסי ותאאר גיבארין התקשרו אל הנאשם ואמרו כי נמצאים במחסום יריחו בדרכם לרמאללה, אך שכחו את תעודות הזהות שלהם בבית. בעקבות האמור, הנאשם הורה לשניים לחזור לביתם על מנת לקחת משם את תעודות הזהות ואז לחזור לרמאללה. בשעות הערב באותו היום, מחמד אבו-גיולדי התקשר אל הנאשם ומסר כי שני המתאבדים המתאבדים הנ"ל נעצרו על-ידי הרשות הפלסטינית. לאור האמור לעיל, התכנית לביצוע פיגוע ההתאבדות לא יצאה אל הפועל.

<u>פרט שלושים ושישה:</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באזור, בתחילת חודש מרץ 2002, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. בסוף חודש פברואר - תחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם עיסאן מחמוד נאזיף סטיטה, אשר מסרי לנאשם כי ברצונו לבצע פיגוע. הנאשם שכנע את עיסאן סטיטה לבצע פיגוע התאבדות בתל-אביב בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

2. בעקבות התכנון הנ"ל, הנאשם פנה אל מחמד נאיפה, המכונה "אבו-רביעי", ואל נאצר מחמד יוסף נאג'י (אבו-חמדי), פעילים צבאיים בכירים ב"גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של פתח"ה, בבקשה לסייע בהוצאה לפועל של פיגוע ההתאבדות המתוכנן. הנאשם ביקש לקבל מנאצר אבו-חמדי מטען חבלה על מנת שבאמצעותו יבצע עיסאן סטיטה את פיגוע ההתאבדות המתוכנן. נאצר אבו-חמדי הודיע לנאשם כי ברשותו מטען חבלה רב עוצמה והוא מעוניין למסור אותו לצורך ביצוע פיגוע גדול שיתוכנן היטב. נאצר אבו-חמדי אף בקש מהנאשם להכין תוכנית מפורטת לשם ביצוע הפיגוע ולפמוש את מי שאמור לבצע את פיגוע ההתאבדות.

3. בתיווכו של הנאשם, עיסאן סטיטה נפגש עם נאצר אבו-חמדי במחנה הפליטים אמעו־ר. עיסאן סטיטה מסר לנאצר אבו-חמדי כי הוא מעוניין לבצע פיגוע התאבדות גדול שיגרום למותם של הרבה אנשים. בפגישה האמורה נכח הנאשם עצמו וכן נכחו מוחמד אבו-תלאווה ומוחמד נאיפה, המכונה "אבו-רביעי", שנטלו אף הם חלק בתכנון פיגוע ההתאבדות שאמור היה לבצע עיסאן סטיטה.

4. במהלך הפגישה הנ"ל, עיסאן סטיטה צולם באמצעות מצלמת וידאו של נאצר אבו-חמדי, כשהוא עומד על רקע דגלים של אש"ף וייגדודי חללי אלאקצא", נושא נאום פרידה ולקיחת אחריות מטעם "גדודי חללי אלאקצא" על ביצוע פיגוע ההתאבדות המתוכנן, אשר מלותיו נכתבו על-ידי הנאשם. הנאשם, נאצר אבו-חמדי ויתר חבריהם המעורבים בארגון הפיגוע, תכננו למסור את הקלטת שבה מצולם עיסאן סטיטה לעיתונות, עם ביצוע הפיגוע.

5. לאחר שעיסאן סטיטה צולם כאמור לעיל, הוא הסתפר, התגלח והתלבש בבגדים חדשים, אשר נקנו עבורו, וכל זאת בכדי שלא ייחשף בדרכו לביצוע הפיגוע.

6. לאחר מכן, נאצר אבו-חמדי לימד את עיסאן סטיטה כיצד להפעיל את מטען החבלה שיישא על גופו. מטען החבלה הורכב ממטוף לכיסוי אש מוולא בחומר נפץ, שהוסתר בתוך תיק גב. עיסאן סטיטה היה אמור להפעיל את מטען החבלה באמצעות מפסק שהודבק לכף ידו. המפסק היה מחובר למטען שבתוך התיק באמצעות חוט אשר הוסתר בתוך בגדיו של עיסאן סטיטה.

7. עם השלמת ההכנות לשיגורו של עיסאן סטיטה לביצוע פיגוע ההתאבדות המתוכנן, הגיע למקום עיסא גיבארין שתפקידו היה להסיע את עיסאן סטיטה למקום ביצוע הפיגוע,

בתל-אביב. עיסא גיבארין גויס ליטול חלק בביצוע הפיגוע ע"י מחמד נאייפה, המכונה "אבו-רבעי". עיסא גיבארין הגיע למקום שבו היו הנאשם ויתר המעורבים בתכנון הפיגוע, ברכב מסוג מזדה בעל לוחיות זיהוי פלסטיניות. נאצר אבו-חמיד הורה לחחליף את לוחיות הזיהוי ללוחיות ישראליות ומוהנד אבו-חלאווה עשה כן.

8. עיסאן סטיטה, כשהוא מצויד בתיק עם מטען החבלה, עלה לרכב המזדה שבו נהג עיסא גיבארין ותנויישב במושב האחורי, כאשר מוהנד אבו-חלאווה תתיישב במושב הקדמי. הנאשם, נאצר אבו-חמיד ומוהמד נאייפה נסעו ברכב של נאצר אבו-חמיד כרכב ליווי. שני הרכבים יצאו לדרכם לביצוע פיגוע ההתאבדות המתוכנן. התוכנית הייתה כי הרכבים ייסעו דרך ראפאת-עטרות ומשם ימשיך הרכב שבו ישב עיסאן סטיטה לתל-אביב, שם היה אמור לבצע את פיגוע ההתאבדות המתוכנן בכוונה לגרום למותם של אנשים רבים ככל האפשר.

9. משהגיעו הרכבים למחסום של כוח 17 של הרשות הפלסטינית ערכו נאצר אבו-חמיד ומוהנד אבו-חלאווה בירור עם השוטרים הפלסטינים שבמחסום. מהבירור עלה כי במקום עברו שני גייפים של צה"ל. באותו הרגע אף נשמע רעש של מסוקים באוויר. דברים אלו עוררו את חשדו של נאצר אבו-חמיד אשר החליט לדחות את ביצוע הפיגוע. הנאשם ויתר חבריו חזרו למחנה הפליטים אמארי.

10. יום למחרת, יצא עיסאן סטיטה שוב לביצוע פיגוע ההתאבדות המתוכנן. נאצר אבו-חמיד הלבישו את התיק עם המטען על גבו של עיסאן סטיטה, שיצא ברכב המזדה עם עיסא גיבארין. רכב נוסף שיצא היה מסוג פורד טרנויט שישב בו מוהנד אבו-חלאווה. תפקידו של הרכב הנוסף היה לנסוע לפני הרכב הראשון על מנת לבדוק את הדרך.

11. בהתקרבם לראפאת, שני כלי הרכב הניילו נתקלו במחסום צה"ל והחליטו לחזור למחנה הפליטים אמארי.

## פרט שלושים ושבעה:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרט העבירה:** הנאשם הנ"ל, באזור, בתחילת חודש מרץ 2002, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. ביום 5.3.2002, נהרג מוהנד אבו-חלאווה. הנאשם פגש את נאצר מחמד יוסף נג'יר (אבו-חמיד) וביקש ממנו לבצע פיגוע נקמה בכוונה לגרום למותם של אזרחים ישראליים רבים ככל הניתן. נאצר אבו-חמיד ביקש מהנאשם להמתין עד לאחר תהלוויה של אבו-חלאווה.

2. ביום ח-6.3.3002, לאחר הלוווייתו של מוהנד אבו-חלאווה, נפגש הנאשם עם נאצר אבו-חמיד ועם עיסאן מחמוד נאויף סטיוטה בתחנת האוטובוסים ברמאללה. הנאשם הודיע לנאצר אבו-חמיד כי יש לבצע פיגוע במהירות האפשרית וכי החליט לבצע את הפיגוע ההתאבדות במקום אחר מזה שתוכנן כמפורט בפרט האישום הקודם. בעקבות הוראתו הנ"ל של הנאשם, עיסאן סטיוטה נסע ביחד עם נאצר אבו-חמיד למחנה הפליטים אמארי, שם הוסחר מטען התחבלה, המתואר בפרט האישום הקודם. נאצר אבו-חמיד הלביש את מטען התחבלה הנ"ל על גבו של עיסאן סטיוטה והשניים חזרו לרמאללה ופגשו שוב את הנאשם ואת מחמד נאייפה, המכונה "אבו-רבעי".

3. נאצר אבו-חמיד הדגים לנאשם כיצד מרכבים את מטען החבלה על גבו של עיסאן סטיוטה ונסע בהורח למקום מחבואו.

4. משם, עיסאן סטיטה יצא לכיוון ירושלים בכדי לבצע את פיגוע ההתאבדות המתוכנן בכוונה לגרום למותם של אנשים רבים ככל האפשר, כשהוא נושא את מטען החבלה בתוך תיק על גבו.

5. בסמוך למחסום קלנדיה, עיסאן סטיוטה הבחין בג'יפים של צה"ל ובחיילי צה"ל, אשר חשדו בו. עיסאן סטיוטה פחד, זרק את התיק עם מטען החבלה, וברח מהמקום לכיוון רמאללה.

**פרט שלושים ושמונה:** (פ.א. 580/02 שפט)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מתוצה לו, ביום 10.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. האשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, שוחח עם מג'די אבו-אלווסא, אשר מסר כי יש לו אדם המוכן לבצע פיגוע התאבדות. הנאשם ביקש לשוחח עם האדם האמור.

2. למחרת היום, ברמאללה, הנאשם נפגש עם דורע'אם עזת מחמד-סעיד זכארנה, אשר מסר כי הינו האדם עליו דיבר מאג'ד אבו-אלווסא וכי הוא מוכן לבצע פיגוע התאבדות.

3. הנאשם נפגש עם נאצר ג'מאל מוסא שוויש ומסר כי ישנו אדם המבקש לבצע פיגוע התאבדות בתוך מדינת ישראל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

4. הנאשם ביקש ממאצר שוויש לסייע בצילום המחבל המתאבד לקראת יציאתו של האחרון לביצוע פיגוע ההתאבדות המתוכנן. נאצר שוויש הסכים לצלם את המחבל המתאבד בביתו של אחיו, חאלד שוויש, הנמצא בביתונייא.

5. ביום 09.03.02 הנאשם ונאצר שוויש הגיעו לדירה האמורה בביתונייא. לדירה האמורה הגיע גם המחבל המתאבד שהוא דורע'אם עזת מחמד-סעיד זכארנה, וכן הצלם אחמד עצאי ועיתונאית נוספת. בעת צילומו של המחבל המתאבד נכח גם אחיו של הנאשם - סאמר עוויס.

6. לאחר מכן, סאמר עוויס נסע ביחד עם דורע'אם זכארנה לדירתו של הנאשם במחנת הפליטים אמעריי. בדרכם למקום הנ"ל, מסוק ירה טיל לעבר הרכב. דורע'אם זכארנה הספיק לברוח מהרכב הנ"ל ואילו סאמר עוויס נהרג בתוצאה מפגיעת הטיל הנ"ל.

7. דורע'אם זכארנה קיבל, בהתאם לתכנית שעערכה מוקדם יותר בין הנאשם וחבריו, מידי מחמד נאופא, המכונה "אבו רבעי", רוסי"ר קלצ'ניקוב, תחמושת ושני רימוני-יד וביום 10.03.02 יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן במטרה לגרום למותם של אנשים רבים ככל האפשר.

8. ביום 10.03.02, בסביבות השעה 14:30, המחבל המתאבד הנ"ל (דורע'אם זכארנה) ניסה לחדור אל תוך מדינת ישראל כשהוא חמוש ברוסי"ר קלצ'ניקוב, מחסניות מלאות בכדורים ושני רימוני-יד, וזאת על מנת לבצע את פיגוע ההתאבדות המתוכנן ולגרום בכוונה למותם של אזרחים רבים ככל היתן. דורע'אם זכארנה הובא למחסום א-ראם על-ידי עיסא מחמד מחמוד מבאריין, אשר גויס למשימה זו על-ידי ראש המודיעין הכללי של הרשות הפלסטינית - תאופיק טיראווי.

9. במועד ובשעה האמורים, במחסום א-ראם או בסמוך לכך, המחבל המתאבד הנ"ל, דורע'אם זכארנה, נהרג על-ידי כוחות הביטחון הישראליים בעת ניסיונו לחדור אל תוך מדינת ישראל כאמור לעיל.

**פרט שלושים ותשעה:** (פ.א. 2069/02 מת"ם י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מתוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. במהלך שחותו של הנאשם ברמאללה בתחילת שנת 2002, הנאשם הכיר את נאצר ג'מאל מוסא שוויש, פעיל צבאי בכיר ב"גדודי חללי אלאקצא", הזרוע הצבאית של "חתנויזי" של הפתיח.

2. ממאצר שוויש נודע לנאשם כי נמצא ברמאללה מחמד חשאיקה, אשר אותו ניסה נאצר שוויש לשלוח לביצוע פיגוע התאבדות בתוך שטחה של מדינת ישראל.

3. בתחילת חודש מרץ 2002 מחמד חשאיקה היה עצור במתחם "המוקטעה" של הרשות הפלסטינית ברמאללה. בעקבות הפנה של הנאשם, שהוא המודיעין הכללי של הרשות הפלסטינית, מחמד חשאיקה שוחרר ממעצר האמור.

4. לאחר השחרור, מחמד חשאיקה פנה אל הנאשם ואל נאצר שוויש והודיע על רצונו לבצע פיגוע התאבדות. הנאשם ונאצר שוויש הסכימו להכין את מחמד חשאיקה ולצייד אותו בכל הדרוש לצורך ביצוע פיגוע ההתאבדות בתוך מדינת ישראל. נאצר שוויש מסר לנאשם כי הפיגוע

16

ת.ת. 422/02 מתוקן

P 5: 32

המתוכנן יהיה פיגוע נקמה על מותו של אחיו של הנאשם, סאמר עוויס, אשר נהרג ביום
09.03.02.

5. הנאשם הבטיח לנאצר שווויש לדאוג לשחרור את האחרון מהמעצר ברשות הפלסטינית אם
ייעצר בעקבות ביצוע הפיגוע הממותכנן.

6. ממחמד חשאויקה סיפר לנאשם ולנאצר שווויש כי פנה אליו אבו איאד אלשמעה, קצין במודיעין
של הרשות הפלסטינית ברמאללה, והציע כי ישלח את ממחמד חשאויקה לבצע פיגוע התאבדות.
הנאשם ונאצר שווויש שכנעו את ממחמד חשאויקה שלא להאמין לקצין המודיעין של הרשות
הפלסטינית ממשש שיסגיר אותו לידי ישראל. הנאשם ונאצר שווויש שכנעו את ממחמד
חשאויקה כי הם ידאגו לכל הדרוש על מנת לשוולהו לביצוע פיגוע התאבדות בתוך מדינת
ישראל.

7. נאצר שווויש מצא דירה שכורה ברמאללה, אשר בה הוא וחבריו היו אמורים להכין את פיגוע
ההתאבדות הממתוכנן.

8. נאצר שווויש הוביל אל הדירה האמורה את הנאשם ואת ממחמד חשאויקה.

9. על-פי בקשתו של הנאשם, נאצר שווויש גייס את סיגוד שולי, תושבת עצירה שמאליה, לביצוע
פיגוע ההתאבדות הנ"ל, וזאת לאחר שהנאשם ונאצר שווויש החליטו כי יהיו שני מחבלים
מתאבדים, גבר ואישה, אשר יבצעו פיגוע התאבדות כפול וזאת בכוונה לגרום למותם של
אזרחים ישראלים רבים ככל האפשר. סיגוד שולי הגיעה אף היא לדירה האמורה.

10. בדירה האמורה, על-פי בקשתו של נאצר שווויש, הכלה אחמד עצאי צילם באמצעות מצלמה
ווידאו את ממחמד חשאויקה ואת סיגוד שולי לקראת ביצוע פיגוע ההתאבדות הממתוכן.

11. הנאשם הדריך את ממחמד חשאויקה לפוצץ את עצמו ולגרום למותם של אזרחים ישראליים
רבים ככל הניתן. הנאשם הבהיר לממחמד חשאויקה כי אם ייעצר עליו לפוצץ את עצמו במקום
וכי העיקר שיהרוג יהודי - אפילו אחד, אבל שיהרוג.

12. בשלב חוז, נאצר שווויש החליט כי אינו רוצה בכך שסיגוד שולי תשתתף בביצוע פיגוע
ההתאבדות, והודיע למשפחתה של האחרונה על כוונתיה של בתם. כתוצאה מכך, סיגוד שולי
חזרה לאיזור שכם ומשם נסלטה לירדן.

13. הנאשם פנה אל משרדו של ראש המודיעין הכללי ברשות הפלסטינית, תאופיק טיראווי,
והביא משם תומרי נפצ. הנאשם ייצר מחומרי הנפצ הנ"ל מטען חבלה לצורך ביצוע פיגוע
ההתאבדות הממתוכנן.

14. לאחר מכן, הנאשם ונאצר שווויש הכינו את חגורת הנפצ.

15. הנאשם גייס לצורך העברתו של ממחד חשאויקה אל תוך מדינת ישראל לביצוע פיגוע
ההתאבדות הממתוכנן את קאהירה סעדי סעדי.

16. נאצר שווויש גייס לצורך העברתו של ממחד חשאויקה אל תוך מדינת ישראל לביצוע פיגוע
ההתאבדות הממתוכנן את סנאא ממחד שחאדה.

17. ביום 20.03.02 נאצר שווויש נפגש ברמאללה עם ראש "יהתנזיים" של הפת"ח באיזור, מרואן
ברגותי. נאצר שווויש מסר למרואן ברגותי כי הנאשם עומד לשלוח מחבל מתאבד לצורך ביצוע
פיגוע התאבדות בתוך מדינת ישראל. מרואן ברגותי ביקש לדעת מה הנאשם ונאצר שווויש
זקוקים לדבר מה לצורך ההוצאה לפועל של הפיגוע הממתוכנן. למרות שנאצר שווויש השיב
בשלילה על השאלה הנ"ל, מרואן ברגותי מסר לאחרון סכום של 600 דולר ארהייב.

18. ביום 21.03.02 הנאשם נפגש ברמאללה עם נאצר שווויש ועם סנאא שחאדה. הנאשם הסכיר
לסנאא שחאדה כי עליה לחוביל את הממחבל המתאבד אל ירושלים על מנת שיבצע שם את
פיגוע ההתאבדות המתוכנן וזאת מאחר שהיא מכירה היטב את ירושלים ואת הדרכים
המובילות אליה.

19. באותו היום, הנאשם, נאצר שווויש וממחמד חשאויקה ביקרו במשרדו של חסין א-שיח, מזכ"ל
ארגון הפת"ח באיזור. שם, הנאשם קיבל מידי חסין א-שיח כסף ושני רימוני-יד לצורך
ההוצאה לפועל של הפיגוע המתוכנן.

20. הנאשם וחבריו הנ"ל רכשו בכסף האמור בגדים עבור ממחד חשאויקה, אשר בהם ביצע
האחרון את פיגוע ההתאבדות, אשר יתואר בהמשך.

21. לאחר מכן, הנאשם עם חבריו הנ"ל הגיע לדירה ברמאללה, אשר בה היו ממחד חשאויקה
הנ"ל, חמי חדר ומוזיד אלמצרי. הנאשם ומוזיד אלמצרי הכינו את ממחד חשאויקה לקראת
ביצוע פיגוע ההתאבדות המתוכנן והלבישו עליו את חגורת הנפצ הנ"ל.

22. לאחר מכן, הנאשם יצר קשר עם קאהירה סעדי וביקש מהאחרונה לסייע בהעברת מחבל
מתאבד לירושלים.

23. לאחר זמן מה, קאהירה סעדי הגיעה אל הנאשם וחבריו הנ"ל.

24. בשעות הצהרים, ביום 21.03.02, נאצר שווויש הסיע מרמאללה למחסום קלנדיה, ברכב שכור,
את ממחמד חשאויקה שנשא על גופו את חגורת הנפצ הנ"ל וכן את סנאא שחאדה וקאהירה
סעדי שליוו את הממחבל המתאבד הנ"ל.

25. לאחר מכן, ולאחר שנפרד בנשיקה מממחד חשאויקה, נאצר שווויש חזר לרמאללה.

17                                      ת.ת. 422/02 מתוקן

26. קאהירה סעדי וסנאא שחאדה הובילו את מחמד חשאיקה, אשר נשא על גופו את חגורת הנפץ הנ"ל, לרחוב המלך גירג'י בירושלים. השתיים בחרו את המקום מכיוון שהוא הומה אדם בשעות אחרי הצהרים ולכן השטניים החליטו כי הוא "מתאים" לביצוע פיגוע התאבדות המתוכנן.

27. לאחר שסגאא שחאדה וקאהירה סעדי עזבו את מחמד חשאיקה ברחוב המלך גירג'י, מתמד חשאיקה הגיע אל מעבר החצנייה הנמצא בסמוך לבית-קפה "ארומה" וסמוך לצומת הרחובות המלך גירג'י וההסתדרות.

28. במקום האמור, בסמוך לשעה 16:20 ביום האמור, מחמד חשאיקה הפעיל את מטען התבלה, אשר אותו נשא על גופו, כשהוא נמצא בתוך קהל האנשים ואת במטרה לגרום למוות של אנשים רבים ככל האפשר.

29. לאחר שלנאשם וחבריו נודע על ביצוע פיגוע התאבדות המתוכנן, נאצר שוויש העביר קלטת וידאו עם "צוואתהו" המצולמת של מחמד חשאיקה לידי עיתונאי אחמד עג'אני.

30. לאחר מכן, הנאשם ונאצר שוויש פנו אל חסין א-שיח', מזכ"ל ארגון הפתי"ח באיזור, וניסחו הודעה, אשר בה "גדוהי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפתי"ח, נטלו אחריות על ביצוע פיגוע התופה המתואר לעיל. לאחר עריכת ההודעה, נאצר שוויש ניגש אל משרדי חברת החדשות ANN ושם צולם כשהוא מקריא את ההודעה הנ"ל של נטילת האחריות לפיגוע המתואר לעיל.

31. במעשיו המתוארים לעיל, הנאשם הנ"ל, במועד האמור, גרם בכוונה למותו של רס"מ גדי שמש ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר לעיל.

**פרט ארבעים: (פ.א. 2069/02 מת"ס י-ם)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"יל-1970) וסעיף 14א(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם בכוונה למותו של **ציפורה שמש ז"ל,** אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתוארו בפרט האישום השלושים ותשעה. **ציפורה שמש ז"ל היתה בעת מותה בחודש הרביעי להריון.**

**פרט ארבעים ואחד: פ.א. (2069/02 מת"ס י-ם)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"יל-1970) וסעיף 14א(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, גרם בכוונה למותו של **יצחק כהן ז"ל,** אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום השלושים ותשעה.

ת.ח. 422/02 מתוקן

P 5: 34

<u>פרט ארבעים ושניים:</u>  (פ.א. 2069/02 מת"ם י-ם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעגד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם לגרום למותם של אזרחים רבים ככל הניתן. כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד תשאיקה, כפי שתואר בפרט האישום השלושים ותשעה, נפצעו 81 בני-אדם.

<u>פרט ארבעים ושלושה:</u>  (פ.א. 2069/02 מת"ם י-ם)

<u>מהות העבירה:</u> חיוק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, חרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במעגד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם נזק כבד לבניינים ובתי-עסק הסמוכים למוקם האמור וכן לכלי רכב רבים, אשר היו בסמוך למקום המתואר בפרט האישום השלושים ותשעה, אשר בו הפעיל מחמד תשאיקה את מטען החבלה, כפי שתואר בפרט האישום השלושים ותשעה.

<u>פרט ארבעים וארבעה:</u>

<u>מהות העבירה:</u> ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, ייצר כלי-ירייה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם עמאר מרדי, אשר הכיר לנאשם את לואי עודה. עמאר מרדי מסר לנאשם כי ביכולתו של לואי עודה להביא לנאשם חומרים כימיים על מנת שהנאשם ייצר מהם מטעני חבלה. לואי עודה ביקש כי הנאשם ייצר עבורו מטעני חבלה על מנת שהאחרון יבצע באמצעותם פיגוע נגד גייף של צה"ל. הנאשם הסכים לבקשה האמורה.
לאחר יומיים, ברמאללה או בסמוך לכך, הנאשם ייצר מטען חבלה מצינור ברזל וחומרים כימיים שהביא לואי עודה. לואי עודה הסביר לנאשם כי באמצעות מטען החבלה האמור הוא יבצע פיגוע נגד גייף של צה"ל בכביש עוקף רמאללה.

**פרט ארבעים וחמישה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מסי 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם מחמד עודה, פעיל בארגון הג׳יהאד האסלאמי הפלסטיני. מחמד עודה הציע לבצע פיגוע התאבדות תוך שיתוף פעולה בין "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, לבין הזרוע הצבאית של תנ׳יהאד האסלאמי הפלסטיני. הנאשם הסכים להצעת האמורה. הנאשם ומחמד עודה סיכמו כי יפעלו במשותף על מנת להוציא לפועל פיגוע התאבדות שבו ישתתפו שני מחבלים מתאבדים – אחד מטעם "גדודי חללי אלאקצא" והשני מטעם הג׳יהאד. הנאשם הסכים להצעה לחצצה האמורה, אך ביקש כי מחמד עודה ידאג להבאת כלי נשק וחומרי נפץ.
הנאשם אף קיבל ממחמד עודה הלוואה בסך 1,000 דינר ירדני לצורך רכישת כלי הנשק.
התכנית האמורה לא יצאה אל הפועל עקב מעצרו של הנאשם על-ידי כוחות הביטחון הישראליים ביום 30.03.02.

**פרט ארבעים ושישה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מסי 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם מחמד קבלאווי. הנאשם הציע למחמד קבלאווי לבצע פיגוע ירי ותאחרוז הסכים. מחמד קבלאווי הבהיר לנאשם כי הוא יודע להשתמש באקדח. מחמד קבלאווי סיפר לנאשם כי ישנו קצין יהודי בכיר אשר נוהג להגיע למכוללת בעזוריה כשהוא חמוש במיני-עוזי, וכן ישנם שוטרי מג"ב המגיעים לאותה מכוללת בעזוריה. הנאשם סיכם עם מחמד קבלאווי כי הנאשם יעביר לידי האחרון אקדח ומחמד קבלאווי ירצח באמצעות האקדח האמור את הקצין הנ"ל ובמידה האפשר ירצח גם את שוטרי מג"ב בעת שיגיעו לעזוריה. מחמד קבלאווי הסכים להצעת הנאשם. באותו היום הנאשם קיבל מידי אחמד טאלב מוצטפא ברגותי אקדח 14 . לאחר יומיים הנאשם העביר את האקדח הנ"ל לידי מחמד קבלאווי לצורך ביצוע הפיגוע המתוכנן. הנאשם הורה למחמד קבלאווי לבצע את הפיגוע המתוכנן עוד באותו הערב.
באותו הערב מחמד קבלאווי יצר קשר עם הנאשם דרך חדר דבעיה ומסר כי לא ביצע את הפיגוע המתוכנן. הנאשם אמר לחדר דבעיה למסור למחמד קבלאווי שיבצע את הפיגוע המתוכנן בעוד יום-יומיים.
מספר ימים לאחר מכן, הנאשם נעצר על-ידי כוחות הביטחון הישראליים.

ת.ת. 422/02 מתוקן

P 5: 36

<u>עדי התביעה:</u>

1. רס״ר משה לוי, מ.א. 953117, לחייק יהודה. [נובה אמרות הנאשם מיום 31.03.02, 28.04.02, 29.04.02, 08.05.02 ומגיש כתבי-ידו של הנאשם בערבית + זכיידי תפיסה וסימון + שרטוטים בכתב-ידו של הנאשם]
2. רס״ר דוד מורחי, מ.א. 94857, לחייק יהודה. [נובה אמרת הנאשם מיום 04.04.02 ומגיש כתב-ידו של הנאשם בערבית]
3. רס״ר דוד זריחן, מ.א. 588798, מגיב בית-שמש. [נובה אמרת הנאשם מיום 15.05.02]
4. רס״ר שלמה כהן, מ.א. 53377, מפלג מיעוטים, י-ם. [נובה שתי אמרות הנאשם מיום 28.05.02]
5. מוסא סרי חסונה, ת.ז. 040951592. (עצור)
6. ראפפ ל/פתח מקבל, ת.ז. 040976136. (עצור)
7. נאצר גימאל מוסא שוויש, ת.ז. 993006188. (עצור) (ת.ת. 733/02)
8. עיסאע מחמוד נאייף סטיטה, ת.ז. 941165466. (עצור) (ת.ת. 320/02)
9. נאצר ממחוד יוסף נאגי (אבו-חמזד), תייו 923918882. (אסיר)
10. זיד יונס אחמד יונס, ת.ז. 966647653. (עצור)
11. נאצר ממחוד עוויס, ת.ז. 900358664. (עצור)
12. לילא מחמד צאלח בוכארי, ת.ז. 900128737. (עצורה) (ת.ת. 595/02)
13. מתקקאל נצר ע/ראזק נאטוצי, ת.ז. 975080854. (עצור)
14. איאד נדיר ערסאן עומר, ת.ז. 907360739. (עצור)
15. ואאל אחמד סאלם ג/לאמנה (נורסין), ת.ז. 941176695. (עצור)
16. אחמד חוסין מחמוד אבו-נילרה, ת.ז. 905697389. (עצור)
17. עומר שריף אסעד חיפה, ת.ז. 900102369. (עצור)
18. מג/די סעוד סלים אבו-אלוופא, ת.ז. 901078188. (עצור)
19. תאאר באסם מוצטפא ג/באריע (טוהא), ת.ז. 910675867. (עצור)
20. ג/אסר חליל אסמאעיל עאצי, ת.ז. 988353215. (עצור)
21. מואיד עלי ממחד גיראדאת, ת.ז. 941690224. (עצור)
22. חסאן ראתב ונס עוויס, ת.ז. 938150026. (עצור)
23. קאהירת סעיד סעדי, ת.ז. 903946960. (עצורה) (ת.ת. 451/02)
24. אחמד טאלב מוצטפא ברבותי, ת.ז. 994466860. (עצור) (ת.ת. 444/02)
25. סנאא מחמוד שראדאת, ת.ז. 081021198. (עצורה) (ת.ת. 484/02)
26. עיסא מתחמד מחמוד גיבריץ, ת.ז. 906446521. (עצור) (ת.ת. 427/02)
27. עוביידה ע/רחמאן ממחד גיאבר, ת.ז. 989498118. (עצורה)
28. רביע פפיק שרוף אבו-רוב, ת.ז. 901815191. (עצור)

**פ.א.4753/01. עפולה**

29. רס״ר יורם בן, מ.א. 969466, תחנת עפולה. [מגיש דוייח פעולה + לוחות תצלומים]
30. רודיין נפסו, מ.א. 418137, מזייפ - תחנת עפולה. [מגיש לוח תצלומים]
31. רס״מ שי כץ, מ.א. 572941, תחנת עפולה. [מגיש דוייח פעולה]
32. רס״מ יעקב מורחי, תחנת עפולה. [מגיש דוייח פעולה]
33. רס״ל גור שוקרון, תחנת עפולה. [מגיש דוייח פעולה]
34. רס״ג אריה בנאסולי, תחנת עפולה. [מגיש דוייח זכ״ד]
35. רס״מ סמיר חינו, מ.א. 968222, תחנת עפולה. [מגיש טופס לוואי למוצגים]
36. רס״ל יובל קמחי, מ.א. 755322, תחנת עפולה. [מגיש זכ״ד]
37. רס״ר שלומי אדרי, מ.א. 948984, תחנת עפולה. [מגיש דוייח תפיסה וסימון]
38. רס״ר חיים פינגנוים, מ.א. 949842, תחנת עפולה. [מגיש דוייח פעולה]
39. פקד מוטי חריב, מ.א. 93400, תחנת עפולה. [מגיש דוייח תפיסה וסימון + ת.ז. שנתפסה בשטח]
40. תעודות רפואיות של הפצועים.
41. הודעת פטירה עייש מיכל מור זייל.
42. הודעת פטירה עייש נועם גוזנסקי זייל.
43. פרופי יהודה היס, המכון הלאומי לרפואה משפטית. [מגיש חווייד מוזמחה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

<u>רשימת עדים נוספת בנונע לפצועים והרוגים בפיגוע בתחנה המרכזית בעפולה ביום 27.11.01
תימסר במהלך המשפט</u>

---

ת.ת. 422/02 מתוקן

P 5: 37

## פ.א. 412/02 בנימין

44. שאול כהן, מ.א. 759407, תחנת בנימין. [עדות]
45. דוד כהן, ת.ז. 028999910, תחנת בנימין. [עדות]
46. מרדכי טל, ת.ז. 29501590, תחנת בנימין. [נמצע קשה בפיגוע]
47. אלי טבע, ת.ז. 025716218. [פרטים בתביעה] (חייל מילואים היה במחסום בעת הפיגוע - ראה את המחבלת המתאבדת]
48. ליאור שטיינדם, ת.ז. 025044421. [פרטים בתביעה] [מפקד כוח מילואים במחסום בעת הפיגוע, שוחח עם המחבלת המתאבדת לפני הפיצוע]
49. אילן פקטורי, ת.ז. 308900141. [פרטים בתביעה] (חיל מילואים במחסום בעת הפיגוע - בדק את הרכב שבו נסעה המחבלת המתאבדת]
50. חנניה שנירד, ת.ז. 032781072. [פרטים בתביעה] [הגיע למקום מיד לאחר הפיגוע]
51. רס"ל שי אלנרבלף, מ.א. 1010065, תחנת מודיעין. [מגיש דו"ח פעולה]
52. רס"ל אלי חגיג, מ.א. 1054782, תחנת מודיעין. [מגיש דו"ח פעולה]
53. מפקח ארגון שושני, מטא"ר, אגף השיטור והביטחון, מדור מעבדות חבלה, שלוחת תל-אביב. [מגיש חוו"ד מומחה ראשונית וחוו"ד מומחה מתיק זב/23 - 0821/2002 + תצלומים + טופס לוואי למוצגים] [יזומן לפי הדרישה המפורשת של הסניגוריה בלבד]
54. שרה אברמוביץ'-בר, מז"פ - המעבדה האנליטית, מטא"ר - ירושלים. [מגישה חוו"ד מומחה מתיק ז"ב/33 - 54484/02] [תזומן לפי בקשה מפורשת של הסניגוריה בלבד]

## פ.א. 580/02 שפט

55. יגאל מאיר, ת.ז. 040202418, מג"ב סיוון, פלוגה מי"ב. [פרטים בתביעה] [עדות]
56. פקד משה חידרה, ת.ז. 037537412, מג"ב לביא. [פרטים בתביעה] [עדות]
57. פקד לאונור רבינוביץ, מ.א. 71055859, מג"ב לביא. [פרטים בתביעה] [עדות]
58. מפקח אסף זגורי, מ.א. 1049196, מג"ב לביא. [פרטים בתביעה] [עדות]
59. רס"ר עודד מאירין, מ.א. 1065937, מתיים, ימ"ר - י-ם. [מגיש דו"ח פעולה/תפיסה וסימון + טופס לוואי למוצגים]
60. רפ"ק ליאור נדיבי, מ.א. 952127, מז"פ - תחנת ציון. [מגיש לוחות תצלומים]
61. פואד כהן, מ.א. 1048701, מתיים, ימ"ר - י-ם. [מגיש זכ"ד + תמונות פולרואיד]

## 2069/02 מתי"ם י-ם

62. רס"ין אריאל יערן, מעבדת חבלה, מטא"ר - ירושלים. [מגיש דו"ח תפיסה וסימון + חוו"ד מומחה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
63. שרה אברמוביץ-בר, המעבדה האנליטית, מטא"ר - ירושלים. [מגישה חוו"ד מומחה] [תזומן לפי דרישה מפורשת של הסניגוריה בלבד]
64. דרור כהן, מז"פ תחנת ציון - ירושלים. [מגיש תמונות מזירת הפיגוע]
65. יגאל שמש, ת.ז. 028077964. [פרטים בתביעה] [יהו גופתו של גדי שמש זייל]
66. יניב יוסף, ת.ז. 027454958. [פרטים בתביעה] [זיהוי גופתו של גדי שמש זייל]
67. חגי פנחס, ת.ז. 028766723. [פרטים בתביעה] [זיהוי גופתו של גדי שמש זייל]
68. יתוא בן חמו, ת.ז. 038342986. [פרטים בתביעה] [זיהוי גופתו של ציפורה שמש זייל]
69. ליאור מיקF, ת.ז. 036386753. [פרטים בתביעה] [ראה את המחבל מתפוצץ, נפצע בפיגוע]
70. אילן באואר, מסי דרכון ארה"ב 700767376. [פרטים בתביעה] [היה יחד עם בנו הקטן סמוך למחבל בעת הפיצוץ, שניהם נפצעו]
71. שירן דרווש, ת.ז. 039888862. [פרטים בתביעה] [היתה בסמוך למחבל בעת הפיצוץ, נפגעה]
72. תזקיה לנשטיין, מסי דרכון הולנדי 115402413. [פרטים בתביעה] [נפצע בפיגוע, ראה את המחבל בעת הפיגוע]
73. מריון קמפלר, ת.ז. 016432148. [פרטים בתביעה] [נפצעה בפיגוע]
74. אסי ארמוזה, ת.ז. 051910735. [פרטים בתביעה] [נפצעה בפיגוע]
75. לורנס סלם, ת.ז. 312738537. [פרטים בתביעה] [נפגע קל בפיגוע]
76. טל כהן, ת.ז. 029506270. [פרטים בתביעה] [נפצע בפיגוע]
77. מייוולה חיים יעקבניאן, ת.ז. 011573441. [פרטים בתביעה] [נפצעה בפיגוע, נגרם נזק לחנותה]
78. אלי לוי, ת.ז. 033643438. [פרטים בתביעה] [נפגע קל בפיגוע]
79. נתנאל גדעון, ת.ז. 012176707. [פרטים בתביעה] [נפגע קל, חנותו נפגעה]
80. אסטוריד (רבקה) גורגן, ת.ז. 301921169. [פרטים בתביעה] [נפצעה בפיגוע]
81. גזל חכמוג, ת.ז. 304119407. [פרטים בתביעה] [נפצעה בפיגוע]
82. בשמת כהן, ת.ז. 061273413. [פרטים בתביעה] [נפצעה בפיגוע]
83. משה פיך, ת.ז. 015776636. [פרטים בתביעה] [נפגע קל בפיגוע]
84. יפה לוי, ת.ז. 055466924. [פרטים בתביעה] [נפגעה קל בפיגוע]

ת.ה. 422/02 מתוקן

P 5: 38

85. רובי אסרף ,ת.ז. 021398011. (פרטים בתביעה) [ראה את המחבל בעת הפיצוץ]
86. אורה פאיזקוב, ת.ז. 039526371. (פרטים בתביעה) [היתה סמוך למקום הפיצוץ]
87. הלל אדם, ת.ז. 302040969. (פרטים בתביעה)צ [עד ראיה, טיפל בפצועים]
88. רחמים הבלר, ת.ז. 059732735. (פרטים בתביעה) [נגרם נזק לחנותו]
89. ד"ר חן קונל, המכון הלאומי לרפואה משפטית. [מגישה חווי"ד מומחה] [תזומן לפי דרישה מפורשת של התביעה בלבד]
90. פרופ' יהודה היס, המכון הלאומי לרפואה משפטית. [מגיש חווי"ד מומחה] [יזומן לפי דרישה מפורשת של התביעה בלבד]
91. תעודת פטירה - יצחק כהן ז"ל.
92. רשימת נפגעים מתפיגוע של עיריית ירושלים - מוקד 106. (רשומה מוסדית)
93. תעודות רפואות.

<u>רשימת עדים נוספת בנוגע לפצועים והרוגים בפיגוע ברחוב המלך גיורגי בירושלים ביום 21.03.02 תימסר במהלך המשפט</u>

מיכאל קוטליק, סרן
תובע    צבאי

תאריך: 14.01.2003
סימוכין: 02-422 מתוקן

23                                    ת.ת. 422/02 מתוקן