

PLAINTIFF'S
EXHIBIT
452
tabbies

KAS/ 236B

| Israel | Defense | Forces |
|---|---|---|

| In the Military Court | Court Case: | *3380*/03 |
|---|---|---|
| in Beit El | Prosecution Case: | 380/03 |
| Before a panel | Detailed Incident Case: | 6891/01 Jerusalem Special Duties |
| | | Department |
| | | 6554/01 Zion |
| | | 10283/01 Zion |
| | | 1512/02 Moria |
| | | 9638/02 Rishon le Zion |
| | | 5601/02 Rishon le Zion |
| | | 2881/02 Glilot |
| | | 3975/02 Lod |
| | | 9913/02 Rehovot |
| | | 1197/02 Shalem |
| | | 19284/02 Yarkon |
| | | 21011/02 Yarkon |
| | | 1425/03 Binyamin |

### In the trial between the Military Prosecutor – The Prosecutor

#### - v. -

Abdullah Ghaleb Abdullah Barghouti (Jamal) (known as "Kamal", "the Engineer")
Identity No. (fictitious): 30300028 (Jordanian passport E-891198), born October 15, 1972, a
  resident of Beit Rima
Detained since March 5, 2003

#### - The Defendant -

## Indictment

### The above mentioned Defendant is hereby accused of committing the following offenses:

### First count:

**Nature of the offense:** Attempt to manufacture an explosive device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 29

**Details of the offense:** The above mentioned Defendant, in the Area, in May 2001 or thereabouts, manufactured a firearm, ammunition, a bomb, a hand grenade, an explosive or incendiary object, without possessing a permit certificate having been issued to him by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the above mentioned time, [in] Beit Rima or thereabouts, met Akaram Salah Akram Ahsin (Barghouti) and asked the latter to introduce military operatives to him. Akram Ahsin asked the Defendant to come to his home. After the Defendant came to the home of Akram Ahsin, the latter provided the Defendant with an explosive device.

The Defendant took the device with him and in the Defendant's supermarket in Beit Rima, dismantled the explosive device. The Defendant attempted to ignite the explosives that he had extracted from the explosive device and learned that they were good explosives. The Defendant made an activation mechanism for the above mentioned explosive device using an alarm clock but was unable to activate the above mentioned explosive device using the above mentioned activation mechanism.

Prosecution Case 380/03

1

[Stamp] P 7: 29 [continued]

**Second count:**

**Nature of the offense:** Membership in an unlawful association, an offense pursuant to Regulation 85 (1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from May 2001 until the day of his arrest, was a member or acted as a member of an unlawful association, as follows:

The above mentioned Defendant, during the period set forth, was a member of the Az-Adin Alqassam Brigades, the military arm of the Hamas Organization, which is an unlawful association.

The Defendant, within the framework of his activity in the military arm of Hamas, was responsible for manufacturing explosive devices and training other individuals in the manufacture of explosive devices. In view of his "success" in the said function, the Defendant acquired the alias "the Engineer".

In May 2001, in Beit Rima or thereabouts, the Defendant turned to Bilal Ya'akub Ahmed Barghouti (Utman), a military operative in Hamas and asked the latter to recruit the Defendant into the ranks of the military arm of the organization. The Defendant informed Bilal Barghouti that he could manufacture explosive devices for Hamas. Bilal Barghouti had the Defendant meet Aiman Halawa in Nablus; he was a senior military operative of Hamas, who recruited the Defendant into the Az-Adin Alqassam Brigades.

In late 2001, in Ramallah or thereabouts, the Defendant met Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or the Sheikh, the head of the Az-Adin Alqassam Brigades in the Ramallah area. The Defendant agreed to Ibrahim Hamad's proposal to act under the command of the latter and to manufacture explosive devices for the purpose of carrying out attacks against the Israeli targets. Ibrahim Hamad gave the Defendant the nom de guerre Kamal. Later, the Defendant did act as had been agreed between him and Ibrahim Hamad.

During the Defendant's activity under the command of Ibrahim Hamad, the Defendant was in contact with the above mentioned individual through dispatches that were conveyed by Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2.

In exchange for his activity in Hamas, the Defendant received financial support from Ibrahim Hamad, which was transferred to the Defendant by Salah 2. In total, the Defendant received the sum of **117,000 U.S. dollars** from Ibrahim Hamad.

In addition, the Defendant received immediate financial support in the total of 500 U.S. dollars from Marwan Barghouti, the head of the Tanzim of the Fatah.

[Stamp] P 7: 30

**Third count:**

**Nature of the offense:** Military training without possessing a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, during the months of May-June 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant met Aiman Halawa, during the period set forth, in Nablus or thereabouts, on three different occasions; he was a senior military operative of Hamas.

During the above mentioned meetings, Aiman Halawa taught the Defendant how to make the Um Al Abed (TATP) explosive, explosive devices, the activation mechanisms for the explosive devices (including wireless mechanisms), hand grenades and explosive belts.

Aiman Halawa taught the Defendant how to camouflage the explosive devices as stones and as beverage cans.

Aiman Halawa taught the Defendant how to make poison from potatoes, which are inserted into the explosive device to turn them into chemical charges.

At the end of each of these training sessions, the Defendant received a sheet from Aiman Halawa, which listed instructions for making explosive devices that the Defendant learned to manufacture.

Prosecution Case 380/03

2

[Stamp] P 7: 30 [continued]

**Fourth count:**

**Nature of the offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 67A (D) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The aforementioned Defendant, in the Area, in December 2000 or thereabouts, conspired with another person to coerce another person by force or threats or tempt him by trickery to go from the place at he was, for the purpose of blackmail or threat, as follows:

The above mentioned Defendant, at the time set forth, conspired with Aiman Halawa, the Defendant's commander in Hamas, to participate in the abduction of Israel Defense Forces soldiers. The Defendant was ordered to prepare an apartment in which Israel Defense Forces soldiers would be held after their abduction by Hamas activists.

Within the preparations for the abduction, the Defendant prepared a room in his home in Beit Rima for holding abducted Israel Defense Forces soldiers.

**Fifth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, traded in or otherwise dealt with war materiel, without possessing a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, received 15 kilograms of Um Al Abed (TATP) explosives and a 9-mm pistol with a magazine and 14 cartridges from Aiman Halawa, a senior military operative in the Hamas organization. The Defendant transferred the explosives and the pistol to Beit Rima and hid them there.

About a week later, Aiman Halawa transferred to the Defendant 20 liters of hydrogen peroxide, which is used for making Um Al Abed (TATP) explosives. The Defendant hid this hydrogen peroxide in Beit Rima as well.

[Stamp] P 7: 31

**Sixth count:**

**Nature of the offense:** Manufacturing an explosive device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, manufactured a firearm, ammunition, bomb, hand grenade, explosive or incendiary device, without possessing a permit certificate having been issued to him by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, in a storeroom that he had rented, set up a laboratory for manufacturing explosives and explosive devices.

The Defendant transferred to the above mentioned laboratory 15 kilograms of explosives of Um Al Abed (TATP), 20 liters of hydrogen peroxide and a number of wireless mechanisms for detonation of the explosive devices.

In the above mentioned bomb laboratory, he made two explosive devices that were camouflaged as stones.

The Defendant transferred the first explosive device to Aiman Halawa, a senior military activist in Hamas, through a dead drop point in Salfit. Along with the above mentioned explosive device, the Defendant forwarded a sheet with directions for the operation of the above mentioned explosive device.

The Defendant transferred the second explosive device personally to Bilal Ya'akub Barghouti, a senior military operative in the Hamas Organization.

Prosecution Case 380/03

⁄3

[Stamp] P 7: 31 [continued]

**Seventh count:**

**Nature of the offense:** Giving shelter, an offense pursuant to Section 57 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, assisted or gave shelter to some person who had committed an offense against the security legislation or had been or was involved in some activity which was intended to harm the public welfare, the welfare of the Israel Defense Forces troops and soldiers and the maintenance of public order or concerning whom there are reasonable grounds to suspect that he did so, whether by giving information, shelter, food, drink, money, clothing, weapons, ammunition, supplies, animal fodder, means of transport, petroleum or fuel of any type and kind whatsoever, or in any other way, as follows:

The above mentioned Defendant, at the time set forth, in his home in Beit Rima or thereabouts, during one night, hid Rami Saliman, who was wanted by the Israeli security forces. The Defendant talked to Rami Saliman and it turned out that the latter was the one who had obtained the explosive device that had been camouflaged as a stone described in the sixth count of the indictment.

In the morning, the Defendant transported the above mentioned wanted person to Salfit.

**Eighth count:**

Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, at the time set forth in the previous count of the indictment or thereabouts, traded in or otherwise dealt with war materiel, without possessing a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, delivered to Rami Saliman, set forth in the previous count of the indictment, the 14 pistol along with 150 cartridges. In exchange, the Defendant received a 7 pistol from the above mentioned person.

[Stamp] P 7: 32

**Ninth count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, met Aiman Halawa, a senior military operative in the Hamas Organization, which is an unlawful association. Aiman Halawa delivered the amount of 100 U.S. dollars to the Defendant. According to Aiman Halawa's request, the Defendant transferred the above mentioned money to the wanted person described in the seventh count of the indictment.

**Tenth count: (Detailed Incident 6554/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 30, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. In early July 2001, in Nablus or thereabouts, the Defendant met Aiman Halawa, a senior military operative of the Hamas Organization. Aiman Halawa informed the Defendant that he had a person who was prepared to carry out a suicide attack inside Israel.

2. At the request of Aiman Halawa, the Defendant contacted Bilal Ya'akub Barghouti (Utman), a senior military operative in the Hamas organization, and asked the latter to find a person who would be able to bring a suicide terrorist into

Prosecution Case 380/03

4

[Stamp] P 7: 32 [continued]

the State of Israel in order for the latter to carry out a suicide attack there with the intent of causing the deaths of as many people as possible.

3.  Bilal Barghouti recruited Mohamed Waal Mohamed Daglas for the purpose set forth. Mohamed Daglas recruited Ahlam Aref Ahmed Tamimi for the said purpose; he was a student at Bir Zeit University, [and] an operative in the Az-Adin Alqassam Brigades, the military arm of the Hamas.

4.  After the Defendant reported the recruitment of the above mentioned people to Aiman Halawa, Aiman Halawa asked that first the Defendant should deliver a small explosive device to the above mentioned people, in order for them to first try to carry out an attack in Israel using the small explosive device before they could be trusted, and have the suicide terrorist delivered to them.

5.  On the following day, in Ramallah or thereabouts, the Defendant received a small explosive device, which had been sent to him by Aiman Halawa from Nablus via courier.

6.  On July 27, 2001, Ahlam Tamimi paid a visit to Jerusalem, with which she was very familiar, along with her nephew, Faraj Munir Mahmoud Tamimi, in order to identify a location in which the explosive device would be placed. During the visit, Ahlam Tamimi visited the Co Op supermarket in the Hamashbir Lazarchan building in King George Street. On the following day, Mohamed Daglas met Ahlam Tamimi at Bir Zeit University and the latter informed him that she had found a location in Jerusalem to carry out a bombing attack using an explosive device.

7.  The above mentioned report was forwarded to the Defendant through Bilal Barghouti. In addition, Bilal Barghouti recommended to the Defendant that the explosive device be hidden inside a can of juice.

8.  Following the above mentioned, the Defendant put the above mentioned explosive device into a can of beer and attached an activation mechanism. The Defendant delivered the above mentioned explosive device to Bilal Barghouti in order for the latter to deliver it to the individuals he had recruited, in order for them to use it to carry out an attack with the aim of causing the deaths of as many people as possible.

9.  Bilal Barghouti delivered the above mentioned explosive device to Mohamed Daglas, and the latter, on July 30, 2001, delivered it to Ahlam Tamimi.

[Stamp] P 7: 33

10. On that day, at 11:45 a.m., Ahlam Tamimi arrived at the Co Op supermarket in Jerusalem described above, while carrying in her bag the explosive device that she had received from the Defendant.

11. Ahlam Tamimi put the can of beer in which the above mentioned explosive device was hidden on a shelf of cans, at the front of the shelf in the above mentioned supermarket, so that once the explosive device would detonate, it would cause the deaths of the people nearby. Ahlam Tamimi activated the above mentioned explosive device and left the above mentioned store.

12. At about 1:10 p.m. on that day, the explosive device described above detonated in the abovementioned supermarket. As a result of the detonation of the explosive device, a great amount of damage was caused in the above mentioned store, and only by a miracle was nobody hurt.

### Eleventh count: (Detailed Incident 6554/01 Zion)

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 30, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the previous count of the indictment, by his acts described in the previous count of the indictment, caused heavy damage to the Co Op supermarket located in the Hamashbir Lazarchan building in King George Street, in which the explosive device was detonated as described in the previous count of the indictment.

Prosecution Case 380/03

5

[Stamp] P 7: 33 [continued]

**Twelfth count: (Detailed Incident 6891/01 Jerusalem Special Duties Unit)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.  After carrying out the attack in the supermarket in Jerusalem, which is described in the tenth count of the indictment, the Defendant made contact with Aiman Halawa, a senior military operative in the Hamas Organization, and according to the plan set forth in the tenth count of the indictment, asked Aiman Halawa to forward a large explosive device and the suicide terrorist to the Defendant for the purpose of carrying out the planned suicide attack.

2.  In early August 2001, in Ramallah or thereabouts, the Defendant received a large explosive device that consisted of two shampoo bottles filled with explosives, from Aiman Halawa, via courier.

3.  At the request of Bilal Ya'akub Barghouti, the Defendant inserted the above mentioned explosive device into a guitar that Bilal Barghouti brought. In addition to the above mentioned explosive device, the Defendant put two plastic bags filled with explosives inside the above mentioned guitar. In addition, the Defendant affixed screws inside the guitar using glue. The Defendant sealed the opening in the guitar using glass so that its contents could not be seen. The Defendant connected an activation mechanism to the above mentioned explosive device.

4.  The Defendant put the above mentioned guitar inside a black guitar case. The Defendant threaded a wire out of the case, with the activation button for the explosive device, so that the explosive device could be activated without opening the guitar case.

5.  The Defendant reported the preparation of the explosive device to Aiman Halawa and asked the latter to send the suicide terrorist to him.

6.  A few days later, the suicide terrorist Az A-Din Shahil Ahmed Masri (hereinafter: the "Suicide Terrorist"), who was dispatched by Aiman Halawa, came to Ramallah. Bilal Barghouti met the Suicide Terrorist and put him up overnight in Ramallah with Mohamed Waal Mohamed Daglas.

[Stamp] P 7: 34

7.  The Defendant transferred the above mentioned booby-trapped guitar to Bilal Barghouti in order for the latter to deliver it to the Suicide Terrorist, in order for the latter to use it to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

8.  On August 8, 2001, at the instruction of Mohamed Waal Mohamed Daglas (as set forth in the tenth count of the indictment), Ahlam Aref Ahmed Tamimi (set forth in the tenth count of the indictment) traveled to Jerusalem in order to find a location at which to carry out the bombing attack that the Defendant had planned with his above mentioned colleagues and for whose execution the above mentioned Mohamed Daglas and Ahlam Tamimi were recruited. Ahlam Tamimi noticed that there was a large presence of security forces in Jerusalem, but nobody inspected her because she was wearing a short vest in an attempt to look Jewish. Ahlam Tamimi reached the conclusion that one could leave Ramallah and carry out an attack in central Jerusalem.

9.  On that day, Bilal Barghouti instructed the Suicide Terrorist on the activation of the above mentioned explosive device that the Defendant had made.

10. On August 9, 2011, Mohamed Daglas introduced Ahlam Tamimi to the Suicide Terrorist, who was carrying the booby-trapped guitar. The Suicide Terrorist had gotten a haircut before carrying out the planned attack and wore clothes that were supposed to make him look like a Jew. Thereafter, Ahlam Tamimi and the Suicide Terrorist departed to carry out the planned attack.

11. After Ahlam Tamimi and the Suicide Terrorist entered Jerusalem, Ahlam Tamimi instructed the Suicide Terrorist to carry the guitar inside the black case that was described above on his back in order not

Prosecution Case 380/03

6

[Stamp] P 7: 34 [continued]

to arouse the suspicion of the Israeli security forces. Ahlam Tamimi also took off the jacket she was wearing and remained in a short vest.

12. Ahlam Tamimi led the Suicide Terrorist to the junction of Jaffa and King George Streets in Jerusalem, which is a central junction and a crowded place. Ahlam Tamimi briefed the Suicide Terrorist on activation of the explosive device in the center of the said junction while many people were crossing and thereby to attack as many civilians and vehicular travelers waiting at the traffic light as possible, causing their deaths. Ahlam Tamimi told the Suicide Terrorist that he was also allowed to choose another place for carrying out the planned attack, but that it had to be in King George Street, which was full of people.

13. Ahlam Tamimi left the Suicide Terrorist in the place set forth and walked towards the Nablus Gate of the old city in order to return to Ramallah.

14. At about 1:55 p.m., the Suicide Terrorist, Az A-Din Shahil Ahmed Masri, entered the Sbarro restaurant at the corner of Jaffa and King George Streets, which was then crowded. There the Suicide Terrorist detonated the explosive device that the Defendant had prepared as described above, with the intent of causing the deaths of as many people as possible.

15. As a result of the explosion of the Suicide Terrorist with the said explosive device, fifteen people were killed, as will be described in the next counts of the indictment.

16. As a result of the explosion of the Suicide Terrorist with the said explosive device, many other people sustained injuries, as will be described in the next counts of the indictment.

17. As a result of the explosion of the Suicide Terrorist with the said explosive device, extensive damage was caused to property in the Sbarro restaurant and to automobiles and buildings nearby.

18. By his acts described above, the Defendant caused the intentional death of **the late Frieda Mendelsohn**, aged 62 at the time of her death, who was killed as a result of the explosion of the explosive device as set forth above.

## Thirteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 35

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Lily Shimashvili-Mesengiser,** aged 33 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

7

[Stamp] P 7: 35 [continued]

**Fourteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tamar Shimashvili-Mesengiser**, aged 8 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Fifteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tehila Maoz**, aged 20 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Sixteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 36

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Michal Raziel,** aged 15 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Seventeenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Malka Roth,** aged 15 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

8

[Stamp] P 7: 36 [continued]

[Stamp] Authentic copy            [Stamp] * The Military Appellate Court in Judea and Samaria *

**Eighteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Yocheved Sasson**, aged 10 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Nineteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Mordechai Rafael Schijveschuurder**, aged 44 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twentieth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 188

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tzira Schijveschuurder**, aged 41 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty first count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Ra'aya Schijveschuurder**, aged 14 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

9

[Stamp] P 7: 188 [continued]

**Twenty second count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of the late Avraham Yitzhak Schijveschuurder, aged 4 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty third count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of the late Hemda Schijveschuurder, aged 2 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty fourth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 37

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Judith Lilian Greenbaum**, aged 31 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty fifth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Giora Balash**, aged 69 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

10

[Stamp] P 7: 37 [continued]

**Twenty sixth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Zvi Golombek,** aged 26 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty seventh count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, attempted to cause the intentional death of all of the people who were in the vicinity of the Suicide Terrorist, who exploded with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, more than 127 people who were in the area of the explosion site were injured.

[Stamp] P 7: 38

**Twenty eighth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on August 9, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the twelfth count of the indictment, by his acts described in the twelfth count of the indictment, caused heavy damage to the Sbarro restaurant in the corner of Jaffa and King George Streets in Jerusalem, where the explosive device was detonated as described in the twelfth count of the indictment, and to buildings nearby and to vehicles that passed by the site at the time of the explosion.

**Twenty ninth count:**

**Nature of the offense:** Offenses involving licenses and documents that were issued under the security legislation, an offense pursuant to Section 60 (C) and (G) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, from the second half of 2001 until the day of his arrest or thereabouts, altered or let another person alter some document that was issued under the security legislation and was in possession of a document that was issued under the security legislation that was not made out to his title, with the intent of deceiving others, as follows:

The above mentioned Defendant, in the second half of 2001, in Ramallah or thereabouts, obtained two identity cards from Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, one bearing the name of Arafat Taher Barghouti and the other bearing the name of Ashraf Alahmed. Photographs of the Defendant were inserted into both of these identity cards.

During the period set forth above, the Defendant made use of the forged identity card bearing the name of Arafat Taher Barghouti when he was examined by Israel Defense Forces soldiers in Ramallah or thereabouts, with the intent of deceiving the Israel Defense Forces soldiers.

Prosecution Case 380/03

11

[Stamp] P 7: 38 [continued]

### Thirtieth count:

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in the second half of 2001 or thereabouts, traded in or otherwise dealt with war materiel, without possession of a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, talked to Ibrahim Jamil Abed Ghani Hamed, known as Salah 1 or the Sheikh, the head of the Az-Adin Alqassam Brigades in the Ramallah area. Ibrahim Hamad asked the Defendant to purchase an Uzi submachine gun for him. The Defendant contacted Ahmed Taleb Mustafa Barghouti (known as Al Faransi), one of the heads of the Al Aqsa Martyrs' Brigades in the Ramallah area, and asked to purchase an Uzi submachine gun from him. Ahmed Barghouti had the Defendant meet Mahnad Abu Halawa, a senior military operative in the Al Aqsa Martyrs' Brigades, and the Defendant purchased an Uzi submachine gun from the latter.

About two weeks later, the Defendant conveyed the above mentioned Uzi submachine gun to Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, who conveyed it to Ibrahim Hamad.

### Thirty first count:

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in mid-2001 or thereabouts, traded in or otherwise dealt with war materiel, without possession of a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, contacted Ahmed Taleb Mustafa Barghouti (known as Al Faransi), one of the heads of the Al Aqsa Martyrs' Brigades in the Ramallah area, and asked to purchase an MP-5 submachine gun from him. Ahmed Barghouti had the Defendant meet Mahnad Abu Halawa, a senior military operative in the Al Aqsa Martyrs' Brigades, and the Defendant purchased an MP-5 submachine gun from the latter.

[Stamp] P 7: 39

**Thirty second count:**

**Nature of the offense:** Possession of a firearm, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The aforementioned Defendant, in the Area, from the time set forth in the previous count of the indictment until the day of his arrest, had in his possession a firearm, ammunition, a hand grenade or explosive or incendiary object, a tool, object or thing designed or capable of causing death or severe injury, without possession of a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, was in possession of an MP-5 submachine gun described in the previous count of the indictment, and a pistol.

The Defendant kept the above mentioned weapons without possession of a permit certificate issued by or on behalf of a military commander.

**Thirty third count:**

**Nature of the offense:** Manufacturing an incendiary object, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, from the second half of 2001 or thereabouts, manufactured a firearm, ammunition, a bomb, an explosive or incendiary object, without possession of a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, set up a number of laboratories for manufacturing explosives and explosive devices. The Defendant regularly relocated the above mentioned laboratory every few months in order for it not to be exposed by the Israeli security forces.

The Defendant and his colleagues would transfer various chemicals used in the manufacture of explosives to the above mentioned laboratories. The above mentioned explosives were purchased both by the Defendant himself, and by his fellow members of the Hamas Organization. The above mentioned explosives were purchased using Hamas money.

Prosecution Case 380/03

12

[Stamp] P 7: 39 [continued]

The Defendant manufactured, using the above mentioned chemicals, tens of kilograms of explosives, primarily of the Um Al Abed (TATP) type. From the explosives that he manufactured, the Defendant prepared a large number of explosive devices of different types, in addition to the explosive devices as described in the previous counts of the indictment and as will be described in the following counts of the indictment.

The Defendant manufactured the above mentioned explosive devices with the aim of Hamas operatives using them to carry out attacks against Israeli targets. The Defendant briefed operatives of the Hamas Organization on the activation of the above mentioned explosive devices.

In addition to the foregoing, the Defendant attempted to manufacture hand grenades and an explosive device and thus planned to assemble an explosive device on a toy vehicle operated by remote control.

During the said period, the Defendant also received instructions to manufacture Qassam rockets, but decided that he was unable to manufacture the rockets.

### Thirty fourth count:

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, during the second half of 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, taught Sid Abed Karim Khader Sheikh Qassam, known as Salah 2, an operative in the Hamas Organization, who served as a contact person between the Defendant and his commander in the Hamas Organization, to manufacture explosives and explosive devices.

### The thirty fifth count:

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

[Stamp] P 7: 40

**Details of the offense:** The aforementioned Defendant, in the Area, during November 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in an apartment in Ramallah that served as a bomb laboratory, administered military training to Mohamed Hassan Ahmed Arman (known as Abu Muaz), a military operative in the Hamas Organization.

During the said training, the Defendant taught Mohamed Arman to manufacture an explosive called Um Al Abed (TATP), electrical circuits for activating explosive devices and activation mechanisms for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

At the end of the training session, the Defendant transferred to Ahmed Arman a bag with various materials that are used for manufacturing explosives and explosive devices and a sheet with the instructions for manufacturing them.

The materials for the purpose of the above mentioned military training were purchased by Ibrahim Jamil Abed Ghani Hamed, the head of the Az-Adin Alqassam Brigades in the Ramallah area.

The Defendant introduced himself to Mohamed Garman by the alias "Engineer". During the above mentioned military training, the Defendant and Mohamed Arman were masked.

### Thirty sixth count:

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, during November 2001, about two days after the time set forth in the previous count of the indictment or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in an apartment in Ramallah that served as an explosives laboratory, delivered military training to two people who had been brought to the apartment by Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

Prosecution Case 380/03

13

[Stamp] P 7: 40 [continued]

During the said training, the Defendant taught the two above mentioned people how to manufacture an explosive called Um Al Abed (TATP), electrical circuits for activating explosive devices, and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

At the end of the training, the Defendant forwarded to the above mentioned two people two bags with various materials that are used for manufacturing explosives and the explosive devices and sheets with the instructions for manufacturing them.

### Thirty seventh count:

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in November 2001, shortly after he carried out that which has been attributed to him in the previous count of the indictment or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in an apartment in Ramallah that was used as a bomb laboratory, delivered military training to Murad Khalil Abed Hak Amira, who was brought to the apartment by Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

During the said training, the Defendant taught Murad Amira to manufacture explosives called Um Al Abed (TATP), electrical circuits for activating explosive devices and activation mechanisms for explosive devices consisting of a clock, a remote control and a cellular telephone handset. In addition, the Defendant delivered theoretical and practical training in the field stripping and assembling an Uzi submachine gun and a 14 pistol to Murad Amira.

At the end of the training session, the Defendant gave Murad Amira a bag with various materials used for the manufacturing of explosives and explosive devices and pages with the instructions for manufacturing them.

At the end of the said training, the Defendant gave Murad Amira the alias Abdullah 5 because this was the fifth person whom he had taught to manufacture the explosives and explosive devices.

**Thirty eighth count:** (Detailed **incident 10283/01 Zion**)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, during November 2001 or thereabouts, in Ramallah or thereabouts, manufactured explosives of Um Al Abed (TATP) type.

2. Using these explosives, the Defendant manufactured three explosive devices. The Defendant inserted the first explosive device into a computer case. The Defendant inserted the second explosive device into a black cloth bag. The Defendant prepared the third explosive device in the form of an explosive belt. In addition to the explosives, the Defendant put fragments, consisting of nails and nuts, into the explosive devices. The Defendant attached activation mechanisms to the three above mentioned explosive devices. When the explosive devices were assembled in the explosive belt and in the computer case, they were activated by pressing the activation button, while the explosive device that was concealed inside the black cloth bag was activated by a stopwatch. The Defendant added nuts and nails to these three explosive devices to increase the destructive effect of the explosive devices. In addition, the Defendant put toxic material, which was also for the purpose of increasing the lethality of the explosive devices, into the three explosive devices.

3. The Defendant manufactured these three explosive devices at the request of Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization. Salah 2 contacted the Defendant at the request of Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area.

Prosecution Case 380/03

14

[Stamp] P 7: 41 [continued]

4.  The Defendant delivered the three above mentioned explosive devices to Salah 2 in order for the latter to have them transferred to Hamas operatives, who would use these explosive devices to carry out bombing attacks with the intent of causing the deaths of as many people as possible.

5.  Salah 2 and Ibrahim Hamad, by themselves or through others, transferred the above mentioned explosive devices to Osama Mohamed Bahar and Nabil Mahmoud Halabia and planted the explosive device that was hidden in the black cloth bag in an Opel Kadett, license no. 4774987.

6.  On December 1, 2001, at about 11:36 p.m., at the entrance from Zion Square to Ben Yehuda Street in Jerusalem or thereabouts, suicide terrorist Osama Mohamed Bahar activated the explosive device that had been manufactured by the Defendant and concealed in a computer case as set forth above, with the intent of causing the deaths of as many people as possible. The above mentioned explosive device exploded.

7.  That same day, at about the time above, at the junction of Ben Yehuda and Luntz Streets in Jerusalem or thereabouts (a few meters away from the site of the explosion of the first explosive device), suicide terrorist Nabil Mahmoud Halabia activated the explosive device that had been manufactured by the Defendant in the form of an explosive belt as set forth above, with the intent of causing the deaths of as many people as possible. The above mentioned explosive device exploded.

8.  On that same day, a few minutes after the two above mentioned suicide terrorists activated the above mentioned explosive devices, the explosive device that had been manufactured by the Defendant and hidden inside the black cloth bag as set forth above was detonated. The third explosive device was detonated in an Opel Kadett, license no. 4774987, which was parked in Harav Kook Street near the corner of Jaffa Street in Jerusalem (a few dozen meters away from the detonation sites of the two explosive devices mentioned above). The above mentioned explosive device was activated with the intent of causing the deaths of as many people as possible.

9.  As a result of the detonation of the three explosive devices, which were detonated by as described above [Translator's note: as written], ten people were killed and approximately 191 people were injured, as will be elaborated in the following counts of the indictment.

10. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Yosef El-Ezra,** aged 18 at the time of his death, who was killed as a result of the detonation of the explosive devices in central Jerusalem as described above.

[Stamp] P 7: 42

**Thirty ninth count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of the late Assaf Avitan, aged 15 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

Prosecution Case 380/03

15

[Stamp] P 7: 42 [continued]

**Fortieth count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Guy Vaknin,** aged 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty first count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Yoni Korganov,** aged 20 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty second count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Ya'akov Israel Danino,** aged 17 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty third count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Michael Dahan,** aged 20 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

Prosecution Case 380/03

16

[Stamp] P 7: 43 [continued]

**Forty fourth count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Golan Turgeman,** aged 15 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty fifth count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Adam Weinstein,** aged 14 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty sixth count: (Detailed Incident 10283/01 Zion)**

[Stamp] P7: 44

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Moshe Yedid-Levy,** aged 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

### Forty seventh count: (Detailed Incident 10283/01 Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Nir Haftzadi,** aged 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

Prosecution case 380/03                    17

**Forty eighth count**: (Detailed Incident 10283/01 Zion)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, attempted to cause the intentional deaths of as many civilians as possible. As a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment, **191 people** were injured.

**Forty ninth count**: (Detailed Incident 10283/01 Zion)

**Nature of the offense**: Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on December 1, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused serious damage to houses and to business establishments in the area of Ben Yehuda, Luntz, Jaffa and Harav Kook Streets and vehicles that were at the site at which the three explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Fiftieth count:**

**Nature of the offense:** Manufacturing an incendiary device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, from late 2001 or thereabouts, manufactured a firearm, ammunition, bomb, an explosive or incendiary device, without a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, at the request of Marwan Barghouti, the head of the Tanzim of the Fatah, manufactured two explosive devices. Marwan Barghouti asked the Defendant to manufacture two explosive devices for him in order to use them if Israel Defense Forces would enter Ramallah.

**Fifty-first count:**

**Nature of the offense:** Manufacturing an incendiary device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2001 or thereabouts, manufactured a firearm, ammunition, bomb, an explosive or incendiary device, without a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, manufactured three explosive devices that were concealed inside juice cartons, and four explosive devices that were camouflaged as stones.

The above mentioned explosive devices were transferred by Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, to Ibraham Jamil Abed Ghani Hamad, known as Salah 1, who was the head of the military arm of the Hamas Organization in the Ramallah area.

Prosecution case 380/03                    18

[Stamp] P7: 45 [continued]

**Fifty-second count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2002 or thereabouts, traded in or otherwise dealt with war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, purchased from Ahmed Taleb Mustafa Barghouti (known as Al Faransi), one of the heads of the Al Aqsa Martyrs' Brigades organization, a Kalashnikov assault rifle with two magazines filled with cartridges and a 14 pistol with a magazine full of cartridges.

The Defendant performed the foregoing at the request of Mohamed Taher Mahmoud Barghouti, a military operative in the Hamas Organization.

After purchasing the above mentioned weapons, the Defendant delivered them to the above mentioned Mohamed Taher Barghouti.

**Fifty-third count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in February 2001 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

The above mentioned Defendant, at the time set forth, met an unknown person in Ramallah. The Defendant met the above mentioned person at the behest of Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area. Ibrahim Hamad informed the Defendant that the above mentioned person needed to depart to carry out a suicide attack and asked the Defendant to check whether the above mentioned person was determined to carry out a suicide attack.

[Stamp] P7: 46

The Defendant agreed and talked to the above mentioned person. The Defendant felt that the above mentioned person was determined, in view of the fact that the above mentioned person requested that by carrying out the suicide attack he will clear the name of his father, who was suspected of collaborating with the Israeli security forces.

The Defendant gave his above mentioned conclusions to Ibrahim Hamad, who responded that he would not be dispatching that person to carry out a suicide attack, as he was not prepared for that person to carry out a suicide attack only in order to clear his name.

### Fifty-fourth count: (Detailed incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

1. In early March 2002, in Ramallah or thereabouts, the Defendant met his Hamas handler, Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh. Ibrahim Hamad asked the Defendant to make an explosive belt for a suicide terrorist, in order for the latter to carry out a suicide attack with the intent of causing the deaths of as many people as possible.

2. The Defendant agreed to the request of Ibrahim Hamad. The Defendant manufactured, in Ramallah or thereabouts, an explosive belt. The above mentioned explosive belt was made of an imitation leather fabric on which screws and shampoo bottles filled with explosives were adhered. The Defendant also attached a detonation mechanism for the above mentioned explosive belt.

3. After the Defendant completed the preparation of the above mentioned explosive belt, the Defendant transferred [it], through Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, to Ibrahim Hamad, for the purpose of carrying out the planned suicide attack.

[Stamp] P7: 46 [continued]

4. Ibrahim Hamad also contacted Mohamed Hassan Ahmed Arman (known as Abu Muaz) and asked that the latter contact Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, to ask him to find a suitable place for carrying out the suicide attack.

5. Mohamed Arman met Abu Sa'ad and asked to find a place in Israel that would be suitable for carrying out the suicide attack. After a few days, Abu Sa'ad contacted Mohamed Arman and stated that he had found a place that was suitable for carrying out the planned suicide attack, which was the Moment Café, located on Aza Street in Jerusalem. Abu Sa'ad, along with Wasam Sa'id Mussa Abasi and Mohamed Ashak Ouda, paid visits to the area of the Moment Café [in order] to plan the suicide attack. The Defendant reported to Sheikh the place that had been found by Abu Sa'ad and his colleagues.

6. On Saturday, March 9, 2002,, at about 8:00 p.m., in Ramallah or thereabouts, Mohamed Arman met Fuad Alhurani and Ibrahim Hamad. Ibrahim Hamad and Fuad Alhurani left the meeting place for about half an hour in order for Fuad Alhurani to put on an explosive belt. Ibrahim Hamad put the explosive belt that was prepared by the Defendant, as set forth above, on Fuad Hurani, for the purpose of carrying out a suicide attack.

7. Thereafter, Mohamed Arman, along with Walid Anjas, accompanied Fuad Alhurani, who was carrying the above mentioned explosive belt on his person, to the Kalandia taxi stop in Ramallah and had the latter get into a passenger vehicle that was traveling to Beit Hanina. Mohamed Arman, Walid Anjas and Fuad Alhurani traveled together to Beit Hanina in a passenger transport vehicle. Mohamed Arman and Walid Anjas transported Fuad Alhurani to the meeting place, which the Defendant had established with Abu Sa'ad.

8. Abu Sa'ad met the suicide terrorist, Fuad Alhurani, in the place set forth, and thereafter, with Wasam Abasi, transported the suicide terrorist to Jerusalem. Abu Sa'ad and Wasam Abasi led Fuad Alhurani to the Moment Café, located in Aza Street in Jerusalem.

9. At about 10:30 p.m., on March 9, 2002,, or thereabouts, Fuad Alhurani, who was carrying the explosive belt that the Defendant had manufactured for this purpose on his person, entered the Moment Café, which was crowded at that time, and activated the above mentioned explosive belt with the aim of causing the deaths of as many people as possible.

10. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Avraham Rahamim**, who was killed as a result of the detonation of the explosive belt at the Moment café as described above.

[Stamp] P7: 47

**Fifty-fifth count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of the late Nir Borochov, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

Prosecution case 380/03                    20

[Stamp] P7: 47 [continued]

### Fifty-sixth count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Limor Ben-Shoham**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

### Fifty-seventh count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Dan Imani**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

### Fifty-eighth count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 48

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Danit Dagan**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

### Fifty-ninth count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Uri Felix**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

Prosecution case 380/03                    21

[Stamp] P7: 48 [continued]

**Sixtieth count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Baruch Lerner,** who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Sixty-first count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Tali Eliyahu,** who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Sixty-second count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 49

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Livnat Dvash**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

#### Sixty-third count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Orit Ozerov**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

Prosecution case 380/03                   22

### Sixty-fourth count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of the late **Natanel Kochavi**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

### Sixty-fifth count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, attempted to cause the death of as many civilians as possible.

As a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment, **65 people** were injured.

### Sixty-sixth count: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 50

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on March 9, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused heavy damage to the Moment Café that is located on Aza Street in Jerusalem, in which the explosive device was detonated as described in the fifty-fourth count of the indictment.

### Sixty-seventh count: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in later March-April 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area, was asking that the Defendant should manufacture an explosive belt and an explosive bag for the purpose of carrying out a suicide attack. The Defendant agreed to manufacture the two explosive devices[...]

Prosecution case 380/03                    23

[Stamp] P7: 50 [continued]

[Stamp] Authentic copy                    [Stamp] * The Military Appellate Court in Judea and Samaria * [Signature]

[...]this being in order to use them for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible.

3. The Defendant manufactured, in Ramallah or thereabouts, an explosive belt. The above mentioned explosive belt was made using imitation leather fabric, on which screws and shampoo bottles filled with explosives were adhered. The Defendant also attached the activation mechanism to the above mentioned explosive belt. The above mentioned explosive belt was similar to the one that the Defendant had manufactured for the attack at the Moment Café in Jerusalem, which is described in the fifty-fourth count of the indictment.

4. In addition, the Defendant made, in Ramallah or thereabouts, an explosive device of shampoo bottles filled with explosives that were put into a black bag. The Defendant put screws into the above mentioned bag to increase the damaging effect of the explosive device. The Defendant attached an activation mechanism for the explosive device to the above mentioned bag, which consisted of a stopwatch.

5. The Defendant delivered the above mentioned explosive belt with the above mentioned explosive bag to Salah 2 in order for the latter to transfer them to Ibrahim Hamad, who would transfer them to the suicide terrorist.

6. In April 2002, Ibrahim Hamad approached Mohamed Hassan Ahmed Arman (known as Abu Muaz), and informed the latter that it was necessary to carry out a suicide attack with the intent of causing the deaths of as many people as possible. Ibrahim Hamad informed Mohamed Arman that he had a person who was prepared to carry out the suicide attack.

7. A few days later, in Ramallah or thereabouts, Ibrahim Hamad introduced a Mohamed Jamil Ahmed Muamar (hereinafter: the "Suicide Terrorist") to Mohamed Arman; he was supposed to carry out the planned suicide attack. During the meeting it was concluded that after a few days, Ibrahim Hamad would bring the Suicide Terrorist to a meeting with Mohamed Arman in Ramallah and the latter would take the Suicide Terrorist to carry out the planned suicide attack.

8. On May 7, 2002, Mohamed Arman met the Suicide Terrorist in Ramallah in accordance with the above mentioned understanding. At the request of Mohamed Arman, Walid Abed Aziz Abed Hadi Anjas accompanied the Suicide Terrorist from Ramallah to Safa. In Safa, the two met Mohamed Arman and traveled together to Beit Anan. There, Mohamed Arman delivered the explosive belt that the Defendant had manufactured as set forth above and which had been transferred to Mohamed Arman by Ibrahim Hamad to the Suicide Terrorist. Mohamed Arman attached the above mentioned explosive belt to the body of the Suicide Terrorist and gave the latter a bag containing an additional explosive device, which the Defendant had also manufactured as set forth above, and which had been transferred to Mohamed Arman by Ibrahim Hamad.

9. Mohamed Arman drove the Suicide Terrorist with the above mentioned explosive device and with the above mentioned explosive belt in his vehicle from Beit Anan to Beit Iksa.

10. In Beit Iksa or thereabouts, the Defendant and the Suicide Terrorist met Waal Mahmoud Mohamed Ali Qassam, known as Abu Saad, who took the Suicide Terrorist to carry out the planned attack.

11. That evening, Abu Saad, along with Wassam Said Abasi, drove the Suicide Terrorist to Rishon le Zion and there accompanied him to the Sheffield Club, at 1 Sacharov Street in the New Industrial Zone, which had earlier been identified as a location suitable for carrying out the suicide attack by Abu Saad, Mohamed Ashak Ouda, Wassam Abasi and Alaa A-Din Mahmoud Abasi. Abu Saad and Wassam Abasi pointed out the said club to the Suicide Terrorist and explained to him that this was the place at which he must carry out the planned suicide attack.

12. At about 10:50 p.m., on May 7, 2002 or thereabouts, the Suicide Terrorist entered the above mentioned club and activated the explosive belt and the additional explosive device that the Defendant had manufactured for this purpose, with the aim of causing the deaths of as many people as possible.

13. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Rahamim Kimhi**, who was killed as a result of the detonation of the explosive devices as described above.

Prosecution Case 380/03

24

### Sixty-eighth count: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Rafael Haim**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

### Sixty-ninth count: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Anat Teremforush**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

### Seventieth count: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 51

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late Avraham Bayaz, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

### Seventy-first count: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late Eti Bablar, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                 25

[Stamp] P7: 51 [continued]

**Seventy-second count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late **Yitzhak Bablar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-third count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late **Israel Shikar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-fourth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 52

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Shoshana Magmari**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-fifth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Sharuk Rassan**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                    26

[Stamp] P7: 52 [continued]

**Seventy-sixth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late Nawa Hinawi, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-seventh count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late Nir Lovatin, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-eighth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 53

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late Regina Malka Boslan, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-ninth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of the late Daliah Masa, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                27

[Stamp] P7: 53 [continued]

**Eightieth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Pnina Hikri,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Eighty-first count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Edna Cohen,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Eighty-second count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

[Stamp] P7: 54

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, attempted to cause the deaths of as many civilians as possible.

As a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment, **59 people** were injured.

### Eighty-third count: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on May 7, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused heavy damage to the Sheffield Club, located at 1 Sacharov Street in Rishon Le Zion, and to the entire said building in which the explosive devices were detonated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                    28

[Stamp] P7: 54 [continued]

**Eighty-fourth count: (Detailed Incident 2881/02 Glilot)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 23, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in May 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area, was asking that the Defendant should manufacture an explosive device that would "stick" to iron, for the purpose of carrying out a bombing attack. The Defendant agreed to manufacture the explosive device in order for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the said request, the Defendant manufactured an explosive device that could be "stuck" to iron using magnets, which the Defendant attached to the explosive device, which was activated using a cellular telephone handset.

4. The Defendant delivered the above mentioned explosive device to Salah 2 for the purpose of carrying out the planned suicide attack. Salah 2 conveyed the explosive device to Ibrahim Hamad.

5. In May 2002, Ibrahim Hamad met Mohamed Hassan Ahmed Arman (known as Abu Muaz) and informed the latter that he wanted to carry out a bombing attack and detonate a fuel tanker, with the intent of causing the deaths of as many people as possible. Following the above mentioned, Mohamed Arman met with Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, and told him about Ibrahim Hamad's plan to carry out a bombing attack. Abu Sa'ad said that he would check out the matter and see what could be done.

6. After a few days, Mohamed Arman met with Abu Sa'ad again. Abu Sa'ad said that he and his colleagues had found a fuel tanker that regularly traveled to the Pi Glilot site.

7.  On May 22, 2002, Mohamed Arman met with Ibrahim Hamad in Ramallah and reported to the latter about the above mentioned fuel tanker. Ibrahim Hamad asked to meet Mohamed Arman in a few hours' time at the same place.

8.  After a few hours, the two met again. Ibrahim Hamad delivered the explosive device that the Defendant had manufactured as set forth above to Mohamed Arman. In addition, Ibrahim Hamad delivered a cellular telephone handset to Mohamed Arman, through which the explosive device could be called in order to detonate it.

9.  Mohamed Arman delivered the above mentioned explosive device to Walid Abed Aziz Abed Hadi Anjas, who conveyed it to Safa. Mohamed Arman arrived in Safa and from there traveled in his automobile, with Walid Anjas, to Beit Iksa.

10. There, Mohamed Arman met with Abu Sa'ad and together with Walid Anjas, delivered the above mentioned explosive device with a cellular telephone handset connected to it and the additional cellular telephone handset to Abu Sa'ad.

11. In the early morning hours on the following day, May 23, 2012, Abu Sa'ad traveled to Holon with Wasam Sa'id Abasi, while they were in possession of the above mentioned explosive device. In Holon, Abu Sa'ad attached the above mentioned explosive device, using a magnet, to the bottom front part of the fuel tank mounted on a fuel tanker, license no. 2622700. The above mentioned fuel tanker had been found earlier by Wasam Abasi and Alaa A-Din Mahmoud Abasi as an objective for carrying out a bombing attack. Abu Sa'ad waited in his vehicle until[…]

Prosecution case 380/03                    29

[Stamp] Authentic copy          [Stamp] * The Military Appellate Court in Judea and Samaria * [Signature]

[...]that the fuel tanker driver had arrived and thereafter drove after the above mentioned fuel tanker to the Pi Glilot site. After Abu Saad had made sure that the fuel tanker, to which the above mentioned explosive device had been attached, had entered the Pi Glilot site, Abu Saad activated the above mentioned explosive device that the Defendant had manufactured using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

12. The above mentioned explosive device exploded and caused serious damage to the above mentioned fuel tanker. Only by a miracle was nobody hurt.

### Eighty-fifth count: (Detailed Incident 3975/02 Lod)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on June 30, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or the Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, was asking the Defendant to manufacture an explosive device that would be activated using a cellular telephone handset for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the request as set forth, the Defendant manufactured an explosive device that could be activated using a cellular telephone handset.

4.  The Defendant delivered the above mentioned explosive device to Salah 2. Salah 2 transferred the above mentioned explosive device to Ibrahim Hamil Abd Ghani Hamad, known as Salah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area.

5.  Ibrahim Hamad contacted Mohamed Hassan Ahmed Arman (known as Abu Muaz) and suggested that they carry out a bombing attack by placing an explosive device on a railway track inside the State of Israel, with the intent of causing the deaths of as many people as possible.

6.  Mohamed Arman contacted Waal Mahmoud Mohamed Ali Qassam, known as Abu Saad, and asked him to check the possibility of carrying out a bombing attack on railway tracks in Israel. After some time, Abu Saad contacted Mohamed Arman and informed him that he had found a suitable place for carrying out the planned attack. Mohamed Arman reported this to Ibrahim Hamad.

7.  After some time, Mohamed Arman met in Ramallah Ibrahim Hamad, who delivered the explosive device, which the Defendant had manufactured as set forth above, to him.

8.  On June 29, 2002, or thereabouts, Mohamed Arman transferred the above mentioned explosive device with the cellular telephone handsets to Abu Saad and explained to the latter how to activate the above mentioned explosive device.

9.  In the evening hours of that day, Abu Saad, along with Wassam Sa'id Abasi, traveled to Lod and placed the above mentioned explosive device on the railway tracks in Lod in a place that had been identified earlier by Wassam Abasi and Alaa A-Din Mahmoud Abasi as suitable for carrying out the planned attack. Thereafter, Abu Saad and Wassam Abasi returned to Jerusalem.

Prosecution Case 380/03

30

[Stamp] P 7: 187 [continued]

10. In the early hours of the following morning, June 30, 2012, Abu Sa'ad and Wasam Abasi traveled to Lod. Wasam Abasi positioned himself next to the explosive device that had been placed, as set forth above, on the railroad tracks. At about 7:00 a.m., when Wasam Abasi noticed a train approaching the said site, he informed Abu Sa'ad, who activated the above mentioned explosive device using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

11. The above mentioned explosive device exploded.

12. As a result of the detonation of the above mentioned explosive device, 4 people were injured. In addition, damage was sustained by the train's locomotive and by the railroad track.

### Eighty-sixth count: (Detailed Incident 9913/02 Rehovot)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 21, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, had asked that the Defendant should manufacture an explosive device that was activated by cellular telephone handset, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the said request, the Defendant manufactured an explosive device, which was activated by cellular telephone handset.

[Stamp] P7: 56

4. The Defendant delivered the above mentioned explosive device to Salah 2. Salah 2 transferred the above mentioned explosive device to Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area.

5. Ibrahim Hamad contacted Mohamed Hassan Ahmed Arman (known as Abu Muaz) and suggested that an additional bombing attack be carried out by placing an explosive device on the railroad track inside the State of Israel, with the intent of causing the deaths of as many people as possible.

6. Mohamed Arman contacted Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, and asked him to find a place to carry out an additional bombing attack on the railroad track in Israel. After some time, Abu Sa'ad turned to Mohamed Arman and told him that he had found a suitable place for carrying out the planned attack. Mohamed Arman reported this to Ibrahim Hamad.

7. After some time, Hamad Arman met in Ramallah Ibrahim Hamad, who delivered to him the explosive device that the Defendant had manufactured, as set forth above, for the purpose of carrying out the planned attack.

8. On July 20, 2002, Mohamed Arman delivered the above mentioned explosive device to Walid Abed Aziz Abed Hadi Anjas and asked the latter to transfer it to Safa. Thereafter, Mohamed Arman arrived in Safa and met there Walid Anjas. From there, the two traveled together to Beit Iksa.

9. In Beit Iksa, Mohamed Arman and Walid Anjas transferred the above mentioned explosive device, along with the cellular telephone handsets, to Abu Sa'ad.

Prosecution case 380/03                                31

[Stamp] P7: 56 [continued]

10. That night, Abu Sa'ad, along with Wasam Sa'id Abasi and Alaa A-Din Mahmoud Abasi, traveled to the Rehovot area and placed the above mentioned explosive device on the railroad track near the exit from Rehovot, next to Kfar Gvirol, a place that was selected earlier by Abu Sa'ad and Wasam Abasi. Thereafter, the three returned to Jerusalem.

11. On the following day, July 21, 2002, in the early morning hours, Abu Sa'ad and Wasam Abasi traveled to the site at which the above mentioned explosive device had been placed. At about 7:30 a.m., Abu Sa'ad activated the above mentioned explosive device with the aim of causing the deaths of as many people as possible – after Wasam Abasi reported to him by cellular telephone that a train was approaching the site at which the explosive device had been placed.

12. The above mentioned explosive device exploded. As a result of the explosion of the explosive device, one person was injured. In addition, damage was caused to the train's locomotive and to the railroad track.

### Eighty-seventh count: (Detailed Incident 1197/02 Shalem)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in July 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, asked that the Defendant should manufacture an explosive device hidden in a bag, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

[Stamp] P7: 57

3.  Following the said request, the Defendant manufactured an explosive device, which was made using a large shampoo bottle filled with explosives, which had been concealed inside a rigid black cloth bag (similar to a briefcase). In addition, the Defendant filled the above mentioned bag with hardware nuts for the purpose of increasing the destructive power of the device. According to Salah 2's request, the Defendant attached a wireless activation mechanism to the above mentioned explosive device, so that the explosive device would be activated using a cellular telephone handset.

4.  The Defendant delivered the above mentioned explosive device and three additional shampoo containers, filled with explosives, to Salah 2.

5.  Salah 2 transferred the above mentioned explosive device to Ibrahim Jamil Abed Ghani Hamad, known as Shalah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area.

6.  Ibrahim Hamad approached Mohamed Hassan Ahmed Arman (known as Abu Muaz) and asked to find a place in Jerusalem in which a bombing attack could be carried out with the intent of causing the deaths of as many people as possible. Mohamed Arman approached Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, and asked the latter to find a suitable place for carrying out a bombing attack.

7.  After a few days, Abu Sa'ad informed Mohamed Arman that he had found a suitable place for carrying out a mass attack, which was the Hebrew University in Jerusalem, the Mount Scopus campus. Mohamed Arman reported the site that had been found to Ibrahim Hamad.

Prosecution case 380/03                          32

[Stamp] P7: 57 [continued]

8.  For the purpose of carrying out the planned bombing attack, Ibrahim Hamad delivered to Mohamed Arman the explosive device that the Defendant had manufactured as set forth above. Mohamed Arman added three bottles of shampoo filled with explosives to the said explosive device, which Salah 2 had received from the Defendant.

9.  Thereafter, Mohamed Arman traveled along with Walid Abed Aziz Abed Hadi Anjas to Beit Iksa with the aim of transferring the above mentioned explosive device to Abu Sa'ad in order for the latter with his colleagues to carry out the planned bombing attack using them.

10. In Beit Iksa, Mohamed Arman and Walid Anjas met Abu Sa'ad. The two delivered the above mentioned explosive device along with the two cellular telephone handsets to Abu Sa'ad, one handset being connected to the explosive device and serving as an activation mechanism.

11. On July 28, 2002, Abu Sa'ad, along with Mohamed Ashak Ouda, transferred the above mentioned explosive device to Jerusalem. Abu Sa'ad and Mohamed Ouda brought the above mentioned explosive device into the Mount Scopus campus of the Hebrew University in Jerusalem. Mohamed Ouda was very familiar with the site because he had worked there previously and also made use of an employee card, which he had retained, to enter the above mentioned campus. Mohamed Ouda placed the above mentioned explosive device inside the cafeteria located in the Frank Sinatra building of the above mentioned campus. Thereafter, Abu Sa'ad and Mohamed Ouda tried to activate the above mentioned explosive device using a cellular telephone, but the explosive device did not explode due to a fault in it. Thereafter, Mohamed Ouda returned to the place at which he had put the above mentioned explosive device, collected the explosive device, and together with Abu Sa'ad, traveled to Beit Iksa.

12. Thereafter, on July 29, 2002, Mohamed Arman and Walid Anjas met with Abu Sa'ad again. Abu Sa'ad returned the above mentioned explosive device to Mohamed Arman. Abu Sa'ad stated that he and his colleagues had placed the above mentioned explosive device in the Hebrew University in Jerusalem, the Mount Scopus Campus, with the intent of detonating it and causing the deaths of as many people as possible, but the above mentioned explosive device had not exploded. Mohamed Arman and Walid Anjas transferred the above mentioned explosive device to Harbata Bni-Hareth.

13. Mohamed Arman repaired the above mentioned explosive device after inspecting it and discovering that there was a problem with the electrical wires.

[Stamp] P7: 58

14. On the following day, July 30, 2002, Mohamed Arman met Walid Anjas again and with the latter, transferred the above mentioned explosive device to Beit Iksa.

15. In Beit Iksa, Mohamed Arman and Walid Anjas met with Abu Sa'ad. Mohamed Arman delivered the above mentioned explosive device to Abu Sa'ad.

16. That night, Abu Sa'ad and Mohamed Ashak Ouda took the above mentioned explosive device to Jerusalem and concealed it among the trees in the botanic garden in the Mount Scopus campus of the Hebrew University.

17. On the following day, July 31, 2002, Abu Sa'ad and Mohamed Ouda traveled again to the Mount Scopus campus of the Hebrew University. While Abu Sa'ad was waiting outside, Mohamed Ouda entered the campus, collected the above mentioned explosive device and placed it in the cafeteria located in the Frank Sinatra building in the Mount Scopus campus of the Hebrew University in Jerusalem. At about 1:30 p.m., after Mohamed Ouda left the area of the campus and joined Abu Sa'ad, Abu Sa'ad activated the above mentioned explosive device that had been manufactured by the Defendant, via a cellular telephone handset, with the intent of causing the deaths of as many people as possible. Abu Sa'ad and Mohamed Ouda chose to carry out the attack at around 1:00 p.m. because, according to the information that Mohamed Ouda had gathered, the above mentioned cafeteria was crowded with people at that time.

18. By his acts described above, the above mentioned Defendant caused the intentional death of the late Daphna Spruch, who was killed as a result of the explosive device as described in the eighty-seventh count of the indictment.

Prosecution case 380/03                    33

[Stamp] P7: 58 [continued]

**Eighty-eighth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of the late Marla Anne Bennett, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Eighty-ninth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of the late Dina Carter, who was killed as a result of the explosive device as described in the eighty-seventh count of the indictment.

**Ninetieth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 59

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Benjamin Thomas Blutstein**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-first count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Revital Barashi**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

Prosecution case 380/03                                34

[Stamp] P7: 59 [continued]

**Ninety-second count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late David (Diego) Ladowski,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-third count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Levina Shapira,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-fourth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 60

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Janis Ruth Coulter,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-fifth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late David Gritz,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

Prosecution case 380/03                    35

[Stamp] P7: 60 [continued]

**Ninety-sixth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, attempted to cause the intentional death of as many civilians as possible. As a result of the detonation of the explosive device that was activated as described in the eighty-seventh count of the indictment, **81 people** were injured.

**Ninety-seventh count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 31, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused heavy damage to the Frank Sinatra Building in the Mount Scopus campus of the Hebrew University in Jerusalem, in which an explosive device was activated as described in the eighty-seventh count of the indictment.

**Ninety-eighth count: (Detailed Incident 9638/02 Rishon le Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 7, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early August 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2.  Salah 2 informed the Defendant that Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, had asked the Defendant to manufacture two explosive devices concealed inside biscuit boxes – one activated by cellular telephone handset and the other activated by remote control, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive devices in order for them to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3.  Following the said request, the Defendant manufactured two explosive devices, which were concealed inside biscuit boxes. To one of the explosive devices, the Defendant connected an activation mechanism consisting of a cellular telephone handset, while to the other explosive device, the Defendant attached an activation mechanism so that the device could be activated by remote control.

4.  The Defendant delivered the above mentioned explosive devices to Salah 2. Salah 2 transferred the above mentioned explosive device to Ibraham Jamil Abed Ghani Hamad, known as Salah 1, the head of the military arm of the Hamas Organization in the Ramallah area.

[Stamp] P7: 61 [continued]

5. In early august 2002, Mohamed Hassan Ahmed Arman (known as Abu Muaz) met Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, who asked to obtain an explosive device. Abu Sa'ad explained that he intended to place the explosive device under a vehicle and detonate it with the intent of causing the deaths of as many Israeli civilians as possible.

6. Mohamed Arman turned to Ibrahim Hamad and asked to obtain an explosive device for the purpose of carrying out the planned attack. After a few days, in Ramallah or thereabouts, Ibrahim Hamad transferred an explosive device to Mohamed Amran, which the Defendant had manufactured, as set forth above, which was activated by a cellular telephone handset.

7. On that same day, August 6, 2002, Mohamed Arman, together with Walid Abed Aziz Abed Hadi Anjas, traveled to Beit Iksa while in possession of the above mentioned explosive device. In Beit Iksa, the two met with Abu Sa'ad, and transferred the above mentioned explosive device to him.

8. On the following day, August 7, 2002, Abu Sa'ad and Wasam Sa'id Abasi attached the above mentioned explosive device to a fuel tanker, license no. 3388300, which was parked in the Pisgat Ze'ev neighborhood in Jerusalem or thereabouts. After a few hours, at about 1:50 p.m., Abu Sa'ad activated the above mentioned explosive device using a cellular telephone handset, with the intent of causing the deaths of as many people as possible. The device that was planted on the said fuel tanker exploded while the tanker was in a garage at 23 Shmotkin Street in Rishon le Zion.

9. As a result of the detonation of the above mentioned explosive device, damage was sustained by the fuel tanker, and only by a miracle was nobody hurt.

## Ninety-ninth count: (Detailed Incident 19284/02 Yarkon)

Nature of the offense: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

Details of the offense: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in early September 2002 or thereabouts, in Ramallah or thereabouts, met Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

[Stamp] P7: 62

2.   Salah 2 asked the Defendant to make two explosive belts for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive belts in order for them to be used for carrying out a suicide attack with the intent of causing the deaths of as many people as possible. Following the said request, the Defendant manufactured two explosive belts.

3.   The Defendant delivered the above mentioned explosive belts to Salah 2, who had them transferred through Hasnin Rumana to Mahmoud Hamad Mahmoud Sharitah, a military operative in the Hamas Organization, for the purpose of carrying out the planned suicide attack.

4.   In late July 2004, Hasnin Rumana called Mahmoud Sharitah and asked to arrange a meeting between Iad Naim Subahi Radad, known as Omar, and a person known as Abu Khaled. Hasnin Rumana explained that the said meeting was intended for the purpose of carrying out a suicide attack, which the above mentioned Omar was supposed to carry out. Mahmoud Sharitah called Omar and informed him where and how he must meet Abu Khaled. After two days, Omar reported that Abu Khaled did not arrive to the arranged meeting.

5.   Immediately after the above mentioned conversation, Mahmoud Sharitah returned to Ramallah and met Hasnin Rumana and reported to the latter that the scheduled meeting had not taken place. At the end of the above mentioned meeting, Mahmoud Sharitah called Ashraf Zaghair, known as Abu Sharif.

Prosecution case 380/03                    37

[Stamp] P7: 62 [continued]

6. After a few days, Mahmoud Sharitah met Hasnin Rumana again, who asked to arrange another meeting between Omar and Abu Khaled.

7. After about a week, Hasnin Rumana requested that if Abu Khaled should not show up at the said meeting, Mahmoud Sharitah would take responsibility for Omar and the second suicide terrorist, Rafat Radad.

8. After the above mentioned conversation, Mahmoud Sharitah met Abu Sharif in Ramallah and asked the latter to find a place within the Israel that would be suitable for carrying out a suicide attack. Mahmoud Sharitah made it clear to Abu Sharif that he would have to lead two suicide terrorists to the place that he would find in order for them to carry out a bombing attack there with the aim of causing the deaths of as many people as possible. Abu Sharif agreed, but contended that it would take time to find a place where a double suicide attack could be carried out. During the above mentioned conversation, Abu Sharif reported that he had rented an apartment in Dahiat Al-Barid.

11. Omar informed Mahmoud Sharitah that he had learned from Rafat Mukadi about a large banquet hall, Whitehall, in Or Yehuda. Omar suggested that he and Rafat Mukadi carry out the suicide attack in the above mentioned banquet hall, after first shooting with weapons at the occupants of the banquet hall and then detonating the explosive belts that they would be carrying on their persons, with the intent of causing the deaths of as many people as possible. Mahmoud Sharitah agreed to the above mentioned idea and sent Abu Sharif to inspect the above mentioned banquet hall. Abu Sharif traveled to the above mentioned banquet hall and reported that the planned attack could not be carried out there because of the large number of security guards who were posted at the site.

12. Mahmoud Sharitah reported to Hasnin Rumana concerning his activity that had been carried out for the purpose of carrying out the planned suicide attack. Mahmoud Sharitah asked Hasnin Rumana to obtain two explosive belts and two small weapons for the purpose of carrying out the planned suicide attack. Hasnin Rumana promised to see to the explosive belts and the weapons.

13. After a few days, Mahmoud Sharitah and Abu Sharif obtained two explosive belts that the Defendant had manufactured as set forth above, and two Uzi submachine guns with magazines filled with cartridges.

[Stamp] P7: 63

14. Thereafter, Mahmoud Sharitah met Omar and informed the latter that the explosive belts were ready and he could depart to carry out the planned suicide attack along with his cousin, Rafat Mukadi. Omar responded that he himself was prepared to carry out the suicide attack as soon as possible, but Rafat Mukadi was not ready to carry out the planned suicide attack, because his sister was in the USA and he wanted to wait until she returned to the Area.

15. Mahmoud Sharitah turned to Abu Sharif again and asked to act urgently to find a suitable place to carry out the planned suicide attack. After a few days, Abu Sharif reported that he had found a place in Tel Aviv that was suitable for carrying out the planned suicide attack.

16. On September 17, 2002, or thereabouts, Mahmoud Sharitah met Omar in the safe-house apartment in A-Ram and explained to the latter how to put on and how to activate the explosive belt. Mahmoud Sharitah stayed in the above mentioned apartment with Omar until September 18, 2002.

17. On September 19, 2002, Omar departed from Ramallah to carry out the planned suicide attack, while carrying one of the suicide belts on his person, which the Defendant had manufactured as set forth above.

Prosecution case 380/03                    38

[Stamp] P7: 63 [continued]

18. Abu Sharif transported Omar to Tel Aviv in his vehicle. Upon arriving in Tel Aviv, Abu Sharif instructed Omar to explode where there were many people, so that the explosion would cause the deaths of as many people as possible.

19. At about 12:55 p.m., on September 19, 2002, or thereabouts, Omar boarded Dan bus no. 4, license no. 9105201, at 94 Allenby Street in Tel Aviv. As soon as the above mentioned bus started to move, Omar activated the explosive belt that the Defendant had manufactured, which he was carrying on his person, and caused a strong explosion, with the intent of causing the deaths of as many people as possible. The suicide terrorist, Iad Naim Subahi Radad, known as Omar, was killed as a result of the detonation of the above mentioned explosive device.

20. As a result of the explosion of the suicide terrorist with the above mentioned explosive device, six people were killed, as described in the following counts of the indictment.

21. As a result of the explosion of the suicide terrorist with the said explosive device, many other people were injured, as will be described in the following counts of the indictment.

22. As a result of the explosion of the suicide terrorist with the said explosive device, extensive damage was sustained by the above mentioned bus, by the vehicles that were near the site of the explosion and by nearby stores.

23. By his acts described above, the Defendant caused the intentional death of **the late Yossi Mamistavlov**, aged 39 at the time of his death, who was killed as a result of the explosion of the explosive device as set forth above.

**One hundredth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 64

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Ofer Zinger**, aged 39 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

### One hundred first count: (Detailed Incident 19284/02 Yarkon)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Rosanna Siso**, aged 63 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

Prosecution case 380/03                39

[Stamp] P7: 64 [continued]

**One hundred second count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Yaffa Shem-Tov,** aged 49 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred third count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Solomon Hoenig,** aged 79 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred fourth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 65

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Jonathan Jesner**, aged 19 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

## One hundred fifth count: (Detailed Incident 19284/02 Yarkon)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, attempted to cause the intentional death of all of the individuals who were in the vicinity of the suicide terrorist, who exploded with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, **approximately 84 people** who were aboard and near the above mentioned bus at the time of the explosion were **injured**.

Prosecution case 380/03                    40

**One hundred sixth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on September 19, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, maliciously and unlawfully caused heavy damage to the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, and caused damage to additional vehicles and to stores and to businesses that were near the site of the attack described in the ninety-ninth count of the indictment, which were damaged as a result of the explosion of the explosive device that the Defendant had manufactured.

**One hundred seventh count: (Detailed incident 21011/02 Yarkon)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on October 11, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early September 2002, in Ramallah or thereabouts, manufactured two explosive belts for the purpose of carrying out suicide attacks with the intent of causing the deaths of as many people as possible, as described in the ninety-ninth count of the indictment.

2.  The Defendant transferred the two explosive belts to Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in Hamas, who had them transferred to Mahmoud Hamad Mahmoud Sharitah, as described in the ninety-ninth count of the indictment.

[Stamp] P7: 66

3. After carrying out the attack described in the ninety-ninth count, Mahmoud Sharitah decided to carry out an additional suicide attack using the explosive belt that the Defendant had manufactured for that purpose.

4. For the purpose of advancing his above mentioned plan, Mahmoud Sharitah recruited Rafat Mukadi to carry out the planned suicide attack.

5. Mahmoud Sharitah also met with Ashraf Munir Zaghair, known as Abu Sharif, and instructed the latter to find a suitable site for carrying out the planned suicide attack. After a few days, Abu Sharif reported that he had found two places in Tel Aviv that were suitable for carrying out the planned suicide attack.

6. On October 11, 2002, Abu Sharif brought Rafat Mukadi from the village of Arabeh to the safe house in A-Ram. Mahmoud Sharitah explained to Rafat Mukadi how to put on and how to activate the explosive belt. Mahmoud Sharitah attached the explosive belt that the Defendant had manufactured to the body of Rafat Mukadi.

7. Abu Sharif transported Rafat Mukadi to Tel Aviv in order for the latter to carry out the planned suicide attack there.

8. At about 8:15 p.m., on October 11, 2002, Abu Sharif dropped off Rafat Mukadi on the beach promenade in Tel Aviv and instructed the latter to detonate the explosive belt, which he was carrying on his person, in a restaurant that was full of people.

9. Rafat Mukadi attempted to enter the Yotvata restaurant located on Herbert Samuel Street (Tel Aviv promenade), but the security guard at the site noticed him, suspected that he was a suicide terrorist and prevented

Prosecution case 380/03                41

[Stamp] P7: 66

his entry. Rafat Mukadi tried to flee from the site, but was caught after a pursuit and with the assistance of other security guards who arrived at the site.

10. By his acts described above, the above mentioned Defendant attempted to cause the deaths of as many people as possible.

### One hundred eighth count:

**Nature of the offense:** Military training without a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in February 2003 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, administered military training to a person, a resident of Nablus, who had been sent to him by Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area.

During the said training, the Defendant taught the above mentioned person how to manufacture explosive devices, electrical circuits for activating explosive devices and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

During the above mentioned military training, the Defendant and the above mentioned person were masked.

### One hundred ninth count:

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2003 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

[Stamp] P7: 67

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, conveyed to Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area, computer diskettes containing instructions for manufacturing the explosives and the explosive devices.

Ibrahim Hamad asked the Defendant to obtain the above mentioned diskettes in order to transfer them to the operatives of the Palestinian Islamic Jihad Organization, who had asked to learn how to manufacture explosives and explosive devices.

Prosecution case 380/03                    42

[Stamp] P7: 67 [continued]

### Witnesses of the Prosecution:

1.  Master Sergeant Yitzhak Ya'akoboff, Badge No. 1008358, Judea Investigations Office. [took the statements of the Defendant dated March 12, 2003, March 13, 2003, March 30, 2003, May 15, 2003 and May 22, 2030, and submitted photographs that were shown before the Defendant on March 30, 2003 & a drawing in the handwriting of the Defendant]

2.  Master Sergeant Moshe Levi, Badge No. 953117, Judea Investigations Office. [took the statement of the Defendant on May 12, 2003]

3.  Transcript of the remand hearing of the Defendant dated May 12, 2003.

4.  Ashraf Munir Zaghair, Identity No. 035660679. (detainee)

5.  Rafat Rashid Abdullah Mukadi, Identity No. 907945026. (detainee)

6.  Mahmoud Hamad Mahmoud Sharitah, Identity No. 900718750. (detainee) (Prosecution Case 976/02)

7.  Mahmoud Taher Mahmoud Barghouti, Identity No. 859121287. (detainee) (Prosecution Case 241/03)

8.  Akram Salah Ahmed A-Hasin (Barghouti), Identity No. 988965372. (detainee) (Prosecution Case 210/03).

9.  Wasam Sa'id Mussa Abasi, Identity No. 033714403. (prisoner)

10. Waal Mahmoud Mohamed-Ali Qassam, Identity No. 028192755. (prisoner)

11. Mohamed Ashak Ouda, Identity No. 026291302. (prisoner)

12. Alaa A-Din Mahmoud Abasi, Identity No. 029194818. (prisoner)

13. Walid Abed Aziz Abed Hadi Anjas, Identity No. 906448105. (detainee) (Prosecution Case 889/02)

14. Mohamed Hasan Ahmed Arman, Identity No. 901056259. (detainee) (Prosecution Case 888/02)

15. Mohamed Waal Mohamed Daghlas, 905167375. (prisoner) (Prosecution Case 846/01)

16. Ahlam Aref Ahmed Tamimi, Jordanian Passport G052933. (detainee) (Prosecution Case 815/01)

[Stamp] P7: 68

17. Bilal Ya'akub Hamad (Utman) Barghouti, Identity No. 902826262. (prisoner) (Prosecution Case 344/04)

18. Ahmed Taleb Mustafa Barghouti, Identity No. 994466860. (detainee) (Prosecution Case 444/02)

19. Murad Khalil Abed Hak Amira, Identity No. 980743066. (detainee) (Prosecution Case 946/02)

The list of technical witnesses from the detailed following incident cases will be delivered to the Prosecution if necessary, during the trial:

1. 6554/01 Zion

2. 6891/01 Jerusalem Special Duties Department

3. 10283/01 Zion

4. 1512/02 Moria

5. 5601/02 Rishon le Zion

6. 2881/02 Glilot

7. 3975/02 Lod

8. 9913/02 Rehovot

9. 1197/02 Shalem

10. 9638/02 Rishon le Zion

11. 19284/02 Yarkon

12. 21011/02 Yarkon

[Signature]
Michael Kotlik,      Captain
Military Prosecutor

Date: May 29, 2003
Reference: 380-03

Prosecution case 380/03                    43

[Stamp] P7: 68 [continued]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

No. 04 Civ. 00397 (GBD) (RLE)

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.  The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as "Abdullah Barghouti Indictment."

2.  I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.  To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as "Abdullah Barghouti Indictment."

Dated: May $\underline{8}$, 2014

Rina Ne'eman

ss.: New Jersey

On the $\underline{8}$ day of May, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
$\underline{8}$ day of May, 2014

Notary Public

```
SHELLY TESSEIN
Notary Public
State of New Jersey
My Commission Expires Nov. 16, 2017
I.D.# 2427073
```

קא״ש/2236ב

| צבא | | | הצבאי | תגנה | | לישראל |
|---|---|---|---|---|---|---|
| בבית | והמשפט | הצבאי | ותיק ביה״מ : | | | 03/**336** |
| בבית | | אל | תיק ותביעה : | | | 380/03 |
| כפני | | הרכב | תיק פ.א. : | | | 6891/01 מותי׳ימ י-ם |
| | | | | | | ציון 6554/01 |
| | | | | | | ציון 10283/01 |
| | | | | | | מזדיה 1512/02 |
| | | | | | | ראשל״צ 7638/02 |
| | | | | | | ראשל״צ 5601/02 |
| | | | | | | גלילות 3881/02 |
| | | | | | | לוד 3975/02 |
| | | | | | | רחובות 9913/02 |
| | | | | | | שלם 1197/02 |
| | | | | | | ירקון 19284/02 |
| | | | | | | ירקון 21011/02 |
| | | | | | | בנימין 1425/03 |

### במשפט שבין התובע הצבאי - המאשים

### - נגד -

יבדאללה עיאלב עבדאללה כרנותי (גימל) (המכונה ״כאמל״, ״המהנדס״)
ת.ז. (פיקטיבי) 030300028 (דרכון ירדני E-891198), יליד 15.10.72, תושב בית-רימא
עפ״ר מיום 05.03.03

### - הנאשם -

## כתב - אישום

### הנאשם הנ״ל מואשם בזאת בביצוע העבירות הבאות:

### פרט ראשון:

**מהות העבירה:** ניסיון לייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון
(יהודה והשומרון) (מס׳ 378), תשי״ל-1970) וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש מאי 2001 או בסמוך לכך, ייצר כלי ירדה, תחמושת
פצצה, רימון יד, חפץ נפיץ או מצאיר, ללא תעודת היתר שהוענקה לו על-ידי מופקד צבאי או
מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בית רימא או בסמוך לכך, נפגש עם אכרם צאלח אכרם אחסין
וברגונות וביקש מהאחרון כי יכיר לו פעילים צבאיים. אכרם אחסין ביקש כי הנאשם יגיע אליו
לביתו. לאחר שהנאשם הגיע לביתו של אכרם אחסין, האחרון מסר לידי הנאשם מטען חבלה.
הנאשם לקח את המיטען עמו ובהפרמרקס של הנאשם בבית רימא פירק את מיטען החובלה.
הנאשם ניסה להציף את חומר הנפץ שהוציא ממטען החבלה וגכח לדעת כי מדובר בחוגר נפץ
טוב. הנאשם ייצר מנגנון הפעלה למטען החבלה הנ״ל משען נערר, אך לא הצליח להפעיל את
המטען הנ״ל באמצעות מנגנון ההפעלה הנ״ל.

ת.כ. 12-1052                                    1

**פרט שני:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מחודש מאי 2001 ועד ליום מעצרו, היה חבר או פעל בחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר ב"ינדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, שהוא התאחדות בלתי מותרת.
הנאשם, במסגרת פעילותו בזרוע הצבאית של ארגון החמאס, היה אחראי על ייצור מטעני חבלה ואימון אנשים אחרים בייצור מטעני חבלה. לאור "הצלחותו" בתפקיד האמור הנאשם "זכה" לכינוי "המהנדס".
בחודש מאי 2001, בבית רימא או בסמוך לכך, הנאשם פנה אל בלאל יעקוב אחמד ברגותי (עותמאן), פעיל צבאי בארגון החמאס, וביקש כי האחרון יצרף את הנאשם לשורות הזרוע הצבאית של הארגון. הנאשם מסר לבלאל ברגותי כי יכול לייצר מטעני חבלה עבור ארגון החמאס. בכל ברגותי הפניש את הנאשם בשם עם אייבו חלאווה, פעיל צבאי בכיר בארגון החמאס, אשר גייס את הנאשם לימדודי עז א-דין אל קסאם".
בסוף שנת 2001, ברמאללה או בסמוך לכך, הנאשם נפגש עם אברהים גימיל עמראני אחמד, המכונה "צלאח 1" או "השיח", ראש "ינדודי עז א-דין אל קסאם" באיזור רמאללה. הנאשם הסכים להצעתו של אברהים אחמד לפעול תחת פיקודו של האחרון ולייצר מטעני חבלה לצורך ביצוע פיגועים נגד המטרות הישראליות. אברהים אחמד העניק לנאשם כינוי פחיעי "כאמל"". בהמשך, הנאשם פעל כפי שהוטכם בינו לבין אברהים אחמד.
במהלך פעילותו של הנאשם תחת פיקודו של אברהים אחמד, הנאשם עמד בקשר עם הנ"ל באמצעות האשורים, אשר הועברו על-ידי סייד עבכרים מדד שייך-קאסם, המכונה "צלאח 2".
בתמורה לפעילותו בארגון החמאס, הנאשם קיבל סיוע כספי מאברהים אחמד, אשר הועבר לנאשם על-ידי "צלאח 2". סך הכל, הנאשם קיבל מאברהים אחמד כספים בסכום של 117,000 דולר ארה"ב.
כמו כן, הנאשם קיבל סיוע כספי בסך 500 דולר ארה"ב מידי מריאן ברגותי, ראש "יהתנזיים" של הפת"ח.

**פרט שלישי:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך החודשים מאי - יוני 2001 או בסמוך לכך, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, בשכם או בסמוך לכך, ב-3 הזדמנויות שונות, נפגש עם אייבו תלאווה, פעיל צבאי בכיר בארגון החמאס.
במהלך המפגשים הנ"ל, אימן תלאווה לימד את הנאשם לייצר חומר נפץ "אום אלעבד" (TATP), מטעני חבלה, מנגנוני ההפעלה למטעני החבלה (כולל מנגנונים אלחוטיים), רימוני-יד וחגורות נפץ. אייבו תלאווה לימד את הנאשם להסוות את מטעני החבלה לאבן ולפחית שתייה.
אייבו תלאווה לימד את הנאשם לייצר רעל מתפוחי אדמה, אשר אותו מכניסים אל מטעני החבלה ועל מנת להפכם למטעני חבלה כימיים.
בסוף כל אחד מהאימונים הנ"ל, הנאשם קיבל מאיין חלאווה דף, עליו היו רשומים הוראות לייצור מטעני החבלה, איתם למד הנאשם לייצר.

ת.פ. 3079\02

P 7: 30

<div dir="rtl">

**פרט רביעי:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 67א(ד) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), התש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש דצמבר 2000 או בסמוך לכך, קשר עם אדם אחר לכפות אדם בכוח או באיומים או לפתותו באמצעות תרמית ללכת מן המקום שהוא נמצא בו, וזאת כדי לסחוט או לאיים, דהיינו :
הנאשם הנ"ל, במועד האמור, קשר עם אוריאן חלאוות, מפקדו של הנאשם בארגון החמאס, להשתתף בחטיפת חיילי צה"ל. על הנאשם הוטל להכין דירה, אשר בה יוחזקו חיילי צה"ל לאחר יחטפו על-ידי פעילי ארגון החמאס.
בטרם ההבנות לקראת החטיפה, הנאשם הכין חדר בביתו בבית-רימא לצורך התזקונת של חיילי צה"ל החטופים.

**פרט חמישי:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר תקוף על-ידי מפקד האיזור או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, קיבל מידי איימן חלאוות, פעיל צבאי בכיר בארגון החמאס, 15 ק"ג של חומר נפץ מסוג "אום אלעבדי" [TATP] ואקדח 9 מ"מ עם מחסנית ו-14 כדורים. הנאשם העביר את חומר הנפץ ואת האקדח לבית רימא והסתירם שם.
לאחר כשבוע, איימן חלאוות העביר אל הנאשם 20 ליטר של מי חמצן, אשר נמשמים לייצור חומר הנפץ מסוג "אום אלעבדי" [TATP]. גם את מי החמצן הנ"ל, הנאשם הסתיר בבית רימא.

**פרט שישי:**

**מהות העבירה:** ייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ייצר כלי יריה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, בבית רימא או בסמוך לכך, במחסן אשר אותו הוא שכר, הקים מעבדה לייצור חומרי נפץ ומטעני חבלה.
הנאשם העביר למעבדה הנ"ל 15 ק"ג של חומר הנפץ מסוג "אום אלעבדי" [TATP], 20 ליטר של מי חמצן וכן מספר מנגנונים אלחוטיים להפעלת מטעני החבלה.
במעבדת החבלה הנ"ל הנאשם ייצר שני מטעני חבלה המורכבים מאבנים.
את מטעני החובלה הראשון הנאשם העביר לידי איימן חלאוות, פעיל צבאי בכיר בארגון החמאס, דרך וקורit משולש בטלפית. ביחד עם מטען החבלה הנ"ל, הנאשם העביר דף עם ההנחיות להפעלת מטעני החבלה הנ"ל.
את מטען החובלה השני הנאשם העביר באופן אישי לבלאל יעקוב ברגותי, פעיל צבאי בכיר בארגון החמאס.

</div>

ת.ת 1305348

P 7: 31

### פרט שביעי:

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעזר עבירה על תחיקת הביטחון או עשה או שהוא עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחיילים וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מוחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מספוא. אמנעור תובלה, ופני אג דלק מיסוג כל שהוא ובין בדרך אחרת. דהיינו:
הנאשם הנ"ל, במועד האמור, בביתו בבית רימא או בסמוך לכך, במשך לילה אחד, הסתיר את ראמי סלימאן, אשר היה מבוקש לכוחות הביטחון הישראליים. הנאשם טוחח עם ראמי סלימאן והסתבר כי האחרון היה זה, אשר קיבל את טלעגן החבלה הנוטעוה כאבן, הנוטאר בפרט האישום חשעשי.
בנוקר, הנאשם הסיע את הטבוקש הנ"ל לסלפית.

### פרט שמיני:

**מהות העבירה:** סחר בצ'וד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחנתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במועד האמור בפרט האישום הקודם או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בבית רימא או בסמוך לכך, מסר לראמי סלימאן, האמור בפרט האישום הקודם, את אקדח 14 יחד עם 150 כדורים. בתמורה, הנאשם קיבל מהאדם הנ"ל אקדח 7.

### פרט תשיעי:

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 1(1)85 לתקנות ההגנה (שעת חירום), 1945.
**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, נפגש עם אימן תלאווה, פעיל צבאי בכרי בארגון החמאס, שהוא התאחדות בלתי מותרת. אימן חלאווה מסר לנאשם סכום של 100 דולר ארה"ב. על-פי בקשתו של אימן חלאווה, הנאשם הצביר את הכסף הנ"ל לידי המבוקש המתואר בפרט האישום השביעי.

### פרט עשירי: (פ.א. 6554/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור ותן מחוצה לו, ביום 30.07.01 או במועד הסמוך לכך, ניסה בכוונה לגרום למותו של אחר, דהיינו:

1. בתחילת חודש יולי 2001, בשכם או בסמוך לכך, הנאשם נפגש עם איימן חלאווה, פעיל צבאי בכיר בארגון חחמאס. איימן חלאווה מסר לנאשם כי יש לו אדם המוכן לבצע פיגוע התאבדות בתוך ישראל.

2. על-פי בקשתו של איימן חלאווה, הנאשם פנה אל בלאל יעקוב ברנותי (עותמאן), פעיל צבאי בכיר בארגון החמאס, וביקש מהאחרון למצוא אדם אשר יוכל להכניס מחבל מתאבד אל תוך

<div align="center">4</div>

ת.פ. 03:03:03

מדינת ישראל על מנת שהאחרון יבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בלאל ברגותי גייס לנוטרה האמורה את מוחמד ואל מוחמד דגלס. מוחמד דגלס גייס לנוטרה האמורה את אחלאם עארף אחמד תמימי, סטודנטית באוניברסיטה ביד זית, פעילה ב־"ג'יהדי עז א־דין אל קסאם", הזרוע הצבאית של ארגון החמאס.

4. לאחר שהנאשם דיווח לאיימן חלאוה על גיוס האנשים הנ"ל, איימן חלאווה ביקש כי קודם יחסור האנשים לידי האנשים הנ"ל מטען חבלה קטן, וזאת על שינסו התחילה לבצע פיגוע בישראל באמצעות מטען חבלה קטן, לפני שניתן יהיה לסמוך עליהם וימסור להם את המחבל המתאבד.

5. יום לוחרת, ברמאללה או בסמוך לכך, הנאשם קיבל מטען חבלה קטן, אשר נשלח אליו על־ידי איימן חלאווה משכם באמצעות שליח.

6. ביום 27.07.01, אחלאם תמימי עזבה סיור בירושלים, אשר אותה הכירה היטב, ביחד עם אחיינה, פרצי מוגיר מוחמד תמימי, על מנת לאתר מקום שבו יונח מטען החבלה. במהלך הסיור ביקרה אחלאם תמימי בחנות הסופרמרקט "קו אופי" הנמצא בבניין "חמשברור לצרכן" ברחוב קינג ג'ורג', למחרת היום, מוחמד דגלס נפגש באוניברסיטה ביד זית עם אחלאם תמימי והאחרונה הודיעה לו כי איתרה מקום בירושלים לביצוע פיגוע נוסף באמצעות מטען חבלה.

7. הדיווח הנ"ל הועבר באמצעות בלאל ברגותי אל הנאשם. כמו כן, בלאל ברגותי הנוליץ לנאשם כי מטען החבלה יוסתר בתוך פחית מיץ.

8. בעקבות האמור, הנאשם הכניס את מטען החבלה הנ"ל אל תוך פחית בירה והרכיב מנגנון הפעלה. הנאשם מסר את מטען החבלה הנ"ל לידי בלאל ברגותי על מנת שהאחרון ימסור אותו לידי האנשים אותם גייס, וזאת על מנת שיבצעו באמצעותו פיגוע בכונה לגרום לפגוע במותם של אנשים רבים ככל הניתן.

9. בלאל ברגותי מסר את מטען החבלה הנ"ל למחמד דגלס והאחרון, ביום 30.07.01, מסר אותו לידי אחלאם תמימי.

10. באותו היום, בסביבות השעה 11:45, אחלאם תמימי הגיעה לחנות הסופרמרקט "קו אופי" בירושלים, הסתתרת לעיל, כשבתוקה נמצא מטען החבלה אותו קיבלה פה נאשם.

11. אחלאם תמימי הניחה את פחית הבירה שבתוכה הוסתר מטען החבלה הנ"ל במדף של פחיות, בקדמת המדף בחנות הסופרמרקט הנ"ל, וזאת על מנת שכשמטען החבלה יתפוצץ הוא יגרום למותם של האנשים שיהיו בקרבת המקום. אחלאם תמימי הפעילה את מטען החבלה האמור ועזבה את התנות הנ"ל.

12. בסביבות השעה 13:10, באותו היום, מטען החבלה המתואר לעיל התפוצץ בחנות הסופרמרקט האמורה. כתוצאה מפיצוץ מטען החבלה נגרם רב לרכוש בחנות הנ"ל, ירק בנס אין לא נפגע.

**פרט אחד־עשר:  (פ.א. 6554/01 ציון)**

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 3גג לצו בדבר הוראות ביטחון ויהודה והשומרון] (מסי 378, תש"ל-1970) וסעיף 14(א) לצו בדבר בכלל האחריות לעבירה ויהודה והשומרון] (מסי 225), תש"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.07.01 או בסמוך לכך, הרס רכוש או בניו בן במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במעוד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם נזק כבד לחנות הסופרמרקט "קו אופי" הנמצא בבניין "חמשברור לצרכן" ברחוב קינג ג'ורג', אשר בו הופעל מטען החבלה, כפי שתוראר בפרט האישום הקודם.

5

P 7: 33

<u>פרט שנים-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשו"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.09.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

1.  לאחר ביצוע הפיגוע בסופרמרקט בירושלים, המתואר בפרט האישום העשירי, הנאשם יצר קשר עם מוחמד חלאוזה, פעיל צבאי בכיר בארגון החמאס, ובהתאם לתכנון האמור בפרט האישום העשירי, ביקש כי איימן חלאווה יעביר לנאשם מטען חבלה גדול ואת המחבל המתאבד לצורך ההוצאה לפועל של פיגוע התאבדות הנזכרכן.

2.  בתחילת חודש אוגוסט 2001, ברמאללה או בסמוך לכך, הנאשם קיבל מאיימן חלאווה, באמצעות שליח, מטען חבלה גדול, אשר היה מורכב משני בקבוקי שמפו מלאים בחומר נפץ.

3.  על-פי בקשתו של בלאל יעקוב ברנתתי, הנאשם הכניס את מטען החבלה הנ"ל אל תוך גיטרה, אותה הביא בלאל ברנותי. בנוסף למטען החבלה הנ"ל, הנאשם הכניס אל תוך הגיטרה הנ"ל שתי שקיות מילוז מלאות בחומר נפץ. כמו כן, הנאשם הדביק בתוך הגיטרה ברגים באמצעות דבק, את תפתה של הגיטרה הנ"ל, הנאשם חיבר מנגנון הפעלה.

4.  הנאשם הכניס את הגיטרה הנ"ל תוך נרתיק גיטרה שחור. הנאשם הוציא חוט עם כפתור ההפעלה של מטען החבלה אל מחוץ לנרתיק, כך שניתן יהיה להפעיל את מטען החבלה כלי לפתוח את הנרתיק של הגיטרה.

5.  הנאשם דיווח אודות הכנת מטען החבלה אל איימן חלאווה וביקש מהאחרון כי ישלח אליו את המחבל המתאבד.

6.  לאחר מספר ימים המחבל המתאבד עו א-דין שהיל אחמד מצרי (להלן: המחבל הנתאבד), אשר נשלח על-ידי איימן הלאווה הגיע לרמאללה. בלאל ברנותי פגש את המחבל המתאבד וביחד עם מחמד ואאל נחדד דגלס הלין אותו ברמאללה.

7.  הנאשם העביר את הגיטרה הממולכדת הנ"ל לידי בלאל ברגותי על מנת שהאחרון ימסור אותה לידי המחבל המתאבד וזאת על מנת שהאחרון יבצע באמצעותה פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל הניתן.

8.  ביום 08.08.2001, על-פי הוראתו של מחמד ואאל מחמד דגלס (האמור בפרט האישום העשירי), נסעו האחלאם עאדף אחמד תמימי (האמורה בפרט האישום העשירי) לירושלים על מנת לאתור מקום שבו יבוצע פיגוע התופת, אשר אותו תכנן הנאשם ביחד עם חבריו הנ"ל ואשר לצורך הוצאתו לפועל גויסו מחמד דגלס ואחלאם תמימי הנ"ל. אחלאם תמימי תבחינה כי אמנם ישנה נוכחות גדולה של כוחות חביטחון בירושלים, אך אף אחד לא בדק אותה כי היא לבשה מופ.ה קצרה מתוך ניסיון להיראות כיהודייה. אחלאם תמימי הגיעה למסקנה כי ניתן לצאת מרמאללה ולבצע פיגוע במרכז ירוש ליס.

9.  באותו היום, בלאל ברגותי הדריך את המחבל המתאבד איך מפעילים את מטען החבלה הנ"ל, אשר יוצר על-ידי הנאשם.

10. ביום 09.08.2001, מחמד דגלס הגיש הפיגיש את אוחלאם תמימי עם המחבל המתאבד, אשר נשע את הגיטרה המתולכדת. המחבל המתאבד הסתפר לקראת ביצוע הפיגוע המתוכנן ולבש בגדים, אשר היו אמורים לגרום לו להיראות כיהודי. לאחר מכן, אחלאם תמימי והמחבל המתאבד יצאו לביצוע הפיגוע המתוכן.

11. לאחר שאחלאם תמימי והמחבל המתאבד נכנסו לירושלים, אחלאם תמימי הורתה למחבל המתאבד לשאת את הגיטרה שהיתה בתוך נרתיק שחור. המתואר לעיל, על חגב על מנת לא

6

לעורר את חשדם של כוחות הביטחון הישראליים. אתלאם תמימי אף הורידה את הג'קט
שלבשה ונוערה בגו פיה קצרה.

12. אתלאם תמימי הוכילה את המחבל המתאבד לצומת הרחובות יפו וקינג ג'ורג' בירושלים,
שהוא צומת מרכזי והומה אדם. אתלאב תמימי תדרכה את המחבל המתאבד להפעיל את
מטען החבלה במרכז הצומת האמורה כשאנשים רבים תוצים אותן וכך לפגוע בכמות גדולה
ככל הניתן של האזרחים ונוטע הכפוניות העומדות ברמזור ולגרום למותם. אתלאם תמימי
ציינה בפני המחבל המתאבד כי דינו רשאי לבחור גם במקום אחר לביצוע הפיגוע המתוכנן,
אולם זה צריך להיות ברחוב קינג ג'ורג' שהוא מלא אנשים.

13. אתלאם תמימי השאירה את המחבל המתאבד במקום האמור ונגתה לכיוון שער שכם של
העיר העתיקה על מנת לחזור לרמא ללה.

14. בסמוך לשעה 13:55, המחבל המתאבד, עו א-דין שהיל אחמד מצרי, נכנס למסעדה
"סבארו" הנמצאת בפינת הרחובות יפו וקינג ג'ורג', אשר היתה הומת אדם בשעה זו. שם
המחבל המתאבד הפעיל את מטען החבלה, אותו הכין הנאשם כפי שתואר לעיל, וזאת
בכוונה לגרום למותם של אנשים רבים ככל ה.אפשר.

15. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו המנישה-עשר בני
אדם, כפי שיתואר בפרטי האישום הבאים.

16. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות
לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

17. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לרכוש. הן
למסעדה "סבארו", הן למכוניות ומבנים שהיו בסמוך.

18. במעשיו, המתוארים לעיל, גרם הנאשם בכוונה למותה של פרידה מגדלסון ז"ל, בת 62
במותה, אשר נהרגה כתוצאה מהתפוצצות מטען החבלה כאמור לעיל.

### פרט שלושת-עשר:   (פ.א. 01/6891 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו הממותארים בפרט האישום השנים-עשר, גרם בכוונה למותה של לאלי
שימשאשולי-מסגניסר ז"ל, בת 33 במ־ותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד
עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט
האישום השנים-עשר.

<u>פרט ארבעה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור וחן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של תמר
שימשאשוילי-מסגניזר ז"ל, בת 8 במותה, אשר נהרגה כתוצאה מהתפוצצות המטען המתואר
עם מטען החבלה במוסעדה "סבארו" בפינת הרחובות יפו וקינג גיורג' בירושלים, כפי שהוא בפרט
האישום השנים-עשר.

<u>פרט חמישה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של תהילה
מעוז ז"ל, בת 20 במותה, אשר נהרגה כתוצאה מהתפוצצות המטען המתואר עם מטען החבלה
במוסעדה "סבארו" בפינת הרחובות יפו וקינג גיורג' בירושלים, כפי שתואר בפרט האישום
השנים-עשר.

<u>פרט שישה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של מיכל
רזאל ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המטען המתואר עם מטען החבלה
במוסעדה "סבארו" בפינת הרחובות יפו וקינג גיורג' בירדושלים, כפי שתוארו בפרט האישום
השנים-עשר.

<u>פרט שבעה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של מלכה רוט
ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המטען המתואר עם מטען החבלה
במוסעדה "סבארו" בפינת הרחובות יפו וקינג גיורג' בירושלים, כפי שהוארו בפרט האישום
השנים-עשר.

8                                                                                                              ת.פ 502/563

<u>פרט שמונה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לכי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מוסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.06.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>יוכבד</b> <b>ששון</b> ז"ל, בת 10 במותה, אשר נהרגה כתוצאה מהתפוצצות המטען עם מטעני החבלה במסיעדה "סבארו" בבנית הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט תשעה-עשר:</u> (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מוסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של <b>מרדכי</b> <b>רפאל סחיוסחוורדר</b> ז"ל, בן 44 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל הנותאבד עם מטען החבלה במסעודה "סבארוי" בפנית הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט עשרים:</u> (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378). תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מוסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>צירה</b> <b>סחיוסחוורדר</b> ז"ל, בת 41 במיותה, אשר נהרגה כתוצאה מהתפוצצות הנותאבד המחבל עם מטען החבלה במסיעדה "סבארו" כפנית הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט עשרים ואחד:</u> (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מוסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>רעיה</b> <b>סחיוסחוורדר</b> ז"ל, בת 14 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד יום מטען החבלה במסעודה "סבארו" בפנית הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר





<u>פרט עשרים ושניים:</u>  (פ.א. 6891/01 מת"מ י-ס)

<b>מהות העבירה:</b> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1958.

<b>פרטי העבירה:</b> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המנוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של <b>אברהם יצחק שחיוסקוורדו</b> ז"ל, בן 4 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתוֹאר בפרט האישום השנים-עשר.

<u>פרט עשרים ושלושה:</u>  (פ.א. 6891/01 מת"מ י-ס)

<b>מהות העבירה:</b> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<b>פרטי העבירה:</b> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של <b>חמדה סחיוסקוורדו</b> ז"ל, בת שנתיים במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתוֹאר בפרט האישום השנים-עשר.

<u>פרט עשרים וארבעה:</u>  (פ.א. 6891/01 מת"מ י-ס)

<b>מהות העבירה:</b> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), ונשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1965.

<b>פרטי העבירה:</b> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של <b>ג'ודית לילייג' גרנבוים</b> ז"ל, בת 31 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתוֹאר בפרט האישום השנים-עשר.

<u>פרט עשרים וחמישה:</u>  (פ.א. 6891/01 מת"מ י-ס)

<b>מהות העבירה:</b> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<b>פרטי העבירה:</b> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של <b>ויורא בלאש</b> ז"ל, בן 69 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתוֹאר בפרט האישום השנים-עשר.

10                                                                                                                          SED/03 תיק

<u>פרט עשרים ושישה:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
והאשם הנ"ל, בכישורו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של צבי גולומבק ז"ל, בן 26 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען התבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט עשרים ושבעה:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, בנעישיו המתוארים בפרט האישום השנים-עשר, ניסה לגרום למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען התבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.
כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה נפצעו יותר מ-127 בני אדם שהיו באיזור מקום ההתפוצצות.

<u>פרט עשרים ושמונה:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> היזק כזדון לרכוש, עבירה לכי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן כתחצה לו, ביום 09.08.01 או כסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במעשי האמור, במקום האמור בפרט האישום השנים-עשר, במעשיו המתוארים בפרט האישום השנים-עשר, גרם נזק כבד למסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, אשר בו הופעל מטען חבלה, כפי שתואר בפרט האישום השנים-עשר, וכן לבניינים הסמוכים ולכי הרכב שעברו במקום בזמן הפיגוץ.

<u>פרט עשרים ותשעה:</u>

<u>מהות העבירה:</u> עבירות ברשיונות וכסמכים שהוצאו על-פי תחזקת הביטחון, עבירה לפי סעיף 53(ג) ו-(ו) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מהמוחצית השניה של שנה 2001 ועד ליום מעצרו או בסמוך לכך, שינה או הנית לאחר לשנות כל מסמך שהוצא על פי תחיקת הביטחון והחזיק בושותו מיסמך שהוצא על פי תחיקת הביטחון שאינו ערוך על שמו, מתוך כוונה להטעות, דהיינו:
הנאשם הנ"ל, במחציה השניה של שנת 2001, ברמאללה או בסמוך לכך, קיבל מידי סיד ע/כריס הדר שייך-קאסם, הממונה יצבאת 2", שתי תעודת זהות - האחת על שמו של ערבאת טאהר ברגותי, והשניה על שמו של אשרף אלאחמד. בשתי העודות הזהות הנ"ל הוכנסו תמונותיו של הנאשם.
במהלך החקמות האמורה לעיל, הנאשם עשה שימוש מתעודת הזהות המזוייפת על שמו של ערפאת טאהר ברגותי בעת שערך בדיקות על-ידי היילי צה"ל ברמאללה ובסמוך אליה, וזאת מתוך כוונה להטעות את חיילי צה"ל.

11                          ה.ת. 51263

P 7: 38

<u>פרט שלושים:</u>

<u>מהות העבירה:</u> קשר בציוד מלחמתי, עבירה לפי סעיף 2 לצו כדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, קשר או עסק
בסחורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, שוחח עם אברהים גמייל שעניאנו חאמד,
הכימונה "אבאאה 1" או "חשיח" י, ראש "גדודי עז אלקסאם" באיזור רסאללה. אברהים
תאמד ביקש כי הנאשם ירכוש עבורו תמייק עוזי. הנאשם פנה אל אחמד טאלב מוצטפא ברגותי
(המכונה "אל פראנסיי"), אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש
לרכוש ממנו תמייק עוזי. אחמד ברגותי הסכים את הנאשם עם מהנד אבו חלואוה, פעיל צבאי בכיר
בייגדודי חללי אלאקצאיי, והנאשם רכש מידי האחרון תמייק עוזי.
לאחר כשבועיים, הנאשם העביר את תמייק עוזי הנ"ל לידי סיד עברים חדר שייך-קאסם, המכונה
"צלאח 2", אשר העבירו לידי אברהים חאמד.

<u>פרט שלושים ואחד:</u>

<u>מהות העבירה:</u> קשר בציוד מלחמתי, עבירה לפי סעיף 2 לצו כדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, קשר או עסק
בסחורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה אל אחמד טאלב מוצטפא ברגותי
(המכונה "אל פראנסיי", אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש
לרכוש ממנו תמייק 5-M.P. אחמד ברגותי הפגיש את הנאשם עם מהנד אבו חלואוה, פעיל צבאי
בכיר בייגדודי חללי אלאקצא", והנאשם רכש מידי האחרון תמייק M.P-5.

<u>פרט שלושים ושניים:</u>

<u>מהות העבירה:</u> החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון [יהודה
והשומרון] (מס' 378), תשמ"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל ממועד האמור בפרט האישום וזקודות ועד ליום
מעצרו, החזיק ברשותו כלי-יריה, התחמשת, פצצה, רימון יד או חפץ נפיץ או מבעיר, כלי או חפץ
או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי
מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק ברימייק 5-MP,
המנואר בפרט האישום הקודם, וכן אקדח.
הנאשם החזיק בכלי הנשק הנ"ל לLא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.

<u>פרט שלושים ושלושה:</u>

<u>מהות העבירה:</u> יצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון [יהודה
והשומרון] (מס' 378), תשמ"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מהמחצית השניה של שנת 2001 ועד ליום מעצרו, יצר
כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או
מטעמו, דהיינו:
הנאשם הנ"ל, בטהלך התקופה האמורה, ברמאללה ובסמוך אליה, הקים מספר מעבדות לייצור
חומרי נפץ ובוטענני חבלה. הנאשם נהג להחליף את המינקום של המיעבדה הנ"ל כל כמה חודשים
וזאת על מנת שלא תיחשף על-ידי כוחות הבטחון הישראליים.
אל המעבדות הנ"ל, הנאשם וחבריו נהגו להעביר חומרים כימיים שונים המשמשים לייצור חומרי
נפץ. חומרי הנפץ הנ"ל נרכשו הן על-ידי הנאשם עצמו, הן על-ידי חבריו כארגון החמאס. חומרי
הנפץ הנ"ל נרכשו בכספים של ארגון החמאס.

12
ת.פ 1051/02

הנאשם ייצר מהחוכרים הכימיים הנ"ל עשרות קילוגרמים של חומר נפץ, בעיקר מהסוג "אום אלפבד" (TATP). ממוכרי הנפץ, אותם ייצר, הנאשם הכין מספר רב של מטעני חבלה מסוגים שונים, וזאת בנוסף למטעני החבלה אותם כבי שותואר בפרטו האישום הקודמים וכפי שותואר בפרטו האישום הבאים.

הנאשם ייצר את נטעיני החבלה הנ"ל במטרה שפעילי ארגון החמאס יבצעו באמצעותם פיגועים נגד המטרות הישראליות. הנאשם תדרך את פעילי ארגון החמאס איך להפעיל את מטעני החבלה הנ"ל.

בנוסף לאנמור לעיל, הנאשם ניסה לייצר רימוני-יד ומטעי וכן הכנן להרכיב נטעני חבלה על רכב עצעצע המופעל באמצעות שלט רחוק.

במהלך התקופה האמורה, הנאשם אף קיבל הוראות לייצור טילי "יקאסם", אך החליט כי אין ביכולתו לייצר את הטילים.

### פרט שלושים וארבעה:

<u>מהות העבירה:</u> אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 כתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במחצית השנייה של שנת 2001 או בסמוך לכך, התאמן, אימן או אונן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, לימד את סיד עיכרים חדר שייך-קאסם, המכונה "צלאח ב", פעיל בארגון החמאס, אשר שימש כאיש קשר בין הנאשם לכון מפקדו בארגון החמאס, לייצר חומרי נפץ ומטעני חבלה.

### פרט שלושים וחמישה:

<u>מהות העבירה:</u> אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש נובמבר 2003 או בסמוך לכך, התאמן, אימן או אונן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי לנחמד חסן אחמד ערבאו (מכונה "אבו מועאז"), פעיל צבאי בארגון החמאס.

במהלך האימון האמור הנאשם לימד את מחמד ערמאו לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגווני הפעלה למטעני חבלה המורכבים מישעון, שלט רחוק ומכשיר טלפון סלולרי.

בסוף האימון הנאשם העביר למחמד ערמאו תיק עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דף עם ההוראות לייצורם.

התמורים לצורך האימון הצבאי הנ"ל נרכשו על-ידי אברהים גיפל עג'עיאני חאמד, ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה.

הנאשם הציג את עצמו בפני מחמד ערמאו בכינוי "המהנדסי". במהלך האימון הצבאי הנ"ל, הנאשם ומחמד ערמאו חיו רעולי פנים.

### פרט שלושים ושישה:

<u>נוהות העבירה:</u> אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש נובמבר 2003, כימים לאחר המועד האמור בכרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אונן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי לשני אנשים, אשר הובאו לדירה על-ידי סיד עיכרים חדר שייך-קאסם, המכונה "צלאח ב", פעיל צבאי בארגון החמאס.

P 7: 40

בהילך האימון האמור הנאשם לימד את שני האנשים הנ"ל ליצר חומר נפץ הנקרא ''אום
אלעבד'' (TATP), מענינים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה
המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.
בסוף האימון הנאשם העביר לשני האנשים הנ"ל שני תיקים עם חומרים שונים המשמשים ליצור
חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.

## פרט שלושים ושבעה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, בסמוך לאחר שביצע את הפירוט לו
בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או בטלאכת
תרגילים, תנועות או מערכות צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בדירה ברטמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון
צבאי למוראד חליל ע/אחק עמירה, אשר הובא לדירה על-ידי סיד ע/כרים חדר שייך-קאסם,
המכונה ''צלאח 2'', כעיל צבאי בארגון החמאס.
במהלך האימון האמור הנאשם לימד את מוראד עמירה ליצר חומר נפץ הנקרא ''אום אלעבד''
(TATP), מענינים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה
המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי. כמו כן, הנאשם העביר למוראד עמירה
אימון תיאורטי ומעשי בזיירון והרכבת של תמ''ק עוזי ואקדח 14.
בסוף האימון הנאשם העביר למוראד עמירה תיק עם חומרים שונים המשמשים לייצור חומרי
הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.
בסוף האימון האמור, הנאשם העניק למוראד עמירה כינוי ''יעבדאללה 5'', וזאת מכיוון שזה היה
האדם החמישי, אותו לימד ליצר את חומרי הנפץ ומטעני החבלה.

## פרט שלושים ושמונה: (פ.א. 10283/01 ציון)

**מהות הבעירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378, תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), השכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן בחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במהלך חודש נובמבר 2001 או בסמוך לכך, ברמאללה או בסמיך לכך, ייצר
   חומר נפץ מסוג ''אום אלעבד'' (TATP).

2. בחומר הנפץ הנ"ל, הנאשם ייצר שלושה מטעני חבלה. את מטען החבלה הראשון הנאשם
   הכניס אל תוך נארג מיחשב. את מטען החבלה השני הנאשם הכניס אל תוך תיק בד שחור.
   את מטען החבלה השלישי הנאשם הכין בצורה של חגורת נפץ. בנוסף לחומר הנפץ הנאשם
   הכניס למיבנה החבלה רסס, המורכב ממסמרים ואומים. בשלושת מטעני החבלה הנ"ל
   הנאשם הרכיב את מגנוני ההפעלה. כאשר מטעני החבלה שהורכבו בחגורת הנפץ ובמארז
   מיחשב הופעלו על-ידי לחיצה על כופתן ההפעלה ואילו מטען החבלה שהוסתר בתוך תיק
   בד שחור הופעל באמצעות שעון עצר. בשלושת מטעני החבלה הנ"ל הנאשם הוסיף אומים
   ומסמרים על מנת להגביר את עוצמת הפגיעה של מטעני החבלה. כמו כן, הנאשם הכניס
   לשלושת מטעני החבלה חוטר רעיל, גם זאת על מנת להפוך את המטענים לקטלניים יותר.

3. הנאשם ייצר את מטעני החבלה הנ"ל לבקשתו של סיד ע/כרים חדר שייך-קאסם, המכונה
   ''צלאח 2''. כעיל צבאי בארגון החמאס. ''צלאח 2'' פנה אל הנאשם על-פי בקשתו של
   אבראהים כ/מיל ע/ע/אני חמוד, המכונה ''צלאח 1'' או ''שיח''', מפקד הזרוע הצבאית של
   ארגון החמאס באיזור רמאללה.

14                                          ת.פ 382-03

4. הנאשם מסר את שלושת מטעני החבלה הנ"ל ל"צלאח 2" על מנת שהאחרון ידאג להעברים לפעילי ארגון החמאס, אשר יבצע באמצעות מטעני החבלה הללו פיגועי תופת בכוונה לגרום למותם של אנשים רבים ככל היותן.

5. "צלאח 2" ואברהים חאמד, בעצמם או באמצעות אנשים אחרים, העבירו את מטעני החבלה הנ"ל לידי אוסאמה מחמוד בתר וכניל מחמוד חלביה וכן הטמינו את מטעון החבלה, אשר הוסתר בתיק בד שחור, בתוך רכב מסוג אופל קדט, מ.ר. 4774987.

6. ביום 01.12.01, בסמוך לשעה 23:36, בכניסה מכיכר ציון לרחוב בן יהודה בירושלים או בסמוך לכך, נחבל מתאבד אוסאמה מחמד בתר הפעיל את מטען החבלה, אשר יוצר על-ידי הנאשם והוסתר בתוך מאדו מחיצב כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטען החבלה הנ"ל התפוצץ.

7. באותו הזמן, בסמוך לשעה הנ"ל, בצומת הרחובות בן-יהודה - לוני בירושלים או בסמוך לכך (מרחק של מטרים ספורים ממקום פיצוץ המטען הראשון), נחבל מתאבד נביל מחמוד חלביה הפעיל את מטען החבלה, אשר יוצר על-ידי הנאשם בצורה של חגורת נפץ כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטען החבלה הנ"ל התפוצץ.

8. באותו היום, מספר דקות לאחר שעני המחבלים המתאבדים הנ"ל הפעילו את מטעני החבלה הנ"ל, הופעל מטען החבלה שיוצר על-ידי הנאשם והוסתר בתוך תיק בד שחור כאמור לעיל. מטעון החבלה השלישי הופעל ברכב מסוג אופל קדט, מ.ר. 4774987, אשר חנה ברחוב הרב קוק בסמוך לפינת רחוב יפו בירושלים (מרחק של כמה עשרות מטרים ממקום פיצוצם של שני מטעני החבלה הנ"ל). מטען החבלה הנ"ל הופעל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

9. כתוצאה מפיצוץ שלושת מטעני החבלה הנ"ל, אשר פוצצו על-ידי הנאשם כפי שתואר לעיל, נהרגו עשרה ונפצעו כ-191 בני אדם, כפי שיפורט בפרטי האישום הבאים.

10. במעשיו הנתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של יוסף עצורה ז"ל, בן 18 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה במרכז ירושלים כפי שתואר לעיל.

## פרט שלושים ותשעה: (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ו-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), התשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור ותן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של אסף אביטון ז"ל, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

ת.פ 1/05אך

P 7: 42

<u>פרט ארבעים:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ה-1966.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך.
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של גיא וקנין ז"ל, בן 19 במותו,
אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתוזאר בפרט האישום השלושים
ושמונה.

<u>פרט ארבעים ואחד:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ה-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של יוני קורנגוב ז"ל, בן 20
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתוזאר בפרט האישום השלושים
ושמונה.

<u>פרט ארבעים ושניים:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ה-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של יעקב ישראל דינו ז"ל, בן
17 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתוזאר בפרט האישום
השלושים ושמונה.

<u>פרט ארבעים ושלושה:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של מיכאל דהאן ז"ל, בן 20
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתוזאר בפרט האישום השלושים
ושמונה.

16

P 7: 43

**פרט ארבעים הארבעה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תשי"ל-1970) וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של גולן של גולן של תורג'מן ז"ל, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים וחמישה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תשי"ל-1970) וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של אדם וינשטיין ז"ל, בן 14 שנה במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים ושישה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תשי"ל-1970) וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של משה ידיד-לוי ז"ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים ושבעה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תשי"ל-1970) וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של ניר חפצדי ז"ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

17

<u>פרט ארבעים ושמונה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשייל-1970 וסעיפים 14(א) ו-19 לצו בו בר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), השכ"יח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמינה, במעשיו המתוארים בפרט האישום חשלושים ושמונה, ניסה לגרום למותם של אזרחים רבים בכל האפשר.
כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה, נפצעו 191 בני אדם.

<u>פרט ארבעים ותשעה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשייל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם נזק כבד למבנים ולבתי העסק הנמצאים באיזור הרחובות בן-יהודה. לונץ, יפו, הרב קוק ולכלי רכב אשר היו במקום, אשר בו הופעלו שלושה מטעני החבלה, כפי שתואר בפרט האישום השלושים ושמונה.

## פרט חמישים:

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשייל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-ירייה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של מרואן ברגותי, ראש "התנזים" של הפת"ח, ייצר שני מטעני חבלה, מרואן ברגותי ביקש מהנאשם לייצר עבורו שני מטעני חבלה על מנת לעשות בהם שימוש אם כוחות צה"ל ייכנסו לרמאללה.

## פרט חמישים ואחד:

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשייל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-ירייה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ייצר שלושה מטעני חבלה, אשר היו מוסווים בקרטונים של מיץ, וכן ארבעה מטעני חבלה, אשר היו מוסווים לאבנים.
מטעני החבלה הנ"ל הועברו על-ידי סיד עוכרים נדר שיך-קואסם, המכונה "צלאח 2" לידי אברהים גימיל מעג'אני אחמד, המכונה "צלאח 1", שהוא ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

ת.פ. 03/025

<u>פרט חמישים ושניים:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס' 243), התשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה
אחרת בציוד מלחמתי ללא היתר כתוב על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי אחמד טאלב מוצטפא ברגותי
(הכינוי יאכ פראנסיי), אחד מראשי הארגון "יחדזדי" חלקי אקל,אקצא", רוסייר קלצנייקוב עם שתי
מחסניות מלאות בכדורים וכן אקדח 14 עם מחסנית מלאה בכדורים.
הנאשם ביצע את האמור לעיל על-פי בקשתו של מחמד טאהר מחמוד ברגותי. פעיל צבאי בארגון
החמאס.
לאחר רכישת כלי הנשק הנ"ל, הנאשם מסרם לידי מחמוד טאהר ברגותי הנ"ל.

<u>פרט חמישים ושלושה:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(2)(ג) לתקנות
ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש פברואר 2001 או בסמוך לכך, עשה עבודה כל שהיא
או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם אדם פלוני. הנאשם נפגש עם האדם הנ"ל על-פי
בקשתו של אברהים ג'מיל עמיאני חאמד, המכונה "צלאח ז'" או "יהשיחי", ראש "יגדודי עז א-דין
אל קסאמי", חזרוע הצבאית של ארגון החמאס, באיזור רמאללה. אברהים חאמד מסר לנאשם כי
האדם הנ"ל צריך לצאת לביצוע פיגוע התאבדות ובקש כי הנאשם יבדוק אם האדם הנ"ל איתן
בדעתו לבצע פיגוע התאבדות.
הנאשם הסכים ושוחח עם האדם הנ"ל. הנאשם התרשם כי האדם הנ"ל איתן בדעתו ואת לאור
העובדה כי האדם הנ"ל מבטש, באמצעות ביצוע פיגוע התאבדות, לטהר את שם אביו, שנחשד
בעותף הפעולה עם כוחות הביטחון הישראליים.
הנאשם מסר את מסקנותיו הנ"ל לאברהים חאמד, אשר השיב כי לא יוציא את האדם הנ"ל
לביצוע פיגוע התאבדות, שכן אינו מוכן שאדם יבצע פיגוע התאבדות רק על מנת לטהר את שמו.

<u>פרט חמישים וארבעה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. בתחילת חודש מרץ 2002, כרמאללה או בסמוך לכך, הנאשם נפגש עם האחראי עליו
בארגון החמאס, אברהים ג'מיל עמיאני חאמד, המכונה "צלאח ז' או יהשיחי". אברהים
חאמד ביקש כי הנאשם ייצר חגורת נפץ עבור מחבל מתאבד, על מנת שהאחרון יבצע פיגוע
התאבדות בכוונה לגרום למותם של אנשים רבים ככל היותן.

2. הנאשם הסכים לבקשתו של אברהים חאמד. הנאשם ייצר, כרמאללה או כסמוך לכך,
חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מחומרה מבד דמוי עור, עלי רודביקי ברזים ובקבוקי
שמפו כילאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל.

3. לאחר שהנאשם סיים כהכין את חגורת הנפץ הנ"ל, הנאשם העביר'ה באמצעות סיד ע/כרים
חדר שייך-קאסם, המכונה "צלאח 2", אל אברהים חאמד, וזאת לצורך ההוצאה לפועל של
פיגוע ההתאבדות המתוכנן.

19

4. אברהים חאמד פוה גם אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאז") וביקש כי האהרון יפנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעו", ויבקש ממנו לאתר מקום מתאים לביצוע פיגוע ההתאבדות.

5. מחמד ערמאן נפגש עם "אבו סעד" וביקש לאתר מקום בישראל המתאים לביצוע פיגוע התחאבדות. לאחר מספר ימים "אבו סעד" פנה אל מחמד ערמאן ומסר בי אותר מקום המתאים לביצוע פיגוע ההתאבדות המתוכן והוא - בית-קפה "מומנטו", הנמצא ברחוב עזה בירושלים. "אבו סעד", ביחד עם ופאא סעיד מוסא עבאסי ונחמד אסתאק עודה, ביצע סיורים באיזור בית-קפה "מומנטו" לצורך תכנון פיגוע ההתאבדות. הנאשם דיווח ליישיחי" אודות המקום שאותר עלי-ידי "אבו סעד" וחבריו.

6. ביום שבת, 09.03.02, בסביבות השעה 20:00, ברמאללה או בסמוך לכך, מחמד ערמאן נפגש עם ופאא אלחוראני ועם אברהים חאמד ופאא אלחוראני עובו את מקום הפיגוע למשך כחצי שעה על מנת שמאא אלחוראני ילבש חגורת נפץ. אברהים חאמד הלביש על ופאא חוראני את חגורת הנפץ, אשר הובנה על-ידי הנאשם, כאמור לעיל, לצורך ביצוע פיגוע התאבדות.

7. לאחר מכן, מחמד ערמאן, ביחד עם וליד אנג'אס, ליוו את ופאא אלחוראני, אשר נשא על גופו את חגורת הנפץ הנ"ל, לתחנת מוניות "קלנד'יה" ברמאללה והעלו את האחרון לרכב הסעות שנסע לבית חנינא. מחמד ערמאן, וליד אנג'אס ופואא אלחוראני נסעו ביחד לבית חנינא ברכב הסעות. מחמד ערמאן וליד אנג'אס הוביל את ופאא אלחוראני למקום המפגש, אשר אותו קבע הנאשם עם "אבו סעד".

8. "אבו סעד" נפגש עם המחבל המתאבד, ופאא אלחוראני, במקום האמור, ולאחר מכן, ביחד עם ופאא עבאסי, הסיע את המחבל המתאבד לירושלים. "אבו סעד" ופאא עבאסי הובילו את ופאא אלחוראני לבית-קפה "מומנטו" הנמצא ברחוב עזה בירושלים.

9. בסמוך לשעה 22:30, ביום 09.03.02 או במועד הסמוך לכך, ופאא אלחוראני אשר נשא על גופו את חגורת הנפץ, אותה ייצר למטרה זו הנאשם, נכנס אל תוך בית-קפה "מומנטו", אשר היה באותה שעה הומה אדם, והפעיל את חגורת הנפץ הנ"ל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

10. במעשיו הנ"ל הנזכרים לעיל, הנאשם הי"ל גרם בכוונה למותו של אברהם רחמים ז"ל, אשר נהרג כתוצאה מפיצוץ חגורת הנפץ בבית-קפה "מומנטו" כפי שתואר לעיל.

### פרט חמישים וחמישה: (פ.א. 1522/02 מוריה)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 1(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור ו/הן ביחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של ניר בורוכוב ז"ל, אשר נהרג כתוצאה מפיצוץ מטען התחבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

26                                        ב.ית. 20-05-81

P 7: 47

<u>פרט חמישים ושישה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשייל-1970 וסעיף 14נ(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנייל, הן באיזור והן נחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנייל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המנותארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של לימור בן שוחם ז"ל, אשר
נהרגה כתוצאה מפיצוצ' מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושבעה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשייל-1970 וסעיף 14נ(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנייל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנייל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המנותארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של דן אימוני ז"ל, אשר נהרג
כתוצאה מפיצוצ' מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושמונה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשייל-1970 וסעיף 14נ(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנייל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנייל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המנותארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של דנית דן ז"ל, אשר נהרגה
כתוצאה מפיצוצ' מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ותשעה:</u>  (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשייל-1970 וסעיף 14נ(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנייל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנייל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המנותארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של אורי פליקס ז"ל, אשר נהרג
כתוצאה מפיצוצ' מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

21

פרט שיעים: (פ.א. 1512/02 מוויה)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן ביחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של ברוך לרנר ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

פרט שישים ואחד: (פ.א. 1512/02 מוריה)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום התמישים וארבעה, במעשיו
המתוארים הנ"ל, במעשה האמור, גרם בכוונה למותה של טלי אליהו ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

פרט שישים ושניים: (פ.א. 1512/02 מוריה)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום התמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישיים וארבעה, גרם בכוונה למותה של לבנת דבש ז"ל, אשר נהרגה
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

פרט שישים ושלושה: (פ.א. 1512/02 מוריה)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישיים וארבעה, גרם בכוונה למותה של אוריה אהרוב ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

P 7: 49

<u>פרט שישים וארבעה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **נתנאל כוכבי** ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים וחמישה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר.
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה, נפצעו 65 בני אדם.

<u>פרט שישים ושישה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, הרס רכוש או פגם בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם נזק כבד לבית-קפה "מומנט" הנמצא ברחוב עזה בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ושבעה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותם של אחר, דהיינו:

1.  הנאשם הנ"ל, בסוף חודש מרץ - תחש אפריל 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כדרס חדר שייך-קאסם, הכינוטה "צלאח 2", פעיל צבאי בארגון החמאס.

2.  "צלאח 2" מסר לנאשם כי אברהים ניזול ל/עימאני חאמד, הכינוטה "צלאח 1" או "ישיח'", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר חגורת נפץ ותיק נפץ לצורך ביצוע פיגוע התאבדות. הנאשם הסכים לייצר את שני מטעני החבלה

ת.ם. 002500



וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע התאבדות בכוונה לגרום למוות ישי אנשים רבים ככל האפשר.

3. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מחתורה מכד דמוי עור, עלי הודבקו בדגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל. חגורת הנפץ הנ"ל היתה דומה לזו שהנאשם ייצר עבור הפיגוע בבית-קפה "מומנט" בירושלים. היתואר בפרט האישום התמישים וארבעה.

4. כמו כן, הנאשם ייצר, ברמאללה או בסמוך לכך. מיטען נפץ, אשר הורכב מבקבוקי שמפו מלאים בחומר נפץ, אשר הוכנסו אל תוך תיק בצבע שחור. הנאשם הכניס אל תוך התיק הנ"ל ברגים לצורך הגברת עוצמת הפגיעה של מיטען התחבלה. הנאשם הרכיב בתיק האמור מנגנון הפעלה למטען התחבלה, המורכב משעון עצר.

5. הנאשם מסר את חגורת הנפץ הנ"ל ביחד עם תיק הנפץ הנ"ל לידי "צלאח 2", על מנת שהאחרון יעבירם לידי אברהים האמור וזה יעבירם לידי המחבל המתאבד.

6. בחודש אפריל 2002 אברהים האמור פנה אל מחמד חסן אחמד עודמאן (מכונה "אבו מעיאהו") ומסר לאחרון כי יש צורך לבצע פיגוע התאבדות בכוונה לגרום למוות של אנשים רבים ככל האפשר. אברהים האמור מסר למחמד עודמאן כי יש לו אדם שמוכן לבצע את פיגוע ההתאבדות.

7. לאחר מספר ימים, ברמאללה או בסמוך לכך. אברהים האמור הכיר למחמד עודמאן את מחמד גימיל אחמד מועמר (להלן: המחבל המתאבד). אשר היה האמור לבצע את פיגוע ההתאבדות המתוכנן. במהלך הפגישה סוכם כי לאחר מסכר ימים אברהים האמור יביא את המחבל המתאבד לפגישה עם מחמד עודמאן ברמאללה והאחרון ייקח את המחבל המתאבד לביצוע פיגוע ההתאבדות המתוכנן.

8. ביום 07.05.02, מחמד עודמאן נפגש עם המחבל המתאבד ברמאללה לפי הסיכום הנ"ל. על-פי בקשתו של מחמד עודמאן, דליד יועזיר עראהדי אנג'אט ליווה את המחבל המתאבד מרמאללה לצפה. בצפה השניית הנ"ל נפגש עם מחמד עודמאן ונוסע ביחד לבית עגואן. שם מחמד עודמאן מסר לידי המחבל המתאבד את חגורת הנפץ, אשר אותה ייצר הנאשם כאמור לעיל ואשר התובר לידי מחמד עודמאן על-ידי אברהים האמור. מחמד עודמאן הלביש את חגורת הנפץ הנ"ל על גופו של המחבל המתאבד וכן וכן לאחרון תיק עם מטען תחבלה נוסף, אשר גם אותו ייצר הנאשם כאמור לעיל ואשר התועבר לידי מחמד עודמאן על-ידחי אברהים האמור.

9. מחמד עודמאן הסיע ברכבו את המחבל המתאבד עם מטען התחבלה הנ"ל ועם חגורת הנפץ הנ"ל מבית עגאן לבית איכסא.

10. בבית איכסא או בסמוך לכך, הנאשם והמחבל המתאבד פגשו בואאל מחנוד מחמוד-עלי קאסם. המכונה "אבו סעדי", אשר לקח את המחבל המתאבד לביצוע הפיגוע המתוכנן.

11. באותו הערב. "אבו סעדי" ביחד עם וסאם סעיד עבאסי, הסיעו את המחבל המתאבד לראשון לציון ושם ליוו אותו עד למועדון "שפילד-קלאבי" הנמצא ברחוב סחרוב 3 באיזור התעשייה החדש, אשר אותר קודם לכן על-ידי "אבו סעדי", מחמד אטחאק עודה, וסאם עבאסי תעלאם א-דין מחמד עבאסי כמקום מתאים לביצוע פיגוע ההתאבדות "אבו סעדי" וסאם עבאסי הצביעו למחבל המתאבד על המועדון האמור והסבירו לו כי זה המקום שבו עליו לבצע את פיגוע ההתאבדות המתוכנן.

12. בסמוך לשעה 22:50, ביום 05 05 02 או במועד הסמוך לכך, המחביל המתאבד נכנס למועדון הנ"ל והפעיל את חגורת הנפץ ואת מטען התחבלה הנוסף, אשר אותם ייצר הנאשם למיטרה זו, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

13. במעשיו המותוארים לעיל. הנאשם גרם בכוונה למותו של רחמים קטיחי ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני התחבלה כפי שתואר לעיל.

ת מ 330-07

P 7: 186



<u>פרט שישים ושמונה:</u>   (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.                    י

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום חששים ושבעה, במעשיו המתוארים
בפרט האישום חששים ושבעה, גרם בכוונה למותו של רפאל חיים ז"ל, אשר נהרג כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום חששים ושבעה.

<u>פרט שישים ותשעה:</u>   (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום חששים ושבעה, במעשיו המתוארים
בפרט האישום חששים ושבעה, גרם בכוונה למותו של ענת טרמפורוש ז"ל, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום חששים ושבעה.

<u>פרט שבעים:</u>   (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום חששים ושבעה, במעשיו המתוארים
בפרט האישום חששים ושבעה, גרם בכוונה למותו של אברהם בייד ז"ל, אשר נהרג כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום חששים ושבעה.

<u>פרט שבעים ואחד:</u>   (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום חששים ושבעה, במעשיו המתוארים
בפרט האישום חששים ושבעה, גרם בכוונה למותו של אתי בבלאר ז"ל, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום חששים ושבעה.

25

<u>פרט שבעים ושניים:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן בחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום חמישים ושבעה, במעשיו הנותנארים
בפרט האישום חמישים ושבעה, גרם בכוונה למותו של יצחק בבלאר ז"ל, אשר נהרג כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום חמישים ושבעה.

<u>פרט שבעים ושלושה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המותארים
בפרט האישום השישים ושבעה, גרם בכוונה למותו של ישראל שיקאר ז"ל, אשר נהרג כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים וארבעה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום חמישים ושבעה, במעשיו המותארים
בפרט האישום חמישים ושבעה, גרם בכוונה למותה של שושנה מגמרי ז"ל, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים וחמישה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המותארים
בפרט האישום השישים ושבעה, גרם בכוונה למותו של שארוק רסאן ז"ל, אשר נהרג כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

26

ח.פ 3000/0

P 7: 52

<u>פרט שבעים ושישה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת טווח בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, נרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור. במקום האמור בפרט תאישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של נזאת חיגאוזי ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ושבעה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, נרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של <u>ניר לוביטין</u> ז"ל, אשר נהרג כתוצאה מכיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ושמונה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> האנשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, נרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישיט ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של <u>רגינה מלכה בוסלו</u> ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ותשעה:</u>  (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכי"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, נרם בכוונה למותו של אחר, דהיינו:
האנשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו תבמתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של <u>דליה מסה</u> ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

27

<u>פרט שמונים:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, בעשותו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותה של <b>פניה הקרי ז"ל</b>, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שמונים ואחד:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה. עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, בעשותו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותה של <b>עדנה כהן ז"ל</b>, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שמונים ושניים:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, בעשותו המתוארים
בפרט האישום השישים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים כבל האפשר.
כתוצאה מפיצוץ מטעני החבלה שהופעלו שהופעלו כפי שתואר בפרט האישום השישים ושבעה, נפצעו 59
בני אדם.

<u>פרט שמונים ושלושה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור וחן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, בעשותו המתוארים
בפרט האישום השישים ושבעה, גרם נזק כבד למועדון "שפילד-קלאבי" הנמצא ברחוב שחרוב 1
בראשון לציון וכן לכל הבניין האמור, אשר בו הופעלו מטעני החבלה, כפי שתואר בפרט האישום
השישים ושבעה.

28

<u>פרט שמונים וארבעה:</u> (פ.א. 2881/02 גלילות)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון [יהודה והשומרון] (מס' 378), תשל"י-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה [יהודה והשומרון] (מס' 225), תשמ"ח-1968.

- <u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 23.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש מאי 2002, ברמאללה או בסמוך לכך, נפגש עם סיד עיכרים וחזר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל לעעיאני חאמד, המכונה "צלאח 1" או "שיריח", מפקד חזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה אשר "ינדבק" אל ברזל וזאת לצורך ביצוע פיגוע תופת. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למוותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר ניתן "להדביקו" לברזל באמצעות הגנטים, אותם הרכיב הנאשם על מטען החבלה, ואשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2" לצורך ההוצאה לפועל של פיגוע התופת המתוכנן. "צלאח 2" העביר את מטען החבלה לידי אברהים חאמד.

5. בחודש מאי 2002 אברהים חאמד נפגש עם מחמד חסן אחמד ערמאן [מכונה "אבו מועאהי"] ומסר לאחרון כי ברצונו לבצע פיגוע תופת ולפוצץ מיכלית דלק, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות האמור, מחמד ערמאן נפגש עם ואאל מחאור מחמד-עלי קאסם, המכונה "אבו סעד", וסיפר לו אודות תכנונו של אברהים חאמד לבצע פיגוע תופת. "אבו סעד" אמר כי יבזוק את העניין ויראה מה ניתן לעשות.

6. לאחר מספר ימים, מחמד ערמאן נפגש שוב עם "אבו סעד". "אבו סעד" מסר כי הוא וחבריו איתרו מיכלית דלק הנוסעת באופן קבוע לאיזר "פי גלילות".

7. ביום 22.05.02, מחמד ערנמאן נפגש עם אברהים חאמד ברמאללה וזיווח לאחרון אודות מיכלית הדלק הנ"ל. אברהים חאמד ביקש להיפגש עם מחמד ערמאן בעד מספר שעות באותו המקום.

8. לאחר מספר שעות השניים נפגשו שוב. אברהים חאמד מסר לידי מחמד ערמאן את מטען חבלה, אשר אותו ייצר הנאשם כאמור לעיל. כנו כן, אברהים חאמד מסר למחמד ערמאן מכשיר טלפון סלולרי, אשר כמנו יש להתקשר אל המכשיר הנחובר למטען החלבה על מנת להפעילו.

9. מחמד ערמאן מכר את מטען החבלה הנ"ל לידי וליד עעויזי ע/האד: אנג'אס, אשר העבירו לצפא. מחמד ערמאן הניע לצפא ומסם נסע במכוניתו, ביחד עם וליד אנג'אס, לבית איכסא.

10. מחמד ירמאני נפגש שם עם "אבו סעד" וביחד עם וליד אנג'אס מסר לידי "אבו סעד" את מטען החבלה הנ"ל עם מכשיר טלפון סלולרי המחובר אליו וכן את מכשיר הטלפון הסלולרי הנוסף.

11. בשעות הבוקר המוקדמות למחרת, יום 23.05.02, "אבו סעד" נסע לחולון ביחד עם וסאם סעיד עבאסי, כשברשותם מטען החבלה הנ"ל. בחולון, "אבו סעד" הצמיד את מטען החבלה הנ"ל באמצעות מגנם אל חלקו הקדמי התחתון של מיכל הדלק המורכב על מיכלית דלק, מ.ר. 2622700. מיכלית הדלק הנ"ל אותרה קודם לכן כיעד לביצוע פיגוע תופת על-ידי וסאם עבאסי ועלאא א-דין מחמוד עבאסי. "אבו סעד" המתין ברכבו עד

29

P 7:55



שהגיע נהג מיכלית הדלק ולאחר מכן נסע אחרי מיכלית הדלק הנייל עד לאתר "פי גלילות" לאחר שי"אבו סעד" וגדא כי מיכלית הדלק, אשר אליה חובר מטען החבלה הנייל, מכנסת אל תוך האתר "פי גלילות". אבו סעד הפעיל את מטען החבלה הנייל, אשר אותו יצר הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

12. מטען החבלה הנייל התפוצץ וגרם נזק כבד למיכלית הדלק הנייל. רק בנס איש לא נפגע.

### פרט שמונים וחמישה: (פ.א. 3975/02 לח')

**מהות העבירה:** גיסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), השיי1970-5 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנייל, הן באיזור והן בוחוצה לו, ביום 30.06.02 או בסמוך לכך, ניסה לגרום בכוונה למותם של אחר, דהיינו:

1. הנאשם הנייל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ו/פברים חדר שייד-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון התמאס.

2. "צלאח 2" מסר לנאשם כי אברהים גימל עעצ'אני חאמד, המכונה "צלאח 1" או "שיח'", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנייל לידי "צלאח 2", "צלאח 2" העביר את מטען החבלה הנייל לידי אברהים גימל עעצ'אני חאמד, המכונה "צלאח 1" או "שיח'", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. אברהים חאמד פנה אל מחמד חסן אחמד ערמאן ומכונה "אבו מועאז'" והציע לבצע פיגוע תופת באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. מחמד ערמאן פנה אל ואאל מחמוד מנחמד-עלי קאסם, המכונה "אבו סיעד", וביקש ממנו לבדוק אפשרות של ביצוע פיגוע תופת על פסי הרכבת בישראל. לאחר זמן מה, "אבו סיעד" פנה אל-מנחדמ ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע הבקוכן. מחמד ערמאן דיווח על כך לאברהים חאמד.

7. לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם אברהים חאמד. אשר מסר לו את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל.

8. ביום 29.06.02 או בסמוך לכך, מחמד ערמאן העביר את מטען החבלה הנייל ביחד עם מכשירי הטלפון הסלולריים לידי "אבו סיעד" והסביר לאחרון כיצד מפעילים את מטען החבלה הנייל.

9. בשעות הערב כאותו היום, "אבו טעד" ביחד עם וסאם סעיד עבאסי נסע ללוד והניח את מיטעך החבלה הנייל על פסי הרכבת בלוד במוקום שאותו קודם לכן כמותאים לביצוע הפיגוע המתוכנן על-ידי וסאם עבאסי וולאא א-דין מחמוד עבאסי. לאחר מיכן, "אבו סיעד" ווסאם עבאסי חזרו לירושלים.





P 7: 187

10. בשעות המוקדמות של הבוקר למחרת, 30.06.02, "אבו סעד"י" וואסאם עבאסי נסעו ללוד. וכיאם עבאסי התמקמק ליד מטען התחבלה שהונח כאמור לעיל על פסי הרכבת. בסמוך לשעה 07.00, ברגע שוטאם עבאסי הבחין ברכבת המתקרבת למקום האמור, הוא הודיע לי"אבו סעד"י, אשר הפעיל את מטען החבלה הני"ל באמצעות מכשיר טלפון סלולרי. וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. מטען החבלה הני"ל התכוצץ.

12. כתוצאה מפיצוצי מטען החבלה הני"ל נפצעו 4 בני אדם. כמו כן נגרם נזק לקטר הרכבת ולנסילת הברזל.

**פרט שמוניים ושישה:** (פ.א. 9913/02 רחובות)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון [יהודה והשומרון] )מס' 378(, תש"י-1970 וסעיפים 14)א( ו-19) לצו בדבר כללי האחריות לעבירה [יהודה והשומרון] )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הני"ל, הן באיזור וחן מחוצה לו, ביום 21.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הני"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיו ע/כרים חדד שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים גימל ע/עיאני האמד, המכונה "צלאח 1" או "שיחי"י", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישהמש בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם יצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הני"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הני"ל לידי אברהים גימל ע/עיאני האמד, המכונה "צלאח 1" או "שיחי"י, ראש הזרוע - הצבאית של ארגון החמאס באיזור רמאללה.

5. אברהים האמד פנה אל מחמוד חסן אחמד ערנמאן )מכונה "אבו נוטאת"י( והציע לכבש פיגוע תופת נוסף באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. מחמד ערנמאן פנה אל ואאל מחמוד מחמד-יעלי קאסם, הכונונה "אבו סעד"י, וביקש ממנו לכשאם מהיהם לביצוע פיגוע תופת נוסף על פסי הרכבת בישראל. לאחר זמן מה, "אבו סעד"י פנה אל מחדמ ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. מחמד ערנמאן דיווח על כך לאנבראהים האמד.

7. לאחר זמן מה, מחמד ערנמא ומפיש ברנמאללה עם אברהים האמד, אשר מסר לו את מטען החבלה, אשר אותו יצר הנאשם כאמור לעיל לצורך ההוצאה הפועל של הפיגוע המתוכנן.

8. ביום 20.07.02, מחדמ ערנמא מסר את מטען החבלה הני"ל לוליד ע/עזיז ע/האדי אנגיאס וביקש מיהאחרון להעבירו לצפא. לאחר נכון, מחמד ערנמא הגיע לצפא ונפגש שם עם וליד אנגיאס. משם, השניים נסעו ביחד לבית איכסא.

9. כבית איכסא, מודיני ערנמאן וליד אנגיאס העבירו את מטען החבלה הני"ל ביחד עם מכשירי הטלפון הסלולריים לידי "אבו סעד"י.

10. באותו הלילה, "אבו סעד"י, ביחד עם וסאם סעיד עבאסי ועלאא א-רין מחמוד עבאסי, נסעו
לאיוור רחובות והניחו את מטען החבלה הנייל על פסי הרכבת בסמוך לציויה מרחובות,
ליד כפר גבירול, מקום שנבחר קודם לכן על-ידי "אבו סעד" וסאם עבאסי. לאחר מכן
השלושה חזרו לירושלים.

11. למחרת, 21.07.02, בשעות הבוקר המוקדמות, "אבו סעד" וסאם עבאסי נסעו למקום שבו
הונח מטען החבלה הנייל. בסמוך לשעה 07:30, "אבו סעד" הפעיל את מטען החבלה הנייל
בכוונה לגרום למותם של אנשים רבים ככל האפשר, לאחר שוסאם עבאסי דיווח לו
באמצעות מכשיר טלפון סלולרי כי רכבת מגיעה למקום שבו הונח מטען החבלה.

12. מטען החבלה הנייל התפוצץ. כתוצאה מפיצוץ מטען החבלה נפצע אדם אחד. כמו כן, נגרם
נזק לקטר הרכבת ולמסילות הברזל.

<u>פרט שמונים ושבעה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנייל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנייל, בחודש יולי 2002, ברמאללה או בסמוך לכך, נפגש עם חדר עכברים חדר
שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאאס.

2. "צלאח 2" מסר לנאשב כי אברהים גימיל עgעיאני חאמד, המכונה "צלאח 1" או "ישויח",
מפקד הזרוע הצבאית של ארגון החמאס באיוור רמאללה, מבקש מהנאשם לייצר מטען
חבלה המוסתר בתוך תיק וואת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים
רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וואת על מנת שישתמשו בו
לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר הורכב ממיכל שמנו גדול מלא
בחומר נפץ, אשר הוסתר בתוך/תיק שחור קשוח מבד (דומה לתיק ייגייינס בונדיי). כמו כן,
הנאשם פיילא את תתיק הנייל באונים לצורך הגברת ועוצמת הפגיעה של המטען, על-פי
בקשתו של "צלאח 2", הנאשם הרכיב למטען החבלה הנייל מנגנון הפעלה אלחוטי, כך
שמטען החבלה היה מפעיל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנייל וכן שלושה מיכלי שמפו נוספים, מלאים בחומר נפץ,
לידי "צלאח 2".

5. "צלאח 2" העביר את מטען החבלה הנייל לידי אברהים גימיל עgעיאני חאמד, המכונה
"צלאח 1" או "ישויח", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

6. אברהים חאמד פנה אל נחמד חסן אחמד ערמאן [מכונה "אבו מועאזי) וניקש לאתר
מקום ביישולים שבו ניתן לבצע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל
האפשר. חאמד ערמאן פנה אל נאאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעד".
וביקש מהאחרון לאתר מקום מתאים לביצוע פיגוע תופת.

7. לאחר מספר ימים, "אבו סעד" מסר לנחמד עומאן כי איתר מקום מתאים לביצוע פיגוע
הסוטו והוא האוניברסיטה העברית בירושלים, קמפוס הר-הצופים. מחמד ערמאן דיווח
אודות המקום שאותר לאברהים חאמד.

P 7: 57

8. לצורך ביצוע פיגוע התופת המתוכנן, אברהים חאמד מסר למחדמ ערמאן את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל. מחמד ערמאן הוסיף אל שטען החבלה האשור את שלושת בקבוקי שמפו, חמלאים נתוכו נפץ, אותם קיבל יצבּאח 2" מהנאשם.

9. לאחר מכן, מחמד ערמאן נסע ביחד עם ולית עטעיה ע.נאהדי אנגאס לבית איכסא במטורה להעביר את מטען החבלה הג"ל ליאבו סיד" על מנת שאהרון ביחד עם חבריו יבצע באמצעותו את פיגוע התופת המתוכנן.

10. בבית איכסא מחמד ערמאן וולית אנגאס נפגש עם יאבו סעד". השניים מסרו לידי יאבו סעד" את מטען החבלה הג"ל יחד עם שני מכשירי טלפון סלולריים, כאשר מבשיר אחד היה מחובר למטען החבלה ושימש כמנגנון הפעלה.

11. ביום 28.07.02, יאבו סעד", ביחד עם מחמד אסחאק עודה, העבירו את מטען החבלה הג"ל לירושלים. יאבו סעד" ונחמד עודה הכניסו את נטען החבלה הג"ל אל תוך קמפוס הר-הצופים של האוניברסיטה העברית בירושליים. מחמד עודה הכיר היטב את המקום מכיוון שעבד שם בעבר ראף עשה שימוש בכרטיס עובד, אשר עדיין נשאר ברשותו, כדי להיכנס אל תוך הקמפוס האמור. מחמד עודה הניח את מטען החבלה הג"ל בתוך הקפטריה הנמצאת בבניין ע"ש פרנק סינטרה בקמפוס הג"ל. לאחר מכן, יאבו סעד" ומחמד עודה ניסו להפעיל את מטען החבלה הג"ל באמצעות מכשיר טלפון סלולרי, אך מטען החבלה לא התפוצץ עקב תקלה שבו. לאחר מכן, מחמד עודה חזר אל המקום שבו הניח את מטען החבלה הג"ל, אסף את מטען החבלה וביחד עם יאבו סעד" נסע לבית איכסא.

12. לאחר מכן, ביום 29.07.02, מחמד ערמאן וולית אנגאס נפגשו שוב עם יאבו סעד". יאבו סעד" החזיר למחמד ערמאן את מטען החבלה הג"ל. יאבו סעד" מסר כי הוא וחבריו הניחו את מטען החבלה הג"ל באוניברסיטה העברית בירושלים, קמפוס הר-הצופים, בכוונה לפוצצו ולגרום למותם של אנשים רבים ככל האפשר, אך מטען החבלה הג"ל לא התפוצץ. מחמד ערמאן וולית אנגאס העבירו את מטען החבלה הג"ל לחרבנתא בני חאורס.

13. מחמד ערמאן תיקן את מטען החבלה הג"ל, לאחר שבדק אותו וגילה כי יש בעיה עם חוטי החשמל.

14. יום למחרת, ביום 30.07.02, מחמד ערמאן נפגש שוב עם ולית אנגאס וביחד עם האחרון העביר את מטען החבלה הג"ל לבית איכסא.

15. בבית איכסא, ממחמד ערמאן וולית אנגאס נפגשו עם יאבו סעד". מחמר ערמאן מסר לירי יאבו סעד" את מטען החבלה הג"ל.

16. באותו הלילה, יאבו סעד" ומחמד אסחאק עודה לקחו את מטען החבלה הג"ל לירושלים והסתירו אותו בין העצים בגן הבוטני בקמפוס הר-הצופים של האוניברסיטה העברית.

17. למחרת, ביום 31.07.02, יאבו סעד" ומחמד עודה נסעו שוב לקמפוס הר-הצופים של האוניברסיטה העברית. בעת ש"אבו סעד" המתין בחוץ, מחמד עודה נכנס אל תוך הקמפוס, אסף את מטען החבלה הג"ל והניחו בקפטריה הנמצאת בבניין ע"ש פרנק סינטרה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים. לאחר שמחמד עודה, בסמוך לשעה 13:30, עזב את שטח הקמפוס והצטרף אל יאבו סעד", יאבו סעד" הפעיל את מטען החבלה הג"ל, אשר יוצר על-ידי הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. יאבו סעד" ומחמד עודה בחרו לבצע את הפיגוע דווקא בסמוך לשעה 13:00 מאחר שלפי המידע שאסף מחמד עודה בקפיטריה הג"ל בשעה האמורה יש ריכוז גדול של בני אדם.

18. במעשיו המתוארים לעיל, הנאשם הג"ל גרם בכוונה למותם של דפנה שפורך ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה באוניברסיטה העברית, כפי שתואר לעיל.

<u>פרט שמונים ושמונה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של מרלה אן בנט ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה. ·

<u>פרט שמונים ותשעה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של דינה קרטר ז"ל, אשר נהרגה
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של בנימין תומאס בלוטשטיין
ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים
ושבעה.

<u>פרט תשעים ואחד:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של רויטל בראשי ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושניים:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור ורן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, בנועד האמור, בטקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של דוד (דיאגו) לדונסקי ז"ל,
אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושלושה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של לינא שפירא ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וארבעה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של גיניס רות קולטר ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וחמישה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של דוד גריץ ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

35

ת.נ 30/02/02

<u>פרט תשעים ושישה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ה-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור ותן מחוצה לו, ביום 31.07.02 או בסמוך הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישוש השמונים ושבעה, במעשיו ובמחדריו כמתוארים בפרט האישוש השמונים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל האמשר. כתוצאה מפיגוץ מטען החבלה שהופעל כפי שתואר בפרט האישוש השישמונים ושבעה, נפצעו 81 בני אדם.

<u>פרט השעים ושבעה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53: לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור ותן מחוצה לו. ביום 31.07.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט חשמונים ושבעה, בגימשיו חמכוהאירם בפרט האישום השמונים ושבעה, ערם נזק כבד לבניין עיש פרנק סינטורה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישוש השמונים ושבעה.

<u>פרט תשעים ושמונה:</u> (פ.א. 9638/02 ראשל"צ)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, ביון באיזור ובין מחוצה לו, ביום 07.08.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש אוגוסט 2002, ברמאללה או בסמוך לכך, נפגש עם סיד עימכרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון המאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל עמראני האמד, המכונה "צלאח 1" או "ישיחי", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר שני מטעני חבלה חזוושתרים בתוך חקו-פסאות של ביטקרוויטס - אחד המופעל באמצעות מכשיר טלפון סלולרי, והשני המופעל שלט רחוק, זאת לצורך ביצוע פיגוי תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטעני החבלה וזאת על מנת שישתמשו בהם לצורך ביצוע פינוז תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר שני מטעני חבלה, אשר הוסתרו בתוך קופסאות של ביסקוויטס. לאחר ממטעני החבלה הנאשם חיבר מנגנון הפעלה המורכב ממיכשיר טלפון סלולרי, ואילו לבטען החבלה השני הנאשם הרכיב מנגנון הפעלה כך שהמטען יופעל באמצעות שלט רחוק.

4. הנאשם מסר את מטעני החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטעני החבלה הנ"ל לידי אברהים ג'מיל עמראני חאמד, המכונה "צלאח 1" או "ישיחי", ראש חזרוע הצבאית של ארגון החמאס באיזור רמאללה.

ת.פ. 282 גב

P 7: 61

5.  בראשית חודש אוגוסט 2002, מחמד חסן אחמד ערמאן (מכונה "אבו מועאדי") נפגש עם
    ואאל מחמוד מחמד-יעלי קאסם, המכונה "אבו סעדי", אשר ביקש לקבל מטען חבלה. "אבו
    סעדי" הסביר כי בכוונתו להניח את מטען החבלה מתחת לרכב ולמוצאו בכוונה לגרום
    לניזותם של אזרחים ישראליים רבים ככל האפשר.

6.  מחמד עירמאן פנה אל אברהים חאמד וביקש לקבל מטען חבלה לצורך ביצוע הפיגוע
    המתוכנן. לאחר מספר ימים. ברמאללה או בסמוך לכך, אברהים חאמד העביר לידי מחמד
    ערמאן מטען חבלה, אותו ייצר הנאשם. כאמור לעיל, אשר היה מופעל באמצעות מכשיר
    טלפון סלולרי.

7.  באותו היום, 06.08.02, מחמד ערמאן, ביחד עם וליד עימיזו ע/האדי אנג'אס נסעו לבית
    איכסא כאשר ברשותם מטען החבלה הנ"ל. בבית איכסא, השניים נפגשו עם "אבו סעדי"
    והעבירו לידיו את מטען החבלה הנ"ל.

8.  ביום למחרת, 07.08.02, "אבו סעדי" וטסאם סעיד עבאסי הצמידו את מטען החבלה הנ"ל
    לכוכלית דלק, מ.ר. 338830, שחנתה בשכונת פסגת זאב בירושלים או בסמוך לכך. לאחר
    מספר שעות, בסמוך לשעה 13:50, "אבו סעדי" הפעיל את מטען החבלה הנ"ל באמצעות
    מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המוקש
    שהונח במיכלית הדלק התפוצח התפוצצ, וזאת כאשר מיכלית הדלק היתה במוסך ברחוב
    שטוטקין 23 בראשון לציון.

9.  כתוצאה מפיצוץ מטען החבלה הנ"ל נגרם נזק למיכלית הדלק ורק בנס איש לא נפגע.

## פרט תשעים ותשעה: (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחד, דהיינו:

1.  הנאשם הנ"ל, בתחילת חודש ספטמבר 2002 או בסמוך לכך, ברמאללה או בסמוך לכך,
    נפגש עם שיך עבכרים חדר שיך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2.  "צלאח 2" ביקש מהנאשם לייצר שתי חגורות נפץ וזאת לצורך ביצוע פיגוע התאבדות
    בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את חגורות
    הנפץ וזאת על מנת שישתמשו בהן לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של
    אנשים רבים ככל האפשר. בעקבות הבקשה האמורה, הנאשם ייצר שתי חגורות נפץ.

3.  הנאשם מסר את חגורות הנפץ הנ"ל לידי "צלאח 2", אשר דאג להעבירן באמצעות חסנין
    רומאנה אל מחמוד חמאד כחמוד שריחת, פעיל צבאי בארגון החמאס, וזאת לצורך
    הוצאה לפועל של פיגוע התאבדות המתוכנן.

4.  בסוף חודש יולי 2002, חסנין רומאנה התקשר אל מחמוד שריחת וביקש כי להא פגישה
    בין אחד נעים צובחי רדאד, המכונה "שומרי", לבין אדם המכונה "אבו תאלד". חסנין
    רומאנה הסביר כי הפגישה האמורה נועדה לצורך החוצאה לפועל של פיגוע התאבדות,
    אשר אותו היה אמור לבצע "שומרי" הנ"ל. מחמוד שריחת התקשר אל "יעקוב" ומסר
    לאחרון איפה וכיצד עליו לפגוש את אבו תאלד. כעבור יומיים, "שומר" הודיע כי אבו תאלד
    לא הגיע לפגישה שנקבעה.

5.  מיד לאחר העיתוח הנ"ל, מחמוד שריחת חזר לרמאללה ונפגש עם חסנין רומאנה וריווח
    לאחרון כי הפגישה המתוכננת לא יצאה אל הפועל. בתום הפגישה הנ"ל, מחמוד שריחת
    התקשר אל אשרף זעייר, המכונה "אבו ש רף".

P 7: 62

6. לאחר מיספר ימים, מחמדו שריתח נפגש שוב עם חסנין רומאנה. אשר ביקש כי כתאם פגישה נוספת בין "עומר" לאבו ואלד.

7. כעבור כשבוע ימים, חסנין רומאנה ביקש כי במקרה שאבו ואלד לא יגיע לפגישה האמורה, מחמוד שריתח ייפח אחריות על "עומר" ועל המחבל המתאבד השני, ראפת רדאד.

8. לאחר השיחה הנ"ל, מחמדו שריתח עקב אחרי "עומר" וראה כי "עומר" מנותן במקום המפגש וכי אבו ואלד לא הגיע. בעבור רבע שעה של הבנתה מחמוד שריתח ניגש אל "עומר" והודיע לאחרון כי מרגע זה הנאשם יהיה אחראי ע ליו.

9. "עומר" מסר כי יש לו בן דוד, ראפת מוקדי, אשר גם הוא רוצה לבצע פיגוע התאבדות. "עומר" ביקש לבצע פיגוע התאבדות ביחד עם בן-דודו ה נ"ל.

10. לאחר מיספר ימים, מחמוד שריתח נפגש ברמאללה עם "אבו שריף" והורה לאחרון למצוא מקום בתוך מדינת ישראל המתאים לביצוע פיגוע התאבדות. מחמוד שריתח הבהיר ל"אבו שריף" כי יהיה עליו להוביל למקום שאותו יאתר שני מחבלים מתאבדים על מנת שיבצעו שם פיגוע תופח בכוונה לגרום למותם של אנשים רבים ככל האפשר. "אבו שריף" הסכים, אך טען כי ייקח זמן לאתר מקום ניתן לבצע פיגוע התאבדות כפול. במהלך השיחה הנ"ל, "אבו שריף" דיווח כי שכר דירה בדחיית אל-ב ריד.

11. "עומר" מסר למחמוד שריתח כי נודע לו מראפת מוקדי על אולם שמחות גדול "ייזיט הול" הנמצא באזור-יהודה. "עומר" הציע כי הוא וראפת מוקדי יצצעו את פיגוע ההתאבדות באולם השמחות הנ"ל, כאשר תחילה שניהם יירו בכלי נשק לעבר האנשים שיהיו בתוך אולם השמחות ולאחר מכן יפוצצו את חגורות הנפץ שיישאו על גופם, וכל זאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמוד שריתח הסכים לרעיון הנ"ל ושלח את "אבו שריף" כבדוק את אולם השמחות הנ"ל. "אבו שריף" נסע לאולם השמחות הנ"ל ודיווח כי לא ניתן לבצע שם את הפיגוע המתוכנן בגלל מספר גדול של מאבטחים שנמצאים במקום.

12. מחמוד שריתח דיווח לחסנין רומאנה לגבי פעילותו שבוצעה לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. מחמוד שריתח ביקש מחסנין רומאנה לקבל שתי חגורות נפץ ושני כלי נשק קטנים, כל זאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. חסנין רומאנה הבטיח לדאות לחגורות הנפץ ולכלי הנשק.

13. לאחר מספר ימים מחמוד שריתח וי"אבו שריף" קיבלו שתי חגורות הנפץ, אותן יצר ה'נאשם כאמור לעיל, וכן שני תת-מקלעים "עוזי" עם מחסניות מלאות בכדו רים.

14. לאחר מכן, מחמוד שריתח נפגש עם "עומר" ומסר לאחרון כי חגורות הנפץ מוכנות והוא יכול לצאת לביצוע פיגוע ההתאבדות המתוכנן ביחד עם בן-דודו, ראפת מוקדי. "עומר" השיב כי הוא עצמו מוכן לבצע את פיגוע ההתאבדות בתקדם האפשרי, אך ראפת מוקדי לא מוכן לבצע את פיגוע ההתאבדות המתוכנן, מכיוון שאחותו שוהה בארה"ב, והוא מבקש להמתין לשובה ל איזור.

15. כתמוד שריתח כנה שוב ל"אבו שריף" וביקש לפעול דחוף לאיתור מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן. לאחר מיספר ימים, "אבו שריף" דיווח כי איתר מקום בתל-אביב שהוא מתאים לביצוע פיגוע ההתאבדות המתוכ נן.

16. ביום 17.09.02 או בסמוך לכך, מחמוד שריתח נפש בדירת המסתור בא-ראם עם "עומר" והעביר לאחרון כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריתח נשאר בדירה הנ"ל, ביחד עם "עומר" עד ליום 18.09.02.

17. ביום 19.09.02, "עומר" יצא מרמאללה לביצוע פיגוע ההתאבדות הנזותכנן כשהוא נושא על גופו את אחת מחגורות הנפץ, אשר יצר הנאשם כאמור ל עיל.

38                                                                259.02 דף

18. "אבו שרף" הסיע את "עומר" ברכבו לתל-אביב. בהגיעם לתל-אביב, "אבו שרף" הנחה את "עומר" להתפוצץ שבו נמצאים אנשים רבים וזאת על מנת שהפיצוץ יגרום למותם של אמיזים רבים ככל היו הן.

19. בסמוך לשעה 12:55, ביום 19.09.02, או במועד הסמוך לכך, "עומר" עלה לאוטובוס בקו 4 של "דן", מ.ר. 9105201, ברחוב אלנבי 94 בתל-אביב. מיד כשהאוטובוס,הנ"ל התחיל בנסיעה, "עומר" הפעיל את חגורת הנפץ, אותה יצר התאשם, שנשא על גופו וגרם לפיצוץ עז, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המחבל המתאבד, איאד נעים צובחי רדיאד המסכונה "עומר", נהרג כתוצאה מפיצוץ מטען החבלה ה נ"ל.

20. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו שישה בני אדם, כפי שיתואר בפרטי האישום ה באים.

21. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

22. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לאוטובוס הנ"ל, לכלי רכב שהיו בסמוך למקום הפיצוץ, וכן להניזות הס מובות.

23. במעשיו המתוארים לעיל, הגאשם גרם בכוונה למותו של יוסי ממיסטלוב ז"ל, בן 39 במותו, אשר נהרג כתוצאה מהתפוצצות מטען החבלה כאמור לעיל.

**פרט מאה: (פ.א. 19284/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ה-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של עופר זינגר ז"ל, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה ואחד: (פ.א. 19284/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ה-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של רוזנה סיסו ז"ל, בת 63 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

39

ת ז: 55-950

<u>פרט מאה ושניים:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן כחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו חתמתאריים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של יפה שם-טוב ז"ל, בת 49 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה ושלושה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן כחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתאריים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של סלומון הוניג ז"ל, בן 79 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה וארבעה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן כחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של יונתן גיסנר ז"ל, בן 19 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה וחמישה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן כחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען החבלה באוטובוס. מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה נפצעו כ-84 בני אדם שהיו באוטובוס הנ"ל ובסמוך אליו בעת הפיצוץ.

<div align="center">49</div>

ת.פ. 252/03

<u>פרט מאה ושישה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 333 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו בכוונה ושלא כדין, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשיעים ותשעה, גרם במזיד ושלא כדין נזק
כבד לאוטובוס. מ.ר. 9105201, שנסע בקו 4 של "דן" ברחוב אלנבי בתל-אביב וכן גרם נזק לכלי
רכב נוספים ולחנויות ובתי עסק שהיו בקרבת מקום הפיגוע המתואר בפרט האישום התשיעים
ותשעה, ואשר נגרמו כתוצאה מפיצוץ מטען החבלה, אותו ייצר הנאשם.

<u>פרט מאה ושבעה:</u> (פ.א. 21011/02 ירקון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 11.10 02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, כתחילה חודש סבטמבר 2002, ברמאללה או בסמוך לכך, ייצר שתי חגורות
נפץ לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר,
וזאת כפי שהואר בפרט האישום התשיעים ותשעה.

2. הנאשם העביר את שתי חגורות הנפץ לידי סיד עקרים חדר שייך-קאסם, המכונה "צלאח
ד"ן, מייל צבאי בארגון החמאס, אשר דאג להעבירן לפחמוד חמאד פחאמד שריתח, כפי
שתואר בפרט האישום התשיעים ותשעה.

3. לאחר ביצוע הפיגוע המתואר בפרט האישום התשיעים ותשעה, פחמוד שריתח החזיט
להוציא לפועל פיגוע התאבדות נוסף באמצעות חגורת הנפץ, אשר אותה ייצר למטרה זו
הנאשם.

4. לצורך קידום תכניתו הנ"ל, פחמוד שריתח גייס את ראפת מוקדי לביצוע פיגוע
ההתאבדות המתוכנן.

5. פחמוד שריתח נפגע גם עם אשרף מוניר זעייר, המכונה "באו שריף", וחזור לאחרון,
לאתר מקום מתאים לביצוע פיגוע התאבדות המתוכנן. לאחר מספר ימים, "אבו שריף"
דיווח כי איתר שני מקומות בתל-אביב המתאימים לביצוע פיגוע ההתאבדות היותנו נו.

6. ביום 11.10.02 "אבו שריף" הביא את ראפת מוקדי מכפר ערלאבה לדירת המסתור
בא-ראם. פחמוד שריתח הסביר לראפת מוקדי כיצד לובשים וכיצד מפעילים את חגורת
הנפץ. פחמוד שריתח הלביש על גופו של ראפת מוקדי את חגורת הנפץ, אשר אותה ייצר
הנאשם.

7. "אבו שריף" הסיע את ראפת מוקדי לתל-אביב על מנת שהאחרון יבצע שם את פיגוע
ההתאבדות המתוכנן.

8. בסמוך לשעה 20:15, ביום 11.10.02, "אבו שריף" הוריד את ראפת מוקדי בטיילת החוף
בתל-אביב והנחה את האחרון לפוצץ את חגורת הנפץ, שהוא נשא על גופו, במסעדה שיש
בה אנשים רבים.

9. ראפת מוקדי ניסה להיכנס למסעדה "יוטבחה" הנמצאת ברחוב הרברט סמואל (טיילת
תל-אביב), אך המאבטח שהיה במקום הבחין בו, חשד כי מדובר במחבל מתאבד ומנע את

41                                                                    ה.פ 2654/1

כניסתו פנימה. ראבת מוקדי ניסה להימלט מהמקום, אך נהכס לאיחר מודף וכסיוע של
נאבטחים נוספים שהגיעו למקום.

10. במיעשיו המתוארים לעיל, הנאשם הנ"ל ניסה לגרום בכוונה למותם של אנשים רבים ככל
האפשר.

## פרט מאה ושמונה:

**מהות העבירה:** אינוגים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2003 או בסמוך לכך, התאמן, אימן או
אומן אימון צבאי בנשק או במילאכת הרגילים, תנועות או מערכות פעולה צנאיים, דהיינו :
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר אימון צבאי לאום, הושב שכם,
אשר נשלח אליו על-ידי אברהים גימול עמיאני חאמד, המכונה "צלאח ג'" או "יהשיחי", ראש
"גדודי עז א-דין אל קסאם" באיזור רמאללה.
במהלך האימון האמור הנאשם לימד את האדם הנ"ל לייצר מטעני חבלה, מעגלים חשמליים
לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק
ומכשיר טלפון סלולרי.
במהלך האימון הצבאי הנ"ל, הנאשם והאדם הנ"ל היו רעולי פנים.

## פרט מאה ותשעה:

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילה שנת 2003 או בסמוך לכך, עשה עבודה כל שהיא
או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו :
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר לידי אברהים גימול עמיאני
חאמד, המכונה "צלאח ג'" או "יהשיחי", ראש "גדודי עז א-דין אל קסאם", הודיע הצבאות של
ארגון החמאס, באיזור רמאללה, דיסקטים למחשב ועליהם הוראות לייצור חומרי הנפץ ומטעני
החבלה.
אברהים חאמד ביקש מהנאשם לקבל את הדיסקטים הנ"ל לצורך העברתם לפעילי הארגון גיהאד
אסלאמי פלסטיני, אשר ביקשו ללמוד לייצר חומרי נפץ ומטעני חבלה.

עדי התביעה:

1. רס"ר יצחק יעזובוף, מ.א. 1008353, לחיי"ק יהודה. (גובה אמרות הנאשם מיום 12.03.03,
13.03.03, 30.03.03, 15.05.03 ומיום 22.05.03 ומגיש תמונות שהוצגו בפני הנאשם ביום
30.03.03 + ציור בכתב-ידו של הנאשם)
2. רס"ר משה נוי, מ.א. 953117, לחיי"ק יהודה. (גובה אמרת הנאשם מיום 12.05.03)
3. פרוטוקול דיון הארכת המעצר של הנאשם מיום 12.05.03.
4. אשרף מונ"ר ז'יייר, ת.ז. 035660679. (עצור)
5. ראפת רשיד עבדאללה מוקדי, ת.ז. 907945026. (עצור)
6. מחמוד חטאד מחמוד שריונת, ת.ז. 900715750. (עצור) (ת.ת. 976/02)
7. מחמד סאחר מחמוד ברגותי, ת.ז. 859121287. (עצור) (ת.ת. 241/03)
8. אכרם אאלה אחמד א-חסין (ברנוותי, ת.ז. 988965372. (עצור) (ת.ת. 210/03)
9. וסאם סעיד מימס עב'אסי, ת.ז. 033714403. (אסיר)
10. ואאל נתמור מחמד-עלי קאסם, ת.ז. 028192755. (אסיר)
11. מחמד אסתאחק עודה, ת.ז. 026291302. (אסיר)
12. עלאא א-דין מחמוד עבאסי, ת.ז. 029194818. (אסיר)
13. וליד יעונ'ו יעהאדי אגנאס, ת.ז. 906448105. (עצור) (ת.ת. 889/02)
14. מוחמד חסן אחמד ערמאן, ת.ז. 901056259. (עצור) (ת.ת. 888/02)
15. מחמד ואאל מחמד דיע'לאס, ת.ז. 905167375. (אסיר) (ת.ת. 846/01)
16. אחלאם ושראף אחמד תמימי, דרכון ירדני G052933. (עצורה) (ת.ת. 815/01)
17. בלאל יעקוב אחמד עתמיאן) ברגותי, ת.ז. 902826262. (אסיר) (ת.ת. 344/02)
18. אחמד נאבל מוצטפא ברנותי, ת.ז. 994466860. (עצור) (ת.ת. 444/02)
19. נוראד חליל עתמאק עמירה, ת.ז. 980743066. (עצור) (ת.ת. 946/02)

רשימת העדים הטכניים שותיקי הפ.א. הבאים ויימסר על-ידי התביעה, בנידת הצורך, במהלך
המשפט:

1. 6554/01 צ יון
2. 6891/01 מ תימ י-ם
3. 10263/01 ציון
4. 1512/02 מוריה
5. 5601/02 ראש לי'יצ
6. 2881/02 גליכות
7. 3975/02 לוד
8. 9913/02 ר חובות
9. 1197/02 שלם
10. 9638/02 ראשלי'יצ
11. 19284/02 ירקון
12. 21011/02 ירקון

מיכאל קודמלקי,   סרן
תובע   צבאי

תאריך: 29.05.2003
סימוכין: 38 0-03 0:

43