

PLAINTIFF'S
EXHIBIT
289

**Israel Defense Forces**

In the Military Court
Judea
Before Panel

Court File: *2268*/04
Prosecution File: 1338/04
Detailed Incident Files: 1667/04 Hebron
9891/04 Special Duties Department Jerusalem
178694/04 Moriah

In the case between:

**The Military Prosecutor**

**- The Prosecution -**

**– v. –**

[Stamp] This indictment received ________
On *May 20, 2004*
Registered in the journal under File _______
Court Officer *Irit Goren*

**Mohamed Issa Mohamed Ma'ali**
(Under arrest since March 29, 2004)
Identity No. 907377113, born October 9, 1977, of Bethlehem

**- The Defendant -**

**INDICTMENT**

The above named Defendant is hereby accused of carrying out the following offenses:

**First Count:**

**Nature of the Offense:** Throwing a burning object, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945; and Section 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within the Region, at the beginning of October 2000 or thereabouts, threw a burning object with the intention of causing the death or wounding of another person, specifically:

[Stamp] P 2: 266

At the above mentioned time, the above named Defendant and his accomplices, Mahmoud Moughrabi, Jassan Hassan Abdel Juad, and others, threw Molotov cocktails at Israel Defense Forces troops.

**Second Count:**

**Nature of the Offense:** Throwing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945; and Section 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within the Region, during April 2002 or thereabouts, was, together with others, involved in the throwing of a bomb with the intention of causing the death or wounding of another person, specifically:

At the above mentioned time, on a number of different occasions, the above named Defendant and his accomplices, threw pipe bombs at Israel Defense Forces troops passing through Bethlehem.

C:\Documents and Settings\s5269793\Desktop\terrorist attack 14+19\1338-04.doc

[Stamp] P 2: 266 [continued]

**Third Count:**

**Nature of the Offense:** Placing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945; and Section 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within the Region, during April 2004 or thereabouts, was involved in the placing of a bomb with the intention of causing the death or wounding of another person, specifically:

At the above mentioned time, the above named Defendant and his accomplices Hamza Baghwara, Fares al-Hassanat and others, placed an explosive device weighing 12 kilograms near the Darwish gas station, in a location where military vehicles pass.

**Fourth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

1. At the beginning of January 2004, or thereabouts, Abdul Rahman (Zaher) Yousef Abdul Rahman Maqdad (hereinafter: "**Abdul Rahman Maqdad**"), the military operative Ahmed Moughrabi, and Ali Mohamed Hamed Abu Haliel (hereinafter: "**Ali Abu Haliel**") planned to carry out terrorist attacks against Israeli targets, including suicide terrorist attacks.

2. At around that time, the military operative Hilmi Abdel Karim Mohamed Hamash (hereinafter: "**Hilmi Hamash**") approached Ali Jaara and suggested that he meet with a military operative who would send him to carry out a suicide terrorist attack. Ali Jaara (hereinafter: "**the suicide terrorist**") expressed his willingness to do so.

   Accordingly, Hilmi Hamash had the military operative Ahmed Salah Ahmed Salah (known as: Ahmed Abu-Ghadeb) (hereinafter: "**Ahmed Abu-Ghadeb**") meet with the suicide terrorist at a meeting, during which Ahmed Abu-Ghadeb checked with the suicide terrorist the extent of his willingness to carry out a suicide terrorist attack.

[Stamp] P 2: 267

During the meeting, the suicide terrorist expressed willingness to carry out the terrorist attack. Accordingly, Ahmed Abu-Ghadeb asked the suicide terrorist to prepare himself to carry out a suicide terrorist attack.

3. At around that time, Abdul Rahman Maqdad began preparing explosives for use in carrying out a suicide terrorist attack, using materials passed to him by the military operative Ali Abu Haliel. In addition, Ahmed Abu-Ghadeb brought Abdul Rahman Maqdad up to date on locating a suicide terrorist prepared to carry out the suicide terrorist attack, and asked him to urgently prepare the explosive bag, so that it could be used for carrying out the suicide terrorist attack.

[Stamp] P 2: 267 [continued]

4. Abdul Rahman Maqdad asked Ahmed Abu-Ghadeb to purchase materials for him for the production of an explosive bag (including, *inter alia*: a bag, batteries, switch, etc.). Ahmed Abu-Ghadeb consented and, together with Hilmi Hamash, purchased all that had been requested. In addition, Ahmed Abu-Ghadeb and Hilmi Hamash attempted to find a video camera, so as to film the suicide terrorist prior to execution of the terrorist attack, but they were unsuccessful – and so they decided to send the suicide terrorist to carry out the terrorist attack without filming him on video.

5. At about that time, Ahmed Abu-Ghadeb approached the **above named Defendant** and asked him to transport the suicide terrorist, armed with an explosive belt, to carry out a suicide terrorist attack within the territory of the State of Israel. The Defendant expressed his willingness to do so.

   Accordingly, Ahmed Abu-Ghadeb introduced the Defendant to the suicide terrorist.

6. In parallel with that which has been stated above, Abdul Rahman Maqdad produced the explosive bag, with which the suicide terrorist attack would be carried out; he informed Ahmed Abu-Ghadeb of this, and asked that he come to take the explosive bag.

7. Some minutes later, Ahmed Abu-Ghadeb, together with the suicide terrorist and the Defendant, came to the home of Abdul Rahman Maqdad; the Defendant waited outside, while the suicide terrorist and Ahmed Abu-Ghadeb went into Abdul Rahman Maqdad's home. The latter explained to Ahmed Abu-Ghadeb and the suicide terrorist how to set off the explosive bag, and gave them the explosive bag, to be used in the suicide terrorist attack, with the intention of causing the deaths of Israeli citizens.

8. Soon after that, the Defendant, the suicide terrorist, and Ahmed Abu-Ghadeb left in the direction of the university in Bethlehem; there Ahmed Abu-Ghadeb neutralized the safety mechanism of the explosive device, so as to prepare it for operation. Subsequently, Ahmed Abu-Ghadeb left the Defendant with the suicide terrorist.

9. After Ahmed Abu-Ghadeb left them, at around 6:30 a.m., the Defendant took the suicide terrorist to Jerusalem via Walaja village, until they approached the Malha Mall in Jerusalem, where the Defendant took his leave from the suicide terrorist and returned to the Region.

[Stamp] P 2: 268

10. Soon thereafter, the suicide terrorist boarded an Egged Number 19 bus traveling in the direction of Paris Square; when the bus reached the corner of Arlosoroff and Gaza Streets, at around 8:45 a.m., the suicide terrorist set off the explosive bag that he held, with the intention of causing the deaths of a large number of people. As a result, the explosive bag blew up within the bus (hereinafter: "**the suicide terrorist attack**").

11. As a result of the suicide terrorist attack, the death of **the late Avraham Balhasan** was caused.

[Stamp] P 2: 268 [continued]

**Fifth Count**: **(Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Hannah Bonder** was caused.

**Sixth Count**: **(Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Anat Darom** was caused.

**Seventh Count**: **(Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 2: 269

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Yechezkel Goldberg** was caused.

[Stamp] P 2: 269 [continued]

**Eighth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Vladi Zadik Menbere** was caused.

**Ninth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Viorel Octavian Florescu** was caused.

**Tenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 2: 270

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Rose Boneh** was caused.

[Stamp] P 2: 270 [continued]

**Eleventh Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Dana Itach** was caused.

**Twelfth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Roman Hondiashvili** was caused.

**Thirteenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 2: 271

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Eli Tzipora** was caused.

[Stamp] P 2: 271 [continued]

**Fourteenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Natalia Gamril** was caused.

**Fifteenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Attempting to intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 19-20, 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in an attempt to intentionally cause the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – over 50 civilians were wounded with levels of injuries ranging from serious to light; in addition, the suicide terrorist died.

[Stamp] P 2: 272

**Sixteenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

1. Some days prior to the above date, Abdul Rahman Maqdad and the military operative Izz A-Din Ali Alian planned to carry out a suicide terrorist attack, with the aim of causing the deaths of Israeli citizens.

   Izz A-Din Ali Alian informed Abdul Rahman Maqdad that he had found a person named Mohamed Za'ul (hereinafter: "**the suicide terrorist**") who was prepared to carry out a suicide terrorist attack.

[Stamp] P 2: 272 [continued]

2. On February 17, 2004, or thereabouts, Izz A-Din Alian met with the suicide terrorist in the village of Husan; during the meeting the suicide terrorist agreed to carry out the planned suicide terrorist attack. At the end of the meeting, Izz A-Din Alian arranged with the suicide terrorist to meet near the Church of the Nativity in Bethlehem on February 21, 2004, at 4:00 p.m.

3. Izz A-Din Alian updated Abdul Rahman Maqdad as to the content of the meeting, and of the suicide terrorist's consent to carry out the suicide terrorist attack; accordingly, Abdul Rahman Maqdad made contact with his brother, the military operative Maher Maqdad, who lived in Gaza, informed him of the plan to carry out the suicide terrorist attack, and asked him for the amount of NIS 3,000, so that he could prepare the explosive bag for the suicide terrorist, and to purchase a video camera to film the suicide terrorist (this was in accordance with Maher Maqdad's request to film the suicide terrorist before execution of the suicide terrorist attack).

   Maher Maqdad consented, and transferred to the Arab Bank account in Bethlehem, registered in the name of Abdul Rahman Maqdad, the amount of NIS 3,000 to fund the suicide terrorist attack, as agreed with Abdul Rahman Maqdad.

4. On February 18, 2004, or thereabouts, Abdul Rahman Maqdad went to the Arab Bank in Bethlehem, and withdrew the amount of money transferred to him from Maher Maqdad.

   Abdul Rahman Maqdad purchased, with part of the amount, a video camera and a regular camera, for filming the suicide terrorist. Similarly, he gave an amount of money to Ali Abu Haliel and Ahmed Abu-Ghadeb, so that they could purchase materials for the preparation of the explosive bag for the suicide terrorist attack.

5. Accordingly, Ali Abu Haliel received from military operative Haitham Zakariya Mahmoud al-'Aarj (hereinafter: "**Haitham al-'Aarj**") 4 liters of the chemical hydrogen peroxide, and from the military operative Ahmed Odeh 40 liters of the chemical acetone; Ali Abu Haliel gave to Abdul Rahman Maqdad 12 liters of the chemical hydrogen peroxide and 12 liters of the chemical acetone.

6. On February 20, 2004, Abdul Rahman Maqdad, Ali Abu Haliel and Izz A-Din Alian produced the explosive bag intended for the execution of the suicide terrorist attack.

[Stamp] P 2: 273

7. At around that time, Abdul Rahman Maqdad asked Ahmed Abu-Ghadeb to check with the Defendant whether he was prepared to transport the suicide terrorist to carry out the suicide terrorist attack. Accordingly, Ahmed Abu-Ghadeb met with the Defendant, and asked him to transport another suicide terrorist to carry out a suicide terrorist attack within the territory of the State of Israel. The Defendant consented to do so.

On that same day, during the evening, Ahmed Abu-Ghadeb came to the home of Abdul Rahman Maqdad, having in his possession a poster on which was written "The Ayman Judeh Cell of the al-Aqsa Martyrs Brigades Organization"; Ahmed Abu-Ghadeb gave the poster to Abdul Rahman

[Stamp] P 2: 273 [continued]

Maqdad, so as to serve as a backdrop while filming the suicide terrorist – similarly, he informed Abdul Rahman Maqdad that the Defendant was prepared to transport the suicide terrorist.

8. The next morning, Ahmed Abu-Ghadeb gave Abdul Rahman Maqdad iron nails, so that the latter should glue them to the explosive belt, in order to increase and intensify the injuries when the explosive device was detonated. Abdul Rahman Maqdad received the iron nails, and glued them to the explosive bag.

That same day, at approximately 4:10 p.m., Izz A-Din Alian, accompanied by the suicide terrorist, came to the home of Abdul Rahman Maqdad, to prepare him to set out for the terrorist attack.

In addition, Ahmed Abu-Ghadeb brought Abdul Rahman Maqdad a Kalashnikov rifle and a hand grenade, so that he could film the suicide terrorist holding these weapons.

9. Abdul Rahman Maqdad and Izz A-Din Alian gave the suicide terrorist food and new clothes. After eating the evening meal together with the suicide terrorist, Izz A-Din Alian wrote a testament for the suicide terrorist; Abdul Rahman Maqdad and Izz A-Din Alian filmed the suicide terrorist reading out his testament. When they finished filming the suicide terrorist, Abdul Rahman Maqdad began preparing the explosive bag that would serve in carrying out the suicide terrorist attack. At around 5:50 a.m., the next day, Abdul Rahman finished production of the explosive bag.

10. When he finished making the explosive bag, as stated, on April 22, 2004, Abdul Rahman Maqdad called Ahmed Abu-Ghadeb, informed him that all was ready, and asked him to come and send the suicide terrorist out to execute the suicide terrorist attack.

Accordingly, Ahmed Abu-Ghadeb made contact with the Defendant, and asked him to meet with him. The two met, and together drove in the direction of Abdul Rahman Maqdad's house, where the suicide terrorist was hiding. Ahmed Abu-Ghadeb asked the Defendant to wait near that location, which was in the center of Bethlehem.

11. At approximately 6:00 a.m., Ahmed Abu-Ghadeb came to Abdul Rahman Maqdad's house, took from him the explosive bag, and left together with suicide terrorist in the direction of central Bethlehem; there he introduced the suicide terrorist to the Defendant. From there

[Stamp] P 2: 274

the suicide terrorist, together with the Defendant, left in the direction of Jerusalem, passing through the village of Walaja, so as to carry out the planned suicide terrorist attack.

12. The Defendant took the suicide terrorist to a place located near the Malha Mall in Jerusalem; there he took his leave from him, and returned to the Region.

13. Soon thereafter, the suicide terrorist boarded an Egged Number 14 bus traveling from Denya in the direction of Liberty Bell Park. When the bus stopped at a traffic light, the suicide terrorist set off the explosive bag, with the intention of causing the deaths of a large number of people. As a result, the explosive bag blew up within the bus (hereinafter: "**the suicide terrorist attack**").

[Stamp] P 2: 274 [continued]

14. As a result of the suicide terrorist attack, the death of **the late Ms. Yaffa Ben Shimol** was caused.

**Seventeenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Yuval Ozana** was caused.

**Eighteenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Rahamim Doga** was caused.

[Stamp] P 2: 275

**Nineteenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Yehuda Haim** was caused.

[Stamp] P 2: 275 [continued]

**Twentieth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Ilan Avisidris** was caused.

**Twenty-First Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Benaya Yehonatan Zuckerman** was caused.

**Twenty-Second Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 2: 276

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Lior Azulay** was caused.

[Stamp] P 2: 276 [continued]

**Twenty-Third Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Netanel Havshush** was caused.

**Twenty-Fourth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 19-20, 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in attempting to intentionally cause the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – over 50 civilians were wounded with injuries ranging from severe to light; in addition, the suicide terrorist died.

Naji Amar, Captain
Military Prosecutor
[Signature]

[Stamp] P 2: 277

**List of Prosecution Witnesses**

1. 95311-7 Staff Sergeant Major Moshe Levy (took the Defendant's statement dated March 30, 2004).
2. 44862 Senior Staff Sergeant Major Nissim Argaman (took the Defendant's statement dated April 15, 2004).
3. 410066625 Abdul Rahman (Zaher) Yousef Abdul Rahman Maqdad (under arrest in Prosecution File 1238/04).
4. 901415984 Hilmi Abdel Karim Mohamed Hamash (under arrest in Prosecution File 1300/04).

[Stamp] P 2: 277 [continued]

5. 906194063 Izz A-Din Khaled Hussein al-Hamamra (under arrest in Prosecution File 1246/04).
6. 920629276 Ali Mohamed Hamed Abu Haliel (under arrest in Prosecution File 1216/04).
7. 901739656 Ahmed Salah Ahmed Salah (under arrest in Prosecution File 1247/04).

**Detailed Incident File 09891/04 Special Duties Department Jerusalem** (Suicide terrorist attack on the Number 19 bus)

8. 43438654 Nir Azulay (Details held by the Prosecution).
9. 80408453 Idnan Sa'ida (Details held by the Prosecution).
10. Risha Kariz (Details held by the Prosecution).
11. Svetlana Milniker (Details held by the Prosecution).
12. Olga Skrifa (Details held by the Prosecution).
13. 055661458 Dorit Shalev (Details held by the Prosecution).
14. 07788383 Yosef Hadad (Details held by the Prosecution).
15. 0300679925 Moshe Benita (Details held by the Prosecution).
16. 038583837 Carmel Shreier (Details held by the Prosecution).
17. 053927372 Aliza Eliyahu (Details held by the Prosecution).
18. 0307353110 Lilya Sariga (Details held by the Prosecution).
19. 307207332 Irina Potiomkin (Details held by the Prosecution).
20. 058123977 Gad Listenberg (Details held by the Prosecution).
21. 002379493 Miriam Deri (Details held by the Prosecution).
22. 056521644 Vered Luzon (Details held by the Prosecution).
23. 035816180 David Bar-Sela (Details held by the Prosecution).
24. 034325944 Yael Rubinstein (Details held by the Prosecution).
25. 071666614 Naim Barzavi (Details held by the Prosecution).
26. 001909134 Sarah Keisar (Details held by the Prosecution).
27. 321135395 Lidia Weiner (Details held by the Prosecution).
28. 054584362 Bahira Saado (Details held by the Prosecution).
29. Medical License No. 73774 Dr. Komber (Medical documents relating to Mr. Naim Barzavi).
30. Medical License No. 24151 Dr. Michlevsky (Medical documents relating to Ms. Sarah Keisar).

[Stamp] P 2: 278

31. Medical License No. 25068 Dr. Yutkin (Medical documents relating to Ms. Bahira Saado).
32. Dr. A Wolf (Medical documents relating to Ms. Bahira Saado).
33. Opinion of the Bomb Laboratory (to be provided later).
34. Medical documents.
35. Victim lists (institutional records).

**<u>Detailed Incident File 17869/04 Moriah Station</u>** (Suicide terrorist attack on the Number 14 bus)

[Stamp] P 2: 278 [continued]

36. 7449502 Amotz Nili (Details held by the Prosecution).
37. 9797523 Avraham David (Details held by the Prosecution).
38. 31464167 Binyamin Ben Lulu (Details held by the Prosecution).
39. 7633634 Azoulay Shoshana (Details held by the Prosecution).
40. 03083175 David Ben Hamo (Details held by the Prosecution).
41. 024942724 Yaniv Levy (Details held by the Prosecution).
42. 303717631 Boris Piskra (Details held by the Prosecution).
43. 0304050040 Victoria Tatarik (Details held by the Prosecution).
44. 311825574 Maya Melinitzer (Details held by the Prosecution).
45. 003416716 Dov Goldflam (Details held by the Prosecution).
46. 040182115 Asaf Cohen (Details held by the Prosecution).
47. Dr. A. Deutsch (Medical documents).
48. 324605005 Ala Lazarenko (Details held by the Prosecution).
49. Dr. Flor (Medical documents).
50. 321868663 Natalia Sorpin (Details held by the Prosecution).
51. Dr. Sharon Flor (Medical documents).
52. 065322471 Avraham Pur (Details held by the Prosecution).
53. 0801523812 Issa Abid (Details held by the Prosecution).
54. 039276126 Eliyahu Mizrahi (Details held by the Prosecution).
55. 075775239 Meir Aharon (Details held by the Prosecution).
56. 039195862 Efrat Sivan Simon (Details held by the Prosecution).
57. 200713410 Gal-Or Shemesh (Details held by the Prosecution).
58. 34985 Dr. Hamara Jerabi (Medical documents).
59. 009797523 David Avraham (Details held by the Prosecution).
60. 21503 Dr. Shalom Friedman (Medical documents).
61. 043553338 Liran Ben Siman-Tov (Details held by the Prosecution).
62. 22674 Dr. Binyamin Parson (Medical documents).
63. 066079948 Yosef Slavusky (Details held by the Prosecution).
64. 024942724 Yaniv Levi (Details held by the Prosecution).
65. 009797523 David Avraham (Details held by the Prosecution).
66. 034441659 Noa Diatlovitzky (Details held by the Prosecution).
67. 34991 Dr. Miki Avital (Medical documents).
68. 030803175 David Ben Hamo (Details held by the Prosecution).
69. 054973698 Shimon Shoshan (Details held by the Prosecution).

[Stamp] P 2: 279

70. 0300302668 May Shirizli (Details held by the Prosecution).
71. 35035 Dr. Goldman (Medical documents).
72. 025300955 Yehuda Malul (Details held by the Prosecution).
73. 031503105 Oded Havshush (Details held by the Prosecution).
74. Medical documents (institutional records).
75. 307048298 Limor Betaryaev (Seizure Report).
76. 969480516 Issa Za'ul (Genetic samples).
77. 969480524 Badia Za'ul (Genetic samples).
78. Staff Sergeant Shadi Rabah (Memorandum).
79. 4668654 Eli Malka (Memo).
80. Opinion of the Bomb Laboratory (to be provided later).
81. 73160-4 Chief Inspector Igor Pekerman (Seizure and Marking Report).
82. Prof. Y. His (Pathology Opinion).
83. Dr. V. Karsin.
84. Dr. Kenneth Frank Gerston (Pathology Opinion).
85. Dr. Z. Cahana.
86. Dr. R. Nachman (Pathology Opinion).
87. Dr. K. Zaitsev.
88. Dr. Chen Kugel (Opinion of the National Institute for Forensic Medicine).
89. Dr. Levi Birtolon (Pathology Opinion).
90. Dr. Kenneth Frank Gerston (Pathology Opinion).
91. Death Certificates.

[Stamp] P 2: 280

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

**DECLARATION OF RINA NE'EMAN**

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 2: 266-280

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated bearing the bates number P 2: 266-280.

Dated: March 6, 2014

Rina Ne'eman

ss.: New Jersey

On the 6 day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
6 day of March, 2014

Leonor Troyano
Notary Public

LEONOR TROYANO
ID # 2325580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/8/2014

צבא הגנה לישראל

בבית המשפט הצבאי
ב י ה ו ד ה
בפני הרכב

תיק בימ"ש /04 2262
תיק תביעה 1338/04
תיק פ.א. 1667/04 חברון
9891/04 מתי"מ י-ם
178694/04 מוריה

במשפט שבין:

התובע הצבאי

- המאשים -

- נ ג ד -

מוחמד עיסא מוחמד מעאלי
(עצור מיום 29/3/04)
ת.ז. 907377113 יליד 9/10/77 מבית-לחם

- הנאשם -

## כתב אישום

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות:

**פרט ראשון:**

**מהות העבירה:** יידוי חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בתחילת חודש אוקטובר 00' או בסמוך לכך, יידה חפץ מבעיר בכוונה לגרום למותו של אחר או פציעתו, דהיינו:

במועד הנ"ל, יידו הנאשם הנ"ל וחבריו מחמוד מוגירבי, ג'יסאן חסן ע"א-ג'יואד ואחי בקבוקי תבערה לעבר כוחות צה"ל.

**פרט שני:**

**מהות העבירה:** יידוי פצצה, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במהלך חודש אפריל 02' או בסמוך לכך, היה שותף ליידוי פצצה עם אחרים בכוונה לגרום למותו של אחר או לפציעתו, דהיינו:

במועד הנ"ל, במספר הזדמנויות שונות, יידה הנאשם הנ"ל וחבריו מטעני צינור לעבר כוחות צה"ל שעברו בבית-לחם.

**פרט שלישי**:

**מהות העבירה**: הנחת פצצה, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968.

**פרטי העבירה**: הנאשם הנ״ל, באזור, במהלך חודש אפריל 04׳ או בסמוך לכך, היה שותף להנחת פצצה מתוך כוונה לגרום למותו של אחר או לפציעתו, דהיינו:

במועד הנ״ל, הניחו הנאשם הנ״ל וחבריו חמזה בעורה, פארס אלחסנאת ואחי מטען חבלה במשקל 12 ק״ג סמוך לתחנת דלק ״דרוויש״ במקום בו עוברים כלי רכב צבאיים.

**פרט רביעי**: **(פ״א 09891/04 מת״מ ירושלים)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968.

**פרטי העבירה**: הנאשם הנ״ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. בתחילת חודש ינואר 04׳ או בסמוך לכך, תיכננו ע״א-רחמאן (זאהר) יוסף ע״א-רחמאן מקדאד (להלן – **ע״א-רחמאן מקדאד**) והפעיל הצבאי אחמד מוגירבי ועלי מחמד חמאד אבו-הלאיל (להלן – **עלי אבו-הלאיל**) לבצע פיגועים נגד מטרות ישראליות שכללו פיגועי התאבדות.

2. בסמוך לכך פנה הפעיל הצבאי חלמי ע״א-כרים מחמד המאש (להלן – **חלמי המאש**) אל עלי ג׳עארה והציע לו להפגישו עם פעיל צבאי שישלח אותו לביצוע פיגוע התאבדות. עלי ג׳עארה (להלן – **המתאבד**) הביע נכונות לכך.

   בהתאם לכך, הפגיש חלמי המאש את הפעיל הצבאי אחמד צלאח אחמד צלאח (המכונה: אחמד אבו-עידב) (להלן – **אחמד אבו-ע׳דב**) עם המתאבד בפגישה שבמהלכה בירר אחמד אבו-ע׳דב עם המתאבד את מידת נכונותו לבצע פיגוע התאבדות.

   במהלך הפגישה הביע המתאבד נכונות לבצע את הפיגוע. בהתאם ביקש אחמד אבו-עידב מהמתאבד להתכונן לביצוע פיגוע ההתאבדות.

3. בסמוך לכך, החל ע״א-רחמאן מקדאד בייצור חומר נפץ שישמש בביצוע פיגוע ההתאבדות וזאת באמצעות חומרים שהעביר אליו הפעיל הצבאי עלי אבו-הלאיל. בנוסף עידכן אחמד אבו-עידב את ע״א-רחמאן מקדאד בדבר איתור מתאבד המוכן לבצע את פיגוע ההתאבדות, וביקש ממנו כי יכין בדחיפות את תיק הנפץ כדי שישמש בביצוע פיגוע ההתאבדות.

4. ע"א-רחמאן מקדאד ביקש מאחמד אבו-עידב לקנות עבורו חומרים לייצור תיק הנפץ (שכללו בין היתר: תיק, סוללות, מפסק וכו'...). אחמד אבו-עידב נענה בחיוב ורכש ביחד עם חלמי המאש את כל שנתבקש. בנוסף, ניסו אחמד אבו-עידב וחלמי המאש למצוא מצלמת וידאו ע"מ לצלם את המתאבד בטרם ביצוע הפיגוע, אולם לא הצליחו בכך – ולפיכך החליטו להוציא את המתאבד לביצוע הפיגוע מבלי לצלמו במצלמת וידאו.

5. בסמוך לכך, פנה אחמד אבו-עידב אל **הנאשם הנ"ל** וביקש ממנו להוביל מתאבד החמוש בחגורת נפץ לביצוע פיגוע התאבדות בתוך שטח מדינת ישראל. הנאשם הביע נכונות לכך.

בהתאם לכך, הפגיש אחמד אבו-עידב את הנאשם עם המתאבד.

6. במקביל לאמור לעיל, ייצר ע"א-רחמאן מקדאד את תיק הנפץ לביצוע פיגוע התאבדות באמצעותו; עידכן את אחמד אבו-עידב בכך וביקש ממנו כי יבוא ע"מ לקחת את תיק הנפץ.

7. כעבור מספר דקות, הגיע אחמד אבו-עידב יחד עם המתאבד והנאשם לביתו של ע"א-רחמאן מקדאד; הנאשם המתין בחוץ ואילו המתאבד ואחמד אבו-עידב נכנסו לביתו של ע"א-רחמאן מקדאד. האחרון הסביר לאחמד אבו-עידב ולמתאבד על אופן הפעלת תיק הנפץ והעביר להם את תיק הנפץ ע"מ שזה ישמש בפיגוע התאבדות וזאת בכוונה לגרום למותם של אזרחים ישראליים.

8. בסמוך לכך, יצאו הנאשם, המתאבד ואחמד אבו-עידב לכיוון האוניברסיטה בבית-לחם; שם נטרל אחמד אבו-עידב את מנגנון האבטחה של מטען החבלה ע"מ להכין אותו לפעולה. לאחר-מכן עזב אחמד אבו-עידב את הנאשם עם המתאבד.

9. לאחר שאחמד אבו-עידב עזב אותם בסמוך לשעה 6:30, הוביל הנאשם את המתאבד לירושלים דרך כפר הוולג'ה, עד שהגיעו סמוך לקניון מלחה בירושלים, שם נפרד הנאשם מהמתאבד וחזר לאיזור.

10. בסמוך לכך, עלה המתאבד לאוטובוס אגד בקו 19 שנסע לכיוון כיכר פריז; כשהגיע האוטובוס לפינת רחובות ארלוזורוב ועזה, סמוך לשעה 8:45, הפעיל המתאבד את תיק הנפץ שהחזיק עליו בכוונה לגרום למותם של מספר רב של בני אדם. כתוצאה מכך, התפוצץ תיק הנפץ בתוך האוטובוס (להלן – **פיגוע ההתאבדות**).

11. כתוצאה מפיגוע ההתאבדות נגרם מותו של **אברהם בלחסן ז"ל**.

**פרט חמישי**:**(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותה של **גב' חנה בונדר ז"ל**.

**פרט שישי**:**(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותה של **גב' ענת דרום ז"ל**.

**פרט שביעי**:**(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותו של **מר יחזקאל גולדברג ז"ל**.

**פרט שמיני :(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותו של **מר ולדי צדיק מנברה ז"ל**.

**פרט תשיעי :(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותו של **מר ויורל אוקטביא פלורסקו ז"ל**.

**פרט עשירי :(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותה של **גב' רוזה בונה ז"ל**.

**<u>פרט אחד עשר</u>: <u>(פ"א 09891/04 מת"מ ירושלים)</u>**

**<u>מהות העבירה</u>:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותה של **<u>גב' דנה איטח ז"ל</u>**.

**<u>פרט שנים עשר</u>: <u>(פ"א 09891/04 מת"מ ירושלים)</u>**

**<u>מהות העבירה</u>:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותו של **<u>מר רומן חונדיאשווילי ז"ל</u>**.

**<u>פרט שלושה עשר</u>: <u>(פ"א 09891/04 מת"מ ירושלים)</u>**

**<u>מהות העבירה</u>:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותו של **<u>מר אלי צפורה ז"ל</u>**.

**פרט ארבעה עשר:(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נגרם מותה של **גב' נטליה גמריל ז"ל**.

**פרט חמישה עשר:(פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיפים 19-20, 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לניסיון גרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כמפורט בפרט האישום הרביעי – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות; וכן מת המחבל המתאבד.

**פרט שישה עשר:(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. מספר ימים לפני למועד הנ"ל, תיכננו ע"א-רחמאן מקדאד והפעיל הצבאי עז-אלדין עליאן לבצע פיגוע התאבדות וזאת במטרה לגרום למותם של אזרחים ישראליים.

עז-אלדין עליאן הודיע לע"א-רחמאן מקדאד כי איתר אדם בשם מוחמד זעול (להלן – **המתאבד**) המוכן לבצע פיגוע התאבדות.

2. ביום 17/2/04 או בסמוך לכך, נפגש עז-אלדין עליאן עם המתאבד בכפר חוסאן, במהלך הפגישה הסכים המתאבד לבצע את פיגוע ההתאבדות המתוכנן. בסיומה סיכם עז-אלדין עליאן עם המתאבד להיפגש עימו בסמוך לכנסיית המולד בבית-לחם ביום 21/2/04 בשעה 16:00.

3. עז-אלדין עליאן עידכן את ע״א-רחמאן מקדאד בדבר תוכן הפגישה ובדבר הסכמתו של המתאבד לבצע את פיגוע ההתאבדות; בהתאם לכך, יצר ע״א-רחמאן מקדאד קשר עם אחיו הפעיל הצבאי מאהר מקדאד שגר בעזה, עידכן אותו בדבר התכנון לבצע פיגוע ההתאבדות, וביקש ממנו סכום של 3,000 ₪, ע״מ להכין את תיק הנפץ לפיגוע ההתאבדות וכן ולקנות מצלמת וידאו לצורך צילום המתאבד (וזאת בהתאם לבקשתו של מאהר מקדאד לצלם את המתאבד בטרם ביצוע פיגוע ההתאבדות).

מאהר מקדאד נענה בחיוב והעביר לחשבון בבנק הערבי בבית-לחם, שרשום על שמו של ע״א-רחמאן מקדאד, סכום של 3,000 ₪ לצורך מימון פיגוע ההתאבדות, וזאת כפי שסוכם עם ע״א-רחמאן מקדאד.

4. ביום 18/2/04 או בסמוך לכך, ניגש ע״א-רחמאן מקדאד לבנק הערבי בבית-לחם ומשך את סכום הכסף שהועבר אליו ממאהר מקדאד.

ע״א-רחמאן מקדאד רכש באמצעות חלק מסכום הכסף מצלמת וידאו ומצלמה רגילה לצורך צילום המתאבד. כמו-כן העביר לעלי אבו-הלאיל ואחמד אבו-עידב סכום כסף וזאת ע״מ שירכשו חומרים לצורך הכנת תיק הנפץ לפיגוע ההתאבדות.

5. בהתאם, עלי אבו-הלאיל קיבל מהפעיל הצבאי חאתם זכריא מחמוד אלאערג׳ (להלן – **חאתם אלאערג׳**) 4 ליטר חומר כימי מסוג מי-חמצן ומהפעיל הצבאי אחמד עודה 40 ליטר חומר כימי מסוג אצטון; עלי אבו-הלאיל העביר לע״א-רחמאן מקדאד 12 ליטר חומר כימי מסוג מי-חמצן ו-12 ליטר חומר כימי מסוג אצטון.

6. ביום 20/2/04 ייצרו ע״א-רחמאן מקדאד, עלי אבו-הלאיל ועז-אלדין עליאן את תיק הנפץ המיועד לביצוע פיגוע ההתאבדות.

7. בסמוך לכך, ביקש ע״א-רחמאן מקדאד מאחמד אבו עידב לבדוק עם הנאשם הנ״ל אם הוא מוכן להוביל את המתאבד לביצוע פיגוע ההתאבדות. בהתאם לכך, נפגש אחמד אבו-עידב עם הנאשם וביקש ממנו כי יוביל מתאבד נוסף לביצוע פיגוע התאבדות בתוך שטח מדינת ישראל. הנאשם נענה בחיוב לכך.

באותו יום בשעות הערב, הגיע אחמד אבו-עידב לביתו של ע״א-רחמאן מקדאד כאשר ברשותו כרוז שעליו כתוב ״חוליית איימן גיודה של ארגון גדודי חללי אלאקצא״; אחמד אבו-עידב העביר את הכרוז לע״א-רחמאן

מקדאד וזאת כדי שישמש כתמונת רקע בעת צילומו של המתאבד – וכמו-כן עידכן את ע״א-רחמאן מקדאד כי הנאשם מוכן להוביל את המתאבד.

8. למחרת בבוקר, העביר אחמד אבו-ע׳דב לע״א-רחמאן מקדאד מסמרי ברזל, ע״מ שהאחרון ידביק אותם לתיק הנפץ וזאת כדי להגביר ולהחמיר את הפגיעות בעת פיצוץ מטען הנפץ. ע״א-רחמאן מקדאד קיבל את מסמרי הברזל והדביק אותם לתיק הנפץ.

באותו יום, סמוך לשעה 16:10, הגיע עז-אלדין עליאן מלווה במתאבד לביתו של ע״א-רחמאן מקדאד ע״מ להכין אותו לקראת היציאה לפיגוע.

בנוסף, הביא אחמד אבו-ע׳דב לע״א-רחמאן מקדאד רובה קלצ׳ניקוב ורימון יד וזאת ע״מ שזה יצלם את המתאבד כשהוא מחזיק ברשותו אמל״ח זה.

9. ע״א-רחמאן מקדאד ועז-אלדין עליאן נתנו למתאבד אוכל ובגדים חדשים. לאחר שסעדו ביחד עם המתאבד את ארוחת הערב כתב עז-אלדין עליאן צוואה עבור המתאבד; ע״א-רחמאן מקדאד ועז-אלדין עליאן צילמו את המתאבד כשהוא מקריא את הצוואה שלו. כשסיימו לצלם את המתאבד החל ע״א-רחמאן מקדאד לייצר את תיק הנפץ שישמש בביצוע פיגוע ההתאבדות. סמוך לשעה 5:30 בבוקר של היום שלמחרת סיים ע״א-רחמאן לייצר את תיק הנפץ.

10. כשסיים לייצר את תיק הנפץ, כאמור ביום 22/4/04, התקשר ע״א-רחמאן מקדאד אל אחמד אבו-ע׳דב, הודיע לו כי הכל מוכן וביקש ממנו לבוא ע״מ להוציא את המתאבד לביצוע פיגוע ההתאבדות.

בהתאם לכך, יצר אחמד אבו-ע׳דב קשר עם הנאשם וביקש ממנו כי ייפגש עימו. שניהם נפגשו וביחד נסעו לכיוון ביתו של ע״א-רחמאן מקדאד בו הסתתר המתאבד. אחמד אבו-ע׳דב ביקש מהנאשם כי להמתין בסמוך למקום הנמצא במרכז בית-לחם.

11. בסמוך לשעה 6:00 הגיע אחמד אבו-ע׳דב לביתו של ע״א-רחמאן מקדאד, לקח ממנו את תיק הנפץ ויצא ביחד עם המתאבד לכיוון מרכז בית-לחם; שם הפגיש את המתאבד עם הנאשם. משם יצא המתאבד יחד עם הנאשם לכיוון ירושלים כאשר הם עוברים דרך כפר וולג׳ה וזאת ע״מ לבצע את פיגוע ההתאבדות המתוכנן.

12. הנאשם הוביל את המתאבד למקום הנמצא בסמוך לקניון מלחה בירושלים; שם נפרד ממנו וחזר לאיזור.

13. בסמוך לאחר-מכן עלה המתאבד לאוטובוס אגד בקו 14 שנסע מכיוון דניה לכיוון גן הפעמון. כשנעצר האוטובוס באחד הרמזורים הפעיל המתאבד את תיק הנפץ בכוונה לגרום למותם של מספר רב של בני אדם. כתוצאה מכך התפוצץ תיק הנפץ בתוך האוטובוס (להלן – **פיגוע ההתאבדות**).

14. כתוצאה מפיגוע ההתאבדות נגרם מותה של **גב' יפה בן שימול ז"ל**.

**פרט שבעה עשר :(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נגרם מותו של **מר יובל אוזנה ז"ל**.

**פרט שמונה עשר :(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נגרם מותו של **מר רחמים דוגה ז"ל**.

**פרט תשעה עשר :(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נגרם מותו של **מר יהודה חיים ז"ל**.

**פרט עשרים**: **(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נגרם מותו של **מר אילן אביסדריס ז"ל**.

**פרט עשרים ואחד**: **(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נגרם מותו של **מר בניה יונתן צוקרמן ז"ל**.

**פרט עשרים ושניים**: **(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נגרם מותו של **מר אזולאי ליאור ז"ל**.

**פרט עשרים ושלושה**: **(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נגרם מותו של **מר נתנאל חבשוש ז"ל**.

**פרט עשרים וארבעה**: **(פ"א 17869/04 תחנת מוריה)**

**מהות העבירה**: ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיפים 19-20, 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה**: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לניסיון גרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד מוחמד זעול בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם הוביל אותו לביצוע פיגוע ההתאבדות, כאמור בפרט האישום הששה עשר – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות; וכן מת המחבל המתאבד.

**נאג'י עאמר, סרן**
**תובע צבאי**

**רשימת עדי התביעה**:

1. 95311-7 רס"ר משה לוי (גובה הודאת הנאשם מיום 30/3/04).
2. 44862 רס"ב נסים ארגמן (גובה הודאת הנאשם מיום 15/4/04).
3. 410066625 ע"א-רחמאן (זאהר) יוסף ע"א-רחמאן מקדאד (עצור בת.ת. 1238/04).
4. 901415984 חילמי ע"א-כרים מוחמד המאש (עצור בת.ת. 1300/04).

5. 906194063 עז-אלדין חיאלד חסין חמאמרה (עצור בת.ת. 1246.04).
6. 920629276 עלי מוחמד חמאד אבו-הלאיל (עצור בת.ת. 1216/04).
7. 901739656 אחמד צאלח אחמד צאלח (עצור בת.ת. 1247/04).

**<u>פ"א 09891/04 מת"מ ירושלים</u>**: (פיגוע התאבדות בתוך אוטובוס קו 19)

8. 43438654 ניר אזולאי (פרטים בתביעה).
9. 80408453 עדנאן סעידה (פרטים בתביעה).
10. רישה קריז (פרטים בתביעה).
11. סבטלנה מילניקר (פרטים בתביעה).
12. אולנה סקריפה (פרטים בתביעה).
13. 055661458 דוריה שליו (פרטים בתביעה).
14. 07788383 יוסף חדד (פרטים בתביעה).
15. 0300679925 משה בניטה (פרטים בתביעה).
16. 038583837 כרמל שרייר (פרטים בתביעה).
17. 053927372 עליזה אליהו (פרטים בתביעה).
18. 0307353110 ליליה שריגה (פרטים בתביעה).
19. 307207332 ארינה פוטיומקין (פרטים בתביעה).
20. 058123977 גד ליסטנגברג (פרטים בתביעה).
21. 002379493 מרים דרעי (פרטים בתביעה).
22. 056521644 ורד לוזון (פרטים בתביעה).
23. 035816180 דוד בר-סלע (פרטים בתביעה).
24. 034325944 יעל רובינשטיין (פרטים בתביעה).
25. 071666614 נעים ברזאוי (פרטים בתביעה).
26. 001909134 שרה קיסר (פרטים בתביעה).
27. 321135395 לידייה ווינר (פרטים בתביעה).
28. 054584362 בהירה סעדו (פרטים בתביעה).
29. מ.ר. 73774 ד"ר קומבר (מסמכים רפואיים הנוגעים למר נעים ברזאוי).
30. מ.ר. 24151 ד"ר מיכלבסקי (מסמכים רפואיים הנוגעים לגבי שרה קיסר).
31. מ.ר. 25068 ד"ר יוטקין (מסמכים רפואיים הנוגעים לגבי בהירה סעדו).
32. ד"ר א. וולף (מסמכים רפואיים הנוגעים לגבי בהירה סעדו).
33. חוו"ד מעבדת חבלה (תועבר בהמשך).
34. מסמכים רפואיים.
35. רשימות נפגעים (רשומה מוסדית).

**<u>(פ"א 17869/04 תחנת מוריה)</u>**: (פיגוע התאבדות בתוך אוטובוס קו 14)

36. 7449502 אמוץ נילי (פרטים בתביעה).
37. 9797523 אברהם דוד (פרטים בתביעה).
38. 31464167 בנימין בן לולו (פרטים בתביעה).
39. 7633634 אזולאי שושנה (פרטים בתביעה).
40. 03083175 דויד בן חמו (פרטים בתביעה).
41. 024942724 יניב לוי (פרטים בתביעה).
42. 303717631 בוריס פיסקרה (פרטים בתביעה).
43. 0304050040 ויקטוריה טטריק (פרטים בתביעה).
44. 311825574 מאיה מליניצר (פרטים בתביעה).
45. 003416716 דוב גולדפלם (פרטים בתביעה).
46. 040182115 אסף כהן (פרטים בתביעה).
47. ד"ר א. דויטש (מסמכים רפואיים).
48. 324605005 אלה לזרנקו (פרטים בתביעה).
49. ד"ר פלור (מסמכים רפואיים).
50. 321868663 נטליה סורפין (פרטים בתביעה).
51. ד"ר פלור שרון (מסמכים רפואיים).
52. 065322471 אברהם פור (פרטים בתביעה).
53. 0801523812 עיסא עביד (פרטים בתביעה).
54. 039276126 אליהו מזרחי (פרטים בתביעה).
55. 075775239 מאיר אהרון (פרטים בתביעה).
56. 039195862 אפרת סיוון סימון (פרטים בתביעה).
57. 200713410 גל-אור שמש (פרטים בתביעה).
58. 34985 ד"ר חמרה גירבי (מסמכים רפואיים).
59. 009797523 דוד אברהם (פרטים בתביעה).
60. 21503 ד"ר שלום פרידמן (מסמכים רפואיים).
61. 043553338 לירן בן סימן-טוב (פרטים בתביעה).
62. 22674 ד"ר פרסון בנימין (מסמכים רפואיים).
63. 066079948 יוסף סלבוסקי (פרטים בתביעה).
64. 024942724 יניב לוי (פרטים בתביעה).
65. 009797523 דויד אברהם (פרטים בתביעה).
66. 034441659 נועה דיאטלוביצקי (פרטים בתביעה).
67. 34991 ד"ר מיקי אביטל (מסמכים רפואיים).
68. 030803175 דוד בן חמו (פרטים בתביעה).
69. 054973698 שמעון שושן (פרטים בתביעה).

70. 0300302668 מאי שיריזלי (פרטים בתביעה).
71. 35035 ד״ר גולדמן (מסמכים רפואיים).
72. 025300955 יהודה מלול (פרטים בתביעה).
73. 031503105 עודד חבשוש (פרטים בתביעה).
74. מסמכים רפואיים (רשומה מוסדית).
75. 307048298 לימור בטרייאב (דו״ח תפיסה).
76. 969480516 עיסא זעול (דגימות גנטיות).
77. 969480524 בדיעה זעול (דגימות גנטיות).
78. סמ״ר שאדי רבאח (זכ״ד).
79. 4668654 אלי מלכה (מזכר).
80. חוו״ד מעבדת חבלה (תועבר בהמשך).
81. 73160-4 פקד איגור פקרמן (דו״ח תפיסה וסימון).
82. פרופ׳ י.היס (חוו״ד פתולוגית).
83. ד״ר ו. קרסין.
84. ד״ר קנט פרנק גרסטון (חוו״ד פתולוגית).
85. ד״ר צ׳ כהנא.
86. ד״ר ר.נחמן (חוו״ד פתולוגית).
87. ד״ר ק׳ זייצב.
88. ד״ר חן קוגל (חוו״ד המכון הלאומי לרפואה משפטית).
89. ד״ר בירטולון לוי (חוו״ד פתולוגית).
90. ד״ר קנט פרנק גרסטון (חוו״ד פתולוגית).
91. תעודות פטירה.