

PLAINTIFF'S EXHIBIT
418
tabbies

Israel                              Defense                                     Forces

Before the Military Court                    Court Case: 3250/02
in Beit El                              Prosecution case: 242/02
Before a panel                   Detailed incident case: 3135/00 Binyamin
                                              234/01 Jerusalem Special Duties
                                                 Department
                                              2159/01 Binyamin
                                              7915/01 Zion
                                              481/01 Zion
                                              8379/01 Zion
                                              5/01 Binyamin
                                              457/01 Binyamin
                                              502/02 Zion

### In the trial between the military prosecutor – The Prosecutor

#### - v. -

Mohamed Abed Rahman Salem Moslah (known as "Abu Satha")
Identity No. 902845653, born on April 25, 1977, a resident of Ain Um Sharait – Ramallah
Detained since February 17, 2002

#### - The Defendant -

## Amended Indictment

**The above mentioned Defendant is accused hereby of committing the following offenses:**

**First count:** (Detailed Incident 234/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.   The above mentioned Defendant, at the time set forth, met Jad Ibrahim Maala and Taerk Malahi A-Nuf in Ramallah. The Defendant conspired with his above mentioned collaborators to travel to A-Ram and steal a vehicle from there.

[Stamp] P 6: 44

1

2.    The Defendant, together with Tarek A-Nuf and Jad Maala, traveled to A-Ram. There, the Defendant and his above mentioned collaborators looked for a vehicle to steal. After they did not find a vehicle that they could steal, the Defendant returned to Ramallah, while Tarek A-Nuf and Jad Maala stayed in A-Ram with the aim of continuing to look for a vehicle that could be stolen.

3.    In Ramallah, the Defendant met Ahmed Taleb Mustafa Barghouti, the bodyguard of Marwan Barghouti – the head of the Tanzim Fatah. The Defendant asked Ahmed Barghouti for a pistol and a vehicle for the purpose of carrying out a shooting attack against Jews.

Prosecution Case 242/02 Amended                1

[Stamp] P 6: 44 [continued]

4.   At the request of the Defendant, Ahmad Barghouti provided him with a "16" pistol with a magazine full of cartridges and a stolen silver Volkswagen Bora.

5.   The Defendant drove the above mentioned Volkswagen to A-Ram, while armed with the above mentioned "16" pistol. In A-Ram, the Defendant met Jad Maala and Tarek A-Nuf.

6.   The Defendant suggested to Jad Maala that he get into the Volkswagen and travel to the Atarot area to look for an Israeli vehicle, with the aim of carrying out a shooting attack at it and causing the deaths of the occupants of the vehicle. Jad Maala agreed to the Defendant's suggestion and got into the Volkswagen.

7.   The Defendant continued to drive the Volkswagen and handed the above mentioned "16" pistol to Jad Maala. The Defendant instructed Jad Maala to shoot using the above mentioned pistol at an Israeli vehicle, which the two had found in the Atarot area, with the aim of causing the deaths of the occupants of the vehicle.

8.   At about 6:15 p.m., in the Atarot Industrial Zone, the Defendant and Jad Maala noticed a GMC Safari, license no. 7901306 (hereinafter: the "Vehicle"), which the late Elazar Akiva Fashkos was driving.

9.   The Defendant started to drive after the Vehicle. The Defendant followed the Vehicle from the Atarot Industrial Zone to A-Ram Junction and back.

10.  When the Vehicle returned to the Atarot Industrial Zone and drove on the main road, the Defendant drove the Volkswagen near the Vehicle.

11.  Jad Maala opened the window and fired with the above mentioned "16" pistol, which the Defendant had delivered to him, approximately seven rounds at the Vehicle, with the intent of causing the death of the Vehicle's driver. A number of bullets hit the Vehicle, one of which hit the late Elazar Akiva Fashkos, who was driving the Vehicle, in the neck and another hit his chest.

12.  Once the Defendant saw that the Vehicle had stopped, he fled in the Volkswagen, along with Jad Maala, to Ramallah.

13.  In Ramallah, the Defendant returned the Volkswagen and the "16" pistol to Amir Abu Radaha. The Defendant gave Amir Abu Radaha a few cartridges instead of the cartridges that Jad Maala had fired as set forth above.

[Stamp] P 6: 45

3

14. Thereafter, the Defendant made contact with Ahmad Barghouti (known as "Al Faransi"), the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the Area, which is an illegal organization, and reported to him the attack that he had carried out with Jad Maala.

15. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Elazar Akiva Fashkos**, who died as a result of the impact of the bullets that were fired by Jad Maala as described above.

16. A day later, Ahmad Barghouti delivered approximately 300 U.S. dollars to Jad Maala for carrying out the above mentioned attack. Ahmad Barghouti received the above mentioned money from Ali Faraj Barghouti.

**Second count:**

**Nature of the offense:** Membership in an illegal organization, an offense pursuant to Regulations 84 (1) (A) and 85(1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from mid-2001 until the day of his arrest, was a member or acted as a member of an illegal organization, as follows:

The above mentioned Defendant, during the period set forth, was a member of a military cell whose purpose was carrying out attacks against Israeli civilians within the Area and elsewhere. The Defendant acted in the said military cell along with Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada, Firas Sadak Mohammed Ghanem (known as "al Hittawi"), Haitham Almutfak Hamdan, Zidan Mahareb Al Badawi, Nizar Wahadan and Ali Alian.

For the purpose of his activity in the above mentioned cell, the defendant and his fellow cell members regularly received financial assistance from Ahmed Taleb Barghouti, the assistant of Marwan Barghouti, the head of the Tanzim Fatah. The Defendant himself on several occasions received various amounts of money, from 100 to 300 U.S. dollars each time.

The Defendant operated in the said military cell as described in the various counts of the indictment.

Prosecution Case 242/02 Amended            2

[Stamp] P 6: 45 [continued]

4

**Third count:** (Detailed Incident 2159/01 Binyamin)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, in August 2001, in Ein Um Sharait in Ramallah, met Hussam Akel Rajb Shahada, Firas Sadak Mohamed Ghanem (known as "Al Hitawi") and Tarek Malah A-Nuf.

2.  Tarek A-Nuf, Hussam Shahada and Firas Ghanem told the Defendant that they intended to carry out a shooting attack with the intent of causing the deaths of Israeli civilians. The three asked the Defendant to provide them with weapons for carrying out the planned shooting attack.

3.  On August 25, 2001, Firas Ghanem, Shussam Shahada and Tarek A-Nuf approached the Defendant and asked him to provide weapons that day for the purpose of carrying out the planned shooting attack.

4.  On that day, the Defendant approached Ahmad Taleb Mustafa Barghouti (known as "Al Faransi"), the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the area, which is an illegal organization. The Defendant asked Ahmad Barghouti for weapons for the purpose of carrying out a shooting attack against Israeli civilians. A short time later, on that day, Ahmad Barghouti delivered to the Defendant an MP-5 submachine gun with a magazine filled with cartridges.

5.  In the evening hours on that same day, in Ramallah or thereabouts, the Defendant delivered the above mentioned MP-5 submachine gun and ammunition to Firas Ghanem and Hussam Shahada, who arrived in an Isuzu pickup belonging to Firas, in order for Firas and Hussam to use the above mentioned weapon to carry out a shooting attack and cause the deaths of Israeli civilians.

[Stamp] P 6: 46

6.  Immediately after receiving the weapon, Firas Ghanem, Hussam Shahada, Haitham Almutfak Hamdan and Ali Alian departed from Ramallah towards Highway 443 with the aim of carrying out the planned shooting attack there. The above mentioned individuals traveled in two vehicles – one was an Isuzu pickup belonging to Firas Ghanem and the other was a stolen Subaru that Ali Alian had brought for the purpose of carrying out the planned attack.

7.  Upon reaching Highway 443, Firas Ghanem continued to travel alone in the Isuzu, about a kilometer ahead of the Subaru in which Hussam, Haitham and Ali Alian were traveling, in order to inform his above mentioned collaborators of IDF and police checkpoints along the way.

8.  All of these individuals traveled on Highway 443 towards Tel Aviv, with Ali driving the Subaru; next to him sat Haitham Hamdan, armed with a Kalashnikov assault rifle; in the back seat sat Hussam Shahada, armed with an MP-5 submachine gun, which the Defendant had delivered to him.

9.  On that day, August 25, 2001, at about 10:30 p.m., next to the Dor Energy fuel station, the occupants of the above mentioned Subaru noticed a Volkswagen Passat, license no. 6902818, in which the late Yaniv and Sharon Ben-Sharon and their children and the late Doron Yosef Sviri were traveling.

10. Ali Alian, who was driving the Subaru, overtook the above mentioned Volkswagen and drove parallel to it. At this stage, Haitham Hamdan and Hussam Shahada discharged automatic gunfire with the MP-5 submachine gun, which the Defendant had provided, and with the Kalashnikov assault rifle, at the above mentioned Volkswagen, with the aim of causing the deaths of its occupants.

11. A large number of bullets that were fired by Haitham Hamdan and Hussam Shahada hit the Volkswagen and its occupants.

12. After the occupants of the Subaru noticed that the Volkswagen was zigzagging, they sped up and fled to the village Beit Likia. There, Firas Ghanem waited for them. Ali Alian, Hussam Shahada and Haitham Hamdan got into Firs Ghanem's Isuzu and traveled to the village Beit Sira, where they hid the weapons near Haitham Hamdan's house. Thereafter, Hussam Shahada, Firas Ghanem, Haitham Hamdan and Ali Alian returned to Ramallah in Firas Ghanem's vehicle.

[Stamp] P 6: 46 [continued]

6

13. Immediately after they returned to Ramallah, the Defendant met Firas Ghanem in Ein Um Sharait, who reported to the Defendant the attack that had been carried out with the weapon that had been delivered for this purpose by the Defendant.

14. A few days later, Firas Ghanem brought the above mentioned MP-5 submachine gun from Beit Sira and returned it to the Defendant. The Defendant transferred the above mentioned weapon to Ahmad Barghouti and reported to the latter the shooting attack that had been carried out with this weapon.

15. The above mentioned Defendant, by his acts described above, caused the intentional death of **the late Yaniv Ben-Shalom**, who died of gunshot wounds to his head and back, from bullets that were fired from the MP-5 submachine gun described above, and from a Kalashnikov assault rifle by Haitham Hamdan and Hussam Shahada.

16. After a few days, at the request of the Defendant, Ahmad Barghouti transferred to the Defendant a sum of 500 U.S. dollars for carrying out this attack; this was for the Defendant to distribute to his friends who had carried out the attack described above.

Prosecution Case 242/02 Amended                3

[Stamp] P 6: 46 [continued]

**Seventh count**: (Detailed Incident 2159/01 Binyamin)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the third count of the indictment, by his acts described in the third count of the indictment, caused the intentional death of **the late Sharon Ben-Shalom**, who died of gunshot wounds to her head and back, from bullets that were fired from an MP-5 submachine gun, which the Defendant delivered as described in the third count of the indictment, and from a Kalashnikov assault rifle.

**Fifth count:** (Detailed Incident 2159/01 Binyamin)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the third count of the indictment, by his acts described in the third count of the indictment, caused the intentional death of **the late Doron Yosef Sviri**, who died of gunshot wounds from bullets that were fired from an MP-5 submachine gun, which the Defendant had delivered as described in the third count of the indictment, and from a Kalashnikov assault rifle.

**Sixth count:** (Detailed Incident 7915/01 Zion)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on September 15, 2001, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P 6: 47

8

1.  In mid-September 2001, Firas Sadak Mohammed Ghanem (known as "al Hittawi") and another person approached the Defendant and asked to obtain an MP-5 submachine gun in order to use it to carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

2.  The Defendant consented to provide the requested weapon for the purpose of carrying out the planned shooting attack, and on September 15, 2001, he contacted Ahmad Barghouti, the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the Area, which is an illegal organization. Ahmad Barghouti referred the Defendant to Khaled Shawish. The Defendant contacted Khaled Shawish and obtained the MP-5 submachine gun from the latter.

3.  Later that day, the Defendant delivered the above mentioned MP-5 submachine gun to Firas Ghanem with the aim of the latter using it to carry out a shooting attack and causing the deaths of Israeli civilians.

4.  Later that day, Mohamed Sami Ibrahim Abdullah met Hussam Akel Rajb Shahada, Firas Sadak Mohammed Ghanem (known as "al Hittawi"), Haitham Almutfak Hamdan and Ali Alian. Hussam Shahada arrived to this meeting armed with an MP-5 submachine gun, which Firas Ghanem had obtained from the Defendant for the purpose of carrying out a shooting attack, while Haitham Hamdan arrived armed with a revolver.

5.  The above mentioned collaborators of the Defendant decided to depart for Jerusalem and carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

6.  At about 10:00 p.m. on September 15, 2001, the above mentioned Defendants traveled from Ramallah to Jerusalem in Firas Ghanem's Isuzu pickup.

7.  Firas Ghanem drove the above mentioned Isuzu and traveled with Mohamed Abdullah and his collaborators in order to show them a place where they would carry out the planned shooting attack and in order to show his collaborators how to escape after carrying out the attack as set forth. Firas Ghanem transported his collaborators to Highway No. 9, which connects the [...]

Prosecution Case 242/02 Amended              4

[Stamp] P 6: 47 [continued]

[...] Ramot neighborhood to the French Hill neighborhood in Jerusalem. Firas Ghanem showed his collaborators where to carry out the planned attack and how to escape thereafter. At the end of the said visit, the above mentioned gang returned to Ramallah.

8. At about 10:30 p.m. that day, Mohamed Abdullah, along with Hussam Shahada and Haitham Hamdan, traveled in a stolen gray vehicle with Israeli license plates, which Ali Alian had supplied to them for carrying out the planned attack (hereinafter: the "Vehicle"). Ahead of them drove Firas Ghanem, in the above mentioned Isuzu, in order to inform his collaborators by cellular telephone of police and IDF checkpoints.

9. Mohamed Abdullah drove the above mentioned Vehicle; next to him sat Hussam Shahada, who was armed with an MP-5 submachine gun, and in the rear seat sat Haitham Hamdan, who was armed with a revolver.

10. The above mentioned gang stopped on Highway No. 9 near a junction leading to the Ramat Shlomo neighborhood and waited for a single Israeli vehicle to arrive at the site with the aim of carrying out a shooting attack against it and causing the deaths of the occupants of the vehicle.

11. After a few minutes, at about 11:10 p.m., a white Renault Express, license no. 2273706 (hereinafter: the "Renault"), arrived at the site from the direction of the Ramat Shlomo nationhood and turned to Highway No. 9 towards the Ramot neighborhood.

12. Mohamed Abdullah started to drive after the Renault and overtook it.

13. When the Vehicle was driving parallel to the Renault, Hussam Shahada and Haitham Hamdan opened fire using an MP-5 submachine gun and a revolver against the occupants of the Renault with the aim of causing their deaths.

14. A number of bullets that were fired by Hussam Shahada and Haitham Hamdan hit the Renault and the two occupants of the Renault – the late Moshe Weiss and Meir Weisshaus. Thereafter, Mohamed Abdullah continued to travel towards the Ramot neighborhood and, near a site at which a new bridge was being built, turned right to a dirt track leading to Bir Nabala.

15. Before entering Bir Nabala, Mohamed Abdullah and his collaborators, who were with him in the Vehicle, met Firas Ghanem, who was waiting for them at the site in the Isuzu. From there, they all continued to travel together to Bir Nabala and thereafter fled to Ramallah.

[Stamp] P 6: 48

10

16.  Thereafter, Firas Ghanem, Hussam Shahada, Mohamed Abdullah and Tarek A-Nuf came to the Defendant, returned the above mentioned MP-5 submachine gun to him and reported the attack, which they had carried out using the above mentioned weapons.

17.  By his acts described above, the Defendant caused the intentional death of **the late Meir Weisshaus**, who died in the hospital later that day as a result of gunshot wounds from bullets that were fired by the collaborators of the Defendant using the MP-5 submachine gun, which the Defendant had supplied, and the revolver.

**Seventh count: (Detailed Incident 7915/01 Zion)0**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on September 15, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at about 11:10 p.m., at the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Moshe Weiss, who was driving a white Renault Express, license no. 2273706, described in the previous count of the indictment. One of the bullets that were fired by the collaborators of the Defendant, as described in the previous count of the indictment, hit the head of Moshe Weiss and injured him.

**Eighth count: (Detailed Incident 481/01 Zion and Detailed Incident 8379/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on October 3, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early October 2001, in Ramallah or thereabouts, along with Mohamed Sami Ibrahim Abdullah, Hussam Akel Rajb Shahada and Firas Sadek Ghanem (known as "Abu Hitawi") decided to carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

[Stamp] P 6: 48 [continued]

11

2.   For the purpose of carrying out the planned shooting attack, the Defendant obtained from Majd, a resident of Albira, a stolen gray Mazda 323 with Israeli license plates.

Prosecution Case 242/02 Amended                 5

[Stamp] P 6: 48 [continued]

3.    For the purpose of carrying out the planned shooting attack, the Defendant had obtained an MP-5 submachine gun from Ahmad Barghouti, the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah in the Area, which is an illegal organization.

4.    On October 3, 2001, the Defendant departed from Ramallah towards Jerusalem with the aim of carrying out the planned shooting attack, in possession of the above mentioned MP-5 submachine gun and traveling in the above mentioned Mazda, which Mohamed Abdullah was driving.

5.    Firas Ghanem and Hussam Shahada traveled in an Isuzu pickup belonging to Firas Ghanem ahead of the Mazda in which Muhammad Moslah was traveling, with the aim of informing him of police and IDF checkpoints along the way.

6.    The Defendant and his above mentioned collaborators arrived at New Beit Hanina in Jerusalem. There, Mohamed Abdullah parked the Mazda and with the Defendant, hid the above mentioned MP-5 submachine gun in the vehicle.

7.    The Defendant and Mohamed Abdullah got into the Isuzu and from there continued in the Isuzu with Firas Ghanem and Hussam Shahada towards the Begin Road.

8.    The Defendant and his above mentioned collaborators reached the Begin Road. There, Firas Ghanem showed the Defendant and his other collaborators where to carry out the planned shooting attack and how to escape after carrying out the shooting attack. The Defendant and his above mentioned collaborators decided to carry out the planned shooting attack in the first tunnel of the Begin Road from the direction of Ramot, so that the gunshots would be inaudible. Thereafter, the Defendant and his above mentioned collaborators returned to Beit Hanina, to the place at which the above mentioned Mazda was left.

9.    The Defendant got into the Mazda armed with the above mentioned MP-5 submachine gun while Mohamed Abdullah drove the said Mazda. From there, the Defendant drove the Mazda to the Begin Road with the aim of carrying out the planned shooting attack there and causing the deaths of Israeli civilians.

10.    The Defendant and Mohamed Abdullah traveled on the Begin road back and forth several times looking for a single Israeli vehicle with the aim of carrying out the planned shooting attack against it with the aim of causing the deaths of the occupants of the vehicle.

[Stamp] P 6: 49

13

11. At about 11:35 p.m., while driving northward, in the last tunnel in their direction of travel, the Defendant and Mohamed Abdullah noticed a Honda Accord, license no. 1103217, traveling northward on the Begin Road. The occupants of the Honda were Tonie Amiel, Pini Maimon and Pazit Maimon.

12. Mohamed Abdullah overtook the above mentioned Honda. While Mohamed Abdullah drove parallel to the above mentioned Honda, the Defendant fired a single round from the MP-5 submachine gun that he was carrying at the occupants of the Honda, with the intent of causing their deaths. The bullet that was fired by the Defendant did not hit the above mentioned Honda.

13. After carrying out the said shooting attack, the Defendant and Mohamed Abdullah continued their journey towards Highway No. 9, which connects the Ramot neighborhood to the French Hill neighborhood.

14. The Defendant and Mohamed Sami Ibrahim Abdullah carried out the shooting attack as described above; the two continued to travel in the Mazda towards Highway No. 9, which connects the Ramot neighborhood to the French Hill neighborhood, with the aim of reaching Beit Hanina from there continuing to Ramallah.

15. During this journey, the Defendant, at the request of Mohamed Abdullah, checked the function of the MP-5 submachine gun, which he was holding, and also fired several rounds into the air.

16. During the journey on the above mentioned Highway No. 9, at about 11:45 p.m., the Defendant and Mohamed Abdullah noticed a Skoda, license no. 6567709, which was traveling on Highway No. 9 towards French Hill. Malka Cohen and Pinchas Cohen were traveling in this Skoda.

17. The Defendant and Mohamed Abdullah decided to carry out a shooting attack at the above mentioned Skoda and cause the deaths of its occupants. Mohamed Abdullah, who, as stated, was driving the Mazda, overtook the Skoda.

18. While Mohamed Abdullah drove parallel to the above mentioned Skoda, the Defendant fired a number of rounds from MP-5 submachine gun at the above mentioned Skoda with the aim of causing the deaths of the occupants of the Skoda.

19. A number of bullets that were fired by the Defendant hit the Skoda. Two bullets that were fired by the Defendant hit Pinchas Cohen and another bullet hit Malka Cohen.

[Stamp] P 6: 49 [continued]

14

20. Pinchas Cohen was moderately injured by gunshot wounds from two bullets in his abdomen, while Malka Cohen, who was 28 weeks pregnant, was moderately injured by a gunshot wound from a bullet to her head.

21. After carrying out the said shooting attack, the Defendant and Mohamed Abdullah continued to drive towards French Hill and from there they reached New Beit Hanina. There, the Defendant and Mohamed Abdullah parked their vehicle and contacted Hussam Akel Rajb Shahada and Firas Sadak Mohammed Ghanem (known as "al Hittawi") by telephone; they arrived at the site in the Isuzu belonging to Firas Ghanem in order to pick up Mohamed Moslah and Mohamed Abdullah, according to the planning set forth in the previous count of indictment.

22. The Defendant and Mohamed Abdullah concealed the above mentioned MP-5 submachine gun in the Isuzu and got into the Isuzu. The Defendant and his three collaborators tried to return from Jerusalem to Ramallah, but were unable to do so because of IDF and police checkpoints. The Defendant and his above mentioned collaborators stayed to sleep overnight in the home of Yasser Abu Alhatib, a friend of Hussam Shahada, in New Beit Hanina in Jerusalem.

23. On the following day, October 4, 2001, Firas Ghanem transported the Defendant in his Isuzu to Ramallah.

Prosecution Case 242/02 Amended                6

[Stamp] P 6: 49 [continued]

**Ninth count: (Detailed Incident 39/02 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 15, 2002, or thereabouts, caused the intentional death of another person, as follows:

1.  On January 14, 2002, Raed Karmi, who was a senior military operative in the Tanzim Fatah Organization, which is an illegal organization, was killed. Following the death of the above mentioned Raed Karmi, the head of the Tanzim Fatah in the area, Marwan Barghouti, pitched a mourning tent in Albira.

2.  On January 15, 2002, the Defendant came to the above mentioned mourning tent and met Mohamed Sami Ibrahim Abdullah, Firas Sadak Mohammed Ghanem (known as "al Hittawi"), Tarek Malhi A-Nuf and Zidan Mahareb Al Badawi and Ahmed Barghouti (known as "Al Faransi"), the bodyguard of the above mentioned Marwan Barghouti.

3.  The above mentioned Ahmad Barghouti informed the Defendant and his above mentioned collaborators that Marwan Barghouti, the head of the Tanzim Fatah in the Area, asked for the Defendant and his collaborators to carry out an attack immediately to avenge the death of the above mentioned Raed Karmi and to cause the deaths of Israeli civilians. For the purpose of carrying out the attack, Ahmad Barghouti provided the Defendant with an MP-5 submachine gun and a "16" pistol.

4.  The Defendant and his above mentioned collaborators, in the above mentioned mourning tent, decided to carry out an attack that evening at the Givonim fuel station, located on Highway 443 near the entrance to Givat Ze'ev and to cause the deaths of Israeli civilians.

5.  In the evening hours of that day, January 15, 2002, Mohamed Abdullah left the above mentioned mourning tent with Firas Ghanem. Mohamed Abdullah and Firas Ghanem traveled in an Isuzu pickup belonging to Firas Ghanem to the above mentioned fuel station with the aim of carrying out the planned shooting attack there. The Defendant, armed with a "14" pistol; Zidan, armed with a "16" pistol; and Tarek A-Nuf, armed with an MP-5 submachine gun. The three drove in a light brown Mazda towards the above mentioned fuel station with the aim of carrying out the planned attack there.

[Stamp] P 6: 50

16

6.  The Defendant and all of his above mentioned collaborators reached an earth mound that blocked the exit from the villages Bir Nabala and Aljib to Highway 443, about 100 meters from the Givonim fuel station. The above mentioned collaborators of Ahmad Barghouti parked their vehicles, the Isuzu and Mazda, facing the village Bir Nabala so that they could escape from the site immediately after carrying out the planned attack.

7.  The Defendant, armed with a "14" pistol; Zidan, armed with a "16" pistol; and Tarek A-Nuf, armed with an MP-5, alighted form the vehicles and walked to the above mentioned fuel station with the aim of carrying out the planned shooting attack and causing the deaths of Israeli civilians there.

8.  Mohamed Abdullah and Firas Ghanem stayed in the above mentioned vehicles in order to make sure that no IDF patrol or other people would come to the site. Mohamed Abdullah sat in the driver's seat of the Mazda so that he could immediately extract his three collaborators who had left to carry out the planned attack immediately after carrying out the attack.

9.  The Defendant and Tarek A-Nuf stood at the entrance to the above mentioned fuel station.

10. After a few minutes, at about 7:45 p.m., the Defendant and Tarek A-Nuf noticed a white Fiat Uno, license no. 6424905, entering the above mentioned fuel station, which was driven by the late Yoela Chen, and Rachel Eini was sitting next to her.

11. The Defendant and Tarek A-Nuf approached the above mentioned Fiat with the aim of carrying out a shooting attack against it and causing the deaths of the vehicle occupants. The occupants of the Fiat noticed the pistol that the Defendant was holding and started to shout and sound the horn. The Defendant put the pistol into his trousers and told the vehicle occupants not to fear.

12. At this stage, Tarek A-Nuf opened fire with bursts from the MP-5 submachine gun at the occupants of the Fiat with the intent of causing their deaths. Then, the Defendant took out his pistol again and started to shoot at the vehicle's occupants, with the intent of causing their deaths.

13. The Defendant and Tarek A-Nuf fired a large number of rounds at very close range at the late Yoela Chen, and at Rachel Eini, who were in the above mentioned Fiat.

14. Approximately 28 bullets, which were fired by the Defendant and Tarek A-Nuf, hit the front windshield of the vehicle; a number of bullets hit the side of the vehicle and the driver's door window.

[Stamp] P 6: 50 [continued]

17

15. During the commission of the described shooting attack, Zidan, who was standing a short distance behind the Defendant and Tarek A-Nuf, served as a lookout and spotter.

16. Firas Ghanem, immediately after hearing the gunfire, drove from the site with his Isuzu in order to inform his collaborators whether there were checkpoints on the way to Ramallah.

Prosecution Case 242/02 Amended          7

[Stamp] P 6: 50 [continued]

17. The Defendant, Tarek A-Nuf and Zidan, after having carried out the shooting attack as set forth above, ran back to the Mazda in which Mohamed Abdullah was waiting. After the three got into the vehicle, Mohamed Abdullah drove them to Ramallah.

18. In Ramallah, the Defendant, Tarek A-Nuf, Mohamed Abdullah and Zidan met Firas Ghanem.

19. Thereafter, the Defendant met Ahmad Barghouti in Ramallah, returned the MP-5 submachine gun and the vehicle to him and reported the attack that he had carried out as described above.

20. By his acts described above, the Defendant caused the intentional death of **the late Yoela Chen**, who died at the scene as a result of gunshot wounds from bullets that were fired by the Defendant and Tarek A-Nuf.

**Tenth count: (detailed incident 39/02 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 15, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, at about 7:45 p.m., in the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Rachel Eini, who was traveling in a white Fiat Uno vehicle, license No. 6424905, described in the previous count of the indictment. One of the bullets that were fired by the Defendant and Tarek Malhi A-Nuf, as described in the previous count of the indictment, hit Rachel Eini in the head and two other bullets hit her left shoulder, injuring her moderately.

**Eleventh count: (Detailed Incident 3135/00 Binyamin)**

**Nature of the offense:** Undermining the security of the Area, an offense pursuant to Section 53 (A) (4) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 6: 51

19

**Details of the offense:** The above mentioned Defendant, in the Area, on October 12, 2000, or thereabouts, committed an act or default constituting an undermining or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory, institute or equipment used or capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the IDF, as follows:

1. On October 12, 2000, at about 10:00 a.m., two IDF soldiers, the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz, mistakenly entered the city of Ramallah, which was under the control of the Palestinian Authority. Because the two above mentioned IDF soldiers traveled in a vehicle bearing Israeli license plates, the Palestinian policemen serving at the Palestinian police station in Ramallah noticed them and stopped them.

2. After the Palestinian policemen understood that these were two IDF soldiers, they took away the guns and personal belongings of the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz, took them out of the vehicle in which the two had travelled and brought them to the Palestinian Police station in Ramallah. In the police station, the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were questioned about their arrival in Ramallah and were also beaten by the Palestinian police officers who were at the site.

3. Near the Palestinian Police station in Ramallah, there was a funeral procession passing by at the time, in which the Defendant participated, and the rumor spread that there were two Israeli soldiers inside the police station. The people who participated in the funeral then went to the police station with the aim of murdering the two IDF soldiers who were there. The Defendant himself continued with the funeral procession.

4. The riotous crowd, after having reached the Palestinian police station in Ramallah, destroyed and torched the vehicle of the late Corporal Vadim Nurzhitz, which was left outside the above mentioned police station.

5. The crowd wanted to enter the above mentioned police station with the aim of murdering the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz.

[Stamp] P 6: 51 [continued]

20

6. The crowd tried to reach the door of the above mentioned police station, but was stopped there by Palestinian police officers, who asked the crowd not to force its way into the station, promising to take the two IDF soldiers outside the police station, so that the crowd could then murder them.

Prosecution Case 242/02 Amended                    8

[Stamp] P 6: 51 [continued]

7. Despite everything, a large number of rioters succeeded in entering the above mentioned police station while carrying clubs, knives and iron pipes.

8. The rioters who succeeded in entering the above mentioned police station reached the room on the second floor in which the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were kept at that time. The rioters, with the Palestinian police officers who were at the site, beat with their hands, kicked and struck with blunt instruments and stabbed with sharp implements the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz.

9. The above mentioned rioters threw the late Corporal Vadim Nurzhitz, who was severely injured, out of the window of the above mentioned room on the second floor of the said police station, into the yard of the station.

10. A large number of rioters came to the late Corporal Vadim Nurzhitz, with the aim of murdering him. The crowd took the late Corporal Vadim Nurzhitz to a street outside the yard of the above mentioned police station, where the crowd of rioters continued to beat the late Corporal Vadim Nurzhitz all over his body.

11. At this stage, people who were in the crowd of rioters dragged the late Corporal Vadim Nurzhitz to Manara Square.

12. The Defendant was in Manara Square, armed with an M-16 assault rifle. The above mentioned Defendant fired a number of rounds using the above mentioned assault rifle into the late Corporal Vadim Nurzhitz. The crowd of people who were at the place lifted the Defendant onto their shoulders in view of the act that he had carried out before their eyes as set forth above.

13. Thereafter, the people who were at the site poured gasoline onto the late Corporal Vadim Nurzhitz and set him on fire.

14. As a result of the blows and stab wounds that the mass of rioters caused, the IDF soldiers the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were killed.

[Stamp] P 6: 52

**Twelfth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2000 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, during the period set forth, near Ayosh Junction, on three different occasions, fired using an M-16 assault rifle that he had obtained from Zidan Almahrab (Albadawi) at IDF soldiers who were at the site, with the intent of causing the deaths of the above mentioned IDF soldiers.

With the Defendant were many other people, who also shot at the above mentioned IDF soldiers, with the aim of causing their deaths.

**Thirteenth count: (Detailed Incident 5/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 1, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, met Tarek Malhi A-Nuf and Zidan Almahrab. Tarek Malhi and Zidan Almahrab traveled in a white Seat, bearing Israeli license plates. Tarek Malhi and Zidan Almahrab were each armed with a pistol. Tarek Malhi and Zidan Almahrab suggested to the Defendant to carry out a shooting attack at Israeli vehicles in the Kalandia area with the intent of causing the deaths of Israeli civilians.

2. The Defendant agreed to the above mentioned suggestion. The Defendant got into the above mentioned Seat and sat in the driver's seat. The Defendant drove the Seat from Ramallah towards Kalandia in order to carry out the planned shooting attack there. Tarek Malhi and Zidan Almahrab traveled with the Defendant in the above mentioned Seat, armed with the above mentioned pistols.

[Stamp] P 6: 52 [continued]

3.  The Defendant and his above mentioned collaborators traveled to Kalandia Junction and there turned left to the road leading to Adam Junction. After traveling about 500 meters, the Defendant and his above mentioned collaborators noticed a white Renault Kangoo, license no. 4424829, in which Ze'ev Adar and Avraham David were traveling from the direction of Atarot to the direction of the settlement Adam.

4.  The Defendant and his above mentioned collaborators decided to carry out a shooting attack at the above mentioned Renault vehicle with intent of causing the deaths of is occupants.

Prosecution Case 242/02 Amended                9

[Stamp] P 6: 52 [continued]

24

5.   The Defendant overtook the Renault, and while the Defendant was traveling parallel to the Renault, Tarek Malhi and Zidan Almahrab opened fire, using the pistols that they were carrying, at the Renault with the aim of causing the deaths of the occupants of the Renault.

6.   A number of bullets that had been fired by the collaborators of the Defendant hit the Renault.

7.   One bullet, which was fired by the above mentioned collaborators of the Defendant, hit Avraham David, who was traveling in the above mentioned Renault, in the upper left back, wounding him.

8.   Immediately after carrying out this shooting attack, the Defendant and his above mentioned collaborators fled to Ramallah.

**Fourteenth count: (Detailed Incident 457/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on February 25, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1.   The above mentioned Defendant, at the time set forth, met Muhannad Abu Halawa, Tarek Malahi (A-Nuf) and Ahmed Taleb Mustafa Barghouti, the bodyguard of Marwan Barghouti, the head of the Tanzim Fatah, in Ramallah.

2.   The Defendant and his above mentioned collaborators discussed the situation in the Area. Ahmad Barghouti asked the Defendant and his above mentioned collaborators what could be done to improve the situation. The Defendant and his named collaborators asked Ahmad Barghouti to provide them with a vehicle and weapons and they would carry out an attack against Israeli civilians with the aim of causing their deaths.

3.   Ahmad Barghouti consented to the above mentioned proposal. Ahmad Barghouti delivered to the Defendant and his above mentioned collaborators a 2001 model gray Volkswagen Bora bearing Israeli license plates, and an MP-5 submachine gun with a magazine and cartridges.

[Stamp] P 6: 53

4.  The Defendant, Muhannad Abu Halawa and Tarek Malahi (A-Nuf) traveled in the above
    mentioned vehicle, armed with the above mentioned MP-5 submachine gun and a
    Kalashnikov assault rifle. The Defendant and his above mentioned collaborators reached
    the Atara Bridge area.

5.  At about 1:15 p.m., the Defendant and his above mentioned collaborators noticed a GMC
    Vandura, license no. 3082518, which Yosef Cohen was driving, this vehicle leaving the
    settlement Ateret and turning towards the Atara Bridge.

6.  The Defendant and his above mentioned collaborators decided to carry out a shooting
    attack against the above mentioned GMC with the intent of causing the deaths of its
    occupants.

7.  The Defendant and his above mentioned collaborators decided to wait until the Citroen that
    was driving in front of them would pass the GMC, and then overtake the GMC
    [themselves] and carry out the planned shooting attack against it.

8.  In the above mentioned Citroen were travelling William Sameh Firas el Khatib (Rimawi),
    Rebhi Zuhdi Alamsar (Rimawi) and Akram Abdullah Mohamed Qassam (Azawi), armed
    with two Kalashnikov assault rifles and an M-16 assault rifle. The above mentioned
    occupants of the Citroen opened fire, using the weapons mentioned above, at the above
    mentioned GMC with the intent of causing the deaths of its occupants. Twenty-nine bullets
    that were fired by these individuals hit the above mentioned GMC. Three bullets hit the
    head and neck of Yosef Cohen, who was driving the above mentioned GMC. As a result of
    the impact of these bullets and the impact of fragments throughout his body, Yosef Cohen
    was severely injured.

9.  After the Defendant and his above mentioned collaborators noticed that the GMC was hit
    and swerved off the road, and the driver of the vehicle was injured as a result of the
    shooting attack that was carried out from the Citroen that was driving before them, the
    Defendant and his above mentioned collaborators fled back to Ramallah.

10. In Ramallah, the Defendant and his above mentioned collaborators returned the above
    mentioned Volkswagen and the above mentioned MP-5 submachine gun to Ahmad
    Barghouti. The Defendant, Muhannad Abu Halawa and Tarek Malahi (A-Nuf) reported to
    Ahmad Barghouti that they had carried out a shooting attack using the above mentioned
    vehicle and weapons and that a Jewish driver had been wounded as a result.

Prosecution Case 242/02 Amended            10

[Stamp] P 6: 53 [continued]

**Fifteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in mid-2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, met Jad Ibrahim Musa Maala and Nasser Mohamed Yusef Naji (Abu-Hamid) in Ramallah. The Defendant and his above mentioned collaborators decided to carry out a shooting attack in the Atarot area, during which they would shoot at an Israeli vehicle while driving by it with the intent of causing the deaths of Israeli civilians.

The Defendant and his above mentioned collaborators departed from Ramallah by vehicle, which the Defendant drove. Next to the Defendant sat Nasser Abu-Hamid, armed with a Sig-Sauer pistol and an M-16 assault rifle; and in the rear seat sat Jad Maala, armed with a "14" pistol.

The Defendant and his above mentioned collaborators traveled to Atarot. There, the Defendant and his above mentioned collaborators noticed a GMC with Israeli license plates. The Defendant and his above mentioned collaborators decided to travel after the above mentioned GMC with the aim of overtaking it and carrying out a shooting attack against it with the intent of causing the deaths of the occupants in the GMC. But Jad Maala said that the driver of the GMC was an Arab and therefore the Defendant and his above mentioned collaborators did not carry out the planned shooting attack and returned to Ramallah.

**Sixteenth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P 6: 54

27

1. The Ahmad Taleb Mustafa Barghouti, the bodyguard of the head of the Tanzim Fatah, Marwan Barghouti – in January 2002, decided that he wanted to carry out a suicide attack inside the territory of the State of Israel in order to cause the deaths of as many Israeli civilians as possible.

2. Ahmad Barghouti telephoned Nasser Mahmoud Aweis, a senior operative of the Tanzim Fatah, which is an illegal organization, in Nablus. Ahmad Barghouti asked Nasser Aweis to send him a person who would be prepared to carry out a suicide attack. Ahmad Barghouti told Nasser Aweis that he himself would see to bringing the suicide terrorist into Jerusalem in order to carry out a suicide attack there.

3. A few days later, on January 22, 2002, in Ramallah, Ahmad Barghouti met Sa'id Ramadan, a resident of Kfar Tal in the Nablus district, who informed Ahmad Barghouti that he had been sent by Nasser Aweis for the purpose of carrying out a suicide attack.

4. Ahmad Barghouti called the Defendant and asked the latter to come to him.

5. The Defendant met Ahmad Barghouti and the above mentioned Sa'id Ramadan that day in Ramallah. Ahmad Barghouti introduced the two to each other. The Defendant and Mohamed Masalah took Sa'id Ramadan to a barber shop to have his hair cut before carrying out the planned suicide attack.

6. Thereafter, the Defendant and Ahmad Barghouti called Firas Sadak Mohammed Ghanem (known as "Hittawi") and asked the latter to transport a suicide terrorist from Ramallah to Jerusalem in order for the suicide terrorist to carry out a suicide attack in Jerusalem and to cause the deaths of as many Israeli civilians as possible.

7. Firas Ghanem came to Ramallah with Mohamed Sami Ibrahim Abdullah after the latter agreed to participate in driving the suicide terrorist from Ramallah to Jerusalem. Firas Ghanem came to the meeting in his Isuzu pickup with Israeli license plates.

8. According to the instruction of Ahmad Barghouti, Firas Ghanem and Mohamed Abdullah traveled in the above mentioned Isuzu from Ramallah to Jerusalem in order to find a way that had no police or IDF checkpoints, with the aim of driving the suicide terrorist, who would carry out the planned attack in Jerusalem later, using the same route.

Prosecution Case 242/02 Amended          11

[Stamp] P 6: 54 [continued]

9.  Mohamed Abdullah and Firas Ghanem traveled from Ramallah via Rafat and arrived at the Atarot Industrial Zone, where the two returned to the Jerusalem-Ramallah main road and traveled left to the junction leading to the Rama Camp, where they turned right and traveled to Adam Junction. At Adam Junction the two turned right and traveled to Hizma Junction, where they turned right and entered Anta. Through Anta, they arrived at French Hill Junction, where the two turned right and returned to Ramallah. Mohamed Abdullah and Firas Ghanem saw that in the manner that they were traveling, the suicide terrorist could be driven to Jerusalem without being stopped at police or IDF checkpoints.

10.  At the same time, in Ramallah, the Defendant and Ahmad Barghouti took the above mentioned Sa'id Ramadan to pray and also bought for the above mentioned Sa'id Ramadan food, new clothes and shoes. Ahmad Barghouti paid for these purchases the amount of NIS 1,200, with his own money. The Defendant and Ahmed Barghouti took Sa'adi [Translator's note: as written] Ramadan to the home of the Defendant's brother in order for him to change his clothes.

11.  The Defendant, at the instruction of Ahmad Barghouti, brought an M-16 assault rifle and three magazines for the said assault rifle filled with cartridges, two of which were connected with a magazine coupler.

12.  According to the plan of Ahmad Barghouti and his above mentioned collaborators, Sa'id Ramadan was to arrive in Jerusalem and there shoot at Israeli civilians with the intent of causing their deaths until he himself would be killed by the Israeli security forces.

13.  Thereafter, on the same day, the Defendant, Ahmad Barghouti, and Sa'id Ramadan met Mohamed Abdullah and Firas Ghanem in the area of the City Inn Hotel in Albira.

14.  Ahmad Barghouti explained to Mohamed Abdullah and to Firas Ghanem that the above mentioned Sa'id Ramadan was the suicide terrorist whom they had to drive to Jerusalem in order for him to carry out a suicide attack by shooting at Israeli civilians with the aim of causing the deaths of as many Israeli civilians as possible.

15.  Mohamed Abdullah and Firas Ghanem hid the above mentioned M-16 assault rifle and magazines, which the Defendant had brought for carrying out the planned suicide attack, in the above mentioned Isuzu.

[Stamp] P 6: 55

29

16. The Defendant and Ahmad Barghouti wished Sa'id Ramadan luck and the three traveled to Jerusalem. The Defendant told Mohamed Abdullah and Firas Ghanem that they would have to take Sa'id Ramadan to carry out the suicide attack in any place of their choosing in Jerusalem.

17. Firas Ghanem drove the Isuzu, Sa'id Ramadan sat in the seat next to the driver's seat and Mohamed Abdullah sat in the back seat.

18. Mohamed Abdullah and Firas Ghanem transported Sa'id Ramadan to Jerusalem on a route that they had inspected earlier that day as described above.

19. In Jerusalem, Mohamed Abdullah and Firas Ghanem traveled to Sheikh Jarah Street. There they took out the M-16 assault rifle and magazines that were hidden inside the vehicle and handed them over to Sa'id Ramadan. Mohamed Abdullah moved to the seat next to the driver's seat while Sa'id Ramadan moved to the back seat, holding the M-16 assault rifle and the magazines in his hands.

20. Mohamed Abdullah and Firas Ghanem drove Sa'id Ramadan to Hanevi'im Street.

21. During the journey, Sa'id Ramadan complained to Mohamed Abdullah and Firas Ghanem that his new shoes, which Ahmad Barghouti had purchased for him for the attack, were too small and tight. Mohammed Abdullah took off his Reebok shoes and handed them over to Sa'id Ramadan, saying "go up to heaven with Reebok shoes".

22. Upon reaching the junction of Strauss and Hanevi'im Streets, Mohammed Abdullah and Firas Ghanem stopped the Isuzu.

23. Mohammed Abdullah and Firas Ghanem told Sa'id Ramadan to go by foot to Jaffa Street and to start to shoot where he would see many people.

24. After Sa'id Ramadan got out of the vehicle with the M-16 assault rifle and the ammunition, Muhammad Abdullah and Firas Ghanem drove away from the site in the Isuzu, left through the Musrara neighborhood to Highway No. 1 and from there drove via the main road to Ramallah.

25. Sa'id Ramadan, a few minutes after having gotten out of Mohamed Abdullah and Firas Ghanem's vehicle, arrived at Jaffa Street.

[Stamp] P 6: 55 [continued]

30

26.  At about 4:20 p.m., while standing opposite house no. 47 in Jaffa Street or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he was carrying, shouted "Allahu Akbar" and discharged automatic gunfire indiscriminately at the people who were in Jaffa Street, at the bus stop at the site, aboard the Egged bus no. 27 that was this stop at the time and at the people who were in the stores nearby, with the aim of causing the deaths of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the site towards the parking lot in Harav Kook Street. There, Sa'id Ramadan changed magazines and continued to shoot at civilians with the aim of causing their deaths. Sa'id Ramadan fired more than 38 cartridges with the M-16 assault rifle that he carried. Sa'id Ramadan continued to shoot at civilians until he was killed by civilians and police officers who arrived at the site.

Prosecution Case 242/02 Amended            12

[Stamp] P 6: 55 [continued]

27. By his acts described above, the above mentioned Defendant caused the intentional death of the late Ora (Svetlana) Sandler, who died as a result of gunshot wounds caused by the bullets that were fired by Sa'id Ramadan.

28. After Ahmad Barghouti learned about the execution of the above mentioned attack, Ahmad Barghouti approached Ali Faraj Barghouti and received from the latter the amount of 1,000 U.S. dollars for executing the said attack. Ahmad Barghouti gave the Defendant, Mohamed Abdullah and Firas Ghanem 100 U.S. dollars each for their participation in the execution of this attack.

**Seventeenth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the previous count of the indictment, by his actions described in the previous count of the indictment, caused the intentional death of the late Sarah Hamburger, who died of gunshot wounds from the bullets that were fired by Sa'id Ramadan using an M-16 assault rifle, which the Defendant had provided to him.

**Twenty eighth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the sixteenth count of the indictment, by his actions described in the sixteenth count of the indictment, attempted to cause the intentional death of as many civilians as possible who at the time were in and near Jaffa Street. As a result of the gunfire that was discharged by Sa'id Ramadan at the site, using an M-16 assault rifle that the Defendant had provided, **more than 45 civilians were injured.**

[Stamp] P 6: 56

32

Witnesses of the prosecution:

1.  First Sergeant Yaakov Barazani, Badge No. 99106, Judea Investigations Office [person who recorded the Defendant's statement on February 25, 2002]

2.  First Sergeant Marco Dahan, Badge No. 568394, Judea Investigations Office [person who recorded the Defendant's statement on March 19, 2002]

3.  Master Sergeant Moshe Levi, Badge No. 902845643, Judea Investigations Office [person who recorded the Defendant's statement on April 18, 2002]

4.  Mohamed Sami Ibrahim Abdullah, Identity No. 979469954. (detainee) (Prosecution Case 241/02)

5.  Hussam Akel Rajb Shahada, Identity No. 975564733. (detainee) (Prosecution Case 243/02)

6.  Haitham Almutfak Hamdan, Identity No. 906934823. (detainee) (Prosecution Case 265/02)

7.  Ahmed Taleb Mustafa Barghouti, Identity No. 994466860 (detainee) (Prosecution Case 444/02)

8.  Nasser Mohamed Yusef Naji (Abu-Hamid), Identity No. 923918882 (detainee)

9.  Amir Hassan Sa'id Abu Radaha, Identity No. 954263042. (detainee) (Prosecution Case 356/02)

10. William Sameh Firas el Khatib (Rimawi), Identity No. 904383452. (detainee) (Prosecution Case 322/02)

11. Akram Abdullah Mohamed Qassam, Identity No. 900959677. (detainee)

---

**Detailed Incident 3135/00 Binyamin**

12. Ziad Hamuda Yaakub Hamuda, Identity No. 902924117. (detainee) (Prosecution Case 353/00)

13. Raed Mahmoud Jamil Shaikh, Identity No. 900248998. (detainee) (Prosecution Case 633/00)

14. Mohamed Hisham Ahmed-Hassan Nuara, Identity No. 921746111. (detainee) (Prosecution Case 561/01)

15.  Mohamed Isa Yusef Jaber, Identity No. 943584052. (detainee) (Prosecution Case 573/01)

16.  Abed Aziz Yusef Mustafa Salah, Identity No. 911615599. (detainee) (Prosecution Case 621/01)

17.  Master Sergeant George Hasper, Badge No. 1021658, Binyamin Station. [statement]

18.  Avraham Levi, Identity No. 036360642. (details held by the prosecution) [statement]

Prosecution Case 242/02 Amended          13

[Stamp] P 6: 56 [continued]

34

19. Mark Gutkin, M.D., license no. 72365, Hadassah Ein Kerem Hospital, Jerusalem [submitter physician's certificate dated July 13, 2001] (will be summoned upon explicit demand of the defense only).

20. Chen Kugel, M.D., the National Center of Forensic Medicine. [submitter of expert opinion] (will be summoned upon explicit demand of the defense only).

---

**Detailed Incident 5/01 Binyamin**

21. First Sergeant Shabi Ovadia, Badge No. 560441, Yehuda Forensic Identification. [submitter of visit/seizure and marking report & action/seizure and marking report & photograph tables].

22. Ze'ev Adar, Identity No. 00260114 (details held by the prosecution [traveled in the vehicle that was damaged]

23. Avraham David, Identity No. 033781949 (details held by the prosecution) [injured in the attack]

---

**Detailed Incident 234/01 Jerusalem Special Duties Department.**

24. Herman Spak, Serial No. 6961290, IDF. (details held by the prosecution) [statement]

25. Arie Rakah, Identity No. 032271918. (details held by the prosecution) [statement]

26. Yuval Lev, Identity No. 05405709. (details held by the prosecution) [statement]

27. Superintendent Lior Nedivi, Badge No. 952127, Forensic Identification – Zion Station. [submitter of seizure and marking report]

28. Superintendent Ofer Chelouche, Badge No. 916718, Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of vehicle inspection report]

29. Master Sergeant Avi Barkman, Badge No. 972762, Investigations - Zion Station. [submitter of exhibit cover form]

[Stamp] P 6: 57

35

30. Sergeant First Class Daniel Turgeman, Badge No. 1013796, the Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

31. Superintendent Uri Ben-Tuvim, Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 555/01] (will be summoned upon explicit demand of the defense only)

32. David Hazan, M.D., license no. 29086, IDF. [statement - pronouncement of the death of the late Elazar Akiva Fashkos]

33. David Moral, M.D., license no. 29052, Clalit Healthcare Service - Jerusalem. [statement & submitter of death notice]

---

**Detailed Incident 457/01**

34. First Sergeant Eli Suto, Serial No. 588038, Binyamin Station. [submitter of action report]

35. First Sergeant Moshe Lavi, Badge No. 903260, Binyamin Station. [submitter of memorandum – GMC & drawing of incident scene & seizure and marking report & exhibit cover form]

36. First Sergeant Shabi Ovadia, Badge No. 560441, Yehuda Forensic Identification. [submitter of photograph tables & memorandum]

37. Superintendent Nissim Mizrachi, Badge No. 926998, Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of photograph tables & vehicle inspection report]

38. Yosef Cohen, Identity No. 069397198. (details held by the prosecution) [wounded in the shooting attack]

39. Avi Ben-Shimol, Identity No. 031310677. (details held by the prosecution) [arrived first at the scene of the attack]

40. Isabella Schwartz, M.D., license no. 28684, Hadassah Hospital - Mount Scopus, Jerusalem. [submitter of physician's certificate - interim summary] (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 57 [continued]

**Detailed Incident 2159/01 Binyamin**

41.  Master Sergeant Ronen Amar, Badge No. 956813, Binyamin Station. [submitter of action report]

42.  First Sergeant Class Shabi Ovadia, Badge No. 560441, Binyamin Station. [submitter of photograph tables & seizure and marking report].

43.  Superintendent Ofer Chelouche, Badge No. 916718, Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of initial incident scene visit report - seizure of cartridge cases and bullet fragments]

44.  Master Sergeant Chaim Toledano, Badge No. 1004332, Binyamin Station. [submitter of memorandum - exhibit chain & exhibit cover form & crime scene visit report]

45.  Sergeant First Class Daniel Turgeman, Badge No. 1013796, Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

46.  Superintendent Avi Kofman, Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 4238/01] (will be summoned upon explicit demand of the defense only)

47.  Vladimir Goler, M.D., license no. 26163, Magen David Adom ambulance service - Lod station. [submitter of medical reports from scene & death notice & statement]

48.  Nir Alon, M.D., Identity No. 031849201, IDF. [statement]

49.  Ricardo Nachman, M.D., National Institution of Forensic Medicine. [submitter of two expert opinions] (will be summoned upon explicit demand of the defense only)

50.  Zion Sviri, Identity No. 000048850 (details held by the prosecution) [identification of victims]

Prosecution Case 242/02 Amended          14

[Stamp] P 6: 57 [continued]

37

**Detailed Incident 7915/01 Zion**

51. Master Sergeant Zion Sasson, Badge No. 957068, Zion Station. [submitter of action report]

52. Superintendent Lior Nedivi, Badge No. 952127, Forensic Identification - Zion Station. [submitter of initial scene visit report & photograph tables]

53. Superintendent Yoram Saar, Zion Station. [finder of cartridge cases at the incident scene - chain of evidence]

54. Superintendent Ami Leifer, Badge No. 959841, Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of vehicle inspection report -- seizure of bullet fragments]

55. Cadet Adva Malka, Badge No. 1049089, Zion Station Special Duties Department. [submitter of exhibit cover form]

56. Sergeant Major Ziva Hoter, Badge No. 512699, Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

57. Superintendent Avi Kofman, Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 4239/01] (will be summoned upon explicit demand of the defense only)

58. Eyal Yitzhiak, M.D., license no. 31004, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Moshe Weiss] (will be summoned upon explicit demand of the defense only)

59. Yaakov Globerman, M.D., Hadassah Ein Kerem Hospital, Jerusalem. [submitter of death certificate of the late Meir Weisshaus] (will be summoned upon explicit demand of the defense only)

60. Moshe Weiss, Identity No. 024001505. (details held by the prosecution) (severely injured in the attack)

61. Yaffa Vaknin, Identity No. 058857863. (details held by the prosecution) (eyewitness)

[Stamp] P 6: 58

**Detailed Incident 481/01 Zion**

62. Tonie Amiel, Identity No. 032441040. (details held by the prosecution) (driver of the Honda)

63. Pini Maimon, Identity No. 025759762. (details held by the prosecution) (passenger in the Honda)

64. Pazit Maimon, Identity No. 040128084. (details held by the prosecution) (passenger in the Honda)

---

**Detailed Incident 8379/01 Zion**

65. Superintendent Lior Nedivi, Badge No. 952127, Forensic Identification - Zion Station. [submitter of initial scene visit report & seizure and marking report]

66. Master Sergeant Gavriel Abed, Identity No. 958736, Special Duties Department - Zion Station. [submitter of exhibit cover report]

67. Superintendent Ami Leifer, Badge No. 959841, Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of vehicle inspection report - seizure of bullet fragments]

68. Cadet Dror Avram, Badge No. 1039080, Special Duties Department - Zion Station. [submitter of exhibit cover report]

69. Zion Sadeh, Identity No. 029505724, Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

70. Sergeant Major Yossi Ben Israel, Badge No. 44771, Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

71. Superintendent Avi Kofman, Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 4723/01] (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 58 [continued]

39

72. Sigal Shazu, Zion Station. [finding of cartridge cases in the field – chain of evidence]

73. Malka Cohen, Identity No. 038791386. (details held by the prosecution) (injured in the attack)

74. Pinchas Cohen, Identity No. 038348256. (details held by the prosecution) (injured in the attack)

75. Ohav Ami Yechiel, Identity No. 059214320. (details held by the prosecution) (eyewitness - cared for casualties)

76. Yair Eden, M.D., license no. 33272, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Pinchas Cohen] (will be summoned upon explicit demand of the defense only)

77. Menachem Gross, M.D., license no. 30416, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Malka Cohen] (will be summoned upon explicit demand of the defense only)

---

**Detailed Incident 39/02 Binyamin**

78. Inspector Michael Malka, Badge No. 1040320, Patrol Unit - Binyamin Station. [submitter of action report]

79. First Sergeant Kobi Sabag, Badge No. 56494, Binyamin Station. [submitter of investigation memorandum / seizure and marking]

80. Sergeant Major Eli Kojeman, Badge No. 46951, Yehuda Forensic Identification. [submitter of photograph tables & collected cartridge cases from the incident scene]

81. Superintendent Ami Leifer, Badge No. 959841, Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of photograph tables & vehicle inspection report]

82. Master Sergeant Meir Vaanunu, Badge No. 1018332, Binyamin Station. [submitter of exhibit cover report]

[Stamp] P 6: 58 [continued]

83.  Sergeant Major Ziva Hoter, Badge No. 512699, Exhibits Office – Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate – receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

84.  Lieutenant Nir Eilon, M.D., license no. 33216, IDF (details held by the prosecution) [statement - pronouncement of the death of the late Yoela Chen & care for the casualty]

Prosecution Case 242/02 Amended                    15

[Stamp] P 6: 58 [continued]

85. Shaul Beit, M.D., license no. 33027, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of physician's certificate - illness summary of Rachel Eini] (will be summoned upon explicit demand of the defense only)

86. Rachel Eini, Identity No. 075966614. (details held by the prosecution) (injured in the attack)

87. Sami Vaknin, Identity No. 027798040. (details held by the prosecution) [statement & sketch] (eyewitness)

88. Nachshon Barashi, Identity No. 05033235 (details held by the prosecution) (identification of the victim)

---

**Detailed Incident 502/02 Zion**

89. Chief Inspector Dror Asraf, Badge No. 942276, Special Duties Department - Zion Station [submitter of memorandum, seizure and marking report]

90. Sergeant Major Yigal Daniel Special Duties Department - Zion Station [submitter of seizure and marking report]

91. Cadet Zvika Reisner, Special Duties Department - Zion Station [submitter of memorandum, seizure and marking report & photographs]

92. Sergeant First Class Zion Tabadi, Badge No. 1043413, Special Duties Department - Zion Station [submitter of action report - finding of magazine coupler]

93. Sergeant Major Asher Levi, Badge No. 47720, Questioning - Zion Station [submitter of seizure and marking report]

94. Benny Azriel, Identity No. 303647598. (details held by the prosecution) (eyewitness - pursued the terrorist)

95. Amed Anidat, Badge No. 739037, Jerusalem Border Guard. (eyewitness - pursued and shot at the terrorist)

96. Shai Cohen, Badge No. 1042043, Patrol Unit 2 - Zion Station. (eyewitness - shot at the terrorist)

[Stamp] P 6: 59

97. Noam Gabai, Identity No. 033121070, Jerusalem Subdistrict Unit. (eyewitness - pursued and shot at the terrorist)

98. Chanan Benaim, Badge No. 1049188, Motorcycle Special Patrol Unit - Shalem Station. (eyewitness - pursued the terrorist, disarmed the terrorist after the terrorist was killed)

99. Genadi (Guy) Melnik, Identity No. 309130540. (details held by the prosecution). (eyewitness – a security guard who was at the site - opened fire and shot the terrorist)

100. Alon Halfon, Badge No. 761775, Detectives - Jerusalem Central Unit. (eyewitness - pursued and shot at the terrorist)

101. Avi Ben-Ami, Badge No. 996140, Detectives - Jerusalem Central Unit. (eyewitness - shot at the terrorist)

102. Chaim Salah, Identity No. 033401019. (details held by the prosecution) (eyewitness - driver of Egged bus who was at the site of the attack)

103. Boris Abtisian, Identity No. 309086171. (details held by the prosecution) (eyewitness)

104. Yekutiel-Israel Alouche, Identity No. 310101647. (details held by the prosecution) (eyewitness)

105. Moshe Maman, Identity No. 60246911. (details held by the prosecution) (eyewitness)

106. Tova Yitzhaki, Identity No. 051270353. (details held by the prosecution) (eyewitness)

107. Mazal Yitzhaki, Identity No. 04330150. (details held by the prosecution) (eyewitness)

108. Yaron Avrahami, Identity No. 640712770. (details held by the prosecution) (eyewitness)

109. Pinchas Bentura, Identity No. 055611230. (details held by the prosecution) (eyewitness)

110. Kfir Kedem, Identity No. 039381249. (details held by the prosecution) (eyewitness – saw the terrorist arriving at the attack site on foot)

111. Yaakov Sandler, Identity No. 307750984. (details held by the prosecution) (identification of the body of the late Ora (Svetlana) Sandler)

112. Dafna Wilner, M.D., license no. 29234, Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Ora (Svetlana) Sandler) (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 59 [continued]

113. Elena Vaslov, M.D., Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Sarah Hamburger) (will be summoned upon explicit demand of the defense only)

<u>An additional list of witnesses with respect to the casualties in the attack in Jaffa Street on January 22, 2002, and medical certificates related to their injury will be delivered during the trial</u>

[Signature]
Michael Kotlik, Captain
Military Prosecutor

Date: January 12, 2003
Reference No.: 242-02 Amended

Prosecution Case 242/02 Amended                16

[Stamp] P 6: 59 [continued]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.  The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P6: 44-59.

2.  I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.  To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P6: 44-59.

Rina Ne'eman

ss.: New Jersey

On the 28 ] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014


Notary Public

```
HIRUT J MIHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2016
I.D.# 2392704
```

<div dir="rtl">

| צבא | | המשפט | הצבאי | הגנה | | לישראל |
|---|---|---|---|---|---|---|
| כבוית | | | אל | | תיק ביח"מ | 3250/02 |
| בבית | | | הרכב | | זיק וגביעה | 242/02 |
| בבני | | | | | תיק פ.א. | 3135/00 בנימין |
| | | | | | | 234/01 מתח"מ י-ם |
| | | | | | | 2159/01 בנימין |
| | | | | | | 39/02 בנימין |
| | | | | | | 7915/01 ציון |
| | | | | | | 481/01 ציון |
| | | | | | | 8379/01 ציון |
| | | | | | | 5/01 בנימין |
| | | | | | | 457/01 בנימין |
| | | | | | | 502/02 ציון |

## במשפט שבין התובע הצבאי - המאשים

### - נ ג ד -

מחמנד ע/רחמאן סאלם מצלח (מכונה י"אבו סטאתה"י)
ת.ז 902845643, יליד 77 25.04., תושב עין אום שראיט - רנאללה
עצור מיום 17.02.02

### -ה נ א ש ם-

## כ ת ב - א י ש ו ם מ ת ו ק ן

### הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

**פרט ראשון:** (פ.א. 234/01 מתח"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ל-1970; וסעיף 14(1)(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם ניאד אברהים מעלא וטארק מאלחי אי-נוף
   הנאשם קשר עם חבריו הנ"ל לנסוע לא-ראם וכנוג שם רכב.
2. הנאשם, ביחד עם טארק אי-נוף וניאד מעלא נסע לא-ראם שם, הנאשם וחבריו הנ"ל חיפשו
   רכב כגנוב לאחר שלא מצאו רכב שאפשר לגנוב אותו, הנאשם חזר לרמאללה, ואילו טארק
   אי-נוף וניאד מעלא נשארו בא-ראם במטרה להמשיך לחפש רכב שניתן לגנוב אותו
3. ברמאללה, הנאשם נפגש עם אחמד טאלב מצטפא ברנותי, שומר ראש של מרדאו ברנותי -
   ראש "התנועים" של הפת"ח הנאשם ביקש מאחמד ברנותי אהדה ורכב לצורד ביצוע פיגוע ירי
   נגד יהודים

ח.ת. נאנ'ג'ן טחוינ                                                              1

</div>

4  לפי בקשתו של הנאשם, אחמד ברגותי מסר לו אקדח 16 עם מחסנית המלאה בכדורים ופן
   רכב פולקסווגן בורה גנוב בצבע כסף.

5  הנאשם נסע ברכב הפולקסווגן הנ"ל לא-ראם, כשהוא חמוש באקדח 16 הנ"ל. בא-ראם,
   הנאשם נפגש עם ג'אד מעלא וטארק א-נוף

6  הנאשם הציע לג'אד מעלא לעלות לרכב הפולקסווגן ולנסוע לאיזור עטרות לחפש רכב ישראלי
   במטרה לבצע לעברו פיגוע ירי וכנגדם למוות של נוסעי הרכב. ג'אד מעלא הסכים להצעתו של
   הנאשם ועלה לרכב הפולקסווגן.

7  הנאשם השאיר לוחזו ברכב הפולקסווגן ומסר את אקדח 16 הנ"ל לידי ג'אד מעלא. הנאשם
   הורה לג'אד מעלא לירות בשמצעות האקדח הנ"ל לעבר רכב ישראלי, אשר אותו השניים
   ימצאו באיזור עטרות, וזאת במטרה לגרום למוות של נוסעי הרכב

8  סמוך לשעה 18:15. באיזור התעשיה עטרות, הנאשם וג'אד מעלא הבחינו ברכב GMC ספארי,
   מ.ר. 7901 306 (להלן: הרכב) אשר בו נהג אלעזר עקיבא פשקוס ז"ל

9  הנאשם החל לנסוע אחרי הרכב. הנאשם עקב אחרי הרכב מאיזור התעשיה עטרות עד צומת
   א-ראם ובחזרה.

10 כאשר הרכב חזר לאיזור התעשיה עטרות נסע בכביש הראשי, הנאשם נסע ברכב הפולקסווגן
   בסמוך לרכב.

11 ג'אד מעלא פתח את החלון וירה באקדח 16, אשר אותו מסר לו הנאשם, כ-7 כדורים לעבר
   הרכב במטרה לגרום למוות של נהג הרכב. מספר קליעים פגעו ברכב, כאשר קליע אחד פגע
   בצוארו ואחד בחזהו של אלעזר עקיבא פשקוס ז"ל, אשר נהג ברכב.

12 מישהבחין הנאשם כי הרכב נעצר, הוא נמלט ברכב הפולקסווגן, ביחד עם ג'אד מעלא,
   לרמאללה.

13 ברמאללה, הנאשם החזיר את הרכב ואת האקדח 16 לאמיר אבו רדאחה. הנאשם מסר לאמיר
   אבו רדאחה מספר כדורים בסקום הכדורים, אשר אותם ירה ג'אד מעלא לעיל

14 לאחר מכן הנאשם יצר קשר עם אחמד ברגותי "המכונה "אל פראנסי", שומר ראשו של
   מרואוסו ברגותי, ראש "התנזים" של הפת"ח באיזור, שהוא התאחדות בלתי מותרת, ודיווח לו
   על הפיגוע שביצע ביחד עם ג'אד מעלא

15 בשיעוחי הסינמארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של אלעזר עקיבא פשקוס ז"ל,
   אשר נפטר כתוצאה מפגיעת הקליעים שנורו על-ידי ג'אד מעלא כפי שתוואר

16 לאחר זום, אחמד ברגותי מסר לנ'אד מעלא כ-300 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את
   הכסף האחמד אחמד ברגותי קיבל סידי פרג' ברגותי.


## פרט שני:

<u>מהות העבירה:</u> חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 84(1)(א) ו-85(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מאמצע שנת 2001 ועד ליום מעצרו, חיה חבר או פעל
בחבר בהתאחדות בלתי מותרת, דהיינו -
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר בחוליה צבאית, אשר שמה לה למטרה ביצוע
פיגועים נגד אזרחים ישראליים הן באיזור, הן מחוצה לו. הנאשם פעל בחוליה הצבאית האמורה
ביחד עם מחמד סאמי אברהים עבדאללה, חוסאם עקל רניע שחאדה, פראס צאדק מחמד עישאם
המכונה "אל חיטאווי", חיים אלממתפק חמדאן, זידאן אל ברוג', ניזאר והדאן ועלי עליאו.
לצורך פעילותו בחוליה האמורה, הנאשם וחבריו לחוליה נהגו לקבל סיוע כספי מאחמד קאלב
ברגותי, עורו של ראש "התנזים" של הפת"ח, מרואו ברגותי. מרואו ברגותי עצמו קיבל במספר
הודמנויות סכומי כסף שונים, בין 100 ל-300 דולר ארה"ב בכל פעם.
הנאשם פעל בחוליה הצבאית האמירה כפי שיתואר בפרטי האישום הבאים.

ב

ח.ח 02 762 מזורז

P 6: 45

**<u>פרט שלישי:</u> (פ.א. 2159/01 בנימין)**

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש אוגוסט 2001, בעין אום שראייט שברמאללה, נפגש עם חוסאם עקל רג'ב שחאדה, פראס צאדק מחמד ע'אנם (המכונה "אל חיטאווי") וטארק מאלחי א-נוף
2. טארק א-נוף, חוסאם שחאדה ופראס ע'אנם אמרו לנאשם כי בכוונתם לבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים. השלושה ביקשו כי הנאשם יספק להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.
3. ביום 25.08.01, פנו אל הנאשם פראס ע'אנם, חוסאם שחאדה וטארק א-נוף וביקשו לקבל עוד באותו היום כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.
4. באותו היום, הנאשם פנה אל אחמד טאלב מוצטפא ברגותי (המכונה "אל פראנסי"), שומר ראשו של מרוואן ברגותי, ראש "התנזים" של הפת"ח באיזור, שהוא התאחדות בלתי מותרת. הנאשם ביקש מאחמד ברגותי לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים. לאחר זמן קצר, עוד באותו היום, אחמד ברגותי מסר לידי הנאשם תמ"ק MP-5 עם מחסנית המלאה בכדורים.
5. בשעות הערב, באותו היום, ברמאללה או בסמוך לכך, הנאשם מסר את תמ"ק MP-5 והתחמושת הנ"ל לפראס ע'אנם וחוסאם שחאדה, אשר הגיעו ברכב איסוזו טנדר של פראס, וזאת על מנת שפראס וחוסאם יבצעו באמצעות הנשק הנ"ל פיגוע ירי ויגרמו למותם של אזרחים ישראליים
6. מיד לאחר קבלת הנשק, פראס ע'אנם, חוסאם שחאדה, הייתם אלמותפק חמדאן ועלי עליאן יצאו מרמאללה לכיוון כביש 443 במטרה לבצע שם את פיגוע הירי המתוכנן. האנשים הנ"ל נסעו בשני כלי רכב - האחד, איסוזו טנדר של פראס ע'אנם והשני, רכב סובארו גנוב שהביא עלי עליאן לצורך ביצוע הפיגוע המתוכנן.
7. בהגיעם לכביש 443, פראס ע'אנם המשיך לנסוע לבדו ברכב האיסוזו, כקילומטר לפני רכב הסובארו שבו נסעו חוסאם, הייתם ועלי עליאן, על מנת להודיע לחבריו הנ"ל על מחסומי צה"ל והמשטרה בדרך.
8. כל האנשים הנ"ל נסעו בכביש 443 לכיוון תל-אביב, כאשר עלי נוהג ברכב הסובארו, לידו יושב הייתם חמדאן, החמוש ברוס"ר קלצ'ניקוב, ובמושב האחורי יושב חוסאם שחאדה, החמוש בתמ"ק MP-5, אשר אותו סיפק הנאשם.
9. באותו היום, 25.08.01, סמוך לשעה 22:30, ליד תחנת הדלק "דור אנרגיה", הבחינו נוסעי רכב הסובארו הנ"ל ברכב פולקסווגן פאסאט, מ.ר. 6902818, אשר בו נסעו בני הזוג יניב ושרון בן שלום ז"ל עם שני ילדיהם ודורון יוסף סוויד ז"ל.
10. עלי עליאן, שנהג ברכב הסובארו, עקף את רכב הפולקסווגן הנ"ל ונסע במקביל אליו בשלב זה, הייתם חמדאן וחוסאם שחאדה פתחו באש אוטומטית בתמ"ק MP-5, אשר אותו סיפק הנאשם, וברוס"ר קלצ'ניקוב, לעבר רכב הפולקסווגן הנ"ל במטרה לגרום למותם של נוסעיו.
11. מספר רב של הקליעים שנורו על-ידי הייתם חמדאן וחוסאם שחאדה פגעו ברכב הפולקסווגן ובנוסעיו
12. לאחר שנוסעי רכב הסובארו הבחינו כי רכב הפולקסווגן נוסע בזיגזג, הם האיצו את המהירות ונמלטו לכפר בית ליקיא. שם המתין להם פראס ע'אנם. עלי עליאן, חוסאם שחאדה והייתם חמדאן עלו לרכב האיסוזו של פראס ע'אנם ונסעו לכפר בית סירא, שם הם הסתירו את כלי הנשק בסמוך לביתו של הייתם חמדאן. לאחר מכן, חוסאם שחאדה, פראס ע'אנם, הייתם חמדאן ועלי עליאן חזרו לרמאללה ברכבו של פראס ע'אנם.
13. מיד לאחר חזרתם לרמאללה, הנאשם נפגש בעין אום שראייט עם פראס ע'אנם, אשר דיווח לנאשם על הפיגוע שבוצע באמצעות הנשק שנמסר למטרה זו על-ידי הנאשם.
14. לאחר מספר ימים, פראס ע'אנם הביא את תמ"ק MP-5 הנ"ל מבית סירא והחזירו לנאשם הנאשם העביר את כלי הנשק הנ"ל לידי אחמד ברגותי הנ"ל ודיווח לאחרון על פיגוע הירי שבוצע בכלי הנשק הנ"ל.
15. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותו של **יניב בן שלום ז"ל**, אשר נפטר כתוצאה מפגיעות קליעים בראשו ובגבו, אשר נורו מתמ"ק MP-5 המתואר לעיל, ומרוס"ר קלצ'ניקוב על-ידי הייתם חמדאן וחוסאם שחאדה.
16. לאחר מספר ימים, על-פי בקשתו של הנאשם, אחמד ברגותי מסר לנאשם סכום של 500 דולר ארה"ב על מנת שהנאשם יחלק אותו לחבריו, אשר ביצעו את הפיגוע המתואר לעיל.

<u>פרט רביעי:</u> (פ.א. 2159/01 בנימין)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון, תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלישי, במעשיו המתוארים בפרט האישום החמישי, גרם בכוונה למותה של שרון בן שלום ז"ל, אשר נפטרה כתוצאה מפגיעת קליעים כראשה ובגבה, אשר נורו מתמ"ק 5-MP. אשר אותו סיפק הנאשם כמתואר בפרט האישום השלישי, וברוסי"ר קלצ'ניקוב.

<u>פרט חמישי:</u> (פ.א. 2159/01 בנימין)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלישי, במעשיו המתוארים בפרט האישום החמישי, גרם בכוונה למותו של דודו יוסף טוביי ז"ל, אשר נפטר כתוצאה מפגיעות הקליעים, אשר נורו מתמ"ק 5-MP, אשר אותו סיפק הנאשם כמתואר בפרט האישום השלישי, וברוסי"ר קלצ'ניקוב.

<u>פרט שישי:</u> (פ.א. 7915/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. באמצע חודש ספטמבר 2001, פנה אל הנאשם פראס צאדק מחמד עיאש (המכונה "אל חיטאווי") ניחד עם אדם נוסף וביקש לקבל תמ"ק 5-MP על מנת לבצע באמצעותו פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים.

2. הנאשם הסכים לספק את כלי הנשק המבוקש לצורך ביצוע פיגוע הירי המתוכנן וביום 15.09.01 פנה אל אחמד ברגותי, שומר ראשו של מרואן ברגותי, ראש "התנזים" של הפת"ח באיזור, שהוא התאחדותו בלתי מותרת. אחמד ברגותי הנחה את הנאשם אל האכל שווע הנאשם פנה אל האכל שווע וקיבל מאחמד תמ"ק 5-MP.

3. מאוחר יותר באותו היום, הנאשם מסר את תמ"ק 5-MP הנ"ל לפראס עיאנב עיאש במטרה שהאחרון יבצע באמצעותו פיגוע ירי ויגרום למותם של אזרחים ישראליים.

4. יתר מאוחר באותו היום, מחמד סאמי אברהים עבדאללה נפגש ברמאללה עם חוסאם עקל ריב שאחרה, פראס צאדק מחמד עיאש (המכונה "אל חיטאווי"), הייתם אלמוהתפח חמדאן ועלי עלא'ואי. חוסאם שאחרה הגיע לפגישה הנ"ל כשהוא חמוש בתמ"ק 5-MP, אשר אותו קיבל פראס עיאנב מידי הנאשם לצורך ביצוע פיגוע ירי, ואילו הייתם וחמדאן הגיע כשהוא חמיש באקדח טופי.

5. חברי הנאשם הנ"ל התליטו לצאת לירושלים ולבצע שם פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים.

6. בסביבות השעה 22.00, ביום 15.09.01, האנשים הנ"ל נסעו מרמאללה לירושלים ברכב איסוזו טנדר של פראס עיאנב.

7. פראס עיאנב נהג ברכב האיסוזו הנ"ל ונסע ביחד עם מחמד עבדאללה וחברו על מנת להראות להם מקום שבו יבצעו את פיגוע הירי המתוכנן וכן על מנת להראות לחבריו איך להיעלם לאחר ביצוע הפיגוע האמור. פראס עיאנב הסיע את חבריו לכביש מס' 9 המחבר בין שכונת

4

ת"ח 162732c81a313742

רגינות לבין שכונת הגבעה הצרפתית בירושלים. פראס ציאנם הוראה לחבריו איפה לבצע את הפיגוע ותמהכונן איך להיחלט לאחר מכן. בסיום הסיור האמור, החבורה הנ"ל חזרה לרמאללה.

8. בסביבות השעה 22:30, באותו היום, מחמד עבדאללה ביחד עם חוסאם שחאדה והיותם חמדאן נסע ברכב גונב בצבע אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם עלי עלאג' לצורך ביצוע הפיגוע המתוכנן (להלן: - הרכב). לפגיהם נסע פראס ציאנם ברכב האיסוזו הנ"ל וזאת על מנת לחדריך באמצעות טלפון סלולרי לחבריו על מחסומי משטרה זצח"ל.

9. מחמד עבדאללה נהג ברכב הנ"ל, לידו ישב חוסאם שחאדה, החמוש בתמ"ק 5-MP4, ובמשב האחורי ישב היותם חמדאן, חמוש באקדח טופי.

10. החבורה הנ"ל נעצרה בכביש מס' 9 בסמוך לצומת הכביש לשכונת רמת שלמה ותמתינה לרכב ישראלי בודד שיגיע למסום במסורת לבצע לעברו פיגוע ירי ולגרום למותם של נוסעי הרכב.

11. לאחר מספר דקות, בסמוך לשעה 10.23, הגיע למסום רכב רנו אקספרס לבן, מ.ר. 2273706, (להלן: - הרנו) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

12. מחמד עבדאללה החל לנסוע אחרי הרנו ועקף אותו.

13. כשהרכב נסע במקביל לרנו, חוסאם שחאדה והיותם חמדאן פתחו באש בתמ"ק MP-5 ובאקדח טופי לעבר נוסעי הרנו במטרה לגרום למותם.

14. מספר קליעים שנורו על-ידי חוסאם שחאדה וחיותם חמדאן פגעו כרנו ובשני נוסעי הרנו - משה וייס ומאיר וייסבוזי ז"ל. לאחר מכן, מחמד עבדאללה המשיך לנסוע לכיוון שכונת רמות ובסמוך למקום שבו בונים גשר חדש פנה ימינה לדרך עפר המובילה לביר נבאללה.

15. לפני הכניסה לביר נבאללה, מחמד עבדאללה וחבריו שהיו עצר מן ברכב נפגשו עם פראס ציאנם שחנתיו להם במקום ברכב האיסוזו. משם כולם ביחד המשיכו בנסיעה לביר נבאללה ולאחר מכן נמלטו לרמאללה.

16. לאחר מכן, פראס ציאנם, חוסאם שחאדה, מחמד עבדאללה וחיותם חמדאן א-נוף הגיעו אל הנאשם, החזירו לו את תמ"ק 5-MP הנ"ל ואת האקדח הנ"ל ודיווחו על הפיגוע, אשר אותו ביצעו באמצעות כלי הנשק הנ"ל.

17. במעשיה המתוארים לעיל, הנאשם גרם בכוונה למותו של מאיר וייסבוזי ז"ל. אשר נפטר בבית החולים מאוחר יותר באותו חיום כתוצאה מפגיעות הקליעים שנורו עלי-ידי חברי הנאשם בתמ"ק MP-5, אשר אותו סיפק הנאשם ובאקדח טופי.

---

**פרט שביעי:** (פ.א. 7915/01 ציון)0)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בסמוך לשעה 10.23, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותו של משה וייס. אשר נהג ברכב רנו אקספרס לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד הקליעים שנורו עלי-ידי חברי הנאשם בפרט האישום הקודם, כפי שתואר בפרט האישום הקודם, פגע בראשו של נושא וייס ופצע אותו

---

**פרט שמיני:** (פ.א. 481/01 ציון ו-פ.א. 8379/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 10.01.03 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, ביחד עם מחמד סאמי אברחים עבדאללה, חוסאם עקל רגיב שחאדה ופראם עגד'מן מחמד ציאנם קשר קשר "אל חיטאווי"), החליט לבצע פיגוע ירי במטרה לגרום למותם של אזורים ישראליים

2. לצורך ביצוע פיגוע הירי המתוכנן, הנאשם קיבל מידי מאג'ד, חושב אלבירה, רכב מזדה 323 גונב בצבע אפור עם לוחיות רישוי ישראליות.

3. לצורך ביצוע פיגוע הגיע הירי המתוכנן, הנאשם קיבל מאחמד ברגותי, שוזר ראשי של ני רוואן
ברגותי, ראש "התנזים" של הפת"ח באיזור, שהוא התאחדות בתהי מותרת, תמי"ק MP-5.

4. ביום 03.10.01, הנאשם יצא מרמאללה לכיוון ירושלים במטרה לבצע שם את פיגוע הירי
המתוכנן כשהוא מחזיק בתמ"ק MP-5 הנ"ל ונוסע ברכב המוזדה הנ"ל, אשר בו נהג מוחמד
עבדאללה.

5. פראס עיאמם וחוסאם שחאדה נסעו ברכב איסוזו טנדר של פראס עיאמם לפני רכב המוזדה שבו
נסע הנאשם וזאת במטרה להודיע על מחסומי המשטרה וזה"ל בדרך.

6. הנאשם וכל חבריו הנ"ל הגיעו לבית חניה חדשה שבירושלים שם מחמד עבדאללה החנה
את רכב המוזדה ובהתו עם הנאשם הסתיר בתוך הרכב את תמ"ק MP-5 הנ"ל.

7. הנאשם ומחמד עבדאללה עלו לרכב האיסוזו ופאס המשיכו ברכב האיסוזו ביחד עם פראס
עיאמם וחוסאם שחאדה לכיוון בכביש בגין.

8. הנאשם וחבריו הנ"ל הגיעו לכביש בגין. שם, פראס עיאמם הראה לנאשם ושאר חבריו איפה
לבצע את פיגוע הירי המתוכנן ואיך להיכנס לאחר ביצוע פיגוע הירי. הנאשם וחבריו הנ"ל
החליטו לבצע את פיגוע הירי המתוכנן במכונית הראשונה של כביש בגין מכיוון רמות וזאת על
מנת שלא ישמעו את קולות הירי. לאחר מכן, הנאשם וכל חבריו הנ"ל חזרו לבית חניה,
למקום שבו הוחנה רכב המוזדה.

9. הנאשם עלה לרכב המוזדה כשהוא חמוש בתמי"ק MP-5 הנ"ל, ואילו מחמד עבדאללה נהג ברכב
הַמוזדה האמור. משם הנאשם נסע ברכב המוזדה לכביש בגין במטרה לבצע שם את פיגוע הירי
המתוכנן ולגרום למותם של אזרחים ישראליים.

10. הנאשם ומחמד עבדאללה נסעו בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב
ישראלי כדי בצמרה לבצע לעברו את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי
הרכב.

11. בסמוך לשעה 23:35, כשהם נוסעים לכיוון צפון, במנהרה האחרונה בכיוון נסיעתם, הנאשם
ומחמד עבדאללה הבחינו ברכב הונדה אקורד, מ.ר. 1103217, הנוסע בכביש בגין לכיוון צפון.

12. מחמד עבדאללה עקף את רכב הונדה הנ"ל. בעת שמחמד עבדאללה נסע במקביל לרכב
הונדה הנ"ל, הנאשם ירה כדור אחד בתמי"ק MP-5, אשר בו החזיק, לעבר נוסעי רכב
הונדה, במטרה לגרום למותם. הקליע שוגר על-ידי הנאשם לא פגע ברכב ההונדה הנ"ל.

13. לאחר ביצוע פיגוע הירי האמור, הנאשם ומחמד עבדאללה המשיכו בנסיעתם לכיוון כביש מסי'
9 המחבר בין שכונת רמות לשכונת הגבעה הצרפתית.

14. לאחר שהנאשם ביחד עם מחמד סאמי אברהים עבדאללה ביצעו את פיגוע הירי כפי שתואר
לעיל, שיניים המשיכו בנסיעה ברכב המוזדה לכיוון לכביש מסי' 9, המחבר בין שכונת רמות
לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חניה ובהמשך לרמאללה.

15. במהלך הנסיעה הנ"ל, הנאשם, על-פי בקשתו של מחמד עבדאללה, בדק את תקינותו של
התמי"ק הנ"ל, אשר בו החזיק, ואף ירה נוספר כדורים באוויר.

16. במהלך הנסיעה בכביש מסי' 9 הנ"ל, בסמוך לשעה 23:45, הנאשם ומחמד עבדאללה הבחינו
ברכב סקודה, מ.ר. 6567709, אשר נסע בכביש מסי' 9 לכיוון הגבעה הצרפתית. ברכב הסקודה
הנ"ל נסעו מלכה כהן ופנחס כהן.

17. הנאשם ומחמד עבדאללה החליטו לבצע פיגוע ירי לעבר ירי הסקודה הנ"ל ולגרום למותם של
הנוסעים בו. מחמד עבדאללה, נהג ברכב המוזדה, עקף את רכב הסקודה.

18. בעת שמחמד עבדאללה נסע במקביל לרכב הסקודה הנ"ל, הנאשם ירה בתמי"ק MP-5 מספר
יריות לעבר רכב הסקודה הנ"ל במטרה לגרום למותם של נוסעי רכב הסקודה.

19. מספר קליעים שוגרו על-ידי הנאשם פגעו ברכב הסקודה. שני קליעים שוגרו על-ידי הנאשם
פגעו בגופמה כהן וקליעו נוסף פגע במלכה כהן.

20. פנחס כהן נפצע באורח בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע
ה-28 להריון, נפצעה באורח בינוני מפגיעת קליע ברגלה.

21. לאחר ביצוע פיגוע הירי האמור, הנאשם ומחמד עבדאללה המשיכו בנסיעה לכיוון הגבעה
הצרפתית ומשם הגיעו לבית חניה החדשה. שם, הנאשם ומחמד עבדאללה החנו את רכבם
ויצרו קשר טלפוני עם חוסאם עקל רגיע שאחדה עקל מחמד עיאמם והמכונה "אל
חיטאווי", אשר הגיעו למקום ברכב האיסוזו של פראס עיאמם על מנת לאסוף את הנאשם
ומחמד עבדאללה, וזאת לפי התכנון האמור בפרק האישום הקודם.

22. הנאשם ומחמד עבדאללה הסתירו את תמי"ק MP-5 הנ"ל ברכב האיסוזו ועלו לרכב האיסוזו.
הנאשם ושלושת חבריו הנ"ל ניסו לחזור מירושלים לרמאללה, אך לא הצליחו לעשות כן בגלל
מחסומי צהי"ל המשטרה. הנאשם וחבריו הנ"ל נשארו ללון אצל ואסר אבו אלחמיד, חברו של
חוסאם שחאדה, בבית חניה החדשה בירושלים.

23. יום למחרת, 04.10.01, פראס עיאמם הסיע את הנאשם, ברכב האיסוזו שלו, לרמאללה.

6

<u>פרט תשיעי:</u>  (פ.א. 39/02 בנימין)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון [יהודה
והשומרון] (מס' 378), תשל" ־1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה [יהודה
והשומרון], תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כאירוע, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו
של אחר, דהיינו:

1.  ביום 14.01.02 נחרב ראאד כרמי אשר היה פעיל צבאי בכיר ב"תנזים" של ארגון הפת"ח,
    שהוא התנהלות בלתי נוחתרת. בעקבות מותו של ראאד כרמי הנ"ל, ראש "התנזים" של
    הפת"ח כאיזור - מרווחו ברגותי פתח אוהל אבלים באלכירה.

2.  ביום 15.01.02, הנאשם הגיע לאוהל האבלים הנ"ל ונפגש שם עם מחמד סאמי אברהים
    עבדאללה, פראס צאדק מחמד עיאנם (המכונה "יאל חיטאוויי"), טארק מאלחי א־נוף, זידאן
    אל בדוי ואחמד ברגותי (המכונה "אל פראמסי") שהוא שומר ראשו של מרואן ברגותי הנ"ל

3.  אחמד ברגותי הנ"ל מסר לנאשם ולחבריו הנ"ל כי מרואן ברגותי, ראש "התנזים" של הפת"ח
    באיזור, מבקש כי הנאשם וחבריו יבצעו באופן מיידי פיגוע נקמה על מותו של ראאד כרמי
    הנ"ל וירצ'ומו למותם של אזרחים ישראלים. לצורך ביצוע הפיגוע, אחמד ברגותי מסר לנאשם
    תת"ק MP-5 ואקדח 16.

4.  הנאשם וחבריו הנ"ל, באוהל האבלים הנ"ל, החליטו לבצע עוד באותו הערב פיגוע בתחנת
    הדלק בגעונים התנמצאת בכביב 443 כסמוך לכניסה לגבעת זאב ולגרום למותם של אזרחים
    ישראלים.

5.  בשעות הערב באותו חיום, 15.01.02, מחמד עבדאללה יצא מאוהל האבלים הנ"ל ביחד עם
    פראס עיאנם. מחמד עבדאללה ופראס עיאנם נסעו ברכב איסוזו טנדר של פראס עיאנם לתחנת
    הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן. אחרי רבע האיסוזו הנ"ל נסעו
    הנאשם, החמוש באקדח 14, זידאן, החמוש באקדח 16, וטארק א־נוף, החמוש בתת"ק MP-5.
    השלושה נסעו ברכב כוזה בצבע חום כהיר לעבר תחנת הדלק הנ"ל במטרה לבצע שם את
    פיגוע המתוכנן.

6.  הנאשם וכל חבריו הנ"ל הגיעו עד ערמת עפר החוסמת את היציאה מכפרים כיר נבאללה
    ואנ'ביע לכביש 443 במרחק של 100-50 מטר מתחנת הדלק הנגעונים. הנאשם וחבריו החנו את
    כלי הרכב שלהם, איספוו וזוהדה, עם הפנים ליציון הכפר כיר נבאללה על מנת שיוכלו להימלט
    מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

7.  הנאשם, החמוש באקדח 14 שלו, זידאן, החמוש באקדח 16, וטארק א־נוף, החמוש MP-5,
    ירדו מכלי הרכב והלכו לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום
    למותם של אזרחים ישראלים.

8.  מחמד עבדאללה ופראס עיאנם נשארו בכלי הרכב הנ"ל על מנת לשמור שלא יגיע למקום סיור
    של צה"ל או אנשים אחרים. מחמד עבדאללה ישב בכיסא הנהג ברכב המוזה על מנת שיוכל
    למלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מיד לאחר ביצוע
    הפיגוע.

9.  הנאשם וטארק א־נוף נעמדו בכניסה לתחנת הדלק הנ"ל.

10. לאחר מספר דקות, בסמוך לשעה 19:45, הנאשם וטארק א־נוף הבחינו ברכב פיאט אונו לבן,
    מ.ר. 6424905, שנכנס לתחנת הדלק הנ"ל ואשר בו נהגה יואלה חן ז"ל וילדה ישבה רש"ל (רחל)
    עיני.

11. הנאשם וטארק א־נוף ניגשו אל רכב הפיאט הנ"ל במטרה לבצע לעברו פיגוע ירי וגרום למותן
    של נוסעות הרכב. נוסעות רכב הפיאט הבחינו באקדח שבו החזיק הנאשם יהולו לצעוק
    ולצפור. הנאשם הכניס את האקדח למכנסיו ואמר לנוסעות הרכב שלא יפחדו.

12. בשלב זה, טארק א־נוף פתח באש אוטומטית בתת"ק MP-5 לעבר נוסעות רכב הפיאט במטרה
    לגרום למותן. אז גם הנאשם שוב הוציא את אקדחו וחחל לירות לעבר נוסעות הרכב במטרה
    לגרום למותן.

13. הנאשם וטארק א־נוף ירו מטווח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל ולעבר
    רש"ל (רחל) עיני שהיו ברכב הפיאט הנ"ל.

14. 25-5 קליעים, שנורו על־ידי הנאשם וטארק א־נוף, פגעו בשמישה הקדמית של הרכב, מספר
    קליעים פגעו בצד הרכב ובשמשה חלון דלת הנהג.

15. בההלך ביצוע פיגוע הירי המתוארו, זידאן, אשר עמד במרחק קצר מאחורי הנאשם וטארק
    א־נוף, שימש כשומר וסקוריע.

16. פראס עיאנם, אשר לאחר ששמע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת
    להודיע לנאשם וחבריו אם יש מחסומים בדרך לרמאללה

7

ח.מ 162732 פילון

P 6: 50

17. הנאשם, טארק א-נוף וזידאן, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל רכב
המזדה שבו המתינו מחמוד עבדאללה. לאחר שהשלושה הנ"ל עלו לרכב, מחמוד עבדאללה הסיע
אותם לרמאללה.

18. ברמאללה הנאשם, טארק א-נוף, מחמוד עבדאללה וזידאן נפגשו עם פראס עיאנם.

19. לאחר מכן, הנאשם נפגש ברמאללה עם אחמד ברנוחי הנ"ל, החזיר לו את המייק P-5 ואת
הרכב וכן דיווח על חפיגוע שביצע כמתואר לעיל.

20. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותם של יואלה חן ז"ל, אשר נפטרה במקום
כתוצאה מפגיעות הקליעים שנורו על-ידי הנאשם וטארק א-נוף.


### פרט עשירי: (פ.א. 39/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
[יהודה והשומרון] (מס' 378), תש"ל-1970, וסעיפים 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיוור, ביום 01.02 או 15 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בסמוך לשעה 19:45, במקום המתואר בפרט האישום הקודם,
במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של רשל (רחל) עיני, אשר
נסעה ברכב פיאט אונו לבן, מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שנורו
על-ידי הנאשם וטארק א-נוף, כפי שתואר בפרט האישום הקודם, פגע בראשה של רשל (רחל עיני)
ושני קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה באורח בינוני.


### פרט אחד-עשר: (פ.א. 3135/00 בנימין)

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון
[יהודה והשומרון] (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 12.10.00 או במועד הסמוך לכך, עשה מעשה או מחדל
שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל והיכולים או
לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אווירון, נמל, רציף, מזח, מנגן, שדה
התעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה
ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש לייצורם,
הספקתם, חתימתם, העברתם, מסירותם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של
מדינת ישראל או של צה"ל, דהיינו:

1. ביום 12.10.00, בסמוך לשעה 10:00, נכנסו שני חיילי צחו"ל, רס"ל יוסף אברהמי ז"ל ורב"ט
ודים נורז'יץ' ז"ל בטעות לתוך העיר רמאללה, התנגנו לשליטות הרשות הפלסטינית. מאחר
ששני חיילי צה"ל הנ"ל נסעו ברכב בנושא לוחיות רישוי ישראליות, הבחינו בהם השוטרים
הפלסטינים המשרתים בתחנת המשטרה הפלסטינית ברמאללה ועצרו אותם.

2. כאחר שהשוטרים הפלסטינים הבינו כי מדובר בשני חיילי צה"ל, הם נטלו מרס"ל יוסף
אברהמי ז"ל ורב"ט ודים נורז'יץ' ז"ל את נשקיהם ואת חפציהם האישיים. הוציאו אותם מתוך
הרכב, בו נסעו השניים, והכניסו אותם לתוך תחנת המשטרה הפלסטינית ברמאללה. בתוך
תחנת המשטרה נחקרו רס"ל יוסף אברהמי ז"ל ורב"ט ודים נורז'יץ' ז"ל בנוגע להגעתם
לרמאללה ואף הוכו על-ידי השוטרים הפלסטינים שהיו במקום.

3. בסמוך לתחנת המשטרה הפלסטינית התקהלה עברה באותה עת המולת חלוהים, אשר בה
השתתף הנאשם, ומשראה השמונה כי בתוך תחנת המשטרה נמצאים שני חיילים ישראלים. אז
פנו האנשים שהשתתפו בלוויה אל תחנת המשטרה במטרה לרצוח את שני חיילי צה"ל שהיו
שם הנאשם עצמו המשייך עם ההלוחים היוויה.

4. חגוני המתפרעים, לאחר שהגיעו אל תחנת המשטרה הפלסטינית ברמאללה, הרס והתעלה באש
את רכבו של רב"ט ודים נורז'יץ' ז"ל, אשר נשאר מחוץ לתחנת המשטרה הנ"ל.

5. חחמון ביקש להיכנס אל תוך תחנת המשטרה הנ"ל במטרה לרצוח את רס"י יוסף אברהמי
ז"ל ורב"ט ודים נורז'יץ' ז"ל.

6. חחמון ניסה לפרוע אל הדלת של תחנת המשטרה הנ"ל, אך שם נעצר על-ידי שוטרים
פלסטינים, אשר ביקשו מהחמון לא להתפרע אל תוך התחנה, כאשר הם מבטיחים להוציא
את שני חיילי צה"ל אל מחוץ לתחנת המשטרה וזה המון יוכל לרצוח אותם.

7. למיותו הכל הצליחו מספר רב של המתפרעים להיכנס אל תוך תחנת המשטרה הנ"יל כשבידיהם אלות, סכינים וגינרורות ברזל.

8. המתפרעים אשר הצליחו להיכנס לתחנת המשטרה הנ"יל, הגיעו אל החדר בקומה השניה שבו היו באותה עת רסיי"ל יוסף אברהמי זיי'ל ורביי'ט וריס גירזי'ר זיי'ל. המתפרעים, ביחד עם השוטרים הפלסטינים שהיו במקום, היכו את רסיי"ל יוסף אברהמי זיי'ל ורביי'ט וריס גורזיר ז'יל בידיהם, בעטו בהם, היכו אותם במקשירים קהים ודקרו אותם במקשירים חדים.

9. המתפרעים הנ"יל השליכו את רביי'ט וריס גורזיר ז'יל, כשהוא פצוע קשה, מהחלון של החדר הנ"יל בקומה העניה של תחנת המשטרה האמורה, אל חצר התחנה.

10. מספר רב של המתפרעים הגיעו אל רביי'ט וריס גורזיר ז'יל. במטרה לרצוח אותו. ההמון הוציא את רביי'ט וריס גורזיר ז'יל לרחוב מחוץ לחצר תחנת המשטרה הנ"יל, שם המון המתפרעים המשיך להכות את רביי'ט וריס גורזיר ז'יל בכל חלקי גופו.

11. בשלב זה, אנשים שהיו בין המון המתפרעים גררו את רביי'ט וריס גורזיר ז'יל לכיכר מנארה.

12. הנאשם היה בכיכר מנארה, כשהוא חמוש ברוסיי"ר M-16. הנאשם הנ"יל ירה באמצעות רוסי"ר M-16 הנ"יל מספר כדורים ברביי'ט וריס גורזיר ז'יל. המון האנשים שהיו במקום הרימו את הנאשם על כתפיהם לאור המעשה שביצע כאמור לעיל מול עיניהם.

13 לאחר מכן, האנשים שהיו במקום שפכו על רביי'ט וריס גורזיר ז'יל בנזין והציתו אותו.

14 כתוצאה ממחמונת ומהדקירות שגרם המון המתפרעים נהרגו חיל'י צהי"ל רביי'ט וריס גורזיר וריי'ל יוסף אברהמי זיי'ל.

---

**פרט שנים-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ר-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מסי 225), תשכי"ח-1968.

**פרטי העבירה:** הנאשם חיי'ל, באיזור, בסוף שנת 2000 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהינו:

הנאשם הנ"יל, במהלך התקופה האמורה, בסמוך לצומת איניוב, ב-3 הזדמנויות שונות, ירה ברוסיי"ר M-16, אשר אותו קיבל מזידאן אלמתרב (אלבדיווי), לעבר חיל'י צהי"ל שהיו במקום, וזאת בכוונה לגרום למותם של חיל'י צהי"ל הנ"יל

ביחד עם הנאשם היו אנשים רבים נוספים, אשר גם הם ירו לעבר חיל'י צהי"ל הנ"יל בכוונה לגרום למותם

---

**פרט שלושה-עשר:   (פ.א. 5/01 בנימין)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ר-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכי"ח-1968

**פרטי העבירה:** הנאשם חיי'ל, באיזור, ביום 01.01.01 או במיועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהינו:

1. הנאשם הנ"יל, במניע האחמור, כרמאללה או בסמוך לכך, נפגש עם טארק מלחי אינ-יוסף ועם זיאד אלמתרב. טארק מלחי אינדאן אלמתרב נסע לברב סיאט בצבע לבן, ונתן לוחית ריסיי"ר ישראליית. טארק מלחי אינ'דאן רמדאן היו חשושים כל אחד באקדח טארק מלחי וזידאן אלמתרב הציעו לנאשם לבצע פיגוע ירי לעבר כלי רכב ישראליים באיזור קלנדיה במטרה לגרום למותם של אזרחים ישראליים.

2. הנאשם הסכים להצעה הנ"יל. הנאשם עלה לרכב הסיאט הנ"יל ותחייישב בכיסא הנהג. הנאשם נהג ברכב הסיאט מרמאללה לכיוון קלנדיה על מנת לבצע שם את פיגוע הירי המתוכנן. טארק מלחי אינ'דאן מתרב נסעו ביחד עם הנאשם ברכב הסיאט הנ"יל, כשהם חמושים באקדחים הנ"יל.

3 הנאשם וחבריו הנ"יל נסעו לצומת קלנדיה ושם פנו שמאללה לכביש המוביל לצומת אדם. לאחר הנסיעה של כ-500 מטר, הנאשם וחבריו הנ"יל הבחינו ברכב רנו ינקנו לבן. מ.ר 4424829, אשר בו נסעו זאב אדר ואברהם דוד, מכוונן עזרות לכיוון היישוב אדם.

4 הנאשם וחבריו הנ"יל החליטו את החליטו לבצע פיגוע ירי ועצר רכב הרנו הנ"יל בכוונה לגרום למיתם של הנוסעים בו.

9

5   הנאשם עקף את רכב הדוו ובזמן שהנאשם נסע במקביל לרכב הרגו, טארק מלחי וזידאן
    אלמחרב פתחו באש באקדחים, אשר בהם החזיקו, לעבר רכב הרגו בכוונה לגרום למותם
    של נוסעי רכב הרגו.

6   מספר קליעים, אשר נורו על-ידי חברי הנאשם, פגעו ברכב הרגו.

7   קליע אחד, אשר נורה על-ידי חברי הנ"יל של הנאשם, פגע-בגב עליון שמאל של אברהם
    דוד, שאר נסע ברכב הרגו הנ"יל, ופצע את אברהם דוד.

8   מיד לאחר ביצוע פיגוע הירי הנ"יל, הנאשם וחבריו הנ"יל נמלטו לרמאללה.

## <u>פרט ארבעה-עשר:</u>   (פ.א. 457/01 בנימין)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
[יהודה והשומרון] (מס' 378), תשי"ט-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
[יהודה והשומרון] (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"יל, באיזור, ביום 25.02.01 או בסמוך לכך, ניסה לגרום בכוונה למותו
של אחר, דהיינו.

1.  הנאשם הנ"יל, במועד האמור, נפגש ברמאללה עם מהנד אבו חלאווה, טארק מלחי (א-נוף)
    ואחמד טאלב מוצטפא ברגותי, שומר של מרוואן ברגותי, שהוא ראש "התנזים" של
    הפתיי.

2.  הנאשם וחבריו הנ"יל דנו במצב באיזור. הנאשם וחבריו הנ"יל טענו כי אין פעילות נגד המטרות
    הישראליות. אחמד ברגותי שאל את הנאשם וחבריו הנ"יל מה ניתן לעשות על מנת לשפר את
    המצב. הנאשם וחבריו הנ"יל ביקשו כי אחמד ברגותי יספק להם רכב וכלי נשק והם יבצעו
    פיגוע נגד האזרחים הישראליים בכוונה לגרום למותם.

3.  אחמד ברגותי הסכים להצעת הנ"יל. אחמד ברגותי מסר לידי הנאשם וחבריו הנ"יל רכב מסוג
    פולקסוואגן בורה, צבע אפור, מודל שנת 2001, נושא לוחיות רישוי ישראליות, וכן תמי"ק MP-5
    עם מחסנים וכדורים.

4.  הנאשם, מהנד אבו חלאווה וטארק מלחי (א-נוף) נסעו ברכב הנ"יל, כשהם חמושים בתמי"ק
    MP-5 הנ"יל וברוסי"ר קלצ'ניקוב. הנאשם וחבריו הנ"יל הגיעו לאיזור גשר עטאארה.

5.  בסמוך לשעה 13:15, הנאשם וחבריו הנ"יל הבחינו ברכב GMC (אנדורה, מ.ר 3082518, אשר
    בה נהג יוסף כהן, כשהרכב האמור יוצא מיישוב עטרת ופונה לכיוון גשר עטאארה.

6.  הנאשם וחבריו הנ"יל החליטו לבצע פיגוע ירי לעבר רכב ה-GMC הנ"יל בכוונה לגרום למיתם
    של הנוסעים בו.

7.  הנאשם וחבריו הנ"יל החליטו להמתין עד שרכב הסיטרואן שנסע לפניהם יעקוף את רכב
    ה-GMC ואז לעקוף את רכב ה-GMC ולבצע לעברו את פיגוע הירי המתוכנן.

8.  ברכב הסיטרואן הנ"יל נסעו וליוזם סאמח פארס אלחטוב (רימאווי), רבחי זוהדי אלאסמר
    (רימאווי) ואברהם עבדאללה מחמד קאסם (עזאווי), התמושים ב-2 רוסי"רי קלצ'ניקוב ורוסי"ר
    M-16. נוסעי רכב הסיטרואן הנ"יל פתחו באש בכלי הנשק הנ"יל לעבר רכב ה-GMC הנ"יל
    בכוונה לגרום למותם של הנוסעים בו. 29 קליעים שנורו על-ידי האנשים הנ"יל פגעו ברכב
    ה-GMC הנ"יל. 3 קליעים פגעו בראשו ובצוואר של יוסף כהן, אשר נהג ברכב ה-GMC הנ"יל.
    כתוצאה מפגיעות הקליעים הנ"יל וכן מפגיעות הרסיסים בכל חלקי גופו, יוסף כהן נפצע
    באורח קשה.

9.  לאחר שהנאשם וחבריו הנ"יל הבחינו כי כתוצאה מפיגוע הירי שבוצע מרכב הסיטרואן שנסע
    לפניהם, רכב ה-GMC נפגע, ירד מהכביש ונהג הרכב נפצע, הנאשם וחבריו הנ"יל נמלטו בחזרה
    לרמאללה.

10. ברמאללה, הנאשם וחבריו הנ"יל החזירו לאחמד ברגותי את רכב הפולקסוואגן הנ"יל ואת התמי"ק
    MP-5 הנ"יל. הנאשם, מהנד אבו חלאווה וטארק מלחי (א-נוף) דיווחו לאחמד ברגותי כי ביצעו
    פיגוע ירי באמצעות הרכב וכלי הנשק הנ"יל וכי כתוצאה מכך נפצע נהג יהודי.

10

<div dir="rtl">

**פרט חמישה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, כמועד האמור, נפגש ברמאללה עם נ'אד אברהים מוסא מעלא ועם נאצר מחמד יוסף נאני אבו-חמיד. הנאשם וחבריו הנ"ל החליטו לבצע פיגוע ירי, אשר במהלכו יירו מרכב חולף לעבר רכב ישראלי באיזור עטרות בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחבריו הנ"ל יצאו מרמאללה ברכב, אשר בו נהג הנאשם. ליד הנאשם ישב נאצר אבו-חמיד, החמוש באקדח זיג-זאור וברובוס"ר M-16, ובמושב האחורי ישב נ'אד מעלא, החמוש באקדח 14.
הנאשם וחבריו הנ"ל הגיעו לעטרות. שם הנאשם וחבריו הנ"ל חבחינו ברכב GMC עם לוחיות רישוי ישראליות. הנאשם וחבריו הנ"ל החלו לנסוע אחרי רכב ה-GMC הנ"ל בניסיון לעקוף אותו ובכביש לעבור פיגוע ירי בכוונה למותם של הנוסעים ברכב ה-GMC. אך נ'אד מעלא טען כי נהג רכב ה-GMC הינו ערבי ולכן הנאשם וחבריו הנ"ל לא ביצעו את הפיגוע הירי המתוכנן וחזרו לרמאללה.

**פרט שישה-עשר:** (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1.  אחמד טאלב מוצטפא ברגותי, שומר ראשו של ראש "יתחנזיס" של פתיייח - מרואי ברגותי, בחודש ינואר 2002, החליט כי ברצונו לחזוייא לפועל פיגוע התאבדות בתוך שטחהו של מדינת ישראל על מנת לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

2.  אחמד ברנותי פנה באמצעות טלפון אל נאצר מחמוד עווים, פעיל בכיר ב-"תנזיס" של הפתייח, שהוא התאחתזה בלתי מותרת, בשכם. אחמד ברנותי ביקש מנאצר עווים לשתוף אליו אדם המוכן לבצע פיגוע התאבדות. אחמד ברנותי מסר לנאצר עווים כי הוא עצמו ידאג להכניס את המחבל המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.

3.  מספר מספר ימים, ביום 22.01.02, ברמאללה, אחמד ברנותי נפגש עם סעיד רמדאן, תושב כפר תל בנקת שכם, אשר הודיע כי נשלח על-ידי נאצר עווים לצורך ביצוע פיגוע התאבדות.

4.  אחמד ברנותי התקשר אל הנאשם וביקש מהאחרון להגיע אליו.

5.  הנאשם נפגש עם אחמד ברנותי ועם סעיד רמדאן ואותו היום ברמאללה. הנאשם ערך היכרות בין השניים. הנאשם ומחמד מצלה לקחו את סעיד רמדאן למספרה על מנת שיסתפר לפני ביצוע פיגוע התאבדות המתוכנן.

6.  לאחר מכן, הנאשם ואחמד ברנותי התקשרו אל פראס צאדק מחמד עיאש ומכונה "חיטאווירי" וביקשו מהאחרון להסיע מחבל מתאבד מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע בירושלים פיגוע התאבדות ויגרום למותם של אזרחים ישראליים רבים ככל האפשר.

7.  פראס עיאש הגיע לרמאללה ביחד עם מחמוד סאמי אברהים עבדאלה, וזאת לאחר שהאחרון הסכים להשתתף בחטף המתאבד מרמאללה לירושלים. פראס עיאש הנ"ל לפגישה ברכבו איסוזו טנדר עם לוחיות רישוי ישראליות.

8.  לפי הוראתו של אחמד ברנותי, פראס עיאש ומחמד עבדאללה נסעו ברכב האיסוזו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסומי משטרה וזהי"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

</div>

11

9. מחמיד עבדאללה ופראס עיאנם נסעו מרמאללה דרך ראפאת והגיעו לאיזור החצושיה עטרות, שם השניים חזרו לכביש הראשי ירושלים-רמאללה ונטעו שמאלה עד לצומת המובנר למחנה רמה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם השניים פנו ימינה ונסעו עד לצומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לעיונת הגבעה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. מחמד עבדאללה ופראס עיאנם ראו כי בדרך שבה נסעו ניתן לחקור את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

10. באותו הזמן, ברמאללה, הנאשם ואחמד ברנוחו לקחו את סעיד רמדאן הנ"ל להתפלל ואף קנו עבור סעיד רמדאן הנ"ל אוכל, בגדים ועעלים חדשות. אחמד ברנוחו שילם בכסף שלו עבור הקניות הנ"ל סכום של 1,200 ש"ח. הנאשם ואחמד ברנוחו לקחו את סעיד רמדאן לביתו של אחו של הנאשם על מנת שיחליף שם בגדיו.

11. הנאשם, על-פי בקשתו של אחמד ברנוחו, הביא רוסי"ר M-16 1-5 מחסניות לרוסי"ר הנ"ל מלאות בכדורים, כאשר שתי מחסניות היו מחוברות בצולבת.

12. לפי התכנון של הנאשם וחבריו הנ"ל, היה על סעיד רמדאן להגיע לירושלים ולירות שם באזרחים ישראליים בכוונה לגרום למותם עד שהוא עצמו ייהרג מאש כוחות הביטחון הישראליים.

13. לאחר מכן, באותו היום, הנאשם, אחמד ברנוחו וסעיד רמדאן נפגשו עם מחמד עבדאללה ופראס עיאנם באיזור הטמלון "סיטי אין" באלבירה.

14. מחמד ברנוחו הסביר למחמד עבדאללה ולפראס עיאנם כי סעיד רמדאן הנ"ל הוא המחבל המתאבד, אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשירצה אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל היותן.

15. מחמד עבדאללה ופראס עיאנם הסתירו את רוסי"ר M-16 והמחסניות , אשר אותם הביא הנאשם לצורך ביצוע פיגוע ההתאבדות המתוכנן, ברכב האיטוויו הנ"ל.

16. הנאשם ואחמד ברנוחו איחלו לסעיד רמדאן הצלחה השלושה נסעו לירושלים. הנאשם אמר למחמד עבדאללה ופראס עיאנם כי עליהם לקחת את סעיד רמדאן לבצע את פיגוע ההתאבדות בכל מקום בירושלים שהם יבחרו.

17. פראס עיאנם נהג ברכב האיטוויו, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ומחמד עבדאללה התיישב במושב האחורי.

18. מחמד עבדאללה ופראס עיאנם הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתוארו לעיל.

19. בירושלים, מחמד עבדאללה ופראס עיאנם נסעו לרחוב שהיי ביראה, שם הם הוציאו את רוסי"ר M-16 והמחסניות שהיו מוסתרות בתוך הרכב ומסרו אותם לידי סעיד רמדאן. מחמד עבדאללה עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי, כשהוא מחזיק בידיו את רוסי"ר M-16 ואת המחסניות.

20. מחמד עבדאללה ופראס הסיעו את סעיד רמדאן לרחוב הנביאים.

21. נמסוקך הנסיעה, סעיד רמדאן התלונן בפני מחמד עבדאללה ופראס עיאנם כי הנעלים החדשות, אשר אותם קנה לו הנאשם עבור הפיגוע, קטנות ולוחצות לו. מחמד עבדאללה הוריד את נעליו "ריבוק" ומסר אותו לסעיד רמדאן באומרו "תעביר לנ עדן עם נעלי ריבוק'י".

22. בהגיע לצומת הרחובות שטראוס והנביאים, מחמד עבדאללה ופראס עיאנם עצרו את רכב האיטוויו.

23. מחמד עבדאללה ופראס עיאנם אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שירצה ורבה אנשים.

24. לאחר שסעיד רמדאן ירד מהרכב עם רוסי"ר M-16 והתחמושת, מחמד עבדאללה ופראס עיאנם נסעו ממקומם ברכב האיטוויו, יצאו דרך שכונת מוסררה לכביש מיספר 1, וממשו נסעו דרך הכביש הראשי לרמאללה.

25. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של מחמד עבדאללה ופראס עיאנם, הגיע לרחוב יפו.

26. בסביבות השעה 20:16, כשהוא עומד מול ב"ית מס' 47 ברחוב יפו וו בסמוך לכך, סעיד רמדאן טעך את רוסי"ר M-16, אשר אותו טיפס הנאשם, צעק "אללה הוא אכבר!" ופתח ב"ירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו. בתחת האוטובוס הנמצאת במקום, בתוך אוטומטי "אנגד" קו 27 שהיה באותה עם בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך התחניית הסמוכות בכוונה לגרום למותם של אנשים רבים ככל היותן. סעיד רמדאן, כשהוא ממשיך לירות, נמלט ממקומם לעבר התחניות ונמצא ברחוב הרב קוק. שם סעיד רמדאן החליף מחסניות והמשיך לירות לעבר האזרחים בכוונה לגרום למותם. סעיד רמדאן ירה ברוסי"ר M-16, שב החזיק, מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים והשוטרים שהגיעו למקום.

12

ת.פ 242\02 פ"מ\יה"

27. במעשיו המתוארים לעיל, תאנאשם הנייל גרם בכוונה למותה של אורה (**סבטלנה**) **סנדלר** ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

28. לאחר שודו לאחמד ברנותי על ביצוע הפיגוע הנייל. אחמד ברנותי ניגש אל עלי פרג'י ברנותי וקיבל מהאחרון סכום של 1,000 דולר אַרהיי"ב עבור ביצוע הפיגוע הנייל. אחמד ברנותי נתן לנאשם וכן למחמד עבדאללה וַפַראס עיאמ 100 דולר ארהיי"ב לכל אחד עבור השתתפותם בהוצאה לפועל של הפיגוע הנייל.

**פרט שבעה-עשר:** (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנייל, בין באיזור יבין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנייל, במועד האמור, במקום האמור בפרט חאישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם בכוונה למותה של שרה המבורגר ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן ברוסי"ר M-16, אשר אותו סיפק הנאשם.

**פרט שמונה-עשר:** (פ.א. 502/02 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנייל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנייל, במועד האמור, במקום האמור בפרט השישה-עשר, במעשיו המתוארים בפרט האישום השישה-עשר, ניסה לגרום בכוונה למותם של אזרחים רבים ככל הניתן אשר היו באותה עת ברחוב יפו ובקרבתו. כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן ברוסי"ר M-16, אשר אותו סיפק הנאשם **נפצעו מעל 45 אזרחים.**

**עדי התביעה:**

1. רסי"מ יעקב ברזני, מ.א. 99106, לחייק יהודה. (נובה אמרת הנאשם מיום 25.02.02).
2. רסי"מ מרקו דהן, מ.א. 568394, לחייק יהודה. (נובה אמרת הנאשם מיום 19.03.02)
3. רסי"ר משה לוי, מ.א. 902845643, לחייק יהודה. (נובה אמרת הנאשם מיום 18.04.02)
4. מחמד סאמר אברהים עבדאללה, ת.ז. 979469954. (עצור) (ת.ת. 241/02)
5. חוסאם עקל רב'ב שחאדה, ת.ז. 975564733. (עצור) (ת.ת. 243/02)
6. היתם אלמונטפק חמדאן, ת.ז. 906934823. (עצור) (ת.ת. 265/02)
7. אחמד כאלכ מוצטפא ברגותי, ת.ז. 994466860. (עצור) (ת.ת. 444/02)
8. נאצר מחמד יוסף נאג'י (אבו-חמזד), ת.ז. 923918882. (עצור)
9. אמיר חסן סעיד אבו דאהח, ת. ז. 954263042. (עצור) (ת.ת. 356/02)
10. וויליאמ סאמח פארס אלחמוני (רימאוי), ת.ז. 904383452. (עצור) (ת ת. 322/02)
11. אכרם עבדאללה מחמד קאסם, ת.ז. 900959677. (עצור)

**פ.א. 3135/00 בנימין**

12. ויאד חמודה יעקוב חמודה, ת.ז. 902924117 (עצור) (ת.ת. 353/02)
13. ראאד מחמוד ג'מל שייך, ת. ז. 900248998. (עצור) (ת.ת. 633/00)
14. מחמד האשם אחמד-חסן נוארה, ת.ז. 921746111. (עצור) (ת.ת. 561/01)
15. מחמד עיסא יוסף ג'בר, ת.ז. 943584052. (עצור) (ת.ת. 573/01)
16. עיסויוי יוסף מוצטפא צלאחת, ת.ז. 911615599. (עצור) (ת.ת. 621/01)
17. רסי"ר חזרהה הספר, מ.א. 1021658, תחנת בנימין. (עדות)
18. אברהם לוי, ת.ז. 036360642. (פרטים בתביעה) (עדות)

13

P 6: 56

19. ד"ר מרק גוטקין, מ.ר. 72365, ביה"ח הדסה עין-כרם, ירושלים [מגיש תעודת רופא מיום 13.07.01]
20. ד"ר חן קוגל, המרכז הלאומי לרפואה משפטית. [מגיש חווי"ד מומחה] [יזומן ע"פ דרישה מפורשת של הסניגוריה בלבד]

**פ.א. 5/01 בנימין**
21. רסי"מ שבי עובדיה, מ.א. 560441, זיהוי יהודה. [מגיש דו"ח ביקור/תפיסה וסימון + דו"ח פעולה/תפיסות וסימון + לוחות תצלומים]
22. זאב אדר, ת.ז. 00260114. [פרטים בתביעה] [נסע ברכב שנפגע]
23. אברהם דוד, ת ז. 033781949. [פרטים בתביעה] [נפצע בפיגוע]

**מ.א. 234/01 מת"מ י-ם**
24. הרמן ספאק, מ.א. 6961290, צה"ל. [פרטים בתביעה] [עדות]
25. אריה רקח, ת.ז. 032271918. [פרטים בתביעה] [עדות]
26. יובל לב, ת.ז. 05405709. [פרטים בתביעה] [עדות]
27. רפ"ק ליאור נדבי, מ.א. 952122, מזי"פ, תחנת ציון. [מגיש דו"ח תפיסה וסימון]
28. רפ"ק עופר שלוש, מ.א. 916718, המעבדה הניידת, מזי"פ, מטא"יר - ירושלים. [מגיש דו"ח בדיקת רכב]
29. רסי"ר אבי ברקמן, מ.א. 972762, חקירות + תחנת ציון. [מגיש טופס לוואי למוצגים]
30. רסי"ל דניאל הורביטמן, מ.א. 1013796, משרד מוצגים - מזי"פ, מטא"יר - ירושלים. [מגיש תעדיע - קבלת מוצגים לבדיקה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
31. רפי"ק אורי בן-טובים, מעבדת נשק, מזי"פ, מטא"יר - ירושלים. [מגיש חווי"ד מומחה מתיה מזי"פ זב/07 - 555/01] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
32. ד"ר דוד תוך, מ.ר. 29086, צה"ל. [עדות - קביעת מותו של אלעזר עקיבא פשקוס ז"ל]
33. ד"ר דוד מורל, מ.ר. 20952, קופ"ח כללית - ירושלים. [עדות + מגיש הודעת פטירה]

**מ.א. 457/01 בנימין**
34. רסי"מ אלי סוטו, מ.א. 588038, תחות בנימין. [מגיש דו"ח פעולה]
35. רסי"מ משה לביא, מ.א. 903260, תחות בנימין. [מגיש זב"ד-דרכב GMC + שרטוט זירת הארוע + דו"ח תפיסה וסימון + טופס לוואי למוצגים]
36. רסי"מ שבי עובדיה, מ.א. 560441, מזי"פ יהודה. [מגיש לוחות תצלומים + מזכר]
37. רפ"ק ניסים מזרחי, מ.א. 926998, המעבדה הניידת, מזי"פ - מטא"יר, ירושלים. [מגיש לוחות תצלומים + דו"ח בדיקת רכב]
38. יוסף כהן, ת.ז. 069397198. [פרטים בתביעה] [נפצע בפיגוע הירי]
39. אבי בן-שימואל, ת.ז. 310677. [פרטים בתביעה] [הגיע ראשון לזירת הפיגוע]
40. ד"ר איזבלה שוורץ, מ.ר. 28684, ביה"ח הדסה - הר-הצופים, ירושלים. [מגישה תעודת רופא - סכום ביניים] [תזומן לפי דרישה מפורשת של הסניגוריה בלבד]

**מ.א. 2159/01 בנימין**
41. רסי"ר רונן נאמר, מ.א. 956813, תחות בנימין. [מגיש דו"ח פעולה]
42. רסי"מ שבי עובדיה. מ.א. 560441, מזי"פ, תחות בנימין. [מגיש לוחות תצלומים + דו"ח תפיסה וסימון]
43. רפ"ק עופר שלוש, מ.א. 916718, המעבדה הניידת, מזי"פ, מטא"יר - ירושלים. [מגיש דו"ח ביקור ראשוני בזירת הארוע - תפיסת הרמילים ושרידי קליעים]
44. רסי"ק חיום טולדנו, מ.א. 1004332, תחות בנימין. [מגיש זב"ד - שרשרת מיצג + טופס לוואי למוצגים + דו"ח ביקור בזירת העבירה]
45. רסי"ל דניאל הורביטמן, מ.א. 1013796, משרד מוצגים - מזי"פ, מטא"יר - ירושלים [מגיש תעדיע - קבלת מוצגים לבדיקה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
46. רפ"ק אבי בן טובים, מעבדת נשק, מזי"פ, מטא"יר - ירושלים. [מגיש חווי"ד מומחה מתיק מזי"פ זב/07 - 4238/01] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
47. ד"ר ולדימיר גולר, מ.ר. 26163, מד"א - תחנת לוד. [מגיש דו"חות רפואים מהשטח + הודעת פטירה + עדות]
48. ד"ר ניר עמית, ת.ז. 031849201, צה"ל. [עדות]
49. ד"ר ליברדרו נחמן, המכון הלאומי לרפואה משפטית. [מגיש שתי חווי"ד מומחה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
50. ציון סווירי. ת.ז. 000098850. [פרטים בתביעה] [זיהוי חרוגים]

14

ח ח תוך:162732c81a313742

פ.א. 7915/01 ציון

51. רס"ר ציון ששון, מ.א 957068, תחנת ציון. [מגיש דו"ח פעולה]
52. רפ"ק ליאור נדיבי, מ.א. 952127, מז"ים - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה + לוחות תצלומים]
53. רפ"ק יורם סער, תחנת ציון. [מוצא תרמילים בזירת האירוע - שרשרת ראיות]
54. רפ"ק עמי ליופר, מ.א. 959841, המעבדה הניידת, מז"ים, מטא"יר - ירושלים. [מגיש דו"ח בדיקת רכב - תפיסת שרידי קליע]
55. צוערת אדוה מלכה, מ.א. 1049089, מת"ימו - תחנת ציון. [מגישה טופס לוואי למוצגים]
56. רס"ב זוהר חוטר, מ.א. 512699, משרד מוצגים - מז"ים, מטא"יר - ירושלים. [מגישה תעו"צ - קבלת מוצגים לבדיקה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)
57. רפ"ק אבי קופמן, מעבדת נשק, מז"ים, מטא"יר - ירושלים. [מגיש חווי"ד מומחה מתיק מז"ים ז6/ 07-01 /4539) (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
58. ד"ר אויל יצחאק, מ.ר 31004, ביה"ח הדסה עין-כרם, ירושלים [מגיש תעודת שחרור של משה ויים] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
59. ד"ר יעקב גלוברמן, ביה"ח הדסה עין-כרם, ירושלים. [מגיש הודעת פטירה של מאיר וויסבויה ז"ל] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
60. משה ויים, ת.ז. 024001505. [פרטים בתביעה] (נפצע קשה בפיגוע)
61. יפה וקנין, ת.ז. 058857863. [פרטים בתביעה] (עדת ראיה)

פ.א. 481/01 ציון

62. טוני עמיאל, ת.ז. 032441040. [פרטים בתביעה] (נהנת רכב ההונדה)
63. פיני מימון, ת.ז. 025759762. [פרטים בתביעה] (נוסע רכב ההונדה)
64. פייח מימון, ת.ז. 040126084. [פרטים בתביעה] (נוסעת רכב ההונדה)

פ.א. 8379/01 ציון

65. רפ"ק ליאור נדיבי, מ.א. 952127, מז"ים - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה + דו"ח תפיסת וסימון]
66. רס"ר גבריאל עבד, מ.א. 958736, מת"ימו - תחנת ציון. [מגיש טופס לוואי למוצגים]
67. רפ"ק עמי ליופר, מ.א. 959841, המעבדה הניידת, מז"ים, מטא"יר - ירושלים [מגיש דו"ח בדיקת רכב - תפיסת שרידי קליע]
68. צוער דרור אברם, מ.א. 1039080, מת"ימו - תחנת ציון. [מגיש טופס לוואי למוצגים]
69. ציון שדה, ת.ז. 029505724, משרד מוצגים - מז"ים, מטא"יר - ירושלים [מגיש תעו"צ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
70. רס"ב יוסי בן ישראל, מ.א. 4771, משרד מוצגים - מז"ים, מטא"יר - ירושלים [מגיש תעו"צ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
71. רפ"ק אבי קופמן, מעבדת נשק, מז"ים, מטא"יר - ירושלים. [מגיש שתי חווי"ד מומחה מתיק מז"ים ז6/ 07-01 /4723) (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
72. סיגל שאוו, תחנת ציון. [מצאה תרמילים בשטח - שרשרת ראיות]
73. מלכה כהן, ת.ז. 038791386. [פרטים בתביעה] (נפגעה בפיגוע)
74. פנחס כהן, ת.ז. 038348256. [פרטים בתביעה] (נפגעה בפיגוע)
75. אווה כהן יחיאל, ת.ז. 059214320. [פרטים בתביעה] (עד ראיה - טופל בפצועים)
76. ד"ר יאיר עדן, מ.ר. 33272, ביה"ח הדסה עין-כרם, ירושלים [מגיש תעודת שחרור של פנחס כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
77. ד"ר מנחם גרוס, מ.ר 30416, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של מלכה כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)

פ.א. 39/02 בנימין

78. מפקח מיכאל מלכה, מ.א. 1040320, סיור - תחנת בנימין. [מגיש דו"ח פעולה]
79. רס"ים קובי סבג, מ.א. 56494, תחנת בנימין. [מניים זכ"יד תחקור הפניית הסימון]
80. רס"ים אלי קונגמן, מ.א. 46951, מז"ים יהודה. [מגיש לוחות תצלומים + אסף תרמילים בזירת האירוע]
81. רפ"ק עמי ליופר, מ.א. 959841, המעבדה הניידת, מז"ים, מטא"יר - ירושלים. [מגיש לוחות תצלומים + דו"ח בדיקת רכב]
82. רס"ר מאיר ועננו, מ.א. 1018332, תחנת בנימין. [מגיש טופס לוואי למוצגים]
83. רס"ב זוהר חוטר, מ.א. 512699, משרד מוצגים - מז"ים, מטא"יר - ירושלים. [מגישה תעו"צ - קבלת מוצגים לבדיקה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)
84. סגן ד"ר ניר אילון, מ.ר. 33216, צה"ל [פרטים בתביעה] (עדות - מגביעת מיתה של יואלה חן ז"ל + טיפול בפצועה)

15

ת"פ 162732 כי מזודות

85. דייר שאול בייט, מ.ר. 33027, ביה"ח הדסה עין-כרם, ירושלים. [מגיש העדות רופא - סיכום מחלה של רשל (רחל) ענין] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
86. רותל (רשל) עיני, ת.ז 075966614. [פרטים בתביעה] [מצויה בפיגוע]
87. סמיר ועקנין, ת.ז. 027798090. [פרטים בתביעה] [עדות + סקירצה] [עד ראיה]
88. נחשון ברואשי, ת.ז 05033235. [פרטים בתביעה] [זיהוי ההרוגה]

## מ.א. 502/02 ציון
89. פקד דרור אסרף, מ.א. 942276, מתי"מ - תחנת ציון. [מגיש דו"ח זכ"ד, תפיסה וסימון]
90. רס"ב יגאל דניאל, מתי"מ - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
91. צוער צביקה דיווגר, מתי"מ - תחנת ציון. [מגיש דו"ח זכ"ד, תפיסה וסימון + תצלומים]
92. רס"ל ציון טבדי, מ.א. 1043413, מתי"מ - תחנת ציון. [מגיש דו"ח פעולה - מציאת צולבת]
93. רס"ב אשר לוי, מ.א. 47720, תשאול - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
94. בני עזריאל, ת.ז. 303647598. [פרטים בתביעה] [עד ראיה - רדף אחרי המחבל]
95. עמאד ענידה, מ.א. 739037, מג"ב ירושלים. [עד ראיה - רדף אחרי המחבל ירה לעבר המחבל]
96. שי כהן, מ.א. 1042043, יחי"ם 2 - תחנת ציון. [עד ראיה - ירה לעבר המחבל]
97. נועם גבאי, ת.ז. 033121070, ימ"ר ירושלים. [עד ראיה - רדף אחרי המחבל ירה לעבר המחבל]
98. חנן בנעים, מ.א. 1049188, יסי"ם אומנועים - תחנת שלם. [עד ראיה - רדף אחרי המחבל, הרחיק את נשקו של המחבל לאחר שהמחבל נהרג]
99. גנאדי (גניא) מלניק, ת.ז. 30540091. [פרטים בתביעה] [עד ראיה - מאבטח שהיה במלון - ירה לעבר המחבל ופגע בו]
100. אלון חלפון, מ.א. 761775, ביליש - ימ"ר ירושלים. [עד ראיה - רדף אחרי המחבל, ירה לעבר המחבל]
101. אבי בן-עמי, מ.א. 996140, ביליש - ימ"ר ירושלים. [עד ראיה - ירה לעבר המחבל]
102. חיים צאפה, ת.ז. 033401019. [פרטים בתביעה] [עד ראיה - נהג אוטובוס "אגד" שהיה במקום הפיגוע]
103. בוריס אבטיסיאן, ת.ז. 309086171. [פרטים בתביעה] [עד ראיה]
104. יקוהדא"ל-ישראל עלוש, ת.ז. 310101647. [פרטים בתביעה] [עד ראיה]
105. משה ממן, ת.ז. 0624691. [פרטים בתביעה] [עד ראיה]
106. טובה יצחקי, ת.ז. 051270353. [פרטים בתביעה] [עד ראיה]
107. מזל יצחקי, ת.ז. 04330150. [פרטים בתביעה] [עדת ראיה]
108. ירון אברהמזון, ת.ז. 640712770. [פרטים בתביעה] [עד ראיה]
109. פנחס בנטורה, ת.ז. 055611230. [פרטים בתביעה] [עד ראיה]
110. כפיר קדם, ת.ז. 039381249. [פרטים בתביעה] [עד ראיה - ראה את המחבל מגיע לנקום הפיגוע ברגל]
111. יעקב סנדלר, ת.ז. 307750984. [פרטים בתביעה] [זיהוי גופתו של אורח (סבטלנה) סנדלר ז"ל]
112. דייר דפנה וילגר, מ.ר. 29234, ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של אורח (סבטלנה) סנדלר ז"ל] [תוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
113. דייר ילנה וסלוו, ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של שרה המבטרה ז"ל] [תוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

<u>רשימת עדים נוספת בנוגע לפצועים בפיגוע ברחוב יפו ביום 22.01.02 ותעודות רפואיות המשורות לפציעתם תימסר במהלך המשפט.</u>

[signature]

מייכאל קורייב    סרן
צבאי    תובע

תאריך: 12.01.2003
סימוכין: 02-242 מתיקון

16