

PLAINTIFF'S
EXHIBIT
366

| Israel | Defense | Forces |
|---|---|---|

In the Military Court
Beit El
Before Panel

Court File:                3739/02
Prosecution File:        733/02
Detailed Incident Files:   4934-43/02 Samaria
                            1359/02 Yiftach
                            412/02 Binyamin
                            580/02 Shafet
                            2069/02 Special Duties
                                Department Jerusalem

### In the case between the Military Prosecutor – Prosecuting

### – versus –

**Nasser Jamal Mousa Shawish**
Identity No. 993006188, born May 25, 1975, resident of Nablus/Ramallah
Under arrest since June 3, 2002

### - the Defendant -

### INDICTMENT

### The above named Defendant is hereby accused of carrying out the following offenses:

### First Count:

**Nature of the Offense:** Provision of shelter, an offense pursuant to Section 57 of the Security
Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, within the Region, at the end of 2000
through the beginning of 2001, or thereabouts, assisted or provided shelter to a person who had
committed an offense against security legislation, or who is involved or was involved in any
action whose aim is to disturb the public peace, the wellbeing of the Israel Defense Forces and its
soldiers, and the existence of public order, or that there are reasonable grounds to suspect that he
had done so, whether by providing information, shelter, food, drink, money, clothes, weapons,
ammunition, supplies, fodder, transportation, kerosene or other kind of fuel or in some other
way, specifically:

[Stamp] P 5: 293

1

The above named Defendant, during the said period, on a number of different occasions, transported persons who were wanted by the Israeli security forces for having carried out lethal terrorist attacks against Israeli civilians and Israel Defense Forces soldiers. Among others, the Defendant transported his brother, Haled Shawish, Mohanad Abu Halawa, Thabeth Mardawi, Hikmat Abu al-Habel.

1

Prosecution File 733/02

[Stamp] P 5: 293 [continued]

**Second Count:**

**Nature of the Offense:** Membership and activity in an unlawful association, an offense pursuant to Regulations 84(1)(a) and 85(1)(a) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, from early 2001 and up to the date of his arrest, was a member or acted as member of an organization which is an unlawful association, specifically:

The above named Defendant, during the said period, was a member of the Al-Aqsa Martyrs Brigades ("*Kataib Shuhada al-Aqsa*"), the military wing of the Fatah Tanzim, which is an unlawful association.

The Defendant was recruited into the ranks of the al-Aqsa Martyrs Brigades by his brother, Khaled Shawish.

Following his recruitment, the Defendant received the operational nickname "Adham."

The Defendant operated as part of the al-Aqsa Martyrs Brigades as will be described in the following counts of the indictment.

**Third Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, from the end of 2000 and up to the date of his arrest, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, during the said period, on 5 different occasions, in the evening hours, fired a Kalashnikov assault rifle from a distance of 400 meters toward the Israel Defense Forces camp located adjacent to the village of Tayasir, with the intention of causing the deaths of Israel Defense Forces soldiers. Together with the Defendant were Mohamed Basharat, Fuad Basharat, [and] Khaled Shawish, who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

[Stamp] P 5: 294

3

**Fourth Count:**

**Nature of the Offense:** Manufacture of a bomb, an offense pursuant to Section 53(a)(3) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, during 2001 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary device, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, in Nablus and in Jenin or thereabouts, on a number of different occasions, produced explosive devices, without having a permit granted by or on behalf of the military commander.

**Fifth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, during the said period, on a number of different occasions, in the evening hours, fired a Kalashnikov assault rifle from a distance of 400 meters toward the "Bezeq" Israel Defense Forces camp, with the intention of causing the deaths of Israel Defense Forces soldiers. Together with the Defendant were Taar al-Rafa, Fares Haliliya, [and] Rabia Sa'adi, who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

On one of the occasions, the Defendant's accomplice Taar al-Rafa, who was together with him at the time of the shooting, was wounded during an exchange of fire with the Israel Defense Forces, which developed there as a result of the shooting by the Defendant and his accomplices.

2

Prosecution File 733/02

[Stamp] P 5: 294 [continued]

4

**Sixth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, together with others, fired a Kalashnikov assault rifle from a distance of 400 meters toward the "Sanur" Israel Defense Forces camp, with the intention of causing the deaths of Israel Defense Forces soldiers. Together with the Defendant were Rabia Sa'adi, Taar Abu Rafa, Fares Haliliya, [and] Rabia Abu Rub, who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

**Seventh Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, about one month after carrying out that attributed to him in the previous count of the indictment, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, during the night, together with Rabia Abu Rub, Mansour, Fares Haliliya, Amjad Fahur, and one other person, placed four explosive devices, weighing 5 kilograms each, on the main road near Geva. The Defendant and his accomplices placed two explosive devices on each side of the road. After the Defendant and his accomplices had placed the above mentioned explosive devices, they hid by the road.

When the Defendant and his above named accomplices saw an Israel Defense Forces jeep, which was traveling on the above mentioned road and approaching the above mentioned explosive devices, the Defendant and his above named accomplices activated the said explosive devices by means of cellular phones, with the intention of causing the deaths of Israel Defense Forces soldiers who were traveling in the said jeep.

[Stamp] P 5: 295

As a result of the detonation of the above mentioned explosive devices, damage was caused to the said Israel Defense Forces jeep.

While carrying out the terrorist attack described above, the Defendant and his above named accomplices were armed with Kalashnikov assault rifles.

## Eighth Count:

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, about one month after carrying out that attributed to him in the previous count of the indictment, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, together with Rabia Abu Rub and Mahmoud Tualba, placed an explosive device on the main road adjacent to Arraba, in the vicinity of Mirka, with the intention of detonating it and causing the deaths of Israeli civilians. Subsequently, Mahmoud Tualba returned to Jenin.

The Defendant and Rabia Abu Rub waited there, and when they saw an Israel Defense Forces jeep, they activated the above mentioned explosive device against it, with the intention of causing the deaths of Israel Defense Forces soldiers. As a result of the detonation of the above mentioned explosive device, damage was caused to the said Israel Defense Forces jeep.

During execution of the above mentioned terrorist attack, the Defendant's two accomplices were armed with weapons.

3

Prosecution File 733/02

[Stamp] P 5: 295 [continued]

6

**Ninth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, about one month after carrying out that attributed to him in the previous count of the indictment, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, together with Mohamed Basharat and Sama Abu Khanish, placed an explosive device on the main route leading to the "Tayasir" Israel Defense Forces camp, located in the Jordan Valley, with the intention of causing the deaths of Israel Defense Forces soldiers. The Defendant and his accomplices attempted to activate the above mentioned explosive device against an Israel Defense Forces jeep that passed the place, with the intention of causing the deaths of Israel Defense Forces soldiers, but due to a technical fault, the above mentioned explosive device did not explode. Subsequently, the Defendant and his accomplices collected the unexploded explosive device and returned with it to Jenin.

**Tenth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

At the said time, Ali Sapuri, a military operative in the Palestinian Islamic Jihad, approached Abdel Karim Ratheb Younis Aweis, a senior military operative in the al-Aqsa Martyrs Brigades – the military wing of the Fatah Tanzim, and suggested to the latter to carry out a terrorist attack against Israeli targets. It was decided that the said terrorist attack would be carried out jointly by operatives of the Islamic Jihad and operatives of the al-Aqsa Martyrs Brigades.

The Defendant was recruited by Abdel Karim Aweis for the purpose of carrying out the planned terrorist attack. Ali Sapuri recruited Mohamed Nasser Abu Bakir to carry out the planned terrorist attack.

[Stamp] P 5: 296

The Defendant selected the place for carrying out the planned terrorist attack, and that was the Qusin area. The Defendant rented a vehicle in Nablus, and drove it to Jenin. In Jenin the

7

Defendant met with Ali Sapuri and Mohamed Abu Bakir. From there, the Defendant and Mohamed Abu Bakir traveled to the place, which the Defendant had selected for carrying out the planned terrorist attack.

Upon arriving at the above mentioned place, the Defendant and Mohamed Abu Bakir placed an explosive device adjacent to the road. The Defendant and his above named accomplice hid themselves near the said place, with the aim of activating the above mentioned explosive device against Israel Defense Forces soldiers and causing their deaths.

The plan of the Defendant and his above named accomplice was not executed, since some Palestinian workers pulled up near the above mentioned explosive device, and the Defendant and his accomplice did not activate the explosive device against an Israel Defense Forces jeep, which arrived at that place, for fear of harming the said workers.

Subsequently, the Defendant came to the place and collected the above mentioned explosive device.

### Eleventh Count:

**Nature of the Offense:** Being in disguise, an offense pursuant to Section 55 of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, at the time stated in the previous count of the indictment, used a disguise in circumstances in which the use of a disguise might harm the public peace, the wellbeing of Israel Defense Forces units, the defense of the region, or the maintenance of public order, specifically:

The above named Defendant, at the said time, carried out that attributed to him in the previous count of the indictment, while disguised as a woman.

4

Prosecution File 733/02

[Stamp] P 5: 296 [continued]

## Twelfth Count:

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, in the middle of 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, conspired with Thabeth Mardawi to murder two Israeli civilians who, according to the information that had reached the Defendant, came every Saturday to Nablus.

On one Saturday, the Defendant went out with Thabeth Mardawi, both of them being armed with M-16 assault rifles, to carry out the planned terrorist attack. The Defendant and his above named accomplice came to Qusin Junction.

The Defendant and Thabeth Mardawi positioned themselves there and waited for the two above mentioned Israeli civilians, with the aim of shooting at them and causing their deaths. The Defendant and his accomplice waited there for about 4 hours, but the above mentioned Israeli civilians did not arrive, and so the Defendant and his accomplice returned to Nablus.

## Thirteenth Count:

**Nature of the Offense:** Possession of a firearm, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the middle of 2001 and up to the date of his arrest, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, possessed a Model-14 handgun, which he had received from Mohamed Tualba through Mohamed Basharat, this being without a permit granted by or on behalf of the military commander.

[Stamp] P 5: 297

9

At the time of his arrest, the Defendant was carrying the above mentioned handgun, with two magazines full of bullets, and a further 40 bullets for the above mentioned handgun.

**Fourteenth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, in the middle of 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, for four consecutive days, at the Jenin Refugee Camp or in its vicinity, on a number of different occasions, fired a Kalashnikov assault rifle at Israel Defense Forces soldiers with the intention of causing their deaths. Together with the Defendant were other people: Abdel Karim Aweis, Thabeth Mardawi, Mahmoud Tualba, Mohamed al-Anini, Rabia Abu Rub, Hajj Ali Sapuri, Nidal al-Badawi, who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

**Fifteenth Count:**

**Nature of the Offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition Against Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the end of 2001 or thereabouts, traded or handled in some other manner war materiel, without a permit signed by or on behalf of the Region commander, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, purchased an M-16 assault rifle from Nasser Shawish for 3,500 Jordanian Dinars, this being without a permit signed by or on behalf of the Region commander. He received the money for purchasing the weapon from Thabeth Mardawi.

After purchasing the above mentioned weapon, the Defendant transferred it to Jenin, to Thabeth Mardawi.

5

Prosecution File 733/02

[Stamp] P 5: 297 [continued]

**Sixteenth Count**:

**Nature of the Offense**: Trading in war materiel, an offense pursuant to Section 2 of the Prohibition Against Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the Offense**: The above named Defendant, in the Region, at the end of 2001 or thereabouts, traded or handled in some other manner war materiel, without a permit signed by or on behalf of the Region commander, specifically:

The above named Defendant, at the said time, in the village of Qalil or its vicinity, purchased a number of empty magazines for a Sig Sauer handgun from a person named Ziad, this being without a permit signed by or on behalf of the Region commander.

The Defendant purchased the said magazines at the request of Abu al-Qasam Abdel Halum, whose was the person responsible for the Palestinian Islamic Jihad in Jenin.


**Seventeenth Count**:

**Nature of the Offense**: Holding office in an unlawful association, an offense pursuant to Section 85(1)(b) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense**: the above named Defendant, in the Region, from early 2002 and up to the date of his arrest, managed or assisted in the management of an unlawful association, or held some office or position in an unlawful association, specifically:

The above named Defendant, during the said period, served as coordinator of military activity of the al-Aqsa Martyrs Brigades ("*Kataib Shuhada al-Aqsa*"), the military wing of the Fatah Tanzim, which is an unlawful association, between the regions of Jenin, Tulqarm, Nablus and Ramallah.


**Eighteenth Count**:

**Nature of the Offense**: Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 5: 298

**Details of the Offense**: The above named Defendant, in the Region, at the beginning of 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

11

The above named Defendant, at the said time, in or near the Jenin Refugee Camp, together with Abdel Karim Ratheb Younis Aweis and others, fired at Israel Defense Forces soldiers with the intention of causing their deaths.

**Nineteenth Count: Detailed Incident File 1359/02 Yiftach**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on January 25, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  In January 2002, the Defendant was approached by Rabia Rafiq Abu Rub, a senior military operative in the Palestinian Islamic Jihad organization, who had previously collected information regarding those places in the State of Israel where a massive terrorist attack could be carried out, and Ziad Younis Ahmed Younis.

2.  Ziad Younis asked the Defendant to assist in transporting a young man who wished to carry out a suicide from his home in the Askar Refugee Camp in Nablus.

3.  The Defendant traveled with Ziad Younis to the Askar Refugee Camp, where they med the above mentioned young man, who was Bahaa (Juad) Ziad Shalhati.

4.  The Defendant and Ziad Younis transported Bahaa Shalhati to an apartment in Nablus.

5.  Rabi Abu Rub brought Safwat Abdurrahman Abu-Ayisha to the said apartment in Nablus.

6

Prosecution File 733/02

[Stamp] P 5: 298 [continued]

6. To the said apartment also came Mohanad Abu-Ayisha who, together with the Defendant and Ziad Younis, filmed, with a video camera, Bahaa Shalhati and Safwat Abu-Ayisha prior to carrying out the planned suicide terrorist attack, with the two latter holding a Kalashnikov assault rifle and an M-16 assault rifle.

7. At the said apartment, Rabia Abu Rub prepared the explosive device, comprised of 6 kilograms of explosive, for the purpose of executing the planned suicide terrorist attack. Rabia Abu Rub concealed the explosive device in a television packaging carton.

8. The Defendant and his above named accomplices prepared a plan, under which a combined suicide terrorist attack would be carried out in the vicinity of the Central Bus Station in Torah; Safwat Abu-Ayisha would detonate the explosive device, which he would be carrying, with the aim of causing the deaths of as many civilians as possible, and in parallel, Bahaa Shalhati would open fire with a Kalashnikov assault rifle with the aim of causing the deaths of as many civilians as possible, and would continue shooting until he was killed. The planned terrorist attack was the result of cooperation between the military wing of the Palestinian Islamic Jihad organization, which provided the suicide terrorist – Safwat Abu-Ayisha, and the explosive device, and the al-Aqsa Martyrs Brigades – the military wing of the Fatah Tanzim, which provided the second suicide terrorist – Bahaa Shalhati –and the weapons.

9. The Defendant wanted to teacher Bahaa Shalhati how to use the Kalashnikov assault rifle, but the latter refused and claimed that he knew how to fire the said weapon.

10. The above named Defendant, during the afternoon, at the request of Rabia Abu Rub, drove the two suicide terrorists – Bahaa Shalhati and Safwat Abu-Ayisha, with the two equipped with the above mentioned explosive device and a Kalashnikov assault rifle with 4 magazines full of bullets. Traveling together with the Defendant, who was armed with a handgun on this trip, were Ziad Younis and Salah Hassin Mohamed Buchri. During the journey the Defendant got out of the vehicle and purchased a bag, into which were placed the above mentioned Kalashnikov assault rifle and the magazines, as well as new clothes for the suicide terrorists.

11. In the Zawata area, Ziad Younis left the Defendant and his accomplices and returned to Nablus. The Defendant, together with his above named accomplices, bypassed the Israel Defense Forces checkpoint located there on foot, and traveled by taxi to Tulqarm. Salah Buchri traveled in one taxi to "open the road" for the Defendant and the two suicide terrorists.

[Stamp] P 5: 299

13

12. At this stage Rabia Abu Rub telephoned the Defendant and gave the Defendant the cell phone number of the person who was supposed to assist the Defendant and the above named suicide terrorists by "opening a travel route." The Defendant attempted to call the above mentioned person, but without success.

13. The Defendant and the above mentioned two suicide terrorists arrived in Tulqarm in the evening.

14. The Defendant and the two suicide terrorists stayed in Tulqarm at the home of Anor Manur Shams, whom the Defendant contacted after receiving the cell phone number of the latter from Rabia Abu Rub.

15. The next day, on January 25, 2002, in the morning, the Defendant came to the taxi station in Tulqarm, together with Safwat Abu-Ayisha, Bahaa Shalhati and Salah Buchri, with the two suicide terrorists carrying with them the explosive device described above, which was concealed in a television packaging carton, and the Kalashnikov assault rifle with magazines full of bullets, which were in the bag.

16. At this stage, the Defendant left his above named accomplices and returned to Nablus.

17. Bahaa Shalhati and Safwat Abu-Ayisha arrived in Tel Aviv by taxi. There the two of them came to the area of the old Central Bus Station. The two of them decided to carry out the planned terrorist attack in the said location.

18. At around 11:00 a.m., on January 25, 2002, in Neve Shaanan Street in Tel Aviv, adjacent to No. 30, Safwat Abu-Ayisha activated the explosive device described above, with the intention of causing the deaths of as many people as possible.

19. The above mentioned explosive device exploded, and as a result of its detonation, 28 people were wounded.

20. Safwat Abu-Ayisha was killed on the spot as a result of detonation of the above mentioned explosive device.

[Stamp] P 5: 299 [continued]

14

21. Bahaa Shalhati, who according to the plan described above, was supposed to open fire on civilians with the Kalashnikov assault rifle, following detonation of the above mentioned explosive device, with the aim of causing their deaths, was not able to take the said Kalashnikov assault rifle from the bag. When Bahaa Shalhati realized that he would not be able to open fire immediately, he threw the bag with the rifle and the ammunition away, and attempted to flee from the scene, but was arrested by officers of the Israel Police.

7

Prosecution File 733/02

[Stamp] P 5: 299 [continued]

15

**Twentieth Count**: **Detailed Incident File 1359/02 Yiftach**

**Nature of the Offense:** Malicious damage to property, an offense pursuant to Section 53c of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on January 25, 2002, or thereabouts, destroyed property or maliciously and unlawfully damaged it, specifically:

The above named Defendant, at the place stated in the previous count of the indictment, by his actions as described in the previous count of the indictment, caused extensive damage to houses, shops and businesses, which were in the vicinity of the place where the explosive device was detonated by Safwat Abu-Ayisha, as described in the previous count of the indictment.

**Twenty-First Count:**

**Nature of the Offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition Against Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the beginning of 2002 or thereabouts, traded or handled in some other manner war materiel, without a permit signed by or on behalf of the Region commander, specifically:

The above named Defendant, at the said time, in Ramallah or its vicinity, met with Mouzid al-Masri, who requested that the Defendant look after an explosive belt, weighing about 18 kilograms, at his home. The Defendant agreed, and received the said explosive belt from the above named Mouzid al-Masri.

A day later, the Defendant met with the head of the Fatah Tanzim in the region, Marwan Barghouti. Marwan Barghouti asked the Defendant if he knew of people who were prepared to supply explosive belts. The Defendant informed Marwan Barghouti that he had in his possession the above mentioned explosive belt, belonging to Mouzid al-Masri. At Marwan Barghouti's request, the Defendant – during that conversation – called Mouzid al-Masri, and received the latter's consent to give the above mentioned explosive belt to Marwan Barghouti. Marwan Barghouti informed the Defendant that he would send his bodyguard and assistant, Ahmed Barghouti, known as "al-Faransi," to the Defendant, to receive the above mentioned explosive belt.

[Stamp] P 5: 300

16

A day later, the Defendant met in Ramallah with the above named Ahmed Barghouti, and gave him the said explosive belt.

**Twenty-Second Count: Detailed Incident File 412/02 Binyamin**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, on February 27, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  The above named Defendant, at the end of January – beginning of February 2002, or thereabouts, met in Nablus with Darine Abu-Ayisha (hereinafter: Darine), the cousin of Safwat Abu-Ayisha, who carried out the suicide terrorist attack in Neve Shaanan Street in Tel Aviv on January 25, 2002, with the assistance of the Defendant. Darine expressed to the Defendant her willingness to carry out a suicide terrorist attack.

2.  In February 2002, in Ramallah, the Defendant again met with Darine, who again asked that the Defendant send her to carry out a suicide terrorist attack, so as to cause the deaths of as many Israeli civilians as possible.

3.  The contacted Abdel Karim Ratheb Younis Aweis, Mohanad Abu Halawa, and Mohamed Naifa, and reported to them that there was a young woman who wished to carry out a suicide terrorist attack. Abdel Karim Aweis informed the Defendant that he agreed to send the said young woman to carry out a suicide terrorist attack, and that he would prepared an explosive device for this purpose. Abdel Karim Aweis informed the Defendant that he was to photograph the young woman before she left to carry out the planned suicide terrorist attack.

4.  The Defendant brought Darine to the apartment of his brother, Khaled Shawish, located in Beituniya. The Defendant brought to that apartment a photographer named Ahmed Ghasi, and together with the latter filmed Darine in advance of her carrying out the planned suicide terrorist attack. During the filming, Darine read out a testament.

8

Prosecution File 733/02

[Stamp] P 5: 300 [continued]

17

5. The next day, January 27, 2002, Abdel Karim Aweis, Mohanad Abu-Halawa and Mohamed Abu-Rabia came to the apartment, bringing with them a belt, in which was an explosive device, for the purpose of carrying out the planned suicide terrorist attack.

6. Since Darine refused to have a man dress her with the explosive belt, Leila Mohamed Salah Bukhari, at the request of the Defendant, who was married to her older sister, dressed Darine with the above mentioned explosive belt. When Leila Bukhari was putting the explosive belt on Darine's body, she noticed that one of the shoulder belts of the explosive belt was loose, and she tightened it using a pin.

7. The Defendant and his above named accomplices planed for Darine to come to the Israel Police station in Jaffa, and there detonate the explosive device carried on her body, thus causing the deaths of as many Israeli civilians as possible.

8. Subsequently the Defendant's accomplices left the above mentioned apartment, and the Defendant remained there till the evening with Darine and Leila Bukhari.

9. Fawzi Marar enlisted Musa Sari Hasune and Hafez Abdel Fatah Maqbal, for the purpose of transporting Darine into the State of Israel, so as to carry out the planned suicide terrorist attack there.

10. In the evening hours of that day, the Defendant came, together with Leila Bukhari and Darine, carrying the above mentioned explosive device on her body, to the Abu Riya Hospital in Ramallah. Thee they met with Abdel Karim Aweis, Mohamed Abu Rabi, Fawzi Marar and Mohanad Abu-Halawa.

11. From there the above named accomplices of the Defendant transferred Darine to the A-Ram checkpoint. At A-Ram checkpoint, Darine got into the blue Subaru, license plate number 7797787, belonging to Musa Sari Hasune and Hafez Abdel Fatah Maqbal, who came there at the request of Fawzi Marar, and were supposed to transport Darine to the Israel Police station in Jaffa so that Darine should set off the explosive device, mounted on her body, there, thus causing the deaths of as many Israeli civilians as possible.

[Stamp] P 5: 301

18

12. On January 27, 2002, at around 10:27 p.m., at the Maccabim Israel Defense Forces and Israel Police checkpoint on Road 443, the vehicle in which Darine, Musa Hasune and Hafez Maqbal was stopped for inspection by Israel Defense Forces soldiers and Israel Police officers. When Darine realized that she would not be able to get past the above mentioned Maccabim checkpoint, and get into the territory of the State of Israel to carry out the suicide terrorist attack as planned, she set off the explosive device carried on her person, with the intention of causing the deaths of Israel Police officers and Israel Defense Forces soldiers who were at the above mentioned checkpoint.

13. As a result of detonation of the explosive device, which Darine was carrying on her person, an Israel Police officer, Mordechai Tal, was seriously wounded in the abdomen, with two more policemen, David Cohen and Shaul Cohen, lightly wounded.

14. Darine was killed on the spot as a result of detonation of the above mentioned explosive device.

## Twenty-Third Count:

**Nature of the Offense:** Possession of a firearm, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the beginning of March 2002 through the middle of April 2002 or thereabouts, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, was in possession of an M-16 assault rifle, which he has received from Mohanad Abu-Halawa, this being without a permit granted by or on behalf of the military commander.

The Defendant also fired the said M-16 assault rifle during the funeral of the above named Mohanad Abu-Halawa. The Defendant concealed the above mentioned M-16 assault rifle when he fled from Ramallah, following the entry of Israel Defense Forces units into the town.

9

Prosecution File 733/02

[Stamp] P 5: 301 [continued]

**Twenty-Fourth Count:** **Detailed Incident File 580/02 Shafet**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 10, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  The above named Defendant, at the beginning of March 2002, in Ramallah or its vicinity, met with Abdel Karim Ratheb Younis Aweis. Abdel Karim Aweis informed the Defendant that there was a person who wished to carry out a suicide terrorist attack within the State of Israel, with the aim of causing the deaths of as many people as possible.

2.  Abdel Karim Aweis asked the Defendant to assist with filming the suicide terrorist prior to the latter's departure to carry out the planned suicide terrorist attack. The Defendant agreed to film the suicide terrorist at the home of his brother, Khaled Shawish, located in Beituniya.

3.  On March 9, 2002, the Defendant and Abdel Karim Aweis came to the said apartment in Beituniya. The suicide terrorist, Durgham Ezzat Mohamed Sa'id Zakarna, also came to the said apartment, as did the photographer, Ahmed Ghasi, who had been ordered by the Defendant, and another journalist. During the filming of the suicide terrorist, Samir Aweis, brother of Abdel Karim Aweis, was also present.

4.  Subsequently Samir Aweis traveled, together with Durgham Zakarna, to the apartment of Abdel Karim Aweis in the al-Amari Refugee Camp. On their way to that location, a helicopter fired a missile at the vehicle. Durgham Zakarna managed to flee from the above mentioned vehicle, while Samir Aweis was killed as a result of the above mentioned rocket strike.

5.  In line with the plant drawn up previously between the Defendant and his accomplices, Durgham Zakarna received from Mohamed Naifa, known as "Abu Rabi," a Kalashnikov assault rifle, ammunition and two hand grenades, and on March 14, 2002, left Ramallah to carry out the planned suicide terrorist attack, with the aim of causing the deaths of as many people as possible.

[Stamp] P 5: 302

6. On March 10, 2002, at around 2:30 p.m., the above named suicide terrorist Durgham Zakarna) attempted to infiltrate into the State of Israel, while armed with a Kalashnikov assault rifle, magazines full of bullets and two hand grenades, this being with the aim of carrying out the planned suicide terrorist attack and intentionally causing the deaths of as many civilians as possible. Durgham Zakarna was brought to the A-Ram checkpoint by Issa Mohamed Mahmoud Jabrin, who was recruited for this mission by the head of the Palestinian Authority's General Intelligence – Tawfik Tirawi.

7. At the said place and time, at the A-Ram checkpoint or thereabouts, the above named suicide terrorist, Durgham Zakarna, was killed by the Israeli security forces when attempting to infiltrate into the State of Israel as a stated above.

**Twenty-Fifth Count: Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1. The above named Defendant, in February 2002, in or near Nablus, met with Rabia Abu Rub, who asked the Defendant to transfer a person with "belongings" to Tulqarm. The Defendant agreed to do so, and then Rabia Abu Rub introduced the Defendant to Mohamed Hashaiqa.

2. The Defendant traveled together with Mohamed Hashaiqa from Nablus to Tulqarm. During the trip, the Defendant understood that Mohamed Hashaiqa was carrying on his person a belt with an explosive device, with the aim of carrying out a suicide terrorist attack. The Defendant and Mohamed Hashaiqa were unable to enter Tulqarm, which was surrounded by Israel Defense Forces troops, and were also arrested by the Preventive Security Service of the Palestinian Authority, after they were informed by Israeli sources that the Defendant and Mohamed Hashaiqa intended to carry out a suicide terrorist attack. Before the two were arrested, the Defendant removed the above mentioned explosive belt from Mohamed Hashaiqa's person.

10

Prosecution File 733/02

[Stamp] P 5: 302 [continued]

3.  Following their arrest, the Defendant and Mohamed Hashaiqa were transferred by the Palestinian Authority to Ramallah, and there released.

4.  Following their release, Mohamed Hashaiqa contacted the Defendant and Abdel Karim Ratheb Younis Aweis, and informed them of his willingness to carry out a suicide terrorist attack. The Defendant and Abdel Karim Aweis agreed to prepare Mohamed Hashaiqa and to equip him with everything necessary for the purpose of carrying out a suicide terrorist attack within the State of Israel.

5.  Mohamed Hashaiqa told the Defendant and Abdel Karim Aweis that he had been approached by Abu Iyad al-Shama, an intelligence officer of the Palestinian Authority in Ramallah, who proposed to send Mohamed Hashaiqa to carry out a suicide terrorist attack. The Defendant and Abdel Karim Aweis persuaded Mohamed Hashaiqa not to believe an intelligence officer of the Palestinian Authority, out of concern that he would hand him over to Israel. The Defendant and Abdel Karim Aweis persuaded Mohamed Hashaiqa that they would take care of everything necessary so as to send him to carry out a suicide terrorist attack within the State of Israel.

6.  The Defendant found a rented apartment in Ramallah, in which he and his accomplices were to prepare the planned suicide terrorist attack.

7.  The Defendant took Abdel Karim Aweis and Mohamed Hashaiqa to the said apartment.

8.  At the request of Abdel Karim Aweis, the Defendant recruited Sigoud Shuli, a resident of Asira Ash-Shamaliya, to carry out the above mentioned suicide terrorist attack, after the Defendant and Abdel Karim Aweis decided that there would be two suicide terrorists, a man and a woman, who would carry out a double suicide terrorist attack, with the aim of causing the deaths of as many Israeli civilians as possible. Sigoud Shuli also arrived at the said apartment.

9.  In the said apartment, at the Defendant's request, photographer Ahmed Ghasi filmed, with a video camera, Mohamed Hashaiqa and Sigoud Shuli, prior to their carrying out the planned suicide terrorist attack.

10. At this stage, the Defendant decided that he did not want Sigoud Shuli to take part in carrying out the suicide terrorist attack, and he informed her family as to their daughter's intentions. As a result, Sigoud Shuli returned to the Nablus area, from which she fled to Jordan.

[Stamp] P 5: 303

22

11. Abdel Karim Aweis contacted the office of the head of General Intelligence in the Palestinian Authority, Tawfik Tirawi, and brought explosives from there. From the said explosives, Abdel Karim Aweis produced an explosive device for the purpose of carrying out the planned suicide terrorist attack.

12. Subsequently, the Defendant and Abdel Karim Aweis prepared the explosive belt.

13. For the purpose of transporting Mohamed Hashaiqa into the State of Israel to carry out the planned suicide terrorist attack, the Defendant enlisted Sanah Mohamed Shehadeh, who he had previously met through his fiancée, Obeidah Jaber (Abu-Ayisha).

14. On March 20, 2002, the Defendant met in Ramallah with the head of the Fatah Tanzim in the region, Marwan Barghouti. The Defendant informed Marwan Barghouti that Abdel Karim Aweis was about to send a suicide terrorist to carry out a suicide terrorist attack within the State of Israel. Marwan Barghouti asked if the Defendant and Abdel Karim Aweis were in need of anything to execute the planned terrorist attack. Although the Defendant responded negatively to that question, Marwan Barghouti gave the Defendant the sum of 600 United States dollars.

15. On March 21, 2002, the Defendant met in Ramallah with Abdel Karim Aweis and with Sanah Shehadeh. Abdel Karim Aweis explained to Sanah Shehadeh that she was to transport the suicide terrorist to Jerusalem, so as to carry out the planned suicide terrorist attack there, since she knew Jerusalem and the roads leading there well.

16. On the same day, the Defendant, Abdel Karim Aweis and Mohamed Hashaiqa visited the offices of Hassin a-Sheikh, Secretary-General of the Fatah in the region. There, Abdel Karim Aweis received from Hassin a-Sheikh, money and two hand grenades, for the purpose of executing the planned terrorist attack.

17. With the said money, the Defendant and his above named accomplices purchased clothes for Mohamed Hashaiqa, in which the latter carried out the suicide terrorist attack, which will be described below.

18. Subsequently, the Defendant and his above named accomplices came to the apartment in Ramallah, at which were the above named Mohamed Hashaiqa, Hajj Khader and Mouzid al-Masri. Abdel Karim Aweis and Mouzid al-Masri prepared Mohamed Hashaiqa to carry out the planned suicide terrorist attack, and together with the Defendant, they dressed him in the above mentioned explosive belt.

[Stamp] P 5: 303 [continued]

19. Subsequently, Abdel Karim Aweis contacted Kahira Sa'id Sa'adi, and asked her to assist in transferring the suicide terrorist to Jerusalem.

20. Some time thereafter, Kahira Sa'adi came to the Defendant and his above named accomplices.

11

Prosecution File 733/02

[Stamp] P 5: 303 [continued]

24

21. During the afternoon, on March 21, 2002, the Defendant drove from Ramallah to Qalandiya checkpoint in a rented vehicle, taking with him Mohamed Hashaiqa, who wore the above mentioned explosive belt, and Sanah Shehadeh and Kahira Sa'adi, who accompanied the above named suicide terrorist.

22. Subsequently, after parting from Mohamed Hashaiqa with a kiss, the Defendant returned to Ramallah.

23. Kahira Sa'adi and Sanah Shehadeh took Mohamed Hashaiqa, carrying on his person the above mentioned explosive belt, to King George Street in Jerusalem. The two chose the places since it is full of people during the afternoon, and so the two of them decided that it was "appropriate" for carrying out the planned suicide terrorist attack.

24. After Sanah Shehadeh and Kahira Sa'adi left Mohamed Hashaiqa in King George Street, Mohamed Hashaiqa came to the crosswalk adjacent to the Aroma café, near the corner of King George and Hahistadrut Streets.

25. At the said location, at approximately 4:20 p.m. on the said day, Mohamed Hashaiqa set off the explosive device, carried on his person, while in a crowd of people, with the aim of causing the deaths of as many civilians as possible.

26. After the Defendant and his accomplices were informed of execution of the planned suicide terrorist attack, the Defendant passed the video tape, with the recorded "testament" by Mohamed Hashaiqa, to journalist Ahmed Ghasi.

27. Subsequently, the Defendant and Abdel Karim Aweis, contacted Hassin a-Sheikh, Secretary-General of the Fatah in the region, and they formulated an announcement, in which the al-Aqsa Martyrs Brigades, the military wing of the Fatah Tanzim, took responsibility for carrying out the horrific terrorist attack described above. After drawing up the announcement, the Defendant went to the offices of news service ANN, where the Defendant was photographed reading the above mentioned announcement claiming responsibility for the terrorist attack described above.

28. For his participation in carrying out the above mentioned suicide terrorist attack, the Defendant received from the head of the General Intelligence Service of the Palestinian Authority, Tawfik Tirawi, the sum of 1,200 Shekels.

29. By his actions as described above, the above named Defendant, at the said time, intentionally caused the death of the late **Sergeant Major Gadi Shemesh,** who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described above.

[Stamp] P 5: 304

25

**Twenty-Sixth Count: Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Tzipora Shemesh,** who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment. **The late Tzipora Shemesh was, at the time of her death, in the fourth month of pregnancy.**

**Twenty-Seventh Count: Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Yitzhak Cohen,** who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

12

Prosecution File 733/02

[Stamp] P 5: 304 [continued]

26

**Twenty-Eighth Count: Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, attempted the cause the deaths of as many civilians as possible.

As a result of the detonation of the explosive device operated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment, 81 civilians were wounded.


**Twenty-Ninth Count: Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Malicious damage to property, an offense pursuant to Section 53c of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, destroyed property or maliciously and unlawfully damaged it, specifically:

The above named Defendant, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, caused extensive damage to buildings and businesses, which were in the vicinity of the said location, and to numerous vehicles, which were in the vicinity of the place described in the twenty-fifth count of the indictment, where the explosive device was detonated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

[Stamp] P 5: 305

27

**Thirtieth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the end of February – beginning of March 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, in or near Ramallah, conspired with Fawzi Marar, Omar Kaadan, and another person, to carry out a shooting terrorist attack at Israeli vehicles in the Atarot region, so as to cause the deaths of Israeli civilians. The Defendant and his three above named accomplices equipped themselves with weapons, and left in their vehicle from Ramallah in the direction of Atarot, so as to carry out the planned terrorist attack there. Due to a breakdown in the vehicle of the Defendant and his accomplices, the planned terrorist attack was not executed.

**Thirty-First Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in March 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.

13

Prosecution File 733/02

[Stamp] P 5: 305 [continued]

28

**Thirty-Second Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.

**Thirty-Third Count:**

**Nature of the Offense:** Placing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, threw or placed a bomb, hand grenade or explosive or incendiary object, with the intention of causing death or injury to a some person or damage to some property, specifically:

The above named Defendant, at the said time, in the Jenin Refugee Camp or its vicinity, together with Abdel Karim Aweis, Nidal al-Badawi, Mahmoud Tualba, Rabia Abu Rub, placed 5 explosive devices of varying sizes at the entrance to the Jenin Refugee Camp, with the aim of damaging Israel Defense Forces tanks and preventing Israel Defense Forces units from entering Jenin.

**Thirty-Fourth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 5: 306

29

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, on the road leading to Dotan, adjacent to the village of Arraba, together with Mahmoud Tualba, placed an explosive device with the aim of detonating it, to cause the deaths of passengers in Israeli vehicles passing on the said road. After the Defendant and his above named accomplice noticed an Israel Defense Forces jeep, the two of them activated the above mentioned explosive device with the aim of causing the deaths of Israel Defense Forces soldiers traveling in the said jeep. The above mentioned explosive device exploded, and it was only by a miracle that no damage was caused.

### Thirty-Fifth Count:

**Nature of the Offense:** Performing service for an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, at the end of May 2002 or thereabouts, performed some work or carried out some service for which is [sic, last two words unnecessary] an unlawful association, specifically:

The above named Defendant, at the said time, when he was in Nablus, spoke by telephone with Darwish Dohadar, an operative in the Fatah Tanzim in Ramallah. Darwish Dohadar informed the Defendant that he, together with Mouzid al-Masri Wahamdallah, carried out a shooting terrorist attack near Ramallah, and as a result of that terrorist attack, an Israeli civilian was killed. Darwish Dohadar asked that the Defendant speak with Hassin a-Sheikh, Secretary-General of the Fatah organization in the region, and inform the latter of the above mentioned terrorist attack, so that Hassin a-Sheikh should take responsibility for the terrorist attack and transfer money to the perpetrators of the said terrorist attack.

The Defendant called Hassin a-Sheikh, and informed the latter of the above mentioned terrorist attack. Subsequently, the Defendant contacted Darwish Dohadar, informed the latter of the conversation with Hassin a-Sheikh, and instructed him to go to Hassin a-Sheikh to give him the details of the terrorist attack and the names of its perpetrators.

14

Prosecution File 733/02

[Stamp] P 5: 306 [continued]

30

### Thirty-Sixth Count:

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, in the second half of May 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, at the said time, met in Jenin with Mohamed Abu Tabih, who introduced himself as an operative of the Palestinian Islamic Jihad, and asked to join the Defendant in his activities against Israeli targets.

The Defendant met in Jenin with his friend, Sheikh Bassam, who is the Imam at the mosque in the Jenin Refugee Camp, and made inquiries about the above named Mohamed Abu Tabih. Sheikh Bassam confirmed that Mohamed Abu Tabih was an operative in the Palestinian Islamic Jihad. As a result, the Defendant again met with Mohamed Abu Tabih. Mohamed Abu Tabih informed the Defendant that he has a young man who was prepared to carry out a suicide terrorist attack, and that he had in his possession, and in the possession of his accomplices, explosives and explosive devices. Mohamed Abu Tabih asked to consult with the Defendant as to how to execute a suicide terrorist attack within the State of Israel.

The Defendant promised Mohamed Abu Tabih to look into the matter.

Similarly, during that conversation, the Defendant informed Mohamed Abu Tabih that there was a shortage of explosives in Nablus. Mohamed Abu Tabih said that this was no problem, and he could supply the Defendant with whatever quantities of explosives the Defendant asked for. At the end of the conversation, the Defendant and Mohamed Abu Tabih exchanged cell phone numbers.

Subsequently, the Defendant met with Mohamed Abu Rub, who agreed to transfer explosives from Jenin for the Defendant, from Mohamed Abu Tabih, to the Defendant in Nablus.

[Stamp] P 5: 307

31

The said plans did not come to fruition because the connection between the Defendant and Mohamed Abu Tabih was cut off after the Defendant returned to Nablus.

**Thirty-Seventh Count:**

**Nature of the Offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968, and Section 67a(d) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, in May 2002 or thereabouts, conspired with another person to compel a person by force or by threats, or to entice him by means of deceit, to leave the place he was in , so as to extort or threaten, specifically:

The above named Defendant, at the said time, met in Ramallah with Hassin a-Sheikh, Secretary-General of the Fatah organization in the region. Hassin a-Sheikh asked the Defendant to set up a cell of 3-4 members, which would carry out shooting terrorist attacks against Israeli targets, as well as kidnapping Israel Defense Forces soldiers for the purpose of bargaining for the release of Palestinian prisoners held in prison in Israel. Hassin a-Sheikh promised to fund the Defendant's activities, once the Chairman of the Palestinian Authority, Yassir Arafat, orders the transfer of the funds for the above mentioned activity.

As a result of the above mentioned request, the Defendant met in Nablus with Salah Mohamed Hussein Buchri, and spoke with him about kidnapping Israel Defense Forces soldiers. He asked whether the latter knew of a method for kidnapping Israel Defense Forces soldiers. Salah Buchri informed the Defendant that he knew two Jews, for whom he worked. Salah Buchri suggested to the Defendant to induce the above mentioned Jews to come to the checkpoint near Taibe, and to kidnap them from there, with the aid of residents of Tira, whom Salah knew.

Ultimately the said plan was not executed, since Hassin a-Sheikh did not transfer the promised money to the Defendant, and due to the entry of Israel Defense Forces units into Nablus.

15

Prosecution File 733/02

[Stamp] P 5: 307 [continued]

**Thirty-Eighth Count:**

**Nature of the Offense:** Performing service for an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, in May 2002 or thereabouts, performed some work or carried out some service for which is [sic, last two words unnecessary] an unlawful association, specifically:

The above named Defendant, at the said time, spoke with Abu Shaqer, the brother of Majed al-Kuni, known as "Abu Sharar," who had been killed. Abu Shaqer informed the Defendant that he had taken his brother's place, and commanded a cell of terrorists numbering 18 members. Abu Shaqer asked that the Defendant assist him in his activities. Abu Shaqer also informed the Defendant that he had a young man who was prepared to carry out a suicide terrorist attack within the State of Israel.

As a result of the said request, the Defendant gave Abu Shaqer the telephone number of the Secretary-General of Fatah in the region, Hassin a-Sheikh, this being after the Defendant himself spoke with the said Hassin a-Sheikh and asked the latter to assist Abu Shaqer with whatever he asked.

**Thirty-Ninth Count:**

**Nature of the Offense:** Possession of an explosive object, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the end of May 2001 and up to the date of his arrest, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, at the Alaa a-Din wedding hall in Nablus, or its vicinity, kept an explosive belt [and] two explosive devices in metal containers, and 5 mortar rounds of various calibers, this being without a permit granted by or on behalf of the military commander. The Defendant received the above mentioned items from Salah al-Kaneh.

[Stamp] P 5: 308

33

**Fortieth Count:**

**Nature of the Offense:** Manufacture of a bomb, an offense pursuant to Section 53(a)(3) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, during the period stated in the previous count of the indictment, manufactured a firearm, ammunition, bomb, explosive or incendiary device, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, at the Alaa a-Din wedding hall in Nablus or in its vicinity, produced operating mechanisms for the explosive devices described in the previous count of the indictment, this being without a permit granted by or on behalf of the military commander.

The above mentioned hall was also visited by an operative of the Palestinian Islamic Jihad, Fatah Badran, known as "Abu Jamal," who asked to work together with the Defendant in production of explosive devices. The Defendant agreed to cooperate with the above named "Abu Jamal" in the manufacture of the explosive devices at the said locations, which he had become familiar with through his fiancée – Obeidah Jaber (Abu-Ayisha).

16

Prosecution File 733/02

[Stamp] P 5: 308 [continued]

**Forty-First Count:**

**Nature of the Offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968, and Section 53(a)(3) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** the above named Defendant, in the Region, at the end of May 2002 or thereabouts, conspired with another person to produce a firearm, ammunition, bomb, explosive or incendiary device, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, conspired with Salah Mohamed Hussein Buchri, to set up a laboratory for the manufacture of explosives in the area of Tira within the State of Israel.

**Forty-Second Count:**

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, at the end of May – beginning of June 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, met with Jamal Tirawi, who informed the Defendant that he had two terrorists who were prepared to carry out a suicide terrorist attack. Jamal Tirawi asked that the Defendant photograph the above mentioned suicide terrorists prior to their carrying out the planned suicide terrorist attack, and that he prepare them and equip them with everything necessary for carrying out a suicide terrorist attack. The Defendant agreed to the said proposal.

[Stamp] P 5: 309

About three days prior to his arrest, the Defendant met with Jamal Tirawi at the Alaa a-Din wedding hall in Nablus. Jamal Tirawi brought with him 8 kilograms of explosive, but the Defendant claimed that the explosives were not sufficient. Jamal Tirawi provided to bring, as soon as possible, a further amount of explosives.

The Defendant did not manage to assemble the explosive devices for the two above mentioned suicide terrorists, due to the entry of Israel Defense Forces units into Nablus and due to the Defendant's arrest.

### Forty-Third Count:

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, during May – early June 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, during the said period, was in telephone contact with a young woman named Inam, a student at Haifa University, whose details he received from al-Aqsa Martyrs Brigades operative Mouzid al-Masri. The Defendant would speak with Inam about the situation in the region. The above named Inam knew that the Defendant was a senior military operative in the al-Aqsa Martyrs Brigades, and that he was wanted by the Israeli security forces. At the beginning of June 2002, the Defendant asked Inam to come to Jenin and meet with him, and she agreed to do so. At that time, the Defendant was approached by Fatah Badran, known as "Abu Jamal," who asked if the Defendant knew residents of the State of Israel who were prepared to assist in carrying out terrorist attacks within the State of Israel. The Defendant told Fatah Badran about the above named Inam, and informed him that it was his intention to meet

[Stamp] P 5: 309 [continued]

36

with her in Jenin and to asked her to find a place in the State of Israel where it was possible to produce explosives, to find places suitable for carrying out mass terrorist attacks, and also to recruit her for the purpose of assisting suicide terrorists in transferring them from the region to within the territory of the State of Israel.

The Defendant's above mentioned plan was not carried out, due to his arrest by the Israeli security forces on June 3, 2002.

17

Prosecution File 733/02

[Stamp] P 5: 309 [continued]

37

**Prosecution Witnesses**

1. Advanced Staff Sergeant Major Metans Hadad, Badge No. 927384, Investigations Bureau, Samaria. [Took the Defendant's statements of June 3, 2002, and June 18, 2002]

2. Staff Sergeant Major Aatef Awida, Badge No. 1000496, Investigations Bureau, Samaria. [Took the Defendant's statements of June 10, 2002, and June 27, 2002]

3. Advanced Staff Sergeant Major Roni Amar, Badge No. 739060, Investigations Bureau, Samaria. [Submitting report on photographic identity lineup and photo board]

4. Transcript of Defendant's remand hearing dated July 17, 2002.

5. Person known as "Ariel," Israel Security Agency. [Submitting report of transportation and indication + photographs]

6. Musa Sari Hasune, Identity No. 040951592. [Under arrest]

7. Hafez Abdel Fatah Maqbal, Identity No. 040976136. [Under arrest]

8. Obeidah Abdel Rahman Mohamed Jaber, Identity No. 989498118. [Under arrest]

9. Leila Mohamed Salah Bukhari, Identity No. 900128737. [Under arrest] (Prosecution File 595/02)

10. Kahira Sa'id Sa'adi, Identity No. 903946960. [Under arrest] (Prosecution File 451/02)

11. Sanah Mohamed Shehadeh, Identity No. 081021198. [Under arrest] (Prosecution File 484/02)

12. Fatah Wahid Asad Badran, Identity No. 948298849. [Under arrest]

13. Abdel Karim Ratheb Younis Aweis, Identity No. 980136675. [Under arrest] (Prosecution File 442/02)

14. Issa Mohamed Mahmoud Jabrin, Identity No. 906446521. [Under arrest] (Prosecution File 427/02)

15. Ziad Younis Ahmed Younis, Identity No. 966647653. [Under arrest]

16. Juad (Bahaa) Ziad Abdel Mouati Shalhati, Identity No. 941474827. [Under arrest]

17. Ismail Abdel Latif Abu Ayisha, Identity No. 901227124. [Under arrest]

18. Rabi Rafiq Sharif Abu-Rub, Identity No. 901815191. [Under arrest]

**Detailed Incident File 1359/02 Yiftach**

19. Sergeant 1st Class Ronen Sharabi, Badge No. 1037241, Yiftach Station. [Submitting action report + action report/memorandum]

20. Shahar Kahlon, Badge No. 1071562, Special Investigations Team, Yiftach. [Submitting Memorandum]

21. Senior Staff Sergeant Major David Sharon, Badge No. 534818, Yiftach Station. [Submitting report on visit to the scene]

[Stamp] P 5: 310

38

22. Advanced Staff Sergeant Major Chen Levin, Badge No. 747485, Bomb Laboratory Tel Aviv [Submitting Form Accompanying Exhibits]

23. Senior Staff Sergeant Major David Sharon, Badge No. 53481, Identification – Yiftach Station. [Submitting photo boards]

24. Staff Sergeant Major Mumi Dayan, Badge No. 1011153, Identification – Yiftach Station. [Submitting photo boards]

25. Zion Sadeh, Identity No. 029505724, Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

26. Inspector Eran Rosen, Badge No. 980862, Latent Fingerprint Development Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting examination report]

27. David Attias, Fingerprint Identification Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting expert opinion] (To be summoned only upon the express request of the Defense)

28. Maria Franco, Philippines Passport No. D10087782. (Details held by the Prosecution) [Eyewitness]

29. Yitzhak Shifra, Identity No. 309605866. (Details held by the Prosecution) [Wounded in the terrorist attack]

30. Haim Gueta, Identity No. 054918941. (Details held by the Prosecution) [Wounded in the terrorist attack]

31. Osnat Gueta, Identity No. 022130140. (Details held by the Prosecution) [Wounded in the terrorist attack]

32. Eli Davidov, Identity No. 016685893. (Details held by the Prosecution) [Son wounded in the terrorist attack]

33. Farhan Albi, Identity No. 035137009. (Details held by the Prosecution) [Sounded in the terrorist attack]

34. Ron Meir, Identity No. 014502983. (Details held by the Prosecution) [Sounded in the terrorist attack]

35. Moshe Hayun, Identity No. 050948553. (Details held by the Prosecution) [Eyewitness, treated the wounded]

36. Eran Davidi, Identity No. 035968866. (Details held by the Prosecution) [Eyewitness, treated the wounded]

37. Jack Cohen, Identity No. 012447496. (Details held by the Prosecution) [Eyewitness, treated the wounded]

[Stamp] P 5: 310 [continued]

38.  Inna Rockawitzin, Identity No. 321153611. (Details held by the Prosecution) [wounded in the terrorist attack]

39.  Gela Chachiashvili, Identity No. 312782550. (Details held by the Prosecution) [wounded in the terrorist attack]

40.  Aharon Yisraeli, Identity No. 027789106. (Details held by the Prosecution) [wounded in the terrorist attack]

18

Prosecution File 733/02

[Stamp] P 5: 310 [continued]

41. Yitzhak Kazarshvili, Identity No. 011378510. (Details held by the Prosecution) [Wounded in the terrorist attack]

42. Larisa Gavrilov, Identity No. 303801419. (Details held by the Prosecution) [Wounded in the terrorist attack]

43. Markiel Gavrilov, Identity No. 305907008. (Details held by the Prosecution) [His restaurant was destroyed in the terrorist attack]

44. Yitzhak Shimshilashvili, Identity No. 311985915. (Details held by the Prosecution) [His business was destroyed in the terrorist attack]

45. Prof. Yehuda His, National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Defense)

46. List of the wounded from the terrorist attack.

47. Medical documents.

### Detailed Incident File 412/02 Binyamin

48. Shaul Cohen, Badge No. 759407, Binyamin Station. [Testimony]

49. David Cohen, Identity No. 028999910, Binyamin Station. [Testimony]

50. Mordechi Tal, Identity No. 29501590, Binyamin Station. [Seriously wounded in the terrorist attack]

51. Eli Teva, Identity No. 025716218. (Details held by the Prosecution) [Reserves soldier, was at the checkpoint at the time of the terrorist attack – saw the suicide terrorist]

52. Lior Steindem, Identity No. 025044421. (Details held by the Prosecution) [Commander of the Reserves force at the checkpoint at the time of the terrorist attack, spoke with the suicide terrorist before the explosion]

53. Ilan Factor, Identity No. 308900141. (Details held by the Prosecution) [Reserves soldier at the checkpoint at the time of the terrorist attack – inspected the vehicle in which the suicide terrorist traveled]

54. Chananiah Shneier, Identity No. 032781072. (Details held by the Prosecution) [Arrived on the scene immediately following the terrorist attack]

55. Sergeant 1st Class Shai Algerably, Badge No. 1010065, Modiin Station. [Submitting an action report]

56. Sergeant 1st Class Eli Hajaj, Badge No. 1054782, Modiin Station. [Submitting an action report]

57. Inspector Amon Shoshani, Police National Headquarters, Patrol and Security Branch, Bomb Laboratories Division, Tel Aviv Extension Branch. [Submitting Initial Expert Opinion + Expert Opinion from File 0821-23/2002/ZB + Photographs + Form Accompanying Exhibits] (To be summoned only at the express request of the Defense)

[Stamp] P 5: 311

41

58. Sarah Abramowitz-Bar, Analysis Laboratory, Police National Headquarters – Jerusalem. [Submitting an expert opinion from File 54484/02-33/ZB] (To be summoned only at the express request of the Defense)

**Detailed Incident File 580/02 Shafet**

59. Yigal Meir, Identity No. 040202418, Border Guard Sivan, Company 42. (Details held by the Prosecution) [Testimony]

60. Chief Inspector Moshe Hidra, Identity No. 037537412, Border Guard Lavi. (Details held by the Prosecution) [testimony]

61. Chief Inspector Leonid Rabinovitch, Badge No. 71055859, Border Guard Lavi. (Details held by the Prosecution) [testimony]

62. Inspector Asaf Zaguri, Badge No. 1049196, Border Guard Lavi. (Details held by the Prosecution) [testimony]

63. Staff Sergeant Major Oded Meiri, Badge No. 1065937, Special Duties Department, Central Unit – Jerusalem. [Submitting an Action/Seizure and Marking Report + Form Accompanying Exhibits]

64. Superintendent Lior Nedivi, Badge No. 952127, Criminal Identification Department – Zion Station. [Submitting Photo Boards]

65. Fuad Cohen, Badge No. 1048701, Special Duties Department, Central Unit – Jerusalem. [Submitting a Memorandum + Polaroid pictures]

**Detailed Incident File 2069/02 Special Duties Department Jerusalem**

66. Advanced Staff Sergeant Major Ariel Ya'ari, Bomb Laboratory – Police National Headquarters, Jerusalem. [Submitting a Seizure and Marking Report + Expert opinion] (To be summoned only at the express request of the Defense)

67. Sarah Abramowitz-Bar, Analysis Laboratory, Police National Headquarters – Jerusalem. [Submitting an expert opinion] (To be summoned only at the express request of the Defense)

68. Dror Cohen, Criminal Identification Department, Zion Station – Jerusalem. [Submitting photographs from the scene of the incident]

69. Yigal Shemesh, Identity No. 028077964. (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]

70. Yaniv Yosef, Identity No. 027454958. (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]

71. Hagai Pinhas, Identity No. 028766723. (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]

[Stamp] P 5: 311 [continued]

72. Yehya Ben Hamu, Identity No. 038342986. (Details held by the Prosecution) [Identification of the body of the late Tzipora Shemesh]

73. Lior Mika, Identity No. 036386753. (Details held by the Prosecution) [Saw the terrorist blow up, wounded in the terrorist attack]

74. Ilan Bauer, United States Passport No. 700767376. (Details held by the Prosecution) [Was together with his son, a minor, near the terrorist at the time of the explosion, both were wounded]

19

Prosecution File 733/02

[Stamp] P 5: 311 [continued]

75. Shiran Darwish, Identity No. 039888862. (Details held by the Prosecution) [Was near the terrorist at the time of the explosion, wounded]

76. Chizkiya Langstein, Dutch Passport No. 115402413. (Details held by the Prosecution) [Wounded in the terrorist attack, saw the terrorist at the time of the explosion]

77. Marion Kampfler, Identity No. 016432148. (Details held by the Prosecution) [Wounded in the terrorist attack]

78. Assi Armoza, Identity No. 051910735. (Details held by the Prosecution) [Wounded in the terrorist attack]

79. Lawrence Salem, Identity No. 312738537. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

80. Tal Cohen, Identity No. 029506270. (Details held by the Prosecution) [Wounded in the terrorist attack]

81. Faizolah Haim Yakobian, Identity No. 011573441. (Details held by the Prosecution) [Wounded in the terrorist attack, damage was caused to her shop]

82. Eli Levy, Identity No. 033643438. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

83. Netanel Gidon, Identity No. 012176707. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]

84. Astrid (Rivka) Gorno, Identity No. 301921169. (Details held by the Prosecution) [Wounded in the terrorist attack]

85. Mazal Hachamov, Identity No. 304119407. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]

86. Bosmat Cohen, Identity No. 061273413. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]

87. Moshe Poch, Identity No. 015776636. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

88. Yaffa Levy, Identity No. 055466924. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

89. Robbie Asseraf, Identity No. 021398011. (Details held by the Prosecution) [Saw the terrorist at the time of the explosion]

90. Ora Faizakov, Identity No. 039526371. (Details held by the Prosecution) [Was near the location of the explosion]

91. Hillel Adam, Identity No. 302040969. (Details held by the Prosecution) [Eyewitness, treated the wounded]

92. Rahamim Havler, Identity No. 059732735. (Details held by the Prosecution) [Damage caused to his shop]

[Stamp] P 5: 312

44

93. Dr. Chen Kugel, National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Prosecution)
94. Prof. Yehuda His, National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Prosecution)
95. Death Certificate – the late Yitzhak Cohen.
96. A list of those wounded in the terrorist attack from the Municipality of Jerusalem – Call Center 106. (Institutional record)
97. Medical documentation.

An additional list of witnesses relating to those wounded in the terrorist attack on King George Street in Jerusalem on March 21, 2002, will be provided during the course of the trial.

[Signature] *Olga / for*
Michael Kotlik, Captain
Military Prosecutor

Date: September 12, 2002
Reference: 733-02

20

Prosecution File 733/02

[Stamp] P 5: 312 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 293-312.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 293-312.

Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

MIRUT J MAMETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2322784

צבא                    המשפט.    הצבאי          הגה.·              לישראל

בבית                                .אל             תיק ביהיימ :    3739/02
בבית                   הרכב                          יציק תביעה :    733/02
פזגי                                                 :תיק פ.א.    4934-43/01 שומרון
                                                        יפתח    1359/02
                                                        בנימין    412/02
                                                        שפט    580/02
                                                        מת"ים י-ס    2069/02

<u>במשפט שבין התובע הצבאי · המאשים</u>

- נ ג ד -

נאצר נמאל מוסא שווייש
ת.ז. 993006188, יליד 25.05.75, תושב שכם/רמאללה
עצור מיום 03.06:02

- ה נ א ש ם -

# כ ת ב - א י ש ו ם

<u>הנאשם הנ"ל מואשם בזאת בעבירות הבאות:</u>

<u>פרט ראשון:</u>

<u>מהות העבירה:</u> מתן מקלט, עבירה לפי סעיף 56 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378, תשי"י1970-:

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך סוף שנת 2000 · תחילת שנת 2001 או בסמוך לכך, עזר או נתן מקלט לאדם שעבר עבירה על תחיקת ביטחון או אשר עסק או היה עסק בכל פעולה שמטרתה לפגוע בשלום הצבור, שלום כוחות צה"יל וחייליו וקיום, הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על ידי מתן ידיעות, מתסה, מ:זון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מסעות, אמצעי תובלה, נמט או דלק מכל סוג שה:א ובין בדרך אחרת, דהיינו ·
הנאשם תנ"ל, במהלך התקופה האמורה, במספר הדזדנויות שונות, העביר אנשים אשר היו מבוקשים לכוחות הבטשחן תישראליים בגין ביצוע פיגועים קטלניים נגד אזרחים ישראליים וחילי צהייל. בין היתר, תנאשם העביר את אחיו · חאלד שוייש, מוהנד אבו חלאווה, תאבת מרדאווי, חכמת אבו אלחבל.

1

## פרט שני:

**מהות העבירה:** חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות חמגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מראשית שנת 2001 ועד ליום מעצרו, היה חבר או פעל כחבר בארגון שהוא התאחדות בלתי מותרת, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר ב"גדודי חללי אלאקצא" ו"כתאיב שוהאדא אלאקצא"), הזרוע הצבאית של "התנזים" של התנ"ח, שתהא התאחדות בלתי מותרת. הנאשם ניסה לשרוד "גדודי חללי אלאקצא" על-ידי אתיו, תיגלד שוויש. לאחר מיסו הנאשם קובל כינוי פתישי "אדחם". הנאשם פעל במסגרת "גדודי חללי אלאקצא" כפי שיתואר בפרוט האישום חבאים.

## פרט שלישי:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשכ"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה, ב-5- הזדמנויות שונות, בשעות הערב, ירה ברוס"ר קלצ'ניקוב ממרחק של 400 מטר לעבר מחנה צה"ל הנמצא בסמוך לכפר תיואסיר בכוונה לגרום למותם של חיילי צה"ל. בית עם הנאשם היו מחמד בשאראת, פואד בשאראת, תאלד שוויש, אשר גם הם ירו לעבר חיילי צה"ל בכוונה לגרום למותם.

## פרט רביעי:

**מהות העבירה:** ייצור פצצה, עבירה לפי סעיף 53(א)(2) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ייצר כלי-ירייה, תחמושת, פצצה, חץ נפץ או מבגיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו: הנאשם הנ"ל, במהלך תתקופה האמורה, בשכם ובגיין או בסמוך לכך, במספר הזדמנויות שונות, ייצר מטעני חבלה, וזאת ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו.

## פרט חמישי:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במהלך תתקופה האמורה, במספר הזדמנויות שונות, בשעות הערב, ירה ברוס"ר קלצ'ניקוב ממרחק של 600 מטר לעבר מחנה צה"ל "בוק" בכוונה לגרום למותם של חיילי צה"ל. בית עם הנאשם היו נאשם אל ראפת, פראס תלוליה, רביע סעדי, אשר גם הם ירו לעבר חיילי צה"ל בכוונה לגרום למותם.
בעת הההזדמנויות, חברו של הנאשם, אשר היה ביחד עמו בזמן הירי, תאאר אל ראפת, נפגע במהלך חילופי האש עם צה"ל שהתפתחו במקום בעקבות הירי של הנאשם וחבריו.

2

ת.ת. 733/02.

P 5: 294

**פרט שישי:**

<u>מהות העבירה:</u> נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון (מס' 225), תשכ"ח1968--.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, נסח לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במגוד האמור, ביחד עם אחרים, ירה ברוסי"ר קלצ'ניקוב לעבר מתנח צה"יל
"סאמורי" ממרחק של 400 מטר, בכוונה לגרום למותם של ח"ילי צה"יל. ביחד עם הנאשם היו רבע
סעדי, תאאר אבן ראפח, פראס חלילית, רביע אבו רוב, אשר גם הם ירו לעבר חיילי צה"יל במטרה
לגרום למותם.

**פרט שביעי:**

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל1970- וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח1968--.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך שנת 2001, כתודש לאחר שביצע את המיוחס לו
בפרט האישום הקודם, או בסמוך לכך, נסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בשעות הלילה, ביחד עם רביע אבו רוב, מנוני, פראס חלילית,
אמנ"ר פאתחר אדם נוסף, הניח ארבעה מטעני חבלה במשקל 5 קיג כל אחד בכביש הראשי הסמוך
לבגע. הנאשם וחבריו הניחו שני מטעני חבלה מכל צד של הכביש. לאחר שהנאשם וחבריו הניחו
את מטעני החבלה הנ"ל, הם מסתתרו בסמוך לכביש.
בעת שהנאשם וחבריו הניח הבתינו בנוע של צה"יל, אשר נסע בכביש הנ"ל וחתקרב אל מטעני
החבלה הנ"ל, הנאשם וחבריו הנ"ל הפעילו את מטעני החבלה הנ"ל באמצעות מכשירי טלפון
סלולריים בכוונה לגרום למותם של ח"ילי צה"יל, אשר נסעו בניע הנ"ל.
כתוצאה מפיצוץ מטעני החבלה הנ"ל נגרם נזק לניוע צה"יל הנ"ל.
במהלך ביצוע חפיגוע המתואר לעיל, הנאשם וחבריו הנ"ל וזו חמושים ברוסי"רי קלצ'ניקוב.

**פרט שמיני:**

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל1970- וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון (מס' 225), תשכ"ח1968--.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך שנת 2001, כתודש לאחר שביצע את חמיוחס לו
בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ביחד עם רביע אבו רוב ומחמדר טואלבח, הניח מטעני חבלה בכביש
הראשי הסמוך לערראבת, באיזור מרקה, בכוונה לפוצצו ולגרום למותם של אזרחים ישראליים.
לאחר מכן, מחמוד טואלבח חזר לגניו.
הנאשם ורביע אבו רוב המתינו במקום ומשהבחינו בניוף של צה"יל, הפעילו לעברו את מטעו
החבלה הנ"ל, בכוונת לגרום למותם של חיילי צה"יל. כתוצאה מפיצוץ מטעני חבלה הנ"ל נפגע ג'יפ
צה"יל האמור.
במהלך ביצוע הפיגוע הנ"ל, שני חברי הנאשם היו חמושים בכלי נשק.

ת.ת. 733/02

**פרט תשיעי:**

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י1970- וסעיפים 14(א) ו19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001, נחודש לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ביחד עם מתשמד בשאראת וסאנה אבו הניא, הניח מטען חבלה בציר הראשי המוביל למחנה צה"ל "יתיסיר" חנמצא בבקעת חירב בכוונה לגרום למותם של חיילי צה"ל. הנאשם והברו הנ"ל ניסו להפעיל את מטען החבלה הנ"ל לעבר גיפ של צה"ל אשר עבר במקום, בכוונה לגרום למותם של חיילי צה"ל, אך עקב תקולקת בתשכנית מטען החבלה הנ"ל לא התפוצץ. לאחר מכן, הנאשם וחבריו אספו את מטען החבלה שלא התפוצץ וחזרו עמו למינין.

**פרט עשירי:**

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י1970- וסעיפים 14(א) ו19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
במועד האמור, עלי צפורי, פעיל צבאי בגיזהאד אסלאמפ פלסטיני, פנה אל עכברים ראתב יונס עזוס, פעיל צבאי בכיר ב"מדזי חללי אלאקצאי" - חזרע הצבאית של "התנוזים" של תפתיח, והציע לאחרון לבצע פגוע נגד מטרות ישראליות. הותלט כי הפגוע הנ"ל יבוצע במשותף על-ידי פעילי תנויהאד האסלאמפו הפעיל "גדודי חללי אלאקצאי".
הנאשם גיוס לצורך ביצוע חפיגוע חמתכנן על-ידי עכרים עווס. עלי צפורי גייס לביצוע הפיגוע חמתוכן את מתמד מאצר אבו בכר.
הנאשם בחר את חמקום לביצוע חפיגוע המתוכנן וחוא איזור קוביב. הנאשם שכר שכוס רכב ונסע עמו למינין. בגיגין הנאשם נפגש עס עלי צפורי וחומד אבו בכר. משם, הנאשם וחומד אבו בכר נסעו אל המקום, אשר אותו בחר הנאשם לצורך ביצוע חפיגוע המתוכנן.
בתגיעם אל המקום הנ"ל, הנאשם ומתמד אבו בכר היחנו מטען חבלה בסמוך לכבישה. הנאשם וחברו הנ"ל חטמתורו בסמוך למקום הנ"ל במטרה לחפעיל את מטען החבלה הנ"ל לעבר חיילי צה"ל לכורום למותם.
תכניתם של הנאשם וחברו הנ"ל לא יצאה אל הפועל מכוונון שבסמוך למטען חחבלה חני"ל עמדו פעילים פלסטיניים והנאשם וחברו לא חפעילו את מטען החבלה לעבר חגיפ של צה"ל, אשר חגיע למקום, מהחשש לפגוע בפועלים חני"ל.
לאחר מכן, הנאשם חגיע למקום ואסף את מטען החבלה הנ"ל.

**פרט אחד-עשר:**

**מהות העבירה:** התחפשות, עבירה לפי סעיף 55 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במועד האמור בפרט האישום הקודם, תשתמש בתחפושת בנסיבות שבהן עלול חשימוש בתחפושת למנוע בשלום הציגור, או בביטחון כורות צה"ל או בתגנונט של האיזור או בקיום הסדר הצבורי, דהיינו:
הנאשם חני"ל, במועד האמור, ביצע את המיוחס לו בפרט האישום הקודם כשהוא מחופש לאישה.

ת.ת. 02/733

<div dir="rtl">

## פרט שנים-עשר:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, קשר. עם תאבת מרדאווי לרצוח שני אזרחים ישראליים, אשר, לפי חמירנו שגזע לידי הנאשם, מנויים מדי יום שבת לשבק. באחד מימי חשבון, הנאשם נשא ביחד עם תאבת מרדאווי, כשנשיהם חמשים ברוסי"ר M-16, לצורך ביצוע הפיגוע המתוכנן. הנאשם וחבירו הנ"ל הגיעו לצומת קוציע.

הנאשם ותאבת מרדאווי התמקמקו במקום המתמני לשני האזרחים הישראלים הנ"ל במסרה לירות לעברם ולגרום למותם. הנאשם וחבירו המתינו במקום כ-3 שעות, אך האזרחים הישראליים הנ"ל לא הגיעו ולכן הנאשם וחבירו חזרו לשכם.

## פרט שלושה-עשר:

**מהות העבירה:** החזקה בלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מאמצע שנת 2001 ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, מצעד, רימון יד או חפץ נפיץ או מבעיר, כלי נפץ או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, החזיק באקדח 14, אשר אותו קיבל ממחמוד טואלבה באמצעות מחמוד בשאראת, וזאת ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו. בעת מעצרו הנאשם נשא את האקדח הנ"ל עם שתי מחסניות מלאות בהדורים ועוד 40 כדורים לאקדח הנ"ל.

## פרט ארבעה-עשר:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במשך ארבעה ימים רצופים, במהנה חמליטים ניגף או בסמוך לכך, במסגרת חוד ימנ"ה שונות, ירה ברוסי"ר קלצ'ניקוב לעבר חיילי צח"ל בכוונה לגרום למותם. ביחד עם הנאשם היו אנשים נוספים, עברים עוויס, תאבת מרדאווי, מחמוד טואלבה, מחמד אלעניני, רביע אבו אלרוב, חגי עלי צפורי, גדאל אלבדאווי, אשר גם הם ירו לעבר חיילי צח"ל בכוונה לגרום למותם.

## פרט חמישה-עשר:

**מהות העבירה:** סחר בציוד מלחמתי עבורה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, סחר או עסק בציוד בצורה אחרת בציוד מלחמתי, ללא היתר חתום על ידי מפקד האיזור או מטעמו, דהיינו:

הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכד, רכש מטאציל שוויע רוסי"ר M-16 תמורת 3,500 דינר ירדני, וזאת ללא היתר חתום על ידי מפקד האיזור או מטעמו. את הכסף לצורך רכישת הנשק הנאשם קיבל מידי תאבת מרדאווי.

לאחר רכישת הנשק הנ"ל, הנאשם העבירו לגינון לידי תאבת מרדאווי.

5

ת.פ 733/02-
</div>

P 5: 297

**פרט שישה-עשר:**

**מהות העבירה:** סחר בציוד מלחמתי עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח1968-.

**פרטי העבירה:** הנאשם חנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על ידי מפקד האיזור או מטעמו, דהיינו :
הנאשם הנ"ל, במולד' חאמור, בכפר קליל או בסמוך לכך, רכש מספר מחסניות ריקות לאקדח זיג זאור מידי אדם בשם זיאד, ואת זאת לא היתר חתום על ידי מפקד האיזור או מטעמו.
הנאשם רכש את המחסניות האמורות לפי בקשתו של אבו אלקסאם עתאללה שהוא אחראי ארגון ג'יהאד אסלאמי פלסטיני בגנין.

**פרט שבעה-עשר:**

**מהות העבירה:** נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ו)(ה) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מתחילת שנת 2002 ועד ליום מעצרו, ניהל או עזר לתחזקת התאחדות בלתי מותרת, או החזיק במשרה או עמדה כל שהיא בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך תקופה האמורה, שימש כמנהאם פעילות צבאית של "פדויי חללי אלאקצא" ("כיתאיב שוהאדא אלאקצא"), הזרוע הצבאית של "התנויים" של הפתי"ח, שהוא התאחדות בלתי מותרת, בין האיזורים של גנין, טול-כרם, שכם ורמאללה.

**פרט שמונה-עשר :**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י1970-) וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

**פרטי העבירה:** הנאשם חנ"ל, באיזור, בתחולת שנת 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם חנ"ל, במועד האמור, במתכנת חפליטים גינני או בסמוך לכך, ביחד עם ע/כרים ראתב יונס עויס ואחרים, ירה לעבר חיילי צה"ל בכוונה לגרום למותם.

**פרט תשעה-עשר : פ.א: 1359/02 יפתח**

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י1970-) (סעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותם של אחר, דהיינו :

1. בתו"ד ינואר 2002, פנו אל הנאשם רבע דפק אבן זידאן, פועל צבאי בכיר בארגון ג'יהאד אסלאמי פלסטיני, אשר אסף קודם מידע לגבי המקומות במדינת ישראל שבהם ניתן לבצע פיגוע תופת, וזיד יונס אחמד יונס.

2. זיד יונס ביקש כי הנאשם יעזור במערבות הצעיר שמבקש להתאבד מביתו במ.פ. עסקי שבמשכם .

3. הנאשם נסע עם זיד יונס למתכנת הפליטים עסקר. שם נפגשו עם הצעיר הנ"ל שהוא בהתאא (ג'יהאד) ויאד שלהותו.

4. הנאשם וזיד יונס העבירו את בהאא שלחתו לדירה בשכם.

5. רבע אבן רוב חביא לדירה האמורה את צפוואת ע/רחמאן אבו-עיישה.

6. לדירת האמורה הגיעו גם מהנדי אבו-עיישה, אשר, ביחד עם הנאשם וזייד יונס, צילם
באמצעות מצלמת וידאו את הבהאא שלהנתי ואת צוואות אבו-עיישה לקראת ביצוע פיגוע
התאבדות המתוכנן, וזאת כאשר חשניים מחזיקים ברוסיי"ר קלצ'ניקוב וברוסי"ר 16-M.

7. רבע אבו רוב. הכין בדירה האמורה מטען חבלה, המורכב 48- קיג של חומר נפץ, לצורך
ההראפה הפעיל של פיגוע ההתאבדות המתוכנן. רבע אבו רוב. הסתיר את מטען החבלה
בתוך קרטון טלוויזיה.

8. הנאשם וחבריו הנ"ל ערכו תכנית, אשר לפיה יובצע פיגוע ההתאבדות משולב באיזור
התחנה המרכזית בתל-אביב: צפואות אבי-עיישה יפוצך את מטען חבלה, אשר אותו
יישא, במכולה לגרום למוות של אזרחים רבים ככל הניתן, ונמקביל בהאא שלהנתי יפתח
באש ברוסי"ר קלצ'ניקוב במטען לגרום למוות של אזרחים רבים ככל הניתן, ומשני
לירות עד שיהרג, אשר היה פרי שיתוף הפעולה בין הפגל הוצאבי של ארגון
ג'יהאד אסלאמי פלסטיני, אשר סיפק את המהכל המתאבד - צוואות אבו-עיישה ואת
מטעו החבלה, לבין"עודדני הללי אלאקצא" - הפגל הצבאי של "יתנזנים" של הפתח"ה, אשר
סיפק את המתהל המתאבד השני - בהאא שלהנתי ואת כלי הנשק.

9. הנאשם ביקש ללמד את בהאא שלהנתי להשתמש ברוסי"ר קלצ'ניקוב, אך האחרון סירב
וטען כי יודע לירות בכלי-הנשק הנ"ל.

10. חנאשם הנ"ל, בשעות אחר הצהריים, על-פי בקשתו של רבע אבו רוב, הסיע את שני
המתאבלים המתאבדים — בהאא שלהנתי וצפואות אבי-עיישה, כאשר השניים מצוידים
במטען חבלה הנ"ל וברוסי"ר קלצ'ניקוב עם 4 מחסניות מלאות בכדורים. ביחד עם
הנאשם, אשר היה חמוש במפתח תנס'והה הנ"ל באקדח, נסע גם זייד יונס וצלאח חסין
מחמד בוחרו. במהלך הנסיעה הנאשם ירד מהרכב ורבע תיק, אשר לתוכו הוכנס רוסי"ר
קלצ'ניקוב הנ"ל והמחסניות, וכן בגדים חדשים עבור המתאבלים המתאבדים.

11. באיזור זולאתנא, וידי יונס עזב את הנאשם וחבריו וחזר לשכם. הנאשם, ביחד עם חברי
הנ"ל עקפו ברגל את מחסום צחי"ל וגנמצאו במקום וגוסעו לטול-כרם. צלאהם בוחרו
נסע במכונית אחת על מנת ילפתות את הדרכי"ר לנאשם ושני המתאבלים המתאבדים.

12. בשלב זהת חתקשר אל הנאשם רבע אבו רוב ומסר לנאשם מספר הטלפון הסלולרי של
האדם, אשר היה אמור לסייע לנאשם ומתאבלים המתאבדים הנ"ל ב'פתיחתת ציר
התנועה". הנאשם ניסה לחתקשר אל מאדם חניל, אך ללא הצלחה.

13. הנאשם שני המתאבלים המתאבדים חני"ל הגיעו לטול-כרם בשעות ערב.

14. הנאשם שני המתאבלים המתאבדים לנו בטול-כרם בבינו של אגור מנער שמס, אשר עמו
יצר הנאשם קשר טלפוני שקיבל את מספר הטלפון הסלולרי של האחרון מרבע אבו רוב.

15. למתרת היום, 25.01.02, בשעות הבוקר חנאשם הגיע לתחנת המוניות בטול-כרם ביחד עם
צפואות אבי-עיישה, בהאא שלהנתי וצלאה בוחרו, כאשר שני המתאבלים המתאבדים
נשאים עמם את מטעו החבלה המתואר לעיל, אשר חית מהתואר בתוך קרטון טלוויזיה,
רוסי"ר קלצ'ניקוב עם 4 מחסניות מלאות בכדורים, אשר חיה בתוך תיק.

16. בשלב זהת, הנאשם נפרד מחברריה חמ"ל וחזר לשכם.

17. בהאא שלהנתי וצפואות אבי-עיישה חגיע במונית לתל-אביב. שם השניים הגיעו לאיזור
התחנה המרכזית הישנה. השניים החליטו לבצע את חפיגוע המתוכנן במקום האמור.

18. בסמנך לשעה 11:00, ביום 25.01.02, ברחוב נווה שאנן בתל-אביב, בסמוך לבית מסי' 30,
צפואתאנ אבו-עיישה הפעיל את מטען חבלה המתוארא לעיל בכוונה לגרום למות של
אנשים רבים ככל האפשר.

19. מטעו החבלה הנ"ל התפוצץ ותוצאה מפיצוצו נפצעו 28 אנשים.

20. צפואות אבו-עיישה נהרג במקום כתוצאה מפיצוצו מטעו חבלה הנ"ל.

21. בהאא שלהנתי, אשר לפי חתכנון המתואר לעיל היה אמור לפתוח בירי ברוסי"ר קלצ'ניקוב
לעבר מאזרחים לאחר פיגוע מטעו החבלה הנ"ל בכוונה לגרום למותם, לא הצליח להוציא
את רוסי"ר קלצ'ניקוב הנ"ל מתתיקו. משהבין בהאא שלהנתי כי לא יכול לפתוח בירי באופן
מיידי, הוא משליך את התיק עם הרובה והתהמושת וניסה להימלט מהמקום, אך נעצר
על-ידי שוטרי משטרת ישראל.

ת.ת, 733/02
P 5: 299

<div dir="rtl">

**פרט עשירים:** ת.פ. 1359/02 יפתח

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 452 לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
ושומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור (בין מחוצה לו, ביום 25.01.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט
האישום הקודם, גרס נזק רב לבנינים, תנועות ובתי-עסק, אשר חוו סמוכים למקום שבו הופעל
מטען חבלה על-ידי פצוצ'את אבו עישה. כפי שתואר בפרט האישום הקודם.

**פרט עשירים ואחד:**

**מהות העבירה:** סחר בציוד מלחמתי עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(תהודה והשומרון) (מס' 243), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה
אחרת בציוד מלחמתי, ללא היתר חתום על ידי מפקד האיזור או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם מוזיד אלמצרי, אשר ביקש כי
הנאשם ישמור אצלו חגורת נפץ במשקל של 18- ק"ג. הנאשם חסכם וקיבל מידי מוזיד אלמצרי
הנ"ל את חגורת הנפץ האמורה.
לאחר יום, הנאשם נפגש עם ראש יחתנגוים" של הפת"ח באיזור, מרואן ברגותי. מרואן ברגותי
שאל את הנאשם אם אחרון מכיר אנשים הפונכים לספוק חגורות נפץ. הנאשם מסר למרואן
ברגותי כי נמצאת ברשותו חגורת נפץ. חג"ל חשיבות למוזיד אלמצרי. לפי בקשתו של מרואן
ברגותי, הנאשם התקשר במהלך.השיחה הנ"ל אל מוזיד אלמצרי וקיבל את הסכמתו של אחרון
למסור את חגורת הנפץ הנ"ל לידי מרואן ברגותי. מרואן ברגותי מסר לנאשם כי ישלח את שומר
ראשו ועוזרו, אחמד ברגותי המכונה "אלפראנסי", אל חנאשם כדי לצורך קבלת חגורת הנפץ הנ"ל.
לאחר יום, הנאשם נפש ברמאללה עם אחמד ברגותי הנ"ל ומסר לידיו את חגורת הנפץ האמורה.

**פרט עשירים ושניים:** ת.פ. 612/02 בנימין

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 27.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו :

1. הנאשם הנ"ל, בסוף חודש ינואר – תחילת חודש פברואר 2002 או בסמוך לכך, נפגש בשכם עם
דאריין אבו עישה (להלן : דאריין), שהיא בת-דודתו של פצוצ'את אבו-עישה, אשר ביצע פיגוע
התאבדות ברחוב נווה שאנן בתל-אביב ביום 25.01.02 בטיעון של הנאשם. דאריין הביע בפני
הנאשם את רצונה לבצע פיגוע התאבדות.

2. בחודש פברואר 2002, ברמאללה, הנאשם נפגש שוב עם דאריין, אשר שוב ביקשה כי הנאשם
ישלח אותה לבצע פיגוע התאבדות על מנת לגרום למותם של אזרחים ישראליים רבים ככל
מנותן.

3. הנאשם פנה אל עמברים ואתי ויונס עווים, מהני אבו חלאויה ומחמד נאיפה וריויה לכ"ל כי
ישנה בחורה המבקשת לבצע פיגוע התאבדות. עמברים עווים מסר לנאשם כי הוא מסכים
לשלוח את הבחורה האמורה לביצוע פיגוע התאבדות וכי חוא יכין מטעו תכלה לצורך כך.
עמברים עווים הודיע לנאשם כי עליו לצלם את הבחורה לפני שתצא לביצוע פיגוע התאבדות
המתוכנן.

4. הנאשם הביא את דאריין לדירתו של אהני, האלד שוריש, תצטאת בכפר בנישניא. הנאשם הביא
לאותה הדירה צלם בשם אחמד שצאו וביצד עם האחרון צלם את דאריין לקראת ביצוע פיגוע
התאבדות המתוכנן. במהלך הצ'ילום, דאריין קראה צוואה.

</div>

ת.ח. 731/02

P 5: 300

5. יום למחרת, 27.02.02, הגיעו לדירה הנ"יל עברים עויים, מהנד אבו-תלאווה ומחמד אבו-רבעא, אשר הביאו עמם תגורה, שבה הות מטען חבלה, לצורך הוצאת החוצאה לפועל של פיגוע התהאבדות המתוכנן.

6. מכיוון שדאריץ סירבה לכך שגבר שבני עליות את תגורה הנפץ, לילה מרמד צאלות ביתאריץ, על-פי בקשתו של חמאשם, שהוא נשוי לאחותה חנזיזה, חלבישה על גופה של דאריץ את מטען התחבלה הנ"יל. בעת שלולא בותאריץ חלבישה את תגורה הנפץ על גופה של דאריץ, היא תכונה כי אותת החכתפניות של תגורה הנפץ רופפת וחיזקה'אותה באמצעות סיכה.

7. חמאשם וחבריו הנ"יל תכנו כי דאריץ תגיע אל התחנה משטרת ישראל ביפו ושם תפוצצ את מטען חנפץ שהיה נשאות על גופה ובכך תגרום למותם של אזרחים ישראליים רבים ככל הניתן.

8. לאחר מכן חבריו של חמאשם עזבו את הדירה הנ"יל והשאירו נשאר שם עד שעות הערב עם דאריץ ולולא בותאריץ.

9. באזווי מראר גייס לצורך העברתה של דאריץ אל תוך מדינת ישראל על מנת שתתבצע שם את פיגוע התהאבדות המתוכנן את מוסא סרי חסונה והפז עפתת מקבל.

10. בשעות הערב של אותו.חום, חגאשם הגע כיחד עם לילא בותאריץ הדאריץ, אשר נשאת על גופה את מטען התחבלה הנ"יל, לבית חחולים "אבו-ריאה" ברמאללה. שם חם נפגשו עם עברים עויים, מחמד אבו רבעא, באזוו מראר ומחנד אבו-תלאווה.

11. משם חבריו הנ"יל של חמאשם העבירו את דאריץ למחסום אי-ראם. במחסום אי-ראם, דאריץ עלתה לרכב סובארו כחול, מ.ר. 7797787, של מוסא סרי חסונה וחפז עפתת מקבל, אשר הגיעו למקום על-פי בקשתו של באזוו מראר וחד אמורים להסיע את דאריץ לתחנת משטרת ישראל ביפו על מנת שום דאריץ תפעל את מטען התחבלה, אשר חורבנ על גופה, ובכך תגרום בכוונה למותם של אזרחים ישראליים רבים ככל הניתן.

12. ביום 27.02.02, סמוך לשעה 22:27, במחסום של צהי"ל ומשטרת ישראל "מכבים" בכביש 443 חרבב שבו נסעו דאריץ, מוסא חסונה והפז מקבל נעצר לביקורת על-ידי חייל צה"ל ושוטרי משטרת ישראל. משהגניח דאריץ, כי לא תצליח לעבור את מחסום "מכבים" הנ"יל, לחיבוכ לשטחת של מדינת ישראל ולבצע את פיגוע התהאבדות כפי שתוכנן, היא הפעילה את מטען התחבלה שנשאך על גופה בכוונה לגרום למותם של שוטרי משטרת ישראל וחיילי צחי"ל שהיו במחסום הנ"יל.

13. כתוצאה מפיצוץ מטען התחבלה, אשר אותו דאריץ נשאת על גופה מצאו באזורת קשת שוטר משטרת ישראל, מרדכי טל, בבטנו, שני שוטר נוספים, דוד כהן ושאול כהן, נפצעו באורח קל.

14. דאריץ נהרגה במקום כתוצאה מפיצוץ מטען התחבלה הנ"יל.

<u>פרט עשרים ושלושה:</u>

<u>מהות העבירה:</u> החזקת כלי-ירייה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשי"ל1970-.

<u>פרטי העבירה:</u> הנאשם הנ"יל, באיזור, חחל מתחילת חודש מרץ 2002 ועד לאמצע חודש אפריל 2002 או בסמוך לכך, החזיק ברשותו כלי-ירית, תחמושת, פצצה, רימון יד או חפץ נפץ או במעיר, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת הזתיר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם חנ"יל, במהלך חקופתה האמורה, החזיק.ב רוסי"ר 16-M, אשר אותו קיבל ממוחנד אבו-חלאווה, וזאת ללא הענדת היתר שהוענקה על ידי מפקד צבאי או מטעמו.

הנאשם אף ירה ב רוסי"ר 16-M האמור במהלך הלוויתו של מחנד אבו תלאווה הנ"יל. הנאשם הסתיר את רוסי"ר 16-M הנ"יל בעת שנמלט מרמאללה בעקבות כניכתם של כוחות צה"ל לעיר.

ת.ת. 733/02

P 5: 301

<u>**פרט עשרים וארבעה:**</u> **ת.א 580/02 שפט**

<u>**מהות העבירה:**</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ס1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 10.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. חטאשם חני"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, נפגש עם עכברים ראתו יונט עוונס. עכברים עוויס מסר לנאשם כי ישני אדם המבקש לבצע פיגוע התאבדות בתוך מדינית ישראל במטרה לגרום למותם של אנשיו רבים בכל חניון.

2. עכברים עוויס ביקש מהנאשם לסייע בצילום המחבל המתאבד לקראת יציאתו של האחרון לביצוע פיגוע התאבדות המתוכנן. הנאשם הסכים לצלם את המחבל המתאבד בבית של אחיו, תאלד שוויש, הנמצא בבית'נינא.

3. ביום 09.03.02 הנאשם ועכברים עוויס הגיעו לדירית האמורה בבית'נינא. לדירית האמורה הגיע גם המחבל המתאבד שהוא דורעיאם. עות מחמד-סעדיר זכרונה, וכן הצלם אתער שצ'אב, אשר הוזמן על-ידי הנאשם, וניתוטאית נוספת. בעת צילומו של המחבל המתאבד נכח בנם אחיו של עכברים עוויס - סאמר עוויס.

4. לאחר מכן סאמר עוויס נסע ביחד עם דורעיאם זכארנה לדירתו של עכברים עוויס במחנה הפליטים אמערי. בדרכם למקום המלל, מסוק ירד טיל לעבר הרכב. דורעיאם זכארנה הספיק לברוח מהרכב הנ"ל ואילו סאמר עוויס נחגר כתוצאה מפגיעת הטיל הנ"ל.

5. דורעיאם זכארנה קיבל, בתחנם לתכנית שגערכה מוקדם יותר בין הנאשם וחברנו, מדי מחמד נאושף הקשנה "אבו רביע" רוס"ר קלצ'ניקוב, תחמושת ושני רימוטד-חד ובינם 14.03.02 יצא "ברמאללת לביצוע פיגוע ההתאבדות הסתוכנן במטרה לגרום למותם של אנשים רבים בכל חניון.

6. ביום 10.03.02, בשכונת השעה 16:30, המחבל המתאבד הנ"ל (דורעיאם זכארנה) ניסה לחדור אל, תוך מדינת ישראל כשהוא חמוש ברוס"ר קלצ'ניקוב, מחסוניות מלאות בכדורים ושני רימוטד-חד, וחאת על מנת לבצע את פיגוע ההתאבדות המתוכנן ולגרום בכוונה למותם של אזרחים רבים בכל חניון. דורעיאם זכארנה הובא למחסום אי-ראם על-ידי עוסא מחמד מחמוד גיברין, אשר גויס למשימה זו על-ידי ראש המודיעין הכללי של חרשות הפלסטינית - תאופיק טיראוויל.

7. במועד ובשעה האמורים, במחסום אי-ראם או בסמוך לכך, המחבל המתאבד הנ"ל, דורעיאם זכארנה, נתגר על-ידי כוחות הביטחון הישראליים בעת ניסיונו לחדור אל תוך מדינת ישראל כאמור לעיל.

<u>**פרט עשרים וחמישה:**</u> **ת.א 2069/02 מת"ם י-ם**

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ס1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם חני"ל, בחדש בברואר 2002, בשכם או בסמוך לכך, נפגש עם רבע רובי, אשר ביקש מהנאשם להעביר אדם עם "יחפוניס" לטול-כרם. הנאשם הסכים ואז רבע אבו רוב חנגיש את הנאשם עם מחמד השאיקה.

2. הנאשם נסע ביחד עם מחמד השאיקה משכם לטול-כרם. במהלך תנסיעה הנאשם חבין כי מחמד השאיקה נושא על גופו חגורה עם מוען חבלת במטרה לבצע פיגוע התאבדות. הנאשם ומחמד השאיקה לא הצליחו להיכנס לטול-כרם, אשר היתה מכותרת על-ידי כוחות צצאל ואין עצברו על-ידי הביטחון המסכל של חרשות הפלסטינית לאחר שנמסר על-ידי גורמים ישראלים כי הנאשם ומחמד השאיקה מתכוונים לחוצא לפעול פיגוע התאבדות. לפני מעצרם של השנים, הנאשם הוריד מגופו של מחמד השאיקה את חגורת הנפץ הנ"ל.

ת.ת 733/02

P 5: 302

3. לאחר מעצרם, הנאשם ומחמד חשאיקה הועברו על-ידי הרשות הפלסטינית לרמאללה ושם שוחררו.

4. לאחר השחרור, מחמד חשאיקה פנה אל הנאשם ואל עכברים ואת הנס ינס עווים ודלדיעו על רצונו לבצע פיגוע התאבדות. הנאשם ועכברים עווים הסכימו לחבין את מחמד חשאיקה ולעויד אותו בכל הדרוש לצורך ביצוע פיגוע התאבדות בתוך מדינת ישראל.

5. מחמד חשאיקה סיפר לנאשם ולעכברים עווים כי נגה אלוו אבו אואד אלשמעא, קצין בוזרוענן של חרשות הפלסטינית ברמאללה, והציע כי ישלח את מחמד חשאיקה לבצע פיגוע התאבדות. הנאשם ועכברים עווים שכנעו את אחמד חשאיקה שלא להמתין לקצין המודיעין של הרשות הפלסטינית ומששו שיסגיר אותו לידי ישראל. הנאשם ועכברים עווים שכנעו את מחמד חשאיקה כי הם יראג לכל הדרוש על מנת לשוחחו לביצוע פיגוע התאבדות בתוך מדינת ישראל.

6. הנאשם מצא דירה שכורה ברמאללה, אשר בה חוא וחברי היו אמורים להכין את פיגוע התתאבדות הממוחכן.

7. הנאשם הוביל אל הדירה האמורה את עכברים עווים ואת מחמד חשאיקה.

8. על-פי בקשתו של עכברים עווים, הנאשם גייס את סינגד שולי, תושבת עטירת שמאלויה, לבצוע פיגוע התתאבדות תניל, וזאת לאחר שהנאשם ועכברים עווים חחליטו כי יחיו שני מתבולים מתאבדים, גבר ואישה, אשר יצעגו פיגוע התאבדות בפול וזאת במטרה לגרום למות של אורחים ישראליים רבים כבל הניתן. סינגד שולי הגיעה אף היא לדירה האמורה.

9. בדירה האמורה, על-פי בקשתו של הנאשם, הצעלה אחמד שאבי צלם באמצעות מצלמת וידאו את מחמד חשאיקה ואת סינגד שולי לקראת פיגוע התאבדות הממוחכן.

10. בשלב זאה, הנאשם החליט כי אינו רוצה בכך שסינגד שולי תשתתף בביצוע פיגוע התתאבדות, והדיע למשתפתהו של האחרונה על כוונתחו של בתם. כתוצאה מכך, סינגד שולי חזר לאיווך שכם ומשם נמלטת לירדן.

11. עכברים עווים פנה אל מ(שרדו של ראש המדיזיון חבלכי ברשות הפלסטינית, ואופתק טיקאווי, וחבקש משם חומרי נפץ. עכברים עווים יצר מחומרי הנפץ תניל מטען חבלה לצורך ביצוע פיגוע התתאבדות הממוחכן.

12. לאחר מכן, הנאשם ועכברים עווים חביט את תנורת תנפץ.

13. הנאשם גרם לצורך חבנרתנו של מחמד חשאיקה אל תוך מדינת ישראל לביצוע פיגוע התתאבדות הממוחכן את סמאו מחמד שחאדה, אשר אותו תכיר קודם לכן באמצעות אורשזאו עובזיחז"גיאבר"(אבו-עיאוש).

14. ביום 20.03.02 הנאשם נפגש ברמאללה עם ראש "חתנזוים" של חמתיח באחזור, מרואן ברגואתי. חנאשם מסר למרואן ברגואתי כי עכברים עווים עומד לשלוח מחבל מתאבד לצורך בצעת פיגוע התאבדות בתוך מדינת ישראל. מרואן ברגואתי ביקש לדעת אם הנאשם ועכברים עווים זקוקים לדבר מה לצורך הHוצאה לפועל של הפיגוע המתוונו. למרות שתנאשם תיוב בשלולה על השאלה תניל, מרואן ברגואתי מסר לנאשם סכום של 600 דולר אריהב".

15. ביום 21.03.02 הנאשם נפגש ברמאללה עם עכברים עווים ועם סמאו שחאדה. עכברים עווים חסביר לסמאו מחאדה כי עליה לחבוגל את הֿתiaבל המתאבד אל ירושלים על מנת שיבצע שם את פיגוע התתאבדות הממוחו וזאת מאחר שהיא מכירה היטב את ירושלים ואת הדרכים המובילות אליה.

16. בארון היום, הנאשם, עכברים עווים ומחמד חשאיקה ביקרו במשרדו של חסין א-שיח, מזביר ארגון הפתיח באחזור. שם, עכברים עווים קיבל מידי חסין א-שיח כסף רשמ ורימונ"מ-ידי לצורך החוצאה לפועל של הפיגוע המתוונו.

17. חנאשם וחברי תניל רשפו בכסף האמור בגדים עבור מחמד חשאיקה, אשר בחם בצע האחרון את פיגוע התתאבדות, אשר יתואר בחמשך.

18. לאחר מכן, הנאשם עם חברו תניל נוע לדירה ברמאללה, אשר בה היו מחמד חשאיקה תניל, חני חדר ומויד אלמצרי. עכברים עווים ומויד אלמצרי חכינו את מחמד חשאיקה לקראת ביצוע פיגוע התתאבדות המתוונו וביחד עם הנאשם חלבישו עליו את תנורת תנפץ תניל.

19. לאחר מכן, עכברים עווים יצר קשר עם קאהירה סעיד סעדי וביקש מהאחרונה לסייע בחעברת מחבל מתאבד לירושלים.

20. לאחר זמן מה, קאהירה סעדי הגיעה אל הנאשם וחברי תניל.

P 5: 303

21.  בשעות הצהריים; ביום 21.03.02, הנאשם חטיף מרמאללה למחסום קלנדיה, ברכב שכור,
את מחמד השאוקה שנשא על גופו את חגרת הנפץ חי"ל וכן את סנאג שהאזדה וקאהירה
סעדי שליווי את המחבל המתאבד חנ"ל.

22.  לאחר מכן, ולאחר שעשרו בנשיקת ממחמד השאוקה, הנאשם חזר לרמאללה.

23.  קאהירה סעדי וסנאא שהאדה הובילו את מחמד השאוקה, אשר נשא על גופו את חגרת
הנפץ הי"ל, לרחוב המלך ג'ורג' בירושלים. השתיים בחרו את המקום מכוונן שתוא חומה
אדם בשעות אחרי הצהריים ולכן השאיים הסחליטו בו חוא "מתאים" לביצוע פיגוע
התהתאבדות המתוכנן.

24.  לאחר שסנאא שהאדה וקאהירה סעדי עזבו את מחמד השאוקה ברחוב המלך ג'ורג',
ממחמד השאוקה הניע אל מעבר התצויות תומצא בסמוך לבית-קפה יארונה" וטמנת לצמת
הרחובות המלך ג'ורג' וחתסתדרות.

25.  במקום האמור, בסמוך לשעה 16:20 ביום האמור, מחמד השאוקה הפעיל את מטען
תחבלה, אשר אותו נשא על גופו, כשתוא מצא בתוך קהל האנשים וואת במטרה לגרום
למותם של אזרחים רבים ככל תניתן.

26.  לאחר שלנאשם וחבריו נודע על ביצוע פיגוע התהתאבדות המתוכנן, הנאשם העביר קלטת
וידאו עם "אזוואתו" המצולמת של מחמד השאוקה לידי עיתונאי אחמד עצ'צ'.

27.  לאחר, מכן, הנאשם ומרברים עוזים פנו אל חסין א-שיח, מזכ"ל ארגון הפת"ח באיזור,
וניסחו חודעה, אשר בח "יזדדיי חלכי אלאקצ'אי, חזרוע הצבאית של "התחדנזות" של
הפתיח, נטלו אחריות על ביצוע פיגוע התופף המתאבד לעיל. לאחר-עריכת חחודעה,
הנאשם נגש אל משרדי חברת חדחאשות ANA, שם חנאשם צולם כשהוא מקריא את
חודדעת הני"ל של נטילת האחריות לפיגוע המתאבד לעיל.

28.  תמורת השתתפותו בחוצאות לפעול של פינע התהתאבדות חני"ל, הנאשם קיבל מראש
המרצ'יון הכללי של הרשות חפלסטינית, תאופק טיראווי, סכום של 1,200 שיח.

29.  במעשיו המתוארים לעיל, הנאשם הני"ל, במועד-האמור, גרם בכוונה למותם של רס"מ דרי
שמש ז"ל, אשר נהרג כתוצאה מפיצוץ מטען חחבלה שהופעל על-ידי מחמד השאוקה, כפי
שתוראו לעיל.

<u>פרט עשירים ושישת:</u>  פ.א. 2069/02 מת"ם יים .

<u>מחות חעבירה</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לגו בדבר חוראות ביטחון (יחודה
והשומרון) (מס' 378), תש"ו-1970- וסעיף 14(א) לגו בדבר כללי האחריות לעבירה (יחודה
והשומרון) (מס' 225), תשכ"ח1968-.

<u>פרטי חעבירה:</u> הנאשם הני"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך,
גרם במונה למותם של אחר, דחיינו:
הנאשם הני"ל, במועד האמור, במקום האמור בפרט האישום חעשירים וחמישה, במעשיו
המתוארים בפרטי חאישום העשירים וחמישה, גרם בכוונה למותה של צ'פורח שמש ז"ל, אשר
נהרג כתוצאה מפיצוץ מטען חחבלה שהופעל על-ידי מחמד השאוקה, כפי שתוראו בפרט חאישום
עשירים וחמישח. צ'פורח שמש ז"ל היתה בעת מותה בחדחש הרביעי לחחריון.

<u>פרט עשרים ושבעה:</u> פ.א. 2069/02 מת"ם יים

<u>מהות חעבירה:</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לגו בדבר חוראות ביטחון (יחודה
והשומרון) (מס' 378), תש"ו-1970- וסעיף 14(א) לגו בדבר כללי האחריות לעבירה (יחודה
והשומרון) (מס' 225), תשכ"ח1968-.

<u>פרטי חעבירה:</u> הנאשם הני"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך,
גרם בכוונה למותן של אחר, דחיינו:
הנאשם הני"ל, במועד האמור, במקום האמור, בפרט האישום העשירים וחמישה, במעשיו
המתוארים בפרטי חאישום העשירים וחמישח, גרם בכוונה למותו של יצחק בהן ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען חחבלה שהופעל על-ידי מחמד השאוקה, כפי שתוראו בפרט חאישום
העשירים וחמישה.

ת.ת. 733/02,

P 5: 304

<u>פרט עשירים ושמונה:</u>  פ.א. 2069/02 מת"ם י-ם

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל1970- וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בזמן באזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, ניסה לגרום למותם של אזרחים רבים בכל הנתין. כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד תשאיקה, כפי שתואר בפרט האישום העשרים וחמישה, נמצאו 81 אזרחים.

<u>פרט עשרים ותשעה:</u> פ.א. 2069/02 מת"ם י-ם

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בזמן באזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, גרם נזק כבד לבניינים ובתי-עסק הסמוכים למקום האמור וכן לכלי רכב רבים, אשר היו בסמוך למקום המתואר בפרט האישום העשרים וחמישה, אשר בו הופעל מחמד תשאיקה את מטען החבלה, כפי שתואר בפרט האישום העשרים וחמישה.

<u>פרט שלושים:</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף חודש פברואר - תחילת חודש מרץ 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה, קשר עם פאוזי מראר, עומר קעדאן אדם נוסף לבצע פיגוע ע"י לעבר כלי ישראליים באיזור עטרות ובכך לגרום למותם של אזרחים ישראליים. הנאשם ושלושת חבריו הנ"ל הצטיידו בכלי נשק ויצאו ברכבם מרמאללה לכיוון עטרות על מנת לבצע שם את הפיגוע המתוכנן. עקב תקלה שאירעה ברכבם של הנאשם וחבריו, הפיגוע המתוכנן לא יצא אל הפועל.

<u>פרט שלושים ואחד:</u>

<u>מהות העבירה:</u> ירי לעבר אדם, עבירה לפי תקנה 58(א) ו-(ד) לתקנות החגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, חית חבר לכל קבוצה או חבר של בני-אדם שחבר אחד או יותר מהם עבדו, בזמן חיותם חברים לקבוצה או לחבר, או עברו עבירה של ירי בנשק אש או כל שהוא על כל אדם או על כל קבוצה של בני אדם, או כל מקום שבני אדם עשויים להימצא בו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ביחד עם אחרים, ירה לעבר הטנקים של צה"ל,

13

<u>פרט שלושים ושניים:</u>

<u>מהות העבירה:</u> ירי לעבר אדם, עבירה לפי תקנה 58(א) ו-(ד) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, היה חבר לכל קבוצה
או חבר של בני-אדם שתבר אמד, או יותר מהם עבר, בזמן-היותם חברים לקבוצה או לחבר, או
עברים עבירה של ירי בנשק אש כל שהוא על כל אדם או על כל קבוצה או על בני אדם, או כל מקום
שבו אדם עשויים להימצא בו, דהיינו:
הנאשם הנ״ל, במתעד האמור, ברמאללה או בסמוך-לכך, ביחד עם אחרים, ירה לעבר הטנקים של
צה״ל.

<u>פרט שלושים ושלושה:</u>

<u>מהות העבירה:</u> הנחת מצצה, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945 וסעיף
14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס׳ 225), תשכ״ח1968-.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, ורק או הנית מצצה,
רימון-יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מות או חבלה לאדם או שהוא או גוף לרכוש
כל שהוא, דהיינו:
הנאשם הנ״ל, במועד האמור, במחנה הפליטים ג'נין או בסמוך לכך, ביחד עם עכברים עוניס, נדאל
אלבדאוי, מחמוד טנאלבת, רביע אבו רוב, הניח 5 מטעני חבלה בדילים שונים בכניסה למחנה
הפליטים ג'נין במטרה לפגוע בכוחות של צה״ל ולמנוע מכוחות צה״ל מלהיכנס לג'נין.

<u>פרט שלושים וארבעה:</u>

<u>מהות העבירה:</u> נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר חוראות בטחון
(נחחרה והשומרון) (מס׳ 378), תשל״1970 וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס׳ 225), תשכ״ח1968-.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, נסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, בכביש המוביל לדותן בסמוך לכפר עראבה, ביחד עם מחמוד
טואלבה, הניח מטען חבלה במסרה לפוצצו לגרום למותם של נוסעי כלי רכב ישראליים העוברים
בכביש הנ״ל. לאחר שהנאשם והבר הנ״ל הבחינו בג'יפ של צה״ל, השיניים הפעילו את מטען
החבלה הנ״ל בכוונה לגרום למותם של חיילי צה״ל שנסעו בג'יפ הנ״ל. מטען החבלה הנ״ל החפוצץ
ורק בנס לא נגרם נזק.

<u>פרט שלושים וחמישה:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בסוף חודש מאי 2002 או בסמוך לכך, עשה עבודה כל
שהוא או ביצע שירות כל שהוא בשביל שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ״ל, במועד האמור, בעת שהיה בשכם, שוחח באמצעות טלפון עם דרוש דוהדאר, פעיל
בתנזים של הפתח ברמאללה. דרוש דוהדאר מסר לנאשם כי הוא, ביחד עם מזויר אלמנצרי
ומדאנללה, ביצע פיגוע ירי בסמוך לרמאללה וכתוצאה ממנוגו חירף הנ״ל חרב אזרח ישראלי.
דרוש דוהדאר ביקש מ הנאשם שיודה עם חסין א-שיח, מזכ״ל של ארגון הפתח באיזור, ויודיע
לאחרון על הפגיוע הנ״ל על מנת שהתסין א-שיח יטול את האחריות למיגוע ויעביר כסף למבצעי
הפיגוע הנ״ל.
הנאשם התקשר אל חסין א-שיח ומסר לאחרון אודות הפיגוע הנ״ל. לאחר מכן, הנאשם יצר קשר
עם דרוש דוהדאר, מסר לאחרון כי שוחח עם חסין א-שיח והורה לו לגשת אל חסין א-שיח על
מנת למסור לו את פרטי חפגיוע וכן את שמות מבצעיו.

<div align="center">14</div>

ת.ת. 735/02

P 5: 306

**פרט שלושים ושישה:**

<u>מהות העבירה:</u> פגיעה בבטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במחצית השנה של חודש מאי 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, מפרעה או סכנה לביטחון האיזור או לביטחונן כוחות צה"ל וחיילו או לפעילותם, שימושם או תנועתם של כל אחד מאלה: אנגה, אווירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דוד-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מוסד כלשהו לייצור, חספקתם, תחסנתם, העברתם, מסירתם או הצצתם של מים, דלק, גז או השמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, נפגש בעניין עם מחמד אבו טביח, אשר הציע את עצמו כפעיל בניהאד אסלהאמי פלסטיני, ובכקש לחצטרף אל הנאשם בפעילותו נגד המטרות חישראליות. הנאשם נפגש בעניין עם חברו שיחו בסאא, שהוא אמאם במסגד במתנה חפלסטים גינין, ועדך בירור לגבי מחמד אבו טביח חנ"ל. שיחו בסאא אמר כי מחמד אבו טביח חינו פעיל בניהאד אסלהאמי פלסטיני, בעקבות האמור, הנאשם נפגש שוב עם מחמד אבו טביח. מחמד אבו טביח מסר לנאשם כי יש לו צער חמוכך לבצע פיגוע התאבדות וכן כי יש ברשותו וברשות חבריו חומרי נפץ ומטעני תבלח. מחמד אבו טביח ביקש מהנאשם איך ניתן להוציא לפועל פיגוע התאבדות בתוך מדינת ישראל.

הנאשם הבטיח למחמד אבו טביח לבדוק את הנושא.

כמו כן, במהלך השירחה הנ"ל, הנאשם מסר למחמד אבו טביח כי בשכם יש מחסור בחומרי נפץ. מחמד אבו טביח מסר כי אין לו בעיה והוא יכול לספק לנאשם חומרי-נפץ בכמות שהנאשם יבקש. בסוף השירחה הנאשם ומחמד אבו טביח חחליפו ביניהם מספרי טלפונים סלולריים.

לאחר מכן, הנאשם נפגש עם מחמד אבו רוב, אשר חקים לחעביר עבור הנאשם חומרי נפץ מגינין, מחמד אבו טביח, לידי הנאשם בשכם.

התכניות האמורות לא יצאו אל הפועל מכיוון שהקשר בין הנאשם לבין מחמד אבו טביח נותק לאחר שהנאשם חזר לשכם.

**פרט שלושים ושבעה:**

<u>מהות העבירה:</u> קשירות קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968, וסעיף 67א(ה) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש מאי 2002 או בסמוך לכך, קשר עם אדם אחר לחמוך אדם בבוח או באיומים או פיתוהו באמצעות תרמית ללכת מן המקום שהוא נמצא בו, וזאת כדי לשחרו או לאוסרו, דהיינו:

הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם חסין א-שיח, מזכ"ל ארגון הפתית באיזור, חסין אישית ביקש מהנאשם להקים חוליה בת 3-4 חברים, אשר תבצע פיגוע ירי נגד המטרות הישראליות ובן התוכוף חיילי צה"ל לצורך מיקות על שחרור אסירים פלסטיניים המוחזקים בבתי הכלא בישראל. חסין א-שיח הבטיח למען את פעילותו של הנאשם וזאת לאחר שייזיר חרשות חפלסטינית יאסר ערפאת יורה על חעברת הכספים לצורך הפעילות הנ"ל.

בעקבות הבקשה הנ"ל, הנאשם נפש בשכם עם צלאח מחמד חוסין בוכארי ושוחח עמו על חטיפת חיילי צה"ל ובקש לדעת אם האחרון מכיר שיטות לחטיפת חיילי צה"ל. צלאח בוכארי מסר לנאשם כי חוא מכיר שני יהודים, אשר אצלם עבד. צלאח בוכארי הציע לנאשם לחטות את ההתהלות חנ"ל לחגיע למחסום ליד טייבת ולחטוף אותם משם בסיוע של תושבי טירה, אשר אותם צלאח הכיר.

בסופו של דבר התכניות האמורות לא יצאו אל הפועל מכיוון שחסין א-שיח לא העביר לידי הנאשם את הכסף, אשר אותו הבטיח, וכן עקב כניסתם של כוחות צה"ל לשכם.

<div align="center">15</div>

<u>ת.ה. 733/02</u>

P 5: 307

<u>פרט שלושים ושמונה:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג)(ג) לתקנות
הגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם חנ"ל, באיזור, בחודש מאי 2002 או בסמוך לכך, עשה עבודה כל שהיא או
ביצע שירות כל שהוא בשביל שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, שוחח עם אבו שאקר, אחיו של מאג'ד אלקוני חמכונה "אבו שראר",
אשר נהרג. אבו שאקר הודיע לנאשם כי הוא תפס את מקום אחיו הנ"ל ומפקד על חוליית מחבלים
חמונה 18 איש. אבו שאקר ביקש מן הנאשם כי הנאשם יסייע לו בפעולותיו. אבו שאקר אף מסר לנאשם כי לו
אדם צעיר שתוא מוכן לבצע פיגוע התאבדות בתוך מדינת ישראל.
בעקבות הבקשות האמורות הנ"ל, הנאשם מסר לאבו שאקר את מספר הטלפון של מזכ"ל התנזים באיזור,
חסן אישיה, וזאת לאחר שהנאשם עצמו שוחח עם חסן אי-שיח הנ"ל וביקש מהאחרון לסייע
לאבו שאקר בכל מה שיבקש.

<u>פרט שלושים ותשעה:</u>

<u>מהות העבירה:</u> החזקת חפץ נפיץ, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970-.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מסוף חודש מאי 2002 ועד ליום מעצרו, החזיק
ברשותו כלי-ירידה, תחמושת, פצצה, רימון יד או חפץ נפץ או מבעיר, כלי או חפץ או דבר המתוכנן
או מסוגל לגרום מוות או חבלה חמורה, ללא העודות היתר שהתענקה על ידי מפקד צבאי או
מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופת האמורה, באולם שמחות "עלאא א-דין" בשכם או בסמוך לכך,
החזיק בתוגית נפץ, שני מטעני חבלה בתוך מיכלי מתכת וכן 5 פצצות מרכבה בקופסים שונים,
וזאת ללא העודות היתר שהתענקה על ידי מפקד צבאי או מטעמו. את החפצים האמורים לעיל
הנאשם קיבל מידי צאלח אלקנה.

<u>פרט ארבעים:</u>

<u>מהות העבירה:</u> ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970-.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הקודם, ייצר
כלי-ירידה, תחמושת, פצצה, חפץ נפץ או מבעיר, ללא תעודת היתר שהתענקה בידי מפקד צבאי או
מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופת האמורה, באולם שמחות "עלאא א-דין" בשכם או בסמוך לכך,
ייצר מנגנוני הפעלה עבור מטעני החבלה, המתוארים בפרט האישום הקודם, וזאת ללא תעודת
היתר שהתענקה בידי מפקד צבאי או מטעמו.
באולם שמחות בוקר גם פעיל ג'יהאד אסלאמי פלסטיני, פתח בדראן חמכונה "אבו ג'מאל", אשר
ביקש לעבוד ביחד עם הנאשם בייצור מטעני החבלה. הנאשם הסכים לשתף פעולה בייצור מטעני
חבלה במקום האמור עם "אבו ג'מאל". הנ"ל, אשר אותו הכיר דרך ארוסתו - עובידה ג'אבר
(אבו-עיישה).

16

ת.פ. 733/02

**פרט ארבעים ואחד:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש מאי 2002 או בסמוך לכך, קשר עם אדם אחר ליצור כלי-יריה, תחמושת, פצצה, חפץ נפץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, קשר עם צלאח מחמוד חוסין בוכארי, לתכים מעבדה ליצור חומרי נפץ באיזור טירה בתוך מדינת ישראל.

**פרט ארבעים ושניים:**

**מהות העבירה:** פגיעה בבטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש מאי - תחילת חודש יוני 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, הזיק, חיבלה או סכנה לבטחון האיזור או לבטחונן כוחות צה"ל וחיילים או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש ליצורם, חסקתנם, חחסנתם, הענרתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, נפגש עם נימאל טירואוי, אשר מסר לנאשם כי יש לו שני מחבלים המוכנים לבצע פיגוע התאבדות. נימאל טירואוי ביקש כי הנאשם יבצא את המחבלים ויאמאבדים הנ"ל לקראת ביצוע פיגוע התאבדות המתוכנן וכן כי יכין אותם ויציד אותם בכל הדרוש לצורך ביצוע פיגוע התאבדות. הנאשם הסכים לחצעת האמורה.

כשלושה ימים לפני מעצרו, הנאשם נפגש עם נימאל טירואוי באולם שמחות "עלאא א-דין" בשכם. נימאל טירואוי הביא עמו 8 ק"ג של חומר נפץ, אך הנאשם סעך כי החומר נפץ זה אינו מספיק. נימאל טירואוי הבטיח להביא בהקדם כמות נוספת של חומר הנפץ.

הנאשם לא הספיק להרכיב את מטעני החבלה עבור שני המחבלים המתאבדים הנ"ל עקב כניסתם של כוחות צה"ל לשכם ועקב מעצרו של הנאשם.

**פרט ארבעים ושלושה:**

**מהות העבירה:** פגיעה בבטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך חודש מאי - תחילת חודש יוני 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, הזיק, חיבלה או סכנה לבטחונן האיזור או לבטחונן כוחות צה"ל וחיילים או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש ליצורם, חסקתנם, חחסנתם, הענרתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, היה בקשר טלפוני עם מנאאם, סטודנטית באוניברסיטת חיפה, אשר את פרטיה הנאשם קיבל מפעיל ב"גדוד" חללי אלאקצא" מזרח אלמצרה. הנאשם נתן לשורחת עם מנאאם על מצבב באיזור. אנאאם הנ"ל ידעה כי הנאשם היו פעיל צבאי בכיר ביחידות חללי אלאקצא" וכי חינו מבוקש לכוחות חבישחון הישראליים. בראשית חודש יוני 2002 הנאשם ביקש מאנאאם להעיע למני להוצמר עמו והיא הסכימה. באותה העת פנה אל הנאשם פאתח בדראג, חמכונה "אבו נימאלי", ושאל אם הנאשם מכיר תושבי מדינת ישראל המבוכנים לסייע בביצוע פיגועים בתוך מדינת ישראל. הנאשם סיפר לפאתח בדראג אודות אנאאם הנ"ל ומסר כי בכוונתו להיפגש עמה בנגין ולבקש ממנה לאתר מקום במדינת ישראל שבו ניתן ליצור חומרי נפץ, לאתר מקומות המתאימים לביצוע פיגוענים המתכונים, וכן לגויס אותה לצורך סיוע למתאבדים מתאבדים במעברים מתאיזור אל תוך שטחה של מדינת ישראל. תכניתו הנ"ל של הנאשם לא יצאה אל הפועל עקב מעצרו על-ידי כוחות הביטחון הישראליים ביום 02.06.03.

17

ת.פ. 733/02

P 5: 309

<u>עדי התביעה:</u>

1. רס"מ מטאנס חדאד, מ.א. 927384, לח"ק שומרון. [גובה אמרות הנאשם מיום 03.06.02 ומיום 18.06.02]
2. רס"ר עאטף עווידה, מ.א. 1000496, לח"ק שומרון. [גובה אמרות הנאשם מיום 10.06.02 ומיום 27.06.02]
3. רס"מ רוני עאמר, מ.א. 739060, לח"ק שומרון. [מגיש דו"ח מסדר זיהוי תצלומים ולוח תצלומים]
4. פרוטוקול הארכת המעצר של הנאשם מיום 17.07.02.
5. המכונה "אריאלי", שירות הביטחון הכללי. [מגיש דו"ח הובלה והצבעה + תצלומים]
6. מוסא סרי חסונה, ת.ז. 040951592. (עצור)
7. תאפז ע/פתח מקבל, ת.ז. 040976136. (עצור)
8. עבידה ע/רחמאן מחמד ג'אבר, ת.ז. 989498118. (עצורה)
9. לילא מחמד צאלח בוכארי, ת.ז. 900128737. (עצורה) (ת.ת. 595/02)
10. קאהירה סעיד סעדי, ת.ז. 903946960. (עצורה) (ת.ת. 451/02)
11. סנאא מחמד שחאדה, ת.ז. 081021198. (עצורה) (ת.ת. 484/02)
12. פאתח וחיד אסעד בדראן, ת.ז. 948298849. (עצור)
13. ע/כרים ראתב יונס עוויס, ת.ז. 980136675. (עצור) (ת.ת. 442/02)
14. עיסא מחמד מחמוד גיברין, ת.ז. 906446521. (עצור) (ת.ת. 427/02)
15. זיד יונס אחמד יונס, ת.ז. 966647633. (עצור)
16. ג'ואד (בהאא) זיאד ע/מועטי שלחתי, ת.ז. 941474827. (עצור)
17. אסמעיל ע/לטיף אבו עיישה, ת.ז. 901227124. (עצור)
18. רביע רפיק שריף אבו-רוב, ת.ז. 901815191. (עצור)

<u>פ.א. 1359/02 יפתח</u>

19. רס"ל רוני שרעבי, מ.א. 1037241, תחנת יפתח. [מגיש דו"ח פעולה + דו"ח פעולה/זכ"ד]
20. שחר כחלון, מ.א. 1071562, צח"מ יפתח. [מגיש זכ"ד]
21. רס"ב דוד שרון, מ.א. 534818, תחנת יפתח. [מגיש דו"ח ביקור בזירה]
22. רס"מ חן לוין, מ.א. 747485, מעבדת חבלה תל-אביב. [מגיש טופס לוואי למוצגים]
23. רס"ב דוד שרון, מ.א. 53461, זיהוי - תחנת יפתח. [מגיש לוחות תצלומים]
24. רס"ר מומי דיין, מ.א. 1011153, זיהוי - תחנת יפתח. [מגיש לוחות תצלומים]
25. ציון שדה, ת.ז. 029503724, משרד מוצגים, מז"פ, מטא"ר - ירושלים. [מגיש תע"צ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
26. מפקח ערן רוזן, מ.א. 980862, המעבדה לפיתוח ט.א. סמויות, מז"פ, מטא"ר -מ ירושלים. [מגיש דו"ח בדיקה]
27. דוד אטיאס, המעבדה לזיהוי טביעות אצבע, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
28. מרית פרנקו, מס' דרכון פיליפינים DB10087782. (פרטים בתביעה) [עדת ראיה]
29. יצחק שיפרא, ת.ז. 309605866. (פרטים בתביעה) [נפצע בפיגוע]
30. חיים גואטה, ת.ז. 054918941. (פרטים בתביעה) [נפצע בפיגוע]
31. אסנת גואטה, ת.ז. 022130140. (פרטים בתביעה) [נפצעה בפיגוע]
32. אלי דוידוב, ת.ז. 016685893. (פרטים בתביעה) [בנו נפצע בפיגוע]
33. פרחאן אלבז, ת.ז. 035137009. (פרטים בתביעה) [נפצע בפיגוע]
34. רון מאיר, ת.ז. 014502983. (פרטים בתביעה) [נפגע בפיגוע]
35. משה תיון, ת.ז. 050948553. (פרטים בתביעה) [עד ראיה, טיפל בפצועים]
36. ערן דוידי, ת.ז. 035968866. (פרטים בתביעה) [עד ראיה, טיפל בפצועים]
37. ג'יק כהן, ת.ז. 012447496. (פרטים בתביעה) [עד ראיה, טיפל בפצועים]
38. אינה רוקביצין, ת.ז. 321153611. (פרטים בתביעה) [נפצעה בפיגוע]
39. גלה חחיאשוילי, ת.ז. 312782550. (פרטים בתביעה) [נפצעה בפיגוע]
40. אהרן ישראלי, ת.ז. 027789106. (פרטים בתביעה) [נפצע בפיגוע]

41. יצחק קוזרשווילי, ת.ז. 011378510. (פרטים בתביעה) [נפצע בפיגוע]
42. לריסה גברילוב, ת.ז. 303601419. (פרטים בתביעה) [נפצעה בפיגוע]
43. פרקסיאל גברילוב, ת.ז. 305907008. (פרטים בתביעה) [המשפחה שלו נהרסה בפיגוע]
44. יצחק שימשוילוילי, ת.ז. 311985915. (פרטים בתביעה) [עסקו נהדס בפיגוע]
45. פרופ' יהודה היס, המכון הלאומי לרפואה משפטית. (מגיש חוו"ד - מומחה) [יזומן לפי דרישת
    מפורשת של הסניגוריה בלבד]
46. רשימת הפצועים מהפיגוע.
47. העדות רפואיות.

## ת.א. 412/02 בנימין
48. שאול כהן, מ.א. 759407, תחות בנימין. [עדות]
49. דוד כהן, ת.ז. 028999910, תחנת בנימין. [עדות]
50. מרדכי כיל, ת.ז. 29501590, תחות בנוסח. [נפצע קשה בפיגוע]
51. אלי טובע, ת.ז. 025716218. (פרטים בתביעה) [חייל מילואים היה במחסום בעת הפיגוע - ראה
    את המחבלת המתאבדת]
52. ליאור שטיינברס, ת.ז. 025044421. (פרטים בתביעה) [מפקד בוח מילואים במחסום בעת
    הפיגוע, שוחח עם המתבללת המתאבדת לפני הפיגוע]
53. אילן פקטורה, ת.ז. 308900141. (פרטים בתביעה) [חייל מילואים במחסום בעת הפיגוע - בדק
    את הרכב שבו נסעה המתבללת המתאבדת]
54. הגנה שנייד, ת.ז. 032781072. (פרטים בתביעה) [הגיע למקום מיד לאחר הפיגוע]
55. רסי"ל שי אלגרבלי, מ.א. 1010065, תחנת מודיעין. [מגיש דו"ח פעולה]
56. רס"ל אלי חגיג, מ.א. 1054782, תחנת מודיעין. [מגיש דו"ח פעולה]
57. מפקח ארנון שושני, מטאו"ר, אגף חקירות וחבישתיין, מדור מעבדות חבלה, שלוחת תל-אביב.
    (מגיש חוו"ד מוצ"ת דאישיות) מוצ"ת מומחה מוצ"ת זב-2335 / 0821/2002 + תצלומים + טופס
    שואר למוצגים) [יזומן לפי-חדרישה המפורשת של הסניגוריה בלבד]
58. שרה אבדרמוביץ-יבר, מזיפ- המעבדה האנליטית, מטאו"ר - ירושלים. (מגיש חוו"ד מומחה
    מתיק זב-2332-ע/04 54484) [תזומן לפי בקשה מפורשת של הסניגוריה בלבד]

## ת.א. 880/02 שפט
59. יסכל מצוה, ת.ז. 040202416, מגיב סיוון, גלעוף מ"ב. (פרטים בתביעה) [עדות]
60. פקד משה חדרה, ת.ז. 037537412, מגיב לבנ"א. (פרטים בתביעה) [עדות]
61. פקד לאונרד רבינוביץ, מ.א. 71055859, מגיב לבני"א. (פרטים בתביעה) [עדות]
62. מפקח אסף זגורי, מ.א. 1049396, מגי"ב לבוא. (פרטים בתביעה) [עדות]
63. רס"ר עודד מאירי, מ.א. 1065937, מתי"ס, ימי"ר - י-ם. (מגיש דו"ח פעול התפוסה וסימון +
    טופס לוואי למוצגים)
64. רפ"ק ליאור נדיבן, מ.א. 952127, מזי"פ - תחנת ציון. (מגיש לוחות תצלומים)
65. פואד כהן, מ.א. 1048701, מתי"ס, ימי"ר - י-ם. (מגיש זכי"ד + תמונות פולריאוד)

## ת.א 2069/02 מתי"ס י-ס
66. רס"מ אריאל יערי, מעבדת חבלה, מטאו"ר - ירושלים. [מגיש דו"ית תפיסה וסימון + חוו"ד
    מומחה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
67. שרה אברמוביץ-יבר, המעבדה האנליטית, מטאו"ר - ירושלים. (מגישה חוו"ד מומחה] [תזומן
    לפי דרישה מפורשת של הסניגוריה בלבד]
68. דרור כהן, מזי"פ תחנת ציון - ירושלים. [מגיש תמונות מזירת הפיגוע]
69. יונל שמש, ת.ז. 028077964. (פרטים בתביעה) [ניהוי גופתו של נד שמש ז"ל]
70. יניב יוסף, ת.ז. 027454958. (פרטים בתביעה) [זיהוי גופתו של נד שמש ז"ל]
71. תני פנחס, ת.ז. 028766723. (פרטים בתביעה) [זיהוי גופתו של נד שמש ז"ל]
72. יחיא בן חמו, ת.ז. 038342986. (פרטים בתביעה) [זיהוי נוהרת של ציפורית שמש ז"ל]
73. ליאור מינסא, ת.ז. 036586753. (פרטים בתביעה) [ראה את המחבל מתאבדצ, נפצע בפיגוע]
74. אילן באואר, מטי דרכון ארהי"ב 7007367376. (פרטים בתביעה) [הית יחד עם בנו חקטין סמוך
    למחובל בעת הפיגוע, שניהם נפצעו]

19

75. שינן דרוויש, ת.ז. 039888862. (פרטים בתביעה) [היתה בסמוך למחבל בעת הפיצוץ, נפגעה]
76. חוקיה לנשטיין, מס' דרכון חולדדו 31540243. (פרטים בתביעה) [נפצע בפיגוע, ראה את המחבל בעת הפיצוץ].
77. מדיון קמפסל,ת.ז.016443214. (פרטים בתביעה) [נפצעה בפיגוע]
78. אסד ארמווזה,ת.ז.051910735. (פרטים בתביעה) [נפצעה בפיגוע]
79. לורנס סלס,ת.ז.312738537. (פרטים בתביעה) [נפגע קל בפיגוע]
80. טל כהן, ת.ז.029506276. (פרטים בתביעה) [נפצע בפיגוע]
81. פיוזולה היים יעקובזאן, ת.ז. 011573441. (פרטים בתביעה) [נפצעה בפיגוע, נגרם נזק לחנות]
82. אלי לוי; ת.ז. 033643438. (פרטים בתביעה) [נפגע קל בפיגוע]
83. נתנאל גדעון, ת.ז. 012176707. (פרטים בתביעה) [נפגע קל, תנותו נפגעה]
84. אסטריד (רבקה) נורון, ת.ז. 301921165. (פרטים בתביעה) [נפצעה בפיגוע]
85. מזל הכמוב, ת.ז. 304119407. (פרטים בתביעה) [נפצעה בפיגוע]
86. בשמת כהן, ת.ז. 061273413. (פרטים בתביעה) [נפצעה בפיגוע]
87. משח פרך, ת.ז. 015776636. (פרטים בתביעה) [נפגע קל בפיגוע]
88. יפה לוי, ת.ז. 055466924. (פרטים בתביעה) [נפגעה קל בפיגוע]
89. רובי אסרף ,ת.ז. 021398011. (פרטים בתביעה) [ראה את המחבל בעת הפיצוץ]
90. אורח פאזוקוב, ת.ז. 039526371. (פרטים בתביעה) [היתה סמוך למקום הפיצוץ]
91. הלל אדם,ת.ז. 302040969. (פרטים בתביעה)[צ (עד ראיה, טיפל בפצועים]
92. רחמים הבבל,ת.ז. 059732735. (פרטים בתביעה) [נגרם נזק לחנותו]
93. דייר תן קובל, המכון הלאומי לרפואה משפטית. [מגישח חוו"ד מומחה] [יזומן לפי דרישה מפורשת של התביעה,בלבד]
94. פרופי יהלה־חוס, המכון הלאומי לרפואה משפטית. [מגיש חווי"ד מומחה] [יזומן לפי דרישה מפורשת של התביעה,בלבד]
95. העדית פטורה - יצחק כהן זיל.
96. רשימת נפגעים מהפיגוע של עיריית ירושלים - מוקד 106. (רשומה מוסדית)
97. תעדדות רפואות.

<u>רשימת עדים נוספת בנוגע לפצועים החדשים בפיגוע ברחוב המלד ג'ורג' בירושלים ביום 21.03.02</u>
<u>תימסר בהמלד המשפט</u>

מיכאל קוטלר,        סרן
תובע              צבאי

תאריך : 12.09.2002
סימוכין : 02‏־733.

20                              ת.ת.733/02

P 5: 312