No. 1021/13 .מס

## CERTIFICATION OF COPY

אישור העתק

I the undersigned Yitzhak Weinberg, a Notary in 33 Soreq Street, Beit Shemesh, Israel
Hereby certify that the attached document marked "A" is a correct copy of the original document which is drawn up in the Hebrew language and has been produced to me.

אני הח״מ יצחק וויינברג נוטריון בירושלים ברחוב נחל שורק 33 בית שמש

מאשר כי המסמך המצורף והמסומן באות ״א״ הינו העתק מדויק של המסמך המקורי שנערך בשפה העברית והוצג בפני.

In witness whereof I certify the correctness of the copy and I hereto set my signature and seal,

ולראיה הנני מאשר את דיוק ההעתק הנ״ל, בחתימת ידי ובחותמי,

This day December 28, 2013

היום 28 דצמבר 2013

Paid 101.00 shekels (including VAT)

שולם סך של 101.00 ש״ח (כולל מע״מ)

SIGNATURE _____   חתימה

NOTARY'S SEAL   חותם הנוטריון



# APOSTILLE

(Convention de la Haye du 5 Octobre 1961)

| | |
|---|---|
| 1. **STATE OF ISRAEL** | ‎1. מדינת ישראל |
| This public document | מסמך ציבורי זה |
| 2. Has been signed by Yitzhak Weinberg - Advocate<br>Advocate  33 Soreq Street, Israel<br>L.N.24260 | ‎2. נחתם ביד יצחק וויינברג עו"ד<br>עו"ד |
| 3. Acting in capacity of Notary | ‎3. המכהן בתור נוטריון. |
| 4. Bears the seal/stamp of<br>the above Notary | ‎4. נושא את החותם/החותמת<br>של הנוטריון הנ"ל |
| **Certified** | **אושר** |
| 5. At the Magistrates Court of Jerusalem | ‎5. בבית משפט השלום בירושלים |
| 6. Date   - 1 -01- 2014 | ‎6. ביום |
| 7. By an official appointed by   54/14<br>Minister of Justice under the<br>Notaries Law, 1976. | ‎7. על ידי מי שמונה בידי שר<br>המשפטים לפי חוק הנוטריונים,<br>התשל"ו - 1976 |
| 8. Serial number | ‎8. מס' סידורי |
| 9. Seal/Stamp | ‎9. החותם / החותמת |
| 10. Signature | ‎10. חתימה |

| צבא | | המשפט | הגנה | | לישראל |
|---|---|---|---|---|---|
| בבית | | הצבאי | תיק ביהמ"ש: | 3529 | |
| בבית | | אל | תיק תביעה: | 451/02 | |
| בפני | | הרכב | תיק פ.א.: | 1328/02, 1329/02, 2069/02 בנימין | |



**במשפט שבין התובע הצבאי – המאשים**

**-נגד-**

קאהירה סעיד עלי סעדי
ת.ז. 903946960, יליד 21/8/76, תושבת א-רם
עצורה מיום 8/5/02

**הנאשם**

15/7/04

**כתב-אישום** /אמ"ן/

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט ראשון:** /110/

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשי"ל – 1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך, גרמה בכוונה למותו של אחר, כדלקמן:

הנאשמת אשר התגוררה במחנה פליטים ג'נין, עברה לגור בתחילת שנת 2002 יחד עם משפחתה בא-רם. בהיותה ברמאללה, נפגשה הנאשמת ובעלה נאצר סעדי עם ע/כרים עוויס, קצין במשטרה הפלסטינית, האחראי לביצוע עשרות פיגועים, באיזור ובישראל ואשר העביר גם הוא את פעילותו ומגוריו מאיזור השומרון, לאיזור רמאללה. לאחר הפגישה התארחו הנאשמת ובעלה נאצר סעדי בביתו של ע/כרים עוויס מספר פעמים.

בהמשך הפגישות הציע ע/כרים עוויס לנאשמת להוביל מחבלים מתאבדים לירושלים למקום ביצוע הפיגועים ובכך לגרום למותם של אזרחים ישראלים רבים. הנאשמת הסכימה לסייע לע/כרים עוויס ככל שתתבקש.

בהמשך לאחר מותו של סאמר עוויס, אחיו של ע/כרים התקשר ע/כרים לנאשמת ושאל אותה האם שמעה על מותו. הנאשמת בכתה בטלפון והתנצלה כי אינה יכולה להגיע לרמאללה.

ע/כרים עוויס תכנן ביצוע פיגוע התאבדות באמצעות מחבל מתאבד, מחמד חשאיקה שמו אשר הולבש חגורת נפץ. לצורך הובלת המחבל המתאבד למקום ביצוע הפיגוע בירושלים, גייס הפעיל הצבאי, נאצר שוויש את סנאא שחדה. אולם הפעיל הצבאי ע/כרים עוויס חשש כי סנאא חוששת לבצע את הפיגוע, וכן היתה סנאא לבושה בלבוש ערבי מסורתי. לפיכך, התקשר ע/כרים עוויס לנאשמת וביקש שתגיע לרמאללה. השניים נפגשו ליד בית החולים אבו ראייה ברמאללה כאשר ע/כרים עוויס היה מלווה בפעיל צבאי נוסף, חאדר אמין דבאעיה. ליד השניים חנה רכב קטן בצבע כחול, בו ישבו המחבל המתאבד, מחמד חשאיקה כשהוא לבוש בחגורת הנפץ, נאצר שוויש נהג הרכב וסנאא שחאדה אשר גויסה על ידי לביצוע הפיגוע האמור. ע/כרים מסר לנאשמת כי בתוך הרכב ישנו מחבל בדרכו לבצע פיגוע התאבדות וכן אישה נוספת.

כתב אישום זה נתקבל
בתאריך 02/7/8
ונרשם ביומן בחיפ 1
ס' בידה"ש /6/

ע/כרים עוויס ביקש מהנאשמת לנסוע יחד עם המחבל המתאבד, הצעירה סנאא שחדה לביצוע הפיגוע מאחר שהנאשמת היתה לבושה במכנסיים וראשה גלוי ללא כיסוי. הנאשמת נכנסה לרכב והתיישבה בכיסא האחורי ליד המחבל המתאבד. סנאא שחדה ישבה מקדימה ליד נהג הרכב, טאזר שוויש.
סנאא שחדה נתנה למחבל המתאבד ספר קוראן. כמאתיים מטרים לפני מחסום קלנדיה עצר הנהג טאזר שווי את הרכב, ביקש נשיקה מהמחבל המתאבד והנאשמת יחד עם המחבל המתאבד וסנאא שחדה ירדו מהרכב. סנאא תפסה מונית וביקשה מהנהג שיסיע אותם תוך עקיפת מחסום א רם, ושילמה לנהג המונית 50 ₪ בתמורה. סנאא אף קנתה פרחים אותם היא נתנה למחבל המתאבד. את מחסום א-רם עברו הנאשמת, המחבל המתאבד וסנאא שחדה ברגל תוך כדי עקיפת בדיקת חיילי צה"ל. לאחר מכן עלו השלושה למונית נוספת וסנאא ביקשה מנהג המונית שיסיע אותם לרחוב יפו בירושלים כיוון שהם רוצים לחגוג את יום האם ואין להם תעודת זהות ישראלית, שיסיע אותם בדרכים בהם אין מחסומי צה"ל.
הנאשמת, סנאא והמחבל המתאבד הלכו לאורך רחוב יפו על מנת לאתר מקום הומה אדם בו יתפוצץ המחבל המתאבד ויגרום למותם של אזרחים רבים. במהלך הליכתם, הנאשמת הורתה לסנאא ללכת מאחוריהם ולא לידם כיוון שהיתה לבושה בלבוש ערבי מסורתי ועל מנת שלא להחשידם.

הנאשמת הבחינה כי ברחוב ישנם אנשים רבים והשיבה לסנאא שחדה כי זהו מקום טוב לבצע פיגוע התאבדות על מנת לגרום למותם של אזרחים רבים. סנאא שחדה הסכימה עם הנאשמת ושלחה את המחבל המתאבד לבצע את הפיגוע המתוכנן. המחבל המתאבד ביקש מהנאשמת ומסנאא לחזור אחורנית והלך לפוצץ את חגורת הנפץ שעל גופו על מנת לגרום למותם של אזרחים רבים. הנאשמת וסנאא הלכו מהמקום וכעבור מספר דקות בסמוך לשעה 16.20 פוצץ המחבל המתאבד את חגורת הנפץ שעל גופו ברחוב קינג ג'ורג' בירושלים.

כתוצאה מההתפוצצות נהרגו שלושה אזרחים ונפצעו 81 נוספים. כמו כן נגרם נזק רב לרכוש.

הנאשמת שמעה את קול הפיצוץ והבינה כי המחבל המתאבד מחמד חשאיקה פוצץ את עצמו.

הנאשמת נותרה במקומה בעת שהמחבל, מחמד חשאיקה פוצץ את עצמו וחלקי בשר של הנפגעים פגעו בה. מאחר שחשבו כי נפצעה, הכניסוה אזרחים לתוך חנות שהיתה במקום, שם שטפו פניה. בהמשך ביקשו כוחות מד"א לפנות את הנאשמת אולם היא סרבה ועזבה את המקום. לאחר שהסתובבה כשעתיים וחצי ברחובות העיר ירושלים, נסעה לביתה במונית שירות, לשם הגיעה בשעות הערב.
לפני שנכנסה לביתה, התקשרה הנאשמת לפעיל הצבאי ע/כרים עוויס ועדכנה אותו בדבר ביצוע הפיגוע. הנאשמת התעניינה בגורלה של סנאא שחדה אשר התנתקה ממנה וע/כרים הרגיעה והודיע לה כי סנאא הגיעה לרמאללה זמן רב לפני הנאשמת.

לאחר יומיים נסעה הנאשמת לביתו של ע/כרים עוויס ודווחה לו בקשר לביצוע הפיגוע. בפגישה זו נוכח גם חאדר דבאעיה. כן עדכן ע/כרים את הנאשמת כי הבחורה אשר היתה עימה, סנאא שחדה חזרה בשלום.

לאחר מספר ימים הזמין ע/כרים עוויס את הנאשמת, בעלה ואחיה לארוחה במסעדה ברמאללה. בפגישה זו מסר ע/כרים לאחי הנאשמת חמודה- מחמד קבלאווי אקדח, אותו הראה חמודה לנאשמת. האקדח נמסר לאחי הנאשמת לצורך ביצוע פיגועי ע/כרים גם הבטיח לנאשמת סיוע בשכר דירה.

הנאשמת במעשיה המתוארים לעיל גרמה בכוונה למותה של ציפורה שמש ז"ל אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'. ציפורה שמש ז"ל היתה בהריון במותה.

פרט שני:

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תש"ל – 1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך, גרמה בכוונה למותו של אחר, כדלקמן:
הנאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של רס"מ גדי שמש ז"ל אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'.

2

**פרט שלישי:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תש"ל – 1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומתוצה לו, ביום 21/3/02 או בסמוך לכך, גרמה בכוונה למותו של אחר, כדלקמן:
הנאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של יצחק כהן ז"ל אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'.

**פרט רביעי:**

**מהות העבירה:** נסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תש"ל – 1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח - 1968.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומתוצה לו, ביום 21/3/02 או בסמוך לכך, ניסתה לגרום בכוונה למותו של אחר, כדלקמן:
הנאשמת במעשיה המתוארים בפרט אישום ראשון, מסתה לגרום בכוונה למותם של האזרחים שהיו במקום התפוצצות המחבל המתאבד, מחמד חשאיקה, אותו הובילה למקום הפיגוע. כתוצאה מההתפוצצות נפצעו 81 אזרחים.

**פרט חמישי:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תש"ל – 1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור, במהלך חודשים מרץ ואפריל 2002 עזרה ונתנה מקלט לכל אדם שעבר עבירה על תחיקת הבטחון, או העוסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, כדלקמן:

ביום 30/3/02 נעצרו הפעילים הצבאיים, ע/כרים עוויס, חאדר אמין דבאעיה ואחי הנאשמת חמודה מחמד קבלאווי. בהיותו במתקן המעצר עופר, חאדר התחזה בשם אחר ושוחרר ממעצרו יחד עם אחי הנאשמת אשר אף הוא התחזה לאחר. הנאשמת הסתירה בביתה את אחיה ואת חאדר דבאעיה במשך כעשרים ושישה ימים. הנאשמת אף שילחה את בעלה לגינין על מנת שיקח משם תעודת לידה ע"ש מטרס איאד חוסאם, האיש שאליו התחזה חאדר וזאת על מנת לסייע לחאדר בהתחזותו. בעלה של הנאשמת נאצר סעדי נסע לגינין וקיבל את המסמך האמור.
לבסוף נעצר חאדר שוב ביום 3/5/02 ע"י כוחות צה"ל בביתה של הנאשמת.

**פרט שישי:**

**מהות העבירה:** אחזקת כלי יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תש"ל – 1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור, בחודש אפריל 2002 או בסמוך לכך, החזיקה כלי יריה ללא תעודת היתר שהוענקה ע"י מפקד צבאי או מטעמו, כדלקמן:
בעת שהסתתר בבית הנאשמת, הביא הפעיל הצבאי חאדר דבאעיה לביתה את האקדח שלו, אותו הסתיר קודם מעצרו הראשון.

3

פרט שביעי:

**מהות העבירה:** אחזקת פצצה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מסי 378) תשי״ל – 1970.

**פרטי העבירה:** הנאשמת הנ״ל, בהיותה באיזור, בחודש אפריל 2002 או בסמוך לכך, החזיקה כלי נפיץ או מבעיר ללא תעודת היתר שהוענקה ע״י מפקד צבאי או מטעמו, כדלקמן:

בהיותו מסתתר בבית הנאשמת, רכש חאדר דבאעיה הנ״ל פרס אחר רימון, ואם ערכה של מטה, מטהרת קבלאווי ושם בשקיות. חומר זה נועד עבור הכנת מטעני חבלה, אותם הביא חאדר יחד עם מטהרת ובהנחיית ע/כרים עוויס.

חאדר מסר לנאשמת כי הם מכינים חומר זה לצורך הכנת מטעני חבלה אותם יש מתכוונים להפעיל כנגד חיילים או טנק של צה״ל במ.פ. קלנדיה. השניים רכשו לצורך ביצוע הפיגוע מצלמת וידאו על מנת לצלם את הפיגוע. חמודה אף מסר לנאשמת כי המטען יופעל באמצעות פלאפון.

פרט שמיני:

**מהות העבירה:** אחזקת כלי יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מסי 378) תשי״ל – 1970.

**פרטי העבירה:** הנאשמת הנ״ל, בהיותה באיזור, בתחילת חודש מאי 2002 או בסמוך לכך, החזיקה כלי יריה ללא תעודת היתר שהוענקה ע״י מפקד צבאי או מטעמו, כדלקמן:

לאחר מעצרו של חדר דבאעיה, ביום 3/5/02 הנאשמת החזיקה באקדחו של חאדר ולאחר מכן הודיעה לאחיו של חאדר כי האקדח נמצא ברשותה. הנאשמת נסעה למא רם בנינין עם האקדח של חאדר על מנת להחזירו לאחיו. בנסיעה זו לקחה הנאשמת גם את מצלמת הוידאו של חאדר שבה אמור היה לצלם את הפיגוע המתוכנן וחפצים נוספים שלו. במהלך הנסיעה נעצרה המונית ע״י כוחות צה״ל אולם אלה לא גילו את האקדח שהיה מוסתר על גופה של הנאשמת.

פרט תשיעי:

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מסי 378) תשי״ל – 1970 וסעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ״ח – 1968.

**פרטי העבירה:** הנאשמת הנ״ל, בהיותה באיזור, בחודש מאי 2002 או בסמוך לכך, קשרה קשר עם אחר לגרום בכוונה למותו של אחר, כדלקמן:

חאדר דבאעיה וחברו מחמד עארדה, פעיל ג'יהאד אסלאמי צבאי החליטו לבצע פיגוע התאבדות, באמצעות מחבל אשר ילבש חגורת נפץ. מחמד עינאם שהביע את רצונו לבצע את הפיגוע אמור היה לבצעו. לצורך הוצאת הפיגוע לפועל החליט חאדר לפנות לנאשמת על מנת שתוביל את המחבל למקום הפיגוע. חאדר נסע לבית הנאשמת בא – רם ואמר לה כי ישנו מחבל המוכן לבצע פיגוע התאבדות בירושלים. הנאשמת הסכימה להוביל את המחבל למקום הפיגוע ובכך לגרום למותם של אזרחים רבים.

יום לאחר מעצרו של חאדר דבאעיה, ביום 4/5/02 התקשר אל הנאשמת אחיו של חאדר, וביקש את עזרתה בהעברת כלי נשק מרמאללה לגינין. ראאד ביקש מהנאשמת שלא תערב בכך את בעלה. הנאשמת הסכימה וראאד אמר כי ימסור את הפלאפון שלה למי שמחזיק בנשק. כעבור כשעתיים התקשר לנאשמת מחמד עארדה, ושאל אודות מעצרם של חדר ואחיה חמודה- מחמד קבלאווי. באותו מועד הנאשמת סרבה לנסוע לרמאללה להפגש עימו כיוון שבעלה היה בבית. בשיחה נוספת של מחמד עארדה לנאשמת, לקח בעלה את הפלאפון ולאחר מכן נסע בעצמו לרמאללה על מנת להפגש עם מחמד עארדה. הנאשמת דווחה לאחיו של חאדר, ראאד כי בעלה נסע מבקש שיעביר חגורת נפץ. הבעל נצר סעדי סרב וכעס עליה.

ביום 8/5/02, יום מעצרה, נסעה הנאשמת לכיכר מנרה ברמאללה ונפגשה עם מחמד עארדה. מחמד עארדה אמר לנאשמת כי הוא יודע שהיא הובילה מחבל מתאבד לביצוע פיגוע וביקש ממנה להוביל מחבל מתאבד נוסף לתוך ירושלים, לרחוב יפו או למקום הומה אדם אחר על מנת שהנאשמת תבצע שם פיגוע התאבדות. הנאשמת הסכימה להשתתף בביצוע פיגוע ההתאבדות ולהוביל את המחבל המתאבד למקום ביצוע הפיגוע בירושלים.

מחמד עארדה ביקש שלא תחזור לביתה בא רם על מנת שלא תיעצר והיא הבטיחה לנסוע לבית אימה בעזריה.

פיגוע ההתאבדות המתוכנן לא יצא לפועל עקב מעצרה של הנאשמת באותו יום.

4

**עדי התביעה:**

1. רס"ר דוד מזרחי, 94857, לח"י יהודה, גובה אמרת הנאשמת + זיהוי תמונה.
2. רס"מ יעקב ברזני, 99106, לח"י יהודה, גובה אמרת הנאשמת.
3. סנאא מחמד שחאדה, 081021198, עצורה בת.ת. 484/02. ש"כ ס
4. ע/כריס ראתב יונס עוויס, 980136675, עצור בת.ת. 422/02. ש"כ ס
5. מחמד קאסם אחמד עארדה, 911529345, עצור. ש"כ ס
6. מחמד סעיד עלי קבלאווי, 938032083, עצור. ש"כ ס
7. חאדר אמין מחמד דבאעיה, 940849243, עצור.
8. נאצר סעיד סלימאן סעדי, 964121651, עצור.
9. מסדר זיהוי תמונות – ע"י רס"ל אבי עקיבא, לח"י יהודה.

רשימת עדים מפורטת מתיק פ"א 02069/02 מיעוטים (תיק הפיגוע) תמסר במהלך המשפט.

סרן
צבאית

דליה קאופמן
תובעת

[חותמת נוטריון: יצחק ווינברג / YITZHAK WEINBERG / NOTARY]

תאריך: 7/7/02
סימוכין: 451/02

5

P 5: 146