מקור

**1**

בתי המשפט

בית משפט מחוזי תל אביב-יפו                          פח 001137/02

בפני:    כבוד השופטים:                          תאריך:  5.5.03
ש׳ טימן - אב״ד, נ׳ אחיטוב, ע׳ סלומון צרניאק

בעניין:    מדינת ישראל                          מאשימה
ע״י עו״ד דבורה חן ותמר אניס

נ ג ד

נאסר מחמוד אחמד עוויס                          נאשם
ע״י עו״ד בולוס

## <u>גזר דין</u>

1.    הנאשם שבפנינו, נאסר עוויס, יליד 1970 ממחנה בלאטה, שליד שכם, מילא – כך הוכח
ונקבע על ידנו – תפקיד בכיר, בשני ארגונים טרוריסטיים, כפי הגדרתם בפקודה למניעת
טרור משנת 1948. הוא היה המפקד של אזור שכם וצפון השומרון של הארגון הטרוריסטי
"תנזים" ושימש כמפקד ארגון "כתאב שוהדא אלאקצא" (גדודי חללי אלאקצה) באזור
זה. עוויס היה כפוף ישירות למרואן ברגותי, ראש ארגון "התנזים" באיזור יהודה
ושומרון, שהיה כפוף ליו״ר הרשות הפלסטינאית, יאסר ערפאת.

2.    מאז פרוץ האירועים האלימים בחודש ספטמבר 2000, המכונים "אינתיפאדת אל אקצא",
שכוונו כנגד חיילים ואזרחים ישראליים, יום הנאשם, תיכנן, ארגן, אישר, הפעיל ומימן
פיגועים, כנגד מטרות ישראליות, בתוך מדינת ישראל ובאיזור יהודה ושומרון. לצורך זה
רכש, השיג ודאג לייצור של אמצעי לחימה מסוגים שונים, לשימושם של מפגעים
מתאבדים או מפגעים אחרים. הוא ראיין מפגעים שהופנו אליו; הדריך אותם; ציד
אותם בכלי נשק ותחמושת ומטעני נפץ; הסדיר הובלתם למקומות הפיגוע; צילמם
במצלמות וידאו ובמצלמות רגילות, לפני צאתם של המפגעים למשימתם, כשהם קוראים
כרוז שחיבר בעצמו, ודאג להפיץ סרטים ותמונות אלה לאמצעי התקשורת, לאחר ביצועם
של פיגועים. כל אלה עשה בעצמו, ובעזרת הכפופים לו בארגונים הטרוריסטיים וחברים
אחרים בהם, שחלקם הופיעו בפנינו כעדים.

20    במקרים לא מעטים, נטל הנאשם עצמו חלק בירי אל עבר מטרות צבאיות באזור שכם.



P5: 281-288

2



בתי המשפט

בית משפט מחוזי תל אביב-יפו                          פח 001137/02

בפני:     כבוד השופטים:                          ותאריך:  5.5.03
ש' טימן - אב"ד, נ' אחיטוב, ע' סלומון צרניאק

3.  הנאשם הורשע בכל עובדות כתב האישום, המונה שמונה אישומים, שכל אחד מהם    1
מתאר אירוע או שורת אירועי טרור, שהנאשם היה מעורב בהם:                    2
3

הראשון – פיגוע שבוצע במסעדת "סי פוד מרקט" בתל-אביב, ע"י מחבל בשם איברהים    4
חסונה, שנשלח ע"י הנאשם, הוכן וצויד בנשק על ידו, והגיע למסעדה, בשעות הלילה,    5
כשהיא מלאה בסועדים ובמהלך מופע מוסיקלי, כשהוא חמוש ברובה מסוג M-16, רימוני    6
יד וסכין. המחבל החל לירות לכל עבר, הטיל את רימוני היד שלא התפוצצו, ודקר את כל    7
מי שנקרה בדרכו. עד שנורה המחבל למוות ע"י כוחות הביטחון, הספיק לדקור למוות שני    8
סועדים, ואת השוטר הראשון שהגיע למקום והסתער עליו, ופצע עשרות אנשים שלחלקם    9
נגרמו חבלות חמורות.                                                      10
11

השני – פיגוע שבוצע ע"י המחבל עבד אל סאלם חסונה, באולם האירועים "ארמון דוד"    12
בחדרה, בעת שהתקיימה שם מסיבת בת מצווה, מרובת משתתפים, של הנעורה נינה    13
קרדישוב.                                                                14
המחבל, שנשלח, תודרך וצויד בנשק ע"י הנאשם, הגיע לאולם כשהוא לבוש של השמחה,    15
כשברשותו רובה מסוג M-16, מחסניות ורימוני יד, התפרץ פנימה וירה לכל עבר מספר    16
צרורות, עד שכמה מבאי המסיבה, הסתערו עליו, כשאינם חמושים, תוך חירוף נפש;    17
השתלטו עליו, וגררו אותו אל מחוץ לאולם, שם נורה למוות בידי כוחות הביטחון שהגיעו    18
למקום. עד להשתלטות עליו, הצליח המחבל לרצוח ששה אנשים (בגילאים שבין 25 ועד    19
63) ולפצוע עשרות אחרים, כשלחלק מהם נגרמו חבלות חמורות.                    20
21

השלישי – פיגוע שבוצע בירושלים, ברח' יפו פינת לונץ, כשהמקום הומה אנשים.    22
המחבל, סעיד רמאדן, הגיע למקום, לאחר שרואיין, צולם, צויד ברובה מסוג M-16    23
ומחסניות, ע"י הנאשם, שגם תיאם הובלתו, התחיל לירות לכל עבר, במטרה לפגוע    24
במספר רב ככל הניתן של אנשים. כתוצאה מכך, נרצחו שתי נשים שעברו ברחוב, ונפצעו    25
עשרות, ובהם כאלה שנחבלו באופן חמור, עד ששוטרים שנזדמנו למקום ירו בו    26
למוות, לאחר מרדף קצר.                                                    27
28

3

בתי המשפט

בית משפט מחוזי תל אביב-יפו        פח 001137/02

בפני:    כבוד השופטים:        תאריך:  5.5.03

ש' טימן - אב"ד, נ' אחיטוב, ע"סלומון צרניאק

הרביעי – פיגוע שבוצע באיזור בתי המלון בנתניה, שני מחבלים: שהדי אל נג'מי וסעיד | 1
בטא, שנשלחו, צולמו, וצוידו ברובים מסוג M-16 וברימוני רסס, ע"י הנאשם שהורה גם | 2
על הסעתם למקום הפיגוע – הגיעו סמוך למלון "ג'רמי" בנתניה, ופתחו בירי בצרורות, | 3
והשלכת רימוני רסס, אל עבר אולם הכניסה, כשהם גורמים למותה של תינוקת בת שנה, | 4
ולפציעתם של עשרות אנשים, שלחלקם נגרמו חבלות חמורות. | 5
המחבלים נסוגו מהמקום עם הגיע כוחות הביטחון, ובתום מרדף הסתתרו בגומחה | 6
חשוכה, בבניין של מלון אחר, כשהם חוטפים בדרכם ומחזיקים עמם, כבן ערובה, עובר | 7
אורח יהודי, שנורה למוות במהלך ההשתלטות של כוחות הביטחון עליהם. גם שני | 8
המחבלים נורו למוות באותה גומחה. | 9

 | 10

החמישי – פיגוע המוני שנמנע, כששני מחבלים חמושים ברובי M-16 וברימוני יד, וכן | 11
בחומרי נפץ, עשו דרכם לישראל במכונית גנובה, ונתקלו, בסמוך לבאקה אל גרביה בכוח | 12
של שוטרי מג"ב. במהלך ההיתקלות ירו המחבלים לעבר השוטרים וזרקו רימון רסס | 13
שהיה ברשותם. אחד מהם פוצץ מטען נפץ שהיה במכונית (או שהמטען התפוצץ כתוצאה | 14
מירי השוטרים), ועד שנורו המחבלים למוות בידי כוח נוסף, הספיקו לגרום למותו של | 15
שוטר מג"ב ולגרום לחבלה חמורה לשוטר אחר. | 16
המחבלים יצאו לישראל באישורו של הנאשם, שדאג – באמצעות אנשיו – לציידם בחומר | 17
נפץ ובנשק, וגם העביר לאחד מפיקודיו כסף לרכישת המכונית הגנובה, שעמה הגיעו | 18
המחבלים, במטרה לבצע פיגוע ולגרום למותם של אנשים רבים. | 19

 | 20

השישי – מתאר פיגוע המוני שתוכנן להתבצע בירושלים, כששני מחבלים, נוצידים | 21
ברובי קלצ'ניקוב ורימוני יד, נעצרו במחסום של צה"ל, בדרכם לביצוע הפיגוע, שנמנע | 22
בדרך נס. המחבלים גויסו בידיעתו של הנאשם; תודרכו וצוידו בנשק ע"י אנשיו של | 23
הנאשם ועפ"י הוראותיו. | 24

 | 25

השביעי – עוסק גם הוא, בפיגוע המוני שתוכנן להתבצע בירושלים, ונמנע כשהמחבל | 26
החמוש נעצר ע"י שוטרים ליד בית חנינא, נורה ונהרג על ידם. | 27
גם המחבל הזה גויס, תודרך וצויד בנשק ע"י אנשיו של הנאשם, בידיעתו ובאישורו של | 28
הנאשם. | 29

4



בתי המשפט

בית נושפט מחוזי תל אביב-יפו      פח 001137/02

בפני :    כבוד השופטים:        תאריך : 5.5.03

ש' טימן - אב"ד, נ' אחיטוב, ע' סלומון צרניאק

1

2    <u>השמיני</u> – מתאר פיגועי ירי שביצע הנאשם עצמו (עם חבריו לקשר – להם סיפק כלי

3    נשק): כמה וכמה פיגועי ירי לעבר עמדת צה"ל, שמוקמה ליד קבר יוסף; כמה וכמה

4    פיגועי ירי לעבר עמדות של צה"ל בהר גריזים; לעבר מחנה עין-בית ולעבר סיורים של

5    צה"ל בסמוך למחנה בלתה ומטרות צבאיות באיזור חווארה.

6    כמו כן **סיפק נשק לפעילים אחרים בארגון הטרוריסטי**, לצורך פיגוע ירי על התנחלות

7    "חומש"; הנחת מטען חבלה בכביש עוקף זועתה-עצירה; פיגוע כנגד סיור צבאי בדיר

8    שאדם והנחת מטען.

9

10 4.   בשל פעילותו המתוארת לעיל, <u>הואשם והורשע על ידנו</u>, בעבירות הבאות:

11    - 14 עבירות של רצח בכוונה תחילה, לפי סעיף 300(א)(2) לחוק העונשין תשל"ז-

12      1977 (להלן : "החוק)", שהעונש עליה הוא מאסר עולם, חובה.

13    - 8 עבירות של ניסיון לרצח לפי סעיף 305(1) לחוק, שהעונש עליה הוא מאסר 20

14      שנה ;

15    - 5 עבירות של גרימת חבלה בכוונה מחמירה, לפי סעיף 329(1) לחוק, שהעונש

16      עליה הוא מאסר 20 שנה ;

17    - 2 עבירות של ניסיון לגרימת חבלה בכוונה מחמירה, לפי סעיף 329(1) ביחד עם

18      סעיף 25 לחוק, שהעונש עליה 20 שנות מאסר ;

19    - 8 עבירות של קשירת קשר לביצוע פשע, לפי סעיף 499 לחוק, שהעונש עליה הוא 7

20      שנות מאסר ;

21    - 3 עבירות של נשיאת נשק שלא כדין, לפי סעיף 144(ב) לחוק, שהעונש עליה 10

22      שנות מאסר ;

23    - 8 עבירות של פעילות (מילוי תפקיד, על פי ההגדרות) בארגון טרוריסטי, לפי סעי'

24      2 לפקודת מניעת טרור ; שהעונש עליה 20 שנות מאסר ;

25    - 8 עבירות של חברות בארגון טרוריסטי, לפי סעיף 3 לפקודת מניעת טרור,

26      שהעונש עליה 5 שנות מאסר.

27

28

5



בתי המשפט

בית נושפט מחוזי תל אביב-יפו

פח 001137/02

בפני:     כבוד השופטים:     תאריך :     5.5.03

ש' טימן - אב"ד, נ' אחיטוב, ע' סלומון צרניאק

5. ראוי להזכיר, כי אף שהנאשם לא נטל חלק במשפט, והורה לסניגורו להימנע מכל
התערבות במהלכו, הרי שהרשעתו מבוססת היטב על הודאותיו המפורטות במשטרה, כפי
שנכתבו בכתב-ידו, ועל הודאות פיקודיו ושותפיו לקשר ולארגון הטרוריסטי, ביחד עם
תיאורים של עדי ראיה ושוטרים, שיצרו מארג אחיד ומוצק של ראיות, המוכיחות אשמתו
של הנאשם, בכל העבירות שיוחסו לו, מעבר לכל ספק סביר.

6. בפתח טיעוניה לעונש, הציגה בפנינו **התובעת המלומדת** פלט הרשעות קודמות, הכולל
הרשעה אחת של בית הדין הצבאי בשכם, ממנה עולה כי כבר בשנת 1985 (עוד קודם
לאינתיפאדה הראשונה), היה הנאשם חבר בהתאגדות אסורה, עסק בייצור נשק
ותחמושת ובהתנהגות פרועה, וכי ריצה עונש מאסר של 4 שנים, בשל כך. דומה שהמאסר
המותנה שהוטל עליו שם, כבר איננו בר הפעלה, עד תחילת העבירות, בהן הורשע על ידנו.

בהמשך ביקשה התובעת להדגיש את מקומו המרכזי של הנאשם בהיררכית הארגונים
הטרוריסטיים, כשהוא מגייס, מרכז, מאשר, מממן, מספק כלי נשק ותחמושת, ממונה על
הקשר עם אמצעי התקשורת, במסתרה להאדיר ולפאר את מעשי הפיגוע, והורג ואת
מבצעיהם, ואפילו מבצע פיגועי ירי בעצמו.

הנאשם אחראי לרציחתם של 14 איש, ולפציעתם של עשרות אחרים – מוסיפה התובעת –
כשהוא מותיר אחריו משפחות שכולות, משפחות מטופלות באנשים שנחבלו וכל חייהם
נהרסו ונשתנו באחת ; הרס ופגיעה בהרגשת הביטחון של אזרחי הארץ הזאת.

מכיוון שכך מבקשת מאתנו התובעת להטיל על הנאשם את עונש החובה בגין כל אחד
ממעשי הרצח – במצטבר לעונשו החובה על מעשי הרצח האחרים ; כפי הראוי וכפי
שהורתה לנו הפסיקה של בית המשפט העליון (ע"פ 399/89 **בעניין זלום**, פ"ד מו (2) 259,
וע"פ 9742/91 **בעניין עמי פופר**, פ"ד נא(5)259, שהלך באותה דרך), וכפי שנוהגים גם בתי
המשפט המחוזיים, במקרים דומים.

בנוסף על כך, עותרת התובעת להטיל על הנאשם עונשים מצטברים על העבירות הנוספות.

6



בתי המשפט

בית משפט מחוזי תל אביב-יפו                                פח 001137/02

בפני:    כבוד השופטים:                                    תאריך: 5.5.03
ש' טימן - אב"ד, נ' אחיטוב, ע' סלומון צרניאק


7. עתירתה זו של התובעת, מעוררת שתי סוגיות: משפטית-פרוצדורלית, וערכית.

<u>נתייחס תחילה לשאלה המשפטית</u>. וגם זו – כך קובע כב' הנשיא שמגר <u>בעניין זלום הנ"ל</u> (פסקה 4, ע' 190) – מתחלקת לשתיים: "הראשונה עניינה הפרשנות המשפטית של הוראות חוק העונשין, הנוגעות לעניינו, והשנייה היא בתחום מדיניות העונשה".

אשר לשאלה הראשונה, אומר כב' הנשיא (בעמ' 190):

"מי שגורם במעשה אחד למספר מקרי מוות (למשל על ידי הנחת מטען נפץ או נהיגה רשלנית), יכול להאשם במספר עבירות של גרם מוות כמספר ההרוגים או בעבירה כוללת אחת החובקת את כל המעשה, הכל לפי שיקול דעת התביעה. בדרך כלל יוטל עונש אחד (סעיף 186 לחוק סדר הדין הפלילי (נוסח משולב), התשמ"ב-1982; ראה גם: נכס נ' היועץ המשפטי, פד"י י"א 1552). אולם בית המשפט רשאי להחליט לאור ממתחות המיוחדת של העבירות ונסיבותיהן המיוחדות כי יוטל עונשים נפרדים, ואם כן, אם אלו יהיו חופפים או מצטברים... שאם כי בדרך כלל יוטל עונש אחד בגין עבירות העולות מאותו אירוע, אין זה כלל אוניברסלי ויש והנסיבות דורשות הטלת עונשים מצטברים....

סעיף 45(א) לחוק הנ"ל קובע כי מי שנידון במשפט אחד לעונשים מאסר בשל עבירות שונות, ולא הורה בית המשפט שיישאם, כולם או מקצתם, בזה אחר זה, לא יישא אלא את עונש המאסר של התקופה הארוכה ביותר. מכל האמור לעיל נובעים שניים אלה:

(א) אם הנאשם מורשע לפי כתב אישום אחד במספר מעשי רצח, יש להטיל עונש נפרד עבור כל אחד ממעשי הרצח.
(ב) על פי האמור בסעיף 45(א) הנ"ל יהיו העונשים על מעשי הרצח חופפים, אלא אם בית המשפט יורה מפורשות אחרת.".

ובשאלת מדיניות הענישה הראויה, אומר – בין היתר – כב' הנשיא (בעמ' 192):

"ההחלטה בדבר חפיפה או הצטברות היא רלבנטית אף אם אין נפנים לשאלת הקצבה. כל הרשעה בעבירה נפרדת עומדת על רגליה היא, ומעבר לכך, קיפוח חייו של אדם מן הראוי והנכון שימצאו ביטוי מפורש, מזוהה ונפרד בצעדים העונשיים. גזירת עונשי מאסר חופפים על מספר מעשי רצח – אף אם מדובר בכאלה שבוצעו ברצף אחד – יש בה מכללא משום מיזעור של הזוועה שבגרם המוות הנדון והמכוון של שורה של אנשים. קיומו של נוהג הקצבה של עונש מאסר עולם חובה מחייב, כמובן, את תשומת אי ההתאמה שבין מספר רציחות לבין עונש חופף אחד.

7



בתי המשפט

בית משפט מחוזי תל אביב-יפו                         פ"ח 001137/02

בפני:    כבוד השופטים:                    תאריך:  5.5.03
ש' טימן - אב"ד, נ' אחיטוב, ע' סלומון צרניאק

1    מכל מקום, האמונה שלנו בקדושת חיי אדם חייבת למצוא ביטויה גם בענישה
2    של עבריין ובהדגשת משמעותו של כל קיפוח של חיי אדם בעינינו. מקובלת עלי,
3    על כן, ההשקפה כי לא רק שיש לגזור עונש נפרד על כל עבירה אלא כי מעשי
4    פגיעה נפרדים בחיי אדם צריכים גם למצוא ביטויים בעונשים המצטברים זה
5    לזה. "

6

7    8.   בעניינו של עמי פופר (ע"פ 1742/91 הנ"ל), קיבץ הנאשם פועלים ערבים, נטל מהם
8         תעודות הזהות, וירה לעברם אש אוטומטית, כשהוא מעביר נשקו מימין לשמאל חזרה.
9         רק לאחר שנהרגו שבעה פועלים ונפצעו עוד עשרה, חדל לירות, ונמלט במכוניתם של
10        שניים מהם.

11

12        בית המשפט המחוזי הרשיע אותו בשבעה מעשי רצח, ועשר עבירות של ניסיון לרצח,
13        כשהוא מטיל עליו 7 מאסרי עולם ועוד 20 שנות מאסר בגין הניסיון לרצח, וקבע שכל
14        העונשים ירוצו במצטבר.

15

16        ביהמ"ש העליון דחה את ערעורו, והלך בעקבות פסה"ד בעניין זלום, כשכב' השופטת
17        דורנר מוסיפה אמירות במישור הערכי; אך לעניננו חשובה התייחסותה גם לנפגעים
18        ממעשי אלימות, שנותרו בחיים (כפי המצב בעניין שלפנינו).

19

20        וכך היא אומרת – בין היתר (עמ' 303):

21
22        "זאת ועוד: כאשר מדובר במעשי אלימות קיים לכל אחד מן הנפגעים אינטרס
23        עצמאי לשלמות גופו. הפגיעה בשלמות גופו של אחד אינה מהווה פגיעה בשלמות
24        גופו של אחר. גם אם מבחינה "טכנית" מדובר ברצף אחד של מעשים שגרם
25        למספר קורבנות, יש להתייחס לכך כאל מעשי פגיעה נפרדים.

26

27        מסקנה זאת היא הכרחית גם מנקודת-מבט מוסרית. המכירה בקדושת חייו של
28        אדם כערך יסוד. ערך חיי האדם וסלידתנו העמוקה ממעשים הפוגעים בו
29        חייבים למצוא ביטוי מפורש ונפרד גם במסגרת גזירת העונש, הן לענין מספר
30        העונשים שיש לגזור על הנאשם והן לעניני הצטברותם. אף כי מעשה רצח של
31        אדם בודד הוא כשלעצמצו מעשה נפשע וחמור מאין כמותו, גזירה של אותו עונש
32        על מי שרצח אדם אחד ועל מי שרצח רבים עלולה להתפרש כהחלשה של
33        משמעות ערך חיי האדם, ואף עלולה לפגוע במידה ההרתעה. שכן, מה יעצור
34        רוצח מלהרבות את קורבנותיו אם בגין הקורבנות הנוספים הוא לא יהיה צפוי
35        לכל תוספת עונש?".



8



בתי המשפט

בית משפט מחוזי תל אביב-יפו                                     פח 001137/02

בפני:    כבוד השופטים:                                     תאריך: 5.5.03

ש׳ טימן - אב״ד, נ׳ אחיטוב, ע׳ סלומון צרניאק

1
2       ומוסיף כב׳ השופט חשין, בין היתר (בעמ׳ 307):

3       ״אדם – כל אדם – הוא עולם לעצמו. אדם – כל אדם – הוא אחד, יחיד ומיוחד.
4       ואין אדם כאדם. מי שהיה לא עוד יהיה ומי שהלך לא ישוב, וכבר לימדנו
5       הרמב״ם על ייחודו של האדם״ (ספר שופטים, הילכות סנהדרין, יב, ג):

6
7       ״נברא אדם יחידי בעולם, ללמד: שכל המאבד נפש אחת מן העולם –
8       מעלין עליו כאילו איבד עולם מלא, וכל המקיים נפש אחת בעולם –
9       מעלין עליו כאילו קיים עולם מלא. הרי כל באי עולם בצורת אדם
10      הראשון הם נבראים ואין פני כל אחד מהם דומין לפני חברו. לפיכך כל
11      אחד ואחד יכול לומר: בשבילי נברא העולם״.

12
13      כך הוא האדם, וזה ייחודו. מי זה ואיזה הוא שיאמר כך על ספר או על
14      כספת? אומרים לנו כי ייחודו של האדם בא לו משום שהאלוהים בראו בצלמו
15      כדמותו: ״בצלמו בצלם אלוהים ברא אותו...״ (בראשית א׳ כ״ז). כשאני לעצמי
16      אומר, כי ייחודו של האדם – כל אדם – בא לו משום שנברא בצלם האדם. זו
17      תחילתו של מיקרא. זה גם סופו.

18
19      כך הוא באשר לעבירת הרצח. כך הוא גם באשר לעונש שיוטל על מי שרצח.
20      אכן, מאסר עולם בעבירת רצח הוא מאסר עד צאת הנשמה. מבחינה מושגית –
21      וזה דרך הטבע – אין מאסרי עולם מצטברים. ואולם דומה כי לא נוכל לבטא את
22      עומק הזוועה שבמעשהו של מי שרצח את הרבים אלא אם כן נטיל עליו עונשים
23      מצטברים. ״שופך דם האדם באדם דמו יישפך״ (בראשית ט׳ ו׳).
24      בימגנו ובמקומנו אין עוד שופכים – כמעשה-ממלכה – את דם האדם. גם אין
25      ניתן להוציא להורג אותו אדם שתי פעמים. אך מאסרי עולם במצטבר ניתן
26      להטיל על מי שקיפח חיים בזדון. מאסר עולם תחת כל נפש ונשמה״.

27
28      וכב׳ הנשיא ברק מסכים לדברי חבריו.

29
30  9.  וכך, אכן, נוהגים בתי המשפט המחוזיים, במקרים דומים, עד שאיננו נדרשים לחריש
31      ראשון. כך נוהג במפגש בודד, ואין שום סיבה נראית לעין שלא לנהוג כך ברב-מרצחים
32      כמו הנאשם, שאת עונשו אנו גוזרים היום.

33
34      <u>ומכאן לשאלה הערכית:</u>

35      שמענו סיפוריהם המרגשים והכואבים, של נפגעים ועדי ראיה לפיגועים המיוחסים
36      לנאשם. שמענו אנשים שאיבדו יקיריהם; שחבריהם נרצחו לנגד עיניהם; שנותרו
37      נכים; שחייהם השתנו באחת.





9



בתי המשפט

בית משפט מחוזי תל אביב-יפו                              פח 001137/02

בפני :    כבוד השופטים:                              תאריך :    5.5.03
ש' טימן - אב"ד, נ' אחיטוב, ע' סלומון צרניאק

1    היו אלה תזכורות חיות ומוחשיות, למראות-הזוועה שאנו חוזים בהם כל העת ; אך
2    דומה שאף שריר לא זז בפניו של הנאשם, במהלך עדותם.
3
4    הנאשם הקדיש ימיו ולילותיו – בשמה של מלחמת שחרור פוליטית ואידיאולוגית,
5    לתכנון וארגון פעולות טרור רצחניות המיועדות לפגוע במספר גדול ככל האפשר של
6    אזרחים תמימים : אנשים נשים וטף, בכל מקום אפשרי– ללא אבחנה ; ללא נקיפות
7    מצפון, ללא הרהורי חרטה, ללא תועלת ובניגוד לכל כלל מוסרי ואנושי, שיש בו
8    כדי להצדיק במשהו את המטרה הנטענת. הנאשם שילח את המפגעים לדרכם כדי
9    לזרוע מוות, שכול, סבל, הרס ופחד, ולשבש את שגרת החיים של כולנו.
10
11    <u>על מעשיו אלה, שהוא גאה בהם, חייבת החברה לומר את דברה בעונשה מכבידה,</u>
12    <u>שתביע –ולו במקצת- את הערך שהיא מייחסת לשלומם וביטחונם של אזרחיה.</u>
13
14    **10.** על פי כל אלה, אנו גוזרים על הנאשם **עונש חובה של מאסר עולם בגין כל אחד מ-14**
15    **מעשי הרצח שהורשע בביצועם, כשעונשים אלה מצטברים זה לזה** (דהיינו – 14 מאסרי
16    עולם) ; ועל יתר העבירות בהן הורשע, אנו גוזרים עליו **עונש מאסר של 50 שנים,** אותו
17    ירצה במצטבר לעונשי מאסר העולם שהוטלו עליו כדלעיל.
18
19    תחילת ריצוי המאסר, ביום מעצרו (13.4.02).
20
21    זכות ערעור 45 ימים מהיום.
22
23    ניתן והודע בפומבי, בנוכחות התביעה, הנאשם וסניגורו, היום 5.5.03

----------                    -----------                    -----------
ע' סלומון צ'רמאק, שופטת        נ' אחיטוב, שופט-אב"ד        ש' טימן, שופט, אב"ד

I, Alon Gillon, Judge,
Deputy Director of Courts,
certify that the signature and seal
appearing on the document overleaf
are the signature and seal of

Mr. I. AKAFA

Date 16.6.2010

Deputy Director of Courts

אני אלון גילון, שופט, סגן מנהל בתי המשפט,
מאשר בזה, כי החתימה על המסמך מעבר
לדף היא חתימה של _____
נשיא/נשיאה תורף/רשם/שופט ראשי/שלום/

[Hebrew handwritten text]
וכי החותמת היא בחותמת של בית משפט
המחוזי/שלום _____

תאריך 16.6.2010

סגן מנהל בתי המשפט

אני ליאת בנמלך, רשם/ת בימ"ש העליון
מאשרת בזה, כי החתימה על מסמך מעבר
לדף היא חתימה של _____
נשיא/נשיאה תורף/רשם/שופט ראשי/שלום/
מזכיר ראשי של בימ"ש המחוזי/שלום
וכי החותמת היא החותמת של בית משפט
המחוזי/שלום _____

תאריך 27.2.14

[Round seal: STATE OF ISRAEL · DEPUTY DIRECTOR OF COURTS · 4]

[Stamp]
ליאת בנמלך
27-02-2014
רשמת בית המשפט העליון

I, Liat Benmelech
Registrar of the Supreme Court,
certify that the signature and seal
appearing on the document overleaf
are the signature and seal of

Zeharya A...

Date: 27.2

[Stamp]
ליאת בנמלך
27-02-2014
רשמת בית המשפט העליון

## APOSTILLE
### (Convention de La Haye du 5 octobre 1961)

| | | | | |
|---|---|---|---|---|
| 1. | STATE OF ISRAEL | | מדינת ישראל | .1 |
| 2. | THIS PUBLIC DOCUMENT HAS BEEN SIGNED BY MR./MS | בנמלך ליאת **benmelech liat** | מסמך ציבורי זה נחתם בידי מר/גב' | .2 |
| 3. | ACTING IN THE CAPACITY OF | | המכהן בתור רשמית | .3 |
| 4. | BEARS THE SEAL/STAMP OF THE MINISTRY OF | בית משפט עליון **JUSTICE** | נושא את החותם/חותמת של משרד | .4 |
| 5. | CERTIFIED AT THE MINISTRY OF FOREIGN AFFAIRS | | אושר במשרד החוץ | .5 |
| 6. | THE | 27/2/2014 | ביום | .6 |
| 7. | BY | HILA OHANA חילה אוחנה CONSULAR AFFAIRS DIVISION האגף לעניינים קונסולריים | על-ידי | .7 |
| 8. | NO 740459. | | מס' 740459 | .8 |
| 9. | SEAL/STAMP | [Round seal: MINISTRY OF FOREIGN AFFAIRS] | חותם/חותמת | .9 |
| 10. | SIGNATURE, JERUSALEM | | חתימה, ירושלים | .10 |