מס. No. 1067/13

## CERTIFICATION OF COPY

**אישור העתק**

I the undersigned Yitzhak Weinberg, a Notary in 33 Soreq Street, Beit Shemesh,Israel
Hereby certify that the attached document marked **"A"** is a correct copy of the original document which is drawn up in the Hebrew language and has been produced to me.

אני החי"מ יצחק וויינברג נוטריון בירושלים ברחוב נחל שורק 33 בית שמש

מאשר כי המסמך המצורף והמסומן באות ״א״ הינו העתק מדויק של המסמך המקורי שנערך בשפה העברית ושהוצג בפני.

In witness whereof I certify the correctness of the copy and I hereto set my signature and seal,

ולראיה הנני מאשר את דיוק ההעתק הנ"ל, בחתימת ידי ובחותמי,

This day December 28, 2013

היום 28 דצמבר 2013

Paid 311.00 shekels (including VAT)

שולם סך של 311.00 ש"ח (כולל מע"מ)

SIGNATURE _____    חתימה

NOTARY'S SEAL    חותם הנוטריון



# APOSTILLE

### (Convention de la Haye du 5 Octobre 1961)

| | |
|---|---|
| **1. STATE OF ISRAEL** | ‏1. מדינת ישראל‏ |
| This public document | ‏מסמך ציבורי זה‏ |
| 2. Has been signed by | ‏2. נחתם בידי‏ |
| Advocate ___ **Yitzhak Weinberg - Advoc** ___ 33 Soreq Street, Israel | ‏עו"ד ___ יצחק ויינברג עו"ד‏ |
| 3. Acting in capacity of Notary  L.N.24260 | ‏3. המכהן בתור נוטריון.‏ |
| 4. Bears the seal/stamp of | ‏4. נושא את החותם/החותמת‏ |
| the above Notary | ‏של הנוטריון הנ"ל‏ |
| **Certified** | **אושר** |
| 5. At the Magistrates Court of Jerusalem | ‏5. בבית משפט השלום בירושלים‏ |
| 6. Date _____  ~ 1 -01- 2014 | ‏6. ביום _____‏ |
| 7. By an official appointed by | ‏7. על ידי מי שמונה בידי שר‏ |
| Minister of Justice under the | ‏המשפטים לפי חוק הנוטריונים,‏ |
| Notaries Law, 1976. | ‏התשל"ו - 1976‏ |
| 8. Serial number _____ | ‏8. מס' סידורי _____‏ |
| 9. Seal/Stamp _____ | ‏9. החותם / החותמת _____‏ |
| 10. Signature _____ | ‏10. חתימה _____‏ |

103/14

קא״ש/236ב

| אבא | המשפט | הצבאי | הנה | לישראל |
|---|---|---|---|---|

בית בית בפני
המשפט הצבאי
אל
הרכב

תיק ביוח״מ : 3380/03
תיק תביעה : 380/03
תיק פ.א. : 6891/01 מותי״מ י-ם
6554/01 ציון
10283/01 ציון
1512/02 מוריה
9638/02 ראשל״יצ
5601/02 ראשל״יצ
2881/02 גלילות
3975/02 לוד
9913/02 רחובות
1197/02 שלם
19284/02 ירקון
21011/02 ירקון
1425/03 בנימין

## במשפט שבין התובע הצבאי - המאשים

## - נ ג ד -

עבדאללה עיאלב עבדאללה ברגותי (ג׳מל) (המכונה "כאמלי", "המהנדס")
ת.ז. (פיקטיבי) 030300028 (דרכון ירדני E-891198), יליד 15.10.72, תושב בית-רימא
עצור מיום 05.03.03

## - הנאשם -

## כ ת ב - א י ש ו ם

הנאשם הנ״ל מואשם בזאת בביצוע העבירות הבאות:

### פרט ראשון:

**מהות העבירה:** ניסיון לייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון
(יהודה והשומרון) (מס׳ 378), תש״י-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בחודש מאי 2001 או בסמוך לכך, יצר כלי יריה, תחמושת
פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או
מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בית רימא או בסמוך לכך, נפגש עם אכרם צאלח אכרם אחסין
(ברנות) וביקש מהאחרון כי יכיר לו פעילים צבאיים. אכרם אחסין ביקש כי הנאשם יגיע אליו
לביתו. לאחר שהנאשם הגיע לביתו של אכרם אחסין, האחרון מסר לידי הנאשם מטען חבלה.
הנאשם לקח את המטען עמו ובסופרמרקט של הנאשם בבית רימא פירק את מטען החבלה.
הנאשם ניסה להצית את חוטי המטען תנפץ שהוצא ממטען החבלה וכנה לדעת כי מדובר בחומר נפץ
טוב. הנאשם ייצר מנגנון הפעלה למטען חבלה הנ״ל משעון מעורר, אך לא הצליח להפעיל את
המטען הנ״ל באמצעות מנגנון ההפעלה הנ״ל.

1

**פרט שני:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מחודש מאי 2001 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמור, היה חבר בי"גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, שהוא התאחדות בלתי מותרת.

הנאשם, במסגרת פעילותו בזרוע הצבאית של ארגון החמאס, היה אחראי על ייצור מטעני החבלה ואימון אנשים אחרים בייצור מטעני חבלה. לאור "הצלחתו" בתפקיד האמור הנאשם "זכה" לכינוי "המהנדס".

בחודש מאי 2001, בבית רימא או בסמוך לכך, הנאשם פנה אל בלאל יעקוב אחמד ברגותי (עותמאן), פעיל צבאי בארגון החמאס, וביקש כי האחרון יצרף את הנאשם לשורות הזרוע הצבאית של הארגון. הנאשם מסר לבלאל ברגותי כי יכול לייצר מטעני חבלה עבור ארגון החמאס. בלאל ברגותי הפגיש את הנאשם בשכם עם איימן חלאוה, פעיל צבאי בכיר בארגון החמאס, אשר גייס את הנאשם לי"גדודי עז א-דין אל קסאם".

בסוף שנת 2001, ברמאללה או בסמוך לכך, הנאשם נפגש עם אברהים ג'מיל ע/ע/אבאר אחמד, המכונה "צלאח 1" או "חשיח", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה. הנאשם הסכים להצעתו של אברהים אחמד לפעול תחת פיקודו של האחרון ולייצר מטעני חבלה לצורך ביצוע פיגועים נגד המטרות הישראליות. אברהים אחמד העניק לנאשם כינוי פח"עי "כאמלי". בהמשך, הנאשם פעל כפי שסוכם בינו לבין אברהים אחמד.

במהלך פעילותו של הנאשם תחת פיקודו של אברהים אחמד, הנאשם עמד בקשר עם הנ"ל באמצעות האשגרים, אשר הועברו על-ידי סיד ע/ברהים מדר שיך-קאסם, המכונה "צלאח 2". בתמורה לפעילותו בארגון החמאס, הנאשם קיבל סיוע כספי מאברהים אחמד, אשר הועבר לנאשם על-ידי "צלאח 2". סך הכל, הנאשם קיבל מאברהים אחמד כספים בסכום של 117,000 דולר ארה"ב.

כמו כן, הנאשם קיבל סיוע כספי בסך 500 דולר ארה"ב מידי מרואן ברגותי, ראש "חתנוזים" של הפתחי"ח.

**פרט שלישי:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך החודשים מאי - יוני 2001 או בסמוך לכך, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, בשכם או בסמוך לכך, נפגש עם איימן חלאוה, פעיל צבאי בכיר בארגון החמאס.

במהלך המפגשים הנ"ל, איימן חלאוה לימד את הנאשם לייצר חומר נפץ "אום אלפצד" (TATP), מטעני חבלה, מנגנוני הפעלה למטעני חבלה (כולל מנגנונים אלחוטיים), רימוני-יד ורגוזות נפץ. איימן חלאוה לימד את הנאשם לחסות את מטעני חבלה לאבן ולפחית שתייה. איימן חלאוה לימד את הנאשם לייצר רעל מתפוחי אדמה, אשר אותו מכניסים אל מטעני החבלה על מנת להכפיס למטעני חבלה כימיים.

בסוף כל אחד מהאימונים הנ"ל, הנאשם קיבל מאיין חלאווה דף, עליו היו רשומים הוראות לייצור מטעני החבלה, אותם למד הנאשם לייצר.

<u>פרט רביעי:</u>

<u>מהות העבירה:</u> קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 67א(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש דצמבר 2000 או בסמוך לכך, קשר עם אדם אחר לכפות אדם בכוח או באיומים או לפתותו באמצעות תרמית ללכת מן המקום שהוא נמצא בו, וזאת כדי לסחוט או לאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, קשר עם אריימן חלמות, מפקדו של הנאשם בארגון החמאס, להשתתף בחטיפת חייל צה"ל. על הנאשם הוטל להכין דירה, אשר בה יוחזקו חייל צה"ל לאחר יחטטנו על-ידי פעילי ארגון החמאס.
במסגרת ההכנות לקראת החטיפה, הנאשם הכין חדר בביתו בבית-רימא לצורך החזקתם של חיילי צה"ל החטופים.

<u>פרט חמישי:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, קיבל מידי איינן חלמות, פעיל צבאי בכיר בארגון החמאס, 15 ק"ג של חומר נפץ מסוג "אום אלעבד" (TATP) ואקדח 9 מ"מ עם מחסנית 14-ו כדורים. הנאשם העביר את חומר הנפץ ואת האקדח לבית רימא והסתירם שם.
לאחר כשבוע, איימן חלמות העביר אל הנאשם 20 ליטר של מי חמצן, אשר משמשים לייצור חומר הנפץ מסוג "אום אלעבד" (TATP). גם את מי החמצן הנ"ל, הנאשם הסתיר בבית רימא.

<u>פרט שישי:</u>

<u>מהות העבירה:</u> יצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, יוצר כלי יריה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בבית רימא בסמוך לכך, במחסן אשר אותו הוא שכר, הקים מעבדה לייצור חומרי נפץ ומטעני חבלה.
הנאשם העביר למעבדה 15 ק"ג של חומר נפץ מסוג "אום אלעבד" (TATP), 20 ליטר של מי חמצן וכן מספר מנגנונים אלחוטיים להפעלת מטעני החבלה.
במעבדה החבלה הנ"ל הנאשם ייצר שני מטעני חבלה המסווים לאבנים.
את מטען החבלה הראשון הנאשם העביר לידי איימן חלמות, פעיל צבאי בכיר בארגון החמאס, דרך נקודת משלוח בסלפית. ביחד עם מטען חבלה הנ"ל, הנאשם העביר דף עם ההנחיות להפעלת מטען חבלה הנ"ל.
את מטען חבלה השני הנאשם העביר באופן אישי לבלאל יעקוב ברנותי, פעיל צבאי בכיר בארגון החמאס.

3

<u>פרט שביעי:</u>

<u>מהות העבירה:</u> מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעבר עבירה על תחיקת הביטחון או עסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום חסדר הביטחוני או שיש יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו : הנאשם הנ"ל, במועד האמור, בבותו בבית רימא או בסמוך לכך, במשך לילה אחד, הסתיר את ראמי סלימאן, אשר היה מבוקש לכוחות הביטחון הישראליים. הנאשם שוחח עם ראמי סלימאן וסיפר כי האחרון היה זה, אשר קיבל את מטען החבלה המוסווה לאבן, המתואר בפרט האישום השישי.

בבוקר, הנאשם הסיע את המבוקש הנ"ל לסלפית.

<u>פרט שמיני:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במועד האמור בפרט האישום הקודם או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו : הנאשם הנ"ל, במועד האמור, בבית רימא או בסמוך לכך, מסר לראמי סלימאן, האמור בפרט האישום הקודם, את אקדח 14 יחד עם 150 כדורים. בתמורה, הנאשם קיבל מהאדם הנ"ל אקדח 7.

<u>פרט תשיעי:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות בשביל התאחדות בלתי מותרת, דהיינו : הנאשם הנ"ל, במועד האמור, בשם או בסמוך לכך, נפגש עם אימן חלאווה, פעיל צבאי בכיר בארגון החמאס, שהוא התאחדות בלתי מותרת. איימן חלאווה מסר לנאשם סכום של 100 דולר ארה"ב. על-פי בקשתו של איימן חלאווה, הנאשם העביר את הכסף הנ"ל לידי המבוקש המתואר בפרט האישום השביעי.

<u>פרט עשירי:</u> (פ.א. 6554/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרומת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.07.01 או במועד הסמוך לכך, ניסה בכוונה לגרום למותו של אחר, דהיינו :

1. בתחילת חודש יולי 2001, באיזור או בסמוך לכך, הנאשם נפגש עם איימן חלאווה, פעיל צבאי בכיר בארגון החמאס. איימן חלאווה מסר לנאשם כי יש לו אדם המוכן לבצע פיגוע התאבדות בתוך ישראל.

2. על-פי בקשתו של איימן חלאווה, הנאשם פנה אל בלאל יעקוב ברגותי (עותמאן), פעיל צבאי בכיר בארגון החמאס, וביקש מהאחרון למצוא אדם אשר יוכל להכניס מחבל מתאבד אל תוך

4

מדינת ישראל על מנת שהאחרון יבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים
רבים ככל האפשר.

3. בלאל ברנוותי גייס למטרה האמורה את מחמד ואל מחמד דגלס. מחמד דגלס גייס למטרה
האמורה את אחלאם ערף אחמד תמימי, סטודנטית באוניברסיטת ביר זית, פעילה ב"גדוד
עז א-דין אל קסאם", חורגו חצבאית של ארגון חמאס.

4. לאחר שהנאשם דיווח לאיימן חלמווה על גיוס האנשים הנ"ל, איימן חלמווה ביקש כי קודם
יוסדר הנאשם לידי האנשים הנ"ל מטען חבלה קטן, וזאת על שינסו תחילה לבצע פיגוע
בישראל באמצעות מטען חבלה קטן, לפני שיינתן ויהיה לסמור עליהם ולמסור להם את המחבל
המתאבד.

5. יום למחרת, ברמאללה או בסמוך לכך, הנאשם קיבל מטען חבלה קטן, אשר נשלח אליו
על-ידי איימן חלמווה משכם באמצעות שליח.

6. ביום 27.07.01, אחלאם תמימי ערכה סיור ירושלים, אשר אותה הכירה היטב, ביחד עם
אחיינה, פרג' מוניר מחמוד תמימי, על מנת לאתר מקום שבו יונח מטען חבלה. במהלך
הסיור ביקרה אחלאם תמימי בחנות הסופרמרקט "קו אופי" הנמצא בבניין "המשביר לצרכן"
ברחוב קינג ג'ורג'. למחרת היום, מחמד דגלס נפגש באוניברסיטת ביר זית עם אחלאם תמימי
והאחרונה הודיעה לו כי איתרה מקום ירושלים לביצוע פיגוע התופף באמצעות מטען חבלה.

7. הדיווח הנ"ל הועבר באמצעות בלאל ברנוותי אל הנאשם. כמו כן, בלאל ברנוותי המליץ לנאשם
כי מטען החבלה יוסתר בתוך פחית מיץ.

8. בעקבות האמור, הנאשם הכניס את מטען החבלה הנ"ל אל תוך פחית בירה והרכיב מנגנון
הפעלה. הנאשם מסר את מטען החבלה הנ"ל לידי בלאל ברנוותי על מנת שהאחרון ימסור
אותו לידי האנשים אותם גייס, וזאת על מנת שיבצעו באמצעותו פיגוע בכוונה לגרום למותם
של אנשים רבים ככל הניתן.

9. בלאל ברנוותי מסר את מטען החבלה הנ"ל למחמד דגלס והאחרון, ביום 30.07.01, מסר אותו
לידי אחלאם תמימי.

10. באותו היום, בסביבות השעה 11:45, אחלאם תמימי הגיעה לחנות הסופרמרקט "קו אופי"
בירושלים, המתוארת לעיל, כשבתיקה נמצא מטען החבלה אותו קיבלה מן הנאשם.

11. אחלאם תמימי הניחה את פחית הבירה שבתוכה הוסתר מטען החבלה הנ"ל במדף של פחיות,
בקדמת המדף בחנות הסופרמרקט הנ"ל, וזאת על מנת שכשמטען החבלה יתפוצץ הוא יגרום
למותם של האנשים שיהיו בקרבת המקום. אחלאם תמימי מפעילה את מטען החבלה האמור
ועזבה את החנות הנ"ל.

12. בסביבות השעה 13:10, באותו היום, מטען החבלה המתואר לעיל התפוצץ בחנות
הסופרמרקט האמורה. כתוצאה מפיצוץ מטען החבלה נגרם רב לרכוש בחנות הנ"ל, ורק בנס
איש לא נפגע.

### פרט אחד-עשר: (פ.א. 6554/01 ציון)

**מהות העבירה:** חיזק בדזון לרכוש, עבירה לפי סעיף 353 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר ככלי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזזור והן מחוצה לו, ביום 30.07.01 או בסמוך לכך, הרס רכוש
או פגע בו כמזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט
האישום הקודם, גרם נזק כבד לחנות הסופרמרקט "קו אופי" הנמצא בבניין "המשביר לצרכן"
ברחוב קינג ג'ורג', אשר בו הופעל מטען חבלה, כפי שתוארה בפרט האישום הקודם.

5

ת.ה. 380/03

<u>פרט שנים-עשר:</u> (ת.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

1. לאחר ביצוע הפיגוע בסופרמרקט בירושלים, המתואר בפרט האישום העשירי, תנאשם יצר קשר עם איימן חלאווה, פעיל צבאי בכיר בארגון חמאמס, ובהתאם לתכנון האמור בפרט האישום העשירי, ביקש כי איימן חלאווה יעביר לנאשם מטען חבלה גדול ואת המחבל המתאבד לצורך החוצאה לפועל של פיגוע התאבדות המתוכנן.

2. בתחילת חודש אוגוסט 2001, ברמאללה או בסמוך לכך, הנאשם קיבל מאיימן חלאווה, באמצעות שליח, מטען חבלה גדול, אשר היה היה מורכב משני בקבוקי שמפו מלאים בחומר נפץ.

3. על-פי בקשתו של בלאל יעקוב ברגותי, הנאשם הכניס את מטען החבלה הנ"ל אל תוך גיטרה, אותה הביא בלאל ברגותי. בנוסף למטען החבלה הנ"ל, הנאשם הכניס אל תוך הגיטרה הנ"ל שתי שקיות מלאים בחומר נפץ. כמו כן, הנאשם הדביק בתוך הגיטרה ברגים באמצעות דבק. את הפתח של הגיטרה הנאשם סגר באמצעות זכוכית כך שלא ניתן יהיה לראות מה יש בתוכה. אל מטען החבלה הנ"ל, הנאשם חיבר מנגנון הפעלה.

4. הנאשם הכניס את הגיטרה הנ"ל אל תוך נרתיק גיטרה שחור. הנאשם הוצא חוט עם כפתור ההפעלה של מטען החבלה אל מחוץ לנרתיק, כך שניתן יהיה להפעיל את מטען החבלה בלי לפתוח את הנרתיק של הגיטרה.

5. הנאשם דיווח אודות הכנת מטען החבלה אל איימן חלאווה וביקש מהאחרון כי ישלח אליו את המחבל המתאבד.

6. לאחר מספר ימים המחבל המתאבד עז א-דין שהיל אחמד מצרי (להלן : המחבל המתאבד), אשר שלח על-ידי איימן חלאווה, הגיע לרמאללה. בלאל ברגותי פגש את המחבל המתאבד ובניחד עם מחמד ואל מחמד דגלס הלין אותו ברמאללה.

7. הנאשם העביר את הגיטרה הממולכדת הנ"ל לידי בלאל ברגותי על מנת שהאחרון ימסור אותה לידי המחבל המתאבד וזאת על מנת שהאחרון יבצע באמצעותה פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל חוינן.

8. ביום 08.08.2001, על-פי הוראותו של מחמד ואל מחמד דגלס (האמור בפרט האישום העשירי), האמורה בפרט האישום העשירי) לירושלים על מנת לאתר מקום שבו יבוצע פיגוע התופת, אשר אותו תכנן הנאשם ביחד עם חבריו הנ"ל אשר לצורך הוצאתו לפועל גיסו מחמד דגלס ואחלאם תמימי הנ"ל. אחלאם תמימי אותה כי אמנם ישנה נוכחות גדולה של כוחות הביטחון בירושלים, אך אין אחד לא בדק למסקנה כי היא לבשה גופיה קצרה מתוך ניסיון להיראות כיהודייה. אחלאם תמימי הגיעה ניתן לצאת לצאת מרמאללה ולבצע פיגוע במרכז ירוש לים.

9. באותו היום, בלאל ברגותי הדריך את המחבל המתאבד איך מפעילים את מטען החבלה הנ"ל, אשר יוזר על-יד י הנאשם.

10. ביום 09.08.2001, מחמד דגלס הפגיש את אחלאם תמימי עם המחבל המתאבד, אשר נסע את הגיטרה הממולכדת. המחבל המתאבד התנדב לקראת ביצוע הפיגוע המתוכנן ולבש בגדים, אשר היו אמורים לגרום לו להיראות כיהודי. לאחר מכן, אחלאם תמימי והמחבל המתאבד יצאו לביצוע הפיגוע המתוכנן.

11. לאחר שאחלאם תמימי והמחבל המתאבד נכנסו לירושלים, אחלאם תמימי הורתה למחבל המתאבד לשאת את הגיטרה שהיתה בתוך נרתיק שחור, המתואר לעיל, על הגב על מנת לא

6

לעורר את חשדם של כוחות הביטחון הישראליים. אחלאם תמימי אף הורידה את חגיקט
שלבשה וזהרה בו פיה קצרה.

.12 אחלאם תמימי הובילה את המחבל המתאבד לצומת הרחובות יפו וקינג ג'ורג' בירושלים,
שהוא צומת מרכזי והומה אדם. אחלאם תמימי תדרכה את המחבל המתאבד להפעיל את
מטען חבלה במרכז הצומת האמורה כשאנשים רבים חוצים אותו וכך לפגוע בכמות גדולה
ככל הניתן של האזרחים נוסעי המכוניות העומדות ברמזור ולגרום למותם. אחלאם תמימי
ציינה בפני המחבל המתאבד כי הינו ראשי לבחור גם במקום אחר לביצוע הפיגוע המתוכנן,
אולם זה צריך להיות ברחוב קינג ג'ורג' שהוא מלא אנשים.

.13 אחלאם תמימי השאירה את המחבל המתאבד במקום האמור ופנתה לכיוון שער שכם של
העיר העתיקה על מנת לחזור לרמא' ללה.

.14 בסמוך לשעה 13:55, המחבל המתאבד, עז א-דין שהיל אחמד מצרי, נכנס למסעדה
"סבארו" הנמצאת בפנת הרחובות יפו וקינג ג'ורג', אשר היתה הומת אדם בשעה זו. שם
המחבל המתאבד הפעיל את מטען החבלה, אותו הכין הנאשם כפי שתואר לעיל, וזאת
בכוונה לגרום למותם של אנשים רבים ככל ה אפשר.

.15 כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה האמור, נהרגו חמישה-עשר בני
אדם, כפי שיתואר בפרטי האישום הבאים.

.16 כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה האמור נגרמו חבלות ופציעות
לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

.17 כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה האמור נגרם נזק רב לרכוש, הן
למסעדה "סבארו", הן למכוניות ומבנים שהיו בסמוך.

.18 במעשיו, המתוארים לעיל, גרם הנאשם בכוונה למותה של **פרידה מנדלסון ז"ל**, בת 62
במותה, אשר נהרגה כתוצאה מהתפוצצות מטען חבלה כאמור לעיל.

**פרט שלושה-עשר:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של המחבל **לאלי
שימשיאסוולי-מסנגיסר** ז"ל, בת 33 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד
עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט
האישום השנים-עשר.

7

<u>פרט ארבעה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>תמר שימשיאשוילי-מסגניטר</b> ז"ל, בת 8 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט חמישה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>תהילה מעוז</b> ז"ל, בת 20 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט שישה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>מיכל ריאל</b> ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט שבעה-עשר:</u>  (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של <b>מלכה רוט</b> ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

יצחק ווינברג
YITZHAK WEINBERG
NOTAIRE

8

**פרט שמונה-עשר:** (פ.א. 01/6891 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **יוכבד ששון** ז"ל, בת 10 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט תשעה-עשר:** (פ.א. 01/6891 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **מרדכי רפאל סחיוסחוודדר** ז"ל, בן 44 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים:** (פ.א. 01/6891 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **צירה סחיוסחוודדר** ז"ל, בת 41 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים ואחד:** (פ.א. 01/6891 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **רעיה סחיוסחוודדר** ז"ל, בת 14 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.



9

פרט עשרים ושניים:  (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס׳ 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **אברהם
יצחק סחיינוסחורדר ז"ל**, בן 4 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען
חתבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג׳ורג׳ בירושלים, כפי שתואר בפרט האישום
השנים-עשר.

פרט עשרים ושלושה:  (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס׳ 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **חמדה
סחיינוסחורדר ז"ל**, בת שנתיים במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם
מטען חתבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג׳ורג׳ בירושלים, כפי שתואר בפרט
האישום השנים-עשר.

פרט עשרים וארבעה:  (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס׳ 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **ג׳ודית
ליליאן גרינבוים ז"ל**, בת 31 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם
מטען חתבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג׳ורג׳ בירושלים, כפי שתואר בפרט
האישום השנים-עשר.

פרט עשרים וחמישה:  (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס׳ 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **גיורא
בלאש ז"ל**, בן 69 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען חתבלה
במסעדת "סבארו" בפינת הרחובות יפו וקינג ג׳ורג׳ בירושלים, כפי שתואר בפרט האישום
השנים-עשר.

<u>פרט עשרים ושישה:</u> (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם
בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותם של <u>צבי</u>
<u>גולומבק</u> ז"ל, בן 26 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה
במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתוואר בפרט האישום
השנים-עשר.

<u>פרט עשרים ושבעה:</u> (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, ניסה לגרום בכוונה למותם של כל
האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען החבלה במסעדה
"סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתוואר בפרט האישום השנים-עשר.
כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה נפצעו יותר מ-127 בני אדם שהיו באיזור
מקום ההתפוצצות.

<u>פרט עשרים ושמונה:</u> (פ.א. 6891/01 מת"מ י-ם)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כן באיזור הן מחוצה לו, ביום 09.08.01 או בסמוך לכך, הרס רכוש
או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנ"ל, במעשיו האמור, במקום האמור בפרט האישום השנים-עשר, במעשיו המתוארים
בפרט האישום השנים-עשר, גרם נזק כבד למסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג'
בירושלים, אשר בו הופעל מטען החבלה, כפי שתוואר בפרט האישום השנים-עשר, וכן לבניינים
הסמוכים ולכלי הרכב שעברו במקום בזמן הפיצוץ.

<u>פרט עשרים ותשעה:</u>

<u>מהות העבירה:</u> עבירות ברשיונות ומסמכים שהוצאו על-פי תחיקת הביטחון, עבירה לפי סעיף
60(1)-(ז) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מהמחצית השניה של שנת 2001 ועד ליום מעצרו או
בסמוך לכך, שינה או הגיה לאחר לשנות או מסמך שהוצא על פי תחיקת הביטחון וחתימתו ברשותו
מסמך שהוצא על פי תחיקת הביטחון שאינו ערוך על ידו, מתוך כוונה להטעות, דהיינו :
הנאשם הנ"ל, במחצית השניה של שנת 2001, ברמאללה או בסמוך לכך, קיבל מידי סיד עיכרים
חדר שייך-כאסם, המכונה "צלאח ב'", שתי תעודת זהות - האחת על שמו של ערפאת טאאר
ברגותי, והשניה על שמו של אשרף אלאחמד. בשתי תעודות הזהות הנ"ל הוכנסו תמונותיו של
הנאשם.
במהלך התקופה האמורה לעיל, הנאשם עשה שימוש בתעודת הזהות המזויפת על שמו של ערפאת
טאאר ברגותי בעת שעבר בדיקות על-ידי חיילי צה"ל ברמאללה ובסמוך אליה, וזאת מתוך כוונה
להטעות את חיילי צה"ל.

11

**פרט שלושים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השנייה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, שוחח עם אברהים גמיל ע/ע/אשני תאמד, המכונה "צלאח 1" או "יחיאוויד", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה. אברהים תאמד ביקש כי הנאשם ירכוש עבורו תמ"ק עוזי. הנאשם פנה אל תאמד טאלב מוצטפא ברגותי (המכונה "אל פראנסיי"), אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש לרכוש ממנו תמ"ק עוזי. תאמד ברגותי הפנה את הנאשם עם מהנד אבו חלאווה, פעיל צבאי בכיר ב"גדודי חללי אלאקצא", והנאשם רכש מידי האחרון תמ"ק עוזי.
לאחר כשבועיים, הנאשם העביר את תמ"ק עוזי הנ"ל לידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", אשר העבירו לידי אברהים תאמד.

**פרט שלושים ואחד:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השנייה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה אל תאמד טאלב מוצטפא ברגותי (המכונה "אל פראנסיי"), אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש לרכוש ממנו תמ"ק MP-5. תאמד ברגותי הפנה את הנאשם עם מהנד אבו חלאווה, פעיל צבאי בכיר ב"גדודי חללי אלאקצא", והנאשם רכש מידי האחרון תמ"ק MP-5.

**פרט שלושים ושניים:**

**מהות העבירה:** החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל ממועד האמור בפרט האישום הקודם ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון יד או חפץ נפיץ או כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק בתמ"ק MP-5, המתוארת בפרט האישום הקודם, וכן אקדח.
הנאשם החזיק בכלי הנשק הנ"ל ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.

**פרט שלושים ושלושה:**

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מהמחצית השנייה של שנת 2001 ועד ליום מעצרו, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה ובסמוך אליה, הקים מספר מעבדות לייצור חומרי נפץ ומטעני חבלה. הנאשם נהג לחחליף את המעבדה הנ"ל כל כמה חודשים וזאת על מנת שלא תיתפשף על-ידי כוחות הבטחון הישראליים.
אל המעבדות הנ"ל, הנאשם וחבריו נהגו להעביר חומרים כימיים שונים חמשמשים לייצור חומרי נפץ. חומרי הנפץ הנ"ל נרכשו הן על-ידי הנאשם עצמו, הן על-ידי חבריו לארגון החמאס. חומרי הנפץ הנ"ל נרכשו בכספים של ארגון החמאס.

12

הנאשם ייצר מהחומרים הכימיים הנ"ל עשרות קילוגרמים של חומר נפץ, בעיקר מהסוג "אום אלפבד" (TATP). מחומרי הנפץ, אותם ייצר, הנאשם הכין מספר רב של מטעני חבלה מסוגים שונים, וזאת בנוסף למטעני חבלה אותם כפי שתוארו בפרטי האישום הקודמים וכפי שיתואר בפרטי האישום הבאים.

הנאשם ייצר את מטעני חבלה הנ"ל במטרה שמפעילי ארגון החמאס יבצעו באמצעותם פיגועים נגד מטרות ישראליות. הנאשם תדרך את פעילי ארגון החמאס איך להפעיל את מטעני החבלה הנ"ל.

בנוסף לאמור לעיל, הנאשם ניסה לייצר רימוני-יד ומטען וכן תכנן להרכיב מטען חבלה על רכב בצעצוע המופעל באמצעות שלט רחוק.

במהלך התקופה האמורה, הנאשם אף קיבל הוראות לייצור טילי "קסאם", אך החליט כי אין ביכולתו לייצר את הטילים.

### פרט שלושים וארבעה:

__מהות העבירה:__ אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

__פרטי העבירה:__ הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולות צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, לימד את סיד א/ברים חדר שייך-קאסם, המכונה "צלאח 2", פעיל בארגון החמאס, אשר שימש כאיש קשר בין הנאשם לבין מפקדיו בארגון החמאס, לייצר חומרי נפץ ומטעני חבלה.

### פרט שלושים וחמישה:

__מהות העבירה:__ אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

__פרטי העבירה:__ הנאשם הנ"ל, באיזור, בחודש נובמבר 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולות צבאיים, דהיינו: הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדה לחומרי נפץ, העביר אימון צבאי למחמד חסן אחמד ערמאן (מכונה "אבו מואחזי"), פעיל צבאי בארגון החמאס. במהלך האימון האמור הנאשם לימד את מחמד ערמאן לייצר חומר נפץ הנקרא "אום אלפבד" (TATP), מעלעים חימלליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.

בסוף האימון הנאשם העביר למחמד ערמאן תיק עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני חבלה וכן דף עם הוראות ליצורים.

החומרים לצורך האימון הצבאי הנ"ל נרכשו על-ידי אברהים ג'מיל ע/ע/אני אחמד, ראש "נדודי עז א-דין אל קסאם" באיזור רמאללה.

הנאשם הציג את עצמו בפני מחמד ערמאן בכינוי "המהנדס". במהלך האימון הצבאי הנ"ל, הנאשם ומחמד ערמאן היו רעולי פנים.

### פרט שלושים ושישה:

__מהות העבירה:__ אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

__פרטי העבירה:__ הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, כיומיים לאחר המועד האמור בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולות צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי לשני אנשים, אשר הובאו לדירה על-ידי סיד א/ברים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

13

ת.ת. 03/362

במהלך האימון האמור הנאשם לימד את שני האנשים הנ"יל לייצר חומר נפץ הנקרא "אום
אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה
המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.

בסוף האימון הנאשם העביר לשני האנשים הנ"יל שני תיקים עם חומרים שונים המשמשים לייצור
חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.

### פרט שלושים ושבעה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"יל, באיזור, בחודש נובמבר 2001, בסמוך לאחר שביצע את המיוחס לו
בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אימן אימון צבאי בנשק או במלאכת
תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
אימון הנאשם הנ"יל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון
צבאי למוראד חליל עיתאמן עמירה, אשר הובא לדירה על-ידי סיד עכרים חדר שייד-קאסם,
המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

במהלך האימון האמור הנאשם לימד את מוראד עמירה לייצר חומר נפץ הנקרא "אום אלעבד"
(TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני עמירה
המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי. כמו כן, הנאשם העביר למוראד עמירה
אימון תיאוריי ומעשי בפירוק והרכבה של תמי'ין עוזי ואקדח 14.

בסוף האימון הנאשם העביר למוראד עמירה תיק עם חומרים שונים המשמשים לייצור חומרי
הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.

בסוף האימון האמור, הנאשם העניק למוראד עמירה כינוי "עבדאללה 5", וזאת מכיוון שזה היה
האדם החמישי, אותו לימד לייצר את חומרי הנפץ ומטעני החבלה.

### פרט שלושים ושמונה: (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"יל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1.   הנאשם הנ"יל, במהלך חודש נובמבר 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, ייצר
     חומר נפץ מסוג "אום אלעבד" (TATP).

2.   מחומר הנפץ הנ"יל, הנאשם ייצר שלושה מטעני חבלה. את מטען החבלה הראשון הנאשם
     הכניס אל תוך מארז מחשב. את מטען החבלה השני הנאשם הכניס אל תוך תיק בד שחור.
     הכניס אל תוך מארז מחשב. את מטען החבלה הכין בצורה של תמרת נפץ. בנוסף לחומר הנפץ הנאשם
     את מטען החבלה השלישי הנאשם הכין בצורה של תמרת נפץ. בשלושת מטעני החבלה הנ"יל
     הכניס למטעני החבלה רסס, המורכב ממסמרים ואומים. כאשר מטעני החבלה שחוברכמו בתוכרו
     הנאשם הרכיב את מנגנוני ההפעלה. אויל מטען החבלה שהוסתר בתוך תיק
     מחשב הופעל על-ידי לחיצה על מסכן ההפעלה. את מטען החבלה הנ"יל הנאשם הוסיף אמצעי
     בד שחור הופעל באמצעות שעון עצר. בשלושת מטעני החבלה הנ"יל הנאשם הכניס
     ומסמרים על מנת להגביר את עוצמת חבניים על מטעני החבלה. כמו כן, הנאשם הכניס
     לשלושת מטעני החבלה חומר רעיל, גם זאת על מנת להפוך את הטמעונים לקטלניים יותר.

3.   הנאשם ייצר את מטעני החבלה הנ"יל לבקשתו של סיד עכרים חדר שייד-קאסם, המכונה
     "צלאח 2", פעיל צבאי בארגון החמאס. מטען החבלה הנ"יל הנאשם על-פי בקשתו של
     אברהים ג'מיל עיאשאני אחמד, המכונה "צלאח 1" או "שיחי"', מפקד הזרוע הצבאית של
     ארגון החמאס באיזור רמאללה.

14

4. הנאשם מסר את שלושת מטעני החבלה הנ"יל ליצלאח ב'י על מנת שהאחרון ידאג
להעברים לפעילי ארגון חמאס, אשר יבצעו באמצעות מטעני החבלה הללו פיגועי הוצת
בכוונה לגרום למוהת של אנשים רבים ככל הניהן.

5. יצלאח ב'י ואברהים חמזה, בעצמם או באמצעות אנשים אחרים, העבירו את מטעני
החבלה הנ"יל לידי אוסאמה מחמד בחר ונביל מחמוד חלביה וכן הטמינו את מטען החבלה,
אשר הוסתר בתיק בד שחור, בתוך רכב מסוג אופל קדט, מ.ר. 4774987.

6. ביום 01.12.01, בסמוך לשעה 23:36, בכניסה מכיכר ציון לרחוב בן יהודה בירושלים או
בסמוך לכך, מחבל מתאבד אוסאמה מחמד בחר הפעיל את מטען החבלה, אשר יוצר
על-ידי הנאשם והוסתר בתוך מארו מחשב כאמור לעיל, וזאת בכוונה לגרום למוהת של
אנשים רבים ככל האפשר. מטען חבלה הנ"יל התפוצץ.

7. באותה היום, בסמוך לשעה הנ"יל, בצומת הרחובות בן-יהודה - לונץ בירושלים או בסמוך
לכך (מרחק של מטרים ספורים ממקום פיצוץ המטען הראשון), מחבל מתאבד נביל
מחמוד חלביה הפעיל את מטען החבלה, אשר יוצר על-ידי הנאשם בצורה של חגורת נפץ
כאמור לעיל, וזאת בכוונה לגרום למוהת של אנשים רבים ככל האפשר. מטען החבלה
הנ"יל התפוצץ.

8. באותו היום, מספר דקות לאחר ששני המחבלים המתאבדים הנ"יל הפעילו את מטעני
החבלה הנ"יל, הופעל מטען חבלה הנ"יל שיוצר על-ידי הנאשם והוסתר בתוך תיק בד שחור
כאמור לעיל. מטען החבלה השלישי הופעל ברכב מסוג אופל קדט, מ.ר. 4774987, אשר
חנה ברחוב הרב קוק בסמוך לפינת רחוב יפו בירושלים (מרחק של כמה עשרות מטרים
ממקום פיצוצם של שני מטעני החבלה הנ"יל). מטען חבלה הנ"יל הופעל בכוונה לגרום
למוהת של אנשים רבים ככל האפשר.

9. כתוצאה מפיצוץ שלושת מטעני החבלה הנ"יל, אשר פוצצו על-ידי כפי שתואר לעיל, נהרגו
עשרה ונפצעו כ-191 בני אדם, כפי שיפורט בפרטי האישום הבאים.

10. במעשיו המתוארים לעיל, הנאשם הנ"יל גרם בכוונה למוהת של יוסף עזרה ז"יל, בן 18
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה במרכז ירושלים כפי שתואר לעיל.

**פרט שלושים ותשעה: (פ.א. 10283/01 ציון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"יל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"יח-1968.

**פרטי העבירה:** הנאשם הנ"יל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למוהת של אחר, דהיינו:

הנאשם הנ"יל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למוהת של אסף אביטן ז"יל, בן 15
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים
ושמונה.

15

<u>פרט ארבעים:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>גיא וקנין</b> ז״ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ואחד:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>יוני קורגנוב</b> ז״ל, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושניים:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>יעקב ישראל דנינו</b> ז״ל, בן 17 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושלושה:</u> (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, גרם בכוונה למותו של <b>מיכאל דהאן</b> ז״ל, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

16

ת.ה 380/03

## פרט ארבעים וארבעה: (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **גולן תורג'מן** ז"ל, בן 15 המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **גולן תורג'מן** ז"ל, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

## פרט ארבעים וחמישה: (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **אדם וינשטיין** ז"ל, בן 14 שנה במותו, אשר נהרג כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

## פרט ארבעים ושישה: (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **משה ידיד-לוי** ז"ל, בן 19 *במותו, אשר נהרג* כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

## פרט ארבעים ושבעה: (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **ניר חפצדי** ז"ל, בן 19 במותו, המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **ניר חפצדי** ז"ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושמונה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם לגרום למותם של אזרחים רבים ככל האפשר,
כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום השלושים ושמונה, נפצעו 191
בני אדם.

<u>פרט ארבעים ותשעה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור וחן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם נזק כבד לבתים ולבתי העסק הנמצאים באיזור
הרחובות בן-יהודה, לונץ, יפו, הרב קוק ולכל אשר היו במקום, אשר בו הופעלו שלושה
מטעני חבלה, כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט חמישים:</u>

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת,
פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של מרואני ברגותי, ראש
"התנזים" של הפתי"ח, ייצר שני מטעני חבלה. מרואני ברגותי ביקש מהנאשם לייצר עבורו שני
מטעני חבלה על מנת לעשות בהם שימוש אם כוחות צה"ל ייכנסו לרמאללה.

<u>פרט חמישים ואחד:</u>

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת,
פצצה, חפץ נפיץ או מבעיר, ברמאללה או בסמוך לכך, ייצר שלושה מטעני חבלה, אשר היו
מוסוויים בקרטונים של מיץ, וכן ארבעה מטעני חבלה, אשר היו מוסווים לאבנים.
מטעני חבלה הנ"ל הועברו על-ידי סיד ערברים חדר שייך-קאסם, המכונה "צלאח 1" לידי
אברהם ג'מיל ע/אעאני אחמד, המכונה "צלאח 1", שהוא ראש הזרוע הצבאית של ארגון החמאס
באיזור רמאללה.

18

ת.ה. 360/03

**פרט חמישים ושניים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו ובדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס' 243), תשכ"ח–1968.

**פרטי העבירה:** הנאשם חנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה
אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם חנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי אחמד טאלב מוצטפא ברמוני
(המכונה "אל פראמסי"), אחד מראשיי הארגון "גדודי חללי אלאקצא", רוסי"ר קלצ'ניקוב עם שתי
מחסניות מלאות בכדורים וכן אקדח 14 עם מחסנית מלאה בכדורים.
הנאשם ביצע את האמור לעיל על-פי בקשתו של מחמד טאהר מחמוד ברגותי, פעיל צבאי בארגון
החמאס.
לאחר רכישת כלי הנשק חנ"ל, הנאשם מסרם לידי מחמד טאהר ברגותי חנ"ל.

**פרט חמישים ושלושה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות
ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם חנ"ל, באיזור, בחודש פברואר 2001 או בסמוך לכך, עשה עבודה כל שהיא
או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם חנ"ל, במועד האמור, נפגש ברמאללה עם אדם פלוני. הנאשם נפגש עם האדם חנ"ל על-פי
בקשתו של אברהים ג'מיל ע'עיאני אחמד, המכונה "צלאח 1" או "חשיחי", ראש "גדודי עז א-דין
אל קסאם", חורוע הצבאית של ארגון החמאס, באיזור רמאללה. אברהים האמור מסר לנאשם כי
האדם חנ"ל צריך לצאת לביצוע פיגוע התאבדות וביקש כי הנאשם יבדוק אם האדם חנ"ל איתן
בדעתו לבצע פיגוע התאבדות.
הנאשם הסכים ושוחח עם האדם חנ"ל. הנאשם חתרשם כי האדם חנ"ל איתן בדעתו וזאת לאור
העובדה כי האדם חנ"ל מבקש, באמצעות ביצוע פיגוע התאבדות, לטהר את שם אביו, שנחשד
בשירותו הפעולה עם כוחות הביטחון הישראליים.
הנאשם מסר את מסקנותיו חנ"ל לאברהים חנ"ל, אשר השיב כי לא יוציא את האדם חנ"ל
לביצוע פיגוע התאבדות, שכן אינו מוכן שאדם יבצע פיגוע התאבדות רק על מנת לטהר את שמו.

**פרט חמישים וארבעה:** (פ.א. 1512/02 מורי"ה)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו ובדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל–1970 וסעיף 14(א) לצו ובדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח–1968.

**פרטי העבירה:** הנאשם חנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1.  בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם האחראי עליו
    בארגון החמאס, אברהים ג'מיל ע'עיאני אחמד, המכונה "צלאח 1" או "חשיחי". אברהים
    אחמד ביקש כי הנאשם יצר חגורת נפץ עבור מחבל מתאבד, על מנת שהאחרון יבצע פיגוע
    התאבדות בכוונה לגרום למותם של אנשים רבים בכל הניתן.

2.  הנאשם הסכים לבקשתו של אברהים אחמד. הנאשם יצר, ברמאללה או בסמוך לכך,
    חגורת נפץ. חגורת הנפץ חנ"ל הורכבה מתוגרת מבד דמוי עור, עלי הודבקו ברגים ובקבוקי
    שמפו מלאים בחומר נפץ. הנאשם הרכיב בם מנגנון הפעלה לחגורת הנפץ חנ"ל.

3.  לאחר שהנאשם סיים להכין את חגורת הנפץ חנ"ל, הנאשם העביר את באמצעות סיד ע/ברים
    חדר שייך-קאסם, המכונה "צלאח 2", אל אברהים אחמד, וזאת לצורך הוצאה לפעל של
    פיגוע התאבדות המתוכנן.

---

19

4. אברהים תאמד פנה גם אל מחמד חסן אחמד ערמאן (מכונה "אבו מוטאז") וביקש כי
האחרון יפנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", ויבקש ממנו לאתר
מקום מתאים לביצוע פיגוע ההתאבדות.

5. מחמד ערמאן נפגש עם "אבו סעדי" וביקש לאתר מקום בישראל המתאים לביצוע פיגוע
ההתאבדות. לאחר מספר ימים "אבו סעדי" מסר כי מחמד ערמאן ומסר כי איתר מקום
המתאים לביצוע פיגוע ההתאבדות המתוכנן והוא - בית-קפה "מומנטו", הנמצא ברחוב
עזה בירושלים. "אבו סעדי", ביחד עם וסאם סעיד מוטא עבאסי ומחמד אסחאק עודה,
ביצעו סיורים באיזור בית-קפה "מומנטו" לצורך תכנון פיגוע ההתאבדות. הנאשם דיווח
לישיייחיי אודות המקום שאותר על-ידי "אבו סעדי" וחבריו.

6. ביום שבת, 09.03.02, בסביבות השעה 20:00, ברמאללה או בסמוך לכך, מחמד ערמאן
נפגש עם פואד אלחוראני ועם אברהים תאמד. אברהים תאמד ופואד אלחוראני עזבו את
מקום המפגש למשך כחצי שעה על מנת שפואד אלחוראני ילבש חגורת נפץ. אברהים
תאמד הלביש על פואד אלחוראני את חגורת הנפץ, אשר הוכנה על-ידי הנאשם, כאמור לעיל,
לצורך ביצוע פיגוע ההתאבדות.

7. לאחר מכן, מחמד ערמאן, ביחד עם וליד אנגיאס, ליוו את פואד אלחוראני, אשר נשא על
גופו את חגורת הנפץ הניייל, לתחנת מוניות "סקלנדיה" ברמאללה והעלו את האחרון לרכב
הסעתו שנסע לבית חנינא. מחמד ערמאן, וליד אנגיאס ופואד אלחוראני נסעו ביחד לבית
חנינא ברכב הסעתה. מחמד ערמאן ווליד אנגיאס הובילו את פואד אלחוראני למקום
המפגש, אשר אותו קבע הנאשם עם "אבו סעדי".

8. "אבו סעדי" נפגש עם המחבל המתאבד, פואד אלחוראני, במקום האמור, ולאחר מכן, ביחד
עם וסאם עבאסי, הסיע את המחבל המתאבד לירושלים. "אבו סעדי" ווסאם עבאסי
הובילו את פואד אלחוראני לבית-קפה "מומנטו" הנמצא ברחוב עזה בירושלים.

9. בסמוך לשעה 22:30, ביום 09.03.02 או במועד הסמוך לכך, פואד אלחוראני אשר נשא על
גופו את חגורת הנפץ, אותה ייצר למטרה זו הנאשם, נכנס אל תוך בית-קפה "מומנטו",
אשר היה באותה שעה חומה אדם, והפעיל את חגורת הנפץ הניייל בכוונה לגרום למותם של
אנשים רבים ככל האפשר.

10. במעשיו המתוארים לעיל, הנאשם הניייל גרם בכוונה למותו של **אברהם רחמים זיייל**, אשר
נהרג כתוצאה מפיצוץ חגורת הנפץ בבית-קפה "מומנטו" כפי שתואר לעיל.

## פרט חמישים וחמישה: (פ.א. 1512/02 מוריה)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הניייל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הניייל, במועד האמור, במקום האמור בפרט האישום חמישים וארבעה, במעשיו
המתוארים בפרט האישום חמישים וארבעה, גרם בכוונה למותו של **ניר בורוכב זיייל**, אשר נהרג
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום חמישים וארבעה.

20

ת.ג. 180/03

P 7: 47

<u>פרט חמישים ושישה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של <b>לימור בן שוהם ז"ל</b>, אשר נהרגה כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושבעה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של <b>דן אימוני ז"ל</b>, אשר נהרג כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושמונה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, גרם בכוונה למותה של <b>דנית דגן ז"ל</b>, אשר נהרגה כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ותשעה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של <b>אורי פליקס ז"ל</b>, אשר נהרג כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

ח.ת. 380-03

<u>פרט שישים:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **ברוך לרנר ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

### פרט שישים ואחד: (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **טלי אליהו ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

### פרט שישים ושניים: (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **לבנת דדש ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

### פרט שישים ושלושה: (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **אוריה אחרוב ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

22

ת.פ. 380/03.

<u>פרט שישים וארבעה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של <b>נתנאל כוכבי ז"ל</b>, אשר נהרג כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים וחמישה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, ניסה לגרום למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר.
כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה, נפצעו 65 בני אדם.

<u>פרט שישים ושישה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם נזק כבד לבית-קפה "מומנטו" הנמצא ברחוב עזה בירושלים, אשר בו הופעל מטען חבלה, כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ושבעה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בסוף חודש מרץ - חודש אפריל 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/בכרים חדר שייך-קאסם, המכונה "צלאח 2", מפעיל צבאי בארגון חמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ג'אני חאמד, המכונה 1" או "שיח'", מפקד הזרוע הצבאית של ארגון חמאס באיזור רמאללה, מבקש מהנאשם לייצר חגורת נפץ ותיק נפץ לצורך ביצוע פיגוע התאבדות. הנאשם הסכים לייצר את שני מטעני חבלה

23

380/03 .ת.ה

P 7: 50



וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מחגורה מבד דמוי עור, עלי הודבקו ברגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל. חגורת הנפץ הנ"ל היתה דומה לזו שהנאשם ייצר עבור הפיגוע בבית-קפה "מומנט" בירושלים, המתואר בפרט האישום החמישים וארבעה.

4. כמו כן, הנאשם ייצר, ברמאללה או בסמוך לכך, מטען נפץ, אשר הורכב מבקבוקי שמפו מלאים בחומר נפץ, אשר הוכנסו אל תוך תיק בצבע שחור. הנאשם הכניס אל תוך תותי הנ"ל ברגים לצורך הגברת עוצמת הפגיעה של מטען החבלה. הנאשם הרכיב בתיק האמור מנגנון הפעלה למטען החבלה, המורכב משעון עצר.

5. הנאשם מסר את חגורת הנפץ הנ"ל ביחד עם תיק הנפץ הנ"ל לידי "צלאח 2", על מנת שהאחרון יעבירם לידי אברהים חמד וזה יעבירם לידי המחבל המתאבד.

6. בחודש אפריל 2002 אברהים חמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מואנג'י") ומסר לאחרון כי יש צורך לבצע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. אברהים חמד מסר למחמד ערמאן כי יש לו אדם שמוכן לבצע את פיגוע ההתאבדות.

7. לאחר מספר ימים, ברמאללה או בסמוך לכך, אברהים חמד הכיר למחמד ערמאן את מחמד ג'מיל אחמד מועמר (להלן: המחבל המתאבד), אשר היה אמור לבצע את פיגוע ההתאבדות המתוכנן. במהלך הפגישה סוכם כי לאחר מספר ימים אברהים חמד יביא את המחבל המתאבד לפגישה עם מחמד ערמאן ברמאללה והאחרון ייקח את המחבל המתאבד לביצוע פיגוע ההתאבדות המתוכנן.



8. ביום 07.05.02, מחמד ערמאן נפגש עם המחבל המתאבד ברמאללה לפי הסיכום הנ"ל על-פי בקשתו של מחמד ערמאן, וליד ע'עווי ע'ואדי אנג'אס ליווה את המחבל המתאבד מרמאללה לצפת. בצפא השניים הנ"ל נפגשו עם מחמד ערמאן ונסע ביחד לבית עגאן. שם מחמד ערמאן מסר לידי המחבל המתאבד את חגורת הנפץ, אשר אותה ייצר הנאשם כאמור לעיל ואשר הועברה לידי מחמד ערמאן על-ידי אברהים חמד. מחמד ערמאן הלביש את חגורת הנפץ הנ"ל על גופו של המחבל המתאבד וכן נתן לאחרון תיק עם מטען חבלה נוסף, אשר גם אותו ייצר הנאשם כאמור לעיל ואשר הועבר לידי מחמד ערמאן על-ידי אברהים חמד.

9. מחמד ערמאן הסיע ברכבו את המחבל המתאבד עם מטען החבלה הנ"ל עם חגורת הנפץ הנ"ל מבית עגאן לבית איכסא.

10. בבית איכסא או בסמוך לכך, הנאשם והמחבל המתאבד פגשו באואל מחמוד מחמוד-עלי קאסם, המכונה "אבו סעדי", אשר לקח את המחבל המתאבד לביצוע הפיגוע המתוכנן.

11. באותו הערב, "אבו סעדי" ביחד עם וסאם סעדי עבאסי, הסיעו את המחבל המתאבד לראשון לציון ושם ליוו אותו עד למועדון "שפילד-קלאב" הנמצא ברחוב סחרוב 1 באיזור התעשיה החדש, אשר אותר קודם לכן על-ידי "אבו סעדי". מחמד אסחאק עודה, וסאם עבאסי ונעלאא א-דין מחמוד עבאסי במקום מתאים לביצוע פיגוע ההתאבדות. "אבו סעדי" וסאם עבאסי הצביעו למחבל המתאבד על המועדון האמור והסבירו לו כי זה המקום שבו עליו לבצע את פיגוע ההתאבדות המתוכנן.

12. בסמוך לשעה 22:50, ביום 07.05.02 או במועד הסמוך לכך, המחבל המתאבד נכנס למועדון הנ"ל והפעיל את חגורת הנפץ ואת מטען החבלה הנוסף, אשר אותם ייצר הנאשם למטרה זו, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

13. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **רחמים קמחי** z"l, אשר נהרג כתוצאה מפיצוץ מטעני החבלה כפי שתואר לעיל.

ת.ח. 08-07

P 7: 186

<u>פרט שישים ושמונה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **רפאל חיים ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שישים ותשעה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **ענת טרמפורוש ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, גרם בכוונה למותו של **אברהם בייז ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ואחד:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **אתי בבלאר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

25

<u>פרט שבעים ושניים:</u> (פ.א. 5601/02 ראשל"צ)

<u><b>מהות העבירה:</b></u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u><b>פרטי העבירה:</b></u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של <b>יצחק בבלאר</b> ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ושלושה:</u> (פ.א. 5601/02 ראשל"צ)

<u><b>מהות העבירה:</b></u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u><b>פרטי העבירה:</b></u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של <b>ישראל שיקאר</b> ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים וארבעה:</u> (פ.א. 5601/02 ראשל"צ)

<u><b>מהות העבירה:</b></u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u><b>פרטי העבירה:</b></u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של <b>שושנ מגנזי</b> ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים וחמישה:</u> (פ.א. 5601/02 ראשל"צ)

<u><b>מהות העבירה:</b></u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u><b>פרטי העבירה:</b></u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של <b>שארוק רסאן</b> ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

26

## פרט שבעים ושישה: (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **נאחה חינאוי** ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

## פרט שבעים ושבעה: (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **ניר לובטין** ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

## פרט שבעים ושמונה: (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **רגינה מלכה בוסלן** ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

## פרט שבעים ותשעה: (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **דליה מסה** ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

27

**פרט שמונים: (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותה של **פנינה הקרי** ז"ל, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שמונים ואחד: (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותה של **עדנה כהן** ז"ל, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שמונים ושניים: (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל האפשר.
כתוצאה מפיצוץ מטעני חבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה, נפצעו 59
בני אדם.

**פרט שמונים ושלושה: (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, גרם נזק כבד למועדון "שפילד-קלאב" הנמצא ברחוב סחרוב 1
בראשון לציון וכן לכל הבניין האמור, אשר בו הופעלו מטעני חבלה, כפי שתואר בפרט האישום
השישים ושבעה.

28

פרט שמונים וארבעה: (פ.א. 2881/02 נגילות)

מהות העבירה: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

· פרטי העבירה: הנאשם הנ"ל, הן באיזור הנ"ל והן מחוצה לו, ביום 23.05.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש מאי 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר
שייך-קאסם, המכונה "צלאח ב'", פעיל צבאי בארגון החמאס.

2. "צלאח ב'" מסר לנאשם כי אברהים ג'מיל ע'עואני אחמד, המכונה "צלאח 1" או "שיח'",
מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען
חבלה אשר "יעדכן" אל ברזל וזאת לצורך ביצוע פיגוע תופת. הנאשם הסכים לייצר את
מטען חבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם
של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר ניתן "להדביקו" לברזל
באמצעות המגנטים, אותם הרכיב הנאשם על מטען החבלה, ואשר מופעל באמצעות
מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל העביר את מטען החבלה לידי אברהים האמד.

5. בחודש מאי 2002 אברהים האמד נפגש עם מחמד חסן אחמד ערנמאן (מכונה "אבו מוענאז")
ומסר לאחרון כי ברצונו לבצע פיגוע תופת ולפוצץ מיכלית דלק, וזאת בכוונה לגרום לגרום
למותם של אנשים רבים ככל האפשר. בעקבות האמור, מחמד ערנמאן נפגש עם אברהים האמד
מחמד-עלי קאסם, המכונה "אבו סעד", וסיפר לו אודות תכנונו של אברהים האמד
לבצע פיגוע תופת. "אבו סעד" אמר כי יבדוק את העניין וירא מה ניתן לעשות.

6. לאחר מספר ימים, מחמד ערנמאן נפגש שוב עם "אבו סעד". "אבו סעד" מסר כי הוא
וחבריו איתרו מיכלית דלק הנוסעת באופן קבוע לאתר "פי גילילות".

7. ביום 22.05.02, מחמד ערנמאן נפגש עם אברהים האמד ברמאללה ודיווח לאחרון אודות
מיכלית הדלק הנ"ל. אברהים האמד ביקש להיפגש עם מחמד ערנמאן בעוד מספר שעות
באותו המקום.

8. לאחר מספר שעות העניין נפגשו שוב. אברהים האמד מסר לידי מחמד ערנמאן את מטען
חבלה, אשר אותו ייצר הנאשם כאמור לעיל, כמו כן, אברהים האמד מסר למחמד ערנמאן
מכשיר טלפון סלולרי, אשר ממנו יש להתקשר אל המכשיר המחובר למטען החבלה על
מנת להפעילו.

9. מחמד ערנמאן מסר את מטען החבלה הנ"ל לידי עז'יו ו/לידי עז'האדי אנג'אס, אשר העבירו
לצפא. מחמד ערנמאן הגיע לצפא ומשם נסע במכוניתו, ביחד עם ולידי אנג'אס, לבית
איכסא.

10. מחמד ערנמאן נפגש שם עם "אבו סעד" וביחד עם ולידי אנג'אס מסר לידי "אבו סעד" את
מטען החבלה הנ"ל עם מכשיר טלפון סלולרי המחובר אליו וכן את מכשיר הטלפון
הסלולרי הנוסף.

11. בשעות הבוקר המוקדמות למחרת, יום 23.05.02, "אבו סעד" הצמיד את מטען
סעיד עבאסי, כשברשותם מטען החבלה הנ"ל. בחולון, "אבו סעד" הצמיד את מטען
החבלה הנ"ל באמצעות מגנט אל חלקו הקדמי של מיכל הדלק המורכב על
מיכלית דלק, מר. 2622700. "אבו סעד" המתין ברכבו עד
תופת הנ"ל וסעד עבאסי ועלאא א-דין מחמד עבאסי.

29

ה.ת. 380/03

P 7: 55



שהגיע נהג מיכלית הדלק ולאחר מכן נסע אחרי מיכלית הדלק עד לאתר "יפי
גלילות". לאחר ש"אבו סעד" וידא כי מיכלית הדלק, אשר אליה חובר מטען החבלה הנ"ל,
נכנסה אל תוך האתר "יפי גלילות", אבו סעד הפעיל את מטען החבלה הנ"ל, אשר אותו
ייצר הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים
רבים ככל האפשר.

12. מטען החבלה הנ"ל התפוצץ וגרם נזק כבד למיכלית הדלק הנ"ל. רק בנס איש לא נפגע.

#### פרט שמונים וחמישה: (פ.א. 3975/02 לוד)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.06.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כריס חדר
שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "ישיח'י",
מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען
חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה
לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת
על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל
האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון
סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה
הנ"ל לידי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "ישיח'י", ראש הזרוע
הצבאית של ארגון החמאס באיזור רמאללה.

5. אברהים חאמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאז'") והציע לבצע פיגוע
תופת באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה
לגרום למותם של אנשים רבים ככל האפשר.

6. מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", וביקש ממנו
לבדוק אפשרות של ביצוע פיגוע תופת על פסי הרכבת בישראל. לאחר זמן מה, "אבו סעדי"
פנה אל מחמד ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. מחמד
ערמאן דיווח על כך לאברהים חאמד.

7. לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם אברהים חאמד, אשר מסר לו את מטען
החבלה, אשר אותו ייצר הנאשם כאמור לעיל.

8. ביום 29.06.02 או בסמוך לכך, מחמד ערמאן העביר את מטען החבלה הנ"ל ביחד עם
מכשירי הטלפון הסלולריים לידי "אבו סעד" והסביר לאחרון כיצד מפעילים את מטען
החבלה הנ"ל.

9. בשעות הערב באותו היום, "אבו סעד" ביחד עם וסאם סעיד עבאסי נסע ללוד והניח את
מטען החבלה הנ"ל על פסי הרכבת בלוד במקום שאותר קודם לכן כמתאים לביצוע הפיגוע
המתוכנן על-ידי וסאם עבאסי ועלאא א-דין מחמוד עבאסי. לאחר מכן, "אבו סעד" וסאם
עבאסי חזרו לירושלים.



10. בשעות המוקדמות של הבוקר למחרת, 30.06.02, "אבו סעד" ווסאם עבאסי נסעו ללוד. ואם עבאסי התמקם ליד מטען חבלה שהוטמן כאמור לעיל על פסי הרכבת. בסמוך לשעה 07:00, ברגע ששם עבאסי הבחין ברכבת המתקרבת למקום המנוטר, הוא הודיע ל"אבו סעד", אשר הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. מטען החבלה הנ"ל התפוצץ.

12. כתוצאה מפיצוץ מטען החבלה הנ"ל נפצעו 4 בני אדם. כמו כן נגרם נזק לקטר הרכבת ולמסילת הברזל.

**פרט שמונים ושישה:** (ת.פ.א. 9913/02 רחובות)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 21.07.02 או במועד הסמוך לכך, ניסה לגרום למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שייך-קאסם, חמכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע/אני חאמד, חמכונה "צלאח 1" או "שיחי", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המונעף באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישמש בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות ובכנשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים ג'מיל ע/ע/אני חאמד, חמכונה "צלאח 1" או "שיחי", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. אברהים חאמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מואעד") והציע לבצע פיגוע תופת נוסף באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, חמכונה "אבו סעד", וביקש ממנו למצוא מקום לביצוע פיגוע תופת נוסף על פסי הרכבת בישראל. לאחר זמן מה, "אבו סעד" פנה אל מחמד ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. מחמד ערמאן דיווח על כך לאברהים חאמד.

7. לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם אברהים חאמד, אשר מסר לו את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל לצורך ההוצאה לפועל של הפיגוע המתוכנן.

8. ביום 20.07.02, מחמד ערמאן מסר את מטען חבלה הנ"ל לוליד ע/עויז ע/אהאדי אנג'אס וביקש מהאחרון להעבירו לצפא. לאחר מכן, מחמד ערמאן הגיע לצפא ונפגש שם עם וליד אנג'אס. משם, השניים נסעו ביחד לבית איכסא.

9. בבית איכסא, מחמד ערמאן וליד אנג'אס העבירו את מטען חבלה הנ"ל ביחד עם מכשיר הטלפון הסלולרים לידי "אבו סעד".

31

10. באותו הלילה, "אבו סעדי", ביחד עם וסאם סעיד עבאסי ועלאא א-דין מחמוד עבאסי, נסעו לאיזור רחובות והניחו את מטען החבלה הנ"ל על פסי הרכבת בסמוך ליציאה מרחובות, ליד כפר גבירול, מקום שנבחר קודם לכן על-ידי "אבו סעדי" וסאם עבאסי. לאחר מכן השלושה חזרו לירושלים.

11. למחרת, 21.07.02, בשעות הבוקר המוקדמות, "אבו סעדי" וסאם עבאסי נסעו למקום שבו הונח מטען החבלה הנ"ל. בסמוך לשעה 07:30, "אבו סעדי" הפעיל את מטען החבלה הנ"ל בכוונה לגרום למותם של אנשים רבים ככל האפשר, לאחר שוסאם עבאסי סימן לו באמצעות מכשיר טלפון סלולרי כי רכבת מגיעה למקום שבו הונח מטען החבלה.

12. מטען החבלה הנ"ל התפוצץ. כתוצאה מפיצוץ מטען החבלה נפצע אדם אחד. כמו כן, נגרם נזק לקטר הרכבת ולמסילת הברזל.

פרט שמונים ושבעה: (ת.פ.א. 1197/02 שלם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה ושומרון) (מס' 378), תשל"0-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה ושומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יולי 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כריס חדר שייד-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע'אני אחמד, המכונה "צלאח 1" או "שיח'יי", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המוסתר בתוך תיק ו/זאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישמש/שישמש בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר הורכב ממיכל שמפו גדול מלא בחומר נפץ, אשר הוסתר בתוך תיק שחור קשיח מבד (דומה לתיק "ג'יימס בונד"). כמו כן, הנאשם מילא את התיק הנ"ל באומם לצורך הגברת עוצמת הפגיעה של המטען. על-פי בקשתו של "צלאח 2", הנאשם הרכיב למטען החבלה הנ"ל מנגנון הפעלה אלחוטי, כך שמטען החבלה היה מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל וכן שלושה מיכלי שמפו נוספים, מלאים בחומר נפץ, לידי "צלאח 2".

5. "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים ג'מיל ע/ע'אני אחמד, המכונה "צלאח 1" או "שיח'יי", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

6. אברהים אחמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאז") וביקש לאתר מקום בירושלים שבו ניתן לבצע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", וביקש מהאחרון לאתר מקום מתאים לביצוע פיגוע תופת.

7. לאחר מספר ימים, "אבו סעדי" מסר למחמד ערמאן כי איתר מקום מתאים לביצוע פיגוע המוני והוא האוניברסיטה העברית בירושלים, קמפוס הר-הצופים. מחמד ערמאן דיווח אודות המקום שאותר לאברהים אחמד.

32

ת.ד. 362/03

8. לצורך ביצוע פיגוע התופת המתוכנן, אברהים האמד מסר למחדיד ערמאן את מטען
החבלה, אשר אותו ייצר תנאשם כאמור לעיל. מחמד ערמאן הוסיף אל מטען החבלה
האמור את שלושה בקבוקי שמפ, המלאים בחומר נפץ, אותם קיבל "צלאח 2" מהנאשם.

9. לאחר מכן, מחמד ערמאן נסע ביחד עם וליד ע/עזיו עהאדי אנג'אס לבית איכסא במטרה
להעביר את מטען החבלה הנ"ל ל"אבו סעדי" על מנת שאהרון ביחד עם חבריו יבצע
באמצעותו את פיגוע התופת המתוכנן.

10. בבית איכסא מחמד ערמאן וולד אנג'אס נפגשו עם "אבו סעדי". השניים מסרו לידי "אבו
סעדי" את מטען החבלה הנ"ל יחד עם שני מכשירי טלפון סלולריים, כאשר מכשיר אחד
היה מחובר למטען החבלה ושימש כמנגנון הפעלה.

11. ביום 28.07.02, "אבו סעדי", ביחד עם מחמד אסחאק עודה, העבירו את מטען החבלה הנ"ל
לירושלים. "אבו סעדי" ומחמד עודה הכניסו את מטען החבלה הנ"ל אל תוך קמפוס
הר-הצופים של האוניברסיטה העברית בירושלים. מחמד עודה הכיר היטב את המקום
מכיוון שעבד שם בעבר ואף עשה שימוש בכרטיס עובד, אשר עדיין נשאר ברשותו, כדי
להיכנס אל תוך הקמפוס האמור. מחמד עודה הניח את מטען החבלה הנ"ל בתוך
הקפיטריה הנמצאת בבניין ע"ש פרנק סינטורה בקמפוס הנ"ל. לאחר מכן, "אבו סעדי"
ומחמד עודה ניסו להפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, אך
מטען החבלה לא התפוצץ עקב תקלה שבו. לאחר מכן, מחמד עודה חזר אל המקום שבו
הניח את מטען החבלה הנ"ל, אסף את מטען החבלה וביחד עם "אבו סעדי" נסע לבית
איכסא.

12. לאחר מכן, ביום 29.07.02, מחמד ערמאן וולד אנג'אס נפגשו שוב עם "אבו סעדי". "אבו
סעדי" החזיר למחמד ערמאן את מטען החבלה הנ"ל. "אבו סעדי" מסר כי הוא וחבריו
הניחו את מטען החבלה הנ"ל באוניברסיטה העברית בירושלים, קמפוס הר-הצופים,
בכוונה למצצו ולגרום למוות של אנשים רבים ככל האפשר, אך מטען החבלה הנ"ל לא
התפוצץ. מחמד ערמאן וולד אנג'אס העבירו את מטען החבלה הנ"ל לחרבתא בני חארס.

13. מחמד ערמאן תיקן את מטען החבלה הנ"ל, לאחר שבדק אותו וגילה כי יש בעיה עם חוטי
החשמל.

14. יום למחרת, ביום 30.07.02, מחמד ערמאן נפגש שוב עם וליד אנג'אס וביחד עם האחרון
העביר את מטען החבלה הנ"ל לבית איכסא.

15. בבית איכסא, מחמד ערמאן וולד אנג'אס נפגשו עם "אבו סעדי". מחמד ערמאן מסר לידי
"אבו סעדי" את מטען החבלה הנ"ל.

16. באותו הלילה, "אבו סעדי" ומחמד אסחאק עודה לקחו את מטען החבלה הנ"ל לירושלים
והסתירו אותו בין העצים בגן הבוטני בקמפוס הר-הצופים של האוניברסיטה העברית.

17. למחרת, ביום 31.07.02, "אבו סעדי" ומחמד עודה נסעו שוב לקמפוס הר-הצופים של
האוניברסיטה העברית. בעת ש"אבו סעדי" המתין בחוץ, מחמד עודה נכנס אל תוך
הקמפוס, אסף את מטען החבלה הנ"ל והניחו בקפיטריה הנמצאת בבניין ע"ש פרנק
סינטורה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים. לאחר שמחמד עודה,
בסמוך לשעה 13.30, עזב את שטח הקמפוס והצטרף אל "אבו סעדי", "אבו סעדי" הפעיל
את מטען החבלה הנ"ל, אשר יוצר על-ידי הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת
בכוונה לגרום למוות של אנשים רבים ככל האפשר. "אבו סעדי" ומחמד עודה בחרו לבצע
את הפיגוע דווקא בסמוך לשעה 13.00 מאחר שלפי מידע שאסף מחמד עודה בקפיטריה
הנ"ל בשעה האמורה יש ריכוז גדול של בני אדם.

18. במעשיהם המתוארים לעיל, האשם הנ"ל גרם בכוונה למותה של **דפנה שפרוך** ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה באוניברסיטה העברית, כפי שתוארו לעיל.

33

380.03 .ת.ה

פרט שמונים ושמונה: (פ.א. 1197/02 שלם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **מרלה אן בנט ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

פרט שמונים ותשעה: (פ.א. 1197/02 שלם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **דינה קרטר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

פרט תשעים: (פ.א. 1197/02 שלם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **בנימין תומאס בלוטשטיין ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

נוטריון יצחק וויינברג YITZHAK WEINBERG NOTAIRE

פרט תשעים ואחד: (פ.א. 1197/02 שלם)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **רויטל בראשי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושניים: (פ.א. 1197/02 שלם)</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של דוד (דיאגו) לדובסקי ז"ל,
אשר נהרג כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושלושה: (פ.א. 1197/02 שלם)</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של לוינא שפירא ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וארבעה: (פ.א. 1197/02 שלם)</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של ג'ניס רות קולטה ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וחמישה: (פ.א. 1197/02 שלם)</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של דוד גריץ ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

ת.ה. 360-03

P 7: 60

<u>פרט תשיעים ושישה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל האפשר. כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה, נפצעו 81 בני אדם.

<u>פרט תשיעים ושבעה:</u>  (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם נזק כבד לבניין ע"ש פרנק סינטורה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשיעים ושמונה:</u>  (פ.א. 9638/02 ראשל"ץ)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, ביון באיזור ובין מחוצה לו, ביום 07.08.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש אוגוסט 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים גימ'ל ע'עיאני תאמד, המכונה "צלאח 1" או "ישיחי", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר שני מטעני חבלה המוסתרים בתוך הקופסאות של ביסקוויטים – אחד תמונעל באמצעות מכשיר טלפון סלולרי, והשני תמונעל שלט רחוק, וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטעני החבלה וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר שני מטעני חבלה, אשר הוסתרו בתוך קופסאות של ביסקוויטים. לאחד ממטעני החבלה הנאשם חיבר מנגנון הפעלת המורכב ממכשיר טלפון סלולרי, ואילו למטען החבלה השני הנאשם הרכיב מנגנון הפעלה כך שהמטען יופעל באמצעות שלט רחוק.

4. הנאשם מסר את מטעני החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטעני החבלה הנ"ל לידי אברהים גימ'ל ע'עיאני תאמד, המכונה "צלאח 1" או "ישיחי", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

36

5. בראשית חודש אוגוסט 2002, מחמד חסן אחמד ערמאן (מכונה "אבו מועאד") נפגש עם
ואל מחמוד מחמד-עלי קאסם, המכונה "אבו סעדי", אשר ביקש לקבל מטען חבלה. "אבו
סעדי" הסביר כי בכוונתו להניח את מטען החבלה מתחת לרכב ולפוצצו בכוונה לגרום
למותם של אזרחים ישראליים רבים ככל האפשר.

6. מחמד ערמאן פנה אל אברהים חאמד וביקש לקבל מטען חבלה לצורך ביצוע הפיגוע
המתוכנן. לאחר מספר ימים, ברמאללה או בסמוך לכך, אברהים חאמד העביר לידי מחמד
ערמאן מטען מטען חבלה, אותו ייצר הנאשם, כאמור לעיל, אשר היה מופעל באמצעות מכשיר
טלפון סלולרי.

7. באותו היום, 06.08.02, מחמד ערמאן, ביחד עם וליד עוויוי וע'אדי אנבאס נסעו לבית
איכסא כאשר ברשותם מטען חבלה הנ"ל. בבית איכסא, השניים נפגשו עם "אבו סעדי"
והעבירו לידיו את מטען החבלה הנ"ל.

8. ביום למחרת, 07.08.02, "אבו סעדי" וסאם סעדי עבאסי הצמידו את מטען החבלה הנ"ל
למיכלית דלק, מ.ר. 3388300, שחנתה בשכונת פסגת זאב בירושלים או בסמוך לכך. לאחר
מספר שעות, בסמוך לשעה 13:50, "אבו סעדי" הפעיל את מטען החבלה הנ"ל באמצעות
מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המטען
שהונח במיכלית הדלק האמורה התפוצץ, וזאת כאשר מיכלית הדלק היתה במוסך ברחוב
שמוטקין 23 בראשון לציון.

9. כתוצאה מפיצוץ מטען החבלה הנ"ל נגרם נזק למיכלית הדלק ורק בנס לא נפגע.

## פרט תשעים ותשעה: (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14א(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור וחן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך
גרם בכוונה למותם של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002 או בסמוך לכך, ברמאללה או בסמוך לכך,
נפגש עם סיד ע/ברהים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" ביקש מהנאשם לייצר שתי חגורות נפץ וזאת לצורך ביצוע פיגוע התאבדות
בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את חגורות
הנפץ וזאת על מנת שישתמשו בהן לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של
אנשים רבים ככל האפשר. בעקבות הבקשה האמורה, הנאשם ייצר שתי חגורות נפץ.

3. הנאשם מסר את חגורות הנפץ הנ"ל לידי "צלאח 2", אשר דאג להעבירן באמצעות חסנין
רומאנה אל מחמוד חמאד מחמוד שריתח, פעיל צבאי בארגון החמאס, וזאת לצורך
הוצאה לפועל של פיגוע התאבדות המתוכנן.

4. בסוף חודש יולי 2002, חסנין רומאנה התקשר אל מחמוד שריתח וביקש כי לתאם פגישה
בין איאד נעים צובחי רדאד, המכונה "עומר", לבין אדם המכונה "אבו אאלד". חסנין
רומאנה הסביר כי הפגישה האמורה נועדה לצורך ההוצאה לפועל של פיגוע התאבדות,
אשר אותו היה אמור לבצע "עומר" הנ"ל. מחמוד שריתח התקשר אל "עומר" ומסר
לאחרון איפה וכיצד עליו לפגוש את אבו אאלד. כעבור יומיים, "עומר" הודיע כי אבו אאלד
לא הגיע לפגישה שנקבעה.

5. מיד לאחר השיחה הנ"ל, מחמוד שריתח חזר לרמאללה ונפגש עם חסנין רומאנה ודיווח
לאחרון כי הפגישה המתוכננת לא יצאה אל הפועל. בתום הפגישה הנ"ל, מחמוד שריתח
התקשר אל אשרף זע'ייר, המכונה "אבו ש רופי".

37

ת.פ. 380/03

P 7: 62

6. לאחר מספר ימים, מחמוד שריתח נפגש שוב עם חסנין רומאנה, אשר ביקש כי לתאם
פגישה נוספת בין "עומרי" לאבו חאלד.

7. כעבור כשבוע ימים, חסנין רומאנה ביקש כי במקרה שבו תאלד לא יגיע לפגישה
האנמורה, מחמוד שריתח ייקח אחריות על "עומרי" ועל המחבל המתאבד השני, ראפת
רדאד.

8. לאחר השיחה הנ"ל, מחמוד שריתח עקב אחרי "עומרי" וראה כי "עומרי" ממתין במקום
הממופע וכי אבו חאלד לא הגיע. כעבור רבע שעה של המתנה מחמוד שריתח ניגש אל
"עומרי" והודיע לאחרון כי מרגע זה הנאשם זה יהיה האחראי עליו.

9. "עומרי" מסר כי יש לו בן דוד, ראפת מוקדי, אשר גם הוא רוצה לבצע פיגוע התאבדות.
"עומרי" ביקש לבצע פיגוע התאבדות ביחד עם בן-דודו הנ"ל.

10. לאחר מספר ימים, מחמוד שריתח נפגש ברמאללה עם "אבו שריף" והורה לאחרון למצוא
מקום בתוך מדינת ישראל המתאים לביצוע פיגוע התאבדות. מחמוד שריתח הבהיר ל"אבו
שריף" כי יהיה עליו לחוביל למקום שאותו יאתר יחד שני מחבלים מתאבדים על מנת שיבצעו
שם פיגוע תופת בכוונה לגרום למוות של אנשים רבים ככל האפשר. ל"אבו שריף" חסכים,
אך טען כי ייקח זמן לאתר מקום ניתן לבצע פיגוע התאבדות כפול. במהלך השיחה הנ"ל,
"אבו שריף" דיווח כי שכר דירה בדחיית אל-ב.ד.

11. "עומרי" מסר למחמוד שריתח כי נודע לו מראפת מוקדי על אולם שמחות גדול "יוייז חזל"
הנמצא באור-יהודה. "עומרי" הציע כי הוא וראפת מוקדי יבצעו את פיגוע ההתאבדות
באולם השמחות הנ"ל, כאשר תחילה שניהם יירו בכלי נשק לעבר האנשים שיהיו בתוך
אולם השמחות ולאחר מכן יפוצצו את חגורות הנפץ שיישאו על גופם, וכל זאת בכוונה
לגרום למוות של אנשים רבים ככל האפשר. מחמוד שריתח חסכים לרעיון הנ"ל ושלח את
"אבו שריף" לבדוק את אולם השמחות הנ"ל. "אבו שריף" נסע לאולם השמחות הנ"ל
דיווח כי לא ניתן לבצע שם את הפיגוע המתוכנן בגלל מספר גדול של מאבטחים שנמצאים
במקום.

12. מחמוד שריתח דיווח לחסנין רומאנה לגבי פעילותו שבוצעה לצורך ההוצאה לפועל של
פיגוע ההתאבדות המתוכנן. מחמוד שריתח ביקש מחסנין רומאנה לקבל שתי חגורות נפץ
ושני כלי נשק קטנים, כך זאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. חסנין
רומאנה הבטיח להביא לידאג לחגורות הנפץ ולכלי הנשק.

13. לאחר מספר ימים מחמוד שריתח ו"אבו שריף" קיבלו שתי חגורות נפץ, אותן ייצר
הנאשם כאמור לעיל, וכן שני תת-מקלעים "עוזי" עם מחסניות מלאות בכדו ריים.

14. לאחר מכן, מחמוד שריתח נפגש עם "עומרי" ומסר לאחרון כי חגורות הנפץ מוכנות והוא
יכול לצאת לביצוע פיגוע ההתאבדות המתוכנן ביחד עם בן-דודו, ראפת מוקדי. "עומרי"
השיב כי הוא עצמו מוכן לבצע את פיגוע ההתאבדות בהקדם האפשרי, אך ראפת מוקדי
לא מוכן לבצע את פיגוע ההתאבדות המתוכנן, מכיוון שאחותו שוחח בארה"ב והוא מבקש
להמתין לשובה לאיוור.

15. מחמוד שריתח פנה שוב ל"אבו שריף" וביקש לפעול דחוף לאיתור מקום מתאים לביצוע
פיגוע ההתאבדות המתוכנן. לאחר מספר ימים, "אבו שריף" דיווח כי איתר מקום
בתל-אביב שהוא מתאים לביצוע פיגוע ההתאבדות כן.

16. ביום 17.09.02 או בסמוך לכך, מחמוד שריתח נפגש בדירת המסתור בא-ראם עם "עומרי"
והסביר לאחרון כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריתח נשאר
בדירה הנ"ל, ביחד עם "עומרי" עד ליום 18.09.02.

17. ביום 19.09.02, "עומרי" יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן כשהוא נושא
על גופו את אחת מחגורות הנפץ, אשר ייצר הנאשם כאמור לעיל.

38

18. "אבו שריף" הסיע את "עומר" ברכבו לתל-אביב. בהגיעם לתל-אביב, "אבו שריף" הנחה
את "עומר" להתפוצץ שבו נמצאים אנשים רבים וזאת על מנת שהפיצוץ יגרום למותם של
אנשים רבים ככל הני תן.

19. בסמוך לשעה 55:12, ביום 19.09.02, או במועד הסמוך לכך, "עומר" עלה לאוטובוס בקו 4
של "דן", מ.ר. 9105201, ברחוב אלנבי 94 בתל-אביב. מיד כשהאוטובוס התחיל,חני"ל
בנסיעתו, "עומר" הפעיל את מטען הנפץ, אותו ייצר הנאשם, ששא על גופו וגרם לפיצוץ
עז, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המחבל המתאבד, איאד
נעים צובחי רדאד חמכונה "עומר", נהרג כתוצאה מפיצוץ מטען חחבלה ה נ"ל.

20. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נחרגו שישה בני אדם,
כפי שיתוארו בפרטי האישום ה באים.

21. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות
לאנשים רבים נוספים, כפי שיתוארו בפרטי האישום הבאים.

22. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לאוטובוס
הנ"ל, לכלי רכב שחיו בסמוך למקום הפיצוץ, וכן לחנויות הס מוכות.

23. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של **יוסי ממיסטולוב** ז"ל, בן 39
במותו, אשר נהרג כתוצאה מהתפוצצות מטען חחבלה כאמור לעיל.

**פרט מאה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תשי"ל-1970, וסעיף (א)14 לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור וחן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו : במעשיו המתוארים בפרט האישום תשעים ותשעה, גרם בכוונה למותו של **עופר
זינגר** ז"ל, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה בפרט האישום
באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום
תשעים ותשעה.

**פרט מאה ואחד :** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תשי"ל-1970 וסעיף (א)14 לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור וחן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום תשעים ותשעה, גרם בכוונה למותה של **רחנה
סיסו** ז"ל, בת 63 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה
באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום
תשעים ותשעה.

ת.ה. 388/03

<u>**פרט מאה ושניים:**</u> (פ.א. 19284/02 ירקון)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של **יפה שם-טוב** ז"ל, בת 49 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>**פרט מאה ושלושה:**</u> (פ.א. 19284/02 ירקון)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **סלומון הוניג** ז"ל, בן 79 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>**פרט מאה וארבעה:**</u> (פ.א. 19284/02 ירקון)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **יונתן ג'סנר** ז"ל, בן 19 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>**פרט מאה וחמישה:**</u> (פ.א. 19284/02 ירקון)

<u>**מהות העבירה:**</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען חבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה **נפצעו כ-84 בני אדם** שחיו באוטובוס הנ"ל ובסמוך אליו בעת הפיצוץ.

40

ת.פ. 360/03

<u>פרט מאה ושישה: (פ.א. 19284/02 ירקון)</u>

<u>מהות העבירה:</u> חיזוק בזדון לרכוש, עבירה לפי סעיף 453 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם במזיד ושלא כדין נזק כבד לאוטובוס, מ.ר. 9105201, שנסע בקו 4 של "דן" ברחוב אלנבי בתל-אביב, וכן גרם נזק לכלי רכב נוספים ולחנויות ובתי עסק שהיו בקרבת מקום הפיגוע המתואר בפרט האישום התשעים ותשעה, ואשר נפגעו כתוצאה מפיצוץ מטען חבלה, אותו יצר הנאשם.

<u>פרט מאה ושבעה: (פ.א. 21011/02 ירקון)</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 11.10.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002, ברמאללה או בסמוך לכך, יצר שתי חגורות נפץ לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר, וזאת כפי שתוארו בפרט האישום התשעים ותשעה.

2. הנאשם העביר את שתי חגורות הנפץ לידי סיד עג'ברים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס, אשר דאג להעבירן למחמוד חמאד מחמוד שריותח, כפי שתוארו בפרט האישום התשעים ותשעה.

3. לאחר ביצוע הפיגוע המותאר בפרט האישום התשעים ותשעה, מחמוד שריותח החליטו להוציא לפועל פיגוע התאבדות נוסף באמצעות חגורת נפץ, אשר אותה יצר הנאשם.

4. לצורך קידום תכניתו הנ"ל, מחמוד שריותח גייס את ראפת מוקדי לביצוע פיגוע ההתאבדות המתוכנן.

5. מחמוד שריותח נפגש גם עם אשרף מוניר זעייר, המכונה "אבו שריף", והורה לאחרוני לאתר מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן. לאחר מספר ימים, "אבו שריף" דיווח כי איתר שני מקומות בתל-אביב המתאימים לביצוע פיגוע ההתאבדות המתוכנן.

6. ביום 11.10.02 "אבו שריף" הביא את ראפת מוקדי מכפר עראבה לדירת המסתור בא-ראם. מחמוד שריותח הסביר לראפת מוקדי כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריותח הלביש על גופו של ראפת מוקדי את חגורת הנפץ, אשר אותה יצר הנאשם.

7. "אבו שריף" הסיע את ראפת מוקדי לתל-אביב על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן.

8. בסמוך לשעה 20:15, ביום 11.10.02, "אבו שריף" הוריד את ראפת מוקדי בטיילת החוף בתל-אביב והתאבד והאחרון לפוצץ את חגורת הנפץ, שהוא נשא על גופו, במסעדה שיש בה אנשים רבים.

9. ראפת מוקדי ניסה להיכנס למסעדה "יוטבתה" הנמצאת ברחוב הרברט סמואל (טיילת תל-אביב), אך המאבטחת שהיה במקום הבחין בו, חשד כי מדובר במחבל מתאבד ומנע את

41

ת.פ. 383-03

P 7: 66

כניסתו פנימה. ראפת מוקדי ניסה להימלט מהמקום, אך נתפס לאחר מרדף ובסיוע של
מאבטחים נוספים שהגיעו למקום.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל ניסה לגרום בכוונה למותם של אנשים רבים ככל
האפשר.

**פרט מאה ושמונה:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום),
1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2003 או בסמוך לכך, התאמן, אימן או
אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו :
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר אימון צבאי לאדם, תושב שכם,
אשר נשלח אליו על-ידי אברהים ג'מיל ע/ע/אני חמאד, המכונה "צלאח 1" או "השיח'", ראש
"גדודי עז א-דין אל קסאם" באיזור רמאללה.
במהלך האימון האמור הנאשם האמור לימד את האדם הנ"ל לייצר מטעני חבלה, מעגלים חשמליים
לצורך הפעלת מטעני חבלה, וכן מנגנון הפעלה חבלה המורכבים משעון, שלט רחוק
ומכשיר טלפון סלולרי.
במהלך האימון הצבאי הנ"ל, הנאשם והאדם הנ"ל היו רעולי פנים.

**פרט מאה ותשעה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות
ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2003 או בסמוך לכך, עשה עבודה כל שהיא
או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו :
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר לידי אברהים ג'מיל ע/ע/אני
חמאד, המכונה "צלאח 1" או "השיח'", ראש "גדודי עז א-דין אל קסאם", זרחון הצבאית של
ארגון החמאס, באיזור רמאללה, דיסקטים למחשב ועלייהם הוראות לייצור חומרי הנפץ ומטעני
החבלה.
אברהים האמור ביקש מהנאשם לקבל את הדיסקטים הנ"ל לצורך העברתם לפעילי הארגון ג'יהאד
אסלאמי פלסטיני, אשר ביקשו ללמוד לייצר חומרי נפץ ומטעני חבלה.

42 .

ת.פ. 380/03

P 7: 67

עדי התביעה:

1. רס"ר יצחק יעקובוף, מ.א. 1008358, לח"יק יהודה. [גובה אמרות הנאשם מיום 12.03.03, 13.03.03, 30.03.03, 15.05.03 ומיום 22.05.03 ומגיש תמונות שהוצגו בפני הנאשם ביום 30.03.03 + ציור בכתב-ידו של הנאשם]
2. רס"ר משה לוי, מ.א. 953117, לח"יק יהודה. [גובה אמרת הנאשם מיום 12.05.03]
3. פרוטוקול דיון הארכת המעצר של הנאשם מיום 12.05.03.
4. אשרף מוניר זעייר, ת.ז. 035660679. (עצור)
5. ראפת רשיד עבדאללה מוקדי, ת.ז. 907945026. (עצור)
6. מחמוד חמאד מחמוד שריתח, ת.ז. 900718750. (עצור) (ת.ת. 976/02)
7. מחמד טאהר מחמוד ברגותי, ת.ז. 859121287. (עצור) (ת.ת. 241/03)
8. אכרם צאלח אחמד א-חסין (ברגותי), ת.ז. 988965372. (עצור) (ת.ת. 210/03)
9. וסאם סעיד מוסא עבאסי, ת.ז. 033714403. (אסיר)
10. ואאל מוחמוד מחמד-עלי קאסם, ת.ז. 028192755. (אסיר)
11. מחמד אלחאמק עודה, ת.ז. 026291302. (אסיר)
12. עלאא א-דין מחמוד עבאסי, ת.ז. 029194818. (אסיר)
13. וליד ע'עזיז ע'התאדי אנג'אס, ת.ז. 906448105. (עצור) (ת.ת. 889/02)
14. מחמד חסן אחמד ערמאן, ת.ז. 901056259. (עצור) (ת.ת. 888/02)
15. מחמד ואל מוחמד דעילאס, ת.ז. 905167375. (אסיר) (ת.ת. 846/01)
16. אחלאם ערף אחמד תמימי, דרכון ירדני G052933. (עצורה) (ת.ת. 815/01)
17. בלאל יעקוב אחמד (עתימאן) ברגותי, ת.ז. 902826262. (אסיר) (ת.ת. 344/02)
18. אחמד טאלב מוצטפא ברגותי, ת.ז. 994466860. (עצור) (ת.ת. 444/02)
19. מוראד חליל ע'חאקן עמירה, ת.ז. 980743066. (עצור) (ת.ת. 946/02)

רשימת העדים הטכניים מתיקי הפ.א. הבאים תימסר על-ידי התביעה, במידת הצורך, במהלך המשפט:

| | |
|---|---|
| 1. | צ יון 6554/01 |
| 2. | מ ת"ימ י-ם 6891/01 |
| 3. | ציון 10283/01 |
| 4. | מורריה 1512/02 |
| 5. | ראש ל"צ 5601/02 |
| 6. | גלילות 2881/02 |
| 7. | לוד 3975/02 |
| 8. | רחובות 9913/02 |
| 9. | שלם 1197/02 |
| 10. | ראשל"יצ 9638/02 |
| 11. | ירקון 19284/02 |
| 12. | ירקון 21011/02 |

סרן
צבאי

מיכאל קושילביץ
תובע

תאריך: 29.05.2003
סימוכין: 38 0-03

43

ת.ת. 380/01