מס. No. 1041/13

## CERTIFICATION OF COPY

I the undersigned Yitzhak Weinberg, a
Notary in 33 Soreq Street, Beit
Shemesh, Israel
Hereby certify that the attached document
marked **"A"** is a correct copy of the
original document which is drawn up in
the Hebrew language and has been
produced to me.

In witness whereof I certify the
correctness of the copy and I hereto set
my signature and seal,

This day December 28, 2013

Paid 275.00 shekels (including VAT)

SIGNATURE

NOTARY'S SEAL

אישור העתק

אני הח״מ יצחק וויינברג נוטריון
בירושלים ברחוב נחל שורק 33 בית שמש

מאשר כי המסמך המצורף והמסומן
באות ״א״ הינו העתק מדויק של
המסמך המקורי שנערך בשפה העברית
ושהוצג בפני.

ולראיה הנני מאשר את דיוק ההעתק
הנ״ל, בחתימת ידי ובחותמי,

היום 28 דצמבר 2013

שולם סך של 275.00 ש״ח (כולל מע״מ)

חתימה

חותם הנוטריון



# APOSTILLE

### (Convention de la Haye du 5 Octobre 1961)

**1. STATE OF ISRAEL**

This public document

2. Has been signed by Yitzhak Weinberg - Advocate

Advocate ___ 33 Sorcq Street, Israel

3. Acting in capacity of Notary L.N.24260

4. Bears the seal/stamp of

the above Notary

### Certified

5. At the Magistrates Court of Jerusalem

6. Date ___ 1 -01- 2014

7. By an official appointed by

Minister of Justice under the

Notaries Law, 1976.

8. Serial number ___

9. Seal/Stamp ___

10. Signature ___

1. מדינת ישראל

מסמך ציבורי זה

2. נחתם ביד־יצחק ווינברג עו"ד

עו"ד

3. המכהן בתור נוטריון.

4. נושא את החותמת/החותמת

של הנוטריון הנ"ל

### אושר

5. בבית משפט השלום בירושלים

6. ביום ___

7. על ידי מי שמונה בידי שר

המשפטים לפי חוק הנוטריונים,

התשל"ו – 1976

8. מס' סידורי ___

9. החותם / החותמת ___

10. התימה ___

77/14

| צבא | המשפט | חנה | לישראל |
|---|---|---|---|
| בבית | הצבאי | תיק ביהח"מ : | 3459/02 |
| בבית | אל | תיק תביעה : | 444/02 |
| כמני | הרכב | תיק פ.א. : | 1282 בנימין |
| | | | 1283 בנימין |
| | | | 1284 בנימין |
| | | | 1285 בנימין |
| | | | 234/01 מתא"ם י-ם |
| | | | 457/01 בנימין |
| | | | 2159/01 בנימין |
| | | | 7915/01 ציון |
| | | | 481/01 ציון |
| | | | 8379/01 ציון |
| | | | 39/02 בנימין |
| | | | 502/02 ציון |
| | | | 483/02 שפט |
| | | | 4258/02 ירקון |
| | | | 568/02 שפט |
| | | | 783/02 בנימין |

**במשפט שבין התובע הצבאי - המאשים**

**- נגד -**

אחמד טאלב מוצטפא ברגותי (מכונה "אל פראסטי")
ת.ז. 994466860, וליד 15.03.76, תושב אלבירה - רמאללה
עצור מיום 15.04.02

**- הנאשם -**

# כתב - אישום מתוקן

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט ראשון:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:

הנאשם הנ"ל, החל משנת 1996 ועד ליום מעצרו עבד כתב, וכשומר ראש של מרואן ברגותי, שהוא ראש "התנזים" של הפתיח.

הנאשם הנ"ל, החל מתחילת שנת 2001 ועד ליום מעצרו פעל במסגרת "התנזים" של הפתיח, שהוא התאחדות בלתי מותרת, פעילות בבית נגד הסטרות הישראלית.
במהלך פעילותו הצבאית, הנאשם נהג לקבל סיוע כספי ממפילי "התנזים" של הפתיח. הנאשם קיבל באמצעות חשבון הבנק שלו סכום של כ-7,000 ש"ח מאזר מחמוד עויץ, פעיל צבאי בכיר מאיזור שכם, וכן סכום של כ-10,000 ש"ח מעלי פרני ברגותי, פעיל בכיר באיזור ברמאללה.



ת.ת. 444/02 מתוקן

1

במהלך פעילותו הצבאית הנאשם היה בקשר מתמיד עם ראש "יגדודי חללי אלאקצא", הזרוע
הצבאית של "התנזים" של הפת"ח בשכם - נאצר מחמוד עוויס, ראש "יגדודי חללי אלאקצא"
באיזור טול-כרם - האדד כרמז, ראש "יגדודי חללי אלאקצא" באיזור ניגין - עיבראס ראתב יונס
עוויס, ראש "יגדודי חללי אלאקצא" באיזור בית-לחם וחברון - גיהאד נעירה, ראש "יגדודי חללי
אלאקצא" באיזור - נאצר מחמד יוסף נאג'י (אבו-חמזה), וכן עם ראש "התנזוים" של הפת"ח -
מרואן ברגותי.

במסגרת פעילותו הצבאית הנ"ל, הנאשם הפיץ ברמאללה כרוזים בדבר לקיחת האחריות לפיגועים
שבוצעו בישראל ובאיזור על-ידי פעילי "התנזוים" של הפת"ח.

### פרט שני:

**מהות העבירה:** נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א)(1)-85(1)(ב)
לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מתחילתו שנת 2001 ועד ליום מעצרו, ניהל או עזר
להנהלת התאחדות בלתי מותרת, או החזיק בכל משרה או עמדה בהתאחדות בלתי מותרת או
תחת מרותה, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, היה אחד האחראים על ארגון "יגדודי חללי אלאקצא"
(יכותאביב שהדאדא אלאקצא") באיזור רמאללה - הזרוע הצבאית של "יהתנזוים" של הפת"ח,
שהנם התאחדות בלתי מותרת. "יגדודי חללי אלאקצא" היו אחראיים לביצוע מספר רב של
פיגועים נגד חיילי צה"ל ואזרחים ישראליים הן באיזור הן בגנון שטחהם של מדינת ישראל, אשר
בהן נהרגו מספר רב של אזרחים ישראליים וחיילים וחיילי צה"ל.

בין היתר, הנאשם שימש בתקופ כאיש קשר בין שאר האחראיים האזוריים ביגדודי חללי אלאקצא" לבין
ראש "התנזוים" של הפת"ח - מרואן ברגותי.

### פרט שלישי:

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א)(1)-85(1)(א)
לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון או
בסמוך לכך, עשה עבודה או כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת,
דהיינו:

הנאשם הנ"ל, במהלך ותקופה האמורה, ברמאללה או בסמוך לכך, במספר רב של הזדמנויות
שונות, חילק כספים לפעילים צבאיים של "התנזוים" של פת"ח. הנאשם נהג לקבל כספים מפעיל
"התנזוים" של הפת"ח עלי פרג' ברבותי ולחלק אותם לאנשים רבים אשר ביצעו פיגועים נגד חיילי
צה"ל האזרחים ישראליים. בכל הזדמנות הנאשם מסר לכל אחד מהפעילים סכומי כסף שונים בין
100 ל-3000 דולר ארה"ב. כמו כן, הנאשם נהג להעביר סכומים גדולים יותר לפעילים צבאיים
ביהתנזוים" של הפת"ח באמצעות העברות בנקאיות.

בין היתר, הנאשם העביר למנוצר שרם, פעיל צבאי בכיר ביהתנזים" של הפת"ח בטול-כרם, שהוא
סגנו של ראאד כרמז - ראש יגדודי חללי אלאקצא" בטול-כרם, שהוא הזרוע הצבאית של
"התנזוים" של פת"ח, סכום של 3,000 ש"ח.

כמו כן, הנאשם העביר לנאצר מחמד יוסף נאג'י (אבו-חמזה), שהוא ראש יגדודי חללי אלאקצא",
סכומים בין 1,000 ל-2,000 ש"ח בכ-6-7 הזדמנויות שונות וזאת לצורך רכישת כדורים.
בנוסף לכספים, הנאשם העביר לאצר מחמד יוסף נאג'י לפעילים צבאיים של "התנזוים" של פת"ח מכשירי טלפון
סלולריים לצורכי פעילותם הצבאית.



2

**פרט רביעי:**

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בשנת 1998 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, בתחנת הפליטים אמעארי או בסמוך לכך, רכש מידי סאמר אלמימי תמ"ק 5-MP תמורת 4,000 דינר ירדני וכן רובי רוסי"ר 16-M מסוצר עם כוונת טלסקופית תמורת 5,500 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו. הנאשם הנ"ל, במהלך השנים 2001 - 2002, נהג למסור את תמ"ק 5-MP הנ"ל לידי אנשים שונים על מנת שיבצעו באמצעותו פיגועי ירי נגד אזרחים ישראליים וזאת כפי שיתואר בהמשך כתב-האישום.

**פרט חמישי:**

<u>מהות העבירה:</u> החזקת כלי-יריה ללא היתר, עבירה לפי סעיף (1)(א)53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפיץ או ממגר, כלי או חפץ או דבר המתוכנע או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק ברשותו תמ"ק 5-MP, אקדח וכן רוסי"ר 16-M מסוצר עם כוונת טלסקופית, וזאת ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו.

**פרט שישי:**

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף שנת 2000 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי נאצר מחמד יוסף נאג'י (אבו-חמיד) - ראש הזרוע הצבאית של "תנזנוזי" של הפת"ח, רסי"ר קלצ'ניקוב 50-1 כדורים לרוסי"ר קלצ'ניקוב, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו. נאצר אבו-חמיד מסר את רוסי"ר קלצ'ניקוב הנ"ל לידי הכדורים הנ"ל לידי אחמד עודוזר, פעיל בכוח 17 של הרשות הפלסטינית. אחמד עודוזר דיווח למאצר אבו-חמיד כי ביצע באמצעות רוסי"ר קלצ'ניקוב הנ"ל פיגועי ירי שבו נהרגו בני הזוג כהנא ז"ל, וכן כי ביצע באמצעות הכדורים הנ"ל פיגועי ירי שבו נהרגו אזרחי ישראל.



**פרט שביעי:**

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, במסגרת רב של הזדמנויות שונות, מסר לידי נאצר מחמד יוסף נאג'י (אבו-חמיד) - ראש הזרוע הצבאית של "התנזים" של הפת"ח, סכומי כסף גדולים של עשרות אלפי שקלים ועשרות אלפי דולרים של ארה"ב לצורך רכישת כלי ושכדלכדורים לביצוע פיגועי ירי נגד חיילי צה"ל ואזרחים ישראליים. הנאשם אף נהג להשאיר אצלו בבית את הכדורים שנרכשו בכסף הנ"ל ולמסור אותם לידי נאצר אבו-חמיד וחבריו של האחרון לפי מידת הצורך, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

3

<u>פרט שמיני:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לאוצר מחמד יוסף נאג'י אבנ-חמדה, ראש יחידינו חלקי אלסקצא", הזרוע הצבאית של "תנזונים" של הפתווח, 100 כדורים לרוסי'ר M-16, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

<u>פרט תשיעי:</u>

<u>מהות העבירה:</u> פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בתחילת שנת 2001 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, חיזום, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחיילי או לפעולתם, שיחתום או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-יפר, גשר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, אד תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסובל לשמש לייצורם, הספקתם, החסונם, העברתם, מסירותם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, <u>רצם רכב מוד ה לבן גונב, מודל חדש.</u> הנאשם הנ"ל מסר את הרכב הנ"ל לידי <u>מוהנד אבן חלאווה,</u> אשר יצא ברכב האמור לביצוע פיגועים נגד אזרחים ישראליים וחיילי צה"ל באיזור.

<u>פרט עשירי:</u> (מ.א. 234/01 מת"פ י-ם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם מחמד ערדמצאן סאלם מצלח (מכונה "אבו סטמרה") ועם ג'יאד אברגורים מוסא מעלא.
2. ג'יאד מעלא ומחמד מצלח ביקשו <u>מהנאשם רכב לצורך ביצוע פיגוע</u> ירי נגד יהודים. הנאשם מסר לידי ג'יאד מעלא ומחמד מצלח רכב פולקסווגן בורה גנוב בצבע כסף, נשא לוחיות רישוי ישראליות, וזאת על מנת שהכריו הנ"ל יבצע מרכב זה פיגוע ירי בכוונה לגרום למותם של אזרחים ישראליים.
3. מחמד מצלח נהג ברכב הפולקסווגן האילו וג'יאד מעלא ישב לידו כשהוא חמוש באקדח 16.
4. ג'יאד מעלא ומחמד מצלח נסע ברכב הפולקסווגן לאיזור עטרות על מנת לחפש רכב ישראלי במסרות בצעו לעבר פיגוע ירי ולגרום למותם של נוסעי הרכב.
5. סמוך לשעה 18,15, באיזור התעשייה עטרות, ג'יאד מעלא ומחמד מצלח הבחינו ברכב GMC ספארי, מ.ר. 7901306, (להלן: הרכב) אשר בו נהג אלישר עקיבא משקוט ז"ל.
6. ג'יאד מעלא ומחמד מצלח החל לנסוע אחרי הרכב. הנאשם ומחמד מצלח עקבו אחרי הרכב מאיזור התעשייה עטרות עד צומת א-ראם ובחזרה.
7. כאשר הרכב חזר לאיזור התעשייה עטרות ונטע בכביש הראשי, ג'יאד מעלא ומחמד מצלח נסע ברכב הפולקסווגן בסמוך לרכב.
8. בשלב זה, ג'יאד מעלא פתח את החלון וירה באקדח 16 הנ"ל כ-7 כדורים לעבר הרכב בכוונה לגרום למותו של נהג הרכב. מספר קליעים, אשר נורו על-ידי ג'יאד מעלא, פגע ברכב, כאשר קליע אחד פגע בצוארו ואחד בחזהו של אלישר עקיבא משקוט ז"ל שנהג ברכב.
9. מ שהתברנו ג'יאד מעלא ומחמד מצלח כי הרכב נעצר, השניים נמלטו ברכב הפולקסווגן לרמאללה.

4

ת.פ. 444/02 מתוקן

10. ברמאללה, ג'יאד מעלא ומחמד מצלח החזירו את רכב הפולקסווגן לנאשם ודיווחו לו על הפיגוע שביצעו.

11. לאחר יום, הנאשם מסר לג'יאד מעלא כ-300 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את הכסף האמור הנאשם קיבל מידי עלי פרג'י ברגותי.

12. במעשים המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותם של אלעזר עקיבא פשקוס ז"ל, אשר נפטר כתוצאה מפגיעת הקליעים שנורו על-ידי ג'יאד מעלא כפי שתואר.

## פרט אחד-עשר: (פ.א. 457/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף (a)51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים (a)14 ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באחוזר, ביום 25.02.01 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם מהנד אבו חלאווה, מחמד עברמאני סאלם מצלח (אבו טנטחה) וטארק מלחי (אבו-נון).

2. הנאשם וחבריו הנ"ל דנו במצב באזור. הנאשם וחבריו הנ"ל טענו כי אין פעילות נגד המטרות הישראליות. הנאשם שאל את חבריו הנ"ל מה ניתן לעשות על מנת לשפר את המצב. חבריו הנ"ל של הנאשם ביקשו כי הנאשם ישם לחם רכב וכלי נשק. הם יבצעו פיגוע נגד האזרחים הישראליים בכוונה לגרום למותם.

3. הנאשם הסכים להצעת הנ"ל. הנאשם מסר לידי חבריו הנ"ל את רכב מסוג פולקסווגן בורה, צבע אפור, מודל שנת 2001, נשא לוחיות רישוי ישראליות, וכן תמוק MP-5 עם מחסנית וכדורים.

4. מהנד אבו חלאווה, מחמד מצלח (אבו טנטחה) וטארק מלחי (אבו-נון) נסעו ברכבו של הנאשם, כשהם חמושים בתמ"ק MP-5 הנ"ל, אשר אותו קיבלו מהנאשם. חבריו הנ"ל של הנאשם הגיעו לאיזור גשר עטאראה.

5. בסמוך לשעה 13:15, חבריו הנ"ל של הנאשם הבחינו ברכב GMC ואנדורה, מ.ר. 3082518, אשר בו נהג יוסף כהן, כשהרכב האמור יצא מישוב עטרת ופנה לכיוון גשר עטאראה.

6. חבריו הנ"ל של הנאשם החליטו לבצע פיגוע ירי לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של הנוסעים בו.

7. חבריו הנ"ל של הנאשם החליטו להמתין עד שרכב הסיטרואן שנסע לפניהם יעקוף את רכב ה-GMC ואז לפתוח את רכב ה-GMC ולבצע לעברו את פיגוע הירי המתוכנן.

8. ברכב הסיטרואן הנ"ל נסעו וליאם פארח אלחטיב (רימאווי), רב'חי זוהדי אלאסמר (רימאווי) ואברם עבדאללה מחמד קאסם (עזאווי), החמושים ב-2 רוטירי קלצ'ניקוב ורובה M-16. נסעו רכב הסיטרואן הנ"ל פתחו באש בכלי הנשק הנ"ל לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של הנוסעים בו. 29 קליעים שנורו על-ידי האנשים הנ"ל פגעו ברכב ה-GMC הנ"ל. 3 קליעים פגעו בראשו ובצוארו של יוסף כהן, אשר נהג ברכב ה-GMC הנ"ל. כתוצאה מפגיעת הקליעים הנ"ל וכן מפגיעות הרסיסים בכל חלקי גופו, יוסף כהן נפצע באורח קשה.

9. לאחר שחבריו הנ"ל של הנאשם הבחינו כי כתוצאה מפיגוע הירי שבוצע מרכב הסיטרואן שנסע לפניהם, רכב ה-GMC נפגע, ירד מהכביש ונהג הרכב נפצע, חבריו הנ"ל של הנאשם נמלטו בחזרה לרמאללה.

10. ברמאללה, חבריו הנ"ל של הנאשם החזירו את רכב הפולקסווגן הנ"ל ואת תמ"ק MP-5 הנ"ל. מהנד אבו חלאווה, טארק מלחי (אבו-נון) ומחמד מצלח (אבו טנטחה) דיווחו לנאשם כי ביצעו פיגוע ירי באמצעות הרכב וכלי הנשק הנ"ל וכי כתוצאה מכך נפצע נהג יהודי.

ת.ת. 444/02 מתוקן

**פרט שניים-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו
של אחר, דהיינו:

ויאד חמודה יעקוב חמודה ביחד עם מאמון בסאם עבדאללה אבו-שמה, היוזם עזאם, סעיד
אבראהים ואחמד אבו אלפם, במועד האמור, החליטו לבצע פיגוע ירי כנגד היישוב פסגות במסתרה
לגרום למותם של אזרחים ישראליים.

האנשים הנ"ל נמצאו אל משרדו של מרואן ברנוזי, ראש "התנזים" של הפתיח". האנשים הנ"ל
נפגשו עם מרואן ברנוזי וביקשו מהאחרון לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים
ישראליים ביישוב פסגות. מרואן ברנוזי שמח לשמוע את התכנית הנ"ל לבצע פיגוע ירי לעבר
היישוב פסגות והבטיח לספק כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

לאחר כשבוע ימים, ויאד חמודה וחבריו הנ"ל נפגש שוב למשרדו של מרואן ברנוזי ברמאללה.
מרואן ברנוזי לא היה באותה העת במשרדו והנאשם היה זה ששוחח עם ויאד חמודה וחבריו
הנ"ל. הנאשם הבטיח לדבר עם מרואן ברנוזי בנוגע לבקשת חבריו הנ"ל לקבל כלי נשק לצורך
ביצוע פיגוע ירי לעבר היישוב פסגות.

לאחר כשלושה ימים, ויאד חמודה וחבריו הנ"ל ניגשו שוב אל משרדו של מרואן ברנוזי
ברמאללה. האנשים הנ"ל ביקשו מהנ"ל לקבל כלי נשק לצורך ביצוע פיגוע ירי לעבר
היישוב פסגות. מרואן ברנוזי התקשר אל מחוד אבו חלאווה, פעיל צבאי בכיר בייתנזים" של
הפתיח. סוכם כי מחוד אבו חלאווה יפגוש את האנשים הנ"ל בכיכר מאהרה ברמאללה ושם ימסור
להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

ויאד חמודה וחבריו הנ"ל נפגשו עוד באותו היום, בכיכר מאהרה ברמאללה עם מחוד אבו חלאווה.
במהלך הפגישה האמורה, מהוד אבו חלאווה הבטיח להעביר לידיהם כלי נשק לצורך ביצוע פיגוע
הירי המתוכנן.

בלילה של אותו היום, הנאשם הגיע לביתו של ויאד חמודה באלבירה ומסר לידי ויאד חמודה
תמ"ק MP-5 וכדורים לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים. 

לאחר כשעה, ויאד חמודה יצא מביתו ביחד עם מאמון אבו-שמה בכרם של ויאד חמודה כשהם
מחזיקים בתמ"ק MP-5 הנ"ל. ויאד חמודה ומאמון אבו-שמה הגיעו למקום הנמצא בסמוך ליישוב
פסגות. שם השניים ירדו מהרכב. מאמון אבו-שמה ירה את כל הכדורים שמסר הנאשם בתמ"ק
MP-5 הנ"ל לעבר היישוב פסגות מתוך כוונה למותם של גרם ישראים של תושבי היישוב פסגות ושל חיילי
צה"ל שהיו ביישוב פסגות.

מיד לאחר הירי, ויאד חמורה ומאמון אבו-שמה חזרו ברכבם הנ"ל לרמאללה.

**פרט שלושה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 26.06.01 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:

הנאשם הנ"ל, בחודש יוני 2001 או בסמוך לכך, ברמאללה, בנסיבות המתוארות בפרט האישום
הקודם, מסר לידי ויאד חמודה יעקוב חמודה תמ"ק MP-5 לצורך ביצוע פיגוע ירי נגד אזרחים
ישראליים וחיילי צה"ל.

ויאד חמודה, במועד האמור, ביחד עם מאמון בסאם עבדאללה אבו-שמה ווהיוזם עזאם, יצא
מרמאללה לכיוון הכביש המוביל מפסגות ואב לגבעת הצרפתית עבירושלים, על מנת לבצע שם
פיגוע ירי ולגרום בכוונה למותם של אזרחים ישראליים. ויאד חמודה וחבריו הנ"ל יצאו כאמור
כשהם חמושים ברכבו MP-5, אשר נמסר להם למטרה זו על-ידי הנאשם כאמור לעיל, ובאזרח 9.
ויאד חמודה וחבריו יצאו לביצוע הפיגוע האמור כשהם מחזיקים בשרטוט של הגבעה הצרפתית
ששם תכננו לבצע את פיגוע הירי, אשר נערך על-ידי מאמון אבו-שמה.

ויאד חמודה וחבריו הנ"ל יצאו לביצוע הפיגוע האמור בהיאחם עם מחוד אבו חלאווה, ואף ביקש
מהאחרון כי יודיע למרואן ברנוזי, ראש "התנזים" של הפתיח, על מבצע הפיגוע ייתרגו
במהלך ביצוע פיגוע הירי המתוכנן. ויאד חמודה וחבריו לא הצליחו להגיע למקום שבו תכננו לבצע
את פיגוע הירי עקב נכחות גדולה של כוחות צה"ל באיזור רידומא.

ת.פ. 444/02 מתוקן

**פרט ארבעה-עשר:** (ת.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של יואל חירי, דהיינו:

1. הנאשם הנ"ל, בחודש אוגוסט 2001, ברמאללה או בסמוך לכך, נפגש עם מחמד עיד'רחמאן סאלם מצלח (מכונה "אבו סטאחי"). מחמד מצלח (אבו סטאחי) מסר לנאשם כי הכיר מספר מעילי "חמונוטמי של לופד'ית, אשר מבצעים פיגועי נגד לעבר אזרחים ישראליים. מחמד מצלח ביקש לקבל את אישורו של הנאשם להצטרף לחוליה הנ"ל ולבצע פיגועים נגד אזרחים ישראליים בכוונה לגרום למותם. הנאשם אישר למחמד מצלח להצטרף לפעילות האמורה.

2. מחמד מצלח נפגש עם מעילי "יהונגים" הנ"ל, שהם חוסאם עקל רובי שחאדה, פראס צאדק מחמד עיאמה למכונה "יאל חיטאוויי) וטאריק מלחי א-נוף. השלושה הנ"ל אמרו למחמד מצלח כי בכוונתם לבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים. השלושה ביקשו כי מחמד מצלח יספק להם כלי נשק לצורך ביצוע פיגוע חירי המתוכנן.

3. ביום 25.08.01, פנו אל מחמד מצלח פראס עיאמה, חוסאם שחאדה וטאריק א-נוף וביקשו לקבל עד בעותו היום כלי נשק לצורך ביצוע פיגוע חירי המתוכנן.

4. באותו היום, מחמד מצלח מנה אל הנאשם. מחמד מצלח ביקש מהנאשם לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים. לאחר זמן קצר, עד באותו היום, הנאשם מסר לידי מחמד מצלח תמי"ק MP-5 עם מחסנית המלאה בכדורים וזאת על מנת שהמחמד מצלח ובריו הנ"ל יבצעו באמצעותו פיגוע ירי ויגרמו למותם של אזרחים ישראליים.

5. בשעות הערב, באותו היום, ברמאללה או בסמוך לכך, מחמד מצלח מסר את תמי"ק MP-5 והתתמושמת הנ"ל לפראס עיאמה וחוסאם שחאדה, אשר הגיעו ברכב איסוזו טנדר של פראס, וזאת על מנת שפראס ובריו ובריו הנ"ל יבצעו באמצעות הנשק הנ"ל פיגוע ירי ויגרמו למותם של אזרחים ישראליים.

6. מיד לאחר קבלת הנשק, פראס עיאמה, חוסאם שחאדה, הייתם אלמנומאד חמדאן ועלי עלויאן יצאו מרמאללה לכיוון כביש 443 במטרה לבצע שם את פיגוע חירי המתוכנן. האנשים הנ"ל נסעו בשני כלי רכב - האחד, איסוזו טנדר של פראס עיאמה והשני רכב סובארו נוב סתבויא עלי עלויאן לצורך ביצוע הפיגוע המתוכנן.

7. בהגיעם לכביש 443, פראס עיאמה המשיך לנסוע לבדו ברכב האיסוזו, בקילומטר לפני רכב הסובארו שבו נסעו חוסאם, הייתם ועלי עלויאן, על מנת לחדיש לחבריו הנ"ל על מחסומי צה"ל והמשטרה בדרך.

8. כל האנשים הנ"ל נסעו בכביש 443 לכיוון תל-אביב, כאשר עלי עונ ברכב הסובארו, לידו ישב הייתם חמדאן, החמטש ברוסידי קלצ'ניקוב, ובמושב האחורי ישב חוסאם שחאדה, החמטש בתמי"ק MP-5, אשר אותו טיפס הנאשם.

9. באותו היום, 25.08.01, סמוך לשעה 22:30, ליד תחנת הדלק "דור ארגוני", הבחינו בנסעי רכב הסובארו הנ"ל ברכב פולקסווגן פאסאט, מ.ר 6902818, אשר בו נסעו בני הזוג יואל ושרון בן שלום ז"ל עם שני ילדיהם הדרוני יוסף סורר ז"ל.

10. עלי עלויאן, שנהג ברכב הסובארו, עקף את רכב הפולקסווגן הנ"ל נסע במבצל אליו. בשלב זה, הייתם חמדאן וחוסאם שחאדה פתחו באש אוטומטית בתמי"ק MP-5, אשר אותו טיפס הנאשם, וברוסידי קלצ'ניקוב, לעבר רכב הפולקסווגן הנ"ל במטרה לגרום למותם של נסעיו.

11. מספר רב של הקליעים שורו על-ידי הייתם ועלי היריהם חמדאן וחוסאם שחאדה פגעו ברכב הפולקסווגן ובנוסעיו.

12. לאחר שנוסעי רכב הסובארו הבחינו כי רכב הפולקסווגן נסע בזיגוג, הם האיעו את המהירות ונמלטו לכפר בית ליקיא. שם המתינו להם פראס עיאמה. עלי עלויאן, חוסאם שחאדה והייתם חמדאן עד לרכב האיסוזו של פראס עיאמה ונסעו לכפר בית סיריא, שם הם הסתתרו את כלי הנשק בסמוך לביתו של הייתם חמדאן. לאחר מכן, חוסאם שחאדה, פראס עיאמה, הייתם חמדאן ועלי עלויאן חזרו לרמאללה ברכבו של פראס עיאמה.

13. מיד לאחר חזרתום לרמאללה, מחמד מצלח נפגש בעין אום שרואיט עם פראס עיאמה, אשר דיווח למחמד מצלח על הפיגוע שבוצע באמצעות הנשק שמסר למטרות זו על-ידי הנאשם.

14. לאחר מספר ימים, פראס עיאמה הביא את תמי"ק MP-5 הנ"ל מבית סיריא והחזירו למחמד מצלח. מחמד מצלח העביר את כלי הנשק לידי הנאשם הנ"ל לאחרחן על פיגוע חירי שבוצע בכלל הנשק הנ"ל.

15. הנאשם העביר למבצעי הפעולה הנ"ל סכום של 500 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את הכסף הנ"ל הנאשם קיבל מידי עלי פרני ברמאללה.



7

ת.ת. 444/02 מתוקן

16. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותו של **יניב בן שלום ז"ל**, אשר נפטר כתוצאה מפגיעות קליעים בראשו ובגבו, אשר נורו מתמ"ק MP-5 המתואר לעיל, ומרוסי"ר קלצ'ניקוב על-ידי היותם חמדאן וחסאם שחאדה.

## פרט חמישה-עשר: (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, גרם בכוונה למותה של **שרון בן שלום ז"ל**, אשר נפטרה כתוצאה מפגיעות קליעים בראשה ובגבה, אשר נורו מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, וברוטי"ר קלצ'ניקוב.

## פרט שישה-עשר: (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, גרם בכוונה למותו של **דורון יוסף סודרי ז"ל**, אשר נפטר כתוצאה מפגיעות קליעים, אשר נורו מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, ומרוטי"ר קלצ'ניקוב.

## פרט שבעה-עשר: (פ.א. 2159/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, ניסה לגרום בכוונה למותם של נוסעי רכב פולקסווגן פאסאט, האמור בפרט האישום הארבעה-עשר. כתוצאה מחיץ שבוצע כאמור בפרט האישום הארבעה-עשר מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, ומרוטי"ר קלצ'ניקוב, נפצעה באורח קל מרטיסים ברגלה בתם של בני הזוג בן שלום ז"ל.

8

**פרט שמונה-עשר:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש ספטמבר 2001 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, איורון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת צימורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליירבות, השפעקנת, החשמלת, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנו נאצר מחמד יוסף נאג'י (אבו-חמזה) - ראש יחידיד חללי אלאקצא" - זרוע הצבאית של "התנזים" של הפת"ח באיזור, תאכן מלחף א-נוף ועבדאללה שואלבקה. האנשים הנ"ל סיפרו לנאשם כי הם יצרו מרגמה וגם רכשו פצצות מרוממו במוורה 1,500 ש"ח. האנשים הנ"ל ביקשו מהנאשם לתת להם כסף, אשר אותו שילמו תמורת פצצות המרגמה הנ"ל. האנשים הנ"ל אמרו כי בכוונתם לירות את פצצות המרגמה הנ"ל לעבר הישבות פסגות.

הנאשם טען בפני האנשים הנ"ל כי אם הם יצליחו לירות את פצצת המרגמה הנ"ל על הישבוש פסגות, הוא ישלם להם לאחר את הכסף עבור הפצצה.

מאוחר יותר, באותו הלילה, האנשים הנ"ל חזרו אל הנאשם והודיעו לו כי הם אכן ירו את פצצת המרגמה הנ"ל לעבר הישבות פסגות. האנשים הנ"ל מסרו לנאשם כי אינם יודעים איפה בדיוק נפלה פצצת המרגמה אותם ירו. לאור האמור, הנאשם שירב לשלם לאנשים הנ"ל כסף עבור פצצת המרגמה הנ"ל.

מאוחר יותר, הנאשם נודע אודות ירי פצצת המרגמה לעבר הישבוש פסגות על-ידי האנשים הנ"ל למראאן ברנטיר - ראש "התנזים" של הפת"ח.

7 **פרט תשעה-עשר:** (ת.א. 7915/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, גרם בכוונה למוות של אדר, דהיינו:

1. אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטראחין", אשר מסר כי פנה אליו פראס צאדק מהאני עיאמן (המכונה "אל חיטאווי") ביחד עם אדם נוסף וביקשו לקבל תמיק MP-5 על מנת לבצע באמצעותו פיגוע ירי במטרות נגרים למוות של אזרחים ישראליים. מחמד מצלח ביקש כי הנאשם ימסור לו את תמיק MP-5, אשר אותו בעד מסר למחמד מצלח לפני כן לצורך ביצוע פיגועי ירי.

2. הנאשם הסכים לספקק את כלי הנשק המבוקש לצורך ביצוע פיגוע הירי המתוכנן.

3. הנאשם הפנה את מחמד מצלח אל חאלד שוויש לצורך קבלת תמיק MP-5 הנ"ל. מחמד מצלח פנה אל חאלד שוויש וקיבל מהאחרון תמיק MP-5 של הנאשם, כמו כן, הנאשם מסר לידי וסאפה עקל לצור שתאודה אקדה 14 לצורך ביצוע פיגוע הירי המתוכנן.

4. מאוחר יותר באותו היום, מחמד מצלח מסר את תמיק MP-5 הנ"ל לפראס עיאמן במטרה שהאנשיו יבצע באמצעותו פיגוע ירי ויגרום למוות של אזרחים ישראליים.

5. יותר מאוחר באותו היום, מחמד סאמר אברהים עבדאללה נפגש ברמאללה עם חוסאם עקל רג'ב שחאדה, פראס צאדק מחמד עיאמן (המכונה "אל חיטאווי"), הייתם אלמנותפ חמדאן ועלי עלוני. חוסאם שחאדה הנגע לפושים הנ"ל כשהוא חמוש בתמיק MP-5 ואקדה 14, אשר אותו סיפק הנאשם כאמור לעיל לצורך ביצוע פיגוע ירי.

6. בסביבות השעה 22:00, ביום 15.09.01, האנשים הנ"ל נסעו ברכבם מרמאללה לירושלים ברכב איטוזו סור של פראס עיאמן.

   פראס עיאמן נהג ברכב האיסוזו הנ"ל ונסע ביחד עם מחמד עבדאללה וחברו על מנת לההראאלה לחם מתוך שובו יבצעו את פיגוע הירי המתוכנן. כי על מנת להראאלה לחבריה איך להמפומלט לאחר ביצוע הפיגוע האמור. פראס עיאמן הסיע את חבריו לכביש מס' 9 המחבר בין שכונות רמות לבין שכונת הגבעה הצרפתית בירושלים. פראס עיאמן הראה חבריו איפה לבצע את

P 5: 160

הפגיעה המתוכנן ואיך להימלט לאחר מכן. בסיום הסיור האמור, החזרנו תנ"ל חזרה לרמאללה.

8. בסביבות השעה 22:30, באותו היום, נפגש עבדאללה ביחד עם חוסאם שחאדה והיו"נ"מ חמדאן ונסע ברכב גוב בצבע אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם עלי עליאן לצורך ביצוע הפיגוע המתוכנן (להלן : הרכב). למרחק נסע פראס עיאגם ברכב האישווו תנ"ל וזאת על מנת להדריך באמצעות טלפון סלולרי לחבריו על מחסומי משטרה וצה"ל.

9. מחמד עבדאללה נהג ברכב תנ"ל, לידו ישב חוסאם שחאדה, החמוש בתמ"יק MP-5, אשר אותו סיפק השאום, ובמושב האחורי ישב היו"נ"מ חמדאן, החמוש באקדח 14, אשר גם אותו סיפק השאום.

10. החבורה תנ"ל נעצרה בכביש מס' 9 בסמוך לצומת המוביל לשכונת רמת שלמה וחמתינה לרכב ישראלי בודד שיגיע למקום בסמוך לבצע לעבור פיגוע ירי ולגרום למוותם של נוסעי הרכב.

11. לאחר מספר דקות, בסמוך לשעה 23:10, הגיע למקום רכב רנו אקספרס לבן, מ.ר. 2273706, (להלן : הרכב) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

12. מחמד עבדאללה החל לנסוע אחרי הרנו ועקף אותו.

13. כשהרכב נסע במקביל לרנו, חוסאם שחאדה והיו"נ"מ חמדאן פתחו באש בתמ"יק MP-5 ובאקדח 14, אשר אותם סיפק השאום, לעבר נוסעי הרנו במטרה לגרום למוותם.

14. מספר קליעים שנורו על-ידי חוסאם שחאדה והיו"נ"מ חמדאן פגעו ברנו ובשני נוסעי הרנו – משה וייס ומאיר וייספיש ז"ל. לאחר מכן, מחמד עבדאללה המשיך לנסוע לכיוון שכונת רמות ובסמוך למקום שבו בונים גשר חדש פנה ימינה לדרך עפר המובילה לכיר נבאללה.

15. לפני הכניסה לכיר נבאללה, מחמד עבדאללה וחבריו שהיו עמו ברכב נפגשו עם פראס עיאגם שהמתין להם במקום ברכב האישווו. משם כולם ביחד המשיכו מסיעה לכיר נבאללה ולאחר מכן נמלטו לרמאללה.

16. במעשיית המתוארים לעיל, השאום גרם בכוונה למוותו של מאיר וייספיש ז"ל, אשר נפטר בבית החולים מאוחר יותר באותו היום כתוצאה מפגיעת הקליעים שנורו על-ידי חברו השאום בתמ"יק MP-5 ובאקדח 14, אשר אותם סיפק השאום.

## פרט עשרים: (ת.א. 7915/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ו-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** השאום תנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למוותו של אחר, דהיינו :
השאום תנ"ל, במועד האמור, בסמוך לשעה 23:10, במקום המתואר בפרט האישום הקודם, במעשיית האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למוותו של משה וייס, אשר נהג ברכב רנו אקספרס לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי חברי השאום, כפי שתואר בפרט האישום הקודם, מעד בראשו של משה וייס ופצע אותו באורח קשה.

## פרט עשרים ואחד: (ת.פ. 481/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ו-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** השאום תנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למוותו של אחר, דהיינו :

1. השאום תנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, נפגש עם מחמד ערדמאן סאלם מגלת (מכונה "אבו סטחאה"), מחמד מגלת ביקש מהשאום לקבל תמ"יק MP-5, תחמושת לתמ"יק MP-5 תנ"ל וכן רכב לצורך לבצע פיגוע ירי נגד אזרחים ישראליים בירושלים בכוונה לגרום למוותם.

2. מחמד ערדמאן סאלם מגלת (מכונה "אבו סטחאה") מסר לשאום כי הוא תכנן לבצע את הפיגוע המתוכנן ביחד עם מחמד סאמי אברהים עבדאללה, חוסאם עקל רביע שחאדה ופראס צאדק מחמד עיאגם (המכונה "אל חיטאווי").

P 5 184

3. תחילה התאמם אמר למחמד מצלחה לבצע את הפיגוע המתוכנן מרכבו של פראס עיאמנ. אך מחמד מצלח טען כי יש צורך בשני כלי רכב, כאשר אחד ייסע המתרמיעים והיורים ייסעו ברכב השני. לאור האמור, התאמם מסר למחמד מצלח רכב מזדה 323 גוב, הנושא לוחיות רישוי ישראליות, אשר אותו רכש לצורך כך מידי איאד אלשאפעי תמורת 5,000 ש"ח.

4. לצורך ביצוע פיגוע הירי המתוכנן, התאמם מסר למחמד מצלח תמ"ק MP-5 ותחמושת לתמ"ק MP-5 הנ"ל.

5. ביום 03.10.01, מחמד מצלח יצא מרמאללה לכיוון ירושלים במטרה לבצע שם את פיגוע הירי המתוכנן כשהוא מחזיק בתמ"יק MP-5 הנ"ל ונוסע ברכב המזדה הנ"ל, אשר בו נהג מחמד עבדאללה.

6. פראס עיאמנ וחותאם שהאחזו נסע ברכב איסוזו טנדר של פראס עיאמנ לפני רכב המזדה שבו נסע מחמד מצלח וחותאם בזאת במטרה להודיע על מחסומיי המשטרה וצה"ל בדרך.

7. חבריו הנ"ל הגיעו לבית חניה החדשה בירושלים. שם מחמד עבדאללה החנה את רכב המזדה ובחזרו עם שאר חבריו הסתירו בתוך הרכב את תמ"יק MP-5 הנ"ל.

8. מחמד מצלח ומחמד עבדאללה עלו לרכב האיסוזו ומשם המשיכו ברכב האיסוזו ביחד עם פראס עיאמנ וחותאם שהאחזו לכיוונ כביש בנין.

9. חבריו הנ"ל התאמם הגיעו לכביש בנין. שם, פראס עיאמנ הראה לשאר חבריו איפה לבצע את פיגוע הירי המתוכנן ואיך להזעיק לאחר ביצוע פיגוע הירי. חבריו הנ"ל של התאמם החליטו לבצע את פיגוע הירי המתוכנן במזדה הראשונה של כביש בנין מכיוונ רמות בשל עד מנת שכן ישמעו את קולות הירי. לאחר מכן, כל האנשים הנ"ל חזרו לבית חניה, למקום שבו השאיר רכב המזדה הנ"ל.

10. מחמד מצלח עלה לרכב המזדה כשהוא חמוש בתמ"יק MP-5 הנ"ל, ואילו מחמד עבדאללה נהג ברכב המזדה האמור. מחמד מצלח ומחמד עבדאללה נסעו ברכב המזדה לכביש בנין במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראליים.

11. מחמד מצלח ומחמד עבדאללה נסעו בכביש בנין הלוך ושוב מספר פעמים כשהם מחפשים רכב ישראלי בודד במטרה לבצע לעבר את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי הרכב.

12. בסמוך לשעה 23:35, כשהם נוסעים לכיוונ צפון, במחברות האחרונה בכיוונ נסיעתם, מחמד מצלח ומחמד עבדאללה הבחינו ברכב הונדה אקורד, מ.ר. 1103217, הנוסע בכביש בנין לכיוונ צפון. ברכב ההונדה נסעו טומי עמיאל, פיני מימון ופזית מימון.

13. מחמד עבדאללה עקף את רכב ההונדה הנ"ל. בעת שמחמד עבדאללה נסע במקביל לרכב ההונדה הנ"ל, מחמד מצלח ירה כדור אחד בתמ"יק MP-5, אשר אותו סיפק התאמם, לעבר נוסעי רכב ההונדה, בכוונה לגרום למותם. תקליע שנורה על-ידי מחמד מצלח לא פגע ברכב ההונדה הנ"ל.

14. לאחר ביצוע פיגוע הירי האמור, מחמד מצלח ומחמד עבדאללה המשיכו בנסיעתם לכיוונ כביש מס' 9 המחבר בין שכונת רמות לשכונת הגבעה הצרפתית.

## v פרט עשרים ושניים: (ת.א. 8379/01 צי"ן)

### א'4) מהות העבירה: נסיונ לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרונ) (מס' 378), התשל"ת-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרונ) (מס' 225), תשכ"ח-1968.

ב'8) פרטי העבירה: הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. לאחר שמחמד ערחמאנ סאלם מצלח (מכונה "יאבו סטחה") ומחמד סאמי אברהים עבדאללה ביצעו את פיגוע הירי כפי שתוארו בפרט האישום הקודם, השניים המשיכו בנסיעה ברכב המזדה, אשר אותו סיפק הנאשם כפי שתואר בפרט האישום הקודם, לכיוונ כביש מס' 9, המחבר בין שכונת רמות לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חניה וחזרתם לרמאללה.

2. במהלך הנסיעה הנ"ל, מחמד מצלח, על-פי בקשתו של מחמד עבדאללה, בדק את תקינותו של תמ"יק MP-5, אשר אותו מסר הנאשם, ואף ירה מספר כדורים באוויר.

3. במהלך הנסיעה בכביש מס' 9 הנ"ל, בסמוך לשעה 23:45, מחמד מצלח ומחמד עבדאללה הבחינו ברכב סקודה, מ.ר. 6567709, אשר נסע בכביש מס' 9 לכיוונ הגבעה הצרפתית. ברכב הסקודה הנ"ל נסעו מלכה כהן ופנחס כהן.

4. מחמד עבדאללה, אשר, כאמור, נהג ברכב המזדה, עקף את רכב הסקודה.

5. בעת שמחמד עבדאללה נסע במקביל לרכב הסקורה הנ"יל, מחמד מצלח ירה בתמ"ק MP-5, אשר אותו סיפק להם הנאשם לצורך ביצוע פיגוע היירי כפי שנואר במרס האישום הקודם, מספר יריות לעבר רכב הסקורה הנ"יל בכוונה לגרום למותם של נוסעי רכב הסקורה.

6. מספר קליעים שנורו על-ידי מחמד מצלח פגעו ברכב הסקורה. שני קליעים שנורו על-ידי מחמד מצלח פגעו בפגוש כון וקליעו נוסף פגע במלכה כון.

7. פנחס כהן נפצע באזורי בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע ה-28 להריון, נפצעה באזורי בינוני מפגיעת קליע ברגלה.

8. לאחר ביצוע פיגוע היירי האמור, מחמד מצלח ומחמד עבדאללה המשיכו בנסיעה לכיוון הכפשה הצרפתית ומשם הגיעו לבית חנינא החדשה. שם, מחמד מצלח ומחמד עבדאללה החנו את רכב המזרה הנ"יל ויצרו קשר טלפוני עם חוטאם עקל רגיב שאחדה ופראס צאדק מחמד עיאמן (המכונה "אאל ואוטמאווי"), אשר הגיעו למקום ברכב האיסוזו של פראס עיאמן על מנת לאסוף את מחמד מצלח ומחמד עבדאללה, וזאת לפי התכנון האמור במרס האישום הקודם.

9. מחמד מצלח ומחמד עבדאללה הסתירו את תמ"ק MP-5 הנ"יל ברכב האיסוזו ועלו לרכב האיסוזו.

10. כל ארבעת אנשים הנ"יל ניסו לחזור מירושלים לרמאללה, אך לא הצליחו לעשות כן בגלל מחסומי צה"ל והמשטרה. חברי הנ"יל של הנאשם נשארו ללון אצל יאסר אבו אלחטיב, חברו של חוטאם שהאדה, בבית חנינא החדשה בירושלים.

11. יום למחרת, 04.10.01, מחמד מצלח חזר ברכבו של פראס עיאמן לרמאללה.

12. לאחר חזרתו לרמאללה, מחמד מצלח דיוה לנאשם אודות הפינועים שביצע בעזרת רכב המזדה ותמ"ק MP-5, אשר אותם קיבל מהנאשם.

## מרס עשרים ושלושה:

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ל-1970 וסעיפים 14(א) 1-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"יל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"יל, בסוף שנת 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, בעת שהיה עם מרואן ברגותי, ראש "התנזונים" של הפתייח, נפגש עם נאסר מחמד יוסף אבו -חמיד - ראש יעודדי חללי אלאקצאיי - הזרוע הצבאית של "התנזונים" של הפתייח. נאצר אבו-חמיד סיפר למרואן ברגותי על כוונותיו לרכוש מרומה ומצצות מרנמה לצורך ביצוע ירי מרנמות לעבר היישובים הישראליים בכוונה לגרום למותם של אזרחים ישראליים. נאצר אבו-חמיד ביקש ממרואן ברגותי לקבל סיוע כספי לצורך רכישת המרומה ומצצות מרנמה. מרואן ברגותי סירב למסור את הסיווע הכספי המבקוש והמכן את מבשם את נאצר אבו-חמיד את הנאשם הזה כי אין כל צורך לשלם הרבה כסף עבור מרנמה ומצצות מרנמה שהרי ברשותו של הנאשם כבר יש מרומה מאולתרת ומצצות מרנמה.

בתחילת שנת 2002, הנאשם המנה את נאצר אבו-חמיד ואת חברו של האחרן - פעיל צבאי בכיר ביעודדי חללי אלאקצאיי - מהנד אבו אלאווה אל ביתו של הנאשם על מנת שיקבלו שם את המרנמה ואת מצצות המרנמה הנ"יל.

נאצר אבו חמיד, מהנד אבו אלאווה ונעבאסט אכן קיבלו את המרנמה המאולתרת הנ"יל וכן 5 פצצות מרנמה.

נאצר אבו-חמיד, ביחד עם חבריו הנ"יל, ירה באמצעות המרנמה המאולתרת הנ"יל פצצת מרנמה לעבר יישבו פסגות בכוונה לגרום למותם של תושבי היישוב הנ"יל ושל חיילי צה"ל שהיו בישוב הנ"יל. פצצת המרנמה הנ"יל לא פגעה ביישוב פסגות והתפוצצה בסמוך אליו.

לאחר הפיגוע הנ"יל, נאצר אבו-חמיד דיווח למנשם על מה שקרה. הנאשם לקח את נאצר אבו-חמיד אל מרואן ברגותי על מנת שידווח גם למרואן ברגותי אודות פיגוע ירי פצצת מרנמה שבוצע לראשונה באיזור.

12

P 5 186

✓ **פרט עשרים וארבעה: (פ.א. 39/02 בנימין)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או בסמוך למועד זה, גרם בכוונה למותו של אדם, דהיינו:

1. ביום 14.01.02 הנהו ראאד כרמי אשר היה פעיל צבאי בכיר ב"תנזים" של ארגון הפת"ח, שהוא התאחדות בלתי מותרת. בעקבות מותו של ראאד כרמי הנ"ל, ראש "התנזים" של המפת"ח באיזור - מרואן ברגותי פתח אוהל אבלים בלבירה.

2. הנאשם הנ"ל, ביום 15.01.02, באוהל האבלים הנ"ל, נפגש עם מחמד ערדמאן סאלם מצלח (מכונה "אבו סטואחה"), מחמד סאמי אבראהים עבדאללה, פראס צאדק מחמד עיאש (המכונה "אבל חיטאואוי"), טארק מלחי א-נוף וזידאן מאדרב אל בזור.

3. הנאשם מסר לחבריו הנ"ל כי מרואן ברגותי, ראש "התנזים" של המפת"ח באיזור, מבקש כי הם יבצעו באופן מיידי פיגוע נקמה על מותו של ראאד כרמי הנ"ל וירצחו למותם של אזרחים ישראלים.

4. לצורך ביצוע הפיגוע האמור, הנאשם מסר לחבריו הנ"ל, תמ"ק MP-5, אקדח 16, וקן רכב, מזרם, הנשא לוחות הרכב הנ"ל.

5. חבריו הנ"ל של הנאשם, באוהל האבלים הנ"ל, החליטו כי, לאור דרישתו של הנאשם, יבצעו עוד באותו הערב פיגוע בתחנת דלק הנבנית הממצאה בכביש 443 בסמוך לכניסה לבעת זאב וזאת בכוונה לגרום למותם של אזרחים ישראליים.

6. בשעות הערב באותו היום, 15.01.02, מחמד עבדאללה יצא מאוהל האבלים הנ"ל ביחד עם פראס עיאש. מחמד עבדאללה ופראס עיאש נסעו ברכב איסוזו טנדר של פראס עיאש לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן. אחרי רכב האיסוזו הנ"ל נסעו מחמד מצלח, החמוש באקדח 14, זידאן מאדרב, החמוש באקדח 16 הנ"ל, וטארק א-נוף, החמוש בתמ"ק MP-5 הנ"ל. השלושה נסעו ברכב מזדה, אשר אותו קיבל לצורך כך מהנאשם.

7. חבריו הנ"ל של הנאשם הגיעו עד עמדת עפר החוסמת את הכניסה מכפרים ביר נבאללה ואנעבתא לכביש 443 במרחק של כ-100 מטר מתחנת הדלק הנבנית. חבריו הנ"ל של הנאשם חנו את כלי הרכב שלהם, איסוזו ומזדה, עם פניהם לכיוון הכפר ביר נבאללה על מנת שיוכלו להימלט מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

8. מחמד מצלח, החמוש באקדח 14, זידאן, החמוש באקדח 16, וטארק א-נוף, החמוש ב-5-MP, ירדו מכלי הרכב וחלכו לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראליים.

9. מחמד עבדאללה ופראס עיאש נשארו בכלי הרכב הנ"ל על מנת לשמור שלא יגיע למקום סיור של צד"ל או אנשים אחרים. מחמד עבדאללה ישב בכיסא הנהג ברכב המזדה על מנת שיוכל למלט באופן מיידי את שלושת חבריו שיצאו לבצע את פיגוע המתוכנן מיד לאחר ביצוע הפיגוע.

10. מחמד מצלח וטארק א-נוף עמדו בכניסה לתחנת הדלק הנ"ל.

11. לאחר מספר דקות, בסמוך לשעה 19:45, מחמד מצלח וטארק א-נוף הבחינו ברכב פיאט אונו לבן, מ.ר. 6424905, שנכנס לתחנת הדלק הנ"ל ואשר בו נהגה יואלה חן ז"ל וילדה ישבה רש ברחל עיני.

12. מחמד מצלח וטארק א-נוף ניגשו אל רכב הפיאט הנ"ל במטרה לבצע בעברה ירי ולגרום למותם של נוסעות הרכב. נסעות רכב הפיאט הבחינו באקדח שבו החזיק מחמד מצלח והחל לצעוק ולצעור. מחמד מצלח הכניס את האקדח למכסייה ואמר לנוסעות הרכב שלא יפחדו.

13. בשלב זה, טארק א-נוף פתח באש אוטומטית בתמ"ק 5-MP, אשר אותו סיפק הנאשם, לעבר נוסעות רכב הפיאט בכוונה לגרום למותן. אז גם מחמד מצלח שב הוציא את אקדחו והחל לירות לעבר נוסעות הרכב בכוונה לגרום למותן.

14. מחמד מצלח וטארק א-נוף ירו מטוחח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל ולעבר רחל (רח) עיני שהיו ברכב הפיאט הנ"ל.

15. 2-28 קליעים, שירו על-ידי מחמד מצלח וטארק א-נוף, פגעו בשמשות הקדמית של הרכב, מספר קליעים פגעו בצד הרכב ובשמשות חלון דלת הנהג.

16. בתחלך ביצוע פיגוע הירי המתוכנן, זידאן, אשר עמד במרחק קצר מאחורי מחמד מצלח וטארק א-נוף, שימש כשומר ותצרית.

17. פראס עיאש, מיד לאחר שנשמע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת להודיע לחבריו אם יש מחסומים בדרך לרמאללה.

13



18. מחמד מצלח, טארק א-נוף וזידאן, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל רכב המזודה שבו המתין מחמד עבדאללה. לאחר ששלושתם הניחו על לרכב, מחמד עבדאללה הסיע אותם לרמאללה.

19. ברמאללה מחמד מצלח, טארק א-נוף, מחמד עבדאללה וזידאן נפגשו עם פראס עיאמם.

20. לאחר מכן, מחמד מצלח נפגש ברמאללה עם הנאשם, החזיר לו את תת תמיייס MP-5 ואת רכב המזודה, וכן דיווח על הפיגוע שביצע כמתואר לעיל.

21. כמעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של יהלום חן זייל, אשר נפטרה במקום כתוצאה מפגיעות הקליעים שנורו על-ידי מחמד מצלח וטארק א-נוף.

### פרט עשרים וחמישה: (פ.א. 39/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף (51א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשייל-1970 וסעיפים (14א) ו-19, לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכייח-1968.

**פרטי העבירה:** הנאשם הנייל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנייל, במועד האמור, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותו של רשל (רחל) עיני, אשר נסעה ברכב פראט אונו לבן, מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי הנאשם סאלם מצלח (מכונה "אבו סטחאי") וטארק מלחי א-נוף בכלי נשק שנמסרו להם על-ידי הנאשם לצורך ביצוע פיגוע הירי, כפי שתואר בפרט האישום הקודם, פגע בראשה של רשל (רחל) עיני) ושני קליעים נוספים פגע בכתפה השמאלי ופצעו אותה בארכה בינוני.

### פרט עשרים ושישה: (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף (51א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשייל-1970 וסעיף (14א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכייח-1968.

**פרטי העבירה:** הנאשם הנייל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם החליט כי ברצונו להוציא לפועל פיגוע התאבדות בתוך שטח של מדינת ישראל על מנת לגרום למותם של אזרחים ישראלים רבים ככל האפשר.

2. הנאשם הנייל פנה באמצעות טלפון אל נאצר מחמד עווים, פעיל בכיר בייתנזים" של הפתייח, שהוא התאחדות בלתי מותרת, בשכם. הנאשם ביקש מנאצר עווים לשלוח אליו אדם מחבל לבצע פיגוע התאבדות. הנאשם מסר לנאצר עווים כי הוא עצמו ידאג להכניס את המחבל המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.

3. לאחר מספר ימים, ביום 22.01.02, ברמאללה, הנאשם נפגש עם סעיד רמדאן, תושב כפר תל ובמפגש שם, אשר הודיע לנאשם כי נשלח על-ידי נאצר עווים לצורך ביצוע פיגוע התאבדות.

4. הנאשם התקשר אל מחמד ערהמאן סאלם מצלח (מכונה "אבו סטחאי") וביקש מהאחרון להגיע אליו.

5. מחמד מצלח נפגש עם הנאשם ועם סעיד רמדאן הנייל באותו היום ברמאללה. הנאשם ערך היכרות בין השניים. הנאשם ומחמד מצלח לקחו את סעיד רמדאן למסםורה על מנת שיתפור למי ביצוע פיגוע התאבדות המתוכנן.

6. לאחר מכן, הנאשם ומחמד מצלח התקשרו אל פראס צאדק מחמד עיאמם (מכונה "יהייטאווי") וביקשו מהאחרון להסיע מהמחבל המתאבד מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע בירושלים פיגוע התאבדות וירצח למותם של אזרחים ישראליים רבים ככל האפשר.

7. פראס עיאמם הגיע לרמאללה ביחד עם מחמד שאמי אבראהים עבדאללה, ואות לאחר שהאחרון הסכים להשתתף בהשתפ המחבל המתאבד מרמאללה לירושלים. פראס עיאמם הגיע לפגישה ברכב אישון בנתר עם לוחיות רשמי ישראליות.

8. לפי הוראתו של הנאשם, פראס עיאמם ומחמד עבדאללה ומחמד מצלח נסעו ברכב האישון הנייל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסום משטרה וצהייל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.



ת.ת. 444/02 מתוקן

P 5  188

9. מחמד עבדאללה ופראס עיאנם נסעו מרמאללה דרך ראפאת והגיעו לאיזור התעשיה עטרות, שם השעינו חזרו ככביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל לחמזוה רמוה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם השעינו פנו ימינה ונסעו עד לצומת חיזמה, שם הם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת הגבעה הצרפתית, שם השעינו פנו ימינה וחזרו לרמאללה. מחמד עבדאללה ופראס עיאנם ראו כי בדרך שבה נסעו ניתן להוביל את המחבל חמתבצד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

10. באותו הזמן, ברמאללה, התאמש ומחמד מצלח לקחו את סעיד רמדאן הנ"ל להתפלל ואף קנו עבור סעיד רמדאן הנ"ל אוכל, בגדים ועוללים חדשים. התאמש שילם בכסף שלו עבור הקניות הנ"ל סכום של 1,200 ש"ח.

11. מחמד מצלח, על-פי הוראות של התאמש, הביא רוסי"ר M-16 ו-3 מחסניות לרוסי"ר הנ"ל מלאות בכדורים, כאשר שתי מחסניות היו מחוברות בצולבת.

12. לפי התכנון של התאמש והברו הנ"ל, היה על סעיד רמדאן להגיע לירושלים ולירות שם באזרחים ישראליים בכוונה לגרום למותם עד שהוא עצמו יהרג מאש כוחות הביטחון הישראלים.

13. לאחר מכן, באותו היום, התאמש, מחמד מצלח וסעיד רמדאן נפגשו עם מחמד עבדאללה ופראס עיאנם באיזור הממלך "סיטי אין" באלבירה. התאמש הכיר למחמד עבדאללה ולפראס עיאנם את סעיד רמדאן.

14. התאמש הסביר למחמד עבדאללה ולפראס עיאנם כי סעיד רמדאן הנ"ל הוא המחבל המתאבד, אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשירית לעבר אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

15. מחמד עבדאללה ופראס עיאנם הסתירו את רוסי"ר M-16 והמחסניות הנ"ל ברכב האיסוזו הנ"ל.

16. התאמש ומחמד מצלח איחלו לסעיד רמדאן הצלחה והשלמה נסעו לירושלים. התאמש אמר למחמד עבדאללה ופראס עיאנם כי עליהם לקחת את סעיד רמדאן לבצע את פיגוע ההתאבדות בכל מקום לירושלים שהם יבחרו.

17. פראס עיאנם נהג ברכב האיסזוז, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ומחמד עבדאללה התיישב במושב האחורי.

18. מחמד עבדאללה ופראס עיאנם הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתואר לעיל.

19. בירושלים, מחמד עבדאללה ופראס עיאנם נסעו לרחוב שיחי גיראח. שם הם הוציאו את רוסי"ר M-16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד רמדאן. מחמד עבדאללה עבר לשבת בכיסא שליד סעיד רמדאן ואילו סעיד רמדאן עבר למושב האחורי, כשהוא מחזיק בידו את רוסי"ר M-16 ואת המחסניות.

20. מחמד עבדאללה ופראס עיאנם הסיעו את סעיד רמדאן לרחוב הנביאים.

21. במהלך הנסיעה, סעיד רמדאן התלונן בפני מחמד עבדאללה ופראס עיאנם כי הנעליים החדשות, אשר אותם קנה לו התאמש עבור הפיגוע, קטנות ולוחצות לו. מחמד עבדאללה הוריד את נעלי "ריבוק" ומסר אותן לסעיד רמדאן באומרו "תעלה נעל נעלי "ריבוקי"".

22. בהגיעם לצומת הרחובות שטראוס והנביאים, מחמד עבדאללה ופראס עיאנם עצרו את רכב האיסזוז.

23. מחמד עבדאללה ופראס עיאנם אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שירצה בו הרבה אנשים.

24. לאחר שסעיד רמדאן ירד מהרכב עם רוסי"ר M-16 והתחמושת, מחמד עבדאללה ופראס עיאנם נסעו מהמקום ברכב האיסזוז, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה.

25. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של מחמד עבדאללה ופראס עיאנם, הגיע לרחוב יפו.

26. בסביבות השעה 16:20, כשהוא עמד מול בית מס' 47 ברחוב יפו או בסמוך לכך, סעיד רמדאן טען את רוסי"ר M-16 שבו החזיק, צעק "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו. בתחנת האוטובוס שנמצאה במקום, בתוך אוטובוס "אגד" קו 27 שהיה באותה עת בתחנה הנ"ל וכן לעבר חאנים שהיו בתוך חנויות הסמוכות בכוונה לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך ממקדם ממקומים לעבר וחניון הנמצאה ברחוב הרב קוק. שם סעיד רמדאן החליף מחסניות וממשיך לירות לעבר האזרחים בכוונה לגרום למותם. סעיד רמדאן ירה ברוסי"ר M-16, שבו החזיק, מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים והשוטרים שהגיעו למקום.



ת.פ. 444/02 מתוקן                    15

P 5: 189

27. במעשיו המתוארים לעיל, הנאשם הנ״ל גרם בכוונה למותה של **אורה (סבסטלנה) סנדלר ז״ל,**
אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

28. לאחר שנודע לנאשם על ביצוע הפיגוע הנ״ל, הנאשם **נעש אל עלי פרֵג׳ ברעותי וקיבל מהאחרון**
סכום **של 1,000 דולר ארה״יב עבור ביצוע הפיגוע הנ״ל.** הנאשם נתן למחמד מצלח, מחמד
עבדאללה ופראס עיאאש 100 דולר ארה״יב לכל אחד עבור השתתפותם בהוצאה לפועל של
הפיגוע הנ״ל.

---

√ **פרט עשרים ושבעה:** (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס׳ 378), תשל״1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט
האישום הקודם, גרם בכוונה למותה של **שרה המבודיני ז״ל,** אשר נפטרה כתוצאה מפגיעות
הקליעים שנורו על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.

---

√ **פרט עשרים ושמונה:** (פ.א. 502/02 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס׳ 378), תשל״1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום העשרים ושישה, במעשיו המתוארים
בפרט האישום העשרים ושישה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל הניתן אשר היו
באותה עת ברחוב יפו ובקרבתו. כתוצאה מחירי שבוצע במקום על-ידי סעיד רמדאן, אשר נשלח
לביצוע הפיגוע האמור על-ידי הנאשם, **נפצעו מעל 45 אזרחים.**

---

√ **פרט עשרים ותשעה:** (פ.א. 502/02 ציון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס׳ 378), תשל״1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום העשרים ושישה, במעשיו המתוארים
בפרט האישום העשרים ושישה, פגע במזיד ושלא כדין ברכוש רב הכולל חנויות ברחוב יפו, תחנת
אוטובוס ״אגד״, אוטובוס ״אגד״ קו 27 וכן כלי רכב רבים, אשר נפגע כתוצאה מחירי שבוצע
במקום על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.



16

ת.ת. 444/02 מתוקן

## V פרט שלישים :

**מהות העבירה:** ניסיון לגרום מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרט העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :

1. הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם זאהר עראיאת ערד'מאן רימאווי.

2. זאהר רימאווי מסר לנאשם כי בן דודו, מוג'אהד חידר רימאווי, מוכן לבצע פיגוע התאבדות.

3. על-פי בקשתו של הנאשם, זאהר רימאווי ערך פגישה בין הנאשם לבין מוג'אהד רימאווי.

4. לאחר הפגישה הנ"ל, הנאשם הסכים להצעתו של זאהר רימאווי לשלוח את מוג'אהד רימאווי לבצע פיגוע התאבדות בירושלים על מנת שמוג'אהד רימאווי יגרום למותם של אזרחים ישראלים רבים ככל הניתן.

5. תוכנן כי מוג'אהד רימאווי יבצע פיגוע התאבדות באמצעות רובה, דהיינו יירה לעבר אזרחים ישראלים בירושלים בכוונה לגרום למותם של אזרחים ישראלים רבים ככל הניתן וישמיך לירות עד שיתחיל על-ידי כוחות הביטחון הישראליים.

6. הנאשם לקח מנשר לחלום מוחמד יוסף נאג'י (אבו-חמזי) רוסייר M-16 ומספר מחסניות לרוסייר הנ"ל מלאות בכדורים לצורך ביצוע פיגוע התאבדות המתוכנן.

7. הנאשם יצר קשר עם מחמד ואמג'אד אברהים עבדאללה, פראס צאדק מחמד עיאמג (המכונה "אל חיטאווי") וטארק מלאחי אבו-אנוף, על-פי בקשתו של הנאשם השלישה הנ"ל הגיעו לרמאללה ונפגשו שם עם הנאשם.

8. הנאשם מסר לחבריו הנ"ל כי הוא מבקש מהם להכניס לירושלים מחבל נוסע, אשר יבצע בירושלים פיגוע התאבדות, דוגמת הפיגוע המתואר בפרט האישום העשירים ושישה, במטרה לגרום למותם של אזרחים רבים ככל הניתן. חבריו הנ"ל של הנאשם הסכימו להשתתף בהסעת המחבל המתאבד הנ"ל לירושלים.

9. הנאשם מסר לידי מוחמד עבדאללה ופראס עיאמג רכב שבארו אמר, השייך למשפחתו של הנאשם. מחמד עבדאללה חזר עם רכב הסובארו לביתו בכפר נבאללה, ואילו פראס עיאמג נסע עם רכב איסוזו טנדר שלו לביתו בכפר עקב.

10. יום למחרת, הנאשם התקשר אל מחמד עבדאללה ופראס עיאמג והורה להם להגיע לתחנת הדלק המנאאת ברמאללה תחתא, לאסוף משם את המחבל המתאבד ולהסיע אותו לירושלים על מנת שיבצע שם את פיגוע התאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן.

11. מחמד עבדאללה נסע ברכב הסובארו עד למחסום קלנדיה, שם הוא החנה את הרכב ועלה לרכב האיסוזו של פראס עיאמג שהגיע למקום. משם המשיכו השניים למקום המפגש המאומן.

12. ברמאללה, בתחנת הדלק הנ"ל, מחמד עבדאללה ופראס עיאמג נפגשו עם הנאשם, אשר הציג בפניהם את מוג'אהד רימאווי שהנא המחבל המתאבד. הנאשם מסר לידי מוג'אהד רימאווי רוסייר M-16 הנ"ל ושלושה מחסניות ריק מלאות בכדורים לרוסייר M-16.

13. מחמד עבדאללה ופראס עיאמג הסתירו את רוסייר M-16 והמחסניות בתוך רכב האיסוזו.

14. מחמד עבדאללה ופראס עיאמג נסעו ביחד עם המחבל המתאבד לירושלים במטרה שהאחרון יבצע שם פיגוע יירי וגרום למותם של אזרחים רבים ככל הניתן.

15. מחמד עבדאללה, פראס עיאמג ומוג'אהד רימאווי הגיעו למחסום קלנדיה ועקפו אותו. לאחר מכן מחמד עבדאללה עבר לרכב הסובארו, שהשאיר במחסום קודם לכן ונסע לצומת א-ראם. מחמד עבדאללה עבר ברכב הסובארו את מחסום א-ראם והמתין במקום לפראס עיאמג ומוג'אהד רימאווי שעקפו את מחסום א-ראם ברגל. לאחר מכן, פראס עיאמג חזר, עלה לרכב האיסוזו, שבו חית מוטטור הנשק, ועבר את מחסום א-ראם כשהוא נסע לבד ברכב האיסוזו עם הנשק.

16. מחמד עבדאללה הסיע את המחבל המתאבד עד למסגד בשעפט. לשם הגיע גם פראס עיאמג ברכב האיסוזו עם הנשק והתחמושת.

17. שם, המחבל המתאבד, מוג'אהד רימאווי, ביקש להיכנס למסגד ולהתפלל לפני שיבצע את פיגוע התאבדות. מחמד עבדאללה ופראס עיאמג נשאר שם.

18. בזמן שמוג'אהד רימאווי התפלל במסגד האמור, מחמד עבדאללה ופראס עיאמג נסע ברכב הסובארו הנ"ל לבצע שאל שבירושלים במטרה לבדוק אם יש בדרך מחסומי צה"ל או משטרה. השניים החליטו להסיע את המחבל המתאבד לבצע שאל במטרה שיבצע שם את פיגוע הירי המתוכנן, וזאת מכיוון שיש במקום האמור אזרחים רבים.

19. כאשר מחמד עבדאללה ופראס עיאמג חזרו למסגד בשעפט על מנת לאסוף משם את מוג'אהד רימאווי ולהסיע אותו לבצע שאל במטרה שיבצע שם את פיגוע הירי המתוכנן, השניים לא מצאו את המחבל המתאבד במסגד.



ת.ה. 444/02 מתוקן

P 5: 191

20. מחמד עבדאללה ופראס עיאנם התקשרו אל הנאשם ודיווחו לו כי המחבל המתאבד ברח להם.
הנאשם חזרה למחמד עבדאללה ופראס עיאנם לחזור לרמאללה.

21. מחמד עבדאללה ופראס עיאנם חזרו לרמאללה, נפגשו שם עם הנאשם ומסרו לידיו את רכב הסובארו הנ"ל, את רוסי"ר M-16 הנ"ל ואת המחסניות הנ"ל. הנאשם החזיר את רוסי"ר M-16 הנ"ל לידי נצר לחלוט מחמד יוסף נאג'י לאבו-חמיד.

22. הנאשם מסר לואפר רימאווי כי בן דוד ג' נמלט בעת שהיה בדרכו לביצוע פיגוע ירי בירושלים.

**פרט שלושים אחד:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחונם כוחות צה"ל וחיילליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, גמל, רצף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מעגל, מוסד, או ציוד המשמש או מסוגל לשמש לתעופה, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם מחמד נאיפה המכונה "אבו רביע" ועם מכרים אחד יונס עויס. השניים הנ"ל מסרו לנאשם כי נמצא אצלם מחבל מתאבד וביקשו את עזרתו של הנאשם. הנאשם הסכים לעזור לשלוח את המחבל המתאבד אל תוך מדינת ישראל על מנת שיבצע פיגוע התאבדות וירצח מאזרחים של אזרחים ישראליים רבים ככל הניתן.
הנאשם הגיע לדירה ברמאללה שבה היו "אבו רביע", עברים עויס וכן אדם שרצה לבצע פיגוע התאבדות. הנאשם שוחח עם מחד בדר מחמוד אל-שאער (לזהל): המחבל המתאבד) והתרשם כי האחרון רציני בכוונותיו. המחבל המתאבד הנ"ל מסר לנאשם כי גם אביו היינו "ישהיד" מכיון שנהרג על-ידי חיילי צה"ל.
הנאשם העביר לידי אבו רביע רוסי"ר M-16 ו-1 מחסניות מלאות בכדורים על מנת שימסור אותם למחבל המתאבד הנ"ל לצורך ביצוע פיגוע ההתאבדות המתוכנן.
יום למחרת, הנאשם חזר לדירה הנ"ל עם מצעלאה וידאו. עברים צילם באמצעות מצלמת הוידאו הנ"ל את המחבל המתאבד הנ"ל כשהוא מקריא כרזו, וואת לקראת יציאתו לביצוע פיגוע ההתאבדות בתוך מדינת ישראל. הנאשם ותברי הנ"ל אימנו את המחבל המתאבד הנ"ל בשימוש וביירי ברוסי"ר M-16. לאחר מכן הנאשם העביר את המחבל המתאבד הנ"ל לידיהם של הנאשם ברמאללה תחבא. הנאשם הטיב לשאיר את המחבל המתאבד הנ"ל לישון בדירתו על מנת שייצא משם ביום שלמחרת לביצוע פיגוע ההתאבדות המתוכנן.
כאשר, למחרת בבוקר, הנאשם ועיכרים עויס הגיעו לדירתו המחבל המתאבד הנ"ל של הנאשם, השניים גילו כי המחבל המתאבד נעלם. לאור היעלמותו של המחבל המתאבד הנ"ל, התכנית הנ"ל לביצוע פיגוע ההתאבדות לא יצאה אל הפועל.

**פרט שלושים ושניים:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחונם כוחות צה"ל וחיילליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, גמל, רצף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מעגל, מוסד, או ציוד המשמש או מסוגל לשמש לתעופה, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם נצר מחמוד עויש, ראש "גדודי חללי אלאקצא", הזרוע הצבאית של "תהנזים" של הפתיית, באיזור שכם. נצר עויש תדריך לנאשם כי הוא שולח אליו שני מתבלים מתאבדים. סוכם בין הנאשם לבין נצר עויש כי הנאשם ידאג למסור למתבדים המתאבדים הנ"ל כלי נשק ורימוני-יד וכן ידאג להכניסם אל תוך תחום המעוה המעורבה של ירושלים על מנת שיבצעו שם פיגוע התאבדות כשידיהו לעבר אזרחים ישראליים, בכוונה לגרום

יצחק
ויינברג
YITZHAK
WEINBERG

18                    ת.פ. 444/02 מתוקן

למותם של אזרחים ישראליים רבים ככל הניתן, וימשיכו לירות עד שייהרגו על-ידי כוחות הביטחון הישראליים.

על-פי הוראתו של מאיר עווים הנ"ל, פעיל בכיר בייחדדי חללי על-פי הוראתו של מאיר עווים הנ"ל, פעיל בכיר בייחדדי חללי אלאקצא", שלח משבב ברמאללה, אל הנאשם, את סעדי ג'יהאד אף מקבול-עלי מקבול, ועלא מחמד עלי חסן (עגעזי) (מכונה "אסמואדי"), אשר אותם ליווה הנאשם ג'ימעו מוצטפא. השניים היו כבר חמושים בשני רימוני-יד.

סיפרי מקבול ועלא חסן היו אמורים לבצע את פיגוע ההתאבדות כפי שתכנן הנאשם ומאיר עווים.

במסגרת תהכנה לפיגוע ההתאבדות הנ"ל, בבית של מחמד אבו חדר, אחיו של אחמד אבו חדר הנ"ל, במחנה הפליטים בלאטה, אחמד אבו חדר צילם בא במצמצות מצלמת וידאו את סיפרי מקבול ואת עלא חסן כשהם אוחזים ברמים M-16. השניים אף קראו בפני מצלמת הווידאו כרוז של "יחדדי חללי אלאקצא". אחמד אבו חדר העביר לעלאת חסן וסיפרי מקבול אימון בשימוש בנשק לקראת ביצוע הפיגוע המתוכנן.

ביום 17.02.02, סיפרי מקבול ועלאת חסן יצאו משבב לרמאללה ביחד עם עלא מחמד ג'ימעה מוצטפא ואיינמו עלאת אצלה ברד. אחמד אבו חדר הסביר לארבעה כי עליהם לנסוע לרמאללה במונית של איימן ברד. אחמד אבו חדר הסביר כי עלא מוצטפא יהיה אחראי לכך שעלאת חסן וסיפרי מקבול יופעלו ברמאללה עם פעילי "יחדדי חללי אלאקצא", אשר יספקו לכם כלי נשק ויסתיע אותם לירושלים לפי התכנון הנ"ל.

הארבעה הנ"ל לא הצליחו להגיע לרמאללה ולהיפגש עם הנאשם לצורך החוצאת לפועל של פיגוע ההתאבדות המתוכנן. הארבעה נעצרו במחסום צה"ל, בסמוך לכפר דומא שבנפת רמאללה. שני רימוני-היד שהיו במוחית הנ"ל, פוצצו במקום על-ידי החבלך.

## פרט שלושים ושלושה:

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378, תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בואמצע חודש פברואר 2002 או במועד הסמוך לכך, קשר עם אדם אחד אחר לגרום בכוונה למותו של אחד, דהיינו:

הנאשם הנ"ל, ביום 15.02.02 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם מחמד סאמי אברהים עבדאללה, חוסאם עקל רג'יב שחאדה ופראס צאדק מחמד עיאנם למסכנם "אל חיתאווי".

במהלך הפגישה הנ"ל, הנאשם ביקש מהחברים הנ"ל להכניס לתוך ירושלים מחבל מתאבד, אשר יבצע שם פיגוע התאבדות במסתרה לגרום למותם של אנשים רבים ככל הניתן. חברי הנ"ל של הנאשם הסכימו להצעה האמורה. הנאשם הבטיח לשלם לחברי הנ"ל 300 דולר ארהי"ב בתמורה להובלת המחבל המתאבד לירושלים. הנאשם הודיע לחברי הנ"ל כי יביא אליהם את המחבל המתאבד בעד כיום-יומיים.

הנאשם אף נתן לחבריו הנ"ל רכב סוברת אפור, נשא לוחיות רישוי ישראליות, על מנת שחבריו הנ"ל יובילו בו את המחבל המתאבד לירושלים.

מחמד עבדאללה, פראס עיאנם וחוסאם שחאדה, תכנו להכניס את המחבל המתאבד לירושלים ברכב איסוזו טנדר של פראס עיאנם. חברי הנ"ל של הנאשם תכנו להוביל את המחבל המתאבד לאחד הכפרים המקומים בירושלים שיש בו הרבה אנשים על מנת שם מחבל המתאבד יבצע את פיגוע ההתאבדות המתוכנן. מחמד עבדאללה, פראס עיאנם וחוסאם שחאדה אף ערכו סיור בירושלים ובחרו את המקומות המתאמים לצעד לביצוע פיגוע ירי נגד אזרחים ישראליים. בין היתר, בחרו חברי הנ"ל של הנאשם במלון "רמדה", המתוחרת של כביש בגין וצומת הגבעה הצרפתית.

תכניתם הנ"ל של הנאשם וחבריו הנ"ל לא יצאה אל הפועל מכיון שביומיים לאחר הפגישה הנ"ל, ביום 17.02.02, חוסאם שחאדה נעצר על-ידי כוחות הביטחון הישראליים, וכעבור יום, ביום 18.02.02, פראס עיאנם נעצר על-ידי כוחות הביטחון הישראליים. ביום 19.02.02 או בסמוך לכך, ברמאללה, נפגש עם מחמד צאדק מחמד עיאנם, אחיו של פראס עיאנם הנ"ל, ועם טארק מלהי א-נוף. במהלך הפגישה האמורה, מחמד עבדאללה ומחמד עיאנם הסכימו לצעוד את טארק א-נוף להכניס מחבל מתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות במסתרה לגרום למותם של אנשים רבים ככל הניתן.

גם תוכנית זו לא יצאה אל הפועל מכיון שמחמד עבדאללה עצמו נעצר ביום למחרת, יום ה-20.02.02, על-ידי כוחות הביטחון הישראליים.

יצחק
וינברג
YITZHAK
WEINBERG
NOTARY

19

ת.ת. 444/02 מתוקן

פרט שלושים וארבעה: (ת.א. 483/02 שפט)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, באמצע חודש פברואר 2002, ברמאללה או בסמוך לכך, הנאשם התחליט לשלוח
מחבל מתאבד לירושלים על מנת שיבצע פיגוע ירי לעבר אזרחים ישראליים בכוונה לגרום
למותם אזרחים רבים כל היכן. הנאשם תכנן כי המתכנל הפגע ירה לעבר אזרחים
ישראליים עד שיהרג מאש כוחות הביטחון הישראליים.

2. הנאשם יצר קשר טלפוני עם מאצר מחמוד עוויס, פעיל צבאי בכיר ב"תנזים" של הפתיח,
שהוא התאחדות בלתי מותרת, בשכם. הנאשם ביקש מאצר עוויס לשלוח אליו לרמאללה
מחבל מתאבד לצורך ביצוע פיגוע והתאבדות המתוכנן.

3. לאחר מספר ימים, דאמי מחמוד מחמוד נור יצר קשר עם הנאשם והודיע לו כי הוא נשלח
על ידי מאצר עוויס לצורך ביצוע פיגוע והתאבדות המתוכנן וכי הוא נמצא ברמאללה.

4. על פי הוראתו של הנאשם, טארק מלאיח א-נוף נפגש עם ראמי נור. טארק א-נוף הביא את
ראמי נור אל הנאשם.

5. הנאשם שוחח עם ראמי נור ולאחר מכן לקח את ראמי נור למספרה על מנת שהאחרון יסתפר
לקראת ביצוע פיגוע והתאבדות המתוכנן.

6. הנאשם רכש עבור ראמי נור בגדים, אשר עבורם שילם מכיסו 1,000 ש"ח.

7. לאחר מכן, הנאשם הוכיל את ראמי נור לדירה ברמאללה, אשר בה התגוררו הנאשם, טארק
א-נוף וידיאו רמזיאו לחתקי: הדירה.

8. ביום 23.02.02, לדירה הגיע נם שריף מתמד יוסף מאיי (אבו-חמדי), אשר שהנם רוסי"ר M-16.
עבור ביצוע הפיגוע המתוכנן, אשר אותו קיבל מהנאשם. שריף מאיי (אבו-חמדי) אף הביא
מחסנית לרוסי"ר M-16 הנ"ל מביתם של אחיו, נאצר מאיי (אבו-חמדי).

9. בשעות הערב באותו היום, שריף מאיי (אבו-חמדי) וידיאו רמזאו מסרו לראמי נור מידע על
המקום שבו הוטל על ראמי נור לבצע את הפיגוע המתוכנן. הנאשם וחבריו הסבירו לראמי נור
כי עליו לבצע את הפיגוע המתוכנן בשכונת נוה-יעקב בירושלים, במקום, אשר לגביו שריף
מאיי וידיאו רמזאו אספו מידע קודם לכן.

10. הנאשם, ביחד עם אחרים, צילם את ראמי נור באמצעות מצלמת וידאו במסגרת ההכנות
לקראת ביצוע הפיגוע המתוכנן.

11. על-פי בקשתו של שריף מאיי (אבו-חמדי), אחיו – נסר (נלסם) מאיי (אבו-חמדי) פנה אל כאמל
עטאם ובקש מהאחרון להסיע את ראמי נור לירושלים.

12. ביום 25.02.02, בשעות הערב, ראמי נור יצא מרמאללה לכיוון ירושלים ברכבו של כאמל
עטאם, כאשר ברכב מוסתר רוסי"ר M-16 הנ"ל, המחסניות וכן רימון-יד, אשר אותו מסר
לראמי נור נסר (נלסם) מאיי (אבו-חמדי).

13. ראמי נור הגיע לכביש הראשי בשכונת נוה-יעקב בירושלים.

14. ראמי נור ירד מהרכב הנ"ל במקום האמור, כשהוא חמש ברוסי"ר M-16 הנ"ל, מחסניות
ורימון-יד. ראמי נור תתקרב אל תחנת האוטובוס של קו 25 של "אגד" הנמצאת במקום ופתח
באש אוטומטית ברוסי"ר M-16 הנ"ל לעבר כלי רכב שעברו במקום וכן לעבר אזרחים
ישראליים שהיו במקום בכוונה לגרום למותם של אנשים רבים ככל האפשר. למקום האמור
הגיעה ניידת המשטרה וראמי נור פתח באש אוטומטית לעבר שני שוטרי משטרת ישראל שהיו
בניידת הנ"ל בכוונה לגרום למותם. הכוחרים שנורו על-ידי ראמי נור פגעו בשני השוטרים
הנ"ל שהסתתרו לעבר ראמי נור וירו לעברו. כתוצאה מפגיעת הכוחרים שנורו על-ידי ראמי
נור, השוטרת גלית ארביב ז"יל נפצעה ונפלה על הקרקע. ראמי נור תתקרב אל השוטרת גלית
ארביב ז"יל וירה לעברה בירור נוסף ממרחק קצר. כתוצאה מפגיעות הקליעים שנורו על-ידי
ראמי נור, השוטרת גלית ארביב ז"יל נפטרה בעבור מספר שעות.

15. לאחר שלראמי נור נגמרה התחמושת הוא יידה את רימון-היד שהחזיק לעבר גייפ צה"ל
שנגע למקום בכוונה לגרום למותם של חיילי צה"ל. רק לאחר שראמי נור נפצע ונגמרה לו
התחמושת, השוטרים והאזרחים שהיו במקום הצליחו להשתלט עליו.

16. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של השוטרת גלית ארביב ז"יל.



20

ו.ק.ת. 444/02 מתוקן

√ **פרט שלושים וחמישה: (פ.א. 483/02 שפט)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיפים 14(ד) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, במעשיו המתוארים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של אזרחים ישראליים רבים בכך כל האפשר. כתוצאה מפגיעת הקליעים שגרו על-ידי ראמי מחמוד מחמוד גור, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, נפצעו שמונה אזרחים ושוטרים ישראליים.

√ **פרט שלושים וששה: (פ.א. 483/02 שפט)**

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(ד) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים וארבעה, במעשיו המתוארים בפרט האישום השלושים וארבעה, גרם במזיד ושלא כדין נזק רב לתוכנו האוטובוס של קו 25 של "אגד" בנוה יעקב, לבתים הסמוכים ולכלי רכב שהיו במקום הנ"ל, אשר נפגעו כתוצאה מהיריות שגרו על-ידי ראמי מחמוד מחמוד גור.

√ **פרט שלושים ושבעה: (פ.א. 4258/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, יצר קשר טלפוני עם נאצר מחמוד אבו שנב (להלן: "אבו-חמיד"), פעיל צבאי בכיר ב"תנזים" של פתח"ת, שהוא ההתאחדות בלתי מותרת, בשכם.
2. נאצר עוויס לאנשם, כי הוא שולח אליו מחבל מתאבד נוסף על מנת שהנאשם ישלח אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי. תוכנו כי המחבל המתאבד יירה לעבר אזרחים ישראליים רבים בכוונה לגרום למותם של אזרחים רבים כל היתכן וכי ימשיך לירות עד שייהרג מאש כוחות הביטחון הישראליים.
3. ביום 04.03.02, יצר עם הנאשם קשר אברהים חסונה, שוטר במשטרה הימית של הרשות הפלסטינית, אשר חזליץ כי הגיע לרמאללה על-פי הוראתו של נאצר עוויס וכי הוא המחבל המתאבד לצורך ביצוע פיגוע הירי המתוכנן. על-אור הוראתו של הנאשם, נארק מלחי א-נוף נפגש ברמאללה עם אברהים חסונה.
4. באותו היום, ברמאללה, טארק א-נוף נפגש עם שריף מחמוד יוסף נאצי (אבו-חמיד). במולך המיגשה האמורה, טארק א-נוף אינמסר לשריף נאצי אבו-חמיד) את אברהים חסונה.
5. טארק א-נוף הודיע לשריף אבו-חמיד כי הנאשם הביא את אברהים חסונה הנ"ל משכם על מנת שיבצע פיגוע התאבדות בכוונה לגרום למותם של אזרחים ישראליים רבים בכל האפשר.
6. על-פי הוראתו של הנאשם, טארק א-נוף לקח את אברהים חסונה למסתרה, על מנת שיסתתר לקראת ביצוע פיגוע ההתאבדות המתוכנן. כמו כן, טארק א-נוף ושריף נאצי אבו-חמיד) רכשו עבור אברהים חסונה בגדים חדשים. עבור הבגדים הנ"ל טארק א-נוף שילם 1,000 ש"ח, אשר אותם קיבל מהנאשם למטרה זו.
7. לאחר מכן, לפי הוראתו של הנאשם, טארק א-נוף הוביל את אברהים חסונה לדירת ברמאללה תחתא, אשר בה התגוררו טארק א-נוף, זיאד גדאן הנאשם (להלן: "הדירה").
8. הנאשם הגיע לדירה זו ליוד באמצעות מצלמה וידאו את אברהים חסונה לקראת ביצוע פיגוע ההתאבדות המתוכנן.

ת.ת. 444/02 מתוקן

9. הנאשם חזרה לטארק א-כוף להוביל את אברהים חסונה אל תוך מדינת ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן. הנאשם חזרה לטארק א-כוף לחבוש נשק לאברהים חסונה לצורך ביצוע הפיגוע המתוכנן.

10. חבריו הנ"ל של הנאשם החלו לחפש אחר אברהים חסונה אשר ימליץ את אברהים חסונה אל תוך מדינת ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן ויגרום למותם של אזרחים ישראליים רבים ככל האפשר.

11. שריף נאג'י (אבו-חמיד) פנה אל מוראד נומי ריווק עיילווי, בעל תעודת זהות ישראלית המנוגדר בירושלים, וביקש מהאחרון להגיע בדחיפות לרמאללה.

12. שריף נאג'י (אבו-חמיד) נפגש עם מוראד עיילווי הנ"ל בבית קפה ברמאללה וביקש ממנו להסתיע מחבל מתאבד אל תוך מדינת ישראל. מוראד עיילווי הסכים להצעת זו, אך ביקש כי שריף נאג'י (אבו-חמיד) ידאג למסור את רכב לא נגוב בעל לוחית רישוי ישראלית.

13. שריף נאג'י (אבו-חמיד), ג'יהאן ג'מדאן ומוראד עיילווי פגשו ברמאללה את מחמוד מחמד יוסף נאג'י (אבו-חמיד), אשר היה ביחד עם מאזון מחמוד עומר אלקאאדי. מאזון אלקאאדי נהג ברכב פורד טרנזיט עם לוחית רישוי ישראלית, מ.ר. 7014515 (להלן: הרכב). האנשים הנ"ל ביקשו ממאזון אלקאאדי את רכב ואת חרשיונות של הרכב לצורך הסעת מחבל מתאבד אל תוך שטחה של מדינת ישראל על מנת שהמחבל יבצע שם פיגוע התאבדות. מאזון אלקאאדי מסר את הרכב לידי שריף נאג'י (אבו-חמיד) וג'יהאן ג'מדאן, אך ביקש כי הוא עצמו ינהג בו.

14. בשלב הזה, טארק א-כוף ואברהים חסונה הלכו לידיה. שם, אברהים חסונה התקלח ולבש את הבגדים החדשים, אשר רקמו עבורו על-פי הוראת הנאשם כאמור לעיל.

15. בסביבות השעה 20:00, שריף נאג'י (אבו-חמיד), ג'יהאן ג'מדאן ומאזון אלקאאדי, שנסעו ברכב, נפגשו בכיכר השעמון ברמאללה עם טארק א-כוף ואברהים חסונה. טארק א-כוף ואברהים חסונה, אשר היו חמושים ברובייר M-16, 6 מחסניות מלאות בדורוין ושני רימוני-יד, עלו לרכב. למקום הגיע גם נסר (ג'לאל) מחמד יוסף נאג'י (אבו-חמיד), אשר מסר לאברהים חסונה סכין קומנדו בארך של כ-25 ס"מ. נסר אבו-חמיד אמר לאברהים חסונה לדקור אזרחים ישראליים על מנת לגרום למותם לאחר שתיגמר לו תחמושת.

16. כל האנשים הנ"ל נסעו ברכב לכיכר רפידיין ברמאללה, מכיוון שבמקום האמור אין הרבה עוברי אורח.

17. בכיכר רפידיין הנ"ל, נסר (ג'לאם) נאג'י (אבו-חמיד), טארק א-כוף ואברהים חסונה פירקו את רובייר M-16 הנ"ל והכניסו אותו אל תוך הלדה הצדדית של הרכב.

18. שריף נאג'י (אבו-חמיד), טארק א-כוף וג'יהאן ג'מדאן, נישקו את אברהים חסונה ואיחלו לו הצלחה.

19. מוראד עיילווי הודיע לחבריהו כי הוא עובד בתל-אביב ולכן מכיר מקום בתל-אביב, אשר בו ניתן לבצע את פיגוע ההתאבדות המתוכנן.

20. הוחלט כי לאחר שמוראד עיילווי ומאזון אלקאאדי יורידו את אברהים חסונה בתל-אביב במקום הומה אדם, אברהים חסונה ימתין מספר דקות על מנת שהברית הנ"ל יספיקו להימלט מהמקום ברכב ולאחר מכן יפתח באש אוטומטית ברובייר M-16 הנ"ל לעבר אזרחים ישראליים שיהיו במקום, בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר וימשיך לירות עד שיתגמר מאש מחזות הביטחון הישראליים שיגיעו למקום.

21. אברהים חסונה עלה לרכב, אשר בו נהג מאזון אלקאאדי וליד ישב מוראד עיילווי, והשלושה נסעו לכיוון תל-אביב על מנת לבצע שם את פיגוע ההתאבדות המתוכנן.

22. במהלך נסיעתם של מוראד עיילווי, מאזון אלקאאדי ואברהים חסונה הנ"ל לתל-אביב, שריף נאג'י (אבו-חמיד) שוחח עמם באמצעות טלפון סלולרי.

23. באותו הלילה, לאחר שמאזון אלקאאדי, מוראד עיילווי ואברהים חסונה הגיעו לתל-אביב, בסמוך לעיבר מעריב בשדרות פתח-תקווה, מוראד עיילווי הראה לאברהים חסונה מקום הומה אדם והתורה אותו לבצע שם את הפיגוע המתוכנן.

24. אברהים חסונה הוציא את רובייר M-16, מחסניות ורימוני-היד הנ"ל, שהיו מוסתרים בדלת של הרכב כאמור לעיל.

25. בסמוך לשעה 02:15, ביום 05.03.02 או במועד הסמוך לכך, מאזון אלקאאדי ומוראד עיילווי הורידו את אברהים חסונה מן הרכב, כשהוא חמוש ברובייר M-16, רימוני-היד וסכין קומנדו הנ"ל, בסמוך למסעדה "סי-מד מרקטי" הנמצאת בדרך פתח-תקווה בתל-אביב (להלן: המסעדה) על מנת שיבצע שם את הפיגוע המתוכנן.

26. מוראד עיילווי ומאזון אלקאאדי נסעו ברכב מהמסעדה לכיוון ירושלים.

27. אברהים חסונה התקרב אל המסעדה "סי-פד מרקטי" ופתח באש אוטומטית ברובייר M-16 לעבר המסעדה ועוברי הארורח בדרך פתח-תקווה בכוונה לגרום למותם.

28. לאחר מכן, אברהים חסונה השליך את שני רימוני-חיד הנ"ל לעבר המסעדה בכוונה לגרום למותם של יושבי המסעדה ועוברי ארוח, אך רימוני-חיד לא התפוצצו.



22

P 5: 195

29. לאחר שרשריך M-16, אשר בו החזיק אברהים חסונה הפסיק לירות עקב מעצור, אברהים חסונה הוציא את סכין הקומנדו הנ"ל ונחל לדקור אזרחים ישראלים שחיו במקום בכוונה לגרום למותם.

30. למקום האמור, הגיע השוטר רס"ר סלים ברכאת ז"ל. רס"ר סלים ברכאת ז"ל הוציא לעבר אברהים חסונה השתולט עליו. רס"ר סלים ברכאת ז"ל חספיק להודיע למפקדיו על התושאלטלות על המחבל.

31. בשלב הזה, אברהים חסונה דקר באמצעות סכין הקומנדו הנ"ל את רס"ר סלים ברכאת ז"ל בצוארו בכוונה לגרום למותו. כתוצאה מהדקירה הנ"ל, רס"ר סלים ברכאת ז"ל נפטר במקום.

32. במשריח המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של רס"ר סלים ברכאת ז"ל.

33. לאחר שלשרוף נאגי (אבו-חמדי) נודע משהדירי הטלוויזיה על כך שהתפוגע המתוכנן בוצע כאמור לעיל, הוא יצר קשר עם הנאשם ועידכן את האחרון בדבר ביצוע הפיגוע האמור.

34. מיד לאחר מכן, הנאשם הודיע למרואד ברגותי, ראש "יתתנזים" של הפתיח באיזור, ולנאצר אבו חמיד, ראש "גדודי חללי אלאקצא", הזרוע הצבאית של "יתתנזים" של מתמד יוסף נאגי (אבו-חמדי), ראש "יתתנזים" של המתואר כי הפיגוע שבוצע. כמו כן, הנאשם יצר קשר עם סוכנות היידיעות "רויטרס" והודיע על הפיגוע שבוצע כאמור לעיל.

### פרט שלישים ושמונה: (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלשים ושבעה, גרם בכוונה למותו של יוסף חבי ז"ל, אשר נדקר על-ידי אברהים חסונה בבית החזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

### פרט שלושים ותשעה: (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בבין איזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלשים ושבעה, במעשיו המתוארים בפרט האישום השלשים ושבעה, גרם בכוונה למותו של אליהו דהן ז"ל, אשר נדקר על-ידי אברהים חסונה בבית החזה, בבטנו ובגבו ונפטר כתוצאה מכך.

### פרט ארבעים: (פ.א. 4258/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחולה לו, ביום 05.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלשים ושבעה, במעשיו המתוארים בפרט האישום השלשים ושבעה, ניסה לגרום למותו של אזרחים רבים ככל האפשר. כתוצאה מהירית הנ"ל שנורו על-ידי אברהים חסונה נפצעו עשרת אזרחים ישראלים.



23

ת.ת. 444/02 מתוקן

Case 1:04-cv-00397-GBD-RLE    Document 660-49    Filed 12/04/14    Page 26 of 36

V **פרט ארבעים ואחד:** (פ.א. 6258/02 ירקון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 152 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
הרס רכוש או פגע מ במזיד ושלא כדין, דהיינו: בעשיתו
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, בעשיתו
המתוארים בפרט האישום השלושים ושבעה, גרם במזיד ושלא כדין נזק רב למשאית "סי-פורד
מרקטו", למשפחה הסיטיני וכן לבניינים הסמוכים וכלי הרכב שהיו באיזור, אשר נפגעו
כתוצאה מהיריות שנורו על-ידי אברהים חסונה.

V **פרט ארבעים ושניים:** (פ.א. 568/02 שפט)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 08.03.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. **הנאשם הנ"ל, במועד האמור,** שוחח באמצעות טלפון עם נאצר מחמוד עוויס, פעיל צבאי בכיר
   ביתזוזימי של הפתיח, שהוא התאחדות בלתי מותרת, בשם.

2. נאצר עוויס ביקש מהנאשם להיפגש ברמאללה עם לואי מחמד אחמד עודה, אשר שוחרר לפני
   זמן קצר מהכלא של הביטחון המסכל של הרשות הפלסטינית.

3. **הנאשם נפגש ברמאללה עם לואי עודה.** במהלך השיחות בין השניים לואי עודה מסר לנאשם כי
   יש לו מחבר מתאבד וכי הוא צריך חגורת נפץ על מנת שהמתאבד המתאבד יוכל לבצע
   באמצעותה פיגוע התאבדות בתוך שטחה של מדינת ישראל ובכך נגרום למותם של אזרחים
   ישראליים רבים ככל הניתן. הנאשם הסכים למסור ללואי עודה את חגורת הנפץ המבוקשת
   לצורך ביצוע פיגוע התאבדות המתוכנן. כמו כן, הסכים הנאשם לבקשתו של לואי עודה
   לארגן מקום לינה ברמאללה עבור המחבל המתאבד.

4. קודם לכן, לואי עודה הנ"ל שוחח עם נאצר עוויס הנ"ל. נאצר עוויס הודיע כי איתר אדם
   מתאבד וכי הוא צריך חגורת נפץ על מנת שהמתאבד המתאבד יוכל לבצע
   ביקש מלואי עודה להגיע את מחמוד צלאח לירושלים על מנת לבצע פיגוע התאבדות בכוונה
   לגרום למותם של אזרחים ישראליים. לואי עודה הסכים לכך. לואי עודה פגש את מחמוד
   סעיד ערפאת צלאח. מחמוד צלאח סיפר ללואי עודה, כי בכוונתו לבצע פיגוע התאבדות, וזאת
   בדרך בה ימצאו, על מנת שיבצע שם פיגוע התאבדות.

5. לואי עודה התקשר לחיאלד שווקי חביב חלבי, תושב בית חנינא, **פעיל הארגון "חזיות**
   העממית לשחרור פלסטין", והודיע לו, כי בכוונתו לבצע פיגוע בירושלים וזאת על ידי שיגור
   מחבל מתאבד שברשותו. לואי עודה ביקש מחיאלד חלבי לאתר אנשים, אשר יכניסו את
   המחבל המתאבד לירושלים. חיאלד חלבי הסכים לבצע את המבוקש ממנו.

6. חיאלד חלבי התקשר לחברו עיאמדי עיסא עודה, תושב בית חנינא, **פעיל הארגון "חזיות**
   העממית לשחרור פלסטין", וזה נפגש עמו ביום 06.03.02 ברמאללה. לואי עודה הגיע לפגישה
   זו ונפגש עם חיאלד חלבי ועיאמדי עודה בסמוך לבית קפה ב"ירבסקה". לואי עודה וחיאלד חלבי
   הציעו לעיאמדי עודה להכניס מחבל מתאבד מרמאללה לירושלים לצורך ביצוע פיגוע. לואי
   עודה הדריך את עיאמדי עודה לחבדק את המתאבד לגבש הצרפתית בירושלים,
   בדרכים עוקפות מחסומים, על מנת שיבצע שם פיגוע ויגרום בכך למותם של אזרחים
   ישראלים. לואי עודה וחיאלד חלבי הציעו לעיאמדי עודה חלופות למקום ביצוע הפיגוע:
   הצרפתית או אחת מתחנות האוטובוסים שבתחנה תוצבת הצרפתית.

7. לצורך קבלת חגורת הנפץ עבור המתאבד, הנאשם הנפיש את לואי עודה עם חיאלד
   שנייש, פעיל כוח 17 של הרשות הפלסטינית, אשר הכניסה להעביר ליד לואי עודה ולידי
   המתאבד המתאבד חגורת נפץ שברשותו ולהעמיד לרשותו של לואי עודה פעיל כוח 17 של
   הרשות הפלסטינית בשם מזיד, אשר ילביש את חגורת הנפץ על המתאבד המתאבד.

8. **הנאשם הוביל את המתאבד** המתאבד-אל הדירה ברמאללה תחולא, אשר אותה שכר הנאשם
   (להלן: הדירה).



24

P 5: 198

9. ביום 08.03.02 הגיע עיאמדי עדה, לקריאתו של חיאלד חלבי, לרמאללה. ברמאללה המתינו לעיאמדי עדה לאני עדה, אשר הגיע למקום ממפגש ברכב, וחיאלד חלבי. לאני עדה וחיאלד חלבי מסרו לעיאמדי עדה כי עליו לחבני את המתאבד לתחנת האוטובוסים, שבכיוון הנמצאה ליש ממלא, בצומת הנבנה הצרפתית בירושלים. לאני עדה וחיאלד חלבי וידאו כי עיאמדי עדה מכיר את הדרכים העוקפות למקום, עיאמדי עדה ספר להם, כי בכוונתו לחזביל את המתאבד ממקום תוך עקיפת מחסום קלנדיה בדרך המתאבות, ומשם להמשיך ולחזביל את המתאבד ממקום בישוע הפינוי דרך בית חנינא ושועפט, תוך עקיפת מחסום דחיית אל-בריד.

10. לאחר מכן, לאני עדה נסע לידיה, שם נפגש עם הנאשם ועם מנזה, אשר הביא יחד עמו חגורת נפץ. מזיד חלביש את חגורת הנפץ על מותנמו של המתאבד לנראות חגורת צלאח, כיצד להפעיל את חגורת הנפץ. כמו כן, מחמוד צלאח וילה את זקנו.

11. לאחר מכן, עברו הנאשם וחבריו הגיל מנזית, והמתאבד המתאבד, מחמוד צלאח, לבוש בחורות אורדית ישראליים. ויחאלד חלבי ליווה את המתאבד צלאח למקום המפגש עם עיאמדי עדה.

12. עיאמדי עדה והמתאבד המתאבד, מחמוד צלאח, מחמוד עיאמדי עדה את המתאבד ברגל בדרכם עפר בסמוך למחובות בקלנדיה. משם הוביל עיאמדי עדה את המתאבד ברגל בדרכם לכיצוע הפינוי המתונכן.

13. בשיכוני נוסיירה בבית חנינא בירושלים, מצערו עיאמדי עדה והמתאבד צלאח, בסמוך לשעה 16:00, על ידי שוטרי משטר חנבול. כאשר ניסה מחמוד צלאח להפעיל את חגורת הנפץ אותה לבש, נורה על ידי אנשי כוחות הביטחון ונהרג.

## ✓ פרט ארבעים ושלושה : (פ.א. 783/02 בנימין)

**מהות העבירה :** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה :** הנאשם הג"ל, באיזור, ביום 17.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, כדלקמן :

1. ביום 05.03.02 נהרג ברמאללה מפעל צבאי בכיר ב"יעודדי חללי אלאקצא" (להדיע הצבאית של "התנזים" של המתיחד) – מחמד אבו חלאווה.

2. כשבוע ימים לאחר מכן, מגד מחמוד אחמד זיאדה החליט לנקום את מותו של מחמד אבו חלאווה על דרך ביצוע פיגוע קטלני.

3. לאני יוסף מנסי וראאפאת צלאח הסכימו להצטרף אל מגד זיאדה לביצוע פיגוע הנקמה הג"ל.

4. לאני מנסי יצב מסר אם הנאשם, וקיבל את אישורו לביצוע הפיגוע המתונכן.

5. בעקבות האישור שניתן על-ידי הנאשם, מגד זיאדה ולאני מנסי הגיעו לביתו של הנאשם.

6. הנאשם מסר כיצד השניים רוכה מסוג "ברטה" ורוסי'ר קלצ'ניקוב עם מחסניות לצורך ביצוע הפיגוע המתונכן.

7. למחרת, ביום 17.03.02, מגד זיאדה נסע עם לאני מנסי וראאפאת צלאח, ברכבם מסוג "מזידה" לכבישא בית-אל-פסונזו, כאשר מגד זיאדה נותג ברכב, לאני מנסי מחזיק בידיו את הרובה מסוג "ברטה", וראאפאת צלאח מחזיק בידיו רוסי'ר קלצ'ניקוב.

8. האנשם הג"ל הגיעו למקום הפיגוע המתונכן סמוך לשעה 6:30 בבוקר. לאני מנסי וראאפאת צלאח חרגו מן הרכב, בעד שמגד זיאדה נשאר להמתין להם ברכב לצורך מילוטם בסיום ביצוע הפיגוע.

9. כרבע שעה לאחר מכן הגיע למקום רכב פולקסווגן פאסאט לבן, מ.ר. 7741115, בו נהג סמיר קרוש.

10. לאני מנסי וראאפאת צלאח ירו לעבר נהג הרכב בצרורות באמצעות כלי הנשק, אשר סיפקו להם למטרה זו הנאשם, בכוונה לגרום למותו של נהג רכב הפולקסווגן הג"ל.

11. הכדורים מן היריו, נפצע סמיר קרוש בכתפו, בדרך שבית המורכס המקורב משמאל עם ריטמון ריטוסי פתכת לאורד מסלול הקליץ, ונוקף לאשמו ויציאה. כמו כן, פגש שלושה מן הכדורים שגורו על ידי לאני מנסי וראאפאת צלאח ברכב הנמצא ונרמו לו נזק.

12. לאחר סיום ביצוע הפיגוע, חזרו לאני מנסי וראאפאת צלאח ביצוע של מגד זיאדה והשלשה נמלטו ממקום הפיגוע לרמאללה.

13. לאחר מכן, לאני מנסי התקשר אל הנאשם ודיווח לו על ביצוע המוצלח של הפיגוע.



25

ת.ת. 444/02 מתוקן

## פרט ארבעים וארבעה:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או למעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם נזאר שאחין, שומר ראשו של גיבריל רגוב, ראש הביטחון המסכל של הרשות הפלסטינית באיזור. נזאר שאחין הודיע לנאשם כי ברצונו לבצע פיגוע ירי נגד חיילי צה"ל הנמצאים במחסום וגריים למוות. הנאשם מסר לנזאר שאחין 2 אקדחים, רוט"ר M-16 מקוצר עם כוונת טלסקופית וכן קופסא של כדורים לצורך ביצוע הפיגוע האמור.

לאחר זמן קצר בוצע פיגוע ירי במחסום סורדא ובמהלכו נהרג חייל צה"ל. הנאשם מיהר ליצור קשר עם נזאר שאחין, אך האחרון מסר כי זה לא הוא שביצע את הפיגוע האמור. לאחר מכן, נזאר שאחין החזיר לנאשם את כלי הנשק, אשר אותם מסר לו הנאשם קודם לכן לצורך ביצוע הפיגוע האמור.

## פרט ארבעים וחמישה:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או למעולתם, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, שרחה באמצעות טלפון עם מחמוד אלטיטי, מעיל בביר ביעדודי חללי אלאקצא", הזרוע הצבאית של יהמוניזי" של הפתח, שהוא התאחדות בלתי מותרת. מחמוד אלטיטי מסר לנאשם כי יש לו מחבל מתאבד המוכן לבצע פיגוע התאבדות בתוך מדינת ישראל. הנאשם הסכים לשלוח את המחבל המתאבד אל תוך שטחי של מדינת ישראל על מנת שינגרום למות של אזרחים ישראליים רבים ככל הניתן.

למחרת היום, הגיע אל הנאשם אדם בשם פאיז משכט. פאיז מסר לנאשם כי נשלח על-ידי מחמוד אלטיטי לצורך ביצוע פיגוע התאבדות בתוך ישראל.

הנאשם שוחח עם פאיז וגילה כי פאיז לא ידע ליית"ר טוב. בעקבות כך הנאשם שוב יצר קשר עם מחמוד אלטיטי. הנאשם מסר למחמוד אלטיטי כי פאיז יוכל לבצע את פיגוע ההתאבדות באמצעות חגורת נפץ שישוא על גופו. מחמוד אלטיטי הסכים להצעת הנאשם והביטיח לדאוג לשלוח אל הנאשם חגורת נפץ לצורך ביצוע פיגוע התאבדות מתוכנן.

אל-פי הוראתו של הנאשם, סארכן מלוח א-נוף, רכש עבור פאיז בגדים חדשים ולאחר מכן ליווה את פאיז לדירה ברמאללה תחתא, שבה התנגורדו סארכ א-נוף, זידאן רמדאן והנאשם (להלן: הדירה).

הפינוח המתוכנן לא יצא אל הפועל לאור העובדה שמטעני החבלה לא נשלחו לנאשם וכן מכיוון שפאיז המתאבד נעצר על-ידי כוחות הביטחון הישראלים.

לאחר מעצרו של פאיז, הנאשם שוחח עם נזאר עוויס הנ"ל אודת מה שקרה. נזאר עוויס הבטיח לנאשם לשלוח אליו מחבלים מתאבדים נוספים על מנת שהנאשם ישלח אותם אל תוך שטחה של מדינת ישראל לצורך ביצוע פיגועי התאבדות. נזאר עוויס לא הספיק לשלוח אל הנאשם מחבלים מתאבדים נוספים, מכיוון שהן הנאשם חן נזאר עוויס נעצרו על-ידי כוחות צה"ל במהלך המבצע "חומת מגן".

ת.פ. 444/02 מתוקן

**פרט ארבעים ושישה:**

**מהות העבירה:** ייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(א)(3) לצו בדבר הוראות הביטחון (יהודה
והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, ייצר כלי יריה,
תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודות היתר שהוענקה לו על-ידי מפקד צבאי
או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה נפגש עם לואי מחמד אחמד עודה, אשר ביקש מהנאשם
לקבל כסף עבור פעילות צבאית. לאור האמור, הנאשם העביר ללואי עודה סכום של 8,000 ש״ח,
אשר אותו קיבל עלי פרג׳ ברגותי.
לואי עודה ביחד עם שריף מחמוד יוסף נאג׳י (אבו-חמזי) רכשו הנ״ל חומרים כימיים שונים.
עקביהם ראתב יונס עווש ייצר מהחומרים הכימיים הנ״ל מטען חבלה גדול.

**פרט ארבעים ושבעה:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק בצורה
אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, מכר לידי עכברים ראתב יונס עווש, ראש
"גדודי חללי אלאקצאא" - חוליית הצבאית של "התנזים" של המחיית באיזור גיעין, אשר שהה אותה
עת ברמאללה, אקדח 14, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט ארבעים ושמונה:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק בצורה
אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי נסר (חלום) מחמד יוסף נאג׳י
(אבו-חמזי) רוסייר M-16 ארוך תמורת 4,000 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד
האיזור או מטעמו.

**פרט ארבעים ותשעה:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במחצית הראשונה של שנת 2001 או בסמוך לכך, סחר או
עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם אשרף חידר על גאבר (יאסיני)
וקיבל מהאחרון 1,500 כדורים לרוסייר M-16. הנאשם שילם לאשרף גיאבר הנ״ל 3,000 ש״ח עבור
הכדורים הנ״ל. הנאשם ביצע את המיוחס לו בפרט האישום הזה לפי הוראתו של מרואן ברגותי -
ראש "התנזים" של הפתיחה באיזור.



27

**פרט חמישים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מאי 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה, במכוניתו נפגש עם מחבלים נוספים, ראש וחברי החוליה של הפעילים באיזור, אשרף ג'אבר התונף בתהלוכה ברמאללה, כשהוא מחזיק ברוסייר קלצ'ניקוב הנ"ל. במהלך התהלוכה הנ"ל אשרף ג'אבר היה רעול פנים וירה ברוסייר קלצ'ניקוב הנ"ל באוויר. לאחר מכן, אשרף ג'אבר, על-פי הוראתו של הנאשם, העביר את רוסייר קלצ'ניקוב הנ"ל לידי זיאד אבו עין.

**פרט חמישים ואחד:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעובר עבירה על תחיקת הביטחון או עסק או שהיה בעסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל ורווחם וקיום הסדר הציבורי או ששם יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מרחם, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם מרואן ברנותי, העביר את בלאל יעקוב אחמד ברנותי ואת עבד'אללה ברנותי מהכליא של הביטחוני הממסק של הרשות הפלסטינית בניתונוא לדירה, אשר אותה שכר הנאשם ברמאללה תחתם. בלאל ברנותי ועבד'אללה ברנותי הנ"ל הם פעילים בכירים בארגון חמאס, שהוא התאחדות בלתי מותרת, ואחראים לביצוע מספר פיגועים נגד אזרחים ישראליים, ביניהם פיגוע תופת במסעדת "סבארו" בירושלים ביום 09.08.01. הנאשם ומרואן ברנותי הלינו את בלאל ברנותי ואת עבד'אללה ברנותי בדירה הנ"ל במשך מספר ימים. לפני שבלאל ברנותי ועבד'אללה ברנותי עזבו את דירתו הנ"ל של הנאשם, הנאשם מסר לכל אחד מהם אקדח 14.

**פרט חמישים ושניים:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 – תחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו: הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם נאצר מחמוד עוויס, מפיל צבאי בכיר בייתונים של הפתח"ט, שהוא התאחדות בלתי מותרת, בשכם. נאצר עוויס אמר לנאשם כי הוא צריך 1,000 כדורים לרוסי"ר M-16. הנאשם הבטיח להביא לנאצר עוויס את הכדורים המבוקשים. לאחר מספר ימים הגיע אל הנאשם, ברמאללה, אדם בשמו של נאצר עוויס. הנאשם מסר לאחרון 1,000 כדורים לרוסי"ר M-16 על מנת שיעביר אותם לשכם לנאצר עוויס. תמורת 1,000 כדורים הנ"ל נאצר שווה העביר להעביר לחשבון הבנק של הנאשם סכום של 3,000 ש"ח. הנאשם ביצע את המיוחס לו בפרט האישום הזה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.



**פרט חמישים ושלושה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש ינואר 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:

אל הנאשם הנ"ל, במועד הנאמור, ברמאללה או בסמוך לכך, פנה נזאר שוכרי אמין שאהין. נזאר שאהין ביקש מהנאשם לקבל שלושה אקדחים על מנת למוסרם לידי פעיל צבאי בייגזודד חלקי אלטקסאי", והזדהה הנאשם של "התנגדות" של הפתייח, זאמר עגיזאאד ערהמאן רימאחוי לצורך ביצוע פיגוע ירי במחסום סורדא של צה"ל.

הנאשם הסכים לבקשתו של נזאר שאהין ומסר לידי האחרון 3 אקדחים, אקדח בלגי 9 מ"מ, אקדח סטאר 9 מ"מ ואקדח שטגאו אינו ידוע לתביעה, וכן קופסת כדורים לאקדחים הנ"ל. המכילה 50 כדורים לאקדחים בקוטר 9 מ"מ.

באותה היום, במפקד של הביטחון המקלל של הרשות הפלסטינית בביתוניא או בסמוך לכך, נזאר שאהין העביר את שלושת האקדחים והכדורים הנ"ל לידי זאפר עגיזאאד ערהמאן רימאחוי.

הפיגוע המתוכנן לא בוצע באמצעות האקדחים הנ"ל, מכוותן שליחת למי המועד שבו היה אמור להתבצע הפיגוע הנ"ל, בוצע פיגוע ירי אחר במחסום סורדא.

לאחר כשלושה ימים, ברמאללה או בסמוך לכך, נזאר שאהין תחזיר את האקדחים הנ"ל ביחד עם קופסת הכדורים הנ"ל לידי הנאשם.

הנאשם ביצע את המיוחס לו בפרט אישום זה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**עדי התביעה:**

1. רסייר דוד מזרחי, מ.א. 94857, לח"ק יהודה. [גובה אמרות הנאשם מיום 16.04.02 ומיום 03.05.02 ומגיש כתב-יד של הנאשם בערבית + דו"ח מסדר זיהוי תצלומים + לוח תצלומים]
2. רסייר יצחק יעקובוף, מ.א. 1008358, לח"ק יהודה. [גובה אמרות הנאשם מיום 21.04.02 ומיום 13.05.02 ומגיש שני כתבי-יד של הנאשם בערבית]
3. משה משה, מ.א. 993725, תשאאל אמן לכיש. [גובה אמרת הנאשם מיום 05.09.02]
4. אשרף חדר עלי נ'אבר, ת.ז. 901183764. (עצור) [נ.ת. 243/02]
5. חוטאם עקל רביב שתאחזן, ת.ז. 975564733. (עצור) [נ.ת. 242/02]
6. מחמד ערהמאן טאלם מצלח, ת.ז. 902845643. (עצור) [נ.ת. 241/02]
7. מחמד סאמי אברהים עבדאללה, ת.ז. 979469954. (עצור) [נ.ת. 265/02]
8. היתם אלמוהמס חמזאן, ת.ז. 906934823. (עצור) [נ.ת. 
9. עבראים ראשב יונס עזויס, ת.ז. 980113675. (עצור)
10. נאצר מחמד יוסף נאג'י (אבו-חמזא), ת.ז. 923918882. (עצור)
11. נצר (חלום) מחמד יוסף נאג'י אבו חמזה, ת.ז. 923918890. (עצור) [נ.ת. 339/02]
12. שריף מחמד יוסף נאג'י אבו חמזה, ת.ז. 959770843. (עצור) [נ.ת. 355/02]
13. לואי מחמד אחמד סדרה, ת.ז. 035775055. (עצור) [נ.ת. 311/02]
14. זאפר עגיזאאד ערהמאן רימאחוי, ת.ז. 900070020. (עצור) [נ.ת. 345/02]
15. אמיר חסן טעיף אבו דדאחו, ת.ז. 954263042. (עצור) [נ.ת. 356/02]
16. מגיד מחמוד אחמד זיאדה, ת.ז. 914081757. (עצור) [נ.ת. 318/02]
17. נאצר מחמוד עזויס, ת.ז. 900358664. (עצור)
18. בלאל יעקוב אחמד ברנותי, ת.ז. 902826262. (עצור)
19. זיאד חמודה יעקוב חמודה, ת.ז. 902924117. (עצור) [נ.ת. 353/02]
20. ראמי מחמד מחמוד נור, ת.ז. 960971075. (עצור) [נ.ת. 221/02]
21. מאהן מחמוד עמר אלסאדי, ת.ז. 907898134. (עצור) [נ.ת. 212/02]
22. מראאל נומי רוק עגילון, ת.ז. 081099095. (עצור)
23. מאמון בסאם עבדאללה אבו-טמאה, ת.ז. 906138409. (עצור) [נ.ת. 639/01]
24. עלסאם מחמד עלי חסן (אלעויה), ת.ז. 907274406. (עצור) [נ.ת. 174/02]
25. סעדי גיאדאת מחמד-עלי מקבול, ת.ז. 920101466. (עצור) [נ.ת. 173/02]
26. וליואם סאמח פארס אלחטיב (רימאחוי), ת.ז. 904383452. (עצור) [נ.ת. 322/02]
27. נזאר שוכרי אמין שאהין, ת.ז. 902004928. (עצור) [נ.ת. 775/02]

29

ת.ת. 444/02 מתוקן

פ.א. 234/01 מתיימ ייט

28. הרמן ספאק, מ.א. 6961290, צחייל. [פרטים בתביעה] [עדות]
29. אריה רקח, ת.ז. 032271918. [פרטים בתביעה] [עדות]
30. יובל לב, ת.ז. 05405709. [פרטים בתביעה] [עדות]
31. רפייק ליאור נדיב, מ.א. 952127, מזייפ - תחנת ציון. [מגיש דוייח תפיסה וסימון]
32. רפייק עופר שלום, מ.א. 916718, המעבדה הניידת, מזייפ, מטאייר - ירושלים. [מגיש דוייח בדיקת רכב]
33. רסייר אבי ברקמן, מ.א. 972762, חקירות - תחנת ציון. [מגיש טופס לוואי למוצגים]
34. רסייל דניאל תורגמן, מ.א. 1013796, משרד מוצגים - מזייפ, מטאייר - ירושלים. [מגיש תעייצ - קבלת מוצגים לבדיקה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
35. רפייק אורי בן-טובים, מעבדת נשק, מזייפ, מטאייר - ירושלים. [מגיש חוו״ד מומחה מתיק מזייפ זב/07 - 555/01] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
36. דייר דוד חזן, מ.ר. 29086, צהייל. [עדות - קביעת מותו של אלעזר עקיבא פשקוס זייל]
37. דייר דוד מורל, מ.ר. 20952, קופייח כללית - ירושלים. [עדות + מגיש הודעה פטירה]

פ.א. 457/01

38. רסיימ אלי סוטו, מ.א. 588038, תחנת בנימין. [מגיש דוייח מעולה]
39. רסיימ משה לביא, מ.א. 903260, תחנת בנימין. [מגיש זכיד-רכב GMC + שרטוט זירת האירוע + דוייח תפיסה וסימון + טופס לוואי למוצגים]
40. רסיימ שבי עבדיה, מ.א. 560441, מזייפ יהודה. [מגיש לוחות תצלומים + מזכר]
41. רפייק ניסים מזרחי, מ.א. 926998, המעבדה הניידת, מזייפ - מטאייר, ירושלים. [מגיש לוחות תצלומים + דוייח בדיקת רכב]
42. יוסף כהן, ת.ז. 069397198. [פרטים בתביעה] [נפצע בפיגוע הירי]
43. אבי בן-שימול, ת.ז. 031310677. [פרטים בתביעה] [הגיע הראשון לזירת הפיגוע]
44. דייר איזנואל שוורץ, מ.ר. 28684, ביהייח הדסה - הר-הצופים, ירושלים. [מגישה תעודת רופא - סכום ביניים] [תזומן לפי דרישה מפורשת של הסניגוריה בלבד]

פ.א. 2159/01 בנימין

45. רסייר רונן נאמר, מ.א. 956813, תחנת בנימין. [מגיש דוייח מעולה]
46. רסיימ שבי עבדיה, מ.א. 560441, מזייפ, תחנת בנימין. [מגיש לוחות תצלומים + דוייח תפיסה וסימון]
47. רפייק עופר שלום, מ.א. 916718, המעבדה הניידת, מזייפ, מטאייר - ירושלים. [מגיש דוייח ביקור ראשוני בזירת האירוע + תפיסת תרמילים ושרידי קליעים]
48. רסייר חיים טולדו, מ.א. 1004332, תחנת בנימין. [מגיש זכיד - שרטוט מוצב + טופס לוואי למוצגים + דוייח ביקור בזית העבירה]
49. רסייל דניאל תורגמן, מ.א. 1013796, משרד מוצגים - מזייפ, מטאייר - ירושלים. [מגיש תעייצ - קבלת מוצגים לבדיקה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
50. רפייק אבי קופמן, מעבדת נשק, מזייפ, מטאייר - ירושלים. [מגיש חוו״ד מומחה מתיק מזייפ זב/07 - 4238/01] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
51. דייר ולדימיר גולר, מ.ר. 26163, מדייא - תחנת לוד. [מגיש דוייחות רפואיים מהשטח + הודעות פטירה + עדות]
52. דייר ניר אלון, ת.ז. 031849201, צהייל. [עדות]
53. דייר ריקרדו נחמן, המכון הלאומי לרפואה משפטית. [מגיש שתי חוו״ד מומחה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
54. ציון סוזריך, ת.ז. 000048850. [פרטים בתביעה] [זיהוי הרוגים]

פ.א. 7915/01 ציון

55. רסייר ציון שושן, מ.א. 957068, תחנת ציון. [מגיש דוייח מעולה]
56. רפייק ליאור נדיב, מ.א. 952127, מזייפ - תחנת ציון. [מגיש דוייח ביקור ראשוני בזירה + לוחות תצלומים]
57. רפייק יורם סער, תחנת ציון. [מוצא תרמילים בזירת האירוע - שרטות ראיות]
58. רפייק עמי ליזור, מ.א. 959841, המעבדה הניידת, מזייפ, מטאייר - ירושלים. [מגיש דוייח בדיקת רכב - תפיסת שרידי קליע]
59. צעירת אזרח מלכה, מ.א. 1049089, מתייח - תחנת ציון. [מגיש טופס לוואי למוצגים]
60. רסייל זיוה חוטו, מ.א. 512699, משרד מוצגים - מזייפ, מטאייר - ירושלים. [מנשה תעייצ - קבלת מוצגים לבדיקה] [תזומן לפי דרישה מפורשת של הסניגוריה בלבד]

יצחק
וויינברג
YITZHAK
WEINBERG

30

ת.ו. 444/02 מתוקן

‏61. רפ"ק אבי קופמן, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ זב/07 – 4539] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏62. דייר אייל יצחיאק, מ.ר. 31004, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של משה וייס] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏63. דייר יעקב גלוברמן, ביה"ח הדסה עין-כרם, ירושלים. [מגיש הודעת פטירה של מאיר ווייסמן ז"ל] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏64. משה וייס, ת.ז. 024001505. (פרטים בתביעה) (נפצע קשה בפיגוע)

‏65. יפה וקנין, ת.ז. 058857863. (פרטים בתביעה) (עדת ראיה)

**ס.א. 481/01 ציון**

‏66. טווי עמואל, ת.ז. 032441040. (פרטים בתביעה) (נהגת רכב ההומדה)

‏67. פיני מימון, ת.ז. 025759762. (פרטים בתביעה) (נוסע רכב ההומדה)

‏68. פויח מימון, ת.ז. 040128084. (פרטים בתביעה) (נוסעת רכב החזודה)

**ס.א. 8379/01 ציון**

‏69. רפ"ק ליאור נדיבי, מ.א. 952127, מז"פ - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה + דו"ח תפיסה וסימון]

‏70. רס"ר גבריאל עבד, מ.א. 958736, מתי"ם - תחנת ציון. [מגיש טופס לואי למוצגים]

‏71. רפ"ק עמי ליפפר, מ.א. 959841, המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח בדיקת רכב - תפיסת שרידי קליע]

‏72. צוער דודו אברם, מ.א. 1039080, מתי"ם - תחנת ציון. [מגיש טופס לואי למוצגים]

‏73. ציון שדית, ת.ז. 029505724, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגיש תעו"ג - קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏74. רס"ב חסו בן ישראל, מ.א. 44771, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגיש תעו"ג - קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏75. רפ"ק אבי קופמן, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש שתי חוו"ד מומחה מתיק מז"פ זב/07 – 4723/01] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏76. סיגל שאזו, תחנת ציון. [מצאית תרמילים בשטח - שרשרת ראיות]

‏77. מלכה כהן, ת.ז. 038791386. (פרטים בתביעה) (נפצעה בפיגוע)

‏78. פרחס כהן, ת.ז. 038348256. (פרטים בתביעה) (נפצעה בפיגוע)

‏79. אוהב עמי יחזקל, ת.ז. 059214320. (פרטים בתביעה) (עד ראיה - טיפל בפצועים)

‏80. דייר יאיר עדן, מ.ר. 33272, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של פרחס כהן] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏81. דייר מנחם גרוס, מ.ר. 30416, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של מלכה כהן] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

**ס.א. 39/02 בנימין**

‏82. מפקד מיכאל מלכה, מ.א. 1040320, סיור - תחנת בנימין. [מגיש דו"ח תפיסה + סימון - תחנת בנימין. [מגיש דו"ח פעולה]

‏83. רס"ם קובני סבב, מ.א. 54494, תחנת בנימין. [מגיש זכי"ד תחקור/תופיסה וסימון]

‏84. רס"ם אלי קונגשנ, מ.א. 46951, מז"פ יהודה. [מגיש לוחות תצלומים + אסף תרמילים בזירת האירוע]

‏85. רפ"ק עמי ליפפר, מ.א. 959841, המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש לוחות תצלומים + דו"ח בדיקת רכב]

‏86. רס"ר מאיר ועננו, מ.א. 1018332, תחנת בנימין. [מגיש טופס לואי למוצגים]

‏87. רס"ב זיוה חוטר, מ.א. 512699, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגישה תעו"ג - קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏88. סגן דייר ניר אילון, מ.ר. 33216, צהי"ל. (פרטים בתביעה) (עדות - קביעת מותה של יואלה חן ז"ל + טיפול בפצועה)

‏89. דייר שאול ביוס, מ.ר. 33027, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת רופא - סיכום מחלה של רשל (רחל) עין] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

‏90. רול (רשל) עין, ת.ז. 075966614. (פרטים בתביעה) (נפצעה בפיגוע)

‏91. סמי ועקנין, ת.ז. 027798040. (פרטים בתביעה) (עדות + סקיצה) (עד ראיה)

‏92. נחשון בראשי, ת.ז. 05033235. (פרטים בתביעה) (זיהוי ההרוגה)

**ס.א. 502/02 ציון**

‏93. פקד דרור אסרף, מ.א. 942276, מתי"ם - תחנת ציון. [מגיש דו"ח זכי"ד, תפיסה וסימון]

‏94. רס"ב יגאל דניאל, מתי"ם - תחנת ציון. [מגיש דו"ח תפיסה וסימון]

‏95. צוער צביקה רייזיגר, מתי"ם - תחנת ציון. [מגיש דו"ח זכי"ד, תפיסה וסימון + תצלומים]

31

ת.ת. 444/02 מתוקן

P 5: 205

96. רס"ל ציון טובדי, מ.א. 1043413, מת"מ - תחנת ציון. [מגיש דו"ח פעולה - מציאת צולבת]
97. רס"ב אשר לוי, מ.א. 47220, תשאול - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
98. בני עוריאל, ת.ז. 303647598. [פרטים בתביעה] (עד ראיה - רדף אחרי המחבל)
99. עמאד עמידה, מ.א. 739037, מג"ב ירושלים. (עד ראיה - רדף אחרי המחבל וירה לעבר המחבל)
100. שו כהן, מ.א. 1042043, יחי"ס 2 - תחנת ציון. (עד ראיה - ירה לעבר המחבל)
101. נועם נבאי, ת.ז. 033121070, ימ"ר ירושלים. (עד ראיה - רדף אחרי המחבל וירה לעבר המחבל)
102. חן בנעים, מ.א. 1049188, יסים אופנועים - תחנת שלם. (עד ראיה - רדף אחרי המחבל, הרחיק את נשקו של המחבל לאחר שהמחבל נהרג)
103. נאדיר (גיא) מליק, ת.ז. 309130540. [פרטים בתביעה] (עד ראיה - מאבטח שהיה במקום - ירה לעבר המחבל ופגע בו)
104. אלון חלפון, מ.א. 761775, בילוש - ימ"ר ירושלים. (עד ראיה - רדף אחרי המחבל, ירה לעבר המחבל)
105. אבי בן-עמי, מ.א. 996140, בילוש - ימ"ר ירושלים. (עד ראיה - ירה לעבר המחבל)
106. חיים צאלח, ת.ז. 033401019. [פרטים בתביעה] (עד ראיה - נהג אוטובוס "אגד" שהיה במקום הפיגוע)
107. בוריס אבטסיאן, ת.ז. 309086171. [פרטים בתביעה] (עד ראיה)
108. יקונדואל-ישראל עלטע, ת.ז. 310101647. [פרטים בתביעה] (עד ראיה)
109. משה ממן, ת.ז. 06246911. [פרטים בתביעה] (עד ראיה)
110. טובה יצחקי, ת.ז. 051270353. [פרטים בתביעה] (עד ראיה)
111. מול יצחקי, ת.ז. 04330150. [פרטים בתביעה] (עד ראיה)
112. ירון אברהמי, ת.ז. 640712770. [פרטים בתביעה] (עד ראיה)
113. פנחס בוטורה, ת.ז. 055611230. [פרטים בתביעה] (עד ראיה)
114. כפיר קדם, ת.ז. 039381249. [פרטים בתביעה] (עד ראיה - ראה את המחבל מגיע למקום הפינוע ברגל)
115. יעקב סנדלר, ת.ז. 307750984. [פרטים בתביעה] (ויהוי גופתו של אורה (סבטלה) סנדלר ז"ל
116. דייר דפנה וילנר, מ.ר. 29234, ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של אורה (סבטלה) סנדלר ז"ל] (הזומנו לפי דרישה מפורשת של הסניגוריה בלבד)
117. דייר ילנה וסלוב, ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של שרה המורשמת לפי דרישה מפורשת של הסניגוריה בלבד]

רשימת עדים נוספת בנוגע למצנעים בפינוע ברחוב יפו ביום 22.01.02 ותעודות רפואיות הקשורות למציעתם תימסר במהלך המשפט

## פ.א. 483/02 שפט

118. רש"ח אבי פרחטי, מת"מ ימ"ר ירושלים. [מגיש דו"ח תפיסה וסימון]
119. רש"ר עודד מאירי, מ.א. 1065937, מת"מ ימ"ר ירושלים. [מגיש לוח תצלומים + שני טופסי לוואי למזוצגים]
120. רמ"ק ליאור נדיבי, מ.א. 952127, ויהוי ציון. [מגיש דו"ח תפיסה וסימון + דו"ח ביקור בזירת העבירה + הגברת המוצגים למז"פ - מטא"יר]
121. דן אזואה, יחידת סיור 4, תחנת ציון. [מגיש דו"ח תפיסה וסימון]
122. רפ"ק אבי קופמן, מעבדת נשק, מז"פ, מטא"יר - ירושלים. [מגיש חוו"יד מומחה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
123. דייר אבירם ניסן, ביה"ח חדשה הר-חצופים, ירושלים. [מגיש הודעת פטירה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
124. מאיר דהן, מ.א. 081086407. [פרטים בתביעה] [השתלט על המחבל, נפצע בפינוע]
125. דן מור, ת.ז. 086019812. [פרטים בתביעה] [השתלט על המחבל]
126. ניר בן שמחון, ת.ז. 037670213. [פרטים בתביעה] [השתלט על המחבל]
127. עמיף חלמאני, ת.ז. 023307358. [פרטים בתביעה] (עד ראיה)
128. יוסף קרליי, ת.ז. 0099752. [פרטים בתביעה] (עד ראיה)
129. סטט סריטמוסקי, ת.ז. 304389240. [פרטים בתביעה] [נפצע בפינוע]
130. ליאאור סקידזדה, ת.ז. 032087587. [פרטים בתביעה] [נפצע בפינוע]
131. קרן קדמי, ת.ז. 032777716. [פרטים בתביעה] [נפצעה בפינוע]
132. אדם גרפילד, ת.ז. 011935426. [פרטים בתביעה] [נפצע בפינוע]
133. אלי אוחנה, ת.ז. 033404773. [פרטים בתביעה] [נפצע בפינוע]
134. עמיחי דהאן, ת.ז. 039243944. [פרטים בתביעה] [נפצע בפינוע]



32

ת.ת. 444/02 מתוקן

P 5: 206

135. תמרה ליפשיץ פיש, ת.ז. 306706318. (פרטים בתביעה) (נפצעה בפיגוע)

---

**מ.פ. 4258/02**

136. אבשלום פרידמן, ת.ז. 055594097, מתנדב ביחידת סיור ירקון. (פרטים בתביעה) (שתי עדויות, היה בידה עם שלים ברכאת זייל)
137. אפי ימין, זיהוי ירקון, משטרת ישראל.
138. פקד מירדד דניאל, קצין אח"ש ירקון.
139. שמעון רחמים, צח"מ ירקון.
140. יעקב עבד, ת.ז. 025714502. (פרטים בתביעה) (עד ראיה – היה בתוך המסעדה)
141. אינגר קובוזיצקי, ת.ז. 321940751. (פרטים בתביעה) (נאבקותה במסעדה, נפצע בפיגוע)
142. עדי מורדז, ת.ז. 304615230. (פרטים בתביעה) (נאבקות במסעדה)
143. יוני חייל, ת.ז. 049170392. (פרטים בתביעה) (עד ראיה)
144. אירית רחמים, ת.ז. 027293034. (פרטים בתביעה) (עדות ראיה)
145. לימור פרחמה, ת.ז. 025377029. (פרטים בתביעה) (עדות ראיה)
146. שלמה דוד, ת.ז. 00022280. (פרטים בתביעה) (נפצע קשה בפיגוע מדקירת סכין)
147. שרון יפרח, ת.ז. 9802115980. (פרטים בתביעה) (עדות ראיה, נפצעה בפיגוע)
148. יפתח קרייתי, ת.ז. 029022902. (פרטים בתביעה) (עד ראיה, נפצע בפיגוע)
149. אליהו צדקה, ת.ז. 028804599. (פרטים בתביעה) (עד ראיה, נפצע בפיגוע)
150. אזולאי ריכטמן, ת.ז. 309998540. (פרטים בתביעה) (נפצעה בפיגוע)
151. יעקב הורוביץ, ת.ז. 054188644. (פרטים בתביעה) (ראה את הרכב שבו הגיע המחבל)
152. רויח אבישofer-יוסffer, ת.ז. 024315632. (פרטים בתביעה) (עדות ראיה)
153. וויליאם חזן, ת.ז. 069828374. (פרטים בתביעה) (עד ראיה, נפצע בפיגוע)
154. עלא מחמוד, ת.ז. 061247623. (פרטים בתביעה) (עד ראיה – עדות + שרטוט זירת האירוע)
155. באסם אבו לחאם, ת.ז. 035704568. (פרטים בתביעה) (עד ראיה)
156. בהאא אבו לחאם, ת.ז. 049824865. (פרטים בתביעה) (עד ראיה)
157. עלא מחאמה, ת.ז. 061247623. (פרטים בתביעה) (עד ראיה)
158. יומי קונטנטה, ת.ז. 033876954. (פרטים בתביעה) (עד ראיה)
159. אבניש יסף, ת.ז. 056230584. (פרטים בתביעה) (עד ראיה)
160. אינגר פסטוVנסקי, ת.ז. 311660328. (פרטים בתביעה) (עד ראיה)
161. דניאל קראוז, ת.ז. 02234597. (פרטים בתביעה) (עד ראיה – שתי עדויות – ראה את המחבל דוקר אנשים)
162. מאיר הבו, ת.ז. 5452229. (פרטים בתביעה) (זיהוי גופתו של יוסף הבי זייל)
163. נעם אספוי, ת.ז. 031877665. (פרטים בתביעה) (נפצע בפיגוע)
164. יוסי אזוד, ת.ז. 029416740. (פרטים בתביעה) (נפצע קשה בפיגוע)
165. מיכל גרובר, ת.ז. 043401140. (פרטים בתביעה) (נפצעה בפיגוע)
166. פרופי יהודה היט, המכון הלאומי לרפואה משפטית, תל אביב. (מגיש חוו"ד מומחה) (יוזמן לפי בקשת מפורשת של הסניגוריה בלבד).
167. רשומות בתי חולים – רשומה מוסדית.

<u>רשימת עדים נוספת בנוגע לפצועים ההרוגים בפיגוע במסעדה "סי-פוד מרקטי" בתל-אביב ביום 05.03.02 הוגשה במהלך המשפט</u>

---

**מ.פ. 568/02 שפט**

168. ניסים כהן, מ.א. 70755855, מג"ב. (פרטים בתביעה) (עדות ומגיש דו"ח פעולה)
169. דקל עוזר, מ.א. 7015187, מג"ב. (הפרטים בתביעה)
170. שלומי אטון, מ.א. 70192463, מג"ב. (הפרטים בתביעה)
171. דרור כהן, מ.א. 1034842, זיהוי – תחנת ציון. (מגיש 2 דו"חות תפיסה וסימון + מוצגים מכרושם לרשום מוצגים מס' 294/02).
172. רטיע זהבה פול, מ.א. 57989, תחנת ציון - חבלה. (מגישת דו"ח פעולה)
173. רפיק פרקמן אלמלית, מ.א. 942979, מז"פ - מעבדת חבלה, מטא"י, ירושלים. (מגיש חוו"ד מומחה בצירוף תסמ"ר חוב"ד למזגוד) (יוזמן לפי בקשת מפורשת של הסניגוריה בלבד)
174. רט"ל דניאל תורגמן, מ.א. 1013796, משרד מוצגים - מז"פ, מטא"י, ירושלים. (מגיש תעניא - קבלת מוצגים בדו"ח) (יוזמן לפי בקשת מפורשת של הסניגוריה בלבד)
175. פרופי יהודה היט, המכון הלאומי לרפואה משפטית, תל אביב. (מגיש חוו"ד מומחה) (יוזמן לפי בקשה מפורשת של הסניגוריה בלבד)

---

**מ.א. 783/02 בנימין**

176. רס"ל יצחק רוקח, מ.א. 1011626, תחנת בנימין. (מגיש דו"ח פעולה)



ת.ס. 444/02 מתוקן

177. רסיב אלי קונימן, מ.א. 46951, זיהוי יהודה. [מגיש דו"ח ביקור בזירת עבירה + לוח תצלומים]

178. רסימא אבי מנחם, מ.א. 57556, תחתת בנימין. [מגיש טופס לוואי למוצגים + זכ"ד + מוצגים מכרטיס מס' 106/02]

179. סמיר קרש, ת.ז. 080062771. [פרטים בתביעה] (נפצע בפיגוע חירן)

180. ד"יר שאול בייט, מ.ר. 33027, בי"ח הדסה עין-כרם, ירושלים. [מגיש דו"ח רפואי] (יוזמן לפי דרישה מפרשת של הסניגוריה בלבד)

181. שאילתא לאיזהור והקרנת פרטי רכב ובעליו (רשומה מוסדית).



סרן     מיכאל קוקיס
צבאי     תובע

תאריך: 29.09.2002
סימוכין: 02–444 מתוקן

ת.ת. 444/02 מתוקן

34