Case 1:04-cv-00397-GBD-RLE    Document 660-50    Filed 12/04/14    Page 1 of 6

No. 1049/13 .מס

## CERTIFICATION OF COPY

אישור העתק

I the undersigned Yitzhak Weinberg, a Notary in 33 Soreq Street, Beit Shemesh, Israel
Hereby certify that the attached document marked "A" is a correct copy of the original document which is drawn up in the Hebrew language and has been produced to me.

אני הח"מ יצחק וויינברג נוטריון בירושלים ברחוב נחל שורק 33 בית שמש

מאשר כי המסמך המצורף והמסומן באות "א" הינו העתק מדויק של המסמך המקורי שנערך בשפה העברית ושהוצג בפני.

In witness whereof I certify the correctness of the copy and I hereto set my signature and seal,

ולראיה הנני מאשר את דיוק ההעתק הנ"ל, בחתימת ידי ובחותמי,

This day December 28, 2013

היום 28 דצמבר 2013

Paid 95.00 shekels (including VAT)

שולם סך של 95.00 ש"ח (כולל מע"מ)

SIGNATURE _____    חתימה

NOTARY'S SEAL    חותם הנוטריון



# APOSTILLE

(Convention de la Haye du 5 Octobre 1961)

| | |
|---|---|
| 1. STATE OF ISRAEL | 1. מדינת ישראל |
| This public document | מסמך ציבורי זה |
| 2. Has been signed by Yitzhak Weinberg - Advocate | 2. נחתם בידי |
| Advocate   33 Soreq Street, Israel | עו"ד   יצחק ויינברג עו"ד |
| 3. Acting in capacity of Notary L.N.24260 | 3. המכהן בתור נוטריון. |
| 4. Bears the seal/stamp of | 4. נושא את החותם/החותמת |
| the above Notary | של הנוטריון הנ"ל |
| **Certified** | **אושר** |
| 5. At the Magistrates Court of Jerusalem | 5. בבית משפט השלום בירושלים |
| 6. Date  - 1 -01- 2014 | 6. ביום |
| 7. By an official appointed by  85/14 | 7. על ידי מי שמונה בידי שר |
| Minister of Justice under the | המשפטים לפי חוק הנוטריונים, |
| Notaries Law, 1976. | התשל"ו - 1976 |
| 8. Serial number | 8. מס' סידורי |
| 9. Seal/Stamp | 9. החותם / החותמת |
| 10. Signature | 10. חתימה |

מספר התיק: 3159/02          תאריך: י' שבט, תשס"ג
                              13 ינואר, 2003

## בית המשפט הצבאי בבית אל

### פרוטוקול הדיון של ישיבת דן יחיד

בפני השופט: רס"ן אלי בר-און

תובע: סגן ולדי בורודובסקי - נוכח
סניגור: עו"ד שוקרי - נוכח

נאשם: בשאר חסן עבד ברגותי ת.ז 934469768 / מגידו - נוכח

מתורגמן: סמל חאמד חמדאן
רשמת: רב"ט סיון הראל

---

בימ"ש פתח את הישיבה ומזהה את הנאשם.

### מהלך הדיון

תובע: הגענו להסדר טיעון, במסגרתו אבקש להגיש כתב אישום מתוקן. הנאשם חוזר בו מכפירתו, יודה בכתב האישום המתוקן והצדדים יטענו לעונש באופן חופשי.

סניגור: אני מאשר את דברי חברי ומבקש מביהמ"ש כי יתיר לנאשם לחזור בו מכפירתו.

### החלטה

לאחר שהסדר הטיעון אליו הגיעו הצדדים, אני מתיר לתובע לתקן את כתב האישום ולנאשם לחזור בו מכפירתו.

ניתן והודע היום, 13/01/03, בפומבי ובמעמד הצדדים.

_____
שופט

תובע: אני מגיש כתב אישום מתוקן.

סניגור: הסברתי למרשי את כתב האישום המתוקן, הוא מבין אותו ומודה בו.

נאשם: סניגורי הסביר לי את כתב האישום המתוקן, אני מבין אותו ומודה בו.

### הכרעת-דין

על יסוד ההודאה באשמה, אני מרשיע את הנאשם בעבירה המיוחסת לו בכתב האישום המתוקן.

ניתן והודע היום, 13/01/03, בפומבי ובמעמד הצדדים.

_____
שופט

1

מספר התיק: 3159/02

‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏‏להעמיד את אביו של הנאשם לעדות אופי כראיות לעונש.

חסן עבד חליל ברגותי

14  ת: ארבעה.
15  ש: מה הם שמותיהם ומה הם עושים?
16  ת: הצעיר הוא דרי הוא בשאר שהיה עובד בבית חולים אל מוקסד בירושלים כמתמחה,
17  השני מהם רוקח, אחר הוא מהנדס תקשורת ועבד אל הבית לפני 1994 והוא
18  באוסטרליה, והרביעי סיים לימודי מסחר במכללת המזרח התיכון ועכשיו הוא
19  נמצא באמריקה. בני בשאר נעצר בהפתעה כי הוא ארח אדם שלא ידענו שהוא
20  מבוקש, אני יודע שהוא היה רק הנהג של מרואן ברגותי, הוא עזב את בית הספר
21  כאשר למד יחד עם בני בבית ספר "האשמייה". בני היה מצטיין בין תלמידי בית
22  הספר ותמיד היה הראשון, ואני הייתי מטפל בו טיפול מיוחד, והוא היה זה שמשרת
23  אותנו. כמו כן, בתקופה ההיא היו מתארחים אצלנו קרובי משפחה מעכו וגם
24  פרופסור שאקי, שהוא מרצה באוניברסיטה ברחובות. אחד בשם חנוכה, שהיה עובד
25  בתקשורת הישראלית, עיראקי, היה מארח אותי ואני ארחתי אותו, ויש בינינו קשר.
26  בעכו יש לנו קשר עם ערבים, דרוזים ויהודים, ויש לנו קשר חברתי עם כל האנשים.
27  ש: ספר לביהמ"ש מה עבר עליכם מאז מעצרו של בשאר.
28  ת: מעצרו של בשאר היה הפתעה גדולה בשבילנו כי אנו הסכמנו להעביר אותו מבית
29  החולים של רמאללה, לבית חולים אל מוקסד כדי שיהיה מתמחה שם. לאחר מעצרו
30  אחמד התחיל לאיים עלינו שהוא הנהג של מרואן והוא מנע ממני להגיע לירושלים
31  למשך זמן רב בלי שאדע מי הוא. הוא היה מבקש מאנשים שידברו איתנו בשם
32  השב"כ, ואני מוכן להשבע בקוראן והברית החדשה. כמו כן, הייתי רושם באיזו שעה
33  השיחה התקיימה, ואפילו קניתי מכשיר כדי לזהות את המספר ממנו מתקשרים,
34  וזה לא הובהר לי. אם הוא היה שוטא או מתענה בבני זה בגלל שהוא ובני היו באותה
35  כיתה ובני למד והוא לא, ובני סיים רפואה. הוא השווה את עצמו לבני, מול יותר
36  מחמישה אנשים והוא חשב שלאסוף כסף זה יותר חשוב מללמוד, ושלמי שיש כסף
37  הוא יותר חשוב ממי שלמד. אני הזכרתי לו משפט רע ואז הוא כעס ויצא מהבית
38  ומאז לא ראיתי אותו. הוא לא הסתתר אצלנו ואני לא חושב שהוא היה עצור בזמן
39  שעצרו את מרואן, ואני חושב שהוא ומרואן לא היו מבוקשים ע"י כוחות הבטחון
40  הישראלי באותה תקופה. אני יצאתי לפנסייה בשנת 1994, לפני שהרשות נכנסה,
41  ואני לא חזרתי לעבוד בשום מקום. אף אחד מבניי לא קיבל על עצמו תפקיד ברשות
42  הפלשתינית. אני מבקש שהדמוקרטיה תצא לפועל, ושבני, שכבר שנה עצור, ואני
43  המדינה אפשרה לאחמד טיבי ולבשארה לחזור לכנסת אחרי הבלאגן שהם עשו, ואני
44  עברתי טרגדיות, נדרסתי בשנת 1997 ע"י רכב גנוב, ומי שדרס אותי עכשיו משוחרר,
45  ואני לא קיבלתי שום פיצוי. אשתי נפצעה ברגל לאחר התאונה, ואנו עדיין סובלים
46  מהתאונה שהיתה.
47
48
49

2

P 6: 358

1 תובע מסכם: התביעה הצבאית מבקשת להטיל על הנאשם עונש אשר יהלום את
2 חומרת העבירה בה הורשע. הנאשם הורשע ע"פ הודאתו בסיום משפט כמעט,
3 בעבירה של אי מניעת עבירה. כידוע, עבירה זו אינה חד משמעית והיו אף כאלה אשר
4 מתחו ביקורת על הכנסתה של עבירה זו לספר החוקים. נראה כי אותה בעייתיות
5 הובילה את המחוקק לקביעת עונש נמוך של 5 שנות מאסר לצידה של העבירה.
6 נראה כי במהלך שקילת השיקולים הרלוונטים לגבי עבירה זו, יביא ביהמ"ש
7 בחשבון באיזו מידה מצדיק המקרה שלפניו את ההתעלמות או מתן משקל נמוך
8 מבעייתיות העבירה, וימצא להחמיר עם הנאשם. לפי מדרג החומרה, לצד העבירה
9 הנוכחית מן הראוי לערוך מאזן בין מידת האשמה שבמחדל או במעשה הנאשם לבין
10 מידת הפגיעה בערך המוגן. נסיבות המקרה שבפנינו מפורטות היטב בכתב האישום
11 שבפני ביהמ"ש, וניתן להתרשם מחומרת ההתנהגות של הנאשם במקרה זה. לא זו
12 בלבד שנוצר בלבו של הנאשם חשד לביצוע העבירה, אלא שהמבוקש אחמד ברגותי
13 אמר לנאשם במפורש מה הוא התכנון הרצחני אותו מתכוון לבצע ופירט בהרחבה
14 רבה את פרטי התכנון. לאיזו התנהגות היינו מצפים מן הנאשם במקרה זה? שאלה
15 זו תביא אותנו אל הצומת בו נבחנת הבעייתיות האמורה של העבירה. ידוע כי קשה
16 לאזרח לפנות לגורמי אכיפת החוק ולהסגיר את קרובו כאשר העבירה טרם בוצעה.
17 ואולם, הנאשם שבפנינו, לא זאת בלבד שלא הסגיר את המבוקש, אלא אף לא
18 נשמעה מפיו ולו מילה אחת, אף מילה של נסיון נואש למנוע את מימוש הפיגוע,
19 והנאשם הפגין אדישות נוכח הקשר הרצחני שנרקם בפניו. לא רק במעשים
20 פאסיבים התאפיינה התנהגותו של הנאשם. הנאשם העמיד לרשותו של אחמד
21 ברגותי את הטלפון שבביתו, ובכך אף שימש חוליה במסגרת התכנון. היינו מצפים,
22 אחרי ששמענו את עדותו של אבי הנאשם, כי הנאשם יפעל ע"פ הערכים אותם אמור
23 היה לקלוט במסגרת משפחתו הנורמטיבית. ברם, אדישותו של הנאשם אל מול
24 תיאורי הזוועה אותם שטח בפניו אחמד ברגותי, מלמדת כמאה עדים על רוע לב
25 בסיסי והתעלמות מכל נורמת התנהגות, לא רק משפטית אלא גם מוסרית. הנאשם
26 הביא על משפחתו כאב רב בביצוע מעשיו. נשאלת השאלה, איך ניתן להשוות כאב
27 זה עם החלק הקטן של הסבל והייאוש אשר נגרם למשפחות שתי ההרוגות, אורה
28 סנדלר ז"ל ושרה המבורגר ז"ל, אשר מצאו את מותן מכדורי הרובה שבידי המחבל
29 המתועב. כיצד ניתן במסגרת העונש הנמוך שלצד העבירה לכמת את הכאב של אותן
30 נשים תמימות ושל משפחותיהן, כאב אותו ניתן היה למנוע בקלות כה רבה, והדבר
31 לא נעשה. נראה, בנסיבות המקרה, כי אף העונש שלצד העבירה לא יכול לבטא את
32 החלק המזערי של אותו כאב.
33
34 סניגור מסכם: אותה עבירה המיוחסת לנאשם, כפי שהסביר חברי, עבירה זרה
35 למשפט הישראלי בכלל, ובפרט למשפט שמתנהל באזור. עבירה זו לקוחה ממשפט
36 הקונטיננט באירופה וממשפט אנגלי, והיא לקוחה מסיפור שמופיע בברית החדשה
37 של השומרוני הטוב. באותו סיפור, אותם שומרונים שבזמני ישו היו אויבים של
38 היהודים מצאו לנכון לעזור ליהודי שנפגע בדרכו מירושלים ליריחו, כך לפי הסיפור
39 של ישו. ואז לקחו מהחתונה המוסרית לעזור למישהו שנפגע, בקונטיננט מצאו חובה
40 משפטית לאנשים. בניגוד לאותה עמדה, במשפט האנגלו-סקסי, באותו אופן, אם יש
41 משהו שמחייב, אז הוא מחייב. השאלה כאן, היא לא במישור המוסרי, אלא במישור
42 משפטי הפוסטיבי. יש לנו בחור שיש לו מידע לגבי פיגוע מסויים, הם יושבים באל
43 בירה, באמצע השטח ששייך לרש"פ, ויש לו מידע שהוא צריך לדווח לרשויות
44 הבטחון בישראל, כך שהוא נמצא במצב כזה, שאם הוא ידווח, הוא יועמד בישראל
45 לדין על עבירה של אי דיווח עבירה, אך אם הוא יעשה את זה צפוי לו גזר דין מוות.
46 אדם כזה צפוי לסכן את חייו בדיווח למדינת ישראל בתוך השטחים על עבירה
47 שאמורה להתבצע מחר. מבחינה משפטית, הוא חייב באי דיווח. אז הוא החליט
48 לשבת בשקט. חברי ניסה לטעון כאילו שהנאשם לא רק ישב בשקט, אלא עשה
49 דברים נוספים. הוא העמיד לרשותו של אחמד ברגותי את אותו טלפון. אך אם אנו



1  מעיינים בכתב האישום, הוא ידע על אותו פיגוע שעתיד להתבצע, לאחר שהוא נתן
2  לו את הטלפון לשימוש. מכן, שלא היה שום מעשה פוסטיבי מצד הנאשם, להיפך,
3  כל שעשה הוא רק ישב בשקט. אני שמעתי פעם מה ההבדל בעברית בין פיקח
4  לחכם. פיקח הוא אדם שמוציא את עצמו לארוע שחכם לא היה מביא את עצמו
5  אליו. אני הייתי מצפה מהנאשם להיות חכם במקרה זה, ומכאן שלא לארח בכלל
6  את אחמד ברגותי. הנאשם יוצא מכאן לדעתי חכם, לא פיקח. הנאשם יוצא מכאן
7  בהחלטה מגובשת, שהוא לא יארח לעולם אדם שסביר להיות חשוד בפעילות כלשהי
8  נגד מדינת ישראל. זה הלקח היחידי שאנו יכולים להבטיח ממעצרו של הנאשם.
9  לגבי הנסיבות האישיות של הנאשם, ביהמ"ש נכח לדעת שלא מדובר באדם רגיל,
10 אלא מדובר ברופא שהקדיש כל חייו ללימודים, גם משפחתו נורמטיבית ואף מעבר
11 לכך, מנסה בכל כוחה להוציא את ילדה כלומדים, ולא חושבים כלל על כסף.
12 מטרתם היחידה בחיים היא שילדה של המשפחה ילמדו. לאבא יש שלושה ילדים,
13 אך היחידי שיכול לעזור לו הוא הנאשם, ועוד אחד שעובד כרוקח. לנאשם נגרם נזק
14 אדיר בכך שהוא נחשף לכל מערכת המשפט ובתי הסוהר. לנאשם נגרם נזק נוסף,
15 והוא שהוא פיספס מבחנים רבים אשר מעכבים את התקדמותו. אנו מצפים וכמעט
16 בטוחים כי הנאשם יצא מכאן ולא יהיה מעורב בכל פעילות נגד המדינה. הנאשם
17 נמצא במעצר מיום 23/01/02, כמעט שנה, ואנו מבקשים מביהמ"ש להסתפק
18 בתקופת מעצרו.
19

20 הנאשם בדברו האחרון: בהתחלה נכון ששמעתי או ידעתי מאחמד ברגותי שיש
21 סיכוי שיהיה פיגוע, אבל כמובן, לאחר היכרותי עם אחמד, והיכרותי עם אישיותו,
22 ובשיטת דיבורו באותו לילה, וחשבתי שהוא לא בהכרה כי הוא שתה. אני לא
23 האמנתי למה שהוא אמר, וגם לא התייחסתי לדבריו. אפילו אם לקחתי את דיבורו
24 ברצינות והאמנתי בו, או ניסיתי למנוע במאה אחוז את הפיגוע עליו הוא מדבר, לא
25 היה ביכולתי למנוע זאת, וזאת בגלל שאני חי בשטח שהוא תחת שלטון הרשי"פ,
26 באזור A, אני לא יכול לפנות לשב"כ הישראלי ולהודיע להם שאחמד או אדם אחר
27 יודע או מתכוון לבצע פיגוע זה או אחר, כי כפי שאנו שומעים כל יום, זה יגרום לי
28 עונש של גזר דין מוות ע"י הרשות או אנשי ההתנגדות. כבוד התובע תיאר אותי כמי
29 שהיה אדיש, ואני אומר שזה נכון שאני לפעמים אדיש, אבל אני למדתי את זה בגלל
30 שאני נמצא בבית החולים ועוברים תחתי יותר ממאה חולים באופן יומי, ולכל אחד
31 מהם יש סיפור אחר. אם אני אאמין לכל דברי החולים אני יכול להיות משוגע. עד
32 עכשיו אני שוהה בכלא כמעט שנה, מתוכה בערך 50 יום בתאי הצינוק. כמובן שזו
33 הפעם הראשונה בה אני נעצר ונענש על עבירה כלשהי. התקופה הזו גרמה לי
34 להשתגע, במיוחד בתקופת החקירה. אני הפסדתי שנה מחיי, והפסדתי את המשך
35 לימודיי ועבודתי, ואפילו לאחר שאשתחרר מהכלא אני לא אוכל להמשיך את
36 לימודיי ועבודתי בבית החולים אל מוקסד בירושלים, שזה בית החולים היחידי
37 שנותן התמחות בגדה. זה בגלל המעצר הבטחוני שאני שוהה בו. אני לא אוכל להשיג
38 ולקבל אישור כניסה לשטחי ישראל. אני אפילו לא אוכל ליסוע למדינות חו"ל כמו
39 אמריקה ובריטניה בגלל שהשם שלי מופיע בסוף ואצל כוחות הבטחון הישראלי
40 כטרוריסט. אני גם הפסקתי חלק מהעתיד שמצפה לי, אותו אני מנסה לבנות מהעבר
41 הרחוק, וכל זאת למה? בגלל שאחמד ברגותי, שכרגע עצור אצלכם, יודע בוודאות על
42 ביצוע הפיגוע הזה, ואני בסך הכל שמעתי חלק מן המילים, להן לא האמנתי. יש לי
43 שאלה לתובע, אם היית שומע שחבר שלך או קרוב משפחה שלך מדבר איתך על
44 התקפה על השטחים, האם היית מודיע לרשות הפלשתינית על זה? לפני שאני
45 אסיים, אני מבקש שביהמ"ש ישחרר אותי לאלתר ויסתפק בתקופה שאני שהיתי
46 במעצר, כדי שאני אוכל לצאת לחיות עם משפחתי, שהם מבוגרים וחולים, ואין מי
47 שידאג להם, וכן על מנת להמשיך את לימודיי ולהתחתן ולהמשיך את עבודתי בתור
48 רופא.
49