מס. No. 27/14

**CERTIFICATION OF COPY**

אישור העתק

I the undersigned Yitzhak Weinberg, a Notary in 33 Soreq Street, Beit Shemesh, Israel
Hereby certify that the attached document marked **"A"** is a correct copy of the original document which is drawn up in the Hebrew language and has been produced to me.

אני החי״מ יצחק וויינברג נוטריון בירושלים ברחוב נחל שורק 33 בית שמש

מאשר כי המסמך המצורף והמסומן באות ״A״ הינו העתק מדויק של המסמך המקורי שנערך בשפה העברית ושהוצג בפני.

In witness whereof I certify the correctness of the copy and I hereto set my signature and seal,

ולראיה הנני מאשר את דיוק ההעתק הנ״ל, בחתימת ידי ובחותמי,

This day 27th January 2014

היום 27/01/2014

Paid 954.00 shekels (including VAT)

שולם סך של 954.00 ש״ח (כולל מע״מ)

SIGNATURE_____

חתימה

NOTARY'S SEAL    חותם הנוטריון

ILANA SHVIV                          ILANA SHVIV

27 -01- 2014          **APOSTILLE**          27 -01- 2014

אילנה שביב    (Convention de la Haye du 5 Octobre 1961)    אילנה שביב

**1. STATE OF ISRAEL**                          א. מדינת ישראל

This public document                          מסמך ציבורי זה

2. Has been signed by                          ב. נחתם בידי

Advocate _Y. WEINBERG_          _עו"ד / ר' עוב'ה_          עו"ד / חתם בידי

3. Acting in capacity of Notary          ג. המכהן בתור נוטריון.

4. Bears the seal/stamp of          ד. נושא את החותם/החותמת

the above Notary                          של הנוטריון הנ"ל

**Certified**                          **אושר**

5. At the Magistrates Court of Jerusalem          ה. בבית משפט השלום בירושלים

6. Date _____          27 -01- 2014          ו. ביום _____

7. By an official appointed by          ז. על ידי מי שמונה בידי שר

Minister of Justice under the          המשפטים לפי חוק הנוטריונים,

Notaries Law, 1976.          התשל"ו - 1976

8. Serial number _____          ח. מס' סידורי _____

9. Seal/Stamp _ILANA SHVIV_          ט. חותם / חותמת _____

10. Signature _____          י. חתימה _____

27 -01- 2014                          27 -01- 2014

אילנה שביב          אילנה שביב



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו
תפ"ח 1158/02



<u>בפני הרכב:</u>

כב' השופטת שרה סירוטה, ס.נ.- אב"ד
כב' השופט אברהם טל
כב' השופט ד"ר עמירם בנימיני

<u>המאשימה</u>

מדינת ישראל

המחלקה לעניינים פליליים, בטחוניים
ועניינים מיוחדים בפרקליטות המדינה
ע"י ב"כ עוה"ד ד. חן, ר. חזן, א. בר-נתן



- נ ג ד -

<u>הנאשם</u>

מרואן בן חטיב ברגותי

יליד 1959, ת.ז. 959251745
מרמאללה (במעצר מיום 15.4.02)
ע"י הסניגוריה הציבורית

# <u>הכרעת – דין</u>



בתי המשפט

תפ"ח 1158/02

<u>בית המשפט המחוזי בתל-אביב-יפו</u>

<u>תוכן – עניינים</u>

חלק ראשון: מבוא ..................................................... עמ' 2

חלק שני: מסכת הראיות ........................................... עמ' 6

א. הפת"ח התנגים וגדודי חללי אלאקצא כאירגוני טרור .............. עמ' 6

ב. מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים
   כנגד ישראל ..................................................... עמ' 8

ג. עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם
   מעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו עמ' 16
   (1) נאצר עויס ........................................................ עמ' 16
   (2) נאצר נאג'י אבו חמיד ............................................. עמ' 20
   (3) אחמד ברגותי ..................................................... עמ' 22
   (4) מוחמד מצלח (אבו סטאחה) ........................................ עמ' 27
   (5) ג'מאל אחוויל .................................................... עמ' 27
   (6) נאצר א-שויש ..................................................... עמ' 28
   (7) עלי עיאדיה ...................................................... עמ' 30
   (8) איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ועד ........... עמ' 30
   (9) נאסר (חלום) נאג'י אבו חמיד ..................................... עמ' 34
   (10) זיאד חמודה .................................................... עמ' 34
   (11) ריאד עמור ..................................................... עמ' 35
   (12) נאצר חאג' ...................................................... עמ' 35
   (13) תחריר ברגותי .................................................. עמ' 36
   (14) אחמד מוצפר .................................................... עמ' 37
   (15) שריף נאג'י ..................................................... עמ' 37
   (16) אמיד אבו רדאחה ................................................ עמ' 38
   (17) אשרף ג'אבר .................................................... עמ' 39



**בתי המשפט**

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                    תפ״ח 1158/02

<u>ד. דברי הנאשם בחקירתו וראיות נוספות בדבר תפקידו ומעורבותו בפיגועים</u>

<u>נגד ישראל</u> · עמ׳ 40

(1) אחריותו של הנאשם לפעילות חוליות הטרור ומידת

שליטתו בהן ................................................................. עמ׳ 40

(2) מעורבותו האישית של הנאשם בפיגועי הטרור שבצעו

חוליות שתחת פיקודו............................................................. עמ׳ 44

(אא) הפיגוע בתחנת הדלק בגבעת זאב........................... עמ׳ 47

(בב) רצח הנזיר היווני במעלה אדומים........................... עמ׳ 48

(גג) הפיגוע במסעדת ״סי פוד מרקט״ בתל-אביב............. עמ׳ 48

(דד) ניסיון לפיגוע ליד קניון מלחה בירושלים................ עמ׳ 49

(3) אספקת כספים ואמל״ח לשם ביצוע פיגועי טרור ................ עמ׳ 49

(4) סיוע למבוקשים ולמשפחות העצורים והחללים.................... עמ׳ 51

(5) גיוס פעילים לארגוני הטרור והדרכתם............................... עמ׳ 52

(6) קריאותיו הפומביות של הנאשם לבצע פיגועים כנגד ישראל..... עמ׳ 53

<u>ה. הקשר של הנאשם לפיגועים נשוא כתב האישום</u>                    עמ׳ 56

(1) רצח טליה ובנימין כהנא ז״ל ליד עפרה................................ עמ׳ 56

(2) רצח עקיבא פשקוס ז״ל באזור התעשיה בעטרות................... עמ׳ 57

(3) רצח הנזיר היווני ציפופקטיס גרמנוס ז״ל במעלה אדומים......... עמ׳ 59

(4) רצח יניב ושרון בן שלום ז״ל ודורון יוסף סוורי ז״ל בכביש 443 ..עמ׳ 59

(5) רצח מאיר וייזבוייז ז״ל בכביש מס׳ 9 בירושלים.................... עמ׳ 61

(6) רצח אליהו כהן ז״ל בפיגוע ירי בכביש 443 ליד גבעת זאב......... עמ׳ 62

(7) רצח יואלה חן ז״ל ליד תחנת דלק גבעונים בכביש 443........... עמ׳ 63

(8) רצח 6 אנשים באולם השמחות ״ארמון דוד״ בחדרה............... עמ׳ 64

(9) רצח שתי נשים בפיגוע ירי ברחוב יפו פינת לונץ בירושלים........ עמ׳ 66

(10) פיגוע ירי בשכונת נוה-יעקב בירושלים בו נהרגה השוטרת גלית

ארביב ז״ל................................................................... עמ׳ 66

(11) רצח גד רג׳ואן ז״ל במפעל בשקביץ בעטרות..................... עמ׳ 69

(12) הפיגוע במסעדת ״סי פוד מרקט״ בתל אביב...................... עמ׳ 70



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                           תפ"ח 1158/02

(13) פיגוע ירי במלון "ג'רמי" בנתניה.............................................. עמ' 72

(14) רצח קונסטנטין דנילוב ז"ל בבאקה אלע'רביה.................................. עמ' 73

(15) פיגוע ירי בין עטרת לביר-זית.............................................. עמ' 74

(16) ניסיון פיגוע בפאב "ביאנקיני" בירושלים..................................... עמ' 75

(17) פיגוע ירי בכביש 9 ליד הגבעה הצרפתית בירושלים.......................... עמ' 77

(18) ניסיון לפיגוע התאבדות בבית חניוא בירושלים................................. עמ' 78

(19) פיגוע ירי בכביש בית אל- פסגות.......................................... עמ' 78

(20) ניסיון פיגוע בקניון מלחה בירושלים........................................ עמ' 79


חלק שלישי: הערכת הראיות ומשקלן                                               עמ' 81


חלק רביעי: ניתוח משפטי ומסקנות                                              עמ' 92

1. פעילות וחברות בארגון טרוריסטי                                            עמ' 92

2. אחריותם של מבצע בצוותא, משדל ומסייע וההבחנה ביניהם                    עמ' 94

   א. מבצע בצוותא לעומת מסייע.............................................. עמ' 96

   ב. עבירת הסיוע.......................................................... עמ' 104

   ג. עבירת השידול והאבחנה בין מבצע בצוותא למשדל.......................... עמ' 112

   ד. אחריותו של מנהיג חבורה עברויינית כמבצע בצוותא או כמשדל... עמ' 117


3. מסקנות בעניין אחריותו של הנאשם כמבצע בצוותא, משדל ומסייע            עמ' 123

   א. פיגוע הרצח בתחנת הדלק בגבעת זאב................................... עמ' 135

   ב. רצח הנזיר היווני ציפוקטקיס גרמנוס ז"ל במעלה אדומים............... עמ' 136

   ג. פיגוע הרצח במסעדת "סי פוד מרקט" בתל אביב.......................... עמ' 138

   ד. ניסיון פיגוע ליד קניון מלחה בירושלים................................ עמ' 139


חלק חמישי: סיכום                                                          עמ' 139



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

## הכרעת – דין

### חלק ראשון:   מבוא

1. בתאריך 14.8.2002 הוגש נגד הנאשם כתב-אישום, המייחס לו מספר עבירות של **רצח בכוונה תחילה** לפי סעיף 300(א)(2) לחוק העונשין, התשל"ז-1977 (**להלן: "חוק העונשין"**); **סיוע לרצח** לפי סעיף 300(א)(2) ביחד עם סעיף 31 לחוק העונשין; **שידול לרצח** לפי סעיף 300(א)(2) יחד עם סעיף 30 לחוק העונשין; **ניסיון לרצח** לפי סעיף 305(1) לחוק העונשין; **קשירת קשר לביצוע פשע** לפי סעיף 499 לחוק העונשין; **פעילות וחברות בארגון טרור** לפי סעיפים 2 ו-3 לפקודת מניעת טרור, התש"ח-1948.

2. כתב-האישום מייחס לנאשם שותפות, אירגון וביצוע של פעולות-טרור כנגד מטרות ישראליות, אשר החלו בספטמבר 2000 במסגרת אירועים המכונים "אינתיפאדת אלאקצא" (להלן: **"האינתיפאדה"**). על-פי הנטען בכתב-האישום, עמד הנאשם בראש אירגוני-טרור באיזור יהודה ושומרון (אי"וש): אירגון ה"פת"ח" (להלן: **הפת"ח"**), אירגון ה"תנזים" השייך לפת"ח (להלן: **"התנזים"**) ואירגון "גדודי חללי אלאקצא", הכולל התארגנויות של פעילי טרור שביצעו פעולות טרור כנגד מטרות ישראליות (להלן: **"גדודי חללי אלאקצא"**). הנאשם היה זה שתיאם וקישר בין גורמי השטח הבכירים בשלושת האירגונים הנ"ל (כולם יחד יכונו להלן: **"אירגוני הטרור"**), אשר היו אחראים לביצוען של פעולות-טרור נגד מטרות ישראליות.

כתב האישום מפרט את שמונה של שמונה פעילי טרור בכירים, שפעלו תחת הנהגתו של הנאשם בביצוע פעולות הטרור, והם נאסר עויס (להלן: **"עויס"**), אחמד ברגותי, נאצר אבו חמיד (להלן: **"אבו חמיד"**), ראא"ד כרמי (להלן: **"כרמי"**), מהנד דיריה (אבו חלאווה) (להלן: **"מהנד"**), מחמד מצלח (אבו סטחה) (להלן: **"אבו סטחה"**), מנצור שרים (להלן: **"שרים"**) ומחמוד טיטי (להלן: **"טיטי"**).

2

בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

הנאשם ומפקדי השטח גייסו פעילים לאירגוני הטרור, הפעילו אותם ודאגו לספק להם
אמצעי לחימה (אמל"ח) וכסף. הנאשם עסק גם בהכשרת פעילי הטרור למטרתם ובגיוס
כספים לאירגוני הטרור. כמו כן שידל הנאשם ועודד את פעילי הטרור לבצע פיגועים כנגד
מדינת ישראל באמצעי התקשורת, בכינוסים שונים ובאמצעות הפצת כרוזי הסתה.

כתב-האישום מייחס לנאשם בסעיפים 8-15 מעורבות ואחריות לבצוע 37 פיגועים
ופעולות-טרור, אשר בוצעו ברובם בתחומי מדינת-ישראל על-ידי מפקדי השטח והפעילים
בחודשים דצמבר 2000 ועד אפריל 2002, ושבהם קופחו חייהם של רבים מאזרחי מדינת-
ישראל וחייליה, ונפצעו רבים אחרים. חלק ממעשי הטרור מפורטים בכתב האישום, ורובם
מפורטים רק בנספח לכתב האישום.

3    ראיות התביעה כוללות את עדויותיהם של אנשי מערכת הביטחון, חוקרי השב"כ
ואנשי המשטרה שעסקו בחקירת הנאשם; עדויותיהם של אזרחים וגורמים אחרים שהיו
עדים לפיגועים נשוא כתב האישום; מסמכים שנתפסו על ידי צה"ל במשרדי הפת"ח
ובמשרדו של הנאשם; חוות דעת של מומחים ממערכת הביטחון בעניין פעילות אירגוני
הטרור ומעמדו ותפקידו של הנאשם בהם; עדויותיהם של פעילים באירגוני הטרור
והדברים שמסרו בחקירתם בשב"כ ובמשטרה; אמרות הנאשם שתועדו על ידי אנשי
השב"כ בדו"חות כתובים, ואשר חלקם הוקלטו ותומללו; דברים שאמר הנאשם
למדובבים שהוכנסו לתאו במהלך חקירתו ולמקורבו אחמד ברגותי שנעצר עמו; דברי
הנאשם בכלי התקשורת לפני מעצרו, והודעות הנאשם במשטרה.

תמלילי חקירתו של הנאשם בשב"כ הוגשו על ידי חוקרי השב"כ שניהלו את החקירה
שהוקלטה וזיהו את קולו של הנאשם בה ("מופז" בעמ' 58, "נדב" בעמ' 79, "סמית" בעמ'
86-85 ו"דני" בעמ' 90). שיחתו של הנאשם עם אחמד ברגותי הוגשה על ידי החוקר
"רוברטו" (עמ' 65). הקלטות מחקירת הנאשם ומחקירת המדובבים פלוני 1 ופלוני 3
תומללו על ידי נתן בסו (עמ' 174).

3



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

חוקרי השב"כ שהעידו אישרו את נכונות הכתוב בזכ"דים שרשמו במהלך חקירתו של
הנאשם (זכ"דים ת/6 - ת/96). מדובר בדו"חות שנרשמו בעברית לגבי חקירה שהתנהלה
בעברית ובערבית (הנאשם דובר עברית טובה), בהם נרשמו עיקרי הדברים שנאמרו על ידי
הנאשם (ראה החוקר "סטיב" בעמ' 53, החוקר "אמיל" בעמ' 55 והחוקר "רון" בעמ' 60).

4.      אשר להודעות הנאשם במשטרה, הרי שהנאשם הודיע בכל חקירותיו במשטרה -
בניגוד לדרך בה נהג בעת חקירותיו בשב"כ - כי הוא כופר בזכותה של המשטרה לחקור
אותו, ולכן סירב לענות על שאלות החוקרים (ראה הודעות ת/99-ת/109). לפיכך, הודעותיו
של הנאשם כוללות שאלות רבות שהוצגו לו על ידי החוקרים, וסירובו להשיב עליהן.
במקרים בודדים ביותר התייחס הנאשם בקצרה לדברים שנאמר לו החוקר, ובהזדמנויות
אלו הכחיש לחלוטין את כל הטענות שהוצגו לו - גם אלה בהם הודה בחקירתו בשב"כ.
הנאשם הכחיש כי היה מנהיגם של גדודי חללי אלאקצא והתנזים (הודעה ת/101 עמ' 6,
הודעה ת/105 עמ' 2, הודעה ת/106 עמ' 3); הכחיש כי הכיר את פעילי הטרור שהעידו כי
היו בקשר עמו (כפי שיפורט להלן), ואפילו הכחיש כי הכיר את ראיד כרמי (ת/104 עמ' 8).
כל אלו הוכחו, כפי שיבואר להלן, לא רק מפי פעילי השטח, אלא גם מפי הנאשם עצמו,
מהמסמכים שנתפסו במשרדו, אשר הנאשם הכחיש בחקירתו כל קשר אליהם, וטען כי
כתב ידו לא מופיע עליהם (ראה הודעות ת/108-ת/109).

הודעותיו של הנאשם הוגשו על ידי החוקרים דוד זריהן ורפי נוריאל (עמ' 113, 38), אשר
הסבירו כי הנאשם סירב לחתום על האזהרה ועל ההודעה, וכי הוא נחקר בעברית. זריהן
אף העיד כי הנאשם סירב למסור טביעת אצבע ולהצטלם. הנאשם אמר באופן כללי
בהודעתו ת/106 כי כל ההאשמות כנגדו אינן נכונות, וכי הוא חף מכל אשמה.

5.      בפתח משפטו העלה הנאשם טענות מקדמיות הנוגעות לסמכות בית משפט זה
לשפוט אותו, ואלה נדחו בהחלטת בית המשפט מיום 19.01.03 (עמ' 1-34 לפרוטוקול).
הנאשם בחר שלא להסתייע בשירותי סניגור, ואף דחה נמרצות ובעקביות כל ניסיון של
בית המשפט לשכנעו להיעזר בסניגוריה הציבורית או בסניגור מטעמו.

4



**בתי המשפט**

<u>בית המשפט המחוזי בתל-אביב-יפו</u>     תפ"ח 02/1158

בית המשפט הטיל אמנם על הסניגוריה הציבורית לייצג את הנאשם, חרף בקשותיה החוזרות ונשנות להשתחרר מייצוגו, ולמעשה היא מייצגת את הנאשם גם כיום ונכחה בכל הדיונים. ואולם הסניגוריה הציבורית בחרה להיעתר לבקשת הנאשם שלא להעלות טענות כלשהן מטעמו במהלך המשפט, לרבות טענות משפטיות, ואף לא לחקור את העדים.

כך התנהל ההליך על פי בחירתו של הנאשם, אשר ממשיך לכפור בסמכות בית המשפט לשפוט אותו. בנסיבות אלו בחר הנאשם גם שלא להגיב על כתב האישום. כמו כן נמנע הנאשם מלהעיד בעצמו או להביא עדים מטעמו. עם זאת, הנאשם הגיב מידי פעם על דברי העדים או על טענות שטענה ב"כ המאשימה במהלך הדיון, ודבריו נרשמו בפרוטוקול כלשונם. בנוסף הגיב הנאשם על סיכומי התביעה בעל פה (שהוגשו גם בכתב), בנאום מפיזריה שנשא במסגרת הסיכומים בעל פה, ואשר לא התייחס לגופן של ההאשמות שהועלו כנגדו. למותר לציין כי הנאשם קיבל בעצמו, ובאמצעות הסניגוריה הציבורית, את כל חומר הראיות, הפרוטוקולים והסיכומים.

5.  העבירות נשוא כתב האישום הן ברובן "עבירות פנים" הנוגעות לפיגועים שבוצעו בישראל, וחלקן "עבירות חוץ", שבוצעו בתחומי האיזור (קרי: יהודה ושומרון) ואולם, כפי שהבהרנו בהחלטה שניתנה בנוגע לטענותיה המקדמיות של הנאשם, מוסמך בית משפט בישראל לדון בעבירות חוץ כנגד בטחון המדינה, או נגד אזרח או תושב ישראלי, יהא מקום ביצוע העבירה אשר יהא (סעיף 13(א)-(ב) לחוק העונשין, תשל"ז-1977). זו היא אותה "תחולה פרוטקטיבית", אשר נועדה להגן על אזרחים ותושבים ישראלים כנגד פעולות טרור הנעשות בחסותן ובגיבויון של מדינות אחרות (ש"ז פלר, מ. קרמניצר, **תגובה לחיבור בנושא התחולה הנציונלית של דיני העונשין**, פלילים ה1 (1996) 65, בעמ' 83, והשווה דעתו של י. שחר, שם בעמ' 5). עוד פסקנו בהחלטה שניתנה בטענותיו המקדמיות של הנאשם, כי לא נראה שהתנאים הקבועים בסעיף 14(ב) לחוק העונשין רלבנטיים למקרה זה, אם הם חלים כלל על הסמכות הפרוטקטיבית שבסעיף 13 לחוק (להבדיל מהסמכות הפרסונלית שבסעיף 14), שכן הרשות הפלסטינאית איננה מדינה. העבירות המיוחסות לנאשם בכתב האישום הן עבירות כנגד בטחון המדינה, כנגד אזרחיה ותושביה, ועל כן הן נופלות במסגרת סעיף 13 לחוק העונשין, ובית משפט זה מוסמך לדון בהן.

5



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

חלק שני:     מסכת הראיות

הפת"ח, התנזים וגדודי חללי אלאקצא כאירגוני טרור

ראש חטיבת המחקר באגף המודיעין של צה"ל, תא"ל י. קופרווסר, הגיש במהלך
עדותו (עמ' 38) חוות דעת בה התייחס לפעילותם של הפת"ח, התנזים וגדודי חללי
אלאקצא (ת/1). אל חוות הדעת צורפו מסמכר שלל שנתפסו על ידי צה"ל במבצע "חומת
מגן" הנוגעים לעניין זה. הפת"ח (ראשי תיבות במהופך בערבית של "התנוענה לשחרור
פלסטין") דגל מאז יסודו על ידי יאסר ערפאת בשנת 1959 במאבק מזוין כנגד ישראל, אשר
יבטא בביצוע פיגועי טרור נגד יעדים ישראליים בארץ ובחו"ל. לאחר חתימת הסכמי
אוסלו נדחק עיקרון "המאבק המזוין" למקום משני, אך נותר כאופציה להשגת מטרות
הארגון במקרה שהמו"מ עם ישראל לא יצלח. עם פרוץ האינתיפאדה השניה בחודש
ספטמבר 2000, הוביל הפת"ח את פיגועי הטרור בשטחים, וזאת באמצעות שתי ועדות
הפועלות המנהלות את הפעילות - האחת באזור יהודה ושומרון, והשניה באזור רצועת עזה.
בראש הועדה העליונה של אזור יהודה ושומרון עמד הנאשם עד ליום מעצרו (סעיפים 1-3
לחוו"ד).

המבצע של הפת"ח כלל את פעילי השטח של התנועה - התנזים (ארגון - בערבית).
פעילי התנזים מהווים את חוד החנית בפעילות החבלנית של הפת"ח כנגד ישראל. גדודי
חללי אלאקצא הוא שם כיסוי להתארגנויות טרור של הפת"ח, אשר נוטלות אחריות
מרכבית למעשי הטרור. אנשי "הגדודים" הם למעשה פעילים של הפת"ח, כאשר מרבית
ההתארגנויות רואות בנאשם מקור סמכות מרכזי לפעילותן (סעיפים 4-5 לחוו"ד).

התנזים וגדודי חללי אלאקצא מהווים, על פי חוות דעתו של תא"ל קופרווסר, את הזרוע
הצבאית הבלתי ממוסדת של הפת"ח, שבראשה עמד הנאשם. מסמך שלל המצורף כנספח
לחוו"ד של תא"ל קופרווסר הוא מכתב החתום בידי הפת"ח וגדודי חללי אלאקצא גם
יחד.

6



**בתי המשפט**

בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

וכתבי אחרים שצורפו לחוות הדעת מראים כי גדודי חללי אלאקצא פונים בבקשה
כספי מיאסר ערפאת (מסמך 2), וכי הפת"ח וגדודי חללי אלאקצא חתומים על
המשבחים פעילות טרור שבוצעה בתחומי ישראל (מסמכים 3, 5). במסמך 6 שצורף
ואשר נשלח ביום 8.5.01 מאת גדודי חללי אלאקצא אל הנאשם, מופיע פירוט
של גדודי חללי אלאקצא במחוז ג'נין (כולל פיגוע באום אלפאחם), ובקשה לסיוע
כספי לחימה וכסף לשם המשך הביצוע של פעילות זו. מסמכים אחרים של גדודי חללי
אלאקצא שהופנו ליאסר ערפאת, כוללים בקשות לסיוע למבוקשים הנרדפים על ידי
ישראל ולמשפחות החללים (נספח ב' ומסמכים 2-4 לנספח זה). חלק מן המסמכים נכתבו
בכתב ידו הנאשם. יצויין כי כינויו של הנאשם היה, על שם בנו הבכור, **"אבו אלקסאם"**
(הודעת הנאשם ת/107 עמ' 1, והדרך בה פנה אחויל אל הנאשם בעמ' 164).

על פי חוות דעתו של תא"ל קופרווסר ביצעו אנשי הפת"ח למעלה מ- 1,200 פיגועים
(נכון ליום 18.8.02), בהם נהרגו 176 ישראלים ונפצעו רבים אחרים. פיגועים
אלה כללים התאבדות, וירי ממרגמות ונשק קל. במהלך האינתיפאדה עברו התארגנויות
הטרור של הפת"ח יותר ויותר לביצוע פיגועי התאבדות בתחומי ישראל (סעיף 5 לחוו"ד).
אירועים שקדמו למבצע "חומת מגן" ביצעו גדודי חללי אלאקצא פיגועי התאבדות
בירושלים, תל אביב, מחולה, מחנה 80, מחסום מכבים, נתניה, אשדוד, כפר סבא,
אפרת, ובעקבות כך הוכנסו לרשימה האמריקאית של ארגוני הטרור ביום 27.3.02 (סעיף
4 לחוו"ד ונספח ג' המפרט את פיגועי ההתאבדות שבוצעו על ידי תנועת הפת"ח).

לגבי חוות הדעת של תא"ל קופרווסר יש לומר, כי מבחינת דיני הראיות איננו
נסמך על הערכות ומסקנות מודיעיניות אשר מבוססות על מקורות מידע שונים
שלא הובאו בפני בית המשפט, בהיותם עדות שמיעה. נוכל לסמוך על חוו"ד זו רק במידה
שהיא תואמת ראיות קבילות אחרות שהובאו בפנינו. אולם, פעילות הטרור בחסות הפת"ח
של שלושת הארגונים הנ"ל עולה בבירור מראיות ישירות רבות שהובאו במשפט, כולל
הודעות שמסרו בחקירותיהם הנאשם ופעילי הטרור, כפי שיפורט בהמשך הכרעת הדין.

7



**בתי המשפט**

<div dir="rtl">

תפ"ח 1158/02                                    <u>בית המשפט המחוזי בתל-אביב-יפו</u>

‏אמר אבו חמיד, שהיה אחד ממפקדי השטח הבכירים ביהודה ושומרון, סיפר בהודעתו
‏במשטרה (ת/149(א), בעמ' 2-3, 8-7, 13-17), על הקמת גדודי חללי אלאקצא ביום 1.1.01,
‏על שנת שיהוו מיליציה של הפת"ח, ויבצעו פיגועים כנגד מתנחלים וחיילי צה"ל. הוא
‏מפרט בהודעתו הנ"ל (וכן בהודעתו ת/149 (ג)) את הפיגועים שבוצעו על ידו וע"י אנשיו
‏נגד מטרות אזרחיות וצבאיות של ישראל, תחת הנהגתו ובסיועו של הנאשם (כפי שיפורט
‏בהמשך).

‏גם מדברים שאמר הנאשם בחקירתו, וממסמכים שנכתבו בכתב ידו, ניתן ללמוד
‏על מעורבות של ארגוני הטרור הנ"ל. הנאשם הסביר את דרך פעולתן של החוליות המכוננות
‏בידי חללי אלאקצא", שלדבריו ביצעו "פעילות צבאית" (ת/19 סעיף 14, שהוגש ואושר
‏על ידי החוקר "מופזי" בעמ' 58). כך גם הסביר הנאשם בחקירתו את הדרך שבה נוצרו
‏חוליות חללי אלאקצא באזור יהודה ושומרון, ופעלו בצורה מפוזרת, וטען כי הפת"ח לא
‏פיקח על פעילותם; אך הוא הודה כי חוליות אלו פנו אליו לקבלת כסף, משום שראו בו
‏אחראי של פת"ח בגדה המערבית" (תמליל ת/98 (ה) עמ' 60-61). כפי שיבואר בהמשך,
‏היו פעילי הטרור מגדודי חללי אלאקצא את בקשותיהם לסיוע כספי לשם רכישת נשק
‏ולביצוע פיגועים אל הנאשם, והלה היה פונה בשמם ועבורם אל יו"ר הרשות הפלסטינאית
‏מוחמד הפת"ח, יאסר ערפאת. מכאן ברור הקשר של גדודי חללי אלאקצא לארגון הפת"ח,
‏והקשר של הנאשם לגדודים אלו.

<u>מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים כנגד ישראל</u>

‏תא"ל קופרווסר הגיש בעדותו חוו"ד נוספת, המתייחסת למעורבותו של הנאשם
‏במטרור (ת/2). לחוו"ד זו צורפה שורה של נספחים הכוללים ראיונות עם הנאשם באמצעי
‏התקשורת השונים וממסמכים שכתב הנאשם או שנמצאו במשרדו. גם חוות דעת זו כפופה
‏להערה שפורטה בסעיף 9 לעיל, בנוגע לקבילותן של הערכות מודיעיניות הנסמכות על
‏מקורות מידע שלא פורטו ולא הובאו בפנינו, ולכן גם בנושא זה נזקק לראיות עצמאיות
‏הקבילות שהובאו במשפט.

</div>

8



בתי המשפט

תפ"ח 1158/02

<u>בית המשפט המחוזי בתל-אביב-יפו</u>

12. בחוות הדעת של תא"ל קופרווסר ת/2 נאמר כי הנאשם היה עד למעצרו ראש
הועדה העליונה של הפת"ח ביהודה ושומרון, ולפיכך שימש כמנהיג הפת"ח בגדה. זאת
ניתן ללמוד מן המסמכים השונים שכתב הנאשם ושנכתבו אליו, ואשר צורפו לחוות הדעת
ת/1 ות/2. בתפקידו הנ"ל היווה הנאשם מקור סמכות מרכזי לבכירי הפת"ח, וצינור מקשר
בין ראש הרשות הפלסטינאית, יאסר ערפאת, לבין דרגי השטח בתנועה (סעיפים 1-2).
עוד נאמר בחוות הדעת הנ"ל (סעיף 4), כי עם פרוץ האינתיפאדה בחודש ספטמבר 2000,
תפס הנאשם חלק מרכזי ביותר בהובלת הטרור נגד ישראל על ידי גורמי פת"ח ובכלל.
מעורבותו באה לידי ביטוי בדרכים שונות: **ראשית**, הנאשם היווה מקור השראה והתווה
את מדיניות הפיגועים, באמצעות פגישות אישיות עם פעילי הטרור של תנועת הפת"ח
והתבטאויות פומביות. **שנית**, הנאשם היה מקור סמכות ומימון לפעילי הטרור של תנועת
הפת"ח: הוא נתפס בעיני גדולי חללי אלאקצא כמנהיג המרכזי בפעילותם, שימש כצינור
קשר בינם לבין יו"ר הרשות הפלסטינאית והעביר לרשותם סכומי כסף המסתכמים
בעשרות אלפי שקלים לצורך פעילות הטרור. **שלישית**, הנאשם העביר הנחיות ישירות
לפעילי הטרור - הן במישור האסטרטגי, והן במישור הטקטי הנוגע לפיגועים נקודתיים.

13. הנאשם לא הסתיר בחקירתו בשב"כ את עמדתו הברורה, לפיה תנועת הפת"ח
חייבת להוביל את "המאבק המזוין נגד ישראלי", וכי זו הדרך היחידה להשגת מטרות
הפלסטיני לאחר כשלון תהליך השלום, ולאחר שהנאשם עצמו היה פעיל שלום במשך
שנים רבות (זכ"ד ת/59 ס' 2-5, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). הוא הבהיר
כי כאשר הוא משתמש בביטוי "מאבק מזוין", הוא מתכוון לפיגועים (תמליל חקירה ת/98
יא עמ' 2-3). הנאשם הסביר כי מנהיגי הפת"ח חששו מהיחלשות כוחם ברחוב הפלסטיני
למול התנועות האיסלאמיות, דבר שדרבן אותם לנקוט קו של פיגועים נגד ישראל (זכ"ד
ת/21 סעיף 5, שהוגש ואושר על ידי החוקר "רוברטו" בעמ' 63 (בטעות נרשם בפרוטוקול
ת/41); זכ"ד ת/23 ס' 5, שהוגש ואושר על ידי החוקר "דני" בעמ' 90 ; זכ"ד ת/27 ס' 10-12
וזכ"ד ת/55 ס' 3 שהוגש ואושרו על ידי החוקר "סמיתי" בעמ' 85 ; זכ"ד ת/30 ס' 8-12
וזכ"ד ת/58 ס' 5 שהוגשו ואושרו על ידי החוקר "אמילי" בעמ' 54 ; זכ"ד ת/40 ס' 15 שהוגש
ואושר על ידי החוקר "מופזי" בעמ' 58 ; זכ"ד ת/70 ס' 3 שהוגש ואושר על ידי החוקר
"סטיבי" בעמ' 53).

9

בתי המשפט

<div dir="rtl">

בית המשפט המחוזי בתל-אביב-יפו      ת"פ 1158/02

הנאשם אמר בחקירתו כי "עמדתו המוצהרת הינה מאבק מזוין מול הכיבוש הישראלי, שבו יש לו נשק שיבצע פיגועים זה הקו הכללי" (ת/23 ס' 5, וכן ראה זכ"ד ת/6 ס' 11-12, שבהם מדובר על ידי החוקר "רוברט" בעמ' 62). הוא הסביר כי לפי השקפתו פיגועים וכיבושו לישראל יקדמו את השלום, ויגרמו לישראלים להבין שיש להם מה להפסיד (ת/40 עמ' 15, ות/70 סעיף 4). הנאשם הבהיר כי מבחינתו אזרחים ישראליים החיים בהתנחלויות הם אויב שיש לפגוע בו (זכ"ד ת/63 ס' 16, שהוגש ואושר על ידי החוקר שעל בעמ' 82). הוא אף אמר כי פיגועים כנגד מתנחלי יהודה ושומרון הם לגיטימיים, גם כאשר מדובר בנשים וילדים (זכ"ד ת/6 ס' 13, שהוגש ואושר ע"י החוקר "רוברט" בעמוד 1, וכיד ת/77 ס' 2 שהוגש ואושר על ידי החוקרים "צדוק" ו"אופיר" בעמ' 83, 87).

הנאשם חזר והדגיש במהלך חקירתו כי בויכוח שהתנהל בתוך הרשות והפת"ח בעניין סוג הפיגועים כנגד ישראל - דגלו ערפאת והוא בקו הקובע כי יש להתמקד בפיגועים כנגד צה"ל והמתנחלים, בעוד שמנהיגים כמו אבו עלא ואבו מאזן התנגדו לכל סוג של אלימות, רק כאשר מאיפה הפת"ח תמכו בפיגועים בתוך ישראל (ת/27 סעיפים 12-13; ת/30 סעיף 8; ת/40 סעיף 3). חרף התנגדותם של ערפאת והנאשם לפיגועים בתוך ישראל, הם אידיבו להמשיך כל החוליות ופעילי השטח במהלך האינתיפאדה (זכ"ד ת/55 ס' 3ו, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

עמדתו של הנאשם כמפורט לעיל באה לידי ביטוי גם בדבריו בחקירה שתומללו. עמדתו של הנאשם כי אין לבצע פיגועי התאבדות בתוך ישראל, הוא הסביר כי פגיעה בישראלים כמוה כפגיעה בצבא, ולכן בעניין זה לא היה ויכוח בתוך הפת"ח; אך הוא הודה כי בתקופה האחרונה שלפני מעצרו החל הפת"ח לבצע גם פיגועי התאבדות בתוך ישראל, ואף אישר כי הפת"ח נגרר לתוך פעילות זו כדי שלא להשאיר את השליטה בשטח בידי הארגונים האיסלאמים (ת/198ד עמ' 27-29). הנאשם הסביר כי הוא באופן אישי הסתייג מפיגועים בתוך ישראל, אך תמך ב"מאבק המזוין כנגד הכיבוש הישראלי", ואף עשה כן בכתבה פומבית בטלויזיה (ת/198ז עמ' 7, 10).

</div>

10



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                תפ"ח 1158/02

אשר כי בחמשת החודשים האחרונים שקדמו למעצרו נטל הפת"ח תפקיד מרכזי רמת האלימות, והנהיג את המלחמה; הנאשם לא כיחד כי הוא נטל חלק בכך עמ' 35, ת/98ה עמ' 3-4).

הדניש בחקירתו כי הוא תמך בהסכם השלום, ופעל למענו במשך 10 שנים, אך נכונה לדבריו מהעדר תקווה להשגת פתרון פוליטי עם ראש הממשלה שרון (ת/98 עמ' 44-45). הנאשם אף הביע דעתו כי הפלשתינאים טעו כאשר דחו את הצעות ישראל, סמך את הצעת הנשיא קלינטון, בועידת "קמפ דייוויד", שכן לו קיבלו את ההצעות היתה להם היום מדינה עצמאית (זכ"ד ת/95, שהוגש ואושר על ידי החוקר "אופירי").

על פישתו של הנאשם בנושא הפיגועים, ועל תפקידו של הפת"ח בביצוע פיגועים ישראל, ניתן ללמוד גם משיחות שניהל הנאשם עם המדובבים שהוכנסו לתאו. פלוני 1", הציג עצמו בפני הנאשם כפלשתינאי משכם, הוא מסר לחוקרי את הדברים שאמר לו הנאשם לאחר קיום השיחות, ואלו נרשמו בזכדי"ם של במשטה שהעידו במשפט (רוברט" בעמ' 154, מיקי" בעמ' 155, "אופירי" בעמ' 156 בעמ' 157), וכן העיד פלוני 1 עצמו (עמ' 101-107). פלוני 1 העיד כי הוא קרא את שרשמו אנשי השב"כ על שיחותיו עם הנאשם, ואישר את תוכנם (עמוד 105). פעל והופעל המדובב פלוני 3, שזיהה את קולו של הנאשם בקלטת ת/124ב בעמ' 107-110, ומוצגים ת/122-ת/125).

פלוני 1, סיפר לו הנאשם שהוא היה זה שהקים את גדודי חללי אלאקצא עליהם (עמ' 106). בזכ"ד שנרשם מפיו (ת/117 שהוגש ואושר על ידי החוקר בעמ' 154), אמר פלוני 1 כי הנאשם אמר לו שהאינתיפאדה למעשה היתה לאור המצב המדיני, הרחבת ההתנחלויות והמשך הכיבוש והלחץ על בשטחים, וכי ביקורו של אריאל שרון בהר הבית היה רק "הקש ששבר את גב והצית את האינתיפאדה שהיתה צפויה ממילא (ראה גם זכ"ד ת/25 סי' 18, שהוגש על ידי החוקר "מופדי" בעמ' 58).



‏בתי המשפט

‏תפ"ח 02/1158                                    ‏...משפט המחוזי בתל-אביב-יפו

‏...ודע בהר הבית, ביקשו מנגנוני הביטחון של הפת"ח מערפאת להורות על הפסקת
‏...ה, וערפאת לא הגיב. הנאשם עצמו סיפר כי עזב בזעם את הישיבה לאור בקשת
‏...ים, וכי הוא שנוא עליהם משום ש"ימשך את העם להשלמת המצבי". הנאשם אמר
‏...ד מטרת האינתיפאדה היתה פגיעה בחיילים ובמתנחלים כדי לגרום לעזיבתם,
‏...בוכיח לעולם שהפלסטינאים נלחמים בכיבוש. ואולם לאחר שישראל החלה
‏...ות החיסולים, ובעיקר לאחר שפגעה בראיד כרמי, עבר הפת"ח לפעול בתוך ישראל
‏...צוע באזרחים, על מנת לפגוע בכלכלת ישראל ובתיירות, ולהפעיל לחץ על הרחוב
‏...ל שילחץ על הממשלה לסגת מהשטחים (שם, סי 12-13, 17, 20-21).‏ כמו כן אמר
‏...לסוני 1 כי מבחינתו הפיגועים מהווים הגנה עצמית של הפלסטינים, אשר מוכנים
‏...ד לשלום, וכי פיגועי ההתאבדות נובעים מן הכיבוש ומן המצב של הפלסטינאים
‏...חים שכ"ד ת/110 סי 22, 27).

‏...של הנאשם התומכת בהמשך האינתיפאדה באה לידי ביטוי גם במכתב ששלח
‏...ערפאת ביום 31.12.00 (ת/5 (א42)).

‏...באשר למדיניות הפיגועים של הפת"ח, הסביר הנאשם בחקירתו כי כאשר ערפאת
‏...מעניין בהפסקת אש, הוא היה דואג להעביר הנחיה זו לגורמים רבים, ובהם הנאשם;
‏...שר היה מעוניין בהמשך הפעולות הוא דאג שהפעילים, כולל הנאשם, יבינו זאת
‏...בות, ובעיקר אי-ההתגובתות שלו. הנאשם אמר: "**אם הוא (ערפאת) למשל, לא רוצה**
‏...**אש הוא מסתדר בדרך אחרת. לא אומר שום דבר"** (זכ"ד ת/24 סי 3ב, שהוגש ואושר
‏...החוקר "סמית" בעמי 85, ותמליל חקירתו של הנאשם ת/98ט עמי 32-33).‏ הנאשם
‏...רבאות מעולם לא הורה לו בצורה מפורשת לבצע פיגועים. אך הוא הוסיף כי
‏...ידי שערפאת התנגד לביצוע פיגועים בתוך ישראל בלבד, ניתן היה להבין שהוא תומך
‏...ים בשטחים, ולכן גם לא הורה להפסיקם; ערפאת אמר בתקשורת כמה פעמים כי
‏...מ...אבידים **בדרכם לירושלים"**, והנאשם שאל באופן רטורי האם אין זו הצהרה
‏...ה לבצע פיגועים (זכ"ד ת/60 סי 7-4 שהוגש ואושר על ידי החוקר "אמילי" בעמי
‏...ד ת/68 סי 1-8, שהוגש ואושר על ידי החוקר "מיקי" בעמי 81 ; זכ"ד ת/62 סי 3-5
‏...ואושר על ידי החוקר "דני" בעמי 90).



בתי המשפט

ופט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

דבור כי לא היה צורך בהוראות ישירות של ערפאת לביצוע פיגועים, שכן הדברים
מבין השורות (זכ"ד ת/63 סי' 11-13 שהוגש ואושר על ידי החוקר "נאורי" בעמי
ם הוסיף כי גם האינתיפאדה לא פרצה בהוראתו של ערפאת, אך היא לא היתה
התקיים אלמלא תמיכתו בה, אף כי הוא לא היה צריך לתת הנחיה מפורשת
עים (זכ"ד ת/64 שהוגש ואושר על ידי החוקר "רוברט" בעמי 62, ות/66 שהוגש
די החוקר "אמילי" בעמי 54). עוד ציין הנאשם כי הבין את תמיכתו של ערפאת
ם לאור העובדה שערפאת היה מאשר לו את הבקשות הכספיות שהגיש עבור
ח של הפת"ח שביצעו פיגועים (זכ"ד ת/70 סי' 17ח', שהוגש ואושר על ידי החוקר
מי' 53). הנאשם תיאר את הקשר שלו עם ערפאת כ"**אישי וישיר**" (תמליל שיחה
.(55

מסתבר, היתה דרך משלו להודיע לאנשי החוליות על הפסקת הפיגועים ועל
וא הסביר בחקירתו כי כאשר רצה בהפסקת אש היה מתקשר לחוליות
ם כי קרה שהיו אנשים שלא שמעו להוראתו; כאשר הנאשם היה מעניין
וא היה מודיע על כך בטלוויזיה, כאשר קרא "למאבק מזויין". כאשר נשאל
ודיע על רצונו בחידוש האש, השיב הנאשם:

רוצה אש, אני מדבר בטלוויזיה אם אני רוצה שלום, יעני אני לא מתקשר
ני ואומר לו ואללה תבצע בשבילנו פיגוע. ואללה תעשה לנו לא יודע מה, אין
י כזה דבר, אני דובר בשם התנועה בפועל קורא לאינתיפאדה אני קורא
ובק מזויין" (ת/98ח עמי 3).

אלו של הנאשם, הרי שמעדותו של פעיל הטרור עויס עולה שהנאשם הורה לו
וע פיגועים בעת ביקורו של השליח האמריקאי אנתוני זיני באזור (ראה להלן).
שאמר המדובב פלוני 1 בחקירתו, בעקבות שיחותיו עם הנאשם, עולה כי
י כעס רב על כך שעויס מסר פרטים אלו בחקירתו (זכ"ד ת/113א סי' 8-9, זכ"ד
י שהוגש ואושר על ידי החוקר "רוברט" בעמי 154). כמו כן הובאו ראיות על
יים בהם הורה הנאשם באופן ישיר לפעילי הטרור המקורבים אליו לבצע
י ישראלים (ראה להלן).

13



בתי המשפט

תפ״ח 1158/02        המשפט המחוזי בתל-אביב-יפו

בתחילת חקירתו בשב״כ הכחיש הנאשם כי היה מנהיג התנזים וגדודי חללי
אל-אקצא, אך אישר את אחריותו לפעילות הצבאית של הפת״ח (זכ״יד ת/17 סי 6, שהוגש
על ידי החוקר ״ארבלי״ בעמי 80, זכ״יד ת/43 סי 6 שהוגש ואושר על ידי החוקר
״רדב״ בעמי 62, ותמליל חקירה ת/98א׳ עמי 43-44). הנאשם טען כי גדודי חללי
אל-אקצא אינם אלא חוליות מפוזרות בכל שטח הגדה המערבית, ושאין להן מבנה מאורגן
ללא מפקדה מרכזית (תמליל שיחה ת/98ה׳ עמי 60-61). עוד אמר הנאשם בחקירתו כי
אחראי על פת״ח היה, למעשה, מפקדו הישיר והממונה עליו, ואת עצמו הגדיר כ״אחראי לכל
פעילות פת״ח בגדה מעצם היותו מזכ״ל הארגון בגדה״ (ת/24 סי 3ב, 5).

הנאשם אישר כי הוא היה מנהיג ״השטח״ של הפת״ח, בעוד שיאסר ערפאת עמד בראש
מנהיג פוליטי (תמליל שיחה ת/98א עמי 67). כך הסביר הנאשם בחקירתו גם את העובדה שאנשי
הפת״ח פונים אליו לקבלת כסף, משום שראו בו ״מפקד״, וכן ״אחראי של פת״ח בגדה
המערבית״, בשל היותו הדובר הפוליטי של התנועה, ומשום שנקט קו ועמדה התומכים
במאבק בכיבוש (תמליל ת/98 עמי 3-4, 61, ת/98ד עמי 33-35). הנאשם הסביר
כי בשל היותו מנהיג נראה בעיני אנשי החוליות, ובאומרו: ״אני המפקד שלהם, הם חושבים אותי
מפקד שלהם״, ואף אישר כי אין אדם אחר שנחשב כמנהיג שלהם (ת/98ט עמי 6-7).

למרות שהשמיע במהלך משפטו טען הנאשם לא פעם כי הוא היה ״מנהיג פוליטי״,
שאינו נוהג בנשק, הדגישני את תפקידו כמזכ״ל הפת״ח בגדה, והיותו חבר הפרלמנט הפלסטינאי. כך
גם נמצא בתחילת חקירתו במשטרה הכחיש הנאשם כי היה אחראי על
מעשי טרור או על גדודי חללי אלאקצא (ת/106 עמי 3, 6). ואולם במהלך חקירתו בשב״כ הודה
הנאשם כי היה מפקד הפת״ח בגדה ומפקד התנזים (זכ״יד ת/18 סי 3 שהוגש ואושר על ידי
החוקר ״רדב״ בעמי 78), וכי הקים את גדודי חללי אלאקצא והיה אחראי על פעילותם;
הנאשם אף התנגדו לפעילותם מנגנוני הביטחון של הרשות (דברי פלוני 1 בזכ״יד ת/117 סי 15,
שהוגש ואושר על ידי החוקר ״רוברט״ בעמי 154).

14



בתי המשפט

המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

דובב "פלוני 3" בשיחתם, כי הוא אכן אחראי על הפת"ח ועל גדודי חללי
וא "לא משוגע לחתום" את שמו על דף נייר בו הדברים ירשמו ; כאשר
אשם כי הוא בכל זאת אחראי למעשי המפגעים, השיב הנאשם כי הוא
ך "הוא לא טיפש לומר זאת לחוקרים" (זכ"יד ת/123 עמי 2, שהוגש על ידי
. במפגש בין הנאשם לבין אחמד ברגותי בעת מעצרם, כאשר הוקלטו ללא
נאשם לאחמד כי אמר בחקירתו שאין לו כל קשר לגדודי חללי אלאקצא.
ואחמד יעץ לנאשם לומר כי רק לו - לאחמד - יש קשר עם הגדודים;
ו כי אמר בחקירתו שהיה מפטר את אחמד לו ידע שיש לו קשר עם
צחק למשמע הדברים (תמליל שיחה ת/127ג עמי 87).

חקירתו כי לבד מהיותו מנהיג פוליטי, הוא גם שימש כאחראי על העניינים
פת"ח (זכ"יד ת/59 סי 6 שהוגש ואושר על ידי החוקר "ואדי" בעמי 96).
במו כ"אחראי על כל הפעילות של התנזים בפת"ח באזור שלו" (תמליל
הוא אף הודה כי היה "אחראי לכל הנעשה כגון אספקת כספים לחוליות,
יצוע פיגועים" (זכ"יד ת/29 סי 1ג שהוגש ואושר על ידי החוקר "סמיתי"
א נחשב כ"מפקד צבאי", וכ"אחראי על העניינים הצבאים של הפת"ח"
נהיג פוליטי ונבחר ציבור (זכ"יד ת/19 סי 2 וזכ"יד ת/59 סי 5- 6, שהוגשו
חוקר "מופזי" בעמי 58).

בשנה שקדמה למעצרו "החל מוצא עצמו יותר ויותר עוסק בענייני אמל"ח
באית" (זכ"יד ת/25 סי 19, שהוגש ואושר על ידי החוקר "מופזי" בעמי 58,
שיחה ת/98ד עמי 15). הוא הסביר כי היה חייב ליטול חלק "בפעילות
נת לשלוט ברחוב הפלסטינאי ולדחוק את רגלי החמא"ס והג'יהאד
מנת שיוכל להצביע על עצמו בעתיד כעל מי שפעל הן למען השלום והן
ד/52ג, שהוגש ואושר על ידי החוקר "סמיתי" בעמי 85).

15



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם ומעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו

התביעה איננה טוענת כי הנאשם יזם או נטל חלק ישיר בביצוע הפיגועים נשוא האישום, שכן היא ערה לכך שמחומר הראיות עולה כי למפקדי השטח ולפעילי השטח סמכויות רחבות ומרחב תמרון רב בביצוע הפיגועים, והם לא נדרשו לקבל אישור לכל פיגוע. התביעה גם מסכימה כי הנאשם לא ידע מראש על כל פיגוע ופיגוע; היה מודע באופן כללי לפעילותם של מפקדי השטח ופעילי הטרור הכפופים לו, אשר בהתאם למדיניות הפיגועים שהוא היה שותף לעיצובה; לעיתים עודכן לפני הפיגוע, לעיתים עודכן בדיעבד (עמ' 47 לסיכומי התביעה).

מהראיות שתפורטנה להלן, היה הנאשם מנהיגם של חוליות הטרור מקרב גדודי חללי אלאקצא. לפחות חלק מחברי חוליות אלו סרו למרותו, ופעלו על פי הנחיותיו. בנוסף על כך, עולה בבירור מן הראיות שהנאשם סייע למפקדי ופעילי הטרור באספקת אמצעי לחימה ומימון כספי. במספר מקרים אישר מראש ביצוע פיגועים כנגד ישראל. יש, אפוא, לבחון בפרק זה מי היו פעילי הטרור תחת הנהגתו של הנאשם, ומה היו קשריו של הנאשם עם פעילים אלו, בפרק הבא הפיגועים שבהם היו מעורבים היו פעילי טרור אלו, ומידת הקשר של הנאשם אליהם.

צאבר עויס

צאבר עויס (להלן: "עויס") היה אחד מפעילי הטרור הבכירים של התנזים באזור פעילותו זו הוא נדון בבית משפט זה ל- 14 מאסרי עולם ועוד 50 שנות מאסר במעצר(ת/172א-ב). בעדותו (עמ' 182-180) סרב עויס להשיב על שאלות, ולאחר כל עיון הוגשו הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/172 – הדבר היחיד שהיה מוכן עויס לומר בעדותו הוא כי כל מה שנרשם בהודעותיו הם של השב"כ, וגם כתב היד המופיע בהודעותיי הוא של אנשי השב"כ. הוא טען כי במשך חקירה מאוד קשים.

16



בתי המשפט

תפ"ח 1158/02

בית המשפט המחוזי בתל-אביב-יפו

מסר עויס במשטרה נכתבו בכתב ידו ותורגמו לעברית על ידי החוקר שגבה את האישור את גבייתו, ואף העיד כי ההודעות נגבו מרצונו החופשי של עויס (רס"מ בעמי 191-192). כמו כן, הוגשו דוחות שרשמו חוקרי השב"כ על דברי עויס (ת/178א-ד). דברים אלו אושרו על ידי חוקרי השב"כ, שהעידו כי הדברים נאמרו מרצונו החופשי, אם כי מדובר במסמך שאיננו משקף אלא את תמצית הדברים כפי שנאמרו מילה במילה (ו"אריאל" בעמי 203, "עדיי" בעמי 204-205). זכ"ד ת/178גי נרשם בידי החוקר "צדוקי", שלא התייחס אליו 84-83), ולא חזר להעיד לאחר עדותו של עויס, ולכן יש להתעלם ממנו.

סיפר בהודעתו ת/172בז (עמי 1-2), שנכתבה בכתב ידו, כי לאחר פרוץ אנתפאדת אלאקצא" בחודש ספטמבר 2000, הוא החל לבצע פיגועים כנגד מטרות, ובאותה עת עבד במנגנון הביטחון הלאומי הפלסטיני בשכם בדרגה של סרן הוא ביצע פיגועי ירי ופיגועים נוספים נגד מטרות ישראליות באזור יהודה ושומרון ישראל, ופירט בהודעותיו ת/172ב-ת/174 פיגועים אלו, שכללו ירי לעבר עמדות ומרכבים צבאיים; מסירת אמצעי לחימה לאחרים לשם ביצוע פיגועי התאבדות בתניה וחדרה, ועוד.

אמר בהודעותיו כי ביצע את הפיגועים בשם גדודי חללי אלאקצא, בהסבירו משתייך לתנועת הפתי"ח ותנזים הפתי"ח, וכי הנאשם היה האחראי על התנזים 3). עויס אמר כי המימון לפיגועים בא מאנשי התנזים, וכי הנאשם עצמו מימן לפיגועים בהם היה מעורב עויס - לעיתים באופן ישיר, ולעיתים באמצעות מאג"ד – ביודעו שעויס מבצע פיגועים נגד מטרות ישראליות. במקרה אחד העביר הנאשם מאושר על ידי היו"יר ערפאת (עמי 6-7). עוד אמר עויס בחקירתו כי היה בקשר לכל אורך הזמן; הוא נשאל אם הנאשם ידע על כך שהוא מבצע פיגועים כנגד ישראליות, והשיב (עמי 4-5):



17

בתי המשפט

ט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

ידע ושמי אף פורסם בעיתונות ובטלוויזיה וברדיו והייתי משוחח עמו מידי
 כשהמצב הפוליטי היה מתדרדר ורע לנו היה מבקש שנמשיך בפיגועים
בפש שמעון פרס ועמרי שרון עם מנהיגים ברשות התקשר אליי מרואן
תי וביקש שנעצור את הפיגועים... באותה תקופה היה זיני באזור ומרואן
י שעדיף מאחר והגנרל זיני נפגש עם מנהיגים ברשות שלא נבצע פיגועים
ה חללי אלאקצא ויש לציין שהתקדמו בשיחות לא בוצעו פיגועים".

ג כעס בפני המדובב "פלוני 1" על כך שעויס הודה בחקירתו כיצד נהג הנאשם
של הגנרל זיני באזור (ת/113א סעיפים 8-9, ת/114א סעיף 8, שהוגשו ואושרו
ד "רוברט" בעמ' 154, ותמליל חקירת הנאשם ת/98ח עמי 3).

לקשריו עם הנאשם, אמר עויס בחקירתו בשב"כ כי הגיש לנאשם בקשת סיוע
של פעילי שטח, וכי הוא עצמו קיבל שלוש פעמים כסף מהנאשם (זכ"ד ת/178א
שם היה הממונה עליו בתנזים, והעביר לו ולפעילים אחרים סיוע כספי,
אישור מהיו"ר ערפאת (ת/178ב סעיף 10). בדרך כלל קיבל עויס את הכספים
מצעות המתווך מאג'ד אלמצרי, אך לעיתים היה הנאשם שולח לו כספים
ה, עויס לא נהג לומר לנאשם מה מטרת הכסף, אך ברחבי הגדה ידעו היטב מה
ש של עויס (ת/178ד סעיף 5יא).

בחקירתו כי הפיגועים של התנזים בוצעו בידיעת מנהיגי התנזים ובסיועם.
ג באולם השמחות בחדרה, וכל זמן שהתנהלו שיחות עם ישראל, הם היו
בפסקת הפיגועים; ואולם כאשר השיחות לא התקדמו, שבו הפעילים לבצע
שניתנה להם הוראה חדשה על ידי המנהיגים להפסיקם. במסגרת זו נתן
ה להפסיק את הפיגועים בעת ביקורם של הגנרל זיני ומנהיגים מרוסיה
רץ (ת/178ד סעיף 5י).

18



בתי המשפט

המשפט המחוזי בתל-אביב-יפו          תפ"ח 02/1158

של עיס בחקירתו בכל הנוגע לקשריו עם הנאשם נתמכים בדברים שאמר
בחקירתו בשב"כ..כאשר הופגשו הנאשם ועיס במהלך החקירה (ת/79ב), ועיס
הודיעו את במשטרה, ציווה עליו הנאשם לומר כי מדובר בזיוף, ועיס אכן
כך החוקר "צדוק" בעמ' 84). ואולם הנאשם עצמו אישר בחקירה כי עויס היה
הבכיר ביותר של תנזים פתי"ח בשכם, ואחראי על גדודי חללי אלאקצא
בכיר ת/90 ס' 7, שהוגש ואושר על ידי החוקר "סטיבי" בעמ' 53). הנאשם הודה כי
בצע "פעילות צבאית" ענפה, וכאשר רצה להבטיח הפסקה של הפיגועים היה
מורה לו על הפסקת הפיגועים (זכ"ד ת/24 ס' 6, שהוגש ואושר על ידי
בעמ' 85, ותמליל שיחה ת/98ט עמ' 3-2).

כי מסר לידי עויס באמצעות מאגיד אלמצרי ואחמד ברגותי סכום של כ-
אף 50,000 - 70,000 ₪, למימון פעילותו, וכי קיבל אישור לכך מהיו"ר
שציין את מקרת הסיוע הכספי (זכ"ד ת/19 ס' 16, שהוגש ואושר על ידי
בעמ' 58; זכ"ד ת/38 ס' 4, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85;
ס' 8 ו- ת/41 ס' 9, שהוגשו ואושרו על ידי החוקר "מופזי" בעמ' 58; תמליל
עמ' 3-4). הנאשם אף הודה כי חלק מהכספים שהעביר לידי עויס נועדו
כדורים לרובה M-16 ולרובה מסוג "גלילי", ואף הצהיר כי הוא "מקבל
כל הכסף שנאצר (עויס) קיבל עבור מימון פיגועים בשטחים הכבושים, עבור
ושק ותחמושת" (ת/41 ס' 6-9).

הנאשם בחקירתו כי עויס הפעיל חוליות שהיו מאורגנות תחת פיקודו של
זכ"ד ת/29 ס' 1, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85). אך הנאשם
עצמו לא הורה לעויס לבצע פיגועים (זכ"ד ת/31 ס' 6). לעומת זאת, המדובב
העיד כי הנאשם אמר לו כי נתן לעויס הוראות לבצע פיגועים (עמ' 104).
גם כי לאחר הפיגוע בנווה יעקב או בגשר עטרה (הנאשם לא זכר איזה מהם)
את הכרוז הנוטל אחריות, והנאשם אישר זאת בשיחה עם עויס (זכ"ד ת/49
ואושר על ידי החוקר "אמילי" בעמ' 54, וזכ"ד ת/52 שהוגש ואושר על ידי
בעמ' 85).

בתי המשפט

תפ"ח 02/1158

בית המשפט המחוזי בתל-אביב-יפו

נגדו נאג'י אבו חמיד

נגדו נאג'י אבו חמיד (להלן: "אבו חמיד") היה אחד ממנהיגי התנזים וגדודי חללי
אלאקצא באיזור ירושלים ורמאללה, ואף הוא היה כפוף לנאשם וקיבל ממנו סיוע לצורך
ביצוע פיגועים כנגד ישראל. בגין פעילותו זו נדון אבו חמיד, על סמך הודאתו, לשבעה
מאסרי עולם ועוד 50 שנות מאסר במצטבר (ת/148א-ב). בעדותו סרב אבו חמיד להשיב על
שאלות כלשהן, הוכרז כעד עוין והודעותיו למשטרה הוגשו לפי סעיף 10א. לפקודת הראיות
(ת/149א-ד). הודעות אלו (ת/149א-ד) הוגשו באמצעות חוקרי המשטרה אברהים
סוויטאת, יעקב ברזני ומשה לוי (עמ' 194-195, 207, 211), אשר העידו כי אבו חמיד מסרן
כרצונו החופשי וחתם עליהן. ההודעות נמסרו בעברית לפי בקשתו של אבו חמיד, אשר
לדברי החוקרים דובר עברית היטב.

בהודעותיו פרט אבו חמיד את פיגועי הרצח כנגד ישראלים בהם היה מעורב, וסיפר
כי פנה אל הנאשם לקבלת סיוע כספי לרכישת תחמושת, והנאשם הפנה אותו אל קרובו
אשר ברמתו המכונה "אלפרנסי" ; הלה אכן מסר כמה פעמים לאבו חמיד כסף לרכישת
נשק ותחמושת (ת/149א, עמ' 9, ת/149ג עמ' 5-6). גם חברים אחרים בחוליה של אבו חמיד
פנו אל הנאשם לקבלת כספים לצורך רכישת נשק (ת/149 עמ' 6). בשלב מסוים פנה אבו חמיד
בדרישה לשם מימון רכישת מקלע, ובסופו של דבר הכסף למטרה זו ניתן לו על ידי אחמד
בַּרגוּתי (ת/149ג עמ' 7). אבו חמיד אף סיפר כי הנאשם נפגש עם סוחר נשק בעניין רכישת
נשק, אך כישלונות, שהיו לבסוף רק רימוני הלם (עמ' 7-8).

אבו חמיד אמר כי הוא הקים את גדודי חללי אלאקצא לאחר תחילת האינתיפאדה בחודש
ספטמבר 2000 (עמ' 4). הוא הסביר כי הוצע לו לצרף את החוליה שבראשה עמד למנגנוני
הביטחון של הרשות הפלשתינאית בראשות תאופיק טיראוי, אך הוא העדיף את הצעתו של
הנאשם להיות כפוף לו, ולקבל ממנו משכורת לו ולאנשיו, כיוון שראה בנאשם "מנהיג
אמיתי שלא ישקר" (ת/149א עמ' 15-16).

20



בתי המשפט

תפ"ח 1158/02                    בית המשפט המחוזי בתל-אביב-יפו

אבו חמיד פעילים נוספים לתמיכה בנאשם, הקים את גדודי חללי ... לבצע פיגועים כנגד מחסומי צה"ל והמתנחלים (עמ' 17). הוא אמר לגבי ... ב "מנהיג פוליטי", אם כי הוא עצמו השתייך לפלג הצבאי של הארגון (עמ' ... מפקד החוליה, הכיר אבו חמיד את יורשו לנאשם (ת/149 עמ' 7).

... סיפר אבו חמיד על אירוע בו נכח יחד עם חברי חוליה אחרים, ואחד ... על כוונתו לבצע פיגוע באזור שכם, וביקש מהנאשם סיוע ברכישת נשק ... מהנאשם ליצור קשר עם עויס על מנת שיעזור בביצוע הפיגוע. אבו ... הנאשם התקשר עם עויס, שאכן סייע לחוליה לבצע פיגוע; לאחר הפיגוע ... כי בהיתקלות עם חיילי צה"ל איבדו חברי החוליה את הנשק, והנאשם ... בנושא (ת/149ג עמ' 9).

... 2001, כאשר החל ירי מרגמות לעבר ישובים ישראליים, שוחח אבו חמיד ... על הצורך להשיג מרגמות בעלות טווח ירי גדול יותר. אבו חמיד פנה אל ... מימון רכישת פצצות המרגמה, והנאשם השיב לו כי מחירן גבוה מדי, וכי "יש ... בעניין זה, כפי שיסביר לו אחמד ברגותי; האחרון הסביר לאבו חמיד כי יש ... מרגמה ופצצות (ת/149ג עמ' 10). אבו חמיד אף דיווח לנאשם על ביצוע ירי ... היושב פסגות, והנאשם ביקש שלא לספר על כך לאיש, באומרו כי אם נרפאת ... הוא יכניס אותו לכלא (עמ' 11).

... של אבו חמיד ניתן להתרשם שהוא השתדל למנוע מן הנאשם מעורבות ... ואף אמר לפעילים האחרים שלא לסבך את הנאשם במעשיהם, שכן ... להישאר "מנהיג פוליטי" (ת/149ג עמ' 8-9, 12). במסגרת ניסיונו של אבו ... על מעורבותו של הנאשם בפיגועים, הוא ניסה לגמד גם את חלקו של אחמד ... שהיה מקורבו ועוזרו של הנאשם; אבו חמיד הודה כי ניסה תחילה להעלים את ... ברנותי ברצח טליה ובנימין כהנא ז"ל, אשר בוצע באמצעות נשק שמסר ... למפגע (ת/149ד עמ' 5, וראה פרטי האירוע בפרק ה(1) להלן).

21



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 02/1158

הנאשם הודה בחקירתו כי הנחה את עלי עאידיה (איש הכספים שלו) לרכוש
עבור הפעילות של התנזים, ולהעביר את האמל"ח לאבו חמיד. הנאשם אף מתייחס
לאירוע המתואר בהודעתו של אבו חמיד, הנוגע לרכישת רימונים מקולקלים
(ת/43 סי' 5-2, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62). הנאשם הודה כי
שילם לאבו חמיד זכו לסיוע מצדו בסכום של כ- 40,000 ₪ (זכ"ד ת/63 סי' 20, שהוגש
על ידי החוקר "נאור" בעמ' 82). הנאשם אמר כי כאשר קיבל החלטה אסטרטגית
שבפיגועים הוא הקים חוליה, כאשר את הפיגועים הוביל, בין היתר, אבו חמיד (זכ"ד ת/
שהוגש ואושר על ידי החוקר "דני" בעמ' 90). כאשר נשאל הנאשם בחקירתו מי
מביצועי הפיגועים היו תחת שליטתו, הוא אמר על אבו חמיד: **"הוא נחשב עלי"**
(תרשומת שיחה ת/98יא עמ' 34, שבו בטעות נרשם בעברית "אחמד" במקום אבו חמיד).

### אחמד ברגותי

אחמד ברגותי (המכונה "אלפרנסי") הוא קרוב משפחה של הנאשם, אשר היה
מקורב, בנוסף על היותו נהג ושומר ראשו של הנאשם (ראה דבריו בהודעתו ת/165א
ת/165ו שהוגש ואושר על ידי החוקרים "אדם" ו"דני" בעמ' 200-201).
ברגותי אמר בחקירתו כי היה נתון למרותו המלאה והישירה של הנאשם (זכ"ד
שהוגש ואושר על ידי החוקר "אדם" בעמ' 201). אין זה מקרה שאחמד ברגותי
עם הנאשם, שכן שמו עולה בחומר הראיות בהקשרים רבים הנוגעים לפיגועים
בתחום השטח של התנזים וגדודי חללי אלאקצא.

ברגותי סירב להשיב על שאלות כלשהן בעת עדותו (עמ' 163-161), ולאחר שהוכרז
הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/165א-ה).
הוגשו ואושרו על ידי השוטרים דוד מזרחי, יצחק יעקובוב ומשה משה (בעמ'
207-206). החוקרים העידו כי תחקרו את אחמד ברגותי בערבית, אך רשמו את
(שלא על פי המקובל והנדרש). כל החוקרים העידו כי ההודעות נמסרו
של הנחקר.

22



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

מסמך שכתב אחמד ברגותי בכתב ידו בערבית ותורגם (ת/165(ג)(1-2)), והוא
בחקירתו כי כתב מסמך זה בכתב ידו (מזרחי בעמ' 185). בנוסף, הוגשו על ידי חוקרי
הודעים שנרשמו במהלך חקירתו של אחמד ברגותי (ת/165ו-טו, שהוגשו ואושרו
על ידי "אדם" בעמ' 201 וי"דני" בעמ' 200; ת/165י על ידי "אדם" בעמ'
ואושרו על ידי "אדם" בעמ' 201; ת/165יד על ידי "דני" בעמ' 200). הזכ"דים ת/165
יא-יב ו- ת/165טו לא זכו להתייחסות כלשהי בעדויותיהם של חוקרי השב"כ
"ארבלי", "אדם" וי"דקלי", ולכן יש להתעלם מהם.

אחמד ברגותי סיפר בחקירתו כי הוא ועויס היו האחראים על גדודי חללי אלאקצא
שקדמה למעצרו (הודעה ת/165ה). הוא סיפר בהודעותיו על מעורבותו הישירה
בפיגועים שבוצעו כנגד ישראל, ועל כלי הנשק והרכב שסיפק לפעילי השטח
לבצע פיגועים שונים באזור יהודה ושומרון ובתוך ישראל, כולל פיגועי התאבדות.

במסעדת "סי פוד מרקט" בתל-אביב, סיפר אחמד ברגותי כי כאשר קיבל
שהמפגע אברהם חסונה עומד לצאת ולבצע את הפיגוע, וגם כאשר דווח לו כי הלה
יצא לדרכו עם מוביליו, הוא התקשר לנאשם והודיעו על כך; הנאשם אישר את הפיגוע
ביצוע, אך הורה שלא יבוצע בתוך ישראל אלא בשטחים; אחמד ברגותי אמר לו
בסדר" (זכ"ד ת/165י"ג שהוגש ואושר על ידי החוקר "אדם" בעמ' 201 וזכ"ד ת/165
ואושר על ידי החוקר "דני" בעמ' 200). מייד לאחר ביצוע הפיגוע בי"סי פוד
שאחמד ברגותי עצמו היה מעורב בהוצאתו לפועל, הוא התקשר אל הנאשם בשעה
לפנות בוקר ודיווח לו על ביצוע הפיגוע; הנאשם נשמע מרוגז (הודעה ת/165ג עמ' 1,
לדברי אחמד ברגותי, אמר לו הנאשם להודיע לעויס שלא ליטול אחריות
ת/165יד). לדברי אחמד ברגותי, שכן הנאשם היה מעוניין לנסח את הכרוז (ת/165ד
זה קודם שידבר עם הנאשם, שכן הנאשם היה מעוניין לנסח את הכרוז (ת/165
זכ"ד ת/165יד). אחמד ברגותי נשאל מדוע דיווח על הפיגוע לנאשם, והוא השיב:
ברגותי הודעתי באופן רגיל".

23



בתי המשפט

<div dir="rtl">

בית המשפט המחוזי בתל-אביב-יפו      תפ"ח 1158/02

אחמד ברגותי סיפר בחקירתו גם על הפיגוע ב**תחנת הדלק בגבעת זאב**, שנעשה
על חיסולו של ראיד כרמי. לדבריו, הוא ביקש מהמבצע אבו סטחה שלא להודיע על
לנאשם. אך אבו סטחה שוחח עם הנאשם על כך, והנאשם אמר לו שלא לבצע
הפיגוע, כנראה משום שחשש לחייו של אבו סטחה שהיה שומר ראשו (זכ"ד ת/165ג
ת/165יג שהוגש ואושר על ידי החוקר "אדם" בעמ' 201). זו אחת הדוגמאות
של אחמד ברגותי במהלך כל החקירה לחפות על מעשי הנאשם, שכן הנאשם עצמו
בחקירתו אחריות לפיגוע זה, וברור מדבריו שהוא הורה על ביצועו (ראה סעיפים 66(5)
להלן).

בהקירה אחר, עליו סיפר אחמד ברגותי בחקירתו, דחה הנאשם את בקשתה של צעירה בת
לבצע פיגוע התאבדות, באומרו "**שהיא עוד צעירה לעשות זאת"**, והורה לאחמד ברגותי
לה זאת (ת/165ג עמ' 4, וזכ"ד ת/165יג ס' 2י, שהוגש ואושר על ידי החוקר "אדם"
201). גרסה דומה עולה מדברי הנאשם בחקירתו (זכ"ד ת/25 ס' 6-7, שהוגש ואושר
על ידי החוקר "סמית" בעמ' 85, ותמליל חקירה ת/98י עמ' 8-9).

בהקירה נוסף עליו סיפר אחמד ברגותי, התקשר גייהאד גיערה לנאשם בבקשה לבצע פיגוע,
והנאשם אמר לו שלא לעשות זאת בתוך ישראל או בירושלים; ואולם גיערה השאיר
את תופת שהתפוצצה למחרת ליד קניון מלחה בירושלים, חרף דברי הנאשם (ת/165
דברים אלו אושרו על ידי הנאשם בחקירתו (ראה סעיף 66(ה) ופרק ה(20) להלן).

לאורך כל חקירתו, ניכרת אצל אחמד ברגותי מגמה ברורה לגמד ולהעלים את
בבותו של הנאשם בפיגועים השונים. כאשר היה מזכיר את שמו של הנאשם, היה זה
כדי על מנת לציין שהנאשם התנגד לביצוע הפיגוע. עם זאת, אחמד ברגותי אישר
בהודעה שנכתבה בכתב ידו כי כי שורה של פעילי שטח בחוליות כספים ממשרדו של
הנאשם וביזעתו, וכי הכספים שקיבל מהנאשם שימשו אותו לצורך ביצוע פיגועים שלו
ושל אחרים (הודעה ת/165ג(1) עמ' 6, הודעה ת/165ג עמ' 2 וזכ"ד ת/165יג ס' 2ג ו- 2ז
שהוגש ואושר על ידי החוקר "אדם" בעמ' 201).

</div>

24



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

כך ברור מדברי אחמד ברגותי כי הנאשם היה מורה לו מדי פעם להפסיק או לדחות את
הפיגועים (זכ"ד ת/165ויג ס' 2ת, שהוגש ואושר על ידי החוקר "אדם" בעמ' 201).
עולה כי במקרים אחרים הם בוצעו באישורו של הנאשם, גם אם לא ידע מראש על
מועד ופיגוע.

בתחילת חקירתו ניסה הנאשם לגונן על קרוב משפחתו אחמד ברגותי, וטען כי
עמו משום "שעבר במקרה במקום" (זכ"ד ת/9 ס' 10 שהוגש ואושר על ידי החוקר
"בעמ' 62). הנאשם טען כי אחמד ברגותי הפסיק לעבוד אצלו כנהג כשמונה
חודשים לפני מעצרו, ואין שום קשר ביניהם בנוגע לביצוע פיגועים (זכ"ד ת/10 ס' 1, שהוגש
ואושר על ידי החוקר "דני" בעמ' 90, וזכ"ד ת/21 ס' 23, שהוגש ואושר על ידי החוקר
"בעמ' 63). בחקירתו במשטרה טען הנאשם כי אחמד ברגותי לא היה מזכיר או או
אשר ראש שלו (ת/104 עמ' 4). בפגישה שהיתה בין הנאשם לאחמד ברגותי בעת מעצרם,
ההקלטה ללא ידיעתם, תיאמו השניים עמדות לגבי החקירה, ואחמד ברגותי אמר
"כי טען בחקירה שהוא איננו קשור לנאשם, אלא רק שימש כנהג ; הנאשם אמר כי
הוא אמר כך (תמליל שיחה ת/127גג עמ' 2-3). אחמד ברגותי סיפר לנאשם באותה פגישה
כי בדיוק אמר בחקירותיו לגבי הנאשם, כשהם מתייחסים לפיגועים השונים אליהם
מתייחס אחמד ברגותי בחקירתו (עמ' 4).

בהמשך בהקירתו בשב"כ אישר הנאשם כי ידע שאחמד ברגותי קשור למספר
ולביצוע פיגועים רבים כנגד ישראל, וכי כאשר ביקש להפסיק את הפיגועים היה
ידוע זאת גם לאחמד ברגותי. לדבריו, אמר לאחמד ברגותי שהוא "לא מרשה" לבצע
פיגועים בתוך ישראל (תמליל ת/98יא עמ' 18-20). הנאשם אמר כי היה תיאום בינו לבין
אחמד ברגותי, שכלל דיווח ומתן כספים, וכי מבחינתו אחמד ברגותי היה אחראי על
ארגון הצבאית באזור רמאללה ביחד עם אבו חמיד, וכי השניים היו מבצעים פיגועים
שגבתה מספר מספר חוליות (זכ"ד ת/27 ס' 2-3 שהוגש ואושר על ידי החוקר "סמית" עמ' 85).
הנאשם הודה כי היה נותן כסף לאחמד ברגותי, ותמך בפעולותיו, אף כי טען שאחמד
ברגותי לא היה מדווח לו לפני ביצוע פיגועים (תמליל ת/98ח עמ' 3, 17, 20-24, וזכ"ד ת/24
ס' , שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

25



בתי המשפט

תפ"ח 1158/02

‏המשפט המחוזי בתל-אביב-יפו

הודה כי אחמד ברגותי היה מדווח לו **לאחר** ביצוע פיגועים (תמליל ת/98ז עמ' 19-
‏תמליל ת/98יא עמ' 9). בשיחתו עם המדובב "פלוני 1", אמר הנאשם כי אחמד
‏שלח ארבעה פיגועי התאבדות באישורו (עדות המדובב בעמ' 106). דברים אלו
‏דברים שאמר הנאשם בחקירתו, כאשר נטל אחריות על כמה פיגועים אותם אישר
‏(ראה סעיף 66 להלן).

‏לא הסתיר כי מסר לאחמד ברגותי עשרות אלפי דולרים לרכישת כלי נשק שונים,
‏סער ואקדחים, עבור אנשי החוליות שביצעו פיגועים כנגד ישראל. אחמד ברגותי
‏האחראי מטעם הנאשם על רכישת הנשק. הוא פעל תחת פיקודו של הנאשם, והיה
‏על "הפעילות הצבאית" באזור רמאללה. הנאשם הודה כי ידע שאחמד ברגותי
‏פיגועים כנגד ישראל, ובניניהם פיגועים בירושלים ובי"סי-פוד מרקט" בתל אביב
‏ראה: זכ"ד ת/23 סי' 4-5 שהוגש ואושר על ידי החוקר "דני" בעמ' 90; זכ"ד ת/25
‏שהוגש ואושר על ידי החוקר "מופז" בעמ' 58; ת/27 סי' 2, 1-4 ת/29ז סי' 1 שהוגשו
‏על ידי החוקר "סמית" בעמ' 85; ת/28 סי' 4 שהוגש ואושר על ידי החוקר "אבו
‏בעמ' 96; ת/65 סי' 1-4 ת/70 סי' 9 שהוגשו ואושרו על ידי החוקר "סטיבי" בעמ' 53;
‏ראה דברי הנאשם בתמלילים ת/98ז עמ' 2-6, ת/98ח עמ' 20-24, ת/98י עמ' 11-10 ו-
‏א עמ' 8).

‏קשרי הנאשם עם אחמד ברגותי, ניתן לומר כי הקשר של הנאשם עם פעילי
‏היה באמצעות קרובו ומקורבו אחמד ברגותי. כפי שאמר הנאשם בחקירתו על
‏"הוא יוצר קשר עם החוליות האלה. באופן ישיר איתם ישירות. יעני בלעדיו לא
‏לי התקשרות ישירה עם אף חוליה" (תמליל ת/98יא עמ' 8). כאשר נשאל הנאשם
‏מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, השיב הנאשם כי אחמד
‏היה "חלקית תחת שליטתי וחלקית עבד עם נאצר (עויס)" (תמליל שיחה ת/98יא
(34.

26



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                          תפ"ח 02/1158

<u>מוחמד מצלח (אבו סטחה)</u>

מוחמד מצלח המכונה "אבו סטחה" (להלן: "**אבו סטחה**") היה פעיל שטח נוסף, בראש חוליה אשר ביצעה פיגועי רצח. הוא גם היה שומר ראשו של הנאשם בתקופה מסוימת, ומקורב אליו. בגין פעילותו זו הורשע אבו סטחה על פי הודאתו ונדון לעונש של 9 מאסרי עולם במצטבר (ת/155א-ג). בעדותו פתח אבו סטחה בהצהרה כי לא היה לו שום קשר עם הנאשם, וכי הנאשם הוא "**אדם פוליטי**" שאין לו קשר עם ה"פעולות הצבאיות". משום כך לא היה מוכן אבו סטחה להשיב על שאלה כלשהי, ולפיכך הוכרז כעד עוין לאחר הודעותיו במשטרה ת/156א-ג לפי סעיף 10א. לפקודת הראיות (עמ' 66-68).

הודעה ת/156א לא הוגשה באמצעות מי שגבה אותה (השוטר יעקב ברזאני), ולפיכך יש להתעלם ממנה. ההודעות ת/156ב-ג הוגשו ואושרו על ידי השוטרים מרקו דהאן ומשה לוי (עמ' 198, 210), אשר העידו כי ההודעות נמסרו מרצונו החופשי של אבו סטחה. החקירה התנהלה בשפה הערבית אך ההודעות נרשמו בעברית (שלא על פי המקובל והנדרש).

בהודעותיו מפרט אבו סטחה את הפיגועים שביצע, ומדבריו עולה שאחמד ברגותי, עוזרו הקרוב של הנאשם,  היה מעורב ברבים מהם בצורה ממשית.

הנאשם אישר בחקירתו כי אבו סטחה עבד במשרדו ופעל תחת אחריותו, באמצעות אחמד ברגותי, וכי הוא ידע שאבו סטחה ביצע פיגועים שונים כנגד אזרחים בבעת זאב (זכ"ד ת/30 סי' 2-3, שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54, תמליל ת/51א עמ' 35). כאשר נשאל הנאשם מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, מנה כלל בהם את אבו סטחה, באומרו: "**אני לא בורח מזה**" (תמליל ת/98יא עמ' 34).

<u>ג'מאל אחויל</u>

ג'מאל אחויל (להלן: "**אחויל**") היה פעיל שטח נוסף שקיבל סיוע מהנאשם, והיה הקשר שלו במחנה הפליטים בג'נין.



**בתי המשפט**

בית המשפט המחוזי בתל-אביב-יפו       תפ"ח 1158/02

סירב להשיב על שאלות בעת עדותו, הוכרז כעד עוין והוגשה הודעתו במשטרה לפי סעיף 10א. לפקודת הראיות (עמ' 164-165), באמצעות השוטר מטאנס חדאד (עמ' 169). אחויל כתב את הודעתו בכתב ידו, וחדאד תרגם אותה לעברית.

במסגרת גדודי חללי אלאקצא, ואמר בחקירתו כי קיבל סיוע כספי, בין היתר, והיה מחלק כסף זה לפעילים אחרים, וביניהם מבוקשים על ידי צה"ל; חלק שימש לרכישת נשק (ת/166 עמ' 1). אחויל היה בקשר רצוף עם הנאשם, והיה על פעילות גדודי חללי אלאקצא, ועל המתרחש במחנה ג'נין; לעיתים היו בדודים אלו מדווחים לנאשם באופן ישיר, כפי שהיה עושה עויס (ת/166 עמ' 5).

הכחיש בחקירתו במשטרה כי הכיר את אחויל (ת/106 עמ' 6). אך בחקירתו בשב"כ הנאשם כי אחויל היה מנהיג מחנה הפליטים בג'נין, וחבר בגדודי חללי אלאקצא, שהתייחס לחוליות של עויס. הנאשם הכיר היטב את אחויל, אך טען שמעולם לא מסר נשק או כסף, אם כי אחויל פנה אליו בבקשות סיוע; הנאשם הסביר כי היה פועל מול עויס היה זה שהיה ממלא את בקשותיו של אחויל (זכ"ד ת/31 סי' 7-9, שהוגש ואושר החוקר "מופזי" בעמ' 58). כמו כן אישר הנאשם כי העביר לערפאת את בקשותיו של לקבלת סיוע (זכ"ד ת/67 סי' 4 שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54).

### נאצר א-שויש

נאצר א-שויש (להלן: "שויש") היה אף הוא פעיל בפיגועים שביצעו גדודי חללי בגין פעילותו זו הורשע על פי הודאתו, ונדון ל- 4 מאסרי עולם במצטבר (ת/157א-סירב לענות על שאלות בעדותו, אך טען כי הנאשם הוא מנהיג פוליטי שאין לו לעניינים צבאיים". הוא הוכרז כעד עוין, הכחיש את הדברים שאמר בחקירתו, ואף לא הודה בכלום (עמ' 69-71). הודעותיו של שויש ת/158א-ב הוגשו לפי סעיף 10א. הראיות, באמצעות השוטרים מטאנס חדאד ועואד עטאף (עמ' 165, 168).

28



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                     תפ"ח 1158/02

ההודעות העידו כי ההודעות נרשמו בערבית בכתב ידו של הנחקר מרצונו החופשי,
תורגמו לעברית על ידי החוקרים. השוטר חדאד העיד כי נכח במשפטו של שויש, והלה
אישר שם את הודעתו בטרם הורשע, שכן לא היה לו סניגור.

בחקירתו (הודעה ת/158א, עמ' 6 והודעה ת/158ב, עמ' 2-4) סיפר שויש כי קיבל
חגורת נפץ במשקל של כ- 18 ק"ג במפקדת המודיעין המסכל ברמאללה על מנת לשמור
אותה ברכבו. לאחר מכן פגש את הנאשם בבית החולים בו טופלה אשתו, והנאשם ביקש
לשוחח אתו בנפרד. בשיחתם שאל אותו הנאשם האם הוא מכיר אנשים אשר יודעים כיצד
להכין חגורת נפץ, או כאלה שיש להם חגורת נפץ. באותו מעמד התקשר שויש לאדם שמסר
לו את חגורת הנפץ (מוזיד אלמצרי), וקיבל את הסכמתו למסור אותה לנאשם, והנאשם
הודיע לו שאחמד ברגותי ישוחח איתו בעניין. למחרת התקשר אחמד ברגותי אל שויש,
והאחרון מסר לו את חגורת הנפץ. שויש שמע באותו יום כי האדם שהחזיק את החגורה
נתפס בירושלים בדרכו לביצוע פיגוע התאבדות.

שויש נשאל בחקירתו האם הנאשם ידע על פיגועי התאבדות ופעילות צבאית, והשיב כי יום
לפני ביצוע פיגוע ההתאבדות על ידי מוחמד חשאיכה נפגש שויש עם הנאשם, וסיפר לו כי
אדם בשם עבד אלכרים אמור לשלוח מתאבד לישראל; הנאשם אמר לשויש להתקשר אליו
אם יוזקק לדבר מה בקשר לפיגוע, נתן לו סכום של 600 דולר, וביקש לעדכן אותו בפרטי
הפיגוע (עמ' 6-7). הפיגוע בוצע בירושלים, ואז התקשר הנאשם אל שויש, אשר אמר לו כי
הפיגוע בוצע על ידי גדודי חללי אלאקצא. הנאשם ביקש ממנו להביא לו את הקלטות
המצולמות של המתאבד חשאיכה (עמ' 6-7 להודעה ת/158א). בהודעתו השנייה ת/158ב
סיפר שויש על הסיוע הכספי שקיבל מהנאשם (עמ' 5).

הנאשם הכחיש בחקירתו במשטרה כי הכיר את שויש, וכן הכחיש בהודעתו את
דבריו של שויש (ת/106 עמ' 7-9). לא הובאו בפניני ראיות נוספות על האירועים הנ"ל
אליהם התייחס שויש בחקירתו, ולכן אין כל חיזוק לדבריו אלו, ולא ניתן לסמוך ממצאים
עליהם.

29



בתי המשפט

תפ"ח 02/1158                                                      ת המשפט המחוזי בתל-אביב-יפו

<u>עלי עיאדיה</u>

.      עלי עיאדיה (להלן : "עיאדיה") היה פעיל בתנזים שעסק בעיקר בהדרכת צעירים
וימוש בנשק, ובעניין זה פעל בהנחיית הנאשם. כמו כן השתתף בביצוע פיגועי ירי לעבר
ילים. בעדותו סרב להשיב על שאלות שנשאל, וטען כי הנאשם הוא "איש שלום" (עמ'
171-1). לפיכך הוכרז עד עוין, והודעתו ת/168 הוגשה לפי סעיף 10א לפקודת הראיות,
מצעות השוטר יעקב ברזני, שגבה אותה בשפה הערבית ותרגמה לעברית (עמ' 208).

.      עיאדיה סיפר בחקירתו על מעורבותו של הנאשם בקורס הירי לצעירים (ת/168,
מ' 2-1), ועל הפיגועים שהוא עצמו ביצע. כמו כן אמר עיאדיה: "ראש התנזים מרואן
רגותי היה יודע מכל אירועי הירי אותם ביצעו פעילי התנזים עוד לפני שעשו אותם והוא
סכים להם" (עמ' 5). הוא ציין כי כמה חודשים לפני מעצרו ביקש ממנו הנאשם "לקנות
ק מכל סוגי", ולהעבירו דרך אבו חמיד (עמ' 5).

נאשם הכחיש בחקירתו במשטרה את הדברים שאמר עיאדיה בחקירתו (ת/106 עמ' 7):
אולם באחת מחקירותיו הודה הנאשם כי הורה לעיאדיה לרכוש אמל"ח ולמוסרם לאבו
מיד (זכ"ד ת/43 ס' 3, שהוגש ואושר על ידי החוקר "רוברטו" בעמ' 92), דבר שמחזק את
רי עיאדיה בחקירתו.

<u>(8    איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו וער</u>

.4:   איסמעיל רדאידה (להלן: "רדאידה") ביקש לבצע פיגוע, ופנה בעניין זה לנאשם.
הוא ביצע את אט פיגוע הירי במעלה אדומים שבו נרצח הנזיר היווני גרמנוס ציפוקטיקיס
"ל (ראה פרק ה(3) להלן). בגין פעילותו החבלנית הורשע רדאידה על פי הודאתו, ונדון
מאסר עולם ועוד 20 שנות מאסר במצטבר. בעדותו בתיק זה (עמ' 44-42) סירב רדאידה
להשיב על שאלות, הוכרז כעד עוין והודעותיו במשטרה הוגשו מכוח סעיף 10א. לפקודת
ראיות (הודעה ת/151א-ת/151ג, הודעה בכתב יד ת/151ד שנקרעה, שוחזרה ותורגמה,
יקלטת בה שיחזור רדאידה את רצח הנזיר ותמוללה - ת/151א).

30



בתי המשפט

ת המשפט המחוזי בתל-אביב-יפו                תפ״ח 02/1158

דעותיו של רדאידה הוגשו על ידי החוקרים מרקו דהאן ויצחק יעקובוב, שגבו את
ודעות בערבית, אך רשמו אותן בעברית (בניגוד למקובל ולנדרש), והעידו כי הן נמסרו
צונו החופשי של רדאידה. הודעתו של רדאידה ת/151ד נרשמה בכתב ידו בנוכחות
קובוב (עמ׳ 171, 198). עורך השיחזור (מרקו דהאן) לא התייחס לכך בעדותו, ועל כן יש
תעלם מקלטת השיחזור, בהיותה אמרת חוץ של עד שלא הוגשה כדין.

בהודעתו הראשונה (ת/151א) סיפר רדאידה כי החליט לבצע פיגוע כאשר ראה
לוויזה שתינוקת פלסטינאית נהרגה, ועל כן ניגש למשרדו של הנאשם. השיחה ביניהם
נהלה ביחידות, ורדאידה אמר לנאשם כי הוא רוצה לבצע פיגוע ודרוש לו נשק לשם כך.
שם הפנה את רדאידה אל אדם בשם מוהנד (אבו חלאוה) שכינויו ״עלאא״ (להלן :
ווהנד״), והורה למוהנד להשיג נשק לרדאידה. בהודעתו השניה (ת/151ב) הוסיף רדאידה
הוא הבהיר לנאשם שהנשק דרוש לו על מנת לבצע פיגועים נגד מטרות ישראליות, ואז
ה אותו הנאשם אל מוהנד. מוהנד אמר לרדאידה כי ישיג לו שני רובי קלצ׳ניקוב, וכי
זה ואילך הקשר שלו יהיה עם מוהנד ולא עם הנאשם. כעבור כשבועיים התקשר מוהנד
רדאידה, אשר בינתיים צירף אדם נוסף לפיגוע, והודיע כי הנשקים מוכנים. רדאידה
ל את הנשקים והתחמושת ממוהנד, אשר תדרך את רדאידה ואת חברו כיצד להפעיל

ר כמה ימים בהם הכינו רדאידה וחברו יאסר את הפיגוע, ותיצפתו לעבר כביש מעלה
מים, הם ביצעו את הפיגוע, כאשר פתחו בירי לעבר הרכב שבו נסע הנזיר ונמלטו.
זרת התברר לרדאידה בחדשות כי הרג נזיר יווני, ומוהנד התקשר אליו ובא אליו
נות על כך ; רדאידה הסביר כי חשב שמדובר במתנחל. רדאידה נשאל בחקירתו מדוע
לנאשם כאשר החליט לבצע פיגוע, והשיב כי ראה את הנאשם כמה פעמים בטלוויזיה
ין ״שהוא האדם היחיד שיכול לעזור לי בהשגת הנשק״ (עמ׳ 5).

דעתו השלישית (ת/151ג), גילה רדאידה כי כוונתו המקורית היתה לעשות פיגוע
גבדות, אך הנאשם אמר לו: ״פיגועי התאבדות זה העבודה של החמאס והג׳יהאד
סלמי ושהתנזים עושה פיגועים נגד הצבא והמתנחלים״.

31



בתי המשפט

ית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

דאידה הוסיף ואמר: **"מרואן ברגותי אמר שהוא מוכן לתת לי אמל"ח כדי שאני אעשה
יגועים נגד חיילים ונגד מתנחלים"** (עמ' 1). גרסתו הנ"ל של רדאידה עולה גם מן המסמך
וכתב בכתב ידו (ת/151ד), אם כי בצורה מתומצתת יותר.

4.        דבריו של רדאידה נתמכים בדברי הנאשם בחקירתו (תמליל ת/98יא עמ' 38-37,
תמליל ת/98ד עמ' 2-2, 11-12 שבהם נרשם בטעות השם איסמעיל אלדבע במקום
יסמעיל רדאידה). בחקירתו במשטרה הכחיש הנאשם כי מוהנד עבד במשרדו או היה
וגנו, ואמר כי מוהנד לא קשור לתנזים (הודעה ת/102 עמ' 3, ת/103 עמ' 5, ת/105 עמ' 2,
106/ עמ' 1). גם בתחילת חקירתו בשב"כ הכחיש הנאשם כי הכיר את רדאידה, וכי מוהנד
בד במשרדו (זכ"ד ת/9 סי 8-9 וזכ"ד ת/21 סי 22 שהוגשו ואושרו ע"י החוקר "רוברטי"
עמ' 63-62).

ולם בהמשך חקירתו הודה הנאשם כי רדאידה בא אליו בהצעה לבצע פיגועי התאבדות
הנאשם אמר לו: **"אנחנו לא עובדים בפיגועי התאבדות".** הנאשם הפנה אותו אל מוהנד,
אמר למוהנד שרדאידה **"צריך אימון...תמצא לו מישהו".** כמו כן אמר הנאשם: **"סיכם
יתו מוהנד וניסו לעשות פיגוע פה במעלה אדומים או במקום אחר, אני ידעתי יותר
אוחר... אז הם ירו על הרכב ונפצע מישהו אלחורי... נהרג יעני"** ("אלחורי" משמעותו
בומרי" בערבית - ע.ב.). הודאה דומה של הנאשם בגיוסו של רדאידה לשם ביצוע פיגועים
אמצעות מוהנד עולה גם מדברים שאמר בחקירותיו (ראה: זכ"ד ת/22 סי 16-12 וזכ"ד ת/40/
י 9 שהוגשו ואושרו על ידי החוקר "מופז" בעמי 58, זכ"ד ת/23 סי 6 שהוגש ואושר על ידי
חוקר "דני" בעמי 90, ותמליל חקירתו של הנאשם ת/98ד עמי 21-26, ות/98זי עמי 8).

ד הודה הנאשם בחקירתו כי נפגש עם מוהנד, והעביר לו כספים לצורך ביצוע פיגועים,
אחר שמוהנד סיפר לו כי החוליה שלו ביצעה מספר פיגועים, כולל רצח בני הזוג כהנא
ל. הנאשם אמר כי נתן למוהנד סך של כ- 3,000 דולר ואף נשק (זכ"ד ת/43 סי 16-14
הוגש ואושר על ידי החוקר "רוברטי" בעמי 62 ; זכ"ד ת/59 סי 10 שהוגש ואושר על ידי
חוקר "ואדי" בעמי 56 ; זכ"ד ת/67 סי 6 שהוגש ואושר על ידי החוקר "אמילי" בעמי 54 ;
"ד ת/68 שהוגש ואושר על ידי החוקר "סטיבי" בעי 53).