מס. No. 1056/13

## CERTIFICATION OF COPY

אישור העתק

I the undersigned Yitzhak Weinberg, a Notary in 33 Soreq Street, Beit Shemesh, Israel
Hereby certify that the attached document marked **"A"** is a correct copy of the original document which is drawn up in the Hebrew language and has been produced to me.

אני החי"מ יצחק וויינברג נוטריון בירושלים ברחוב נחל שורק 33 בית שמש

מאשר כי המסמך המצורף והמסומן באות "א" הינו העתק מדויק של המסמך המקורי שנערך בשפה העברית והוצג בפני.

In witness whereof I certify the correctness of the copy and I hereto set my signature and seal,

ולראיה הנני מאשר את דיוק ההעתק הנ"ל, בחתימת ידי ובחותמי,

This day December 28, 2013

היום 28 דצמבר 2013

Paid 137.00 shekels (including VAT)

שולם סך של 137.00 ש"ח (כולל מע"מ)

SIGNATURE _____

חתימה

NOTARY'S SEAL

חותם הנוטריון




# APOSTILLE

(Convention de la Haye du 5 Octobre 1961)

| | |
|---|---|
| 1. **STATE OF ISRAEL** | 1. מדינת ישראל |
| This public document | מסמך ציבורי זה |
| 2. Has been signed by | 2. נחתם בידי |
| Advocate _Yitzhak Weinberg - Advocate_ 33 Soreq Street, Israel | עו"ד _יצחק ווינברג עו"ד_ |
| 3. Acting in capacity of Notary N.24260 | 3. המכהן בתור נוטריון |
| 4. Bears the seal/stamp of the above Notary | 4. נושא את החותם/החותמת של הנוטריון הנ"ל |
| **Certified** | **אושר** |
| 5. At the Magistrates Court of Jerusalem | 5. בבית משפט השלום בירושלים |
| 6. Date _1 -01- 2014_ | 6. ביום |
| 92/14 | |
| 7. By an official appointed by Minister of Justice under the Notaries Law, 1976. | 7. על ידי מי שמונה בידי שר המשפטים לפי חוק הנוטריונים, התשל"ו - 1976 |
| 8. Serial number _____ | 8. מס' סידורי _____ |
| 9. Seal/Stamp _____ | 9. החותם / החותמת _____ |
| 10. Signature _____ | 10. חתימה _____ |

(Seal: Magistrates Court of Jerusalem / בית משפט השלום בירושלים)

תאריך: ז' אב, תשס"ד                                    תיק מס': 3262/02
25 יולי, 2004

בית המשפט הצבאי יהודה

בפני כב' האב"ד: סא"ל נתנאל בנישו
שופט: סרן אלי תוסיה-כהן
שופט: סרן אברהם איינהורן



התביעה הצבאית
(באמצעות סגן סרג'יי מורין)

נגד

הנאשם: פארס צאדק מחמד ע'אנם   ת.ז 25806985 / שב"ס - נוכח
(באמצעות ב"כ עו"ד אוסאמה סעדי)

## הכרעת דין

נגד הנאשם הוגש כתב אישום המייחס לו 32 עבירות כדלקמן:

1. חברות בהתאחדות בלתי מותרת לפי תקנה 85 לתקנות ההגנה (שעת חירום), 1945, בכך שהחל משנת 02' ועד מעצרו היה חבר בחולייה צבאית אשר שמה לה למטרה ביצוע פיגועים נגד ישראלים. חולייה זו פעלה בחסות גדודי חללי אלאקצה, הזרוע הצבאית של ארגון פתח. יחד עם הנאשם פעלו בחולייה האמורה מוחמד מצלח, מוחמד עבדאללה, חוסאם שחדה, הייתם חמדאן, זידאן אלבדווי, ניזר והדאן ועלי עליאן.

2. שמונה עבירות של גרימת מוות בכוונה לפי סעיף 51 (א) לצו בדבר הוראות ביטחון תשל"י - 1970 וסעיף 14 (א) לצו בדבר הוראות כללי האחראיות לעבירה וחמש עבירות של נסיון לעבור עבירה זו. בעבירות אלה מגולמים שורה של פיגועים בהן נטל הנאשם חלק, אשר כתוצאה מהן קיפחו חייהם שמונה ישראלים ונעשה נסיון לגרום למותם של רבים נוספים.
ביום 26/07/01 נפגש הנאשם עם חוסאם שחדה ועלי עליאן, חברי חולייתו. עלי עליאן, שהיה חמוש בשני כלי נשק, מסר לנאשם ולחוסאם כי בכוונתו לבצע פיגוע ירי באזור גבעת זאב. הנאשם וחוסאם הביעו את הסכמתם להשתתף בפיגוע האמור. השלושה נסעו לאזור כפר אלג'יב שם נשאר הנאשם ברכב על מנת לשמש כשומר ומתריע בעת שחבריו התמקמו בסמוך לכביש 436. בסמוך לשעה 22:50 משהבחינו ברכב מסוג ניסאן אלמרה בו נסעו שמואל לנדאו, מאיר לוי ורונן לנדאו, ובכלי רכב נספים בינהם משאית שהיתה נהוגה בידי מוטי נמיר, פתחו לעברן באש. מספר קליעים שפגעו ברכב גרמו למותו של רונן לנדאו ז"ל.
ביום 25/08/01 שוב פנה חוסאם שחאדה לנאשם ולעלי עליאן לבצע פיגוע ירי, הפעם באזור כביש 443. השלושה החליטו כי יצלמו את הפיגוע ועל כן גייסו את הייתם חמדאן לשמש כצלם. הנאשם וחבריו פנו למוחמד מצלח וביקשו ממנו נשק. זה סיפק להם תמ"ק MP-s. אז נסעו הארבעה לאזור כביש 443, כשהנאשם נסע ברכב איסוזו כקילומטר לפני הרכב בו נסעו חוסאם, עלי והייתם, במטרה להודיע לחבריו על מחסומים בדרך. בסמוך לשעה 22:30 הבחינו ליד תחנת הדלק דור אנרגיה, ברכב מסוג פולקסווגן פאסאט בו נסעו בני הזוג בן שלום, בתם ודורון יוסף סוויירי.

-1-

תאריך : ז' אב, תשס"ד            תיק מס' : 3262/02
25 יולי, 2004

עלי עליאן, שנהג ברכב, עקף את רכב המשפחה ונסע במקביל אליו. בשלב זה
פתחו חוסאם שחאדה והייתם חמדאן באש לעבר יושבי הרכב. בירי זה גרמו
למותם בכוונה של בני הזוג יניב ושרון בן שלום ז"ל ושל דורון יוסף סווירי
ז"ל ולפציעת בתם של יניב ושרון ז"ל.
ביום 15/09/01 נפגש הנאשם עם מחמד עבדאללה, חוסאם שחאדה, הייתם
חמדאן ועלי עליאן. הנאשם הגיע למפגש זה כשהוא חמוש בתמ"ק MP-5 ואילו
עלי עליאן הגיע חמוש באקדח. הנאשם וחבריו החליטו לצאת לירושלים
ולבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראלים. על כן, נסעו
בשעות הלילה מרמאללה לירושלים ברכבו של הנאשם מסוג איסוזו. הנאשם
הסיע את חבריו לכביש 9 המחבר בין שכונת רמות לשכונת הגבעה הצרפתית.
שם הראה הנאשם לחבריו איפה לבצע את הפיגוע המתוכנן ואיך להימלט
לאחר מכן. בסיום סיור זה חזרו לרמאללה. בסביבות השעה 22:30 נסעו
מחמד עבדאללה, הייתם חמדאן וחוסאם שחאדה לירושלים במטרה לבצע
את הפיגוע שתוכנן. הנאשם נסע ברכבו לפני שלושתם על מנת להודיע לחם על
מחסומים בדרך. חבריו של הנאשם התמקמו בכביש 9 והמתינו למעבר רכב
בודד. בסמוך לשעה 23:10 הגיע למקום רכב מסוג רנו אקספרס ובו נסעו
משה וייס ומאיר וייסבויז. השלושה עקפו את הרכב וחוסאם והייתם פתחו
לעברו באש, אשר כתוצאה ממנו נהרג מאיר וייסבויז ז"ל ואילו משה וייס
נפצע קשה בראשו.
ביום 15/01/02, יום לאחר שנהרג פעיל צבאי בכיר בתנזים, ראאד כרמי,
נפגשו הנאשם, מחמד עבדאללה, מחמד מצלח, טארק א-נוף, זידאן אלבדווי
ואחמד ברגותי. האחרון מסר כי מרואן ברגותי מבקש שהנאשם וחבריו
יבצעו פיגוע נקמה באופן מיידי. לצורך זה מסר אחמד למחמד מצלח תמ"ק
MP-5 ואקדח. הנאשם וחבריו החליטו לבצע פיגוע עוד באותו ערב. על כן יצאו
לכיוון תחנת הדלק גבעונים בסמוך לכניסה לגבעת זאב. הנאשם וחבריו החנו
את כלי רכבם בסמוך למקום. מחמד מצלח וטארק א-נוף יצאו לבצע את
הפיגוע בעוד הנאשם ומחמד עבדאללה ממתינים על מנת להתריע מפני הגעת
כוחות צה"ל ולמלט את היורים לאחר ביצוע הפיגוע. בסמוך לשעה 19:45
הגיעו למקום רשל עיני ויואלה חן שנסעו ברכב פיאט ונכנסו לתחנת הדלק.
מחמד מצלח וטארק א-נוף התקרבו לרכב וירו לעברן. יואלה חן ז"ל נהרגה
כתוצאה מירי זה ואילו רשל עיני נפצעה באורח בינוני. הנאשם נסע מן
המקום כדי לבחון האם קיימים בדרך מחסומים.
באמצע חודש ינואר 2002 התקשר הנאשם למחמד עבדאללה והודיע לו כי
אחמד ברגותי מבקש להכניס מחבל מתאבד לעיר ירושלים והציע לו להסיע
את המחבל ביחד עימו. מחמד עבדאללה הסכים להצעה. ביום 22/01/02
התקשר שוב הנאשם למחמד עבדאללה והודיע לו כי הכל מוכן לביצוע
הפיגוע. הנאשם ומחמד ביצעו נסיעה מקדימה למצוא דרך בה אין מחסומים.
לאחר מכן חזרו לרמאללה, שם הכירו את המחבל המתאבד שהיה חמוש
ברובה אס-16. הנאשם ומחמד הסתירו את כלי הנשק ברכב והסיעו את
המחבל לרחוב שטראוס, שם הורידו את המחבל תוך שהם מסבירים לו כי
עליו לרדת לרחוב יפו ושם לפתוח בירי. השניים ברחו מן המקום. המחבל
פתח בירי לכל עבר ורצח את אורה (סבטלנה) סנדלר ז"ל ושרה המבורגר ז"ל
ופצע 45 אזרחים נוספים.

3.  4 עבירות נוספות של ניסיון לגרימת מוות בכוונה לפי סעיף 51(א) לצו בדבר
    הוראות ביטחון תש"ל - 1970 וכן סעיף 19 לצו בדבר כללי האחריות לעבירה
    בכך שביום 18/08/01 החליטו הנאשם ושותפיו לבצע פיגוע ירי בירושלים.
    הנאשם נסע ברכבו מסוג איסוזו לפני חבריו במטרה להודיע להם אודות
    מחסומים בדרך ולשמש כשומר ומתריע. כולם הגיעו לצומת בסמוך לנווה

-2-

תאריך : ז׳ אב, תשס״ד  תיק מס׳ : 3262/02
25 יולי, 2004

1. יעקב, שם פתחו חבריו של הנאשם בירי לעבר אוטובוס אגד קו 45 במטרה
2. לגרום למות הנוסעים בו. כתוצאה מירי זה נפצעו רות שפירא בת שש שנים
3. ואנדרו פייצוש. מספר קליעים אף פגעו ברכב מסוג טרנזיט. ביום 03/10/01
4. החליט לבצע פיגוע ירי נוסף עם חבריו. לשם כך הצטיידו בכלי נשק. הנאשם
5. ושותפים נסעו לירושלים כשהנאשם בוחן האם קיימים מחסומים בדרך.
6. הנאשם הוביל את חבריו לכביש "בגין" והראה להם היכן לבצע את הפיגוע.
7. מכאן חזרו כל השותפים לבית חנינא. משם נסעו מחמד עבדאללה ומחמד
8. מצלח לכביש "בגין". בסמוך לשעה 23:35 ירה מחמד עבדאללה לעבר רכב
9. שנסע בכביש "בגין". בהמשך נסעו השניים לכביש 9 ושם ירו לעבר רכב נוסף
10. בו נסעו בני הזוג מלכה ופנחס כהן. השניים נפצעו באורח בינוני. היורים חזרו
11. לבית חנינא שם נאספו על ידי הנאשם ויתר השותפים.
12. בסוף חודש ינואר 2001 התקשר הנאשם למחמד עבדאללה והודיע לו כי
13. אחמד ברגותי מבקש להכניס מחבל מתאבד נוסף לירושלים. הנאשם ומחמד
14. סיכמו כי יסיעו את המחבל. מספר ימים לאחר מכן אספו את המחבל שהיה
15. חמוש ברוסי״ר אם-16 והסיעו אותו לכיוון ירושלים. בהגיעו לשועפאט ביקש
16. המחבל לעצור ולהתפלל במסגד. הנאשם ומחמד הסכימו להצעה והותירו את
17. המחבל במסגד בעוד הם נוסעים לגבעת שאול על מנת לאתר מקום מתאים
18. לביצוע הפיגוע. משם חזרו לשועפאט אך המחבל נעלם.
19.

20. 4. 8 עבירות של החזקת נשק לפי סעיף 53(א) לצו בדבר הוראות ביטחון תש״ל -
21.     1970 בכך שבמסגרת פעולותיו שתוארו בסעיף קטן 2 לעיל החזיק בכלי נשק
22.     שונים.
23.

24. 5. 3 עבירות של קשירת קשר לפי סעיף 22 לצו בדבר כללי האחריות לעבירה
25.     בכך שבאמצע שנת 2000 קשר קשר עם אחרים לבצע פיגוע ירי בכביש מס׳ 1,
26.     בך שביולי 2001 קשר עם אחרים לבצע פיגועים נגד מטרות ישראליות ובכך
27.     שבפברואר 2002 קשר עם אחרים להכניס מחבל מתאבד שלישי לירושלים.
28.     תוכנית זו לא יצאה אל הפועל למרות הכנותיהם של הקושרים בעקבות
29.     מעצרם.
30.

31. 6. סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד
32.     מלחמתי, בכך שבאמצע שנת 2001 רכש תמ״ק MP-5.
33.

34. 7. אימונים צבאיים, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945
35.     בכך שבחודש אוגוסט 2001 לימד את חוסאם שחאדה ומחמד עבדאללה
36.     להשתמש ברוסי״ר אם-16.
37.

38. 8. היזק לרכוש בזדון, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון תש״ל -
39.     1970 בכך שבמסגרת הפיגוע שבוצע ברחוב יפו 22/01/02 פגע המחבל שהובל
40.     על ידי הנאשם במספר רב של חנויות, באוטובוסים, בכלי רכב ובמבנים
41.     נוספים.
42.

43. **טענות הצדדים**
44.

45. התובע ביקש להרשיע את הנאשם בעבירות המיוחסות לו על סמך חומר הראיות
46. שהוגש בהסכמת הצדדים, ממנו עולה אחריותו של הנאשם כשותף מלא לכלל
47. העבירות. התובע ציין כי לנאשם היה היסוד הנפשי הדרוש לעבירות השונות, בראשן
48. עבירות גרימת המוות בכוונה וניסיון לגרימת מוות בכוונה.

-3-

הסניגור, מצידו, ציין תחילה כי הנאשם לא לקח כל חלק פעיל במעשה הירי, ואף לא החזיק בנשק. הסניגור ציין עוד כי יש לראות בהימנעות התביעה להביא עדים הנמצאים תחת ידה ושגם הם היו שותפים לעבירות בסיס להחלשת ראיותיה. הסניגור טען כי חלק מדברי העדים הינם עדות שמיעה שאין לסמוך עליה ולחילופין כי אין תוספת ראייתית מספקת לשם הרשעה על פי דברי העדים. הסניגור אף תקף את תוכנן של העדויות כבלתי הגיוניות, בלתי מהימנות ואף סותרות זו את רעותה.

## הראיות

כל הראיות בתיק זה הוגשו בהסכמת הצדדים וסומנו כדלקמן:

- ת/1: אמרת העד חוסאם שחאדה מיום 18/02/02.
- ת/2: אמרת העד חוסאם שחאדה מיום 19/02/02.
- ת/3: אמרת העד חוסאם שחאדה מיום 12/03/02.
- ת/4: אמרת העד חוסאם שחאדה מיום 15/03/02.
- ת/5: אמרת העד מחמד עבדאללה מיום 11/03/02.
- ת/6: אמרת העד מחמד עבדאללה מיום 01/04/02.
- ת/7: אמרת העד מחמד מצלח מיום 25/02/02.
- ת/8: אמרת העד מחמד מצלח מיום 19/03/02.
- ת/9: אמרת הנאשם מיום 24/02/02.
- ת/10: אמרת הנאשם מיום 07/04/02.
- ת/11: אמרת העד הייתם חמדאן מיום 03/04/02.
- ת/12: אמרת העד הייתם חמדאן מיום 11/04/02.

הסכמה זו סוייגה בצורך בהצבת תוספת ראייתית לשם הרשעה על פי כל אחת מן האמרות הנ"ל.

כמו כן, בישיבה מיום 20/05/03 הודיעו הצדדים כי העובדות המתוארות בפרטי אישום 5,6,9,11-14,16,17,19,20,22,23,25-28 אינן מוכחשות וכל שבמחלוקת ביניהם הוא חלקו של הנאשם בעבירות אלה.

הנאשם אף ויתר על זכותו להעיד במסגרת פרשת ההגנה ובלבד שהתביעה לא תבקש לראות בויתור זה תוספת ראייתית לראיותיה.

משכך, ולאור צמצום יריעת המחלוקת בפרטי אישום רבים לשאלת אחריות הנאשם לעבירות המיוחסות לו בהם, כל שנותר לנו הוא לבדוק האם התביעה הצבאית העמידה בפנינו תשתית ראייתית מספיקה לשם הרשעת הנאשם.

מכאן ולהבא נסקור, על כן, את פרטי האישום אחד לאחד.

אך בטרם נפנה למלאכה זו מתחייבות מספר הקדמות כדלקמן.

## יסודות עבירת גרימת המוות בכוונה

סעיף 51(א) לצו בדבר הוראות ביטחון תש"ל - 1970 קובע כי:

תאריך : ז' אב, תשס"ד
25 יולי, 2004

תיק מס' : 3262/02

1 "הגורם בכוונה למותו של אחר דינו מוות או עונש אחר כפי שיורה בית
2 המשפט".
3
4 היסוד העובדתי של העבירה הינו ברור ביותר. נדרש כי מעשי הנאשם יביאו לתוצאה
5 קטלנית. היסוד הנפשי מצידו אינו דורש אותה כוונה תחילה חמתחייבת בהתאם
6 לסעיף 300(2) לחוק העונשין הישראלי. די, על כן, כי נתגבשה אצל הנאשם ההחלטה
7 לבצע את מעשה החמתה וחחפץ בתוצאת המוות.
8
9 באשר לעבירת הנסיון לגרום למוות בכוונה הדברים אינם ברורים פחות. וכך הם
10 סוכמו על ידי בית משפט זה במקום אחר :
11
12 "אין צורך להכביר מילים אודות ניתוח עבירה זו, אשר זכתה לפרשנות
13 מקיפה בפסיקת בתי המשפט. ניתן לומר בתמצית כי על מנת להוכיח ניסיון
14 לגרימת מוות, קיים צורך, מהפן העובדתי, להראות כי הנאשם עשה מעשה
15 גלוי לקראת ביצוע העבירה, כלשון סעיף 20 לצו בדבר כללי האחריות
16 לעבירה, תשכ"ח - 1968 :
17
18 "התחיל להוציא מן הכוח אל הפועל את כוונתו... באמצעים
19 מתאימים לביצוע כוונתו וכשהוא מביא לידי ביטוי את כוונתו על ידי
20 מעשה גלוי".
21
22 [ראה פרשנות מקיפה על המעשה הגלוי בע"פ 5150/93 סריס נ' מד"י פ"ד
23 מח (2) 183, וע"פ 9511/01 קובקוב נ' מד"י. וראה עוד י. קדמי על הדין
24 בפלילים, פרק חמישי, עמוד 122, ובאזור ע' אי/ו"ש 102/01 עולמה נ'
25 התוב"ץ. ובאשר להשפעת תיקון 39 לחוק העונשין המשפט ג' (1996) 297].
26
27 באשר ליסוד הנפשי הדרוש לעבירה, נפנה לע' אי/ו"ש 222/93 הנ"ל בו קבע
28 ביהמ"ש הצבאי לערעורים כדלקמן:
29
30 "כבר נקבע כי אין בין ניסיון להריגה לבין ניסיון לרצח (סעיף 305
31 לחוק העונשין) ולא כלום, ובשני המקרים יש להוכיח את כוונת
32 הקטילה הממשית, קרי את החפץ במות הקורבן, ואין סגי פחות
33 מזה (פזיזות לגבי אותה תוצאה). מאידך, גם אין צורך להוכיח את כל
34 יסודות ה"כוונה תחילה" (ראה י. קדמי, שם, פרק 19 סימן שביעי
35 ופרק 20 סימן שלישי והפסיקה המובאת שם, ופסק הדין המנחה
36 לעניין זה ע"פ 155/59 דרעי נ' היועץ המשפטי פ"ד יד 233, ע"פ
37 11/89 סלימן בן פאהד נ' מד"י - לא פורסם).
38 ואם בניסיון להריגה כך, הרי בניסיון לגרימת מוות בכוונה על אחת
39 כמה וכמה. אמור מעתה, שאם על מנת להוכיח את העבירה
40 המושלמת של גרימת מוות בכוונה די להוכיח יסוד נפשי של פזיזות
41 לגבי התוצאה הקטלנית, הרי שבעבירת הנסיון לאותה העבירה, יש
42 להוכיח את הכוונה הפלילית ברמתה הגבוהה, קרי החפץ במות
43 הקורבן".
44
45 קיים צורך, על כן, מחד במעשה גלוי, ומאידך במודעות לטיב המעשה ובחפץ
46 בתוצאה הקטלנית." [ראה תיק בימ"ש 4603/01].
47
48
49

-5-

תאריך : ז' אב, תשס"ד
25 יולי, 2004

תיק מס' : 3262/02

## דיני השותפות באזור

תחילה מן הראוי להזכיר כי אדם יכול שיחוב אחריות לעבירה הן "כמבצע עיקרי", דהיינו כמי שעשה אחד מהמעשים הנמנים על יסודות העבירה, והן כשותף או כמסייע לעבירה, אשר מעורבותו באחריות לביצועה נעוצה בהתנהגות המלווה את התנהגותו של המבצע העיקרי, מבלי שהיא נמנית בין מרכיבי האקטוס ראוס של העבירה. ויפים למקרה זה דברי בית המשפט העליון בע"פ 5235/93 לוי נ. מדינת ישראל פ"ד מח(5) 550 :

"ביסוד הרחבת האחריות הפלילית מכח דיני השותפות, מעבר לביצוע עיקרי ומושלם של העבירה, מונחת ההשקפה כי מי שנכון לתרום להגשמת מטרה משותפת, כשהוא מודע לפחות לאפשרות שהגשמת אותה מטרה כרוכה בפגיעה בערך חברתי מסויים - ראוי לענישה. בין היסוד הנפשי (קרי: הנכונות לתרום לפגיעה משותפת בערך חברתי מסויים) לבין היסוד העובדתי הקבוע בעבירה קיימת זיקת גומלין. שכן משהוכח יסוד "נפשי" זה, אין עוד חשיבות לחלוקת התפקידים בין המעורבים באירוע. מכאן שאבן הבוחן לקיומה של שותפות היא מודעות המעורבים באירוע העברייני לאפשרות הפגיעה בערך חברתי מסויים עקב פעילותם המשותפת."

ס' 14 ו-15 לצו בדבר כללי האחריות לעבירה, תשכ"ח - 1968 קובעים את דיני השותפות, הסיוע והשידול באזור.

הסעיף הרלוונטי לענייננו קובע כדלקמן :

"ס' 14(א): אם בוצעה עבירה ייחשב כל אחד מן האנשים כדלקמן, כאילו השתתף בביצוע העבירה וכאילו אשם בעבירה, ואפשר להאשימו בביצוע העבירה, זאת אומרת:
(1) כל אחד שבפועל עשה את המעשה או את אחד המעשים, או אשר חדל את המחדל, או אחד המחדלים המהווים את העבירה.
(2) כל העושה או חדל מלעשות איזה מעשה כדי לאפשר לאדם אחר את ביצוע העבירה או כדי לסייע בידיו בביצוע העבירה.
(3) כל אדם המסייע בידי אדם אחר בביצוע העבירה בין שהוא נוכח בשעת ביצוע העבירה ובין שאינו נוכח בשעת ביצוע העבירה. אדם נחשב כאילו סייע, אם נוכח במקום שבו נעשה העבירה כדי להתגבר על התנגדות או כדי לחזק את החלטתו של מבצע העבירה האמיתי או כדי להבטיח את ההוצאה לפועל של העבירה העומדת להיעשות"

על פי סעיף קטן 1 אחריותו של הנאשם כמבצע בצוותא אינה מצריכה ביצוע של כל רכיבי ההתנהגות הפלילית הנדרשת להרשעה. די אם חבר הנאשם לאחרים ותרם במקצת להתרחשות המעשה הפלילי [ראה ע"פ 2798/95 פלוני נ' מד"יי פ"ד נא (3) 388 וע"פ 4389/93 מרדכי נ' מד"יי פ"ד נ (3) 239].

במקרה הנוכחי אף מן הראוי להזכיר כי כאשר חוברים מספר עבריינים על פי תכנון מוקדם :

"ככלל עומדת בבסיס האחריות של 'מבצע בצוותא' 'חבירה' של מספר בני אדם לביצועה של משימה עבריינית משותפת, כאשר לכל אחד מהחברים בחבורה 'תפקיד' כמבצע הכולל של 'הגשמת המשימה'" [ע"פ 5589/98 סולטאן נ' מד"יי וראה גם עניין פלוני הנ"ל עמ' 404].

-6-

תאריך : ז׳ אב, תשס״ד    תיק מס׳ : 3262/02
25 יולי, 2004

1
2  **זיהוי הנאשם כאדם המופלל באמרות העדים**
3  העד חוסאם שחאדה מוסר בת/1 כי מכיר אדם ושמו ״פראס עיאנם חיטאוי בן 27
4  נשוי ויש לו ילדים אני חושב שלושה או ארבעה יש למשפחתו חברת חפירות ויש
5  להם באגרים והוא עובד על באגר״. בת/4 מוסיף העד כי חברו הטוב פראס עיאנס
6  צאדק חיטאוי גר בסמיר אמיס.
7
8  העד מחמד עבדאללה מוסר בת/5 כי ״פראס צאדק אחמד עיאנס כבן 27 מכפר עקב
9  נשוי עם ארבעה ילדים ולו חברה לחפירות״ נפגש עימו בחברת חוסאם שחאדה. כך
10 גם מוסר העד בת/6 כי ״חברו מזה יותר מזה עשר שנים פראס צאדק אחמד עיאנס
11 נשוי ואב לארבעה ילדים עובד בעבודות עפר ולמשפחתו חברה גדולה לעבודות עפר״.
12
13 העד מחמד מצלח מוסר בת/8 אודות ״פראס חיטאוי כבן 30 מסמיר עמיס עובד על
14 טרקטור באגר בעל גוף מלא ויש לו רכב מסוג איסוזו מסחרי דאבל קבינה בצבע
15 חום״.
16
17 העד הייתם חמדאן מוסר בת/11 אודות ״פראס חיטאוי כבן 27 נשוי מכונה ״אבו
18 אדיב״ עובד עם אביו כנהג על טרקטור באגר גר בסמיר אמיס ויש ברשותו רכב
19 מסחרי מדגם איסוזו בצבע אפור״.
20
21 באמרתו ת/10 מאשר הנאשם כי הפרטים שנמסרו לעיל הינם פרטיו האישיים. כן
22 מוסר הנאשם כי למשפחתו שם משפחה נוסף, אל חיטאוי, כי הוא מתגורר בצומת
23 כפר עקב - סמיר עמיס, כי הוא עובד כנהג באגר בחברת החפירות של אביו וכי
24 לחברה מספר כלי רכב, ביניהם איסוזו בצבע אפור שבו הוא עושה שימוש על פי
25 צרכיו. הנאשם אף אישר הכרות עם חוסאם שחאדה, מחמד מצלח ומחמד
26 עבדאללה. הנאשם אף ציין כי הוא נשוי לשתי נשים ואב לארבעה ילדים.
27
28 עניינו הרואות כי זיהוי הנאשם כמי שהוזכר באמרותיהם של עדי התביעה אינו
29 מעורר כל קושי.
30
31 **הגשת חומר ראיות בהסכמה**
32
33 כאמור כל חומר הראיות בתיק זה הוגש בהסכמה.
34
35 להסכמה זו משמעות ראייתית חשובה, עליה עמד ביהמ״ש לערעורים כאשר קבע:
36
37 ״כבר נפסק לא אחת בעבר כי הגשת אמרות בכתב בהסכמה, ללא כפירה או
38 הסתייגות מתוכנן, פירושה הסכמה לאמור בהן״ [ע׳ איו״ש 85/94 אבו מחסן
39 נ׳ התוב״ץ פש״מ ט 359 וראה גם ע׳ איו״ש 512/03 התוב״ץ נ׳ חלילה ועד״יי
40 איו״ש 114/01 התוב״ץ נ׳ אבו תלאל בו חזר ודן ביהמ״ש בנפקות הגשת
41 הראיות בדרך זו].
42
43 כמו כן, גם אם תמצא בחומר הראיות ראייה אשר פסולה היא, הרי שהסכמת
44 הצדדים להגישה הכשירה אותה [ראה י׳ קדמי **על הראיות** חלק ב׳ עמוד 914
45 והפסיקה המצוטטת שם].
46
47 כאמור לעיל, הצדדים סיימו הסכמתם להגשת הראיות בחימצאות דבר לחיזוק לשם
48 הרשעת הנאשם על פי אותן ראיות. יאמר מיד כי עיון בראיות מלמד שתוספת
49 כאמור נמצאה לרוב, מאחר שבהיות מעשיו של הנאשם מסכת מתמשכת אחת של

-7-

תאריך : ז' אב, תשס"ד          תיק מס' : 3262/02
25 יולי, 2004

1. מעשים נגד בטחון האזור שבוצעו בחבורה אחת, די באימות פרטים המתייחסים
2. לאחת מן העבירות כדי לאמת את כלל דבריו של עד ועד ולספק את התוספת
3. הראייתית הנדרשת. כפי שנראה בהמשך דברנו פרטי אישוש לא מועטים מגובים
4. במספר מקורות ראייתיים שונים, ועל כן, נוכל לקבוע כבר עתה כי דברי העדים
5. השונים באמרותיהם מחזקים אלה את אלה במידה מספקת לסמוך הרשעת הנאשם
6. על פיהם [אודות מהות ה"דבר לחיזוק" כראיה מאמתת אותה ניתן לדלות אף
7. מאמרות הטעונות חיזוק בעצמן נכתב רבות נפנה על כן לי קדמי **על הראיות 172**
8. ולעד"י איו"ש 9/01 **התוב"צ נ' זעתרי** פש"מ יא 285] .
9.
10. דברים אלה הינם נחלת הכלל ואולם הסניגור מבקש כי נסטה מהם ונבחן את
11. האמרות בעין ביקורתית עד כדי שלילת משקלם הראייתי. בחנו בקשה זו וסבורים
12. אנו כי יש לדחותה. ראשית, עלינו לציין, במידה לא מועטה של תרעומת, כי לו ביקש
13. הסניגור, בשלב כל שהוא מן המשפט, לסייג את הסכמתו להגשת האמרות, בניגוד
14. להלכה המקובלת והידועה, היה עליו לעשות כן בשלב הגשתן, כך שהייתה ניתנת
15. הזדמנות לתביעה להביא את עדיה. שנית, סטיה מהלכה כה מושרשת במקומותינו
16. מחייבת טעמים כבדי משקל ואנו לא מצאנו בדברי הסניגור ולא קוצו של יוד להאחז
17. בו. הלכת ביהמ"ש הצבאי לערעורים עליה עמדנו, שורשיה בהגיון הבריא ובשכל
18. הישר לפיו אם הנאשם חולק על הדברים הנחזים להיות שלו, עליו למסור להם
19. גירסה נגדית. הנאשם שבפנינו, לא רק שלא טען בשלב כלשהו של הדיון כי אמרות
20. העדים אינן משקפות את האמת, אלא מילא פיו מים ובחר שלא להעיד כאשר ניתנה
21. לו הזדמנות לעשות כן. במצב זה, משלא העמיד הנאשם גירסה נגדית לגרסה העולה
22. מדברי העדים כולם, איננו יכולים להתלות בספקולציות הסניגור.
23.
24. יתרה מזו, חזרנו ונדרשנו לשאלה מדוע עלינו לחבר הכרעת דין זו כשבפועל הנאשם
25. לא חלק על ראיה אחת מן הראיות הברורות של התביעה ולא העמיד כל קו הגנה
26. נגדי.
27.
28. לתמיה זו לא מצאנו תשובה ועל כן, אין לנו אלא למלא אחר חובתנו על פי דין
29. ולהכריע בדבר אחריותו של הנאשם לעבירות המיוחסות לו בכתב האישום.
30.
31.
32. **פרט האישום הראשון**
33.
34. האמור בפרט אישום זה מייחס לנאשם עבירה של חברות בחוליה צבאית שפעלה
35. תחת חסות "גדודי חללי אלאקצא".
36.
37. פרט אישום זה מבוסס כדבעי בראיות התביעה. כך בת/6 (עמ' 1,2 בעיקר שורה 23
38. ואילך), ת/11 (עמ' 1 שורה 11 ואילך) ות/12 (עמ' 1 שורה 18 ואילך).
39.
40. **פרט האישום השני**
41.
42. פרט אישום זה מוצא את ביטויו בת/4 (עמ' 7 שורה 19 ואילך). משקשר הנאשם קשר
43. עם חוסאם שחאדה לבצע פיגוע ירי לעבר כלי רכב הנעים בכביש בין תל אביב
44. לירושלים, הרי שיש להרשיעו גם בעבירה זו.
45.

-8-

תיק מס׳: 3262/02

תאריך: ז׳ אב, תשס״ד
25 יולי, 2004

**פרט האישום השלישי**

העד מחמד עבדאללה מוסר אודות נשק מסוג 5-MP אותו רכש הנאשם (ת/6 עמ׳ 11 שורה 3 ואילך). עם זאת, נציין כי הנשק שנרכש היה מקולקל ועל כן הוחזר על ידי הנאשם לאדם שמכרו.

**פרט האישום הרביעי**

פרט אישום זה מוצא את ביטויו בת/6 (עמ׳ 1 שורה 25 ואילך).

**פרטי אישום 5,6,7:**

אף העובדות המתוארות בפרטי אישום אלה מתוארות בהרחבה על ידי חוסאם שחאדה ב-ת/4 החל מעמ׳ 1 שורה 18 ואילך.

הנאשם אומנם לא ירה בארוע המתואר, ואולם אחריותו כשותף מלא לעבירה אינה מוטלת בספק. הנאשם פנה יחד עם חברו חוסאם שחאדה לעלי עליאן והשלושה סיכמו לבצע פיגוע ירי. לאחר מכן נפגשו השלושה פעם נוספת כשעלי עליאן מביא עימו שני כלי נשק. השלושה נסעו לאזור גבעת זאב, כשהנאשם מחזיק בנשק. בעוד הנאשם נותר ברכב לשמור עליו, פנו שני חבריו לכביש הראשי ובהגיע רכב ישראלי, פתחו לעברו בירי אשר גרם למותו של נער בן 17.

עיניינו הרואות כי הנאשם נטל חלק חן בשלב התכנון של הפיגוע והן בשלב הביצוע כששימש כנהג החוליה. פעולותיו אלה של הנאשם מציבות אותו בין אלה שנטלו חלק משמעותי בהוצאת הפיגוע אל הפועל, ומשכך יש להציב את הנאשם במעגל הפנימי של העבירה. אף באשר ליסוד הנפשי של הנאשם, לא יכול להיות כל ספק כי מי שיוצא עם חבריו לפיגוע ירי כשברשותו כלי נשק התקפיים, גמלה בליבו ההחלטה לגרום למותם של אחרים בכוונה.

משהעובדות הנוספות שפורטו בפרטים אלה אינן במחלוקת, ומשהשתתפותו של הנאשם גם היא ברורה, כל שנותר לנו הוא להרשיע את הנאשם בעבירות המיוחסות לו בפרטים אלה.

**פרט האישום השמיני**

העד מחמד עבדאללה מתאר באמרתו (ת/6 עמ׳ 2 שורה 4 ואילך) אודות האימון הצבאי המתואר בפרט אישום זה.

**פרטי אישום 9,10**

גם באשר לפרטי אישום אלה, התשתית העובדתית מבוססת היטב [ראה ת/4 עמ׳ 2 שורה 22 ואילך, אליה יש לצרף את ת/6 עמ׳ 2 שורה 9 ואילך). גם לפיגוע זה היה הנאשם שותף מלא כשנטל חלק בקבלת ההחלטה לבצע את הפיגוע ושימש כשומר, מתריע ומסמן לחבריו. נוכח אופי המעשה, ברורה כוונתם של השותפים, ביניהם הנאשם, וגם כאן לא נותר כל ספק באשר לצורך להרשיע את הנאשם בעבירות המיוחסות לו בפרטים אלה.

-9-

תאריך : ז' אב, תשס"ד
25 יולי, 2004

תיק מס' : 3262/02

## פרטי אישום 11,12,13,14,15

לגבי פרטי אישום אלה קיים חומר ראיות רב היקף. שלושה מעורבים נוספים בפיגוע, חוסאם שחאדה, מחמד עבדאללה והייתם חמדאן, מוסרים תאורים מפורטים באשר להשתלשלות הארועים בהם הביאו הנאשם ושותפיו למותם של בני הזוג בן שלום ז"ל, של דורון יוסף סווירי ז"ל ולפציעתה של בתם של בני הזוג [ראה דבריהם של חוסאם שחאדה ב-ת/4 עמ' 3 שורה 19 ואילך, מחמד מצלח ב-ת/8 עמ' 3 שורה 2, והייתם חמדאן ב-ת/11 עמ' 1 שורה 11 ואילך ו-ת/12 עמ' 1 שורה 28 ואילך]. למקרא דבריהם של העדים, אחריותו של הנאשם בגין פרטי אישום אלה אינה יכולה להיות מוטלת בספק, בהתאם לדברינו דלעיל לפיהם, משמילא הנאשם תפקיד מרכזי במסגרת החוליה שיצאה לבצע את הפיגוע, הינו שותף מלא למעשיו של חבריו ומכאן לגרימת המוות.

## פרטי אישום 16,17,18

אף פרטי אישום אלה זכו להתייחסות נרחבת מצד העדים [ראה דבריהם של הייתם חמדאן ב-ת/11 עמ' 3 שורה 21 ואילך, מחמד עבדאללה ב-ת/6 עמ' 2 שורה 25 ואילך, חוסאם שחאדה ב-ת/4 עמ' 5 שורה 23 ואילך, מחמד מצלח ב-ת/8 עמ' 4 שורה 1 ואילך].

תפקידו של הנאשם בפיגוע זה היה דומה לתפקיד אותו מילא בפיגועים האחרים, ועל כן גם מידת אחריותו זהה.

## פרטי אישום 19,20,21

הבסיס הראייתי למתואר בפרטי אישום אלה מוצק. הן חוסאם שחאדה, הן מחמד עבדאללה, הן מחמד מצלח, והן הייתם חמדאן מוסרים תיאורים נרחבים של מעשי החוליה, ביניהם מעשיו של הנאשם [ראה ת/4 עמ' 6 שורה 21 ואילך, ת/6 עמ' 4 שורה 6 ואילך, ת/8 עמ' 4 שורה 17 ואילך, ו-ת/12 עמ' 5 שורה 15 ואילך].

אין לנו אלא להצטרף לניתוח המדוקדק של התובע באשר לאחריותו של הנאשם לשני ארועי הירי שבוצעו על ידי שותפיו. משקבע הנאשם עם שותפיו לבצע פיגוע ירי במנהרות של כביש "בגין", ומשהסיע הנאשם את חבריו למקום והדריכם, כמתואר בפרט אישום 19, הרי שיש לראותו אחראי לכלל מעשיהם לאחר מכן, זאת מכוח הוראות סעיף 15 לצו בדבר כללי האחריות לעבירה, תשכ"ח - 1968.

## פרטי אישום 22,23,24

גם בנוגע לפרטי אישום אלה קיים חומר ראייתי רב היקף [ראה מחמד עבדאללה ב-ת/6 עמ' 6 שורה 17 ואילך, מחמד מצלח ב-ת/8 עמ' 5 שורה 21]. לעדויות ישירות אלה אף נמצאו תימוכין בדבריהם של הייתם חמדאן וחוסאם שחאדה.

גם כאן אחריותו של הנאשם כשותף לעבירות אינה מוטלת בספק, ועל כן דין הוא כי יורשע בהן.

## פרטי אישום 25,26,27,28,29

חלקו של הנאשם בשליחת המחבל המתאבד שביצע את פיגוע הירי נשוא פרטי אישום אלה ברור. הנאשם היה מעורב בתכנון ובביצוע הובלתו של המחבל עד לרחוב

-10-

תאריך : ז' אב, תשס"ד  
25 יולי, 2004

תיק מס': 3262/02

1    הנביאים, כפי שעולה מ-ת/6 עמ' 8 שורה 1 ואילך. דברים אלה מוצאים חיזוק ב-ת/8  
2    עמ' 7 שורה 6 ואילך.  
3  
4    **פרטי אישום 30,31**  
5  
6    מחמד עבדאללה מוסר ב-ת/6 עמ' 9 שורה 13 ואילך אודות המתואר בפרטי אישום  
7    אלה.  
8  
9    משהתחיל הנאשם להוציא מן הכוח אל הפועל את כוונתו לגרום למותם של אחרים  
10    באמצעות אותו מחבל מתאבד אותו הוביל, כשברשותו של הנאשם והמחבל  
11    המתאבד עמדו האמצעים המתאימים לביצוע העבירה, הרי שיש לראות אותו  
12    אחראי לעבירה של ניסיון לגרימת מוות בכוונה ושל החזקת אמצעי לחימה,  
13    כמתואר בכתב האישום [באשר ליסודות עבירת הניסיון לגרימת מוות בכוונה, ראה  
14    בהרחבה ב-ע"י איו"ש 318/03+311 ובתיק יהודה 42947/01].  
15  
16    **פרט אישום 32**  
17  
18    לפרט אישום זה נמצאו ראיות בדבריהם של חוסאם שתאדה ומחמד עבדאללה [ת/4  
19    עמ' 8 שורות 13-23, ת/5 עמ' 1 שורה 21].  
20  
21    **סוף דבר**  
22  
23    נוכח מסקנותנו דלעיל ומשנמצאו כל פרטי האישום שיוחסו לנאשם מבוססים  
24    כדבעי בראיות התביעה, אנו מרשיעים בהם את הנאשם.  
25  
26  
27    ניתן והודע היום, 25/07/2004, בפומבי ובמעמד הצדדים.

שופט          אב"ד          שופט

-11-

P 6: 330