IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 04cv397 (GBD) (RLE) |
| ) | |
| THE PALESTINE LIBERATION ) | |
| ORGANIZATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO STAY ALL PROCEEDINGS PENDING
RESOLUTION OF THEIR PETITION FOR A WRIT OF MANDAMUS**

On December 3, 2014 the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") (collectively, "Defendants") filed in the Second Circuit a petition for a writ of mandamus seeking review of this Court's December 1, 2014 Memorandum Decision and Order holding that the Court has general personal jurisdiction over them. *See In re Palestinian Authority*, No. 14-4449 (2d Cir.). The PA and PLO concurrently filed an Emergency Motion for Expedited Review. To date, the Court of Appeals has not ruled on the Emergency Motion.

Defendants recognize that this Court previously denied their motion to certify the *Daimler* issue for interlocutory appeal. DE 472. Further, the Court made clear its intent to proceed to trial on January 12, 2015, *see* Nov. 20, 2014 Hearing Tr. at 2:8-11, despite Defendants' request for an adjournment, DE 639. Nevertheless, in the event that the Court of Appeals does not promptly rule on the Emergency Motion, Defendants seek this Court's ruling on a motion for a stay before they seek such relief from the Court of Appeals.

For the reasons set forth below, the PA and PLO request that the Court stay all proceedings pending the Second Circuit's determination of the merits of the mandamus petition.

**ARGUMENT**

The standard in this circuit for a stay pending appeal is "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)). The probability of success and irreparable injury factors are viewed on a sliding scale. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (internal quotation marks omitted). A stay is warranted in this case. All four factors weigh heavily in favor of maintaining the status quo until the Court of Appeals has the opportunity to decide Defendants' petition for a writ of mandamus.

In addition, the Defendants have been prompt in moving for a stay following the Court's December 1, 2014 order denying the jurisdictional aspect of their motion for summary judgment, and following their December 3, 2014 mandamus petition. This weighs in favor of finding irreparable injury. *See Huminski v. Rutland Cty. Sheriff's Dep't*, No. 99-cv-160, 2002 U.S. Dist. LEXIS 27827, at *23 (D. Vt. Aug. 22, 2002) (finding potential irreparable injury to the movant when, in part, the movant's immediate filing of his motion for a stay "demonstrate[d] his diligence in attempting to vindicate his rights.").

I.    **THE PA AND THE PLO WILL SUFFER IRREPARABLE INJURY ABSENT A STAY**

   A.    **The Financial Stakes Threaten the PA's and PLO's Viability.**

Collectively, the Plaintiffs seek $1 billion in compensatory damages, which amounts to $3 billion by operation of the Anti-Terrorism Act's automatic trebling provision. DE 4 at 44 (First Amended Complaint); 18 U.S.C. § 2333(a) (providing that successful plaintiffs "shall recover threefold the damages he or she sustains"). In another case against the PA and PLO, involving a $193 million default judgment, *Knox v. Palestine Liberation Organization*, No. 03-cv-4466 (S.D.N.Y.), the U.S. Department of Justice submitted a letter to the district court stating that "the United States remains concerned about the potentially significant impact that these cases may have on the financial and political viability of the defendants." Exh. 1 (2/29/08 letter from C. Nichols to Judge Marrero) at 1.

The Seventh Circuit recently issued a writ of mandamus to a district court on a personal jurisdiction issue. As here, the case involved a high-profile issue (a suit against Hungarian banks by Holocaust victims alleging expropriation and financing of genocide), "appreciable foreign policy consequences," substantial financial stakes, and only a tangential connection to the United States. *Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012). As here, the defendant had moved for reconsideration and also sought certification for an interlocutory appeal. *See id.* at 645. The court of appeals found that the substantial financial stakes created a risk of irreparable harm because the sheer magnitude of the risk to which the defendants were exposed presented "intense pressure to settle." *Id.* at 652-53.

In addition, here, the cost of a supersedeas bond may be so prohibitive to preclude, as a practical matter, the PA or PLO from obtaining appellate review after entry of a final judgment.

### B. The Potential Public Disclosure of Confidential Intelligence Files Would Create Irreparable Harm.

The Court previously ordered the PA to produce hundreds of pages of General Intelligence Service ("GIS") files for dozens of individuals.  DE 380.  The documents at issue reveal law enforcement activities of the GIS, including the identity of witnesses and intelligence sources, and public disclosure of them would undermine important interests of the PA.  *See* Exh. 2 (Declaration of Majed Faraj) at ¶¶ 12-14, 17 (declaring that disclosure of GIS investigative methods would, *inter alia*, increase security threats and impair GIS's ability to conduct future investigations); *see also Gilmore v. Palestinian Interim Self-Government Auth.*, No. 01-853, 2014 U.S. Dist. LEXIS 38037, at *4 (D.D.C. Mar. 24, 2014) (citing "numerous persuasive arguments for concluding that disclosure of the requested [GIS] files would 'undermine important interests' of the PA.").  The GIS files were produced pursuant to a protective order.  Recently, journalists moved to intervene to seek public disclosure of the files.  DE 628.  At the November 20, 2014 hearing, the Court announced its intent to make public all documents that are admitted into evidence.  Nov. 20, 2014 Hearing Tr. at 15:7-16.

In *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 35 (2d Cir. 2014), the Court of Appeals issued a writ of mandamus dismissing the defendant on *Daimler* personal jurisdiction grounds, in part because of the potential irreparable harm from disclosure of confidential materials.  The district court in that case had entered a discovery order requiring disclosure of materials relating to child sex abuse, including the identifying names and addresses of the investigators and summaries of the oral and written statements taken during the course of the investigation.  The Court of Appeals concluded that mandamus was "the only means for the Diocese to obtain the relief it seeks," especially given the "clarity of the district court's error, and the need for guidance from this Court regarding the proper general personal jurisdiction inquiry."

*Id.* at 35, 37; *see also In re The City of New York*, 607 F.3d 923, 932, 934 (2d Cir. 2010) (issuing writ of mandamus to prevent the disclosure of confidential reports of undercover police officers, when the petitioning parties "ha[d] no other adequate means to attain…relief" because "a remedy after final judgment cannot unsay the confidential information that has been revealed") (internal quotation marks omitted).

Similarly, here, the PA will be irreparably harmed if its law enforcement methods and sources are publicly revealed at trial. A reversal on appeal from a final judgment will not provide the PA relief from this considerable harm.

### C. The Trial and Attendant Publicity Will Interfere with Governmental and Diplomatic Functions of the PA and PLO.

The Palestinian Authority has limited financial and personnel resources and is consumed with the task of maintaining security in the West Bank and Gaza, while providing essential services to approximately 4.4 million Palestinians under extraordinarily trying and volatile circumstances. The PLO performs diplomatic functions on behalf of the Palestinian people including through negotiations with Israel. Defending a 12-week terrorism trial in the United States requires a commitment of resources and personnel that are critically needed for performing governmental and diplomatic functions.

In addition, there is substantial risk that the trial will be politicized, if not by Plaintiffs themselves, then by outside interests and through the publicity associated with the trial. Following this Court's ruling on Defendants' motion for summary judgment, Plaintiffs' Israeli counsel Ms. Darshan-Leitner, informed a media outlet:

> This is a precedent and a historical decision of the court. We've sued the Palestinian Authority in the past, and these suits were heard by different federal judges who ruled in them, but this is the first time a trial will be heard by an American jury, a trial that is open to the public and the world media. This is a historic

5

> opportunity to call to the stand many PLO and PA officials for an in-depth interrogation about their actions. The PA, the PLO and Abbas will have to answer to these actions.

*See* Exh. 3; *see also* DE 487, Mem. at 13 (describing Ms. Darshan-Leitner as "Plaintiffs' co-counsel in Israel").

The reputational harm and interference with U.S. foreign policy goals resulting from this trial cannot be overstated. Plaintiffs seek to brand the Defendants as terrorist organizations. Such characterizations threaten important foreign relations, law enforcement, and state-building efforts of the Defendants. The trial's interference with Defendants' governmental and diplomatic functions satisfies the irreparable injury requirement. *See Seneca Nation of Indians v. Paterson*, No. 10-cv-687A, 2010 U.S. Dist. LEXIS 109540 (W.D.N.Y. Oct. 14, 2010) (holding that interference with Indian tribe's self-governance constitutes irreparable harm).

Most of the Plaintiffs' case focuses on the Palestinian Authority. The PA is at a critical juncture as it continues to seek recognition for the State of Palestine, maintain law and order in the West Bank, reassert control over the Gaza Strip, and address heightened tensions between Israelis and Palestinians in Jerusalem. The PA plays an essential role in the United States' efforts to achieve a two-state solution as part of a comprehensive regional peace in the Middle East. This trial should not go forward in the absence of the Court of Appeals' review of the Court's exercise of personal jurisdiction.

## II. THE PA AND PLO HAVE DEMONSTRATED "A SUBSTANTIAL POSSIBILITY" OF SUCCESS ON MANDAMUS

While the Court disagrees with the Defendants on the merits of whether it has general personal jurisdiction over them, it should acknowledge that Defendants have a possibility of success on mandamus. District courts routinely grant stays pending appeal, even when they disagree with the movants' positions. *See*, *e.g.*, *Huminski*, 2002 U.S. Dist. LEXIS 27827, at *23-

24 ("[W]hile the Court recently found that [the movant] failed to demonstrate a likelihood of prevailing on the merits of his case, the standard for issuance of a stay only requires proof of a 'substantial possibility' of success"); *United States ex rel. Stevens v. Vermont*, No. 95-cv-161, 1997 U.S. Dist. LEXIS 23676, at *2 (D. Vt. June 30, 1997) ("Although this Court has concluded that the majority of other courts considering the issue have rejected [defendant's] argument, it is possible that the Second Circuit may agree with the defendant's analysis of the statute at issue").

  Regardless, the PA and PLO believe that they have a high probability of success before the Second Circuit. This Court held that the "record is…insufficient" for it to conclude that the PA and PLO are "'at home' in a particular jurisdiction other than the United States." DE 657 at 4. Other district courts have applied *Daimler* to non-corporate entities similar to the Defendants and found them to be "at home" in the jurisdictions where they principally operate. *See*, *e.g.*, *Krishanti v. Rajaratnam*, No. 2:09-cv-05395, 2014 U.S. Dist. LEXIS 58314, at *5-6, *15-21 (D.N.J. Apr. 28, 2014) (applying *Daimler* and dismissing for lack of personal jurisdiction a suit against a "Sri Lankan based non-governmental organization"); *Toumazou v. Turkish Republic of N. Cyprus*, No. 09-cv-1967, 2014 U.S. Dist. LEXIS 143535, at *11 (D.D.C. Oct. 9, 2014) (holding that the Turkish Republic of Northern Cyprus "is 'at home' in northern Cyprus, as its name suggests, not in the District of Columbia").

  At the very least, as this Court has acknowledged, *see* Apr. 11, 2014 Hearing Tr. at 63:4-7, whether *Daimler* applies to the PA and the PLO is an issue of first impression, which weighs in favor of a stay. *See Seneca Nation of Indians*, 2010 U.S. Dist. LEXIS 109540, at *10-11 (even though the court found that the movants had "failed to demonstrate a substantial possibility of success on appeal," nonetheless concluding that a stay was appropriate in part because new aspects of the law at issue were "unprecedented").

### III. A STAY PENDING RESOLUTION OF THE MANDAMUS PETITION IS IN THE PUBLIC INTEREST

As the United States recently explained in defending its practice of providing substantial foreign aid to the Palestinian Authority, "U.S. Government support for the Palestinian Authority and Palestinian people is intended to promote the Palestinian Authority's fiscal viability, strengthen public institutions, develop the Authority's capacity to provide security, foster private sector-economic growth, and meet humanitarian needs." Exh. 4 at 4-5; *see also id.* at 18. Such aid is provided to the PA in furtherance of U.S. "foreign policy to achieve a two-state solution as part of a comprehensive regional peace in the Middle East." *Id.* at 4 (internal quotation marks omitted). Because the stability of the PA is essential to important U.S. foreign policy objectives, that stability should not be put at risk without first establishing that the district court is properly exercising general personal jurisdiction. *See Seneca Nation of Indians*, 2010 U.S. Dist. LEXIS 109540, at *11 ("Given the passionate sentiments involved,…granting a stay pending appeal is in the public interest because it will simply preserve the status quo while a higher court considers the merits").

### IV. PLAINTIFFS WILL NOT SUFFER "SUBSTANTIAL INJURY" IF THE STAY IS ISSUED

Balanced against the irreparable injury to Defendants if the Court denies a stay, it is clear that the Plaintiffs will not suffer any substantial injury if the stay is issued. While Plaintiffs might incur fees to alter any travel arrangements made for trial, any such costs would be minimal in comparison to the irreparable injury to the PA and PLO absent a stay.

In granting the mandamus petition and directing the district court to dismiss the defendants in *Abelesz*, 692 F.3d 638, the Seventh Circuit emphasized: "The consequences for the plaintiffs themselves are also very substantial. If the claims against these defendants do not

belong in U.S. courts, no matter how compelling the claims might be on the merits, we would do the plaintiffs no favors by allowing them to spend more time and money to proceed further toward an inevitable dismissal." *Id.* at 651. Here too the Plaintiffs are not well served by litigating a 12-week trial only to have the case dismissed by the Court of Appeals for lack of jurisdiction.

## **CONCLUSION**

The PA and PLO have asked the Second Circuit to consider their petition for a writ of mandamus on an expedited basis. They therefore respectfully request that this Court rule on the instant request for a stay as soon as possible. For all of the reasons set forth above, a stay is warranted.

December 8, 2014

Respectfully Submitted,

/s/ Mark J. Rochon
Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
Dawn E. Murphy-Johnson
Michael J. Satin
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800 [tel]
(202) 626-5801 [fax]
mrochon@milchev.com [email]

*Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*