# EXHIBIT B


PLAINTIFF'S
EXHIBIT
275

**Israel Defense Forces**

Before the Military Court
in Judea
Before a panel

Court Case: *2271*/04
Prosecution Case: 1238/04
Detailed Incident Case: 1271/04 Hebron
9891/04 Jerusalem Special Duties Department
178694/04 Moria

In the trial between

**The Military Prosecutor**

**- The Prosecutor -**

**- v. -**

**Abdul Rahman (Zahir) Yousef Abdul Rahman Maqdad (known as "Abu-Ahmed", "Abu Al-Qassam")**

(detained since March 6, 2004)

Identity No. 410066625, born August 4, 1976, from Bethlehem

**-The Defendant-**

[Stamp] This indictment received ___________
on date: *May 20, 2004*
and entered into the log in case ___________
by the court officer *Irit Goren*

**Indictment**

The above mentioned Defendant is accused hereby of committing the following offenses:

**First count**:

**Nature of the offense:** Shooting at a person or a place in which persons may be, an offense pursuant to Regulation 58 (A) of the Defense Regulations (Time of Emergency), 1945; and Section 14 of the Rules of Liability for an Offense Order (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in July 2001 or thereabouts, was an accomplice in shooting at a person or place in which persons may be, as follows:

[Stamp] P 2: 207

At the above mentioned time, the above mentioned Defendant went out, armed with a Kalashnikov type rifle, towards the settlement of Beit Jala in order to carry out a shooting attack against Israeli civilians at Mount Gilo.

The Defendant reached a point at which a number of operatives joined him in order to shoot toward Mount Gilo.

Using the above mentioned rifle, the Defendant fired five rounds, and the others who were at the site also fired toward Mount Gilo.

C:\Documents and Settings\s6903112\Local Settings\Temporary Internet Files\OLK2\1238-04.doc

[Stamp] P 2: 207 [continued]

**Second count:**

**Nature of the offense:** Possession of war materiel, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, during March 2002 or thereabouts, had in his possession explosives, a bomb and a firearm, without possessing a permit from or on behalf of a military commander.

To wit: At the above mentioned time, the above mentioned Defendant turned to military the operative Ahmed Mujrabi and asked him for explosive devices. Ahmed Mujrabi referred the Defendant to a member of his military cell, Ahmed Salah Ahmed Salah (known as Ahmed Abu-Ghadeb) (hereinafter: "**Ahmed Abu-Ghadeb**") and told him that Ahmed Abu-Ghadeb would provide him with explosives of Um Al Abed type for making explosive devices.

The Defendant met Ahmed Abu-Ghadeb and received from him 4 kilograms of Um Al Abed explosives. The Defendant used some of the quantity that he obtained to make four pipe bombs, and kept the remaining quantity.

During Operation "Defensive Shield", the Defendant hid in the Church of the Nativity in Bethlehem while in possession of the explosive devices.

In addition, during his stay in the said church, the Defendant found a pistol; the Defendant took the pistol and concealed it behind a cupboard in the church – and when he returned to take it [from there] he did not find it there.

**Third count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2003 or thereabouts, was an accomplice in an attempt to cause the intentional death of others, as follows:

1.  At the above mentioned time, the military operative Ahmed Abu-Ghadeb suggested to the Defendant to go out with him to carry out a shooting attack at Israeli vehicles. The Defendant answered positively, and left with Ahmed Abu-Ghadeb and conducted a preliminary visit of the site that Ahmed Abu-Ghadeb had found. The Defendant and Ahmed Abu-Ghadeb arrived at the area of the Talita Kumi School and found that this was a good site for carrying out the attack.

2.  Shortly thereafter, the Defendant asked the military operative Ali Mohamed Hamed Abu-Haliel (hereinafter: "**Ali Abu-Haliel**") to go out and carry out a preliminary visit of the Talita Kumi School area, because a shooting attack in the area had been planned. Ali Abu-Haliel agreed to this and departed at about 2:00 a.m. for the site, to make sure that there were no […]

[Stamp] P 2: 208 [continued]

[…] obstacles on the road. In addition, the Defendant enlisted Izz A-Din Khaled Hussein al-Hamamra (known as Izz A-Din Alian) (hereinafter: "**Izz A-Din Alian**") and the military operative Ismail Abdul Rahman Mohamed Alfarajin (hereinafter: "**Ismail Alfarajin**") to carry out the shooting attack with them.

3. At about 3:00 a.m., Ali Abu-Haliel called the Defendant and updated him of the situation and said that there was no impediment to carrying out the planned attack.

4. Accordingly, the Defendant departed, armed with a Kalashnikov rifle, with Izz A-Din Alian, who was armed with an M-16 rifle; and Ismail Alfarajin, who was armed with an M-16 rifle, towards the area in order to carry out the attack; Ismail Alfarajin transported them in a vehicle that he had brought.

5. When they arrived in the planned area, the Defendant instructed Ali Abu-Haliel to return to his home, and the Defendant and Izz A-Din Alian waited in hiding 20 meters from the road for Israeli vehicles that would pass by. Ismail Alfarajin remained in the vehicle.

6. At about 3:30 a.m., a military jeep passed by; then the Defendant and his accomplice opened fire at the jeep.

7. The jeep continued on its journey; the Defendant and his accomplice fled towards the vehicle in which Ismail Alfarajin was waiting, and together they escaped from the site.

**Fourth count:** **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 2: 209

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of other persons, as follows:

1. In early January 2004 or thereabouts, the Defendant contacted the military operative Ahmed Mujrabi and asked him to introduce military operatives to him, who would help him produce explosives and explosive devices in order to carry out attacks against Israeli targets, and to find suicide terrorists for carrying out suicide attacks. Accordingly, Ahmed Mujrabi contacted the military operative Ali Abu Haliel and asked him to meet a particular person (referring to the Defendant) in order to help him in his military activity. Ali Abu Haliel met the Defendant in accordance with the directions of Ahmed Mujrabi. During the meeting, the Defendant asked him to help him in the making of explosives. He agreed to this.

2.  Shortly thereafter, the military operative Hilmi Abdel Karim Mohamed Hamash (hereinafter: "**Hilmi Hamash**") contacted Ali Ja'ara and offered him a meeting with the military operative to send him to carry out a suicide attack. Ali Ja'ara (hereinafter: the "**Suicide Terrorist**") expressed willingness to do so.

Accordingly, Hilmi Hamash introduced the military operative Ahmed Abu-Ghadeb to the Suicide Terrorist. During the meeting, Ahmed Abu-Ghadeb checked the degree of willingness of the Suicide Terrorist to carry out a suicide attack.

During the meeting, the Suicide Terrorist expressed willingness to carry out the attack. Accordingly, Ahmed Abu-Ghadeb asked the Suicide Terrorist to prepare to carry out the suicide attack.

3.  Shortly thereafter, Ali Abu Haliel contacted the Defendant and updated him that he had succeeded in getting hold of two kilograms of Um Al Abed explosives and a chemical of acetone type. On this occasion, Ali Abu Haliel transferred the Um Al Abed explosive to the Defendant, and the Defendant asked him to transfer the acetone to him and in addition the chemical hydrogen peroxide [both of] which are used for making explosives.

4.  On the following day, the Defendant met Abu Haliel and obtained 36 liters of chemical of acetone and 10 liters of hydrogen peroxide from him; the Defendant told Ali Abu Haliel that he intended to use these materials to produce explosives that would be used by a suicide terrorist in carrying out a suicide attack; on this occasion, Ali Abu Haliel explained to the Defendant how to mix the substances to create the explosives. The Defendant hid the substances in his home.

5.  A few days later, Ahmed Abu-Ghadeb came to the home of the Defendant and told him that he had found a person who was prepared to carry out a suicide attack.

On January 28, 2004, or thereabouts, Ahmed Abu-Ghadeb again approached the Defendant and asked him urgently to prepare an explosive bag using the explosives in his possession, because he intended to send the Suicide Terrorist to carry out the suicide attack.

[Stamp] P 2: 210

At that time, the Defendant asked Ahmed Abu-Ghadeb to buy him materials for making an explosive bag [which included, *inter alia*, a bag, batteries and a switch]. Ahmed Abu-Ghadeb agreed and with Hilmi Hamash, purchased everything requested for the Defendant so that he could make the explosive bag as soon as possible. In addition, Ahmed Abu-Ghadeb and Hilmi Hamash tried to find a video camera to film the Suicide Terrorist before carrying out the attack, but were unable to do so, and therefore they decided to dispatch the Suicide Terrorist to carry out the attack without filming him using a video camera.

6. Shortly thereafter, Ahmed Abu-Ghadeb approached the military operative Mohamed Issa Mohamed Ma'ali (hereinafter: "**Mohamed Ma'ali**") and asked him to transport a suicide terrorist armed with an explosive belt to carry out a suicide attack within the territory of the State of Israel. Mohamed Ma'ali expressed willingness to do so.

Accordingly, Ahmed Abu-Ghadeb had Mohamed Ma'ali meet the Suicide Terrorist.

7. At the time of the foregoing, the Defendant made an additional quantity of Um Al Abed explosives weighing 12 kilograms, and made an explosive bag using it for carrying out a suicide attack.

The Defendant asked Ahmed Abu-Ghadeb to come to take the explosive bag.

8. A few minutes later, Ahmed Abu-Ghadeb arrived, with the Suicide Terrorist and Mohamed Ma'ali, at the home of the Defendant; Mohamed Ma'ali waited outside, while the Suicide Terrorist and Ahmed Abu-Ghadeb entered the Defendant's home. The Defendant explained to Ahmed Abu-Ghadeb and to the Suicide Terrorist how to activate the explosive bag and gave the explosive bag for use in a suicide attack to them, with the aim of causing the deaths of Israeli civilians.

9. Shortly thereafter, Mohamed Ma'ali, the Suicide Terrorist and Ahmed Abu-Ghadeb departed towards the university in Bethlehem; there, Ahmed Abu-Ghadeb deactivated the safety mechanism of the explosive device in order to prepare it for use. After that, Ahmed Abu-Ghadeb left Mohamed Ma'ali with the Suicide Terrorist.

10. Thereafter, at about 6:30 a.m., Mohamed Ma'ali transported the Suicide Terrorist in the direction of Jerusalem through the village of Walaja until they arrived near the Malha Mall in Jerusalem. There, Mohamed Ma'ali parted from the Suicide Terrorist and returned to the Area.

11. Shortly thereafter, the Suicide Terrorist boarded Egged Bus No. 19, which was driving towards Paris Square; when the bus reached the corner of Arlozorov and Aza Streets, at about 8:45 a.m., the Suicide Terrorist activated the explosive bag that was in his possession with the aim of causing the deaths of a large number of individuals. As a result of this, the explosive bag detonated aboard the bus (hereinafter: the "**Suicide Attack**").

12. As a result of the Suicide Attack, the death of **the late Mr. Avraham Balhasan** was caused.

**Fifth count: (Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Hannah Bonder** was caused.

**Sixth count:** **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Anat Darom** was caused.

**Seventh count:** **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Mr. Yehezkel Goldberg** was caused.

**Eighth count:**     **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Vladi Tzadik Manbara** was caused.

[Stamp] P 2: 212 [continued]

**Ninth count:** **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Mr. Viorel Octavian Florescu** was caused.

**Tenth count:** **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Rose Boneh** was caused.

**Eleventh count**: **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Dana Itach** was caused.

[Stamp] P 2: 213 [continued]

**Twelfth count: (Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Mr. Roman Hondiashvili** was caused.

**Thirteenth count: (Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Mr. Eli Zfira** was caused.

**Fourteenth count:**    **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Natalia Gamril** was caused.

[Stamp] P 2: 214 [continued]

**Fifteenth count**: **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in attempting to cause the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – more than 50 civilians were injured from sever to slight degrees of injury; and the Suicide Terrorist died.

**Sixteenth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in February 2004 or thereabouts, was an accomplice in an attempt to cause the intentional deaths of others, as follows:

1. At the above mentioned time, the above mentioned Defendant and the military operative Izz A-Din Alian planned to carry out a shooting attack in the Al Khader area.

   Accordingly, the Defendant and Izz A-Din Alian departed for the Al Khader area to conduct observations at the site. In accordance with the observations, the Defendant and his accomplice decided to carry out the attack that same day, at nighttime.

[Stamp] P 2: 215

2. The Defendant made contact with the military operative Ali Abu-Haliel and asked him to meet him at his home. Ali Abu-Haliel agreed to the request of the Defendant, met him at home and told him about the planned shooting attack.

The Defendant suggested to Ali Abu-Haliel to take part as a spotter during the performance of the attack and to clear the way before executing the attack; Ali Abu-Haliel agreed to the suggestion of the Defendant.

3. Accordingly, the Defendant departed, armed with a Kalashnikov rifle, with Izz A-Din Alian, who was armed with an M-16 rifle and with Ali-Abu-Haliel towards the Al Khader area, in order to carry out the attack.

4. When they arrived in the planned area, they decided to defer the date to carry out the attack in order not to harm the preparations for the Suicide Attack that the cell members had planned.

**Seventeenth count: (Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

1. A few days after the above mentioned date, the above mentioned Defendant and the military operative Izz A-Din Alian planned to carry out a suicide attack with the aim of causing the deaths of Israeli civilians.

   Izz A-Din Alian informed the Defendant that he had found a person by the name of Mohamed Zaoul (hereinafter: the "**Suicide Terrorist**") who was prepared to carry out a suicide attack.

2. On February 17, 2004, or thereabouts, Izz A-Din Alian met the Suicide Terrorist in the village of Hussan; during the meeting, the Suicide Terrorist agreed to carry out the planned suicide attack. At its end, Izz A-Din Alian concluded with the Suicide Terrorist that they would meet him near the Church of the Nativity in Bethlehem on February 21, 2004, at 4:00 p.m.

3. Izz A-Din Alian updated the Defendant regarding the content of the meeting and the consent of the Suicide Terrorist to carry out the suicide attack; accordingly, the Defendant contacted his brother, the military operative Maher Maqdad who lived in Gaza, updated him of the planning to carry out the suicide attack, and asked him for NIS 3,000 in order to prepare the explosive bag for the suicide attack and to purchase a video camera for filming the Suicide Terrorist (in accordance with the request of Maher Maqdad to film the Suicide Terrorist before carrying out the suicide attack).

   Maher Maqdad agreed to the request of the Defendant and transferred the amount of NIS 3,000 to the account in the Arab Bank in Bethlehem, which is registered to the title of the Defendant, for financing the suicide attack, as was agreed with the Defendant.

[Stamp] P 2: 216

4. On February 18, 2004, or thereabouts, the Defendant went to the Arab Bank in Bethlehem and withdrew the amount of money that had been transferred to him from Maher Maqdad.

The Defendant used some of the amount of money to purchase a video camera and an ordinary camera for filming and photographing the Suicide Terrorist. In addition, the Defendant transferred to Ali Abu-Haliel and to Ahmed Abu-Ghadeb an amount of money for them to purchase materials for preparing the explosive bag for the suicide attack.

5. Accordingly, Ali Abu-Haliel received four liters [of hydrogen peroxide] from the military operative Hatam Zakaria Mahmoud Ala'arj (hereinafter: "**Hatam Ala'arj**") [...]

[…] [of hydrogen peroxide] from the military operative Ahmed Ouda, 40 liters of acetone; Ali Abu-Haliel transferred to the Defendant 12 liters of hydrogen peroxide and 12 liters of acetone.

6. On February 20, 2004, the Defendant made the Um Al Abed explosive that was intended for carrying out the suicide attack, with Ali Abu-Haliel and Izz A-Din Alian, in the home of the Defendant. The Defendant explained to Ali Abu-Haliel how to prepare a wooden box for the explosive bag, and he made the box as the Defendant explained to him.

7. Shortly thereafter, the Defendant asked Ahmed Abu-Ghadeb to check with Mohamed Ma'ali whether he was prepared to transport the Suicide Terrorist for executing the suicide attack. Accordingly, Ahmed Abu-Ghadeb met Mohamed Ma'ali and asked him to transport an additional suicide terrorist to carry out a suicide attack within the territory of the State of Israel. Mohamed Ma'ali agreed to this.

That evening, Ahmed Abu-Ghadeb came to the home of the Defendant, with a leaflet called "The Aiman Juda Cell of the Al Aqsa Martyrs Brigades Organization" in his possession; Ahmed Abu-Ghadeb passed the leaflet along to the Defendant, in order to serve as a background picture when filming the Suicide Terrorist – and also updated the Defendant that Mohamed Ma'ali was prepared to transport the Suicide Terrorist.

8. On the following morning, Ahmed Abu-Ghadeb gave iron nails to the Defendant in order for the latter to attach them to the explosive bag, in order to increase and worsen the injuries at the time of the detonation of the explosive device. The Defendant accepted the iron nails and attached them to the explosive bag.

On that same day, at about 4:10 p.m., Izz A-Din Alian came, accompanied by the Suicide Terrorist, to the home of the Defendant in order to prepare him for departing on the attack.

In addition, Ahmed Abu-Ghadeb brought a Kalashnikov rifle and a hand grenade to the Defendant in order for the Defendant to film the Suicide Terrorist holding these weapons.

[Stamp] P 2: 217

9. The Defendant and Izz A-Din Alian gave the Suicide Terrorist food and new clothes. After they had dinner with the Suicide Terrorist, Izz A-Din Alian wrote a will for the Suicide Terrorist; the Defendant and Izz A-Din Alian filmed the Suicide Terrorist reading out his will. When they finished filming the Suicide Terrorist, the Defendant started to make the explosive belt that would be used in the execution of the suicide attack. At about 5:30 a.m. on the following day, the Defendant finished making the explosive belt.

10. When he finished making the explosive belt, as set forth on April 22, 2004, the Defendant called Ahmed Abu-Ghadeb, informed him that everything was ready and asked him to come to take the Suicide Terrorist out to carry out the suicide attack.

[Stamp] P 2: 217 [continued]

Accordingly, Ahmed Abu-Ghadeb contacted Mohamed Ma'ali and asked him to meet him. They both met and together they traveled towards the home of the Defendant, where the Suicide Terrorist was hiding. Ahmed Abu-Ghadeb asked Mohamed Ma'ali to wait near a place in the center of Bethlehem.

11. At about 6:00 a.m., Ahmed Abu-Ghadeb came to the home of the Defendant, took the explosive bag from the Defendant and departed with the Suicide Terrorist toward the center of Bethlehem; there, he had the Suicide Terrorist meet Mohamed Ma'ali. From there, the Suicide Terrorist departed with Mohamed Ma'ali toward Jerusalem, passing through the village of Walaja, in order to carry out the planned suicide attack.

12. At about 6:15 a.m., Ahmed Abu-Ghadeb met the Defendant and updated him that the Suicide Terrorist had gone out with the transporter to carry out the suicide attack. Accordingly, the Defendant updated his brother Maher Maqdad of the departure of the Suicide Terrorist to carry out the suicide attack.

13. Mohamed Ma'ali transported the Suicide Terrorist to a place that was near Malha Mall in Jerusalem; there, he parted from him and returned to the Area.

14. Shortly thereafter, the Suicide Terrorist boarded bus no. 14, which was traveling from the direction of Denia toward Liberty Bell Park, while in possession of the explosive bag. When the bus stopped at one of the traffic lights, the Suicide Terrorist detonated the explosive bag with the intent of causing the deaths of a large number of people. As a result of this, the explosive bag exploded aboard the bus (hereinafter; the "**Suicide Attack**").

15. As a result of the Suicide Attack, the death of **the late Ms. Yaffa Ben-Shimol** was caused.

**Eighteenth count: (Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that Mohamed Zaoul performed with the intent of causing the deaths of Israeli Civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Yuval Ozana** was caused.

[Stamp] P 2: 218 [continued]

**Nineteenth count:** **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that Mohamed Zaoul carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Rahamim Doga** was caused.

**Twentieth count:** **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that Mohamed Zaoul carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Yehuda Haim** was caused.

**Twenty first count: (Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that Mohamed Zaoul performed with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Ilan Avisidris** was caused.

[Stamp] P 2: 219 [continued]

**Twenty second count: (Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that Mohamed Zaoul carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Benia Yonatan Zuckerman** was caused.

**Twenty third count: (Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that Mohamed Zaoul carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Lior Azulai** was caused.

**Twenty fourth count:** **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that Mohamed Zaoul carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Natanel Havshush** was caused.

**Twenty fifth count:** **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in attempting to cause the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Mohamed Zaoul carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – more than 50 civilians were injured from severe to slight degrees of injury; in addition, the Suicide Terrorist died.

**Twenty sixth count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

To wit: At the above mentioned time, the above mentioned Defendant planned with the military operative Ali Abu-Haliel to lay an explosive device in the Beit Jala area and detonate it alongside a military jeep that might pass by. According to the plan, at the time of detonation of the explosive device by the military jeep, the Defendant and his accomplices would open fire at the soldiers in the jeep with the intent of causing their deaths.

The Defendant and his accomplice planned to snatch the bodies of the soldiers at the end of the act and hide them away in order to negotiate with the State of Israel for the release of Palestinian prisoners.

For this task, the Defendant and his accomplice planned to enlist three more military operatives to participate with them in the commission of the shooting at the jeep.

However, after a few days, the Defendant and his accomplice were arrested, and as a result of that, this plan was thwarted.

**Twenty seventh count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

To wit: At the above mentioned time, the above mentioned Defendant planned to hijack an Israeli bus and bring it to the Church of the Nativity in Bethlehem, in order to negotiate the release of prisoners with the State of Israel. In accordance with this plan, which the Defendant had devised: two suicide terrorists armed with explosive belts would board an Israeli bus filled with passengers and order the bus driver to travel to the church in Bethlehem. If the bus driver disobeyed the instructions of the suicide terrorists, they would threaten to detonate the explosive belts.

In accordance with the plan, when the bus would arrive in Bethlehem, all of its passengers would enter the church and the hijackers would start to negotiate the release of Palestinian prisoners in exchange for the release of the passengers of the bus.

The Defendant planned to booby trap the yard of the church, using explosive devices, in order to prevent IDF forces from approaching the church. In addition, the Defendant planned to deploy two suicide terrorists armed with gas cylinders inside the church, who would be prepared to explode inside the church if IDF forces were to enter the church.

The Defendant updated the military operative Izz A-Din regarding the plan, and he expressed willingness to take part in it.

In addition, the Defendant updated the military operative Ali Abu Haliel regarding the plan, and he was enthusiastic about the idea and told him that he knew a person, a resident of the village of Walaja, called Hatam Ala'arj, who had expressed willingness to carry out a suicide attack and that he could add him in to the execution of the attack in accordance with the plan that the Defendant had devised. Ali Abu-Haliel had hydrogen peroxide and acetone in his possession, and the Defendant planned to make, using these substances and other materials, the explosive belts that would be used by the suicide terrorists.

According to the plan that was devised, in order to expedite the negotiations for the release of the prisoners, the Defendant and his accomplice Ali Abu-Haliel planned to plant an explosive device on one of the captives and send him toward IDF forces who would gather at the site, and detonate him on them. At the end of the negotiations, the Defendant and his accomplices planned to demand their passage to Gaza as a condition to the release of the hostages.

On March 5, 2004, the Defendant advised his brother Maher Maqdad of the plan that had been devised; but he was not enthusiastic about the plan and asked the Defendant to continue to carry out suicide attacks.

A few days later, the Defendant was arrested, thus thwarting this plan.

**Twenty eighth count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

To wit: At the above mentioned time, the above mentioned Defendant conspired with his accomplice Ali Abu-Haliel to carry out a double suicide attack, in which one of the suicide terrorists would explode in a crowded place in Israel with the intent of causing the deaths of Israeli civilians, while the other suicide terrorist would wait in a car bomb near a place in which the government would convene to make a decision on response to the attack, so that when one of the ministers would come to the government meeting, the other suicide terrorist would detonate the car bomb with the intent of causing the death of the minister.

However, shortly afterward, the Defendant and his accomplice were arrested, thus thwarting this plan.

**Twenty ninth count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

To wit: At the above mentioned time, the Defendant and his accomplice Ali Abu-Haliel planned to execute a double suicide attack within the territory of the State of Israel; according to the plan, one of the suicide terrorists would board a bus crowded with passengers and detonate himself aboard the bus with the intent of causing the deaths of a large number of passengers, while the other suicide terrorist would wait by the side, wearing the clothes of rescue forces and at the same time having a 25-kg explosive device, and when the rescue forces would approach the site, the suicide terrorist would detonate himself, with the aim of causing the death of as many civilians and possible.

The Defendant and his accomplice planned to equip one of the suicide terrorists with an explosive device weighing 25 kilograms in order to increase the power and size of the explosion.

However, shortly thereafter, the Defendant and his accomplice were arrested, and as a result, this plan was not carried out.

[Stamp] P 2: 223 [continued]

[Signature]
**Naji Amar, Captain**
**Military Prosecutor**

**List of witnesses of the Prosecution:**

1. 100835-8 Master Sergeant Yitzhak Ya'akoboff (took the confessions of the Defendant dated March 7, 2004 and March 9, 2004, seizer of the handwriting of the Defendant dated March 7, 2004).

2. 95311-7 Master Sergeant Moshe Levi (took the confession of the Defendant on March 8, 2004, and made photograph lineup for the Defendant on March 8, 2004).

3. 99106 First Sergeant Yaakov Barazani (took the confession of the Defendant on March 24, 2004 and seizure of the handwriting of the defendant on March 24, 2004).

4. 907377113 Mohamed Issa Mohamed Ma'ali (detained in Prosecution Case 1338/04).

5. 901415984 Hilmi Abed-Al Karim Mohamed Hamash (detained in Prosecution Case 1300/04).

6. 964291868 Ismail Abdul Rahman Mohamed Alfarajin (detained in Prosecution Case [Translator's note: missing number]).

7. 906194063 Izz A-Din Khaled Hussein al-Hamamra (detained in Prosecution Case 1246/04).

8. 920629276 Ali Mohamed Hamed Abu-Haliel (detained in Prosecution Case 1216/04).

9. 901739656 Ahmed Salah Ahmed Salah (detained in Prosecution Case 1247/04).

**Detailed Incident 09891/04 Special Duties Department, Jerusalem:** (suicide attack aboard Bus No. 19)

10. 43438654 Nir Azulai (details held by the Prosecution).

11. 80408453 Adnan Saida (details held by the Prosecution).

12. Risha Kariz (details held by the Prosecution).

13. Svetlana Milniker (details held by the Prosecution).

14. Olana Skripa (details held by the Prosecution).

[Stamp] P 2: 224

15. 055661458 Doria Shalev (details held by the Prosecution).
16. 07788383 Yosef Hadad (details held by the Prosecution).
17. 0300679925 Moshe Benita (details held by the Prosecution).
18. 038583837 Carmel Shrier (details held by the Prosecution).
19. 053927372 Aliza Eliyahu (details held by the Prosecution).
20. 0307353110 Lilia Shriga (details held by the Prosecution).
21. 307207332 Irena Potiomkin (details held by the Prosecution).
22. 058123977 Gad Listenberg (details held by the Prosecution).
23. 002379493 Miriam Deri (details held by the Prosecution).
24. 056521644 Vered Luzon (details held by the Prosecution).
25. 035816180 David Bar Sela (details held by the Prosecution).
26. 034325944 Yael Rubinstein (details held by the Prosecution).
27. 071666614 Naim Barzawi (details held by the Prosecution).
28. 001909134 Sarah Keisar (details held by the Prosecution).

[Stamp] P 2: 224 [continued]

29. 321135394 Lidia Weiner (details held by the Prosecution).
30. 054584362 Bahira Saadu (details held by the Prosecution).
31. License No. 73774 Dr. Kumber (medical documents related to Mr. Naim Barzawi).
32. License No. 24151 Dr. Michlevsky (medical documents related to Ms. Sarah Keisar).
33. License No. 25068 Dr. Yutkin (medical documents related to Ms. Bahira Saadu).
34. Dr. A. Wolf (medical documents related to Ms. Bahira Saadu).
35. Expert opinion of bomb disposal laboratory (to be forwarded later).
36. Medical documents.
37. List of casualties (institutional record).

**(Detailed Incident 17869/04 Moria Station):** (suicide attack aboard bus no. 14)

38. 7449502 Amotz Nili (details held by the Prosecution).
39. 9797523 Avraham David (details held by the Prosecution).
40. 31464167 Binyamin Ben Lulu (details held by the Prosecution).
41. 7633634 Azoulai Shoshana (details held by the Prosecution).
42. 03083175 David Ben Hemo (details held by the Prosecution).
43. 024942724 Yaniv Levi (details held by the Prosecution).
44. 303717631 Boris Piskara (details held by the Prosecution).
45. 0304050040 Victoria Tetrik (details held by the Prosecution).
46. 311825574 Maya Melinitzer (details held by the Prosecution).
47. 003416716 Dov Goldflem (details held by the Prosecution).
48. 040182115 Asaf Cohen (details held by the Prosecution).
49. Dr. A. Deutsch (medical documents).

50. 324605005 Ella Lazarenko (details held by the Prosecution).
51. Dr. Flor (medical documents).
52. 321868663 Natalia Surfin (details held by the Prosecution).
53. Dr. Flor Sharon (medical documents).
54. 065322471 Avraham Pur (details held by the Prosecution).
55. 0801523812 Issa Abid (details held by the Prosecution).
56. 039276126 Eliyahu Mizrachi (details held by the Prosecution).
57. 075775239 Meir Aharon (details held by the Prosecution).
58. 039195862 Efrat Sivan Simon (details held by the Prosecution).
59. 200713410 Gal-Or Shemesh (details held by the Prosecution).
60. 34985 Dr. Hamra Jarbi (medical documents).

61. 009797523 David Avraham (details held by the Prosecution).
62. 21503 Dr. Shalom Friedman (medical documents).
63. 043553338 Liran Ben Siman-Tov (details held by the Prosecution).
64. 22674 Dr. Parson Binyamin (medical documents).
65. 066079948 Yosef Salbosky (details held by the Prosecution).
66. 024947242 Yaniv Levi (details held by the Prosecution).
67. 009797523 David Avraham (details held by the Prosecution).
68. 034441659 Noa Diatlovitzky (details held by the Prosecution).
69. 34911 Dr. Micky Avital (medical documents).
70. 030803175 David Ben Hemo (details held by the Prosecution).
71. 054973698 Shimon Shushan (details held by the Prosecution).
72. 0300302668 May Shirizli (details held by the Prosecution).
73. 35035 Dr. Goldman (medical documents).
74. 025300955 Yehuda Meloul (details held by the Prosecution).
75. 031503105 Oded Havshush (details held by the Prosecution).
76. Medical documents (institutional record).
77. 307048298 Limor Batriev (seizure report).
78. 969480516 Issa Zaoul (genetic specimens).
79. 969480524 Badia Zaoul (genetic specimens).
80. Staff Sergeant Shadi Rabah (memorandum).
81. 4668654 Eli Malka (memorandum).
82. Bomb laboratory expert opinion (to be forwarded later).
83. 73160-4 Chief Inspector Igor Peckerman (seizure and marking report).

84. Prof. Y. Hiss (pathology expert opinion).

85. Dr. V. Keresin.

86. Dr. Kenneth Frank Gerston (pathology expert opinion).

87. Dr. Z. Kahane.

88. Dr. R. Nachman (pathology expert opinion).

89. Dr. K. Zaitzev.

90. Dr. Chen Kugel (expert opinion of the National Institution of Forensic Medicine).

91. Dr. Birtulon Levi (pathology expert opinion).

92. Dr. Kenneth Frank Gerston (pathology expert opinion).

93. Death certificates.

[Stamp] P 2: 226 [continued]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

THE PALESTINE LIBERATION ORGANIZATION, *et al.*,

Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

**DECLARATION OF RINA NE'EMAN**

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 2: 207-226.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as P 2: 207-226.

Dated: March 6, 2014

Rina Ne'eman

ss.: New Jersey

On the 6 day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
6th day of March, 2014

Leonor Troyano
Notary Public

LEONOR TROYANO
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/8/2014

צבא הגנה לישראל

בבית המשפט הצבאי
ב י ה ו ד ה
בפני הרכב

תיק בימ"ש 04/ 3371
תיק תביעה 1238/04
תיק פ.א. 1271/04 חברון
9891/04 מתי"מ י-ם
178694/04 מוריה

כתב אישום זה נתקבל
בתאריך 20/05/04
ונרשם בימן בתיק
ק' ביהמ"ש

במשפט שבין:

התובע הצבאי

- המאשים -

- נ ג ד -

ע"א-רחמאן (זאהר) יוסף ע"א-רחמאן מקדאד (המכונה: "אבו-אחמד"; "אבו אל-קאסם")

(עצור מיום 6/3/04)

ת.ז. 410066625 יליד 4/8/76 מבית-לחם

- הנאשם -

**כתב אישום**

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות:

**פרט ראשון:**

**מהות העבירה:** ירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, עבירה לפי תקנה 58(א) לתקנות ההגנה (שעת חירום), 1945; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במהלך חודש יולי 01' או בסמוך לכך, היה שותף לירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, דהיינו:

במועד הנ"ל, יצא הנאשם הנ"ל כשהוא חמוש ברובה מסוג קלצ'ניקוב לכיוון הישוב בית-ג'אלא ע"מ לבצע פיגוע ירי לעבר אזרחים ישראליים בהר גילה.

הנאשם הגיע לנקודה שבה הצטרפו מספר פעילים ביחד עימו ע"מ לירות לעבר הר גילה.

הנאשם ירה מהרובה האמור חמישה כדורים, והאחרים שהיו במקום ירו גם הם לעבר הר גילה.

<u>פרט שני</u>:

**<u>מהות העבירה</u>**: החזקת אמל״ח, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל – 1970.

**<u>פרטי העבירה</u>**: הנאשם הנ״ל, באזור, במהלך חודש מרץ 02׳ או בסמוך לכך, החזיק ברשותו חומר נפיץ, פצצה וכלי יריה מבלי שהיה ברשותו היתר ממפקד צבאי או מטעמו.

דהיינו, במועד הנ״ל, פנה הנאשם הנ״ל אל הפעיל הצבאי אחמד מוג׳רבי וביקש ממנו מטעני חבלה. אחמד מוג׳רבי היפנה את הנאשם אל חבר חוליתו הצבאית אחמד צלאח אחמד צלאח (המכונה: אחמד אבו-עידב) (להלן – **אחמד אבו-עידב**) ואמר לו כי אחמד אבו-עידב ימסור לו חומר נפץ מסוג ״אום-אלעבד״ לייצור מטעני החבלה.

הנאשם נפגש עם אחמד אבו-עידב וקיבל ממנו 4 ק״ג חומר נפץ מסוג ״אום-אלעבד״. הנאשם ייצר באמצעות חלק מהכמות שקיבל 4 מטעני צינור, ואת יתר הכמות שמר.

במהלך מבצע ״חומת מגן״ הסתתר הנאשם בכנסיית המולד בבית-לחם כשברשותו המטענים.

בנוסף, במהלך שהייתו בכנסייה האמורה מצא הנאשם אקדח; הנאשם לקח את האקדח והסתיר אותו מאחורי ארון בכנסייה – וכשחזר לקחת אותו לא מצא אותו במקום.

<u>פרט שלישי</u>:

**<u>מהות העבירה</u>**: ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל – 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח- 1968.

**<u>פרטי העבירה</u>**: הנאשם הנ״ל, באזור, בסוף שנת 03׳ או בסמוך לכך, היה שותף לניסיון גרימת מותם של אחרים בכוונה, דהיינו:

1. במועד הנ״ל, הציע הפעיל הצבאי אחמד אבו-עידב לנאשם הנ״ל לצאת עימו לבצע פיגוע ירי לעבר כלי רכב ישראליים. הנאשם נענה בחיוב, ויצא יחד עם אחמד אבו-עידב וערך סיור מקדים במקום שאותו איתר אחמד אבו-עידב. הנאשם ואחמד אבו-עידב הגיעו לאיזור בית-הספר ״תליתא קומי״ ומצאו כי מקום זה טוב לביצוע הפיגוע.

2. בסמוך לכך, ביקש הנאשם מהפעיל הצבאי עלי מחמד חמאד אבו-הלאיל (להלן – **עלי אבו-הלאיל**) לצאת ולבצע סיור מקדים באיזור בית-הספר ״תליתא קומי״ וזאת מכיוון שמתוכנן פיגוע ירי באזור. עלי אבו-הלאיל נענה בחיוב, ויצא בסמוך לשעה 2:00 למקום וזאת כדי לוודא שאין

מכשולים בדרך. בנוסף גייס הנאשם את עז-אלדין ח'אלד חסין חמאמרה (המכונה עז-אלדין עליאן) (להלן – **עז-אלדין עליאן**) והפעיל הצבאי אסמאעיל ע"א-רחמאן מחמד אלפראג'ין (להלן – **אסמאעיל אלפראג'ין**) לביצוע יחד עימם את פיגוע הירי.

3. בסמוך לשעה 3:00, התקשר עלי אבו-הלאיל לנאשם ועידכן אותו בדבר המצב ואמר לו כי אין מניעה לבצע את הפיגוע המתוכנן.

4. בהתאם לכך, יצא הנאשם כשהוא חמוש ברובה קלצ'ניקוב יחד עם עז-אלדין עליאן שהיה חמוש ברובה M-16 ואסמאעיל אלפראג'ין כשהוא חמוש ברובה M – 16 לכיוון האיזור ע"מ לבצע את הפיגוע; אסמאעיל אלפראג'ין הסיע אותם ברכב שהביא.

5. כשהגיעו לאיזור המתוכנן, הורה הנאשם לעלי אבו-הלאיל לחזור לביתו, והנאשם ועז-אלדין עליאן ארבו בסמוך למקום במרחק 20 מטר מהכביש לכלי רכב ישראליים שיעברו במקום. אסמאעיל אלפראג'ין נותר ברכב.

6. בסמוך לשעה 3:30, עבר במקום ג'יפ צבאי; או-אז פתחו הנאשם וחברו באש לעבר הג'יפ.

7. הג'יפ המשיך בנסיעה, הנאשם וחברו נמלטו לכיוון הרכב בו המתין להם אסמאעיל אלפראג'ין, וביחד נמלטו מהמקום.

<u>**פרט רביעי**</u>: <u>**(פ"א 09891/04 מת"מ ירושלים)**</u>

<u>**מהות העבירה**</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. בתחילת חודש ינואר 04' או בסמוך לכך, יצר הנאשם קשר עם הפעיל הצבאי אחמד מוג'רבי וביקש ממנו כי יכיר לו פעילים צבאיים שיעזרו לו בייצור חומרי נפץ ומטעני חבלה וזאת ע"מ לבצע פיגועים נגד מטרות ישראליות, וכן איתור מתאבדים לצורך ביצוע פיגועי התאבדות. בהתאם לכך, יצר אחמד מוג'רבי קשר עם הפעיל הצבאי עלי אבו-הלאיל וביקש ממנו כי ייפגש עם פלוני (בכוונו לנאשם) ע"מ לעזור לו בפעילותו הצבאית. עלי אבו-הלאיל נפגש עם הנאשם בהתאם להנחיותיו של אחמד מוג'רבי, בפגישה ביקש ממנו הנאשם כי יעזור לו בייצור חומרי נפץ. הלה הסכים לכך.

2. בסמוך לכך פנה הפעיל הצבאי חלמי ע"א-כרים מחמד המאש (להלן – **חלמי המאש**) אל עלי ג'עארה והציע לו להפגישו עם פעיל צבאי שישלח אותו לביצוע פיגוע התאבדות. עלי ג'עארה (להלן – **המתאבד**) הביע נכונות לכך.

בהתאם לכך, הפגיש חלמי המאש את הפעיל הצבאי אחמד אבו-ע'דב עם המתאבד בפגישה שבמהלכה בירר אחמד אבו-ע'דב עם המתאבד את מידת נכונותו לבצע פיגוע התאבדות.

במהלך הפגישה הביע המתאבד נכונות לבצע את הפיגוע. בהתאם ביקש אחמד אבו-ע'דב מהמתאבד להתכונן לביצוע פיגוע ההתאבדות.

3. בסמוך לכך, פנה עלי אבו-הלאיל לנאשם ועידכן אותו כי הצליח להשיג שני ק"ג חומר נפץ מסוג אום-אלעבד וכן חומר כימי מסוג אצטון. בהזדמנות זו העביר עלי אבו-הלאיל לנאשם את חומר הנפץ מסוג אום-אלעבד, והנאשם ביקש ממנו כי יעביר אליו את האצטון ובנוסף חומר כימי מסוג מי-חמצן המשמשים לייצור חומר נפץ.

4. ביום שלמחרת, נפגש הנאשם עם עלי אבו-הלאיל וקיבל ממנו 36 ליטר של אצטון וכן 10 ליטר של מי-חמצן; הנאשם סיפר לעלי אבו-הלאיל כי בכוונתו להשתמש בחומרים אלה ע"מ לייצר חומר נפץ שישמש מתאבד בביצוע פיגוע התאבדות; בהזדמנות זו הסביר עלי אבו-הלאיל לנאשם כיצד יש לערבב את החומרים כדי ליצור את חומר הנפץ. הנאשם הסתיר את החומרים בביתו.

5. כעבור מספר ימים הגיע לביתו של הנאשם אחמד אבו-ע'דב וסיפר לו כי איתר אדם המוכן לבצע פיגוע התאבדות.

ביום 28/1/04 או בסמוך לכך, פנה שוב אחמד אבו-ע'דב לנאשם, וביקש ממנו כי יכין בדחיפות תיק נפץ באמצעות חומר הנפץ שברשותו וזאת מאחר ובכוונתו לשלוח את המתאבד לפיגוע ההתאבדות.

או-אז, ביקש הנאשם מאחמד אבו-ע'דב כי יקנה עבורו חומרים לייצור תיק הנפץ [שכללו בין היתר: תיק, סוללות, מפסק וכו'...]. אחמד אבו-ע'דב נענה בחיוב וקנה ביחד עם חלמי המאש עבור הנאשם את כל שנתבקש וזאת כדי שיוכל להכין את תיק הנפץ בהקדם האפשרי. בנוסף, ניסו אחמד אבו-ע'דב וחלמי המאש למצוא מצלמת וידאו ע"מ לצלם את המתאבד בטרם ביצוע הפיגוע, אולם לא הצליחו בכך – ולפיכך החליטו להוציא את המתאבד לביצוע הפיגוע מבלי לצלמו במצלמת וידאו.

6. בסמוך לכך, פנה אחמד אבו-ע'דב אל הפעיל הצבאי מוחמד עיסא מחמד מעאלי (להלן – **מוחמד מעאלי**) וביקש ממנו להוביל מתאבד החמוש בחגורת נפץ לביצוע פיגוע התאבדות בתוך שטח מדינת ישראל. מוחמד מעאלי הביע נכונות לכך.

בהתאם לכך, הפגיש אחמד אבו-עיׄדב את מוחמד מעאלי עם המתאבד.

7. במקביל לאמור לעיל, ייצר הנאשם כמות נוספת של חומר הנפץ ״אום אלעבד״ במשקל 12 ק״ג, וייצר באמצעותו תיק נפץ לביצוע פיגוע התאבדות.

הנאשם ביקש מאחמד אבו-עיׄדב לבוא ע״מ לקחת את תיק הנפץ.

8. כעבור מספר דקות הגיע אחמד אבו-עיׄדב יחד עם המתאבד ומוחמד מעאלי לביתו של הנאשם; מוחמד מעאלי המתין בחוץ ואילו המתאבד ואחמד אבו-עיׄדב נכנסו לביתו של הנאשם. הנאשם הסביר לאחמד אבו-עיׄדב ולמתאבד כיצד להפעיל את תיק הנפץ והעביר להם את תיק הנפץ ע״מ שזה ישמש בפיגוע התאבדות וזאת בכוונה לגרום למותם של אזרחים ישראליים.

9. בסמוך לכך, יצאו מוחמד מעאלי, המתאבד ואחמד אבו-עיׄדב לכיוון האוניברסיטה בבית-לחם; שם נטרל אחמד אבו-עיׄדב את מנגנון האבטחה של מטען החבלה ע״מ להכין אותו לפעולה. לאחר-מכן עזב אחמד אבו-עיׄדב את מוחמד מעאלי עם המתאבד.

10. לאחר-מכן בסמוך לשעה 6:30, הוביל מוחמד מעאלי את המתאבד לכיוון ירושלים דרך כפר וולג׳ה עד שהגיעו סמוך לקניון מלחה בירושלים. שם נפרד מוחמד מעאלי מהמתאבד וחזר לאיזור.

11. בסמוך לכך, עלה המתאבד לאוטובוס אגד בקו 19 שנסע לכיוון כיכר פריז; כשהגיע האוטובוס לפינת רחובות ארלוזורוב ועזה, סמוך לשעה 8:45, הפעיל המתאבד את תיק הנפץ שהחזיק עליו בכוונה לגרום למותם של מספר רב של בני אדם. כתוצאה מכך, התפוצץ תיק הנפץ בתוך האוטובוס (להלן – **פיגוע ההתאבדות**).

12. כתוצאה מפיגוע ההתאבדות נגרם מותו של **<u>אברהם בלחסן ז״ל</u>**.

**<u>פרט חמישי</u>**: **<u>(פ״א 09891/04 מת״מ ירושלים)</u>**

**<u>מהות העבירה</u>**: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968.

**<u>פרטי העבירה</u>**: הנאשם הנ״ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג׳עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של **<u>גב׳ חנה בונדר ז״ל</u>**.