REDACTED – PUBLICLY FILED VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )    Civil Action No. 04cv397 (GBD) (RLE)<br>) |
| THE PALESTINE LIBERATION ORGANIZATION, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT IN LIGHT OF
COURT'S EVIDENTIARY RULINGS

Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
Dawn E. Murphy-Johnson
Michael J. Satin
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington D.C. 20005-6701
(202) 626-5800 (tel)
(202) 626-5801(fax)

*Counsel for Defendants the Palestinian Authority
and the Palestine Liberation Organization*

December 29, 2014

**REDACTED – PUBLICLY FILED VERSION**

## INTRODUCTION

In denying Defendants' motion for summary judgment on Plaintiffs' Anti-Terrorism Act (ATA) claims, the Court "assume[d] the admissibility of Plaintiffs' evidence." DE 646 at 3, n.3; *see id.* at 5 ("While courts do assess the admissibility of evidence to determine if a party is entitled to summary judgment, at this stage, this Court limits its analysis to whether the probative force of Plaintiffs' proffered proof is such that there is a genuine need for trial.") (internal citations omitted); *id.* at 11 ("*If this evidence is deemed admissible*, all of the Plaintiffs, except the Mandelkorn Plaintiffs, have demonstrated that a reasonable jury could find the PA vicariously liable under Plaintiffs' ATA claims.") (emphasis added); *id.* at 20 ("Therefore, *assuming this evidence is admissible*, Plaintiffs may proceed on these claims.") (emphasis added).

Since then, the Court has excluded entire categories of evidence. "Statements of unavailable witnesses inculpating third parties may not be admissible at this trial as statements against interest under Federal Rule of Evidence 804(b)(3)." DE 671. "The names of accomplices and witnesses must be redacted from all guilty plea documents" and "all trial documents"; "[s]entencing records are not admissible at this trial as part of the judgment of conviction"; and only those guilty pleas and trial verdicts "involving the attacks at issue in this case" may be admitted. DE 672. Certain exhibits produced by Defendants, including the "martyr" file of Wafa Idris (PTE 17), need to be redacted. *See* DE 675 at 2. Plaintiffs' experts may not testify to questions of fact. *See* December 16, 2014 Tr. at 211:5-6 (stating that Matthew Levitt "can't testify to a fact" and that "[w]hether the PA funded the AAMB is a fact"); *see also id.* at 204:14-16 (stating that it would be "improper" for Israel Shrenzel to base his testimony "on something that is not before the jury"). And political rhetoric "has absolutely no probative value

with regard to the issues that the jury has to decide here and is not likely [to be admitted]." *Id.* at 62:9-14.

The upshot of the Court's evidentiary rulings is that there is no longer a triable issue of fact with respect to the claims related to the July 31, 2002 attack, the January 27, 2002 attack, or the June 19, 2002 attack. There is also no longer a triable issue of fact with respect to all of the claims against the PLO. Accordingly, the Court must dismiss those claims. *See* Fed. R. Civ. P. 56(a) ("The court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law.") (emphasis added).

## ARGUMENT

### I. THE JULY 31, 2002 ATTACK: THE COULTER, CARTER, BLUTSTEIN, AND GRITZ PLAINTIFFS

In contrast to the other six attacks at issue in this case, Plaintiffs do not allege that the July 31, 2002 attack was perpetrated by a PA employee. *See* Plaintiffs' Rule 56.1 Response at 1-3; 27-65. It is undisputed that this attack was perpetrated by Hamas operatives. *See* DE 646 at 13 ("On July 31, 2002, Hamas operatives detonated a bomb at Hebrew University . . ."); DE 500-25 at 5 ("There is no disputing the fact that Hamas was the party that initiated, planned and executed the bombing attack in the cafeteria."). Plaintiffs' theories of liability are premised on the admission of evidence that PA employees provided Abdullah Barghouti, the Hamas bomb-maker who allegedly manufactured the bomb used in this attack, with bomb-making materials, weapons, and lodging in the months prior to the attack. *See* DE 646 at 11-12; 17. Specifically, Plaintiffs have proffered the following evidence, which the Court assumed to be admissible for purposes of its summary judgment ruling:

> PA authorities seized from Abdullah Barghouti's laboratory prepared devices but did not seize other bomb-making materials found in his possession; during his detention, a PA preventive Security Officer gave Abdullah Barghouti a mobile phone; after less than three weeks in custody, Abdullah Barghouti was released to the custody of Marwan Barghouti who, along with PA employee Ahmed Barghouti, provided Abdullah Barghouti with a safe house, materials for bombmaking, and weapons; Ahmed Barghouti was convicted of sheltering and aiding Abdullah Barghouti by providing him with a safe house and weapons; Marwan Barghouti also provided Abdullah Barghouti with financial assistance.

*Id.* at 13-14 (internal citations omitted); *see also id.* at 17 ("Plaintiffs allege that Defendants violated the ATA . . . by providing material support in the form of money, a phone, weapons, bomb-making supplies, and a safehouse to Abdullah Barghouti who was a Hamas operative and known terrorist."). This evidence comes from the alleged custodial statements of Abdullah Barghouti[1] and the indictments of Abdullah Barghouti and Ahmed Barghouti. The portions of these statements and indictments that purportedly support the Plaintiffs' case are now excluded from trial. Thus, the Plaintiffs case rests on inadmissible evidence. Therefore, the Court must grant summary judgment.

   A.  <u>The PA's Alleged Failure to Seize Bomb-Making Materials</u>

Evidence that the PA failed to seize bomb-making materials comes from Abdullah Barghouti's March 12, 2003 custodial statement. *See* PTE 427 at 7:126-27. In that custodial statement, Abdullah Barghouti allegedly said that Preventive Security officials searched his storeroom while he was in jail and "[t]he gallon with 20 liters of H2O2, they left in the storeroom." *Id.* at 7:127. The Preventive Security Officials' supposed failure to seize the H2O2 is not self-inculpatory as to Abdullah Barghouti. Even if it were, it clearly inculpates the

---

[1] Plaintiffs have not shown, nor can they, that the words attributed to Abdullah Barghouti in his alleged custodial statements (PTE 427-430, 432, 1111) were, in fact, made by Abdullah Barghouti. Thus, the statements are inadmissible regardless of whether their contents fall within any hearsay exception, which, as discussed in detail below, they do not.

Preventive Security officials by suggesting that they aided his manufacturing of bombs by leaving behind the H2O2. Indeed, this is precisely why Plaintiffs want to admit this evidence. *See, e.g.,* DE 500-25 at 10 ("In my expert opinion, the decision by Palestinian security forces . . . not to confiscate his preparation materials (including chemicals used to make explosives) . . . was intended to send Abdullah Barghouti a clear message: he could continue to carry out terrorist attacks with impunity."). The Court's ruling that "[s]tatements of unavailable witnesses inculpating third parties" are not admissible therefore forecloses the admission of this statement. *See* DE 671. Moreover, Abdullah Barghouti's statement is not based on personal knowledge. He was in jail when Preventive Security officials supposedly searched the storeroom and left behind the H2O2, which means either that he is speculating that they did not seize the H2O2 or he is relying on information communicated to him by someone else. Either way, the statement is not based on his personal knowledge and is therefore inadmissible.

B. <u>The PA Preventive Security Officer's Provision of a Mobile Phone to Abdullah Barghouti</u>

Evidence that a PA Preventive Security Officer gave Abdullah Barghouti a mobile phone comes from a subsequent Abdullah Barghouti custodial statement, this one from May 15, 2003. *See* PTE 1111 at 7:496. In that custodial statement, Abdullah Barghouti allegedly said that "an officer of the Preventive Security called Abu Ali Tarifi gave me a new mobile phone . . ." *Id.* Abdullah Barghouti's receipt of a mobile phone is not self-inculpatory as to Abdullah Barghouti. Even if it were, the part of the statement that implicates Abu Ali Tarifi, the Preventive Security officer, in the provision of the mobile phone is not admissible. *See* DE 671. In any event, Abdullah Barghouti's receipt of a mobile phone was not a proximate cause of the July 31, 2002 attack.

C. Abdullah Barghouti's Release from Jail

Evidence that the PA supposedly released Abdullah Barghouti from jail after three weeks in custody comes from Abdullah Barghouti's March 12, 2003 custodial statement. *See* PTE 427 at 7:127. In that custodial statement, Abdullah Barghouti allegedly said that Jibril Rajoub, a PA official, released him from jail. *Id.* at 7:127. This statement is not self-inculpatory. If anything, it inculpates Jibril Rajoub. At the December 16, 2014 hearing, Plaintiffs' counsel specifically raised the admissibility of this statement and the Court ruled "That's not admissible or relevant for any purpose." December 16, 2014 Hearing Tr. at 47:2-3.

D. Marwan Barghouti's and Ahmed Barghouti's Provision of a Safe House, Materials for Bomb Making, and Weapons to Abdullah Barghouti and Ahmed Barghouti's Conviction for Sheltering and Aiding Abdullah Barghouti

As an initial matter, Plaintiffs do not contend that *Marwan* Barghouti is a PA employee, and this Court has already determined that Marwan Barghouti's alleged position as Fatah Secretary General "is not sufficient evidence for a reasonable jury to conclude that . . . the PLO is liable for his actions." DE 646 at 15, n.12. Thus, even if the Plaintiffs had admissible evidence that Marwan Barghouti provided a safe house, materials for bomb making, and weapons to Abdullah Barghouti – which they do not[2] – such evidence would not create liability for the PA or the PLO.

Evidence that *Ahmed* Barghouti supposedly provided a safe house, materials for bomb making, and weapons to Abdullah Barghouti comes from three documents: (1) the March 12, 2003 custodial statement of Abdullah Barghouti (PTE 427), (2) the indictment of Abdullah Barghouti (PTE 452), and (3) the indictment of Ahmed Barghouti (PTE 357). None of these

---

[2] At the December 16, 2014 hearing, Plaintiffs' counsel specifically asked the Court to admit the custodial statements of Abdullah Barghouti that implicate Marwan Barghouti in the provision of a safe house, materials for bomb making, and weapons, and the Court ruled that the evidence implicating Marwan Barghouti was not admissible. *See* December 16, 2014 Hearing Tr. at 47:5-48:2.

documents contains admissible evidence that Ahmed Barghouti provided a safe house, bomb making materials, or weapons to Abdullah Barghouti.

In Abdullah Barghouti's March 12, 2003 custodial statement, he allegedly said "I bought from Ahmed [Barghouti] a Kalashnikov and a Belgian 14 pistol."  PTE 427 at 7:128.  This statement clearly implicates Ahmed Barghouti in the sale of weapons and is therefore inadmissible pursuant to the Court's ruling that "[s]tatements of unavailable witnesses inculpating third parties" are not admissible.  DE 671.

Abdullah Barghouti's indictment states: "The Defendant contacted Ahmed [Barghouti] . . . and asked to purchase an Uzi submachine gun from him.  Ahmed Barghouti had the Defendant meet Mahnad Abu Halawa . . . and the Defendant purchased an Uzi submachine gun from the latter." PTE 452 at 7:39.  Ahmed Barghouti's name (as well as that of Mahnad Abu Halawa) must be redacted from this exhibit pursuant to the Court's ruling that "[t]he names of accomplices and witnesses must be redacted from all guilty plea documents."  DE 672.  Thus, the jury will not learn from Abdullah Barghouti's indictment that Ahmed Barghouti sold Abdullah Barghouti a weapon.

Ahmed Barghouti's indictment states: "The Defendant and Marwan Barghouti provided lodging to Bilal Barghouti and Abdullah in the above mentioned apartment for several days.  Before Bilal Barghouti and Abdullah left the above mentioned apartment of the Defendant, the Defendant provided each of them a '14' pistol." PTE 357 at 5:202.  Here, the name of Abdullah Barghouti (as well as that of Marwan Barghouti and Bilal Barghouti) must be redacted.  *See* DE 672.  Thus, the jury will not learn from Ahmed Barghouti's indictment that Abdullah Barghouti received lodging or a weapon from Ahmed Barghouti.[3]

---

[3] The counts in the indictments of Abdullah Barghouti and Ahmed Barghouti that implicate Ahmed Barghouti in the provision of lodging, bomb-making materials, and weapons – counts 30-31 of the

E. Marwan Barghouti's Provision of Financial Assistance to Abdullah Barghouti

As discussed above, Marwan Barghouti's provision of assistance to Abdullah Barghouti does not create liability for the PA or the PLO.  In any event, Abdullah Barghouti's alleged custodial statement that "Marwan Barghouti gave me 500 dollars" (PTE 428 at 7:144) is not a statement against Abdullah Barghouti's penal interest, and if it were, its implication of Marwan Barghouti would not be admissible.  *See* DE 671.

\*\*\*

Plaintiffs' respondeat superior and direct support theories of liability are premised on the admission of evidence from Abdullah Barghouti's custodial statements and the indictments of Abdullah Barghouti and Ahmed Barghouti that implicate PA officials.  None of that evidence is admissible pursuant to the Court's December 18, 2014 evidentiary rulings.  *See* DE 671 and 672.  And to the extent any of it is admissible, the only evidence that *might* be considered a proximate cause of the July 31, 2002 bombing – Abdullah Barghouti's alleged release from jail and the alleged provision of bomb-making materials to him months before the bombing – is certainly not admissible.  *See id.*  Thus, the Court must grant summary judgment as to the July 31, 2002 attack.

## II. THE JANUARY 27, 2002 ATTACK: THE SOKOLOW PLAINTIFFS

A. Respondeat Superior

Plaintiffs concede, as they must, that their respondeat superior theory of liability requires admissible evidence that a PA employee was involved in the attack.  *See* DE 545 at 18 ("Each of

---

Abdullah Barghouti indictment and count 51 of the Ahmed Barghouti indictment – should also be excluded because they do not "involv[e] the attacks at issue in this case."  DE 672 (ruling that indictments are admissible only "[w]ith regard to guilty pleas involving the attacks at issue in this case").  Only counts 87-97 of the Abdullah Barghouti indictment and counts 26-29 of the Ahmed Barghouti indictment involve an attack at issue in this case.

the attacks involved at least one PA 'security' employee."). The Court's denial of summary judgment with respect to January 27, 2002 attack was premised on the admission of evidence that Abu Talal, a Lieutenant in the PA's Military Intelligence Unit, was involved in the attack. *See* DE 646 at 12.  Indeed, Abu Talal is the only PA employee that Plaintiffs allege was involved in this attack. *See* DE 545 at 8.

To support their claim that Abu Talal was involved in this attack, Plaintiffs have proffered the alleged custodial statements of Munzar Noor[4] (PTE 467, 465) and the verdict of Munzar Noor (PTE 322).  *See* Plaintiffs' Rule 56.1 Response at 38.  None of these documents contains admissible evidence that Abu Talal was involved in the attack.  In his April 25, 2002 custodial statement, Munzar Noor allegedly said that a man named Mohamed Muhsatib, whom he later identifies as Abu Talal, convinced Wafa Idris to do the attack, gave her the explosive device, and instructed her to lay the explosive device and flee from the site.  *See* PTE 467.  In his May 13, 2002 custodial statement, Munzar Noor allegedly said that Abu Talal recruited Wafa Idris to do the attack, talked to her about the attack, and explained to her how to activate the explosive device.  *See* PTE 465.  These statements are inadmissible because they clearly implicate Abu Talal in the attack and this Court has ruled that "[s]tatements of unavailable witnesses inculpating third parties" are not admissible.  DE 671.

Munzar Noor's verdict in the Israeli military court also fails to provide admissible evidence of Abu Talal's involvement in the attack.  Although the verdict mentions Abu Talal's name in two places (*see* PTE 322 at 4, 6), his name must be redacted pursuant to the Court's order that "[t]he names of accomplices and witnesses must be redacted from all trial documents."

---

[4]. Plaintiffs have not shown that the words attributed to Munzar Noor in his alleged custodial statements (PTE 467, 465) were, in fact, made by Munzar Noor. Thus, the statements are inadmissible regardless of whether their contents fall within any hearsay exception, which, as discussed in detail below, they do not.

9

DE 672.  Thus, the verdict does not provide admissible evidence of Abu Talal's involvement in the attack.

To be sure, the Court also relied on post-attack evidence in denying Defendants' motion for summary judgment.  Specifically, the Court noted that "numerous senior PA General Intelligence Service ("GIS") employees were aware that Idris was the suicide bomber before the medics or press identified her; Idris was subsequently given martyr status and her family was given monthly payments; Noor's family received monthly payments while he was serving his prison sentence in Israeli prison for his conviction; [and] Talal was promoted to the rank of major after the attack in 2008." DE 646 at 12 (internal citations omitted).  But none of this evidence establishes the involvement of Abu Talal (or any PA employee) in the attack itself.  Because the involvement of Abu Talal in the attack is a predicate for Plaintiffs' respondeat superior theory of liability, the Court must grant summary judgment as to that theory.

B.  <u>Direct Liability</u>

Plaintiffs also lack admissible evidence that the PA or the PLO is liable under a theory of direct support.  Plaintiffs' direct support theory is premised on the admission of evidence that the AAMB perpetrated this attack.  That is because Plaintiffs have no evidence that the PA or the PLO provided weapons, money, or lodging to the alleged perpetrators of this attack, Wafa Idris or Munzar Noor, before the attack occurred.  *See* Plaintiffs' Rule 56.1 Response at 37-40.  Indeed, the Court relied on support to the AAMB as opposed to support to Wafa Idris or Munzar Noor in denying Defendants' motion for summary judgment.  *See* DE 646 at 17-20.[5]

In light of the Court's recent evidentiary rulings, Plaintiffs have no admissible evidence that the AAMB perpetrated the January 27, 2002 attack.  In their Rule 56.1 Response, Plaintiffs

---

[5] Plaintiffs cannot rely on support to Abu Talal because, as discussed above, there is no admissible evidence of Abu Talal's involvement in the attack.

10

cite two documents in support of their claim that the AAMB perpetrated this attack: (1) the Wafa Idris "martyr" file (PTE 17) and (2) the expert report of Israel Shrenzel. *See* Plaintiffs' Rule 56.1 Response at 38, ¶160.  The Wafa Idris martyr file includes the statement: ███████████ ██████████████████████████████████████████ PTE 17 at 6762.  But this statement is not admissible.  *See* DE 675 at 2; *see also* December 16, 2014 Hearing Tr. at 91:12-15 ("All the objected-to statements with regard to Exhibit 17 should be redacted, other than the sentence that begins with, ███████████ and ends with ███████████"); *id.* at 98:8-99:17 (specifically denying Plaintiffs' request to admit the statement that ███████████ ███████████").  Israel Shrenzel's report merely cites the statement in Wafa Idris's martyr file that the Court has now excluded.  *See* DE 500-26 at 41, n.169.  "[A]n expert cannot simply serve as a conduit through which a party can transmit inadmissible evidence to the jury." *Master-Halco, Inc. v. Scillia, Dowling & Natarelli LLC*, No. 09cv1546, 2010 U.S. Dist. LEXIS 38113, at *9-10 (D. Conn. Apr. 19, 2010); *see also Estate of Parsons v. Palestinian Authority*, 715 F. Supp. 2d 27, 33 (D.D.C. 2010) (stating that an expert opinion "may not be a conduit for the introduction of factual assertions that are not based on personal knowledge").  Thus, Shrenzel may not testify that the AAMB took credit for the January 27, 2002 attack.[6]

      Moreover, even if the Court were to reverse itself and admit the now-excluded statement from the Wafa Idris martyr file, Plaintiffs would still lack evidence that the attack was perpetrated by the AAMB.  The statement in the martyr file merely states that "███████████ ███████████."  PTE 17 at 6762 (emphasis added).  The fact that the AAMB supposedly took credit for this attack does not prove that the AAMB actually perpetrated the

---

[6] Plaintiffs' remaining evidence indicating that the attack was perpetrated by the AAMB are obviously inadmissible hearsay statements in newspaper articles.  *See, e.g.,* PTE 491 (New York Times article); PTE 690 (Al-Ayyam article).

11

attack because, as Judge Weinstein correctly noted in *Gill v. Arab Bank*, 893 F. Supp. 2d 542 (E.D.N.Y. 2012), "[t]he motivation of self-interest in a claim of 'credit' for a terrorist attack on a civilian undermines trustworthiness. . . Taking 'credit' for such an attack is deemed a benefit, not a detriment, and is not reliable under the circumstances." *Id.* at 569.  Importantly, Plaintiffs have no admissible evidence that either Wafa Idris or Munzar Noor was a member of the AAMB.

Assuming *arguendo* that the Court finds that that the January 27, 2002 attack was perpetrated by the AAMB, Plaintiffs would still be unable to show that the Sokolows' injuries were proximately caused by the PA's or the PLO's supposed provision of support to the AAMB. *See* DE 646 at 8 ("This Court 'rejects the contention that any reckless contribution to a terrorist group or its affiliate, no matter how attenuated, will result in civil liability, without the demonstration of a proximate causal relationship to the plaintiffs' injury.'") (quoting *Gill*, 891 F. Supp. 2d at 382).  Not a single exhibit proffered by Plaintiffs indicates a connection – direct or otherwise – between the provision of support to the AAMB and this particular attack.

Moreover, Plaintiffs cannot prove that the PA or the PLO committed a predicate criminal act.  Plaintiffs cannot proceed under 18 U.S.C. § 2339B, which proscribes "providing material support or resources to designated foreign terrorist organizations," because the attack occurred on January 27, 2002, and this Court has ruled that "[a] reasonable jury could conclude that support in the form of weapons provided to the AAMB violated Section 2339B at the earliest on March 27, 2002, at which time the AAMB was designated as an FTO."  DE 646 at 19, n.17. Plaintiffs cannot proceed under 18 U.S.C. §§ 2339C, which proscribes "the financing of terrorism," because that provision was enacted on June 25, 2002, nearly five months after this attack.  *See id.*  Plaintiffs cannot proceed under 18 U.S.C. § 2339, which proscribes "harboring or concealing terrorists," or 18 U.S.C. § 2339A, which proscribes "providing material support to

1534930.1

terrorists," because Plaintiffs have no admissible evidence that any weapons, money, or safe-housing was provided to Munzar Noor or Wafa Idris. *See* Plaintiffs' Rule 56.1 Response at 37-40.[7] Even if Plaintiffs had admissible evidence of material support to Wafa Idris or Munzar Noor, they could not establish the relevant predicate criminal offense under 18 U.S.C. § 2339A of bombing of a public place, 18 U.S.C. § 2332f, because that provision was not enacted until June 25, 2002. *Id.*

For each of the reasons stated above, the Court should grant summary judgment as to the theory of direct support.

### III. THE JUNE 19, 2002 ATTACK: PLAINTIFF LEONARD MANDELKORN

This Court has ruled that "the Mandelkorn Plaintiffs cannot proceed under a theory of respondeat superior." DE 646 at 13. The Court should now rule that Leonard Mandelkorn, the only Mandelkorn plaintiff who is a U.S. national, cannot proceed under a theory of direct support either.

First, Plaintiffs cannot prove that the PA or the PLO committed a predicate criminal act. Plaintiffs may not be legally prohibited from proceeding under 18 U.S.C. § 2339B because this attack took place after the designation of the AAMB as an FTO on March 27, 2002. But they have no admissible evidence that the PA or the PLO gave money to the AAMB between March 27, 2002, and June 19, 2002. Their only evidence is the allegation that "Arafat authorized the payment of $20,000 to AAMB around the time of the June 19, 2002 attack." *See* Plaintiffs' Rule 56.1 Response at 47, ¶224. But this allegation is not admissible. It comes from the expert report of Israel Shrenzel, who was merely transmitting a line in a book written by Elliott Abrams, a member of the George W. Bush Administration. *See* DE 500-26 at 57; DE 500-31 at 144:16-

---

[7] Again, Plaintiffs cannot rely on support to Abu Talal to prove a predicate criminal act because there is no admissible evidence of Abu Talal's involvement in the attack.

13

145:1, 149:11-14.  The line in the book is not admissible.  In fact, Plaintiffs did not even list it as a trial exhibit.  As discussed above, Shrenzel cannot serve as a conduit for inadmissible evidence.[8]

Plaintiffs cannot proceed under 18 U.S.C. §§ 2339 or 2339A because they have no evidence that the PA or the PLO provided money, weapons, or lodging to any of the three alleged perpetrators of this attack: Sa'id Awada, Naef Abu Sharkh, or Mazen Freitakh.  *See* Plaintiffs' Rule 56.1 Response at 45-47.  In fact, Plaintiffs' own proffered evidence shows that this attack was done by "an *improvised* explosive device" rather than a weapon supplied by the PA or the PLO.  *See* PTE 338 at 4 (Israeli police ballistics report) (emphasis added).  Even if Plaintiffs had admissible evidence of material support to one of the alleged perpetrators, they could not establish the relevant predicate criminal offense under 18 U.S.C. § 2339A of bombing of a mass transportation vehicle, 18 U.S.C. § 1992, because that provision was not enacted until June 25, 2002, six days after the attack at issue here. Similarly, Plaintiffs cannot proceed under 18 U.S.C. §§ 2339C because that provision was not enacted until June 25, 2002.  In sum, Plaintiffs cannot prove that the PA or the PLO committed a predicate criminal act.

Second, assuming *arguendo* that Defendants committed a predicate criminal act, Plaintiffs cannot show that Leonard Mandelkorn's alleged emotional injuries were proximately caused by the PA's or the PLO's supposed provision of support to the AAMB.  *See* DE 646 at 8.  Once again, not a single exhibit proffered by Plaintiffs indicates a connection – direct or

---

[8] In addition to Arafat's alleged distribution of money to the AAMB, Plaintiffs allege that Abu Sharkh, one of the alleged perpetrators of this attack, "distributed funds to terrorist operatives on account of their terrorist activities."  Plaintiffs' Rule 56.1 Response at 47, ¶224.  But this evidence is not admissible because it comes from the custodial statement of Hiri Salameh (*see* PTE 606; Plaintiffs' Rule 56.1 Response at 47, ¶224) and this Court has ruled that "[s]tatements of unavailable witnesses inculpating third parties" are not admissible.  *See* DE 671.  In any event, evidence that Abu Sharkh gave money to terrorist operatives does not mean that the PA or the PLO did so.

14

otherwise – between the provision of support to the AAMB and this particular attack. Thus, the Court must grant summary judgment on the remaining theory of direct support.

## IV.   THE PLO

This Court has ruled that "Plaintiffs have not provided any factual basis for a reasonable jury to find the PLO liable for violating the ATA under a theory of vicarious liability as an employer." DE 646 at 15. The Court should now reach the same conclusion with respect to Plaintiffs' theory of direct support.

In their five-plus page discussion of Defendant's alleged provision of "Personnel, Monetary Support, and Weapons to Terrorist Organizations," Plaintiffs mention the PLO just once by quoting from the expert report of Alon Eviatar. *See* Plaintiffs' Rule 56.1 Response at 21 ("'The PA, PLO, Fatah, and Hamas [had] a shared interest in carrying out terrorist attacks and, accordingly, display[ed] a great deal of inter-organizational cooperation and coordination.'"). As discussed above, Plaintiffs may not use expert testimony to admit questions of fact. Other than inadmissible expert opinion, Plaintiffs have no evidence that the PLO provided direct support to the AAMB, Hamas, or any of the alleged perpetrators of the offenses at issue. Indeed, Plaintiffs' evidence focuses on the alleged conduct of the PA, not the PLO. *See id.* Similarly, the Court's summary judgment Order focuses on the PA, not the PLO. *See* DE 646 at 17 (discussing "the PA's support of Abdullah Barghouti"); *id.* at 18 (discussing the conduct of Fouad Shubaki and the "PA finance office"); *id.* at 19 (citing reports that discuss payments from the PA to the AAMB). Thus, the Court must grant summary judgment as to the PLO.

## V.   PREJUDICE

Defendants would be severely prejudiced if the Court decides to wait until the close of Plaintiffs' case before it dismisses those claims for which there is no triable issue of fact. While

the Court may be correct that "*sometimes* the prejudice is to the other side when that happens" (December 16, 2014 Hearing Tr. at 49:1-2 (emphasis added)), this is not one of those times.  The claims that merit summary judgment now involve gruesome terrorist attacks and sympathetic plaintiffs.  The July 31, 2002 attack at Hebrew University, for example, injured over a hundred people and killed nine, including four individuals whose families are plaintiffs in this case.  If the Court allows this incident to proceed to trial, the jury will hear about the circumstances of this ghastly attack as well as what it was like for each of the plaintiffs to suddenly lose a member of his or her family.  The January 27, 2002 attack on a public street in Jerusalem injured over a 150 people, including the four members of the Sokolow family who are plaintiffs in this case.  If the Court allows this incident to proceed to trial, the jury will hear each of them explain what it was like to go through – and see their loved ones also go through – a horrific suicide bombing.  And they will each testify about their physical and emotional injuries from the attack.  The June 19, 2002 attack at a bus stop in Jerusalem resulted in seven deaths and injuries to 35 people, including Shaul Mandelkorn whose father, Leonard Mandelkorn, is the only remaining plaintiff in this case.  If this incident proceeds to the trial, the jury may hear Shaul Mandelkorn testify about the attack and Leonard Mandelkorn testify about how his son's injuries have led to his alleged emotional injuries.

      The jury's receipt of such emotionally powerful testimony will unduly prejudice Defendants by engendering additional and unwarranted sympathy for Plaintiffs and antipathy for Defendants.  No instruction can prevent that.  In addition, it could unfairly inflate the damages awarded to other plaintiffs in the event the jury finds Defendants liable for those other claims.  If the jury hears (sympathetic) testimony from plaintiffs whose cases are dismissed by the Court, they may well be inclined to increase their award for those plaintiffs whose cases were not

1534930.1

dismissed based on a belief that all of the plaintiffs deserve compensation. Finally, it is not efficient for the Court, the parties, or the jury to hear testimony and evidence about attacks that will not be decided by the jury. The trial will be long enough; it should not include testimony about attacks for which there is no triable issue of fact.

## CONCLUSION

For the reasons stated above, the Court should exclude grant Defendants' renewed motion for summary judgment as to the incidents and theories discussed above.

December 29, 2014                    Respectfully Submitted,

/s/ Mark J. Rochon
Mark J. Rochon
Laura G. Ferguson
Brian A. Hill
Dawn E. Murphy-Johnson
Michael J. Satin
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington, DC  20005-6701
(202) 626-5800 [tel]
(202) 626-5801 [fax]
mrochon@milchev.com [email]

*Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*