**ARNOLD & PORTER** LLP

Kent A. Yalowitz

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

December 29, 2014

<u>**VIA ECF AND HAND DELIVERY**</u>

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

> Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
>         <u>Docket No. 04-CV-397 (GBD)(RLE)</u>

Dear Judge Daniels:

I write in further opposition to defendants' motion *in limine* to preclude the testimony of Israel Shrenzel, Alon Eviatar, and Matthew Levitt. These experts should be permitted to testify to show, among other things, that defendants' employees were acting within the scope of their employment and in accordance with defendants' policies and practices when they committed or materially supported the attacks at issue in this case. As discussed at the pretrial conference on December 16, plaintiffs in *Linde v. Arab Bank, PLC* introduced similar expert testimony during the recent trial in that case. I enclose that testimony here for the Court's convenience, and respectfully ask the Court to consider this information in the context of this case.

*Israel Shrenzel/Ronni Shaked*

Ronni Shaked testified in *Arab Bank*. Like Mr. Shrenzel, Mr. Shaked is a former Israeli intelligence officer who worked for the Israeli Security Agency ("ISA"). Before trial, Judge Gershon ruled that Mr. Skaked could testify that Hamas was behind the attacks: "Mr. Shaked is qualified to offer his opinions regarding the attribution of terror attacks to Hamas in this case…." *See* Ex. A at 20.

Mr. Shaked's trial testimony consisted largely of an analysis of each of the twenty-four terror attacks at issue in that case. *See generally* Ex. B. Specifically, Mr. Shaked testified about the identities of the perpetrators of the attacks, the details of the attacks, police reports from the attacks, the official claims of responsibility for the attacks, other claims of responsibility, the "memorialization" (i.e., glorification) of the perpetrators of the attacks, and the terror cells involved in the attack. Mr. Shaked then

**ARNOLD & PORTER LLP**

Hon. George B. Daniels
December 29, 2014
Page 2

gave his opinion as to whether Hamas was responsible for carrying out each attack at issue:

> Q   Now, based on your investigation, did Fadi Amer carry out this bombing solely and on his own or as part of Hamas?
>
> A   Fadi Amer carried out the attack on behalf of Hamas as a member of Hamas and for the organization Hamas.

Ex. B at 1017:3-7.

Mr. Shrenzel should be permitted to provide similar testimony. His report discloses opinions about policies of the PA and the PLO that supported terror, such as the payment of salaries to convicted terrorists, the hiring and retention in the "security" forces of known terrorists, the provision of promotions to convicted terrorists, financing of terrorists by defendants' senior-most officials, statements in PA security apparatus magazines inciting the readership to participate in terror attacks and indicating official approval of terrorism, the payment of "martyr" payments to suicide terrorists, and the glorification of the perpetrators of terror attacks. (Mr. Shrenzel will also incorporate into his testimony files of the PA's General Intelligence Service which defendants withheld until well after Mr. Shrenzel's expert disclosures were completed.)

Based on these policies—and the hard evidence concerning the individuals implicated in the attacks—Mr. Shrenzel should be permitted to opine on the degree of involvement of the PA and the nature of the material support provided by defendants to Hamas and Al-Aqsa Martyrs' Brigades. Mr. Shrenzel can base these opinions on documents concerning the identities of the perpetrators, the details of the attacks, the claims of responsibility for the attacks, glorification of the perpetrators of the attacks, and other facts. That his testimony may go to the ultimate issue in the case—the degree of involvement of the PA and the PLO in the seven attacks—does not make his testimony objectionable. Federal Rule of Evidence 704 provides that expert "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.

*Alon Eviatar/Arieh Spitzen*

Arieh Spitzen testified in *Arab Bank*. Before trial, Judge Gershon ruled that Mr. Mr. Spitzen was qualified to testify about, among other things, the establishment and organization of Hamas, whether certain charities were under the control of Hamas

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 29, 2014
Page 3

between 2000 and 2004 and whether certain individuals named on transactions processed by Arab Bank are leaders, members, or relatives of leaders or members of Hamas and affiliated terrorist groups.  *See* Ex. A at 4.  She specifically noted that "Mr. Spitzen's professional experience and independent research qualify him to offer the opinions he provides…." *Id*.

Pursuant to this ruling, Mr. Spitzen testified as to the identity of the cofounders and leaders of Hamas, the history, ideology and financing of Hamas, Hamas' network of social organizations, martyr files, public ceremonies honoring terrorists, and payments to certain of the perpetrators who committed the attacks at issue in the case.  Mr. Spitzen's testimony also described Arab Bank documents, including the sender and recipient of specific wire transfers and how those individuals were related to Hamas.  He opined that, based on his review, certain charitable organizations were controlled by Hamas, certain wire transfers represented payments to individuals associated with Hamas, and certain Hamas cofounders and leaders were customers of Arab Bank.  *See generally* Ex. C.

Like Mr. Spitzen, Alon Eviatar formerly headed the Palestinian Affairs Department ("PAD") of the Israel Ministry of Defense's Coordinator of Governmental Activities in the Palestinian Territories ("COGAT").  Indeed, Mr. Eviatar took over Mr. Spitzen's job at COGAT when Mr. Spitzen left.

Mr. Eviatar should be permitted to provide similar testimony.  He can explain who the PLO and the PA are.  He can explain the relationship between and among the PLO and PA and Fatah,[1] including the evidence supporting plaintiffs' alter ego and agency theories of liability of the two defendants.  He can provide an overview of the key events of the Al-Aqsa Intifada, which will give the jury important context to understand the seven attacks at issue in this case.  He can explain defendants' policies and practices that supported terror during the Al-Aqsa Intifada.  He can identify the senior staff of the PA involved in implementing those policies and provide evidence—such as convictions, admissions on video tape, and defendants' own documents—illustrating the execution of those policies and practices.  He can explain the workings of the two terror organizations that took credit for six of the seven attacks in this case—the Al-Aqsa Martyrs' Brigades and Hamas—and will analyze the evidence of defendants' material support for those organizations.  Mr. Eviatar should also be permitted to summarize and analyze the

---

[1] The Court will recall that defendants claim that Fatah is like the Republican Party (Tr. (12/16/14) at 143); our experts will explain the true nature of the Fatah "movement."

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 29, 2014
Page 4

evidence of defendants' material support for the terrorist who manufactured the bomb that killed the family members of four plaintiff families.

In sum, Mr. Eviatar will rely on similar skills, experience, and types of evidence as relied upon by Mr. Spitzen, to provide similar types of information and opinions as provided by Mr. Spitzen in the *Arab Bank* case.

*Mathew Levitt*

Dr. Levitt is a Senior Fellow and Director of the Stein Program on Counterterrorism and Intelligence at The Washington Institute for Near East Policy. In the *Arab Bank* case, Judge Gershon found that "Dr. Levitt is clearly qualified to testify as an expert in terrorist organizations…." Ex. A at 9. During the trial in that case, Dr. Levitt testified at great length about Hamas, its structure, how it operates, the identities of its senior leaders, its martyrdom culture, how it is funded, and how other individuals and entities are related to Hamas, including whether other entities are alter egos of Hamas. *See generally* Ex. D. Dr. Levitt's testimony in *Arab Bank* relating to Hamas is similar to the type of testimony plaintiffs plan to introduce in this case relating to the PA, PLO, Fatah and AAMB.

\* \* \*

In sum, the testimony that plaintiffs intend to offer through their experts is very similar to the testimony that Judges Gershon and Cogan allowed in the *Arab Bank* trial. Courts have emphasized that it is particularly important to allow this kind of expert testimony in terrorism cases because of the secretive and murky manner in which terrorist organizations operate. *See, e.g., Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523 (E.D.N.Y. 2012) (Weinstein, J):

> The relationships among, and situations of, the various relevant organizations were constantly changing; the image was dynamic not static; pixels and factoids, discrete details and snippets of information, must be established and analyzed to provide the jury with an understandable and relevant story-line whose reliability they can agree upon.
>
> With so many vectors at play−most of which will not be familiar to jurors−a wide gateway to large amounts of

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 29, 2014
Page 5

> evidence must be provided. Jurors will not have the broad background knowledge and hypotheses they bring to bear in the run-of-the-mill cases within their ken. *Id*. at 529.
>
> ***
>
> In sum, each proffered witness's testimony must be approached applying a strong policy in favor of full admissibility required for the jury to understand the complex details of this case. Those particulars are remote from the normal life experience upon which jurors rely when deciding cases. Admissibility of expert reports and testimony is therefore strongly favored. *Id*. at 530-31.

*Accord Strauss v. Credit Lyonnais*, 925 F. Supp. 2d 414, 440 ("This testimony by Levitt and Spitzen is precisely the type of analysis of a criminal group's organization and leadership of criminal groups that courts have admitted in the past."); *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 124 (D. Conn. 2008) ("numerous district courts in the Second Circuit and beyond have approved of the use of terrorism experts") (citing cases).

      The jury in this case, as in other terrorism cases, will benefit from the expertise of plaintiffs' experts in deciphering and understanding the large amount of evidence on defendants' policies and practices—and the way that defendants related to the terrorist groups that claimed credit for the attacks at issue.

                                                             Respectfully,

                                                             Kent A. Yalowitz

cc:    All ECF Counsel