

**MILLER CHEVALIER**

Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com
December 30, 2014

**Via ECF**
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

> Re: *Sokolow v. Palestine Liberation Organization et al.*
> 04-CV-397(GBD)(RLE)

Dear Judge Daniels:

I write in response to Plaintiffs' letter, dated December 23, 2014, in which they inform the Court of their intention to offer selected testimony from the depositions of Salam Fayyad, Hasan Abu-Libdeh, Yasser Shaqbu'a, Hussein al Sheikh and Mazen Jadallah. *See* DE 678. The Court should exclude the following portions of those deposition designations as well as Plaintiffs' related trial exhibits concerning payments to the Fatah organization or certain individuals unrelated to this case because they are not relevant and/or are more prejudicial than probative. The Court should also exclude those portions of the designations that pertain to payments from the PA to PLO and the structure of, and relationship between, the PA, PLO and Fatah, as that evidence is likewise not relevant to any fact of consequence in determining this action.

1. <u>Payments by the PA or PLO to Fatah Are Irrelevant</u>

Plaintiffs have designated testimony from multiple witnesses indicating that, as a general matter, the PA or PLO provided money to Fatah, which is one of the political parties or factions in the PLO. For example, Plaintiffs have designated the following testimony from the deposition of Hasan Abu-Libdeh which explains that the PLO has a line in the PA budget, and that the PLO can direct that some of that budget line be paid to political parties like Fatah.

> Q. Did anyone on behalf of the Palestinian National Authority, and I ask you as its designee, have any oversight over monies distributed by the Palestinian Authority to Fatah?
> * * * *
> A. The unification of these accounts resulted in moving the responsibility of disbursing the allocations to the political parties, from the PLO to the PNA. So the PNA, out of its own revenues,



has allocated - - is allocating on an annual basis a line in the budget for the PLO, where the PLO decides what parts of that line will go to which party, on the basis of the internal relationships within the PLO.

DE 678-3 at 207-08.

Plaintiffs have also designated the following testimony from the deposition of Mazen Jadallah indicating that the PA made certain payments to Fatah at the direction of the PLO from the PLO's line in the PA's budget:

> Q. Were there transfers from the budget of the Palestinian National Authority for the time period 1999 through 2005 to Fatah?
> A. Yes, there were.
> * * * *
> Q. Yes. Now in your earlier testimony sir, you indicated that monies, if I heard you correctly, monies for Fatah were transferred from the Palestinian National Authority Ministry of Finance pursuant to order of the Palestine Liberation Organization; is that correct?
> A. Right. Not only that, but should be against their budget items and should have the total ceilings that happen.
> * * * *
> Q. And the Palestine Liberation Organization receives money from the budget of the Palestinian National Authority, and that's a budget administered by the Ministry of Finance; is that correct?
> A. The overall budget is administered by the Ministry of Finance, yes. The Palestinian Liberation Organization budget is administered by the National Fund, which I said earlier.
> Q. Yes. And from the line of the PLO, as it relates to the revenues the PLO receives from the Palestinian National Authority through the Ministry of Finance, it allocates money to Fatah, is that correct?
> A. It's not revenues. It's budget allocations. The PLO doesn't generate any revenues. And from the budget allocations, it seems that they paid Fatah, because they have to pay Fatah.

DE 678-6 at 29, 183, 187-88.

Plaintiffs have also designated the portion of Mr. Jadallah's deposition where he explains that a document "[s]hows the names of the Fatah who is entitled of the amount of money, to which branch office Fatah was paid," "shows the amount of Israeli shekels," "whether this is a final payment," and [t]he reason why it was transferred." DE 678-6 at 183-84. *See also id.* at



184-187 (describing contents of document). Similar information about payments to the Fatah organization appear on the documents Plaintiffs have designated as PTE 20 and 173.

Plaintiffs have also designated the following testimony from the deposition of Salam Fayyad indicating that payments may have been made from PLO's treasury (known as the Palestine National Fund or PNF) to Fatah or Fatah-affiliated individuals during the period October 1, 2000 to February 18, 2002.

> Q. Do you know whether Fatah received funds from the PNF between October 1, 2000, and February 2002?
> A. Yes, it is possible. And certainly given the declaration made by the PNF officials, the - - the Palestine National Fund officials here, I can say, yes, that happened.
> Q. Okay. Were payments made to specific Fatah officials from the PNF between October 1st, 2000 and February 18th, 2002?
> A. I do not, you know, have names. I do not know names. But – but I know that the PNF did make payments to - - to Fatah - -
> Q. Okay.
> A. -- or individuals affiliated with Fatah.

DE 678-2 at 82-83.

None of this testimony or the related exhibits (PTE 20 and 173) are relevant to any issue in this case. The Court's order on summary judgment does not permit the Plaintiffs to prove ATA liability by proving that a Defendant gave money to Fatah, which has never been designated as a foreign terrorist organization. *See* DE 646 at 8-20. Moreover, the Court has made it clear that providing funds can only lead to ATA liability if that funding is a "but for" and "proximate cause" of a plaintiff's injury. *See id.* at 7 ("The ATA specifically requires that the harm to Plaintiffs occur *by reason of* an act of international terrorism, which has been interpreted to 'require something more than "but for" causation.'"); *id.* at 9 ("This Court 'rejects the contention that any reckless contribution to a terrorist group or its affiliate, no matter how attenuated, will result in civil liability, without the demonstration of a proximate causal relationship to the plaintiffs' injury.'") (citations omitted). Plaintiffs have no evidence that any of the money given to Fatah evidenced by this deposition testimony or the related trial exhibits designated as PTE 20 and 173 was either a "but for" or proximate cause of any of the Plaintiffs' injuries. Accordingly, the above-discussed testimony and exhibits have no relevance to "any fact of consequence in determining the action," and should therefore be excluded from evidence at trial. Fed. R. Evid. 401, 402. Moreover, even if there were some probative value to such evidence, it would be substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. Thus, the above-discussed testimony and exhibits should be excluded from evidence at trial.



Hon. George B. Daniels
December 30, 2014
Page 4

### 2. Requests for Payments to Individuals Unconnected to This Case are Irrelevant

Plaintiffs have also designated testimony from Hussein al Sheikh, who was the Secretary of Fatah during the relevant time frame, DE 678-5 at 70, 74, about letters he and others sent to Yasser Arafat requesting payment to certain individuals, none of which are alleged to have been involved in any of the attacks at issue in this case. *See generally id.* at 137-143, 199, 202-208. For example, Plaintiffs have designated the following testimony:

> Q. What types of issues would you have written to Mr. Arafat, and I'm talking about 2000 to 2004.
> A. (Translator.) I used to write him for giving medical treatment for families who cannot afford it, for their children. I used to ask him for assistance and help for students who are in need so they can go for studies, and also social assistance for deprived families.
> * * * *
> Q. Let me break it down. You would ask Mr. Arafat to give money to Mr. X, and if Mr. Arafat agreed, he would direct somebody, he would pick to disburse the money?
> A. (Translator.) Correct.
> Q. And what we are talking about is the money of Fatah. We are not talking about the Palestinian Authority of PLO.
> A. (Translator.) Fatah and PLO are the same because the Fatah and the PLO budget are with Arafat.
> * * * *
> Q. You told us, sir, that you would often write letters to Mr. Arafat asking him to award money from Fatah to particular people.
> A. (Translator.). Correct.
> Q. Do you have any idea, sir, how much money was awarded by Fatah altogether as a result of your requests?
> A. (Translator.) I cannot count them.
> Q. Can you give it in order of magnitude? Are we talking hundreds of dollars, thousands of dollars, hundreds of thousands of dollars?
> A. (Translator.) I would say hundreds of thousands of dollars.

DE 678-5 at 139, 140, 142-143. There is no evidence that any letters from Mr. al Sheikh to Mr. Arafat requesting funds pertained to any of the perpetrators in this case.

Plaintiffs have also designated multiple pages of the transcript where Mr. al Sheikh describes the content of a particular document, which Plaintiffs have now designated as PTE 962 that he presented to Mr. Arafat requesting "financial aid for certain people." *Id.* at 202. *See also id.* at 202-208 (describing document). The document lists three names, none of which are



Hon. George B. Daniels
December 30, 2014
Page 5

alleged to have participated in any of the attacks at issue in this case. *Id.* at 205; PTE 962. Plaintiffs have also designated testimony about a document which Mr. al Sheikh did not prepare and did not contemporaneously receive, which contains a list of 15 names, and which Plaintiffs have now designated as PTE 963. DE 678-5 at 208-209. None of the 15 persons listed on that document are alleged to have participated in any of the attacks at issue in this case. PTE 963. Plaintiffs have also designated testimony that Mr. al Sheikh received a salary from the PA, DE 678-5 at 72, 74, but there is no admissible evidence that Mr. al Sheikh had any role in any of the attacks that injured any of the Plaintiffs. There is also no evidence that any payments were in fact made to any of the 18 individuals listed on PTE 962 or 963 by either the PA or PLO, but even if such payments were made by one of the Defendants, that would not be relevant as there is no evidence that any such payments were either a "but for" or a proximate cause of any of the Plaintiffs' injuries. Accordingly, the above-described testimony and related exhibits (PTE 962 and 963) should be excluded from evidence at trial.

3. Payments by the PA to the PLO are Irrelevant

Plaintiffs have also designated deposition testimony indicating that the PA provided funds to the PLO. *See* DE 678-2 at 75-76, 77-78 (Fayyad); DE 678-4 at 13-14, 37-38 (Shaqbu'a); DE 678-6 at 187-88 (Jadallah). The PLO is entitled to summary judgment on the remaining claims against it for the reasons stated in the pending Renewed Motion for Summary Judgment in Light of Court's Evidentiary Rulings, DE 682, but even if it were not, evidence of payments from the PA to the PLO would be irrelevant as payments the PLO are not a basis for liability in this case, and there is no evidence that PA payments to the PLO were a "but for" or proximate cause of any of the Plaintiffs' injuries.

4. The Structure of, and Relationship Between, the PA, PLO and Fatah is Irrelevant

Plaintiffs' designations also include testimony about the structure of, and the relationship between, the PA, PLO and Fatah. *See* DE 678-2 at 46-47, 50 (Fayyad); DE 678-3 at 119-120, 130, 134-135 (Abu-Libdeh); DE 678-5 at 38, 121, 133-134, 151-152 (al Sheikh); DE 678-6 at 187-88 (Jadallah). The structure of these three entities and their relationships to one another are not relevant to any of claims that the Court has permitted to be tried in this case. *See* DE 646 at 8-20. Accordingly, these designations should also be excluded from evidence at trial.

For the foregoing reasons, the Court should exclude the above-referenced deposition testimony and proffered trial exhibits.[1]

Sincerely,

*/s/ Brian A. Hill*

Brian A. Hill

---

[1] In the event the Court admits any of Plaintiffs' proposed designations, Defendants will notify Plaintiffs and the Court of any counter-designations that they will seek to admit.