# ARNOLD & PORTER LLP

**Kent A. Yalowitz**

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

December 30, 2014

**VIA ECF AND HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
   for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

    Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*,
          Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

Plaintiffs request admission of thirty-one of plaintiffs' trial exhibits, which can be broadly categorized as follows: (1) United States government reports and/or public records; and (2) Israeli government reports and/or public records. I enclose a binder of the exhibits at issue for the Court's convenience.

These thirty-one trial exhibits are admissible pursuant to Federal Rule of Evidence 803(8), which provides that a record or statement of a public office is admissible where it sets out either "the office's activities," "a matter observed while under a legal duty to report," or "factual findings from a legally authorized investigation," and "neither the source of information nor other circumstances indicate a lack of trustworthiness."

This rule "is based upon the assumption that public officers will perform their duties, that they lack motive to falsify, and that public inspection to which many such records are subject will disclose inaccuracies." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (internal quotation marks and citation omitted). "'Factual finding' includes not only what happened, but how it happened, why it happened, and who caused it to happen. The rule therefore renders presumptively admissible 'not merely…factual determinations in the narrow sense, but also…conclusions or opinions that are based upon a factual investigation.'" *Id.* (quoting in part *Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991)).

The reports at issue are as follows:

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 30, 2014
Page 2

1. **PLOCCA Reports—Exhibits 496, 634-35, 1142.**  Pursuant to the PLO Commitments Compliance Act of 1989 ("PLOCCA") and other related federal laws, the United States government issued semi-annual reports that described the Palestinian Authority's and the Palestinian Liberation Organization's compliance with their commitments to renounce—and to take measures to prevent—terrorism, violence, and incitement.  *See* Exs. 496 at 1-2; 634 at 1; 635 at 1-2; 1142 at 1-2.  These reports are undoubtedly comprised of "factual findings from[] legally authorized investigation[s]" of the United States government, and the fact that the United States concluded that "[t]the PLO has not complied with its commitments," that "the PA has not taken sufficient steps to prevent violence by PA personnel," and that "there is strong evidence that some members of the PA security forces were allowed to continue serving even though their participation in terrorist incidents was well known" is highly relevant to defendants' policies and practices of inciting, supporting, and glorifying the terrorism at issue in this case.  *See* Ex. 1142 at 3.

2. **Other U.S. Government Reports—Exhibit 537.**  On March 25, 2002, the United States government, pursuant to Executive Orders 13224 and 12947, designated the Al-Aqsa Martyrs Brigade ("AAMB") as a foreign terrorist organization on the basis of its investigation into the activities of the AAMB.  Ex. 537.  These notices, issued by the Department of State and published in the Federal Register, are based on "factual findings from a legally authorized investigation" of the United States government and are properly admissible pursuant to Fed. R. Evid. 803(8).

3. **IMFA, IDF, and ISA Reports—Exhibits 337, 339, 353, 354, 365, 539, 547, 554, 559, 626, 631-32, 826, 829-30, 954, 1109, 1118.**  Through its various security and intelligence agencies, the State of Israel regularly issues reports containing "factual findings from[] legally authorized investigation[s]," which bear on events of terrorism, as well as those terrorists that perpetrate such acts, in or near Israel.  The findings set forth in these exhibits bear directly on the attacks at issue in this case, and are important for the jury to consider.  For example:

    - On January 26, 2001, the Israel Ministry of Foreign Affairs ("IMFA") published a report that documented the results of an investigation conducted by the Israel Security Agency ("ISA") and the Israel Defense

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 30, 2014
Page 3

>  Forces ("IDF"). *See* Ex. 559. This investigation resulted in the arrest of six members of the terrorist cell known as "Force 17," which was "suspected of perpetrating many shootings that[] killed and wounded Israeli soldiers and civilians" during the same time period—and around the same area—as the January 8, 2001 shooting attack that wounded the Guetta family. *See id.*

- On March 5, 2002, the IMFA issued a similar report about Force 17 on the basis of the IDF's investigating that terrorist cell. Ex. 1109. Specifically, the report states: "The [Force 17] cell was active since September 2000 and perpetrated a number of murderous terrorist attacks against Israeli citizens in Jerusalem, the Ramallah area, and the northern West Bank." *Id.*

- In early April 2002, shortly after a number of the attacks at issue in this case, the IDF issued a report entitled, "Palestinian Authority Captured Documents: Main Implications." Ex. 631. This report documented "evidence of the role of Arafat and the Palestinian Authority (PA) apparatuses in the systemic, institutionalized and ongoing financing of the Fatah, Tanzim, and Al Aqsa Brigades terrorist infrastructures and activities." *Id.* at 1.

- In late April 2002, the IMFA published a "Status Report" on the Zinni List of the "33 most wanted terrorists" that the United States had given to the PA back in December 2001 "requesting their arrest by the Palestinian Authority." Ex. 354. The IMFA reported that five such terrorists, including Nasser Aweis (who perpetrated the January 22, 2002 attack that wounded the Gould and Waldman families) and Abdel Karim Aweis (who perpetrated the March 21, 2002 attack that wounded the Bauer family) had been arrested "*by Israel* during Operation Defensive Shield." *See id.* (emphasis added). Both were, and still are, employed by the PA.

- On February 26, 2004, the IMFA issued a report summarizing an investigation conducted by "IDF and Israeli police forces, guided by ISA officers" that resulted in "an operation for the confiscation of terror funds"—which included seizing "[a]n account in the name of Naef Abu

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 30, 2014
Page 4

> Sharh [sic], a senior fugitive of the Tanzim infrastructure in Nablus who was behind…[t]he June 19, 2002 suicide bombing of a crowded bus stop and hitchhiking post at the French Hill intersection in northern Jerusalem, in which seven people were murdered and over 35 were wounded." Ex. 339 at P 4: 35, 38; *see also* Ex. 954 (Israel government PPT presentation relating to same report).  "Information regarding these bank accounts was presented to the legal elements of the ISA, the IDF and the Attorney General's Office―all of whom authorized the operation." *Id.* at P 4:35.  Other evidence that plaintiffs will present at trial further implicates Naef Abu Sharkh in the June 19, 2002 terrorist attack that wounded the Mandelkorn family.

4. **Israel Police and Ministry of Heath Reports—Exhibits 325, 338, 473-77, 1125.** The final category of government reports at issue concern forensic or crime scene reports of the attacks at issue in this case, specifically: the January 8, 2001 shooting attack; the January 22, 2002 shooting attack; the January 27, 2002 bombing; and the June 19, 2002 bombing.  These reports were either conducted by the Israel Police Department or the State of Israel Ministry of Health Department by public employees in their official capacities, and, as such, the employees were under a legal duty to report the matters that they observed.

Thus, the United States government reports―here, comprised of PLOCCA reports and Executive Orders―are admissible pursuant to Federal Rule of Evidence 803(8).  *See Bridgeway Corp.*, 201 F.3d at 143 ("In this case, there is little doubt that the [U.S. State Department] Country Reports constitute 'factual findings.'  Moreover, the Reports are certainly gathered pursuant to legal authority:  federal law requires that the State Department submit the Reports annually to Congress....").  The Israel government reports—here, comprised of legally authorized investigations conducted by the IMFA, IDF, ISA, Police Department, and Ministry of Health―are also admissible pursuant to the same rule.  *E.g.*, *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 448 (E.D.N.Y. 2013) ("Hamas' responsibility for the March 7 and April 30 Attacks are supported by conclusions of public Israeli government reports that are admissible as hearsay exceptions."); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 159 (D. Conn. 2009) (conclusions of official foreign investigation admissible as hearsay exception).

ARNOLD & PORTER LLP

Hon. George B. Daniels
December 30, 2014
Page 5

      In addition, these thirty-one trial exhibits are self-authenticating pursuant to either Federal Rule of Evidence 902(5) as publications issued by a public authority or they can be authenticated at trial on the basis of Federal Rule of Evidence 901(b)(4) and the testimony of plaintiffs' expert witnesses who are fully familiar with such documents.

      Accordingly, plaintiffs request that the Court overrule defendants' objections to these exhibits and admit them in their entirety.

      Respectfully,

      Kent A. Yalowitz

cc:    All ECF Counsel

Encl.