# ARNOLD & PORTER LLP

**Kent A. Yalowitz**

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

December 31, 2014

<u>**VIA ECF AND HAND DELIVERY**</u>

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:    *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
               <u>Docket No. 04-CV-397 (GBD)(RLE)</u>

Dear Judge Daniels:

      I write in further opposition to defendants' motion *in limine* to preclude the testimony of Itamar Marcus.  We respectfully submit that Mr. Marcus' testimony is highly relevant as part of plaintiffs' case in chief.

1.     **Mr. Marcus' testimony will be limited to defendants'** ***own statements***.

      During trial, plaintiffs will prove, among other things, that defendants' employees were acting within the scope of their employment and in accordance with defendants' policies and practices when they committed or materially supported the attacks at issue in this case.  Defendants' policy and practice of promoting and inciting terrorism is an integral part of the evidence, and plaintiffs should be permitted to call Mr. Marcus to distill this evidence for the jury.

      To that end, Mr. Marcus will focus on statements made by defendants' senior officers, as well as statements that were broadcast on, or published in, media that is both owned and controlled by defendants.  Certain of these statements concern perpetrators involved in this case.  The media involved includes defendants' official television station, Palestinian Authority Television ("PA TV"), and their official newspaper, Al-Hayat Al-Jadida.  PA TV is owned by the Palestinian Broadcasting Corporation ("PBC"), and defendants have admitted that the PBC "serves as a news agency of the PA" (Ex. A, ¶ 2). Defendants' own expert, Lori Allen, acknowledged during her deposition that Al-Hayat Al-Jadida is known by the Palestinian population to be "associated with" and a "mouthpiece" of the PA.  Ex. B at 57:21-58:10.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 2

As recently as May 2014, the PBC (including PA TV), WAFA, and Al-Hayat Al-Jadida were described as "the official media institutions" of the Palestinian Authority in Al-Hayat Al-Jadida itself.  Ex. C.

**2.     Mr. Marcus' testimony is highly relevant because it bears directly on defendants' state of  mind.**

Statements published in defendants' official media institutions serve as powerful evidence of defendants' policies and practices and should be admitted as relevant on that basis alone.  They also support plaintiffs' *respondeat superior* argument, because they demonstrate that the attacks carried out by defendants' officers and employees were consonant with defendants' policies, and served to advance defendants' goals.  But the statements made by defendants shortly before, during, and after the Al-Aqsa Intifada also serve as powerful evidence of defendants' state of mind.

State of mind is a well-known element of an Anti-Terrorism Act claim.  "To establish the requisite mental state, Plaintiffs must show that Defendants committed a terrorist act intentionally, knowingly or recklessly, that injured Americans."  SJ Order at 7, DE 646.  In order to meet such a requirement, there is no better evidence than defendants' *own words*.

In *United States v. Mostafa*, 16 F. Supp. 3d 236, 256-68 (S.D.N.Y. 2014) (collecting cases), the court admitted, as state of mind evidence, a plethora of statements by the defendant that are similar in nature to the statements that were made by the defendants in this case that Mr. Marcus will speak about at trial.  Here, the defendants' statements included, among other topics, calls to engage in violent jihad in the name of resisting the Israeli "occupation," specific pleas to murder both Israeli and American citizens, messaging to the Palestinian youth that "Shahada (Death for Allah)" is "sweet" and a goal that every Palestinian child should aspire to, as well as statements that glorified ongoing acts of violence and celebration of terrorists themselves—including certain of the perpetrators *in this case*.  Such statements—which occurred shortly before, during, and after the Al-Aqsa Intifada, and which continue even to this day—are highly probative of defendants' liability in this case and such value outweighs any prejudicial effect, as the court held in *Mostafa*.  *See, e.g.*, *Mostafa*, 16 F. Supp. 3d at 259 ("The defendant's own statements justifying terrorism are relevant to his state of mind with respect to terrorism and actions taken by those who may be deemed terrorists.  In light of the conduct with which he has been charged, the statements are probative of, *inter alia*, motive, knowledge, intent, and lack of mistake.").

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 3

**3.    Defendants have opened the door to Mr. Marcus' testimony.**

During the December 16 conference, the Court expressed the tentative view that defendants' own trial strategy could well open the door to Mr. Marcus' testimony. Tr. (12/16/14) at 185-88, DE 687.  In particular, plaintiffs expressed concern that defendants' trial strategy would be to claim that they were trying to "tamp down the violence" but could not control "rogue employees."  In that event, defendants' own statements *inciting and glorifying* terrorism would become even more important.

In fact, it has been clear for nearly a year that one of defendants' principal strategies in this case is to argue that they oppose terrorism and therefore could not be responsible for the acts of their employees who carried out the attacks at issue.  Nearly one-third of the 69 exhibits that they designated for trial (*see* Ex. 3-2 to JPTO, filed 01/22/14 (undocketed)) are condemnations of terror made by the Palestinian leadership during the Al-Aqsa Intifada.  *See* Defs.' Exs. 24-27, 30-33, 35, 37, 39-48.  Moreover, defendants underscored the emphasis that they intend to place on this defense on page 1 of their summary judgment brief by claiming that the terror attacks were made by "[a] small, radicalized segment of the population"—in other words, by rogue employees.  DE 497 at 1.  Then, they tipped their hand again just a few days ago—in their letter to the Court dated December 23, 2014—which stated that they intend to call Major General Majed Faraj to testify that "the PA was responsible for preventing terrorist activity," "that the PA security services took that responsibility very seriously," and that "the PA security services did not have a policy supporting attacks on Israeli civilians, and, in fact, worked diligently, at personal risk to security force personnel, to prevent such attacks."  Defs.' Dec. 23 Letter at 3-4.  Thus, the testimony of Mr. Marcus—explaining defendants' own statements inciting and glorifying terrorism during this very same time period (and for years thereafter)—is crucial to put the lie to this defense.

**4.    Mr. Marcus' proposed testimony is consistent with testimony permitted in other terrorism cases.**

Courts in terrorism cases readily admit testimony of experts who analyze the news media of terrorist organizations.  In *Linde v. Arab Bank, PLC*, for example, the court permitted Mr. Evan Kohlmann to testify about Hamas' responsibility for terrorist attacks at issue in that case on the basis of official Hamas media sources that he had reviewed. Specifically, Judge Gershon found that:  "Mr. Kohlmann has demonstrated the reliability of his methodology:  he reviews videos, recordings, or published writing of terrorists; terrorist organizations' official websites; newspaper articles, television news reports, and

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 4

reputable books and magazines.  He synthesizes this material and pulls together common themes in reaching his conclusions."  Ex. D at 21-22.  Innumerable other decisions, in this Circuit and elsewhere, have qualified such experts in terrorism cases.  *E.g.*, *United States v. Farhane*, 634 F.3d 127, 158–60 (2d Cir. 2011) (qualifying al Qaeda media expert similar to Mr. Marcus); *United States v. Kaziu*, 2014 WL 961065 (2d Cir. Mar. 13, 2014) (unpublished) (same media expert); *United States v. Paracha*, 313 F. App'x 347, 351 (2d Cir. 2008) (same media expert); *Strauss v. Credit Lyonnais*, 925 F. Supp. 414, 437–46 (E.D.N.Y. 2013) (same media expert).

A common formulation of the methodology test for non-science experts—which is frequently applied to terrorism experts—is as follows: "gathering multiple sources of information, including original and secondary sources, cross-checking and juxtaposing new information against existing information and evaluating new information to determine whether [the expert's] conclusions remain consonant with the most reliable sources."  *Paracha*, 2006 WL 12768, at *20 (S.D.N.Y. Jan. 3, 2006), *aff'd*, 313 F. App'x 347 (2d Cir. 2008).

Because Mr. Marcus' testimony—which synthesizes defendants' own statements—will similarly aid the jury here, Mr. Marcus should be permitted to testify.

Kent A. Yalowitz

cc:     All ECF Counsel