ARNOLD & PORTER LLP

**Kent A. Yalowitz**

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

December 31, 2014

**VIA ECF AND HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
   for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

>   Re:   *Sokolow, et al. v. Palestine Liberation Organization, et al.* Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

   I write in further support of plaintiffs' motion *in limine* to preclude defendants from calling at trial fourteen untimely disclosed fact witnesses for whom defendants did not provide mandatory Rule 26(a) and 26(e) disclosures.  The vast majority of these witnesses are or were officials and employees of the defendants during the course of this lawsuit and, as such, were known to the defendants all along.  Defendants have no excuse for their dilatory behavior, which amounts to intentional sandbagging.

   Indeed, the Court will recall that plaintiffs requested information about the subjects of twelve of these witnesses' testimony nearly a year ago—immediately after defendants listed them as potential trial witnesses in the proposed Joint Pre-Trial Order.  Defendants refused that request.  And, even after plaintiffs filed their motion *in limine* to exclude these witnesses, defendants refused to provide any information about them other than the cryptic comment that the witnesses would testify as to "certain" documents that they declined to identify.

   Instead, by letter to the Court dated December 23, 2014 [DE 677], defendants disclosed, for the first time, the subjects of the anticipated trial testimony of twelve of the witnesses they now propose to call during trial.[1]  Defendants' disclosure of the substance of this testimony was made two years after the close of fact discovery, over a year after the close of expert discovery, eleven months after the filing of the proposed JPTO, and

---

[1] Defendants have withdrawn the other nine fact witnesses listed in the JPTO. *See* DE 677.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 2

less than three weeks before trial.  As if this were not bad enough, defendants have now filed a letter dated December 30, 2014, *substituting* two individuals, Shawqui Issa and Hanan Ashrawi, who have *never* been disclosed, for two of the witnesses listed in their December 23 letter.  Moreover, these two new witnesses are political propagandists who have no personal or admissible knowledge about the attacks or any of the issues in the case, and are really designed to turn the case into a political circus.  Remarkably, defendants try to justify this substitution by claiming that they *just learned* that "Mr. Fayyad and Mr. Safieh are no longer employed by the PA or PLO, and the PA and PLO are not able to arrange their attendance at trial."  DE 685.

Plaintiffs should not be prejudiced by defendants' abysmal behavior, and defendants' witnesses should be prohibited from testifying at trial.

### *Defendants' Disclosures are Untimely*

Fed. R. Civ. P. 26(a)(1)(A)(i) provides that every "party must, without awaiting a discovery request, provide to the other parties … **the name** and, if known, the address and telephone number of each individual likely to have discoverable information—**along with the subjects of that information**—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Rule 26(e)(1) requires a party to supplement its Rule 26(a) disclosures whenever it learns that the information originally provided is incomplete or incorrect.  The purpose of this requirement "is to alert an opposing party of the need to take discovery of the named witness," *Pal v. New York Univ.*, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008), and "to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 606–07 (S.D.N.Y. 2004).

Fed. R. Civ. P. 37(c)(1) provides that a party who fails to identify a witness under Rule 26(a) or 26(e)(1) "is not allowed to use that … witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1)'s preclusionary sanction is "automatic" and "self-executing" absent a finding of either "substantial justification" or "harmlessness[,]" and the "burden to prove substantial justification or harmlessness rests with the dilatory party."  *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).[2]

---

[2] The Second Circuit has identified four factors to be considered in deciding whether to impose sanctions: "'(1) the party's explanation for the failure to comply with the

Footnote continued on next page

ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 3

      Defendants' belated disclosure—the day before Christmas Eve, and three weeks before trial—is the very definition of sandbagging.  Their subsequent disclosure on December 30, substituting in witnesses who were not even listed in the JPTO and who have no knowledge relevant to the case, is nothing less than outrageous.
Not only did defendants fail to identify any of their witnesses in their mandatory disclosures, but, in many cases, they failed to list them in response to plaintiffs' interrogatories requiring defendants to identify persons with knowledge of the topics, and failed to produce documents on the topics for which they now propose to call them to testify.

      Platiniffs' motion *in limine* can and should be resolved in their favor because defendants have provided no justification for their delay.  That result is particularly appropriate given that these witnesses were defendants' officials and employees during the pendency of this action, which means their delay in disclosing this testimony was intentional.  Moreover, because plaintiffs have had no opportunity to prepare for the unanticipated testimony of these witnesses, they would suffer severe and unfair prejudice if these witnesses were allowed to testify at trial.[3]

### *Much of the Proffered Testimony is Plainly Inadmissible*

      In addition to being disclosed at the eleventh hour, defendants' witnesses should be excluded because many of them cannot offer admissible evidence.

---

Footnote continued from previous page
[disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'"  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (citation omitted).  For the reasons set forth in plaintiffs' *motion in limine*, all four factors support preclusion.  *See* DE 487, 553.

[3]  *Cf. Am. Stock Exch.*, 215 F.R.D. at 94 (finding prejudice to plaintiff where defendant made disclosure "five weeks after the completion of fact discovery," because it thereby "deprived the [plaintiff] of the opportunity to conduct needed fact discovery."); *Degelman Indus. v. Pro-Tech Welding & Fabrication*, 2011 WL 6754059, at *3–4 (W.D.N.Y. June 8, 2011) (same); *Alfano v. Nat'l Geographic Channel*, 2007 WL 2982757, at *2 (E.D.N.Y. Oct. 5, 2007).

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 4

      **1. Salam Fayyad, Afif Safieh and Hassan Abu-Libdeh.**  Defendants cannot introduce the deposition testimony of Salam Fayyad, Afif Safieh and Hassan Abu-Libdeh because Mr. Fayyad, Mr. Safieh and Mr. Abu-Libeh were defendants' own employees whose depositions were taken in other cases.  Under Rule 804(b) of the Federal Rules of Evidence, such prior testimony cannot be introduced unless the party against whom it is introduced had an opportunity to cross examine the witness.  Plaintiffs had no such opportunity.  Mr. Abu-Libdeh's deposition testimony is also not admissible because he is not an unavailable witness under Rule 804(a).  Mr. Abu-Libdeh is one of defendants' current employees and, if defendants had wanted to call him to testify, they could have done so.

      **2. Khaled Abu Al-Yaman.**   Defendants propose to bring Mr. Abu Al-Yaman to testify "that the PA did not release from its custody Mohammad Hashaika and Nasir Shawish, two of the men alleged to have been associated with the bombing that caused the injuries alleged by the Bauer Plaintiffs."  Such testimony is inadmissible because Mr. Abu Al-Yaman does not have first-hand knowledge of the PA's actions with respect to Hashaika and Shawish.  Indeed, in response to the Bauer Plaintiffs' interrogatory seeking "every past and current employee of the PA and/or the PLO" who has knowledge of "the causes and/or circumstances of Hashaika's release from PA custody," defendants responded with the names of two individuals, neither of which is Mr. Al-Yaman.  *See* Pls.' Tr. Ex. 842.

      Defendants also propose to call Mr. Abu Al-Yaman to undermine the reliability of the GIS reports that defendants produced.  We remind the Court that defendants' production of GIS documents was late and facially incomplete because it failed to include the underlying source materials referred to on the face of those documents.  Although the Court denied an adverse-inference sanction, to permit testimony of the *unreliability* of reports where defendants *failed to produce the source material that could establish their reliability* would hamstring cross-examination of the witness.

      **3. Suleiman al-Deek, Fatmah al Mashni, and Amani Habibeh.**  Defendants proffer Mr. al-Deek, Ms. Al Mashni and Ms. Habibeh, three individuals from defendants' Institute for the Care of Martyrs' Families and the Injured ("Martyrs' Institute") who apparently compiled some of the information in the "martyr files" of suicide terrorists, to testify that they do not have personal knowledge of the information in the files.  This testimony should be excluded.  It is irrelevant whether these individuals had personal knowledge of the information in the files they compiled.  They compiled that information, and the defendants acted on the premise that it was true, and adopted these

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 5

statements by declaring the suicide terrorists "al-Aqsa Martyrs" and paying their survivors a generous monthly stipend.

    **4. Radwan El Hilo.** Defendants propose to bring Mr. El Hilo to trial to testify about payments to members of the PA's security forces. But much of Mr. El Hilo's testimony is irrelevant. There can be no serious dispute that defendants have a policy of keeping convicted murderers on their "security" payroll, giving them promotions, and scaling their salaries to the length of their sentences and jail time (which in turn is a function of the seriousness of the crimes—i.e., the more jail time, the more money). These policies demonstrate ratification, a policy in favor of terror, and circumstantial evidence arising from a pattern of approval of the murderers' actions. Defendants' proffered excuse—that the murderers' families might get "radicalized" if not paid off—is a non-sequitor. It would be like the NYPD paying the families of policeman convicted of murder and then saying that it was a good policy because if they did not, other family members might become criminals too.

    **5. Jawad Amawi.** Defendants propose to bring Mr. Amawi to testify about the payments the defendants' "Ministry of Prisoners and Ex-Prisoners Affairs" (the "Ministry") pays to families of convicted terrorists, including the creation and maintenance of the files of many of the convicted terrorists in this case. Defendants claim that Mr. Amawi will also testify that payments to prisoners and their families is "public assistance" and "the payments are not made in support of terrorist activity." Such testimony is not within the scope of Mr. Amawi's personal knowledge. According to his deposition in another case, Mr. Amawi did not join the Ministry until 2003, and did not become the Director of the Legal Unit of the Ministry until 2008, years after the Al-Aqsa Intifada, and years after the time period at issue in this case. Many of the files at issue in this case were created prior to 2008, and therefore, prior to his time as Director.

    **6. Mazen Jadallah.** Defendants propose to call Mr. Jadallah to testify about PA financial policies, including testimony that the PA's Ministry of Finance never made payments to an entity called the Al Aqsa Martyrs' Brigades. This testimony is irrelevant. Plaintiffs have never claimed that the Ministry of Finance wrote checks directly to this designated terror organization. Indeed, if terrorism were financed so directly, it would be much easier to cut it off at the source. Instead, extensive evidence shows that the PA and PLO made payments to members of the Al Aqsa Martyrs' Brigades through orders of Arafat, Marwan Barghouti, Hussein al-Sheikh, Fuad Shubaki, and other officers of the PA and PLO. Mr. Jadallah's testimony that the Ministry of Finance never made payments to an entity called the Al Aqsa Martyrs' Brigades does nothing to rebut the fact

**ARNOLD & PORTER** LLP

Hon. George B. Daniels
December 31, 2014
Page 6


that money was paid to individual terrorists who were part of the Brigades and thus does nothing but rebut a straw argument.

     **7. Majed Faraj.**  Defendants appear poised to call Majed Faraj as a catch-all witness about "the PA security services" from 1994 to 2004.  But Mr. Faraj has no personal knowledge of the role of the security forces in the attacks in this case, and the defendants have opted not to list as a witness anyone who does have such knowledge.  Force 17 was implicated in one of the attacks in this case, the civil police force was implicated in one of the attacks, and the General Intelligence Service ("GIS") was implicated in three of the attacks.  Mr. Faraj did not work for any of these branches of the security forces during the relevant time period.  In addition, Jibril Rajoub, the head of the Preventative Security Services between 2000 and 2004, is implicated in one of the attacks.  But Mr. Faraj has no personal knowledge of the facts surrounding Mr. Rajoub's role either.  Defendants should not be permitted to call someone with no personal knowledge of the PA security services' role in these attacks to defend their case.

     Defendants also propose to call Mr. Faraj to undermine the reliability of the GIS reports that defendants produced.  Once again, defendants should not be permitted to testify as to the unreliability of documents which they failed to produce within the discovery deadline.

     **8. Jibreen Al-Bakri.**  Defendants propose to call Mr. Al-Bakri to testify that the PA's Preventative Security Services "did not release Abdullah Barghouti from custody, but that Barghouti escaped from custody."  DE 677 at 4.  This is the first time in the ten year history of this case that defendants have asserted that Abdullah Barghouti escaped from custody.  Defendants should not be permitted to assert this theory on the eve of trial, and should not be permitted to call a witness to testify to that allegation.  It is hard to imagine a more blatant case of sandbagging.  Defendants should not be rewarded for their refusal to comply with Rules 26(a) and (e) and should not be permitted to spring new facts on plaintiffs three weeks before trial—especially since defendants refused plaintiffs' request for the substance of Mr. Al-Bakri's testimony nearly a year ago.

     Moreover, it is far from clear how Mr. Al-Bakri could have any first-hand knowledge of Barghouti's alleged escape.  Did he see Barghouti escape?  Did he try to stop him?  Mr. Al-Bakri is a governor, not a prison guard.  If he does not have first-hand knowledge, his testimony is hearsay.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 7

      **9. Shawqui Issa.**  Defendants proposed, for the first time on December 30, to call Mr. Issa, the current PA Minister of Social Affairs and the Minister of Agriculture, to, among other things, "offer the testimony previously disclosed for Mr. Fayyad…in Mr. Rochon's letter of December 23, 2014." DE 685.  Based on publicly available information, it appears that Mr. Issa was not employed by the PA until very recently, and was not an employee during the period at issue in this case.  Accordingly, he does not have personal knowledge of the subject matter previously disclosed for Mr. Fayyad—i.e., "the creation and function of the Palestinian Authority, the role of the Palestinian Authority's security forces, and the absence of terrorism financing during the relevant period." DE 677.  Indeed, it is far from clear what testimony the Minister of Social Affairs and the Minister of Agriculture could provide about the role of the Palestinian Authority's security forces, and the absence of terrorism financing at *any* period of time, never mind a period of time *before* he joined the PA.  Defendants should not be allowed to bring Mr. Issa to trial because he was never identified as a potential witness until yesterday and he has no knowledge of the issues in dispute in this case.

      Moreover, Mr. Issa is a political propagandist who has opined that Israel is "a bloody and murderous country that was established on a racist basis" and warned against "the evil side of Jewish religious teachings."  His writings include the statement that the "Zionist movement, its principal tool being Israel, aims to control, directly and indirectly, the Middle East region.  It harnesses Israel to serve its objectives and those of the United States and the West by maintaining the region in a tense state for varying objectives."  This is not the kind of testimony that is relevant to the issues in this case.

      **10. Hanan Ashrawi.**  Defendants proposed, again for the first time on December 30, to call Ms. Ashrawi to give "the testimony previously disclosed for…Mr. Safieh"— i.e., "the creation and development of the PLO, its structure, its relationship to the PA, Fatah and Hamas, and the PLO's function following the signing of the Oslo Accords in 1994 and the creation of the Palestinian Authority....[as well as] PLO policy as it relates to terrorism following the signing of the Oslo accords." DE 677, 685.  But, according to Ms. Ashrawi's official biography from the PLO Department of Culture and Information, Ms. Ashrawi has not held any positions in the PA or the PLO other than the Minister of Higher Education and Research from 1996 and 1998, and Member of the PLO Legislative Council.  Indeed, in 2006, in attempting to quash a subpoena in another case, Ms. Ashrawi represented that she "is not and has never been a member of the PLO" and "is not an officer of the PA."  As such, Ms. Ashrawi has no personal knowledge of any of the issues in this case.

# ARNOLD & PORTER LLP
Hon. George B. Daniels
December 31, 2014
Page 8

Moreover, Ms. Ashrawi currently heads the PLO Department of Culture and Information which is the propaganda arm of the PLO. According to its website, the PLO Department of Culture and Information's "ultimate aim is to establish, refine and maintain an ongoing and openly communicative dialogue designed to inform and influence the wide-ranging and broadly diverse global community." It does so "by shaping the Palestinian national discourse to be presented locally and abroad."[4] This type of political messaging may be a legitimate public relations project, but it has no place in a court of law or in this case.

Like, Mr. Issa, defendants should not be allowed to bring Ms. Ashrawi to trial because she was never identified as a potential witness until yesterday, she can offer no relevant testimony, and her testimony, which will consist largely of PLO propaganda, is highly improper.

*In the Alternative, Plaintiffs Should Be Given Depositions*

Should the Court allow defendants to call any of the witnesses listed in their December 23 letter, defendants should be required to make those witnesses available for deposition in New York during the first two weeks of January so—at the very least—plaintiffs are not forced to question them cold during trial.[5] Depositions at this late stage would be a severe burden on plaintiffs. However, if the Court does not exclude defendants' witnesses now, depositions are required to avoid the extreme prejudice that would result from plaintiffs having been sandbagged with no warning during discovery that defendants would call these witnesses at trial (and, indeed, up until this very moment in the case of Shawqui Issa and Hanan Ashrawi).

Depositions are also necessary so that plaintiffs and the Court can determine whether these witnesses have anything relevant to say and what foundation there is, if any, for their testimony. Given the many admissibility problems plaintiffs set forth above—and these are just those that are obvious based on publicly available information and depositions in other matters—these threshold, foundational issues should be explored

---

[4] *See* http://dci.plo.ps/EN/index.php?option=com_content&view=article&id=626&Itemid=323.

[5] *See Pal*, 2008 WL 2627614, at *4 ("'If the Court were to permit these untimely disclosures, it would have to reopen discovery to afford [plaintiffs] an opportunity to depose some or all of the additional witnesses. The Court might also have to permit [them] to seek discovery regarding … records' relating to the witnesses.").

ARNOLD & PORTER LLP

Hon. George B. Daniels
December 31, 2014
Page 9

and resolved *in limine* prior to defendants' case in chief so as not to waste the Court's and the jury's time during trial. Depositions will also enable plaintiffs to fairly revisit admissibility and relevancy challenges, based on the full preview of the testimony.

                                                                    Respectfully,

                                                                    Kent A. Yalowitz

cc:    All ECF Counsel