

Mark J. Rochon
Member
(202) 626-5819
mrochon@milchev.com
January 2, 2015

**Via ECF**
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re: *Sokolow v. Palestine Liberation Organization et al.*
          04-CV-397(GBD)(RLE)

Dear Judge Daniels:

      I write in response to Plaintiffs' letter, dated December 29, 2014, in which they claim to "request *clarification* of the Court's orders that the names of accomplices and witnesses be redacted from custodial statements and convictions." DE 683 at 1 (emphasis added). In fact, Plaintiffs do not "request clarification" at all; they seek *reconsideration* of the Court's December 18 rulings. *Compare id.* at 1 ("In these cases, the statements – including the names of the accomplices and witnesses – fall squarely within Fed. R. Evid. 804(b)(3), and as such, should be submitted to the jury without redactions.") *with* DE 671 ("Statements of unavailable witnesses inculpating third parties may not be admissible at this trial as statements against interest under Federal Rule of Evidence 804(b)(3).") *and* DE 672 ("The names of accomplices and witnesses must be redacted from all guilty plea documents.") (same for "all trial documents"). Plaintiffs' request for reconsideration is remarkable in light of the fact that they have repeatedly demanded that "we not revisit what the Court already ruled." April 11, 2014 Hearing Tr. at 110:8-9; *see id.* at 110:5-6 (Mr. Yalowitz complaining about "a constant nibbling around the Court's rulings"); December 16, 2014 Hearing Tr. at 26:9-10 (Mr. Yalowitz "object[ing]" to Defendants' request for access to jurors' names because "Your Honor's already made a ruling"). Plaintiffs should be held to the same standard as they have set for Defendants. In any event, the Court should deny their request for reconsideration for the reasons stated below.

      There has been no intervening change in the law or the facts since the Court issued its rulings on December 18, 2014. *See* DE 671, 672. In their letter, Plaintiffs make the same arguments and cite the same cases that they have made and cited on multiple occasions already. *See* DE 540 at 35-36; July 22, 2014 Hearing Tr. at 118-127; DE 593 at 1-2; December 16, 2014 Hearing Tr. at 46-48. The Court considered their arguments, reviewed the proffered documents, and rendered its rulings. Like Plaintiffs, Defendants disagree with certain rulings; Defendants believe that the Israeli court records should not be admitted at all. But the Court has ruled and now is not the time for Plaintiffs to "nibble" at these rulings.



Hon. George B. Daniels
January 2, 2015
Page 2

Moreover, Plaintiffs' argument that certain statements "should be presented to the jury without redactions because the names of third parties are not only part of the self-inculpatory statements, but the names *themselves* also demonstrate the guilt of the declarant" (DE 683 at 2) (emphasis in original) is wrong. In *Williamson v. United States*, 512 U.S. 594 (1994), the Supreme Court held "[i]n our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, *even if they are made within a broader narrative that is generally self-inculpatory*." *Id.* at 600-01 (emphasis added). Thus, the names of third parties are not admissible simply because they are "*part* of the self-inculpatory statements" (DE 683 at 2) (emphasis added).

Plaintiffs' claim that the "names themselves" should be admitted because they supposedly "demonstrate the guilt of the declarant" is also incorrect. DE 683 at 2. The "names themselves" point to the guilt of the third party named, not that of the declarant. Consider, for example, the verdict of Munzar Noor. *See* PTE 322. It reads, "In these statements the Defendant admits that he sat together with the individual known as Abu Talal and the terrorist Wafa Idris when they planned to execute a terrorist attack in Jerusalem." *Id.* at 4. Munzar Noor's guilt is no less clear if the names of Abu Talal and Wafa Idris are redacted. Indeed, if the jury is told, "In these statements the Defendant admits that he sat together with the individual known as [blank] and the terrorist [blank] when they planned to execute a terrorist attack in Jerusalem," they will still have no doubt about Munzar Noor's involvement in the January 27, 2002 attack.[1]

Moreover, Plaintiffs ignore the Supreme Court's admonition in *Williamson*:

> 'The arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.'

512 U.S. at 601 (quoting *Lee v. Illinois*, 476 U.S. 530, 541 (1986)). Munzar Noor's custodial statements illustrate this principle perfectly. In his first custodial statement, Noor maintained his own innocence without implicating anyone else. *See* PTE 466 (April 23, 2002 custodial statement). When that statement did not lead to his release from custody, Noor placed the blame on Abu Talal in an attempt to exonerate himself. *See* PTE 467 (April 25, 2002 custodial statement), PTE 465 (May 13, 2002 custodial statement). Specifically, he stated that Abu Talal recruited Wafa Idris for the attack, gave her the explosive device, and instructed her how to use it, while he maintained to the very end, "I am not an accomplice." *Id.* at 4. At trial, his attorney presented this same line of defense: "[Noor] was not linked to the incident carried out by the

---

[1] The verdict states elsewhere that Noor was convicted of "the suicide terrorist attack that took place on January 27, 2002, in Jerusalem" so it is clear that Noor was convicted of the attack at issue in this case. *Id.* at 1.



suicide bomber. He was not the dispatcher. . . . [T]he person who planned the entire action [Abu Talal], was the one who sent [Wafa Idris] and made the actual plans to blow up her and the charge." P 11-1:12-13. Thus, Munzar Noor's custodial statements – like the other custodial statements at issue in this case – are exactly the kind of blame-shifting statements that are not admissible under *Williamson*.

Despite *Williamson*'s unambiguous concern about statements that implicate third parties, Plaintiffs latch on to a hypothetical in *Williamson* – "'Sam and I went to Joe's house'" – in a last-ditch effort to seek reconsideration of the Court's rulings. *See* DE 683 at 1-2, 9. But this hypothetical does not help Plaintiffs in this case. For one thing, Plaintiffs misstate (to their benefit) what the Supreme Court actually said. *Compare id.* at 1 ("[I]n *Williamson*, the Supreme Court noted that the statement 'Sam and I went to Joe's house' is a self-inculpatory statement where...") (emphasis added) *with Williamson*, 512 U.S. at 603 ("'Sam and I went to Joe's house' might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy.") (emphasis added). For another, that hypothetical as well as the statements in the two cases cited by Plaintiffs, *United States v. Saget*, 377 F.3d 223 (2d Cir. 2004) and *United States v. Williams*, 506 F.3d 151 (2d Cir. 2007), involve non-custodial statements made to co-conspirators. By contrast, each of the statements at issue in this case involves a custodial statement allegedly made to law enforcement. It is precisely in the custodial context, when the suspect's liberty has been deprived, that the Supreme Court has found that statements implicating third parties are less reliable. *See Williamson*, 512 U.S. at 601.[2]

Plaintiffs also try to stretch Rule 804(b)(3) to admit unredacted indictments. *See* DE 683 at 3 (discussing the indictment of Ahmed Barghouti). But indictments are not statements of the defendants. When Ahmed Barghouti pled guilty, he did not admit to any of the facts in the indictment, let alone the specific references to others. *See* PTE 358 (Entirety of plea colloquy: "Defense Counsel: We ask to withdraw the denial and plead guilty in the amended indictment that was filed on October 1, 2002. [Ahmed Barghouti]: I confirm the words of my defense counsel."). Even if Ahmed Barghouti's indictment were considered to be his "statement" (a bizarre concept), the names of accomplices and witnesses in the indictment should be redacted for the same reason that the names of accomplices and witnesses in custodial statements should be redacted. A defendant who makes a deal with the prosecution to plead guilty and is to be sentenced by the court has the same motivation to implicate others as the suspect who has just been arrested and interrogated.

Finally, even if the Court reverses itself and rules that statements implicating third parties fall within Rule 804(b)(3), the alleged custodial statements would still be inadmissible on other

---

[2] Plaintiffs' reliance on the self-inculpatory statement of Abdullah Barghouti at sentencing is misplaced. *See* DE 683 at 6-7. The fact that Abdullah Barghouti showed no remorse for his crimes at his sentencing does not mean that his implication of others during his custodial statements was reliable. This is especially true because Abdullah Barghouti was a member of Hamas, and the people he implicated were members of rival groups, including the PA and the PLO.



Hon. George B. Daniels  
January 2, 2015  
Page 4

grounds. The proffered exhibits purport to be Israeli police reports that contain three levels of hearsay: (1) the initial statement allegedly made by the suspect in Arabic during an interrogation, (2) the interpretation of that statement from Arabic into Hebrew by an interpreter, and (3) the memorialization of those translated statements by an Israeli police officer. *See, e.g.,* PTE 465, 467, 469 (alleged custodial statements of Munzar Noor); PTE 427, 428, 1111 (alleged custodial statements of Abdullah Barghouti); PTE 606 (alleged custodial statement of Hiri Salemeh). Thus, to admit the exhibits, Plaintiffs have to authentic them and show that there is a hearsay exception for each of the three levels of hearsay. *See Al Binahi v. Obama*, 662 F. Supp. 2d 9, 17-26 (D.D.C. 2009). Rule 804(b)(3) only deals with that first level of hearsay. *See id.* at 18. In this case, Plaintiffs cannot authenticate the documents and they cannot show that the two other levels of hearsay fall within an exception. With respect to authenticity, the exhibits do not contain apostilles and Plaintiffs lack a foundational witness who can testify that the proffered trial exhibits are authentic Israeli police reports. With respect to the second level of hearsay, Plaintiffs cannot show that the interpretations were reliable. *See id.* at 22-25 (holding that the proponent of the evidence must establish that the interpreter had the necessary qualifications for their interpretation to be considered reliable). Finally, Plaintiffs cannot show that the author of the alleged police reports accurately wrote down what the interpreter said. *See id.* at 25-27. Indeed, Plaintiffs lack a witness who has any first-hand knowledge of what happened during those interrogations. Thus, the alleged custodial statements are not admissible regardless of whether the declarants' statements implicating third parties fall within Rule 804(b)(3), which, as the Court has ruled, they do not.

Accordingly, for the reasons stated above, the Court should deny Plaintiffs' request for reconsideration.

Sincerely,

Mark J. Rochon