

Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com

January 2, 2015

**Via ECF**
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re: *Sokolow v. Palestine Liberation Organization et al.*
           04-CV-397(GBD)(RLE)

Dear Judge Daniels:

      I write to request that the Court exclude from evidence at trial three video recordings (PTE 372, 925, and 957) and the testimony of two of Plaintiffs' witnesses (Ronni Shaked and Pierre Benichou) who Plaintiffs apparently intend to utilize to attempt to lay a foundation for the admission of those video recordings.[1] The video recordings should be excluded from evidence at trial because even if they could be authenticated, they are inadmissible hearsay. They are almost entirely irrelevant, and to the extent they have any probative value, it is substantially outweighed by its unfair prejudicial effect. Any relevant portions are also cumulative of other evidence the Court has indicated it will admit at trial, so the videos should be excluded for that reason as well as the fact that none of the videos were produced during fact discovery, and neither Mr. Shaked nor Mr. Benichou was identified as a witness during fact discovery.

      According to a declaration provided to Defendants on December 28, 2014, Ex. 1, Mr. Shaked claims to be the co-producer of a documentary film entitled "For the Sake of Allah," and to have conducted prison interviews with "Abdullah Barghouti and Wael Qassam" as part of that production. Ex. 2 ¶ 8. Abdullah Barghouti and Wael Qassam were allegedly convicted for their roles in the Hebrew University bombing, *id.*, and the Court has indicated that it will admit Israeli military court ("IMC") documents in redacted form pertaining to Abdullah Barghouti's conviction, DE 672.[2] Mr. Shaked also claims that PTE 925 is a "true, accurate, and authentic copy of the final version of the documentary." Ex. 2 ¶ 12. Mr. Shaked also claims that PTE 957 is a "true, accurate, and authentic copy of the original, complete and unedited raw footage" of his

---

[1] Copies of the videos are included in the accompanying DVDs.

[2] Plaintiffs have not requested that the Court admit IMC documents pertaining to the alleged conviction of Wael Qassam.

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 • Washington, D.C. 20005-5701 • 202-626-5800 • 202-626-5801 FAX • millerchevalier.com


"interview with Abdullah Barghouti at Be'er Sheeva Prison," *id.* ¶ 15-16, but the copy of PTE 957 that Plaintiffs have produced to Defendants appears to stop recording before the interview concludes, *see* PTE 957 at 10:06.

According to another declaration, which was also provided to Defendants on December 28, 2014, Ex. 1, Mr. Benichou claims to be the producer of a documentary film entitled "Suicide Killers," and to have conducted prison interviews with Qahira Sa'adi and Sana'a Shehadeh, who were allegedly convicted for their roles in a March 21, 2002 bombing in downtown Jerusalem. Ex. 3 ¶ 7. The Court has indicated that it will admit IMC documents in redacted form pertaining to Qahira Sa'adi and Sana'a Shehadeh's convictions. DE 672. Mr. Benichou claims that PTE 372 is a "true, accurate, and authentic copy of the final version of this documentary," Ex. 3 ¶ 10, but the copy of PTE 372 that Plaintiffs have produced to Defendants appears to be raw video footage of three different women speaking in Arabic in response to questions.

As an initial matter, neither declaration is sufficient to authenticate the video recordings at issue. Mr. Shaked claims that PTE 957 is a "true, accurate, and authentic copy of the original, complete and unedited raw footage" of his "interview with Abdullah Barghouti at Be'er Sheeva Prison," Ex. 2 ¶ 15, but PTE 957 cuts off before the interview concludes. Mr. Benichou claims that PTE 372 is the "final version" of his documentary, but PTE 372 does not appear to be a documentary at all. Moreover, neither Mr. Shaked nor Mr. Benichou is competent to testify that the persons they interviewed in jail are in fact who they claimed to be.

Even assuming that the videos could be authenticated as statements of Abdullah Barghouti, Wael Qassam, Qahira Sa'adi or Sana'a Shehadeh, those statements would be inadmissible hearsay. The statements at issue do not qualify as statements against penal interest, because they were all made after the declarants had been convicted, and the statements therefore could not have "expose[d] the declarant to . . . criminal liability" within the meaning of Federal Rule of Evidence 804(b)(3)(A). *See Gilmore v. Palestinian Interim Self-Government Auth.*, No. 1-853, 2014 U.S. Dist. LEXIS 102093, at *30, 39 (D.D.C. July 28, 2014) (excluding alleged statements of Abdel Karim Aweis made during an interview conducted in an Israeli prison because "at the time Aweis made the statements, he was already serving multiple life sentences, substantially diminishing the prospect that he would be deterred from making statements that could expose him to further criminal liability."). The statements are not party admissions, because none of these four individuals has ever been a PA or PLO employee.

The video recordings are also largely irrelevant. Most of the statements and images on the videos concern events other than the attacks at issue in this case. For example, in PTE 957, Abdullah Barghouti does not say anything about the Hebrew University bombing other than to answer "no" to the unidentified interviewer's query "that's the cafeteria?" PTE 957 at 09:37. In PTE 925, Abdullah Barghouti does not mention the Hebrew University bombing at all. The only mention of the Hebrew University in PTE 925 is when the narrator claims that a person called "Mohammad Kassam" "detonated a bomb that had been planted inside the Cafeteria at the Hebrew University." In response to a question, "Mohammad Kassam," says "At first I thought that this will not work because it was the first bag they used to use for the *istish-hadi*. But this


bag I thought it will not work. But when I see what's done there, I understand that it's make it work. The same one." PTE 925 at 13:34. It is not clear whether the "Mohammad Kassam" who appears in PTE 925 is the same person as the "Wael Qassam" who Mr. Shaked claims to have interviewed. Ex. 2 ¶ 8. In any event, no evidence regarding the Hebrew University bombing is admissible because Defendants are entitled to summary judgment on those claims, DE 682, but even if that were not the case, none of the statements in PTE 925 or PTE 957 are relevant to any issue in this case.

The statements in DE 372 are also largely irrelevant. The English transcript proffered by the Plaintiffs indicates that Qahira Sa'adi said "I was arrested on May 7th, 2002 and was sentenced to three life terms, plus thirty years. I was accused of driving *istishadiyin* inside Israel and assisting *mujahedeen* and fugitives." Ex. 4 at 22:00. She also answers "Yes" to the question "On King George, right?" *Id.* at 22:59, 23:00. She also states:

> I helped him because I wanted to do everything for my people, my land, my family, for Palestine, for Islam. I wanted to do everything for the sake of my homeland. He asked me to drive him and, praise be to Allah, I drove the *shahid*. His name is Mohammed Hashayka and he is from a village in Nablus. He carried out the attack and, praise be to Allah, it was successful. Three Israelis were killed and 85 were injured as a result of the attack.

*Id.* at 24:09. Sana'a Shehadeh similarly states that she "drove an *isishahdi*" with "Qahira" and that "he was wearing a belt, and when we arrived to the Israeli Jerusalem he detonated himself." *Id.* at 3:02-5:00. These statements are not relevant to any issue in this case. Neither of these declarants was ever a PA employee, so their conduct cannot establish respondeat superior liability, and nothing in these statements demonstrates PA or PLO support for the bombing at issue. Moreover, to the extent the Court admits IMC documents concerning these declarants' convictions, these statements are cumulative of that information and should be excluded under Rule 403 for that reason as well.

The remainder of the interview with Qahira Sa'adi pertains to her background and her personal, political and religious views, none of which are relevant to any issue in this case. *Id.* at 25:25-28:55, 00:00-29:03, 00:00-01:52. The remainder of Sana'a Shehadeh's interview similarly consists of irrelevant statements about her background and her personal, political and religious opinions. *Id.* at 5:35-24:34, 00:17-7:08. PTE 925 and 957 likewise contain a variety of political and religious opinions from Abdullah Barghouti, "Mohammad Kassam," and others. The Court has already ruled that rhetoric of this type will not be admissible at trial, and any probative value it might have would be substantially outweighed by the unfair prejudice to Defendants that would inure from the jury hearing such rhetoric.

Finally, none of these exhibits or witnesses should be allowed because none of them were produced during fact discovery which closed on December 21, 2012. Neither Mr. Shaked nor

 

Mr. Benichou was disclosed as fact witnesses during the fact discovery period. Ex. 5. The exhibits were first produced to Defendants on April 10, 2013 (PTE 925), October 24, 2013 (PTE 372) and March 7, 2014 (PTE 957). Plaintiffs have offered no justification for their late disclosure of these witnesses and videos, and Defendants will obviously be prejudiced by their introduction at trial. Accordingly, these materials should also be excluded pursuant to the prior orders of the Court and Federal Rule of Civil Procedure 37(c). *See* DE 551 at 4-6.

Sincerely,

Brian A. Hill