# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOKOLOW, *ET AL.*,

     *Plaintiffs*,

v.

PALESTINIAN LIBERATION ORGANIZATION, *ET AL.*,

     *Defendants*.

04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RONNI SHAKED

  Pursuant to 28 U.S.C. §1746, I the undersigned, Ronni Shaked, Israeli I.D. No. 04673737, under penalty of perjury according to the laws of the United States and Israel, hereby declare in writing as follows:

  1. My name is Ronni Shaked. Since 1982, I have been working as a commentator and analyst for the Israeli newspaper *Yedioth Ahronoth* where I write about Palestinian affairs, terrorism, and security-related subjects. During the course of my career as a journalist, I have published hundreds of articles in *Yedioth Ahronoth* on the subject of Palestinian affairs and am considered an expert on the subject. I am also a research fellow and doctoral candidate at the Truman Institute of the Hebrew University of Jerusalem, with a focus on the conflict between Israel and Palestine.

  2. Between 1969 and 1982, I worked for the Israel Security Service Agency ("ISA"). I held a number of positions at the ISA, including Commander of the Jerusalem Sector and Commander of the Ramallah Sector.

  3. I submit this declaration in my capacity as a journalist.

4. In my capacity as a journalist with an expertise in the area of Palestinian affairs, I have served as an expert consultant for several documentaries, including: (1) "The Collaborator" (1994), which I also co-produced; (2) "The Engineer of Death" (History Channel, 2003); (3) "The Army of Roses" (French Channel 2, 2003); and (4) "To Die in Jerusalem" (HBO, 2007).

5. In the ordinary course of my work as a journalist with expertise in Palestinian affairs, I have conducted hundreds of interviews of Palestinians.

6. It is my regular practice as a journalist to record these interviews at the time they take place, either by taking written notes or making an audio or video recording of the interview. Further, it is my regular practice as a journalist, that when I return home shortly after conducting an interview and while the information is still fresh in my mind, I take my notes and or audio or visual recordings and edit them into draft articles.

7. In the ordinary course of my work as a journalist, I retain: (1) all original audio or video recordings either on my computer or on CD, organized by date of the interview and name of the interviewee; (2) the majority of my original drafts based on my interview notes either in hard copy in notebooks or electronic copy on my computer, organized by date; and (3) my original handwritten notes for significant interview subjects in hard copy in notebooks, organized by date. I have approximately three hundred notebooks containing interview notes and original draft articles in my home files.

8. In 2006, during the course of my work as a journalist and based on my prior experience as a co-producer of the film "The Collaborator," and as an expert consultant on the other three documentary films referenced in Paragraph 4, I co-produced a documentary film, titled "For the Sake of Allah," concerning the activity of Hamas. In co-producing this documentary, I visited several prisons to conduct recorded film interviews of prisoners, including

Abdullah Barghouti and Wael Qassam, both of whom were convicted for their roles in the Hebrew University bombing on July 31, 2002. I co-produced this film for with Sean Beyer, who supplied the financing for the film and served as its distributor in the United States.

9. In accordance with my regular practices described above, I recorded these interviews on film at the time they were being conducted.

10. In accordance with my regular practices described above and as part of my regularly conducted business as a journalist, I retained a copy of the original, complete and unedited raw footage of the film, consisting of some 50-60 hours and the final edited version of the film titled "For the Sake of Allah" on CDs in my home files. The CDs of the complete and unedited raw footage of the film are organized by the name of the interviewee and the date and time of the interview.

11. I emphasize that for the sake of my professional credibility as a journalist and as an expert in Palestinian affairs, maintaining the accuracy of the portrayals of my interview subjects is crucial. Therefore, when editing the raw footage of my films to reach the final product, I am careful to ensure that the words and messages of my interview subjects are preserved in the original language and in any translations or subtitles.

12. A true, accurate, and authentic copy of the final version of the documentary "For the Sake of Allah" is reproduced on the accompanying DVD as Plaintiffs' Trial Exhibit 925.

13. In connection with the production of the aforementioned documentary film "For the Sake of Allah," in 2006, I met with and interviewed Abdullah Barghouti at Be'er Sheva Prison.

14. In accordance with my regular practices described above, I recorded that interview on film at the time it was conducted.

3

DRAFT - 06/17/14

15. In accordance with my regular practices described above and as part of my regularly conducted business as a journalist, I retained a copy of the original, complete and unedited raw footage of my interview with Abdullah Barghouti at Be'er Sheeva Prison on CD in my files, organized by the name of the interviewee and the date and time of the interview.

16. A true, accurate, and authentic copy of the original, complete and unedited raw footage from this interview is reproduced on the accompanying DVD as Plaintiffs' Trial Exhibit 957.

17. My name and signature appear below. I declare under penalty of perjury under the laws of the United States of America that that the foregoing is true and correct.

Dated: Dec. 25 2014

_R. Sh_
RONNI SHAKED

I affirm that on December 25, 2014, appeared before me, _Anat Hazut_, Attorney License Number _51453_, Ronni Shaked, Israeli I.D. No. 04673737 and after I warned him that he is obligated to state the truth and that he will face penalties set by law should he fail to do so, he confirmed the truth of his declaration herein and signed before me.

_Anat Hazut_
Attorney

ענת חזות, עו"ד
מ.ר. 51453
Stamp

4