

Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com
January 2, 2015

**VIA ECF**
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Sokolow v. Palestine Liberation Organization et al.*, 04-cv-397 (GBD) (RLE)

Dear Judge Daniels:

I write in response to Plaintiffs' letter, dated December 30, 2014, requesting admission of thirty-one trial exhibits described broadly as (1) United States government reports and/or public records; and (2) Israeli government reports and/or public records. DE 693.

The Court should exclude all of the proffered exhibits. Many of them have not been properly authenticated. None of this evidence is relevant to whether it is more probable than not that either the PA or the PLO was responsible for any of the attacks at issue. Even assuming *arguendo* the exhibits are relevant, any minimally probative value is substantially outweighed by prejudice to Defendants. Furthermore, the exhibits constitute inadmissible hearsay and do not fall within the Rule 803(8) hearsay exception that Plaintiffs rely upon. Finally, Plaintiffs failed to timely disclose many of the exhibits, including proffered expert witness opinions. Admitting such documents clearly would prejudice Defendants at trial.

1. Many of the Exhibits Have Not Been Properly Authenticated

The proffered exhibits have not been properly authenticated and are inadmissible on that basis alone. "The requirement of authentication is . . . a condition precedent to admitting evidence." *United States v. Sliker*, 751 F.2d 477, 497 (2d Cir. 1984).

***First***, Plaintiffs seek to admit numerous printouts from websites without any supporting affidavit or witness testimony regarding authenticity. Courts have recognized that printouts from websites "do not bear the indicia of reliability" to be considered self-authenticating under Federal Rule of Evidence 902. *In re Homestore.com, Inc. Secs. Litig.*, 347 F. Supp. 2d 769, 782 (C.D.C.A. 2004); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007); *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000). In order for a website printout to be authenticated, courts require a statement or affidavit from a person with knowledge. *Id.* The Second Circuit recently found that a district court abused its discretion by admitting a web page

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com

1535558.1

**MILLER CHEVALIER**

printout because it was not self-authenticating and lacked a sufficient proffer of authenticity. *United States v. Vayner*, 769 F.3d 125, 131 (2d Cir. 2014). Like in *Vayner*, Plaintiffs seek to admit printouts from websites without any supporting affidavit or testimony. (*See* PTE 337, 339, 353, 354, 365, 539, 547, 554, 559, 632, 1109, & 1118). These exhibits purport to be printouts from Israeli government agencies, but lack the required "indicia of reliability" to be self-authenticating. Accordingly, they should be excluded from trial.

*Second*, Plaintiffs proffer numerous purported Israeli government reports that fail to meet the self-authentication requirements for foreign public documents under Federal Rule of Evidence 902(3). (*See* PTE 626, 631, 826[1], 829, 830, 325, 338, 473-77, & 1125). Under Rule 902(3), a foreign public document is defined as "a document that purports to be signed or attested by a person who is authorized by a foreign country's law to do so." Fed. R. Evid. 902(3). Such documents must be "accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester — or of any foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation." *Id.* Strict rules govern how and where the certification may be made. *See id.*; *see also United States v. Nouira*, No. 06-cr-135 (JBW), 2006 WL 2417245, at *3 (S.D.N.Y. Aug. 21, 2006) (certification by a Casablanca judge, not an authorized official designated under Rule 902(3), was insufficient). A foreign document lacking proper certification may only be admitted if all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy and upon a showing of good cause. Fed. R. Evid. 902(3). Declining to provide a reason for failing to obtain a certification alone may be reason to exclude a purported foreign public record. *See United States v. Yousef*, 175 F.R.D. 192, 194 (S.D.N.Y. 1997) (excluding foreign public documents that lacked certification absent an explanation from the offering party).

None of the reports purportedly prepared by the Israeli Ministry of Foreign Affairs, Israeli Defense Forces, or Israel Security Agency is signed by an authorized Israeli official, and none is accompanied by the required certification of genuineness. Indeed, some lack a government seal or any indication that the Israeli government prepared the reports at all. (PTE 623, 826, 829, 803, 954). Furthermore, none of the purported investigation reports of Israeli police and ministry of health officials includes such a certification. (PTE 325, 338, 473-77, 1125). As such, these exhibits lack the required indicia of reliability to be self-authenticating under Rule 902(3). Nor can the Plaintiffs show good cause for failing to provide the required certifications under Rule 902(3). Accordingly, they must be excluded.

2. <u>The Exhibits Are Irrelevant, and Any Minimal Probative Value is Strongly Outweighed by Significant Prejudice to Defendants</u>

The proffered evidence is also irrelevant and therefore inadmissible. The Federal Rules of Evidence bar admission of irrelevant evidence. Fed. R. Evid. 402 ("Irrelevant evidence is not

---

[1] This document also is inadmissible because it is at least two documents with two cover pages and two different pages numbered 15.

**MILLER CHEVALIER**

admissible."). Evidence is "relevant" only if it has "any tendency to make a fact more or less probable than it would be without the evidence," and if "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003) (holding that evidence should be admitted as relevant only "if it makes a proposition more probable than not") (internal quotation marks omitted).

None of the proffered exhibits are relevant to any issue in this case. The Court's order on summary judgment does not permit the Plaintiffs to prove ATA liability by showing that Defendants generally supported terrorism. *See* DE 646 at 8-20. In addition, the Court has made clear that the Plaintiffs must establish that Defendants' actions were the "but for" and "proximate cause" of Plaintiffs' injuries. *See id.* at 7 ("The ATA specifically requires that the harm to Plaintiffs occur *by reason of* an at of international terrorism, which has been interpreted to 'require something more than "but for" causation.'"); *id.* at 8 ("This Court rejects the contention that *any* reckless contribution to a terrorist group or its affiliate, no matter how attenuated, will result in civil liability, without the demonstration of a proximate causal relationship to the plaintiff's injury.'") (citations omitted).

Plaintiffs seek to introduce two categories of U.S. government reports that do not describe the events that allegedly injured Plaintiffs: (1) "PLOCCA" reports describing the PA's and PLO's compliance with general commitments regarding the peace process (PTE 496, 634, 635, 1142); and (2) a United States government notice designating the "Al-Aqsa Martyrs Brigade" as a foreign terrorist organization (PTE 537). The first four reports, PTE 496, 634, 635, and 1142 are not relevant to any fact of consequence in determining this action. The Court has held that "[t]he ultimate question as to Plaintiffs ATA claim is whether a reasonable jury could find that Defendants, acting with the requisite scienter, committed predicate crimes which proximately caused injuries to American citizens, either vicariously through the acts of their employees or directly through their own actions." DE 646 at 8. None of these PLOCCA reports contain any information about any of the attacks at issue that would demonstrate PA or PLO liability for those torts. Indeed, one of the PLOCCA reports, PTE 634, pertains to a time period (June 16, 2001 –December 15, 2001) when none of the attacks at issue took place. PTE 537 is also not relevant. While that designation is a necessary predicate to Plaintiffs' theory that the PA or PLO violated 18 U.S.C. § 2339B, Defendants can only be liable under § 2339B if they provided material support to AAMB after the date of the designation on March 27, 2002, DE 646 at 19 n. 17, and there is no admissible evidence that either the PA or the PLO provided weapons or funds to AAMB after that date, or that any such support was a "but for" or proximate cause of any of the Plaintiff's injuries, *see, e.g.*, DE 682 at 13-15.

Plaintiffs also seek to admit purported Israeli government reports of investigations regarding terrorism (PTE 337, 339, 353, 354, 365, 539, 547, 554, 559, 626, 631-32, 826, 839-30, 954, 1109, 1118). Most of these are likewise irrelevant in that they do not pertain to any of the attacks at issue. Others do mention the purported perpetrators, but are not relevant because they do not mention employees or material support (PTE 337), or are inadmissible because they contain multiple layers of hearsay and speculation, (PTE 339, 353, 354, 365). *See also* DE 554 at 10-11. The only category of purported government reports that has any direct relationship to the incidents at issue consists of Israeli police and ministry of health forensic or crime scene

MILLER
CHEVALIER

reports (PTE 325, 338, 473-77, 1125 ).  However, these reports relate to the crime scenes and deaths of the alleged perpetrators, not injuries to the Plaintiffs.  None of this evidence makes it more probable than not that either the PA or the PLO was responsible for any of the attacks at issue.  Moreover, to the extent the evidence pertains to the January 27, June 19 or July 31, 2002 bombings, it is irrelevant because Defendants are entitled to summary judgment on those events. DE 682.  These documents are therefore irrelevant and should be excluded.

To the extent any of the proffered exhibits do relate to the events that injured Plaintiffs, any minimal probative value would be substantially outweighed by unfair prejudice to Defendants.  Fed. R. Evid. 403.  The Second Circuit has held that relevant evidence is prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (emphasis added).  Provided that the district court "has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational."  *United States v. Al-Moayad*, 545 F.3d 139, 159-60 (2d Cir. 2008) (quotation marks omitted).  "To avoid acting arbitrarily, the district court must make a conscientious assessment of whether unfair prejudice substantially outweighs probative value."  *Id.* at 160 (quotation marks omitted).

Any minimal probative value the proffered exhibits might have is more than outweighed by the danger of unfair prejudice to the Defendants, confusing the issues, misleading the jury, and undue delay.  *See* Fed. R. Evid. 403.  Evidence of the PLO's or PA's alleged involvement in terrorism generally, unrelated to the specific incidents at issue, would only create jury confusion and unfairly excite jurors' emotions against Defendants.  (PTE 496, 634, 635, 1142, 537, 337, 339, 353, 354, 365, 539, 547, 554, 559, 626, 631, 632, 826, 829, 830, 954, 1109, & 1118). Furthermore, introducing such exhibits would bog down the Court with unnecessary, irrelevant evidence and create undue delay.

Likewise, Israeli police and ministry of health reports purporting to investigate the aftermath of the shootings and bombings would unfairly prejudice Defendants.  (PTE 325, 338, 473-77, & 1125).  These exhibits contain gory photographs of the alleged perpetrators, and graphic descriptions of the crime scenes.[2]  They would only inflame and mislead the jury, as they have no probative value to the issue they must decide:  whether the Defendants can be found "vicariously liable under a theory of respondeat superior for the criminal activities of their employees during the scope of their employment," or for purported "direct violations of [the ATA] by providing material support and resources to the terrorist groups behind the attacks." DE 646 at 6-7.

Finally, admission of these exhibits would unfairly prejudice the Defendants because the purported Israeli government reports present a skewed, incomplete picture of the events at issue. Early in the case, the Court issued letter of requests for international assistance pursuant to the

---

[2] Defendants also object to these exhibits for the reasons stated in their December 31, 2014 letter to the Court (DE 695).

Hague Convention asking the Israeli government to produce documents related to the events in this case. (*See e.g.*, DE 149). The Israeli government produced nothing in response. Plaintiffs should not now be permitted to cherry-pick and introduce certain purported Israeli government documents, many of which have been printed off the internet, to present a biased story of the attacks at issue, when neither Defendants nor the Court will have the benefit of seeing all of the Israeli government's files. Thus, the proffered exhibits are inadmissible on relevance and prejudice grounds.

3. <u>The Exhibits Are Inadmissible Hearsay</u>

None of the exhibits fall within a hearsay exception that would warrant their admission. Plaintiffs appear to assert that the purported United States and Israeli government reports fall within the hearsay exception under Federal Rule of Evidence 803(8)(iii). Under that rule, a record or statement of a public office is a hearsay exception if: (A) in a civil case, it sets out factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness. Fed. R. Evid. 803(8)(iii). The offering party must establish that the evidence (1) contains factual findings and (2) is based upon an investigation made pursuant to legal authority. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000); *Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998) ("[R]eports which do not contain factual findings resulting from a factual investigation are not covered by Fed. R. Evid. 803(8)[] and its presumption of trustworthiness.") (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1998)). The burden then shifts to the opposing party to show a lack of trustworthiness. *Bridgeway Corp.*, 201 F.3d at 143.

The Plaintiffs rely almost exclusively on *Bridgeway* for almost all the documents in question. However, that case cannot bear the weight the Plaintiffs give it. That case dealt with a particular set of State Department Country Reports in a substantially different context. As discussed below, it cannot even support admission of the State Department reports at issue here, and it certainly cannot support the admission of the other exhibits in question.

The Second Circuit has rejected admissibility of purported government reports not based on independent investigation or that merely repeat conclusions of third parties. *See New York v. Pullman, Inc.*, 662 F.2d 910, 915 (2d Cir 1981) (rejecting a report of the Urban Mass Transit Administration ("UMTA") because the "findings" were not based on independent testing by the UMTA, tests verified by UMTA, or the subject of formal administrative hearings); *United States v. Banky-Alli*, 2005 U.S. App. LEXIS 25427 (2d Cir. Nov. 22, 2005) (excluding a consular memorandum from the American Consulate in Lagos because it drew its conclusion from a third party document); *In Re September 11 Litig.*, 621 F. Supp. 2d 131, 156-57 (S.D.N.Y. 2009) (rejecting portions of the September 11 Commission's Report not based on first-hand witness interviews or that were derived from questionable investigative techniques).

Furthermore, reports that merely make evaluative conclusions or value-based judgments, rather than findings of fact, may be treated as expert testimony and subjected to the qualifications requirements under Rule 702. *See In Re September 11 Litig.*, 621 F. Supp. 2d at 154-55 (citing Note, *The Trustworthiness of Govt. Evaluative Repts. Under Federal Rule of Evid. 803(8)(C)*, 96 Harv. L. Rev. 492, 493 (1982) ("[I]n civil cases[,] government evaluative

MILLER
CHEVALIER

reports should be treated like expert testimony and thus should be excluded only when the agency or the official who produced the report could not have independently qualified as an expert")); *see also* Fed. R. Evid. 803 Advisory Committee Notes ("evaluative" reports and conclusions constitute the "more controversial area of public records"). Finally, documents that merely summarize information and do not make findings of fact are not admissible under Rule 803(8). *See Ariza*, 139 F.3d at 134 (excluding a report summarizing the attitudes and perceptions of police officers).

Even if a government report does constitute "fact finding" pursuant to a legally authorized investigation, it is inadmissible if it lacks trustworthiness. *Ariza*, 139 F.3d at 134. Courts weigh trustworthiness by examining the investigation's timeliness, the officials' skills and experience, whether a hearing was held, and possible investigative bias, among others. *See In Re September 11 Litig.*, 621 F. Supp. 2d at 156; *see also* Fed. R. Evid. 803(8) Advisory Committee Note. Public reports generally lack trustworthiness where they fail to disclose the sources of the information contained in the report, identity of authors, or methodology used. *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 571 (E.D.N.Y. 2012) (finding purported Israeli Security Agency reports inadmissible under Rule 803(8) because they described "information of uncertain provenance," and the author was unavailable for cross-examination); *Gilmore v. Palestinian Interim Self-Govt. Auth.*, Civil Action No. 1-853 (GK), 2014 WL 3719160, at *8 (D. D.C. July 28, 2014) (rejecting admissibility of purported Israeli Ministry of Foreign Affairs reports where the plaintiffs "have not provided one iota of information as to how the material in the IMFA web pages was compiled" or identity of the alleged Israeli Defense Forces spokesperson listed on the website); *United States v. El-Mezain*, 664 F.3d 467, 497-507 (5th Cir. 2011) (rejecting admissibility of purported government reports absent information regarding where or how the declarants obtained the information, the circumstances surrounding the document's creation, the duty of the authors to prepare the report, or the methodology used to reach the conclusions). Reports that are not final also lack trustworthiness. *See Pullman, Inc.*, 662 F.2d at 914 (excluding report because "[b]y its own terms, [it] was not the final report or finding of a government agency within the meaning of the Rule, but was an 'interim' staff report in the form of a recommendation to the Administrator").

Plaintiffs have failed to meet the burden of showing that the purported government reports contain factual findings based on a legally authorized investigation. *First*, the purported United States government reports Plaintiffs proffer consist of (1) periodic State Department reports to Congress describing the PLO's and PA's compliance with certain international commitments and (2) a State Department notice designating the Al-Aqsa Martyrs Brigade a terrorist organization. These documents contain evaluative, opinion-based conclusions mandated by statute or executive order, not findings of fact made pursuant to a legally authorized investigation. *See, e.g.*, PTE 496 at 4 (the PLO "did not abide in a consistent or effective manner by its commitment to 'call on Palestinians to refrain from violence.'"); 537 ("has committed, or poses a serious risk of committing, acts of violence that have the purpose or effect of disrupting the Middle East Peace Process"). There is no indication from the documents that State Department officials conducted independent investigations or sought to verify the results of other investigations. *See Pullman, Inc.*, 662 F.2d at 915. Nor do the reports describe any collection or analysis of evidence or interviews of witnesses. *See In Re September 11 Litig.*, 621 F. Supp. 2d at 156-57.

***Second***, the vast majority of the purported Israeli government reports do not qualify as reports of fact-finding. These questionable exhibits generally include: (1) press releases and a power point presentation describing the occurrence of terrorist attacks, alleged Palestinian support for terrorist attacks, and the Israeli government actions in response to terrorist attacks (PTE 337, 339, 353, 354, 365, 559, 954, 1109, 1118); (2) summaries of terrorism data and trends (PTE 547, 554, 632); (3) summaries of documents allegedly collected by the Israeli Defense Forces during military operations (PTE 539, 626, 631, 826, 829, 830); and (4) photos of deceased bodies and crime scenes with no written analysis (PTE 473-76, 1125). None of these documents report factual findings based on a legally authorized investigation. *See Pullman, Inc.*, 662 F.2d at 915. They merely summarize third party information without making findings of fact. *See Ariza*, 139 F.3d at 134. Accordingly, the proffered exhibits do not meet the definition of "fact-finding" and must be excluded.

Even if the proffered documents do constitute "fact-finding" pursuant to a legally authorized investigation, they lack trustworthiness sufficient to be admissible. Plaintiffs rely upon *Bridgeway* to argue that the purported State Department documents are admissible. (DE 693 at 4). However, the State Department reports analyzed in *Bridgeway* are distinguishable. In *Bridgeway*, the country reports on Liberia identified the methodology used to prepare the reports and the State Department offices involved in a detailed preface to the reports. (*See, e.g.,* 1996 Country Report on Human Rights Practices for Liberia, available at: http://www.state.gov/www/global/human_rights/1996_hrp_report/preface.html). The court in *Bridgeway* found no reason to question the reports' trustworthiness on this basis. *See Bridgeway,* 201 F.3d at 143-44. The State Department reports Plaintiffs seek to admit here contain no information regarding the methodology used, sources of information collected, or officials involved in preparing the report. They lack any indicia of trustworthiness and should be excluded. Furthermore, unlike in *Bridgeway* the State Department reports opining on the Liberian government's human rights record arguably were relevant to the core issue of whether Liberia's courts were, as a matter of law, unlikely to render impartial justice. The State Department reports here are irrelevant and inadmissible, as explained above in Section 2.

Most of the purported Israeli government reports fail to indicate the report's author, the methodology used to conduct the investigation, timing of the investigation, or source of the information collected, and are therefore inadmissible. *See* PTE 337, 339, 353, 354, 365, 474-76, 539, 547, 554[3], 559, 626, 631, 632, 826, 829, 830, 954, 1109, & 1118. Just as in *Gill* and *Gilmore*, Plaintiffs have not provided "one iota" of information regarding how the purported Israeli government reports were prepared. *Gilmore*, 2014 WL 3719160, at *8; *Gill*, 893 F. Supp. 2d at 571. Defendants – and this Court– cannot evaluate the trustworthiness of these documents, or the skill and motives of their authors – absent this information.

Furthermore, several of the purported Israeli government reports admittedly were made based on incomplete evidence and therefore should be excluded. *See* PTE 539 at 3 ("IDF captured numerous documents (*only some of which have so far been examined*)"); PTE 539 at 4

---

[3] This document is only partially translated, making it further impossible to assess the validity and trustworthiness of the purported report.


("*initial* information has been obtained from the questioning of terrorists arrested during the operation"); PTE 626 at 4 (noting that only of a few of the documents collected had been thoroughly examined so far); *see also See Pullman, Inc.*, 662 F.2d at 914 (finding incomplete report inadmissible.).

Finally, the purported Israeli government reports lack trustworthiness because they were not prepared by an independent and neutral fact-finder. Israeli officials allegedly prepared these reports investigating terrorist attacks by Palestinians while simultaneously engaged in a military conflict. Examining just one of the proffered reports shows that the Israeli government did not investigate these events through a neutral lens. PTE 539 states "ALL ALLEGATIONS MADE IN THIS REPORT ARE THROUGH ISRAELI INTELLIGENCE AS A RESULT OF THE ISRAELI CAMPAIGN TO ERADICATE THE SOURCES OF TERROR IN THE AREA UNDER THE CONTROL OF THE PALESTIAN AUTHORITY." PTE 539 at 2 (emphasis added). In light of the likely investigative bias of these reports' authors, the purported Israeli government reports should be excluded. *See In Re September 11 Litig.*, 621 F. Supp. 2d at 156. Accordingly, because the Plaintiffs have not laid the proper foundation for the admission of these documents pursuant to Federal Rule of Evidence 803(8)(A)(iii), they must be excluded from evidence.

4. <u>Expert Opinions Were Not Timely Disclosed</u>

Plaintiffs now seek to introduce six purported expert reports without having previously disclosed the authors as testifying experts to the Defendants as required under Federal Rule of Civil Procedure 26(a)(2) and the Court's scheduling order.

Rule 26 requires parties to disclose the identity of expert witnesses whose testimony will be offered at trial. *See Williams v. County of Orange*, No. 03 Civ. 5182(LMS), 2005 WL 60001507 at *2 (S.D.N.Y. Dec. 13, 2005); Fed. R. Civ. P. 26(a)(2). A party who, without substantial justification, fails to disclose an expert witness by the required deadline, "is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed" under Rule 37(c)(1). *Williams*, 2005 WL 6001507 at *3. Under Rule 37(c)(1), exclusion of undisclosed information is automatic unless the non-disclosing party meets its burden of showing substantial justification for the non-disclosure or that the non-disclosure was harmless. *Atkins v. County of Orange*, 372, F. Supp. 2d 377, 395 (S.D.N.Y. 2005). In order for a non-disclosing party to be substantially justified in failing to disclose an expert, such justification must be "to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Norbrook Labs. Ltd. V. G.C. Hanford Manuf. Co.*, 297 F. Supp. 2d 463, 481 (citations omitted). Failure to comply with the disclosure requirements is considered harmless if the party entitled to the disclosure is not prejudiced. *Id.*

This Court's scheduling order as amended required Plaintiffs to disclose their experts and any expert reports in the spring of 2013. Now, a year-and-a-half after the Court-imposed deadline, and days from trial, Plaintiffs seek the admission of six purported expert witness opinions of Israeli ministry of health and police officials. PTE 338, 473-77. Plaintiffs have offered no excuse for their failure to meet both the Court's and the Federal Rules' deadlines.


Furthermore, Defendants would be substantially prejudiced if the Court were to admit these statements. Because Plaintiffs did not disclose these declarants as testifying experts, Defendants have had no opportunity to confront these purported witnesses through a deposition, prepare rebuttal reports in opposition, or cross-examine the witnesses at trial. Plaintiffs have failed to meet their burden of substantial justification, and thus the reports must be excluded under Rule 37(c)(1). *See Atkins*, 372 F. Supp. 2d at 395-96 (exclusion is automatic where non-disclosing party fails to show substantial justification or that non-disclosure was harmless).

Moreover, a number of the reports contain what are in the nature of expert opinions such as conclusions about the meaning of allegedly seized documents or the Defendants' alleged support for particular groups or individuals. To the extent such opinions are contained in the exhibits at issue, they are not factual findings and must be redacted from any exhibit shown to the jury in any event.

5.   Most of the Exhibits Were Not Produced During Fact Discovery

Finally, most of the proffered exhibits should be excluded because Plaintiffs did not produce them during the fact discovery period. Fact discovery closed on December 21, 2012. DE 131. As reflected in Appendix A, the majority of the documents — 22 of 31 — were not disclosed to the Defendants until well after discovery had closed. Two were not produced until just days ago — more than two years after discovery closed. And there is no witness (or at least not any witness disclosed during fact discovery) who can lay a foundation for the admission of any of these materials. Plaintiffs disclosed "experts" also cannot lay the foundation for the admission of these exhibits because they played no role in their preparation. Plaintiffs should therefore be barred from presenting all of those exhibits that were disclosed after the discovery cut-off. During fact discovery, Magistrate Judge Ellis repeatedly told the parties that if documents were not produced during fact discovery, they would not be allowed at trial. *See* DE 551 at 4-6. Plaintiffs have offered no justification for their late production of these materials, and Defendants will obviously be prejudiced by their introduction at trial. Accordingly, these materials should also be excluded pursuant to the prior orders of the Court and Federal Rule of Civil Procedure 37(c).

Sincerely,

Brian A. Hill