**ARNOLD & PORTER LLP**

Kent A. Yalowitz

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

January 4, 2015

**VIA ECF AND HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

>    Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
>          Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

     I write in response to defendants' letter of January 2, 2015, requesting that the Court exclude *all* evidence concerning post-attack "prisoner" payments and "martyr" payments to non-employees.  DE 701.

     The evidence defendants seek to exclude is that defendants had, and maintain, a policy of putting accused terrorists on their payroll upon arrest and keeping them on their payroll following conviction.  This policy is reflected in the "Palestinian Law for Prisoners and Released Prisoners" (Trial Ex. 512), and defendants' implementation of this policy is reflected in the many trial exhibits detailing payments to individuals convicted of the attacks in this case.  The evidence is also that defendants had, and continue to have, a policy of paying the families of suicide terrorists.  This policy and its implementation is reflected in defendants' own "Martyr files" and "Martyr payment records."  These policies will be the subject of expert testimony.

     This evidence is highly relevant to plaintiffs' claims of vicarious liability and material support.

**Vicarious Liability**

     Pursuant to the policies described above, defendants paid, and continue to pay, many of the perpetrators of the terror attacks on plaintiffs.  Such a substantial policy and practice of payments to *anyone* who engaged in terrorism is obviously "relevant circumstantial evidence" that the employees who perpetrated the attacks were acting within the scope of their employment—as this Court has already held.  DE 646 at 11 n.11.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 2

Moreover, defendants' policy of putting arrested terrorists on the payroll was widely publicized—by them.  For example, the Ministry of Prisoners announced that it "provides a monthly salary to the families of all prisoners held in Israeli detention facilities from the Palestinian National Authority.  These salaries are paid to all prisoners, without any exception or distinction, as they are considered soldiers in this nation."  Trial Ex. 212 at P 1: 3820.

The jury is entitled to conclude that putting *all* terrorists—whether or not they were employed by defendants—on the payroll sends a clear message to employees that they can and should engage in terror attacks and that such conduct will not have adverse employment consequences.  Even isolated tortious acts by employees "can be the basis of liability if 'they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage' of which supervisors must have been aware."  *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. Feb. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012)); *see Disorbo v. Hoy*, 74 F. App'x 101, 104 (2d Cir. 2003) (affirming jury verdict because city's inadequate discipline of officers involved in police brutality, as well as subsequent promotion of those officers, constituted "ample basis for finding municipal liability").[1]

Payments to non-employees or their families also confirm that defendants' employees who conspired with those non-employees were acting within the scope of their employments.  For example, as the Court's decision denying summary judgment notes, plaintiffs allege that the suicide bomber Wafa Idris, a non-employee who detonated the bomb that injured the Sokolow family, conspired with Abu Talal, a lieutenant in the PA's Military Intelligence Unit.  *Sokolow v. PLO*, 2014 WL 6601023, at *6 (S.D.N.Y. Nov. 19, 2014).  The fact that the PLO and PA paid Idris' family in accordance with their universal policies supports plaintiffs' assertion that Abu Talal was acting within the scope of his employment when he organized the attack.

---

[1] *Accord Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy"); *Collins v. City of New York*, 923 F. Supp. 2d 462, 477-78 (E.D.N.Y. 2013) ("a policymaker's response to constitutional violations can support an inference that the violation conformed to preexisting policy," as well as indicate that subordinates were "effectively encourage[d]" to engage in the wrongful conduct at issue).

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 3

**Material Support**

Payments to non-employees are also strong evidence with respect to plaintiffs' material support claims under 2339A and similar state laws such as NY Penal L. 490.10. A reasonable jury could conclude that defendants (a) created an unequivocal "no questions asked" policy of paying people who commit terrorist crimes, (b) publicized that policy for the purpose of inducing non-employees to commit such crimes, and (c) implemented the policy without exception. A jury is entitled to conclude that this conduct constitutes material support of the crime and that it establishes the requisite state of mind for a material support claim.

Contrary to defendants' argument, a jury could reasonably conclude that post-crime payments made to criminals pursuant to a pre-established, well-publicized policy *did* constitute a substantial contributing factor to the crime. After all, people are paid for services rendered after the fact all the time. Indeed, the recent *Arab Bank* trial proceeded on a theory involving post-attack payments to terrorists pursuant to a pre-existing policy, and the jury found in favor of plaintiffs in all 24 attacks at issue in that trial.

The policies reflected by the evidence of post-attack payments also support a finding that the payors have the requisite state of mind. An example illustrates this. As the Court explained in its decision denying summary judgment, plaintiffs allege that Hamas bomber Abdullah Barghouti—who made the bomb that was used in the Hebrew University bombing—received a mobile phone while being held in a PA prison for another bombing, was released from custody after only three weeks, and thereafter received money, weapons, another mobile phone, bomb-making equipment, and a safe house from representatives of the PA. The fact that defendants made payments to Abdullah Barghouti's family *after* he was arrested and convicted for the Hebrew University bombing is evidence that defendants intended for him to carry out additional attacks when they provided him with material support *before* the attack. A jury could conclude that it was a payment for services defendants *intended* for him to render.

\*   \*   \*

For the reasons set forth above, the post-attack payments are relevant, not only as circumstantial evidence of vicarious liability under the Court's summary judgment decision, but also to prove material support of the specific crimes at issue.

ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 4

                                                 Respectfully,

                                               Kent A. Yalowitz

cc:    All ECF Counsel