**ARNOLD & PORTER** LLP

Kent A. Yalowitz

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

January 4, 2015

<u>**VIA ECF AND HAND DELIVERY**</u>

Hon. George B. Daniels
United States District Judge
United States District Court
   for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

> Re:   *Sokolow, et al. v. Palestine Liberation Organization, et al.* <u>Docket No. 04-CV-397 (GBD)(RLE)</u>

Dear Judge Daniels:

I write in response to defendants' letter of December 31, 2014, arguing that plaintiffs should not be allowed to (1) present photographic and eyewitness evidence of the terrorist attacks at issue in this case, or (2) introduce photographs of the perpetrators who committed the attacks. DE 695.

The photographs and eyewitness testimony of the attacks are highly probative of disputed issues and should be admitted into evidence. Moreover, plaintiffs should be permitted to use photographs of the perpetrators and other individuals affiliated with the defendants as demonstrative aids or evidence at trial because such uses will assist the jury in differentiating among the many individuals with foreign names who are relevant to this case.

**1.    Photographs of the Attacks and Eyewitness Testimony Should Be Permitted.**

The photographs collected by plaintiffs from public sources of the aftermath of the attacks in this case—as well as eyewitness testimony describing attacks at which no plaintiff survived—go directly to the elements of plaintiffs' claims and are not unduly prejudicial to the defendants. When graphic and potentially upsetting evidence is relevant to a plaintiff's case, it should not be excluded simply because it may have a tendency to excite the jury. *United States v. Salameh*, 152 F.3d 88, 122-23 (2d Cir. 1998) (stating that "[p]robative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact" and upholding admission at trial of photographs of, and testimony regarding, the aftermath of 1993 World Trade Center bombing); *United States*

ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 2

*v. Velazquez*, 246 F.3d 204, 210-211 (2d Cir. 2001) (upholding the introduction of autopsy photos revealing extent of victim's injuries).

Here, eyewitness testimony describing the attacks that killed family members of five of the plaintiff families in this case—the Hebrew University bombing on July 31, 2002 and the Number 19 bus bombing on January 29, 2004—along with the testimony of family members that their loved ones died in those attacks, is particularly appropriate because defendants *actually contest these facts*. *See, e.g.*, Defs.' Rule 56.1 Stmt. (DE 497-1) ¶ 369 ("There is no admissible evidence that Diane Carter was killed in an explosion at the Hebrew University in Jerusalem on July 31, 2002."); *accord* ¶¶ 360 (Janis Coulter); 376 (Benjamin Blutstein); 382 (David Gritz); 474 (Scott Goldberg). It is par for the course that defendants would contest these facts and then insist that the evidence to prove them is not relevant.

Moreover, the photographs showing the aftermath of the attacks, and the eyewitness testimony describing the attacks in which plaintiffs' family members died, are relevant to show that plaintiffs' family members were killed in *terrorist* attacks, as defined by the Anti-Terrorism Act ("ATA"), as opposed to more routine acts of violence. The ATA requires that predicate offenses "appear to be intended to intimidate or coerce a civilian population" or "to influence the policy of a government by intimidation or coercion." 18 U.S.C. §2331(1)(B)(i),(ii). Terrorists coerce civilians and governments by engaging in shocking, public displays of violence.[1] The photographs and the eyewitness testimony capture the profoundly shocking nature of the terrorist attacks at issue in this case.

Finally, in many cases, the photographs go directly to plaintiffs' damages. For plaintiffs who survived the attacks, these images illustrate for the jury the magnitude of the ordeal they experienced. Rena Sokolow, for example, saw firsthand some of the "gruesome" images that defendants take such offense to in their December 31 letter. Plaintiffs are entitled to show the jury what she had to endure when a suicide bomber, sent by defendants' employees, blew herself up in front of her, her husband, and two of

---

[1] It is at least partially this desire to shock the public that continues to drive terrorist groups to brutal violence. *See* McCoy, Terrance "ISIS, beheadings and the success of horrifying violence," WASHINGTON POST, June 13, 2014, http://www.washingtonpost.com/news/morning-mix/wp/2014/06/13/isis-beheadings-and-the-success-of-horrifying-violence/.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 3

her young children.  How else would the jury be able to assess the damages of someone who had to live through those images?  This is true for every plaintiff who was injured during one of the terrorist attacks at issue in this case―many of whom continue to relive the horrific terrorist acts that they survived to the present day through nightmares and flashbacks.

As for the family members of those who were killed in the Hebrew University and Number 19 bus attacks, some of them saw the body bags and graphic images of the aftermaths of those attacks.  For example, Bob Coulter, Sr. (Janis Coulter's father) and Katherine Baker (Benjamin Blutstein's mother) saw these images on the news while they waited for news of whether their children had survived.  Nevenka Gritz, the mother of David Gritz, also viewed news coverage of the bombing, as well as had to endure the terrible pain of identifying a photograph of her deceased son in an article in a newspaper that she just happened to come across on her flight back to France.  Finally, some of Scott Goldberg's children―who were very young at the time―saw similar images from the Number 19 bus bombing.  These images are highly probative of the magnitude of plaintiffs' pain and suffering, and, in particular, their contribution to plaintiffs' post-traumatic stress.  It is no wonder defendants want to keep them from the jury.

Because the photographs and eyewitness testimony are directly "relevant to the resolution of…disputed point[s] in [the] trial" and will "aid the jury in a factual determination," they should be admitted into evidence.  *See United States v. Salim*, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002); Fed. R. Evid. 401 (evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence").

2.      **Photographs of Perpetrators and PA/PLO Employees Should Be Permitted.**

Plaintiffs collected and provided photographs of the perpetrators and other PA/PLO officials from public sources (and provided copies to defendants) because plaintiffs intend to use those photographs during trial to help the jury keep track of the various perpetrators and players.

The photographs of the perpetrators and PA/PLO officials ―many of whom have Arabic names that will not be familiar to members of the jury―are necessary to assist the jury in differentiating among the many different people involved in the attacks.  Indeed, in their motion to sever, defendants made hay of the similarity of the names Nasser Aweis and Nasser Shawish, and expressed concern that "the jury will not be able to rely on in-court observations of [the perpetrators'] faces…or any other characteristics" in

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 4

order to "keep straight which perpetrators allegedly committed which attack." Defs.' Mot. for Separate Trials at 6-7 (DE 561). These photographs thus address defendants' very concern. The following photographs illustrate this point:

  

**Nasser Aweis**          **Nasser Shawish**

Moreover, contrary to defendants' contention that plaintiffs are going to use these photographs during trial and "simply ask the jury to take their word" that the individuals are who plaintiffs say they are, plaintiffs intend to use these photographs in connection with the testimony of experts who can describe the people portrayed in the photographs. *See Giles v. Rhodes*, 2000 WL 1425046, at *3 (S.D.N.Y. Sept. 27, 2000) (it is "appropriate and fairly commonplace for an expert witness to use demonstrative exhibits to make his testimony more understandable to a lay jury"). In addition, the photographs are all publicly available or are taken from plaintiffs' trial exhibits, which plaintiffs have previously shared with defendants.

Courts permit these types of demonstrative aids in terrorism cases. In *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 127 (D. Conn. 2008), for example, the court permitted an expert to use photos of terrorists as a demonstrative aid during his testimony. Judge Cogan also permitted similar demonstrative aids in the *Arab Bank* case. Because these photographs will be very helpful to assisting the jury in understanding who is who in relation to the seven attacks at issue, plaintiffs should be permitted to use these photographs as part of demonstrative aides in this case.

Respectfully,

Kent A. Yalowitz

cc:   All ECF Counsel