# ARNOLD & PORTER LLP

**Kent A. Yalowitz**

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

January 4, 2015

**VIA ECF AND HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
             Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

      I write in response to defendants' letter of December 30, 2014, which requests the Court to exclude deposition testimony by defendants' own officials, and related documents, concerning (1) payments by the defendants to Fatah, (2) communications among defendants' senior officers concerning orders from Chairman Arafat to make payments to individuals, including terrorists, (3) funding of the PLO by the PA, and (4) the structure of, and relationships between, the PA, the PLO, and Fatah. DE 690.

      Defendants argue that this evidence is not relevant absent evidence that transfers of funds between the PA, PLO, and Fatah were "either a 'but for' or proximate cause of any of the Plaintiffs' injuries." DE 690 at 3. This argument is frivolous. Evidence regarding these payments, as well as the relationship between the PA, the PLO, and Fatah (the largest member of the PLO, headed by Arafat), are relevant not only to plaintiffs' material support claims, but also to their claim that these groups acted as agents and/or alter egos of each other and/or are essentially a single organization, so that each is liable for the acts of the others.

**Material Support**

      In its decision denying defendants' motion for summary judgment, the Court expressly allowed plaintiffs to go forward with their "material support" claims by presenting evidence of the transfer of funds by defendants to Fatah, which often acted under the name Al-Aqsa Martyrs Brigades. *Sokolow v. PLO,* 2014 WL 6601023, at *10 (S.D.N.Y. Nov. 19, 2014). Specifically, the Court stated that plaintiffs' ATA claims include a claim that defendants violated the ATA by "providing support to *Fatah's AAMB*" including the provision of, among other things, "funds" in violation of 18 U.S.C. §§ 2339A, 2339B, and 2339C. *Id.* at *4 (emphasis added). Nothing in the Court's

ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 2

discussion of providing material support by funding Fatah requires the causation showing urged by defendants as a precondition to the admission of evidence.  To the contrary, the Court held that a jury could find for the plaintiffs based on evidence that included payments "from the PA to *Fatah party activists*, some of whom were also affiliated with the AAMB" because there was evidence showing that "[t]he payments were likely made with the knowledge that the intended recipients had been involved in violence and terrorism." *Id.* at *10 (emphasis added).

Defendants argue that "[t]he Court's order on summary judgment does not permit the Plaintiffs to prove ATA liability by proving that Defendant gave money to Fatah, which has never been designated as a foreign terrorist organization."  DE 690 at 3.  This is just wrong.  The Court not only expressly allowed plaintiffs' § 2339B claim to go forward; it also made clear that, under § 2339B, "a direct connection between providing material support to the terrorist organization and injury to the plaintiffs is not required." *Id.*, 2014 WL 6601023, at *9.  As the Court recognized, plaintiffs can show such a violation by demonstrating that defendants provided funds to "Fatah's AAMB."  *Id.* at *4.  Defendants have never identified any evidence of corporate separateness between AAMB and Fatah.  And, as discussed above, the Court also allowed plaintiffs to go to trial on their claims under § 2339A, which does not require that the recipient of the funds be designated as a terrorist organization.

Defendants inexplicably devote nearly half of their letter to quoting portions of the depositions that plaintiffs have designated to show that defendants funded terrorism.  Those materials show that defendants were funding Fatah.  This is exactly the kind of evidence that the jury needs to hear.

This evidence will take on even greater significance in the context of additional evidence that plaintiffs will offer regarding defendants' support for terrorism and its knowledge that "Fatah/AAMB" was involved in terrorism.  Plaintiffs' experts and a host of documentary evidence will show (as the Court recognized in its decision denying summary judgment) that defendants provided weapons to terrorists, that they harbored terrorists by providing safe houses and allowing them to operate from territory controlled by defendants,[1] and that defendants well knew what all this support was being used for.

---

[1] A government's provision of a "safe house" from which a terrorist organization may operate is material support and resources provided to that entity within the meaning of ATA § 2339A.  *See e.g. Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006) (government of Sudan provided a "safe house" to Al Qaeda within the meaning of ATA

Footnote continued on next page

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 3

Evidence of funding is an important piece of this overall picture, and it must be considered in the context of the evidence of other forms of support.

**Defendants and Fatah Operated as Agents of Each Other and/or as a Single Organization**

At the end of their letter, defendants briefly dismiss, as being irrelevant, evidence regarding the structure and operations of themselves and Fatah, including evidence of transfers of fund between defendants. As both the Court and defendants are aware, however, plaintiffs intend to prove that these entities acted as agents of each other and/or as a single organization, headed by Arafat, when it came to terrorism so that each should be held responsible for the acts of the others.

Each of the pieces of evidence that defendants seek to exclude is directly relevant to this argument. For example, the testimony of Hasan Abu-Libdeh discusses the "unification" of the PLO and PA accounts. DE 678-3 at 207-08. Similarly, the testimony of Mazen Jadallah set forth in defendants' letter describes the comingling of PA funds with those of the PLO and Fatah. DE 678-6 at 187-88; *see also* DE 678-6 at 183-84 (discussing transfers of funds to Fatah); Pls.' Trial Exs. 20, 173 (same); DE 678-2 at 82-83 (testimony by Salam Fayyad concerning payments made by the PLO to Fatah).

Indeed, the testimony of the Secretary of Fatah, Hussein Al-Sheikh, concerning the unified control of Fatah, the PLO and the PA under Arafat clearly demonstrates the extent to which these entities were effectively merged. Mr. Al-Sheikh states that "Fatah and PLO are the same because the Fatah and the PLO budget are with Arafat" and "hundreds of thousands of dollars" were awarded to Fatah by Mr. Arafat. DE 678-5 at 139, 140, 142-43. Likewise, testimony by Fayyad (DE 678-2 at 75-76, 77-78), Shaqbu'a (DE 678-4 at 13-14, 37-38) and Jadallah (DE 658-6 at 187-88) concerning the funding provided by the PA to the PLO is relevant evidence that "one organization finances another or pays its salaries and other expenses," as set forth in plaintiffs' proposed jury instructions. *See* DE 582.

Such testimony and documents are directly relevant to the issues of fact concerning whether the PA, the PLO, Fatah/AAMB are properly considered alter egos

---

Footnote continued from previous page
§ 2339A by allowing it to operate in Sudan); *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128 (D.D.C. 2011) (same).

ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 4

and/or agents of one another.  Defendants have given no reason why such evidence is more "prejudicial" than probative, or why a jury would be "confused" by consideration of such questions.  Defendants' confusion argument has it backwards; failing to provide the jury a clear picture of the relationships between defendants and Fatah would create confusion.

This evidence is particularly important because Mahmoud Abbas—who is PLO Chairman, President of the PA, and Commander of Fatah—recently threatened to dissolve the PA.[2]  If that were to happen, a judgment against just the PA might be meaningless.  On the unique facts of this case, evidence showing that the PA, PLO, Fatah/AAMB are agents of one another and/or operated as a single organization assumes particular importance and relevance.

Respectfully,

Kent A. Yalowitz

cc:   All ECF Counsel

---

[2] Khaled Abu Toameh, "Erekat Hints at Dissolution of Palestinian Authority," JERUSALEM POST (Jan. 4, 2015), *available at* http://www.jpost.com/Arab-Israeli-Conflict/Erekat-hints-at-dissolution-of-Palestinian-Authority-after-Israel-withholds-tax-funds-386651); Isabel Kershner, "Abbas Renews Threat to Dissolve Palestinian Authority if Peace Talks Fail," NEW YORK TIMES (April 22, 2014), *available at* http://www.nytimes.com/2014/04/23/world/ middle east/abbas-palestinian-authority.html.