**ARNOLD & PORTER LLP**

Kent A. Yalowitz

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

January 4, 2015

**VIA ECF AND HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

>  Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
>          Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

I write in response to defendants' letter of January 2, 2015, requesting that the Court exclude three videos that are designated as plaintiffs' trial exhibits 372, 925, and 957. DE 702. Exhibit 372 is a finished documentary video entitled "Suicide Killers," featuring interviews with Qahira Sa'adi and Sana'a Shehadeh, who candidly describe their roles in the March 21, 2002 bombing in which the Bauer plaintiffs were injured. That documentary is authenticated with a certifying declaration by Pierre Benichou, who produced the documentary and was present during the filming. Exhibit 925 is a finished documentary video by Ronni Shaked entitled "For the Sake of Allah," and Exhibit 957 is raw video footage that was used in creating Exhibit 925. Both Exhibits 925 and 957 feature an interview with Abdullah Barghouti, who described his bomb-making activities, including those related to the July 2002 bombing at Hebrew University. Both are authenticated in a certifying declaration by Mr. Shaked.

Defendants do not truly contest the authenticity of these video interviews with the perpetrators in this case. Instead, they assert a raft of groundless reasons that the videos should not be admitted.

**1. The videos are not hearsay.** The videos are accompanied by sworn statements of Messrs. Shaked and Benichou, which conform to the requirements of Federal Rules of Evidence 902(11) and 902(12). *See* Defs.' Letter Exs. 2-3 (describing the practices of Messrs. Benichou and Shaked in creating and maintaining the video records created in filming documentaries). As records of a regularly conducted activity, the videos are not excludable under the rule against hearsay. Fed. R. Evid. 803(6). And the statements of the perpetrators discussing their involvement in terrorism are statements against their penal and pecuniary interests. Fed. R. Evid. 804(b)(3). For example, Qahira Sa'adi explains her role in the suicide attack in explicit detail—in particular, explaining

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 2

how happy she and the suicide bomber were on the day of the bombing, how she was covered in the blood of the victims, and how pleased she was with the entire endeavor. "A reasonable person in [her] position would have made [such a statement] only if [she] believed [it] to be true because, when made, it was so contrary to [her]…pecuniary interest or had so great a tendency to…expose [herself] to civil or criminal liability" that she would not have made it otherwise. *See* Fed. R. Evid. 804(b)(3). Although Qahira Sa'adi was in jail when she made the statement, a reasonable person in her position would hope of release and would know that making such statements could lead the authorities to question whether releasing a terrorist would be prudent.

**2. The videos are relevant.** The videos are directly relevant to the claims and defenses in this case. Defendants quixotically persist in denying the involvement of the perpetrators of the attacks in this case, against all the evidence and with no contrary version of the events (much less contrary evidence), and have indicated their intention to attempt to attack the weight of the perpetrators' Israeli convictions at trial. The admissions made by Abdullah Barghouti, Qahira Sa'adi, and Sana'a Shehadeh in these videos thus further collapses defendants' attempts to claim that they did not carry out the attacks of which they were convicted.

**3. Defendants are not unfairly prejudiced.** As with nearly every piece of evidence that they seek to exclude, defendants argue that they will be "prejudiced" by the admission of these videos, without making any effort to describe why the "prejudice" that they will suffer is "unfair." The videos are indeed harmful to defendants because they feature interviews with perpetrators in this case in which those perpetrators admit to their actions and provide accounts of the events leading up to the attacks. But that is not "unfair" prejudice under Rule 403. To the contrary, this shows that the videos are *probative* of plaintiffs' claim that defendants should be liable for acts that they incited, supported and ratified. *See United States v. Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986) ("To be sure, all evidence incriminating a defendant is, in one sense of the term, 'prejudicial' to him: that is, it does harm to him. In that sense, the more pertinent evidence is, the more prejudicial it is. What 'prejudice' as used in Rule 403 means is that the admission is, as the rule itself literally requires, 'unfair' rather than 'harmful.'").

**4. The evidence cannot now be found "cumulative."** Merely because evidence may ultimately be "cumulative" of other evidence does not require that it be excluded in advance. Indeed, until the Court rules on other admissibility issues, it is difficult for anyone to assess what will be cumulative and what will not. Moreover, evidence cannot be "cumulative" where, as here, defendants are challenging the reliability of the other

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 4, 2015
Page 3

evidence of which it is purportedly cumulative. Defendants should not be permitted to "whipsaw" plaintiffs by challenging evidence A as unreliable, and then in the same breath, challenging evidence B as cumulative of evidence A.

**5. Disclosure of evidence and authenticating witnesses.** Defendants continue to assert, incorrectly, that any evidence disclosed after the close of discovery should be excluded. But as this Court has already opined, plaintiffs were not required to search out and produce to defendants evidence—such as these videos—that were outside the possession, custody, and control of the plaintiffs. DE 608, Tr. (9/16/14) at 25 (rejecting defendants' argument that Israeli court documents were in plaintiffs' "control" because they eventually received court documents from the Israeli government). In particular, the Benichou video was simply unknown to—let alone in the possession, custody, and control of—plaintiffs until after both the close of fact discovery and the service of expert reports in this case. In any event, plaintiffs produced the Benichou video mere days after learning about it. Defendants have offered no credible claim of prejudice arising from the fact that they received the videos one full year (rather than two years) before trial— nor could they make such a claim.

Finally, courts regularly permit foundational witnesses whose role is simply to authenticate evidence, irrespective of whether they are disclosed prior to the close of discovery, for the simple reason that no prejudice can result when such technical witnesses are disclosed after the close of discovery. *Moore v. BASF Corp.*, 2012 WL 4344583, at *3 (E.D. La. Sept. 21, 2012) (allowing testimony by authenticating witness because failure to disclose identity was harmless); *U.S. Tech. Corp. v. Ramsay*, 2011 WL 2516597, at *1 (S.D. Miss. June 23, 2011) (finding no prejudice in plaintiffs' failure to disclose identity of authenticating witness); *Smith v. Normandy Prop., LLC*, 2008 WL 4443827, at *2 (W.D. Pa. Sept. 26, 2008) (denying defendants' motion to exclude authenticating witness based on plaintiff's failure to disclose, because failure to disclose was harmless). Indeed, these witnesses are also unnecessary because the declarations discussed above meet the requirements of Federal Rules of Evidence 902(11) and 902(12).

Respectfully,

Kent A. Yalowitz

cc:   All ECF Counsel