

**MILLER CHEVALIER**

Brian A. Hill
Member
(202) 626-6014
bhill@milchev.com

January 5, 2015

**VIA ECF**
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:   *Sokolow v. Palestine Liberation Organization et al.*, 04-cv-397 (GBD) (RLE)

Dear Judge Daniels:

      This Court has already held that inflammatory rhetoric concerning the Israeli-Palestinian conflict has no place in this case. *See, e.g.*, Tr. 12/16/14 at 62:9-13, 62:18-19, 63:8-11, 94:22-23, 95:11-19, 95:23-25, 98:3-5, 185:10-14. Yet, Plaintiffs have proffered as trial exhibits *hundreds* of such statements, which are listed in Appendix A. They include, for example, a video of a young girl reciting a poem in which she purportedly refers to Jews as "Allah's enemies – sons of pigs" (PTE 194); excerpts from a "Friday sermon" on August 3, 2001 allegedly "given by Sheik Ibrahim Madhi at the Sheik'Ijlin Mosque in Gaza," in which he states that "[t]he Jews have exposed their fangs. Nothing will deter them, except the color of their filthy people's blood" (PTE 546); and excerpts from a sermon by "Ibrahim Mudayris," in which he allegedly states that "[e]verything wants vengeance on the Jews, those pigs on the face of the earth, and the day of our victory, Allah willing, will come" (PTE 755).[1]

      The Court was correct the first (and second and third) time around: none of this evidence is relevant, and to the extent that it has any probative value at all, it is unduly prejudicial to the Defendants. It should be excluded.

### 1. The Proffered Evidence Is Wholly Irrelevant to the Seven Attacks at Issue

      As the Court noted in its Order on summary judgment, this case concerns "seven bombings and shootings," and whether the Defendants can be found vicariously liable for those

---

[1] Plaintiffs have filed what they characterize as a "further opposition" to Defendants' motion *in limine* to exclude the testimony of Itamar Marcus. DE 696. Marcus would recite the same sort of inflammatory statements to the jury — as so-called "expert" testimony. *Id.*; *see also* DE 687 at 183:20-24 (Mr. Yalowitz arguing to the Court that Marcus would "say, hey, look, these are [Defendants'] words, and their media says, kill Jews and do bad stuff"). Defendants specifically address Plaintiffs' "further opposition" in a separate letter, which is also being filed today. All of the reasons set forth in the instant letter likewise apply to Marcus's testimony. Thus, as the Court indicated that it might, it should preclude Marcus from testifying at trial. *See* DE 687 at 183:16-187:17.

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 • Washington, D.C. 20005-5701 • 202-626-5800 • 202-626-5801 FAX • millerchevalier.com

1535547.1



Hon. George B. Daniels
January 5, 2015
Page 2

attacks "under a theory of respondeat superior for the criminal activities of their employees during the scope of their employment," or for purported "direct violations of [the ATA] by providing material support and resources to the terrorist groups behind the attacks." DE 646 at 2, 6-7. "Plaintiffs must show that Defendants committed a terrorist act intentionally, knowingly or recklessly, that injured Americans." *Id.* at 7.

Because political rhetoric "does not make it more likely than not…that the defendants were involved in the terrorist activities at issue," the Court has already repeatedly found such evidence to have "absolutely no probative value" to the jury's determination of liability in this case (Tr. 12/16/14 at 62:2-19):

- "[A] chart of statements [PTE 1119]…about the Palestinian-Israeli conflict in general, no, that is not admissible to even prove circumstantially that it involved terrorist acts." *Id.* at 63:8-11.

- Statements of political rhetoric are "not probative of any knowledge of a particular terrorist act, [they are] not probative of the fact that they participated in this [particular] act…" *Id.* at 95:15-18.

- "[H]eightened rhetoric does not make it more or less likely that the defendants were involved in any of the particular acts that were committed here." *Id.* at 185:10-14.

There is no reason for the Court to now decide otherwise, as none of the statements tends to make the existence of a fact of consequence to the determination of this action "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003) (holding that evidence should be admitted as relevant only "if it makes a proposition more probable than not") (internal quotation marks omitted). Indeed, none of the statements relates to the Defendants' purported involvement in a single one of the seven specific attacks at issue. Tr. 12/16/14 at 95:15-16; *see also id.* at 105:13-21 ("Your problem with proof is trying to tie it in directly to how they participated in the act and what evidence that you have. That's what's going to determine this case, if you have some evidence that they either assisted, planned, or helped coordinate one of these acts, and that evidence is admissible. . . . But if your evidence is just that they're on their side, that's not going to go very far, you know that."); *id.* at 186:16-24 (holding that even if the jury were to accept the proposition that the Defendants want the destruction of Israel, "that doesn't move them any closer as to whether they are responsible for the terrorist attacks that are at issue here.").

In their correspondence concerning Mr. Marcus, Plaintiffs claim that statements of political rhetoric are "highly relevant because [they] bear[] directly on defendants' state of mind." DE 696 at 2. But Plaintiffs previously claimed otherwise. *See* DE 487 at 1-8 (arguing that similar evidence "is irrelevant and would improperly expand the trial and confuse and distract the jury"). Regardless, the Court has already rejected Plaintiffs' current position as to "state of mind":



> THE COURT: No, knowledge is an element. State of mind is not an element.
>
> MR. YALOWITZ: Knowledge or intent.
>
> THE COURT: Intent to commit the terrorist act.
>
> MR. YALOWITZ: Right.
>
> THE COURT: Not intent to have animosity against Israel or the Israeli people.
>
> MR. YALOWITZ: Well, okay, but when they say --
>
> THE COURT: That's a given that these folks disagree, and they have strong feelings against each other. This does not make it more likely than not *that they committed the act that you want -- that you've accused them of.* It has no probative value to that issue.

Tr. 12/16/14 at 96:4-16 (emphasis added); *see id.* at 102:11-20 ("[Y]ou can't just say state of mind. . . . It's got to be knowledge or present or prior intent, okay? It can't be afterthought or what I felt about it after it happened. It's got to be that it's reflective that I had knowledge that it was taking place or that I intended, before it took place, that it was to take place. If you don't prove those, you don't have any relevant knowledge."); *see also id.* at 100:11-17 ("You can't prove your case that way. That doesn't prove your case. Even if they said, after every incident, we're glad it took place, that doesn't prove your case. You can't sue them for millions of dollars for taking that position. That may be an objectionable position from your point of view, but it doesn't prove liability on their part, because they decided that they agreed with it.").[2]

Plaintiffs also imply that statements of political rhetoric should be considered relevant because such statements "were broadcast on, or published in, media that is both owned and controlled by defendants." *See* DE 696 at 1. Even if Plaintiffs had a witness with personal knowledge who could testify that either Defendant "owned" or "controlled" the media at issue (and they do not), statements broadcast through state-run media would not constitute statements

---

[2] In their correspondence concerning Mr. Marcus, Plaintiffs cite *United States v. Mostafa*, 16 F. Supp. 3d 236 (S.D.N.Y. 2014), for the proposition that inflammatory statements concerning terrorism generally should be admitted as "state of mind evidence." DE 696 at 2. Plaintiffs have mischaracterized *Mostafa*. In that case, the defendant was charged criminally with "conspiracy to provide and providing material support and resources to al Qaeda, led by [Osama] bin Laden. He is also accused of conspiring to supply goods and services to the Taliban, which was allegedly providing a safe haven for bin Laden and al Qaeda." 16 F. Supp. 3d at 256. The court held that "[t]he defendant's 2002 statements supporting bin Laden are probative of his state of mind with respect to these charged crimes. That is, he knows who bin Laden is, supports bin Laden, and views him as a hero." *Id.* Thus, the defendant's statements were tied directly to the crime with which he was charged.



made *by* either of the Defendants, as this Court has already held. Tr. 12/16/14 at 185:1-7 (concluding that using a statement by a reporter in a newspaper "and simply trying to say that they controlled the media" is "not sufficient to attribute those individual statements to the PA or the PLO"); *id.* at 187:13-22 (rejecting Plaintiffs' attempt to say that the Defendants "are responsible for every terrorist act that takes place because they, in their newspaper, said, people, if you want to, go out and do terrorist acts," and holding that this is not direct proof of the Defendants' involvement in any of the attacks).[3]

Plaintiffs also claim that such statements are relevant because they were purportedly "made by defendants' senior officers." *See* DE 696 at 1. But most of the hundreds of statements listed on Appendix A were made by individuals altogether unaffiliated with the PA or the PLO, such as religious clerics or members of Hamas. *See, e.g.*, PTE 546, 755, 627 (newspaper article quoting alleged statement of Khaled Mashal); *see also* Tr. 12/16/14 at 94:18-21 (finding that statements reported in martyr file "are not statements by [the Defendants], it's statements quoting someone else and quoting obviously someone who's not speaking for their interests"). While other statements were made by individuals who were at one time or another affiliated with one of the Defendants, the statements were made when those individuals were no longer employed by the PA or the PLO. *See, e.g.*, PTE 1053 (2014 TV interview of Tawfiq Tirawi). Other statements are also excludable as both irrelevant and as hearsay within hearsay. *See, e.g.*, PTE 509 (purported transcript of al Jazeera interview with Jibril Rajoub); *see also* Fed. R. Evid. 805.

## 2. Any Minimal Probative Value Would Be Far Outweighed by Confusion of the Issues, Misleading the Jury, and Undue Prejudice to the Defendants

Evidence concerning statements made by individuals unaffiliated with the PA or PLO, about events unrelated to those at issue in this case, many of which were made years after the fact, will only confuse and mislead the jury. The statements listed on Appendix A are excludable under Rule 403 for this reason alone. *United States v. Toner*, 728 F.2d 115, 123 (2d Cir. 1984) (holding that evidence concerning the conflict in Northern Ireland was excludable because it was "very apt to confuse and mislead the jury").

Moreover, just as the Court has already held that statements of political rhetoric are irrelevant, it has likewise repeatedly held that such statements would unduly prejudice the Defendants. *See, e.g.*, Tr. 12/16/14 at 94:22-23 ("[T]he potential prejudice outweighs any probative value…"); *id.* at 95:11-19 ("I find it's more prejudicial than probative. That does not

---

[3] Plaintiffs claim that "[t]he media involved includes defendants' official television station, Palestinian Authority Television ('PA TV'), and their official newspaper, Al-Hayat Al-Jadida." DE 696 at 1. Defendants have denied that "[t]he Palestinian Authority TV and Radio, the Palestinian Broadcasting Corporation, ('PBC') are under the direct control of the PA." *See* DE 696-1 at 4 (Response to Request No. 1). Moreover, there is no entity known as "Palestinian Authority Television." *See id.* Defendants also denied that "[t]he newspaper Al-Hayat Al-Jadida is the PA's official daily newspaper." Exhibit 1 (Response to Request No. 6).



make them responsible for any terrorist act . . . and, in fact, if the jury were to use [statements of political rhetoric] for that purpose, it would be unduly prejudicial . . . ."). The Court should not permit the Plaintiffs to excite the jurors' emotions against the Defendants by admitting into evidence a political cartoon depicting "[a] fearful Uncle Sam running away in terror, being chased by the date 'September 11'" (PTE 1073); or a purported "Fatah Leaflet" proclaiming "From the muzzle of your guns genuine peace will swoop into the sad and suffering land . . . If they want to negotiate, let them negotiate with the sound of your intifada, the sound of your memory witnessing a massacre and carnage, the screams in the city and village, hunger that bursts out" (PTE 185) (alteration in original). The Court has accurately captured the potential improper impact of this evidence and the fact that it appears Plaintiffs seek to admit this evidence for the very purpose of gaining an improper advantage. *See* Tr. 12/16/14 at 95:23-25 (holding that introducing inflammatory language "is improper, and that's exactly the reason why I thought [Plaintiffs] wanted it, and that's exactly the reason why I'm keeping it out."); *see also id.* at 98:3-5 ("[I]t is not the proper way to put it in by simply wanting the prejudicial effect of quoting from the, quote, enemy media and calling people Zionists."). There is no room for debate that Plaintiffs are banking on the prejudicial effects of this proposed "evidence." It must be excluded. *See* Fed. R. Evid. 403.

### 3. In Any Event, the Exhibits and Testimony at Issue Face Other Insurmountable Problems

The materials in question have otherwise not been properly authenticated. They are inadmissible on this basis alone. "The requirement of authentication is . . . a condition precedent to admitting evidence." *United States v. Sliker*, 751 F.2d 477, 497 (2d Cir. 1984). In addition, the exhibits do not fall within the scope of Rule 801(d)(2) as "an opposing party's statement," nor do they fall within a hearsay exception that would warrant their admission.

Sincerely,

*Brian A. Hill /aug*

Brian A. Hill