

Laura G. Ferguson
Member
(202) 626-5567
lferguson@milchev.com

January 5, 2015

**VIA ECF**
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Sokolow v. Palestine Liberation Organization et al.*, 04-cv-397 (GBD) (RLE)

Dear Judge Daniels:

On behalf of Defendants the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO"), I write in response to Plaintiffs' letter, dated December 29, 2014, in which Plaintiffs "write in further opposition to defendants' motion *in limine* to preclude the testimony of Israel Shrenzel, Alon Eviator, and Matthew Levitt." DE 684 ("Letter").

Plaintiffs previously filed a 52-page opposition (DE 540) to Defendants' motion *in limine* (DE 500). At the December 16, 2014, hearing, this Court substantially limited Plaintiffs' use of these experts (Tr. 12/16/14 at 190:16-214:9), although the Court has not yet issued a written ruling. To the extent the Plaintiffs' letter opposition conflicts with oral rulings of the Court, the letter is in fact a motion for reconsideration and part of a recent pattern by Plaintiffs to seek reconsideration of adverse evidentiary rulings. *See, e.g.*, DE 683 (seeking reconsideration of the Court's ruling on the redaction of names of third parties from convictions and custodial statements); DE 696 (seeking reconsideration of Court's rulings excluding expert testimony on political rhetoric). To the extent the Plaintiffs' letter opposition argues issues as to which the Court has not yet made a formal ruling, it improperly seeks a second bite at the apple at opposing Defendants' motion in limine. This Court should reject the Plaintiffs' repeated efforts to reargue evidentiary rulings and to reargue their opposition to Defendants' motion *in limine*. Defendants' motion in limine and reply raised many issues with each of the three experts' expertise and methodology. Defendants will not repeat those arguments here but incorporate them by reference. *See* DE 500 at 22-31, 49-67; DE 555 at 11-20, 33-36. Below, Defendants respond to the arguments raised in Plaintiffs' Letter.

### 1. Israel Shrenzel.

Israel Shrenzel is a former intelligence analyst in Israel's General Security Service. Plaintiffs describe Shrenzel's report as "disclos[ing] opinions about policies of the PA and the PLO that supported terror." Letter at 2. The first portion of his report describes what Shrenzel characterizes as a policy of indoctrination and incitement. DE 500-26 ("Shrenzel Report") at 6-15. The Court has ruled that political rhetoric concerning the Israeli-Palestinian conflict has no

Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com

1535569.2



Hon. George B. Daniels
January 5, 2014
Page 2

place in this case. *See, e.g.*, Tr. 12/16/14 at 62:9-13, 62:18-19, 63:8-11, 94:22-23, 95:11-19, 95:23-25, 98:3-5, 185:10-14. Even apart from his lack of expertise or any valid methodology on this subject, Shrenzel's conclusion that the PA and PLO have a general policy of supporting terrorism based on his review of Palestinian textbooks and media similarly has no place in this case.[1]

Plaintiffs also seek to have Shrenzel provide an opinion on the "nature of the material support provided by defendants to Hamas and Al Aqsa Martyrs' Brigades." Letter at 2. Shrenzel, however, did not disclose any such opinions in his report, so, may not provide such opinions at trial. His report mentions Hamas only in passing, and does not include any analysis of the Al Aqsa Martyrs' Brigades ("AAMB"). He has a brief discussion of funding supposedly provided to Fatah (Shrenzel Report at 17-18), for which his sole citation is a page from a book by Elliot Abrams called "Tested by Zion." *See id.* at 17 n.22. In any event, the Court already has ruled that it will not allow Plaintiffs' experts to opine that Defendants provided material support to Hamas or AAMB. Tr. 12/16/14 at 192:21-22 ("I'm not going to let him give me that opinion"); *id.* at 211:5-6 (ruling that Plaintiffs' expert cannot testify to a fact, and "[w]hether the PA funded the AAMB is a fact.").

In fact, the focus of Shrenzel's report is his summary of evidence related to six of the attacks at issue. At the beginning of his report, Shrenzel states that he was "requested by Counsel for the Plaintiffs to provide my Expert Opinion with respect to the degree of involvement of the Palestinian Authority in six terrorist attacks that are at the center of this action, and in the encouragement, support and assistance in the execution of these attacks." Shrenzel Report at 3; *see also* Shrenzel Depo. at 25:15-26:1 (agreeing that the main focus of the report is the six incidents). Rather than provide a valid expert opinion however, Shrenzel simply summarizes the very evidence that Plaintiffs intend to present to the jury: convictions of the alleged perpetrators, personnel records, payment records, and "Martyr files." But Plaintiffs also want Shrenzel to opine that, based on his review of this evidence, it is his opinion the PA and PLO were involved in or supported the attacks at issue, which Plaintiffs acknowledge is an

---

[1] Shrenzel has no expertise on supposed Palestinian indoctrination or incitement, nor did he engage in any comprehensive analysis of these subjects for his report. *See, e.g.*, DE 500-31 ("Shrenzel Depo.") at 63:17-24 ("I know that there is supposed to be a full expert opinion submitted on the subject of incitement in the curriculum. And for that reason, we chose to limit ourselves -- I chose to limit myself and be brief, just to give several examples for the sake of illustration. But this is certainly not an expert opinion that's focused on the curriculum."); *id.* 73:20-21 (Shrenzel did not do a comprehensive analysis of Arafat's speeches because he "knew that an extensive expert opinion was supposed to be filed on the subject of incitement" by someone else); *id.* at 76:19-25 (for the report Shrenzel did not do a formal study of Palestinian media, and he has never done such a study).



Hon. George B. Daniels
January 5, 2014
Page 3

ultimate issue in the case. Letter at 2. Plaintiffs claim that the admission of Ronni Shaked's testimony in the *Arab Bank* case regarding the attribution of terror attacks to Hamas supports their use of Shrenzel to opine on PA and PLO responsibility for the attacks at issue here. There, is of course, a fundamental difference between the *Arab Bank* case and this one. In the *Arab Bank* case, Hamas was not the defendant. Here, Shrenzel would be invading the province of the jury. Having Shrenzel provide such an opinion is akin to having a police detective tell a jury, "I reviewed all the evidence and it's my opinion that the defendant is guilty."

Plaintiffs cite Federal Rule of Evidence 704 for the proposition that expert opinion is not objectionable just because it embraces an ultimate issue. Letter at 2. But expert testimony that "supplies the jury with no information other than the witness's view of how the verdict should be read" is not admissible. *Weinstein's Federal Evidence* 704.04[2][a]. Moreover, this Court has consistently made clear that it will not allow Plaintiffs' experts to invade the province of the jury by making determinations of liability based on the expert's review of the evidence — evidence that is readily accessible to and easily understood by a layperson. *See* Tr. 7/22/14 at 113:6-8 ("But with regard to 'I've looked at' a whole bunch of documents and I conclude that this guy is the guy who perpetrated this act,' that's not an expert opinion."); Tr. 12/16/14 at 202:20-203:6 (noting that the case presents a "they-did-it-or-they-didn't-do-it issue" for which the jury does not need expert testimony); *id.* at 203:8-15 (Shrenzel's opinion "that these people were probably involved in this" is "not an area of expertise that's appropriate for the jury"); *id.* at 200:7-9 ("It is not that complicated a case.").

### 2. Alon Eviatar.

Plaintiffs seek to offer an opinion from former Israel Defense Forces employee Alon Eviatar, that Defendants "provided material support to terror organizations, Al Aqsa Martyrs Brigades and Hamas." Tr. 12/16/14 at 192:14-16. At the December 16 hearing, the Court ruled: "I'm not going to let him give me that opinion." *Id.* at 192:21-22; *see also id.* at 211:5-6 (ruling that Plaintiffs' expert Matthew Levitt cannot testify to a fact, and "[w]hether the PA funded the AAMB is a fact."). Ignoring the Court's oral ruling, the Plaintiffs seek to have Eviatar "analyze the evidence of defendants' material support for those organizations." Letter at 3. The Court should not reconsider its ruling. Even if the Court were inclined to reconsider, it should prelude Eviatar from providing an opinion that either the PA or PLO provided material support to the AAMB or Hamas.

With regard to AAMB, Eviatar may not provide an opinion that either Defendant provided material support in the form of money or weapons. Plaintiffs recently conceded they have no evidence of any money being provided to the AAMB organization. DE 697 at 5



MILLER CHEVALIER

Hon. George B. Daniels
January 5, 2014
Page 4

(12/31/14 K. Yalowitz letter to the Court seeking to preclude Defendants' fact witnesses). In fact, Plaintiffs characterized the proffered testimony of PA Ministry of Finance employee Mazen Jadallah regarding lack of PA payments "to an entity called the Al Aqsa Martyrs' Brigades" as "irrelevant." *Id.*[2] Moreover, Eviatar's report does not offer an opinion that the Palestinian Authority or PLO provided financial support to AAMB. Instead, under the topic "The Palestinian Authority's Direct Assistance of Terrorism," DE 500-29 ("Eviatar Corrected Report") at 58-60 and nn.118-121, Eviatar simply cites various hearsay reports vaguely alleging or speculating about PA support of terrorism or Fatah activists. *Id.* at 58-59. With respect to any support to AAMB, Eviatar relies on Marwan Barghouti's "confessions as published in the Israeli media," *id.* at 59-60, in which he inculpates others including Arafat. Such confessions are not admissible. *See* DE 671 (Court's 12/18/14 order on redaction of custodial statements). Moreover, Eviatar is not providing any specialized expertise by reporting on what he has read in the Israeli media about Barghouti's supposed confessions.

As to weapons, Eviatar's report does not disclose an opinion that either the PA or PLO provided weapons to AAMB. The report mentions in passing that the PA provided "material" to "Tanzim," but Eviatar's sole source is a website that is obviously hearsay and cannot even be currently accessed: www.disabled.co.il/download/islamic_terror.doc. Eviatar Corrected Report at 77 n.158.[3] The Court was clear at the December 16 hearing that it would not allow Plaintiffs' experts to provide an opinion about the Defendants' liability by serving as a conduit for hearsay.

With regard to Hamas, Eviatar's opinion primarily is based on statements in convictions or confessions implicating accomplices and other third parties, which this Court has ruled are inadmissible. *See* Tr. 12/16/14 at 193:11-194:18 (other than a vague claim that Eviatar is relying on "a lot of granular information," Plaintiffs' counsel stated, Eviatar "knows it from the guy's confessions, he knows it from the convictions, he knows it from the guy's admissions on

---

[2] According to Plaintiffs' December 31 letter (DE 697), "Plaintiffs have never claimed that the Ministry of Finance wrote checks directly to this designated terror organization." *Id.* at 5. "Instead," Plaintiffs claim that "the PA and PLO made payments to members of the Al Aqsa Martyrs' Brigades through orders of Arafat, Marwan Barghouti, Hussein al-Sheikh, Fuad Shubaki, and other officers of the PA and PLO. Mr. Jadallah's testimony that the Ministry of Finance never made payments to an entity called the Al Aqsa Martyrs' Brigades does nothing to rebut the fact that money was paid to individual terrorists who were part of the brigades." *Id.* at 5-6. Leaving aside the fact that Plaintiffs lack admissible evidence of payments to "individual terrorists," and that Marwan Barghouti and Hussein al-Sheikh were not even PA or PLO employees, none of the individuals referenced by Plaintiffs had any role in the attacks at issue.

[3] Eviatar then identifies other sources of weapons: "Weapons also have come into its hands from smuggling operations based in Jordan and Egypt, or through connections with criminal entities in Israel." *Id.* at 77.



videotape."); DE 671, 672 (Court's 12/18/14 orders on non-self-inculpatory statements in custodial statements and convictions); *see also* DE 682 at 3-8 (Defendants' renewed motion for summary judgment on the Hebrew University bombing, demonstrating Plaintiffs' lack of evidence that the Defendants provided material support to Hamas). It is evident from Eviatar's report (at pp. 5-21 nn.1-35), that, in addition to the inadmissible portions of Abdullah Barghouti's custodial statement and conviction, Eviatar is relying on rank hearsay for his opinion that the PA provided material support to Abdullah Barghouti, an alleged Hamas member, or to Hamas generally.[4] Again, Plaintiffs cannot avoid their burden of proof by having experts decide for the jury based in hearsay. To the extent Eviatar relies on admissible evidence, his expertise is not needed because the admissible evidence (convictions, payment records, etc.) is not complicated and the jury is perfectly capable of determining whether there is liability. *See* Tr. 12/16/14 at 200:7-17, 202:20-25. Another federal court recently precluded plaintiffs from relying on Eviatar's opinions in an Anti-Terrorism Act case against the PA and PLO. The court found: "Eviatar has not applied any specialized knowledge to the hearsay materials on which he relies. Instead, his analysis consists entirely of deductions and observations that flow directly from the content of the hearsay statements and would be self-evident to a layperson." *Gilmore v. Palestinian Interim Self-Government Auth.*, No. 01-cv-853, 2014 U.S. Dist. LEXIS 102093, at *53 (D.D.C. July 28, 2014). The same is true here. The court concluded: "Because Eviatar's opinion consists entirely of generalized and conclusory assertions that lack any basis in his specialized knowledge, the Court concludes that he is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows [Plaintiffs] to circumvent the rules prohibiting hearsay." *Id.* at *56 (citing *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008)).

In their December 29 letter, Plaintiffs seek to have Eviatar "explain defendants' policies and practices that supported terror during the Al-Aqsa Intifada," "identify the senior staff of the PA involved in implementing those policies and provide evidence . . . illustrating the execution of those policies and practices." Letter at 3. But, as the Court made clear at the December 16 hearing: "We don't need an expert to come in and opine that he believes that the PA and PLO are terrorists . . . based on his analysis of the totality of the circumstances." Tr. 12/16/14 at 193:3-7. Plaintiffs' counsel assured the Court: "That is not what Eviatar is going to come in and do." *Id.* at 193:9-10. In fact, that is exactly what Plaintiffs now admit they intend to have Eviatar do, and he should not be allowed to do so for the reasons the Court provided at the

---

[4] Eviatar also cites post-attack Ministry of Detainees' payments to Abdullah Barghouti. Eviatar Corrected Report at 14 nn. 31-33. These post-attack payments are not evidence of material support. *See* DE 701 (Defendants' letter motion *in limine* on post-attack payments to non-employees).



Hon. George B. Daniels
January 5, 2014
Page 6

December 16 hearing. In any event, Eviatar's report does not offer any relevant specialized knowledge on the Defendants' policies and practices that supposedly support terrorism. For example, Eviatar discusses a prisoner payment policy, but focuses the discussion on the 2010-2013 period, long after the time period relevant to this lawsuit. Eviatar Corrected Report at 27-38.

Plaintiffs now claim that Eviatar will provide an opinion on whether the employees they claim perpetrated the attacks at issue were acting within the scope of their employment. Letter at 1; *see also* Tr. 12/16/14 at 206:13-16 (Yalowitz: "[I]ntelligence agents have an important role in a case where the defendant here is a police operation and the police department runs in a certain way and they know how that department runs."). Eviatar's report, however, does not disclose any opinions whatsoever on the scope of employment for the employees at issue, nor does he disclose any opinion on how the various PA security services are run. Having not disclosed such opinions, he may not offer them at trial. In any event, scope of employment is a question of fact for the jury.

Similarly, Plaintiffs state that Eviatar "can provide an overview of the key events of the Al-Aqsa Intifada, which will give the jury important context to understand the seven attacks at issue in this case." Letter at 3. The Court has repeatedly ruled, however, that the parties must keep the evidence focused on the attacks at issue, rather than seeking to try the Israeli-Palestinian conflict writ large. In any event, Eviatar's report did not provide an overview of the key events of the Al Aqsa Intifada, so he may not provide that testimony at trial. Plaintiffs provide no basis for the Court's reconsideration of those rulings.

In an effort to make Eviatar's opinions sound more like the opinions of Arieh Spitzen in the Arab Bank case, *see* Letter at 2-3, Plaintiffs attribute to Eviatar still more opinions that are not included in his report. For example, Plaintiffs claim that Eviatar will provide an opinion on the "workings of the . . . Al-Aqsa Martyrs' Brigades and Hamas." *Id.* at 3. Eviatar's report, however, does not disclose any opinions on the "workings" of either organization. Along the same lines, Plaintiffs state that Eviatar would provide testimony that "explain[s] who the PLO and the PA are." *Id.* According to Plaintiffs, "[h]e can explain the relationship between and among the PLO and PA and Fatah, including the evidence supporting plaintiffs' alter ego and agency theories of liability of the two defendants." *Id.* Eviatar's report does not offer expertise on how the PA and PLO are structured, nor does he engage in any substantive analysis of the relationship among the PA, PLO or Fatah. *See* Eviatar Corrected Report at 19-21 (noting that Arafat was the head of all three and that "the PA has had the same goals as the PLO" and making unsubstantiated (and inaccurate) claim that the three entities have a "unified financial system"). As with the rest of his report, he generally relies on rank hearsay. *See id.* nn. 34-35.



Hon. George B. Daniels
January 5, 2014
Page 7

      Plaintiffs claim that Eviatar is an expert because he "is a former field intelligence officer. He spent his entire career in the West Bank and Gaza Strip. He knows these people very well. . . . He has personal relationships with a lot of these people." Tr. 12/16/14 at 190:23-191:2. But that conclusory assertion is belied by Eviatar's own deposition testimony. With respect to the Hebrew University bombing, which is the focus of his report (*see* Eviatar Corrected Report at 2), Eviatar has no specialized expertise or personal knowledge. None of Eviatar's work in the IDF involved the Hebrew University bombing. DE 500-24 ("Eviatar Depo.") at 59:15-17. He had "no job responsibilities related to that bombing." *Id.* at 60:6-9. At the time of the bombing, Eviatar was "serv[ing] as commander of the Coordination and Liaison Administration in Jericho and the Jordan Valley." Eviatar Corrected Report at 1. His responsibilities were in Jericho, not in Jerusalem. Eviatar Depo. at 60:13-15. Like members of the public, he heard about the bombing from the media, not intelligence sources. *Id.* at 59:22-24. Indeed, Eviatar does not have first-knowledge of any of the information in his report about the Hebrew University bombing except for a single paragraph on page 13. *Id.* at 61:4-62:10.

      Plaintiffs state that "Eviatar will rely on similar skills, experience, and types of evidence as relied upon by Mr. Spitzen, to provide similar types of information and opinions as provided by Mr. Spitzen in the *Arab Bank* case." Letter at 4. That is not the case. Spitzen offered expertise on Hamas in a case in which Hamas was not the defendant. Eviatar offers no expertise on Hamas, including even whether Hamas was responsible for the Hebrew University bombing. Eviatar Corrected Report at 2. Instead, Eviatar invades the province of the jury by providing his opinion that the Defendants provided material support in connection with the Hebrew University bombing.

      In addition, in the *Arab Bank* case, Judge Gershon found that "Mr. Spitzen states that he wrote every word of his report, that the assistant did not draft any portion of it, and that he independently reviewed all the material she provided to him." DE 684-1 at 7. Here, in contrast, Eviatar did not write his report. Roni Shaked wrote the report and Eviatar made only minor changes to it. *See* DE 500 ("Defs.' Mot. in Limine") at 51.[5] Judge Gershon also found that Spitzen had a reliable methodology. *See* DE 684-1 at 6-7. The same cannot be said of Eviatar. *See* Defs.' Mot. in Limine at 54-57. Moreover, Judge Gershon noted that Spitzen was not a "mere conduit for inadmissible evidence." DE 684-1 at 7. The same cannot be said of Eviatar. His report is based on inadmissible evidence, as to which has not applied any specialized expertise or methodology. Finally, Judge Gershon ruled that Spitzen could not provide an opinion on state of mind. DE 684-1 at 9. Yet, Eviatar's Report includes opinions on the state of

---

[5] Israel Shrenzel also played a limited role in the preparation of his report. *See id.* at 60-61.



Hon. George B. Daniels
January 5, 2014
Page 8

mind of organizations and individuals. *See* Defs.' Mot. in Limine at 57 (citing Eviatar Report at 10, 32, 37).

### 3. Matthew Levitt.

Plaintiffs argue that because Matthew Levitt was allowed to provide expert testimony on Hamas in the *Arab Bank* case, he should be allowed to provide expert testimony on AAMB and Fatah in this case. Letter at 4. As set forth in Defendants' motion in limine, however, Mr. Levitt has no expertise on AAMB or Fatah. Defs.' Mot. in Limine at 22-25.

Levitt has spent his career studying, writing, and testifying about Hamas, Hezbollah, and Al-Qaeda. *See* DE 500-12 ("Levitt C.V.") at 3-32. But his expertise does not include the structure of Fatah, the command and control of the AAMB, or the PA's internal finances — topics on which Plaintiffs proffer his opinion. None of his coursework, academic research, or academic field work focused on the relationship between Fatah and the AAMB, or the PA's alleged support for terrorism. DE 500-13 ("Levitt Depo.") at 24:21-27:11, 28:3-6, 28:21-29:8; *see also id.* at 21:1-10, 23:3-11. His non-academic experience is similarly irrelevant:

- His work at the FBI, the Treasury Department, and the State Department related generally to terrorism but did not concern the topics in his report. *Id.* at 47:5-8, 49:5-14, 50:10-51:2, 53:7-13, 55:7-11, 270:17-20. The courses he has taught at Johns Hopkins University's School of Advanced International Studies, including "Combating the Funding of Transnational Threats" and "Terrorism: Concepts and Problems," did not cover the topics in his report. *Id.* at 61:16-20, 62:19-63:2, 64:4-8, 65:13-16, 67:5-8. Although he states that "[he is] frequently sought after as an analyst and commentator on terrorism issues," DE 500-11 ("Levitt Report") at 2, he could not recall a single time when he was interviewed about the relationship between Fatah and the AAMB, or about the PA's alleged support for terrorism. Levitt Tr. at 55:18-56:18, 68:12-16.

- He could not name any peer-reviewed publication that he has written that pertains to the relationship between Fatah and the AAMB, or to the PA's alleged support for terrorism, other than an "aside" in his book about Hamas. *Id.* at 77:4-78:13. None of his monographs is related to the opinions in his report, and he could not name any book chapters or journal articles that pertain to the opinions in his report. *Id.* at 106:11-21, 107:1-16, 108:18-116:8.

- He "interview[s] experts, officials, academics and others" in the United States, Europe, and the Middle East (Levitt Report at 3), but he could not name a single person he had interviewed about the relationship between Fatah and the AAMB, or about the PA's alleged



Hon. George B. Daniels
January 5, 2014
Page 9

> support for terrorism. Levitt Tr. at 31:16-20, 33:3-35:17. He ultimately testified that he was not relying on this "field work" to support his opinions. *Id.* at 42:10-13. When asked what "field work" he had done regarding the opinions in his report, he replied, "Nothing that I can recall specifically." *Id.* at 35:18-35:21, 36:14-15.

- While he has "been qualified as an expert witness and provided expert testimony in many U.S. federal court proceedings" (Levitt Report at 4-5), none of his prior experience as an expert witness pertained to the topics in his report, nor has he ever been qualified to testify as an expert on the relationship between Fatah and the AAMB, or the PA's alleged support for terrorism. Levitt Tr. at 93:7-12, 93:19-94:1, 94:5-17, 95:11-18.

In sum, Levitt's "knowledge, skill, experience, training, [and] education," Fed. R. Evid. 702, do not relate to the subject of his testimony, and his opinions should be excluded.

Sincerely,

*Laura G. Ferguson* /DLG

Laura G. Ferguson