PLAINTIFF'S
EXHIBIT
323

[Handwritten annotation in Arabic]

Date: December 1, 2004                                              File No.: 3465/02

**Military Court, Judea**

**Before the Honorable President of the Court: Lieutenant-Colonel Shlomi Kochav**
**Judge: Captain Shlomo Katz**
**Judge: Captain Menachem Lieberman**

**The Military Prosecution**

- v. -

**The Defendant: Munzar Mahmoud Khalil Noor Identity No. 902442607/ Israel Prison Service**
(Represented by Counsel, Adv. Ali Gozlan)

---

## Reasons for Sentence

**The Honorable Judge Captain Menachem Lieberman:**

The Defendant has been convicted, as detailed in the verdict, of the following offenses:

**Intentionally causing death**, pursuant to Section 51 of the Security Provisions Order and Section 14 (a) (4) of the Rules of Liability for an Offense Order;

**Attempting to intentionally cause death**, pursuant to Section 51 of the Security Provisions Order and Sections 14 (a) (4) and 19 of the Rules of Liability for an Offense Order;

**Malicious damage to property**, pursuant to Sections 53c and 92 of the Security Provisions Order and Section 14 (a) (4) of the Rules of Liability for an Offense Order;

**Attempting to incite another to trade in war materiel**, pursuant to Section 2 of the Prohibition of Trading in War Materiel Order and Section 21 of the Rules of Liability for an Offense Order;

**Communicating information of military value**, pursuant to Section 63 of the Security Provisions Order.

In January 2002, there met with the Defendant a person known as Abu Talal, who was a senior operative in the Palestinian Authority's Military Intelligence. Abu Talal informed the Defendant

[Stamp] P 3: 44

1

that he intended to send a woman to carry out a suicide terrorist attack in Israeli territory. Abu Talal asked the Defendant to persuade his female friend, Wafa Idris, to carry out the terrorist attack, and the Defendant agreed to do so.

As a result of this conversation, the Defendant approached Wafa Idris and persuaded her to carry out a suicide terrorist attack, as agreed with Abu Talal. At a certain point Wafa Idris changed her mind about carrying out the terrorist attack, and the Defendant was called upon to again persuade her, to bolster her and encourage her so that she should execute the mission given to her. Following Idris's final consent, the Defendant also instructed her as to access roads to Jerusalem, access roads with which he was familiar from his work with the Red Crescent. Ultimately, after his persuasive efforts bore fruit, Wafa Idris carried out a terrorist attack in the center of Jerusalem on January 27, 2002, a terrorist attack as a result of which the late Pinhas Tokatli was killed, and over 150 passersby were wounded.

The Defendant must answer for this crime.

The Military Prosecution requested that we impose upon the Defendant a sentence of life imprisonment for his actions which caused the death of the late Pinhas Tokatli, and in addition we were asked to impose a suitable punishment on the Defendant in respect of the remaining crimes, a punishment that would be consecutive with the life imprisonment penalty we had been asked for. In its arguments, the Prosecution emphasized the Defendant's significant involvement in planning the terrorist attack, and the fact of

-1-

[Stamp] P 3: 44 [continued]

Date: December 1, 2004                                                    File No.: 3465/02

the Defendant being not only part of the inner circle of perpetrating the crime, but even being the very essence of that inner circle.

The Prosecution also noted that it had already been established as doctrine, by the Military Appeals Court for Judea and Samaria, 183, 190/03, that the penalty for the person launching [a terrorist attack] ought to be, in certain circumstances, even more severe than that of the principal perpetrator when the [attack] was not actually carried out. Of course, it cannot be argued that the matter there is absolutely akin to proof, in light of the fact that in the case before us, the terrorist attack was – unfortunately – indeed executed.

In contrast to the Prosecution's request, the Defense Counsel was brief in summarizing his arguments for penalty, and asked that we not impose upon the Defendant a penalty exceeding 30 years' imprisonment. According to the Defense Counsel, it would be wrong to accept the Prosecution's arguments that the Defendant was within the inner circle of those perpetrating the terrorist attack. According to the Defense Counsel, the Defendant's actions do not fall outside the framework of planning and conspiracy, but they do not justify conviction for the crime of intentionally causing death, and certainly do not deserve the imposition of a sentence of life imprisonment.

After hearing the arguments on August 26, 2004, we sentenced the Defendant to life imprisonment and a further thirty years' imprisonment, to be served consecutively.

Suicide terrorist attacks have become, over recent years, frequent events, and at a certain point they were occurring one terrorist attack after the other, one suicide following the other, with the names of those killed and the numbers of those wounded being forgotten because there were so many. Similarly, the economy of the State of Israel was severely affected, her foreign relations suffered a blow, and her participation in international events was under attack. All of this, and more, due to the bottomless hatred of those who rise up to destroy us.

By its nature, a suicide terrorist attack requires the cooperation of a number of participants. In the majority of instances, we find that in terrorist attacks of this type there are at least four: recruiter, engineer, dispatcher and suicide terrorist. Without the actions of these four, it may be that we would be sighing less under the pain of the terrorist attacks on our midst. Apart from these four, there are generally others whose connection with the terrorist attack is looser, those who, in most cases, could be replaced by others.

In order to fight this plague of terrorist attacks, the court must send an uncompromising message to all parties associating themselves with these reprehensible acts, and particularly to those who

[Stamp] P 3: 45

3

constitute the spearhead of the terrorist attacks, those without whom nothing would happen, and the terrorist attack could not be executed.

In the instance before us, not only did the Defendant select the perpetrator of the terrorist attack, not only did he persuade her to sacrifice her life on the altar of murdering Jews, but he even went beyond that, and when it turned out that the attacker had cold feet and was considering not to ultimately carry out the act of murder, he came back to her with another round of persuasion.

By his actions, the Defendant placed himself within the innermost circle of perpetrators of the terrorist attack, and he is undoubtedly one of the four links listed above. Once the Defendant has entered this group, he cannot shake off the responsibility for the act that was carried out with his assistance, and for its terrible results. The Defendant's responsibility for the death of the late Pinhas Tokatli is direct, and it is for this responsibility that he has been tried.

The duties of a judge sitting in judgment are many. Among them is the duty to express, through his rulings, the supreme value that our society attributes to human life, and the sanctity associated with this concept. In the matter

-2-

[Stamp] P 3: 45 [continued]

Date: December 1, 2004                                                File No.: 3465/02

before us, once the Defendant has been convicted of the crime of intentionally causing death, and after we have determined that his role in the terrorist attacks was an essential one, any penalty other than one of life imprisonment would be totally unacceptable.

In light of the above, we have decided to impose upon the Defendant a punishment of life imprisonment for the murder of Pinhas Tokatli, and in addition a punishment of 30 years' imprisonment, consecutive, for the balance of the crimes that he committed.

**The Honorable President of the Court, Lieutenant-Colonel Shlomi Kochav:**

I concur.

**Judge Captain Shlomo Katz:**

I concur.

The Court clerkt will provide these reasons for sentence to the parties immediately.

**Right of appeal within 30 days.**

**Given this day, December 1, 2004, in chambers.**

_____[Signature]_____          _____[Signature]_____          _____[Signature]_____
Judge                            President of the Court                     Judge

-3-

[Stamp] P 3: 46

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>              Plaintiffs,<br><br>vs.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION, *et al.*,<br><br>              Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P3: 44-46.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P3: 44-46.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D. 2332704

ع.٤/١٠/٥ ٢ رئيس والمسود

תאריך: 01/12/2004

תיק מס': 3465/02

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה

בפני כב' האב"ד סא"ל שלומי מוכב
השופט: סרן שלמה בן
השופט: סרן מנחם ליברמן

התביעה הצבאית

נגד

הנאשם: מונזר מחמוד חליל נור    ת.ז 902442607 / שב"ס
(באמצעות ב"כ עו"ד גוזלן עלי)

נ י מ ו ק י ם   ל ג ז ר   ד י ן

כב' השופט סרן מנחם ליברמן:

הנאשם הורשע כמפורט בהכרעת הדין בעבירות הבאות:
גרימת מוות בכוונה לפי סעיף 51 לצו לדבר הוראות ביטחון וסעיף 14(א)(4) לצו בדבר כללי האחריות לעבירה;
ניסיון לגרימת מוות בכוונה לפי סעיף 51 לצו לדבר הוראות ביטחון וסעיפים 14(א)(4) ו-19 לצו בדבר כללי האחריות לעבירה;
היזק בזדון לרכוש לפי סעיפים 353 ו-92 לצו בדבר הוראות ביטחון וסעיף 14(א)(4) לצו בדבר כללי האחריות לעבירה;
ניסיון לשידול לסחר בציוד מלחמתי לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי וסעיף 21 לצו בדבר כללי האחריות לעבירה;
מסירת ידיעות בעלי ערך צבאי לפי סעיף 63 לצו בדבר הוראות ביטחון.

בינואר 2002 נפגש עם הנאשם אדם המכונה "אבו טלאלי" שהיה פעיל בכיר במודיעין הצבאי של הרשות הפלסטינית. אבו טלאל מסר לנאשם כי בדעתו לשגר אישה לביצוע פיגוע התאבדות בשטח ישראל. אבו טלאל ביקש מהנאשם לשכנע את ידידתו וופא אדריס לבצע את הפיגוע, והנאשם הסכים לכך.

בעקבות שיחה זו פנה הנאשם אל וופא אדריס ושכנע אותה לבצע פיגוע התאבדות כפי שסוכם עם אבו טלאל. בשלב מסוים וופא אדריס חזרה בה מהחלטתה לבצע את הפיגוע, והנאשם נקרא לשוב לשכנע אותה, לחזק את ידה ולעודד את רוחה על מנת שהיא תמלא את המוטל עליה. לאחר הסכמתה הסופית של אדריס אף הדריך אותה הנאשם בדרכי גישה לירושלים, דרכי גישה אותם הכיר במסגרת עבודתו בסחר האדום. בסופו של דבר, לאחר שניסיונות השכנוע אל הנאשם נשאו פרי, ביצעה וופא אדריס ביום 27.1.2002 פיגוע במרכז ירושלים, פיגוע אשר כתוצאה ממנה נהרג פנחס טוקטלי ז"ל ונפצעו מעל 150 עוברים ושבים.

על עבירה זו חייב הנאשם לתת את הדין.

התביעה הצבאית ביקשנו להשית על הנאשם עונש של מאסר עולם בגין מעשיו אשר גרמו למותו של פנחס טוקטלי ז"ל, ובנוסף התבקשנו להטיל עונש הולם על הנאשם בגין יתרת העבירות, עונש אשר ירוץ במצטבר לעונש של מאסר עולם שנתבקש. בטיעוניה הדגישה התביעה את מעורבותו הרבה של הנאשם בתכנון הפיגוע, וחיוותו

-1-

P 3: 44

תאריך : 01/12/2004

תיק מס׳: 3465/02

1   של הנאשם לא רק חלק מהמעגל הפנימי של ביצוע העבירה אלא אף מהותו ועצמותו
2   של המעגל הפנימי.
3   התביעה גם ציינה כי כבר נקבעה הלכה בבית המשפט הצבאי לערעורים בע׳ איו״ש
4   183,190/03 כי עונשו של המשלח ראוי שיהיה, במקרים מסוימים, חמור אף יותר
5   מזה של המבצע העיקרי. כאשר חביצוע לא יוצא אל הפועל. אין לטעון כמובן כי
6   הנידון דומה לראיה באופן מוחלט, וזאת לנוכח העובדה כי במקרה שבפנינו הפיגוע
7   למרבה הצער אכן בוצע.
8
9   לעומת בקשת התביעה, סיכם הסנגור לעונש בדברים קצרים, וביקש שלא נטיל על
10  הנאשם עונש שיעלה על 30 שנות מאסר. לטענת הסנגור אין מקום לקבל את טיעוני
11  התביעה שגרסה כי הנאשם נמנה עם המעגל הפנימי של מבצעי הפיגוע. אליבא
12  דסנגור, מעשיו של הנאשם אינם יוצאים ממסגרת חתכנון והקשר ואין בהם בכדי
13  להצדיק הרשעה בעבירה של גרימת מוות בכוונה, ועל אחת כמה וכמה אין בהם
14  להביא להטלת עונש של מאסר עולם.
15
16  לאחר שמיעת הטיעונים גזרנו ביום 26.8.2004 על הנאשם עונש של מאסר עולם ועוד
17  שלושים שנות מאסר במצטבר.
18
19  פיגועי התאבדות הפכו במרוצת השנים האחרונות לאירועים תכופים אשר בתקופה
20  מסוימת נחיו מבחינת פיגוע רודף פיגוע. התאבדות עוקבת התאבדות, ושמות
21  החרוגים ומספר הפצועים נשכחו מרוב. כמו כן נפגעה כלכלת מדינת ישראל פגיעה
22  קשה, יחסי החוץ שלה חטפו מכה והשתתפותה באירועים בינלאומיים סבלה
23  מהתנכלויות. כל אלה ועוד, חודרות לשנאתם חתחומית של אלה אשר קמים
24  להשמידנו.
25
26  פיגוע התאבדות מטבעו דורש שיתוף פעולה של מספר גורמים. במרבית המקרים
27  מוצאים אנו בפיגועים מעין אלה לפחות ארבעה: מגייס, מהנדס, משלח ומתאבד.
28  ללא פועלם של ארבעת אלה ניתן לשער כי היינו נאנחים פחות תחת כאב הפיגועים
29  במקומותינו. מעבר לארבעת אלח, בדרך כלל יש אחרים אשר הקשר שלהם לפיגוע
30  רופף יותר, כאלה אשר לרוב נידן להחליף באחרים.
31
32  על מנת להילחם בנגע הפיגועים בית המשפט חייב לחוציא מסר לא מתפשר לכל
33  הצדדים הקשרים את עצמם למעשים נפשעים אלה, וביתר שאת לאלה אשר
34  מהווים את חוד החנית של הפיגועים, אלה אשר בלעדיהם אין, ואשר הפיגוע לא היה
35  יכול לצאת אל הפועל.
36
37  במקרה שבפנינו הנאשם לא רק איתר את מבצעת הפיגוע, לא רק שכנע אותה
38  להקריב את נפשה על מזבח רצח היהודים, הוא אף חגדיל לעשות וחזר אליה במסע
39  שכנועים נוסף כאשר חתברר כי למפגעת רגלים קרות, והיא חוככת בדעתה לא לבצע
40  בסופו של דבר מעשה רצח.
41
42  במעשיו אלה הביא את עצמו הנאשם אל תוככי המעגל הפנימי ביותר של מבצעי
43  הפיגוע ונמנה ללא ספק על אחת  מארבעת החוליות המנויות לעיל. ברגע שהנאשם
44  נכנס לתוך הקבוצה חזו אין חוא יכול להתנער מאחריות למעשה אשר בוצע בעזרתו,
45  ולתוצאותיו הנוראות. אחריותו של הנאשם למותו של פנחס טוקטלי ז״ל חינה
46  ישירה ועל אחריות זו חוא נשפט.
47
48  תפקידיו של שופט היושב בדין רבים הם. ביניהם חחובה לחביע בחלטותיו את הערך
49  העליון אשר החברה שלנו נותנת לחיי אדם, וחקדושח אשר נקשרת למושג זה. בעניין

-2-

TOTAL P.03

TOTAL P.03

תאריך : 01/12/2004

תיק מס' : 3465/02

1  שבפנינו, לאחר שחורשע הנאשם בעבירה של גרימת מוות בכוונה, ולאחר שקבענו כי
2  חלקו בפיגועים חלק חיוני הוא, עמש אחר שאינו עונש של מאסר עולם בלל לא
3  מתקבל על הדעת.
4
5  לנוכח האמור החלטנו להטיל על חנאשם עונש של מאסר עולם בגין הירצחו של
6  פנחס טוקטלי, ובנוסף עונש של 30 שנות מאסר במצטבר על יתרת העבירות אשר
7  ביצע.
8
9
10  לבי האב"ד סא"ל שלומי כהב:
11
12  אני מסכים.
13
14
15  השופט סרן שלמה ב"ץ:
16
17  אני מסכים.
18
19
20  מזכירות ביהמ"ש תעביר נימוקים אלה לצדדים באופן מיידי.
21
22  זכות ערער תוך 30 יום.
23
24  ניתן היום, 01/12/04, בלשכה.
25
26
27
28
29
30





שופט          אב"ד          שופט

-2-

P 3: 46