
**MILLER CHEVALIER**

Laura G. Ferguson
Member
(202) 626-5567
lferguson@milchev.com

January 22, 2015

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    *Sokolow v. Palestine Liberation Organization et al.*, 04-cv-397 (GBD) (RLE)

Dear Judge Daniels:

I write with respect to the second tranche of exhibits that Plaintiffs have indicated they intend to introduce through the testimony of Israel Shrenzel. *See* Emails from Plaintiffs' counsel to M. Rochon *et al.* (Jan. 21, 2015 at 8:06 p.m; Jan. 21, 2014 at 12:57 p.m.; Jan. 21, 2014 at 12:39 pm) (attached as Exh. 1). For the reasons set forth below, Defendants object to: PTE 267-273, 285, 286, 296, 305, 352, 373, 503, 602, 679, 711, and 832. These exhibits (except the video clips) are attached in the accompanying addendum.

### (1) Ali Ja'ara 2012 Funeral — PTE 267-273 (photos), PTE 286 (news report), PTE 679 (video)

Plaintiffs intend to use <u>nine</u> exhibits regarding suicide bomber Ali Ja'ara's 2012 funeral, which occurred eight years after the bombing at issue (the 2004 Goldberg bombing). Seven of the exhibits are photographs of Ja'ara's funeral (PTE 267-273), two of which are of the same image (PTE 270 at 2 and PTE 271). PTE 286 is a WAFA press release entitled "Bethlehem Escorts its Two Martyrs to their Final Resting Places." PTE 679 is a Palestinian Media Watch clip purporting to be PA TV coverage of Ja'ara's funeral, which is inadmissible hearsay from an unidentified declarant.

The photos, video, and news report should be excluded because they are irrelevant to the PA's liability for the 2004 Goldberg bombing. Plaintiffs will ask the jury to conclude that the 2012 funeral shows the PA's liability for the 2004 suicide bombing. The lack of temporal proximity does not permit this inference.[1] The exhibits also are cumulative and more prejudicial

---

[1] The circumstances of the burial also do not permit that inference. The IDF had a controversial practice of refusing to return to the families the remains of suicide bombers and alleged terrorists who were killed in Israel.

(footnote continued on next page)

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com

1543267.1



**MILLER CHEVALIER**

January 22, 2015
Page 2

than probative. The Palestinian Media Watch clip was prepared by Itamar Marcus's organization, and Plaintiffs cannot call Marcus in their case-in-chief. Shrenzel cannot lay the foundation for evidence Plaintiffs intended to offer through Marcus.

### (2) 2012 and 2013 Visits to Prisoners' Families — PTE 285, 296, and 602

Defendants also object to the use of PTE 602, PTE 285, and PTE 296. PTE 602 purports to be an undated newspaper article from Al-Ayyam regarding a visit by the Minister of Detainees to the family of Nasser Shawish, "who started a hunger strike with ten other prisoners last May 25 in support of ending the division and for national reconciliation." PTE 602 at 1. According to Shrenzel's report (at 53 n.237) the article is dated June 9, 2012. PTE 285 is another news article, from Palestine News Network, dated September 30, 2012, regarding a visit by the Chief of Police of Bethlehem to the home of the family of Hilmi Hamash. Both news articles are inadmissible hearsay, post-date the attacks at issue by at least eight years, and are irrelevant to the PA's liability. PTE 296 purports to be a July 13, 2013 statement from the Ministry of Detainees' website and discusses Qaraqe's visit to Hamash's mother, who "underwent surgery during which the toes of her left foot were amputated." PTE 296 at 1. Qaraqe also visited the sister of prisoner Ahmed Salah. The article notes that both of her parents had died during Salah's incarceration. *Id.* The website report is entirely irrelevant. Hamash and Salah were convicted in connection with the 2004 Goldberg bombing. Qaraqe's visit to Hamash's mother and Salah's sister over eight years after the bombing is not relevant to PA liability for the bombing. The article is more prejudicial than probative and should be excluded.

### (3) Videos Regarding Kahira al-Sa'adi — PTE 352, 373, and 711

Plaintiffs want to use three videos related to Kahira Sa'adi, who was convicted in connection with the March 2002 bombing carried out by Mohammad Hashaika (the Bauer incident). PTE 352, 373, and 711. The Plaintiffs previously indicated their intention to use a different video related to Kahira Sa'adi (PTE 372), which was the subject of prior correspondence with the Court. *See* DE 702, 708. Plaintiffs now have changed course and are

---

(footnote continued from previous page)

Instead, they were buried in a cemetery for "terrorists and enemy casualties" under the IDF's control. (Shrenzel Rpt. at 63). In 2012, in a "good will gesture," Israel returned the remains of 91 Palestinians to the Occupied Palestinian Territories, including those of Ja'ara. The event received significant publicity because Israel's policy of keeping the remains was the source of considerable friction between the Israelis and Palestinians. In 2014, the Israeli Supreme Court ruled that the IDF had to return the remains of Palestinians to their families. *See* Exh. 2 (Reuters report).


**MILLER CHEVALIER**

January 22, 2015
Page 3

offering three different videos. PTE 353 has been characterized as an excerpt from a film called "Brides of Shahida." Plaintiffs have not identified a witness who can lay a proper evidentiary foundation for this video. It is an interview with Kahira Sa'adi, presumably while she was incarcerated. She discusses her role in the bombing. Kahira Sa'adi was not a PA employee so her statements are not admissions of a party opponent. PTE 373 is a video clip in Arabic of unknown date and source, with an unidentified declarant. PTE 711 is a video prepared by Itamar Marcus's organization, PMW, palwatch.org, which purports to be a clip of an August 30, 2011 PA TV broadcast with an unidentified declarant wishing Kahira Sa'adi and others "happy holidays." The clip is accompanied with commentary by PMW. The Court has previously ruled, and Plaintiffs have agreed, that Itamar Marcus will not be called in their case-in-chief. Plaintiffs may not use Shrenzel as a vehicle for introducing evidence the Court would not allow them to introduce through Marcus. In sum, all three videos are inadmissible hearsay for which Plaintiffs cannot lay a proper evidentiary foundation through Shrenzel. They also are cumulative, and more prejudicial than probative, because Sa'adi is not a PA employee.

### (4) "Millions of Martyrs" Video of Yasser Arafat — PTE 305

This video depicts Yasser Arafat allegedly speaking to a group of boy scouts on January 31, 2004. *See* PTE 305. According to Plaintiffs' translation, Arafat purportedly says:

> With our souls and our blood we will redeem you, oh Palestine! Together, jointly, side by side, (we will march) until Jerusalem! Until Jerusalem! . . . Towards Jerusalem are marching millions of martyrs!

Defendants objected to this video on January 5, 2015, as part of a letter addressing the inadmissibility of hundreds of Plaintiffs' proposed trial exhibits that contain inflammatory political rhetoric concerning the Israeli-Palestinian conflict. *See* DE 715; DE 715-1 at 6 (specifically objecting to PTE 305). The Court has repeatedly held that such evidence has no place in this case, and this video is no exception. In it, Arafat does not incite terrorism, and his statements are altogether unrelated to the attacks at issue in this case. The video therefore has no probative value. And, just as the Court has already held that statements of political rhetoric are irrelevant, it has likewise repeatedly held that such statements would unduly prejudice the Defendants. To the extent that the Court has not already excluded PTE 305 in its earlier rulings, it should now explicitly hold that it will not come into evidence in this case.

### (5) "Dying to Win" — PTE 503



**MILLER CHEVALIER**

January 22, 2015
Page 4

  This exhibit is an excerpt from a book written by Robert A. Pape called "Dying to Win: The Strategic Logic of Suicide Terrorism." *See* PTE 503. It is hearsay and does not come within any exception to the hearsay rule and should be excluded on that ground alone.

In the excerpt, Pape writes:

> The strategic logic of suicide terrorism is aimed at political coercion. The vast majority of suicide terrorist attacks are not isolated or random acts by individual fanatics, but rather occur in clusters as part of a larger campaign by an organized group to achieve a specific political goal. . . . [E]very group mounting a suicide campaign over the past two decades has had as a major objective – or as its central objective – coercing a foreign state that has military forces in what the terrorists see as their homeland to take those forces out.

PTE 503 at page 21 of book; *see id.* at page 23 ("[M]odern suicide terrorism is best understood as an extreme strategy for national liberation against democracies with troops that pose an imminent threat to control the territory the terrorists view as their homeland"); *see also id.* at page 22 ("Suicide terrorists sought to compel . . . Israeli forces to quit the Gaza Strip and the West Bank in 1994 and 1995 . . .").

  Shrenzel did not cite Pape's book, or this particular excerpt, in his report. Pape is not qualified as an expert in this case, and Plaintiffs have proffered no evidence establishing that this book could possibly constitute a learned treatise. *See* Fed. R. Evid. 803(18). Regardless, Pape does not purport to address what motivated the particular suicide attackers implicated in this case, and his generalized conclusions would not assist the jury in determining whether the PA and the PLO should be held liable for the suicide attacks at issue in this case. PTE 503 is therefore irrelevant. It is also highly inflammatory. *See, e.g.*, PTE 503 at pages 272-74 (listing dozens of "Hamas/Islamic Jihad vs. Israel" attacks that are irrelevant to the attacks in this case); *id.* at page 23 ("September 11 has changed the lives of Americans. Every day, many wonder if each airplane, building, or bus they see could be a danger to them or their families. When people themselves are weapons of war, it is hard to be confident of safety."). Such scare tactics have no place in this case, and PTE 503 should be excluded from evidence.

### (6) Naveh Report — PTE 832

  PTE 832 is a so-called "report" entitled "The Involvement of Arafat, PA Senior Officials and Apparatuses in Terrorism against Israel, Corruption and Crime," which was prepared by



January 22, 2015
Page 5

former Israeli government minister Dani Naveh. This exhibit is the same as PTE 539, which the Court has already excluded from evidence. *See* Tr. 1/16/15 at 552:18-553:7. On January 16, 2015, Plaintiffs' counsel stated that Plaintiffs intended to use only "a photograph of Arafat." *Id.* at 555:18-19. In particular, "the one with the gun." *Id.* at 555:22. Plaintiffs have already introduced that photograph as a revised version of PTE 539. To the extent that Plaintiffs seek to re-litigate the admissibility of any other part of the report, the Court should not permit them to do so.

Sincerely,

Laura G. Ferguson