# ARNOLD & PORTER LLP

Kent A. Yalowitz

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

January 22, 2015

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
   for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:    *Sokolow, et al. v. Palestine Liberation Organization, et al.*
              Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

      I write in connection with our conversations earlier today about certain of the police magazines published by the PA, as well as the video of Kahira Sa'adi, in which she personally describes her role in the January 22, 2002 suicide bombing (Ex. 352). These are some of the *most* relevant pieces of evidence in the case. The police magazines go directly to the question of whether the employee-perpetrators were acting in accordance with PA policy and thus within the scope of their employment. The video is a direct piece of eyewitness evidence describing exactly what happened at the scene of the crime, from one of the perpetrators herself.

      Defendants have asked that the Court exclude this central evidence under Rule 403. Defendants are abusing Rule 403. "Rule 403 does not provide a shield for defendants who engage in outrageous acts …. It does not generally require the [proponent] to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *See United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998); *see also United States v. DeMuro*, 677 F.3d 550, 559 (3d Cir. 2012) (same); *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (same). Contrary to defendants' position, "the Federal Rules ***favor*** placing even the nastier side of human nature before the jury if to do so would aid its search for truth." *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1135 (4th Cir. 1988) (emphasis added).

      It is well established Second Circuit law that "probative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact." *United States v. Salameh,* 152 F.3d 88, 123 (2d Cir. 1998). Evidence is only prejudicial "when it tends to have some adverse effect upon a defendant ***beyond*** tending to prove the fact or

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 22, 2015
Page 2

issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980); *United States v. Tice*, 133 F.3d 908 (2d Cir. 1998) ("[T]he prejudicial nature of the evidence stemmed directly from its probative value … thus the district court did not abuse its discretion in determining that the evidence was admissible under the Rule 403 balancing test.").

### 1. Police Magazines

At the final pre-trial conference on January 6, 2015, the Court explained that "[a]ny statements [in the Police Magazines] that you have that are telling people to commit violence, I will allow."  Tr. (Jan. 6, 2015) at 93.

However, the Court more recently indicated its intent to exclude certain exhibits, including four police magazines making statements that fit the Court's earlier criteria. Tr. (Jan. 21, 2015) at 995-97.  We ask the Court to apply its original January 6 ruling to four exhibits, which are indeed "telling people to commit violence":

- "[T]he world cannot be saved except by ***liquidating the Jews***, banishing them to a remote location where they are prohibited from communicating with others …."  Ex. 201.

- "According to Abu Haraira, the Messenger of God said, 'The [last] hour shall not come until the Muslims fight the Jews, and the Muslims kill them; and until the Jew hides behind the tree and the stone, and the stone or tree says, '***Oh Muslim, oh servant of God, this Jew is behind me, and so come and kill him***'…."  Ex. 202.

    "The Messenger of God [Muhammad] taught us, in practical terms, how we should deal with Jews, through his pure life story and his triumphant path. He treated them as citizens on paper … until enmity and abrogation of covenants and agreements began, on their part, and he was resolute with them, and he

ARNOLD & PORTER LLP

Hon. George B. Daniels
January 22, 2015
Page 3

> *eradicated them from Medina*, by the roots.  He plucked out their thorns and stripped them of their weapon[s] …. "  *Id.*

- "You are the sickness in the body of this community, there is no cure for you but extermination, and ***no remedy for your necks twisted with pomposity and deception except to cut them with the sword of truth."***  Ex. 204.

- "[F]or the Jewish people, since it manifested, has been a ***parasite*** upon those communities surrounding it …."  Ex. 177.

The fact that evidence may upset people is not a reason to keep it out where it is probative of an element of the case.  *See, e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 131-32 (2d Cir. 2010) (upholding admission of telephone recording of defendant discussing publication sympathetic to jihad); *United States v. Yousef*, 327 F.3d 56, 120-22 (2d Cir. 2003) (upholding admission of letter describing defendant's desire to target American institutions in retaliation for America's support of Israel); *United States v. Mostafa*, 16 F. Supp. 3d 236, 256-57 (S.D.N.Y. 2014) (permitting admission of recorded statement expressing support for Osama Bin Laden and jihad).

Here, the PA police magazines are strong evidence of defendants' vicarious liability—the only centrally contested element of the case.  This evidence shows that when the PA's "Political Guidance" commissioners spoke to the security forces, they espoused a violent message encouraging the "eradication," "liquidation," and "killing" of Jews.  The only potential "prejudice" that could arise from these statements is that they prove that defendants encouraged their employees to commit violent acts against a particular ethnic group.

In analogous circumstances, courts have repeatedly held that defendants' own words are *not* unduly prejudicial under Rule 403.  *See, e.g.*, *Mullen*, 853 F.2d at 1132-35 (district court's decision, in a hiring discrimination case, to exclude evidence that defendant used racial slurs was an abuse of discretion); *Robinson v. Runyon*, 149 F.3d 507, 514-15 (6th Cir. 1998) (in a discrimination case, "[t]hose shocking messages,

# ARNOLD & PORTER LLP

Hon. George B. Daniels
January 22, 2015
Page 4

offensive though they may be to the court and to the jury, comprise the signature element of [the case]."); *Wilson v. City of Aliceville*, 779 F.2d 631, 635-636 (11th Cir. 1986); *Strauss v. Microsoft Corp.*, 1995 WL 326492, at *4-5 (S.D.N.Y. June 1, 1995) (admitting evidence of sexist remarks and e-mail messages in employment discrimination trial).

Plaintiffs respectfully request that the Court admit exhibits 177, 201, 202, and 204.

### 2. Kahira Sa'adi Video—Ex. 352.

Earlier today, the Court had the opportunity to view Exhibit 352. Defendants' only objection was that the video contains "lots of things that aren't self incriminatory but are unpleasant to see and hear for people." Tr. (Jan. 22, 2015) at 1225. That objection is not well-founded. However, in order to narrow the issue and save time for the jury, plaintiffs respectfully ask that the Court permit them to play *a portion* of the clip, translated as follows:

> I am prisoner Kahira al-Sa'adi, from Jenin camp, a mother of four kids. I was arrested on May 7, 2002. The charge against me is facilitating a martyrdom operation and helping Mujahedeen. I left at one-thirty in the afternoon. It was still noon. My children were back from school. I had prepared food for them and they had eaten. I left them at home and told Sandy, "Take care of your brothers and sisters while I go out, I won't be long." I went to Ramallah and I took the martyr from Ramallah right away from Ramallah to Jerusalem.
>
> Q: How did you decide where you wanted the shahid [martyr] to explode?
>
> A: It was difficult for us to enter a place, like a restaurant or something similar because there was intense security in Jaffa Street, so the operation was performed in a random street. There were two busses passing by and I asked the martyr to carry out the operation in the street because there

ARNOLD & PORTER LLP

Hon. George B. Daniels
January 22, 2015
Page 5

> was no way to enter another place. I told him, "Say you want to stop a bus as if you want to get on it. Get ahead of me and I will walk a little way with you.
>
> So he went ahead of me and he said, "Goodbye. There is no God but Allah. Mohamed is the messenger of Allah."
>
> I told him, "Allah will show you favor. Allah willing, you will reside in Paradise. May Mohamed entreat Allah for us."

This statement is obviously self-inculpatory, and the video comes from a commercially available documentary that can easily be authenticated by the witness who is on the stand.

Respectfully,

Kent A. Yalowitz

cc: All ECF Counsel