

<div style="text-align:right">
Mark J. Rochon<br>
Member<br>
(202) 626-5819<br>
mrochon@milchev.com
</div>

February 1, 2015

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:  *Sokolow v. Palestine Liberation Organization et al.*
           04-CV-397(GBD)(RLE)

Dear Judge Daniels:

     I write concerning Plaintiffs' redirect examination of Israel Shrenzel.  The examination was improper because it went beyond the scope of cross-examination and elicited inadmissible – and highly prejudicial – evidence.  Tr. at 1567-1594.  Following the examination, Defendants asked the Court to grant a mistrial, or in the alternative, to strike the redirect examination.  *Id.* at 1596-1600.  The Court denied Defendants' requests based on its belief that the testimony "was within the scope of cross."  *Id.* at 1599.  But the Court stated that it "will look at the transcript" and determine "if [the Court] believe[s] some other remedy is appropriate."  *Id.* at 1599-1600.

     Defendants have now reviewed the transcript of the cross-examination and redirect examination of Mr. Shrenzel.  *See* Exhibit A.   The transcript proves that Plaintiffs' redirect examination did, in fact, go beyond the scope of the cross-examination.  More importantly, it shows that Plaintiffs intentionally elicited inadmissible and highly prejudicial evidence.

    1. <u>Testimony About the Liquidation or Extermination of Jews in Police Magazines</u>

     Prior to Mr. Shrenzel's testimony, Plaintiffs filed three separate letters seeking the admission of police magazines that call for the "liquidation" or "extermination" of Jews.  *See* DE 724, 756, and 769.  The Court ruled that those magazines were inadmissible.  *See* Tr. at 995-996; *id.* at 1233; *id.* at 1280.  As the Court explained, "[PTE] 201 is the first one on here, talking about liquidating the Jews . . . I think it is highly inflammatory and prejudicial and the undue prejudice outweighs whatever probative value . . . ."  *Id.* at 996:16-25; *see also id.* at 1233:11-12 ("it's clearly unduly prejudicial and duly prejudicial based on stated positions about religion").

Case 1:04-cv-00397-GBD-RLE   Document 781   Filed 02/01/15   Page 2 of 6



Hon. George B. Daniels
February 1, 2015
Page 2

      After Plaintiffs elicited testimony on direct examination about certain police magazines that were deemed admissible by the Court (*i.e.,* magazines that do not reference the liquidation or extermination of Jews), Defendants cross-examined Mr. Shrenzel about just one of them: PTE 175. Tr. at 1564-1567. Defendants read to the jury parts of PTE 175 that Plaintiffs did not read to the jury during the direct examination. *Id.* Significantly, PTE 175 does not include any language about the liquidation or extermination of Jews, which is why the Court found it admissible.

      On redirect examination, Plaintiffs did not focus on PTE 175, however. Instead, they elicited testimony about the "gradual degree of intensification of the level of incitement of calling upon the apparatuses to take part in activities against Israel." *Id.* at 1568:8-10. Then, Plaintiffs specifically asked Mr. Shrenzel about magazines that call for the "liquidation or extermination" of Jews, which led to testimony about magazines that refer to Jews as the "descendants of monkeys and pigs":

> Q. Do you recall seeing issues of these magazines calling on people to engage in *liquidation* or *extermination* or things like that?
>     Mr. Rochon: Objection. Leading.
>     The Court: Overruled. You can answer.
> A. They were. They even reached that part, our *part that speaks about the Jews and descendants of monkeys and pigs; that there are anti-Semitic expression*. Usually they refrain from.
>     Mr. Rochon: Objection.
>     The Court: No, overruled. He was asked about this.
> [A.] They refrain from directly saying please go out and kill all Jews or all the Israeli citizens. But, again, it is the explicit, but no less than that, the implicit messages of these magazines. And, as I said, it is really a very -- it was, I believe, a contributing factor.

*Id.* at 1569:6-20 (emphasis added). Plaintiffs' question and Mr. Shrenzel's answer were directly in violation of the Court's prior rulings. *See* Tr. at 995-996; *id.* at 1233; *id.* at 1280. Worse yet, Plaintiffs' admission of this inadmissible and highly inflammatory evidence was not the first time Plaintiffs intentionally tried to violate the Court's ruling on this evidence. During the direct examination of Mr. Shrenzel, Plaintiffs tried to admit a police magazine that discussed "liquidating the Jews" even though Plaintiffs knew that the Court had already excluded this evidence. *Compare id.* at 1279:11 (Mr. Yalowitz to Mr. Shrenzel: "Please turn to Exhibit 201. Do you have 201 before you?") *with id.* at 1280:6-11 (Mr. Rochon: "This is one that you

Miller & Chevalier Chartered



Hon. George B. Daniels
February 1, 2015
Page 3

excluded." Mr. Yalowitz: "I agree with that." The Court: "So why are we up here?" Mr. Yalowitz: "Because I want to offer it and have him object to it and --" The Court: "But I already ruled on this.").

During redirect, when Plaintiffs intentionally elicited Mr. Shrenzel's testimony about "liquidating the Jews" and "monkeys and pigs," Defendants objected and the Court overruled the objection based on its belief that "[Mr. Shrenzel] was asked about this." *Id.* at 1569:15. Moments later and outside the presence of the jury, Defendants again objected to "language about Jewish people and exactly the kind of inflammatory religious language this court ruled cannot come in." *Id.* at 1596:7-12. In response, the Court stated, "My recollection is [Mr. Shrenzel] referenced that kind of language on cross." *Id.* at 1596:13-14. The Court was mistaken. On cross-examination, Mr. Shrenzel was not asked – and he did not reference – any inflammatory language about Jews. *See id.* at 1563:22-1567:12. In fact, neither Defendants nor Mr. Shrenzel mentioned the "Jews" at all during cross-examination. *Id.* Rather, Defendants pointed out the language of just one police magazine, PTE 175, which, as noted above, does not contain inflammatory language about Jews. *Id.*

Plaintiffs' repeated and intentional violations of the Court's rulings cannot be countenanced, particularly where, as here, it resulted in the admission of evidence that the Court already deemed inadmissible because of its prejudice to Defendants.

2. <u>Testimony about the Preventive Security Services Letter, the Custodial Statements of Munzar Noor, and Inadmissible Evidence of Tawfiq Tirawi's Alleged Involvement in the March 21, 2002 Attack</u>

On direct examination, Plaintiffs introduced and elicited testimony about an internal Preventive Security Service (PSS) letter, PTE 233, that discusses the January 27, 2002 bombing by Wafa Idris (PTE 233) and the custodial statements of Munzar Noor, PTE 465 and 467, who was convicted of involvement in the January 27, 2002 attack. On cross-examination, Defendants decided not to cross-examine Mr. Shrenzel about the PSS letter or the custodial statements of Noor. Indeed, neither the PSS letter nor Noor's custodial statements was even mentioned during cross-examination. Tr. at 1477-1567. Yet on redirect, Plaintiffs specifically elicited testimony about the PSS letter and Noor's custodial statements. *Id.* at 1589-94.

Defendants immediately objected to Plaintiffs' inquiry about the PSS letter and stated the basis of the objection: "Scope." *Id.* at 1589:4-6. Defendants also objected to Plaintiffs' inquiry about Noor's statements. *Id.* at 1590:5. At side bar, Defendants reiterated that "[t]his is an area that we did not inquire in at all." *Id.* at 1591:23-24. Plaintiffs responded, "They did. They



Hon. George B. Daniels
February 1, 2015
Page 4

asked [Tirawi] wasn't convicted. They completely opened the door on this." *Id.* at 1591:25-1592:1." Plaintiffs are wrong. On cross-examination, Plaintiffs merely asked Mr. Shrenzel whether Tawfiq Tirawi had been convicted of the March 21, 2002 attack or the January 27, 2002 attack. *Id.* at 1513:24-1514:25. These narrow questions did not open the door to a letter that Mr. Shrenzel even admitted does not show that Tirawi had "prior *knowledge* of the attack." *Id.* at 1594:10-11 (emphasis added). And these narrow questions also did not open the door to Noor's custodial statements, which even in an unredacted form do not implicate Tirawi.[1]

To make matters worse, Plaintiffs elicited inadmissible – and highly prejudicial – evidence about Tawfiq Tirawi during their inquiry about the PSS letter. Specifically, they elicited the following statement from Mr. Shrenzel, over numerous contemporaneous objections:

> But given our overall knowledge about the profound involvement of Tirawi during the whole period, in the series of attacks, of covering up, *of providing weapons, for example, the explosives used in the Hashaika attack*, if we take all of the Tirawi file in consideration, I think it's more likely than not that he had prior knowledge and involvement in that attack. That's my professional assessment.

*Id.* at 1594:11-19 (emphasis added). As Plaintiffs were aware, there is no admissible evidence of Tirawi's alleged provision of the explosives used in the March 22, 2002 bombing by Mohammed Hashaika. But like they did with the police magazines, Plaintiffs used redirect as a pretext for gaining the admission of inadmissible – and highly prejudicial – evidence.

3. Testimony about the State of Mind of the PA

Mr. Shrenzel testified, over objection, about the state of mind of the PA. For example, in his lengthy response to Plaintiffs' improper question about the "liquidation or extermination" of Jews, he testified, in part, that "[suicide shooter Said Ramadan] was exposed to the atmosphere that is reflected here; and for him it was clear, this is what my superiors expect from me. *They want me to go out and shoot indiscriminately in the streets of Jerusalem.*" *Id.* at 1570:3-10

---

[1] Plaintiffs' attempt to implicate Tirawi, and by extension the PA, through Noor's custodial statements shows, once again, that Plaintiffs are abusing the Court's ruling that Plaintiffs may not use Noor's custodial statements to implicate someone else in the attack.



Hon. George B. Daniels
February 1, 2015
Page 5

(emphasis added). He also gave the following testimony, over objection, about promotions to perpetrators:

> It reflects a policy of praise, of appreciation, of endorsing what [the perpetrator] did. And this is really unthinkable, yes? It's like if -- let's say a convicted murderer that belongs to the security forces of a certain country, it's unheard of, and it's totally illogical that he gets promoted, and it's a reflection, as I tried to explain on Monday and today, this is a reflection of the policy of the PA. *They wanted him to do it.* He did it. They praised him for that and they continue their support for him.

*Id.* at 1578:1-9 (emphasis added). Mr. Shrenzel's testimony goes well beyond the boundaries of acceptable expert testimony. Indeed, courts in this jurisdiction have repeatedly held that expert testimony about the state of mind of individuals or entities is improper. *See Marvel Worldwide, Inc., v. Kirby*, 777 F. Supp. 2d 720, 729-30 (S.D.N.Y. 2011) (*affirmed in pertinent part by Marvel Characters, Inc. v. Kirby,* 726 F.3d 119 (2d. Cir. 2013)); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *Linde v. Arab Bank*, 920 F. Supp. 2d 282, 285 (E.D.N.Y. 2011).

\*\*\*

There can be no question that Plaintiffs' redirect examination of Mr. Shrenzel was improper. Their questions went beyond the scope of cross-examination and they intentionally elicited inadmissible and highly prejudicial evidence. The Court should therefore grant a mistrial. Alternatively, the Court should strike the redirect examination in its entirety and instruct the jury as follow:

> Members of the jury, I have stricken from the record the entire redirect examination of Israel Shrenzel. That testimony was improper. This means that you must disregard all of the testimony given by Mr. Shrenzel during his redirect examination. The redirect examination was the testimony given by Mr. Shrenzel in response to questions asked by Mr. Yalowitz on Wednesday, January 28, 2014. All of that testimony you may not consider. You may consider the testimony given by Mr. Shrenzel on direct examination and on cross-examination. But you may not consider the testimony on redirect examination.



Hon. George B. Daniels
February 1, 2015
Page 6


Should the Court not grant a mistrial or strike the redirect examination in its entirety, the Court should prohibit Plaintiffs from arguing in closing or otherwise relying on any testimony during redirect examination related to the police magazines, Tawfiq Tirawi, the PSS letter, or Noor's custodial statements.  The Court should also prohibit Plaintiffs from arguing in closing or otherwise relying on any testimony from Mr. Shrenzel about the PA's state of mind.

Sincerely,

Mark J. Rochon

cc:  All ECF Counsel

Miller & Chevalier Chartered