1       UNITED STATES DISTRICT COURT

2       FOR THE DISTRICT OF COLUMBIA

3

4   ESTATE OF ESTHER KLIEMAN, et al.,)
                                    )
5           Plaintiffs,             )
                                    )
6   vs.                             ) Civil Action
                                    ) No. 04-1173 (PLF/JMF)
7   THE PALESTINIAN AUTHORITY;      )
    et al.,                         )
8                                   )
            Defendants.             )
9   _____)

10

11

12

13

14       30(b)(6) DEPOSITION OF MAJED FARAJ

15              JERUSALEM, ISRAEL

16              AUGUST 8, 2010

17

18

19

20

21

22

23

24

25   REPORTED BY:  BRENDA MATZOV, CA CSR NO. 9243

1    Q.   Thank you, General.

2         As it relates to both or either Zafer Rimawi

3    or William Hatib, do you have any recollection on behalf

4    of the Palestinian Authority that either one was ever

5    employed in the security services or any aspect of

6    security for the Palestinian Authority?

7    A.   I don't know.

8    Q.   On behalf of the Palestinian Authority, who

9    would be a better person to ask than you as to whether

10   or not these two persons were ever employed by the

11   Palestinian Preventive Security Services and/or

12   Force 17?

13        MR. O'TOOLE:  Objection to the extent that

14   this is outside the scope of his designation.  These

15   names are mentioned in the Supplemental Notice we

16   received.  And there will be a designee tomorrow that

17   will be prepared to talk about these issues.

18        But to the extent the General can answer the

19   question, he may answer the question.

20        MR. HEIDEMAN:  Thank you.

21        THE WITNESS:  What's the point of linking

22   these names to the whole case?

23   Q.   BY MR. HEIDEMAN:  I'll answer.

24   A.   It's usual, it's normal to have someone in

25   an apparatus, in a service, and commit mistakes.  Yes.

AUGUST 8, 2010 – MAJED FARAJ

```
 1    It might be the Force 17, the Preventive Security.  In

 2    any service -- and even in the Palestinian Authority,

 3    working in the Palestinian Authority -- he can commit

 4    and he might commit mistakes.  So do I understand that,

 5    if someone commits a mistake, that all the Palestinian

 6    Authority is committing the mistake?

 7            For sure, mistakes happen by individuals.

 8    But this will never be the policy or the position of

 9    the Palestinian Authority.  And I'm really surprised

10    that, if a person or two or three out of 2,000 and

11    3,000, if these two or three commit mistakes, that

12    the whole Palestinian Authority would be committing

13    the mistake.  There isn't in history where you put to

14    trial armies because of the mistakes of one soldier here

15    or there.  Armies or security forces include individuals

16    who commit mistakes.  This happens.

17            And if we take this, can we say that the

18    Israeli soldiers, individual soldiers, who are taken

19    to court because of certain mistakes, do we assume that

20    the whole Israeli Army is put to trial or is committing

21    the mistake or the Israeli government is committing

22    the mistake?  We hear a lot about mistakes of Israeli

23    soldiers.  And, in many cases, they are accused of

24    unjustified killing of people.  But we have never

25    heard that the Israeli Army is put to trial.  Even
```

AUGUST 8, 2010 - MAJED FARAJ

1    in the recent cases, especially Freedom Flotilla and

2    the recent incidents that happened, they talk about

3    individual conduct, about measures by individuals.

4           Because we have to understand one thing.

5    These security services and forces and the Palestinian

6    Authority, if we want to treat it as committing the

7    mistake, this is a big difference here.  Why?  Because

8    we know that this Palestinian Authority, these security

9    services stopped and prevented many operations.  So we

10   must not let an individual mistake by an individual lead

11   to the trial of a whole institution and the whole system

12   based on the assumption that this mistake happened and

13   even under all the difficult conditions that we faced.

14          And if this is the case, I can have an

15   attorney.  The Israeli Army killed my father in 2002,

16   April 10th, 2002.  And they shot him with 45 bullets.

17   I didn't say then that the whole Israeli Army is

18   a murderer.  So if we are looking for mistakes of

19   individuals in order to try a whole system and the

20   whole Palestinian Authority, I believe this is not fair.

21   There is no justice in this.

22          I'm not defending here those who committed

23   the mistakes.  And those who commit mistakes must be

24   punished.  I'm also defending here the absolute majority

25   of the people who are protecting the Peace Project.  And

AUGUST 8, 2010 - MAJED FARAJ

1    these people working in these services, these prevented

2    terrorism, prevented operations.  They prevented this

3    trend.  They prevented extremism.

4          If someone commits a mistake here or there,

5    you cannot put to trial a whole entire institution.  You

6    can take the whole institution to trial if the 18,000 or

7    17,000 members in those services carried their weapons

8    and shot towards Israel.  Then you can take them to

9    trial.  Or even if they fought against the Israeli

10   Army when the Israeli Army entered the Palestinian

11   Territories.  So there was no decision to open fire

12   at the Israelis or to clash with the Israeli Army.

13         And, of course, the other thing is that

14   there are Palestinian elements who work on behalf

15   of others who have agendas against the Palestinian

16   Authority.  And they can use any disguise, any name,

17   any title.  And for political reasons, they can give

18   out any statement in the media and press, especially

19   that politicians have become like actors.  All of them

20   are on TV, not only here, but everywhere.

21         Therefore, we are clear.  Those who commit

22   mistakes must be punished.  But these services and this

23   Authority prevented hundreds of operations against

24   Israel.  And you should not look at it like, if someone

25   commits a mistake, the whole system is a criminal here.

1          And, under different conditions, I would be

2     sitting in his place, because the same as his relative

3     was killed, with all the pain that I feel and sympathy

4     that I feel towards him, I also suffered the killing of

5     someone dear to me.  And if his relative was killed by

6     a thug in the street, my relative was killed by the

7     Army, which means the government killed him.  The same

8     government, the same Army that I meet with in order to

9     prevent terrorism and extremism, because I know that

10    mistakes happen.  And there is no decision to open fire

11    by all the Palestinian people.

12          So there are victims.  Like the Esther Klieman

13    case that we are discussing, we have also victims.  But

14    the difference here is that we put to trial all these

15    people when we can within our capabilities.  That is why

16    I'm talking about justice here.

17          And you might find in your files and records

18    here four, five, six names, additional names.  But we

19    have, like, 17,000 or even 18,000 who work in the

20    Palestinian Authority security services.  Rimawi,

21    maybe he might have worked six months in the security

22    services.  But we have people who started since 1994

23    until now.  And if Rimawi did this and opened fire, I

24    don't know.  These are Israeli documents.  So I don't

25    know.  But if this happened, there are on the other side

1    thousands who prevented operations against Israel and

2    who still work to prevent operations against Israel.

3              The same applies in the Force 17 and in the

4    Preventive security, in the General Intelligence, in

5    all the security services.  Anyone who commits a mistake

6    must be punished.  But there is no law in the world

7    that says that we must punish an entire people for the

8    mistake of an individual.

9        Q.    General, first of all, let me express to you

10   my condolences on the death of your father.

11       A.    (In English.)  Thank you.

12       Q.    Would you like a recess before we continue?

13       A.    No.  We can continue.

14       Q.    Thank you.

15             You asked me, in your last answer, a number

16   of points, one of which was a question.  And that

17   relates to the connection of these two names —— and

18   I'm paraphrasing —— the connection of Zafer Rimawi and

19   William Hatib to Tamer Rimawi or to the Klieman case.

20             And just on that one point, without commenting

21   on any of the other points you made, let me ask you:

22   Are you aware that Zafer Rimawi, who we allege to be

23   a Force 17 member and Palestinian Preventive Services

24   member, recruited Tamer Rimawi into the Al—Aqsa Martyrs

25   Brigade?