**ARNOLD & PORTER LLP**

Kent A. Yalowitz

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

February 3, 2015

**VIA ECF AND HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

>   Re:   *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
>         Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

I write in response to defendants' letter of February 1, 2015, asking the Court to strike the re-direct examination of Israel Shrenzel. [DE 781]. This Court has already rejected the application. Defendants' second application is as meritless as the first.

    **1.   Security Apparatus Magazines**

On cross-examination, defendants read portions of Pls.' Ex. 175 to create a misimpression that the message of the PA police magazines was one of "peace." *See* Tr. (1/18/15) at 1563-67. This questioning opened the door to testimony demonstrating that the four security apparatus magazines[1]—which were published throughout the al-Aqsa Intifada—did not, in fact, reflect such a message, and, instead, actually advocated for horrendous actions such as the "liquidation" or "extermination" of civilians.

Defendants make much of the fact that the Court excluded the admission of Exhibit 201, which included hate speech directed at a particular religious group ("liquidate the Jews"). Defendants cannot in fairness argue that certain evidence is too prejudicial to come in, succeed in obtaining that ruling, and then use cross-examination as a means of creating a false impression about the evidence. Moreover, although plaintiffs put into evidence only the PA magazines that the Court permitted, Mr. Shrenzel made clear during his direct examination that he was testifying based on his generalized knowledge of the four types of security apparatus magazines published during the relevant time period. *E.g.*, Tr. (1/23/15) at 1281:18-21 (Q: "Have you had the opportunity to review

---

[1] Al-Shurta; Al-Shuhada; Watani; and Humat Al-Areen.

ARNOLD & PORTER LLP

Hon. George B. Daniels
February 3, 2015
Page 2

such magazines that were published by the PA during the entire period of 2000 through the end of 2003?" A: "Yes, sir.").

Defendants comment that that it was improper for Mr. Shrenzel to testify about the "gradual degree of intensification" of the level of incitement. They are wrong. The question and answer were obviously based on the PA police magazines that Mr. Shrenzel reviewed, and testimony based on information not in evidence is permitted by an expert.[2]

Finally, on cross-examination, defendants asked Mr. Shrenzel about the "primary objective" of the terrorists in committing their crimes. Tr. (1/28/15) at 1561. To this question, they permitted Mr. Shrenzel to testify in a long narrative answer about "Arafat's policy" and what the security apparatus of the PA understood that Arafat wanted of them. *Id.* at 1561-63. As the Court aptly noted, "Quite frankly, he was asked questions and he was allowed to go on in a very long narrative and give his opinions about all of these areas. I think the defense opened the door to all of this. If you didn't want the answer, you should have said it was nonresponsive…." *Id.* at 1596-97.

### 2. Exhibits 233, 465, 467 and Testimony Concerning Tawfiq Tirawi

Exhibits 233, 465, and 467 are all in evidence. On cross-examination, defendants suggested that plaintiffs cannot prove that Tawfiq Tirawi was involved in either the January 27, 2002 bombing or the March 21, 2002 bombing because he was not convicted in either attack. *See* Tr. (1/28/15) at 1513-18. Since defendants attempted to give the jury the misimpression that Tirawi is innocent, it was proper re-direct to ask the witness about evidence of Tirawi's guilt. It is true that defendants decided to not to use exhibits specifically inculpating Tirawi during their cross of Mr. Shrenzel—but why would they, since they were attempting to create a misimpression? Correcting that misimpression was the very point of the redirect.

Mr. Shrenzel's testimony about Tirawi's involvement in terror operations during

---

[2] *E.g.*, *Strauss v. Credit Lyonnais*, 925 F. Supp. 2d 414, 439 (E.D.N.Y. 2013); ("as other courts have noted in the past, it is reasonable that an expert in terrorism would have to rely on hearsay as opposed to relying solely on fieldwork, as terrorist organizations necessarily are secretive and dangerous, and there may be political reasons against meeting with reputed terrorists"); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 532 (E.D.N.Y. 2012) (noting that expert report "necessarily relies on secondary sources to opine about secretive terrorist organizations").

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 3, 2015
Page 3

the al-Aqsa Intifada was also proper. Mr. Shrenzel, as an expert, was entitled to rely on hearsay and non-hearsay evidence, as he did. It was defendants who opened the door to this testimony by attempting to suggest that Tirawi was innocent. Remarkably, defendants chose not to re-cross Shrenzel about the sources on which he was basing his opinion. That was their prerogative, but they should not now be heard to complain simply because they are unhappy with the testimony on the record.

### 3. State of Mind

As explained above, on cross-examination, defendants asked Mr. Shrenzel about the "primary objective" of the terrorists in committing their crimes. Tr. (1/28/15) at 1561. It is nonsensical to argue that it was improper for Mr. Shrenzel to testify about the motivations of terrorists. Defendants opened the door to this testimony by themselves asking about the "objectives" of the terrorists.

\*   \*   \*

The topics discussed in defendants' February 1 letter were all fairly within the scope of Mr. Shrenzel's re-direct examination. Defendants' application for a mistrial, or in the alternative, the striking of the re-direct, should be denied in its entirety.

Respectfully,

Kent A. Yalowitz

Enclosures
cc:   All ECF Counsel