

PLAINTIFF'S EXHIBIT 452

**KAS/ 236B**

Israel                              Defense                                   Forces

| | | |
|---|---|---|
| In the Military Court | Court Case: | *3380*/03 |
| in Beit El | Prosecution Case: | 380/03 |
| Before a panel | Detailed Incident Case: | 6891/01 Jerusalem Special Duties Department |

6554/01 Zion
10283/01 Zion
1512/02 Moria
9638/02 Rishon le Zion
5601/02 Rishon le Zion
2881/02 Glilot
3975/02 Lod
9913/02 Rehovot
1197/02 Shalem
19284/02 Yarkon
21011/02 Yarkon
1425/03 Binyamin

### In the trial between the Military Prosecutor – The Prosecutor

#### - v. -

Abdullah Ghaleb Abdullah Barghouti (Jamal) (known as "Kamal", "the Engineer")
Identity No. (fictitious): 30300028 (Jordanian passport E-891198), born October 15, 1972, a resident of Beit Rima
Detained since March 5, 2003

#### - The Defendant -

## Indictment

#### The above mentioned Defendant is hereby accused of committing the following offenses:

#### First count:

**Nature of the offense:** Attempt to manufacture an explosive device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 29

**Details of the offense:** The above mentioned Defendant, in the Area, in May 2001 or thereabouts, manufactured a firearm, ammunition, a bomb, a hand grenade, an explosive or incendiary object, without possessing a permit certificate having been issued to him by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the above mentioned time, [in] Beit Rima or thereabouts, met ███████████████████████ and asked the latter to introduce military operatives to him. ███████████ asked the Defendant to come to his home. After the Defendant came to the home of ███████████, the latter provided the Defendant with an explosive device.

The Defendant took the device with him and in the Defendant's supermarket in Beit Rima, dismantled the explosive device. The Defendant attempted to ignite the explosives that he had extracted from the explosive device and learned that they were good explosives. The Defendant made an activation mechanism for the above mentioned explosive device using an alarm clock but was unable to activate the above mentioned explosive device using the above mentioned activation mechanism.

Prosecution Case 380/03

1

[Stamp] P 7: 29 [continued]

**Second count:**

**Nature of the offense:** Membership in an unlawful association, an offense pursuant to Regulation 85 (1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from May 2001 until the day of his arrest, was a member or acted as a member of an unlawful association, as follows:

The above mentioned Defendant, during the period set forth, was a member of the Az-Adin Alqassam Brigades, the military arm of the Hamas Organization, which is an unlawful association.

The Defendant, within the framework of his activity in the military arm of Hamas, was responsible for manufacturing explosive devices and training other individuals in the manufacture of explosive devices. In view of his "success" in the said function, the Defendant acquired the alias "the Engineer".

In May 2001, in Beit Rima or thereabouts, the Defendant turned to ███████████, a military operative in Hamas and asked the latter to recruit the Defendant into the ranks of the military arm of the organization. The Defendant informed ███████ that he could manufacture explosive devices for Hamas. ███████████ had the Defendant meet ███████ in Nablus; he was a senior military operative of Hamas, who recruited the Defendant into the Az-Adin Alqassam Brigades.

In late 2001, in Ramallah or thereabouts, the Defendant met ██████████████████, known as ██████ or the ██████, the ██████ of the Az-Adin Alqassam Brigades in the Ramallah area. The Defendant agreed to ██████████ s proposal to act under the command of the latter and to manufacture explosive devices for the purpose of carrying out attacks against the Israeli targets. ██████████ gave the Defendant the nom de guerre ██████. Later, the Defendant did act as had been agreed between him and ██████████.

During the Defendant's activity under the command of ██████████ the Defendant was in contact with the above mentioned individual through dispatches that were conveyed by ██████ ██████████████ known as ██████.

In exchange for his activity in Hamas, the Defendant received financial support from ██████ ██████, which was transferred to the Defendant by ██████. In total, the Defendant received the sum of **117,000 U.S. dollars** from ██████████.

In addition, the Defendant received immediate financial support in the total of 500 U.S. dollars from ██████████, the ██████ f the Tanzim of the Fatah.

[Stamp] P 7: 30

**Third count:**

**Nature of the offense:** Military training without possessing a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, during the months of May-June 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant met ▮▮▮▮▮▮▮ during the period set forth, in Nablus or thereabouts, on three different occasions; he was a senior military operative of Hamas.

During the above mentioned meetings, ▮▮▮▮▮▮▮ taught the Defendant how to make the Um Al Abed (TATP) explosive, explosive devices, the activation mechanisms for the explosive devices (including wireless mechanisms), hand grenades and explosive belts.

▮▮▮▮▮▮ taught the Defendant how to camouflage the explosive devices as stones and as beverage cans.

▮▮▮▮▮▮ taught the Defendant how to make poison from potatoes, which are inserted into the explosive device to turn them into chemical charges.

At the end of each of these training sessions, the Defendant received a sheet from ▮▮▮▮ ▮▮▮▮, which listed instructions for making explosive devices that the Defendant learned to manufacture.

Prosecution Case 380/03

2

[Stamp] P 7: 30 [continued]

**Fourth count:**

**Nature of the offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 67A (D) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The aforementioned Defendant, in the Area, in December 2000 or thereabouts, conspired with another person to coerce another person by force or threats or tempt him by trickery to go from the place at he was, for the purpose of blackmail or threat, as follows:

The above mentioned Defendant, at the time set forth, conspired with ▮▮▮▮▮▮▮▮▮▮, the Defendant's commander in Hamas, to participate in the abduction of Israel Defense Forces soldiers. The Defendant was ordered to prepare an apartment in which Israel Defense Forces soldiers would be held after their abduction by Hamas activists.

Within the preparations for the abduction, the Defendant prepared a room in his home in Beit Rima for holding abducted Israel Defense Forces soldiers.

**Fifth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, traded in or otherwise dealt with war materiel, without possessing a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, received 15 kilograms of Um Al Abed (TATP) explosives and a 9-mm pistol with a magazine and 14 cartridges from ▮▮▮▮▮▮▮▮, a senior military operative in the Hamas organization. The Defendant transferred the explosives and the pistol to Beit Rima and hid them there.

About a week later, ▮▮▮▮▮▮▮▮ transferred to the Defendant 20 liters of hydrogen peroxide, which is used for making Um Al Abed (TATP) explosives. The Defendant hid this hydrogen peroxide in Beit Rima as well.

**Sixth count:**

**Nature of the offense:** Manufacturing an explosive device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, manufactured a firearm, ammunition, bomb, hand grenade, explosive or incendiary device, without possessing a permit certificate having been issued to him by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, in a storeroom that he had rented, set up a laboratory for manufacturing explosives and explosive devices.

The Defendant transferred to the above mentioned laboratory 15 kilograms of explosives of Um Al Abed (TATP), 20 liters of hydrogen peroxide and a number of wireless mechanisms for detonation of the explosive devices.

In the above mentioned bomb laboratory, he made two explosive devices that were camouflaged as stones.

The Defendant transferred the first explosive device to ▮▮▮▮▮▮, a senior military activist in Hamas, through a dead drop point in Salfit. Along with the above mentioned explosive device, the Defendant forwarded a sheet with directions for the operation of the above mentioned explosive device.

The Defendant transferred the second explosive device personally to ▮▮▮▮▮▮ a senior military operative in the Hamas Organization.

Prosecution Case 380/03

3

[Stamp] P 7: 31 [continued]

**Seventh count:**

**Nature of the offense:** Giving shelter, an offense pursuant to Section 57 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, assisted or gave shelter to some person who had committed an offense against the security legislation or had been or was involved in some activity which was intended to harm the public welfare, the welfare of the Israel Defense Forces troops and soldiers and the maintenance of public order or concerning whom there are reasonable grounds to suspect that he did so, whether by giving information, shelter, food, drink, money, clothing, weapons, ammunition, supplies, animal fodder, means of transport, petroleum or fuel of any type and kind whatsoever, or in any other way, as follows:

The above mentioned Defendant, at the time set forth, in his home in Beit Rima or thereabouts, during one night, hid ▮▮▮▮▮▮, who was wanted by the Israeli security forces. The Defendant talked to ▮▮▮▮▮▮ and it turned out that the latter was the one who had obtained the explosive device that had been camouflaged as a stone described in the sixth count of the indictment.

In the morning, the Defendant transported the above mentioned wanted person to Salfit.

**Eighth count:**

Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, at the time set forth in the previous count of the indictment or thereabouts, traded in or otherwise dealt with war materiel, without possessing a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, delivered to ▮▮▮▮▮▮, set forth in the previous count of the indictment, the 14 pistol along with 150 cartridges. In exchange, the Defendant received a 7 pistol from the above mentioned person.

**Ninth count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, met ███████ ███████, a senior military operative in the Hamas Organization, which is an unlawful association. ███████████████ delivered the amount of 100 U.S. dollars to the Defendant. According to ████ ███████ request, the Defendant transferred the above mentioned money to the wanted person described in the seventh count of the indictment.

**Tenth count: (Detailed Incident 6554/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 30, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  In early July 2001, in Nablus or thereabouts, the Defendant met ███████████, a senior military operative of the Hamas Organization. ███████████ informed the Defendant that he had a person who was prepared to carry out a suicide attack inside Israel.

2.  At the request of ███████████ the Defendant contacted ███████████ ████, a senior military operative in the Hamas organization, and asked the latter to find a person who would be able to bring a suicide terrorist into

Prosecution Case 380/03

4

[Stamp] P 7: 32 [continued]

the State of Israel in order for the latter to carry out a suicide attack there with the intent of causing the deaths of as many people as possible.

3.  ███████████ recruited ████████████ for the purpose set forth. ███████████ recruited ████████████ for the said purpose; he was a student at Bir Zeit University, [and] an operative in the Az-Adin Alqassam Brigades, the military arm of the Hamas.

4.  After the Defendant reported the recruitment of the above mentioned people to ███████ ██████████ asked that first the Defendant should deliver a small explosive device to the above mentioned people, in order for them to first try to carry out an attack in Israel using the small explosive device before they could be trusted, and have the suicide terrorist delivered to them.

5.  On the following day, in Ramallah or thereabouts, the Defendant received a small explosive device, which had been sent to him by ███████ from Nablus via courier.

6.  On July 27, 2001, ███████ paid a visit to Jerusalem, with which she was very familiar, along with her nephew, ███████, in order to identify a location in which the explosive device would be placed. During the visit, ███████ visited the Co Op supermarket in the Hamashbir Lazarchan building in King George Street. On the following day, ███████ met ███████ at Bir Zeit University and the latter informed him that she had found a location in Jerusalem to carry out a bombing attack using an explosive device.

7.  The above mentioned report was forwarded to the Defendant through ███████ In addition, ███████ recommended to the Defendant that the explosive device be hidden inside a can of juice.

8.  Following the above mentioned, the Defendant put the above mentioned explosive device into a can of beer and attached an activation mechanism. The Defendant delivered the above mentioned explosive device to ███████ in order for the latter to deliver it to the individuals he had recruited, in order for them to use it to carry out an attack with the aim of causing the deaths of as many people as possible.

9.  ███████ delivered the above mentioned explosive device to ███████ and the latter, on July 30, 2001, delivered it to ███████

[Stamp] P 7: 33

10. On that day, at 11:45 a.m., ███████████ arrived at the Co Op supermarket in Jerusalem described above, while carrying in her bag the explosive device that she had received from the Defendant.

11. ███████████ put the can of beer in which the above mentioned explosive device was hidden on a shelf of cans, at the front of the shelf in the above mentioned supermarket, so that once the explosive device would detonate, it would cause the deaths of the people nearby. ███████████ activated the above mentioned explosive device and left the above mentioned store.

12. At about 1:10 p.m. on that day, the explosive device described above detonated in the abovementioned supermarket. As a result of the detonation of the explosive device, a great amount of damage was caused in the above mentioned store, and only by a miracle was nobody hurt.

**Eleventh count: (Detailed Incident 6554/01 Zion)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 30, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the previous count of the indictment, by his acts described in the previous count of the indictment, caused heavy damage to the Co Op supermarket located in the Hamashbir Lazarchan building in King George Street, in which the explosive device was detonated as described in the previous count of the indictment.

Prosecution Case 380/03

5

[Stamp] P 7: 33 [continued]

**Twelfth count: (Detailed Incident 6891/01 Jerusalem Special Duties Unit)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.  After carrying out the attack in the supermarket in Jerusalem, which is described in the tenth count of the indictment, the Defendant made contact with ▆▆▆▆▆▆ a senior military operative in the Hamas Organization, and according to the plan set forth in the tenth count of the indictment, asked ▆▆▆▆▆▆ to forward a large explosive device and the suicide terrorist to the Defendant for the purpose of carrying out the planned suicide attack.

2.  In early August 2001, in Ramallah or thereabouts, the Defendant received a large explosive device that consisted of two shampoo bottles filled with explosives, from ▆▆▆▆▆▆ via courier.

3.  At the request of ▆▆▆▆▆▆, the Defendant inserted the above mentioned explosive device into a guitar that ▆▆▆▆▆▆ brought. In addition to the above mentioned explosive device, the Defendant put two plastic bags filled with explosives inside the above mentioned guitar. In addition, the Defendant affixed screws inside the guitar using glue. The Defendant sealed the opening in the guitar using glass so that its contents could not be seen. The Defendant connected an activation mechanism to the above mentioned explosive device.

4.  The Defendant put the above mentioned guitar inside a black guitar case. The Defendant threaded a wire out of the case, with the activation button for the explosive device, so that the explosive device could be activated without opening the guitar case.

5.  The Defendant reported the preparation of the explosive device to ▆▆▆▆▆▆ and asked the latter to send the suicide terrorist to him.

6.  A few days later, the suicide terrorist ▆▆▆▆▆▆ (hereinafter: the "Suicide Terrorist"), who was dispatched by ▆▆▆▆▆▆, came to Ramallah. ▆▆▆▆▆▆ met the Suicide Terrorist and put him up overnight in Ramallah with ▆▆▆▆▆▆ ▆▆▆▆▆▆

7.  The Defendant transferred the above mentioned booby-trapped guitar to ▮▮▮▮▮▮▮ in order for the latter to deliver it to the Suicide Terrorist, in order for the latter to use it to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

8.  On August 8, 2001, at the instruction of ▮▮▮▮▮▮▮▮▮▮ (as set forth in the tenth count of the indictment), ▮▮▮▮▮▮▮▮ (set forth in the tenth count of the indictment) traveled to Jerusalem in order to find a location at which to carry out the bombing attack that the Defendant had planned with his above mentioned colleagues and for whose execution the above mentioned ▮▮▮▮▮▮ and ▮▮▮▮▮▮ were recruited. ▮▮▮▮▮▮ noticed that there was a large presence of security forces in Jerusalem, but nobody inspected her because she was wearing a short vest in an attempt to look Jewish. ▮▮▮▮▮▮ reached the conclusion that one could leave Ramallah and carry out an attack in central Jerusalem.

9.  On that day, ▮▮▮▮▮▮ instructed the Suicide Terrorist on the activation of the above mentioned explosive device that the Defendant had made.

10. On August 9, 2011, ▮▮▮▮▮▮ introduced ▮▮▮▮▮▮ to the Suicide Terrorist, who was carrying the booby-trapped guitar. The Suicide Terrorist had gotten a haircut before carrying out the planned attack and wore clothes that were supposed to make him look like a Jew. Thereafter, ▮▮▮▮▮▮ and the Suicide Terrorist departed to carry out the planned attack.

11. After ▮▮▮▮▮▮ and the Suicide Terrorist entered Jerusalem, ▮▮▮▮▮▮ instructed the Suicide Terrorist to carry the guitar inside the black case that was described above on his back in order not

Prosecution Case 380/03

6

[Stamp] P 7: 34 [continued]



to arouse the suspicion of the Israeli security forces. ████████ also took off the jacket she was wearing and remained in a short vest.

12. ████████ led the Suicide Terrorist to the junction of Jaffa and King George Streets in Jerusalem, which is a central junction and a crowded place. ████████ briefed the Suicide Terrorist on activation of the explosive device in the center of the said junction while many people were crossing and thereby to attack as many civilians and vehicular travelers waiting at the traffic light as possible, causing their deaths. ████████ told the Suicide Terrorist that he was also allowed to choose another place for carrying out the planned attack, but that it had to be in King George Street, which was full of people.

13. ████████ left the Suicide Terrorist in the place set forth and walked towards the Nablus Gate of the old city in order to return to Ramallah.

14. At about 1:55 p.m., the Suicide Terrorist, ████████ entered the Sbarro restaurant at the corner of Jaffa and King George Streets, which was then crowded. There the Suicide Terrorist detonated the explosive device that the Defendant had prepared as described above, with the intent of causing the deaths of as many people as possible.

15. As a result of the explosion of the Suicide Terrorist with the said explosive device, fifteen people were killed, as will be described in the next counts of the indictment.

16. As a result of the explosion of the Suicide Terrorist with the said explosive device, many other people sustained injuries, as will be described in the next counts of the indictment.

17. As a result of the explosion of the Suicide Terrorist with the said explosive device, extensive damage was caused to property in the Sbarro restaurant and to automobiles and buildings nearby.

18. By his acts described above, the Defendant caused the intentional death of **the late Frieda Mendelsohn**, aged 62 at the time of her death, who was killed as a result of the explosion of the explosive device as set forth above.

**Thirteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 35

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Lily Shimashvili-Mesengiser**, aged 33 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

7

[Stamp] P 7: 35 [continued]

**Fourteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tamar Shimashvili-Mesengiser,** aged 8 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Fifteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tehila Maoz,** aged 20 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Sixteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 36

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Michal Raziel**, aged 15 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Seventeenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Malka Roth**, aged 15 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

8

[Stamp] P 7: 36 [continued]

[Stamp] Authentic copy          [Stamp] * The Military Appellate Court in Judea and Samaria *

### Eighteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Yocheved Sasson**, aged 10 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

### Nineteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Mordechai Rafael Schijveschuurder**, aged 44 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

### Twentieth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 188

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tzira Schijveschuurder**, aged 41 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.


**Twenty first count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Ra'aya Schijveschuurder**, aged 14 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.


Prosecution Case 380/03

9

[Stamp] P 7: 188 [continued]

**Twenty second count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Avraham Yitzhak Schijveschuurder**, aged 4 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty third count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Hemda Schijveschuurder**, aged 2 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty fourth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 37

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Judith Lilian Greenbaum**, aged 31 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

### Twenty fifth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Giora Balash**, aged 69 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

10

[Stamp] P 7: 37 [continued]

**Twenty sixth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Zvi Golombek**, aged 26 at the time of his death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Twenty seventh count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, attempted to cause the intentional death of all of the people who were in the vicinity of the Suicide Terrorist, who exploded with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, more than 127 people who were in the area of the explosion site were injured.

[Stamp] P 7: 38

**Twenty eighth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The aforementioned Defendant, both within the Area and elsewhere, on August 9, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the twelfth count of the indictment, by his acts described in the twelfth count of the indictment, caused heavy damage to the Sbarro restaurant in the corner of Jaffa and King George Streets in Jerusalem, where the explosive device was detonated as described in the twelfth count of the indictment, and to buildings nearby and to vehicles that passed by the site at the time of the explosion.

**Twenty ninth count:**

**Nature of the offense:** Offenses involving licenses and documents that were issued under the security legislation, an offense pursuant to Section 60 (C) and (G) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, from the second half of 2001 until the day of his arrest or thereabouts, altered or let another person alter some document that was issued under the security legislation and was in possession of a document that was issued under the security legislation that was not made out to his title, with the intent of deceiving others, as follows:

The above mentioned Defendant, in the second half of 2001, in Ramallah or thereabouts, obtained two identity cards from ███████████████████ known as ████ one bearing the name of ██████████████ and the other bearing the name of ████ ████. Photographs of the Defendant were inserted into both of these identity cards.

During the period set forth above, the Defendant made use of the forged identity card bearing the name of ████████████ when he was examined by Israel Defense Forces soldiers in Ramallah or thereabouts, with the intent of deceiving the Israel Defense Forces soldiers.

Prosecution Case 380/03

11

[Stamp] P 7: 38 [continued]

**Thirtieth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in the second half of 2001 or thereabouts, traded in or otherwise dealt with war materiel, without possession of a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, talked to ████████████████, known as ███████ or the ██████ the███ of the Az-Adin Alqassam Brigades in the Ramallah area. ████████████ asked the Defendant to purchase an Uzi submachine gun for him. The Defendant contacted ████████████████ (known as ████████), one of the ██████ of the Al Aqsa Martyrs' Brigades in the Ramallah area, and asked to purchase an Uzi submachine gun from him. ████████████ had the Defendant meet ████████████, a senior military operative in the Al Aqsa Martyrs' Brigades, and the Defendant purchased an Uzi submachine gun from the latter.

About two weeks later, the Defendant conveyed the above mentioned Uzi submachine gun to ████ ████████████████, known as ███████, who conveyed it to ████████████

**Thirty first count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in mid-2001 or thereabouts, traded in or otherwise dealt with war materiel, without possession of a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, contacted ████████████████ (known as ████████), one of the heads of the Al Aqsa Martyrs' Brigades in the Ramallah area, and asked to purchase an MP-5 submachine gun from him. ████████████ had the Defendant meet ████████████████, a senior military operative in the Al Aqsa Martyrs' Brigades, and the Defendant purchased an MP-5 submachine gun from the latter.

[Stamp] P 7: 39

**Thirty second count:**

**Nature of the offense:** Possession of a firearm, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The aforementioned Defendant, in the Area, from the time set forth in the previous count of the indictment until the day of his arrest, had in his possession a firearm, ammunition, a hand grenade or explosive or incendiary object, a tool, object or thing designed or capable of causing death or severe injury, without possession of a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, was in possession of an MP-5 submachine gun described in the previous count of the indictment, and a pistol.

The Defendant kept the above mentioned weapons without possession of a permit certificate issued by or on behalf of a military commander.

**Thirty third count:**

**Nature of the offense:** Manufacturing an incendiary object, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, from the second half of 2001 or thereabouts, manufactured a firearm, ammunition, a bomb, an explosive or incendiary object, without possession of a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, set up a number of laboratories for manufacturing explosives and explosive devices. The Defendant regularly relocated the above mentioned laboratory every few months in order for it not to be exposed by the Israeli security forces.

The Defendant and his colleagues would transfer various chemicals used in the manufacture of explosives to the above mentioned laboratories. The above mentioned explosives were purchased both by the Defendant himself, and by his fellow members of the Hamas Organization. The above mentioned explosives were purchased using Hamas money.

Prosecution Case 380/03

12

[Stamp] P 7: 39 [continued]

The Defendant manufactured, using the above mentioned chemicals, tens of kilograms of explosives, primarily of the Um Al Abed (TATP) type. From the explosives that he manufactured, the Defendant prepared a large number of explosive devices of different types, in addition to the explosive devices as described in the previous counts of the indictment and as will be described in the following counts of the indictment.

The Defendant manufactured the above mentioned explosive devices with the aim of Hamas operatives using them to carry out attacks against Israeli targets. The Defendant briefed operatives of the Hamas Organization on the activation of the above mentioned explosive devices.

In addition to the foregoing, the Defendant attempted to manufacture hand grenades and an explosive device and thus planned to assemble an explosive device on a toy vehicle operated by remote control.

During the said period, the Defendant also received instructions to manufacture Qassam rockets, but decided that he was unable to manufacture the rockets.

### Thirty fourth count:

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, during the second half of 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:



The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, taught ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ known as ▮▮▮▮▮ an operative in the Hamas Organization, who served as a contact person between the Defendant and his commander in the Hamas Organization, to manufacture explosives and explosive devices.

### The thirty fifth count:

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

[Stamp] P 7: 40

**Details of the offense:** The aforementioned Defendant, in the Area, during November 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in an apartment in Ramallah that served as a bomb laboratory, administered military training to ▇▇▇▇▇▇▇▇▇▇▇▇ (known as ▇▇▇▇▇▇), a military operative in the Hamas Organization.

During the said training, the Defendant taught ▇▇▇▇▇▇▇ to manufacture an explosive called Um Al Abed (TATP), electrical circuits for activating explosive devices and activation mechanisms for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

At the end of the training session, the Defendant transferred to ▇▇▇▇▇▇ a bag with various materials that are used for manufacturing explosives and explosive devices and a sheet with the instructions for manufacturing them.

The materials for the purpose of the above mentioned military training were purchased by ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ the head of the Az-Adin Alqassam Brigades in the Ramallah area.

The Defendant introduced himself to ▇▇▇▇▇▇▇ by the alias "Engineer". During the above mentioned military training, the Defendant and ▇▇▇▇▇▇▇ were masked.


**Thirty sixth count:**

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, during November 2001, about two days after the time set forth in the previous count of the indictment or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in an apartment in Ramallah that served as an explosives laboratory, delivered military training to two people who had been brought to the apartment by ▇▇▇▇▇▇▇▇▇▇▇▇▇, known as ▇▇▇▇▇▇, a military operative in the Hamas Organization.

Prosecution Case 380/03

13

During the said training, the Defendant taught the two above mentioned people how to manufacture an explosive called Um Al Abed (TATP), electrical circuits for activating explosive devices, and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

At the end of the training, the Defendant forwarded to the above mentioned two people two bags with various materials that are used for manufacturing explosives and the explosive devices and sheets with the instructions for manufacturing them.

**Thirty seventh count:**

**Nature of the offense:** Military training without possession of a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in November 2001, shortly after he carried out that which has been attributed to him in the previous count of the indictment or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in an apartment in Ramallah that was used as a bomb laboratory, delivered military training to ███████████████ who was brought to the apartment by ███████████ , known as Salah 2, a military operative in the Hamas Organization.

During the said training, the Defendant taught ██████████ to manufacture explosives called Um Al Abed (TATP), electrical circuits for activating explosive devices and activation mechanisms for explosive devices consisting of a clock, a remote control and a cellular telephone handset. In addition, the Defendant delivered theoretical and practical training in the field stripping and assembling an Uzi submachine gun and a 14 pistol to ██████████

At the end of the training session, the Defendant gave ██████████ a bag with various materials used for the manufacturing of explosives and explosive devices and pages with the instructions for manufacturing them.

At the end of the said training, the Defendant gave ██████████ the alias Abdullah 5 because this was the fifth person whom he had taught to manufacture the explosives and explosive devices.

[Stamp] P 7: 41

**Thirty eighth count:** (Detailed **incident 10283/01** Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, during November 2001 or thereabouts, in Ramallah or thereabouts, manufactured explosives of Um Al Abed (TATP) type.

2.  Using these explosives, the Defendant manufactured three explosive devices. The Defendant inserted the first explosive device into a computer case. The Defendant inserted the second explosive device into a black cloth bag. The Defendant prepared the third explosive device in the form of an explosive belt. In addition to the explosives, the Defendant put fragments, consisting of nails and nuts, into the explosive devices. The Defendant attached activation mechanisms to the three above mentioned explosive devices. When the explosive devices were assembled in the explosive belt and in the computer case, they were activated by pressing the activation button, while the explosive device that was concealed inside the black cloth bag was activated by a stopwatch. The Defendant added nuts and nails to these three explosive devices to increase the destructive effect of the explosive devices. In addition, the Defendant put toxic material, which was also for the purpose of increasing the lethality of the explosive devices, into the three explosive devices.

3.  The Defendant manufactured these three explosive devices at the request of ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, known as ▮▮▮▮▮, a military operative in the Hamas Organization. ▮▮▮▮▮ contacted the Defendant at the request of ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ known as ▮▮▮ or ▮▮▮ the commander of the military arm of the Hamas Organization in the Ramallah area.

Prosecution Case 380/03

14

4.  The Defendant delivered the three above mentioned explosive devices to ▓▓▓▓ in order for the latter to have them transferred to Hamas operatives, who would use these explosive devices to carry out bombing attacks with the intent of causing the deaths of as many people as possible.

5.  ▓▓▓▓ and ▓▓▓▓▓▓▓, by themselves or through others, transferred the above mentioned explosive devices to ▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓ and planted the explosive device that was hidden in the black cloth bag in an Opel Kadett, license no. 4774987.

6.  On December 1, 2001, at about 11:36 p.m., at the entrance from Zion Square to Ben Yehuda Street in Jerusalem or thereabouts, suicide terrorist ▓▓▓▓▓▓▓▓▓ activated the explosive device that had been manufactured by the Defendant and concealed in a computer case as set forth above, with the intent of causing the deaths of as many people as possible. The above mentioned explosive device exploded.

7.  That same day, at about the time above, at the junction of Ben Yehuda and Luntz Streets in Jerusalem or thereabouts (a few meters away from the site of the explosion of the first explosive device), suicide terrorist ▓▓▓▓▓▓▓▓ activated the explosive device that had been manufactured by the Defendant in the form of an explosive belt as set forth above, with the intent of causing the deaths of as many people as possible. The above mentioned explosive device exploded.

8.  On that same day, a few minutes after the two above mentioned suicide terrorists activated the above mentioned explosive devices, the explosive device that had been manufactured by the Defendant and hidden inside the black cloth bag as set forth above was detonated. The third explosive device was detonated in an Opel Kadett, license no. 4774987, which was parked in Harav Kook Street near the corner of Jaffa Street in Jerusalem (a few dozen meters away from the detonation sites of the two explosive devices mentioned above). The above mentioned explosive device was activated with the intent of causing the deaths of as many people as possible.

9.  As a result of the detonation of the three explosive devices, which were detonated by as described above [Translator's note: as written], ten people were killed and approximately 191 people were injured, as will be elaborated in the following counts of the indictment.

10. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Yosef El-Ezra**, aged 18 at the time of his death, who was killed as a result of the detonation of the explosive devices in central Jerusalem as described above.

[Stamp] P 7: 42

**Thirty ninth count:** (Detailed Incident 10283/01 Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of the late Assaf Avitan, aged 15 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

Prosecution Case 380/03

15

[Stamp] P 7: 42 [continued]

**Fortieth count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Guy Vaknin,** aged 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty first count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Yoni Korganov,** aged 20 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty second count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 43

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Ya'akov Israel Danino,** aged 17 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty third count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Michael Dahan,** aged 20 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

Prosecution Case 380/03

16

[Stamp] P 7: 43 [continued]

**Forty fourth count**: (Detailed Incident 10283/01 Zion)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Golan Turgeman,** aged 15 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty fifth count**: (Detailed Incident 10283/01 Zion)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Adam Weinstein,** aged 14 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

**Forty sixth count**: (Detailed Incident 10283/01 Zion)

[Stamp] P7: 44

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Moshe Yedid-Levy,** aged 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.


**Forty seventh count: (Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused the intentional death of **the late Nir Haftzadi,** aged 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment.

[Stamp] P7: 44 [continued]

**Forty eighth count**: **(Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, attempted to cause the intentional deaths of as many civilians as possible. As a result of the detonation of the explosive devices that were activated as described in the thirty-eighth count of the indictment, **191 people** were injured.

**Forty ninth count**: **(Detailed Incident 10283/01 Zion)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on December 1, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the thirty-eighth count of the indictment, by his acts described in the thirty-eighth count of the indictment, caused serious damage to houses and to business establishments in the area of Ben Yehuda, Luntz, Jaffa and Harav Kook Streets and vehicles that were at the site at which the three explosive devices that were activated as described in the thirty-eighth count of the indictment.

[Stamp] P7: 45

**Fiftieth count:**

**Nature of the offense:** Manufacturing an incendiary device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, from late 2001 or thereabouts, manufactured a firearm, ammunition, bomb, an explosive or incendiary device, without a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, at the request of ████████████ the ████ of the Tanzim of the Fatah, manufactured two explosive devices. ████████████████ asked the Defendant to manufacture two explosive devices for him in order to use them if Israel Defense Forces would enter Ramallah.

**Fifty-first count:**

**Nature of the offense:** Manufacturing an incendiary device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2001 or thereabouts, manufactured a firearm, ammunition, bomb, an explosive or incendiary device, without a permit certificate issued by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, manufactured three explosive devices that were concealed inside juice cartons, and four explosive devices that were camouflaged as stones.



The above mentioned explosive devices were transferred by ████████████████████-████ , known as ████ , to ████████████████████ known as ████ who was the ████ of the military arm of the Hamas Organization in the Ramallah area.

[Stamp] P7: 45 [continued]

**Fifty-second count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2002 or thereabouts, traded in or otherwise dealt with war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, purchased from ███████████████(known as ███████, one of the heads of the Al Aqsa Martyrs' Brigades organization, a Kalashnikov assault rifle with two magazines filled with cartridges and a 14 pistol with a magazine full of cartridges.

The Defendant performed the foregoing at the request of ███████████████████ a military operative in the Hamas Organization.

After purchasing the above mentioned weapons, the Defendant delivered them to the above mentioned ███████████

**Fifty-third count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in February 2001 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

The above mentioned Defendant, at the time set forth, met an unknown person in Ramallah. The Defendant met the above mentioned person at the behest of ███████████████ known as ████ or ████, the ████ of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area. ███████████ informed the Defendant that the above mentioned person needed to depart to carry out a suicide attack and asked the Defendant to check whether the above mentioned person was determined to carry out a suicide attack.

The Defendant agreed and talked to the above mentioned person. The Defendant felt that the above mentioned person was determined, in view of the fact that the above mentioned person requested that by carrying out the suicide attack he will clear the name of his father, who was suspected of collaborating with the Israeli security forces.

The Defendant gave his above mentioned conclusions to ████████, who responded that he would not be dispatching that person to carry out a suicide attack, as he was not prepared for that person to carry out a suicide attack only in order to clear his name.

**Fifty-fourth count: (Detailed incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

1.  In early March 2002, in Ramallah or thereabouts, the Defendant met his Hamas handler, ████████████████████, known as ██████ or ██████ ██████████████ asked the Defendant to make an explosive belt for a suicide terrorist, in order for the latter to carry out a suicide attack with the intent of causing the deaths of as many people as possible.

2.  The Defendant agreed to the request of ██████████ The Defendant manufactured, in Ramallah or thereabouts, an explosive belt. The above mentioned explosive belt was made of an imitation leather fabric on which screws and shampoo bottles filled with explosives were adhered. The Defendant also attached a detonation mechanism for the above mentioned explosive belt.

3.  After the Defendant completed the preparation of the above mentioned explosive belt, the Defendant transferred [it], through ████████████████████████████, known as ██████ to ██████████, for the purpose of carrying out the planned suicide attack.

[Stamp] P7: 46 [continued]

4.  ██████████ also contacted ████████████████ (known as ██████████ )
    and asked that the latter contact ██████████████████ known as ████
    ████ to ask him to find a suitable place for carrying out the suicide attack.

5.  ████████████ met ████████ and asked to find a place in Israel that would be suitable
    for carrying out the suicide attack. After a few days, ████████ contacted ████████
    ████ and stated that he had found a place that was suitable for carrying out the planned
    suicide attack, which was the Moment Café, located on Aza Street in Jerusalem. ████
    ████, along with ████████████████ and ████ paid visits to the
    area of the Moment Café [in order] to plan the suicide attack. The Defendant reported to
    ████ the place that had been found by ████████ and his colleagues.

6.  On Saturday, March 9, 2002,, at about 8:00 p.m., in Ramallah or thereabouts, ██████████
    ████ met ████ and ████████ ████████ ██ ████ left the
    meeting place for about half an hour in order for ████████ to put on an explosive belt.
    ██████████████ put the explosive belt that was prepared by the Defendant, as set forth
    above, on ████████ for the purpose of carrying out a suicide attack.

7.  Thereafter, ████████████, along with ████████ accompanied ████████ who
    was carrying the above mentioned explosive belt on his person, to the Kalandia taxi stop in
    Ramallah and had the latter get into a passenger vehicle that was traveling to Beit Hanina.
    ██████████████ and ████████ traveled together to Beit Hanina in a
    passenger transport vehicle. ████████████ and ████████ transported ████████
    to the meeting place, which the Defendant had established with ████████

8.  ████████ met the suicide terrorist, ████████████ in the place set forth, and thereafter,
    with ████████ transported the suicide terrorist to Jerusalem. ████████ and ████
    ████ led ████████ to the Moment Café, located in Aza Street in Jerusalem.

9.  At about 10:30 p.m., on March 9, 2002,, or thereabouts, ████████████ who was carrying
    the explosive belt that the Defendant had manufactured for this purpose on his person,
    entered the Moment Café, which was crowded at that time, and activated the above
    mentioned explosive belt with the aim of causing the deaths of as many people as possible.

10. By his acts described above, the above mentioned Defendant caused the intentional death
    of **the late Avraham Rahamim,** who was killed as a result of the detonation of the
    explosive belt at the Moment café as described above.

[Stamp] P7: 47

**Fifty-fifth count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Nir Borochov**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

Prosecution case 380/03                     20

[Stamp] P7: 47 [continued]

**Fifty-sixth count**: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Limor Ben-Shoham**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Fifty-seventh count**: (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Dan Imani,** who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Fifty-eighth count:** (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 48

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Danit Dagan**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Fifty-ninth count:** (Detailed Incident 1512/02 Moria)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Uri Felix**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

Prosecution case 380/03                    21

[Stamp] P7: 48 [continued]

**Sixtieth count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Baruch Lerner**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Sixty-first count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Tali Eliyahu**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Sixty-second count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 49

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Livnat Dvash**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Sixty-third count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Orit Ozerov**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

[Stamp] P7: 49 [continued]

**Sixty-fourth count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused the intentional death of **the late Natanel Kochavi**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment.

**Sixty-fifth count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, attempted to cause the death of as many civilians as possible.

As a result of the detonation of the explosive device that was detonated as described in the fifty-fourth count of the indictment, **65 people** were injured.

**Sixty-sixth count: (Detailed Incident 1512/02 Moria)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 50

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on March 9, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the fifty-fourth count of the indictment, by his acts described in the fifty-fourth count of the indictment, caused heavy damage to the Moment Café that is located on Aza Street in Jerusalem, in which the explosive device was detonated as described in the fifty-fourth count of the indictment.

**Sixty-seventh count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, in later March-April 2002, in Ramallah or thereabouts, met with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ known as ▮▮▮▮ a military operative in the Hamas Organization.

2.  ▮▮▮▮ informed the Defendant that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, known as ▮▮▮▮ or ▮▮▮▮, the ▮▮▮ of the military arm of the Hamas Organization in the Ramallah area, was asking that the Defendant should manufacture an explosive belt and an explosive bag for the purpose of carrying out a suicide attack. The Defendant agreed to manufacture the two explosive devices[...]

[Stamp] P7: 50 [continued]

[Stamp] Authentic copy          [Stamp] * The Military Appellate Court in Judea and Samaria * [Signature]

[…]this being in order to use them for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible.

3.  The Defendant manufactured, in Ramallah or thereabouts, an explosive belt. The above mentioned explosive belt was made using imitation leather fabric, on which screws and shampoo bottles filled with explosives were adhered. The Defendant also attached the activation mechanism to the above mentioned explosive belt. The above mentioned explosive belt was similar to the one that the Defendant had manufactured for the attack at the Moment Café in Jerusalem, which is described in the fifty-fourth count of the indictment.

4.  In addition, the Defendant made, in Ramallah or thereabouts, an explosive device of shampoo bottles filled with explosives that were put into a black bag. The Defendant put screws into the above mentioned bag to increase the damaging effect of the explosive device. The Defendant attached an activation mechanism for the explosive device to the above mentioned bag, which consisted of a stopwatch.

5.  The Defendant delivered the above mentioned explosive belt with the above mentioned explosive bag to ██████ in order for the latter to transfer them to ████████████ who would transfer them to the suicide terrorist.

6.  In April 2002, ████████████ approached ████████████████████ (known as ██████████), and informed the latter that it was necessary to carry out a suicide attack with the intent of causing the deaths of as many people as possible. ████████████ informed ████████████████ that he had a person who was prepared to carry out the suicide attack.

7.  A few days later, in Ramallah or thereabouts, ████████████ introduced a ████████████ ████████████ (hereinafter: the "Suicide Terrorist") to ████████████; he was supposed to carry out the planned suicide attack. During the meeting it was concluded that after a few days, ████████████ would bring the Suicide Terrorist to a meeting with ████████████ in Ramallah and the latter would take the Suicide Terrorist to carry out the planned suicide attack.



8.  On May 7, 2002, ███████████ met the Suicide Terrorist in Ramallah in accordance with the above mentioned understanding. At the request of █ ███████████ accompanied the Suicide Terrorist from Ramallah to Safa. In Safa, the two met ███████████ and traveled together to Beit Anan. There, ███████ delivered the explosive belt that the Defendant had manufactured as set forth above and which had been transferred to ███████████ by ███████ to the Suicide Terrorist. ███████████ attached the above mentioned explosive belt to the body of the Suicide Terrorist and gave the latter a bag containing an additional explosive device, which the Defendant had also manufactured as set forth above, and which had been transferred to ███████████

9.  ███████████ drove the Suicide Terrorist with the above mentioned explosive device and with the above mentioned explosive belt in his vehicle from Beit Anan to Beit Iksa.

10. In Beit Iksa or thereabouts, the Defendant and the Suicide Terrorist met ███████████ ███████████, known as ███████ who took the Suicide Terrorist to carry out the planned attack.

11. That evening, ███████ along with ███████████, drove the Suicide Terrorist to Rishon le Zion and there accompanied him to the Sheffield Club, at 1 Sacharov Street in the New Industrial Zone, which had earlier been identified as a location suitable for carrying out the suicide attack by ███████████ and ███████ and ███████████ pointed out the said club to the Suicide Terrorist and explained to him that this was the place at which he must carry out the planned suicide attack.

12. At about 10:50 p.m., on May 7, 2002 or thereabouts, the Suicide Terrorist entered the above mentioned club and activated the explosive belt and the additional explosive device that the Defendant had manufactured for this purpose, with the aim of causing the deaths of as many people as possible.

13. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Rahamim Kimhi**, who was killed as a result of the detonation of the explosive devices as described above.

Prosecution Case 380/03

24

[Stamp] P 7: 186 [continued]

**Sixty-eighth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Rafael Haim**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Sixty-ninth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Anat Teremforush**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventieth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 51

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Avraham Bayaz**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-first count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Eti Bablar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

[Stamp] P7: 51 [continued]

**Seventy-second count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Yitzhak Bablar,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-third count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Israel Shikar,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-fourth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Shoshana Magmari,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-fifth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Sharuk Rassan,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

[Stamp] P7: 52 [continued]

**Seventy-sixth count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Nawa Hinawi**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-seventh count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Nir Lovatin**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-eighth count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Regina Malka Boslan,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-ninth count:** (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Daliah Masa,** who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                27

[Stamp] P7: 53 [continued]

**Eightieth count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Pnina Hikri**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Eighty-first count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Edna Cohen**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Eighty-second count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

[Stamp] P7: 54

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, attempted to cause the deaths of as many civilians as possible.

As a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment, **59 people** were injured.

**Eighty-third count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on May 7, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused heavy damage to the Sheffield Club, located at 1 Sacharov Street in Rishon Le Zion, and to the entire said building in which the explosive devices were detonated as described in the sixty-seventh count of the indictment.

[Stamp] P7: 54 [continued]

**Eighty-fourth count**: (Detailed Incident 2881/02 Glilot)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 23, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in May 2002, in Ramallah or thereabouts, met with ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ known as ▮▮▮▮ a military operative in the Hamas Organization.

2.  ▮▮▮▮ informed the Defendant that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ known as ▮▮▮▮ or ▮▮▮▮, the ▮▮ of the military arm of the Hamas Organization in the Ramallah area, was asking that the Defendant should manufacture an explosive device that would "stick" to iron, for the purpose of carrying out a bombing attack. The Defendant agreed to manufacture the explosive device in order for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3.  Following the said request, the Defendant manufactured an explosive device that could be "stuck" to iron using magnets, which the Defendant attached to the explosive device, which was activated using a cellular telephone handset.

4.  The Defendant delivered the above mentioned explosive device to ▮▮▮▮ for the purpose of carrying out the planned suicide attack. ▮▮▮▮ conveyed the explosive device to ▮▮▮▮▮▮.

5.  In May 2002, ▮▮▮▮▮▮ met ▮▮▮▮▮▮▮▮▮▮▮ (known as ▮▮▮▮) and informed the latter that he wanted to carry out a bombing attack and detonate a fuel tanker, with the intent of causing the deaths of as many people as possible. Following the above mentioned, ▮▮▮▮▮▮ met with ▮▮▮▮▮▮▮▮▮▮▮ known as ▮▮▮▮, and told him about ▮▮▮▮▮▮'s plan to carry out a bombing attack. ▮▮▮▮ said that he would check out the matter and see what could be done.

6.  After a few days, ▮▮▮▮▮▮ met with ▮▮▮▮ again. ▮▮▮▮ said that he and his colleagues had found a fuel tanker that regularly traveled to the Pi Glilot site.

7. On May 22, 2002, ███████████ met with ███████████ in Ramallah and reported to the latter about the above mentioned fuel tanker. ███████████ asked to meet ███████████ in a few hours' time at the same place.

8. After a few hours, the two met again. ███████████ delivered the explosive device that the Defendant had manufactured as set forth above to ███████████. In addition, ███████████ delivered a cellular telephone handset to ███████████ through which the explosive device could be called in order to detonate it.

9. ███████████ delivered the above mentioned explosive device to ███████████, who conveyed it to Safa. ███████████ arrived in Safa and from there traveled in his automobile, with ███████████ to Beit Iksa.

10. There, ███████████ met with ███████████ and together with ███████████, delivered the above mentioned explosive device with a cellular telephone handset connected to it and the additional cellular telephone handset to ███████████.

11. In the early morning hours on the following day, May 23, 2012, ███████████ traveled to Holon with ███████████ while they were in possession of the above mentioned explosive device. In Holon, ███████████ attached the above mentioned explosive device, using a magnet, to the bottom front part of the fuel tank mounted on a fuel tanker, license no. 2622700. The above mentioned fuel tanker had been found earlier by ███████████ and ███████████ as an objective for carrying out a bombing attack. ███████████ waited in his vehicle until[...]

Prosecution case 380/03                    29

[Stamp] P7: 55 [continued]

[Stamp] Authentic copy          [Stamp] * The Military Appellate Court in Judea and Samaria * [Signature]

[…]that the fuel tanker driver had arrived and thereafter drove after the above mentioned fuel tanker to the Pi Glilot site. After ▇▇▇▇ had made sure that the fuel tanker, to which the above mentioned explosive device had been attached, had entered the Pi Glilot site, ▇▇▇▇▇ activated the above mentioned explosive device that the Defendant had manufactured using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

12. The above mentioned explosive device exploded and caused serious damage to the above mentioned fuel tanker. Only by a miracle was nobody hurt.


**Eighty-fifth count: (Detailed Incident 3975/02 Lod)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on June 30, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met with ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ known as ▇▇▇ a military operative in the Hamas Organization.

2. ▇▇▇▇ informed the Defendant that ▇▇▇▇▇▇▇▇▇▇▇, known as ▇▇▇ or the ▇▇▇▇, the ▇▇▇▇▇ of the military arm of the Hamas Organization in the Ramallah area, was asking the Defendant to manufacture an explosive device that would be activated using a cellular telephone handset for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the request as set forth, the Defendant manufactured an explosive device that could be activated using a cellular telephone handset.

4. The Defendant delivered the above mentioned explosive device to ████. ████ transferred the above mentioned explosive device to ████ known as ████ or ████, the ████ of the military arm of the Hamas Organization in the Ramallah area.

5. ████ contacted ████ (known as ████ and suggested that they carry out a bombing attack by placing an explosive device on a railway track inside the State of Israel, with the intent of causing the deaths of as many people as possible.

6. ████ contacted ████ known as ████ and asked him to check the possibility of carrying out a bombing attack on railway tracks in Israel. After some time, ████ contacted ████ and informed him that he had found a suitable place for carrying out the planned attack. ████ reported this to ████

7. After some time, ████ met in Ramallah ████, who delivered the explosive device, which the Defendant had manufactured as set forth above, to him.

8. On June 29, 2002, or thereabouts, ████ transferred the above mentioned explosive device with the cellular telephone handsets to ████ and explained to the latter how to activate the above mentioned explosive device.

9. In the evening hours of that day, ████ along with ████ traveled to Lod and placed the above mentioned explosive device on the railway tracks in Lod in a place that had been identified earlier by ████ and ████ as suitable for carrying out the planned attack. Thereafter, ████ and ████ returned to Jerusalem.

Prosecution Case 380/03

30

[Stamp] P 7: 187 [continued]

10. In the early hours of the following morning, June 30, 2012,  and ▮▮▮▮▮▮▮▮ traveled to Lod. ▮▮▮▮▮▮▮ positioned himself next to the explosive device that had been placed, as set forth above, on the railroad tracks. At about 7:00 a.m., when ▮ ▮▮▮▮ noticed a train approaching the said site, he informed ▮▮▮▮▮▮▮ who activated the above mentioned explosive device using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

11. The above mentioned explosive device exploded.

12. As a result of the detonation of the above mentioned explosive device, 4 people were injured. In addition, damage was sustained by the train's locomotive and by the railroad track.

**Eighty-sixth count:** (Detailed Incident 9913/02 Rehovot)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 21, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met with ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ known as ▮▮▮▮▮ a military operative in the Hamas Organization.

2. ▮▮▮▮ informed the Defendant that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ known as ▮▮▮▮ or ▮▮▮ the ▮▮▮▮▮▮ of the military arm of the Hamas Organization in the Ramallah area, had asked that the Defendant should manufacture an explosive device that was activated by cellular telephone handset, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the said request, the Defendant manufactured an explosive device, which was activated by cellular telephone handset.

[Stamp] P7: 56

4.  The Defendant delivered the above mentioned explosive device to ███████  ████████
    transferred the above mentioned explosive device to ████████████████
    known as ██████ or ██████ th: ██████ of the military arm of the Hamas Organization in the
    Ramallah area.

5.  ████████████ contacted ████████████████████ (known as ██████████ and
    suggested that an additional bombing attack be carried out by placing an explosive device
    on the railroad track inside the State of Israel, with the intent of causing the deaths of as
    many people as possible.

6.  ████████████ contacted ████████████████████ known as ████████
    and asked him to find a place to carry out an additional bombing attack on the railroad
    track in Israel. After some time, ██████████ turned to ████████████ and told him that he
    had found a suitable place for carrying out the planned attack. ████████████ reported
    this to ████████

7.  After some time, ████████████ met in Ramallah ████████████ who delivered to him
    the explosive device that the Defendant had manufactured, as set forth above, for the
    purpose of carrying out the planned attack.

8.  On July 20, 2002, ████████████ delivered the above mentioned explosive device to
    ████████████████ and asked the latter to transfer it to Safa. Thereafter,
    ████████████ arrived in Safa and met there ████████ From there, the two traveled
    together to Beit Iksa.

9.  In Beit Iksa, ████████████ and ████████████ transferred the above mentioned explosive
    device, along with the cellular telephone handsets, to ████████

[Stamp] P7: 56 [continued]

10. That night, ██████████, along with ████████████████ and ████████████████████████,
traveled to the Rehovot area and placed the above mentioned explosive device on the
railroad track near the exit from Rehovot, next to Kfar Gvirol, a place that was selected
earlier by ████████ and ████████████ Thereafter, the three returned to Jerusalem.

11. On the following day, July 21, 2002, in the early morning hours, ████████████ and ████████,
████████ traveled to the site at which the above mentioned explosive device had been placed.
At about 7:30 a.m., ████████████ activated the above mentioned explosive device with the
aim of causing the deaths of as many people as possible – after ████████████ reported to
him by cellular telephone that a train was approaching the site at which the explosive
device had been placed.

12. The above mentioned explosive device exploded. As a result of the explosion of the
explosive device, one person was injured. In addition, damage was caused to the train's
locomotive and to the railroad track.

**Eighty-seventh count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the
Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the
rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July
31, 2002, or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in July 2002, in Ramallah or thereabouts, met with ██████
████████████████████████████████████ known as ████████ a military operative in the Hamas
Organization.

2. ████████ informed the Defendant that ████████████████████████████, known as ████████
or ████████, th- ████████████ of the military arm of the Hamas Organization in the Ramallah
area, asked that the Defendant should manufacture an explosive device hidden in a bag, for
the purpose of carrying out a bombing attack with the intent of causing the deaths of as
many people as possible. The Defendant agreed to manufacture the explosive device, in
order for it to be used for the purpose of carrying out a bombing attack with the intent of
causing the deaths of as many people as possible.

[Stamp] P7: 57

3. Following the said request, the Defendant manufactured an explosive device, which was made using a large shampoo bottle filled with explosives, which had been concealed inside a rigid black cloth bag (similar to a briefcase). In addition, the Defendant filled the above mentioned bag with hardware nuts for the purpose of increasing the destructive power of the device. According to █████████ request, the Defendant attached a wireless activation mechanism to the above mentioned explosive device, so that the explosive device would be activated using a cellular telephone handset.

4. The Defendant delivered the above mentioned explosive device and three additional shampoo containers, filled with explosives, to █████

5. █████████ transferred the above mentioned explosive device to ███████████████ █████, known as ████████ or ██████ the █████ of the military arm of the Hamas Organization in the Ramallah area.

6. █████████████ approached█████████████████ (known as ████████) and asked to find a place in Jerusalem in which a bombing attack could be carried out with the intent of causing the deaths of as many people as possible. █████████████ approached █████████████████████████, known as █████████, and asked the latter to find a suitable place for carrying out a bombing attack.

7. After a few days, █████████ informed █████████████ that he had found a suitable place for carrying out a mass attack, which was the Hebrew University in Jerusalem, the Mount Scopus campus. █████████████ reported the site that had been found to█████████████

[Stamp] P7: 57 [continued]

8. For the purpose of carrying out the planned bombing attack, ███████████ delivered to ████████████ the explosive device that the Defendant had manufactured as set forth above. ████████████ added three bottles of shampoo filled with explosives to the said explosive device, which █████ had received from the Defendant.

9. Thereafter, ████████████ traveled along with ██████████████████ to Beit Iksa with the aim of transferring the above mentioned explosive device to █████████████ in order for the latter with his colleagues to carry out the planned bombing attack using them.

10. In Beit Iksa, ████████████ and ██████████ met ████████ The two delivered the above mentioned explosive device along with the two cellular telephone handsets to ████████ one handset being connected to the explosive device and serving as an activation mechanism.

11. On July 28, 2002, ██████████ along with ██████████████, transferred the above mentioned explosive device to Jerusalem. ██████████ and ██████████ brought the above mentioned explosive device into the Mount Scopus campus of the Hebrew University in Jerusalem. ██████████ was very familiar with the site because he had worked there previously and also made use of an employee card, which he had retained, to enter the above mentioned campus ██████████ placed the above mentioned explosive device inside the cafeteria located in the Frank Sinatra building of the above mentioned campus. Thereafter, ████████ and ██████████ tried to activate the above mentioned explosive device using a cellular telephone, but the explosive device did not explode due to a fault in it. Thereafter, ██████████ returned to the place at which he had put the above mentioned explosive device, collected the explosive device, and together with ████████ traveled to Beit Iksa.

12. Thereafter, on July 29, 2002, ██████████ and ██████████ met with ████████ again. ████████ returned the above mentioned explosive device to ██████████ ████ stated that he and his colleagues had placed the above mentioned explosive device in the Hebrew University in Jerusalem, the Mount Scopus Campus, with the intent of detonating it and causing the deaths of as many people as possible, but the above mentioned explosive device had not exploded. ██████████ and ██████████ transferred the above mentioned explosive device to Harbata Bni-Hareth.

13. ██████████ repaired the above mentioned explosive device after inspecting it and discovering that there was a problem with the electrical wires.

[Stamp] P7: 58

14. On the following day, July 30, 2002, ███████████ met ██████████ again and with the latter, transferred the above mentioned explosive device to Beit Iksa.

15. In Beit Iksa, ████████████ and ██████████ met with █████████████████ delivered the above mentioned explosive device to ██████

16. That night, ██████████ and ███████████████, took the above mentioned explosive device to Jerusalem and concealed it among the trees in the botanic garden in the Mount Scopus campus of the Hebrew University.

17. On the following day, July 31, 2002, ██████████ and ███████████ traveled again to the Mount Scopus campus of the Hebrew University. While ███████████ was waiting outside, ████████████ entered the campus, collected the above mentioned explosive device and placed it in the cafeteria located in the Frank Sinatra building in the Mount Scopus campus of the Hebrew University in Jerusalem. At about 1:30 p.m., after ███████████ left the area of the campus and joined ████████████████ activated the above mentioned explosive device that had been manufactured by the Defendant, via a cellular telephone handset, with the intent of causing the deaths of as many people as possible. ███████████ and █████████████ chose to carry out the attack at around 1:00 p.m. because, according to the information that ███████████ had gathered, the above mentioned cafeteria was crowded with people at that time.

18. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Daphna Spruch**, who was killed as a result of the explosive device as described in the eighty-seventh count of the indictment.

Prosecution case 380/03                    33

[Stamp] P7: 58 [continued]

**Eighty-eighth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Marla Anne Bennett**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Eighty-ninth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Dina Carter**, who was killed as a result of the explosive device as described in the eighty-seventh count of the indictment.

**Ninetieth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 59

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Benjamin Thomas Blutstein**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

### Ninety-first count: (Detailed Incident 1197/02 Shalem)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Revital Barashi,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

Prosecution case 380/03                    34

[Stamp] P7: 59 [continued]

**Ninety-second count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late David (Diego) Ladowski**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-third count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Levina Shapira,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-fourth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 60

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Janis Ruth Coulter,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-fifth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late David Gritz,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

Prosecution case 380/03                    35

[Stamp] P7: 60 [continued]

**Ninety-sixth count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, attempted to cause the intentional death of as many civilians as possible. As a result of the detonation of the explosive device that was activated as described in the eighty-seventh count of the indictment, **81 people** were injured.

**Ninety-seventh count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 31, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused heavy damage to the Frank Sinatra Building in the Mount Scopus campus of the Hebrew University in Jerusalem, in which an explosive device was activated as described in the eighty-seventh count of the indictment.

**Ninety-eighth count: (Detailed Incident 9638/02 Rishon le Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 7, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early August 2002, in Ramallah or thereabouts, met with ███████████████████████, known as ██████ a military operative in the Hamas Organization.

2. ████████ informed the Defendant that ███████████████████ known as ██████ or ████, the ████████ of the military arm of the Hamas Organization in the Ramallah area, had asked the Defendant to manufacture two explosive devices concealed inside biscuit boxes – one activated by cellular telephone handset and the other activated by remote control, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive devices in order for them to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the said request, the Defendant manufactured two explosive devices, which were concealed inside biscuit boxes. To one of the explosive devices, the Defendant connected an activation mechanism consisting of a cellular telephone handset, while to the other explosive device, the Defendant attached an activation mechanism so that the device could be activated by remote control.

4. The Defendant delivered the above mentioned explosive devices to ██████ ██████ transferred the above mentioned explosive device to ████████████████, known as ██████ the ████ of the military arm of the Hamas Organization in the Ramallah area.

Prosecution case 380/03                    36

5.  In early august 2002, ████████████████ (known as ████████) met ████
    ████████ known as ████████ who asked to obtain an explosive
    device. ████████ explained that he intended to place the explosive device under a vehicle
    and detonate it with the intent of causing the deaths of as many Israeli civilians as possible.

6.  ████████████ turned to ████████████ and asked to obtain an explosive device for the
    purpose of carrying out the planned attack. After a few days, in Ramallah or thereabouts,
    ████████████ transferred an explosive device to ████████████ which the Defendant
    had manufactured, as set forth above, which was activated by a cellular telephone handset.

7.  On that same day, August 6, 2002, ████████████ together with ████
    ████████, traveled to Beit Iksa while in possession of the above mentioned explosive
    device. In Beit Iksa, the two met with ████████ and transferred the above mentioned
    explosive device to him.

8.  On the following day, August 7, 2002, ████████ and ████████████ attached the
    above mentioned explosive device to a fuel tanker, license no. 3388300, which was parked
    in the Pisgat Ze'ev neighborhood in Jerusalem or thereabouts. After a few hours, at about
    1:50 p.m., ████████ activated the above mentioned explosive device using a cellular
    telephone handset, with the intent of causing the deaths of as many people as possible. The
    device that was planted on the said fuel tanker exploded while the tanker was in a garage at
    23 Shmotkin Street in Rishon le Zion.

9.  As a result of the detonation of the above mentioned explosive device, damage was
    sustained by the fuel tanker, and only by a miracle was nobody hurt.


**Ninety-ninth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the
Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the
rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on
September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early September 2002 or thereabouts, in Ramallah or
    thereabouts, met ████████████████████████ known as ████████ a military
    operative in the Hamas Organization.

[Stamp] P7: 62

2.　████ asked the Defendant to make two explosive belts for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive belts in order for them to be used for carrying out a suicide attack with the intent of causing the deaths of as many people as possible. Following the said request, the Defendant manufactured two explosive belts.

3.　The Defendant delivered the above mentioned explosive belts to ████ who had them transferred through ████ to ████ a military operative in the Hamas Organization, for the purpose of carrying out the planned suicide attack.

4.　In late July 2004, ████ called ████ and asked to arrange a meeting between ████ known as ███ and a person known as ██ ████ explained that the said meeting was intended for the purpose of carrying out a suicide attack, which the above mentioned ███ was supposed to carry out. ████ called ███ and informed him where and how he must meet ███ ████. After two days, ███ reported that ████ did not arrive to the arranged meeting.

5.　Immediately after the above mentioned conversation, ████ returned to Ramallah and met ████ and reported to the latter that the scheduled meeting had not taken place. At the end of the above mentioned meeting, ████ called ████ known as ████

[Stamp] P7: 62 [continued]

6. After a few days, ███████████ met ██████████ again, who asked to arrange another meeting between ████ and ██████.

7. After about a week, ████████████ requested that if ██████████ should not show up at the said meeting, ██████████ would take responsibility for ████ and the second suicide terrorist, ██████████

8. After the above mentioned conversation, ████████████ met ██████████ in Ramallah and asked the latter to find a place within the Israel that would be suitable for carrying out a suicide attack. ████████████ made it clear to ██████████ that he would have to lead two suicide terrorists to the place that he would find in order for them to carry out a bombing attack there with the aim of causing the deaths of as many people as possible. ████ ████ agreed, but contended that it would take time to find a place where a double suicide attack could be carried out. During the above mentioned conversation, ████████ reported that he had rented an apartment in Dahiat Al-Barid.

11. ████ informed ██████████ that he had learned from ██████████ about a large banquet hall, Whitehall, in Or Yehuda. ████ suggested that he and ██████████ carry out the suicide attack in the above mentioned banquet hall, after first shooting with weapons at the occupants of the banquet hall and then detonating the explosive belts that they would be carrying on their persons, with the intent of causing the deaths of as many people as possible. ██████████ agreed to the above mentioned idea and sent ██████████ to inspect the above mentioned banquet hall. ██████████ traveled to the above mentioned banquet hall and reported that the planned attack could not be carried out there because of the large number of security guards who were posted at the site.

12. ████████████ reported to ██████████ concerning his activity that had been carried out for the purpose of carrying out the planned suicide attack. ██████████ asked ██████████ to obtain two explosive belts and two small weapons for the purpose of carrying out the planned suicide attack. ██████████ promised to see to the explosive belts and the weapons.

13. After a few days, ██████████ and ██████████ obtained two explosive belts that the Defendant had manufactured as set forth above, and two Uzi submachine guns with magazines filled with cartridges.

[Stamp] P7: 63

14. Thereafter, [redacted] met [redacted] and informed the latter that the explosive belts were ready and he could depart to carry out the planned suicide attack along with his cousin, [redacted] [redacted] responded that he himself was prepared to carry out the suicide attack as soon as possible, but [redacted] was not ready to carry out the planned suicide attack, because his sister was in the USA and he wanted to wait until she returned to the Area.

15. [redacted] turned to [redacted] again and asked to act urgently to find a suitable place to carry out the planned suicide attack. After a few days, [redacted] reported that he had found a place in Tel Aviv that was suitable for carrying out the planned suicide attack.

16. On September 17, 2002, or thereabouts, [redacted] met [redacted] in the safe-house apartment in A-Ram and explained to the latter how to put on and how to activate the explosive belt. [redacted] stayed in the above mentioned apartment with [redacted] until September 18, 2002.

17. On September 19, 2002, [redacted] departed from Ramallah to carry out the planned suicide attack, while carrying one of the suicide belts on his person, which the Defendant had manufactured as set forth above.



18.  ▆▆▆▆ transported ▆▆▆ to Tel Aviv in his vehicle. Upon arriving in Tel Aviv, ▆▆▆▆ ▆▆▆▆ instructed ▆▆▆ to explode where there were many people, so that the explosion would cause the deaths of as many people as possible.

19.  At about 12:55 p.m., on September 19, 2002, or thereabouts, ▆▆▆ boarded Dan bus no. 4, license no. 9105201, at 94 Allenby Street in Tel Aviv. As soon as the above mentioned bus started to move, ▆▆▆ activated the explosive belt that the Defendant had manufactured, which he was carrying on his person, and caused a strong explosion, with the intent of causing the deaths of as many people as possible. The suicide terrorist, ▆▆▆▆▆▆▆▆ ▆▆▆▆ known as ▆▆▆ was killed as a result of the detonation of the above mentioned explosive device.

20.  As a result of the explosion of the suicide terrorist with the above mentioned explosive device, six people were killed, as described in the following counts of the indictment.

21.  As a result of the explosion of the suicide terrorist with the said explosive device, many other people were injured, as will be described in the following counts of the indictment.

22.  As a result of the explosion of the suicide terrorist with the said explosive device, extensive damage was sustained by the above mentioned bus, by the vehicles that were near the site of the explosion and by nearby stores.

23.  By his acts described above, the Defendant caused the intentional death of **the late Yossi Mamistavlov**, aged 39 at the time of his death, who was killed as a result of the explosion of the explosive device as set forth above.

**One hundredth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 64

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Ofer Zinger**, aged 39 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred first count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Rosanna Siso**, aged 63 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

Prosecution case 380/03                         39

[Stamp] P7: 64 [continued]

**One hundred second count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Yaffa Shem-Tov**, aged 49 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred third count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Solomon Hoenig**, aged 79 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred fourth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 65

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Jonathan Jesner**, aged 19 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred fifth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, attempted to cause the intentional death of all of the individuals who were in the vicinity of the suicide terrorist, who exploded with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, **approximately 84 people** who were aboard and near the above mentioned bus at the time of the explosion **were injured**.

[Stamp] P7: 65 [continued]

**One hundred sixth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on September 19, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, maliciously and unlawfully caused heavy damage to the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, and caused damage to additional vehicles and to stores and to businesses that were near the site of the attack described in the ninety-ninth count of the indictment, which were damaged as a result of the explosion of the explosive device that the Defendant had manufactured.

**One hundred seventh count: (Detailed incident 21011/02 Yarkon)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on October 11, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early September 2002, in Ramallah or thereabouts, manufactured two explosive belts for the purpose of carrying out suicide attacks with the intent of causing the deaths of as many people as possible, as described in the ninety-ninth count of the indictment.

2.  The Defendant transferred the two explosive belts to ██████████████████ ████████ known as ██████ a military operative in Hamas, who had them transferred to ████████████████████████████ as described in the ninety-ninth count of the indictment.

[Stamp] P7: 66

3.  After carrying out the attack described in the ninety-ninth count, ████████████
    decided to carry out an additional suicide attack using the explosive belt that the Defendant
    had manufactured for that purpose.

4.  For the purpose of advancing his above mentioned plan, ██████████ recruited ████
    ████ to carry out the planned suicide attack.

5.  ██████████ also met with ██████████, known as ████████ and
    instructed the latter to find a suitable site for carrying out the planned suicide attack. After a
    few days, ████████ reported that he had found two places in Tel Aviv that were suitable
    for carrying out the planned suicide attack.

6.  On October 11, 2002, ████████ brought ██████████ from the village of Arabeh to the
    safe house in A-Ram. ██████████ explained to ██████████ how to put on and
    how to activate the explosive belt. ██████████ attached the explosive belt that the
    Defendant had manufactured to the body of ██████████

7.  ██████████ transported ██████████ to Tel Aviv in order for the latter to carry out the
    planned suicide attack there.

8.  At about 8:15 p.m., on October 11, 2002, ██████████ dropped off ██████████ on the
    beach promenade in Tel Aviv and instructed the latter to detonate the explosive belt, which
    he was carrying on his person, in a restaurant that was full of people.

9.  ██████████ attempted to enter the Yotvata restaurant located on Herbert Samuel Street
    (Tel Aviv promenade), but the security guard at the site noticed him, suspected that he was
    a suicide terrorist and prevented

[Stamp] P7: 66

his entry. ████████ tried to flee from the site, but was caught after a pursuit and with the assistance of other security guards who arrived at the site.

10. By his acts described above, the above mentioned Defendant attempted to cause the deaths of as many people as possible.


**One hundred eighth count:**

**Nature of the offense:** Military training without a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in February 2003 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, administered military training to a person, a resident of Nablus, who had been sent to him by ████████

 ███████ known as ██████ or ██████ the ██████ of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area.

During the said training, the Defendant taught the above mentioned person how to manufacture explosive devices, electrical circuits for activating explosive devices and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

During the above mentioned military training, the Defendant and the above mentioned person were masked.


**One hundred ninth count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2003 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

[Stamp] P7: 67

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, conveyed to ███████████████████ known as █████ or █████ the █████ of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area, computer diskettes containing instructions for manufacturing the explosives and the explosive devices.

████████████ asked the Defendant to obtain the above mentioned diskettes in order to transfer them to the operatives of the Palestinian Islamic Jihad Organization, who had asked to learn how to manufacture explosives and explosive devices.

Prosecution case 380/03                         42

[Stamp] P7: 67 [continued]

**Witnesses of the Prosecution:**

1. ████████████████████ Judea Investigations Office. [took the statements of the Defendant dated March 12, 2003, March 13, 2003, March 30, 2003, May 15, 2003 and May 22, 2030, and submitted photographs that were shown before the Defendant on March 30, 2003 & a drawing in the handwriting of the Defendant]

2. ████████████████████ Judea Investigations Office. [took the statement of the Defendant on May 12, 2003]

3. Transcript of the remand hearing of the Defendant dated May 12, 2003.

4. ████████████, Identity No. ██████ (detainee)

5. ████████████ Identity No. ██████ (detainee)

6. ████████████████ Identity No. ██████ (detainee) (Prosecution Case 976/02)

7. ████████████████ Identity No. ██████ (detainee) (Prosecution Case 241/03)

8. ████████████████ Identity No. ██████. (detainee) (Prosecution Case 210/03).

9. ████████████ Identity No. ██████. (prisoner)

10. ████████████, Identity No. ██████ prisoner)

11. ████████ Identity No. ██████ (prisoner)

12. ████████ Identity No. ██████. (prisoner)

13. ████████████ Identity No. ██████ (detainee) (Prosecution Case 889/02)

14. ████████████ Identity No. ██████. (detainee) (Prosecution Case 888/02)

15. ████████████████ ██████ (prisoner) (Prosecution Case 846/01)

16. ████████████ Jordanian Passport ██████ (detainee) (Prosecution Case 815/01)

[Stamp] P7: 68

17.  ███████████████████ Identity No. ██████ (prisoner) (Prosecution
     Case 344/04)

18.  ███████████████ Identity No. ████████ (detainee) (Prosecution Case
     444/02)

19.  ████████████ Identity No. ████████ (detainee) (Prosecution Case
     946/02)

The list of technical witnesses from the detailed following incident cases will be delivered to
the Prosecution if necessary, during the trial:

1.   6554/01 Zion

2.   6891/01 Jerusalem Special Duties Department

3.   10283/01 Zion

4.   1512/02 Moria

5.   5601/02 Rishon le Zion

6.   2881/02 Glilot

7.   3975/02 Lod

8.   9913/02 Rehovot

9.   1197/02 Shalem

10.  9638/02 Rishon le Zion

11.  19284/02 Yarkon

12.  21011/02 Yarkon

                                              [Signature]
                                      Michael Kotlik,      Captain
                                      Military Prosecutor

Date: May 29, 2003
Reference: 380-03

Prosecution case 380/03                43

                                      [Stamp] P7: 68 [continued]