## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

MARK I. SOKOLOW, *et al.*,                )

        Plaintiffs,                )

    v.                )      Civil Action No. 04cv397 (GBD) (RLE)

THE PALESTINE LIBERATION                )
ORGANIZATION, *et al.*,                )

        Defendants.                )

_____)

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
### MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Federal Rule of Civil Procedure 50(a), the Palestinian Authority ("PA") and

Palestine Liberation Organization ("PLO") (collectively, "Defendants") hereby move for

judgment as a matter of law on the direct liability claims arising from the July 31, 2002 (Hebrew

University), January 27, 2002 (Sokolow) and June 19, 2002 (Mandelkorn) attacks, as well as the

remaining Plaintiffs' direct liability claims, and Defendants' personal jurisdiction defense.

Defendants intend to renew at the close of evidence their Rule 50(a) motion on remaining issues,

including Plaintiffs' vicarious liability claims for the January 22, 2002 (Gould-Waldman), March

21, 2002 (Bauer), and January 29, 2004 (Goldberg) attacks.

### Brief Procedural History

In November 2014, the Court granted Defendants' motion for summary judgment on all

of Plaintiffs' non-federal law claims. DE 646 at 2. The Court granted in part and denied in part

the Defendants' motion as to the federal Anti-Terrorism Act ("ATA") claims. *Id.* The Court

granted Defendants' motion "with respect to the ATA claims of vicarious liability against the

PLO." *Id.* at 1. The Court also granted Defendants' motion as to the Mandelkorn plaintiffs'

claim of vicarious liability against the PA.  *Id.*   In denying Defendants' motion for summary judgment on the remaining ATA claims, the Court assumed the admissibility of the evidence proffered by Plaintiffs and stated:  "If certain evidence is deemed inadmissible prior to or during trial, and is necessary for Plaintiffs to prove their claims by a preponderance of the evidence, Defendants may be entitled to a directed verdict."  *Id.* at 3 n.3.

After the Court made some pre-trial evidentiary rulings excluding certain evidence, the Defendants renewed their motion for summary judgment as to the July 31, 2002 (Hebrew University), January 27, 2002 (Sokolow) and June 19, 2002 (Mandelkorn) attacks.  DE 681-682.  The Plaintiffs subsequently withdrew the lynchpin evidence supporting Oz Guetta's claim, specifically, Varda Guetta's identification of the perpetrator.  *See* DE 709 at 2.  At the January 12, 2015 pre-trial conference, the Court dismissed the Guetta ATA claim.  Tr. 1/12/15 at 176:17-180:15.  With respect to the three attacks that were the subject of the renewed motion for summary judgment, the Court characterized the issue of whether they should be tried as a "close" one.  *Id.* at 180:16-17, 183:7-8; 188:15-16.  The Court stated it did not have "necessary confidence that the plaintiff would meet its burden with regard to those cases."  *Id.* at 180:17-19.  The Court observed:  "obviously, I am going to have to assess when you rest whether or not this case is going to the jury or when they rest whether or not that case is going to go to the jury."  *Id.* at 183:7-11.

Under Rule 50, a court may grant judgment as a matter of law against a party if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [that] party on that issue."  Fed. R. Civ. P. 50(a); *Stampf v. Long Island R.R.*, 761 F.3d 192, 197 (2d Cir. 2014).  Now that the Plaintiffs' evidence has come in, it is apparent that they lack admissible evidence supporting their clams.  Many of the claims made in Plaintiffs' opposition to summary judgment

and even in Plaintiffs' opening did not materialize in the form of admissible evidence. Accordingly, for the reasons set forth below, the Defendants are entitled to summary judgment as a matter of law.

## Argument

## I.    ELEMENTS OF PLAINTIFFS' ANTI-TERRORISM ACT CLAIM

Plaintiffs are suing the PA and PLO under the ATA's civil liability provision, which creates liability for killing or injuring a U.S. national "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). The statute has a scienter requirement, a predicate criminal act requirement, and a causation requirement. As the Court earlier explained in its opinion on the initial summary judgment motion, "[t]he ultimate question as to Plaintiffs' ATA claim is whether a reasonable jury could find that Defendants, acting with the requisite scienter, committed predicate crimes which proximately caused injuries to American citizens, either vicariously through the acts of their employees or directly through their own actions." DE 646 ("MSJ Op.") at 8.

### A.    Scienter

To "establish the requisite mental state, Plaintiffs must show that Defendants committed a terrorist act intentionally, knowingly or recklessly, that injured Americans." *Id.* at 7; *see also Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 556 (E.D.N.Y. 2012). In addition, Plaintiffs must show "a connection . . . between the Defendants' mental state and the potential for harm to American nationals." *Gill*, 893 F. Supp. 2d at 557. Specifically, Plaintiffs must show: (1) the Defendants knew, and it was the case, that a terrorist organization they supported intended to injure an American; (2) the Defendants intended that their support of a terrorist organization lead

to an injury of an American, regardless of the terrorist organization's intention; or (3) the Defendants were reckless with regard to the substantial probability of an injury that would likely be suffered by an American as a result of its and the terrorist organization's actions.  *Id.*  This U.S. nexus requirement is essential to the Court's exercise of extraterritorial jurisdiction over foreign defendants for conduct and injuries occurring outside the United States.

Here, a reasonable jury could not find that the Plaintiffs satisfied the scienter requirement because there is no evidence that the PA or PLO intended to injure Americans or even that the terrorist organizations Hamas or Al Aqsa Martyrs' Brigades ("AAMB") intended to injure Americans.  There is no evidence whatsoever, or even an allegation, of direct support to the entities AAMB or Hamas themselves.  Nor, with respect to the material support allegedly provided to individual members of Hamas or AAMB, is there any evidence that there was a substantial probability such support would lead to the injury of Americans.  These attacks occurred in Jerusalem, as part of the Israeli-Palestinian conflict and the target of the attacks – wrongfully so – were Israelis.  None of the convictions introduced into evidence suggest any intent on the part of the perpetrators to injure Americans, nor is there evidence of PA or PLO support for attacks on Americans.   Moreover, any attacks by PA employees on Americans would not have been within the scope of employment and for the benefit of the PA because U.S. political support and foreign aid were essential to the PA's long-term viability.

**B.**    **Predicate Criminal Act**

Among other requirements, an "act of international terrorism" must: (1) involve a violent act or an act dangerous to human life that is in violation of some federal or state criminal law, or that would be criminal if it were committed within the jurisdiction of the United States or any state."  18 U.S.C. § 2331(1).  "Like a civil RICO claim, a suit for damages under the ATA is akin to a Russian matryoshka doll, with statutes nested inside of statutes.  Pleading and proving the

violation of a predicate criminal provision is required to satisfy the first requirement of an ATA

claim—i.e., violation of a federal or state criminal law." *Gill*, 893 F. Supp. 2d at 553 (internal

citations and quotations omitted).   In broad terms, Plaintiffs have two theories of how

Defendants perpetrated an act of international terrorism:  (1) PA employees were convicted of

planning and perpetrating the attacks, and the PA should be subject to ***vicarious liability*** for their

actions; and (2) the PA and PLO violated material support statutes (18 U.S.C. §§  2339, 2339A,

2339B) and are therefore subject to ***direct liability***.   As discussed below, Plaintiffs have no

evidence that the PA or PLO provided material support or resources used in preparation for or in

carrying out the terrorist attacks at issue.

## C.    Causation

The ATA's "by reason of" language requires a showing of "but for" causation as well as

proximate causation. *Burrage v. United States*, 134 S. Ct. 881, 889 (2014) ("the phrase, 'by

reason of,' requires at least a showing of 'but for' causation"); *Univ. of Tex. Southwestern Med.

Ctr. v. Nassar*, 133 S. Ct. 2517, 2524-25 (2013) ("Causation in fact...is a standard requirement of

any tort claim" and typically "requires the plaintiff to show 'that the harm would not have

occurred' in the absence of — that is, but for — the defendant's conduct"); *Rothstein v. UBS AG*,

708 F.3d 82, 95 (2d Cir. 2013) ("by reason of" language requires a showing that defendant's

violation not only was a "but for" cause of plaintiff's injury, but was the proximate cause as well)

(citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 267-68 (1992)); *Terrorist

Attacks on September 11, 2001 v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*,

714 F.3d 118, 125 (2d Cir. 2013) ("the 'by reason of' language of the statute restricts the

imposition of such liability to situations where plaintiffs plausibly allege that defendants actions

proximately caused their injuries");  *Ayda Husam Ahmad v. Christian Friends of Israeli Cmtys.*,

No. 13 Civ. 3376, 2014 U.S. Dist. LEXIS 62053, at *13-14 (S.D.N.Y. May 5, 2014) (dismissing

ATA claim because the plaintiff's "allegations are not even sufficient to show but-for causation . . . let alone the more demanding standard of proximate causation").

The Second Circuit has applied the proximate cause standard rigorously in ATA cases. In *Rothstein*, the Second Circuit affirmed dismissal of an ATA material support claim because the complaint did not "allege that if [defendant] UBS had not transferred U.S. currency to Iran, Iran, with its billions of dollars in reserve, would not have funded the attacks in which plaintiffs were injured." 708 F.3d at 97. *Rothstein* expressly rejects the notion that any violation of the material support statute creates liability. "If Congress had intended to impose strict liability, we have no doubt that it would have found words more susceptible to that interpretation, rather than repeating the language it had used in other statutes to require a showing of proximate cause." *Id.* at 96. As the Court of Appeals explained: "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts *were a substantial factor* in the sequence of responsible causation and whose injury was reasonably foreseeable or anticipated as a natural consequence." *Id.* at 91 (internal quotation and citation omitted) (emphasis added). Similarly, in *Al Raji Bank*, the Second Circuit affirmed the dismissal of ATA material support claims because the Plaintiffs did not allege that that the money allegedly donated by the defendants to the purported al Qaeda-affiliated charities actually was transferred to al Qaeda *and aided in* the September 11, 2001 attacks. 714 F.3d at 124.

Here, as set forth below, no reasonable jury could find that the material support allegedly provided was the 'but for' or proximate cause of Plaintiffs' injuries.

## II.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE CLAIMS OF THE HEBREW UNIVERSITY PLAINTIFFS

### A.    There Is No Evidence that a PA Employee Committed the Attack.

There is no dispute that a Hamas cell (known as the Silwan cell) planned and perpetrated the July 31, 2002 bombing at Hebrew University.  Plaintiffs' expert Alon Eviatar testified about the involvement of members of that cell in the attack – specifically, Ibrahim Hamed, Mohamad Arwan, Wael Al-Qassim, Walid Anjas, and Mohamad Adwa.  Tr. 839-49.  Nor is there any dispute that the individual who made the bomb used in the attack was a Hamas operative named Abdullah Barghouti.  Mr. Eviatar testified that Abdullah Barghouti was a Hamas operative.  Tr. 771.  Abdullah Barghouti's custodial statement admitting to manufacturing the explosive device used in the Hebrew University bombing is in evidence, PTE 428, as is Abdullah Barghouti's conviction for his role in the bombing, PTE 452.  *See also* Tr. 286-300 (Kaufman testimony regarding the conviction).  There is no evidence, however, that any of the individuals convicted for planning and perpetrating the attack – or with providing the explosive device – was a PA employee.

Plaintiffs have sought to implicate PA employee Ahmed Barghouti in Abdullah Barghouti's supposed release from PA detention months before the bombing.  *See* Tr. 300-304 (Kaufman testifying about Ahmed Barhgouti indictment) (PTE 357, at 73-74).  Plaintiffs' expert Nick Kaufman conceded on cross-examination, however, that Ahmed Barghouti was not indicted or convicted for any involvement in the Hebrew University bombing and in fact was in prison before the attack occurred.  Tr. 360-61.  Alon Eviatar also testified that Ahmed Barghouti was not convicted for the Hebrew University bombing.  Tr. 992; *see also* PTE 357 (Ahmed Barghouti's 53-count indictment does not include the July 31, 2002 bombing).  Nor did Plaintiffs offer any other evidence that Ahmed Barghouti played any role in perpetrating or planning the

attack, or that he was part of the Silwan cell that carried out the attack.  Thus, assuming *arguendo* that a reasonable jury could conclude (1) that Ahmed Barghouti procured Abdullah Barghouti's release from prison, and (2) that in doing so Ahmed Barghouti acted within the scope of his PA employment, there remains legally insufficient evidence to find the PA liable under a theory that Ahmed Barghouti committed an act of international terrorism that injured the Hebrew University plaintiffs.

**B.      There Is No Evidence That the PA or PLO Provided Material Support to Hamas in Violation of § 2339B.**

At the time of the Hebrew University bombing, Hamas was designated by the U.S. State Department as a foreign terrorist organization.  Tr. 768 (Eviatar).  Under 18 U.S.C. § 2339B, it is unlawful to "knowingly provide material support or resources to a foreign terrorist organization." Violation of 18 U.S.C. § 2339B may constitute an "act of international terrorism" giving rise to civil liability under the ATA.  *See* 18 U.S.C. § 2331(1)(A) (predicate criminal act requirement). At the time period relevant to this lawsuit, "material support or resources" was defined to mean:

> currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

18 U.S.C. § 2339A(b) (2000 ed. Supp. III) (Jan. 2, 2001 to Jan. 19, 2004); 18 U.S.C. § 2339B(g)(4) ("the term 'material support or resources' has the same meaning given that term in section 2339A").

During trial, Plaintiffs provided no evidence that the PA or PLO provided *any* material support to Hamas, without regard to whether that support bears sufficient causal relation to the Hebrew University bombing to create liability.  There is, for example, no evidence of any transfers of money or weapons from the PA or PLO to Hamas.  None of Plaintiffs expert

witnesses testified that the PA or PLO provided material support to Hamas.  None of the documents admitted into evidence reflect any material support to Hamas.  Plaintiffs showed the jury a photo of Yasser Arafat greeting Hamas leader Sheikh Ahmad Yassin (PTE 1128), but that hardly provides evidence of a violation of § 2339B.  Eviatar vaguely alluded to some cooperation and coordination between Hamas and Fatah (Tr. 767), but provided no evidence that would give rise to material support liability to the PA or PLO.

Plaintiffs have two material support theories, neither of which provides a legally sufficient basis to impose liability on the PA or PLO.  First, Plaintiffs argue that Ahmed Barghouti provided material support in the form of a safehouse and a weapon to Abdullah Barghouti.  The only evidence that arguably supports this is Ahmed Barghouti's conviction for sheltering Abdullah Barghouti.  PTE 357.  According to the Israeli Military Court indictment, to which Ahmed Barghouti pled guilty in "late 2001 or thereabouts," Ahmed Barghouti "transferred . . . Abdullah Barghouti from the prison of the Preventive Security of the Palestinian Authority in Bitunia to an apartment, which [Ahmed Barghouti] had rented in downtown Ramallah."  PTE 357 at 73-74 (51st Count).  According to the indictment, Ahmed Barghouti and another individual provided lodging to Abdullah in the apartment for "several days."  *Id.* at 73.  Before Abdullah left the apartment, according to the indictment, Ahmed Barghouti provided Abdullah Barghouti a pistol.  *Id.*

Even assuming arguendo the PA could be found vicariously responsible for Ahmed Barghouti's actions, no reasonable jury could find that providing Abdullah Barghouti a place to stay for "several days" and a pistol in late 2001 was the proximate cause of the Hebrew University bombing attack in July 2002.  Not only is the material support temporally removed from the attack, but also the nature of the alleged support is not logically connected to the attack.

Even as to the weapon, there is no evidence that would allow a reasonable jury to conclude that providing a handgun was a proximate cause of a bombing. The Court previously noted the insufficiency of this evidence. Tr. 1/12/15 at 181:15-20 ("But, obviously, one, you are relying heavily on the providing of weapons but not any weapons that were associated with the bombing. You say Ahmed gave him a gun and you claim that he committed a bombing. Well, there is a little disconnect there. You can't say that they are providing him with a gun unless something else is disclosed during this trial necessarily to follow that they are supporting a bombing."). Although Plaintiffs had avoided summary judgment by claiming evidence of material support to Abdullah Barghouti in the form of money, a phone, and bomb-making supplies (MSJ Op. at 17), no evidence was admitted to support those claims.

Plaintiffs' other material support theory is equally thin. Plaintiffs argue that the PA violated the material support statute by providing "personnel" to Hamas when they allegedly released Abdullah Barghouti from custody. Plaintiffs' interpretation is far-fetched. There is no evidence that Abdullah Barghouti was ever working for or had any allegiance to the PA. There is no evidence Abdullah Barghouti received training or salary from the PA or took direction from the PA before the Hebrew University bombing. Rather, when PA security forces came to arrest him, he threatened to kill them. *See* DE 678-1 (Depo. Mosab Hussan Yousef at 106:9-102:23) (played at trial, *see* Tr. 807-09). The notion that the PA "provided" Abdullah Barghouti to Hamas finds no support in the record. To the contrary, Abdullah Barghouti's amended indictment describes his recruitment into the military wing of Hamas in May 2001 by another Hamas operative, well before the PA supposedly "provided" Barghouti to Hamas. PTE 452, Second Count at P:7:30.

In any event, there is insufficient evidence that the PA released Abdullah Barghouti from custody, or that they released him to Hamas.  Plaintiffs have two items of evidence, both of which are legally insufficient to create PA or PLO material support liability.   First, Mosab Hussan Yousef testified to the PA's efforts to arrest Abdullah Barghouti.  According to Yousef, Abdullah Barghouti was violently resisting arrest; there was "gunfire" and PA security forces were "afraid that if they got into the place [where Abdullah was hiding] they get shot."  DE678-1 at 106:16; 107:9-10.  Eventually, Yousef's father talked to Abdullah Barghouti and convinced him that if he went with the PA forces, "they would release him afterwards."  *Id.* at 107:22-23.  Police, of course, will say many things to suspects to bring them into custody.  Whatever conversation Yousef purported to overhear, that hearsay does not provide sufficient evidence that the PA in fact released Abdullah Barghouti.

The only other evidence comes from Ahmed Barghouti's indictment, which says that Ahmed "transferred . . . Abdullah Barghouti from the prison of the Preventive Security  of the Palestinian Authority in Bitunia to an apartment."  PTE 357 at 73-74; Tr. 810 (Eviatar).  Even if one credits the indictment, it does not indicate that Ahmed Barghouti gained the release of Abdullah Barghouti, only that he transferred him.  Moreover, there is no evidence that this transfer was with the knowledge or approval of the PA security service holding Ahmed Barghouti.  And, even if a reasonable jury could conclude that Ahmed Barghouti <u>released</u> Abdullah Barghouti from jail, such conduct, standing alone, does not give rise to liability under § 2339B.  There is no evidence that any such release was so that Abdullah Barghouti could work for Hamas, or that Ahmed Barghouti released Abdullah Barghouti with the knowledge he was assisting Hamas.  Section 2339B does not criminalize minor assistance to individuals who happen to be members of foreign terrorist organizations.  *See United States v. Paracha*, 2006

U.S. Dist. LEXIS 1, at *91-92 (S.D.N.Y. Jan. 3, 2006); *see also id.* *76 (requiring the defendant provide material support or resources knowing that the material support or resources could or would be utilized to further the activities of the foreign terrorist organization and not just the personal interests of individual members).

### C.     There Is No Evidence that the PA or PLO Violated § 2339.

18 U.S.C. § 2339 criminalizes "harbor[ing] or conceal[ing] any person who [the defendant] knows, or has reasonable grounds to believe, has committed, or is about to commit" specific offenses, including 18 U.S.C. § 2332a (relating to weapons of mass destruction). Plaintiffs argue that the PA should be vicariously liable for violating § 2339 because Ahmed Barghouti provided an apartment for several days in late 2001 to Abdullah Barghouti.  *See* PTE 357 at 73-74 (Ahmed Barghouti indictment).  There is no evidence that Ahmed Barghouti provided Abdullah Barghouti an apartment with the knowledge that Abdullah Barghouti committed or was about to commit a crime involving the use of weapons of mass destruction.

Ahmed Barghouti was convicted by the Israelis for the crime of giving "shelter to an unspecific person who had committed an offense against the security legislation or had been involved in any activity which was intended to harm the public welfare . . . concerning whom there are reasonable grounds to suspect that he did so . . . . ."  PTE 357 at 73.  As such, the indictment is backward looking, not forward looking.  The indictment states that Abdullah Barghouti was responsible for carrying out the bombing attack at the Sbarro restaurant on August 9, 2001, but does not state Ahmed Barghouti was aware of this fact.  *Id.* at 74.  Nor have the Plaintiffs presented any evidence regarding Ahmed Barghouti's mental state when providing an apartment to Abdullah Barghouti for several days in late 2001.  In any event, as discussed above, even if a reasonable jury could conclude based on Ahmed Barhgouti's conviction, that he violated 18 U.S.C. § 2339, there is an insufficient evidentiary basis to conclude (1) that he did so

acting within the scope of his employment and for the benefit of the PA; and (2) that providing

Abdullah Barghouti a place to stay for several days in late 2001 was the proximate cause of the

Hebrew University bombing in late July 2002. *See* MSJ Op. at 8 ("This Court 'rejects the

contention that any reckless contribution to a terrorist group or its affiliate, no matter how

attenuated, will result in civil liability, without the demonstration of a proximate causal

relationship to the plaintiffs' injury.") (quoting *Gill*, 891 F. Supp. 2d at 382). *See also* Part I.C

above (discussion of causation).

## III. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE CLAIMS OF THE SOKOLOW PLAINTIFFS

### A. There Is No Evidence a PA Employee Committed the Attack.

There is no dispute that Wafa Idris carried out the January 27, 2002 suicide bombing

attack that injured the Sokolows.  There is no dispute that Wafa Idris was not a PA employee.

Tr. 1305-06 (Shrenzel).  She worked as a medic for the Palestinian Red Crescent (the local

equivalent of the Red Cross).  Tr. 1305 (Shrenzel).   Munzer Noor, who was convicted for

planning and assisting Idris in carrying out the attack, also worked for the Palestinian Red

Crescent and also was not a PA employee.  *See* PTE 467, Sheet No. 1 (Noor custodial statement

stating he worked at the Red Crescent).  In fact, no PA employees were convicted of planning or

perpetrating the January 27, 2002 bombing, and Plaintiffs provided no witness testimony or

documentary evidence showing any PA employee involvement in the planning or perpetration of

the bombing.  The Court ordered Plaintiffs to redact the blame-shifting portion of Noor's

custodial statement implicating a PA employee, inadmissible evidence which had been the

centerpiece of the Sokolows' vicarious liability claim.

At most, Noor's redacted custodial statements refer to meetings that he had with "blank"

at the Mukata'a.  PTE 467; PTE 465.  Standing alone, oblique references to the Mukata'a are

insufficient for a reasonable jury to infer that an unnamed individual was employed by the PA or

that the individual undertook any of his alleged activities with respect to the January 27 attack

within the scope of his employment with the PA. *See* Tr. 2/6/15 2672:19:2673:6. Moreover, the

Court has explicitly held that the Plaintiffs cannot argue "that this is evidence that the PA was

involved." Trial Tr. at 1342:2-4. The Court explained:

> You can't argue that because it is hearsay. That is the whole
> purpose of the redaction, that this person is accusing another
> person, but more importantly, he is accusing the PA and the PLO.
> The whole purpose of the redaction was that if you want to prove
> that, then you have admissible non-hearsay evidence of witnesses
> to come into this court and prove it.

*Id.* at 1342:4-10. The Court concluded, "I don't expect you to reference this out-of-court hearsay

statement by this individual as substantive evidence that he must have been dealing with a PA

person in the course of his employment or as an agent of the PA." *Id.* at 1342:20-24; *see also id.*

at 1342:2-4 ("I am not going to let you argue from either of these documents that this is evidence

that the PA was involved.").

Consequently, Plaintiffs' theory of vicarious liability rests solely on PTE 233 — the PA

Preventative Security Service memo, the body of which states:

> At the night at which it was revealed that the person, who carried out the
> attack was *shahida* [female martyr] Wafa Idris – and before anyone
> claimed responsibility for the attack – Tawfik al-Tirawi, head of the
> General Intelligence, called Khalil Idris, the elder brother of the *shahida*
> [female martyr], several time and requested that the family would not
> announce that Wafa was the one who carried out the attack, but that she
> got married and moved to Jordan or to any other place. In return, al-
> Tirawi was willing to facilitate Khalil's visit to Jordan despite the fact that
> he is on the Israeli wanted list. Khalil answered that he could not sell the
> blood of his sister in this way. The family indicated that during her last
> day, Wafa did not show any signs that she was not coming back. She said
> that she was traveling to Nablus and might be late.

PTE 233.   According to Plaintiffs' translation, handwritten notes that appear at the top of the document state: "This information proves that the General Intelligence are involved in the issue of Wafa Idris.  You can discreetly check this with her brother."  *Id.*

This lone document does not constitute a legally sufficient evidentiary basis to find it more likely than not that Tirawi committed the January 27, 2002 attack, or that he did so within the scope of his employment.  Even Plaintiffs' expert Israel Shrenzel admitted that PTE 233 does not show that Tirawi had "prior knowledge of the attack."  Tr. 1594:10-11.  In order to meet the statute's predicate criminal act requirement, Plaintiffs must adduce sufficient evidence for a jury to conclude that Tirawi violated a criminal statute that meets the definition for an act of international terrorism.  *See* 18 U.S.C. § 2331(1)(A).  At trial, Plaintiffs offered rumor and character attack from Plaintiffs' expert (Tr. 1564 (Shrenzel)), but no evidence of what criminal law Tirawi supposedly violated.

### B. There Is No Evidence that the PA or PLO Provided Material Support in Violation of § 2339A.

Plaintiffs also claim that the PA and PLO should be held directly liable for the January 27, 2002 attack.  Plaintiffs' theory is that the Al Aqsa Martyrs Brigades committed the attack, and that the PA and PLO provided direct support to the AAMB.  But the only evidence in the record to support Plaintiffs' initial premise that the AAMB committed the attack is Shrenzel's testimony.  Shrenzel testified that the AAMB claimed responsibility for the attack, Tr. at 1464:21-24, and that, in his "expert" opinion, the AAMB was, in fact, responsible for the attack.  *Id.* at 1470:10-14.  On a Rule 50 motion, the Court can reject the unsupported *ipse dixit* of an expert.  *See, e.g., Celebrity Cruises Inc. v. Essef Corp.*, 478 F. Supp. 2d 440, 454 (S.D.N.Y. 2007) ("Viewing the evidence in the light most favorable to Celebrity, there is simply insufficient evidence to support [its expert's] opinion, upon which Celebrity relied at trial.  Essef

is therefore entitled to judgment as a matter of law on Celebrity's claim for lost enterprise value.").  The Court should do so here, when Shrenzel provided no factual support for his conclusions.

Assuming, *arguendo*, that the Court finds that Shrenzel's testimony constitutes sufficient evidence for a reasonable jury to find that the AAMB committed the attack, there is no evidence that the PA or PLO violated one of the material support statutes.  The Sokolows do not have a § 2339B claim.  AAMB was not designated as a foreign terrorist organization until March 27, 2002, PTE 537, approximately two months after the January 27, 2002 bombing that injured the Sokolows.  *See also* MSJ. Op. at 19 n.17.[1]

There is no evidence that the PA or PLO provided any money, weapons, or other forms of material support or resources to Noor or Idris – or even to AAMB – that were a substantial contributing factor in the bombing.  The Court's draft verdict form appropriately asks the jury whether the Plaintiffs proved by a preponderance of the evidence that the PA or PLO is liable for the January 27, 2002 terrorist attack because it "knowingly provided material support or resources that were used in preparation for or in carrying out the terrorist attack."  Draft at 4. Here, there is no evidence upon which a reasonable jury could reach that conclusion.  The Plaintiffs did not introduce into evidence any documents demonstrating that the PA or PLO provided material support or resources used in preparation for or in carrying out the January 27, 2002 bombing.  Plaintiffs provided no witness testimony – fact or expert – that the PA or PLO provided material support or resources used in the January 27, 2002 attack.

---

[1] Nor can Plaintiffs proceed under 18 U.S.C. §§ 2339C (which proscribes "the financing of terrorism") because that provision was enacted on June 25, 2002 — nearly five months after the January 27, 2002 attack.  Similarly, there is no evidence that the PA or PLO harbored or concealed Idris or Noor, in violation of § 2339.

**IV.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE CLAIMS OF THE MANDELKORN PLAINTIFFS.**

    **A.   There Is No Evidence That a PA Employee Committed the Attack.**

Shaul Mandelkorn was injured in an explosion that occurred on June 19, 2002 near a bus stop in the French Hill neighborhood of Jerusalem.  Tr. at 1360:10-13 (Shrenzel); 2269:21-22 (Leonard Mandkelorn).  Plaintiffs claim that Said Awada was the suicide bomber but provided no evidence that he was a PA employee at the time of the bombing.  Plaintiffs presented no evidence regarding any other individual's role in the bombing.

    **B.   There Is No Evidence that the PA or PLO Provided Material Support in Violation of § 2339B.**

At the time of the June 19, 2002 bombing, the U.S. State Department had designated AAMB as a foreign terrorist organization.  Plaintiffs contend that the PA and PLO are liable to the Mandelkorn plaintiffs for violating 18 U.S.C. § 2339B.  Plaintiffs lack a legally sufficient basis for their 2339B claim because they have no evidence other than the *ipse dixit* of expert Israel Shrenzel as to which individual or group perpetrated the bombing.

Only four documents were admitted into evidence related to the June 19, 2002 bombing: (1) a photo of Said Awada (PTE 1158); (2) a document from the PA Ministry of Social Affairs, Martyrs' Families & Injured Care Establishment regarding Said Awada (PTE 19); (3) a December 12, 2012 "Response to Query" memorandum regarding Awada prepared by the PA's General Intelligence Service ("GIS") (PTE 139); and (4) an Israeli police crime scene report (PTE 338).  Neither of the PA documents (PTE 19 nor PTE 139) identifies Said Awada as the perpetrator of a June 19, 2002 bombing in French Hill.  PTE 19 states that Awada was martyred on June 18, not June 19.  PTE 19 at 6830, 6834.  It does not state that Awada carried out an attack at a bus stop in French Hill but rather refers generally to "Jerusalem." *Id.* at 6830.  The December 2012 GIS file states only that Awada was killed in Jerusalem but does not provide a

date or the specific location.  PTE 139.  The Israeli crime scene report does not identify Said

Awada as the individual who carried out the June 19, 2002 French Hill bombing.  PTE 338.

When asked about the discrepancy between the PA file identifying Awada as dying on

June 18 and Mandelkorn's injury on June 19, Shrenzel testified "[u]nfortunately, this reflects

how successive the attacks were."  Tr. 1382:6-10.   Alon Eviatar also testified that the "year 2002

was the pinnacle of a terrorist onslaught which was characterized by terror attacks that occurred

every few days."  Tr. 414.  There is thus no reason to assume that the PA document was in error

when it identified Awada as responsible for a June 18 suicide attack.  Shrenzel nonetheless

testified that he had satisfied himself that the attack of Said Awada took place on June 19.  Tr.

1382:13-15.  Shrenzel, however, provided no testimony as to how he had reached that

conclusion.  Plaintiffs offered no other evidence identifying Awada as the perpetrator of the June

19, 2002 attack that injured Shaul Mandkelkorn.

Similarly, Shrenzel testified that he was satisfied that the June 19, 2002 attack was an "Al

Aqsa" attack, but provided no basis for that opinion.  Tr. 1382 at16-20; 1470:18-21.  Nor did

Plaintiffs offer any other evidence to establish AAMB responsibility for the June 19 attack.  The

Court consistently has cautioned Plaintiffs that their experts cannot provide opinions as to who

carried out the attacks at issue, especially when those opinions are not based on admissible

evidence or personal knowledge.  Indeed, an "expert may not . . .  simply transmit . . . hearsay to

the jury." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008).

Courts have repeatedly interpreted *Mejia* to preclude experts from telling a jury which

individual or group carried out a terrorist attack.  "Under *Mejia*, attribution testimony cannot be

used as an excuse to introduce and summarize straightforward factual evidence that has not been

admitted, such as a webpage that says 'Hamas carried out a suicide bombing.'" *Strauss v. Credit*

*Lyonnais, S.A.*, 925 F. Supp. 2d 414, 445 (E.D.N.Y. 2013) (excluding expert opinions that

Hamas carried out the attacks at issue); *Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d

27, 33 (D.D.C. 2010) (disregarding expert opinion on PRC responsibility for terrorist attack

because "[e]xpert opinions may be based on hearsay, but they may not be a conduit for the

introduction of factual assertions that are not based on personal knowledge"), *aff'd in part, rev'd

in part on other grounds*, 651 F.3d 118 (D.C. Cir. 2011); *Gilmore v. Palestinian Interim Self-

Government Auth.*, 1:01-cv-853,  2014 U.S. Dist. LEXIS 102093, at *56 (D.D.C. July 28, 2014)

(citing *Mejia* and excluding Alon Eviatar opinion on perpetrator of alleged terror attack because

Eviatar "is simply repeating hearsay evidence without applying any expertise whatsoever, a

practice that allows [Plaintiffs] to circumvent the rules prohibiting hearsay.").

  Even if the Court were to allow the Mandelkorn case to reach the jury based solely on

Shrenzel's opinion that Awada and AAMB carried out the attack, there is not a legally sufficient

basis for a jury to find by a preponderance of the evidence that either the PA or PLO provided

material support or resources that were used in preparation for or in carrying out the June 19,

2002 bombing.  Plaintiffs introduced into evidence two documents captured by the Israelis,

which they and the IDF treat as the "smoking gun" evidence of PA support for AAMB.  PTE 962

purports to be Arafat's September 19, 2001 approval of paying $600 each to three individuals.

PTE 963 purports to be Arafat's April 5, 2001 approval of payment of $800 each to 15

individuals.  There is no evidence that Arafat knew these individuals were connected with

AAMB or that he approved the payments knowing that the payments would be used in carrying

out attacks on civilians.  Neither of these documents shows any payments to anyone connected

with the June 19, 2002 bombing.  Given the (1) lack of connection between the individuals listed

in PTE 962 and PTE 963 and the June 19 bombing, (2) lack of temporal proximity between the supposed payment approvals and the June 19 bombing, (3) de minimis amounts of the payments at issue, and (4) absence of scienter evidence, no reasonable jury could conclude that the payments approved by Arafat were the proximate cause of the June 19 bombing.[2]

## V.    PLAINTIFFS LACK LEGALLY SUFFICIENT EVIDENCE OF PA OR PLO DIRECT LIABILITY FOR THE GOULD-WALDMAN, BAUER, AND GOLDBERG ATTACKS.

As to the remaining three attacks, there is no evidence before the jury that the PA or PLO provided any material support or resources used in the attacks in violation of 18 U.S.C. § 2339A. Although the Plaintiffs do not have to prove that Defendants provided support with an intent that a specific attack be carried out, they must show that the material support or resources were provided with an intent to support terrorism against Americans, and that the material support was the but-for and proximate cause of plaintiffs injuries, which requires, at the very least, that the material support be a substantial factor in causing the attack.  *See* 18 U.S.C. § 2339A (requiring that the material support and resources be provided "knowing or intending that they are to be

---

[2] Plaintiffs' experts also rely on PTE 889, the verdict of Fouad Shoubaki, who was convicted by the Israelis of transferring "a monthly salary in the amount of NIS 500 to members of the military squads of the al-Aqsa Martyrs Brigades in the Bethlehem area."  PTE 889 at 2.  The sole evidence was the blame-shifting custodial statement of a third party, who at trial disavowed knowledge of Fouad Shoubaki, and Shoubaki's own custodial statements, where he denied any knowledge that the recipients of the funding were associated with AAMB.  *Id.* at 45 (the "basis for this count lies in the statements by the Defendant, but also in the statements which were made by [redacted] to the police); *id.* at 28 ("the witness claimed that he did not know Fouad Sh[o]ubaki and that he had never heard the name"); *id.* at 35 (Shoubaki testified that "there was an instruction from [redacted] to pay NIS 500, but he did not know what they were being paid for.  No one told him that those people belonged to the al-Aqsa Martyrs Brigades.").  In addition, Said Awada was from Nablus, not Bethlehem.  PTE 19 at 6828-6829.

used in preparation for, or in carrying out," specific terrorism-related criminal acts); *see also* Part I.A (scienter), I.C. (causation) above.

Plaintiffs' only witness on the PA's or PLO's liability for the Gould-Waldman, Bauer, or Goldberg attacks was former Israeli Security Agency employee Israel Shrenzel.  He did not provide any testimony that any material support or resources supposedly provided by the PA or PLO to the AAMB was causally related to the attacks.  Nor did Plaintiffs offer any documents into evidence of any material support or resources provided in connection with the attacks. Shrenzel instead repeatedly testified to post-attack payments made to prisoners and families of perpetrators who died in the attacks.  Logically, these post-attack support payments did not cause the attack.  In addition to not meeting the causation requirement, they also do not satisfy the scienter requirement because they were made pursuant to a policy of supporting families who lost a wage earner as a result of the Palestinians' longstanding struggle against the Israeli Occupation, not with the knowledge or intent that the payments would be sued in carrying out terrorist attacks.  Plaintiffs offered no evidence that would allow a reasonable jury to conclude that the prisoner and martyr payments satisfy § 2339A's scienter requirement.

With respect to § 2339B, only the July 29, 2004 Goldberg bombing post-dates the designation of AAMB as a foreign terrorist organization.  As to that attack, Plaintiffs failed to provide any evidence of material support provided to AAMB as an organization.  Isolated evidence of small payments in 2001 to individuals alleged to be associated with AAMB or Fatah is insufficient to create § 2339B liability.  *See Paracha*, 2006 U.S. Dist. LEXIS 1, at *91-92; Part IV.B above (discussion of supposed AAMB payment evidence).

Plaintiffs also lack a legally sufficient evidentiary basis as to any § 2339 claim for the Gould-Waldman, Bauer and Goldberg attacks.  Plaintiffs provided no evidence during trial that

any of the perpetrators of the attack were harbored or concealed by the PA with the requisite

scienter.   Alon Eviatar testified regarding the so-called Zinni list (referred to in PTE 354) and

about the PA's failure to arrest two individuals who were allegedly on the list on the list, Nasser

Aweis and Abdel Karim Aweis.  *See* Tr. 765.  There are no cases interpreting 18 U.S.C. § 2339,

but it is self-evident that failing to arrest suspects does not amount to harboring and concealing

them.

## VI.     DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THEIR PERSONAL JURISDICTION DEFENSE

Defendants have consistently maintained that the Court lacks personal jurisdiction over

them.  *See* DE 45 (Rule 12(b)(2) motion); DE 82 (renewed Rule 12(b)(2) motion); DE 421

(motion for reconsideration in light of *Daimler*); DE 472 (motion to certify *Daimler* issue for

interlocutory appeal); DE 497 (motion for summary judgment); No. 14-4449, Dkt. 1 (Mandamus

Petition) (2d Cir.).  It is the Plaintiffs' burden of proof to establish personal jurisdiction over the

PA and PLO.  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999); *Metropolitan*

*Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 566 (2d Cir. 1996). "The burden of proof

plaintiffs must meet varies with the procedural posture of the case. Prior to discovery, plaintiffs

need only make a prima facie showing through the pleadings and affidavits that jurisdiction

exists. . . .Ultimately, however, the plaintiffs must establish personal jurisdiction by a

preponderance of the evidence, either at an evidentiary hearing or at trial."  *Louros v. Cyr*, 175 F.

Supp. 2d 497, 518 (S.D.N.Y. 2001); *see also A. I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79

(2d Cir. 1993) ("Eventually personal jurisdiction must be established by a preponderance of the

evidence, either at an evidentiary hearing or at trial."); *Travelers Indem. Co. v. Calvert Fire Ins.*

*Co.*, 798 F.2d 826, 831 (5th Cir. 1986) ("at any time when the plaintiff avoids a preliminary

motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the

jurisdictional facts at trial by a preponderance of the evidence") (internal citation and quotation omitted).

Plaintiffs have not introduced any evidence at trial of <u>any</u> PA or PLO jurisdictional presence in the United States, and certainly have not met the due process standard for the exercise of general personal jurisdiction, *see Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 760 (2014), or for the exercise of specific personal jurisdiction, *see Walden v. Fiore*, 134 S. Ct. 1115 (2014).  Accordingly, Defendants are entitled to judgment as a matter of law on their personal jurisdiction defense.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants are entitled to judgment as a matter of law on their personal jurisdiction defense, on all of Plaintiffs' direct liability claims, and on the vicarious liability claims of the Hebrew University (the Blutstein, Carter, Coulter, and Gritz) plaintiffs, the Sokolow plaintiffs, and the Mandelkorn plaintiffs.

February 9, 2015                                    Respectfully Submitted,

                                                   /s/ Laura G. Ferguson
                                                   Laura G. Ferguson
                                                   Mark J. Rochon
                                                   Brian A. Hill
                                                   Dawn E. Murphy-Johnson
                                                   Michael J. Satin
                                                   MILLER & CHEVALIER CHARTERED
                                                   655 15th Street, NW, Suite 900
                                                   Washington D.C. 20005-6701
                                                   (202) 626-5800 [tel]
                                                   (202) 626-5801 [fax]
                                                   mrochon@milchev.com [email]

                                                   *Counsel for Defendants the Palestinian Authority and the Palestine Liberation Organization*