# ARNOLD & PORTER LLP

**Kent A. Yalowitz**

Kent.Yalowitz@aporter.com
+1 212.715.1113
+1 212.715.1399 Fax
399 Park Avenue
New York, NY 10022-4690

February 12, 2015

**VIA ECF & HAND DELIVERY**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

> Re:  *Sokolow, et al. v. Palestinian Liberation Organization, et al.*
>       Docket No. 04-CV-397 (GBD)(RLE)

Dear Judge Daniels:

I enclose plaintiffs' proposed changes to the Court's draft jury instructions (Ex. A) and verdict form (Ex. B). If it is more convenient for the Court, plaintiffs can e-mail a word version of these edits, with track changes, to Ms. Quirk. Many of plaintiffs' edits are self-explanatory. Those that are not self-explanatory are discussed in further detail below. Following that discussion are plaintiffs' objections and responses to defendants' proposed changes of February 11, 2015 (DE 800).

**Plaintiffs' Proposed Changes—Verdict Form**

We have enclosed a mark-up of the Court's February 6 draft of the Verdict Form, which we prefer. Ex. B. However, because of the aiding and abetting issue raised by the defendants, we think that tracking the definition of international terrorism in the question may be a safer course. Therefore, we suggest replacing the phrase "was committed" with "involved activities."

With respect to liability, plaintiffs suggest breaking out the *respondeat superior* and other theories of liability, as the Court originally drafted. We think this will give the jury more clarity and will more closely track the theories of liability plaintiffs intend to present to the jury. We have omitted certain questions to simplify the form.

We have also suggested a word change on page 15, so that the instruction now reads:

> If you checked "yes" in response to at least one question
> above, please proceed to answer the related questions

ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 2

regarding damages beginning on page 16.  If you checked
"no" in response to every question above, you should
proceed no further.

**Plaintiffs' Proposed Changes—Jury Instructions**

1.    **Page 31 (Each Terrorist Attack to be Considered Separately).**

We ask that the Court omit the word "alleged" to describe the terrorist attacks in this case, as there is no dispute that the six terrorist attacks took place.

2.    **Pages 33-35 (Employees (*Respondeat Superior*))**

We suggest several refinements to this charge.  *First*, the pattern instructions' reference to "business" and to "commercial and non-commercial" activities may be confusing in light of the facts of this case, which do not involve commercial businesses. We have suggested some edits to alleviate this potential for confusion.

*Second*, we have suggested for the Court's further consideration a rider that addresses ratification in the closely confined context of scope of employment.  While Plaintiffs stand on our original request, we recognize that the Court may wish to consider narrower alternatives.  As set forth in our Memorandum of February 5 (DE 792 at 2-7), extensive evidence supports a ratification charge confined to the context of scope of employment.  As to the "knowledge" portion of the rider, defendants cannot credibly argue that they are unaware of the circumstances of the crimes, as their own intelligence files and "Ministry of Prisoners" files contain explicit descriptions of them.  With regard to words or conduct evidencing approval, a jury could reasonably infer approval from the evidence of continued employment, promotions, glorification, the wide-spread nature of such crimes among employees, and a cover-up (in the case of at least one terror attack).

3.    **Pages 35-38 (Agents)**

The standard agency instruction from Judge Sand is somewhat involved, and we suggest that the Court may wish to consider making it easier to understand with an illustration, such as one that has come up time and again in this case:  "You may consider these instructions in light of your common sense.  If I give my law-clerk a bomb and tell her to go across the street and set it off, she is my agent for that purpose."

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 3

**4.    Page 39 (ATA Elements Overview)**

We suggest that the Court revise elements one and two to read as follows:

> *First*, that the defendant, through its employees or agents, committed an act of "<u>international terrorism</u>" within the meaning of the statute;

> *Second*, that such employees or agents acted "<u>knowingly</u>";

This edit would also require moving the "knowingly" element to page 54 from its present position.

**5.    Page 44 (Act of International Terrorism)**

We suggest a small word change to clarify that the criminal acts may be of the United States or a State.

**6.    Page 46 (Underlying Crimes)**

We ask that the Court give further consideration to the question of including a charge of Reckless Endangerment, particularly now that the jury has evidence of the release of Abdullah Barghouti.  The evidence before this jury is that Abdullah Barghouti was a known Hamas bomb-maker, that the PA was asked by the United States and/or Israel to arrest him, that the PA did arrest him on the day of the Sbarro Pizzeria bombing, that the PA released him in compliance with an agreement with Hamas, that Ahmed Barghouti took him to a safe house, and that Abdullah Barghouti then continued to make bombs and supply them to Hamas at the request of senior Hamas operatives.  We suggest that the act of releasing Barghouti in those circumstances meets the standard for reckless conduct.

**7.    Page 47 (Underlying Crimes)**

We suggest that the Court include the phrase "any property or service, including…" in order to more closely track the statute.

**8.    Page 50 (Underlying Crimes)**

We ask that the Court give further consideration to including a particular charge relating to the provision of "personnel" under § 2339B:

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 4

> For example, plaintiffs claim that the PA provided material
> support to Hamas in the form of personnel, by releasing
> Abdullah Barghouti with knowledge that he was a Hamas
> bomb-maker.  A person provides 'personnel' if he
> knowingly provides or conspires to provide a foreign
> terrorist organization with an individual to work under that
> terrorist organization's direction or control.  Individuals
> who work entirely independently of the foreign terrorist
> organization to advance its goals or objectives are not
> considered to be working under the foreign terrorist
> organization's direction or control.

This personnel charge meets the evidence of Abdullah Barghouti's release, in that Abdullah Barghouti admitted that he was operating under the direction or control of Hamas before and after his arrest, and Jibril Rajoub, the head of the PA's Preventative Security Service, agreed to release him in a meeting with a Hamas leader, according to the testimony of Mosab Yousef.

9. **Pages 50-52 (Underlying Crimes)**

We suggest a few edits to more closely track the statute.

10. **Pages 55 (Damages)**

In light of the evidence, we ask that the Court include disability and disfigurement in its damages charge.

11. **Page 57 (Damages)**

As set forth in our Memorandum of February 5 (DE 792) and in the our letter of February 10 opposing defendants' request to preclude counsel from arguing a specific dollar amount to the jury during closing (DE 798), plaintiffs request that the Court include the New York Pattern Jury Instruction on this issue, which is in accordance with CPLR 4016(b).

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 5

### 12.    Page 58 (Injury)

As set forth in our Memorandum of February 5 (DE 792), plaintiffs request that the Court include the New York Pattern Jury Instruction on "Increased Susceptibility to Injury"—often referred to as the "thin skull."

### 13.    Page 61 (Multiple Claims, Multiple Defendants)

In light of the evidence concerning the way the PA and the PLO conducted their affairs, we ask that the Court include a modified version of the supplemental charge in Judge Sand's Instruction 72-1:

> Separate ~~corporations~~ <u>entities</u> are to be treated as separate ~~entities~~ unless there are justifiable reasons in light of all the circumstances not to treat them separately.  However, the notion of separate ~~corporate~~ <u>entity</u> existence will not be recognized where a<u>n entity</u> ~~corporation~~ is organized or controlled, and its <u>activities are</u> ~~business is~~ conducted, in such a manner as to make it merely an agent or instrumentality of another <u>entity</u> ~~corporation~~. If you find (by a preponderance of the evidence) that <u>the PA</u> (*e.g., A*) ~~corporation~~ was acting as agent for <u>the PLO</u> (*e.g., B*) ~~corporation~~, then you must find that <u>the PLO</u> ~~B corporation~~ is liable for the acts of <u>the PA</u> ~~a corporation~~.

This instruction could also be given in the Agency section of the instructions, discussed above.

### Defendants' Proposed Changes

### 1.    Preparation of Witnesses

Plaintiffs object to the removal of an instruction on preparation of witnesses. During opening statements, defendants told the jury that plaintiffs' experts were mere talking-heads whose opinions were "fed to them."  Tr. (1/13/2015) at 90.  Defendants cross examined plaintiffs' experts on these grounds.  For example, Mr. Rochon asked plaintiffs' expert Alon Eviatar: "You were actually handed a report that someone else had written named Roni Shaked?"  Tr. (1/21/2015) at 939-41.  Similarly, Mr. Hill asked plaintiffs' expert Israel Shrenzel: "When you were hired by the lawyers, regardless of

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 6

who they were, you were given a draft report, right?"  Tr. (1/26/2015) at 1478-79.  It is clear that defendants will argue the same in closing, and the jury is entitled to know that there is nothing wrong with a witness consulting with his or her lawyers prior to testifying.

### 2.    Burden of Proof—Preponderance of the Evidence

Plaintiffs do not object to the Court's proposed edits based on defendants' "Burden of Proof" request, as discussed yesterday (Tr. (2/11/2015) at 3316), except to the extent that defendants intend to rely on affirmative defenses, for which defendants would bear the burden of proof.  For example, as noted below, defendants would have to bear the burden on any defense that a plaintiff failed to mitigate damages.  Defendants also asserted several affirmative defenses in their Answer.[1]  Plaintiffs suggest that, as a condition of amending its instruction to refer solely to the burden of proof borne by plaintiffs, the Court determine that defendants have waived any and all affirmative defenses in this case that might otherwise be appropriate to argue to the jury.

### 3.    Proximate and Intervening Cause

Plaintiffs do not object to the Court's edits based on defendants' Proximate Cause request, as discussed yesterday.  Tr. (2/11/2015) at 3317-18.

Plaintiffs object to an instruction on "intervening or superseding cause."  *See* DE 591 at 50-52.  The evidence in the record does not support an instruction on "intervening or superseding" cause, even as to one plaintiff discussed in court.  There is no doubt that she suffered significant damage as a result of the murder of her father.  *See* Tr. (2/4/2015) at 2454 ("[T]hat's when [she] broke down and fell into a depression at that point for a period of time."); *id.* at 2458-59.  If defendants want to argue that the injuries she suffered as a result of the murder of her father were exacerbated by later events, they can do so; but the record does not support an instruction that her injuries are solely attributable to an intervening cause.

---

[1] It is unclear whether defendants intend to rely on any of these affirmative defenses; and, in any event, it does not appear that defendants have established a factual basis for any such defense.  In addition, defendants' proposed instructions on their "act of war" and "foreign governmental organization" defenses are improper as a matter of law.  DE 591 at 61-62.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 7

Moreover, defendants' proposed instruction, as written, would create a serious danger of misleading the jury. One issue in this case is plaintiffs' claim that the PA is vicariously liable for the actions of its employees who perpetrated the terror attacks. In addition, plaintiffs argue that both defendants are liable because the attacks were carried out by defendants' agents.

Defendants' proposed "intervening cause" instruction asks the Court to charge the jury broadly that it may not award any damages "that you find were the result of an intervening cause—in other words, the result of a third person." DE 800 at 3-6. Moreover, defendants' proposed instruction not to award any damages caused by "a third person" will confuse the jury and undermine the Court's instructions on *respondeat superior* and agency because the jury might well conclude that the phrase "a third person" excludes acts by the PA's agents and employees—even if those agents and employees were acting within the scope of their employment. Given the importance of this issue, defendants should not be permitted to inject possible jury confusion into the instructions.

If the Court does conclude that an "intervening cause" instruction is appropriate in the case of Ms. Goldberg, the instruction must state explicitly that the acts of any "third person" that may be considered an intervening cause of damage do not include the acts of any of the PA's employees or of any agent of either defendant.[2] In addition, as explained in Plaintiffs' Objections to Defendants' Proposed Jury Instructions (DE 591 at 50-52), any intervening cause charge must be modeled on the one approved by the Second Circuit in *Vasina v. Grumman Corp.*, 644 F.2d 112, 115-16 (2d Cir. 1981), and confined to the sole case in which it would apply.

### 4.    Mitigation of Damages

Defendants seek an instruction on mitigation of damages, saying that such an instruction is appropriate "[i]n light of the testimony at trial." DE 800 at 4. Defendants do not, however, cite any specific testimony that would support a claim that any plaintiffs failed to mitigate. Since there is no evidence in the record to support a claim that any of the plaintiffs failed to mitigate damages, this instruction is inappropriate.

---

[2] Defendants also argue that the second and third paragraphs of the Court's instruction on damages conflict with each other. DE 800 at 3. There is no such conflict, and the Court should use those paragraphs as currently written.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 8

This is particularly important because it is well established that defendants bear the burden of proof with respect to any claim that a plaintiff failed to mitigate damages. *See Broadnax v. City of New Haven*, 415 F.3d 265, 269 (2d Cir. 2005) ("Where a claimant has a duty to mitigate damages, the opposing party generally bears the burden of showing that the claimant did not take reasonable measures to do so."); 3 *Litigating Tort Cases* § 30:34 ("The defendant always has the burden to plead and prove failure to mitigate damages."). Having failed to offer (or even refer in their letter to) any evidence of failure to mitigate by any plaintiff, defendants have no basis to ask the Court to give a mitigation instruction.

**5.    Treble Damages**

The Court correctly determined that it should not instruct the jury on treble damages. Tr. (2/11/2015) at 3322-3324. Defendants suggest that, under the Second Circuit's decision in *HBE Leasing Corp. v. Frank,* 22 F.3d 41 (2d Cir. 1994), it is "not reversible error to preclude defense counsel" from referring to a statutory provision for multiple damages. DE 800 at 5. That is not what *HBE Leasing* held. To the contrary, in view of a 1953 decision that the Second Circuit conceded was "less than crystal clear" on this issue, the Circuit created clarity by stating in no uncertain terms that juries <u>may not</u> be told about treble damages.

> [V]irtually every other jurisdiction views such mentioning of treble damage provisions, in both the RICO as well as the antitrust contexts, as improper. We agree with plaintiffs and now remove any doubts within our own circuit that district courts should not as a general matter permit reference before the jury to the fact that any eventual award will be trebled under that statute or that attorneys fees will be awarded to a prevailing party.

> *            *            *

> Reference to treble damages and attorneys fees is irrelevant to the jury questions of liability and damages and may tend to confuse or prejudice a jury into reducing its eventual award, thus frustrating Congress's goal of deterring improper conduct by assessing treble damages and attorneys fees.

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 9

*HBE Leasing,* 22 F.3d at 45.  The court went on to state that "time has passed by" the 1953 case on which defendants relied and that "the dominant and more-reasoned view is that juries should not be made aware of trebling provisions."  *Id.* at 46; *See also* 3A K. O'Malley, *et al.*, *Fed. Jury Prac. & Instrs.* § 150:93 (6th ed. 2011) ( "[T]he weight of authority is to the effect that the jury should not be told of the trebling requirement but should simply be told to determine the actual damages to be awarded.").

Defendants' letter makes no mention of this language, arguing instead that *HBE Leasing* "explicitly held" that there could be "certain circumstances" under which a district court might have discretion to tell the jury that any damages award would be trebled.  DE 800 at 5.  Again, this is false.  *HBE Leasing* "explicitly held" no such thing—indeed, this is the exact opposite of what the court said.  Rather, the Second Circuit expressly said that "[w]e explicitly *refrain from deciding*" whether a district court could ever tell the jury about treble damages.  *HBE Leasing,* 22 F.3d at 47 (emphasis added).  The instruction that defendants seek is prohibited by *HBE Leasing*, and defendants should be warned not to discuss treble damages in closing.

## 6.    Nominal Damages

Defendants seek an instruction that the jury may award only nominal damages, based on testimony that plaintiff Larry Carter had not spoken to his daughter, Diane Carter, for several years before she was killed in the Hebrew University bombing.  This request is baseless.  Nominal damages are appropriate only where the plaintiff's rights have been violated but there is no evidence of actual damages.  *See Powell v. Ward,* 643 F.2d 924, 934 (2d Cir. 1981) (awarding nominal damages where "plaintiffs have not adequately proven any actual injury"); 22 Am. Jur. 2d Damages §8 (nominal damages appropriate where plaintiff "has produced no actual, present loss of any kind"); Restatement (Second) of Torts § 907 (1979) (nominal damages appropriate where "no harm has been caused by the tort or the amount of harm is not significant").  Indeed, the Restatement states that nominal damages are not appropriate in cases involving "injuries to the person" because "the trier of fact is permitted to award substantial damages although there is no specific evidence of the extent of the harm."  *Id.*

Where there is evidence of actual damages, an instruction on nominal damages is not appropriate.  As Judge Sand cautions, "when it is clear that the plaintiff has suffered actual damage, a nominal damage charge should not be given."  *Sand Instr.—Civ.*,¶ 77.01, cmt to Instr. 77-6; *see Wheatley v. Beetar,* 637 F.2d 863, 865 (2d Cir. 1980) (in light of evidence of beating of plaintiff, "[i]t was error to charge the jury that an award of

# ARNOLD & PORTER LLP

Hon. George B. Daniels
February 12, 2015
Page 10

nominal damages was permissible"); *Atkins v. City of New York*, 143 F.3d 100, 103 (2d Cir. 1998) ("If it is clear from the undisputed evidence, however, that the plaintiff's injuries were caused by the use of excessive force, then the jury's failure to award some compensatory damages should be set aside and a new trial ordered."); *Lexington Prods. Ltd. v. B.D. Commc'ns, Inc.*, 677 F.2d 251, 254 (2d Cir. 1982) ("Where the evidence shows such a clear and definite measure of damages, an award of nominal damages cannot stand.").

Here, the evidence that Mr. Carter has suffered actual and serious damages is both overwhelming and unrefuted. He testified not only of the severe emotional distress that he suffered—and continues to suffer to this very day—as a result of his daughter's murder, but he also testified that his daughter's murder deprived him of the hope, which he had never relinquished, that someday she would return and reconcile with him. Tr. (2/5/2015) at 2630-64. Plaintiffs' expert psychiatrist, Dr. Rael Strous, gave unchallenged testimony that Mr. Carter suffers from both Pathological Bereavement and Chronic Dysthymia (depression) as a result of his daughter's murder. Tr. (1/30/2015) at 1787-91. Given this evidence, there is no basis whatsoever for suggesting to the jury that an award of only nominal damages might be appropriate.

Respectfully,

Kent A. Yalowitz

cc:    All ECF Counsel