

**MILLER CHEVALIER**

Mark J. Rochon
Member
(202) 626-5819
mrochon@milchev.com

February 16, 2015

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   *Sokolow v. Palestine Liberation Organization et al.*, 04-cv-397 (GBD) (RLE)

Dear Judge Daniels:

Defendants the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") hereby move (1) to exclude certain evidence Plaintiffs seek to introduce in their rebuttal case, and (2) to preclude Plaintiffs' counsel from making certain arguments in closing.

**Plaintiffs' Rebuttal**

**1.     1987 Congressional Finding on PLO.**  On February 13, 2015, Plaintiffs provided Defendants with PTE 1281, stating they may offer it in their rebuttal case.  PTE 1281, attached as Exhibit 1, is 22 U.S.C. § 5201.  It is a Congressional finding that dates back to 1987 — 15-17 years before the attacks at issue in this case.  Among other things, it states that Congress found the PLO "directly responsible for the murder of an American citizen on the Achille Lauro cruise liner in 1985" and that the "head of the PLO has been implicated in the murder of a United States Ambassador overseas."  Exh. 1 at 1.  The Congressional finding then states: "Congress determines that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States."  *Id.*

This 1987 Congressional finding should be excluded because it is not proper rebuttal evidence, it is not relevant, and its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury.  Throughout this trial, this Court has tried to control the amount and form of evidence about the history of the PLO, the PA, and the Israeli-Palestinian conflict.  Congress's findings in 1987 about the PLO have no bearing on whether the PLO or the PA is liable for attacks that took place between 2002 and 2004.  Even if such evidence were marginally relevant, its potential for prejudice is significant because the 1987 Congressional finding predates the PLO's decision in 1988 to accept the State of Israel and commit itself to a negotiated

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com

1549340.1



MILLER
CHEVALIER

February 16, 2015
Page 2

political settlement of the Israeli-Palestinian conflict, which led to the Oslo Accords. *See* Tr. 2/10/15 at 3102:1-24 (Ashrawi). Its potential for misleading the jury is also significant because even after the 1987 Congressional finding, the U.S. Executive Branch allowed the PLO to operate in the United States. *See, e.g.*, PTE 496 (PLOCCA Report) at 9; PTE 635 (same) at 7; PTE 1142 (same) at 7. Indeed, it is the U.S. Executive Branch, not Congress, that determines whether certain organizations are foreign terrorist organizations, and the Executive Branch has not made that determination regarding the PLO. *See* http://www.state.gov/j/ct/rls/other/des/123085.htm (FTO list). In sum, the admission of this 1987 Congressional finding would prejudice Defendants and distract the jury from the fundamental issue in this trial: whether the Defendants are liable for attacks that occurred between 2002 and 2004.

    **2.**    **Rebuttal Testimony from Arieh Spitzen.** Plaintiffs have indicated they may call Arieh Spitzen as a rebuttal witness. DE 806. Mr. Spitzen worked for the Israel Defense Forces ("IDF") from 1976-2009, and was Alon Eviatar's predecessor as Head of Palestinian Affairs in the West Bank for the COGAT division of IDF. He has been admitted as an expert witness in three civil terrorism cases in the Eastern District of New York: *Linde v. Arab Bank, PLC*, 1:04-cv-02799, *Strauss v. Credit Lyonnais, S.A.*, 1:06-cv-00702 and *Gill v. Arab Bank, PLC*, 1:11-cv-03706.

    Plaintiffs may not call Spitzen as a rebuttal expert. They did not disclose him as a rebuttal expert within 30 days after Defendants' disclosure of their experts' opinions. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). They also did not disclose him pursuant to the schedule set by the Court for rebuttal experts. *See* DE 322 at 1 (setting September 16, 2013 the deadline for Plaintiffs' rebuttal experts).

    To the extent Plaintiffs are attempting to re-tool Spitzen as a fact witness, they did not timely disclose him. *See* Fed. R. 26(a)(1)(A)(i) (requiring disclosure of names of individuals "likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses"); Adv. Comm. Notes on 2000 Amendment ("The disclosure obligation applies to 'claims and defenses,' and therefore requires a party to disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party.") (emphasis added). To date, Plaintiffs have not disclosed to Defendants the subject matter of Spitzen's testimony. Plaintiffs' February 13 letter to the Court states only that Spitzen may testify regarding "items raised in defendants' case." DE 806 at 1. Plaintiffs were given ample notice of the topics on which Defense witnesses would (and will) testify. Plaintiffs should not be allowed to surprise Defendants with respect to Spitzen's testimony.



MILLER
CHEVALIER

February 16, 2015
Page 3

Finally, Spitzen's role in this trial as a consultant to Plaintiffs' counsel, a role which has included sitting at counsel table, is inconsistent with that of a fact witness.

## Plaintiffs' Closing

**1.      Arguments re PA Employee Involvement in Sokolow Bombing.**  The Court ordered Plaintiffs to redact the blame-shifting portion of Noor's custodial statement implicating a PA employee, inadmissible evidence which had been the centerpiece of the Sokolows' vicarious liability claim.  In Plaintiffs' February 13 letter to the Court, Plaintiffs nonetheless announced their intent to argue that there is "strong circumstantial evidence of PA employee involvement in the January 27 bombing from the confession of Noor (who admitted that he got the bomb in the Muqata'a)."  DE 805 at 1.

But the Court has repeatedly instructed Plaintiffs that they may not use Noor's custodial statement to implicate PA employees or the PA.  Tr. 1/23/15 at 1342:2-4.  The Court explained:

> You can't argue that because it is hearsay.  That is the whole purpose of the redaction; that this person is accusing another person, but more importantly, he is accusing the PA and the PLO.  The whole purpose of the redaction was that if you want to prove that, then you have admissible non-hearsay evidence or witnesses to come into this court and prove it.

*Id.* at 1342:4-10.  The Court concluded, "I don't expect you to reference this out-of-court hearsay statement by this individual as substantive evidence that he must have been dealing with a PA person in the course of his employment or as an agent of the PA." *Id.* at 1342:20-24; *see also id.* at 1342:2-4 ("I am not going to let you argue from either of these documents that this is evidence that the PA was involved.").

Thus, Defendants request an order precluding Plaintiffs' counsel from arguing in closing that there is any evidence — circumstantial or otherwise — that a PA officer, agent, or employee provided the bomb to Noor or Idris.

**2.      Arguments Re Alleged Release as a Provision of "Personnel."**  On February 5, Plaintiffs requested that, as part of the § 2339B instruction, the Court instruct the jury: "[P]laintiffs claim that the PA provided material support to Hamas in the form of personnel, by harboring Abdullah Barghouti, and by giving him freedom to operate as a Hamas bomb-maker. . . . If you find that the PA provided or conspired to provide



MILLER
CHEVALIER

February 16, 2015
Page 4

Abdullah Barghouti to Hamas so that he could work under Hamas' direction or control, plaintiffs' burden with respect to this element has been met." DE 792 at 14. The Court has not adopted that instruction. Plaintiffs' counsel nonetheless continues to muse about whether the supposed release of Abdullah Barghouti constitutes providing material support to Hamas in the form of "personnel."

Defendants request that the Court preclude Plaintiffs' counsel from arguing that the PA, or any of its employees or agents, violated § 2339B (or § 2339A) by providing "personnel" in the form of Abdullah Barghouti. Abdullah Barghouti already was a member of Hamas before he was detained by the PA in August 2001. *See* PTE 452 (Amended Indictment, Second Count) at P7:30 (Barghouti recruited into military wing of Hamas by another Hamas operative in May 2001). There is no evidence Abdullah Barghouti ever worked under the direction or control of the PA, so the PA could not provide him as personnel to Hamas, because he was not the PA's to provide. The unrestraint of a person who is not otherwise within one's control does not constitute provision of personnel. In addition to defying common sense, Plaintiffs interpretation of § 2339B and "personnel" finds no support in the case law. If Plaintiffs' counsel is allowed to make such an argument in closing, the Court should instruct the jury as follows: "The mere failure to arrest an individual or failure to detain an individual is not a type of material support."

3.     **Arguments Re Increasing Damages to Reflect a Terrorism "Premium" or to "Send a Message to Defendants."** The Anti-Terrorism Act provides for an automatic trebling of compensatory damages. *See* 18 U.S.C. § 2333(a)("shall recover threefold the damages"). The Court has declined to instruct the jury that the damages will be automatically trebled. Because the statute provides for automatic treble damages, which are punitive in nature, no additional punitive damages may be awarded. Accordingly, it would be improper for Plaintiffs' counsel in closing to argue for damages that do anything other than compensate Plaintiffs for their injuries. Arguments suggesting that the jury should "send a message to," punish, or make an example of Defendants should be prohibited. Similarly, arguments suggesting that a death from terrorism should result in more damages than any other intentional murder should also be precluded. Such arguments, and other arguments that focus on the conduct of the Defendants as relevant to the measure of the damages, rather than the cause of the damages, improperly seeks to inflate the compensatory damages to punish the Defendants' alleged conduct.

1549340.1



February 16, 2015
Page 5

Sincerely,

*Mark J. Rochon/egb*

Mark J. Rochon

Miller & Chevalier Chartered

1549340.1