# EXHIBIT 2



PLAINTIFF'S EXHIBIT 889

Date: July 29, 2009                                                                                             File No.: 3052/06

## Military Court of Judea

**Before the Honorable President of the Court: Lieutenant Colonel Zvi Lekach**
   **Judge: Lieutenant Colonel Ronen Atzmon**
   **Judge: Lieutenant Colonel Tal Band**

**The Military Prosecution**
(represented by First Lieutenant Andrei Varshchegin)

– v. –

**The Defendant: Fuad Hejazi Shubaki, Identity No. 410026173 / Prison Service**
(represented by Counsel, Adv. Avigdor Feldman)

---

### Verdict

**The Honorable President of the Court: Lieutenant Colonel Zvi Lekach:**

The Defendant before us is charged with four [indictment] counts which concern the transfer of monies for the purpose of the purchase of materiel, in accordance with that which shall be set forth below.

**First count – Trading in war materiel:** The Defendant is accused of having traded in war materiel, starting in the year 2000 and up to the end of January 2002. It is argued that the Defendant took part in a meeting, at which [redacted] instructed him and the heads of the security organizations to purchase any amount of weapons from any possible place. The Defendant, starting on the date of that meeting, acted together with others toward the purchase of large quantities of materiel. The Defendant, who headed the Palestinian Finance Office, coordinated the requisitions of members of the various organizations, which were transferred to him in the form of paperwork. In order to ascertain that the materiel for which he was paying actually existed, the Defendant required the people who applied to him to bring the weapons to his office, and for that purpose, he maintained a storeroom of materiel in Ramallah and an additional storeroom in the Gaza Strip. After the materiel was transferred to his possession, the Defendant would submit the paperwork to [redacted] for approval, and after he approved it, the Defendant would also sign the requisition and would instruct his staff to transfer the money to the applicant by means of a bank transfer. During the period in question, approximately 1,000 tons of materiel were purchased for $7-10 million. The Defendant arranged for

1

Date: July 29, 2009                                                          File No.: 3052/06

The Defendant added that he had met with ▮▮▮▮ in Jordan, and that ▮▮▮▮ had told him that he had met with Hezbollah operatives and with an Iranian, and had agreed with them that they would transfer three containers of weapons, loaded on a ship. He asked the Defendant to speak with ▮▮▮▮ about it, so that ▮▮▮▮ would give money. The Defendant spoke with ▮▮▮▮ about it, and ▮▮▮▮ instructed Harbi Sarsur to give money for that purpose. The Defendant also stated that he had gone to Yemen and met ▮▮▮▮ who had told him that ▮▮▮▮ wanted passports to be prepared for him and for ▮▮▮▮ and that he ▮▮▮▮ had come to see the ship *Karine A*, which had arrived in Yemen with the arms.

Prosecution Exhibit No. 1 – statement by the Defendant dated March 20, 2006: In this statement, the Defendant stated that he had met with ▮▮▮▮ in Jordan in 2001, and that ▮▮▮▮ had told him about the contacts with the Iranians, according to which the latter were willing to pay for an arms ship. ▮▮▮▮ told the Defendant that he (the Defendant) would be meeting the Iranian representative in Dubai. The Defendant stated that he came to Dubai and there, together with ▮▮▮▮, he met two Iranian representatives – ▮▮▮▮. The Iranians told the Defendant and ▮▮▮▮ that they were willing to finance the training of Palestinians in Lebanon and Iran, and that they were willing to help with money and armaments. The Defendant added that ▮▮▮▮ wrote up a report for ▮▮▮▮ and that they told the Iranians that, once they had a reply from ▮▮▮▮ they would let the Iranians know. According to his argument, when ▮▮▮▮ saw the report, he responded angrily and said that the Iranians were liars. The Defendant, in that statement, provided further details of his contacts with the Iraqis and their consent to donate two million barrels of oil to the Palestinians as a gift.

Prosecution Exhibit No. 6 – statement by the Defendant dated March 22, 2006: In the statement in question, the Defendant provided additional details about the meeting with the Iranians. He stated that the one who made the initial contact with them was ▮▮▮▮. The Defendant set up a meeting between him and ▮▮▮▮, and the two of them went to meet the Iranians in Dubai. Following that meeting, ▮▮▮▮ told the Defendant that the Iranians wanted to meet him. The Defendant went to Dubai to buy cars and told ▮▮▮▮ that he would meet the Iranians afterward. The Defendant was asked why he had not told ▮▮▮▮ that he went to meet the Iranians, and answered: "Because ▮▮▮▮ liked me to bring him results, and not just chatter." The Defendant went to Dubai, and after his meeting about the cars, he went to meet the Iranians with ▮▮▮▮. Because he was tired, it was agreed that they would meet again that evening. The Defendant did meet the Iranians again that evening and asked them if they wanted to work with him and cooperate with him, and the Iranians said that they did. ▮▮▮▮ spoke with them about military subjects, such as the need for advanced training in the manufacture of hand grenades and grenade launchers, and that they also wanted ammunition and weapons. After that, they (including the Defendant) talked about how to set up an ammunition factory within the Palestinian Authority, and the Defendant even told them that they would need money, and they

29

Date: July 29, 2009                                                                                       File No.: 3052/06

The Defendant stated that ███████ met in Lebanon with ████████████ and the Revolutionary Guards of the Iranians. The Defendant asked him if he had told ███ about it, and ███ said that he had told him about the plan to smuggle the ship and about his meetings in that context. ███ told the Defendant that he wanted him to talk to ███ because ███ needed $125,000 for the expenses of the ship. The Defendant talked about it with ████████ at the airport in Jordan. ████████ told the Defendant that ███ should prepare a requisition to receive the funds. ███ did so and, three days later, the Defendant gave ███ the document. ███ gave the Defendant written instructions to transfer the money to ███ via ████████, and the Defendant forwarded the requisition to ████████ by messenger and told ███ about it.

The Defendant stated that he had transferred money to ████████ for him to buy arms "from outside" (that is, from outside the Palestinian Authority). The Defendant stated that he had a storeroom in Ramallah, in which they put all of the arms which they purchased from ████████ and they would distribute the arms on the instructions of ████████.

The Defendant stated that in August 2001, he purchased seven missiles from ████████ for which he paid $75,000, and which he transferred to ████████.

The Defendant stated that, in 2001, he was approached by an emissary from ████████ with two papers. One of them was a requisition for the purchase of ammunition for the al-Aqsa Martyrs Brigades, in the amount of 25,000 dinars, and the second set forth the names of the fighters in each area, in order for them to be paid their monthly salary. The Defendant forwarded the papers to ████████ for him to decide in the matter, and ████████ gave him an instruction to give ████████ the money which he asked for. The Defendant said that he had no money, and then ███ instructed the Ministry of Finance to transfer the money.

The Defendant stated that, when he came to Yemen, he was greeted by ████████ who told him that ███ and ███ ship had arrived. ███ told the Defendant that they had prepared a passport for ████████ and they also wanted to prepare a passport for ████████, the captain of the ship.

The Defendant went on to state that he transferred money to ████████, ==a senior official in the Yemenite Army,== as part of a partnership which was intended for the sale of tracer bullets for a profit. In the end, however, the transaction was not carried out and he got the money back.

<u>Prosecution Exhibit No. 12</u> – statement by the Defendant dated May 14, 2006: At the outset of the interrogation, the Defendant was shown a document, and the Defendant stated that the document had to do with a requisition which he had received for the purchase of a lathe and cutting blades. The document had been transferred to him by ████████ and the

Date: July 29, 2009                                      File No.: 3052/06

seconded to his office from ▮▮▮▮ and his job was to bring the signed documents from ▮▮▮▮ The Defendant claimed that he did not know whether ▮▮▮▮ position included the purchase of the arms, and, in any event, the Defendant did not have a storeroom under his responsibility. According to his statement, the payments were made by check or in cash, and each amount was written down. The Defendant claimed that he did not see, did not buy and did not issue weapons. He only worked with the documents, and he himself was afraid of weapons. The Defendant again emphasized that he did not know how much money was paid or which weapons were purchased. The only thing he did was receive documents from the various security entities and give payment orders to people. The Defendant denied that he had purchased and distributed pistols or that he knew anything about it.

The Defendant denied having made payment to members of Fatah and denied that he had paid people in the Bethlehem area. According to his argument, there was an instruction from ▮▮▮▮ to pay NIS 500, but he did not know what they were being paid for. No one told him that those people belonged to the al-Aqsa Martyrs Brigades. The Defendant denied that an emissary had come to him from ▮▮▮▮ or that he had seen a financial report which included expenses for the purchase of chemical materials for the production of explosives. He also denied that he had paid other financial expenses of the al-Aqsa Martyrs Brigades, or that he had received an instruction from ▮▮▮▮ to pay ▮▮▮▮ 25,000 dinars, and in any event, he did not have such an amount to transfer.

The Defendant denied any relationship to the arms ship *Karine A*. According to his argument, he only heard about it after he was arrested in Jericho. The Defendant confirmed that he knows ▮▮▮▮ the Deputy Commander of the Palestinian Navy, and confirmed that ▮▮▮▮ had given him a document from ▮▮▮▮ according to which the Defendant was supposed to pay ▮▮ $125,000. According to the Defendant, he did not know what the payment was for and he refused to pay, because he did not have such an amount in the budget.

The Defendant confirmed that, when he was in Dubai for the purpose of purchasing vehicles, he was approached by ▮▮▮▮ who asked him to transfer a letter to ▮▮▮▮ He met ▮▮▮▮ together with other people and received a letter from them. He transferred it to ▮▮▮▮ nd later found out that the content of the letter had to do with the Iranian proposal to help the Palestinian Authority, but he did not know and did not say anything about an arms ship.

The Defendant confirmed that, while he was in Yemen, he met ▮▮▮▮ at the Palestinian Embassy there, but he was not aware of the fact that, at that time, an arms ship had come into Hudeida Port in Yemen. He confirmed that ▮▮▮▮ told him that they were preparing a Yemenite passport for ▮▮▮▮ but he did not know why.

Date: July 29, 2009                                                                                           File No.: 3052/06

benefit from the defense of "act of state" because all that he did was to act with no independent discretion, but rather, in accordance with the instructions of the chairman of the Authority, Arafat, who approved the transfer of monies from the Authority for the purpose of purchasing the arms. The Defendant's role in this case was to sign documents which approved payment. It was argued that this act is not a war crime or a crime against humanity, because it has not been proved that the Defendant knew that the arms would reach the al-Aqsa Martyrs Brigades organization, which would use them for terrorism.

It was further argued that the Defendant could avail himself of the defense of justification, because obeying the instruction by the Authority, which was aimed at taking weapons from irresponsible entities and transferring them to the responsible control of the Authority, is a legitimate act, which is governed by the defense of justification.

It appears that the arguments that have been set forth by the defense cannot be accepted, even if only on factual grounds.

In order for the defense of "act of state" to be allowed, it is necessary to show that the entity on behalf of which the Defendant operated was a state. As set forth in the ruling on the preliminary arguments, which was handed down by my colleague, the Deputy President, the Palestinian Authority is not a state, and certainly, during the period which is relevant to the indictment, it was much farther from the status of an independent authority. Accordingly, the Deputy President of the Court stated that: "This being the case, I believe that it should be ruled that the Defendant's actions pursuant to the indictment were not acts of state, as they were not committed on behalf of an entity which is a state; rather, at the very most, they were personal actions in the guise of state actions, through the use of resources of an unformed diplomatic entity."

No further support or additional evidence, which could have modified our conclusion with regard to the status of the Palestinian Authority, has been brought before us.

Secondly: the argument to the effect that the collection of the arms was intended to transfer weapons from residents, who were likely to use them for partisan purposes, to responsible entities, is unfounded. The Defendant raised this argument on a number of occasions, including in his interrogation, however, we do not have the impression that this argument is substantiated in any way whatsoever. In accordance with that which has been set forth above, we have already pointed out that our impression of the Defendant is that he is a sophisticated person, who is trying to shrug off the burden of responsibility and liability. Concurrently with the argument that the collection of the arms was intended to prevent irresponsible entities from using them, it appears that the Defendant approved the financing of actions which have absolutely nothing to do with the collection of weapons from