

**MILLER CHEVALIER**

Mark J. Rochon
Member
(202) 626-5819
mrochon@milchev.com

February 17, 2015

**VIA ECF**
Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   *Sokolow v. Palestine Liberation Organization et al.*, 04-cv-397 (GBD) (RLE)

Dear Judge Daniels:

Defendants write in response to the Court's February 13, 2015 draft jury charge on agency. Defendants, as they have argued in court, object to the inclusion of an instruction on agency liability. This theory of liability has been injected into the case at the eleventh hour to the substantial prejudice to Defendants, in the absence of supporting evidence, and in a manner inconsistent with the law of the case and the law of agency. Moreover, the instruction itself fails to provide the jury sufficient guidance on how an agency relationship is created, who can create such a relationship, the scope of the relationship, and the association between the agency relationship and the attack at issue. As it stands, the instruction on agency has the capacity to confuse, more than instruct, the jury.

Plaintiffs should not be allowed to proceed on an agency theory as to any of the attacks at this late stage of the case. Defendants moved for summary judgment on Plaintiffs' Anti-Terrorism Act claims. DE 497. In opposing summary judgment, Plaintiffs stated they had two theories of liability: vicarious liability and direct liability. In their discussion of vicarious liability, Plaintiffs focused entirely on respondeat superior liability. DE 545, Mem. at 15-22. Nowhere did Plaintiffs rely on an agency theory of liability or identify a single individual who carried out attacks or provided material support as non-employee agents of the PA or PLO. Even in the context of discussing their ratification theory, Plaintiffs argued that "Defendants ratified the tortious acts *of their employees.*" *Id.* at 22 (emphasis added). With respect to their direct liability theory, Plaintiffs claimed that either at an institutional level, or at a senior officer level, "Defendants" violated the material support statutes. Nowhere did they argue that so-called "agents" of the PA or PLO violated the material support statutes and that the PA or PLO should be held liable as principals. *Id.* at 22-27. In fact, such a theory would be a vicarious liability theory, not a direct liability theory.

Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com

1549596.1



**MILLER CHEVALIER**

February 17, 2015
Page 2

      The Court granted the Defendants' motion for summary judgment "with respect to the ATA claims of vicarious liability against the PLO." DE 646 at 1. This ruling precludes the Plaintiffs from now inserting an agency theory into this case. Without a doubt, agency is a form of vicarious liability. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment"); *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014) (treating agency as a vicarious liability theory). In denying the motion for summary judgment on the vicarious liability claims against the PA, the Court discussed exclusively Plaintiffs' evidence that PA employees acted within the scope of their employment. Nowhere did the Court find that Plaintiffs established a triable issue of fact that PA agents, acting within the scope of their agency, carried out the attacks — because that theory had never been presented to the Court for its consideration. Plaintiffs never even referenced agency in their opening statement. It is highly improper to now allow Plaintiffs to inject this issue into the case on the eve of closing.

      Regardless, the evidence before the jury does not support an agency instruction. At trial, Plaintiffs have not identified any non-employee agents who arguably carried out the shootings or bombings at issue within the scope of an agency relationship with the PA or PLO. Leaving the instruction in place allows Plaintiffs to create substantial confusion about what sorts of relationships and conduct are sufficient to create liability for the PA or PLO.

      Agency is defined as "the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 277 (2d Cir. 2013) (internal quotation marks omitted); *Bigio v. The Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012) (similar). "The three elements necessary to an agency relationship are (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." *Johnson*, 711 F.3d at 277 (internal quotation marks omitted); *see also Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) (holding that the establishment of an agency relationship "requires facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent. In addition, the principal must maintain control over key aspects of the undertaking.") (citations omitted). Moreover, "the entire purpose of an agency relationship is to empower the agent to take actions 'on behalf of and for the benefit of the principal – not the agent.'" *Mouawad*


**MILLER CHEVALIER**

February 17, 2015
Page 3

*Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 423 (S.D.N.Y. 2007). It is only after all of these elements are satisfied, that an agent is then "'a fiduciary with respect to matters within the scope of his agency.'" *Johnson,* 711 F.3d at 277.[1]

Further, only certain individuals can act on behalf of the principal to delegate authority to an agent. An individual has the capacity to act as principal in an agency relationship only if he delegates to the agent authority which he himself possesses. *United States v. Craig*, 896 F. Supp. 85, 89 (N.D.N.Y. 1995). "In other words, an 'individual may not create an agent who has greater power than the individual himself possesses.'" *Id.*

There is nothing in the evidence that creates such a manifestation of consent, nor anything that establishes a defined principal who delegated his or her authority to anyone. Today, Plaintiffs' counsel suggested that Wafa Idris acted as an agent of the PA. Though counsel did not provide a basis for this suggestion, perhaps counsel was alluding to a reference in Munzer Noor's custodial statement that Idris told him that "I would meet her supervisor at the Palestinian Authority." PTE 467 at 1. Another Noor custodial statement mentions that "Wafa Idris recruited me as a source. . . ." PTE 465 at 2.

Whatever counsel was thinking of, any such evidence would not allow a reasonable jury to conclude that non-PA employee Wafa Idris carried out the Sokolow bombing as an agent of the PA. The evidence barely brushes up against an agency relationship, and it certainly is insufficient to establish any such relationship. There is no evidence as to whether the "supervisor" (whoever that might be) had authority to enter into an agency relationship on behalf of the PA with Wafa Idris. Nor is there any evidence of the scope of her agency (if any) with the PA. Finally, there is no evidence that she was in fact acting within that scope as an agent of the PA. There is nothing in the evidence that creates a manifestation of consent, or anything that establishes a defined principal who delegated anything to Idris.

---

[1] Defendants previously addressed these issues in their February 12, 2015 letter to the Court, writing: "First, the jury should be instructed that it must find that the PA had control over the supposed agent(s). 'The principal's power to control the agent is an essential element of an agency relationship.'" DE 803 at 4 (quoting *Mouawad Nat'l Co.*, 476 F. Supp. 2d at 422); *see also id.* at 4 n.1 (citing *Mouawad* for its holding that "[t]he essence of control in an agency sense is in the necessity of the consent of the principal on a given matter," and that "[t]he principal's consent may be manifested by written or spoken words or any other conduct of the principal, directed at the agent in the case of actual authority, or at a third person in the case of apparent authority.").



February 17, 2015
Page 4

If, over Defendants' vigorous objection, the Court is nonetheless going to include an instruction on agency, the instruction must be modified. The primary problem with the draft instruction is that it goes straight to explaining the circumstances in which an entity can be found responsible for the acts of an agent, without any instruction on how to evaluate whether an agency relationship exists in the first place. In other words, by instructing the jury that "[w]ith regard to both the PA and the PLO, Plaintiffs contend that each is directly liable for the acts of its agents," 2/13/15 Draft Jury Charge at 51, the jury charge assumes that an agency relationship exists.

This omission is crucial in this case, where there is no evidence that the PA or the PLO ever entered into any agency relationships relevant to the attacks in this case. It is only after an agency relationship is established that the jury can assess whether such an agent acted within the scope of his or her authority. To that end, an agent's "'authority . . . exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance *of a particular act*.'" *See Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (emphasis added). In this case, the PA must have authorized the alleged agent(s) to take the specific actions at issue in this case.

The Court has carefully crafted the *respondeat superior* instruction to provide clear guidance to the jury. With the late introduction of an open-ended agency instruction, all of that is undermined, to Defendants' substantial prejudice. As it currently stands, the jury can skip past the *respondeat superior* instruction and impose liability on the PA or PLO for terrorism on the theory that someone said to be an agent of the PA or PLO was somehow connected to the attack.

Thus, Defendants ask that if the Court instructs the jury on agency, over Defendants' strenuous objection, the Court should revise the charge as follows:

### AGENTS

WITH REGARD TO BOTH THE PA AND THE PLO, PLAINTIFFS CONTEND THAT EACH IS DIRECTLY LIABLE FOR THE ACTS OF ITS ALLEGED AGENTS WHO ALLEGEDLY COMMITTED TERRORIST ACTS OR PROVIDED MATERIAL SUPPORT ON THE PA AND PLO'S BEHALF. AGENCY IS THE FIDUCIARY RELATIONSHIP THAT ARISES WHEN ONE PERSON (A "PRINCIPAL") MANIFESTS ASSENT TO ANOTHER PERSON (AN "AGENT") THAT THE AGENT SHALL ACT ON THE PRINCIPAL'S BEHALF AND SUBJECT



February 17, 2015
Page 5

<u>TO THE PRINCIPAL'S CONTROL, AND THE AGENT MANIFESTS ASSENT OR OTHERWISE CONSENTS SO TO ACT.</u> ENTITIES LIKE THE PA AND THE PLO CAN ACT ONLY THROUGH THEIR AGENTS—THAT IS, THEIR EMPLOYEES, OFFICERS OR OTHER AUTHORIZED REPRESENTATIVES. AN INDIVIDUAL PERSON NEED NOT BE AN EMPLOYEE OF THE ENTITY IN ORDER TO BE AN AGENT. AND, WHILE AN AGENT MAY BE AN INDIVIDUAL PERSON, IT MAY ALSO BE ANOTHER ENTITY.

<u>AN INDIVIDUAL HAS THE CAPACITY TO ACT AS PRINCIPAL IN A RELATIONSHIP OF AGENCY IF HE DELEGATES TO THE AGENT AUTHORITY WHICH HE HIMSELF POSSESSES. IN OTHER WORDS, AN INDIVIDUAL ACTING ON BEHALF OF THE PRINCIPAL MAY NOT CREATE AN AGENT WHO HAS GREATER POWER THAN THE INDIVIDUAL HIMSELF POSSESSES.</u>

<u>IN ORDER TO DETERMINE THAT THE PRINCIPAL AND THE AGENT ENTERED INTO AN AGENCY RELATIONSHIP, YOU MUST FIND: (1) A MANIFESTATION BY THE PRINCIPAL THAT THE AGENT WILL ACT FOR HIM; (2) ACCEPTANCE BY THE AGENT OF THE UNDERTAKING; (3) AN UNDERSTANDING BETWEEN THE PARTIES THAT THE PRINCIPAL WILL BE IN CONTROL OF THE UNDERTAKING; AND (4) THAT THE PURPOSE OF THE AGENCY RELATIONSHIP IS TO EMPOWER THE AGENT TO TAKE ACTIONS ON BEHALF OF AND FOR THE BENEFIT OF THE PRINCIPAL — NOT THE AGENT.</u>

<u>IF YOU FIND THAT THERE WAS, IN FACT, AN AGENCY RELATIONSHIP, YOU MUST ALSO DETERMINE WHETHER THE ACT OF THE AGENT WAS BINDING ON THE ENTITY.</u> IN ORDER TO FIND THAT THE ACT OF AN AGENT WAS BINDING ON THE ENTITY YOU MUST FIND THAT THE AGENT HAD AUTHORITY TO ACT IN THE MANNER IN WHICH HE OR SHE IS ALLEGED TO HAVE ACTED.

THE AUTHORITY OF AN AGENT TO ACT MAY BE EXPRESS, APPARENT OR INHERENT.

EXPRESS AUTHORITY IS CREATED BY THE DIRECT VERBAL OR WRITTEN GIVING OF THAT AUTHORITY BY THE ENTITY TO ITS AGENT. FOR EXAMPLE, EXPRESS AUTHORITY TO PERFORM CERTAIN DUTIES MAY



February 17, 2015
Page 6

BE A SPECIFIC DIRECTION OR PART OF AN EMPLOYEE'S WRITTEN OR VERBAL CONTRACT.

APPARENT AUTHORITY, ON THE OTHER HAND, IS THE AUTHORITY WHICH A PRINCIPAL BY REASON OF ITS ACTS AND CONDUCT LEADS A THIRD PERSON REASONABLY TO BELIEVE THAT ITS AGENT POSSESSES. APPARENT AUTHORITY CAN BE CREATED BY APPOINTING A PERSON TO A POSITION, SUCH AS MANAGER OR OTHER POSITION, WHICH CARRIES GENERALLY RECOGNIZED DUTIES. IN OTHER WORDS, APPARENT AUTHORITY MAY BE BASED ON A "HOLDING OUT TO THE WORLD" OF THE AGENT, IN HIS PARTICULAR POSITION, BY THE ENTITY, TO THIRD PARTIES WHO DEAL WITH THIS AGENT. KNOWING OF HIS POSITION, THE AGENT HAS APPARENT AUTHORITY TO DO ALL THOSE THINGS ORDINARILY DONE BY SOMEONE IN THAT POSITION, REGARDLESS OF ANY UNKNOWN LIMITATIONS WHICH ARE IMPOSED ON THE PARTICULAR AGENT. IN SUCH CIRCUMSTANCES, THE ENTITY IS RESPONSIBLE TO THIRD PARTIES, WHO ARE UNAWARE OF ANY LACK OF AUTHORITY TO THE SAME EXTENT AS IF THE POWER TO ACT HAD BEEN DIRECTLY CONFERRED. THEREFORE, IF YOU FIND UPON ALL THE FACTS AND CIRCUMSTANCES OF THE PARTICULAR CASE THAT THE DEFENDANT HAS, BY REASON OF WORDS OR CONDUCT, GIVEN THE APPEARANCE OF THE AGENT'S AUTHORITY TO ACT ON ITS BEHALF, THEN THE DEFENDANT IS RESPONSIBLE FOR SUCH ACTS OF ITS AGENT AS IF THE DEFENDANT ITSELF COMMITTED THE ACTS.

THERE ARE ALSO SITUATIONS IN WHICH AN AGENT HAS INHERENT AUTHORITY TO ACT FOR THE DEFENDANT, EVEN WHEN THE DEFENDANT HAS NOT GRANTED THE AGENT EITHER THE EXPRESS OR APPARENT AUTHORITY TO ACT ON ITS BEHALF. THIS INHERENT AUTHORITY MAY EXIST, PROVIDED THE ACTS IN QUESTION ARE WITHIN THE SCOPE OF THE AGENCY, EVEN THOUGH THE ACTS MAY BE CRIMINAL OR TORTIOUS. FOR EXAMPLE, AN ACT IS WITHIN THE SCOPE OF AN AGENT'S INHERENT AUTHORITY IF IT IS SUFFICIENTLY RELATED TO THE KIND OF ACT THE AGENT WAS EMPLOYED TO PERFORM, IF IT WAS DONE SUBSTANTIALLY WITHIN THE TIME AND SPACE LIMITS OF THE JOB AND WAS ACTUATED, AT LEAST IN PART, BY A PURPOSE TO SERVE THE ENTITY.

THEREFORE, ~~IF YOU~~ TO FIND <u>THAT THE PA OR THE PLO IS RESPONSIBLE FOR THE PARTICULAR ACT OF AN AGENT, YOU MUST FIND</u>



February 17, 2015
Page 7

FIRST THAT THE INDIVIDUAL WHO DELEGATED THE AUTHORITY TO THE AGENT ON BEHALF OF THE PA OR PLO HAD THE CAPACITY TO DO SO, THAT THE PA OR THE PLO AND THE AGENT ENTERED INTO AN AGENCY RELATIONSHIP, ~~AND~~ THAT THE AGENT ACTED WITH EXPRESS, APPARENT, OR INHERENT AUTHORITY TO ~~ACT~~ TAKE THAT PARTICULAR ACTION ON BEHALF OF THE PA OR PLO, AND THAT THE AGENT ACTED WITHIN THE SCOPE OF HIS OR HER AUTHORITY WHEN HE OR SHE CARRIED OUT THE PARTICULAR ACT AT ISSUE IN THIS CASE.

Sincerely,

Mark J. Rochon

/DUG