

**MILLER CHEVALIER**

Laura G. Ferguson
Member
(202) 626-5819
lferguson@milchev.com

February 20, 2015

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:  *Sokolow v. Palestine Liberation Organization et al.*, 04-CV-397 (GBD) (RLE)

Dear Judge Daniels,

    During closing Plaintiffs' counsel mischaracterized the law and the Court's jury charges in a number of critical respects, necessitating additional language in the jury charges to avoid error.

    1.    In the current draft the jury is instructed: "In order to prove that a defendant is liable for a particular claim under the ATA, plaintiffs must demonstrate the involvement of a senior official *or other person having duties of such responsibility that his or her conduct may fairly be considered to represent the PA or PLO*." 2/18/15 draft at 49 (emphasis added).

    At the February 18 charging conference, defense counsel expressed concern that the italicized language could be interpreted to mean any low level employee. Tr. 3618:9-12.  The following colloquy took place:

> The Court:  No, it's got to be an employee whose conduct may fairly be considered to represent the PLO or the PA. . . . . If I represent the PLO – as I say, put it back in the U.S. context, that evaluation would be an appropriate evaluation about the President of the United States and/or the Secretary of State either because of their official position or it could be they're a senior official in government, so that is an appropriate theory of responsibility.  Or if the President decided to tap you tomorrow to be the envoy to the Middle East to negotiate peace, you would be considered to be somebody with such responsibility that your conduct would be fairly considered to represent the interests the United States. That's all it means.

Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com



February 20, 2015
Page 2

> Ms. Ferguson: We're not talking about a low level employee. The mere fact that someone has an employee status.
>
> The Court: No, not at all. So I don't want you to think that I'm giving that instruction.

Tr. 3618:13-3619:5. The next day, in closing, when describing the language *"or other person having duties of such responsibility that his or her conduct may fairly be considered to represent the PA or PLO,"* Plaintiffs' counsel stated: "If you're a beat cop walking the streets, you fairly represent the NYPD." Tr. 3781:23-24. This is a case about security and police force employees. Plaintiffs' counsel was telling the jury that just because someone is a low-level police or security employee, he may "fairly be considered to represent" the PA or PLO. Plaintiffs' counsel's interpretation of the jury instruction is squarely inconsistent with the Court's.

Accordingly, the jury should be instructed: ***"In determining whether a person having duties of such responsibility that his or her conduct may fairly be considered to represent the PA, it is not sufficient that the person is employed by the PA police or security forces."***

2.  In closing, Plaintiffs' counsel argued: "Anytime there's a terrorist who is kept on the payroll, that's material support." Tr. 3789:13-14. That is wrong as a matter of law. The PA may not be held liable for material support just because someone who is on the payroll carried out a terrorist act. The mere payment of salaries to an employee cannot be deemed material support. Such a theory improperly creates strict liability for the PA for the acts of employees. To cure the erroneous impression created by Plaintiffs' counsel's improper argument, the jury should be instructed in the instructions on § 2339A and § 2339B: ***"The payment of salaries to employees does not constitute material support."***

3.  Plaintiffs' counsel argued in closing that the PA provided its employees as personnel to the AAMB, violating the material support statutes. Tr. 3785:5-12 ("Now I want to start with these employment policies, because the very biggest kind of material support you can give to terrorist is money and personnel. And these guys gave both in the form of all of those Al Aqsa Martyrs Brigades security officers."). Here, Plaintiffs' counsel's argument was in violation of the Court's ruling that "Plaintiffs may not proceed under Section 2339A on the grounds that Defendants provided the AAMB with personnel." DE 646 at 17-18. The Court rejected Plaintiffs' claim that "because PA employees, specifically its police and security forces, assisted AAMB with the attacks at issue, the PA provided material support in the form of personnel in violation of Section 2339A." *Id.* at 17. The same rationale applies to § 2339B. As a result of counsel's improper characterization of the law and the law of the case: the jury must now be instructed: ***"The PA may not be found to have provided material support in the form of***



February 20, 2015
Page 3

*"personnel" merely because some of its employees allegedly carried out terrorist attacks on behalf of the Al Aqsa Martyrs' Brigades or Hamas."*

      4.      The Court previously has rejected Plaintiffs' efforts to impose liability on the PA or PLO for prisoner or martyr payments under a ratification theory. In closing, Plaintiffs' attempted to refashion their ratification theory as a material support theory: "And if you set up a program in which you say if you commit terrorist act we will pay your family, that is providing material support, and you can't do that." Tr. 3787:7-9. Similarly, Plaintiffs' counsel argued: "Anytime that there's martyr payments, you can check yes" as to material support. Tr. 3789:20-21. "You don't have to find that those payments preceded the attacks." Tr. 3789:21-22. Repeatedly, Plaintiffs' counsel argued that post-attack prisoner and martyr payments constituted material support, even though the the statute requires that material support be provided "knowing or intending that they are to be used *in preparation for, on in carrying out*," a terrorist attack. 18 U.S.C. § 2339A (emphasis added). Given Plaintiffs' counsel's mischaracterization of the law, the Court should instruct the jury at the end of the text on page 42: *"Any provision of material support or resources must take place prior to the attack at issue, and payments made after an attack, such as payments to prisoners or families of martyrs, do not constitute material support under the ATA."*

      5.      The Court has rejected Plaintiffs' claims that the PA and PLO are alter egos. Tr. at 3356:18-3357:25. The Court accordingly did not provide an alter ego instruction. Despite that, and in the face of no evidence establishing liability for the PLO, Plaintiffs' counsel argued in closing: "Now you'll notice that your verdict sheet has separate questions for the PA and the PLO. The PA and PLO want you to believe that they're separate in in this Court. But what does the evidence show about separation? . . . So when you think about who is providing that material support by keeping terrorists on the payroll and giving them promotions, it's both." Tr. 3787:10-21. The Court should instruct the jury: *"As a matter of law, you are not to treat the PA or the PLO as the same entity. The PA is not legally responsible for what the PLO does, and the PLO is not legally responsible for what the PA does."*

      6.      Similarly, Plaintiffs improperly asked the jury to treat Fatah and AAMB as alter egos. Counsel read from a document that referred to "payments from the PA to Fatah party activists" and then told the jury "[t]hat's knowing support of the Al Aqsa Martyrs' Brigades." Tr. 3797:2-8. Counsel also stated: "Arafat and his agents knowingly gave material support and resources to Fatah/AAMB operatives." Tr. 3790:17-20. The Court should instruct the jury: *"In determining whether the PA or PLO has provided material support to the Al Aqsa Martyrs' Brigades," you should treat the political party known as Fatah and the Foreign Terrorist Organization known as the Al Aqsa Matyrs' Brigades as separate entities. Accordingly, payments or support for Fatah should not be treated as payments or support for the Al Aqsa Martyrs' Brigades."*



February 20, 2015
Page 4

7. During his summation, Plaintiffs' counsel argued that certain witnesses, including Tawfiq Tirawi, Ghaleb Nubani, and others were not called to testify at trial. In the process, Plaintiffs' counsel intentionally left the impression that the Defendants could have (and should have) called those individuals as witnesses.

For example, Plaintiffs' counsel argued:

> And remember, Tirawi is not just involved in this incident. Tirawi is involved in a lot of bad conduct. He is implicated in a lot of bad conduct. And counsel for the defendant makes the claim that he is a free man and makes you think he never did anything wrong. But he is a globetrotter today, based on the testimony of Faraj, who we will talk about his testimony. **If he is so free, where is he?**

Trial Tr. 2/19/15 at 3821:5-11 (emphasis added). Similarly, Plaintiffs' counsel argued in reference to the Sokolow incident — in particular to Ghaleb Nubani, who wrote the note at the top of PTE 233 (the so-called "Tirawi Memo" concerning Wafa Idris): **"Where was he [Nubani] to explain what he did to investigate that?"** *Id.* at 3821:3-4.[1]

---

[1] In reference to the Hebrew University attack, Plaintiffs' counsel argued (concerning the escape of Abdullah Barghouti):

> You would have some person who saw him escape. You would have some person who said I showed up at jail and he was escaping, we tried [to] catch him. Not some guy who was in another town and said I heard he escaped. This is a court of law, you bring real evidence if you have something to prove.

Trial Tr. 2/19/15 at 3833:13-18. Later, counsel continued, more generally:

> You remember the defendants' evidence? Me neither. Me neither. I had to go back and look. They offered four photographs, a map, and a letter from 1993.
>
> Where are the reports saying don't do this? Where are the reports saying what happened? Where are the witnesses who served with these people? Where are the supervisors who said don't do this, this was wrong? Where is anybody with any direct personal knowledge of what happened from the defendants' side of the table? They didn't offer it.

*Id.* at 3838:3-11.



Tirawi is no longer a PA employee, meaning that he was equally available to Plaintiffs. Moreover, the names of all of the individuals whose handwriting appears on PTE 233 were disclosed on October 24, 2011 — more than a year before fact discovery ended on December 21, 2012. Plaintiffs chose not to depose them. *See* Trial Tr. 2/11/15 at 3206:20-23 (THE COURT: "If you wanted a deposition you could have taken the deposition during discovery or when they were first put on the list if you thought that was necessary.").

The Court previously instructed Plaintiffs' counsel that:

> [I]f you make that argument, what we may end up with is my granting their request for an instruction that witnesses are available to both sides and that you have made this argument, but you have given no given no basis for them to conclude that somehow they have greater access to this witness than you, and if you thought he had something to say that would be helpful to you, they should assume that you would have brought him.

*Id.* at 3366:12-19.

Given the clear impression left by Plaintiffs' counsel — that Defendants could have and should have called these witnesses to testify at trial — the Court should charge the jury with the following standard instruction:

### UNCALLED WITNESS EQUALLY AVAILABLE

THERE ARE SEVERAL PERSONS WHOSE NAMES YOU HAVE HEARD DURING THE COURSE OF THE TRIAL BUT WHO DID NOT APPEAR HERE TO TESTIFY, AND ONE OR MORE OF THE ATTORNEYS HAS REFERRED TO THEIR ABSENCE FROM THE TRIAL. I INSTRUCT YOU THAT EACH PARTY HAD AN EQUAL OPPORTUNITY OR LACK OF OPPORTUNITY TO CALL ANY OF THESE WITNESSES. THEREFORE, YOU SHOULD NOT DRAW ANY INFERENCES OR REACH ANY CONCLUSIONS AS TO WHAT THEY WOULD HAVE TESTIFIED HAD THEY BEEN CALLED. THEIR ABSENCE SHOULD NOT AFFECT YOUR JUDGMENT IN ANY WAY.

Hon. Leonard B. Sand, Modern Fed. Jury Instr. 75-4.



February 20, 2015
Page 6

      8.      Defendants previously asked the Court to preclude Plaintiffs' counsel from making arguments in closing that ask the jury to impose damages to "send a message" to the Defendants. The ATA automatically trebles the Plaintiffs' compensatory damages, so Plaintiffs' counsel may not make arguments in closing that suggest damages should be awarded for any reason other than compensating Plaintiffs for their injuries. *See* DE 808 at 4. On February 17, the Court stated that "the way I would limit it" the argument should be "related to their assessment of the witnesses and how they testified and what damages they said they suffered." Tr. 3467:12-20. Yet in closing, Plaintiffs' counsel told the jury that an "important thing" the ATA does is that "it hits those who send terrorists where it hurts them most, in the wallet. Money is oxygen for terrorism." Tr. 3780:5-7. Plaintiffs' counsel then told the jury: "Take away their money by making them pay their fair share of what they did." Tr. 3780:8-9. In instructing the jury on damages, the Court should reference Plaintiffs' counsel's argument and then instruct the jury that in considering what damages, if any they should award, they may not award damages for the purpose of "hurt[ing]" Defendants by "[t]ak[ing] away their money."

      9.      Prior to closing arguments, the Court explicitly restricted Plaintiffs' counsel from revealing the names that have been redacted from trial exhibits. "[Mr. Yalowitz] cannot say that they can draw a conclusion about what the redactions were," the Court stated. Tr. at 3653:1-2. "I don't want any argument about what the jury should conclude as to what the redactions must say or must include. I don't want any reference with regard to that." *Id.* at 3653:24-3654:1. "You cannot argue that they should conclude the redaction says X." *Id.* at 3654:22-23. "I want nothing about saying that you can conclude that this is what the document says, or you can conclude that I know what it says and you don't know what it says." *Id.* at 3656:4-7.

      Yet, during closing argument Mr. Yalowitz told the jury that the redacted name in the Ahmed Barghouti indictment was that of Marwan Barghouti:

> Now after his release, Ahmed Barghouti and another guy transferred Abdullah Barghouti to a safe house, from the prison to an apartment. And Abdullah Barghouti was convicted of providing material support to Hamas for that. Because when you take a guy to a safe house, that's material support. That's harboring a terrorist. It's not that complicated.
>
> And who was this other person? You can connect those dots. Ahmed Barghouti was not some lowly driver, as was suggested earlier, Ahmed Barghouti was the right-hand man and bodyguard of Marwan Barghouti, head of Al Aqsa Martyrs Brigades.

*Id.* at 3833:19-3834:4.

Miller & Chevalier Chartered



February 20, 2015
Page 7

      Because Mr. Yalowitz violated the Court's order, the Court should instruct the jury as follows:

> Many of the admitted exhibits contain words or names that have been redacted. You should not try to figure out what word or name has been redacted. During his closing argument, Mr. Yalowitz told you that he believes a certain redaction is the name of a particular person. That was an improper argument by Mr. Yalowitz. You may not draw any inference or conclusion about what word or name has been redacted from an exhibit.

\*\*\*

      On Wednesday, February 18, 2015, Plaintiffs provided Defendants with binders of admitted trial exhibits. Plaintiffs failed to redact from at least one exhibit, the custodial statement of Abdullah Barghouti (PTE 428), certain names and nicknames that this Court has already ordered to be redacted, including "Salah 1," "Salah 2," "Khaled," "Abu Khaled," and "Hassan Abu Latifa." Plaintiffs have refused to make these redactions. Accordingly, Defendants request that the Court order these redactions. A copy of the redacted exhibit is attached.

Sincerely,

*Laura G. Ferguson*
Laura G. Ferguson