UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION, *et al.*,<br><br>　　　　　　　　　　Defendants. | No. 04 Civ. 397 (GBD) (RLE) |

**PLAINTIFFS' RESPONSE TO
OBJECTIONS TO PROPOSED FORM OF JUDGMENT**

**I.     The Court Should Award Prejudgment Interest**

Plaintiffs were injured by attacks committed well over a decade ago, and prejudgment interest is necessary to ensure that they are fully compensated for this long delay. Indeed, as discussed below, this very Court previously awarded prejudgment interest in a terrorism case arising out of the September 11 attacks. *In re Terrorist Attacks on Sept. 11, 2001*, 2012 WL 4711407, at *3 (S.D.N.Y. Oct. 3, 2012) (Daniels, J.). Defendants do not even mention this case, which is inconsistent with their attempt to avoid paying interest. Nor do they discuss the standards for granting prejudgment interest in the Second Circuit. Those standards plainly support an award here, and none of defendants' arguments have merit. Accordingly, this Court should adhere to its previous decision and issue a judgment that includes prejudgment interest.

**A.     The Standards For Awarding Prejudgment Interest In The Second Circuit**

It is well established in the Second Circuit that an award of prejudgment interest rests within the discretion of the trial court. *E.g., Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998) ("In a suit to enforce a federal right, the question of whether or not to award prejudgment

interest is ordinarily left to the discretion of the district court[.]"); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d. Cir. 1995) ("The decision whether to grant prejudgment interest and the rate used if such interest is granted 'are matters confided to the district court's broad discretion[.]'"); *In re Terrorist Attacks on Sept. 11, 2001,* 2012 WL 4711407, at *3.

Courts in this Circuit consider several factors in deciding how to exercise their discretion: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Gierlinger*, 160 F.3d at 873 (citation omitted); *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 833-34 (2d Cir. 1992).[1] These factors support an award here.

**B.      Plaintiffs Have Satisfied The Second Circuit's Standards**

First, "the need to fully compensate" these plaintiffs for their damages is overwhelming. Plaintiffs submitted extensive testimony—by the plaintiffs themselves and by multiple damages experts—regarding their injuries. By any measure, those injuries were extremely serious. Indeed, defendants presented no evidence of their own on damages and did not even cross-examine the plaintiffs or their damages experts, obviously recognizing that plaintiffs' injuries were so extensive and so undeniable that any attempt to argue otherwise would not sit well with the jury. It would be difficult to imagine a set of plaintiffs more deserving of full and complete compensation. Thus, the first factor favors an award of prejudgment interest.

Second, "considerations of fairness and the relative equities" also favor an award. Again, it would be difficult to imagine a stronger case for applying this factor. Plaintiffs are all

---

[1] This test is based on Supreme Court case law. *See Wickham*, 955 F.2d at 833-34.

indisputably blameless; they were simply going about their normal lives when those lives were disrupted forever—or ended. Defendants, by contrast, are guilty of heinous acts. The jury's decision on this point was crystal clear; it concluded not only that both defendants provided material support to terrorists and to a designated Foreign Terrorist Organization, but also that the PA employees who perpetrated and supported these attacks—many of whom have been convicted for their crimes—were acting within the scope of their employment. Defendants actually encouraged their police and security employees to engage in such actions in official PA publications. And defendants still do not get it—they continue to this day to pay and promote employees who committed these crimes *precisely because they killed and injured innocent civilians.* They also provided benefits to the families of suicide bombers and put other terrorists on the payroll *precisely because they committed terrorist acts.* Accordingly, "considerations of fairness and the relative equities" militate in favor of an award.[2]

The third factor—the remedial purpose of the statute—also supports an award because, as the courts have recognized, the civil damage provisions of the ATA are remedial in nature. For example, in *Rothstein v. UBS AG*, 772 F.Supp.2d 511, 516 (S.D.N.Y. 2011), Judge Rakoff observed that "Section 2333 is a remedial civil statute that provides compensation to victims who demonstrate they were injured 'by reason of' an act of international terrorism.'" Similarly, in *Knox v. Palestine Liberation Organization*, 442 F.Supp.2d 62, 76 (S.D.N.Y. 2006), Judge Marrero cited "the broad remedial purpose of section 2333" in finding that step-children could sue under the ATA for their damages stemming from an attack on their step-father.

---

[2] By contrast, the Second Circuit has stated that this factor would militate against prejudgment interest "when the defendant acted innocently and had no reason to know of the wrongfulness of his actions" or "when the plaintiff himself is responsible for the delay in recovery." *Wickham*, 955 F.2d at 834-35.

The legislative history of the ATA confirms its remedial purpose. The House Report on the ATA notes that Congress had previously passed legislation providing for criminal liability for acts of international terrorism, but that "there is a need for a companion civil legal cause of action for American victims of terrorism" to eliminate "this gap in our efforts to develop a comprehensive legal response to international terrorism." Antiterrorism Act of 1992, H.R. Rep. No. 102-1040, at 5 (1992).[3] In view of the remedial purpose of Section 2333 of the ATA, an award of prejudgment interest is appropriate.

### C. Prejudgment Interest Is Not Limited To "Exceptional Cases"

Defendants do not even mention the Court's ability to exercise its discretion, even though the cases they cite hold that the district courts have that discretion. Nor do they mention, much less analyze, the factors enumerated by the Second Circuit for district courts to consider in exercising their discretion. Instead, defendants' principal argument is that prejudgment interest is appropriate only in "exceptional" cases. That is utterly inconsistent with the Second Circuit cases cited above, and it is not the law. To the contrary, courts have awarded prejudgment interest under a number of federal statutes without any requirement to find that those cases were "exceptional." As the Second Circuit stated in *Wickham Contracting*, 955 F.2d at 834, under the multi-factor test described above the Supreme Court has "allowed recovery of prejudgment interest under a variety of federal laws, despite the silence of the laws on the subject of interest." Thus, defendants' argument that prejudgment interest is appropriate only in "exceptional" cases is wrong.

---

[3] The report goes on to explain that the need to enact Section 2333 was demonstrated by the fact that the family of Leon Klinghoffer, who was killed in the 1985 terrorist attack on the cruise ship Achille Lauro, was able to sue only because he had an admiralty claim since the attack took place at sea. *Id.* Since that would leave victims of land attacks without recourse, Congress decided to enact a remedy.

The cases cited by defendants for their "exceptional" argument involved, and appear to be limited to, an unusual situation arising under the Lanham Act. Those cases denied prejudgment interest in cases brought under 15 U.S.C. §1117(a), which does not refer to prejudgment interest, because the very next section, §1117(b), created a different cause of action and expressly authorized the courts to award prejudgment interest. Accordingly, the courts inferred that such interest should rarely be granted in cases under the preceding section that contained no such authorization. Nothing in the extensive Second Circuit case law under other federal statutes suggests that the cases dealing with the unusual language and structure of the Lanham Act changed the rule that an award lies in the district court's discretion.[4] To the contrary, the Second Circuit's recognition that courts have awarded prejudgment interest "under a variety of federal laws" should make short work of defendants' claim that such awards are appropriate only in "exceptional" cases. In any event, if ever there were an "exceptional" case, this is it—with defendants' scorched-earth defense eating up years of litigation while plaintiffs waited patiently (or died waiting).

### D. The Availability Of Treble Damages Does Not Prevent An Award

Defendants argue that prejudgment interest should not be granted because the ATA provides for treble damages and that courts "routinely deny" such interest when treble damages are awarded. There is, however, no rule precluding prejudgment interest in such cases. The Second Circuit made this clear in *Wickham*, in which it discussed the 44-year old case cited by defendants, *Trans World Airlines v. Hughes*, 449 F.2d 51, 80 (2d. Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973), which declined to award prejudgment interest in an antitrust case

---

[4] Moreover, the Second Circuit case law discussed above that gives the district courts discretion to grant prejudgment interest was decided after the Second Circuit case on the Lanham Act on which defendants rely.

5

where treble damages were awarded. In *Wickham,* the Second Circuit explained that *Trans World Airlines* merely "suggested" that the existence of a punitive damages award could be a reason not to award prejudgment interest. *Wickham*, 955 F.2d at 835. Thus, the existence of treble damages is, at most, a factor that the courts can consider under the fourth prong of the prejudgment interest test (which allows consideration of "such other general principles as are deemed relevant by the court"), and is not a bar to recovery.

Moreover, *Wickham* stated that the existence of punitive damages might militate against punitive damages only where "the statutory obligation on which interest sought is punitive in nature." *Id.* at 834. The examples it gave for where the punitive nature of an award would render prejudgment interest inappropriate are instructive. For example, it noted that the courts have denied prejudgment interest on a penalty imposed on a farmer for exceeding a quota limiting farm production and on a penalty assessed for nonpayment of taxes. These purely punitive examples are a far cry from § 2333 of the ATA, which, as discussed earlier, is a remedial statute.

In any event, the courts—including this Court—have repeatedly granted prejudgment interest in terrorism cases that also awarded punitive damages. As noted above, in *In re Terrorist Attacks on Sept. 11, 2001,* 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012), this Court upheld a recommendation for an award against the government of Iran under the Foreign Sovereign Immunities Act (the "FSIA"), and against three non-sovereign defendants (Al Qaeda, the Taliban and Osama bin Laden) under state law, for a judgment exceeding $340 million— more than the jury's verdict in this case—and also granted punitive damages in the amount of 3.44 times compensatory damages. This Court also upheld the Magistrate Judge's decision to award of prejudgment interest, stating that such interest is appropriate where damages "were the

result of targeted attacks perpetrated by foreign defendants." *Id.* at *3. Put another way, this Court has already done exactly what plaintiffs are asking it to do, in another terrorism case involving punitive damages that were slightly greater than the treble damages in this case. There is absolutely no reason why this Court should reach a different decision here. The Court held that interest should be assessed at the prime rate. *Id.* Plaintiffs will shortly submit information regarding the average prime rate over the relevant time period.

Other decisions in terrorism cases have awarded prejudgment interest, notwithstanding awards of treble and/or punitive damages. For example, in *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F.Supp.2d 216 (D.D.C. 2008), the Court awarded prejudgment interest on a claim against six officials of the Libyan government who were sued—and were subject to treble damages—under the ATA.[5] In deciding to award prejudgment interest, the court explained that "[p]rejudgment interest is an element of *complete compensation.*" *Id.* at 264 (emphasis in original). Moreover, it stated that failure to award prejudgment interest on the compensatory portion of an award under the ATA "undermines the deterrent effect" of treble damages, because the trebled award would be lower if interest is not included: "The denial of prejudgment interest systematically undercompensates the victims and undeters putative offenders. We should allow, indeed require, such awards." *Id.* (citations omitted). The same result is appropriate here.

Similarly, in *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F.Supp.2d 48 (D.D.C. 2011), the court awarded compensatory damages against Syria for physical injuries, emotional distress and economic injuries in a case under the FSIA arising out of a terrorist

---

[5] The decision is clear not only that prejudgment interest was awarded against the individuals sued under the ATA, but also that that interest was included in the amount that was trebled. *See id.* at 273.

7

attack. In addition, it awarded $450 million in punitive damages and, citing *Pugh,* also awarded prejudgment interest. In reaching that decision, the court stated:

> Prejudgment interest is entirely appropriate in this case, and necessary to fully compensate the victims for the injuries they sustained as a result of Syria's material support of [a designated Foreign Terrorist Organization]. Such awards compensate the victims for any delay due to litigation, and prevent Syria from profiting from its terrorist attacks.

*Id.* at 86; *see also Opati v. Republic of Sudan,* 2014 WL 3687125 (D.D.C. July 25, 2014) (awarding both punitive damages and prejudgment interest in a terrorist case under the FSIA).

### E.  Prejudgment Interest Is Appropriate For Physical And Emotional Damage

Finally, defendants, citing non-terrorism cases, argue that prejudgment interest should not be granted for non-economic injuries. The terrorism cases cited above, however, have rejected that conclusion. For example, in *In re Terrorist Attacks on Sept. 11, 2001,* this Court found that the Magistrate Judge "properly determined that prejudgment interest is appropriate on Plaintiffs' damages for solatium and pain and suffering." 2012 WL 4711407, at *3. Similarly, the decisions in *Pugh, Baker*, and *Opati* all awarded prejudgment interest on awards for non-economic injuries. Other courts have done so in other contexts. For example, in *Robinson v. Instructional Sys., Inc.,* 80 F.Supp.2d 203, 207 (S.D.N.Y. 2000), Judge Constance Baker Motley awarded prejudgment interest on an award for mental anguish, stating that "courts also exercise their discretion to award prejudgment interest on compensatory awards when interests of fairness and full compensation to the plaintiff so require," citing as an example a case that awarded such interest for an award, under the Americans With Disabilities Act, for "pain and suffering,

humiliation and emotional distress" and a Title VII case that awarded interest on an award for "pain and suffering and mental anguish."[6]

## II.     There Is No Need To Refer To Defendants' Objections to Jurisdiction

Defendants also argue that the first paragraph of the proposed judgment should be amended to refer to the fact that they object to personal jurisdiction. This is wholly unnecessary. The purpose of a judgment is to set forth the court's *determination* as to the outcome of the action, not to describe the rejected arguments of the *losing party*. Indeed, if the Court were to do what defendants ask, it would also have to amend the proposed judgment to state that the non-U.S. plaintiffs object to the dismissal of the claims against them and that Oz Guetta objects to the grant of summary judgment against him. There is no reason to encumber the judgment in this way, other than to accommodate defendants' apparent plan to hinder enforcement of the judgment in other jurisdictions.

Nor is there any need to add the requested language to preserve defendants' right to appeal on this issue. As their objections note, they have objected to personal jurisdiction. Nothing further should be required.

## III.    The Judgment May Refer to the Dismissal of Oz Guetta's Claim

Finally, defendants ask the Court state in the judgment that it entered a written order granting summary judgment on the claims of Oz Guetta. Plaintiffs do not object to this request.

---

[6] Defendants' argument that prejudgment interest should not be awarded for non-economic damages appears to be based on the old common law rule that such interest should be awarded only for liquidated damages. The Second Circuit has held, however, that the old rule has been relaxed—as shown by the multiple decisions in terrorism cases awarding prejudgment interest for non-economic damages. *See Wickham*, 955 F.2d at 836 ("the old common law rule of liquidated damages no longer retains its full vitality").

9

## CONCLUSION

The Court should enter judgment in the form proposed by plaintiffs, except that the prejudgment interest should be computed and included in the Judgment. Plaintiffs have no objection to a reference to the written order granting summary judgment against Oz Guetta.

Dated: New York, New York
       March 2, 2015

**ARNOLD & PORTER LLP**

By: /s/ Kent A. Yalowitz
   Kent A. Yalowitz
      KENT.YALOWITZ@APORTER.COM
   Philip W. Horton
      PHILIP.HORTON@APORTER.COM
   Sara K. Pildis
      SARA.PILDIS@APORTER.COM
   Ken L. Hashimoto
      KEN.HASHIMOTO@APORTER.COM
   Carmela T. Romeo
      CARMELA.ROMEO@APORTER.COM
   Tal R. Machnes
      TAL.MACHNES@APORTER.COM

399 Park Avenue
New York, New York  10022
(212) 715-1000