F2KTSOK1

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARK I. SOKOLOW, et al.,

4               Plaintiffs,

5         v.                              04 CV 397 (GBD)

6   PALESTINE LIBERATION
    ORGANIZATION, et al.,
7
                Defendants.
8
    ------------------------------x
9                                        New York, N.Y.
                                         February 20, 2015
10                                       9:30 a.m.

11  Before:
                    HON. GEORGE B. DANIELS,
12
                                         District Judge
13
                         APPEARANCES
14
    ARNOLD & PORTER LLP
15        Attorneys for Plaintiffs
    BY:   KENT A. YALOWITZ
16        PHILIP W. HORTON
          TAL MACHNES
17        SARA PILDIS
          CARMELA T. ROMEO
18        RACHEL WEISER
          LUCY S. McMILLAN
19
    MILLER & CHEVALIER, CHARTERED
20        Attorneys for Defendants
    BY:   MARK J. ROCHON
21        LAURA G. FERGUSON
          BRIAN A. HILL
22        MICHAEL SATIN
          DAWN E. MURPHY-JOHNSON
23

24

25
```

F2KTSOK1

```
 1              (In open court, jury not present)
 2              THE COURT:  Good morning.  I think we have five or six
 3         jurors, so as soon as the rest arrive, we'll start.
 4              I received a letter from the defense.  Mr. Yalowitz,
 5         did you want to respond?
 6              MR. YALOWITZ:  Yes, that would be great.  I have only
 7         been able to read it this morning, so there are some things I
 8         won't be able to respond to with particularity, but let me go
 9         through it briefly.
10              First of all, the first request is that the defendants
11         are asking you to modify the language that comes from the
12         Coppers case about a person who can fairly be considered to
13         represent the PA or the PLO.  My view, having heard the
14         argument of the defendants, which certainly suggested that only
15         a supervisory employee can be fairly considered to represent
16         the PA or PLO, which is not consistent with the law, and
17         frankly not consistent with the instructions drafted, I'm
18         equally concerned about it.
19              And I think that the Court should correct the
20         instruction by adding to it the first sentence in my proposed
21         instruction number 14 from August 8, which is an entity can be
22         held liable for the acts of its managerial agents that are done
23         on behalf and to the benefit of that entity and directly
24         related to the performance of the duties, the agent or
25         employee -- that's a slight modification -- the agent or
```

F2KTSOK1

1    employee has the authority to perform.

2          THE COURT:  I don't think that addresses their issue

3    at all.  Their issue is not with managerial employee, so I

4    don't see that's what the issue is.

5          MR. YALOWITZ:  I think the issue -- well, we have now

6    changed it to supervisory employee.  So their contention is

7    supervisory employee -- let me look at what your Honor's

8    current jury charge has on this and let me tell you how I think

9    it should be corrected.

10          It says plaintiffs must demonstrate the involvement of

11   a senior official or other person having duties of such

12   responsibility that his or her conduct may fairly be considered

13   to represent the PLO or PA.  And I had understood that lead-in

14   sentence to capture both agents and employees acting within the

15   scope of their employment.

16          THE COURT:  When you say correct it, I don't believe

17   there's anything incorrect about what this jury instruction

18   says in any regard, and I don't even know if that's their

19   argument.  Their argument is not that I need to correct the

20   jury instruction, their argument is that I had need to correct

21   you.

22          MR. YALOWITZ:  I think that I fairly captured what

23   this instruction says.  The defendants are now arguing no, this

24   instruction limits respondeat superior in a way that I think

25   their argument is incorrect.  So if there is a correction to be

F2KTSOK1

1    made in some regard, it's not to something I said, it's to make

2    it clear that this instruction is not -- doesn't override the

3    other instruction on respondeat superior or an agency.

4             THE COURT:  There's no reason the jury should assume

5    that by the overall instruction.  There's nothing wrong with

6    this instruction.  The question is, as they say -- and you can

7    respond to it further if you want, but they say you misstated

8    the law, and misstated the law inconsistent with the jury

9    instruction.  That's their argument.

10            MR. YALOWITZ:  Well, I guess I would disagree with

11   both of those things.  I don't think I misstated the law in any

12   particular or in any generality, certainly not about respondeat

13   superior, certainly not about this instruction as we discussed

14   it.  I think that if there is any change that needs to be made

15   to this, it would be to clear up that this language that we're

16   discussing does not override the other language that we're

17   discussing.

18            THE COURT:  And you think the jury somehow thinks that

19   something overrides something else in this instruction because

20   it's inconsistent with it?

21            MR. YALOWITZ:  I think that --

22            THE COURT:  These are the instructions you both

23   approved.  You told me these are adequate, correct

24   instructions.

25            MR. YALOWITZ:  I didn't have a problem with this

F2KTSOK1

instruction until I got a letter this morning saying that this

instruction means something different from what I thought we

all understood it meant.  So if the instruction means what I

thought it meant, which is that it fairly describes -- fairly

considered means they have to be an agent acting within the

scope of their authority or a supervisory employer or an

employee acting within the scope of their authority, then I

don't have a problem with this instruction.  If the instruction

means what Ms. Ferguson is now saying it means, then I think we

need to clear it up.  That's all I'm saying about that.

THE COURT:  Let's go past that.  We have ten jurors.

As soon as they get here, I will tell you what I'm going to do.

So just quickly, I don't need to you go through each

one of them, but just give me --

MR. YALOWITZ:  There are three items where I think we

have -- there are four items that I want to touch on briefly.

One is personnel.  I think the Court's instruction is

adequate on personnel.  I don't have a problem with the Court's

instruction.  We have discussed the provision of personnel

multiple times during the course of the trial, evidence came in

on that.  I don't think you need to change that at all.  If you

are going to change it, I would ask for a more fulsome

personnel description which I asked you for, and I just renew

that request.

On ratification, same thing, we discussed it multiple

F2KTSOK1

1    times.  I don't think that I was arguing for ratification.  I

2    think the evidence post-attack conduct goes clearly to the

3    scope of employment, history of the relationship as borne out

4    in actual practice, but if there's any concern about that, and

5    I think there is, based on this letter, then we need to renew

6    our request for a ratification charge.  So I'm doing that.

7         Same with alter ego.  I think the arguments we made

8    fairly went to the agency theory.  An agent can be another

9    entity.  I think the evidence clearly goes to agency.  But if

10   there is a problem with it, and there seems to be based on this

11   letter, we're renewing our request, number one, for alter ego,

12   and number two for that clarifying instruction by Judge Sand

13   which I asked for in my request number --

14        THE COURT:  What you're arguing -- you're arguing past

15   each other.  You're arguing to me -- they argued to me that

16   what you said is inconsistent with the law and inconsistent

17   with my jury instructions.  You want to argue that to me to,

18   the extent it's inconsistent with what I argued, you want me to

19   change the jury instructions to match what you argued.  That's

20   not the way it works.

21        MR. YALOWITZ:  Let me be clear, I don't think I made

22   any argument inconsistent with your jury instructions.  I was

23   very careful about that, very thoughtful about that.  I thought

24   about it in advance and executed on what I thought your jury

25   instructions charged.  They're now -- so I don't think you

F2KTSOK1

1   should give them any relief at all.  They now raised issues

2   that make me concerned that they're going to go to the circuit

3   and say that you committed error by --

4        THE COURT:  They didn't say that, they said you

5   committed error.  Whatever error they say I committed they say

6   I committed long before I wrote this.  So when I wrote this,

7   both sides said that, other than the other objections they

8   made, that this is a correct statement of the law.  It may not

9   have everything that you want in it, but there's very little

10  here that either side argued to me that is not a correct

11  statement of the law.

12       MR. YALOWITZ:  Let me be even clearer, I don't think

13  anything in this jury instruction is an incorrect statement of

14  law.  I don't think anything in this jury instruction is an

15  incorrect statement of law.  There are things that I think the

16  law and the evidence support.  I have been very clear about

17  what those are.  I asked you for those things.  To the extent

18  that they're put in play again by this letter, I'm renewing

19  those requests.

20       THE COURT:  Well, that's not the solution to their

21  complaint, so I'm rejecting that out of hand as a solution to

22  their complaint.  If you have any other argument that they have

23  an illegitimate complaint or that there is another solution to

24  the complaint in terms of what I should tell the jury, then I'm

25  willing to consider it.  But the solution is not for me to try

F2KTSOK1

to now fashion my instructions in a way that is more consistent
with the way you wanted to the argue.

          MR. YALOWITZ:  No, that's not what I'm saying.  I
think we're fine on that, we can move past it.  I don't think
anything in this letter is legitimate.  So let me be very clear
about that.  If there are concerns that you want to discuss
about particular things, then I will discuss them as long as
you would like.

          THE COURT:  The only thing -- well, let me tell you
where I am.  I don't think that the relief that they request
for the complaint that they complain of is the appropriate
action for me to take.  I think that the only thing that I
would consider doing for both sides, if the defense wishes that
I do it, is to add a further instruction that says both sides
have commented upon and expressed their view as to what the law
is and how the law should be applied.  You may obviously
consider their arguments, but you are to be guided by my
complete instructions on the law and not the lawyers' view of
what the law is and how you should apply it.

          If you want that instruction, I will give that
instruction, but I'm not going to comment on each one of the
arguments and now fashion an instruction commenting on each one
of the arguments that the plaintiff made to try to go behind
the plaintiff to try to say oh, the plaintiff misstated the law
on this issue.

F2KTSOK1

1            Quite frankly, I don't quite agree with the position

2    that the law was misstated.  At best they have an argument that

3    somehow you said something that might be misinterpreted, but as

4    I already instructed this jury and will continue to instruct

5    this jury, and if you want me to emphasize it in light of the

6    final arguments that the law only comes from the Court and

7    neither what the lawyers say is not fact or law, and they're

8    the judges of the facts, I am the sole Judge of the law.

9            So I will repeat for you this instruction, and I will

10   turn to the defense and ask whether or not they wish for me to

11   give that instruction.  If they say no, that is the end of it.

12   If they say yes, unless you have some strong objection to that

13   instruction, that's the instruction that I'm going to give the

14   jury to guide them, which is consistent with my instructions.

15   And this is no more unusual case than any other case where,

16   regardless of what the lawyers say in their argument, it is the

17   Judge's instructions on the law that the jury must follow.

18           And so I will say it one more time, both sides have

19   commented upon and expressed their view as to what the law is

20   and how the law should be applied.  You may obviously consider

21   their arguments, but you are to be guided by my complete

22   instructions on the law and not the lawyers' view of what the

23   law is and how you should apply it.

24           Does the defense want me to give that instruction?

25           MR. ROCHON:  So long as our other issues are deemed

F2KTSOK1

1   preserved, yes is the answer.

2          MR. YALOWITZ:  I have the same view as Mr. Rochon.

3          THE COURT:  Now with regard to the -- the only other

4   issue I am addressing is about the comment upon the missing

5   witness.

6          MR. ROCHON:  That's what I was going to stand up to

7   ask you to do.

8          THE COURT:  I'm inclined to give a missing witness

9   charge, a little bit modified, and in the form that I am giving

10  you from Sand, and the only words I add, unless otherwise

11  indicated.  That's what I propose to give in light of the

12  argument.  Does the defense want me to give that instruction?

13         MR. ROCHON:  Yes.

14         THE COURT:  Mr. Yalowitz?

15         MR. YALOWITZ:  I don't have a problem with that

16  instruction as regards to Tirawi, I do have a concern about

17  that instruction with regards to Nobani.

18         THE COURT:  Since I'm not mentioning either one of

19  those witnesses, it doesn't concern me.  That's why I don't do

20  it that way.  I don't marshal the evidence for the jury, you do

21  that.  You make whatever comments you wanted to make about

22  missing witnesses.  That's why I put otherwise indicated.

23         If you think it's indicated as to one and not

24  indicated as to the other, that's the instruction that applies

25  to it.  It's the facts of the case and it's not the argument

F2KTSOK1

1    about why they're not here that advances any argument, it is

2    what is the evidence or lack of evidence that is here before

3    this jury.

4         But you made the argument that there are missing

5    witnesses, so unless the jury sees that -- they see an

6    explanation that explains that or says that it's not -- you

7    didn't have an opportunity to present that witness, and I'm not

8    sure you presented any evidence that you didn't have an

9    opportunity to present any of these witnesses, but I'm giving

10   you this to at least let the jury make their own determination

11   in light of your argument.  But I'm not sure what else you want

12   me to say.

13         MR. YALOWITZ:  Look, I have a problem with this

14   instruction in the context of this case.  You have to be the

15   judge of this.  I have a problem with it.

16         THE COURT:  You made such an argument.  You made an

17   argument that there was a missing witness.

18         MR. YALOWITZ:  I made the argument there were a lot of

19   missing witnesses.  I don't deny that.

20         THE COURT:  Then I think the jury is entitled to some

21   instruction.  I think they're right, the jury is entitled to

22   some instruction with regard to whether or not how it should

23   play a part in their determination in this case.  And it

24   shouldn't play a part in their determination of this case

25   unless you convinced them that they have some witness who could

F2KTSOK1

1    have been helpful to them and that one would reasonably expect

2    that they would have called that witness instead of you.  They

3    can't assume that witness was going to be in your favor.  They

4    can't assume anything about what that witness is going to say.

5             MR. YALOWITZ:  Let me briefly set out my views on

6    this, very briefly.  And I think this needs to be your

7    decision, obviously.  But look, we had no witnesses from the

8    security forces, we had no witnesses who served with these

9    people, we had no witnesses who supervised these people, we had

10   no witnesses who said don't do this, and the absence of the

11   defendants' own employees from among their hundred thousand

12   employees is significant.

13            And with regard to --

14            THE COURT:  But that's not true.  It's the absence of

15   relevant testimony that is significant, it's not the absence of

16   the individuals.  So it is a legitimate argument for you to

17   make that no one came in and gave that testimony, it is

18   irrelevant that they didn't parade in a hundred people.

19            MR. YALOWITZ:  And let me just add that with regard to

20   the two individuals, I think I was very careful, I didn't say

21   they didn't call Tirawi and they should have.

22            THE COURT:  You certainly implied that.

23            MR. YALOWITZ:  I said he's such a free man, where is

24   he?

25            THE COURT:  Wow.  That's lawyer's semantics.  The jury

F2KTSOK1

1    got the point.  And that was the point that you wanted to make:

2    If this guy was going to deny, why wasn't he here to deny?

3         I'm not saying that is not a legitimate argument.

4    Obviously they didn't have such evidence to present, for

5    whatever reason, and you didn't have any interest or he didn't

6    have anything that was going to be helpful to you, so you

7    didn't call him.

8         Obviously if he was going to say yes, I was involved

9    in terrorism and I was the one that got the terrorist to do

10   this act, you would have called him, or you would have paraded

11   his deposition like you did anybody else.

12        So that's the best that I can do for you on this

13   issue.  You raised the issue, and as I say, I think they're

14   entitled to some instruction to guide them, and I think this is

15   the fairest way to address it at this point.

16        MR. YALOWITZ:  I would -- I disagree, but I respect

17   the Court's ruling on that.  We can move forward.

18        THE COURT:  All right.  Then let's move forward.

19        MR. YALOWITZ:  And I think you understand my position.

20        THE COURT:  Yes, thank you.  Let's get the jury and

21   let me charge the jury and let them begin their deliberations.

22            (Continued on next page)

23

24

25

F2KTSOK1                    Charge

1              (Jury present)

2              THE COURT:  Now ladies and gentlemen, you are about to

3      enter your final duty, which is to decide the fact issues in

4      the case.

5              Before you do that, it is my duty to instruct you on

6      the law.

7              I told you at the very start of the trial that your

8      principal function during the taking of testimony would be to

9      listen carefully and observe each witness who testified.  It

10     has been obvious to me and to counsel that you have faithfully

11     discharged this duty.  It is evident that you followed the

12     testimony with close attention.

13             I ask you to give me that same careful attention as I

14     instruct you on the law.

15             Now you have heard of all the evidence in the case, as

16     well as the final arguments of the lawyers for the parties.

17             It is your duty to accept these instructions of the

18     law and apply them to the facts as you determine them.

19             On these legal matters, you must take the law as I

20     give it to you.  Both sides have commented upon and expressed

21     their views to what the law is and how the law should be

22     applied.  You may obviously consider their arguments, but you

23     are to be guided by my complete instructions on the law and not

24     the lawyers' view of what the law is and how you should apply

25     it.  If any attorney has stated a legal principle different

F2KTSOK1                    Charge

from any that I state to you in my instructions, it is my instructions you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have about what the law may be or ought to be, it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

Your final role is to pass upon and decide the fact issues of the case. You, the members jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence, you determine the credibility of the witnesses, you resolve such conflicts as there may be in the testimony, and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

I shall later discuss with you how to pass upon the credibility or believability of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. In this connection, you should bear in mind that a question put to a witness is never evidence. It is only the answer which is

 1    evidence.  But you may not consider any answer that I directed

 2    you to disregard or that I directed be struck from the record.

 3    Do not consider such answers.

 4            At times a lawyer may have incorporated into a

 5    question a statement which assumed certain facts to be true and

 6    asked the witness if the statement was true.  If the witness

 7    denies the truth of a statement, and if there is no evidence in

 8    the record proving that the assumed fact is true, then you may

 9    not consider the fact to be true simply because it's contained

10    in the lawyer's question.

11            For example, if a witness was asked the question, "Do

12    you own a red automobile?" you would not be permitted to

13    consider as true the assumed fact that the witness owns an

14    automobile, unless the witness indicates that he or she owns an

15    automobile, or unless there is some other evidence in the

16    record that the witness owns an automobile.

17            In short, questions are not evidence, answers are.

18            Nor is anything I may have during the trial or may say

19    during these instructions to be taken in substitution for your

20    own independent recollection of the evidence.  What I say is

21    not evidence.  Anything you may have seen or heard about this

22    case outside of this courtroom is not evidence and must be

23    entirely disregarded.

24            The evidence before you consists of the answers given

25    by the witnesses, the sworn testimony they gave, as you recall

1    it, and the exhibits that were received in evidence, plus any

2    stipulations of the parties.  Remember a stipulation is an

3    agreement among the parties that a certain fact is true.  You

4    should regard such agreed-upon facts as true.  Exhibits which

5    have been marked for identification but not received in

6    evidence may not be considered by you as evidence.  Only those

7    exhibits admitted in evidence may be reviewed by you in the

8    jury room.

9              Since you are the sole and exclusive judges of the

10   facts, I do not mean to indicate any opinion as to the facts or

11   what your verdict should be.  The rulings I have made during

12   the trial are not in any indication of my views of what your

13   decision should be as to whether or not the plaintiffs have

14   proven their case.

15             You are expressly to understand that the Court has no

16   opinion as to the verdict you should render in this case.

17             As to the facts, ladies and gentlemen, you are the

18   exclusive judges.  You are to perform the duty of finding the

19   facts without bias or prejudice as to any party.  You should

20   consider the evidence in light of your common sense and

21   experience.

22             Some of the testimony before you is in the form of

23   depositions.  A deposition is simply a procedure where the

24   attorneys for each side may question a witness or an adversary

25   party under oath before a court stenographer prior to trial.

1    This is part of the pretrial discovery, and each side is

2    entitled to take depositions.  All plaintiffs and defendants

3    are given advance notice of the scheduled deposition of

4    witnesses and all parties are entitled to be present and their

5    lawyers are entitled to question the witness.  You may consider

6    the testimony of a witness given at a deposition according to

7    the same standards you would use to evaluate the testimony of a

8    witness given at trial.

9           Now it is the duty of the attorneys to object when the

10   other side offers testimony or other evidence which the

11   attorney believes is not properly admissible.  Counsel also

12   have the right and duty to ask the Court to make rulings of law

13   and to request conferences at the side bar out of the hearing

14   of the jury.  All those questions of law must be decided by me,

15   the Court.  You should not show any prejudice against an

16   attorney or a party because an attorney objected to the

17   admissibility of evidence or asked for a conference out of the

18   hearing of the jury or asked the Court for a ruling on the law.

19          As I already indicated, my rulings on the

20   admissibility of evidence do not indicate any opinion about the

21   weight or effect of the evidence.  You are the sole judges of

22   the credibility of all witnesses and the weight and effect of

23   all evidence.

24          Now in determining the facts, the jury is reminded

25   that before each member was accepted and sworn to act as a

F2KTSOK1                          Charge

1    juror, he or she was asked questions concerning competency,

2    qualifications, fairness and freedom from prejudice and bias.

3    On the faith of those answers, the juror was accepted by the

4    parties.  Therefore, those answers are as binding on each of

5    the jurors now as they were then and should remain so until the

6    jury is discharged from consideration of this case.

7              Now your verdict must be based solely upon the

8    evidence developed at trial or the lack of evidence.  It would

9    be improper for you to consider, in reaching your decision as

10   to whether the plaintiffs sustained their burden of proof, any

11   personal feelings you may have about any party's race,

12   religion, national origin, sex or age.

13             It would be equally improper for you to allow any

14   feelings you might have about the nature of the claims to

15   interfere with your decision-making process.

16             To repeat, your verdict must be based exclusively upon

17   the evidence or the lack of in the case.

18             Under your oath as jurors, you are not to be swayed by

19   sympathy.  You are to be guided solely by the evidence in this

20   case, and the crucial, hard-core question that you must ask

21   yourselves as you sift through the evidence is:  Have the

22   plaintiffs proven their case by a preponderance of the

23   evidence?

24             It is for you alone to decide whether the plaintiffs

25   have proven their case solely on the basis of the evidence and

F2KTSOK1                        Charge

1    subject to the law as I charge you.  It must be clear to you

2    that once you let fear or prejudice or bias or sympathy

3    interfere with your thinking, there is a risk that you would

4    not arrive at a true and just verdict.

5           Now there are two types of evidence which you may

6    properly use in reaching your verdict.  One type of evidence is

7    called direct evidence.  Direct evidence is where a witness

8    testifies to what he or she saw, heard or observed.  In other

9    words, when a witness testifies about what is known to him or

10   her of his or her own knowledge by virtue of his or her own

11   senses, what he or she sees, feels, touches or hears, then that

12   is called direct evidence.

13          Circumstantial evidence is evidence which tends to

14   prove a disputed fact by proof of other facts.  There is a

15   simple example of circumstance evidence which is often used in

16   this courthouse.

17          Assume that when you came into the courthouse this

18   morning the sun was shining and it was a nice day.  Assume that

19   the courtroom blinds were drawn and could you not look outside.

20          As you were sitting here, someone walked in with an

21   umbrella which was dripping wet.  Somebody else then walked in

22   with a raincoat, which was also dripping wet.

23          Now you cannot look outside of the courtroom and you

24   cannot see whether or not it is raining, so you have no direct

25   evidence of that fact.  But on the combination of facts which I

F2KTSOK1                          Charge

1    have just given you, it would be reasonable and logical for you

2    to conclude it had been raining.

3         That is all there is to circumstantial evidence.  You

4    infer on the basis of reason and experience and common sense

5    from one or more established facts the existence or the

6    non-existence of some other fact.

7         Circumstantial evidence is of no less value than

8    direct evidence, for it is a general rule that the law makes no

9    distinction between direct and circumstance evidence but simply

10   requires that your verdict must be based on a preponderance of

11   all of the evidence presented.

12        During the trial you may have heard the attorneys or

13   the Court use the term "inference," and in their arguments the

14   attorneys may have asked you to infer on the basis of your

15   reason and experience and common sense, from one or more

16   established facts, the existence of some other facts.

17        An inference is not a suspicious or a guess, it is a

18   reasoned, logical decision to conclude that a disputed fact

19   exists on the basis of another fact which you know exists.

20        There are times when different inferences may be drawn

21   from facts, whether proved by direct or circumstantial

22   evidence.  The plaintiffs ask you to draw one set of inferences

23   while the defendants ask you to draw another.  It is for you,

24   and you alone, to decide what inferences you will draw.

25        The process of drawing inferences from facts in

F2KTSOK1                    Charge

1    evidence is not a matter of guesswork or speculation.  An

2    inference is a deduction or a conclusion which you, the jury,

3    are permitted draw, but are not required to draw, from the

4    facts which have been established by either direct or

5    circumstance evidence.  In drawing inferences, you should

6    exercise your common sense.

7            So while you are considering the evidence presented to

8    you, you are permitted to draw, from the facts which you find

9    to be proven, such reasonable inferences as would be justified

10   in light of your experience.

11           You have heard evidence during the trial that

12   witnesses may have discussed the facts of the case and their

13   testimony with the lawyers before the witnesses appeared in

14   court.

15           Although you may consider that fact when you are

16   evaluating a witness's credibility, I should tell that you

17   there's nothing either unusual or improper about a witness

18   meeting with lawyers before testifying so that the witness can

19   be aware of the subjects he or she would be questioned about,

20   focus on those subjects, and have the opportunity to review

21   relevant exhibits before being questioned about them.  Such

22   consultation helps conserve your time and the Court's time.  In

23   fact, it would be unusual for a lawyer to call a witness

24   without such consultation.

25           Again, the weight you give to the fact or the nature

F2KTSOK1                        Charge

1   of the witness's preparation for his or her testimony, and what

2   inferences you draw from such preparation, are matters

3   completely within your discretion.

4          Now among the exhibits received in evidence were

5   photographs.  These photographs purport to depict various

6   locations, individuals, or objects relevant to the issues in

7   this case.  These photographs were received in evidence to

8   assist you in making your evaluation of the testimony relating

9   to the locations, scenes, individuals, or objects depicted

10  therein.

11         You are the sole judges of the accuracy of these

12  photographs, and you are the sole judges of the weight to be

13  given to such photographs.

14         The parties have also presented exhibits in the form

15  charts and summaries.  I decided to admit some of these charts

16  and summaries in place of or together with the underlying

17  documents that they represent in order to save time and avoid

18  unnecessary inconvenience.  You should consider the charts and

19  summaries admitted into evidence as you would any other

20  evidence.

21         Now you have heard testimony from expert witnesses.

22  An expert is allowed to express his or her opinion on those

23  matters about which he or she has special knowledge and

24  training.  Expert testimony is presented to you on the theory

25  that someone who is experienced in the field can assist you in

F2KTSOK1                     Charge

1    understanding the evidence or in reaching an independent

2    decision on the facts.  In weighing the expert's testimony, you

3    may consider the expert's qualifications, his or her opinions,

4    his or her reasons for testifying, as well as all of the other

5    considerations that ordinarily apply when you are deciding

6    whether or not to believe a witness's testimony.

7            You may give the expert testimony whatever weight, if

8    you any, you find it deserves in light of all the evidence in

9    this case.  You should not, however, accept an expert's opinion

10   testimony merely because he or she is an expert.  Nor should

11   you substitute it for your own reason, judgment, and common

12   sense.  The determination of the facts in this case rests

13   solely with you.

14           You have had an opportunity to observe all of the

15   witnesses.  It is now your job to decide how believable each

16   witness was in his or her testimony.  You are the sole judges

17   of the credibility of each witness and the importance of his or

18   her testimony.

19           It must be clear to you by now that you are being

20   called upon to resolve various factual issues.  You will now

21   have to decide the factual issues, and an important part of

22   that decision will involve making judgments about the testimony

23   of the witnesses you have listened to and observed.

24           In making those you judgments, you should carefully

25   scrutinize all of the testimony of each witness, the

F2KTSOK1                          Charge

1    circumstances under which each witness testified, and any other

2    matter in evidence which may help you to decide the truth and

3    the importance of each witness's testimony.

4           Your decision whether or not to believe a witness may

5    depend on how the witness impressed you.  Was the witness

6    candid, frank, and forthright, or did the witness seem as if he

7    or she was hiding something, being evasive or suspect in some

8    way.  How did the way the witness testified on direct

9    examination compare with the way the witness testified on

10   cross-examination?  Was the witness consistent in his or her

11   testimony or did he or she contradict himself or herself?  Did

12   the witness appear to know what he or she was talking about,

13   and did the witness strike you as someone who was trying to

14   report his or her knowledge accurately?

15          You do not have to accept the testimony of any

16   witness, even one who has not been contradicted or impeached,

17   if you find the witness not to be credible.  You have to decide

18   which witnesses to believe and what facts are true.  To do this

19   you must at look at all of the evidence, drawing upon your own

20   common sense and personal experience.

21          If a witness is shown knowingly to have testified

22   falsely concerning any material matter, you have a right to

23   mistrust such witness's testimony in other particulars, and you

24   may reject all of the testimony of that witness or give it such

25   credibility as you may think it deserves.  You may accept all,

F2KTSOK1                          Charge

1   part, or none of the witness' testimony.

2            Now how much you choose to believe a witness may be

3   influenced by the witness's bias.  Does the witness have a

4   relationship with the plaintiffs or the defendants which may

5   affect how he or she testified?  Does the witness have some

6   incentive, loyalty, or motive that might cause him or her to

7   shade the truth; or does the witness have some bias, prejudice,

8   or hostility that may have caused witness, consciously or not,

9   to give you something other than a completely accurate account

10  of the fact he or she testified to?

11           Even if the witness was impartial, you should consider

12  whether the witness had an opportunity to observe the facts he

13  or she testified about, and you should also consider the

14  witness's ability to express himself or herself.  Ask

15  yourselves whether the witness's recollection of the facts

16  stands up in light of all of the other evidence.

17           In other words, what you must try to do in deciding

18  credibility is to size up a person in light of his or her

19  demeanor, the explanations given, and in light of all of the

20  other evidence in the case, just as you would in any important

21  matter where you are trying to decide if a person is truthful,

22  straightforward, and accurate in his or her recollection.  In

23  deciding the question of credibility, remember that you should

24  use your common sense, your good judgment, and your experience.

25           You may have heard evidence that at some earlier time

F2KTSOK1                          Charge

a witness made a statement which counsel argues is inconsistent

with the witness's trial testimony.  Evidence of the prior

inconsistent statement was placed before you for the more

limited purpose of helping you decide whether to believe the

trial testimony of the witness who contradicted himself or

herself.  If you find that the witness made an earlier

statement that conflicts with his or her trial testimony, you

may consider that fact in deciding how much of that trial

testimony, if any, to believe.

        In making this determination, you may consider whether

the witness purposely made a false statement or whether it was

an innocence mistake.  Whether the inconsistency concerns an

important fact or whether it had to do with a small detail,

whether the witness had an explanation for the inconsistency,

and whether that explanation appealed to your common sense.

        It is exclusively your duty, based upon all the

evidence and your own good judgment, to determine whether the

prior statement was inconsistent, and if so, how much, if any,

weight to give the inconsistent statement in determining

whether to believe all or part of the witness's testimony.

        There are several persons whose names you heard during

the course of the trial but who did not appear here to testify,

and one or more of the attorneys referred to their absence from

the trial.  I instruct you that unless otherwise indicated,

each party had an equal opportunity or lack of opportunity to

1    call any of these witnesses.  Therefore, you should not draw

2    any inference or reach any conclusion as to what they would

3    have testified had they been called.  Their absence should not

4    affect your judgment.

5              Now ladies and gentlemen, this is a civil case, and as

6    such, the plaintiffs have the burden of proving the material

7    allegations of the complaint by a fair preponderance of the

8    evidence.  As it has been referred to, the plaintiffs have the

9    burden of proving each essential element of the claims by a

10   preponderance of the evidence.

11             If, after considering all of the evidence, you are

12   satisfied that the plaintiffs have carried their burden on each

13   point as to which plaintiff has the burden of proof, then you

14   must find for the plaintiffs on that claim.  If, after such

15   consideration, you find the evidence offered by both sides to

16   be in balance or equally probable, then the plaintiffs have

17   failed to sustain their burden, and you must find for the

18   defendants.

19             Each individual plaintiff has the burden of proving,

20   as I said, every disputed element of his or her claim to you by

21   a preponderance of the evidence.  If you conclude that the

22   plaintiff who bears the burden of proof has failed to establish

23   the claim by a preponderance of the evidence, you must decide

24   against that plaintiff on the issue you are considering.

25             What does a preponderance of the evidence mean?  To

F2KTSOK1                          Charge

1    establish a fact by a preponderance of the evidence means to

2    prove that the fact is more likely true than not true.  A

3    preponderance of the evidence means the greater weight of the

4    evidence.  It refers to the quality and persuasiveness of the

5    evidence, not to the number of witnesses or documents.  In

6    determining whether a claim has been proved by a preponderance

7    of the evidence, you may consider the relevant testimony of all

8    witnesses, regardless of who may have called them, and all the

9    relevant exhibits received in evidence, regardless of who may

10   have produced them.

11        If you find that the credible evidence on a given

12   issue is evenly divided between the parties, that it is equally

13   probable that one side is right as it is that the other side is

14   right, then you must decide that issue against that plaintiff.

15   That is because the party bearing this burden must prove more

16   than simple equality of the evidence, plaintiffs must prove the

17   element at issue by a preponderance of the evidence.  On the

18   other hand, plaintiffs need prove no more than a preponderance.

19   So long as you find that the scales tip, however slightly, in

20   favor of the plaintiff, that what the plaintiff claims is more

21   likely true than not true, then that element will have been

22   proved by a preponderance of the evidence.

23        Some of you may have heard of proof beyond a

24   reasonable doubt, which is the proper standard in a criminal

25   case.  That requirement does not apply to a civil case such as

F2KTSOK1                          Charge

1    this, and you should put that out of your mind.

2             In this trial each plaintiff claims that they were

3    injured by one of six separate terrorist attacks.  To establish

4    defendants' liability for any specific attack, plaintiffs must

5    prove the element of liability that I will explain to you with

6    regard to that specific attack.

7             Proof of liability relating to one terrorist attack

8    would not automatically constitute proof of liability relating

9    to any other attack.  You must consider each of the six attacks

10   separately.

11            Similarly, evidence that might be relevant to one

12   attack might or might not be relevant to others.  In

13   considering whether a particular item of evidence is relevant

14   to a particular attack, you should use your common sense.

15   Evidence of events or actions that occurred before or after a

16   particular terrorist attack may or may not be relevant to that

17   attack.

18            Now the evidence as to each defendant is also to be

19   considered individually, and you should render a separate

20   verdict as to each defendant with regard to each separate

21   attack.

22            Each defendant is entitled to your separate

23   consideration.  The question of whether liability has been

24   proven is personal to each defendant and must be decided by you

25   as to each defendant individually on each claim.

1          The law to be applied to the plaintiffs' claims is the

2     federal Anti-Terrorism Act, which you have heard referred to as

3     the ATA.  The ATA provides a remedy for U.S. citizens or their

4     heirs, survivors, or estates, who can prove that they suffered

5     injury to their person, property or business by reason of an

6     act of international terrorism.

7          Therefore, plaintiffs must prove the following

8     elements:

9          First, that the defendant, through its employees or

10     agents, committed an act of international terrorism within the

11     meaning of the statute;

12          Second, that the defendant acted knowingly;

13          Third, that U.S. citizens suffered injury to their

14     person, property or business, as a result of a terrorist

15     attack; and

16          Fourth, that the defendants' acts of international

17     terrorism caused these injuries.

18          The defendants may be found liable for a violation of

19     the ATA if plaintiffs have proven each of these elements by a

20     preponderance of the evidence.

21          Now a person acts knowingly, as I refer to the second

22     element, if he or she acts intentionally and voluntarily and

23     not because of ignorance, mistake, accident or carelessness.

24     Whether defendants acted knowingly may be proven by their

25     conduct or by all of the facts and circumstances surrounding

F2KTSOK1                         Charge

1    the case.

2           One way in which plaintiffs can prove that defendants

3    acted knowingly is by proving the defendants deliberately

4    closed their eyes to a fact that otherwise would have been

5    obvious to them.  In order to infer that the defendants

6    deliberately closed their eyes to a fact, you must find that

7    two things have been established:

8           First, that the defendants were aware of the high

9    probability of the fact in question;

10          Second, that the defendants consciously and

11   deliberately avoided learning of that fact.

12          That is to say, defendants willfully made themselves

13   blind to that fact.  It is entirely up to you to determine

14   whether the defendants deliberately closed their eyes to the

15   fact, and if so, what inference, if any, should be drawn.

16   However, it is important to bear in mind that mere negligence

17   or mistake in failing to learn the fact is not sufficient.

18   There must be a deliberate effort to remain ignorant.

19          Now the term "terrorism," as I used it, means

20   premeditated, politically motivated violence against

21   noncombatant targets by subnational groups or clandestine

22   agents.

23          Under the ATA, the term "international terrorism"

24   means activities that:

25          First, involve violent acts or acts dangerous to human

F2KTSOK1                          Charge

1   life;

2            Second, are a violation of a violation of the criminal

3   laws of the United States or of any state, or that would be a

4   criminal violation if committed within the jurisdiction of the

5   United States, or of any state;

6            Third, appear to be intended to intimidate or coerce a

7   civilian population, influence the policy of a government by

8   intimidation or coercion, or affect the conduct of a government

9   by mass destruction, assassination, or kidnapping; and

10           Fourth, occur primarily outside of the territorial

11  jurisdiction of the United States, or transcend national

12  boundaries in terms of the means by which they are

13  accomplished, the persons they appear intended to intimidate or

14  coerce, or the locale in which their perpetrators operate or

15  seek asylum.

16           Therefore, to prove that defendants committed acts of

17  international terrorism, plaintiffs must prove that the

18  defendants' conduct violated, as I say, criminal laws of the

19  United States.

20           Plaintiffs allege that the PA and the PLO committed

21  crimes that would be illegal if committed in the United States,

22  including murder, attempted murder, and criminal assault.

23           Murder is the unlawful intentional killing of a human

24  being.

25           Attempted murder.  A person is guilty of attempted

F2KTSOK1                        Charge

1    murder if he or she intended to commit the crime of murder, and

2    caused physical injury by some act that was a substantial step

3    in an effort to bring about or accomplish the crime of murder.

4              (Continued on next page)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

F2K8SOK2                    Charge

1          THE COURT:  A person is guilty of the crime of

2     criminal assault when, with the intent to cause serious

3     physical injury to another person, he or she causes such injury

4     to that person or another person.

5          For purposes of the ATA, intent means conscious

6     objective or purpose.  It is not required that the person who

7     is injured be the same person who was intended to be injured.

8          Therefore, I instruct you as a matter of law, if you

9     find that the plaintiffs have proved by a preponderance of the

10    evidence that the PA or the PLO committed murder, attempted

11    murder or criminal assault, intending to intimidate or coerce a

12    civilian population, or influence the policy of a government by

13    intimidation or coercion, then you must find that the

14    plaintiffs have proved that the PA or PLO committed an act of

15    international terrorism.

16         Plaintiffs also allege that defendants, through their

17    agents or employees, violated certain other provisions of the

18    ATA, namely:  Harboring a terrorist, providing material support

19    for terrorist acts, and supporting a foreign terrorist

20    organization.  A violation of any one of those statutory

21    provisions is itself an act of international terrorism.

22         Therefore, I instruct you as a matter of law, if you

23    find that plaintiffs have proved by a preponderance of the

24    evidence that the PA or the PLO violated any of these statutes

25    you must find that the plaintiffs have proved the defendant

1    committed an act of international terrorism.

2            Plaintiffs allege that the defendants violated the ATA

3    by providing material support or resources knowing or intending

4    that they were to be used in preparation for, or in carrying

5    out a conspiracy to murder or maim persons.  After June 25,

6    2002, it also became a violation of the ATA to provide material

7    support or resources for a bombing of a public place with

8    intent to cause death or serious physical injury.

9            "Material support or resources" means currency or

10   monetary instruments or financial securities, financial

11   services, lodging, training, expert advice or assistance, safe

12   houses, false documentation or identification, communications

13   equipment, facilities, weapons, lethal substances, explosives,

14   personnel, and transportation, except medicine or religious

15   materials.

16           You need not find that a person for whose conduct a

17   defendant is liable intended that a specific crime or terror

18   attack be carried out.  Rather, you may find that a defendant

19   had the requisite intent if a person for whose conduct a

20   defendant is liable knew that the entities or individuals to

21   whom they provided material support or resources were engaged

22   in terrorist activities, or that the support could be used to

23   carry out a terrorist act.

24           Thus, if you find that a person for whose conduct a

25   defendant is liable acted with the required intent and provided

F2K8SOK2                         Charge

1   material support or resources so that a person could carry out

2   a bombing of a public place or a conspiracy to commit murder,

3   you will have found that plaintiffs have proved that the

4   defendant is liable for providing material support for the

5   terrorist act that resulted.

6           Plaintiffs also allege that defendants violated a

7   separate provision of the ATA by knowingly providing material

8   support to a foreign terrorist organization.  To prove this

9   portion of their claim, plaintiffs must establish the following

10  elements by a preponderance of the evidence:

11          First, that the defendants provided material support

12  or resources as I have already instructed you.

13          Second, that the defendants provided this support or

14  these resources to a foreign terrorist organization,

15  specifically, as you heard, Hamas or the AAMB, Al Aqsa Martyrs

16  Brigade.

17          I instruct you as a matter of law that Hamas has been

18  designated a foreign terrorist organization by the United

19  States Secretary of State, and was so designated by the

20  secretary on October 8, 1997.  I instruct you as a matter of

21  law that the AAMB has been designated a foreign terrorist

22  organization by the United States Secretary of State, and was

23  so designated by the secretary on March 27, 2002.

24          Consequently, if you find by a preponderance of the

25  evidence that the defendants provided any of the types of

material support or resources I described to the AAMB or Hamas,
or furnished to any person acting on behalf of the amount AAMB
or Hamas, after Hamas or the AAMB were designated foreign
terrorist organizations, plaintiffs' burden with respect to
this element has been met.

You should find that defendants provided material
support or resources to the AAMB or Hamas if you find that the
defendants provided support or resources to a person or entity
who was operating under the AAMB's or Hamas's direction or
control or if that person or entity was organizing, managing,
supervising, or otherwise directing the operation of the AAMB's
or Hamas's personnel or resources.  Conversely, if plaintiffs
do not prove that the defendants provided support or resources
to a person or entity who was operating under the AAMB's or
Hamas's personnel or resources, then you should find the
defendants did not violate the ATA by providing material
support or resources to a foreign terrorist organization.

Third, that in providing material support or resources
to a foreign terrorist organization the defendants did so
knowingly.  I previously explained to you the definition of
"knowingly," and you will follow those instructions here.  For
this element to be satisfied, plaintiffs must prove by a
preponderance of the evidence that the defendants knew that
they were providing material support to the AAMB or Hamas, and
that defendants also knew that the AAMB or Hamas had been

designated by the Secretary of State as a foreign terrorist

organization, or during a time after such designation, the

defendant knew that the AAMB or Hamas engaged in terrorist

activity or terrorism.

         I have already explained to you that the AAMB and

Hamas were, as of certain dates, designated foreign terrorist

organizations by the U.S. Secretary of State.  If you find that

the defendants provided material support to the AAMB or Hamas

after defendants knew that the AAMB or Hamas were designated

foreign terrorist organizations, plaintiffs' burden with

respect to this element is met.

         Alternatively, if you find that defendants provided

material support to the AAMB or Hamas, and knew that the AAMB

or Hamas engaged in terrorist activity, or terrorism,

plaintiffs' burden with respect to this element is met.  The

term "terrorist activity" includes the use of any explosive,

firearm, or other weapon or dangerous device, other than for

monetary gain and with the intent to endanger the safety of one

or more individuals or to cause substantial damage to property.

         If all of these elements are met, you may find the

defendants liable for providing material support to a foreign

terrorist organization.

         Plaintiffs separately allege that the defendants

violated the ATA by harboring or concealing a person who they

knew, or had reasonable grounds to believe, committed or was

F2K8SOK2                         Charge

about to commit an act of international terrorism that injured

a plaintiff in this case.

        To "harbor or conceal" means to do any physical act

that provides assistance -- including food, shelter, or other

assistance -- to aid another in avoiding detection or

apprehension.

        In order to prove that a defendant is liable for a

particular claim under the ATA, plaintiffs must demonstrate the

involvement of a senior official or other person having duties

of such responsibility that his or her conduct may fairly be

considered to represent the PLO or PA.

        Now, with regard to both the PA and the PLO,

plaintiffs contend that each is directly liable for the acts of

its agents who committed terrorist acts or provided material

support on the PA and PLO's behalf.  Entities like the PA and

the PLO can act only through their agents -- that is, their

employees, officers or other authorized representatives.  An

individual person need not be an employee of the entity in

order to be an agent.  And, while an agent may be an individual

person, it may also be another entity.  In order to find that

the act of an agent was binding on the entity, you must find

that the agent had authority to act in the manner in which he

or she is alleged to have acted.

        The authority of an agent to act may be express,

apparent or inherent.

1          Express authority is created by the direct verbal or

2     written giving of that authority by the entity to its agent.

3     For example, express authority to perform certain duties may be

4     a specific direction or part of an employee's written or verbal

5     contract.

6          Apparent authority, on the other hand, is the

7     authority which a principal by reason of its acts and conduct

8     leads a third person reasonably to believe that its agent

9     possesses.  Apparent authority can be created by appointing a

10    person to a position, such as manager or other position, which

11    carries generally recognized duties.  In other words, apparent

12    authority may be based on a holding out to the world of the

13    agent, in his particular position, by the entity, to third

14    parties who deal with this agent.  Knowing of his position, the

15    agent has apparent authority to do all those things ordinarily

16    done by someone in that position, regardless of any unknown

17    limitations which are imposed on the particular agent.

18         In such circumstances, the entity is responsible to

19    third parties, who are unaware of any lack of authority to the

20    same extent as if the power to act had been directly conferred.

21    Therefore, if you find upon all the facts and circumstances of

22    the particular case that the defendant has, by reason of words

23    or conduct, given the appearance of the agent's authority to

24    act on its behalf, then the defendant is responsible for such

25    acts of its agent as if the defendant itself committed the

F2K8SOK2                    Charge

1    acts.

2            There are also situations in which an agent has

3    inherent authority to act for the defendant, even when the

4    defendant has not granted the agent either the express or

5    apparent authority to act on its behalf.  This inherent

6    authority may exist, provided the acts in question are within

7    the scope of the agency, even though the acts may be criminal

8    or tortious.  For example, an act is within the scope of an

9    agent's inherent authority if it is sufficiently related to the

10   kind of act that the agent was employed to perform, if it was

11   done substantially within the time and space limits of the job,

12   and was actuated, at least in part, by a purpose to serve the

13   entity.

14           Therefore, if you find that the agent acted with

15   express, apparent or inherent authority to act on behalf of the

16   PA or PLO, you may find that the PA or PLO were responsible for

17   his or her conduct.

18           Now, as to the PA, plaintiffs also contend that the PA

19   is liable as an employer for the acts of its employees that

20   were committed within the scope of their employment.

21           An employer is responsible for the act of its employee

22   if the act is in furtherance of the employer's activities and

23   is within the scope of the employee's authority.  An act is

24   within the scope of an employee's authority if it is performed

25   while the employee is engaged generally in the performance of

F2K8SOK2                         Charge

1    his or her assigned duties or if the act is reasonably

2    necessary or incidental to the employment.  The employer need

3    not have authorized the specific act in question.

4           Among the factors you may consider in deciding whether

5    an employee was acting within the furtherance of the PA's

6    activities and within the scope of his authority, you may

7    include the connection between the time, place and occasion for

8    the act; the history of the relationship between the PA and its

9    employee as spelled out in actual practice; whether the act is

10   one commonly done by such an employee; the extent of the

11   departure from normal methods of performance and whether the

12   specific act was one that the PA could reasonably have

13   anticipated.  If you find that the employee caused the injury

14   to the plaintiff while acting within the scope of his authority

15   and in furtherance of the PA's activities, then the PA is

16   legally responsible for its employee's conduct.

17          Even though you find that the PA as the employer

18   specifically instructed the employee not to perform the

19   shootings or bombings that are at issue in this case, if you

20   find that it was done in furtherance of the employer's

21   activities and was reasonably foreseeable by the employer, you

22   may find that it was within the scope of the employee's

23   authority.

24          It is not sufficient that the employee was simply

25   engaged in the employer's service at the time of the incident

1   giving rise to the action.  The test is whether the employee's

2   act was in furtherance of the employer's activities and was

3   incidental to the performance of duties entrusted to the

4   employee.  Where the employee's act was committed solely for

5   personal ends, rather than in furtherance of the employer's

6   interest, the employer will not be held liable.

7          In order to recover damages, plaintiffs must

8   demonstrate that they suffered physical, mental, emotional, or

9   financial injury as a result of defendants' act of

10  international terrorism.  In this case, plaintiffs' injuries

11  can include any invasion of a personal right, including

12  emotional or mental suffering, in addition to physical or

13  financial suffering.  As such, family members of victims and

14  decedents, for example, can suffer mental anguish and emotional

15  pain and suffering.

16         Note that injury differs from damages, which are the

17  means of measuring the injury in dollars and cents.  The

18  plaintiffs meet their burden of showing damages if they show

19  some injury caused by the unlawful activities complained of.

20  Injury beyond this minimum showing goes only to the amount of

21  damages and not to the question of injury.

22         Plaintiffs must prove that they were injured because

23  of the defendants' unlawful activity.  To show this, plaintiffs

24  must show, first, that the unlawful conduct played a

25  substantial part in bringing about or causing their injuries,

F2K8SOK2                      Charge

and, second, that the injuries were either a direct result of

the unlawful activity, or at least a predictable consequence of

it.

There may, of course, be a number of causes for a

particular injury.  The plaintiffs do not have to prove that

unlawful activity of the defendant was the sole cause of their

injuries.  The plaintiffs meet their burden if they show that

unlawful activity of the defendant substantially contributed to

their injury, even though other factors may also have

contributed significantly.  The plaintiffs are not required to

show that such acts were a greater cause of their injuries than

other factors.

Now, my charge to you on the law of damages must not

be taken as a suggestion that you should find for any

plaintiff.  It is for you to decide on the evidence presented

and the rules of law I have given you whether a plaintiff is

entitled to recover from defendant PA or defendant PLO.  If you

decide that the plaintiffs are not entitled to recover from

either of the defendants, you need not consider damages.  Only

if you decide that a plaintiff is entitled to recover will you

consider his or her measure of damages.

Now, if you find that a plaintiff is entitled to

recover from defendant PA and/or defendant PLO, you must render

a verdict in a sum of money that will justly and fairly

compensate that plaintiff for all injuries and disabilities he

F2K8SOK2                    Charge

1    or she sustained from the terrorist attack.

2              The purpose of the law of damages is to award, as far

3    as possible, just and fair compensation for the loss, if any,

4    which resulted from a defendant's violation of a plaintiff's

5    rights.  If you find that defendant PA and/or defendant PLO is

6    liable to a plaintiff, then you must award that plaintiff a sum

7    of money that will justly and fairly compensate him or her for

8    any injury proximately caused by either defendant's conduct.

9              These are known as compensatory damages.  Compensatory

10   damages seek to make the plaintiff whole -- that is, to

11   compensate him or her for the damage suffered.

12             Compensatory damages are not limited merely to

13   expenses that plaintiff may have borne.  A prevailing plaintiff

14   is entitled to compensatory damages for past and future lost

15   earnings, and for the physical injury, pain and suffering,

16   mental anguish, shock and discomfort, and loss of love and

17   companionship that he or she has suffered because of a

18   defendant's conduct.

19             I remind you that you may award compensatory damages

20   only for injuries that a plaintiff proves were proximately

21   caused by a defendant's wrongful conduct.  Any damages that you

22   award must be fair and reasonable, neither inadequate nor

23   excessive.  You should not award compensatory damages for

24   speculative injuries, but only for those injuries that a

25   plaintiff has actually suffered or which he or she is

1    reasonably likely to suffer in the near future.

2            The fact that a plaintiff may already have a physical

3    or mental condition that makes him or her more susceptible to

4    injury than a normal healthy person does not relieve the

5    defendant of liability for all injuries sustained as a result

6    of defendant's actions.  The defendant is liable for the

7    injuries it caused even though those injuries are greater than

8    what would have been sustained by a normal healthy person under

9    the same circumstances.

10            During his closing remarks, counsel for plaintiffs

11    suggested a specific dollar amount to be awarded to plaintiffs.

12    An attorney is permitted to make suggestions as to the amount

13    that should be awarded, but those suggestions are argument only

14    and not evidence and should not be considered by you as

15    evidence of plaintiffs' damages.  The determination of damages

16    is solely for you, the jury, to decide.

17            In awarding compensatory damages, if you decide to

18    award them, you must be guided by dispassionate common sense.

19    Computing damages may be difficult, but you must not let that

20    difficulty lead you to engage in arbitrary guesswork.  On the

21    other hand, the law does not require a plaintiff to prove the

22    amount of his or her losses with mathematical precision, but

23    only with as much definiteness and accuracy as the

24    circumstances permit.

25            In all instances, you are to use sound discretion in

1    fixing any award of damages, drawing reasonable inferences

2    where you deem appropriate from the facts and circumstances in

3    evidence.

4              Ladies and gentlemen, I am going to give you a verdict

5    form, and this verdict form has the questions that you need to

6    answer.  The first half of this verdict form has to do with the

7    liability and questions about liability, and you should answer

8    those questions yes or no, depending on your determination with

9    regard to those questions.

10             As has already been indicated, basically, the

11   questions fall into categories of:  Did the plaintiffs prove by

12   a preponderance of the evidence that the defendant is liable

13   for a particular attack because the defendant knowingly

14   provided material support or resources that were used in

15   preparation for or in carrying out that attack?

16             A question with regard to the employer/employee

17   liability as the parties have argued about:  If the plaintiffs

18   prove by the preponderance of the evidence that the defendant

19   PA is liable for the attack because an employee of the PA,

20   acting within the scope of his employment, and in furtherance

21   of the activities of the PA, either carried out or normally

22   provided material support or resources that were used in

23   preparation for or in carrying out the attack.

24             Then, as to certain of the attacks, there is a

25   specific question about providing material support to a

1    designated foreign terrorist organization.  For example, one of

2    the questions would be:  Did plaintiffs prove by a

3    preponderance of the evidence that the defendant is liable for

4    the attack because that defendant, the PLO or PA, knowingly

5    provided to the Al Aqsa Martyrs Brigade, after its designation

6    as a foreign terrorist organization, material support or

7    resources that were used in preparation for or in carrying out

8    the attack?

9         A similar question with regard to Hamas with regard to

10   the attack on the Hebrew University in which it is attributed

11   to Hamas.

12        The other type of question as to one incident, as it

13   was explained to you, is the question having to do with

14   harboring a person, and the question is:  Did the plaintiffs

15   prove by a preponderance of the evidence that defendant is

16   liable for the attack because the defendant harbored or

17   concealed a person who they knew or had reason to believe

18   committed or was about to commit a particular attack?

19        Now, the way I have it organized, the questions are on

20   each separate attack.  You will see we start in chronological

21   order.  It starts with the January 22, 2002 Jaffa Road

22   shooting, and then there are three questions that are relevant

23   to that attack under liability.  Then the second one goes to

24   the January 22, 2002 Jaffa Road bombing, and there are three

25   questions relevant to that attack.  And then it goes on to each

F2K8SOK2                      Charge

of the other attacks in chronological order.

            After you get through the questions on liability, you
will see a page in between liability and damages, and this page
basically says, if you answered yes in response to at least one
previous question about the liability, please proceed to answer
the related damages question, beginning on page 10.

            If you answered no in response to every previous
question, you said no, there is no liability as to any of those
questions, you should proceed no further.  Obviously, if you
find no liability as to any of the questions, there is no
reason for you to consider damages.  You only consider damages
if you find that the PA and/or PLO are liable to one or more
plaintiffs.

            Then if you go to the damages, basically the question
is organized the same way, it's under damages, organized by
incident.  I have laid out specific questions as to each
plaintiff, and the specific question is:  What amount of
damages, if any, do you award as compensation for plaintiff's
injuries that you determine were caused by the terrorist
attack?

            Then there will be a space that you will put a dollar
amount and you just put a dollar amount, if you get to those
applicable questions, if you find liability as to that
particular plaintiff.  Each plaintiff is organized under each
attack and the questions are asked on each attack.

1          Ladies and gentlemen, the last page, your foreperson

2     should make sure all of the questions that are appropriate to

3     answer are answered and that it is dated and it is signed by

4     your foreperson.  Then you will bring that out with you.  You

5     just hang on to it, and you just tell us that you have reached

6     a verdict, and then we will bring you out and we will take the

7     verdict from the foreperson.  We will ask the questions here in

8     open court and we will take your verdict.

9          You are about to retire to decide this case.  In order

10    to prevail, as I indicated, the plaintiffs must sustain their

11    burden of proof as I have explained it to you with respect to

12    each element of their claims.  If you find that the plaintiff

13    has succeeded, you should return a verdict in the plaintiffs'

14    favor on that claim.  If you find that the plaintiff has failed

15    to sustain the burden on any element of the claim, you should

16    return a verdict against the plaintiff in defendants' favor.

17         It is your duty as jurors to consult with one another

18    and to deliberate with a view to reaching an agreement.  Each

19    of you must decide the case for yourself, but you must do so

20    only after a consideration of the case with your fellow jurors,

21    and you should not hesitate to change an opinion when convinced

22    that it is erroneous.  Your verdict must be unanimous.  But you

23    are not bound to surrender your honest convictions concerning

24    the effect or weight of the evidence for the mere purpose of

25    returning a verdict or solely because of the opinion of other

F2K8SOK2                          Charge

1   jurors.  Discuss and weigh your respective opinions

2   dispassionately, without regard to sympathy, without regard to

3   prejudice or favor for either side, and adopt that conclusion

4   which in your good conscience appears to be in accordance with

5   the truth.

6           Again, each of you must make your own decision about

7   the proper outcome of this case based on your consideration of

8   the evidence and your discussions with your fellow jurors.  No

9   juror should surrender his or her conscientious beliefs solely

10  for the purpose of returning a unanimous verdict.

11          You are about to go into the jury room and begin your

12  deliberations.  If during those deliberations you want to see

13  any of the exhibits, you may request that they be brought into

14  the jury room.  If you want any of the testimony reread, you

15  may also request that.  Please remember that it is not always

16  easy to locate what you might want, so be as specific as you

17  possibly can in requesting exhibits or in requesting any

18  testimony that you might want from witnesses.

19          You can ask for all of the witness's testimony.  You

20  can ask for direct or cross.  You can ask for their testimony

21  on a certain subject.  Be as specific as you can about what you

22  are interested in.  We have the court reporter who has a daily

23  transcript.  We can isolate it and we will bring you back in in

24  open court and have it read to you.

25          Your requests for exhibits or testimony -- in fact,

1   any communication with this Court -- should be made to me in

2   writing, signed by your foreperson, and given to one of the

3   marshals outside your door.  In any event, do not tell me or

4   anyone else how the jury stands on any issue until after a

5   unanimous verdict is reached.

6           When you retire, you should elect one member of the

7   jury as your foreperson.  That person will preside over the

8   deliberations, write any notes to the Court, and speak for you

9   here in open court and render your verdict.

10          After you have reached a verdict, as I said, your

11   foreperson will fill out the verdict form that has been given

12   to you, sign and date it, and will advise the marshal outside

13   your door that you are ready to return to the courtroom.  You

14   will just write me a separate note saying, We have reached a

15   verdict.  When I see that note and that note is handed to me,

16   we will have you come out with the verdict form, and we will

17   take the verdict from you in open court and hear your verdict

18   for the first time when we hear it here in open court.

19          I will stress that each of you should be in agreement

20   with the verdict which is announced in court.  Once your

21   verdict is announced by your foreperson in open court and

22   officially recorded, it cannot ordinarily be revoke.

23          Can you swear in the marshal?

24          (Marshal sworn)

25          THE COURT:  Mr. Yalowitz, can I send the jury in to

1     begin their deliberations?

2              MR. YALOWITZ:  Yes, sir.

3              THE COURT:  Mr. Rochon.

4              MR. ROCHON:  Yes, sir.

5              THE COURT:  Ladies and gentlemen, you may now retire

6     to begin your deliberations.

7              I have ordered your lunch for about 12:30.  You can

8     continue to deliberate or you can suspend while you eat your

9     lunch and then continue.  However you wish to do it.

10             (At 11:00 a.m., the jury retired to deliberate)

11             THE COURT:  Anything for the record?

12             MR. ROCHON:  Only one thing.  If they were to ask for

13    the instructions on respondeat superior, I think in the last

14    sentence there might have been an interest -- you said

15    interest.  I don't know if your written version says interest

16    instead of activities.

17             THE COURT:  I said interest?

18             Which page?

19             MR. ROCHON:  On page 56.  The Court may have just

20    inadvertently misspoken, or maybe your draft still had an

21    interest.  Ours says activities.

22             It's the very last line on page 56.  Where it says

23    "rather than in furtherance of the employer's activities."

24             THE COURT:  It does say activities.  You think I said

25    interest?

F2K8SOK2

1          MR. ROCHON:  I know you did.

2          THE COURT:  I'm sorry.

3          MR. ROCHON:  Let me be very clear.  It's not an issue.

4   I am sure the jury didn't pay attention.

5          THE COURT:  I apologize.  Mine says activities.  If I

6   said interest, I misspoke.

7          MR. ROCHON:  Like I said, it's not an issue for us.

8          THE COURT:  As I said, if you agree and they want some

9   or all of the jury instructions, I will sanitize it -- as a

10  matter of fact, in that sense, I won't use the transcript.  I

11  will sanitize the written instructions without the headings and

12  we will give it as it's written.

13         MR. ROCHON:  We never mentioned this before, but we

14  have no problem with the jury getting the instructions in any

15  event.

16         THE COURT:  Do you have a position at this point one

17  way or the other, Mr. Yalowitz?

18         MR. YALOWITZ:  On whether the written instructions

19  should go back to the jury?

20         THE COURT:  If they request it.

21         MR. YALOWITZ:  I would want to reflect on that.  I

22  don't have a strong feeling about it, but I kind of like the

23  way you do it.

24         THE COURT:  As I say, you might want to hang around

25  for about 10, 15 minutes in case they right away might ask for

F2K8SOK2

1    some or all of the exhibits.  Then, as I said, just be close

2    enough so you can be back here in about ten minutes if we get a

3    note, and we will call you as soon as we get any request.

4            MR. ROCHON:  At the end of the day, I forgot what you

5    said you do.  Do you just let them go without us coming back?

6            THE COURT:  No.  I do not adjourn for the day unless

7    we are all in court, and I will speak to them and tell them

8    that we are adjourned for the day.

9            MR. ROCHON:  So you bring them in?

10           THE COURT:  Yes, I bring them in.  I will bring all

11   the parties in.

12           (Recess pending verdict)

13           (In open court; jury not present)

14           THE COURT:  We have a note.  I think everybody has

15   looked at it.  With regard to the first two items that they

16   asked for, I understand you agreed on what they requested and

17   we can send that in.

18           With regard to the deposition of Hussein Al-Sheikh, it

19   says video or transcript, I wasn't quite sure, you have to

20   remind me of what we have and what your suggestion is.

21           MR. YALOWITZ:  As you may recall, on plaintiffs' case,

22   we had a reader read the deposition of Al-Sheikh, as well as a

23   couple of others.  I don't think it was more than 20 minutes.

24   Less than that.

25           THE COURT:  Is the video of the same deposition?

F2K8SOK2

1              MR. YALOWITZ:  Then the video is of the same

2      deposition, but we didn't play the video.  But then on

3      defendants' case in chief, they played the video, which I

4      didn't like it as much.  There is translation.  It's hard to

5      hear.

6              THE COURT:  Do we have a transcript of both?

7              MR. YALOWITZ:  Yes.

8              MR. ROCHON:  There is a transcript of the video, yes.

9      There is a transcript of the deposition.

10             THE COURT:  What is your preference, to have them hear

11     it in open court or to give them the transcript of both?

12             MR. ROCHON:  My position would normally be to have the

13     video played.  But since I don't have it ready, I'd rather do

14     whatever is going to get this to the jury most efficiently.  We

15     would have to go through the transcript and redact it.

16             The video was put together from different portions.

17     The easiest way to do it would be to play the video.  We have a

18     link to it that we are trying to download.  The IT will be here

19     ready to play it in 15 minutes.  Maybe we can do it before

20     lunch.  I don't mind giving them the two binders now and tell

21     them we will get the depositions right after lunch.

22             THE COURT:  For now let's go ahead and hand them the

23     binders.  If you have agreed with regard to the first two

24     notes, let's give that to the marshal and have the CSO give

25     that to them.  Then let's keep working on this.

3915
F2K8SOK2

1          These are just two binders at this point?

2          MR. ROCHON:  Yes, it is.

3          THE COURT:  So let's have them have that.  They can

4    work with that while we further resolve this.

5          MR. YALOWITZ:  We will hand the binders to Mr. White.

6          THE COURT:  What did you want to do with the

7    transcript?

8          MR. ROCHON:  I think the easiest thing from our

9    standpoint would be, we have the daily copy of the transcript,

10   just give them the transcript that was read in.  Then as to the

11   video, play them the same thing they saw.

12         THE COURT:  How long is the video?

13         MR. ROCHON:  40 minutes.

14         THE COURT:  We could do that.

15         MR. ROCHON:  I am OK with us getting a transcript of

16   what was played, but that would take a little bit longer to get

17   it to them than playing of the video for 40 minutes.

18         MR. YALOWITZ:  I think, quite frankly, if the Court is

19   comfortable getting a transcript put together, and the parties

20   can agree on it, I don't have a problem with it.  As long as

21   the parties agree that they are giving the correct transcript,

22   and I think it is easier with the plaintiffs' piece because all

23   we need to do is take those pages and hand them.

24         THE COURT:  How many pages of transcript do you have

25   of the written transcript?

F2K8SOK2

1              MR. YALOWITZ:  You ask hard questions.

2              MR. ROCHON:  I think it will take longer than playing

3      the video, because putting the transcript together --

4              THE COURT:  If we had everything ready right now, what

5      I would say we would do is that I would give the transcript to

6      the court reporter, have the court reporter read the

7      transcript, play the video, and send them back in.

8              MR. YALOWITZ:  I think, quite frankly, it's going to

9      take more of their time.  I would rather let them deliberate

10     and deliver the transcripts.  We can give them promptly one

11     piece of it, and we can give them reasonably promptly the

12     other.  We can wait and give them both at the same time.

13             THE COURT:  How quickly can we get this into a

14     transcript?

15             MR. ROCHON:  That would take a few hours.

16             MR. YALOWITZ:  I don't think it would take a few

17     hours.

18             THE COURT:  You don't have a transcript?

19             MR. ROCHON:  We have a transcript of the deposition,

20     obviously, but we don't have a separate transcript of the

21     portions read, and they were so interspersed in a much longer

22     transcript, that putting it together, we don't want to send

23     them a redacted transcript.  I actually think the fastest way

24     to get them this information -- we can play this by 12:45.

25             THE COURT:  If that's the only thing that's going to

F2K8SOK2

1    save us time, then what we will do is we will have to bring

2    them out, play the video, and then we can give them the

3    transcript.

4              MR. YALOWITZ:  Quite frankly, I think it will be much

5    more efficient to give them the transcript.

6              THE COURT:  I agree, but we don't have it.

7              MR. YALOWITZ:  We could put it together.  I don't

8    think it's going to take us hours to put it together.

9              THE COURT:  If you can put it together before we get

10   their tech person, then we will do it.

11             Also, remember, you're getting up against their lunch

12   time.  Their lunch is going to be here at 12:30.

13             MR. YALOWITZ:  I'd rather give them the transcript now

14   of the part that we can give them.

15             THE COURT:  If you want to agree to that, that's fine.

16             MR. ROCHON:  I can't agree because they have asked for

17   Hussein Al-Sheikh so to give them the plaintiffs' portion

18   separately.

19             THE COURT:  I assume that that would be your position.

20   So unless you guys can jointly come up with another solution,

21   we will have to either play the video, if we can't get the

22   transcript put together in the next 20 minutes, and then we

23   will have to give them the rest of the transcript.

24             You have the transcript ready?

25             MR. YALOWITZ:  No, but I don't think it's going to

F2K8SOK2

1    take us very long to find it and print it out.  It's literally

2    just the transcript from the trial.

3              MR. ROCHON:  The court reporter transcribed it.

4              MR. YALOWITZ:  From mine it's easy.

5              THE COURT:  Let's get that ready first.

6              Unless you come up with a better solution, we are

7    going to bring them out, play the video, and I am going to tell

8    them that's the complete video, and we are going to hand them

9    the transcript that was read to them and they can take that

10   back with them.  So try to get all of that ready.

11             Your estimate about the video is 40 minutes?

12             MR. ROCHON:  It took 40 minutes to play to the jury.

13             Is that right?

14             THE COURT:  You can't give them the transcript in that

15   period of time?

16             MR. ROCHON:  We can work together to try.

17             THE COURT:  The reality is, if you're talking about

18   waiting another 15 minutes for your guy and then playing it for

19   40 minutes, you have got an hour.  So if you can put together a

20   transcript in an hour, then we can just, in fairness, give them

21   the whole thing.

22             MR. ROCHON:  We will try working on both.

23             THE COURT:  Start seeing how quickly you can put

24   together a transcript.  When the video guy comes, then let me

25   know how far you are with the transcript, and we will figure

3919

F2K8SOK2

1    out whether or not it's going to take you another 20 minutes to

2    put the transcript together or we should bring them out during

3    their lunch hour for 40 minutes to listen to the video.

4            (Recess pending verdict)

5            (In open court; jury not present)

6            THE COURT:  I understand you have a dispute over one

7    of the requests.  At this point, the petty bickering is only

8    doing a disadvantage with this jury.  They are trying to

9    deliberate and trying to seek your assistance.  So give me a

10   solution to these problems.

11           MR. YALOWITZ:  I don't think we have any bickering, in

12   candor.  The jury has asked for something that is not in

13   evidence.  We don't have a problem with sending it back, but

14   the defendants object.

15           THE COURT:  That's what I call petty bickering.

16   That's the definition of it.

17           MR. YALOWITZ:  I can't control it.  I didn't move it

18   in evidence.  I don't have a problem with it going back.

19           THE COURT:  It can't go back unless it's in evidence.

20           MR. YALOWITZ:  I understand that.  We just need

21   language for a note.

22           MR. ROCHON:  Here is what I propose.  The charts are

23   not in evidence.  Here are the binders.  That's all you can do.

24           THE COURT:  That's all I can do.  That's not all you

25   guys can do.

3920

F2K8SOK2

1          MR. ROCHON:  That's what I proposed before you came

2     out.  That's what you do.  It happens all the time.

3          THE COURT:  All right.  I will do that if you're not

4     going to agree to anything else.

5          MR. ROCHON:  If the Court has asked whether I would

6     agree for them to go back, no, I can't do that.

7          THE COURT:  I will give them such a note.

8          Have you agreed on everything else?

9          MR. ROCHON:  We have handled the other one.

10          THE COURT:  Can you think of something in substitution

11     for what they are requesting that is in evidence?

12          MR. YALOWITZ:  There may be a some language in some of

13     the transcripts we can go back and look for.  I think we should

14     get them the binders and not give them a written response yet.

15     Just bring in the binders and let me look and see if there is

16     something else that might serve as a useful substitute.

17          There may be some testimony.  Quite frankly, I think

18     sending back transcripts that they haven't requested, I would

19     defer to your judgment on it.

20          THE COURT:  My judgment would be I wouldn't do that.

21     You can be prepared if they ask for something in substitution

22     for this.

23          MR. YALOWITZ:  Let's get that ready.  I think you just

24     tell them that they are not in evidence.  I can't think of any

25     other way to say it that would be more appropriate.  If

F2K8SOK2

1    somebody had a different way of saying it, I wouldn't have a

2    problem with it.

3              THE COURT:  Just show that to the lawyers.

4              MR. YALOWITZ:  I don't have a problem with this.

5              MR. ROCHON:  I don't know how this got prepared.

6              THE COURT:  We are always one step ahead of you.

7              MR. ROCHON:  This looks a lot like what I had

8    suggested.

9              THE COURT:  We read your mind.

10             MR. ROCHON:  Just for the record, Mr. Yalowitz and I

11   just looked at something, and it's essentially a note that says

12   the same thing --

13             THE COURT:  I'm sorry.  For the record, we were

14   addressing the last note asking for the charts that were

15   displayed, I believe primarily during the opening and

16   summation, but not admitted into evidence.  They requested five

17   binders for each of the dates.  And they reiterated their

18   request for the video deposition.  Apparently, they are just

19   looking for a certain portion anyway that detail the

20   differences between the PLO and PA.

21             MR. ROCHON:  Apparently they wanted a part of it, but

22   we got it all to them, and they can figure out what they want

23   to look at.

24             THE COURT:  So I am going to hand them a note that

25   says what they have described is not in evidence and that we

F2K8SOK2

1    are sending in the five requested binders.

2                 MR. ROCHON:  Agreed.

3                 THE COURT:  Make a copy of that and mark it a court

4    exhibit.

5                 MR. ROCHON:  Thank you, your Honor.

6                 THE COURT:  All right.

7                 (Recess pending verdict)

8                 (In open court; jury not present)

9                 THE COURT:  We have a note from the jury indicating

10   that they want to adjourn for the day.  So we will adjourn for

11   the day.

12                 I am just going to bring the jury out, and we are

13   going to adjourn for the day.  I am going to ask them to come

14   back at 9:30 on Monday, that they should not continue talking

15   about the case, deliberating, until all twelve jurors are

16   there.  They don't have to wait for us.  They should just go

17   right in and continue their deliberations Monday morning.

18                 MR. YALOWITZ:  Have a great weekend.  We will see you

19   then.

20                 THE COURT:  Not yet.

21                 Bring the jury in.

22                 (Jury present; time noted:  4:40 p.m.)

23                 THE COURT:  All right, ladies and gentlemen.  We

24   received your note indicating that you would like to adjourn

25   for the day.  So that's what we are going to do.  We are going

F2K8SOK2

1    to adjourn for the day.

2              What I am going to ask you to do is come in on Monday

3    morning at 9:30.  Don't continue your deliberations until all

4    twelve jurors are in the room and have arrived.  When all of

5    the twelve jurors have arrived, then you can continue

6    discussing the case, but don't discuss the case in anyone's

7    absence.  So you don't have to wait for us to do anything.

8    Just go right in the jury room, and then when everyone arrives,

9    you can continue your deliberations and we will just wait for

10   you to contact us.

11             So don't discuss the case with anyone else over the

12   weekend.  Get yourself some rest.  And I will see you Monday

13   morning at 9:30.

14             Thank you.

15             THE JURY:  Thank you.

16             (Jury exits courtroom)

17             THE COURT:  Everyone have a good weekend.  I will see

18   you Monday morning.  You don't have to be here exactly at 9:30.

19   They will gather together and then we will just wait to get any

20   note or hear from them after.

21             (Adjourned to February 23, 2015, at 9:30 a.m.)

22

23

24

25