UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| | ) |
| | ) No. 1:04-cv-0397 (GBD) (RLE) |
| PALESTINE LIBERATION | ) |
| ORGANIZATION, et al., | ) |
| Defendants. | ) |
| | ) |
| | ) |

## DEFENDANTS' OBJECTION TO PLAINTIFFS' REVISED PROPOSED FINAL JUDGMENT, INCLUDING $495,000,000 OF PREJUDGMENT INTEREST

Dated:  March 16, 2015

Gassan A. Baloul (Bar No. 4324919)
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
23rd Floor
New York, NY  10112
Telephone: (212) 872-9800
Facsimile: (212) 872-9815
gasson.baloul@squirepb.com

John A. Burlingame (*pro hac vice* pending)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
john.burlingame@squirepb.com

*Attorney for Defendants Palestinian Authority
and Palestine Liberation Organization*

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     ARGUMENT ......................................................................................3

        A.      Prejudgment Interest Must Solely Compensate, Not Punish. ...........3

        B.      The Legal Authority On Which Plaintiffs Based Their Recommended
                Jury Awards Provides That Prejudgment Interest Is Already Included
                In Those Awards................................................................................4

        C.      Federal Courts Refuse To Award Prejudgment Interest Under the ATA
                Because It Contains a Punitive Trebling Provision. ..................................5

        D.      The Jury Has Already Compensated Plaintiffs Fully, Including for the
                Time Value of Money, Pursuant to Plaintiffs' Instructions, Argument
                and Evidence Presented To the Jury. ........................................................8

                1.      Plaintiffs' Experts Measured, and the Jury Accordingly Awarded,
                        Damages In Present Day Dollars. ..................................................9

                2.      In Any Event, Plaintiffs Are Fully Compensated By The Trebling of
                        Damages Under the ATA. ............................................................11

        E.      Prejudgment Interest May Not Be Awarded On Future Damages,
                Which Constitutes An Overwhelming Majority of the Jury Awards. .................13

        F.      The Law of This Circuit Is that Prejudgment Interest Should Not Be
                Applied To "Speculative" Non-Economic Damages. ...........................................14

        G.      Plaintiffs' Prejudgment Interest Calculations Are Economically and
                Methodologically Unsound. ........................................................................15

                1.      Mr. Soudry's Prejudgment Interest Calculation Deviates Materially
                        From the Damages Methodology Articulated In *In re Terrorist Attacks
                        on Sept. 11, 2001.* .........................................................................17

                2.      This Court Should Apply The Treasury's Short-Term Interest Rate
                        Rather Than The Prime Rate. ..................................................................18

                3.      The Corrected Calculation of Prejudgment Interest Under *In re
                        Terrorist Attacks on September 11, 2001* Totals As Much As 70% Less
                        Than Plaintiffs' Erroneous Calculations...............................................20

III.    CONCLUSION.....................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atl. Mut. Ins. Co. v. Napa Transp., Inc.*,
   399 F. Supp. 2d 523 (S.D.N.Y. 2005)....................................................................................20

*Businessland Rents, Inc. v. Brothers*,
   No. 91–cv-0144, 1991 U.S. Dist. LEXIS 16874 (N.D. Ill. Nov. 13, 1991) .....................20

*Celebrity Cruises, Inc. v. Essef Corp.*,
   530 F. Supp. 2d 532 (S.D.N.Y. 2008)....................................................................................19

*Estate of Esther Klieman v. Palestinian Authority*,
   No. 04-1175, Doc. 284, slip op. (D.D.C. Mar. 3, 2015) ......................................................3

*Estate of Heiser v. Islamic Republic of Iran*,
   466 F. Supp. 2d 229 (D.D.C. 2006)................................................................................. 3, 4, 5

*Estates of Ungar v. Palestinian Auth.*,
   228 F. Supp. 2d 40 (D.R.I. 2002).............................................................................................7

*Estates of Ungar v. Palestinian Auth.*,
   304 F. Supp. 2d 232 (D.R.I. 2004)........................................................................................6, 7

*Fendi S.R.L. v. Burlington Coat Factory Warehouse Corp.*
   *(Fendi Adele S.R.L.)*,
   689 F. Supp. 2d 585 (S.D.N.Y. 2009)....................................................................................19

*Finger Lakes Bottling Co. v. Coors Brewing Co.*,
   748 F. Supp. 2d 286 (S.D.N.Y. 2010)....................................................................................19

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998) ...............................................................................................6, 14

*Gill v. Arab Bank, PLC*,
   891 F. Supp. 2d 335 (E.D.N.Y. 2012)......................................................................................5

*Gonzalez v. Bratton*,
   147 F. Supp. 2d 180 (S.D.N.Y. 2001)............................................................................... 18, 19

*Gordon v. Matthew Bender & Co.*,
   186 F.3d 183 (2d. Cir. 1999) ..................................................................................................13

*Gordon v. Site 16/17 Dev., LLC*,
   No. 11–cv-0427, 2011 U.S. Dist. LEXIS 82367 (S.D.N.Y. July 28, 2011) ......................19

*Group III Capital, Inc. v. Parasol Grp., Ltd.*,
   No. 00-cv-6860, 2003 U.S. Dist. LEXIS 6865 (S.D.N.Y. Apr. 22, 2003)...........................7

*Harrison v. Republic of Sudan*,
   882 F. Supp. 2d 23 (D.D.C. 2012) .............................................................................5

*Havlish v. bin Laden (In re Terrorist Attacks on September 11, 2001)*,
   No. 03-cv-9848, 2012 U.S. Dist. LEXIS 110673 (S.D.N.Y. July 30, 2012)....................15

*Hollie v. Korean Air Lines Co.*,
   834 F. Supp. 65 (S.D.N.Y. 1993) ...........................................................................19

*In re Brooklyn Navy Yard Asbestos Litig. (Joint E. & S. Dist. Asbestos Litig.*,
   971 F.2d 831, 852 (2d Cir. 1992) .............................................................................13

*In re Moran Towing Corp.*,
   996 F. Supp. 2d 221 (S.D.N.Y. 2014)........................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
   No. 03-MDL-1570, 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012)....................................16

*In re Terrorist Attacks on September 11, 2001*,
   No. 03-MDL-1570,
   2012 U.S. Dist. LEXIS 143525 (S.D.N.Y. Oct. 3, 2012) (Daniels, J.)........................*passim*

*Livnat v. Palestinian Auth.*,
   No. 14-668, 2015 U.S. Dist. LEXIS 16522 (D.D.C. Feb. 11, 2015) .................................3

*Magee v. U.S. Lines, Inc.*,
   976 F.2d 821 (2d. Cir. 1992) ...................................................................................14

*Mayline Enters. v. Milea Truck Sales Corp.*,
   641 F. Supp. 2d 304 (S.D.N.Y. 2009).........................................................................6

*McIntosh v. Irving Trust Co.*,
   873 F. Supp. 872 (S.D.N.Y. 1995) ......................................................................15, 19

*Middle E. Eng'g & Dev. Co. v. Arkwright-Boston Mfrs. Mut. Ins. Co.*,
   675 F. Supp. 855 (S.D.N.Y. 1987) ........................................................................3, 12

*Nu-Life Constr. Corp. v. Bd. of Educ.*,
   789 F. Supp. 103 (E.D.N.Y. 1992) .............................................................................8

*Oveissi v. Islamic Republic of Iran*,
   879 F. Supp. 2d 44 (D.D.C. 2012)..........................................................................4, 5

*Panix Prods. v. Lewis*,
   No. 01-cv-2709, 2003 U.S. Dist. LEXIS 11952 (S.D.N.Y. July 15, 2003)........................7

*Price v. Marshall Erdman & Assoc.*,
  966 F.2d 320 (7th Cir. 1992) ................................................................12

*Prince of Peace Enters. v. Top Quality Food Mkt., LLC*,
  No. 07–cv-349, 2015 U.S. Dist. LEXIS 12615 (S.D.N.Y. Jan. 30, 2015) ........................19

*Roth v. Islamic Republic of Iran*,
  No. 11-1377, 2015 U.S. Dist. LEXIS 9390 (D.D.C. Jan. 27, 2015).................................5

*Safra v. Palestinian Auth.*,
  No. 14-669, 2015 U.S. Dist. LEXIS 16492 (D.D.C. Feb. 11, 2015) ..................................3

*Sec. Ins. Co. v. Old Dominion Freight Line, Inc.*,
  314 F. Supp. 2d 201 (S.D.N.Y. 2003)........................................................19

*Securitron Magnalock Corp. v. Schnabolk*,
  No. 89-cv-6731, 1994 U.S. Dist. LEXIS 14894 (S.D.N.Y. Oct. 18, 1994)........................8

*Silivanch v. Celebrity Cruises, Inc.*,
  No. 95-cv-0374, 2000 U.S. Dist. LEXIS 12155 (S.D.N.Y. Aug. 23, 2000) ...................3, 12

*Silverman v. Miranda*,
  918 F. Supp. 2d 200 (S.D.N.Y. 2013)......................................................2, 20

*Smith v. Islamic Emirate of Afg.*,
  262 F. Supp. 2d 217 (S.D.N.Y. 2003)........................................................6

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns*,
  891 F. Supp. 935 (S.D.N.Y. 1995) .........................................................19

*Sulkowska v. City of N.Y.*,
  170 F. Supp. 2d 359 (S.D.N.Y. 2001).....................................................14, 15

*Trans World Airlines, Inc. v. Hughes*,
  449 F.2d 51 (2d Cir. 1971) ................................................................2, 6

*Tretola v. County of Nassau*,
  No. 08-cv-3225, 2014 U.S. Dist. LEXIS 86857 (E.D.N.Y. June 24, 2014)......................20

*United States v. Levicchi*,
  605 F. Supp. 2d 437 (W.D.N.Y. 2009)......................................................19

*United States v. Qurashi*,
  CR 05-498, 2009 U.S. Dist. LEXIS 132679 (E.D.N.Y. Aug. 26, 2009)..........................19

*West Virginia v. United States*,
  479 U.S. 305 (1987).....................................................................3, 8

*Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers,*
   955 F.2d 831 (2d Cir. 1992) ................................................................................................*passim*

*Woodling v. Garrett Corp.,*
   813 F.2d 543 (2d Cir. 1987) ........................................................................................................14

*Wultz v. Islamic Republic of Iran,*
   864 F. Supp. 2d 24 (D.D.C. 2012) ...............................................................................................5

*Wyatt v. Syrian Arab Republic,*
   908 F. Supp. 2d 216 (D.D.C. 2012) .............................................................................................5

*Zerilli v. N.Y.C. Transit Auth.,*
   973 F. Supp. 311 (E.D.N.Y. 1997) ......................................................................................14, 15

## STATUTES

15 U.S.C. § 15a .................................................................................................................................19

28 U.S.C. § 1961 .................................................................................................................18, 19, 20

Anti-terrorism Act ("ATA"), 18 U.S.C. § 2333 ...........................................................2, 5, 6, 7

## I.     INTRODUCTION

The *Sokolow* Plaintiffs advocate amplifying the jury's verdict from $218,500,000 to $1,150,117,004.  Plaintiffs' proposed enlargement is both the product of methodological and conceptual errors by their economist expert, Michael Soudry, and of legal argument that runs explicitly contrary to Second Circuit and this Court's own authority.

The economic errors have been analyzed and detailed by Defendants' own expert Gordon Klein, a CPA, lawyer and UCLA graduate law and business professor with deep experience in this subject.  Plaintiffs instructed Mr. Soudry to base his calculations on this Court's methodology in *In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-1570, 2012 U.S. Dist. LEXIS 143525 (S.D.N.Y. Oct. 3, 2012) (Daniels, J.), but Mr. Klein concludes that Mr. Soudry's calculations are grossly inconsistent with that methodology—resulting in a staggering, initial overstatement of the Plaintiffs' damages of nearly $330,000,000.  According to Mr. Klein, Mr. Soudry also has violated well-established accounting and economic principles by applying prejudgment interest to the principal amount of the verdict damages as if they arose in the 2002-2004 time period—although Mr. Soudry testified at trial that he measured those damages as of the December 2014 date of the verdict, and the trial record demonstrates that the jury measured the verdict awards in those same December 2014 dollars.  Correcting just these opening errors would reduce Plaintiffs' proposed prejudgment interest award to zero.

The errors do not stop there.  For example, Mr. Klein has determined that Mr. Soudry applied prejudgment interest to the entire verdict, despite the fact that a substantial portion of the jury's verdict compensates Plaintiffs for future damages—which are ineligible for prejudgment interest, as Mr. Soudry himself explained to the jury.  Next, Mr. Soudry advocates that this Court should treble the prejudgment interest, despite economic and legal authority to the contrary.  This is

particularly improper because prejudgment interest is designed to fully compensate Plaintiffs, not to overcompensate Plaintiffs and further punish the Defendants.

According to Mr. Klein, further, Mr. Soudry made a material error by relying on an economically inappropriate interest rate (the prime rate) to augment damages, rather than the risk-free interest rate applied by the Plaintiffs' other damages expert, Dov Weinstein.  The Second Circuit district courts characterize the risk-free rate as "a more accurate and non-speculative rate of return when compared to other possible interest rates." *Silverman v. Miranda*, 918 F. Supp. 2d 200, 220 (S.D.N.Y. 2013).  Of particular concern, here, is that in using these different interest rates, Plaintiffs' financial experts have engaged in an impermissible "cherry picking," which has inappropriately skewed their calculated damages upward.   Mr. Klein has documented and opines on all of these material errors in his report.

Plaintiffs' petition fails simply on the basis of these economic errors, but the legal errors Plaintiffs have made are similarly fatal to their demand.  For example, long-established Second Circuit law characterizes the trebling damages provision under the Anti-terrorism Act ("ATA"), 18 U.S.C. § 2333 as "punitive in nature," and further, that a party is not entitled to prejudgment interest if judgment damages are awarded under a statute that is "punitive in nature." *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 834, 835 (2d Cir. 1992); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 80 (2d Cir. 1971) (holding that treble damages provide sufficient compensation to make award of prejudgment interest unnecessary).  Adding to the weight of that law are the numerous decisions of the New York federal district courts that consistently refuse to award prejudgment interest where, as here, the statutory regime already provides for total compensation through statutory multipliers.

As importantly, Plaintiffs confirmed to the Court that their proposed damages awards are "based on actual judgments from terror cases of plaintiffs that are similarly situated," Feb. 18, 2015

Tr. at 3658:21-23 (Machnes); *see also* Feb 19, 2015 Tr. at 3845:8–3856:18 (Yalowitz Closing), referring to the damages framework established in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). *Heiser* awards are designed to fully compensate a plaintiff, such that Plaintiffs have lost any claim they might have had to prejudgment interest.

## II.    ARGUMENT

### A.    Prejudgment Interest Must Solely Compensate, Not Punish.

Prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). Therefore, while this Court's decision to award prejudgment interest is discretionary, it must be "fair, equitable and necessary to compensate the wronged party fully." *Wickham Contracting Co.*, 955 F.2d at 835.[1] Above all, an award of prejudgment interest "must not result in over-compensation of the plaintiff." *Id.* at 834; *see also Silivanch v. Celebrity Cruises, Inc.*, No. 95-cv-0374, 2000 U.S. Dist. LEXIS 12155, at *4 (S.D.N.Y. Aug. 23, 2000) (holding that only where "there is no perceived danger of a jury's having already compensated a plaintiff for this delay [in receiving compensation]" do federal courts apply "prejudgment interest to jury damage awards") (quoting *Middle E. Eng'g & Dev. Co. v. Arkwright-Boston Mfrs. Mut. Ins. Co.*, 675 F. Supp. 855, 857-58 (S.D.N.Y. 1987)).

---

[1] For example, it is within this Court's discretion to deny the award of prejudgment interest in light of three recent federal court decisions dismissing cases against the PA and PLO on facts nearly identical to *Sokolow*—thereby suggesting that Defendants have a likelihood of success of proving the invalidity of the jury's verdict. *See Safra v. Palestinian Auth.*, No. 14-669, 2015 U.S. Dist. LEXIS 16492, *47 (D.D.C. Feb. 11, 2015); *Livnat v. Palestinian Auth.*, No. 14-668, 2015 U.S. Dist. LEXIS 16522, *29 (D.D.C. Feb. 11, 2015); *Estate of Esther Klieman v. Palestinian Authority*, No. 04-1175, Doc. 284, slip op. (D.D.C. Mar. 3, 2015). Defendants ask this Court to consider these decisions, and deny Plaintiffs' motion for prejudgment interest. Consistent with their prior dispositive motions on these grounds, Defendants also intend seek dismissal in post-trial motions for lack of personal jurisdiction.

To make certain that a plaintiff is appropriately compensated, then, an award of prejudgment interest becomes "a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co.*, 955 F.2d at 834. The "speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded." *Id.* at 836. An award of prejudgment interest to the *Sokolow* Plaintiffs would violate each of these core principles.

**B.    The Legal Authority On Which Plaintiffs Based Their Recommended Jury Awards Provides That Prejudgment Interest Is Already Included In Those Awards.**

Just prior to closing arguments, Plaintiffs justified their proposed damages awards to this Court by explaining that the awards are "based on actual judgments from terror cases of plaintiffs that are similarly situated." Feb. 18, 2015 Tr. at 3658:21-23 (Machnes); *see also* Feb 19, 2015 Tr. at 3845:8–3856:18 (Yalowitz Closing). Plaintiffs' explanation refers to the damages framework established in *Estate of Heiser*, 466 F. Supp. 2d at 269. The jury verdict is consistent with Plaintiffs' recommended awards, and under the *Heiser* framework itself.

When the *Sokolow* Plaintiffs based their damage awards on average judgments from other, similar cases, they lost any entitlement they might have had to prejudgment interest. This is because *Heiser* awards are designed to fully compensate a plaintiff: the other judgments and the attacks on which those judgments were based occurred in a number of different time periods, such that the plaintiff is effectively conceding that the timeframe of the attacks is not material. *See Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 59 (D.D.C. 2012) (rejecting application of prejudgment interest because, when adopting the *Heiser* framework, this Court determined that "the values set by [that] scale 'represent the appropriate level of compensation, *regardless of the timing of the attack*'") (citation

omitted, emphasis added); *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 43 (D.D.C. 2012) ("[I]n determining the solatium, pain and suffering, and economic loss awards in this case, the Court has attempted to fully compensate plaintiffs' through today's date.").

Consistent with that principle, courts applying the *Heiser* framework routinely deny prejudgment interest, unless the plaintiffs have proven undue delay by the defendants, which is not at issue here. *See, e.g., Roth v. Islamic Republic of Iran*, No. 11-1377, 2015 U.S. Dist. LEXIS 9390, *48-49 (D.D.C. Jan. 27, 2015) ("[T]his Court has consistently declined to award prejudgment interest on solatium damage awards calculated according to the *Heiser* framework"); *Wyatt v. Syrian Arab Republic*, 908 F. Supp. 2d 216, 232 (D.D.C. 2012) (same); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 51 (D.D.C. 2012) (same).

For example, the *Oveissi* district court denied the plaintiff's petition for prejudgment interest, despite declaring that "defendant Iran must be punished to the fullest extent legally possible for the violent assassination of plaintiff's father," because "when this Court applies the *Heiser* damages framework—as it did in the underlying solatium award here—it has consistently refused to award prejudgment interest." *Id.,* 879 F. Supp. 2d at 59 (holding that awards consistent with the *Heiser* scale "represent the appropriate level of compensation, regardless of the timing of the attack") (citing cases in accord).

## C.   Federal Courts Refuse To Award Prejudgment Interest Under the ATA Because It Contains a Punitive Trebling Provision.

Federal courts consistently reject prejudgment interest as "improper where the statute itself already provides for full compensation or punitive damages" or "if the statutory obligation on which interest is sought is punitive in nature." *Wickham Contracting Co.*, 955 F.2d at 834, 835. The treble damages provision of Section 2333 of the ATA, under which the jury awarded Plaintiffs their damages, is "punitive in nature." *Gill v. Arab Bank, PLC*, 891 F. Supp. 2d 335, 363 (E.D.N.Y. 2012);

*see also Mayline Enters. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 309 (S.D.N.Y. 2009) (concluding that "treble damages serve[] the same function as punitive damages").

Plaintiffs' letter brief in support of their demand for prejudgment interest relies exclusively on *In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-1570, 2012 U.S. Dist. LEXIS 143525 (S.D.N.Y. Oct. 3, 2012), a default judgment case under the Foreign Sovereign Immunities Act (FSIA). *See* DE #884 (Pls' Letter to J. Daniels). *In re Terrorist Attacks on September 11, 2001* is inapposite, because the FSIA does not contain a punitive statutory multiplier as does the ATA; the damages were awarded by the court after a non-appearance default judgment rather than by a jury verdict after a full trial on the merits; and, the district court's award of prejudgment interest was based on the magistrate judge's report and recommendation to which the defendants failed to file objections.

Whether this Court should award prejudgment interest is more appropriately informed by *Estates of Ungar*, 304 F. Supp. 2d at 237-40,[2] an ATA case in which the district court relied for its analysis on landmark Second Circuit authority. *See id.* (citing *Wickham Contracting Co.*, 955 F.2d at 834 and *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998), to conclude that prejudgment interest does not apply to punitive damage awards); *Trans World Airlines*, 449 F.2d at 80 (finding that treble damages provide sufficient compensation making an award of prejudgment interest unnecessary); *Smith v. Islamic Emirate of Afg.*, 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) ("To the extent that § 2333's treble-damages provision already provides a penalty, this Court is foreclosed from assessing additional punitive damages against the al Qaeda defendants.")).

---

[2] *Estates of Ungar*, 304 F. Supp. 2d at 237 ("[T]here is no abuse of discretion when [the court's] award makes the plaintiff whole and is sufficient to deter the defendant from future wrongdoing") (*Note*: due to a cataloguing error in the Lexis database, the correct decision is located at 2004 U.S. Dist. LEXIS 940).

*Ungar* involved claims by American citizens killed in terrorist attacks perpetrated by Hamas in Israel under Section 2333 of the ATA, the same statute at issue in *Sokolow. See Estates of Ungar*, 304 F. Supp. 2d at 236; *see also Estates of Ungar v. Palestinian Auth.*, 228 F. Supp. 2d 40, 41 (D.R.I. 2002) (recitation of the facts of the case). Following entry of a default judgment against Hamas, the magistrate court issued a Report and Recommendation awarding the plaintiffs $166,409,123 in damages, plus prejudgment interest, attorneys' fees and costs. *See Estates of Ungar*, 304 F. Supp. 2d at 236. The district court declined the magistrate's recommendation to award prejudgment interest, because:

> Given Congress' clear intent to deter and punish terrorist acts, this Court is unable to conclude that Congress also intended to add [prejudgment] interest to the substantial penalties of treble damages, court costs, and attorney's fees that are already imposed by the statute. Prejudgment interest is also inappropriate in this case because the treble damages provision of Section 2333 is overwhelmingly punitive, and prejudgment interest does not apply to a punitive damages award.

*Id.*

Nothing in the ATA, its legislative history, or the history of its six amendments shows that Congress intended to add prejudgment interest on top off the penalties provided by the statute. *See Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232, 238-39 (D.R.I. 2004) (analyzing the intent and purpose of the ATA through a review of Senate floor debates, subcommittee hearings, and related testimony regarding Senate bill S.2465, which would become Section 2333 of the ATA).

As in *Ungar,* the district courts of the Second Circuit categorically refuse to award prejudgment interest where the statutory regime already provides for total compensation, including attorneys' fees, through statutory multipliers. *See e.g., Panix Prods. v. Lewis*, No. 01-cv-2709, 2003 U.S. Dist. LEXIS 11952, at *11 (S.D.N.Y. July 15, 2003) (holding that prejudgment interest was not appropriate because the plaintiff was adequately compensated by the treble damages provision under RICO); *Group III Capital, Inc. v. Parasol Grp., Ltd.*, No. 00-cv-6860, 2003 U.S. Dist. LEXIS 6865, at *7 (S.D.N.Y. Apr. 22, 2003) (holding that prejudgment interest in addition to treble damages under

RICO would be inappropriate); *Securitron Magnalock Corp. v. Schnabolk*, No. 89-cv-6731, 1994 U.S. Dist. LEXIS 14894, at *3-4 (S.D.N.Y. Oct. 18, 1994) ("[E]xcept in the most unusual circumstances, an award of treble damages plus attorney's fees and costs is sufficient to compensate a successful RICO plaintiff"); *Nu-Life Constr. Corp. v. Bd. of Educ.*, 789 F. Supp. 103, 105 (E.D.N.Y. 1992) (holding that "the treble damages provision of the Clayton Act has been held to sufficiently compensate victims of antitrust injuries without the need to add an award of interest").

> ### D.   The Jury Has Already Compensated Plaintiffs Fully, Including for the Time Value of Money, Pursuant to Plaintiffs' Instructions, Argument and Evidence Presented To the Jury.

Prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. at 310 n.2). To that end, Plaintiffs instructed the jury, through experts and in closing argument, to include in the verdict every possible type of past and future economic and non-economic damages in order to compensate the Plaintiffs and "make them whole":

> The law says that when we are injured we are entitled <u>to be made whole</u>.  That is what the United States Congress has demanded.  How can you <u>make these families whole</u> . . . <u>don't leave anything out to compensate them</u> for those losses.  The law supports and requires damages for physical injury, for pain and suffering, for mental anguish, for expenses, for loss of love and companionship, for past and future lost earnings, for shock, for all injuries and disabilities sustained from the terrorist attack.

Feb. 19, 2015 Tr. at 3843:22–3844:24 (Yalowitz closing) (emphasis added).

Consequently, on February 23, 2015, the jury awarded base damages to the Plaintiffs of $218,500,000, which trebles under the ATA to $655,500,000.  The jury followed the Plaintiffs' instructions, and rounded each award to the nearest half-million, with individual awards ranging from $1 million to $25 million.  *See* DE 825 (Jury Verdict Form).  Plaintiffs now seek trebled prejudgment interest for each Plaintiff from the date of each terrorist attack, totaling $494,617,005 in additional prejudgment interest.  *See* DE 884-2 (Soudry Letter).  Plaintiffs are not entitled to that

prejudgment interest, however, because the jury already accounted for the time lapse between the dates of the attacks and the jury verdict, awarding damages to Plaintiffs in present-day dollars.

        1.     <u>Plaintiffs' Experts Measured, and the Jury Accordingly Awarded, Damages In Present Day Dollars</u>.

Plaintiffs have already been fully compensated by the jury's verdict, because the jury made its awards in "present day" dollars based on Plaintiffs' own damages experts' reports and testimony. As a result, Plaintiffs are not entitled to additional compensation through prejudgment interest. Defendants' expert economist, Gordon Klein, has provided for the Court a detailed analysis demonstrating these facts. *See* Exh. A (Report of Gordon Klein).

Mr. Klein, a U.S. licensed C.P.A., lawyer and graduate law and business professor, explains that if the *Sokolow* verdict had been awarded in U.S. dollars measured as of 2002-2004, "it would be economically reasonable to apply prejudgment interest to compensate Plaintiffs for their deferred receipt of funds, commencing from the period 2002-2004 until the present." *Id.* at ¶ 28. However, if the jury instead awarded damages corresponding to December 2014 dollars, it "would be inappropriate to impose prejudgment interest for any period commencing prior to December 2014." *Id.*

Plaintiffs explicitly asked the jury to make their awards based on calculations of economic and non-economic damages reflected in December 2014 dollars. For example, Mr. Soudry and Mr. Weinstein testified at trial that they had measured Plaintiffs' economic damages in current dollars, not in 2002-2004 dollars.[3] Mr. Klein concludes that, for prejudgment interest to begin to accrue on

---

[3] Plaintiffs submitted expert testimony at trial regarding the past and future economic damages for five of the Plaintiffs:

- Shayna Elliot incurred economic damages of $660,995. Plaintiffs' evidence demonstrated that more than $544,691 of those losses occurred <u>after</u> trial, and the majority of the remaining damages occurred in 2007 through 2009. Further, Mr. Soudry computed Ms. Elliot's lost wages through the year 2046 and her lost services through 2057. (Jan. 30, 2015 Tr. at 2003:3-20 and 2017:1-14 (Soudry); Trial Ex. 1228.)
- David Gritz incurred economic damages of $1,073,081. The vast majority, almost $800,000, was for future damages that included lost pension proceeds through the year 2058. (Jan. 30, 2015 Tr. at 2057:8-14 (Weinstein); Trial Ex. 1227.)

economic damages as of 2002, "the Plaintiffs would unjustifiably be compensated for an unrealized payment delay of approximately thirteen years that, per the analysis of the Plaintiffs' own experts, they never sustained." *Id.* at ¶ 30.

The jury awards for non-economic damages also were expressed in current dollars as of December 2014, rather than in dollars based on the nominal value of the dollar in 2002-2004. Mr. Klein reports that, after extensive analysis, there is "no evidence in Mr. Soudry's report or in the trial record that supports Mr. Soudry's critical assumption that the jury intended to, or actually did, express the amounts awarded in 2002-2004 dollars. In fact, numerous facts refute the assumption underlying Mr. Soudry's report that the jury awarded damages in 2002-2004 dollars and support the conclusion that the jury awarded damages in current dollars." *Id.* at ¶ 33.

For example, Plaintiffs did not offer any testimony or other evidence to the jury concerning the rate of inflation or differences in the purchasing power of the dollar between 2014 and the 2002-2004 time frame. *See id.* As Mr. Klein writes,

> because a dollar earned in the 2002-2004 time frame is worth more than a dollar earned at the end of 2014, a jury deliberating in 2014 would have to be given detailed information about these differences in the dollar's value to have knowingly expressed its verdict in 2002-2004 dollars. However, the jury in this matter could not have made such an informed decision because I understand that no such data was presented at trial.

*Id.*

Further, both of Plaintiffs' damages experts, Mr. Soudry and Mr. Weinstein, "carefully adjusted and differentiated each set of Plaintiffs' future losses by hundredths of a percent to ensure

---

- Karen Goldberg incurred economic damages of $753,610. Using Mr. Weinstein's conversion of rate of 3.914 for New Israeli Shekels to U.S. dollars, $520,252.94 (NIS 2,036,270) of Ms. Goldberg's losses are future damages for lost salary and severance through 2026 and pension proceeds through 2041. (Jan. 30, 2015 Tr. at 2046:10-23 (Weinstein); Trial Ex. 1226.)
- Janis Coulter incurred economic damages of $132,137. Mr. Soudry testified that the majority of these damages, $73,285, are lost future wages through 2027. (Jan. 30, 2015 Tr. at 2025:1-2026:5 (Soudry); Trial Ex. 1229.)
- Diane Carter incurred $48,545 in economic damages. Mr. Soudry opined at trial that $28,513 of these damages consist of future lost wages through 2028. (Jan. 30, 2015 Tr. at 2030:10-16 (Soudry); Trial Ex. 1230.)

that each such periodic loss was meticulously discounted to its present value as of December 2014." *Id.*  Similarly, "Plaintiffs' counsel and their economic experts made no distinction between their measurements of economic damages and non-economic damages" at trial, such that "it is highly unlikely that the jurors disregarded multiple references to damages measurements posited as of December 1, 2014 and, on their own initiative, decided instead to express damages in nominal dollars of 2002-2004."  *Id.*  This is consistent with Plaintiffs' closing argument, in which Mr. Yalowitz urged the jury that Plaintiffs be "made whole" and asked the jury to not "leave anything out to compensate them for those losses."[4]

Mr. Klein explains, further, that "[e]ven a cursory review of these expert witnesses' trial exhibits and testimony reveals that they valued post-2014 future damages by discounting them back to December 2014, and not to the various dates of incidence from 2002-2004."  *Id.* at ¶ 29; *see also id.* at n.18.[5]  *But see supra* at Part E (discussing that future damages are ineligible for prejudgment interest).

### 2.   In Any Event, Plaintiffs Are Fully Compensated By The Trebling of Damages Under the ATA.

Even if the Court determines that some form of compensation is due to Plaintiffs for the time between the dates of the attacks and the present, the ATA's trebling of the base award damages adequately compensates Plaintiffs for that time delay. *See* Exh. A (Klein Report), at ¶ 36.  Adding prejudgment interest to the jury's award would therefore improperly overcompensate Plaintiffs.  *See Wickham Contracting Co.,* 955 F.2d at 834 (holding that an award of prejudgment interest "must not

---

[4] Feb. 19, 2015 Tr. at 3843:22-3844:24 (emphasis added).

[5] *See also, e.g.,* Jan. 30, 2015 Tr. at 2037:14-16 ("The sum is in Israeli shekels and it is calculated according to the current value of the money, the present value or NPV, based on December 2014 . . . ."); Jan. 30, 2015 Tr. at 2055:15-17 ("What is the total value of his lost earnings reduced to a present discounted value as of December 1, 2014?  A: $2,643,124."); Weinstein Dep. Ex. 331, at 6 ("All values are calculated to their expected NPV (Net present value) as of mid-2013 (July 1, 2013) as it is assumed that the Court's judgment will be determined by then."); *see also* Defs. Dep. Ex. 228 at 2 ("[E]conomic loss is adjusted to present value, based on U.S. dollar amounts in the year 2013.").

result in over-compensation of the plaintiff"); *see also Silivanch*, 2000 U.S. Dist. LEXIS 12155, at *4 (holding that only where "there is no perceived danger of a jury's having already compensated a plaintiff for this delay [in receiving compensation]" do federal courts apply "prejudgment interest to jury damage awards") (quoting *Middle E. Eng'g & Dev Co.*, 675 F. Supp. at 857-58).

Statutory multipliers, like the treble damages provision in the ATA, are intended to compensate a plaintiff for damages that may have been omitted from the compensatory damage award. *See supra* at Part C (detailing cases in which federal courts have considered statutory multipliers as fully compensatory, punitive measures, and therefore denying prejudgment interest); *see also Price v. Marshall Erdman & Assoc.*, 966 F.2d 320, 326 (7th Cir. 1992) ("[J]ust like two-thirds of every antitrust or RICO treble-damages award, one function of punitive damages is to compensate a plaintiff for items of loss that may have been omitted from the calculation of compensatory damages.").

Mr. Klein provides the following example to illustrate that Plaintiffs are more-than compensated by the trebled damages award for any "missing" compensation in the jury's award:

> For example, trebling $100 yields a $200 increase in damages, resulting in total damages of $300. In comparison, Mr. Soudry contends that prejudgment interest should be applied at various rates in the range of 3 to 4%, rounded, which would imply interest-adjusted damages of $146.9 to $166.5 (at 3-4% compounded annually for thirteen years). If I round these prejudgment rates upward to 5% simple interest for sake of analysis (which would imply total damages of $165 after thirteen years), it becomes clear that the statutory trebling factor more than makes Plaintiffs whole for their maximum thirteen year or so delay from the date of incidence in receiving monetary sums. <u>Indeed, the statutory trebling mechanism magnifies damages to such a substantial degree that it would more than adequately compensate Plaintiffs for their delay even if the applicable prejudgment rate was several times higher or if Plaintiffs had been forced to wait two additional decades longer</u> that the prevailing interest rates and intervening period of delay in fact are.

Exh. A (Klein Report), at ¶ 37 (emphasis added).

**E.    Prejudgment Interest May Not Be Awarded On Future Damages, Which Constitutes An Overwhelming Majority of the Jury Awards.**

Plaintiffs' petition seeks an award of prejudgment interest on all of the damages awarded by the jury.    The vast majority of the jury's awards constitute future damages, however, which are ineligible for prejudgment interest.

For example, Plaintiffs' experts testified about the Plaintiffs' future damages, including that Rena Sokolow and Shayna Elliot would suffer future medical problems (Jan 29, 2015 Tr.at 1939:18-21 (Friedman) (Elliot); Jan. 30, 2015 Tr. at 1982:22-25 (Friedman) (Sokolow)); that Yoni Bauer would incur damages related to future work and marriage prospects (Feb. 2, 2015 Tr., at 2236:9-13 (Bauer))[6]; and, that Tzvie Goldberg would incur damages to his "emotional state in the future." Jan. 29, 2015 Tr. at 1845:10-17 (Strous).  In his closing argument, Mr. Yalowitz described Plaintiff Jessica Rine and asked the jury to imagine "living with terror every single day for the rest of your life."  Feb. 19, 2015 Tr. at 3848:13 (Yalowitz Closing).    Mr. Yalowitz described Plaintiff Mark Solokow similarly, communicating that Mr. Sokolow will not ever recover from his injuries:  "He can't concentrate. He withdrew.  His ears got blown out. It's always with him. Not a day goes by that he doesn't think of Wafa Idris and what she did to his family with that bomb that she got in the Mukataa." *Id.* at 3850:14-17.

As another court in this district has written, "[p]rejudgment interest on postjudgment losses is 'an award fit for Alice in Wonderland'; '[i]t makes no sense . . . to award prejudgment interest on losses that have not yet been incurred.'"  *In re Moran Towing Corp.*, 996 F. Supp. 2d 221, 223 (S.D.N.Y. 2014) (Sweet, J.) (quoting *In re Brooklyn Navy Yard Asbestos Litig. (Joint E. & S. Dist. Asbestos Litig.*, 971 F.2d 831, 852 (2d Cir. 1992)); *see also Gordon v. Matthew Bender & Co.*, 186 F.3d 183,

---

[6] Regarding Yoni Bauer, Mr. Yalowitz argued:  "Yoni is 20 years old. Yoni has another 60 years of expected life. How is Yoni going to earn a living? How is Yoni going to find a mate in life? How is Yoni going to lead a family?"  Feb. 19, 2015 Tr. at 3846:8-11 (Yalowitz Closing).

186 (2d. Cir. 1999) ("Consequently, 'an award of pre-judgment interest is not appropriate with respect to an award of damages for future losses") (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 875 (2d Cir. 1998)); *Magee v. U.S. Lines, Inc.*, 976 F.2d 821, 823 (2d. Cir. 1992) ("[P]rejudgment interest cannot be awarded for that portion of the jury's award representing postjudgment losses." ) (citing *Woodling v. Garrett Corp.*, 813 F.2d 543, 560 (2d Cir. 1987)).

> **F.**    **The Law of This Circuit Is that Prejudgment Interest Should Not Be Applied To "Speculative" Non-Economic Damages.**

The Second Circuit historically only awards prejudgment interest in those cases in which the damages are not "speculative"—that is, a defendant could have known what amount of damages had accrued and when, such as with economic or contract damages.  *See Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers*, 955 F.2d 831, 833-36 (2d Cir. 1992) ("The speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded.").  The courts in the Second Circuit reject prejudgment interest where the damages are comprised largely of jury-awarded non-economic damages.  *See e.g., Sulkowska v. City of N.Y.*, 170 F. Supp. 2d 359, 371-72 (S.D.N.Y. 2001) (declining to award prejudgment interest on plaintiff's Section 1983 claim because she had suffered only non-economic injuries); *Zerilli v. N.Y.C. Transit Auth.*, 973 F. Supp. 311, 317 (E.D.N.Y. 1997) ("In contrast to backpay awards, prejudgment interest is ordinarily not applied to awards of damages for pain and suffering.").

The vast majority of the damages in this case, such as solatium and pain and suffering, are non-economic and, therefore, inherently "speculative."  *Sulkowska*, 170 F. Supp. 2d at 371-72.  Non-economic damages are speculative because they are "not ascertainable with any precision either at the time of the wrongdoing or at the time of trial or judgment."  *Id.* at 371.  The fact that a jury has placed a dollar amount on pain and suffering and related non-economic damages does not make them any less "speculative" in nature, because the jury's award only "represents the jury's translation

into monetary terms a loss that is difficult to quantify." *Id.* (quoting *McIntosh v. Irving Trust Co.*, 873 F. Supp. 872, 882 (S.D.N.Y. 1995)).

It would be inequitable to award the Plaintiffs prejudgment interest where, as here, the jury has already fully compensated Plaintiffs for their non-economic injuries.  Federal courts consistently decline to add prejudgment interest to non-economic "speculative" damages like these in the same way that courts refuse to award prejudgment interest on punitive damages.  *See Sulkowska*, 170 F. Supp. 2d at 371-72 (declining to award prejudgment interest on § 1983 claim because plaintiff suffered only speculative non-economic injuries); *Zerilli*, 973 F. Supp. at 317 ("[i]n contrast to backpay awards, prejudgment interest is ordinarily not applied to awards of damages for pain and suffering"); *McIntosh v. Irving Trust Co.*, 873 F. Supp. 872, 881 (S.D.N.Y. 1995) (declining to award prejudgment interest on jury-awarded compensatory damages for pain and suffering).  These cases counsel that the jury's award here, which overwhelmingly consists of lump sum speculative non-economic damages, is sufficient to compensate Plaintiffs.

### G.    Plaintiffs' Prejudgment Interest Calculations Are Economically and Methodologically Unsound.

Plaintiffs contend that they should receive prejudgment interest on their non-economic damages solely because this Court allowed prejudgment interest in *Havlish v. bin Laden* (*In re Terrorist Attacks on September 11, 2001*), No. 03-cv-9848, 2012 U.S. Dist. LEXIS 143525, at *82-83 (S.D.N.Y. Oct. 3, 2012).[7]

---

[7] *In re Terrorist Attacks on September 11, 2001* is factually and legally unsuitable to support Plaintiffs' petition.  That case was brought under the Foreign Sovereign Immunities Act, which does not contain a statutory treble damages multiplier, like the ATA.  *In re Terrorist Attacks on September 11, 2001* also concluded with a default judgment rather than a jury verdict awarding full compensatory damages, as here; there was therefore no adversary process, no defense briefing on damages, no objection to the Magistrate's report and recommendation awarding prejudgment interest, and no appeal of the $6 billion judgment.  *See Havlish v. bin Laden (In re Terrorist Attacks on September 11, 2001)*, No. 03-cv-9848, 2012 U.S. Dist. LEXIS 110673, *94 (S.D.N.Y. July 30, 2012) (M.J. Maas Recommendation adopted in *In re Terrorist Attacks on September 11, 2001*, 2012 U.S. Dist. LEXIS 143525, at *84 (S.D.N.Y. Oct. 3, 2012)).  Moreover, in *In re Terrorist Attacks on September 11, 2001*, the compensatory damages and prejudgment interest were evaluated and awarded at the same time by the same finder of fact as part of a total package to compensate plaintiffs.  This means that that finder of fact knew that

In his March 5, 2015 letter to the Court, Plaintiffs' counsel, Mr. Yalowitz, represented that "Mr. Soudry followed the method approved of by your Honor in *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570, 2012 WL 4711407, at *3 (S.D.N.Y. Oct. 3, 2012)." DE 884 (Plaintiffs' Letter to J. Daniels). Mr. Soudry ultimately calculated total damages of $1,150,117,004, comprised of verdict damages of $218,500,000, accrued prejudgment interest of $164,872,335, and the additional sum of $766,744,669 from trebling the verdict and prejudgment interest sums. *See* Exh. A (Klein Report), at ¶ 13.

In fact, Mr. Klein thoroughly demonstrates in his expert report that Mr. Soudry deviates from the *In re Terrorist Attacks on September 11, 2001* methodology in critical, material ways, and has consequently reported incorrect calculations and methodology to this Court. *See id.* at ¶ 2 ("Mr. Soudry's calculation of prejudgment interest suffers from both methodological and conceptual errors.").

Mr. Klein's analysis also demonstrates that Plaintiffs' experts improperly used different interest rates in their testimony to the jury and in their report to this Court on Plaintiffs' prejudgment petition. Mr. Soudry projected "prejudgment damages *going forward* using a different interest rate than the one that Plaintiffs' experts presented at trial in *discounting backward* their determinations of future economic damages." *Id.* at ¶ 39; *see also id.* ¶¶ 38-39 ("More specifically, in calculating damages at trial, Mr. Weinstein explicitly determined the present value of various Plaintiffs' future lost income using a risk-free rate—specifically, the interest rate on U.S. Government 30-year Treasury Bonds. By applying such a low discount rate, Mr. Weinstein maximized his clients' calculated damages. In contrast, Mr. Soudry selected an interest rate

---

prejudgment interest would be awarded and how it would be calculated, and therefore had no need to take into account the time value of money in the compensatory award. *See id.*

benchmark that typically is higher than Mr. Weinstein's risk-free discount rate benchmark—the prime rate—to measure accrued prejudgment interest."). Ultimately,

> By using a low risk-free rate to estimate the present-value of future losses while using a higher prime based interest rate to calculate prejudgment interest, Plaintiffs' financial experts have inappropriately skewed their calculated damages upward.

*Id.* at ¶ 40; *see also id.* at ¶¶ 38-39. Mr. Klein explains that "[t]his practice of using one interest rate benchmark on a forward-looking basis to maximize a party's damages recovery and then inconsistently using a different rate benchmark on a backward-looking discounting basis to again maximize a party's damages recovery is referred to as 'cherry-picking.'" *Id.* at ¶ 38.

    1.    <u>Mr. Soudry's Prejudgment Interest Calculation Deviates Materially From the Damages Methodology Articulated In *In re Terrorist Attacks on Sept. 11, 2001*</u>.

Plaintiffs' petition for prejudgment interest should be denied, further, because Mr. Soudry's calculations are derived from two key errors he made in replicating the damages analysis in *In re Terrorist Attacks on September 11, 2001*.

First, according to Defendants' expert, Mr. Klein, Mr. Soudry incorrectly applied prejudgment interest to *all* of the *Sokolow* Plaintiffs' economic and non-economic damage awards, even though the *In re Terrorist Attacks on September 11, 2001* Court held only that "prejudgment interest is appropriate on Plaintiff's damages for solatium and pain and suffering" and reiterated this mandate numerically, holding that the plaintiffs were to be "awarded prejudgment interest at the rate of 4.96% per annum on their damages of solatium and pain and suffering damages, which total $968,000,000 . . . ." Exh. A (Klein Report), at ¶ 25 (quoting *In re Terrorist Attacks on September 11, 2001*, 2012 U.S. Dist. LEXIS 143525, at *3).

Second, *In re Terrorist Attacks on Sept. 11, 2001* applied a multiplier <u>only</u> to the *principal amounts* of the compensatory damages. *See id.* at ¶ 26. But Mr. Soudry applied the multiplier to "*both* principal amounts of compensatory damages *and* to *interest on such principal amounts*. In short, Mr.

Soudry first multiplied verdict damages times a prejudgment interest factor and then he *re-magnified* this sum by applying a trebling multiplier. By engaging in this illogical departure from the Court's approved methodology, Mr. Soudry effectively applied the multiplier to roughly 13 years of interest, thereby excessively increasing the Plaintiffs' claimed damages entitlement by $331,775,354." *Id.* Given that "[p]rejudgment interest is intended to compensate a plaintiff for the time delay between the damages measurement date and the date of judgment," trebling the amount of interest necessary to fulfill this purpose necessarily overcompensates Plaintiffs. *Id.* at ¶ 4, ¶ 28.

While the PA and PLO deny that Plaintiffs are entitled to any prejudgment interest whatsoever, if Mr. Soudry had correctly calculated the damages according to the methodology employed in *In re Terrorist Attacks on September 11, 2001*, the resulting total damages would be $818,341,647, not the $1,150,117,004 reported by Mr. Soudry. *See id.* at ¶ 27.

2.   <u>This Court Should Apply The Treasury's Short-Term Interest Rate Rather Than The Prime Rate.</u>

Contrary to Mr. Soudry's suggestion that prejudgment interest should be calculated based on an average prime rate that varies depending on the date of the relevant attack, this Court should apply the interest rate in 28 U.S.C. § 1961(a), which is "a rate equal to the weekly average 1-year constant maturity Treasury yield." *See Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 214 (S.D.N.Y. 2001). Mr. Klein opines that if the Court applies prejudgment interest in this case, the Treasury yield rate ("Treasury Rate")—rather than the prime rate—is the proper rate to use in those calculations. *See* Exh. A (Klein Report), at ¶¶ 40, 42.

Mr. Klein explains that Mr. Soudry's use of the prime rate to calculate litigation-related prejudgment interest is illogical, because the prime rate is a "'reference or base rate' banks use to set the price or interest rate on many of their commercial loans and some of their consumer loan products" and "principally compensates a lender for expected inflation, investment risk, and a

reasonable profit." *Id.* at n.25, ¶ 42.  But, "[u]nlike a bank lending at the prime rate, the Plaintiffs in

this matter do not bear investment risks.  Moreover, unlike banks, which incur significant overhead

and transactional costs in procuring and consummating loan transactions, Plaintiffs incur no such

costs and should accordingly not be compensated for costs or profit margin." *Id.* at ¶ 43.

Mr. Klein opines instead that the applicable interest rate should be no higher than the risk-

free benchmark Treasury Rate to calculate prejudgment interest.  *See id.* at ¶ 43.  Using any rate of

interest other than a risk-free Treasury Rate similar to that used by Plaintiffs at trial creates

> an untenable, asymmetrical result in which plaintiffs' uncertain prospective damages
> were discounted backward at a low benchmark rate, but the Plaintiffs' awarded
> damages would be inflated forward using a higher benchmark, the prime rate. Such a
> result is nonsensical and is wholly devoid of economic justification.

*Id.*

Federal courts agree that prejudgment interest should depend upon the Treasury Rate

contained in 28 U.S.C. § 1961(a) regardless of the type of litigation,[8] because that rate represents a

more accurate and non-speculative rate of return when compared to other interest rates.[9]  *See, e.g.,*

---

[8] *See Finger Lakes Bottling Co. v. Coors Brewing Co.*, 748 F. Supp. 2d 286, 292 (S.D.N.Y. 2010) (applying weekly average one-year U.S. Treasury Bill rate to action for enforcement of arbitration award); *United States v. Levicchi*, 605 F. Supp. 2d 437, 462 (W.D.N.Y. 2009) (applying 28 U.S.C. § 1961 rate to action by government to recover funds under HUD program); *Sec. Ins. Co. v. Old Dominion Freight Line, Inc.*, 314 F. Supp. 2d 201, 204-05 (S.D.N.Y. 2003) (fixing the prejudgment interest rate "as the federal postjudgment interest rate prevailing as of the date of the loss of the cargo" for Carmack Amendment case); *Gonzalez*, 147 F. Supp. 2d at 214 (applying average one year U.S. Treasury Bill rate for past 3 years on plaintiff's § 1983 claim); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns*, 891 F. Supp. 935, 944 (S.D.N.Y. 1995) (applying average annual U.S. Treasury Bill rate, compounded annually to copyright infringement action); *McIntosh v. Irving Trust Co.*, 873 F. Supp. 872, 882-83 (S.D.N.Y. 1995) (applying average U.S. Treasury Bill rate to Title VII action); *Hollie v. Korean Air Lines Co.*, 834 F. Supp. 65, 69-71 (S.D.N.Y. 1993) (applying average annual U.S. Treasury Bill rate to damages arising out of airplane crash under the Warsaw Convention); and *Celebrity Cruises, Inc. v. Essef Corp.*, 530 F. Supp. 2d 532, 542 (S.D.N.Y. 2008) (applying average Treasury Bill rate, compounded annually to maritime tort action).

[9] Under the relevant legal principles (as opposed to principles of economics), applying prejudgment interest at a compounded rate also overwhelms the jury verdict.  To avoid such an inequitable result, other courts have instead applied simple interest.  *See e.g., Fendi S.R.L. v. Burlington Coat Factory Warehouse Corp. (Fendi Adele S.R.L.)*, 689 F. Supp. 2d 585, 626 (S.D.N.Y. 2009) (recommending simple interest given the inequity of compounding interest); *Gordon v. Site 16/17 Dev., LLC*, No. 11–cv-0427, 2011 U.S. Dist. LEXIS 82367, at *11 (S.D.N.Y. July 28, 2011) (awarding simple interest because it was "sufficient to compensate [plaintiff] without unduly penalizing defendants"); *United States v. Qurashi*, CR 05-498, 2009 U.S. Dist. LEXIS 132679, at *140-43 (E.D.N.Y. Aug. 26, 2009) (applying simple interest based on 28 U.S.C. § 1961).  Precisely to avoid the problem of over-compensating plaintiffs, courts dealing with statutory schemes that provide for treble damages, as the ATA does, typically award simple interest, because it is required by the statute and/or to avoid over-compensation.  *See* 15 U.S.C. § 15a ("The court may award under this section [of the Clayton Act] . . . simple interest on threefold the damages"); *Prince of Peace Enters. v. Top Quality Food Mkt., LLC*, No. 07–

*Silverman v. Miranda*, 918 F. Supp. 2d 200, 220 (S.D.N.Y. 2013) (applying the 28 U.S.C. § 1961 rate because the federal yield rate was less speculative); *Atl. Mut. Ins. Co. v. Napa Transp., Inc.*, 399 F. Supp. 2d 523, 527 (S.D.N.Y. 2005) (declining to apply plaintiffs' suggested statutory rate and instead applying federal yield rate because it more accurately represented the likely return on investment during the period).  This is the case even if the Treasury Rate is "rather low" at the time.  *Tretola v. County of Nassau*, No. 08-cv-3225, 2014 U.S. Dist. LEXIS 86857, at *9-10 (E.D.N.Y. June 24, 2014) (awarding prejudgment interest at the rate of .0013 on economic damages).

        3.     <u>The Corrected Calculation of Prejudgment Interest Under *In re Terrorist Attacks on September 11, 2001* Totals As Much As 70% Less Than Plaintiffs' Erroneous Calculations</u>.

      Mr. Klein has corrected Mr. Soudry's calculations under the *In re Terrorist Attacks on September 11, 2001* methodology and appropriate interest rates, and determined that the resulting amount of prejudgment interest would be, <u>at a minimum,  30% less than Mr. Soudry's damages totals, and as much as 70% less than Mr. Soudry's totals</u>.  *See* Exh. A (Klein Report), at Exh. 4 (10 year Treasury Rate), Exh. 5 (1 year Treasury Rate); *see also id.* at nn. 26-27.  Mr. Klein explains that using 10-year and 1-year U.S. Treasury Rates is more appropriate, because they "better match the shorter duration over which the prejudgment interest would be calculated in this instance.  I note that in an earlier report, Mr. Soudry appears to have used the yield of a 10-year Treasury Note (which had a 2% interest rate as of the date of his report).  *See* Defs. Dep. Ex. 222, at 5."  *Id.* at n. 26.

## III.    CONCLUSION.

      Plaintiffs' petition for prejudgment interest should be denied.

---

cv-349, 2015 U.S. Dist. LEXIS 12615, at *15 (S.D.N.Y. Jan. 30, 2015) (prejudgment interest under the Lanham Act is traditionally awarded at a simple rate); *Businessland Rents, Inc. v. Brothers*, No. 91–cv-0144, 1991 U.S. Dist. LEXIS 16874, at *19-20 (N.D. Ill. Nov. 13, 1991) (awarding simple interest in a RICO case).

Dated:  March 16, 2015                              Respectfully Submitted,

                                                    /s/ Gassan A. Baloul
                                                    Gassan A. Baloul (Bar No. 4324919)
                                                    SQUIRE PATTON BOGGS (US) LLP
                                                    30 Rockefeller Plaza
                                                    23rd Floor
                                                    New York, NY  10112
                                                    Telephone: (212) 872-9800
                                                    Facsimile: (212) 872-9815
                                                    gasson.baloul@squirepb.com

                                                    John A. Burlingame *(pro hac vice* pending)
                                                    SQUIRE PATTON BOGGS (US) LLP
                                                    2550 M Street, NW
                                                    Washington, DC 20037
                                                    Telephone: (202) 457-6000
                                                    Facsimile: (202) 457-6315
                                                    john.burlingame@squirepb.com

                                                    *Attorney for Defendants Palestinian Authority
                                                    and Palestine Liberation Organization*