
PLAINTIFF'S EXHIBIT
259

Date:  8 Shevat 5768  
      January 15, 2008

Case No.: 2305/04

## The Judea Military Court

**Before Honorable President of the Court:**  Major Yair Tirosh  
                                  **Judge:**  Major Dalia Kaufman  
                                  **Judge:**  Major Amir Dahan

**The military prosecution**  
(by Captain Sagiv Lichtman)

- v. -

**Ahmed Mohamed Ahmed Saad, Identity No. 911744878 / IPS**  
(by Counsel Adv. Osama Ouda)

## Arguments for Sentencing

**Honorable Judge Amir A. Dahan**:

A.    **The indictment and the verdict**

The Defendant, born in 1987, from Douha, has been convicted of committing the following offenses:

1. **Aiding in causing intentional death** – an offense pursuant to Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 of the Security Provisions Order (Judea and Samaria) (No. 225), 5728-1968 **(19 offenses)**.

2. **Aiding in an attempt to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 14, 19, 20 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 **(2 offenses)**.

3. **Conspiring to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 21, 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 **(one offense)**.

[Stamp] P2: 133

1

4. **Conspiring to make a bomb** – an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 **(one offense)**.

5. **Possession of explosives** – an offense under Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 (**one offense**).

The main offenses of which the Defendant was convicted surround his involvement in the execution of two deadly suicide attacks in Jerusalem. The first attack occurred on January 29, 2004, on bus no. 19 and the second attack on February 22, 2004, on bus no. 14, in which 19 people were murdered.

[Stamp] P2: 133 [continued]

Date: 8 Shevat 5768                                                                            Case No.: 2305/04
       January 15, 2008

As set forth in the verdict, the acts of the Defendant constituted aiding another person (Ali Abu Halail, hereinafter: "Ali") in the purchase of raw materials for preparing explosives. Those raw materials, along with additional materials, were used for preparing explosive bags that were prepared by an additional person by the name of Makdad. As set forth in the verdict, the Defendant did not do anything alone but acted under explicit instructions from Ali, who was older than him. In addition, his actions are characterized by recklessness and indifference to the consequences.

**B.   The pleas of the defense**

1. The Prosecution contended that the Defendant took significant part in the process of making the explosive devices and bringing in the raw materials. The prosecution contends that his acts were performed while anticipating the results of the activation of the explosive device. Therefore, he must be punished to a level of severity that will reflect the severity of the acts that he carried out.

2. The Prosecutor emphasized the terrible results of the suicide attacks: the murder of 19 people in an indiscriminate massacre and the injury of dozens.

3. The Prosecutor contended that the sentence that would be fitting in the circumstances of the case is one term of life imprisonment for each offense of aiding in causing intentional death. To this sentence, two additional terms of life imprisonment must be added for each offense of aiding an attempt to cause intentional death as well as a sentence in years for the additional offenses. In this, the Prosecutor relied on the case law of the Appellate Court and the principle of the sanctity of life. In view of the ruling of the Military Appellate Court, the Prosecution believes that some of the sentences should be served concurrently to a certain degree, to express correctly the gravity of the acts and the principle of the sanctity of life.

4. The Prosecutor referred us to the cases of the accomplices, Case (Judea) 2306/04 **The Military Prosecutor v. Ali Abu Halail** and Case (Judea) 2303/04 **The Military Prosecutor v. Hilmi Hamash** and repeated his pleas for sentencing in these cases. The Prosecutor contended that even though the Defendant's part was smaller than that of his partners, smaller in particular than the part of Ali Abu Halail, this is not enough to create a level of differential sentencing that would reduce the sentence of the Defendant to a sentence set in years according to the ruling of the Military Appellate Court.

[Stamp] P2: 134

3

5. The difference between being an accomplice and aiding and the magnitude of the part that the Defendant took in the offenses and the part that other defendants in the case took in the offenses is supposed to be expressed, in the opinion of the Prosecution, in the cumulative service of some of the sentences of life imprisonment.

6. The Prosecutor summated his statements with his petition for the following sentences, which in his opinion should be imposed upon the Defendant for his acts as set forth above:

> *"A. For causing the intentional death of each of the victims (reads out the names of the victims), life imprisonment (19 life imprisonment terms). B. For each of the counts of aiding in attempting to cause intentional death, life imprisonment (two life imprisonment terms). C. For the other offenses, a sentence set in years.*
>
> *In view of the case law of the Military Appellate Court and in view of the principle of sanctity of life, the Prosecution asks for the terms of life imprisonment that are related to the first attack be served concurrently, that the terms of life imprisonment that are related to the second attack be served concurrently and these two groups of sentences and the sentence set in years be served cumulatively to one another, so that in effect the Defendant is to serve a sentence of two terms of life imprisonment and a sentence set in years."*

[Stamp] P2: 134 [continued]

Date:  8 Shevat 5768                                                                                           Case No.: 2305/04
           January 15, 2008

### C. The pleas of the defense

1. The defense counsel focused most of its contentions on the minor part, in his view, that the Defendant had in carrying out the attacks. This part was, as set forth, the transfer of acetone for the purpose of preparing explosives to Ali Abu Halail. Ali Abu Halail transferred the acetone to another person by the name of Abed-Al Rahman Makdad, along with other substances for the purpose of preparing the explosive devices.

2. The defense counsel also contended that in Case (Judea) 2306/04 **The Military Prosecutor v. Ali Abu Halail**, Abu Halail was convicted of aiding in the causation of death, although his acts and actions, as shown by the materials in evidence, were much more severe and graver than those of the Defendant. According to the defense counsel, the Defendant served as an accessory to Ali Abu Halail.

3. In view of that which has been set forth, the defense counsel contended that it could not be that the accomplice Ali Abu Halail would be sentenced to concurrent life sentences that would mean a single sentence of life imprisonment, while the Defendant, who is younger than he is and has committed fewer acts, would be sentenced more harshly. In the view of the defense counsel, this does not reflect the principle of uniformity of sentencing.

4. The defense counsel also contended that the Defendant was a minor at the time of the commission of the offenses, which must be taken into consideration.

5. In addition, the defense counsel referred the Court to his pleas in the case (Judea) 2303/04 **The Military Prosecutor v. Hilmi Hamash** in the case of another accomplice in the case.

6. In his final statement, the Defendant said the following with great emotion:

[Stamp] P2: 135

5

*"I thank the Honorable Court for permitting me to speak. I was born to two parents who took great interest in their children's studies and I did what they wanted of me until I reached the age of 17. At this time there was a friend of mine and I made a mistake and I regret that I did it, but the part I did, I admit it, but what I did is part of what I carried out without thinking of the consequences, and I hope that it will be clear to everyone that when I reached a mature age, I thought about my actions and saw that the actions that I had performed were violent and bad actions against humanity, but that was in the past and I cannot change the past, and I intend to do something for restitution, to compensate for it and save people so they will not be like the way I was – a victim of a society that did not really know what the thoughts of the other society were. If you think that I pose a danger to the Area I can, if you agree to my leaving the Area altogether, although I do not prefer it because I want, insistently, to clarify to everyone that I did not want to do it and that I regret it, and to prove it while I am here. I ask the Court to save me from the company of the prison, that knows only of bloodshed and does not talk about peace or about existence, and where whoever talks about this is considered a traitor and is not good for humanity. That is something smaller than what I want to talk to you about, but I know that the wise man understands the whole matter. And I know that Your Honors are the wisest. Everything that I have said, with all due respect to you, do not think that I am talking about this because I am under the influence of the prison or the sentence. I really believe in it and I believe that there is justice. I am now under the influence of the mind, logic and science and I see that science is the correct way. I am studying at the Open University at your facility and I wish to continue my studies in psychology in Israel. Thank you very much."*

[Stamp] P2: 135 [continued]

Date:  8 Shevat 5768  
       January 15, 2008

Case No.: 2305/04

### D. General guiding principles in sentencing the Defendant

7. When sentencing the Defendant, we were aided, *inter alia*, by the Penal Code Bill (Amendment No. 92) (Incorporation of Judicial Discretion in Sentencing) 5766-2006, whose wording and principles appear to the Court to be a suitable template for correct, logical structuring of the sentencing principles.

8. The wording and the principles are adopted, *mutatis mutandis*, on the account of the lack of a "default sentence", from the difference between the penal laws in the Israeli legal system and the law applying in the Area.

9. As set forth, the guiding principle in sentencing is the existence of an adequate relationship between the sentence imposed for an offense that the Defendant has committed and the severity of the act of the offense and the guilt of the Defendant. Within the framework of the application of this principle, it has been said that the offenses that were committed are severe and murderous; the Defendant took a minor part in them but was well aware that he constituted an important link in a chain that ended in an indiscriminate massacre.

10. The Court has considered the social value that was infringed upon as a result of the commission of the offenses, the degree of infringement thereof, the commonly practiced sentencing policy and the befitting sentencing policy and considered, for the purpose of its response, the severity of the acts of the offenses that the Defendant committed and his degree of culpability and the mitigating and aggravating circumstances that are related to the commission of the offenses.

11. The references indicate a level of sentencing by which a Court, in similar offenses, must hand down terms of imprisonment ranging from decades of imprisonment to cumulative life terms of imprisonment, in accordance with the nuances of the mitigating or aggravating circumstances in each case.

[Stamp] P2: 136

12. The Court is allowed to deviate from the guiding principle and to sentence more strictly to protect public safety if it has found, *inter alia*, in view of the circumstances of the offense or the susceptibility of the Defendant, that the Defendant is a danger to the public. In order to implement this consideration for sentencing, the Court has taken into account that the Defendant has no criminal record, and has considered his statements of the degree of influence of others upon him, as he was of a young age at the time of committing the offenses when his reasoning was flawed. The Defendant's words in his last address made an honest, credible impression upon us, which in view of their content, reduces his proneness to carry out additional offenses after serving his sentences.

In handing down the sentence, we have considered all of the necessary circumstances.

For this purpose, we have considered all of the relevant factors and have chosen to arrange the considerations according to the following groups of considerations, as worded in the Penal Code Bill (Amendment No. 92) (Incorporation of Judicial Discretion in Sentencing) 5766-2006:

- **The mitigating circumstances that are related to the commission of the offense.**

- **The aggravating circumstances that are related to the commission of the offense.**

- **The mitigating circumstances that are unrelated to the commission of the offense.**

- **The aggravating circumstances that are unrelated to the commission of the offense.**

[Stamp] P2: 136 [continued]

Date:  8 Shevat 5768  
       January 15, 2008

Case No.: 2305/04

### E. The mitigating circumstances that are related to the commission of the offense:

1. The Court has found, based on the evidence in the case, that the Defendant was subject to the influence and authority of Ali Abu Halail and he committed the act of the offense under the inspiration and at the behest of Abu Halail.

2. The Court has examined the relationships between the various accomplices as indicated by the evidence. This examination raised facts that clearly constitute mitigating circumstances. It turns out that the Defendant did nothing alone but acted under explicit directions and demands from Ali Abu Halail, who was his elder.

3. The acts of the Defendant show recklessness and indifference to consequences that are characteristic of his age. The Defendant demonstrated a consistent line of obedience in the wake of all of the requests of Ali Abu Halail and showed salient childish tendencies in his behavior.

4. Several perpetrators participated in the commission of the offense, and the Defendant's part in its commission was smaller than the parts of the others. For fulfilling this sentencing consideration, the Court has examined the Defendant's part in each of the offenses, and found that he had taken a part in each of them while knowing of the deadly outcomes, but with lack of initiative and lack of caring with respect to the possibility that the outcomes would materialize.

5. The Defendant's part in obtaining acetone did not bear any particular characteristic of a perpetrator or planner, and in effect could have been performed by other people. It can be determined, according to the evidence before us, that the Defendant's part was significantly smaller than the part of Ali Abu Halail.

6. Ali Abu Halail demonstrated great initiative and used the Defendant as a pawn in order to diffuse and blur the purchase of the raw materials that he was using for preparing large quantities of improvised explosives.

7. We have given our opinion on the question of the extent of the Defendant's true knowledge (as opposed to retrospective speculations and agreements) with respect to the acts that were carried out using the materials that he purchased. On this matter, the Defendant elaborates in his statements and it turns out that the facts were not "put on the table" and Ali did not specify what results of the materials that he assisted in supplying would be.

[Stamp] P2: 137

### The principle of uniformity of sentencing

8. The work of deciding on the sentences of accomplices and accessories in the causation of death is difficult and complex; every soul that has been taken is a whole world unto itself and the murderer should have his world taken away for each soul that he has taken. This is equivalent to arithmetic of infinite numbers in which the Court is requested to decide which number is the greater infinity.

9. In this context, we shall not be able to ignore the verdict of the Court on the matter of Ali Abu Halail who has been referred to above, for whom no appeal has been filed; there is no doubt that the acts of Abu Halail and the charges [against him] and are much more severe than the acts of the Defendant, who functioned as the proxy of Abu Halail, who was his elder and who initiated and directed his actions. In these circumstances, […]

[Stamp] P2: 137 [continued]

Date:  8 Shevat 5768                                                                                  Case No.: 2305/04
       January 15, 2008

[…] the sentence of the Defendant and the default sentence should be lesser than the sentence of Ali Abu Halail.

**The words of the Defendant**

10. It has not been ignored that the words of the Defendant have left an impression upon us. The Defendant expressed remorse, and most importantly a correct perspective of his acts and their consequences.

11. The Defendant took full responsibility for his actions and stated that he has now grown up a bit and is no longer an adolescent and understands their severity, the stupidity and pointlessness of the actions of aiding Ali Abu Halail in advancing his deadly intention.

12. The Defendant has resumed his studies in prison; his behavior before us is impeccable and it appears that he wishes to rehabilitate his life. His retrospective regret of having assisted in a massacre of people who did nothing sounds honest and true to us. In good Hebrew that he has learned in his prison and with the insights of a person who is more mature than his age, the Defendant explained to us his remorse and his responsibility for his terrible acts. All of these, along with his special situation compared to his partners and his young age at the time of committing the offense, have shifted the weight to his benefit to a certain extent.

F.   **The aggravating circumstances that are related to the commission of the offense**

1. The Court has considered as an aggravating factor the fact that the offense was committed in a manner that posed a danger to many people. The responsibility for a large-scale massacre bears a clear impression of peril to the public at large.

2. The Court has considered as an aggravating factor the fact that the that the offenses were committed in a series of acts that constitute a single case and included precise planning, even though the Defendant was not the one to do the planning.

3. The Court has considered as an aggravating factor the enormous degree of harm inflicted upon people, nineteen cases of violent death and dozens of injuries, as a result of the assistance of the Defendant.

[Stamp] P2: 138

4. The Court has taken into account that the motives of the offenses were clearly racist and their aim was to lead to the deaths of Jews or Israelis as such; the planned murder was indiscriminant and was aimed only at Jews or Israelis who would chance upon the site and place that the Defendants determined. As there is no room for doubt that the criterion that sentenced the victims to death was their Jewish nationality or membership in the Israeli public, the Court will consider this to be an aggravating factor.

G. **The mitigating circumstances that are unrelated to the commission of the offense**:

1. **The young age of the Defendant.**

    The Court has considered as a mitigating factor the fact that the Defendant was seventeen years old at the time of the commission of the offenses; this is a particularly young age that justifies a reduced sentence.

[Stamp] P2: 138 [continued]

<mark>
<mark>
</mark>
</mark>

Date:  8 Shevat 5768  
       January 15, 2008

Case No.: 2305/04

2. **The Defendant's clean criminal history**

   The Court has considered as a mitigating factor the fact that the Defendant had no criminal record. Conversely, the weight of this consideration is significantly diminished considering the young age of the Defendant and the great severity of the offenses.

3. **The cooperation of the Defendant with the law enforcement authorities and the assistance rendered to them during the investigation and the trial that were held concerning the offense, including concerning the matter of investigation of the circumstances of the offense and the participation of others therein.**

4. For the purpose of implementing this consideration for sentencing, the Court has taken into account that the Defendant has admitted that which has been attributed to him and has spared the Court precious time. Needless to say, the Defendant has already admitted his acts to the police and the evidence was filed before us without objections insofar as the Defendant effectively focused the hearing on the questions of the disputed mental foundation.

   In the end, this behavior will be imputed as a mitigating circumstance for sentencing the Defendant.

H. **The aggravating circumstances that are unrelated to the commission of the offense are the following**:

   **The need to deter potential offenders from carrying out an offense of the type that the Defendant committed, due to the nature or frequency of the offense.**

   The Court has considered as an aggravating factor that the offense and the characteristics of its commission are somewhat common and that a person extending this kind of aid in the commission of purchasing materials may consider his part to be minor and insignificant.

   Therefore, the Court has taken into account that the need for public deterrence is high, particularly when we are speaking of actions whose nature and criminal result is not so immediately repugnant and of high profile, in which case a person might think that "shopping" for an attack is a trivial affair and any person can do so. The Court shall show the public the degree of severity that these acts hold. The Court has considered this as an aggravating factor.

   [Stamp] P2: 139

I.   **The aggregate of the findings:**

Taking into account the mitigating and aggravating considerations that have been enumerated, I have suggested to sentence the Defendant as follows:

(A) Thirty years' imprisonment to be served, which will start from the day of arrest of the Defendant.

(B) Five years' suspended imprisonment, on the condition that within five years from the day of his release, the Defendant will not commit a violation of Regulations 85 and 58 of the Defense Regulations (Time of Emergency), 1945, or any other offense in a matter of possession of war materiel or of trading of war materiel or any other offense that is intended to harm human life.

[Stamp] P2: 139 [continued]

Date:  8 Shevat 5768  
       January 15, 2008

Case No.: 2305/04

**The Honorable Judge Yair Tirosh**:

It is very difficult to pronounce on the question of the sentencing that would be fitting in the circumstances of the case. The words of the Honorable Justice M. Alon (as his title was then), who described the complexity of the process of sentencing in Criminal Appeal 359 + 344/81, **State of Israel v. Shachar Segal** *et al.*, *PD* 35 (4), 313, at 322, apply well to our case:

> "Measurement of the degree of sentencing is as difficult for a judge as parting the Red Sea. When he comes to consider whether to convict or acquit, he possesses principles and rules, details of statutes and tiny nuances of copious mountains of rules, which he applies in the particular case before him. This is not the case when he finishes this task and finds that the defendant must be convicted. Lawmakers have provided him with latitude in sentencing – particularly in the case of a prison sentence – that has a maximum rate but no minimum rate (besides exceptional cases); and the tradition of case law has established general rules concerning the character of the offense, the nature of the offender and public safety. All of these are available for inspection and discussion, but are very difficult to apply in practice, for by nature and essence, they do not serve to direct the view and the decree of the judge except in the most general manner. And if this reality of general, arbitrary guidance for the judge for sentencing is difficult for him, it is vital and essential for the task of sentencing: it comes to teach you that each individual case must be discussed on the merits of the offense and of the offender, and the rules in sentencing methods can be considered merely as a starting point."

The difficulty that the Honorable Justice Alon discusses in his decision in the work of sentencing is particularly apparent in the case that is the object of this hearing, in view of the complexity of the questions that are being heard.

The Honorable Justice Chaim H. Cohen addressed the complex issue of the complexity of sentencing in his book "Hamishpat" (second amended and expanded edition, 5755-1996, [Hebrew]). The things that he wrote and that are relevant to our case emphasize the great importance of precise examination of each case on its merits when sentencing (page 715 of his book):

[Stamp] P2: 140

15

> "The discretion that lawmakers confers upon the judge concerning the degree of sentencing also implies discretion concerning the purposes of sentencing. In practice, a judge consciously or unconsciously considers all of the possible goals and degrees in order to reach a just verdict. Sometimes one goal is equivalent in his mind to all others, and sometimes one degree is preferable to him over others, according to the merits of the defendant who stands before him and the nature and circumstances of his conduct. From here it has been said that our age is the age of individualization of sentencing – for each offender and his particular wrongdoings."

In Criminal Appeal 4379/02, John Doe v. State of Israel, Supreme Court Compendium 2006 (1), 649 (hereinafter: the "**John Doe Case**"), the Supreme Court discussed a list of questions of principle that arose in his case in a panel headed by President Barak (as his title was then). In that case, as written in the verdict of the Supreme Court, the appellant and his colleague conspired to murder the deceased, the father of the appellant. While the deceased was sleeping at the construction site at which he worked as a guard, the two accosted and stabbed him throughout his body with knives. After this act the appellant and his colleague fled from the site. Shortly thereafter, the two returned to the place of the incident to get his collaborator's that had been forgotten there. The colleague noticed that the deceased was still alive and therefore the two decided to complete the task. They therefore wrapped a television antenna cable around the neck of the deceased and garroted him.

[Stamp] P2: 140 [continued]

Date:  8 Shevat 5768                                                                                          Case No.: 2305/04
       January 15, 2008

After the deceased continued to show signs of life, to ensure his death, the appellant and his collaborator pushed his head into a bucket of water and fled from the site in a stolen vehicle. The deceased died as a result of the stab wounds that had caused him to lose blood. At the time of the murder, the appellant was seventeen years and three months old.

In its verdict, the Court discussed a list of questions of principle relating to the sentencing of minors who had been convicted of offenses of causing intentional death. Despite the difference between the law applying in the Area and the law applying in Israel on the issue, a major part of the questions that the Court heard in that case applies to our case. To illustrate this, we shall briefly cite the statements of the Honorable Vice President (as his title was then) Heshin in his decision in this case:

> **"The purpose of the instruction of Section 25(B) is self-evident: whoever has been convicted of an act that he committed when he was a minor is not to be burdened in the way that we burden adults. While it is presumed that the mind of a minor is still not mature, and this presumption may be dubious at times, the Court should have discretion as to the sentence that it will inflict upon him without equating it to sentences that have been prescribed from the outset in the law in a rigid manner. Thus, a minor offender will not be subjected to mandatory imprisonment sentences, a minimum sentence or a mandatory prison sentence. However, there is no connection to conferring upon the Court discretion and restriction of "life imprisonment" to twenty years; on the contrary. This is the case of a minor, a short time before his eighteenth birthday, who murdered his father in a vicious, terrible act. For what reason should the Court be limited, when sentencing that minor to prison – who in the meantime has become an adult – to a maximum sentence of twenty years? What purpose would this sentencing limit serve? And if we were not to limit the discretion of the Court, the sentence would be matched to the act and the circumstances of the matter and the Court would be able to hand down a sentence befitting this evil act. In summary: no for mandatory sentencing, yes for optional sentencing. That is the purpose of the law; and the meaning of Law, in our opinion, is that which corresponds with the purpose of the law."**

The provisions of the Convention on the Rights of the Child (Convention Texts, 1038, Volume 31, pp. 269-295), which were ratified by Israel on August 4, 1991, and which took effect concerning Israel on November 2, 1991, apply to our case. Article 37 of this convention states, *inter alia*, the following words that relate directly to the question of whether there is room for sentencing to life imprisonment a person who has not yet reached the age of eighteen:

[Stamp] P2: 141