> "Neither capital punishment nor life imprisonment without possibility of release shall be imposed for offences committed by persons below eighteen years of age."

Prof. L. Sebba in his article, "Human rights and the sentencing system – did the 1990s yield two constitutional revolutions?", Legal Studies M (5756-1996) 183 believes that the power of pardoning, which allows for the limitation of the sentence of a prisoner sentenced to life imprisonment – does not satisfy the qualification prescribed in Article 37 (a) of the Convention, which deals with "life imprisonment without possibility of release". The point of this is that the power to grant pardons is an extraordinary power that is given to the absolute discretion of the pardoner and is not based on the idea of the right of the prisoner that forms the foundation of the Convention. Some support for this position can be seen in a footnote that was written by Justice Dorner in Criminal Appeal 3112/94, **Sufian Abu Hassan v. State of Israel**, *PD* 53 (1) 422, who adopted at certain points the opinion of Prof. Sebba concerning the pardoning power of the President in Israel.

[Stamp] P2: 141 [continued]

Date:  8 Shevat 5768
       January 15, 2008

Case No.: 2305/04

Although the Supreme Court in the John Doe Case dismissed the contentions on this matter and states that the Court has the authority to sentence a minor in Israel to life imprisonment, it is not possible to ignore the principles underlying the Convention on the Rights of the Child. These principles, which relate to the proper way to act when sentencing minors, should be noted by the Court when it applies itself to sentencing.

In the John Doe Case, the Supreme Court decided to sentence the defendant to twenty five years' imprisonment for the cruel murder of his father, primarily on the account of his being a minor at the time of the act. We must emphasize that as indicated by the verdict, the Supreme Court sentenced the defendant's accomplice in the commission of the offense, who was an adult, to life imprisonment, to be served.

The Court explained its decision within the following arguments, which apply to our case:

> **"The fitting sentence for the appellant**
>
> **The last contention of the appellant is that the Lower Court was excessively harsh to him and that his sentence should be comminuted, given his difficult personal circumstances. The appellant contends that the deceased, his father, abandoned his family, which was living in Gaza, emigrated to Israeli territory and there he raised a new family. The deceased's act of disowning his family left the family in great economic distress and instilled in the appellant a feeling of deep frustration. The appellant, who had to resort to supporting the family, hoped to gain assistance from the deceased by obtaining a permit to work and stay in Israel, but the deceased refused to help him and also threatened to hand him over to the authorities in Israel. In view of these difficult circumstances, the appellant formed a decision to cause the death of the deceased, and he contends that the District Court erred when it did not consider the suffering that he had experienced and that pushed him to the act. The appellant also contends that he regrets his acts, understands their severity, and that the District Court erred when it stated that the appellant had not expressed remorse for his actions. The appellant also asks us to consider that at the time of commission of the act, he was a minor and was hurt and confused by the behavior of his father, and did not understand the meaning of his actions. He also asks us to consider that he had confessed to the act, while sparing Court time and taking full responsibility for his actions.**

[Stamp] P2: 142

The probation review that was filed with us has shown us that the probation officer was convinced of the honesty of the words of the appellant concerning his regret for his evil acts, which acts were committed out of severe, chronic personal distress. The offense of murder is one of the most severe in the Israeli penal code, and patricide is one of the worst forms of murder. So severe is the offense of patricide that pursuant to Section 300 (A) (1) of the Penal Code, a mental foundation of "malicious" is sufficient for conviction and a mental foundation of premeditation is not required (see Section 90 A of the Penal Code for a definition of the term "malicious"). The appellant, as set forth, was convicted of the offense of murder pursuant to Section 300 (A) (2), an offense of premeditated murder. But instead of going into a verbose account of the severity of the offense of murder, we shall satisfy ourselves with a quote from Maimonides in Mishnah Torah: "Although there are other sins that are more serious than murder, they do not present as serious a danger to society as murder does. Even idol worship – and needless to say, incest or the violation of the Sabbath – are not considered as severe as murder. For these sins involve man's relationship with God, while murder also involves man's relationship with his fellow man. Whoever commits this sin is an utterly wicked person." (Maimonides, Hilchot Rotzeach U'Shmirat Nefesh, Chapter 4, Halacha 9). If this were not enough, […]

[Stamp] P2: 142 [continued]

Date: 8 Shevat 5768  
January 15, 2008

Case No.: 2305/04

> [...] the act of murder of the deceased was a cruel, atrocious act that was carried out with deliberate, calculated intent. The appellant and his collaborator did not satisfy themselves with driving a knife into the body of the deceased multiple times, but returned and intended to cause his death using various cruel methods until he did expire. We shall not be able to ignore the cruelty with which the murder was carried out nor the determination to kill that was woven into the acts of the appellant and his collaborator when examining the sentence that the District Court passed against the appellant. See and compare: Criminal Appeal, 6535/01 Dimitri Kozirov v. State of Israel, *PD* 57 (3) 562, 574-575.
>
> **We therefore decide to uphold the sentence that the District Court handed down.**"

The arguments that were written by Vice President (as his title was then) Heshin, that seemingly apply to our case as well, indicate difficulty in the sentencing task in the case of minors who are convicted of the offense of causing intentional death.

In the end, there is no room, in my opinion, for sentencing the Defendant to life imprisonment.

This decision is based primarily on the age of the Defendant at the time of commission of the offenses and the aggregate of the mitigating circumstances that were elaborated in the sentencing pleas stage by the Defendant and his attorney.

I shall emphasize that in my opinion, despite the severity of the acts, significant weight should be attributed to the young age of the Defendant at the time of committing the offenses and there is no room for punishing him to the full extent of the law.

Therefore, I concur with the result that was given by the decision of my colleague the Honorable Judge Dahan.

**The Honorable Judge Dalia Kaufman:**

I have read with great attention the learned opinions of my fellow panel members. Despite accepting their basic deliberations, I cannot agree with their application in the concrete case, for which my arguments are as follows.

[Stamp] P2: 143

21

As the President of the Court, Lieutenant Colonel Tirosh, wrote in his opinion, the Supreme Court has ruled that the Court has discretion as to whether to sentence a minor to life imprisonment or not (see Criminal Appeal, 4379/02 – John Doe v. State of Israel. Supreme Court Compendium 2006 (1), 649, at 652).

> *"Lawmakers have asked to broaden the latitude of power concerning a minor: they had no intention to touch the instruction that prescribes the length of the sentence for murder. The offense of murder has remained in essence and this applies to the sentence handed down for it, and therefore, the possibility of handing down in the appropriate cases a sentence of true life sentence must continue to apply. However, the Court is conferred, as set forth, concerning a minor, with a greater range of options. That and no more…"*

The laws of the Area also confer the upon Court discretion as to whether or not to sentence a defendant who was a minor at the time of the commission of an offense to life imprisonment for the offense of causing intentional death.

It is now asked whether the Defendant, who was convicted for offenses that deal with aiding in the causation of intentional death while he was a minor, is fit for life imprisonment.

[Stamp] P2: 143 [continued]

Date:  8 Shevat 5768
       January 15, 2008

Case No.: 2305/04

In my opinion, there are a number of facts that necessitate handing down a sentence of life imprisonment in this case.

Indeed, the part of the Defendant in the execution of the suicide attacks is small relative to that of other accomplices, as the Defendant was the one who purchased materials for preparing the explosive devices only and he did not deal with their preparation or any other part of carrying out the suicide attacks.

It is reasonable to assume that had the Defendant taken part in the first attack alone and had not assisted in the second attack that was carried out, there would have been room to consider making do with a sentence set in years only, in view of his age at the time of commission of the said offense. However, the Defendant, one month after committing the first offense and after having already seen the terrible results of his own actions and those of his collaborators, chose to involve himself again in similar acts, while being aware that this was intended to cause the deaths of great numbers of innocent people. The Defendant was aware and saw before him the results of the explosion of a suicide terrorist aboard a bus. It is important to emphasize that the period in which the offenses were committed by the Defendant was a period in which many particularly murderous suicide attacks were carried out, and it was obvious then to any 17-year-old what the consequences of actions of this type would be.

Not only that, but about a month after carrying out the second attack, which took a huge number of victims, the Defendant conspired with another person to make an explosive bag, weighing 12 kilogram by himself, in order for his collaborator to carry out a suicide attack using it. This attack was prevented only by the arrest of the Defendant. This act shows us that the Defendant had no understanding of the severity of his acts, but sought to increase his activity and take a more significant part in the preparation of a suicide attack. In view of this, the words of the Defendant in the Court assume a weight that differs from that which was presented by my fellow panel members.

In the case before us, in view of the great cruelty and the danger of suicide attacks, public interest requires us to sentence the Defendant to life imprisonment, for all of his acts. This sentence would serve to express the repulsion surrounding the willingness and the insistence of the Defendant to take part in the taking of human life on a massive scale.

[Stamp] P2: 144

23

## Conclusion

**The Defendant is to serve the following sentences:**

(A) Thirty years' imprisonment to be served, starting from the day of arrest of the Defendant.

(B) Five years' suspended imprisonment, on the condition that within five years from the day of his release, the Defendant will not commit a violation of Regulations 85 and 58 of the Defense Regulations (Time of Emergency), 1945, or any other offense in a matter of possession of war materiel or of trading of war materiel or any other offense that is intended to harm human life.

**Handed down this day, 8 Shevat 5768, January 15, 2008, in chambers.**

**The secretariat of the Court will distribute the arguments for sentencing to the parties.**

[Stamp]   Amir Dahan
          Judge
__[Signature]_____          __[Signature]_____          _____
**Judge**                        **President of the Court**                      **Judge**

[Stamp] P2: 144 [continued]

24

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE PALESTINE LIBERATION ORGANIZATION, *et al.*,<br><br>    Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 133-144.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 133-144.

                                  _____
                                  Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28th day of February, 2014

_____
Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
ID # 2392704

# בית המשפט הצבאי יהודה

בפני כב' האב"ד: סא"ל יאיר תירוש
השופטת: רס"ן דליה קאופמן
השופט: רס"ן אמיר דהאן

התביעה הצבאית
(באמצעות סרן שגיב ליכטמן)

נגד

הנאשם: אחמד מוחמד אחמד סעד ת.ז 911744878 / שב"ס
(באמצעות ב"כ עו"ד אוסאמה עודה)

## נימוקי גזר דין

כב' השופט אמיר א. דהאן:

א.  כתב האישום והכרעת הדין

הנאשם, יליד שנת 1987, מדוחה, הורשע בביצוע העבירות הבאות:

1. **סיוע לגרימת מוות בכוונה-** עבירה לפי סע' 51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשי"ל – 1970 ולפי סעיף 14 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 225), תשכ"ח- 1968 **(19 עבירות).**

2. **סיוע לניסיון גרימת מוות בכוונה-** עבירה לפי סע' 51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשי"ל – 1970 ולפי סעיפים 14,19,20 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח– 1968 **(2 עבירות).**

3. **קשירת קשר לגרימת מוות בכוונה-** עבירה לפי סע' 51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשי"ל – 1970 ולפי סע' 21,22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח – 1968 **(עבירה אחת).**

4. **קשירת קשר לייצור פצצה-** עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח – 1968 סעיף 53 (א)(3) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשי"ל – 1970 **(עבירה אחת).**

5. **החזקת חומר נפיץ-** עבירה לפי סעיף 53 (א)(3) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשי"ל – 1970 **(עבירה אחת).**

העבירות המרכזיות בהן הורשע הנאשם נסובות סביב מעורבותו בביצועם של שני פיגועי התאבדות קטלניים בירושלים. הפיגוע הראשון התרחש ביום 29/1/04 בקו אוטובוס 19 והפיגוע השני ביום 22/2/04 בקו אוטובוס 14 בהם נרצחו 19 בני אדם.

תאריך: ח' בשבט תשס"ח                                    תיק מס': 2305/04
15 ינואר, 2008

1  כמפורט בהכרעת הדין מעשי הנאשם היו בגדר סיוע לאחר (עלי אבו הלאיל, להלן:
2  "עלי") ברכישה של חומרי גלם להכנת חומרי נפץ. אותם חומרי גלם, ביחד עם
3  חומרים נוספים שימשו להכנת תיקי נפץ אשר הוכנו על ידי אדם נוסף בשם מקדאד.
4  כמפורט בהכרעת הדין הנאשם לא עשה דבר לבדו אלא פעל בהנחיות מפורשות מאת
5  עלי המבוגר ממנו. כמו כן, מעשיו מאופיינים בקלות דעת ואדישות לתוצאות.
6
7  **ב. טיעוני התביעה**
8
9  1.  התביעה טענה כי לנאשם היה חלק משמעותי בתהליך ייצור המטענים והבאת
10     חומרי הגלם. לטענת התביעה מעשיו נעשו תוך צפיית התוצאות מהפעלתו של
11     מטען החבלה. אשר על כן, יש להענישו בחומרה שתשקף את חומרת המעשים
12     אותם ביצע.
13
14 2.  התובע הדגיש את התוצאות הקשות של פיגועי ההתאבדות: רציחתם של 19
15     אנשים בטבח חסר אבחנה ופציעתם של עשרות.
16
17 3.  התובע טען כי העונש ההולם בנסיבות המקרה הינו מאסר עולם אחד בגין כל
18     עבירה של סיוע לגרימת מוות בכוונה. לעונש זה יש לצרף שני מאסרי עולם
19     נוספים בגין כל עבירה של סיוע לניסיון לגרימת מוות וכן עונש קצוב בשנים בגין
20     העבירות הנוספות. בכך הסתמך התובע על פסיקת ביהמ"ש לערעורים ועל עקרון
21     קדושת החיים. נוכח פסיקת בית המשפט הצבאי לערעורים ראוי לדעת התביעה
22     שחלק מהעונשים יחפפו זה לזה באופן מסוים שיבטא נכונה את חומרת
23     המעשים ועקרון קדושת החיים.
24
25 4.  התובע הפנה אותנו לתיקי השותפים תיק (יהודה) 2306/04 **התוב"צ נגד עלי אבו**
26     **הלאיל** ולתיק (יהודה) 2303/04 **התוב"צ נגד חילמי המאש** וחזר על טיעוניו
27     לעונש בתיקים אלה. התובע ציין כי אף אם חלקו של הנאשם קטן מזה של
28     שותפיו ובמיוחד מחלקו של עלי אבו הלאיל אין בכך כדי ליצור מדרג ענישה
29     אשר ימצה את עונשו של הנאשם בעונש קצוב בשנים על פי פסיקת בית המשפט
30     הצבאי לערעורים.
31
32 5.  ההבדל בין שותפות וסיוע ובין עוצמת החלק שנטל הנאשם בעבירות לבין החלק
33     של נאשמים אחרים בפרשה נטלו בעבירות אמור להתבטא לדעת התביעה
34     בהצטברות חלק ממאסרי העולם זה לזה.
35
36 6.  התובע סיים את דבריו בעתירתו לעונשים הבאים אשר ראוי לטעמו שיגזרו על
37     הנאשם בגין המעשים שפורטו לעיל:
38
39     "א. בגין גרימת מותו בכוונה של כל אחד מההרוגים (מקריא את שמות
40     ההרוגים) מאסר עולם (19 מאסרי עולם). ב. בגין כל אחד מפרטי
41     אישום הסיוע לניסיון לגרימת מוות בכוונה מאסר עולם (2 מאסרי
42     עולם). ג. בגין שאר העבירות, עונש קצוב בשנים.
43
44     נוכח פסיקת ביהמ"ש הצבאי לערעורים ולנוכח עקרון קדושת החיים
45     מבקשת התביעה כי עונשי מאסר העולם הנוגעים לפיגוע הראשון ירוצו
46     בחופף, עונשי מאסר העולם הנוגעים לפיגוע השני, ירוצו בחופף ושתי
47     קבוצות עונשים אלו והעונש הקצוב ירוצו במצטבר זה לזה כך שבפועל
48     ירצה הנאשם עונש של 2 מאסרי עולם ועונש קצוב בשנים."

P 2: 134

תאריך: ח׳ בשבט תשס״ח                                              תיק מס׳: 2305/04
15 ינואר, 2008

ג. **טיעוני ההגנה**

1. הסנגור מיקד את עיקר טענותיו בחלק המינורי, לשיטתו, אותו מילא הנאשם בביצוע הפיגועים. חלק זה היה כאמור העברת אצטון לצורך הכנת חומר נפץ לידיו של עלי אבו הלאיל. עלי אבו הלאיל העביר את האצטון לאדם אחר בשם ע/א רחמאן מקדאד בצירוף עם חומרים אחרים לצורך הכנת המטענים.

2. עוד טען הסנגור כי בתיק (יהודה) 2306/04 **התוב״צ נגד עלי אבו הלאיל** הורשע אבו הלאיל בסיוע לגרימת מוות, על אף שמעשיו ופעילותו, כעולה מחומר הראיות, היו קשים וחמורים בהרבה משל הנאשם. לדברי הסנגור הנאשם שימש כמסייע לאותו עלי אבו הלאיל.

3. לאור האמור הסנגור טען כי לא יתכן שהשותף עלי אבו הלאיל ייענש במאסרי עולם חופפים שפירושם מאסר עולם יחיד, ואילו הנאשם, הרך ממנו בשנים והעני ממנו במעשים, ייענש קשה ממנו. לשיטת הסנגור אין הדבר משקף את עקרון אחידות הענישה.

4. עוד טען הסנגור כי הנאשם היה קטין בעת ביצוע העבירות ויש להתחשב בכך.

5. כמו כן, הפנה הסנגור את בית המשפט לטיעוניו בתיק (יהודה) 2303/04 **התובע הצבאי נ׳ חילמי המאש** בעניינו של שותף נוסף בפרשייה.

6. הנאשם בדברו האחרון אמר בהתרגשות רבה את הדברים הבאים:

"אני מודה לכבוד בית המשפט בגלל שמסרתם לי את רשות הדיבור. נולדתי לשני הורים שהתעניינו מאד בלימודי הילדים ואני עשיתי את מה שהם רצו ממני עד שהגעתי לגיל 17. בזמן הזה היה חבר שלי ועשיתי טעות ואני מתחרט על זה שעשיתי את זה אולם החלק שעשיתי, אני מודה בו אבל את מה שעשיתי הוא חלק שביצעתי אותו בלי לחשוב על התוצאות ואני מקווה שיהיה ברור לכולם שאני בזמן שהגעתי לגיל בגרות חשבתי על מעשיי וראיתי שהמעשים שעשיתי אותם הם מעשים אלימים ולא טובים נגד האנושות אך זה היה בעבר ואני לא יכול לשנות את העבר ואני מתכוון לעשות דבר כמו גומלין, לגמול את זה ולהציל אנשים שלא יהיו כמו שאני הייתי קודבן של החברה הלא יודעת באמת מה המחשבות של החברה השנייה. אם אתם חושבים שאני מהווה סכנה על האזור אני יכול, אם אתה מסכימים על זה שאצא בכלל מהאזור למרות שאני לא מעדיף את זה בגלל שאני רוצה בעקשנות, להבהיר לכולם שלא רציתי לעשות את זה ואני מתחרט על זה ולהוכיח את זה ובזמן שאני פה. אני מבקש מביהמ״ש שתצילו אותי מהחברה של בית הכלא שלא יודעת אלא שפיכות דמים ולא מדברים על השלום או על דו קיום ומי שמדבר על זה נחשב בוגד והוא לא טוב נגד האנושות. זה משהו קטן ממה שאני רוצה לדבר איתכם אולם אני יודע שהנבון מבין את כל העניין. ואני יודע שכבודם הכי נבונים. כל מה שאמרתי עם כל הכבוד לכם אל תחשבו שאני מדבר על זה כי אני תחת השפעת הכלא או העונש. אני באמת מאמין בזה ואני מאמין שיש צדק. אני עכשיו תחת השפעת השכל, ההיגיון והמדע ואני רואה שהמדע הוא הדרך הנכונה. אני לומד באוניברסיטה הפתוחה אצלכם ואני רוצה להמשיך את לימודי בפסיכולוגיה בישראל. תודה רבה.״

ד. **עקרונות מנחים כלליים בגזירת דינו של הנאשם**

7. בעת גזירת דינו של הנאשם נעזרנו, בין היתר בהצעת חוק העונשין (תיקון מספר 92) (הבנייה שיקול הדעת השיפוטי בענישה) התשס״ו- 2006 אשר נוסחה ועקרונותיה נראים לבית המשפט כתבנית מתאימה לשם הבנייה נכונה ולוגית של שיקולי ענישה.

8. הנוסח והעקרונות מאומצים בשינויים המתחייבים מהעדר "עונשי מוצא", מן השוני בין דיני העונשין במשפט הישראלי לבין הדין החל באזור.

9. כאמור העיקרון המנחה בענישה הוא קיומו של יחס הולם בין העונש המוטל על עבירה שנאשם ביצע לבין חומרת מעשה העבירה ואשמו של הנאשם. במסגרת יישום עקרון זה נאמר כי העבירות אשר בוצעו הינן חמורות ורצחניות, הנאשם לקח בהן חלק מינורי אך ידע היטב כי הוא מהווה חולייה בשרשרת שסופה טבח חסר אבחנה.

10. בית המשפט התחשב בערך החברתי שנפגע כתוצאה מביצוע העבירות, במידת הפגיעה בו, במדיניות הענישה הנהוגה ובמדיניות הענישה הראויה וכן התחשב, לצורך הערת חומרת מעשי העבירות שביצע הנאשם ומידת אשמו, בנסיבות המקלות והמחמירות הקשורות בביצוע העבירה.

11. מן האסמכתאות עולה רמת ענישה אשר לפיה יש לפסוק בעבירות דומות מאסר בפועל הנע בין עשרות שנות מאסר למאסרי עולם מצטברים והכול בהתאם לדקויות של הנסיבות המקלות או המחמירות לפי העניין.

12. בית המשפט רשאי לחרוג מהעיקרון המנחה ולהחמיר בענישה, כדי להגן על שלום הציבור, אם מצא, בין השאר, נוכח נסיבות העבירה או מועדותו של הנאשם, כי הנאשם מסוכן לציבור. על מנת להגשים שיקול ענישה זה, הביא ביהמ״ש בחשבון כי הנאשם הינו חסר עבר פלילי, וכן את דבריו על מידת ההשפעה של אחרים עליו, בהיותו רך בשנים בעת ביצוע העבירות אשר שיקול דעתו פגום. דבריו של הנאשם בעת דברו האחרון עשו עלינו רושם כנה ומהימן, דבר המפחית לאור תוכנם ממועדותו לבצע עבירות נוספות לאחר ריצוי עונשו.

בקביעת העונש התחשבנו בכל הנסיבות הצריכות לעניין.

לצורך כך התחשבנו בכל השיקולים הצריכים לעניין ובחרנו לסדר את השיקולים על פי הקבוצות הבאות של השיקולים כפי שנוסחו בהצעת חוק העונשין (תיקון מספר 92) (הבנייה שיקול הדעת השיפוטי בענישה) התשס״ו- 2006 :

  o **הנסיבות המקלות הקשורות בביצוע העבירה.**

  o **הנסיבות המחמירות הקשורות בביצוע העבירה.**

  o **הנסיבות המקלות שאינן קשורות בביצוע העבירה.**

  o **נסיבות המחמירות שאינן קשורות בביצוע העבירה.**

## ה. הנסיבות המקילות הקשורות בביצוע העבירה:

1. בית המשפט מצא על יסוד חומר הראיות בתיק שהנאשם היה נתון להשפעתו ולמרותו של עלי אבו חלאיל ומעשה העבירה בוצע על ידו בהשראתו ולבקשתו של אבו חלאיל.

2. בית המשפט בדק מה היו היחסים בין השותפים השונים כפי שעולה מן הראיות. בדיקה זו העלתה עובדות אשר מהוות בבירור נסיבות מקלות. מסתבר כי הנאשם לא עשה דבר לבדו אלא בהנחיות ודרישות מפורשות מאת עלי אבו חלאיל המבוגר ממנו.

3. מעשי הנאשם מאופיינים בקלות דעת ואדישות לתוצאות האופייניים לגילו. הנאשם גיבש קו עקבי של ציות לכל מבוקשו של עלי אבו חלאיל וגילה קווים ילדותיים בולטים בהתנהגותו.

4. בביצוע העבירה השתתפו מבצעים אחדים, וחלקו של הנאשם בביצועה היה קטן מחלקם של האחרים. לשם הגשמת שיקול עניישה זה, בדק בית המשפט את חלקו של הנאשם בכל אחת מן העבירות, ומצא כי נטל בכל אחת מהן חלק ביודעו את תוצאתם הקטלנית, אך בחוסר יוזמה ובחוסר אכפתיות לגבי האפשרויות שהתוצאות תתרחשנה.

5. חלקו של הנאשם בהשגת האציטון לא נשא חותם מיוחד של מבצע או מתכנן ולמעשה היה ניתן לביצוע על ידי אנשים אחרים. ניתן לקבוע, על פי חומר הראיות שבפנינו כי חלקו של הנאשם היה קטן בשיעור ניכר מאוד מחלקו של עלי אבו חלאיל.

6. עלי אבו חלאיל גילה יוזמה רבה והשתמש בנאשם ככלי בידיו וזאת על מנת לפזר ולטשטש את קניית חומרי הגלם המשמשים בידיו להכנת חומר נפץ מאולתר בכמות גדולה.

7. נתנו דעתנו לשאלה עד כמה ידיעתו האמיתית של הנאשם (להבדיל מהשערות והסכמות בדיעבד) בדבר המעשים שבוצעו בחומרים שרכש. בעניין זה מפרט הנאשם באמרותיו ומסתבר כי העובדות לא היו "מונחות על השולחן" ועלי לא פירט מה היו תוצאות החומרים שעזר באספקתם.

### עקרון אחידות הענישה

8. מלאכת ההכרעה בענישת שותפים ומסייעים בגרימת מוות היא קשה ומורכבת, כל נפש היא שניטלה היא עולם מלא וראוי הרוצח כי ייטלו ממנו את עולמו בגין כל נפש שנטל. שקול הדבר לאריתמטיקה של מספרים אינסופיים בה מתבקש בית המשפט להכריע איזה הוא האינסוף הגדול יותר.

9. במסגרת זו לא נוכל להתעלם מגזר דינו של בית המשפט בעניין עלי אבו חלאיל שאוזכר לעיל אשר בגינו לא הוגש כל ערעור, אין ספק כי מעשיו של אבו חלאיל ואישומיו חמורים בהרבה ממעשיו של הנאשם אשר תיפקד כשוליה של אבו חלאיל המבוגר ממנו היוזם והמכוון אותו. בנסיבות הללו יש

לדרג את עונשו של הנאשם ועונש המוצא יהיה למטה מעונשו של עלי אבו הלאיל.

**דברי הנאשם**

10. לא נכחד כי דברי הנאשם הותירו בנו רושם. הנאשם הביע חרטה ובעיקר פרספקטיבה נכונה של מעשיו ותוצאותיהם.

11. הנאשם נטל אחריות מלאה על מעשיו וציין כי כעת משבגר מעט ואינו נער עוד הוא מבין את חומרתם, את סכלותם ואת חוסר טעמם של מעשי העזרה לעלי אבו הלאיל בקידום כוונתו הקטלנית.

12. הנאשם חידש את לימודיו בכלא, התנהגותו בפנינו ללא דופי ונראה כי משאלתו לשקם את חייו. צערו בדיעבד על שסייע לטבח אנשים שלא עשו דבר נשמע לנו כנה ואמיתי. בעברית יפה שלמד בכלאו ובתובנות של אדם הבוגר מכפי גילו הבהיר לנו הנאשם את חרטתו ואת אחריותו למעשיו האיומים. כל אלה יחד עם מצבו המיוחד מול שותפיו וגילו הצעיר בעת ביצוע העבירה-היטו את הכף לזכותו מידת מה.

**ו. הנסיבות המחמירות הקשורות בביצוע העבירה**

1. בית המשפט שקל לחומרא את העובדה כי העבירה בוצעה באופן היוצר סכנה לרבים. אחריות לטבח המוני נושאת עמה חותם ברור של סכנה לרבים.

2. בית המשפט שקל לחומרא את העובדה כי העבירות בוצעה בסדרת מעשים המהווים פרשה אחת וכללו תכנון מדוקדק הגם שלא הנאשם הוא שתכנן.

3. בית המשפט שקל לחומרא את היקף הפגיעה העצום באנשים, תשעה עשר מקרים של מוות אלים ופצועים בעשרות- כל זאת- תולדת סיועו של הנאשם.

4. בית המשפט הביא בחשבון כי מניעי העבירות היו גזעניים מובהקים ומטרתן להביא להרג של יהודים או ישראלים באשר הם יהודים או ישראלים, הרצח המתוכנן- חסר אבחנה היה ולא יוחד אלא ליהודים או ישראלים אשר יזדמנו למקום ולמועד אותו קבעו הנאשמים. משלא נותר מקום לספק כי הקריטריון אשר היה אמור לדון את הקורבנות למוות הוא הלאום היהודי או הציבור הישראלי ישקול בית המשפט שיקול זה לחומרא.

**ז. הנסיבות המקילות שאינן קשורות בביצוע העבירה:**

1. **גילו הצעיר של הנאשם.**
בית המשפט שקל לקולא את העובדה שהנאשם היה בן שבע עשרה בעת ביצוע העבירות, גיל זה הינו גיל צעיר במיוחד ומצדיק הקלה בעונש.

תאריך : ח' בשבט תשס"ח        תיק מס' : 2305/04
15 ינואר, 2008

2. **העדר עבר פלילי של הנאשם.**
בית המשפט שקל לקולא את העובדה שלנאשם לא היה עבר פלילי, מנגד משקלו של שיקול זה מופחת משמעותית בהתחשב עם גילו הצעיר של הנאשם וחומרתן הקשה של העבירות.

3. **שיתוף פעולה של הנאשם עם רשויות אכיפת החוק וסיוע להן במהלך החקירה והמשפט שהתנהלו בקשר לעבירה, לרבות לעניין חקירת נסיבות העבירה והשתתפות אחרים בה.**

4. לשם הגשמת שיקול עניישה זה הביא בית המשפט בחשבון כי הנאשם הודה במיוחס לו וחסך מזמנו היקר של בית המשפט. לא למותר לציין כי הנאשם הודה כבר במשטרה במעשיו וחומר הראיות הוגש בפנינו ללא הסתייגות בכך מיקד הנאשם למעשה את הדיון בשאלות היסוד הנפשי שהייתה שנויה במחלוקת.

בסופו של יום ,תיזקף התנהגות זו כנסיבה לקולא בשעת גזירת עונשו של הנאשם .

ח. **הנסיבות המחמירות שאינן קשורות בביצוע העבירה הן אלה:**

הצורך בהרתעת עבריינים פוטנציאליים מפני ביצוע עבירה מסוג העבירה שביצע הנאשם, בשל מהות העבירה או שכיחותה.
בית המשפט שקל לחומרא כי העבירה ומאפייני ביצועה הינם שכיחים למדי וייתכן כי המסייע בדרך כזו של סיוע בביצוע קניית חומרים עלול לחשוב בינו לבינו כי חלקו פעוט ואינו חמור.

לפיכך הביא בית המשפט בחשבון כי הצורך בהרתעה ציבורית הינו גבוה בפרט כאשר מדובר במעשים אשר מהותם ותוצאתם העבריינית אינה בוטה מיידית או בולטת לעין, עלול אדם לחשוב כי "עריכת הקניות" לצורך הפיגוע היא מעשה של מה בכך ,וכל אדם יכול לעשות כן . יבוא בית המשפט ויראה לציבור את מידת החומרה הגלומה במעשים אלה .כל זאת שקל בית המשפט כשיקול לחומרא.

ט. **העולה מן המקובץ :**

בשים לב לשיקולים לקולא ולחומרא אשר נמנו הצעתי לחבריי לגזור על הנאשם את העונשים הבאים :

(א) שלושים שנות מאסר לריצוי בפועל אשר ימנו מיום מעצרו של הנאשם .
(ב) 5 שנות מאסר על תנאי והתנאי הוא שבמשך 5 שנים מיום שחרורו ממאסר לא יעבור הנאשם עבירה על תקנות 85 ו- 58 לתקנות ההגנה (שעת חירום), 1945 או כל עבירה אחרת שעניינה החזקת אמצעי לחימה או סחר באמצעי לחימה או כל עבירה אחרת שנועדה לפגוע בחיי אדם.