תאריך: ח' בשבט תשס"ח                                   תיק מס': 2305/04
15 ינואר, 2008

**כבוד השופט יאיר תירוש:**

קשה מאוד היא ההכרעה בשאלת העונש הראויה בנסיבות המקרה. יפים לענייננו דבריו של כבוד השופט מ' אלון (כתוארו אז) שתיאר את מורכבות ההליך של גזירת הדין בע"פ 344/81+359 **מדינת ישראל נ' שחר סגל ואח'** פ"ד לה(4), 313, עמוד 322:

> "מדידת מידת העונש קשה היא לשופט כקריעת ים סוף. משבא הוא לשקול, אם להרשיע או לזכות, מצויים בידיו עקרונות וכללים, פרטי דינים ודקדוקי דקדוקים של תלי תלים של הלכות, שאותם הוא מיישם לעניין המסוים שלפניו. לא כן משסיים מלאכה זו, ועלה בידו, שיש להרשיע את הנאשם. המחוקק מסר בידו מידת עונש- במיוחד כשמדובר בעונש מאסר- שיש לה שיעור למעלה ואין לה שיעור כל שהוא למטה (פרט למקרים יוצאים מן הכלל); ובמסורת הפסיקה נקבעו כללים כלליים בדבר אופייה של העבירה, טיבו של העבריין ושלומו של הציבור. כל אלה יפים הם לעיון ולדיון, אך קשים הם ביותר ליישמם להלכה ולמעשה, שהרי מעצם טיבם ומהותם אין בהם כדי לכוון את דעתו והכרעתו של השופט אלא בצורה כללית ביותר. ואם אמנם מציאות זו של הכוונה כללית וסתמית לשופט בהטלת העונש קשה היא לו, הרי חיונית והכרחית היא לעצם מלאכת הענישה: באה היא ללמדך, שכל מקרה ומקרה צריך להיות נדון לגופה של העבירה ולגופו של העבריין, והכללים שבדרכי ענישה אינם אלא בבחינת נקודות מוצא בלבד."

הקושי בו דן כבוד השופט אלון בהחלטתו במלאכת גזירת הדין בולט במיוחד במקרה נשוא הדיון נוכח מורכבות השאלות העומדות לדיון.

כבוד השופט חיים ה' כהן התייחס לסוגיה המורכבת של מלאכת גזירת הדין בספרו "המשפט" (מהדורה שנייה מתוקנת ומורחבת, תשנ"ה- 1996). הדברים שנכתבו על ידו ורלוונטיים לענייננו מדגישים את החשיבות הרבה שיש בבחינה מדוקדקת של כל מקרה לגופו בעת גזירת הדין (עמוד 715 לספרו):

> "שיקול הדעת שמחוקק מעניק לשופט לעניין מידת העונש, אף שיקול דעת עניין מטרות הענישה במשמע. הלכה למעשה שופט שוקל במודע או בתת מודע את כל המטרות והמידות האפשריות, כדי שיגיע לגזר דין צודק. יש שמטרה אחת שקולה בעיניו כנגד יתרן ויש שמידה אחת עדיפה בעיניו על אחרות- הכול לפי הנאשם העומד לפניו, טיב התנהגותו ונסיבותיה. מכאן אמרו, שהעידן שלנו הוא עידן האינדיבידואליזציה של הענישה- עבריין עבריין וחטאו שלו."

בע"פ 4379/02 פלוני נ' מדינת ישראל תק-על 2006(1), 649 (להלן: עניין פלוני) דן בית המשפט העליון בשורה של שאלות עקרוניות העולות בענייננו בהרכב בראשות הנשיא ברק (כתוארו דאז). באותו מקרה כפי שנכתב בפסק דינו של בית המשפט העליון המערער וחברו קשרו קשר לרצוח את המנוח, אביו של המערער. השניים בשעה שהמנוח נם את שנתו באתר הבניה שבו עבד כשומר, התנפלו עליו ודקרוהו בסכינים בכל חלקי גופו. לאחר מעשה ברחו המערער וחברו מן המקום. זמן קצר לאחר מכן חזרו השניים למקום האירוע כדי לקחת את משקפי החבר שנשכחו שם. החבר הבחין כי המנות עדיין בחיים ולפיכך החליטו השניים להשלים את המלאכה. כרכו אפוא כבל של אנטנת טלוויזיה סביב צווארו של המנוח וחנקוהו.

תאריך: ח' בשבט תשס"ח                     תיק מס': 2305/04
15 ינואר, 2008

לאחר שהמנוח המשיך להראות סימני חיים, וכדי לגרום סופית למותו הטביעו המערער וחברו את ראשו בדלי מים ונמלטו השניים מן המקום ברכב גנוב. המנוח נפטר כתוצאה מן הדקירות שנדקר ואשר גרמו לו לאיבוד דם. במועד הרצח היה המערער בן שבע-עשרה שנים ושלושה חודשים.

בפסק דינו דן בית המשפט בשורה של שאלות עקרוניות המתייחסות לענישתם של קטינים שהורשעו בעבירות של גרימת מוות בכוונה. על אף השוני בין הדין החל באזור לבין הדין החל בישראל בסוגיה זו ניכר חלק מהשאלות שבהן דן בית המשפט באותו מקרה יפה לענייננו. לשם המחשת הדברים נביא בקצרה את דברי כב' המשנה לנשיא (כתוארו דאז) חשין בהחלטתו במקרה זה:

"תכליתה של הוראת סעיף 25(ב) גלויה על פניה: מי שהורשע בשל מעשה שעשה לעת שהיה קטין, אין להכביד עליו כשם שמכבידים אנו ידנו על בגירים. קטין, דעתו עדיין לא בָּשְׁלָה - זו הנחת היסוד, הנחה העשויה להיות מופרכת לעיתים - ועל-כן ראוי שיהא לו לבית-משפט שיקול דעת מה עונש יטיל עליו בלא שיהא קשור בעונשים שנקבעו מלכתחילה בחוק באורח נוקשה. כך, לא יוטלו על העבריין הקטין עונשי מאסר חובה, עונש מינימום או עונש מאסר עולם חובה. ואולם אין ולא כלום בין פתיחת שיקול דעתו של בית המשפט לבין הגבלתו של "מאסר עולם" לעשרים שנים; נהפוך הוא. הנה הוא קטין, מעט לפני יום הולדתו השמונה-עשרה, שרצח את אביו במעשה קשה ונורא. מה טעם נאמר כי בגוזרו על אותו קטין - שביני לביני הפך בגיר - עונש מאסר, יהא בית המשפט מוגבל בעונשו מרבי של עשרים שנה? איזו תכלית תשרת הגבלת עונש זו? ואילו אם לא נגביל את שיקול דעתו של בית המשפט, יותאם העונש למעשה ולנסיבות העניין ובית המשפט יהא בכוחו לתת לרשעו רע כרישעתו. בקיצור: עונש חובה - לא; עונש רשות - כן. זו תכלית החוק, ופירושה של ההלכה הוא, לדעתנו, הקולע לתכלית החוק."

יפים לענייננו אף הוראות האמנה בדבר זכויות הילד (כ"א 1038, כרך 31, בעמ' 295-269) אשר אוששרה על-ידי ישראל ביום 4.8.1991 וקיבלה תוקף ביחס לישראל ביום 2.11.1991. סעיף 37 לאמנה זו קובע, בין היתר, את הדברים הבאים המתייחסים ישירות לשאלה האם יש מקום לגזור על מי שטרם מלאו לו שמונה עשרה שנה עונש של מאסר עולם:

"...לא יוטל עונש מוות, אף לא מאסר עולם בלא אפשרות שחרור, עבור עבירות שנעברו על-ידי אנשים שטרם מלאו להם שמונה-עשרה שנים."

פרופ' ל' סבה במאמרו "זכויות אדם ומערכת הענישה - האם שנות ה-90 הניבו שתי מהפכות חוקתיות?", מחקרי משפט יג (תשנ"ו-1996) 183 סבור כי סמכות החנינה - סמכות המאפשרת לקצוב עונשו של אסיר עולם - אין בה כדי לענות על הסייג הקבוע בסעיף 37(א) לאמנה, ואשר ענייננו "עונש מאסר עולם בלא אפשרות שחרור". טעם הדבר: סמכות החנינה סמכות חריגה היא הנתונה לשיקול דעתו המוחלט של נותן החנינה ואין היא מבוססת על רעיון זכות האסיר המונח ביסודה של האמנה. ניתן לראות תמיכה מסוימת לעמדה זו בהערת אגב שנכתבה על ידי השופטת דורנר בע"פ 3112/94 **סופיאן אבו חסן נ' מדינת ישראל**, פ"ד נג (1) 422 שאימצה בנקודות מסוימות את דעתו של פרופ' סבה לעניין סמכות החנינה של הנשיא בישראל.

תאריך : ח' בשבט תשס"ח                    תיק מס' : 2305/04
15 ינואר, 2008

1  אף שבית המשפט העליון בעניין פלוני דחה את הטענות בעניין זה וקובע כי
2  קיימת סמכות לבית המשפט לגזור עונש מאסר עולם על קטין בישראל לא ניתן
3  להתעלם מהעקרונות העומדים בבסיסה של האמנה לזכויות הילד. עקרונות
4  אלה המתייחסים לדרך הראויה בה יש לפעול בעת ענישתם של קטינים ראוי
5  שיעמדו בפני בית המשפט בעת ביצוע מלאכת גזירת הדין.
6
7  בעניין פלוני החליט בית המשפט העליון לגזור על הנאשם עשרים וחמש שנות
8  מאסר בגין רציחתו האכזרית של אביו וזאת בעיקר נוכח היותו קטין בעת
9  המעשה. נדגיש כי כפי שעולה מגזר הדין בית המשפט העליון גזר על שותפו של
10 הנאשם לביצוע העבירה שהיה בגיר עונש של מאסר עולם לריצוי בפועל.
11
12 בית המשפט הסביר את החלטתו בנימוקים הבאים היפים לענייננו :
13
14 "העונש הראוי למערער
15 טענתו האחרונה של המערער היא, כי בית משפט קמא הכביד ידו עליו
16 וכי נכון וראוי להקל בעונשו ולו מפאת נסיבותיו האישיות הקשות.
17 לטענת המערער, נטש המנוח, אביו, את משפחתו המתגוררת בעזה,
18 היגר לשטח ישראל, ושם הקים לעצמו משפחה חדשה. התכחשות
19 המנוח למשפחתו הותירה את המשפחה במצוקה כלכלית קשה ויצרה
20 אצל המערער תחושת תסכול עמוקה. המערער, אשר נטל פרנסת
21 המשפחה היה מוטל על שיכמו, קיווה להסתייע במנוח לשם קבלת
22 אישור עבודה ושהייה בישראל, ואולם המנוח סירב לעזור לו ואף איים
23 להסגירו לרשויות ישראל. על רקע נסיבות קשות אלו התגבשה החלטת
24 המערער להמית את המנוח, ולטענתו, שגה בית-המשפט המחוזי שעה
25 שלא התחשב בסבל שעבר עליו ואשר דחף אותו למעשה. עוד טוען
26 המערער, כי חרטה אחזה בו על מעשיו, מבין הוא את חומרתם, ושגה
27 בית המשפט המחוזי משסבר כי המערער לא הביע חרטה על מעשהו.
28 עוד מבקש המערער כי נתחשב בכך שבשעת ביצוע המעשה היה קטין
29 פגוע ומבולבל מהתנהגות אביו, ולא הבין את משמעות מעשיו. כן
30 מבקש הוא כי נתחשב בכך שהודה במעשה, תוך חיסכון ניכר בזמן
31 שיפוט ותוך לקיחת אחריות מלאה למעשיו.
32
33 תסקיר המבחן שהוגש לנו לימדנו כי קצינת המבחן השתכנעה מכנות
34 דברי המערער על-דבר חרטתו על מעשיו הרעים, מעשים שנעשו מתוך
35 מצוקה אישית קשה ומתמשכת. אלא שאין די בכך נוכח חומרת מעשיו
36 והתוצאה האיומה שגרם לה. עבירת הרצח הינה מן העבירות החמורות
37 שבספר העונשין הישראלי, ורצח אב הוא מן החמורות שבעבירות
38 הרצח. כה חמורה היא העבירה של רצח אב - patricide - עד כי להרשעה
39 בה לפי סעיף 300(א)(1) לחוק העונשין, די ביסוד נפשי של "במזיד"
40 ואין נדרש יסוד נפשי של כוונה תחילה (להגדרת המושג "מזיד" ראו
41 סעיף 90א לחוק העונשין). המערער, כזכור, הורשע בעבירת רצח לפי
42 סעיף 300(א)(2), עבירה של רצח בכוונה תחילה. אך למותר להרבות
43 בדברים על חומרתה של עבירת הרצח, ונסתפק עצמנו במיקצת מדבריו
44 של הרמב"ם במישנה תורה: "אף על פי שיש עוונות חמורין משפיכות
45 דמים אין בהן השחתת ישובו של עולם כשפיכות דמים, אפילו עבודה
46 זרה ואין צריך לומר עריות או חילול שבת אינן כשפיכות דמים, שאלו
47 העוונות הן מעבירות שבין אדם להקב"ה אבל שפיכות דמים מעבירות
48 שבינו לבין חבירו, וכל מי שיש בידו עון זה הרי הוא רשע גמור"
49 (רמב"ם, הלכות רוצח ושמירת נפש, פ"ד, ה"ט). אם אין די בכך, הנה

תאריך : ח' בשבט תשס"ח                תיק מס' : 2305/04
15 ינואר, 2008

1. מעשה הרצח של המנוח היה מעשה זוועה אכזרי שנעשה בכוונת מכוון
2. ובחישוב מחושב. המערער וחברו לא הסתפקו בנעיצות סכין בגופו של
3. המנוח, ושבו וביקשו לגרום למותו בשיטות שונות ואכזריות עד כי נפח
4. את נשמתו. אותה אכזריות שבה בוצע הרצח; אותה נחישות להמית
5. שניכרת במעשיהם של המערער וחברו; לא נוכל להתעלם מהן בבואנו
6. לבחון את העונש שגזר בית-המשפט המחוזי על המערער. ראו והשוו:
7. ע"פ 6535/01 דמיטרי קוזירוב נ' מדינת ישראל, פ"ד נז (3) 562, -575
8. .574
9. אנו מחליטים אפוא להותיר על כנו את העונש שגזר בית-המשפט
10. המחוזי."
11.
12. נראה כי הנימוקים שנרשמו על ידי המשנה לנשיא חשין (כתוארו דאז) היפים אף
13. לענייננו מצביעים על הקושי שבמלאכת גזירת הדין מקום בו מדובר בקטינים
14. המורשעים בעבירה של גרימת מוות בכוונה.
15.
16. בסופו של דבר, אין מקום לדעתי לגזור על הנאשם עונש של מאסר עולם.
17.
18. החלטה זו מתבססת בעיקרה על גילו של הנאשם בעת ביצוע העבירות ומכלול
19. הנסיבות לקולא שפורטו בשלב הטיעונים לעונש על ידי הנאשם ובא כוחו.
20.
21. אדגיש כי לשיטתי על אף חומרת המעשים ראוי לייחס משקל משמעותי לגילו הצעיר
22. של הנאשם בעת ביצוע העבירות ואין מקום למצות עימו את מלוא חומרת הדין.
23.
24. אשר על כן, אני מצטרף לתוצאה שניתנה בהחלטת חברי כב' השופט דהאן.
25.
26. **כבוד השופטת דליה קאופמן:**
27.
28.
29. קראתי בתשומת לב רבה את חוות דעתם המלומדות של חבריי להרכב. אף
30. שקביעותיהם העקרוניות מקובלות עליי לחלוטין, איני יכולה להסכים עם
31. יישומן במקרה הקונקרטי ולהלן נימוקיי.
32.
33. כפי שכתב אב בית הדין, סא"ל תירוש בחוות דעתו, בית המשפט העליון
34. קבע שבידי בימ"ש שיקול הדעת אם לגזור על קטין מאסר עולם אם לאו
35. (ראה ע"פ 4379/02 – פלוני נ' מדינת ישראל . תק-על 2006(1), 649, עמ' 652)
36.
37. *"המחוקק ביקש להרחיב את קשת הסמכויות לגבי קטין: לא היתה לו כל*
38. *כוונה לנגוע בהוראה הקובעת את מידת העונש עבור רצח. עבירת רצח נותרת*
39. *במהותה, והוא הדין בעונש בצידה, ולכן צריכה להוסיף ולהתקיים האפשרות*
40. *להטיל במקרים הראויים עונש מאסר עולם ממש. אולם בידי בית המשפט*
41. *מסור, כאמור, לגבי הקטין מרווח רחב יותר של אפשרויות. הא ותו לאו...."*
42.
43. אף בדיני האזור מסור לבית המשפט שיקול דעת, אם לגזור על נאשם קטין
44. בעת ביצוע העבירה עונש מאסר עולם אם לאו בגין עבירת גרימת מוות
45. בכוונה.
46.
47. כעת נשאלת השאלה, האם ראוי הנאשם, אשר הורשע בעבירות שעניינן סיוע
48. לגרימת מוות בכוונה בהיותו קטין, למאסר עולם.
49.

תאריך: ח' בשבט תשס"ח    תיק מס': 2305/04
15 ינואר, 2008

1. לטעמי ישנן מספר עובדות המחייבות במקרה זה לגזור על הנאשם מאסר
2. עולם.
3.
4. אכן חלקו של הנאשם בביצוע פיגועי ההתאבדות הינו קטן יחסית לשותפים
5. אחרים, שכן הנאשם היה זה שרכש חומרים לצורך הכנת המטענים בלבד
6. ולא עסק בהכנתם או בחלק אחר של הוצאת פיגועי ההתאבדות לפועל.
7.
8. סביר להניח שאילו הנאשם היה נוטל חלק בפיגוע הראשון בלבד ולא מסייע
9. לפיגוע השני שבוצע היה מקום לשקול להסתפק בעונש קצוב בשנים, נוכח
10. גילו בעת ביצוע העבירה. ואולם, הנאשם, חודש לאחר ביצוע הפיגוע הראשון
11. ולאחר שכבר ראה את תוצאותיו הנוראיות של מעשיו ומעשי חבריו, בחר
12. לשתף את עצמו שוב במעשים דומים מתוך מודעות כי הדבר נועד לגרום
13. למותם של המונים חפים מפשע. הנאשם היה מודע וראה לנגד עיניו את
14. התוצאות של התפוצצות מחבל מתאבד בתוך אוטובוס. חשוב להדגיש כי
15. התקופה שבו בוצעו העבירות ע"י הנאשם, הייתה תקופה רווית פיגועי
16. התאבדות רצחניים ביותר ואף לכל בן 17 באשר הוא היה ברור מהן
17. ההשלכות של מעשים מסוג זה.
18.
19. לא זו בלבד, אלא שכחודש לאחר ביצוע הפיגוע שני, שגבה מספר עצום של
20. קרבנות, קשר הנאשם קשר עם אחר ליצור בעצמם תיק נפץ במשקל 12 ק"ג
21. כדי שחברו יבצע באמצעותו פיגוע התאבדות. פיגוע זה נמנע אך בשל מעצרו
22. של הנאשם. מעשה זה, מלמדנו שהנאשם לא הבין כלל את חומרת מעשיו,
23. אלא חפץ להגביר פעילותו וליטול חלק משמעותי יותר ב בהכנת פיגוע
24. התאבדות. על רקע זה, אף דבריו של הנאשם בבית המשפט, מקבלים לטעמי
25. מימד אחר מזה שהוצג ע"י חבריו להרכב.
26.
27. במקרה שבפנינו, נוכח האכזריות הרבה והסכנה שבפיגועי ההתאבדות
28. האינטרס הציבורי מחייב אותנו לגזור על הנאשם עונש מאסר עולם, בגין
29. מכלול מעשיו. עונש זה יש בו כדי להביע את שאת הנפש מכוונתו ועיקשותו
30. של הנאשם ליטול חלק בקיפוח חיי אדם בצורה המונית.
31.
32. **סוף דבר**
33.
34. הנאשם ירצה את העונשים הבאים:
35.
36. (א) שלושים שנות מאסר לריצוי בפועל אשר ימנו מיום מעצרו של הנאשם.
37.
38. (ב) 5 שנות מאסר על תנאי והתנאי הוא שבמשך 5 שנים מיום שחרורו ממאסר
39. לא יעבור הנאשם עבירה על תקנות 85 ו- 58 לתקנות ההגנה (שעת חירום)
40. 1945 או כל עבירה אחרת שעניינה החזקת אמצעי לחימה או סחר באמצעי
41. לחימה או כל עבירה אחרת שנועדה לפגוע בחיי אדם.
42. ניתן היום, ח' שבט תשס"ח, 15 לינואר 2008 , בלשכה.
43. מזכירות ביהמ"ש תפיץ את נימוקי גזר הדין לצדדים.

אב"ד                 שופטת