

**Israel Defense Forces**

| | |
|---|---|
| In the Military Court | Court File:               *2268/04* |
| Judea | Prosecution File:       1338/04 |
| Before Panel | Detailed Incident Files:   1667/04 Hebron |
| |                              9891/04 Special Duties Department Jerusalem |
| |                              178694/04 Moriah |

In the case between:

**The Military Prosecutor**

- The Prosecution -

– v. –

[Stamp] This indictment received
On *May 20, 2004*
Registered in the journal under File _____
Court Officer *Irit Goren*

**Mohamed Issa Mohamed Ma'ali**
(Under arrest since March 29, 2004)
Identity No. 907377113, born October 9, 1977, of Bethlehem

- The Defendant -

**INDICTMENT**

The above named Defendant is hereby accused of carrying out the following offenses:

**First Count:**

**Nature of the Offense:** Throwing a burning object, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945; and Section 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within the Region, at the beginning of October 2000 or thereabouts, threw a burning object with the intention of causing the death or wounding of another person, specifically:

[Stamp] P 2: 266

1

At the above mentioned time, the above named Defendant and his accomplices, Mahmoud Moughrabi, Jassan Hassan Abdel Juad, and others, threw Molotov cocktails at Israel Defense Forces troops.

**Second Count:**

**Nature of the Offense:** Throwing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945; and Section 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within the Region, during April 2002 or thereabouts, was, together with others, involved in the throwing of a bomb with the intention of causing the death or wounding of another person, specifically:

At the above mentioned time, on a number of different occasions, the above named Defendant and his accomplices, threw pipe bombs at Israel Defense Forces troops passing through Bethlehem.

C:\Documents and Settings\s5269793\Desktop\terrorist attack 14+19\1338-04.doc

[Stamp] P 2: 266 [continued]

### Third Count:

**Nature of the Offense:** Placing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945; and Section 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within the Region, during April 2004 or thereabouts, was involved in the placing of a bomb with the intention of causing the death or wounding of another person, specifically:

At the above mentioned time, the above named Defendant and his accomplices Hamza Baghwara, Fares al-Hassanat and others, placed an explosive device weighing 12 kilograms near the Darwish gas station, in a location where military vehicles pass.

### Fourth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

1. At the beginning of January 2004, or thereabouts, Abdul Rahman (Zaher) Yousef Abdul Rahman Maqdad (hereinafter: "**Abdul Rahman Maqdad**"), the military operative Ahmed Moughrabi, and Ali Mohamed Hamed Abu Haliel (hereinafter: "**Ali Abu Haliel**") planned to carry out terrorist attacks against Israeli targets, including suicide terrorist attacks.

2. At around that time, the military operative Hilmi Abdel Karim Mohamed Hamash (hereinafter: "**Hilmi Hamash**") approached Ali Jaara and suggested that he meet with a military operative who would send him to carry out a suicide terrorist attack. Ali Jaara (hereinafter: "**the suicide terrorist**") expressed his willingness to do so.

   Accordingly, Hilmi Hamash had the military operative Ahmed Salah Ahmed Salah (known as: Ahmed Abu-Ghadeb) (hereinafter: "**Ahmed Abu-Ghadeb**") meet with the suicide terrorist at a meeting, during which Ahmed Abu-Ghadeb checked with the suicide terrorist the extent of his willingness to carry out a suicide terrorist attack.

[Stamp] P 2: 267

      During the meeting, the suicide terrorist expressed willingness to carry out the terrorist attack. Accordingly, Ahmed Abu-Ghadeb asked the suicide terrorist to prepare himself to carry out a suicide terrorist attack.

3.    At around that time, Abdul Rahman Maqdad began preparing explosives for use in carrying out a suicide terrorist attack, using materials passed to him by the military operative Ali Abu Haliel. In addition, Ahmed Abu-Ghadeb brought Abdul Rahman Maqdad up to date on locating a suicide terrorist prepared to carry out the suicide terrorist attack, and asked him to urgently prepare the explosive bag, so that it could be used for carrying out the suicide terrorist attack.

[Stamp] P 2: 267 [continued]

3

4. Abdul Rahman Maqdad asked Ahmed Abu-Ghadeb to purchase materials for him for the production of an explosive bag (including, *inter alia*: a bag, batteries, switch, etc.). Ahmed Abu-Ghadeb consented and, together with Hilmi Hamash, purchased all that had been requested. In addition, Ahmed Abu-Ghadeb and Hilmi Hamash attempted to find a video camera, so as to film the suicide terrorist prior to execution of the terrorist attack, but they were unsuccessful – and so they decided to send the suicide terrorist to carry out the terrorist attack without filming him on video.

5. At about that time, Ahmed Abu-Ghadeb approached the **above named Defendant** and asked him to transport the suicide terrorist, armed with an explosive belt, to carry out a suicide terrorist attack within the territory of the State of Israel. The Defendant expressed his willingness to do so.

   Accordingly, Ahmed Abu-Ghadeb introduced the Defendant to the suicide terrorist.

6. In parallel with that which has been stated above, Abdul Rahman Maqdad produced the explosive bag, with which the suicide terrorist attack would be carried out; he informed Ahmed Abu-Ghadeb of this, and asked that he come to take the explosive bag.

7. Some minutes later, Ahmed Abu-Ghadeb, together with the suicide terrorist and the Defendant, came to the home of Abdul Rahman Maqdad; the Defendant waited outside, while the suicide terrorist and Ahmed Abu-Ghadeb went into Abdul Rahman Maqdad's home. The latter explained to Ahmed Abu-Ghadeb and the suicide terrorist how to set off the explosive bag, and gave them the explosive bag, to be used in the suicide terrorist attack, with the intention of causing the deaths of Israeli citizens.

8. Soon after that, the Defendant, the suicide terrorist, and Ahmed Abu-Ghadeb left in the direction of the university in Bethlehem; there Ahmed Abu-Ghadeb neutralized the safety mechanism of the explosive device, so as to prepare it for operation. Subsequently, Ahmed Abu-Ghadeb left the Defendant with the suicide terrorist.

9. After Ahmed Abu-Ghadeb left them, at around 6:30 a.m., the Defendant took the suicide terrorist to Jerusalem via Walaja village, until they approached the Malha Mall in Jerusalem, where the Defendant took his leave from the suicide terrorist and returned to the Region.

[Stamp] P 2: 268

10. Soon thereafter, the suicide terrorist boarded an Egged Number 19 bus traveling in the direction of Paris Square; when the bus reached the corner of Arlosoroff and Gaza Streets, at around 8:45 a.m., the suicide terrorist set off the explosive bag that he held, with the intention of causing the deaths of a large number of people. As a result, the explosive bag blew up within the bus (hereinafter: "**the suicide terrorist attack**").

11. As a result of the suicide terrorist attack, the death of <u>**the late Avraham Balhasan**</u> was caused.

[Stamp] P 2: 268 [continued]

4

**Fifth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Hannah Bonder** was caused.


**Sixth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Anat Darom** was caused.


**Seventh Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 2: 269

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Yechezkel Goldberg** was caused.

[Stamp] P 2: 269 [continued]

5

**Eighth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Vladi Zadik Menbere** was caused.

**Ninth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Viorel Octavian Florescu** was caused.

**Tenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 2: 270

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Rose Boneh** was caused.

[Stamp] P 2: 270 [continued]

6

**Eleventh Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Dana Itach** was caused.

**Twelfth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Roman Hondiashvili** was caused.

**Thirteenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 2: 271

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Mr. Eli Tzipora** was caused.

[Stamp] P 2: 271 [continued]

7

**Fourteenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – the death of **the late Ms. Natalia Gamril** was caused.

**Fifteenth Count: (Detailed Incident File 09891/04 Special Duties Department Jerusalem)**

**Nature of the Offense:** Attempting to intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 19-20, 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on January 29, 2004, was an accomplice in an attempt to intentionally cause the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Ali Jaara, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the fourth count of the indictment – over 50 civilians were wounded with levels of injuries ranging from serious to light; in addition, the suicide terrorist died.

[Stamp] P 2: 272

**Sixteenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

1. Some days prior to the above date, Abdul Rahman Maqdad and the military operative Izz A-Din Ali Alian planned to carry out a suicide terrorist attack, with the aim of causing the deaths of Israeli citizens.

    Izz A-Din Ali Alian informed Abdul Rahman Maqdad that he had found a person named Mohamed Za'ul (hereinafter: "**the suicide terrorist**") who was prepared to carry out a suicide terrorist attack.

[Stamp] P 2: 272 [continued]

8

2. On February 17, 2004, or thereabouts, Izz A-Din Alian met with the suicide terrorist in the village of Husan; during the meeting the suicide terrorist agreed to carry out the planned suicide terrorist attack. At the end of the meeting, Izz A-Din Alian arranged with the suicide terrorist to meet near the Church of the Nativity in Bethlehem on February 21, 2004, at 4:00 p.m.

3. Izz A-Din Alian updated Abdul Rahman Maqdad as to the content of the meeting, and of the suicide terrorist's consent to carry out the suicide terrorist attack; accordingly, Abdul Rahman Maqdad made contact with his brother, the military operative Maher Maqdad, who lived in Gaza, informed him of the plan to carry out the suicide terrorist attack, and asked him for the amount of NIS 3,000, so that he could prepare the explosive bag for the suicide terrorist, and to purchase a video camera to film the suicide terrorist (this was in accordance with Maher Maqdad's request to film the suicide terrorist before execution of the suicide terrorist attack).

Maher Maqdad consented, and transferred to the Arab Bank account in Bethlehem, registered in the name of Abdul Rahman Maqdad, the amount of NIS 3,000 to fund the suicide terrorist attack, as agreed with Abdul Rahman Maqdad.

4. On February 18, 2004, or thereabouts, Abdul Rahman Maqdad went to the Arab Bank in Bethlehem, and withdrew the amount of money transferred to him from Maher Maqdad.

Abdul Rahman Maqdad purchased, with part of the amount, a video camera and a regular camera, for filming the suicide terrorist. Similarly, he gave an amount of money to Ali Abu Haliel and Ahmed Abu-Ghadeb, so that they could purchase materials for the preparation of the explosive bag for the suicide terrorist attack.

5. Accordingly, Ali Abu Haliel received from military operative Haitham Zakariya Mahmoud al-'Aarj (hereinafter: "**Haitham al-'Aarj**") 4 liters of the chemical hydrogen peroxide, and from the military operative Ahmed Odeh 40 liters of the chemical acetone; Ali Abu Haliel gave to Abdul Rahman Maqdad 12 liters of the chemical hydrogen peroxide and 12 liters of the chemical acetone.

6. On February 20, 2004, Abdul Rahman Maqdad, Ali Abu Haliel and Izz A-Din Alian produced the explosive bag intended for the execution of the suicide terrorist attack.

[Stamp] P 2: 273

7. At around that time, Abdul Rahman Maqdad asked Ahmed Abu-Ghadeb to check with the Defendant whether he was prepared to transport the suicide terrorist to carry out the suicide terrorist attack. Accordingly, Ahmed Abu-Ghadeb met with the Defendant, and asked him to transport another suicide terrorist to carry out a suicide terrorist attack within the territory of the State of Israel. The Defendant consented to do so.

On that same day, during the evening, Ahmed Abu-Ghadeb came to the home of Abdul Rahman Maqdad, having in his possession a poster on which was written "The Ayman Judeh Cell of the al-Aqsa Martyrs Brigades Organization"; Ahmed Abu-Ghadeb gave the poster to Abdul Rahman

[Stamp] P 2: 273 [continued]

9

Maqdad, so as to serve as a backdrop while filming the suicide terrorist – similarly, he informed Abdul Rahman Maqdad that the Defendant was prepared to transport the suicide terrorist.

8. The next morning, Ahmed Abu-Ghadeb gave Abdul Rahman Maqdad iron nails, so that the latter should glue them to the explosive belt, in order to increase and intensify the injuries when the explosive device was detonated. Abdul Rahman Maqdad received the iron nails, and glued them to the explosive bag.

    That same day, at approximately 4:10 p.m., Izz A-Din Alian, accompanied by the suicide terrorist, came to the home of Abdul Rahman Maqdad, to prepare him to set out for the terrorist attack.

    In addition, Ahmed Abu-Ghadeb brought Abdul Rahman Maqdad a Kalashnikov rifle and a hand grenade, so that he could film the suicide terrorist holding these weapons.

9. Abdul Rahman Maqdad and Izz A-Din Alian gave the suicide terrorist food and new clothes. After eating the evening meal together with the suicide terrorist, Izz A-Din Alian wrote a testament for the suicide terrorist; Abdul Rahman Maqdad and Izz A-Din Alian filmed the suicide terrorist reading out his testament. When they finished filming the suicide terrorist, Abdul Rahman Maqdad began preparing the explosive bag that would serve in carrying out the suicide terrorist attack. At around 5:50 a.m., the next day, Abdul Rahman finished production of the explosive bag.

10. When he finished making the explosive bag, as stated, on April 22, 2004, Abdul Rahman Maqdad called Ahmed Abu-Ghadeb, informed him that all was ready, and asked him to come and send the suicide terrorist out to execute the suicide terrorist attack.

    Accordingly, Ahmed Abu-Ghadeb made contact with the Defendant, and asked him to meet with him. The two met, and together drove in the direction of Abdul Rahman Maqdad's house, where the suicide terrorist was hiding. Ahmed Abu-Ghadeb asked the Defendant to wait near that location, which was in the center of Bethlehem.

11. At approximately 6:00 a.m., Ahmed Abu-Ghadeb came to Abdul Rahman Maqdad's house, took from him the explosive bag, and left together with suicide terrorist in the direction of central Bethlehem; there he introduced the suicide terrorist to the Defendant. From there

[Stamp] P 2: 274

    the suicide terrorist, together with the Defendant, left in the direction of Jerusalem, passing through the village of Walaja, so as to carry out the planned suicide terrorist attack.

12. The Defendant took the suicide terrorist to a place located near the Malha Mall in Jerusalem; there he took his leave from him, and returned to the Region.

13. Soon thereafter, the suicide terrorist boarded an Egged Number 14 bus traveling from Denya in the direction of Liberty Bell Park. When the bus stopped at a traffic light, the suicide terrorist set off the explosive bag, with the intention of causing the deaths of a large number of people. As a result, the explosive bag blew up within the bus (hereinafter: "**the suicide terrorist attack**").

[Stamp] P 2: 274 [continued]

10

14. As a result of the suicide terrorist attack, the death of **the late Ms. Yaffa Ben Shimol** was caused.

**Seventeenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Yuval Ozana** was caused.

**Eighteenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Rahamim Doga** was caused.

[Stamp] P 2: 275

**Nineteenth Count: (Detailed Incident File 17869/04 Moriah Station)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Section 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, within and outside the Region, on February 22, 2004, was an accomplice in intentionally causing the deaths of others, specifically:

As a result of the suicide terrorist attack carried out by the suicide terrorist Mohamed Za'ul, with the intention of causing the deaths of Israeli citizens, and whom the Defendant transported to carry out the suicide terrorist attack, as detailed in the sixteenth count of the indictment – the death of **the late Mr. Yehuda Haim** was caused.

[Stamp] P 2: 275 [continued]