PLAINTIFF'S EXHIBIT 322

Date: 9 Elul 5764
August 26, 2004

File No.: 3465/02

## Military Court, Judea

**Before the Honorable President of the Court: Lieutenant-Colonel Shlomi Kochav**
**Judge: Captain Shlomo Katz**
**Judge: Captain Menachem Lieberman**

**The Military Prosecution**

- v. -

**The Defendant: Munzar Mahmoud Khalil Noor Identity No. 902442607/ Prisons Service – Present**
(Represented by Counsel, Adv. Gozlan)

**Recorder: Corporal Natalia Michaelov Berezovsky**
**Interpreter: Staff Sergeant Fares Falah**

**The President of the Court opened the hearing and identified the Defendant.**

## Verdict

On June 25, 2002, an indictment was filed against the Defendant, attributing to him six offenses against the security of the Area, as follows:

1. Kidnapping in aggravated circumstances, an offense pursuant to Sections 67a (a) and (d) of the Security Provisions Order, in that in 1993, he, together with others, kidnapped a person named Hashem Abu Zakir, whom he handed over to masked individuals so that the latter could interrogate him on suspicion of collaboration with Israel.

2. Intentionally causing death, an offense pursuant to Section 51 of the Security Provisions Order and Section 14 (a) (4) of the Rules of Liability for an Offense Order, in respect of his involvement in the suicide terrorist attack that took place on January 27, 2002, in Jerusalem, as a result of which the late Pinhas Emanuel Tokatli was killed. It was attributed to the Defendant that he took an active part in the terrorist attack in that he convinced the female terrorist, Wafa

[Stamp] P 3: 40

1

Idris, to carry out the terrorist attack. The Defendant went further, and when he became aware that the suicide bomber had changed her mind about committing suicide, he sat with her again and persuaded her that she should carry out her intentions and execute the terrorist attack, even if it was not to be through a suicide terrorist attack, but by planting a bomb. Ultimately, as stated, the terrorist attack was carried out, and Pinhas Emanuel Tokatli was murdered.

3. Attempting to intentionally cause death, an offense pursuant to Section 51 of the Security Provisions Order and Sections 14 (a) (4) and 19 of the Rules of Liability for an Offense Order, in that in the terrorist attack in which the late Pinhas Emanuel Tokatli was killed, other people (over 150) were wounded, it having been intended to kill them.

4. Malicious damage to property, an offense pursuant to Sections 53c (a) and 92 of the Security Provisions Order and Section 14 (a) (4) of the Rules of Liability for an Offense Order, in that in the above mentioned terrorist attack, severe damage was caused to shops, buildings and vehicles that were in the vicinity.

5. Attempting to incite another to trade in war materiel, an offense pursuant to Section 2 of the Prohibition on Trading in War Materiel Order and Section 21 of the Rules of Liability for an Offense Order, in that he approached a senior operative of the Palestinian Authority's Military Intelligence, and attempted to persuade him to transport explosive devices by means of Red Crescent ambulances.

-1-

[Stamp] P 3: 40 [continued]

Date: 9 Elul 5764  File No.: 3465/02
      August 26, 2004

6.    Communicating information of military value, an offense pursuant to Section 63 of the Security Provisions Order, in that he gave that same senior member of the Palestinian Authority's Military Intelligence information on Israel Defense Forces checkpoints and the movements of Israel Defense Forces units in the Area.

**Evidentiary Materials in the Court File**

During the course of hearings in the Court, a great deal of evidentiary material was submitted by consent. On April 2, 2003, two statements given by the Defendant in his police interrogations, one that he gave on April 23, 2002, and marked P/1, and one dated April 25, 2002, marked P/2. At the next hearing, on May 5, 2003, his police statement dated May 13, 2002, and marked P/3 was submitted. These three statements constitute the principal evidence relating to the Defendant in the file, and so will merit the bulk of discussion in this verdict, with a further 100 or more exhibits having been submitted over the course of the hearings, all relating to the terrorist attack on January 27, 2002, but which do not independently or directly involve the Defendant in the crimes attributed to him.

When we survey the Defendant's statements, which were, as mentioned, submitted by consent, and hence the Court may accept their content as the truth, we will find the accusations attributed to the Defendant in the indictment to be well founded.

At the same time, before we detail the supporting elements found in the Defendant's statements, and weave them together with the extrinsic evidence supporting the facts of the indictment, it is worth noting that the Defendant's admissions in this case gradually come to confirm the accusations; that is, as his interrogation continued, his statements became more complete and detailed. This may be seen to be a natural development of the interrogation, with the subject initially not being willing to admit to all of the suspicions, but as the interrogation develops he reveals many more elements of the truth. Hence we found it appropriate to reject the Defense Counsel's request, in his summation, to specifically adopt the first statement and not the later ones.

[Stamp] P 3: 41

In his first statement, the Defendant still distanced himself from the actions of Wafa Idris, but when we read his second and third statements, it can clearly be seen that his relationship with the terrorist attack described in counts 2-4 of the indictment is much closer than he initially admitted to.

**Counts of the Indictment**

Following this preface, we move on to the indictment itself, each count and its evidence. First, let us examine the Defendant's statements, and for each count we will refer to its supporting documentation, and subsequently we will consider the required corroboration.

First Count: P/3 page 1 line 13 to page 2 line 6.

Second Count: P/2 page 2 line 4 to page 4 line 2. P/3 page 2 line 23 to page 3 line 28.

Third Count: as above.

Fourth Count: as above.

Fifth Count: P/3 page 5 line 19 to line 21

Sixth Count: P/3 page 5 line 21 to line 24

In these statements the Defendant admits that he sat together with the individual known as Abu Talal and the terrorist Wafa Idris when they planned to execute a terrorist attack in Jerusalem. The Defendant also admits that he was given the task of persuading the terrorist to carry out the terrorist attack, and when [she] expressed a certain hesitation and changed her mind about carrying out the attack, he sat with her with the intention of persuading her nonetheless to carry out a terrorist attack. Ultimately, she consented and indeed, on January 27, 2002, the terrorist attack was carried out.

-2-

[Stamp] P 3: 41 [continued]

Date:  9 Elul 5764                                                            File No.: 3465/02
        August 26, 2004

Support for the other counts of the indictment can clearly be adduced from reading the Defendant's last statement, in which he details the crimes that he committed, whether in the distant past, or recently.

Thus, the Defendant strongly tied himself to all the counts of the indictment, as they appear in the indictment. If it were possible to pass a verdict solely on the basis of these statements, he could already be convicted, at this stage, of all the counts of the indictment.

**Corroboration**

Notwithstanding the above, our system of justice requires independent evidence for the Defendant's admission given as an external statement before the Court can convict a person under the law, something called, in judicial language, "something more." In the case before us, there is a great deal of "something more," at least in connection with the counts relating to the terrorist attack. We will refer only to some of them, P/85, P/87 and P/102, the action report by police officer Dror Avraham, the expert opinion by police officer Ariel Ya'ari of the police bomb laboratory, and the expert opinion of Prof. Yehuda Hiss, respectively. This evidence provides, in itself, all that is necessary in terms of extrinsic evidence to the fact of the terrorist attack having occurred, and to the fact that the terrorist attack caused the death of a person. The rest of the evidence submitted by consent is sufficient to prove all the facts of counts 2, 3 and 4 of the indictment, including the injuries to persons, and damage to property, and so he is to be convicted of these crimes.

However, this corroboration does not attest directly as to the rest of the counts of the indictment of which the Defendant stands accused, that is, the first, fifth and sixth counts of the indictment.

The law regarding this "something more" has undergone transformations and changes, but it may be defined in principle as was done by Justice Yaakov Kedmi in his text, **On Evidence** (Volume 1, page 102)

> **The requirement for 'something more' does not express a requirement for additional evidence that indicates, in itself, the guilt of the defendant; rather, it is principally a requirement for corroboration that allows one to test the veracity of the admission.**

[Stamp] P 3: 42

This being the test, then as stated above, the very proof of the terrorist attack having occurred and the terrible outcomes that were caused by it constitute the something more for the counts connected with the terrorist attack. In addition, the very proof of the terrorist attack having occurred confirms all that stated in the Defendant's statements in relation to his relationship with the said Abu Talal, the individual who set the terrorist attack in motion. If, as has been said, we are verifying that relationship, then the "something more" has the power to verify that stated in the fifth and sixth counts of the indictment, in which the Defendant also connected himself with Abu Talal in carrying out additional crimes. In light of what has been said, the Defendant should also be convicted of the fifth and sixth counts of the indictment.

In regard to the first count of the indictment; as we have said, this count relates to a crime which ostensibly was committed almost a decade prior to the Defendant's arrest, and which has no relationship to the other offenses appearing in the indictment. Can verification of part of the Defendant's statement stretch over the whole of his statement, or can this verification float over all parts of the statement, and whenever something more is required to verify matters, it can appear and convict?

The opinion of Justice Kedmi in his previously mentioned book (page 122) is **no**:

> **Where the matter pertains to a series of crimes connected with one another to the point that they constitute a 'single narrative,' it is sufficient to have 'something more' for one of the crimes.**

-3-

[Stamp] P 3: 42 [continued]

6

Date:  9 Elul 5764                                          File No.: 3465/02
      August 26, 2004

There is no doubt that the first count of the indictment constitutes an offense which is not connected to the other offenses, is not part of a "single narrative" and is not part of a series of offenses, and so the evidentiary material in the file does not provide sufficient corroboration to convict the Defendant of it. In light of this, the Defendant is acquitted of this offense.

In summary, the Defendant is acquitted of the first count of the indictment, and convicted of the second, third, fourth, fifth, and sixth counts of the indictment.

**Given and announced this day, August 26, 2004, in public.**

| [Signature] | [Signature] | [Signature] |
|:---:|:---:|:---:|
| Judge | President of the Court | Judge |

-4-

[Stamp] P 3: 43

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THE PALESTINE LIBERATION ORGANIZATION, et al., <br><br> Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P3: 40-43.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P3: 40-43.

_____
Rina Ne'eman

ss.: New Jersey

On the [28th] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28th day of February, 2014

_____
Notary Public

MERUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D. 2332704

תאריך: ט' אלול, תשס"ד  
26 אוגוסט, 2004

תיק מס': 3465/02

בית המשפט הצבאי יהודה

בפני כב' האב"ד סא"ל שלומי כוכב  
השופט: סרן שלמה כץ  
השופט: סרן מנחם ליברמן

התביעה הצבאית

נגד

הנאשם: מונזר מחמוד חליל נור    ת.ז 902442607 / שב"ס - נוכח  
(באמצעות ב"כ עו"ד גוזלן)

רשמת: רב"ט נטליה מיכאילוב ברזובסקי  
מתורגמן: סמ"ר פארס פאלח

אב"ד פותח את הישיבה ומזהה את הנאשם.

## הכרעת דין

ביום 25.6.2002 הוגש נגד הנאשם כתב אישום המייחס לו שש עבירות נגד ביטחון האזור כדלהלן:

1. חטיפה בנסיבות מחמירות, עבירה לפי סעיף 67א(א)+(ד) לצו בדבר הוראות ביטחון, בכך שבשנת 1993 חטף יחד עם אחרים אדם בשם האשם אבו-זאכר ומסרוהו לרעולי פנים על מנת שאלה יחקרוהו בחשד לשיתוף פעולה עם ישראל.

2. גרימת מוות בכוונה, עבירה לפי סעיף 51 לצו בדבר הוראות בטחון וסעיף 14(א)(4) לצו בדבר כללי האחריות לעבירה בגין מעורבותו בפיגוע ההתאבדות אשר התרחש ביום 27.1.2002 בירושלים ואשר כתוצאה ממנו נהרג פנחס-עמנואל טוקטלי ז"ל. לנאשם מיוחס כי נטל חלק פעיל בפיגוע בכך ששכנע את המחבלת, ופא אדריס לבצע את הפיגוע. הנאשם אף הגדיל לעשות, וכאשר נודע לו כי המתאבדת חזרה בה מכוונתה להתאבד הוא ישב איתה שוב ושכנע אותה כי עליה לממש את כוונתה, ולבצע פיגוע אף אם לא מדובר בפיגוע התאבדות אלא בהנחת מטען. לבסוף כאמור בוצע הפיגוע ונרצח פנחס-עמנואל טוקטלי ז"ל.

3. ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51 לצו בדבר הוראות ביטחון וסעיפים 14(א)(4) ו-19 לצו בדבר כללי האחריות לעבירה בכך שבפיגוע אשר בו נהרג פנחס –עמנואל טוקטלי ז"ל נפצעו אנשים נוספים (מעל 150) אשר היתה כוונה להרגם.

4. היזק בזדון לרכוש, עבירה לפי סעיפים 53ג(א) ו-92 לצו בדבר הוראות ביטחון, וסעיף 14(א)(4) לצו בדבר כללי האחריות לעבירה בכך שבפיגוע הנ"ל נגרם נזק כבד לחנויות, בניינים ורכבים אשר היו סמוך למקום.

5. ניסיון לשידול לסחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי וסעיף 2 לצו בדבר כללי האחריות לעבירה בכך שפנה לפעיל בכיר במודיעין הצבאי של הרשות הפלסטינית וניסה לשכנע אותו להעביר מטעני חבלה באמצעות אמבולנסים של הסהר האדום.

-1-

תאריך : ט' אלול, תשס"ד                                                תיק מס' : 3465/02
26 אוגוסט, 2004

6. מסירת ידיעות בעלות ערך צבאי, עבירה לפי סעיף 63 לצו בדבר הוראות
בטחון בכך שהעביר לאותו בכיר במודיעין הצבאי של הרשות הפלסטינית
מידע על מחסומי צה"ל ותנועות כוחות צה"ל באזור.

**חומר הראיות בתיק בית המשפט**

במהלך הדיונים בבית המשפט הוגש חומר ראיות רב בהסכמה. ביום 2.4.2003 הוגשו
שתי אמרות שמסר הנאשם בחקירתו המשטרתית, אמרה שמסר ביום 23.4.2002
וסומנה ת/1 ואמרה מיום 25.4.2002 סומנה ת/2. במועד הדיון הבא, ביום 5.5.2003,
הוגשה אמרתו המשטרתית מיום 13.5.2002 וסומנה ת/3. שלוש אמרות אלה מהוות
את עיקר הראיות הנוגעות לנאשם בתיק, ועל כן יזכו למרבית הדיון בהכרעת דין זו,
כאשר עוד 100 מוצגים ויותר הוגשו במהלך הדיונים, המתייחסים כולם לפיגוע ביום
27.1.2002 ואין בהם לערב באופן עצמאי וישיר את הנאשם בעבירות המיוחסות לו.

כאשר נסקור את אמרותיו של הנאשם אשר הוגשו כאמור בהסכמה, ואשר על כן
בית המשפט רשאי לקבל את האמור בהן כאמת, נמצא את הבסיס להאשמות אשר
יוחסו לנאשם בכתב האישום.

עם זאת, בטרם נפרט את האסמכתאות המצויות באמרותיו של הנאשם, ונשזר בהן
את הראיות החיצוניות התומכות בעובדות כתב האישום, ראוי להעיר כי הודאותיו
של הנאשם בתיק הזה, מבססות אט אט את האישום, כאשר ככל שחקירתו נמשכה
אמרותיו הפכו מלאות ומפורטות יותר. ניתן לראות בכך התפתחות טבעית של
חקירה, כאשר תחילה אין הנחקר מעוניין להודות במלוא החשדות, ועם ההתפתחות
החקירה הוא חושף חלקים רבים יותר של האמת. משום כך מצאנו לנכון לדחות את
בקשת הסניגור בסיכומיו לאמץ דווקא את האמרה הראשונה ולא את האחרונות.

באמרתו הראשונה הנאשם עוד הרחיק את עצמו ממעשיה של אותה וופא אדריס,
אך כאשר קוראים את אמרותיו ה<u>שנייה</u> וה<u>שלישית</u> עולה בבירור כי הקשר שלו עם
הפיגוע המתואר בפרטי אישום 2-4 <u>הדוק</u> יותר ממה שהודה בו בתחילה.

**פרטי האישום**

לאחר הקדמה זו נעבור לכתב אישום עצמו, פרט פרט וראיותיו. ראשית נבחן את
אמרותיו של הנאשם ולגבי כל פרט נפנה לאסמכתא עבורה, ואח"כ נדון בתוספת
הראייתית הנדרשת.

פרט ראשון : ת/3 עמוד 1 שורה 13 עד עמוד 2 שורה 6.
פרט שני : ת/2 עמוד 2 שורה 4 עד עמוד 4 שורה 2. ת/3 עמוד 2 שורה 23 עד עמוד 3
שורה 28
פרט שלישי : כנ"ל
פרט רביעי : כנ"ל
פרט חמישי : ת/3 עמוד 5 שורה 19 עד שורה 21
פרט שישי : ת/3 עמוד 5 שורה 21 עד שורה 24

הנאשם מודה באמרות אלה בכך שהוא ישב יחד עם המכונה "אבו טלאל" והמחבלת
וופא אדריס בתכננם ביצוע פיגוע בירושלים. הנאשם אף מודה כי הוטל עליו
התפקיד לשכנע את המחבלת לבצע פיגוע, וכאשר המחבלת הביעה הססנות מסוימת
וחזרה בה ממכוונתה לבצע פיגוע, הוא ישב בכוונה לשכנע אותה בכל זאת לבצע
פיגוע. לבסוף היא התרצתה ואכן ביום 27.1.2002 בוצע הפיגוע.

-2-

תאריך: ט' אלול, תשס"ד                                  תיק מס': 3465/02
26 אוגוסט, 2004

1
2  הביסוס ליתר פרטי האישום עולה באופן ברור מקריאת אמרתו האחרונה של
3  הנאשם, בה הוא מפרט את העבירות שהוא ביצע, בין בעבר הרחוק, ובין זה מקרוב.
4
5  בכך קשר הנאשם את עצמו בקשר אמיץ לכל פרטי האישום כפי שהם מופיעים
6  בכתב האישום. אם היה ניתן להכריע את דינו אך ורק על סמך אמרות אלו ניתן היה
7  להרשיעו כבר בשלב זה בכל פרטי כתב האישום.
8
9  **התוספת הראייתית**
10
11  על אף האמור לעיל, שיטת המשפט שלנו דורשת ראיה עצמאית להודאת נאשם
12  הניתנת כאמרת חוץ, בטרם יוכל בית המשפט להרשיע אדם בדין, מה שנקרא בפי
13  משפטנים, "דבר מה נוסף". במקרה שלפנינו, קיים דבר מה נוסף למכביר, לפחות
14  בכל פרטי האישום הקשורים לפיגוע, נפנה רק לחלק מהם, ת/85, ת/87 ות/102, דוח
15  פעולה של השוטר דרור אברהם, חוות דעת מומחה של השוטר אריאל יערי ממעבדת
16  חבלה של המשטרה וחוות דעת מומחה של פרופ' יהודה היס, בהתאמה. ראיות אלו
17  מספיקות בעצמן את כל הנדרש מבחינת הראיות החיצוניות לעצם קרות הפיגוע,
18  ולכך שהפיגוע גרם למותו של אדם. יתר הראיות שהוגשו בהסכמה יש בהם להוכיח
19  את כל עובדות פרטי האישום 2,3 ו-4 כולל הנפגעים בנפש, והנזק לרכוש ועל כן יש
20  להרשיעו בעבירות אלה.
21
22  ברם, אין בתוספת הזו להעיד באופן ישיר על שאר פרטי האישום בהם הואשם
23  הנאשם, דהיינו פרטי האישום הראשון, החמישי והשישי.
24
25  דינו של הדבר-מה הנוסף עבר תהפוכות ושינויים , אך ניתן להגדיר אותו בעקרון כפי
26  שמוגדר על ידי השופט יעקב קדמי בספרו **על הראיות** (כרך 1, עמוד 102)
27
28  **"אין דרישת ה'דבר מה' מבטאת דרישה לתוספת של ראיה המצביעה,**
29  **היא גופה, על אשמתו של הנאשם; אלא דרישה שעיקרה תוספת ראיה**
30  **המאפשרת להעמיד את ההודיה במבחן האמת"**
31
32  אם זה המבחן, אז כאמור לעיל, עצם הוכחת קרות הפיגוע והתוצאות הנוראות אשר
33  נגרמו ממנו מהווה דבר מה לפרטים הקשורים לפיגוע. בנוסף, עצם הוכחת קרות
34  הפיגוע מאמת את כל הנאמר באמרות הנאשם ביחס לקשר שלו עם אותו "אבו
35  טלאלי" האדם אשר הוציא את הפיגוע לפועל. אם כאמור, אנו מאמתים את אותו
36  קשר אזי בכוחו של "דבר מה נוסף" זה לאמת את האמור בפרטי האישום החמישי
37  והשישי, אשר גם בהם קשר הנאשם את עצמו עם "אבו טלאלי" בביצוע עבירות
38  נוספות. לנוכח האמור יש להרשיע את הנאשם גם בפרטי האישום החמישי והשישי.
39
40  לגבי פרט האישום הראשון; כאמור פרט זה מתייחס לעבירה אשר לכאורה בוצעה
41  כמעט עשור טרם מעצרו של הנאשם, ואשר אין לה כל קשר ליתר העבירות
42  המופיעות בכתב האישום. האם אימות חלק מאמרתו של הנאשם יכול להשתרע על
43  כלל אמרתו והאם אימות זה יכול לצוף מעל כל חלקי האמרה, ובכל פעם שנדרש
44  דבר מה נוסף לאימות הדברים יופיע וירשיע?
45
46  דעתו של השופט קדמי בספרו הנ"ל, (עמוד 122) היא שלא:
47
48  **"במקום שמדובר בסדרת עבירות הקשורות אחת ברעותה עד כדי היותן**
49  **'מסכת אחת', די ב'דבר מה' לאחת מן העבירות"**

-3-

תאריך: ט' אלול, תשס"ד          תיק מס': 3465/02
26 אוגוסט, 2004

אין ספק שפרט האישום הראשון מהווה עבירה אשר אינה קשורה לעבירות האחרות, אינה בבחינת "מסכת אחת" ואיננה חלק מסדרת עבירות, ולכן לא עולה מחומר הראיות המצוי בתיק תוספת ראייתית מספקת בכדי להרשיע את הנאשם בו. לנוכח האמור הנאשם מזוכה מעבירה זו.

סוף דבר, הנאשם מזוכה מפרט האישום הראשון ומורשע בפרטי האישום השני, השלישי, הרביעי, החמישי והשישי.

ניתן והודע היום, 26/08/04, בפומבי.

_____     _____     _____
שופט                 אב"ד                שופט

-4-

P 3: 43