

[Handwritten amendments shown in italics, in blue]

**Israel Defense Forces**

| | | |
|---|---|---|
| In the Military Court | Court File: | *3544/02* |
| Beit El | Prosecution File: | 484/02 |
| Before Panel | Detailed Incident Files: | 1328/02 Binyamin |
| | | 2069/02 Minorities |

### In the case between the Military Prosecutor – Prosecuting

### – versus –

**Sanah Mohamed Shehadeh**
Identity No. 081021198, born June 19, 1975, resident of Qalandiya Refugee Camp
Under arrest since May 24, 2002

### - the Defendant -

### *AMENDED* **INDICTMENT** *April 29, 2004*

*Captain Vladi Borodovsky, Military Prosecutor  [Signature]*

**The above named Defendant is hereby accused of carrying out the following offenses:**

**First Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970*, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968*.

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* ~~caused~~ the death of another person, specifically:

The wanted military operative, Nasser Shawish, contacted Abdel Karim Aweis, an operative of the military Tanzim, responsible for carrying out numerous terrorist attacks, and an officer in the Palestinian Police, and informed him that he intended to execute a suicide terrorist attack, with

[Stamp] P 5: 116

1

the suicide terrorist being Mohamed Hashaiqa, who had expressed his intention to carry out the terrorist attack. Abdel Karim Aweis agreed to participate in carrying out the planned suicide terrorist attack. The two arranged to meet the next day in order to finalize matters for executing the terrorist attack. The next day Abdel Karim Aweis and Nasser Shawish met and traveled together to an apartment in Um Shara'it, where they met with the suicide terrorist Mohamed Hashaiqa, and with another young woman, Susie, who was also supposed to carry out a suicide terrorist attack. After the two suicide terrorists had been filmed taking responsibility for the terrorist attack, Nasser Shawish informed Abdel Karim that the terrorist attack was to be carried out on March 17, 2002. The young woman, Susie, decided not to go and carry out the terrorist attack, and returned to her town, Nablus.

The Defendant met Obeidah, with whom she studied. Obeidah was a relative [*spelling error in original corrected*] of the wanted military operative, Nasser Shawish, and she sent him young people who were interested in carrying out suicide terrorist attacks. Obeidah asked the Defendant for her help in the said activity, and wanted to introduce the Defendant to Nasser Shawish, who was wanted by the security forces. After [that] the Defendant gave her telephone number to Obeidah, and thus Nasser Shawish made contact with the Defendant, and the two also met. Initially the Defendant replied to Nasser that she did not have time to assist him in the activity which Obeidah had spoken of, to infiltrate suicide terrorists, but the two continued to stay in touch.

On March 20, 2002, Nasser Shawish asked the Defendant to bring a suicide terrorist into Jerusalem, so that he could carry out a suicide terrorist attack, and that she would do so with another young woman.

1

[Stamp] This indictment received _____
On *July 11, 2002*
Registered in the journal under File _____
Court Officer *Yael*

[Stamp] P 5: 116 [continued]

On March 21, 2002, the Defendant, Nasser Shawish, and Abdel Karim Aweis met with the suicide terrorist Mohamed Hashaiqa, at the Al-Hajjal Hotel. On that occasion, Abdel Karim and Nasser Shawish said to Mohamed Hashaiqa that he would be carrying out the suicide terrorist attack on that day. Mohamed replied that he was prepared to do so. Subsequently Nasser Shawish and Mohamed Hashaiqa went up to Nasser's room in the hotel, where Nasser dressed the suicide terrorist, Mohamed Hashaiqa, in the explosive belt. After the two came down from the room, the Defendant, Abdel Karim Aweis, Nasser Shawish and the suicide terrorist, Mohamed Hashaiqa, traveled to the home of Abu Majhad Faqiya. There the four of them met with Khader Dabaiyeh, and at Nasser's request Majid Sawafta also arrived. Abdel Karim Aweis and Nasser Shawish instructed the Defendant and the suicide terrorist, Mohamed Hashaiqa, that if Israel Defense Forces units were to discover them, then the Defendant was to flee and the terrorist was to detonate the explosive belt on his person.

The military operative Abdel Karim Aweis was concerned that the Defendant was afraid to carry out the terrorist attack, and that she was dressed in traditional Arab dress. Therefore, Abdel Karim Aweis called a female acquaintance of his, Kahira Sa'id Ali Sa'adi, who had previously consented to participate in the execution of suicide terrorist attacks and to transport suicide terrorists, and asked that she come to Ramallah.

Following that conversation the Defendant, the suicide terrorist, and their accomplices traveled to the Abu Riya Hospital in Ramallah.

Following a further telephone conversation, Kahira Sa'adi also arrived, and met with Abdel Karim Aweis and Khader Dabaiyeh near the hospital. Alongside them was parked a small blue vehicle, in which sat the suicide terrorist, Mohamed Hashaiqa, dressed in the explosive belt, Nasser Shawish, the driver of the vehicle, and the Defendant. Abdel Karim Aweis told Kahira that in the vehicle was a terrorist on his way to carrying out a suicide terrorist attack, and another woman.

Abdel Karim Aweis asked Kahira to travel together with the suicide terrorist and the Defendant, to carry out the terrorist attack, since Kahira was dressed in pants and there was no covering on her head. Kahira got into the vehicle and sat in the back seat, alongside the suicide terrorist. The Defendant sat in front, alongside the vehicle's driver, Nasser Shawish.

The Defendant gave the suicide terrorist a Quran. About two hundred meters before the Qalandiya checkpoint the driver, Nasser Shawish, stopped the car, asked the suicide terrorist for a kiss, and the Defendant together with the suicide terrorist and Kahira Sa'adi got out of the vehicle. The Defendant caught a taxi, and asked the driver to drive them so as to bypass the A-Ram checkpoint, and she paid the taxi driver NIS 50. The Defendant also purchased flowers,

[Stamp] P 5: 117

3

which she gave to the suicide terrorist. The Defendant, the suicide terrorist and Kahira Sa'adi passed the A-Ram checkpoint on foot, avoiding examination by Israel Defense Forces troops. Subsequently the three got into another taxi, and the Defendant asked the driver to take them to Jaffa Road in Jerusalem, since they wanted to celebrate Mother's Day; since they didn't have an Israeli identity card, he should drive them by roads where there were no Israel Defense Forces checkpoints. The Defendant, Kahira and the suicide terrorist walked along Jaffa Road, in order to locate a place crowded with people, at which the suicide terrorist would blow himself up and cause the deaths of numerous civilians. As they walked, Kahira instructed the Defendant to walk behind them, not alongside them, since she was dressed in traditional Arab dress, so as not to bring suspicion on them.

The Defendant saw that there were many people in the street, and consulted with Kahira Sa'adi whether this was a suitable place for carrying out a suicide terrorist attack, which would cause the deaths of numerous civilians. Kahira responded in the affirmative. The Defendant agreed with Kahira, and sent the suicide terrorist to carry out the planned terrorist attack. The suicide terrorist asked the Defendant and Kahira to turn back, and went to detonate the explosive belt on his person, so as to cause the deaths of many civilians. The Defendant and Kahira left the scene, and a few minutes later, at around 4:20 p.m., the suicide terrorist detonated the explosive belt on his person on King George Street in Jerusalem.

As a result of the detonation, three civilians were killed and 81 other wounded. Also, extensive damage was caused to property.

The Defendant heard the sound of the detonation carried out by the suicide terrorist Mohamed Hashaiqa when he set off the explosive belt on his person. The Defendant returned to Ramallah, where her recruiter, Nasser Shawish, made contact with her, and she updated him as to her actions, and the fact that the suicide terrorist reached Jerusalem and detonated the explosive belt on his person.

Kahira Sa'adi, who arrived later in Ramallah, updated Abdel Karim Aweis, the above mentioned Tanzim military operative, as to what they had carried out. Since Kahira had lost contact with the Defendant, she asked as to her fate. Abdel Karim Aweis informed her that the Defendant had returned home some time before.

The Defendant, by her actions as described above, intentionally caused the death of the late Tzipora Shemesh, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, in King George Street. The late Tzipora Shemesh was pregnant at the time of her death.

[Stamp] P 5: 117 [continued]

4

**Second Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970*, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968*.

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* ~~caused~~ the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, intentionally caused the death of the late Advanced Staff Sergeant Major Gadi Shemesh, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, on King George Street.

2

[Stamp] P 5: 117 [continued]

**Third Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970*, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.*

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* ~~caused~~ the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, intentionally caused the death of the late Yitzhak Cohen, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, on King George Street.

**Fourth Count:**

**Nature of the Offense:** *Being an accessory to* attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section *14*, 19, *20* of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, ~~attempted~~ *was an accessory to attempting* to intentionally cause the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, attempted to intentionally cause the deaths of the civilians who were at the scene of the explosion of the suicide terrorist, Mohamed Hashaiqa, whom she had brought to the scene of the terrorist attack. As a result of the explosion, 81 civilians were wounded.


**Prosecution Witnesses**

1. Advanced Staff Sergeant Major Marko Dahan, [Badge No.] 56839, Investigations Bureau, Judea, took the Defendant's statement. *-> testified in this framework [unclear]*
2. Defendant's statement in her own handwriting, [taken] by Prosecution Witness 1.
3. Kahira Sa'id Ali Sa'adi, Identity No. 903946960, under arrest in Prosecution File 451/02 + photographic lineup. *– hostile*
4. Abdel Karim Ratheb Younis Aweis, Identity No. 980136675, under arrest in Prosecution File 442/02 + Picture identification. *– silent*

[Stamp] P 5: 118

6

A detailed witness list from Detailed Incident File 02069/02 Minorities (the file on the terrorist attack) will be provided during the course of the trial. *-> Not needed, there are agreed-upon facts.*

> [Signature]
> Dalia Kaufman, Captain
> Military Prosecutor

Date: July 10, 2002
Reference: 484/02

3

[Stamp] P 5: 118 [continued]

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 116-120.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 116-120.

Rina Ne'eman

ss.: New Jersey

On the 28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

MRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

| צבא | | המשפט | הגנה | | לישראל |
|---|---|---|---|---|---|
| בבית | | הצבאי | | | |
| בבית | | אל | | | |
| בפני | | הרכב | | | |

תיק ביהמ"ש: 3544
תיק תביעה: 484/02
תיקי פ.א. 1328/02 בנימין
2069/02 מיעוטים

**במשפט שבין התובע הצבאי – המאשים**

**-נגד-**

סנאא מחמד שחאדה
ת.ז. 081021198, יליד 19/6/75 , תושבת מ.פ. קלנדיה
עצורה מיום 24/5/02

**הנאשמת**

**כתב-אישום**

התאשמת הנ"ל מואשמת בזאת בביצוע העבירות הבאות:

**פרט ראשון:**

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשל"י – 1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך, בדיעה בכוונה למותו של אחר, כדלקמן:

המפעיל הצבאי, המבוקש נאצר שווישע פנה לע/כ/דים עוויש פעיל תנזים צבאי האחראי לביצוע פיגועים רבים
ויקציין במשטרה הפלסטינית והודיע לו כי בכוונתו להוציא לפועל פיגוע התאבדות, כאשר המחבל המתאבד
הוא מחמד חשאייקה שהביע את כוונתו לבצע את הפיגוע. עיקרים עוויש הסכים להשתתף בביצוע פיגוע
ההתאבדות הממותכן. השניים קבעו להפגש למחרת על מנת לסכם עניינים לצורך ביצוע הפיגוע. למחרת
נפגש עיקרים עוויש ונאצר שווישע ונסע יחד לדירת בעיי אום שראיי, שם נפגש עם המחבל המתאבד
מחמד חשאייקה וצעירה נוספת, סוזי אשר אף היא היתה אמורה לבצע פיגוע התאבדות. לאחר שעני
המחבלים המתאבדים צולמו כשהם לוקחים אחריות לפיגוע, הודיע נאצר שווישע לע/כרים כי הפיגוע אמור
להתבצע ביום 17/3/02. הצעירה סוזי חזליית שלא לצאת לב'יצוע הפיגוע וחזרה לעירה שם.

הנאשמת פגשה נאצר שווישע לימודים עבידה. עבידה היתה קרובתה לפעיל הצבאי המבוקש נאצר שווישע
ושלחה אליו צעירים המעוניינים לבצע פיגועי התאבדות. עבידה ביקשה מהנאשמת את עזרתה בפעילותה
הנ"ל וביקשה להכיר לנאשמת את המבוקש לצורות הבטחון, נאצר שווישע.  לאחר שהנאשמת מסרה את
מספר הטלפון שלה לעבודה וכך יצר נאצר שווישע קשר עם הנאשמת והשנינים אף נפגשו. תחליה חשיבה
הנאשמת לנאצר כי אין לה זמן לסייע לו בפעילות עליה דיברה עבידה ולהתהדרת מחבלים מתאבדים, אולם
השנינים המשיכו לשמור על קשר.
ביום 20/3/02 ביקש נאצר שווישע מהנאשמת להכניס מחבל מתאבד לתוך ירושלים על מנת שיבצע פיגוע
התאבדות, וכי היא תבצע זאת עם צעירה נוספת.

ביום 21/3/02 נפצעו התאשמת, נאצר שוויש, ועוכרים עוויס  עם המחבל המתאבד מחמד חשאיקה במלון ¹
"אל חמ'ל". באותה הזדמנות אמרו ע/כרים ונאצר שוויש למחמד חשאיקה כי באותו יום הוא יבצע את
פיגוע ההתאבדות. מחמד השיב כי הוא מוכן לכך. לאחר מכן עלו נאצר שוויש  ומחמד חשאיקה לחדרו של
נאצר במלון, שם הלבישו נאצר למחבל המתאבד, מחמד חשאיקה את חגורת הנפץ. לאחר שהשניים ירדו
מהחדר נסעו התאשמת, ע/כרים עוויס נאצר שוויש והמחבל המתאבד ד, מחמד חשאיקה נסעו לבית של אבו
מג'חד פקיה. שם נפצעו הארבעה עם האדד דבאעיה ולבקשת נאצר שוויש הגיע לשם מג'יד צנדאסטה.
ע/כרים עויס ונאצר שוויש תנחו את התאשמת ואת המחבל  המתאבד מחמד חשאיקה כי אם כוחות צה"ל
יתפסו אותם, אזי על  התאשמת יהיה לברוח והמחבל יפוצץ את חגורת הנפץ שעל גופו.

הפעיל הצבאי ע/כרים עוויס חשש כי התאשמת חוששת לבצע את הפיגוע, וכן היתה לבושה בלבוש ערבי
מסורתי.  לפיכך,התקשר ע/כרים עוויס למכרה שלו, שהסכימה בפגיו לחשתתף בביצוע פיגועי התאבדות
ולהוביל מתבלים מתאבדים, קאהירה העדי עלי סעדי וביקש שתנגיע לרמאללה.
לאחר שיחה זו נסעו התאשמת, המחבל המתאבד ותברי"הם לביה"ח אבו ריה ברמאללה.
לאחר שיחת שלמון נוספת הגיעה גם קאהירה סעדי ונפגשה עם ע/כרים עוויס והאדד דבאעיה ליד בית
החולים. ליד  חנה רכב קטן בצבע כחול, בו ישבו המחבל המתאבד, מחמד חשאיקה קאהירה בשעה בחגורת
הנפץ, נאצר שוויש נהג הרכב והתאשמת. ע/כרים מסר לקאהירה כי בתוך הרכב ישנו מחבל בדרכו לבצע
פיגוע התאבדות וכן אישה נוספת.

ע/כרים עוויס ביקש מקאהירה לנמצא יחד עם המחבל המתאבד והתאשמת  לביצוע הפיגוע מאחר שקאהירה
היתה לבושה במכנסים וראשה גלוי ללא כיסוי. קאהירה נכנסה לרכב והתיישבה בכיסא האחורי ליד
המחבל המתאבד. התאשמת ישבה מקדימה ליד נהג הרכב, נאצר שוויש.
התאשמת נתנה למחבל המתאבד ספר קוראן. כמאתיים מטרים מלפני מחסום קלנדיה עצר הנהג נאצר שוויש
את הרכב, ביקש נשיקה.מהמחבל התאבד והתאשמת יחד עם המחבל המתאבד וקאהירה סעדי ירדו
מהרכב. התאשמת תפסה מונית וביקשה מהנהג שייסע אותם ונך עקיפת מחסום א רם, ושילמה לנהג
המונית 50 ש בתמורה. התאשמת אף קנתה פרחים אותם היא נתנה למחבל המתאבד. את מחסום א רם
עברו התאשמת, המחבל המתאבד וקאהירה סעדי ברגל תוך כדי עקיפת בדיקת חיילי צה"ל. לאחר מכן עלו
השלושה למונית נוספת והתאשמת ביקשה מנהג המונית שייסע אותם לרחוב יפו בירושלים כיוון שוהם
רוצים לחגוג את יום האם כן להם תעודת זהות ישראלית, שיסיע אותם בדרכים בהם אין מחסומי צה"ל.
התאשמת, קאהירה והמחבל המתאבד הלכו לאורך רחוב יפו על מנת לאתר מקום הומה אדם בו יתפוצץ
המחבל המתאבד וירגום למותם של אזרחים רבים. במהלך הליכתם, קאהירה הורתה לתאשמת ללכת
מאחוריהם ולא לדים כיוון שהיתה לבושה לבוש ערבי מסורתי ועל מנת שלא להתשידה.

התאשמת הבחינה כי ברחוב ישנם אנשים רבים והתיעצה עם קאהירה סעדי האם זהו מקום מתאים לביצוע
פיגוע התאבדות כדי לגרום למותם של אזרחים רבים. קאהירה השיבה לה בחיוב. התאשמת הסכימה עם
קאהירה ושילחה את המחבל המתאבד לבצע את הפיגוע המתוכנן. המחבל המתאבד ביקש מהתאשמת
וקאהירה לחזור אחורנית והלך לפוצץ את חגורת הנפץ שעל גופו על מנת לגרום למותם של אזרחים רבים.
התאשמת וקאהירה הלכו ממקום וכעבור מספר דקות בסמוך לשעה 16.20 פוצץ המחבל המתאבד את
חגורת הנפץ שעל גופו ברחוב קינג ג'ירנ'ג בירושלים.
                                                 כתוצאה מהתפוצצות נהרגו שלושה אזרחים ונפצעו 81 נוספים. כמו כן נגרם נזק רב לרכוש.

התאשמת שמעה את קול הפיצוץ שביצע המחבל המתאבד מחמד חשאיקה   כאשר פוצץ חגורת הנפץ שעל
גופו. התאשמת חזרה לרמאללה שם יצר עימה קשר עימה קשר מגיייסה, נאצר שוויש  והיא עדכנה אותו במעשיה ובכך
שהמחבל המתאבד הגיע לירושלים ופוצץ את חגורת הנפץ שעל גופו.
קאהירה סעדי שהגיעה מאוחר יותר לרמאללה, עדכנה באשר ביצעו את ע/כרים עוויס, פעיל צבאי של
התנגים הנ"ל. מאחר שקאהירה התנתקה מהתאשמת, שאלה לגורלה. ע/כרים עוויס הודיע לה כי התאשמת
הגיעה לביתה מזמן.

התאשמת במעשיה המתוארים לעיל גרמה בכוונה למותם של ציפורה שמש ז"ל אשר נהרגה כתוצאה
מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'. ציפורה שמש ז"ל היתה בהריון במותה.

**פרט שני:** ס 'ץ
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון)
(מס' 378 תשי"ל – 1970.) ס 'ד
**פרטי העבירה:** התאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02  או בסמוך לכך, גרמה בכוונה
למותו של אחר, כדלקמן:
התאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של רסי"ם גדי שמש ז"ל אשר נהרג
כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'.

2

<u>פרט שלישי:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשי"ל – 1970.

<u>פרטי העבירה:</u> הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך, גרמה בכוונה למותו של אחר, כדלקמן :

הנאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של יצחק כהן ז"ל אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'.

<u>פרט רביעי:</u>

<u>מהות העבירה:</u> נסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשי"ל – 1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח - 1968.

<u>פרטי העבירה:</u> הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך, ניסתה לגרום בכוונה למותו של אחר, כדלקמן :

הנאשמת במעשיה המתוארים בפרט אישום ראשון, ניסתה לגרום בכוונה למותם של האזרחים שהיו במקום התפוצצות המחבל המתאבד, מחמד חשאיקה, אותו הובילה למקום הפיגוע. כתוצאה מההתפוצצות נפצעו 81 אזרחים.

<u>עדי התביעה :</u>

1. רס"מ מרקו דהן, 56839 לחיי"ק יהודה, גובה אמרת הנאשמת.
2. אמרת הנאשמת בכתב ידה, עיי ע"ת 1.
3. קאהירה סעיד עלי סעדי, 903946960, עצורה בת.ת. 451/02 + מסדר זיהוי תמונות.
4. ע/מכריס ראתב יונס עוויס, 980136675, עצור בת.ת. 422/02 + זיהוי תמונה.

רשימת עדים מפורטת מתיק פ"א 02069/02 מיעוטים (תיק הפיגוע) תמסר במהלך המשפט.

דליה קאופמן                סרן
תובעת                    צבאית

תאריך: 10/7/02:
סימוכין: 484/02

3