

[Handwritten amendments shown in italics, in blue]

Israel Defense Forces

| | |
|---|---|
| In the Military Court | Court File: |
| Beit El | Prosecution File: |
| Before Panel | Detailed Incident Files: |

Court File:         3544/02
Prosecution File:     484/02
Detailed Incident Files:  1328/02 Binyamin
                          2069/02 Minorities

In the case between the Military Prosecutor – Prosecuting

– versus –

Sanah Mohamed Shehadeh
Identity No. 081021198, born June 19, 1975, resident of Qalandiya Refugee Camp
Under arrest since May 24, 2002

- the Defendant -

*AMENDED* INDICTMENT *April 29, 2004*

*Captain Vladi Borodovsky, Military Prosecutor [Signature]*

**The above named Defendant is hereby accused of carrying out the following offenses:**

**First Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, *and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.*

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* ~~caused~~ the death of another person, specifically:

The wanted military operative, ███████        ████████ responsible for carrying out numerous terrorist attacks,

[Stamp] P 5: 116

1

███████████. The two arranged to meet the next day in order to finalize matters for executing the terrorist attack. The next day ███████████ and ███████████ met and traveled together to an apartment in Um Shara'it, where they met with the suicide terrorist Mohamed Hashaiqa, and with another young woman, ████ who was also supposed to carry out a suicide terrorist attack. After the two suicide terrorists had been filmed taking responsibility for the terrorist attack, ███████████; ███████████. The young woman, ████ decided not to go and carry out the terrorist attack, and returned to her town, Nablus.

The Defendant met████████, with whom she studied. ███████ was a relative [*spelling error in original corrected*] of the wanted military operative, ███████████ and she sent him young people who were interested in carrying out suicide terrorist attacks.██████ , and wanted to introduce the Defendant to ███████████ who was wanted by the security forces. After [that] the Defendant gave her telephone number to ███████ and thus ███████████ made contact with the Defendant, and the two also met. Initially the Defendant replied to █████ that she did not have time to assist him in the activity which ██████ had spoken of, to infiltrate suicide terrorists, but the two continued to stay in touch.

On March 20, 2002, ███████████

woman.

1

┌─────────────────────────────────────────┐
│ [Stamp] This indictment received _____  │
│ On *July 11, 2002*                        │
│ Registered in the journal under File _____ │
│ Court Officer *Yael*                       │
└─────────────────────────────────────────┘

[Stamp] P 5: 116 [continued]

2

On March 21, 2002, the Defendant, ███████, and ██████████ met with the suicide terrorist Mohamed Hashaiqa, at the Al-Hajjal Hotel. On that occasion, ████████ and ███████ Subsequently ████ and Mohamed Hashaiqa went up to ██████ room in the hotel, where █████ dressed the suicide terrorist, Mohamed Hashaiqa, in the explosive belt. After the two came down from the room, the Defendant, ████████████ and the suicide terrorist, Mohamed Hashaiqa, traveled to the home of ████████ There the four of them met with ██████████, and at █████ request ██████ also arrived. ████ and ██████████

The military operative ████████ was concerned that the Defendant was afraid to carry out the terrorist attack, and that she was dressed in traditional Arab dress. Therefore, █████████ who had previously consented to participate in the execution of suicide terrorist attacks and to transport suicide terrorists, .

Following that conversation the Defendant, the suicide terrorist, and their accomplices traveled to the Abu Riya Hospital in Ramallah.

Following a further telephone conversation, ██████████ also arrived, and met with ██████ ████████ and ███████████ near the hospital. Alongside them was parked a small blue vehicle, in which sat the suicide terrorist, Mohamed Hashaiqa, dressed in the explosive belt, ██████████ the driver of the vehicle, and the Defendant. ████████████ ██████

███████████ █████ to ████ got into the vehicle and sat in the back seat, alongside the suicide terrorist. The Defendant sat in front, alongside the vehicle's driver, ████████████

The Defendant gave the suicide terrorist a Quran. About two hundred meters before the Qalandiya checkpoint the driver, ████████ stopped the car, ., and the Defendant together with the suicide terrorist and ██████████ got out of the vehicle. The Defendant caught a taxi, and asked the driver to drive them so as to bypass the A-Ram checkpoint, and she paid the taxi driver NIS 50. The Defendant also purchased flowers,

[Stamp] P 5: 117

3

which she gave to the suicide terrorist. The Defendant, the suicide terrorist and ▮▮▮▮▮▮
passed the A-Ram checkpoint on foot, avoiding examination by Israel Defense Forces troops.
Subsequently the three got into another taxi, and the Defendant asked the driver to take them to
Jaffa Road in Jerusalem, since they wanted to celebrate Mother's Day; since they didn't have an
Israeli identity card, he should drive them by roads where there were no Israel Defense Forces
checkpoints. The Defendant, ▮▮▮▮ and the suicide terrorist walked along Jaffa Road, in order to
locate a place crowded with people, at which the suicide terrorist would blow himself up and
cause the deaths of numerous civilians. As they walked, ▮▮▮▮▮

The Defendant saw that there were many people in the street, and consulted with ▮▮▮▮▮▮
whether this was a suitable place for carrying out a suicide terrorist attack, which would cause
the deaths of numerous civilians. ▮▮▮▮ responded in the affirmative. The Defendant agreed
with ▮▮▮▮ and sent the suicide terrorist to carry out the planned terrorist attack.
▮▮▮▮▮▮▮ and went to detonate the explosive belt on
his person, so as to cause the deaths of many civilians. The Defendant and ▮▮▮▮ left the scene,
and a few minutes later, at around 4:20 p.m., the suicide terrorist detonated the explosive belt on
his person on King George Street in Jerusalem.

As a result of the detonation, three civilians were killed and 81 other wounded. Also, extensive
damage was caused to property.

The Defendant heard the sound of the detonation carried out by the suicide terrorist Mohamed
Hashaiqa when he set off the explosive belt on his person. The Defendant returned to Ramallah,
where her recruiter, ▮▮▮▮▮▮▮▮▮▮▮ ; and she updated him as to her
actions, and the fact that the suicide terrorist reached Jerusalem and detonated the explosive belt
on his person.

▮▮▮▮▮▮▮, who arrived later in Ramallah, ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮. Since ▮▮▮▮ had lost contact with the
Defendant, ▮▮▮▮▮▮▮▮

The Defendant, by her actions as described above, intentionally caused the death of the late
Tzipora Shemesh, who was killed as a result of the detonation of the suicide terrorist, Mohamed
Hashaiqa, in King George Street. The late Tzipora Shemesh was pregnant at the time of her
death.

[Stamp] P 5: 117 [continued]

4

**Second Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, *and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.*

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* caused the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, intentionally caused the death of the late Advanced Staff Sergeant Major Gadi Shemesh, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, on King George Street.

2

[Stamp] P 5: 117 [continued]

5

LEFT

**Third Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, *and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.*

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally ~~causing caused~~ the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, intentionally caused the death of the late Yitzhak Cohen, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, on King George Street.

**Fourth Count:**

**Nature of the Offense:** *Being an accessory to* attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section *14,* 19, *20* of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, ~~attempted~~ *was an accessory to attempting* to intentionally cause the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, attempted to intentionally cause the deaths of the civilians who were at the scene of the explosion of the suicide terrorist, Mohamed Hashaiqa, whom she had brought to the scene of the terrorist attack. As a result of the explosion, 81 civilians were wounded.

**Prosecution Witnesses**

1. ████████████████████████████ Investigations Bureau, Judea, took the Defendant's statement. -> *testified in this framework [unclear]*
2. Defendant's statement in her own handwriting, [taken] by Prosecution Witness 1.
3. ████████████████████████████ under arrest in Prosecution File ██████ + photographic lineup. — *hostile*
4. ████████████████████████████ under arrest in Prosecution File ██████ + Picture identification. — *silent*

[Stamp] P 5: 118

6

A detailed witness list from Detailed Incident File ████████ Minorities (the file on the terrorist attack) will be provided during the course of the trial. -> *Not needed, there are agreed-upon facts.*

[Signature]
Dalia Kaufman, Captain
Military Prosecutor

Date: July 10, 2002
Reference: 484/02

3

[Stamp] P 5: 118 [continued]

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARK I. SOKOLOW, *et al.*,

              Plaintiffs,

   vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

             Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 116-120.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 116-120.

                              Rina Ne'eman

ss.: New Jersey

On the 28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

GROUT J MIHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2016
I.D.# 2382704

צבא    הגנה    לישראל

| | | | | |
|---|---|---|---|---|
| בית | המשפט | הצבאי | תיק ביהמ"ש: 2544/ | |
| בבית | | אל | תיק תביעה: 484/02 | |
| במפגי | | הרכב | תיקי פ.א. | 1328/02 בנימין |
| | | | | 2069/02 מעוטים |

<u>המשפט שבין התובע הצבאי – המאשים</u>

<u>- נגד -</u>

סאנא מחמד שחאדה
ת.ז. 081021198, ילידת 19/6/75 , תושבת מ.פ. קלנדיה
עצורה מיום 24/5/02.

<u>הנאשמת</u>

<u>כתב-אישום</u>

<u>הנאשמת הנ"ל מואשמת בזאת בביצוע העבירות הבאות:</u>

<u>פרט ראשון</u>

<u>מהות העבירה:</u> גרם למות אדם בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון)
(מס' 378) תשל"ה-1970.

<u>פרטי העבירה:</u> הנאשמת הנ"ל, בהיותה באיזור נמחצה לך מיום 21/3/02 או בסמוך לכך למותו בכוונה
למותו של אחר, כדלקמן:

[body paragraphs heavily degraded and partially redacted]

P 5: 116

ביום 21/3 נפגשו הנאשמת, ████, ו████ עם המחבל המתאבד פתחו׳ חשאיקה במלון ב
"שאל חג׳לי". באותה הזדמנות אמר ████ למחבל חשאיקה כי באותו יום הוא יבצע את
פיגוע ההתאבדות. ████ השיב כי הוא נכון לכך. לאחר מכן עלו ████ ומחבל חשאיקה לחדרו של
████ במלון. שם הלביש ████ למחבל המתאבד, מחמד חשאיקה את תגורת הנפץ. לאחר שהשניים ירדו
████ מהחדר נסעו הנאשמת, ████ והמחבל המתאבד, מחמד חשאיקה נסעו לבית ████ של
████. שם נפגשו הארבעה עם ████ ולבקשתו הגיע לשם ████
████ חתרו את הנאשמת ואת המחבל. ה████מתאבד חשאיקה כי אם כוחות צה״ל
יתפסו אותם, אזי על הנאשמת יהיה לברוח להבטיח המתאבד לפוצץ את תגורת הנפץ שעל גופו.

המפעיל חובב ████ חשב כי הנאשמת חוששת לבצע את הפיגוע, וכן היתה לבושה בלבוש ערבי
מסורתי. לפיכך, התקשר ████ למברית שלו, שהסכימה בפני ה לחשוחF ופיגוע פיגומי בכפר התאבדות
ולחובזל מתבבלים מתאבדים, ובניכש שתנגש לרמאללה.
לאחר שירתה זו נסעו הנאשמת, המחבל המתאבד וחבריהם לכפרייה אבו ████ ריח ברמאללה.
לאחר שירתה טלפתו טוספת הגיעו גם ████ לד׳ בית
החולים. לד׳ חמו רכב קטן בצבע כחול, בו ישבו המחבל המתאבד; מחמד חשאיקה כשהוא לבש בתגורת
הנפץ, ████ נהג ברכב והנאשמת ████ מסר ל████ כי בגתר הרכב ישנו מחבל בדרכו לבצע
פיגוע התאבדות וכן אשנות נוספת.

בישקו ████ לנסוע יחד עם המחבל המתאבד והנאשמת לביצוע הפסולי מאחר ה████
התינה לנוש במ במסכסים וראשון גלו ████ לא מיסות. ████ נכנסה לרכב וההתישבה כנוסע האחורי ליד
המחבל המתאבד. הנאשמת ישבה מקדימה ליד נהג הרכב, ████
הנאשמת נתנה למחבל המתאבד ספר קוראן. כמאחזיה מחום לפני מהסום קלנדיה עצר הנהג ████
את הרכב, ביקש נשיקה מהמחבל מהנאשמת והנאשמת יחד עם המחבל המתאבד ו████ ירדו
מהרכב. הנאשמת תפסה מחרית וביקשה מהנהג שיסע אותם ████ לבירת ████ צ, ושילמה לנהג
תמולית 50 לה בתמורה. הנאשמת אף קנתה פרחים אותם היא נתנה למחבל ה████מתאבד. את מהסום א ם
████ עברו הנאשמת, המחבל המתאבד ו████ ████ בדיקת חיילי צה״יל. לאחר מכן עלו
השלושה למונית נוספת והנאשמת ביקשה מהנהג ████ שיסע אותם לרחבד יפו בירוה׳שלים כיון שזם
רצים להנוב את יום האם ואף לחם ████ הנאשמת, שיטיע אותם בדרכים בהם אין מחסומי צה״ל.
הנאשמת ████ והמחבל המתאבד חלכו לאורך רחוב יפו על מנת לאתר מקום הומה אדם ם בו יתפוצץ
████ וירגום למונית של אורחים רבים. במהלך הליכתם, ████ חזריהנ לנאשמת ללכת
מאחוריהם ולא לידם כיון שהחשה לבוש עברי ████ מסוורתי וזה עשוי לעורר חשד שלא שלם לחשיפיים.

הנאשמת ████ הבחינה כי ברחוב ישנם אנשים רבים וחותועצה עם ████ ████ האם זהו מקום מתאים לביצוע
פיגוע התאבדות כדי לגרום למותם של אורחים רבים. ████ השיבה לה בחיוב. הנאשמת הסכימה עם
████ ושיכיוונ את המחבל המתאבד לבצע את הפיגוע המתוכנן. המחבל המתאבד ביקש מהנאשמת
████ לחזור אחוריהם והקל לפוצץ את תגורת הנפץ שעל גופו על מנת לגרום למותם של אזרחים רבים.
הנאשמת ████ חלכה מחמקום והבצגר מספר דקות בסמוך לשעה 16.20 פוצץ המחבל המתאבד את
תגורת הנפץ שעל גופו ברחוב יפו ████ רחים ונפצע 81 נוספים. כמו כן נגרם נזק רב לרכוש.

הנאשמת שמעה את קול הפיצוץ שביצע המחבל המתאבד מחמד חשאיקה. כאשר מצץ תגורת הנפץ שעל
גומו. הנאשמת חזרה לרמאללה שם יצר ████ עמה קשר מגויסה. ████ והיא עדכנה אותם במעשיה ובכך
שהמתחבל המתאבד הגיע ליורשלים ופוצץ את תגורת הנפש שעל גומו.
████ שהגיעה מאוחר יותר לרמאללה, עדכנה באשר ████ ביצוע את ████ פיגוע צבאי של
████ הנוגע הפניל, מאחר ████ התגסקה מהנאשמת, שאלה לגורלה, ████ הודיע לה כי הנאשמת
הגיעה לביתה בזמן.

הנאשמת במעשיה המתוארים לעיל גרמה בכוונה למותה של צפורה ████ זייל אשר נהרגה כתוצאה
מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג׳ורג׳. צפורה שמש זייל היתה בהריון במותה.

פרט שני:

מוות המעובר בגרמת מות בכוונה, עבירה לפי סעיף 51(א) לחןק בדבר הוראות בטחון (יהודה ושמרון)
(מס׳ 378) תשל״– 1970, ו████ 18 לצו ████

פרטי העבירה: הנאשמת הנ״ל, בחוותים באזור ומחוצה ל, ביום 21/3/02 או בסמוך לכך, גרמה בכוונה
למותו של אחר, כדלקמן:
הנאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של רס״מ גד׳ שמש זייל אשר נהרג
כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג׳ורג׳.

<u>**פרט שלישי:**</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשייל – 1970.

<u>פרטי העבירה:</u> הנאשמת הנייל, בהיותה באיזור ובמחוזה לה, ביום 21/3/02 או בסמוך לכך, בדרה לבונה למותו של אחר, כדלקמן:

הנאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של יצחק כהן ז"ל אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'.

<u>**פרט רביעי:**</u>

<u>מהות העבירה:</u> נסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(ב) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשייל – 1970, וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה:</u> הנאשמת הנייל, בהיותה באיזור ובמחוזה לו, ביום 21/3/02 או בסמוך לכך, ניסתה לגרום למותם של האזרחים שהיו במקום והתפוצצות המחבל המתאבד, מחמד חשאיקה, אותו הובילה למקום הפיגוע. כתוצאה מהתפוצצות נפצעו 81 אזרחים.

<u>עדי התביעה:</u>

1. _____  לחייק יהודה, גובה אמרת הנאשמת.
2. _____  אמרת הנאשמת בכתב ידה, עיי עיית.
3. _____  עבודה בת.ת + מסדר זיהוי תמונות.
4. _____  עצור בת.ת + זיהוי תמונה.

רשימת עדים מפורטת מתיק פייא _____ מיושטים (תיק חפיגוע) תמסר במהלך המשפט.

דליה קאופמן
תובעת

סרן
צבאית

תאריך: 10/7/02
סימוכין: 484/02

3

P 5; 118