

PLAINTIFF'S EXHIBIT 342A

[Handwritten amendments shown in italics, in blue]

## Israel Defense Forces

| | |
|---|---|
| In the Military Court | Court File: *3544/02* |
| Beit El | Prosecution File: 484/02 |
| Before Panel | Detailed Incident Files: 1328/02 Binyamin |
| | 2069/02 Minorities |

### In the case between the Military Prosecutor – Prosecuting

### – versus –

**Sanah Mohamed Shehadeh**
Identity No. 081021198, born June 19, 1975, resident of Qalandiya Refugee Camp
Under arrest since May 24, 2002

### - the Defendant -

*AMENDED* **INDICTMENT** *April 29, 2004*

*Captain Vladi Borodovsky, Military Prosecutor [Signature]*

**The above named Defendant is hereby accused of carrying out the following offenses:**

**First Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970*, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.*

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* ~~caused~~ the death of another person, specifically:

The wanted military operative, ███████ contacted ███████ an operative of the military Tanzim, responsible for carrying out numerous terrorist attacks, and an officer in the Palestinian Police, and informed him that he intended to execute a suicide terrorist attack, with

[Stamp] P 5: 116

1

the suicide terrorist being Mohamed Hashaiqa, who had expressed his intention to carry out the terrorist attack. ▓▓▓▓▓▓▓▓ agreed to participate in carrying out the planned suicide terrorist attack. The two arranged to meet the next day in order to finalize matters for executing the terrorist attack. The next day ▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓ met and traveled together to an apartment in Um Shara'it, where they met with the suicide terrorist Mohamed Hashaiqa, and with another young woman, ▓▓▓▓ who was also supposed to carry out a suicide terrorist attack. After the two suicide terrorists had been filmed taking responsibility for the terrorist attack, ▓▓▓▓▓▓▓▓ informed ▓▓▓▓▓▓▓▓ that the terrorist attack was to be carried out on March 17, 2002. The young woman, ▓▓▓▓, decided not to go and carry out the terrorist attack, and returned to her town, Nablus.

The Defendant met ▓▓▓▓▓▓, with whom she studied. ▓▓▓▓▓▓ was a relative [*spelling error in original corrected*] of the wanted military operative, ▓▓▓▓▓▓▓▓ and she sent him young people who were interested in carrying out suicide terrorist attacks. ▓▓▓▓▓▓ asked the Defendant for her help in the said activity, and wanted to introduce the Defendant to ▓▓▓▓▓▓▓▓ who was wanted by the security forces. After [that] the Defendant gave her telephone number to ▓▓▓▓▓▓, and thus ▓▓▓▓▓▓▓▓ made contact with the Defendant, and the two also met. Initially the Defendant replied to ▓▓▓▓ that she did not have time to assist him in the activity which ▓▓▓▓▓▓ had spoken of, to infiltrate suicide terrorists, but the two continued to stay in touch.

On March 20, 2002, ▓▓▓▓▓▓▓▓ asked the Defendant to bring a suicide terrorist into Jerusalem, so that he could carry out a suicide terrorist attack, and that she would do so with another young woman.

1

[Stamp] This indictment received _____
On *July 11, 2002*
Registered in the journal under File _____
Court Officer *Yael*

[Stamp] P 5: 116 [continued]

On March 21, 2002, the Defendant, ███████, and ███████ met with the suicide terrorist Mohamed Hashaiqa, at the Al-Hajjal Hotel. On that occasion, ███████ and ███████ said to Mohamed Hashaiqa that he would be carrying out the suicide terrorist attack on that day. Mohamed replied that he was prepared to do so. Subsequently ███████ and Mohamed Hashaiqa went up to ███████ room in the hotel, where ███████ dressed the suicide terrorist, Mohamed Hashaiqa, in the explosive belt. After the two came down from the room, the Defendant, ███████ and the suicide terrorist, Mohamed Hashaiqa, traveled to the home of ███████ There the four of them met with ███████, and at ███████ request ███████ also arrived. ███████ and ███████ instructed the Defendant and the suicide terrorist, Mohamed Hashaiqa, that if Israel Defense Forces units were to discover them, then the Defendant was to flee and the terrorist was to detonate the explosive belt on his person.

The military operative ███████ was concerned that the Defendant was afraid to carry out the terrorist attack, and that she was dressed in traditional Arab dress. Therefore, ███████ called a female acquaintance of his, ███████, who had previously consented to participate in the execution of suicide terrorist attacks and to transport suicide terrorists, and asked that she come to Ramallah.

Following that conversation the Defendant, the suicide terrorist, and their accomplices traveled to the Abu Riya Hospital in Ramallah.

Following a further telephone conversation, ███████ also arrived, and met with ███████ and ███████ near the hospital. Alongside them was parked a small blue vehicle, in which sat the suicide terrorist, Mohamed Hashaiqa, dressed in the explosive belt, ███████ the driver of the vehicle, and the Defendant. ███████ told ███████ that in the vehicle was a terrorist on his way to carrying out a suicide terrorist attack, and another woman.

███████ asked ███████ to travel together with the suicide terrorist and the Defendant, to carry out the terrorist attack, since ███████ was dressed in pants and there was no covering on her head. ███████ got into the vehicle and sat in the back seat, alongside the suicide terrorist. The Defendant sat in front, alongside the vehicle's driver, ███████.

The Defendant gave the suicide terrorist a Quran. About two hundred meters before the Qalandiya checkpoint the driver, ███████ stopped the car, asked the suicide terrorist for a kiss, and the Defendant together with the suicide terrorist and ███████ got out of the vehicle. The Defendant caught a taxi, and asked the driver to drive them so as to bypass the A-Ram checkpoint, and she paid the taxi driver NIS 50. The Defendant also purchased flowers,

[Stamp] P 5: 117

3

which she gave to the suicide terrorist. The Defendant, the suicide terrorist and ▆ passed the A-Ram checkpoint on foot, avoiding examination by Israel Defense Forces troops. Subsequently the three got into another taxi, and the Defendant asked the driver to take them to Jaffa Road in Jerusalem, since they wanted to celebrate Mother's Day; since they didn't have an Israeli identity card, he should drive them by roads where there were no Israel Defense Forces checkpoints. The Defendant, ▆ and the suicide terrorist walked along Jaffa Road, in order to locate a place crowded with people, at which the suicide terrorist would blow himself up and cause the deaths of numerous civilians. As they walked, ▆ instructed the Defendant to walk behind them, not alongside them, since she was dressed in traditional Arab dress, so as not to bring suspicion on them.

The Defendant saw that there were many people in the street, and consulted with ▆ whether this was a suitable place for carrying out a suicide terrorist attack, which would cause the deaths of numerous civilians. ▆ responded in the affirmative. The Defendant agreed with ▆ and sent the suicide terrorist to carry out the planned terrorist attack. The suicide terrorist asked the Defendant and ▆ to turn back, and went to detonate the explosive belt on his person, so as to cause the deaths of many civilians. The Defendant and ▆ left the scene, and a few minutes later, at around 4:20 p.m., the suicide terrorist detonated the explosive belt on his person on King George Street in Jerusalem.

As a result of the detonation, three civilians were killed and 81 other wounded. Also, extensive damage was caused to property.

The Defendant heard the sound of the detonation carried out by the suicide terrorist Mohamed Hashaiqa when he set off the explosive belt on his person. The Defendant returned to Ramallah, where her recruiter, ▆ made contact with her, and she updated him as to her actions, and the fact that the suicide terrorist reached Jerusalem and detonated the explosive belt on his person.

▆, who arrived later in Ramallah, updated ▆ the above mentioned Tanzim military operative, as to what they had carried out. Since ▆ had lost contact with the Defendant, she asked as to her fate. ▆ informed her that the Defendant had returned home some time before.

The Defendant, by her actions as described above, intentionally caused the death of the late Tzipora Shemesh, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, in King George Street. The late Tzipora Shemesh was pregnant at the time of her death.

[Stamp] P 5: 117 [continued]

**Second Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, *and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968*.

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* ~~caused~~ the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, intentionally caused the death of the late Advanced Staff Sergeant Major Gadi Shemesh, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, on King George Street.

2

[Stamp] P 5: 117 [continued]

**Third Count:**

**Nature of the Offense:** *Being an accessory to* intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, *and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968*.

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, *was an accessory to* intentionally *causing* ~~caused~~ the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, intentionally caused the death of the late Yitzhak Cohen, who was killed as a result of the detonation of the suicide terrorist, Mohamed Hashaiqa, on King George Street.

**Fourth Count:**

**Nature of the Offense:** *Being an accessory to* attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section *14*, 19, *20* of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, while within and outside the Region, on March 21, 2002, or thereabouts, ~~attempted~~ *was an accessory to attempting* to intentionally cause the death of another person, specifically:

The Defendant, by her actions as described in the first count of the indictment, attempted to intentionally cause the deaths of the civilians who were at the scene of the explosion of the suicide terrorist, Mohamed Hashaiqa, whom she had brought to the scene of the terrorist attack. As a result of the explosion, 81 civilians were wounded.

**Prosecution Witnesses**

1. ▇▇▇▇ Investigations Bureau, Judea, took the Defendant's statement. -> *testified in this framework [unclear]*
2. Defendant's statement in her own handwriting, [taken] by Prosecution Witness 1.
3. ▇▇▇▇ under arrest in Prosecution File ▇▇▇ + photographic lineup. – *hostile*
4. ▇▇▇▇ under arrest in Prosecution File ▇▇▇ + Picture identification. – *silent*

[Stamp] P 5: 118

A detailed witness list from Detailed Incident File ▓▓▓ Minorities (the file on the terrorist attack) will be provided during the course of the trial. -> *Not needed, there are agreed-upon facts.*

                                                 [Signature]
                                                 Dalia Kaufman, Captain
                                                 Military Prosecutor

Date: July 10, 2002
Reference: 484/02

3

[Stamp] P 5: 118 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

                Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 116-120.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 116-120.

_____
Rina Ne'eman

ss.: New Jersey

On the 28 day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

MRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

Case 1:04-cv-00397-GBD-RLE   Document 907-39   Filed 05/13/15   Page 10 of 13

| צבא | הגנה | לישראל |
|---|---|---|
| בבית המשפט הצבאי | תיק ביהמ"ש: 3544/02 |
| בבית אל | תיק תביעה: 484/02 |
| בפני הרכב | תיקי פ.א. 1328/02 בנימין / 2069/02 מיעוטים |

## במשפט שבין התובע הצבאי – המאשים

### -נגד-

סנאא מחמד שתאדה
ת.ז. 081021198, ילידת 19/6/75, תושבת מ.פ. קלנדיה
עצורה מיום 24/5/02

### הנאשמת

**כתב-אישום**  29.7.04

הנאשמת הנ"ל מואשמת בזאת בביצוע העבירות הבאות:

**פרט ראשון:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מס' 378) תשי"ל – 1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך גרמה בכוונה למותו של אחר, כדלקמן:

הפעיל הצבאי, המבוקש ▇▇▇ פנה ל▇▇▇ פעיל תנזים צבאי האחראי לביצוע פיגועים רבים וקצין במשטרה הפלסטינית והודיע לו כי בכוונתו להוציא לפועל פיגוע התאבדות, כאשר המחבל המתאבד הוא מחמד חשאיקה שהביע את כוונתו לבצע את הפיגוע. ▇▇▇ הסכים להשתתף בביצוע פיגוע ההתאבדות המתוכנן. השניים קבעו להפגש למחרת על מנת לסכם עניינים לצורך ביצוע הפיגוע. למחרת נפגשו ▇▇▇ ונסעו יחד לדירת בעיי אום שראיט, שם נפגשו עם המחבל המתאבד מחמד חשאיקה וצעירה נוספת, ▇▇▇ אשר אף היא היתה אמורה לבצע פיגוע התאבדות. לאחר ששני המתאבדים המתאבדים צולמו בשהם לוקחים אחריות לפיגוע, הודיע ▇▇▇ כי הפיגוע אמור להתבצע ביום 17/3/02. הצעירה ▇▇▇ החליטה שלא לצאת לביצוע הפיגוע וחזרה לעירה שכם.

הנאשמת פגשה בחברתה ללימודים ▇▇▇ . ▇▇▇ היתה קרובה/לפעיל הצבאי המבוקש ▇▇▇ ושלחה אליו צעירים המעוניינים לבצע פיגועי התאבדות. ▇▇▇ ביקשה מהנאשמת את עזרתה בפעילותה הנ"ל וביקשה להכיר לנאשמת את המבוקש לכוחות תבטחון, ▇▇▇ . לאחר שהנאשמת מסרה את מספר הטלפון שלה ל▇▇▇ וכך יצר ▇▇▇ קשר עם הנאשמת והשניים אף נפגשו. תחילה השיבה הנאשמת ל▇▇▇ כי אין לה זמן לסייע לו בפעילות עליה דיברה ▇▇▇ ולהחדרת מחבלים מתאבדים, אולם השניים המשיכו לשמור על קשר.

ביום 20/3/02 ביקש ▇▇▇ מהנאשמת להכניס מחבל מתאבד לתוך ירושלים על מנת שיבצע פיגוע התאבדות, וכי היא תבצע זאת עם צעירה נוספת.

1

P 5: 116

ביום 21/3/02 נפגשו הנאשמת, ▓▓▓▓▓, ו▓▓▓▓▓ עם המחבל המתאבד מחמד חשאיקה במלון
"אל חג'ל". באותה הזדמנות אמרו ▓▓▓▓▓ למחמד חשאיקה כי באותו יום הוא יבצע את
פיגוע ההתאבדות. ▓▓▓▓▓ השיב כי הוא מוכן לכך. לאחר מכן עלו ▓▓▓▓▓ ומחמד חשאיקה לחדרו של
▓▓▓▓▓ במלון, שם הלביש ▓▓▓▓▓ למחבל המתאבד, מחמד חשאיקה את חגורת הנפץ. לאחר שהשניים ירדו
מהחדר נסעו הנאשמת, ▓▓▓▓▓ והמחבל המתאבד ל, מחמד חשאיקה נסעו לבית של ▓▓▓▓▓.
▓▓▓▓▓. שם נפגשו הארבעה עם ▓▓▓▓▓ ולבקשת ▓▓▓▓▓ הגיע לשם ▓▓▓▓▓
▓▓▓▓▓ הנחו את הנאשמת ואת המחבל המתאבד מחמד חשאיקה כי אם כוחות צה"ל
יחשפו אותם, אזי על הנאשמת יהיה לברוח והמחבל יפוצץ את חגורת הנפץ שעל גופו.

הפעיל הצבאי ▓▓▓▓▓ חשש כי הנאשמת חוששת לבצע את הפיגוע, וכן היתה לבושה בלבוש ערבי
מסורתי. לפיכך, התקשר ▓▓▓▓▓ למכרה שלו, שהסכימה בפניו להשתתף בביצוע פיגועי ההתאבדות
ולהוביל מחבלים מתאבדים, ▓▓▓▓▓, ויבקש שתגיע לרמאללה.
לאחר שיחה זו נסעו הנאשמת, המחבל המתאבד וחבריהם לביה"ח אבו ריה ברמאללה. ליד בית
לאחר שיחת טלפון נוספת הגיעה גם ▓▓▓▓▓ ונפגשה עם ▓▓▓▓▓
החולים. ליד חנה רכב קטן בצבע כחול, בו ישבו המחבל המתאבד, מחמד חשאיקה כשהוא לבוש בחגורת
הנפץ, ▓▓▓▓▓ נהג הרכב והנאשמת. ▓▓▓▓▓ מסר ל▓▓▓▓▓ כי בתוך הרכב ישנו מחבל בדרכו לבצע
פיגוע התאבדות וכן אישה נוספת.

▓▓▓▓▓ ביקש מ▓▓▓▓▓ לנסוע יחד עם המחבל המתאבד והנאשמת לביצוע הפיגוע מאחר ש▓▓▓▓▓
היתה לבושה במכנסים וראשה גלוי ללא כיסוי. ▓▓▓▓▓ נכנסה לרכב והתיישבה בכיסא האחורי ליד
המחבל המתאבד. הנאשמת ישבה מקדימה ליד נהג הרכב, ▓▓▓▓▓.
הנאשמת נתנה למחבל המתאבד ספר קוראן. כמאתיים מטרים לפני מחסום קלנדיה עצר הנהג ▓▓▓▓▓
את הרכב, ביקש נשיקה.מהמחבל המתאבד והנאשמת יחד עם המחבל המתאבד ו▓▓▓▓▓ ירדו
מהרכב. הנאשמת תפסה מונית וביקשה מהנהג שיסיע אותם תוך עקיפת מחסום א רם, ושילמה לנהג
המונית 50 ש"ח בתמורה. הנאשמת אף קנתה פרחים היא נתנה למחבל המתאבד. את מחסום א רם
עברו הנאשמת, המחבל המתאבד ו▓▓▓▓▓ ברגל תוך כדי עקיפת בדיקת חיילי צה"ל. לאחר מכן עלו
השלושה למונית נוספת והנאשמת ביקשה מנהג המונית שיסיע אותם לרחוב יפו בירושלים כיוון שהם
רוצים לחגוג את יום האם ואין להם תעודת זהות ישראלית, שיסיע אותם בדרכים בהם אין מחסומי צה"ל.
הנאשמת, ▓▓▓▓▓ והמחבל המתאבד הלכו לאורך רחוב יפו על מנת לאתר מקום הומה אדם בו יתפוצץ
המחבל המתאבד ויגרום למותם של אזרחים רבים. במהלך הליכתם, ▓▓▓▓▓ הורתה לנאשמת ללכת
מאחוריהם ולא לידם כיוון שהיתה לבושה בלבוש ערבי מסורתי ועל מנת שלא להחשידם.

הנאשמת הבחינה כי ברחוב ישנם אנשים רבים והתייעצה עם ▓▓▓▓▓ האם זהו מקום מתאים לביצוע
פיגוע ההתאבדות כדי לגרום למותם של אזרחים רבים. ▓▓▓▓▓ השיבה לה בחיוב. הנאשמת הסכימה עם
▓▓▓▓▓ ושלחה את המחבל המתאבד לבצע את הפיגוע המתוכנן. המחבל המתאבד ביקש מהנאשמת
ו▓▓▓▓▓ לחזור אחורנית והלך לפוצץ את חגורת הנפץ שעל גופו על מנת לגרום למותם של אזרחים רבים.
הנאשמת ו▓▓▓▓▓ הלכו מהמקום וכעבור מספר דקות בסמוך לשעה 16.20 פוצץ המחבל המתאבד את
חגורת הנפץ שעל גופו ברחוב קינג גיורגי בירושלים.
כתוצאה מהתפוצצות נהרגו שלושה אזרחים ונפצעו 81 נוספים. כמו כן נגרם נזק רב לרכוש.

הנאשמת שמעה את קול הפיצוץ שביצע המחבל המתאבד מחמד חשאיקה כאשר פוצץ חגורת הנפץ שעל
גופו. הנאשמת חזרה לרמאללה שם יצר עימה קשר מגייסה, ▓▓▓▓▓ והיא עדכנה אותו במעשיה ובכך
שהמחבל המתאבד הגיע לירושלים ופוצץ את חגורת הנפץ שעל גופו.
▓▓▓▓▓ שהגיעה מאוחר יותר לרמאללה, עדכנה באשר ביצעו את ▓▓▓▓▓, פעיל צבאי של
התנזים הנ"ל. מאחר ש▓▓▓▓▓ התנתקה מהנאשמת, שאלה לגורלה. ▓▓▓▓▓ הודיע לה כי הנאשמת
הגיעה לביתה מזמן.

הנאשמת במעשיה המתוארים לעיל גרמה בכוונה למותה של ציפורה שמש ז"ל אשר נהרגה כתוצאה
מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג גיורגי. ציפורה שמש ז"ל היתה בהריון במותה.

**פרט שני:**
ס/4

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון)
(מס' 378) תשל"ל – 1970. ▓▓▓▓▓ 1968 ▓▓▓▓▓

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומוצה לו, ביום 21/3/02 או בסמוך לכך, גרמה בכוונה
למותו של אחר, כדלקמן:
הנאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של רס"מ גדי שמש ז"ל אשר נהרג
כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'.

2

P 5: 117

**פרט שלישי:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מסי 378) תשי"ל–1970.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך, גרמה בכוונה למותו של אחר, כדלקמן:

הנאשמת במעשיה המתוארים בפרט אישום ראשון, גרמה בכוונה למותו של יצחק כהן ז"ל אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד, מחמד חשאיקה ברחוב קינג ג'ורג'.

**פרט רביעי:**

**מהות העבירה:** נסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון, (יהודה והשומרון) (מסי 378) תשי"ל – 1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח - 1968.

**פרטי העבירה:** הנאשמת הנ"ל, בהיותה באיזור ומחוצה לו, ביום 21/3/02 או בסמוך לכך, ניסתה לגרום בכוונה למותו של אחר, כדלקמן:

הנאשמת במעשיה המתוארים בפרט אישום ראשון, ניסתה לגרום בכוונה למותם של האזרחים שהיו במקום התפוצצות המחבל המתאבד, מחמד חשאיקה, אותו הובילה למקום הפיגוע. כתוצאה מההתפוצצות נפצעו 81 אזרחים.

**עדי התביעה:**

1. _____ לחייק יהודה, גובה אמרת הנאשמת.
2. אמרת הנאשמת בכתב ידה, ע"י ע"ית 1.
3. _____, עצורה בת.ת. ___ + מסדר זיהוי תמונות.
4. _____, עצור בת.ת. ___ + זיהוי תמונה.

רשימת עדים מפורטת מתיק פ"א ___ מיעוטים (תיק הפיגוע) תמסר במהלך המשפט.

דליה קאופמן
תובעת

סרן
צבאית

תאריך: 10/7/02
סימוכין: 484/02

3