
PLAINTIFF'S EXHIBIT 344

[Line numbering in Hebrew original]

Date: 22 Iyar 5764  
May 13, 2004

File Number: 3544/02

**Military Court, Judea**

**Before the Presiding Judge: Lieutenant-Colonel Netanel Benichou**  
        **Judge: Captain Aryeh Dorani**  
        **Judge: Captain Zeev Afik**

**Military Prosecution**  
(represented by Captain Vladi Borodovsky)

- v -

**The Defendant: Sanah Mohamed Shehadeh Identity No. 81021198/ Prisons Service – Present**  
(represented by her attorney, Adv. Ahlam Hadad)

**Recorder: Corporal Rosie Ivgi**  
**Interpreter: Sergeant 1st Class Kamel Zian**

**The Presiding Judge opens the hearing and identifies the Defendant.**

## HEARING

Prosecutor: No evidence for penalty

Defense attorney: I move that the testimony of the Defendant, already submitted, serve as evidence for penalty.

Prosecutor, summing up: The Military Prosecution moves to impose on the Defendant a penalty of 4 terms of life imprisonment, to be served cumulatively, of which 3 life terms to be for each of the lives taken through her actions, and a further cumulative term of life imprisonment for being an accessory to the attempt to take the lives of as many civilians as possible, of whom 81 were wounded. Indeed, the Defendant was convicted of being an accessory to causing death, however, this is insufficient to say that she was convicted solely of being an accessory. The impression that one can get from the indictment is that the Defendant took an active part in executing this deadly plot, and this was from the preliminary stages of the plan, when it was proposed to the suicide terrorist to carry out the terrorist attack. During the transport of the terrorist, the Defendant stands out for her initiative and her strong desire to put the plot into action and murder

[Stamp] P 5: 125

1

as many people as possible; the Defendant also took the trouble of ensuring that the suicide terrorist should make his way to the heart of Jerusalem without being stopped on the way, and demonstrated the creativity characteristic of those at the instigating echelon of the crime, when she purchased flowers for the terrorist, thus attempting to conceal his identity. Indeed, as part of this plot, other murderers were active, and their part may indeed have been greater than that of the Defendant. It may be that those murderers took a more active part in in the plot, when they found the terrorist and equipped him with the explosive belt, but it appears that the Defendant's role in causing the deaths of the Israeli civilians, was an important and essential one. This is not simply technical assistance, but a deep involvement by the Defendant, who ensured that the terrorist attack would be completed, with as destructive an outcome as possible. The crime of murder is a unique one. In [unclear] them, the Court must communicate and give across the value of the sanctity of life, and the central place that it holds. One may definitely conceive of other legal systems which do not give priority to doing justice with those involved in murder. However, the State of Israel, which, in Section 300 of the Penal Law, set the penalty of life imprisonment as the only appropriate penalty for murder, thereby expressed an important message, specifically, that no distinction would be made between murderers,

-1-

[Stamp] P 5: 125 [continued]

[Line numbering in Hebrew original]

Date: 22 Iyar 5764  
May 13, 2004

File Number: 3544/02

great or small, and that every one of them, irrespective of their personal circumstances, the extent of their involvement in the murder, or other parameters, will be locked behind prison walls for the rest of his life. In this Region, as is known, there is only partial overlap with the Israeli legal system, insofar as it relates to being an accessory to the commission of a crime. It seems that there are areas which, in the Region, extend further and enter into areas which, in the State of Israel, would be perceived as being an accomplice. It appears that this is exactly the situation with the Defendant. Pursuant to Section 14 of the Criminal Liability Order, it may be that we would find it difficult to say that the Defendant carried out, with her own hands, one of the fundamentals of the crime, and so we are forced to define her as an accessory to murder. At the same time, were we to examine the instance before us in line with the theory of the inner circles of perpetrating the crime together, there is no doubt that we would find the Defendant at the very heart of the innermost circles, and we would relate to her as such, and not merely as an accessory to the commission of the crime. The Criminal Liability Order incorporates within it a solution to the situation in which a defendant is convicted of being an accessory, while we would generally view him as an actual accomplice. This possibility is found in the fact that an accessory also deserves the same penalty as would be imposed were he to be convicted of the full crime. In this, the law differs in the Region from that in the State of Israel where, as a result of Amendment No. 39, an accessory to murder may be sentenced to a term not exceeding 20 years. However, it may be that this difference derives specifically from that same lack of overlap between being an accessory in the Region and being an accessory in the State of Israel, which I mentioned previously. The Appeals Court has examined the question of the extent to which we may make use of the penal provisions in Israel, when the Court comes to pass sentence in the Region. In Appeals (Judea and Samaria) 120/02 *Nufal*, it was ruled that, although the penalty in Israel for attempted murder cannot exceed 20 years, this limitation does not apply in the Region, and the penalty that may be imposed for attempted murder may be one of life imprisonment. In the context of accessory to murder, the Court also imposed on an accessory to murder, in Appeals (Judea and Samaria) 64/02, a penalty of life imprisonment. This Honorable Court also recently analyzed the issue, in the cases of the Abu Hamid brothers; reference to this can be found in Military Court Appeals 8/98. It appears that there is no dispute, in the circumstances of this case, that the Defendant deserves the punishment of life imprisonment, and the only dispute that remains is whether these terms of life imprisonment should be cumulative or concurrent. In the circumstances of the matter, in light of the Defendant's deep involvement in the execution of the plot, she should be sentenced to cumulative terms of life imprisonment. The Court must send a

[Stamp] P 5: 126

powerful message against all those who participate in perpetrating mass terrorist attacks. If one who seeks to murder as many people as possible is only sentenced to a single term of life imprisonment for his actions, then all those who are accessories to that terrible murder would be exempt from punishment, despite their efforts to make the terrorist attack murder lethal and to indiscriminately murder innocent people. Those same efforts by the Defendant to safely transport the terrorist to his destination, must find appropriate expression in her sentence. In that way, the Court will also communicate that we have not forgotten any of those killed in the terrorist attack, and that every one of the murderers has received his due punishment.

Defense attorney, summing up: I will begin with the fact that the Defendant holds an Israeli identity card, lives within Israel, within the municipal jurisdiction of Jerusalem. At the beginning of the case, when representation passed to me, I argued in respect of jurisdiction, the argument being that since the Defendant lives within Israel, and holds an Israeli identity card, and the terrorist attack took place in the heart of Jerusalem, she should have been brought to trial in Israel. Although there exists parallel jurisdiction in this matter, this argument is still relevant today. Were her case to have come before the court in Jerusalem, her penalty would have ranged from 10 to 20 years. Examples of Israeli judgments are applicable to our case. Criminal File 1059/02 was heard in the Tel Aviv-Jaffa District Court, in the matter of two defendants, where one was the driver and the second the escort, who drove Darine Abu Ayisha, with one of them knowing from the outset that he was bringing a suicide terrorist into Israel. Even before speaking with his accomplice, he knew that he was bringing in a suicide terrorist, and should the attempt succeed, then he would receive in return a very large sum of money and a decoration from the [Palestinian] Authority. However, in that instance there were no fatalities, only wounded, and the young woman herself was killed. In that judgment, reference is made to instances in which there were people killed, Criminal Appeals 5114/97, *Suleiman v. State of Israel*, where the driver was tried for transporting a suicide terrorist,

-2-

[Stamp] P 5: 126 [continued]

[Line numbering in Hebrew original]

Date: 22 Iyar 5764  
May 13, 2004

File Number: 3544/02

as a result of which 13 people were killed, with many more wounded. The District Court in Nazareth sentenced him to 30 years imprisonment, but on appeal his prison sentence was reduced to 10 years to be served. In Criminal File (Tel Aviv) 1050/01, *State of Israel v. Za'id Kilani and Angelika Yosepov*, referring specifically to Defendant No. 2, she was convicted of being an accessory to a long series of illegal acts, including murder, and was sentenced to 18 years actual imprisonment; there the case was more severe since she was at the heart of the matter, it being her husband, and she knew of his actions. In a further case, Criminal File (Tel Aviv) 1083/01, *State of Israel v. Ahmed Jaber*, here too the defendant transported a suicide terrorist to the mall in Netanya, and during the journey he was aware that he was transporting a suicide terrorist, but he closed his eyes to that fact. In that case 5 people were killed, and the defendant was sentenced to a 10 year imprisonment. Regarding discrimination, if we look carefully [we will see] that there was another accomplice in this matter, Obeidah Abu Ayisha; it was she who made the connection between the Defendant and that Nasser Shawish. She was tried in the Samaria Military Court for carrying out a service by inciting to intentionally cause death; the case was tried before a single judge and she received five years actual imprisonment, but it is from there that the connection began. The same Nasser Shawish asked the Defendant on a number of occasions if she would do something for him, she firmly refused, and this is also in her testimony. We all know the "tricks" of that Nasser Shawish, and after she refused, he attempted in a different way, through girlfriends. This Defendant was born in 1975, and within Arab society, when a young woman matures and passes the age of 20, her chances of marrying decline, and he exploited this fact with other young women as well, such as Obeidah Abu Ayisha and another defendant. On the day of the incident, he called her and asked her to come urgently, she thought that it was for a date, but he brought her into that circle and she had no other option; she never was in any circle of conspiring or planning for the crime. The assistance she gave was purely technical. Even without the Defendant and the accomplice who was with her, the young suicide terrorist would have gotten in. This can be understood from the evidence submitted, and from the indictment, since he himself paid for the taxi, it was he who asked the driver to travel via unpaved roads to reach Jerusalem, and so he could have done this even without the Defendant's assistance. We would therefore argue that her assistance was purely technical. In light of the doubt that exists, we should relate to the [unclear] question of the applicability of the Penal Law in the Region. It is true that this Court has related to this in Files 3438/02, 3634/02. In a Criminal Appeal in the District Court in Jerusalem, the presiding judge was the Honorable Judge Hecht. She asked the representative of the Jerusalem District bureau of the State

[Stamp] P 5: 127

5

Attorney's Office an important question. There were four young men who were convicted in the Magistrates Court in Jerusalem of conspiracy to carry out a shooting attack, while an accomplice was tried in the Judea Military Court, for a series of acts in addition to the conspiracy. That accomplice who was tried in this Court received 6 years imprisonment, including for placement of an explosive device. Of those accomplices who came before the Magistrates Court in Jerusalem, three received 6 years and the minor received 26 months; both sides appealed, each in its own direction, and then Judge Hecht asked, "Where does the State of Israel exist, here or in the territories?" Her intention [in saying so] was that what was there, applying in the State of Israel, should be the case in the Region, and vice versa. I would ask the Court to sentence the Defendant on the basis of her having been a technical accessory only, and to take the side of the Defendant, so that she should be given a lesser penalty. This is a crime that was carried out in 2002, and in those years all of the judgments related to the same level of penalty. I would ask the Court not to deviate from what was imposed on the defendants in the judgments I submitted. This is a young woman, without a [criminal] past, and she was under pressure when she carried out this act.

Defendant, in her final statement: I would ask the Court to judge me as a person, and not as its enemy; ultimately, I made no mistake. What caused me to do this were the pressures and the circumstances.

-3-

[Stamp] P 5: 127 [continued]

[Line numbering in Hebrew original]

Date: 22 Iyar 5764  
May 13, 2004

File Number: 3544/02

## DECISION

Sentence will be given on a date to be determined.

**Given and notified this day, May 13, 2004, in public and in the presence of the parties.**

_____    _____    _____
          Judge                            Presiding Judge                     Judge

-4-

[Stamp] P 5: 128

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION, *et al.*,<br><br>　　　　　　　　Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 125-128.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 125-128.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28th day of February, 2014

_____
Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

## בית המשפט הצבאי יהודה

בפני אב"ד: סא"ל נתנאל בנישו
שופט: סרן אריה דורני
שופט: סרן זאב אפיק

התביעה הצבאית
(באמצעות סרן ולדי בורודובסקי)

נגד

הנאשמת: סנאא מחמד שחאדה   ת.ז 81021198 / שב"ס - נוכחת
(באמצעות ב"כ עו"ד אחלאם חדאד)

רשמת: סמל רוזי איבגי
מתורגמן: רס"ל כאמל זיאן

אב"ד פותח את הישיבה ומזהה את הנאשמת.

## מהלך הדיון

תובע: אין ראיות לעונש.

סניגוריה: אבקש כי עדותה של הנאשמת שכבר הוגשה, תשמש כראיה לעונש.

תובע מסכם: התביעה הצבאית מבקשת להטיל על הנאשמת עונש של 4 מאסרי עולם מצטברים, מתוכם 3 מאסרי עולם בגין כל אחד ואחד שאת חייו נטלה במעשיה, ומאסר עולם מצטבר נוסף בגין הסיוע לניסיון ליטול חיי אזרחים רבים ככל הניתן, מתוכם נפצעו 81. אכן, הנאשמת הורשעה בעבירת הסיוע לגרימת מוות, ואולם אין בכך כדי לומר כי הורשעה בסיוע בלבד. כפי שניתן להתרשם מכתב האישום, הנאשמת נטלה חלק פעיל בהוצאה לפועל של המזימה הקטלנית, וזאת החל מהשלבים המקדמיים של התוכנית ינית עת הוצע למחבל המתאבד לבצע את הפיגוע. גם במהלך הובלת המחבל, בלטה הנאשמת ביוזמתה וברצונה העז לממש את המזימה ולרצוח רבים ככל הניתן. הנאשמת אף טרחה לדאוג לכך שהמחבל המתאבד יעשה את דרכו ללב ירושלים מבלי שייעצר בדרך, והפגינה יצירתיות האופיינית לאנשים הנמצאים במדרג היוזם של העבירה כאשר קנתה פרחים למחבל, ובכך ניסתה להסתיר את זהותו. אכן, במסגרת המזימה פעלו רוצחים נוספים, אשר ייתכן שחלקם עולה על חלקה של הנאשמת. ייתכן כי אותם רוצחים נטלו חלק פעיל יותר במשימה, שעה שאיתרו את המחבל וציידו אותו בחגורת הנפץ, ואולם נראה כי תפקידה של הנאשמת בגרימת מותם של האזרחים הישראלים, היה תפקיד חשוב וחיוני. לא מדובר בסיוע טכני גרידא, אלא במעורבות עמוקה של הנאשמת, אשר דאגה כי הפיגוע יושלם עם התוצאות ההרסניות ככל הניתן. עבירת הרצח, עבירה ייחודית היא. בערכנו אותם גם על ביהמ"ש לשדר ולהעביר ערך קדושת החיים תופס מקום מרכזי. בהחלט ניתן להעלות על הדעת שיטות משפט אחרות אשר לא חורטות על דגלם את מיצוי הדין עם מי שהיה מעורב ברצח. ואולם מדינת י שראל אשר קבעה בסעיף 300 לחוק העונשין את עונש מאסר העולם כעונש היחידי הראוי לרוצח, ביטאה בכך מסר חשוב והוא, שלא יבחינו בין רוצחים

-1-

תאריך : כ"ב אייר, תשס"ד   תיק מס' : 3544/02
13 מאי, 2004

1. בהתאם לגודלם או קטנותם, וכל אחד מהם ללא קשר לנסיבותיו האישיות, למידת
2. המעורבות ברצח, ולפרמטרים האחרים ייגעל בין כותלי הכלא לשארית חייו. באזור
3. כידוע לא קיימת חפיפה מלאה בכל הנוגע לסיוע לביצוע העבירה עם מערכת המשפט
4. בישראל. נראה כי קיימים תחומים בהם הסיוע באזור תופס תחום רחב יותר וגולש
5. לתוך התחומים אשר במדינת ישראל היו נתפסים כביצוע בצוותא. נראה כי זה
6. בדיוק המקרה של הנאשמת. בהתאם לסעיף 14 לצו בדבר כללי האחריות לעבירה,
7. ייתכן כי היינו מתקשים לומר כי הנאשמת ביצעה במו ידיה יסוד מיסודות העבירה,
8. ועל כן אנוסים אנו להגדיר אותה כמסייעת לרצח. עם זאת, אם היינו בוחנים את
9. המקרה שבפנינו בהתאם לתורת המעגלים הפנימיים של הביצוע בצוותא, אין ספק
10. כי היינו מוצאים את הנאשמת בלב ליבו של המעגל הפנימי, והיינו מתייחסים אליה
11. ככזו שלא רק מסייעת לביצוע העבירה. צו בדבר כללי האחריות לעבירה כולל בחובו
12. פתרון למצב בו הנאשם מורשע בסיוע, בעוד שבדרך כלל היינו רואים אותו כמבצע
13. בצוותא ממש. אפשרות זו נמצאת בעובדה כי גם מסייע ראוי לעונש אשר היה מוטל
14. אילו היה מורשע בעבירה המושלמת. בכך שונה הדין באזור מן הדין בישראל, שם
15. בעקבות תיקון 39, ניתן להטיל על המסייע לרצח עונש אשר אינו עולה על 20 שנה.
16. ואולם ייתכן כי השוני נובע דווקא מאותו היעדר חפיפה בין הסיוע באזור לבין
17. הסיוע בישראל עליו עמדתי לעיל. ביהמ"ש לערעורים בחן את השאלה, עד כמה ניתן
18. להזקק להוראות העונשיות בישראל, שעה שבא ביהמ"ש לגזור את הדין באזור. בע/
19. איו"ש 120/02 נופל נפסק כי על אף שהעונש בישראל בגין ניסיון לרצח אינו יכול
20. לעלות על 20 שנה, מגבלה זו לא חלה באזור, וניתן להטיל על המנסה לרצוח עונש של
21. מאסר עולם. גם בהקשר של הסיוע לרצח הטיל ביהמ"ש בע/ איו"ש 64/02 עונש של
22. מאסר עולם על מסייע לרצח. גם בימ"ש נכבד זה נתן לאחרונה את הסוגיה בתיקים
23. של האחים אבו חמיד, התייחסות לכך ניתן למצוא גם בתיק עבמ"יצ 8/98. נראה כי
24. אין מחלוקת בנסיבות המקרה כי הנאשמת ראויה לעונש של מאסר עולם והמחלוקת
25. היחידה שנותרה, היא האם עונשי מאסר עולם אלה יהיו מצטברים או חופפים.
26. בנסיבות העניין, נוכח מעורבותה העמוקה של הנאשמת במימוש המזימה, יש לגזור
27. עליה מאסרי עולם מצטברים. על ביהמ"ש להעביר מסר תקיף כנגד כל אלה אשר
28. נוטלים חלק בביצוע פיגוע המוני. אם יוטל על מי ששואף לרצוח רבים ככל הניתן אך
29. עונש מאסר עולם אחד בגין מעשיהם, יהיו כל המסייעים לאותו רצח נוראי פטורים
30. על אף מאמצם להפוך את הפיגוע לקטלני יותר ולרצוח ללא הבחנה אנשים חפים
31. מפשע. אותם מאמציה של הנאשמת להוביל את המחבל בבטחה ליעדו, חייבים
32. למצוא ביטוי הולם בגזר דינה. כך ישדר גם ביהמ"ש כי לא שכחנו איש מן ההרוגים
33. בפיגוע וכל אחד מהרוצחים בעל עונשו.
34.
35. סניגורית מסכמת : אתחיל מהיותה של הנאשמת בעלת תעודת זהות ישראלית, וגרה
36. באזור ישראל, לתחום הסמכות המוניצפלית של ירושלים. בתחילת התיק, כאשר
37. עבר הייצוג אליי, טענתי בקשר לסמכות והטענה הייתה בכך כיוון שהנאשמת גרה
38. בתחום ישראל והיא בעלת תעודת זהות ישראלית, והפיגוע היה בלב ירושלים, היה
39. צריך להביא אותה לדין בישראל. האמנם קיימת סמכות מקבילה לעניין זה, אולם
40. טענה זו עומדת היום על הפרק. אם עניינה היה מגיע לבימ"ש בירושלים, עונשה היה
41. נע בין 10 ל 20 שנה. דוגמאות הפסיקה מישראל ישמות על המקרה שלנו. תיק פלילי
42. 1059/02 שנידון בביהמ"ש המחוזי בתל אביב יפו בעניינים של שני נאשמים, כאשר
43. אחד היה הנהג והשני המלווה והם הסיעו את דרין אבו עיישה ואחד מהם ידע
44. מלכתחילה כי הוא מכניס מתאבדת לאזור ישראל, אפילו לפני הדיבור עם חברו הוא
45. ידע שהוא יכניס מתאבדת ואם הניסיון הזה יצליח, אז הוא יקבל בתמורה סכום
46. כסף ענק ואות כבוד מהרשות. האמנם במקרה זה לא היו הרוגים אלא נפגעים
47. והבחורה עצמה נהרגה. באותו פסק דין יש הפניות למקרים שבהם אכן היו הרוגים,
48. ערעור פלילי 5114/97, סוליימאן נגד מדינת ישראל, שם נידון נהג שהסיע מתאבד

-2-

P 5: 126

תאריך : כ"ב אייר, תשס"ד          תיק מס' : 3544/02
13 מאי, 2004

1. וכתוצאה נהרגו 13 בני אדם, היו פצועים רבים, המחוזי בנצרת דן אותו ל 30 שנות
2. מאסר, אולם בערעור הופחת מאסרו ל 10 שנות מאסר בפועל. בתיק פלילי של תל
3. אביב 01/1050, מדינת ישראל נגד זאיד קילני ואנג'יליקה יוספוב והעיקר היא
4. הנאשמת מספר 2, אשר הורשעה בסיוע בסדרה ארוכה של פעולות אסורות בלתי
5. חוקיות ביניהם רצח, היא נידונה ל 18 שנות מאסר בפועל, שם המקרה היה יותר
6. חמור מאחר והיא הייתה בלב העניינים, מדובר בבעלה, והיא ידעה על מעשיו. בתיק
7. נוסף, תיק פלילי תל אביב 01/1083, מדינת ישראל נגד אחמד ג'אבר, גם פה הנאשם
8. הסיע מתאבד לקניון בנתניה, בנסיעה הוא ידע שהוא מוביל מתאבד אך הוא עצם
9. עיניים, שם נהרגו 5 אנשים, והנאשם נידון ל 10 שנות מאסר. בקשר להפלייה אם
10. נעיין היטב, הייתה עוד שותפה לעניין הזה שנקראה בשם עוביידה אבו עיישה, היא
11. זו אשר קישרה בין הנאשמת לבין אותו נאצר שוויש. היא נשפטה בביהמ"ש הצבאי
12. בשומרון בגין ביצוע שירות לשידול לגרימת מוות בכוונה, התיק היה בפני דן יחיד
13. והיא קיבלה 5 שנות מאסר בפועל, ומכאן מתחיל הקשר. אותו נאצר שוויש ביקש
14. מהנאשמת מספר פעמים שהיא תבצע עבורו דבר מסויים, היא סירבה בתוקף וזה גם
15. בעדות שלה. כולנו יודעים על "התעלולים" של אותו נאצר שוויש, ולאחר שהיא
16. סירבה הוא ניסה בדרך אחרת של חברות. מדובר בנאשמת שהיא ילידת 75' ואצלנו
17. בחברה הערבית, כאשר הבחורה מתבגרת ומגיעה למעלה מגיל 20, הסיכויים
18. להינשא דועכים, והוא ניצל את העובדה הזו גם אצל בחורות אחרות כמו עובידה
19. אבו עיישה ונאשמת אחרת. ביום האירוע, הוא התקשר אליה וביקש ממנה לבוא
20. דחוף, היא חשבה שזה למען פגישה, אך הוא הכניס אותה למעגל הזה ולא הייתה לה
21. שום ברירה אחרת, היא לא הייתה בשום מעגל של קשירת הקשר והתכנון של
22. העבירה. הסיוע היה טכני גרידא. גם בלעדי הנאשמת והשותפה שהייתה, הצעיר
23. המתאבד חיה נכנס גם דרך הראיות שהוגשו, גם דרך כתב האישום אפשר להבין
24. זאת, מאחר והוא שילם בעצמו למונית, הוא ביקש מהנהג לעבור בדרך לא סלולה
25. להגיע לירושלים, לכן הוא היה יכול לעשות זאת גם ללא עזרת הנאשמת, לכן אנו
26. טוענים כי זה היה סיוע טכני גרידא. לאור ההתלבטות הקיימת, יש להתייחס
27. להתלבטות הגיבוש לשאלת תחלות חוק העונשין באזור. נכון שבימ"ש זה התייחס
28. לכך בתיקים 3634/02, 3438/02. בערעור פלילי במחוזי ירושלים, אב"ד הייתה כבוד
29. השופטת הכט, שאלה את נציגות פרקליטות מחוז ירושלים שאלה תשובה, היו 4
30. צעירים שהורשעו בקשירת קשר לביצוע פיגוע ירי בביהמ"ש השלום בירושלים
31. ושותף נידון בביהמ"ש הצבאי יהודה, בגין סדרת מעשים נוספים לקשירת הקשר,
32. אותו שותף שנידון בביהמ"ש הזה קיבל 6 שנות מאסר וזה כולל הנחת מטען חבלה.
33. אותם שותפים של השלום בירושלים, שלושה קיבלו 6 שנים והקטין קיבל 26
34. חודשים, ואז היה ערעור של שני הצדדים כל אחד בכיוון שלו, אז השופטת הכט
35. שאלה, היכן מדינת ישראל קיימת, פה או בשטחים. הכוונה שלה הייתה שמה שחל
36. במדינת ישראל צריך להיות באזור והיפך. אבקש מביהמ"ש לגזור את דינה של
37. הנאשמת בכך שהייתה מסייעת במישור הטכני גרידא בלבד, ולהיות בצידה של
38. הנאשמת שתקבל עונש פחות. זוהי עבירה שבוצעה בשנת 2002 ובאותם שנים כל
39. הפסיקה התייחסה לאותה רמת ענישה. אבקש מביהמ"ש לא לחרוג ממה שהוטל על
40. הנאשמים שהגשתי בפסיקה. מדובר בבחורה צעירה ללא עבר, והיא הייתה תחת
41. לחץ כאשר ביצעה את המעשה הזה.
42.
43. נאשמת בדברה האחרון : אבקש מביהמ"ש שישפוט אותי כאדם ולא כאויב שלו,
44. בסופו של דבר לא עשיתי שום טעות. מה שגרם לי לעשות את זה, היו הלחצים
45. והנסיבות.
46.

-3-

תיק מס': 3544/02                             תאריך: כ"ב אייר, תשס"ד
                                                          13 מאי, 2004

## <u>ה ח ל ט ה</u>

1
2
גזר הדין יינתן בתאריך שייקבע.  3
4
**ניתן והודע היום, 13/05/2004, בפומבי ובמעמד הצדדים.**  5
6
7
8
_____    _____    _____  
    **שופט**                         **אב"ד**                      **שופט**     9

-4-