**Thirty fifth count**:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in early March 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, while staying in Ramallah, talked by telephone with Omar Sharif Asad Hanfar and with Hamad Abu-Juldi. The two informed the Defendant that Wa'al Ahmad Salam Jalamna (Nursi) and Ta'ar Basam Mustafa Jabarin (Taha) were interested in carrying out a suicide attack. The Defendant ordered the two suicide terrorists to be sent to him in Ramallah on the following day. On the following day, Wa'al Nursi and Ta'ar Jabarin called the Defendant and said that they were at the Jericho checkpoint on their way to Ramallah, but had forgotten their identity cards at home. Following this, the Defendant ordered the two to return to their home to retrieve their identity cards and then return to Ramallah. During the evening that day, Muhammad Abu Juldi called the Defendant and said that the two above mentioned suicide terrorists had been arrested by the Palestinian Authority.

In view of the foregoing, the plan to carry out the suicide attack was not executed.

**Thirty sixth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in early March 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. In late February – early March 2002, in Ramallah or thereabouts, the Defendant met Ghassan Mahmoud Naief Stita, who informed the Defendant that he wanted to carry out an attack. The Defendant convinced Ghassan Stita to carry out a suicide attack in Tel Aviv with the intent of causing the deaths of as many Israeli civilians as possible.

[Stamp] P 5: 30

Prosecution Case 422/02 Amended

2. Following the above mentioned planning, the Defendant contacted Muhammad Naifa, known as "Abu Rabia" and Nasser Muhammad Yusef Naji (Abu Hamid), senior military operatives in the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, with a request for assistance in effecting the planned suicide attack. The Defendant asked Nasser Abu Hamid for an explosive device with which Ghassan Stita would carry out the planned suicide attack. Nasser Abu Hamid informed the Defendant that he possessed a powerful explosive device and he was interested in delivering it for carrying out a large attack, which would be planned well. Nasser Abu Hamid also asked the Defendant to prepare a detailed plan for carrying out the attack and meeting the person who was intended to carry out the suicide attack.

3. With the mediation of the Defendant, Ghassan Stita met Nasser Abu Hamid in the Amari Refugee Camp. Ghassan Stita informed Nasser Abu Hamid that he was interested in carrying out a large suicide attack that would cause the deaths of many people. This meeting was attended by the Defendant himself, as well as Muhannad Abu Halawa and Muhammad Naeifa, known as "Abu Rabia", who also took part in planning the suicide attack that Ghassan Stita was meant to execute.

4. During the above mentioned meeting, Ghassan Stita was filmed using Nasser Abu Hamid's video camera, standing before PLO and "Al Aqsa Martyrs Brigades" flags, giving a farewell speech and taking responsibility on behalf of the "Al Aqsa Martyrs Brigades" for executing the planned suicide attack, whose words were written by the Defendant. The Defendant, Nasser Abu Hamid and their other colleagues involved in executing the attack, planned to give the cassette on which Ghassan Stita was filmed to the press, upon the execution of the attack.

5. After Ghassan Stita was filmed as stated above, he had his hair cut, shaved and dressed in new clothes, which had been bought for him, in order not to be discovered en route to executing the attack.

6. Thereafter, Nasser Abu Hamid taught Ghassan Stita how to activate the explosive device that he would carry on his person. The explosive device was composed of a fire extinguisher filled with explosives, which was hidden in a backpack. Ghassan Stita was meant to operate the explosive device using a switch that was affixed to his hand. The switch was connected to a charger in the bag using a wire that was concealed in Ghassan Stita's clothes.

7. To complete the preparations for dispatching Ghassan Stita to execute the planned suicide attack, Isa Jabarin, whose function was to drive Ghassan Stita to the attack execution site

[Stamp] P 5: 30 [continued]

Prosecution Case 422/02 Amended

in Tel Aviv, arrived. Isa Jabarin was recruited to take part in executing the attack by Hamad Naeifa, known as "Abu Rabia". Isa Jabarin came to the place where the Defendant and the other persons involved in planning the attack were in a Mazda type vehicle with Palestinian license plates. Nasser Abu Hamid ordered the replacement of the license plates to Israeli license plates and Muhannad Abu Halawa did so.

8. Ghassan Stita, equipped with the bag containing the explosive device, got into the Mazda vehicle that Isa Jabarin was driving and sat on the back seat, while Muhannad Abu Halawa sat in the front seat. The Defendant, Nasser Abu Hamid and Muhammad Naeifa "Abu Rabia" traveled in Nasser Abu Hamid's vehicle as an escort vehicle. The two vehicles departed on their way to executing the planned suicide attack. The plan was that the vehicles would drive through Rafat-Atarot and from there the vehicle in which Ghassan Stita was sitting would continue to Tel Aviv, where he was meant to carry out the planned suicide attack with the intent of causing the deaths of as many people as possible.

9. When the vehicles arrived at a checkpoint of Force 17 of the Palestinian Authority, Nasser Abu Hamid and Muhannad Abu Halawa conducted an inquiry with the Palestinian policemen at the checkpoint. The inquiry indicated that two IDF jeeps had passed by. At that time, there was also the noise of helicopters in the air. These raised the suspicion of Nasser Abu Hamid, who decided to defer the commission of the attack. The Defendant and his other colleagues returned to Amari Refugee Camp.

10. On the following day, Ghassan Stita departed again to carry out the planned suicide attack. Nasser Abu Hamid fitted the bag with the explosive device on Ghassan Stita's back. The latter drove in the Mazda vehicle with Isa Jabarin. Another vehicle that departed was of the Ford Transit type, in which Muhannad Abu Halawa was traveling. The function of the additional vehicle was to drive ahead of the first to check the way.

11. Upon approaching Rafat, the two above mentioned vehicles encountered an IDF checkpoint and decided to return to Amari Refugee Camp.

**Thirty seventh count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 5: 31

Prosecution Case 422/02 Amended

**Details of the offense**: The above mentioned Defendant, in the Area, in early March 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. On March 5, 2002, Muhannad Abu Halawa was killed. The Defendant met Nasser Muhammad Yusef Naji (Abu Hamid) and asked him to carry out a revenge attack with the intent of causing the deaths of as many Israeli civilians as possible. Nasser Abu Hamid asked the Defendant to wait until after Abu Halawa's funeral.

2. On March 6, 2002, after Muhannad Abu Halawa's funeral, the Defendant met Nasser Abu Hamid and Ghassan Mahmoud Naief Stita at the bus stop in Ramallah. The Defendant informed Nasser Abu Hamid that an attack must be carried out as quickly as possible and that he had decided to execute the suicide attack at a different place to the one which was planned as elaborated in the previous count of indictment. Following the above mentioned instruction of the Defendant, Ghassan Stita traveled with Nasser Abu Hamid to the Amari Refugee Camp, where the explosive device described in the previous count of indictment was hidden. Nasser Abu Hamid fitted the above mentioned explosive device on the back of Ghassan Stita and the two returned to Ramallah and again met the Defendant and Muhammad Naifa, known as "Abu Rabia".

3. Nasser Abu Hamid demonstrated to the Defendant how to fix the explosive device to the back of Ghassan Stita and traveled back to his hiding place.

4. From there, Ghassan Stita departed towards Jerusalem to carry out the planned suicide attack with the intent of causing the deaths of as many people as possible, carrying the explosive device in a pack on his back.

5. Near the Kalandia checkpoint, Ghassan Stita noticed IDF jeeps and IDF soldiers, who suspected him. Ghassan Stita was fearful, threw away the bag with the explosive device and fled the site towards Ramallah.

[Stamp] P 5: 31 [continued]

Prosecution Case 422/02 Amended

**Thirty eighth count**: **(detailed incident 580/02 Shafat)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, in late October 2000 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early March 2002, in Ramallah or thereabouts, talked to Majdi Abu Alwafa, who stated that he had a person who was ready to carry out a suicide attack. The Defendant asked to talk with the above mentioned person.

2. On the following day, in Ramallah, the Defendant met Douram Azat Muhammad Said Zakarna, who stated that he was the person whom Majd Abu Alwafa talked about and that he was willing to carry out a suicide attack.

3. The Defendant met Nasser Jamal Musa Shawish and said that there was a person who wanted to carry out a suicide attack inside the State of Israel with the intent of causing the deaths of as many people as possible.

4. The Defendant asked Nasser Shawish to help in photographing the suicide terrorist before the departure of the latter for carrying out the planned suicide attack. Nasser Shawish asked to photograph the suicide terrorist in the home of his brother, Khaled Shawish, which was in Bitunia.

5. On March 9, 2002, the Defendant and Nasser Shawish came to the said apartment in Bitunia. The suicide terrorist, Douram Azat Muhammad Said Zakarna, and photographer Ahmad A'asi and another female journalist also came to the house. During the photographing of the suicide terrorist, the brother of the Defendant, Samer Aweis, was also present.

6. Thereafter, Samer Aweis traveled with Douram Zakarna to the Defendant's home in Amari Refugee Camp. On their way to this place, a helicopter fired a missile at the vehicle. Douram Zakarna successfully escaped from this vehicle, whereas Samer Aweis was killed as a result of the impact of the above mentioned missile.

[Stamp] P 5: 32

Prosecution Case 422/02 Amended

7. Douram Zakarna received, in accordance with a plan that was made earlier between the Defendant and his colleagues, from Muhammad Naifa, known as "Abu Rabia", a Kalashnikov assault rifle, ammunition and two hand grenades, and on March 10, 2002, he left Ramallah to carry out the planned suicide attack with the aim of causing the deaths of as many people as possible.

8. On March 10, 2002, at about 2:30 p.m., the above mentioned suicide terrorist (Douram Zakarna), attempted to penetrate the State of Israel while armed with a Kalashnikov assault rifle, magazines filled with cartridges and two hand grenades, for the purpose of carrying out the planned suicide attack and intentionally cause the deaths of as many citizens as possible. Douram Zakarna was brought to the A-Ram checkpoint by Isa Muhammad Mahmoud Jabarin, who had been recruited for this task by the head of the general intelligence of the Palestinian Authority – Tawfik Tirawi.

9. At the said date and time, at A-Ram checkpoint or thereabouts, the above mentioned suicide terrorist, Douram Zakarna, was killed by the Israeli security forces during his attempt to penetrate into the State of Israel as stated above.

**Thirty ninth count**: **(Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002, or at around that time, intentionally caused the death of another person, as follows:

1. During the stay of the Defendant in Ramallah in early 2002, the Defendant met Nasser Jamal Musa Shawish, a senior military operative in the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah.

2. The Defendant learned from Nasser Shawish that Muhammad Hashaika, whom Nasser Shawish had attempted to send to execute a suicide bombing in the territory of the State of Israel, was in Ramallah.

[Stamp] P 5: 32 [continued]

Prosecution Case 422/02 Amended

3. In early March 2002, Muhammad Hashaika was remanded in the "Mukta'ah" complex of the Palestinian Authority in Ramallah. Following the request of the Defendant, who is the general intelligence of the Palestinian Authority [sic], Muhammad Hashaika was released from the said remand.

4. After his release, Muhammad Hashaika contacted the Defendant and Nasser Shawish, and announced his wish to carry out a suicide attack. The Defendant and Nasser Shawish agreed to prepare Muhammad Hashaika and equip him with all measures required to carry out the suicide attack inside the State of Israel. Nasser Shawish informed the Defendant that the planned attack

[Stamp] P 5: 32 [continued]

Prosecution Case 422/02 Amended

was a revenge attack for the death of the brother of the Defendant, Samer Aweis, who was killed on March 9, 2002.

5. The Defendant promised to Nasser Shawish that he would act to have the latter released from custody in the Palestinian Authority if he would be arrested following the execution of the planned attack.

6. Muhammad Hashaika told the Defendant and Nasser Shawish that he had been contacted by Iad Alshamah, an officer in the intelligence of the Palestinian Authority in Ramallah, and suggested that he send Muhammad Hashaika to carry out a suicide attack. The Defendant and Nasser Shawish convinced Muhammad Hashaika not to believe the Palestinian Authority intelligence officer out of fear that he would hand him over to Israel. The Defendant and Nasser Shawish convinced Muhammad Hashaika that they would take care of everything to send him to carry out a suicide attack inside the State of Israel.

7. Nasser Shawish found a rented apartment in Ramallah, in which he and his colleagues were to have prepared the planned suicide attack.

8. Nasser Shawish led the Defendant and Muhammad Hashaika to the said apartment.

9. At the request of the Defendant, Nasser Shawish recruited Sigoud Shuli, a resident of Asira Shmalia, to carry out the above mentioned suicide attack, after the Defendant and Nasser Shawish decided that there would be two suicide terrorists, a man and a woman, who would carry out a double suicide attack, with the intent of causing the death of as many Israeli civilians as possible. Sigoud Shuli also arrived at the above mentioned apartment.

10. In the above mentioned apartment, at the request of Nasser Shawish, photographer Ahmad Aasi using a video camera, filmed Muhammad Hashaika and Sigoud Shuli before carrying out the planned suicide attack.

11. The Defendant guided Muhammad Hashaika to detonate his charge and cause the deaths of as many Israeli civilians as possible. The Defendant clarified to Muhammad Hashaika that if he would be arrested, he would have to detonate his charge on the spot and that the main thing was that he would kill a Jew – at least one, but he would nonetheless kill.

[Stamp] P 5: 33

Prosecution Case 422/02 Amended

12. At this stage, Nasser Shawish decided that he did not want Sigoud Shuli to participate in the commission of the suicide attack, and informed the latter's family of the intentions of their daughter. As a result, Sigoud Shuli returned to the Nablus area, from which she fled to Jordan.

13. The Defendant contacted the office of the head of the general intelligence in the Palestinian Authority, Tawfik Tirawi, and brought explosives from there. The Defendant used these explosives to make an explosive device for carrying out the planned suicide attack.

14. Thereafter, the Defendant and Nasser Shawish made the explosive belt.

15. The Defendant recruited Kahira Said Sa'adi for conveying Muhammad Hashaika into the State of Israel for carrying out the planned suicide attack.

16. Nasser Shawish recruited Sana'a Muhammad Shahada for conveying Muhammad Hashaika into the State of Israel for carrying out the planned suicide attack.

17. On March 20, 2002, Nasser Shawish met Marwan Barghouti, the head of the "Tanzim" of the Fatah in the Area in Ramallah. Nasser Shawish informed Marwan Barghouti that the Defendant was about to send a suicide terrorist for carrying out a suicide attack inside the State of Israel. Marwan Barghouti asked to know whether the Defendant and Nasser Shawish needed anything for executing the planned attack. Despite Nasser Shawish giving a negative answer to this question, Marwan Barghouti gave the latter a sum of 600 U.S. dollars.

18. On March 21, 2002, the Defendant met Nasser Shawish and Sana'a Shahada. The Defendant explained to Sana'a Shahada that she would have to transport the suicide terrorist into Jerusalem for him to carry out the planned suicide bombing, because she was closely familiar with Jerusalem and the roads leading to it.

19. That day, the Defendant, Nasser Shawish and Muhammad Hashaika visited the office of Hassin A-Sheikh, the Secretary General of the Fatah Organization in the Area. There, the Defendant received from Hassin A-Sheikh money and two hand grenades for executing the planned attack.

20. The Defendant and his above mentioned colleagues purchased, using this money, clothes for Muhammad Hashaika, with which the latter carried out the suicide attack, which is described below.

[Stamp] P 5: 33 [continued]

Prosecution Case 422/02 Amended

21. Thereafter, the Defendant and his above mentioned colleagues arrived at an apartment in Ramallah, in which there were the above mentioned Muhammad Hashaika, Haj Khader and Musid Almasri. The Defendant and Musid Almasri prepared Muhammad Hashaika before executing the planned suicide attack and fitted the above mentioned explosive belt to him.

22. Thereafter, the Defendant contacted Kahira Sa'adi and asked the latter to help convey the suicide terrorist to Jerusalem.

23. After some time, Kahira Sa'adi reached the Defendant and his above mentioned colleagues.

24. At noontime, on March 21, 2002, Nasser Shawish drove Muhammad Hashaika, who was carrying the above mentioned explosive belt on his person, and Sana'a Shahada and Kahira Sa'adi, who accompanied the above mentioned suicide terrorist, from Ramallah to the Kalandia checkpoint.

25. Thereafter, after he parted from Muhammad Hashaika with a kiss, Nasser Shawish returned to Ramallah.

[Stamp] P 5: 33 [continued]

Prosecution Case 422/02 Amended

38

26. Kahira Sa'adi and Sana'a Shahada transported Muhammad Hashaika, who was carrying the above mentioned explosive belt on his body, to King George Street in Jerusalem. The two chose this place because it was crowded in the afternoon, so the two decided that it was "suitable" for carrying out the planned suicide attack.

27. After Sana'a Shahada and Kahira Sa'adi left Muhammad Hashaika in King George Street, Muhammad Hashaika arrived at a zebra crossing that was near the Aroma Café and near the junction of King George and Hahistadrut Streets.

28. At the said site, at about 4:20 p.m. that day, Muhammad Hashaika activated the explosive device, which he carried on his body, while inside the crowd, with the aim of causing the deaths of as many people as possible.

29. After the Defendant and his colleagues learned of the commission of the planned suicide attack, Nasser Shawish forwarded a video cassette with the filmed "will" of Muhammad Hashaika to journalist Hamad A'asi.

30. Thereafter, the Defendant and Nasser Shawish contacted Hassin A-Sheikh, the secretary general of the Fatah organization in the Area, and drafted an announcement, in which the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, took responsibility for executing the bombing attack described above. After composing the announcement, Nasser Shawish approached the offices of the ANN news company and was filmed there reading the above mentioned announcement of taking responsibility for the attack described above.

31. By his acts described above, the above mentioned Defendant, at the said time, caused the intentional death of **the late First Sergeant Gadi Shemesh**, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described above.

**Fortieth count**: (Detailed Incident 2069/02, Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, caused the intentional death of another person, as follows:

[Stamp] P 5: 34

Prosecution Case 422/02 Amended

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused the intentional death of **the late Tzipora Shemesh**, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment. **The late Tzipora Shemesh was four months pregnant at the time of her death**.

**Forty first count**: Detailed Incident (2069/02, Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused the intentional death of **the late Yitzhak Cohen**, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment.

[Stamp] P 5: 34 [continued]

Prosecution Case 422/02 Amended

**Forty second count**: **(Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, attempted to cause the intentional death of as many citizens as possible. As a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment, **81 human beings** were injured.

**Forty third count**: **(Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Malicious damage to property, an offense pursuant to Section 53C of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, destroyed or damaged property maliciously and unlawfully, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused heavy damage to buildings and businesses near the said place and to many vehicles, which were near the place described in the thirty ninth count of the indictment, at which Muhammad Hashaika activated the explosive device, as described in the thirty ninth count of the indictment.

**Forty fourth count**:

**Nature of the offense**: Manufacturing a bomb, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 5: 35

Prosecution Case 422/02 Amended

41

**Details of the offense**: The above mentioned Defendant, in the Area, in mid-March 2002 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts met Amar Mardi, who introduced Louis Ouda to the Defendant. Amar Mardi told the Defendant that Louis Ouda could bring the Defendant chemicals so that the Defendant could make explosive devices out of them. Louis Ouda asked the Defendant to manufacture explosive devices for him so that the latter could carry out an attack against and IDF jeep using them. The Defendant agreed to the said request.

After two days, in Ramallah or thereabouts, the Defendant manufactured an explosive device using an iron pipe and chemicals that Louis Ouda had brought. Louis Ouda explained to the Defendant that using the above mentioned explosive device, he would carry out an attack against an IDF jeep on the Ramallah bypass road.

[Stamp] P 5: 35 [continued]

Prosecution Case 422/02 Amended