**פרט חמישה-עשר:**

**מהות העבירה:** ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש אוקטובר 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בג'נין או בסמוך לכך, נפגש עם מחמד אבו-טול. מחמד אבו-טול מסר לנאשם כי הוא נמצא בקשר עם חוליה מצור חנא, אשר חבריה מבקשים לבצע פיגוע תופת בתוך מדינת ישראל ולמטרה זו הם זקוקים למטען חבלה. הנאשם אף נפגש בג'נין עם שני חברי החוליה "הישראלית" הנ"ל.
הנאשם הסכים לסייע בנושא וייצר עבור החוליה הנ"ל, לצורך ביצוע הפיגוע המתוכנן בתוך מדינת ישראל, מטען חבלה במשקל של 15 ק"ג. הנאשם מסר את מטען החבלה הנ"ל לידי מחמד אבו-טול שהגיע ביחד עם אחד מחברי החוליה "הישראלית". הנאשם אף הסביר לאותו אדם איך מפעילים את מטען החבלה הנ"ל.
לאחר מכן, מחמד אבו-טול דיווח לנאשם כי החוליה הנ"ל הניחה את מטען החבלה, אשר אותו ייצר הנאשם, בצומת גולני בתוך מדינת ישראל במטרה לבצע פיגוע תופת, מטען החבלה התפוצץ, אך איש לא נפגע.

**פרט שישה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השנייה של שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל במועד האמור, ביחד עם עכרמה סטיטי החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף ג'נין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחברו הנ"ל הגיעו לכביש עוקף ג'נין, כאשר הם חמושים במקלע 250. הנאשם וחבריו הבחינו בג'יפ של צה"ל אשר נסע בכביש עוקף ג'נין. הנאשם וחברו הנ"ל פתחו באש אוטומטית לעבר ג'יפ צה"ל הנ"ל בכוונה לגרום למותם של חיילי צה"ל שנסעו בג'יפ הנ"ל. מיד לאחר ביצוע פיגוע הירי הנ"ל, הנאשם וחברו נמלטו מהמקום.

**פרט שבעה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש אוקטובר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל במועד האמור, בג'נין או בסמוך לכך, נפגש עם חג' עלי צפורי ועם מאג'ד אבו שראר. במהלך הפגישה האמורה, מאג'ד אבו שראר מסר כי הוא מכיר היטב את היישוב כדים והציע כי הנאשם ועלי צפורי יביאו לו שני אנשים כדי שיבצעו ביחד עמו פיגוע גדול בתוך היישוב כדים בכוונה לגרום למותם של אנשים רבים ככל הניתן.
2. הנאשם ועלי צפורי הסכימו להצעה האמורה. הנאשם ועלי צפורי פנו אל סאמר ראתב יונס עוויס, מוצטפא אבו-סיריה ורשיד וגייסו אותם לביצוע הפיגוע המתוכנן בתוך היישוב כדים, כאשר הנאשם ועלי צפורי מסבירים כי מדובר בפיגוע התאבדות.
3. על-פי התכנון של הנאשם ושל עלי צפורי, שלושת האנשים הנ"ל היו אמורים להיכנס אל תוך היישוב כדים, לרצוח את חיילי צה"ל השומרים על היישוב, להיכנס אל תוך אחד בתי היישוב, לרצוח את כל תושבי הבית. תוכנן כי לאחר מכן, המפגעים יסתגרו בתוך הבית וינהלו קרב עם כוחות צה"ל עד שימצאו את מותם.
4. הנאשם ועלי צפורי צילמו את שלושת האנשים הנ"ל באמצעות מצלמת וידאו לקראת ביצוע הפיגוע המתוכנן.

5. לאחר מכן, על-פי הוראתם של הנאשם ושל עלי צפורי, מאג׳ד אבו שראר אסף את שלושת האנשים הנ״ל ויצא עמם במונית לכיוון היישוב כדים לצורך ביצוע הפיגוע המתוכנן.
6. לאחר שעתיים האנשים הנ״ל חזרו ודיווחו לנאשם ולעלי צפורי כי לא הצליחו לחדור אל תוך היישוב כדים עקב נוכחותם של טנקים של צה״ל במקום.
7. יום למחרת, הנאשם ועלי צפורי מסרו למאג׳ד אבו שראר מצלמת וידאו על מנת שיצלם את היישוב כדים. לאחר שמאג׳ד אבו שראר עשה זאת, הנאשם ועלי צפורי צפו בקלטת הוידאו ותכננו את הפיגוע שוב.
8. למחרת היום, הנאשם גייס לצורך ביצוע הפיגוע ביישוב כדים את איאד נדיר ערסאן עומר ואת ואאל אחמד סאלם ג׳לאמנה. הנאשם ועלי צפורי צילמו את שני האנשים הנ״ל באמצעות מצלמת וידאו לקראת ביצוע הפיגוע המתוכנן.
9. יום למחרת, על-פי הוראת הנאשם ועלי צפורי, מאג׳ד אבו שראר אסף את שני האנשים הנ״ל וכן את רשיד, האמור לעיל, כשהם חמושים בכלי הנשק אשר נמסרו להם לצורך ביצוע הפיגוע על-ידי הנאשם ועלי צפורי. לאחר מספר שעות האנשים הנ״ל חזרו ודיווחו כי לא ביצעו את הפיגוע המתוכנן מכיוון שפחדו למות עוד בכניסה ליישוב כדים וזאת עקב נוכחות כוחות גדולים של צה״ל במקום.

**<u>פרט שמונה-עשר:</u>**

**<u>מהות העבירה:</u>** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ״ל, באיזור, בתחילת חודש נובמבר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל במועד האמור, במחנה הפליטים ג׳נין או בסמוך לכך, ביחד עם עכרמה סטיטי, ירה לעבר חיילי צה״ל שנכנסו למחנה הפליטים האמור, וזאת בכוונה לגרום למותם של חיילי צה״ל. הנאשם ירה ברוס״ר אם-16 ואילו עכרמה סטיטי ירה במקלע 250.

**<u>פרט תשעה-עשר:</u> (פ.א. 4753/01 עפולה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
1. בתחילת חודש נובמבר 2001, בג׳נין או בסמוך לכך, הנאשם נפגש עם עלי סלימאן צפורי. הנאשם ועלי צפורי החליטו להוציא לפועל פיגוע בתוך מדינת ישראל בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר וזאת כנקמה על מותם שלך מג׳די ג׳רדאת ועכרמה סטיטי.
2. עלי צפורי מסר לנאשם כי לו שני אנשים המוכנים לבצע פיגוע התאבדות בעפולה במדינת ישראל, כאשר האנשים הנ״ל יירו לעבר האזרחים הישראליים בעפולה במטרה לגרום למותם של אנשים רבים ככל האפשר וימשיכו לירות עד שייהרגו מאש כוחות הביטחון הישראליים.
3. הנאשם הסכים לבקשתו של עלי צפורי לספק לשני המחבלים המתאבדים הנ״ל כלי נשק לצורך ביצוע פיגוע ההתאבדות המתוכנן.
4. בעקבות ההסכמה הנ״ל, הנאשם מסר לידי עלי צפורי שני רוס״רי קלצ׳ניקוב לצורך ההוצאה לפועל של הפיגוע המתוכנן. את אחד מכלי הנשק הנ״ל הנאשם קיבל במסגרת עבודתו במודיעין הכללי של הרשות הפלסטינית, ואילו את כלי הנשק השני הנאשם רכש לצורך ההוצאה לפועל של הפיגוע המתוכנן תמורת 8,000 ש״ח מידי פואד בשאראת, שעובד בכוח 17 של הרשות הפלסטינית.
5. הנאשם ועלי צפורי צילמו באמצעות מצלמת וידאו את מוצטפא אבו-סיריה ואת ע/כרים עומר אחמד (אבו-נעסה) לקראת ביצוע פיגוע ההתאבדות המתוכנן. לאחר הצילום הנאשם נתן לכל אחד מהאנשים הנ״ל סכום של 500 ש״ח על שירכשו בגדים חדשים לצורך ביצוע פיגוע ההתאבדות המתוכנן.
6. יום למחרת, הנאשם נפגש עם מואייד עלי מחמד ג׳רדאת וביקש מהאחרון ״לפתוח דרך״ מג׳נין לעפולה עבור שני המחבלים המתאבדים הנ״ל על מנת שיוכלו להגיע לעפולה מבלי

P 5: 23

להיתפס על-ידי כוחות הביטחון הישראליים ולבצע שם את הפיגוע המתוכנן. מואייד הסכים לבקשת הנאשם.

7. לצורך הסעת שני המחבלים המתאבדים לעפולה, הנאשם ועלי צפורי רכשו רכב סובארו תמורת 4,500 ש"ח והניחו בתוך הרכב הנ"ל את שני רוס"רי קלצ'ניקוב המתוארים לעיל עם 8 מחסניות מלאות בכדורים.

8. ביום 27.11.01, מואייד ג'רדאת, בהתאם להוראת הנאשם, ביחד עם מחמד ג'לאממנה וחסאן ראתב יונס עוויס, ליווה את מוצטפא אבו-סיריה ואת ע/כרים עומר אחמד (אבו-נעסה), אשר היו חמושים ברוס"רי קלצ'ניקוב, אותם סיפק הנאשם כאמור לעיל, מג'נין עד למקום הקרוב לשטחה של מדינת ישראל.

9. מהמקום האמור לעיל, מוצטפא אבו-סיריה וע/כרים אבו-נעסה המשיכו בנסיעתם ברכב סובארו לכיוון עפולה לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.

10. בסמוך לשעה 11:30, ביום 27.11.01 או במועד הסמוך לכך, מוצטפא אבו-סיריה וע/כרים אבו-נעסה הגיעו לאיזור התחנה המרכזית בעפולה. שם ירדו השניים הנ"ל מרכבם ופתחו באש ברוס"רי קלצ'ניקוב, אשר סופקו להם למטרה זו על-ידי הנאשם, לעבר האנשים שהיו במקום וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. מוצטפא אבו-סיריה וע/כרים אבו-נעסה המשיכו במסע הירי באיזור התחנה המרכזית בעפולה עד אשר נהרגו על-ידי אנשי כוחות הביטחון הישראליים שהגיעו למקום.

12. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותה של **מיכל מור ז"ל**, אשר נהרגה כתוצאה מפגיעת הכדורים שנורו על-ידי מוצטפא אבו-סיריה וע/כרים אבו-נעסה מכלי הנשק שסופקו למטרה זו על-ידי הנאשם.

13. לאחר שלנאשם ולעלי צפורי נודע על תוצאות הפיגוע המתואר לעיל, עלי צפורי התקשר אל רמדאן שלח, ראש ארגון הג'יהאד האסלאמי הפלסטיני, והודיע לאחרון כי הפיגוע בוצע תוך שיתוף פעולה בין "גדודי חללי אלאקצא" לבין הג'יהאד האסלאמי הפלסטיני.

**<u>פרט עשרים:</u> (פ.א. 4753/01 עפולה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במעשיו המתוארים בפרט האישום התשעה-עשר, גרם בכוונה למותו של **נועם גוזובסקי ז"ל**, אשר נהרג בסמוך לתחנה המרכזית בעפולה כתוצאה מפגיעת הכדורים שנורו על-ידי מוצטפא אבו-סיריה וע/כרים עומר אחמד (אבו-נעסה) מכלי הנשק שסופקו למטרה זו על-ידי הנאשם.

**<u>פרט עשרים ואחד:</u> (פ.א. 4753/01 עפולה)**

**<u>מהות העבירה:</u>** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום התשעה-עשר, במעשיו המתוארים בפרט האישום התשעה-עשר, ניסה לגרום למותם של אנשים רבים ככל האפשר.
כתוצאה מפגיעות הכדורים שנורו על-ידי מוצטפא אבו-סיריה וע/כרים עומר אחמד (אבו-נעסה) מכלי הנשק שסופקו למטרה זו על-ידי הנאשם, כפי שתואר בפרט האישום התשעה-עשר, נפצעו **עשרה** אנשים באורח קשה **ועשרות** אנשים נוספים נפצעו באורח קל עד בינוני.

**פרט עשרים ושניים:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל במועד האמור, ביחד עם עלאא סבאר, החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף ג'נין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחבריו הנ"ל הגיעו לכביש עוקף ג'נין, כאשר הנאשם חמוש ברוס"ר קלצ'ניקוב וחברו חמוש ברוס"ר אם-16. הנאשם וחברו הבחינו ברכב ישראלי מסוג רנו אקספרס בצבע לבן אשר נסע בכביש עוקף ג'נין לכיוון היישוב כדים. הנאשם וחברו הנ"ל פתחו באש אוטומטית לעבר הרכב הנ"ל ממרחק של כ-100 מטר בכוונה לגרום למותם של נוסעי הרכב. מספר קליעים שנורו על-ידי הנאשם וחברו פגעו ברכב הנ"ל ורק בנס איש לא נפגע. מיד לאחר ביצוע פיגוע הירי הנ"ל, הנאשם וחברו נמלטו מהמקום.

**פרט עשרים ושלשה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, כיומיים לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל במועד האמור, ביחד עם עלאא סבאר, החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף ג'נין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחברו הנ"ל הגיעו לכביש עוקף ג'נין, כאשר הנאשם חמוש ברוס"ר אם-16 וכל אחד מחבריו חמוש ברוס"ר אם-16. הנאשם וחברו הבחינו ברכב ישראלי אשר נסע בכביש עוקף ג'נין. הנאשם וחברו הנ"ל פתחו באש אוטומטית לעבר הרכב הנ"ל בכוונה לגרום למותם של נוסעי הרכב. מיד לאחר ביצוע פיגוע הירי הנ"ל, הנאשם וחברו נמלטו מהמקום.

**פרט עשרים וארבעה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש נובמבר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל במועד האמור, ביחד עם מעתצם סבאר, יוסף רשדי אלקייסי ומאהר אלנובאני, החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף ג'נין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחבריו הנ"ל הגיעו ברכבו של הנאשם לכביש עוקף ג'נין, כאשר הם חמושים בכלי נשק אוטומטיים. הנאשם וחבריו הבחינו בחיילי צה"ל העומדים ליד הג'יפ של צה"ל באחד הצמתים. הנאשם וחבריו הנ"ל פתחו באש אוטומטית לעבר חיילי צה"ל הנ"ל בכוונה לגרום למותם. לאחר שחיילי צה"ל הנ"ל השיבו באש לעבר הנאשם וחבריו, הנאשם וחבריו נמלטו מהמקום.

P 5: 25

**פרט עשרים וחמישה:**

**מהות העבירה:** ניסיון לייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש דצמבר 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בג'נין או בסמוך לכך, ניסה לייצר חומר נפץ מחומרים כימיים, אשר אותם רכש מידי זיד יונס. בסופו של הדבר הנאשם לא הצליח לייצר חומר נפץ. הנאשם תכנן לעשות שימוש בחומר הנפץ, אותו ניסה לייצר, נגד כוחות צה"ל אם ינסו להיכנס למחנה הפליטים ג'נין.

**פרט עשרים ושישה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, בג'נין או בסמוך לכך, במספר בר של הזדמנויות שונות, נפגש עם פעילים שונים של "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, וביניהם מג'די סעוד אל-ווּפא, מחמד אבו-טול.
הנאשם מסר לאנשים הנ"ל מספר רב של כלי נשק מסוגים שונים, תחמושת, מטעני חבלה מוכנים, חומרים כימיים לצורך ייצור מטעני חבלה וכן מכשירי טלפון סלולריים על מנת שישמשו כמנגנוני הפעלה של מטעני החבלה.
האנשים הנ"ל דיווחו לנאשם אודות הפיגועים שביצעו באמצעות כלי הנשק, התחמושת ומטעני החבלה שקיבלו מהנאשם.

**פרט עשרים ושבעה:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בג'נין או בסמוך לכך, במספר הזדמנויות שונות, נפגש עם פעילים שונים של "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, וביניהם מג'די סעוד אל-ווּפא, מחמד אבו-טול.
הנאשם לימד את הפעילים הנ"ל לייצר חומרי נפץ מסוגים שונים, מטעני החבלה ומנגנוני הפעלה אלחוטיים למטעני החבלה ממכשירי טלפון סלולריים.

**פרט עשרים ושמונה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מחמד נאיפה, המכונה "אבו רביע", מהנד אבו-חלאווה ופאוזי מראר, פעילים צבאיים בכירים בארגון "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, לבצע פיגוע ירי בעטרות, וזאת בכוונה לגרום למותם של אזרחים ישראליים. תחילה, הנאשם וחבריו הנ"ל תכננו לבצע את הפיגוע האמור באחד הכבישים העוקפים בסמוך לרמאללה, אך לאחר ביצוע מספר תצפיות, אשר בהן השתתף הנאשם, הוחלט כי עקב נוכחות כוחות גדולים של צה"ל באיזור, הפיגוע המתוכנן יבוצע בעטרות.
בסופו של הדבר מהנד אבו חלאווה ופאוזי מראר יצאו לביצוע הפיגוע המתוכנן ללא הנאשם כי לנאשם לא היה מקום ברכב שבו האנשים הנ"ל יצאו לביצוע הפיגוע.

**פרט עשרים ותשעה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002, מספר ימים לאחר האירוע המתואר בפרט האישום הקודם, או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מהנד אבו-חלאווה, פעיל צבאי בכיר בארגון "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, לבצע פיגוע ירי בעטרות, וזאת בכוונה לגרום למותם של אזרחים ישראליים.

**פרט שלושים:** **(פ.א. 412/02 בנימין)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 27.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. נאצר ג'מאל מוסא שוויש, בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, נפגש בשכם עם דארין אבו-עיישה (להלן: דארין), אשר הביעה בפניו את רצונה לבצע פיגוע התאבדות. בחודש פברואר 2002, ברמאללה, נאצר שוויש נפגש שוב עם דארין, אשר שוב ביקשה לבצע פיגוע התאבדות על מנת לגרום למותם של אזרחים ישראליים רבים ככל הניתן.
2. נאצר שוויש פנה אל הנאשם וכן אל מהנד אבו חלאווה ומחמד נאיפה ודיווח לנ"ל כי ישנה בחורה המבקשת לבצע פיגוע התאבדות. הנאשם מסר כי הוא מסכים לשלוח את הבחורה האמורה לביצוע פיגוע התאבדות וכי הוא יכין מטען חבלה לצורך כך. הנאשם הודיע לנאצר שוויש כי עליו לצלם את הבחורה לפני שתצא לביצוע פיגוע ההתאבדות המתוכנן.
3. נאצר שוויש הביא את דארין לדירתו של אחיו, חאלד שוויש, הנמצאת בביתוניא. נאצר שוויש הביא לאותה הדירה צלם בשם אחמד עאצי וביחד עם האחרון צילם את דארין לקראת ביצוע פיגוע ההתאבדות המתוכנן. במהלך הצילום, דארין קראה צוואה.
4. יום למחרת, 27.02.02, הגיעו לדירה הנ"ל הנאשם ביחד עם מהנד אבו-חלאווה ומחמד נאיפה (אבו-רביע). הנאשם וחבריו הנ"ל הביאו עמם חגורה, שבה היה מטען חבלה, לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.
5. מכיוון שדארין סירבה לכך שגבר ילביש עליה את חגורת הנפץ, לילא מחמד צאלח בוכארי, על-פי בקשתו של נאצר שוויש, שהוא נשוי לאחותה הגדולה, הלבישה על גופה של דארין את מטען החבלה הנ"ל. בעת שלילא בוכארי הלבישה את חגורת הנפץ על גופה של דארין, היא הבחינה כי אחת הכתפיות של חגורת הנפץ רופפת וחיזקה אותה באמצעות סיכה.

6. הנאשם וחבריו הנ"ל תכננו כי דארין תגיע אל תחנת משטרת ישראל ביפו ושם תפוצץ את מטען הנפץ שהיא נושאת על גופה ובכך תגרום למותם של אזרחים ישראליים רבים ככל האפשר.
7. פאוזי מראר גייס לצורך העברתה של דארין אל תוך מדינת ישראל על מנת שתבצע שם את פיגוע ההתאבדות המתוכנן את מוסא סרי חסונה ואחפז ע/פתח מקבל.
8. בשעות הערב של אותו היום, נאצר שוויש הגיע ביחד עם לילא בוכארי ודארין, אשר נשאה על גופה את מטען החבלה הנ"ל, לבית החולים "אבו-ריא" ברמאללה. שם הם נפגשו עם הנאשם, מחמד אבו רביע, פאוזי מראר ומהנד אבו-חלאווה.
9. משם, הנאשם ביחד עם האנשים הנ"ל העביר את דארין למחסום א-ראם. במחסום א-ראם, דארין עלתה לרכב סובארו כחול, מ.ר. 7797787, של מוסא סרי חסונה ואחפז ע/פתח מקבל, אשר הגיעו למקום על-פי בקשתו של פאוזי מראר והיו אמורים להסיע את דארין לתחנת משטרת ישראל ביפו על מנת ששם דארין תפעיל את מטען החבלה, אותו נשאה על גופה, ובכך תגרום בכוונה למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הורה לפאוזי מראר לא לגלות לאנשים שגויסו להסיע את דארין את המטרה האמיתית של הנסיעה, אלא למסור כי מדובר ב"זונה" ועל מנת לשכנע את האנשים הנ"ל כי אלו הם פני הדברים, הנאשם הורה לפאוזי מראר להציע למסיעים לקיים בדרך יחסי מין עם דארין. הנאשם גם הדריך את דארין לא לשוחח עם המסיעים ולא לגלות להם את מטרת הנסיעה.
10. ביום 27.02.02, סמוך לשעה 22:27, במחסום של צה"ל ומשטרת ישראל "מכבים" בכביש 443 הרכב שבו נסעו דארין, מוסא חסונה ואחפז מקבל נעצר לביקורת על-ידי חיילי צה"ל ושוטרי משטרת ישראל. באותו הרגע פאוזי מראר התקשר אל מוסא חסונה ואחפז מקבל. הנאשם שהיה יחד עם פאוזי מראר בשעת השיחה הבין מהאחרון כי הרכב בו נסעה דארין עוכב על-ידי משטרת ישראל. הנאשם ביקש מפאוזי מראר להורות לדארין להפעיל את מטען החבלה במחסום בכוונה לגרום למותם של השוטרים הנמצאים שם. משהבינה דארין כי לא תצליח לעבור את מחסום "מכבים" הנ"ל, להיכנס לשטחה של מדינת ישראל ולבצע את פיגוע ההתאבדות כפי שתוכנן, היא הפעילה את מטען החבלה שנשאה על גופה בכוונה לגרום למותם של שוטרי משטרת ישראל וחיילי צה"ל שהיו במחסום הנ"ל.
11. כתוצאה מפיצוץ מטען החבלה, אשר אותו דארין נשאה על גופה נפצע באורח קשה בבטנו שוטר משטרת ישראל, מרדכי טל, שני שוטר נוספים, דוד כהן ושאול כהן, נפצעו באורח קל.
12. דארין נהרגה במקום כתוצאה מפיצוץ מטען החבלה הנ"ל.

**פרט שלושים ואחד:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי יאסר צוואלחה, ראמי זידאן וסאמר ראתב יונס עוויס רוס"ר קלצ'ניקוב ורוס"ר אם-16, וזאת על מנת שהאנשים הנ"ל יבצעו באמצעות כלי הנשק הנ"ל פיגוע ירי לעבר ביישוב בית-אל.
לאחר מכן, השלושה הנ"ל החזירו לנאשם את כלי הנשק הנ"ל ודיווחו כי ביצעו באמצעותם פיגוע ירי לעבר השומר בשער היישוב בית-אל.

**פרט שלושים ושניים:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
אל הנאשם הנ"ל, במועד האמור, פנו פעילי היחידה המבצעית של המודיעין הכללי של הרשות הפלסטינית, אחמד דיב מרעי, תאאר אבו מוראד וסאמר ראתב יונס עוויס, אשר ביקשו כי הנאשם יסייע להם להוציא לפועל פיגוע ירי בכביש עוקף רמאללה המוביל לבית-אל. הנאשם הסכים לסייע להוציא לפועל את הפיגוע האמור. הנאשם, ביחד עם מהנד אבו-חלאווה, נאצר מחמד יוסף נאג'י

P 5: 28

(אבו-חמיד) ומחמד נאיפה, המכונה "אבו רביע", צילמו את שלושת האנשים הנ"ל לקראת ביצוע הפיגוע המתוכנן. לאחר מספר ימים, סאמר עוויס הודיע לנאשם כי חבריו שינו את דעתם ואינם מעוניינים לבצע את הפיגוע המתוכנן. לאור האמור, התכנית לביצוע הפיגוע האמור בוטלה.

**פרט שלושים ושלושה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מהנד אבו-חלאווה, פעיל צבאי בכיר בארגון "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, לבצע פיגוע ירי באמצעות רוס"ר אם-16 לעבר חיילי צה"ל הנמצאים במחסום צה"ל הסמוך לביר-זית, וזאת בכוונה לגרום למותם של חיילי צה"ל.

פיגוע הירי המתוכנן לא בוצע עקב נוכחות כוחות גדולים של צה"ל באיזור ביר-זית, כאשר הנאשם וחברו הנ"ל הבינו כי לאור כמות כוחות צה"ל סיכוייהם להימלט בחיים לאחר ביצוע הפיגוע המתוכנן הינם אפסיים.

**פרט שלושים וארבעה:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש פברואר - תחילת חודש מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אווירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם מחמד נאיפה, המכונה "אבו רביע", ועם אחמד טאלב מוצטפא ברגותי, המכונה "אלפראנסי", לשלוח מחבל מתאבד אל תוך מדינת ישראל, על מנת שיבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמד נאיפה הכיר לנאשם וחבריו את מהנד אלשאיב, אשר גויס לביצוע פיגוע ההתאבדות המתוכנן.

על-פי בקשתם של הנאשם ושל מחמד נאיפה, אחמד ברגותי הביא רוס"ר אם-16 לצורך ביצוע פיגוע ההתאבדות המתוכנן. במסגרת ההכנות לביצוע הפיגוע האמור, הנאשם ושני חבריו הנ"ל צילמו באמצעות מצלמת וידאו את מהנד אלשאיב כשהוא מסביר כי הפיגוע הינו בשם "גדודי חללי אלאקצא".

לאחר מכן, הנאשם וחבריו הנ"ל העבירו למהנד אלשאיב אימון תיאורטי ומעשי בשימוש ברוס"ר אם-16. במהלך האימון הנ"ל, מהנד אלשאיב ירה שתי מחסניות ברוס"ר האמור.

לאחר מכן, הנאשם וחבריו הובילו את מהנד אלשאיב אל דירה ברמאללה תחתא, אותה שכר אחמד ברגותי, והורו למהנד אלשאיב לשהות שם מספר ימים עד שהמצב יירגע ומעט ומעבר בכבישי האיזור יהיה קל יותר.

פיגוע ההתאבדות המתוכנן לא יצא אל הפועל מכיוון שמהנד אלשאיב הנ"ל נמלט מהדירה האמורה.

**פרט שלושים וחמישה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בעת ששהה ברמאללה, שוחח באמצעות טלפון עם עומר שריף אסעד ח'נפר ועם מחמד אבו-ג'ולדי. השניים מסרו לנאשם כי ואאל אחמד סאלם ג'לאמנה (נורסי) ותאאר באסם מוצטפא ג'בארין (טהא) מעוניינים לבצע פיגוע התאבדות. הנאשם הורה לשלוח את שני המחבלים המתאבדים אליו לרמאללה ביום למחרת. ביום למחרת ואאל נורסי ותאאר ג'בארין התקשרו אל הנאשם ואמרו כי נמצאים במחסום יריחו בדרכם לרמאללה, אך שכחו את תעודות הזהות שלהם בבית. בעקבות האמור, הנאשם הורה לשניים לחזור לביתם על מנת לקחת משם את תעודות הזהות ואז לחזור לרמאללה. בשעות הערב באותו היום, מחמד אבו-ג'ולדי התקשר אל הנאשם ומסר כי שני המחבלים המתאבדים הנ"ל נעצרו על-ידי הרשות הפלסטינית.
לאור האמור לעיל, התכנית לביצוע פיגוע ההתאבדות לא יצאה אל הפועל.

**פרט שלושים ושישה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בתחילת חודש מרץ 2002, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. בסוף חודש פברואר - תחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם ע'יסאן מחמוד נאייף סטיטה, אשר מסר לנאשם כי ברצונו לבצע פיגוע. הנאשם שכנע את ע'יסאן סטיטה לבצע פיגוע התאבדות בתל-אביב בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.
2. בעקבות התכנון הנ"ל, הנאשם פנה אל מחמד נאיפה, המכונה "אבו-רביע", ואל נאצר מחמד יוסף נאג'י (אבו-חמיד), פעילים צבאיים בכירים ב"גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, בבקשה לסייע בהוצאה לפועל של פיגוע ההתאבדות המתוכנן. הנאשם ביקש לקבל מנאצר אבו-חמיד מטען חבלה על מנת שבאמצעותו יבצע ע'יסאן סטיטה את פיגוע ההתאבדות המתוכנן. נאצר אבו-חמיד הודיע לנאשם כי ברשותו מטען חבלה רב עוצמה והוא מעוניין למסור אותו לצורך ביצוע פיגוע גדול שיתוכנן היטב. נאצר אבו-חמיד אף בקש מהנאשם להכין תוכנית מפורטת לשם ביצוע הפיגוע ולפגוש את מי שאמור לבצע את פיגוע ההתאבדות.
3. בתיווכו של הנאשם, ע'יסאן סטיטה נפגש עם נאצר אבו-חמיד במחנה הפליטים אמערי. ע'יסאן סטיטה מסר לנאצר אבו-חמיד כי הוא מעוניין לבצע פיגוע התאבדות גדול שיגרום למותם של הרבה אנשים. בפגישה האמורה נכח הנאשם עצמו וכן נכחו מוהנד אבו-חלאווה ומוחמד נאייפה, המכונה "אבו-רביע", שנטלו אף הם חלק בתכנון פיגוע ההתאבדות שאמור היה לבצע ע'יסאן סטיטה.
4. במהלך הפגישה הנ"ל, ע'יסאן סטיטה צולם באמצעות מצלמת ויאדו של נאצר אבו-חמיד, כשהוא עומד על רקע דגלים של אש"ף ו"גדודי חללי אלאקצא", נושא נאום פרידה ולקיחת אחריות מטעם "גדודי חללי אלאקצא" על ביצוע פיגוע ההתאבדות המתוכנן, אשר מלותיו נכתבו על-ידי הנאשם. הנאשם, נאצר אבו-חמיד ויתר חבריהם המעורבים בארגון הפיגוע, תכננו למסור את הקלטת שבה מצולם ע'יסאן סטיטה לעיתונות, עם ביצוע הפיגוע.
5. לאחר שע'יסאן סטיטה צולם כאמור לעיל, הוא הסתפר, התגלח והתלבש בבגדים חדשים, אשר נקנו עבורו, וכל זאת בכדי שלא ייחשף בדרכו לביצוע הפיגוע.
6. לאחר מכן, נאצר אבו-חמיד לימד את ע'יסאן סטיטה כיצד להפעיל את מטען החבלה שיישא על גופו. מטען החבלה הורכב ממטף לכיבוי אש ממולא בחומר נפץ, שהוסתר בתוך תיק גב. ע'יסאן סטיטה היה אמור להפעיל את מטען החבלה באמצעות מפסק שהודבק לכף ידו. המפסק היה מחובר למטען שבתוך התיק באמצעות חוט אשר הוסתר בתוך בגדיו של ע'יסאן סטיטה.
7. עם השלמת ההכנות לשיגורו של ע'יסאן סטיטה לביצוע פיגוע ההתאבדות המתוכנן, הגיע למקום עיסא ג'בארין שתפקידו היה להסיע את ע'יסאן סטיטה למקום ביצוע הפיגוע

P 5: 30

בתל-אביב. עיסא ג'בארין גויס ליטול חלק בביצוע הפיגוע ע"י מחמד נאייפה, המכונה "אבו-רביע". עיסא ג'בארין הגיע למקום שבו היו הנאשם ויתר המעורבים בתכנון הפיגוע, ברכב מסוג מזדה בעל לוחיות זיהוי פלסטיניות. נאצר אבו-חמיד הורה להחליף את לוחיות הזיהוי ללוחיות ישראליות ומוהנד אבו-חלאווה עשה כן.

8. עיסאן סטיטה, כשהוא מצויד בתיק עם מטען החבלה, עלה לרכב המזדה שבו נהג עיסא ג'בארין והתיישב במושב האחורי, כאשר מוהנד אבו-חלאווה התיישב במושב הקדמי. הנאשם, נאצר אבו-חמיד ומוחמד נאייפה "אבו-רביע" נסעו ברכב של נאצר אבו-חמיד כרכב ליווי. שני הרכבים יצאו לדרכם לביצוע פיגוע ההתאבדות המתוכנן. התוכנית הייתה כי הרכבים ייסעו דרך ראפאת-עטרות ומשם ימשיך הרכב שבו ישב עיסאן סטיטה לתל-אביב, שם היה אמור לבצע את פיגוע ההתאבדות המתוכנן בכוונה לגרום למותם של אנשים רבים ככל האפשר.

9. משהגיעו הרכבים למחסום של כוח 17 של הרשות הפלסטינית ערכו נאצר אבו-חמיד ומוהנד אבו-חלאווה בירור עם השוטרים הפלסטינים שבמחסום. מהבירור עלה כי במקום עברו שני ג'יפים של צה"ל. באותו הרגע אף נשמע רעש של מסוקים באוויר. דברים אלו עוררו את חשדו של נאצר אבו-חמיד אשר החליט לדחות את ביצוע הפיגוע. הנאשם ויתר חבריו חזרו למחנה הפליטים אמערי.

10. יום למחרת, יצא עיסאן סטיטה שוב לביצוע פיגוע ההתאבדות המתוכנן. נאצר אבו-חמיד הלביש את התיק עם המטען על גבו של עיסאן סטיטה, שיצא ברכב המזדה עם עיסא ג'בארין. רכב נוסף שיצא היה מסוג פורד טרנזיט שישב בו מוהנד אבו-חלאווה. תפקידו של הרכב הנוסף היה לנסוע לפני הרכב הראשון על מנת לבדוק את הדרך.

11. בהתקרבם לראפאת, שני כלי הרכב הנ"ל נתקלו במחסום צה"ל והחליטו לחזור למחנה הפליטים אמערי.

**__פרט שלושים ושבעה:__**

**__מהות העבירה:__** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**__פרטי העבירה:__** הנאשם הנ"ל, באזור, בתחילת חודש מרץ 2002, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. ביום 5.3.2002, נהרג מוהנד אבו-חלאווה. הנאשם פגש את נאצר מחמד יוסף נאג'י (אבו-חמיד) וביקש ממנו לבצע פיגוע נקמה בכוונה לגרום למותם של אזרחים ישראליים רבים ככל הניתן. נאצר אבו-חמיד ביקש מהנאשם להמתין עד לאחר ההלוויה של אבו-חלאווה.

2. ביום ה- 6.3.3002, לאחר הלווייתו של מוהנד אבו-חלאווה, נפגש הנאשם עם נאצר אבו-חמיד ועם עיסאן מחמוד נאייף סטיטה בתחנת האוטובוסים ברמאללה. הנאשם הודיע לנאצר אבו-חמיד כי יש לבצע פיגוע במהירות האפשרית וכי החליט לבצע את הפיגוע ההתאבדות במקום אחר מזה שתוכנן כמפורט בפרט האישום הקודם. בעקבות הוראתו הנ"ל של הנאשם, עיסאן סטיטה נסע ביחד עם נאצר אבו-חמיד למחנה הפליטים אמערי, שם הוסתר מטען החבלה, המתואר בפרט האישום הקודם. נאצר אבו-חמיד הלביש את מטען החבלה הנ"ל על גבו של עיסאן סטיטה והשניים חזרו לרמאללה ופגשו שוב את הנאשם ואת ומחמד נאייפה, המכונה "אבו-רביע".

3. נאצר אבו-חמיד הדגים לנאשם כיצד מרכבים את מטען החבלה על גבו של עיסאן סטיטה ונסע בחזרה למקום מחבואו.

4. משם, עיסאן סטיטה יצא לכיוון ירושלים בכדי לבצע את פיגוע ההתאבדות המתוכנן בכוונה לגרום למותם של אנשים רבים ככל האפשר, כשהוא נושא את מטען החבלה בתוך תיק על גבו.

5. בסמוך למחסום קלנדיה, עיסאן סטיטה הבחין בג'יפים של צה"ל ובחיילי צה"ל, אשר חשדו בו. עיסאן סטיטה פחד, זרק את התיק עם מטען החבלה, וברח מהמקום לכיוון רמאללה.

**פרט שלושים ושמונה:** (פ.א. 580/02 שפט)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 10.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, שוחח עם מג'די אבו-אלוופא, אשר מסר כי יש לו אדם המוכן לבצע פיגוע התאבדות. הנאשם ביקש לשוחח עם האדם האמור.
2. למחרת היום, ברמאללה, הנאשם נפגש עם דורעיאם עזת מחמד-סעיד זכארנה, אשר מסר כי הינו האדם עליו דיבר מאג'ד אבו-אלוופא וכי הוא מוכן לבצע פיגוע התאבדות.
3. הנאשם נפגש עם נאצר ג'מאל מוסא שוויש ומסר כי ישנו אדם המבקש לבצע פיגוע התאבדות בתוך מדינת ישראל בכוונה לגרום למותם של אנשים רבים ככל האפשר.
4. הנאשם ביקש מנאצר שוויש לסייע בצילום המחבל המתאבד לקראת יציאתו של האחרון לביצוע פיגוע ההתאבדות המתוכנן. נאצר שוויש הסכים לצלם את המחבל המתאבד בביתו של אחיו, חאלד שוויש, הנמצא בביתוניא.
5. ביום 09.03.02 הנאשם ונאצר שוויש הגיעו לדירה האמורה בביתוניא. לדירה האמורה הגיע גם המחבל המתאבד שהוא דורעיאם עזת מחמד-סעיד זכארנה, וכן הצלם אחמד עאצי ועיתונאית נוספת. בעת צילומו של המחבל המתאבד נכח גם אחיו של הנאשם - סאמר עוויס.
6. לאחר מכן, סאמר עוויס נסע ביחד עם דורעיאם זכארנה לדירתו של הנאשם במחנה הפליטים אמערי. בדרכם למקום הנ"ל, מסוק ירה טיל לעבר הרכב. דורעיאם זכארנה הספיק לברוח מהרכב הנ"ל ואילו סאמר עוויס נהרג כתוצאה מפגיעת הטיל הנ"ל.
7. דורעיאם זכארנה קיבל, בהתאם לתכנית שנערכה מוקדם יותר בין הנאשם וחבריו, מידי מחמד נאיפה, המכונה "אבו רביע", רוס"ר קלצ'ניקוב, תחמושת ושני רימוני-יד וביום 10.03.02 יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן במטרה לגרום למותם של אנשים רבים ככל האפשר.
8. ביום 10.03.02, בסביבות השעה 14:30, המחבל המתאבד הנ"ל (דורעיאם זכארנה) ניסה לחדור אל תוך מדינת ישראל כשהוא חמוש ברוס"ר קלצ'ניקוב, מחסניות מלאות בכדורים ושני רימוני-יד, וזאת על מנת לבצע את פיגוע ההתאבדות המתוכנן ולגרום בכוונה למותם של אזרחים רבים ככל הניתן. דורעיאם זכארנה הובא למחסום א-ראם על-ידי עיסא מחמד מחמוד ג'בארין, אשר גויס למשימה זו על-ידי ראש המודיעין הכללי של הרשות הפלסטינית - תאופיק טיראווי.
9. במועד ובשעה האמורים, במחסום א-ראם או בסמוך לכך, המחבל המתאבד הנ"ל, דורעיאם זכארנה, נהרג על-ידי כוחות הביטחון הישראליים בעת ניסיונו לחדור אל תוך מדינת ישראל כאמור לעיל.

**פרט שלושים ותשעה:** (פ.א. 2069/02 מת"ם י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. במהלך שהותו של הנאשם ברמאללה בתחילת שנת 2002, הנאשם הכיר את נאצר ג'מאל מוסא שוויש, פעיל צבאי בכיר ב"גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח.
2. מנאצר שוויש נודע לנאשם כי נמצא ברמאללה מחמד חשאיקה, אשר אותו ניסה נאצר שוויש לשלוח לביצוע פיגוע התאבדות בתוך שטחה של מדינת ישראל.
3. בתחילת חודש מרץ 2002 מחמד חשאיקה היה עצור במתחם "המוקטעה" של הרשות הפלסטינית ברמאללה. בעקבות הפניה של הנאשם, שהוא המודיעין הכללי של הרשות הפלסטינית, מחמד חשאיקה שוחרר מהמעצר האמור.
4. לאחר השחרור, מחמד חשאיקה פנה אל הנאשם ואל נאצר שוויש והודיע על רצונו לבצע פיגוע התאבדות. הנאשם ונאצר שוויש הסכימו להכין את מחמד חשאיקה ולצייד אותו בכל הדרוש לצורך ביצוע פיגוע ההתאבדות בתוך מדינת ישראל. נאצר שוויש מסר לנאשם כי הפיגוע

P 5: 32

המתוכנן יהיה פיגוע נקמה על מותו של אחיו של הנאשם, סאמר עוויס, אשר נהרג ביום 09.03.02.

5. הנאשם הבטיח לנאצר שוויש לדאוג לשחרר את האחרון מהמעצר ברשות הפלסטינית אם ייעצר בעקבות ביצוע הפיגוע המתוכנן.
6. מחמד חשאיקה סיפר לנאשם ולנאצר שוויש כי פנה אליו אבו איאד אלשמעה, קצין במודיעין של הרשות הפלסטינית ברמאללה, והציע כי ישלח את מחמד חשאיקה לבצע פיגוע התאבדות. הנאשם ונאצר שוויש שכנעו את מחמד חשאיקה שלא להאמין לקצין המודיעין של הרשות הפלסטינית מחשש שיסגיר אותו לידי ישראל. הנאשם ונאצר שוויש שכנעו את מחמד חשאיקה כי הם ידאגו לכל הדרוש על מנת לשולחו לביצוע פיגוע התאבדות בתוך מדינת ישראל.
7. נאצר שוויש מצא דירה שכורה ברמאללה, אשר בה הוא וחבריו היו אמורים להכין את פיגוע ההתאבדות המתוכנן.
8. נאצר שוויש הוביל אל הדירה האמורה את הנאשם ואת מחמד חשאיקה.
9. על-פי בקשתו של הנאשם, נאצר שוויש גייס את סיגוד שולי, תושבת עצירה שמאליה, לביצוע פיגוע ההתאבדות הנ״ל, וזאת לאחר שהנאשם ונאצר שוויש החליטו כי יהיו שני מחבלים מתאבדים, גבר ואישה, אשר יבצעו פיגוע התאבדות כפול וזאת בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר. סיגוד שולי הגיעה אף היא לדירה האמורה.
10. בדירה האמורה, על-פי בקשתו של נאצר שוויש, הצלם אחמד עאצי צילם באמצעות מצלמת וידאו את מחמד חשאיקה ואת סיגוד שולי לקראת ביצוע פיגוע ההתאבדות המתוכנן.
11. הנאשם הדריך את מחמד חשאיקה לפוצץ את עצמו ולגרום למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הבהיר למחמד חשאיקה כי אם ייעצר עליו לפוצץ את עצמו במקום וכי העיקר שיהרוג יהודי - אפילו אחד, אבל שיהרוג.
12. בשלב הזה, נאצר שוויש החליט כי אינו רוצה בכך שסיגוד שולי תשתתף בביצוע פיגוע ההתאבדות, והודיע למשפחתה של האחרונה על כוונותיה של בתם. כתוצאה מכך, סיגוד שולי חזרה לאיזור שכם ומשם נמלטה לירדן.
13. הנאשם פנה אל משרדו של ראש המודיעין הכללי ברשות הפלסטינית, תאופיק טיראווי, והביא משם חומרי נפץ. הנאשם ייצר מחומרי הנפץ הנ״ל מטען חבלה לצורך ביצוע פיגוע ההתאבדות המתוכנן.
14. לאחר מכן, הנאשם ונאצר שוויש הכינו את חגורת הנפץ.
15. הנאשם גייס לצורך העברתו של מחמד חשאיקה אל תוך מדינת ישראל לביצוע פיגוע ההתאבדות המתוכנן את קאהירה סעיד סעדי.
16. נאצר שוויש גייס לצורך העברתו של מחמד חשאיקה אל תוך מדינת ישראל לביצוע פיגוע ההתאבדות המתוכנן את סנאא מחמד שחאדה.
17. ביום 20.03.02 נאצר שוויש נפגש ברמאללה עם ראש ״התנזים״ של הפת״ח באיזור, מרואן ברגותי. נאצר שוויש מסר למרואן ברגותי כי הנאשם עומד לשלוח מחבל מתאבד לצורך ביצוע פיגוע התאבדות בתוך מדינת ישראל. מרואן ברגותי ביקש לדעת אם הנאשם ונאצר שוויש זקוקים לדבר מה לצורך ההוצאה לפועל של הפיגוע המתוכנן. למרות שנאצר שוויש השיב בשלילה על השאלה הנ״ל, מרואן ברגותי מסר לאחרון סכום של 600 דולר ארה״ב.
18. ביום 21.03.02 הנאשם נפגש ברמאללה עם נאצר שוויש ועם סנאא שחאדה. הנאשם הסביר לסנאא שחאדה כי עליה להוביל את המחבל המתאבד אל ירושלים על מנת שיבצע שם את פיגוע ההתאבדות המתוכנן וזאת מאחר שהיא מכירה היטב את ירושלים ואת הדרכים המובילות אליה.
19. באותו היום, הנאשם, נאצר שוויש ומחמד חשאיקה ביקרו במשרדו של חסין א-שיח, מזכ״ל ארגון הפת״ח באיזור. שם, הנאשם קיבל מידי חסין א-שיח כסף ושני רימוני-יד לצורך ההוצאה לפועל של הפיגוע המתוכנן.
20. הנאשם וחבריו הנ״ל רכשו בכסף האמור בגדים עבור מחמד חשאיקה, אשר בהם ביצע האחרון את פיגוע ההתאבדות, אשר יתואר בהמשך.
21. לאחר מכן, הנאשם עם חבריו הנ״ל הגיע לדירה ברמאללה, אשר בה היו מחמד חשאיקה הנ״ל, חג׳ חדר ומוזיד אלמצרי. הנאשם ומוזיד אלמצרי הכינו את מחמד חשאיקה לקראת ביצוע פיגוע ההתאבדות המתוכנן והלבישו עליו את חגורת הנפץ הנ״ל.
22. לאחר מכן, הנאשם יצר קשר עם קאהירה סעדי וביקש מהאחרונה לסייע בהעברת מחבל מתאבד לירושלים.
23. לאחר זמן מה, קאהירה סעדי הגיעה אל הנאשם וחבריו הנ״ל.
24. בשעות הצהרים, ביום 21.03.02, נאצר שוויש הסיע מרמאללה למחסום קלנדיה, ברכב שכור, את מחמד חשאיקה שנשא על גופו את חגורת הנפץ הנ״ל וכן את סנאא שחאדה וקאהירה סעדי שליוו את המחבל המתאבד הנ״ל.
25. לאחר מכן, ולאחר שנפרד בנשיקה ממחמד חשאיקה, נאצר שוויש חזר לרמאללה.

P 5: 33

26. קאהירה סעדי וסנאא שחאדה הובילו את מחמד חשאיקה, אשר נשא על גופו את חגורת הנפץ הנ"ל, לרחוב המלך ג'ורג' בירושלים. השתיים בחרו את המקום מכיוון שהוא הומה אדם בשעות אחרי הצהרים ולכן השתיים החליטו כי הוא "מתאים" לביצוע פיגוע ההתאבדות המתוכנן.

27. לאחר שסנאא שחאדה וקאהירה סעדי עזבו את מחמד חשאיקה ברחוב המלך ג'ורג', מחמד חשאיקה הגיע אל מעבר החצייה הנמצא בסמוך לבית-קפה "ארומה" וסמוך לצומת הרחובות המלך ג'ורג' וההסתדרות.

28. במקום האמור, בסמוך לשעה 16:20 ביום האמור, מחמד חשאיקה הפעיל את מטען החבלה, אשר אותו נשא על גופו, כשהוא נמצא בתוך קהל האנשים וזאת במטרה לגרום למותם של אנשים רבים ככל האפשר.

29. לאחר שלנאשם וחבריו נודע על ביצוע פיגוע ההתאבדות המתוכנן, נאצר שוויש העביר קלטת וידאו עם "צוואתו" המצולמת של מחמד חשאיקה לידי עיתונאי אחמד עאצי.

30. לאחר מכן, הנאשם ונאצר שוויש פנו אל חסין א-שיח', מזכ"ל ארגון הפת"ח באיזור, וניסחו הודעה, אשר בה "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, נטלו אחריות על ביצוע פיגוע התופת המתואר לעיל. לאחר עריכת ההודעה, נאצר שוויש ניגש אל משרדי חברת החדשות ANN ושם צולם כשהוא מקריא את ההודעה הנ"ל של נטילת האחריות לפיגוע המתואר לעיל.

31. במעשיו המתוארים לעיל, הנאשם הנ"ל, במועד האמור, גרם בכוונה למותו של **רס"מ גדי שמש ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר לעיל.

**<u>פרט ארבעים:</u> (פ.א. 2069/02 מת"ם י-ם)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם בכוונה למותה של **ציפורה שמש ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום השלושים ותשעה. **ציפורה שמש ז"ל היתה בעת מותה בחודש הרביעי להריון.**

**<u>פרט ארבעים ואחד:</u> פ.א. (2069/02 מת"ם י-ם)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם בכוונה למותו של **יצחק כהן ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום השלושים ותשעה.

P 5: 34