2. Following the above mentioned planning, the Defendant contacted ▮▮▮▮ known as ▮▮▮▮ and ▮▮▮▮ (▮▮▮▮, senior military operatives in the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, with a request for assistance in effecting the planned suicide attack. The Defendant asked ▮▮▮▮ for an explosive device with which ▮▮▮▮ would carry out the planned suicide attack. ▮▮▮▮ informed the Defendant that he possessed a powerful explosive device and he was interested in delivering it for carrying out a large attack, which would be planned well. ▮▮▮▮ also asked the Defendant to prepare a detailed plan for carrying out the attack and meeting the person who was intended to carry out the suicide attack.

3. With the mediation of the Defendant, ▮▮▮▮ met ▮▮▮▮ in the Amari Refugee Camp. ▮▮▮▮ informed ▮▮▮▮ that he was interested in carrying out a large suicide attack that would cause the deaths of many people. This meeting was attended by the Defendant himself, as well as ▮▮▮▮ and ▮▮▮▮ known as ▮▮▮▮ who also took part in planning the suicide attack that ▮▮▮▮ was meant to execute.

4. During the above mentioned meeting, ▮▮▮▮ was filmed using ▮▮▮▮s video camera, standing before PLO and "Al Aqsa Martyrs Brigades" flags, giving a farewell speech and taking responsibility on behalf of the "Al Aqsa Martyrs Brigades" for executing the planned suicide attack, whose words were written by the Defendant. The Defendant, ▮▮▮▮ and their other colleagues involved in executing the attack, planned to give the cassette on which ▮▮▮▮ was filmed to the press, upon the execution of the attack.

5. After ▮▮▮▮ was filmed as stated above, he had his hair cut, shaved and dressed in new clothes, which had been bought for him, in order not to be discovered en route to executing the attack.

6. Thereafter, ▮▮▮▮ taught ▮▮▮▮ how to activate the explosive device that he would carry on his person. The explosive device was composed of a fire extinguisher filled with explosives, which was hidden in a backpack. ▮▮▮▮ was meant to operate the explosive device using a switch that was affixed to his hand. The switch was connected to a charger in the bag using a wire that was concealed in ▮▮▮▮s clothes.

7. To complete the preparations for dispatching ▮▮▮▮ to execute the planned suicide attack, ▮▮▮▮, whose function was to drive ▮▮▮▮ to the attack execution site

[Stamp] P 5: 30 [continued]

Prosecution Case 422/02 Amended

in Tel Aviv, arrived. ▇▇▇▇ was recruited to take part in executing the attack by ▇▇▇▇ ▇▇▇▇ known as ▇▇▇▇ ▇▇▇▇ came to the place where the Defendant and the other persons involved in planning the attack were in a Mazda type vehicle with Palestinian license plates. ▇▇▇▇ ordered the replacement of the license plates to Israeli license plates and ▇▇▇▇ did so.

8. ▇▇▇▇, equipped with the bag containing the explosive device, got into the Mazda vehicle that ▇▇▇▇ was driving and sat on the back seat, while ▇▇▇▇ sat in the front seat. The Defendant, ▇▇▇▇ and ▇▇▇▇ traveled in ▇▇▇▇'s vehicle as an escort vehicle. The two vehicles departed on their way to executing the planned suicide attack. The plan was that the vehicles would drive through Rafat-Atarot and from there the vehicle in which ▇▇▇▇ was sitting would continue to Tel Aviv, where he was meant to carry out the planned suicide attack with the intent of causing the deaths of as many people as possible.

9. When the vehicles arrived at a checkpoint of Force 17 of the Palestinian Authority, ▇▇▇▇ and ▇▇▇▇ conducted an inquiry with the Palestinian policemen at the checkpoint. The inquiry indicated that two IDF jeeps had passed by. At that time, there was also the noise of helicopters in the air. These raised the suspicion of ▇▇▇▇, who decided to defer the commission of the attack. The Defendant and his other colleagues returned to Amari Refugee Camp.

10. On the following day, ▇▇▇▇ departed again to carry out the planned suicide attack. ▇▇▇▇ fitted the bag with the explosive device on ▇▇▇▇'s back. The latter drove in the Mazda vehicle with ▇▇▇▇. Another vehicle that departed was of the Ford Transit type, in which ▇▇▇▇ was traveling. The function of the additional vehicle was to drive ahead of the first to check the way.

11. Upon approaching Rafat, the two above mentioned vehicles encountered an IDF checkpoint and decided to return to Amari Refugee Camp.

**Thirty seventh count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 5: 31

Prosecution Case 422/02 Amended

**Details of the offense**: The above mentioned Defendant, in the Area, in early March 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. On March 5, 2002, Muhannad Abu Halawa was killed. The Defendant met ▮▮▮▮▮ and asked him to carry out a revenge attack with the intent of causing the deaths of as many Israeli civilians as possible. ▮▮▮▮▮ asked the Defendant to wait until after Abu Halawa's funeral.

2. On March 6, 2002, after Muhannad Abu Halawa's funeral, the Defendant met ▮▮▮▮▮ and ▮▮▮▮▮ at the bus stop in Ramallah. The Defendant informed ▮▮▮▮▮ that an attack must be carried out as quickly as possible and that he had decided to execute the suicide attack at a different place to the one which was planned as elaborated in the previous count of indictment. Following the above mentioned instruction of the Defendant, ▮▮▮▮▮ traveled with ▮▮▮▮▮ to the Amari Refugee Camp, where the explosive device described in the previous count of indictment was hidden. ▮▮▮▮▮ fitted the above mentioned explosive device on the back of ▮▮▮▮▮ and the two returned to Ramallah and again met the Defendant and ▮▮▮▮▮, known as ▮▮▮▮▮.

3. ▮▮▮▮▮ demonstrated to the Defendant how to fix the explosive device to the back of ▮▮▮▮▮ and traveled back to his hiding place.

4. From there, ▮▮▮▮▮ departed towards Jerusalem to carry out the planned suicide attack with the intent of causing the deaths of as many people as possible, carrying the explosive device in a pack on his back.

5. Near the Kalandia checkpoint, ▮▮▮▮▮ noticed IDF jeeps and IDF soldiers, who suspected him. ▮▮▮▮▮ was fearful, threw away the bag with the explosive device and fled the site towards Ramallah.

[Stamp] P 5: 31 [continued]

Prosecution Case 422/02 Amended

**Thirty eighth count**: (detailed incident 580/02 Shafat)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, in late October 2000 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early March 2002, in Ramallah or thereabouts, talked to ▇▇▇▇▇▇ who stated that he had a person who was ready to carry out a suicide attack. The Defendant asked to talk with the above mentioned person.

2. On the following day, in Ramallah, the Defendant met ▇▇▇▇▇▇ who stated that he was the person whom ▇▇▇▇▇▇ talked about and that he was willing to carry out a suicide attack.

3. The Defendant met ▇▇▇▇▇▇ and said that there was a person who wanted to carry out a suicide attack inside the State of Israel with the intent of causing the deaths of as many people as possible.

4. The Defendant asked ▇▇▇▇▇▇ to help in photographing the suicide terrorist before the departure of the latter for carrying out the planned suicide attack. ▇▇▇▇▇▇ asked to photograph the suicide terrorist in the home of his brother, ▇▇▇▇▇▇ which was in Bitunia.

5. On March 9, 2002, the Defendant and ▇▇▇▇▇▇ came to the said apartment in Bitunia. The suicide terrorist, ▇▇▇▇▇▇ and photographer ▇▇▇▇▇▇ and another female journalist also came to the house. During the photographing of the suicide terrorist, the brother of the Defendant, ▇▇▇▇▇▇, was also present.

6. Thereafter, ▇▇▇▇▇▇ traveled with ▇▇▇▇▇▇ to the Defendant's home in Amari Refugee Camp. On their way to this place, a helicopter fired a missile at the vehicle. ▇▇▇▇▇▇ successfully escaped from this vehicle, whereas ▇▇▇▇▇▇ was killed as a result of the impact of the above mentioned missile.

[Stamp] P 5: 32

Prosecution Case 422/02 Amended

7. ▓▓▓▓▓ received, in accordance with a plan that was made earlier between the Defendant and his colleagues, from ▓▓▓▓▓ known as ▓▓▓▓▓, a Kalashnikov assault rifle, ammunition and two hand grenades, and on March 10, 2002, he left Ramallah to carry out the planned suicide attack with the aim of causing the deaths of as many people as possible.

8. On March 10, 2002, at about 2:30 p.m., the above mentioned suicide terrorist (▓▓▓▓▓ ▓▓▓▓▓, attempted to penetrate the State of Israel while armed with a Kalashnikov assault rifle, magazines filled with cartridges and two hand grenades, for the purpose of carrying out the planned suicide attack and intentionally cause the deaths of as many citizens as possible. Douram ▓▓▓▓▓ was brought to the A-Ram checkpoint by ▓▓▓▓▓ who had been recruited for this task by the head of the general intelligence of the Palestinian Authority – ▓▓▓▓▓.

9. At the said date and time, at A-Ram checkpoint or thereabouts, the above mentioned suicide terrorist, ▓▓▓▓▓ was killed by the Israeli security forces during his attempt to penetrate into the State of Israel as stated above.

**Thirty ninth count**: **(Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002, or at around that time, intentionally caused the death of another person, as follows:

1. During the stay of the Defendant in Ramallah in early 2002, the Defendant met ▓▓▓▓▓ ▓▓▓▓▓ a senior military operative in the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah.

2. The Defendant learned from ▓▓▓▓▓ that Muhammad Hashaika, whom ▓▓▓▓▓ had attempted to send to execute a suicide bombing in the territory of the State of Israel, was in Ramallah.

[Stamp] P 5: 32 [continued]

Prosecution Case 422/02 Amended

3. In early March 2002, Muhammad Hashaika was remanded in the "Mukta'ah" complex of the Palestinian Authority in Ramallah. Following the request of the Defendant, who is the general intelligence of the Palestinian Authority [sic], Muhammad Hashaika was released from the said remand.

4. After his release, Muhammad Hashaika contacted the Defendant and ███████ and announced his wish to carry out a suicide attack. The Defendant and ███████ agreed to prepare Muhammad Hashaika and equip him with all measures required to carry out the suicide attack inside the State of Israel. ███████ informed the Defendant that the planned attack

[Stamp] P 5: 32 [continued]

Prosecution Case 422/02 Amended

was a revenge attack for the death of the brother of the Defendant, ▮▮▮▮ who was killed on March 9, 2002.

5. The Defendant promised to ▮▮▮▮ that he would act to have the latter released from custody in the Palestinian Authority if he would be arrested following the execution of the planned attack.

6. Muhammad Hashaika told the Defendant and ▮▮▮▮ that he had been contacted by ▮▮▮▮, an officer in the intelligence of the Palestinian Authority in Ramallah, and suggested that he send Muhammad Hashaika to carry out a suicide attack. The Defendant and ▮▮▮▮ convinced Muhammad Hashaika not to believe the Palestinian Authority intelligence officer out of fear that he would hand him over to Israel. The Defendant and ▮▮▮▮ convinced Muhammad Hashaika that they would take care of everything to send him to carry out a suicide attack inside the State of Israel.

7. ▮▮▮▮ found a rented apartment in Ramallah, in which he and his colleagues were to have prepared the planned suicide attack.

8. ▮▮▮▮ led the Defendant and Muhammad Hashaika to the said apartment.

9. At the request of the Defendant, ▮▮▮▮ recruited ▮▮▮▮ a resident of ▮▮▮▮, to carry out the above mentioned suicide attack, after the Defendant and ▮▮▮▮ decided that there would be two suicide terrorists, a man and a woman, who would carry out a double suicide attack, with the intent of causing the death of as many Israeli civilians as possible. ▮▮▮▮ also arrived at the above mentioned apartment.

10. In the above mentioned apartment, at the request of ▮▮▮▮, photographer ▮▮▮▮ using a video camera, filmed Muhammad Hashaika and ▮▮▮▮ before carrying out the planned suicide attack.

11. The Defendant guided Muhammad Hashaika to detonate his charge and cause the deaths of as many Israeli civilians as possible. The Defendant clarified to Muhammad Hashaika that if he would be arrested, he would have to detonate his charge on the spot and that the main thing was that he would kill a Jew – at least one, but he would nonetheless kill.

[Stamp] P 5: 33

Prosecution Case 422/02 Amended

12. At this stage, ███████ decided that he did not want ███████ to participate in the commission of the suicide attack, and informed the latter's family of the intentions of their daughter. As a result, ███████ returned to the Nablus area, from which she fled to Jordan.

13. The Defendant contacted the office of the head of the general intelligence in the Palestinian Authority, ███████ and brought explosives from there. The Defendant used these explosives to make an explosive device for carrying out the planned suicide attack.

14. Thereafter, the Defendant and ███████ made the explosive belt.

15. The Defendant recruited ███████ for conveying Muhammad Hashaika into the State of Israel for carrying out the planned suicide attack.

16. ███████ recruited ███████ for conveying Muhammad Hashaika into the State of Israel for carrying out the planned suicide attack.

17. On March 20, 2002, ███████ met ███████ the head of the "Tanzim" of the Fatah in the Area in Ramallah. ███████ informed ███████ that the Defendant was about to send a suicide terrorist for carrying out a suicide attack inside the State of Israel. ███████ asked to know whether the Defendant and ███████ needed anything for executing the planned attack. Despite ███████ giving a negative answer to this question, ███████ gave the latter a sum of 600 U.S. dollars.

18. On March 21, 2002, the Defendant met ███████ and ███████ The Defendant explained to ███████ that she would have to transport the suicide terrorist into Jerusalem for him to carry out the planned suicide bombing, because she was closely familiar with Jerusalem and the roads leading to it.

19. That day, the Defendant, ███████ and Muhammad Hashaika visited the office of ███████ the Secretary General of the Fatah Organization in the Area. There, the Defendant received from ███████ money and two hand grenades for executing the planned attack.

20. The Defendant and his above mentioned colleagues purchased, using this money, clothes for Muhammad Hashaika, with which the latter carried out the suicide attack, which is described below.

[Stamp] P 5: 33 [continued]

Prosecution Case 422/02 Amended

21. Thereafter, the Defendant and his above mentioned colleagues arrived at an apartment in Ramallah, in which there were the above mentioned Muhammad Hashaika, ▓▓▓▓ and ▓▓▓▓. The Defendant and ▓▓▓▓ prepared Muhammad Hashaika before executing the planned suicide attack and fitted the above mentioned explosive belt to him.

22. Thereafter, the Defendant contacted ▓▓▓▓ and asked the latter to help convey the suicide terrorist to Jerusalem.

23. After some time, ▓▓▓▓ reached the Defendant and his above mentioned colleagues.

24. At noontime, on March 21, 2002, ▓▓▓▓ drove Muhammad Hashaika, who was carrying the above mentioned explosive belt on his person, and ▓▓▓▓ and ▓▓▓▓ who accompanied the above mentioned suicide terrorist, from Ramallah to the Kalandia checkpoint.

25. Thereafter, after he parted from Muhammad Hashaika with a kiss, ▓▓▓▓ returned to Ramallah.

[Stamp] P 5: 33 [continued]

Prosecution Case 422/02 Amended

26. ███████ and ███████ transported Muhammad Hashaika, who was carrying the above mentioned explosive belt on his body, to King George Street in Jerusalem. The two chose this place because it was crowded in the afternoon, so the two decided that it was "suitable" for carrying out the planned suicide attack.

27. After ███████ and ███████ left Muhammad Hashaika in King George Street, Muhammad Hashaika arrived at a zebra crossing that was near the Aroma Café and near the junction of King George and Hahistadrut Streets.

28. At the said site, at about 4:20 p.m. that day, Muhammad Hashaika activated the explosive device, which he carried on his body, while inside the crowd, with the aim of causing the deaths of as many people as possible.

29. After the Defendant and his colleagues learned of the commission of the planned suicide attack, ███████ forwarded a video cassette with the filmed "will" of Muhammad Hashaika to journalist ███████.

30. Thereafter, the Defendant and ███████ contacted ███████ the secretary general of the Fatah organization in the Area, and drafted an announcement, in which the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, took responsibility for executing the bombing attack described above. After composing the announcement, ███████ approached the offices of the ANN news company and was filmed there reading the above mentioned announcement of taking responsibility for the attack described above.

31. By his acts described above, the above mentioned Defendant, at the said time, caused the intentional death of **the late First Sergeant Gadi Shemesh**, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described above.

**Fortieth count**: **(Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, caused the intentional death of another person, as follows:

[Stamp] P 5: 34

Prosecution Case 422/02 Amended

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused the intentional death of **the late Tzipora Shemesh**, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment. **The late Tzipora Shemesh was four months pregnant at the time of her death**.

**Forty first count**: Detailed Incident (2069/02, Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused the intentional death of **the late Yitzhak Cohen**, who was killed as a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment.

[Stamp] P 5: 34 [continued]

Prosecution Case 422/02 Amended

**Forty second count**: **(Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, attempted to cause the intentional death of as many citizens as possible. As a result of the explosion of the explosive device that was activated by Muhammad Hashaika, as described in the thirty ninth count of the indictment, **81 human beings** were injured.

**Forty third count**: **(Detailed Incident 2069/02, Jerusalem Special Duties Department)**

**Nature of the offense**: Malicious damage to property, an offense pursuant to Section 53C of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on March 21, 2002 or about that time, destroyed or damaged property maliciously and unlawfully, as follows:

The above mentioned Defendant, at the said time, in the place stated in the thirty ninth count of the indictment, by his acts described in the thirty ninth count of the indictment, caused heavy damage to buildings and businesses near the said place and to many vehicles, which were near the place described in the thirty ninth count of the indictment, at which Muhammad Hashaika activated the explosive device, as described in the thirty ninth count of the indictment.

**Forty fourth count**:

**Nature of the offense**: Manufacturing a bomb, an offense pursuant to Section 53(A)(3) of the Security Instructions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 5: 35

Prosecution Case 422/02 Amended

42

**Details of the offense**: The above mentioned Defendant, in the Area, in mid-March 2002 or thereabouts, manufactured a firearm, ammunition, bomb, explosive or incendiary object, without a permit certificate that was granted by or for a military commander, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts met ▇▇▇▇▇▇, who introduced ▇▇▇▇▇▇ to the Defendant. ▇▇▇▇▇▇ told the Defendant that ▇▇▇▇▇▇ could bring the Defendant chemicals so that the Defendant could make explosive devices out of them. ▇▇▇▇▇▇ asked the Defendant to manufacture explosive devices for him so that the latter could carry out an attack against and IDF jeep using them. The Defendant agreed to the said request.

After two days, in Ramallah or thereabouts, the Defendant manufactured an explosive device using an iron pipe and chemicals that ▇▇▇▇▇▇ had brought ▇▇▇▇▇▇ explained to the Defendant that using the above mentioned explosive device, he would carry out an attack against an IDF jeep on the Ramallah bypass road.

[Stamp] P 5: 35 [continued]

Prosecution Case 422/02 Amended

**Forty fifth count**:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense**: the above mentioned Defendant, in the Area, in mid-March 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the said time, in Ramallah or thereabouts, met ▓▓▓▓ an operative in the Palestinian Islamic Jihad organization. ▓▓▓▓ suggested carrying out a suicide attack as a cooperation effort between the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, and the military arm of the Palestinian Islamic Jihad. The Defendant agreed to this suggestion. The Defendant and ▓▓▓▓ concluded that they would act jointly to execute a suicide attack in which two suicide terrorists would participate – one for the "Al Aqsa Martyrs Brigades" and the other for the Palestinian Islamic Jihad. The Defendant agreed to the said proposal, but asked ▓▓▓▓ to act to bring weapons and explosives.

The Defendant also received from ▓▓▓▓ a loan of 1,000 Jordanian dinars for purchasing the weapons.

The above mentioned plan was not executed due to the arrest of the Defendant by the Israeli security forces on March 30, 2002.

**Forty sixth count**:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (Number 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (Number 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in late March 2002 or thereabouts, conspired with another person to cause the intentional death of another person, as follows:

[Stamp] P 5: 36

Prosecution Case 422/02 Amended