להיתפס על-ידי כוחות הביטחון הישראליים ולבצע שם את הפיגוע המתוכנן. ▮ הסכים לבקשת הנאשם.

7. לצורך הסעת שני המחבלים המתאבדים לעפולה, הנאשם ו▮ רכשו רכב סוברו תמורת 4,500 ש״ח והניחו בתוך הרכב הנ״ל את שני רוס״רי קלצ׳ניקוב המתוארים לעיל עם 8 מחסניות מלאות בכדורים.

8. ביום 27.11.01, ▮, בהתאם להוראות הנאשם, ביחד עם ▮ ליווה את ▮ אשר היו חמושים ברוס״רי קלצ׳ניקוב, אותם סיפק הנאשם כאמור לעיל, מגינין עד למקום הקרוב לשטחה של מדינת ישראל.

9. מהמקום האמור לעיל, ▮ המשיכו בנסיעתם ברכב סוברו שנסעו לכיוון עפולה לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.

10. בסמוך לשעה 11:30, ביום 27.11.01 או במועד הסמוך לכך, ▮ הגיעו לאיזור התחנה המרכזית בעפולה. שם ירדו השניים הנ״ל מרכבם ופתחו באש ברוס״רי קלצ׳ניקוב, אשר סופקו להם למטרה זו על-ידי הנאשם, לעבר האנשים שהיו במקום וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. ▮ המשיכו במסע הירי באיזור התחנה המרכזית בעפולה עד אשר נהרגו על-ידי אנשי כוחות הביטחון הישראליים שהגיעו למקום.

12. הנאשם הנ״ל, במעשיו המתוארים לעיל, גרם בכוונה למותה של **מיכל מור ז״ל**, אשר נהרגה כתוצאה מפגיעת הכדורים שנורו על-ידי ▮ מכלי הנשק שסופקו למטרה זו על-ידי הנאשם.

13. לאחר שלנאשם ול▮ נודע על תוצאות הפיגוע המתואר לעיל, ▮ התקשר אל ▮ ראש ארגון הג׳יהאד האסלאמי הפלסטיני, והודיע לאחרון כי הפיגוע בוצע תוך שיתוף פעולה בין "גדודי חללי אלאקצא" לבין הג׳יהאד האסלאמי הפלסטיני.

**פרט עשרים:** (פ.א. 4753/01 עפולה)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ״ל, במועד האמור, במעשיו המתוארים בפרט האישום התשעה-עשר, גרם בכוונה למותו של **נועם גוזובסקי ז״ל**, אשר נהרג בסמוך לתחנה המרכזית בעפולה כתוצאה מפגיעת הכדורים שנורו על-ידי ▮ מכלי הנשק שסופקו למטרה זו על-ידי הנאשם.

**פרט עשרים ואחד:** (פ.א. 4753/01 עפולה)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 27.11.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום התשעה-עשר, במעשיו המתוארים בפרט האישום התשעה-עשר, ניסה לגרום למותם של אנשים רבים ככל האפשר. כתוצאה מפגיעות הכדורים שנורו על-ידי ▮ מכלי הנשק שסופקו למטרה זו על-ידי הנאשם, כפי שתואר בפרט האישום התשעה-עשר, נפצעו **עשרה** אנשים באורח קשה ו**עשרות** אנשים נוספים נפצעו באורח קל עד בינוני.

**פרט עשרים ושניים:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש נובמבר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל במועד האמור, ביחד עם ▆▆▆▆▆, החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף ג׳נין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחבריו הנ״ל הגיעו לכביש עוקף ג׳נין, כאשר הנאשם חמוש ברוסי״ר קלצ׳ניקוב וחברו חמוש ברוסי״ר אם-16. הנאשם וחברו הבחינו ברכב ישראלי מסוג רנו אקספרס בצבע לבן אשר נסע בכביש עוקף ג׳נין לכיוון הישוב כדים. הנאשם וחברו הנ״ל פתחו באש אוטומטית לעבר הרכב הנ״ל ממרחק של כ-100 מטר בכוונה לגרום למותם של נוסעי הרכב. מספר קליעים שנורו על-ידי הנאשם וחברו פגעו ברכב הנ״ל ורק בנס איש לא נפגע. מיד לאחר ביצוע פיגוע הירי הנ״ל, הנאשם וחברו נמלטו מהמקום.

**פרט עשרים ושלשוה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש נובמבר 2001, כיומיים לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל במועד האמור, ביחד עם ▆▆▆▆▆, החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף ג׳נין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחברו הנ״ל הגיעו לכביש עוקף ג׳נין, כאשר הנאשם חמוש ברוסי״ר אם-16 וכל אחד מחבריו חמוש ברוסי״ר אם-16. הנאשם וחברו הבחינו ברכב ישראלי אשר נסע בכביש עוקף ג׳נין. הנאשם וחברו הנ״ל פתחו באש אוטומטית לעבר הרכב הנ״ל בכוונה לגרום למותם של נוסעי הרכב. מיד לאחר ביצוע פיגוע הירי הנ״ל, הנאשם וחברו נמלטו מהמקום.

**פרט עשרים וארבעה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בסוף חודש נובמבר 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל במועד האמור, ביחד עם ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ החליט לבצע פיגוע ירי לעבר כלי רכב ישראלי בכביש עוקף ג׳נין בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחבריו הנ״ל הגיעו לכביש עוקף ג׳נין, כאשר הם חמושים בכלי נשק אוטומטיים. הנאשם וחבריו הבחינו בחיילי צה״ל העומדים ליד הג׳יפ של צה״ל באחד הצמתים. הנאשם וחבריו הנ״ל פתחו באש אוטומטית לעבר חיילי צה״ל הנ״ל בכוונה לגרום למותם. לאחר שחיילי צה״ל הנ״ל השיבו באש לעבר הנאשם וחבריו, הנאשם וחבריו נמלטו מהמקום.

ת.פ. 422/02 מתוקן

P 5: 25

**פרט עשרים וחמישה:**

**מהות העבירה:** ניסיון לייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש דצמבר 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בג׳נין או בסמוך לכך, ניסה לייצר חומר נפץ מחומרים כימיים, אשר אותם רכש מידי ▓▓▓. בסופו של הדבר הנאשם לא הצליח לייצר חומר נפץ. הנאשם תכנן לעשות שימוש בחומר הנפץ, אותו ניסה לייצר, נגד כוחות צה״ל אם יינסו להיכנס למחנה הפליטים ג׳נין.

**פרט עשרים ושישה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במהלך שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במהלך התקופה האמורה, בג׳נין או בסמוך לכך, במספר בר של הזדמנויות שונות, נפגש עם פעילים שונים של ״גדודי חללי אלאקצא״, הזרוע הצבאית של ״התנזים״ של הפת״ח, וביניהם ▓▓▓
הנאשם מסר לאנשים הנ״ל מספר רב של כלי נשק מסוגים שונים, תחמושת, מטעני חבלה מוכנים, חומרים כימיים לצורך ייצור מטעני חבלה וכן מכשירי טלפון סלולריים על מנת שישמשו כמנגנוני הפעלה של מטעני החבלה.
האנשים הנ״ל דיווחו לנאשם אודות הפיגועים שביצעו באמצעות כלי הנשק, התחמושת ומטעני החבלה שקיבלו מהנאשם.

**פרט עשרים ושבעה:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במהלך שנת 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ״ל, במועד האמור, בג׳נין או בסמוך לכך, במספר הזדמנויות שונות, נפגש עם פעילים שונים של ״גדודי חללי אלאקצא״, הזרוע הצבאית של ״התנזים״ של הפת״ח, וביניהם ▓▓▓
הנאשם לימד את הפעילים הנ״ל לייצר חומרי נפץ מסוגים שונים, מטעני חבלה ומנגנוני הפעלה אלחוטיים למטעני החבלה ממכשירי טלפון סלולריים.

10

ת.ת. 422/02 מתוקן

P 5: 26

**פרט עשרים ושמונה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם ███████ המכונה ███████, פעילים צבאיים בכירים בארגון "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, לבצע פיגוע ירי בעטרות, וזאת בכוונה לגרום למותם של אזרחים ישראליים. תחילה, הנאשם וחבריו הנ"ל תכננו לבצע את הפיגוע האמור באחד הכבישים העוקפים בסמוך לרמאללה, אך לאחר ביצוע מספר תצפיות, אשר בהן השתתף הנאשם, הוחלט כי עקב נוכחות כוחות גדולים של צה"ל באיזור, הפיגוע המתוכנן יבוצע בעטרות.
בסופו של דבר ███████ יצאו לביצוע הפיגוע המתוכנן ללא הנאשם כי לנאשם לא היה מקום ברכב שבו האנשים הנ"ל יצאו לביצוע הפיגוע.

**פרט עשרים ותשעה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002, מספר ימים לאחר האירוע המתואר בפרט האישום הקודם, או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם ███████, פעיל צבאי בכיר בארגון "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, לבצע פיגוע ירי בעטרות, וזאת בכוונה לגרום למותם של אזרחים ישראליים.

**פרט שלושים:** (פ.א. 412/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 27.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. ███████ בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, נפגש בשכם עם ███████ (להלן: ███████), אשר הביע בפניו את רצונה לבצע פיגוע התאבדות. בחודש פברואר 2002, ברמאללה, ███████ נפגש שוב עם ███████ אשר שוב ביקשה לבצע פיגוע התאבדות על מנת לגרום למותם של אזרחים ישראליים רבים ככל הניתן.
2. ███████ פנה אל הנאשם וכן אל ███████ ודיווח לנ"ל כי ישנה בחורה המבקשת לבצע פיגוע התאבדות. הנאשם מסר כי הוא מסכים לשלוח את הבחורה האמורה לביצוע פיגוע ההתאבדות וכי הוא יכין מטען חבלה לצורך כך. הנאשם הודיע ל███████ כי עליו לצלם את הבחורה לפני שתצא לביצוע פיגוע ההתאבדות המתוכנן.
3. ███████ הביא את ███████ לדירתו של אחיו ███████ הנמצאת בביתוניא. ███████ הביא לאותה הדירה צלם בשם ███████ וביחד עם האחרון צילם את ███████ לקראת ביצוע פיגוע ההתאבדות המתוכנן. במהלך הצילום, ███████ קראה צוואה.
4. יום למחרת, 27.02.02, הגיעו לדירה הנ"ל הנאשם ביחד עם ███████. הנאשם וחבריו הנ"ל הביאו עמם חגורה, שבה היה מטען חבלה, לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.
5. מכיוון ש███████ סירבה לכך שגבר ילביש עליה את חגורת הנפץ, על-פי בקשתו של ███████, שהוא נשוי לאחותה הגדולה, הלבישה על גופה של ███████ את מטען החבלה הנ"ל. בעת ש███████ הלבישה את חגורת הנפץ על גופה של ███████, היא הבחינה כי אחת הכתפיות של חגורת הנפץ רופפת וחיזקה אותה באמצעות סיכה.

6. הנאשם וחבריו הנ"ל תכננו כי ▇ תגיע אל תחנת משטרת ישראל ביפו ושם תפוצץ את מטען הנפץ שהיא נושאת על גופה ובכך תגרום למותם של אזרחים ישראליים רבים ככל האפשר.

7. ▇ גייס לצורך העברתה של ▇ אל תוך מדינת ישראל על מנת שתבצע שם את פיגוע ההתאבדות המתוכנן את ▇

8. בשעות הערב של אותו היום, ▇ הגיע ביחד עם ▇, אשר נשאה על גופה את מטען החבלה הנ"ל, לבית החולים "אבו-ריא" ברמאללה. שם הם נפגשו עם הנאשם, ▇

9. משם, הנאשם ביחד עם האנשים הנ"ל העביר את ▇ למחסום א-ראם. במחסום א-ראם, ▇ עלתה לרכב סוברארו כחול, מ.ר. 7797787, של ▇ אשר הגיע למקום על-פי בקשתו של ▇ והיו אמורים להסיע את ▇ לתחנת משטרת ישראל ביפו על מנת ששם ▇ תפעיל את מטען החבלה, אותו נשאה על גופה, ובכך תגרום בכוונה למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הורה ל ▇ לא לגלות לאנשים שגויסו להסיע את ▇ את המטרה האמיתית של הנסיעה, אלא למסור כי מדובר ב"זונה" ועל מנת לשכנע את האנשים הנ"ל כי אלו הם פני הדברים, הנאשם הורה ל ▇ להציע למסיעים לקיים בדרך יחסי מין עם ▇. הנאשם גם הדריך את ▇ לא לשוחח עם המסיעים ולא לגלות להם את מטרת הנסיעה.

10. ביום 27.02.02, סמוך לשעה 22:27, במחסום של צה"ל ומשטרת ישראל "מכבים" בכביש 443 הרכב שבו נסעו ▇ נעצר לביקורת על-ידי חיילי צה"ל ושוטרי משטרת ישראל. באותו הרגע ▇ התקשר אל ▇. הנאשם שהיה יחד עם ▇ בשעת השיחה הבין מהאחרון כי הרכב בו נסעה ▇ עוכב על-ידי משטרת ישראל. הנאשם ביקש מ ▇ להורות ל ▇ להפעיל את מטען החבלה במחסום בכוונה לגרום למותם של השוטרים הנמצאים שם. משהבינה ▇ כי לא תצליח לעבור את מחסום "מכבים" הנ"ל, להיכנס לשטחה של מדינת ישראל ולבצע את פיגוע ההתאבדות כפי שתוכנן, היא הפעילה את מטען החבלה שנשאה על גופה בכוונה לגרום למותם של שוטרי משטרת ישראל וחיילי צה"ל שהיו במחסום הנ"ל.

11. כתוצאה מפיצוץ מטען החבלה, אשר אותו ▇ נשאה על גופה נפצע באורח קשה בבטנו שוטר משטרת ישראל, מרדכי טל, שני שוטר נוספים, דוד כהן ושאול כהן, נפצעו באורח קל.

12. ▇ נהרגה במקום כתוצאה מפיצוץ מטען החבלה הנ"ל.

**פרט שלושים ואחד:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי ▇ רוס"ר קלצ'ניקוב ורוס"ר אמ-16, וזאת על מנת שהאנשים הנ"ל יבצעו באמצעות כלי הנשק הנ"ל פיגוע ירי לעבר היישוב בית-אל. לאחר מכן, השלושה הנ"ל החזירו לנאשם את כלי הנשק הנ"ל ודיווחו כי ביצעו באמצעותם פיגוע ירי לעבר השומר בשער היישוב בית-אל.

**פרט שלושים ושניים:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

אל הנאשם הנ"ל, במועד האמור, פנו פעילי היחידה המבצעית של המודיעין הכללי של הרשות הפלסטינית, ▇, אשר ביקשו כי הנאשם יסייע להם להוציא לפועל פיגוע ירי בכביש עוקף רמאללה המוביל לבית-אל. הנאשם הסכים לסייע להוציא לפועל את הפיגוע האמור. הנאשם, ביחד עם ▇

המכונה ▇▇▇, ▇▇▇ צילמו את שלושת האנשים הנ"ל לקראת ביצוע הפיגוע המתוכנן. לאחר מספר ימים, ▇▇▇ הודיע לנאשם כי חבריו שינו את דעתם ואינם מעוניינים לבצע את הפיגוע המתוכנן. לאור האמור, התכנית לביצוע הפיגוע האמור בוטלה.

**פרט שלושים ושלושה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם ▇▇▇, פעיל צבאי בכיר בארגון "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפתח, לבצע פיגוע ירי באמצעות רוס"ר אס-16 לעבר חיילי צה"ל הנמצאים במחסום צה"ל הסמוך לביר-זית, וזאת בכוונה לגרום למותם של חיילי צה"ל.
פיגוע הירי המתוכנן לא בוצע עקב נוכחות כוחות גדולים של צה"ל באיזור ביר-זית, כאשר הנאשם וחבריו הנ"ל הביעו כי לאור כמות כוחות צה"ל סיכוייהם להימלט בחיים לאחר ביצוע הפיגוע המתוכנן הינם אפסיים.

**פרט שלושים וארבעה:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש פברואר - תחילת חודש מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, הזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אווירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם ▇ ▇▇▇, המכונה ▇▇▇ המכונה ▇▇▇ לשלוח מחבל מתאבד אל תוך מדינת ישראל, על מנת שיבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. ▇▇▇ הכיר לנאשם וחבריו את ▇ ▇▇▇ אשר גויס לביצוע פיגוע ההתאבדות המתוכנן.
על-פי בקשתם של הנאשם ושל ▇▇▇▇ הביא רוס"ר אס-16 לצורך ביצוע פיגוע ההתאבדות המתוכנן. במסגרת ההכנות לביצוע הפיגוע האמור, הנאשם ושני חבריו הנ"ל צילמו באמצעות מצלמת וידאו את ▇▇▇ כשהוא מסביר כי הפיגוע הינו בשם "גדודי חללי אלאקצא".
לאחר מכן, הנאשם וחבריו הנ"ל העבירו ל ▇▇▇ אימון תיאורטי ומעשי בשימוש ברוס"ר אס-16. במהלך האימון הנ"ל, ▇▇▇ ירה שתי מחסניות ברוס"ר האמור.
לאחר מכן, הנאשם וחבריו הובילו את ▇▇▇ אל דירה ברמאללה תחתא, אותה שכר ▇▇▇, והורו ל ▇▇▇ לשהות שם מספר ימים עד שהמצב יירגע ומעט ומעבר בכבישי האיזור יהיה קל יותר.
פיגוע ההתאבדות המתוכנן לא יצא אל הפועל מכיוון ש ▇▇▇ הנ"ל נמלט מהדירה האמורה.

**פרט שלושים וחמישה:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בתחילת חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ״ל, במועד האמור, בעת ששהה ברמאללה, שוחח באמצעות טלפון עם ▮▮▮ ועם ▮▮▮. השניים מסרו לנאשם כי ▮▮▮ מעוניינים לבצע פיגוע התאבדות. הנאשם הורה לשלוח את שני המחבלים המתאבדים אליו לרמאללה ביום למחרת. ביום למחרת ▮▮▮ התקשרו אל הנאשם ואמרו כי נמצאים במחסום יריחו בדרכם לרמאללה, אך שכחו את תעודות הזהות שלהם בבית. בעקבות האמור, הנאשם הורה לשניים לחזור לביתם על מנת לקחת משם את תעודות הזהות ואז לחזור לרמאללה. בשעות הערב באותו היום, ▮▮▮ התקשר אל הנאשם ומסר כי שני המחבלים המתאבדים הנ״ל נעצרו על-ידי הרשות הפלסטינית. לאור האמור לעיל, התכנית לביצוע פיגוע ההתאבדות לא יצאה אל הפועל.

**פרט שלושים ושישה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בתחילת חודש מרץ 2002, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. בסוף חודש פברואר - תחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם ▮▮▮, אשר מסר לנאשם כי ברצונו לבצע פיגוע. הנאשם שכנע את ▮▮▮ לבצע פיגוע התאבדות בתל-אביב בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

2. בעקבות התכנון הנ״ל, הנאשם פנה אל ▮▮▮ המכונה ▮▮▮ ואל ▮▮▮, פעילים צבאיים בכירים ב״גדודי חללי אלאקצא״, הזרוע הצבאית של ״התנזים״ של הפת״ח, בבקשה לסייע בהוצאה לפועל של פיגוע ההתאבדות המתוכנן. הנאשם ביקש לקבל מ▮▮▮ מטען חבלה על מנת שבאמצעותו יבצע ▮▮▮ את פיגוע ההתאבדות המתוכנן. ▮▮▮ הודיע לנאשם כי ברשותו מטען חבלה רב עוצמה והוא מעוניין למסור אותו לצורך ביצוע פיגוע גדול שיתוכנן היטב. ▮▮▮ אף בקש מהנאשם להכין תוכנית מפורטת לשם ביצוע הפיגוע ולפגוש את מי שאמור לבצע את פיגוע ההתאבדות.

3. בתיווכו של הנאשם, ▮▮▮ נפגש עם ▮▮▮ במחנה הפליטים אמערי. ▮▮▮ מסר ל▮▮▮ כי הוא מעוניין לבצע פיגוע התאבדות גדול שיגרום למותם של הרבה אנשים. בפגישה האמורה נכח הנאשם עצמו וכן נכחו ▮▮▮ המכונה ״▮▮▮״, שנטלו אף הם חלק בתכנון פיגוע ההתאבדות שאמור היה לבצע ▮▮▮.

4. במהלך הפגישה הנ״ל, ▮▮▮ צולם באמצעות מצלמת וידאו של ▮▮▮ כשהוא עומד על רקע דגלים של אש״ף ו״גדודי חללי אלאקצא״, נושא נאום פרידה ולקיחת אחריות מטעם ״גדודי חללי אלאקצא״ על ביצוע פיגוע ההתאבדות המתוכנן, אשר מלותיו נכתבו על-ידי הנאשם. הנאשם, ▮▮▮ ויתר חבריהם המעורבים בארגון הפיגוע, תכננו למסור את הקלטת שבה מצולם ▮▮▮ לעיתונות, עם ביצוע הפיגוע.

5. לאחר ש▮▮▮ צולם כאמור לעיל, הוא הסתפר, התגלח והתלבש בבגדים חדשים, אשר נקנו עבורו, וכל זאת בכדי שלא ייחשף בדרכו לביצוע הפיגוע.

6. לאחר מכן, ▮▮▮ לימד את ▮▮▮ כיצד להפעיל את מטען החבלה שיישא על גופו. מטען החבלה ממטף לכיבוי אש ממולא בחומר נפץ, שהוסתר בתוך תיק גב. ▮▮▮ היה אמור להפעיל את מטען החבלה באמצעות מפסק שהודבק לכף ידו. המפסק היה מחובר למטען שבתוך התיק באמצעות חוט אשר הוסתר בתוך בגדיו של ▮▮▮.

7. עם השלמת ההכנות לשיגורו של ▮▮▮ לביצוע פיגוע ההתאבדות המתוכנן, הגיע למקום ▮▮▮ שתפקידו היה להסיע את ▮▮▮ למקום ביצוע הפיגוע

8. ‏בתל-אביב. ▓▓▓▓ גויס ליטול חלק בביצוע הפיגוע ע"י ▓▓▓▓, המכונה "▓▓▓". ▓▓▓▓ הגיע למקום שבו היו הנאשם ויתר המעורבים בתכנון הפיגוע, ברכב מסוג מזדה בעל לוחיות זיהוי פלסטיניות. ▓▓▓▓ הורה להחליף את לוחיות הזיהוי ללוחיות ישראליות ו▓▓▓▓ עשה כן.

8. ‏▓▓▓▓, כשהוא מצויד בתיק עם מטען החבלה, עלה לרכב המזדה שבו נהג ▓▓▓▓ והתיישב במושב האחורי, כאשר ▓▓▓▓▓▓▓▓ התיישב במושב הקדמי. הנאשם, ▓▓▓▓ נסעו ברכב של ▓▓▓▓ כרכב ליווי. שני הרכבים יצאו לדרכם לביצוע פיגוע ההתאבדות המתוכנן. התוכנית הייתה כי הרכבים ייסעו דרך ראפאת-עטרות ומשם ימשיך הרכב שבו ישב ▓▓▓▓ לתל-אביב, שם היה אמור לבצע את פיגוע ההתאבדות המתוכנן בכוונה לגרום למותם של אנשים רבים ככל האפשר.

9. ‏משהגיעו הרכבים למחסום של כוח 17 של הרשות הפלסטינית ערכו ▓▓▓▓ ▓▓▓▓ בירור עם השוטרים הפלסטינים שבמחסום. מהבירור עלה כי במקום עברו שני ג'יפים של צה"ל. באותו הרגע אף נשמע רעש של מסוקים באוויר. דברים אלו עוררו את חשדו של ▓▓▓▓ אשר החליט לדחות את ביצוע הפיגוע. הנאשם ויתר חבריו חזרו למחנה הפליטים אמערי.

10. ‏יום למחרת, יצא ▓▓▓▓ שוב לביצוע פיגוע ההתאבדות המתוכנן. ▓▓▓▓ הלביש את התיק עם המטען על גבו של ▓▓▓▓, ▓▓▓▓ יצא ברכב המזדה עם רכב נוסף שיצא היה מסוג פורד טרנזיט שישב בו ▓▓▓▓. תפקידו של הרכב הנוסף היה לנסוע לפני הרכב הראשון על מנת לבדוק את הדרך.

11. ‏בהתקרבם לראפאת, שני כלי הרכב הנ"ל נתקלו במחסום צה"ל והחליטו לחזור למחנה הפליטים אמערי.

**פרט שלושים ושבעה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בתחילת חודש מרץ 2002, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. ‏ביום 5.3.2002, נהרג ▓▓▓▓. הנאשם פגש את ▓▓▓▓ וביקש ממנו לבצע פיגוע נקמה בכוונה לגרום למותם של אזרחים ישראליים רבים ככל הניתן. ▓▓▓▓ ביקש מהנאשם להמתין עד לאחר ההלוויה של ▓▓▓▓.

2. ‏ביום ה- 6.3.3002, לאחר הלוויתו של ▓▓▓▓ נפגש הנאשם עם ▓▓▓▓ ועם ▓▓▓▓ בתחנת האוטובוסים ברמאללה. הנאשם הודיע ל▓▓▓▓ כי יש לבצע פיגוע במהירות האפשרית וכי החליט לבצע את הפיגוע ההתאבדות במקום אחר מזה שתוכנן כמפורט בפרט האישום הקודם. בעקבות הוראתו הנ"ל של הנאשם, ▓▓▓▓ נסע ביחד עם ▓▓▓▓ למחנה הפליטים אמערי, שם הוסתר מטען החבלה, המתואר בפרט האישום הקודם. ▓▓▓▓ הלביש את מטען החבלה הנ"ל על גבו של ▓▓▓▓. והשניים חזרו לרמאללה ופגשו שוב את הנאשם ואת ▓▓▓▓ המכונה "▓▓▓▓".

3. ‏▓▓▓▓ הדגים לנאשם כיצד מרכיבים את מטען החבלה על גבו של ▓▓▓▓ ונסע בחזרה למקום מחבואו.

4. ‏משם, ▓▓▓▓ יצא לכיוון ירושלים בכדי לבצע את פיגוע ההתאבדות המתוכנן בכוונה לגרום למותם של אנשים רבים ככל האפשר, כשהוא נושא את מטען החבלה בתוך תיק על גבו.

5. ‏בסמוך למחסום קלנדיה, ▓▓▓▓ הבחין בג'יפים של צה"ל ובחיילי צה"ל, אשר חשדו בו. ▓▓▓▓ פחד, זרק את התיק עם מטען החבלה, וברח מהמקום לכיוון רמאללה.

**פרט שלושים ושמונה:** (פ.א. 580/02 שפט)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 10.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, שוחח עם ▓▓▓, אשר מסר כי יש לו אדם המוכן לבצע פיגוע התאבדות. הנאשם ביקש לשוחח עם האדם האמור.
2. למחרת היום, ברמאללה, הנאשם נפגש עם ▓▓▓, אשר מסר כי הינו האדם עליו דיבר ▓▓▓ וכי הוא מוכן לבצע פיגוע התאבדות.
3. הנאשם נפגש עם ▓▓▓ ומסר כי ישנו אדם המבקש לבצע פיגוע התאבדות בתוך מדינת ישראל בכוונה לגרום למותם של אנשים רבים ככל האפשר.
4. הנאשם ביקש מ▓▓▓ לסייע בצילום המחבל המתאבד לקראת יציאתו של האחרון לביצוע פיגוע ההתאבדות המתוכנן. ▓▓▓ הסכים לצלם את המחבל המתאבד בביתו של אחיו, ▓▓▓, הנמצא בביתוניא.
5. ביום 09.03.02 הנאשם ו▓▓▓ הגיעו לדירה האמורה בביתוניא. לדירה האמורה הגיע גם המחבל המתאבד שהוא ▓▓▓ וכן הצלם ▓▓▓ ועיתונאית נוספת. בעת צילומו של המחבל המתאבד נכח גם אחיו של הנאשם - ▓▓▓.
6. לאחר מכן, ▓▓▓ נסע ביחד עם ▓▓▓ לדירתו של הנאשם במחנה הפליטים אמערי. בדרכם למקום הנ"ל, מסוק ירה טיל לעבר הרכב. ▓▓▓ הספיק לברוח מהרכב הנ"ל ואילו ▓▓▓ נהרג כתוצאה מפגיעת הטיל הנ"ל.
7. ▓▓▓ קיבל, בהתאם לתכנית שנערכה מוקדם יותר בין הנאשם וחבריו, מידי ▓▓▓, המכונה "▓▓▓", רוס"ר קלצ'ניקוב, תחמושת ושני רימוני-יד וביום 10.03.02 יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן במטרה לגרום למותם של אנשים רבים ככל האפשר.
8. ביום 10.03.02, בסביבות השעה 14:30, המחבל המתאבד הנ"ל (▓▓▓) ניסה לחדור אל תוך מדינת ישראל כשהוא חמוש ברוס"ר קלצ'ניקוב, מחסניות מלאות בכדורים ושני רימוני-יד, וזאת על מנת לבצע את פיגוע ההתאבדות המתוכנן ולגרום בכוונה למותם של אזרחים רבים ככל הניתן. ▓▓▓ הובא למחסום א-ראם על-ידי ▓▓▓, אשר גויס למשימה זו על-ידי ראש המודיעין הכללי של הרשות הפלסטינית - ▓▓▓.
9. במועד ובשעה האמורים, במחסום א-ראם או בסמוך לכך, המחבל המתאבד הנ"ל, ▓▓▓, נהרג על-ידי כוחות הביטחון הישראליים בעת ניסיונו לחדור אל תוך מדינת ישראל כאמור לעיל.

**פרט שלושים ותשעה:** (פ.א. 2069/02 מת"ס י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. במהלך שהותו של הנאשם ברמאללה בתחילת שנת 2002, הנאשם הכיר את ▓▓▓, פעיל צבאי בכיר ב"גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפתי"ח.
2. מ▓▓▓ נודע לנאשם כי נמצא ברמאללה מחמד חשאיקה, אשר אותו ניסה ▓▓▓ לשלוח לביצוע פיגוע התאבדות בתוך שטחה של מדינת ישראל.
3. בתחילת חודש מרץ 2002 מחמד חשאיקה היה עצור במתחם "המוקטעה" של הרשות הפלסטינית ברמאללה. בעקבות פנייה של הנאשם, שהוא המודיעין הכללי של הרשות הפלסטינית, מחמד חשאיקה שוחרר מהמעצר האמור.
4. לאחר השחרור, מחמד חשאיקה פנה אל הנאשם ואל ▓▓▓ והודיע על רצונו לבצע פיגוע התאבדות. הנאשם ו▓▓▓ הסכימו להכין את מחמד חשאיקה ולציידו בכל הדרוש לצורך ביצוע פיגוע ההתאבדות בתוך מדינת ישראל. ▓▓▓ מסר לנאשם כי הפיגוע

16

ת.ת. 422/02 מתוקן

P 5: 32

המתוכנן יהיה פיגוע נקמה על מותו של אחיו של הנאשם, ▬ אשר נהרג ביום 09.03.02.

5. הנאשם הבטיח ל▬ לדאוג לשחרר את האחרון מהמעצר ברשות הפלסטינית אם ייעצר בעקבות ביצוע הפיגוע המתוכנן.

6. מחמד חשאיקה סיפר לנאשם ו▬ כי פנה אליו ▬, קצין במודיעין של הרשות הפלסטינית ברמאללה, והציע כי ישלח את מחמד חשאיקה לבצע פיגוע התאבדות. הנאשם ו▬ שכנעו את ▬ שלא להאמין לקצין המודיעין של הרשות הפלסטינית מחשש שיסגיר אותו לידי ישראל. הנאשם ו▬ שכנעו את מחמד חשאיקה כי הם ידאגו לכל הדרוש על מנת לשולחו לביצוע פיגוע התאבדות בתוך מדינת ישראל.

7. ▬ מצא דירה שכורה ברמאללה, אשר בה הוא וחבריו היו אמורים להכין את פיגוע ההתאבדות המתוכנן.

8. ▬ הוביל אל הדירה האמורה את הנאשם ואת מחמד חשאיקה.

9. על-פי בקשתו של הנאשם, ▬ גייס את ▬, תושבת עצירה שמאליה, לביצוע פיגוע ההתאבדות הנ"ל, וזאת לאחר שהנאשם ו▬ החליטו כי יהיו שני מחבלים מתאבדים, גבר ואישה, אשר יבצעו פיגוע התאבדות כפול וזאת בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר. ▬ הגיעה אף היא לדירה האמורה.

10. בדירה האמורה, על-פי בקשתו של ▬ הצלם ▬ צילם באמצעות מצלמת וידאו את מחמד חשאיקה ואת ▬ לקראת ביצוע פיגוע ההתאבדות המתוכנן.

11. הנאשם הדריך את מחמד חשאיקה לפוצץ את עצמו ולגרום למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הבהיר למחמד חשאיקה כי אם ייעצר עליו לפוצץ את עצמו במקום וכי העיקר שיהרוג יהודי - אפילו אחד, אבל שיהרוג.

12. בשלב הזה, ▬ החליט כי אינו רוצה בכך ש▬ תשתתף בביצוע פיגוע ההתאבדות, והודיע למשפחתה של האחרונה על כוונותיה של בתם. כתוצאה מכך, ▬ חזרה לאיזור שכם ומשם נמלטה לירדן.

13. הנאשם פנה אל משרדו של ראש המודיעין הכללי ברשות הפלסטינית, ▬ והביא משם חומרי נפץ. הנאשם ייצר מחומרי הנפץ הנ"ל מטען חבלה לצורך ביצוע פיגוע ההתאבדות המתוכנן.

14. לאחר מכן, הנאשם ו▬ הכינו את חגורת הנפץ.

15. הנאשם גייס לצורך העברתו של ▬ אל תוך מדינת ישראל לביצוע פיגוע ההתאבדות המתוכנן את ▬.

16. ▬ גייס לצורך העברתו של מחמד חשאיקה אל תוך מדינת ישראל לביצוע פיגוע ההתאבדות המתוכנן את ▬.

17. ביום 20.03.02, ▬ נפגש ברמאללה עם ראש "התנזים" של הפת"ח באיזור, ▬. ▬ מסר ל▬ כי הנאשם עומד לשלוח מחבל מתאבד לצורך ביצוע פיגוע התאבדות בתוך מדינת ישראל. ▬ ביקש לדעת אם הנאשם זקוקים לדבר מה לצורך ההוצאה לפועל של הפיגוע המתוכנן. למרות ש▬ השיב בשלילה על השאלה הנ"ל, ▬ מסר לאחרון סכום של 600 דולר ארה"ב.

18. ביום 21.03.02 הנאשם נפגש ברמאללה עם ▬ ועם ▬. הנאשם הסביר ל▬ כי עליה להוביל את המחבל המתאבד אל ירושלים על מנת שיבצע שם את פיגוע ההתאבדות המתוכנן וזאת מאחר שהיא מכירה היטב את ירושלים ואת הדרכים המובילות אליה.

19. באותו היום, הנאשם, ▬ ומחמד חשאיקה ביקרו במשרדו של ▬, מזכ"ל ארגון הפת"ח באיזור. שם, הנאשם קיבל מידי ▬ כסף ושני רימוני-יד לצורך ההוצאה לפועל של הפיגוע המתוכנן.

20. הנאשם וחבריו הנ"ל רכשו בכסף האמור בגדים עבור מחמד חשאיקה, אשר בהם ביצע האחרון את פיגוע ההתאבדות, אשר יתואר בהמשך.

21. לאחר מכן, הנאשם עם חבריו הנ"ל הגיע לדירה ברמאללה, אשר בה היו מחמד חשאיקה הנ"ל, ▬. הנאשם ו▬ הכינו את מחמד חשאיקה לקראת ביצוע פיגוע ההתאבדות המתוכנן והלבישו עליו את חגורת הנפץ הנ"ל.

22. לאחר מכן, הנאשם יצר קשר עם ▬ וביקש מהאחרונה לסייע בהעברת מחבל מתאבד לירושלים.

23. לאחר זמן מה, ▬ הגיעה אל הנאשם וחבריו הנ"ל.

24. בשעות הצהרים, ביום 21.03.02, ▬ הסיע מרמאללה למחסום קלנדיה, ברכב שכור, את מחמד חשאיקה שנשא על גופו את חגורת הנפץ הנ"ל וכן את ▬ שליוו את המחבל המתאבד הנ"ל.

25. לאחר מכן, ולאחר שנפרד בנשיקה ממחמד חשאיקה, ▬ חזר לרמאללה.

17

ת.ת. 422/02 מתוקן

P 5: 33

26. הובילו את מחמד חשאיקה, אשר נשא על גופו את חגורת הנפץ הנ"ל, לרחוב המלך ג'ורג' בירושלים. השתיים בחרו את המקום מכיוון שהוא הומה אדם בשעות אחרי הצהריים ולכן השתיים החליטו כי הוא "מתאים" לביצוע פיגוע ההתאבדות המתוכנן.

27. לאחר ש עזבו את מחמד חשאיקה ברחוב המלך ג'ורג', מחמד חשאיקה הגיע אל מעבר החצייה הנמצא בסמוך לבית-קפה "ארומה" וסמוך לצומת הרחובות המלך ג'ורג' וההסתדרות.

28. במקום האמור, בסמוך לשעה 16:20 ביום האמור, מחמד חשאיקה הפעיל את מטען החבלה, אשר אותו נשא על גופו, כשהוא נמצא בתוך קהל האנשים וזאת במטרה לגרום למותם של אנשים רבים ככל האפשר.

29. לאחר שלנאשם וחבריו נודע על ביצוע פיגוע ההתאבדות המתוכנן, העביר קלטת וידאו עם "צוואתו" המצולמת של מחמד חשאיקה לידי עיתונאי .

30. לאחר מכן, הנאשם ו פנו אל מזכ"ל ארגון הפת"ח באיזור, וניסחו הודעה, אשר בה "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, נטלו אחריות על ביצוע פיגוע התופת המתואר לעיל. לאחר עריכת ההודעה, ניגש אל משרדי חברת החדשות ANN ושם צולם כשהוא מקריא את ההודעה הנ"ל של נטילת האחריות לפיגוע המתואר לעיל.

31. במעשיו המתוארים לעיל, הנאשם הנ"ל, במועד האמור, גרם בכוונה למותו של **רס"מ גדי שמש ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר לעיל.

**פרט ארבעים:** (פ.א. 2069/02 מת"ם י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם בכוונה למותה של **ציפורה שמש ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום השלושים ותשעה. **ציפורה שמש ז"ל היתה בעת מותה בחודש הרביעי להריון.**

**פרט ארבעים ואחד:** פ.א. (2069/02) מת"ם י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם בכוונה למותו של **יצחק כהן ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום השלושים ותשעה.

**פרט ארבעים ושניים:** (פ.א. 2069/02 מת"ם י-ם)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, ניסה לגרום למותם של אזרחים רבים ככל הניתן.
כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום השלושים ותשעה, נפצעו **81 בני-אדם**.

**פרט ארבעים ושלושה:** (פ.א. 2069/02 מת"ם י-ם)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ותשעה, במעשיו המתוארים בפרט האישום השלושים ותשעה, גרם נזק כבד לבניינים ובתי-עסק הסמוכים למקום האמור וכן לכלי רכב רבים, אשר היו בסמוך למקום המתואר בפרט האישום השלושים ותשעה, אשר בו הפעיל מחמד חשאיקה את מטען החבלה, כפי שתואר בפרט האישום השלושים ותשעה.

**פרט ארבעים וארבעה:**

**מהות העבירה:** ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ▓▓▓▓, אשר הכיר לנאשם את ▓▓▓▓ מסר לנאשם כי ביכולתו של ▓▓▓▓ להביא לנאשם חומרים כימיים על מנת שהנאשם ייצר מהם מטעני חבלה. ▓▓▓▓ ביקש כי הנאשם ייצר עבורו מטעני חבלה על מנת שהאחרון יבצע באמצעותם פיגוע נגד ג'יפ של צה"ל. הנאשם הסכים לבקשה האמורה.
לאחר יומיים, ברמאללה או בסמוך לכך, הנאשם ייצר מטען חבלה מצינור ברזל וחומרים כימיים שהביא ▓▓▓▓. ▓▓▓▓ הסביר לנאשם כי באמצעות מטען החבלה האמור הוא יבצע פיגוע נגד ג'יפ של צה"ל בכביש עוקף רמאללה.

19

ת.ת. 422/02 מתוקן

פרט ארבעים וחמישה:

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״י-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ███████, פעיל בארגון הג׳יהאד האסלאמי הפלסטיני. ███████ הציע לבצע פיגוע התאבדות תוך שיתוף פעולה בין "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת״ח, לבין הזרוע הצבאית של הג׳יהאד האסלאמי הפלסטיני. הנאשם הסכים להצעה האמורה. הנאשם ו-███████ סיכמו כי יפעלו במשותף על מנת להוציא לפועל פיגוע התאבדות שבו ישתתפו שני מחבלים מתאבדים - אחד מטעם "גדודי חללי אלאקצא" והשני מטעם הגא״פ. הנאשם הסכים להצעה האמורה, אך ביקש כי ███████ ידאג להבאת כלי נשק וחומרי נפץ.
הנאשם אף קיבל מ-███████ הלוואה בסך 1,000 דינר ירדני לצורך רכישת כלי הנשק. התכנית האמורה לא יצאה אל הפועל עקב מעצרו של הנאשם על-ידי כוחות הביטחון הישראליים ביום 30.03.02.

פרט ארבעים ושישה:

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״י-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בסוף חודש מרץ 2002 או בסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ███████. הנאשם הציע ל-███████ לבצע פיגוע ירי והאחרון הסכים. ███████ הבהיר לנאשם כי הוא יודע להשתמש באקדח. ███████ סיפר לנאשם כי ישנו קצין יהודי בכיר אשר נוהג להגיע למכולת בעזריה כשהוא חמוש במיני-עוזי, וכן ישנם שוטרי מג״ב המגיעים לאותה מכולת בעזריה. הנאשם סיכם עם ███████ כי הנאשם יעביר לידי האחרון אקדח ו-███████ ירצח באמצעות האקדח האמור את הקצין הנ״ל ובמידת האפשר ירצח גם את שוטרי מג״ב בעת שיגיעו לעזריה. ███████ הסכים להצעת הנאשם. באותו היום הנאשם קיבל מידי ███████ אקדח 14 . לאחר יומיים הנאשם העביר את האקדח הנ״ל לידי ███████ לצורך ביצוע הפיגוע המתוכנן. הנאשם הורה ל-███████ לבצע את הפיגוע המתוכנן עוד באותו הערב.
באותו הערב ███████ יצר קשר עם הנאשם דרך ███████ ומסר כי לא ביצע את הפיגוע המתוכנן. הנאשם אמר ל-███████ למסור ל-███████ שיבצע את הפיגוע המתוכנן בעוד יום-יומיים.
מספר ימים לאחר מכן, הנאשם נעצר על-ידי כוחות הביטחון הישראליים.

עדי התביעה:

1. ███████ לח"ק יהודה. [גובה אמרות הנאשם מיום 31.03.02, 28.04.02, 29.04.02, 08.05.02 ומגיש כתבי-ידו של הנאשם בערבית + זכ"די תפיסה וסימון + שרטוטים בכתב-ידו של הנאשם]
2. ███████ לח"ק יהודה. [גובה אמרת הנאשם מיום 04.04.02 ומגיש כתב-ידו של הנאשם בערבית]
3. ███████, מג"ב בית-שמש. [גובה אמרת הנאשם מיום 15.05.02]
4. ███████, מפלג מיעוטים, י-ם. [גובה שתי אמרות הנאשם מיום 28.05.02]
5. ███████ 040951592. (עצור)
6. ███████. (עצור)
7. ███████. (עצור) (ת.ת. 733/02)
8. ███████ (עצור) (ת.ת. 320/02)
9. ███████. (אסיר)
10. ███████ (עצור)
11. ███████ (עצור)
12. ███████. (עצורה) (ת.ת. 595/02)
13. ███████ (עצור)
14. ███████. (עצור)
15. ███████. (עצור)
16. ███████ (עצור)
17. ███████. (עצור)
18. ███████ (עצור)
19. ███████. (עצור)
20. ███████. (עצור)
21. ███████ (עצור)
22. ███████ עצור
23. ███████. (עצורה) (ת.ת. 451/02)
24. ███████. (עצור) (ת.ת. 444/02)
25. ███████. (עצורה) (ת.ת. 484/02)
26. ███████ (עצור) (ת.ת. 427/02)
27. ███████. (עצורה)
28. ███████ (עצור)

פ.א. 4753/01 עפולה

29. ███████ תחנת עפולה. [מגיש דו"ח פעולה + לוחות תצלומים]
30. ███████, מז"פ - תחנת עפולה. [מגיש לוח תצלומים]
31. ███████, תחנת עפולה. [מגיש דו"ח פעולה]
32. ███████ תחנת עפולה. [מגיש דו"ח פעולה]
33. ███████, תחנת עפולה. [מגיש דו"ח פעולה]
34. ███████ תחנת עפולה. [מגיש דו"ח זכ"ד]
35. ███████, תחנת עפולה. [מגיש טופס לוואי למוצגים]
36. ███████, תחנת עפולה. [מגיש זכ"ד]
37. ███████, תחנת עפולה. [מגיש דו"ח תפיסה וסימון]
38. ███████ תחנת עפולה. [מגיש דו"ח פעולה]
39. ███████, תחנת עפולה. [מגיש דו"ח תפיסה וסימון + ת.ז. שנתפסה בשטח]
40. תעודות רפואיות של הפצועים.
41. הודעת פטירה ע"ש מיכל מור ז"ל.
42. הודעת פטירה ע"ש נועם גוזובסקי ז"ל.
43. ███████, המכון הלאומי לרפואה משפטית. [מגיש חוו"ד מומחה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)

רשימת עדים נוספת בנוגע לפצועים והרוגים בפיגוע בתחנה המרכזית בעפולה ביום 27.11.01 תימסר במהלך המשפט

21

ת.ת. 422/02 מתוקן

### ת.פ.א. 412/02 בנימין

44. ███ תחנת בנימין. [עדות]
45. ███ תחנת בנימין. [עדות]
46. ███ תחנת בנימין. [נפצע קשה בפיגוע]
47. ███ (פרטים בתביעה) [חייל מילואים היה במחסום בעת הפיגוע - ראה את המחבלת המתאבדת]
48. ███. (פרטים בתביעה) [מפקד כוח מילואים במחסום בעת הפיגוע, שוחח עם המחבלת המתאבדת לפני הפיצוץ]
49. ███. (פרטים בתביעה) [חיל מילואים במחסום בעת הפיגוע - בדק את הרכב שבו נסעה המחבלת המתאבדת]
50. ███. (פרטים בתביעה) [הגיע למקום מיד לאחר הפיגוע]
51. ███, תחנת מודיעין. [מגיש דו״ח פעולה]
52. ███ תחנת מודיעין. [מגיש דו״ח פעולה]
53. ███, מטא״ר, אגף השיטור והביטחון, מדור מעבדות חבלה, שלוחת תל-אביב. [מגיש חוו״ד מומחה ראשונית וחוו״ד מומחה מתיק זב/23 - 0821/2002 + תצלומים + טופס לוואי למוצגים] (יזומן לפי הדרישה המפורשת של הסניגוריה בלבד)
54. ███ מז״פ - המעבדה האנליטית, מטא״ר - ירושלים. [מגישה חוו״ד מומחה מתיק ז״ב/33 - 54484/02] (תזומן לפי בקשה מפורשת של הסניגוריה בלבד)

### ת.פ.א. 580/02 שפט

55. ███, מג״ב סיוון, פלוגה מ״ב. (פרטים בתביעה) [עדות]
56. ███, מג״ב לביא. (פרטים בתביעה) [עדות]
57. ███, מג״ב לביא. (פרטים בתביעה) [עדות]
58. ███ מג״ב לביא. (פרטים בתביעה) [עדות]
59. ███, מת״ס, ימ״ר - י-ם. [מגיש דו״ח פעולה/תפיסה וסימון + טופס לוואי למוצגים]
60. ███ מז״פ - תחנת ציון. [מגיש לוחות תצלומים]
61. ███ מת״ס, ימ״ר - י-ם. [מגיש זכ״ד + תמונות פולרואיד]

### 2069/02 מת״ס י-ם

62. ███ מעבדת חבלה, מטא״ר - ירושלים. [מגיש דו״ח תפיסה וסימון + חוו״ד מומחה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
63. ███, המעבדה האנליטית, מטא״ר - ירושלים. [מגישה חוו״ד מומחה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)
64. ███ מז״פ תחנת ציון - ירושלים. [מגיש תמונות מזירת הפיגוע]
65. ███. (פרטים בתביעה) [זיהוי גופתו של גדי שמש ז״ל]
66. ███ (פרטים בתביעה) [זיהוי גופתו של גדי שמש ז״ל]
67. ███ (פרטים בתביעה) [זיהוי גופתו של גדי שמש ז״ל]
68. ███ (פרטים בתביעה) [זיהוי גופתה של ציפורה שמש ז״ל]
69. ליאור מיקא, ת.ז. 036386753. (פרטים בתביעה) [ראה את המחבל מתפוצץ, נפצע בפיגוע]
70. אילן באואר, מס׳ דרכון ארה״ב 700767376. (פרטים בתביעה) [היה יחד עם בנו הקטין סמוך למחבל בעת הפיצוץ, שניהם נפצעו]
71. שירן דרוויש, ת.ז. 039888862. (פרטים בתביעה) [היתה בסמוך למחבל בעת הפיצוץ, נפגעה]
72. חזקיה לנשטיין, מס׳ דרכון הולנדי 115402413. (פרטים בתביעה) [נפצע בפיגוע, ראה את המחבל בעת הפיצוץ]
73. מריון קמפלר, ת.ז. 016432148. (פרטים בתביעה) [נפגעה בפיגוע]
74. אסי ארמוזה, ת.ז. 051910735. (פרטים בתביעה) [נפצעה בפיגוע]
75. לורנס סלם, ת.ז.312738537. (פרטים בתביעה) [נפגע קל בפיגוע]
76. טל כהן, ת.ז. 029506270. (פרטים בתביעה) [נפצע בפיגוע]
77. פייזולה חיים יעקוביאן, ת.ז. 011573441. (פרטים בתביעה) [נפצעה בפיגוע, נגרם נזק לחנותה]
78. אלי לוי, ת.ז. 033643438. (פרטים בתביעה) [נפגע קל בפיגוע]
79. נתנאל גדעון, ת.ז. 012176707. (פרטים בתביעה) [נפגע קל, חנותו נפגעה]
80. אסטריד (רבקה) גורנו, ת.ז. 301921169. (פרטים בתביעה) [נפצעה בפיגוע]
81. מזל חכמוב, ת.ז. 304119407. (פרטים בתביעה) [נפצעה בפיגוע]
82. בשמת כהן, ת.ז. 061273413. (פרטים בתביעה) [נפצעה בפיגוע]
83. משה פיד, ת.ז. 015776636. (פרטים בתביעה) [נפגע קל בפיגוע]
84. יפה לוי, ת.ז. 055466924. (פרטים בתביעה) [נפגעה קל בפיגוע]



ת.ת. 422/02 מתוקן

22

P 5: 38

85. ████████████ (פרטים בתביעה) [ראה את המחבל בעת הפיצוץ].
86. ████████████ (פרטים בתביעה) [היתה סמוך למקום הפיצוץ].
87. ████████████ (פרטים בתביעה)צ [עד ראיה, טיפל בפצועים]
88. ████████████ (פרטים בתביעה) [נגרם נזק לחנותו]
89. ████████████ המכון הלאומי לרפואה משפטית. [מגישה חווי"ד מומחה] (תזומן לפי דרישה מפורשת של התביעה בלבד)
90. ████████████ המכון הלאומי לרפואה משפטית. [מגיש חווי"ד מומחה] (יזומן לפי דרישה מפורשת של התביעה בלבד)
91. תעודת פטירה - יצחק כהן ז"ל.
92. רשימת נפגעים מהפיגוע של עיריית ירושלים - מוקד 106. (רשומה מוסדית)
93. תעודות רפואיות.

רשימת עדים נוספת בנוגע לפצועים והרוגים בפיגוע ברחוב המלך ג'ורג' בירושלים ביום 21.03.02 תימסר במהלך המשפט

מיכאל קוטליק,    סרן
תובע          צבאי

תאריך: 14.01.2003
סימוכין: 422-02 מתוקן

23

ת.ת. 422/02 מתוקן