

PLAINTIFF'S EXHIBIT 357

| | | |
|---|---|---|
| Israel | Defense | Forces |
| Before the Military Court | Court Case: | 3459/02 |
| In Beit El | Prosecution case: | 444/02 |
| Before a panel | Detailed incident case: | 1282/02 Binyamin |
| | | 1283/02 Binyamin |
| | | 1284/02 Binyamin |
| | | 1285/02 Binyamin |
| | | 234/01 Jerusalem Special Duties Department |
| | | 457/01 Binyamin |
| | | 2159/01 Binyamin |
| | | 7915/01 Zion |
| | | 481/01 Zion |
| | | 8379/01 Zion |
| | | 39/02 Binyamin |
| | | 502/02 Zion |
| | | 483/02 Shafat |
| | | 4258/02 Yarkon |
| | | 568/02 Shafat |
| | | 783/02 Binyamin |

[Stamp] This indictment was received _____
on date: October 1, 2002
and entered into the log in case _____
by the court [Signature]

### In the trial between the military prosecutor – The Prosecutor

- v. -

Ahmed Taleb Moustafa Barghouti (alias: "Al Faransi")
Identity No. 994466860, born on March 15, 1976, a resident of Albira – Ramallah
detained since April 15, 2002

### - The Defendant -

### Amended Indictment

**The above mentioned Defendant is accused hereby of committing the following offenses:**

**First count:**

**Nature of the offense:** Membership in an illegal organization, an offense pursuant to Regulations 84 (1) (A) and 85 (1) (A) of the Defense Regulations (Time of Emergency), 1945.

[Stamp] P 5: 175

Prosecution Case 444/02 Amended

1

**Details of the offense:** The above mentioned Defendant, in the Area, from late 2000 until the day of his arrest, was a member or acted as a member of an illegal organization, as follows:

The above mentioned Defendant, from early 2006 until the day of his arrest, acted as the driver and bodyguard of Marwan Barghouti, who is the head of the "Tanzim" of the Fatah.

The above mentioned Defendant, from early 2001 until the day of his arrest, operated within the framework of the "Tanzim" of the Fatah, which is an illegal organization, and conducted military activity against Israeli targets.

During the course of his military activity, the Defendant regularly received financial assistance from operatives of the "Tanzim" of the Fatah. The Defendant received through his bank account an amount of approximately NIS 7,000 from Nasser Mahmoud Aweis, a senior military operative from the Nablus area, and an amount of approximately NIS 10,000 from Faraj Barghouti, a senior operative in the Ramallah area.

[Stamp] P 5: 175 [continued]

Prosecution Case 444/02 Amended

During his military activity, the Defendant was in constant contact with the Head of the "Al Aqsa Martyrs' Brigades", the military arm of the "Tanzim" of the Fatah in Nablus – Nasser Mahmoud Aweis, the Head of the "Al Aqsa Martyrs' Brigades" in the Tul-Karm Area – Raed Karmi, the Head of the "Al Aqsa Martyrs' Brigades" in the Jenin area – Abed Karim Rateb Younes Aweis, the Head of the "Al Aqsa Martyrs' Brigades" in the Bethlehem and Hebron area – Jihad Jaara, the Head of the "Al Aqsa Martyrs' Brigades" in the Area – Nasser Mohamed Yusef Naji (Abu-Hamid), and with the Head of the "Tanzim" of the Fatah – Marwan Barghouti.

Within the framework of his above mentioned military activity, the Defendant distributed in Ramallah leaflets on taking the responsibility for attacks that were carried out in Israel and in the Area by operatives of the "Tanzim" of the Fatah.

**Second count:** Holding an office in an illegal organization, an offense under Regulations 84(1) (A) and 85(1) (B) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from 2001 until the day of his arrest, managed or helped in the management of an illegal organization, or held any office or position in or under the authority of an illegal organization, as follows**:**

The above mentioned Defendant, during the period set forth, was one of the persons responsible for the "Al Aqsa Martyrs Brigades" Organization (Kataib Shuhada al-Aqsa) in the Ramallah area – the military arm of the "Tanzim" of the Fatah, which is an illegal organization. "The Al Aqsa Martyrs Brigades" were responsible for the commission of a large number of attacks against IDF soldiers and Israeli civilians both in the Area and within the territory of the State of Israel, in which a large number of Israeli civilians and IDF soldiers were killed.

Among other things, the Defendant served as the contact person between the other regional coordinators of the "Al Aqsa Martyrs Brigades" and the head of the "Tanzim" of the Fatah – Marwan Barghouti.

**Third count:**

**Nature of the offense:** Execution of a service for an illegal organization, an offense pursuant to Regulations 84(1) (A) and 85(1) (C) of the Defense Regulations (Time of Emergency), 1945.

[Stamp] P 5: 176

Prosecution Case 444/02 Amended

**Details of the offense:** The above mentioned Defendant, in the Area, during the period set forth in the first count of the indictment or thereabouts, performed some work or executed some service for an illegal organization, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, on a large number of different opportunities, distributed money to military operatives of the "Tanzim" of the Fatah. The Defendant frequently received money from the operative of the "Tanzim" of the Fatah Ali Faraj Barghouti and distributed it to many people who carried out attacks against IDF soldiers and Israeli civilians. On each opportunity, the Defendant provided to each of the operatives various amounts of money, from 100 to 300 U.S. dollars. In addition, the Defendant regularly transferred larger amounts to military operatives in the "Tanzim" of the Fatah through bank transfers.

Among other things, the Defendant transferred to Mantzour Sharam, a senior military operative in the "Tanzim" of the Fatah in Tul-Karm, who is deputy of Raed Karmi – the Head of the "Al Aqsa Martyrs Brigades" in Tul-Karm, which is the military arm of the "Tanzim" of the Fatah, the amount of NIS 3,000.

In addition, the Defendant transferred to Nasser Mohamed Yusef Naji (Abu-Hamid), who is the Head of the "Al Aqsa Martyrs Brigades" amounts from NIS 1,000 to 2,000 on approximately 6-7 different occasions, for the purpose of purchasing cartridges.

In addition to money, the Defendant regularly provided military operatives of the "Tanzim" of the Fatah cellular telephone handsets for the purpose of their military activity.

[Stamp] P 5: 176 [continued]

Prosecution Case 444/02 Amended

**Fourth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in 1998 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in the Amari Refugee Camp or thereabouts, purchased from Samer Almimi an MP-5 submachine gun for 4,000 Jordanian dinars and a short barreled M-16 assault rifle with telescopic sights in exchange for 5,000 Jordanian dinars, without a permit signed by or on behalf of the commander of the Area. The above mentioned Defendant, during the years 2001-2002, regularly delivered the above mentioned MP-5 submachine gun to various persons for them to use it to carry out shooting attacks against Israeli civilians, as will be described further in the indictment.

**Fifth count:**

**Nature of the offense:** Possession of a firearm, an offense pursuant to Section 53(A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, during the period set forth in the first count of the indictment, possessed a firearm, ammunition, bomb, hand grenade or explosive or incendiary device, a tool or object or thing that is planned to cause or is capable of causing death or severe injury, without a permit certificate granted by or for a military commander, as follows:

The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, kept in his possession an MP-5 submachine gun, a pistol and a short barreled M-16 assault rifle with telescopic sights, without a permit certificate granted by or for a military commander.

**Sixth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

[Stamp] P 5: 177

Prosecution Case 444/02 Amended

5

**Details of the offense**: The above mentioned Defendant, in the Area, in late 2000 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, at the time set forth, [Translator's note: as written] in Ramallah or thereabouts, delivered to Nasser Mohamed Yusef Naji (Abu-Hamid) – the head of the military arm of the "Tanzim" of the Fatah, a Kalashnikov assault rifle and 50 cartridges for a Kalashnikov assault rifle, without a permit signed by or on behalf of the commander of the Area. Nasser Abu-Hamid delivered the above mentioned Kalashnikov assault rifle and the above mentioned cartridges to Ahmad Andour, an operative in Force 17 of the Palestinian Authority. Ahmad Andour reported to Nasser Abu-Hamid that he had carried out a shooting attack using the above mentioned Kalashnikov assault rifle in which the late Kahane couple were killed, and carried out a shooting attack in which an Israeli civilian was killed, using the above mentioned cartridges.

**Seventh count**:

**Nature of the offense**: Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, from late 2000 until the day of his arrest or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, during the period set forth, in Ramallah or thereabouts, on many different occasions, delivered to Nasser Mohamed Yusef Naji (Abu-Hamid) – the head of the military of the "Tanzim" of the Fatah, large amounts of money totaling some tens of thousands of shekels and tens of thousands of U.S. dollars for the purpose of purchasing arms and cartridges for carrying out shooting attacks against IDF soldiers and Israeli civilians. The Defendant also regularly kept at home cartridges that had been purchased with this money and deliver them to Nasser Abu-Hamid and the latter's colleagues as necessary, without a permit signed by or on behalf of the commander of the Area.

[Stamp] P 5: 177 [continued]

Prosecution Case 444/02 Amended

**Eighth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, from late 2001 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, delivered to Nasser Mohamed Yusef Naji (Abu-Hamid), the head of the "Al Aqsa Martyrs Brigades", the military arm of the "Tanzim" of the Fatah, 100 cartridges for an M-16 assault rifle, without a permit signed by or on behalf of the commander of the Area.

**Ninth count:**

**Nature of the offense:** Undermining the security of the area, an offense pursuant to Section 53(A) (4) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2001 or thereabouts, committed an act or an omission constituting an undermining of or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory, institute or equipment that is used or is capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the Israel Defense Forces, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, purchased a stolen white Mazda vehicle, a recent model. The above mentioned Defendant delivered the above mentioned vehicle to Muhannad Abu Halawa, who departed in the above mentioned vehicle to execute attacks against Israeli civilians and IDF soldiers in the Area.

**Tenth count: (Detailed Incident 234/01 Jerusalem Special Duties Department)**

[Stamp] P 5: 178

Prosecution Case 444/02 Amended

7

**Nature of the offense:** Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on January 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, at the time set forth, met in Ramallah Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha") and Jad Ibrahim Musa Maala.

2. Jad Maala and Mohamed Mousleh asked the Defendant for a vehicle for the purpose of carrying out a shooting attack against Jews. The Defendant provided Jad Maala and Mohamed Salah a stolen silver Volkswagen Bora vehicle, bearing Israeli license plates, in order for his above mentioned colleagues to carry out a shooting attack from this vehicle with the intent of causing the death of Israeli civilians.

3. Mohamed Mousleh drove the Volkswagen vehicle while Jad Maala sat next to him armed with a "16" pistol.

4. Jad Maala and Mohamed Mousleh traveled in the Volkswagen vehicle in the Atarot area in order to search for an Israeli vehicle with the aim of carrying out a shooting attack against it and causing the death of the vehicle occupants.

5. At about 6:15 p.m., in the Atarot Industrial Zone, Jad Maala and Mohamed Mousleh noticed a GMC Safari vehicle, license No. 7901306 (hereinafter: "the Vehicle"), which the late Elazar Akiva Fashkos drove.

6. Jad Maala and Mohamed Mousleh started to drive after the Vehicle. The Defendant and Mohamed Mousleh followed the Vehicle from the Atarot Industrial Zone to A-Ram Junction and back.

7. When the vehicle returned to the Atarot Industrial Zone and drove on the main road, Jad Maala and Mohamed Mousleh drove the Volkswagen vehicle near the Vehicle.

[Stamp] P 5: 178 [continued]

Prosecution Case 444/02 Amended

8. At this stage, Jad Maala opened the window and fired with the above mentioned "16" pistol approximately 7 rounds at the Vehicle with the intent of causing the death of the driver of the Vehicle. A number of bullets that were fired by Jad Maala hit the Vehicle, one of which hit the late Elazar Akiva Fashkos, who was driving the vehicle in the neck and another hit him in the chest.

9. Once Jad Maala and Mohamed Mousleh saw that the vehicle had stopped, the two escaped in the Volkswagen vehicle to Ramallah.

[Stamp] P 5: 178 [continued]

Prosecution Case 444/02 Amended

10. In Ramallah, Jad Maala and Mohamed Mousleh returned the Volkswagen vehicle to the Defendant and reported to him on the attack that they had carried out.

11. A day later, the Defendant delivered to Jad Maala approximately 300 U.S. dollars for carrying out the above mentioned attack. The Defendant received the above mentioned money from Ali Faraj Barghouti.

12. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Elazar Akiva Fashkos**, who died as a result of the impact of the bullets that were fired by Jad Maala as described above.

**Eleventh count: (Detailed Incident 457/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on February 25, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, at the time set forth, met in Ramallah Muhannad Abu Halawa, Mohamed Abed Rahman Salam Mousleh ("Abu Satha") and Tarek Malahi (A-Nuf).

2. The Defendant and his above mentioned colleagues discussed the situation in the Area. The Defendant and his above mentioned colleagues contended that there was no activity against Israeli targets. The Defendant asked his above mentioned colleagues what could be done to improve the situation. The above mentioned colleagues of the Defendant asked the Defendant to provide them a vehicle and weapons and they would carry out an attack against Israeli civilians with the aim of causing their death.

3. The Defendant consented to the above mentioned proposal. The Defendant delivered to his above mentioned friends his vehicle, a gray Volkswagen Bora, 2001 model, bearing Israeli license plates, and an MP-5 submachine gun with a magazine and cartridges.

4. Muhannad Abu Halawa, Mohamed Mousleh (alias: "Abu Satha") and Tarek Malahi (A-Nuf) traveled in the vehicle of the Defendant, armed with the above mentioned MP-5

[Stamp] P 5: 179

Prosecution Case 444/02 Amended

      submachine gun, which they had received from the Defendant. The above mentioned colleagues of the Defendant reached the Atara Bridge area.

5. At about 1:15 p.m., the above mentioned colleagues of the Defendant noticed a GMC Vandura vehicle, license No. 3082518, which Yosef Cohen was driving, this vehicle departing from the settlement Ateret and turning towards the Atara Bridge.

6. The above mentioned colleagues of the Defendant decided to carry out a shooting attack against the above mentioned GMC vehicle with the intent of causing the death of its occupants.

7. The above mentioned colleagues of the Defendant decided to wait until the Citroen vehicle that was driving in front of them would overtake the GMC vehicle and then [they themselves would] overtake the GMC vehicle and carry out the planned shooting attack against it.

8. In the above mentioned Citroen vehicle, William Sameh Fares el Khatib (Rimawi), Rebhi Zuhdi Alamsar (Rimawi) and Akram Abdullah Mohamed Qassam (Azawi), were traveling, armed with 2 Kalashnikov assault rifles and an M-16 assault rifle. The above mentioned occupants of the Citroen vehicle opened fire using the weapons above at the above mentioned GMC vehicle with the intent of causing the death of its occupants. 29 bullets that were fired by these persons hit the above mentioned GMC vehicle. Three bullets hit the head and neck of Yosef Cohen, who was driving the above mentioned GMC vehicle. As a result of the impact of these bullets and the impact of fragments throughout his body, Yosef Cohen was severely injured.

9. After the above mentioned colleagues of the Defendant noticed that the GMC vehicle was hit, that it had swerved off the road and the driver of the vehicle was injured as a result of the shooting attack that was carried out from the Citroen vehicle that was driving before them, the colleagues of the Defendant escaped back to Ramallah.

10. In Ramallah, the above mentioned colleagues of the Defendant returned the above mentioned Volkswagen vehicle and the above mentioned MP-5 submachine gun back to the Defendant. Muhannad Abu Halawa, Tarek Malahi (A-Nuf) and Mohamed Mousleh (alias: "Abu Satha") reported to the Defendant that they had carried out a shooting attack using the above mentioned vehicle and weapons and that a Jewish driver had been wounded as a result.

[Stamp] P 5: 179 [continued]

Prosecution Case 444/02 Amended

**Twelfth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

Ziad Hamuda Yaakub Hamuda together with Mamoun Bassam Abdullah Abu-Shama, Haitham Azat, Sa'id Abrash and Ahmad Abu Alam, at the time set forth, decided to carry out a shooting attack against the settlement of Psagot with the aim of causing the death of Israeli civilians.

The above mentioned persons approached the office of Marwan Barghouti, the head of the "Tanzim" of the Fatah. The above mentioned persons met Marwan Barghouti and asked the latter for weapons for carrying out a shooting attack against Israeli civilians in the settlement of Psagot. Marwan Barghouti was happy to hear this plan to carry out a shooting attack at the settlement of Psagot and promised to supply weapons for carrying out the planned shooting attack.

After about a week, Ziad Hamuda and his above mentioned colleagues approached the office of Marwan Barghouti in Ramallah again. Marwan Barghouti was not in his office at that time and the Defendant was the one who talked with Ziad Hamuda and his above mentioned colleagues. The Defendant promised to talk to Marwan Barghouti concerning the request of his above mentioned colleagues to receive weapons for the purpose of carrying out a shooting attack against the settlement of Psagot.

After about three days, Ziad Hamuda and his above mentioned colleagues approached the office of Marwan Barghouti in Ramallah again. These persons again asked Marwan Barghouti for weapons for carrying out a shooting attack against the settlement of Psagot. Marwan Barghouti called Muhannad Abu Halawa, a senior military operative in the "Tanzim" of the Fatah. It was agreed that Muhannad Abu Halawa would meet the above mentioned persons in Manara Square in Ramallah and would to deliver them weapons there for the purpose of carrying out the planned shooting attack.

[Stamp] P 5: 180

Prosecution Case 444/02 Amended

Ziad Hamuda and his above mentioned colleagues met on that day, in Manara Square in Ramallah, Muhannad Abu Halawa. During the said meeting, Muhannad Abu Halawa promised to transfer weapons to them for the purpose of carrying out the planned shooting attack.

That night, the Defendant arrived at the home of Ziad Hamuda in Al-Bira and delivered to Ziad Hamuda an MP-5 submachine gun and cartridges for the purpose of carrying out a shooting attack against Israeli civilians.

After about an hour, Ziad Hamuda departed from his home along with Mamoun Abu-Shama in the vehicle of Ziad Hamuda, while in possession of the above mentioned MP-5 submachine gun. Ziad Hamuda and Mamoun Abu-Shama arrived at a site near the settlement of Psagot. There the two got out of the vehicle. Mamoun Abu-Shama fired all of the cartridges that the Defendant had delivered with the above mentioned MP-5 submachine gun at the settlement of Psagot with the aim of causing the death of the residents of the settlement of Psagot and of IDF soldiers who were in the settlement of Psagot.

Immediately after the shooting, Ziad Hamuda and Mamoun Abu-Shama returned in their above mentioned vehicle to Ramallah.

**Thirteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on June 26, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, in June 2001 or thereabouts, in Ramallah, in the circumstances described in the previous count of the indictment, delivered to Ziad Hamuda Yaakub Hamuda an MP-5 submachine gun for the purpose of carrying out shooting attacks against Israeli civilians and IDF soldiers.

Ziad Hamuda, at the time set forth, with Mamoun Bassam Abdullah Abu-Shama and Haitham Azat, departed from Ramallah towards the road leading from Pisgat Ze'ev to the [neighborhood of French Hill] in Jerusalem, in order to carry out a shooting attack there and cause the intentional death of Israeli civilians. Ziad Hamuda and his above mentioned colleagues departed as set forth armed with an

[Stamp] P 5: 180 [continued]

Prosecution Case 444/02 Amended

MP-5 rifle [Translator's note: as written], which had been delivered to them for this purpose by the Defendant as set forth above, and with a "9" pistol. Ziad Hamuda and his colleagues departed to execute the said attack while possessing a drawing of the [neighborhood of] French Hill, which had been made out by Mamoun Abu-Shama where they had planned to carry out the shooting attack.

Ziad Hamuda and his above mentioned colleagues departed to execute the said attack in arrangement with Muhannad Abu Halawa, and also asked the latter to inform Marwan Barghouti, the head of the "Tanzim" of the Fatah, whether any of the perpetrators of the attack would be killed during the execution of the said shooting attack. Ziad Hamuda and his colleagues were unable to reach the place at which they had planned to carry out the shooting attack due to the large presence of IDF forces in the Hizma area.

[Stamp] P 5: 180 [continued]

Prosecution Case 444/02 Amended

**Fourteenth count**: (Detailed Incident 2159/01 Binyamin)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in August 2001, in Ramallah or thereabouts, met Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha"). Mohamed Mousleh (alias: "Abu Satha") informed the Defendant that he had met a number of operatives of the "Tanzim" of the Fatah, who carried out shooting attacks against Israeli civilians. Mohamed Mousleh asked to receive the approval of the Defendant to join this cell and carry out attacks against Israeli civilians with the intent of causing their death. The Defendant permitted Mohamed Mousleh to joint in the said activity.

2. Mohamed Mousleh met the above mentioned "Tanzim" operatives, who were Hussam Akel Rajb Shahada, Fares Sadak Mohammed Ghanem (alias "al Hittawi") and Tarek Malahi A-Nuf. The above mentioned three persons told Mohamed Mousleh that they intended to carry out a shooting attack with the aim of causing the death of Israeli civilians. The three asked Mohamed Mousleh to provide them weapons for carrying out the planned shooting attack.

3. On August 25, 2001, Fares Ghanem, Hussam Shahada and Tarek A-Nuf approached Mohamed Mousleh and asked for more weapons that day for the purpose of carrying out the shooting attack.

4. On that day, Mohamed Mousleh approached the Defendant. Mohamed Mousleh asked the Defendant for weapons for the purpose of carrying out a shooting attack against Israeli civilians. A short time later, on that day, the Defendant delivered to Mohamed Mousleh an MP-5 submachine gun with a magazine filled with cartridges, in order for Mohamed Mousleh and his above mentioned colleagues to use it to carry out a shooting attack and cause the death of Israeli civilians.

[Stamp] P 5: 181

Prosecution Case 444/02 Amended