5. In the evening hours, on the same day, in Ramallah or thereabouts, Mohamed Mousleh delivered the above mentioned MP-5 submachine gun and ammunition to Fares Ghanem and Hussam Shahada, who arrived in an Isuzu pickup vehicle belonging to Fares, in order for Fares and Hussam to use the above mentioned weapon to carry out a shooting attack and cause the death of Israeli civilians.

6. Immediately after receiving the weapon, Fares Ghanem, Hussam Shahada, Haitham Almutfak Hamdan and Ali Alian departed from Ramallah towards Highway 443 with the aim of carrying out the planned shooting attack there. The above mentioned persons traveled in two vehicles – one was an Isuzu pickup belonging to Fares Ghanem and the other was a stolen Subaru vehicle that Ali Alian had brought for the purpose of carrying out the planned attack.

7. Upon reaching Highway 443, Fares Ghanem continued to travel alone in the Isuzu vehicle, about a kilometer before the Subaru vehicle in which Hussam, Haitham and Ali Alian were traveling, in order to inform his above mentioned colleagues of IDF and police checkpoints on the way.

8. All of these individuals traveled on Highway 443 towards Tel Aviv, Ali driving the Subaru vehicle, while Haitham Hamdan, armed with a Kalashnikov assault rifle, sat next to him, while Hussam Shahada, armed with an MP-5 submachine gun, which the Defendant had delivered to him, sat in the rear seat.

9. On that day, August 25, 2001, at about 10:30 p.m., next to the Dor Energy gas station, the occupants of the above mentioned Subaru vehicle noticed a Volkswagen Passat vehicle, License No. 6902818, in which the late Yaniv and Sharon Ben Sharon with their children and the late Doron Yosef Savari were traveling.

10. Ali Alian, who was driving the Subaru vehicle, overtook the above mentioned Volkswagen vehicle and drove parallel to it. At this stage, Haitham Hamdan ad Hussam Shahada discharged automatic gunfire using the MP-5 submachine gun, which the Defendant had provided, and the Kalashnikov assault rifle, at the above mentioned Volkswagen vehicle with the aim of causing the death of its occupants.

11. A large number of bullets that were fired by Haitham Hamdan and Hussam Shahada hit the Volkswagen vehicle and its occupants.

[Stamp] P 5: 181 [continued]

Prosecution Case 444/02 Amended

12. After the occupants of the Subaru vehicle noticed that the Volkswagen vehicle was zigzagging, they sped up and escaped to the village Beit Likia. There, Fares Ghanem waited for them. Ali Alian, Hussam Shahada and Haitham Hamdan boarded Firs Ghanem's Isuzu vehicle and traveled to the village Beit Sira, where they hid the weapons near Haitham Hamdan's house. Thereafter, Hussam Shahada, Fares Ghanem, Haitham Hamdan and Ali Alian returned to Ramallah in Fares Ghanem's vehicle.

13. Immediately after they returned to Ramallah, Mohamed Mousleh met in Ein Um Sharait Fares Ghanem, who reported to Mohamed Mousleh the attack that had been carried out with the weapon that had been delivered for this purpose by the Defendant.

14. A few days later, Fares Ghanem brought the above mentioned MP-5 submachine gun from Beit Sira and returned it to Mohamed Mousleh. Mohamed Mousleh transferred the above mentioned weapon to the Defendant and reported to the latter the shooting attack that had been carried out with this weapon.

15. The Defendant transferred to the perpetrators of the attack a sum of 500 U.S. dollars for executing this attack. The above mentioned Defendant received this money from Ali Faraj Barghouti.

[Stamp] P 5: 181 [continued]

Prosecution Case 444/02 Amended

16.     The above mentioned Defendant, by his acts described above, caused the intentional death of **the late Yaniv Ben Shalom**, who died of gunshot wounds to his head and back, from bullets that were fired from the MP-5 submachine gun described above, and from a Kalashnikov assault rifle by Haitham Hamdan and Hussam Shahada.

**Fifteenth count**: **(Detailed Incident 2159/01 Binyamin)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the fourteenth count of the indictment, by his acts described in the fourteenth count of the indictment, caused the intentional death of **the late Sharon Ben Shalom**, who died of gunshot wounds to her head and back, from bullets that were fired from an MP-5 submachine gun, which the Defendant delivered as described in the fourteenth count of the indictment, and from a Kalashnikov assault rifle.

**Sixteenth count**: **(Detailed Incident 2159/01 Binyamin)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the fourteenth count of the indictment, by his acts described in the fourteenth count of the indictment, caused the intentional death of **the late Doron Yosef Savari**, who died of gunshot wounds, from bullets that were fired from an MP-5 submachine gun, which the Defendant delivered as described in the fourteenth count of the indictment, and from a Kalashnikov assault rifle.

[Stamp] P 5: 182

Prosecution Case 444/02 Amended

**Seventeenth count:** (Detailed Incident 2159/01 Binyamin)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the fourteenth count of the indictment, by his acts described in the fourteenth count of the indictment, attempted to cause the intentional death of the occupants of the Volkswagen Passat vehicle stated in the fourteenth count of the indictment. As a result of the gunfire set forth in the fourteenth count of the indictment from an MP-5 submachine gun, which the Defendant delivered as described in the fourteenth count of the indictment, and from a Kalashnikov assault rifle, the daughter of the late Ben Shalom couple was slightly injured by fragments in her leg.

[Stamp] P 5: 182 [continued]

Prosecution Case 444/02 Amended

**Eighteenth count:**

**Nature of the offense:** Undermining the security of the area, an offense pursuant to Section 53(A) (4) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in September 2001 or thereabouts, committed an act or an omission constituting an undermining of or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory, institute or equipment that is used or is capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the Israel Defense Forces, as follows:

Nasser Mohamed Yusef Naji (Abu-Hamid) – the Head of the "Al Aqsa Martyrs' Brigades" – the military arm of the "Tanzim" of the Fatah in the Area, Tarek Malahi A-Nuf and Abed Bast Shawabka, approached the above mentioned Defendant, at the time set forth, in Ramallah or thereabouts. The above mentioned persons told the Defendant that they had manufactured a mortar and had also purchased a mortar bomb for NIS 1,500. The above mentioned persons asked the Defendant to give them money, which they had paid for the above mentioned mortar bomb. The above mentioned persons said that they intended to fire the above mentioned mortar bomb towards the settlement of Psagot.

The Defendant asserted to these persons that if they would be able to fire the above mentioned mortar bomb at the settlement of Psagot, he would pay them the money for the bomb.

Later, that night, the above mentioned persons returned to the Defendant and informed him that they had fired the above mentioned mortar bomb towards the settlement of Psagot. The above mentioned persons informed the Defendant that they did not know exactly where the mortar bomb that they had fired impacted. In view of that which has been set forth above, the Defendant refused to pay the above mentioned persons money for the above mentioned mortar bomb.

Later, the Defendant reported the firing of the mortar bomb at the settlement of Psagot by the above mentioned persons to Marwan Barghouti, the Head of the "Tanzim" of the Fatah.

**Nineteenth count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51(A) of the Security

[Stamp] P 5: 183

Prosecution Case 444/02 Amended

Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on September 15, 2001 or thereabouts, caused the intentional death of another person, as follows:

1. Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha"), approached the above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, and stated that Fares Sadak Mohammed Ghanem (alias "al Hittawi") had approached him with another person and asked to receive an MP-5 submachine gun in order to use it to carry out a shooting attack with the aim of causing the death of Israeli civilians. Mohamed Mousleh asked the Defendant to deliver the MP-5 submachine gun to him, after he had already delivered it to Mohamed Mousleh previously for carrying out shooting attacks.

2. The Defendant consented to provide the requested weapon for the purpose of carrying out the planned shooting attack.

3. The Defendant referred Mohamed Mousleh to Khaled Shawish for receiving the above mentioned MP-5 submachine gun. Mohamed Mousleh contacted Khaled Shawish and received from the latter the MP-5 submachine gun of the Defendant. In addition, the Defendant provided Hussam Akel Rajb Shahada a "14" pistol for carrying out the planned shooting attack.

4. Later that day, Mohamed Mousleh delivered the above mentioned MP-5 submachine gun to Fares Ghanem with the aim of the latter using it to carry out a shooting attack and cause the death of Israeli civilians.

5. Later that day, Mohamed Sami Ibrahim Abdullah met Hussam Akel Rajb Shahada, Fares Sadak Mohammed Ghanem (alias "Al Hittawi"), Haitham Almutfak Hamdan and Ali Alian. Hussam Shahada arrived to this meeting armed with an MP-5 submachine gun and a "14" pistol, which the Defendant had supplied to him as set forth above for the purpose of carrying out a shooting attack.

6. At about 10:00 p.m., on September 15, 2001, the above mentioned Defendants traveled from Ramallah to Jerusalem in Fares Ghanem's Isuzu pickup vehicle.

[Stamp] P 5: 183 [continued]

Prosecution Case 444/02 Amended

7.   Fares Ghanem drove the above mentioned Isuzu vehicle and traveled with Mohamed Abdullah and his colleagues in order to show them a place where they would carry out the planned shooting attack and in order to show his colleagues how to escape after carrying out the attack set forth. Fares Ghanem transported his colleagues to Highway No. 9, connecting the Ramot neighborhood to the [neighborhood of] French Hill neighborhood in Jerusalem. Fares Ghanem showed his colleagues where to carry out

[Stamp] P 5: 183 [continued]

Prosecution Case 444/02 Amended

22

the planned attack and how to escape thereafter. At the end of the said visit, the above mentioned gang returned to Ramallah.

8. At about 10:30 p.m. that day, Mohamed Abdullah along with Hussam Shahada and Haitham Hamdan traveled in a stolen gray vehicle with Israeli license plates, which Ali Alian had supplied to them for carrying out the planned attack (hereinafter: the Vehicle). Fares Ghanem drove in front of them, in the above mentioned Isuzu vehicle, in order to inform his colleagues by cellular telephone of police and IDF checkpoints.

9. Mohamed Abdullah drove the above mentioned Vehicle, next to him sat Haitham Hamdan, who was armed with a "14" pistol, which the Defendant had also supplied.

10. The above mentioned gang stopped on Highway No. 9 near a junction leading to the Ramat Shlomo neighborhood and waited for a single Israeli vehicle to arrive at the site with the aim of carrying out a shooting attack against it and causing the death of the occupants of the vehicle.

11. After a few minutes, at about 11:10 p.m., a white Renault express vehicle, license No. 2273706 (hereinafter: the Renault), arrived at the site from the direction of the Ramat Shlomo nationhood and turned to Highway No. 9 towards the Ramot neighborhood.

12. Mohamed Abdullah started to drive after the Renault and overtook it.

13. When the Vehicle was driving parallel to the Renault, Hussam Shahada and Haitham Hamdan opened fire using an MP-5 submachine gun and "14" pistol, which the Defendant had supplied to them, against the occupants of the Renault with the aim of causing their death.

14. A number of bullets that were fired by Hussam Shahada and Haitham Hamdan hit the Renault and the two occupants of the Renault – the late Moshe Weiss and Meir Weisshaus. Thereafter, Mohamed Abdullah continued to travel towards the neighborhood of Ramot and near a site at which a new bridge was being built, turned right to a dirt track leading to Bir Nabala.

[Stamp] P 5: 184

Prosecution Case 444/02 Amended

23

15. Before entering Bir Nabala, Mohamed Abdullah and his colleagues, who were with him in the Vehicle, met Fares Ghanem who was waiting for them at the site in the Isuzu vehicle. From them, they all continued to travel together to Bir Nabala and thereafter escaped to Ramallah.

16. By his acts described above, the Defendant caused the intentional death of **the late Meir Weisshaus**, who died in hospital later that day as a result of gunshot wounds from bullets that were fired by the colleagues of the Defendant using the MP-5 submachine gun and the "14" pistol, which the Defendant had supplied.

**Twentieth count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or outside of it, on September 15, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at about 11:10 p.m., at the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Moshe Weiss, who was driving a white Renault Express vehicle, license No. 2273706, described in the previous count of the indictment. One of the bullets that were fired by the colleagues of the Defendant, as described in the previous count of the indictment, hit the head of Moshe Weiss and severely injured him.

**Twenty first count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or outside of it, on October 3, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

[Stamp] P 5: 184 [continued]

1. The above mentioned Defendant, in early October 2001, in Ramallah or thereabouts, Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha"). Mohamed Mousleh asked

Prosecution Case 444/02 Amended

the Defendant for an MP-5 submachine gun, ammunition for the above mentioned MP-5 submachine gun and a vehicle for the purpose of carrying out a shooting attack against Israeli civilians in Jerusalem with the intent of causing their death.

2. Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha") informed the Defendant that he was planning to carry out the planned attack along with Mohamed Sami Ibrahim Abdullah, Hussam, Akel Rajb Shahada and Fares Sadak Mohammed Ghanem (alias "al Hittawi").

[Stamp] P 5: 184 [continued]

Prosecution Case 444/02 Amended

3. Initially, the Defendant told Mohamed Mousleh to carry out the planned attack from the vehicle of Fares Ghanem. But Mohamed Mousleh contended that he needed two vehicles, with the spotters traveling in the first vehicle and the shooters traveling in the second. In view of this, the Defendant delivered to Mohamed Mousleh a stolen Mazda 323 vehicle bearing Israeli license plates, which he had purchased for that purpose from Iad Alshafai for NIS 5,000.

4. For the purpose of carrying out the planned shooting attack, the Defendant delivered to Mohamed Mousleh an MP-5 submachine gun and ammunition for this MP-5 submachine gun.

5. On October 3, 2001, Mohamed Mousleh departed from Ramallah towards Jerusalem with the aim of carrying out the planned shooting attack, in possession of the above mentioned MP-5 submachine gun and traveling in the above mentioned Mazda vehicle, which Mohamed Abdullah was driving.

6. Fares Ghanem and Hussam Shahada traveled in an Isuzu pickup vehicle belonging to Fares Ghanem before the Mazda vehicle in which Muhammad Mousleh was traveling, with the aim of informing him of police and IDF checkpoints on the way.

7. The above mentioned colleagues of the Defendant arrived at New Beit Hanina in Jerusalem. There, Mohamed Abdullah parked the Mazda vehicle and with his other colleagues hid the above mentioned MP-5 submachine gun in the vehicle.

8. Mohamed Mousleh and Mohamed Abdullah boarded the Isuzu vehicle and from there continued in the Isuzu vehicle with Fares Ghanem and Hussam Shahada towards the Begin Road.

9. The above mentioned colleagues of the Defendant reached the Begin road. From there, Fares Ghanem showed his other colleagues where to carry out the planned shooting attack and how to escape after carrying out the shooting attack. The above mentioned colleagues of the Defendant decided to carry out the planned shooting attack in the first tunnel of the Begin Road from the direction of Ramot, in order for the gunshots to go unheard. Thereafter, all of these persons were to return to Beit Hanina, to the place at which the above mentioned Mazda Vehicle was left.

[Stamp] P 5: 185

Prosecution Case 444/02 Amended

10. Mohamed Mousleh boarded the Mazda vehicle armed with the above mentioned MP-5 submachine gun, while Mohamed Abdullah drove the said Mazda vehicle. Mohamed Mousleh and Mohamed Abdullah drove the Mazda vehicle to the Begin road with the aim of carrying out the planned shooting attack there and causing the death of Israeli civilians.

11. Mohamed Mousleh and Mohamed Abdullah traveled on the road back and forth several times looking for a single Israeli vehicle with the aim of carrying out the planned shooting attack against it with the aim of causing the death of the occupants of the vehicle.

12. At about 11:35 p.m., while driving northward, in the last tunnel in their direction of travel, Mohamed Mousleh and Mohamed Abdullah noticed a Honda Accord vehicle, License No. 1103217, traveling on the Begin road northward. The occupants of the Honda vehicle were Tonie Amiel, Pini Maimon and Pazit Maimon.

13. Mohamed Abdullah overtook the above mentioned Honda Vehicle. While Mohamed Abdullah was driving parallel to the above mentioned Honda vehicle, Mohamed Mousleh fired a single round from the MP-5 submachine gun, which the Defendant had supplied, at the occupants of the Honda vehicle, with the intent of causing their deaths. The bullet that was fired by Mohamed Mousleh did not hit the above mentioned Honda vehicle.

14. After carrying out the said shooting attack, Mohamed Mousleh and Mohamed Abdullah continued their journey towards Highway No. 9 connecting the Ramot neighborhood to the [neighborhood of] French Hill neighborhood.

**Twenty second count: (Detailed Incident 8379/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14(A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or outside of it, on October 3, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

[Stamp] P 5: 185 [continued]

Prosecution Case 444/02 Amended

1. After Mohamed Abed Rahman Salam Mousleh (alias "Abu Satha") and Mohamed Sami Ibrahim Abdullah carried out the shooting attack as described in the previous count of the indictment, the two continued to travel in the Mazda vehicle, which the Defendant had supplied to them as described in the previous count of the indictment, towards Highway No. 9, connecting the Ramot neighborhood to the [neighborhood of] French Hill neighborhood, with the aim of reaching Beit Hanina from there and then continuing to Ramallah.

2. During this journey, Mohamed Mousleh, at the request of Mohamed Abdullah, checked the function of the MP-5 submachine gun, which the Defendant had delivered, and also fired several rounds into the air.

3. During the journey on the above mentioned Highway No. 9, at about 11:45 p.m., Mohamed Mousleh and Mohamed Abdullah noticed a Skoda vehicle, license No. 6567709, which was traveling on Highway No. 9 towards the [neighborhood of] French Hill. Malka Cohen and Pinchas Cohen were traveling in this Skoda vehicle.

4. Mohamed Abdullah, who as set forth was driving the Mazda vehicle, overtook the Skoda vehicle.

[Stamp] P 5: 185 [continued]

Prosecution Case 444/02 Amended

5. While Mohamed Abdullah was driving parallel to the above mentioned Skoda vehicle, Mohamed Mousleh fired the MP-5 submachine gun, which the Defendant had supplied to them for the purpose of carrying out a shooting attack as described in the previous count of the indictment, discharging a few shots at the above mentioned Skoda vehicle with the aim of causing the death of the occupants of the Skoda vehicle.

6. A number of bullets that were fired by Mohamed Mousleh hit the Skoda vehicle. Two bullets that were fired by Mohamed Mousleh hit Pinchas Cohen and another bullet hit Malka Cohen.

7. Pinchas Cohen was moderately injured by gunshot wounds from two bullets in his abdomen, while Malka Cohen, who was 28 weeks pregnant, was moderately injured by a gunshot wound from a bullet to her head.

8. After carrying out the said shooting attack, Mohamed Mousleh and Mohamed Abdullah continued to drive towards the [neighborhood of] French Hill and from there they reached New Beit Hanina. There, Mohamed Mousleh and Mohamed Abdullah parked the above mentioned Mazda vehicle and contacted by telephone Hussam Akel Rajb Shahada and Fares Sadak Mohammed Ghanem (alias "al Hittawi"), who arrived at the site in the Isuzu vehicle belonging to Fares Ghanem in order to pick up Mohamed Mousleh and Mohamed Abdullah, according to the planning set forth in the previous count of indictment.

9. Mohamed Mousleh and Mohamed Abdullah concealed the above mentioned MP-5 submachine gun in the Isuzu vehicle and boarded the Isuzu vehicle.

10. These four persons tried to return from Jerusalem to Ramallah, but were unable to do so because of IDF and police checkpoints. The above mentioned colleagues of the Defendant stayed to sleep overnight in the home of Yasser Abu al Hatib, a friend of Hussam Shahada, in New Beit Hanina in Jerusalem.

11. On the following day, October 4, 2001, Mohamed Mousleh and Mohamed Abdullah returned to Ramallah in the vehicle of Fares Ghanem.

12. After returning to Ramallah, Muhammad Mousleh reported to the Defendant the attacks that he had carried out using the Mazda vehicle and the MP-5 submachine gun that he had received from the Defendant.

[Stamp] P 5: 186

**Twenty third count:**

Prosecution Case 444/02 Amended

29