177. Sergeant Major Eli Kojman, Badge No. 46951, Yehuda Forensic Identification. [submitter of crime scene visit report + photograph tables]

178. First Sergeant Avi Menachem, Badge No. 57556, Binyamin Station. [submitter of exhibit cover form + memorandum + exhibits from card No. 106/02]

179. Samir Karash, Identity No. 080062771 (details in the prosecution) [wounded in the shooting attack]

180. Shaul Beit, M.D., License No. 33027, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of medical report] (will be summoned upon explicit demand of the defense only)

181. Query for finding and projection of vehicle and owner details [institutional record].


    [Signature]
Michael Kotlik, Captain
Military Prosecutor

Date: September 29, 2002

Reference: 444-02 amended

[Stamp] P 5: 208

Prosecution Case 444/02 Amended

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

          Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

          Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 175-208.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 175-208.

                                                                       Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

```
HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2016
I.D.# 2332704
```

| צבא | הגנה | לישראל |
|---|---|---|
| בית המשפט הצבאי | תיק ביה"מ : | 3459/02 |
| בית אל | תיק תביעה : | 444/02 |
| בפני הרכב | תיק פ.א. : | 1282/02 בנימין |
| | | 1283/02 בנימין |
| | | 1284/02 בנימין |
| | | 1285/02 בנימין |
| | | 234/01 מת"מ י-ם |
| | | 457/01 בנימין |
| | | 2159/01 בנימין |
| | | 7915/01 ציון |
| | | 481/01 ציון |
| | | 8379/01 ציון |
| | | 39/02 בנימין |
| | | 502/02 ציון |
| | | 483/02 שפט |
| | | 4258/02 ירקון |
| | | 568/02 שפט |
| | | 783/02 בנימין |

כתב אישום זה נתקבל
בתאריך 1/10/02
ונגרשם בייזו גת"ח
עי ביזני

**במשפט שבין התובע הצבאי - המאשים**

**- נ ג ד -**

אחמד טאלב מוצטפא ברגותי (מכונה "אל פראנסי")
ת.ז. 994466860, יליד 15.03.76, תושב אלבירה - רמאללה
עצור מיום 15.04.02

**- ה נ א ש ם -**

# כתב - אישום מתוקן

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט ראשון:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, החל משנת 1996 ועד ליום מעצרו עבד כנהג וכשומר ראש של מרואן ברגותי, שהוא ראש "התנזים" של הפת"ח.
הנאשם הנ"ל, החל מתחילת שנת 2001 ועד ליום מעצרו פעל במסגרת "התנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, פעילות צבאית נגד המטרות הישראליות.
במהלך פעילותו הצבאית, הנאשם נהג לקבל סיוע כספי מפעילי "התנזים" של הפת"ח. הנאשם קיבל באמצעות חשבון הבנק שלו סכום של כ-7,000 ש"ח מנאצר מחמוד עויס, פעיל צבאי בכיר מאיזור שכם, וכן סכום של כ-10,000 ש"ח מעלי פרג'י ברגותי, פעיל בכיר באיזור ברמאללה.

ת.ת. 444/02 מתוקן      1

במהלך פעילותו הצבאית הנאשם היה בקשר מתמיד עם ראש "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח בשכם - נאצר מחמוד עוויס, ראש "גדודי חללי אלאקצא" באיזור טול-כרם - ראאד כרמי, ראש "גדודי חללי אלאקצא" באיזור ג'נין - עכרים ראתב יונס עוויס, ראש "גדודי חללי אלאקצא" באיזור בית-לחם וחברון - ג'יהאד ג'ערה, ראש "גדודי חללי אלאקצא" באיזור - נאצר מחמד יוסף נאג'י (אבו-חמיד), וכן עם ראש "התנזים" של הפת"ח - מרואן ברגותי.

במסגרת פעילותו הצבאית הנ"ל, הנאשם הפיץ ברמאללה כרוזים בדבר לקיחת האחריות לפיגועים שבוצעו בישראל ובאיזור על-ידי פעילי "התנזים" של הפת"ח.

### פרט שני:

**מהות העבירה**: נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה**: הנאשם הנ"ל, באיזור, החל מתחילת שנת 2001 ועד ליום מעצרו, ניהל או עזר להנהלת התאחדות בלתי מותרת, או החזיק בכל משרה או עמדה בהתאחדות בלתי מותרת או תחת מרותה, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, היה אחד האחראיים על ארגון "גדודי חללי אלאקצא" ("כותאיב שוהאדה אלאקצא") באיזור רמאללה - הזרוע הצבאית של "התנזים" של הפת"ח, שהוא התאחדות בלתי מותרת. "גדודי חללי אלאקצא" היו אחראיים לביצוע מספר רב של פיגועים נגד חיילי צה"ל ואזרחים ישראלים הן באיזור והן בתוך שטחה של מדינת ישראל, אשר בהן נהרגו מספר רב של אזרחים ישראליים וחיילי צה"ל.

בין היתר, הנאשם שימש כאיש קשר בין שאר האחראיים האזוריים ב"גדודי חללי אלאקצא" לבין ראש "התנזים" של הפת"ח - מרואן ברגותי.

### פרט שלישי:

**מהות העבירה**: ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה**: הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, במספר רב של הזדמנויות שונות, חילק כספים לפעילים צבאיים של "התנזים" של פת"ח. הנאשם נהג לקבל כספים מפעיל "התנזים" של הפת"ח עלי פרג'י ברגותי ולחלק אותם לאנשים רבים אשר ביצעו פיגועים נגד חיילי צה"ל ואזרחים ישראליים. בכל הזדמנות הנאשם מסר לכל אחד מהפעילים סכומי כסף שונים בין 100 ל-300 דולר ארה"ב. כמו כן, הנאשם נהג להעביר סכומים גדולים יותר לפעילים צבאיים ב"תנזים" של הפת"ח באמצעות העברות בנקאיות.

בין היתר, הנאשם העביר למנצור שרם, פעיל צבאי בכיר ב"תנזים" של הפת"ח בטול-כרם, שהוא סגנו של ראאד כרמי - ראש "גדודי חללי אלאקצא" בטול-כרם, שהוא הזרוע הצבאית של "התנזים" של פת"ח, סכום של 3,000 ש"ח.

כמו כן, הנאשם העביר לנאצר מחמד יוסף נאג'י (אבו-חמיד), שהוא ראש "גדודי חללי אלאקצא", סכומים בין 1,000 ל-2,000 ש"ח בכ-7-6 הזדמנויות שונות וזאת לצורך רכישת כדורים.

בנוסף לכספים, הנאשם נהג לספק לפעילים צבאיים של "התנזים" של פת"ח מכשירי טלפון סלולריים לצורכי פעילותם הצבאית.

**פרט רביעי:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בשנת 1998 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, במחנה הפליטים אמערי או בסמוך לכך, רכש מידי סאמר אלמימי תמ״ק MP-5 תמורת 4,000 דינר ירדני וכן רוס״ר M-16 מקוצר עם כוונת טלסקופית תמורת 5,500 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו. הנאשם הנ״ל, במהלך השנים 2001 – 2002, נהג למסור את תמ״ק MP-5 הנ״ל לידי אנשים שונים על מנת שיבצעו באמצעותו פיגועי ירי נגד אזרחים ישראליים וזאת כפי שיתואר בהמשך כתב-האישום.



**פרט חמישי:**

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ״ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק ברשותו תמ״ק MP-5, אקדח וכן רוס״ר M-16 מקוצר עם כוונת טלסקופית, וזאת ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו.

**פרט שישי:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בסוף שנת 2000 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי נאצר מחמד יוסף נאגי (אבו-חמיד) - ראש הזרוע הצבאית של "התנזים" של הפת״ח, רוס״ר קלצ׳ניקוב ו-50 כדורים לרוס״ר קלצ׳ניקוב, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו. נאצר אבו-חמיד מסר את רוס״ר קלצ׳ניקוב הנ״ל הכדורים הנ״ל לידי אחמד עינדור, פעיל בכוח 17 של הרשות הפלסטינית. אחמד עינדור דיווח לנאצר אבו-חמיד כי ביצע באמצעות רוס״ר קלצ׳ניקוב הנ״ל פיגוע ירי שבו נהרגו בני הזוג כהנא ז״ל, וכן כי ביצע באמצעות הכדורים הנ״ל פיגוע ירי שבו נהרג אזרח ישראלי.

**פרט שביעי:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, במספר רב של הזדמנויות שונות, מסר לידי נאצר מחמד יוסף נאגי (אבו-חמיד) - ראש הזרוע הצבאית של "התנזים" של הפת״ח, סכומי כסף גדולים וכדורים של עשרות אלפי שקלים ועשרות אלפי דולרים של ארה״ב לצורך רכישת כלי נשק וכדורים לביצוע פיגועי ירי נגד חיילי צה״ל ואזרחים ישראליים. הנאשם אף נהג להשאיר אצלו בבית את הכדורים שנרכשו בכסף הנ״ל ולמסור אותם לידי נאצר אבו-חמיד וחבריו של האחרון לפי מידת הצורך, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט שמיני:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לנאצר מחמד יוסף נאג'י (אבו-חמיד), ראש "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, 100 כדורים לרוס"ר M-16, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט תשיעי:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2001 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש רכב מזדה לבן גנוב, מודל חדיש. הנאשם הנ"ל מסר את הרכב הנ"ל לידי מוהנד אבו חלאווה, אשר יצא ברכב האמור לביצוע פיגועים נגד אזרחים ישראליים וחיילי צה"ל באיזור.

**פרט עשירי:** (פ.א. 234/01 מת"מ י-ם)

**מהות הבעירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטוחה") ועם ג'יאד אברהים מוסא מעלא.
2. ג'יאד מעלא ומחמד מצלח ביקשו מהנאשם רכב לצורך ביצוע פיגוע ירי נגד יהודים. הנאשם מסר לידי ג'יאד מעלא ומחמד מצלח רכב פולקסווגן בורה גנוב בצבע כסף, נושא לוחיות רישוי ישראליות, וזאת על מנת שחבריו הנ"ל יבצעו מרכב זה פיגוע ירי בכוונה לגרום למותם של אזרחים ישראליים.
3. מחמד מצלח נהג ברכב הפולקסווגן ואילו ג'יאד מעלא ישב לידו כשהוא חמוש באקדח 16.
4. ג'יאד מעלא ומחמד מצלח נסעו ברכב הפולקסווגן לאיזור עטרות על מנת לחפש רכב ישראלי במטרה לבצע לעברו פיגוע ירי ולגרום למותם של נוסעי הרכב.
5. סמוך לשעה 15:18, באיזור התעשיה עטרות, ג'יאד מעלא ומחמד מצלח הבחינו ברכב GMC ספארי, מ.ר. 7901306, (להלן: הרכב) אשר בו נהג אלעזר עקיבא פשקוס ז"ל.
6. ג'יאד מעלא ומחמד מצלח החלו לנסוע אחרי הרכב. הנאשם ומחמד מצלח עקבו אחרי הרכב מאיזור התעשיה עטרות עד צומת א-ראם ובחזרה.
7. כאשר הרכב חזר לאיזור התעשיה עטרות ונסע בכביש הראשי, ג'יאד מעלא ומחמד מצלח נסעו ברכב הפולקסווגן בסמוך לרכב.
8. בשלב זה, ג'יאד מעלא פתח את החלון וירה באקדח 16 הנ"ל כ-7 כדורים לעבר הרכב בכוונה לגרום למותו של נהג הרכב. מספר קליעים, אשר נורו על-ידי ג'יאד מעלא, פגעו ברכב, כאשר קליע אחד פגע בצווארו ואחד בחזהו של אלעזר עקיבא פשקוס ז"ל שנהג ברכב.
9. משהבחינו ג'יאד מעלא ומחמד מצלח כי הרכב נעצר, השניים נמלטו ברכב הפולקסווגן לרמאללה.

4

ת.ת. 444/02 מתוקן

10. ברמאללה, ג'יאד מעלא ומחמד מצלח החזירו את רכב הפולקסווגן לנאשם ודיווחו לו על הפיגוע שביצעו.
11. לאחר יום, הנאשם מסר לג'יאד מעלא כ-300 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את הכסף האמור הנאשם קיבל מידי פרג' עלי ברגותי.
12. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **אלעזר עקיבא פשקוס ז"ל**, אשר נפטר כתוצאה מפגיעת הקליעים שנורו על-ידי ג'יאד מעלא כפי שתואר.

### פרט אחד-עשר:   (פ.א. 457/01 בנימין)



**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.02.01 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם מהנד אבו חלאווה, מחמד ע/רחמאן סאלם מצלח (אבו סטחה) וטארק מלחי (א-נוף).
2. הנאשם וחבריו הנ"ל דנו במצב באיזור. הנאשם וחבריו הנ"ל טענו כי אין פעילות נגד המטרות הישראליות. הנאשם שאל את חבריו הנ"ל מה ניתן לעשות על מנת לשפר את המצב. חבריו הנ"ל של הנאשם ביקשו כי הנאשם יספק להם רכב וכלי נשק והם יבצעו פיגוע נגד האזרחים הישראליים בכוונה לגרום למותם.
3. הנאשם הסכים להצעה הנ"ל. הנאשם מסר לידי חבריו הנ"ל את רכבו מסוג פולקסווגן בורה, צבע אפור, מודל שנת 2001, נושא לוחיות רישוי ישראליות, וכן תמ"ק MP-5 עם מחסנית וכדורים.
4. מהנד אבו חלאווה, מחמד מצלח (אבו סטחה) וטארק מלחי (א-נוף) נסעו ברכבו של הנאשם, כשהם חמושים בתמ"ק MP-5 הנ"ל, אשר אותו קיבלו מהנאשם. חבריו הנ"ל של הנאשם הגיעו לאיזור גשר עטארה.
5. בסמוך לשעה 13:15, חבריו הנ"ל של הנאשם הבחינו ברכב GMC ואנדורה, מ.ר. 3082518, אשר בה נהג יוסף כהן, כשהרכב האמור יוצא מיישוב עטרת ופונה לכיוון גשר עטארה.
6. חבריו הנ"ל של הנאשם החליטו לבצע פיגוע ירי לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של הנוסעים בו.
7. חבריו הנ"ל של הנאשם החליטו להמתין עד שרכב הסיטרואן שנסע לפניהם יעקוף את רכב ה-GMC ואז לעקוף את רכב ה-GMC ולבצע לעברו את פיגוע הירי המתוכנן.
8. ברכב הסיטרואן הנ"ל נסעו וויליאם סאמח פארס אלחטיב (רימאווי), רבחי זוהדי אלאסמר (רימאווי) ואכרם עבדאללה מחמד קאסם (עזאווי), החמושים ב-2 רוסי"רי קלצ'ניקוב ורוסי"ר M-16. נוסעי רכב הסיטרואן הנ"ל פתחו באש בכלי הנשק הנ"ל לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של הנוסעים בו. 29 קליעים שנורו על-ידי האנשים הנ"ל פגעו ברכב ה-GMC הנ"ל. 3 קליעים פגעו בראשו ובצווארו של יוסף כהן, אשר נהג ברכב ה-GMC הנ"ל. כתוצאה מפגיעות הקליעים הנ"ל וכן מפגיעות הרסיסים בכל חלקי גופו, יוסף כהן נפצע באורח קשה.
9. לאחר שחבריו הנ"ל של הנאשם הבחינו כי כתוצאה מפיגוע הירי שבוצע מרכב הסיטרואן שנסע לפניהם, רכב ה-GMC נפגע, ירד מהכביש ונהג הרכב נפצע, חבריו הנ"ל של הנאשם נמלטו בחזרה לרמאללה.
10. ברמאללה, חבריו הנ"ל של הנאשם החזירו לנאשם את רכב הפולקסווגן הנ"ל ואת תמ"ק MP-5 הנ"ל. מהנד אבו חלאווה, טארק מלחי (א-נוף) ומחמד מצלח (אבו סטחה) דיווחו לנאשם כי ביצעו פיגוע ירי באמצעות הרכב וכלי הנשק הנ"ל וכי כתוצאה מכך נפצע נהג יהודי.

**פרט שניים-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

זיאד חמודה יעקוב חמודה ביחד עם מאמון בסאם עבדאללה אבו-שמה, הייתם עזאת, סעיד אבראש ואחמד אבו אלעם, במועד האמור, החליטו לבצע פיגוע ירי לעבר היישוב פסגות במטרה לגרום למותם של אזרחים ישראליים.

האנשים הנ״ל ניגשו אל משרדו של מרואן ברגותי, ראש ״התנזים״ של הפתיח. האנשים הנ״ל נפגשו עם מרואן ברגותי וביקשו מהאחרון לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים ביישוב פסגות. מרואן ברגותי שמע לשמוע את התכנית הנ״ל לבצע פיגוע ירי לעבר היישוב פסגות והבטיח לספק כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

לאחר כשבוע ימים, זיאד חמודה וחבריו הנ״ל ניגשו שוב למשרדו של מרואן ברגותי ברמאללה. מרואן ברגותי לא היה באותה העת במשרדו והנאשם היה זה ששוחח עם זיאד חמודה וחבריו הנ״ל. הנאשם הבטיח לדבר עם מרואן ברגותי בנוגע לבקשת חבריו הנ״ל לקבל כלי נשק לצורך ביצוע פיגוע ירי לעבר היישוב פסגות.

לאחר כשלושה ימים, זיאד חמודה וחבריו הנ״ל ניגשו שוב אל משרדו של מרואן ברגותי ברמאללה. האנשים הנ״ל ביקשו שוב ממרואן ברגותי לקבל כלי נשק לצורך ביצוע פיגוע ירי לעבר היישוב פסגות. מרואן ברגותי התקשר אל מהנד אבו חלאווה, פעיל צבאי בכיר ב״תנזים״ של הפתיח. סוכם כי מהנד אבו חלאווה יפגוש את האנשים הנ״ל בכיכר מנארה ברמאללה ושם ימסור להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

זיאד חמודה וחבריו הנ״ל נפגשו עוד באותו היום, בכיכר מנארה ברמאללה עם מהנד אבו חלאווה. במהלך הפגישה האמורה, מהנד אבו חלאווה הבטיח להעביר לידיהם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

בלילה של אותו היום, הנאשם הגיע לביתו של זיאד חמודה ומסר לידי זיאד חמודה תמ״ק MP-5 וכדורים לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים.

לאחר כשעה, זיאד חמודה יצא מביתו ביחד עם מאמון אבו-שמה ברכבו של זיאד חמודה כשהם מחזיקים בתמ״ק MP-5 הנ״ל. זיאד חמודה ומאמון אבו-שמה הגיעו למקום הנמצא בסמוך ליישוב פסגות. שם השניים ירדו מהרכב. מאמון אבו-שמה ירה את כל הכדורים שמסר הנאשם בתמ״ק MP-5 הנ״ל לעבר היישוב פסגות מתוך כוונה לגרום למותם של תושבי היישוב פסגות ושל חיילי צה״ל שהיו ביישוב פסגות.

מיד לאחר הירי, זיאד חמודה ומאמון אבו-שמה חזרו ברכבם הנ״ל לרמאללה.

**פרט שלושה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, ביום 26.06.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ״ל, בחודש יוני 2001 או בסמוך לכך, ברמאללה, בנסיבות המתוארות בפרט האישום הקודם, מסר לידי זיאד חמודה יעקוב חמודה תמ״ק MP-5 לצורך ביצוע פיגועי ירי נגד אזרחים ישראליים וחיילי צה״ל.

זיאד חמודה, במועד האמור, ביחד עם מאמון בסאם עבדאללה אבו-שמה והייתם עזאת, יצא מרמאללה לכיוון הכביש המוביל מפסגת זאב לגבעה הצרפתית שבירושלים, על מנת לבצע שם פיגוע ירי ולגרום בכוונה למותם של אזרחים ישראליים. זיאד חמודה וחבריו הנ״ל יצאו כאמור כשהם חמושים ברובה MP-5, אשר נמסר להם למטרה זו על-ידי הנאשם כאמור לעיל, ובאקדח 9. זיאד חמודה וחבריו יצאו לביצוע הפיגוע האמור כשהם מחזיקים בשרטוט של הגבעה הצרפתית ששם תכננו לבצע את פיגוע הירי, אשר נערך על-ידי מאמון אבו-שמה.

זיאד חמודה וחבריו הנ״ל יצאו לביצוע הפיגוע האמור בתיאום עם מהנד אבו חלאווה, ואף ביקשו מהאחרון כי יודיע למרואן ברגותי, ראש ״התנזים״ של הפתיח, אם מי ממבצעי הפיגוע ייהרגו במהלך ביצוע פיגוע הירי המתוכנן. זיאד חמודה וחבריו הנ״ל לא הצליחו להגיע למקום שבו תכננו לבצע את פיגוע הירי עקב נוכחות גדולה של כוחות צה״ל באיזור חיזמא.

6

ת.ת. 444/02 מתוקן

**פרט ארבעה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש אוגוסט 2001, ברמאללה או בסמוך לכך, נפגש עם מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחה"). מחמד מצלח (אבו סטחה) מסר לנאשם כי הכיר מספר פעילי "התנזים" של הפת"ח, אשר מבצעים פיגועי ירי נגד אזרחים ישראליים. מחמד מצלח ביקש לקבל את אישורו של הנאשם להצטרף לחוליה הנ"ל ולבצע פיגועים נגד אזרחים ישראליים בכוונה לגרום למותם. הנאשם אישר למחמד מצלח להצטרף לפעילות האמורה.

2. מחמד מצלח נפגש עם פעילי "התנזים" הנ"ל, שהם חוסאם עקל רגיב שחאדה, פראס צאדק מחמד עיאנס (המכונה "אל חיטאווי") וטארק מלחי א-נוף. השלושה הנ"ל אמרו למחמד מצלח כי בכוונתם לבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים. השלושה ביקשו כי מחמד מצלח יספק להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

3. ביום 25.08.01, פנו אל מחמד מצלח פראס עיאנס, חוסאם שחאדה וטארק א-נוף וביקשו לקבל עוד באותו היום כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

4. באותו היום, מחמד מצלח פנה אל הנאשם. מחמד מצלח ביקש מהנאשם לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים. לאחר זמן קצר, עוד באותו היום, הנאשם מסר לידי מחמד מצלח תמ"ק MP-5 עם מחסנית המלאה בכדורים וזאת על מנת שמחמד מצלח וחבריו הנ"ל יבצעו באמצעותו פיגוע ירי ויגרמו למותם של אזרחים ישראליים.

5. בשעות הערב, באותו היום, ברמאללה או בסמוך לכך, מחמד מצלח מסר את תמ"ק MP-5 והתחמושת הנ"ל לפראס עיאנס וחוסאם שחאדה, אשר הגיעו ברכב איסוזו טנדר של פראס, וזאת על מנת שפראס וחוסאם יבצעו באמצעות הנשק הנ"ל פיגוע ירי ויגרמו למותם של אזרחים ישראליים.

6. מיד לאחר קבלת הנשק, פראס עיאנס, חוסאם שחאדה, הייתם אלמותפק חמדאן ועלי עליאן יצאו מרמאללה לכיוון כביש 443 במטרה לבצע שם את פיגוע הירי המתוכנן. האנשים הנ"ל נסעו בשני כלי רכב - האחד, איסוזו טנדר של פראס עיאנס והשני רכב סובארו גונב שהביא עלי עליאן לצורך ביצוע הפיגוע המתוכנן.

7. בהגיעם לכביש 443, פראס עיאנס המשיך לנסוע לבדו ברכב האיסוזו, כקילומטר לפני רכב הסובארו שבו נסעו חוסאם, הייתם ועלי עליאן, על מנת להודיע לחבריו הנ"ל על מחסומי צה"ל והמשטרה בדרך.

8. כל האנשים הנ"ל נסעו בכביש 443 לכיוון תל-אביב, כאשר עלי נוהג ברכב הסובארו, לידו יושב הייתם חמדאן, החמוש ברוס"ר קלצ'ניקוב, ובמושב האחורי יושב חוסאם שחאדה, החמוש בתמ"ק MP-5, אשר אותו סיפק הנאשם.

9. באותו היום, 25.08.01, סמוך לשעה 22:30, ליד תחנת הדלק "דור אנרגיה", הבחינו נוסעי רכב הסובארו הנ"ל ברכב פולקסווגן פאסאט, מ.ר. 6902818, אשר בו נסעו בני הזוג יניב ושרון בן שלום ז"ל עם שני ילדיהם ודורון יוסף סוורי ז"ל.

10. עלי עליאן, שנהג ברכב הסובארו, עקף את רכב הפולקסווגן הנ"ל ונסע במקביל אליו. בשלב זה, הייתם חמדאן וחוסאם שחאדה פתחו באש אוטומטית בתמ"ק MP-5, אשר אותו סיפק הנאשם, וברוס"ר קלצ'ניקוב, לעבר רכב הפולקסווגן הנ"ל במטרה לגרום למותם של נוסעיו.

11. מספר רב של הקליעים שנורו על-ידי הייתם חמדאן וחוסאם שחאדה פגעו ברכב הפולקסווגן ובנוסעיו.

12. לאחר שנוסעי רכב הסובארו הבחינו כי רכב הפולקסווגן נוסע בזיגזג, הם האיצו את המהירות ונמלטו לכפר בית ליקיא. שם המתין להם פראס עיאנס. עלי עליאן, חוסאם שחאדה והייתם חמדאן עלו על רכב האיסוזו של פראס עיאנס ונסעו לכפר בית סירא, שם הם הסתירו את כלי הנשק בסמוך לביתו של הייתם חמדאן. לאחר מכן, חוסאם שחאדה, פראס עיאנס, הייתם חמדאן ועלי עליאן חזרו לרמאללה ברכבו של פראס עיאנס.

13. מיד לאחר חזרתם לרמאללה, מחמד מצלח נפגש בעין אום שראייט עם פראס עיאנס, אשר דיווח למחמד מצלח על הפיגוע שבוצע באמצעות הנשק שנמסר למטרה זו על-ידי הנאשם.

14. לאחר מספר ימים, פראס עיאנס הביא את תמ"ק MP-5 הנ"ל מבית סירא והחזירו למחמד מצלח. מחמד מצלח העביר את כלי הנשק הנ"ל לידי הנאשם ודיווח לאחרון על פיגוע הירי שבוצע בכלי הנשק הנ"ל.

15. הנאשם העביר למבצעי הפיגוע הנ"ל סכום של 500 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את הכסף הנ"ל הנאשם קיבל מידי עלי פרג'י ברגותי.

16. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותו של **יניב בן שלום ז"ל**, אשר נפטר כתוצאה מפגיעות קליעים בראשו ובגבו, אשר נורו מתמ"ק MP-5 המתואר לעיל, ומרוס"ר קלצ'ניקוב על-ידי הייתם חמדאן וחוסאם שחאדה.

**פרט חמישה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, גרם בכוונה למותה של **שרון בן שלום ז"ל**, אשר נפטרה כתוצאה מפגיעות קליעים בראשה ובגבה, אשר נורו מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, וברוס"ר קלצ'ניקוב.

**פרט שישה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, גרם בכוונה למותו של **דורון יוסף סוורי ז"ל**, אשר נפטר כתוצאה מפגיעות הקליעים, אשר נורו מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, ומרוס"ר קלצ'ניקוב.

**פרט שבעה-עשר:** (פ.א. 2159/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הארבעה-עשר, במעשיו המתוארים בפרט האישום הארבעה-עשר, ניסה לגרום בכוונה למותם של נוסעי רכב פולקסווגן פאסאט, האמור בפרט האישום הארבעה-עשר. כתוצאה מהירי שבוצע כאמור בפרט האישום הארבעה-עשר מתמ"ק MP-5, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, ומרוס"ר קלצ'ניקוב, נפצעה באורח קל מרסיסים ברגלה בתם של בני הזוג בן שלום ז"ל.

8

ת.ת. 444/02 מתוקן

**פרט שמונה-עשר:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש ספטמבר 2001 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנו נאצר מחמד יוסף נאג'י (אבו-חמיד) - ראש "גדודי חללי אלאקצא" - הזרוע הצבאית של "התנזים" של הפת"ח באיזור, טארק מלחי א-נוף וע/באסט שואבקה. האנשים הנ"ל סיפרו לנאשם כי הם יצרו מרגמה וגם רכשו פצצת מרגמה תמורת 1,500 ש"ח. האנשים הנ"ל ביקשו מהנאשם לתת להם כסף, אשר אותו שילמו תמורת פצצת המרגמה הנ"ל. האנשים הנ"ל אמרו כי בכוונתם לירות את פצצת המרגמה הנ"ל לעבר היישוב פסגות.

הנאשם טען בפני האנשים הנ"ל כי אם הם יצליחו לירות את פצצת המרגמה הנ"ל על היישוב פסגות, הוא ישלם להם את הכסף עבור הפצצה.

מאוחר יותר, באותו הלילה, האנשים הנ"ל חזרו אל הנאשם והודיעו לו כי הם אכן ירו את פצצת המרגמה הנ"ל לעבר היישוב פסגות. האנשים הנ"ל מסרו לנאשם כי אינם יודעים איפה בדיוק נפלה פצצת המרגמה אותה ירו. לאור האמור, הנאשם סירב לשלם לאנשים הנ"ל כסף עבור פצצת המרגמה הנ"ל.

מאוחר יותר, הנאשם דיווח אודות ירי פצצת המרגמה לעבר היישוב פסגות על-ידי האנשים הנ"ל למרואן ברגותי - ראש "התנזים" של הפת"ח.

**פרט תשעה-עשר:** (פ.א. 7915/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחה"), אשר מסר כי פנה אליו פראס צאדק מחמד עיאנס (המכונה "אל חיטאווי") ביחד עם אדם נוסף וביקשו לקבל תמ"ק MP-5 על מנת לבצע באמצעותו פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים. מחמד מצלח ביקש כי הנאשם ימסור לו את תמ"ק MP-5, אשר אותו כבר מסר למחמד מצלח לפני כן לצורך ביצוע פיגועי ירי.
2. הנאשם הסכים לספק את כלי הנשק המבוקש לצורך ביצוע פיגוע הירי המתוכנן.
3. הנאשם הפנה את מחמד מצלח אל חאלד שוויש לצורך קבלת תמ"ק MP-5 הנ"ל. מחמד מצלח פנה אל חאלד שוויש וקיבל מהאחרון תמ"ק MP-5 של הנאשם. כמו כן, הנאשם מסר לידי חוסאם עקל רגיב שחאדה אקדח 14 לצורך ביצוע פיגוע הירי המתוכנן.
4. מאוחר יותר באותו היום, מחמד מצלח מסר את תמ"ק MP-5 הנ"ל לפראס עיאנס במטרה שהאחרון יבצע באמצעותו פיגוע ירי ויגרום למותם של אזרחים ישראליים.
5. יותר מאוחר באותו היום, מחמד סאמי אברהים עבדאללה נפגש ברמאללה עם חוסאם עקל רג'יב שחאדה, פראס צאדק מחמד עיאנס (המכונה "אל חיטאווי"), הייתם אלמותפק חמדאן ועלי עליאן. חוסאם שחאדה הגיע לפגישה הנ"ל כשהוא חמוש בתמ"ק MP-5 ואקדח 14, אשר אותם סיפק הנאשם כאמור לעיל לצורך ביצוע פיגוע ירי.
6. בסביבות השעה 22:00, ביום 15.09.01, האנשים הנ"ל נסעו מרמאללה לירושלים ברכב איסוזו טנדר של פראס עיאנס.
7. פראס עיאנס נהג ברכב האיסוזו הנ"ל ונסע ביחד עם מחמד עבדאללה וחבריו על מנת להראות להם מקום שבו יבצעו את פיגוע הירי המתוכנן וכן על מנת להראות לחבריו איך להימלט לאחר ביצוע הפיגוע האמור. פראס עיאנס הסיע את חבריו לכביש מס' 9 המחבר בין שכונת רמות לבין שכונת הגבעה הצרפתית בירושלים. פראס עיאנס הראה לחבריו איפה לבצע את

הפיגוע המתוכנן ואיך להימלט לאחר מכן. בסיום הסיור האמור, החבורה הנ"ל חזרה לרמאללה.

8. בסביבות השעה 22:30, באותו היום, מחמד עבדאללה ביחד עם חוסאם שחאדה והייתם חמדאן נסע ברכב גנוב בצבע אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם עלי עליאן נסע לצורך ביצוע הפיגוע המתוכנן (להלן : הרכב). לפניהם נסע פראס עיאנס ברכב האיסוזו הנ"ל וזאת על מנת להודיע באמצעות טלפון סלולרי לחבריו על מחסומי משטרה וצה"ל.

9. מחמד עבדאללה נהג ברכב הנ"ל, לידו ישב חוסאם שחאדה, החמוש בתמ"ק MP-5, אשר אותו סיפק הנאשם, ובמושב האחורי ישב הייתם חמדאן, החמוש באקדח 14, אשר גם אותו סיפק הנאשם.

10. החבורה הנ"ל נעצרה בכביש מס' 9 בסמוך לצומת המוביל לשכונת רמת שלמה והמתינה לרכב ישראלי בודד שיגיע למקום במטרה לבצע לעברו פיגוע ירי ולגרום למותם של נוסעי הרכב.

11. לאחר מספר דקות, בסמוך לשעה 23:10, הגיע למקום רכב רנו אקספרס לבן, מ.ר. 2273706, (להלן : הרנו) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

12. מחמד עבדאללה החל לנסוע אחרי הרנו ועקף אותו.

13. כשהרכב נסע במקביל לרנו, חוסאם שחאדה והייתם חמדאן פתחו באש בתמ"ק MP-5 ובאקדח 14, אשר אותם סיפק הנאשם, לעבר נוסעי הרנו במטרה לגרום למותם.

14. מספר קליעים שנורו על-ידי חוסאם שחאדה והייתם חמדאן פגעו ברנו ובשני נוסעי הרנו - משה וייס ומאיר וייסבויז ז"ל. לאחר מכן, מחמד עבדאללה המשיך לנסוע לכיוון שכונת רמות ובסמוך למקום שבו בונים גשר חדש פנה ימינה לדרך עפר המובילה לביר נבאללה.

15. לפני הכניסה לביר נבאללה, מחמד עבדאללה וחבריו שהיו עמו ברכב נפגשו עם פראס עיאנס שהמתין להם במקום ברכב האיסוזו. משם כולם ביחד המשיכו בנסיעה לביר נבאללה ולאחר מכן נמלטו לרמאללה.

16. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של **מאיר וייסבויז ז"ל**, אשר נפטר בבית החולים מאוחר יותר באותו היום כתוצאה מפגיעות הקליעים שנורו על-ידי חברי הנאשם בתמ"ק MP-5 ובאקדח 14, <u>אשר אותם סיפק הנאשם</u>.

## <u>פרט עשרים:</u> (פ.א. 7915/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 23:10, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותו של משה וייס, אשר נהג ברכב רנו אקספרס לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי חברי הנאשם, כפי שתואר בפרט האישום הקודם, פגע בראשו של משה וייס ופצע אותו באורח קשה.

## פרט עשרים ואחד : (פ.א. 481/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :

1. הנאשם הנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, נפגש עם מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחה"). <u>מחמד מצלח ביקש מהנאשם לקבל תמ"ק MP-5</u>, תחמושת לתמ"ק MP-5 הנ"ל וכן רכב לצורך לבצע פיגוע ירי נגד אזרחים ישראליים בירושלים בכוונה לגרום למותם.

2. מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחה") מסר לנאשם כי הוא מתכנן לבצע את הפיגוע המתוכנן ביחד עם מחמד סאמי אברהים עבדאללה, חוסאם עקל רג'ב שחאדה ופראס צאדק מחמד עיאנס (המכונה "אל חיטאווי").

10                                    ת.ת. 444/02 מתוקן

P 5 : 184