3. תחילה הנאשם אמר למחמד מצלח לבצע את הפיגוע המתוכנן מרכבו של פראס ע׳יאנם. אך מחמד מצלח טען כי יש צורך בשני כלי רכב, כאשר ברכב אחד ייסעו המתריעים והיורים ייסעו ברכב השני. לאור האמור, הנאשם מסר למחמד מצלח רכב מזדה 323 גנוב, הנושא לוחיות רישוי ישראליות, אשר אותו רכש לצורך כך מידי איאד אלשאפעי תמורת 5,000 ש״ח.

4. לצורך ביצוע פיגוע הירי המתוכנן, הנאשם מסר למחמד מצלח תמ״ק MP-5 ותחמושת לתמ״ק MP-5 הנ״ל.

5. ביום 03.10.01, מחמד מצלח יצא מרמאללה לכיוון ירושלים במטרה לבצע שם את פיגוע הירי המתוכנן כשהוא מחזיק בתמ״ק MP-5 הנ״ל ונוסע ברכב המזדה הנ״ל, אשר בו נוהג מחמד עבדאללה.

6. פראס ע׳יאנם וחוסאם שחאדה נסעו ברכב איסוזו טנדר של פראס ע׳יאנם לפני רכב המזדה שבו נסע מחמד מצלח וזאת במטרה להודיע על מחסומי המשטרה וצה״ל בדרך.

7. חבריו הנ״ל של הנאשם הגיעו לבית חנינא החדשה שבירושלים. שם מחמד עבדאללה החנה את רכב המזדה וביחד עם שאר חבריו הסתיר בתוך הרכב את תמ״ק MP-5 הנ״ל.

8. מחמד מצלח ומחמד עבדאללה עלו לרכב האיסוזו ומשם המשיכו ברכב האיסוזו ביחד עם פראס ע׳יאנם וחוסאם שחאדה לכיוון כביש בגין.

9. חבריו הנ״ל של הנאשם הגיעו לכביש בגין. שם, פראס ע׳יאנם הראה לשאר חבריו איפה לבצע את פיגוע הירי המתוכנן ואיך להימלט לאחר ביצוע פיגוע הירי. חבריו הנ״ל של הנאשם החליטו לבצע את פיגוע הירי המתוכנן במנהרה הראשונה של כביש בגין מכיוון רמות וזאת על מנת שלא ישמעו את קולות הירי. לאחר מכן, כל האנשים הנ״ל חזרו לבית חנינא, למקום שבו הושאר רכב המזדה הנ״ל.

10. מחמד מצלח עלה לרכב המזדה כשהוא חמוש בתמ״ק MP-5 הנ״ל, ואילו מחמד עבדאללה נהג ברכב המזדה האמור. מחמד מצלח ומחמד עבדאללה נסעו ברכב המזדה לכביש בגין במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראליים.

11. מחמד מצלח ומחמד עבדאללה נסעו בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב ישראלי בודד במטרה לבצע לעברו את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי הרכב.

12. בסמוך לשעה 23:35, כשהם נוסעים לכיוון צפון, במנהרה האחרונה בכיוון נסיעתם, מחמד מצלח ומחמד עבדאללה הבחינו ברכב הונדה אקורד, מ.ר. 1103217, הנוסע בכביש בגין לכיוון צפון. ברכב ההונדה נסעו טוני עמיאל, פיני מימון ופזית מימון.

13. מחמד עבדאללה עקף את רכב ההונדה הנ״ל. בעת שמחמד עבדאללה נסע במקביל לרכב ההונדה הנ״ל, מחמד מצלח ירה כדור אחד בתמ״ק MP-5, אשר אותו סיפק הנאשם, לעבר נוסעי רכב ההונדה, בכוונה לגרום למותם. הקליע שנורה על-ידי מחמד מצלח לא פגע ברכב ההונדה הנ״ל.

14. לאחר ביצוע פיגוע הירי האמור, מחמד מצלח ומחמד עבדאללה המשיכו בנסיעתם לכיוון כביש מס׳ 9 המחבר בין שכונת רמות לשכונת הגבעה הצרפתית.

v **פרט עשרים ושניים:** (פ.א. 8379/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. לאחר שמחמד ע/רחמאן סאלם מצלח (מכונה ״אבו סטחה״) ומחמד סאמי אברהים עבדאללה ביצעו את פיגוע הירי כפי שתואר בפרט האישום הקודם, השניים המשיכו בנסיעה ברכב המזדה, אשר אותו סיפק הנאשם כפי שתואר בפרט האישום הקודם, לכיוון כביש מס׳ 9, המחבר בין שכונת רמות לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חנינא ובהמשך לרמאללה.

2. במהלך הנסיעה הנ״ל, מחמד מצלח, על-פי בקשתו של מחמד עבדאללה, בדק את תקינותו של תמ״ק MP-5, אשר אותו מסר הנאשם, ואף ירה מספר כדורים באוויר.

3. במהלך הנסיעה בכביש מס׳ 9 הנ״ל, בסמוך לשעה 23:45, מחמד מצלח ומחמד עבדאללה הבחינו ברכב סקודה, מ.ר. 6567709, אשר נסע בכביש מס׳ 9 לכיוון הגבעה הצרפתית. ברכב הסקודה הנ״ל נסעו מלכה כהן ופנחס כהן.

4. מחמד עבדאללה, אשר, כאמור, נהג ברכב המזדה, עקף את רכב הסקודה.

P 5: 185

5. בעת שמחמד עבדאללה נסע במקביל לרכב הסקודה הנ"ל, מחמד מצלח ירה בתמ"ק MP-5, אשר אותו סיפק להם הנאשם לצורך ביצוע פיגוע הירי כפי שתואר בפרט האישום הקודם, מספר יריות לעבר רכב הסקודה הנ"ל בכוונה לגרום למותם של נוסעי רכב הסקודה.
6. מספר קליעים שנורו על-ידי מחמד מצלח פגעו ברכב הסקודה. שני קליעים שנורו על-ידי מחמד מצלח פגעו בפנחס כהן וקליע נוסף פגע במלכה כהן.
7. פנחס כהן נפצע באורח בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע ה-28 להריון, נפצעה באורח בינוני מפגיעת קליע בראשה.
8. לאחר ביצוע פיגוע הירי האמור, מחמד מצלח ומחמד עבדאללה המשיכו בנסיעה לכיוון הגבעה הצרפתית ומשם הגיעו לבית חנינא החדשה. שם, מחמד מצלח ומחמד עבדאללה החנו את רכב המזדה הנ"ל ויצרו קשר טלפוני עם חוסאם עקל רגיב שחאדה ופראס צאדק מחמד עי'אנס (המכונה "אל חיטאווי"), אשר הגיעו למקום ברכב האיסוזו של פראס עי'אנס על מנת לאסוף את מחמד מצלח ומחמד עבדאללה, וזאת לפי התכנון האמור בפרט האישום הקודם.
9. מחמד מצלח ומחמד עבדאללה הסתירו את תמ"ק MP-5 הנ"ל ברכב האיסוזו ועלו לרכב האיסוזו.
10. כל ארבעת אנשים הנ"ל ניסו לחזור מירושלים לרמאללה, אך לא הצליחו לעשות כן בגלל מחסומי צה"ל והמשטרה. חבריו הנ"ל של הנאשם נשארו ללון אצל יאסר אבו אלחטיב, חברו של חוסאם שחאדה, בבית חנינא החדשה בירושלים.
11. יום למחרת, 04.10.01, מחמד מצלח חזר ברכבו של פראס עי'אנס לרמאללה.
12. לאחר חזרתו לרמאללה, <u>מחמד מצלח דיווח לנאשם אודות הפיגועים שביצע בעזרת רכב המזדה ותמ"ק MP-5, אשר אותם קיבל מהנאשם.</u>

### פרט עשרים ושלושה:

**מהות העבירה**: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה**: הנאשם הנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, בסוף שנת 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, בעת שהיה עם מרואן ברגותי, ראש "התנזים" של הפת"ח, נפגש עם נאצר מחמד יוסף נאג'י (אבו -חמיד) - ראש "גדודי חללי אלאקצא" - הזרוע הצבאית של "התנזים" של הפת"ח. נאצר אבו-חמיד סיפר למרואן ברגותי על כוונתו לרכוש מרגמה ופצצות לצורך ביצוע ירי מרגמות לעבר היישובים הישראליים בכוונה לגרום למותם של אזרחים ישראליים. נאצר אבו-חמיד ביקש ממרואן ברגותי לקבל סיוע כספי לצורך רכישת המרגמה ופצצות מרגמה. מרואן ברגותי סירב למסור את הסיוע הכספי המבוקש והפנה את <u>נאצר אבו-חמיד</u> אל הנאשם. <u>הנאשם הסביר</u> לנאצר אבו-חמיד כי אין כל צורך לשלם הרבה כסף עבור מרגמה ופצצות מרגמה שהרי <u>ברשותו כבר יש מרגמה</u> מאולתרת ופצצות מרגמה.

בתחילת שנת 2002, <u>הנאשם הפנה</u> את נאצר אבו-חמיד ואת חברו של האחרון - פעיל צבאי בכיר ב"גדודי חללי אלאקצא" - מהנד אבו חלאווה אל ביתו של עלי ברגותי על מנת שיקבלו שם את המרגמה ואת פצצות המרגמה הנ"ל.

נאצר אבו חמיד, מהנד אבו חלאווה וע/באסט אכן קיבלו את המרגמה המאולתרת הנ"ל וכן 5 פצצות מרגמה.

נאצר אבו-חמיד, ביחד עם חבריו הנ"ל, ירה באמצעות המרגמה המאולתרת הנ"ל פצצת מרגמה לעבר היישוב פסגות בכוונה לגרום למותם של תושבי היישוב הנ"ל ושל חיילי צה"ל שהיו ביישוב הנ"ל. פצצת המרגמה הנ"ל לא פגעה ביישוב פסגות והתפוצצה בסמוך אליו.

לאחר ביצוע הפיגוע הנ"ל, נאצר אבו-חמיד דיווח לנאשם על מה שקרה. הנאשם לקח את נאצר אבו-חמיד אל מרואן ברגותי על מנת שידווח גם למרואן ברגותי אודות <u>פיגוע ירי פצצת מרגמה</u> שבוצע לראשונה באיזור.

12

ת.פ. 444/02 מתוקן

✓**פרט עשרים וארבעה:** (פ.א. 39/02 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. ביום 14.01.02 נהרג ראאד כרמי אשר היה פעיל צבאי בכיר ב"תנזים" של ארגון הפת"ח, שהוא התאחדות בלתי מותרת. בעקבות מותו של ראאד כרמי הנ"ל, ראש "התנזים" של הפת"ח באיזור - מרואן ברגותי פתח אוהל אבלים באלבירה.

2. הנאשם הנ"ל, ביום 15.01.02, באוהל האבלים הנ"ל, נפגש עם מחמד ע/רחמאן סאלם מצלח (המכונה "אבו סטאח"), מחמד סאמי אברהים עבדאללה, פראס צאדק מחמד עיאנס (המכונה "אל חיטאווי"), טארק מלחי א-נוף וזידאן מחארב אל בדווי.

3. הנאשם מסר לחבריו הנ"ל כי מרואן ברגותי, ראש "התנזים" של הפת"ח באיזור, מבקש כי הם יבצעו באופן מיידי פיגוע נקמה על מותו של ראאד כרמי הנ"ל ויגרמו למותם של אזרחים ישראליים.

4. לצורך ביצוע הפיגוע האמור, הנאשם מסר לחבריו הנ"ל תמ"ק MP-5, אקדח 16, וכן רכב מזדה, הנושא לוחיות רישוי ישראליות.

5. חבריו הנ"ל של הנאשם, באוהל האבלים הנ"ל, החליטו כי, לאור דרישתו של הנאשם, יבצעו עוד באותו הערב פיגוע בתחנת הדלק הגבעונים הנמצאת בכביש 443 בסמוך לכניסה לגבעת זאב וזאת בכוונה לגרום למותם של אזרחים ישראליים.

6. בשעות הערב באותו היום, 15.01.02, מחמד עבדאללה יצא מאוהל האבלים הנ"ל ביחד עם פראס עיאנס. מחמד עבדאללה ופראס עיאנס נסעו ברכב איסוזו טנדר של פראס עיאנס לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן. אחרי רכב האיסוזו הנ"ל נסעו מחמד מצלח, החמוש באקדח 14, זידאן מחארב, החמוש באקדח 16 הנ"ל, וטארק א-נוף, החמוש בתמ"ק MP-5 הנ"ל. השלושה נסעו ברכב מזדה, אשר אותו קיבלו לצורך כך מהנאשם.

7. חבריו הנ"ל של הנאשם הגיעו עד ערמת עפר החוסמת את היציאה מכפרים ביר נבאללה ואלג'יב לכביש 443 במרחק של כ-100 מטר מתחנת הדלק הגבעונים. חבריו הנ"ל של הנאשם החנו את כלי הרכב שלהם, איסוזו ומזדה, עם הפנים לכיוון הכפר ביר נבאללה על מנת שיוכלו להימלט מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

8. מחמד מצלח, החמוש באקדח 14, זידאן, החמוש באקדח 16, וטארק א-נוף, החמוש ב-MP-5, ירדו מכלי הרכב והלכו לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראליים.

9. מחמד עבדאללה ופראס עיאנס נשארו בכלי הרכב הנ"ל על מנת לשמור שלא יגיע למקום סיור של צה"ל או אנשים אחרים. מחמד עבדאללה ישב בכיסא הנהג ברכב המזדה על מנת שיוכל להמלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מיד לאחר ביצוע הפיגוע.

10. מחמד מצלח וטארק א-נוף נעמדו בכניסה לתחנת הדלק הנ"ל.

11. לאחר מספר דקות, בסמוך לשעה 19:45, מחמד מצלח וטארק א-נוף הבחינו ברכב פיאט אונו לבן, מ.ר. 6424905, שנכנס לתחנת הדלק הנ"ל ואשר בו נהגה יואלה חן ז"ל ולידה ישבה רשל (רחל) עיני.

12. מחמד מצלח וטארק א-נוף ניגשו אל רכב הפיאט הנ"ל במטרה לבצע לעברו פיגוע ירי ולגרום למותן של נוסעות הרכב. נוסעות רכב הפיאט הבחינו באקדח שבו החזיק מחמד מצלח והחלו לצעוק ולצפור. מחמד מצלח הכניס את האקדח למכנסיו ואמר לנוסעות הרכב שלא יפחדו.

13. בשלב זה, טארק א-נוף פתח באש אוטומטית בתמ"ק MP-5, אשר אותו סיפק הנאשם, לעבר נוסעות רכב הפיאט בכוונה לגרום למותן. אז גם מחמד מצלח שוב הוציא את אקדחו והחל לירות לעבר נוסעות הרכב בכוונה לגרום למותן.

14. מחמד מצלח וטארק א-נוף ירו מטווח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל ולעבר רשל (רחל) עיני שהיו ברכב הפיאט הנ"ל.

15. כ-28 קליעים, שנורו על-ידי מחמד מצלח וטארק א-נוף, פגעו בשמשה הקדמית של הרכב, מספר קליעים פגעו בצד הרכב ובשמשת חלון דלת הנהג.

16. במהלך ביצוע פיגוע הירי המתואר, זידאן, אשר עמד במרחק קצר מאחורי מחמד מצלח וטארק א-נוף, שימש כשומר ומתריע.

17. פראס עיאנס, מיד לאחר ששמע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת להודיע לחבריו אם יש מחסומים בדרך לרמאללה.

13

ת.ת. 444/02 מתוקן

18. מחמד מצלח, טארק א-נוף וזידאן, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל רכב המזדה שבו המתין מחמד עבדאללה. לאחר שהשלושה הנ"ל עלו לרכב, מחמד עבדאללה הסיע אותם לרמאללה.
19. ברמאללה מחמד מצלח, טארק א-נוף, מחמד עבדאללה וזידאן נפגשו עם פראס עיאנס.
20. לאחר מכן, מחמד מצלח נפגש ברמאללה עם הנאשם, החזיר לו את תמ"ק MP-5 ואת רכב המזדה, וכן דיווח על הפיגוע שביצע כמתואר לעיל.
21. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותה של **יואלה חן ז"ל**, אשר נפטרה במקום כתוצאה מפגיעות הקליעים שנורו על-ידי מחמד מצלח וטארק א-נוף.

**פרט עשרים וחמישה:** (פ.א. 39/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותה של רשל (רחל) עיני, אשר נסעה ברכב פיאט אונו לבן, מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחה") וטארק מלחי א-נוף בכלי נשק שנמסרו להם על-ידי הנאשם לצורך ביצוע פיגוע הירי, כפי שתואר בפרט האישום הקודם, פגע בראשה של רשל (רחל) עיני, ושני קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה באורח בינוני.

**פרט עשרים ושישה:** (פ.א. 502/02 ציון)

**מהות הבעירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
1. הנאשם הנ"ל, בחודש ינואר 2002, <u>הנאשם החליט כי ברצונו להוציא לפועל פיגוע התאבדות בתוך שטחה של מדינת ישראל על מנת לגרום למותם של אזרחים ישראליים רבים ככל האפשר</u>.
2. הנאשם הנ"ל פנה באמצעות טלפון אל נאצר מחמוד עוויס, פעיל בכיר ב"תנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, בשכם. הנאשם ביקש מנאצר עוויס לשלוח אליו אדם המוכן לבצע פיגוע התאבדות. הנאשם מסר לנאצר עוויס כי <u>הוא עצמו ידאג להכניס את המחבל</u> המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.
3. לאחר מספר ימים, ביום 22.01.02, ברמאללה, הנאשם נפגש עם סעיד רמדאן, תושב כפר תל בנפת שכם, אשר הודיע לנאשם כי נשלח על-ידי נאצר עוויס לצורך ביצוע פיגוע התאבדות.
4. <u>הנאשם התקשר אל מחמד ע/רחמאן סאלם מצלח</u> (מכונה "אבו סטחה") וביקש מהאחרון להגיע אליו.
5. מחמד מצלח <u>נפגש עם הנאשם</u> ועם סעיד רמדאן באותו היום ברמאללה. הנאשם ערך היכרות בין השניים. הנאשם ומחמד מצלח לקחו את סעיד רמדאן למספרה על מנת שיסתפר לפני ביצוע פיגוע התאבדות המתוכנן.
6. לאחר מכן, <u>הנאשם ומחמד מצלח התקשרו אל פראס צאדק מחמד עיאנס</u> (מכונה "חיטאווי") וביקשו מהאחרון להסיע מחבל מתאבד מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע בירושלים פיגוע התאבדות ויגרום למותם של אזרחים ישראליים רבים ככל האפשר.
7. פראס עיאנס הגיע לרמאללה ביחד עם מחמד סאמי אבראהים עבדאללה, וזאת לאחר שהאחרון הסכים להשתתף בהסעת המחבל המתאבד מרמאללה לירושלים. פראס עיאנס הגיע לפגישה ברכבו איסוזו טנדר עם לוחיות רישוי ישראליות.
8. לפי הוראתו של הנאשם, פראס עיאנס ומחמד עבדאללה נסעו ברכב האיסוזו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

14

ת.ת. 444/02 מתוקן

9. מחמד עבדאללה ופראס עיאנס נסעו מרמאללה דרך ראפאת והגיעו לאיזור התעשיה עטרות, שם השניים חזרו לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה רמה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם השניים פנו ימינה ונסעו עד לצומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת הגבעה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. מחמד עבדאללה ופראס עיאנס ראו כי בדרך שבה נסעו ניתן להוביל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה״ל.

10. באותו הזמן, ברמאללה, הנאשם ומחמד מצלח לקחו את סעיד רמדאן הנ״ל להתפלל ואף קנו עבור סעיד רמדאן הנ״ל אוכל, בגדים ונעלים חדשים. הנאשם שילם בכסף שלו עבור הקניות הנ״ל סכום של 1,200 ש״ח.

11. מחמד מצלח, על-פי הוראתו של הנאשם, הביא רוסי״ר M-16 ו-3 מחסניות לרוסי״ר הנ״ל מלאות בכדורים, כאשר שתי מחסניות היו מחוברות בצולבת.

12. לפי התכנון של הנאשם וחבריו הנ״ל, היה על סעיד רמדאן להגיע לירושלים ולירות שם באזרחים ישראליים בכוונה לגרום למותם עד שהוא עצמו ייהרג מאש כוחות הביטחון הישראליים.

13. לאחר מכן, באותו היום, הנאשם, מחמד מצלח וסעיד רמדאן נפגשו עם מחמד עבדאללה ופראס עיאנס באיזור המלון "סיטי אין" באלבירה. הנאשם הכיר למחמד עבדאללה ולפראס עיאנס את סעיד רמדאן.

14. הנאשם הסביר למחמד עבדאללה ולפראס עיאנס כי סעיד רמדאן הנ״ל הוא המחבל המתאבד, אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשירה לעבר אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

15. מחמד עבדאללה ופראס עיאנס הסתירו את רוסי״ר M-16 והמחסניות הנ״ל ברכב האיסוזו הנ״ל.

16. הנאשם ומחמד מצלח איחלו לסעיד רמדאן הצלחה והשלושה נסעו לירושלים. הנאשם אמר למחמד עבדאללה ופראס עיאנס כי עליהם לקחת את סעיד רמדאן לבצע את פיגוע ההתאבדות בכל מקום בירושלים שהם יבחרו.

17. פראס עיאנס נהג ברכב האיסוזו, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ומחמד עבדאללה התיישב במושב האחורי.

18. מחמד עבדאללה ופראס עיאנס הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתואר לעיל.

19. בירושלים, מחמד עבדאללה ופראס עיאנס נסעו לרחוב שיחי ג׳ראח. שם הם הוציאו את רוסי״ר M-16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד רמדאן. מחמד עבדאללה עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי, כשהוא מחזיק בידיו את רוסי״ר M-16 ואת המחסניות.

20. מחמד עבדאללה ופראס עיאנס הסיעו את סעיד רמדאן לרחוב הנביאים.

21. במהלך הנסיעה, סעיד רמדאן התלונן בפני מחמד עבדאללה ופראס עיאנס כי הנעלים החדשות, אשר אותם קנה לו הנאשם עבור הפיגוע, קטנות ולוחצות לו. מחמד עבדאללה הוריד את נעליו "ריבוק" ומסר אותן לסעיד רמדאן באומרו "תעלה לגן עדן עם נעלי 'ריבוק'".

22. בהגיעם לצומת הרחובות שטראוס והנביאים, מחמד עבדאללה ופראס עיאנס עצרו את רכב האיסוזו.

23. מחמד עבדאללה ופראס עיאנס אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שיראה בו הרבה אנשים.

24. לאחר שסעיד רמדאן ירד מהרכב עם רוסי״ר M-16 והתחמושת, מחמד עבדאללה ופראס עיאנס נסעו מהמקום ברכב האיסוזו, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה.

25. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של מחמד עבדאללה ופראס עיאנס, הגיע לרחוב יפו.

26. בסביבות השעה 16:20, כשהוא עומד מול בית מס׳ 47 ברחוב יפו או בסמוך לכך, סעיד רמדאן טען את רוסי״ר M-16 שבו החזיק, צעק "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו 27 שהיה באותה עת בתחנה הנ״ל וכן לעבר האנשים שהיו בתוך החנויות הסמוכות בכוונה לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך לירות, נמלט מהמקום לעבר החניון הנמצא ברחוב הרב קוק. שם סעיד רמדאן החליף מחסניות והמשיך לירות לעבר האזרחים בכוונה לגרום למותם. סעיד רמדאן ירה ברוסי״ר M-16, שבו החזיק, מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים והשוטרים שהגיעו למקום.

15

27. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של **אורה (סבטלנה) סנדלר ז"ל**, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

28. לאחר שנודע לנאשם על ביצוע הפיגוע הנ"ל. הנאשם ניגש אל עלי פרג' ברגותי וקיבל מהאחרון סכום של 1,000 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. הנאשם נתן למחמד מצלח, מחמד עבדאללה ופראס עיאנם 100 דולר ארה"ב לכל אחד עבור השתתפותם בהוצאה לפועל של הפיגוע הנ"ל.

✓ **פרט עשרים ושבעה:** (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם בכוונה למותה של **שרה המבורגר ז"ל**, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.

✓ **פרט עשרים ושמונה:** (פ.א. 502/02 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים ושישה, במעשיו המתוארים בפרט האישום העשרים ושישה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל הניתן אשר היו באותה עת ברחוב יפו ובקרבתו. כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, **נפצעו מעל 45 אזרחים**.

✓ **פרט עשרים ותשעה:** (פ.א. 502/02 ציון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר ככלי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים ושישה, במעשיו המתוארים בפרט האישום העשרים ושישה, פגע במזיד ושלא כדין ברכוש רב הכולל חנויות ברחוב יפו, תחנת אוטובוס "אגד", אוטובוס "אגד" קו 27 וכן כלי רכב רבים, אשר נפגע כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.

16

ת.ת. 444/02 מתוקן

## פרט שלושים:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם זאפר ע/ג'ואד ע/רחמאן רימאווי.
2. זאפר רימאווי מסר לנאשם כי בן דודו, מוג'הד ח'דר רימאווי, מוכן לבצע פיגוע התאבדות.
3. על-פי בקשתו של הנאשם, זאפר רימאווי ערך פגישה בין הנאשם לבין מוג'הד רימאווי.
4. לאחר הפגישה הנ"ל, הנאשם הסכים להצעתו של זאפר רימאווי לשלוח את מוג'הד רימאווי לבצע פיגוע התאבדות בירושלים על מנת שמוג'הד רימאווי יגרום למותם של אזרחים ישראליים רבים ככל הניתן.
5. תוכנן כי מוג'הד רימאווי יבצע פיגוע התאבדות באמצעות רובה, דהיינו יירה לעבר אזרחים ישראליים בירושלים בכוונה לגרום למותם של אזרחים ישראליים רבים ככל הניתן וימשיך לירות עד שייהרג על-ידי כוחות הביטחון הישראליים.
6. הנאשם לקח מנשר (חלום) מחמד יוסף נאג'י (אבו-חמיד) רוסי"ר M-16 ומספר מחסניות לרוסי"ר הנ"ל מלאות בכדורים לצורך ביצוע פיגוע ההתאבדות המתוכנן.
7. הנאשם יצר קשר עם מחמד סאמי אבראהים עבדאללה, פראס צאדק מחמד עיאנס (המכונה "אל חיטאווי") וטארק מלחי א-נוף. על-פי בקשתו של הנאשם השלושה הנ"ל הגיעו לרמאללה ונפגשו שם עם הנאשם.
8. הנאשם מסר לחבריו הנ"ל כי הוא מבקש מהם להכניס לירושלים מחבל נוסף, אשר יבצע בירושלים פיגוע התאבדות, דוגמת הפיגוע המתואר בפרט האישום העשרים ושישה, במטרה לגרום למותם של אזרחים רבים ככל הניתן. חבריו הנ"ל של הנאשם הסכימו להשתתף בהסעת המחבל המתאבד הנ"ל לירושלים.
9. הנאשם מסר לידי מחמד עבדאללה ופראס עיאנס רכב סובארו אפור, השייך למשפחתו של הנאשם. מחמד עבדאללה חזר עם רכב הסובארו לביתו בביר נבאללה, ואילו פראס עיאנס נסע עם רכב איסוזו טנדר שלו לביתו בכפר עקב.
10. יום למחרת, הנאשם התקשר אל מחמד עבדאללה ואל פראס עיאנס והורה להם להגיע לתחנת הדלק הנמצאת ברמאללה תחתא, לאסוף משם את המחבל המתאבד ולהסיע אותו לירושלים על מנת שיבצע שם את פיגוע ההתאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן.
11. מחמד עבדאללה נסע ברכב הסובארו עד למחסום קלנדיה, שם הוא החנה את הרכב ועלה לרכב האיסוזו של פראס עיאנס שהגיע למקום. משם המשיכו השניים למקום המפגש האמור.
12. ברמאללה, בתחנת הדלק הנ"ל, מחמד עבדאללה ופראס עיאנס נפגשו עם הנאשם, אשר הציג בפניהם את מוג'הד רימאווי שהוא המחבל המתאבד. הנאשם מסר לידי מוג'הד רימאווי רוסי"ר M-16 הנ"ל ושלוש המחסניות הנ"ל מלאות בכדורים לרוסי"ר M-16.
13. מחמד עבדאללה ופראס עיאנס הסתירו את רוסי"ר M-16 והמחסניות בתוך רכב האיסוזו.
14. מחמד עבדאללה ופראס עיאנס נסעו ביחד עם המחבל המתאבד לירושלים במטרה שהאחרון יבצע שם פיגוע ירי ויגרום למותם של אזרחים רבים ככל הניתן.
15. מחמד עבדאללה, פראס עיאנס ומוג'הד רימאווי הגיעו למחסום קלנדיה ועקפו אותו. לאחר מכן מחמד עבדאללה עבר לרכב הסובארו, שהשאיר במקום קודם לכן ונסע לצומת א-ראם. מחמד עבדאללה עבר ברכב הסובארו את מחסום א-ראם והמתין במקום לפראס עיאנס ומוג'הד רימאווי שעקפו את מחסום א-ראם ברגל. לאחר מכן, פראס עיאנס חזר, עלה לרכב האיסוזו, שבו היה מוסתר הנשק, ועבר את מחסום א-ראם כשהוא נוסע לבד ברכב האיסוזו עם הנשק.
16. מחמד עבדאללה הסיע את המחבל המתאבד עד למסגד בשועפט. לשם הגיע גם פראס עיאנס ברכב האיסוזו עם הנשק והתחמושת.
17. שם, המחבל המתאבד, מוג'הד רימאווי, ביקש להיכנס למסגד ולהתפלל לפני שיבצע את פיגוע ההתאבדות. מחמד עבדאללה ופראס עיאנס הסכימו לבקשה הנ"ל.
18. בזמן שמוג'הד רימאווי התפלל במסגד האמור, מחמד עבדאללה ופראס עיאנס נסעו ברכב הסובארו הנ"ל לגבעת שאול שבירושלים במטרה לבדוק אם יש בדרך מחסומי צה"ל או משטרה. השניים החליטו להסיע את המחבל המתאבד לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן וזאת מכיוון שיש במקום האמור אזרחים רבים.
19. כאשר מחמד עבדאללה ופראס עיאנס חזרו למסגד בשועפט על מנת לאסוף משם את מוג'הד רימאווי ולהסיע אותו לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן, השניים לא מצאו את המחבל המתאבד במסגד.

17

ת.ת. 444/02 מתוקן

20. מחמד עבדאללה ופראס עיאנם התקשרו אל הנאשם ודיווחו לו כי המחבל המתאבד ברח להם. הנאשם הורה למחמד עבדאללה ופראס עיאנם לחזור לרמאללה.
21. מחמד עבדאללה ופראס עיאנם חזרו לרמאללה, נפגשו שם עם הנאשם ומסרו לידיו את רכב הסובארו הנ"ל, את רוס"ר M-16 הנ"ל ואת המחסניות הנ"ל. הנאשם החזיר את רוס"ר M-16 הנ"ל לידי נצר (חלום) מחמד יוסף נאג'י (אבו-חמיד).
22. הנאשם מסר לזאפר רימאווי כי בן דודו נמלט בעת שהיה בדרכו לביצוע פיגוע ירי בירושלים.

### פרט שלושים ואחד:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימוש או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם מחמד נאיפה המכונה "אבו רביע" ועם ע/כרים ראתב יונס עוויס. השניים הנ"ל מסרו לנאשם כי נמצא אצלם מחבל מתאבד וביקשו את עזרתו של הנאשם. הנאשם הסכים לעזור לשלוח את המחבל המתאבד אל תוך מדינת ישראל על מנת שיבצע פיגוע התאבדות ויגרום למותם של אזרחים ישראליים רבים ככל הניתן.
הנאשם הגיע לדירה ברמאללה שבה היו "אבו רביע", ע/כרים עוויס וכן אדם שרצה לבצע פיגוע התאבדות. הנאשם שוחח עם מהנד בדר מחמוד אל-שאער (להלן: המחבל המתאבד) והתרשם כי האחרון רציני בכוונותיו. המחבל המתאבד הנ"ל מסר לנאשם כי גם אביו הינו "שהיד" מכיוון שנהרג על-ידי חיילי צה"ל.
הנאשם העביר לידי אבו רביע רוס"ר M-16 ו-4 מחסניות מלאות בכדורים על מנת שימסור אותם למחבל המתאבד הנ"ל לצורך ביצוע פיגוע ההתאבדות המתוכנן.
יום למחרת, הנאשם חזר לדירה הנ"ל עם מצלמת וידאו. ע/כרים צילם באמצעות מצלמת הוידאו הנ"ל את המחבל המתאבד הנ"ל כשהוא מקריא כרוז, וזאת לקראת יציאתו לביצוע פיגוע ההתאבדות בתוך מדינת ישראל. הנאשם וחבריו הנ"ל אימנו את המחבל המתאבד הנ"ל בשימוש וביירי ברוס"ר M-16. לאחר מכן הנאשם העביר את המחבל המתאבד הנ"ל לדירתו של הנאשם ברמאללה תחתא. הנאשם השאיר את המחבל המתאבד הנ"ל לישון בדירתו על מנת שייצא משם ביום שלמחרת לביצוע פיגוע ההתאבדות המתוכנן.
כאשר, למחרת בבוקר, הנאשם וע/כרים עוויס הגיעו לדירתו הנ"ל של הנאשם, השניים גילו כי המחבל המתאבד נעלם. לאור היעלמותו של המחבל המתאבד הנ"ל, התכנית הנ"ל לביצוע פיגוע ההתאבדות לא יצאה אל הפועל.

### פרט שלושים ושניים:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימוש או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:
הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם נאצר מחמוד עוויס, ראש "גדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפת"ח, באיזור שכם. נאצר עוויס הודיע לנאשם כי הוא שולח אליו שני מחבלים מתאבדים. סוכם בין הנאשם לבין נאצר עוויס כי הנאשם ידאג למסור למחבלים המתאבדים הנ"ל כלי נשק ורימוני-יד וכן ידאג להכניסם אל תוך החלק המערבי של ירושלים על מנת שיבצעו שם פיגוע התאבדות כשירו לעבר אזרחים ישראליים, בכוונה לגרום

18

ת.ת. 444/02 מתוקן

למותם של אזרחים ישראליים רבים ככל הניתן, וימשיכו לירות עד שייהרגו על-ידי כוחות הביטחון הישראליים.
על-פי הוראתו של נאצר עוויס הנ"ל, ביום 17.02.02, אחמד אבו חדר, פעיל בכיר ב"גדודי חללי אלאקצא", שלח משכם לרמאללה, אל הנאשם, את סעדי ג'יהאד מחמד-עלי מקבול, עלאא מחמד עלי חסן (עזיזי) (מכונה "אסוואד"), אשר אותם ליווה עולא מחמד ג'ומעה מוצטפא. השניים היו כבר חמושים בשני רימוני-יד.
סעדי מקבול ועלאא חסן היו אמורים לבצע את פיגוע ההתאבדות כפי שתכננו הנאשם ונאצר עוויס.
במסגרת ההכנה לפיגוע ההתאבדות הנ"ל, בביתו של מחמוד אבו חדר, אחיו של אחמד אבו חדר הנ"ל, במחנה הפליטים בלאטה, אחמד אבו חדר צילם באמצעות מצלמת וידאו את סעדי מקבול ואת עלאא חסן כשהם אוחזים ברובי M-16. השניים אף קראו בפני מצלמת הוידאו כרוז של "גדודי חללי אלאקצא". אחמד אבו חדר העביר לעלאא חסן ולסעדי מקבול אימון בשימוש בנשק לקראת ביצוע הפיגוע המתוכנן.
ביום 17.02.02, סעדי מקבול ועלאא חסן יצאו משכם לרמאללה ביחד עם עולא מחמד ג'ומעה מוצטפא ואיימן עלאא צאלח בדר. אחמד אבו חדר הסביר לארבעה כי עליהם לנסוע לרמאללה במוניתו של איימן בדר. אחמד אבו חדר הסביר כי עולא מוצטפא יהיה אחראי לכך שעלאא חסן וסעדי מקבול ייפגשו ברמאללה עם פעילי "גדודי חללי אלאקצא", אשר יספקו להם כלי נשק ויסיעו אותם לירושלים לפי התכנון הנ"ל.
הארבעה הנ"ל לא הצליחו להגיע לרמאללה ולהיפגש עם הנאשם לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. הארבעה נעצרו במחסום צה"ל, בסמוך לכפר דומא שבנפת רמאללה. שני רימוני-היד שהיו במונית הנ"ל, פוצצו במקום על-ידי החבלן.

**פרט שלושים ושלושה:**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע חודש פברואר 2002 או במועד הסמוך לכך, קשר קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, ביום 15.02.02 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם מחמד סאמי אברהים עבדאללה, חוסאם עקל רג'יב שחאדה ופראס צאדק מחמד עיאנס (המכונה "אל חיטאווי").
במהלך הפגישה הנ"ל, הנאשם ביקש מחבריו הנ"ל להכניס לתוך ירושלים מחבל מתאבד, אשר יבצע שם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים ככל הניתן. חבריו הנ"ל של הנאשם הסכימו להצעה האמורה. הנאשם הבטיח לשלם לחבריו הנ"ל 300 דולר ארה"ב בתמורה להובלת המחבל המתאבד לירושלים. הנאשם הודיע לחבריו הנ"ל כי יביא אליהם את המחבל המתאבד בעוד כיום-יומיים.
הנאשם אף נתן לחבריו הנ"ל רכב סובארו אפור, נושא לוחיות רישוי ישראליות, על מנת שחבריו הנ"ל יובילו בו את המחבל המתאבד לירושלים.
מחמד עבדאללה, פראס עיאנס וחוסאם שחאדה, תכננו להכניס את המחבל המתאבד לירושלים ברכב איסוזו טנדר של פראס עיאנס. חבריו הנ"ל של הנאשם תכננו להוביל את המחבל המתאבד לאחד המקומות בירושלים שיש בו הרבה אנשים על מנת ששם המחבל המתאבד יבצע את פיגוע ההתאבדות המתוכנן. מחמד עבדאללה, פראס עיאנס וחוסאם שחאדה אף ערכו סיור בירושלים ובחרו את המקומות המתאימים לדעתם לביצוע פיגוע ירי נגד אזרחים ישראליים. בין היתר, בחרו חבריו הנ"ל של הנאשם במלון "רמדה", המנהרות של כביש בגין וצומת הגבעה הצרפתית.
תכניתם הנ"ל של הנאשם וחבריו הנ"ל לא יצאה אל הפועל מכיוון שכיומיים לאחר הפגישה הנ"ל, ביום 17.02.02, חוסאם שחאדה נעצר על-ידי כוחות הביטחון הישראליים, וכעבור יום, ביום 18.02.02, פראס עיאנס נעצר על-ידי כוחות הביטחון הישראליים.
לפי הוראתו של הנאשם, מחמד עבדאללה, לאחר מעצרם של פראס עיאנס חוסאם שחאדה, ביום 19.02.02 או בסמוך לכך, ברמאללה, נפגש עם מחמד צאדק מחמד עיאנס, אחיו של פראס עיאנס הנ"ל, ועם טארק מלחי א-נוף. במהלך הפגישה האמורה, מחמד עבדאללה ומחמד עיאנס הסכימו להצעתו של טארק א-נוף להכניס מחבל מתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים ככל הניתן.
גם התכנית הזו לא יצאה אל הפועל מכיוון שמחמד עבדאללה עצמו נעצר ביום למחרת, יום ה-20.02.02, על-ידי כוחות הביטחון הישראליים.

19

## פרט שלושים וארבעה: (פ.א. 483/02 שפט)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, באמצע חודש פברואר 2002, ברמאללה או בסמוך לכך, <u>הנאשם החליט לשלוח</u> מחבל מתאבד לירושלים <u>על מנת שיבצע</u> פיגוע ירי לעבר אזרחים ישראליים בכוונה לגרום למותם של אזרחים רבים ככל הניתן. הנאשם תכנן <u>כי המחבל</u> המתאבד יירה לעבר אזרחים ישראליים עד שייהרג מאש כוחות הביטחון הישראליים.

2. הנאשם יצר קשר טלפוני עם נאצר מחמוד עוויס, פעיל צבאי בכיר ב"תנזים" של הפתח, שהוא התאחדות בלתי מותרת, בשכם. הנאשם ביקש מנאצר עוויס לשלוח אליו לרמאללה מחבל מתאבד לצורך ביצוע פיגוע התאבדות המתוכנן.

3. לאחר מספר ימים, ראמי מחמד מחמוד נור יצר קשר עם הנאשם והודיע לו כי הוא נשלח על-ידי נאצר עוויס לצורך ביצוע פיגוע ההתאבדות המתוכנן וכי הוא נמצא ברמאללה.

4. על-פי הוראתו של הנאשם, טארק מלחי א-נוף נפגש עם ראמי נור. טארק א-נוף הביא את ראמי נור אל הנאשם.

5. <u>הנאשם שוחח עם ראמי נור ולאחר מכן לקח את</u> ראמי נור למספרה על מנת שהאחרון יסתפר לקראת ביצוע פיגוע ההתאבדות המתוכנן.

6. <u>הנאשם רכש</u> עבור ראמי נור <u>בגדים,</u> אשר עבורם שילם מכיסו 1,000 ש"ח.

7. לאחר מכן, <u>הנאשם הוביל את ראמי נור לדירה ברמאללה,</u> אשר בה התגוררו הנאשם, טארק א-נוף וזידאן רמדאן (להלן: הדירה).

8. ביום 23.02.02, לדירה הגיע גם שריף מחמד יוסף נאג'י (אבו-חמיד), אשר שהביא M-16 רוסי"ר עבור ביצוע הפיגוע המתוכנן, אשר אותו קיבל מהנאשם. שריף נאג'י (אבו-חמיד) אף הביא מחסניות לרוסי"ר M-16 הנ"ל מביתו של אחיו, נאצר נאג'י (אבו-חמיד).

9. בשעות הערב באותו היום, שריף נאג'י (אבו-חמיד) וזידאן רמדאן מסרו לראמי נור מידע על המקום שבו הוטל על ראמי נור לבצע את הפיגוע המתוכנן. הנאשם וחבריו הסבירו לראמי נור כי עליו לבצע את <u>הפיגוע</u> המתוכנן בשכונת נווה-יעקב בירושלים, במקום, אשר לגביו שריף נאג'י וזידאן רמדאן אספו מידע קודם לכן.

10. הנאשם, ביחד עם אחרים, צילם את ראמי נור באמצעות מצלמת וידאו במסגרת ההכנות לקראת ביצוע הפיגוע המתוכנן.

11. על-פי בקשתו של שריף נאג'י (אבו-חמיד), אחיו - נסר (חלום) נאג'י (אבו-חמיד) פנה אל כאמל עינאא וביקש מהאחרון להסיע את ראמי נור לירושלים.

12. ביום 25.02.02, בשעות הערב, ראמי נור יצא מרמאללה לכיוון ירושלים ברכבו של כאמל עינאא, כאשר ברכב מוסתר רוסי"ר M-16 הנ"ל, המחסניות וכן רימון-יד, אשר אותו מסר לראמי נור נסר (חלום) נאג'י (אבו-חמיד).

13. ראמי נור הגיע לכביש הראשי בשכונת נווה-יעקב בירושלים.

14. ראמי נור ירד מהרכב הנ"ל במקום האמור, כשהוא חמוש ברוסי"ר M-16 הנ"ל, מחסניות ורימון-יד. ראמי נור התקרב אל תחנת האוטובוס של קו 25 של "אגד" הנמצאת במקום ופתח באש אוטומטית ברוסי"ר M-16 הנ"ל לעבר כלי רכב שעברו במקום וכן לעבר אזרחים ישראליים שהיו במקום בכוונה לגרום למותם של אנשים רבים ככל האפשר. למקום האמור הגיעה ניידת המשטרה וראמי נור פתח באש אוטומטית לעבר שני שוטרי משטרת ישראל שהיו בניידת הנ"ל בכוונה לגרום למותם. הכדורים שנורו על-ידי ראמי נור פגעו בשני השוטרים הנ"ל שהסתערו לעבר ראמי נור וירו לעברו. כתוצאה מפגיעות הכדורים שנורו על-ידי ראמי נור, השוטרת גלית ארביב ז"ל נפצעה ונפלה על הקרקע. ראמי נור התקרב אל השוטרת גלית ארביב ז"ל וירה לעברה צרור נוסף ממרחק קצר. כתוצאה מפגיעות הקליעים שנורו על-ידי ראמי נור, השוטרת גלית ארביב ז"ל נפטרה כעבור מספר שעות.

15. לאחר שלראמי נור נגמרה התחמושת הוא יידה את רימון-היד שהחזיק לעבר ג'יפ של צה"ל שהגיע למקום בכוונה לגרום למותם של חיילי צה"ל. רק לאחר שראמי נור נפצע ונגמרה לו התחמושת, השוטרים והאזרחים שהיו במקום הצליחו להשתלט עליו.

16. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של השוטרת **גלית ארביב ז"ל.**

√ **פרט שלושים וחמישה:** (פ.א. 483/02 שפט)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במעשיו המתוארים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של אזרחים ישראליים רבים ככל האפשר. כתוצאה מפגיעות הקליעים שנורו על-ידי ראמי מחמד מחמוד נור, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, נפצעו שמונה אזרחים ושוטרים ישראליים.

√ **פרט שלושים וששה:** (פ.א. 483/02 שפט)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר ככלי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים וארבעה, במעשיו המתוארים בפרט האישום השלושים וארבעה, גרם במזיד ושלא כדין נזק רב לתחנת האוטובוס של קו 25 של "אגד" בנווה יעקב, לבתים הסמוכים ולכלי רכב שהיו במקום הנ"ל, אשר נפגעו כתוצאה מהיריות שנורו על-ידי ראמי מחמד מחמוד נור.

√ **פרט שלושים ושבעה:** (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, יצר קשר טלפוני עם נאצר מחמוד עוויס, פעיל צבאי בכיר ב"תנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, בשכם.
2. נאצר עוויס הודיע לנאשם כי הוא שולח אליו מחבל מתאבד נוסף על מנת שהנאשם ישלח אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי. תוכנן כי המחבל המתאבד יירה לעבר אזרחים ישראליים בכוונה לגרום למותם של אזרחים רבים ככל הניתן וכי ימשיך לירות עד שייהרג מאש כוחות הביטחון הישראליים.
3. ביום 04.03.02, יצר עם הנאשם קשר אברהים חסונה, שוטר במשטרה הימית של הרשות הפלסטינית, אשר הודיע כי הגיע לרמאללה על-פי הוראתו של נאצר עוויס וכי הוא המחבל המתאבד לצורך ביצוע פיגוע הירי המתוכנן. על-פי הוראתו של הנאשם, טארק מלחי א-נוף נפגש ברמאללה עם אברהים חסונה.
4. באותו היום, ברמאללה, טארק א-נוף נפגש עם שריף מחמד יוסף נאג'י (אבו-חמיד). במהלך הפגישה האמורה, טארק א-נוף הכיר לשריף נאג'י (אבו-חמיד) את אברהים חסונה.
5. טארק א-נוף הודיע לשריף אבו-חמיד כי הנאשם הביא את אברהים חסונה הנ"ל משכם על מנת שיבצע פיגוע התאבדות בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.
6. על-פי הוראתו של הנאשם, טארק א-נוף לקח את אברהים חסונה למספרה על מנת שיסתפר לקראת ביצוע פיגוע ההתאבדות המתוכנן. כמו כן, טארק א-נוף ושריף נאג'י (אבו-חמיד) רכשו עבור אברהים חסונה בגדים חדשים. עבור הבגדים הנ"ל טארק א-נוף שילם 1,000 ש"ח, אשר אותם קיבל מהנאשם למטרה זו.
7. לאחר מכן, לפי הוראתו של הנאשם, טארק א-נוף הוביל את אברהים חסונה לדירה ברמאללה תחתא, אשר בה התגוררו טארק א-נוף, זידאן רמדאן והנאשם (להלן: הדירה).
8. הנאשם הגיע לדירה וצילם באמצעות מצלמת וידאו את אברהים חסונה לקראת ביצוע פיגוע ההתאבדות המתוכנן.

21

ת.ת. 444/02 מתוקן