## פרט שלושים:

**מהות העבירה:** ניסיון לגרימת מוות במונה, עבירה לפי סעיף 15(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970, וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, ניסה לגרום במונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ███████
2. ███████ מסר לנאשם כי בן דודו, ███████, מוכן לבצע פיגוע התאבדות.
3. על-פי בקשתו של הנאשם, ███████ ערך פגישה בין הנאשם לבין ███████ הנ"ל.
4. לאחר הפגישה הנ"ל, הנאשם הסכים להצעתו של ███████ לשלוח את ███████ לבצע פיגוע התאבדות בירושלים על מנת לגרום למותם של אזרחים ישראלים רבים ככל הניתן.
5. תוכנן כי ███████ יבצע פיגוע התאבדות באמצעות רובה, דהיינו יירה לעבר אזרחים ישראלים בירושלים במונה לגרום למותם של אזרחים ישראלים רבים ככל הניתן וימשיך לירות עד שייהרג על-ידי כוחות הביטחון הישראליים.
6. הנאשם לקח מ- ███████ רובה M-16 ומספר מחסניות לרובה הנ"ל מלאות בכדורים לצורך ביצוע פיגוע ההתאבדות המתוכנן.
7. הנאשם יצר קשר עם ███████ (המכונה "███████") ו-███████. על-פי בקשתו של הנאשם השלושה הנ"ל הגיעו לרמאללה ונפגשו שם עם הנאשם.
8. הנאשם מסר לחבריו הנ"ל כי הוא מבקש מהם להכניס לירושלים מחבל נוסף, אשר יבצע בירושלים פיגוע התאבדות, דוגמת הפיגוע המתואר בפרט האישום העשרים ושישה, במטרה לגרום למותם של אזרחים רבים ככל הניתן. חבריו הנ"ל של הנאשם הסכימו להשתתף בהסעת המחבל המתאבד הנ"ל לירושלים.
9. הנאשם מסר ל-███████ רכב סובארו אפור, השייך למשפחתו של הנאשם. ███████ חזר עם רכב הסובארו לביתו בדיר נבאללה, ואילו ███████ נסע עם רכב איסוזו טנדר שלו לביתו בכפר עקב.
10. יום למחרת, הנאשם התקשר אל ███████ ו-███████ והורה להם להגיע לתחנת הדלק הנמצאת ברמאללה תחתא, לאסוף משם את המחבל המתאבד ולהסיע אותו לירושלים על מנת שיבצע שם את פיגוע ההתאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן.
11. ███████ נסע ברכב הסובארו עד למחסום קלנדיה, שם הוא החנה את הרכב ועלה לרכב האיסוזו של ███████ שהגיע למקום. משם המשיכו השניים למקום המפגש האמור.
12. ברמאללה, בתחנת הדלק הנ"ל, ███████ נפגשו עם הנאשם, אשר הציג בפניהם את ███████ שהוא המחבל המתאבד. הנאשם מסר לידי ███████ רובה M-16 הנ"ל ושלוש המחסניות מנ"ל מלאות בכדורים לרובה M-16.
13. ███████ הסתירו את רובה M-16 והמחסניות בתוך רכב האיסוזו.
14. ███████ נסע ביחד עם המחבל המתאבד לירושלים במטרה שהאחרון יבצע שם פיגוע ירי ויגרום למותם של אזרחים רבים ככל הניתן.
15. מכן ███████ עבר לרכב הסובארו, שהשאיר במקום קודם לכן ונסע לצומת א-ראם. ███████ עבר ברכב הסובארו את מחסום א-ראם והמתין במקום ל-███████ שעקפו את מחסום א-ראם ברגל. לאחר מכן, ███████ חזר, עלה לרכב האיסוזו, שבו היה מוסתר הנשק, ועבר את מחסום א-ראם כשהוא נוסע לבד ברכב האיסוזו עם הנשק.
16. ███████ הסיע את המחבל המתאבד עד למסגד בשועפט. לשם הגיע גם ███████ ברכב האיסוזו עם הנשק והתחמושת.
17. שם, המחבל המתאבד, ███████, ביקש להיכנס למסגד ולהתפלל לפני שיבצע את פיגוע ההתאבדות. ███████ הסכימו לבקשה הנ"ל.
18. בזמן ש-███████ התפלל במסגד האמור, מחמד ███████ נסע ברכב הסובארו הנ"ל לגבעת שאול שבירושלים במטרה לבדוק אם יש בדרך מחסומי צה"ל או משטרה. השניים התליטו להסיע את המחבל המתאבד לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן, זאת מכיוון שיש במקום האמור אזרחים רבים.
19. כאשר ███████ חזרו למסגד בשועפט במונה על מנת לאסוף משם את ███████ ולהסיע אותו לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן, השניים לא מצאו את המחבל המתאבד במסגד.

17

ת.פ. 444/02 מתוקן

20. התקשרו אל הנאשם ודיווחו לו כי המחבל המתאבד ברח להם.
הנאשם הורה ל▬ לחזור לרמאללה.

21. ▬ חזר לרמאללה, נפגש שם עם הנאשם ומסרו לידיו את רכב הסובארו הנ״ל, את רוס״ר ה-M-16 הנ״ל ואת המחסניות הנ״ל. הנאשם החזיר את רוס״ר ה-M-16 הנ״ל לידי ▬

22. הנאשם מסר ל▬ כי בן דודו נמלט בעת שהיה בדרכו לבצוע פיגוע ירי בירושלים.

### פרט שלושים ואחד:

**מהות העבירה:** פגיעה בביטחון האזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשל״ר-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בתחילת חודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה״ל וחייליו או לפעולתם, שימוש או ביטחונם של כל אחד מאלה: אניה, אירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, התסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה״ל, דהיינו:

הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ▬ המכונה "▬" ועם ▬. השניים הנ״ל מסרו לנאשם כי נמצא אצלם מחבל מתאבד וביקשו את עזרתו של הנאשם. הנאשם הסכים לעזור לשלוח את המתאבד אל תוך מדינת ישראל על מנת שיבצע פיגוע התאבדות ויגרום למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הגיע לדירה ברמאללה שבה היו "▬" וכן אדם שרצה לבצע פיגוע התאבדות. הנאשם שוחח עם ▬ (להלן : המחבל המתאבד) והתרשם כי האחרון רציני בכוונותיו. המחבל המתאבד הנ״ל מסר לנאשם כי גם אביו היה "שהידי" מכיוון שנהרג על-ידי חיילי צה״ל.

הנאשם העביר לידי ▬ רוס״ר M-16 ו-4 מחסניות מלאות בכדורים על מנת שימסרו אותם למחבל המתאבד הנ״ל לצורך ביצוע פיגוע ההתאבדות המתוכנן.

יום למחרת, הנאשם חזר לדירה הנ״ל עם מצלמת וידאו. צילם באמצעות מצלמת הוידאו הנ״ל את המחבל המתאבד הנ״ל כשהוא מקריא ברוז, וזאת לקראת יציאתו לבצוע פיגוע התאבדות בתוך מדינת ישראל. הנאשם ומברבן הנ״ל אימנו את המחבל המתאבד הנ״ל בשימוש בבירי ברוס״ר M-16. לאחר מכן הנאשם העביר את המחבל המתאבד הנ״ל לדירתו של הנאשם ברמאללה תחתא. הנאשם השאיר את המחבל המתאבד הנ״ל לישון בדירתו על מנת שיצא משם ביום שלמחרת לביצוע פיגוע ההתאבדות המתוכנן.

כאשר, למחרת בבוקר, הנאשם ו▬ הגיעו לדירתו חניו של הנאשם, השניים גילו כי המחבל המתאבד נעלם. לאור היעלמותו של המחבל המתאבד הנ״ל, התכנית הנ״ל לבצוע פיגוע התאבדות לא יצאה אל הפועל.

### פרט שלושים ושניים:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשל״ר-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה״ל וחייליו או לפעולתם, שימוש או ביטחונם של כל אחד מאלה: אניה, אירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, התסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה״ל, דהיינו:

הנאשם הנ״ל, במועד האמור, שוחח באמצעות טלפון עם ▬, ראש "יגדודי חללי אלאקצא", הזרוע הצבאית של "פתח תנזים" באיזור שכם. ▬ הודיע לנאשם כי הוא שולח אליו שני מתבלים מתאבדים. סוכם בין הנאשם לבין ▬ כי הנאשם ידאג למסור למתבלים המתאבדים הנ״ל כלי נשק ורימוני-יד וכן ידאג להכניסם אל תוך הוותק המעורב של ירושלים על מנת שיבצעו שם פיגוע התאבדות כשיידו לעבר אזרחים ישראליים, במונה לגרום

למותם של אזרחים ישראלים רבים ככל הניתן, וימשיכו לירות עד שייהרגו על-ידי כוחות הביטחון הישראליים.
על-פי הוראתו של נאצר עווס הנ"ל, ביום 17.02.02, ▮▮▮▮▮, פעיל בכיר בייגדודי תללי אלאקצאיי, שלח משכם לרמאללה, אל הנאשם, את ▮▮▮▮▮ ▮▮▮▮▮ (מכונה "▮▮▮"), אשר אותם ליווה ▮▮▮▮▮. השניים היו כבר ממושים בשני רימוני-יד.

▮▮▮▮▮ ▮▮▮▮▮ היו אמורים לבצע את פיגוע ההתאבדות כפי שתכנו הנאשם ▮▮▮.
במסגרת ההכנה לפיגוע ההתאבדות הנ"ל, בביתו של ▮▮▮▮▮, אחיו של ▮▮▮▮▮
הנ"ל, במחנה הפליטים בלאטה, צילם באמצעות מצלמת וידאו את ▮▮▮▮▮
ואת ▮▮▮▮▮ כשהם אוחזים ברובי M-16. השניים אף קראו בפני מצלמת הוידאו כרוז של "גדודי חללי אלאקצאיי". ▮▮▮▮▮ העביר ל▮▮▮▮▮ אימון בשימוש בנשק לקראת ביצוע הפיגוע המתוכנן.

ביום 17.02.02, ▮▮▮▮▮ יצאו משכם לרמאללה ביחד עם ▮▮▮▮▮ ▮▮▮▮▮. הסביר לארבעה כי עליהם לנסוע לרמאללה, במעונתו של ▮▮▮▮▮. הסביר כי ▮▮▮▮▮ יהיה אחראי לכך ש▮▮▮▮▮ ו▮▮▮▮▮ ייפגשו ברמאללה עם פעילי "גדודי חללי אלאקצאיי", אשר יספקו להם כלי נשק ויסיעו אותם לירושלים לפי התכנון הנ"ל.
הארבעה הנ"ל לא הצליחו להגיע לרמאללה ולהיפגש עם הנאשם לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. הארבעה נעצרו במחסום צה"ל, בסמוך לכפר דנמא שבסופת לרמאללה. שני רימוני-היד שהיו במכונית הנ"ל, פוצצו במקום על-ידי החבלן.

/ פרט שלושים ושלושה:

מהות העבירה: קשירת קשר לגרימת מוות במזונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968 וסעיף 51(א) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970.

פרטי העבירה: הנאשם הנ"ל, באיזור, באמצע חודש פברואר 2002 או במועד הסמוך לכך, קשר עם אדם אחר לגרום בכוונה למותו של אחר, כדלהלן:
הנאשם הנ"ל, ביום 15.02.02 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ("המכונה ▮▮▮").

במהלך הפגישה הנ"ל, הנאשם ביקש מחבריו הנ"ל להכניס לתוך ירושלים מחבל מתאבד, אשר יבצע שם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים ככל הניתן. חבריו הנ"ל של הנאשם הסכימו להצעה האמורה. הנאשם הבטיח לשלם לחבריו הנ"ל 300 דולר ארה"ב בתמורה להובלת המחבל המתאבד לירושלים. הנאשם הודיע לחבריו הנ"ל כי יביא אליהם את המחבל המתאבד בעוד כיום-יומיים.

הנאשם אף נתן לחבריו הנ"ל רכב סובארו אפור, נושא לוחיות רישוי ישראליות, על מנת שחבריו הנ"ל יובילו בו את המחבל המתאבד לירושלים.

▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ וחבריו הנ"ל של הנאשם ותכננו להוביל את המחבל המתאבד לירושלים ולאחד המקומות בירושלים שיש בו הרבה אנשים על מנת ששם המחבל המתאבד יבצע את פיגוע ההתאבדות המתוכנן. ▮▮▮▮▮ אף ערכו סיור בירושלים ובחרו את המקומות המתאימים לדעתם לביצוע פיגוע ירי נגד אזרחים ישראליים. בין היתר, בחרו חבריו הנ"ל של הנאשם במלון "רמדה", המחרות של כביש בגין וצומת תנועה הצרפתיה.

תכניתם הנ"ל של הנאשם וחבריו הנ"ל לא יצאה אל הפועל מכיון שכיומיים לאחר הפגישה הנ"ל, ביום 17.02.02, ▮▮▮▮▮ נעצר על-ידי כוחות הביטחון הישראליים, ובעוד יום, ביום 18.02.02, ▮▮▮▮▮ נעצר על-ידי.כוחות הביטחון הישראליים.
לפי הוראתו של הנאשם, ▮▮▮▮▮, ביום 19.02.02 או בסמוך לכך, ברמאללה, נפגש עם ▮▮▮▮▮, אחיו של ▮▮▮▮▮ הנ"ל, עם ▮▮▮▮▮. בהלך הפגישה האמורה, ▮▮▮▮▮ הסכימו להצעתו של ▮▮▮▮▮ להכניס מחבל מתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים ככל הניתן.

גם התכנית הזו לא יצאה אל הפועל מכיוון ש▮▮▮▮▮ ▮▮▮▮▮ עצמו מעצר ביום למחרת, יום ה-20.02.02, על-ידי כוחות הביטחון הישראליים.

19

ת.פ. 444/02 מתוקן

**פרט שלושים וארבעה:** (פ.א. 483/02 שפט) /ד

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ס-1970. וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, באמצע חודש פברואר 2002, ברמאללה או בסמוך לכך, הנאשם החליט לשלוח מחבל מתאבד לירושלים על מנת שיבצע פיגוע ירי לעבר אזרחים ישראלים בכוונה לגרום למותם אזרחים רבים ככל הניתן. הנאשם תכנן כי המחבל המתאבד יירה לעבר אזרחים ישראלים עד שיהרג מאש מוחות הביטחון הישראלים.

2. הנאשם יצר קשר טלפוני עם ▬▬▬▬▬ פעיל צבאי בכיר ב"יתנזים" של הפתייח שתוא התאחודות בלתי מותרת, בשכם. הנאשם ביקש מ ▬▬▬▬▬ לשלוח אליו לרמאללה מחבל מתאבד לצורך ביצוע פיגוע ההתאבדות המתוכנן.

3. לאחר מספר ימים, ▬▬▬▬▬ יצר קשר עם הנאשם והודיע לו כי הוא שלח על-ידי ▬▬▬▬▬ לצורך ביצוע פיגוע ההתאבדות המתוכנן וכי הוא נמצא ברמאללה.

4. על-פי הוראותיו של הנאשם, ▬▬▬▬▬ נפגש עם ▬▬▬▬▬. ▬▬▬▬▬ הביא את ▬▬▬▬▬ אל הנאשם.

5. הנאשם שוחח עם ▬▬▬▬▬ ולאחר מכן לקח את ▬▬▬▬▬ למספרה על מנת שהאחרון יסתפר לקראת ביצוע פיגוע ההתאבדות המתוכנן.

6. הנאשם רכש עבור ▬▬▬▬▬ בגדים, אשר עבורם שילם מכיסו 1,000 ש"ח.

7. לאחר מכן, הנאשם הוביל את ▬▬▬▬▬ לדירה ברמאללה, אשר בה התגוררו הנאשם, ▬▬▬▬▬ (להלן: הדירה).

8. ביום 23.02.02, לדירה הגיע גם ▬▬▬▬▬ אשר שהביא רוס"ר M-16 עבור ביצוע הפיגוע המתוכנן, אשר אותו קיבל מהנאשם. אף הביא מחסניות לרוס"ר M-16 חניל מביתו של אחיו, ▬▬▬▬▬.

9. בשעות הערב באותו היום, ▬▬▬▬▬ מסר לראמי נור מידע על המקום שבו הוטל על ▬▬▬▬▬ לבצע את הפיגוע המתוכנן. הנאשם וחבריו הסבירו ל▬▬▬▬▬ כי עליו לבצע את הפיגוע המתוכנן בשכונת עונה-יעקב בירושלים, במקום, אשר לגביו ▬▬▬▬▬ אסף מידע קודם לכן.

10. הנאשם, ביחד עם אחרים, צילם את ▬▬▬▬▬ באמצעות מצלמת וידאו במסגרת והכנות לקראת ביצוע הפיגוע המתוכנן.

11. על-פי בקשתו של ▬▬▬▬▬, אחיו - ▬▬▬▬▬ פנה אל ▬▬▬▬▬ וביקש מהאחרון להסיע את ▬▬▬▬▬ לירושלים.

12. ביום 25.02.02, בשעות הערב, ▬▬▬▬▬ יצא מרמאללה למזון ירושלים ברכב של ▬▬▬▬▬ כאשר ברכב מוסתר רוס"ר M-16 חניל המחסניות וכן רימון-יד, אשר אותו מסר ▬▬▬▬▬.

13. ▬▬▬▬▬ הגיע לכביש הראשי בשכונת נווה-יעקב בירושלים.

14. ▬▬▬▬▬ ירד מהרכב חניל במקום האמור, כשהוא חמוש ברוס"ר M-16 חניל, מחסניות ורימון-יד. ▬▬▬▬▬ התקרב אל תחנת האוטובוס של קו 25 של "אגד" הנמצאת במקום ופתח באש אוטומטית ברוס"ר M-16 והגניל לעבר כלי רכב שעברו במקום וכן לעבר אזרחים ישראלים שהיו במקום בכוונה לגרום למותם של אנשים רבים ככל האפשר. למקום האמור הגיעה ניידת המשטרה ו▬▬▬▬▬ פתח באש אוטומטית לעבר שני שוטרי-משטרת ישראל שהיו בניידת הנ"ל בכוונה לגרום למותם. הכדורים שנורו על-ידי ▬▬▬▬▬ פגעו בשני השוטרים חניל שהסועירו לעבר ▬▬▬▬▬ וירו לעברה. כתוצאה מפגיעות הכדורים שנורו על-ידי ▬▬▬▬▬ השוטרת גלית ארביב ז"ל נפצעה ונפלה ממרחק קצר. התקרב אל השוטרת גלית ארביב ז"ל וירה לעברה צרור נוסף ממרחק קצר. כתוצאה מפגיעות הקליעים שנורו על-ידי ▬▬▬▬▬ השוטרת גלית ארביב ז"ל נפטרה כעבור מספר שעות.

15. לאחר ש▬▬▬▬▬ גמרה להתחמש הוא יידה את רימון-יד שהחזיק לעבר ג'יפ של צה"ל שהגיע למקום בכוונה לגרום למותם של חיילי צה"ל. רק לאחר ש▬▬▬▬▬ נפצע ונגמרה לו התחמושת, השוטרים והאזרחים שהיו במקום הצליחו להשתלט עליו.

16. במעשיו המתוארים לעיל, הנאשם הניל גרם בכוונה למותה של השוטרת **גלית ארביב ז"ל**.

ל. **פרט שלושים וחמישה:** (פ.א. 483/02 שמט)

**מהות העבירה:** מסיון לגרימת מוות במונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בעשיו והמתוארים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של אזרחים ישראלים רבים ככל האפשר. כתוצאה מפגיעות הקליעים שנורו על-ידי ▇▇▇▇, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, נפצעו שמונה אזרחים ושוטרים ישראליים.

נ. **פרט שלושים ושישה:** (פ.א. 483/02 שמט)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים וארבעה, במעשיו המתוארים בפרט האישום השלושים וארבעה, גרם במזיד ושלא כדין נזק רב לתחנת האוטובוס של קו 25 של "אגד" במוצא יעקב, לבתים הסמוכים ולכלי רכב שהיו במקום הנ"ל, אשר נפגעו כתוצאה מהיריות שנורו על-ידי ▇▇▇▇▇▇▇▇▇▇.

ע. **פרט שלושים ושבעה:** (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות במונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה אז בסמוך לכך, יצר קשר טלפוני עם ▇▇▇▇, פעיל צבאי בכיר ב"תנזים" של הפתיח, שהוא התאחדות בלתי מותרת, בשכם.
2. ▇▇▇▇ הודיע לנאשם כי הוא שולח אליו מחבל מתאבד נוסף על מנת שהנאשם ישלח אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי. תוכנן כי המחבל המתאבד יירה לעבר אזרחים ישראלים בכוונה לגרום למותם של אזרחים רבים ככל הניתן וכי ימשיך לירות עד שייהרג מאש כוחות הביטחון הישראליים.
3. ביום 04.03.02, יצר עם הנאשם קשר ▇▇▇▇▇▇▇▇▇, שוטר במשטרה הימית של הרשות הפלסטינית, אשר הודיע כי הגיע לרמאללה על-פי הוראתו של ▇▇▇▇▇▇ וכי הוא המחבל המתאבד לצורך ביצוע פיגוע חירי המתוכנן. על-פי הוראתו של הנאשם, ▇▇▇▇▇▇ נפגש ברמאללה עם ▇▇▇▇▇▇.
4. באותו היום, ברמאללה, ▇▇▇▇▇▇ נפגש עם ▇▇▇▇▇▇ במהלך הפגישה האמורה, ▇▇▇▇▇▇ הכיר ל-▇▇▇▇▇▇ את ▇▇▇▇▇▇.
5. ▇▇▇▇▇▇ הודיע ל-▇▇▇▇▇▇ כי הנאשם הביא את ▇▇▇▇▇▇ הנ"ל משכם על מנת שיבצע פיגוע התאבדות בכוונה לגרום למותם של אזרחים ישראלים רבים ככל האפשר.
6. על-פי הוראתו של הנאשם, ▇▇▇▇▇▇ לקחת את ▇▇▇▇▇▇ למספרה על מנת שיסתפר לקראת ביצוע פיגוע ההתאבדות והמתוכנן. כמו כן, ▇▇▇▇▇▇ רכשו עבור ▇▇▇▇▇▇ **בגדים חדשים**. עבור הבגדים הנ"ל שילם ▇▇▇▇▇▇ 1,000 ש"ח, אשר אותם קיבל מהנאשם למטרה זו.
7. לאחר מכן, לפי הוראתו של הנאשם, ▇▇▇▇▇▇ הוביל את ▇▇▇▇▇▇ לדירה ברמאללה שנתנא, אשר בה התגוררו ▇▇▇▇▇▇ והנאשם (להלן: הדירה).
8. הנאשם הגיע לדירה וצילם באמצעות מצלמת וידאו את ▇▇▇▇▇▇ לקראת ביצוע פיגוע ההתאבדות המתוכנן.

ת.ת. 444/02 מתוקן                          21                          P 5: 195

9. הנאשם הורה ל■■■ להוביל את ■■■ אל תוך מדינת ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן. הנאשם הורה ל■■■ להביא נשק ■ לצורך ביצוע הפיגוע המתוכנן.

10. חבריו הנ"ל של הנאשם החלו לחפש אדם אשר יכניס את ■■■ אל תוך מדינת ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן ויגרום למותם של אזרחים ישראלים רבים ככל האפשר.

11. ■■■ בעל תעודת זהות ישראלית המתגורר בירושלים, ובקש מהאחרון להגיע בדחיפות לרמאללה. פנה אל ■■■

12. ■■■ נפגש עם ■■■ הנ"ל בבית קפה ברמאללה וביקש ממנו להסיע מחבל מתאבד אל תוך מדינת ישראל. ■■■ הסכים להצעה זו, אך ביקש כי ידאג לספק למטרה זו רכב לא גנוב בעל רישוי לחיות רישוי ישראליות.

13. ■■■ פגשו ברמאללה את ■■■ אשר היה ביחד עם ■■■. נהג ברכב פורד טרנזיט עם לוחיות רישוי ישראליות, מ.ר. 7014515 (להלן: הרכב). האנשים הנ"ל ביקשו מ■■■ את רכבם ואת הרשיונות של הרכב לצורך הסעת מחבל מתאבד אל תוך שטחה של מדינת ישראל על מנת שהמחבל המתאבד יבצע שם פיגוע התאבדות. ■■■ מסר את הרכב לידי ■■■ אך ביקש כי הוא עצמו ינהג בו.

14. בשלב הזה, ■■■ הלכו לדירת ש.ס. ■■■ התקלח ולבש את הבגדים החדשים, אשר נקנו עבורו על-פי הוראת הנאשם כאמור לעיל.

15. בסביבות השעה 20:00, ■■■ שנסעו ברכב, נפגשו בכיכר השעוני ברמאללה עם ■■■ אשר היו חמושים ברוסי"ר M-16, 6 מחסניות מלאות בכדורים ושני רימוני-יד, עלו לרכב. למקום הגיע גם ■■■ אשר מסר ל■■■ סכין קומנדו באורך של כ-25 ס"מ. ■■■ אמר ל■■■ לדקור אזרחים ישראלים על מנת לגרום למותם לאחר שתיגמר לו התחמושת.

16. כל האנשים הנ"ל נסעו בדרכ לכיכר רפידין ברמאללה, מכיוון שבמקום האמור אין הרבה עוברי-אורח.

17. בכיכר רפידין הנ"ל, ■■■ פירקו את רוסי"ר M-16 הנ"ל והכניסו אותו אל תוך הדלת הצדדית של הרכב.

18. ■■■ נישקו את ■■■ ואיחלו לו הצלחה.

19. ■■■ הודיע לחבריו כי הוא עובד בתל-אביב ולכן מכיר מקום בתל-אביב, אשר בו ניתן לבצע את פיגוע ההתאבדות המתוכנן.

20. הוחלט, כי לאחר ש■■■ יורידו את ■■■ בתל-אביב במקום הומה אדם, ■■■ ימתין מספר דקות על מנת שחבריו הנ"ל יספיקו להימלט מהמקום ברכב ולאחר מכן יפתח באש אוטומטית ברוסי"ר M-16 הנ"ל לעבר אזרחים ישראלים שיהיו במקום, בכוונה לגרום למותם של אזרחים ישראלים רבים ככל האפשר וימשיך לירות עד שיהרג מאש סוחות הביטחון הישראליים שיגיעו למקום.

21. ■■■ עלה לרכב, אשר בו נהג ■■■ ולידו ישב ■■■, והשלושה נסעו לכיוון תל-אביב על מנת לבצע שם את פיגוע ההתאבדות המתוכנן.

22. במהלך נסיעתם של ■■■ לתל-אביב, ■■■ שוחח עמם באמצעות טלפון סלולרי.

23. באותו הלילה, לאחר ש■■■ הגיעו לתל-אביב, בסמוך לגשר מעריב שבדרך פתח-תקווה, ■■■ הראה ל■■■ מקום הומה אדם והנחה אותו לבצע שם את הפיגוע המתוכנן.

24. ■■■ הוציא את רוסי"ר M-16, מחסניות ורימוני-יד הנ"ל, שהיו מוסתרים בדלת של הרכב כאמור לעיל.

25. בסמוך לשעה 15:02, ביום 05.03.02 או במועד תסמוך לכך ■■■ הורידו את ■■■ מן הרכב, כשהוא חמוש ברוסי"ר M-16, רימוני-יד וסכין קומנדו הנ"ל, בסמוך למסעדה "סי-פוד מרקט" הנמצאת בדרך פתח-תקווה בתל-אביב (להלן: המסעדה) על מנת שיבצע שם את הפיגוע המתוכנן.

26. ■■■ נסעו ברכב מהמקום לכיוון ירושלים.

27. ■■■ התקרב אל המסעדה "סי-פוד מרקט" ופתח באש אוטומטית ברוסי"ר M-16 לעבר יושבי המסעדה ועוברי האורח בדרך פתח-תקווה בכוונה לגרום למותם.

28. לאחר מכן, ■■■ השליך את שני רימוני-היד הנ"ל לעבר המסעדה בכוונה לגרום למותם של יושבי המסעדה ועוברי אורח, אך רימוני-היד לא התפוצצו.

29. לאחר שרוט״ך M-16, אשר בו החזיק ▓▓▓▓ הפסיק לירות עקב מעצור, ▓▓▓▓ הוציא את סכין הקומנדו הנ״ל והחל לדקור אזרחים ישראלים שהיו במקום בכוונה לגרום למותם.

30. למקום האמור, הגיע השוטר רס״ר סלים ברכאת ז״ל. רס״ר סלים ברכאת ז״ל הסתער לעבר ▓▓▓▓ והשתלט עליו. רס״ר סלים ברכאת ז״ל הספיק להודיע למפקדיו על ההשתלטות על המחבל.

31. בשלב הזה, ▓▓▓▓ דקר באמצעות סכין הקומנדו הנ״ל את רס״ר סלים ברכאת ז״ל בצווארו בכוונה לגרום למותו. כתוצאה מהדקירה הנ״ל, רס״ר סלים ברכאת ז״ל נפטר במקום.

32. במעשיו המתוארים לעיל, הנאשם הנ״ל גרם בכוונה למותו של רס״ר סלים ברכאת ז״ל.

33. לאחר של ▓▓▓▓ נודע משיחות הטלוויזיה על כך שהפיגוע המתוכנן בוצע כאמור לעיל, הוא יצר קשר עם הנאשם ועדכן את האחרון בדבר ביצוע הפיגוע האמור.

34. מיד לאחר מכן, הנאשם הודיע ל ▓▓▓▓ ראש "יותניסים" של הפתי״ח באזור, ול ▓▓▓▓, ראש "יחידי חלקי אלאקצא", הזרוע הצבאית של "התנזים" של הפתי״ח, על הפיגוע שבוצע. כמו כן, הנאשם יצר קשר עם סוכנות הידיעות "רויטרס" והודיע על הפיגוע שבוצע כאמור לעיל.

### פרט שלושים ושמונה:   (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשל״ו-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור, בפרט האישום השלושים ושבעה, במעשיו המתוארים בפרט האישום השלושים ושבעה, גרם בכוונה למותו של יוסף חבי ז״ל, אשר נדקר על-ידי ▓▓▓▓ בבית חזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

### פרט שלושים ותשעה:   (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשל״ו-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין איזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור, בפרט האישום השלושים ושבעה, במעשיו המתוארים בפרט האישום השלושים ושבעה, גרם בכוונה למותו של אליהו דותן ז״ל, אשר נדקר על-ידי ▓▓▓▓ בבית חזה, בבטנו ובגבו ונפטר כתוצאה מכך.

### פרט ארבעים:   (פ.א. 4258/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשל״ו-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור, בפרט האישום השלושים ושבעה, במעשיו המתוארים בפרט האישום השלושים ושבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר. כתוצאה מהיריות שנורו על-ידי ▓▓▓▓ נפצעו עשרות אזרחים ישראלים.

פרט ארבעים ואחד: (פ.א. 4258/02 ירקון)

מהות העבירה: היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 458(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו המתוארים בפרט האישום השלושים ושבעה, גרם במזיד ושלא כדין נזק רב למסעדה "סי-פוד מרקט", למסעדה "ימפגש הסטייק" וכן לבניינים הסמוכים וכלי הרכב שהיו באיזור, אשר נפגעו כתוצאה מהירויות שנורו על-ידי ▓▓▓▓▓▓.

פרט ארבעים ושניים: (פ.א. 568/02 שפט)

מהות העבירה: ניסיון לגרימת מוות במזיד, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 08.03.02 או במועד הסמוך לכך, ניסה לגרום במזיד למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ▓▓▓▓, פעיל צבאי בכיר בייתניזם של הפתייח, שהוא הוותאחדות בתי מותרת, בשכם.

2. ▓▓▓▓ ביקש מהנאשם להיפגש ברמאללה עם ▓▓▓▓, אשר שוחרר לפני זמן קצר מהכלא של חביטחון המסכל של הרשות הפלסטינית.

3. הנאשם נפגש ברמאללה עם ▓▓▓▓. במהלך השיחה בין השניים ▓▓▓▓ מסר לנאשם כי יש לו מחבל מתאבד וכי הוא צריך אגורת נפץ על מנת שהמחבל המתאבד יוכל לבצע באמצעותה פיגוע התאבדות בתוך שטחה של מדינת ישראל לנבור ירבום למותם של אזרחים ישראלים רבים ככל הניתן. הנאשם הסכים למסור ל▓▓▓▓ את אגורת הנפץ המבוקשת לצורך ביצוע פיגוע ההתאבדות המתוכנן, כמו כן, הסכים הנאשם לבקשתו של ▓▓▓▓ לארגן מקום ציונה ברמאללה עבור המחבל המתאבד.

4. קודם לכן, הנ"ל שוחח עם ▓▓▓▓ הנ"ל, ▓▓▓▓ הנ"ל הודיע כי איתר אדם אשר מוכן לבצע פיגוע התאבדות בירושלים, והוא ▓▓▓▓, תושב השומרון. ▓▓▓▓ ביקש מ▓▓▓▓ להעביר את ▓▓▓▓ לירושלים על מנת לבצע פיגוע התאבדות בכוונה לגרום למותם של אזרחים ישראלים. ▓▓▓▓ הסכים לכך. ▓▓▓▓ פגש את ▓▓▓▓ סיפר ל▓▓▓▓ כי במותינו לבצע פיגוע התאבדות, וזאת לאחר שארתסתו, ▓▓▓▓ בוצעה גם היא פיגוע התאבדות.

5. הנ"ל הוקשה ל▓▓▓▓, תושב בית חנינא, פעיל הארגון "החזית העממית לשחרור פלסטין", והודיע לו, כי בכוונתו לבצע פיגוע בירושלים וזאת על ידי שיגור מחבל מתאבד שברשותו. ▓▓▓▓ ביקש מ▓▓▓▓ לאתר אנשים, אשר יכניסו את המחבל המתאבד לירושלים. ▓▓▓▓ הסכים לבצע את המבוקש ממנו.

6. הנ"ל התקשר לחברו ▓▓▓▓, תושב בית חנינא, פעיל הארגון "החזית העממית לשחרור פלסטיני", ונון נפגש עמו ביום 06.03.02 ברמאללה. ▓▓▓▓ הגיע לפגישה זו ונפגש עם ▓▓▓▓ בסמוך לבית קפה "ערבסקי". ▓▓▓▓ הציעו ל▓▓▓▓ להכניס מחבל מתאבד מרמאללה לירושלים לצורך ביצוע פיגוע. ▓▓▓▓ הדריך את ▓▓▓▓ לחובל את המחבל המתאבד לגבעה הצרפתית בירושלים, בדרכים עקפות מתאימות, על מנת שיבצע שם פיגוע ויגרום בכך למותם של אזרחים ישראלים: ▓▓▓▓ הציעו ל▓▓▓▓ הלופות למקום בביצוע הפיגוע: סופרמרקט בסמוך לתחנת הדלק בשכונת רמת אשכול, מסעדת "פיצה דומינוס" בגבעה הצרפתית או אחת מתחנות האוטובוסים שבצומת הגבעה הצרפתית.

7. לצורך קבלת אגורת הנפץ עבור המחבל המתאבד, הנאשם הפגיש את ▓▓▓▓ עם ▓▓▓▓, פעיל כוח 17 של הרשות הפלסטינית, אשר הבטיח להעביר לידי המחבל המתאבד אגורת נפץ שברשותו ולהעמיד לרשותו של ▓▓▓▓, פעיל כוח 17 של הרשות הפלסטינית בשם ▓▓▓▓, אשר ילביש את אגורת הנפץ על המחבל המתאבד.

8. הנאשם הוביל את המחבל המתאבד-אל-הדירה ברמאללה תחתא, אשר אותה שכר הנאשם (להלן: הדירה).



**פרט ארבעים וארבעה:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימוש או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, סטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלת ציבורית, או תקשורת צימרית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ████████, שומר ראשו של ████████, ראש הביטחון המקומי של הרשות הפלסטינית באיזור, ████████, הודיע לנאשם כי ברצונו לבצע פיגוע ירי נגד חיילי צה"ל הנמצאים במחסום סורדא ולגרום למותם. הנאשם מסר ל████████ 2 אקדחים, רוב"ר M-16 מקוצר עם כוונת טלסקופית, נבו קופסה של כדורים לצורך ביצוע הפיגוע האמור.

לאחר זמן קצר בוצע פיגוע ירי במחסום סורדא ובמהלכו נהרג מז"ל צה"ל. הנאשם מיהר ליצור קשר עם ████████, אך האחרון מסר כי זה לא הוא שביצע את הפיגוע האמור. לאחר מכן, ████████ החזיר לנאשם את כלי הנשק, אשר אותם מסר לו הנאשם קודם לכן לצורך ביצוע הפיגוע האמור.

**פרט ארבעים וחמישה:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחיילו או לפעולתם, שימוש או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, סטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ████████, פעיל בכיר ב"עדודי מלכי אלאקצא", הזרוע הצבאית של "יהתנועים" של הפת"ח, שהוא תתאהדות בלתי מותרת. ████████ מסר לנאשם כי יש לו מחבל מתאבד המוכן לבצע פיגוע התאבדות בתוך מדינת ישראל. הנאשם הסכים לשלוח את המחבל המתאבד אל תוך שטחה של מדינת ישראל על מנת שיגרום למותם של אזרחים ישראליים רבים ככל הניתן.

למחרת היום, הגיע אל הנאשם אדם בשם ████████ משכם. ████████ מסר לנאשם כי נשלח על-ידי ████████ לצורך ביצוע פיגוע התאבדות בתוך ישראל.

הנאשם שוחח עם ████████ וגילה כי ████████ לא יודע לירות טוב. בעקבות כך הנאשם שוב יצר קשר עם ████████. הנאשם מסר ל████████ כי ████████ יוכל לבצע את פיגוע ההתאבדות באמצעות חגורת נפץ שישא על גופו. ████████ הסכים להצעת הנאשם והבטיח לדאוג לשלוח אל הנאשם גורת נפץ לצורך ביצוע פיגוע ההתאבדות מתוכנן.

על-פי הוראתו של הנאשם, ████████, רכש עבור ████████ בגדים חדשים ולאחר מכן ליווה את ████████ לדירה ברמאללה תחנא, שבה התגוררו ████████ והנאשם (להלן: הדירה).

הפיגוע חמתוכנן לא יצא אל הפועל לאור העובדה שמטעני התבלה לא נשלחו לנאשם, וכן מכיוון ש████████ נעצר על-ידי כוחות הביטחון הישראלים.

לאחר מעצרו של ████████, הנאשם שוחח עם ████████. הנ"ל אודות מה שקרה. ████████ הבטיח לנאשם לשלוח אליו מתאבדים נוספים על מנת שהנאשם ישלח אותם אל תוך שטחה של מדינת ישראל לצורך ביצוע פיגועי התאבדות. ████████ לא הספיק לשלוח אל הנאשם מחבלים מתאבדים נוספים, מכיוון שהן הנאשם והן ████████ נעצרו על-ידי כוחות צה"ל במהלך המבצע "חומת מגן".

Case 1:04-cv-00397-GBD-RLE   Document 907-69   Filed 05/13/15   Page 11 of 18

**פרט ארבעים ושישה:**

**מהות העבירה:** ייצור חפץ נפץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, ייצר כלי ירייה, תחמושת, פצצה, רימון יד, חפץ נפץ או מבעיר, ללא הערות היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה נפגש עם ▇▇▇▇▇▇▇▇ ן, אשר ביקש מהנאשם לקבל כסף עבור פעילות צבאית. לאור האמור, הנאשם העביר ל▇▇▇▇▇▇ סכום של 8,000 ש"ח אשר אותו קיבל ▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇ ביחד עם ▇▇▇▇▇▇▇▇▇▇▇ רכשו בכסף הנ"ל חומרים כימיים שונים, ייצר מהחומרים הכימיים הנ"ל מטען חבלה גדול.

**פרט ארבעים ושבעה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירך לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי ▇▇▇▇▇▇ ראש "גנדז"י חלקי אלאקצא" - הזרוע הצבאית של "התנזים" של הפתיח באיזור ג'נין, אשר שהה אותה עת ברמאללה, אקדח 14, וזאת ללא ומתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט ארבעים ושמונה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירך לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי ▇▇▇▇▇▇▇▇ ▇▇▇▇▇ רובה M-16 ארוך תמורת 4,000 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט ארבעים ותשעה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירך לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית הראשונה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ▇▇▇▇▇▇▇▇ וקיבל מהאחרון 1,500 כדורים לרובה M-16. הנאשם שילם ל▇▇▇▇▇▇ הנ"ל 3,000 ש"ח עבור הכדורים הנ"ל. הנאשם ביצע את המיוחס לו בפרט האישום הזה לפי הוראתו של ▇▇▇▇▇▇▇▇ ראש "התנזים" של הפתיח באיזור.



27

ת.ת. 444/02 מתוקן

P 5: 201

## פרט חמישים:

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מאי 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של ██████ מסר לידי האחרון ולטייר קלצינקוב עם מחסניתו-28 כדורים. הנאשם ביצע את המיוחס לו בפרט האישום הזה לאחר שקיבל אישור לעשות כן מ ██████ ראש "ההתנויים" של חפת"ח באיזור, ██████ השתתף בהתהלוכה ברמאללה, כשהוא מחזיק ברוטייר קלצינקוב הנ"ל. במהלך התהלוכה הנ"ל ██████ היה ורטל פנים וירה ברוטייר קלצינקוב הנ"ל באוויר. לאחר מכן, ██████, על-פי הוראתו של הנאשם, העביר את רוטייר קלצינקוב הנ"ל לידי ██████

## פרט חמישים ואחד:

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעבר עבירה על תחיקת הביטחון או עסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום סרחות צה"ל וחיילו וקיום הסדר הציבורי או שיש יסוד סביר להשוות כי עשה כן, בין על-ידי מתן ידיעות, מוסות, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מסמכי אמצעי והובלה, נפט או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם ██████ הנ"ל ██████ ואת ██████ עבד אללה ברגותי מהכלא של הביטחון המסכל של הרשות הפלסטינית בביתוניא לדירה, אשר אותה שכר הנאשם ברמאללה תחתיו, ██████ ועבדאללה ברגותי הנ"ל הם פעילים בכירים בארגון החמאס, שהוא הנאשתדזת בלתי מוזכרת, ואחראים לביצוע מספר פיגועים נגד אזרחים ישראליים, ביניהם פיגוע התוסף במסעדה "סבארו" בירושלים ביום 09.08.01. הנאשם ו ██████ הליונו את ██████ ואת עבדאללה ברגותי בדירה הנ"ל במשך מספר ימים, לפני ש ██████ ועבדאללה ברגותי עזבו את דירתו הנ"ל של הנאשם, הנאשם מסר לכל אחד מהם אקדח 14.

## פרט חמישים ושניים:

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ██████ פעיל צבאי בכיר בביתנוויסטי" של הפתייח, שהוא התאחדות בלתי מוזכרת, בשכם. ██████ אמר לנאשם כי הנא צריך 1,000 כדורים לרוסייר M-16. הנאשם הבטיח להביא ל ██████ את הכדורים המבוקשים. לאחר מספר ימים הנ"ל אל.הנאשם, ברמאללה, אדם בשמו של ██████. הנאשם מסר לאחרון 1,000 כדורים לרוסייר M-16 על מנת שיעביר אותם לשכם ל ██████ תמורת 1,000 כדורים הנ"ל ██████ העביר לחשבון הבנק של הנאשם סכום של 3,000 שייח.

הנאשם ביצע את המיוחס לו בפרט האישום הזה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט חמישים ושלושה:**

**מהות העבירה:** סתר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סתר בציוד מלחמתי (יהודה והשומרון) (מסי 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש ינואר 2002 או בסמוך לכך, סתר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה ███████ ביקש מהנאשם לקבל שלושה אקדחים על מנת למסרם לסרג' מעיל צבאי בינונדי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפתייה, ███████ לצורך ביצוע פיגוע ירי במחסום סורדא של צה"ל.

הנאשם הסכים לבקשתו של ███████ ומסר. לידי. האחרון ב. אקדחים, אקדח בלגי 9 מ"מ, אקדח סטאר 9 מ"מ ואקדח שמוגו אינו ידוע לתביעה, וכן קופסה כדורים לאקדחים הנ"ל, המכילה 50 כדורים לאקדח בקוטר 9 מ"מ.

באותו היום, במפקדה על הביטחון המסכל של חרשות הפלסטינית בביתלחם או בסמוך לכך, ███████ העביר את שלושת האקדחים והכדורים הנ"ל לידי ███████ הפיגוע המתוכנן לא בוצע באמצעות האקדחים הנ"ל, מכיוון שליכה לפי המועד שבו היה אמור להתבצע הפיגוע הנ"ל, בוצע פיגוע ירי אחר במחסום סורדא.

לאחר משלושה ימים, ברמאללה או בסמוך לכך ███████ החזיר את האקדחים הנ"ל ביחד עם קופסת הכדורים הנ"ל לידי הנאשם.

הנאשם ביצע את המיוחס לו בפרט אישום זה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**עדי התביעה:**

1. ███████ לח"ק יהודה. [גובה אמרות הנאשם מיום 16.04.02 ומיום 03.05.02 ומגיש כתב-יד של הנאשם בערבית + ז"ח מסדר זיהוי תצלומים + לוח התצלומים]
2. ███████ לח"ק יהודה. [גובה אמרות הנאשם מיום 21.04.02 ומיום 13.05.02 ומגיש שני כתבי-ידו של הנאשם בערבית]
3. ███████ תשאול אמן לכיש. [גובה אמרת הנאשם מיום 05.09.02]
4. ███████ (עצור)
5. ███████ (עצור) (ת.ת. 243/02)
6. ███████ (עצור) (ת.ת. 242/02)
7. ███████ (עצור) (ת.ת. 241/02)
8. ███████ (עצור) (ת.ת. 265/02)
9. ███████ (עצור)
10. ███████ (עצור)
11. ███████ (עצור) (ת.ת. 339/02)
12. ███████ (עצור) (ת.ת. 355/02)
13. ███████ (עצור) (ת.ת. 311/02)
14. ███████ (עצור) (ת.ת. 345/02)
15. ███████ (עצור) (ת.ת. 356/02)
16. ███████ (עצור) (ת.ת. 318/02)
17. ███████ (עצור)
18. ███████ (עצור)
19. ███████ (עצור) (ת.ת. 353/02)
20. ███████ (עצור) (ת.ת. 221/02)
21. ███████ (עצור) (ת.ת. 212/02)
22. ███████ (עצור)
23. ███████ (עצור) (ת.ת. 639/01)
24. ███████ (עצור) (ת.ת. 174/02)
25. ███████ (עצור) (ת.ת. 173/02)
26. ███████ (עצור) (ת.ת. 322/02)
27. ███████ (עצור) (ת.ת. 775/02)

29                                                    ת.פ. 444/02 מתוקן

ת.פ. 234/01 מח"מ י"ט

28. ▄▄▄▄▄ צה"ל. (פרטים בתביעה) [עדות]
29. ▄▄▄▄▄ (פרטים בתביעה) [עדות]
30. ▄▄▄▄▄ (פרטים בתביעה) [עדות]
31. ▄▄▄▄▄ מז"פ - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
32. ▄▄▄▄▄ המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח בדיקות רכב]
33. ▄▄▄▄▄ חקירות - תחנת ציון. [מגיש טופס לוואי למוצגים]
34. ▄▄▄▄▄ משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגיש תע"צ - קבלת מוצגים לבדיקה] (יוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
35. ▄▄▄▄▄, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ ▄▄▄▄▄] (יוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
36. ▄▄▄▄▄ צה"ל. [עדות - קביעת מותו של אלעזר עקיבא פשקוס ז"ל]
37. ▄▄▄▄▄, קופ"ח כללית - ירושלים. [עדות + מגיש חוו"ד פטירה]

ת.פ. 457/01

38. ▄▄▄▄▄, תחנת בנימין. [מגיש דו"ח פעולה]
39. ▄▄▄▄▄ תחנת בנימין. [מגיש זכ"ד-רכב GMC + שרטוט זירת האירוע + דו"ח תפיסה וסימון + טופס לוואי למוצגים]
40. ▄▄▄▄▄, מז"פ יהודה. [מגיש לוחות תצלומים + מזכר]
41. ▄▄▄▄▄ המעבדה הניידת, מז"פ - מטא"ר, ירושלים. [מגיש לוחות תצלומים + דו"ח בדיקות רכב]
42. ▄▄▄▄▄ (פרטים בתביעה) [נפצע בפיגוע חיצי]
43. ▄▄▄▄▄ (פרטים בתביעה) [הגיע ראשון לזירת הפיגוע]
44. ▄▄▄▄▄ ביה"ח הדסה - הר-הצופים, ירושלים. [מגישה תעודת רופא - סכום ביניים] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)

ת.א. 2159/01 בנימין

45. ▄▄▄▄▄, תחנת בנימין. [מגיש דו"ח פעולה]
46. ▄▄▄▄▄ מז"פ, תחנת בנימין. [מגיש לוחות תצלומים + דו"ח תפיסה וסימון]
47. ▄▄▄▄▄ המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח ביקור ראשוני בזירת האירוע - תפיסת ותרמילים ושרידי קליעים]
48. ▄▄▄▄▄ תחנת בנימין. [מגיש זכ"ד - שרשרת מוצג + טופס לוואי למוצגים + דו"ח ביקור בזירת העבירה]
49. ▄▄▄▄▄ משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגיש תע"צ - קבלת מוצגים לבדיקה] (יוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
50. ▄▄▄▄▄, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ ב/07 - 4238/01] (יוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
51. ▄▄▄▄▄, מד"א - תחנת לוד. [מגיש דו"חות רפואיים מהשטח + הודעות פטירה + עדות]
52. ▄▄▄▄▄ צה"ל. [עדות]
53. ▄▄▄▄▄ המכון הלאומי לרפואה משפטית. [מגיש שתי חוו"ד מומחה] (יוזמן לפי דרישה מפורשת של הסניגוריה בלבד)
54. ▄▄▄▄▄ (פרטים בתביעה) [זיהוי הרוגים]

ת.א. 7915/01 ציון

55. ▄▄▄▄▄ תחנת ציון. [מגיש דו"ח פעולה]
56. ▄▄▄▄▄, מז"פ - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה + לוחות תצלומים]
57. ▄▄▄▄▄, תחנת ציון. [מוצא תרמילים בזירת האירוע - שרשרת ראיות]
58. ▄▄▄▄▄ המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח בדיקת רכב - תפיסת שרידי קליעי]
59. ▄▄▄▄▄ מת"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
60. ▄▄▄▄▄, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגישה תע"צ - קבלת מוצגים לבדיקה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)

30

ת.ת. 444/02 מתוקן

P 5: 204



61. ▇▇▇▇▇, מעבדת נשק, מז"פ, מטא"יר - ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ זב/07 - 4539/01] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
62. ▇▇▇▇▇, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של משה גייט] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
63. ▇▇▇▇▇, ביה"ח הדסה עין-כרם, ירושלים. [מגיש הודעת פטירה של מאיר וייסבריד ז"ל] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
64. משה וייס, ת.ז. 024001505. [פרטים בתביעה] (מבצע קשוח בפיגוע)
65. ▇▇▇▇▇. [פרטים בתביעה] (עדת ראיה)

פ.א. 481/01 ציון
66. טוני עמיאל, ת.ז. 032441040. [פרטים בתביעה] (נהגת רכב החונדה)
67. פיני מימון, ת.ז. 025759762. [פרטים בתביעה] (נוסע רכב החונדה)
68. פזית מימון, ת.ז. 040128084. [פרטים בתביעה] (נוסעת רכב החונדה)

פ.א. 8379/01 ציון
69. ▇▇▇▇▇, מז"פ - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה + דוייח תפיסה וסימון]
70. ▇▇▇▇▇, מת"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
71. ▇▇▇▇▇, המעבדה הניידת, מז"פ, מטא"יר - ירושלים. [מגיש דוייח בדיקת רכב - תפיסת שדרקיד קלען]
72. ▇▇▇▇▇, מת"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
73. ▇▇▇▇▇, משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגיש תעייצ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
74. רסייב יוסי בן ישראל, מ.א. 44771, משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגיש תעייצ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
75. ▇▇▇▇▇, מעבדת נשק, מז"פ, מטא"יר - ירושלים. [מגיש שתי חוו"ד מומחה מתיק מזייפ זב/07 - 4723/01] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
76. ▇▇▇▇▇ [מציאת ונרמילים בשטח - שרשרת ראיות]
77. מלכה כהן, ת.ז. 038791386. [פרטים בתביעה] (נפגעה בפיגוע)
78. פנחס כהן, ת.ז. 038348256. [פרטים בתביעה] (נפגעה בפיגוע)
79. ▇▇▇▇▇ (פרטים בתביעה) (עד ראיה - טיפל בפצועים)
80. ▇▇▇▇▇, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של פנחס כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
81. ▇▇▇▇▇, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של מלכה כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)

מ.א. 39/02 בנימין
82. ▇▇▇▇▇, סיור - תחנת בנימין. [מגיש דו"ח פעולה]
83. ▇▇▇▇▇, תחנת בנימין. [מגיש זכ"ד ת.חקור תפיסה וסימון]
84. ▇▇▇▇▇, מזייפ יהודה. [מגיש לוחות תצלומים + אסף תרמילים בזירת האירוע]
85. ▇▇▇▇▇, המעבדה הניידת, מז"פ, מטא"יר - ירושלים. [מגיש לוחות תצלומים + דו"ח בדיקת רכב]
86. ▇▇▇▇▇, תחנת בנימין. [מגיש טופס לוואי למוצגים]
87. ▇▇▇▇▇, משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגישה תעייצ - קבלת מוצגים לבדיקה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)
88. ▇▇▇▇▇, צה"ל. [פרטים בתביעה] (עדות - קביעת מותה של יואלה דן ז"ל + טיפול בפצועים)
89. ▇▇▇▇▇, ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת רופא - סיכום מחלקה של רשל של רחל עיני] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
90. רחל (רשל) עיני, ת.ז. 075266614. [פרטים בתביעה] (נפצעה בפיגוע)
91. ▇▇▇▇▇ (פרטים בתביעה) [עדות + סקיצה] (עד ראית)
92. ▇▇▇▇▇ (פרטים בתביעה) (זיהוי ההרוגה)

פ.א. 502/02 ציון
93. ▇▇▇▇▇, מת"מ - תחנת ציון. [מגיש דו"יח זכ"ד, תפיסה וסימון]
94. ▇▇▇▇▇, מת"מ - תחנת ציון. [מגיש דו"ית תפיסה וסימון]
95. ▇▇▇▇▇, מת"מ - תחנת ציון. [מגיש דו"יח זכ"ד, תפיסה וסימון + תצלומים]

ת.ז. 444/02 מתוקן

96. ███ מתי"ם - תחנת ציון. [מגיש דו"ח פעולה - מציאת צולבת]
97. ███ תשאול - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
98. ███ (פרטים בתביעה) [עד ראיה - דרף אחרי המחבל]
99. ███ מג"ב ירושלים. (עד ראיה - רדף אחרי המחבל וירה לעבר המחבל
100. ███ יחייס 2 - תחנת ציון. (עד ראיה - ירה לעבר המחבל)
101. ███ ימ"ר ירושלים. (עד ראיה - רדף אחרי המחבל וירה לעבר המחבל
102. ███ לסיים אופנועים - תחנת שלם. (עד ראיה - רדף אחרי המחבל, הרחיק את משקו של המחבל לאחר שהמחבל נהרג)
103. ███ (פרטים בתביעה) (עד ראיה - מאבטח שהיה במקום - ירה לעבר המחבל ופגע בו)
104. ███ בילוש - ימ"ר ירושלים. (עד ראיה - רדף אחרי המחבל, ירה לעבר המחבל)
105. ███ בילוש - ימ"ר ירושלים. (עד ראיה - ירה לעבר המחבל)
106. ███ (פרטים בתביעה) (עד ראיה - נהג אוטובוס "אגד" שהיה במקום הפיגוע)
107. ███ (פרטים בתביעה) (עד ראיה)
108. ███ (פרטים בתביעה) (עד ראיה)
109. ███ (פרטים בתביעה) (עד ראיה)
110. ███ (פרטים בתביעה) (עד ראיה)
111. ███ (פרטים בתביעה) (עדת ראיה)
112. ███ (פרטים בתביעה) (עד ראיה)
113. ███ (פרטים בתביעה) (עד ראיה)
114. ███ (פרטים בתביעה) (עד ראיה - ראה את המחבל מגיע למקום הפיגוע ברגל)
115. ███ (פרטים בתביעה) (זיהוי גופתה של אורה (סבטלנה) סנדלר ז"ל)
116. ███ ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של אורה (סבטלנה) סנדלר ז"ל] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)
117. ███ ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של שרה המבורגר ז"ל] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)

רשימת עדים נוספת בנוגע לפצועים בפיגוע ברחוב יפו ביום 22.01.02 והתעודות רפואיות הקשורות לפציעתם תימסר במהלך המשפט

ת.א. 483/02 שמט
118. ███ מתי"ם ימ"ר ירושלים. [מגיש דו"ח תפיסה וסימון]
119. ███ מתי"ם ימ"ר ירושלים. [מגיש ילקוט תצלומים + שני טפסי לווי למוצגים]
120. ███ זיהוי ציון. [מגיש דו"ח תפיסה וסימון + דו"ח ביקור בזירת העבירה + העברת המוצגים למז"פ - מטא"ר]
121. ███ יחידת סיור 4, תחנת ציון. [מגיש דו"ח תפיסה וסימון]
122. ███ מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
123. ███ ביה"ח חדסה הר-הצופים, ירושלים. [מגיש הודעת פטירתו] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
124. ███ (פרטים בתביעה) (השתלט על המחבל, נפצע בפיגוע)
125. ███ (פרטים בתביעה) (השתלט על המחבל)
126. ███ (פרטים בתביעה) (השתלט על המחבל)
127. ███ (פרטים בתביעה) (עד ראיה)
128. ███ (פרטים בתביעה) (עד ראיה)
129. סטס קריסנסקי, ת.ז. 304389240. (פרטים בתביעה) (נפצע בפיגוע)
130. ליאגר סקיחדה, ת.ז. 032087587. (פרטים בתביעה) (נפצע בפיגוע)
131. קרן קדמי, ת.ז. 032777716. (פרטים בתביעה) (נפצעה בפיגוע)
132. אדם גרפילד, ת.ז. 011935426. (פרטים בתביעה) (נפצע בפיגוע)
133. אלי אורחנ, ת.ז. 033404773. (פרטים בתביעה) (נפצע בפיגוע)
134. עמיחי דהאן, ת.ז. 039243944. (פרטים בתביעה) (נפצע בפיגוע)

ת.פ. 444/02 מתוקן

135. תמרה ליפשיץ פיש, ת.ז. 306706318. (פרטים בתביעה) [נפגעה בפיגוע]

**ת.פ.א. 4258/02**

136. ▇▇▇ מתנדב ביחידת סיור ירקון. (פרטים בתביעה) [שתי עדויות, היה בידו עם סלים ברקאת ז"ל]
137. ▇▇▇ זיהוי ירקון, משטרת ישראל.
138. ▇▇▇ קצין אח"מ ירקון.
139. ▇▇▇ צח"מ ירקון.
140. ▇▇▇ (פרטים בתביעה) [עד ראיה – היה בתוך המסעדה]
141. ▇▇▇ (פרטים בתביעה) [מאבטח במסעדה, נפצע בפיגוע]
142. ▇▇▇ (פרטים בתביעה) [מאבטח במסעדה]
143. ▇▇▇ (פרטים בתביעה) [עד ראיה]
144. ▇▇▇ (פרטים בתביעה) [עדות ראיה]
145. ▇▇▇ (פרטים בתביעה) [עדות ראיה]
146. שלמה דוד, ת.ז. 00022280. (פרטים בתביעה) [נפצע קשה בפיגוע מדקירת סכין]
147. ▇▇▇ (פרטים בתביעה) [עדות ראיה, נפצעה בפיגוע]
148. ▇▇▇ (פרטים בתביעה) [עד ראיה, נפצע בפיגוע]
149. ▇▇▇ (פרטים בתביעה) [עד ראיה, נפצע בפיגוע]
150. איוונה ריבקטמן, ת.ז. 309998540. (פרטים בתביעה) [נפצעה בפיגוע]
151. ▇▇▇ (פרטים בתביעה) [ראה את הרכב שבו הגיע המחבל]
152. ▇▇▇ (פרטים בתביעה) [עדות ראיה]
153. ▇▇▇ (פרטים בתביעה) [עד ראיה, נפצע בפיגוע]
154. ▇▇▇ (פרטים בתביעה) [עד ראיה - עדות + שרטוט זירת האירוע]
155. ▇▇▇ (פרטים בתביעה) [עד ראיה]
156. ▇▇▇ (פרטים בתביעה) [עד ראיה]
157. ▇▇▇ (פרטים בתביעה) [עד ראיה]
158. ▇▇▇ (פרטים בתביעה) [עד ראיה]
159. ▇▇▇ (פרטים בתביעה) [עד ראיה]
160. ▇▇▇ (פרטים בתביעה) [עד ראיה]
161. ▇▇▇ (פרטים בתביעה) [עד ראיה - שתי עדויות - ראה את המחבל]

**זוקרי אנשים**

162. ▇▇▇ (פרטים בתביעה) [זיהוי גופתו של יוסף חבי ז"ל]
163. נעם אספיר, ת.ז. 031877665. (פרטים בתביעה) [נפצע בפיגוע]
164. יוסי אזוז, ת.ז. 029416740. (פרטים בתביעה) [נפצע קשה בפיגוע]
165. מיכל גרונבך, ת.ז. 043401140. (פרטים בתביעה) [נפצעה בפיגוע]
166. ▇▇▇ המכון הלאומי לרפואה משפטית, תל אביב. [מגיש חוו"ד מומחה] [יזומן לפי בקשה מפורשת של הסניגוריה בלבד].
167. רשימות בתי חולים - רשומה מוסדית.

<u>רשימת עדים נוספת בנוגע לפצועים והרוגים בפיגוע במסעדה "סי-פוד מרקט" בתל-אביב ביום 05.03.02 תימסר במהלך המשפט</u>

**ת.פ.א. 568/02 שמט**

168. ▇▇▇ מג"יב. (פרטים בתביעה) [עדות ומגיש דו"ח פעולה]
169. ▇▇▇ מג"ב. [הפרטים בתביעה].
170. ▇▇▇ מג"ב. [הפרטים בתביעה].
171. ▇▇▇ זיהוי - מחנת ציון. [מגיש 2 דו"חות תפיסה וסימון + מוצגים מכרטיס לרישום מוצגים מס' 294/02].
172. ▇▇▇ תחנת ציון - חבלה. [מגישה דו"ח פעולה].
173. ▇▇▇ מז"פ - מעבדת חבלה, מטאייר, ירושלים. [מגיש חוו"ד מומחה בצירוף טפסי לוואי למוצגים] [יזומן לפי בקשה מפורשת של הסניגוריה בלבד].
174. ▇▇▇ משרד מוצגים - מז"פ, מטאייר, ירושלים. [מגיש תעייצ - קבלת מוצגים לבדיקה] [יזומן לפי בקשה מפורשת של הסניגוריה בלבד].
175. ▇▇▇ המכון הלאומי לרפואה משפטית, תל אביב. [מגיש חוו"ד מומחה] [יזומן לפי בקשה מפורשת של הסניגוריה בלבד].

**ת.פ.א. 783/02 בנימין**

176. ▇▇▇ תחנת בנימין. [מגיש דו"ח פעולה]

33                                    ת.פ. 444/02 מושקן

177. ███████, זיהוי יחידה. (מגיש דו"ח ביקור בזירת עבירה + לוח תצלומים)

178. ███████, תחנת בנימין. (מגיש טופס לוואי למוצגים + זכ"ד + מוצגים מכרטיס מס' 106/02)

179. סמיר קרש, ת.ז. 080062771. (פרטים בתביעה) (נפגע בפיגוע הירי)

180. ███████, בי"ח הדסה עין-כרם, ירושלים. (מגיש דו"ח רפואי) (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)

181. שאילתא לאיתור והקרנת פרטי רכב ובעליו. (רשומה מוסדית)

סרן צבאי
מיכאל קו███
תובע

תאריך: 29.09.2002
סימוכין: 02-444 מתוקן

34

ת.ה. 444/02 מתוקן

P 5: 208