**Fiftieth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in May 2001 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, at the request of ██████████████ delivered to the latter a Kalashnikov assault rifle with a magazine and 28 cartridges. The Defendant carried out that which has been attributed to him in this count of the indictment after having received approval to do so from ████████████ ██████████████ ︵ in the Area.

██████████ participated in a procession in Ramallah while holding the above mentioned Kalashnikov assault rifle in the air. Thereafter, ██████████ at the instruction of the Defendant, transferred the above mentioned Kalashnikov assault rifle to ████████████

**Fifty first count:**

**Nature of the offense:** Giving shelter, an offense pursuant to Section 57 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2001 or thereabouts, assisted or gave shelter to an unspecific person who had committed an offense against the security legislation or had been or was involved in any activity which was intended to harm the public welfare, the welfare of the Israel Defense Forces troops and soldiers and the maintenance of public order or concerning whom there are reasonable grounds to suspect that he did so, whether by giving information, shelter, food, beverages, money, clothing, weapons, ammunition, supplies, animal fodder, means of transport, petroleum or fuel of any type and kind whatsoever, or in any other way, as follows:

The above mentioned Defendant, at the time set forth, with ████████████ transferred ██ ██████████████████ and Abdullah Barghouti from the prison of the Preventive Security of

[Stamp] P 5: 202

Prosecution Case 444/02 Amended

the Palestinian Authority in Bitunia to an apartment, which the Defendant had rented in downtown Ramallah.

The above mentioned ████████ and Abdullah Barghouti are senior operatives of the Hamas Organization, which is an illegal organization, and are responsible for carrying out a number of attacks against Israeli civilians, including the bombing attack at the "Sbarro" Restaurant in Jerusalem on August 9, 2001. The Defendant and ██████████ provided lodging to ████████ and Abdullah Barghouti in the above mentioned apartment for several days.

Before ████████ and Abdullah left the above mentioned apartment of the Defendant, the Defendant provided each of them a "14" pistol.

**Fifty second count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above Defendant, in the Area, in late 2001 — early 2002 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, talked by telephone with ██████ ████████ which is an illegal organization, in Nablus. ████████ told the Defendant that he needed 1,000 cartridges for M-16 assault rifles. The Defendant promised to bring to ████████ the requested cartridges. After a few days, a person came on behalf of ████████ to the Defendant. The Defendant delivered to the later 1,000 cartridges for M-16 assault rifles in order for him to transfer them to Nablus, to ████████ In exchange for the above mentioned 1,000 cartridges, ████████ transferred to the bank account of the Defendant the amount of NIS 3,000.

[Stamp] P 5: 202 [continued]

Prosecution Case 444/02 Amended

74

**Fifty third count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition of Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above Defendant, in the Area, in January 2002 or thereabouts, traded in or otherwise handled war materiel, without a permit signed by or on behalf of the commander of the Area, as follows:

At the time set forth, in Ramallah or thereabouts, ███████████████ approached the above mentioned Defendant. ██████████ asked the Defendant for three pistols in order to deliver them to ⟨                      ⟩, the military arm of the "Tanzim" of the Fatah, ██████████████████████ for the purpose of carrying out a shooting attack at the Surda checkpoint of the IDF.

The Defendant agreed to the request of ██████████ and provided the latter with 3 pistols: a 9 mm Belgian pistol, a 9 mm Star pistol and a pistol of a type that is not known to the prosecution, and a box of cartridges for these pistols, containing 50 cartridges for a 9 mm caliber pistol.

On that day, at the headquarters of the Preventive Security of the Palestinian Authority in Bitunia or thereabouts, ██████████ transferred the above mentioned three pistols and cartridges to ██████
██████████████████

The planned attack was not carried out using these pistols, because on the night before the time at which the above mentioned attack was supposed to be carried out, another shooting attack was carried out at the Surda checkpoint.

After about three days, in Ramallah or thereabouts, ██████████ returned the above mentioned pistols with the above mentioned box of cartridges to the Defendant.

The Defendant carried out that which has been attributed to him in this count of the indictment without a permit signed by or on behalf of the commander of the Area.

**Witnesses for the prosecution:**

[Stamp] P 5: 203

Prosecution Case 444/02 Amended



1.  ███████████████ Badge No. ████ Judea Investigations Office [taker of the statement of the Defendant on April 14, 2002 and on May 3, 2002, and submitter of the handwriting of the Defendant in Arabic + identity line-up report, photographs + photograph table]

2.  ███████████████ Badge No. ██████ Judea Investigations Office. [taker of the statements of the Defendant on April 21, 2002 and May 13, 2002 and submitter of the two handwriting specimens of the Defendant in Arabic]

3.  ██████████, Badge No. ████ Aman Lakhish Questioning. [taker of the statement of the Defendant on September 5, 2002].

4.  ██████████████ Identity No. ████████ (detained).

5.  ███████████████ Identity No. ██████ (detained) (Prosecution Case 243/02).

6.  ████████████████████ Identity No. █████████ (detained) (Prosecution Case 242/02).

7.  ███████████████ Identity No. ██████ (detained) (Prosecution Case 241/02)

8.  ██████████████ Identity No. ███████ (detained) (Prosecution Case 265/02).

9.  ███████████████ Identity No. ██████ (detained)

10. ████████████████, Identity No. ████████ (detained)

11. ████████████████████ Identity No. ██████ (detained) (Prosecution Case 339/02).

12. █████████████████ Identity No. ███████ (detained) (Prosecution Case 355/02)

13. ██████████████ Identity No. ███████ (detained) (Prosecution Case 311/02)

[Stamp] P 5: 203 [continued]

Prosecution Case 444/02 Amended

14. ████████████████████████ Identity No. ████████ (detained)
(Prosecution Case 345/02)

15. ████████████████ Identity No. ██████ (detained) (Prosecution Case
356/02).

16. ██████████████████ Identity No.██████ (detained) (Prosecution Case
318/02).

17. ████████████Identity No.████████(detained)

18. ████████████████dentity No.██████ (detained)

19. ████████████████ Identity No. ██████ (detained) (Prosecution Case
353/02)

20. ██████████████ Identity No. ██████ (detained) (Prosecution Case
221/02)

21. ████████████████, Identity No. ██████(detained) (Prosecution Case
212/02)

22. ██████████████, Identity No.██████(detained).

23. ██████████████████Identity No.██████ (detained) (Prosecution
Case 639/01)

24. ████████████████████████ Identity No. ████████ (detained)
(Prosecution Case 174/02).

25. ████████████████ Identity No. ██████ (detained) (Prosecution
Case 173/02).

26. ██████████████████████ Identity No. ████████ (detained)
(Prosecution Case 322/02)

27. ██████████████, Identity No. ██████ (detained) (Prosecution case
775/02).

[Stamp] P 5: 203 [continued]

Prosecution Case 444/02 Amended

**Detailed Incident 234/01 Jerusalem Special Duties Department.**

28.  ▋▋▋▋▋▋▋ Serial No ▋▋▋▋▋▋ rael Defense Forces. (details in the prosecution) [statement]

29.  ▋▋▋▋▋ Identity No. ▋▋▋▋▋ (details in the prosecution) [statement]

30.  ▋▋▋▋ dentity No. ▋▋▋▋▋ details in the prosecution) [statement]

31.  ▋▋▋▋▋▋▋▋ Badge No. ▋▋▋▋▋ Forensic Identification – Zion Station. [submitter of seizure and marking report]

32.  ▋▋▋▋▋▋▋▋▋▋ Badge No ▋▋▋▋ e Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of vehicle inspection report]

33.  ▋▋▋▋▋▋▋▋▋ Badge No ▋▋▋▋ nvestigations – Zion Station. [submitter of exhibit cover form]

34.  ▋▋▋▋▋▋▋▋▋▋ Badge No. ▋▋▋▋ he Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

35.  ▋▋▋▋▋▋▋▋▋ Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion from Forensic Identification Case ▋▋▋▋▋ vill be summoned upon explicit demand of the defense only)

36.  ▋▋▋▋▋▋ M.D., License No ▋▋▋▋▋ statement – pronouncement of the death of the late Elazar Akiva Fashkos]

37.  ▋▋▋▋▋▋ M.D., License No. ▋▋▋▋ Clalit Healthcare Service – Jerusalem. [statement + submitter of death notice]

**Detailed Incident 457/01**

[Stamp] P 5: 204

Prosecution Case 444/02 Amended

78



38. ██████████████ Serial No. ██████ inyamin Station. [submitter of action report]

39. █ ██████████████ Badge No. ██████ Binyamin Station. [submitter of memorandum – GMC vehicle + drawing of incident scene + seizure and marking report + exhibit cover form]

40. ██████████████ Badge No. ██████ Yehuda Forensic Identification. [submitter of photograph tables + memorandum].

41. ██████████████ Badge No. ██████ the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of photograph tables + vehicle inspection report]

42. Yosef Cohen, Identity No. 069397198. (details in the prosecution) [wounded in the shooting attack]

43. ██████████████ Identity No ██████ details in the prosecution) [arrived first at the scene of the attack]

44. ██████████████ M.D., License No ██████ Hadassah Hospital – Mount Scopus, Jerusalem. [submitter of physician certificate – interim summary] (will be summoned upon explicit demand of the defense only)

---

## Detailed Incident 2159/01 Binyamin

45. ██████████████ Badge No ██████ nyamin Station. [submitter of action report]

46. ██████████████ Badge No ██████ Binyamin Station. [submitter of photograph tables + seizure and marking report].

47. ██████████████ adge N ██████ the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of initial incident scene visit report – seizure of cartridge cases and bullet fragments]

48. ██████████████ Badge No ██████ Binyamin Station. [submitter of memorandum – exhibit chain + exhibit cover form + crime scene visit report]

[Stamp] P 5: 204 [continued]

Prosecution Case 444/02 Amended

49. ██████████████████████ Badge No. ████████ the Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

50. ██████████████████████ Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion from Forensic Identification Case ████████████████] (will be summoned upon explicit demand of the defense only)

51. ██████████, M.D., License No ████████ Magen David Adom ambulance service – Lod station. [submitter of medical reports from scene + death notice + statement]

52. ████████████ Identity No████████████, Israel Defense Forces. [statement]

53. ██████████████ M.D., the National Institution of Forensic Medicine. [submitter of two expert opinions] (will be summoned upon explicit demand of the defense only)

54. ██████████ Identity No.████████ details in the prosecution) [identification of victims]

_____

**Detailed Incident 7915/01**

55. ████████████████████ Badge No.████████ Zion Station. [submitter of action report]

56. ████████████████ Badge No████████ Forensic Identification – Zion Station. [submitter of initial scene visit report + photograph tables]

57. ██████████████████ Zion Station. [finder of cartridge cases at the incident scene – chain of evidence]

58. ██████████████████ Badge No.████████ the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of vehicle inspection report – seizure of bullet fragments]

[Stamp] P 5: 204 [continued]

Prosecution Case 444/02 Amended

59. ██████████████ Badge No. ███████ Zion Station Special Duties Department. [submitter of exhibit cover form]

60. ██████████████ Badge No ███████ Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

[Stamp] P 5: 204 [continued]

Prosecution Case 444/02 Amended

81

61.  ████████████████████ Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 – 4239/01] (will be summoned upon explicit demand of the defense only)

62.  ████████████████ License No.████, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Moshe Weiss] (will be summoned upon explicit demand of the defense only)

63.  ████████████████, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of death certificate of the late Meir Weisshaus] (will be summoned upon explicit demand of the defense only)

64.  Moshe Weiss, Identity No. 024001505. (details in the prosecution) (severely injured in the attack)

65.  ████████ Identity No ████████ details in the prosecution) (eyewitness)

---

**Detailed Incident 481/01 Zion**

66.  Tonie Amiel, Identity No. 032441040. (details in the prosecution) (driver of the Honda vehicle)

67.  Pini Maimon, Identity No. 025759762. (details in the prosecution) (passenger in the Honda vehicle)

68.  Pazit Maimon, Identity No. 040128084. (details in the prosecution) (passenger in the Honda vehicle)

---

**Detailed Incident 8379/01 Zion**

69.  ████████████████, Badge No ████████ orensic Identification – Zion Station. [submitter of initial scene visit report + seizure and marking report]

[Stamp] P 5: 205

Prosecution Case 444/02 Amended

82

70.  ██████████████ Identity No.██████ pecial Duties Department – Zion Station. [submitter of exhibit cover report]

71.  ████████████████ Badge No.██████ the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of vehicle inspection report – seizure of bullet fragments]

72.  ████████████ Badge No██████ ecial Duties Department – Zion Station. [submitter of exhibit cover report]

73.  ██████████ Identity No████████ xhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

74.  ████████████ Badge No██████ Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

75.  ██████████████ Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 – 4723/01] (will be summoned upon explicit demand of the defense only)

76.  ██████ Zion Station. [finding of cartridge cases in the field – evidence chain]

77.  Malka Cohen, Identity No. 038791386. (details in the prosecution) (injured in the attack)

78.  Pinchas Cohen, Identity No. 038348256. (details in the prosecution) (injured in the attack)

79.  ██████████ Identity No██████ details in the prosecution) (eyewitness – cared for casualties)

80.  ████████ M.D., License No██████ adassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Pinchas Cohen] (will be summoned upon explicit demand of the defense only)

[Stamp] P 5: 205 [continued]

Prosecution Case 444/02 Amended

81. ████████████ License No. ████ Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Malka Cohen] (will be summoned upon explicit demand of the defense only)

---

**Detailed Incident 39/02 Binyamin**

82. ████████████ Badge No ████████rol Unit – Binyamin Station. [submitter of action report]

83. ████████████ Badge No. ████████inyamin Station. [submitter of investigation memorandum / seizure and marking]

84. ████████████ Badge No████ Yehuda Forensic Identification. [submitter of photograph tables + collected cartridge cases from the incident scene]

85. ████████████ Badge No. ████ the Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of photograph tables + vehicle inspection report]

86. ████████████ Badge No. ████ Binyamin Station. [submitter of exhibit cover report]

87. ████████████ Badge No████ Exhibits Office – Forensic Identification, National Headquarters – Jerusalem. [submitter of civil servant certificate – receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

88. ████████████ License No. ████ Israel Defense Forces (details in the prosecution) [statement – pronouncement of the death of the late Yoela Chen + care for the casualty]

89. ████████ M.D., License No. ████ Hadassah Ein Kerem Hospital, Jerusalem. [submitter of physician certificate – illness summary of Rachel Eini] (will be summoned upon explicit demand of the defense only)

90. Rachel Eini, Identity No. 075966614. (details in the prosecution) (injured in the attack)

[Stamp] P 5: 205 [continued]

Prosecution Case 444/02 Amended

91.    ██████████ Identity No. ██████████ (details in the prosecution) [statement + sketch] (eyewitness)

9.2    ██████████ Identity N ██████████ details in the prosecution) (identification of the victim)

---

**Detailed Incident 502/02 Zion**

93.    ██████████ Badge No. ██████████ ecial Duties Department – Zion Station [submitter of memorandum, seizure and marking report]

94.    ██████████ Special Duties Department – Zion Station [submitter of seizure and marking report]

95.    ██████████ Special Duties Department – Zion Station [submitter of memorandum, seizure and marking report + photographs]

[Stamp] P 5: 205 [continued]

Prosecution Case 444/02 Amended

96.  ████████████████ Badge No. ████████ Special Duties Department – Zion Station [submitter of action report – finding of magazine coupler]

97.  ████████████████ Badge No ████████ questioning – Zion Station [submitter of seizure and marking report]

98.  ████████████ Identity No. ████████ details in the prosecution) (eyewitness – pursued the terrorist)

99.  ████████████ Badge No ████████, Jerusalem Border Guard. (eyewitness – pursued and shot at the terrorist)

100. ████████████ Badge No ████████ Patrol Unit 2 – Zion Station. (eyewitness – shot at the terrorist)

101. ████████████ Identity No ████████ Jerusalem Subdistrict Unit. (eyewitness – pursued and shot at the terrorist)

102. ████████████████ Badge No ████████ Motorcycle Special Patrol Unit – Shalem Station. (eyewitness – pursued the terrorist, disarmed the terrorist after the terrorist was killed)

103. ████████████ Identity N ████████ (details in the prosecution). (eyewitness – a security guard who was at the site – opened fire and shot the terrorist)

104  ████████████ Badge No. ████████ Detectives – Jerusalem Central Unit. (eyewitness – pursued and shot at the terrorist)

105. ████████████, Badge No. ████████ Detectives – Jerusalem Central Unit. (eyewitness – shot at the terrorist)

106. ████████████ Identity No ████████ (details in the prosecution) (eyewitness – driver of "Egged" bus who was at the site of the attack)

107. ████████████ Identity No ████████ details in the prosecution) (eyewitness)

108. ████████████, ████ Identity No. ████████ details in the prosecution) (eyewitness)

109. ████████████ Identity No. ████████ (details in the prosecution) (eyewitness)

[Stamp] P 5: 206

Prosecution Case 444/02 Amended

110. ███████ Identity No ███████ (details in the prosecution) (eyewitness)

111. ███████ Identity N███████ etails in the prosecution) (eyewitness)

112.███████ dentity No.███████ etails in the prosecution) (eyewitness)

113. ███████ Identity No.███████ tails in the prosecution) (eyewitness)

114. ███████ Identity No.███████ details in the prosecution) (eyewitness -- saw the terrorist arriving at the attack site on foot)

115. ███████ Identity No.███████ (details in the prosecution) (identification of the body of the late Ora (Svetlana) Sandlar)

116. ███████ M.D., License███████ Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Ora (Svetlana) Sandlar) (will be summoned upon explicit demand of the defense only)

117. ███████ M.D., Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Sarah Hamburger) (will be summoned upon explicit demand of the defense only)

An additional list of witnesses concerning the casualties in the attack on Jaffa Street on January 22, 2002 and medical certificates related to their injury will be delivered during the trial

---

**Detailed Incident 483/02 Shafat**

118. ███████ Special Duties Department, Jerusalem Central Unit. [submitter of seizure and marking report]

119. ███████ Badge No.███████ pecial Duties Department, Jerusalem Central Unit. [submitter of photograph table + two exhibit cover forms]

120. ███████ adge No███████ orensic Identification -- Zion Station. [submitter of seizure and marking report + crime scene visit report + transfer of exhibits to Forensic Identification -- National Headquarters]

[Stamp] P 5: 206 [continued]

121. ███████ Patrol Unit 4, Zion Station. [submitter of seizure and marking report]

Prosecution Case 444/02 Amended

87

122. ███████████████ Firearms Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of expert opinion] (will be summoned upon explicit demand of the defense only)

123. ███████████ Hadassah Mt. Scopus Hospital, Jerusalem. [submitter of death certificate] (will be summoned upon explicit demand of the defense only)

124. ██████ Badge No. █████ (details in the prosecution) [overpowered the terrorist, wounded in the attack]

125. █████ Identity No. █████ details in the prosecution) [overpowered the terrorist]

126. ██████ Identity ███████ details in the prosecution) [overpowered the terrorist]

127. ████████ Identity No █████ details in the prosecution) [eyewitness]

128. ██████ Identity No █████ details in the prosecution) [eyewitness]

129. Stas Krisensky, Identity No. 304389240. (details in the prosecution) [wounded in the attack]

130. Lior Skizada, Identity No. 032087587. (details in the prosecution) [wounded in the attack]

131. Keren Kadmi, Identity No. 032777716. (details in the prosecution) [wounded in the attack]

132. Adam Garfield, Identity No. 011935426. (details in the prosecution) [wounded in the attack]

133. Eli Ochana, Identity No. 033404773. (details in the prosecution) [wounded in the attack]

134. Amichai Dahan, Identity No. 039243944. (details in the prosecution) [wounded in the attack]

[Stamp] P 5: 206 [continued]

Prosecution Case 444/02 Amended

135. Tamara Lifschitz Fisch, Identity No. 306706318. (details in the prosecution) [wounded in the attack]

---

**Detailed Incident 4258/02**

136. ▇▇▇▇▇▇ Identity No. ▇▇▇▇▇▇ volunteer in Yarkon Patrol Unit (details in the prosecution) [two statements, was with the late Salim Birkat]

137. ▇▇▇▇ Yarkon Identification, Israel Police.

138. ▇▇▇▇▇▇▇▇▇ Yarkon Investigations Branch Officer.

139. ▇▇▇▇▇▇ Yarkon Special Investigations Team.

140. ▇▇▇▇▇▇ dentity No ▇▇▇▇ (details in the prosecution) [eyewitness – was inside the restaurant]

141. ▇▇▇▇▇, Identity No ▇▇▇▇ etails in the prosecution) [security guard at the restaurant, injured in the attack]

142. ▇▇▇▇ dentity No. 304615230. (details in the prosecution) [security guard at the restaurant]

143. ▇▇▇▇ Identity No ▇▇▇▇ etails in the prosecution) [eyewitness]

144. ▇▇▇▇ Identity No ▇▇▇▇ (details in the prosecution) [eyewitness]

145. ▇▇▇▇ entity No ▇▇▇▇ details in the prosecution) [eyewitness]

146. Shlomo David, Identity No. 00022280. (details in the prosecution) [severely injured in the attack by stab wound]

147. ▇▇▇▇▇▇ Identity No. ▇▇▇▇ (details in the prosecution) [eyewitness, injured in the attack]

148. ▇▇▇▇ dentity No ▇▇▇▇ etails in the prosecution) [eyewitness, injured in the attack]

[Stamp] P 5: 207

Prosecution Case 444/02 Amended



149. ███████████ Identity No █████████ ...etails in the prosecution) [eyewitness, injured in the attack]

150. ███████████, Identity No. █████████ (details in the prosecution) [eyewitness, injured in the attack]

151. ███████████ Identity No.█████████ ...etails in the prosecution) [eyewitness, saw the vehicle in which the terrorist arrived]

152. ███████████ Identity N█████████ (details in the prosecution) [eyewitness]

153. ███████████ Identity No█████████ ...etails in the prosecution) [eyewitness, injured in the attack]

154. ███████████ Identity N█████████ (details in the prosecution) [eyewitness – statement + drawing of the incident scene]

155. ███████████ Identity No.█████████ ...etails in the prosecution) [eyewitness]

156. ███████████ Identity No. █████████ ...etails in the prosecution) [eyewitness]

157. ███████████ Identity No. 061247623. (details in the prosecution) [eyewitness]

158. ███████████ Identity No█████████ (details in the prosecution) [eyewitness]

159. ███████████ Identity N█████████ (details in the prosecution) [eyewitness]

160. ███████████ Identity No.█████████ (details in the prosecution) [eyewitness]

161. ███████████ Identity No. ████████ (details in the prosecution) [eyewitness – two statements – saw the terrorist stabbing people]

162. ███████████ Identity No.█████████ (details in the prosecution) [identification of the body of the late Yosef Habi]

163. Noam Asafi, Identity No. 031877665. (details in the prosecution) [injured in the attack]

164. Yossi Azuz, Identity No. 029416740. (details in the prosecution) [severely injured in the attack]

[Stamp] P 5: 207 [continued]

Prosecution Case 444/02 Amended

165. Michael Gruber, Identity No. 043401140. (details in the prosecution) [injured in the attack]

166. ▇▇▇▇▇▇ the National Institution of Forensic Medicine, Tel Aviv. [submitter of expert opinion] (will be summoned upon explicit demand of the defense only)

167. Hospital records -- institutional record

An additional list of witnesses concerning the casualties and victims in the attack at the "Seafood Market" Restaurant in Tel Aviv on March 5, 2002 will be delivered during the trial

---

**Detailed Incident 568/02 Shafat**

168. ▇▇▇▇ Badge No. ▇▇▇ Border Guard. (details in the prosecution) [statement and submitter of action report]

169. ▇▇▇ Badge No. ▇▇ Border Guard [details in the prosecution].

170. ▇▇▇ Badge No ▇▇ Border Guard [details in the prosecution].

171. ▇▇▇ Badge No. ▇▇ Identification -- Zion Station [submitter of 2 seizure and marking reports + exhibits from exhibit entry card No. 294/02].

172. ▇▇▇▇ Badge No. ▇▇ Zion Station -- Bomb Disposal [submitter of action report]

173. ▇▇▇▇▇ Badge No. ▇▇ Forensic Identification -- Bomb Disposal Laboratory, National Headquarters, Jerusalem. [submitter of expert opinion and exhibit cover reports] (will be summoned upon explicit demand of the defense only)

174. ▇▇▇▇▇ Badge No. ▇▇ the Exhibits Office -- Forensic Identification, National Headquarters -- Jerusalem. [submitter of civil servant certificate -- receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

[Stamp] P 5: 207 [continued]

Prosecution Case 444/02 Amended

175.     ████████████ the National Institution of Forensic Medicine, Tel Aviv. [submitter of expert opinion] (will be summoned upon explicit demand of the defense only) .

---

**Detailed Incident 783/02 Binyamin**

176.     ██████████████████     Badge No. ██████  Binyamin Station. [submitter of action report]

[Stamp] P 5: 207 [continued]

Prosecution Case 444/02 Amended

177. ████████████████████ Badge No. ██████ Yehuda Forensic Identification. [submitter of crime scene visit report + photograph tables]

178. ██████████████████. Badge No. 57556, Binyamin Station. [submitter of exhibit cover form + memorandum + exhibits from card No. 106/02]

179. Samir Karash, Identity No. 080062771 (details in the prosecution) [wounded in the shooting attack]

180. ████████ M.D., License No. ██████ Hadassah Ein Kerem Hospital, Jerusalem. [submitter of medical report] (will be summoned upon explicit demand of the defense only)

181. Query for finding and projection of vehicle and owner details [institutional record].


_____[Signature]_____
Michael Kotlik, Captain
Military Prosecutor

Date: September 29, 2002

Reference: 444-02 amended


[Stamp] P 5: 208


Prosecution Case 444/02 Amended

93

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 175-208.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 175-208.

Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

Notary Public

HANUT J MRRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2016
I.D.# 2322714





צבא        המשפט        הגנה        לישראל

בלתי        חובאי        וניק ביהזים :        3459/02
בבית        אל                          444/02
בפני        הרכב                        1282/02 בנימין
                                        1283/02 בנימין
                          תיק תבועה :    1284/02 בנימין
                          תיק פ.א. :     1285/02 בנימין
                                        234/01 מותיימ י-ם
                                        457/01 בנימין
                                        2159/01 בנימין
                                        7915/01 ציון
                                        481/01 ציון
                                        8379/01 ציון
                                        39/02 בנימין
                                        502/02 ציון
                                        483/02 שפט
                                        4258/02 ירקון
                                        568/02 שפט
                                        783/02 בנימין

**במשפט שבין התובע הצבאי – המאשים**

**- נ ג ד -**

אחמד טאלב מוצטפא ברגותי (מכונה "אל פראסיי")
ת.ז. 994466860, יליד 15.03.76, תושב אלבירה ־ רמאללה
עצור מיום 15.04.02

**- הנאשם -**

**כתב ־ אישום מתוקן**

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט ראשון:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו ־85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, החל משנת 1996 ועד ליום מעצרו עבד כעוזר כמו כנשומר ראש של ███████ שהוא ראש "התנזים" של הפתייח.
הנאשם הנ"ל, החל מתחילת שנת 2001 ועד ליום מעצרו פעל במסגרת "התנזים" של הפתייח, שהוא התאחדות בלתי מותרת, פעילות צבאית נגד תמטרות הישראליות.
במהלך פעילותו הצבאית, הנאשם הנ"ל לקבל סיוע כספי מפעילי "התנזים" של הפתייח. הנאשם קיבל באמצעות חשבון הבנק שלו סכום של כ־7,000 שייח מ███████, פעיל צבאי בכיר מאיזור שכם, וכן סכום של כ־10,000 שייח מ███████ פעיל בכיר באיזור ברמאללה.

ת.נ. 444/02 מתוקן                                        1

במהלך פעילותו הצבאית הנאשם היה בקשר מתמיד עם ראש "יגדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפתייח בשכם - ███████████, ראש "יגדודי חללי אלאקצא" באיזור טול-כרם - ███████████, ראש "יגדודי חללי אלאקצא" באיזור גנין - ██ - ראש "יגדודי חללי אלאקצא" באיזור בית-לחם וחברון - ███████████, וכן עם ראש "התנזים" של הפתייח - אלאקצא באיזור - ███████████

במסגרת פעילותו הצבאית הנ"ל, הנאשם חפץ בהמשללה כרוזים בדבר לקיחת האחריות לפיגועים שבוצעו בישראל ובאיזור על-ידי מפעילי "התנזים" של הפתייח.

**פרט שני:**

**מהות העבירה:** נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מתחילת שנת 2001 ועד ליום מעצרו, ניהל או עזר לנהלת והתאחדות בלתי מותרת, או החזיק בכל משרה או עמדה בהתאחדות בלתי מותרת או נתן מרותם, דוגינו.

הנאשם הנ"ל, במהלך התקופה האמורה, היה אחד האחראיים על ארגון "יגדודי אלאקצא", וימלאחר שהתאחדה אלאקצא" באיזור רמאללה - הזרוע הצבאית של "התנזים" של הפתייח, שהזא התאחדות בלתי מותרת. "יגדודי חללי אלאקצא" היו אחראיים לביצוע מספר רב של פגיעים נגד חיילי צהיל ואזרחים ישראליים חף באיזור הן בתוך שטחה של מדינת ישראל, אשר בהן הנרצא מספר רב של אזרחים ישראליים וחיילי צהיל.
בין היתור, הנאשם שימש ואיש קשר בין שאר האחראיים האזוריים ב"יגדודי חללי אלאקצא" לבין ראש "התנזים" של הפתייח - ███████████

**פרט שלישי:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו.

הנאשם הנ"ל, במהלך תקופות האמורות, בראשותה או בסמוך לכך, במסגר רב של הדומינויות שונות, חילק כספים למפעילים צבעיים של "התנזים" של הפתייח. הנאשם נהג לקבל כספים מפעילי "התנזים" של הפתייח ולהלק אותם לאנשים רבים אשר ביצעו פיגועים נגד חיילי צהיל ואזרחים ישראליים. בכל הזדמנות הנאשם מסר לכל אחד מהמפעילים סכומי כסף שונים בין 100 ל-300 דולר ארהיב. כמו כן, הנאשם נהג להעביר סכומים גדולים יותר למפעילים צבעיים ביהזדמנויות של הפתייח באמצעות העברת בנקאות.
בין היתור, הנאשם העביר בכור ביהזדמנויס של הפתייח בטול-כרם, שהוא סגנו של - ███████████ - ראש "יגדודי חללי אלאקצא" בטול-כרם, שהזא הזרוע הצבאית של "התנזים" של הפתייח, סכום של 3,000 שית.
כמו כן, הנאשם העביר ל ███████████ שהזא ראש "יגדודי חללי אלאקצא", סכומים בין 1,000 ל-2,000 שית בכ-7-6 הזדמנויות שונות וזאת לצורך רכישת כדורים. בנוסף לכספים, הנאשם נהג לספק למפעילים צבעיים של "התנזים" של פתייח מכשירי טלפון סלולריים לצורכי פעילותם הצבאית.

ת.פ. 444/02 מתוקן

P 5: 176

**פרט רביעי:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 1998 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, במהלך התקופה האמורה או בסמוך לכך, רכש מידי ████████ תמ"ק MP-4 תמורת 4,000 דינר ירדני וכן רובי M-16 מקוצר עם כוונת טלסקופית תמורת 5,500 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו. הנאשם הנ"ל, במהלך השנים 2001 – 2002, נתן למסור את תמ"ק MP-5 הנ"ל לידי אנשים שונים על מנת שיבצעו באמצעותו פיגועי ירי נגד אזרחים ישראליים וזאת כפי שיתואר בהמשך כתב-האישום.

**פרט חמישי:**

**מהות העבירה:** החזקת כלי-יריה ללא היתר, עבירה לפי סעיף 53א(1)(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הראשון, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון-יד או חפץ נפץ או מבער, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה תמורה, ללא תעודה היתר שהוענקה על-ידי מפקד צבאי או מטעמו, דהיינו: הנאשם הנ"ל, בתחלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק ברשותו תמ"ק MP-5, אקדח וכן רובי M-16 מקוצר עם כוונת טלסקופית, וזאת ללא תעודת היתר שהוענקה על-ידי מפקד צבאי או מטעמו.

**פרט שישי:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2000 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי ████████ – ראש חוליית הצבאית של "תנזים" של תמ"חיר, רובי"ר קלצ'ינקוב 1-50 כדורים כרומטי קלצ'ינקוב, וזאת ללא חתום על-ידי מפקד האיזור או מטעמו. הנאשם הנ"ל מסר את רובי"ר קלצ'ינקוב הנ"ל הכדורים הנ"ל לידי ████████, פעיל בטון 17 של התנ"ל פיגועי ירי שבן נתרגו בני הזוג כהנא ז"ל, וכן כי ביצע באמצעות רובי"ר קלצ'ינקוב הנ"ל פיגועי ירי שבו נהרג אזרח ישראלי.

**פרט שביעי:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, התל מסוף שנת 2000 ועד ליום מעצרו או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, במספר רב של הזדמנויות שונות, מסר לידי ████████ – ראש הזרוע הצבאית של "התנזים" של תמ"חיר, סכומי כסף גדולים של עשרות אלפי שקלים ועשרות אלפי דולרים של ארהב, לצורך רכישת כלי נשק לבצע את הכדורים למימן פיגועי ירי נגד חיילי צה"לי ואזרחים ישראליים. הנאשם אף נתן להתשאיר אצלו בבית את הכדורים שרכשו בכסף הנ"ל למימן אותם לידי ████████ לחברים של האחרון לפי מידת הצורך, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

ת.פ. 444/02 משטק(ן)

**פרט שמיני:**

**מהות העבירה:** סחר בצידוד מלחמתי, עבירד לפי סעיף 2 לצו בדבר איסור סחר בצידוד מלחמתי (יהודה והשומרון) (מסי 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בצידוד מלחמתי, ללא היתר רתוב על-ידי מפקד האזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר ל‑████ ███, ראש יחידוד הכלי אלאקצא", חזרע חצבתית של "הנתניביא" של הסתיית, 100 כדורים לרובי M-16, וזאת ללא היתר רתוב על-ידי מפקד האזור או מטעמו.

**פרט תשיעי:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף (53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשל"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2001 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, חיזוק, חפרעה, או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחיילוי או לפעולותם, או בשמושם של בל אחד מאלה: אניה, איירון, גמל, רצין, מזח, מעגן, שדה תעופה, מסילה, ברזל, נתיב מים, דרך, דרך-עפר, סטר, כלי רכב, כלי משא או כל אמצעי אחר של תוככלד צבורית, או תקשורת צבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליצורם, הספקתם, החזנתם, העברתם או העברתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מתוח לכן גוטב, מודל חדיש, הנאשם הנ"ל מסר את הרכב הנ"ל לידי ████, אשר יצא ברכב האמור לביצוע פגועים נגד אורחים ישראליים וחיילי צה"ל באיזור.

**פרט עשירי:** (פ.א. 234/01 מת"ם י-ס)

**מהות העבירה:** גרמת מות בכוונה, עבירות לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ל-1970. וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מוצאו לו, ביום 25.01.01 או במועד הסמוך לכך, גרם בכוונה למוותו של אתר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם ████ (מכונה ██████/█) ועם ████
2. ████████ ביקשו מהנאשם רכב לצורך ביצוע פיגוע ירי נגד יהודים. הנאשם מסר לידי ████████ רכב פולקסוון דורה גנוב בגבול כסף, נושא לוחיות רישוי ישראליות, וזאת על מנת שהחבריה הנ"ל יוצאו ברכב זה פיגוע ירי בכוונה לגרום למותם של אורחים ישראליים.
3. ████ נהג ברכב הפולקסוון נייל ████ ישב לידו כשהוא חמוש באקדח 16.
4. ████████ נסע ברכב הפולקסוון לאיזור עטרות על מנת לחפש רכב ישראלי במרכז לבצע לעברו פיגוע ירי ולגרום למותם של נוסעי הרכב.
5. סמוד לשעה 15:18, באיזור התעשיה עטרות, ██████ █ הבחינו ברכב GMC ספארי, מ.ר. 7901306, (להלן: "הרכב) אשר בו נהג אלעזר עקיבא משקסון זייל.
6. ████████ החל לנסוע אחרי הרכב. הנאשם ████ עקבו אחר הרכב באזור התעשיה עטרות עד צומת א-ראם ובחזרה.
7. כאשר הרכב חזר לאיזור התעשיה עטרות ונסע בכביש הראשי, ████████ נסע ברכב הפולקסוון בסמוך לרכב.
8. בשלב זה, ████ פתח את החלון וירה באקדחו 16 הנ"ל כ-7 כדורים לעבר הרכב בכוונה לגרום למותו של נהג הרכב, מספר קליעים, אשר נורו על-ידי ████ פגעו ברכב, כאשר קליע אחד פגע בצווארו ואחד בחזהו של אלעזר עקיבא משקסון זייל שנהג ברכב.
9. משהתבוין ████ כי הרכב מצמר, השניים נמלטו ברכב הפולקסוון לרמאללה.

ת.ת. 444/02 מתוקן

‏10. ברמאללה, ███████████ ███████ החזירו את רכב הפולקסווגן לאשם שדיווחו לו על
‏הפגיעה שביצעו.

‏11. לאחר יום, האשם מסר ל ███████ כ-300 דולר ארה"ב עבור ביצוע הפגיעה הנ"ל, את הכסף
‏האמור האשם קיבל מפי עלי מבני ברגותי.

‏12. במעשיו המתוארים לעיל, האשם הנ"ל גרם בכוונה למותו של אלמוני עקיבא פישקוס ז"ל,
‏אשר נפטר כתוצאה מפגיעת הקליעים שנורו על-ידי ███████ כפי שתואר.

‏§ **פרש אחד-עשר:** (מ.א. 457/01 בנימין)

‏**מהות העבירה:** ניסיון לגרימת מוות במזיד, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
‏(יהודה ושומרון) (מס' 378), תשי"ל-1970, (סעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
‏(יהודה ושומרון) (מס' 225), תשכ"ח-1968,

‏**פרטי העבירה:** האשם הנ"ל, באיזור, ביום 25.02.01 או בסמוך לכך, ניסה לגרום בכוונה למותו
‏של אחר, דהיינו:

‏1. האשם הנ"ל, במועד האמור, נפגש ברמאללה עם ███████████████████████████████████

‏2. האשם והבריו הנ"ל דם במבצע באיזור. האשם והבריו הנ"ל טען כי אין פעילות נגד המטרות
‏הישראליות. האשם שאל את חבריו הנ"ל מה ניתן לעשות על מנת לשפר את המצב. חבריו
‏הנ"ל של האשם בקשו כי האשם ישמ_____ _____ רכב וכלי נשק.הם יבצעו פיגוע נגד האזרחים
‏הישראליים בכוונה לגרום למותם.

‏3. האשם הסכים להצעה הנ"ל. האשם מסר לידי חבריו הנ"ל את רכב מסוג מכונית פולקסווגן בצבע ___,
‏צבע אפור, מדל שנת 2001, נושא לוחיות רשוי ישראליות, וכן תמיק MP-5 עם מחסנית וכדורים.

‏4. ███████████████████ נסעו ברכבו של האשם,
‏כשלוח המתושם בתמיק MP-5 הנ"ל, אשר אותו קיבל מהאשם. חבריו הנ"ל של האשם
‏הגיעו לאיזור נשר עטרות.

‏5. בסמוך לשעה 13,15, חבריו הנ"ל של האשם הבחינו ברכב GMC ואחריהם, מ.ר. 3082518,
‏אשר בה נהג _____ יוסף כהן, כשהרכב האמור יוצא מישוב עטרות ופונה למימין נשר עטרות.

‏6. חבריו הנ"ל של האשם החליטו לבצע פיגוע ער לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם
‏של הנוסעים בו.

‏7. חבריו הנ"ל של האשם החליטו להמתין עד שרכב הסיטרואן שנסע לפניהם יעקוף את רכב
‏ה-GMC ואז לעקוף את רכב ה-GMC ולבצע לעבר _ את פגיעת הירי המתוכננת.

‏8. ברכב הסיטרואן הנ"ל נסעו ███████████ התמושים ב-2 רדיו"רי קלצ'ינקוב ורוסיי'ר

‏M-16. עוסקי רכב הסיטרואן הנ"ל פתחו באש בכלי התשק הנ"ל לעבר רכב ה-GMC הנ"ל
‏בכוונה לגרום למותם של הנוסעים בו. 29 קליעים שטרו על-ידי האנשים הנ"ל פגעו ברכב
‏ה-GMC הנ"ל. 3 קליעים פגעו בראשו ובגאונטורו של יוסף כהן, אשר נהג ברכב ה-GMC הנ"ל,
‏כתוצאה מפגיעות הקליעים הנ"ל וכן מפגיעות חרסיסים בכל חלקו גופו, יוסף כהן נפצע
‏באורח קשה.

‏9. לאחר שחבריו הנ"ל של האשם הבחינו כי כתוצאה מפגיעו היה שבוצעו מרכב הסיטרואן
‏שנסע לפנירהם, רכב ה-GMC נפגע, ירד מהכביש ונהג הרכב נפצע, חבריו הנ"ל של האשם
‏נמלטו בחזרה לרמאללה.

‏10. ברמאללה, חבריו הנ"ל של האשם החזירו את רכב הפולקסווגן הנ"ל ואת תמיק
‏MP-5 הנ"ל. ███████████ דיווחו לאשם
‏כי ביצעו פיגוע ירי באמצעות הרכב וכלי הנשק הנ"ל וכי כתוצאה הנ"ל נפצע נהג יהודי.

**פרט שנים-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו
של אחר, דהיינו: ████████

████████ ביחד עם ████████
במועד האמור, הוליכו לבצע פיגוע ירי לעבר הישוב פסגות במשטרה
לגרום למותם של אזרחים ישראלים.
האנשים הנ"ל ניגשו אל משרדו של ████████ ראש "התנזים" של הפתיח. האנשים הנ"ל
נפגשו עם ████████ וביקשו מהאחרון לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים
ישראלים ביישוב פסגות. ████████ שמח לשמוע את התכנית לבצע פיגוע ירי לעבר
הישוב פסגות ובקטרים ובטבקטים לסמם כלי נשק לצורך ביצוע פיגוע חירי המתוכנן.
לאחר כשבוע ימים, ████████ (וחבריו הנ"ל ניגשו שוב למשרדו של █████████ ברמאללה.
לא היה באותה לעת במשרדו והנאשם הזין זה ששוחח עם ████████ וחבריו
הנ"ל. הנאשם הכתיע לדבר עם מרזוח ברגותי בנוגע לבקשת חבריו הנ"ל לקבל כלי נשק לצורך
ביצוע פיגוע ירי לעבר הישוב פסגות.
לאחר כשלושה ימים, וחבריו הנ"ל ניגשו שוב אל משרדו של ████████
ברמאללה. האנשים הנ"ל ביקשו שוב מ ████████ לקבל כלי נשק לצורך ביצוע פיגוע ירי לעבר
היישוב פסגות. ████████ החקיקט אל █████████ פעיל צבאי בכיר בית'וגינ"ם של
הפתיח, וטבקט כי ████████ ימנ להם כלי נשק לצורך ביצוע פיגוע חירי המתוכנן.
████████ וחבריו הנ"ל נפגשו עוד באותו היום, בכיכר מסרה ברמאללה עם
בהלכך הפגישה האמורה, ████████ הבטיח להעביר לידיהם כלי נשק לצורך ביצוע פיגוע
חירי המתוכנן.
בלילה של אותו היום, הנאשם הגיע לביתו של ████████ באלביירה ומסר לידי ████████
תמנק 5-MP וכדורים לצורך פיגוע-פיגוע חירי נגד אזרחים ישראלים.
לאחר כשעה, ████████ יצא מביתו ביחד עם ████████ לרכבו של ████████ כשהם
מחזיקים בתמנק 5-MP הנ"ל. ████████ הגיעו למקום הנבעצא בסמוך לישוב
פסגות. שם השתמש ירדו מהרכב. ████████ ירה את כל הכדורים שמסר הנאשם בתמנק
5-MP הנ"ל לעבר הישוב פסגות מתוך כוונה לגרום למותם של תושבי הישוב פסגות.
צבירל שהיו ביישוב פסגות. ████████
מיד לאחר חירי, ████████ חזרו ברכבם הנ"ל לרמאללה.

**פרט שלושה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 26.06.01 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, בחודש יוני 2001 או בסמוך לכך, ברמאללה, בנסיבות המתוארות בפרט האישום
חקורות, מסר לידי ████████ תמנק 5-MP לצורך ביצוע פיגוע ירי נגד אזרחים
ישראלים וחיילי צהו"ל.
████████ במועד האמור, ביחד עם ████████ יצא
ברמאללה לכיוון הכביש התכוביל מפסגות ואב לגבעה הצרפתית בשבירושלים, על מנת לבצע שם
פיגוע ירי לגרום בכוונה למותם של אזרחים ישראלים. ████████ וחבריו הנ"ל יצאו כשהמר
כשהם חמשים ברגנה 5-MP, אשר נמסר להם למטרה זו על-ידי הנאשם כאמור לעיל, ובאקדח 9.
████████ וחבריו יצאו לביצוע הפיגוע האמור כשהם מחזיקים בשרטוט של הגבנית הצרפתית
שעם תכנון לבצע את פיגוע הירי, אשר נערך על-ידי ████████
████████ וחבריו הנ"ל יצאו לביצוע האמור ונדאם עם
מהאחרון כי ידיע ████████ ראש "התנזים" של הפתיח, אם זה מבוצע הפיגוע נתהרגו
במהלך ביצוע פיגוע חירי המתוכנן. ████████ וחבריו לא הצליחו לחנוע למקום שבו תוכנן לבצע
את פיגוע חירי עקב נוכחות גדולה של כוחות צה"ל באיזור חיזוטם.

6

**פרט ארבעה-עשר:** (ת.פ.א. 2159/01 בנימין)

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או בסמוך לתאריך לכך, גרם במזיד למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש אוגוסט 2001, ברמאללה או בסמוך לכך, נפגש עם ████████ (להלן ████████ "), מסר לנאשם כי חבר מספר ████████ מפעילי ████████ של חמ████, אשר מבצעים פיגועי ירי לעבר אזרחים ישראליים. ████████ ביקש לפעול את האיסוד של הנאשם להחילה ██████ ולבצע פיגועים נגד אזרחים ישראלים בכוונה לגרום למותם. הנאשם אשר ל ████████ להסתדר לפעילות האמורה.

2. ████████ נפגש עם מפעילי "התנגדות" הנ"ל, שהם ████████ (להלן "הנאשם ████████"), השלישות הנ"ל אמרו ל ████████ כי בכוונתם לבצע פיגוע ירי במסגרת לגרום למותם של אזרחים ישראליים. השלושה ביקשו כ ████████ ישפק להם כלי נשק לצורך ביצוע פיגועי ירי המתוכנן. ובקשו

3. ביום 25.08.01, מן אל ████████ לספק עד אוננו חיום כלי נשק לצורך ביצוע פיגוע חירי המתוכנן.

4. באותו חיום, כחמש מצלח פנה אל הנאשם. ████████ ביקש מהנאשם לספק כלי נשק לצורך ביצוע פיגוע ירי נגד אזרחים ישראליים. לאחר זמן קצר, עוד באותו היום, הנאשם מסר ל ████████ תמו"ק MP-5, עם מחסנית המלאה בכדורים. וזאת על מנת ש ████████ והחברו הנ"ל יבצעו באמצעותו פיגוע ירי וכרמו למותם של אזרחים ישראליים.

5. בשעות הערב, באותו היום, ברמאללה או בסמוך לכך, ████████ מסר את תמו"ק MP-5 והתחמושת הנ"ל ל ████████, אשר חגיעו ברכב. איסחון טודר של ████████ וזאת על מנת ש ████████ יבצעו באמצעות הנשק הנ"ל פיגועי ירי וכרמו למותם של אזרחים ישראליים.

6. מיד לאחר קבלת הנשק, ████████ יצאו המתאללה לכוון כביש 443 במסרת לבצע שם את פיגוע חירי המתוכנן. האנשים הנ"ל נסעו בשני כלי רכב - האחד, איסחון טודר של ████████ (השני רכב סובארו) גומב שהביא ████████ לצורך ביצוע הפיגוע המתוכנן.

7. הגיעם לכביש 443, ████████ המשיך לנסוע לבד ברכב האיסחון, כקולומטר לפני רכב הסובארו ████████ על מנת להודיע לחברו חיו"ל על מחלטות צהי"ל והמשטרה בדרך.

8. כל האנשים הנ"ל נסע בכביש 443 לכוון תל-אביב, כאשר ████████ נתן ברכב הסובארו, לידו ישוב ████████, החמישו ברחסיר קלצ'ניקוב, ובמוצב האחורי ישב ████████, החמושי תמו"ק MP-5, אשר אותו סיפק הנאשם.

9. באותו היום, 25.08.01, סמוך לשעה 22:30, ליד תחנת הדלק "דור אנרגיה", הבחינו בוסעי רכב הסובארו הנ"ל ברכב פולקסווגן פאסאט, מ.ר. 6902818, אשר בו נסעו בני חזוג שני ושרון בן שלום חי"ל עם ילדיהם בדרוני יוסף סאר ח"יל.

10. ████████, שותג ברכב הסובארו, עקף את רכב הפולקסווגן הנ"ל ונסע במקביל אליו. בשלב זה, ████████ פתחו באש אוטומטית בתמו"ק MP-5, אשר אותו סיפק הנאשם, וברכיסיר קלצ'ניקוב, לעבר רכב הפולקסווגן הנ"ל במטרה לגרום למותם של נוסעיו.

11. מספר רב של הקליעים פגעו על ████████ וברגליה.

12. לאחר שנפגע ברכב הסובארו הבחינו כי רכב הפולקסווגן נסע בזיגזג, הם האיטו את המהירות ונעלמו לכפר בית ליקיא. שם חמתינו להם ████████ עלו לרכב האמבולנס של ████████ ונסע לכפר בית סירא, שם הם הסתתרו את כ ████████ הנשק בסמוך לבינו של ████████. לאחר מכן, ████████ חזרו לרמאללה ברכבו של ████████.

13. מיד לאחר חזרתם לרמאללה, ████████ נפגש בעין אם שראאיט עם ████████, אשר דיווח ל ████████ על הפיגוע שבוצע באמצעות הנשק שנמסר למסורת זו על-ידי הנאשם.

14. לאחר מסר ימים, ████████ הביא את תמו"ק MP-5, הנ"ל מבית סירא והחזירו ל ████████. העבירו את כלי הנשק הנ"ל לידי הנאשם וזירות לאחרון של פיגוע הירי שבוצע בכלי הנשק הנ"ל.

15. הנאשם הנ"ל קיבל ████████ העביר בעל הפיעוג הנ"ל סכום של 500 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. את הכסף הנ"ל הנאשם קיבל מידי ████████.

7

ז.ת. 444/02 מתוקן

P 5: 161

16. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותו של **נגיב בן שלום ז"ל**, אשר נפטר
כתוצאה מפגיעות קליעים בראשו ובגבו, אשר נורו מתמ"ק 5-MP המתואר לעיל, ומרכסיר
קלצ'ניקוב על-ידי היותם חמדאין וחוסאם שתאדה.

**פרט חמישה-עשר:** (פ.א. 01/2159 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו
של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, בפרט האישום הארבעה-עשר, במעשיו המתוארים
בפרט האישום הארבעה-עשר, גרם בכוונה למותה של **שרון בן שלום ז"ל**, אשר נפטרה כתוצאה
מפגיעות קליעים בראשה ובגבה, אשר נורו מתמ"ק 5-MP, אשר אותו סיפק הנאשם כמתואר בפרט
האישום הארבעה-עשר, וברכסיר קלצ'ניקוב.

**פרט שישה-עשר:** (פ.א. 01/2159 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו
של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, בפרט האישום הארבעה-עשר, במעשיו המתוארים
בפרט האישום הארבעה-עשר, גרם בכוונה למותו של **דורון יוסף סרגיי ז"ל**, אשר נפטר כתוצאה
מפגיעות הקליעים, אשר נורו מתמ"ק 5-MP, אשר אותו סיפק הנאשם כמתואר בפרט האישום
הארבעה-עשר, ומרכסיר קלצ'ניקוב.

**פרט שבעה-עשר:** (פ.א. 01/2159 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום האודעה-עשר, במעשיו המתוארים
בפרט האישום הארבעה-עשר, ניסה לגרום למותם של נוסעי רכב פולקסווגן פאסאט,
האמור בפרט האישום הארבעה-עשר, כתוצאה מהירי שביצע כאמור בפרט האישום הארבעה-עשר
מתמ"ק 5-MP, אשר אותו סיפק הנאשם כמתואר בפרט האישום הארבעה-עשר, ומרכסיר
קלצ'ניקוב, ופצצה באורח קל מרוסיסים ברגלה בתם של בני הזוג בן שלום ז"ל.

8

**פרט שמונה-עשר:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש ספטמבר 2001 או בסמוך לכך, עשה מעשה או מחדל ששי בהם פגיעה, היזק, הפרעה או סכנה לבטחונם האיזור או לביטחונן כוחות צה"ל וחייליו או למעלתם, שימושם או ביטחונם של כל אחד מאלה, אנגה, אונית, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיבים, דרך, דרך-לפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלת ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליצורים, חפקת, החסנה, העברתם, הספקתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנו ▮▮▮▮▮ - ראש "גדודי חללי אלאקצא" - הורוע ░░░░░░░░ של "התנזים" של הפת"ח באיזור, ░░░░░░░░▮▮▮▮. האנשים הנ"ל סיפרו לנאשם כי הם יצרו מרגמה וגם ▮▮▮▮▮▮▮▮. ▮▮▮ פצצה מרגמה תמורת 1,500 ש"ח. הנאשם הנ"ל ביקש מהנאשם לתת להם כסף, אשר אותו שילמו תמורת פצצת המרגמה הנ"ל. האנשים הנ"ל אמרו כי בכוונתם לירות את פצצת המרגמה הנ"ל לעבר יישוב פסגות.

הנאשם טען בפני האנשים הנ"ל כי אם הם יצליחו לירות את פצצת המרגמה הנ"ל על היישוב פסגות, הוא ישלם להם את הכסף עבור פצצה.

מאוחר יותר, באותו תקופה, האנשים הנ"ל חזרו אל הנאשם והודיעו לו כי הם אכן ירו את פצצת המרגמה הנ"ל לעבר יישוב פסגות. ░░░░░░░ ▮▮▮, אינם ░░░░░░. איפה ░░░░░ נפלה פצצת המרגמה אולם ▮▮▮. לאור האמור, הנאשם סירב לשלם לאנשים הנ"ל כסף עבור פצצת המרגמה הנ"ל.

מאוחר יותר, הנאשם הורה ▮▮▮▮ ירי פצצת המרגמה לעבר יישוב פסגות על-ידי האנשים הנ"ל - ראש "התנזים" של הפת"ח.

**ט פרט תשעה-עשר:  (ת.א. 7915/01 ציון)**

**מהות העבירה:** גרמה מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או בסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה ▮▮▮▮▮▮▮▮ (מכונה "▮▮▮▮"), אשר מסר כי בת אליף ▮▮▮▮▮ (להמכונה "▮") ░░░░░░░░ ביחד עם אדם נוסף ובקשו לקבל תמ"ק MP-5 על מנת לבצע באמצעותו פיגוע ירי במטרה לגרום למותם של אזרחים ישראלים. ░░░░▮▮▮ ביקש כי הנאשם ימסור לו את תמ"ק MP-5, אשר אותו כבר מסר ▮▮▮▮▮▮▮▮▮▮ לפני כן לצורך ביצוע פיגועי ירי.

2. הנאשם הסכים לספק את כלי הנשק והמבוקש לצורך ביצוע פיגוע וחזר המובקנו.

3. הנאשם הפנה את ▮▮▮▮▮▮▮▮ לצורך קבלת תמ"ק MP-5 הנ"ל. ▮▮ פנה אל ▮▮▮▮ וקיבל ממהאחרון תמ"ק MP-5 של הנאשם, כמו כן, הנאשם מסר לידי ▮▮▮▮▮▮▮▮ אקדח 14 לצורך ביצוע פיגועי הירי המתוכנן.

4. מאוחר יותר באותו היום, ▮▮▮▮▮▮ את תמ"ק MP-5 הנ"ל ▮▮▮▮▮▮ במטרה שהאחרון יבצע באמצעותו פיגוע ירי ויגרום למותם של אזרחים ישראלים.

5. יותר מאוחר באותו היום, ▮▮▮▮▮ נמט ברמאללה עם ▮▮▮▮▮▮▮ (המכונה "▮"), ░░░░░░ הגיע למטרתם הנ"ל כשהוא חמוש בתמ"ק MP-5 ואקדח 14, אשר ▮▮▮▮▮ אותם סיפק הנאשם כאמור לעיל לצורך ביצוע פיגוע ירי.

6. בשעה 22:00 בערך, ביום 15.09.01, האנשים הנ"ל נסעו מרמאללה לירושלים ברכב איתוזו מדד ░░░ של ▮▮▮▮.

7. ▮▮▮▮▮▮ ברכב ▮▮▮▮▮ כהן ברכב ▮▮▮▮ והאיסוזו הנ"ל ונסע ביחד עם ▮▮▮▮▮▮ להם מקום שבו יבצעו את פיגוע הירי המתוכנן וכן על מנת להוראות לעבור איך להימלט לאחר ביצוע הפיגוע האמור. ▮▮▮▮▮ הסיע את תמ"ר לכביש מס' 9 המחבר בין שכונת רמות לבין שכונת הגבעה הצרפתית בירושלים. הוראת למחבר איפה לבצע את

9

ת.ג. 444/02 מתוקן

P 5: 183

הפניע המתוכנן ואיך להימלט לאחר מכן. בסיום הסיור האמור, החבורה הניל חזרה
לרמאללה.

8. בסביבות השעה 22:30, באותו היום, ███████████ ביחד עם ███████████
נסע ברכב גנוב בצבע אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם
לצורך ביצוע הפעול המתוכנן (להלן – הרכב). לפנייהם נסע ███████████ ברכב האיסוזו
הניל. הוואזה על מנת להדריו באמצעות טלפון סלולרי לחבריו על מחסומי משטרה צבאיים.

9. נהג ברכב הניל, לידו ישב ███████████ רתחמוש בתמיק MP-5, אשר אותו
סיפק חנאשם, ובמושב האחורי ישב היותם ███████████, התחש באקדח 14, אשר גם אותו סיפק
הנאשם.

10. החבורה הניל נעצרה ככביש מסי 9 בסמור לצומת המוביל לשכונת רמת שלמה והמתינה לרכב
ישראלי מדדי שיגיע למקום במשרה לבצע לעברו פיגוע ירי ולגרום למקום של נוסעי הרכב.

11. לאחר מספר דקות, בסמוך לשעה 23:10, הגיע למקום רכב דגו אקספרס כ״ל, מ.ר. 2273706,
(להלן - הרכב) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מסי 9 לכיוון שכונת רמות.

12. ███████████ התחל לנסוע אחרי הרכב ועקב אותו.

13. כשהרכב נסע במקביל לרכב ███████████ פתח ███████████ באש בתמיק MP-5
ובאקדח 14, אשר אותם סיפק הנאשם, לעבר נוסעי הרכב במטרה לגרום למותם.

14. מטמר קליעים שורו על-ידי ███████████ פגעו ברנו ובשני נוסעי חרו –
משה וייס ומאיר-ייזביווס ז״ל. לאחר מכן, ███████████ המשיך לנסוע לכיוון שכונת רמות
ובסמוך למקום שבו בונים גשר חדש פנה ימינה לדרך עפר חמבוזלה לעבר נבאללה.

15. לפני הכניסה לעבר נבאללה, ███████████ והתבריו שהיו עמו ברכב נפגשו עם
שהמתינו להם במקום ברכב האיסוזו. משם כולם ביחד המשיכו בנסיעתם לעבר נבאללה ולאחר
מכן נמלטו לרמאללה.

16. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של מאיר ייזביווס דיל, אשר נפטר בבית
החולים כאורחר יותר. באותר היום כתוצאה מפגיעתם הקליעים שנורו על-ידי חברו הנאשם
בתמיק MP-5 ובאקדח 14, אשר אותם סיפק הנאשם.

### פרט עשרים: (פ.א. 7915/01 ציון)

מהות העבירה: נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מסי 378), תשי״ל-1970) וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מסי 225), תשכ״ח-1968.

פרטי העבירה: הנאשם הניל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הניל, במועד האמור, בסמוך לשעה 23:10, במקום המתואר בפרט האישום הקודם,
בנעיעתו האמורים בפרט האישום הקודם, ירה בכוונה למותו של משה וייס, אשר נהג
בדבר דגו אקספרס כ״ל, מ.ר. 2273706, המתואר בפרט האישום הקודם, אודת הקליעים שנורו
על-ידי חברו הנאשם, כפי שתואר בפרט האישום הקודם, פגע בראשו של משה וייס ופצע אותו
כאורח קשה.

### פרט עשרים ואחד: (פ.א. 481/01 ציון)

מהות העבירה: נסיון לגרימות מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר חזראות ביטחון
(יהודה (השומרון) (מסי 378), תשי״ל-1970) וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה (השומרון) (מסי 225), תשכ״ח-1968.

פרטי העבירה: הנאשם הניל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם, דיל, בראשית חודש אוקטובר, 2001, ברמאללה או בסמוך לכך, נפגש עם
███████████ (מכונה דיל █████████), בקשה ███████████ מהנאשם לספק ███████████ תמיק
MP-5, תחמושת לתמיק MP-5 הניל וכן רכב לצורך לבצע פיגוע ירי נגד אזרחים ישראלים
בירושלים בכוונה לגרום למותם.

2. ███████████ (מכונה דיל █████████) מסר לנאשם כי הוא מתכנן לבצע את
הפיגוע המתוכנן ביחד עם ███████████
הממוכנן ███████████.

10

P 5: 184

3. ‏תחילה החשש אמר ל־██████ לבצע את הפיגוע המתוכנן מרכבו של ██████. אין
‏טען כי יש צורך בשל רכב, כאשר בורכב אחד ייסע המתריעים והוריע ייסע
‏ברכב מוצב 323 גונב, הושם ל־██████ רכב מוצב 323 גונב, הושם לו לחזרת
‏רשעו ישראליות, אשר אותו רכש לצורך כך מזוד ██████ תמורת 5,000 ש"ח.

4. ‏לצורך ביצוע פיגוע הירי המתוכנן, החשש מסר ל־██████ תת-מקלע 5-MP ותחמושת לתת־מקלע
‏5-MP הנ"ל.

5. ‏ביום 03.10.01, יצא מראמאללה לכוון ירושלים במטרה לבצע שם את פיגוע הירי
‏המתוכנן כשהוא מחזיק בתת־מקלע 5-MP הנ"ל ונוסע ברכב המוצב הנ"ל, אשר בו נותן ██████

6. ‏ בדרך לפני רכב המוצב שבו נסע ██████ נסע ברכב איסוזו טנדר של ██████
‏נסע ██████ וזאת במטרה לקדום ולידע מחסומי על המשטרה ומשטרה וצה"ל בדרך.

7. ‏חבריו הנ"ל של החשש הגיע לבית תגלוב החדשה שבירושלים. שם ██████ חנית
‏את רכב המוצב וחיכה עם שאר חבריו הסתתר בתוך הרכב את תת־מקלע 5-MP הנ"ל.

8. ‏██████ עלו לרכב האיסוזו ומשם המשיכו ברכב האיסוזו ביחד עם
‏██████ לכוון כביש בגין.

9. ‏חבריו הנ"ל של החשש הגיע לכביש בגין. שם, ██████ הוראה לשאר חבריו איפה לבצע
‏את פיגוע הירי המתוכנן ואיך לחימלט לאחר ביצוע פיגוע הירי. החביא הנ"ל של החשש
‏הלוחיסט לבצע את פיגוע הירי המתוכנן במנודהת הראשונה של כביש בגין מכוון רמות וזאת על
‏מנת שלא־ישמעו את קולות הירי. לאחר מכן, כל האנשים הנ"ל חזרו לבית הגיב, למקום שם
‏חושאר רכב המוצב הנ"ל.

10. ‏עלה לרכב המוצב כשהוא חמוש בתת־מקלע 5-MP הנ"ל, ואילו ██████ נהג
‏ברכב המוצב האמור. ██████ נסע ברכב המוצב לכביש בגין במטרה
‏לבצע שם את פיגוע הירי המתוכנן ולגרום למות של אזרחים ישראלים.

11. ‏██████ נסע בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב
‏ישראלי בודד במטרה לבצע לעבריו את פיגוע הירי. המתוכנן במטרה לגרום למותם של נוסעי
‏הרכב.

12. ‏בסמוך לשעה 23:35, כשהם נוסעים לכוון צפון, במנודרה האחרונה בכיוון נסיעתם,
‏הבחינו ברכב הונדה אקורד, מ.ר. 110327, הנוסע.בכביש בגין לכוון
‏צפון. ברכב ההונדה נסע ██████ מתני עמיאל, פיני ממנו ופניו ממנו.

13. ‏██████ עקפו את רכב ההונדה הנ"ל. בעת ש־██████ נסע במקביל לרכב
‏ההונדה הנ"ל, ██████ ירה ב־██████ אחד בומני 5-MP, אשר אותו סיפק החשש, לעבר
‏נוסעי רכב ההונדה, בכוונה לגרום למותם. חקליע שגרות על־ידי ██████ לא פגע ברכב
‏ההונדה הנ"ל.

14. ‏לאחר ביצוע פיגוע הירי האמור, ██████ המשיכו בנסיעתם לכיוון
‏כביש מסי 9 המחובר בין שכונת רמות לשכונת הגבעה הצרפתית.

## ◄ פרט עשרים ושניים : (פ.א. 8379/01 ציון)

‏12(1)א◄ מהות העבירה: ניסיון לגרימות מוות בכוונה, עבירה לפי סעיף 51א(א) לצו הוראות ביטחון
‏(יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
‏(יהודה והשומרון) (מסי 225), תשכ"ח-1968.

‏12(2)א◄ פרט העובדות: החשש הנ"ל, בין באיתור ובין מחוצה לו, ביום 03.10.01 או בסמוך לכך,
‏ניסה לגרום למותם למותו שלאחר, דהיינו:

1. ‏לאחר ██████ (מכונתו ██████) ██████ של
‏ביצוע את פיגוע הירי כפי שתוארו בפרט האישום הקודם, השניים ממשיכו בנסיעתם ברכב
‏המוצבה, אשר אותו סיפק החשש כפי שתואר בפרט האישום הקודם, לכוון כביש מסי 9,
‏המחובר בין שכונת רמות לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חנינא והמשך
‏לרמאללה.

2. ‏במהלך הנסיעה הנ"ל, על־פי בקשתו של ██████, בדק אות ותקינותו של
‏תמ"ק 5-MP, אשר אותו מסר החשש, ואף ירה מספר כדורים כדורים באוויר.

3. ‏במהלך הנסיעה בכביש מסי 9 הנ"ל, בסמוך לשעה 23:45, ██████ ברכב
‏ההונדה ברכב סקודה, מ.ר 6567709, אשר נסע בכביש מסי 9 לכיוון חנבעה הצרפתית. ברכב
‏הסקודה הנ"ל נסעו מלכה כהן ומנדת כהן.

4. ‏██████ אשר, כאמור, נהג ברכב המוצב, עקפו את רכב הסקודה.

11

P 5: 186

5. בעת ש[redacted] נסע במקביל לרכב הסקודה הנ"ל, מתמד מצלח ירה בתמ"ק MP-5, אשר אותו סיפק להם הנאשם לצורך ביצוע פיגוע הירי כפי שתואר בפרט האישום הקודם, מספר יריות לעבר רכב הסקודה הנ"ל בכוונה לגרום למותם של נוסעי רכב הסקודה.
6. מספר קליעים שנורו על-ידי [redacted] פגעו ברכב הסקודה. שני קליעים שנורו על-ידי [redacted] פגעו בפנחס כהן וקליע נוסף פגע במלכה כהן.
7. פנחס כהן נפצע באורח בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע ה-28 להריון, נפצעה באורח בינוני מפגיעת קליע בראשה.
8. לאחר ביצוע פיגוע הירי האמור, [redacted] המשיכו בנסיעה לכיוון הגבעה הצרפתית ומשם הגיעו לבית חנינא החדשה. שם, [redacted] החנו את רכב המזדה הנ"ל ויצרו קשר טלפוני עם [redacted] (המכונה "[redacted]"), אשר הגיעו למקום ברכב האיסוזו של [redacted] על מנת לאסוף את [redacted], וזאת לפי התכנון האמור בפרט האישום הקודם.
9. [redacted] הסתירו את תמ"ק MP-5 הנ"ל ברכב האיסוזו ועלו לרכב האיסוזו.
10. כל ארבעת אנשים הנ"ל ניסו לחזור מירושלים לרמאללה, אך לא הצליחו לעשות כן בגלל מחסומי צה"ל והמשטרה. חבריו הנ"ל של הנאשם נשארו ללון אצל [redacted], חברו של [redacted], בבית חנינא החדשה בירושלים.
11. יום למחרת, 04.10.01, [redacted] חזר ברכבו של [redacted] לרמאללה.
12. לאחר חזרתו לרמאללה, [redacted] דיווח לנאשם אודות הפיגועים שביצע בעזרת רכב המזדה ותמ"ק MP-5, אשר אותם קיבל מהנאשם.

**פרט עשרים ושלושה:**

מהות העבירה: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, בסוף שנת 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, בעת שהיה עם [redacted] ראש "התנזים" של הפתח, נפגש עם [redacted] - ראש "גדודי חללי אלאקצא" - הזרוע הצבאית של "התנזים" של הפתח. [redacted] סיפר ל[redacted] על כוונתיו לרכוש מרגמה ופצצות מרגמה לצורך ביצוע ירי מרגמות לעבר היישובים הישראליים בכוונה לגרום למותם של אזרחים ישראליים. [redacted] ביקש מ[redacted] לקבל סיוע כספי לצורך רכישת המרגמה ופצצות מרגמה. [redacted] סירב למסור את הסיוע הכספי המבוקש והפנה את [redacted] אל הנאשם. הנאשם הסביר ל[redacted] כי אין כל צורך לשלם הרבה כסף עבור מרגמה ופצצות מרגמה שהרי ברשותו של הנאשם כבר יש מרגמה מאולתרת ופצצות מרגמה.
בתחילת שנת 2002, הנאשם הפנה את [redacted] ואת חברו של האחרון - פעיל צבאי בכיר ב"גדודי חללי אלאקצא" - [redacted] אל ביתו של [redacted] על מנת שיקבלו שם את המרגמה ואת פצצות המרגמה הנ"ל.
[redacted] אכן קיבלו את המרגמה המאולתרת הנ"ל וכן 5 פצצות מרגמה.
[redacted], ביחד עם חבריו הנ"ל, ירה באמצעות המרגמה המאולתרת הנ"ל פצצת מרגמה לעבר היישוב פסגות בכוונה לגרום למותם של תושבי היישוב הנ"ל ושל חיילי צה"ל שהיו ביישוב הנ"ל. פצצת המרגמה הנ"ל לא פגעה ביישוב פסגות והתפוצצה בסמוך אליו.
לאחר ביצוע הפיגוע הנ"ל, [redacted] דיווח לנאשם על מה שקרה. הנאשם לקח את [redacted] אל [redacted] על מנת שידווח גם ל[redacted] אודות פיגוע ירי פצצת מרגמה שבוצע לראשונה באיזור.

**פרט עשירים וארבעה:** (ת.פ. 39/02 בנימין)

<u>מהות העבירה:</u> גרימת מוות במכוון, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ו-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון, תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם חייל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחד, דהיינו:

1. ביום 14.01.02 נמצא ████████ אשר היה פעיל צבאי בכיר ב"תנזימ" של "ארגון הפתיח", שלא התאמהדות בלתי מותחת, בעקבות מותו של ████████ החייל, ראש "התנזימים" של ████████ פתח אוהל אבלים באלבירה.

2. הנאשם.החייל, ביום 15.01.02, באוהל האבלים החייל, נפגש עם ████████████ (מהכונה ████████)

3. הנאשם מסר ל████████ החייל כי ████████ ראש "התנזימים" של הפתיח באיזור, מבקש כי הם יבצעו באופן מיידי פיגוע נקמה על מותו של ████████ החייל וירגזט למותם של אזרחים ישראליים.

4. לצורך ביצוע הפיגוע האמור, הנאשם מסר ל████████ ברזל.תת.מ.א 5 תמ'שיק P.M, אוקדח 16, וכן בַרַּז, מדגה, הנשקו לוחות ברישיון ישראליות.

5. חבריו חייל של הנאשם, באוהל האבלים החייל, חולקו כך, לאור דרישתו של הנאשם, יבצעו עוד באותו הערב פיגוע במתכות הדלק הגנבשלים הנמצאת בכבש 443 במנגד לכביוסת לגבוקת זאב ואגה בכוונה לגרום למותם של אזרחים ישראליים.

6. בשעות הערב באותו חיום, 15.01.02. יצא מאוהל האבלים חייל ביחד עם ████████ נסע ברכב,איטוחו סוגר של פראאו עשגה לתחנת הדלק החייל במקתרה לבצע שם את פיגוע הירי המתוכנן. אחר רכב האיסורו חייל נסע ████████, התחמוש באקדח 14, התחמוש באקדח 16 חמיל, ████████, התחמוש בתת.מ.א 5-MP החייל, השלישי נסע ברכב מדחה, אשר אותו קיבלו לצורך כך מהנאשם.

7. חברים חייל של הנאשם הגיעו עד ערמת עפר התחוספת את הכניסה ביר נבאללה ואליביב בכביש 443 במרחק של כ-100 מטר מתחנת הדלק הגנבלמים. חברינ חייל של הנאשם החיו את כלי הרכב שלהם, אישותו ומורד, עם הפנים לכוון הכבר ביר נבאללה על מנת שיוכלו להימלטם מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

8. ████████, התחמוש באקדח 14, ו'ו'אן, התחמוש באקדח 16, ו████████, התחמוש בתת-5-MP ורגזו החייל, הלכו לכוון תחנות הדלק החייל במתכרה לבצע שם את פיגוע הירי חמתוכנן ולגרום למותם של אזרחים ישראליים.

9. ████████ הצאירו בכלי הרכב החייל על מנת לשמור שלא יגיע למקום סיור של צ'חייל או אנשים אחרים. ████████ ישב בכיסא הנהג ברכב המזדה על מנת שיוכל למלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מיד לאחר ביצוע הפיגוע.

10. ████████ נעמדו בכניסה לתחנת הדלק חחייל.

11. לאחר מספר דקות, בסמוך לשעה 19:45, ████████ הבחינו ברכב פאאו אונו לבן, מ.ר. 6424905, שנכנס לתחנת הדלק החייל ואשר בו נהגה יואלה חן חייל ולידה ישבה רשל נרחל עיני.

12. ████████ ניגשו אל רכב הפאאו החייל בבטחה לבצע לעברו פיגוע ירי ולגרום למותן של נוסעות הרכב. נוסעות רכב הפאאו הבחינו באקדח שבה התחילו וחוחלו לצעוק ולצפור. ████████ הכירו את האקדח למכסניך ואמרו לנוסעות הרכב שלא יפחדו.

13. בשלב זה, ████████ פתח באש אוטומטסיך במתמ'ש 5-MP, אשר אותו קיפפ חמנשם, לעבר נוסעות רכב הפאאו בכוונה לגרום למותן, גם ████████ שוב הוצאת את אקדחו וחתחל לירות לעבר נוסעות הרכב בכוונה למותן.

14. ████████ ירה מטווח קצר מאוד מספר רב של כדורים לעבר חן חייל ולעבר רשל נרחל עיני שהיו ברכב הפאאו חמיל.

15. כ-28 קליעים, שנורו על-ידי ████████, פגעו בשמשות הקדמיות של הרכב, מספר קליעים פגעו בצד הרכב ובשמשות חלון דלת הנהג.

16. במהלך ביצוע פיגוע הירי המתואר, ████████, אשר עמד במרחק קצר מאחורי ████████, שימש כשומר ומתריע.

17. ████████ מיד לאחר שומע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת להודיע לחבריו אם יש מחסומים בדרך לרמאללה.

13

ת.ת. 444/02 מותקן

P 5: 187

.18 ████, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל
רכב המחדח שבו המתין ████████: לאחר שהשלושה חני״ל עלו לרכב,
הסיע אותם ברמאללה.

.19 ברמאללה ████████ נפגשו עם ████.

.20 לאחר מכן, ████ נפגש ברמאללה עם הנאשם, החזיר לו את תמ״ק MP-5 ואת רכב
המזדה, וכך דיווח על הפעולות שביצעו כמתואר לעיל.

.21 במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותם של יואלה חן ז״ל, אשר נפטרה במקום
כתוצאה מפגיעות הקליעים שנורו על-ידי ████████████████████.

## פרט עשרים וחמישה:  (פ.א.א. 39/02 בנימין)

מהות העבירה: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

פרטי העבירה: הנאשם הנ״ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט
האישום הקודם, ניסה לגרום בכוונה למותו של רשל ז׳רוק עליל, אשר נסעה ברכב פיאט אחר לבן,
מ.ר. 6424905, המתוארת בפרט האישום הקודם. אחד הקליעים שנורו על-ידי ████████████
████████ (מכונה ████████) בכלי נשק שנמסרו להם על-ידי הנאשם
לצורך ביצוע פיגוע הירי, כפי שתוארו בפרט האישום הקודם, פגע בראשה של רשל ז׳רוק עניל. ושני
קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה באורח בינוני.

## פרט עשרים ושישה:  (פ.א.א. 502/02 ציון)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ״ח-1968.

פרטי העבירה: הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

.1  הנאשם הנ״ל, בחודש ינואר 2002, הנאשם החליט כי בדעתו להוציא לפועל פיגוע התאבדות
בתוך שטחה של מדינת ישראל על מנת לגרום למותם של אזרחים ישראלנים רבים ככל
האפשר.

.2  הנאשם הנ״ל פנה באמצעות שלמור אל ████ פעיל בכיר ב״תנזים״ של הפתייח,
שהוא האחראחות בלעדי מותורה, בשכם. הנאשם ביקש מ████ לשלוח אליו אדם המוכן
לבצע פיגוע התאבדות. הנאשם ████ ████ כי הוא עצמו ידאג להכניס את המחבל
המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.

.3  לאחר מספר ימים, ביום 22.01.02, ברמאללה, הנאשם נפגש עם סעיד רמדאן, ונשא כפו׳ תל
בקופ שכם, אשר הודיע לנאשם כי נשלח על-ידי ████ לצורך ביצוע פיגוע התאבדות.

.4  הנאשם התקשר אל ████████████ (מכונה ████) וביקש מהאחרון
להגיע אליו.

.5  ████ נפגש עם הנאשם וסעד סעיד רמדאן הנ״ל. באותו היום ברמאללה. הנאשם ערך
היכרות בין השניים. הנאשם ל████████ לקחת את סעיד רמדאן למספרה על מנת שיסתפר
לפני ביצוע פיגוע ההתאבדות שלתכנו.

.6  לאחר מכן, הנאשם ואל████████ (מכונה ████)
ביקשו מהאחרון להסיע מחבל מתאבד מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע
בירושלים פיגוע התאבדות וגרום למותם של אזרחים ישראלנים רבים ככל האפשר.

.7  ████ הגיע לרמאללה בתא׳ עם ████████, וזאת לאחר שהאחרון הגיע לפגישת
הסכמם לחשותף בהסעות המחבל המתבל מרמאללה לירושלים.
ברכב איטומו טומר עם לוחית רישוי ישראליות.

.8  לפי הוראתו של הנאשם, נסע ברכב האיסוזו חני״ל מרמאללה
לירושלים על מנת למצוא דרך שבו בין מחסומי שישלח את המחבל במטלה להסיע יותר
מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

14

ת.ת. 444/02 משקו

P 5: 188

9. ████████ נסע מרמאללה דרך רפאת והגיעו לאיזור התעשיה עטרות,
שם השניים חזרו לכביש הראשי-ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה
רמה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם השניים פנו ימינה ונסעו עד
לצומת חיזמה. משם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת הנגבה
הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. ████ ראו כי
בדרך שבה נסעו ניתן להוכיל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרת
ישראל.

10. באותו הזמן, ברמאללה, ████████ לקחו את סעיד רמדאן הנ"ל להתפלל ואף קנו
עבור סעיד רמדאן הנ"ל אוכל, בגדים ונעליים חדשים. ████████ בסכום של ████ עבור הקניות
הנ"ל סכום של 1,200 שייח.

11. ████ על-פי הוראתו של ████████, הביא רוסייר M-16 ו-3 מחסניות לרוסייר הנ"ל
מלאות בכדורים, כאשר שתי מחסניות היו מחוברות זו לזו.

12. לפי ████████ של ████████ וחבריו הנ"ל, היה על סעיד רמדאן להגיע לירושלים ולירות שם
באזרחים ישראליים בכוונה לגרום למותם עד שהוא עצמו ייהרג מאש כוחות הביטחון
הישראליים.

13. לאחר מכן, באותו היום, ████████, ████████ נפגשו עם ████
████████ באיזור המלון "סיטי אין" באלבירה. ████████ הכיר ████
████ את סעיד רמדאן.

14. ████████ ████████ כי סעיד רמדאן הנ"ל הוא המחבל המתאבד,
אשר אותו הם צריכים לקחת עד לירושלים על מנת שיבצע שם פיגוע התאבדות בשלייחה לעבר
אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

15. ████████ הסתירו את רוסייר M-16 ותחמושתו הנ"ל ברכב האיסוזו
הנ"ל.

16. ████████ ████ איתנו לסעיד רמדאן הצלחה. והשלושה נסעו לירושלים. ████████ אמר
████████ כי צלליהם לקחת את סעיד רמדאן לבצע את פיגוע ההתאבדות
בכל מקום בירושלים שהם יבחרו.

17. ████████ נהג ברכב-האיסוזו, סעיד רמדאן ישב בכסא שליד כיסא הנהג ו████
חונייב,ישב במושב האחורי.

18. ████████ הסיע את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו
מוקדם יותר באותו היום כפי שתואר לעיל.

19. בירושלים, ████████ נסעו לרחוב שיחי גיראה. שם הם הוציאו את רוסייר
M-16 ████ והתחמושת שתי מוסתרות בתוך הרכב ומסרו אותם לידי סעיד רמדאן.
████████ עבר לשבת בכסא שליד כסא הנהג ואילו סעיד רמדאן עבר למושב האחורי,
כשהוא מחזיק בידיו את רוסייר M-16 ואת המחסניות.

20. ████████ הסיע את סעיד רמדאן לרחוב הנביאים.

21. במהלך הנסיעה, סעיד רמדאן התלונן בפני ████████ כי הנעלים
החדשות, אשר אותם קנה לו ████ עבור הפיגוע, קטנות ולוחצות לו.
████████ את גללי יריבוסקי ומסר אותו לסעיד רמדאן באומרו "יתעלה לו" עדן גם נעלי
יריבוסקי".

22. בהגיעם לצומת הרחובות שטרואוס והנביאים, ████████ עצרו את רכב
האיסוזו.

23. ████████ אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות
במקום שירצה, בו הרבה אנשים.

24. לאחר שסעיד רמדאן ירד מהרכב עם רוסייר M-16 והתחמושת, ████████
נסעו ממקומם שיחי ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, ████████ קו
27 שהיה באותם עת ████████ הנ"ל וכן לעבר האנשים שהיו בתוך התחנות וחסמכות בכוונה
לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך לירות, נכנס
ממקום לעבר התחנון ונמצא ברגב הרב קונה. שם סעיד רמדאן התחליף מחסנית והמשיך
לירות לעבר האזרחים בכוונה לגרום למותם. סעיד ידה ברוסייר-M-16, שבו החזיק,
מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים
והשוטרים שהגיעו למקום.

P 5: 189

27. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של אורה (סבטלנה) סנדלר ז"ל, אשר נפטרה כתוצאה מפגיעות חקלמיעות שנגרך על-ידי סעיף רמדאן.

28. לאחר שנודע לנאשם על ביצוע הפיגוע הנ"ל, הנאשם נגש אל [ ] וקיבל מהאחרון סכום של 1,000 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. הנאשם מסך ל [ ] 100 דולר ארה"ב לכל אחד עבור השתתפותם בהוצאה לפועל של הפיגוע הנ"ל.

### פרט עשרים ושבעה: (ת.א. 502/02 ציון)

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א)(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם בכוונה למותה של אורה (סבטלנה) סנדלר ז"ל, אשר נפטרה כתוצאה מפגיעות הקלמיעות שנגרו על-ידי סעיף רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.

### פרט עשרים ושמונה: (ת.א. 502/02 ציון)

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א)(א) ו-19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים ושישה, במעשיו המתוארים בפרט האישום העשרים ושישה, ניסה לגרום בכוונה למותם של אזרחים רבים, ככל הנתון אשר היו באותה עת ברחוב יפו ובקרבתו. כתוצאה מהירי שבוצע במקום על-ידי סעיף רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, נפצעו מעל 45 אזרחים.

### פרט עשרים תשעה: (ת.א. 502/02 ציון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט הגים האישום העשרים ושישה, החשום הנ"ל, אשר כלל חנויות חנויות ברחוב יפו, תחנת אוטובוס "אגד", אוטובוס "אגד" קו 27 וכן כלי רכב רבים, אשר נפגעו כתוצאה מהירי שבוצע במקום על-ידי סעיף רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.

ת.ת. 444/02 מתוקן

## 7 פרט שלישים:

מהות העבירה: ניסיון לגרימת מוות במכונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשל"ח-1968.

פרטי העבירה: הנאשם הנ"ל, באיזור, בסוף חודש ינואר – תחילת חודש פברואר 2002 או בסמוך
לכך, ניסה לגרום במכונה למותו של אחר, וזהינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ונפש עם ███████████

2. מסר לנאשם כי בן דוד,███████████ , מוכן לבצע פיגוע והתאבדות.

3. על-פי בקשתו של הנאשם, ערך פגישה בין הנאשם לבין ███████████ החייל.

4. לאחר הפגישה הנ"ל, הנאשם הסכים להתאמתו של ███████████ לשלוח את ███████████
לבצע פיגוע התאבדות בירושלים על אזורים ישראליים רבים בכל הענין.

5. הנאשם הנ"ל ███████████ יבצע פיגוע התאבדות באמצעות רובה, דהיינו יי...ה לעבר אזרחים
ישראליים בירושלים בסמוך לגרום למותם של אזרחים ישראליים רבים כל המוען וימשיך
לירות עד שייהרג על-ידי כוחות הביטחון הישראליים.

6. הנאשם לקח מ███████████ רובי M-16 ומספר מחסניות ברומם.

7. הנאשם יצר קשר עם ███████████ . על-פי בקשת של הנאשם השלוחה הנ"ל הגיע לרמאללה
ונפגש עם הנאשם.

8. הנאשם מסר לחבריו הנ"ל כי הוא מבקש מהם להגניב לירושלים מחבל נוסף, אשר יבצע
בירושלים פיגוע התאבדות, דוגמת הפיגוע המתואר בפרט האישום העשירי לשנם, במטרה
לגרום למותם של אזרחים רבים בכל הענין. חבריו הנ"ל של הנאשם הסכימו להגניבו
בהסעת המחבל המתאבד הנ"ל לירושלים.

9. הנאשם מסר לחיי ███████████ רכב סוזארו אסור, השייך למשפחתו של
הנאשם. ███████████ חזר עם רכב הסוזארו לביתו במר נבאללה, והילו ███████████ נסע
עם רכב איסוזו עומד ש... לביתו בכפר עקב.

10. עם למחרת, הנאשם התקשר אל ███████████ והורה להם להניע להגניע לתחנת
הדלק הנמצאת ברמאללה תחתה, לאסוף משם את המחבל המתאבד ולהסיע אותו לירושלים
על מנת שיבצע שם את פיגוע ההתאבדות במכונה לגרום למותם של אזרחים רבים בכל הענין.

11. נסע ברכב הסובארו עד למחסום קלנדיה, שם הוא התכנ... אות הברכב ועלה
לרכב האיסוזו של ███████████ שהניעו למקום. משם המשיכו השניים למקום המפגש האמור.

12. ברמאללה, בתחנת הדלק הנ"ל, שהוא המקום המתאם, הנאשם מסר לידי ███████████
בפניית את ███████████ . ונפגש עם הנאשם, אשר הביא
רובי M-16 הנ"ל ושלוש מחסניות הנ"ל מלאות בכדורים לרוסיי M-16.

13. ███████████ הסתיר את רוסיי M-16 ומחסניותיו מתוך רכב האיסוזו.

14. ███████████ נסע בו... עם המחבל המתאבד לירושלים במטרה שהאחרון
יבצע שם פיגוע ירי וינרום למותם של אזרחים רבים בכל הענין.

15. מכן ███████████ הגיעו למחסום קלנדיה ועקבו אותו, לאחר
שעבר לרכב הסובארו, שהשאיר במקום קודם לכן ונסע לצומת א-ראם, ███████████
███████████ עבר ברכב הסובארו את מחסום א-ראם ברגל. לאחר מכן, חזר, עלה לרכב
האיסוזו, שבו היה מוסתר הנשק, ועבר את מחסום א-ראם כשהוא נוסע לבד ברכב האיסוזו
עם הנשק.

16. ███████████ הסיע את המחבל המתאבד עד למטבר שעיפאט. לשם הגיע גם
ברכב האיסוזו עם הנשק והתחמושת.

17. שם, המתאבד המתאבד, ███████████ ביקש להיכנס למסגד ולהתפלל לפני שיבצע את פיגוע
ההתאבדות. ███████████ הסכימו להסכמה הנ"ל.

18. בזמן ש███████████ התפלל במסגד האמור, מאמ... ███████████ נסע ברכב
הסובארו הנ"ל לגנוב שאמ... שבירושלים אם יש בדרך מחסומי צה"ל או
משטרה. השניים החליטו להסיע את המחבל המתאבד לגנבת שאול במטרה לבצע שם את
פיגוע הירי המתוכנן ואת מכוויו שיש במקום האמור אזרחים רבים.

19. כאשר ███████████ חזרו למעני ███████████ בשועפט על מת לאסוף משם את ███████████
ולהסיע אותו לגנבת שאול לגנבת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן, השניים לא
מצאו את המחבל המתאבד במסגד.

20. התקשרתי אל האשם ודיווחתי לו כי המחבל המתאבד ברח להם. ‏███ הורה לי ‏███ לחזור לרמאללה.

21. חזרתי לרמאללה, נפגשו שם עם האשם ומסרתי לידיו את רובה ‏███ הסתארתי הנ"ל, את רוס"ר M-16 הנ"ל ואת התחמונים הנ"ל. האשם החזיר את רוס"ר M-16 הנ"ל לידיי ‏███

22. האשם מסר ל‏███ כי כן דזהן נמלט בעת שחזרו בדרכו לבצע פיגוע ירי בירושלים.

## פרט שלושים ואחד:

**מהות העבירה:** פגיעה בבטחון האיזור, עבירה לפי סעיף 53(א)(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

**פרטי העבירה:** האשם הנ"ל, באיזור, בתחילת חודש ‏███ בפברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחונו האיזור או לביטחונו צה"ל כאחד צה"ל או לפעולתם, שימשרם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, מתקן מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליבורום, הספקתם, החזקתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, כדלקמן:

האשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ‏███ נפגש עם ‏███ ‏███ ה‏███ ועם ‏███. השניים הנ"ל מסרו לאשם כי נמצא אנשם מחבל מתאבד ‏███ המכונה "‏███ וביקשו את עזרתו של האשם. האשם הסכים לעזור לשלוח את המחבל המתאבד אל תוך מדינת ישראל על מנת שיבצע פיגוע התאבדות ויגרום למותם של אזרחים ישראלים רבים בכל הניתן.

האשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ‏███ וכן אדם שדרות לבצע פיגוע התאבדות. האשם‏███, שוחח עם ‏███ לחלן: המחבל המתאבד) וה‏███ כי האחרון רצינו בכוונותיו. המחבל המתאבד הנ"ל מסר לאנשם כי גם אביו היו "שחיד" מכיוון שהנהרג על-ידי חיילי צה"ל.

האשם העביר לתיי ‏███ רוס"ר M-16 ו‏███ מחסוניות מלאות בכדורים על מנת שימסור אותם למחבל המתאבד הנ"ל לצורך ביצוע פיגוע ההתאבדות המתוכנן.

יום למחרת, האשם חזר לדירת הנ"ל עם מצלמת וידיאו. ‏███ צילם באמצעות מצלמת הוידיאו הנ"ל את המחבל המתאבד הנ"ל כשהוא מקריא כרוז, וזאת לקראת יציאתו לביצוע פיגוע ההתאבדות בתוך מדינת ישראל. האשם ו‏███ העביר את המחבל המתאבד הנ"ל לשימוש וביצוע ברוס"ר M-16. לאחר מכן האשם העביר את המחבל המתאבד הנ"ל לדירתו של האשם ברמאללה אחרת. האשם ו‏███ שאיירו את המחבל המתאבד הנ"ל לישון בדירתו על מנת שיצא משם ביום שלמחרת לביצוע פיגוע ההתאבדות המתוכנן.

כאשר, למחרת בבוקר, האשם ‏███ הגיעו לדירתו של האשם, השניים גילו כי המחבל המתאבד נעלם. לאחר היעלמותו של המחבל המתאבד הנ"ל, התכנית הנ"ל לביצוע פיגוע ההתאבדות לא יצאה אל הפועל.

## פרט שלושים ושניים:

**מהות העבירה:** פגיעה בבטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

**פרטי העבירה:** האשם הנ"ל, באיזור, בחודש בפברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחונו האיזור או לביטחונו צה"ל או לפעולתם, שימשרם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, מתקן מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליבורום, הספקתם, החזקתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, כדלקמן:

האשם הנ"ל, במועד האמור, נפגש באמצעות טלפון עם ‏███ ‏███, ראש ‏███ יגזודיי חללי אלאקצא, הזרוע הצבאית של "התנועה" של הפתיית, באזור שכם. ‏███ הודיע לאשם כי הוא שלח אליו שני מחבלים מתאבדים ‏███ כל המחבלים ‏███ למבוצע למחבלים המתאבדים הנ"ל כלי נשק ורימונים-יד וכן ידאו להכניסם אל תוך ‏███ המצויבי של ירושלים על מנת שיבצעו שם פיגועי התאבדות כשיירו לעבר אזרחים ישראלים, בסמוך לגרום

ת.ה. 444/02 מתוקן

למותם של אזרחים ישראלים רבים ככל הניתן, ויומשים לירות עד שייחרגו על-ידי כוחות הביטחון הישראליים.

על-פי הוראתו של נצר עווש המייל, ביום 17.02.02, ████████ פעיל בכיר בייגדודי תללי אלאקצאיי, שלח משלח לרמאללה, אל הנאשם, את ████████

(מכונה ████████ ████, אשר אותם ליווה ████████ השניים היו

בדבר חמושים בשני רימונים-יד.

היו אמורים לבצע את פיגוע את ההתאבדות לפני שתקנון הנאשם ████████

במסגרת ההכנה לפגוע ההתאבדות תמייל, בבתו של ████████, אחיו של ████████ המייל, במתכונת הפלימים יאלאקסאי, ████████ צילמו באמצעות מצלמת וידאו את

ואת ████████ לאחר מכן אותחים בדוטייר M-16. השניים אף קראו בפנ מצלמת הוידאו כרוז של ״גדודי חללי אלאקסאי״, העבירו לא ████████ אימון בשימוש בנשק

לקראת ביצוע פיגועי המתוכנן.

ביום 17.02.02, ████████ יצאו משכם לרמאללה ביחד עם ████████ הסביר כי ████████ הסביר כי עליהם לנסוע לרמאללה

במכוניתו של ████████. יהתיה לאחראי לכך על פשק ████████

ויפגשו ברמאללה עם פעילי ״גדודי חללי אלאקסאיי, אשר יספקו לתם כלי נשק ויסיע אותם לירושלים לפי המתוכנן המייל.

האבטבדת תמייל לא הצליחה להוצא לרמאללה ולהפגש עם הנאשם ולהוצאה לפועל של פיגוע ההתאבדות המתוכנן. הרצועה נעצר במחסום צהייל, בסמוך לכפר דומא שבצפת לרמאללה. שנו רימונים-יד שהיו בבגנית המייל, מצאו במקום על-ידי התחבל.

**/ פרט שלושים ושלושה:**

**מהות העבירה:** קשירת קשר לגרימת מוות במזונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכייה-1968 וסעיף 51א) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מסי 378), תשייל-1970.

**פרטי העבירה:** הנאשם המייל, באיזור, בממוצע חודש חפברואר 2002 או בסמוך לכך, קשר עם אדם אחר לגרום במזונה למותם של אזרח, והינו: הנאשם המייל, ביום 15.02.02 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם ████████ (המכונה ████

בהמשך ופגישתו המייל, הנאשם ביקש מתחבריו המייל להכניס לתוך ירושלים מתחבל מתאבד, אשר יבצע שם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים ככל הניתן. חברי המייל של הנאשם הסכימו לדרשת הנאשם. הנאשם הבטיח לשלם לתחבריו המייל 300 דולר, ארהייב בתמורת להובלת המתחבל המתאבד לירושלים. הנאשם הודיע לתחבריו המייל כי יביא אליהום את המתחבל המתאבד בעוד כיום-יומיים.

הנאשם אף נתן לתחבריו המייל רכב סוברוד אפור, נוסא לחיות רישו ישראליים, על מנת שתחבריו המייל יוביל בו את המתחבל המתאבד לירושלים.

כרגיל להכניס את המתחבל המתאבד לירושלים ████████ חברי המייל של הנאשם תכנו לבוא את המתחבל המתאבד לאחד המקומות בירושלים שיש בו הרבה אנשים על מנת שיעם המתחבל המתאבד יבצע את פיגוע ההתאבדות המתוכנן. ████████ אף ערכו סיור בירושלים ובחרו את המקומות המתאמים לביצוע פיגוע נגד אזרחים ישראליים. בין היתר, בחרו חבריו המייל של הנאשם במלון ״יהמדה״, המתתרת של בביטו בנין צומת הצרפתית. תכניתם המייל של הנאשם והחבריו המייל לא יצאה אל הפועל מכוון שכומים לאחר הפגישה המייל, ████████ ביום 17.02.02 ████████ נעצר על-ידי כוחות הביטחון הישראליים, וכעבו יום, ביום 18.02.02.

לפי הוראתו של הנאשם ████████ ████ ביום 19.02.02 או בסמוך לכך, ברמאללה, נפגש עם ████████ אחיו של ████████ המייל. בבהמשך הפגישה האמורה, ████████ הסכימו להעביר של ████████ להכניס מתחבל מתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים ככל הניתן. גם התכנית הזו לא יצא אל הפועל מכוון של ████████ עצמו נעצר ביום למחרב, יום ה-20.02.02, על-ידי כוחות הביטחון הישראליים.

19

ת.ת. 444/02 מתוקן

**פרט שלושים הארבעה: (פ.א. 483/02 שפט)**

**מחת העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (נוסח
המשולב) (מס' 378), תש"ל-1970. וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיחור ובין מחומר לו, ביום 25.02.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, באמצע חודש פברואר 2002, ברמאללה או בסמוך לכך, **הצטרף חוליות לשלוח**
מחבל מתאבד לירושלים **על מנת שיתבצע** פיגוע ירי לעבר אזרחים ישראלים במוונה לגרום
למותם אזרחים רבים ככל הניתן. הנאשם מכ_ _כי מתאבד המתאבד יירה לעבר אזרחים
ישראלים עד שיתכנת מאש כוחות הביטחון הישראלים.

2. הנאשם סדר קשר טלפוני עם _____ פעיל צבאי בכיר ב"תנזים" של הפתח,
שהיה התאחדות בלתי מותרת, בשם. הנאשם ביקש מ_____ לשלוח אלו לרמאללה
מחבל מתאבד לצורך ביצוע פיגוע ההתאבדות המתוכנן.

3. לאחר מספר ימים, _____ יצר קשר עם הנאשם והודיע לו כי הוא שלח
עליך _____ לצורך ביצוע פיגוע ההתאבדות המתוכנן וכי הוא נמצא ברמאללה.

4. על-פי הוראתו של הנאשם, _____ נפגע עם _____ הביא את
אל הנאשם.

5. הנאשם שוחח עם _____ ולאחר מכן לקח את _____ למספרה על מנת שהאחרון יסתפר
לקראת ביצוע פיגוע ההתאבדות המתוכנן.

6. **הנאשם רכש עבור** _____ בגדים. אשר עבורם שילם מכיסו 1,000 ש"ח.

7. לאחר מכן, הנאשם הוכניס את _____ דירה ברמאללה. אשר בה התגוררו הנאשם, _____
(להלן: הדירה).

8. ביום 23.02.02, לדירה הגיעו גם _____ אשר שתהנו רוסי"ר M-16
עבור לביצוע הפיגוע המתוכנן, אשר אותו קיבל מהנאשם, _____ אף הביא
מחסניות לרסי"ר M-16 הנ"ל מבניין של אחר, _____

9. בשעות הערב באותו היום, _____ מסרו לראשו גור מידע על
המקום שבו תוכל על _____ לבצע את הפיגוע המתוכנן. הנאשם וחבריו הסבירו ל
כי עליך לבצע את הפיגוע המתוכנן בשכונת גוונה-יעקב בירושלים, במקום, אשר לגביו
_____ אסף מידע קודם לכן.

10. הנאשם, ביחד עם אחרים, ציינו את _____ באמצעות מצלמת וידאו במסגרת ההכנות
לקראת ביצוע פיגוע המתוכנן.

11. על-פי בקשתו של _____ _____ אחרו - _____ פנה אל
ובקש מהאחרון לרסיע את _____ לירושלים.

12. ביום 25.02.02. בשעות הערב, _____ יצא מרמאללה לכוונו ירושלים ברכבו של
_____ כאשר ברכב מוסתר רסי"ר M-16 הנ"ל. המחסניות זנ רימון-יד. אשר אותו מסר
_____

13. _____ הגיע לכביש הראשי בשכונת גוונה-יעקב בירושלים.

14. _____ ירד מהרכב הנ"ל במקום האמור, כשהוא חמוש ברסי"ר M-16 הנ"ל, מהסניות
ורימון-יד. _____ התקרב אל תחנת האוטובוס של קו 25 של "אגד" הנמצאת במקום ופתח
באש אוטומטית ברסי"ר M-16 הנ"ל לעבר כלי רכב שעברו במקום וכן לעבר אזרחים
ישראלים שחיו במקום כמותם לגרום למותם של אנשים רבים ככל האפשר. למקום האמור
הגיעה מניידת המשטרה _____ פתח באש אוטומטית לעבר שני שוטרי משטרת ישראל שהיו
בניידת הנ"ל בכוונה לגרום למותם. הכדורים שנורו על-ידי _____ פגעו בשני השוטרים
חנ"ל שהתעוררו לעבר _____ הירו לעברו. כתוצאה מפגיעות הכדורים נורו על-ידי
_____ השוטרת גלית אריבב ז"ל נפצעה ונפלה על הקרקע. _____ התקרב אל השוטרת גלית
אריבב ז"ל וירה לעברה צרור נוסף ממרחק קצר. כתוצאה מפגיעות הקליעים שנורו על-ידי
_____ השוטרת גלית אריבב ז"ל נפטרה לעבר מספר שעות.

15. לאחר ש _____ גמרה התחמושת הוא ניסה את רימון-יד שהחזיק לעבר כיף של צד"ל
שהגיע למקום בכוונה לגרום למותם של חיילי צד"ל. רק לאחר ש _____ נפצל ונגמרה ת-
התחמושת, השוטרים והחיילים התגברחים שהיו במקום הצליחו להשתלט עליו.

16. במעשים המתוארים לעיל, הנאשם הני"ל גרם במוותה למותה של השוטרת גלית אריבב ז"ל.

**פרט שלושים וחמישה: (ת.פ.א. 483/02 שפט)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-1(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במשעיר המתוארים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של אזרחים ישראליים רבים ככל האפשר. כתוצאה מפגיעות הקליעים שגרו על-ידי ████████, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, נפצעו שמונה אזרחים ושוטרים ישראליים.

**פרט שלושים ושישה: (ת.פ.א. 483/02 שפט)**

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד שלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים וארבעה, במעשיו המתוארים בפרט האישום השלושים הארבעה, גרם במזיד שלא כדין נזק רב לתחתנת האוטובוס של קו 25 של "אגד" בזמן יעקב, לבתים הסמוכים ולכלי רכב שהיו במקום הנ"ל, אשר נפגעו כתוצאה מהירות שגרו על-ידי ████████.

**פרט שלושים ושבעה ושמונה: (ת.פ.א. 4258/02 ליקוד)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, יצר קשר טלפוני עם ████████, פעיל צבא בכיר בכיר ביהתנוזיה של הפעילות, שהוא התאכזור לבתי מותמרה, בשכם.
2. הודיעו למאשם כי הוא שלח אליו מחבל מתאבד נוסף על מנת שהנאשם ישלח אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי. תוכנן כי המחבל המתאבד יירה לעבר אזרחים ישראליים בכוונה לגרום למותם של אזרחים רבים ככל היותן וכי ימשיך לירות עד שייהרג מאש מכוחות הביטחון הישראליים.
3. ביום 04.03.02, יצר עם הנאשם קשר ████████ שוטר במשטרה הימית של הרשות הפלסטינית, אשר הודיע כי הגיע לרמאללה על-פי הוראת של ████████ וכי הוא המחבל המתאבד לצורך ביצוע פיגוע הירי המתוכנן. על-פי הוראתו של הנאשם, ████████ נפגש ברמאללה עם ████████.
4. באותו היום, ברמאללה, ████████ נפגש עם ████████ במחלך הפגישה האמורה, הכיר ל ████████ את ████████.
5. ████████ הודיעו ל ████████ כי הנאשם הביא את ████████ הנ"ל משכם על מנת שיבצע פיגוע מופגז התאבדות בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.
6. על-פי הוראתו של הנאשם, ████████ לקח את ████████ למסתברה על מנת שיתחבא שם לקראת ביצוע פיגוע התאבדות המתוכנן. כמו כן, ████████ רכש עבור ████████ בגדים חדשים. עבור המכוש הנ"ל שולם 1,000 ש"ח, אשר אותם קיבל מהנאשם למטרה זו.
7. לאחר מכן, לפי הוראתו של הנאשם, ████████ הוביל את ████████ לדירה ברמאללה השתהא, אשר בה הוחזור ████████ הנאשם לקהין הדירה.
8. ████████ הנ"ל הגיע לדירה וצילם באמצעות מצלמת וידאו את ████████ לקראת ביצוע פיגוע התאבדות המתוכנן.

21

ת.ת. 444/02 מתוקן

P 5: 195

9. הנאשם הורה ל█████████ להוביל את █████████ אל תוך מדינת ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן. הנאשם הורה ל█████████ להביא נשק █████████ לצורך ביצוע הפיגוע המתוכנן.

10. חבריו הח"יל של הנאשם החל לחפש אדם אשר יכניס את █████████ אל תוך מדינת ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן וגרום למותם של אזרחים ישראליים רבים ככל האפשר.

11. █████████ פנה אל █████████ בעל תעודת זהות ישראלית המתגורר בירושלים, וביקש מהאחרון להגיע בדחיפות לרמאללה.

12. █████████ נפגש עם █████████ הנ"ל בבית קפה ברמאללה וביקש ממנו להסיע מחבל מתאבד אל תוך מדינת ישראל. █████████ הסכים להצעה זו, אך ביקש כי יודא לספק למטרה זו רכב לא גוב בעל לוחיות רישוי ישראליות.

13. █████████ נפגש ברמאללה את █████████ נתן לרכב אשר היה בידו עם █████████ פרדר טרנוזיט עם לוחיות רישוי ישראליות, מ.ר. 7014515 לה"ח. הרכב. הנאשם הנ"ל ביקש █████████ אחד ברכב ואת הרשויות של הרכב לצורך הסעת מחבל מתאבד אל תוך שטחה של מדינת ישראל על מנת שהמחבל המתאבד יבצע שם פיגוע ההתאבדות █████████ מסר את הרכב לידי █████████ אך ביקש כי הוא עצמו ינהג בו.

14. משלב זה, █████████ הלכו לדירה. שם, █████████ התקלחו ובלבש את הבגדים החדשים, אשר נקנו עבורו על-פי הוראת הנאשם כאמור לעיל.

15. בסביבות השעה 20:00 █████████ שוסע ברכב, נפשט בכיכר השעון ברמאללה עם █████████ אשר היה המשיך ברח"יר M-16, 6 מחסניות מלאות בכדורים ושני רימוני-יד, עלו לרכב. למקום הגיע גם █████████ אשר מסר ל█████████ סכין קומנדו באורך של 25-2 ס"מ. █████████ אמר ל█████████ לדקור אזרחים ישראליים על מנת לגרום למותם לאחר שנגמר לו התחמושת.

16. כל האנשים הנ"ל נסעו ברכב לכיכר רפידיין ברמאללה, מכיוון שבמקום האמור אין רבת עוברי אורח.

17. בכיכר רפידיין הנ"ל, █████████ פירקו את רסס"ר M-16 הנ"ל והכניסו אותו אל תוך הדלת הצדדית של הרכב.

18. █████████ נישקו את █████████ ואיחלו לו הצלחה.

19. █████████ הודיע לחבריו כי הוא עובד בתל-אביב ולכן מכיר מקום בתל-אביב, אשר בו ניתן לבצע את פיגוע ההתאבדות המתוכנן.

20. הנחתום כי לאחר ש█████████ יורדו את █████████ בתל-אביב במקום המומן אדם, █████████ ימתין מספר דקות על מנת שהחברים הנ"יל ספיקו להימלט מהמקום ברכב ולאחר מכן יפתח באש אוטומטית ברסס"יר M-16 הנ"יל לעבר אזרחים ישראליים שיהיו במקום, בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר וימשיך לירות עד שיהרג לאשא כחות הביטחון הישראליים שיגיעו למקום.

21. █████████ עלה לרכב, אשר בו נהג █████████ ולידו ישב █████████, ושלשתם נסעו לכיוון תל-אביב על מנת לבצע שם את פיגוע ההתאבדות המתוכנן.

22. במהלך נסיעתם של █████████ לתל-אביב, █████████ שוחח עמם באמצעות טלפון סלולרי.

23. █████████ אותו לחללים, לאחר ש█████████ הגיעו לתל-אביב, בסמוך לגשר מעריב שבדרך פתח-תקווה, █████████ הראה כ█████████ מקום הומה אדם הרצחה אותו לבצע שם את הפיגוע המתוכנן.

24. █████████ הוצאים את רסס"יר M-16, מחסניות ורימוני-יהדי תנ"יל, שחיו מוסתרים בדלת של הרכב כאמור לעיל.

25. בסמוך לשעה 15:02, ביום 05.03.02 או במועד הסמוך לכך, █████████ הורידו את █████████ מן הרכב, כשהוא חמוש ברסס"יר M-16, רימוני-יהדי וסכין קומנדו הח"יל, בסמוך למסעדות "סי-פוד מרקט" הנמצאת בדרך פתח-תקווה בתל-אביב (להלן: המסעדה) על מנת שיבצע שם את הפיגוע המתוכנן.

26. █████████ נסעו ברכב-מהמקום לכיוון ירושלים.

27. █████████ התקרב אל המסעדה "סי-פוד מרקט" ופתח באש אוטומטית ברסס"יר M-16 לעבר יושבי המסעדה ועוברי האורח בדרך פתח-תקווה בכוונה לגרום למותם.

28. לאחר מכן, █████████ השלף את שני רימוני-יהדי הח"יל לעבר המסעדה במטרה לגרום למותם של יושבי המסעדה ועוברי אורח, אך רימוני-יהד לא התפוצצו.

ת.נ. 444/02 מתוקן

P 5: 196

29. לאחר שרוטס"ר M-16, אשר בו החזיק █████ █████ הפסיק לירות עקב מעצור, █████
█████ הוציא את סכין הקומנדו הנ"ל והחל לדקור אזרחים ישראליים שחיו במקום בכוונה
█████ לגרום למותם.

30. למקום האמור, הגיע השוטר רס"ר סלים ברכאת ו.ויל. רס"ר סלים ברכאת ז"ל הסתער לעבר
█████ █████ והשתלט. עליו. רס"ר סלים ברכאת ז"ל הספיק לחזור למקפדיו על
התשתלטות על המחבל.

31. בשלב חזה, █████ דקר באמצעות סכין הקומנדו הנ"ל את רס"ר סלים ברכאת ז"ל
בצוארו בכוונה לגרום למותו. כתוצאה מהדקירה הנ"ל, רס"ר סלים ברכאת ז"ל נפטר
במקום.

32. בעשיתו הפעולאים לעיל, הוַאשם הנ"ל גרם בכוונה למותו של רס"ר סלים ברכאת ז"ל.

33. לאחר של █████ נודע משהתודר הטלוויזיה על כך שהפוגע המתוכנן בוצע
כאמור לעיל, הוא יצר קשר עם הנאשם ועודכ את האחרון בדבר ביצוע הפיגוע האמור.

34. מיד לאחר מכן, הנאשם הודיע ל █████ ראש "התנגיוס" של הפתיח באזור, ול █████
█████ ראש "מערד חללי אלאקצאי", הורעת הצבאית של "התהלום" של
הפתיח, על הפעולות שבוצעו. כמו כן, הנאשם יצר קשר עם סוכנות הידיעות "רויטרס" והודיע
על הפיגוע שבוצע כאמור לעיל.

## פרט שלושים ושמונה: (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, בפרט האישום השלושים ושבעה, במעשיו
המתוארים בפרט האישום השלושים ושבעה, גרם בכוונה למותו של יוסף חבי ז"ל, אשר נדקר
על-ידי █████ בבית חזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

## פרט שלושים ותשעה: (פ.א. 4258/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, בפרט האישום השלושים ושבעה, במעשיו
המתוארים בפרט האישום השלושים ושבעה, גרם בכוונה למותו של אליהו דיין ז"ל, אשר נדקר
על-ידי █████ בבית חזה, בבטנו ובגבו ונפטר כתוצאה מכך.

## פרט ארבעים: (פ.א. 4258/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, בפרט האישום השלושים ושבעה, במעשיו
המתוארים בפרט האישום השלושים ושבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר.
כתוצאה מהתריות שנורו על-ידי █████ נפצעו עשרות אזרחים ישראליים.

ת.ה 444/02 מתוקן

P 5: 197

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 353 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970, (סעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור לבין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, הרס רכוש: או פגע בו במזיד ושלא כדין, דהיינו: הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו המתוארים בפרט האישום השלושים ושבעה, גרם במזיד ושלא כדין נזק רב למערכת "סי-פור מרקיט", למסעדת "מאגו" הסמוכים וכלי הרכב שהיו באיזור, אשר נפגעו כתוצאה מהיריות שנורו על-ידי ████████████.

**מהות העבירה:** ניסיון לגרימת מוות בזדון, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970, סעיפים 14(א) ו-19, לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 08.03.02 או במועד הסמוך לכך, ניסה לגרום במזיד למותו של אדם אחר, דהיינו:

1. הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ████████ פעיל צבאי בכיר ביהודה ושומרון של הפתח, שהוא התאחדות בלתי מותרת, בשם ████████.

2. בישיבה מהנאשם לניפוש ברמאללה עם ████████████, אשר שוחרר לפני זמן קצר מכלא של הביטחון המסכל של הרשות הפלסטינית.

3. הנאשם נפגע ברמאללה עם ████████. במהלך השיחה בין השניים מסר לנאשם כי יש לו "מרכל מתאבד" וכי הוא צריך לגרום נפי על מנת שהמרכל המתאבד יוכל לבצע ████████ פיגוע התאבדות בתוך שטחה של מדינת ישראל ובכך יגרום למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הסכים למסור ל████████ את תגובת הנפי המבוקשת לצורך ביצוע פיגוע ההתאבדות המתוכנן. מכיוון, הסכים הנאשם בבקשתו של ████████. מכיון לינה ברמאללה עבור המתאבד ████████.

4. ████████ הנ"ל שוחח עם ████████ הנ"ל והודיע לו כי איתור אדם אשר מוכן לבצע פיגוע התאבדות בירושלים, והוא ████████ תושב השומרון. ████████ ביקש מ████████ לירושלים על מנת לבצע פיגוע ההתאבדות בכוונה לגרום למותם של אזרחים ישראליים, ████████ הסכים לכך. פגש את ████████ לאחר שאירחנו, ████████ בישעה גם היא פיגוע התאבדות.

5. ████████ הודיעו ל████████ תושב בית חניא, פעיל הארגון "החזית העממית לשחרור פלסטין", והודיע לו, כי בכוונתו לבצע פיגוע בירושלים וזאת על ידי שיגור מרכל מתאבד שברשותו, ████████ ביקש מ████████ לאתר אנשים, אשר יכניסו את המתאבד המתאבד לירושלים, ████████ הסכים לבצע את המבוקש ממנו.

6. ████████ התקשר לברו ████████ תושב בית חניא, פעיל הארגון "החזית העממית לשחרור פלסטין", וזה נפגש עמו ביום 06.03.02 ברמאללה. ████████ הניח לפגישה זו ונפגש עם ████████ בסמוך לבית קפה "ערבוסקי". ████████ הציעו ל████████ להכניס מתאבד מרמאללה לירושלים לצורך ביצוע פיגוע. ████████ הדריך את ████████ להוביל את המתאבד המתאבד לגבעת הצרפתית בירושלים, בדרכים עקיפות מחסומים, על מנת שיתבצע שם פיגוע ויגרום בכך למותם של אזרחים ישראליים, הציעו ל████████ חלופות למקום ביצוע הפיגוע: סופרמרקט בסמוך לתחנת הדלק בשכונת רמת אשכול, מסעדת "מפגש דומינוס" בגבעה הצרפתית או את התחנה האוטובוסים שבגבעה הנקלטת הצרפתית.

7. לצורך קבלת תגובת הנפי עבור המתאבד, הנאשם הנ████████ את ████████ עם ████████, פעיל כוח 17 של הרשות הפלסטינית, אשר חבטיה, להעביר לידי ████████ המתאבד המתאבד תגובת נפי שברשותו לרשותו של ████████, פעיל כוח 17 של הרשות הפלסטינית בשם ████████, אשר לביים את תגובת הנפי על המתאבד המתאבד.

8. הנאשם הוביל את המתאבד המתאבד-אל-היירה ברמאללה תחתא, אשר אותה שכר הנאשם (להלן: "הדירה").

9. ביום 08.03.02 הגיע █████████ לקריאתו של █████ , לרמאללה. ברמאללה. המתינו
   ל████████ אשר הגיע למקום מפגש ברכב, ו█████████████████ מסרו ל████████ כי עליו לקבוצ את המתאבד לתחנת האוטובוסים, שבכניוון
   הנסיעה לים המלח, בצומת הכניסה החפרתית לירושלים. █████████ נידאו כי
   מכיר את הדרכים העוקפות למקום, ו█████████ סיפר להם, כי בסמונתו לחוביל
   את המתאבד המתאבד תוך עקיפת מחסום שלפריה בדרך המתאבות, נמשיך להמשיך ולהוביל
   את המתאבד למקום בגוע המיעון דרך בית חנינא דעונפס, תוך עקיפת מחסום דגייית
   אל-ברית.

10. לאחר מכן, █████████ נסע לידיה, שם נפגש עם המשאם מעז █████████ אשר הביא יחד-אלומ רגזות
    נפצ. מזרד הלבישו את תגורת הנפצ על █████████ והסביר ל█████████ כיצד להפעיל את
    תגורת הנפצ. כמו כן, מחמד █████████ את זקנו.

11. לאחר מכן, עבדו הנאשם והנרי תהילך מונית, וממחמד המתאבד, █████████ למש בתגורת
    הנפצ. עלה למונית בדרכי לבציוע פיגוע התאבדות בירושלים בתוויך לגרום למחוא של
    אזרחים ישראליים. █████████ ליווה את █████████ למקיות הממעבר עם

12. והמתאבל המתאבד, █████████ המשוכו לציוע במונית, וירדו עד המונית בדרך
    עבר בסמוך למתאבות בקלקיליה, משם הוביל █████████ את המתאבד המתאבד ברגל בדרכם
    לבציוע הפיגוע המתוכנן.

13. בשיבוגם נוסיעתם בבית חנים בירושלים, נעערו █████████ , בסמוך לשעה
    16:00 , על ידי שוטר משטר הגבול. כאשר נינסה █████████ להפעיל את תגורת הנפצ אותה
    לבש, נורה על ידי אנשי כותות הבטוחן והביגהי

## ✓ פרט ארבעה ושלושה :  (מ.א, 783/02 בגינימ)

**מהות העבירה :** נסיומ לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970, וסעיפים 14(א) ו-1 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה :** הנאשם המיל, באיזוור, ביום 17.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותד של אחר, בדלקמן:-

1. ביום 05.03.02 נהרג ברמאללה פעיל צבאי בכיר בידגיזוד חלקי אלאקצא"י-להצואת הצבאית של
   יתהנוייסה"מ של הפתי"ח"- ██████████

2. כעשרה ימים לאחר מכן, █████████ החליט למקום את מותו של █████████
   על דרך בציוע פיגוע קטלי.

3. █████████ חוסכימו לחצטרף אל █████████ לבציוע פיגוע הנקמה תנג"ל.

4. יצר-קשר-עם הנאשם, וגיבל את אישור לבציוע הפיגוע המתוכנן.

5. בעקבות האשור שגונו על-ידי הנאשם, █████████ הגיעו לביתו של הנאשם.

6. הנאשם מסר לידי השנינים רובה מסוג "ברטה"י ורזה"ך קלצ'יניקוב. גם מחסניות לצורך בציוע
   הפיגוע המתוכנן.

7. ██████████ נסע עם █████████ ברכב, ביום 17.03.02 למחרתו
   לכבוש בית-אל-פוגוות, כאשר █████████ נתג ברכב, █████████ מחזיק בידיו את הרובה
   מסוג "ברטוהי, ה█████████ מחזיק בידיו רוה"ר קלצ'יניקוב.

8. האנשים הנ"ול הגיעו למקום הפיגוע המתוכנן סמוך לשעה 6:30 בוקר.
   ███████ ילדזד מן הרכב, בעוד ש█████████ נשאר לקמתון להם ברכב לצורך מילוטם בסיום
   ביצוע הפיגוע.

9. כרבע שעה לאחר מכן הגיע למקום רכב פולקסוואג רכב פולקסוואג פאסאט לבן, מ.ר. 7741115, אשר בו נהג
   סמר קרש.

10. ידו לעבר נהג נהג הרכב בצרחרות באמצעות כלי הנשק, אשר סיפק להם
    █████████ למ רמ זה הנאשם, בכוונה לגרום למותו של נהג רכב הפולקסוואג המיל.

11. כתוצאה מן הירי, נפצע סמרי קרש בכתפו, בדרך שבית רת הומרים המקורב, משמאל או ריסוק
    ורישומי בוחבזה לאורד מסלול הקליעד, ונזקק לאשפוז ניתוחי. כמו כן, נפגט שלושה מן הכדורים
    שנורד על ידי █████████ בר כב האמור וגרמו לו נזק.

12. לאחר סיום ביצוע הפיגוע, חזרו █████████ לרכבד של █████████ והשלושה
    נמלטו ממקום הפיגוע למאלולה.

13. לאחר מכן, █████████ והתקשר אל הנאשם ודיווח לו על ביצואם המוצלח של הפיגוע.

25

ת.ת. 444/02 מתוקן

**פרט אישום שלישה:**

<u>מהות העבירה:</u> פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בתקופת שנת 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה״ל והחיילי או למפעלותם, שימושם או ביטחונם של כל אחד מאלה: אניה, אווירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, ונתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלת ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליצורם, חסקתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה״ל, דהיינו:

הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם [redacted], שומר ראשו של [redacted], ראש הביטחון המקומי של הרשות הפלסטינית באיזור. הנאשם מסר לבצע פיגוע ירי נגד חיילי צה״ל הנמצאים במחסום סורדא נלגרום למותם. הנאשם מסר ל [redacted] 2 אקדחים, ורובה M-16 מקוצר עם כוונת טלסקופית וכן קופסא של כדורים לצורך ביצוע הפיגוע האמור.

לאחר זמן קצר בוצע פיגוע ירי במחסום סורדא במטמנל עוהד חייל צה״ל. הנאשם מיהר ליצור קשר עם [redacted] אך האחרון מסר כי זה לא הוא שביצע את הפיגוע האמור. לאחר מכן, [redacted] החזיר לנאשם את כלי הנשק, אשר אותם מסר לו הנאשם קודם לכן לצורך ביצוע הפיגוע האמור.

---

**פרט אישום רביעי וחמישה:**

<u>מהות העבירה:</u> פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

<u>פרטי העבירה:</u> הנאשם הנ״ל, באיזור, בתחום מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה״ל והחיילי או למפעלותם, שימושם או ביטחונם של כל אחד מאלה: אניה, אווירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב-מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלת ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש ליצורם, חסקתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה״ל, דהיינו:

הנאשם הנ״ל, במועד האמור, שרתח באמצעות טלפון עם [redacted], פעיל בכיר בידדדי תנלני אלטיקצאווי, הזרוע הצבאית של יהנולו״ים של הפתיית, שותח תתוחדורות בלתי חותרנ. [redacted] מסר לנאשם כי יש לו מחבל מתאבד המוכן לבצע פיגוע התאבדות בתוך מדינת ישראל. הנאשם הסכים לשלוח את המחבל המתאבד אל תוך שטחה של מדינת ישראל על מנת לתרגם למות של אורחים ישראליים רבים ככל הניתן.

[redacted] מסר לנאשם כי נשלח על-ידי [redacted] לצורך ביצוע פיגוע התאבדות בתוך ישראל.

הנאשם שותח עם [redacted] וניטח כי [redacted] לא יודע לירות טוב. בעקבות כך הנאשם שלח יצר קשר עם [redacted]. הנאשם מסר ל [redacted] כי [redacted] יוכל לבצע את פיגוע ההתאבדות באמצעות חגורת נפץ שיישמ על גופו. [redacted] הסכים לחבוש את הנאשם. חובבים לאונ לשלוח את הנאשם חגורת נפץ לצורך ביצוע פיגוע ההתאבדות מתוכנו.

אלפי הוראתנו של הנאשם, [redacted] רכש עבור [redacted] בגדים חדשים ולאחר מכן ליווה את [redacted] לעירה ברמאללה תחזם, שבה התגוררו [redacted] הנאשם (נהלו את הדירה).

הפיגוע המתוכנן לא יצא אל הפועל לאור העובדה שמעולמ התבקלם לא נשלחו לנאשם וכן מכיוון שהתעצר על-ידי כוחות הביטחון הישראלים.

לאחר מעצרו של [redacted], הנאשם שותח עם [redacted] הנ״ל אודות מהן שקרה. חובבית לנאשם לשלוח אליו מתבנים מתאבים נוספים על מנת שהנאשם ישלח אותם אל תוך שטחה של מדינת ישראל לצורך ביצוע פיגוע התאבדות. הנ״ל לא הספיק לשלוח את הנאשם מתבנים מתאבדים נוספים, מכיוון שהנ״ל הנאשם [redacted] מעצרו על-ידי כוחות צה״ל במהל״ד המבצע ״חומת מגן״.

---

## פרט ארבעים ושישה:

**מהות העבירה:** ייצור חפץ נפץ, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תשל" 0-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, ייצר כלי ירייה, תחמושת פצצה, רימון יד, חפץ נפץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה נפש עם ▮▮▮▮▮, אשר ביקש מהנאשם לקבל כסף עבור פעילות צבאית. לאור האמור, הנאשם העביר ל▮▮▮▮ סכום של 8,000 ש"ח, אשר אותו קיבל ▮▮▮▮▮ ביחד עם ▮▮▮▮▮▮ רכשו כסף הנ"ל חומרים כימיים לייצר מחומרים הכימיים הנ"ל מטען חבלה גדול.

## פרט ארבעים ושבעה:

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק בצורת אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מכר לידי ▮▮▮▮ ראש "גדודי חללי אלאקצא" – זרוע הצבאית של "התנועים" של הפתייח באיזור גיזין, אשר שהה אותה עת ברמאללה, אקדח 14, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

## פרט ארבעים ושמונה:

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק או בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי ▮▮▮▮ רוביי M-16 אחד תמורת 4,000 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

## פרט ארבעים ותשעה:

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית הראשונה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפש עם ▮▮▮▮ וקיבל מהאחרון 1,500 כדורים לרובה M-16. הנאשם שילם ל▮▮▮ הנ"ל 3,000 ש"ח עבור הכדורים הנ"ל. הנאשם ביצע את תמוהיה לו בפרט האישום הזה לפי הוראתו של ▮ ראשי "יהנוניסי" של הפתייח באיזור.

27

ת.פ. 444/02 מתוקן

P 5: 201

**פרט חמישים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מאי 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של ███████ מסר לידי האחרון רשיון קלצ'ניקוב עם מחסנית ו-28 כדורים. הנאשם ביצע את המנוח████ך בפרט האישום הזה לאחר שקיבל אישור לעשות כן מ██████ ראש ה"תנזים" של הפתח"ו באיזור, ███████ השתתף בתהלוכה ברמאללה, כשהוא מחזיק ברובהיר קלצ'ניקוב הנ"ל. במהלך התהלוכה הנ"ל היה רמל מפנה ויה ברוביהיר קלצ'ניקוב הנ"ל באוויר. לאחר מכן, ███████, על-פי הוראתו של הנאשם, העביר את רוסירי קלצ'ניקוב הנ"ל לידי

**פרט חמישים ואחד:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ה-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעבר עבירה על תחיקת הביטחון או עסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מסמוא, אמצעי תובלה, נפש או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם ███████ העביר את ██████████ ברכונו מרכזזא של חבויותו המסכל של הרשות הפלסטינית בבחזתונא לדירת, אשר אותה שכר הנאשם ברמאללה תחתא, ██████ועבדאללה בדרגותי הנ"ל הם פעיליים בכירים בארגון חמאס, שהוא התאזחדזת בלתי מותרת, ואחראיים לביצוע מספר פיגועים נגד אזרחים ישראלים, בעיניהם פיגוע נוגע במסגרת "סבבארוו" בירושלים ביום 09.08.01 הנאשם ו ███████ ██████ ואת עבדאללה ברובוייר לדירה הנ"ל במשך מספר ימים. לפני ש ███████ ועבדאללה ברגותי עזבו את דירתו הנ"ל של הנאשם, הנאשם מסר לכל אחד מהם אקדח 14 מ"מ.

**פרט חמישים ושנים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 – תחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ███████, פעיל צבאי בכיר בּינוגנים" של הפתח"ו, שהוא התאחדות בלתי מותרת, בשכם. ███████ אמר לנאשם כי הוא צריך 1,000 כדורים לרוסי"ר 16-M. הנאשם חבנוח להבואא ██████ות כדורים המבוקשים. לאחר מספר ימים הגיע אל הנאשם, ברמאללה, אדם בשמו של ███████ הנאשם מסר לאחרון 1,000 כדורים לרוסי"ר 16-M על מנת שיעביר אותם לשכם ב ███████. תמורת 1,000 כדורים הנ"ל העביר לחשבון חבנן של הנאשם סכום של 3,000 ש"ח. הנאשם ביצע את המיוחס לו בפרט האישום הזה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

ת.ג. 444/02 מתוקן

P 5: 202

<u>**סעיף החמישים ושלושה:**</u>

<u>**מהות העבירה:**</u> סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, באיזור, בחודש ינואר 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה ████████████ ████████████ ביקש מהנאשם לקבל שלושה אקדחים על מנת למוסרם לידי פעיל צבאי ביג'אדי חליל אלאקסאי, חדית' הצבאית של "יתאנטוסי" של הפת"ח, לצורך ביצוע פיגוע ירי במחסום סורדא של צה"ל.
הנאשם הסכים לבקשתו של ████████ (מסב. לידי האחראו 3 אקרחיה). אקדח בלגי 9 מ"מ, אקדח סטאר 9 מ"מ ואקדח שהיגו אינו ידוע לתובעת, וכן קופסת כדורים לאקדחים חמיל, המכילה 50 כדורים לאקדח בקוטר 9 מ"מ.
באותו היום, במפקדה של הביטחון הממלכתי של חרשות הפלסטיניה בביתלחם או בסמוך לכך, ████████ חיברו את שלושת האקדחים והכדורים הנ"ל לידי ████████.
הפועלים המתוכנן לא. בוצע באמצעות האקדחים חמיל, מכיוון שליחזה לפני המועד שבו היה אמור להתבצע הפיגוע הנ"ל, בוצע פיגוע ירי אחר במחסום סורדא.
לאחר כשלושה ימים, ברמאללה או בסמוך לכך, החזיר את האקדחים הנ"ל ביחד עם קופסת הכדורים הנ"ל מטעמו הנ"ל לידי הנאשם.
הנאשם ביצע את המיוחס לו בפרט אישום זה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

<u>**עדי התביעה:**</u>

1. ████████, לחיים יהודה. (נובה אמרות הנאשם מיום 16.04.02 ומיום 03.05.02 ומגיש כתבי-יד של הנאשם בערבית + דו"ח מסדר זיהוי תצלומים + לוח תצלומים)
2. ████████, לחיים יהודה. (נגבת אמרות הנאשם מיום 21.04.02 ומיום 13.05.02 ומגיש שני כתבי-יד של הנאשם בערבית)
3. ████████, תשאיל אמן לכיש. (נוגב אמרת הנאשם מיום 05.09.02)
4. ████████ (עצור)
5. ████████ (עצור) (ת.ת. 243/02)
6. ████████ (עצור) (ת.ת. 242/02)
7. ████████ (עצור) (ת.ת. 241/02)
8. ████████ (עצור) (ת.ת. 265/02)
9. ████████ (עצור)
10. ████████ (עצור)
11. ████████ (עצור) (ת.ת. 339/02)
12. ████████ (עצור) (ת.ת. 355/02)
13. ████████ (עצור) (ת.ת. 311/02)
14. ████████ (עצור) (ת.ת. 345/02)
15. ████████ (עצור) (ת.ת. 356/02)
16. ████████ (עצור) (ת.ת. 318/02)
17. ████████ (עצור)
18. ████████ (עצור) (ת.ת. 353/02)
19. ████████ (עצור) (ת.ת. 221/02)
20. ████████ (עצור) (ת.ת. 212/02)
21. ████████ (עצור)
22. ████████ (עצור)
23. ████████ (עצור) (ת.ת. 639/01)
24. ████████ (עצור) (ת.ת. 174/02)
25. ████████ (עצור) (ת.ת. 173/02)
26. ████████ (עצור) (ת.ת. 322/02)
27. ████████ (עצור) (ת.ת. 775/02)

29

ת.ת. 444/02 מתוקן