5. בעת ש███████ נסע במקביל לרכב הסקודה הנ"ל, מחמד מצלח ירה בתמ"ק MP-5, אשר אותו סיפק להם הנאשם כדי לצורך ביצוע פיגוע הירי כפי שתואר בפרט האישום הקודם, מספר יריות לעבר רכב הסקודה הנ"ל בכוונה לגרום למותם של נוסעי רכב הסקודה.

6. מספר קליעים שנורו על-ידי ███████ פגעו ברכב הסקודה. שני קליעים שנורו על-ידי ███████ פגעו בפורחו כהן וקליע נוסף פגע בבלכה כהן.

7. פנחס כהן נפצע באורח בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע ה-28 להריון, נפצעה באורח בינוני מפגיעת קליע ברגלה.

8. לאחר שביצעו פיגוע הירי האמור, המשיכו בנסיעה לכיוון חגבעה הצרפתית ומשם הגיעו לבית חנינא החדשה. שם, ███████ החנו את רכב המזדה הנ"ל וצירו קשר טלפוני עם ███████ (המכונה "███████"), אשר הגיעו למקום ברכב האיסוזו של ███████, ואת על מנת שיתכנו האמור בפרט האישום הקודם.

9. ███████ הסתירו את תמ"יק MP-5 הנ"ל ברכב האיסוזו ועלו לרכב האיסוזו.

10. כל ארבעת אנשים הנ"ל ניסו לחזור מירושלים לרמאללה, אך לא הצליחה לעשות כן בגלל מחסומי צה"ל והמשטרה. חבריו הנ"ל של הנאשם נשארו ללון אצל ███████, חברו של ███████, בבית חנינא החדשה בירושלים.

11. יום למחרת, 04.10.01, ███████ חזר ברכבו של ███████ לרמאללה.

12. לאחר חזרתו לרמאללה, ███████ דיווח לנאשם אודות הפיגועים שביצעו בעזרת רכב המזדה ותמ"יק MP-5, אשר אותם קיבל מהנאשם.

---

✓ **פרט עשרים ושלושה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, בסוף שנת 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, בעת שחיה עם ███████ ראש "התנזים" של הפתיח, ברמאללה או בסמוך לכך, נפגש עם ███████ ראש "התנזים" של הפתיח, ███████ סיפר ל ███████ חללי אלאקצא"י - הזרוע הצבאית של "התנזים" של הפתיח. ███████ על כוונתיו לרכם מרגמה ופצצות מרגמה לצורך ירי מרגמות לעבר היישובים הישראליים בכוונה למותם של אזרחים ישראליים. ███████ ביקש מ███████ לקבל סיוע כספי לצורך רכישת המרגמה ופצצות מרגמה. ███████ סירב למסור את הסיוע הכספי המבוקש וחפה את ███████ אל הנאשם. הנאשם הסכיר ל███████ כי אין כל צורך לשלם דרבה כסף עבו עבוד מרגמה ופצצות מרגמה שהרי ברשותו של הנאשם כבר יש מאולתרת ופצצות מרגמה.

בתחילת שנת 2002, הנאשם הפת את ███████ (ואת חברו של האחרון - פעיל צבאי בכיר ב"ייצודדי חללי אלאקצא"י - ███████ אל ביתו של ███████ על מנת שיקבלו שם את המרגמה ואת פצצות המרגמה הנ"ל. ███████ אכן קיבלו את המרגמה המאולתרת הנ"ל וכן 5 פצצות מרגמה.

███████, ביחד עם חבריו הנ"ל, ירה באמצעות המרגמה המאולתרת הנ"ל פצצת מרגמה לעבר היישוב פסגות בכוונה לגרום למותם של תושבי היישוב הנ"ל ושל חיילי צה"ל שהיו ביישוב הנ"ל. פצצת המרגמה הנ"ל לא פגעה ביישוב פסגות והתפוצצה בסמוך אליו. לאחר ביצוע הפיגוע הנ"ל, ███████ דיווח לנאשם על מעש שקרה. הנאשם לקח את ███████ אל ███████ על מנת שידווח גם ל███████ אודות פיגוע ירי פצצת מרגמה שבוצעה לראשונה באיזור.

12

✓**פרט עשרים וארבעה:**   (מ.א. 39/02 בנימין)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51א(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14א(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו
של אחר, דהיינו:

1. ביום 14.01.02 נהרג ▉▉▉▉ אשר היה פעיל צבאי בכיר ב"התנזים" של  ארגון הפת"ח,
שהוא התאחדות בלתי מותרת. בעקבות מותו של ▉▉▉▉ הנ"ל, ראש "התנזים" של
▉▉▉▉ פתח אוהל אבלים באלביה.

2. הנאשם הנ"ל, ביום 15.01.02, באוהל האבלים הנ"ל, נפגש עם ▉▉▉▉ (המכונה
"▉▉▉▉▉▉▉▉▉▉▉" (המכונה
"▉▉▉▉▉▉", ▉▉▉▉.

3. הנאשם מסר לחבריו הנ"ל כי ▉▉▉▉ ראש "התנזים" של הפת"ח באיזור, מבקש כי
הם יבצעו באופן מיידי פיגוע נקמה על מותו של הנ"ל ויגרמו למותם של אזרחים
ישראליים.

4. לצורך ביצוע הפיגוע האמור, הנאשם מסר לחבריו הנ"ל תמ"ק MP-5, אקדח 16, וכן רובה
מדגם, הנושא לוחיות רשוי ישראליות.

5. חבריו הנ"ל של הנאשם, באוהל האבלים הנ"ל, החליטו כי, לאור דרישתו של הנאשם, יבצעו
עוד באותו הערב פיגוע בתחנת הדלק הגבעונים הממצאת בכביש 443 בסמוך לכניסה לגבעת
זאב ו/או לגרום למותם של אזרחים ישראליים.

6. בשעות הערב באותו חיום, 15.01.02, יצא מאותל האבלים הנ"ל ביחד עם
▉▉▉▉▉. נסעו ברכב איסוזו טנדר של פראס עיאם ב לתחנת
הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן. אחרי רכב האיסוזו הנ"ל נסע
▉▉▉▉▉, החמוש באקדח 14, החמוש באקדח 16 הנ"ל, ו▉▉▉▉▉, החמוש
בתמ"ק MP-5 הנ"ל. השלושה נסעו ברכב מזדה, אשר אותו קיבלו לצורך כך מהנאשם.

7. חבריו הנ"ל של הנאשם הגיעו עד ערמת עפר החוסמת את היציאה מכפרים ביר נבאללה
ואלגיב לכביש 443 במרחק של כ-100 מטר מתחנת הדלק הגבעונים. חבריו הנ"ל של הנאשם
החנו את בני הרכב שלהם, איסוזו ומזדה, עם הפנים לכיוון הכפר ביר נבאללה על מנת שיוכלו
להימלט ממקומם מיד לאחר ביצוע הפיגוע המתוכנן.

8. ▉▉▉▉▉, החמוש באקדח 14, זידאן, החמוש באקדח 16, ו▉▉▉▉▉, החמוש ב-MP-5,
ירו מכלי רכב הנ"ל ו/או לתוך תחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום
למותם של אזרחים ישראליים.

9. נשארו בכלי הרכב הנ"ל על מנת לשמור אם יגע למקום סיור
של צה"ל או אנשים אחרים. ▉▉▉▉▉ ישב בכיסא הנהג ברכב המזדה על מנת שיוכל
למלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מיד לאחד ביצוע
הפיגוע.

10. ▉▉▉▉▉ נעמדו בכניסה לתחנת הדלק הנ"ל.

11. ▉▉▉▉▉ לאחר מספר דקות, בסמוך לשעה 19:45, הבחינו ברכב פיאט אונו
לבן, מ.ר. 6424905, שנכנס לתחנת הדלק הנ"ל ואשר בו נהגה יואלה חן ז"ל וילדה ישבה רשל
(רחל) עיני.

12. ▉▉▉▉▉ ניגשו אל רכב הפיאט הנ"ל במטרה לבצע לעברו פיגוע ירי ולגרום
למותם של נוסעות הרכב. נוסעות רכב הפיאט הבחינו באקדח שבו החזיק ▉▉▉ והחלו
לצעוק ולצפור. ▉▉▉▉▉ הכניס את האקדח למכסיהו ואמר לנוסעות הרכב שלא יפחדו.

13. בשלב זה, ▉▉▉ פתח באש אוטומטית בתמ"ק MP-5, אשר אותו שנפן מהנאשם, לעבר
נוסעות רכב הפיאט בכוונה לגרום למותן. אז גם ▉▉▉▉ שוב הוציא את אקדחו והחל
לירות לעבר נוסעות הרכב בכוונה למותן.

14. ▉▉▉▉▉ ירו מטווח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל
ולעבר רשל (רחל) עיני שהיו בתוך רכב הפיאט הנ"ל.

15. 28-28 קליעים, שנורו על-ידי ▉▉▉▉▉ פגעו בשמשה הקדמית של הרכב,
מספר קליעים פגעו בצד הרכב ובשמשתו חלון דלת הרכב.

16. במהלך ביצוע פיגוע הירי המתואר, ▉▉▉▉▉ אשר עמד במרחק קצר מאחורי
▉▉▉▉▉, שימש כשומר ומתריע.

17. ▉▉▉▉▉ לאחר ששמעו את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת
להודיע לחבריו אם יש מחסומים בדרך לרמאללה.

ת.ת. 444/02 מתוקן

P 5: 187

18. ████████, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל
רכב המזדה שבו המתין ████████. לאחר שהשלושה הנ"ל עלו על הרכב,
הסיע אותם לרמאללה.

19. ברמאללה ████████ נפגשו עם ████████

20. לאחר מכן, ████████ נפגש ברמאללה עם הנאשם, החזיר לו את תמ"ץ MP-5 ואת רכב
המזדה, וכן דיווח על הפיגוע שביצע כמתואר לעיל.

21. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותה של יואלה חן ז"ל, אשר נפטרה במקום
כתוצאה מפגיעות הקליעים שגרו על-ידי ████████████████████

<u>פרט עשרים וחמישה:</u>  (ת.א. 39/02 בנימין)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום המתואר בפרט האישום הקודם, במעשיו האמורים בפרט
האישום הקודם, ניסה לגרום בכוונה למותה של רשל (רחל) עיני, אשר נסעה ברכב פיאט אונו לבן,
מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שגרו על-ידי ████████ הנאשם
████████ (מכונה "████" ) ████████ בכלי נשק שנמסרו להם על-ידי הנאשם
לצורך ביצוע פיגוע הירי, כפי שתואר בפרט האישום הקודם, פגע בראשה של רשל (רחל) עיני) ושני
קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה בחורה בינוני.

<u>פרט עשרים ושישה:</u>  (ת.א. 502/02 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש ינואר 2002, <u>הנאשם החליט כי ברצונו להוציא לפועל פיגוע התאבדות
בתוך שטחה של מדינת ישראל על מנת לגרום למותם של אזרחים ישראליים רבים ככל
האפשר.</u>

2. הנאשם הניח פניה באמצעות טלפון אל ████████ פעיל בכיר ב"תנזים" של הפתייח,
שהגא התאחדות בלתי מותרות, בשכם. הנאשם ביקש מ████████ לשלוח אליו אדם המוכן
לבצע פיגוע התאבדות. הנאשם-מסר-ל████████ <u>כי הוא עצמו ידאג להכניס את המחבל</u>
המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.

3. לאחר מספר ימים, ביום 22.01.02, ברמאללה, הנאשם נפגש עם סעיד רמדאן, תושב כפר תל
בופת שכם, אשר הודיע לנאשם כי נשלח על-ידי ████████ לצורך ביצוע פיגוע התאבדות.

4. <u>הנאשם התקשר אל</u> ████████ (מכונה "████") וביקש מהאחרון
להגיע אליו.

5. ████████ נפגש עם הנאשם ועם סעיד רמדאן באותו היום ברמאללה. הנאשם ערך
היכרות בין השניים. הנאשם ו████████ לקחו את סעיד רמדאן למסעדה על מנת שיסתכם
לפני ביצוע פיגוע השיחרור. הנאשם ו████████
לפני ביצוע פיגוע התאבדות המתוכנן.

6. לאחר מכן, הנאשם ו████████ <u>התקשרו אל</u> ████████ (מוכנה "████")
וביקשו מהאחרון להסיע מחבל מתאבד מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע
בירושלים פיגוע התאבדות וגרום למותם של אזרחים ישראליים רבים ככל האפשר.

7. ████████ הגיע לרמאללה ביחד עם ████████ ████████ הגיע לפגישה
הסכים להשתתף בהסעת המחבל המתאבד מרמאללה לירושלים. ████████, וזאת לאחר שהאחרון
ברכבו איסוזו טנדר עם לוחיות רישוי ישראליות.

8. לפי הוראותו של הנאשם, נסעו ברכב האיסוזו הנ"ל מרמאללה ████████
לירושלים על מנת למצוא דרך שאין בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר
מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

14

P 5: 188



9. נסעו מרמאללה דרך ראפאת והגיעו לאיזור התעשיה עטרות, ████████
שם השיירים חזרו לכביש הראשי ירושלים-רמאללה-דמאללה ונסעו שמאלה עד לצומת המוביל למחנה
רמה, שם הם פנו ימינה ונסעו עד לצומת אדי. בצומת אדם השיירים פנו שמינה ונסעו עד
לצומת חיזמה, שם הם פנו ימינה ונכנסו לעטרות. דרך עטרה, הם הגיעו לצומת הגבעה
הצרפתית, שם השיירים פנו ימינה וחזרו לרמאללה. ████████ ראו כי
בדרך שבה נסעו ניתן להוביל את המתאבד לירושלים מבלי להיעצר במחסומי משטרה
וצה"ל.

10. באותו הזמן, ברמאללה, האשם ו ████████ לקחו את סעיד רמדאן הנ"ל להתפלל ואף קנו
עבור סעיד רמדאן הנ"ל אוכל, בגדים ונעלים חדשים. האשם שילם בכסף שלו עבור הקניות
הנ"ל סכום של 1,200 ש"ח.

11. ████████ על-פי הוראתו של האשם, הביא את רוסי"ר M-16 ו-1-3 מחסניות לרוסי"ר הנ"ל
מלאות בכדורים, אשר שתי מחסניות היו מחוברות בצולבת.

12. לפי תכניתן של האשם וחבריו הנ"ל, היה על סעיד רמדאן להגיע לירושלים ולירות שם
באזורים ישראליים בכוונה לגרום למותם עד שהוא עצמו ייהרג מאש כוחות הביטחון
הישראליים.

13. לאחר מכן, באותו היום, האשם, ████████ נפגשו עם █
באיזור המלון "סיטי אין" באלבירה. האשם הכיר ל ████████
את סעיד רמדאן.

14. האשם הסביר ל ████████ כי סעיד רמדאן הנ"ל הוא המתאבד המתאבד,
אשר אותם הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשיירה לעבר
אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

15. ████████ הסתירו את רוסי"ר M-16 והמחסניות הנ"ל ברכב האיסוזו
הנ"ל.

16. האשם ו ████████ איחלו לסעיד רמדאן הצלחה והשלישה נסעו לירושלים. האשם אמר
ל █ כי עליהם לקחת את סעיד רמדאן לבצע את פיגוע ההתאבדות
בכל מקום בירושלים שהם יבחרו.

17. ████████ נהג ברכב האיסוזו, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ו █
התיישב במושב האחורי.

18. ████████ הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו
מוקדם יותר באותו היום כפי שתואר לעיל.

19. בירושלים, ████████ נסעו לרחוב שיחי גיראח. שם הם הוציאו את רוסי"ר
M-16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד רמדאן.
████████ עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי,
כשהוא מחזיק בידיו את רוסי"ר M-16 ואת המחסניות.

20. ████████ הסיעו את סעיד רמדאן לרחוב הנביאים.

21. במהלך הנסיעה, סעיד רמדאן התלונן בפני ████████ כי הנעלים
החדשות, אשר באותו בוקר קנה לו האשם עבור הפיגוע, קטנות ולוחצות לו. ████████
הורידו את נעלי "רינוק" ומסר אותן לסעיד רמדאן באומרו "תעלה לגן עדן עם נעלי
רינוק"'.

22. בהגיעם לצומת הרחובות שטראוס והנביאים, ████████ עצרו את רכב
האיסוזו.

23. ████████ אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות
במקום שיראה בו הרבה אנשים.

24. לאחר שסעיד רמדאן ירד מהרכב עם רוסי"ר M-16 והתחמושת,
████████ נסעו מהמקום ברכב האיסוזו, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך
הכביש הראשי לרמאללה.

25. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של ████████ הגיע לרחוב
יפו.

26. בשביבה השעה 16:20, כשהוא עמד מול בית מס' 47 ברחוב יפו או בסמוך לכך, סעיד רמדאן
טען את רוסי"ר M-16 שבן החזיק, צעק "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר,
לעבר האנשים שהיו ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו
27 שהיה באותה עת בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך התנועות הסמוכות בכוונה
לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך לירות, נמלט
ממקומם לעבר תחניו הנמצא ברחוב הרב קוק. שם סעיד רמדאן החליף מחסניות והמשיך
לירות לעבר האזורים בכוונה לגרום למותם. סעיד רמדאן ירה ברוסי"ר M-16, שבן החזיק,
מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים
והשוטרים שהגיעו למקום.

ת.ת. 444/02 מתוקן

27. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של **אורה (סבטלנה) סנדלר ז"ל**, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

28. לאחר שנודע לנאשם על ביצוע הפיגוע הנ"ל. הנאשם **נישא אל** ▮▮▮▮▮▮ **וקיבל מהאחרון** סכום של **1,000 דולר. אחה"כ עבור ביצוע הפיגוע הנ"ל. הנאשם נתן ל** ▮▮▮▮▮▮▮▮ 100 דולר ארה"ב לכל אחד עבור השתתפותם בהוצאה לפועל של הפיגוע הנ"ל.

**פרט עשרים ושבעה:** (פ.א. 502/02 ציון) √

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם בכוונה למותה של **שרה המבורגר ז"ל**, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.

**פרט עשרים ושמונה:** (פ.א. 502/02 ציון) √

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים ושישה, במעשיו המתוארים בפרט האישום העשרים ושישה, ניסה לגרום למותם של אזרחים רבים ככל הניתן אשר היו באותה עת ברחוב יפו ובקרבתו. כתוצאה ממעשיו שבוצעו במקום על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, **נפצעו מעל 45 אזרחים.**

**פרט עשרים ותשעה:** (פ.א. 502/02 ציון) √

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים ושישה, במעשיו המתוארים בפרט האישום העשרים ושישה, פגע במזיד ושלא כדין ברכוש רב הכולל חנויות ברחוב יפו, תחת אוטובוס "אגד", אוטובוס "אגד" קו 27 וכן כלי רכב רבים, אשר נפגע כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם.

16

ת.ת. 444/02 מתוקן

## ‏V פרט שלישים:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, זהיינו:

1. הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפט עם ▇▇▇▇▇▇▇▇▇

2. ▇▇▇▇▇▇▇▇▇▇▇, מוכר לצבע פיגוע התאבדות.

3. על-פי בקשתו של הנאשם, ▇▇▇▇▇▇ ערך פגישה בין הנאשם לבין ▇▇▇▇▇▇▇▇▇▇ הנ"ל.

4. לאחר הפגישה הנ"ל, הנאשם הסכים להצעתו של ▇▇▇▇▇▇▇ לשלוח את ▇▇▇▇▇▇▇▇▇▇▇ לבצע פיגוע התאבדות בירושלים על מנת ש▇▇▇▇▇▇▇ יגרום למותם של אזרחים ישראליים רבים ככל הניתן.

5. תוכנן כי ▇▇▇▇▇▇▇▇▇ יבצע פיגוע התאבדות באמצעות רובה, דהיינו יירה לעבר אזרחים ישראליים בירושלים בכוונה לגרום למותם של אזרחים ישראליים רבים כל היתן וימשיך לירות עד שייהרג על-ידי כוחות הביטחון הישראליים.

6. הנאשם לקח מ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ רובי"ר 16-M ומספר מחסניות לרובי"ר הנ"ל מלאות בכדורים כצורך ביצוע פיגוע התאבדות המתוכנן.

7. הנאשם יצר קשר עם ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (המכונה "▇▇▇"). על-פי בקשתו של הנאשם השלושה הנ"ל הגיעו לרמאללה ונפגשו שם עם הנאשם.

8. הנאשם מסר לחבריו הנ"ל כי הוא מבקש מהם להכניס לירושלים מחבל נוסף, אשר יבצע בירושלים פיגוע התאבדות, דוגמת הפיגוע העשיים בפרט האישים העשרים של ▇▇▇▇▇▇▇, במטרה לגרום למותם של אזרחים רבים ככל הניתן. חבריו הנ"ל של הנאשם הסכימו להשתתף בהכנת המחבל המתאבד הנ"ל לירושלים.

9. הנאשם מסר לידי ▇▇▇▇▇▇▇▇▇▇▇ רכב סובארו אפור, השייך למשפחתו של הנאשם. ▇▇▇▇▇▇▇▇ חזר עם רכב הסובארו לביתו במ׳ר נבאללה, ואילו ▇▇▇ נסע עם רכב איסוזו סטזר שלו לביתו בכפר עקב.

10. יום למחרת, הנאשם והתקשר אל ▇▇▇▇▇▇▇ ואל ▇▇▇▇ והורה להם להגיע לתחנת הדלק המצאת ברמאללה תחזא, לאסוף משם את המחבל המתאבד ולהסיע אותו לירושלים על מנת שיבצע שם את פיגוע התאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן.

11. ▇▇▇▇▇▇▇▇ נסע ברכב הסובארו עד למחסום קלנדיה, שם הוא התנה את הרכב ועלה לרכב האיסוזו של ▇▇▇▇ שהגיע למקום. משם המשיכו השניים למקום המפגש האמור.

12. ברמאללה, בתחנת הדלק הנ"ל, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ שהוא המחבל המתאבד. הנאשם מסר לידי ▇▇▇▇▇▇▇▇▇ בפגירתם את רובי"ר 16-M הנ"ל ושלוש המחסניות הנ"ל מלאות בכדורים לרובי"ר 16-M.

13. ▇▇▇▇▇▇▇ הסתירו את רובי"ר 16-M והמחסניות בתוך רכב האיסוזו.

14. נסעו ביחד עם המחבל המתאבד לירושלים במטרה שיבצע שם פיגוע ירי ויגרום למותם של אזרחים רבים ככל הניתן.

15. ▇▇▇▇▇▇▇▇ הגיעו למחסום קלנדיה ועקפו אותו. לאחר מכן ▇▇▇▇▇▇▇ עבר לרכב הסובארו, שהושאיר במקום קודם לכן ונסע לצומת א-ראם. ▇▇▇▇▇▇▇▇▇▇▇ עבר ברכב הסובארו את מחסום א-ראם והמתין במקום ה▇▇▇ שעקפו את מחסום א-ראם, ועבר את מחסום א-ראם כשהוא נסע לבד ברכב האיסוזו עם הנשק.

16. ▇▇▇▇▇▇▇▇ הסיע את המחבל המתאבד עד למסגד בשועפט. לשם הגיע גם ברכב האיסוזו עם הנשק ו▇▇▇▇▇▇▇▇.

17. שם, המחבל המתאבד, ▇▇▇▇▇▇▇▇, ביקש להיכנס למסגד ולהתפלל לפני שיבצע את פיגוע ההתאבדות. ▇▇▇▇▇▇▇▇▇ הסכימו לבקשת הנ"ל.

18. בזמן ש▇▇▇▇▇▇▇ התפלל במסגד האמור, נמצא ברכב הסובארו הנ"ל לגבעת שאול שבירושלים במטרה לבדוק אם יש בדרך מחסומי צה"ל או משטרה. השניים החליטו להסיע את המחבל המתאבד לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן וזאת מכיוון שיש במקום האמור אזרחים רבים.

19. כאשר ▇▇▇▇▇▇▇▇ חזרו למסגד בשועפט על מנת לאסוף משם את ▇▇▇ ולהסיע אותו לגבעת שאול במטרה שיבצע שם את פיגוע הירי המתוכנן, השניים לא מצאו את המחבל המתאבד במסגד.

17

P 5: 191

20. התקשרו אל הנאשם ודיווחו לו כי המחבל המתאבד ברח להם. ▮▮▮▮▮▮▮▮▮▮
הנאשם הורה ▮▮▮▮▮▮▮▮▮▮▮ לחזור לרמאללה.

21. חזרו לרמאללה, נפשטו שם עם הנאשם ומסרו לידיו את רכב הסובארו הנ"ל, את רוס"ר M-16 הנ"ל ואת המחסניות הנ"ל. הנאשם החזיר את רוס"ר M-16 הנ"ל לידי ▮▮▮▮▮▮

22. הנאשם מסר ל▮▮▮▮▮▮▮▮ כי בן דודו נמלט בעת שהיה בדרכו לביצוע פיגוע ירי בירושלים.

### פרט שלושים ואחד:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת חודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, סכר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, וברמאללה או בסמוך לכך, נפגש עם ▮▮▮▮▮▮▮ "המכונה ▮▮▮▮▮" וכן עם ▮▮▮▮▮▮▮▮▮. השניים הנ"ל מסרו לנאשם כי נמצא אצלם מחבל מתאבד וביקשו את עזרתו של הנאשם. הנאשם הסכים לעזור לשלוח את המחבל המתאבד אל תוך מדינת ישראל על מנת שיבצע פיגוע התאבדות וגרום למותם של אזרחים ישראליים רבים ככל הניתן. הנאשם הגיע לדירה ברמאללה שבה היו "▮▮▮▮▮▮▮▮▮▮" וכן אדם שרצה לבצע פיגוע התאבדות. הנאשם שוחח עם ▮▮▮▮▮▮▮▮ (להלן: המחבל המתאבד) והתרשם כי האחרון רציני בכוונותיו. המחבל המתאבד הנ"ל מסר לנאשם כי בא אביו היה "שהיד" מכיוון שהרג על-ידי חיילי צה"ל. הנאשם העביר לידי ▮▮▮▮▮▮ רוס"ר M-16 ו-4 מחסניות מלאות בכדורים על מנת שימסור אותם למחבל המתאבד לצורך ביצוע פיגוע ההתאבדות המתוכנן.
יום למחרת, הנאשם חזר לדירה הנ"ל עם מצלמת וידאו. ▮▮▮▮▮ צילם באמצעות מצלמת הוידאו הנ"ל את המחבל המתאבד הנ"ל כשהוא מקריא כרוז, וזאת לקראת פיגוע ההתאבדות בתוך מדינת ישראל. הנאשם ונבחרין הנ"ל אימנו את המחבל המתאבד הנ"ל בשימוש ובירי ברוס"ר M-16. לאחר מכן הנאשם העביר את המחבל המתאבד הנ"ל את הנאשם ברמאללה תחזנא. הנאשם השאיר את המחבל המתאבד הנ"ל לישון בדירתו על מנת שייצא משם ביום שלמחרת לביצוע פיגוע התאבדות המתוכנן.
כאשר, למחרת בבוקר, הנאשם הגיע לדירתו הנ"ל של הנאשם, השניים גילו כי המחבל המתאבד נעלם. לאחר היעלמותו של המחבל המתאבד הנ"ל, התכנית הנ"ל לביצוע פיגוע ההתאבדות לא יצאה אל הפועל.

### פרט שלושים ושניים:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, סכר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ▮▮▮▮▮▮, ראש "יחידדי חללי אלאקצא", הזרוע הצבאית של "התנוזים" של הפתינ, באיזור שכם. ▮▮▮▮▮▮ כי הוא שלח אליו שני מחבלים מתאבדים. סוכם בין הנאשם לבין ▮▮▮▮▮▮▮▮ כל הנאשם ידאג למסור למחבלים המתאבדים הנ"ל כלי נשק ורימוני-יד וכן ידאג להכניסם אל תוך החלק המערבי של ירושלים על מנת שיבצעו שם פיגוע התאבדות כשיירו לעבר אזרחים ישראליים, בכוונה לגרום

18                                                               ת.פ. 444/02 מתוקן

למותם של אזרחים ישראליים רבים ככל הניתן, וימשיכו לירות עד שייהרגו על-ידי כוחות
הביטחון הישראליים.

על-פי הוראתו של עוויס הנ״ל, ביום 17.02.02, ███████ פעיל בכיר ב״יגדודי חללי
אלאקצא״, שלח משבק לרמאללה, אל הנאשם, את ███████
(מכונה ״███████״, אשר אותם ליווה ███████. השניים היו
כבר חמושים בשני רימוני-יד.

███████ היו אמורים לבצע את פיגוע ההתאבדות כפי שתכננו הנאשם ו███████

במסגרת ההכנה לפיגוע ההתאבדות הנ״ל, בביתו של ███████, אחיו של
███████ הנ״ל, במחנה הפליטים בלאטה, צילם ███████ באמצעות מצלמת וידאו את
ואת ███████ כשהם אוחזים ברובי-M16. השניים אף קראו בפני מצלמתם הוידאו כרוז של
״יגדודי חללי אלאקצא״. ███████ העביר ל███████ אימון בשימוש בנשק
לקראת ביצוע הפיגוע המתוכנן.

ביום 17.02.02 ███████ יצאו משבק לרמאללה ביחד עם ███████
███████ הסביר לארבעה כי עליהם לנסוע לרמאללה
בבוניתו של ███████. ███████ הסביר כי ███████ יהיה אחראי לכך עם
███████ ייפגשו ברמאללה עם פעילי ״יגדודי חללי אלאקצא״, אשר יספקו להם כלי נשק
ויסיעו אותם לירושלים לפי התכנון הנ״ל.

הארבעה הנ״ל לא הצליחו להגיע לרמאללה ולהיפגש עם הנאשם ו███████ לצורך ההוצאה לפועל של פיגוע
ההתאבדות המתוכנן. הארבעה נעצרו במחסום צה״ל, בסמוך לכפר דומא שבנפת רמאללה. שני
רימוני-היד שהיו במונית הנ״ל, נוצאו על-ידי החבלן.

## י פרט שלושים ושלושה:

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות
לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 51(א) לצו בדבר הוראות הביטחון
(יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, באמצע חודש פברואר 2002 או במועד הסמוך לכך, קשר
עם אדם אחר לגרום בכוונה למותם של אחר, דהיינו:
הנאשם הנ״ל, ביום 15.02.02 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם ███████ (המכונה ״███████
███████

במהלך הפגישה הנ״ל, הנאשם ביקש מחבריו הנ״ל להכניס חבל מתאבד לתוך ירושלים מתאבד, אשר
יבצע עם פיגוע התאבדות במטרה לגרום למותם של אנשים רבים ככל הניתן. חבריו הנ״ל של
הנאשם הסכימו להצעה האמורה. הנאשם הבטיח לשלם לחבריו הנ״ל 300 דולר אמריקאי כתמורה
להובלת המתאבד המתאבד לירושלים. הנאשם הודיע לחבריו הנ״ל כי יביא אליהם את המתאבד
המתאבד בעוד כמה-ימים.

הנאשם אף נתן לחבריו הנ״ל רכב סובארו אפר, נושא לוחיות רישוי ישראליות, על מנת שחבריו
הנ״ל יובילו בו את המתאבד המתאבד לירושלים.

███████ תכננו להכניס את המתאבד המתאבד לירושלים
ברכב איסוזו טנדר של ███████ חבריו הנ״ל של הנאשם תכננו להוביל את המתאבד המתאבד
לאחד המקומות בירושלים שיש בו הרבה אנשים על מנת שם יבצע המתאבד המתאבד פיגוע
ההתאבדות המתוכנן. ███████ אף ערכו סיור בירושלים
ובחרו את המקומות המתאימים לדעתם לביצוע פיגוע ירי נגד אזרחים ישראליים. בין היתר, בחרו
חבריו הנ״ל של הנאשם במלון ״רמדה״, המנהרות של כביש בגין וצומת הגבעה הצרפתית.

תכניתם הנ״ל של הנאשם וחבריו הנ״ל לא יצאה אל הפועל מכיוון שכחמישה לאחר הפגישה הנ״ל,
ביום 17.02.02, ███████ נעצר על-ידי כוחות הביטחון הישראליים, וכעבור יום, ביום
18.02.02, ███████ נעצר על-ידי כוחות הביטחון הישראליים.

לפי הוראתו של הנאשם, ביום ███████ לאחר מעצרם של ███████
19.02.02 או בסמוך לכך, ברמאללה, נפגש עם ███████, אחיו של ███████ הסכימו
הנ״ל, עם ███████. במהלך הפגישה האמורה, ███████
להצעתם של ███████ להכניס מתבל מתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות
במטרה לגרום למותם של אנשים רבים ככל הניתן.

גם התכנית הזו לא יצאה אל הפועל מכיוון ש███████ עצמו נעצר ביום למחרת, יום
ה-20.02.02, על-ידי כוחות הביטחון הישראליים.

ת.ת. 444/02 מתוקן

P 5: 193

**פרט שלושים וארבעה: (ת.א. 483/02 שפט)** ◁

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בזן באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, באמצע חודש פברואר 2002, ברמאללה או בסמוך לכך, **הנאשם החליט לשלוח** מחבל מתאבד לירושלים **על מנת** שיבצע פיגוע ירי לעבר אזרחים ישראלים בכוונה לגרום למותם אזרחים רבים ככל הניתן. הנאשם **תכנן כי בממסגרת** ממתאבד ירה לעבר אזרחים ישראלים עד שיהרג מאש כוחות הביטחון הישראליים.

2. הנאשם יצר קשר טלפוני עם ▆▆▆▆▆▆ פעיל צבאי בכיר ב"תנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, בשכם. הנאשם ביקש מ▆▆▆▆▆▆ לשלוח אליו לרמאללה מחבל מתאבד לצורך ביצוע פיגוע התאבדות המתוכנן.

3. לאחר מספר ימים, ▆▆▆▆▆▆ יצר קשר עם הנאשם והודיע לו כי הוא שלח על-ידיו ▆▆▆▆ לצורך ביצוע פיגוע התאבדות המתוכנן וכי הוא נמצא ברמאללה.

4. על-פי הוראתו של הנאשם, ▆▆▆▆▆▆ הביא את ▆▆▆▆▆▆ נפשו עם ▆▆▆▆▆▆ אל הנאשם.

5. הנאשם שוחח עם ▆▆▆▆▆▆ ולאחר מכן לקח את ▆▆▆▆▆▆ למספרה על מנת שהאחרון יסתפר לקראת ביצוע פיגוע התאבדות המתוכנן.

6. הנאשם רכש עבור ▆▆▆▆▆▆ בגדים, אשר עבורם שילם מכיסו 1,000 ש"ח.

7. לאחר מכן, הנאשם הוביל את ▆▆▆▆▆▆ דירה ברמאללה, אשר בה התגוררו הנאשם, ▆▆▆▆▆▆ (להלן: הדירה).

8. ביום 23.02.02, לדירה הגיע גם ▆▆▆▆▆▆ אשר שהביא רוס"ר M-16 עבור ביצוע הפיגוע המתוכנן, אשר אותו קיבל מהנאשם. אף הביא ▆▆▆▆▆▆ מחסנית לרוס"ר M-16 הנ"ל מכיתו של אחיו.

9. בשעות הערב באותו היום, ▆▆▆▆▆▆ מסר לראמי נור מידע על המקום בו הוטל על ▆▆▆▆▆▆ לבצע את הפיגוע המתוכנן. הנאשם **וחבריו הסבירו** ל▆▆▆▆▆▆ כי עליו לבצע את **הפיגוע** המתוכנן בשכונת נווה-יעקב בירושלים, במקום, אשר לגביו ▆▆▆▆▆▆ אסף מידע קודם לכן.

10. הנאשם, ביחד עם אחרים, צילם את ▆▆▆▆▆▆ באמצעות מצלמת וידאו במסגרת ההכנות לקראת ביצוע הפיגוע המתוכנן.

11. על-פי בקשתו של ▆▆▆▆▆▆ - אחיו ▆▆▆▆▆▆ פנה אל ▆▆▆▆▆▆ וביקש מהאחרון להסיע את ▆▆▆▆▆▆ לירושלים.

12. ביום 25.02.02, בשעות הערב, ▆▆▆▆▆▆ יצא מרמאללה לכיוון ירושלים ברכבו של ▆▆▆▆▆▆ כאשר ברכב מוסתר רוס"ר M-16 הנ"ל, המוחסנית וכן רימון-יד, אשר אותו מסר ▆▆▆▆▆▆.

13. ▆▆▆▆▆▆ הגיע לכביש הראשי בשכונת נווה-יעקב בירושלים.

14. ▆▆▆▆▆▆ ירד מהרכב הנ"ל במקום האמור, כשהוא חמוש ברוס"ר M-16 הנ"ל, מחסניות ורימון-יד. ▆▆▆▆▆▆ התקרב אל תחנת האוטובוס של קו 25 של "אגד" המצאת במקום ופתח באש אוטומטית ברוס"ר M-16 הנ"ל לעבר כלי רכב שעברו במקום וכן לעבר אזרחים ישראלים שהיו שהיו במקום בכוונה לגרום למותם של אנשים רבים ככל האפשר. למקום האמור הגיעות ניידת המשטרה ▆▆▆▆▆▆ פתח באש אוטומטית לעבר שני שוטרי משטרת ישראל שהיו בניידת הנ"ל בכוונה לגרום למותם. הכדורים שנורו על-ידי ▆▆▆▆▆▆ פגעו בשני השוטרים הנ"ל שהסתתרו לעבר ▆▆▆▆▆▆ וירו לעברו. כתוצאה מפגיעות הכדורים שנורו על-ידי ▆▆▆▆▆▆ השוטרת גלית אריבע ז"ל נפצעה ונפלה על הקרקע. התקרב אל השוטרת גלית ארבע ז"ל ויהרה לעברה מרחק קצר. כתוצאה מפגיעות הקליעים שנורו על-ידי ▆▆▆▆▆▆ השוטרת גלית ארבע ז"ל נפטרה לעבור מספר שעות.

15. לאחר ש▆▆▆▆▆▆ נמצרה התמשמשת הוא יידה את רימון-יד שהחזיק לעבר גייף של צה"ל שהגיע למקום בכוונה לגרום למותם של חיילי צה"ל. רק לאחר ש▆▆▆▆▆▆ נפצע ונגמרה לי התתמשמש, השוטרים והאזרחים שהיו במקום הצליחו להשתלט עליו.

16. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של השוטרת **גלית אריבע ז"ל**.

**פרט שלושים וחמישה: (פ.א. 483/02 שפט)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו לדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו לדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במעשיו המתוארים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של אזרחים ישראליים רבים ככל האפשר. כתוצאה מפגיעות הקליעים שנורו על-ידי ████, אשר נשלח לביצוע הפיגוע האמור על-ידי הנאשם, נפצעו שמונה אזרחים ושוטרים ישראליים.

**פרט שלושים ושישה: (פ.א. 483/02 שפט)**

**מהות העבירה:** החזקת בזדון לרכוש, עבירה לפי סעיף 53ג לצו לדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו לדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.02.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים וארבעה, במעשיו המתוארים בפרט האישום השלושים וארבעה, גרם במזיד ושלא כדין נזק רב לתחנת האוטובוס של קו 25 של "אגד" בגוה יעקב, לבתים הסמוכים ולכלי רכב שהיו במקום הנ"ל, אשר נפגע כתוצאה מהירות שנורו על-ידי ████████████.

**פרט שלושים ושבעה: (פ.א. 4258/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו לדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו לדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה אז בסמוך לכך, יצר קשר טלפוני עם ████.
2. ████, פעיל צבאי בכיר ב"חטיבות" של הפת"ח, שהוא התאחדות בלתי מותרת, בשכם. הודיע לנאשם כי הוא שולח אליו מחבל מתאבד נוסף או מנת שהנאשם ישלח אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי. תוכן כי המחבל המתאבד יירה לעבר אזרחים ישראליים בכוונה לגרום למותם של אזרחים רבים כל הניתן וכי ימשיך לירות עד שייהרג מאש כוחות הביטחון הישראליים.
3. ביום 04.03.02, יצר עם הנאשם קשר ████████, שוטר במשטרה הימית של הרשות הפלסטינית, אשר הודיע כי הגיע לרמאללה על-פי הוראתו של ████ וכי הוא המחבל המתאבד לצורך ביצוע פיגוע הירי המתוכנן. על-פי הוראתו של הנאשם, נפגש ברמאללה עם ████████████.
4. באותו היום, ברמאללה, ████████████ נפגש עם ████████████, במהלך הפגישה האמורה, ████████████ הכיר ל ████ את ████████.
5. ████████████ הודיע ל ████████ כי הנאשם הביא את ████████ על מנת שיבצע פיגוע התאבדות בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.
6. על-פי הוראתו של הנאשם, לקח את ████████████ למספרה על מנת שיסתפר לקראת ביצוע פיגוע ההתאבדות המתוכנן. כמו כן, רכש עבור ████████████ בגדים חדשים. עבור הבגדים הנ"ל, שילם 1,000 ש"ח, אשר אותם קיבל מהנאשם למטרה זו.
7. לאחר מכן, לפי הוראתו של הנאשם, הוביל את ████████████ לדירה ברמאללה תחותא, אשר בה התגוררו ████, והנאשם (להלן: הדירה).
8. הנאשם הגיע לדירה וצילם באמצעות מצלמת וידאו את ████████████ לקראת ביצוע פיגוע ההתאבדות המתוכנן.

21

P 5: 195

.9 הנאשם הורה ל ████ להוביל את ████ אל תוך מדינת ישראל על מנת
שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן. הנאשם הורה ל ████ להביא נשק
לצורך ביצוע הפיגוע המתוכנן.

.10 חבריו הע"ל של הנאשם החלו לחפש אדם אשר יכניס את ████ אל תוך מדינת
ישראל על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן וגרום למותם של אזרחים
ישראליים רבים ככל האפשר.

.11 ████ פנה אל ████ בעל תעודת זהות ישראלית
המתגורר בירושלים, ובקשם מהאחרון להגיע בדחיפות לרמאללה.

.12 ████ נפגש עם ████ הנ"ל בבית קפה ברמאללה, ומו ████ ביקש ממנו
להסיע מחבל מתאבד אל תוך מדינת ישראל. הסכים לחצעה זו, אך ביקש כי
דואג לספק לטורח זו רכב לא גנוב בעל לוחיות רישוי ישראליות.

.13 ████ פגשו ברמאללה את ████ נהג ברכב
████ אשר חיה ביחד עם ████
פרד טרנזיט עם לוחיות רישוי ישראליות, מ.ר. 7014515 (להלן : הרכב). האנשים הנ"ל ביקשו
מ ████ את רכב ואת הרשיונות של הרכב לצורך הסעת מחבל מתאבד אל תוך שטחה
של מדינת ישראל על מנת שהמחבל המתאבד יבצע שם פיגוע התאבדות. ████ מסר
את הרכב לידע ████, אך ביקש כי הוא עצמו ינהג בו.

.14 בשלב הזה, ████ הלכו לדירה. שם, ████ התקלחו ולבשו את
הבגדים החדשים, אשר נקנו עבור על-פי הוראת הנאשם כאמור לעיל.

.15 בסביבות השעה 20:00, ████ שנוסע ברכב,
נפגש בכיכר השעון ברמאללה עם ████
████ ████ בע היו חמישה ברוס"ר M-16 6, מחסניות מלאות בכדורים ושני רימוני-יד, עלו
████ לרכב. למקום הגיע גם ████ אשר מסר ל
סכין קומנדו באורך של כ-25 ס"מ. ████ אמר ל ████ לדקור אזרחים
ישראליים על מנת לגרום למותם לאחר שתיטמן לו התחמושת.

.16 כל האנשים הנ"ל נסעו ברכב לכיכר רפידין ברמאללה, מכיוון שבמקום האמור אין הרבה
עוברי אורח.

.17 בכיכר רפידין הנ"ל, ████ פירקו את
רוס"ר M-16 הנ"ל והכניסו אותו אל תוך הדלת הצדדית של הרכב.

.18 ████, נישקו את ████ ואיחלו לו
הצלחה.

.19 ████ הודיע לחבריו כי הוא עובד בתל-אביב ולכן מכיר מקום בתל-אביב, אשר בו
ניתן לבצע פיגוע התאבדות המתוכנן.

.20 הוחלט כי לאחר ש ████ יורידו את ████ בתל-אביב
במקום שהיה בו הרבה בני אדם, ימתינו מספר דקות על מנת שהחבריו הנ"ל יספיקו להימלט
מהמקום ברכב ולאחר מכן יפתח באש אוטומטית ברוס"ר M-16 הנ"ל לעבר אזרחים
ישראלים שיהיו במקום, בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר
וימשיך לירות עד שיחזרו נאשי בטחון הישראליים הישראלים שיגיעו למקום.

.21 ████ עלה לרכב, אשר בו נהג ████ ולידו ישב ████, והשלושה
נסעו לכיוונו תל-אביב על מנת לבצע שם את פיגוע ההתאבדות המתוכנן.

.22 בכתהלך נסיעתם של ████ לתל-אביב,
████ שוחח עמם באמצעות טלפון סלולרי.

.23 באותו חלילה, לאחר ש ████ הגיעו לתל-אביב,
בסמוך לגשר מעריב שבדרך פתח-תקוות, ████ הראה ל ████ מקום הומה
אדם ה התאה אותו לבצע שם את הפיגוע המתוכנן.

.24 ████ הוציא את רוס"ר M-16, מחסניות ורימוני-היד הנ"ל, שהיו מוסתרים בדלת
של הרכב כאמור לעיל.

.25 בסמוך לשעה 02:15, ביום 05.03.02 או במועד הסמוך לכך, ████
הורידו את ████ מן הרכב, כשהוא חמוש ברוס"ר M-16, רימוני-היד וסכין קומנדו
הנ"ל, בסמוך למסעדה "יסי-פוד מרקטי" הנמצאת בדרך פתח-תקווה בתל-אביב (להלן :
המסעדה) על מנת שיבצע שם את הפיגוע המתוכנן.

.26 ████ נסעו ברכב מהתמקום לכיוונו ירושלים.

.27 ████ התקרב אל המסעדה "יסי-פוד מרקטי" ופתח באש אוטומטית ברוס"ר M-16
לעבר יושבי המסעדה ועוברי האורח בדרך פתח-תקוות בכוונה לגרום למותם.

.28 לאחר מכן, ████ השליך את שני רימוני-היד הנ"ל לעבר המסעדה בכוונה לגרום
למותם של יושבי המסעדה ועוברי אורח, אך רימוני-היד לא התפוצצו.

22

ת.ת. 444/02 מתוקן

29. לאחר שרוס"ר M-16, אשר בו החזיק ██████ הפסיק לירות עקב עצור, ██████ הוציא את סכין הקומנדו הנ"ל והחל לדקור אזרחים ישראליים שהיו במקום בכוונה לגרום למותם.

30. למקום האמור, הגיע השוטר רס"ר סלים ברכאת ז"ל. רס"ר סלים ברכאת ז"ל הסתער לעבר ██████ והשתלט עליו. רס"ר סלים ברכאת ז"ל הספיק לחודיע למפקדיו על ההשתלטות על המחבל.

31. בשלב חזה, ██████ דקר באמצעות סכין הקומנדו הנ"ל את רס"ר סלים ברכאת ז"ל בצוארו בכוונה לגרום למותו. כתוצאה מהדקירה הנ"ל, רס"ר סלים ברכאת ז"ל נפטר במקום.

32. במעשיו המתוארים לעיל, האשם הנ"ל גרם בכוונה למותו של רס"ר סלים ברכאת ז"ל.

33. לאחר של ██████ ██████ נדע משיזורי הטלויויזיה על כך שהפיגוע המתוכנן בוצע כאמור לעיל, הוא יצר קשר עם האשם ועדכן את האחרון בדבר ביצוע הפיגוע האמור.

34. מיד לאחר מכן, האשם הודיע ל ██████, ראש "התנזים" של הפתייח באיזור, ו██████, ראש "גדודי חללי אלאקצא", זרוע הצבאית של "התנזים" של הפתייח, על הפיגוע שבוצע. אגב כך, האשם יצר קשר עם סוכנות הידיעות "רויטרס" והודיע על הפיגוע שבוצע כאמור לעיל.

**פרט שלושים ושמונה: (פ.א. 4258/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** האשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
האשם הנ"ל, במקום האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו המתוארים בפרט האישום השלושים ושבעה, גרם בכוונה למותו של יוסף חבי ז"ל, אשר נדקר על-ידי ██████ ה בבית חזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

**פרט שלושים ותשעה: (פ.א. 4258/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** האשם הנ"ל, בבין איזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
האשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, גרם בכוונה למותו של אליהו דהן ז"ל, אשר נדקר על-ידי ██████ בבית חזה, בבטנו ובגבו ונפטר כתוצאה מכך.

**פרט ארבעים: (פ.א. 4258/02 ירקון)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** האשם הנ"ל, בין באיזור ובין מחולו לו, ביום 05.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
האשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר. כתוצאה מהיריות שגורו על-ידי ██████ ██████ נפצעו עשרות אזרחים ישראליים.

ת.ת. 444/02 מתוקן

**פרט ארבעים ואחד : (פ.א. 4258/02 ירקון)**

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 153 לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר ככלי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 05.03.02 או במועד הסמוך לכך,
הרס רכוש או פגע בו בנזדון ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושבעה, במעשיו
המתוארים בפרט האישום השלושים ושבעה, גרם בנזדון ושלא כדין רב למעופ "סי-פוד
מרקט", למשאית "מפעץ הסטיגס" וכן לבניינים הסמוכים וכלי הרכב שהיו באיזור, אשר נפגעו
כתוצאה מהירירות שנרה על-ידי ▇▇▇▇▇.

**פרט ארבעים ושניים : (פ.א. 568/02 שפט)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר ככלי האחריות לעבירות
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 08.03.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. **הנאשם הנ"ל, במועד האמור,** שוחח באמצעות טלפון עם ▇▇▇▇▇, פעיל צבאי בכיר
   ב"תנזים" של המנ"ית, שהוא התאחדות בלתי מותרת, בשכם.
2. ▇▇▇▇▇ ביקש מהנאשם להיפגש ברמאללה עם ▇▇▇▇▇, אשר שוחרר לפני
   זמן קצר מהכלא של הביטחון הממלכ של הרשות הפלסטינית.
3. **הנאשם נפגש ברמאללה עם** ▇▇▇▇▇. במהלך השיחה בין השניים ▇▇▇▇▇ מסר לנאשם כי
   יש לו מחבל מתאבד וכי הוא צריך תגורת נפש על מנת שהמחבל המתאבד יוכל לבצע
   באמצעותה פיגוע התאבדות בתוך שטחה של מדינת ישראל ובכך יגרום למותם של אזרחים
   ישראלים רבים ככל הניתן. הנאשם הסכים למסור ל▇▇▇▇▇ **את תגורת הנפש המבוקשת**
   **לצורך ביצוע פיגוע. התאבדות הממתואר.** כמו כן, הסכים, הנאשם לבקשתו של ▇▇▇▇▇
   לארגן מקום לינה ברמאללה עבור המחבל המתאבד.
4. קודם לכן, ▇▇▇▇▇ הנ"ל שוחח עם ▇▇▇▇▇ הנ"ל. הנ"ל הודיע כי איתר אדם
   אשר מוכן לבצע פיגוע התאבדות בירושלים, והוא ▇▇▇▇▇, תושב השומרון.
   ▇▇▇▇▇ ביקש מ▇▇▇▇▇ להעביר את ▇▇▇▇▇ לירושלים על מנת לבצע פיגוע התאבדות בכוונה
   לגרום למותם של אזרחים ישראליים. ▇▇▇▇▇ הסכים לכך.
   ▇▇▇▇▇ סיפר ל▇▇▇▇▇ כי בכוונתו לבצע פיגוע התאבדות, וזאת
   לאחר שאורסתו, ▇▇▇▇▇ ביצעה גם היא פיגוע התאבדות.
5. ▇▇▇▇▇ התקשר ל▇▇▇▇▇, תושב בית חנינא, **פעיל הארגון "החזית**
   **העממית לשחרור פלסטין",** והודיע לו, כי בכוונתו לבצע פיגוע התאבדות וזאת על ידי שיגור
   מחבל מתאבד שברשותו. ▇▇▇▇▇ ביקש מ▇▇▇▇▇ לאתר אנשים, אשר יכניאו את
   המחבל המתאבד לירושלים. ▇▇▇▇▇ הסכים לבצע את המבוקש ממנו.
6. ▇▇▇▇▇ התקשר לחברו ▇▇▇▇▇, תושב בית חנינא, פעיל הארגון **"החזית**
   העממית לשחרור פלסטין", וזה נפגש עמו ביום 06.03.02 ברמאללה. ▇▇▇▇▇ הגיע לפגישה
   זו ונפגש עם ▇▇▇▇▇ בסמוך לבית קפה "ערבסקי".
   ▇▇▇▇▇ הציע ל▇▇▇▇▇ להכניס מחבל מתאבד מרמאללה לירושלים לצורך ביצוע פיגוע.
   ▇▇▇▇▇ הדריך את ▇▇▇▇▇ להביל את המחבל המתאבד לגבעה הצרפתית בירושלים,
   בדרכים עוקפות מחסומים, על מנת שיבצע שם פיגוע ויגרום בכך למותם של אזרחים
   ישראליים: ▇▇▇▇▇ הציעו ל▇▇▇▇▇ חלופות למקום ביצוע הפיגוע:
   סופרמרקט בסמוך לתחנות הדלק בשכונת רמת אשכול, מעצת "פיצה דומינוסי" בגבעה
   הצרפתית או אחת מתחנות האוטובוס שבצומת הגבעה הצרפתית.
7. לצורך קבלת תגורת הנפש עבור המחבל המתאבד, הנאשם חפצש את ▇▇▇▇▇ עם
   ▇▇▇▇▇, פעיל כוח 17 של רשות הפלסטינית, אשר הבטיח להעביר לידי ▇▇▇▇▇
   המחבל המתאבד תגורה נפש שברשותו ולהעמיד לרשותו של ▇▇▇▇▇ פעיל כוח 17 של
   הרשות הפלסטינית בשם ▇▇▇▇▇, אשר ילביש את תגורת הנפש על המחבל המתאבד.
8. **הנאשם הוביל את המחבל המתאבד אל** הדירה ברמאללה תחתה, אשר אותה שכר הנאשם
   (להלן : **הדירה**).

9. ביום 08.03.02 הגיע ‎█████, לקריאתו של ‎█████, לרמאללה. ברמאללה המתינו
‎████████ אשר הגיע למקום מפגש ברכב, ו‎██████
ל‎█████ מסרו ל‎██████ כי עליו לחבל/יל את המחבל המתאבד לתחנת האוטובוסים, שבכניסה
הדרומית לים הכלח, בצומת הגבעה הצרפתית בירושלים. ‎██████ וידאו כי
‎██████ סיפר להם, כי בכוונתו להוביל את הדדכים העוקפים למקום, ‎█████ מכיר
את המחבל המתאבד תוך עקיפת מחסום קלנדיה בדרך מחתברות, ומשם להמשיך ולהוביל
את המחבל למקום ביצוע הפיגוע דרך בית חנינא ושועפט, תוך עקיפת מחסום דחיית
אל־ברית.

10. לאחר מכן, ‎█████ נסע לדירה, שם נפגש עם הנאשם עם‎█████ אשר הביא יחד עמו חגורת
נפץ. ‎█████ מזדד דלבוש את חגורת הנפץ על ‎█████ והסביר לו כיצד להפעיל את
חגורת הנפץ, כמו כן, מחמוד ‎█████ את זקנו.

11. לאחר מכן, עבדו הנאשם וחבריו הנ"ל מוניית, ‎█████ המחבל המתאבד, ‎█████ לבש בתגורת
הנפץ, עלה למונית בדרך לביצוע פיגוע התאבדות בירושלים בכוונה לגרום למותם של
‎██████ למקום מפגש עם
אזרחים ישראליים. ‎██████ ליווה את ‎█████

12. ‎█████ והמחבל המתאבד, ‎█████ המשיכו לנסוע במונית, וירדו מן המונית בדרך
עפר בסמוך למחתברות בקלנדיה. משם הוביל ‎█████ את מחבל המתאבד ברגל בדרכם
לביצוע הפיגוע המתוכנן.

13. בשיכוני נוסעויבה בבית חנינא בירושלים, נעצרו ‎█████ כאשר ניסה
‎█████ להפעיל את חגורת הנפץ אותה
לבש, נורה על ידי אנשי כוחות הביטחון ונהרג.

## ✓ פרט ארבעים ושלושה. (מ.א. 783/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מסי 378), תשל"ל-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 17.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, כדלקמן:

1. ביום 05.03.02 נהרג ברמאללה פעיל צבאי בכיר ב"גדודי חללי אלאקצא" והזרוע הצבאית של
"התנזים/ים של הפתיית" -

2. כעשרה ימים לאחר מכן, ‎█████ החליט לנקום את מותו של ‎█████
על דרך ביצוע פיגוע קטלני.

3. ‎█████ הסכימו להצטרף אל יצר קשר עם הנאשם לביצוע פיגוע בקרב המקומ הנ"ל.

4. בעקבות האישור שניתן על־ידי הנאשם, ‎█████ וקיבל את אישורו לביצוע הפיגוע המתוכנן.

5. ‎█████ הגיע לביתו של הנאשם,

6. הנאשם מסר לידי השניים רובה מסוג "ברטה", ורוסי"ר קלצ'ניקוב עם מחסניות לצורך ביצוע
הפיגוע המתוכנן.

7. למחרת, ביום 17.03.02, נסע עם ‎█████ ברכב מסוג "מזדה"
לכביש בית־אל־פסגות, כאשר ‎█████ נהג ברכב, ‎█████ מחזיק בידיו את הרובה
מסוג "ברטה", ‎█████ מחזיק בידיו רוסי"ר קלצ'ניקוב.

8. האנשם הנ"ל הגיע למקום הפיגוע המתוכנן סמוך לשעה 6:30 בבקר. ‎█████
ירדו מן הרכב, בעוד ש‎█████ נשאר להמתין להם ברכב לצורך מילוטם בסיום
ביצוע הפיגוע.

9. כרבע שעה לאחר מכן הגיע למקום רכב פולקסוון פאסאט לבן, מ.ר. 7741115, אשר בו נהג
סמיר קרש.

10. ‎█████ ירו לעבר נהג הרכב בצרורות באמצעות כלי הנשק, אשר סיפקו להם
למטרה זו הנאשם, בכוונה לגרום למותו של נהג רכב הפולקסוון הנ"ל.

11. כתוצאה מהירי, נפגע סמיר קרש בכתפו, בדרך שביתת הומרוס המקורב משמאל עם ריסוק
וריסוסיר מתחת לאזרד מסלול הקליע, וזיק לאישפוז וניסוח. כמו כן, פגע שלושה מן הכדורים
שנורו על־ידי ‎█████ ברכב האמור וגרמו לו נזק.

12. לאחר סיום ביצוע הפיגוע, חזרו ‎█████ לרכבם של ‎█████ והשלושה
נמלטו ממקום הפיגוע הפיגוע לרמאללה.

13. לאחר מכן, ‎█████ התקשר אל הנאשם ודיווח לו על ביצוע המוצלח של הפיגוע.

**פרט ארבעים וארבעה:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצור, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד ובמקום הנזכרים לעיל, בסמוך לכך, ונפגש עם ████████, שומר ראשו של ████████, ראש הביטחון המסכל של הרשות הפלסטינית באיזור. ████ הודיע לנאשם כי ברצונו לבצע פיגוע ירי נגד חיילי צה"ל הנמצאים במחסום סורדא ובגזרה למוות. הנאשם מסר לו 2 אקדחים, רסיבר M-16 מקוצר עם כוונת טלסקופית וכן קופסא של כדורים לצורך ביצוע הפיגוע הנ"ל האמור.

לאחר זמן קצר ביצע פיגוע ירי במחסום סורדא ובמהלכו נהרג חייל צה"ל. הנאשם מיהר ליצור קשר עם ████ אך האחרון מסר כי זה לא זה שביצע את הפיגוע האמור. לאחר מכן, ████ החזיר לנאשם את כלי הנשק, אשר אותם מסר לו הנאשם קודם לכך לצורך ביצוע הפיגוע האמור.

**פרט ארבעים וחמישה:**

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, קטר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית, או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצור, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ████████, פעיל בכיר בידרגות חללי אלאקצא", הזרוע הצבאית של "התנועים" של הפתח", שהוא התאחדות בלתי מותרת. ████ מסר לנאשם כי יש לו מחבל מתאבד המוכן לבצע פיגוע התאבדות בתוך מדינת ישראל. הנאשם הסכים לשלוח את המחבל המתאבד כך תוך שהוא על מדינת ישראל על מנת שיגרום למוות או לחבלה ████. לאחרחים ישראליים רבים ככל הניתן.

למחרת היום, הגיע אל הנאשם אדם בשם ████ ████ מסכם ████ מסר לנאשם כי ████ לצורך ביצוע פיגוע התאבדות בתוך ישראל.

הנאשם שוחח עם ████████ וגילה כי ████ לא ידע לידיות טוב. בעקבות כך הנאשם שוב יצר קשר עם ████ הנאשם מסר לו כי ████ יוכל לבצע את פיגוע ההתאבדות באמצעות אגורת נפץ שיישא על גופו. ████ הסכים להצעת הנאשם והבטיח לדאוג לשלוח את הנאשם אגורת נפץ לצורך ביצוע פיגוע ההתאבדות מתוכנן. אל-פי הוראתו של הנאשם, ████, רכש עבור בגדים חדשים ולאחר מכן ליווה את ████ לידיה ברמאללה תחתא, שבה התגורר ████ והנאשם (להלן : הדירה).

הפיגוע המתוכנן לא יצא אל הפועל לאור העובדה שמטעני התחבלה לא נשלחו לנאשם, וכן מכיוון ████ שנעצר על-ידי כוחות הביטחון הישראלים.

לאחר מעצרו של ████ הנאשם שוחח עם ████ הנ"ל אודות מה שקרה. הבטיח לנאשם לשלוח אלי מחבלים מתאבדים נוספים על מנת שהנאשם ישלח אותם אל תוך שטחות של מדינת ישראל לצורך ביצוע פיגועי התאבדות. ████ לא הספיק לשלוח את הנאשם מחבלים מתאבדים נוספים, מכיוון שהן הנאשם הן ████ נעצרו על-ידי כוחות צה"ל במהלך המבצע "חומת מגן".

**פרט ארבעים ושישה:**

**מהות העבירה:** ייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע חודש מרץ 2002 או בסמוך לכך, ייצר כלי ירייה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה נפגש עם ████████, אשר ביקש מהנאשם לקבל כסף עבור פעילות צבאית. לאור האמור, הנאשם העביר ל█████ **סכום של 8,000 ש"ח,** אשר אותו קיבל █████████
ביחד עם ████████ רכשו בכסף הנ"ל חומרים כימיים שונים.
**ייצר מהחומרים הכימיים הנ"ל מטען חבלה גדול.**

**פרט ארבעים ושבעה:**

**מהות העבירה:** סחר בצידו מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בצידו מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בצידו מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, מסר לידי ████████ ראש "גדודי חללי אלאקצא" - הזרוע הצבאית של "התנזים" של הפעילית באיזור גינין, אשר שהה אותה עת ברמאללה, אקדח 14, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט ארבעים ושמונה:**

**מהות העבירה:** סחר בצידו מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בצידו מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בצידו מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, **רכש מידי** ████████
רובי"ר M-16 **ארוך תמורת** 4,000 דינר ירדני, וזאת ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט ארבעים ותשעה:**

**מהות העבירה:** סחר בצידו מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בצידו מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית הראשונה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בצידו מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ████████ וקיבל מהאחרון 1,500 כדורים לרובי"ר M-16. **הנאשם שילם ל**████ **הנ"ל 3,000 ש"ח** עבור הכדורים הנ"ל. הנאשם ביצע את המיוחס לו בפרט האישום הזה לפי הוראתו של ████████ ראש "התנזים" של הפעילית באיזור.

ת.ת. 444/02 מתוקן

**פרט חמישים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מאי 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של ▇▇▇▇▇▇, מסר לידי האחראי רוסייר קלצ'ינקוב עם מחסניות ו-28 כדורים. הנאשם ביצע את המיוחס לו בפרט האישום הזה לאחר שקיבל אישור לעשות כן מ▇▇▇▇ ראש "התנוזים" של הפתי"ח באיזור. ▇▇▇▇▇ השתתף בהדלקה ברמאללה, כשהוא מחזיק ברוסייר קלצ'ינקוב הנ"ל. במהלך התהלוכה ▇▇▇▇▇ היה רעול פנים ויה ברוסייר קלצ'ינקוב הנ"ל באוויר. לאחר מכן, ▇▇▇▇▇, על-פי הוראתו של הנאשם, העביר את רוסייר קלצ'ינקוב הנ"ל לידי

**פרט חמישים ואחד:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעבר עבירה על תחיקת הביטחון או עסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם ▇▇▇▇▇▇▇, העביר את▇▇▇▇▇ (את עבדאללה ברגותי מהכלא של הרשות הפלסטינית בבית'וניה לדירה, אשר ▇▇▇▇▇ אותה שכר הנאשם ברמאללה תחתא. ▇▇▇▇▇ ועבדאללה ברגותי הנ"ל הם פעילים בכירים בארגון החמאס, שהוא התאחדות בלתי מותרת, האחראים לביצוע מספר פיגועים נגד אזרחים ישראלים, ביניהם פיגוע נופץ במסעדת "סבארו" בירושלים ביום 09.08.01. הנאשם ו▇▇▇▇▇ הלינו את ▇▇▇▇▇▇▇ ואת עבדאללה ברגותי בדירה הנ"ל במשך מספר ימים. לפני ש▇▇▇▇▇ ועבדאללה ברגותי עזבו את דירתו הנ"ל של הנאשם, הנאשם מסר לכל אחד מהם אקדח 14.

**פרט חמישים ושניים:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: ▇▇▇▇▇, פעיל צבאי בכיר בית'נוזים" של הפתי"ח, שהוא התאחדות בלתי מותרת, ביקש מהנאשם הנ"ל, במועד האמור, שוחח באמצעות טלפון עם ▇▇▇▇▇ אמר לנאשם כי הוא צריך 1,000 כדורים לרוסייר M-16. הנאשם הבטיח להביא ל▇▇▇▇ את הכדורים המבוקשים. לאחר מספר ימים הגיע אל הנאשם, ברמאללה, אדם בשמו של ▇▇▇▇▇ הנאשם מסר לאחרון 1,000 כדורים לרוסייר M-16 על מנת שיעביר אותם לשכם ש▇▇▇▇▇ תמורת 1,000 כדורים הנ"ל ▇▇▇▇▇ העביר לחשבון הבנק של הנאשם סכום של 3,000 ש"ח. הנאשם ביצע את המיוחס לו בפרט האישום הזה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**פרט חמישים ושלושה:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש ינואר 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
■■■ אל הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה ■■■■ ביקש מהנאשם לקבל שלושה אקדחים על מנת למוסרם לידי מעיל צבאי בייגדודי חללי אלאקצא", הזרוע הצבאית של "התנזים" של הפתח, לצורך ■■■ ביצוע פיגועי ירי במחסום סורדא של צה"ל.
הנאשם הסכים לבקשתו של ■■■■ (מסר לידי האחרון 3 אקדחים). אקדח בלגי 9 מ"מ, אקדח סטאר 9 מ"מ ואקדח שסוגו אינו ידוע לתביעה, וכן קופסת כדורים לאקדחים הנ"ל, המכילה 50 כדורים לאקדח בקוטר 9 מ"מ.
באותו היום, במפקדה של הביטחון המסכל של תרשות הפלסטינית בביתוניא או בסמוך לכך, ■■■ העביר את שלושת האקדחים והכדורים הנ"ל לידי ■■■
הפיגוע המתוכנן לא בוצע באמצעות האקדחים הנ"ל, מכיוון שלילה לפני המועד שבו היה אמור להתבצע הפיגוע הנ"ל, בוצע פיגוע ירי אחר במחסום סורדא.
לאחר כשלושה ימים, ברמאללה או בסמוך לכך ■■■ החזיר את האקדחים הנ"ל ביחד עם קופסת הכדורים הנ"ל לידי הנאשם.
הנאשם ביצע את המיוחד לו בפרט אישום זה ללא היתר חתום על-ידי מפקד האיזור או מטעמו.

**עדי התביעה:**



1. ■■■, לחי"ק יהודה. [גובה אמרות הנאשם מיום 16.04.02 ומיום 03.05.02 ומגיש כתב-יד של הנאשם בערבית + דו"ח מסדר זיהוי תצלומים + לוח תצלומים]
2. ■■■ לחי"ק יהודה. [גובה אמרות הנאשם מיום 21.04.02 ומיום 13.05.02 ומגיש שני כתבי-ידו של הנאשם בערבית]
3. ■■■ תשאול אמן לכיש. [גובה אמרת הנאשם מיום 05.09.02]
4. ■■■ (עצור)
5. ■■■ (עצור) (ת.ת. 243/02)
6. ■■■ (עצור) (ת.ת. 242/02)
7. ■■■ (עצור) (ת.ת. 241/02)
8. ■■■ (עצור) (ת.ת. 265/02)
9. ■■■ (עצור)
10. ■■■ (עצור)
11. ■■■ (עצור) (ת.ת. 339/02)
12. ■■■ (עצור) (ת.ת. 355/02)
13. ■■■ (עצור) (ת.ת. 311/02)
14. ■■■ (עצור) (ת.ת. 345/02)
15. ■■■ (עצור) (ת.ת. 356/02)
16. ■■■ (עצור) (ת.ת. 318/02)
17. ■■■ (עצור)
18. ■■■ (עצור)
19. ■■■ (עצור) (ת.ת. 353/02)
20. ■■■ (עצור) (ת.ת. 221/02)
21. ■■■ (עצור) (ת.ת. 212/02)
22. ■■■ (עצור)
23. ■■■ (עצור) (ת.ת. 639/01)
24. ■■■ (עצור) (ת.ת. 174/02)
25. ■■■ (עצור) (ת.ת. 173/02)
26. ■■■ (עצור) (ת.ת. 322/02)
27. ■■■ (עצור) (ת.ת. 775/02)

ת.ת. 444/02 מתוקן

P 5: 203

**פ.א. 234/01 מ"מ י"ש**

28. ████████ צה"ל. (פרטים בתביעה) [עדות]
29. ████████ פרטים בתביעה) [עדות]
30. ████████ (פרטים בתביעה) [עדות]
31. ████████ מז"פ - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
32. ████████ המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח]

**בדיקות רכב**

33. ████████, החקירות - תחנת ציון. [מגיש טופס לוואי למוצגים]
34. ████████ משרד מוצגים - מז"פ, מטא"ר. [מגיש
תע"צ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
35. ████████, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה מתיק
מז"פ ████████5] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
36. ████████, צה"ל. [עדות - קביעת מותו של אלעזר עקיבא פשקוס ז"ל]
37. ████████, קופ"ח כללית - ירושלים. [עדות + מגיש הודעת פטירה]

**פ.א. 457/01**

38. ████████ תחנת בנימין. [מגיש דו"ח פעולה]
39. ████████ תחנת בנימין. [מגיש זכ"ד-רכב GMC + שרטוט זירת
40. ████████ האירוע + דו"ח והפיסה וסימון + טופס לוואי למוצגים
מז"פ יהודה. [מגיש לוחות תצלומים + מזכר]
41. ████████ המעבדה הניידת, מז"פ - מטא"ר, ירושלים. [מגיש
לוחות תצלומים + דו"ח בדיקת רכב]
42. ████████, (פרטים בתביעה) [נפצע בפיגוע חירן]
43. ████████ (פרטים בתביעה) [הגיע ראשון לזירת הפיגוע]
44. ████████ ביה"ח הדסה - הר-הצופים, ירושלים. [מגישה תעודת
רופא - סכום ביניים] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)

**פ.א. 2159/01 בנימין**

45. ████████, תחנת בנימין. [מגיש דו"ח פעולה]
46. ████████ מז"פ, תחנת בנימין. [מגיש לוחות תצלומים + דו"ח
תפיסה וסימון]
47. ████████, המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח
ביקור ראשוני בזירת האירוע - תפיסת תרמילים ושרידי קליעים]
48. ████████ תחנת בנימין. [מגיש זכ"ד - שרשרת מוצג + טופס
לוואי למוצגים + דו"ח ביקור בזירת העבירה]
49. ████████ משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגיש
תע"צ - קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
50. ████████, מעבדת נשק, מז"פ, מטא"ר - ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ
זב/7 - 07, 4238/01] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
51. ████████, מז"יא - תחנת לוד. [מגיש דו"חות רפואיים מהשטח +
הודעות פטירה + עדות]
52. ████████ צה"ל. [עדות]
53. ████████, המכון הלאומי לרפואה משפטית. [מגיש שתי חוו"ד מומחה] (יזומן לפי
דרישה מפורשת של הסניגוריה בלבד)
54. ████████ (פרטים בתביעה) [זיהוי הרוגים]

**פ.א. 7915/01 ציון**

55. ████████ תחנת ציון. [מגיש דו"ח פעולה]
56. ████████, מז"פ - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה +
לוחות תצלומים]
57. ████████, תחנת ציון. [מוצא תרמילים בזירת האירוע - שרשרת ראיות]
58. ████████ המעבדה הניידת, מז"פ, מטא"ר - ירושלים. [מגיש דו"ח
בדיקת רכב - תפיסת שרידי קליע]
59. ████████, מת"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
60. ████████, משרד מוצגים - מז"פ, מטא"ר - ירושלים. [מגישה תע"צ -
קבלת מוצגים לבדיקה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)

ת.ת. 444/02 מתוקן

P 5: 204

61. מעבדת נשק, מז"פ, מטא"ר – ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ
 זב/ 07–/4539/01] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
62. ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של
משה וייס] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
63. , ביה"ח הדסה עין-כרם, ירושלים. [מגיש הודעת פטירה של מאיר
ויסבויז ז"ל] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
64. משה וייס, ת.ז. 024001505. (פרטים בתביעה) (מצע קשה בפיגוע)
65. (פרטים בתביעה) (עדת ראיה)

ת.א. 481/01 ציון

66. טובי עמנואל, ת.ז. 032441040. (פרטים בתביעה) (נהגת רכב ההודמה)
67. פיני מימון, ת.ז. 025759762. (פרטים בתביעה) (נוסע רכב ההודמה)
68. פנית מימון, ת.ז. 040128084. (פרטים בתביעה) (נוסעת רכב ההודמה)

ת.א. 8379/01 ציון

69. , מז"פ – תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה +
דו"ח תפיסה וסימון]
70. , מת"מ – תחנת ציון. [מגיש טופס לוואי למוצגים]
71. המעבדה הניידת, מז"פ, מטא"ר – ירושלים. [מגיש דו"ח
בדיקת רכב – תפיסת שרידי קלע]
72. , מת"מ – תחנת ציון. [מגיש טופס לוואי למוצגים]
73. משרד מוצגים – מז"פ, מטא"ר – ירושלים. [מגיש תע"צ –
קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
74. רס"ן יוסי בן ישראל, מ.א. 44771, משרד מוצגים – מז"פ, מטא"ר – ירושלים. [מגיש תע"צ
– קבלת מוצגים לבדיקה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
75. מעבדת נשק, מז"פ, מטא"ר – ירושלים. [מגיש שני חוו"ד מומחה מתיק
מז"פ זב/ 07–/4723/01] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
76. [מוצאת תרמילים בשטח – שרשרת ראיות]
77. מלכה כהן, ת.ז. 038791386. (פרטים בתביעה) (נפצע בפיגוע)
78. פנחס כהן, ת.ז. 038348256. (פרטים בתביעה) (נפצע בפיגוע)
79. (פרטים בתביעה) (עד ראיה – טיפול בפצועים)
80. ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של
פנחס כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
81. , ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של
מלכה כהן] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)

ת.א. 39/02 בנימין

82. , סיור – תחנת בנימין. [מגיש דו"ח פעולה]
83. תחנת בנימין. [מגיש זכ"יד תחקור/תפ"יסה וסימון]
84. מז"פ יהודה. [מגיש לוחות תצלומים + אסף תרמילים
בזירת האירוע]
85. המעבדה הניידת, מז"פ, מטא"ר – ירושלים. [מגיש לוחות
תצלומים + דו"ח בדיקת רכב]
86. תחנת בנימין. [מגיש טופס לוואי למוצגים]
87. משרד מוצגים – מז"פ, מטא"ר – ירושלים. [מגישה תע"צ –
קבלת מוצגים לבדיקה] (תזומן לפי דרישה מפורשת של הסניגוריה בלבד)
88. צהי"ל. (פרטים בתביעה) [עדות – קביעת מותה של יעאלה
רן ז"ל + טיפול בפצועה]
89. ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת רופא –
סילום מחנה של רשל (רחל) עיני] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)
90. רחל (רשל) עיני, ת.ז. 075966614. (פרטים בתביעה) (נפצעה בפיגוע)
91. (פרטים בתביעה) (עדות + סקירצ'ה) (עד ראיה)
92. (פרטים בתביעה) (זיהוי ההרוגה)

ת.א. 502/02 ציון

93. מת"מ – תחנת ציון. [מגיש דו"ח זכ"יד, תפיסה וסימון]
94. , מת"מ – תחנת ציון. [מגיש דו"ח תפיסה וסימון]
95. , מת"מ – תחנת ציון. [מגיש זכ"יד, תפיסה וסימון + תצלומים]

31

ת.ת. 444/02 מתוקן



96. ████████, מת״מ - תחנת ציון. [מגיש דו״ח פעולה - מציאת צולבנ]
97. תשאול - תחנת ציון. [מגיש דו״ח תפיסה וסימון]
98. ████████ (פרטים בתביעה) [עד ראיה - רדף אחרי המחבל]
99. מני״ב ירושלים. (עד ראיה - רדף אחרי המחבל וירה לעבר המחבל]
100. ████████, יחב״ש 2 - תחנת ציון. (עד ראיה - ירה לעבר המחבל]
101. ████████, ימ״יר ירושלים. (עד ראיה - רדף אחרי המחבל וירה לעבר המחבל]
102. ████████, יס״מ אופנועים - תחנת שלם. (עד ראיה - רדף אחרי המחבל, הרחיק את נשקו של המחבל לאחר שחמבלה נהרג]
103. ████████. (פרטים בתביעה) (עד ראיה - מאבטח שהיה במקום - ירה לעבר המחבל ופגע בו]
104. ████████ - בילוש - ימ״יר ירושלים. (עד ראיה - רדף אחרי המחבל, ירה לעבר המחבל]
105. ████████, בילוש - ימי״ר ירושלים. (עד ראיה - ירה לעבר המחבל]
106. ████████ (פרטים בתביעה) (עד ראיה - נהג אוטובוס ״אגד״ שהיה במקום הפיגוע]
107. ████████. (פרטים בתביעה) (עד ראיה)
108. ████████ (פרטים בתביעה) (עד ראיה)
109. ████████. (פרטים בתביעה) (עד ראיה)
110. ████████. (פרטים בתביעה) (עד ראיה)
111. ████████ (פרטים בתביעה) (עדת ראיה)
112. ████████. (פרטים בתביעה) (עד ראיה)
113. ████████ (פרטים בתביעה) (עד ראיה)
114. ████████. (פרטים בתביעה) (עד ראיה - ראה את המחבל מגיע למקום הפיגוע ברגל]
115. ████████ (פרטים בתביעה) (זיהוי גופתו של אורה (סבטלנה) סנדלר זייל]
116. ████████, ביה״ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של אורה (סבטלנה) סנדלר זייל (תזומן לפי דרישה מפורשת של הסניגוריה בלבד]
117. ████████, ביה״ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של שרה המבורגר זייל (תזומן לפי דרישה מפורשת של הסניגוריה בלבד]
<u>רשימת עדים נוספת בנוגע לפצועים בפיגוע ברחוב יפו ביום 22.01.02 ותעודות רפואיות הקשורות לפצועתם תימסר במהלך המשפט</u>

**פ.א. 483/02 שפט**

118. ████████ מת״ם ימ״יר ירושלים. [מגיש דו״ח תפיסה וסימון]
119. ████████ מת״ם ימ״יר ירושלים. [מגיש לוח צלומים + שני טפסי לוואי למוצגים]
120. ████████ - זיהוי ציון. [מגיש דו״ח תפיסה וסימון + דו״ח ביקור בזירת העבירה + העברת המוצגים למז״פ - מטא״ר]
121. ████████ יחידת סיור 4, תחנת ציון. [מגיש דו״ח תפיסה וסימון]
122. ████████, מעבדת נשק, מז״פ, מטא״ר - ירושלים. [מגיש חו״ד מומחה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
123. ████████, ביה״ח הר-הצופים, ירושלים. [מגיש הודעת פטירה] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
124. ████████ (פרטים בתביעה) [השתלט על המחבל, נפצע בפיגוע]
125. ████████. (פרטים בתביעה) [השתלט על המחבל]
126. ████████ (פרטים בתביעה). [השתלט על המחבל]
127. ████████. [עד ראיה]
128. ████████ (פרטים בתביעה) (עד ראיה)
129. סטס קריסינסקי, ת.ז. 304389240. (פרטים בתביעה) [נפצע בפיגוע]
130. לישאור סקירזה, ת.ז. 032087587. (פרטים בתביעה. [נפצע בפיגוע]
131. קרן קדמי, ת.ז. 032777716. (פרטים בתביעה. [נפצע בפיגוע]
132. אדם גרפולד, ת.ז. 011935426. (פרטים בתביעה) [נפצע בפיגוע]
133. אלי אוחנה, ת.ז. 033404773. (פרטים בתביעה) [נפצע בפיגוע]
134. עמיחי זהאן, ת.ז. 039243944. (פרטים בתביעה) [נפצע בפיגוע]

ת.ת. 444/02 מתוקן

135. תמרה ליפשיץ פיש, ת.ז. 306706318. [פרטים בתביעה) [נפצעה בפיגוע]

**ס.א. 4258/02**

136. ▇▇▇ מתנדב ביחידת סיור ירקון. [פרטים בתביעה] [שתי
עדויות, היה בידה עם סלים ברכאת ז"ל]
137. ▇▇▇, זיהוי ירקון, משטרת ישראל.
138. ▇▇▇ קצין אחו"ק ירקון.
139. ▇▇▇, צחי"מ ירקון.
140. ▇▇▇ [פרטים בתביעה] [עד ראיה - היה בתוך המסעדה]
141. ▇▇▇ [פרטים בתביעה] [מאבטח במסעדה, נפצע בפיגוע]
142. ▇▇▇ [פרטים בתביעה] [מאבטח במסעדה]
143. ▇▇▇ [פרטים בתביעה] [עד ראיה]
144. ▇▇▇ [פרטים בתביעה] [עדות ראיה]
145. ▇▇▇. [פרטים בתביעה] [עדות ראיה]
146. שלמה דוד, ת.ז. 00022280. [פרטים בתביעה] [נפצע קשה בפיגוע מדקירת סכין]
147. ▇▇▇ [פרטים בתביעה] [עדות ראיה, נפצעה בפיגוע]
148. ▇▇▇ [פרטים בתביעה] [עד ראיה, נפצע בפיגוע]
149. ▇▇▇ [פרטים בתביעה] [עד ראיה, נפצע בפיגוע]
150. אילונה ריכטמן, ת.ז. 309998540. [פרטים בתביעה] [נפצעה בפיגוע]
151. ▇▇▇ [פרטים בתביעה] [ראה את הרכב שבו הגיע המחבל]
152. ▇▇▇ [פרטים בתביעה] [עדות ראיה]
153. ▇▇▇ [פרטים בתביעה] [עד ראיה, נפצע בפיגוע]
154. ▇▇▇ [פרטים בתביעה] [עד ראיה - עדות + שרטוט זירת האירוע]
155. ▇▇▇. [פרטים בתביעה] [עד ראיה]
156. ▇▇▇ [פרטים בתביעה] [עד ראיה]
157. ▇▇▇ [פרטים בתביעה] [עד ראיה]
158. ▇▇▇ [פרטים בתביעה] [עד ראיה]
159. ▇▇▇ [פרטים בתביעה] [עד ראיה]
160. ▇▇▇ [פרטים בתביעה] [עד ראיה]
161. ▇▇▇ [פרטים בתביעה] [עד ראיה - שתי עדויות - ראה את המחבל

דוקר אנשים]
162. ▇▇▇. [פרטים בתביעה] [זיהוי גופתו של יוסף חבי ז"ל]
163. נעם אספרי, ת.ז. 031877665. [פרטים בתביעה] [נפצע בפיגוע]
164. יוסי אזוז, ת.ז. 029416740. [פרטים בתביעה] [נפצע קשה בפיגוע]
165. מיכל גרובר, ת.ז. 043401140. [פרטים בתביעה] [נפצעה בפיגוע]
166. ▇▇▇ המכון הלאומי לרפואה משפטית, תל אביב. [מגיש חוו"ד מומחה] [יוזמן
לפי בקשת מפורשת של הסניגוריה בלבד]
167. ▇▇▇ רשומות בתי חולים - רשומות מוסדית.

__רשימת עדים נוספת בנוגע לפצועים והרוגים בפיגוע במסעדה "סי-פוד מרקט" בתל-אביב ביום__
__05.03.02 וזימנם במהלך המשפט__

**ס.א. 568/02 שפט**

168. מג"ב. [פרטים בתביעה] [עדות ומגיש דו"ח פעולה]
169. ▇▇▇ מג"ב [הפרטים בתביעה].
170. ▇▇▇ מג"ב [הפרטים בתביעה].
171. ▇▇▇, זיהוי - תחנת ציון. [מגיש 2 דו"חות תפיסה וסימון + מוצגים
מכרטיס לרישום מוצגים מס' 294/02].
172. ▇▇▇, תחנת ציון - חבלה. [מגישה דו"ח פעולה]
173. ▇▇▇, מז"פ - מעבדת חבלה, מטא"ר, ירושלים. [מגיש חוו"ד
מומחה בצירוף טפסי לוואי למוצגים] [יוזמן לפי בקשת מפורשת של הסניגוריה בלבד]
174. ▇▇▇ משרד מוצגים - מז"פ, מטא"ר, ירושלים. [מגיש
תע"צ - קבלת מוצגים לבדיקה] [יוזמן לפי בקשת מפורשת של הסניגוריה בלבד]
175. ▇▇▇ המכון הלאומי לרפואה משפטית, תל אביב. [מגיש חוו"ד מומחה] [יוזמן
לפי בקשת מפורשת של הסניגוריה בלבד]

**ס.א. 783/02 בנימין**

176. ▇▇▇, תחנת בנימין. [מגיש דו"ח פעולה]

33

ת.ס. 444/02 מתוקן

177. , זיהוי יחודה. [מגיש דו"ח ביקור בזירת עבירה + לוח תצלומים]

178. , תחנת בנימין. [מגיש טופס לוואי למוצגים + זכ"ד + מוצגים מכרטיס מס' 106/02]

179. סמיר קרש, ת.ז. 080062771. (פרטים בתביעה) [נפצע בפיגוע הירי]

180. , בי"ח הדסה עין-כרם, ירושלים. [מגיש דו"ח רפואי] (יזומן לפי דרישה מפורשת של הסניגוריה בלבד)

181. שאילתא לאיתור והקרעת פרטי רכב ובעליו [רשומה מוסדית].

מיכאל קופצ'אק
ורב סרן
צבאי

תאריך: 29.09.2002
סימוכין: 02-444 מתוקן

34

ת.ת. 444/02 מתוקן

P 5: 208