12-AUG-2009 10:26 From:HANA EZRA COHEN 036131323 To:029999838 P.5/12

תאריך: א' אב, תשס"ג
30 יולי, 2003

מספר התיק: 3459/02

# בית המשפט הצבאי
## - יהודה -
## פרוטוקול

---

דיון בימ"ש מיום: 30/07/2003

בפני אב"ד: סא"ל נתנאל בנישו
שופט: סרן מנחם ליברמן
שופט: סרן שלמה כץ

התביעה הצבאית: סרן מיכאל קוטליק וסרן ראיד שנאן
סניגוריה: עו"ד אחמד צפיה - נוכח

**נאשם: אחמד טאלב מוצטפא ברגותי ת.ז: 994466860 / שב"ס - נוכח**

מתורגמן: סמ"ר מוחמד נסראלדין
רשמת: רב"ט סיון שמש

---

**אבה"ד פותח את הישיבה ומזהה את הנאשם.**

**<u>מהלך הדיון</u>**

תובע: אין ראיות לעונש.

סניגור: אין ראיות לעונש.

תובע מסכם: היום עומדת בפני בית המשפט משימה לא קלה והיא לגזור את דינו של הנאשם. משימה זו, אינה קלה אף פעם, אבל היום היא קשה פי כמה וכמה. הנאשם, שעומד היום בפני ביהמ"ש, גרם במעשיו למותם של 12 אזרחים חפים מפשע. כתוצאה ממעשי הנאשם נפצעו עשרות רבות של אזרחים. מי שעומד היום לדין, הוא נכון להיום, בן 27 בלבד. בן 27 אשר במהלך שנתיים קטל חיים של 12 אנשים נוספים בגילאים שונים. הנאשם עמד בראש אחד ארגוני הטרור באיזור, ארגון שהופיע רק לאחר תחילת אירועי גאות ושפל, הכוונה לגדודי 'חללי אלאקצא'. הנאשם פיקד על הארגון באיזור רמאללה. הנאשם דאג לספק כספים וכלי נשק לפעילי הארגון על מנת שיבצעו באמצעותם פיגועים קטלניים בכבישי האיזור בסמוך לרמאללה ובתוך ירושלים. החל מתחילת שנת 2002 ועד לתחילת מבצע חומת מגן אשר במהלכו נעצר הנאשם, הנאשם פעל במרץ רב על מנת להוציא אל הפועל פיגועי התאבדות בתוך מדינת ישראל. בחלק מן הפיגועים, הנאשם הצליח, אם אפשר להגדיר מותם של אזרחים חפים מפשע כהצלחה, וחלק מן הפיגועים לא בוצעו מסיבות שונות. התביעה הצבאית מבקשת להשית על הנאשם עונש מאסר נפרד בגין כל אחד ואחד מן האזרחים שאת חייו קטל הנאשם. כמו כן, התביעה הצבאית מבקשת להשית על הנאשם עונש מאסר עולם נוסף ונפרד בגין כל יתר העבירות בהן הורשע, וביניהן, פציעתם של עשרות אנשים. דהיינו, התביעה הצבאית עותרת לעונש של 13 מאסרי עולם אשר ירוצו באופן מצטבר זה לזה. בקשתה של התביעה מסתמכת הן על פסיקתו של ביהמ"ש העליון בישראל, הן על פסיקתו של בימ"ש זה, אשר לצערנו נאלץ לדון לא פעם בעניינם של מחבלים כאלה ואחרים. ברצוני להפנות את ביהמ"ש לפסקי הדין בעניינם של נדאל זלום ועמי פופר למדינת ישראל (ע"פ 399/89, ע"פ 1742/91) וכן לגזרי דין שנתנו ע"י בימ"ש זה בתיק 3250/02 ובתיק

תאריך: א' אב, תשס"ג
30 יולי, 2003

מספר התיק: 3459/02

3251/02. לעניין הצטברות העונשים, התביעה הצבאית מפנה את ביהמ"ש לע"פ 6535/01 של ביהמ"ש העליון בישראל. ברור כי שום עונש אשר אותו יטיל ביהמ"ש לא יוכל להחזיר לנרצחים את חייהם, לא יוכל להשיב לפצועים את בריאותם ולא יוכל להרגיע את כאבם של המשפחות השכולות. עדיין ביהמ"ש הוא הגורם היחידי בעולם אשר יכול לעשות צדק ואשר יכול להביע בגזר דינו את יחסה של החברה כולה כלפי הנאשם ואנשים דומים לו. התביעה הצבאית מבקשת כי ביהמ"ש יסתכל על כל אחד ואחד מן המעשים הרבים אותם בצע הנאשם. התביעה הצבאית מבקשת כי ביהמ"ש יקח בחשבון ש- 12 אנשים כבר לא חיים באותו עולם. אין בימ"ש יכול לנקום את דמם, אך ביהמ"ש יכול בגזר דינו להתייחס לערך של קדושת החיים, שמדברים עליו הרבה, כשאדם חי, אך ערך זה מקבל משנה תוקף לאחר שאדם אחר נוטל את חייו בזדון. אין לי אלא להפנות לדברי כב' השופט חשין בענייננו של עמי פופר. התביעה הצבאית חוזרת על בקשתה לגזור על הנאשם 13 מאסרי עולם אשר ירוצו באופן מצטבר זה לזה.

סניגור מסכם: הנאשם טען בתחילת משפטו שהוא לא מכיר בסמכות ביהמ"ש לשפוט אותו. נתנה החלטה מטעם ביהמ"ש. הנאשם ביקש ממני לא לטעון היום לעונש. הוא עדיין עומד על מה שטען בתחילת משפטו. אני מקווה שימים אלה יחלפו ויהיה שלום בין העמים.

הנאשם בדברו האחרון: אני אומר שעל שרון צריך להטיל עונש מוות בבימ"ש זה. אני לא מתחרט.

תיק מסי: 3459/02

תאריך: א' אב, תשס"ג
30 יולי, 2003

**בית המשפט הצבאי**
**יהודה**
**- פרוטוקול -**

---

בפני אב"ד: סא"ל נתנאל בנישו
שופט: סרן מנחם ליברמן
שופט: סרן שלמה כץ

דיון בית משפט מיום: 30/07/2003

**נאשם: אחמד טאלב מוצטפא ברגותי ת.ז.: 994466860 / שב"ס - נוכח**

---

## גזר-דין

נגד הנאשם הוגש, ביום 1/10/02, כתב אישום מתוקן בו יוחסו לו לא פחות מחמישים ושלושה סעיפי אישום, המשתרעים על פני שלושים וארבע עמודים.

תחילה, כפר הנאשם בסמכות בית משפט זה ואף נראה היה, לאחר שדחינו את טענותיו המקדמיות בעניין זה, כי מתכוון הוא לכפור באשמות אשר יוחסו לו. אולם ביום 15/5/03 הודיעו הנאשם ובא כוחו כי מבקשים הם להודות בכתב האישום כלשונו.

אי לכך, הורשע הנאשם ע"פ הודאתו, וכל שנותר לנו הוא לקבוע את עונשו.

שמענו בקשב רב את טענות התובע. התובע ציין כי על אף העובדה כי הנאשם הינו רק בן 27 שנים הספיק במעשיו, כראש גדודי 'חללי אלאקצא' באיזור רמאללה לזרוע הרס רב. התובע הדגיש את הצורך לייחס חשיבות רבה לערך קדושת החיים ולבטא בענישה ראויה את האובדן לו גרם הנאשם במעשיו, אשר כתוצאה מהם קיפחו חייהם שניים עשר ישראליים ועשרות נוספים נפצעו. אשר על כן, ביקש התובע כי יוטלו על הנאשם 13 עונשי מאסר עולם מצטברים.

הסניגור המעיט במילים ומסר כי ע"פ בקשת הנאשם הוא נמנע מלטעון לעניין העונש. עם זאת, ציין כי הנאשם עומד על טענתו לפיה אינו מכיר בסמכות בימ"ש זה לשפטו.

הנאשם בדברו האחרון הודיע כי אינו מתחרט על מעשיו.

יאמר מיד כי כבר נתנו את דעתנו בהרחבה אודות טענת הנאשם לפיה אין אנו מוסמכים לדון בעניינו. לאחר שניתחנו את הוראות הדין הבינלאומי והוראות הדין הפנימי התחוור, בצורה שאינה משמעת לשני פנים, כי לא רק שבימ"ש זה מוסמך לדון את את הנאשם, אשר ביצע פעולות טרור במקומות עליהם פורש בימ"ש זה את סמכותו, אלא שאין הוא אף ראוי למעמד של שבוי מלחמה, לאור העובדה כי המעשים אותם ביצע, בוצעו בניגוד גמור לדיני מנהגי המלחמה, כאשר הופנו כלפי אזרחים תמימים. מכל מקום, נסיונותיו של הנאשם לצייר את מעשיו הנוראיים בצבעים רומנטיים של מאבק פוליטי, לא יצלחו. טרור הוא טרור הוא טרור, ורצח אזרחים חפים מפשע- לא תסבול הדעת.

חומרת מעשיו של הנאשם כה רבה עד כי נדמה שלא יהא בכוחם של מילים, נוקבות ככל שיהיו, כדי לבטא את תחושתנו הקשה למקרא תיאורם בכתב האישום.

קראנו חזור ושנו במשך משפט זה ובמיוחד לקראת הליכו האחרון, הוא הוא גזר הדין, את תאור מעשיו הנוראים של הנאשם, וככל שהעמקנו בו, הלכה וגברה תחושתנו האמורה לפיה אנו, כיתר בני החברה האנושית, עומדים חסרי אונים, שהרי לא יהיה בעונש חמור ככל שיהיה כדי להחזיר הגלגל לאחור ולהשיב למתים את חייהם ולפצועים את בריאותם.

הנאשם שימש, החל משנת 1996 ועד למעצרו, כנהגו ושומר ראשו של מרואן ברגותי, הלא הוא ראש ה'תנזים' של ארגון הפת"ח. מכח תפקיד זה הפך הנאשם למוציא ולמביא אצל מעבידו, עמד בקשרים הדוקים עם ראשי 'גדודי חללי אל אקצא', הזרוע הצבאית של ה'תנזים' ברחבי האיזור, ואף שימש איש הקשר בינם לבין מרואן ברגותי.

אך טבעי היה, לנוכח מעמדו זה, כי הנאשם יהפוך במהרה לכתובת לאספקת אמצעים וכלי נשק לטרוריסטים אשר ביקשו לבצע פיגועים נגד ישראלים. במיוחד קשר הנאשם קשרים הדוקים עם מספר פעילים מאיזור רמאללה, שפעלו כחוליה אשר נהגה, בסיועו הפעיל של הנאשם, לבצע פיגועי ירי בכבישי ירושלים ובכבישים הסמוכים לה. כך עירב עצמו הנאשם, תחילה ברציחת אלעזר עקיבא פשקוס ז"ל אשר נורה בסמוך לאיזור התעשיה עטרות ביום 25/01/01, חודש לאחר מכן בפציעתו הקשה של יוסף כהן באיזור עטארה, בגרימת מותם של בני הזוג שרון ויניב בן שלום ז"ל, פציעת אחת מילדותיהם והריגתו של דורון יוסף סוורי ז"ל ביום 25/08/01 בכביש 443, ברציחתו של מאיר וייסבויז ז"ל ופציעתו הקשה של חברו משה וייס, עת נסעו בסמוך לשכונת רמת שלמה בצפון ירושלים ביום 15/09/01, בפציעתם של מלכה ופנחס כהן ביום 03/10/01 כשנסעו באותו הכביש וברציחתה של יואלה חן ז"ל ופציעתה של רחל עיני, כשהשתיים עצרו בתחנת הדלק בסמוך לגבעת זאב. בין לבין היה הנאשם מעורב, בדרך זהה, בירי פצצות מרגמה וירי מנשק אוטומטי לעבר הישוב פסגות, נסיון לבצע פיגוע ירי בגבעה הצרפתית וירי לעבר רכב פרטי בכביש ע"ש בגין בירושלים. הנאשם אף סיפק את כלי הנשק ששימשו שלושה פעילי 'תנזים' נוספים לביצוע פיגוע ירי בכביש בית אל- פסגות ביום 17/03/02, פיגוע בו נפצע קשה סמיר קרש. מיותר לציין כי ברבים מן המקרים פעל הנאשם בידיעתו ובברכתו של מפקדו מרואן ברגותי.

אך, אם בתחילת דרכו הסתפק הנאשם במתן סיוע לוגיסטי לחוליות הרצח של גדודי 'חללי אל אקצא', נראה כי לא היה במעשים אלה, חמורים ככל שיהיו, כדי לספק את רצונו להרס. על כן, עד מהרה, העמיק הנאשם את מעורבותו בטרור והפך ליוזם, מתכנן ומוציא אל הפועל של פיגועי התאבדות קטלניים.

היה זה תחילה בחודש ינואר 2002, עת פנה הנאשם לפעיל בכיר ב'גדודי חללי אל אקצא' מאיזור שכם, נאצר עוויס, וביקש ממנו להעביר לאחריותו אדם החפץ לבצע פיגוע התאבדות. ימים ספורים לאחר מכן התיצב סעיד רמדאן והודיע לנאשם שנשלח לבצע פיגוע כאמור, הנאשם דאג לכל מחסורו של האיש, סיפק לו נשק ותחמושת והסדיר את הובלתו ע"י אנשים הסרים למרותו, תוך שהוא מדריך אותו כי בהגיעו לירושלים יהא עליו לפתוח באש לעבר אזרחים בכוונה לגרום למותם עד שהוא עצמו ייהרג. בתום ההכנות הנדרשות הובילו אנשי הנאשם את המתאבד לרחוב יפו בירושלים, שם ירה עשרות כדורים לעבר העוברים ושבים וכתוצאה מכך גרם למותן של אורה סנדלר ז"ל ושרה המבורגר ז"ל ולפציעת למעלה מ-45 נוספים.

תאריך: א׳ אב, תשס״ג
30 יולי, 2003

תיק מס׳: 3459/02

ימים מועטים לאחר מכן, מצא הנאשם מועמד נוסף לביצוע פיגוע התאבדות דומה בירושלים. על כן, החל שוב הנאשם בהכנות הנדרשות. הנאשם פנה לפעילים אחרים בגדודי ׳חללי אל אקצא׳, איתם עמד בקשר וסיכם עימם כי יובילו את המחבל המתאבד שיצוייד ברוס״ר M16 לירושלים, על מנת שגם הוא יירה כאמור. הנאשם מסר לחבריו רכב ואלה יצאו לדרכם בחברת המתאבד ובברכת הנאשם. בהגיעם לאיזור שועפט הודיע המחבל כי מבקש הוא להתפלל במסגד בטרם יבצע את הפיגוע. אשר על כן נכנס למסגד שהיה בדרכם והמובילים המשיכו לשכונת גבעת שאול על מנת לאתר מקום מתאים להוצאת הפיגוע לפועל. אולם משחזרו לאסוף את המפגע גילו כי זה עזב את המקום.

זו לא היתה הפעם היחידה שתוכניותיו של הנאשם לא צלחו מנקודת ראות עיניו, ובחודש פברואר 2002 בלבד כשלו נסיונותיו של הנאשם לשלוח ארבעה מתאבדים נוספים, לאחר שאחד מהם ברח, שניים נעצרו על ידי כוחות הביטחון ובמקרה נוסף היו אלו שותפיו של הנאשם למזימה שנעצרו.

עם זאת מסע ההרג של הנאשם לא תם וכבר במחצית חודש פברואר 2002, שם את ידיו על צעיר נוסף שהביע נכונות לבצע פיגוע התאבדות. לאחר שהנאשם הכינו לשם ביצוע מעשה זה, צילם אותו במצלמת וידאו, ציידו בנשק אוטומטי וברימון יד והוביל אותו באמצעות עושי דברו לשכונת נווה יעקוב בירושלים, פתח זה האחרון בירי לכל עבר אשר כתוצאה ממנו נהרגה השוטרת גלית ארביב ז״ל, בעת שהסתערה לעברו, ונפצעו שמונה נוספים.

לא חלפו שבועיים ושוב הגיע לנאשם מחבל מתאבד נוסף שנשלח על ידי פעיל תנזים משכם. גם אותו הכין הנאשם למשימתו הנלוזה ולאחר שדאג לו לבגדים, לתספורת וצילם אותו במצלמת וידאו, שלח אותו לדרכו חמוש בנשק אוטומטי וברימוני יד ומלווה באנשיו, להם הורה להובילו אל תוך שטחי מדינת ישראל. העיר תל אביב נבחרה הפעם כמטרה. בהגיעם למסעדת ה״סי פוד מרקט״, מסרו המובילים למתאבד סכין והורידו אותו מן הרכב, המתאבד השליך את הרימונים, ירה לעבר המסעדה ודקר אזרחים שהיו במקום. כתוצאה ממעשים אלו נרצחו שלושה- רס״ר סלים ברכאת ז״ל, יוסף הבי ז״ל ואליהו דהן ז״ל ואף נפצעו עשרות נוספים.

בתחילת חודש מארס פנה שוב נאצר עוויס לנאשם וביקש ממנו להפגש עם לואי עודה ששוחרר מן הכלא של הבטחון המסכל זמן קצר קודם לכן. בפגישה זו ביקש לואי מן הנאשם למסור לו חגורת נפץ ולמצוא מקום לינה עבור מחבל מתאבד שנמצא ברשותו. לואי מצידו, דאג לסדרי הובלת המחבל לירושלים וקבע את היעדים האפשריים לפיגוע בשכונת רמת אשכול. הנאשם הלין את המחבל בדירה אותה שכר. ביום 08/03/02 סיפק לו הנאשם חגורת נפץ ושלח אותו, מלווה באדם נוסף, במונית לכיוון ירושלים. בהגיעם לשכונת בית חנינא, נעצרו השניים ע״י שוטרי משמר הגבול וכאשר ניסה המחבל להפעיל את חגורת הנפץ אותה לבש, נורה ע״י כוחות הבטחון ונהרג.

בהמשך, איתר שוב הנאשם אדם שהיה מוכן לבצע פעולת התאבדות, אך מעצרם של הנאשם ושל נאצר עוויס, שהיה גם הוא מעורב בתכנון פיגוע זה, מנע הוצאתו אל הפועל.

הנאשם אף סחר באמצעי לחימה בהיקף רב, מימן את ייצורם של מטעני חבלה והלין את שני פעילי החמאס שעמדו מאחורי פיגוע התופת במסעדת ׳סבארו׳ בירושלים, לאחר שאלה שוחררו מכלא הרשות הפלסטינית, כשגם כאן מעשים אלה בוצעו בידיעה, בברכה ובסיוע של מפקדו מרואן ברגותי.

P 5: 214

תאריך: א׳ אב, תשס״ג
30 יולי, 2003

תיק מס׳: 3459/02

ימים טרופים הם הימים העוברים עלינו, ומאז פרצו האירועים האלימים בחודש ספטמבר 2000, הלכו והתגברו השנאה וההרג אשר זורים אויבינו בדרכים ובערים. מולנו ניצב אויב חסר מצפון שתאוותו אחת, רצח ללא אבחנה. כך היה הנאשם אשר פתח במסע הרג מתוכנן בדקדקנות שלולא מעצרו ע״י כוחות הבטחון, סופו מי ישורנו.

הנאשם עמד בראש מכונת הרג משומנת היטב, אותה דאג להזין כל העת, פעמים באמצעים טכניים בלבד ופעמים בחומר בעירה אנושי והכל במטרה אחת ויחידה- להשמיד, להרוג ולאבד ישראליים באשר הם. הנאשם לא בחל בשום אמצעי, לא חס על איש והפעיל את זרועות התמנון של ארגונו, הידוע לשמצה, הפרוסות ברחבי האיזור, כדי לגייס ולהפעיל מפגעים רבים ככל שניתן.

כה עז היה רצונו של הנאשם לפגוע באזרחים תמימים, נשים, גברים וטף, ללא רחם, עד כי נתעורר בנו ספק אם אמנם הינו מבין בני האנוש או שמא צמאונו לשפוך דם הורידו לדרגה כה שפלה שאין הוא ראוי יותר לכינוי זה.

לא מעשי גבורה הם מעשי הנאשם, כפי שאולי יטעו חלק מתושבי האיזור לחשוב, אלא מעשים שפלים של מוג לב שחיפש לפגוע, פעם אחר פעם, בחשופים ביותר מבלי שהסתכן כלל ועיקר, מאחר שעשה שימוש ציני באחרים מבני עמו.

רב עבריינים כנאשם, על אף שלא הכתים את ידיו בדם, אחריותו אינה נופלת ואולי אף עולה על זו של אלה אותם שלח לפגוע (וראה דברי הרמב״ם ביד החזקה, הלכות רוצח בשמירת נפש, פרק ב׳, הלכה ב׳).

וכבר עמדו רבותינו על החומרה המיוחדת שבעבירת הרצח, כאשר קבעו כי יש בה:

**״... השחתת יישובו של עולם... וכל מי שיש בידו עוון זה הרי הוא רשע גמור״.**

**(רמב״ם הנ״ל, פרק ד׳ הלכה ח)**

מוצאים אנו עוד להדגיש, בהתאם למסורת בני התרבות מקדמת דנא, כי בניגוד לנאשם, לנו קדושת החיים מהווה ערך עליון, המעמיד את האדם כעולם מלא, כיציר בעל רצונות ומאווים, דעה והשקפה, שאיפות, חלומות כמו גם תקוות וחזון, אשר קטיעתם בטרם עת הינה פשע בל יסולח. ודי אם נזכיר את אמרתם הידועה של חז״ל לפיה:

**״לפיכך נברא אדם יחידי ללמדך שכל המאבד נפש אחת מעלה עליו הכתוב כאילו איבד עולם מלא״.**

**(מסכת סנהדרין דף ל״ז)**

הפכנו והפכנו למצוא בפרשה שלפנינו ולו קורט אחד של אנושיות מצד הנאשם, אולם לאל היו מאמצינו. נטילת חייהם של שניים עשר אזרחים חפים מפשע, והתרסתו של הנאשם כי אינו מתחרט על מעשיו, סתמה את הגולל על נסיוננו זה.

לנוכח האמור, איננו רואים כל קושי להעתר לבקשת התביעה הצבאית.

P 5: 215

תאריך: א׳ אב, תשס״ג
30 יולי, 2003

תיק מס׳: 3459/02

את הנעשה אין להשיב ואולם לא נוכל להשאר אדישים למשמע קול דמי אחינו הזועקים אלינו מן האדמה. לנוכח הסבל הנוראי אותו גרם לקורבנות, לפצועים ולבני משפחותיהם מותר לנו לתמוה בקול, האם לא ראוי היה להשיב לו מידה כנגד מידה ולהביא אל סיומם של חיים אשר בחלקם הבוגר הוקדשו להרס אכזרי של החברה האנושית.

קריאתנו זו, על אף שתוותר תאורטית בלבד במקרה הנוכחי בו מונעות הוראות סעיף 47(א)(8) לצו בדבר הוראות בטחון, תש״ל- 1970, מיצוי הדין עם הנאשם, אינה קול בודד. במקום אחר, קבע בימ״ש זה כדלקמן:

**״ימים קשים הם הימים בהם אנו חיים, במרכזם הולכת ופושה תופעה לפיה קידשו רבים את הפגיעה בנפש והפכוה מפסולה, נלוזה ומתועבת, לראויה ומשובחת בעיני עצמם ואף בעיני חלק מהציבור באזור. היפוך יוצרות זה מחייב לדעתינו חשיבה מחודשת באשר למושכלות יסוד בתורת הענישה כפי שנהגה בבתי המשפט באזור.**

**...האין יהא ראוי, לאחר שמאות אזרחים תמי לב קיפחו חייהם בידי בני עוולה, חסרי כל רגש אנושי בסיסי, כי תבחן בצורה מעמיקה האפשרות לנהוג עם המרצחים מידה כנגד מידה.״**

**(תיק בית אל 3255/02)**

ואף בביהמ״ש הצבאי בשומרון נקבע במשפטם של מתכנני הפיגוע במלון ׳פארק׳ בנתניה:

**״שאלנו עצמנו בעיקר האם לא הגיעה השעה לממש את הסמכות הנתונה בידי בית המשפט הצבאי ולגזור על הנאשמים את העונש הקצוב בצד העבירה אותה ביצעו, עונש מוות?**

**...אם מקרה זה אינו מצדיק את הטלת העונש הקבוע בצידו, איזה מקרה כן ראוי לו? הגיעה השעה לבחון, לדעת אותם שופטים, האם האמור בצד סעיף 51 לא הפך ל״אות מתה״ (תרתי משמע)״.**

**(תיק שומרון 6115/02)**

הגענו על כן לכלל דעה, כי המוסר האנושי האוניברסלי מחייבנו, לנוכח הזוועה, להטיל על הנאשם עונש אשר יהא בו מידה של נצחיות וגמול, וידמה, בזעיר אנפין, לסבל ולגורל האכזר שנגזר על הקורבנות ובני משפחותיהם.

רק בהטלת עונשי מאסר עולם מצטברים יהא לבטא בצורה הולמת את קיפוח חיי כל אדם ואדם, שנגדע בטרם עת ע״י הנאשם.

P 5: 216

תאריך: א' אב, תשס"ג
30 יולי, 2003

תיק מס': 3459/02

לנוכח דברינו דלעיל, החלטנו, פה אחד, לגזור על הנאשם את העונשים הבאים:

בגין רציחתו של **אלעזר עקיבא פשקוס ז"ל**, מאסר עולם.
בגין רציחתם של בני הזוג **שרון ויניב בן שלום ז"ל**, שני מאסרי עולם.
בגין רציחתו של **דורון יוסף סוורי ז"ל**, מאסר עולם.
בגין רציחתו של **מאיר וייסבויז ז"ל**, מאסר עולם.
בגין רציחתה של **יואלה חן ז"ל**, מאסר עולם.
בגין רציחתה של **אורה (סבטלנה) סנדלר ז"ל**, מאסר עולם.
בגין רציחתה של **שרה המבורגר**, מאסר עולם.
בגין רציחתה של **השוטרת גלית ארביב ז"ל**, מאסר עולם.
בגין רציחתו של **השוטר סלים ברכאת ז"ל**, מאסר עולם.
בגין רציחתו של **יוסף הבי ז"ל**, מאסר עולם.
בגין רציחתו של **אליהו דהן ז"ל**, מאסר עולם.
בגין יתר העבירות בהן הורשע הנאשם, מאסר עולם.

סך הכל אנו מטילים, על כן, על הנאשם **13 מאסרי עולם שירוצו במצטבר**.

**זכות ערעור תוך 30 יום מהיום.**

**ניתן והודע היום, 30/07/2003, בפומבי ובמעמד הצדדים.**

| | | |
|---|---|---|
| שופט | אב"ד | שופט |