Case 1:04-cv-00397-GBD-RLE    Document 907-86    Filed 05/13/15    Page 1 of 19

**צבא הגנה לישראל**

בבית המשפט הצבאי
ב ש ו מ ר ו ן
בפני הרכב

תיק בימ"ש 6446/02
תיק תביעה 756/02
תיק פ.א. 4968/02 פתח-תקווה
4258/02 ירקון
502/02 ציון
4685/02 תחנת פ"ת

במשפט שבין:

**התובע הצבאי**

**- המאשים -**

**- נ ג ד -**

**אבראהים עדנאן נג'יב עבד-אלחי**

(עצור מיום 3/6/02)

**ת.ז. 411124423** יליד 20/8/79 מכפר בורין

**- הנאשם -**

בית המשפט הצבאי שומרון 12.2002 ל

**כתב אישום (מתוקן)**

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות:

**פרט ראשון:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 84(1)(א) ו- 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במהלך חודש דצמבר 00' או בסמוך לכך, היה חבר בחוליה צבאית השייכת לארגון "כתאאב שוהדאא אלאקצא", שהינה התאחדות בלתי מותרת;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, החליט להצטרף לחוליה צבאית על מנת לפעול במסגרתה בפעילות צבאית נגד מטרות ישראליות.

לשם כך, פנה הנאשם אל חברו ████████████ (להלן- ████), והודיע לו על רצונו לפעול בפעילות צבאית. ████ הנ"ל אמר לנאשם כי ישנה חוליה צבאית השייכת ל"כתאאב שוהדאא אלאקצא", שמבצעת פיגועי ירי והנחת מטעני חבלה נגד מטרות ישראליות. ████ הציע לנאשם להצטרף לחוליה זו, והנאשם הסכים לכך.

C:\WINDOWS\שולחן עבודה\תיקיה חדשה\75602.doc

חברי חוליה זו, שמכונה חוליית "העיר העתיקה", מלבד הנאשם היו:

הנאשם, כעבור שלושה חודשים מיום הצטרפותו לחוליה הצבאית הנ"ל, החליט בעקבות סכסוך אישי שהיה לו עם אחד מחברי החוליה, להפסיק חברותו בחוליה זו.

לאחר שהנאשם עזב את החוליה הנ"ל, נפגש במהלך חודש מרץ 01', בפעיל הצבאי . הנאשם ביקש מ כי יפעל עימו בפעילות צבאית.

הסכים לבקשתו של הנאשם, והכיר לו פעיל הצבאי של "כתאיב שוהדאא אלאקצא"

כאשר הפעילים הצבאיים

ידעו כי הנאשם עובד עם ביקשו ממנו כי יצטרפו לחוליה שאליה משתייך הנאשם. הסכים לצירופם לחוליה.

חברותו של הנאשם בחוליה הצבאית נמשכה עד יום מעצרו.

**<u>פרט שני</u>:**

**<u>מהות העבירה</u>:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באזור, במהלך חודש אוקטובר 01' או בסמוך לכך, ניסה ביחד עם אחר לגרום למותו של אחר בכוונה;

דהיינו, הנאשם הנ"ל, במועד הנ"ל בסמוך לשעות הערב, יצא ביחד עם חברי חוליתו לכיוון מחסום דיר-שרף על מנת לבצע פיגוע חבלני.

אישר לנאשם לבצע את הפיגוע, ומסר לו רובה 16 – M עם שתי מחסניות.

הנאשם וחבריו הנ"ל נסעו למקום המחסום באמצעות רכב מסוג פולקסווגן גנובה.

כשהגיעו בסמוך למקום המחסום במרחק 15 מטר מהמחסום, הפנו את כיוון הרכב לכיוון הנגדי, הנאשם ו פתחו את הדלתות האחוריות וירו באמצעות הרובים לעבר שלושת החיילים שעמדו במחסום, כאשר הרכב בו ישב היה במגמת נסיעה לכיוון שכם.

הנאשם ירה את כל הכדורים שהיו במחסנית לכיוון החיילים, ו גם הוא ירה את כל הכדורים שבמחסנית לעבר החיילים.

החיילים בהתחלה לא הגיבו בירי; אולם, לאחר שהרכב בו נסע הנאשם. היה במרחק 300 מטר, שמעו הנאשם וחבריו קולות ירי.

**פרט שלישי**:

**מהות העבירה**: ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968.

**פרטי העבירה**: הנאשם הנ״ל, באזור, בסוף שנת 01׳ או בסמוך לכך, היה שותף לניסיון גרימת מותו של אדם אחר בכוונה;

דהיינו, הנאשם הנ״ל, במועד הנ״ל, נתבקש ע״י [redacted] פעיל צבאי של ארגון ״שוהדאא אלאקצא״, להשתתף בביצוע פיגוע ירי לעבר כלי רכב ישראלי.

[redacted] אמר לנאשם כי ביצע מעקב אחרי תנועת כלי רכב מסוג סובארו שנהוג ע״י קצין ישראלי.

הנאשם הסכים להצעתו של [redacted]

בהתאם, ארב הנאשם ביחד עם [redacted] בסמוך צומת רוג׳יב, לכלי הרכב שנסע מאיזור אלון מורה לכיוון חווארה.

הנאשם היה חמוש ברובה מסוג M – 16, [redacted] היה חמוש בקלצ׳ניקוב, ו[redacted] היה חמוש במקלע, [redacted] היה חמוש ברובה מסוג M – 16.

כשהתקרב הרכב למרחק כ- 200 מטר מהמקום שבו ארבו הנאשם וחברי החוליה, ירה הנאשם לעברו כ- 2 כדורים, נאצר אלח׳טיב ירה כ- 11 כדורים, ו[redacted] ירה לעברו כ- 10 כדורים.

**פרט רביעי**:

**מהות העבירה**: ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו״ש) (מס׳ 378), תש״ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו״ש) (מס׳ 225), תשכ״ח- 1968.

**פרטי העבירה**: הנאשם הנ״ל, באזור, במהלך חודש ינואר 02׳ או בסמוך לכך, היה שותף לניסיון גרימת מותו של אדם אחר בכוונה;

דהיינו, במועד הנ״ל, ביצעו [redacted] תצפית על קרוואן שנמצא ביישוב הישראלי יצהר. [redacted] למדו מהתצפית כי בכל יום מגיע לקרוואן בן-אדם.

לאחר ביצוע התצפית קשר הנאשם ביחד עם [redacted], [redacted], קשר לבצע ירי לעבר הקרוואן.

הנאשם תיכנן את תוכנית ביצוע הפיגוע, ולפי התוכנית שימש כאחראי על החוליה במהלך ביצוע הפיגוע.

הנאשם יצא ביחד עם החבורה הנ״ל, כשהם חמושים ברובים מסוג M – 16, רובה אנגלי, קלצ׳ניקוב, לכיוון איזור היישוב יצהר.

כשהגיעו למקום, ארבו על גבעה שנמצאת במרחק כ- 300 מטר מהמקום, ושמשקיפה על האיזור.

כעבור שעה הגיע לקרוואן כלי רכב מסוג טנדר פתוח, ושממנו ירדו שלושה אנשים.

כאשר התקרבו האנשים לקרוואן, ירו הנאשם וחבריו לעברם באמצעות כלי הירייה שברשותם. הנאשם ירה כ- 10 כדורים.

לאחר הירי, נמלטו הנאשם וחבריו מהמקום.

**<u>פרט חמישי</u>:**

**<u>מהות העבירה</u>:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970 ; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באיזור, בסוף חודש פברואר 02', ביחד עם אחרים גרם למותו של אדם אחר בכוונה, דהיינו:

1. הנאשם הנ"ל, במועד הנ"ל, כאשר השתתף בהלוויתו של מחמד אחמד מוצטפא אלקאסם נכח בביה"ח רפידיה בשכם, ובמהלך שהותו שם סיפר לו ██████ כי בביה"ח נמצא זאהר תוראבי ז"ל (להלן – **המנוח**). הנאשם סיפר ל██████ אודות כך.
2. לאחר ש██████ שמע על כך, חטף את המנוח מביה"ח. ולאחר-מכן, ██████ סיפר לנאשם כי חקר את המנוח אודות חשדות לשיתוף פעולה לטובת מדינת ישראל, והמנוח הודה בכך, ולכן החליט לרצוח את המנוח.
3. הנאשם ביקש מ██████ כי יפגש עימו בשעות הערב על מנת שיקח אותם למקום מתאים שבו ירצח המנוח. הנאשם נפגש שוב עם ██████ ██████, והיה עימם המנוח. הנאשם וחבריו נסעו, באמצעות כלי רכב מסוג פולקסווגן, לשכונת המהנדסים שנמצאת בסמוך לג'ניד.
4. במקום הנ"ל הוציאו את המנוח מהרכב. הנאשם ביקש מהמנוח כי יתפלל לפני שירצחו אותו, אולם המנוח סירב. הנאשם שאל אותו אם יהיה מוכן לרצוח את הגורם משירות הביטחון הכללי שאחראי עליו, אולם המנוח סירב לכך.
5. ואז ירו ██████ על המנוח כ- 15 כדורים, בכוונה לגרום למותו. לאחר-מכן, התקרב הנאשם אל המנוח, וירה כדור אחד בראשו וזאת כדי לוודא את מותו.
6. כתוצאה מכך, נגרם מותו של המנוח.

7. הנאשם וחבריו הניחו על גופתו של המנוח את "ההודאתו", וכרוז של ארגון "שוהדאא אלאקצא".

**פרט שישי**: (פ.א. 502/02 ציון)

**מהות העבירה**: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה**: הנאשם הנ"ל, באיזור ומחוץ לאיזור, ביום 22/01/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. במהלך עבודתו במשטרה הימית הפלסטינית, הכיר הנאשם את סעיד אברהים רמדאן (להלן – **סעיד**). במהלך אחת הפגישות סיפר סעיד לנאשם כי ברצונו לבצע פיגוע התאבדות, והנאשם ביקש מסעיד כי יתן הזדמנות לבדוק את העניין.

2. הנאשם פנה ל[redacted] והודיע לו אודות כוונות סעיד; והלה הפנה אותו ל[redacted]. הנאשם נפגש עם [redacted], והודיע לו אודות כוונות סעיד. [redacted] ביקש מהנאשם כי יבדוק את כנות כוונות סעיד.

3. הנאשם, במטרה לבחון את סעיד, הלביש אותו בתגורת נפץ "דמה" ונתן לו מספר טלפון דמיוני, שלח אותו מאיזור זוותא לאיזור טול-כרם, וביקש ממנו כי יתקשר אליו בעת הגעתו לאיזור טול-כרם. סעיד לבש את חגורת הנפץ והחל בדרכו לטול-כרם. הנאשם, שמצא שסעיד איתן בדעתו, ביקש ממנו לחזור, באמתלה כי מועד הפיגוע השתנה בשל מחסומי צבא בדרך. סעיד כעס על הנאשם, והלה ביקש ממנו כי יהיה מוכן לבצע את הפיגוע בכל עת.

4. בהתאם, פנה הנאשם ל[redacted] וסיפר לו כי סעיד מוכן לביצוע הפיגוע, והלה ביקש מהנאשם כי יפגישו עם סעיד.

5. במהלך אותה תקופה, פנה [redacted] (להלן – [redacted]) אל [redacted] וביקש ממנו כי ישלח אליו אדם המוכן לבצע פיגוע התאבדות. [redacted] מסר ל[redacted] כי הוא עצמו ידאג להכניס את המחבל המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.

6. הנאשם הביא את סעיד לביתו של [redacted], ובביתו של [redacted] נכח אדם בשם [redacted] ואחר בשם [redacted] [redacted] צילמו את סעיד, [redacted] כתב את צוואתו של סעיד. סעיד הצטלם כשהוא מחזיק עליו רובה מסוג M – 16, ספר קוראן, ומקריא את צוואתו.

7. לאחר-מכן, לקח הנאשם את סעיד למשפחתו, שם נפרד מהם בלי להודיע להם על כוונותיו להתאבד.

8. לאחר-מכן ביקש הנאשם מסעיד כי ביום שלמחרת יצא לרמאללה. וביום

שלמחרת בשעות הבוקר, הבחין הנאשם כי סעיף יוצא לרמאללה.

9. בתאריך 22/1/02, נפגש סעיף הנ"ל עם ███ הנ"ל ברמאללה והודיע לו כי נשלח ע"י ███ לצורך ביצוע פיגוע התאבדות.

10. ███ הנ"ל התקשר אל ███ (מכונה "███") וביקש ממנו להגיע אליו. ███ נפגש עם ███ ועם סעיף ברמאללה. ███ לקחו את סעיף למספרה על מנת שיסתפר לפני ביצוע פיגוע ההתאבדות המתוכנן.

11. לאחר-מכן, התקשרו ███ הנ"ל ו███ אל ███ (מכונה "███") וביקשו ממנו להסיע מחבל מתאבד, בהתכוונם לסעיד, מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע שם פיגוע התאבדות ויגרום למותם של אזרחים ישראליים רבים ככל האפשר.

12. ███ הגיע לרמאללה ביחד עם ███ (להלן – ███), וזאת לאחר שהאחרון הסכים להשתתף בהסעת המחבל המתאבד מרמאללה לירושלים. ███ הגיע לפגישה ברכב איסוזו טנדר עם לוחיות רישוי ישראליות.

13. לפי הוראתו של ███ הנ"ל, נסעו ███ ברכב האיסוזו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

14. ███ נסעו מרמאללה דרך "ראפאת" והגיעו לאיזור התעשייה עטרות; שם חזרו השניים לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה רמה, שם הם פנו ימינה ונסעו לצומת אדם. בצומת אדם השניים פנו ימינה ונסעו עד צומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת הגבעה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. ███ ראו כי בדרך שבה נסעו ניתן להוביל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

15. ███, על פי הוראתו של ███, הביא רוס"ר 16 – M ו- 3 מחסניות לרוס"ר הנ"ל מלאות בכדורים, כאשר שתי מחסניות היו מחוברות בצולבת.

16. באותו היום, נפגשו ███ עם ███ באיזור המלון "סיטי אין" באלבירה. ███ הכיר ל███ ול███ את סעיף הנ"ל.

17. ███ הסביר ל███ כי סעיד הוא המחבל המתאבד, אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשיירה לעבר אזרחים ישראליים במטרה לגרום למותם של

אזרחים רבים ככל האפשר.

18. [redacted] הסתירו את רוס"ר ה- 16 – M והמחסניות הנ"ל ברכב האיסוזו הנ"ל.

19. [redacted] הסיעו את סעיד לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתואר לעיל.

20. בירושלים, נסעו [redacted] לרחוב שיח' ג'ראח. שם הם הוציאו את רוס"ר ה – 16 - M והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד, והמשיכו בנסיעה לכיוון רח' הנביאים. בהגיעם לצומת הרחובות שטראוס-הנביאים, השניים עצרו את רכב האיסוזו.

21. [redacted] אמרו לסעיד לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שיראה בו הרבה אנשים.

22. לאחר שסעיד ירד מהרכב, במקום הנ"ל, עם רוס"ר 16 – M והתחמושת, נסעו [redacted] מהמקום ברכב האיסוזו, דרך שכונת "מוסררה" לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה. במקביל, ולאחר מספר דקות הגיע סעיד לרחוב יפו, כשהוא חמוש ברוסר 16 M– והתחמושת.

23. בסביבות השעה 16:20, כשהוא עומד מול בית מס' 47 ברחוב יפו או בסמוך לכך, טען סעיד את רוס"ר 16 – M שבו החזיק, צעק "אללה הוא אכבר" ופתח בירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו 27 שהיה באותה עת בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך החנויות הסמוכות בכוונה לגרום למותם של אזרחים, רבים ככל הניתן. תוך כדי כך שהוא ממשיך לירות, נמלט סעיד מהמקום לעבר החניון שנמצא ברחוב הרב קוק. שם החליף סעיד מחסניות והמשיך לירות לעבר האזרחים בכוונה לגרום למותם. סעיד ירה ברוס"ר 16 – M, שבו החזיק מעל ל- 38 כדורים. סעיד המשיך לירות לעבר האזרחים עד שנהרג ע"י האזרחים והשוטרים שהגיעו למקום.

24. במעשיו המתוארים לעיל, גרם הנאשם בכוונה למותה של **אורה (סבטלנה) סנדלר ז"ל**, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו ע"י סעיד הנ"ל.

**<u>פרט שביעי</u>: (פ"א 502/02 ציון)**

**<u>מהות העבירה</u>:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו7-(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970 ; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 22/1/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה ;

דהיינו, במעשיו של הנאשם המתוארים בפרט האישום הקודם נפטרה **שרה המבורגר ז"ל**, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו ע"י סעיד הנ"ל.

**פרט שמיני: (פ"א 502/02 ציון)**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 22/1/02 או בסמוך לכך, היה שותף לניסיון גרימת מותם של אחרים בכוונה.

דהיינו, כתוצאה מהפיגוע המתואר בפרט האישום הקודם, ניסה הנאשם לגרום למותם של אחרים. כתוצאה מהפיגוע נפצעו מעל 45 אזרחים שהיו במקום, ברמות פציעה קלות וקשות.

**פרט תשיעי: (פ"א 4258/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. במועד הנ"ל פנה אל הנאשם [REDACTED] והודיע לו על רצונו לבצע פיגוע התאבדות. הנאשם במטרה לבחון את כנות כוונותיו של [REDACTED] חסונה שלח אותו עם חגורת נפץ "דמה", לקח אותו לאיזור זוותא, מסר לו מספר טלפון, ואמר לו לכשיגיע לאיזור טול-כרם שיתקשר ויודיע לו.

2. לאחר שוידא הנאשם את כנות כוונות [REDACTED], ביקשו לחזור ואמר לו כי מועד הפיגוע נדחה. הנאשם לקח את [REDACTED] לביתו של [REDACTED], שם צילמו אותו במצלמת וידאו. [REDACTED] הקריא צוואה שבה אמר כי הפיגוע הוא נקמה על מותם של [REDACTED] [REDACTED]

3. באותה תקופה יצר [REDACTED] (להלן – [REDACTED]) קשר טלפוני עם [REDACTED], ובמהלך השיחה הודיע [REDACTED] ל[REDACTED] הנ"ל כי הוא שולח אליו מחבל מתאבד נוסף על מנת ש[REDACTED] ישלח אותו אל תוך מדינת ישראל לצורך ביצוע פיגוע ירי.

4. הנאשם לקח את [REDACTED] למקום שבו נהג ללון באיזור אלמחיפיה. ביום שלמחרת, בתאריך 4/3/02 שלח אותו לרמאללה, מסר לו מספר טלפון, וביקש ממנו כי יתקשר אליו לכשיגיע לרמאללה. [REDACTED] עשה כן, כשהגיע לרמאללה.

5. ███ יצר קשר עם ███ הנ"ל ואמר לו כי הגיע לרמאללה עפ"י הוראתו של ███ וכי הוא המחבל המתאבד לצורך ביצוע פיגוע הירי המתוכנן.

6. ███ עלה לרכב, אשר בו נהג ███ ולידו ישב ███ והשלושה נסעו לכיוון תל-אביב על מנת לבצע שם את פיגוע ההתאבדות המתוכנן.

7. באותו הלילה, לאחר ש███, ███ הגיעו לתל-אביב, בסמוך לגשר מעריב שבדרך פתח-תקווה, הראה ███ ל███ מקום הומה אדם והנחה אותו לבצע שם את הפיגוע המתוכנן.

8. ███ הוציא רוס"ר M – 16, מחסניות ורימוני יד, שהיו מוסתרים בדלת של הרכב.

9. בסמוך לשעה 2:15, בתאריך 5/3/02 או במועד הסמוך לכך, ירד ███ מן הרכב, כשהוא חמוש ברוס"ר M - 16, רימוני יד, וסכין קומנדו, בסמוך למסעדת "סי-פוד מרקט" (להלן – **המסעדה**) על מנת שיבצע את הפיגוע המתוכנן. במקביל, נסעו ███ ברכב מהמקום לכיוון ירושלים.

10. ███ התקרב אל המסעדה ופתח באש אוטומטית ברוס"ר 16 – M לעבר יושבי המסעדה ועוברי האורח בדרך פתח-תקווה בכוונה לגרום למותם.

11. לאחר-מכן, השליך ███ את שני רימוני היד לעבר המסעדה בכוונה לגרום למותם של יושבי המסעדה ועוברי אורח, אך רימוני היד לא התפוצצו.

12. לאחר שרוס"ר ה- M – 16, אשר בו החזיק ███ הפסיק לירות עקב מעצור, הוציא ███ סכין הקומנדו שהחזיק והחל לדקור אזרחים ישראליים שהיו במקום בכוונה לגרום למותם.

13. למקום האמור הגיע השוטר רס"ר סלים ברכאת ז"ל, אשר הסתער לעבר ███ והשתלט עליו. רס"ר סלים ברכאת ז"ל הספיק להודיע למפקדיו על ההשתלטות על המחבל.

14. בשלב זה, דקר ███ באמצעות סכין הקומנדו הנ"ל את רס"ר סלים ברכאת ז"ל בצווארו בכוונה לגרום למותו. כתוצאה מהדקירה, נפטר רס"ר סלים ברכאת ז"ל במקום.

15. במעשיו המתוארים לעיל, הנאשם הנ"ל, גרם בכוונה למותו של **רס"ר סלים ברכאת ז"ל**.

<u>פרט עשירי</u>: (פ"א 4258/02 ירקון)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו7-(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה.

דהיינו, במעשיו המתוארים בפרט האישום הקודם של הנאשם, נפטר **יוסף הבי ז"ל**, אשר נדקר על-ידי ██████ בבית החזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

<u>פרט אחד-עשר</u>: (פ"א 4258/02 ירקון)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו7-(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה.

דהיינו, במעשיו המתוארים בפרט האישום הקודם של הנאשם, נפטר **אליהו דהן ז"ל**, אשר נדקר על-ידי ██████ בבית החזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

<u>פרט שנים-עשר</u>: (פ"א 4258/02 ירקון)

<u>מהות העבירה</u>: ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לניסיון גרימת מותם של אחרים בכוונה.

דהיינו, הנאשם הנ"ל, במעשיו המתוארים בפרט האישום הקודם, ניסה לגרום למותם של אזרחים רבים ככל האפשר.

כתוצאה מהיריות שנורו ע"י ██████ נפצעו עשרות אזרחים ישראליים בדרגות פציעה קלות וקשות.

<u>פרט שלושה-עשר</u>:

<u>מהות העבירה</u>: החזקת אמל"ח, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, במהלך חודש מרץ 02' או בסמוך לכך, החזיק ברשותו כלי ירייה, תחמושת, רימון יד, כלי או חפץ או דבר המתוכנן או המסוגל לגרום מוות

או חבלה חמורה, מבלי שהיתה ברשותו תעודת היתר שהוענקה ע"י מפקד צבאי או מטעמו;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, קיבל מהאחראי על הביטחון הימי בשכם [REDACTED], 6 מחסניות לרובה קלצ'ניקוב, 30 נפצים למטעני חבלה, 2 ק"ג אבק שריפה, מטול רימונים.

הנאשם קיבל את האמור לעיל, בתדירות של שלוש פעמים בחודש

**<u>פרט ארבעה-עשר</u>:**

**<u>מהות העבירה</u>:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970, וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968;

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באיזור, במהלך חודש אפריל 02' או בסמוך לכך, ניסה ביחד עם אחרים לגרום למותם של אחרים בכוונה, דהיינו:

1. במועד הנ"ל, הנאשם ביחד עם פעילי כתאאב "שוהדאא אלאקצא", [REDACTED] [REDACTED] ירה לעבר כוחות צה"ל בעת כניסתם למחנה בלאטה.

2. הנאשם וחבריו הנ"ל, שציפו לכניסת כוחות צה"ל למחנה, הניחו מטעני חבלה רבים בכניסה למחנה. בעת כניסת כוחות צה"ל, הנאשם וחברי חולייתו הפעילו את המטענים נגד כוחות הצבא, וירו לעברם באמצעות כלי נשק.

3. הנאשם וחברי חולייתו, פעלו כאמור במשך שמונה ימים.

4. אחרי יציאת הצבא מהמחנה החל הנאשם וחברי חולייתו להכין מספר רב של מטעני חבלה, כדי להשתמש בהם נגד כוחות הצבא במידה ויכנסו שנית למחנה.

**<u>פרט חמישה-עשר</u>: (פ.א. 4685/02 תחנת פ"ת)**

**<u>מהות העבירה</u>:** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באזור ומחוץ לאיזור, בתאריך 27/5/02, ביחד עם אחרים גרם למותו של אדם אחר בכוונה, דהיינו:

1. הנאשם הנ"ל, בסמוך למועד הנ"ל, פנה אליו [REDACTED] (קרוב – [REDACTED]), וביקש ממנו כי יכין אותו לביצוע פיגוע התאבדות בפ"ת. [REDACTED] סיפר לנאשם כי הוא עבד בקניון בפ"ת, ומכיר את המקום היטב

2. הנאשם סיפר ל[REDACTED] כי "יתאר" רוצה לבצע פיגוע התאבדות כנקמה על מותו של [REDACTED]

3. יום לפני ביצוע הפיגוע, הביא הנאשם, ביחד עם [redacted] את [redacted] לביתו במחנה בלאטה, שם צילמו אותו במצלמת וידאו כשהוא מחזיק ברובה מסוג 16 – M.

4. אחרי שהנאשם סיים לצלם את [redacted] ביקש מ[redacted] (להלן – [redacted]) כי יסיעם הוא ו[redacted] לרפידיה. [redacted] הסכים והסיע אותם לבית קפה אלמדי'אפה ברפידיה. כשהגיעו למקום, התקשר הנאשם לבלמ"ז והודיע לו כי הגיעו לבית הקפה.

[redacted] התקשר ל[redacted] ו[redacted] ובירר עימם אם העבירו ל[redacted] (להלן - [redacted]) חגורת נפץ.

כעבור כחמש דקות הגיע [redacted] נושא עליו חבילה בצבע שחור, ושהכילה חגורת נפץ לביצוע הפיגוע. [redacted] העביר לנאשם את החבילה. הנאשם העביר את החבילה ל[redacted], וביקש מראאד כי יצטרף אל המונית שנוסע בה [redacted] הנאשם ביקש מ[redacted] כי יסע אחרי המונית שנוסע בה [redacted].

5. [redacted] נסע אחרי המונית שנסע בה [redacted], וכשהגיעו ליישוב עזון אלעתמה, בסמוך לשעה 13:30 העביר [redacted] את החבילה ל[redacted]. [redacted] התקשר לנאשם ועידכן אותו כי העביר את החבילה כאמור. לאחר-מכן חזר [redacted] אל שכם.

6. לאחר שהגיע ג'יהאד עם [redacted] לכפר קאסם ועלה על מונית, התקשר [redacted] אל הנאשם ומסר לו כי [redacted] עלה למונית בדרכו לביצוע הפיגוע.

7. סמוך לשעה 18:30 הגיע [redacted] הנ"ל לקניון אם-המושבות בפ"ת. כאמור בסמוך למקום שבו הוא עבד בעבר, כשעליו חגורת הנפץ. [redacted] התקרב אל מקום הומה אדם בסמוך לקונדיטוריה ברח' ראשל"צ 1, ופוצץ את חגורת הנפץ שהייתה עליו, בכוונה לגרום למותם של בני אדם אחרים.

8. כתוצאה מביצוע הפיגוע נפטרה **רות פלד** ז"ל.

__פרט שישה-עשר__: **(פ.א. 4685/02 תחנת פ"ת)**

__מהות העבירה__: **גרימת מוות בכוונה**, עבירה לפי סעיפים 51(א), 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 2, ו- 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

__פרטי העבירה__: הנאשם הנ"ל, באזור ומחוץ לאיזור, בתאריך 27/5/02, ביחד עם אחרים גרם למותו של אדם אחר בכוונה;

דהיינו, כתוצאה מפיגוע ההתאבדות המתואר בפרט האישום הקודם שבוצע ע"י [redacted], נפטרה התינוקת **סיני קינן** ז"ל.

**פרט שבעה-עשר** : (פ.א. 4685/02 תחנת פ"ת)

**מהות העבירה** : ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970 ; וסעיפים 19-20, 2, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה** : הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 27/5/02, ניסה ביחד עם אחרים לגרום למותם של אחרים בכוונה ;

דהיינו, בנסיבות המתוארות בפרט האישום הקודם, ניסה הנאשם לגרום למותם של אחרים. כתוצאה מביצוע הפיגוע ע"י ██████ הנ"ל, נפצעו עשרות אזרחים בדרגות פציעה חמורות וקלות.

**פרט שמונה עשר** :

**מהות העבירה** : קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968 ; וסעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970.

**פרטי העבירה** : הנאשם הנ"ל, באזור, במהלך חודש מאי 02' או בסמוך לכך, קשר קשר עם אדם אחר לגרום למותו של אחר בכוונה ;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, נפגש עם ██████ שאמר לו כי הינו מתכנן לבצע פיגוע התאבדות ביישוב הישראלי שבי שומרון, ולשם כך מתכנן לשלוח את "██████" לבצע את הפיגוע.

הנאשם הביע את הסכמתו לתוכניתו של ██████

הנאשם מסר ל██████ שלוש מחסניות לרובה מסוג קלצ'ניקוב, על מנת שישמשו בביצוע הפיגוע.

**פרט תשעה-עשר** :

**מהות העבירה** : ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970 ; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה** : הנאשם הנ"ל, באיזור, במספר רב של הזדמנויות ניסה ביחד עם אחרים לגרום למותם של אחרים בכוונה, דהיינו :

1. בתחילת שנת 01' או בסמוך לכך, יצא הנאשם עם חברי חולייתו, ██████ ██████ כשהיו חמושים ברובים מסוג 16 - M, והנאשם החזיק ברשותו רובה מסוג קלצ'ניקוב, וביחד ירו לעבר ג'יפ צבאי שהיה בסמוך לצומת צרה. הנאשם ירה כ- 16 כדורים לעבר הג'יפ הצבאי, וחבריו ירו ברובים שהיו ברשותם.

אחרי הירי נמלטו הנאשם וחברי חוליתו למחנה בית-אלמא.

2. כעבור מספר ימים, מהאמור לעיל, יצא הנאשם, במספר הזדמנויות, יחד עם חברי חולייתו לכיוון נקודה צבאית שנמצאת בסמוך להר גריזים, כשהיו חמושים ברובים, והנאשם היה חמוש ברובה מסוג M – 16. הנאשם ירה יחד עם חבריו לעבר הנקודה הצבאית.

3. לאחר תחילת שנת 02', ירה הנאשם שהיה חמוש ברובה מסוג קלצ'ניקוב, ביחד עם ███ ███ לעבר נקודה צבאית שנמצאת בין תל ובורין.

**פרט עשרים:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968;

**פרטי העבירה:** הנאשם הנ"ל, באזור, במספר רב של הזדמנויות, ניסה ביחד עם אחרים לגרום למותם של אחרים, דהיינו:

1. בתחילת שנת 01' או בסמוך לכך, הנאשם הנ"ל, שהיה חמוש ברובה מסוג קלצ'ניקוב, ביחד עם ███ שהיו חמושים ברובים מסוג M – 16, הניחו שני מטעני חבלה שאליהם חיברו סוללה וחוטים באורך 300 מטרים. באותו יום בשעות הערב עבר ג'יפ צבאי על הכביש המוביל לישוב ברכה, ███ הנ"ל הפעיל את שני המטענים, וכתוצאה מכך התפוצצו שני מטעני החבלה.

לאחר-מכן נמלטו הנאשם וחבריו לשכם.

2. כעבור שבוע מהאמור לעיל, הניח הנאשם ביחד עם חברי חולייתו שהיו חמושים בכלי ירייה, מטען חבלה במשקל 50 ק"ג, בצומת איבא. הנאשם וחבריו הסתירו את המטענים בעשבייה. אל מטען החבלה חיברו הנאשם וחבריו חוטים באורך 200 מטר.

משעבר במקום ג'יפ צבאי וטנק, ופוצץ ███ את מטען החבלה, לאחר שעצר הטנק.

3. במהלך חודש אוקטובר 01' או בסמוך לכך, הניח הנאשם ביחד עם חברי חולייתו, ███ שני מטעני חבלה על הכביש העוקף שמשקיף על האיזור "עין אלמאא" בזוואתא. כשהבחינו בג'יפ צבאי וטנק עובר במקום, פוצצו הנאשם וחבריו את המטענים.

4. במהלך חודש אוקטובר 01' או בסמוך לכך, הניחו הנאשם יחד עם חברי חולייתו מטען חבלה על הכביש העוקף שמוביל לעצירה אלשמאליה כשהבחינו חיילי צה"ל במטען החבלה ירו לעברם. וכעבור 20 דקות הפעיל הנאשם את מטען החבלה, שהתפוצץ כתוצאה מכך.

לאחר פיצוץ מטען החבלה, נמלטו הנאשם וחברי חולייתו למחנה בלאטה.

**פרט עשרים ואחד:**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968; וסעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במספר הזדמנויות, קשר קשר עם אחרים לגרום למותו של אחר בכוונה, דהיינו:

1. במהלך התקופה שלאחר חודש מרץ 02' או בסמוך לכך, ביקש הנאשם מ[redacted] (להלן – [redacted]) כי יפנה ל[redacted] [redacted] (להלן – [redacted]) ו[redacted] (להלן – [redacted]) ויבקש מהם כי יאתרו אדם המוכן לבצע פיגוע התאבדות ביישוב הישראלי קדומים. [redacted] פנה ל[redacted] והודיע להם אודות תוכניתו של הנאשם, הם הסכימו לבקשתו, ואמרו לו כי ינסו לאתר אדם המוכן לבצע את הפיגוע.

   [redacted] ביצע תצפית על היישוב הנ"ל, והודיע לנאשם כי אין נקודות תורפה ביישוב הנ"ל, ותהיה אפשרות להביא את האדם המתאבד רק למרחק של 100 מטר מהיישוב.

   הנאשם, אמר ל[redacted] כי המרחק הנ"ל אינו מתאים, ומשכך הפיגוע לא יצא אל הפועל.

2. במהלך שנת 02' או בסמוך לכך, הנאשם הנ"ל, תיכנן עם [redacted] לבצע פיגוע במחנה חווארה. [redacted] אמר לנאשם כי ישנם שני אנשים: א. [redacted] ב. [redacted] שמוכנים לבצע את פיגוע ההתאבדות.

   התכנון היה שאחד המפגעים יסע בג'יפ בצבע לבן שנראה כמו רכב של הצלב האדום, והרכב הזה ישמש כמכונית תופת. כאשר המפגע הנוהג בג'יפ יגיע למחסום חווארה, יפוצץ את הרכב במחסום. לאחר פיצוץ הרכב, שתי חוליות של מחבלים כשהם חמושים ברובי קלצ'ניקוב ורימוני יד יחדרו למחנה משתי נקודות שונות: 1. מכיוון עווארתא 2. מכיוון רוג'יב.

   הנאשם ואבו רמוש ביצעו תצפיות על גזרת המחנה. אולם, פיגוע זה לא יצא אל הפועל.

**נאג'י עאמר, סגן**
**תובע צבאי**

**רשימת עדי התביעה:**

**פ״א 4968/02:**

1. (גובה הודאת הנאשם מיום 5/6/02).
2. (גובה הודאת הנאשם מימים 10/6/02 ו- 11/6/02).
3. (גובה הודאת הנאשם מיום 9/7/02 ומיום 11/7/02).
4. (גובה הודאת הנאשם מיום 20/8/02).
5. (עורך מסדר זיהוי לעדים:
6. (עצור בת.ת.
7. (עצור בת.ת.
8. (עצור ב
9. (עצור בת.ת.
10. (עצור).
11. (עצור).
12. (עצור ת.ת. בית-אל).
13. (עצור).
14. (עצור).
15. (עצור).
16. פרוטוקולי הארכת מעצר מימים: 17/6/02 ו- 10/7/02 ו- 12/8/02.

**פ.א. 502/02 ציון**

17. (מגיש דו״ח זכ״ד, תפיסה וסימון).
18. (מגיש דו״ח תפיסה וסימון).
19. (מגיש דו״ח זכ״ד, תפיסה וסימון + תצלומים).
20. (מגיש דו״ח פעולה – מציאת צולבת).
21. (מגיש דו״ח תפיס וסימון).
22. (עד ראיה – רדף אחרי המחבל).
23. (עד ראיה).
24. (עד ראיה).
25. (עד ראיה).
26. (עד ראיה).
27. (עד ראיה).
28. (עד ראיה).
29. (עד ראיה).
30. (עד ראיה).
31. (עד ראיה).
32. (עד ראיה).
33. (עד ראיה).
34. (עד ראיה).

35. [redacted] (עד ראיה).
36. [redacted] (עד ראיה).
37. [redacted] (עד ראיה).
38. [redacted] (עד ראיה).
39. [redacted] (זיהוי גופתה של אורה (סבטלנה) סנדלר ז"ל).
40. [redacted], ביה"ח הדסה עין-כרם, ירושלים (מגישה הודעת פטירה של אורה (סבטלנה) סנדלר ז"ל).
41. [redacted], ביה"ח הדסה עין-כרם, ירושלים (מגישה הודעת פטירה של שרה המבורגר ז"ל).

**<u>תיק פ.א. 5258/02</u>**

42. [redacted]
43. [redacted] זיהוי ירקון, משטרת ישראל.
44. [redacted] קצין אח"ק ירקון.
45. [redacted], צח"מ ירקון.
46. [redacted] (עד ראיה).
47. [redacted] (עד ראיה).
48. [redacted] (מאבטח במסעדה).
49. [redacted] (עד ראיה).
50. [redacted] (עד ראיה).
51. [redacted] (עד ראיה).
52. 22280 שלמה דוד (נפצע בפיגוע).
53. [redacted] (עד ראיה).
54. [redacted] (עד ראיה).
55. [redacted] (עד ראיה).
56. 309998540 איוונה ריכטמן (נפצעה בפיגוע).
57. [redacted] (עד ראיה).
58. [redacted] (עדת ראיה).
59. [redacted] (עד ראיה).
60. [redacted] (עד ראיה).
61. [redacted] (עד ראיה).
62. [redacted] (עד ראיה).
63. [redacted] (עד ראיה).
64. [redacted] (עד ראיה).
65. [redacted] (עד ראיה).
66. [redacted] (עד ראיה).
67. [redacted] (עד ראיה).
68. [redacted] (זיהוי גופתו של יוסף הבי ז"ל).
69. 31877665 נעם אספי (נפצע בפיגוע).
70. 29416740 יוסי אזוז (נפצע בפיגוע).

71. 43401140 מיכאל גרובר (נפצע בפיגוע).
72. המכון הלאומי לרפואה משפטית, תל-אביב.
73. רשומות בתי חולים – רשומה מוסדית.

**<u>פ.א. 4685/02 תחנת פ"ת</u>**

74. (פרטים בתביעה).
75. (פרטים בתביעה).
76. (פרטים בתביעה).
77. (פרטים בתביעה).
78. (פרטים בתביעה).
79. (מעבדת חבלה – טופס לוואי מוצגים).
80. חוו"ד מעבדה (תועבר בהמשך).
81. המכון לרפואה משפטית (חוו"ד מומחה –גופת אלמוני).
82. המכון לרפואה משפטית (חוו"ד מומחה – רות פלד ז"ל).
83. המכון לרפואה משפטית (חוו"ד מומחה –סיני קינן ז"ל).
84. (דו"ח פעולה).
85. (דו"ח פעולה).
86. 310905773 פאשייב יורי (מזכר- פצוע קשה).
87. 1082544 רש"ט כפיר הדסי (דו"ח פעולה).
88. (פרטים בתביעה).
89. (פרטים בתביעה).
90. (פרטים בתביעה).
91. (פרטים בתביעה).
92. (פרטים בתביעה).
93. (פרטים בתביעה).
94. (פרטים בתביעה).
95. (פרטים בתביעה).
96. (פרטים בתביעה).
97. (פרטים בתביעה).
98. (פרטים בתביעה).
99. (פרטים בתביעה).
100. (פרטים בתביעה).
101. (פרטים בתביעה).
102. (פרטים בתביעה).
103. (פרטים בתביעה).
104. (פרטים בתביעה).
105. (פרטים בתביעה).
106. (דו"ח ביקור בזירה – תפיסת מוצגים+ עורך דו"ח תצלומים).

