

PLAINTIFF'S EXHIBIT 360

Before the Military Court
in Samaria
before a panel

**Israel Defense Forces**

| | |
|---|---|
| Court Case: | 6446/02 |
| Prosecution case: | 756/02 |
| Detailed incident case: | 4968/02 Petach Tikva |
| | 4258/02 Yarkon |
| | 502/02 Zion |
| | 4685/02 Petach Tikva Station |

[Stamp]
The Military Court in Samaria
June 23, 2002
[illegible]

In the trial between:

**The military prosecutor**

- The Prosecutor -

- v. -

**Ibrahim Adnan Najib Abdel Hai**

(detained since June 3, 2002)

Identity No. 411124423, born on August 20, 1979, from the village Burin

- The Defendant -

**Indictment (Amended)**

The above mentioned Defendant is hereby accused of committing the following offenses:

**First count**:

**Nature of the offense**: Membership in an illegal organization, an offense pursuant to Regulations 84(1)(A) and 85(1)(A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, during the course of the month of December 2000 or thereabouts, was a member of a military cell belonging to the Al Aqsa Martyrs Brigades, which is an illegal organization;

[Stamp] P 5: 218

Prosecution Case 444/02 Amended

1

In other words: the above mentioned Defendant, at the time that was set forth above, decided to join a military cell in order to engage in military activity against Israeli targets within the framework thereof.

For this purpose, the Defendant approached his colleague, ██████████████ . (hereinafter – ████████ , and informed him of his wish to engage in military activity. The above mentioned ████████ told the Defendant that

████████ suggested that the Defendant join this cell, and the Defendant agreed to do so.

[Stamp] P 5: 218 [continued]

Prosecution Case 444/02 Amended

2

In addition to the Defendant, the members of this cell, which was known as the ▮▮▮▮▮ ' cell, were: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Defendant, three months from the day when he joined up with the above mentioned military cell, decided following a personal conflict that he had with one of the members of the cell, to discontinue his membership in this cell.

After the Defendant left the above mentioned cell, in March 2001 he encountered the military operative ▮▮▮▮▮▮▮ The Defendant asked ▮▮▮▮▮▮▮ to engage in military activity with him.

▮▮▮▮▮▮▮▮ consented to the request of the Defendant and introduced to him a military operative of the Al Aqsa Martyrs Brigades, ▮▮▮▮▮▮▮

When the military operatives ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ knew that the Defendant was working with ▮▮▮▮▮▮▮ they asked him ▮▮▮▮▮▮▮▮▮ consented to their enrollment into the cell.

The membership of the Defendant in the military cell continued until the day of his arrest.

**Second count:**

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, during October 2001 or thereabouts, attempted with another person to cause the intentional death of another person;

In other words, the above mentioned Defendant, at the time that was set forth above, in the evening hours, departed with his fellow cell members, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ , towards the Dir-Sharaf checkpoint in order to carry out a terrorist attack.

▮▮▮▮▮▮▮▮ gave the Defendant approval to carry out the attack, and provided him with an M-16 rifle with two magazines.

The Defendant and his above mentioned colleagues traveled to the site of the checkpoint using a stolen Volkswagen type vehicle.

[Stamp] P 5: 219

Prosecution Case 444/02 Amended

3

When they arrived close to the checkpoint, 15 meters away from it, they turned their vehicle in the opposite direction, the Defendant and ▮▮▮▮▮▮▮▮▮▮▮ opened the rear doors and fired the rifles at the three soldiers who were standing at the checkpoint, while the vehicle in which he was sitting was heading towards Nablus.

The Defendant fired all of the cartridges that were inside the magazine towards the soldiers, and ▮▮▮▮▮▮▮▮▮▮ also fired all of the cartridges that were inside the magazine towards the soldiers.

The soldiers did not shoot back at first; but after the vehicle in which the Defendant was traveling was 300 meters away, the Defendant and his colleagues heard gunshots.

[Stamp] P 5: 219 [continued]

Prosecution Case 444/02 Amended

**Third count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, during 2001 or thereabouts, was an accomplice in an attempt to cause the intentional death of another person;

In other words, the above mentioned Defendant, at the above mentioned time, was requested by ███████████ ⁚on, to participate in the execution of a shooting attack against an Israeli vehicle.

███████████ told the Defendant that⁚

The Defendant agreed to the suggestion of ███████

Accordingly, the Defendant, along with ███████████████ and ███████████ waited in hiding near Rujeib Junction for the vehicle that was traveling from the Elon Moreh area towards Hawara.

The Defendant was armed with an M-16 type rifle, ███████ was armed with a Kalashnikov, and ███████ was armed with a machine gun, and ███████ was armed with an M-16 type rifle.

When the vehicle approached to a distance of approximately 200 meters from the site at which the Defendant and the fellow squad members were waiting, the Defendant fired about two rounds at it, ███████ fired about 11 rounds and ███████ fired about 10 rounds at it.

**Fourth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, during January 2002 or thereabouts, participated in an attempt to cause the intentional death of another person;

[Stamp] P 5: 220

Prosecution Case 444/02 Amended

In other words, at the above mentioned time, ██████████ and ██████████ conducted surveillance of a mobile home in the Israeli settlement of Yitzhar. ██████████ and ██████████ learned from their surveillance that a person would come to the mobile home every day.

After conducting the surveillance, the Defendant conspired with ██████████ ██████████ to carry out a shooting attack at the mobile home.

The Defendant devised the attack execution plan, and according to the plan, he was in charge of the cell during the execution of the attack.

The Defendant departed with the above mentioned gang, whose members were armed with M-16 type rifles, and English rifle, a Kalashnikov, towards the area of the settlement of Yitzhar.

[Stamp] P 5: 220 [continued]

Prosecution Case 444/02 Amended

When they arrived at the site, they waited on a hill that was approximately 300 meters away, overlooking the area.

After an hour, an open pickup type vehicle arrived at the mobile home, and three people alighted from it.

When the people approached the mobile home, the Defendant and his colleagues fired at them using the weapons in their possession. The Defendant fired approximately 10 rounds.

After the gunfire, the Defendant and his colleagues fled from the site.

**Fifth count**:

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in late February 2002, together with others, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, at the above mentioned time, when he participated in the funeral of Mohamed Ahmed Mustafa Alqassam, attended Rafidia Hospital in Nablus, and during his stay there, ███████████ said that the late Zahir Turabi (hereinafter – **the Deceased**) was at the hospital. The Defendant told ████████████ about this.

2. After ███████████ heard about this, he abducted the Deceased from the hospital. Thereafter, ████████████ told the Defendant that

3. The Defendant asked ███████████ to meet him in the evening hours in order for him to take them to a suitable place at which he would murder the Deceased. The Defendant met again ████████████████████████████ and the Deceased was with them. The Defendant and his colleagues drove, using a Volkswagen type vehicle, to the Engineers neighborhood near Jenid.

[Stamp] P 5: 221

Prosecution Case 444/02 Amended

7

4.  At the above mentioned site, they took the Deceased out of the vehicle. The Defendant asked the Deceased to pray before they murdered him, but the Deceased refused. The Defendant asked him whether he would be prepared to murder the handler from the General Security Service who was responsible for him, but the Deceased refused to do so.

5.  And then ███████████ and ███████████ fired at the Deceased approximately 15 rounds, with the intent of causing his death. Thereafter, the Defendant approached the Deceased and fired one round into his head, in order to make sure that he was dead.

6.  As a result of this, the death of the Deceased was caused.

[Stamp] P 5: 221 [continued]

Prosecution Case 444/02 Amended

8

7.  The Defendant and his colleagues placed the "confession" of the deceased and a leaflet of the Al Aqsa Martyrs Brigades organization on his body.

**Sixth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 22, 2002 or thereabouts, was an accomplice in causing the intentional death of another person, as follows:

1.  During the course of his work in the Palestinian Naval Police, the Defendant met Sa'id Ibrahim Ramadan (hereinafter – "**Sa'id**"). During one of their meetings, Sa'id told the Defendant that l                                        , and the Defendant asked Sa'id to give him an opportunity to check out the matter.

2.  The Defendant contacted ▇▇▇▇▇ and informed him of the intentions of Sa'id; and the former referred him to ▇▇▇▇▇ The Defendant met ▇▇▇▇▇ and informed him of Sa'id's intentions. ▇▇▇▇▇ asked the Defendant

3.  The Defendant, with the aim of testing Sa'id, put a "dummy" explosive belt on him and gave him an imaginary telephone number, sent him from the Zawata area to the Tulkarm area, and asked him to call him when he arrived in the Tulkarm area. Said put on the explosive belt and started towards Tulkarm. The Defendant, who found that Sa'id was steadfast, asked him to return, on the pretext that the attack time had changed due to military checkpoints on the way. Sa'id was angry with the Defendant, who asked him to be prepared to carry out the attack at any time.

4.  Accordingly, the Defendant contact ▇▇▇▇▇ and told him that Sa'id was prepared to carry out the attack, and he asked the Defendant t

5.  During that period, ▇▇▇▇▇ (hereinafter – ▇▇▇ ) had contacted ▇▇▇▇▇ and asked him ▇▇▇ told ▇▇▇ that l

[Stamp] P 5: 222

6.  The Defendant brought Sa'id to the home of ███████████, and in ███████ home was a person called ███████████ and another person called ███████████ and ███ filmed Sa'id, and ███ wrote Sa'id's will. Sa'id was filmed while holding an M-16 type rifle, a Koran and reading out his will.

7.  Thereafter, the Defendant took Sa'id to his family, where he parted from them without informing them of his intentions of committing suicide.

8.  Thereafter, the Defendant asked Sa'id to depart to Ramallah on the following day.

[Stamp] P 5: 222 [continued]

Prosecution Case 444/02 Amended

And in the morning of the following day, the Defendant noticed that Sa'id was departing for Ramallah.

9.  On January 22, 2002, the above mentioned Sa'id met the above mentioned ███ in ███ and informed him that ████

10. The above mentioned ███ called ███████ (alias ███ ███) and asked him ███████ met ███ and Sa'id in Ramallah. ███ and ███████ took Sa'id to a barber shop in order for him to have his hair cut before performing the planned suicide attack.

11. Thereafter, the above mentioned ███ and ███████ called ██████ ████ (alias ███) and asked him

12. ████ arrived in Ramallah along with ██████████ (hereinafter – ██████████, after the latter had agreed to participate in driving the suicide terrorist from Ramallah to Jerusalem. ███████ arrived at the meeting in an Isuzu pickup vehicle with Israeli license plates.

13. At the instruction of the above mentioned ████, ███████ and ███████ ████ traveled in the Isuzu vehicle from Ramallah to Jerusalem in order to find a route that had no police or IDF checkpoints, with the aim of driving the suicide terrorists later on the same route, to carry out the planned attack in Jerusalem.

14. ██████████ and ███████ traveled from Ramallah through Rafat and arrived at the Atarot Industrial Zone; there the two returned to the main Jerusalem – Ramallah road and took a left to the junction leading to Rama Junction, where they turned right and drove to Adam Junction. At Adam Junction the two turned right and traveled to Hizma junction, where they turned right and entered Anta. Through Anta, they arrived at the French Hill junction, where the two turned right and returned to Ramallah.

[Stamp] P 5: 223

Prosecution Case 444/02 Amended

███████████ and ███████████ saw that via the route that they had traveled, they could drive the suicide terrorist to Jerusalem without being stopped at police or IDF checkpoints.

15.    ███████████, at the instruction of ███████, brought an M-16 assault rifle and 3 magazines for the above mentioned assault rifle, filled with cartridges, two of the magazines being connected by a magazine coupler ("jungle clip").

16.    On the same day, ███████████████ and Sa'id met ███████████ and ███████████ in the area of the City Inn Hotel in Al Bira. ███████ introduced ███████ ███████ and ███████ to the above mentioned Sa'id.

17.    ███████ explained to ███████████ and to ███████████ that

[Stamp] P 5: 223 [continued]

Prosecution Case 444/02 Amended

12

18.  ███████████ and ███████████ hid the above mentioned M-16 assault rifle and magazines in the above mentioned Isuzu vehicle.

19.  ███████████ and ███████████ drove Sa'id to Jerusalem via the route that they had checked out earlier that day, as described above.

20.  In Jerusalem, ███████████ and ███████████ traveled to Sheikh Jarah Street. There, they took out the M-16 assault rifle and the magazines that were hidden inside the vehicle and handed them over to Sa'id, and continued driving towards Hanevi'im Street. Upon reaching the junction of Strauss and Hanevi'im Streets, the two stopped the Isuzu vehicle.

21.  ███████████ and ███████████ told Sa'id

22.  After Sa'id alighted from the vehicle, at the above mentioned site, with the M-16 and the ammunition, ███████████ and ███████████ drove away in the Isuzu vehicle, through the Musrara neighborhood to Highway No. 1, and from there traveled through the main road to Ramallah. At the same time, a few minutes later, Sa'id arrived at Jaffa Street, armed with the M-16 assault rifle and the ammunition.

23.  At about 4:20 p.m., while standing opposite Building No. 47 in Jaffa Street or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he was carrying, shouted "Allahu Akbar" and discharged automatic gunfire indiscriminately at the people who were on Jaffa Street, at the bus stop at the site, aboard the No. 27 Egged bus that was at this stop at the time and at the people who were within the stores nearby with the aim of causing the death of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the site towards the parking lot on Harav Kook Street. There, Sa'id Ramadan changed magazines and continued to shoot at civilians with the aim of causing their death. Sa'id Ramadan fired through the M-16 assault rifle that he carried more than 38 cartridges. Sa'id Ramadan continued to shoot at civilians until he was killed by civilians and policemen who arrived at the site.

24.  By his acts as described above, the above mentioned Defendant caused the intentional death of **the late Ora (Svetlana) Sandlar**, who died as a result of gunshot wounds caused by the bullets that were fired by the aforementioned Sa'id.

[Stamp] P 5: 224

Prosecution Case 444/02 Amended

**Seventh count**: (Detailed Incident 502/02 Zion)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on January 22, 2002 or thereabouts, was an accomplice in causing the intentional deaths of other persons;

[Stamp] P 5: 224 [continued]

Prosecution Case 444/02 Amended

14

In other words, by the actions of the Defendant described in the previous count of the indictment, the late **Sarah Hamburger** died, having succumbed to the gunshot wounds from the bullets that were fired by Sa'id Ramadan.

### Eighth count: (Detailed Incident 502/02 Zion)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside of the Area, on January 22, 2002 or thereabouts, was an accomplice in attempting to cause the intentional death of others.

In other words, as a result of the attack described in the previous count of the indictment, the Defendant attempted to cause the death of others. As a result of the attack, more than 45 civilians who were at the site were slightly to severely injured.

### Ninth count: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense:** Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in causing the intentional death of others, as follows:

1.  At the above mentioned time, ▉▉▉▉▉▉ approached the Defendant and informed him ( ▉▉▉▉ he Defendant, with the aim of examining the sincerity of the intentions of ▉▉▉▉▉▉ sent him with a "dummy" explosive belt, took him to the Zawata area, gave him a telephone number and told him to call to let him know when he would reach the Tulkarm area.

2.  After the Defendant made sure of the sincerity of the intentions of ▉▉▉▉ they asked him to return and told him that the time of the attack had been deferred. The Defendant took ▉▉▉▉▉▉ to the home of ▉▉▉▉▉▉ where they filmed him with a video camera.

[Stamp] P 5: 225

Prosecution Case 444/02 Amended

███████████ read out a will in which he said that
███████████ and ███████████

3.  During that period, ███████████████████ (hereinafter – █████) called
    ███████████ by telephone, and during the call █████████ informed the
    above mentioned █████ that h
    for █████ to

4.  The Defendant took ███████████ to a place in which he often slept in the Almahfia
    area. On the following day, on March 4, 2002, he sent him to Ramallah, gave him a
    telephone number, and asked him to call him once he arrived in Ramallah. ████████
    ████ did so, when he arrived in Ramallah.

[Stamp] P 5: 225 [continued]

Prosecution Case 444/02 Amended

5.    ████████████ contacted the above mentioned ████████ and told him that

6.    ████████████ boarded the vehicle, which ████████████ was driving, with ████████████ █████████ sitting beside him, and the three drove towards Tel Aviv, in order to carry out the planned suicide attack there.

7.    On that night, after ████████████████████████ and ████████████████████ arrived in Tel Aviv, near Ma'ariv Bridge on Petach Tikva Road, ████████████████ showed ████████ ██████████ a crowded place and instructed him

8.    ████████████████ took out the above mentioned M-16 assault rifle, magazines and hand grenades, which were concealed in the door of the vehicle.

9.    At about 2:15 a.m., on March 5, 2002 or thereabouts, ████████████████ who was armed with the above mentioned M-16 assault rifle, hand grenades and commando knife, alighted from the vehicle near the Seafood Market restaurant (hereinafter – **the Restaurant**) in order for him to carry out the planned attack. At the same time, ████████ ██████████ and ████████████ drove away from the site in the vehicle towards Jerusalem.

10.   ████████████████ approached the Restaurant and discharged automatic gunfire from the M-16 assault rifle at the occupants of the Restaurant and passersby in Petach Tikva Road with the intent of causing their death.

11.   Thereafter, ████████████████ threw the two hand grenades at the Restaurant with the intent of causing the death of the occupants of the Restaurant and passersby, but the hand grenades did not detonate.

12.   After the M-16 assault rifle, which ████████████████ carried, stopped firing due to a stoppage, ████████████████ took out the above mentioned commando knife that he was carrying and started to stab Israeli civilians who were at the site with the intent of causing their death.

[Stamp] P 5: 226

Prosecution Case 444/02 Amended

13.   The late policeman Master Sergeant Salim Barikat arrived at the said site, rushed at ▓▓▓▓▓▓▓▓▓▓ and overpowered him. The late Master Sergeant Salim Barikat had the chance to inform his commanders that he had overpowered the terrorist.

14.   At this stage, ▓▓▓▓▓▓▓▓▓ stabbed the late Master Sergeant Salim Barikat using the above mentioned commando knife with the intent of causing his death. As a result of the stab wound, the late Master Sergeant Salim Barikat died at the site.

15.   By his acts described above, the above mentioned Defendant caused the intentional death of the late Master Sergeant Salim Barikat.

[Stamp] P 5: 226 [continued]

**Tenth count**: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in causing the intentional death of others.

In other words, by his acts described in the previous count of the indictment, **the late Yosef Habi**, who was stabbed by ▮▮▮▮▮▮ in the chest and other parts of his body, died.

**Eleventh count**: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in causing the intentional death of others.

In other words, by his acts described in the previous count of the indictment, **the late Eliyahu Dahan**, who was stabbed by ▮▮▮▮▮▮ in the chest and other parts of his body, died.

**Twelfth count**: (Detailed Incident 4258/02 Yarkon)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on March 5, 2002 or thereabouts, was an accomplice in attempting to cause the intentional death of others.

In other words, the above mentioned Defendant, by his acts described in the previous count of the indictment, attempted to cause the death of as many civilians as possible.

[Stamp] P 5: 227

Prosecution Case 444/02 Amended

19

As a result of the rounds that were fired by ███████████ dozens of Israeli civilians were slightly to severely injured.

**Thirteenth count**:

**Nature of the offense:** Possession of war materiel, an offense pursuant to Section 53(A)(1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The aforesaid Defendant, in the Area, during March 2002 or thereabouts, possessed a firearm, ammunition, hand grenade, tool, object or thing designed or capable of causing death

[Stamp] P 5: 227 [continued]

Prosecution Case 444/02 Amended

or severe injury, without a permit certificate issued by or for a military commander;

In other words, the above mentioned Defendant, at the above mentioned time, ███████ 6 magazines for a Kalashnikov rifle, 30 detonators for explosive devices, 2 kg of gunpowder and a grenade launcher.

The Defendant received that which has been set forth above at a frequency of three times a month.

**Fourteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, during April 2002 or thereabouts, attempted with others to cause the intentional death of others, as follows:

1.  At the above mentioned time, the Defendant along with Al Aqsa Martyrs Brigades operatives, ███████████████████████████████ and ███████ ███████ fired at IDF forces when they entered the Balata Camp.

2.  The Defendant and his above mentioned colleagues, who anticipated the entry of IDF forces into the camp, placed many explosive devices at the entrance to the camp. When IDF forces entered, the Defendant and his fellow cell members detonated the explosive devices against the military forces and fired at them using weapons.

3.  The Defendant and his fellow cell members acted as set forth for eight days.

4.  After the army departed from the camp. The Defendant and his fellow squad members started to prepare a large number of explosive devices, to use them against the military forces if they reentered the camp.

**Fifteenth count: (Detailed Incident 4685/02, Petach Tikva Station)**

**Nature of the offense:** Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 2 and 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 5: 228

Prosecution Case 444/02 Amended

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, On May 27, 2002, with others, caused the intentional death of another person, as follows:

1.   The above mentioned Defendant, at about the time set forth above, was contacted by ██████████████ (hereinafter – ██████ ) and asked him to prepare him to carry out a suicide attack in Petach Tikva. ██████ told the Defendant that

2.   The Defendant told ████████████ and ████████████ that ██████ wanted to carry out a suicide attack in revenge for the death of Mahmoud A-Titi.

[Stamp] P 5: 228 [continued]

Prosecution Case 444/02 Amended

22

3.  The day before the execution of the attack, with ████████ the Defendant brought ████ to his home in the Balata camp, where they filmed him that a video camera while he was holding an M-16 type rifle.

4.  After the Defendant finished filming ████ he asked ████████████ (hereinafter ████████ to drive him and ████ to Rafidia. When they arrived at the site, the Defendant called [unidentified abbreviation] and informed him that he had arrived at the café.

    ████ called ████████ and ████████ and ████ (hereinafter – ████).

    About five minutes later, ████ arrived, carrying a black package, which contained an explosive belt for carrying out the attack. ████ transferred the package to the Defendant. The Defendant transferred the package to ████ and asked ████ to join the taxi in which ████ was traveling. The Defendant asked ████ [sic] to drive behind the taxi in which ████ was traveling.

5.  ████ drove after the taxi in which ████ was traveling, and when they reached the town Azoun Alatma, at about 1:30 p.m ████ transferred the package to ████ and ████ called the Defendant and · ████ et hereafter, ████ returned to Nablus.

6.  After ████ arrived with ████ in Kfar Kassem and boarded the taxi, ████ called the Defendant and :

7.  At about 6:30 p.m., the above mentioned ████ arrived at the Em Hamoshavot Shopping Mall in Petach Tikva, as mentioned, near the place at which he had worked previously, while wearing an explosive belt. ████ approached a crowded place near a patisserie at 1 Rishon le Zion Street and detonated the explosive belt that he was wearing, with the intent of causing the death of other persons.

8.  As a result of the execution of the attack, **the late Ruth Peled** died.

[Stamp] P 5: 229

Prosecution Case 444/02 Amended

23

**Sixteenth count**: (Detailed Incident 4685/02, Petach Tikva Station)

**Nature of the offense**: Causing intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 2 and 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on May 27, 2002, with others, caused the intentional death of another person;

In other words, as a result of the suicide attack described in the previous account of the indictment that was carried out by ▬, **the late infant Sinai Keinan** died.

[Stamp] P 5: 229 [continued]

Prosecution Case 444/02 Amended

24

**Seventeenth count**: (Detailed Incident 4685/02, Petach Tikva Station)

**Nature of the offense**: Attempting to cause intentional death, an offense under Sections 51(A) and 7(C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 19-20, 2 and 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in and outside of the Area, on May 27, 2002, attempted with others to cause the intentional death of others;

In other words,  in the circumstances described in the previous count of the indictment, the Defendant attempted to cause the death of others. As a result of the execution of the attack by ▮▮▮▮ as set forth above, dozens of civilians were injured to varying degrees of severity.

**Eighteenth count**:

**Nature of the offense**: Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, at the time set forth above, met ▮▮▮▮▮▮▮, who told him that :

The Defendant expressed his consent to the plan of ▮▮▮▮▮▮

The Defendant provided ▮▮▮▮▮▮ three Magazines for a Kalashnikov type rifle, in order for him to use them in the commission of the attack.

**Nineteenth count**:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on several occasions, attempted with others to cause the intentional death of others, as follows:

[Stamp] P 5: 230

Prosecution Case 444/02 Amended

25

1.  In early 2001 or thereabouts, the Defendant departed with his fellow cell members, ████
    ████████████████████████ armed with M-16 type
    rifles, and the Defendant carried a Kalashnikov type rifle, and together they fired at a
    military jeep that was near Tzara Junction. The Defendant fired approximately 16 rounds
    at the military jeep, and his colleagues fired the rifles that they were carrying.

    After the gunfire, the Defendant and his fellow cell members fled to the Beit Alma Camp.

[Stamp] P 5: 230 [continued]

Prosecution Case 444/02 Amended

2.   After a few days, from that which has been stated above, the Defendant departed, **on several occasions**, along with his fellow cell members, towards a military point located near Har Grizim Junction, armed with rifles, and the Defendant was armed with an M-16 type rifle. The Defendant fired at the military point along with his colleagues.

3.   After early 2002, the Defendant, who was armed with a Kalashnikov type rifle, fired with ▆▆▆▆▆▆▆▆ and ▆▆▆▆▆ at a military point located between Tel and Burin.

## Twentieth count:

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, on several occasions, attempted with others to cause the intentional death of others, as follows:

1.   In early 2001 or thereabouts, the Defendant, armed with a Kalashnikov type rifle, with ▆▆▆▆▆ and ▆▆▆▆▆▆▆ who were armed with M-16 type rifles, laid two explosive devices, then connected a battery and 300 meter long wires to them. On that day, in the evening, a military jeep passed on the road leading to the settlement Bracha, and the above mentioned ▆▆▆ detonated the two charges, as a result of which the two explosive devices exploded.

Thereafter, the Defendant and his colleagues fled to Nablus.

2.   About a week later, the Defendant and his fellow cell members, who were armed with firearms, laid an explosive device weighing 50 kg, at Iba Junction. The Defendant and his colleagues concealed the explosive devices in weeds. The Defendant and his colleagues connected 200 meter long wires to the explosive device.

When a military jeep and a tank passed by the site, ▆▆▆ detonated the explosive device, after the tank stopped.

3.   During October 2001 or thereabouts, the Defendant, with his fellow cell members, ▆▆▆▆▆▆▆▆▆▆▆▆ laid two explosive devices on the bypass road overlooking the "Ein Almaa" area in Zawata.

[Stamp] P 5: 231

Prosecution Case 444/02 Amended

27

When they noticed a military jeep and a tank passing by, the Defendant and his colleagues detonated the explosive devices.

4.    During October 2001 or thereabouts, the Defendant and his fellow cell members laid an explosive on the bypass road leading to Asira Alashmalia. When IDF soldiers noticed the explosive device, they shot at them, and 20 minutes later, the Defendant activated the explosive device, which exploded as a result.

[Stamp] P 5: 231 [continued]

Prosecution Case 444/02 Amended

After the detonation of the explosive device, the Defendant and his fellow squad members fled to the Balata Camp.

<u>Twenty first count</u>:

<u>Nature of the offense</u>: Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

<u>Details of the offense</u>: The above mentioned Defendant, in the Area, on several occasions, conspired with others to cause the intentional death of another person, as follows:



1.    During the period after March 2002 or thereabouts, the Defendant asked ███████
      █████ (hereinafter – ████ to send to ███████████ (hereinafter –
      ) and ███████████ (hereafter – █████) and asked
      them to find a person who was prepared to carry out a suicide attack in the Israeli
      settlement Kedumim. ███ approached ███████████ and ███ and

      ███████████ carried out surveillance of the above mentioned settlement and
      informed the Defendant that (

      The Defendant told ███████████ that this distance was unsuitable and as a result the
      attack did not go ahead.

2.    In 2002 or thereabouts, the above mentioned Defendant, planned with ███████
      to carry out an attack in the Hawara Camp. ███████████ told the Defendant that
      ███████████

      The planning was for one of the attackers to drive a white jeep that looked like a Red
      Cross vehicle, and for this vehicle to be used as a car bomb. Then the attacker driving the
      jeep would reach the Hawara checkpoint, he would detonate the vehicle at the
      checkpoint.

      [Stamp] P 5: 232

Prosecution Case 444/02 Amended

After the detonation of the vehicle, two cells of terrorists armed with Kalashnikov rifles and hand grenades would penetrate the camp from two different points: 1. from the direction of Awarta; 2. from the direction of Rujeib.

███████ and ████████ conducted surveillance of the sector of the camp. However, this attack was not executed.

[Signature]
**Naji Amar, Lieutenant**
**Military Prosecutor**

[Stamp] P S: 232 [continued]

Prosecution Case 444/02 Amended

30

**List of witnesses for the prosecution:**

Detailed Incident 4968/02:

1. ███████████████ (taker of the confession of the Defendant dated June 5, 2002).

2. ███████████████ (taker of the confession of the Defendant on June 10, 2002 and June 11, 2002).

3. ███████████████ (taker of the confession of the Defendant on July 9, 2002 and July 11, 2002).

4. ███████████████ (taker of the confession of the Defendant dated August 20, 2002).

5. ███████████████ (performer of identity parade for witnesses: ███████ ███████████████

6. ███████████████ (detained in Prosecution Case ███████████

7. ███████████████ (detained in Prosecution Case ███████

8. ███████████████ (detained in Prosecution Case ███████ ███████

9. ███████████████ (detained in Prosecution Case ███████

10. ███████████████ (detained). ███████

11. ███████████████ (detained).

12. ███████████████ (detained, Prosecution Case ███████

13. ███████████████ (detained).

14. ███████████████ (detained).

15. ███████████████ (detailed).

[Stamp] P 5: 233

Prosecution Case 444/02 Amended

16. Remand hearing transcripts dated: June 17, 2002, July 10, 2002 and August 12, 2002.

**Detailed Incident 502/02 Zion**

17. ███████████████████ (submitter of memorandum, seizure and marking report).

18. ███████████████ (submitter of seizure and marking report).

19. ████████████ [submitter of memorandum, seizure and marking report + photographs).

20. █████████████████ (submitter of action report – finding of magazine coupler).

21. ████████████████ (submitter of seizure and marking report).

22. ██████████████ (eyewitness – pursued the terrorist)

23. ███████████ (eyewitness)

24. ██████████ (eyewitness).

25. ███████████ (eyewitness)

26. █████████████ (eyewitness – pursued the terrorist)

27. ██████████████ (eyewitness)

28. █████████ (eyewitness)

29. █████████ (eyewitness)

30. ██████████ (eyewitness)

31. ███████████ (eyewitness)

32. ███████████████ (eyewitness)

33. ██████████ (eyewitness)

34. ███████████ (eyewitness)

[Stamp] P 5: 233 [continued]

Prosecution Case 444/02 Amended

35. ███████████ (eyewitness)

36. █████████████ (eyewitness)

37. ████████████ (eyewitness)

38. ████████████ (eyewitness)

39. █████████████ (identification of the body of the late Ora (Svetlana) Sandlar).

40. ██████████████████ Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Ora (Svetlana) Sandlar).

41. ███████████, Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Sarah Hamburger).

**Detailed Incident Case 5858/02**

42. ████████████████

43. ██████ Yarkon Identification, Israel Police.

44. █████████████ Yarkon Investigations Branch Officer.

45. ██████████ Yarkon Special Investigations Team.

46. ██████████ (eyewitness)

47. ███████████ (eyewitness).

48. ██████████ (security guard at the restaurant)

49. █████████ (eyewitness)

50. ██████████ (eyewitness)

51. █████████ (eyewitness)

52. 22280 Shlomo David (injured in the attack)

53. ███████████ (eyewitness)

[Stamp] P 5: 234

Prosecution Case 444/02 Amended



54. ███████████████ (eyewitness)

55. ███████████████ (eyewitness)

56. 309998540 Ivana Richtman (injured in the attack)

57. ███████████████ (eyewitness)

58. ███████████████ (eyewitness)

59. ███████████████ (eyewitness)

60. ███████████████ (eyewitness)

61. ███████████████ (eyewitness)

62. ███████████████ (eyewitness)

63. ███████████████ (eyewitness)

64. ███████████████ (eyewitness)

65. ███████████████ (eyewitness)

66. ███████████████ (eyewitness)

67. ███████████████ (eyewitness)

68. ███████████████ (identification of the body of the late Yosef Habi)

69. 31877665 Noam Asafi (injured in the attack)

70. 29416740 Yossi Azuz (injured in the attack)

[Stamp] P 5: 234 [continued]

Prosecution Case 444/02 Amended

71. 43401140 Michael Gruber, Identity No. (injured in the attack).

72. ███████████ the National Institution of Forensic Medicine, Tel Aviv.

73. Hospital records – institutional record.

**Detailed Incident 4685/02 Petach Tikva Station**

74. ███████████ (details in the prosecution).

75. ███████████ (details in the prosecution).

76. ███████████ (details in the prosecution).

77. ███████████ (details in the prosecution).

78. ███████████ (details in the prosecution).

79. ███████████ (bomb disposal laboratory – exhibit cover form)

80. Laboratory expert opinion (will be forwarded later).

81. ███████████ the Institution of Forensic Medicine (expert opinion – unidentified body).

82. ███████████, the Institution of Forensic Medicine (expert opinion – the late Ruth Peled).

83. ███████████ the Institution of Forensic Medicine (expert opinion – the late Sinai Keinan).

84. ███████████ (action report).

85. ███████████ (action report).

86. 310905773 Pasiev Yuri (memorandum – severely injured).

87. ███████████ (action report).

88. ███████████ (details in prosecution).

89. ███████████ (details in prosecution).

90. ███████████ (details in prosecution).

[Stamp] P 5: 235

Prosecution Case 444/02 Amended

35



91. ██████████████ (details in prosecution).

92. ████████████ (details in prosecution).

93. ███████████████ (details in prosecution).

94. ██████████████ (details in prosecution).

95. █████████████ (details in prosecution).

96. █████████████ (details in prosecution).

97. ███████████ (details in prosecution).

98. ██████████████ (details in prosecution).

99. ████████████ (details in prosecution).

100. █████████████ (details in prosecution).

101. ████████████ (details in prosecution).

102. ██████████████ (details in prosecution).

103. ██████████████ (details in prosecution).

104. ███████████ (details in prosecution).

105. ██████████ (details in prosecution).

106. ████████████████████ (scene visit report – seizure of exhibits + composer of photograph report).

[Stamp] P 5: 235 [continued]

Prosecution Case 444/02 Amended

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                          Plaintiffs,

        vs.                                         No. 04 Civ. 00397 (GBD) (RLE)

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                          Defendants.

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.  The attached translation from Hebrew to English is an accurate representation of the
    document received by Rina Ne'eman Hebrew Language Services, to the best of my
    knowledge and belief. The document is designated as P 5:218-35.

2.  I am a professional translator with a B.A. in International Relations from the Hebrew
    University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in
    Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.  To the best of my knowledge and belief, the accompanying text is a true, full and
    accurate translation of the Hebrew-language document designated bearing the bates
    number P 5:218-35.

Dated: March _6_, 2014

                                            Rina Ne'eman

ss.: New Jersey

     On the __6__ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
__6__ day of March, 2014

_Leonor Troyano_
Notary Public

LEONOR TROYANO
ID # 2385520
NOTARY PUBLIC OF NEW JERSEY
Commission Expires March 9, 2016



<div dir="rtl">

צבא    הגנה    לישראל

בבית המשפט הצבאי                    תיק בימ"ש 6446/02

ב ש ו מ ר ו ן                      תיק תביעה 756/02

בפני    הרכב                       תיק פ.א. 4968/02 פתח-תקווה

                                   4258/02 ירקון

                                   502/02 ציון

                                   4685/02 תחנת פ"ת

במשפט שבין :

התובע הצבאי

- המאשים -

- נ ג ד -

אבראהים עדנאן נ'יב עבד-אלחי

(עצור מיום 3/6/02)

ת.ז. 411124423 יליד 20/8/79 מכפר בורין

- הנאשם -

כתב אישום (מתוקן)

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות:

פרט ראשון:

מהות העבירה: חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 84(1)(א) ו- 85(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

פרטי העבירה: הנאשם הנ"ל, באזור, במהלך חודש דצמבר 00' או בסמוך לכך, היה חבר בחוליה
צבאית השייכת לארגון "כתאאב שוהדאא אלאקצא", שהינה התאחדות בלתי
מותרת.

דהיינו, הנאשם הנ"ל, במעוד הנ"ל, החליט להצטרף לחוליה צבאית על מנת לפעול
במסגרתה בפעולות צבאיות נגד מטרות ישראליות.

לשם כך, פנה הנאשם אל חברו ███████ (להלן- ███████),
והודיע לו על רצונו לפעול בפעילות צבאית. ███████ הנ"ל אמר לנאשם כי ישנה
חוליה צבאית השייכת ל"כתאאב שוהדאא אלאקצא", שמבצעת פיגועי ירי ותהנח
מטעני חבלה נגד מטרות ישראליות. ███████ הציע לנאשם להצטרף לחוליה זו,
והנאשם הסכים לכך.

</div>

doc.7560\חדשה תיקיה\עבודה\שולחן C:\WINDOWS

2

חברי חוליה זו, שמכונה חולייית "יהעיר העתיקה"י, מלבד הנאשם היו: ███████ ███████

███████

הנאשם, כעבור שלושה חודשים מיום הצטרפותו לחוליה הצבאית הנ"יל, החליט
בעקבות סכסוך אישי שהיה לו עם אחד מחברי החוליה, להפסיק חברותו בחוליה
זו.

לאחר שהנאשם עזב את החוליה הנ"ל, נפגש במהלך חודש מרץ 01', בפעיל הצבאי
███████. הנאשם ביקש מ███████ כי יפעל עימו בפעילות צבאית.

███████ הסכים לבקשתו של הנאשם, והכיר לו פעיל הצבאי של "כתאיב
שוהדאא אלאקצא" ███████.

כאשר הפעילים הצבאיים ███████
ידעו כי הנאשם עובד עם ███████ ביקשו ממנו כי יצטרפו לחוליה שאליה
משתייך הנאשם. ███████ הסכים לצירופם לחוליה.

חברותו של הנאשם בחוליה הצבאית נמשכה עד יום מעצרו.

**פרט שני :**

**מהות העבירה:** נסיון גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון
(ויישי) )מסי 378(, תשיל-ל 1970; וסעיפים 20-19, 14 לצו בדבר כללי האחריות
לעבירה (ויישי) (מסי 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במהלך חודש אוקטובר 01' או בסמוך לכך, ניסה ביחד עם
אחר לגרום למותו של אחר בכוונה,

דהיינו, הנאשם הנ"ל, במועד הנ"ל בסמוך לשעות הערב, יצא ביחד עם חברי
חולייתו ███████ לכיוון מחסום
דיר-שרף על מנת לבצע פיגוע חבלני.

███████ איישר לנאשם לבצע את הפיגוע, ומסר לו רובה 16 – M עם שתי
מחסניות.

הנאשם וחבריו הנ"ל נסעו למקום המחסום באמצעות רכב מסוג פולקסווגן
גולנה.

כשהגיעו בסמוך למקום המחסום במרחק 15 מטר מהמחסום, הפנו את כיוון
הרכב לכיוון הנגדי, הנאשם ו███████ פתחו את הדלתות האחוריות.וירו
באמצעות הרובים לעבר שלושה החיילים שעמדו במחסום, כאשר הרכב בו ישב
היה במגמת נסיעגת לכיוון שכם.

הנאשם ירה את כל הכדורים שהיו במחסנית לכיוון החיילים, ו███████
גם הוא ירה את כל הכדורים שבמחסנית לעבר החיילים.

החיילים בהתחלה לא הגיבו בירי; אולם, לאחר שהרכב בו נסע הנאשם, היה
במרחק 300 מטר, שמעו הנאשם וחבריו קולות ירי,

3

**פרט שלישי:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בסוף שנת 10' או בסמוך לכך, היה שותף לניסיון גרימת מותו של אדם אחר בכוונה;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, נתבקש ע"י ███████████ פעיל צבאי של ארגון "שוהדאא אלאקצא", להשתתף בביצוע פיגוע ירי לעבר כלי רכב ישראלי.

█████ אמר לנאשם כי יבצע מעקב אחרי תנועת כלי רכב מסוג סובארו שנהוג ע"י קצין ישראלי.

הנאשם הסכים להצעתו של ████████

בהתאם, ארב הנאשם ביחד עם ██████████████
בסמוך צומת רוגייב, לכלל הרכב שנסע מאיזור אלון מורה לכיוון חווארה.

הנאשם היה חמוש ברובה מסוג 16 – M, ███████████ היה חמוש בקלצ'ניקוב, ו████████████ היה חמוש במקלוד, ה██████████ היה חמוש ברובה מסוג 16 – M.

כשהתקרב הרכב למרחק כ- 200 מטר מהמקום שבו ארבו הנאשם וחבריו החוליה, ירה הנאשם לעברו כ- 2 כדורים, ██████ נאצר אלחזיב ירה כ- 11 כדורים, ו██████ ירה לעברו כ- 10 כדורים.

**פרט רביעי:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, במהלך חודש ינואר 02' או בסמוך לכך, היה שותף לניסיון גרימת מותו של אדם אחר בכוונה;

דהיינו, במועד הנ"ל, ביצע ████████████ תצפית על קרוואן שנמצא ביישוב הישראלי יצהר. ██████████ למדו מהתצפית כי בכל יום מגיע לקרוואן בן-אדם.

לאחר ביצוע התצפית קשר הנאשם ביחד עם ████████████████████
████████████████████, קשר לבצע ירי לעבר הקרוואן.

הנאשם תיכנן את תוכנית ביצוע הפיגוע, ולפי התוכנית שימש כאחראי על החוליה במהלך ביצוע הפיגוע.

הנאשם יצא ביחד עם החבורה הנ"ל, כשהם חמושים ברובים מסוג 16 – M, רובה אנגלי, קלצ'ניקוב, לכיוון איזור היישוב יצהר.

4

כשהגיעו למקום, ארבו על גבעה שנמצאת במרחק כ- 300 מטר מהמקום, ושמשקיפה על האיזור.

כעבור שעה הגיע לקרוואן כלי רכב מסוג טנדר פתוח, ושממנו ירדו שלושה אנשים.

כאשר התקרבו האנשים לקרוואן, ירו הנאשם וחבריו לעברם באמצעות כלי חירים שברשותם. הנאשם ירה כ- 10 כדורים.

לאחר הירי, נמלטו הנאשם וחבריו מהמקום.

<u>פרט חמישי:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיפים 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378, תשי"ל- 1970 ; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בסוף חודש פברואר 02', ביחד עם אחרים גרם למותו של אדם אחר בכוונה, דהיינו :

1. הנאשם הנ"ל, במועד הנ"ל, כאשר השתתף בהלווייתו של מחמד אחמד מוצטפא אלקאסם נכח בביה"ח רפידיה בשכם, ובמהלך שהותו שם סיפר לו ▆▆▆▆▆▆▆ כי בביה"ח נמצא זאהר תורנאבי יי"ל (להלן – המנוח). הנאשם סיפר ל▆▆▆▆▆▆ אודות כך.

2. לאחר ש▆▆▆▆▆ שמע על כך, חטף את הממנה מביה"ח. ולאחר-מכן, ▆▆▆▆▆ סיפר לנאשם כי חקר את הממנה אודות חשדות לשיתוף פעולה לטובת מדינת ישראל, והמנוח הודה בכך, ולכן החליט לרצוח את המנוח.

3. הנאשם ביקש מ▆▆▆▆▆ כי יפגש עימו בשעות הערב על מנת שיקח אותם למקום מתאים שבו ירצה הממנה. הנאשם נפגש שוב עם ▆▆▆▆▆▆▆▆, והיה עימם הממנה. הנאשם וחבריו נסעו, באמצעות כלי רכב מסוג פולקסווגן, לשכונת המהנדסים שנמצאת בסמוך לגעיד.

4. במקום הנ"ל הוציאו את הממנה מהרכב. הנאשם ביקש מהממנה כי יתפלל לפני שירצחו אותו, אולם הממנה סירב. הנאשם שאל אותו אם יהיה מוכן לרצוח את הגורם משירות הביטחון הכללי שאחראי עליו, אולם הממנה סירב לכך.

5. ואז ירו ▆▆▆▆▆▆ על הממנה כ- 15 כדורים, בכוונה לגרום למותו. לאחר-מכן, התקרב הנאשם אל הממנה, וירה כדור אחד בראשו וזאת כדי לוודא את מותו.

6. כתוצאה מכך, נגרם מותו של הממנה.

5

7. הנאשם וחבריו הניחו על גופתו של המנוח את "יהוד'אתי", וכרוז של ארגון "שהוד'אא אלאקצא".

<u>פרט שישי</u>: (פ.א. 502/02 ציון)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיפים 51)א((א), ו- 7(נ) לצו בדבר הוראות ביטחון (יהוש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יהוש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, ביום 22/01/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. במהלך עבודתו במשטרה חומית הפלסטינית, הכיר הנאשם את סעיד אברהים רמדאן (להלן – סעיד). במהלך אחת הפגישות סיפר סעיד לנאשם כי ברצונו לבצע פיגוע התאבדות, והנאשם ביקש מסעיד כי יתן הזדמנות לבדוק את העניין.

2. הנאשם פנה ל⬛⬛⬛⬛⬛⬛⬛⬛ והודיע לו אודות כוונות סעיד; והלה הפנה אותו ל⬛⬛⬛⬛⬛⬛⬛. הנאשם נפגש עם ⬛⬛⬛⬛⬛⬛, והודיע לו אודות כוונות סעיד. ⬛⬛⬛⬛⬛ ביקש מהנאשם כי יבדוק את כנות כוונות סעיד.

3. הנאשם, במטרה לבחון את סעיד, הלבישו אותו בתגרות נפץ "דמהי" ונתן לו מספר טלפון דמיוני, שלח אותו מאיזור זוותא לאיזור טול-כרם, וביקש ממנו כי יתקשר אליו בעת הגעתו לאיזור טול-כרם. סעיד לבש את תגרות הנפץ והחל בדרכו לטול-כרם. הנאשם, שמצא שסעיד איתן בדעתו, ביקש ממנו לחזור, באמתלה כי מועד הפיגוע חושמנו בשל מחסומי צבא בדרך. סעיד בטח על הנאשם, והלה ביקש ממנו כי יהיה מוכן לבצע את הפיגוע בכל עת.

4. בהתאם, פנה הנאשם ל⬛⬛⬛⬛⬛⬛ וסיפר לו כי סעיד מוכן לביצוע הפיגוע, והלה ביקש מהנאשם כי יפגישם עם סעיד.

5. במהלך אותה תקופה, פנה ⬛⬛⬛⬛⬛⬛⬛⬛ (להלן – ⬛) אל ⬛⬛⬛⬛⬛⬛⬛⬛⬛ וביקש ממנו כי ישלח אליו אדם המוכן לבצע פיגוע התאבדות. ⬛⬛⬛ מסר ל⬛⬛⬛⬛⬛⬛⬛ כי הוא עצמו ידאג להכניס את המחבל המתאבד לירושלים על מנת שיבוצע שם פיגוע התאבדות.

6. הנאשם הביא את סעיד לביתו של ⬛⬛⬛, ובביתו של ⬛ נכח אדם בשם ⬛⬛⬛⬛⬛⬛ (ואחר בשם ⬛⬛⬛⬛⬛⬛⬛⬛ צילמו את סעיד, ⬛ כתב את צוואתו של סעיד. סעיד הצטלם כשהוא מחזיק עליו רובה מסוג 16 – M, ספר קוראן, ומקריא את צוואתו.

7. לאחר-מכן, לקח הנאשם את סעיד למשפחתו, שם נפרד מהם בלי להודיע להם על כוונותיו להתאבד.

8. לאחר-מכן ביקש הנאשם מסעיד כי ביום שלמחרת יצא לרמאללה. וביום

6

שלמחרת בשעות הבוקר, הבחין הנאשם כי סעיד יוצא לרמאללה.

9. בתאריך 22/1/02, נפגש סעיד הנ"ל עם  הנ"ל ברמאללה והודיע לו כי נשלח ע"י  לצורך ביצוע פיגוע התאבדות.

10.  הנ"ל התקשר אל <span>(מכונה "
"</span> ) וביקש ממנו להגיע אליו. <span>(עם סעיד</span> נפגש עם ברמאללה. <span>לקחו את סעיד למספרה על מנת שיסתפר</span>
לפני ביצוע פיגוע ההתאבדות המתוכנן.

11. לאחר-מכן, התקשרו <span>הנ"ל ו</span> אל <span>(מכונה "</span> ") וביקשו ממנו להסיע מחבל מתאבד, בהתכוונם
לסעיד, מרמאללה לירושלים על מנת שהמחבל המתאבד יבצע שם פיגוע
התאבדות וגרום למותם של אזרחים ישראלים רבים ככל האפשר.

12. <span>הגיע לרמאללה ביחד עם</span>
<span>(להלן – </span> ), וזאת לאור שהאחרון הסכים להשתתף בהשתעת
המחבל המתאבד מרמאללה לירושלים. <span>הגיע לפגישה ברכב</span>
איטווו טנדר עם לוחיות רישוי ישראליות.

13. לפי הוראתו של <span>הנ"ל, נסעו</span> ברכב
האיסוזו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסומי
משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל
המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

14. <span>נסעו מרמאללה דרך "ראפאת" והגיעו</span>
לאיזור התעשייה עטרות; שם חזרו השניים לכביש הראשי
ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל למחנה רמה, שם הם
פנו ימינה ונסעו לצומת אדם. בצומת אדם השניים פנו ימינה ונסעו עד צומת
חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת
הגבעה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. 
<span>ראו כי בדרך שבה נסעו ניתן להוביל את המחבל המתאבד</span>
לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

15. <span>, על פי הוראתו של</span> <span>, הביא רוסי"ר 16 – M ו- 3 מחסניות</span>
לרוסי"ר הנ"ל מלאות בכדורים, כאשר שתי מחסניות היו מחוברות בצולבת.

16. באותו היום, נפגשו <span>עם</span>
<span>באיזור המלון "סיטי אינ" באלבירה.</span> <span>הכיר ל</span>
<span>ו</span> <span>את סעיד הנ"ל.</span>

17. <span>הסביר ל</span> <span>כי סעיד הוא המחבל</span>
המתאבד, אשר אותו הם צריכים לתובל לירושלים על מנת שיבצע שם
פיגוע התאבדות כשיירה לעבר אזרחים ישראליים במטרה לגרום לגרום למותם של

7

אורחים רבים ככל האפשר.

18. ███████ הסתירו את רוסי"ר ה- M – 16 והמחסניות הנ"ל ברכב האיסוזו הנ"ל.

19. ███████ הסיעו את סעיד לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתואר לעיל.

20. בירושלים, נסע ███████ ███████ לרחוב שיחי ג'ראח. שם הם הוציאו את רוסי"ר ה - M - 16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד, והמשיכו בנסיעה לכיוון רח' הנביאים. בהגיעם לצומת הרחובות שטראוס-הנביאים, השניים עזרו עצרו את רכב האיסוזו.

21. ███████ אמרו לסעיד לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שיראה בו הרבה אנשים.

22. לאחר שסעיד ירד מהרכב, במקום הנ"ל, עם רוסי"ר 16 – M והתחמושת, נסע ███████ מהמקום ברכב האיסוזו, דרך שכונת "מוסררה" לכביש מספר 1, ומשם נסע דרך הכביש הראשי לרמאללה. במקביל, ולאחר מספר דקות הגיע סעיד לרחוב יפו, כשהוא חמוש ברוסי"ר 16 M–והתחמושת.

23. בסביבות השעה 16:20, כשהוא עומד מול בית מס' 47 ברחוב יפו או בסמוך לכך, טען סעיד את רוסי"ר 16 – M שבו החזיק, צעק "יאללה ,הוא אכבר" ופתח בירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו 27 שהיה באותה עת בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך החנויות הסמוכות בכוונה לגרום למותם של אזרחים, רבים ככל הניתן. תוך כדי כך שהוא ממשיך לירות, נמלט סעיד מהמקום לעבר הנ"ל ש נמצא ברחוב הרב קוק. שם החליף סעיד מחסניות והמשיך לירות לעבר האזרחים בכוונה לגרום למותם. סעיד ירה ברוסי"ר 16 – M, שבו החזיק מעל ל- 38 כדורים. סעיד המשיך לירות לעבר האזרחים עד שנתנר ע"י האזרחים והשוטרים שהגיעו למקום.

24. במעשיו המתוארים לעיל, גרם הנאשם בכוונה למותה של אורה (סבטלנה) סנדלר ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו ע"י סעיד הנ"ל.

**פרט שביעי : (מ"א 502/02 ציון)**

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), 5ו(א)-ה, לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, 1- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה :** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 22/1/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה;

8

דהיינו, במעשיו של הנאשם המתוארים בפרט האישום הקודם נפטרה שרה
הממבורגר ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו ע"י סעיד הנ"ל.

<u>פרט שמיני</u>: (פ"א 502/02 ציון)

<u>מהות העבירה</u>: ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-(ג)-7 לצו בדבר הוראות
ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 20-19, 14, ו- 2 לצו בדבר כללי
האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

∙ <u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 22/1/02 או בסמוך לכך, היה שותף
לניסיון גרימת מותם של אחרים בכוונה.

דהיינו, כתוצאה מהפגיעה המתואר בפרט האישום הקודם, ניסה הנאשם לגרום
למותם של אחרים. כתוצאה מהפגיעה נפצעו מעל 45 אזרחים שהיו במקום,
גרמו פציעה קלות וקשות.

<u>פרט תשיעי</u>: (פ"א 4258/02 ירקון)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-(ג)-7 לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות
לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף
לגרימת מותם של אחרים בכוונה, דהיינו:

1. במועד הנ"ל פנה אל הנאשם ▮▮▮▮▮▮ והודיע לו על רצונו לבצע
   פיגוע התאבדות. הנאשם בתורו לבחון את כנות כוונותיו של
   חסונה שלח אותו עם תגורת נפץ "דמה", לקח אותו לאיזור זוותא, מסר לו
   מספר טלפון, ואמר לו כשיגיע לאיזור טול-כרם שיתקשר ויודיע לו.

2. לאחר שוודא הנאשם את כנות כוונות ▮▮▮▮▮▮, ביקשו לחזור ואמר לו כי
   מועד הפיגוע נדחה. הנאשם לקח את ▮▮▮▮ ▮▮▮▮ לביתו של ▮▮▮▮
   ▮▮▮▮, שם צילמו אותו במעלכמת וידאו. הקריא צוואה ▮▮▮▮▮▮
   שבה אמר כי הפיגוע הוא נקמה על מותם של ▮▮▮▮▮▮▮▮▮▮

3. באותה תקופה יצר ▮▮▮▮▮▮▮▮ (להלן – ▮▮▮▮) קשר
   טלפוני עם ▮▮▮▮▮▮▮▮▮, ובמהלך השיחה הודיע ▮▮▮▮▮ ל ▮▮▮▮
   חנ"ל כי הוא שולח אלו מתבצד מתאבד נוסף על מנת ש ▮▮▮ ישלח אותו אל
   תוך מדינת ישראל לצורך ביצוע פיגוע ירי.

4. הנאשם לקח את ▮▮▮▮▮▮▮ למקום שבו נהג ללון באיזור אלמחיפה.
   ביום שלמחרת, בתאריך 4/3/02 שלח אותו לרמאללה, מסר לו מספר טלפון,
   וביקש ממנו כי יתקשר אלו כשיגיע לרמאללה. ▮▮▮▮▮▮ עשה כן,
   כשהגיע לרמאללה.

9

5. ████ יצר קשר עם ████ הנ"ל ואמר לו כי הגיע לרמאללה עפ"י
הוראתו של ████ וכי הוא המחבל המתאבד לצורך ביצוע פיגוע הירי
המתוכנן.

6. ████ עלה לרכב, אשר בו נהגו ████ וילדו ישב ████
████ והשלושה נסעו לכיוון תל-אביב על מנת לבצע שם את פיגוע
ההתאבדות המתוכנן.

7. באותו הלילה, לאחר ש████ ,
████ הגיעו לתל-אביב, בסמוך לגשר מעריב שבדרך פתח-תקווה, הראה
████ ████ מקום הומה אדם והניחה אותו לבצע שם את
הפיגוע המתוכנן.

8. ████ הוציא רוס"ר 16 – M, מחסניות וריגומי יד, שהיו
מוסתרים בדלת של הרכב.

9. בסמוך לשעה 15:2, בתאריך 5/3/02 או במועד הסמוך לכך, ירד ████
████ מן הרכב, כשהוא חמוש ברוס"ר 16 - M, רימוני יד, וסכין קומנדו,
בסמוך למסעדת "סי-פוד מרקט" (להלן – המסעדה) על מנת שיבצע את
הפיגוע המתוכנן. במקביל, נסעו ████ ████ ברכב
מהמקום לכיוון ירושלים.

10. ████ התקרב אל המסעדה ופתח באש אוטומטית ברוס"ר 16 –
M לעבר יושבי המסעדה ועוברי האורח בדרך פתח-תקווה בכוונה לגרום
למוות.

11. לאחר-מכן, השליך ████ את שני רימוני היד לעבר המסעדה
בכוונה לגרום למוות של יושבי המסעדה ועוברי אורח, אך רימוני היד לא
התפוצצו.

12. לאחר שרוס"ר ה- 16 – M, אשר בו החזיק ████ הפסיק לירות
עקב מעצור, הוציא ████ סכין הקומנדו שהחזיק וחל לדקור אזרחים
ישראליים שהיו במקום בכוונה לגרום למוות.

13. למקום האמור הגיע השוטר רס"ר סלים ברכאת ז"ל, אשר הסתער לעבר
████ והשתלט עליו. רס"ר סלים ברכאת ז"ל הספיק להודיע
למפקדיו על ההשתלטות על המחבל.

14. בשלב זה, דקר ████ באמצעות סכין הקומנדו הנ"ל את רס"ר
סלים ברכאת ז"ל בצווארו בכוונה לגרום למותו. כתוצאה מהדקירה, נפטר
רס"ר סלים ברכאת ז"ל במקום.

15. במעשיו המתוארים לעיל, האשם הנ"ל, גרם בכוונה למותו של רס"ר סלים
ברכאת ז"ל.

10

<u>פרט עשירי</u>: (פ"א 4258/02 ירקון)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ל 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה.

דהיינו, במעשיו המתוארים בפרט האישום הקודם של הנאשם, נפטר יוסף חבי ז"ל, אשר נדקר על-ידי ▮▮▮▮▮▮▮▮▮ בבית התות ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

<u>פרט אחד-עשר</u>: (פ"א 4258/02 ירקון)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו-7(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ל 1970; וסעיפים 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לגרימת מותם של אחרים בכוונה.

דהיינו, במעשיו המתוארים בפרט האישום הקודם של הנאשם, נפטר אליהו דהן ז"ל, אשר נדקר על-ידי ▮▮▮▮▮▮▮ בבית החזה ובחלקים נוספים בגופו ונפטר כתוצאה מכך.

<u>פרט שנים-עשר</u>: (פ"א 4258/02 ירקון)

<u>מהות העבירה</u>: ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ל 1970; וסעיפים 20-19, 14, ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 5/3/02 או בסמוך לכך, היה שותף לניסיון גרימת מותם של אחרים בכוונה.

דהיינו, הנאשם הנ"ל, במעשיו המתוארים בפרט האישום הקודם, ניסה לגרום למותם של אזרחים רבים ככל האפשר.

כתוצאה מהיריות שנורו עי" ▮▮▮▮▮▮ נפצעו עשרות אזרחים ישראליים בדרגות פציעה קלות וקשות.

<u>פרט שלושה-עשר</u>:

<u>מהות העבירה</u>: החזקת אמל"ח, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ל- 1970.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, במהלך חודש מרץ 02' או בסמוך לכך, החזיק ברשותו כלי יריה, תחמושת, רימון יד, כלי או חפץ או דבר המתוכנן או המסוגל לגרום למוות

או חבלה חמורה, מבלי שהיתה ברשותו תעודת היתר שהוענקה ע"י מפקד צבאי
או מטעמו ;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, קיבל מהאחראי על הביטחון הימי בשכב
██████, 6 מחסניות לרובה סלצ'ניקוב, 30 נפצים למטעני חבלה, 2 ח"ג אבק
שריפה, מטול רימונים.

הנאשם קיבל את האמור לעיל, בתדירות של שלוש פעמים בחודש

**פרט ארבעה-עשר :**

**מהות העבירה :** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשנ"ל 1970, וסעיפים 20-19, 14, לצו בדבר כללי האחריות
לעבירה (יו"ש) (מס' 225), תשכ"ח 1968 ;

**פרטי העבירה :** הנאשם הנ"ל, באיזור, בחודש אפריל 03' או בסמוך לכך, ניסה ביחד עם
אחרים לגרום למותם של אחרים בכוונה, דהיינו :

1. במועד הנ"ל, הנאשם ביחד עם פעילי כתאא'ב ''שוהדאא' אלאקצא'', ██████
   ██████ירה
   לעבר כוחות צה"ל בעת כניסתם למחנה בלאטה.

2. הנאשם וחבריו הנ"ל, שציפו לכניסת כוחות צה"ל למחנה, הניחו מטעני
   חבלה רבים בכניסה למחנה. בעת כניסת כוחות צה"ל, הנאשם וחבריו
   הוליכו/הפעילו את המטענים נגד כוחות הצבא, וירו לעברם באמצעה כלי
   נשק.

3. הנאשם וחבריו חולייתו, פעלו כאמור במשך שמונה ימים.

4. אחרי יציאת הצבא מהמחנה החל הנאשם וחברי חולייתו לחכין מספר רב
   של מטעני חבלה, כדי להשתמש בהם נגד כוחות הצבא במידה ויכנסו שנית
   למחנה.

**פרט חמישה-עשר :** (פ.א. 4685/02 תחנת פ"ח)

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 3(א) לצו בדבר חוראות ביטחון
(יו"ש) (מס' 378), תשנ"ל 1970, וסעיפים 14, ו- 2 לצו בדבר כללי האחריות,
לעבירה (יו"ש) (מס' 225), תשכ"ח 1968.

**פרטי העבירה :** הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 23.5.03, ביחד עם אחריך גרם
למותו של אדם אחר בכוונה, דהיינו :

1. הנאשם הנ"ל, בסמוך למועד הנ"ל, פנה אליו ██████ (להלן:
   ██████), וביקש ממנו כי יכין אותו לביצוע פיגוע התאבדות בנ"ה ביה"ד
   סיפר לנאשם כי הוא עבד בקניון בני"ת, ומכיר את המשוב היטב

2. הנאשם סיפר ל ██████ כי יהודר רצח נפש ██████
   התאבדות כנקמה על מותי של ██████

P 5: 228



12

3. יום לפני ביצוע הפיגוע, הביא הנאשם, ביחד עם ███ את ███ לביתו במחתנה בלאטה, שם ציבמו אותו במצלמת וידאו כשהיא מחזיק ברובה מסוג 16 – M.

4. אחרי שהנאשם סיים לצלם את ███ ביקש מ███ (להלן ███ (להלן ) כי יסיעם הוא ו███ לרפידיה. ███ הסכים והסיע אותם לבית קפה אלמד'אפה ברפידיה. כשהגיע למקום, התקשר הנאשם לבלמ"ג והודיע לו כי הגיע לבית הקפה.

███ התקשר ל███████████ ה██████ ובידר עימם את העביר
ל███████ (להלן - ███████) חגורת נפץ

כעבור כחמש דקות הגיע ███ נשא עליו חבילה בצבע שחור, ושהכילה חגורת נפץ לביצוע הפיגוע. ███ העביר לנאשם את החבילה. הנאשם העביר את החבילה ל███. ובידע מראאד כי יצטרף אל המונית שנוסע בה ███ הנאשם ביקש מ███ כי יסע אחרי המונית שנוסע בה ███.

5. ███ נסע אחרי המונית שנסע בה ███, וכשהגיעו לישוב עזון אלעתמה, בסמוך לשעה 13:30 העביר ███ את החבילה ל███████. ███ התקשר לנאשם ועידכן אותו כי העביר את החבילה כאמור. לאחר-מכן חזר ███ אל שכם.

6. לאחר שהגיע ג'יהאד עם ███ לכפר קאסם ועלה על מונית, התקשר אל הנאשם ומסר לו כי ███ עלה למונית בדרכו לביצוע הפיגוע.

7. סמוך לשעה 18:30 הגיע ███ הנ"ל לקניון אם-המושבות בפ"ת. כאמור בסמוך למקום שבו הוא עבד בעבר, כשעליו חגורת הנפץ. ███ התקרב אל מקום הומה אדם בסמוך לקונדיטוריה ברחי ראשליצ 1, ופוצץ את חגורת הנפץ שהייתה עליו, בכוונה לגרום למותם של בני אדם אחרים.

8. כתוצאה מביצוע הפיגוע נפטרה ריות פלד ז"ל.

**פרט שישה-עשר** : (פ.א. 4685/02 תחנת פ"ת)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיפים 51(א)א. 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מסי 378), תשמ"ל 1970; וסעיפים 2, ו- 14 לצו בדבר כללי האחריות, לעבירה (יו"ש) (מסי 225), תשכ"ח- 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאיזור, בתאריך 27.5.02, ביחד עם אחרים גרמ למותו של אדם אחר בכוונה;

דהיינו, כתוצאה מפיגוע התאבדות המתואר בפרט האישום ההחמש שבוצע ע"י ███, נפטרה התיעוקת סיני קינן ז"ל.

13

<u>פרט שבעה-עשר</u> : (פ.א. 4685/02 תחנת פ"ת)

<u>מהות העבירה</u> : ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א), ו- 7(ג) לצו בדבר הוראות
ביטחון (יו"ש) (מס' 378), תשי"ל- 1970 ; וסעיפים 20-19, 2, 14 לצו בדבר כללי
האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באיזור ומחוץ לאיזור, בתאריך 27/5/02, ניסה ביחד עם אחרים
לגרום למותם של אחרים בכוונה;

דהיינו, בנסיבות המתוארות בפרט האישום הקודם, ניסה הנאשם לגרום למותם
של אחרים. כתוצאה מביצוע הפיגוע ע"י ████ הנ"ל, נפצעו עשרות אזרחים
בדרגות פציעה חמורות וקלות.

<u>פרט שמונה עשר</u> :

<u>מהות העבירה</u> : קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות
לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968, וסעיף 51(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשי"ל- 1970.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באיזור, במהלך חודש מאי 02' או בסמוך לכך, קשר קשר עם אדם
אחר לגרום למותו של אחר בכוונה;

דהיינו, הנאשם הנ"ל, במועד הנ"ל, נפגש עם ████ שאמר לו כי הינו מתכנן
לבצע פיגוע התאבדות בישוב הישראלי שבי שומרון, ולשם כך מתכנן לשלוח את
"████ לבצע את הפיגוע.

הנאשם הביע את הסכמתו לתוכניתו של ████

הנאשם מסר ל ████ שלוש מחסניות לרובה מסוג קלצ'ניקוב, על מנת
שישמשו בביצוע הפיגוע.

<u>פרט תשעה-עשר</u> :

<u>מהות העבירה</u> : ניסיון גרימת מוות בכוונה, עבירה לפי סעיפים 51(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשי"ל- 1970; וסעיפים 20-19, 14 לצו בדבר כללי האחריות
לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באיזור, במספר רב של הזדמנויות ניסה ביחד עם אחרים לגרום
למותם של אחרים בכוונה, דהיינו :

1. בתחילת שנת 01' או בסמוך לכך, יצא הנאשם עם חברי חולייתו, ████
כשהיו

חמושים ברובים מסוג 16 - M, והנאשם החזיק ברשותו רובה מסוג
קלצ'ניקוב, וביחד ירו לעבר ג'יפ צבאי שהיה בסמוך לצומת צרה. הנאשם
ירה כ- 16 כדורים לעבר הג'יפ הצבאי, וחבריו ירו ברובים שהיו ברשותם.

אחרי הירי נמלטו הנאשם וחברי חולייתו לכנהנה בית-איכסא.

2. כעבור מספר ימים, מהאמור לעיל, יצא הנאשם, במספר הזדמנויות, יחד עם חברי חולייתו לכיוון נקודה צבאית שנמצאת בסמוך להר גריזים, כשהיו חמושים ברובים, והנאשם היה חמוש ברובה מסוג M – 16. הנאשם ירה יחד עם חבריו לעבר הנקודה הצבאית.

3. לאחר תחילת שנת 02', ירה הנאשם שהיה חמוש ברובה מסוג קלצ'ניקוב, ביחד עם [redacted] לעבר נקודה צבאית שנמצאת בין תל ובורין.

**<u>פרט עשרים</u>:**

**<u>מהות העבירה</u>:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל- 1970; וסעיפים 19-20, 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968;

**<u>פרטי העבירה</u>:** הנאשם הנ"ל, באזור, במספר רב של הזדמנויות, ניסה ביחד עם אחרים לגרום למותם של אחרים, דהיינו:

1. בתחילת שנת 01' או בסמוך לכך, הנאשם הנ"ל, שהיה חמוש ברובה מסוג קלצ'ניקוב, ביחד עם [redacted] שהיו חמושים ברובים מסוג M – 16, הניחו שני מטעני חבלה שאליהם חיברו סוללה ותוטים באורך 300 מטרים. באותו יום בשעות הערב עבר ג'יפ צבאי על הכביש המוביל לישוב ברכה, [redacted] הנ"ל הפעיל את שני המטענים, וכתוצאה מכך התפוצצו שני מטעני החבלה.

לאחר-מכן נמלטו הנאשם וחבריו לשכם.

2. כעבור שבוע מהאמור לעיל, הניח הנאשם ביחד עם חברי חולייתו שהיו חמושים בכלי ירייה, מטען חבלה במשקל 50 ק"ג, בצומת איבא. הנאשם וחבריו הסתירו את המטענים בעשבייה. אל מטען החבלה חיברו הנאשם וחבריו חוטים באורך 200 מטר.

משעבר במקום ג'יפ צבאי וטנק, ופוצץ [redacted] את מטען החבלה, לאחר שעבר הטנק.

3. במהלך חודש אוקטובר 01' או בסמוך לכך, הניח הנאשם ביחד עם חברי חולייתו, [redacted] שני מטעני חבלה על הכביש העוקף שמשקיף על האיזור "עין אלמנאא" בזוואתא. כשהבחינו בג'יפ צבאי וטנק עובר במקום, פוצצו הנאשם וחבריו את המטענים.

4. במהלך חודש אוקטובר 01' או בסמוך לכך, הניחו הנאשם יחד עם חברי חולייתו מטען חבלה על הכביש העוקף שמוביל לעצירה אלשמאליה כשהבחינו חיילי צה"ל במטען החבלה ירדו לעברם. וכעבור 20 דקות הפעיל הנאשם את מטען החבלה, שהתפוצץ כתוצאה מכך.

15

לאחר פיצוץ מטען החבלה, נמלטו הנאשם וחבריו תלייתו למחנה בלאטה.

<u>פרט עשרים ואחד</u>:

<u>מהות העבירה</u>:   קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות
לעבירה (יו"ש) (מס' 225), תשכ"ח- 1968 ; וסעיף 51(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל- 1970.

<u>פרטי העבירה</u>:   הנאשם הנ"ל, באוזור, במספר הזדמנויות, קשר קשר עם אחרים לגרום למותו של
אחר בכוונה, דהיינו:

1.   במהלך התקופה שלאחר חודש מרץ '02 או בסמוך לכך, ביקש הנאשם מ█████
████████ (להלן – ██) כי יפנה ל█████████████ (להלן – ███) ולמ████████
(להלן – ████) ו████████████ (להלן – ████████) ויבקש
מהם כי יאתרו אדם המוכן לבצע פיגוע התאבדות בישוב הישראלי קדומים.
█████████ פנה ל████████ והודיע להם אודות תוכניתו של הנאשם,
הם הסכימו לבקשתו, ואמרו לו כי יוסו לאתר אדם המוכן לבצע את הפיגוע.

ביצוע תצפית על היישוב הנ"ל, והודיע לנאשם כי אין נקודות
תורפה ביישוב הנ"ל, ותהיה אפשרות להביא את האדם המתאבד רק למרחק
של 100 מטר מהיישוב.

הנאשם, אמר ל███████ כי המרחק הנ"ל אינו מתאים, ומשכך הפיגוע
לא יצא אל הפועל.

2.   במהלך שנת '02 או בסמוך לכך, תכנן הנאשם הנ"ל, ביחד עם █████████
לבצע פיגוע במחנה חווארה. ██████ אמר לנאשם כי ישנם שני
אנשים: א. ██████████ ב. ██████ שמוכנים לבצע את פיגוע
ההתאבדות.

התכנון היה שאחד המפגעים 'יסע בגיפ בצבע לבן שנראה כמו רכב של הצלב
האדום, וחרכב הזה ישמש כמכונית תופת. כאשר המפוגע מנוהג בגיפ יגיע
למחסום חווארה, יפוצץ את הרכב במחסום. לאחר פיצוץ הרכב, שתי חוליות
של מחבלים כשהם חמושים ברובני קלצ'ניקוב ורימוני יד יחדרו למחנה משתי
נקחדות שונות: 1. מכיוון עוזארתא 2. מכיוון רגיב.

הנאשם ואנו רמוש ביצעו תצפיות על גזרת המחנה. אולם, פיגוע זה לא יצא
אל הפועל.

נאג'י  עאמר,  סגן
תובע  צבאי

16



רשימת עדי התביעה:

פ"א 4968/02:

① ███████ (גובה הודאת הנאשם מיום 5/6/02).
② ███████ (גובה הודאת הנאשם מימים 10/6/02 ו- 11/6/02).
③ ███████ (גובה הודאת הנאשם מיום 9/7/02 ומיום 11/7/02).
④ ███████ (גובה הודאת הנאשם מיום 20/8/02).
5. ███████ (עורך מסדר ויהוי לעדים :
███████

⑥ ███████ (עצור בת.ת.
⑦ ███████ (עצור בת.ת.
⑧ ███████ (עצור ב
⑨ ███████ (עצור בת.ת.
⑩ ███████ (עצור).
11. ███████ (עצור).
12. ███████ (עצור ת.ת. בית-אל.
13. ███████ (עצור).
14. ███████ (עצור).
15. ███████ (עצור).
⑯ ███████ פרוטוקולי האורכת מעצר מימים : 17/6/02 ו- 10/7/02 ו- 12/8/02.

פ.א. 502/02 ציון

17. ███████ (מגיש דו"ח זכ"ד, תפיסה וסימון).
18. ███████ (מגיש דו"ח תפיסה וסימון).
19. ███████ (מגיש דו"ח זכ"ד, תפיסה וסימון + תצלומים).
20. ███████ (מגיש דו"ח פעולה – מציאות צולבת).
21. ███████ (מגיש דו"ח תפיס וסימון).
22. ███████ (עד ראיה – דרף אתרי המחבל).
23. ███████ (עד ראיה).
24. ███████ (עד ראיה).
25. ███████ (עד ראיה).
26. ███████ (עד ראיה).
27. ███████ (עד ראיה).
28. ███████ (עד ראיה).
29. ███████ (עד ראיה).
30. ███████ (עד ראיה).
31. ███████ (עד ראיה).
32. ███████ (עד ראיה).
33. ███████ (עד ראיה).
34. ███████ (עד ראיה).

17



35. ‏(עד ראיה).
36. ‏(עד ראיה).
37. ‏(עד ראיה).
38. ‏(עד ראיה).
39. ‏(ניהוי גופתה של אורה (סבטלנה) סנדלר ז"ל.
40. ‏, ביהיית הדסה עין-כרם, ירושלים (מגישה הודעת פטירה של אורה (סבטלנה) סנדלר ז"ל.
41. ‏, ביהיית הדסה עין-כרם, ירושלים (מגישה הודעת פטירה של שרה המבורגר ז"ל.

**תיק פ.א. 5258/02**

42. ‏.
43. ‏ זימותי ירקון, משטרת ישראל.
44. ‏ קצין אח"יק ירקון.
45. ‏, צתי"ם ירקון.
46. ‏(עד ראיה).
47. ‏(עד ראיה).
48. ‏(מאבטח במסעדה).
49. ‏(עד ראיה).
50. ‏(עד ראיה).
51. ‏(עד ראיה).
52. ‏22280 שלמה דוד (נפצע בפיגוע).
53. ‏(עד ראיה).
54. ‏(עד ראיה).
55. ‏(עד ראיה).
56. ‏309998540 איונת ריכטמן (נפצעה בפיגוע).
57. ‏(עד ראיה).
58. ‏(עדות ראיה).
59. ‏(עד ראיה).
60. ‏(עד ראיה).
61. ‏(עד ראיה).
62. ‏(עד ראיה).
63. ‏(עד ראיה).
64. ‏(עד ראיה).
65. ‏(עד ראיה).
66. ‏(עד ראיה).
67. ‏(עד ראיה).
68. ‏(ניהוי גופתו של יוסף חבי ז"ל.
69. ‏31877665 נעם אספי (נפצע בפיגוע).
70. ‏29416740 יוסי אזוז (נפצע בפיגוע).

18



71. 43401140 מיכאל גרובר (נפצע בפיגוע).
72. ‎▮▮▮▮ המכון הלאומי לרפואה משפטית, תל-אביב.
73. רשומות בתי חולים ~ רשומה מוסדית.

**פ.א. 4685/02 תחנת פ"ת**

74. ▮▮▮ (פרטים בתביעה).
75. ▮▮▮ (פרטים בתביעה).
76. ▮▮▮ (פרטים בתביעה).
77. ▮▮▮ (פרטים בתביעה).
78. ▮▮▮ (פרטים בתביעה).
79. ▮▮▮ (מעבדת חבלה – טופס לוואי מוצגים).
80. חוו"ד מעבדה (תועבר בהמשך).
81. ▮▮▮ המכון לרפואה משפטית (חוו"ד מומחה –גופת אלמוגי).
82. ▮▮▮ המכון לרפואה משפטית (חוו"ד מומחה –רות פלד ז"ל).
83. ▮▮▮ המכון לרפואה משפטית (חוו"ד מומחה –סיני קינן ז"ל).
84. ▮▮▮ (דו"ח פעולה).
85. ▮▮▮ 77122▮▮▮ ▮▮▮ (דו"ח פעולה).
86. 310905773 פאשישיב יורי (מזכר– פצוע קשה).
87. 1082544 רס"ר כפיר הדסי (דו"ח פעולה).
88. ▮▮▮ (פרטים בתביעה).
89. ▮▮▮ (פרטים בתביעה).
90. ▮▮▮ (פרטים בתביעה).
91. ▮▮▮ (פרטים בתביעה).
92. ▮▮▮ (פרטים בתביעה).
93. ▮▮▮ (פרטים בתביעה).
94. ▮▮▮ (פרטים בתביעה).
95. ▮▮▮ (פרטים בתביעה).
96. ▮▮▮ (פרטים בתביעה).
97. ▮▮▮ (פרטים בתביעה).
98. ▮▮▮ (פרטים בתביעה).
99. ▮▮▮ (פרטים בתביעה).
100. ▮▮▮ (פרטים בתביעה).
101. ▮▮▮ (פרטים בתביעה).
102. ▮▮▮ (פרטים בתביעה).
103. ▮▮▮ (פרטים בתביעה).
104. ▮▮▮ (פרטים בתביעה).
105. ▮▮▮ (פרטים בתביעה).
106. ▮▮▮ (דו"ח ביקור בזירה – תפיסת מוצגים+ עורך דו"ח תצלומים).