to the explosive charge. This was a charge which was activated by wires and a battery. As soon as they had connected the wires, suddenly IDF soldiers who were staked out there opened fire on them. Ahad was killed and Asad was wounded in the leg. Mahmoud Titi and Muhammad [sic] Abu Khadr fired at the IDF soldiers. After that, Mahmoud Titi and Muhammad [sic] Abu Khadr and I fled the scene."

Witness 21 for the prosecution, Muhammad Yadak, P/40A:

"A.    In the beginning of the al-Aqsa intifada, [illegible, probably "I participated" or "they participated"] in stone-throwing activity directed at Joseph's Tomb in Nablus, and at the [illegible, probably "military"] forces in Nablus. In June [20]02, Mahmoud Titi contacted me and said that he was planning to set up a military squad belonging to Tanzim Fatah. He suggested that I enlist in the military squad, and Mahmoud said that the purpose of setting up the squad was to carry out terrorist attacks against the Israeli army in the Nablus area. I agreed to this and, within the framework of the military squad, I participated in 10 shooting attacks directed against the army in the Nablus area. Participating in the shooting attacks along with me were (1) Mahmoud Titi, (2) Ahmad Abu Khadr, (3) Nasser Aweis, about 35 years old, from the Balata camp, who was in charge of the Tanzim in Nablus …

Q.    Who used to plan and prepare for the perpetration of the terrorist attacks in which you participated?

A.    Nasser Aweis was the one who used to plan for the perpetration of the terrorist attacks, and he was the one who used to supply us with the weapons.

[Q.]    Which Israeli military positions did you shoot at?

A.    We carried out shooting attacks directed against a military position on Mt. Alana. We also fired at the settlement of Elon Moreh, and we also fired at the Saqen roadblock near Hawara …

The second terrorist attack, in August 2001: Nasser Aweis contacted me [and] Mahmoud Titi and told us that young men from the Tanzim wanted to place an explosive charge on the bypass road in the area of Beit Ira, and he asked me and Mahmoud Titi to participate in the terrorist attack and to place the charge along with the young men … The tenth terrorist attack was a shooting attack directed against the funeral … The funeral [procession] went from Hawara to Yitzhar, and when they got to the entry to the Hawara camp, Nasser Aweis and Yasir al-Kadawi and Mahmoud Titi and I fired at the participants in the funeral. The army fired back, and Nasser and Mahmoud and Yasir and I fled the scene and headed toward the camp …"

The facts contained in the charges were proven.

[Stamp] P 5: 277

78

### The offenses of murder, attempted murder, causing severe bodily harm and attempt to cause severe bodily harm

The State ascribes to the Defendant offenses of murder with malice aforethought in the first five counts; offenses of attempted murder in all of the accounts; offenses of causing bodily harm with aggravated intent in the first five counts; the offenses of attempt to cause severe bodily harm in Counts No. 6 and No. 7.

With regard to these offenses, a question arises as to the status of the Defendant.

Section 29 (a) of the Penal Code, 5737 – 1977, tells us that a person who perpetrates an offense together with or through another person shall also be considered as the perpetrator of the offense.

[Stamp] P 5: 277 [continued]

79

It has been proven to us that the Defendant's mental attitude to these offenses is beyond all doubt. The Defendant wanted and desired to achieve the results of the criminal actions, with every fiber of his being, and was the motivating force in the implementation of a joint plan, carried out together, to intentionally cause the death and injury of his victims, as has been proven.

There cannot be even the slightest doubt that he is the perpetrator of the offenses (see Criminal Appeal 4389/93, Mordechai Vabudi v. the State of Israel, PD 50 (3) 239 and the rulings mentioned there; see also Criminal Appeal 2796/95, John Doe v. the State of Israel, PD 51 (3) 388).

The factual infrastructure which has been revealed to us attests to the fact that the acts of murder were carried out, from beginning to end, with malicious intent, based on the decision and the purpose of causing death, founded on cold blooded thought, controlled behavior and settled mind, and following precise and scrupulous preparation.

We do not have even the slightest doubt that the fundamental elements for the offenses of murder with malice aforethought have been fulfilled, the offenses have been proven, and – as set forth above – the Defendant carried them out.

Obviously, the fundamental elements for the offenses of attempted murder have also been properly proven.

The Defendant's plan of intentionally causing the death of many civilians, and the implementation of that plan as described above, as it has been proven, substantiates the fundamental elements of the less severe offenses of causing bodily harm with aggravated intent and attempt to cause bodily harm with aggravated intent. These offenses as well have been properly proven.

<u>Unlawfully carrying a weapon</u>

The State also ascribes to the Defendant offenses of unlawfully carrying a weapon, in Counts No. 2, 3 and 8.

It has been proven that the Defendant carried, without a permit under any law, M-16 rifles, ammunition and hand grenades, which are in the nature of "weapons," as this term is defined in Section 144 (c) of the Penal Code, 5737 – 1977. The Defendant has confessed to this, as set forth above, and has also confessed that he used the weapons. It is enough for us to mention that which has been set forth in his statements, as follows:

[Stamp] P 5: 278

80

"I supplied Said Ramadan with weapons for the perpetration of a suicide attack within Jerusalem … I supplied Abd al-Salaam Hasuna with weapons for the perpetration of a suicide attack within Hadera." (See P/5)

See also the Defendant's confession to the shooting attacks described in detail in Count No. 3, as set forth above.

Because the terrorists Said Ramadan and Abd al Salaam made use of the weapons inside Israel, as has been proven above, and because the facts of Count No. 8 have also been proven, it appears that the fundamental elements of the offenses of possession of weapons have also been proven as required.

[Stamp] P 5: 278 [continued]

81

Felony Case (Tel Aviv) 1137/02                State of Israel v. Nasser Mahmoud Ahmad Aweis

**Summary**

Having found that the State has proven all of the actions that have been attributed to the Defendant in the indictment, according to the burden of proof that is incumbent upon it to do so beyond all reasonable doubt, we hereby convict the Defendant of the following offenses:

Membership and activity in a terrorist organization, in contravention of Sections 2 and 3 of the Prevention of Terrorism Ordinance, 5708 – 1948.

Conspiracy to commit a crime, in contravention of Section 499 of the Penal Code, 5737 – 1977.

Premeditated murder, in contravention of Section 300 (a) (2) of the Penal Code, 5737 – 1977.

Attempted murder, an offense in contravention of Section 305 (1) of the Penal Code, 5737 – 1977.

Causing bodily harm with aggravated intent, in contravention of Section 329 (1) of the Penal Code, 5737 – 1977.

Attempt to cause severe bodily harm, an offense in contravention of Sections 329 (1) of the Penal Code, 5737 – 1977.

Unlawfully carrying a weapon, an offense in contravention of Section 144 of the Penal Code, 5737 – 1977.

_____
**O. Salomon-Czerniak**
**Judge**

**Judge S. Timan, Presiding Judge, and Judge N. Achituv:**

We have read the detailed and well-founded opinion by our colleague, the Honorable Judge Czerniak, and we concur with the conclusion that has been reached by her.

_____     _____
**S. Timan**                          **N. Achituv**
**Presiding Judge**               **Judge**

[Stamp] P 5: 279

82

<u>Felony Case (Tel Aviv) 1137/02</u>          <u>State of Israel v. Nasser Mahmoud Ahmad Aweis</u>

**It has accordingly been decided to convict the Defendant of all of the offenses ascribed to him in the indictment, as set forth in the opinion by the Honorable Judge Czerniak.**

| | | |
|---|---|---|
| **S. Timan, Presiding Judge** | **N. Achituv, Judge** | **O. Czerniak, Judge** |

**Handed down and notified on this day, 29 Nisan 5763, May 01, 2003, in the presence of Counsel for the parties and the Defendant.**

This version is subject to changes in editing and phrasing.

[Stamp] P 5: 280

83

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                    Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                    Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 5:237-280.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated bearing the bates number P 5:237-280.

Dated: March _6_, 2014

                                          _____
                                         Rina Ne'eman

ss.:  New Jersey

On the ⎽6⎽ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.


Sworn to me this
⎽6⎽ day of March, 2014


*Leonor Troyano*
Notary Public


LEONOR TROYANO
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 8/12/2014

פח (ת"א) 1137/02                                          מדינת ישראל נ' נאסר מחמוד אחמד עוויס

<div dir="rtl">

בתי המשפט

| בית משפט מחוזי תל אביב-יפו | | פח 001137/02 |
| --- | --- | --- |
| | | |
| כב' השופט ש' טימן - אב"ד | | 01/05/03 |
| כב' השופטת נ' אחיטוב | בפ | |
| כב' השופטת ע' סלומון-צ'רניאק | ני : | |

בעניין :        מדינת ישראל

ע"י ב"כ עוה"ד        דבורה חן ותמר אניס

נ ג ד

הנאשם        נאסר מחמוד אחמד עוויס

ע"י ב"כ עו"ד        בולוס

---

המדינה טוענת כי ארגונים אלה הם ארגוני טרור על פי הגדרתם בפקודה למניעת טרור והנאשם מילא בהם תפקיד בכיר כמתואר, יזם, ארגן והפעיל מעשי פיגוע רצחניים כנגד מטרות ישראליות ובאיו"ש ופעילותו כללה בין השאר גם רכישה וייצור של אמצעי לחימה מסוגים שונים והעברתם בין במישרין ובין בעקיפין לידי המחבלים שביצעו בפועל את הפיגועים מטעם הארגון הטרוריסטי.

---

הכרעת דין

השופטת ע' סלומון-צ'רניאק :

האישום

המדינה טוענת כי בתקופה הרלבנטית לאירועים המתוארים בכתב האישום, היה הנאשם מפקד אזור שכם וצפון השומרון של ארגון תנזים-פתח וכן מפקד ארגון "כתאאב שהדאא אלאקצא" (גדודי חללי אל אקצא) באזור זה.

המדינה טוענת כי ארגונים אלה הם ארגוני טרור על פי הגדרתם בפקודה למניעת טרור התש"ח-1948 והנאשם אשר מילא בהם תפקיד בכיר כמתואר, יזם, ארגן והפעיל מעשי פיגוע רצחניים כנגד מטרות ישראליות ובאיו"ש ופעילותו כללה בין השאר גם רכישה וייצור של אמצעי לחימה מסוגים שונים והעברתם בין במישרין ובין בעקיפין לידי המחבלים שביצעו בפועל את הפיגועים מטעם הארגון הטרוריסטי.

1

---

נבו הוצאה לאור בע"מ   nevo.co.il   המאגר המשפטי הישראלי

</div>

המדינה טוענת כי כתוצאה ממעשיו של הנאשם נרצחו נפצעו ונפגעו אזרחים רבים והיא מבקשת להרשיעו כמפורט בשמונת האישומים הכלולים בכתב האישום בעבירות המיוחסות לו והן: חברות ופעילות בארגון טרוריסטי עבירות בניגוד לסעיפים 2 ו- 3 לפקודת מניעת טרור התש"ח-1948.

מעשי קשירת קשר לביצוע פשע, עבירות בניגוד לסעיף 499 לחוק העונשין תשל"ז-1977.

מעשי רצח ונסיונות למעשים כאלה עבירות בניגוד לסעיפים 300(א)(2) ו- 305(1) לחוק העונשין התשל"ז-1977.

מעשי גרימת חבלה בכוונה מחמירה ונסיונות למעשים כאלה, עבירות בניגוד לסעיפים 329(1) ו- 329(1) ביחד עם סעיף 25 לחוק העונשין התשל"ז-1977.

נשיאת נשק שלא כדין, עבירות בניגוד לסעיף 144(ב) לחוק העונשין תשל"ז-1977.

**<u>קו ההגנה של הנאשם</u>**

בתחילת הדרך שכר הנאשם את שרותיו של עו"ד בולוס ושיתף עמו פעולה.

הסנגור קיבל לידיו את מלוא חומר החקירה ואף הודיע כי יטען בשמו של הנאשם טענות מקדמיות כאלה ואחרות ובהן טענת חוסר סמכות.

ניצן לקו ההגנה העתידי של הנאשם נמצא בפרוטוקול ישיבת 10.9.02. בישיבה זו טען הסנגור (בפני הרכב אחר) בין השאר "אחרי שהסברתי לו את הענין, הוא אומר שהוא לא רוצה עורך דין, שהוא מיצג את עצמו אנחנו מקוים שתוך זמן קצר נוכל לדחוף קדימה את הדיון, זמן של לפחות שבועיים".

באותה ישיבה – כעולה מהפרוטוקול – אמר הנאשם לעורך דינו ובאמצעות המתורגמן "אל תדבר בשמי אני עורך הדין של עצמי, אני מיצג את עצמי" וכבר אז החליט ביהמ"ש כי "משרדו של עו"ד בולוס ימשיך ליצג את הנאשם גם אם האחרון יחליט לנהל את הדיון בעצמו".

בישיבת 22.1.03 (בפני ההרכב האחר) הודיע הסנגור את הדברים הבאים "אנחנו חוזרים בנו מהטענה של חוסר סמכות. אני מסכים שהיתה החלטה להגיש סיכומים תוך 30 יום לגבי טענת חוסר הסמכות, אבל לאור ההתפתחויות שהיו בנושא של ברגותי ולאור החלטת בית המשפט המחוזי לדחות את הטענה הזאת, החלטנו לחזור מהטענה לחוסר סמכות בתיק זה."

לאחר מכן הגיש הסנגור בקשה לפטור אותו מהיצוג והבקשה נדחתה בהחלטתינו מיום 2.3.03.

המשפט החל נמשך ונסתיים בנוכחות הנאשם וסנגורו ובתרגום מלא לשפה הערבית. הנאשם והסנגור שתקו לאורך כל הדרך. הם לא השיבו לכתב האישום (ראינו בכך כפירה גורפת) הם לא טענו טענות מקדמיות, לא חקרו עדים בחקירה נגדית ולא העלו טענות משפטיות. הנאשם לא העיד ולא הובאו עדים מטעמו. השניים אף בחרו שלא לסכם.

עמדה זו תבחן על רקע הודעתו בכתב של הסנגור לאמור:

נבו הוצאה לאור בע"מ nevo.co.il המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 238

"...4. הח"מ שוחח עם הנאשם בכמה הזדמנויות ונסה לשכנע אותו לקבל ייצוג במשפט ע"י עו"ד, אולם הנאשם בחר שלא להיות מיוצג ע"י עו"ד.

5. הח"מ הסביר לנאשם כי הוא אמור לייצג את האינטרסים שלו במשפט, בתשובה הבהיר הנאשם כי החליט שלא לקחת חלק פעיל בהליך המשפטי, זכותו לבחור ולנקוט בדרכים שהוא בוחר לעצמו לרבות באמצעות קו הגנה פסיבי של שתיקה במהלך משפטו.

6. הנאשם ביקש שאם ביהמ"ש יכפה עלינו הופעה בדיונים עלינו אך ורק לשתוק.

7. ביום 11.3.03 ולאחר החלטת כב' ביהמ"ש שוב הסביר הח"מ לנאשם את החלטת כבודם ואת הסיטואציה שהוא נמצא בה וכי במידה וישנה טענה משפטית במהלך הדיון מן הראוי שהח"מ יתייחס אליה, אולם הנאשם שלל אפשרות זו וחזר על דבריו שאינו מעונין לשתף פעולה ואינו רוצה אותנו כסנגורים שלו ושוב ביקש שעלינו לשתוק...

10. הנאשם מודע היטב למשמעות הדברים, והוא אינו פסול דין ויש לו היכולת השכלית והאינטלקטואלית לבחור כיצד לנהל את המשפט...

13. בהעדר שתוף פעולה עם הנאשם והוראותיו לסנגור לשתוק במהלך המשפט לא לחקור עדים ו/או לטעון טענות משפטיות ו/או אחרות ולא לדבר בשמו ו\או לטעון טענות עובדתיות ו\או משפטיות לא נותר לח'מ אלא למלות את פיו מים ויהיה מנוע מלעשות אחרת וזאת גם מטעמים מובנים שמקורם בכללי האתיקה המחייבים כל עו"ד...".

שוכנענו מהנאמר בהודעה, מדברים שנאמרו לנו בענין זה בעל פה ומהתנהגות הנאשם וסנגורו ערב המשפט ובכל עת מהלכו, כי הנאשם נוקט עמדה המבטאת קו הגנה אותו בחר ביודעין ברצון מלא וחופשי ובשיקול דעת.

לפנינו בחירה שהיא פרי מהלך מחושב מכוון מודע מושכל ומניפולטיבי אשר נעשתה על ידי נאשם המבין היטב וער לכל השלכותיה.

לנאשם ניתנה בכל עת האפשרות המלאה ליטול חלק פעיל בדיון אף ניסינו לדרבן את סנגורו לעשות מלאכתו ככל שיוכל גם בהעדר שיתוף פעולה מצדו של הנאשם ולכל הפחות כאשר מדובר בטיעון משפטי גרידא.

הסנגור הנכבד שב והסביר כי אין הוא מתערב בדיון הגם שמדובר בטיעון משפטי מן הטעם שחזקה עליו מצוות קו ההגנה של הלקוח.

במילים אחרות, לא במחדל עסקינן או באדישות לתוצאה אלא בקו הגנה ברור והחלטי.

חזקה על הנאשם וסנגורו שהם מודעים מראשית הדברים לנפקות המשפטית שנושא עמו קו הגנה זה.

**<u>הודאות הנאשם</u>**

הנאשם הודה בעבירות המיוחסות לו בכתב האישום במסגרת הודעותיו במשטרה.

נבו הוצאה לאור בע"מ nevo.co.il המאגר המשפטי הישראלי
C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

פח (ת"א) 1137/02                    מדינת ישראל נ' נאסר מחמוד אחמד עוויס

ההודעה ת/5 מיום 21.4.02, ת/6 מיום 28.4.02 ת/7 מיום 30.4.02 ת/8 מיום 1.5.02 ו- ת/9 מיום 14.5.02 נכתבו על פי עדותו של ע"ת 5 חוקר בחולית פח"ע רוני עמאר בערבית בכתב ידו של הנאשם לאחר שהסביר לנאשם בערבית את החשדות המיוחסים לו והזהירו כדת וכדין. על פי עדות החוקר, לאחר שהנאשם אישר בפניו כי הוא מבין הן את החשדות והן את מהות האזהרה, ביקש הוא לכתוב את הדברים בכתב ידו ועשה כן מרצונו הטוב והחופשי.

על פי עדות החוקר הנאשם חתם בפניו על ההודעות. החוקר תרגם את ההודעות מערבית לעברית (לכל הודעה צמוד תרגומה לעברית ת/5א' עד ת/9א' כולל בהתאם).

ההודעה ת/22 מיום 27.6.02 נגבתה על ידי ע"ת מס' 7 החוקר האדי חלבי אשר הסביר כי גבה את העדות בשפה הערבית השגורה על פיו לאחר שהנאשם הוזהר כדין, הבין את מהות החקירה ואת האזהרה ומסר דבריו מרצונו טוב וחופשי. הנאשם חתם על ההודעה שהחוקר רשם אותה בערבית. גם חוקר זה תרגם את ההודעה לערבית והתרגום צמוד להודעה (ת/22א).

נסיבות גביית ההודעות באופן המתואר לעיל, העובדה שברובן המכריע (חמש מתוך שש הודעות) נכתבו על ידי הנאשם בכתב ידו והעובדה שהנאשם שב ואישר בפני שופט צבאי (ראה פרוטוקול מישבת הארכת מעצר ת/23 נעדות ע"ת מס' 5 ) כי "אני מאשר כאמיתיות וננכונות האימרות והודאות שמסרתי בחקירתי בערבית קראתי אותם וחתמתי עליהם. נכון שהייתי מעורב בכל המעשים והפיגועים שהודיתי עליהם. "כל אחד והתפקיד שלי" אינני מתנגד להארכת המעצר המבוקשתי", הן הנותנות שראיות אלה קבילות ואין חשש כי הופעל על הנאשם לחץ חיצוני אשר הביאו להודות בביצוע מעשים שאין לו חלק ונחלה בהם.

בחינת תוכן של ההודעות ובכללן ההודאות אכן מעלה שלפנינו דבר דבור על אופניו סיפור דברים כהווייתם מתוך מחשבה בחירה ברורה והגיונית בדעה צלולה ומיושבת והן בעלות משקל פנימי גבוה אשר מצביע לכשעצמם על אמיתותן.

ברי שהודעת הנאשם בפני שופט המעצרים ובפיקוחו נעשתה ללא לחץ או השפעה ובהיותה נושאת עמה תוצאות חמורות לנאשם, מהווה ראיה מאמתת מהותית ובעלת משקל מיוחד המעצימה את כוחן של הודיעותיו הקודמות מלבד היותה עומדת כראיה עצמאית (עיין ד"נ 3081/91 קוזלי נ' מ"י פ"ד מה(4) 441 וכן ע"פ 6613/99 סטיבן סמירק נ' מ"י, פ"ד נו(3) 529 וע"פ 3338/99 פד נד(5) 667).

הדרישה לי"דבר-מה" נוסף אשר מפיג חשש שמא לחץ פנימי הוא שהביא את הנאשם להודות ,נמלאה עד תום, באימרות בכתב שנתנו עדים אחרים מחוץ לכותלי בית המשפט אותן אנו מקבלים כראיות קבילות ומהימונות כפי שנפרט להלן.

**השותפים**

עדי התביעה אחמד אבו חדר (ע"ת מס' 6), מחמד ידכ (ע"ת מס' 21), אחמד ברגותי (ע"ת מס' 23) ויאסר אבו באכר (ע"ת מס' 25) הם שותפיו לעבירות של הנאשם (להלן הארבעה). להוציא ע"ת מס' 6 אחמד אבו חדר אשר דינו הוכרע ונגזר בטרם העיד (עיין כ"א פרוטוקול הכרעת דין וגזר דין אשר סומנו יחדיו ת/11) שלוש האחרים נקראו להעיד בטרם נסתיים בטרם נסתיים בטרם נסתיימו משפטם ונתעוררה השאלה אם עדותם קבילה אל נוכח הלכת

4

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 240

קינזי (ע"פ 194/75 מנחם קינזי נ' מ"י פ"ד ל(2) 477), הלכה אשר כבליה לא נתגמשו עדיין (עיין ע"פ 1774/02 שמעון קדוש נ' מ"י) והיא מורה לנו "שאין להעיד נאשם אחד נגד נאשם שני, אפילו הוגשו נגדם כתבי אישום נפרדים, כל זמן שיש חשש, כי העד עלול לצפות לטובת הנאה על ידי המתקת דינו במשפט התלוי ועומד נגדו. דבר זה אפשר למנוע בין על ידי כך שמשפטו יתברר לפני מתן העדות ובין על ידי הפיכתו לעד מלך ועיכוב ההליכים או הצהרה מטעם התביעה שהמשפט נגדו יבוטל עם סיום העדות...".

המדינה ניווטה דרכה בהתאם למה שנקבע בע"פ 579/88 סוויסה נגד מדינת ישראל פ"ד מד (1) 529. לטעמה, הנאשם לא התנגד להעדת עדים אלה אף שידע היטב כפי שידע סנגורו שמשפטים לא נסתיים, הוא לא הציב מחסום - שעמד לרשותו מן הבחינה הדיונית – בדרכם של שותפיו אל דוכן העדים, בכך ויתר ביודעין על זכותו להתנגד להשמעתם ואין הוא יכול יותר לתקוף את קבילותן של ראיות אלה, אשר מלכתחילה בגדר עדויות כשרות על פי דין הן (ס. 2 לפקודת הראיות (נ"ח) תשל"א-1971) ונותרה שאלת משקלן בלבד.

אכן זוהי תוצאה צפויה על פי קו ההגנה שהנאשם בחר בו ואין לבוא בטרוניה על ב"כ המדינה הנכבדה.

הואיל וזו תוצאה צפויה ומסתברת של קו ההגנה אשר ננקט על ידי הנאשם במחשבה תחילה, צודקת היא שהאחריות עליה רובצת על הנאשם.

שאלנו את ב"כ המדינה בענין זה משום שסברנו שאפשר היתה מעלה הנושא בגדר את "פתח לו" אך נזכור כי המדינה הצהירה בראשית כל עדות כי לא הובטחה לאיש מעדים אלה טובת הנאה כלשהי וכי אין בדעתה להפנות עדויות אלה כנגדם בכל דרך שהיא.

בין כה וכה כל אחד מהארבעה הוכרז כעד עוין ולגבי העדויות של כל אחד מעדים אלה נתבקשנו לנהוג לפי הוראת סעיף 10א לפקודת הראיות (נוסח חדש), תשל"א-1971 (להלן פקודת הראיות) ולהעדיף אמרתו בכתב על פני עדותו בעל פה.

ספק איפוא אם הלכת קינזי חלה בנסיבות אלה כשהסכנות אשר ביסוד ההלכה אינן מתקיימות.

הדרך בה העידו הארבעה בבית המשפט כפי שיתואר להלן, היתה עוינת למדינה.

ע"ת מס' 6 – אחמד אבו חאדר נכנס לאולם החליף חיוכים עם הנאשם והצדיע לו. מכאן ואילך גילה דעתו במילים ובהתנהגות שלא ישתף פעולה ולא יענה לשאלות.

כך נהג אם כי פנה אלינו פעם אחת מיוזמתו ואמר "אני מכיר את הנאשם שכאן ואני שם אותו מעל ראשי למעלה". הוא אף ענה לשאלת ב"כ המדינה "ש. ב 23.12.02 היית בבית המשפט הצבאי והודה (צ"ל הודית) בכתב האישום הזה שהגשתי עכשיו לביהמ"ש כולל המעורבות שלך בפגוע בחדרה ת. אנחנו רצינו לעצור את הפעולות הצבאיות והם רצחו את המנהיג ראעד אל כאמל ורצחו ילדים פלשתינאים וזה שדחף אותי לעשות את הדבר הזה" לאחר שלפני כן טען כי כתב האישום נגדו מזוייף.

נבו הוצאה לאור בע"מ nevo.co.il המאגר המשפטי הישראלי
C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

ע"ת מס' 21 מוחמד ידכ פתח את דבריו במילים "אני לא רוצה לדבר, אני לא רוצה להעיד" לאחר מכן ענה על שאלות הנוגעות לעניינים שוליים אך בכל הנוגע לפרטים מהותיים לא שיתף פעולה. כך למשל ענה לשאלות מתי הכרת את הנאשם או באיזה פעילות צבאית השתתפת יחד עם הנאשם או לשאלה מי היה חבר בחוליה הצבאית שבה היה גם הוא חבר, בתשובה "זה דבר פרטי שלי ולא ענינו של ביהמ"ש". עם זאת, לאחר שהוכרז כעד עוין כך ענה על השאלות הבאות:

"ש. היית חבר מתחילת האינתיפדה בחוליה שעשתה פיגועים ובין היתר מי שהיה אחראי על החוליה הזאת זה הנאשם פה נאסר עוויס.

ת. מה הטעות בדברים האלה? מה אסור בדברים האלה?

ש. סיפרת במשטרה שנאסר עוויס הוא זה שהיה מתכנן את ביצוע הפיגועים והוא זה שהיה מספק לכל חברי החוליה את הנשק

ת. אין לי תשובה

ש. סיפרת במשטרה שהשתתפת בלפחות עשרה פיגועי ירי לעבר הצבא באזור שכם

ת. זו זכותי

ש. סיפרת גם לאן בדיוק היו פיגועי הירי, לעבר התנחלות אלון מורה, לעבר מחסום צהל סמוך לחאוערה

ת. אני מסרב לעמוד לדין בבימ"ש זה אין לי על מה לעמוד לדין, אם עשיתי או לא עשיתי אפילו אם עשיתי את הדברים האלה, אין בזה שום פגם

ש. אתה לא עומד פה לדין אתה כאן מעיד וצריך לתת תשובות

ת. אני מסרב שנאסר יעמוד לדין על הדברים האלה

ש. על איזה דברים

ת. על מאבקו נגד הכבוש

ש. אתה בהוראת נאסר עוויס תכננתם לעשות פגוע של הנחת מטען חבלה בשטחים ליד שכם.

ת. זה לא מענין אף אחד.

ש. סיפרת במשטרה שהיית עוזר לנאסר עוויס להעביר כלי נשק מפעיל כזה לפעיל כזה

ת. אני לא אמרתי את הדברים האלה כדי לעמוד לדין עליהם

ש. לאיזה צורך אמרת אותם

ת. ככה שאלו אותי ואני סיפרתי".

מכאן ואילך שתק או סרב לענות

ע"ת מס' 23 אחמד ברגותי אף הוא הבהיר מיד עם עלותו לדוכן העדים כי "הבנתי מה שאמר המתורגמן ואני לא אגיד כלום" גם הוא הבהיר במהלך החקירה הן במילים והן בהתנהגות שלא ישתף פעולה וכך עשה.

ע"ת מס' 25 יאסר אבו בכר לא שינה ממנהגם של האחרים ועל כל שאלה הפנה את ב"כ המדינה לעורך דינו אך הוסיף וטען כי כל הדברים שנאמרו על ידו הוצאו בלחץ אנשי השב"כ לאחר ששפכו עליו תה, ירקו עליו, סטרו לו וקשרו אותו למספר ימים.

נוכחנו אם כן לדעת כי עדות הארבעה מקיימת את התנאי הקבוע בסעיף 10א(א)(3) לפקודת הראיות.

מדינת ישראל נ' נאסר מחמוד אחמד עוויס                                      1137/02 (ת"א) פח

הארבעה היו עדים במשפט וניתנה לצדדים ההזדמנות לחקרם על כן נתקיים התנאי הקבוע בסעיף 10א(א)(2) לפקודת הראיות (עיין דנ"פ 4390/91 מדינת ישראל נ' חאג' יחיא, פ"ד מז (3) 679).

על הנסיבות בהן נגבו עדויות הארבעה העידו השוטרים גובי ההודעות.

ההודעות ת/12 ות/13 נגבו מהעד אבו חאדר על ידי ע"ת מס' 28 לוטוף מרעי, על פי עדות האחרון הוא חקר את אבו חאדר בשפה הערבית תוך שהוא כותב את הדברים בעברית ולאחר שהזהיר את אבו חאדר כדין והסביר לו את מהות החשדות נגדו. על פי עדות מרעי הוא הציע לאבו חאדר לרשום בעצמו את הודעתו בערבית אך זה הסביר כי זה אינו טוב בקריאה ובכתיבה ואין הוא מתנגד שהודעתו תרשם בעברית. על פי עדות מרעי הודעתו של אבו חאדר ניתנה מרצונו טוב וחופשי.

ההודעות ת/14 ות/15 נגבו מהעד אבו חאדר על ידי ע"ת מס' 34 עאונר מטר. על פי עדות מטר הוא הציג עצמו בפני אבו חאדר כאיש משטרה גם הוא כמו העד לוטוף מרעי חקר את העד בערבית ותרגם את העדות לעברית באופן סימולטני ולאחר שהזהיר את אבו חאדר והסביר לו מהות העבירות המיוחסות לו ניתנו הודעותיו של האחרון מרצונו טוב וחופשי.

גובה ההודעה ת/16 לא נמנה על עדי התביעה נתייחס לכך בהמשך.

ההודעות ת/17 ת/18 ות/19 נגבו מאבו חאדר ע"י ע"ת מס' 29 גמאל שאקור גם עד זה הציג עצמו בפני אבו חאדר כאיש משטרה הסביר לו את זכויותיו ואת מהות החשדות נגדו הזהירו כדין והודיע לו על זכותו לרשום בעצמו את ההודעה בערבית. גם עד זה העיד כי אבו חאדר הצהיר שאינו יודע לכתוב ערבית וכי אין לו בעיה שהעדות תכתב בשפה העברית.

את ההודעה ת/20 גבה מאבו חאדר ע"ת מס' 33 חרב מאדי, מאדי הסביר כי העדות נגבתה לאחר "שהאשים" את אבו חאדר בחשדות המיוחסים לו,הזהירו,תרגם לו את תוכן האזהרה, הודיע לו כי הוא זכאי לרשמה בכתב ידו בערבית אך מאחר ואבו חאדר טען שאינו יודע לכתוב הוא גבה את העדות בערבית ושב ותרגם את שכתב לערבית.

מאחר ואבו חאדר טען על פי כל העדויות שאינו יודע לקרוא ולכתוב בשפה הערבית העובדה שההודעות נרשמו בערבית אינה מעלה ואינה מורידה משום שגם לו היו נרשמות בערבית היה אבו חאדר חותם עליהן בהסתמך על דברי גובי ההודעות.

אנו נותנים אמון בעדויות השוטרים גובי ההודעות ת/12 עד ת/20 כולל וקובעים כי נגבו מהעד אבו חאדר כדת וכדין תוך שמירה על זכויותיו וכי אבו חאדר מסר הודעותיו מרצונו טוב וחופשי.

ודוק, אבו חאדר עצמו אינו טוען כי נפל פגם במהלך חקירתו. תשובתו לתובעת על שאלתה "אני אגיד לך על כל הפעילות שפעלת עם נאסר עוויס על פי הוראות של עוויס במסגרת האינתיפדה" לאמור "כל הדברים שאת אומרת אלה דברים מזוייפים" נדמית על רקע כלל התנהגותו והתבטאויותיו לפנינו כהתרסה בעלמא

7

העומדת בניגוד קוטבי להודאתו המלאה בכל פרטי האישום שיוחסו לו בכתב האישום המתוקן מיום 7.8.02 בפני שלושת שופטי ההרכב של בית המשפט הצבאי (ראה ת/11).

לכך נוסיף את הימנעות הנאשם מחקירתם הנגדית של עדים אלה הימנעות המחזקת את משקל עדותם.

אנו קובעים כי מתן האימרות הכלולות בהודעות הללו הוכח כנדרש על פי סעיף 10א(א)(1) לפקודת הראיות.

משנתקיימו כל התנאים הנדרשים בסעיף 10א(א) לפקודת הראיות, אנו קובעים כי אימרותיו של אבו חאדר הן ראיות קבילות.

נסיבות גביית ההודעה ת/16 לא הוכחו. גובה ההודעה לא נמנה על עדי התביעה. למרות זאת, בצעד לא מובן לנו לא נמנעה ב"כ המדינה מלכלול אותה בין ההודעות הקבילות לטענתה (עיין ע' 80-81 ל"סיכומי התביעה-ראשי פרקים" שנמסרו לנו בכתב). אנו מתעלמים מראיה זו (ת/16) אשר קבילותה לא הוכחה ומוציאים אנו אותה מכלל הראיות שנלקחו על ידנו בחשבון.

רשאים אנו להניח במידת ודאות גבוהה שהודאתו המלאה של אבו חאדר בעבירות שיוחסו לו בפני הרכב של שלושה שופטים מבססת את אמיתות אימרותיו במשטרה, כפי שהצביעה על קבילותן של האימרות מבחינת נסיבות גבייתן.

במהלך עדותו בבית המשפט ועד כמה שניסה להרחיק עצמו מאימרותיו בכתב בדרכים שונות לא היתה משנתו של אבו חאדר עקבית. מדי פעם לרגע קט הבליחה האמת, כך למשל מיד עם תחילת העדות ענה בתשובה לשאלת התובעת "הדברים שאני עשיתי אותם ומה שדחף אותי לעשות אותם אלה בגלל פושעי המלחמה שרון ומופז" ולאחר מכן "אנחנו רצינו לעצור את הפעולות הצבאיות והם רצחו את המנהיג ראעד אל כאמל ורצחו ילדים פלשתינאים וזה שדחף אותי לעשות את הדבר הזה" ואח"כ "כל הדברים שאת אומרת אלה דברים מזויפים, תלכי תשאלי את הסיבות לדברים האלה" וכן "עד רגע זה העם היחידי שהוא תחת כיבוש זה העם הפלשתינים וכל החוקים הבינלאומיים מרשים לי להיאבק בכיבוש, אל תעייפי את עצמך אל תשאלי אותי שום שאלה" וכן "את חסונה אני מכיר אותו הוא חבר שלי ושירת איתי ברשות והכיבוש הוא שדחף את חסונה לעשות מה שעשה".

גם הצדעתו של אבו חאדר לנאשם עם הכניסה לאולם והצהרתו כי הוא מכיר את הנאשם ושם אותו מעל לראשו למעלה, סימנים הם לאמיתות אימרותיו של הנאשם על הקשר ההיררכי ביניהם כמתואר בין השאר בת/12 "נאצר עוויס הינו תושב מחנה בלאטה... המכונה אל חג' רווק והוא אחד האחראים בכתאאב שוהדא אל אקצא ושימש כאחראי שלי בארגון ונאצר עובד בבטחון הלאומי בשכם ומשתייך לתנזים פתח..."

אנו מעדיפים אימרותיו של אבו חאדר אשר ניתנו בכתב מחוץ לכתלי ביהמ"ש הכלולות בהודעותיו דלעיל על פני עדותו במשפט.

נבו הוצאה לאור בע"מ nevo.co.il המאגר המשפטי הישראלי