הודעות העד מחמוד ידכ ת/40אי ב' גי נגבו על ידי עיית מסי 7 האדי חלבי. על פי עדותו של חלבי ההודעות נגבו ונרשמו בערבית לאחר שהסביר לידכ את החשדות המיוחסים לו והזהירו כדין. לדבריו, העד מסר את הדברים ברצון טוב וחופשי וחתם בפניו בסוף כל עמוד של כל אחת מההודעות. על פי עדותו של חלבי את ההודעות תרגם לעברית אך ידכ נתבקש לחתום וחתם על המקור בלבד.

את ת/40די גבה ממחמוד ידכ עיית מסי 35 עאטף אוויידה גם עד זה העיד כי גבה את ההודעה באותה דרך בה עשה זאת חלבי.

אנו מאמינים לשניים כי גבו את הודעות ידכ בדרך נאותה וכי האימרות הכלולות בהן נמסרו מרצונו הטוב והחופשי של ידכ.

לפנינו לא הועלה כל טענה כי הדרך בה נגבו הודעותיו פסולה.  על השאלה אם מזהה הוא את חתימתו לא רצה לענות, לא רצה להסתכל אך לא הכחיש ומענה בשלילה לשאלה אם הזהירו אותו כדין אינו משכנע. גם כאן הימנעות הנאשם מחקירת גובי ההודעות מחזקת את עדותם ואנו קובעים כי מתן האימרות הוכח במשפט כנדרש בסעיף 10א(א)(1) לפקודת הראיות.

אימרותיו של ידכ שניתנו מחוץ לכותלי בית המשפט קבילות כראיה בהליך דנן משנתקיימו תנאי סעיף 10א(א) לפקודת הראיות במלואם.

אנו מעדיפים את אימרותיו של ידכ כפי שקיבלו ביטוי בהודעותיו ת/40אי עד ד' על פני עדותו בבית המשפט. מתשובותיו של ידכ לשאלות שנשאל ניתן להבחין על נקלה כי התנהגותו בבית המשפט משקפת את החלטתו שלא להראות כמשתף פעולה וברוב מרמוזם הן עצמו על כך  שאימרותיו במשטרה אמיתיות.

לא למותר לשוב ולצטטן :

ייש. מתי הכרת את נאסר עוויס

ת. זה דבר פרטי שלי ולא עניינו של בית המשפט

ש. באיזו פעילות צבאית השתתפת יחד עם נאסר עוויס

ת. זה דבר פרטי שלי ולא ענינו של ביהמש

ש. מי היה חבר בחוליה הצבאים שבה היית חבר גם:...

ת. זה לא ענינו של ביהמש

ש. היית חבר מתחילת האינתיפדה בחוליה שעשתה פיגועים, ובין היתר מי שהיה אחראי על החוליה הזאת זה הנאשם פה נאסר עוויס

ת. מה הטענש בדברים האלה? מה אסור בדברים האלה

ש. סיפרת במשטרה שנאסר עוויס הוא זה שהיה מתכנן את בצוע הפיגועים והוא זה שהיה מספק לכל חברי החוליה את הנוק

ת. אין לי תשובה

ש. סיפרת במשטרה שהשתתפת בלפחות עשרה פיגועי ירי לעבר הצבא באזור שכם

ת. זו זכותי

ש. אותם עשרה פיגועי ירי שסיפרת עליהם היו בתכנונו של נאסר עוויס והוא זה שסיפק את הנשק לירי

9

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 245

ת. אני לא רוצה לענות

ש. סיפרת גם לאן בדיוק היו פיגועי הירייד לעבר התנחלות אלון מורה לעבר מחסום צהל לחאוערה

ת. אני מסרב לעמוד לדין בבימשו זה. אין לי אל מה לעמוד לדין. אם עשיתי או לא עשיתי. אפילו אם עשיתי את הדברים האלה, אין בזה שום פגם.

ש. אתה לא עומד פה לדין. את כאן מעיד וצריך לענות תשובות

ת. אני מסרב שנאסר יעמוד לדין על הדברים האלה.

ש. על איזה דברים

ת. על מאבקנו נגד הכבוש

ש. אתה בהוראות נאסר עוויס תכננתם לעשות פגוע של הנחת מטען חבלה במשטחים ליד שכן

ת. זה לא מעניין אף אחד

ש. סיפרת במשטרה שהיית עוזר לנאסר עוויס להעביר כלי נשק מפעיל כזה לפעיל כזה

ת. אני לא אמרתי את הדברים האלה כדי לעמוד לדין עליהם.

ש. לאיזה צורך אמרת אותם

ת. ככה שאלו אותי ואני סיפרתי

ש. כל הנשקים הרובים ה- M16 שהעבירו שמשו לפגועי ירי כנגד אזרחים וחיילים

ת. אני לא רוצה לדבר ואל תמשיכי...״

הודעותיו של ע״ת 23 אחמד ברגותי ת/43א ות/43 ג׳ נגבו ע״י ע״ת מס׳ 32 דוד מזרחי.

על פי עדותו של מזרחי הוא הזהרה ברגותי כשורר, הזהירו וויידא שהלה הבין את תוכן האזהרה. ת/43א נגבתה בדרך של שאלות ותשובות ונרשמה (כמו גם ת/43ג׳) בעברית משום שהעד מזרחי אינו כותב ערבית. ברגותי סרב לחתום על ת/43א׳ מבלי לתת לכך הסבר ואילו על ת/43ג׳ חתם. מזרחי הסביר כי במהלך גביית שתי ההודעות לא היו כל אירגונים חריגים הוא לא הבחין שברגותי פצוע חולה או עייף כי אם כך היה הדבר הוא היה מציין עובדות אלה. אם היה משהו חריג מאוד העדות לא היתה נגבית והיה על כך מזכר. במהלך גביית ת/43ג׳ הציג מזרחי בפני ברגותי כתב יד בן שמונה עמודים בערבית והאחרון אישר שזה היה ידו לאחר שעיין במסמך.

ההודעה ת/43ב׳ ת/43ד׳ נגבו מברגותי ע״י ע״ת מס׳ 31 יצחק יעקובוף. עפ״י עדות יעקובוף השניים דיברו ערבית אבל העדות נרשמה בעברית ברגותי הוזהר כדין אך סרב לחתום על האזהרה או על ההודעה ת/43ב׳ אך על ת/43ד׳ חתם. על פי עדות יעקובוף במהלך גביית שתי ההודעות הוצעו לברגותי כתבי יד אותם זיהה ככתבי יד שלו, כתבי היד הגיעו ליעקובוף מאחד מחוקרי השב״כ. ברגותי מסר את הדברים מרצונו הטוב וחשופש ולגבי כתב היד שהוצג לו עם גבית ת/43 ד׳ אף השיב ״כן, זה כתב ידי שלי וכתבתי את מה שסיפרתי לך עכשיו בעדותי״.

ההודעה ת/43ה׳ נגבתה מברגותי על ידי ע״ת מס׳ 36 משה משה.

עפ״י עדות האחרון הוא הזדהה בפני ברגותי כאיש משטרה הסביר לו כי הוא עומד לחקור אותו ובמה הוא חשוד. ברגותי מסר את הדברים בצורה מסודרת ואחר כך חתם על העדות לאחר שהדברים תורגמו לו. על פי עדותו של משה הוא חקר את ברגותי כשלעצמו רקע כללי בדמות זכרון דברים מחשב״ו אך בעדות מסר לו ברגותי פרטים רבים שלא היה יכול היה לדעת מזכרון הדברים ובלשונו ״אם זה בנושא נסיבות הקשר

10

פ"ח (ת"א) 1137/02    מדינת ישראל נ' נאסר מחמוד אחמד עוויס

איך הדברים התנהלו וזוז, אלה דברים שנתן בעדות שלו. אם הם הלכו לחנות גלידה ומה היה הקוד ומי קבע זה לא מופיע בזכ"ד"י.

מהימנים עלינו דברי העדים מזרחי יעקובוף ומשה על אופן ניהול החקירה ונסיבות גביית אימרותיו של ברגותי, אשר מצדו איננו טוען שאלה נגבו בדרך פסולה. גם כאן הימנעות הנאשם מחקירה נגדית מחזקת את הדברים שנשמעו מפי גובי ההודעות ומתן האימרות הוכח במשפט כדבעי.

משנתקיימו תנאי סעיף 10א(א) לפקודת הראיות אנו קובעים כי האימרות בכתב שנתן ברגותי והכלולות בהודעותיו 43/ת א עד ה' הן קבילות כראיה בהליך דנן.

אנו מעדיפים אימרותיו של ברגותי על פני עדותו במשפט. מרבית תשובותיו כוונו להעברת המסר שאין הוא מכיר בסמכותו של בית המשפט ("אני לא מכיר בביהמ"ש, אתם לא מבינים?... אני לא מכיר בביהמ"ש ולא בישראל... אינני מכיר בביהמי"שי") ולא בהכחשת אימרותיו.

בכל זאת, מדי פעם פרצו ונתגלו הסימנים המעידים על כך שהאימרות אמיתיות:

"ש. מתי התחלת את הפעולות הצבאית שלך

ת. זה לא עניך...

ש. מרואן ברגותי קרוב משפחה שלך

ת. זה לא עניך למה זה שואלת אותי שאלות אישיות

ש. אתה היית הנהג ושומר הראש של מרואן ברגותי משנת 96 ועד היום שנעצרת

ת. נו, מה את רוצה

ש. האם זה נכון

ת. איך את שואלת שאלות כאלה? אני לא מכיר בך

ש. אלה דברים שאתה סיפרת

ת. הדבר הזה הוא לא שלי

ש. אתה סיפרת גם שנעצרת יחד עם מרואן ברגותי

ת. אין לי תשובות בכלל יותר טוב שלא תשאלי...

ש. אתה דאגת להכין את הסעד לפני הפגוע דאגת לזה שיהיה מי שיסיע אותו לירושלים למקום קניתם לו בגדים ונעליים לקחתם אותו להסתפר ואתה בתניתים נאסר עוויס שהיה מתכנן והמארגן אתה גם דאגת להשיג לסעיד רמאדן נשק רובה M16 ומחסניות עם כדורים

ת. (העד שותק ואיננו משיב)

ש. אתה סיפרת בעצמך את כל הפרטים האלה בהודעה שלך

ת. אני אומר מה שאני רוצה מה שבא לי אני אומר

ש. זה מה שאו בא לך להגיד

ת. זה לא ממני זה לא הכתב שלי. אם באמת נאסר עשה את כל הדברים האלה הוא רק רצה לשחרר לנו את פלסטין זה דבר מרומם את הראש...

ש. לא רק שסיפרת בהודעות שלך על הרבה מקרים של פיגועי ירי התאבדות ובהתיחס לכל הפיגועים שעשית אתה מצטער על מה שעשית

11

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 247

ת. אם שרון מצטער על מה שהוא עשה אז אני מצטער על מה שעשיתי.

ש. אתה לא מצטער על ששלחת מחבלים להתפוצץ פה בארץ ולהרוג?

ת. אני רוצה לשחרר את ארצי זו שאתם כובשים...

ש. מציגה לך את ההודעה מס׳ 5 מ 5.9 גם בהודעה זו אני מראה לך את האזהרה את החתימה על האזהרה והחתימה על כל עמ׳ בהודעה ואת החתימה בסוף ההודעה

ת. מה שאני רוצה אני עושה. אין לי אף אחד שימנע בעדי, אני אכתוב ואגיד מה שאני רוצה..."

אמת ניתנה להאמר שהתשובה "אני רוצה לשחרר את ארצי זו שאתם כובשים" היא בגדר ראשית הודייה.

יפים לענייננו הדברים שנאמרו בע״פ 735/80 אברהם כהן נ׳ מ״י, פ״ד לה(3) 94, "משקובע עתה סעיף 10א שבית המשפט יכול להעדיף את האמימרה על העדות על האמימרה בבית המשפט, יכול היה הסנגור לנסות ולחזק מצידו את גירסת העד בחקירתו הראשית, על ידי חקירה נגדית שמטרתה להסביר שהאמימרה למשטרה היתה אימרה כוזבת, אך הסנגור לא חקר את העד כלל".

הודעות העד יאסר אבו בכר ת/47א׳ עד ג׳ נגבו על ידי עד התביעה מס׳ 31 יצחק יעקובוף. העד לא זכר את מעמד גביית העדות ורענן זכרונו מהאמימרות. על עדותו הוא הזדהה בפני אבו בכר כשוטר, ניהל את השיחה עם אבו בכר בערבית ותרגם לו את הדברים. על פי עדותו של יעקובוף כאשר תרגם לערבית את שכתב בהודעה יכול היה אבו בכר להשיב אך כך לתקן או לסרב לחתום. על פי עדותו הוא רשם רק את מה שאבו בכר אמר לו ואבו בכר אישר בפניו את כתב היד שנעשה בפני חוקרי שב״כ בכתב ידו. על פי עדותו לו היו נסיבות חריגות היה מציין זאת ולו נשמעו תלונות היה רושם אותן כמו שהיה מציין אם היה רואה סימנים ויזואלים. יעקובוף הבהיר שכאשר חשוד מגיע לחקירה משטרתית הוא אדם חופשי "וזו ההזדמנות שלו למסור או לא למסור את גירסתו וזאת מבלי למה שקדם לכך בשב״כ. אם היתה איזה שהיא בעיה הייתי רושם כי זו חובתי כל מה שרשום בעדות זו נאמר מפי החשוד". יעקובוף הבהיר כי "גם בעדויות הקודמות וגם בעדות הזאת, הצגתי עצמי כשוטר, זה הדבר הראשון מעבר לכך הם (הכוונה לנחקרים מסוגו של העד ) עושים את האבנהאו מי שוטר ומי חוקר שב״כ, הם נתקלים איתנו בהארכות המעצר והם לא יכולים לטעות בענין הזה...".

ההודעה ת/47ד׳ נגבתה מאבו בכר על ידי עד תביעה מס׳ 30 משה לוי לדבריו גבה ההודעה לאחר שהחשוד הוזהר כדין העדות נכתבה בערבית אך החקירה התנהלה בערבית. בתום ההודעה הוא קרא בפני אבו בכר את הדברים וזה חתם בפניו. על פי עדותו של לוי שלא זכר ספציפית את המקרה הרי אם היה אבו בכר מתלונן בפניו הדבר היה נרשם. עוד הבהיר לוי כי אין לו צורך להזכר אם הזדהה כשוטר משום שזו חובתו והוא עושה את זה עם כל חשוד. בהתייחס לקשר שבין החקירות שלו כשוטר לזיכרונות הדברים המוגשים לו מהשב״כ הסביר כי חקירותיו עצמאיות והוא מתיחס לזכ״ד "רק כעקרו דברים ואם חשוד אומר שלא היו דברים מעולם זה מה שירשם בסופו של דבר כלומר מה שהוא אמר זה מה שירשם".

ההודעה ת/47ה׳ ות/47ו׳ נגבו ע״י עד מס׳ 36 משה משה. היות שאבו בכר טען לפנינו בין השאר כי הודעותיו נגבו בלחץ אנשי השב״כ הרחיב משה דבריו (לאחר שהתטבעה המלומדת ואף אנו הפנינו תשומת לבו לטעונתיו של אבו בכר) לא רק על הדרך בה גבה ההודעות אלא גם על אופן חקירתו וגם אבו בכר אל נוכח חקירה קודמת שנערכה וגם נערכה גם לאחרים על ידי השב״כ, חקירה הנעשית לצורך סיכול וכדבריו "כשאני מקבל לידי זכ״ד חקירה שמעיני מאנשי שב״כ אני בודק את הנקודות שעלות בו זה החשודות שיש נגד אותו חשוד ולאחר מכן אנחנו כותבים את תוכן האזהרה תוכן החשדות מקריאים ומסבירים ודואגים

לראות שאכן מבין את תוכן האזהרה וידוע על מה הוא נחקר וזה בשפה הערבית, אני דובר את השפה הערבית על בוריה, אינני כותב ואינני קורא אבל דובר את השפה הערבית, חלק מתהליך זה אני מקריאם, אני מודיע לו שאני איש משטרה, והוא מודע לכך שאני איש משטרה והוא עומד לתת עדות משטרתית. לאחר שאני בודק באיזה נקודות התייחסות היתה אליו בשב"כ, ועל מה דיבר אני בונה את החשדות נגדו, אם זה השתייכות לארגון או החזקת אמל"ח או לחלופין סיוע למבוקשים או כל עבירה אחרת, ובהתאם לכך אני נערך גם מבחינת החקירה עצמה.

השב"כ חוקר את נושא הסיכול, הוא עוסק בתחום שעליו לסכל את הדבר העתידי, כלומר את הפגוע העתידי. תפקידי כחוקר משטרה הוא לעסוק אך ורק בנושא החקירה המתייחסת לאיסוף הראיות כנגד החשוד דאז, זאת אומרת שאם אני חוקר אדם אני חייב לעבוד על פי דיני הראיות ולהבין את החוק...".

כאשר עימתה התובעת את אבו בכר עם העובדה שההודעה נגבה ממנו על ידי שוטר ולא על ידי אנשי השב"כ ענה "לא ראיתי שוטר שאני אדבר איתו כולם קציני שב"כ".

התרשמותנו היא שהשוטר משה משה אכן הזהיר את אבו בכר כשוטר כפי שנהגו השוטרים האחרים והדברים שנמסרו בהודעות שגבה משה והשוטרים האחרים (יעקובוף ולוי) נאמרו להם מפיו של אבו-בכר מרצונו הטוב והחופשי ואין זו תוצאת התנהגותם של חוקרי השב"כ כלפיו.

הנאשם ובא כוחו לא חקרו את השוטרים בחקירה נגדית גם לא ביקשו לזמן את אנשי השב"כ עורכי זכרונות הדברים לחקירה. הנאשם ובא כוחו לא חקרו את העד אבו בכר במטרה לחזק גירסתו כי ההודעות נגבו ממנו באמצעים פסולים.

המנעות זו אמנם אינה יוצרת חזקה לפיה גירסת השוטרים היא הנכונה אולם היא מוסיפה ומחזקת את התרשמותנו בדבר מהימנות עדותם של לוי יעקובוף ומשה. בנסיבות דנן, קרי המנעות מכוונת ומגמתית של הנאשם ובא כוחו – רף שהדגיש בענינו לא אחת – מחקירת נגדית או מזימונם של עדים רלבנטיים, אשר לא ניתן לשקלה על רקע עדויות סותרות אחרות שממילא לא הובאו. אנו מעדיפים עדותם על הדרך בה ניתנו אימרות החוץ של אבו בכר על פני גירסתו של האחרון (עיין ע"פ 38/61 משה נ דוד יצחק נ. היוהמ"ש פד טז 514 וע"פ 639/79 אסלן נ מ"י פד לד(3) 561 ע"פ 2603/90 אלפאר נ. מ"י פד מה(3) 799).

בכל מקרה כמו שנקבע בע"פ 242/85 נ' מדינת ישראל, פ"ד מא(1), עצם העובדה כי אימרת נאשם במשטרה אינה קבילה במשפטו שלו אין בה כדי להביא לידי כך שאותה אימרה לא תהא קבילה במשפט אחר בו נדון ענינו של שותף על פי הוראת סעיף 10 (נדוק, לא קבענו שנתעוררה אפשרות כזו.)

אמרותיו של אבו בכר שניתנו במסגרת ההודעות ת/47א עד ו' הוכחו במשפט ומשנתקיימו כל תנאי הסעיף 10א(א) לפקודה אנו מקבלים אותן כראיות קבילות.

אנו מעדיפים את אימרותיו של אבו בכר על פני עדותו בבית משפט. בהתיחס למרבית השאלות המפורטות את מעשיו של אבו בכר יחד עם הנאשם הפנה אבו בכר את התובעת הנכבדה לאנשים היושב מולו, נאשם אשר בחר כאמור שלא לחקור בחקירה נגדית את אבו בכר או כל עד אחר. וכך אבו בכר

"ש. מפנה להוצאה מס' 3... שם שאלו אותך מתי התחלת את הפעילות הצבאים שלך ומי גייס אותך לפעילות הצבאים ואמרת שבתחילת שנת 2001 היית בביתו של נאסר עוויס במחנה הפליטים בלטה ואז נאסר עוויס הציע לך להתגייס לגדודי חללי אל אקצא לפעילות צבאים והסכמת.

13

ת. הדברים האלה לא נכונים ואתם יכולים לשאול אותו הנה הוא פה...

ש. מפנה להודעה מס' 4... אתה הצעת לנאסר עוויס במהלך הפעילות שלכם לעשות פגוע בבית חולים תל השומר בישראל

ת. אין דבר כזה תשאלי אותו

ש. תכננתם את כל הפרטים ואפילו השיגו מפה של האזור, ובסופו של דבר נאסר אמר שצריך לחכות קצת, שזה עוד לא הזמן המתאים

ת. אין דבר כזה. את יכולה לשאול אותו

ש. מפנה לעמוד ב... עוד אחד מהתפקידים שלך היה לסייע לנאסר עוויס לגייס עוד פעילים מחבלים לפעילות הצבאים שיעזרו להוציא אל הפועל פיגועים

ת. לא היו דברי כאלה הנה הוא תשאלי אותו...

ש. היית מדווח לנאסר עוויס כל פעם על מחבל שנודע לך שרוצה לעשות פגוע

ת. פעם ראשונה אני שומע את הדברים האלה בנוסף לכך הדברים האלה הם של השבכ נאסר נמצא פה תשאלו אותו".

אל מול השאלות האלה שהפנתה התובעת לאבו בכר וזה הפנה אותן מצידו לנאשם, לא הציב הנאשם גירסה מטעמו ונותרנו עם אותן הודיות אשר בהודעותיו ועם הודאתו לעינו הפקוחה של שופט המעצרים שראוי לחזור עליה כאן "אני מאשר כאמיתיות ונכונות האימרות וההודאות שמסרתי בחקירתי בערבית קראתי אותם וחתמתי עליהם. נכון שהייתי מעורב בכל המעשים והפגועים שהודיתי עליהם "כל אחד והתפקיד שלו" אינני מתנגד להארכת המעצר המבוקשת".

נציין כי הנאשם עצמו מספר ביחס ליאסר אבו בכר בין השאר את הדברים הבאים (עיין הודעת הנאשם ת\6) "אחרי פרוץ אינתיפדת אלאקצה התגייס יאסר אבו בכר לכתאב שוהדאא אל אקצה וביקשתי מיאסר שישתתף עימנו בפיגועים ויאסר הסכים להצעה ומסרתי לו נשק מסוג M-16 ויאסר ביצע פיגוע ירי מהנשק שמסרתי לו הפיגוע היה לעבר רכב ישראלי בכביש העוקף מזרחית לשכם ועל פי דברי יאסר לא פגעו ברכב" ובתשובה לשאלה באיזה פיגועים נוספים היה יאסר מעורב בשם כתאאב שוהדאא אלאקצה "פיגוע חדרה שבוצע על ידי סעיד רמדאן...פיגועים שבוצעו באיזור שכם...".

עובדות אלה לכשעצמן סימן מובהק לאמיתות האימרות שניתנו במשטרה ולכך שיש להעניק להן משקל ניכר.

סימן נוסף לאמיתות אימרותיו מצאנו בגירסאות הסותרות של העד אבו בכר שנמסרו בבית המשפט לגבי אימרה אחרת אשר על פי אימרותיו נעשתה בכתב ידו.

המדובר בכתב יד בערבית לגביו נשאל אבו בכר בהודעתו ת/47 א' גיליון מס' 4 את השאלה "אני מציג בפניך כתב יד בערבית (סה"כ עשרה עמודים בצבע צהוב אותם קיבלתי מהמכונה "בסאם") האם זה כתב ידך?

ת. כן זה כתב ידי ואני כתבתי את מה שספרתי לך עכשיו בעדות"

בעוד לשאלה שנשאל ע"י התובעות "ש. אני מציגה לך הודעה שצמודה להודעה מ 15.4 שזו הודעה בכתב ידך 10 עמודים". ענה "הם מכתיבים לאנשים לכתוב בעל כורחם. תעמידו אותם לדין לא אותנו" הרי

נבו הוצאה לאור בע"מ nevo.co.il המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 250

פ"ח (ת"א) 1137/02      מדינת ישראל נ' נאסר מחמוד אחמד עוויס

לשאלת "ש. זה לא כתב היד שלך" ענה "זה הכתב של קציני השב"כ הם כתבו את הדברים האלה" ובדרך אף ענה על שאלות דומות "ש. אלה דברים שאתה כתבת בעצמך ת. כשנשפך עליך תה זו כשאתה ארבעה חמישים ימים ללא אוכל וללא שינה אז אתה אומר את הדברים כדי להפטר, ש. אתה את הדברים האלה כתבת ת. יש לי עו"ד אתם צריכים לראות איך השב"כ נוהג עם אנשים ש. אתה מזה זה כתב היד ת. אני לא רוצה לענות לך את מתנהגת כמוהם וצועקת עלי (עונה גם בעברית וגם באנגלית)"

**סיכום ביניים**

חזרנו ובחנו שכל הכללים החיוניים להתקיים בטרם יוכשרו כראיה אימרות ארבעת שותפי הנאשם מחוץ לכותלי ביהמ"ש במסגרתו של סעיף 10א לפקודת הראיות נתקיימו (ובכללם הוכחת האימרות במשפט מתן ההזדמנות לנאשם לחקור את העדים, השאלה אם העדויות בית המשפט שונות באופן מהותי מהדברים שנרשמו בהודעות)

שקלנו בדבר בזהירות המתחייבת ואנו מעדיפים את אימרותיהם של ארבעת העדים שותפיו של הנאשם המצויות בהודעותיהם במשטרה על פני עדותם במשפט.

עדות הטעונה תוספת כלשהי תוכל לשמש כשלעצמה תוספת מכל סוג שהוא לעדות אחרת הטעונה תוספת. על כן, אימרות ארבעת השותפים יכולות להוות "דבר מה" נוסף להוודיות הנאשם מחוץ לכותלי בית המשפט.

(עיין, קדמי על ראיות חלק ראשון וכן ע"פ 6147/92 מ"יי נ' יוסף כהן, פ"ד מח(1) 62 ; ע"פ 6214/94 נ' פלוני דינים עליון כרך לח 665 ; ע"פ 5249/98 מ"יי נ' מירילאשווילי, פ"ד נג(3) 550).

על כל אחת מהאימרות ובכללן אימרות שניתנעו על ידי חלק מהארבעה בכתב יד – עליהן יש להשקיף כחלק אינטגרלי מאותן הודעות בהתאם (עיין ע"פ 6411/98 מבכר נ' מדינת ישראל, פ"ד נתו(2) 150) – ניתן להסתמך כראיה תומכת בדמות "דבר מה" נוסף לראיות אחרות שהובאו כנגד הנאשם בדמות הודעותיו הוא.

כשותפים לנאשם ובהתאם להוראות סעיף 54א(א) לפקודת הראיות נדרשנו למצוא "דבר לחיזוקה" של עדותם.

נדרש לנו דבר לחיזוק אף בהתאם להוראות סעיף 10א(ד) לפקודת הראיות המורה לנו כי לא יורשע אדם על סמך אימרה שנתקבלה לפי סעיף 10א לפקודת הראיות "אלא אם כן יש בחומר הראיות דבר לחיזוקה". מבחינת אופיה של דרישת הדבר לחיזוק (משמעו זהה בהקשר לשני הסעיפים דלעיל) מדובר בתוספת ראיה מאמתת להבדיל מראיה מסבכת. הדבר לחיזוק אינו חייב להיות ראיה עצמאית ויכול הוא לעלות מן העדות הטעונה חיזוק.

דבר לחיזוק זה נמצא לנו מעל ומעבר לדרוש בראיות מסבכות שבאו ממקור עצמאי ונפרד והן :

הודאתן המלאה של הנאשם בפני שופט המעצרים

אימרות כל אחד מארבעת השותפים בהתייחס לאימרות רעהו ובהתאם.

15

שתיקת הנאשם והימנעותו מלהעיד במשפט שבאה על רקע האמור לעיל ועל רקע קו ההגנה שבחר הנאשם (עליו עמדנו בפתח הדברים) שהיא כשלעצמה ראיה המגיעה לכדי ראיית סיוע על פי סעיף 162 לחוק סדר הדין הפלילי תשמ"ב-1982 המשמיענו כי "הימנעות הנאשם מלהעיד עשויה לשמש חיזוק למשקל הראיות של התביעה וכן סיוע לראיות התביעה במקום שדרוש להן סיוע".

מאחר ונמצא לנו קורפוס דליקטי (ראה עדויות ע"ת מס' 1 תני"צ משה ולדמן, ע"ת מס' 2 תני"צ אהרון פרנקו, ע"ת מס' 3 נצי"צ חגי דותן, ע"ת מס' 4 תני"צ אורי ברלב, ע"ת מס' 8 אוריאל אליהו, ע"ת מס' 9 סמיי"ר שי כהן, ע"ת מס' 10 ג.מ, ע"ת מס' 11 ליאון גורנשטיין, ע"ת מס' 12 קונסטנטין קרדשוף, ע"ת מס' 13 עדי מרוז, ע"ת מס' 14 בן נעים חנן, ע"ת מס' 15 נועם גבאי, ע"ת מס' 16 רסי"ר רמי מזאל, ע"ת מס' 17 אפי ימין, ע"ת מס' 18 סני"צ פריד גאנם, ע"ת מס' 19 טל רומזו, ע"ת מס' 20 רפי"ק יהודה פרץ, ע"ת מס' 22 אבי בן עמי, ע"ת מס' 24 שמעון לואסקי, ע"ת מס' 26 אסף אזולאי, ע"ת מס' 27 עמיר שר והמוצגים ת\1 עד ת\6 כולל, ת\21,ת\21, ת\24 עד ת\37 כולל, ת\48, ת\49, ת\52 עד ת\79 כולל), מאחר והנאשם לא הכחיש את עצם מסירת ההודאות בפני גובי ההודעות או בפני שופט המעצרים הנכבד .. מאחר והנאשם אף חזר והודה בפה מלא ובפנים חפצה בפני שופט המעצרים בכל המעשים שיוחסו לו תוך הבנת מעשהו זה ומאחר ומצאנו כי משקלן הפנימי של הודאותיו גבוה,קטן בהתאם המשקל הנדרש לי"דבר מה" הנוסף לשם אימותן.

והנה, גם בעניין דבר המה הנוסף (אשר מבחינת מטרתו לא בא אלא להראות שהנאשם לא בדה דברים מלבו ועל כן לא נדרש הוא להיות בגדר ראיה מסייעית המסבכת את הנאשם דוקא ודי בראיה מאשרת), מצאנו כי הוא בעל משקל של ממש ועונה בנקל לדרישה מוגברת וממחמירה בהיותו מסבך את הנאשם בביצוע העבירות המיוחסות לו, בא ממקור נפרד ועצמאי ומתייחס לנקודות ממשית השניה במחלוקת.

## עבירות בניגוד לפקודת מניעת טרור וקשירת קשר

בהתאם להכרזה לפי סעיף 8 לפקודת מניעת טרור, התש"ח-1948, נקבע כי התנזים הוא "ארגון טרוריסטיי" כהגדרת סעיף 1 לפקודה (ילקוט הפרסומים (תשס"ב), עמי 800 מ-06.12.2001.

עפי"י חוות דעת מומחים אשר הוגשו ללא התנגדות הנאשם וסנגורו (ת/50 ,ת/51) הרי (בן השאר) "למן ראשית הארועים האלימים ב"שטחים" שהחלו בספטמבר 2000 נטל ה"תנזים" תפקיד מרכזי ומוביל בבצוע פעילוט טרור. פעילי הארגון ביצעו פיגועים במתתדוים שונים לרבות פיגועי הרג המוני בשטח ישראל ובאיוי"ש... התאגרגוניות הטרור של התנזים ברצועת עזה ואיוי"ש (שלעתים חברו אליהם גורמים נוספים בשטח) החלו להשתמש (נובמבר 2000) בכינוי "גדודי חללי אל אקצא ("כתאאב שהדאא אלאקצא") במיוחד לצורך קבלת אחריות על פיגועים ביעדים ישראליים...

במהלך העימותים האלימים קיבלו "הגדודים" אחריות על פיגועים רבים שבוצעו במתוויים שונים ב"שטחים" ובתחומי ה"קו הירוק" בכללם פיגועים קטלניים. התאגרגוניות הטרור של ה"גדודים" אחראיות לאלפי פיגועי ירי ומטעגי בצירים העוקפים באיוי"ש ולעשרות פיגועי הרג המוני בשטח ישראל בהם נהרגו עשרות ישראלים... המאפיינים המרכזיים של פיגועי ההרג ההמוני כוללים התמקדות המפגעים במקומות הומי אדם (מרכזי ערים ומתחמים ציבוריים המוקונים מקור משיכה לציבור הרחב דוגמא בתי קפה ומסעדות, תחנות אוטובוס ומרכזים מסחריים וכוי) והוצאת לפועל של פיגועי התאבדות (באמצעות חגורת נפץ, או מטען שנושאת המפגעים במתווה עם הגעה ליעד) ופיגועי הקרבה (פיגועי ממנו סיכוני המפגע להמלט קלושים במרבית הפגועים במתווה זה עושים מבצעיו שימוש ברו"סרים מסוגים שונים) בהם נהרגו עשרות רבות של ישראלים...".

נבו הוצאה לאור בע"מ nevo.co.il    המאגר המשפטי הישראלי

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

P 5: 252

מדינת ישראל ני נאסר מחמוד אחמד עוויס                                      פח (ת"א) 1137/02

הנאשם סיפר בהודעותיו כי "אחרי פרוץ אינתיפאדת אלאקצא התחלתי בביצוע פיגועים נגד מטרות ישראליות מפאת הכיבוש לאדמה הפלסטינאית... לאחר מכן החלטתי לבצע פיגועי ירי ופיגועים נוספים נגד מטרות ישראליות בגדה ובתוך הקו הירוק, הפיגועים שבצעתי אותם הם כדלקמן: -

"1. ביצעתי פיגועי ירי לעבר עמדת שמירה על הצבא הישראלי ליד קבר יוסף בשכם וזה היה לפני יציאת הצבא מהקבר בשבועיים לערך

2. ביצעתי ירי לעבר עמדה צבאית בהר גריזים בשכם...

3. ביצעתי ירי לעבר רכבים צבאיים בקרבת מחנה חוארה ליד שכם

4. ביצעתי ירי לעבר רכבים צבאיים בקרבת שכם מהצד המערבי בקרבת זואתה

5. מסרתי לשני אנשים רימוני יד על מנת לבצע פיגוע בירושלים

6. מסרתי נשקים לביצוע פיגוע בנתניה...

9. אני מסרתי נשק לביצוע פיגוע בחדרה

10. אני מסרתי נשק לביצוע פיגוע ירי פיגוע הקרבה שהיתה אמורה להתבצע בחדרה אך הפיגוע לא הצליח והאנשים נהרגו בקרבת באקה אלגרביה

11. סיפקתי לסעיד רמדאן נשק לביצוע פיגוע התאבדות בתוך ירושלים

12. סיפקתי לעבד אלסלאם חסונה נשק לביצוע פיגוע התאבדות בתוך חדרה

13. סיפקתי לעבד אל רחמאן עבדאללה שני מטענים + קלציניקוב...

14. סיפקתי למג'די חלוס מטען נפץ שהניח אותה בדרך... לעבר סיור ישראלי".

הנאשם ענה לשאלות הבאות כדלקמן:

"ש. בשם מי היית מבצע את הפגועים שצויינת לעיל

ת. בשם כתאאב שוהדאא אלאקצא שהוא משתייך לפתייח.

ש. מי אחראי על תנועת הפתח

ת. יאסר ערפאת האחראי ויור תנועת פתח

ש. מי אחראי על תנזים פתח

ת. מזכיר תנועה פתח בגדה המערבית מרואן ברגותי...

ש. למי משתייכים שוהדאא אל אקצא

ת. שוהדאא אל אקצא משתייכים לתנועת פתח ולתנזים פתח

ש. מה הקשר שלך למזכיר תנועת פתח בגדה המערבית מרואן ברגותי

ת. הקשר שלי למרואן ברגותי מזכיר תנועת פתח התחיל בשנת 1992 כשהתגוררנו באותה שכונה באמאן בעת שגורשנו על ידי השלטונות הישראלים ומרואן חזר לגדה בשנת 1994 ואני חזרתי בשנת 1995 וכשחזרתי לגדה התחדשו הקשרים עם מרואן והייתי נפגש עם מרואן במשרד תנזים בשכם. וכן הייתי נפגש עמו במשרד ברמאללה ואחרי פרוץ האינתיפדה אלאקצא המשכתי להיות בקשר עם מרואן ברגותי והיינו מארגנים הפגנות בשם תנזים פתח והכרוזים היינו מפיצים בשם ועדת התיאום (הארגונית) (אלפסאלי) והאחראים בועדה יוסף חרב מטעם פתח וגימאל סלם מטעם חמאס ואחרי מותו קיבל את התפקיד אדם אחר ויור הועדה היה יוסף חרב ומרואן ברגותי חבר בועדת התיאום העליונה והמהועדה העליונה היו מנחים ועדת התיאום הארגונית (אלפסאלי)...

נבו הוצאה לאור בע"מ nevo.co.il   המאגר המשפטי הישראלי

ש. מי היה מממן את הכסף לביצוע פיגועים נגד מטרות ישראליות

ת. היה מממן אותי בכסף אנשים מתנזים פתח בגדה ובלבנון

ש. מי הם האנשים שמימנו אותך בכסף לקניית נשק על מנת לבצע פיגועים נגד מטרות ישראליות

ת. לקחתי ממאמר אלמריצ'י 12,000 שקלים וכן לקחתי מעצאם אבו בכר 8000 שקלים כהוצאות וקבלתי ממוניר מקדה בלבנון קיבלתי 50,000 דולר

ש. במה עוסק מאנ'ד אל מצרי

ת. קצין במשטרה הפלסטינאית בשכם וחבר בפתח

ש. במה עוסק עאצם אבו בכר

ת. אחראי תנועת פתח בשכם ומשתייך למרואן ברגותי

ש. במה עוסק מוניר מקדה

ת. אחראי פתח בלבנון ומשתייך ליאסר עראפאת

ש. האם היה קשר בינך לבין מרואן ברגותי

ת. הייתי בקשר עם מרואן ברגותי כל הזמן

ש. האם מרואן ברגותי היה יודע שאתה מבצע פיגועים נגד מטרות ישראליות

ת. כן ידע ושמי אף פורסם בעתונות ובטלביזיה וברדיו והייתי משוחח עימו מידי פעם וכשהמצב הפליטי היה מדרדר ורע לנו היה מבקש שנמשיך בפיגועים וכשנפגש שמעון פרס ועומאר שרון עם מנהיגים ברשות התקשר אליי מרואן ברגותי וביקש שנעצור את הפיגועים ואני השבתי לו שאעשה זאת ובאותה תקופה היה זיני באיזור ומרואן אמר לי שעדיין מאחר והנגרל זיני נפגש עם מנהיגים ברשות שלא נבצע פיגועים בשם שוהדאא אלאקצא ויש לצין כשההקדמה בשיחותות לא נבצע פיגועים

ש. מי היה מממן את עאצם אבו בכר שהיה מממן אותך בכסף לקניית נשק

ת. עאצם אבו בכר היה לוקח כסף מתנועת פתח מהתקציב שהיה מאשר יור תנועת פתח יאסר עראפאת

ש. מי היה מממן את מאנ'ד אל מצרי שהיה מממן אותך לקניית נשק על מנת לבצע פיגועים נגד מטרות ישראליות

ת. מאנ'ד אל מצרי סיפר לי שהוא לוקח כסף ממרואן ברגותי ומאנ'ד היה מודע לכך והשתתף עמי במספר פיגועי ירי נגד מטרות ישראליות...

ש. האם מרואן מממן אותך בכסף באופן ישיר

ת. כן מממן אותי מרואן ברגותי פעמים באופן ישיר בפעם הראשונה העביר לי באמצעות הפקדה בבנק 3,000 ₪ ובפעם השניה העביר לי דרך הפקדה בבנק 5,000 ₪

ש. האם מרואן ברגותי ידע שאתה מבצע מבצע פיגועים נגד מטרות ישראליות

ת. כן ידע וכפי שציינתי לעיל שמי אף פורסם בעתינות והשלטונות הישראלים מסרו לרשות הפלסטינאית שאני מבוקש בגין פיגועים ושמי גם פורסם בעתינות העברית ובעתינות המקומית בגדה וברצועה

ש. האם מרואן ברגותי סייע לך במימון כסף פרט למה שהזכרת לעיל

ת. כן פעם קיבלתי ממנו שיק על סך 2,300 ₪ מאושר על ידי היור עראפאת...". (עיין הודעת הנאשם ת/5).

עוד ענה לשאלות (עיין הודעה ת/6) כדלקמן :

נבו הוצאה לאור בע"מ   nevo.co.il   המאגר המשפטי הישראלי
C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

"כן היו לי מספר כינויים במהלך ביצוע הפיגועים כמו אלעם אלחאג׳ אלשיך אלכביר... וכן לקחתי... שני טילי טנק ישנים על מנת להוציא מהם את החומר נפץ ואשתמש בחומר למטעני נפץ ובמטעניים השתמשתי על כביש העוקף בזאתא... ואני גייסתי אותו (הכוונה לאדם בשם לואי עודה) לכתאב שוהדאא אל אקצא לפני כדחל שיים לערך והמטרה מגויסו לשותדא אל אקצא על מנת שישיייע לנו בפיגועים באזור ירושלים ושיכניס מתאבדים (מוסתשהידים) לירושלים ואני גם כן ביקשתי מלואי שילמד אותנו ייצור חומר נפץ יותר חזק מחחז-מי שהשתמשנו בו ולואי הסביר לי בטלפון כיצד מייצרים חומר (אומטלעבד) והשבתי לו שאנחנו יודע ליצר אוסאלעבד. ולפני חודש וחצי ביקשתי מלוואי שיבדוק דרך להכנסת מתאבד לירושלים... ותפקידי היה לתאם בין מחמוד ולואי על מנת להכניס את המתאבד לירושלים והפיגוע הזה בוצע אף ללא הצלחה מאחר ושוטרים ירו לעבר המתאבד לפני הביצוע... וג׳אוי חוסיני ביקש ממני שאסכים לקבל שיחה מאדם אחרי מספר ימים התקשר אלי מוניר מקדח המכונה אבו חוסיין ובקש שנמשיך בביצוע פיגועים והציע לי מימון כספי ואני הבעתי את הסכמתי ומסרתי לאבו חוסיין מספר חשבון הבנק שלי בבנק ערבי בשכם על מנת שיעביר לי כסף ואכן אבו חוסיין העביר לי כסף שש פעמים לערך והפקיד 3,000 או 5,000 דולר...

ש. מה עשית בכסף שהעביר לך מוניר מקדח

ת. לשם ביצוע פיגועים... על פי הסיכום עמו היה ממומן אותנו בכסף לביצוע פיגועים ואני הייתי מדווח לו אודות הפיגועים במהלך השיחות שניהלתי עמו באמצעות הטלפון והאינטרנט... שוחחתי עמו אודות הרבה פיגועים... ודיווחתי לו גם כן אודות פיגוע התאבדות בירושלים ובחדרה שביצענו...

ש. איזה קשר צבאי היה לבין יאסר אבו בכר

ת. אחרי פרוץ אינתיפאדת אל אקצא התגייס יאסר אבו בכר לכתאב שוהדאא אל אקצא וביקשתי מיאסר שישתתף עמנו בפיגועים ויאסר הסכים להצעה ומסרתי לו נשק מסוג M16 ויאסר ביצע פיגוע ירי מהנשק שמסרתי לו. הפיגוע היה לעבר רכב ישראלי בכביש העוקף מזרחית לשכם ועל פי דברי יאסר אל פגע ברכב...

ש. האם היה קשר ליאסר עם מתאבדים

ת. כן אני ויאסר עבדנו יחד לשלוח מתאבדים עם מחמוד אלטיטי ואחמד אבו חדר... ובמידה והיינו נזקקים לדבר מה כמו צילום המתאבדים או הפצת כרוזים היינו נעזרים ביאסר ולפני כניסת הצבא לשכם כשבנעויים ביקשתי מיאסר שינצה להשיג חגורת נפץ למתאבד על מנת לבצע פיגוע בתוך ישראל ויאסר אכן הביא חגורת נפץ ומסרנו אותה למתאבד שנסע עם אדם אחר לביצוע פיגוע בישראל וכשהגיע לבאקה אל גרביה ירו חיילים לעברו ונשניים נהרגו... מה סוג הרכב שנסעו בו המתאבדים

ת. לא ידוע לי אך מסרתי לאחמד 3,500 ₪ על מנת שיקנה רכב גנוב להעברת המתאבדים ואחמד נסע עמם לטול כרם והראה להם את הדרך וחזר ברכב ציבורי...".

ובהודעתו ת/7 בתשובה לשאלות :

"... ומחמוד פנה אלי בענין זה מאחר ואנחנו חוליה צבאית ואני הבעתי את הסכמתי לפיגוע זה... יש לציין שאחמד אבו חדר פנה אלי כי אני אחראי כתאב שוהדאא אל אקצה... ואחרי ששמעתי ברדיו שנהרגו התקשרתי לכלל תקשורת והודעתי להם שהפיגוע בוצע על ידי כתאב אל אקצה... אך כשהודעתי שאנחנו לוקחים אחריות על הפיגוע מחמוד אמר לי את השמות... כן היה לי קשר בפיגוע הירי בנתניה שבוצע על ידי מתאבדים שלא ידועים לי שמותיהם ולפני הפיגוע הזה בימויים התקשר אלי אחמד אבו חדר ואמר לי שביכולתו להכניס שנים לישראל על מנת שיבצעו פיגוע התאבדות ואני פניתי למחמוד טיטי ושאלתי אותו באם הוא יכול להכניס מתאבדים והשיב לי בחיוב ואני מסרתי לאחמד שני רימונים ומחמוד טיטי מסר להם שני נשקים מסוג M16 ואחמד אבו חדר צילם אותם והסביר להם על הפיגוע... ואחרי מספר שעות שמענו בטלוויזיה שהיו חילופי אש בין המתאבדים וכוחות משטרה ליד בית מלון בנתניה ואזרחים

C:\Users\Owner\Desktop\to bates stamp\Nasser Aweis Conviction.doc

ושוטרים נפגעו בפיגוע ונרצחו שניים ושניים אחרים נהרגו על ידי המשטרה והתקשרתי לכלי התקשורת ולקחתי אחריות על הפיגוע...".

ובהודעה ת/8

"ש. האם היה לך קשר עם עבד אלכרים עויס

ת. כן... ואני יצרתי איתו קשר וביקשתי ממנו שיבצע פעולות צבאיות...

ש. מה עשה מחמוד במטענים שמסרת לו

ת. לפיגועים ולא זכור לי היכן בוצעו הפיגועים.

ש. האם אתה מכיר אדם בשם מג'די סמיר חילוס

ת. אני מכיר אותו ....ביקש ממני מטען נפץ על מנת לבצע פיגוע נגד סיור צבאי ישראלי ואני הסכמתי לכך ומסרתי לו מטען שקיבלתי...

ש. האם אתה מכיר אדם בשם חאתם אבו חד'ר

ת. ...ואני לקחתי מחאתם באמצעות אחמד כעשרים אקדחים וכעשרים רובה קלצ'ניקוב....ו –

M16 ותמורת האמל"ח היתי משלם מכספי....".

במסגרת הודאתו של הנאשם לפני שופט המעצרים וכעולה מהעבירות המיוחסות לו בבקשה להארכת פקודת המעצר (ת/23) הודה הנאשם בחברות בארגון עויין "כתאב שוהדא אלאקצה" השייך לתנזים פת"ח, בהשתתפות בפיגועי ירי לעבר מטרות ישראליות באזור שומרון, במעורבות בגיוס מתאבדים ושליחתם לתוך ישראל, מתאבדים שביצעו פיגועי רצח כמו כן הודה בגיוס פעילים נוספים לביצוע פיגועים ובייצור חומר נפץ ומטענים.

עד התביעה אחמד אבו חדר מספר בהודעתו ת\12 "אני מודה שבמהלך חודש אפריל משנת 2001 הוצע לי ע"י נאצר עוויס להתגייס לכתאב שוהדא אלאקצה והסכמתי להצעה זו ומאז אני חבר פעיל בארגון שוהדא אלאקצה השייך לתנזים פת"ח ועד היום הזה ולאחר שהצטרפתי לארגון הנ"ל נאצר עוויס ביקש ממני להפיץ כרוזים בשם שוהדא אלאקצה וכן עשיתי את זה...ואחרי זה התחלתי להיות מעורב בפעילות צבאית השתתפתי בפיגועי ירי לעבר הצבא והשתתפתי בהנחת מטעני חבלה והשתתפתי גם בהכנת מס' מתאבדים ושליחתם לתוך ישראל לביצוע פיגועי התאבדות... נאצר עוויס הינו תושב מחנה בלאטה כבן 29 שנים ומכונה אל חאג' רווק והוא אחד האחראים בכתאב שוהדא אלאקצה ושימש כאחראי שלי בארגון ונאצר עובד בביטחון הלאומי בשכם ומשתייך לתנזים פת"ח...חברי הקבוצה שאליה הצטרפתי בשוהדאא אלאקצה הם 1. נאצר עוויס- שימש כאחראי על כתאב שוהדא אלאקצא..."

בהודעה ת\13 מספר אבו חדר "אני מודה שבמהלך חודש מרץ לפני כחודש ביקש ממני נאצר עוויס להוביל מתאבד משכם... ברכב מסוג פונטיאק גנוב שקיבלתי אותו מנאצר... אני הודעתי לעאמר שאיני יודע לייצר מטענים ולכן לקחתי אותו לנאצר עוויס למחנה בלאטה וביקשתי מנאצר שיסדר לו שני מטענים ואז נאצר התקשר למחמוד טיטי... וכעבור שעה מחמוד טיטי הגיע והביא עימו שני מטענים... ואחרי זה עאמר קיבל את המטענים וכל אחד הלך לביתו וכעבור שלושה ימים שמעתי מעאמר שביצע פיגוע נגד ג'יפ צבאי ... ומאחר וסעדי פנה מס' פעמים לכן הודעתי לנאצר עוויס שאישר לי להמשיך ולתכנן פיגוע התאבדות עבור סעדי ולכן פגשתי את סעדי והצעתי לו לבצע פיגוע משולב...וכעבור שבוע חזר סעדי ואמר לי שהוא מסכים