5. The next day, January 27, 2002, Abdel Karim Aweis, Mohanad Abu-Halawa and Mohamed Abu-Rabia came to the apartment, bringing with them a belt, in which was an explosive device, for the purpose of carrying out the planned suicide terrorist attack.

6. Since Darine refused to have a man dress her with the explosive belt, Leila Mohamed Salah Bukhari, at the request of the Defendant, who was married to her older sister, dressed Darine with the above mentioned explosive belt. When Leila Bukhari was putting the explosive belt on Darine's body, she noticed that one of the shoulder belts of the explosive belt was loose, and she tightened it using a pin.

7. The Defendant and his above named accomplices planed for Darine to come to the Israel Police station in Jaffa, and there detonate the explosive device carried on her body, thus causing the deaths of as many Israeli civilians as possible.

8. Subsequently the Defendant's accomplices left the above mentioned apartment, and the Defendant remained there till the evening with Darine and Leila Bukhari.

9. Fawzi Marar enlisted Musa Sari Hasune and Hafez Abdel Fatah Maqbal, for the purpose of transporting Darine into the State of Israel, so as to carry out the planned suicide terrorist attack there.

10. In the evening hours of that day, the Defendant came, together with Leila Bukhari and Darine, carrying the above mentioned explosive device on her body, to the Abu Riya Hospital in Ramallah. Thee they met with Abdel Karim Aweis, Mohamed Abu Rabi, Fawzi Marar and Mohanad Abu-Halawa.

11. From there the above named accomplices of the Defendant transferred Darine to the A-Ram checkpoint. At A-Ram checkpoint, Darine got into the blue Subaru, license plate number 7797787, belonging to Musa Sari Hasune and Hafez Abdel Fatah Maqbal, who came there at the request of Fawzi Marar, and were supposed to transport Darine to the Israel Police station in Jaffa so that Darine should set off the explosive device, mounted on her body, there, thus causing the deaths of as many Israeli civilians as possible.

[Stamp] P 5: 301

12. On January 27, 2002, at around 10:27 p.m., at the Maccabim Israel Defense Forces and Israel Police checkpoint on Road 443, the vehicle in which Darine, Musa Hasune and Hafez Maqbal was stopped for inspection by Israel Defense Forces soldiers and Israel Police officers. When Darine realized that she would not be able to get past the above mentioned Maccabim checkpoint, and get into the territory of the State of Israel to carry out the suicide terrorist attack as planned, she set off the explosive device carried on her person, with the intention of causing the deaths of Israel Police officers and Israel Defense Forces soldiers who were at the above mentioned checkpoint.

13. As a result of detonation of the explosive device, which Darine was carrying on her person, an Israel Police officer, Mordechai Tal, was seriously wounded in the abdomen, with two more policemen, David Cohen and Shaul Cohen, lightly wounded.

14. Darine was killed on the spot as a result of detonation of the above mentioned explosive device.

**Twenty-Third Count:**

**Nature of the Offense:** Possession of a firearm, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the beginning of March 2002 through the middle of April 2002 or thereabouts, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, was in possession of an M-16 assault rifle, which he has received from Mohanad Abu-Halawa, this being without a permit granted by or on behalf of the military commander.

The Defendant also fired the said M-16 assault rifle during the funeral of the above named Mohanad Abu-Halawa. The Defendant concealed the above mentioned M-16 assault rifle when he fled from Ramallah, following the entry of Israel Defense Forces units into the town.

9

Prosecution File 733/02

[Stamp] P 5: 301 [continued]

**Twenty-Fourth Count: Detailed Incident File 580/02 Shafet**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 10, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1. The above named Defendant, at the beginning of March 2002, in Ramallah or its vicinity, met with Abdel Karim Ratheb Younis Aweis. Abdel Karim Aweis informed the Defendant that there was a person who wished to carry out a suicide terrorist attack within the State of Israel, with the aim of causing the deaths of as many people as possible.

2. Abdel Karim Aweis asked the Defendant to assist with filming the suicide terrorist prior to the latter's departure to carry out the planned suicide terrorist attack. The Defendant agreed to film the suicide terrorist at the home of his brother, Khaled Shawish, located in Beituniya.

3. On March 9, 2002, the Defendant and Abdel Karim Aweis came to the said apartment in Beituniya. The suicide terrorist, Durgham Ezzat Mohamed Sa'id Zakarna, also came to the said apartment, as did the photographer, Ahmed Ghasi, who had been ordered by the Defendant, and another journalist. During the filming of the suicide terrorist, Samir Aweis, brother of Abdel Karim Aweis, was also present.

4. Subsequently Samir Aweis traveled, together with Durgham Zakarna, to the apartment of Abdel Karim Aweis in the al-Amari Refugee Camp. On their way to that location, a helicopter fired a missile at the vehicle. Durgham Zakarna managed to flee from the above mentioned vehicle, while Samir Aweis was killed as a result of the above mentioned rocket strike.

5. In line with the plant drawn up previously between the Defendant and his accomplices, Durgham Zakarna received from Mohamed Naifa, known as "Abu Rabi," a Kalashnikov assault rifle, ammunition and two hand grenades, and on March 14, 2002, left Ramallah to carry out the planned suicide terrorist attack, with the aim of causing the deaths of as many people as possible.

[Stamp] P 5: 302

6. On March 10, 2002, at around 2:30 p.m., the above named suicide terrorist Durgham Zakarna) attempted to infiltrate into the State of Israel, while armed with a Kalashnikov assault rifle, magazines full of bullets and two hand grenades, this being with the aim of carrying out the planned suicide terrorist attack and intentionally causing the deaths of as many civilians as possible. Durgham Zakarna was brought to the A-Ram checkpoint by Issa Mohamed Mahmoud Jabrin, who was recruited for this mission by the head of the Palestinian Authority's General Intelligence – Tawfik Tirawi.

7. At the said place and time, at the A-Ram checkpoint or thereabouts, the above named suicide terrorist, Durgham Zakarna, was killed by the Israeli security forces when attempting to infiltrate into the State of Israel as a stated above.

**Twenty-Fifth Count: Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1. The above named Defendant, in February 2002, in or near Nablus, met with Rabia Abu Rub, who asked the Defendant to transfer a person with "belongings" to Tulqarm. The Defendant agreed to do so, and then Rabia Abu Rub introduced the Defendant to Mohamed Hashaiqa.

2. The Defendant traveled together with Mohamed Hashaiqa from Nablus to Tulqarm. During the trip, the Defendant understood that Mohamed Hashaiqa was carrying on his person a belt with an explosive device, with the aim of carrying out a suicide terrorist attack. The Defendant and Mohamed Hashaiqa were unable to enter Tulqarm, which was surrounded by Israel Defense Forces troops, and were also arrested by the Preventive Security Service of the Palestinian Authority, after they were informed by Israeli sources that the Defendant and Mohamed Hashaiqa intended to carry out a suicide terrorist attack. Before the two were arrested, the Defendant removed the above mentioned explosive belt from Mohamed Hashaiqa's person.

10

Prosecution File 733/02

[Stamp] P 5: 302 [continued]

3. Following their arrest, the Defendant and Mohamed Hashaiqa were transferred by the Palestinian Authority to Ramallah, and there released.

4. Following their release, Mohamed Hashaiqa contacted the Defendant and Abdel Karim Ratheb Younis Aweis, and informed them of his willingness to carry out a suicide terrorist attack. The Defendant and Abdel Karim Aweis agreed to prepare Mohamed Hashaiqa and to equip him with everything necessary for the purpose of carrying out a suicide terrorist attack within the State of Israel.

5. Mohamed Hashaiqa told the Defendant and Abdel Karim Aweis that he had been approached by Abu Iyad al-Shama, an intelligence officer of the Palestinian Authority in Ramallah, who proposed to send Mohamed Hashaiqa to carry out a suicide terrorist attack. The Defendant and Abdel Karim Aweis persuaded Mohamed Hashaiqa not to believe an intelligence officer of the Palestinian Authority, out of concern that he would hand him over to Israel. The Defendant and Abdel Karim Aweis persuaded Mohamed Hashaiqa that they would take care of everything necessary so as to send him to carry out a suicide terrorist attack within the State of Israel.

6. The Defendant found a rented apartment in Ramallah, in which he and his accomplices were to prepare the planned suicide terrorist attack.

7. The Defendant took Abdel Karim Aweis and Mohamed Hashaiqa to the said apartment.

8. At the request of Abdel Karim Aweis, the Defendant recruited Sigoud Shuli, a resident of Asira Ash-Shamaliya, to carry out the above mentioned suicide terrorist attack, after the Defendant and Abdel Karim Aweis decided that there would be two suicide terrorists, a man and a woman, who would carry out a double suicide terrorist attack, with the aim of causing the deaths of as many Israeli civilians as possible. Sigoud Shuli also arrived at the said apartment.

9. In the said apartment, at the Defendant's request, photographer Ahmed Ghasi filmed, with a video camera, Mohamed Hashaiqa and Sigoud Shuli, prior to their carrying out the planned suicide terrorist attack.

10. At this stage, the Defendant decided that he did not want Sigoud Shuli to take part in carrying out the suicide terrorist attack, and he informed her family as to their daughter's intentions. As a result, Sigoud Shuli returned to the Nablus area, from which she fled to Jordan.

[Stamp] P 5: 303

22

11. Abdel Karim Aweis contacted the office of the head of General Intelligence in the Palestinian Authority, Tawfik Tirawi, and brought explosives from there. From the said explosives, Abdel Karim Aweis produced an explosive device for the purpose of carrying out the planned suicide terrorist attack.

12. Subsequently, the Defendant and Abdel Karim Aweis prepared the explosive belt.

13. For the purpose of transporting Mohamed Hashaiqa into the State of Israel to carry out the planned suicide terrorist attack, the Defendant enlisted Sanah Mohamed Shehadeh, who he had previously met through his fiancée, Obeidah Jaber (Abu-Ayisha).

14. On March 20, 2002, the Defendant met in Ramallah with the head of the Fatah Tanzim in the region, Marwan Barghouti. The Defendant informed Marwan Barghouti that Abdel Karim Aweis was about to send a suicide terrorist to carry out a suicide terrorist attack within the State of Israel. Marwan Barghouti asked if the Defendant and Abdel Karim Aweis were in need of anything to execute the planned terrorist attack. Although the Defendant responded negatively to that question, Marwan Barghouti gave the Defendant the sum of 600 United States dollars.

15. On March 21, 2002, the Defendant met in Ramallah with Abdel Karim Aweis and with Sanah Shehadeh. Abdel Karim Aweis explained to Sanah Shehadeh that she was to transport the suicide terrorist to Jerusalem, so as to carry out the planned suicide terrorist attack there, since she knew Jerusalem and the roads leading there well.

16. On the same day, the Defendant, Abdel Karim Aweis and Mohamed Hashaiqa visited the offices of Hassin a-Sheikh, Secretary-General of the Fatah in the region. There, Abdel Karim Aweis received from Hassin a-Sheikh, money and two hand grenades, for the purpose of executing the planned terrorist attack.

17. With the said money, the Defendant and his above named accomplices purchased clothes for Mohamed Hashaiqa, in which the latter carried out the suicide terrorist attack, which will be described below.

18. Subsequently, the Defendant and his above named accomplices came to the apartment in Ramallah, at which were the above named Mohamed Hashaiqa, Hajj Khader and Mouzid al-Masri. Abdel Karim Aweis and Mouzid al-Masri prepared Mohamed Hashaiqa to carry out the planned suicide terrorist attack, and together with the Defendant, they dressed him in the above mentioned explosive belt.

[Stamp] P 5: 303 [continued]

19. Subsequently, Abdel Karim Aweis contacted Kahira Sa'id Sa'adi, and asked her to assist in transferring the suicide terrorist to Jerusalem.

20. Some time thereafter, Kahira Sa'adi came to the Defendant and his above named accomplices.

11

Prosecution File 733/02

[Stamp] P 5: 303 [continued]

21. During the afternoon, on March 21, 2002, the Defendant drove from Ramallah to Qalandiya checkpoint in a rented vehicle, taking with him Mohamed Hashaiqa, who wore the above mentioned explosive belt, and Sanah Shehadeh and Kahira Sa'adi, who accompanied the above named suicide terrorist.

22. Subsequently, after parting from Mohamed Hashaiqa with a kiss, the Defendant returned to Ramallah.

23. Kahira Sa'adi and Sanah Shehadeh took Mohamed Hashaiqa, carrying on his person the above mentioned explosive belt, to King George Street in Jerusalem. The two chose the places since it is full of people during the afternoon, and so the two of them decided that it was "appropriate" for carrying out the planned suicide terrorist attack.

24. After Sanah Shehadeh and Kahira Sa'adi left Mohamed Hashaiqa in King George Street, Mohamed Hashaiqa came to the crosswalk adjacent to the Aroma café, near the corner of King George and Hahistadrut Streets.

25. At the said location, at approximately 4:20 p.m. on the said day, Mohamed Hashaiqa set off the explosive device, carried on his person, while in a crowd of people, with the aim of causing the deaths of as many civilians as possible.

26. After the Defendant and his accomplices were informed of execution of the planned suicide terrorist attack, the Defendant passed the video tape, with the recorded "testament" by Mohamed Hashaiqa, to journalist Ahmed Ghasi.

27. Subsequently, the Defendant and Abdel Karim Aweis, contacted Hassin a-Sheikh, Secretary-General of the Fatah in the region, and they formulated an announcement, in which the al-Aqsa Martyrs Brigades, the military wing of the Fatah Tanzim, took responsibility for carrying out the horrific terrorist attack described above. After drawing up the announcement, the Defendant went to the offices of news service ANN, where the Defendant was photographed reading the above mentioned announcement claiming responsibility for the terrorist attack described above.

28. For his participation in carrying out the above mentioned suicide terrorist attack, the Defendant received from the head of the General Intelligence Service of the Palestinian Authority, Tawfik Tirawi, the sum of 1,200 Shekels.

29. By his actions as described above, the above named Defendant, at the said time, intentionally caused the death of the late **Sergeant Major Gadi Shemesh**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described above.

[Stamp] P 5: 304

**Twenty-Sixth Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Tzipora Shemesh**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment. **The late Tzipora Shemesh was, at the time of her death, in the fourth month of pregnancy.**

**Twenty-Seventh Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Yitzhak Cohen**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

12

Prosecution File 733/02

[Stamp] P 5: 304 [continued]

**Twenty-Eighth Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, attempted the cause the deaths of as many civilians as possible.

As a result of the detonation of the explosive device operated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment, 81 civilians were wounded.

**Twenty-Ninth Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense:** Malicious damage to property, an offense pursuant to Section 53c of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, destroyed property or maliciously and unlawfully damaged it, specifically:

The above named Defendant, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, caused extensive damage to buildings and businesses, which were in the vicinity of the said location, and to numerous vehicles, which were in the vicinity of the place described in the twenty-fifth count of the indictment, where the explosive device was detonated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

[Stamp] P 5: 305

**Thirtieth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the end of February – beginning of March 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, in or near Ramallah, conspired with Fawzi Marar, Omar Kaadan, and another person, to carry out a shooting terrorist attack at Israeli vehicles in the Atarot region, so as to cause the deaths of Israeli civilians. The Defendant and his three above named accomplices equipped themselves with weapons, and left in their vehicle from Ramallah in the direction of Atarot, so as to carry out the planned terrorist attack there. Due to a breakdown in the vehicle of the Defendant and his accomplices, the planned terrorist attack was not executed.


**Thirty-First Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in March 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.

13

Prosecution File 733/02

[Stamp] P 5: 305 [continued]

**Thirty-Second Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.

**Thirty-Third Count:**

**Nature of the Offense:** Placing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, threw or placed a bomb, hand grenade or explosive or incendiary object, with the intention of causing death or injury to a some person or damage to some property, specifically:

The above named Defendant, at the said time, in the Jenin Refugee Camp or its vicinity, together with Abdel Karim Aweis, Nidal al-Badawi, Mahmoud Tualba, Rabia Abu Rub, placed 5 explosive devices of varying sizes at the entrance to the Jenin Refugee Camp, with the aim of damaging Israel Defense Forces tanks and preventing Israel Defense Forces units from entering Jenin.

**Thirty-Fourth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 5: 306

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, on the road leading to Dotan, adjacent to the village of Arraba, together with Mahmoud Tualba, placed an explosive device with the aim of detonating it, to cause the deaths of passengers in Israeli vehicles passing on the said road. After the Defendant and his above named accomplice noticed an Israel Defense Forces jeep, the two of them activated the above mentioned explosive device with the aim of causing the deaths of Israel Defense Forces soldiers traveling in the said jeep. The above mentioned explosive device exploded, and it was only by a miracle that no damage was caused.

**Thirty-Fifth Count:**

**Nature of the Offense:** Performing service for an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, at the end of May 2002 or thereabouts, performed some work or carried out some service for which is [sic, last two words unnecessary] an unlawful association, specifically:

The above named Defendant, at the said time, when he was in Nablus, spoke by telephone with Darwish Dohadar, an operative in the Fatah Tanzim in Ramallah. Darwish Dohadar informed the Defendant that he, together with Mouzid al-Masri Wahamdallah, carried out a shooting terrorist attack near Ramallah, and as a result of that terrorist attack, an Israeli civilian was killed. Darwish Dohadar asked that the Defendant speak with Hassin a-Sheikh, Secretary-General of the Fatah organization in the region, and inform the latter of the above mentioned terrorist attack, so that Hassin a-Sheikh should take responsibility for the terrorist attack and transfer money to the perpetrators of the said terrorist attack.

The Defendant called Hassin a-Sheikh, and informed the latter of the above mentioned terrorist attack. Subsequently, the Defendant contacted Darwish Dohadar, informed the latter of the conversation with Hassin a-Sheikh, and instructed him to go to Hassin a-Sheikh to give him the details of the terrorist attack and the names of its perpetrators.

14

Prosecution File 733/02

[Stamp] P 5: 306 [continued]

**Thirty-Sixth Count:**

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, in the second half of May 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, at the said time, met in Jenin with Mohamed Abu Tabih, who introduced himself as an operative of the Palestinian Islamic Jihad, and asked to join the Defendant in his activities against Israeli targets.

The Defendant met in Jenin with his friend, Sheikh Bassam, who is the Imam at the mosque in the Jenin Refugee Camp, and made inquiries about the above named Mohamed Abu Tabih. Sheikh Bassam confirmed that Mohamed Abu Tabih was an operative in the Palestinian Islamic Jihad. As a result, the Defendant again met with Mohamed Abu Tabih. Mohamed Abu Tabih informed the Defendant that he has a young man who was prepared to carry out a suicide terrorist attack, and that he had in his possession, and in the possession of his accomplices, explosives and explosive devices. Mohamed Abu Tabih asked to consult with the Defendant as to how to execute a suicide terrorist attack within the State of Israel.

The Defendant promised Mohamed Abu Tabih to look into the matter.

Similarly, during that conversation, the Defendant informed Mohamed Abu Tabih that there was a shortage of explosives in Nablus. Mohamed Abu Tabih said that this was no problem, and he could supply the Defendant with whatever quantities of explosives the Defendant asked for. At the end of the conversation, the Defendant and Mohamed Abu Tabih exchanged cell phone numbers.

Subsequently, the Defendant met with Mohamed Abu Rub, who agreed to transfer explosives from Jenin for the Defendant, from Mohamed Abu Tabih, to the Defendant in Nablus.

[Stamp] P 5: 307