**Twentieth Count**: Detailed Incident File 1359/02 Yiftach

**Nature of the Offense**: Malicious damage to property, an offense pursuant to Section 53c of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, both within and outside the Region, on January 25, 2002, or thereabouts, destroyed property or maliciously and unlawfully damaged it, specifically:

The above named Defendant, at the place stated in the previous count of the indictment, by his actions as described in the previous count of the indictment, caused extensive damage to houses, shops and businesses, which were in the vicinity of the place where the explosive device was detonated by █████████████, as described in the previous count of the indictment.


**Twenty-First Count**:

**Nature of the Offense**: Trading in war materiel, an offense pursuant to Section 2 of the Prohibition Against Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the Offense**: The above named Defendant, in the Region, at the beginning of 2002 or thereabouts, traded or handled in some other manner war materiel, without a permit signed by or on behalf of the Region commander, specifically:

The above named Defendant, at the said time, in Ramallah or its vicinity, met with █████████ ████ who requested that the Defendant look after an explosive belt, weighing about 18 kilograms, at his home. The Defendant agreed, and received the said explosive belt from the above named ███████████.

A day later, the Defendant met with the head of the Fatah Tanzim in the region, █████████ ████████ ████████████ asked the Defendant if he knew of people who were prepared to supply explosive belts. The Defendant informed ██████████████ that he had in his possession the above mentioned explosive belt, belonging to ███████████. At ████████ request, the Defendant – during that conversation – called ████████████, and received the latter's consent to give the above mentioned explosive belt to ██████████. ██████████ informed the Defendant that he would send his bodyguard and assistant, ██████████ ████████, known as ██████████ to the Defendant, to receive the above mentioned explosive belt.

[Stamp] P 5: 300

A day later, the Defendant met in Ramallah with the above named ████████ and gave him the said explosive belt.

**Twenty-Second Count: Detailed Incident File 412/02 Binyamin**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, on February 27, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  The above named Defendant, at the end of January – beginning of February 2002, or thereabouts, met in Nablus with ████████████ (hereinafter: ██████), the cousin of ██████████████, who carried out the suicide terrorist attack in Neve Shaanan Street in Tel Aviv on January 25, 2002, with the assistance of the Defendant. ██████ expressed to the Defendant her willingness to carry out a suicide terrorist attack.

2.  In February 2002, in Ramallah, the Defendant again met with ██████, who again asked that the Defendant send her to carry out a suicide terrorist attack, so as to cause the deaths of as many Israeli civilians as possible.

3.  The contacted █████████████████, ████████████████, and ████████, and reported to them that there was a young woman who wished to carry out a suicide terrorist attack. ████████████████ informed the Defendant that he agreed to send the said young woman to carry out a suicide terrorist attack, and that he would prepared an explosive device for this purpose. ████████████████ informed the Defendant that he was to photograph the young woman before she left to carry out the planned suicide terrorist attack.

4.  The Defendant brought ██████ to the apartment of his brother, ████████████████, located in Beituniya. The Defendant brought to that apartment a photographer named ████████████████, and together with the latter filmed ██████ in advance of her carrying out the planned suicide terrorist attack. During the filming, ██████ read out a testament.

8

Prosecution File 733/02

[Stamp] P 5: 300 [continued]

5.  The next day, January 27, 2002, ████████████████████████ and ████████████████ came to the apartment, bringing with them a belt, in which was an explosive device, for the purpose of carrying out the planned suicide terrorist attack.

6.  Since ██████ refused to have a man dress her with the explosive belt, ███████████████ ██████, at the request of the Defendant, who was married to her older sister, dressed ██████ with the above mentioned explosive belt. When ████████████ was putting the explosive belt on ████████ body, she noticed that one of the shoulder belts of the explosive belt was loose, and she tightened it using a pin.

7.  The Defendant and his above named accomplices planed for ██████ to come to the Israel Police station in Jaffa, and there detonate the explosive device carried on her body, thus causing the deaths of as many Israeli civilians as possible.

8.  Subsequently the Defendant's accomplices left the above mentioned apartment, and the Defendant remained there till the evening with ██████ and ████████████.

9.  ████████████ enlisted ██████████████ and ████████████████████ for the purpose of transporting ██████ into the State of Israel, so as to carry out the planned suicide terrorist attack there.

10. In the evening hours of that day, the Defendant came, together with ████████████ and ██████, carrying the above mentioned explosive device on her body, to the Abu Riya Hospital in Ramallah. Thee they met with ████████████████████████████████ ██████ and ██████████████.

11. From there the above named accomplices of the Defendant transferred ██████ to the A-Ram checkpoint. At A-Ram checkpoint, ██████ got into the blue Subaru, license plate number 7797787, belonging to ████████████ and ████████████████████ who came there at the request of ████████████, and were supposed to transport ██████ to the Israel Police station in Jaffa so that ██████ should set off the explosive device, mounted on her body, there, thus causing the deaths of as many Israeli civilians as possible.

[Stamp] P 5: 301

12. On January 27, 2002, at around 10:27 p.m., at the Maccabim Israel Defense Forces and Israel Police checkpoint on Road 443, the vehicle in which ███████████ and ███████ was stopped for inspection by Israel Defense Forces soldiers and Israel Police officers. When ███████ realized that she would not be able to get past the above mentioned Maccabim checkpoint, and get into the territory of the State of Israel to carry out the suicide terrorist attack as planned, she set off the explosive device carried on her person, with the intention of causing the deaths of Israel Police officers and Israel Defense Forces soldiers who were at the above mentioned checkpoint.

13. As a result of detonation of the explosive device, which ██████ was carrying on her person, an Israel Police officer, ███████████, was seriously wounded in the abdomen, with two more policemen, ██████████ and ██████████, lightly wounded.

14. ███████ was killed on the spot as a result of detonation of the above mentioned explosive device.

**Twenty-Third Count:**

**Nature of the Offense:** Possession of a firearm, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the beginning of March 2002 through the middle of April 2002 or thereabouts, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, was in possession of an M-16 assault rifle, which he has received from ████████████ this being without a permit granted by or on behalf of the military commander.

The Defendant also fired the said M-16 assault rifle during the funeral of the above named ████████████ The Defendant concealed the above mentioned M-16 assault rifle when he fled from Ramallah, following the entry of Israel Defense Forces units into the town.

9

Prosecution File 733/02

[Stamp] P 5: 301 [continued]

**Twenty-Fourth Count**: Detailed Incident File 580/02 Shafet

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 10, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  The above named Defendant, at the beginning of March 2002, in Ramallah or its vicinity, met with ████████████████████, ████████████ informed the Defendant that there was a person who wished to carry out a suicide terrorist attack within the State of Israel, with the aim of causing the deaths of as many people as possible.

2.  ████████████ asked the Defendant to assist with filming the suicide terrorist prior to the latter's departure to carry out the planned suicide terrorist attack. The Defendant agreed to film the suicide terrorist at the home of his brother, ████████████, located in Beituniya.

3.  On March 9, 2002, the Defendant and ████████████ came to the said apartment in Beituniya. The suicide terrorist, ████████████████, also came to the said apartment, as did the photographer, ████████████ who had been ordered by the Defendant, and another journalist. During the filming of the suicide terrorist, ████████████ brother of ████████████ was also present.

4.  Subsequently ████████████ traveled, together with ████████████ to the apartment of ████████████ in the al-Amari Refugee Camp. On their way to that location, a helicopter fired a missile at the vehicle. ████████████ managed to flee from the above mentioned vehicle, while ████████ was killed as a result of the above mentioned rocket strike.

5.  In line with the plant drawn up previously between the Defendant and his accomplices, ████████████ received from ████████████, known as ████████ a Kalashnikov assault rifle, ammunition and two hand grenades, and on March 14, 2002, left Ramallah to carry out the planned suicide terrorist attack, with the aim of causing the deaths of as many people as possible.

[Stamp] P 5: 302

6.   On March 10, 2002, at around 2:30 p.m., the above named suicide terrorist ███████ █████) attempted to infiltrate into the State of Israel, while armed with a Kalashnikov assault rifle, magazines full of bullets and two hand grenades, this being with the aim of carrying out the planned suicide terrorist attack and intentionally causing the deaths of as many civilians as possible. ████████████ was brought to the A-Ram checkpoint by ██████████████, who was recruited for this mission by the head of the Palestinian Authority's General Intelligence – ██████████

7.   At the said place and time, at the A-Ram checkpoint or thereabouts, the above named suicide terrorist, ████████████, was killed by the Israeli security forces when attempting to infiltrate into the State of Israel as a stated above.


**Twenty-Fifth Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1.   The above named Defendant, in February 2002, in or near Nablus, met with ████████ ███ who asked the Defendant to transfer a person with "belongings" to Tulqarm. The Defendant agreed to do so, and then ████████████ introduced the Defendant to Mohamed Hashaiqa.

2.   The Defendant traveled together with Mohamed Hashaiqa from Nablus to Tulqarm. During the trip, the Defendant understood that Mohamed Hashaiqa was carrying on his person a belt with an explosive device, with the aim of carrying out a suicide terrorist attack. The Defendant and Mohamed Hashaiqa were unable to enter Tulqarm, which was surrounded by Israel Defense Forces troops, and were also arrested by the Preventive Security Service of the Palestinian Authority, after they were informed by Israeli sources that the Defendant and Mohamed Hashaiqa intended to carry out a suicide terrorist attack. Before the two were arrested, the Defendant removed the above mentioned explosive belt from Mohamed Hashaiqa's person.

10

Prosecution File 733/02

[Stamp] P 5: 302 [continued]

3.  Following their arrest, the Defendant and Mohamed Hashaiqa were transferred by the Palestinian Authority to Ramallah, and there released.

4.  Following their release, Mohamed Hashaiqa contacted the Defendant and ███████ ███████████████████ and informed them of his willingness to carry out a suicide terrorist attack. The Defendant and ███████████████ agreed to prepare Mohamed Hashaiqa and to equip him with everything necessary for the purpose of carrying out a suicide terrorist attack within the State of Israel.

5.  Mohamed Hashaiqa told the Defendant and ███████████████ that he had been approached by ███████████████ an intelligence officer of the Palestinian Authority in Ramallah, who proposed to send Mohamed Hashaiqa to carry out a suicide terrorist attack. The Defendant and ███████████████ persuaded Mohamed Hashaiqa not to believe an intelligence officer of the Palestinian Authority, out of concern that he would hand him over to Israel. The Defendant and ███████████████ persuaded Mohamed Hashaiqa that they would take care of everything necessary so as to send him to carry out a suicide terrorist attack within the State of Israel.

6.  The Defendant found a rented apartment in Ramallah, in which he and his accomplices were to prepare the planned suicide terrorist attack.

7.  The Defendant took███████████████ and Mohamed Hashaiqa to the said apartment.

8.  At the request of ███████████████, the Defendant recruited ███████████, a resident of Asira Ash-Shamaliya, to carry out the above mentioned suicide terrorist attack, after the Defendant and ███████████████ decided that there would be two suicide terrorists, a man and a woman, who would carry out a double suicide terrorist attack, with the aim of causing the deaths of as many Israeli civilians as possible. ███████████ also arrived at the said apartment.

9.  In the said apartment, at the Defendant's request, photographer ███████████filmed, with a video camera, Mohamed Hashaiqa and ███████████, prior to their carrying out the planned suicide terrorist attack.

10. At this stage, the Defendant decided that he did not want ███████████ to take part in carrying out the suicide terrorist attack, and he informed her family as to their daughter's intentions. As a result, ███████████ returned to the Nablus area, from which she fled to Jordan.

[Stamp] P 5: 303

22

11. ▮▮▮▮▮▮▮▮▮ contacted the office of the head of General Intelligence in the Palestinian Authority, ▮▮▮▮▮▮▮ and brought explosives from there. From the said explosives, ▮▮▮▮▮▮▮ produced an explosive device for the purpose of carrying out the planned suicide terrorist attack.

12. Subsequently, the Defendant and ▮▮▮▮▮▮▮▮ prepared the explosive belt.

13. For the purpose of transporting Mohamed Hashaiqa into the State of Israel to carry out the planned suicide terrorist attack, the Defendant enlisted ▮▮▮▮▮▮▮▮▮ who he had previously met through his fiancée, ▮▮▮▮▮▮▮▮▮.

14. On March 20, 2002, the Defendant met in Ramallah with the head of the Fatah Tanzim in the region, ▮▮▮▮▮▮▮▮ The Defendant informed ▮▮▮▮▮▮▮▮▮ that ▮▮▮▮ ▮▮▮▮▮▮ was about to send a suicide terrorist to carry out a suicide terrorist attack within the State of Israel. ▮▮▮▮▮▮▮▮ asked if the Defendant and ▮▮▮▮ ▮▮▮ were in need of anything to execute the planned terrorist attack. Although the Defendant responded negatively to that question, ▮▮▮▮▮▮▮▮ gave the Defendant the sum of 600 United States dollars.

15. On March 21, 2002, the Defendant met in Ramallah with ▮▮▮▮▮▮▮▮ and with ▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮ explained to ▮▮▮▮▮▮ that she was to transport the suicide terrorist to Jerusalem, so as to carry out the planned suicide terrorist attack there, since she knew Jerusalem and the roads leading there well.

16. On the same day, the Defendant, ▮▮▮▮▮▮▮▮ and Mohamed Hashaiqa visited the offices of ▮▮▮▮▮▮▮, Secretary-General of the Fatah in the region. There, ▮▮▮ ▮▮▮▮▮▮▮ received from ▮▮▮▮▮▮▮, money and two hand grenades, for the purpose of executing the planned terrorist attack.

17. With the said money, the Defendant and his above named accomplices purchased clothes for Mohamed Hashaiqa, in which the latter carried out the suicide terrorist attack, which will be described below.

18. Subsequently, the Defendant and his above named accomplices came to the apartment in Ramallah, at which were the above named Mohamed Hashaiqa, ▮▮▮▮▮ and ▮▮▮▮ ▮▮▮▮▮. ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ prepared Mohamed Hashaiqa to carry out the planned suicide terrorist attack, and together with the Defendant, they dressed him in the above mentioned explosive belt.

[Stamp] P 5: 303 [continued]

23

19. Subsequently, ▮▮▮▮▮▮▮ contacted ▮▮▮▮▮▮▮, and asked her to assist in transferring the suicide terrorist to Jerusalem.

20. Some time thereafter, ▮▮▮▮▮▮ came to the Defendant and his above named accomplices.

11

Prosecution File 733/02

[Stamp] P 5: 303 [continued]

24

21. During the afternoon, on March 21, 2002, the Defendant drove from Ramallah to Qalandiya checkpoint in a rented vehicle, taking with him Mohamed Hashaiqa, who wore the above mentioned explosive belt, and ███████████ and ███████████, who accompanied the above named suicide terrorist.

22. Subsequently, after parting from Mohamed Hashaiqa with a kiss, the Defendant returned to Ramallah.

23. ███████████ and ███████████ took Mohamed Hashaiqa, carrying on his person the above mentioned explosive belt, to King George Street in Jerusalem. The two chose the places since it is full of people during the afternoon, and so the two of them decided that it was "appropriate" for carrying out the planned suicide terrorist attack.

24. After ███████████ and ███████████ left Mohamed Hashaiqa in King George Street, Mohamed Hashaiqa came to the crosswalk adjacent to the Aroma café, near the corner of King George and Hahistadrut Streets.

25. At the said location, at approximately 4:20 p.m. on the said day, Mohamed Hashaiqa set off the explosive device, carried on his person, while in a crowd of people, with the aim of causing the deaths of as many civilians as possible.

26. After the Defendant and his accomplices were informed of execution of the planned suicide terrorist attack, the Defendant passed the video tape, with the recorded "testament" by Mohamed Hashaiqa, to journalist ███████████.

27. Subsequently, the Defendant and ███████████, contacted ███████████, Secretary-General of the Fatah in the region, and they formulated an announcement, in which the al-Aqsa Martyrs Brigades, the military wing of the Fatah Tanzim, took responsibility for carrying out the horrific terrorist attack described above. After drawing up the announcement, the Defendant went to the offices of news service ANN, where the Defendant was photographed reading the above mentioned announcement claiming responsibility for the terrorist attack described above.

28. For his participation in carrying out the above mentioned suicide terrorist attack, the Defendant received from the head of the General Intelligence Service of the Palestinian Authority, ███████████, the sum of 1,200 Shekels.

29. By his actions as described above, the above named Defendant, at the said time, intentionally caused the death of the late **Sergeant Major Gadi Shemesh**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described above.

[Stamp] P 5: 304

25

**Twenty-Sixth Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Tzipora Shemesh**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment. **The late Tzipora Shemesh was, at the time of her death, in the fourth month of pregnancy.**


**Twenty-Seventh Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Yitzhak Cohen**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

12

Prosecution File 733/02

[Stamp] P 5: 304 [continued]

26

**Twenty-Eighth Count**: **Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, attempted the cause the deaths of as many civilians as possible.

As a result of the detonation of the explosive device operated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment, 81 civilians were wounded.


**Twenty-Ninth Count**: **Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Malicious damage to property, an offense pursuant to Section 53c of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, destroyed property or maliciously and unlawfully damaged it, specifically:

The above named Defendant, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, caused extensive damage to buildings and businesses, which were in the vicinity of the said location, and to numerous vehicles, which were in the vicinity of the place described in the twenty-fifth count of the indictment, where the explosive device was detonated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

[Stamp] P 5: 305

27

**Thirtieth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the end of February – beginning of March 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, in or near Ramallah, conspired with █████████████, and another person, to carry out a shooting terrorist attack at Israeli vehicles in the Atarot region, so as to cause the deaths of Israeli civilians. The Defendant and his three above named accomplices equipped themselves with weapons, and left in their vehicle from Ramallah in the direction of Atarot, so as to carry out the planned terrorist attack there. Due to a breakdown in the vehicle of the Defendant and his accomplices, the planned terrorist attack was not executed.


**Thirty-First Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in March 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.

13

Prosecution File 733/02

[Stamp] P 5: 305 [continued]