**Thirty-Second Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.


**Thirty-Third Count:**

**Nature of the Offense:** Placing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, threw or placed a bomb, hand grenade or explosive or incendiary object, with the intention of causing death or injury to a some person or damage to some property, specifically:

The above named Defendant, at the said time, in the Jenin Refugee Camp or its vicinity, together with ███████████████████████████████ placed 5 explosive devices of varying sizes at the entrance to the Jenin Refugee Camp, with the aim of damaging Israel Defense Forces tanks and preventing Israel Defense Forces units from entering Jenin.


**Thirty-Fourth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 5: 306

**Details of the Offense**: The above named Defendant, in the Region, in April 2002 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, on the road leading to Dotan, adjacent to the village of Arraba, together with ██████████ placed an explosive device with the aim of detonating it, to cause the deaths of passengers in Israeli vehicles passing on the said road. After the Defendant and his above named accomplice noticed an Israel Defense Forces jeep, the two of them activated the above mentioned explosive device with the aim of causing the deaths of Israel Defense Forces soldiers traveling in the said jeep. The above mentioned explosive device exploded, and it was only by a miracle that no damage was caused.

**Thirty-Fifth Count:**

**Nature of the Offense:** Performing service for an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, at the end of May 2002 or thereabouts, performed some work or carried out some service for which is [sic, last two words unnecessary] an unlawful association, specifically:

The above named Defendant, at the said time, when he was in Nablus, spoke by telephone with ██████████ an operative in the Fatah Tanzim in Ramallah. ██████████ informed the Defendant that he, together with ██████████████████, carried out a shooting terrorist attack near Ramallah, and as a result of that terrorist attack, an Israeli civilian was killed. ██████████ asked that the Defendant speak with ██████████ Secretary-General of the Fatah organization in the region, and inform the latter of the above mentioned terrorist attack, so that ██████████ should take responsibility for the terrorist attack and transfer money to the perpetrators of the said terrorist attack.

The Defendant called ██████████, and informed the latter of the above mentioned terrorist attack. Subsequently, the Defendant contacted ██████████ informed the latter of the conversation with ██████████ and instructed him to go to ██████████ to give him the details of the terrorist attack and the names of its perpetrators.

14

Prosecution File 733/02

[Stamp] P 5: 306 [continued]

**Thirty-Sixth Count:**

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, in the second half of May 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, at the said time, met in Jenin with ███████████, who introduced himself as an operative of the Palestinian Islamic Jihad, and asked to join the Defendant in his activities against Israeli targets.

The Defendant met in Jenin with his friend, █████████, who is the Imam at the mosque in the Jenin Refugee Camp, and made inquiries about the above named ████████ ██████████ confirmed that ████████████ was an operative in the Palestinian Islamic Jihad. As a result, the Defendant again met with ███████████. ██████████ informed the Defendant that he has a young man who was prepared to carry out a suicide terrorist attack, and that he had in his possession, and in the possession of his accomplices, explosives and explosive devices. ████████████ asked to consult with the Defendant as to how to execute a suicide terrorist attack within the State of Israel.

The Defendant promised ████████████ to look into the matter.

Similarly, during that conversation, the Defendant informed ████████████ that there was a shortage of explosives in Nablus. ████████████ said that this was no problem, and he could supply the Defendant with whatever quantities of explosives the Defendant asked for. At the end of the conversation, the Defendant and ████████████ exchanged cell phone numbers.

Subsequently, the Defendant met with ████████████ who agreed to transfer explosives from Jenin for the Defendant, from ████████████, to the Defendant in Nablus.

[Stamp] P 5: 307

31

The said plans did not come to fruition because the connection between the Defendant and ████████████████ was cut off after the Defendant returned to Nablus.


**Thirty-Seventh Count:**

**Nature of the Offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968, and Section 67a(d) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, in May 2002 or thereabouts, conspired with another person to compel a person by force or by threats, or to entice him by means of deceit, to leave the place he was in , so as to extort or threaten, specifically:

The above named Defendant, at the said time, met in Ramallah with ████████████, Secretary-General of the Fatah organization in the region. ████████████ asked the Defendant to set up a cell of 3-4 members, which would carry out shooting terrorist attacks against Israeli targets, as well as kidnapping Israel Defense Forces soldiers for the purpose of bargaining for the release of Palestinian prisoners held in prison in Israel. ████████████ promised to fund the Defendant's activities, once the Chairman of the Palestinian Authority, Yassir Arafat, orders the transfer of the funds for the above mentioned activity.

As a result of the above mentioned request, the Defendant met in Nablus with ████████████ ████████████ and spoke with him about kidnapping Israel Defense Forces soldiers. He asked whether the latter knew of a method for kidnapping Israel Defense Forces soldiers. ████████████ informed the Defendant that he knew two Jews, for whom he worked. ████████████ suggested to the Defendant to induce the above mentioned Jews to come to the checkpoint near Taibe, and to kidnap them from there, with the aid of residents of Tira, whom ██████ knew.

Ultimately the said plan was not executed, since ████████████ did not transfer the promised money to the Defendant, and due to the entry of Israel Defense Forces units into Nablus.

15

Prosecution File 733/02

[Stamp] P 5: 307 [continued]

**Thirty-Eighth Count:**

**Nature of the Offense:** Performing service for an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, in May 2002 or thereabouts, performed some work or carried out some service for which is [sic, last two words unnecessary] an unlawful association, specifically:

The above named Defendant, at the said time, spoke with ▮▮▮▮▮▮, the brother of ▮▮▮▮▮▮, known as ▮▮▮▮▮▮ who had been killed. ▮▮▮▮▮▮ informed the Defendant that he had taken his brother's place, and commanded a cell of terrorists numbering 18 members. ▮▮ ▮▮▮▮ asked that the Defendant assist him in his activities. ▮▮▮▮▮▮ also informed the Defendant that he had a young man who was prepared to carry out a suicide terrorist attack within the State of Israel.

As a result of the said request, the Defendant gave ▮▮▮▮▮▮ the telephone number of the Secretary-General of Fatah in the region, ▮▮▮▮▮▮ this being after the Defendant himself spoke with the said ▮▮▮▮▮▮ and asked the latter to assist ▮▮▮▮▮▮ with whatever he asked.

**Thirty-Ninth Count:**

**Nature of the Offense:** Possession of an explosive object, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the end of May 2001 and up to the date of his arrest, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, at the Alaa a-Din wedding hall in Nablus, or its vicinity, kept an explosive belt [and] two explosive devices in metal containers, and 5 mortar rounds of various calibers, this being without a permit granted by or on behalf of the military commander. The Defendant received the above mentioned items from ▮▮▮▮▮▮

[Stamp] P 5: 308

33

**Fortieth Count:**

**Nature of the Offense:** Manufacture of a bomb, an offense pursuant to Section 53(a)(3) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, during the period stated in the previous count of the indictment, manufactured a firearm, ammunition, bomb, explosive or incendiary device, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, at the Alaa a-Din wedding hall in Nablus or in its vicinity, produced operating mechanisms for the explosive devices described in the previous count of the indictment, this being without a permit granted by or on behalf of the military commander.

The above mentioned hall was also visited by an operative of the Palestinian Islamic Jihad, █████, █████, known as █████ who asked to work together with the Defendant in production of explosive devices. The Defendant agreed to cooperate with the above named █████ in the manufacture of the explosive devices at the said locations, which he had become familiar with through his fiancée – █████.

16

Prosecution File 733/02

[Stamp] P 5: 308 [continued]

34

**Forty-First Count:**

**Nature of the Offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968, and Section 53(a)(3) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** the above named Defendant, in the Region, at the end of May 2002 or thereabouts, conspired with another person to produce a firearm, ammunition, bomb, explosive or incendiary device, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, conspired with █████ ██████████████████, to set up a laboratory for the manufacture of explosives in the area of Tira within the State of Israel.


**Forty-Second Count:**

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, at the end of May – beginning of June 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, met with ████████████, who informed the Defendant that he had two terrorists who were prepared to carry out a suicide terrorist attack. ████████████ asked that the Defendant photograph the above mentioned suicide terrorists prior to their carrying out the planned suicide terrorist attack, and that he prepare them and equip them with everything necessary for carrying out a suicide terrorist attack. The Defendant agreed to the said proposal.

[Stamp] P 5: 309

35

About three days prior to his arrest, the Defendant met with ███████ at the Alaa a-Din wedding hall in Nablus. ████████ brought with him 8 kilograms of explosive, but the Defendant claimed that the explosives were not sufficient. ████████ provided to bring, as soon as possible, a further amount of explosives.

The Defendant did not manage to assemble the explosive devices for the two above mentioned suicide terrorists, due to the entry of Israel Defense Forces units into Nablus and due to the Defendant's arrest.


**Forty-Third Count**:

**Nature of the Offense**: Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense**: The above named Defendant, in the Region, during May – early June 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:



The above named Defendant, during the said period, was in telephone contact with a young woman named ████, a student at Haifa University, whose details he received from al-Aqsa Martyrs Brigades operative ██████████ The Defendant would speak with ████ about the situation in the region. The above named ████ knew that the Defendant was a senior military operative in the al-Aqsa Martyrs Brigades, and that he was wanted by the Israeli security forces. At the beginning of June 2002, the Defendant asked ████ to come to Jenin and meet with him, and she agreed to do so. At that time, the Defendant was approached by ██████████ known as ██████████ who asked if the Defendant knew residents of the State of Israel who were prepared to assist in carrying out terrorist attacks within the State of Israel. The Defendant told ██████████ about the above named ████ and informed him that it was his intention to meet

[Stamp] P 5: 309 [continued]

36

with her in Jenin and to asked her to find a place in the State of Israel where it was possible to produce explosives, to find places suitable for carrying out mass terrorist attacks, and also to recruit her for the purpose of assisting suicide terrorists in transferring them from the region to within the territory of the State of Israel.

The Defendant's above mentioned plan was not carried out, due to his arrest by the Israeli security forces on June 3, 2002.

17

Prosecution File 733/02

[Stamp] P 5: 309 [continued]

37

**Prosecution Witnesses**

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Investigations Bureau, Samaria. [Took the Defendant's statements of June 3, 2002, and June 18, 2002]
2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Investigations Bureau, Samaria. [Took the Defendant's statements of June 10, 2002, and June 27, 2002]
3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Investigations Bureau, Samaria. [Submitting report on photographic identity lineup and photo board]
4. Transcript of Defendant's remand hearing dated July 17, 2002.
5. Person known as ▮▮▮▮▮' Israel Security Agency. [Submitting report of transportation and indication + photographs]
6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Under arrest]
7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Under arrest]
8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Under arrest]
9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Under arrest] (Prosecution File ▮▮▮▮
10. ▮▮▮▮▮▮▮▮▮▮▮. [Under arrest] (Prosecution File ▮▮▮
11. ▮▮▮▮▮▮▮▮. [Under arrest] (Prosecution File
12. ▮▮▮▮▮▮▮▮▮▮▮ [Under arrest]
13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Under arrest] (Prosecution
14. ▮▮▮▮▮▮▮▮▮▮▮▮▮ [Under arrest] (Prosecution File ▮▮▮
15. ▮▮▮▮▮▮▮▮▮▮▮ [Under arrest]
16. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Under arrest]
17. ▮▮▮▮▮▮▮▮▮▮ [Under arrest]
18. ▮▮▮▮▮▮▮▮▮▮ [Under arrest]

**Detailed Incident File 1359/02 Yiftach**

19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Yiftach Station. [Submitting action report + action report/memorandum]
20. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Special Investigations Team, Yiftach. [Submitting Memorandum]
21. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Yiftach Station. [Submitting report on visit to the scene]

[Stamp] P 5: 310

38

22. ████████████████████████████████████, Bomb Laboratory Tel Aviv [Submitting Form Accompanying Exhibits]

23. ████████████████████████████████ Identification – Yiftach Station. [Submitting photo boards]

24. █████████████████████████████ Identification – Yiftach Station. [Submitting photo boards]

25. ██████████████████████ Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

26. ███████████████████████████ Latent Fingerprint Development Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting examination report]

27. ██████████ Fingerprint Identification Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting expert opinion] (To be summoned only upon the express request of the Defense)

28. ██████████████████████████ (Details held by the Prosecution) [Eyewitness]

29. Yitzhak Shifra, Identity No. 309605866. (Details held by the Prosecution) [Wounded in the terrorist attack]

30. Haim Gueta, Identity No. 054918941. (Details held by the Prosecution) [Wounded in the terrorist attack]

31. Osnat Gueta, Identity No. 022130140. (Details held by the Prosecution) [Wounded in the terrorist attack]

32. ████████████████████ (Details held by the Prosecution) [Son wounded in the terrorist attack]

33. Farhan Albi, Identity No. 035137009. (Details held by the Prosecution) [Sounded in the terrorist attack]

34. Ron Meir, Identity No. 014502983. (Details held by the Prosecution) [Sounded in the terrorist attack]

35. ████████████████████ (Details held by the Prosecution) [Eyewitness, treated the wounded]

36. ████████████████████ (Details held by the Prosecution) [Eyewitness, treated the wounded]

37. ████████████████████ (Details held by the Prosecution) [Eyewitness, treated the wounded]

` [Stamp] P 5: 310 [continued]

38.  Inna Rockawitzin, Identity No. 321153611. (Details held by the Prosecution) [wounded in the terrorist attack]

39.  Gela Chachiashvili, Identity No. 312782550. (Details held by the Prosecution) [wounded in the terrorist attack]

40.  Aharon Yisraeli, Identity No. 027789106. (Details held by the Prosecution) [wounded in the terrorist attack]

18

Prosecution File 733/02

[Stamp] P 5: 310 [continued]

41.   Yitzhak Kazarshvili, Identity No. 011378510. (Details held by the Prosecution) [Wounded in the terrorist attack]

42.   Larisa Gavrilov, Identity No. 303801419. (Details held by the Prosecution) [Wounded in the terrorist attack]

43.   ██████████████████████████ (Details held by the Prosecution) [His restaurant was destroyed in the terrorist attack]

44.   ██████████████████████████ (Details held by the Prosecution) [His business was destroyed in the terrorist attack]

45.   ████████████ National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Defense)

46.   List of the wounded from the terrorist attack.

47.   Medical documents.

**Detailed Incident File 412/02 Binyamin**

48.   █████████████████████Binyamin Station. [Testimony]

49.   ████████████████████ Binyamin Station. [Testimony]

50.   Mordechi Tal, Identity No. 29501590, Binyamin Station. [Seriously wounded in the terrorist attack]

51.   ████████████████ (Details held by the Prosecution) [Reserves soldier, was at the checkpoint at the time of the terrorist attack – saw the suicide terrorist]

52.   ███████████████████. (Details held by the Prosecution) [Commander of the Reserves force at the checkpoint at the time of the terrorist attack, spoke with the suicide terrorist before the explosion]

53.   ██████████████████ (Details held by the Prosecution) [Reserves soldier at the checkpoint at the time of the terrorist attack – inspected the vehicle in which the suicide terrorist traveled]

54.   ████████████████████ (Details held by the Prosecution) [Arrived on the scene immediately following the terrorist attack]

55.   ███████████████████████████ Modiin Station. [Submitting an action report]

56.   █████████████████████ Modiin Station. [Submitting an action report]

57.   ██████████ Police National Headquarters, Patrol and Security Branch, Bomb Laboratories Division, Tel Aviv Extension Branch. [Submitting Initial Expert Opinion + Expert Opinion from File 0821-23/2002/ZB + Photographs + Form Accompanying Exhibits] (To be summoned only at the express request of the Defense)

[Stamp] P 5: 311

58. ███████████████ Analysis Laboratory, Police National Headquarters – Jerusalem. [Submitting an expert opinion from File 54484/02-33/ZB] (To be summoned only at the express request of the Defense)

**Detailed Incident File 580/02 Shafet**

59. ████████████████ Border Guard Sivan, Company 42. (Details held by the Prosecution) [Testimony]
60. ████████████████████ Border Guard Lavi. (Details held by the Prosecution) [testimony]
61. ██████████████████████ Border Guard Lavi. (Details held by the Prosecution) [testimony]
62. ██████████████ Border Guard Lavi. (Details held by the Prosecution) [testimony]
63. ████████████████████ Special Duties Department, Central Unit – Jerusalem. [Submitting an Action/Seizure and Marking Report + Form Accompanying Exhibits]
64. ██████████████, Criminal Identification Department – Zion Station. [Submitting Photo Boards]
65. ██████████████, Special Duties Department, Central Unit – Jerusalem. [Submitting a Memorandum + Polaroid pictures]

**Detailed Incident File 2069/02 Special Duties Department Jerusalem**

66. ████████████████ Bomb Laboratory – Police National Headquarters, Jerusalem. [Submitting a Seizure and Marking Report + Expert opinion] (To be summoned only at the express request of the Defense)
67. ███████████ Analysis Laboratory, Police National Headquarters – Jerusalem. [Submitting an expert opinion] (To be summoned only at the express request of the Defense)
68. ████████ Criminal Identification Department, Zion Station – Jerusalem. [Submitting photographs from the scene of the incident]
69. ████████████████ (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]
70. ██████████████ (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]
71. ██████████████ (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]

[Stamp] P 5: 311 [continued]

72. ██████████████████████ (Details held by the Prosecution)
    [Identification of the body of the late Tzipora Shemesh]

73. Lior Mika, Identity No. 036386753. (Details held by the Prosecution) [Saw the terrorist blow up, wounded in the terrorist attack]

74. Ilan Bauer, United States Passport No. 700767376. (Details held by the Prosecution) [Was together with his son, a minor, near the terrorist at the time of the explosion, both were wounded]

19

Prosecution File 733/02

[Stamp] P 5: 311 [continued]