75. Shiran Darwish, Identity No. 039888862. (Details held by the Prosecution) [Was near the terrorist at the time of the explosion, wounded]
76. Chizkiya Langstein, Dutch Passport No. 115402413. (Details held by the Prosecution) [Wounded in the terrorist attack, saw the terrorist at the time of the explosion]
77. Marion Kampfler, Identity No. 016432148. (Details held by the Prosecution) [Wounded in the terrorist attack]
78. Assi Armoza, Identity No. 051910735. (Details held by the Prosecution) [Wounded in the terrorist attack]
79. Lawrence Salem, Identity No. 312738537. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]
80. Tal Cohen, Identity No. 029506270. (Details held by the Prosecution) [Wounded in the terrorist attack]
81. Faizolah Haim Yakobian, Identity No. 011573441. (Details held by the Prosecution) [Wounded in the terrorist attack, damage was caused to her shop]
82. Eli Levy, Identity No. 033643438. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]
83. Netanel Gidon, Identity No. 012176707. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]
84. Astrid (Rivka) Gorno, Identity No. 301921169. (Details held by the Prosecution) [Wounded in the terrorist attack]
85. Mazal Hachamov, Identity No. 304119407. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]
86. Bosmat Cohen, Identity No. 061273413. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]
87. Moshe Poch, Identity No. 015776636. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]
88. Yaffa Levy, Identity No. 055466924. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]
89. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Details held by the Prosecution) [Saw the terrorist at the time of the explosion]
90. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Details held by the Prosecution) [Was near the location of the explosion]
91. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Details held by the Prosecution) [Eyewitness, treated the wounded]
92. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Details held by the Prosecution) [Damage caused to his shop]

[Stamp] P 5: 312

44

93. ███████, National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Prosecution)
94. ███████ National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Prosecution)
95. Death Certificate – the late Yitzhak Cohen.
96. A list of those wounded in the terrorist attack from the Municipality of Jerusalem – Call Center 106. (Institutional record)
97. Medical documentation.

<u>An additional list of witnesses relating to those wounded in the terrorist attack on King George Street in Jerusalem on March 21, 2002, will be provided during the course of the trial.</u>

[Signature] *Olga / for*
Michael Kotlik, Captain
Military Prosecutor

Date: September 12, 2002
Reference: 733-02

20

Prosecution File 733/02

[Stamp] P 5: 312 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> THE PALESTINE LIBERATION ORGANIZATION, *et al.*, <br><br> Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 293-312.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 293-312.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332794

| צבא | הגנה | לישראל |
|---|---|---|
| בבית המשפט הצבאי | תיק ביח"ימ : 3739/02 |
| בבית אל | תיק תביעה : 733/02 |
| בפני הרכב | תיק פ.א. : 4934-43/02 שומרון |
| | 1359/02 יפתח |
| | 412/02 בנימין |
| | 580/02 שפט |
| | 2069/02 מת"ים י-ס |

**במשפט שבין התובע הצבאי - המאשים**

- נ ג ד -

נאצר ג'מאל מוסא שוויש
ת.ז. 993006188, יליד 25.05.75, תושב שכם/רמאללח
עצור מיום 03.06.02

- ה נ א ש ם -

**כ ת ב - א י ש ו ן**

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט ראשון:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970:

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך סוף שנת 2000 - תחילת שנת 2001 או בסמוך לכך, עזר או נתן מקלט לאדם שעבר עבירה על תחיקת ביטחון או אשר עסק או היה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על ידי מתן ידיעות, מתמסת, מ:זן, משקח, כסף, בגדים, נשק, תחמושת, אספקח, מספוא, אמצעי תובלה, נפט או דלק מכל סוג שהוא ובין בדרך אחרת, דהיינו :

הנאשם חנ"ל, במהלך התקופה האמורה, במספר הזדמנויות שונות, העביר אנשים אשר היו מבוקשים לכוחות הביטחון הישראליים בגין ביצוע פיגועים קטלניים נגד אזרחים ישראליים וחיילי צה"ל. בין היתר, הנאשם חעביר את אחיו ▬▬▬▬▬▬▬▬▬

1

ת.ת. 733/02

**פרט שני:**

**מהות העבירה:** חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מראשית שנת 2001 ועד ליום מעצרו, היה חבר או פעל כחבר בארגון שחוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר ב"גדודי חללי אלאקצא" ("כתאיב שוהאדא אלאקצא"), הזרוע הצבאית של "התנזים" של הפת"ח, שהוא התאחדות בלתי מותרת.
הנאשם גויס לשורות "גדודי חללי אלאקצא" על-ידי אחיו, ███
לאחר גיוסו הנאשם קיבל כינוי פח/"עי "אדהם".
הנאשם פעל במסגרת "גדודי חללי אלאקצא" כפי שיתואר בפרטי האישום הבאים.

**פרט שלישי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף שנת 2000 ועד ליום מעצרו או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, ב-6 הזדמנויות שונות, בשעות הערב, ירה ברוס"ר קלצ'ניקוב ממרחק של 400 מטר לעבר מחנה צה"ל הנמצא בסמוך לכפר תיאסיר בכוונה לגרום למותם של חיילי צה"ל. ביחד עם הנאשם היו ███████████, אשר ██
גם חם ירו לעבר חיילי צה"ל בכוונה לגרום למותם.

**פרט רביעי:**

**מהות העבירה:** ייצור פצצה, עבירה לפי סעיף 53(א)(2) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך תתקופה האמורה, בשכם ובגיניין או בסמוך לכך, במספר הזדמנויות שונות, ייצר מטעני חבלה, וזאת ללא תעודון היתר שהוענקה בידי מפקד צבאי או מטעמו.

**פרט חמישי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במהלך תתקופה חאמורח, במספר הזדמנויות שונות, בשעות הערב, ירה ברוס"ר קלצ'ניקוב ממרחק של 600 מטר לעבר מחנה צה"ל "בזק" בכוונה לגרום למותם של חיילי צה"ל. ביחד עם הנאשם היו ███████, אשר גם הם ירו לעבר חיילי צה"ל בכוונה לגרום למותם.
באחת ההזדמנויות, חבר של הנאשם, אשר חיה ביחד עמו בזמן היריי, ███ נפגע במהלך חילופי האש עם צה"ל שהתפתחו במקום בעקבות היריי של הנאשם וחבריו.

**פרט שישי:**

**מהות העבירה:** עיסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו ג.דבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו. הנאשם הנ"ל, במועד האמור, ביחד עם אחרים, ירה ברוסי"ר קלצ'יניקוב לעבר מחנה צה"ל "סאנור" ממרחק של 400 מטר, בכוונה לגרום למותם של חיילי צה"ל. ביחד עם הנאשם היו ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ אשר גם הם ירו לעבר חיילי צה"ל במטרה לגרום למותם.

**פרט שביעי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001, כחודש לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, בשעות חלילה, ביחד עם ▉▉▉▉▉▉▉▉ ואדם נוסף, הניח ארבעה מטעני חבלה במשקל 5 ק"ג כל אחד בכביש הראשי הסמוך לגבע. הנאשם וחבריו הניחו שני מטעני חבלה מכל צד של הכביש. לאחר שהנאשם וחבריו הניחו את מטעני החבלה הנ"ל, הם הסתתרו בסמוך לכביש.
בעת שהנאשם וחבריו הנ"ל הבחינו בג'יפ של צה"ל, אשר נסע בכביש חנ"יל והתקרב אל מטעני החבלה הנ"ל, הנאשם וחבריו הנ"ל הפעילו את מטעני החבלה הנ"ל באמצעות מכשירי טלפון סלולריים בכוונה לגרום למותם של חיילי צה"ל, אשר נסעו בג'יפ חנ"יל.
כתוצאה מפיצוץ מטעני החבלה הנ"ל נגרם נזק לג'יפ צה"ל הנ"ל.
במהלך ביצוע חפיגוע המתואר לעיל, הנאשם וחבריו הנ"ל וזיו חמושים ברוס"רי קלצ'יניקוב.

**פרט שמיני:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001, כחודש לאחר שביצע את המיוחס לו בפרט חאישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ביחד. עם ▉▉▉▉▉▉▉▉ חניח מטען חבלה בכביש הראשי הסמוך לעראבה, באיזור מרקה, בכוונה לפוצצו ולגרום למותם של אזרחים ישראליים. לאחר מכן, ▉▉▉▉▉▉ חזר לגינין.
הנאשם ו▉▉▉▉▉▉▉ המתינו במקום ומשהבחינו בג'יפ של צה"ל, הפעילו לעבר את מטען חתבלה הנ"ל, בכוונה לגרום למותם של חיילי צה"ל. כתוצאה מפיצוץ מטען חחבלה חנ"יל נפגע ג'יפ צחייל האמור.
במהלך ביצוע הפיגוע הנ"ל, שני חברי הנאשם הנ"יל היו חמושים בכלי נשק.

3

ת.פ. 733/02

**פרט תשיעי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001, בחודש לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם ▮▮▮▮▮▮▮▮▮▮, הניח מטען חבלה בציר הראשי המוביל למחנה צה"ל "יתיסיר", בבקעת חירדן בכוונה לגרום למותם של חיילי צה"ל. הנאשם וחבריו הנ"ל ניסו להפעיל את מטען החבלה הנ"ל לעבר ג'יפ של צה"ל אשר עבר במקום, בכוונה לגרום למותם של חיילי צה"ל, אך עקב התקלה טכנית מטען החבלה הנ"ל לא התפוצץ. לאחר מכן, הנאשם וחבריו אספו את מטען החבלה שלא התפוצץ וחזרו עמו לענין.

**פרט עשירי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

במועד האמור, ▮▮▮▮▮, פעיל צבאי בכיר בייחאד אסלאמי פלסטיני, פנה אל ▮▮▮▮▮, פעיל צבאי בכיר ב"גדודי חללי אלאקצא" - זרוע הצבאית של "התנזים" של חפת"ח, והציע לאחרון לבצע פיגוע נגד מטרות ישראליות. הוחלט כי הפיגוע הנ"ל יבוצע במשותף על-ידי פעילי הגייהאד האסלאמי ופעילי "גדודי חללי אלאקצא".

הנאשם גויס לצורך ביצוע הפיגוע המתוכנן על-ידי ▮▮▮▮▮▮▮. גייס לביצוע הפיגוע המתוכנן את ▮▮▮▮▮▮▮

הנאשם בחר את מקום לביצוע הפיגוע מתוכנן והוא איזור קוצין. הנאשם שכר בשכם רכב ונסע עמו לענין. בנגיעו הנאשם נפגש עם ▮▮▮▮▮▮▮▮ משם, הנאשם ו▮▮▮▮▮ נסעו אל המקום, אשר אותו בחר הנאשם לצורך ביצוע הפיגוע המתוכנן.

בהגיעם אל המקום הנ"ל, הנאשם ו▮▮▮▮▮ הניחו מטען חבלה בסמוך לכביש. הנאשם וחברו הנ"ל הסתתרו בסמוך למקום הנ"ל במטרה להפעיל את מטען החבלה הנ"ל לעבר חיילי צה"ל ולגרום למותם.

תכניתם של הנאשם וחברו הנ"ל לא יצאה אל הפועל מכיוון שבסמוך למטען החבלה הנ"ל עמדו פועלים פלסטיניים והנאשם וחברו לא הפעילו את מטען החבלה לעבר הג'יפ של צה"ל, אשר הגיע למקום, מחשש לפגוע בפועלים הנ"ל.

לאחר מכן, הנאשם הגיע למקום ואסף את מטען החבלה הנ"ל.

**פרט אחד-עשר:**

**מהות העבירה:** התחפשות, עבירה לפי סעיף 55 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במועד האמור בפרט האישום הקודם, השתמש בתחפושת בנסיבות שבהן עלול השימוש בתחפושת לפגוע בשלום הציבור, או בביטחון כוחות צה"ל או בהגנתו של האיזור או בקיום הסדר הציבורי, דהיינו:

הנאשם הנ"ל, במועד האמור, ביצע את המיוחס לו בפרט האישום הקודם כשהוא מחופש לאישה.

4

ת.פ. 733/02

**פרט שנים-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, קשר עם ▬▬▬ לרצוח שני אזרחים ישראליים, אשר, לפי המידע שהגיע לידי הנאשם, מגיעים מדי יום שבת לשכם.
באחד מימי השבת, הנאשם יצא ביחד עם ▬▬▬, כשבידיהם חמושים ברוסי"ר M-16, לצורך ביצוע הפיגוע המתוכנן. הנאשם וחברו הנ"ל הגיעו לצומת קוצין.
הנאשם ▬▬▬ התמקמו במקום והמתינו לשני האזרחים הישראליים הנ"ל במטרה לירות לעברם ולגרום למותם. הנאשם וחברו המתינו במקום כ-24 שעות, אך האזרחים הישראליים הנ"ל לא הגיעו ולכן הנאשם וחברו חזרו לשכם.

**פרט שלושה-עשר:**

**מהות העבירה:** החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מאמצע שנת 2001 ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר חמתוכן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה, החזיק באקדח 14, אשר אותו קיבל מ▬▬▬ באמצעות ▬▬▬, וזאת ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.
בעת מעצרו הנאשם נשא את האקדח הנ"ל עם שתי מחסניות מלאות בכדורים ועוד 40 כדורים לאקדח הנ"ל.

**פרט ארבעה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במשך ארבעה ימים רצופים, במחנה חפליטים ג'נין או בסמוך לכך, במספר הזדמנויות שונות, ירה ברוסי"ר קלצ'ינקוב לעבר חיילי צה"ל בכוונה לגרום למותם. ביחד עם הנאשם היו אנשים נוספים, ▬▬▬ אשר גם חס ירו לעבר חיילי צה"ל בכוונה לגרום למותם.

**פרט חמישה-עשר:**

**מהות העבירה:** סחר בציוד מלחמתי עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מסי 243), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על ידי מפקד האיזור או מטעמו, דהיינו:

הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, רכש מ ▬▬▬ רוסי"ר M-16 תמורת 3,500 דינר ירדני, וזאת ללא היתר חתום על ידי מפקד האיזור או מטעמו. את הכסף לצורך רכישת הנשק הנאשם קיבל מידי ▬▬▬
לאחר רכישת הנשק הנ"ל, הנאשם העבירו לגינין לידי ▬▬▬

5

ת.פ. 733/02

## פרט שישה-עשר:

**מהות העבירה:** סחר בציוד מלחמתי עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בכפר קליל או בסמוך לכך, רכש מספר מחסניות ריקות לאקדח זיג זאור מידי אדם בשם ▇ וזאת ללא היתר חתום על ידי מפקד האיזור או מטעמו.
הנאשם רכש את המחסניות האמורות לפי בקשתו של ▇ שהוא אחראי ארגון ג'יהאד אסלאמי פלסטיני בג'נין.

## פרט שבעה-עשר:

**מהות העבירה:** נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, חל מתחילת שנת 2002 ועד ליום מעצרו, ניהל או עזר להנהלת התאחדות בלתי מותרת, או החזיק במשרה או עמדה כל שהיא בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, שימש כמתאם פעילות צבאית של "גדודי תללי אלאקצא" ("כתאיב שוחאדא אלאקצא"), הזרוע הצבאית של "התנזים" של הפת"ח, שהוא התאחדות בלתי מותרת, בין האיזורים של ג'נין, טול-כרם, שכם ורמאללה.

## פרט שמונה-עשר:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במחנה הפליטים ג'נין או בסמוך לכך, ביחד עם ▇ ואחרים, ירה לעבר חיילי צה"ל בכוונה לגרום למותם.

## פרט תשעה-עשר: פ.א. 1359/02 יפתח

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. בחודש ינואר 2002, פנו אל הנאשם רביע רפיק אבן רוב, פעיל צבאי בכיר בארגון ג'יהאד אסלאמי פלסטיני, אשר אסף קודם מידע לגבי המקומות במדינת ישראל שבהם ניתן לבצע פיגועי תופת, ו▇
2. ▇ ביקש כי הנאשם יעזור בהעברת הצעיר שמבקש להתאבד מביתו במ.פ. עסקר שבשכם
3. הנאשם נסע עם ▇ למחנת הפליטים עסקר. שם נפגשו עם הצעיר הנ"ל שהוא ▇
4. הנאשם ו▇ העבירו את ▇ לדירה בשכם.
5. ▇ הביא לדירה האמורה בשכם את

6

ת.ת. 733/02

6. לדירה האמורה הגיעו גם ▓▓▓▓ אשר, ביחד עם הנאשם ו▓▓▓, צילם באמצעות מצלמת וידאו את ▓▓▓▓ ואת ▓▓▓▓ לקראת ביצוע פיגוע ההתאבדות המתוכנן, וזאת כאשר השניים מחזיקים ברוס"ר קלצ'ניקוב וברוס"ר 16-M.

7. ▓▓▓▓ הכין בדירה האמורה מטען התבלה, המורכב מ-6- ק"ג של חומר נפץ, לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. ▓▓▓▓ הסתיר את מטען החבלה בתוך קרטון טלוויזיה.

8. הנאשם וחבריו הנ"ל ערכו תכנית, אשר לפיה יבוצע פיגוע ההתאבדות משולב באיזור התחנה המרכזית בתל-אביב: ▓▓▓▓ יפוצץ את מטען החבלה, אשר אותו יישא, במטרה לגרום למותם של אזרחים רבים ככל הניתן, ובמקביל ▓▓▓▓ יפתח באש ברוס"ר קלצ'ניקוב במטרה לגרום למותם של אזרחים רבים ככל הניתן, וימשיך לירות עד שייהרג. הפיגוע המתוכנן היה פרי שיתוף פעולה בין הפלג הצבאי של ארגון ג'יהאד אסלאמי פלסטיני, אשר סיפק את המחבל המתאבד - ▓▓▓▓ ואת מטען החבלה, לבין "גדודי חללי אלאקצא" - הפלג הצבאי של "התנזים" של הפת"ח, אשר סיפק את המחבל המתאבד השני - ▓▓▓▓ ואת כלי הנשק.

9. הנאשם ביקש ללמד את בהאא שלחתי להשתמש ברוס"ר קלצ'ניקוב, אך האחרון סירב וטען כי יודע לירות בכלי-הנשק הנ"ל.

10. הנאשם הנ"ל, בשעות אחרי הצהריים, על-פי בקשתו של ▓▓▓▓ הסיע את שני חמחבלים המתאבדים - ▓▓▓▓ כאשר השניים מצוידים במטען החבלה הנ"ל וברוס"ר קלצ'ניקוב עם 4 מחסניות מלאות בכדורים. ביחד עם הנאשם, אשר היה חמוש במהלך הנסיעה הנ"ל באקדח, נסעו גם ▓▓▓▓. במהלך הנסיעה חנאשם ירד מהרכב ורכש תיק, אשר לתוכו הוכנס רוס"ר קלצ'ניקוב הנ"ל והמחסניות, וכן בגדים חדשים עבור המחבלים המתאבדים.

11. באיזור זוואתא, ▓▓▓▓ עזב את הנאשם וחבריו וחזר לשכם. הנאשם ביחד עם חבריו הנ"ל עקפו ברגל את מחסום צח"ל הנמצא במקום ונסעו במונית לטול-כרם. ▓▓▓▓ נסע במונית אחת על מנת "לפתוח את הדרך" לנאשם ושני חמחבלים המתאבדים.

12. בשלב חזה התקשר אל הנאשם ▓▓▓▓ ומסר לנאשם מספר הטלפון הסלולרי של האדם, אשר היה אמור לסייע לנאשם ותמחבלים המתאבדים הנ"ל ב"פתיחת ציר תנועחי". הנאשם ניסה להתקשר אל מאדם חנ"ל אך ללא הצלחה.

13. הנאשם ושני המחבלים המתאבדים חנ"ל הגיעו לטול-כרם בשעות הערב.

14. הנאשם ושני המחבלים חמתאבדים לנו בטול-כרם בביתו של מנוך שמס, אשר עמו יצר חנאשם קשר לאחר שקיבל את מספר הטלפון הסלולרי של האחרון מרביע אבו רוב.

15. למחרת היום, 25.01.02, בשעות חבוקר הנאשם הגיע לתחנת המוניות בטול-כרם ביחד עם ▓▓▓▓, כאשר שני חמחבלים המתאבדים נושאים עמם את מטען החבלה המתואר לעיל, אשר היה מוסתר בתוך קרטון טלוויזיה, ורוס"ר קלצ'ניקוב עם 4 מחסניות מלאות בכדורים, אשר היה בתוך תיק.

16. בשלב הזה, הנאשם נפרד מחבריו הנ"ל וחזר לשכם.

17. ▓▓▓▓ הגיע במונית לתל-אביב. שם השניים הגיעו לאיזור התחנה המרכזית הישנה. השניים החליטו לבצע את הפיגוע המתוכנן במקום האמור.

18. בסמוך לשעה 11:00, ביום 25.01.02, ברחוב נווה שאנן בתל-אביב, בסמוך לבית מס' 30, ▓▓▓▓ הפעיל את מטען החבלה המתואר לעיל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

19. מטען החבלה הנ"ל התפוצץ וכתוצאה מפיצוצו נפצעו 28 אנשים.

20. ▓▓▓▓ נהרג במקום כתוצאה מפיצוץ מטען החבלה הנ"ל.

21. ▓▓▓▓, אשר לפי תכנון המתואר לעיל היה אמור לפתוח בירי ברוס"ר קלצ'ניקוב לעבר האזרחים לאחר פיצוץ מטען החבלה הנ"ל בכוונה לגרום למותם, לא הצליח להוציא את רוס"ר קלצ'ניקוב הנ"ל מהתיק. משהבין ▓▓▓▓ כי לא יכול לפתוח בירי באופן מיידי, הוא השליך את התיק עם הרובה והתחמושת וניסה להימלט מחמקום, אך נעצר על-ידי שוטרי משטרת ישראל.

7

ת.פ 733/02

**פרט עשרים:** פ.א. 1359/02 יפתח

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש"ל-1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס׳ 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
חטאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט תיאושם הקודם, גרם נזק רב לבתים, חנויות ובתי-עסק, אשר היו סמוכים למקום שבו הופעל מטען החבלה על-ידי ▮▮▮▮. כפי שתואר בפרט האישום הקודם.

**פרט עשרים ואחד:**

**מהות העבירה:** סחר בציוד מלחמתי עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על ידי מפקד האיזור או מטעמו, דהיינו:
חטאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ▮▮▮▮, אשר ביקש כי הנאשם ישמור אצלו חגורת נפץ במשקל של 18-2 ק"ג. הנאשם הסכים וקיבל מידי הנ"ל את חגורת הנפץ האמורה.
לאחר יום, הנאשם נפגש עם ראש "התנזים" של הפתי"ח באיזור, ▮▮▮▮. הנאשם מסר ל▮▮▮▮ כי נמצאת ברשותו חגורת הנפץ הנ"ל השייכת ל▮▮▮▮ לפי בקשתו של ▮▮▮▮. הנאשם התקשר במהלך ▮▮▮▮ השיחה הנ"ל אל ▮▮▮▮ וקיבל את הסכמתו של האחרון למסור את חגורת הנפץ הנ"ל לידי ▮▮▮▮. ▮▮▮▮ מסר לנאשם כי ישלח את שומר ראשו ועוזרו, ▮▮▮▮ המכונה ▮▮▮▮, אל הנאשם לצורך קבלת חגורת הנפץ הנ"ל. לאחר יום, הנאשם נפגש ברמאללה עם ▮▮▮▮ חנ"ל ומסר לידיו את יגורת הנפץ האמורה.

**פרט עשרים ושניים:** פ.א. 412/02 בנימין

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירת (יהודה והשומרון) (מס׳ 225), תשכ"ח-1968-.

**פרטי העבירה:** חנאשם הנ"ל, באיזור, ביום 27.02.02 או במועד הסמוך לכך, ניסח לגרוס בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בסוף חודש ינואר - תחילת חודש פברואר 2002 או בסמוך לכך, נפגש בשכם עם ▮▮▮▮ (להלן: ▮▮▮▮), שהיא בת-דודתו יעל ▮▮▮▮ אשר ביצע פיגוע התאבדות ברחוב נווה שאנן בתל-אביב ביום 25.01.02 בסיועו של הנאשם. ▮▮▮▮ הביע בפני הנאשם את רצונה לבצע פיגוע התאבדות.

2. בחודש פברואר 2002, ברמאללה, הנאשם נפגש שוב עם ▮▮▮▮, אשר שוב ביקשה כי הנאשם ישלח אותה לבצע פיגוע התאבדות על מנת לגרום למותם של אזרחים ישראלים רבים ככל חניתן.

3. חנאשם פנה אל ▮▮▮▮ וד״ווח לנ״ל כי ישנה בחורה המבקשת לבצע פיגוע התאבדות. ▮▮▮▮ מסר לנאשם כי הוא מסכים לשלוח את הבחורה האמורה לביצוע פיגוע התאבדות וכי הוא יכין מטען חבלה לצורך כך. ▮▮▮▮ הודיע לנאשם כי עליו לצלם את הבחורה לפני שתצא לביצוע פיגוע ההתאבדות המתוכנן.

4. הנאשם חביא את ▮▮▮▮ לדירתו של אחיו, ▮▮▮▮, הנמצאת בביתוניא. הנאשם הביא לאותה חדירה צלם בשם ▮▮▮▮ וביחד עם האחרון צילם את ▮▮▮▮ לקראת ביצוע פיגוע ההתאבדות המתוכנן. במהלך הצילוס, ▮▮▮▮ קראה צוואה.

8

ת.ת. 733/02

5. יום למחרת, 27.02.02, הגיעו לדירה הנ"ל ███, אשר הביאו עמם חגורה, שבה היה מטען חבלה, לצורך החוצאה לפועל של פיגוע התאבדות המתוכנן.

6. מכיוון ש███ סירבה לכך שגבר ילביש עליה את חגורת הנפץ, ███ את מטען על-פי בקשתו של הנאשם, שהוא נשוי לאחותה הגדולה, חלבישה על גופה של ███ החבלה הנ"ל. בעת ש███ הלבישה את חגורת הנפץ על גופה של ███ היא תבחינה כי אחת מהכתפיות של חגורת הנפץ רופפת וחיזקה אותה באמצעות סיכה.

7. הנאשם וחבריו הנ"ל תכננו כי ███ תגיע אל תחנת משטרת ישראל ביפו ושם תפוצץ את מטען חנפץ שהיא נושאת על גופה ובכך תגרום למותם של אזרחים ישראליים רבים ככל הניתן.

8. לאחר מכן חבריו של הנאשם עזבו את הדירה הנ"ל והנאשם נשאר שם עד שעות הערב עם ███

9. ███ גויס לצורך העברתה של ███ אל תוך מדינת ישראל על מנת שתבצע שם את פיגוע ההתאבדות המתוכנן את ███

10. בשעות הערב של אותו היום, הנאשם הגיע ביחד עם ███, אשר נשאה על גופה את מטען החבלה הנ"ל, לבית החולים "אבו-ריא" ברמאללה. שם חס נפגשו עם ███

11. משם חבריו הנ"ל של הנאשם העבירו את ███ למחסום א-ראם, במחסום א-ראם, ███ עלתה לרכב סובארו כחול, מ.ר. 7797787, של ███, אשר הגיעו למקום על-פי בקשתו של ███ ואשר אמורים להסיע את ███ לתחנת משטרת ישראל ביפו על מנת ששם ███ תפעיל את מטען החבלה, אשר חגור על גופה, ובכך תגרום בכוונה למותם של אזרחים ישראליים רבים ככל הניתן.

12. ביום 27.02.02, סמוך לשעה 22:27, במחסום של צה"ל ומשטרת ישראל "מכבים" בכביש 443 הרכב שבו נסעו ███ נעצר לביקורת על-ידי חיילי צה"ל ושוטרי משטרת ישראל. משהבינה ███ כי לא תצליח לעבור את מחסום "מכבים" הנ"ל, להיכנס לשטחה של מדינת ישראל ולבצע את פיגוע ההתאבדות כפי שתוכנן, היא הפעילה את מטען החבלה שנשאה על גופה בכוונה לגרום למותם של שוטרי משטרת ישראל וחיילי צה"ל שהיו במחסום הנ"ל.

13. כתוצאה מפיצוץ מטען חחבלה, אשר אותו ███ נשאה על גופה נפצע באורח קשה שוטר משטרת ישראל, מרדכי טל, בבטנו, שני שוטר נוספים, דוד כהן ושאול כהן, נפצעו באורח קל.

14. ███ נהרגה במקום כתוצאה מפיצוץ מטען חחבלה הנ"ל.

## פרט עשרים ושלושה:

**מהות העבירה:** החזקת כלי-יריה, עבירח לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מתחילת חודש מרץ 2002 ועד לאמצע חודש אפריל 2002 או בסמוך לכך, החזיק ברשותו כלי-יריה, תחמושת, פצצת, רימון יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר חמתוכנן או מסוגל לגרום למוות או חבלה חמורה, ללא תעודת חיתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:

הנאשם הנ"ל, במחלך התקופה האמורה, החזיק ב רוס"ר M-16, אשר אותו קיבל מ ███, וזאת ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.

הנאשם אף ירה ב רוס"ר M-16 האמור במהלך הלוויתו של ███ חנ"ל. הנאשם הסתיר את רוס"ר M-16 הנ"ל בעת שנמלט מרמאללה בעקבות כניסתם של כוחות צה"ל לעיר.

9

ת.ת. 733/02

**פרט עשרים וארבעה:** פ.א. 580/02 שפט

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 10.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, נפגש עם ▓▓▓▓ ▓▓▓▓▓▓▓. ▓▓▓▓▓▓▓ מסר לנאשם כי ישני אדם חמבקש לבצע פיגוע התאבדות בתוך מדינת ישראל במטרה לגרום למותם של אנשינו רבים ככל חניתן.

2. ▓▓▓▓▓▓▓ ביקש מהנאשם לסייע בצילום המחבל המתאבד לקראת יציאתו של האחרון לביצוע פיגוע ההתאבדות המתוכנן. הנאשם הסכים לצלם את המחבל המתאבד בביתו של אחיו, ▓▓▓▓▓▓▓ הנמצא בביתוניא.

3. ביום 09.03.02 הנאשם ו-▓▓▓▓▓▓▓ הגיעו לדירה האמורה בביתוניא. לדירה האמורה הגיע גם המחבל המתאבד שחוא ▓▓▓▓▓▓▓ וכן הצלם ▓▓▓▓▓▓▓, אשר הוזמן על-ידי הנאשם; ועיתונאית נוספת ▓▓▓▓▓▓▓, בעת צילומו של המחבל המתאבד נכח גם אחיו של ▓▓▓▓▓▓▓.

4. לאחר מכן ▓▓▓▓▓▓▓ נסע ביחד עם ▓▓▓▓▓▓▓ לדירתו של ▓▓▓▓▓▓▓ במחנה הפליטים אמערי. בדרכם למקום הנ"ל, מסוק ירה טיל לעבר הרכב. ▓▓▓▓▓▓▓ הספיק לברוח מהרכב הנ"ל ואילו ▓▓▓▓▓▓▓ נהרג כתוצאה מפגיעת הטיל הנ"ל.

5. ▓▓▓▓▓▓▓ קיבל, בהתאם לתכנית שנערכה מוקדם יותר בין הנאשם וחבריו, מידי המכונה "▓▓▓▓▓▓▓" רוסי"ר קלצ'ניקוב, תחמושת ושני רימוני-יד וביום 14.03.02 יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן במטרה לגרום למותם של אנשים רבים ככל הניתן.

6. ביום 10.03.02, בסביבות השעה 14:30, המחבל המתאבד הנ"ל (▓▓▓▓▓▓▓▓▓▓) ניסה לחדור אל תוך מדינת ישראל כשהוא חמוש ברוסי"ר קלצ'ניקוב, מחסניות מלאות בכדורים ושני רימוני-יד, וזאת על מנת לבצע את פיגוע ההתאבדות המתוכנן ולגרום בכוונה למותם של אזרחים רבים ככל הניתן. ▓▓▓▓▓▓▓ הובא למחסום א-ראס על-ידי ▓▓▓▓▓▓▓, אשר גויס למשימה זו על-ידי ראש המודיעין הכללי של חרשות הפלסטינית - ▓▓▓▓▓▓▓.

7. במועד ובשעה האמורים, במחסום א-ראס או בסמוך לכך, המחבל המתאבד הנ"ל, ▓▓▓▓▓▓▓, נהרג על-ידי כוחות הביטחון הישראליים בעת ניסיונו לחדור אל תוך מדינת ישראל כאמור לעיל.

**פרט עשרים וחמישה:** פ.א. 2069/02 מת"ם י-ם

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש פברואר 2002, בשכם או בסמוך לכך, נפגש עם ▓▓▓▓▓▓▓ אשר ביקש מהנאשם להעביר אדם עם "חפצים" לטול-כרם. הנאשם הסכים ואז ▓▓▓▓▓▓▓ חפגיש את הנאשם עם מחמד חשאיקה.

2. הנאשם נסע ביחד עם מחמד חשאיקה משכם לטול-כרם, במהלך הנסיעה הנאשם חבין כי מחמד חשאיקה נושא על גופו חגורה עם מוען חבלה במטרה לבצע פיגוע התאבדות. הנאשם ומחמד חשאיקה לא הצליחו להיכנס לטול-כרם, אשר היתה מכותרת על-ידי כוחות צה"ל ואף נעצרו על-ידי הביטחון המסכל של חרשות הפלסטינית לאחר שנמסר על-ידי גורמים ישראלים כי הנאשם ומחמד חשאיקה מתכוונים להוציא לפועל פיגוע התאבדות. לפני מעצרם של השנים, הנאשם הוריד מגופו של מחמד חשאיקה את חגורת חנפץ הנ"ל.

10

ת.ת. 733/02

P 5: 302

3. לאחר מעצרם, הנאשם ומחמד חשאיקה הועברו על-ידי הרשות הפלסטינית לרמאללה ושם שוחררו.

4. לאחר השחרור, מחמד חשאיקה פנה אל הנאשם ואל ███████ והודיע על רצונו לבצע פיגוע התאבדות. הנאשם ו███████ הסכימו להכין את מחמד חשאיקה ולצייד אותו בכל הדרוש לצורך ביצוע פיגוע וחמתאבדות בתוך מדינת ישראל.

5. מחמד חשאיקה סיפר לנאשם ול███████ כי נגה אליו ███████, קצין במודיעין של הרשות הפלסטינית ברמאללה, והציע כי ישלח את מחמד חשאיקה לבצע פיגוע התאבדות. הנאשם ו███████ שכנעו את מחמד חשאיקה שלא להאמין לקצין המודיעין של הרשות הפלסטינית מחשש שיסגיר אותו לידי ישראל. הנאשם ו███████ שכנעו את מחמד חשאיקה כי הם ידאגו לכל הדרוש על מנת לשולחו לביצוע פיגוע התאבדות בתוך מדינת ישראל.

6. הנאשם מצא דירה שכורה ברמאללה, אשר בה הוא וחבריו היו אמורים להכין את פיגוע ההתאבדות המתוכנן.

7. הנאשם הוביל אל הדירה האמורה את ███████ ואת מחמד חשאיקה.

8. על-פי בקשתו של ███████, הנאשם גייס את ███████, תושבת עצירה שמאלית, לביצוע פיגוע ההתאבדות חנ"ל, וזאת לאחר שהנאשם ו███████ החליטו כי יהיו שני מחבלים מתאבדים, גבר ואישה, אשר יבצעו פיגוע התאבדות כפול וזאת במטרה לגרום למותם של אזרחים ישראליים רבים ככל הניתן. ███████ הגיעה אף היא לדירה האמורה.

9. בדירה האמורה, על-פי בקשתו של הנאשם, הצלם ███████ צילם באמצעות מצלמת וידאו את מחמד חשאיקה ואת סיגוד שולי לקראות ביצוע פיגוע ההתאבדות המתוכנן.

10. בשלב חזה, הנאשם החליט כי אינו רוצה בכך ש███████ תשתתף בביצוע פיגוע ההתאבדות, והודיע למשפחתה של האחרונה על כוונותיה של בתם. כתוצאה מכך, ███████ חזרה לאיזור שכם ומשם נמלטה לירדן.

11. ███████ פנה אל משרדו של ראש תמודיעין הכללי ברשות הפלסטינית, ███████ והביא משם חומרי נפץ.███████ ייצר מחומרי הנפץ הנ"ל מטען חבלה לצורך ביצוע פיגוע ההתאבדות המתוכנן.

12. לאחר מכן, הנאשם ו███████ הכינו את חגורת הנפץ.

13. הנאשם גייס לצורך חעברתו של מחמד חשאיקה אל תוך מדינת ישראל לביצוע פיגוע ההתאבדות המתוכנן את ███████ אשר אותה חכיר קודם לכן באמצעות ארוסתו ███████.

14. ביום 20.03.02 הנאשם נפגש ברמאללה עם ראש "חתנזים" של חפתי"ח באיזור, ███████. הנאשם מסר ל███████ כי ███████ עומד לשלוח מחבל מתאבד לצורך ביצוע פיגוע התאבדות בתוך מדינת ישראל. ███████ ביקש לדעת אם הנאשם ו███████ זקוקים לדבר מה לצורך ההוצאה לפועל של הפיגוע המתוכנן. למרות שהנאשם חשיב בשלילה על השאלה הנ"ל, ███████ מסר לנאשם סכום של 600 דולר ארה"ב.

15. ביום 21.03.02 חנאשם נפגש ברמאללה עם ███████ ועם ███████. הסביר ל███████ כי עליה להוביל את המחבל המתאבד אל ירושלים על מנת שיבצע שם את פיגוע ההתאבדות המתוכנן וזאת מאחר שהיא מכירה היטב את ירושלים ואת הדרכים המובילות אליה.

16. באותו היום, הנאשם, ███████ ומחמד חשאיקה ביקרו במשרדו של מזכ"ל ארגון הפתי"ח באיזור, שם, ███████ קיבל מידי ███████ כסף רשני רימוני-יד לצורך ההוצאה לפועל של הפיגוע המתוכנן.

17. הנאשם וחבריו הנ"ל רכשו בכסף האמור בגדים עבור מחמד חשאיקה, אשר בחם ביצע האחרון את פיגוע ההתאבדות, אשר יתואר בהמשך.

18. לאחר מכן, הנאשם וחבריו הגיע לדירה ברמאללה, אשר בה היו מחמד חשאיקה הנ"ל, ███████ הכינו את מחמד חשאיקה לקראות ביצוע פיגוע ההתאבדות המתוכנן וביחד עם הנאשם חלבישו עליו את חגורת הנפץ הנ"ל.

19. לאחר מכן, ███████ יצר קשר עם ███████ וביקש מהאחרונה לסייע בהענברת מחבל מתאבד לירושלים.

20. לאחר זמן מה, ███████ הגיעה אל הנאשם וחבריו הנ"ל.

11

ת.פ. 733/02

21. בשעות הצהריים, ביום 21.03.02, הנאשם הסיע מרמאללה למחסום קלנדיה, ברכב שכור, את מחמד חשאיקה שנשא על גופו את חגורת הנפץ ח״י״ל וכן את ▮▮▮▮ שליוו את המחבל המתאבד חנ״ל.

22. לאחר מכן, ולאחר שנפרד בנשיקה ממחמד חשאיקה, הנאשם חזר לרמאללה.

23. ▮▮▮▮ הובילו את מחמד חשאיקה, אשר נשא על גופו את חגורת הנפץ הנ״ל, לרחוב המלך ג׳ורג׳ בירושלים. השתיים בחרו את המקום מכיוון שחוא חומה אדם בשעות אחר הצהריים ולכן השתיים החליטו כי הוא ״מתאים״ לביצוע פיגוע ההתאבדות המתוכנן.

24. לאחר ש▮▮▮▮ עזבו את מחמד חשאיקה ברחוב המלך ג׳ורג׳, מחמד חשאיקה הגיע אל מעבר החצייה הנמצא בסמוך לבית-קפה ״ארונה״ וסמוך לצומת הרחובות המלך ג׳ורג׳ וחסנסטדרות.

25. במקום האמור, בסמוך לשעה 16:20 ביום האמור, מחמד חשאיקה הפעיל את מטען חתבלה, אשר אותו נשא על גופו, כשהוא נמצא בתוך קהל האנשים וזאת במטרה לגרום למותם של אזרחים רבים ככל הניתן.

26. לאחר שלנאשם וחבריו נודע על ביצוע פיגוע החתאבדות המתוכנן, הנאשם העביר קלטת וידאו עם ״צוואתו״ חמצולמת של מחמד חשאיקה לידי עיתונאי ▮▮▮▮

27. לאחר מכן, הנאשם ו▮▮▮▮ פנו אל ▮▮▮▮, מזכ״ל ארגון הפת״ח באיזור, וניסחו הודעה, אשר בח ״גדודי חללי אלאקצא״, הזרוע הצבאית של ״התנזים״ של הפת״ח, נטלו אחריות על ביצוע פיגוע התופת המתואר לעיל. לאחר עריכת ההודעה, הנאשם ניגש אל משרדי חברת חדשות ANN, שם הנאשם צולם כשהוא מקריא את הודעה חנ״ל של נטילת האחריות לפיגוע המתואר לעיל.

28. תמורת השתתפותו בהוצאח לפועל של פיגוע ההתאבדות חנ״ל, הנאשם קיבל מראש המודיעין הכללי של הרשות הפלסטינית, ▮▮▮▮ סכום של 1,200 ש״ח.

29. במעשיו המתוארים לעיל, הנאשם חנ״ל, במועד האמור, גרם בכוונה למותו של **רס״מ גדי שמש ז״ל**, אשר נהרג כתוצאה מפיצוץ מטען חחבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר לעיל.

**פרט עשרים ושישה:** פ.א. 2069/02 מת״ס י-ם

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש״ל-1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, גרם בכוונה למותח של **ציפורה שמש ז״ל**, אשר נהרגת כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום עשרים וחמישח. ציפורה שמש ז״ל היתה בעת מותה בחודש הרביעי להריון.

**פרט עשרים ושבעה:** פ.א. 2069/02 מת״ס י-ם

**מהות העבירה:** גרימת מוות בכוונח, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש״ל-1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום עשרים וחמישה, גרם בכוונה למותו של **יצחק כהן ז״ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום העשרים וחמישה.

**פרט עשרים ושמונה:** פ.א. 2069/02 מת"ס י-ם

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א) ו-19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד סמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, ניסה לגרום למותם של אזרחים רבים ככל הניתן. כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד השאיקה, כפי שתואר בפרט האישום העשרים וחמישה, נפצעו 81 אזרחים.

**פרט עשרים ותשעה:** פ.א. 2069/02 מת"ס י-ם

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 14(א) לצו בדבר ככלי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד סמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, גרם נזק כבד לבניינים ובתי-עסק סמוכים למוקם האמור וכן לכלי רכב רבים, אשר היו בסמוך למקום המתואר בפרט האישום העשרים וחמישה, אשר בו הפעיל מחמד השאיקה את מטען החבלה, כפי שתואר בפרט האישום עשרים וחמישה.

**פרט שלושים:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש פברואר - תחילת חודש מרץ 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם ████████ ואדם נוסף לבצע פיגוע ירי לעבר כלי רכב ישראליים באיזור עטרות ובכך לגרום למותם של אזרחים ישראליים. הנאשם ושלושת חבריו הנ"ל הצטיידו בכלי נשק ויצאו ברכבם מרמאללה לכיוון עטרות על מנת לבצע שם את הפיגוע המתוכנן. עקב תקלה שאירעה ברכבם של הנאשם וחבריו, הפיגוע המתוכנן לא יצא אל הפועל.

**פרט שלושים ואחד:**

**מהות העבירה:** ירי לעבר אדם, עבירה לפי תקנה 58(א) ו-(ד) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, היה חבר לכל קבוצה או חבר של בני-אדם שחבר אחד או יותר מהם עברו, בזמן חיותם חברים לקבוצה או לחבר, או עבירה של ירי בנשק אש כל שהוא על כל אדם או על כל קבוצה של בני אדם, או כל מקום שבני אדם עשויים להימצא בו, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ביחד עם אחרים, ירה לעבר הטנקים של צה"ל.

13

**פרט שלושים ושניים:**

**מהות העבירה:** ירי לעבר אדם, עבירה לפי תקנה 58(א) ו-(ד) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, היה חבר לכל קבוצה או חבר של בני-אדם שחבר אמ**?** או יותר מחם עבד, בזמן היותם חברים לקבוצה או לחבר, או עובדים עבירה של ידי בנשק אש כל שהוא על כל אדם או על כל קבוצה של בני אדם, או כל מקום שבני אדם עשויים להימצא בו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ביחד עם אחרים, ירה לעבר. הטנקים של צה"ל.

**פרט שלושים ושלושה:**

**מהות העבירה:** הנחת פצצה, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, זרק או טמן פצצה, רימון-יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לאדם או שהוא או נזק לרכוש כל שהוא, דהיינו:
הנאשם הנ"ל, במועד האמור, במחנה הפליטים ג'נין או בסמוך לכך, ביחד עם ███████ הניח 5 מטעני חבלה במדלים שונים בכניסה למחנה הפליטים ג'נין במטרה לפגוע בטנקים של צה"ל ולמנוע חברות צה"ל מלהיכנס לג'נין.

**פרט שלושים וארבעה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר תוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בכביש המוביל לדותן בסמוך לכפר ערבה, ביחד עם ███████ הניח מטען חבלה במטרה לפוצצו לגרום למותם של נוסעי כלי רכב ישראליים העוברים בכביש הנ"ל. לאחר שהנאשם וחברו הנ"ל הבחינו בג'יפ של צה"ל, השניים הפעילו את מטען החבלה חנ"ל בכוונה לגרום למותם של חיילי צה"ל שנסעו בג'יפ הנ"ל. מטען החבלה הנ"ל התפוצץ ורק בנס לא נגרם נזק.

**פרט שלושים וחמישה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף חודש מאי 2002 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם חנ"ל, במועד האמור, בעת שהיה בשכם, שוחח באמצעות טלפון עם ███████ פעיל ב"תנזימ" של הפת"ח ברמאללה. ███████ מסר לנאשם כי הוא, ביחד עם ███████, ביצע פיגוע ירי בסמוך לרמאללה וכתוצאה מפיגוע הירי חנ"ל נהרג אזרח ישראלי. ███████ ביקש כי הנאשם ישוחח עם ███████, מזכ"ל של ארגון הפת"ח באיזור, ויודיע לאחרון על הפיגוע הנ"ל על מנת ש███████ ייטול את האחריות לפיגוע ויעביר כסף למבצעי הפיגוע הנ"ל.

הנאשם התקשר אל ███████ ומסר לאחרון אודות הפיגוע הנ"ל. לאחר מכן, הנאשם יצר קשר עם ███████, מסר לאחרון על שיחתו עם ███████ והורה לו לגשת אל ███████ על מנת למסור לו את פרטי הפיגוע וכן את שמות מבצעיו.

14

ת.פ. 733/02