PLAINTIFF'S
EXHIBIT
366

Israel                                    Defense                                          Forces

| | | |
|---|---|---|
| In the Military Court | Court File: | 3739/02 |
| Beit El | Prosecution File: | 733/02 |
| Before Panel | Detailed Incident Files: | 4934-43/02 Samaria |
| | | 1359/02 Yiftach |
| | | 412/02 Binyamin |
| | | 580/02 Shafet |
| | | 2069/02 Special Duties |
| | | Department Jerusalem |

## In the case between the Military Prosecutor – Prosecuting

### – versus –

Nasser Jamal Mousa Shawish
Identity No. 993006188, born May 25, 1975, resident of Nablus/Ramallah
Under arrest since June 3, 2002

### - the Defendant -

## INDICTMENT

**The above named Defendant is hereby accused of carrying out the following offenses:**

**First Count:**

**Nature of the Offense:** Provision of shelter, an offense pursuant to Section 57 of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, within the Region, at the end of 2000 through the beginning of 2001, or thereabouts, assisted or provided shelter to a person who had committed an offense against security legislation, or who is involved or was involved in any action whose aim is to disturb the public peace, the wellbeing of the Israel Defense Forces and its soldiers, and the existence of public order, or that there are reasonable grounds to suspect that he had done so, whether by providing information, shelter, food, drink, money, clothes, weapons, ammunition, supplies, fodder, transportation, kerosene or other kind of fuel or in some other way, specifically:

[Stamp] P 5: 293

1

The above named Defendant, during the said period, on a number of different occasions, transported persons who were wanted by the Israeli security forces for having carried out lethal terrorist attacks against Israeli civilians and Israel Defense Forces soldiers. Among others, the Defendant transported his brother, █████████████

.1

Prosecution File 733/02

[Stamp] P 5: 293 [continued]

2

## Second Count:

**Nature of the Offense:** Membership and activity in an unlawful association, an offense pursuant to Regulations 84(1)(a) and 85(1)(a) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, from early 2001 and up to the date of his arrest, was a member or acted as member of an organization which is an unlawful association, specifically:

The above named Defendant, during the said period, was a member of the Al-Aqsa Martyrs Brigades ("*Kataib Shuhada al-Aqsa*"), the military wing of the Fatah Tanzim, which is an unlawful association.

The Defendant was recruited into the ranks of the al-Aqsa Martyrs Brigades by his brother, ███████████████

Following his recruitment, the Defendant received the operational nickname "Adham."

The Defendant operated as part of the al-Aqsa Martyrs Brigades as will be described in the following counts of the indictment.

## Third Count:

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, from the end of 2000 and up to the date of his arrest, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, during the said period, on 5 different occasions, in the evening hours, fired a Kalashnikov assault rifle from a distance of 400 meters toward the Israel Defense Forces camp located adjacent to the village of Tayasir, with the intention of causing the deaths of Israel Defense Forces soldiers. Together with the Defendant were ████████████████ ███████ [and] ████████████████ who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

[Stamp] P 5: 294

3

**Fourth Count:**

**Fifth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, during the said period, on a number of different occasions, in the evening hours, fired a Kalashnikov assault rifle from a distance of 400 meters toward the "Bezeq" Israel Defense Forces camp, with the intention of causing the deaths of Israel Defense Forces soldiers. Together with the Defendant were ▬▬▬▬▬▬▬▬▬▬ [and] ▬▬▬▬ ▬▬▬▬ who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

On one of the occasions, the Defendant's accomplice ▬▬▬▬▬ who was together with him at the time of the shooting, was wounded during an exchange of fire with the Israel Defense Forces, which developed there as a result of the shooting by the Defendant and his accomplices.

2

Prosecution File 733/02

[Stamp] P 5: 294 [continued]

4

**Sixth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, together with others, fired a Kalashnikov assault rifle from a distance of 400 meters toward the "Sanur" Israel Defense Forces camp, with the intention of causing the deaths of Israel Defense Forces soldiers. Together with the Defendant were███████████████████████ [and] ████████████ who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

**Seventh Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, about one month after carrying out that attributed to him in the previous count of the indictment, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, during the night, together with ████████████ ████████████████████████████ and one other person, placed four explosive devices, weighing 5 kilograms each, on the main road near Geva. The Defendant and his accomplices placed two explosive devices on each side of the road. After the Defendant and his accomplices had placed the above mentioned explosive devices, they hid by the road.

When the Defendant and his above named accomplices saw an Israel Defense Forces jeep, which was traveling on the above mentioned road and approaching the above mentioned explosive devices, the Defendant and his above named accomplices activated the said explosive devices by means of cellular phones, with the intention of causing the deaths of Israel Defense Forces soldiers who were traveling in the said jeep.

[Stamp] P 5: 295

5

As a result of the detonation of the above mentioned explosive devices, damage was caused to the said Israel Defense Forces jeep.

While carrying out the terrorist attack described above, the Defendant and his above named accomplices were armed with Kalashnikov assault rifles.

### Eighth Count:

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, about one month after carrying out that attributed to him in the previous count of the indictment, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, together with ████████ and ████████ ████ placed an explosive device on the main road adjacent to Arraba, in the vicinity of Mirka, with the intention of detonating it and causing the deaths of Israeli civilians. Subsequently, ████████ returned to Jenin.

The Defendant and ████████ waited there, and when they saw an Israel Defense Forces jeep, they activated the above mentioned explosive device against it, with the intention of causing the deaths of Israel Defense Forces soldiers. As a result of the detonation of the above mentioned explosive device, damage was caused to the said Israel Defense Forces jeep.

During execution of the above mentioned terrorist attack, the Defendant's two accomplices were armed with weapons.

3

Prosecution File 733/02

[Stamp] P 5: 295 [continued]

**Ninth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, about one month after carrying out that attributed to him in the previous count of the indictment, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, together with ███████████ and ███████ ███████ placed an explosive device on the main route leading to the "Tayasir" Israel Defense Forces camp, located in the Jordan Valley, with the intention of causing the deaths of Israel Defense Forces soldiers. The Defendant and his accomplices attempted to activate the above mentioned explosive device against an Israel Defense Forces jeep that passed the place, with the intention of causing the deaths of Israel Defense Forces soldiers, but due to a technical fault, the above mentioned explosive device did not explode. Subsequently, the Defendant and his accomplices collected the unexploded explosive device and returned with it to Jenin.

**Tenth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, during 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

At the said time, ███████                                                                approached ███████████ – the military wing of the Fatah Tanzim, and suggested to the latter to carry out a terrorist attack against Israeli targets. It was decided that the said terrorist attack would be carried out jointly by operatives of the Islamic Jihad and operatives of the al-Aqsa Martyrs Brigades.

The Defendant was recruited by ███████████ for the purpose of carrying out the planned terrorist attack. ███████ recruited ███████████ to carry out the planned terrorist attack.

[Stamp] P 5: 296

The Defendant selected the place for carrying out the planned terrorist attack, and that was the Qusin area. The Defendant rented a vehicle in Nablus, and drove it to Jenin. In Jenin the

7

Defendant met with ████████ and ████████████████ From there, the Defendant and ████████████████ traveled to the place, which the Defendant had selected for carrying out the planned terrorist attack.

Upon arriving at the above mentioned place, the Defendant and ████████████████ placed an explosive device adjacent to the road. The Defendant and his above named accomplice hid themselves near the said place, with the aim of activating the above mentioned explosive device against Israel Defense Forces soldiers and causing their deaths.

The plan of the Defendant and his above named accomplice was not executed, since some Palestinian workers pulled up near the above mentioned explosive device, and the Defendant and his accomplice did not activate the explosive device against an Israel Defense Forces jeep, which arrived at that place, for fear of harming the said workers.

Subsequently, the Defendant came to the place and collected the above mentioned explosive device.

### Eleventh Count:

**Nature of the Offense**: Being in disguise, an offense pursuant to Section 55 of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense**: The above named Defendant, in the Region, at the time stated in the previous count of the indictment, used a disguise in circumstances in which the use of a disguise might harm the public peace, the wellbeing of Israel Defense Forces units, the defense of the region, or the maintenance of public order, specifically:

The above named Defendant, at the said time, carried out that attributed to him in the previous count of the indictment, while disguised as a woman.

4

Prosecution File 733/02

[Stamp] P 5: 296 [continued]

**Twelfth Count:**

**Nature of the Offense**: Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, in the Region, in the middle of 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, conspired with ████████ ████████ to murder two Israeli civilians who, according to the information that had reached the Defendant, came every Saturday to Nablus.

On one Saturday, the Defendant went out with ████████ both of them being armed with M-16 assault rifles, to carry out the planned terrorist attack. The Defendant and his above named accomplice came to Qusin Junction.

The Defendant and ████████ positioned themselves there and waited for the two above mentioned Israeli civilians, with the aim of shooting at them and causing their deaths. The Defendant and his accomplice waited there for about 4 hours, but the above mentioned Israeli civilians did not arrive, and so the Defendant and his accomplice returned to Nablus.

**Thirteenth Count:**

**Nature of the Offense**: Possession of a firearm, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense**: The above named Defendant, in the Region, from the middle of 2001 and up to the date of his arrest, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, possessed a Model-14 handgun, which he had received from ████████ through ████████ this being without a permit granted by or on behalf of the military commander.

[Stamp] P 5: 297

9

At the time of his arrest, the Defendant was carrying the above mentioned handgun, with two magazines full of bullets, and a further 40 bullets for the above mentioned handgun.

**Fourteenth Count:**

**Nature of the Offense**: Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, in the Region, in the middle of 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, for four consecutive days, at the Jenin Refugee Camp or in its vicinity, on a number of different occasions, fired a Kalashnikov assault rifle at Israel Defense Forces soldiers with the intention of causing their deaths. Together with the Defendant were other people: ███████████████████████████████ ███████████████████████████████████ who also fired at Israel Defense Forces soldiers with the intention of causing their deaths.

**Fifteenth Count:**

**Nature of the Offense**: Trading in war materiel, an offense pursuant to Section 2 of the Prohibition Against Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the Offense**: The above named Defendant, in the Region, at the end of 2001 or thereabouts, traded or handled in some other manner war materiel, without a permit signed by or on behalf of the Region commander, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, purchased an M-16 assault rifle from ██████████ for 3,500 Jordanian Dinars, this being without a permit signed by or on behalf of the Region commander. He received the money for purchasing the weapon from ███████

After purchasing the above mentioned weapon, the Defendant transferred it to Jenin, to ██████████ ██████████

5

[Stamp] P 5: 297 [continued]

**Sixteenth Count:**

**Seventeenth Count:**

**Nature of the Offense:** Holding office in an unlawful association, an offense pursuant to Section 85(1)(b) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** the above named Defendant, in the Region, from early 2002 and up to the date of his arrest, managed or assisted in the management of an unlawful association, or held some office or position in an unlawful association, specifically:

The above named Defendant, during the said period, served as coordinator of military activity of the al-Aqsa Martyrs Brigades (*"Kataib Shuhada al-Aqsa"*), the military wing of the Fatah Tanzim, which is an unlawful association, between the regions of Jenin, Tulqarm, Nablus and Ramallah.

**Eighteenth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 5: 298

**Details of the Offense:** The above named Defendant, in the Region, at the beginning of 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

11

The above named Defendant, at the said time, in or near the Jenin Refugee Camp, together with ███████████████████ and others, fired at Israel Defense Forces soldiers with the intention of causing their deaths.

**Nineteenth Count**: **Detailed Incident File 1359/02 Yiftach**

**Nature of the Offense**: Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, both within and outside the Region, on January 25, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  In January 2002, the Defendant was approached by ███████████████ ███████████████, who had previously collected information regarding those places in the State of Israel where a massive terrorist attack could be carried out, and ████████████████████

2.  ████████████ asked the Defendant to assist in transporting a young man who wished to carry out a suicide from his home in the Askar Refugee Camp in Nablus.

3.  The Defendant traveled with ████████████ to the Askar Refugee Camp, where they med the above mentioned young man, who was ███████████████████████

4.  The Defendant and ████████████ transported ████████████ to an apartment in Nablus.

5.  ██████████████ brought ████████████████████████ to the said apartment in Nablus.

6

Prosecution File 733/02

[Stamp] P 5: 298 [continued]

6. To the said apartment also came ▮▮▮▮▮▮▮▮▮ who, together with the Defendant and ▮▮▮▮▮▮ filmed, with a video camera, ▮▮▮▮▮▮ and ▮▮▮▮▮▮ prior to carrying out the planned suicide terrorist attack, with the two latter holding a Kalashnikov assault rifle and an M-16 assault rifle.

7. At the said apartment, ▮▮▮▮▮▮ prepared the explosive device, comprised of 6 kilograms of explosive, for the purpose of executing the planned suicide terrorist attack. ▮▮▮▮▮▮ concealed the explosive device in a television packaging carton.

8. The Defendant and his above named accomplices prepared a plan, under which a combined suicide terrorist attack would be carried out in the vicinity of the Central Bus Station in Torah; ▮▮▮▮▮▮ would detonate the explosive device, which he would be carrying, with the aim of causing the deaths of as many civilians as possible, and in parallel, ▮▮▮▮▮▮ would open fire with a Kalashnikov assault rifle with the aim of causing the deaths of as many civilians as possible, and would continue shooting until he was killed. The planned terrorist attack was the result of cooperation between the military wing of the Palestinian Islamic Jihad organization, which provided the suicide terrorist – ▮▮▮▮▮▮, and the explosive device, and the al-Aqsa Martyrs Brigades – the military wing of the Fatah Tanzim, which provided the second suicide terrorist – ▮▮▮▮▮▮ –and the weapons.

9. The Defendant wanted to teacher ▮▮▮▮▮▮ how to use the Kalashnikov assault rifle, but the latter refused and claimed that he knew how to fire the said weapon.

10. The above named Defendant, during the afternoon, at the request of ▮▮▮▮▮▮, drove the two suicide terrorists – ▮▮▮▮▮▮ and ▮▮▮▮▮▮ with the two equipped with the above mentioned explosive device and a Kalashnikov assault rifle with 4 magazines full of bullets. Traveling together with the Defendant, who was armed with a handgun on this trip, were ▮▮▮▮▮▮ and ▮▮▮▮▮▮ During the journey the Defendant got out of the vehicle and purchased a bag, into which were placed the above mentioned Kalashnikov assault rifle and the magazines, as well as new clothes for the suicide terrorists.

11. In the Zawata area, ▮▮▮▮▮▮ left the Defendant and his accomplices and returned to Nablus. The Defendant, together with his above named accomplices, bypassed the Israel Defense Forces checkpoint located there on foot, and traveled by taxi to Tulqarm. ▮▮▮▮▮▮ traveled in one taxi to "open the road" for the Defendant and the two suicide terrorists.

[Stamp] P 5: 299

13

12. At this stage ████████████ telephoned the Defendant and gave the Defendant the cell phone number of the person who was supposed to assist the Defendant and the above named suicide terrorists by "opening a travel route." The Defendant attempted to call the above mentioned person, but without success.

13. The Defendant and the above mentioned two suicide terrorists arrived in Tulqarm in the evening.

14. The Defendant and the two suicide terrorists stayed in Tulqarm at the home of ████████ ████ whom the Defendant contacted after receiving the cell phone number of the latter from ████████████

15. The next day, on January 25, 2002, in the morning, the Defendant came to the taxi station in Tulqarm, together with ████████████████ and ████████████ with the two suicide terrorists carrying with them the explosive device described above, which was concealed in a television packaging carton, and the Kalashnikov assault rifle with magazines full of bullets, which were in the bag.

16. At this stage, the Defendant left his above named accomplices and returned to Nablus.

17. ████████████ and ████████████████ arrived in Tel Aviv by taxi. There the two of them came to the area of the old Central Bus Station. The two of them decided to carry out the planned terrorist attack in the said location.

18. At around 11:00 a.m., on January 25, 2002, in Neve Shaanan Street in Tel Aviv, adjacent to No. 30, ████████████ activated the explosive device described above, with the intention of causing the deaths of as many people as possible.

19. The above mentioned explosive device exploded, and as a result of its detonation, 28 people were wounded.

20. ████████████ was killed on the spot as a result of detonation of the above mentioned explosive device.

[Stamp] P 5: 299 [continued]

21. ███████████ who according to the plan described above, was supposed to open fire on civilians with the Kalashnikov assault rifle, following detonation of the above mentioned explosive device, with the aim of causing their deaths, was not able to take the said Kalashnikov assault rifle from the bag. When ███████████ realized that he would not be able to open fire immediately, he threw the bag with the rifle and the ammunition away, and attempted to flee from the scene, but was arrested by officers of the Israel Police.

7

Prosecution File 733/02

[Stamp] P 5: 299 [continued]

**Twentieth Count: Detailed Incident File 1359/02 Yiftach**

**Nature of the Offense:** Malicious damage to property, an offense pursuant to Section 53c of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on January 25, 2002, or thereabouts, destroyed property or maliciously and unlawfully damaged it, specifically:

The above named Defendant, at the place stated in the previous count of the indictment, by his actions as described in the previous count of the indictment, caused extensive damage to houses, shops and businesses, which were in the vicinity of the place where the explosive device was detonated by ▅▅▅▅▅▅▅▅ as described in the previous count of the indictment.

**Twenty-First Count:**

**Nature of the Offense:** Trading in war materiel, an offense pursuant to Section 2 of the Prohibition Against Trading in War Materiel Order (Judea and Samaria) (No. 243), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the beginning of 2002 or thereabouts, traded or handled in some other manner war materiel, without a permit signed by or on behalf of the Region commander, specifically:

The above named Defendant, at the said time, in Ramallah or its vicinity, met with ▅▅▅▅▅▅ who requested that the Defendant look after an explosive belt, weighing about 18 kilograms, at his home. The Defendant agreed, and received the said explosive belt from the above named ▅▅▅▅▅

A day later, the Defendant met with the ▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅ ▅▅▅▅▅▅▅ asked the Defendant if he knew of people who were prepared to supply explosive belts. The Defendant informed ▅▅▅▅▅▅ that he had in his possession the above mentioned explosive belt, belonging to ▅▅▅▅ At ▅▅▅▅▅▅ request, the Defendant – during that conversation – called ▅▅▅▅▅▅ and received the latter's consent to give the above mentioned explosive belt to ▅▅▅▅▅▅. ▅▅▅▅▅ informed the Defendant that he would send ▅▅▅▅▅, known as ▅▅▅▅ to the Defendant, to receive the above mentioned explosive belt.

[Stamp] P 5: 300

16

A day later, the Defendant met in Ramallah with the above named ████████ and gave him the said explosive belt.

### Twenty-Second Count: Detailed Incident File 412/02 Binyamin

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, on February 27, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1. The above named Defendant, at the end of January – beginning of February 2002, or thereabouts, met in Nablus with ████████ (hereinafter: ████), the cousin of ████████ who carried out the suicide terrorist attack in Neve Shaanan Street in Tel Aviv on January 25, 2002, with the assistance of the Defendant. ████ expressed to the Defendant.

2. In February 2002, in Ramallah, the Defendant again met with ████,

   s

3. The contacted ████████████████        ████████████, and ████████

4. The Defendant brought ████ to the apartment of his brother, ████████, located in Beituniya. The Defendant brought to that apartment a photographer named ████████, and together with the latter filmed ████ in advance of her carrying out the planned suicide terrorist attack. During the filming, ████ read out a testament.

8

Prosecution File 733/02

[Stamp] P 5: 300 [continued]

17

5. The next day, January 27, 2002, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ and ▌▌▌▌▌▌▌▌▌▌▌ came to the apartment, bringing with them a belt, in which was an explosive device, for the purpose of carrying out the planned suicide terrorist attack.

6. Since ▌▌▌ refused to have a man dress her with the explosive belt, ▌▌▌▌, at the request of the Defendant, who was married to her older sister, dressed ▌▌▌ with the above mentioned explosive belt. When ▌▌▌▌ was putting the explosive belt on ▌▌▌ body, she noticed that one of the shoulder belts of the explosive belt was loose, and she tightened it using a pin.

7. The Defendant and his above named accomplices planed for ▌▌▌ to come to the Israel Police station in Jaffa, and there detonate the explosive device carried on her body, thus causing the deaths of as many Israeli civilians as possible.

8. Subsequently the Defendant's accomplices left the above mentioned apartment, and the Defendant remained there till the evening with ▌▌▌ and ▌▌▌▌

9. ▌▌▌▌▌▌▌ enlisted ▌▌▌▌▌ and ▌▌▌▌▌▌▌▌▌ for the purpose of transporting ▌▌▌ into the State of Israel, so as to carry out the planned suicide terrorist attack there.

10. In the evening hours of that day, the Defendant came, together with ▌▌▌▌▌ and ▌▌▌, carrying the above mentioned explosive device on her body, to the Abu Riya Hospital in Ramallah. Thee they met with ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌ and ▌▌▌▌▌▌.

11. From there the above named accomplices of the Defendant transferred ▌▌▌ to the A-Ram checkpoint. At A-Ram checkpoint, ▌▌▌ got into the blue Subaru, license plate number 7797787, belonging to ▌▌▌▌▌▌▌ and ▌▌▌▌ who came there at the request of ▌▌▌▌▌ and were supposed to transport ▌▌▌ to the Israel Police station in Jaffa so that ▌▌▌ should set off the explosive device, mounted on her body, there, thus causing the deaths of as many Israeli civilians as possible.

[Stamp] P 5: 301

18

12. On January 27, 2002, at around 10:27 p.m., at the Maccabim Israel Defense Forces and Israel Police checkpoint on Road 443, the vehicle in which ████████████ and ████████████ was stopped for inspection by Israel Defense Forces soldiers and Israel Police officers. When ████ realized that she would not be able to get past the above mentioned Maccabim checkpoint, and get into the territory of the State of Israel to carry out the suicide terrorist attack as planned, she set off the explosive device carried on her person, with the intention of causing the deaths of Israel Police officers and Israel Defense Forces soldiers who were at the above mentioned checkpoint.

13. As a result of detonation of the explosive device, which ████ was carrying on her person, an Israel Police officer, ████████████, was seriously wounded in the abdomen, with two more policemen, ████████ and ████████, lightly wounded.

14. ████ was killed on the spot as a result of detonation of the above mentioned explosive device.

**Twenty-Third Count:**

**Nature of the Offense:** Possession of a firearm, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the beginning of March 2002 through the middle of April 2002 or thereabouts, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, was in possession of an M-16 assault rifle, which he has received from ████████████ this being without a permit granted by or on behalf of the military commander.

The Defendant also fired the said M-16 assault rifle during the funeral of the above named ████████████ The Defendant concealed the above mentioned M-16 assault rifle when he fled from Ramallah, following the entry of Israel Defense Forces units into the town.

9

Prosecution File 733/02

[Stamp] P 5: 301 [continued]

**Twenty-Fourth Count**: Detailed Incident File 580/02 Shafet

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 10, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  The above named Defendant, at the beginning of March 2002, in Ramallah or its vicinity,

2.  ██████████████████████████ The Defendant agreed to film the suicide terrorist at the home of his brother, ████████████, located in Beituniya.

3.  On March 9, 2002, the Defendant and ████████████ came to the said apartment in Beituniya. The suicide terrorist, ████████████████████, also came to the said apartment, as did the photographer, ████████████ who had been ordered by the Defendant, and another journalist. During the filming of the suicide terrorist, ██████████ brother of ████████████ was also present.

4.  Subsequently ████████████ traveled, together with ████████████ to the apartment of ████████████ in the al-Amari Refugee Camp. On their way to that location, a helicopter fired a missile at the vehicle. ████████████ managed to flee from the above mentioned vehicle, while ████████████ was killed as a result of the above mentioned rocket strike.

5.  In line with the plant drawn up previously between the Defendant and his accomplices, ████████████ received from ████████████, known as ████████ a Kalashnikov assault rifle, ammunition and two hand grenades, and on March 14, 2002, left Ramallah to carry out the planned suicide terrorist attack, with the aim of causing the deaths of as many people as possible.

[Stamp] P 5: 302

20

6. On March 10, 2002, at around 2:30 p.m., the above named suicide terrorist ████████ ████████ ) attempted to infiltrate into the State of Israel, while armed with a Kalashnikov assault rifle, magazines full of bullets and two hand grenades, this being with the aim of carrying out the planned suicide terrorist attack and intentionally causing the deaths of as many civilians as possible. ████████████ was brought to the A-Ram checkpoint by ████████████████, who was recruited for this mission by the head of the Palestinian Authority's General Intelligence – ████████.

7. At the said place and time, at the A-Ram checkpoint or thereabouts, the above named suicide terrorist, ████████████, was killed by the Israeli security forces when attempting to infiltrate into the State of Israel as a stated above.


**Twenty-Fifth Count: Detailed Incident File 2069/02 Special Duties Department Jerusalem**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1. The above named Defendant, in February 2002, in or near Nablus, met with ████ ████ who asked the Defendant ████████████████ The Defendant agreed to do so, and then ████████████ introduced the Defendant to Mohamed Hashaiqa.

2. The Defendant traveled together with Mohamed Hashaiqa from Nablus to Tulqarm. During the trip, the Defendant understood that Mohamed Hashaiqa was carrying on his person a belt with an explosive device, with the aim of carrying out a suicide terrorist attack. The Defendant and Mohamed Hashaiqa were unable to enter Tulqarm, which was surrounded by Israel Defense Forces troops, and were also arrested by the Preventive Security Service of the Palestinian Authority, after they were informed by Israeli sources that the Defendant and Mohamed Hashaiqa intended to carry out a suicide terrorist attack. Before the two were arrested, the Defendant removed the above mentioned explosive belt from Mohamed Hashaiqa's person.

10

Prosecution File 733/02

[Stamp] P 5: 302 [continued]

3.  Following their arrest, the Defendant and Mohamed Hashaiqa were transferred by the Palestinian Authority to Ramallah, and there released.

4.  Following their release, Mohamed Hashaiqa contacted the Defendant and ▓▓▓▓▓ ▓▓▓▓▓▓▓ and informed them of his willingness to carry out a suicide terrorist attack. The Defendant and ▓▓▓▓▓▓▓▓▓▓ agreed to prepare Mohamed Hashaiqa and to equip him with everything necessary for the purpose of carrying out a suicide terrorist attack within the State of Israel.

5.  Mohamed Hashaiqa told the Defendant and ▓▓▓▓▓▓▓▓▓▓ that he had been approached by ▓▓▓▓▓▓▓▓ who proposed to send Mohamed Hashaiqa to carry out a suicide terrorist attack. ▓▓▓ ▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓ persuaded Mohamed Hashaiqa not to believe i ▓, out of concern that he would hand him over to Israel. The Defendant and ▓▓▓▓▓▓▓▓ persuaded Mohamed Hashaiqa that they would take care of everything necessary so as to send him to carry out a suicide terrorist attack within the State of Israel.

6.  The Defendant found a rented apartment in Ramallah, in which he and his accomplices were to prepare the planned suicide terrorist attack.

7.  The Defendant took ▓▓▓▓▓▓▓▓ and Mohamed Hashaiqa to the said apartment.

8.  At the request of ▓▓▓▓▓▓▓, the Defendant recruited ▓▓▓▓▓▓▓, a resident of Asira Ash-Shamaliya, to carry out the above mentioned suicide terrorist attack, after the Defendant and ▓▓▓▓▓▓▓▓ decided that there would be two suicide terrorists, a man and a woman, who would carry out a double suicide terrorist attack, with the aim of causing the deaths of as many Israeli civilians as possible. ▓▓▓▓▓ also arrived at the said apartment.

9.  In the said apartment, at the Defendant's request, photographer ▓▓▓▓▓▓▓ filmed, with a video camera, Mohamed Hashaiqa and ▓▓▓▓▓▓, prior to their carrying out the planned suicide terrorist attack.

10. At this stage, the Defendant decided that he did not want ▓▓▓▓▓▓ to take part in carrying out the suicide terrorist attack, and he informed her family as to their daughter's intentions. As a result, ▓▓▓▓▓ returned to the Nablus area, from which she fled to Jordan.

[Stamp] P 5: 303

22

11. ████████████████ contacted the office of ████████████, and brought explosives from there. From the said explosives, ████████████ produced an explosive device for the purpose of carrying out the planned suicide terrorist attack.

12. Subsequently, the Defendant and ████████████ prepared the explosive belt.

13. For the purpose of transporting Mohamed Hashaiqa into the State of Israel to carry out the planned suicide terrorist attack, the Defendant enlisted ████████████ who he had previously met through his fiancée, ████████████.

14. On March 20, 2002, the Defendant met in Ramallah with the ████████████. The Defendant informed ████████████ that ████ was about to send a suicide terrorist to carry out a suicide terrorist attack within the State of Israel. ████████████ asked if the Defendant and ████ ████ were in need of anything to execute the planned terrorist attack. Although the Defendant responded negatively to that question, ████████████ gave the Defendant the sum of 600 United States dollars.

15. On March 21, 2002, the Defendant met in Ramallah with ████████████ and with ████████████ ████████████ ████████████

16. On the same day, the Defendant, ████████████ and Mohamed Hashaiqa visited the offices of ████████████ There, ████ ████████████ received from ████████████, money and two hand grenades, for the purpose of executing the planned terrorist attack.

17. With the said money, the Defendant and his above named accomplices purchased clothes for Mohamed Hashaiqa, in which the latter carried out the suicide terrorist attack, which will be described below.

18. Subsequently, the Defendant and his above named accomplices came to the apartment in Ramallah, at which were the above named Mohamed Hashaiqa, ████████ and ████ ████. ████████████ and ████████████ prepared Mohamed Hashaiqa to carry out the planned suicide terrorist attack, and together with the Defendant, they dressed him in the above mentioned explosive belt.

[Stamp] P 5: 303 [continued]

19.  Subsequently, ███████████ contacted ████████████                        n

20.  Some time thereafter, ██████████ came to the Defendant and his above named
     accomplices.

                                            11

Prosecution File 733/02

[Stamp] P 5: 303 [continued]

21. During the afternoon, on March 21, 2002, the Defendant drove from Ramallah to Qalandiya checkpoint in a rented vehicle, taking with him Mohamed Hashaiqa, who wore the above mentioned explosive belt, and ▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇, who accompanied the above named suicide terrorist.

22. Subsequently, after parting from Mohamed Hashaiqa with a kiss, the Defendant returned to Ramallah.

23. ▇▇▇▇▇ and ▇▇▇▇▇▇ took Mohamed Hashaiqa, carrying on his person the above mentioned explosive belt, to King George Street in Jerusalem. The two chose the places since it is full of people during the afternoon, and so the two of them ፡

24. After ▇▇▇▇▇ and ▇▇▇▇▇▇ left Mohamed Hashaiqa in King George Street, Mohamed Hashaiqa came to the crosswalk adjacent to the Aroma café, near the corner of King George and Hahistadrut Streets.

25. At the said location, at approximately 4:20 p.m. on the said day, Mohamed Hashaiqa set off the explosive device, carried on his person, while in a crowd of people, with the aim of causing the deaths of as many civilians as possible.

26. After the Defendant and his accomplices were informed of execution of the planned suicide terrorist attack, the Defendant passed the video tape, with the recorded "testament" by Mohamed Hashaiqa, to journalist ▇▇▇▇▇▇.

27. Subsequently, the Defendant and ▇▇▇▇▇▇▇▇▇ contacted ▇▇▇▇▇▇▇, and they formulated an announcement, in which the ፡ ▇▇▇▇ took responsibility for carrying out the horrific terrorist attack described above. After drawing up the announcement, the Defendant went to the offices of news service ANN, where the Defendant was photographed reading the above mentioned announcement claiming responsibility for the terrorist attack described above.

28. For his participation in carrying out the above mentioned suicide terrorist attack, the Defendant received ▇▇▇▇▇▇, the sum of 1,200 Shekels.

29. By his actions as described above, the above named Defendant, at the said time, intentionally caused the death of the late **Sergeant Major Gadi Shemesh**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described above.

[Stamp] P 5: 304

25

**Twenty-Sixth Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Tzipora Shemesh**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment. **The late Tzipora Shemesh was, at the time of her death, in the fourth month of pregnancy.**

**Twenty-Seventh Count**: Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, at the said time, in the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, intentionally caused the death of the late **Yitzhak Cohen**, who was killed as a result of detonation of the explosive device set off by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

12

Prosecution File 733/02

[Stamp] P 5: 304 [continued]

**Twenty-Eighth Count:** Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, attempted the cause the deaths of as many civilians as possible.

As a result of the detonation of the explosive device operated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment, 81 civilians were wounded.

**Twenty-Ninth Count:** Detailed Incident File 2069/02 Special Duties Department Jerusalem

**Nature of the Offense:** Malicious damage to property, an offense pursuant to Section 53c of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on March 21, 2002, or thereabouts, destroyed property or maliciously and unlawfully damaged it, specifically:

The above named Defendant, at the place stated in the twenty-fifth count of the indictment, by his actions as described in the twenty-fifth count of the indictment, caused extensive damage to buildings and businesses, which were in the vicinity of the said location, and to numerous vehicles, which were in the vicinity of the place described in the twenty-fifth count of the indictment, where the explosive device was detonated by Mohamed Hashaiqa, as described in the twenty-fifth count of the indictment.

[Stamp] P 5: 305

27

**Thirtieth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the end of February – beginning of March 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, in or near Ramallah, conspired with ███████ ███████; and another person, to carry out a shooting terrorist attack at Israeli vehicles in the Atarot region, so as to cause the deaths of Israeli civilians. The Defendant and his three above named accomplices equipped themselves with weapons, and left in their vehicle from Ramallah in the direction of Atarot, so as to carry out the planned terrorist attack there. Due to a breakdown in the vehicle of the Defendant and his accomplices, the planned terrorist attack was not executed.

**Thirty-First Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in March 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.

13

Prosecution File 733/02

[Stamp] P 5: 305 [continued]

**Thirty-Second Count:**

**Nature of the Offense:** Shooting at a person, an offense pursuant to Regulations 58(a) and (d) of the Defense (Emergency) Regulations, 1945

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, was a member of some group or association of persons, one or more of whose members had offended, while a member of that group or association, or was committing the offense of discharging some firearm at any person or any group of people, or any place where people were likely to be, specifically:

The above named Defendant, at the said time, in or in the vicinity of Ramallah, together with others, fired upon Israel Defense Forces tanks.

**Thirty-Third Count:**

**Nature of the Offense:** Placing a bomb, an offense pursuant to Regulation 58(b) of the Defense (Emergency) Regulations, 1945, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, threw or placed a bomb, hand grenade or explosive or incendiary object, with the intention of causing death or injury to a some person or damage to some property, specifically:

The above named Defendant, at the said time, in the Jenin Refugee Camp or its vicinity, together with ██████████████████████ placed 5 explosive devices of varying sizes at the entrance to the Jenin Refugee Camp, with the aim of damaging Israel Defense Forces tanks and preventing Israel Defense Forces units from entering Jenin.

**Thirty-Fourth Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 5: 306

29

**Details of the Offense:** The above named Defendant, in the Region, in April 2002 or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, on the road leading to Dotan, adjacent to the village of Arraba, together with ▮▮▮▮▮▮▮▮ placed an explosive device with the aim of detonating it, to cause the deaths of passengers in Israeli vehicles passing on the said road. After the Defendant and his above named accomplice noticed an Israel Defense Forces jeep, the two of them activated the above mentioned explosive device with the aim of causing the deaths of Israel Defense Forces soldiers traveling in the said jeep. The above mentioned explosive device exploded, and it was only by a miracle that no damage was caused.

### Thirty-Fifth Count:

**Nature of the Offense:** Performing service for an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, in the Region, at the end of May 2002 or thereabouts, performed some work or carried out some service for which is [sic, last two words unnecessary] an unlawful association, specifically:

The above named Defendant, at the said time, when he was in Nablus, spoke by telephone with ▮▮▮▮▮▮▮▮ an operative in the Fatah Tanzim in Ramallah. ▮▮▮▮▮▮▮▮ informed the Defendant that he, together with ▮▮▮▮▮▮▮▮

The Defendant called ▮▮▮▮▮▮▮▮, and informed the latter of the above mentioned terrorist attack. Subsequently, the Defendant contacted ▮▮▮▮▮▮▮▮ informed the latter of the conversation with ▮▮▮▮▮▮▮▮ and instructed him to go to ▮▮▮▮▮▮▮▮ to give him the details of the terrorist attack and the names of its perpetrators.

14

Prosecution File 733/02

[Stamp] P 5: 306 [continued]

30

**Thirty-Sixth Count:**

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, in the second half of May 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, at the said time, met in Jenin with ▇▇▇▇▇▇▇▇

The Defendant met in Jenin with his friend. ▇▇▇▇▇▇▇                                    ▇▇▇▇▇▇▇▇

    As a result, the Defendant again met with ▇▇▇▇▇▇▇  ▇▇▇▇▇▇

The Defendant promised ▇▇▇▇▇▇▇ to look into the matter.

Similarly, during that conversation, the Defendant informed ▇▇▇▇▇▇▇ that there was a shortage of explosives in Nablus. ▇▇▇▇▇▇▇                                     . At

. the end of the conversation, the Defendant and ▇▇▇▇▇▇▇ :

Subsequently, the Defendant met with ▇▇▇▇▇▇▇
▇▇▇▇▇▇▇

[Stamp] P·5: 307

31

The said plans did not come to fruition because the connection between the Defendant and ███████████ was cut off after the Defendant returned to Nablus.

**Thirty-Seventh Count:**

15

Prosecution File 733/02

[Stamp] P 5: 307 [continued]

32

**Thirty-Eighth Count:**

**Thirty-Ninth Count:**

**Nature of the Offense:** Possession of an explosive object, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, from the end of May 2001 and up to the date of his arrest, had in his possession a firearm, ammunition, bomb, hand grenade, an explosive or incendiary device, instrument or device or item designed or capable of causing death or serious injury, without a permit granted by or on behalf of the military commander, specifically:

The above named Defendant, during the said period, at the Alaa a-Din wedding hall in Nablus, or its vicinity, kept an explosive belt [and] two explosive devices in metal containers, and 5 mortar rounds of various calibers, this being without a permit granted by or on behalf of the military commander. The Defendant received the above mentioned items from █████████

[Stamp] P 5: 308

33

**Fortieth Count:**

**Nature** 

16

Prosecution File 733/02

[Stamp] P 5: 308 [continued]

**Forty-First Count:**

**Forty-Second Count:**

**Nature of the Offense:** Damaging the security of the region, an offense pursuant to Section 53(a)(4) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above named Defendant, in the Region, at the end of May – beginning of June 2002 or thereabouts, carried out an act or omission calculated to destroy, damage, interfere with or endanger the security of the area or of the Israel Defense Forces and its soldiers or their activities, or the safe operation, use and security of each of the following: ship, airplane, port, quay, pier, mooring, airport, railway, waterway, road, track, railway engine, carriage, truck or any other means of public transport or public communication or any works, institution or equipment used for or designed for the manufacturing, supply, storage, transporting, transmission or distribution of water, fuel, gas or electricity, or any property of the State of Israel or of the Israel Defense Forces, specifically:

The above named Defendant, at the said time, in Nablus or its vicinity, met with ▇▇▇▇▇▇ who i

▇▇▇▇▇▇ asked that the Defendant photograph the above mentioned suicide terrorists prior to their carrying out the planned suicide terrorist attack, and that he prepare them and equip them with everything necessary for carrying out a suicide terrorist attack. The Defendant agreed to the said proposal.

[Stamp] P 5: 309

35

About three days prior to his arrest, the Defendant met with ███████ at the Alaa a-Din wedding hall in Nablus. ███████ brought with him 8 kilograms of explosive, but the Defendant claimed that the explosives were not sufficient. ███████ provided to bring, as soon as possible, a further amount of explosives.

The Defendant did not manage to assemble the explosive devices for the two above mentioned suicide terrorists, due to the entry of Israel Defense Forces units into Nablus and due to the Defendant's arrest.

**Forty-Third Count:**

[Stamp] P 5: 309 [continued]

36

eli

[Stamp] P 5: 309 [continued]

**Prosecution Witnesses**

1. ████████████████████████████ Investigations Bureau, Samaria. [Took the Defendant's statements of June 3, 2002, and June 18, 2002]

2. ████████████████████████ Investigations Bureau, Samaria. [Took the Defendant's statements of June 10, 2002, and June 27, 2002]

3. ██████████████████████████████ Investigations Bureau, Samaria. [Submitting report on photographic identity lineup and photo board]

4. Transcript of Defendant's remand hearing dated July 17, 2002.

5. Person known as ██████ Israel Security Agency. [Submitting report of transportation and indication + photographs]

6. ████████████████████ [Under arrest]

7. ██████████████████████ [Under arrest]

8. ████████████████████████ [Under arrest]

9. ██████████████████████ [Under arrest] (Prosecution File

10. ███████████████████████ [Under arrest] (Prosecution File ████████

11. ██████████████████████ [Under arrest] (Prosecution File

12. ████████████████████ [Under arrest]

13. ██████████████████████ [Under arrest] (Prosecution

14. ██████████████████████ [Under arrest] (Prosecution File

15. ████████████████████ [Under arrest]

16. ██████████████████████ [Under arrest]

17. ████████████████████ [Under arrest]

18. ████████████████████ [Under arrest]

**Detailed Incident File 1359/02 Yiftach**

19. ██████████████████████ , Yiftach Station. [Submitting action report + action report/memorandum]

20. ████████████████████ Special Investigations Team, Yiftach. [Submitting Memorandum]

21. ████████████████████████ Yiftach Station. [Submitting report on visit to the scene]

[Stamp] P 5; 310

22. ███████████████████████████████████, Bomb Laboratory Tel Aviv [Submitting Form Accompanying Exhibits]

23. ██████████████████████████████ Identification – Yiftach Station. [Submitting photo boards]

24. ████████████████████████████ Identification – Yiftach Station. [Submitting photo boards]

25. ███████████████████ Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

26. ███████████████████████ Latent Fingerprint Development Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting examination report]

27. █████████ Fingerprint Identification Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting expert opinion] (To be summoned only upon the express request of the Defense)

28. ████████████████████ (Details held by the Prosecution) [Eyewitness]

29. Yitzhak Shifra, Identity No. 309605866. (Details held by the Prosecution) [Wounded in the terrorist attack]

30. Haim Gueta, Identity No. 054918941. (Details held by the Prosecution) [Wounded in the terrorist attack]

31. Osnat Gueta, Identity No. 022130140. (Details held by the Prosecution) [Wounded in the terrorist attack]

32. ████████████████ (Details held by the Prosecution) [Son wounded in the terrorist attack]

33. Farhan Albi, Identity No. 035137009. (Details held by the Prosecution) [Sounded in the terrorist attack]

34. Ron Meir, Identity No. 014502983. (Details held by the Prosecution) [Sounded in the terrorist attack]

35. ██████████████████ (Details held by the Prosecution) [Eyewitness, treated the wounded]

36. ████████████████ (Details held by the Prosecution) [Eyewitness, treated the wounded]

37. ██████████████ (Details held by the Prosecution) [Eyewitness, treated the wounded]

[Stamp] P 5: 310 [continued]

38.  Inna Rockawitzin, Identity No. 321153611. (Details held by the Prosecution) [wounded in the terrorist attack]

39.  Gela Chachiashvili, Identity No. 312782550. (Details held by the Prosecution) [wounded in the terrorist attack]

40.  Aharon Yisraeli, Identity No. 027789106. (Details held by the Prosecution) [wounded in the terrorist attack]

18

Prosecution File 733/02

[Stamp] P 5: 310 [continued]

41.  Yitzhak Kazarshvili, Identity No. 011378510. (Details held by the Prosecution) [Wounded in the terrorist attack]

42.  Larisa Gavrilov, Identity No. 303801419. (Details held by the Prosecution) [Wounded in the terrorist attack]

43.  ███████████████████████ (Details held by the Prosecution) [His restaurant was destroyed in the terrorist attack]

44.  ███████████████████████ (Details held by the Prosecution) [His business was destroyed in the terrorist attack]

45.  █████████████ National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Defense)

46.  List of the wounded from the terrorist attack.

47.  Medical documents.

**Detailed Incident File 412/02 Binyamin**

48.  ██████████████████ Binyamin Station. [Testimony]

49.  ██████████████ Binyamin Station. [Testimony]

50.  Mordechi Tal, Identity No. 29501590, Binyamin Station. [Seriously wounded in the terrorist attack]

51.  ████████████████████ (Details held by the Prosecution) [Reserves soldier, was at the checkpoint at the time of the terrorist attack – saw the suicide terrorist]

52.  ██████████████ (Details held by the Prosecution) [Commander of the Reserves force at the checkpoint at the time of the terrorist attack, spoke with the suicide terrorist before the explosion]

53.  ██████████████ (Details held by the Prosecution) [Reserves soldier at the checkpoint at the time of the terrorist attack – inspected the vehicle in which the suicide terrorist traveled]

54.  ██████████████████████ (Details held by the Prosecution) [Arrived on the scene immediately following the terrorist attack]

55.  ████████████████████████ Modiin Station. [Submitting an action report]

56.  ████████████████████ Modiin Station. [Submitting an action report]

57.  ██████████████████ Police National Headquarters, Patrol and Security Branch, Bomb Laboratories Division, Tel Aviv Extension Branch. [Submitting Initial Expert Opinion + Expert Opinion from File 0821-23/2002/ZB + Photographs + Form Accompanying Exhibits] (To be summoned only at the express request of the Defense)

[Stamp] P 5: 311

41

58. ███████████████ Analysis Laboratory, Police National Headquarters – Jerusalem. [Submitting an expert opinion from File 54484/02-33/ZB] (To be summoned only at the express request of the Defense)

## Detailed Incident File 580/02 Shafet

59. ███████████████ Border Guard Sivan, Company 42. (Details held by the Prosecution) [Testimony]

60. ███████████████ Border Guard Lavi. (Details held by the Prosecution) [testimony]

61. ███████████████ Border Guard Lavi. (Details held by the Prosecution) [testimony]

62. ███████████████ Border Guard Lavi. (Details held by the Prosecution) [testimony]

63. ███████████████ Special Duties Department, Central Unit – Jerusalem. [Submitting an Action/Seizure and Marking Report + Form Accompanying Exhibits]

64. ███████████████, Criminal Identification Department – Zion Station. [Submitting Photo Boards]

65. ███████████████, Special Duties Department, Central Unit – Jerusalem. [Submitting a Memorandum + Polaroid pictures]

## Detailed Incident File 2069/02 Special Duties Department Jerusalem

66. ███████████████ Bomb Laboratory – Police National Headquarters, Jerusalem. [Submitting a Seizure and Marking Report + Expert opinion] (To be summoned only at the express request of the Defense)

67. ███████████████ Analysis Laboratory, Police National Headquarters – Jerusalem. [Submitting an expert opinion] (To be summoned only at the express request of the Defense)

68. ███████████████ Criminal Identification Department, Zion Station – Jerusalem. [Submitting photographs from the scene of the incident]

69. ███████████████ (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]

70. ███████████████ (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]

71. ███████████████ (Details held by the Prosecution) [Identification of the body of the late Gadi Shemesh]

[Stamp] P 5: 311 [continued]

42

72. ██████████████████████ (Details held by the Prosecution) [Identification of the body of the late Tzipora Shemesh]

73. Lior Mika, Identity No. 036386753. (Details held by the Prosecution) [Saw the terrorist blow up, wounded in the terrorist attack]

74. Ilan Bauer, United States Passport No. 700767376. (Details held by the Prosecution) [Was together with his son, a minor, near the terrorist at the time of the explosion, both were wounded]

19

Prosecution File 733/02

[Stamp] P 5: 311 [continued]

43

75. Shiran Darwish, Identity No. 039888862. (Details held by the Prosecution) [Was near the terrorist at the time of the explosion, wounded]

76. Chizkiya Langstein, Dutch Passport No. 115402413. (Details held by the Prosecution) [Wounded in the terrorist attack, saw the terrorist at the time of the explosion]

77. Marion Kampfler, Identity No. 016432148. (Details held by the Prosecution) [Wounded in the terrorist attack]

78. Assi Armoza, Identity No. 051910735. (Details held by the Prosecution) [Wounded in the terrorist attack]

79. Lawrence Salem, Identity No. 312738537. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

80. Tal Cohen, Identity No. 029506270. (Details held by the Prosecution) [Wounded in the terrorist attack]

81. Faizolah Haim Yakobian, Identity No. 011573441. (Details held by the Prosecution) [Wounded in the terrorist attack, damage was caused to her shop]

82. Eli Levy, Identity No. 033643438. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

83. Netanel Gidon, Identity No. 012176707. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]

84. Astrid (Rivka) Gorno, Identity No. 301921169. (Details held by the Prosecution) [Wounded in the terrorist attack]

85. Mazal Hachamov, Identity No. 304119407. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]

86. Bosmat Cohen, Identity No. 061273413. (Details held by the Prosecution) [Slightly wounded, his shop was damaged]

87. Moshe Poch, Identity No. 015776636. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

88. Yaffa Levy, Identity No. 055466924. (Details held by the Prosecution) [Slightly wounded in the terrorist attack]

89. ███████████████████ (Details held by the Prosecution) [Saw the terrorist at the time of the explosion]

90. ███████████████████ (Details held by the Prosecution) [Was near the location of the explosion]

91. ███████████████████ (Details held by the Prosecution) [Eyewitness, treated the wounded]

92. ███████████████████ (Details held by the Prosecution) [Damage caused to his shop]

[Stamp] P 5: 312

93. ███████████ National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Prosecution)

94. ███████████ National Institute for Forensic Medicine. [Submitting an expert opinion] (To be summoned only at the express request of the Prosecution)

95. Death Certificate – the late Yitzhak Cohen.

96. A list of those wounded in the terrorist attack from the Municipality of Jerusalem – Call Center 106. (Institutional record)

97. Medical documentation.

An additional list of witnesses relating to those wounded in the terrorist attack on King George Street in Jerusalem on March 21, 2002, will be provided during the course of the trial.

[Signature] *Olga / for*
Michael Kotlik, Captain
Military Prosecutor

Date: September 12, 2002
Reference: 733-02

20

Prosecution File 733/02

[Stamp] P 5: 312 [continued]

45

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                    Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                    Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P5: 293-312.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P5: 293-312.

Rina Ne'eman

ss.: New Jersey

On the [081] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014


Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
LD# 2322794

צבא     הגנה -     לישראל

בבית   המשפט,   הצבאי       ותיק ביהמ"ש : 3739/02
בבית        אל           ותיק תביעה : 733/02
בפני        הרכב        ותיק פ.א. : 4934-63/02 שומרון
                  1359/02 יפתח
                  412/02 בנימין
                  580/02 שפט
                  2069/02 מתיים ג-ס

**במשפט שבין התובע הצבאי - המאשים**

**- נ ג ד -**

נאצר גמאל מוסא שונש
ת.ז. 993006188, יליד 25.05.75, תושב שכם/רמאללה
עצור מיום 03.06.02

**- הנאשם -**

**כ ת ב - א י ש ו ם**

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט ראשון:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ל-1970:

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך סוף שנת 2000 - תחילת שנת 2001 או בסמוך לכך, עזר או נתן מקלט לאדם שעבר עבירה על תחיקת ביטחון או אשר עסק או היה עוסק בכל מעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על ידי מתן ידיעות, מחסה, מזון, משקאות, כסף, בגדים, נשק, תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מכל סוג שהוא ובין בדרך אחרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, במספר הזדמנויות שונות, העביר אנשים אשר היו מבוקשים לכוחות הביטחון הישראליים בגין ביצוע פיגועים קטלניים נגד אזרחים ישראליים ██████████████████████
וחיילי צה"ל, בין היתר, הנאשם העביר את אחו • ██████████████████

P 5: 293

## פרט שני:

__מהות העבירה:__ חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א)
לתקנות חתסנה (שעת חירום), 1945.

__פרטי העבירה:__ הנאשם הנ"ל, באזור, החל מראשית שנת 2001 ועד ליום מעצרו, היה חבר או פעל
כחבר בארגון שהוא התאחדות בלתי מותרת, דהיינו: ████
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר ביחידי"ז חללי אלאקצא" (=כתאיב שותאדא
אלאקצא), הזרוע חובאית של "תנתזמיו" של הפתיח, שהיא התאחדות בלתי מותרת.
הנאשם בתב לשורות "יחידי"ז חללי אלאקצא" על-ידי אחיו ████
לאחר גיוסו הנאשם קיבל כינוי פתחא "אדרהם"
הנאשם פעל במסגרת "יחידי"ז חללי אלאקצא" במי שיתואר בפרטו האישום הבאים.

## פרט שלישי:

__מהות העבירה:__ נסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970)- וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון (מס' 225), תש"ח-1968).

__פרטי העבירה:__ הנאשם הנ"ל, באזור, החל מסוף שנת 2000 ועד ליום מעצרו או בסמוך לכך, נסה
לגרום בכוונה למותו של אדם, דהיינו: ████
הנאשם הנ"ל, במהלך התקופה האמורה, ב-... הזדמנויות שונות, בשעות הערב, ירה ברובים
קלצ'ניקוב ממרחק של 400 מטר לעבר מתבר צהי"ל חומצא בסמוך לפבר תיאסיר בכוונה לגרום
למותם של חיולי צהי"ל. ביחד עם הנאשם היה ████ ████ ████
גם ████ ירו לעבר חיולי צהי"ל בכוונה לגרום למותם. ████ ████ אשר

## פרט רביעי:

__מהות העבירה:__ ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה
והשומרון (מס' 378), תש"ל-1970).

__פרטי העבירה:__ הנאשם הנ"ל, באזור, במהלך שנת 2001 או בסמוך לכך, ייצר כלי-ירייה,
תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שחונעקנה בידי מפקד צבאי או מטעמו,
דהיינו:
הנאשם הנ"ל, במהלך תקופה האמורה, בשבם ובגינין או בסמוך לכך, במספר הזדמנויות שונות,
ייצר מטעני חבלה, וזאת ללא תעודת היתר שחונעקה בידי מפקד צבאי או מטעמו.

## פרט חמישי:

__מהות העבירה:__ נסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970)- וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון (מס' 225), תש"ח-1968)-.

__פרטי העבירה:__ הנאשם הנ"ל, באזור, במהלך שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה
למותו של אדם, דהיינו:
הנאשם הנ"ל, במהלך תקופה האמורה, במספר הזדמנויות שונות, בשעות הערב, ירה ברובה
קלצ'ניקוב ממרחק של 400 מטר לעבר מחנה צהי"ל "יבקין" בכוונה לגרום למותם של חיולי צהי"ל.
ביחד עם הנאשם היה ████ ████ אשר גם הם ירו לעבר חיולי
צהי"ל בכוונה לגרום למותם.
באחת ההזדמנויות, חברו של הנאשם, אשר היה ביחד יחד עם בומן הירי,
במהלך חילופי האש עם צהי"ל שהתפתחה במקום בעקבות הירי של הנאשם וחברו, נפגע
████

2

**פרק שישי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון (מס' 225, תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ניסח לגרום למותם המותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם אחרים, ירה ברהסייך קלצעניקוב לעבר מחנה צה"ל שבאיזור■■■■ ממרחק של 400 מטר, בכוונה לגרום למותם של חיילי צה"ל. ביחד עם הנאשם היו ■■■■■■ אשר גם הם ירו לעבר חיילי צה"ל במשטרה

גרמו למותם.

**פרק שמיני:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א), 19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון (מס' 225, תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001, כהדרש לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, בשעות הלילה, ביחד עם ■■■■■■ ואח"ם נוסף, הגיע ארצעה משטעני חבלה במשקל 0.5 קינ כל אחד בכביש הראשי מראשר הסמוך לכביש■■■■■ וחבריו הניחו את הנגנו נוסף מטעני חבלה מכל צד של הכביש. לאחר שהטאשם וחבריו הניחו את מטעני החבלה הנ"ל, הם הסתתרו בסמוך לכביש. בעת שהנאשם וחבריו הניחו הבוני בגוף של צה"ל, אשר נסע בכביש הנ"ל והתקרב אל מקומו התחבלה הנ"ל, הפאשם וחבריו הפעיל הפעילו את מטעני החבלה הנ"ל. באמצעות מכשירי טלפון סלולריים בכוונה לגרום למותם של חיילי צה"ל, אשר נסעו בג'יפ הנ"ל, כתוצאה מפיצוץ מטעני החבלה חיילי נגרם נזק לג'יפ ולחיילי צה"ל הנ"ל. במהלך ביצוע חבלות מעני■■■■■ הנאשם וחבריו הנ"ל חזו המשושים ברוסי"רין קלצע'ניקוב.

**פרק שמיני:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיפים 14(א), 19- לצו בדבר כללי האחריות לעבירה (יהודה והשומרון (מס' 225, תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001, כהדרש לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במועד האמור, ביחד עם ■■■■■■ חניה מטעון חבלה בכביש הראשי הסמוך לג'ראבוך, באיזור מרקמת, בכוונה למצוצו ולגרום למותם של אזרחים ישראלים.■■■■■ חזר מכן, ■■■■■ הנאשם ■■■■ המתינו במקום ובמשהבהתינו בג'יפ של צה"ל, המפעיל לעבריו את מטעון חבלת הנ"ל, בכוונה לגרום למותם של חיילי צה"ל. כתוצאה מפיצוץ מטעון חבלת חניל נפגע ג'יפ צה"ל האמור. במהלך ביצוע הפגיעות הנ"ל, שני חברי הנאשם היו המשושים בכלי נשק.

3

ת.ת 02/733

**פרט תשיעי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 - וסעיפים 14(א) ו- 19 - לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001, נכונצ'ד לאחר שביצע את המיוחס לו
בפרט האישום הקודם, או בסמוך לכך, ניסם לגרום בכוונה למותם של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ביחד עם ▇▇▇▇▇▇▇▇ , הניח מטען חבלה בציר
הוראאי בסמוך למחנה צה"ל "עינ'סיי". תמצא בבקעת חירדן בסמוך לגרום למותם של חיילי
צה"ל. הנאשם וחבריו הניחו מטען להמעול את מטען החבלה חניל לעבר ג'יפ של צה"ל אשר עבר
במקום, בכוונה לגרום למותם של חיילי צה"ל, אך עקב התקלה, הטכניה מטען החבלה הנ"ל לא
התפוצץ. לאחר מכן, הנאשם וחבריו אספו את מטען החבלה שלא התפוצץ והזרו עמו לניגין.

**פרט עשירי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 - וסעיפים 14(א) ו- 19 - לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך שנת 2001 או בסמוך לכך, ניסם לגרום בכוונה
למותם של אחר, דהיינו:
במועד האמור, ▇▇▇▇▇▇ , פעיל צבאי בריגאד אסלאמי פלסטיני, פנה אל ▇▇▇▇,
▇ פעיל צבאי בביר ביג'אדזי חללי הצבאית של "חזבאללה" - חורבע הצבאית של הפתיח,
הציע לאחרון לבצע פיגוע נגד מטרות ישראלית. הוחלט כי הפיגוע חניל יבוצע במשוחר על-ידי
מפני הוגיהתד האסלאמי ומעלי יחדוו חללי אלאקצאי.
הנאשם ג'יים עבור ▇▇▇▇▇▇ , ▇▇▇▇ ביצוע הפיגוע ותמנוכו על-ידי ג'יים לביצוע הפיגוע
המתוכבן אתד ▇▇▇▇▇▇▇▇
הנאשם כתר את המקום לביצוע הפיגוע חמתוכנ ותהא אזור קנצין. הנאשם שכר בשבם רכב ונסע
עמו לניגין. בניגין הנאשם נפגש עם ▇▇▇▇▇▇▇▇▇▇ שם, הנאשם ו
נוסעו אל המקום, אשר אונו בחר הנאשם ▇▇▇▇ לצורך ביצוע הפיגוע המתוכנן. הנאשם ▇▇
בתכנאם אל מקום חניל, הנאשם ו ▇▇▇▇ חניור מטען חבלה בסמוך לכביש. הנאשם
ותבדו חניל הסתתרו בסמוך למקום חניל במטרה לתפעיל את מטען החבלה חניל לעבר חיילי
צה"ל הנוגעם למותם.
תכניתם של הנאשם וחברו חניל לא יצאה אל הפועל מכוונון שבסמוך למטען חבלה חניל עמדו
ברכלים פלסטינים הנאשם וחברו לא הפעילו את מטען החבלה לעבר הניים של צה"ל, אשר הניע
למקום, מחחשש לפגוע במעולים חניל.
לאחר מכן, הנאשם הניע למקום ואספ את מטען החבלה הנ"ל.

**פרט אחד-עשר:**

**מהות העבירה:** התחפשות, עבירה לפי סעיף 55 לצו הוראות ביטחון (יהודה והשומרון) (מס'
378), תשי"ל-1970 .

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במועד האמור בפרטי האישום הקודם, השתמש בתחפשת
בנסיבות שבהן עלול השימוש בתחפשת לפגוע בשלום הציבור, או בביטחון כוחות צה"ל או
בגונונת של האויחר או בקיום הסדר הציבורי, דהיינו:
הנאשם חניל, במועד האמור, ביצע את המיוחס לו בפרט האישום הקודם כשהוא מחופש לאישה.

**פרט שנים-עשר:**

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל" 0197- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, באמצע שנת 2001 או בסמוך לכך, נסיון לגרום בכוונה למותו של אדם, דהיינו:
הנאשם הנ"ל, בתקופה האמור, בשכם או בסמוך לכך, קשר עם ████ לרצוח שני אזרחים ישראליים, אשר, לפי המזימה שתוכננה לידי הנאשם, מגוילים מדי יום שבת לשכם. באחד מימי השבת, הנאשם יצא ביחד עם ████, כשששניהם חמושים ברוסי"ר 16-M, לצורך ביצוע הפיגוע המתוכנן. הנאשם וחברו הגיעו לצמות קוצין. הנאשם ████ התמקמו במקום והמתינו לשני האזרחים הישראליים הנ"ל. בטרם לירות לעברם ולגרום למותם. הנאשם וחברו המתינו במקום כ-4 שעות, אך האזרחים הישראליים המתינו במקום כ-4 שעות, אך האזרחים הישראליים המ"ל לא הגיעו ולכן הנאשם וחברו חזרו לשכם.

**פרט שלושה-עשר:**

**מהות העבירה:** החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון (מס' 378), תשל"ס1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מאמצע שנת 2001 ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, מצאו, רימון יד או חפצי נפץ או מבעיר, כלי או חפץ או חפצי מתנועכן או מטוטל לגרום מות או חבלה חמורה, ללא תעודה חיתר שחונענקה על ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם חמ"ל, במהלך התקופה האמורה, החזיק באקדח 14, אשר אותו קיבל מ ████ באמצעות ████, וזאת ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.
בעת מעצרו הנאשם נשא את האקדח הנ"ל עם שתי מחסניות מלאות בכדורים ועוד 40 כדורים לאקדח הנ"ל.

**פרט ארבעה-עשר:**

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תשל"ס1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

**פרטי העבירה:** הנאשם חמ"ל, באיזור, באמצע שנת 2001 או בסמוך לכך, נסיון לגרום בכוונה למותו של אדם אחר, דהיינו:
הנאשם חמ"ל, בזמן האמור, במשך ארבעה ימים רצופים, בתחנת דלקיתשמע גיצן או בסמוך לכך, במספר הזדמנויות שונות, ירה ברוס"ר סלניבניקו לעבר חמ"ל צח"ל בכוונה לגרום למותם. בעת עם הנאשם היו אנשים נוספים, ████████████████ אשר גם ירו לעבר היתכי צה"ל בכוונה לגרום למותם.

**פרט חמישה-עשר:**

**מהות העבירה:** סחר בצידי מלחמתי עבירה לפי סעיף 2 לצו בדבר איסור סחר בצידי מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח1968-.

**פרטי העבירה:** הנאשם חמ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בצידי מלחמתי, ללא חיתר הנתון על ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם חמ"ל, בצורה האמורה, בשכם או בסמוך לכך, רכש מ ████ רוס"ר 16-M תמורת 3,500 דינר ירדני, וזאת ללא חיתר חתום על ידי מפקד האיזור או מטעמו. את הכסף לצורך רכישת לאחר רכישת הנשק הנאשם קיבל מידי ████████████, הנאשם העביר העבירה לניגינך לידי

5

ת.פ. 733/02.

**פרט שישה-עשר :**

**מהות העבירה:** סחר בציוד מלחמתי עבירה לפי סעיף 2 לגו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מסי 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על ידי מפקד האיזור או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, בפר קליל או בסמוך לכך, רכש מספר מחסניות ריקות לאקדח זיג זאור מידי אדם בשם ___ ואת ולא היתר חתום על ידי מפקד האיזור או מטעמו, הנאשם רכש את המחסניות האמורות לפי בקשתו של ___ שהוא אחראי ארגון ג'יהאד אסלאמי פלסטיני בג'נין.

**פרט שבעה-עשר :**

**מהות העבירה:** נשיאת משרה בהתאחדות בלתי מותרת; עבירה לפי תקנה 85(1)(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מתחילת שנת 2002 ועד ליום מעצרו, נהל או עזר לתנהלת התאחדות בלתי מותרת, או החזיק במשרה או עמדה בכל שהיא בתאחדות בלתי מותרת, דהיינו :
הנאשם הנ"ל, במהלך תקופת האמורה, שימש כמנהא פעילות צבאית של "גדודי חללי אלאקצא" (ביכללתני שוחאדא אלאקצא"), הזרוע הצבאית של "פתח-תנזים" של הפתיח, שהוא התאחדות בלתי מותרת, בין האיזורים של ג'נין, טול-כרם, שכם ורמאללה.

**פרט שמונה-עשר :**

**מהות העבירה:** נסיון לגרמת מות בכוונה, עבירה לפי סעיף 51(א) לגו בדבר חזראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 - וסעיף 19 לגו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, נסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במהלך הפגנים בג'נין או בסמוך לכך, ביחד עם ___ ואחרים, ירה לעבר חיילי צה"ל בכוונה לגרום למותם.

**פרט תשעה-עשר : ב.א.: 1359/02 יפתח**

**מהות העבירה:** נסיון לגרמת מות בכוונה, עבירה לפי סעיף 51(א) לגו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 - (סעיפים 14(א) ו-19) לגו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.02 או במועד הסמוך לכך, נסה לגרום בכוונה למותו של אחר, דהיינו :

1. בתאריך ינואר 2002, פנו אל הנאשם רבע רפיק אבן רוב, פועל צבאי בכיר בארגון ג'יהאד אסלאמי פלסטיני, אשר אסף סכום מידע לגבי המקומות במדינת ישראל שבהם ניתן לבצע פיגוע חופת, ___

2. ביקש כי הנאשם יסחר בהעברת הצעיר שמבקש להתאבד מביתו במ.ס. עסקי שבעתכם ___

3. הנאשם נסע עם ___ למתנת הפליטים עסקר. שם נפשמו עם הצעיר הנ"ל שהוא ___

4. הנאשם ד___ העבירו את ___ לדירח בשכם.

5. ___ הביא לדירה האמורה בשכם את ___

P 5: 298

6. לדירת האמורה הגיעו גם █████ ,אשר ,ביחד עם הנאשם ו█████ ,פילס
באמצעות מצלמת וידיאו את █████ ואת █████ לקראת ביצוע פיגוע
ההתאבדות המתוכנן ,וזאת כאשר השניים מחזיקים ברובי״ר קלצ׳ניקוב וברוסי״ר M-16.

7. ██████ הכין בדירה האמורה מטען ״חתבלה, המורכב מ־ ״קייג׳ של חומר נפץ, לצורך
ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. ██████ הסתיר את מטען החבלה
בתוך קרדון טלוויזיה.

8. הנאשם והבריו הניעו ערב ׳ כמגית, אשר לפניה יוצעו פיגוע ההתאבדות משולב בּאיזור
התחנה המרכזית בתל־אביב: █████ יפוצץ את מטען ״חתבלה, אשר אותו
יישא, במכונית לגרם למותם של אזרחים רבים בכל הענין, ובמקביל יפתה
באש ברובה״ר קלצ׳ניקוב במטרה לגרום למותם של אזרחים רבים בכל הענין, וימשיך
לירות עד שוהמת █████ החפגנע המתוכנן היה פרי שיתוף פעולה בין הפעל חטבים של ארגון
הג׳האד אסלאמי פלסטיני, אשר סיפק את הממתל הממתכני ־ █████ , ואת
מטען החבלה, לבין ״יגדודי חללי אלאקצא״ ־ הפל הצבאי של ״חתנוצוד של הפתיח, אשר
סיפק את הממתל המתאבד השני ־ █████ , ואת כלי הנשק.

9. הנאשם בקש ללמד את הבאנא שלהמו להשומש ברובי״ר קלצ׳ניקוב, אך האתנ׳ו סירב
וטען כי יודע לירות בבלי־חמשק החיל.

10. הנאשם ה״ניל, בשעות אחרי הצהרים, על־פי בקשתו של █████ , הסיע את שני
הממתבלים המתאבדים ־ █████ ״כאשר ״השניים מצוידים
במטען החבלה ה״ניל וברומה״ר קלצ׳ניקוב עם 4 מחסניות מלאות בכדורים. ביחד עם
הנאשם, אשר היה חמוש בממל״ר תנטיעה ה״ניל באקדח, נטעו גם █████
█████ . במטחי הנטיעה הנאשם ירד מהרכב ורט טיק, אשר לתוכו הכניס רוסי״ר
קלצ׳ניקוב ה״ניל התמחסניות, וכן בדים חדשים עבור הממתבלים המתאבדים.

11. █████ ,ביחד עם חבריו באיזור ההאראד █████ עזב את הנאשם ו██████
ה״ניל עקבו בדגל את מחסום עצ״חיל הנמצא במקום ונסעו במכונית לטול־כרם.
נסע במכונית אחת על פני █████ ,ולפנות את הדרך לנאשם ולשני הממתבלים המתאבדים.

12. בשלב מזת התנקשל אל הנאשם █████ וּנסה לנאשם מספר הטלפון הסלולרי של
האדם, אשר היה אמור לספי׳ לנאשם █████ ותומתבלים המתאבדים ה״ניל ב״פתיחת ציר
התנועהי. הנאשם נסה לחתקשר אל מאדם חנ״ל, אף ללא הצלחה.

13. הנאשם ושני הממתבלים המתאבדים הנ״ל הגיעו לטול־כרם בשעות הערב.

14. הנאשם שני המתאבלים המתאבדים לנו בטול־כרם בביתו של █████ מנ׳ך שמט, אשר עמו
הכר הנאשם קשר לאחר שקיבל את מספר הטלפון הסלולרי של האחרון מרומ׳ו אבו רוב.

15. למחרת היום, 25.01.02, בשעת תצוקר הנאשם הגיע למחנת המוניות בטול־כרם ביחד עם
פנשאם עמם את מטען ״חתבלה המתואר לעיל, אשר ״הית מחסר לבי מתרבלים המתאבדים
ורוסי״ר קלצ׳ניקוב עם 4 מחסניות מלאות בכדורים, אשר הית בתוך טיק.
בשלב הזה, הנאשם מטרד מתרביו. תמ׳ל וחזר לשכם.

16. █████

17. התחנה המרכזית השום. השניים מחליטו לבצע את הפיגוע המתוכנן במקום האמור.

18. במתך לשעה 11:00 , ביום 25.01.02, ברחוב גווה שענו בתל־אביב, בסמוך לבית מסי׳ 30,
הפעיל את מטען החבלה המתואר לעיל בכוונה לגרום למותם של
אנשים רבים בכל האנשאר.

19. מטען ״חתבלה ה״ניל התפוצץ וכתוצאת מפיצוצו נפצעו 28 אנשים.

20. █████ נגרם במקום כתוצאת מפיצוצו מטען חתבלה ה״ניל.

21. █████ ,אשר לפי תכנונו המתואר לעיל היה חייב לאחר לפתוח בירי ברוסי״ר קלצ׳ניקוב
לצטר האזורים לאחד פיגוע מטען החבלה ה״ניל בכוונה לגרום למותם, לא הצליח להוציא
את רוסי״ר קלצ׳ניקוב ה״ניל מהמיק, משחיכך █████ לא יכול לפתוח בירי כאפור
מידיי, הוא השליך את התיק עם הרובה ונתחמשוש וניסה לתימלט מהמקום, אך מצר
על־ידי שוטרי משטרת ישראל.

ת.ת, 733/02

P 5: 299

**פרט עשרים:** ת.פ. 1359/02 יפתח

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 453 לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), התשל"ם-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.02 או במועד הסמוך לכך,
חרף רכוש או פגע או במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט
האישום הקודם, גרם נזק רב למכונית, חנויות ובתי-עסק, אשר חזר סמוכים למקום שבו הופעל
מטען הצובלה על-ידי ■■■■■■■■■■ה. כפי שתואר בפרט האישום הקודם.

**פרט עשרים ואחד:**

**מהות העבירה:** סחר בציוד מלחמתי עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(יהודה ושומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה
אחרת בציוד מלחמתי, ללא מתור חתום על ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, נרגאללה או בסמוך לכך, נפגש עם ■■■■■■■ אשר ביקש כי
הנאשם ישמור אצלו תגורת נפץ במשקל של 18- ק"ג. הנאשם הסכים והעביל מידי ■■■
חומר אל חנורת הנפץ ומטר האמורה.
לאחר יום, הנאשם נפגש עם ראש "התנזים" של הפתיחה באיזור, ■■■■■■■■■■■■
שאל את הנאשם אם האחרון מכיר אנשים המפובים לספק תגורת נפץ. הנאשם מסר כי
כי נמצאה ברשותו תגורת הנפץ של ■■■■ לפי בקשתו של
הנאשם התבקש במפתה ■■■ הנ"ל את האחרון
לאחר יום, הנאשם נפגש ברמאללה עם ■■■■■■■■■■■■ האמורה.

**פרט עשרים והשניים:** ת.פ. 412/02 בנימין

**מהות העבירה:** ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), התשל"ם-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 27.02.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בסוף חודש ינואר – תחילת חודש פברואר 2002 או בסמוך לכך, נפגש בשכם עם
■■■■■■■ (להלן: ■■■■■), שהוא בן-דודתו של ■■■■■■■■■■■■ אשר ביקש מפגישי
התאבדות ברחבי גווש שאין בתל-אביב ביום 25.01.02 בסיוע של הנאשם.
הנאשם את רצונו לבצע פיגוע התאבדות.

2. בחודש פברואר 2002, ברמאללה, הנאשם נפגש שוב עם ■■■■ אשר שוב ביקש כי הנאשם
ישלח אותו לבצע פיגוע התאבדות על מנת לגרום למותם של אזרחים ישראלים רבים ככל
הניתן.

3. הנאשם פגח אל ■■■■■■■■■■■■ לדיווח למ"ל כי
שינה בחורה המסכימה לבצע פיגוע ותאבדות. ■■■■ מסר לנאשם כי הוא מסכים
לשלוח את המבותרות האמורה לבצע פיגוע ותאבדות וכי הוא יכין מטען חבלה לצורך כך.
הודיע לנאשם כי עליו לצלם את הבחורה לפני שתצא לבצע פיגוע ותאבדות
המתוכנן.

4. הנאשם הביא את ■■■■■■■ לדירתו של אחיו, ■■■, הנמצאת בביתוניא. הנאשם הכיא
לאוונה חדירת צלם בשם ■■■■■■ ובחיבת עם האחרון צלם את ■■■ לקריאות בצוע פיגוע
התאבדות המתוכנן. במהלך הצילום, ■■■■■■ קרא אללה צוואה.

8

P 5: 300

5. ‏יום למחרת, 27.02.02, הגיעו לדירת החייל ████████, אשר הביאו עמם חגורה, שבה היה מטען חבלה, לצורך הוצאה לפועל של פיגוע התאבדות המתוכנן.

6. ‏מכיוון ש████████ סירבה לכך שגבר ילבוש עליה את חגורת הנפץ, על-פי בקשתו של הנאשם, שהוא עשה לאחותה חגורה, והלבישה על גופה של ████████ את מטען החבלה, בעת של ████████ לבישת החגורה הפעיל הנפץ על גופה של ████████ היא החבלה כיאתה את הצמחות של חגורת הנפץ דופקה והיזיקה/אותה מאמצעות סימה.

7. ‏הנאשם וחבירו החייל תבנו כי תגיע אל תחנת משטרת ישראל ביפו ושם תפרוץ את מטען חפצי שהיא נושאת, על גופה ובכך תגרום למותם של אזרחים ישראליים רבים ככל הניתן.

8. ‏לאחר מכן מבין החיבוב עזבו את הדירה ████████, והנאשם החייל והנאשם נשאר עד שעות הערב עם ████████.

9. ‏גייס לצורך חברותה של ████████ אל תוך מדינת ישראל על מנת שתבצע שם את פעות התתאבדות וממתכנן אנו ████████.

10. ‏בשעות הערב של אותו היום, הנאשם הגיע ביחד עם ████████, אשר נשארו על גופה את מטען החבלה של החייל, לבית החולים ב"אבו-דיס" ברמאללה, שם חם נפשו עם ████████.

11. ‏מסם החביון החייל של הנאשם הוציבורו את ████████ למתחסם א-ראם, כמתחסם א-ראם, ████████ אשר עלתה לרכב סובארו כחול, מ.ר. 7797787 של ████████ לתחנת משטרת ישראל ביפו על מנת שתם ████████ תפעיל את מטען החבלה, אשר חורבנו על גופה, ובכך תגרום בטבועה למותם של אזרחים ישראליים רבים ככל שניתן.

12. ‏ביום 27.02.02, סמוך לשעה 22:27, במתחסם של צה"ל ומשטרת ישראל" "מכבזים" בכביש 443 הלכב שבו נסעו ████████, כי לא הצליח לעבור את מתחסם "מכבזים" החייל, לחויבא משטרת ישראל, מ████████ ████████ עצרו לביקורת על-ידי חיילי צה"ל ושוטרי משטרת ישראל של מדינת ישראל ולבצע את מיגוע ותהתאבדות כפו שתוכנן, היא הפעילה את מטען תחבלה שנשאת על גופה בכוונה לגרום למותם של שוטרי משטרת ישראל וחיילי צה"ל שהיו במתחסם החייל.

13. ‏כתוצאה מפיצוץ מטען החבלה, אשר אותו ████████ נשאה על גופה נפצע באורח קשה שוטר משטרת ישראל, מרדכי טל, בבטנו, שני שוטר נוספים, דוד טכו ושאול כהן, נפצעו באורח קל.

14. ‏████████ נהרגה במקום כתוצאה מפיצוץ מטען תחבלה החייל.

**פרט עשרים והשישה:**

‏**מהות העבירה:** חטיקת כלליירה, עבירה לפי סעיף 53א(א)(1). לצו בדבר הוראאות בטחון (יחודה והשומרון (מסי 378), תשי"ל1970-.

‏**פרט העבירה:** הנאשם החייל, באלזוה, מחל מתחילת חודש מרץ 2002 ועד לאמצע חודש אפריל 2002 בסמוך לכך, ואזהוג ברשומו כלל-ירית, תחמושת, פגדוג, רימון יד או רחפי נפץ או מבגריר, כלי חפץ או דבר המתוכנן או מסוגל לגרום מות או חבלה חמורה, ללא תעדות היזה שהתענקה על ידי מפקד צבאי או מטעמו,7,דהינפו-

‏הנאשם החייל, במהלך החתקופה האמורה, החזיק ב.ב רוסי"ר 16M.A, אשר אותו קיבל מן ████████, ואות ללא תעדות היתר שהונעקה על ידי המקפ צבאי או מטעמו.

‏הנאשם החייל ████████ אף יהה ב רוסי"ר M-16, האמור במהרף הלוויירתו של הסתכר את רוסי"ר 16M-החייל בעת שנמלט מרמאללה בעקבות כניסתם של כוחות צה"ל לעיר,

‏תת. 733/02,

9

P 5: 301

**פרט עשרים וארבעה: ת.פ. 585/02 שפט**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970) וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם החייל, בין באיוור ובין מחוצה לו, ביום 10.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למוותו של אחר, דהיינו:

1. הנאשם החייל, בתחילת חודש פרץ 2002, ברמאללה או בסמוך לכך, נפגש עם ████████████████ מסר לנאשם כי יש/ אדם ████ חמבקש-ל בצע פיגוע ████████████████ בתוך מדינת ישראל במסרה לגרום למותם של אנשים רבים בכל חיזיון.

2. ביקש מהנאשם לסייע בצלום המחבל המתאבד לקראת יציאתו של ████████████ האחרון לבצוע פיגוע התאבדות המתוכנן, הנאשם הסכים לצלם את המחבל המתאבד ████████████ בביתו של אחר, ████████ הנמצא בביתחוניא.

3. ביום 09.03.02 הנאשם ████████████ הגיע לדירה לידירה האמורה בביתחוניא, לדירת האמורה ████████████ הגיע גם המחבל המתאבד שחוא ████████████ וכן הצלם ████████████ אשר הוזמן על-ידי הנאשם, ועיתונאית נוספת, בעת צילומו של המחבל המתאבד ████████████ נכח גם אחר של ████████████

4. ████████████ נסע בניחד עם ████████████ לדירתו של ████████████ במתונה ████████████ הפלסטינים אסמיר. בדירכם למקום החייל, מסוע ירדף טיל לעבור חרכב. ████████████ הספיקו לברוח מהרכב המגיל ואנלו ████████████ נעדיו בתצאבה מפגיעת המגיל החייל.

5. ████████████ קיבל, בתואם לתוכנה שמערכת מוקדם יותר בין הנאשם וחבריו, מדי ████████████ הסכונה ████████████ "רוס/י" קלציניקוב, ותחמושת רבני רימונו-ה ובום 14.03.02 יצא ████████████ שהיתאבדות במסרה לגרום למותם של ████████████ אנשים רבים בכל חיזיון.

6. ביום 16.03.02, בשעותה השעה 14:30 ████████████ המחבל המתאבד החייל (████████████) ניסה ████████████ לחדוד אל, תוך, מדינת ישראל כשהוא ████████████ חמוש ברוס/יר קלציניקוב, בשחמושת מליאות ████████████ בבדירה ושני רימונו-חן, וזאת על מנת לבצע, את פיגוע ההתאבדות המתוכנן ולגרום ████████████ בכוונה למותם של אורחים רבים בכל חיזיון. ████████████ הנבא למחסום איראם על-ידי ████████████ אשר גיוס נמים ושימה זו על-ידי ראש המ"ערן ████████████ וחכללי של ████████████ חרושת הפלסטינית, במחסום` איראם או בסמוד לכך, המחבל המתאבד החייל, ████████████

7. ████████████ במעמד ובשעה האמורים, במחסום` איראם או בסמוך לכך, המחבל המתאבד החייל, נעצר על-ידי כוחות הביטחון הישראליים בעת ניסיון לחדור אל תוך מדינת ישראל כאמור לעיל.

---

**פרט עשרים וחמישה: ת.פ. 2069/02 מוז"ס ז-ם**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970) וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם החייל, בין באיוור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למוותו של אחר, דהיינו:

1. הנאשם חייל, בחודש פברואר 2002, בשכם או בסמוך לכך, נפגש עם ████████████, אשר ████████████ ביקש מהנאשם להעניר אדם עם "יפפצים" לטולי-כרם. הנאשם הסכים ואז ████████████ חנגיש את הנאשם עם המתאבד השאחיקה.

2. הנאשם נסע בניחד עם מחמד השאחיקה משכם לטולי-כרם. במהלך הנסיעה הנאשם חבין כי מתמד השאחיקה נושא על גופו חגורה עם מטען חבלה במסרה לבצע פיגוע ובתאבדות. הנאשם ותמסד השאחיקה לא הצליחו להיככנ לטולי-כרם, אשר היתה מכותרת על-ידי כוחות צה"יל ואף מעברו על-ידי הביטחון המסכל של חדשות הפלסטיינית לאחר שנמסר על-ידי גורמים ישראלים כי השאם ומחמד השאחיקה מתכוונים לחוצא לפועל. פיגוע התאבדות. לפני מעצרם של השנים, הנאשם הוריד מחמד של מחמד השאחיקה את חגורת חנפ-החייל.

10

P 5: 302