3. לאחר מעצרם, הנאשם ומחמד חשאיקה הועברו על-ידי הרשות הפלסטינית לרמאללה ושם שוחררו.

4. לאחר השחרור, מחמד חשאיקה פנה אל הנאשם ואל ▓▓▓▓ והודיע על רצונו לבצע פיגוע התאבדות. הנאשם ו▓▓▓▓ הסכימו להכין את מחמד חשאיקה ולסייע אותו בכל הדרוש לצורך ביצוע פיגוע התאבדות בתוך מדינת ישראל.

5. מחמד חשאיקה סיפר לנאשם ו▓▓▓▓ כי מנה אלון ▓▓▓▓, קצין במודיעין של הרשות הפלסטינית ברמאללה, והציע כי ישלח את מחמד חשאיקה לבצע פיגוע התאבדות. הנאשם ו▓▓▓▓ שכנעו את מחמד חשאיקה שלא להאמין לקצין המודיעין של הרשות הפלסטינית מחשש שיסגיר אותו לידי ישראל. הנאשם ו▓▓▓▓ שכנעו את מחמד חשאיקה כי הם יראגו לכל הדרוש על מנת לשולחו לביצוע פיגוע התאבדות בתוך מדינת ישראל.

6. הנאשם מצא דירת שכורה ברמאללה, אשר בה הוא וחבריו היו אמורים להכין את פיגוע ההתאבדות המתוכנן.

7. הנאשם הוביל אל הדירה האמורה את ▓▓▓▓ ואת מחמד חשאיקה.

8. על-פי בקשתו של ▓▓▓▓ הנאשם גייס את ▓▓▓▓, הנשבת עניירה שמאלית, לביצוע פיגוע התאבדות חניל, וזאת לאחר שהנאשם ו▓▓▓▓ החליטו כי יהיו שני מחבלים מתאבדים, גבר ואישה, אשר יבצעו פיגוע התאבדות כפול וזאת במטרה לגרום למותם של אזרחים ישראלים רבים ככל הניתן. ▓▓▓▓ הגיעה אף היא לדירה האמורה.

9. בדירה האמורה, על-פי בקשתו של הנאשם, הצלם ▓▓▓▓ צילם באמצעות מצלמת וידאו את מחמד חשאיקה ואת סיגנל שולי לקראת ביצוע פיגוע ההתאבדות המתוכנן.

10. בשלב זה, הנאשם החליט כי אינו רוצה בכך ש▓▓▓▓ תשתתף בביצוע פיגוע ההתאבדות, והודיע למשפחתה של האחרונה על כוונותיה של בתם. כתוצאה מכך, ▓▓▓▓ חזרה לאיזור שכם ומשם נמלטה לירדן.

11. ▓▓▓▓ פנה אל משרדו של ראש תמודיעין ברשות הפלסטינית, ▓▓▓▓ והביא משם חומרי נפץ. ▓▓▓▓ ייצר מחומרי הנפץ הנ"ל מטען חבלה לצורך ביצוע פיגוע ההתאבדות המתוכנן.

12. לאחר מכן, הנאשם ו▓▓▓▓ הכינו את חגורת הנפץ.

13. הנאשם גייס גם לצורך העברתו של מחמד חשאיקה אל תוך מדינת ישראל לביצוע פיגוע ההתאבדות המתוכנן את ▓▓▓▓ אשר אותו הכיר קודם לכן באמצעות אורחתו ▓▓▓▓.

14. ביום 20.03.02 הנאשם נפגש ברמאללה עם ראש "יתתנזים" של הפתיח באיזור, ▓▓▓▓. הנאשם מסר ל▓▓▓▓ כי ▓▓▓▓ עומד לשלות מחבל מתאבד לצורך ביצוע פיגוע התאבדות בתוך מדינת ישראל, וביקש לדעת אם הנאשם ו▓▓▓▓ זקוקים לדבר מה לצורך הוצאה לפועל של הפיגוע המתוכנן. למרות שתסתאכם תשיב בשלילה על השאלה הנ"ל, ▓▓▓▓ מסר לנאשם סכום של 5000 דולר אורה"ב.

15. ביום 21.03.02 הנאשם נפגש ברמאללה עם ▓▓▓▓ ועם ▓▓▓▓. ▓▓▓▓ הסביר ל▓▓▓▓ כי עליו להוביל את המחבל המתאבד אל ירושלים על מנת שיבצע שם את פיגוע ההתאבדות המתוכנן וזאת מאחר שהיא מכירח היטב את ירושלים ואת הדרכים המובילות אליה.

16. באותו היום, הנאשם, ▓▓▓▓ ומחמד חשאיקה ביקרו במשרדו של מזכ"ל ארגון הפתיח באיזור, שם, ▓▓▓▓ קיבל מידי ▓▓▓▓ כסף רשני וריכוני-ידי לצורך הוצאה לפועל של הפיגוע המתוכנן.

17. הנאשם וחבריו הנ"ל רכשו בכסף האמור בגדים עבור מחמד חשאיקה, אשר בחם ביצע האחרון את פיגוע ההתאבדות, אשר יתואר בהמשך.

18. לאחר מכן, הנאשם עם חבריו הנ"ל חגע לדירה ברמאללה, אשר בה היו מחמד חשאיקה הנ"ל, ▓▓▓▓. חכינו את מחמד חשאיקה לקראת ביצוע פיגוע ההתאבדות המתוכנן וביחד עם הנאשם תלבישו עליו את חגורת הנפץ הנ"ל.

19. לאחר מכן, ▓▓▓▓ יצר קשר עם ▓▓▓▓ וביקש מהאחרונה לסייע בהעברת מחבל מתאבד לירושלים.

20. לאחר זמן מה, ▓▓▓▓ חגיעה אל הנאשם וחבריו הנ"ל.

21. בשעות הצהריים, ביום 21.03.02, הנאשם חסיע מרמאללה למחסום קלנדיה, ברכב שכור את מחמד חשאיקה שנשא על גופו את חגורת הנפץ הנ"ל וכן את ▓▓▓ שליוו את המחבל המתאבד חנ"ל.

22. לאחר מכן, ולאחר שנפרד בנשיקה ממחמד חשאיקה, הנאשם חזר לרמאללה.

23. ▓▓▓ הובילו את מחמד חשאיקה, אשר נשא על גופו את חגורת הנפץ הנ"ל, לרחוב המלך ג'ורג' בירושלים. השתיים בחרו את המקום מכיוון שהוא הומה אדם בשעות אחרי הצהריים ולכן השתיים התליטו כי הוא "מתאים" לביצוע פיגוע ההתאבדות חמתוכנן.

24. לאחר ש▓▓▓ עזבו את מחמד חשאיקה ברחוב המלך ג'ורג', מחמד חשאיקה הגיע אל מעבר התצוגה הנמצא בסמוך לבית-קפה "ארומה" וסמוך לצומת הרחובות חמלך ג'ורג' וחתסתדרות.

25. במקום האמור, בסמוך לשעה 16:25 ביום האמור, מחמד חשאיקה הפעיל את מטען חחבלה, אשר אותו נשא על גופו, כשהוא נמצא בתוך קהל האנשים וזאת במטרה לגרום למותם של אזרחים רבים ככל שניתן.

26. לאחר שלנאשם וחבריו נודע על ביצוע פיגוע ההתאבדות המתוכנן, חנאשם העביר קלטת וידאו עם "צוואתו" המצולמת של מחמד חשאיקה לידי עיתונאי ▓▓▓

27. לאחר מכן, חנאשם ו▓▓▓ פנו אל ▓▓▓, מזכ"ל ארגון הפת"ח באיזור, ונוסחו חודעה, אשר בה "גדודי חללי אלאקצא", זרוע הצבאית של "חהתנזים" של הפת"ח, נטלו אחריות על ביצוע פיגוע התופת המתואר לעיל. לאחר ערכית ההודעה, הנאשם ניגש אל משרדי חברת החדשות ANN, שם הנאשם צולם כשהוא מקריא את הודעה חנ"ל של נטילת האחריות לפיגוע המתואר לעיל.

28. תמורת השתתפותו בהוצאה לפועל של פיגוע ההתאבדות חנ"ל, הנאשם קיבל מראש הממד"עין הכללי של הרשות הפלסטינית, ▓▓▓ סכום של 1,200 שייח.

29. במעשיו המתוארים לעיל, הנאשם חנ"ל, במועד האמור, גרם בכוונה למותו של רס"מ מ"י שמש זייל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר לעיל.

**פרטי עשרים ושישה:** פ.א. 2069/02 מת"ים י"פ

**מחות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יחודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יחודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דתיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור, בפרט האישום העשרים והמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, גרם בכוונה למותה של ציפורה שמש זייל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום העשרים והמישה. ציפורה שמש זייל היתה בעת מותה בהודש הרביעי להריון.

**פרט עשרים ושבעה:** פ.א. 2069/02 מת"ים י"פ

**מחות חעבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יחודה והשומרון) (מס' 378), תש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יחודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דתיינו:

הנאשם חנ"ל, במועד האמור, במקום האמור, בפרט האישום העשרים והמישה, במעשיו המתוארים בפרט האישום העשרים והמישה, גרם בכוונה למותו של יצחק כהן זייל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום העשרים והמישה.

12

ת.ת. 733/02

פרט עשרים ושמונה: ת.א. 2069/02 מת"ס ו-ס

מהות העבירה: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל1970- וסעיפים 14(א)- ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

פרטי העבירה: הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, ניסה לגרום למותם של אזרחים רבים בכל הניתן. כתוצאה מפיצוץ מטען החבלה שהופעל על-ידי מחמד חשאיקה, כפי שתואר בפרט האישום העשרים וחמישה, נפצעו 81 אזרחים.

פרט עשרים ותשעה: ת.א. 2069/02 מת"ס ו-ס

מהות העבירה: היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל1970- וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

פרטי העבירה: הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 21.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום העשרים וחמישה, במעשיו המתוארים בפרט האישום העשרים וחמישה, גרם נזק כבד לבניינים ובתי-עסק הסמוכים למקום האמור וכן לכלי רכב רבים, אשר חנו בסמוך למקום המתואר בפרט האישום העשרים וחמישה, אשר בו הפעיל מחמד חשאיקה את מטען החבלה, כפי שתואר בפרט האישום העשרים וחמישה.

פרט שלושים:

מהות העבירה: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-.

פרטי העבירה: הנאשם הנ"ל, באיזור, בסוף חודש פברואר - תחילת חודש מרץ 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, קשר עם ▓▓▓▓ ואדם נוסף לבצע פיגוע ירי לעבר כלי רכב ישראליים באיזור ובכך לגרום למותם של אזרחים ישראליים. הנאשם ושלושת חבריו הנ"ל הצטיידו בכלי נשק ויצאו ברכבם מרמאללה לכיוון עטרות על מנת לבצע שם את הפיגוע המתוכנן. עקב התקלה שאירעה ברכבם של הנאשם וחבריו, הפיגוע המתוכנן לא יצא אל הפועל.

פרט שלושים ואחד:

מהות העבירה: ירי לעבר אדם, עבירה לפי תקנה 58(א) ו-(ד) לתקנות ההגנה (שעת חירום), 1945.

פרטי העבירה: הנאשם הנ"ל, באיזור, בחודש מרץ 2002 או בסמוך לכך, חיה חבר לכל קבוצה או חבר של בני-אדם שחבר אחד או יותר מהם עבדו, בומן חיותם חברים לקמוצה או לחבר, או שבני אדם עשויים להימצא בן, דהיינו:

הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ביחד עם אחרים, ירה לעבר הטנקים של צה"ל.

13

ת.ת. 20/1217

**פרט שלושים ושניים:**

<u>מהות העבירה</u>: ירי לעבר אדם, עבירה לפי תקנה 58(א) ו-(ד) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, היה חבר לכל קבוצה או חבר של בני-אדם שחבר אחד או יותר מחם עברו, בזמן היותם חברים לקבוצה או לחבר או עוברים עבירה של ירי בנשק אש על שהוא על כל אדם או על כל קבוצה של בני אדם, או כל מקום שבני אדם עשויים להימצא בו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ביחד עם אחרים, ירה לעבר הטנקים של צה"ל.

**פרט שלושים ושלושה:**

<u>מהות העבירה</u>: הנחת פצצה, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, ירק או הניח פצצה, רימון-יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לאדם כל שהוא או נזק לרכוש כל שהוא, דהיינו:
הנאשם הנ"ל, במועד האמור, במחנה הפליטים גינין או בסמוך לכך, ביחד עם ███████ הניח 3 מטעני חבלה במקומות שונים בכניסה למחנה הפליטים בינין במטרה לפגוע בטנקים של צה"ל ולמנוע מכוחות צה"ל מלהיכנס לעניין.

**פרט שלושים וארבעה:**

<u>מהות העבירה</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970- וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בחודש אפריל 2002 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בכביש המוביל לדותן בסמוך לכפר עראבה, ביחד עם ███████ הניח מטען חבלה במטרה לפוצצו לגרום לפציעתם של נוסעי כלי רכב ישראליים העוברים במקום הנ"ל. לאחר שהנאשם וחברו הנ"ל הבחינו בג'יפ של צה"ל, השניים הפעילו את מטען החבלה הנ"ל בכוונה לגרום למותם של חיילי צה"ל שנסעו בג'יפ הנ"ל. מטען החבלה הנ"ל התפוצץ ורק בנס לא נגרם נזק.

**פרט שלושים וחמישה:**

<u>מהות העבירה</u>: ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בסוף חודש מאי 2002 או בסמוך לכך, עשה עבודה כל שהוא או ביצע שירות כל שהוא בשביל שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, בעת שהיה בשכם, שוחח באמצעות טלפון עם ███████ פעיל ב"תנזים" של הפת"ח ברמאללה. ███████ מסר לנאשם כי הוא, ביחד עם ███████ ביצע פיגוע ירי בסמוך לרמאללה וכתוצאה מפיגוע הירי חניל נהרג אזרח ישראלי. ביקש כי הנאשם ישוחח עם ███████ מזכ"ל של ארגון הפת"ח באיזור, ויודיע לאחרון על הפיגוע הנ"ל על מנת ש███████ יטול את האחריות לפיגוע ויעביר כסף למבצעי הפיגוע הנ"ל.
הנאשם התקשר אל ███████ ומסר לאחרון אודות הפיגוע הנ"ל. לאחר מכן, הנאשם יצר קשר עם ███████ מסר לאחרון על שיחתו עם ███████ והודה לו לגשת אל ███████ על מנת למסור לו את פרטי הפיגוע וכן את שמות מבצעיו.

14

ת.ה. 735/02

P 5: 306

פרט שלושים ושישה:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השניה של חודש מאי 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחיילי' או לפעולתם, שימוש או ביטחונם של כל אחד מאלה: אונה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, טניב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש משמש לייצורם, אסוקתם, החסנתם, העברתם, מסירתם או חפצתם של מים, דלק, גז או השמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

הנאשם חנ"ל, במועד האמור, נפגש בעניין עם ████, אשר הציג את עצמו כפעיל ג'יהאד אסלאמי פלסטיני, וביקש להצטרף אליו בפעילותו נגד המטרות הישראליות. הנאשם נפגש בעניין עם חברו ████, שהוא אמאס במסגד המפליטים ג'נין, וערך בירור לגבי ████ אישך כי ████ הינו פעיל בג'יהאד אסלאמי פלסטיני. בעקבות האמור, הנאשם נפגש שוב עם ████ מסר לנאשם כי יש לו צעיר חמוכן לבצע פיגוע התאבדות וכן כי יש ברשותו וברשות חבריו חומרי נפץ ומטעני תבלה. ████ ביקש להתייעץ עם הנאשם איך ניתן להוציא לפועל פיגוע התאבדות בתוך מדינת ישראל.

הנאשם הבטיח ל████ לבדוק את הנושא.
כמו כן, במהלך השיחה הנ"ל, הנאשם מסר ל████ כי בשכם יש מחסור בחומרי נפץ. ████ מסר כי אין זו בעיה והוא יוכל לספק לנאשם חומרי-נפץ בכמות שהנאשם יבקש. בסוף השיחה הנאשם ו████ החליפו ביניהם מספרי-טלפונים סלולריים. לאחר מכן, הנאשם נפגש עם ████, אשר חסכים להעביר עבור הנאשם חומרי נפץ מג'נין, מ████, לידי הנאשם בשכם.

התכניות האמורות לא יצאו אל הפועל מכיוון שחקשר בין הנאשם לבין ████ נותק לאחר שהנאשם חזר לשכם.

פרט שלושים ושבעה:

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968- וסעיף 67א(ד) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970-.

**פרטי העבירה:** הנאשם חנ"ל, באיזור, בחודש מאי 2002 או בסמוך לכך, קשר עם אדם אחר לעמות בכוח או באיומים או פיתהו, באמצעות תרמית ללכת מן המקום שהוא נמצא בו, וזאת כדי לסחוט או לאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם ████ מזכ"ל ארגון הפתח באיזור. ████ ביקש מהנאשם להקים חוליה בת 3-4 חברים, אשר תבצע פיגועי ירי נגד מטרות הישראליות ובין תחטוף חיילי צה"ל לצורך מיקוח על שחרור אסירים פלסטינים המוחזקים בבתי הכלא בישראל. ████ הבטיח למכן את פעילותו של הנאשם וזאת לאחר שנייר חרשות הפלסטינית יאסר ערפאת יורדה על העברת הכספים לצורך הפעילות חנ"ל.

בעקבות הבקשת חנ"ל, הנאשם נפגש בשכם עם ████ ושוחח עמו על חטיפת חיילי צה"ל ובוקש לדעת אם האחרון מכיר שישח לחטיפת חיילי צה"ל. ████ מסר לנאשם כי חוא מכיר שני יהודים, אשר אצלם עבד. ████ חציע לנאשם לפתות את היהודים חנ"ל להגיע למחסום ליד טיבבת ולחטוף אותם משם בסיוע של תושבי טירה, אשר אותם צלאח הכיר.

בסופו של הדבר, התכניות האמורות לא יצאו אל חמועל מכיוון ש████ לא העביר לידי הנאשם את הכסף, אשר אותו הבטיח, וכן עקב כניסתם של כוחות צה"ל לשכם.

ת.ה. 733/02

P 5: 307

**פרט שלושים ושמונה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מאי 2002 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, שוחח עם ███████████ המכונה "███████" אחיו של ███████, אשר נהרג. ███████ הודיע לנאשם כי הוא תפס את מקום אחיו הנ"ל ומפקד על חוליית מחבלים חמושה 18 איש. ███████ ביקש כי הנאשם יסייע לו בפעולותיו. ███████ אף מסר לנאשם כי לו אדם צעיר שהוא מוכן לבצע פיגוע התאבדות בתוך מדינת ישראל.
בעקבות תבקשת חני"ל, הנאשם מסר ל-███████ את מספר הטלפון של מזכ"ל הפת"ח באיזור, ███████, וזאת לאחר שהנאשם עצמו שוחח עם ███████ הנ"ל וביקש מאחרון לסייע ל-███████ בכל מה שיבקש.

**פרט שלושים ותשעה:**

**מהות העבירה:** החזקת חפץ נפץ, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מסוף חודש מאי 2002 ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, פצצת, רימון יד או חפץ נפץ או מבעיר, בלי או חפץ או דבר שמתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, באולם שמחות "עלאא א-דין" בשכם או בסמוך לכך, החזיק בחגורת נפץ, שני מטעני חבלה בתוך מיכלי מתכת וכן 5 פצצות מרגמה בקוטרים שונים, וזאת ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו. את החפצים האמורים לעיל הנאשם קיבל מידי צאלח אלקנה.

**פרט ארבעים:**

**מהות העבירה:** יצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך התקופה האמורה בפרט האישום הקודם, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, באולם שמחות "עלאא א-דין" בשכם או בסמוך לכך, ייצר מנגנוני הפעלה עבור מטעני חבלה, המתוארים בפרט האישום הקודם, וזאת ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו.
באולם הנ"ל בנקר גם מעיל ניחאד אסלאמי פלסטיני, ███████ המכונה "███████", אשר ביקש לעבוד ביחד עם הנאשם בייצור מטעני חבלה. הנאשם הסכים לשתף פעולה בייצור מטעני חבלה במקום האמור עם ███████ הנ"ל, אשר אותו הכיר דרך ארוסתו - ███████

16

ת.ת 733/02

P 5: 308

פרט ארבעים ואחד:

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968, וסעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם חנ״ל, באיזור, בסוף חודש מאי 2002 או בסמוך לכך, קשר עם אדם אחר ליצר כלי-ירייה, תחמושת, פצצה, חפץ נפץ או מבעיר, ללא העדות היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:

הנאשם חנ״ל, במועד האמור, בשכם או בסמוך לכך, קשר עם ▉▉▉▉▉▉, להקים מעבדה ליצור חומרי נפץ באיזור טירה בתוך מדינת ישראל.

פרט ארבעים ושניים:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בסוף חודש מאי - תחילת חודש יוני 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה״ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של חובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש ליצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה״ל, דהיינו:

הנאשם חנ״ל, במועד האמור, בשכם או בסמוך לכך, נפגש עם ▉▉▉▉▉▉, אשר מסר לנאשם כי יש לו שני מתאבדים המוכנים לבצע פיגוע מתאבדות. ביקש כי הנאשם יצלא את המתאבדים תמתאבדים הנ״ל לקראת ביצוע פיגוע התאבדות המתוכנן וכן כי יכין אותם ויצייד אותם בכל הדרוש לצורך ביצוע פיגוע התאבדות. הנאשם הסכים להצעה האמורה. בשלישה ימים לפני מעצרו, הנאשם נפגש עם ▉▉▉▉▉▉ באולם שמחות "עלאא א-דין" בשכם. ▉▉▉▉▉▉ הביא עמו 8 ק״ג של חומר נפץ, אך הנאשם טען כי חומר נפץ זה איננו מספיק. ▉▉▉▉▉▉ הבטיח להביא בהקדם כמות נוספת של חומר הנפץ. הנאשם לא הספיק להרכיב את מטעני החבלה עבור שני המתאבדים המתאבדים חנ״ל עקב כניסתם של כוחות צה״ל לשכם ועקב מעצרו של הנאשם.

פרט ארבעים ושלושה:

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במהלך חודש מאי - תחילת חודש יוני 2002 או בסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה״ל וחייליו או לפעולתם, שימושם או ביטחונם של כל אחד מאלה: אניה, אוירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של חובלה ציבורית, או תקשורת ציבורית או כל מפעל מוסד, או ציוד המשמש מסוגל לשמש ליצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה״ל, דהיינו:

הנאשם חנ״ל, במהלך התקופה האמורה, היה בקשר טלפוני עם בחורה בשם ▉▉▉▉▉▉, סטודנטית באוניברסיטת חיפה, אשר את פרטיה הנאשם קיבל מפעיל ב"גדודי חללי אלאקצא" ▉▉▉▉▉▉ הנאשם נהג לשוחח עם ▉▉▉▉▉▉ על המצב באיזור. ▉▉▉▉▉▉ הנ״ל ידעה כי הנאשם הינו פעיל צבאי בכיר ב"גדודי חללי אלאקצא" וכי חינו מבוקש לכוחות הביטחון הישראליים. בראשית חודש יוני 2002 הנאשם ביקש מ▉▉▉▉▉▉ להגיע לגינעין להיפגש עמו וזהא הסכימה. באותה עת פנה אל הנאשם ▉▉▉▉▉▉ המכונה "▉▉▉▉▉▉" ושאל אם הנאשם מכיר ותושבי מדינת ישראל המוכנים לסייע בביצוע פיגועים בתוך מדינת ישראל. הנאשם סיפר ל▉▉▉▉▉▉ אודות ▉▉▉▉▉▉ הנ״ל ומסר כי בכוונתו להיפגש עמה בעינין ולבקש ממנה לאתר מקום במדינת ישראל שבו ניתן ליצר חומרי נפץ, לאתר מקומות המתאימים לביצוע פיגועים המוניים, וכן לגייסה אותה לצורך סיוע למחבלים מתאבדים במעברם מהאיזור אל תוך שטחה של מדינת ישראל.

תכניתו הנ״ל של הנאשם לא יצאה אל הפועל עקב מעצרו על-ידי כוחות הביטחון הישראליים ביום 03.06.02.

17

ת.פ. 733/02

עדי התביעה:

1. ███████, לחייק שומרון. [גובה אמרות חשאשס מיום 03.06.02 ומיום 18.06.02]
2. ███████, לחייק שומרון. [גובה אמרות חמאשס מיום 10.06.02 ומיום 27.06.02]
3. ███████, לחייק שומרון. [מגיש דוייח מסדר זיהוי תצלומים ולוח תצלומים]
4. פרוטוקול חארכת המעצר של הנאשם מיום 17.07.02.
5. תמכוצח "███████", שירות הביטחון הכללי. [מגיש דוייח הובלה והצבעה + תצלומים]
6. ███████ (עצור)
7. ███████ (עצור)
8. ███████ (עצורה)
9. ███████ (עצורת) (ת.ת.)
10. ███████ (עצורת) (ת.ת.)
11. ███████ (עצורת) (ת.ת.)
12. ███████ (עצור)
13. ███████ (עצור) (ת.ת.)
14. ███████ (עצור) (ת.ת.)
15. ███████ (עצור) (ת.ת.)
16. ███████ (עצור)
17. ███████ (עצור)
18. ███████ (עצור)

פ.א. 1389/02 יפתח

19. תחנת יפתח. [מגיש דוייח פעולה + דוייח פעולה/זכייד]
20. צחיים יפתח. [מגיש זכייד]
21. ███████, תחנת יפתח. [מגיש דוייח ביקור בזירה]
22. מעבדת חבלה תל-אביב. [מגיש טופס לוואי למוצגים]
23. זיהוי - תחנת יפתח. [מגיש לוחות תצלומים]
24. ███████ זיהוי - תחנת יפתח. [מגיש לוחות תצלומים]
25. מערי מוצגים, מזייפ, מטאייר - ירושלים. [מגיש תעייץ - קבלת מוצגים לבדיקחן (יוזמן לפי דרישה מפורשת של הסנגוריה בלבד)]
26. ███████ חמעבדה לפיתוח ת.א. סמלות, מזייפ, מטאייר יים ירושלים. [מגיש דוייח בדיקות]
27. ███████, המעבדה לזיהוי טביעות אצבע, מזייפ, מטאייר - ירושלים. [מגיש חווייד מומחה (יוזמן לפי דרישה מפורשת של הסנגוריה בלבד)]
28. ███████ (פרטים בתביעה) [עדת ראיה]
29. יצחק שיפרא, ת.ז. 309605866. (פרטים בתביעה) [נפצע בפיגוע]
30. חיים גואטה, ת.ז. 054918951. (פרטים בתביעה) [נפצע בפיגוע]
31. אסנת גואטה, ת.ז. 022130140. (פרטים בתביעה) [נפצעה בפיגוע]
32. אלי דודזוב, ת.ז. 016685893. (פרטים בתביעה) [בנו נפצע בפיגוע]
33. פרחאן אלבז, ת.ז. 035137009. (פרטים בתביעה) [נפצע בפיגוע]
34. רון מאיר, ת.ז. 014502983. (פרטים בתביעה) [נפגע בפיגוע]
35. ███████ (פרטים בתביעה) [עד ראיה, טיפל בפצועים]
36. ███████ (פרטים בתביעה) [עד ראיה, טיפל בפצועים]
37. ███████ (פרטים בתביעה) [עד ראיה, טיפל בפצועים]
38. איגת דוקביצין, ת.ז. 321153611. (פרטים בתביעה) [נפצעה בפיגוע]
39. גלה תחיאשווילי, ת.ז. 12782550. (פרטים בתביעה) [נפצעה בפיגוע]
40. אהרן ישראלי, ת.ז. 027789106. (פרטים בתביעה) [נפצע בפיגוע]

ת.פ. 733/02

16

P 5: 310

41. יצחק קוזרישווילי, ת.ז. 011379510. (פרטים בתביעה) [נפצע בפיגוע]
42. לריסה גבריילוב, ת.ז. 303801419. (פרטים בתביעה) [נפצעה בפיגוע]
43. ████████. (פרטים בתביעה) [המטעידה שלו נתרסח בפיגוע]
44. ████████ (פרטים בתביעה) [עסקו נהרס בפיגוע]
45. ████████ המכון הלאומי לרפואה משפטית. [מגיש חוו"ד מומחה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
46. רשימת הפצועים מהפיגוע.
47. תעודות רפואיות.

**ת.א. 412/02 בנימין**

48. ████████ תחנת בנימין. [עדות]
49. ████████ תחנת בנימין. [עדות]
50. ████████ תחנת בנימין. [נפצע קשה בפיגוע]
51. ████████ (פרטים בתמיעה) [חייל מילואים היה במחסום בעת הפיגוע - ראה את המחבלת המתאבדת]
52. ████████ (פרטים בתביעה) [מפקד כוח מילואים במחסום בעת הפיגוע, שוחח עם המחבלת המתאבדת לפני הפיצוץ]
53. ████████ (פרטים בתביעה) [חייל מילואים במחסום בעת הפיגוע – בדק את הרכב שבו נסעה המחבלת המתאבדת]
54. ████████ (פרטים בתביעה) [הגיע למקום מיד לאחר הפיגוע]
55. ████████ תחנת מודיעין. [מגיש דו"ח פעולה]
56. ████████ תחנת מודיעין. [מגיש דו"ח פעולה]
57. ████████ מסתא"ר, אגף השיטור והביטחון, מדור מעבדות חבלה, שלוחת תל-אביב. [מגיש חוו"ד מומחה דיאשונית וחוו"ד מומחה מתיק זב"ל - 0821/2002 + צילומים + טופס לוואי למוצגים] [יזומן לפי דרישה המפורשת של הסניגוריה בלבד]
58. ████████ המעבדה האנליטית, מטא"י – ירושלים. [מגישה חוו"ד מומחה מתיק ז"ישב"ע – 5448/02] [תזומן לפי בקשה מפורשת של הסניגוריה בלבד]

**ת.א. 880/02 שפט**

59. ████████ מג"ב סיוון בלונץ מז"ב. (פרטים בתביעה) [עדות]
60. ████████ מג"ב לביא. (פרטים בתביעה) [עדות]
61. ████████ מג"ב לביא. (פרטים בתביעה) [עדות]
62. ████████ מגיב לביא. (פרטים בתביעה) [עדות]
63. ████████ מתיים, ימ"ר – י.ס. [מגיש דו"ח פעולה/תפיסת וסימון + טופס לוואי למוצגים]
64. ████████ מו"פ – תחנת ציון. [מגיש לוחות תצלומים]
65. ████████ מתיים, ימ"ר – י.ס. [מגיש זכ"ד + תמונות פולרואיד]

**ת.א. 2069/02 מת"י ז-ם**

66. ████████ מעבדת חבלה, מטא"ר – ירושלים. [מגיש דו"ח תפיסה וסימון + חוו"ד מומחה] [יזומן לפי דרישה מפורשת של הסניגוריה בלבד]
67. ████████ המעבדה האנליטית, מטא"י – ירושלים. [מגישה חוו"ד מומחה] [תזומן לפי דרישה מפורשת של הסניגוריה בלבד]
68. ████████ מז"פ תחנת ציון – ירושלים. [מגיש תמונות מזירת הפיגוע]
69. ████████ (פרטים בתביעה) [זיהוי גופתו של גדי שמש ז"ל]
70. ████████ (פרטים בתביעה) [זיהוי גופתו של גדי שמש ז"ל]
71. ████████ (פרטים בתביעה) [זיהוי גופתו של גדי שמש ז"ל]
72. ████████ (פרטים בתביעה) [זיהוי גופתה של ציפורית שמש ז"ל]
73. ליאור מיקא, ת.ז. 036386753. (פרטים בתביעה) [ראה את המחבל מתפוצץ, נפצע בפיגוע]
74. (אילן באואר, מסי דרכון ארה"ב 750767376. (פרטים בתביעה) [היה יחד עם בנו הקטין סמוך למחבל בעת הפיצוץ, שניהם נפצעו]

17

ת.ת. 10/02/37

P 5: 311

75. שירך דרוויש, ת.ז. 039888862. (פרטים בתביעה) (היתה בסמוך למחבל בעת הפיצוץ, נפגעה)
76. חזקיה לנשטיין, מס׳ דרכון הולנדי 115402413. (פרטים בתביעה) (נפצע בפיגוע, ראה את המחבל בעת הפיצוץ).
77. מריון קמפלר, ת.ה. 016432148. (פרטים בתביעה) (נפגעה בפיגוע)
78. אסי ארמוזה, ת.ז. 051910735. (פרטים בתביעה) (נפצעה בפיגוע)
79. לורנס סלס, ת.ז. 312738537. (פרטים בתביעה) (נפגע קל בפיגוע)
80. טל כהן, ת.ז. 029506270. (פרטים בתביעה) (נפצע בפיגוע)
81. פייוולה חיים ינקובאן, ת.ז. 011573441. (פרטים בתביעה) (נפצעה בפיגוע, גרם נזק לחנותה)
82. אלי לוי, ת.ז. 033643438. (פרטים בתביעה) (נפצע קל בפיגוע)
83. מטאל מעון, ת.ז. 012176707. (פרטים בתביעה) (נפגע קל, חנותו נפגעה)
84. אסטריד (רבקה) גרנו, ת.ז. 301921169. (פרטים בתביעה) (נפצעה בפיגוע)
85. מזל חכמוב, ת.ז. 304119407. (פרטים בתביעה) (נפצעה בפיגוע)
86. בשמת כהן, ת.ז. 061273413. (פרטים בתביעה) (נפצעה בפיגוע)
87. משח פנך, ת.ז. 015776636. (פרטים בתביעה) (נפגע קל בפיגוע)
88. יפת לוי, ת.ז. 055466924. (פרטים בתביעה) (נפגעה קל בפיגוע)
89. ▮▮▮▮▮▮ (פרטים בתביעה) (ראה את המחבל בעת הפיצוץ)
90. ▮▮▮▮▮▮ (פרטים בתביעה) (היתה סמוך למקום הפיצוץ)
91. ▮▮▮▮▮▮ (פרטים בתביעה) (עד ראיה, טיפל בפצועים)
92. ▮▮▮▮▮▮ (פרטים בתביעה) (נגרם נזק לחנותו)
93. ▮▮▮▮▮▮ המכון הלאומי לרפואה משפטית. (מגישה חוו״ד מומחה) (תזומן לפי דרישה מפורשת של התובעה, בלבד)
94. ▮▮▮▮▮▮ חמכון הלאומי לרפואה משפטית. (מגיש חוו״ד מומחה) (יזומן לפי דרישה מפורשת של התביעה בלבד)
95. תעודת פטירה - יצחק בהן ז״ל.
96. רשימת נפגעים מהפיגוע של עיריית ירושלים - מוקד 106. (רשומה מוסדית)
97. תעודות רפואיות.

רשימת עדים נוספת בנוגע לפצועים הדווגים בפיגוע ברחוב המלך ג׳ורג׳ בירושלים ביום 21.03.02 תימסר במהלך המשפט.

מיכאל קוטלק          סרן
תובע                צבאי

תאריך: 12.09.2002
סימוכין: 02-733.

ת.ז 733/02                  20