- In his various statements, the witness elaborates further than the limited account that he provided in his partial testimony before us. We have seen fit to accept the statements of the witness. Inspection of the statements reveals them to be of very great weight. The witness wrote one of the statements in his own handwriting and started to write the other one, but stopped writing it of his free will. The statements were given by the witness after he was duly warned and he signed the bottoms of the statement pages. In the statements, the witness assumes responsibility for vicious, terrible murderous acts, while providing extensive details on the circumstances that preceded their execution. A comparison of the content of the statements to the rest of the evidence material before us, including the statements of the Defendant, which confirms his acquaintance with the witnesses and the transfer of the weapon and the money to him, further supports the weight of the statements of the witness.

Therefore, we have seen fit to accept the statements of the witnesses, both by virtue of the adoption of their content in general, by the witness during his testimony, and by virtue (to the extent that this relates to the contradictions between the account of the witnesses and the written content of his statements) of Section 10A, for the reasons set forth above.

**Prosecution witness Mansour Sharim:**

This witness, who testified before us on November 30, 2003, also bears his share of guilt and is also responsible for a list of vicious murders.

Firstly, we shall address the issue of the request of the prosecution in its summations to accept the statement of the witness pursuant to Section 10A. The request of the prosecution indicates that it had forgotten to submit the statement during the hearing of June 14, 2004, and it now wishes to correct the error. The Defense Counsel objects to submission of the statement at present, because the request is being made after the end of the prosecution case and this represents infringement of the defense of the Defendant.

[Stamp] P 6: 18 [continued]

We can only address, once again, the reference **Judea and Samaria Appeal 114+99/00**, which was mentioned earlier in this verdict in another context, and is also cited by the learned prosecution in its summations. The Appellate Court cites the well-known statements of the late Honorable President Zamora, which seem to have found their place in the pantheon of criminal procedure since having been uttered – as early as in the first criminal appeal that was heard by the Supreme Court of the State of Israel!! Indeed, President Zamora tells us that a criminal procedure is not the same as a chess game in which one wrong move is enough to settle its outcome forever. The Appellate Court has recognized the possibility of summoning witnesses or filing evidence on the part of the prosecution after the end of the procedural stage, even if this means that such motions may be permitted restrictively, even if the prosecution must avoid this, subject to the qualification that this must not impair the defense of the defendant.

In the circumstances of the matter before us, we have not seen a reason to believe that accepting the request of the prosecution, even in the summations stage, is wrong in any way. **First,** there is no doubt that the request of the prosecution was made in good faith and not out of improper tactics. An inspection of the transcript of the hearing of June 14, 2004 will reveal that the prosecution had filed a list of motions for submitting material pursuant to Section 10

[Stamp] P 6: 18 [continued]

Date: June 28, 2005          4          Case No.: 5398/03

A, and there is no doubt that the motion to file the statement of the witness Mansour Sharim had been forgotten inadvertently. **Second**, the request of the prosecution is unsurprising. The prosecution heard the testimony of the witness Mansour Sharim, confronted him with his words in the statement, announced in advance and using clear words its intent to hear the testimony of the taker of his statement Ya'akov Barazani[6], and also heard the testimony of the taker of the statement concerning the circumstances in which the statement was taken (a course that has no other explanation except its wish for the statement of the witness to be submitted pursuant to Section 10A). **Third**, the late motion to submit the statement of Mansour Sharim constitutes no impairment of the defense of the Defendant. The witness testified and was examined by the parties, including a cross examination by Counsel for the Defendant. The Defendant was also given an opportunity to examine the taker of his statement. The Defendant also related in his testimony[7] in the case of the defense to the incrimination of Mansour Sharim **in his statement** and gave an account concerning it. The motion for filing the statement of the witness represents no impairment of the defense of the Defendant.

Having crossed the hurdle of the procedural stage for the filing of the motion, we quickly discover that the conditions prescribed beside Section 10A for admitting the statement are fulfilled in their entirety, for the witness had testified and the parties were given an opportunity to examine him, the giving of the statement was demonstrated, both in the testimony of the witness who identified his statement and the testimony of the taker of the statement, and in view of the existence of material contradictions between the statement and the testimony. We shall now address the question of whether there is reason to prefer the statement over the testimony. Our answer to this question is affirmative and our reasons are as follows:

[Stamp] P 6: 19

---

[6] See transcript of March 30, 2004, page 11 lines 22-23, where it says "taker of the position of Mansour Sharim", should be "statement"
[7] See transcript of the testimony of the Defendant dated June 14, 2004, page 10, lines 12-17

9

A.  The testimony of Mansour Sharim was also confused to the extent that he was requested to give an explanation for the explicit phrases that incriminated the Defendant in his statement, phrases which he asked not to repeat during his testimony. The witness confirmed that he had signed the statement and that the investigator had also read out its content, but asserted his argument that the investigator had written things that were different to what he had said himself when taking the statement. The witness also purported to state with skepticism that the investigator had added things to his statement after it was written before him, but in answer to the question of the Prosecutor, he was not able to elaborate what these things were.

B.  It is best not to discuss the weight of the witness' denial of the things stated against the Defendant in his statement, which was given during the cross examination while the witnesses was parroting answers to a series of blatantly leading questions in accordance with the account that the Defense Counsel put into his mouth.[8] Strangely, without an explanation except for the desire to repeat the account that had been prepared in advance, the Defendant was transformed, during the testimony of Mansour Sharim, from a friend (in the direct examination) to a bad cop (in the cross examination), who had arrested him for the theft of vehicles and treated him roughly, which caused the witness to nurse hard feelings – which account, unsurprisingly, would recur a few sessions later in the statement of the Defendant. Needless to say, these things did not ring true to us in any way.

C.  The witness confirmed in his own words that he was a member of the Al Aqsa Martyrs Organization, and his statements also indicated that he was responsible for a list of vicious murders for the organization, as the holder of a senior position therein. The witness was also able to provide an exact description of the "change of command" chain of the organization in the Nablus area, from Nasser Aweis, through Mahmoud Titi, but when he was asked about the identity of Titi's successor (whom the prosecution claimed to be the Defendant), he suddenly became afflicted with feigned forgetfulness, contended that he did not know the identity of the head of the organization in the Nablus area (to whom he answered himself) and did not make the effort to find out who he was either.

[Stamp] P 6: 19 [continued]

---

[8] See transcript of the testimony of Mansour Sharim dated November 30, 2003, page4.

10

    D.    Sharim Mansour's statement stands in contrast to his incoherent, biased testimony before us. The weight of his statement arises both from the taker of the statement, First Sergeant Ya'akov Barazani – who testified before us on June 14, 2004, and in his testimony denied the arguments of the witness and said that the statement had been taken according to the ordinary rules – and by inspection of the body of the text of the statement itself, which the witness signed after being warned. A reading of the body of the statement and the testimony of the taker of the statement reveals that the statement was based on things that the witness wrote in his own handwriting. It is regrettable that the witness was not allowed to write his statement in his own handwriting, but in the circumstances of the matter, after it was proved to our satisfaction – both from our impression of the witnesses and from a comparison with the remaining evidence material that was put forth before us – that the written text in the body of the statement reflects the words of the witness, which were read out to him before he signed them, we did not believe that there was any flaw in the weight of the statement (see on this matter also the fascinating judgment of the Honorable Judge Colonel Friedman in Judea and Samaria Appeal 1129 + 1136 + 1130 + 1137/04).

Therefore, we have seen fit to reject the testimony of Sharim Mansour and prefer his statement over it.

**Prosecution witness Fahed Sharia**

This witness testified before us on November 30, 2003 and in his testimony hastened to deny the explicit incrimination statement that he provided against the Defendant, in which he described how he drove the Defendant, along with others, to carry out shooting attacks. When he was requested

[Stamp] P 6: 19 [continued]

Date: June 28, 2005                              5                              Case No.: 5398/03

to give an explanation for the explicit incrimination of the Defendant in his statement, he contended that this had been extracted from him using illicit means; that he was forced to sign it; that he was surprised to see the indictment that was filed against him, which included charges to which he had not confessed and so on. We would have made the effort to elaborate the contradictions that arose in the account of the witness on this matter had it not been shown clearly that the witness had kept the procedural arguments concerning the weight of his statements for his testimony in the case of the Defendant only, whereas in his trial[9], he did not raise any of those arguments, and also consented to the submission of his statements, including the statement in question, concerning which he suddenly raised procedural arguments from out of the blue in his testimony. It is also understandable that the procedural arguments of an interviewee concerning his statement, which appear in the trials of others and not in his own trial, are unconvincing.

For all of these reasons, we have seen fit to dismiss the account of the witness concerning his statement, accept his statement (after the conditions set forth in Section 10A have been fulfilled) and prefer it over his testimony.

**Prosecution witness Nasser Aweis**

This witness testified before us on March 30, 2004. Despite strongly incriminating the Defendant, as his accomplice in dispatching the suicide terrorist who carried out the murder on Jaffa Street in Jerusalem and as an accomplice in shooting acts, the witness denied the things in his testimony. The witness also contended that he knew the Defendant by his first name only, despite just the content of his testimony revealing that his acquaintance with him was much more established (all the more so when his statements and those of the Defendant reveal that the two had close ties, and were even expelled from the Area and spent a period in Jordan and Baghdad – see below). The witness explained the fact that he incriminated the Defendant in his statements by claims that he raised against investigator Roni Amar, who forced him to write things (the witness himself did not remember the investigator who interviewed him and did not identify him, but stated that he was a bald police officer), but he was not able to elaborate what whose arguments were ("There was a problem with that investigator. I do not remember the details[10]"). He further contended that he did not recognize his statements that were shown to him or his own handwriting, but these words did not impress us, as the witness barely made the effort to look at the statements before replying.

[Stamp] P 6: 20

---

[9] See the transcript of the trial of the witness (Samaria 5004/03) dated May 4, 2003 and July 16, 2003 **(P 72 + 73)** and the transcript of the remand hearing of December 12, 2002 **(P/ 71)**. The transcripts from the trial of the witness were accepted at the request of the prosecutor in the hearing of June 14, 2004 after the defense counsel left the question to the discretion of the Court and while the transcripts constituted a public certificate that was acceptable without any testimony from its originator.

[10] See transcript of the testimony of Nasser Aweis dated March 30, 2004, page 3 lines 5-10).

Investigator Roni Amar testified before us that he took the statements of the witness and his testimony seemed completely reliable to us. In his testimony, investigator Amar said that he took the statements of the witness Aweis and that he (Aweis) was the one who wrote his statements in his own handwriting (as also indicated by reading the statements themselves). The investigator also denied the argument of the witness that he had given additional statements in which he said other things, which is also shown by inspecting the statements, which bear serial numbers.

Therefore, the testimony of Nasser Aweis, which was confused, arbitrary testimony ("You have it all written down in your files, there is no need to go into detail", "I don't have to answer anyone"[11]) did not impress us as being reliable. The conditions for the submission of his statements to the police pursuant to Section 10A were fulfilled after the witness testified; the fact that statements were given was proved by the testimony of the taker of the statements Roni Amar; and the witness contradicted his statements in his testimony. We have seen fit to prefer the statements over the testimony. In contrast to the confused, unconvincing testimony, we have found his statements to be reliable and weighty. In accordance with that which has been set forth, a reading of the statements reveals that they were given by the witness after he was duly warned and after he had signed the statements, **which he wrote in his own handwriting.** It is further shown that his statements were taken in a positive atmosphere, and that the witness drank coffee and smoked cigarettes while the statements were being taken. The testimony of Roni Amar also reveals that the statements were taken in a standard manner, in cooperation with the witness. In any case, it is noted that a comparison of the testimony of the witness before us and the content of his statements also reveals that in general, he confirmed his responsibility for the attacks on Jaffa Street and at the "Sea Food Market" restaurant in Tel Aviv, confirmed the names of the suicide terrorists whom he dispatched, **in accordance with the content of his statements. In other words, the witness Nasser Aweis himself confirmed the correctness of his statements, except for the part dealing with the Defendant, without a genuine explanation as to why this part was deficient.**

In view of these things, we have seen fit to prefer the statements over the testimony.

[Stamp] P 6: 20 [continued]

---

[11] *Ibid*, page 2 line 16; lines 47-48.

13

Date: June 28, 2005                                6                                Case No.: 5398/03

**Prosecution witness Ibrahim Abdel Hai**

This witness, like the previous witness and most of the witnesses in this case, also confirmed his responsibility for the acts that are attributed to him in his testimony, to which he confessed in his trial and in his statements, he also stated the names of his accomplices, except for one – the Defendant. The prosecution argues that the Defendant acted along with the witnesses in the first stages of the execution of the murderous attack on Jaffa Street (the sixth count of the indictment, Subsections A-E). The witness confirmed, in his testimony, the facts in question in the relevant part of the count of the indictment, except for the part of the Defendant, regarding whom the witness stated that he was not present at the time of filming the suicide terrorist.

It has been found that during his trial, the witness admitted his responsibility for the murderous act on Jaffa Street, and the facts to which he confessed also included the acts that were attributed to him with the Defendant, including the filming of the suicide terrorist. The prosecution asked[12] to file the transcript of the confession of the witness in his trial pursuant to Section 10A, while the Defense Counsel left the request to the discretion of the Court[13]. In our decision of that day, we granted the request to submit the transcript and we shall attach our reasons for doing so below.

The Defense Counsel argued in his summations that the confession of the witness in his trial, in the framework of a plea bargain and without witnesses having been heard, cannot serve as evidence in this trial; however, he did not provide a genuine explanation as to why this was not the case, and did not attach any references to support his argument either. Our opinion in this matter is different. But it is taken as given that an answer of the Defendant to an indictment that is said in the courtroom and that is written in the transcript, constitutes a "statement" of a person in writing that fulfills the conditions of Section 10A (see Y. Kedmi, "**About Evidence**", first part, p. 274, paragraph 4.B.). And not only does the transcript of the confession constitute an outside statement pursuant to Section 10A, but on the face of it, this is a statement of unparalleled reliability that is presumed to have been made freely out of good will and has significant weight, insofar as the witness made it in answer to charges that are directed against him in person while being represented by an advocate. This means that there is no impediment to accepting it pursuant to Section 10A and granting it full weight.

[Stamp] P 6: 21

---

[12] See transcript of the hearing dated June 14, 2004, page 3 lines 24-26.
[13] *Ibid*, page 5 lines 36-37.

14

The argument of the witness in his testimony[14] that the indictment had been read to him in general terms, in outlines only and without the names having been mentioned is far from being the truth, as the transcripts from his trial prove. An inspection of the transcript of the trial of the witness in Case 6446/02 dated December 19, 2002 (**P/ 68**) reveals that the indictment had been read to the witness (the defendant in that case) in full, in view of the fact that he was not represented at that stage and refused to accept representation for himself (see the decision of the Court in that hearing, page 2). The witness / Defendant also started to provide a detailed answer, which proved that his testimony before us that the indictment had not been read out to him in full was a complete lie. An inspection of the transcript of the confession of the witness in his case dated June 29, 2003 (**P/ 69**) will reveal that after a few months, the witness changed his mind and confessed to an amended indictment while he was being represented. This time too, the nature of the indictment in our case was made clear to the witness. The witness pled guilty to the indictment in clear words, which were stated both by his Defense Counsel and by him in person. The Defense Counsel asked in his summations to rely on the fact that the witness did not mention the Defendant in the framework of his answer to the indictment, but it is clear that this does not add or diminish anything. A person reading the confession transcript would see that the witness confessed to the indictment and the offenses attributed **and while doing so stated** prominent facts out of that which was attributed to him. A simple reading of the transcript would reveal that the witness's mentioning of the names of his accomplices was alongside his confession to the facts in the indictment that was attributed to him and did not constitute a "closed list".

Alongside the clear weight of the transcript of the trial of the witness, we must point out that his testimony before us was not free of contradictions, for example on the matter of the degree of his acquaintance with the Defendant[15].

**Therefore, we have seen that in his trial, Ibrahim Abdel Hai admitted the facts of the offense of causing intentional death concerning the attack on Jaffa Street, including the part of the Defendant. This transcript represents an "outside statement" of the witness, and we have accepted it and seen fit to prefer it over his testimony before us, from which the part of the Defendant had been omitted.**

[Stamp] P 6: 21 [continued]

---

[14] See transcript of the statement of Ibrahim Abdel Hai dated March 30, 2004, page 7 lines 29-38.
[15] *Ibid*, page 4 line 35; compare *ibid* page 7 lines 10-11.

Date: June 28, 2005            7            Case No.: 5398/03

**Prosecution witness Ahmed Barghouti**

It is easy to see that this witness is not the type of witness who comes to tell the truth in his testimony, or to cooperate with the Court while it tries to uncover the truth. As soon as he took the witness stand, the witness covered his ears and refused to answer the questions of the Prosecutor. He answered the questions of the Defense Counsel only after finding out that he was the advocate of the Defendant, and when he did respond, he confirmed only things that were not disputed by the prosecution, i.e. he did not mention the Defendant at all.

Indeed, the prosecution does not contest that the witness did not mention the Defendant at all, and even declared that that was not the reason for which it had brought the witness to testify; rather, it was in order to prove the second part of the sixth count of the indictment, a part which the Defendant did not participate in even according to the indictment. It is an important to know why we have to deal with the question of the testimony of the witness that undisputedly does not incriminate the Defendant, but concerning which, in view of the answer of the Defense Counsel, he did not even agree that the event occurred!![16] This seems to be inescapable.

We did not have to think for long when we came to decide the question of preferring the transcript of the confession from the trial of the witness as a defendant over his so-called "testimony" before us, and in any case, this testimony is not convincing. In contrast to the arbitrary, ridiculous testimony of the witness before us, the transcript of the confession of the witness in his trial, while he was being represented by an advocate, still stands. For the reasons stated above concerning Ibrahim Abdel Hai, we have seen fit to prefer the transcript of the trial over the testimony.

**Prosecution witness Riad Ouda**

This witness, like Fahed Sharia, also attributed his decisive incrimination of the Defendant to illicit measures that were employed against him in his trial, but he did not raise, for whatever reason, these arguments in his own trial[17]. For the reasons mentioned above, which are accompanied by the biased, evasive testimony of the witness (he evaded answering the question of whether he knew the Defendant, and also did not know who the object of the question was,

[Stamp] P 6: 22

---

[16] See transcript of the hearing dated March 30, 2004, page 8 lines 31-37.
[17] See transcript of the statement of Riad Ouda dated March 30, 2004, page 10 lines 15-17.

16

despite only one Defendant being present in the dock), we have seen fit to prefer the statement of the witness over his testimony, which is evidently truthful, including the fact that he wrote it in his own handwriting; that he was duly warned before it was taken; and that he signed the bottom of every page thereof.

**Prosecution witness Ibrahim Habisha**

This witness, when he took the stand, repeated the line of his colleagues and also confirmed what had been written in his statement and the acts written therein, except for a point pertaining to the circumstances of his acquaintance with the Defendant. According to the witness, the investigator forced him to write that he had been injured by Majed Masri (whom he claimed not to know at all) while they were on their way to lay an explosive device for an attack.

When he attempted to keep the Defendant out of his explicit incrimination of him at any price, tarnishing the reputation of his investigator in his process, Ibrahim Habisha forgot the simple fact that his statement did not even mention the Defendant in the context of a planned attack, but it seemed that the injury was within the framework of a "training accident", which occurred when the Defendant started to play with a grenade launcher that he held, during an introductory meeting with various cells in the organization. In other words, the argument of the witness that the investigator tried to force him to admit that he had been injured during preparations for an attack with the Defendant has no foundation, not even from the written statement.

In any event, the account of the witness is thoroughly unconvincing. The witness was not able to provide a genuine explanation on how he was injured. In addition, he did not make the effort to provide a genuine explanation on how the investigator forced him to incriminate the Defendant falsely and why only this part of his statement was false while all the rest was true.

Against the lies of the witness there is his statement, which he wrote in his own handwriting, after being duly warned, and which he signed. The conditions for the fulfillment of Section 10A are fulfilled, as the witness identifies his statement and contradicts its content. In view of the fact that his testimony did not leave us an impression of reliability and that his statement seems to bear signs of the truth, we have seen fit to prefer it over the testimony.

[Stamp] P 6: 22 [continued]