תאריך: 28/06/05         10         תיק מס׳: 5398/03

1  [ גם נסיבות בקשת ההגשה היו, לכל הפחות, מוזרות. הגשת המסמך כלל לא נתבקשה בחקירה
2  הראשית, אלא צצה לפתע בחקירה החוזרת. הנאשם התיימר לאשר את הרשימה שהציג הסנגור,
3  בלא כל הסבר מדוע רשימה זו אותנטית או מה היו דרכי הפקתה..].
4
5  התביעה התנגדה להגשת המסמך, ואנו קיבלנו[30] את עמדתה כי לא ניתן לקבל את המסמך שלא
6  באמצעות עורכו. עם זאת, ועל מנת להפיס את הדעת הצענו - והצדדים קיבלו את הצעתנו - כי
7  התביעה תגיש מסמך מוסכם שיופק ע״י משרד הפנים במנהל האזרחי.
8
9  מעיון בשאילתא עולה כי מספר אנשים באזור שכם עונים לשם מאג׳ד מצרי, אולם כולם מבוגרים
10 במיוחד או צעירים במיוחד ולא עונים על תיאורו של מאג׳ד מצרי הנזכר בעדויות התביעה, כאדם
11 כבן 30 - כולם למעט אדם אחד, הוא הנאשם שבפנינו.. באשר לטענת הנאשם[31] כי פעם נוכח לדעת
12 שישנו אדם נוסף בשם מאג׳ד אסמעיל מוחמד אלמצרי, אשר לקח הלוואה בבנק על שמו - עיון
13 בשאילתא יגלה עד כמה הטענה שקרית, שכן הנאשם הוא האדם היחיד העונה לשם מרובע זה, לא
14 רק בחתך הגילאים הרלוונטי ולא רק באזור נפת שכם אלא בכל הגדה ואף רצועת עזה!!
15
16
17 אם כן, אנו קובעים כי הנאשם שבפנינו הוא אותו מאג׳ד מצרי, המכונה "בזבז" המופיע לרוב
18 בראיות התביעה. כעת שומה עלינו לבחון האמנם יש באותן ראיות כדי להביא להרשעת הנאשם
19 במיוחס לו.
20
21
22                    פרטי האישום המיוחסים לנאשם
23
24 הוכחת פרטי האישום מתבססת על ראיות התביעה, כמפורט להלן. ההגנה לא נדרשה לעניין הוכחת
25 עובדות האישום מתוך חומר הראיות (אלא הסתפקה בהכחשתם).
26
27                    פרט אישום ראשון
28
29 פרט אישום זה מייחס לנאשם חברות בארגון הטרור הנודע "גדודי אל-אקצה". הנאשם מופלל
30 בפרט זה ע״י שלושה מעדי התביעה, ▬▬▬▬. עדויות אלו
31 משתלבות זו בזו, מחזקות זו את זו ועונות על דרישת התוספת הראייתית.
32
33                    פרט אישום שני
34
35 אישום זה מייחס לנאשם נשיאת משרה בארגון האסור, דהיינו כי עמד בראש "גדודי אל-אקצה"
36 באזור שכם בשנת 02׳, פיקד על הפעולות הצבאיות שביצע הארגון באותה שנת-דמים, תיאם את
37 פעילות הפעילים הצבאיים, סיפק להם נשק ומימון אותו קיבל מידי ▬▬▬▬ ואחרים וכן
38 נהג ליטול אחריות על מעשי הארגון בכלי התקשורת.
39
40 בניגוד להכחשותיו הנמרצות של הנאשם, נראה כי שפע העשייה שפעל הנאשם ומעמדו בארגון,
41 נחקקו בזכרונם של פעילים רבים, אשר זכרו לו את פיקודו עליהם, את הכספים שהעתיר עליהם
42 והנשקים שסיפק להם. שורה ארוכה של עדי תביעה מפלילים את הנאשם במיוחס לו בפרט אישום
43 זה, כמפורט בהרחבה בסיכומי התביעה. כך, למשל, ▬▬▬▬ מתאר את מעמדו של הנאשם
44 בארגון, את הכספים הרבים שקיבל מידיו במספר הזדמנויות לצורך ביצוע פיגועים וכן כי הנאשם
45 נטל אחריות על פיגועים מטעם הארגון. כך, ▬▬▬▬ המתאר את הנאשם כאיש הכספים אשר
46 היה ממנן אותו ואף פעם קיבל מידיו סכום של 12,000 ש״ח. כך, ▬▬▬▬ המתאר את הנאשם
47 כמפקד "גדודי אל-אקצה" בשכם, כמי שאישר לו לבצע פיגועים וכן נטל עליהם אחריות בשם
48 הארגון (העד שלח לו לצורך כך את צילום צוואתו של ▬▬▬▬, הרוצח בפיגוע קיבוץ מצר)
49 וכן כמי שמימן ביצוע פיגועים וסיפק לשם כך כלי נשק. כך גם ▬▬▬▬ המתאר ארוכות את
50 מעמדו של הנאשם כמי שחילק לו הוראות, כמי שנהג לארגן תהלוכות מטעם הארגון ולצורך כך
51 הורה לו להפיץ תמונות שהידיים ולירות בתהלוכות וכן כמי שהעביר כלי נשק מפעיל אחד למשנהו
52 בשורת הזדמנויות. שורת עדויות אלו מחזקות זו את זו ועונות למכביר על דרישת התוספת
53 הראייתית, אולם גם מקומה של אמרת הנאשם לא נפקד לעניין זה. הנאשם אמנם, כדרכו, מנסה
54 להתרחק מחברותו בארגון ומהתפקיד שנשא בו, אולם גם הוא מוסר באמרתו פרטים המאמתים
55 את אשר מפלילים אותו חבריו, ובכלל זה כי העביר כספים לאנשים המפלילים אותו בכך (▬▬

---
[30] ראה פרוטוקול מיום 14/06/04, עמ׳ 11-12.
[31] שם, עמ׳ 11, ש׳ 16-20.

P 6: 25

תאריך: 28/06/05                                    11                    תיק מס': 5398/03

1
2  עייי ‏█████) ואחרים, כי סיפק נשק לידיו של █████ ‏█████ כי קיבל כספים מיד█████ (המוזכר גם
3  כי סייע להקים אתר אינטרנט עבור הארגון █████ כי יצר קשר עם תחנות טלוויזיה ערביות,
4                                                                                  ועוד.
5
6  העובדות המפורטות בהרחבה בפרט אישום זה לעניין תפקידו של הנאשם, מקומו בהיראכית
7  הארגון בזמן הנתון והפעולות השונות אשר נקט במסגרת תפקידו, ישובו וויידונו שעה שנבקש
8  להצביע על אחריותו של הנאשם לעבירות שבוצעו מטעם הארגון.
9
10                                      **פרט אישום שלישי**
11
12  פרט זה מייחס לנאשם עבירה של ירי לעבר אדם, וזאת בכך שבמספר הזדמנויות ביצע ירי ביחד
13  עם חבריו לארגון לעבר חיילי צה"ל. עד התביעה נאצר עויס מפליל אותו בביצוע מעשי ירי ביחד
14  עמו. גם הנאשם מציין באמרתו מעשה ירי שביצע ביחד עם █████, כך שבפנינו תשתית
15  ראייתית מלאה להרשעת הנאשם בפרט אישום זה.
16
17                                      **פרט אישום רביעי**
18
19  התביעה חזרה בה מאישום זה, ופטורים אנו מלדון בו.
20
21                                      **פרט אישום חמישי**
22
23  אישום זה מייחס לנאשם עבירת ניסיון לירי, כך שביחד עם █████ יצא לירות לעבר חיילי
24  צה"ל, אולם בסופו של דבר נמלכו בדעתם לאחר שנחשפו ע"י כוחות הצבא. גם הנאשם וגם █████
25  █████ מתארים את האירוע באופן דומה באמרותיהם ומצאנו לנכון להרשיע את הנאשם בגין
26  עבירה זו.
27
28
29
30                      **אחריות הנאשם למעשי הרצח מכוח תפקידו**
31
32  פרטי האישום החמורים 6-18 מייחסים לנאשם אחריות למותם של 10 בני אדם בפיגועי
33  ההתאבדות ברחוב יפו בירושלים, ביישוב חרמש ובקיבוץ מצר, וכן את פציעתם וניסיון רציחתם
34  של נוספים באותם אירועים. כל מעשי הרציחות הללו בוצעו ע"י מחבלים מתאבדים אשר נשלחו
35  מטעם ארגון "גדודי אל-אקצה" וע"י הנאשם ושותפיו.
36
37  מטבע הדברים, אין אפשרות להעמיד לדין את המחבל המתאבד אשר מוסר את נפשו על מזבח
38  האידאולוגיה הבזויה. אין זאת אומרת כי אלו העומדים מאחוריו, ואשר עשוהו ככלי שרת בידם
39  למילוי מטרותיהם הבזויות, צריכים לחמוק מן העונש. דיני העונשין הכירו גם באפשרות להטיל
40  אחריות, ואף אחריות מלאה, על מי שמכוח תפקידו או מעמדו (ויהיה זה גם מעמד בלתי רשמי -
41  ראה ענין "משולם" הנזכר להלן) הניע אחרים לביצוע עבירות.
42
43              **אחריות ראשי הארגון הטרוריסטי למעשי חברי הארגון - הפן הנורמטיבי**
44
45  כידוע, מקובלת בתורת המשפט הצבאי דוקטרינת ה"אחריות הפיקודית", לפיה אחראי בעל דרג
46  פיקודי בכיר למעשי פקודיו אשר נעשו על פי הוראתו ואישורו, גם אם בפועל נטל הוא חלק מעשי
47  קטן או אף שולי במעשים עצמם. דומה כי כל בני שעיניים לו בראשו, לא יוכל לחמוק מן המסקנה
48  החותכת כי אחריות מקבילה, להבדיל אלפי הבדלות, יש להטיל גם על ראשי ארגוני פשע וטרור
49  המכוונים את פעילותם הנפשעת והמורים על ביצועם של מעשי רצח ב"שלט רחוק".
50
51  יפים לעניין זה דברי כב' השופט קדמי בע"פ 5589/98 **ביסאן סולטאן נ. מדינת ישראל**, תק-על
52  99(3) 98. באותו עניין הורשע המערער בעבירת רצח בכוונת תחילה, כאשר הוכח שנתן את הסכמתו
53  ואישורו לביצוע הרצח, ושלח את המבצע העיקרי להוציא לפועל את הרצח, ואף הנחה אותו לגבי
54  שיטת הביצוע. השופט קדמי הדגיש שלולא הסכמתו של המערער לא היה הרצח מתבצע, ולכן מתן
55  האישור לבצע את הרצח היה משול "לירית ההזנקה המשלחת ספורטאי למרוץ", והיא עולה כדי
56  "מעשה של השתתפות בביצוע העבירה". לכן הורשע המערער כמבצע בצוותא ולא כמשדל, ובית
57  המשפט הדגיש כי הוא היה מצוי "במעגל הפנימי של הביצוע", כמי שהיה לו תפקיד בביצוע, והיה
58  "המוח של החבורה", בעוד שמשדל מצוי מחוץ למעגל הפנימי של הביצוע. כב' השופט קדמי הוסיף

תאריך: 28/06/05                                  12                        תיק מס': 5398/03

1   ואמר כי בנסיבות המתוארות לעיל, כאשר המערער נתן "אור ירוק לרצח" וההנחיות אופרטיביות
2   בדבר דרך הביצוע, היה בהתנהגותו לפחות "מנה גדושה של שידול על דרך העידוד".
3
4   בדנ"פ 1294/96 <u>עוזי משולם ואח' נ' מדינת ישראל</u>, פ"ד נב(5) 1, פסק כב' השופט א. מצא כי: "יש
5   לראות במשתתף כזה – שבידו שליטה מלאה על הביצוע ושעשייתו כוללת לא רק פעולות שידול
6   והכנה, אלא גם הנחיית העבריינים הפועלים ופיקוח על פעילותם - מבצע בצוותא לכל דבר".
7   הוא הדגיש כי נוכחות בזירת העבירה איננה יסוד חיוני להיותו של אדם מבצע בצוותא, ואמר:
8
9   "במציאות המשפטית החדשה, התניית האחריות הישירה בנוכחות, פרושה ש'סנדיקים'
10  ומנהיגי קבוצות עבריינים, המשלחים לזירת הביצוע את 'דגי הרקק' הסרים למרותם,
11  בעוד הם מנהיגים את הפעילות הפלילית מרחוק, יראו לא כמבצעים בצוותא אלא רק
12  כמשדלים. ואפשרות זו, שבוודאי אינה משקפת את הדין הרצוי, איננה מתחייבת אף מן
13  הדין המצוי".
14
15  אותו פסק דין ניתן לאחר ניתוח מעמיק של דמותו של הרב עוזי משולם ומסקנת השופטים באשר
16  למרות שהטיל על חסידיו.
17
18  עקרונות אלו באו לידי ביטוי לא רק לעניין ארגוני פשע, אלא גם לעניין נושאי משרה בכירה בארגוני
19  טרור, בפסק דינו המאלף של בית המשפט המחוזי תל אביב, תפ"ח 1158/02 <u>מ"י נ' ▮▮▮▮▮▮▮</u>
20  ראה גם עקרונות דומים המצוטטים בפס"ד ▮▮▮▮ הנ"ל, המובאים מאמריהם של מ. קרמניצר
21  "<u>המבצע בדיני העונשין קווים לדמותו</u>", פלילים-א' (תש"ן-1990) 65, בעמ' 72, ומ. גור-אריה,
22  "<u>צדדים לעבירה-תיקון 39 לחוק העונשין במבחן הפסיקה</u>", מגמות בפלילים, עמ' 83.
23
24  מן הפרט אל הכלל
25
26  אין לך משימה קלה מאשר הוכחת מעמדו הבכיר של הנאשם בארגון גדודי אל-אקצה בשכם
27  וסביבותיה ושליטתו המוחלטת בפעילות הצבאית של הארגון בזמן ששימש כראש הארגון בעיר.
28  ראינו כי הנאשם פעל כמפקד "גדודי אל-אקצה" באזור שכם בשנת 02', ולמרותו סרו פעילי
29  הארגון באופן ישיר. הנאשם היה מעורב בחלוקת הכספים לפעילי הארגון - כספים אשר הזינו את
30  גלגלי הטרור. הנאשם תיאם פעילויות חברי הארגון באזור ועמד בקשר עם מפקד ארגון התנזים,
31  מרואן ברגותי. הנאשם סיפק כלי נשק לפעילים לביצוע משימותיהם ואף היה מעורב בצדדים
32  נוספים בפעילות הארגון כגון ארגון תהלוכות והקמת אתר אינטרנט ועוד כהנה וכהנה מרעין
33  בישין.
34
35  עובדות פרטי האישום הבאים יגוללו כיצד היה הנאשם מעורב בהכנות המקדימות לביצוע פיגועי
36  ההתאבדות, כיצד פנה פעיל צבאי אליו על מנת לקבל את אישורו לרצח חפים מפשע. נראה בעליל כי
37  ראה עצמו כפוסק בענייני חיים ומוות באזור שכם. ביוזמתו, באישורו ובברכתו של הנאשם יצאו
38  לדרכם פיגועי ההתאבדות המתוארים להלן, ובדין נושא הוא באחריות אליהם.
39
40  נסיים פרק זה ולו באזכור העובדה הסמלית כי במסגרת תפקידו הנאשם הוא זה שמיהר ליטול
41  אחריות בשם הארגון על פיגועי ההתאבדות שביצע הארגון. אמנם, בבואו לתת את הדין על
42  מעשיו, נתקף הנאשם בביישנות מעשה ולא חזר על כך, אולם דומה כי הדברים מדברים בעד
43  עצמם ומצביעים מדוע אין מקום ליתן לנאשם לחמוק מהאחריות לה הוא נושא במסגרת תפקידו
44  למעשי הרצח שביצע הארגון בראשו עמד ואשר מיהר להתגאות בהם.
45
46
47  אלא שאחריותו של הנאשם למעשי הרצח לא מתמצה במישור "המיניסטריאלי" בלבד. שכן
48  הנאשם גם שלח ידו בביצוע מעשים של ממש במסגרת הוצאתם לפועל של פיגועי ההתאבדות
49  הנדונים, מעשים המביאים אותו אל מסגרת "המעגל הפנימי" של מבצעי העבירה, הנושאים
50  באחריות כמבצעים ישירים. נדון כעת בחלקו של הנאשם במסגרת הוצאתם לפועל של כל אחד
51  מהפיגועים.
52
53  השתלשלות האירועים הכללית
54
55  כפירתו של הנאשם באישומים כנגדו היתה כללית וגורפת. הנאשם לא הציג בפנינו כל זירת
56  מחלוקת מתוחמת, אפילו ביחס לחלקים מתוך פרטי האישום אשר כלל אינם נוגעים לו. ההגנה
57  עמדה על הוכחת כל פסיק ותג בהם, גם ביחס לאירועים שבוצעו לאחר שיצא הנאשם מן התמונה

תאריך: 28/06/05      13      תיק מס': 5398/03

1 (ראה הפרק הדן בעדותו של אחמד ברגותי הנזכר מעלה) ולא ידעה למסור עמדה אפילו באשר
2 לעצם קרות הפיגועים.
3
4 נוהגה זה של ההגנה להתמיד בהכחשה הגורפת, גם באשר לעצם מותם של הקורבנות, יש להצטער
5 עליו, בפרט שהחומר הטכני המבסס עובדות אלו הוגש בהסכמה. לצערנו, לא התגנב ללבנו
6 החשש שמא עומד הנאשם ליתן את הדין בגין מעשי רצח שלא בוצעו. הראיות הטכניות הרבות
7 שהוגשו בהסכמת ההגנה, מבססות את עובדות האירועים המתוארים והתמונות הקשות של
8 קורבנות מעשי הרצח, בהם פעוטות רכים בשנים, לא מותירות מקום לספק בעניין זה.
9
10 למעשה, אין מחלוקת של ממש גם ביחס להשתלשלות העניינים הנוגעת לשלבי הוצאתם לפועל של
11 הפיגועים. אם נעמיק ראות, מעבר לענני האבק שביקשו עדי התביעה להעריב בהתחמקויותיהם
12 השונות, נראה כי למעשה הללו ( ▓▓▓▓▓▓▓▓▓▓ ) אינם
13 מכחישים את תהליכי ההוצאה לפועל של מעשי הרצח, ומתמקדים בעיקר ב (בהכחשת) חלקו של
14 הנאשם. מכל מקום, קריאה באמרותיהם, מעלה באופן נרחב ומפורט את השתלשלות אירועים זו
15 (ובכלל זה ההכנות, חימוש המתאבדים, צילומם, הסעתם לעבר זירת הרצח וכו').
16
17 אם כן, מצאנו השתלשלות האירועים הכללית, הוכחה כדבעי מתוך הראיות שהובאו בפנינו, וספק
18 האם היא שנויה במחלוקת אמיתית, וכעת נמקד מבטנו לעבר חלקו של הנאשם.
19
20 **פרטי האישום 8-6, הפיגוע ברחוב יפו**
21
22
23 פרטי אישום אלו מייחסים לנאשם אחריות לרציחתן של אורה סנדלר ושרה המבורגר ז"ל וניסיון
24 גרימת מותם של 45 אזרחים שנפצעו באירוע. האירוע הוצא לפועל מטעמו ובשמו של ארגון "גדודי
25 אל-אקצה". מיוחס לנאשם כי הוא קיבל לידיו את המחבל המתאבד בדירה במחנה בלאטה וביחד
26 עם ▓▓▓▓▓ צילם אותו כשהוא מחזיק ברובה וספר קוראן. לאחר מכן שילח הנאשם את
27 המתאבד, סעיד, לדרכו האחרונה. לאחר הדברים האלה יצא סעיד לכיוון רמאללה שם נשלח ע"י
28 ▓▓▓▓▓ לירושלים, מקום בו פתח ביריות לכל עבר, עד אשר הוכרע, אולם לא טרם שגרם
29 לרצח שתי נשים ופציעת עשרות רבות.
30
31 על חלקו של הנאשם מספר עד התביעה ▓▓▓▓▓▓▓▓, כאמור בפרוטוקול הודאתו במשפטו
32 (ת/ 69, ס"ק 6 לפרט האישום השישי בכתב האישום) ועל עדותו מתבסס החלק באישום הנוגע
33 לנאשם. על הרקע לאירוע, למדים אנו מאמרותיהם של ▓▓▓▓▓ ושל ▓▓▓▓▓. אמרותיהם של
34 עדי התביעה 16,17 הוגשו בהסכמה[32] ורואים בתוכנן כמוסכם
35 (עד"י איו"ש 114/01, ▓▓▓▓). מאמרות אלו, בצירוף פרוטוקול הודאתו של ▓▓▓▓▓,
36 למדים אנו על אחריותו של אותו סעיד לאחר שנשלח וצולם ע"י הנאשם. מן החומר הטכני למדנו
37 על התוצאות הקטלניות של האירוע. אך מובן הוא כי שלל הראיות משתלבות זו בזו ומהוות הרבה
38 מעבר לחיזוק המוגבר הנדרש לעדותו של ▓▓▓▓▓.
39
40
41 דומה כי בימים אלו אין אדם נדרש לדמיון רב באשר למשמעותו של אקט צילום מתאבד, כשהוא
42 מקריא את צוואתו טרם צאתו לדרכו האחרונה, ומעשהו של הנאשם בהקשר זה מדבר בעד עצמו.
43 אקט זה, בצירוף מעמדו של הנאשם הנזכר מעלה, מבססים את היותו חלק מן "המעגל הפנימי"
44 של משלחי המתאבד ואת אחריותו המלאה לפיגוע ולתוצאותיו הרצחניות.
45
46 מטעמים אלו מרשיעים אנו את הנאשם באחריות לפיגוע ההתאבדות ברחוב יפו בירושלים,
47 לפציעת האזרחים והניסיון לרצות נוספים.
48
49
50 **פרטי האישום 12-9, הפיגוע ביישוב חרמש**
51
52 פיגוע זה הוצא לפועל ע"י ▓▓▓▓▓▓▓▓▓▓▓, בסיומם של ▓▓▓▓▓▓▓▓▓
53 ▓▓▓▓. מיוחס לנאשם (ס"ק א'+ט' לפרט האישום) כי הוא זה שנתן אישור מפורש ל▓▓▓▓
54 לבצע את הפיגוע, ולאחריו אף נטל אחריות עליו בשם הארגון וכן העביר לידיו של ▓▓▓ סכום של
55 $3,000. באירוע נרצחו לינוי סרוסי, הדס תורג'מן ואורנה אשל זכרן לברכה וכן נפצע יובל אשל.

---

[32] ראה פרוטוקול הדיון מיום 14/06/04, עמ' 1 ש' 21-22.

תאריך: 28/06/05                    14                    תיק מס׳: 5398/03

1
2  חלקו של הנאשם עולה מתוך אמרותיו של ▓ אותו מצאנו, כזכור, לקבל. ▓ מתאר כיצד,
3  לאחר שסיפר לו ▓ כי ברשותו מתאבד המוכן לבצע פיגוע, יצר קשר עם הנאשם
4  שאישר לו לבצע את מעשה הרצח (או בלשונו של הנאשם, "למה לא?"[33]). יודגש מתוך דבריו של
5  ▓ כי הורה ל▓ להמשיך בגלגול הפיגוע, רק לאחר שיחתו עם הנאשם וקבלת האישור
6  ממנו. עוד מתאר נאיפה כיצד, לאחר הפיגוע, נטל הנאשם אחריות לפיגוע בשם הארגון ואף העביר
7  לו את סכום הכסף.
8
9  חיזוק לדבריו של ▓ אנו מוצאים לא אחרת מאשר באמרתו של הנאשם המאשר כי מסר
10 ל▓ סכום כסף יום לאחר הפיגוע להקמת סוכת אבלים לשהיד[34]. שאר המעורבים באירוע,
11 שאמרותיהם הוגשו בהסכמה[35], מבססים את עובדות האישום בכללו והחומר הטכני מבסס את
12 תוצאותיו הקטלניות ופציעתו של יובל אשל, שאשתו אורנה ז״ל נרצחה לנגד עיניו.
13
14
15 רואים אנו כי הנאשם היה בעל שליטה מוחלטת בהוצאתו לפועל של הפיגוע, ומבצעיו סרו למרותו,
16 הן באומר והן במעשה, הן לפניו והן אחריו. הנאשם נושא באחריות מלאה לאירוע שיצא ברכתו,
17 באישורו ובמימונו ושעליו הזדרז ליטול אחריות ואנו מרשיעים אותו באחריות לו.
18
19 **פרטי האישום 13-18, פיגוע מצר**
20
21 גם באירוע זה, נשלח המחבל המתאבד, חיית האדם ▓, ע״י ▓ לקיבוץ
22 מצר. במסע הירי שלו בקיבוץ רצח ▓ את ילדי משפחת אוחיון, מתן וניעם, את אמם רויטל
23 וכן את תושבי הקיבוץ תרצה דמארי ויצחק דורי, זכרם לברכה.
24
25 מעיון באמרותיו של ▓ עולה כי פעם נוספת פנה לנאשם, בציינו באוזניו כי ברשותו מתאבד
26 נוסף המוכן לשיגור ובקשה לחמשו בכל נשק, והנאשם דאג לעשות כן. לאחר מכן, פנה ▓ אל
27 הנאשם כי ייקח אחריות על הפיגוע, ואף דאג להעביר לידיו את סרט הצילום של ▓ מקריא
28 את צוואתו.
29
30 הנאשם בכבודו ובעצמו מחזק את דבריו של ▓ באופן מובהק (תוך הוצאת העוקץ מן הדברים,
31 כהרגלו) כאשר הוא מציין באמרתו כי מסר ל▓ כלי נשק (לטענתו, בעקבות סכסוך של
32 ▓ עם אדם אחר), וכן כי לאחר הפיגוע התקשר לתחנת הטלוויזיה להודיע כי הוא מתנגד לביצוע
33 פיגועים בתוך תחומי מדינת ישראל..למותר לציין כי הסיפא שבצד גרסתו של הנאשם, לא אמין
34 בעינינו. הנאשם לא טרח לחזור אפילו על גרסה מתחמקת זו בעדותו והרחיק עצמו מכל מעורבות
35 עם ▓ או מתן כלי נשק.
36
37 המעורב העיקרי הנוסף באירוע ▓, אשר אינו מזכיר את הנאשם, מבסס את עובדות
38 כתב האישום הנוגעות להכנות לשילוח ▓ למשימת הרצח והחומר הטכני מזירת הטבח
39 מאשש את תוצאותיו הקטלניות.
40
41
42 דפוס ההיראריכיה שבין ▓ לנאשם, כבר תואר להלן והמעשים שנעשו לפני ואחרי הפיגוע,
43 מבססים את אחריותו של הנאשם מכוח מרותו על מבצעי הרצח ומתן האישור לפיגוע ונטילת
44 האחריות עליו. אלא שגם הפעם, מלבד האחריות "המיניסטריאלית", נושא הנאשם באחריות
45 מובהקת לפיגוע בתור מי שהמציא לידיהם של הרוצחים בפועל את כלי הנשק שקטל את תושבי
46 הקיבוץ. אין ספק כי הנאשם נושא באחריות מלאה לאירוע הרצח ואנו מרשיעים אותו בכך.
47
48 **פרט האישום 19**
49
50 פרט זה מייחס לנאשם עבירת קשירת קשר לגרימת מוות בכוונה, זאת בכך שהיה שותף למזימה
51 לשלח את ▓ לביצוע פיגוע נוסף לאחר פיגוע מצר.
52
53 גם אישום זה מתבסס על אמרותיו של ▓, המתאר כיצד משנתברר כי ▓ נותר
54 בחיים לאחר ההתקפה הרצחנית בקיבוץ מצר, הוחלט לשלוח אותו שוב לבצע פיגוע התאבדות,

---
[33] ראה **ת/60**, עמ׳ 4 ש׳ 25.
[34] ראה **ת/1**, עמ׳ 5 ש׳ 9-5.
[35] ראה פרוטוקול מיום 02/09/03, עמ׳ 3 ש׳ 28-27.

תאריך: 28/06/05    15    תיק מס׳: 5398/03

1. ולשם כך התקשר אל הנאשם. הנאשם מסר את הסכמתו לתוכנית ואף נענה לבקשת ▇
2. להמציא לידיו כלי נשק, ובני החבורה אף יצאו לשכם לפגשו ולקחת מידיו את הנשק, אולם נעצרו
3. קודם לכן.
4.
5. אודות החיזוקים הרבים לאמרותיו של ▇ בשורת עניינים - עמדנו זה מכבר. אין ספק כי
6. הקשר הנדון, הוא חלק מתוך "מסכת עובדתית" אחת, הנוגעת לפיגועי טרור שבוצעו ע״י ▇
7. והנאשם במסגרת הארגון ובאמצעות ▇, ועל כן רואים בהם כחיזוקים גם לענין הפללתו את
8. הנאשם לענין אישום זה.
9.
10. גם באשר לדפוס הפעולה והקשר בין הנאשם ה▇, עמדנו זה מכבר ואין ספק כי אישורו של
11. הנאשם את התוכנית הרצחנית והתחייבותו להמציא כלי נשק, הופכים אותו לשותף בקשירת
12. הקשר.
13.
14.
15.
16. סוף דבר, מרשיעים אנו את הנאשם בכל המיוחס לו, למעט פרט האישום הרביעי, ממנו
17. חזרה התביעה.
18.
19.
20.
21. זכות ערעור כחוק
22. ניתן והודע, 28/06/05, בלשכה. המזכירות תמציא עותק לידי הצדדים.
23.
24.
25. שופט        אב״ד        שופט
26.
27.
28.

P 6: 30