

PLAINTIFF'S EXHIBIT 390A

Israel Defense Forces

Before the Military Court  
in Beit El  
Before a single judge

Court Case: 3159/02  
Prosecution case: 146/02  
Detailed incident case: 357/02, 358/02  
Binyamin

### In the trial between: the Military Prosecutor – the Prosecutor

-v-

**Bashar Hassan Abed Barghouti**  
Identity No. 934469768, born July 1, 1975, a resident of Al-Bira  
Detained since January 23, 2002

The Defendant

## Amended Indictment

**The above mentioned Defendant is accused hereby of committing the following offense:**

**Nature of the offense** Failure to prevent an offense, an offense pursuant to Sections 51, 59 and 92 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 20, 2002 or thereabouts, while knowing or having reasonable grounds to suspect that another person was committing or planning to commit a violation of law or security legislation whose sentence exceeds three years imprisonment, did not provide notice of this immediately to a military commander or the nearest police station or any IDF officer or did not act in another reasonable manner to prevent the commission, continuation or completion thereof, as follows:

The Defendant habitually hosted in his home ▮▮▮▮▮▮▮▮:

▮▮▮▮▮▮▮▮ which is responsible for carrying out hundreds of lethal attacks. The above mentioned ▮▮▮▮▮▮▮▮ participated himself in the execution of shooting attacks against IDF soldiers and reported this to the Defendant.

[Stamp] P 6: 320

Date: January 13, 2003  
Ref: Vladi/m146-02

1

On January 20, 2002, ▬▬▬▬▬ was being hosted in the home of the Defendant. During that me

Thereafter, ▬▬▬▬▬ talked, using his mobile telephone handset, to another person from Nablus, and during the call, ▬

The Defendant agreed, and ▬▬▬▬ gave the telephone number in the home of the Defendant to the man from Nablus. That man called the home of the Defendant and talked with ▬▬▬▬ ▬▬▬▬ The Defendant overheard the content of the call, in which he asked ▬▬▬ about the

[Stamp] P 6: 320 (continued)

Date: January 13, 2003
Ref: Vladi/m146-02

2

After ▮▮▮▮ completed the above mentioned call, he i

... to
▮▮

c
h..............

When ▮▮▮▮ informed the defendant ▮▮ ck, the Defendant asked ▮▮▮▮ how the perpetrator of the attack would be arriving from Nablus to Ramallah, and ▮▮

▮▮

▮▮

The Defendant did not act reasonably in order to prevent the planned attack that ▮▮▮▮

On January 22, 2002, a shooting attack was carried out on the junction of Jaffa and King George Streets in Jerusalem by ▮▮ In this attack, the terrorist opened fire at passersby in the street with the intent of causing their deaths. In this attack, two women were killed, the late Ora Sandlar and the late Sarah Hamburger, and dozens of others were injured.

After this attack, while the defendant was at work at "Makassed" Hospital, ▮▮▮▮ called him.

The defendant responded positively and knew that this was the attack that ▮▮ had planned as set forth above.

[Stamp] P 6: 321

Date: January 13, 2003
Ref: Vladi/m146-02

3

**Witnesses for the prosecution:**

1. ███████████████, Badge No. ███ Judea Investigations Office, taker of the statement of the Defendant.

2. ███████████████████████ ███ Judea Investigations Office, taker of the statement of the Defendant.

3. ██████████ seizure and marking report and photographs, investigations, special investigations department.

4. ██████████ details in the prosecution.

5. ██████████ details in the prosecution and certificates.

6. ██████, ██████ details in the prosecution.

7. Death certificates.

_____
[Signature]
**Dalia Kaufman, Captain**
Military Prosecutor

[Stamp] P 6: 321 (continued)

Date: January 13, 2003
Ref: Vladi/m146-02

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, et al., <br><br>            Plaintiffs, <br><br> vs. <br><br> THE PALESTINE LIBERATION ORGANIZATION, et al., <br><br>            Defendants. | No. 04 Civ. 00397 (GBD) (RLE) |

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 6: 320-323.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P 6: 320-323.

_____
Rina Ne'eman

ss.: New Jersey

On the [6] day of ~~February~~ March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this ~~February~~ March
6 day of ~~February~~, 2014

*Leonor Troyano*
Notary Public

LEONOR TROYANO
ID # 2305589
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/8/2014



| צבא | הגנה | | לישראל |
|---|---|---|---|
| בבית המשפט | הצבאי | תיק ביהמ"ש: | 3159/02 |
| בבית דן | אל | תיק תביעה: | 146/02 |
| בפני יחיד | | תיק פ.א.: 357/02, בנימין | 358/02 |

**במשפט שבין התובע הצבאי – המאשים**

**-נגד-**

בשאר חסן עבד ברגותי
ת.ז. 934469768, יליד 01.07.75, תושב אל-בירה
עצור מיום 23.01.02

**הנאשם**

# כתב-אישום מתוקן

**הנאשם הנ"ל מואשם בזאת בביצוע העבירה הבאה:**

**מהות העבירה:** אי-מניעת עבירה, עבירה לפי סעיפים 51, 59 ו-92 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 20.01.02 או במועד הסמוך לכך, שידע או היה לו יסוד סביר לחשוד כי אדם אחר עבר או מתכנן לעבור עבירה על דין או תחיקת בטחון שעונשה עולה על שלוש שנות מאסר, לא מסר הודעה על כך מיד למפקד צבאי או לתחנת המשטרה הקרובה או לכל קצין צה"ל או לא פעל באופן סביר אחר כדי למנוע את עשייתה או המשכתה או השלמתה, כדלקמן:

הנאשם נהג לארח בביתו את ▓▓▓▓▓, שומר ראשו ונהגו של מנהיג פלג "תנזים" של "פתייח" בגדה, ▓▓▓▓▓ ▓▓▓▓▓. ▓▓▓▓▓ עצמו הינו חבר במנגנון הצבאי של הפתייח הנקרא "גדודי חללי אל-אקצא", אשר הינו אחראי לביצוע מאות פיגועים קטלניים ▓▓▓▓▓ הנ"ל השתתף בעצמו בביצוע פיגועי ירי כנגד חיילי צה"ל וזנוח על כך לנאשם.

ביום 20.01.02 התארח ▓▓▓▓▓ בביתו של הנאשם. באותה פגישה דווח ▓▓▓▓▓ לנאשם, כי חבריו ב"גדודי חללי אל-אקצא" הם שביצעו את הפיגוע בחדרה וכן פיגועים קטלניים נוספים.

לאחר מכן שוחח ▓▓▓▓▓ באמצעות מכשיר הפלאפון שלו עם אדם משכם ובמהלך השיחה שאל ▓▓▓▓▓ את הנאשם האם יוכל לשוחח עם אותו אדם באמצעות מכשיר הטלפון שבבית הנאשם ולא באמצעות מכשיר סלולארי, מאחר שמדובר בנושא שאינו לשיחה באמצעות פלאפון ומחשש לציתות. הנאשם הסכים, ▓▓▓▓▓ מסר את מספר הטלפון שבבית הנאשם לאדם משכם, אותו אדם התקשר לבית הנאשם ושוחח עם ▓▓▓▓▓ הנאשם שמע את תוכן השיחה בה שאל ▓▓▓▓▓ על הגעת בחור וציודו בנשק. כן הנחה ▓▓▓▓▓ את אותו אדם שהבחור שצריך להגיע יסתפר וכן דיברו על כך שהבחור נראה יפה.

תאריך: 13.01.03
סימוכין: ת/ד/02-146

1

P 6: 320

לאחר ש███ סיים את השיחה הנ"ל, הוא הודיע לנאשם כי ביומיים שלאחר מכן יתבצע פיגוע בירושלים. כן ציין ███ בפני הנאשם כי מבצע הפיגוע יגיע מאיזור שכם לרמאללה ואח"כ יצא לבצע את הפיגוע בירושלים. כמו כן מסר ███ לנאשם כי מבצע הפיגוע יגיע מאיזור שכם לרמאללה, וממשם יצא לירושלים, וכי אותו המחבל יבצע פיגוע התאבדות. ███ ציין בפני הנאשם כי מבצע הפיגוע הינו יפה ולכן לא תהיה לו בעיה לצאת לירושלים. עוד מסר ███ לנאשם כי ישנם בעלי תעודת זהות ישראלית מזויפת, אשר אינם חשודים בביצוע פעולות חבלנית והם יכולים לצאת מן האיזור ולבצע פיגועים בישראל. עוד דיווח ███ לנאשם על פיגועים נוספים שביצעו חבריו חולייתו דרך ביצוע הפיגועים.

כאשר ███ מסר לנאשם על ביצוע הפיגוע, הנאשם שאל את ███ כיצד יגיע מבצע הפיגוע משכם לרמאללה, ו███ השיב לו כי המחבל יגיע בדרך הרגילה.

███ מסר לנאשם כי הפיגוע המתוכנן יבוצע כנקמה על הריגתו של פעיל הפלג הצבאי של הפתייח - "גדודי חללי אל-אקצאי", ███. עוד מסר ███ לנאשם כי יגדודי חללי אל-אקצאי" החליטו על מלחמה נגד ישראל והחליטו לעשות הרבה פיגועים ולהרוג הרבח אנשים כנקמה על מותו של ███ עימו פעל ███

הנאשם לא פעל באופן סביר כדי למנוע את הפיגוע המתוכנן כפי שמסר לו ███

בינם 22.01.02 בוצע פיגוע ירי בצומת הרחובות יפו וקינג ג'ורג' בירושלים ע"י פעיל הזרוע הצבאית של תנזים "גדודי חללי אל-אקצאי". בפיגוע זה ירה המחבל לעבר עוברים ושבים ברחוב מתוך כוונה לגרום למותם. בפיגוע זה נהרגו שתי נשים, אורה סנדלר ז"ל ושרה המבורגר ז"ל ונפצעו עשרות אנשים.

לאחר הפיגוע בעת שהנאשם היה בעבודתו בבית החולים "מוקאסדי", התקשר אליו ███ וידא עם הנאשם האם שמע על הפיגוע שבוצע. הנאשם השיב בחיוב וידע כי המדובר בפיגוע שתוכנן ███ כאמור לעיל.

### עדי התביעה:

1. ███ לחייק יהודה, גובה אמרת הנאשם.
2. ███ לחייק יהודה, גובה אמרת הנאשם.
3. ███, דו"ח תפיסת וסימון + תמונות, חקירות מתי"מ.
4. פרטים בתביעה.
5. ███, פרטים בתביעה + תעודות.
6. ███ פרטים בתביעה.
7. תעודות פטירה.

דליה קאופמן
סרן
תובעת צבאית

תאריך: י' שבט, תשס"יג
13 ינואר, 2003

מספר התיק: 3159/02

בית המשפט הצבאי בבית אל

פרוטוקול הדיון בישיבת דן יחיד

בפני השופט: רס"ן אלי בר-און

נאשם: בשאר חסן עבד ברגותי ת.ז 934469768 / מגידו

---

## גזר-דין

הנאשם הורשע בעבירה של אי מניעת עבירה לפי סעיף 95 לצו בדבר הוראות בטחון תש"ל 1970. בתמצית ניתן לומר כי ביום 20/01/02 ארח הנאשם בביתו קרוב משפחתו בשם ▇▇▇▇ אשר היה פעיל בכיר בארגון גדודי חללי אל אקצא. במהלך שהותו בבית הנאשם שוחח ▇▇▇▇ באמצעות מכשיר טלפון נייד שהיה ברשותו, ובשלב מסויים של השיחה ביקש מהנאשם לקבל את השיחה בטלפון הקבוע שבביתו של הנאשם, ואכן ▇▇▇▇ שוחח עם אדם משכם, ולאחר השיחה עדכן את הנאשם כי הוא מתכוון להוציא אל הפועל פיגוע בירושלים. ▇▇▇▇ אף מסר לנאשם מספר רב של פרטים הנוגעים לאותו הפיגוע, והנאשם אף שאל אותו מספר שאלות בעניין זה. יומיים לאחר מכן, ביצע פעיל של גדודי חללי אל אקצא פיגוע ירי בירושלים, במסגרתו מצאו את מותן שתי נשים ונפצעו עשרות אחרים. לאחר הפיגוע התקשר ▇▇▇▇ אל הנאשם ושאל אותו האם שמע על הוצאת הפיגוע אל הפועל, והנאשם אישר זאת.

הצדדים ביקשו מביהמ"ש כי יגזור על הנאשם עונש אשר יהלום את חומרת העבירה בה הורשע. לעניין מידתו של עונש זה נחלקו דעות הצדדים. התביעה הצבאית מצידה גרסה כי לנוכח התוצאות הטרגיות והנוראיות של הפיגוע שהוצא אל הפועל, יש מקום להחמיר עם הנאשם. התביעה הצבאית אף הפנתה את תשומת הלב לכך שלנוכח העובדה שמדובר בעבירה מיוחדת במינה, בחר המחוקק להצמיד לעבירה זו עונש של 5 שנות מאסר שהוא עונש נמוך ביחס לעבירות הבטחוניות חניגדרות בביהמ"ש זה. לדעת ההגנה, לא ניתן היה לדרוש מן הנאשם להתנהג באופן שונה מזה שנהג בו, ולנוכח העובדה כי הנאשם לא היה שותף בדרך כלשהי בביצוע הפיגוע, אלא רק חדל מעשייה מעשים אשר הביאו למניעתו, הרי שיש להקל עמו באופן משמעותי, ולהורות על שחרורו.

אין ספק כי העבירה בה הורשע הנאשם הנה עבירה מיוחדת במינה לנוכח העובדה כי היא אחת העבירות הבודדות אשר מטילות עונש בגין מחדל של אדם ולא לעשות מעשה, ולא בגין מעשה שעשה. ביהמ"ש העליון של מדינת ישראל דן לאחרונה בהרחבה בעבירה זו, בפסק הדין בעניין מרגלית הר שפי. פסק הדין אשר סוקר את הדעות השונות שהובעו במהלך השנים באשר להצדקת הכללתה של עבירה זו בספר חוקים, מגיע בסופו של דבר למסקנה כי לנוכח ריבויים של מעשי הפשע, אין מקום להשמיט עבירה זו מהקודקס הפלילי במדינת ישראל, יחד עם זאת, לא פסח ביהמ"ש גם על העברת ביקורת מסויימת לנוכח כתם המלשינות שמדביקה התובע המוטלת כאן על אותו אדם שחדל.

בנסיבות הקיימות באזור, מעוררת העבירה של אי מניעת עבירה קשיים נוספים. כך לדוגמא נדרש הנאשם שבפנינו לעשות מעשים למניעתה של עבירה שעל קיומה שמע

5

ותאריך: י' שבט, תשס"ג
13 ינואר, 2003

מספר התיק: 3159/02

1. בעת היותו בשטח שאינו נתון לשליטה של כוחות הבטחון הישראלים. ניתן היה
2. לדרוש מן הנאשם כי יעשה לכך הפחות מעשים למניעת הפשע ע"י פנייה לגורמי
3. הבטחון הנמצאים בשטחן, אלא שבנסיבות המקרה מתקבל הרושם שדווקא גורמי
4. הבטחון הללו, הם אלה שהתמכונו להוציא לפועל את אותו פשע. ברור כי סיטואציה
5. זו העמידה את הנאשם בין הפטיש לסדן, ונראה כי חובתו המוסרית לפעול במקרה
6. זה, אשר אין ספק בדבר קיומה, נתקלה בקשיים של ממש לו הוא אכן היה מנסה
7. לפעול.
8.
9. לא ניתן להתעלם מכך שמחדלו של הנאשם אכן איפשר בסופו של דבר את התוצאות
10. הנוראיות שהביאו לאובדן חיי אדם חפים מפשע, אך לא ניתן להתעלם גם מכך כי
11. הנאשם לא מואשם בשותפות כלשהי בביצוע הפיגוע הנוראי.
12.
13. עברו של הנאשם נקי. הנאשם סיים לימודי רפואה בעיראק וחזר לאזור כדי להתחיל
14. בהתמחותו כרופא בבית החולים אל מוקסד בירושלים. לפני בית"מש נשמעה עדות
15. אביו של הנאשם וניתן היה להתרשם כי מדובר באדם אשר חינך את בניו לחיות
16. בשלום עם הבריות ולהקדיש את עיקר מאמציהם ללימודים אשר יטיבו עם הזולת,
17. ולא יפגעו בהם. גם מפי הנאשם ניתן היה להתרשם כי לא תיו לו מניעים לאומניים,
18. בטחוניים או פליליים עת נמנע מלדווח על מעשה הפשע שהתתקרב ובא.
19.
20. בנסיבות העניין, אני סבור כי ניתן להקל עם חנאשם ולחמיר חלק מעונש המאסר לו
21. היה ראוי בקנס כספי על מנת לאפשר לו לחזור לחיים נורמטיבים, להקים משפחה
22. ולחנך את ילדיו ברוח של שלום ואהבה.
23.
24. אשר על כן, אני גוזר על הנאשם את העונשים הבאים:
25.
26. א.   מאסר בפועל מאשר כימי מעצרו של הנאשם.
27. ב.   9 חודשי מאסר על תנאי, והתנאי הוא כי במשך 5 שנים מיום שחרורו לא
28.      יעבור הנאשם עבירה לפי הסעיפים 57 או 59 לצו בדבר הוראות הבטחון
29.      תש"ל 1970.
30. ג.   קנס כספי בסך 5,000 ש"ח או 5 חודשי מאסר תמורתו. הקנס ישולם כתנאי
31.      לשחרור.
32.
33. זכות ערעור תוך 30 יום.
34.
35. ניתן והודע הינם, 13/01/03, בפומבי ובמעמד הצדדים.
36.
37.
38.

שופט

6

P 6: 323