Date: 7 Av 5764  
       July 25, 2004

Case No.: 3262/02

### Third count of the indictment

Witness Mohamed Abdullah discusses an MP-5 type weapon that the Defendant purchased (P/6, page 11 line 3 onward). However, we must point out that the weapon purchased did not work and was therefore returned by the Defendant to the person who had sold it.

### Fourth count of the indictment

This count is expressed by P/6 (page 1 line 25 onward).

### Counts 5, 6, 7 of the indictment:

The facts described in these counts are also expansively described by Hussam Shahada in P/4, from page 1 line 18 onward.

The Defendant did not do any shooting in the event described, but his responsibility as a full accomplice to the offense is not cast in doubt. The Defendant and his colleague Hussam Shahada approached Ali Alian and the three agreed to carry out a shooting attack. Thereafter the three met again, Ali Alian having brought two weapons with him. The three traveled to the area of Givat Ze'ev, the Defendant possessing a weapon. While the Defendant remained in the vehicle to guard it, his two colleagues went to the main road and when an Israeli vehicle arrived, opened fire at it and causing the death of a 17 year old teenage boy.

We can see that the Defendant took part in the stage of planning the attack and in the stage of execution, by serving as the driver of the cell. These actions of the Defendant put him among those who took a significant part in the execution of the attack, and as a result, the Defendant must be assigned to the inner circle of the offense. Concerning the mental foundation of the Defendant, there can be no doubt that a person who departs with his colleagues for a shooting attack while armed with offensive weapons has reconciled with the decision to cause the intentional deaths of others.

As the other facts set forth in these counts are undisputed, and the participation of the Defendant is also clear, we are only left to convict the Defendant of the offenses attributed to him in these counts.

### The eighth count of the indictment

Witness Mohamed Abdullah describes in his statement (P/6 page 2 line 4 onward) the military training described in this count.

[Stamp] P 6: 328

### Counts 9, 10 of the indictment

For these counts too, the factual basis is well established [see P/4, page 2 line 22 onward, to which P/6 page 2 line 9 onward may be attached]. In this attack too, the Defendant was a full partner by taking part in making the decision to carry out the attack and serving as a spotter, lookout and pathfinder for his colleagues. In view of the character of the act, the intent of the participants, the Defendant among them, was clear, and here too there is no doubt concerning the need to convict the Defendant of the offenses that are attributed to him in these counts.

- 9 -

[Stamp] P 6: 328 [continued]

Date:  7 Av 5764  
        July 25, 2004

Case No.: 3262/02

**Counts 11, 12, 13, 14, 15 of the indictment**

Concerning these counts, there is a large amount of evidence material. Three other persons involved in the attack, Hussam Shahada, Mohamed Abdullah and Haitham Hamdan, give detailed descriptions on the chain of events by which the Defendant and his accomplices led to the death of the late Ben-Shalom couple, the late Doron Yosef Sviri and the injury of the daughter of the couple [see the works of Hussam Shahada in P/4 page 3 line 19 onward, Mohamed Masaleh in P/8 page 3 line 2, and Haitham Hamdan in P/11 page 1 line 11 onward and P/12 page 1 line 28 onward]. Upon reading the words of the witnesses, the responsibility of the Defendant for these counts of the indictment cannot be cast in doubt, in accordance with our words above in which was stated that as the Defendant had fulfilled a key function within the framework of the cell that had departed to carry out the attack, he is a full accomplice in the acts of his colleagues and therefore in the causation of death.

**Counts 16, 17, 18 of the indictment**

These counts of the indictment have also been covered extensively by the witnesses [see the words of Haitham Hamdan in P/11 page 3 line 21 onward, Mohamed Abdullah in P/6 page 2 line 25 onward, Hussam Shahada in P/4 page 5 line 23 and onward, Mohamed Masleh in P/8 page 4 line 1 onward].

The role of the Defendant in this attack was similar to the role that he had in the other attacks, and therefore his degree of responsibility is identical.

**Counts 19, 20, 21**

The base of evidence to that which is described in these counts of indictment is solid. Hussam Shahada, Mohamed Abdullah, Mohamed Masleh and Haitham Hamdan all give extensive descriptions of the acts of the cell, including the acts of the Defendant [see P/4, page 6 line 21 onward, P/6 page 4, line 6 onward, P/8 page 4 line 17 onward and P/12 page 5 line 15 onward].

We may only concur with the exact analysis of the Prosecutor concerning the responsibility of the Defendant for the two shooting attacks that were carried out by his accomplices. Once the Defendant and his accomplices had decided to carry out a shooting attack in the tunnels of the "Begin" Road, and once the Defendant had driven his colleagues to the site and instructed them, as described in the 19th count of the indictment, he is to be considered responsible for all of their subsequent acts, pursuant to the provisions of Section 15 of the Rules of Liability for an Offense Order, 5728-1968.

[Stamp] P 6: 329

19

**Counts 22, 23, 24 of the indictment**

Concerning these counts of the indictment too, there is a large amount of evidence material [see Mohamed Abdullah in P/6 page 6 and line 17 onward, Mohamed Masleh in P/8 page 5 line 21]. These direct testimonies were also directly supported the words of Haitham Hamdan and Hussam Shahada.

Here too, the responsibility of the Defendant as an accomplice in the offenses is not cast in doubt, and therefore he must be convicted of them.

**Counts 25, 26, 27, 28, 29 of the indictment**

The part of the Defendant in dispatching the suicide terrorist who carried out the shooting attack that is the object of these counts of the indictment is unclear. The Defendant was involved in the planning and executing the transport of the terrorist up to […]

- 10 -

[Stamp] P 6: 329 [continued]

20

Date:  7 Av 5764                                                                                    Case No.: 3262/02
       July 25, 2004

[…] Hanevi'im Street, as indicated by P/6 page 8 line 1 onward. These words are supported by P/8 page 7 line 6 onward.

**Counts 30, 31 of the prosecution**

Mohamed Abdullah states in P/6 page 9 line 13 onward that which was described in these counts of the indictment.

Once the Defendant started to execute his intent to cause the deaths of others using the suicide terrorist whom he transported, while the Defendant and the said suicide terrorist possessed the means suitable for performing the offense, he is to be considered responsible for the offense of attempting to cause intentional death and possession of war material, as described in the indictment [see Judea and Samaria Appeal 311&318/03 and Judea Case 42947/01 concerning the foundations of the offense of attempting to cause intentional death].

**Count 32 of the indictment**

Evidence has been found for this count of the indictment in the words of Hussam Shahada and Mohamed Abdullah [P/4, page 8 lines 13-23, P/5 page 1 line 21].

**Endnote**

In view of the conclusions above and after all of the counts of the indictment that have been attributed to the Defendant have been founded to be properly substantiated in the evidence of the prosecution, we convict the Defendant of them.

**Handed down and announced this day, July 25, 2004, in public and in the presence of the parties.**

|        [Signature]        |        [Signature]        |        [Signature]        |
|:-------------------------:|:-------------------------:|:-------------------------:|
|         **Judge**         |  **President of Court**   |         **Judge**         |

- 11 -

[Stamp] P 6: 330

21

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

              Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

              Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 6: 320-330.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as P 6: 320-330.

Dated: May 8, 2014

_____
Rina Ne'eman

ss.: New Jersey

On the 8 day of May, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
8 day of May, 2014

_____
Notary Public

SHELLY TESSEIN
Notary Public
State of New Jersey
My Commission Expires Nov. 16, 2017
I.D.# 2427073

תאריך: ז' אב, תשס"ד
25 יולי, 2004

תיק מס': 3262/02

## בית המשפט הצבאי יהודה

בפני כב' האב"ד: סא"ל נתנאל בנישו
שופט: סרן אלי תוסיה-כהן
שופט: סרן אברהם איינהורן

התביעה הצבאית
(באמצעות סגן סרג'י מורין)

נגד

הנאשם: פארס צאדק מחמד ע/אנם   ת.ז 25806985 / שב"ס - נוכח
(באמצעות ב"כ עו"ד אוסאמה סעדי)

## הכרעת דין

נגד הנאשם הוגש כתב אישום המייחס לו 32 עבירות כדלקמן:

1. חברות בהתאחדות בלתי מותרת לפי תקנה 85 לתקנות ההגנה (שעת חירום), 1945, בכך שהחל משנת 02' ועד מעצרו היה חבר בחולייה צבאית אשר שמה לה למטרה ביצוע פיגועים נגד ישראלים. חולייה זו פעלה בחסות גדודי חללי אלאקצה, הזרוע הצבאית של ארגון פתח. יחד עם הנאשם פעלו בחולייה האמורה מוחמד מצלח, מוחמד עבדאללה, חוסאם שחדה, הייתם חמדאן, זידאן אלבדווי, ניזר והדאן ועלי עליאן.

2. שמונה עבירות של גרימת מוות בכוונה לפי סעיף 51 (א) לצו בדבר הוראות ביטחון תש"ל - 1970 וסעיף 14 (א) לצו בדבר הוראות כללי האחראיות לעבירה וחמש עבירות של נסיון לעבור עבירה זו. בעבירות אלה מגולמים שורה של פיגועים בהן נטל הנאשם חלק, אשר כתוצאה מהן קיפחו חייהם שמונה ישראלים ונעשה נסיון לגרום למותם של רבים נוספים.
ביום 26/07/01 נפגש הנאשם עם חוסאם שחאדה ועלי עליאן, חברי חולייתו. עלי עליאן, שהיה חמוש בשני כלי נשק, מסר לנאשם ולחוסאם כי בכוונתו לבצע פיגוע ירי באזור גבעת זאב. הנאשם וחוסאם הביעו את הסכמתם להשתתף בפיגוע האמור. השלושה נסעו לאזור כפר אלגיב שם נשאר הנאשם ברכב על מנת לשמש כשומר ומתריע בעת שחבריו התמקמו בסמוך לכביש 436. בסמוך לשעה 22:50 משהבחינו ברכב מסוג ניסאן אלמרה בו נסעו שמואל לנדאו, מאיר לוי ורונן לנדאו, ובכלי רכב נוספים בינהם משאית שהיתה נהוגה בידי מוטי נמיר, פתחו לעברן באש. מספר קליעים שפגעו ברכב גרמו למותו של רונן לנדאו ז"ל.
ביום 25/08/01 שוב פנה חוסאם שחאדה לנאשם ולעלי עליאן לבצע פיגועי ירי, הפעם באזור כביש 443. השלושה החליטו כי יצלמו את הפיגוע ועל כן גייסו את הייתם חמדאן לשמש כצלם. הנאשם וחבריו פנו למוחמד מצלח וביקשו ממנו נשק. זה סיפק להם תמ"ק MP-5. אז נסעו הארבעה לאזור כביש 443, כשהנאשם נסע ברכב איסוזו כקילומטר לפני הרכב בו נסעו חוסאם, עלי והייתם, במטרה להודיע לחבריו על מחסומים בדרך. בסמוך לשעה 22:30 הבחינו ליד תחנת הדלק דור אנרגיה, ברכב מסוג פולקסווגן פאסאט בו נסעו בני הזוג בן שלום, בתם ודנרון יוסף סוויר.

-1-

תאריך: ז׳ אב, תשס״ד  
25 יולי, 2004  
תיק מס׳: 3262/02

עלי עליאן, שנהג ברכב, עקף את רכב המשפחה ונסע במקביל אליו. בשלב זה פתחו חוסאם שחאדה והייתם חמדאן באש לעבר יושבי הרכב. בירי זה גרמו למותם בכוונה של בני הזוג יניב ושרון בן שלום ז״ל ושל דורון יוסף סווירי ז״ל ולפציעת בתם של יניב ושרון ז״ל.

ביום 15/09/01 נפגש הנאשם עם מחמד עבדאללה, חוסאם שחאדה, הייתם חמדאן ועלי עליאן. הנאשם הגיע למפגש זה כשהוא חמוש בתמ״ק MP-5 ואילו עלי עליאן הגיע חמוש באקדח. הנאשם וחבריו החליטו לצאת לירושלים ולבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים. על כן, נסעו בשעות חלילה מרמאללה לירושלים ברכבו של הנאשם מסוג איסוזו. הנאשם הסיע את חבריו לכביש 9 המחבר בין שכונת רמות לשכונת הגבעה הצרפתית. שם הראה הנאשם לחבריו איפה לבצע את הפיגוע המתוכנן ואיך להימלט לאחר מכן. בסיום סיור זה חזרו לרמאללה. בסביבות השעה 22:30 נסעו מחמד עבדאללה, הייתם חמדאן וחוסאם שחאדה לירושלים במטרה לבצע את הפיגוע שתוכנן. הנאשם נסע ברכבו לפני השלושה על מנת להודיע להם על מחסומים בדרך. חבריו של הנאשם התמקמו בכביש 9 והמתינו למעבר רכב בודד. בסמוך לשעה 23:10 הגיע למקום רכב מסוג רנו אקספרס ובו נסעו משה וייס ומאיר וייסבוייז. השלושה עקפו את הרכב וחוסאם והייתם פתחו לעברו באש, אשר כתוצאה ממנו נהרג מאיר וייסבוייז ז״ל ואילו משה וייס נפצע קשה בראשו.

ביום 15/01/02, יום לאחר שנהרג פעיל צבאי בכיר בתנזים, ראאד כרמי, נפגשו הנאשם, מחמד עבדאללה, מחמד מצלח, טארק א-נוף, זידאן אלבדווי ואחמד ברגותי. האחרון מסר כי מרואן ברגותי מבקש שהנאשם וחבריו יבצעו פיגוע נקמה באופן מיידי. לצורך זה מסר אחמד למחמד מצלח תמ״ק MP-5 ואקדח. הנאשם וחבריו החליטו לבצע פיגוע עוד באותו ערב. על כן יצאו לכיוון תחנת הדלק בגבעונים בסמוך לכניסה לגבעת זאב. הנאשם וחבריו החנו את כלי רכבם בסמוך למקום. מחמד מצלח וטארק א-נוף יצאו לבצע את הפיגוע בעוד הנאשם ומחמד עבדאללה ממתינים על מנת להתריע מפני הגעת כוחות צה״ל ולמלט את היורים לאחר ביצוע הפיגוע. בסמוך לשעה 19:45 הגיעו למקום רשל עיני ויואלה חן שנסעו ברכב פיאט ונכנסו לתחנת הדלק. מחמד מצלח וטארק א-נוף התקרבו לרכב וירו לעברן. יואלה חן ז״ל נהרגה כתוצאה מירי זה ואילו רשל עיני נפצעה באורח בינוני. הנאשם נסע מן המקום כדי לבחון האם קיימים בדרך מחסומים.

באמצע חודש ינואר 2002 התקשר הנאשם למחמד עבדאללה והודיע לו כי אחמד ברגותי מבקש להכניס מחבל מתאבד לעיר ירושלים והציע לו להסיע את המחבל ביחד עימו. מחמד עבדאללה הסכים להצעה. ביום 22/01/02 התקשר שוב הנאשם למחמד עבדאללה והודיע לו כי הכל מוכן לביצוע הפיגוע. הנאשם ומחמד ביצעו נסיעה מקדימה למצוא דרך בה אין מחסומים. לאחר מכן חזרו לרמאללה, שם הכירו את המחבל המתאבד שהיה חמוש ברוס״ר אם-16. הנאשם ומחמד הסתירו את כלי הנשק ברכב והסיעו את המחבל לרחוב שטראוס, שם הורידו את המחבל תוך שהם מסבירים לו כי עליו לרדת לרחוב יפו ושם לפתוח בירי. השניים ברחו מן המקום. המחבל פתח בירי לכל עבר ורצח את אורה (סבטלנה) סנדלר ז״ל ושרה המבורגר ז״ל ופצע 45 אזרחים נוספים.

3. 4 עבירות נוספות של ניסיון לגרימת מות בכוונה לפי סעיף 51(א) לצו בדבר הוראות ביטחון תש״ל - 1970 וכן סעיף 19 לצו בדבר כללי האחריות לעבירה בכך שביום 18/08/01 החליטו הנאשם ושותפיו לבצע פיגוע ירי בירושלים. הנאשם נסע ברכבו מסוג איסוזו לפני חבריו במטרה להודיע להם אודות מחסומים בדרך ולשמש כשומר ומתריע. כולם הגיעו לצומת בסמוך לנווה

-2-

תאריך: ז' אב, תשס"ד                                      תיק מס': 3262/02
25 יולי, 2004

1. יעקב, שם פתחו חבריו של הנאשם בירי לעבר אוטובוס אגד קו 45 במטרה
2. לגרום למות הנוסעים בו. כתוצאה מירי זה נפצעו רות שפירא בת שש שנים
3. ואנדרו פייצוש. מספר קליעים אף פגעו ברכב מסוג טרנזיט. ביום 03/10/01
4. החליט לבצע פיגוע ירי נוסף עם חבריו. לשם כך הצטיידו בכלי נשק. הנאשם
5. ושותפים נסעו לירושלים כשהנאשם בוחן האם קיימים מחסומים בדרך.
6. הנאשם הוביל את חבריו לכביש "בגין" והראה להם היכן לבצע את הפיגוע.
7. מכאן חזרו כל השותפים לבית חנינא. משם נסעו מחמד עבדאללה ומחמד
8. מצלח לכביש "בגין". בסמוך לשעה 23:35 ירה מחמד עבדאללה לעבר רכב
9. שנסע בכביש "בגין". בהמשך נסעו השניים לכביש 9 ושם ירו לעבר רכב נוסף
10. בו נסעו בני הזוג מלכה ופנחס כהן. השניים נפצעו באורח בינוני. היורים חזרו
11. לבית חנינא שם נאספו על ידי הנאשם ויתר השותפים.
12. בסוף חודש ינואר 2001 התקשר הנאשם למחמד עבדאללה והודיע לו כי
13. אחמד ברגותי מבקש להכניס מחבל מתאבד נוסף לירושלים. הנאשם ומחמד
14. סיכמו כי יסיעו את המחבל. מספר ימים לאחר מכן אסף את המחבל שהיה
15. חמוש ברוסי"ר אמ-16 והסיעו אותו לכיוון ירושלים. בהגיעו לשועפאט ביקש
16. המחבל לעצור ולהתפלל במסגד. הנאשם ומחמד הסכימו להצעה והותירו את
17. המחבל במסגד בעוד הם נוסעים לגבעת שאול על מנת לאתר מקום מתאים
18. לביצוע הפיגוע. משם חזרו לשועפאט אך המחבל נעלם.
19.

20. 4. 8 עבירות של החזקת נשק לפי סעיף 53(א) לצו בדבר הוראות ביטחון תש"ל -
21. 1970 בכך שבמסגרת פעולותיו שתוארו בסעיף קטן 2 לעיל החזיק בכלי נשק
22. שונים.
23.

24. 5. 3 עבירות של קשירת קשר לפי סעיף 22 לצו בדבר כללי האחריות לעבירה
25. בכך שבאמצע שנת 2000 קשר קשר עם אחרים לבצע פיגוע ירי בכביש מס' 1,
26. בן בשיולי 2001 קשר עם אחרים לבצע פיגועים נגד מטרות ישראליות ובכך
27. שבפברואר 2002 קשר עם אחרים להכניס מחבל מתאבד שלישי לירושלים.
28. תוכנית זו לא יצאה אל הפועל למרות הכנותיהם של הקושרים בעקבות
29. מעצרם.
30.

31. 6. סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד
32. מלחמתי, בכך שבאמצע שנת 2001 רכש תמי"ק MP-5.
33.

34. 7. אימונים צבאיים, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945
35. בכך שבחודש אוגוסט 2001 לימד את חוסאם שחאדה ומחמד עבדאללה
36. להשתמש ברוסי"ר אמ-16.
37.

38. 8. היזק לרכוש בזדון, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון תש"ל -
39. 1970 בכך שבמסגרת הפיגוע שבוצע ברחוב יפו 22/01/02 פגע המחבל שהובל
40. על ידי הנאשם במספר רב של חנויות, באוטובוסים, בכלי רכב ובמבנים
41. נוספים.
42.

43. <u>טענות הצדדים</u>
44.

45. התובע ביקש להרשיע את הנאשם בעבירות המיוחסות לו על סמך חומר הראיות
46. שהוגש בהסכמת הצדדים, ממנו עולה אחריותו של הנאשם כשותף מלא לכלל
47. העבירות. התובע ציין כי לנאשם היה היסוד הנפשי הדרוש לעבירות השונות, בראשן
48. עבירות גרימת חמות בכוונה וניסיון לגרימת מוות בכוונה.

-3-

תאריך: ז' אב, תשס"ד  
25 יולי, 2004

תיק מס': 3262/02

1  
2   הסניגור, מצידו, ציין תחילה כי הנאשם לא לקח כל חלק פעיל במעשה הירי, ואף לא  
3   החזיק בנשק. הסניגור ציין עוד כי יש לראות בהימנעות התביעה להביא עדים  
4   הנמצאים תחת ידה ושגם הם היו שותפים לעבירות בסיס להחלשת ראיותיה.  
5   הסניגור טען כי חלק מדברי העדים הינם עדות שמיעה שאין לסמוך עליה ולחילופין  
6   כי אין תוספת ראייתית מספקת לשם הרשעה על פי דברי העדים. הסניגור אף תקף  
7   את תוכנן של העדויות כבלתי הגיוניות, בלתי מהימנות ואף סותרות זו את רעותה.  
8  
9                             הראיות  
10  
11   כל הראיות בתיק זה הוגשו בהסכמת הצדדים וסומנו כדלקמן:  
12  
13       -  ת/1: אמרת העד חוסאם שחאדה מיום 18/02/02.  
14       -  ת/2: אמרת העד חוסאם שחאדה מיום 19/02/02.  
15       -  ת/3: אמרת העד חוסאם שחאדה מיום 12/03/02.  
16       -  ת/4: אמרת העד חוסאם שחאדה מיום 15/03/02.  
17       -  ת/5: אמרת העד מחמד עבדאללה מיום 11/03/02.  
18       -  ת/6: אמרת העד מחמד עבדאללה מיום 01/04/02.  
19       -  ת/7: אמרת העד מחמד מצלח מיום 25/02/02.  
20       -  ת/8: אמרת העד מחמד מצלח מיום 19/03/02.  
21       -  ת/9: אמרת הנאשם מיום 24/02/02.  
22       -  ת/10: אמרת הנאשם מיום 07/04/02.  
23       -  ת/11: אמרת העד הייתם חמדאן מיום 03/04/02.  
24       -  ת/12: אמרת העד הייתם חמדאן מיום 11/04/02.  
25  
26   הסכמה זו סוייגה בצורך בהצבת תוספת ראייתית לשם הרשעה על פי כל אחת מן  
27   האמרות הנ"ל.  
28  
29   כמו כן, בישיבה מיום 20/05/03 הודיעו הצדדים כי העובדות המתוארות בפרטי  
30   אישום 28-25,23,22,20,19,17,16,14-11,9,6,5 אינן מוכחשות וכל שבמחלוקת ביניהם  
31   הוא חלקו של הנאשם בעבירות אלה.  
32  
33   הנאשם אף וויתר על זכותו להעיד במסגרת פרשת ההגנה ובלבד שהתביעה לא  
34   תבקש לראות בוויתור זה תוספת ראייתית לראיותיה.  
35  
36   משכך, ולאור צמצום יריעת המחלוקת בפרטי אישום רבים לשאלת אחריות הנאשם  
37   לעבירות המיוחסות לו בהם, כל שנותר לנו הוא לבדוק האם התביעה הצבאית  
38   העמידה בפנינו תשתית ראייתית מספיקה לשם הרשעת הנאשם.  
39  
40   מכאן ולהבא נסקור, על כן, את פרטי האישום אחד לאחד.  
41  
42   אך בטרם נפנה למלאכה זו מתחייבות מספר הקדמות כדלקמן.  
43  
44                           יסודות עבירת גרימת המוות בכוונה  
45  
46   סעיף 51(א) לצו בדבר הוראות ביטחון תש"י - 1970 קובע כי:  
47

-4-

תאריך : ז' אב, תשס"ד                             תיק מס' : 3262/02
25 יולי, 2004

1  "הגורם בכוונה למותו של אחר דינו מוות או עונש אחר כפי שיורה בית
2  המשפט".
3
4  היסוד העובדתי של העבירה הינו ברור ביותר. נדרש כי מעשי הנאשם יביאו לתוצאה
5  קטלנית. היסוד הנפשי מצידו אינו דורש אותה כוונה תחילה המתחייבת בהתאם
6  לסעיף 300(2) לחוק העונשין הישראלי. די, על כן, כי נתגבשה אצל הנאשם ההחלטה
7  לבצע את מעשה ההמתה והחפץ בתוצאת המוות.
8
9  באשר לעבירת הנסיון לגרום למוות בכוונה הדברים אינם ברורים פחות. וכך הם
10 סוכמו על ידי בית משפט זה במקום אחר :
11
12 "אין צורך להכביר מילים אודות ניתוח עבירה זו, אשר זכתה לפרשנות
13 מקיפה בפסיקת בתי המשפט. ניתן לומר בתמצית כי על מנת להוכיח ניסיון
14 לגרימת מוות, קיים צורך, מהפן העובדתי, להראות כי הנאשם עשה מעשה
15 גלוי לקראת ביצוע העבירה, כלשון סעיף 20 לצו בדבר כללי האחריות
16 לעבירה, תשכ"ח - 1968:
17
18 "התחיל להוציא מן הכוח אל הפועל את כוונתו... באמצעים
19 מתאימים לביצוע כוונתו וכשהוא מביא לידי ביטוי את כוונתו על ידי
20 מעשה גלוי".
21
22 [ראה פרשנות מקיפה על המעשה הגלוי בע"פ 5150/93 סריס נ' מד"י פ"ד
23 מח (2) 183, וע"פ 9511/01 קובקוב נ' מד"י. וראה עוד י. קדמי על הדין
24 בפלילים, פרק חמישי, עאמוד 122, ובאזור ע' איו"ש 102/01 עולמה נ'
25 התובי"ץ. ובאשר להשפעת תיקון 39 לחוק העונשין המשפט ג' (1996) 297].
26
27 באשר ליסוד הנפשי הדרוש לעבירה, נפנה לע' איו"ש 222/93 הנ"ל בו קבע
28 ביהמ"ש הצבאי לערעורים כדלקמן:
29
30 "כבר נקבע כי אין בין ניסיון להריגה לבין ניסיון לרצח (סעיף 305
31 לחוק העונשין) ולא כלום, ובשני המקרים יש להוכיח את כוונת
32 הקטילה הממשית, קרי את החפץ במות הקורבן, ואין סגי פחות
33 מזה (פזיזות לגבי אותה תוצאה). מאידך, גם אין צורך להוכיח את כל
34 יסודות ה"כוונה תחילה" (ראה י. קדמי, שם, פרק 19 סימן שביעי
35 ופרק 20 סימן שלישי והפסיקה המובאת שם, ופסק הדין המנחה
36 לעניין זה ע"פ 155/59 דרעי נ' היועץ המשפטי פ"ד יד 233, ע"פ
37 11/89 סלימן בן פאהד נ' מד"י - לא פורסם).
38 ואם בניסיון להריגה כך, הרי בניסיון לגרימת מוות בכוונה על אחת
39 כמה וכמה. אמור מעתה, שאם על מנת להוכיח את העבירה
40 המושלמת של גרימת מוות בכוונה די להוכיח יסוד נפשי של פזיזות
41 לגבי התוצאה הקטלנית, הרי שבעבירת הניסיון לאותה העבירה, יש
42 להוכיח את הכוונה הפלילית ברמתה הגבוהה, קרי החפץ במות
43 הקורבן".
44
45 קיים צורך, על כן, מחד במעשה גלוי, ומאידך במודעות לטיב המעשה ובחפץ
46 בתוצאת הקטלנית." [ראה תיק בימ"ש 4603/01].
47
48
49

-5-

תאריך: ז' אב, תשס"ד    תיק מס': 3262/02
25 יולי, 2004

<u>דיני השותפות באזור</u>

תחילה מן הראוי להזכיר כי אדם יכול שיחוב אחריות לעבירה הן "כמבצע עיקרי", דהיינו כמי שעשה אחד מהמעשים הנמנים על יסודות העבירה, והן כשותף או כמסייע לעבירה, אשר מעורבותו באחריות לביצועה נעוצה בהתנהגות המלווה את התנהגותו של המבצע העיקרי, מבלי שהיא נמנית בין מרכיבי האקטוס ראוס של העבירה. ויפים למקרה זה דברי בית המשפט העליון בע"פ 5235/93 לוי נ' **מדינת ישראל** פ"ד מח(5) 550:

"ביסוד הרחבת האחריות הפלילית מכח דיני השותפות, מעבר לביצוע עיקרי ומושלם של העבירה, מונחת ההשקפה כי מי שנכון לתרום להגשמת מטרה משותפת, כשהוא מודע לפחות לאפשרות שהגשמת אותה מטרה כרוכה בפגיעה בערך חברתי מסויים - ראוי לענישה. בין היסוד הנפשי (קרי: הנכונות לתרום לפגיעה משותפת בערך חברתי מסויים) לבין היסוד העובדתי הקבוע בעבירה קיימת זיקת גומלין. שכן משהוכח יסוד "נפשי" זה, אין עוד חשיבות לחלוקת התפקידים בין המעורבים באירוע. מכאן שאבן הבוחן לקיומה של שותפות היא מודעות המעורבים באירוע העברייני לאפשרות הפגיעה בערך חברתי מסויים עקב פעילותם המשותפת".

ס' 14 ו-15 לצו בדבר כללי האחריות לעבירה, תשכ"ח - 1968 קובעים את דיני השותפות, הסיוע והשידול באיזור.

הסעיף הרלוונטי לעניינו קובע כדלקמן:

"ס' 14(א): אם בוצעה עבירה ייחשב כל אחד מן האנשים כדלקמן, כאילו השתתף בביצוע העבירה וכאילו אשם בעבירה, ואפשר להאשימו בביצוע העבירה, זאת אומרת:
(1) כל אחד שבפועל עשה את המעשה או את אחד המעשים, או אשר חדל את המחדל, או אחד המחדלים המהווים את העבירה.
(2) כל העושה או חדל מלעשות איזה מעשה כדי לאפשר לאדם אחר את ביצוע העבירה או כדי לסייע בידיו בביצוע העבירה.
(3) כל אדם המסייע בידי אדם אחר בביצוע העבירה בין שהוא נוכח בשעת ביצוע העבירה ובין שאינו נוכח בשעת ביצוע העבירה. אדם נחשב כאילו סייע, אם נוכח במקום שבו נעשה העבירה כדי להתגבר על התנגדות או כדי לחזק את החלטתו של מבצע העבירה האמיתי או כדי להבטיח את ההוצאה לפועל של העבירה העומדת להיעשות"

על פי סעיף קטן 1 אחריותו של הנאשם כמבצע בצוותא אינה מצריכה ביצוע של כל רכיבי ההתנהגות הפלילית הנדרשת להרשעה. די אם חבר הנאשם לאחרים ותרם במקצת להתרחשות המעשה הפלילי [ראה ע"פ 2798/95 **פלוני נ' מד"י** פ"ד נא (3) 388 וע"פ 4389/93 **מרדכי נ' מד"י** פ"ד נ (3) 239].

במקרה הנוכחי אף מן הראוי להזכיר כי כאשר חוברים מספר עבריינים על פי תכנון מוקדם:

"כככלל עומדת בבסיס האחריות של 'מבצע בצוותא' 'חבירה' של מספר בני אדם לביצועה של משימה עבריינית משותפת, כאשר לכל אחד מהחברים בחבורה 'תפקיד' כמבצע הכולל של 'הגשמת המשימה'" [ע"פ 5589/98 **סולטאן נ' מד"י** וראה גם עניין פלוני הנ"ל עמ' 404].

תאריך : ז' אב, תשס"ד  תיק מס' : 3262/02
25 יולי, 2004

1. **זיהוי הנאשם כאדם המופלל באמרות העדים**
2.
3. העד חוסאם שתאדה מוסר בת/1 כי מכיר אדם ושמו "פראס ע'אנם חיטאוי בן 27
4. נשוי ויש לו ילדים אני חושב שלושה או ארבעה יש למשפחתו חברת חפירות ויש
5. להם באגרים והוא עובד על באגרי". בת/4 מוסיף העד כי חברו הטוב פראס ע'אנם
6. צאדק חיטאוי גר בסמיר אמיס.
7.
8. העד מחמד עבדאללה מוסר בת/5 כי "פראס צאדק אחמד ע'אנס כבן 27 מכפר עקב
9. נשוי עם ארבעה ילדים ולו חברה לחפירות" נפגש עימו בחברת חוסאם שתאדה. כך
10. גם מוסר העד בת/6 כי "חברו מזה יותר מזה עשר שנים פראס צאדק אחמד ע'אנס
11. נשוי ואב לארבעה ילדים עובד בעבודות עפר ולמשפחתו חברה גדולה לעבודות עפר".
12.
13. העד מחמד מצלח מוסר בת/8 אודות "פראס חיטאוי עמיס כבן 30 מסמיר עובד על
14. טרקטור באגר בעל גוף מלא ויש לו רכב מסוג איסוזו מסחרי דאבל קבינה בצבע
15. חום".
16.
17. העד הייתם חמדאן מוסר בת/11 אודות "פראס חיטאוי כבן 27 נשוי מכונה "אבו
18. אדיב" עובד עם אביו כנהג על טרקטור באגר גר בסמיר אמיס ויש ברשותו רכב
19. מסחרי מדגם איסוזו בצבע אפור".
20.
21. באמרתו ת/10 מאשר הנאשם כי הפרטים שנמסרו לעיל הינם פרטיו האישיים. כן
22. מוסר הנאשם כי למשפחתו שם משפחה נוסף, אל חיטאוי, כי הוא מתגורר בצומת
23. כפר עקב - סמיר עמיס, כי הוא עובד כנהג באגר בחברת החפירות של אביו וכי
24. לחברה מספר כלי רכב, ביניהם איסוזו בצבע אפור שבו הוא עושה שימוש על פי
25. צרכיו. הנאשם אף אישר הכרות עם חוסאם שתאדה, מחמד מצלח ומחמד
26. עבדאללה. הנאשם אף ציין כי הוא נשוי לשתי נשים ואב לארבעה ילדים.
27.
28. עינינו הרואות כי זיהוי הנאשם כמי שהוזכר באמרותיהם של עדי התביעה אינו
29. מעורר כל קושי.
30.
31. **הגשת חומר ראיות בהסכמה**
32.
33. כאמור כל חומר הראיות בתיק זה הוגש בהסכמה.
34.
35. להסכמה זו משמעות ראייתית חשובה, עליה עמד ביהמ"ש לערעורים כאשר קבע:
36.
37. "כבר נפסק לא אחת בעבר כי הגשת אמרות בכתב בהסכמה, ללא כפירה או
38. הסתייגות מתוכנן, פירושה הסכמה לאמור בהן" [ע' איו"ש 85/94 אבו מחסן
39. נ' התוב"ץ פש"מ ט 359 וראה גם ע' איו"ש 512/03 התוב"ץ נ' חלילה וע'ד"י
40. איו"ש 114/01 התוב"ץ נ' אבו הלאל בו חזר ודן ביהמ"ש בנפקות הגשת
41. הראיות בדרך זו].
42.
43. כמו כן, גם אם תמצא בחומר הראיות ראייה אשר פסולה היא, הרי שהסכמת
44. הצדדים להגישה הכשירה אותה [ראה י' קדמי **על הראיות** חלק ב' עמוד 914
45. והפסיקה המצוטטת שם].
46.
47. כאמור לעיל, הצדדים סייגו הסכמתם להגשת הראיות בהימצאות דבר לחיזוק לשם
48. הרשעת הנאשם על פי אותן ראיות. יאמר מיד כי עיון בראיות מלמד שתוספת
49. כאמור נמצאה לרוב, מאחר שבהיות מעשיו של הנאשם מסכת מתמשכת אחת של

-7-

תאריך : ז' אב, תשס"ד                                          תיק מס' : 3262/02
25 יולי, 2004

1. מעשים נגד בטחון האזור שבוצעו בחבורה אחת, די באימות פרטים המתייחסים
2. לאחת מן העבירות כדי לאמת את כלל דבריו של עד ועד ולספק את התוספת
3. הראייתית הנדרשת. כפי שנראה בהמשך דברנו פרטי אישום לא מועטים מגובים
4. במספר מקורות ראייתיים שונים, ועל כן, נוכל לקבוע כבר עתה כי דברי העדים
5. השונים באמרותיהם מחזקים אלה את אלה במידה מספקת לסמוך הרשעת הנאשם
6. על פיהם [אודות מהות ה"דבר לחיזוק" כראיה מאמתת אותה ניתן לדלות אף
7. מאמרות הטעונות חיזוק בעצמן נכתב רבות נפנה על כן ל-י' קדמי **על הראיות** 172
8. ולעד"י אי"ש 9/01 **התוב"צ נ' זעתרי** פש"מ יא 285] .
9.
10. דברים אלה הינם נחלת הכלל ואולם הסניגור מבקש כי נסטה מהם ונבחן את
11. האמרות בעין ביקורתית עד כדי שלילת משקלם הראייתי. בחנו בקשה זו וסבורים
12. אנו כי יש לדחותה. ראשית, עלינו לציין, במידה לא מועטה של תרעומת, כי לו ביקש
13. הסניגור, בשלב כל שהוא מן המשפט, לסייג את הסכמתו להגשת האמרות, בניגוד
14. להלכה המקובלת והידועה, היה עליו לעשות כן בשלב הגשתן, כך שהייתה ניתנת
15. הזדמנות לתביעה להביא את עדיה. שנית, סטיה מהלכה כה מושרשת במקומותינו
16. מחייבת טעמים כבדי משקל ואנו לא מצאנו בדברי הסניגור ולא קוצו של יוד להאחז
17. בו. הלכת ביהמ"ש הצבאי לערעורים עליה עמדנו, שורשיה בהגיון הבריא ובשכל
18. הישר לפיו אם הנאשם חולק על הדברים הנחזים להיות שלו, עליו למסור להם
19. גירסה נגדית. הנאשם שבפנינו, לא רק שלא טען בשלב כלשהו של הדיון כי אמרות
20. העדים אינן משקפות את האמת, אלא מילא פיו מים ובחר שלא להעיד כאשר ניתנה
21. לו הזדמנות לעשות כן. במצב זה, משלא העמיד הנאשם גירסה נגדית לגרסה העולה
22. מדברי העדים כולם, איננו יכולים להתלות בספקולציות הסניגור.
23.
24. יתרה מזו, חזרנו ונדרשנו לשאלה מדוע עלינו לחבר הכרעת דין זו כשבפועל הנאשם
25. לא חלק על ראיה אחת מן הראיות הברורות של התביעה ולא העמיד כל קו הגנה
26. נגדי.
27.
28. לתמיהה זו לא מצאנו תשובה ועל כן, אין לנו אלא למלא אחר חובתנו על פי דין
29. ולהכריע בדבר אחריותו של הנאשם לעבירות המיוחסות לו בכתב האישום.
30.
31.
32. **פרט האישום הראשון**
33.
34. האמור בפרט אישום זה מייחס לנאשם עבירה של חברות בחוליה צבאית שפעלה
35. תחת חסות "גדודי חללי אלאקצא".
36.
37. פרט אישום זה מבוסס כדבעי בראיות התביעה. כך בת/6 (עמ' 1,2 בעיקר שורה 23
38. ואילך), ת/11 (עמ' 1 שורה 11 ואילך) ות/12 (עמ' 1 שורה 18 ואילך).
39.
40. **פרט האישום השני**
41.
42. פרט אישום זה מוצא את ביטויו בת/4 (עמ' 7 שורה 19 ואילך). משקשר הנאשם קשר
43. עם חוסאם שחאדה לבצע פיגוע ירי לעבר כלי רכב הנעים בכביש בין תל אביב
44. לירושלים, הרי שיש להרשיעו גם בעבירה זו.
45.

-8-

P 6: 327

### פרט האישום השלישי

העד מחמד עבדאללה מוסר אודות נשק מסוג MP-5 אותו רכש הנאשם (ת/6 עמ' 11 שורה 3 ואילך). עם זאת, נציין כי הנשק שנרכש היה מקולקל ועל כן הוחזר על ידי הנאשם לאדם שמכרו.

### פרט האישום הרביעי

פרט אישום זה מוצא את ביטויו בת/6 (עמ' 1 שורה 25 ואילך).

### פרטי אישום 5,6,7:

אף העובדות המתוארות בפרטי אישום אלה מתוארות בהרחבה על ידי חוסאם שחאדה ב-ת/4 החל מעמ' 1 שורה 18 ואילך.

הנאשם אומנם לא ירה בארוע המתואר, ואולם אחריותו כשותף מלא לעבירה אינה מוטלת בספק. הנאשם פנה יחד עם חברו חוסאם שחאדה לעלי עליאן והשלושה סיכמו לבצע פיגוע ירי. לאחר מכן נפגשו השלושה פעם נוספת כשעלי עליאן מביא עימו שני כלי נשק. השלושה נסעו לאזור גבעת זאב, כשהנאשם מחזיק בנשק. בעוד הנאשם נותר ברכב לשמור עליו, פנו שני חבריו לכביש הראשי ובהגיע רכב ישראלי, פתחו לעברו בירי אשר גרם למותו של נער בן 17.

עינינו הרואות כי הנאשם נטל חלק הן בשלב התכנון של הפיגוע והן בשלב הביצוע כששימש כנהג החוליה. פעולותיו אלה של הנאשם מציבות אותו בין אלה שנטלו חלק משמעותי בהוצאת הפיגוע אל הפועל, ומשכך יש להציב את הנאשם במעגל הפנימי של העבירה. אף באשר ליסוד הנפשי של הנאשם, לא יכול להיות כל ספק כי מי שיוצא עם חבריו לפיגוע ירי כשברשותו כלי נשק התקפיים, גמלה בליבו ההחלטה לגרום למותם של אחרים בכוונה.

משהעובדות הנוספות שפורטו בפרטים אלה אינן במחלוקת, ומשהשתתפותו של הנאשם גם היא ברורה, כל שנותר לנו הוא להרשיע את הנאשם בעבירות המיוחסות לו בפרטים אלה.

### פרט האישום השמיני

העד מחמד עבדאללה מתאר באמרתו (ת/6 עמ' 2 שורה 4 ואילך) אודות האימון הצבאי המתואר בפרט אישום זה.

### פרטי אישום 9,10

גם באשר לפרטי אישום אלה, התשתית העובדתית מבוססת היטב [ראה ת/4 עמ' 2 שורה 22 ואילך, אליה יש לצרף את ת/6 עמ' 2 שורה 9 ואילך]. גם לפיגוע זה היה הנאשם שותף מלא כשנטל חלק בקבלת ההחלטה לבצע את הפיגוע ושימש כשומר, מתריע ומסמן לחבריו. נוכח אופי המעשה, ברורה כוונתם של השותפים, ביניהם הנאשם, וגם כאן לא נותר כל ספק באשר לצורך להרשיע את הנאשם בעבירות המיוחסות לו בפרטים אלה.

תאריך : ז' אב, תשס"ד
25 יולי, 2004

תיק מס' : 3262/02

### פרטי אישום 11,12,13,14,15

לגבי פרטי אישום אלה קיים חומר ראיות רב היקף. שלושה מעורבים נוספים בפיגוע, חוסאם שחאדה, מחמד עבדאללה והייתם חמדאן, מוסרים תאורים מפורטים באשר להשתלשלות הארועים בהם הביאו הנאשם ושותפיו למותם של בני הזוג בן שלום ז"ל, של דורון יוסף סווירי ז"ל ולפציעתה של בתם של בני הזוג [ראה דבריהם של חוסאם שחאדה ב-ת/4 עמ' 3 שורה 19 ואילך, מחמד מצלח ב-ת/8 עמ' 3 שורה 2, והייתם חמדאן ב-ת/11 עמ' 1 שורה 11 ואילך ו-ת/12 עמ' 1 שורה 28 ואילך]. למקרא דבריהם של העדים, אחריותו של הנאשם בגין פרטי אישום אלה אינה יכולה להיות מוטלת בספק, בהתאם לדברינו דלעיל לפיהם, משמילא הנאשם תפקיד מרכזי במסגרת החוליה שיצאה לבצע את הפיגוע, הינו שותף מלא למעשיו של חבריו ומכאן לגרימת המוות.

### פרטי אישום 16,17,18

אף פרטי אישום אלה זכו להתייחסות נרחבת מצד העדים [ראה דבריהם של הייתם חמדאן ב-ת/11 עמ' 3 שורה 21 ואילך, מחמד עבדאללה ב-ת/6 עמ' 2 שורה 25 ואילך, חוסאם שחאדה ב-ת/4 עמ' 5 שורה 23 ואילך, מחמד מצלח ב-ת/8 עמ' 4 שורה 1 ואילך].

תפקידו של הנאשם בפיגוע זה היה דומה לתפקיד אותו מילא בפיגועים האחרים, ועל כן גם מידת אחריותו זהה.

### פרטי אישום 19,20,21

הבסיס הראייתי למתואר בפרטי אישום אלה מוצק. הן חוסאם שחאדה, הן מחמד עבדאללה, הן מחמד מצלח, והן הייתם חמדאן מוסרים תיאורים נרחבים של מעשי החוליה, ביניהם מעשיו של הנאשם [ראה ת/4 עמ' 6 שורה 21 ואילך, ת/6 עמ' 4 שורה 6 ואילך, ת/8 עמ' 4 שורה 17 ואילך, ו-ת/12 עמ' 5 שורה 15 ואילך].

אין לנו אלא להצטרף לניתוח המדויק של התובע באשר לאחריותו של הנאשם לשני ארועי הירי שבוצעו על ידי שותפיו. משקבע הנאשם עם שותפיו לבצע פיגוע ירי במנהרות של כביש "בגין", ומשהסיע הנאשם את חבריו למקום והדריכם, כמתואר בפרט אישום 19, הרי שיש לראותו אחראי לכלל מעשיהם לאחר מכן, זאת מכוח הוראות סעיף 15 לצו בדבר כללי האחריות לעבירה, תשכ"ח - 1968.

### פרטי אישום 22,23,24

גם בנוגע לפרטי אישום אלה קיים חומר ראייתי רב היקף [ראה מחמד עבדאללה ב-ת/6 עמ' 6 שורה 17 ואילך, מחמד מצלח ב-ת/8 עמ' 5 שורה 21]. לעדויות ישירות אלה אף נמצאו תימוכין בדבריהם של הייתם חמדאן וחוסאם שחאדה.

גם כאן אחריותו של הנאשם כשותף לעבירות אינה מוטלת בספק, ועל כן דין הוא כי יורשע בהן.

### פרטי אישום 25,26,27,28,29

חלקו של הנאשם בשליחת המחבל המתאבד שביצע את פיגוע הירי נשוא פרטי אישום אלה ברור. הנאשם היה מעורב בתכנון ובביצוע הובלתו של המחבל עד לרחוב

-10-