Date:  7 Av 5764                                                                                          Case No.: 3262/02
      July 25, 2004

[…] acts against the security of the Area that was carried out by a single gang, it is enough to verify the details relating to each of the offenses to verify all of the words of each and every witness and provide the required additional evidence. As we shall see, further to our statements, many counts of indictment are substantiated by a number of different sources of evidence and we can therefore determine even at this point that the words of the various witnesses in their statements support one another sufficiently to support the conviction of the Defendant thereby [a lot has been written about the nature of a "supportive evidence" as verifying evidence that may be gained even from statements that by themselves require support; we therefore apply to Y. Kadmi **On Evidence** 172 and Judea and Samaria Single Judge Appeal 9/01 **the Military Prosecutor v. Za'atari,** Selected Verdicts of the Military Court in the Held Territories 11 285].

These words are in the public domain, but the defense counsel asks us to deviate from them and examine the statements with a critical view to the point of negating their evidential weight. We have examined this motion and we believe that it must be dismissed. Firstly, we must point out, with significant degree of outcry, that had the defense counsel asked, at any stage of the trial, to pose conditions to his consent to the filing of the evidence, in contravention of the common, known practice, he should have done so when they were filed, so that the prosecution would have had the opportunity to bring forth its witnesses. Secondly, deviation from a rule that is rooted hereabouts requires grounds of great import, and we have not found in the words of the defense counsel even a shred of reasoning to substantiate such a deviation. The rule of the Military Appellate Court that we have discussed is rooted in healthy logic and common sense whereby if the Defendant disputes words that appear to be his, he must give an account to the contrary. The Defendant before us not only did not contend at any stage of the hearing that the statements of the witnesses did not reflect but truth, but kept silent and opted not to testify when he was given an opportunity to do so. In this state, as the Defendant did not provide an account contravening the account arising from the words of all of the witnesses, we cannot rely on the speculations of the defense counsel.

Moreover, we have repeatedly attended to the question of why we must hand down this verdict while the Defendant did not dispute any of the clear evidence of the prosecution and did not provide any line of defense to the contrary.

We have not found any answer to this question and therefore we must fulfill our lawful duty and settle the question of the responsibility of the Defendant for the offenses that are attributed to him in the indictment.

[Stamp] P 6: 327

15

### First count of the indictment

That which has been set forth in this account attributes to the Defendant an offense of membership in a military cell that operated under the auspices of the "Al Aqsa Martyrs Brigades".

This count of indictment is properly substantiated in the evidence of the prosecution. See P/6 (pages 1, 2, primarily line 23 onward), P/11 (page 1 line 11 onward) and P/12 (page 1 line 8 and onward).

### Second count of the indictment

This count of indictment is expressed by P/4 (page 7 line 19 onward). Once the Defendant conspired with ▮▮▮▮▮▮ to carry out a shooting attack against vehicles driving on the highway between Tel Aviv and Jerusalem, he must also be convicted of this offense.

- 8 -

[Stamp] P 6: 327 [continued]

Date: 7 Av 5764                                                                                            Case No.: 3262/02
       July 25, 2004

### Third count of the indictment

Witness ▬▬▬▬▬ discusses an MP-5 type weapon that the Defendant purchased (P/6, page 11 line 3 onward). However, we must point out that the weapon purchased did not work and was therefore returned by the Defendant to the person who had sold it.

### Fourth count of the indictment

This count is expressed by P/6 (page 1 line 25 onward).

### Counts 5, 6, 7 of the indictment:

The facts described in these counts are also expansively described by ▬▬▬▬ in P/4, from page 1 line 18 onward.

The Defendant did not do any shooting in the event described, but his responsibility as a full accomplice to the offense is not cast in doubt. The Defendant and his colleague ▬▬▬▬ approached ▬▬▬▬ and the three agreed to carry out a shooting attack. Thereafter the three met again, ▬▬▬▬ having brought two weapons with him. The three traveled to the area of Givat Ze'ev, the Defendant possessing a weapon. While the Defendant remained in the vehicle to guard it, his two colleagues went to the main road and when an Israeli vehicle arrived, opened fire at it and causing the death of a 17 year old teenage boy.

We can see that the Defendant took part in the stage of planning the attack and in the stage of execution, by serving as the driver of the cell. These actions of the Defendant put him among those who took a significant part in the execution of the attack, and as a result, the Defendant must be assigned to the inner circle of the offense. Concerning the mental foundation of the Defendant, there can be no doubt that a person who departs with his colleagues for a shooting attack while armed with offensive weapons has reconciled with the decision to cause the intentional deaths of others.

As the other facts set forth in these counts are undisputed, and the participation of the Defendant is also clear, we are only left to convict the Defendant of the offenses attributed to him in these counts.

### The eighth count of the indictment

Witness ▬▬▬▬▬ describes in his statement (P/6 page 2 line 4 onward) the military training described in this count.

[Stamp] P 6: 328

### Counts 9, 10 of the indictment

For these counts too, the factual basis is well established [see P/4, page 2 line 22 onward, to which P/6 page 2 line 9 onward may be attached]. In this attack too, the Defendant was a full partner by taking part in making the decision to carry out the attack and serving as a spotter, lookout and pathfinder for his colleagues. In view of the character of the act, the intent of the participants, the Defendant among them, was clear, and here too there is no doubt concerning the need to convict the Defendant of the offenses that are attributed to him in these counts.

- 9 -

[Stamp] P 6: 328 [continued]

Date:  7 Av 5764                                                                                                                                                 Case No.: 3262/02
      July 25, 2004

### Counts 11, 12, 13, 14, 15 of the indictment

Concerning these counts, there is a large amount of evidence material. Three other persons involved in the attack, ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬ and ▬▬▬▬▬▬▬ give detailed descriptions on the chain of events by which the Defendant and his accomplices led to the death of the late Ben-Shalom couple, the late Doron Yosef Sviri and the injury of the daughter of the couple [see the works of ▬▬▬▬▬▬ in P/4 page 3 line 19 onward, ▬▬▬▬▬▬▬▬ in P/8 page 3 line 2, and ▬▬▬▬▬▬ in P/11 page 1 line 11 onward and P/12 page 1 line 28 onward]. Upon reading the words of the witnesses, the responsibility of the Defendant for these counts of the indictment cannot be cast in doubt, in accordance with our words above in which was stated that as the Defendant had fulfilled a key function within the framework of the cell that had departed to carry out the attack, he is a full accomplice in the acts of his colleagues and therefore in the causation of death.

### Counts 16, 17, 18 of the indictment

These counts of the indictment have also been covered extensively by the witnesses [see the words of ▬▬▬▬▬▬ in P/11 page 3 line 21 onward, ▬▬▬▬▬▬ in P/6 page 2 line 25 onward, ▬▬▬▬▬▬ in P/4 page 5 line 23 and onward ▬▬▬▬▬▬ in P/8 page 4 line 1 onward].

The role of the Defendant in this attack was similar to the role that he had in the other attacks, and therefore his degree of responsibility is identical.

### Counts 19, 20, 21

The base of evidence to that which is described in these counts of indictment is solid ▬▬▬▬ ▬▬▬▬▬▬▬▬▬, ▬▬▬▬▬▬ and ▬▬▬▬▬▬ all give extensive descriptions of the acts of the cell, including the acts of the Defendant [see P/4, page 6 line 21 onward, P/6 page 4, line 6 onward, P/8 page 4 line 17 onward and P/12 page 5 line 15 onward].

We may only concur with the exact analysis of the Prosecutor concerning the responsibility of the Defendant for the two shooting attacks that were carried out by his accomplices. Once the Defendant and his accomplices had decided to carry out a shooting attack in the tunnels of the "Begin" Road, and once the Defendant had driven his colleagues to the site and instructed them, as described in the 19th count of the indictment, he is to be considered responsible for all of their subsequent acts, pursuant to the provisions of Section 15 of the Rules of Liability for an Offense Order, 5728-1968.

[Stamp] P 6: 329

### Counts 22, 23, 24 of the indictment

Concerning these counts of the indictment too, there is a large amount of evidence material [see ▮ in P/6 page 6 and line 17 onward, ▮ in P/8 page 5 line 21]. These direct testimonies were also directly supported the words of ▮ and ▮

Here too, the responsibility of the Defendant as an accomplice in the offenses is not cast in doubt, and therefore he must be convicted of them.

### Counts 25, 26, 27, 28, 29 of the indictment

The part of the Defendant in dispatching the suicide terrorist who carried out the shooting attack that is the object of these counts of the indictment is unclear. The Defendant was involved in the planning and executing the transport of the terrorist up to […]

- 10 -

[Stamp] P 6: 329 [continued]

20

Date:  7 Av 5764                                                                              Case No.: 3262/02
       July 25, 2004

[…] Hanevi'im Street, as indicated by P/6 page 8 line 1 onward. These words are supported by P/8 page 7 line 6 onward.

**Counts 30, 31 of the prosecution**

[redacted] states in P/6 page 9 line 13 onward that which was described in these counts of the indictment.

Once the Defendant started to execute his intent to cause the deaths of others using the suicide terrorist whom he transported, while the Defendant and the said suicide terrorist possessed the means suitable for performing the offense, he is to be considered responsible for the offense of attempting to cause intentional death and possession of war material, as described in the indictment [see Judea and Samaria Appeal 311&318/03 and Judea Case 42947/01 concerning the foundations of the offense of attempting to cause intentional death].

**Count 32 of the indictment**

Evidence has been found for this count of the indictment in the words of [redacted] and [redacted] [P/4, page 8 lines 13-23, P/5 page 1 line 21].

**Endnote**

In view of the conclusions above and after all of the counts of the indictment that have been attributed to the Defendant have been founded to be properly substantiated in the evidence of the prosecution, we convict the Defendant of them.

**Handed down and announced this day, July 25, 2004, in public and in the presence of the parties.**

    [Signature]                              [Signature]                            [Signature]
     **Judge**                                  **President of Court**                        **Judge**

- 11 -

[Stamp] P 6: 330

21

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

            Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

            Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 6: 320-330.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as P 6: 320-330.

Dated: May 8, 2014

_____
Rina Ne'eman

ss.: New Jersey

On the 8 day of May, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
8 day of May, 2014

_____
Notary Public

SHELLY TESSEIN
Notary Public
State of New Jersey
My Commission Expires Nov. 16, 2017
I.D.# 2427073

תאריך: ז' אב, תשס"ד
25 יולי, 2004

תיק מס': 3262/02

## בית המשפט הצבאי יהודה

בפני כב' האב"ד: סא"ל נתנאל בנישו
שופט: סרן אלי תוסיח-כהן
שופט: סרן אברהם איינהורן

התביעה הצבאית
(באמצעות סגן סרג'יי מורין)

נגד

הנאשם: פארס צאדק מחמד ע'אנם ת.ז 25806985 / שב"ס - נוכח
(באמצעות ב"כ עו"ד אוסאמה סעדי)

## הכרעת דין

נגד הנאשם הוגש כתב אישום המייחס לו 32 עבירות כדלקמן:

1. חברות בהתאחדות בלתי מותרת לפי תקנה 85 לתקנות ההגנה (שעת חירום), 1945, בכך שהחל משנת 02' ועד מעצרו היה חבר בחוליייה צבאית אשר שמה לה למטרה ביצוע פיגועים נגד ישראלים. חולייה זו פעלה בחסות גדודי חללי אלאקצה, הזרוע הצבאית של ארגון פתח. יחד עם הנאשם פעלו בחוליייה האמורה ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. שמונה עבירות של גרימת מוות בכוונה לפי סעיף 51 (א) לצו בדבר הוראות ביטחון תשי"ל - 1970 וסעיף 14 (א) לצו בדבר הוראות כללי האחראיות לעבירה וחמש עבירות של נסיון לעבור עבירה זו. בעבירות אלה מגולמים שורה של פיגועים בהן נטל הנאשם חלק, אשר כתוצאה מהן קיפחו חייהם שמונה ישראלים ונעשה נסיון לגרום למותם של רבים נוספים.
ביום 26/07/01 נפגש הנאשם עם ▮▮▮▮▮▮▮▮, חברי חולייתו. ▮▮▮▮, שהיה חמוש בשני כלי נשק, מסר לנאשם ול▮▮▮▮ כי בכוונתו לבצע פיגוע ירי באזור גבעת זאב. הנאשם ו▮▮▮▮ הביעו את הסכמתם להשתתף בפיגוע האמור. השלושה נסעו לאזור כפר אלגיב שם נשאר חנאשם ברכב על מנת לשמש כשומר ומתריע בעת שחבריו התמקמו בסמוך לכביש 436. בסמוך לשעה 22:50 משהבחינו ברכב מסוג ניסאן אלמרה בו נסעו שמואל לנדאו, מאיר לוי ורון לנדאו, ובכלי רכב נוספים בינהם משאית שהיתה נהוגה בידי מוטי נמיר, ▮▮▮▮ פתחו לעבורן באש. מספר קליעים שפגעו ברכב גרמו למותו של רונן לנדאו ז"ל.
ביום 25/08/01 שוב פנה ▮▮▮▮▮▮▮▮ לנאשם ול▮▮▮▮ לבצע פיגועי ירי, הפעם באזור כביש 443. השלושה החליטו כי יצלמו את הפיגוע ועל כן גייסו את ▮▮▮▮ לשמש כצלם. הנאשם וחבריו פנו ל▮▮▮▮ וביקשו ממנו נשק. זה סיפק להם תמ"ק MP-5. אז נסעו הארבעה לאזור כביש 443, כשהנאשם נסע ברכב איסוזו כקילומטר לפני הרכב בו נסעו ▮▮▮▮, במטרה להודיע לחבריו על מחסומים בדרך. בסמוך לשעה 22:30 הבחינו ליד תחנת הדלק דור אנרגיה, ברכב מסוג פולקסווגן פאסאט בו נסעו בני הזוג בן שלום, בתם ודורון יוסף סווירי.

-1-

P 6: 320

תאריך: ז' אב, תשס"ד
25 יולי, 2004

תיק מס': 3262/02

███, שנהג ברכב, עקף את רכב המשפחה ונסע במקביל אליו. בשלב זה פתחו ███ באש לעבר יושבי הרכב. בירי זה גרמו למותם בכוונה של בני הזוג יניב ושרון בן שלום ז"ל ושל דורון יוסף סווירי ז"ל ולפציעת בתם של יניב ושרון ז"ל.

ביום 15/09/01 נפגש הנאשם עם ███ ███. הנאשם הגיע למפגש זה כשהוא חמוש בתמ"ק MP-5 ואילו ███ הגיע חמוש באקדח. הנאשם וחבריו החליטו לצאת לירושלים ולבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים. על כן, נסעו בשעות הלילה מרמאללה לירושלים ברכבו של הנאשם מסוג איסוזו. הנאשם הסיע את חבריו לכביש 9 המחבר בין שכונת רמות לשכונת הגבעה הצרפתית. שם הראה הנאשם לחבריו איפה לבצע את הפיגוע המתוכנן ואיך להימלט לאחר מכן. בסיום סיור זה חזרו לרמאללה. בסביבות השעה 22:30 נסעו ███████████ לירושלים במטרה לבצע את הפיגוע שתוכנן. הנאשם נסע ברכבו לפני השלושה על מנת להודיע לחם על מחסומים בדרך. חבריו של הנאשם התמקמו בכביש 9 והמתינו למעבר רכב בודד. בסמוך לשעה 23:10 הגיע למקום רכב מסוג רנו אקספרס ובו נסעו משה וייס ומאיר וייסבויז. השלושה עקפו את הרכב ███ פתחו לעברו באש, אשר כתוצאה ממנו נהרג מאיר וייסבויז ז"ל ואילו משה וייס נפצע קשה בראשו.

ביום 15/01/02, יום לאחר שנהרג פעיל צבאי בכיר בתנזים, ███, נפגשו הנאשם, ███ ███. האחרון מסר כי ███ מבקש שהנאשם וחבריו יבצעו פיגוע נקמה באופן מיידי. לצורך זה מסר ███ ל███████ תמ"ק MP-5 ואקדח. הנאשם וחבריו החליטו לבצע פיגוע עוד באותו ערב. על כן יצאו לכיוון תחנת הדלק גבעונים בסמוך לכניסה לגבעת זאב. הנאשם וחבריו החנו את כלי רכבם בסמוך למקום. ███████ יצאו לבצע את הפיגוע בעוד הנאשם ו███ ממתינים על מנת להתריע מפני הגעת כוחות צה"ל ולמלט את היורים לאחר ביצוע הפיגוע. בסמוך לשעה 19:45 הגיעו למקום רשל עיני ויואלה חן שנסעו ברכב פיאט ונכנסו לתחנת הדלק. ███████ התקרבו לרכב וירו לעברן. יואלה חן ז"ל נהרגה כתוצאה מירי זה ואילו רשל עיני נפצעה באורח בינוני. הנאשם נסע מן המקום כדי לבחון האם קיימים בדרך מחסומים.

באמצע חודש ינואר 2002 התקשר הנאשם ל███ והודיע לו כי ███ מבקש להכניס מחבל מתאבד לעיר ירושלים והציע לו להסיע את המחבל ביחד עימו. ███ הסכים להצעה. ביום 22/01/02 התקשר שוב הנאשם ל███ והודיע לו כי הכל מוכן לביצוע הפיגוע. הנאשם ו███ ביצעו נסיעה מקדימה למצוא דרך בה אין מחסומים. לאחר מכן חזרו לרמאללה, שם הכירו את המחבל המתאבד שהיה חמוש ברוס"ר אס-16. הנאשם ו███ הסתירו את כלי הנשק ברכב והסיעו את המחבל לרחוב שטראוס, שם הורידו את המחבל תוך שהם מסבירים לו כי עליו לרדת לרחוב יפו ושם לפתוח בירי. השניים ברחו מן המקום. המחבל פתח בירי לכל עבר ורצח את אורה (סבטלנה) סנדלר ז"ל ושרה המבורגר ז"ל ופצע 45 אזרחים נוספים.

3. 4 עבירות נוספות של ניסיון לגרימת מוות בכוונה לפי סעיף 51(א) לצו בדבר הוראות ביטחון תש"ל - 1970 וכן סעיף 19 לצו בדבר כללי האחריות לעבירה בכך שביום 18/08/01 החליטו הנאשם ושותפיו לבצע פיגוע ירי בירושלים. הנאשם נסע ברכבו מסוג איסוזו לפני חבריו במטרה להודיע לחם אודות מחסומים בדרך ולשמש כשומר ומתריע. כולם הגיעו לצומת בסמוך לנווה

-2-

תאריך: ז' אב, תשס"ד  
25 יולי, 2004

תיק מס': 3262/02

1. יעקב, שם פתחו חבריו של הנאשם ביריי לעבר אוטובוס אגד קו 45 במטרה
2. לגרום למות הנוסעים בו. כתוצאה מירי זה נפצעו רות שפירא בת שש שנים
3. ואנדרו פייצוש. מספר קליעים אף פגעו ברכב מסוג טרנזיט. ביום 03/10/01
4. החליט לבצע פיגוע ירי נוסף עם חבריו. לשם כך הצטיידו בכלי נשק. הנאשם
5. ושותפים נסעו לירושלים כשהנאשם בוחן האם קיימים מחסומים בדרך.
6. הנאשם הוביל את חבריו לכביש "בגין" והראה להם היכן לבצע את הפיגוע.
7. מכאן חזרו כל השותפים לבית חנינא. משם נסעו ████
8. ████ לכביש "בגין". בסמוך לשעה 23:35 ירה ████ לעבר רכב
9. שנסע בכביש "בגין". בהמשך נסעו השניים לכביש 9 ושם ירו לעבר רכב נוסף
10. בו נסעו בני הזוג מלכה ופנחס כהן. השניים נפצעו באורח בינוני. היורים חזרו
11. לבית חנינא שם נאספו על ידי הנאשם ויתר השותפים.
12. בסוף חודש ינואר 2001 התקשר הנאשם ל████████ והודיע לו כי
13. ████ מבקש להכניס מחבל מתאבד נוסף לירושלים. הנאשם ו████
14. סיכמו כי יסיעו את המחבל. מספר ימים לאחר מכן אספו את המחבל שהיה
15. חמוש ברוסי"ר אס-16 והסיעו אותו לכיוון ירושלים. בהגיעם לשועפאט ביקש
16. המחבל לעצור ולהתפלל במסגד. הנאשם ו████ הסכימו להצעה והותירו את
17. המחבל במסגד בעוד הם נוסעים לגבעת שאול על מנת לאתר מקום מתאים
18. לביצוע הפיגוע. משם חזרו לשועפאט אך המחבל נעלם.
19.

20. 4. עבירות של החזקת נשק לפי סעיף 53(א) לצו בדבר הוראות ביטחון תשי"ל -
21. 1970 בכך שבמסגרת פעולותיו שתוארו בסעיף קטן 2 לעיל החזיק בכלי נשק
22. שונים.
23.

24. 5. 3 עבירות של קשירת קשר לפי סעיף 22 לצו בדבר כללי האחריות לעבירה
25. בכך שבאמצע שנת 2000 קשר עם אחרים לבצע פיגוע ירי בכביש מס' 1,
26. בך שביולי 2001 קשר עם אחרים לבצע פיגועים נגד מטרות ישראליות ובכך
27. שבפברואר 2002 קשר עם אחרים להכניס מחבל מתאבד שלישי לירושלים.
28. תוכנית זו לא   יצאה אל הפועל למרות הכנותיהם של הקושרים בעקבות
29. מעצרם.
30.

31. 6. סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד
32. מלחמתי, בכך שבאמצע שנת 2001 רכש תמ"ק MP-5.
33.

34. 7. אימונים צבאיים, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945
35. בכך שבחודש אוגוסט 2001 לימד את ████
36. להשתמש ברוסי"ר אס-16.
37.

38. 8. היזק לרכוש בזדון, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון תשי"ל -
39. 1970 בכך שבמסגרת הפיגוע שבוצע ברחוב יפו 22/01/02 פגע המחבל שהובל
40. על ידי הנאשם במספר רב של חנויות, באוטובוסים, בכלי רכב ובמבנים
41. נוספים.
42.

43. **טענות הצדדים**
44.

45. התובע ביקש להרשיע את הנאשם בעבירות המיוחסות לו על סמך חומר הראיות
46. שהוגש בהסכמת הצדדים, ממנו עולה אחריותו של הנאשם כשותף מלא לכלל
47. העבירות. התובע ציין כי לנאשם היה היסוד הנפשי הדרוש לעבירות השונות, בראשן
48. עבירות גרימת המוות בכוונה וניסיון לגרימת מוות בכוונה.

-3-