
PLAINTIFF'S EXHIBIT
422

| Israel | Defense | | Forces |
|---|---|---|---|

| In the Military Court | Court File: | 3251/02 |
|---|---|---|
| Beit El | Prosecution File: | 241/02 |
| Before Panel | Detailed Incident Files: | 39/02 Binyamin |
| | | 7915/01 Zion |
| | | 481/01 Zion |
| | | 8379/01 Zion |
| | | 502/02 Zion |

### In the case between the Military Prosecutor – Prosecuting

### – versus –

| [Round Stamp] |
|---|
| Military Appeals Court |
| Judea and Samaria |

**Mohamed Sami Ibrahim Abdullah**
Identity No. 979469954, born May 4, 1974, resident of Bir Nabala
Under arrest since February 20, 2002

[Stamp] True Copy

### - the Defendant -

### AMENDED INDICTMENT

**The above named Defendant is hereby accused of carrying out the following offenses:**

**First Count:**

**Nature of the Offense:** Membership in an unlawful association, an offense pursuant to Regulations 84(1)(a) and 85(1)(a) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above named Defendant, within the Region, from the middle of 2001 and up to the date of his arrest, was a member or acted as a member of an unlawful association, specifically:

The above named Defendant, during the said period, was a member of a military cell, which set itself the goal of carrying out terrorist attacks against Israeli civilians, both within the Region and outside it. The Defendant was active in the said military cell together with ███████ ████████████████████ (known as ████████), ████████████████████████ ██████████████ (known as ████████'), ████████████████████████ █████████ and █████

[Stamp] P 6: 64

The Defendant was active in the said military cell, as will be described in the following counts of the indictment.

1

Prosecution File 241/02 Amended

[Stamp] P 6: 64 [continued]

**Second Count: (Detailed Incident File 7915/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on September 15, 2001, or thereabouts, intentionally caused the death of another person, specifically:

1. The above named Defendant, at the said time, in Ramallah, met with ███████████ ███████████████████████ (known as █████████ '), ███████████ ██████ and ████████ ████████████████ came to the said meeting armed with an MP-5 submachine gun, which he, together with ████████████, had received from ████████ ████████████████ (known as '█████████') for the purpose of carrying out a shooting terrorist attack, while ████████████ came armed with a revolver.

2. The Defendant and his above named accomplices decided to leave for Jerusalem and carry out a shooting terrorist attack there with the aim of causing the deaths of Israeli civilians.

3. At around 10:00 p.m., on September 15, 2001, the Defendant and all of his above named accomplices traveled from Ramallah to Jerusalem in ████████████ Isuzu van.

4. ████████████ drove the above mentioned Isuzu and traveled together with the Defendant and his accomplices so as to show them a place at which to carry out the planned shooting terrorist attack, and also to show the Defendant and his accomplices how to escape following execution of the said terrorist attack. ████████████ drove the Defendant and his accomplices to Road No. 9 connecting the neighborhoods of Ramot and French Hill in Jerusalem. ████████████ showed the Defendant and his accomplices where to carry out the planned terrorist attack and how to escape thereafter. At the end of the said reconnaissance, the Defendant and his above named accomplices returned to Ramallah

5. At around 10:30 p.m., on that same day, the Defendant, together with ████████████ and ████████████████ drove in a gray stolen vehicle with Israeli license plates, provided to them by ████████ for the purpose of carrying out the planned terrorist attack (hereinafter: the vehicle). ████████████ drove ahead of the Defendant in the above mentioned Isuzu, so as to inform the Defendant and his accomplices by cellular phone of police and Israel Defense Forces checkpoints.

[Stamp] P 6: 65

3

6.  The Defendant drove the above mentioned vehicle, alongside him sat ██████████,
    armed with an MP-5 submachine gun, and in the back seat sat ████████████, armed with
    a revolver.

7.  The Defendant and his above named accomplices stopped on Road No. 9, adjacent to the
    intersection leading to the Ramat Shlomo neighborhood, and waited for a lone Israeli
    vehicle to arrive there with the aim of carrying out a shooting terrorist attack toward it and
    causing the deaths of the vehicle's passengers.

8.  Some minutes later, at around 11:10 p.m., a white Renault Express, license plate number
    2273706 (hereinafter: the Renault), arrived there, having driven from the direction of the
    Ramat Shlomo neighborhood, and it turned into Road No. 9 in the direction of the Ramot
    neighborhood.

9.  The Defendant began driving after the Renault and overtook it.

10. When the vehicle driven by the Defendant was traveling in parallel with the Renault,
    ████████████ and ██████████████ opened fire with the MP-5 submachine gun and the
    revolver on the passengers of the Renault with the aim of causing their deaths.

11. A number of rounds fired by ██████████████ and ██████████████ struck the Renault and
    the two passengers of the Renault – Moshe Weiss and the late Meir Weissboiz [sic., should
    be Weisshaus]. The Defendant heard one of the passengers of the Renault cry out, "Ay ay."

12. Subsequently the Defendant continued driving in the direction of the Ramot neighborhood,
    and near the site where a new bridge is being built he turned right onto a dirt road leading
    to Bir Nabala.

13. Before the entrance to Bir Nabala, the Defendant and his accomplices who were with him
    in the vehicle met with ██████████████, who was waiting for them there in his Isuzu. From
    there the Defendant and his above named accomplices, together with ██████████████
    continued on their way to Bir Nabala, and subsequently fled to Ramallah.

14. By his actions as described above, the Defendant intentionally caused the death of the late
    **Meir Weissboiz** [sic., should be Weisshaus], who died in the hospital later that day as a
    result of being struck by the rounds fired by the Defendant's accomplices.

2

Prosecution File 241/02 Amended

[Round Stamp]
Military Appeals
Court
Judea and Samaria

[Stamp] True Copy

[Stamp] P 6: 65 [continued]

**Third Count: (Detailed Incident File 7915/01 Zion)**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on September 15, 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, at the said time, at around the hour of 11:10 p.m., at the location described in previous count of the indictment, by his actions as stated in the previous count of the indictment, attempted to intentionally cause the death of Moshe Weiss, who was driving his vehicle, a white Renault Express, license plate number 2273706, described in the previous count of the indictment. One of the rounds fired by the Defendant's accomplices, as described in the previous count of the indictment, struck Moshe Weiss's head and severely wounded him.

[Stamp] True Copy

[Round Stamp]
Military Appeals
Court
Judea and Samaria

**Fourth Count: (Detailed Incident File 481/01 Zion)**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on October 3, 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1.  The above named Defendant, early in October 2001, in or near Ramallah, together with ███████████████████████████ (known as "████████"), █████████ ████████ and █████████████████████ (known as ████████), decided to carry out a shooting terrorist attack with the aim of causing the deaths of Israeli civilians.

[Stamp] P 6: 66

5

2. For the purpose of carrying out the planned terrorist attack, the Defendant received from ████████████ a gray stolen Mazda 323 with Israeli license plates. For the purpose of carrying out the planned shooting terrorist attack, ████████████ received from ████████████ bodyguard to ████████████ head of the Fatah Tanzim in the region an unlawful association, an MP-5 submachine gun.

3. On October 3, 2001, the Defendant, driving the above mentioned Mazda, left from Ramallah in the direction of Jerusalem, with the aim of carrying out the planned shooting terrorist attack there. ████████████ traveled together with the Defendant, armed with the above mentioned MP-5 submachine gun.

4. ████████████ and ████████████ traveled in ████████████ s Isuzu van in front of the Mazda in which the Defendant was traveling, for the purpose of informing him of police and Israel Defense Forces checkpoints on the way. The Defendant and all of his above named accomplices arrived at the New Beit Hanina in Jerusalem. There the Defendant parked the Mazda, and together with ████████████ concealed the above mentioned MP-5 submachine gun within the vehicle. The Defendant and ████████████ got into the Isuzu and from there continued in the Isuzu together with ████████████ and ████ ████ in the direction of the Begin Road.

5. The Defendant and his above named accomplices came to the Begin Road. There, ████ ████ showed the Defendant and his other accomplices where to carry out the planned shooting terrorist attack and how to escape after execution of the shooting terrorist attack. The Defendant and his above named accomplices decided to carry out the planned shooting terrorist attack in the first tunnel on the Begin Road from the direction of Ramot, so that the sounds of gunfire should not be heard. Subsequently, the Defendant and all his above named accomplices returned to Beit Hanina, to where the Mazda had been left.

6. The Defendant got into the Mazda; alongside him sat ████████████, armed with the MP-5 submachine gun. From there the Defendant drove the Mazda to the Begin Road with the aim of carrying out the planned shooting terrorist attack there and causing the deaths of Israeli civilians.

7. The Defendant and ████████████ traveled up and down the Begin Road a number of times, looking for a lone Israeli vehicle, with the aim of carrying out the planned shooting terrorist attack against it, with the aim of causing the deaths of the vehicle's passengers.

[Stamp] P 6: 66 [continued]

8.  At around 11:35 p.m., as they were traveling in a northerly direction, in the last tunnel in the direction of their journey, the Defendant and ███████████ noticed a Honda Accord, license plate number 1103217, traveling on the Begin Road in a northerly direction. In the Honda were traveling Tony Amiel, Pini Maimon and Pazit Maimon.

9.  The Defendant overtook the above mentioned Honda. When the Defendant was traveling in parallel with the above mentioned Honda, ███████████ fired one bullet from the MP-5 submachine gun, which he was holding, at the passengers of the Honda, with the aim of causing their deaths. The round fired by ███████████ did not strike the above mentioned Honda.

10. After carrying out the said shooting terrorist attack, the Defendant and ███████████ continued their journey in the direction of Road No. 9 which connects the Ramot and French Hill neighborhoods.

3

Prosecution File 241/02 Amended

[Stamp] P 6: 66 [continued]

[Round Stamp]
Military
Appeals Court
Judea and
Samaria

**Fifth Count: (Detailed Incident File 8379/01 Zion)**          [Stamp] True Copy

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on October 3, 2001, or thereabouts, attempted to intentionally cause the death of another person, specifically:

1. After the Defendant, together with ███████████████████████ (known as "████████"), carried out the shooting terrorist attack as described in the previous count of the indictment, the two continued on their journey in the Mazda, described in the previous count of the indictment, in the direction of Road No. 9, which connect the Ramot and French Hill neighborhoods, with the aim of getting from there to Beit Hanina, and subsequently to Ramallah.

2. During that journey, ████████████████, at the Defendant's request, checked the working condition of the MP-5 submachine gun, which he was holding, and also fired a number of bullets into the air.

3. During the journey on the said Road No. 9, at around 11:45 p.m., the Defendant and ███████████████ noticed a Skoda, license plate number 6567709, travelling on Road No. 9 in the direction of French Hill. Traveling in the said Skoda were Malka Cohen and Pinhas Cohen.

4. The Defendant and ████████████████ decided to carry out a shooting terrorist attack against the said Skoda, and to cause the deaths of its passengers.

5. The Defendant, who, as stated, was driving the Mazda, overtook the Skoda.

6. When the Defendant was driving in parallel with the above mentioned Skoda, ██████████████████ fired a number of shots with the MP-5 submachine gun at the above mentioned Skoda, with the aim of causing the deaths of the Skoda's passengers.

7. A number of rounds fired by ████████████████ struck the Skoda. Two rounds fired by ████████████████ struck Pinhas Cohen and a further round struck Malka Cohen.

[Stamp] P 6: 67


8.   Pinhas Cohen was moderately wounded from being hit by two rounds in his abdomen, while Malka Cohen, who was in her 28th week of pregnancy, was moderately wounded by being struck by a round in her head.

9.   After carrying out the said shooting terrorist attack, the Defendant and ▮▮▮▮▮▮▮▮ continued their journey in the direction of French Hill, and from there they reached New Beit Hanina. There the Defendant and ▮▮▮▮▮▮▮▮ parked their vehicle, and made telephone contact with ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮ (known as '▮▮▮▮'), who arrived there in ▮▮▮▮▮▮▮▮'s Isuzu, to pick up the Defendant and ▮▮▮▮▮▮▮▮, in line with the plan stated in the previous count of the indictment.

10.  The Defendant and ▮▮▮▮▮▮▮▮ concealed the MP-5 submachine gun in the Isuzu, and got into the Isuzu.

11.  The Defendant and his three above named accomplices attempted to return from Jerusalem to Ramallah, but were not able to do so because of Israel Defense Forces and police checkpoints. The Defendant and his above named accomplices stayed over with ▮▮▮▮▮▮▮▮ a friend of ▮▮▮▮▮▮▮▮'s, in New Beit Hanina in Jerusalem.

12.  The following day, October 4, 2001, the Defendant returned in the above mentioned Mazda to Ramallah, and returned the vehicle to ▮▮▮▮▮▮▮▮

**Sixth Count: (Detailed Incident File 39/02 Binyamin)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, on January 15, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1.   On January 14, 2002, Ra'ad Karmi, a senior military operative in the Fatah organization's Tanzim, which is an unlawful association, was killed. As a result of the death of the said Ra'ad Karmi, the head of the Tanzim in the Region, ▮▮▮▮▮▮▮▮, opened a mourners' tent in El-Bireh.

[Stamp] P 6: 67 [continued]

2.  On January 15, 2002, the Defendant came to the mourners' tent, and there met with ██████████████████████████ (known as '████████'), ████████████████, ████████ (known as '████████'), ██████████████████████████████ and ████ ████ (known as "████████"), who was the bodyguard of the above named ████ ████ The said ██████████████████ informed the Defendant and above named accomplices that ████████████ head of the Fatah Tanzim in the Region, wanted the Defendant and his accomplices to carry out, immediately, a terrorist attack in revenge for the death of the said Ra'ad Karmi, and cause the deaths of Israeli civilians.

4

Prosecution File 241/02 Amended

[Stamp] P 6: 67 [continued]

3.   The Defendant and his above named accomplices decided to carry out, that very evening, a terrorist attack at the Givonim gas station on Road 443, near the entrance to Givat Zev, and cause the deaths of Israeli civilians.

4.   In the evening of that day, January 15, 2002, the Defendant left the above mentioned mourners' tent together with ████████. The Defendant and ████████ traveled in ████████s Isuzu van to the above mentioned gas station with the aim of carrying out the planned shooting terrorist attack there. ████, armed with a Model-16 pistol, ████████ ████ armed with another handgun, and ████████ armed with an MP-5 submachine gun, traveled behind the said Isuzu. The three traveled in a light brown Mazda toward the above mentioned gas station, with the aim of carrying out the planned terrorist attack there.

5.   The Defendant and all his above named accomplices reached the dirt mound blocking the exit from the villages of Bir Nabala and el-Jib to Road 443, at a distance of about 100 meters from the Givonim gas station. The Defendant and accomplices parked their vehicles, the Isuzu and the Mazda, facing in the direction of the village of Bir Nabala, so as to flee from the scene immediately after carrying out the planned terrorist attack.

6.   ████████, armed with his Model-14 handgun, ████ armed with the Model-16 handgun, and ████████ armed with the MP-5, got out of the vehicles and walked to the above mentioned gas station with the aim of carrying out the planned shooting terrorist attack there and causing the deaths of Israeli civilians.

7.   The Defendant and ████████ remained in the said vehicles to watch out for the arrival of an Israel Defense Forces patrol or other people. The Defendant sat in the driver's seat in the Mazda, so as to be able to immediately get his three accomplices, who had gone to carry out the planned terrorist attack, out immediately after executing the terrorist attack.

8.   ████████ and ████████ positioned themselves at the entrance to the above mentioned gas station. Some minutes later, at around 7:45 p.m., ████████ and ████████ noticed a white Fiat Uno, license plate number 6424905, entering the gas station, driven by the late Yoela Chen, alongside of whom was Rachelle (Rachel) Eini. ████████ and ████████ approached the Fiat with the aim of carrying out a shooting terrorist attack toward it and causing the deaths of the vehicle's passengers. The passengers in the Fiat noticed the handgun held by ████████ and began to scream

[Stamp] P 6: 68

11

and sound the horn. ████████████ put the handgun in his pants and told the passengers in the vehicle not to be afraid. At this stage, ████████████ opened fire on the Fiat's passengers, on automatic, with the MP-5 submachine gun, with the aim of causing their deaths. Then████████████again took the handgun out, and commenced firing at the vehicle's passengers, with the aim of causing their deaths.

9.   ████████████ and ████████████ fired a large number of bullets, at very close range, at the late Yoela Chen and Rachelle (Rachel) Eini, who were in the above mentioned Fiat.

10.   About 28 rounds, fired by ████████████ and ████████████, struck the front windshield of the vehicle, a number of rounds struck the side of the vehicle and the driver's side window.

11.   During the course of the shooting terrorist attack described, █████ who stood a short distance behind ████████████ and ████████████, served as guard to warn them.

12.   ████████████ immediately upon hearing the sounds of gunfire, drove from there in his Isuzu, in order to inform the Defendant and his accomplices whether there were checkpoints on the road to Ramallah.

13.   ████████████ and ████████████ after having carried out the shooting terrorist attack as stated above, ran to return to the Mazda in which the Defendant was waiting. After the above named three got into the vehicle, the Defendant drove them to Ramallah. In Ramallah, the Defendant, ████████████████████ and █████ met with ████████

14.   By his action described above, the Defendant intentionally caused the death of the late **Yoela Chen**, who died on the scene as a result of being struck by the rounds fired by ████████ ████████ and ████████████.

[Stamp] True Copy

[Round Stamp]
Military
Appeals Court
Judea and
Samaria

**Seventh Count: (Detailed Incident File 39/02 Binyamin)**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

[Stamp] P 6: 68 [continued]

**Details of the Offense:** The above named Defendant, in the Region, on January 15, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at around 7:45 p.m., in the place described in the previous count of the indictment, by his action as stated in the previous count of the indictment, attempted to intentionally cause the death of Rachelle (Rachel) Eini, who was traveling in a white Fiat Uno, license plate number 6424905, as described in the previous count of the indictment. One of the rounds fired by the Defendant's accomplices, as described in the previous count of the indictment, struck the head of Rachelle (Rachel) Eini, and two other rounds struck her left shoulder and moderately wounded her.

5

Prosecution File 241/02 Amended

[Stamp] P 6: 68 [continued]

**Eighth Count: (Detailed Incident File 502/02 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on January 22, 2002, or thereabouts, intentionally caused the death of another person, specifically:

1.  In the middle of January 2002, ███████████████ (known as "███████") called the Defendant. ███████████ informed the Defendant that ███ (known as "███████"), bodyguard of ███████████ – head of the Fatah Organization's Tanzim, which is an unlawful association, wanted to get a terrorist into Jerusalem, to carry out a suicide terrorist attack in Jerusalem with the aim of causing the deaths of as many civilians as possible. The Defendant consented to participate by transporting the above mentioned suicide terrorist to Jerusalem.

2.  On January 22, 2002, ███████████ called the Defendant and informed him that ███████ ███████ had spoken with him and informed him that the suicide terrorist who was to carry out the planned terrorist attack was ready, and had to be gotten into Jerusalem. The Defendant again agreed to participate in executing the planned terrorist attack.

3.  Later on that day, the Defendant and ███████████ met in Ramallah. ███████████ came to the meeting in his Isuzu van with Israeli license plates.

4.  The Defendant and ███████████ traveled in the said Isuzu from Ramallah to Jerusalem so as to find a road without police or Israel Defense Forces checkpoints, so as to later transport the suicide terrorist, who was to carry out the planned terrorist attack in Jerusalem, by the same route.

5.  The Defendant and ███████████ drove from Ramallah via Rafat and arrived at the Atarot Industrial Zone, where the two returned to the main Jerusalem-Ramallah road and turned left toward the junction leading to the Rama camp, there they turned right and traveled to Adam Junction. At Adam Junction the Defendant and his accomplice turned right and traveled to Hizme Junction, where they turned right and entered Anata. Through Anata, the

[Stamp] P 6: 69

Defendant and his accomplice reached the French Hill Junction, where the two turned right and returned to Ramallah. The Defendant and ███████ saw that it was possible to transport the suicide terrorist to Jerusalem on the route that they had taken without being stopped at police or Israel Defense Forces checkpoints.

6. Upon their arrival in Ramallah, the Defendant and ███████ traveled to the City Inn Hotel, located near Ayosh Junction. Near the City Inn Hotel, the Defendant and ███ ███████ met with the above named ███████ who introduced the Defendant and ████████ to Sa'id Ramadan, a resident of the village of Tel in the Nablus region, who was armed with an M-16 assault rifle and two magazines for the M-16 assault rifle, joined together with a clip.

7. ███████ informed the Defendant and ███████ that the above named Sa'id Ramadan was the suicide terrorist whom they were to transport to Jerusalem, so that he could carry out a suicide terrorist attack there by opening fire on Israeli civilians with the aim of causing the deaths of as many civilians as possible.

8. The Defendant and ███████ concealed the said M-16 assault rifle and magazines in the above mentioned Isuzu.

9. ███████ drove the Isuzu, Sa'id Ramadan sat in the seat next to the driver's seat, while the Defendant sat in the back seat.

10. The Defendant and ███████ drove Sa'id Ramadan to Jerusalem via the route that they had checked out earlier that day, as described above.

11. The Defendant and ███████ drove to Sheikh Jarrah Street. There they took out the M-16 assault rifle and the magazines that had been concealed in the vehicle, and gave them to Sa'id Ramadan. The Defendant shifted into the seat next to the driver's seat, while Sa'id Ramadan moved to the back seat, holding in his hands the M16 assault rifle and the magazines.

12. The Defendant and ███████ drove Sa'id Ramadan to Haneviim Street.

13. During the trip, Sa'id Ramadan complained to the Defendant and ███████ that they had bought him new shoes for the terrorist attack, but they were too small and tight on him. The Defendant took off his Reebok shoes and gave them to Sa'id Ramadan, saying, "Go up to Paradise with Reebok shoes."

[Stamp] P 6: 69 [continued]

14. Upon reaching the intersection of Straus and Haneviim Streets, the Defendant and ███████ ████ stopped the Isuzu.

15. The Defendant and ██████████ said to Sa'id Ramadan to go down to Jaffa Road on foot and to begin shooting where he saw a large number of people.

16. After Sa'id Ramadan got out of the vehicle with the M-16 assault rifle and the ammunition, the Defendant and ██████████ drove from there in the Isuzu, went out onto Road no. 1 through the Musrara neighborhood, and from there drove along the main road to Ramallah.

17. Sa'id Ramadan, some minutes after getting out of the Defendant's and ███████████ vehicle, reached Jaffa Road.

[Stamp] True Copy

[Round Stamp]
Military Appeals
Court
Judea and Samaria

6

Prosecution File 241/02 Amended

[Stamp] P 6: 69 [continued]

18. At around 4:20 p.m., as he stood opposite No. 47 Jaffa Road or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he held, shouted "*Allahu Akbar*," and opened fire on automatic in all directions at the people in Jaffa Road, at the bus stop located there, into the Egged number 27 bus that was at the said stop at that time, and at the people who were inside the nearby shops, with the aim of causing the deaths of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the scene toward the parking lot located in Harav Kook Street. There Sa'id Ramadan exchanged magazines and continued firing at civilians with the aim of causing their deaths. Sa'id Ramadan fired over 38 bullets from the M-16 assault rifle that he held. Sa'id Ramadan continued firing at civilians until he was killed by the civilians and policemen who arrived on the scene.

19. By his actions as described above, the above named Defendant intentionally caused the death of the late **Ora (Svetlana) Sandler**, who died as a result of being struck by the rounds fired by Sa'id Ramadan.

**Ninth Count: (Detailed Incident File 502/02 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, on January 22, 2002, or thereabouts, intentionally caused the death of another person, specifically:

The above named Defendant, on the said date, in the place stated in the previous count of the indictment, by his actions as described in the previous count of the indictment, intentionally caused the death of the late **Sarah Hamburger**, who died as a result of being struck by the bullets fired by Sa'id Ramadan, who had been brought to the said location by the Defendant and ██████████████████████ (known as '████████') for the purpose of carrying out the said terrorist attack.

[Round Stamp]
Military Appeals
Court
Judea and Samaria

[Stamp] P 6: 70

**Tenth Count: (Detailed Incident File 502/02 Zion)**   [Stamp] True Copy

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, both within and outside the Region, on January 22, 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:

The above named Defendant, on the said date, at the place stated in the eighth count of the indictment, by his actions as described in the eighth count of the indictment, attempted to intentionally cause the deaths of as many civilians as possible, who were at that time in Jaffa Road or its vicinity. As a result of the shooting carried out there by Sa'id Ramadan, who had been brought to the above mentioned location by the Defendant and ███████████ ███████ (known as "███████") for the purpose of carrying out the said terrorist attack, **over 45 civilians were wounded.**

**Eleventh Count:**

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above named Defendant, in the Region, at the end of January through the beginning of February 2002, or thereabouts, attempted to intentionally cause the death of another person, specifically:



1.  At the said time, ███████████████ (known as "███████") called the Defendant. ███████ informed the Defendant that ███████████ (known as "███ ███████"), bodyguard of ███████████ – head of the Fatah Organization's Tanzim, which is an unlawful association, wanted to get another terrorist into Jerusalem, to carry out a suicide terrorist attack in Jerusalem, similar to the terrorist attack described in the eighth count of the indictment, with the aim of causing the deaths of as many civilians as possible. The Defendant agreed to participate by transporting the said suicide terrorist to Jerusalem.

[Stamp] P 6: 70 [continued]

18

2.    The Defendant and ███████████ agreed that they would transport the suicide terrorist to Jerusalem in a Subaru, which they would ask ███████████ for.

7

Prosecution File 241/02 Amended

[Stamp] P 6: 70 [continued]

3. On that same day, the Defendant and ████████████ traveled to Ramallah and there met with ████████████ The Defendant and ████████████ asked ████████ for a vehicle to transport the suicide terrorist to Jerusalem. ████████████ gave the Defendant a gray Subaru, belonging to ████████████ s family. The Defendant returned to his home in Bir Nabala with the Subaru, while ████████████ drove his Isuzu van to his home in Kafr Akab.

4. The next day ████████████████████ called the Defendant and ████████ ████████ and instructed them to come to the gas station in Ramallah Tachta, to collect the suicide terrorist from there and to transport him to Jerusalem so that he can carry out the suicide terrorist attack there, with the aim of causing the deaths of as many civilians as possible. The Defendant consented.

5. The Defendant drove the Subaru to the Kalandia checkpoint, where he parked the vehicle and got into ████████████'s Isuzu which arrived there. From there the two continued to the said meeting place.

6. In Ramallah at the above mentioned gas station, the Defendant and ████████████ met with ████████████, who introduced them to the suicide terrorist who was with them. ████████████ gave the suicide terrorist an M-16 assault rifle and three magazines full of bullets for the M-16 assault rifle.

7. The Defendant and ████████████ concealed the M-16 assault rifle and the magazines within the Isuzu.

8. The Defendant and ████████████ traveled together with the suicide terrorist to Jerusalem so that the latter could carry out a shooting terrorist attack there and cause the deaths of as many civilians as possible.

9. The Defendant, ████████████ and the suicide terrorist arrived at the Kalandia checkpoint and bypassed it. Then the Defendant moved to the Subaru, which he had left there previously, and traveled to A-Ram Junction. The Defendant passed the A-Ram checkpoint in the Subaru and waited there for ████████████ and the suicide terrorist, who had bypassed the A-Ram checkpoint on foot. Subsequently, ████████████ went back, got into the Isuzu, in which the weapons were concealed, and passed through A-Ram checkpoint, traveling alone in the Isuzu with the weapons.

10. The Defendant drove the suicide terrorist to the mosque in Shuafat. ████████████ also arrived there in the Isuzu with the weapon and ammunition.

[Stamp] P 6: 71

11.   There, the suicide terrorist asked to enter the mosque and pray before carrying out the suicide terrorist attack. The Defendant and ████████ agreed to the suicide terrorist's request.

12.   While the suicide terrorist was praying in the said mosque, the Defendant and ████ ████ drove in the Subaru to Givat Shaul in Jerusalem, to check whether there were Israel Defense Forces or police checkpoints on the way. The Defendant and ████████ planned to transport the suicide terrorist to Givat Shaul, to have him carry out the planned shooting terrorist attack there, because there would be numerous civilians in that location.

13.   When the Defendant and ████████ returned to the mosque in Shuafat to pick up the suicide terrorist from there and transport him to Givat Shaul, so that he could carry out the planned shooting terrorist attack there, the two of them did not find the suicide terrorist at the mosque.

14.   The Defendant and ████████ called ████████ and reported to him that the suicide terrorist had run away from him. ████████ instructed the Defendant and ████████ to return to Ramallah.

15.   The Defendant and ████████ returned to Ramallah; there they met with ████ ████ and gave him the Subaru, the M-16 assault rifle and the magazines.



[Round Stamp]
Military Appeals
Court
Judea and Samaria

[Stamp] True Copy

8

Prosecution File 241/02 Amended

[Stamp] P 6: 71 [continued]

[Stamp] True Copy

**Prosecution Witnesses**

1. ██████████████████████████████████████████████ Investigations Bureau, Judea. (took the Defendant's statement dated March 11, 2002, and submitting the Defendant's handwriting in Arabic, and a Seizure and Marking Report)

2. ██████████████████████████████████████████ Investigations Bureau, Judea. (took the Defendant's statement dated April 1, 2002, and submitting the Defendant's handwriting in Arabic)

3. ████████████████████████████████████████ (under arrest) (Prosecution File 242/01)

4. █████████████████████████████████████ (under arrest) (Prosecution File 243/01)

5. ████████████████████████ (under arrest)

**Detailed Incident File 7915/01 Zion**

6. ██████████████████████████████████████, Zion Station. [Submitting action report]

7. ███████████████████████████████████ Criminal Identification Department – Zion Station. [Submitting Initial Crime Scene Visit Report + photo board]

8. ████████████████████████ Zion Station. [Finder of shell casings at the scene of the incident – chain of evidence]

9. ████████████████████████████████████, Mobile Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Vehicle Inspection Report – seizure of remnants of a bullet]

10. █████████████████████████████ Special Duties Department – Zion Station. [Submitting Form Accompanying Exhibits]

11. ███████████████████████████████████████ Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

12. ███████████████████████, Weapons Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Expert Opinion from the Criminal Identification Department File ████████████] (To be summoned only upon the express request of the Defense)

[Stamp] P 6: 72

13. ███████████████████████████ Hadassah Hospital Ein Kerem, Jerusalem. [Submitting discharge certificate for Moshe Weiss] (To be summoned only upon the express request of the Defense)

14. ██████████████ Hadassah Hospital Ein Kerem, Jerusalem. [Submitting notice of death for the late Meir Weissboiz [sic., should be Weisshaus]] (To be summoned only upon the express request of the Defense)

15. Moshe Weiss, Identity No. 024001505. (Details held by the Prosecution) [Seriously wounded in the terrorist attack]

16. ██████████████████████ (Details held by the Prosecution) (Eyewitness)

[Round Stamp]
Military Appeals
Court
Judea and Samaria

## Detailed Incident File 481/01 Zion

17. Tony Amiel, Identity No. 032441040. (Details held by the Prosecution) (Driver of the Honda)

18. Pini Maimon, Identity No. 025759762. (Details held by the Prosecution) (Passenger in the Honda)

19. Pazit Maimon, Identity No. 040128084. (Details held by the Prosecution) (Passenger in the Honda)

## Detailed Incident File 8379/01 Zion

20. ████████████████████████ Criminal Identification Department – Zion Station. [Submitting Initial Crime Scene Visit Report + Seizure and Marking Report]

21. █████████████████████████████ Special Duties Department – Zion Station. [Submitting Form Accompanying Exhibits]

22. ██████████████████████████, Mobile Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Vehicle Inspection Report – seizure of remnants of a bullet]

23. ███████████████████████ Special Duties Department – Zion Station. [Submitting Form Accompanying Exhibits]

24. ██████████████████ Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

[Stamp] P 6: 72 [continued]



25. ███████████████████████████, Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

26. ████████████████Weapons Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting two Expert Opinions from the Criminal Identification Department File ███████████] (To be summoned only upon the express request of the Defense)

27. ████████████ Zion Station. [Finder of shell casings at the scene of the incident – chain of evidence]

28. Malka Cohen, Identity No. 038791386. (Details held by the Prosecution) (Wounded in the terrorist attack)

29. Pinhas Cohen, Identity No. 038348256. (Details held by the Prosecution) (Wounded in the terrorist attack)

30. ██████████████████████(Details held by the Prosecution) (Eyewitness – treated the wounded)

31. ████████████████████████ Hadassah Hospital Ein Kerem, Jerusalem. [Submitting discharge certificate for Pinhas Cohen] (To be summoned only upon the express request of the Defense)

32. ████████████████████████ Hadassah Hospital Ein Kerem, Jerusalem. [Submitting discharge certificate for Malka Cohen] (To be summoned only upon the express request of the Defense)

**Detailed Incident File 39/02 Binyamin**

33. ████████████████████████ Patrol – Binyamin Station. [Submitting action report]

9

Prosecution File 241/02 Amended

[Stamp] P 6: 72 [continued]

[Stamp] True Copy

34. ██████████████████████████████████████████, Binyamin Station. [Submitting Investigation Memorandum/Seizure and Marking]

35. ████████████████████████████████████, Criminal Identification Department, Judea. [Submitting photo boards + collected shell casings at the scene of the incident]

36. ██████████████████████████████ Mobile Laboratory, Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting photo boards + Vehicle Inspection Report]

37. ██████████████████████████████ Binyamin Station. [Submitting Form Accompanying Exhibits]

38. ██████████████████████████ Exhibits Office – Criminal Identification Department, Police National Headquarters – Jerusalem. [Submitting Public Servant's Certificate – Receipt of Exhibits for Examination] (To be summoned only upon the express request of the Defense)

39. ████████████████████████, Israel Defense Forces (Details held by the Prosecution) [Testimony – Determination of the death of the late Yoela Chen + treatment of wounded person]

40. ████████████████████ Hadassah Hospital Ein Kerem, Jerusalem. [Submitting Medical Certificate – Sickness Summary for Rachelle (Rachel) Eini] (To be summoned only upon the express request of the Defense)

41. Rachelle (Rachel) Eini, Identity No. 075966614. (Details held by the Prosecution) (Wounded in the terrorist attack)

42. ████████████████████████ (Details held by the Prosecution) [Testimony + Diagram] (eyewitness)

43. ██████████████████████ (Details held by the Prosecution) (Identification of the deceased)

[Round Stamp] Military
Appeals Court
Judea and Samaria

## Detailed Incident File 502/02 Zion

44. ██████████████████████ Special Duties Department – Zion Station. [Submitting Memorandum Report, Seizure and Marking]

45. ████████████████████ Special Duties Department – Zion Station. [Submitting Seizure and Marking Report]

46. ████████████ Special Duties Department – Zion Station. [Submitting Memorandum Report, Seizure and Marking + Photographs]

[Stamp] P 6: 73

47. ███████████████████████████, Special Duties Department – Zion Station. [Submitting action report + cross findings]

48. ███████████████████████████, Interrogations – Zion Station. [Submitting Seizure and Marking Report]

49. ███████████████████████ (Details held by the Prosecution) (Eyewitness – ran after the terrorist)

50. ███████████████████, Border Guard, Jerusalem (Eyewitness – ran after the terrorist and shot at the terrorist)

51. ██████████████████ Patrol Unit 2 – Zion Station. (Eyewitness – shot at the terrorist)

52. ████████████████████ Central Unit – Jerusalem. (Eyewitness – ran after the terrorist and shot at the terrorist)

53. ████████████████████ Special Patrol Unit – Motorcycles – Shalem Station. (Eyewitness – pursued the terrorist, removed the terrorist's weapon after the terrorist was killed)

54. █████████████████████████, (Details held by the Prosecution) (Eyewitness – security guard on the scene – shot at the terrorist and wounded him)

55. ██████████████████████, Detectives – Central Unit, Jerusalem. (Eyewitness – ran after the terrorist, shot at the terrorist)

56. █████████████████ Detectives – Central Unit, Jerusalem. (Eyewitness –shot at the terrorist)

57. ████████████████████. (Details held by the Prosecution) (Eyewitness – driver of the Egged bus at the scene of the terrorist attack)

58. █████████████████. (Details held by the Prosecution) (Eyewitness)

59. ████████████████████ (Details held by the Prosecution) (Eyewitness)

60. █████████████████████ (Details held by the Prosecution) (Eyewitness)

61. ████████████████████ (Details held by the Prosecution) (Eyewitness)

62. ███████████████████. (Details held by the Prosecution) (Eyewitness)

63. ████████████████████ (Details held by the Prosecution) (Eyewitness)

64. ██████████████████ (Details held by the Prosecution) (Eyewitness)

65. █████████████████████ (Details held by the Prosecution) (Eyewitness – saw the terrorist arrive at the scene of the terrorist attack on foot)

66. ███████████████████ (Details held by the Prosecution) (Identification of the body of the late Ora (Svetlana) Sandler)

[Stamp] P 6: 73 [continued]

67.  ███████████████████████████ Hadassah Hospital Ein Kerem, Jerusalem. [Submitting Notification of Death of the late Ora (Svetlana) Sandler] (To be summoned only upon the express request of the Defense)

68.  ███████████████ Hadassah Hospital Ein Kerem, Jerusalem. [Submitting Notification of Death of the late Sarah Hamburger] (To be summoned only upon the express request of the Defense)


An additional list of witnesses relating to those wounded in the terrorist attack in Jaffa Road on January 22, 2002, and medical certificates related to their injuries, will be provided during the course of the trial.


[Signature]
Michael Kotlick, Captain
Military Prosecutor


Date: January 12, 2003
Reference: 241-02 Amended


10


Prosecution File 241/02 Amended


[Stamp] P 6: 73 [continued]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

MARK I. SOKOLOW, *et al.*,

                         Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                         Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

---

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.     The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P 6: 64-73.

2.     I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.     To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated bearing the bates number P 6: 64-73.

Dated: March _6_, 2014

                                                       Rina Ne'eman

ss.: New Jersey

On the _6_ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
_6_ day of March, 2014

_Leonor Troyano_
Notary Public

LEONOR TROYANO
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/8/2014

| צבא | הגנה | לישראל |
|---|---|---|

| בבית | המשפט | הצבאי | תיק ביה"מ : 3251/02 |
|---|---|---|---|
| בבית | | אל | תיק תביעה : 241/02 |
| בפני | | הרכב | תיק פ.א. : 39/02 בנימין |

ציון 7915/01
ציון 481/01
ציון 8379/01
ציון 502/02





במשפט שבין התובע הצבאי - המאשים

- נ ג ד -

מחמד סאמי אברהים עבדאללה:
ת.ז. 979469954, יליד 04.05.74, תושב ביר נבאללה
עצור מיום 20.02.02

- ה נ א ש ם -

## כ ת ב - א י ש ו ם   מ ת ו ק ן

### הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

#### פרט ראשון:

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) ו-85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מאמצע שנת 2001 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר בחוליה צבאית, אשר שמה לה למטרה ביצוע פיגועים נגד אזרחים ישראליים הן באיזור, הן מחוצה לו. הנאשם פעל בחוליה הצבאית האמורה ביחד עם ███████████ (המכונה " ██████ "), ███████████ (המכונה " ██████ "),

הנאשם פעל בחוליה הצבאית האמורה כפי שיתואר בפרטי האישום הבאים.

ת.א. 241/02 מתוקן

P 6: 64

<u>פרט שני:</u>  (פ.א. 7915/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, גרם בכוונה למותם של אחר, דהיינו :

1. הנאשם הנ"ל, במועד האמור, ברמאללה, נפגש עם ███████████████ ███████████ (המכונה "███████████"), ███████ מידי הגיע לפגישה הנ"ל כשהוא חמוש בתמ"יק MP-5, אשר אותו קיבל ביחד עם ███████████████ (המכונה "███████████") לצורך ביצוע פיגוע ירי, ואילו ה███████ הגיע כשהוא חמוש באקדח טופי.

2. הנאשם וחבריו הנ"ל החליטו לצאת לירושלים ולבצע שם פיגוע ירי מסתרה לגרום למותם של אזרחים ישראליים.

3. בסביבות השעה 22:00, ביום 15.09.01, הנאשם וכל חבריו הנ"ל נסעו מרמאללה לירושלים ברכב איסוזו טנדר של ███████████.

4. ███████ נהג ברכב האיסוזו הנ"ל ונסע עם הנאשם וחבריו על מנת להראותם את המקום שבו יבצעו את פיגוע הירי המתוכנן וכן על מנת להראות לנאשם וחבריו איך להימלט לאחר ביצוע הפיגוע האמור. ███████ הסיע את הנאשם וחבריו לכביש מס' 9 המחבר בין שכונת רמות לבין שכונת הגבעה הצרפתית בירושלים. ███████ הראה לנאשם וחבריו איפה לבצע את הפיגוע המתוכנן ואיך להימלט לאחר מכן. בסיום הסיור האמור, הנאשם וחבריו הנ"ל חזרו לרמאללה.

5. בסביבות השעה 22:30, באותו היום, הנאשם ביחד עם ███████ נסע ברכב גנוב אפור עם לוחיות רישוי ישראליות, אשר אותו סיפק להם ███████ לצורך ביצוע הפיגוע המתוכנן (להלן : הרכב). לפני הנאשם נסע ███████ ברכב האיסוזו הנ"ל וזאת על מנת להודיע באמצעות טלפון סלולרי לנאשם וחבריו על מחסומי משטרה וצה"ל.

6. הנאשם נהג ברכב הנ"ל, לידו ישב ███████, חמוש בתמ"יק MP-5, ובמושב האחורי ישב ███████ החמוש באקדח טופי.

7. הנאשם וחבריו הנ"ל נעצרו בכביש מס' 9 בסמוך לצומת המוביל לשכונת רמת שלמה והמתינו לרכב ישראלי כדי שיגיעו למקום במטרה לבצע לעבר נוסעי פיגוע ירי ולגרום למותם של נוסעי הרכב.

8. לאחר מספר דקות, בסמוך לשעה 23:10, הגיע למקום רכב רנו אקספרס לבן, מ.ר. 2273706 (להלן : הרנו) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

9. הנאשם החל לנסוע אחרי הרנו ועקף אותו.

10. כשהרכב, שבו נהג הנאשם, נסע במקביל לרנו, ███████ פתחו באש בתמ"יק MP-5 ובאקדח טופי לעבר נוסעי הרנו במטרה לגרום למותם.

11. מספר קליעים פגעו על-ידי ███████ פגעו ברנו ובשני נוסעי הרנו – משה וייס ומאיר וייסבויז ז"ל. הנאשם שמע אחד מנוסעי הרנו צועק "איאי איי".

12. לאחר מכן, הנאשם המשיך לנסוע לכיוון שכונת רמות ובסמוך למקום שבו בונים גשר חדש פנה ימינה לדרך עפר המובילה לכיר נבאללה.

13. לפני הכניסה לכיר נבאללה, הנאשם וחבריו שהיו עמו ברכב נפגשו עם ███████ שהמתין להם במקום ברכב האיסוזו. משם הנאשם וחבריו הנ"ל, ביחד עם ███████, המשיכו בנסיעתם לכיר נבאללה ולאחר מכן נמלטו לרמאללה.

14. במעשיה המתוארים לעיל, הנאשם גרם בכוונה למותו של **מאיר וייסבויז** ז"ל, אשר נפטר בבית החולים מאוחר יותר באותו היום כתוצאה מפגיעות הקליעים שנורו על-ידי חברי הנאשם.



ת.ת. 241/02 מתוקן

**פרט שלישי:** (ת.פ.א. 7915/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון [יהודה והשומרון] (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 23:10, במקום המתואר בפרט האישום הקודם, במעשיית האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותו של אנשים שי וייס, אשר נהג בזכב רנו אקספרס לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד הקליעים שנורו על-ידי חברי הנאשם, כפי שתוארו בפרט האישום הקודם, פגע בראשו של משה וייס ופצע אותו.

**פרט רביעי:** (ת.פ.א. 481/01 ציון)

נאמן למקור

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, ביחד עם ███████ (מכונה "█████"), █████ (המכונה "████"), החליט לבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראלים.

2. לצורך ביצוע פיגוע הירי המתוכנן, הנאשם קיבל מידי ████ רכב מזדה 323 גוון כחול אפור עם לוחיות רישוי ישראליות. לצורך ביצוע פיגוע הירי המתוכנן, ████ קיבל מ█████, שומר ראשו של █████ "התמנים" של הפתיח באיזור, שהוא התאמדות בלתי מותרת, תמ"ק MP-5.

3. ביום 03.10.01, הנאשם יצא מרמאללה לכיוון ירושלים במטרה לבצע שם את פיגוע הירי המתוכנן כשהוא נהג ברכב המזדה הנ"ל. ████ נסע ביחד עם הנאשם, כשהוא חמוש בתמ"ק MP-5 הנ"ל.

4. ████ נסע ברכב איסוזו טנדר של █████ לפני רכב המזדה שבו נסע הנאשם וזאת במטרה להודיע על מחסומי המשטרה וצה"ל בדרך. הנאשם וכל חברי הנ"ל הגיעו לבית חנינא החדשה שבירושלים. שם הנאשם החנה את רכב המזדה, וניאמר עם ████ הסתיר בתוך הרכב את תמ"ק MP-5 הנ"ל. הנאשם ו████ עלו לרכב האיסוזו ומשם המשיכו ברכב האיסוזו ביחד עם ████ לכיוון כביש בגין.

5. הנאשם וחבריו הנ"ל הגיעו לכביש בגין. שם, ████ הראה לנאשם ואשר חבריו איפה לבצע את פיגוע הירי המתוכנן ואיך להיכלט לאחר ביצוע פיגוע הירי. הנאשם וחבריו הנ"ל החליטו לבצע את פיגוע הירי המתוכנן במהרה הראשונה של כביש בגין מכיוון רמות וזאת על מנת שלא ישמעו את קולות הירי. לאחר מכן, הנאשם וכל חבריו הנ"ל חזרו לבית חנינא, למקום שבו הושאר רכב המזדה.

6. הנאשם עלה לרכב המזדה, לידו התיישב ████ החמוש בתמ"ק MP-5. משם הנאשם נהג ברכב המזדה לכביש בגין במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראלים.

7. הנאשם ████ נסעו בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב ישראלי בודד במטרה לבצע לעברו את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי הרכב.

8. בסמוך לשעה 23:35, כשהם נוסעים לכיוון צפון, במנהרה האחרונה בכיוון נסיעתם, הנאשם ו████ הבחינו ברכב הונדה אקורד, מ.ר. 1103217, הנוסע בכביש בגין לכיוון צפון. ברכב ההונדה נסעו טוני עמיאל, פיני מימון ופוזה מימון.

9. הנאשם עקף את רכב ההונדה הנ"ל. בעת שהנאשם נסע במקביל לרכב ההונדה הנ"ל, ████ ירה כדור אחד בתמ"ק MP-5, אשר בו החזיק, לעבר נוסעי רכב ההונדה, במטרה לגרום למותם. הקליע שנורה על-ידי ████ לא פגע ברכב ההונדה הנ"ל.

10. לאחר ביצוע פיגוע הירי האמור, הנאשם ו████ המשיכו בנסיעתם לכיוון כביש מס' 9 והמחדר בין שכונות רמות לשכונת הגבעה הצרפתית.

3



נאמן למקור

**פרט חמישי:** (פ.א. 8379/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. לאחר שהנאשם, ביחד עם ███████████ (המכונה "███████"), ביצע את פינוח הירי כפי שתואר בפרט האישום הקודם, השניים המשיכו בנסיעה ברכב המזדה, המתואר בפרט האישום הקודם, לכיוון כביש מס׳ 9, המחבר בין שכונת רמות לשכונת הגבעה הצרפתית במטרה לחגוע משם לבית חנינא ובהמשך לרמאללה.

2. במהלך הנסיעה הנ״ל, על-פי בקשת הנאשם, בדק את תקינותו של תמ״ק MP-5, אשר בן חזיק, ואף ירה מספר כדורים באוויר.

3. במהלך הנסיעה בכביש מס׳ 9 הנ״ל, בסמוך לשעה 23:45, הנאשם ███████ הבחינו ברכב סקודה, מ.ר. 6567709, אשר נסע בכביש מס׳ 9 לכיוון הגבעה הצרפתית. ברכב הסקודה הנ״ל נסעו מלכה כהן ופנחס כהן.

4. הנאשם ו███████ החליטו לבצע פיגוע ירי לעבר רכב הסקודה הנ״ל ולגרום למותם של הנוסעים בו.

5. הנאשם, אשר כאמור, נהג ברכב המזדה, עקף את רכב הסקודה.

6. בעת שהנאשם נסע במקביל לרכב הסקודה הנ״ל, ███████ ירה בתמ״ק MP-5 מספר יריות לעבר רכב הסקודה הנ״ל במטרה לגרום של מותם של נוסעי רכב הסקודה.

7. מספר קליעים שוורו על-ידי ███████ פגעו ברכב הסקודה הנ״ל. שני קליעים שנורו על-ידי ███████ פגעו בפנחס כהן וקליע נוסף פגע במלכה כהן.

8. פנחס כהן נפצע באורח בינוני מפגיעת שני קליעים בבטנו, ואילו מלכה כהן, שהיתה בשבוע ה-28 להריון, נפצעה באורח בינוני מפגיעת קליע בראשה.

9. לאחר ביצוע פיגוע הירי הנ״ל האמור, הנאשם ו███████ המשיכו בנסיעה לכיוון הגבעה הצרפתית ומשם הגיעו לבית חנינא החדשה. שם, הנאשם ו███████ החנו את רכבם ויצרו קשר טלפוני עם ███████ (המכונה "███████"), אשר הגיע למקום ברכב האיסוזו של הנאשם על מנת לאסוף את הנאשם ו███████, וזאת לפי התכנון האמור בפרט האישום הקודם.

10. הנאשם ו███████ הסתירו את תמ״ק MP-5 הנ״ל ברכב האיסוזו ועלו לרכב האיסוזו.

11. הנאשם ושלושת חבריו הנ״ל ניסו לחזור לחזור מירושלים לרמאללה, אך לא הצליחו לעשות זה בגלל מחסומי צה״ל והמשטרה. הנאשם וחבריו הנ״ל נשארו ללון אצל ███████, חברו של ███████, בבית חנינא החדשה בירושלים.

12. יום למחרת, 04.10.01, הנאשם חזר ברכב המזדה הנ״ל לרמאללה והחזיר את הרכב לידי ███████.

**פרט שישי:** (פ.א. 39/02 בנימין)

**מהות הבעירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. ביום 14.01.02 הרג ███████ אשר היה פעיל צבאי בכיר ב"תנועה" של ארגון הפת״ח, שהוא התאחדות בלתי מותרת. בעקבות מותו של ███████ הנ״ל, ראש ה"התנועים" של הפת״ח באיזור - ███████ פתח אוהל אבלים באיזור.

2. ביום 15.01.02, הנאשם הגיע לאוהל האבלים הנ״ל ונפגש שם עם ███████ (המכונה "███████"), ו███████ (המכונה "███████") שהוא שומר ראשו של ███████ הנ״ל. ███████ הנ״ל מסר לנאשם ולחבריו הנ״ל כי ראש "התנועים" של הפת״ח באיזור, מבקש כי הנאשם וחבריו יבצעו באופן מיידי פיגוע נקמה על מותו של ███████ הנ״ל ויגרמו למותם של אזרחים ישראליים.

3. הנאשם וחבריו הנ"ל, באוהל האבלים הנ"ל, החליטו לבצע עוד באותו הערב פיגוע בתחנת
הדלק גבעונים הנמצאת בכביש 443 בסמוך לכניסה לגבעת זאב ולגרום למוותם של אזרחים
ישראליים.

4. בשעות הערב באותו היום, 15.01.02, הנאשם יצא מאוהל האבלים הנ"ל ביחד עם
████████. הנאשם ו████████ נסעו ברכב מסוג טנדר של ████████ לתחנת הדלק הנ"ל
במטרה לבצע שם את פיגוע הירי המתוכנן. אחרי רכב האיסוזו הנ"ל נסעו ████████, החמוש
באקדח 16, ו████████, החמוש באקדח נוסף, ו████████, החמוש בתמ"ק MP-5.
השלושה נסעו ברכב מזדה בצבע חום בהיר לעבר תחנת הדלק הנ"ל במטרה לבצע שם את
הפיגוע המתוכנן.

5. הנאשם וכל חבריו הנ"ל הגיעו עד ערמת עפר החוסמת את החוסמת את היציאה מכפרים ביר נבאללה
ואלג'יב לכביש 443 במרחק של כ-100 מטר מתחנת הדלק הגבעונים. הנאשם וחבריו החנו את
כלי הרכב שלהם, איסוזו ומזדה, עם הפנים לכיוון הכפר ביר נבאללה על מנת שיוכלו להימלט
מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

6. ████████, החמוש באקדח 14 שלו, ו████████, החמוש באקדח 16, ו████████, החמוש
ב-MP-5, ירדו מכלי הרכב והלכו לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי
המתוכנן ולגרום למוותם של אזרחים ישראליים.

7. הנאשם ו████████ נשארו בכלי הרכב הנ"ל על מנת לשמור שלא יגיע למקום סיור של
צה"ל או אנשים אחרים. הנאשם שב בכיסא הנהג ברכב המזדה על מנת שיוכל למלט באופן
מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מייד לאחר ביצוע הפיגוע.

8. ████████ נעמדו בכניסה לתחנת הדלק הנ"ל. לאחר מספר דקות, בסמוך
לשעה 19:45, הבחינו ████████ ברכב פיאט אונו לבן, מ.ר. 6424905, שנכנס
לתחנת הדלק הנ"ל ואשר בו נהגה יואלה חן ז"ל ולידה ישבה רשל (רחל) עיני. ████████
ו████████ ניגשו אל רכב הפיאט במטרה לבצע לעברו פיגוע ירי ולגרום למוותן של נוסעות
הרכב. נוסעות רכב הפיאט הבחינו באקדח שבו החזיק ████████ והחלו לצעוק ולצפור.
████████ הכניס את האקדח למכניסין ואמר לנוסעות הרכב שלא יפחדו. בשלב זה, ████████
פתח באש אוטומטית בתמ"ק MP-5 לעבר נוסעת רכב הפיאט במטרה לגרום למוותן. אז גם
████████ שוב הוציא את האקדח והחל לירות לעבר נוסעת הרכב במטרה לגרום למוותן.

9. ████████ ירו מטווח קצר מאוד מספר רב של כדורים לעבר יואלה חן ז"ל
ולעבר רשל (רחל) עיני שהיו שהיו עיני שהיו ברכב הפיאט הנ"ל.

10. 28-28 קליעים, שנורו על-ידי ████████ פגעו בשמשה הקדמית של הרכב,
מספר קליעים פגעו בצד הרכב ובשמשת חלון דלת הנהג.

11. במהלך ביצוע פיגוע הירי המתואר, ████████ אשר עמד במרחק קצר מאחורי ████████
ו████████, שימש כשומר ומתריע.

12. ████████ מיד לאחר ששמע את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת
להודיע לנאשם וחבריו אם יש מחסומים בדרך לרמאללה.

13. ████████, לאחר שביצעו את פיגוע הירי כאמור לעיל, חזרו בריצה אל
רכב המזדה שבו המתין הנאשם. לאחר שהשלושה הנ"ל עלו לרכב הנאשם הסיע אותם
לרמאללה. ברמאללה, הנאשם, ████████ נפגשו עם ████████.

14. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למוותה של **יואלה חן ז"ל**, אשר נפטרה במקום
████████ כתוצאה מפגיעות הקליעים שנורו על-ידי ████████.

**פרט שביעי:** (פ.א. 39/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מסי 378), תשל"ה-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למוות של אחר, דהיינו:

הנאשם הנ"ל, במועד האמור, בסמוך לשעה 19:45, במקום המתואר בפרט האישום הקודם,
במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למוותה של רשל (רחל) עיני, אשר
נסעה ברכב פיאט אונו לבן, מ.ר. 6424905, המתואר בפרט האישום הקודם. אחד הקליעים שנורו
על-ידי חברי הנאשם, כפי שתוארו בפרט האישום הקודם, פגע בראשה של רשל (רחל) עיני ושני
קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה באורח בינוני.

ה.ת. 241/02 מחוזון

P 6: 68

<u>פרט שמיני:</u> (פ.א. 502/02 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. באמצע חודש ינואר 2002, התקשר אל הנאשם ▮▮▮ (המכונה ▮▮▮ של ▮▮▮ מסר לנאשם כי ▮▮▮ (המכונה ▮▮▮ שומר ראשו של ▮▮▮ - ראש "התנזים" של ארגון הפת"ח, שהוא התאחדות בלתי מותרת, מבקש להכניס לירושלים מחבל, אשר יבצע בירושלים פיגוע התאבדות במטרה לגרום למותם של אזרחים רבים ככל הניתן. הנאשם הסכים להשתתף בהסעת המחבל המתאבד הנ"ל לירושלים.

2. ביום 22.01.02, התקשר אל הנאשם והודיע לו כי ▮▮▮ שוחח עמו והודיעו כי המחבל המתאבד לצורך ביצוע הפיגוע המתוכנן מוכן וצריך להכניס אותו לירושלים. הנאשם שוב הביע את הסכמתו להשתתף בהוצאת לפועל של הפיגוע המתוכנן.

3. מאוחר יותר, באותו היום, הנאשם ו▮▮▮ נפגשו ברמאללה, ▮▮▮ הגיע לפגישה ברכבו אישיו נוסדר עם לוחיות רישוי ישראליות.

4. הנאשם ו▮▮▮ נסעו ברכב האישיו הנ"ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסומי משטרה וצה"ל וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן בירושלים.

5. הנאשם ו▮▮▮ נסעו מרמאללה דרך רפאת והגיעו לאיזור התעשייה עטרות, שם ▮▮▮ השניים חזרו לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המובל"ל למחנה רמה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם הנאשם וחברו פנו ימינה ונסעו עד לצומת חיזמא, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הנאשם וחברו, הגיעו לצומת הגבעה הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. הנאשם ו▮▮▮ ראו כי דרך זו שבה נסעו ניתן להוביל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

6. בהגיעם לרמאללה, הנאשם ו▮▮▮ נסעו למלון "סיטי אין", הנמצא בסמוך לצומת איו"ש. באיזור המלון "סיטי אין", הנאשם ו▮▮▮ נפגשו עם ▮▮▮ הנ"ל, אשר הכיר לנאשם ו▮▮▮ את סעיד רמדאן, תושב כפר תל באיזור שכם, אשר היה היה חמוש ברוס"ר M-16 ושתי מחסניות לרוס"ר M-16 המחוברות בצולבת.

7. ▮▮▮ מסר לנאשם ו▮▮▮ כי סעיד רמדאן הנ"ל הוא המחבל המתאבד, אשר אותם הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשיגרום לעבר אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

8. הנאשם ו▮▮▮ הסתירו את רוס"ר M-16 והמחסניות הנ"ל ברכב האישיו הנ"ל.

9. ▮▮▮ נהג ברכב האישיו, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ואילו הנאשם התיישב במושב האחורי.

10. הנאשם ו▮▮▮ הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כדי שיתוארו לעיל.

11. בירושלים, הנאשם ו▮▮▮ נסעו לרחוב שיח' ג'ראח. שם הם הוציאו את רוס"ר M-16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד רמדאן. הנאשם עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי, כשהוא מחזיק בידיו את רוס"ר M-16 ואת המחסניות.

12. הנאשם ו▮▮▮ הסיעו את סעיד רמדאן לרחוב הנביאים.

13. במהלך הנסיעה, סעיד רמדאן התלונן בפני הנאשם ▮▮▮ כי קנו לו נעליים חדשות עבור הפיגוע, אך הן קטנות ולוחצות לו. הנאשם הוריד את נעליו העלו "ריבוק" ומסר אותם לסעיד רמדאן באומרו "תעלה לגן עדן עם נעלי "ריבוק"".

14. בהגיעם לצומת הרחובות שטראוס והנביאים, הנאשם ▮▮▮ עצרו את רכב האישיו.

15. הנאשם ו▮▮▮ אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שירצה בו הרבה אנשים.

16. לאחר שסעיד רמדאן ירד מהרכב עם רוס"ר M-16 והתחמושת, הנאשם ו▮▮▮ נסעו מהמקום ברכב האישיו, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה.

17. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של הנאשם ו▮▮▮, הגיע לרחוב יפו.



ת.ח. 241/02 מחוזן

P 6: 69