| The Courts | |
|---|---|
| **In the Tel Aviv-Jaffa District Court** | Serious Crime Case 1158/02 |

**Before the panel:**

The Honorable Judge Sarah Sirota, Deputy Presiding Judge
The Honorable Judge Avraham Tal
The Honorable Judge Dr. Amiram Benyamini

The State of Israel                                                                                  **The Prosecution**
The Department for Criminal and Security Manners and
Special Affairs in the Office of the State Attorney
Represented by Counsel, Adv. D. Chen, Adv. R. Hazan and
Adv. A. Bar-Natan

- v. -

Marwan Bin Khatib Barghouti                                                              **The Defendant**
Born in 1959, Identity No. 959251745
of Ramallah (in detention since April 15, 2002)
Represented by the Office of the Public Defender

### Verdict

[Stamp] P 7: 000371


PLAINTIFF'S EXHIBIT 451

## Table of Contents

**Part I: Introduction** p. 2

**Part II: The Evidence** p. 6

    A.    **The Fatah, the Tanzim and the al-Aqsa Martyrs Brigade as Terrorist Organizations** p.6

    B.    **The Status of the Defendant and His Position in Terrorist Organizations and His Support for Terrorist Attacks on Israel** p. 8

    C.    **Testimony of Fatah Terrorism Operatives with Respect to Their Relationship with the Defendant, His Involvement in Terrorist Attacks and the Defendant's Responses to This** p. 16

        (1)   Nasser Aweis ............................................................................. p. 16
        (2)   Nasser Naji Abu Hamid ........................................................... p. 20
        (3)   Ahmed Barghouti ..................................................................... p. 22
        (4)   Mohamed Maslah (Abu Satha) ............................................... p. 27
        (5)   Jamal Ahawil ........................................................................... p. 28
        (6)   Nasser al-Shawish .................................................................... p. 30
        (7)   Ali Aidiya ................................................................................ p. 30
        (8)   Ismail Radaida, Muhannad Abu Halawa and Khamal Abu Wahr ............ p. 34
        (9)   Nasser (Haloum) Naji Abu-Hamid ......................................... p. 34
        (10)  Ziyad Hamuda ......................................................................... p. 35
        (11)  Riad Amor ............................................................................... p. 35
        (12)  Nasser Haj ................................................................................ p. 36
        (13)  Tahrir Barghouti ...................................................................... p. 37
        (14)  Ahmed Musafar ....................................................................... p. 37
        (15)  Sharif Naji ................................................................................ p. 37
        (16)  Amid Abu Radaha ................................................................... p. 37
        (17)  Ashraf Jabar ............................................................................. p. 39

[Stamp] P 7: 000372

**D.** **Statements of the Defendant During His Interrogation and Other Evidence with Respect to His Role and Involvement in Terrorist Attacks Against Israel** ............................................................................................ p. 40

    (1) The liability of the Defendant for the activity of the terrorist cells and the degree of his control over them ..................................................... p. 40

    (2) The Defendant's personal involvement in the terrorist attacks that have been carried out by the cells under his command ........................... p. 44

        (aa) Terrorist attack at the gas station in Givat Ze'ev ....................... p. 47

        (bb) Murder of the Greek Orthodox monk in Ma'ale Adumim ......... p. 48

        (cc) Terrorist attack on the Seafood Market Restaurant in Tel Aviv .................................................................................................... p. 48

        (dd) Attempted terrorist attack near the Malha Mall in Jerusalem .... p. 49

    (3) Provision of funds, weapons and explosives for carrying out terrorist attacks ............................................................................................. p. 49

    (4) Assistance for wanted men and the families of the people arrested or killed ................................................................................................ p. 51

    (5) Recruiting and training operatives for terrorist organizations ................. p. 52

    (6) The Defendant's public calls to perpetrate terrorist attacks against Israel ................................................................................................ p. 53

[Stamp] P 7: 000372 [continued]

**E.**  **The Connection of the Defendant to the Terrorist Attacks that are the Subject of the Indictment** .................................................................................... p. 56

    (1) Murder of Talia and Binyamin Kahane, of blessed memory, near Ofra ............................................................................................................... p. 56

    (2) Murder of Akiva Pashkos, of blessed memory, in the Atarot industrial area ................................................................................................ p. 57

    (3) Murder of the Greek Orthodox monk Tsibouktzakis Germanos, of blessed memory, in Ma'ale Adumim ................................................................ p. 59

    (4) Murder of Yaniv and Sharon Ben-Shalom, of blessed memory, and Doron Yosef Sviri, of blessed memory, on Route 443 ....................................... p. 59

    (5) Murder of Meir Weissboiz, of blessed memory, on Route No. 9 in Jerusalem ....................................................................................................... p. 61

    (6) Murder of Eliahu Cohen, of blessed memory, in the shooting terrorist attack on Route 443 near Givat Ze'ev ................................................ p. 62

    (7) Murder of Yoela Chen, of blessed memory, near the Givonim gas station on Route 443 ..................................................................................... p. 63

    (8) Murder of six people in David's Palace Banquet Hall in Hadera ............. p. 64

    (9) Murder of two women in the shooting terrorist attack at the corner of Jaffa Road and Lunz Street in Jerusalem ................................................... p. 66

    (10) Shooting terrorist attack in the Neve Ya'akov neighborhood in Jerusalem, in which police officer Galit Arbiv, of blessed memory, was killed ................................................................................................... p. 66

    (11) Murder of Gad Rejwan, of blessed memory, in the Bashkevitz factory in Atarot ....................................................................................... p. 69

    (12) Terrorist attack in the Seafood Market restaurant in Tel Aviv ................ p. 70

    (13) Shooting terrorist attack in the Jeremy Hotel in Netanya ........................ p. 72

    (14) Murder of Constantine Danilov, of blessed memory, in Baka al-Garbiyeh ....................................................................................................... p. 73

    (15) Shooting terrorist attack between Ateret and Bir Zeit ............................ p. 74

    (16) Attempted terrorist attack in the Biancini Pub in Jerusalem ................... p. 75

    (17) Shooting terrorist attack on Route No. 9, near French Hill in Jerusalem ....................................................................................................... p. 77

    (18) Attempted suicide terrorist attack in Beit Hanina in Jerusalem .............. p. 78

    (19) Shooting terrorist attack on the Beit El-Psagot Road ............................. p. 78

    (20) Attempted terrorist attack in the Malha Mall in Jerusalem ..................... p. 79

**Part III: Evaluation of the Evidence and Its Significance**     p. 81

**Part IV: Legal Analysis and Conclusions**     p. 92

    1.    <u>**Activity and Membership in a Terrorist Organization**</u>     p. 92

    2.    <u>**Liability of the Joint Perpetrator, the Solicitor and the Accessory and the Differences Between Them**</u>     p. 94

        A.    The Joint Perpetrator in Comparison to the Accessory ..........................p. 96

        B.    The Crime of the Accessory .................................................................p. 104

        C.    The Crime of Solicitation and the Distinction Between the Joint Perpetrator and the Solicitor ................................................................p. 112

        D.    The Liability of the Leader of the Criminal Group as a Joint Perpetrator or as a Solicitor .............................................................p. 117

    3.    <u>**Conclusions with Respect to the Defendant's Liability as a Joint Perpetrator, Solicitor and Accessory**</u>     p. 123

        A.    The Murderous Terrorist Attack at the Gas Station in Givat Ze'ev .......p. 135

        B.    Murder of the Greek Orthodox monk Tzibouktzakis Germanos, of blessed memory, in Ma'ale Adumim......................................................p. 136

        C.    Murderous Terrorist Attack in the Seafood Market Restaurant in Tel Aviv ........................................................................................................p. 138

        D.    The Attempted Terrorist Attack Near the Malha Mall In Jerusalem......p. 139

**Part V: Summation**     p. 139

<u>**Verdict**</u>

**Part I:**     <u>**Introduction**</u>

[Stamp] P 7: 000373 [continued]

1. On August 14, 2002, an indictment was filed against Defendant, which charged him with several counts of **premeditated murder**, in accordance with Section 300 (a) (2) of the Penal Code, 5737 – 1977 **(hereinafter: "the Penal Code")**; **Accessory to murder**, in accordance with Section 300 (a) (2), together with Section 31 of the Penal Code; **Incitement to murder**, in accordance with Section 300 (a) (2), together with Section 30 of the Penal Code; **Attempted murder**, in accordance with Section 305(1) of the Penal Code; **Conspiracy to commit a crime**, in accordance with Section 499 of the Penal Code; **Activity and membership in a terrorist organization**, in accordance with Sections 2 and 3 of the Prevention of Terrorism Ordinance 5708 – 1948.

2. The indictment charges the Defendant with participation in [and] the organization and execution of acts of terrorism against Israeli targets, which commenced in September 2000, within the framework of the events that are referred to as the "al-Aqsa *Intifada*" (hereinafter – the "*intifada*"). According to that which has been alleged in the indictment, the Defendant headed terrorist organizations in the region of Judea and Samaria: the "Fatah" Organization (hereinafter – the "**Fatah**"), the "Tanzim" Organization (hereinafter – the "**Tanzim**") that is part of Fatah, and the "al-Aqsa Martyrs Brigades" Organization, which includes the groups of Tanzim terrorism operatives that perpetrate acts of terrorism against Israeli targets (hereinafter – "**al-Aqsa Martyrs Brigades**"). The Defendant was the one who coordinated between and communicated with the senior operatives in the field in all three of these organizations (which shall jointly be called the "**Terrorist Organizations**") that were responsible for the perpetration of acts of terrorism against Israeli targets.

   The indictment lists the names of eight senior terrorism operatives, who acted under the Defendant's leadership and who perpetrated acts of terrorism. They are Nasser Aweis (hereinafter – "**Aweis**"), Ahmed Barghouti, Nasser Abu Hamid (hereinafter – "**Abu Hamid**"), Ra'ed Karmi (hereinafter – "**Karmi**"), Muhannad Diria (Abu Halawa), (hereinafter – "**Muhannad**") Mohamed Maslah (Abu Satha) (hereinafter – "**Abu Satha**"), Manzur Sharam (hereinafter – "**Sharam**") and Mahmoud Titi (hereinafter – "**Titi**").

   The Defendant and the field commanders recruited operatives for the terrorist organizations, deployed them and supplied them with weapons, explosives and money. The Defendant was also involved in training the terrorism operatives for their purpose and raising funds for terrorist organizations. In addition, the Defendant solicited and encouraged the terrorism operatives to wage offensives against the State of Israel through the media, at various conferences and by way of the distribution of inflammatory posters.

[Stamp] P 7: 000374

**Sections 8-15** of the indictment charge the Defendant with involvement in and liability for the perpetration of 37 terrorist attacks and acts of terrorism, most of which were perpetrated within the borders of the State of Israel, by the field commanders and operatives during the period of time from December 2000 through April 2002, in which many civilians and soldiers of the State of Israel lost their lives and many more were injured. Some of the acts of terrorism have been set forth in the indictment and most of them have been set forth only in the appendix to the indictment.

3. **The Prosecution's evidence includes** the testimony of officials from the defense establishment, Israel Security Agency interrogators and police officers who were involved in the interrogation of the Defendant; testimony by civilians and other entities who were witness to the terrorist attacks that are the subject of the indictment, documents that were seized by the Israeli Defense Forces at the offices of the Fatah and at the office of the Defendant; Expert Opinions from specialists from the defense establishment with respect to the activities of the terrorist organizations and the status and the role of the Defendant in them; testimony that was given by operatives in the terrorist organizations and the information that they provided during their interrogations by the Israel Security Agency and the police; statements by the Defendant that were documented by Israel Security Agency personnel in written reports and, in some cases, were recorded and transcribed; statements that Defendant made to agents who were planted in his cell during the course of the interrogation, as well as to his close associate, Ahmed Barghouti, who was arrested with him; statements that were made by the Defendant to the media prior to his arrest and the statements of the Defendant to the police.

The transcripts of the interrogation of the Defendant by the Israel Security Agency were submitted by the Israel Security Agency interrogators who conducted the interrogation, which was recorded, and who identified the voice of the Defendant in the recording ("Mofaz", on p. 58, "Nadav", on p. 79, "Smith", on pp. 85 – 86, and "Danny", on p. 90). The Defendant's conversation with Ahmed Barghouti was submitted by an interrogator by the name of "Robert" (on p. 65). The recordings from the interrogation of the Defendant and the interrogations of agents John Doe No. 1 and John Doe No. 3 were transcribed by Natan Basso (on p. 174).

The Israel Security Agency interrogators who testified confirmed that the content of the transcript written during the course of the interrogation of the Defendant is accurate (Transcript Prosecution/6 – Prosecution/96). This refers to reports that were recorded in Hebrew, and which pertained to an interrogation that was conducted in Hebrew and in Arabic

[Stamp] P 7: 000374 [continued]

(the Defendant speaks Hebrew well), in which the main points of the statements that were made by the Defendant were taken down (see the interrogator by the name of "Steve", on p. 53, the interrogator by the name of "Emil", on p. 55 and the interrogator by the name of "Ron", on p. 60).

4. With respect to the statement of the Defendant to the police: indeed the Defendant declared throughout the course of his interrogations by the police, in contrast to his behavior during the course of his interrogation by the Israel Security Agency, that he denies the right of the police to interrogate him and that he therefore refused to answer the questions by interrogators (see Statements Prosecution/99 – Prosecution/109). Therefore, the statements of the Defendant include many questions that were presented to him by interrogators and which he refused to answer. In a very few cases, the Defendant briefly related to what the interrogator said to him and, on those occasions, he completely denied all of the claims that were presented to him, including those to which he had confessed while being interrogated by the Israel Security Agency. The Defendant denied that he was a leader of the al-Aqsa Martyrs Brigade or the Tanzim (Statement Prosecution/101 on p. 6, Statement Prosecution/105 on p. 2, Statement Prosecution/106 on p. 3); he denied that he was acquainted with the terrorist operatives who testified that they were in contact with him (as shall be described below) and even denied that he was acquainted with Ra'ed Karmi (Prosecution/104 on p. 8). All of these points were proven, as will be clarified below, not only by the statements by the field operatives but also by those of the Defendant himself, and the documents that were seized in his office, to which the Defendant denied any connection during the course of his interrogation, and claimed that his handwriting does not appear on any of them (see Statement Prosecution/108 – Prosecution/109).

The statements of the Defendant were submitted by interrogators by the name of David Zrihan and Rafi Nuriel (on pp. 38 and 113), who explained that the Defendant had refused to sign the warning and the statement, and that he had been questioned in Hebrew. Zrihan even testified that the Defendant refused to give fingerprints or to be photographed. In his Statement Prosecution/106, the Defendant stated in general that all of the charges against him are incorrect and that he is innocent of any guilt.

[Stamp] P 7: 000375

5.  At the outset of his trial, the Defendant set forth preliminary arguments with respect to the authority of this Court to try him, and these arguments were denied in the decision that was handed down by the Court, which was dated January 19, 2003 (on pp. 1 – 34 of the transcript). The Defendant chose not to receive the assistance of the services of a defense attorney and even strenuously and consistently rejected every attempt that was made by the Court to convince him to receive the assistance of the Office of the Public Defender or a defense attorney on his own behalf.

    In spite of this, the Court did assign the Office of the Public Defender to represent the Defendant, despite its repeated requests to be released from his representation, and for practical purposes, it does represent the Defendant even today and was present at all of the Court sessions. Notwithstanding, the Office of the Public Defender did choose to accede to the request of the Defendant that it not set forth any arguments whatsoever on his behalf during the trial, including legal arguments, and that it not even examine the witnesses.

    The proceedings were conducted in this manner as per the wishes of the Defendant, who continues to deny the jurisdiction of this Court to try him . For this reason, the Defendant also chose not to respond to the indictment. In addition, the Defendant refrained from testifying himself or from bringing forth witnesses on his own behalf. In spite of this, the Defendant did occasionally respond to statements that were made by the witnesses or to arguments that were set forth by Counsel for the Prosecution during the course of the hearing, and his statements were recorded in the transcript verbatim. In addition, the Defendant responded orally to the summations of the Prosecution (which were filed in written form, as well), in the context of the defense speech that he delivered within the framework of the oral summations, however he did not relate in a material manner to the essence of the charges that had been set forth against him. It would be superfluous to note that the Defendant received, through the Office of the Public Defender itself, all of the evidence, transcripts and summations.

[Stamp] P 7: 000375 [continued]

6. The majority of the offenses that are the subject of the indictment are "domestic crimes" that pertain to terrorist attacks that have been perpetrated in Israel, and some of them are "external crimes" that have been carried out in the Region (in other words: in Judea and Samaria). However, as we have clarified in the decision that was handed down with respect to the preliminary arguments of the Defendant, Israeli Courts have the authority to hear cases of external crimes against the security of the state or against an Israeli citizen or resident, regardless of the venue where the crime may have taken place (see Section 13 (a) – (b) of the Penal Code, 5737-1977). This is the same "protective application" that was intended in order to protect Israeli citizens and residents against acts of terrorism that have been carried out with the sponsorship and support of other countries (S. Z. Feller and M. Kremnitzer, "Response to Article Condemning the Nationalist Application of a the Penal Code" in *Plilim* 5.1 (1996) 65, on p. 83, and compare with the Expert Opinion of Y. Shoham, *op cit.,* on p. 5). Further, we have ruled in the decision that was handed down in response to the preliminary arguments of the Defendant that the conditions that have been set forth within the framework of Section 14 (b) of the Penal Code do not appear to be relevant to this matter, if they apply at all to the protective jurisdiction in Section 13 of the Penal Code (in contrast with the

[Stamp] P 7: 000375 [continued]

personal jurisdiction in Section 14) insofar as the Palestinian Authority is not a state. The offenses that have been attributed to the Defendant in the indictment are offenses against the security of the state, and against its citizens and residents, Therefore, they fall within the purview of Section 13 of the Penal Code, and this Court is competent to hear them.

**Part II:     The Evidence**

**A.     The Fatah, the Tanzim and the al-Aqsa Martyrs Brigade as Terrorist Organizations**

7.     During the course of his testimony (on p. 38), the head of the Research Division of the Intelligence Branch of the Israeli Defense Forces, Brigadier General Y. Cooperwasser, filed an Expert Opinion in which he addressed the operations of the Fatah, the Tanzim and the al-Aqsa Martyrs Brigade (Prosecution/1). Appended to the expert opinion were captured documents that had been seized by the Israeli Defense Forces during Operation Defensive Shield that are pertinent in this regard. Since the "Fatah" (the inverted Arabic acronym of its name "The Movement for the Liberation of Palestine") was founded by Yasser Arafat in 1959, it has espoused armed struggle against Israel, which has manifested in the form of the perpetration of terrorist attacks against Israeli targets in Israel and abroad. After the Oslo Accords were signed, the principle of "armed struggle" took on a marginal role, however it remained as an option for the achievement of the goals of the organization, in the event that negotiations with Israel were to prove unsuccessful. When the second *intifada* broke out in September 2000, the Fatah led the terrorist attacks in the territories, by way of the two Supreme Committees that manage its operations, one of them in the Judea and Samaria region and the second one in the Gaza Strip region. The Defendant headed the Supreme Committee in the Judea and Samaria region up until the day of his arrest (Sections 1 – 3 of the Expert Opinion).

The operational echelon of the Fatah included the movement's field operatives – the Tanzim ("the organization" in Arabic). The Tanzim operatives make up the forefront of the Fatah's terrorist activity against Israel. The "al-Aqsa Martyrs Brigades" is a cover name for the terrorist organizations of the Fatah, which assume public responsibility for the acts of terrorism. Members of the al-Aqsa Martyrs Brigades are actually Fatah operatives and the majority of these organizations consider the Defendant to be a central source of authority for their operations (Sections 4 – 5 of the Expert Opinion).

[Stamp] P 7: 000376

The Tanzim and the al-Aqsa Martyrs Brigades constitute, in accordance with the Expert Opinion of Brigadier General Cooperwasser, the unofficial military arm of the Fatah, which was headed by the Defendant. A captured document that is appended to the Expert Opinion of Brigadier General Cooperwasser as Appendix A is a letter that was jointly signed by both the Tanzim and the al-Aqsa Martyrs Brigades.

Other captured documents that have been appended to the Expert Opinion show that the al-Aqsa Martyrs Brigades asked Yasser Arafat for financial support (Document 2) and that the Fatah and al-Aqsa Martyrs Brigades are signatories to proclamations that were issued in praise of terrorist operations that have been carried out within the borders of Israel (Documents 3 – 5). Document 6, which was appended to the Expert Opinion, and which was sent on May 8, 2001, by the al-Aqsa Martyrs Brigades to the Defendant, lists the operations of the al-Aqsa Martyrs Brigades in the Jenin district (including a terrorist attack in Um el-Faham) and asks for assistance in the form of weapons, explosives and money, in order to continue in the perpetration of such operations. Other documents of the al-Aqsa Martyrs Brigades, which were addressed to Yasser Arafat, include requests for assisting wanted men who were being pursued by Israel and the families of operatives who had been killed (Appendix B and Documents 2 – 4 to this Appendix). Some of these documents had been written by the Defendant. It should be noted that the Defendant's nickname, based on the name of his eldest son was "**Abu Alkasam**" (Defendant's statement Prosecution/107, on p. 1, and the manner in which Aweil addresses the Defendant on p. 164).

8. According to the Expert Opinion of Brigadier General Cooperwasser, Fatah operatives have perpetrated more than 1200 terrorist attacks against Israel (as of August 18, 2002) in which 176 Israelis have been killed and many more have been injured. These terrorist attacks included suicide [attacks] [and] the firing of mortar shells and light weapons. During the course of the *intifada*, the terrorist organizations of the Fatah moved increasingly towards the perpetration of suicide terrorist attacks within the borders of Israel (see Section 5 of the Expert Opinion). In the months that preceded Operation Defensive Shield, the al-Aqsa Martyrs Brigades perpetrated suicide terrorist attacks in Hadera, Jerusalem, Tel Aviv, Mehula, [Israeli Defense Forces Military] Base No. 80, the Maccabim roadblock, Netanya, Ashdod, Kfar Saba and Efrat. As a result, it was included in the American list of terrorist organizations that was dated March 27, 2002 (see Section 10 of the Expert Opinion and Appendix C, which lists the suicide terrorist attacks that have been perpetrated by the Fatah movement).

[Stamp] P 7: 000376 [continued]