9. With respect to the Expert Opinion of Brigadier General Goldwasser, it should be noted that pursuant to the Rules of Evidence, we are not permitted to rely on intelligence assessments and conclusions that are based on various sources of information that have not been brought before the Court, insofar as these constitute hearsay testimony. We are allowed to rely on this Expert Opinion only to the extent that it is compatible with other admissible evidence that has been brought before us. Nevertheless, the terrorist operations of the three above mentioned organizations that are under the auspices of the Fatah, emerge clearly from a great deal of the direct evidence that has been presented in Court, including the confessions that the Defendant and other terrorist operatives have given during the course of their interrogations, as shall be set forth later on in this verdict, below.

Nasser Abu Hamid, who was one of the senior field commanders in Judea and Samaria, said in his statement to the police (Prosecution/149 (8), on pp. 2 – 3, 7 – 8, 13 – 17) that the al-Aqsa Martyrs Brigades was established on January 1, 2001, in order to serve as a militia for the Fatah and to carry out terrorist attacks against settlers and soldiers in the Israel Defense Forces. In the above mentioned statement, as well as in Statement Prosecution/149 (c)), he specified the terrorist attacks that had been perpetrated by his operatives against Israeli civilian and military targets, under the leadership and with the assistance of the Defendant (as shall be set forth below).

10. It is also possible to learn about the operations of the above mentioned terrorist organizations from statements that were made by the Defendant during the course of his interrogation, as well as documents that were written in his handwriting. The Defendant explained the manner in which the cells that are called as "al-Aqsa Martyrs Brigades" operated, and which he said had carried out "military operations" (Prosecution/19 Section 14, which was filed and approved by an interrogator by the name of by the name of "Mofaz", on p. 58). In the same manner, the Defendant explained, during the course of his interrogation, the manner in which the al-Aqsa Martyrs Brigades had been formed in the Judea and Samaria region, and how it and worked in an uncentralized fashion, He claimed that the Fatah did not supervise their activity; but he also admitted that these cells approached him in order to receive money because they considered him "**the person who was in charge of the Fatah in the West Bank**" (Transcript Prosecution/98 (e), on pp. 60 – 61). As shall be explained below, the terrorism operatives from the al-Aqsa Martyrs Brigades directed their requests for financial assistance for the purchase of weapons and the perpetration of terrorist attacks to the Defendant, who would subsequently approach the chairman of the Palestinian Authority and leader of the Fatah, Yasser Arafat, in their name and on their behalf. Hence, this makes the relationship between the al-Aqsa Martyrs Brigades and the Fatah clear, as well as the relationship between the Defendant and the al-Aqsa Martyrs Brigades.

[Stamp] P 7: 000377

B. **The Status of the Defendant and His Position in Terrorist Organizations and His Support for Terrorist Attacks on Israel**

11. In his testimony, Brigadier General Goldwasser presented an additional Expert Opinion, which pertained to the involvement of the Defendant in terrorism [sic] (Prosecution/2). A series of appendices are attached to this Expert Opinion, which includes interviews that were conducted with the Defendant by different media outlets, as well as documents that were written by the Defendant or that were found in his office. This Expert Opinion is also subject to the note that has been set forth in Section 9 above, with respect to the admissibility of intelligence assessments that rely on information sources that have not been specified and that have not been brought before the Court. Therefore, in this respect as well, we shall require independent, admissible evidence that has been set forth in Court.

12. In the Expert Opinion of Brigadier General Goldwasser, Prosecution/2, it was stated that the Defendant was head of the Fatah Supreme Committee in Judea and Samaria until the time of his arrest and that he accordingly served as the leader of the Fatah in the West Bank. This can be learned from the various documents that the Defendant wrote and which were written to him, and which are appended to Expert Opinions Prosecution/1 and Prosecution/2. In the above mentioned position, the Defendant constituted a central source of authority for senior members of the Fatah and served as a conduit connecting the chairman of the Palestinian Authority, Yasser Arafat, to the movement's field echelons (Sections 1 – 2).

It was further stated in the above mentioned Expert Opinion (see Section 4) that when the *intifada* broke out in September 2000, the Defendant played an extremely central role in leading the [campaign of] terror against Israel that was carried out by members of the Fatah, as well as in a general sense. His involvement manifested in a variety of different ways: **First of all**, the Defendant constituted a source of inspiration and created the policy for the terrorist attacks through personal meetings with terrorist operatives in the Fatah movement and by way of his public statements. **Second**, the Defendant was a source of authority and funding for terrorist operatives in the Fatah movement: he was perceived by the al-Aqsa Martyrs Brigades as the main leader of their operations, who served as a conduit that connected them to the chairman of the Palestinian Authority and who transferred sums of money to them that amounted to tens of thousands of shekels, for the purpose of terrorist activity. **Third**, the Defendant issued direct orders to terrorist operatives, on both the strategic level and on the tactical level, with respect to specific terrorist attacks.

[Stamp] P 7: 000377 [continued]

13. During the course of his interrogation by the Israel Security Agency, the Defendant did not hide his clear position whereby the Fatah movement must be the one to lead "the armed struggle against Israel" and that this is the only way to achieve the goals of the Palestinian people after the failure of the peace process and after the Defendant himself had been a peace activist for many years (Transcript Prosecution/59, Sections 2-5, that was submitted and verified by an interrogator by the name of "Wadi", on p. 96). He made it clear that when he used the term "armed struggle" he was referring to terrorist attacks (Transcript of the Interrogation Prosecution/98 (k), on pp. 2 – 3). The Defendant explained that the Fatah leaders feared a weakening of their power on the Palestinian street, in comparison to the Islamic movements and that this encouraged them to take a position that espoused terrorist attacks against Israel (Transcript Prosecution/21 Section 5, that was submitted and verified by an interrogator by the name of "Robert", on p. 63 (recorded in error in the Transcript Prosecution/41); Transcript Prosecution/23 Section 5, that was submitted and verified by an interrogator by the name of "Danny", on p. 90; Transcript Prosecution/27 Sections 10-12 and Transcript Prosecution/55 Section 3 that were submitted and verified by an interrogator by the name of "Smith", on p. 85; Transcript Prosecution/30 Sections 8-12 and Transcript Prosecution/58 Section 5 that were submitted and verified by an interrogator by the name of "Emile", on p. 54; Transcript Prosecution/40 Section 15 that was submitted and verified by an interrogator by the name of "Mofaz", on p. 58; Transcript Prosecution/70 Section 3 that was submitted and verified by an interrogator by the name of "Steve", on p. 53).

During the course of his interrogation, the Defendant said that "**his declared position is for armed struggle against the Israeli occupation and that anyone who has a weapon should perpetrate terrorist attacks, this is the general position**" (Prosecution/23 Section 5, see also Transcript Prosecution/6 Sections 11 – 12, that was submitted and verified by an interrogator by the name of "Robert", on p. 62). He explained that in accordance with his perspective, terrorist attacks that will be painful for Israel will promote peace and will cause Israelis to understand that they have something to lose (Prosecution/40 Section 15, and Prosecution/70 Section 4). The Defendant made it clear that from his point of view Israelis who live in settlements are an enemy that should be attacked (Transcript Prosecution/63, Section 16, that was submitted and verified by an interrogator by the name of "Naor", on p. 82). He also stated that terrorist attacks against settlers in Judea and Samaria are legitimate even when they involved women and children (Transcript Prosecution/6 Section 13 that was submitted and verified by an interrogator by the name of "Robert", on p. 62; Transcript Prosecution/7 Section 2 that was submitted and verified by interrogators by the names of "Tzadok" and "Ofir", on pp. 83, 87).

[Stamp] P 7: 000378 [continued]

        The Defendant reiterated repeatedly during the course of his interrogation that in the debate that was taking place between the Palestinian Authority and the Fatah with respect to the type of terrorist attacks against Israel, Arafat and he espoused a policy whereby terrorist attacks should be focused against the Israeli Defense Forces and the settlers, while other leaders such as Abu Ala and Abu Mazen opposed any type of violence; only a few members of the Fatah supported terrorist attacks within Israel (Prosecution/27 Sections 12 – 13; Prosecution/30 Section 8; Prosecution/70 Section 3). Despite the opposition of Arafat and the Defendant to terrorist attacks within Israel, they lost control of the cells and field operatives during the *intifada* (Transcript Prosecution/55 Section 3 (f), that was submitted and verified by an interrogator by the name of "Smith", on p. 85).

14.     The Defendant's position, as it has been set forth above, is also manifested within the framework of his statements during interrogations, which have been transcribed. The Defendant explained his position that suicide terrorist attacks should not be perpetrated within Israel, saying that terrorist attacks against the settlements are the same as terrorist attacks against the army and there was no argument on this point within Fatah. Notwithstanding, he did confess that during the period of time that immediately preceded his arrest, the Fatah did begin to perpetrate suicide terrorist attacks within Israel and even confirmed that the Fatah had been drawn into this activity in order not to leave control of the field in the hands of the Islamic organizations (Prosecution/98 (d), on pp. 27 – 29). The Defendant explained that he personally disagreed with any activity within Israel but that he supported "the armed struggle against the Israeli occupation" and did this publicly on television (Prosecution/98 (g), on pp. 7, 10).

        The Defendant confirmed that during the five months that had led up to his arrest, the Fatah had assumed a central role in the escalation of violence and had led the war; the Defendant did not deny that he had taken part in this (Prosecution/98 (l), on p. 35; Prosecution/98 (d), on pp. 3 – 4).

        During the course of the interrogation, the Defendant emphasized that he had supported the peace accords and worked on their behalf for 10 years but the escalation in violence was caused, he claimed, by a lack of hope that a political solution could be reached with Prime Minister Sharon (Prosecution/98 (l), on pp. 44 – 45). The Defendant even expressed his opinion that the Palestinians had made a mistake when they rejected Israel's proposal and, especially, the proposal of President Clinton at the Camp David summit, because if they had accepted those proposals, they would now have an independent state (Transcript Prosecution/95 that was submitted and verified by an interrogator by the name of "Ofir", on p. 87).

[Stamp] P 7: 000378 [continued]

15. It is also possible to learn about the position of the Defendant with respect to terrorist attacks and his role in the perpetration of terrorist attacks against Israel by the Fatah from the conversations that he had with the agents who were planted in a cell. The agent who was referred to as John Doe No. 1 introduced himself to the Defendant as a Palestinian from Nablus. He reported the things that the Defendant had told him to Israel Security Agency interrogators after the conversations had taken place, and these were recorded in the transcript that was taken down by the Israel Security Agency interrogators who had testified in the trial ("Robert", on p. 154, "Mickey", on p. 155, "Ofir", on p. 156 and "Mofaz", on p. 157). In addition, John Doe No. 1 testified himself (on pp. 101 – 107). John Doe No. 1 testified that he read all of the reports that had been recorded by Israel Security Agency agents with respect to his conversations with the Defendant, and that he had confirmed their content (on p. 105). The agent, John Doe No. 3, operated and was employed in a similar matter. He also identified the voice of the Defendant on the recording Prosecution/124 (b) (see his testimony on pp. 107 – 110 and in the exhibits Prosecution/122 – Prosecution/125).

According to the testimony of John Doe No. 1, the Defendant had told him that he was the one who had established the al-Aqsa Martyrs Brigade and that he was in charge of that organization (on p. 106). In the transcript that was written on the basis of his oral statements (Prosecution/117 that was submitted and verified by an interrogator by the name of "Robert", on p. 154), John Doe No. 1 said that the Defendant told him that the *intifada* had actually been planned because of the political situation, the expansion of the settlements, the continued occupation and pressure from Palestinians in the territories and that the visit of Ariel Sharon on the Temple Mount was only "the straw that broke the camel's back" and ignited the *intifada* that would have happened anyway (see also Transcript Prosecution/25 Section 18, that was submitted and verified by an interrogator by the name of "Mofaz", on p. 58).

[Stamp] P 7: 000379

After the incident on the Temple Mount, the Fatah security apparatus asked Arafat to order the halting of the *intifada,* but Arafat did not respond. The Defendant himself said that he left the meeting in a fury in light of the request that they had made, and that he is hated by the apparatus because he "dragged the people into an escalation of the situation." The Defendant told John Doe No. 1 that the purpose of the *intifada* was to attack soldiers and settlers in order to cause their departure, and in order to prove to the world that the Palestinians are fighting the occupation. However, after Israel had begun its policy of targeted assassinations, and especially after it targeted Ra'ed Karmi, the Fatah began to act within Israel, with the objective of harming civilians and in order to cause damage to the Israeli economy and tourism and to exert pressure on the Israeli street to pressure the government to withdraw from the territories (*op. cit.,* Sections 12 – 13, 17, 20 – 21). Similarly, the Defendant told John Doe No. 1 that, from his perspective, terrorist attacks constitute self-defense for the Palestinians, who are willing to extend a hand in peace, and that suicide terrorist attacks are an outcome of the occupation and the condition of the Palestinians in the territories (Transcript Prosecution/110 Sections 22, 27).

The position of the Defendant in support of the continuation of the *intifada* was further expressed in the letter that he had sent to Yasser Arafat on December 31, 2000 (Prosecution/5 (42a)).

[Stamp] P 7: 000379 [continued]

16. With respect to Fatah's policy on terrorist attacks, the Defendant explained, during the course of his interrogation, that when Arafat was interested in a cease fire he would take pains to convey the guideline to many different people, including the Defendant; but that when he was interested in the continuation of the activity, he would make sure that the operatives, including the Defendant, would understand this from his responses and especially from his non-responses. The Defendant said: "**If he (Arafat) for example did not want a cease fire, he would take care of matters differently. He would not say anything at all**" (Transcript Prosecution/24 Section 3 (b) that was submitted and verified by an interrogator by the name of "Smith", on p. 85, and the transcript of the interrogation of the Defendant Prosecution/98 (i), on pp. 32-33). The Defendant said that Arafat had never explicitly ordered him to carry out terrorist attacks. Notwithstanding, he did add that from the fact that Arafat only opposed the perpetration of terrorist attacks within Israel, it was possible to understand that he supported terrorist attacks in the territories and therefore he did not order that they be stopped; on several occasions, Arafat stated in the media that "**a million *shahids* [martyrs] are on their way to Jerusalem**" and the Defendant asked rhetorically whether the statement wasn't a statement of support for terrorist attacks (Transcript Prosecution/60 Section 4-7 that was submitted and verified by an interrogator by the name of "Emile", on p. 54; Transcript Prosecution/61 Sections 1 – 8 that was submitted and verified by an interrogator by the name of "Mickey", on p. 81; Transcript Prosecution/62 Sections 3-5 that was submitted and verified by an interrogator by the name of "Danny", on p. 90).

The Defendant explained that there was no need for direct orders from Arafat in order to carry out terrorist attacks since this was self-evident between the lines (Transcript Prosecution/63 Sections 11-13 that was submitted and verified by an interrogator by the name of "Naor", on p. 82). The Defendant added that even if the *intifada* had not commenced at the order of Arafat, it would not have continued if he did not support it, even though was not necessary for him to give explicit orders with respect to the perpetration of terrorist attacks (Transcript Prosecution/64 that was submitted and verified by an interrogator by the name of "Robert", on p. 62, and Prosecution/66 that was submitted and verified by an interrogator by the name of "Emile", on p.

[Stamp] P 7: 000379 [continued]

54). It should also be noted that the Defendant understood that Arafat supported the terrorist attacks from the fact that Arafat would approve the financial requests that he submitted for the Fatah field operatives who were perpetrating the terrorist attacks (Transcript Prosecution/70 Section 17 (h) that was submitted and verified by an interrogator by the name of "Steve", on p. 53). The Defendant described his relationship with Arafat as **"personal and direct"** (Transcription of Conversation Prosecution/98 (h), on p. 55).

It became evident that the Defendant also had his own way of informing members of the cells of the cessation or renewal of terrorist attacks. During the course of his interrogation, he explained that when he wanted a cease fire he would make contact with the large cells, although it would happen that there would be people who would not obey his order; when the Defendant was interested in renewing fire, he would announce it on television by calling for an "armed struggle." When he was asked how he would announce his desire to renew attacks, the Defendant answered:

> **"I do not want fire, I talk on television if I want peace, meaning I do not call up some random person and say 'Hey, go commit a terrorist attack for us. Hey, do this or that for us.' That is not the way we work. I speak in the name of the movement and I am actually calling for an *intifada* when I call for an armed struggle"** (Prosecution/98 (h), on p. 3).

In spite of these statements on the part of the Defendant, it emerges from the testimony of the terror operative Aweis that the Defendant did instruct him to cease the perpetration of terrorist attacks during the visit of the United States emissary Anthony Zinni (see below). From the testimony of Agent John Doe No. 1 during his questioning, subsequent to his conversations with the Defendant, it transpires that the Defendant had expressed great anger about the fact that Aweis had provided this information during the course of his interrogation (Transcript Prosecution/113 (a), Sections 8-9, Transcript Prosecution/114 (a) Section 8 that were submitted and verified by an interrogator by the name of "Robert", on p. 154). In addition, evidence was set forth with respect to other situations in which the Defendant had issued direct orders to terrorist operatives who were close to him, in order to carry out terrorist attacks against Israelis (see below).

[Stamp] P 7: 000380

17. At the outset of his interrogation by the Israel Security Agency, the Defendant denied that he was a leader of the Tanzim and the al-Aqsa Martyrs Brigades, but confirmed that he was the person in charge of the military operations of the Fatah (Transcript Prosecution/17 Section 6, which was submitted and verified by an interrogator by the name of "Arbel", on p. 80, Transcript Prosecution/43 Section 6 that was submitted and verified by an interrogator by the name of "Robert", on p. 62, and a Transcript of the Interrogation Prosecution/98 (a), on pp. 43-44). The Defendant claimed that the Brigades were nothing more than scattered cells throughout the area of the West Bank and that they did not have any orderly organizational structure or central command (Transcript of Conversation Prosecution/98 (e), on pp. 60-61). The Defendant also said during the course of his interrogation that Arafat was effectively his direct commander and his superior and he defined himself as **"responsible for all of the operations of the Fatah in the West Bank itself because he was secretary general of the organization in the West Bank"** (Prosecution/24 Section 3 (b), 5).

The Defendant confirmed that he was the leader of Fatah in the "field" while Yasser Arafat held the position of the head of the Fatah (Transcript of Conversation Prosecution/98 (a), on p. 67). In this manner, the Defendant also explained during the course of his interrogation the fact that members of the cells approached him with requests for money because they considered him the **"commander"** as well as **"the person who was in charge of the Fatah in the West Bank,"** insofar as he was the political spokesperson of the movement and because he maintained a policy and a position that supported the continuation of the struggle against the occupation (Transcript of Conversation Prosecution/98 (e), on pp. 3-4, 61; Prosecution/98 (d), on pp. 33-35). The Defendant explained how he was seen in the eyes of cell members when he said: **"I am their commander and they consider me to be their symbol."** He also confirmed that there is no one else whom they consider to be their leader (Prosecution 98 (i), on pp. 6-7).

In statements that he made during the course of his trial, the Defendant claimed more than once that he was "political leader" of the Fatah and emphasized his position as secretary general of the Fatah in the West Bank, as well as the fact that he is a member of the Palestinian Parliament [Legislative Council]. He also made these claims at the outset of his interrogation by the Israel Security Agency. During the course of his interrogation by the police, the Defendant also denied that he was in charge of the Tanzim or the al-Aqsa Martyrs Brigades (Prosecution/106, on pp. 3, 6). Notwithstanding, during the course of his interrogation by the Israel Security Agency, the Defendant admitted that he was the commander of the Fatah in the West Bank and the commander of the Tanzim (Transcript Prosecution/18 Section 3 that was submitted and verified by an interrogator by the name of "Nadav", on p. 78), that he established the al-Aqsa Martyrs Brigades and was responsible for their operations; for this reason he objected to the activity of the security forces belonging to the Palestinian Authority (in accordance with statements by John Doe No. 1 in Transcript Prosecution/117 Section 15, which was submitted by an interrogator by the name of "Robert", on p. 154).

[Stamp] P 7: 000380 [continued]

The Defendant told Agent John Doe No. 3 in their conversation that he was indeed responsible for the Fatah and for the al-Aqsa Martyrs Brigades but that he was "not crazy [enough] to sign" his name on a piece of paper that would contain these written statements; when the agent asked the Defendant if he was, in spite of this, responsible for the acts of the terrorists, the Defendant responded that he was indeed responsible but "not stupid [enough] to tell this to the interrogators" (Transcript Prosecution/123, on p. 2, which was submitted by an interrogator by the name of by the name of "Ofir"). In a meeting between the Defendant and Ahmed Barghouti when they were arrested, which was recorded without their knowledge, the Defendant told Ahmed that he said during the course of his interrogation that he has no connection to the al-Aqsa Martyrs Brigades. The two laughed and Ahmed advised the Defendant to say that only he – Ahmed – had a connection to the Brigades; the Defendant responded that he had said during the course of his interrogation that he would have fired Ahmed if he knew that he had a connection to the al-Aqsa Martyrs Brigades and Ahmed laughed when he heard this (Transcription of Conversation Prosecution/127 (c) on p. 87).

The Defendant confirmed during the course of his interrogation that beyond being a political leader he was also in charge of the military aspects of the Fatah (Transcript Prosecution/59 Section 6 that was submitted and verified by an interrogator by the name of "Wadi", on p. 96). The Defendant defined himself as "**in charge of all of the operations of the Tanzim in the Fatah in his region**" (Transcription of Conversation Prosecution/98 (d) on p. 42). He even confessed that he was "**in charge of everything that was undertaken, including supplying money to the cells, purchasing weapons and carrying out terrorist attacks**" (Transcript Prosecution/29 Section 1 (c) that was submitted and verified by an interrogator by the name of "Smith", on p. 85) and that he was considered as a "**military commander**" and "**in charge of the military aspects of Fatah**," in addition to being a political leader and elected official (Transcript Prosecution/19 Section 2 and Transcript Prosecution/59 Sections 5-6, which were submitted and verified by an interrogator by the name of "Mofaz", on p. 58).

The Defendant said that in the year prior to his arrest, "**I began to find myself more involved in dealing with issues of weapons and explosives and issues of military operations**" (Transcript Prosecution/25 Section 19, which was submitted and verified by an interrogator by the name of "Mofaz", on p. 58; see also Transcript of Conversation Prosecution/98 (d) on p. 15). He explained that he was required to take part in "military operations" in order to control the Palestinian street and to push the Hamas and the Islamic Jihad aside, so that in the future, he could point to himself as someone who had taken action in favor of both peace and war (Transcript Prosecution/52, which was submitted and verified by an interrogator by the name of "Smith", on p. 85).

[Stamp] P 7: 000381