answered in an indirect, implied manner. He chose the tactics that he used during interrogation, namely to expand on political subjects, be brief with respect to those related to acts of terrorism and, in any case not to provide any details other than those which he expected that the interrogators already knew.

As Agent John Doe No. 1 testified, the Defendant told him, "**Even if the entire Palestinian people admits to something, he will decide what to say during interrogation**" (Prosecution/110 Section 10). From all which is stated above, it is clear that the Defendant gave his statements of his own free will.

[Stamp] P 7: 000426

Part IV:    Legal Analysis and Conclusions

1. **Activity and Membership in a Terrorist Organization**

139. In the indictment, the Defendant is charged with the crimes, among others, of activity and membership in a terrorist organization, in accordance with Sections 1 – 3 of the Prevention of Terrorism Ordinance, 5708 – 1948, which states:

> "1.  **Interpretation**
> 'Terrorist organization' means a group of persons that uses, in its activities, acts of violence calculated to cause death or injury to a person or threats of such acts of violence; a 'member of a terrorist organization' means a person belonging to it and includes a person who participates in its activities, publishes propaganda in favor of a terrorist organization, its activities or aims, or collects money or goods for the benefit of a terrorist organization or its activities.
>
> 2.  *Activity in a terrorist organization*
> A person fulfilling a managerial or instructional position in a terrorist organization or participating in the deliberations or decision-making of a terrorist organization or acting as a member of a tribunal of a terrorist organization or delivering a propaganda speech at a public meeting or on the radio on behalf of a terrorist organization shall be guilty of an offence and shall be liable, upon conviction, to imprisonment for a term not exceeding twenty years.
>
> 3.  *Membership in a terrorist organization*
> A person who is a member of a terrorist organization shall be guilty of an offence and be liable, upon conviction, to imprisonment for a term not exceeding five years."

Section 7 of the Prevention of Terrorism Ordinance states:

> "7.  *Proof of the existence of a terrorist organization*
> In order to prove in any legal proceeding that a particular group of persons is a terrorist organization, it shall be sufficient to prove that –
>
> (a)  One or more of its members, on behalf of or by order of that group of persons, at any time after 5 Iyar 5708 (May 14, 1948), committed acts of violence calculated to cause death or injury to a person or made threats of such acts of violence; or

[Stamp] P 7: 000427

(b) The group of persons, or one or more of its members on its behalf or by its order, has or have declared that that body of persons is responsible for acts of violence calculated to cause death or injury to a person or for threats of such acts of violence, or has or have declared that that body of persons has been involved in such acts of violence or threats, provided that the acts of violence or threats were committed or made after 5 Iyar 5708 (May 14, 1948)."

[Stamp] P 7: 000427 [continued]

140. The fact that Fatah, Tanzim and al-Aqsa Martyrs Brigades are terrorist organizations, in accordance with that which has been set forth in the Expert Opinion of Brigadier General Cooperwasser Prosecution/1, is clearly proven by the seized documents that were taken during Operation Protective Shield, which were presented as evidence in this Court, and also from the testimony of the terrorism operatives and the Defendant himself (see above, Sections 7 – 10; testimony of Aweis in Sections 21 – 23; testimony of Abu Hamid in Section 25; testimony of Ahmed Barghouti in Section 29; testimony of Ahawil in Section 35; testimony of Aidiya in Section 40; testimony of Sharif in Section 55; testimony of Abu Radaha in Section 57; and the Defendant's statements from his interrogation as described in Sections 60 – 64). The terrorist attacks that are the subject of this indictment, and many others, were executed by the field operatives of Fatah – members of the Tanzim – and by cells that were organized within the framework that is called "the al-Aqsa Martyrs Brigades". The Defendant was the leader of Fatah in the West Bank and commander of the Tanzim and al-Aqsa Martyrs Brigades, as he admitted during the course of his interrogation and as proven by much additional evidence (see Section 17 and Sections 60 – 65 above).

The Defendant's roles in leadership of the terrorist organizations were also described at length (see Part II, Chapter D above). The Defendant was the commander of terrorist organizations and terrorist cells, even if sometimes they did not follow his orders, and he made an effort to supply them with weapons, explosives and money for the purpose of their activities (see Part II, Chapter D (1) and (3) above). He was also personally involved in some of the terrorist attacks that have been carried out by the organizations that he led (see Part II, Chapter D (2) above). The Defendant also handled assistance for wanted men and the families of people who were arrested or killed, recruited operatives for the terrorist organizations and trained them (see Part II, Chapter D (4) – (5) above). He was the person who expressed the positions of the terrorist organizations in the media (see Chapter D (6) above).

In this case, therefore, we are not dealing merely with "a person fulfilling a managerial or instructional position in a terrorist organization" in accordance with that which has been set forth in Section 2 of the Prevention of Terrorism Ordinance, rather the Defendant was the person who headed these terrorist organizations, created their policy and made propaganda speeches on their behalf in the media.

Therefore, the foundations of Sections 2 and 3 of the Prevention of Terrorism Ordinance, namely membership in a terrorist organization and activity in such an organization, are proven.

[Stamp] P 7: 000428

2. **Responsibility of the Joint Perpetrator, the Solicitor and the Accessory and the Differences Between Them**

141. The indictment charges the Defendant with the direct responsibility of a "joint perpetrator" in all of the acts of murder and attempted murder that are the subject of the indictment, which lists 37 different terrorist attacks.

    The indictment also charges the Defendant with the crimes of being an accessory to murder and soliciting murder, even though the Prosecution's claim in its summation is that the Defendant should be considered a joint perpetrator in these crimes, and not only an accessory or one who solicits others, because he was a leader of terrorist organizations and the main person responsible for perpetrating murderous terrorist attacks that were executed by these terrorist organizations. Therefore, it is necessary to review the degree of responsibility claimed for the Defendant in the terrorist attacks that are the subject of the indictment: first – as one who committed acts of murder as a joint perpetrator together with the field operatives and the terrorists who actually perpetrated the attacks; second – as the person who solicited others to perpetrate the attacks; third – as an accessory to acts of murder. In this framework, it is necessary to examine the traits that characterize "the joint perpetrator" and to distinguish between them and those that characterize the accessory and the one who solicits [the offense].

142. In Section 29 (b) of the Penal Code, 5737-1977, the responsibility of the joint perpetrator is defined as follows:

    > "The participants in the perpetration of a crime who take action in order to commit it are joint perpetrators and it makes no difference if all of the actions are done together or if some are accomplished by one and some by

[Stamp] P 7: 000428 [continued]

another."

Section 30 of the Penal Code, 5737 – 1977, defines the responsibility of the solicitor as follows:

> "Anyone who causes another to perpetrate a crime by persuasion, encouragement, demand, pleading or any other manner that exerts pressure is soliciting a crime."

Section 31 of the Penal Code, 5737 – 1977, defines the responsibility of the accessory as follows:

> "Anyone who, before the commission of crime or during its commission, does anything to make commission of the crime possible, who makes it easier, secures it or prevents the capture of the perpetrator, its discovery or negation or contributes in any other manner to the creation of conditions for committing the crime, is an accessory."

143. In order for a person to be considered a joint perpetrator who commits a crime together with others, there needs to be a foundation of "taking action in order to perpetrate" the crime, as Section 29 (b) of the law instructs.

Case law has interpreted the concept "perpetrate" broadly when defining the essence of the act that it requires. Similarly, rulings have set flexible criteria with respect to the degree to which the participant needs to be close to the circle of perpetrators and for his ability to influence their deeds (Additional Criminal Hearing 1294/96 **Uzi Meshulam v. The State of Israel** PD 52 (5) 1, on p. 21 (the Honorable Justice A. Matza), on p. 54 – 55 (the Honorable Justice M. Cheshin) and on pp. 63 – 64 (the Honorable Justice Y. Kedmi)).

With respect to the act that is required in order for it to be possible to consider a person to be a joint perpetrator, it has been ruled that it sufficient for the act of perpetrating the crime to be beyond simple preparation (this is also the criteria for the existence of the offense of attempt), and be accompanied by the appropriate mens rea (Additional Criminal Hearing 1294/96, as above, in the case of **Meshulam**, on pp. 23 – 24). This act is not required to be essential for the success of the crime nor does it need to be an act that is part the basic factual foundation of the crime; it is sufficient that the act is included in the plan for the crime or the division of tasks among the participants (the above mentioned Additional Criminal Hearing 1294/96, in the case of **Meshulam**, on pp. 63 – 64 (the Honorable Justice Y. Kedmi)).

A. **The Joint Perpetrator in Comparison to the Accessory**

[Stamp] P 7: 000429

144. The distinction between the "joint perpetrator" in a crime, in accordance with Section 29 (b) of the Penal Code, and the "accessory", in accordance with Section 31 of the law, has become a matter of major importance since the Penal Code (Amendment No. 39) (Preliminary Part and General Part), 5754 – 1984 went into effect because in accordance with Section 32 of the law in its new version, the punishment of an accessory is half that of a joint perpetrator, whereas in accordance with the previous law their punishment was the same. The maximum punishment for an accessory to murder is 20 years' imprisonment (see Section 32 (1) of the Penal Code) while the mandatory sentence for a joint perpetrator murderer, in the absence of circumstances for reduced responsibility, is life imprisonment.

    In Criminal Appeals 8901, 8873, 8710, 8620, and 8573/96 **Mercado *et al.* v. The State of Israel** ("the Discount Banker's Trial"), PD 51 (5) 481, the Honorable Justice Goldberg wrote on p. 545:

    > "**Amendment No. 39 to the Code expresses the recognition that the moral guilt and the subjective and objective danger adhering to the accessory is less than that of the joint perpetrator. This disparity is the foundation for the distinction in sentencing between the joint perpetrator and the accessory and it is what should guide us when determining the test to be used for distinguishing between a principal offender and an accessory.**"

145. The distinction between a "joint perpetrator" and an "accessory" was clarified in Criminal Appeals 4389/93 and 4497/93, **Yossi Mordecai *et al.* v. The State of Israel**, PD 50 (3) 239, in Criminal Appeals 2796/95, 2813/95, and 2814/95, **John Does v. The State of Israel**, PD 51 (3) 388, the above mentioned Additional Criminal Hearing 1294/96 in the matter of **Meshulam**; the above mentioned Criminal Appeal 8573/96, in the matter of **Mercado**, on pp. 543 – 550; and Criminal Appeal 2111/99 **Heyro v. The State of Israel**, PD 58 (1) 411. The distinction between a joint perpetrator and an accessory is found in both its factual basis and its mental basis. In principle, "**The quality of the accessory's contribution to perpetration of the crime is a lower one than the quality of the contribution of the principal offender**" (the above mentioned Criminal Appeal 8573/96, on p. 545).

[Stamp] P 7: 000430

With respect to the **factual basis** of the crime – the main distinction is between direct and indirect partners in perpetrating the crime. The joint perpetrators are those "**participants who take action in order to perpetrate**" the crime, but each one is not required to personally perpetrate all of the factual bases of the crime (see Section 29 (b) of the Code). In contrast, the accessory does something that in some way contributes to "**creating conditions for committing the crime**" (see Section 31 of the Code). The joint perpetrator is part of the inner circle that commits the crime while the contribution of the accessory to the commission of the crime is entirely external. Therefore, the Court examines the degree of proximity for each participant in the crime, meaning is he part of the inner circle of the criminal task (Criminal Appeal 3390/98 **Rosh v. The State of Israel**, PD 53 (5) 871,

[Stamp] P 7: 000430 [continued]

878)? This, then, is "**the proximity test**" that was explained by the Honorable President Justice A. Barak in the above mentioend Criminal Appeal 4389/93, the matter of **Mordecai**, on p. 250:

> "The difference between the joint perpetrator and the accessory is expressed in that the joint perpetrators act as a single unit to commit a criminal task. They are all chief offenders… The contribution of each of the joint perpetrators is "internal"… therefore, with respect to the joint perpetrators, it may be possible to divide the work between the offenders so that they act in different places and at different times without each of them completing the crime, but each part is significant for implementing their common plan. Uniform time and place are not essential, as long as the role of each is an internal role for the criminal task."

146. In the rulings that were cited above, the Supreme Court reviewed the various distinctions that have been proposed in rulings and in legal literature in order to set boundaries between a joint perpetrator and an accessory. There are those who emphasize "**the test of control**" as a characteristic of the joint perpetrator: the joint perpetrator has control, together with others, over commission of the crime; he is part of a joint plan for committing a crime, and works together with others in order to carry out it. On the status of the joint perpetrator in light of the "test of control," the Honorable President Justice A. Barak wrote in the above mentioned Criminal Appeal 2796/93, in the matter of **John Does** (see Section 28):

> "The characteristic of the joint perpetrator is that he is master of the criminal activity. He has functional – substantive control, together with the other joint perpetrators, over the criminal act. He is part of the joint decision to commit the crime and he is part of the overall plan to commit the crime, and works together with the others to realize the forbidden criminal act. He works together with the other joint perpetrators so that each one of them has control – together with the others – over the entire activity. His status with regard to the decision to commit the crime is one of a person who is 'inside.' His contribution is 'internal.' He has a substantial share in completing the joint plan…"

Similarly, in the ruling that was handed down on the above mentioned Criminal Appeal 8573/96, in the matter of **Mercado**, on pp. 547 – 548. In contrast, in regard to the accessory, the Honorable Presiding Justice A. Barak wrote that the accessory "**is not the father of the idea**" to commit the crime and in Section 30 he wrote as follows:

[Stamp] P 7: 000431

> "The accessory is an indirect secondary partner (Mordecai case, Section 14). He is found outside of the inner circle of perpetration. He is an 'external' force. He does not initiate the perpetration and he does not solicit it… He does not decide to commit the crime and he does not control it…"

[Stamp] P 7: 000431 [continued]

(See also the above mentioned Criminal Appeal 4389/93, in the matter of **Mordecai**, Sections 13-14).

147. In contrast to the "test of control," there are those who emphasize the "**test of functionality**," in accordance with which the joint perpetrator is a person who takes a substantial role in committing the crime itself, while the share of the accessory is expressed in an act of assistance and is external to the crime.

    This test finds expression in the language of Section 29 (b) of the law ("**participants in the commission of an offense while taking action in order to commit it**"). In the above mentioned Criminal Appeal 2796/93, in the case of **John Does**, (see Section 27) the Honorable President Justice A. Barak wrote with regard to joint perpetrators:

    > "**They are the main partners in the commission of the crime. The partnership between them is expressed in that they have taken part in the commission of a crime as direct perpetrators. They work as a single unit to commit a criminal task... Each takes a principal part in the commission of the crime.**"

    In continuation of his words (see Section 27), the Honorable President Justice A. Barak wrote:

    > "**Being a joint perpetrator requires joint planning. It is based on a division of work among the perpetrators...**"

    The Honorable Justice Y. Kedmi wrote clearly about the decisive importance of the "test of functionality" in Criminal Appeal 5206/98 **Halil Abud v. The State of Israel**, PD 52 (4) 185 (see Section 2):

    > "'The joint perpetrators' are not only the partners in the commission of the 'act' of the crime itself; rather, they include everyone who 'took part' in the commission of the crime, in the broadest sense of the word 'commission.' Whereas anyone who only 'contributed' to its commission, without actually taking part – which is to say without having a 'role' in its framework – remains in the 'outer circle' of those who are responsible for its commission. He is not the partner in commission; his role is limited to simple 'assistance' for the commission of the crime.

[Stamp] P 7: 000432

> **The distinction between those who are included in the 'inner circle' – 'the joint perpetrators' – and those who are included in the 'outer circle' – 'the accessories' – is to be found in the quality and character of their involvement in its commission: if 'they took part in its commission' – meaning if they have a 'role' in its commission, then they are 'co-conspirators'; but if they only 'contributed' to it from the outside – then they are merely 'accessories.'"**

Further on in the ruling, the Honorable Justice Kedmi explains that the distinction between the joint perpetrator and the accessory **is not** dependent on the question of whether the Defendant's behavior assisted in the commission of the crime, since a joint perpetrator can also assist its commission; the question is "**if he took part – meaning: if he played a role – in the commission of the crime.**"

In Additional Proceedings **1294/96, 1365 <u>Meshulam</u> *et al.* v. <u>The State of Israel</u>**, PD 52 (5) 1, on p. 63, the Honorable Justice Kedmi wrote:

> **"'An active partnership' need not be expressed in joint action in committing an 'act' that is an element of the factual basis of the crime, and the broad comprehensive meaning of 'act' expresses 'partnership' in committing the crime. In Section 29 of the Penal Code, the definition of 'active partnership' does not require that the 'act' be done while committing the factual basis of the crime but it certainly expresses 'partnership' in its commission. The 'partnership', as noted, can begin with the suggestion of the idea to the people who are designated to commit the crime."**

The Honorable Justice M. Cheshin noted in the same manner that the law does not require that an act of partnership in the commission of a crime be done while the crime is actually being committed or is adjacent to it (on pp. 53 – 54).

148. In the above mentioned Additional Criminal Hearing 1294/96, in the matter of **Meshulam**, the Supreme Court explained that "the test of control" is an auxiliary test that is not the sole or exclusive test, and that it should be combined with other tests and considerations; controlling the commission of the crime is important evidence of a person being a joint perpetrator but the lack of control or a lack of critical physical contribution to commission a crime does not necessarily negate this conclusion (the Honorable President Justice A. Barak on p. 50; the Honorable Justice A. Matza on pp. 24 – 27; the Honorable Justice Y. Kedmi on p. 65). Furthermore, even when the Court is aided by the "test of control" this is done while emphasizing that it does not mean continuous control throughout the commission of the entire crime but rather "control of a certain portion of the crime that was allotted to a particular perpetrator" (the Honorable Justice Y. Kedmi on p. 64).

[Stamp] P 7: 000433

149. With respect to the **mental basis** for the crime – certainly the mental attitude of the accessory is on a lower level than that of the principal perpetrator, with respect to everything that is related to the degree of his awareness of details that are related to the commission of the crime and his desire to realize it. We would rule that for the accessory, it is sufficient if he is aware of the fact that his behavior is contributing to the conditions that are necessary for the commission of the main crime and that the principal is about to commit it. In addition, the accessory needs to have in mind the purpose of assisting the principal perpetrator in the commission of the crime or making it easier for him to carry it out. However, when the principal crime is consequential and it requires an element of haste or special intent – it is not necessary to prove that the accessory acted out of an intent of this type or that he intended that the principal perpetrator would realize his goals. For example, for a crime of murder, it is not necessary to prove that the accessory intended for the principal to murder the victim or that he desired that outcome; it is sufficient that the accessory's intent be to aid the principal perpetrator, whatever the motivations of the accessory might be (these rules were clarified in Criminal Appeal 320/99 **Jane Doe v. The State of Israel**, PD 55 (3) 22, on pp. 31 – 37).

In contrast to this, when dealing with the joint perpetrator, it must be proven that he had a high level of mental involvement and awareness of the details of the crime being committed, in addition to his desire to realize it:

> "**The co-conspirator contributes his contribution to a criminal act with multiple participants with a mental attitude of creating a crime *onimo auctoris*. He considers the commission of the crime his business and not that of someone else** (words of S. Z. Feller in his book **Foundations of Criminal Law**, quoted in Criminal Appeal 4389/93, as above, in the case **Mordecai,** on p. 251).

**In summation**: The joint perpetrator, as opposed to the accessory, needs to have a mental basis that is equal to that of the other principals in the crime and he needs to have all of the elements of the mental basis that have been determined by law for the crime in which he has taken part (the above mentioned Criminal Appeal 2796/95, in the matter of **John Does**, on p. 402).

In the above mentioned Criminal Appeal 8573/96, in the case of **Mercado**, the Honorable Justice A. Goldberg wrote, on pp. 548 – 549, that the categorization of the Defendant as a joint perpetrator or as an accessory is the result of a combined test of the mental basis and the factual basis – a test which is like a parallelogram of forces:

[Stamp] P 7: 000434

"The greater the mental basis (with regard to his degree of interest in its commission) of the person who committed the crime, the more it is possible to be satisfied with a lower level of the factual basis. In this spirit, it has already been said that 'when the "mental" basis is proven (the awareness – A.G.), the division of the tasks among the participants involved in the event is no longer important' (the above mentioned Criminal Appeal 4188/95, 5235, [43], on p. 550). Conversely, the greater

[Stamp] P 7: 000434 [continued]

> the factual basis for the commission of the crime, from the perspective of the quality of his contribution to its perpetration, it is possible to be satisfied with the lower level of mental basis."

These points were confirmed in the above mentioned Additional Criminal Hearing 1294/96 in the matter of **Meshulam** (on p. 27, in accordance with that which has been set forth by the Honorable Justice A. Matza).

150. From the rules that have been was cited above, it becomes apparent that participation in planning a crime serves as a clear sign of a joint perpetrator. In this case, is not necessary for him to be physically present at the scene of the crime in order to be considered a joint perpetrator.

In the above mentioned Additional Criminal Hearing 1294/96 in matter of **Meshulam** (on p. 64), the Honorable Justice Y. Kedmi ruled:

> "'Participation', as stated, can begin with proposing the idea to the people who are intended to commit the crime, and in any case, as far as I am concerned, there is no doubt that planning the perpetration, giving orders and delineating the lines of action, including assigning roles to the participants, constitute an 'act' that expresses 'participation', as stated."

In Criminal Appeal 3596/93 **Hamoud Abu Sror v. The State of Israel**, PD 52 (3) 481, the Honorable Justice A. Matza wrote on p. 491:

> "The practical contribution of the appellant to the commission of murder was indeed smaller than that of his two companions. However, his active participation in the preparations and the warning role he played gave him control over bringing the murderous plan into being. From the fact that he participated in the preparation for its perpetration and acted for the success of the plan, it becomes apparent that he had the criminal intent that is required for inclusion in liability for the crime of premeditated murder."

[Stamp] P 7: 000435

In the above mentioned Criminal Appeal 2796/95, in the matter of **John Does**, four adolescents were convicted of premeditated murder, in spite of the fact that only one of them throw the grenade that caused the death of victim of the crime. One (Ze'ev) was convicted as a joint perpetrator because he took part in all of the stages of planning and perpetration, and was present at the scene when the crime was committed, in spite of the fact that he decided not to throw that the fatal grenade himself ("**he did not implement the act of killing. This is meaningless since a joint perpetrator is responsible even if he himself did not commit all of the foundations of the crime…** " – on p. 407). The second (Gershon) was convicted as a joint perpetrator even though he was not even present at the scene of the murder and his entire role was to report the deed to media after it had been committed, because he fulfilled the role that was assigned to him in advance, for the purpose of the perpetration of the crime (on p. 408). The third (Tal) was convicted as a joint perpetrator, in spite of the fact that he, too, was not present at the scene of the murder because

[Stamp] P 7: 000435 [continued]