> but did not develop into a decision to commit it. In such a case, if the behavior of the solicitor caused the final decision of the 'solicitee' to commit the offense, then the factual basis for the offense of solicitation has been established."

160. With respect to the mental element of the offense of solicitation, the Honorable Justice D. Beinisch ruled in the above mentioned Criminal Appeal 8469/99, in the matter of **Eskin**, on p. 81:

> "In general, in order to establish the mental element within the framework of the act of solicitation, it must be proved that two requirements have been met: first, the solicitor must be aware that his behavior is capable of bringing another (the 'solicitee') to commit the offense which constitutes the object of the solicitation. This requirement refers to awareness of the quality of the soliciting behavior and also aware of the existence of the other, who requires mental motivation in order to commit the offense which constitutes the target of the solicitation. Second, the solicitor intends to bring the solicitee to the point of committing the offense which constitutes the target of the solicitation. In other words, the solicitation needs to be accompanied by an aspiration – an objective – on the part of the solicitor, for the offense in question, including all of the elements thereof, to actually be perpetrated by the 'solicitee' (S. Z. Feller in his above mentioned book (Volume 2) (18), on p. 234)."

161. The case law that pertains to the liability of a solicitor – in contrast to the case law that pertains to the liability of an accessory – does not state that the solicitation must relate to a particular offense with a concrete purpose, perhaps because this is self-evident. However, this requirement is built into the elements of the offense of solicitation and is *a fortiori* obvious with regard to the solicitor, whose punishment is identical to that of the principal perpetrator (as opposed to the accessory, whose punishment is half of that of the principal perpetrator). In order to prove the offense of solicitation, it is necessary to show a causal relationship between the solicitation and the commission of the main crime by the solicitee, and, furthermore, to show the solicitor's objective and aspiration for the offense to be committed. All of these require the solicitation to refer to a specific crime with a concrete purpose, as has also been ruled in the case of the accessory. Thus, Prof. S. Z. Feller wrote in his book, **Fundamentals of Criminal Law**, 5747 – 1987, Volume 2, on p. 226:

[Stamp] P 7: 000443

> "It is appropriate to explain in advance that the concept of solicitation, as a form of partnership in the offense, has a meaning that is not always apparent from the ordinary use of this term. This is a meaning that reflects the relationship between one individual and another, the solicitor and the solicitee, and not the relationship between an individual and a group of persons in a situation where the individual incites, agitates, and provokes a certain group of persons, without any distinction between the individual identities of the persons in that grop, to perpetrate criminal offenses.
>
> These actions are likely to give rise to specific offenses, and even if some form of the word "solicit" is used to define them, this is not "solicitation" as a form of partnership in the offense, which we will discuss below."

However, as has been ruled in the case of the accessory, it is not necessary to prove that the solicitor was aware of all of the details involved in the offense which constituted the object of the solicitation, and it is sufficient for him to have solicited the perpetrator to commit a crime of the same type as the crime that was finally committed (see Section 145 above). Furthermore, in the matter of solicitation as well, obviously, the principle with respect to intent is transferable: it makes no difference if the crime is eventually committed by another person.

**In summation**: It is not possible to convict a person for the general offense of solicitation to commit acts of murder when he calls

[Stamp] P 7: 000443 [continued]

for the perpetration of terrorist attacks against Israel; the offense which is appropriate to this purpose is that of inciting to violence or to terrorism exists for this purpose (see Section 144 (d) (2) of the Penal Code, 5737 – 1977). Similarly, it is not possible to convict a person of the general offense of being an accessory to murder when he supplies money or armaments for the perpetration of various non-specific offenses. The offense which is appropriate to this purpose is that of supplying means for the perpetration of a crime in accordance with Section 498 of the Penal Code, 5737 – 1977, that was legislated especially in order to deal with situations in which definite knowledge of the intent to perpetrate a particular offense cannot be proved, so that the person cannot be considered an accessory (see the explanatory note to the Amendment of the Penal Code Draft Law (No. 36) 5733 – 1972, Draft Laws 5733 [1972] 1021, on p. 20).

162. With respect to the line distinguishing between the solicitor and the joint perpetrator, the Honorable Presiding Justice A. Barak ruled in the above mentioned Criminal Appeal 2796/95, in the matter of **John Does**, on p. 406, that **"the contribution of the solicitor lies in the fact that he caused the creation of the mental element in the perpetrators"**, and that **"the more intensive the solicitation by the solicitor, and the more it involves, not only actions on the mental level but also actions on the factual level, the closer the solicitor comes to being a joint perpetrator."** In the above mentioned matter of **John Does**, the minor referred to as "T" was convicted of murder as a joint perpetrator and not only as a solicitor, for having thrown a grenade at Arabs, even though he refused to join the action itself – because it was ruled that he participated in planning the offense and was **"the first and foremost of them all"** (on pp. 408 – 409).

With respect to the distinction between the accessory and the solicitor, the Honorable Presiding Justice A. Barak said (on p. 406) that, when assistance is "spiritual", the accessory may become a solicitor: **"The dividing line distinguishes between assistance to someone who has already developed his own criminal thoughts (the accessory) and contributing to the development of that criminal thought (solicitor)."**

In the above mentioned Additional Criminal Hearing 1294/96 in the matter of **Meshulam**, the Honorable Justice Y. Kedmi ruled (on p. 63):

[Stamp] P 7: 000444

> "As set forth above, the liability of the 'joint perpetrator' is founded – in accordance with that which has been set forth in Section 29 of the Penal Code – on 'participation' – commission of a crime by 'taking action' to commit it… and in the absence of an 'act of participation' – in accordance with that which has been set forth – there is no basis for responsibility of this type… By contrast, the liability of the 'solicitor' for the commission of a crime by another person is founded on the performance of an 'act of solicitation', one of the acts listed in Section 30 of the Penal Code. This act does not constitute an 'act of participation' in the perpetration, but rather leaves the person performing it 'outside' of the circle of perpetration."

At 66, the Honorable Justice Y. Kedmi wrote:

> "In theory, the distinction between the solicitor and the joint perpetrator is founded on the fact that the contribution of the solicitor to the commission of the crime is the creation of the 'mental element which must be present in the solicitee in order for him to commit the offense of which he is the principal perpetrator; whereas the contribution of the joint perpetrator is, primarily, on the level of the behavior which constitutes the offense, since he is required to 'participate' by taking action toward the perpetration of the crime (in this regard, see Feller's above mentioned book (Volume 2) [20] on p. 196, 228). In practical terms, however, the boundary line between the solicitor and the joint perpetrator is drawn between a person who 'participates' in the perpetration – meaning someone who belongs to the inner core of perpetrators – and someone who is only 'involved' in the perpetration, meaning that he is outside the inner circle of perpetrators."

D. **The Responsibility of the Leader of the Criminal Group as a Joint Perpetrator or as a Solicitor**

163. For the purpose of determining a defendant's liability as a joint perpetrator or a solicitor, Courts have given decisive weight to the fact that the defendant is a leader of the criminal group that perpetrated the principal offense. According to the above mentioned Criminal Appeal 2796/95 in the matter of **John Does**, the minor referred to as "T" was convicted as a joint perpetrator and not simply as a solicitor, although he did not actually join in the

[Stamp] P 7: 000444 [continued]

perpetration of the offense of murder itself, because he participated in the planning and was a leader of the group, and in the language of Honorable Presiding Justice A. Barak, he was "the first and foremost of them all".

In the above mentioned Criminal Appeal 8461/99 in the matter of **Eskin**, the Defendant was convicted for soliciting the offenses of arson and unauthorized entry to a place of ritual or burial, which were committed by a person who was subordinate to the Defendant and accepted his authority; the Court emphasized the fact that the Defendant was "a leader and a guide" and the fact that the Defendant was the one who gave his "consent and authorization" for the perpetration of the offense and received a report after the perpetration was completed (on p. 77 – 81, 84, 90 – 91). In spite of this, it should be noted that the Defendant in that case took part in planning the crime and provided monetary aid for its commission. In those circumstances, the Honorable Justice D. Beinisch noted, as an *obiter dictum*, that it might have been possible to convict him as a joint perpetrator and not only as a solicitor, when she said (on p. 84):

> **"Even if we were to have said that the main 'contribution' of the appellant to the perpetration of the offense was in giving his 'authorization' to the criminal plan and its realization, in these special circumstances, it is possible that 'consent' to the perpetration could be considered participation 'in the perpetration of an offense while taking action toward the perpetration thereof', in accordance with that which has been set forth in Section 29 of the Penal Code."**

In this statement, the Honorable Justice Beinisch refers to the statements by the Honorable Justice Y. Kedmi in Criminal Appeal 5589/98, **Bisan Sultan v. The State of Israel**, Supreme Court Compendium 99 (3) 98, Section 9. In that case, the appellant was convicted for premeditated murder when it was proved that he had given his consent and authorization for perpetration of the murder, and had sent the joint perpetrator to actually commit the murder and had even instructed him in the method to be used.

Judge Kedmi emphasized that, without the consent of the appellant, the murder would not have taken place, and therefore the approval he gave for the murder could be compared to **"the opening shot that starts the athlete running,"** and can be considered "an act of participation in committing the offense." Therefore, the appellant was convicted as a joint perpetrator and as a solicitor, and the Court emphasized that he was found to be "in the inner circle of perpetration", as someone who had a role in its perpetration and was "the brains of the group", whereas someone who solicits a crime is outside of the inner circle of perpetration.

[Stamp] P 7: 000445

The Honorable Justice Kedmi added that in the circumstances described above, in which the appellant had given "a green light for murder" and had provided operational guidelines for how it should be done, his behavior was at least "**a full measure of solicitation by way of encouragement**." Also in the above mentioned Criminal Appeal 8469/99 in the matter of **Eskin**, it was ruled that the fact that the appellant had approved setting the fire as a leader or guide was sufficient to lead to the conclusion that this approval constituted encouragement for the principal perpetrator to transform the idea of arson into action (on p. 93).

164. The question of the liability of the leader of a criminal group who did not physically participate in the offense committed by those who accepted his authority arose, with all due severity, in the above mentioned Additional Procedure 1294/96 in the matter of **Meshulam**. In a majority opinion by six justices, the Court ruled that a master criminal, who is a leader of a group of criminals that commits offenses as his agent and in accordance with his planning and his orders, is not simply a solicitor: he is considered a joint perpetrator because of the complete control that he has over the perpetration of the offense and its perpetrators. The Honorable Justice D. Dorner expressed her belief, in a minority opinion, that a person of this type should be viewed as no more than a solicitor (on pp. 42 – 47). Another opinion, in accordance with which the leader of a criminal organization should be viewed as a "perpetrator by means of another", in accordance with Section 29 (c) of the Penal Code, is expressed in the articles written by M. Kremnitzer, "**The Perpetrator in Criminal Law: Main Characteristics**" [Hebrew], *Plilim* 1 (5750 – 1990) 65, on p. 72, and M. Gur-Arye, "**Aspects of Crime – Amendment 39 to the Penal Code as Tested in Rulings**" [Hebrew], *Megamot Biflilim*, on p. 83. The article by Prof. Kremnitzer states, on p. 72:

> "**It seems that we do not need to explain at length that the usual concepts of indirect participation (accessory and solicitation) are not adequate with regard to criminal phenomena such as war crimes, crimes committed**

[Stamp] P 7: 000445 [continued]

by a criminal state (Nazi crimes) or by a criminal organization (the 'Mafia'). A person who is in a position of control in these types of systems (and not only the person at the top of the hierarchy) who gives the order to kill a person is not simply soliciting or an accessory to murder when his command is perpetrated. The special nature of this act is evident in the fact that, when he gives the command, he can rest assured that his orders will be followed without being acquainted with the physical perpetrator. He knows that if one of the possible organizations that might implement the order does not, another will. The main point is – the task will be done.

The direct perpetrator does indeed control the act (he commits it with his own hands with the required mental basis and not under duress), although from the perspective of the one who gives the order, he is perceived in an entirely different manner – as an anonymous, replaceable figure, much like a bolt or a wheel in the operating mechanism of the organization, which is in the hands of the person who gave the orders. The fungibility of the direct perpetrator transforms the one who controls the organization into a perpetrator by means of another."

165. In the above mentioned Additional Criminal Hearing 1294/96 in the matter of **Meshulam**, the Honorable Justice A. Matza ruled that "a participant of this type – who has full control over the perpetration and overall activity and not only solicits and prepares but also gives orders to the worker-criminals and supervises their activities – is a joint perpetrator in every way" (on p. 27). He emphasized that presence at the scene of the crime is not an essential basis for person to be a joint perpetrator, and he said (on p. 30):

"In the new legal reality, making direct liability contingent upon presence means that the 'godfathers' and leaders of criminal groups who send 'little fish' who obey their authority to the scene in order to perpetrate the crimes while they direct the criminal activity from a distance would not be considered joint perpetrators but only people who solicit the crime. This possibility, which certainly does not reflect the desirable law, is also not required by the actual law."

The Honorable Justice A. Matza emphasized, with respect to the control the leader has over his people, the fact that the Defendant was able to order his people to desist from committing the crime (on p. 32, and see also the statements by the Honorable Justice Kedmi on p. 63).

[Stamp] P 7: 000446

The Honorable Presiding Justice A. Barak joined the Expert Opinion of the Honorable Justice A. Matza but emphasized the fact that the Defendant in that case was present at the scene of the crime until he was arrested and that he put the criminal plan into motion (on p. 50). The Honorable Presiding Justice Barak ruled (on p. 51):

> **"The status of Meshulam does not allow considering him merely as the solicitor of the crime. Meshulam was the head of the group. He was a leader. He planned the operation. This was his operation. He is not one with a criminal idea: he is not simply the 'spiritual father' of the crime. He is not an external person who is asking someone else commit a crime. He made an internal contribution to the commission of the crime... In Meshulam's hands, as the head of the group, was effective control of the criminal event and he had the criminal thought that was required in order to establish his liability as a joint perpetrator."**

The Honorable Justice M. Cheshin also ruled (on p. 55): "**Master criminal John Doe, who initiates, plans, determines**

[Stamp] P 7: 000446 [continued]

the tasks and sends his 'soldiers' to commit the crime" – is considered a joint perpetrator even if he is not present at the scene of the crime. He added that a person of this type is not considered merely a solicitor, whose responsibility is less than that of a joint perpetrator. The Honorable Justice M. Cheshin stated (on p. 59):

> "From this, we know that our classification of the master criminal as a solicitor – as opposed to a as joint perpetrator – is like reducing his responsibility and making it easier for him. 'The soldiers' that the master criminal dispatched to commit the crime will bear full responsibility for the various crimes that they committed while he – the mastermind and supreme leader – will bear lesser responsibility, even though 'an ordinary person could have been aware of the possibility' that one of the various crimes was being committed. This conclusion is puzzling, strange and hard to accept."

The Honorable Justice M. Cheshin further stated (on p. 59):

> "Would it be acceptable for the mastermind to be beneath the 'soldiers' who do his bidding? If indeed the mastermind is the mastermind – without whom the octopus partners to the crime could not have moved his tentacles – it is difficult for us to accept that his liability could be less than the liability of a joint perpetrator. The evil spirit of the leader pervades the entire criminal operation, his mind wound the operating spring before it was set in action and while the crime was being committed he was 'present' with the criminals as a joint perpetrator, together with them. He will continue to be 'present' with them unless or until he takes overt action to prevent the crime, nothing less."

The Honorable Justice Cheshin justified this conclusion with an analogy that he drew from Section 29 (c) of the Penal Code when he considered the leader sending his "soldiers" to commit a crime as if he were someone "committing the crime through another" when he said, **"'Soldiers' will obey the orders of their leader to the point that they completely erase their will in favor of his"** (on p. 60). With respect to the Defendant in that case, the Honorable Justice Cheshin emphasized that, **"his liability is derived from the fact that he planned and perpetrated the 'rebellion' prior to his arrest – the planning and perpetration of the leader – that responsibility is continued even after his arrest as long as he did not do anything apparent to stop the wagon from rolling down the hill"** (on p. 61).

The Honorable Justice Y. Kedmi ruled in this spirit when he wrote (on p. 66 – 67):

[Stamp] P 7: 000447

"In this situation, when the involvement of the leader of a group that has decided to commit a crime is expressed through planning, guidance and division of responsibilities, the question of whether the person before the Court is a 'joint perpetrator' or a 'solicitor' will be determined by the nature of his 'involvement': if this was 'involvement' that makes a contribution equivalent to 'participation' in the perpetration or whether it is only the external 'involvement' of solicitation.

The implementation of this distinction is not always easy but it is always possible. In any case, when considering a leader – or the head of a group – who presents his followers and minions with a concrete plan for the commission of a crime, when this includes a division of tasks and orders for the manner of its commission, there can be no doubt that this is not a 'solicitor' but rather a leader whose 'participation" is manifested in the stated 'act of planning.' The 'act of planning' – as distinguished from the 'act of solicitation' – is an act of 'participation' in the act because it is actually the first stage of bringing the criminal plan into being, in other words, of the perpetration. This is unlike 'solicitation', which is not part

[Stamp] P 7: 000447 [continued]

of the perpetration but rather an external motivation for the operation.

**As was explained above, assistance in this respect can be found in the examination of the existence of a 'relationship of control.' The existence of a 'relationship of control' will confirm that the group leader is a 'joint perpetrator' with everything that derives therefrom; in an instance where there is no 'relationship of control' as explained above, this will be an indication of the possibility that is a case of involvement that gives rise solely to the liability of a 'solicitor'."**

166. The Honorable Justice Y. Kedmi reiterated this approach in Criminal Appeal 4720/98, 5310/98, 5454/98, <u>Nahman Cohen *et al.* v. The State of Israel</u>, *Dinin Elyon*, Volume 57 366. In this case, Nahman was convicted as a joint perpetrator after it was proved that he was the one who had initiated, requested and led the murder plot and the one who confirmed the identification of the intended victim when he was presented with it. The Honorable Justice Y. Kedmi wrote (in Section 9):

> "As I see things, and as I have explained this on more than occasion in the past, 'the leader' of a group, who initiates and leads the perpetration of a crime by the group, is included among the 'perpetrators." The leader 'participates' in the commission of the crime in accordance with the meaning of this requirement in Section 29 of the Penal Code. His fate is entwined with the fate of the actual perpetrator; he bears liability as if he were 'right next to' the perpetrators while they were committing the crime. This is the legal standing of the 'leader' and this is the legal standing of 'the planners' and those who fulfill other 'essential roles' whose contribution to the act formally 'end' before it actually begins but remain an inseparable part thereof. The fate of these – the leader, the planner and their ilk – is connected to the fate of those who actually commit the act: they are one body, and all of the limbs bear responsibility for what the 'hands' do.
>
> As I see things, the leader of the 'group' whose members have committed a crime did not 'solicit' the members of the group but rather he is their leader who 'guides' them to the realization of their joint scheme. The solicitor is outside of the inner circle of 'commission'; the act of solicitation is pure solicitation, in other words: it is an independent and separate act from the overall effort of perpetration. Whoever 'participates' in the perpetration – and as I see matters, as required by that which has been set forth above, must give the concept 'participation' in this context a broad meaning – cannot be a 'solicitor.' The 'solicitor' and the perpetration of the crime are 'separated' by the perpetrator who is characterized by 'playing a role' in the perpetration, and instead of the 'solicitor' being accompanied by 'participation in a role' in accordance with that which has been set forth above – the person before us is not a 'solicitor' but rather a 'joint perpetrator'."

[Stamp] P 7: 000448

### 3.     Conclusions with Respect to the Defendant's Liability as a Joint Perpetrator, Solicitor and Accessory

167. Analysis of the evidence presented above leads to the following factual conclusions with respect to the share and role of the Defendant in the terrorist attacks that are the subject of the indictment:

    a. The Defendant was the commander of the Fatah and Tanzim in the West Bank. He was a field leader of the Fatah in the West Bank and responsible for the "military operations" of the Fatah in all parts of the West Bank. The expression used by the Defendant, such as "military operations", is nothing more than a euphemism for terrorist attacks against Israel that have been carried out by the field cells of the Fatah, which were organized into the Tanzim movement and the framework of the al-Aqsa Martyrs Brigades. The Defendant established the al-Aqsa Martyrs Brigades and was responsible for their activities as the leader and commander of the members of the field cells and their commanders. For these activities, the Defendant was directly subordinate to the chairman of the Palestinian Authority, Yasser Arafat. The "military" activity of the Defendant described above continued in parallel with his political activity as Secretary General of the Fatah in the West Bank and as a member of the Palestinian Legislative Council.

    b. The Defendant was of the opinion that Fatah was obligated to lead the "armed struggle against Israel," and therefore publicly supported terrorist attacks against soldiers and settlers. This was the declared position of the Defendant, who explained that from his perspective, women and children living in the settlements were also considered an enemy to be attacked. The Defendant was opposed, a matter of principle, to terrorist attacks within Israel, meaning over the Green Line, and also opposed suicide terrorist attacks. However, in practice he did not cease his support for his men and helped them by supplying money, weapons and explosives even after he learned time and again that they were carrying out terrorist attacks, including suicide terror attacks, inside Israel. Thus, the Defendant expressed his agreement to all types of terrorist attacks that have been carried out by people in the field who were affiliated with Fatah. This position of the Defendant was also expressed in his media appearances, in which he encouraged Fatah operatives and others to carry out terrorist attacks against Israel and also praised those who perpetrate the terrorist attacks – including those that were carried out within Israel.

[Stamp] P 7: 000449