**בתי המשפט**

| | |
|---|---|
| **בבית המשפט המחוזי בתל-אביב-יפו** | **תפ"ח 1158/02** |

**בפני הרכב:**

**כב' השופטת שרה סירוטה, ס.נ.- אב"ד**
**כב' השופט אברהם טל**
**כב' השופט ד"ר עמירם בנימיני**

**מדינת ישראל** — **המאשימה**
**המחלקה לעניינים פליליים, בטחוניים ועניינים מיוחדים בפרקליטות המדינה**
**ע"י ב"כ עוה"ד ד. חן, ר. חזן, א. בר-נתן**

**- נ ג ד -**

**מרואן בן חטיב ברגותי** — **הנאשם**
**יליד 1959, ת.ז. 959251745**
**מרמאללה (במעצר מיום 15.4.02)**
**ע"י הסניגוריה הציבורית**

# הכרעת – דין

# תוכן - עניינים

**חלק ראשון: מבוא** עמ' 2

**חלק שני: מסכת הראיות** עמ' 6

**א. הפת"ח התנזים וגדודי חללי אלאקצא כאירגוני טרור** עמ' 6

**ב. מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים כנגד ישראל** עמ' 8

**ג. עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם מעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו** עמ' 16

(1) נאצר עויס.......... עמ' 16
(2) נאצר נאג'י אבו חמיד.......... עמ' 20
(3) אחמד ברגותי.......... עמ' 22
(4) מוחמד מצלח (אבו סטחה).......... עמ' 27
(5) ג'מאל אחויל.......... עמ' 27
(6) נאצר א-שויש.......... עמ' 28
(7) עלי עיאדיה.......... עמ' 30
(8) איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו וער.......... עמ' 30
(9) נאסר (חלום) נאג'י אבו חמיד.......... עמ' 34
(10) זיאד חמודה.......... עמ' 34
(11) ריאד עמור.......... עמ' 35
(12) נאצר חאג'.......... עמ' 35
(13) תחריר ברגותי.......... עמ' 36
(14) אחמד מוצפר.......... עמ' 37
(15) שריף נאג'י.......... עמ' 37
(16) אמיד אבו רדאחה.......... עמ' 38
(17) אשרף ג'אבר.......... עמ' 39

**ד. דברי הנאשם בחקירתו וראיות נוספות בדבר תפקידו ומעורבותו בפיגועים נגד ישראל** עמ' 40

(1) אחריותו של הנאשם לפעילות חוליות הטרור ומידת שליטתו בהן.......... עמ' 40
(2) מעורבותו האישית של הנאשם בפיגועי הטרור שבצעו חוליות שתחת פיקודו.......... עמ' 44
(אא) הפיגוע בתחנת הדלק בגבעת זאב.......... עמ' 47
(בב) רצח הנזיר היווני במעלה אדומים.......... עמ' 48
(גג) הפיגוע במסעדת "סי פוד מרקט" בתל-אביב.......... עמ' 48
(דד) ניסיון לפיגוע ליד קניון מלחה בירושלים.......... עמ' 49
(3) אספקת כספים ואמל"ח לשם ביצוע פיגועי טרור.......... עמ' 49
(4) סיוע למבוקשים ולמשפחות העצורים והחללים.......... עמ' 51
(5) גיוס פעילים לארגוני הטרור והדרכתם.......... עמ' 52
(6) קריאותיו הפומביות של הנאשם לבצע פיגועים כנגד ישראל.......... עמ' 53

ה. **הקשר של הנאשם לפיגועים נשוא כתב האישום** עמ' 56
(1) רצח טליה ובנימין כהנא ז"ל ליד עפרה.................................. עמ' 56
(2) רצח עקיבא פשקוס ז"ל באזור התעשיה בעטרות...................... עמ' 57
(3) רצח הנזיר היווני ציפוקטקיס גרמנוס ז"ל במעלה אדומים......... עמ' 59
(4) רצח יניב ושרון בן שלום ז"ל ודורון יוסף סוורי ז"ל בכביש 443 ..עמ' 59
(5) רצח מאיר וייזבוייז ז"ל בכביש מס' 9 בירושלים...................... עמ' 61
(6) רצח אליהו כהן ז"ל בפיגוע ירי בכביש 443 ליד גבעת זאב........... עמ' 62
(7) רצח יואלה חן ז"ל ליד תחנת דלק גבעונים בכביש 443............. עמ' 63
(8) רצח 6 אנשים באולם השמחות "ארמון דוד" בחדרה............... עמ' 64
(9) רצח שתי נשים בפיגוע ירי ברחוב יפו פינת לונץ בירושלים......... עמ' 66
(10) פיגוע ירי בשכונת נוה-יעקב בירושלים בו נהרגה השוטרת גלית ארביב ז"ל......................................................................... עמ' 66
(11) רצח גד רג'ואן ז"ל במפעל בשקביץ בעטרות........................... עמ' 69
(12) הפיגוע במסעדת "סי פוד מרקט" בתל אביב.......................... עמ' 70
(13) פיגוע ירי במלון "ג'רמי" בנתניה........................................... עמ' 72
(14) רצח קונסטנטין דנילוב ז"ל בבאקה אלע'רביה....................... עמ' 73
(15) פיגוע ירי בין עטרת לביר-זית............................................... עמ' 74
(16) ניסיון פיגוע בפאב "ביאנקיני" בירושלים............................. עמ' 75
(17) פיגוע ירי בכביש 9 ליד הגבעה הצרפתית בירושלים................. עמ' 77
(18) ניסיון לפיגוע התאבדות בבית חנינא בירושלים...................... עמ' 78
(19) פיגוע ירי בכביש בית אל- פסגות........................................... עמ' 78
(20) ניסיון פיגוע בקניון מלחה בירושלים.................................... עמ' 79

**חלק שלישי: הערכת הראיות ומשקלן** עמ' 81

**חלק רביעי: ניתוח משפטי ומסקנות** עמ' 92
1. **פעילות וחברות בארגון טרוריסטי** עמ' 92

2. **אחריותם של מבצע בצוותא, משדל ומסייע והאבחנה ביניהם** עמ' 94
א. מבצע בצוותא לעומת מסייע................................................. עמ' 96
ב. עבירת הסיוע.................................................................... עמ' 104
ג. עבירת השידול והאבחנה בין מבצע בצוותא למשדל.................... עמ' 112
ד. אחריותו של מנהיג חבורה עבריינית כמבצע בצוותא או כמשדל... עמ' 117

3. **מסקנות בעניין אחריותו של הנאשם כמבצע בצוותא, משדל ומסייע** עמ' 123
א. פיגוע הרצח בתחנת הדלק בגבעת זאב.................................... עמ' 135
ב. רצח הנזיר היווני ציפוקטקיס גרמנוס ז"ל במעלה אדומים.......... עמ' 136
ג. פיגוע הרצח במסעדת "סי פוד מרקט" בתל אביב....................... עמ' 138
ד. ניסיון פיגוע ליד קניון מלחה בירושלים.................................. עמ' 139

חלק חמישי: סיכום עמ' 139

# הכרעת – דין

## חלק ראשון: מבוא

1. בתאריך 14.8.2002 הוגש נגד הנאשם כתב-אישום, המייחס לו מספר עבירות של **רצח בכוונה תחילה** לפי סעיף 300(א)(2) לחוק העונשין, התשל"ז-1977 **(להלן: "חוק העונשין")**; **סיוע לרצח** לפי סעיף 300(א)(2) ביחד עם סעיף 31 לחוק העונשין; **שידול לרצח** לפי סעיף 300(א)(2) יחד עם סעיף 30 לחוק העונשין; **ניסיון לרצח** לפי סעיף 305(1) לחוק העונשין; **קשירת קשר לביצוע פשע** לפי סעיף 499 לחוק העונשין; **פעילות וחברות בארגון טרור** לפי סעיפים 2 ו-3 לפקודת מניעת טרור, התש"ח-1948.

2. כתב-האישום מייחס לנאשם שותפות, אירגון וביצוע של פעולות-טרור כגד מטרות ישראליות, אשר החלו בספטמבר 2000 במסגרת אירועים המכונים "אינתיפאדת אלאקצא" (להלן: **"האינתיפאדה"**). על-פי הנטען בכתב-האישום, עמד הנאשם בראש אירגוני-טרור באיזור יהודה ושומרון (איו"ש): אירגון ה"פת"ח" (להלן: **"הפת"ח"**), אירגון ה"תנזים" השייך לפת"ח (להלן: **"התנזים"**) ואירגון "גדודי חללי אלאקצא", הכולל התארגנויות של פעילי טרור של התנזים שביצעו פעולות טרור כנגד מטרות ישראליות (להלן: **"גדודי חללי אלאקצא"**). הנאשם היה זה שתיאם וקישר בין גורמי השטח הבכירים בשלושת האירגונים הנ"ל (כולם יחד יכונו להלן: **"אירגוני הטרור"**), אשר היו אחראים לביצוען של פעולות-טרור נגד מטרות ישראליות.

כתב האישום מפרט את שמותיהם של שמונה פעילי טרור בכירים, שפעלו תחת הנהגתו של הנאשם בביצוע פעולות הטרור, והם נאסר עויס (להלן: **"עויס"**), אחמד ברגותי, נאצר אבו חמיד (להלן: **"אבו חמיד"**), ראא'ד כרמי (להלן: **"כרמי"**), מהנד דיריה (אבו חלאווה) (להלן: **"מהנד"**), מחמד מצלח (אבו סטחה) (להלן: **"אבו סטחה"**), מנצור שרים (להלן: **"שרים"**) ומחמוד טיטי (להלן: **"טיטי"**).
הנאשם ומפקדי השטח גייסו פעילים לאירגוני הטרור, הפעילו אותם ודאגו לספק להם אמצעי לחימה (אמל"ח) וכסף. הנאשם עסק גם בהכשרת פעילי הטרור למטרתם ובגיוס כספים לאירגוני הטרור. כמו כן שידל הנאשם ועודד את פעילי הטרור לבצע פיגועים כנגד מדינת ישראל באמצעי התקשורת, בכינוסים שונים ובאמצעות הפצת כרוזי הסתה.

כתב-האישום מייחס לנאשם ב**סעיפים 8-15** מעורבות ואחריות לבצוע 37 פיגועים ופעולות-טרור, אשר בוצעו ברובם בתחומי מדינת-ישראל על-ידי מפקדי השטח והפעילים בחודשים דצמבר 2000 ועד אפריל 2002, ושבהם קופחו חייהם של רבים מאזרחי מדינת-ישראל וחייליה, ונפצעו רבים אחרים. חלק ממעשי הטרור מפורטים בכתב האישום, ורובם מפורטים רק בנספח לכתב האישום.

3. **ראיות התביעה כוללות** את עדויותיהם של אנשי מערכת הביטחון, חוקרי השב"כ ואנשי המשטרה שעסקו בחקירת הנאשם; עדויותיהם של אזרחים וגורמים אחרים שהיו עדים לפיגועים נשוא כתב האישום; מסמכים שנתפסו על ידי צה"ל במשרדי הפת"ח ובמשרדו של הנאשם; חוות דעת של מומחים ממערכת הביטחון בעניין פעילות ארגוני הטרור ומעמדו ותפקידו של הנאשם בהם; עדויותיהם של פעילים בארגוני הטרור והדברים שמסרו בחקירתם בשב"כ ובמשטרה; אמרות הנאשם שתועדו על ידי אנשי השב"כ בדו"חות כתובים, ואשר חלקם הוקלטו ותומללו; דברים שאמר הנאשם למדובבים שהוכנסו לתאו במהלך חקירתו ולמקורבו אחמד ברגותי שנעצר עמו; דברי הנאשם בכלי התקשורת לפני מעצרו, והודעות הנאשם במשטרה.

תמלילי חקירתו של הנאשם בשב"כ הוגשו על ידי חוקרי השב"כ שניהלו את החקירה שהוקלטה וזיהו את קולו של הנאשם בה ("מופז" בעמ' 58, "נדב" בעמ' 79, "סמית" בעמ' 85-86 ו"דני" בעמ' 90). שיחתו של הנאשם עם אחמד ברגותי הוגשה על ידי החוקר "רוברט" (עמ' 65). הקלטות מחקירת הנאשם ומחקירת המדובבים פלוני 1 ופלוני 3 תומללו על ידי נתן בסו (עמ' 174).

חוקרי השב"כ שהעידו אישרו את נכונות הכתוב בזכ"דים שרשמו במהלך חקירתו של הנאשם (זכ"דים ת/6 - ת/96). מדובר בדו"חות שנרשמו בעברית לגבי חקירה שהתנהלה בעברית ובערבית

P 7: 000374

(הנאשם דובר עברית טובה), בהם נרשמו עיקרי הדברים שנאמרו על ידי הנאשם (ראה החוקר "סטיב" בעמ' 53, החוקר "אמילי" בעמ' 55 והחוקר "רון" בעמ' 60).

**.4** אשר להודעות הנאשם במשטרה, הרי שהנאשם הודיע בכל חקירותיו במשטרה - בניגוד לדרך בה נהג בעת חקירותיו בשב"כ - כי הוא כופר בזכותה של המשטרה לחקור אותו, ולכן סירב לענות על שאלות החוקרים (ראה הודעות ת/99-ת/109). לפיכך, הודעותיו של הנאשם כוללות שאלות רבות שהוצגו לו על ידי החוקרים, וסירובו להשיב עליהן. במקרים בודדים ביותר התייחס הנאשם בקצרה לדברים שאמר לו החוקר, ובהזדמנויות אלו הכחיש לחלוטין את כל הטענות שהוצגו לו - גם אלה בהם הודה בחקירתו בשב"כ. הנאשם הכחיש כי היה מנהיגם של גדודי חללי אלאקצא והתנזים (הודעה ת/101 עמ' 6, הודעה ת/105 עמ' 2, הודעה ת/106 עמ' 3); הכחיש כי הכיר את פעילי הטרור שהעידו כי היו בקשר עמו (כפי שיפורט להלן), ואפילו הכחיש כי הכיר את ראיד כרמי (ת/104 עמ' 8). כל אלו הוכחו, כפי שיבואר להלן, לא רק מפי פעילי השטח, אלא גם מפי הנאשם עצמו, מהמסמכים שנתפסו במשרדו, אשר הנאשם הכחיש בחקירתו כל קשר אליהם, וטען כי כתב ידו לא מופיע עליהם (ראה הודעות ת/108-ת/109).

הודעותיו של הנאשם הוגשו על ידי החוקרים דוד זריהן ורפי נוריאל (עמ' 113, 38), אשר הסבירו כי הנאשם סירב לחתום על האזהרה ועל ההודעה, וכי הוא נחקר בעברית. זריהן אף העיד כי הנאשם סירב למסור טביעת אצבע ולהצטלם. הנאשם אמר באופן כללי בהודעתו ת/106 כי כל ההאשמות כנגדו אינן נכונות, וכי הוא חף מכל אשמה.

**.5** בפתח משפטו העלה הנאשם טענות מקדמיות הנוגעות לסמכות בית משפט זה לשפוט אותו, ואלה נדחו בהחלטת בית המשפט מיום 19.01.03 (עמ' 34-1 לפרוטוקול). הנאשם בחר שלא להסתייע בשירותי סניגור, ואף דחה נמרצות ובעקביות כל ניסיון של בית המשפט לשכנעו להיעזר בסניגוריה הציבורית או בסניגור מטעמו.

בית המשפט הטיל אמנם על הסניגוריה הציבורית לייצג את הנאשם, חרף בקשותיה החוזרות ונשנות להשתחרר מייצוגו, ולמעשה היא מייצגת את הנאשם גם כיום ונכחה בכל הדיונים. ואולם הסניגוריה הציבורית בחרה להיעתר לבקשת הנאשם שלא להעלות טענות כלשהן מטעמו במהלך המשפט, לרבות טענות משפטיות, ואף לא לחקור את העדים.

כך התנהל ההליך על פי בחירתו של הנאשם, אשר ממשיך לכפור בסמכות בית המשפט לשפוט אותו. בנסיבות אלו בחר הנאשם גם שלא להגיב על כתב האישום. כמו כן נמנע הנאשם מלהעיד בעצמו או להביא עדים מטעמו. עם זאת, הנאשם הגיב מידי פעם על דברי העדים או על טענות שטענה ב"כ המאשימה במהלך הדיון, ודבריו נרשמו בפרוטוקול כלשונם. בנוסף הגיב הנאשם על סיכומי התביעה בעל פה (שהוגשו גם בכתב), בנאום סניגוריה שנשא במסגרת הסיכומים בעל פה, ואשר לא התייחס לגופן של ההאשמות שהועלו כנגדו. למותר לציין כי הנאשם קיבל בעצמו, ובאמצעות הסניגוריה הציבורית, את כל חומר הראיות, הפרוטוקולים והסיכומים.

**.6** העבירות נשוא כתב האישום הן ברובן "עבירות פנים" הנוגעות לפיגועים שבוצעו בישראל, וחלקן "עבירות חוץ", שבוצעו בתחומי האיזור (קרי: יהודה ושומרון). ואולם, כפי שהבהרנו בהחלטה שניתנה בנוגע לטענותיו המקדמיות של הנאשם, מוסמך בית משפט בישראל לדון בעבירות חוץ כנגד בטחון המדינה, או נגד אזרח או תושב ישראלי, יהא מקום ביצוע העבירה אשר יהא (סעיף 13(א)-(ב) לחוק העונשין, תשל"ז-1977). זו היא אותה "תחולה פרוטקטיבית", אשר נועדה להגן על אזרחים ותושבים ישראלים כנגד פעולות טרור הנעשות בחסותן ובגיבוין של מדינות אחרות (ש"ז פלר, מ. קרמניצר, '**תגובה לחיבור בגנות התחולה הנציונלית של דיני העונשין**', פלילים ה1 (1996) 65, בעמ' 83, והשווה דעתו של י. שחר, שם בעמ' 5). עוד פסקנו בהחלטה שניתנה בטענותיו המקדמיות של הנאשם, כי לא נראה שהתנאים הקבועים בסעיף 14(ב) לחוק העונשין רלבנטיים למקרה זה, אם הם חלים כלל על הסמכות הפרוטקטיבית שבסעיף 13 לחוק (להבדיל מהסמכות

P 7: 000375

הפרסונלית שבסעיף 14), שכן הרשות הפלסטינאית איננה מדינה. העבירות המיוחסות לנאשם בכתב האישום הן עבירות כנגד בטחון המדינה, כנגד אזרחיה ותושביה, ועל כן הן נופלות במסגרת סעיף 13 לחוק העונשין, ובית משפט זה מוסמך לדון בהן.

## חלק שני: מסכת הראיות

### א. הפת"ח, התנזים וגדודי חללי אלאקצא כאירגוני טרור

**7.** ראש חטיבת המחקר באגף המודיעין של צה"ל, תא"ל י. קופרווסר, הגיש במהלך עדותו (עמ' 38) חוות דעת בה התייחס לפעילותם של הפת"ח, התנזים וגדודי חללי אלאקצא (ת/1). אל חוות הדעת צורפו מסמכי שלל שנתפסו על ידי צה"ל במבצע "חומת מגן" הנוגעים לעניין זה. **הפת"ח** (ראשי תיבות במהופך בערבית של "התנועה לשחרור פלסטין") דגל מאז יסודו על ידי יאסר ערפאת בשנת 1959 במאבק מזוין כנגד ישראל, אשר התבטא בביצוע פיגועי טרור נגד יעדים ישראליים בארץ ובחו"ל. לאחר חתימת הסכמי אוסלו נדחק עיקרון "המאבק המזוין" למקום משני, אך נותר כאופציה להשגת מטרות הארגון במקרה שהמו"מ עם ישראל לא יצלח. עם פרוץ האינתיפאדה השניה בחודש ספטמבר 2000, הוביל הפת"ח את פיגועי הטרור בשטחים, וזאת באמצעות שתי ועדות עליונות המנהלות את הפעילות - האחת באזור יהודה ושומרון, והשניה באזור רצועת עזה. בראש הועדה העליונה של אזור יהודה ושומרון עמד הנאשם עד ליום מעצרו (סעיפים 1-3 לחוו"ד).

הדרג המבצע של הפת"ח כלל את פעילי השטח של התנועה - **התנזים** (ארגון - בערבית). פעילי התנזים מהווים את חוד החנית בפעילות החבלנית של הפת"ח כנגד ישראל. גדודי חללי אלאקצא הוא שם כיסוי להתארגנויות טרור של הפת"ח, אשר נוטלות אחריות פומבית למעשי הטרור. אנשי "הגדודים" הם למעשה פעילים של הפת"ח, כאשר מרבית ההתארגנויות רואות בנאשם מקור סמכות מרכזי לפעילותן (סעיפים 4-5 לחוו"ד).

התנזים וגדודי חללי אלאקצא מהווים, על פי חוות דעתו של תא"ל קופרווסר, את הזרוע הצבאית הבלתי ממוסדת של הפת"ח, שבראשה עמד הנאשם. מסמך שלל המצורף כנספח א' לחוו"ד של תא"ל קופרווסר הוא מכתב החתום בידי הפת"ח וגדודי חללי אלאקצא גם יחד.
מסמכי שלל אחרים שצורפו לחוות הדעת מראים כי גדודי חללי אלאקצא פונים בבקשה לסיוע כספי מיאסר ערפאת (מסמך 2), וכי הפת"ח וגדודי חללי אלאקצא חתומים על כרוזים המשבחים פעילות טרור שבוצעה בתחומי ישראל (מסמכים 3, 5). במסמך 6 שצורף לחוו"ד, ואשר נשלח ביום 8.5.01 מאת גדודי חללי אלאקצא אל הנאשם, מופיע פירוט פעילותם של גדודי חללי אלאקצא במחוז ג'נין (כולל פיגוע באום אלפאחם), ובקשה לסיוע באמצעי לחימה וכסף לשם המשך הביצוע של פעילות זו. מסמכים אחרים של גדודי חללי אלאקצא שהופנו ליאסר ערפאת, כוללים בקשות לסיוע למבוקשים הנרדפים על ידי ישראל ולמשפחות החללים (נספח ב' ומסמכים 2-4 לנספח זה). חלק מן המסמכים נכתבו על ידי הנאשם. יצויין כי כינויו של הנאשם היה, על שם בנו הבכור, "**אבו אלקסאם**" (הודעת הנאשם ת/107 עמ' 1, והדרך בה פנה אחויל אל הנאשם בעמ' 164).

**8.** על פי חוות דעתו של תא"ל קופרווסר ביצעו אנשי הפת"ח למעלה מ- 1,200 פיגועים כנגד ישראל (נכון ליום 18.8.02), בהם נהרגו 176 ישראלים ונפצעו רבים אחרים. פיגועים אלו כוללים התאבדות, ירי ממרגמות ונשק קל. במהלך האינתיפאדה עברו התארגנויות הטרור של הפת"ח יותר ויותר לביצוע פיגועי התאבדות בתחומי ישראל (סעיף 5 לחוו"ד). בחודשים שקדמו למבצע "חומת מגן" ביצעו גדודי חללי אלאקצא פיגועי התאבדות בחדרה, ירושלים, תל אביב, מחולה, מחנה 80, מחסום מכבים, נתניה, אשדוד, כפר סבא ואפרת, ובעקבות כך הוכנסו לרשימה האמריקאית של ארגוני הטרור ביום 27.3.02 (סעיף 10 לחוו"ד ונספח ג' המפרט את פיגועי ההתאבדות שבוצעו על ידי תנועת הפת"ח).

**9.** לגבי חוות הדעת של תא"ל קופרווסר יש לומר, כי מבחינת דיני הראיות איננו רשאים להסתמך על הערכות ומסקנות מודיעיניות אשר מבוססות על מקורות מידע שונים שלא הובאו בפני בית המשפט, בהיותם עדות שמיעה. נוכל לסמוך על חוו"ד זו רק במידה שהיא תואמת ראיות קבילות אחרות שהובאו בפנינו. אולם, פעילות הטרור בחסות הפת"ח של שלושת הארגונים הנ"ל עולה בבירור מראיות ישירות רבות שהובאו במשפט, כולל הודאות שמסרו בחקירותיהם הנאשם ופעילי הטרור, כפי שיפורט בהמשך הכרעת הדין.

נאצר אבו חמיד, שהיה אחד ממפקדי השטח הבכירים ביהודה ושומרון, סיפר בהודעתו במשטרה (ת/149(א), בעמ' 2-3, 7-8, 13-17), על הקמת גדודי חללי אלאקצא ביום 1.1.01, על מנת שיהוו מיליציה של הפת"ח, ויבצעו פיגועים כנגד מתנחלים וחיילי צה"ל. הוא מפרט בהודעתו הנ"ל (וכן בהודעתו ת/149 (ג)) את הפיגועים שבוצעו על ידו וע"י אנשיו כנגד מטרות אזרחיות וצבאיות של ישראל, תחת הנהגתו ובסיועו של הנאשם (כפי שיפורט בהמשך).

**10.** גם מדברים שאמר הנאשם בחקירתו, וממסמכים שנכתבו בכתב ידו, ניתן ללמוד על פעילותם של ארגוני הטרור הנ"ל. הנאשם הסביר את דרך פעולתן של החוליות המכונות "גדודי חללי אלאקצא", שלדבריו ביצעו "פעילות צבאית" (ת/19 סעיף 14, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58). כך גם הסביר הנאשם בחקירתו את הדרך שבה נוצרו גדודי חללי אלאקצא באזור יהודה ושומרון, ופעלו בצורה מפוזרת, וטען כי הפת"ח לא פיקח על פעילותם; אך הוא הודה כי חוליות אלו פנו אליו לקבלת כסף, משום שראו בו "**אחראי של פת"ח בגדה המערבית**" (תמליל ת/98 (ה) עמ' 60-61). כפי שיבואר בהמשך, הפנו פעילי הטרור מגדודי חללי אלאקצא את בקשותיהם לסיוע כספי לשם רכישת נשק וביצוע פיגועים אל הנאשם, והלה היה פונה בשמם ועבורם אל יו"ר הרשות הפלסטינאית ומנהיג הפת"ח, יאסר ערפאת. מכאן ברור הקשר של גדודי חללי אלאקצא לארגון הפת"ח, והקשר של הנאשם לגדודים אלו.

## ב. <u>מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים כנגד ישראל</u>

**11.** תא"ל קופרווסר הגיש בעדותו חוו"ד נוספת, המתייחסת למעורבותו של הנאשם בטרור (ת/2). לחוו"ד זו צורפה שורה של נספחים הכוללים ראיונות עם הנאשם באמצעי התקשורת השונים ומסמכים שכתב הנאשם או שנמצאו במשרדו. גם חוות דעת זו כפופה להערה שפורטה בסעיף 9 לעיל, בנוגע לקבילותן של הערכות מודיעיניות הנסמכות על מקורות מידע שלא פורטו ולא הובאו בפנינו, ולכן גם בנושא זה נזקק לראיות עצמאיות וקבילות שהובאו במשפט.

**12.** בחוות הדעת של תא"ל קופרווסר ת/2 נאמר כי הנאשם היה עד למעצרו ראש הועדה העליונה של הפת"ח ביהודה ושומרון, ולפיכך שימש כמנהיג הפת"ח בגדה. זאת ניתן ללמוד מן המסמכים השונים שכתב הנאשם ושנכתבו אליו, ואשר צורפו לחוות הדעת ת/1 ות/2. בתפקידו הנ"ל היווה הנאשם מקור סמכות מרכזי לבכירי הפת"ח, וצינור מקשר בין ראש הרשות הפלסטינאית, יאסר ערפאת, לבין דרגי השטח בתנועה (סעיפים 1-2).

עוד נאמר בחוות הדעת הנ"ל (סעיף 4), כי עם פרוץ האינתיפאדה בחודש ספטמבר 2000, תפס הנאשם חלק מרכזי ביותר בהובלת הטרור נגד ישראל על ידי גורמי פת"ח ובכלל. מעורבותו באה לידי ביטוי בדרכים שונות: **ראשית**, הנאשם היווה מקור השראה והתווה את מדיניות הפיגועים, באמצעות פגישות אישיות עם פעילי הטרור של תנועת הפת"ח והתבטאויות פומביות. **שנית**, הנאשם היה מקור סמכות ומימון לפעילי הטרור של תנועת הפת"ח: הוא נתפס בעיני גדודי חללי אלאקצא כמנהיג המרכזי בפעילותם, שימש כצינור קשר בינם לבין יו"ר הרשות הפלסטינאית והעביר לרשותם סכומי כסף המסתכמים בעשרות אלפי שקלים לצורך פעילות הטרור. **שלישית**, הנאשם העביר הנחיות ישירות לפעילי הטרור - הן במישור האסטרטגי, והן במישור הטקטי הנוגע לפיגועים נקודתיים.

P 7: 000377

**13.** הנאשם לא הסתיר בחקירתו בשב"כ את עמדתו הברורה, לפיה תנועת הפת"ח חייבת להוביל את "המאבק המזוין כנגד ישראלי", וכי זו הדרך היחידה להשגת מטרות העם הפלסטיני לאחר כשלון תהליך השלום, ולאחר שהנאשם עצמו היה פעיל שלום במשך שנים רבות (זכ"ד ת/59 ס' 2-5, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). הוא הבהיר כי כאשר הוא משתמש בביטוי "מאבק מזוין", הוא מתכוון לפיגועים (תמליל חקירה ת/98יא עמ' 2-3). הנאשם הסביר כי מנהיגי הפת"ח חששו מהיחלשות כוחם ברחוב הפלסטיני למול התנועות האיסלאמיות, דבר שדרבן אותם לנקוט קו של פיגועים כנגד ישראל (זכ"ד ת/21 סעיף 5, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 63 (בטעות נרשם בפרוטוקול
ת/41); זכ"ד ת/23 ס' 5, שהוגש ואושר על ידי החוקר "דני" בעמ' 90; זכ"ד ת/27 ס' 10-12 וזכ"ד ת/55 ס' 3 שהוגשו ואושרו על ידי החוקר "סמית" בעמ' 85; זכ"ד ת/30 ס' 8-12 וזכ"ד ת/58 ס' 5 שהוגשו ואושרו על ידי החוקר "אמיל" בעמ' 54; זכ"ד ת/40 ס' 15 שהוגש ואושר על ידי החוקר "מופז" בעמ' 58; זכ"ד ת/70 ס' 3 שהוגש ואושר על ידי החוקר "סטיב" בעמ' 53).
הנאשם אמר בחקירתו כי "**עמדתו המוצהרת הינה מאבק מזוין מול הכיבוש הישראלי, ומי שיש לו נשק שיבצע פיגועים זה הקו הכללי**" (ת/23 ס' 5, וכן ראה זכ"ד ת/6 ס' 11-12, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62). הוא הסביר כי לפי השקפתו פיגועים שיכאיבו לישראל יקדמו את השלום, ויגרמו לישראלים להבין שיש להם מה להפסיד (ת/40 סעיף 15, ות/70 סעיף 4). הנאשם הבהיר כי מבחינתו אזרחים ישראליים החיים בהתנחלויות הם אויב שיש לפגוע בו (זכ"ד ת/63 ס' 16, שהוגש ואושר על ידי החוקר "נאור" בעמ' 82). הוא אף אמר כי פיגועים כנגד מתנחלי יהודה ושומרון הם לגיטימיים, גם כאשר מדובר בנשים וילדים (זכ"ד ת/6 ס' 13, שהוגש ואושר ע"י החוקר "רוברט" בעמוד 62, זכ"ד ת/77 ס' 2 שהוגש ואושר על ידי החוקרים "צדוק" ו"אופיר" בעמ' 83, 87).

הנאשם חזר והדגיש במהלך חקירתו כי בויכוח שהתנהל בתוך הרשות והפת"ח בעניין סוג הפיגועים כנגד ישראל - דגלו ערפאת והוא בקו הקובע כי יש להתמקד בפיגועים כנגד צה"ל והמתנחלים, בעוד שמנהיגים כמו אבו עלא ואבו מאזן התנגדו לכל סוג של אלימות; רק מעט מאנשי הפת"ח תמכו בפיגועים בתוך ישראל (ת/27 סעיפים 12-13; ת/30 סעיף 8;
ת/70 סעיף 3). חרף התנגדותם של ערפאת והנאשם לפיגועים בתוך ישראל, הם איבדו שליטה על החוליות ופעילי השטח במהלך האינתיפאדה (זכ"ד ת/55 ס' 3ו', שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

**14.** עמדתו של הנאשם כמפורט לעיל באה לידי ביטוי גם בדבריו בחקירה שתומללו. לגבי עמדתו של הנאשם כי אין לבצע פיגועי התאבדות בתוך ישראל, הוא הסביר כי פגיעה בהתנחלויות כמוה כפגיעה בצבא, ולכן בענין זה לא היה ויכוח בתוך הפת"ח; אך הוא הודה כי בתקופה האחרונה שלפני מעצרו החל הפת"ח לבצע גם פיגועי התאבדות בתוך ישראל, ואף אישר כי הפת"ח נגרר לתוך פעילות זו כדי שלא להשאיר את השליטה בשטח לארגונים האיסלאמים (ת/98ד עמ' 27-29). הנאשם הסביר כי הוא באופן אישי הסתייג מכל פעילות בתוך ישראל, אך תמך "במאבק המזוין כנגד הכיבוש הישראלי", ואף עשה זאת בצורה פומבית בטלויזיה (ת/98ז עמ' 7, 10).

הנאשם אישר כי בחמשת החודשים האחרונים שקדמו למעצרו נטל הפת"ח תפקיד מרכזי בהסלמת רמת האלימות, והנהיג את המלחמה; הנאשם לא כיחד כי הוא נטל חלק בכך (ת/98יב עמ' 35, ת/98ה עמ' 3-4).

הנאשם הדגיש בחקירתו כי הוא תמך בהסכם השלום, ופעל למענו במשך 10 שנים, אך ההסלמה נבעה לדבריו מהעדר תקווה להשגת פתרון פוליטי עם ראש הממשלה שרון (ת/98יב עמ' 44-45). הנאשם אף הביע דעתו כי הפלשתינאים טעו כאשר דחו את הצעות ישראל, ועוד יותר מכך את הצעת הנשיא קלינטון, בועידת "קמפ דיויד", שכן לו קיבלו את ההצעות הללו - היתה להם היום מדינה עצמאית (זכ"ד ת/95, שהוגש ואושר על ידי החוקר "אופיר" בעמ' 87).

**15.** על גישתו של הנאשם בנושא הפיגועים, ועל תפקידו של הפת"ח בביצוע פיגועים כנגד ישראל, ניתן ללמוד גם משיחות שניהל הנאשם עם המדובבים שהוכנסו לתאו. המדובב שכונה "פלוני 1", הציג עצמו בפני הנאשם כפלשתינאי משכם, הוא מסר לחוקרי השב"כ את הדברים שאמר לו הנאשם לאחר קיום השיחות, ואלו נרשמו בזכדי"ם של חוקרי השב"כ שהעידו במשפט ("רוברט" בעמ' 154, "מיקי" בעמ' 155, "אופיר" בעמ' 156 ו"מופז" בעמ' 157), וכן העיד פלוני 1 עצמו (עמ' 107-101). פלוני 1 העיד כי הוא קרא את כל הדו"חות שרשמו אנשי השב"כ על שיחותיו עם הנאשם, ואישר את תוכנם (עמוד 105). בדרך דומה פעל והופעל המדובב פלוני 3, שזיהה את קולו של הנאשם בקלטת ת/124ב (ראה עדותו בעמ' 110-107, ומוצגים ת/122-ת/125).

על פי עדותו של פלוני 1, סיפר לו הנאשם שהוא היה זה שהקים את גדודי חללי אלאקצא והיה אחראי עליהם (עמ' 106). בזכ"ד שנרשם מפיו (ת/117 שהוגש ואושר על ידי החוקר "רוברט" בעמ' 154), אמר פלוני 1 כי הנאשם אמר לו שהאינתיפאדה למעשה היתה מתוכננת לאור המצב המדיני, הרחבת ההתנחלויות והמשך הכיבוש והלחץ על הפלסטינאים בשטחים, וכי ביקורו של אריאל שרון בהר הבית היה רק "הקש ששבר את גב הגמל", והצית את האינתיפאדה שהיתה צפויה ממילא (ראה גם זכ"ד ת/25 ס' 18, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58).
לאחר האירוע בהר הבית, ביקשו מנגנוני הביטחון של הפת"ח מערפאת להורות על הפסקת האינתיפאדה, וערפאת לא הגיב. הנאשם עצמו סיפר כי עזב בזעם את הישיבה לאור בקשת המנגנונים, וכי הוא שנוא עליהם משום ש"משך את העם להסלמת המצב". הנאשם אמר לפלוני 1 כי מטרת האינתיפאדה הייתה פגיעה בחיילים ובמתנחלים כדי לגרום לעזיבתם, וכדי להוכיח לעולם שהפלסטינאים נלחמים בכיבוש. ואולם לאחר שישראל החלה במדיניות החיסולים, ובעיקר לאחר שפגעה בראיד כרמי, עבר הפת"ח לפעול בתוך ישראל במטרה לפגוע באזרחים, על מנת לפגוע בכלכלת ישראל ובתיירות, ולהפעיל לחץ על הרחוב בישראל שילחץ על הממשלה לסגת מהשטחים (שם, ס' 13-12, 17, 21-20). כמו כן אמר הנאשם לפלוני 1 כי מבחינתו הפיגועים מהווים הגנה עצמית של הפלסטינים, אשר מוכנים להושיט יד לשלום, וכי פיגועי ההתאבדות נובעים מן הכיבוש ומן המצב של הפלסטינאים בשטחים (זכ"ד ת/110 ס' 22, 27).

עמדתו של הנאשם התומכת בהמשך האינתיפאדה באה לידי ביטוי גם במכתב ששלח ליאסר ערפאת ביום 31.12.00 (ת/5 (42א)).

**16.** באשר למדיניות הפיגועים של הפת"ח, הסביר הנאשם בחקירתו כי כאשר ערפאת היה מעונין בהפסקת אש, הוא היה דואג להעביר הנחיה זו לגורמים רבים, ובהם הנאשם; אך כאשר היה מעונין בהמשך הפעולות הוא דאג שהפעילים, כולל הנאשם, יבינו זאת מהתגובות, ובעיקר אי-התגובות שלו. הנאשם אמר: **"אם הוא** (ערפאת) **למשל, לא רוצה בהפסקת אש הוא מסתדר אחרת. לא אומר שום דבר"** (זכ"ד ת/24 ס' 3ב, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85, ותמליל חקירתו של הנאשם ת/98ט עמ' 33-32). הנאשם אמר שערפאת מעולם לא הורה לו בצורה מפורשת לבצע פיגועים. אך הוא הוסיף כי מהעובדה שערפאת התנגד לביצוע פיגועים בתוך ישראל בלבד, ניתן היה להבין שהוא תומך בפיגועים בשטחים, ולכן גם לא הורה להפסיקם; ערפאת אמר בתקשורת כמה פעמים כי **"מיליון שאהידים בדרכם לירושלים"**, והנאשם שאל באופן רטורי האם אין זו הצהרה התומכת בביצוע פיגועים (זכ"ד ת/60 ס' 7-4 שהוגש ואושר על ידי החוקר "אמיל" בעמ' 54; זכ"ד ת/61 ס' 8-1, שהוגש ואושר על ידי החוקר "מיקי" בעמ' 81; זכ"ד ת/62 ס' 5-3 שהוגש ואושר על ידי החוקר "דני" בעמ' 90).
הנאשם הסביר כי לא היה צורך בהוראות ישירות של ערפאת לביצוע פיגועים, שכן הדברים היו מובנים מבין השורות (זכ"ד ת/63 ס' 13-11 שהוגש ואושר על ידי החוקר "נאור" בעמ' 82). הנאשם הוסיף כי גם האינתיפאדה לא פרצה בהוראתו של ערפאת, אך היא לא היתה ממשיכה להתקיים אלמלא תמיכתו בה, אף כי הוא לא היה צריך לתת הנחיה מפורשת לביצוע פיגועים (זכ"ד ת/64 שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62, ות/66 שהוגש ואושר על ידי החוקר "אמיל" בעמ'

54). עוד ציין הנאשם כי הבין את תמיכתו של ערפאת בפיגועים גם לאור העובדה שערפאת היה מאשר לו את הבקשות הכספיות שהגיש עבור פעילי השטח של הפת"ח שביצעו פיגועים (זכ"ד ת/70 ס' 17ח', שהוגש ואושר על ידי החוקר "סטיב" בעמ' 53). הנאשם תיאר את הקשר שלו עם ערפאת כ"**אישי וישיר**" (תמליל שיחה ת/98ח עמ' 55).

גם לנאשם, מסתבר, היתה דרך משלו להודיע לאנשי החוליות על הפסקת הפיגועים ועל חידושם. הוא הסביר בחקירתו כי כאשר רצה בהפסקת אש היה מתקשר לחוליות הגדולות, אם כי קרה שהיו אנשים שלא שמעו להוראתו; כאשר הנאשם היה מעונין בחידוש האש הוא היה מודיע על כך בטלויזיה, כאשר קרא "למאבק מזויין". כאשר נשאל כיצד היה מודיע על רצונו בחידוש האש, השיב הנאשם:

"**לא רוצה אש, אני מדבר בטלויזיה אם אני רוצה שלום, יעני אני לא מתקשר לפלוני ואומר לו וואללה תבצע בשבילנו פיגוע. וואללה תעשה לנו לא יודע מה, אין אצלי כזה דבר, אני דובר בשם התנועה בפועל קורא לאינתיפאדה אני קורא למאבק מזויין**" (ת/98ח עמ' 3).

חרף דברים אלו של הנאשם, הרי שמעדותו של פעיל הטרור עויס עולה שהנאשם הורה לו לחדול מביצוע פיגועים בעת ביקורו של השליח האמריקאי אנתוני זיני באזור (ראה להלן). מן הדברים שאמר המדובב פלוני 1 בחקירתו, בעקבות שיחותיו עם הנאשם, עולה כי הנאשם הביע כעס רב על כך שעויס מסר פרטים אלו בחקירתו (זכ"ד ת/113א ס' 9-8, זכ"ד ת/114א ס' 8 שהוגשו ואושרו על ידי החוקר "רוברט" בעמ' 154). כמו כן הובאו ראיות על מקרים אחרים בהם הורה הנאשם באופן ישיר לפעילי הטרור המקורבים אליו לבצע פיגועים כנגד ישראלים (ראה להלן).

**17.** בתחילת חקירתו בשב"כ הכחיש הנאשם כי היה מנהיג התנזים וגדודי חללי אלאקצא, אך אישר את אחריותו לפעילות הצבאית של הפת"ח (זכ"ד ת/17 ס' 6, שהוגש ואושר על ידי החוקר "ארבל" בעמ' 80, זכ"ד ת/43 ס' 6 שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62, ותמליל חקירה ת/98א' עמ' 44-43). הנאשם טען כי גדודי חללי אלאקצא אינם אלא חוליות מפוזרות בכל שטח הגדה המערבית, ושאין להן מבנה מאורגן ומסודר ומפקדה מרכזית (תמליל שיחה ת/98ה' עמ' 60-61). עוד אמר הנאשם בחקירתו כי ערפאת היה, למעשה, מפקדו הישיר והממונה עליו, ואת עצמו הגדיר כ"**אחראי לכל פעילות פת"ח בגדה מעצם היותו מזכ"ל הארגון בגדה**" (ת/24 ס' 3ב, 5).

הנאשם אישר כי הוא היה מנהיג "השטח" של הפת"ח, בעוד שיאסר ערפאת עמד בראש הפת"ח (תמליל שיחה ת/98א עמ' 67). כך הסביר הנאשם בחקירתו גם את העובדה שאנשי החוליות פנו אליו לקבלת כסף, משום שראו בו "**מפקד**", וכן "**אחראי של פת"ח בגדה המערבית**", בשל היותו הדובר הפוליטי של התנועה, ומשום שנקט קו ועמדה התומכים בהמשך המאבק בכיבוש (תמליל ת/98ה עמ' 4-3, 61, ת/98ד עמ' 35-33). הנאשם הסביר כיצד הוא נראה בעיני אנשי החוליות, באומרו: "**אני המפקד שלהם, הם חושבים אותי לסמל שלהם**", ואף אישר כי אין אדם אחר שנחשב כמנהיג שלהם (ת/98ט עמ' 7-6).

בדברים שהשמיע במהלך משפטו טען הנאשם לא פעם כי הוא היה "מנהיג פוליטי" בפת"ח, בהדגישו את תפקידו כמזכ"ל הפת"ח בגדה, והיותו חבר הפרלמנט הפלסטינאי. כך גם טען בתחילת חקירתו בשב"כ. גם בחקירתו במשטרה הכחיש הנאשם כי היה אחראי על התנזים או על גדודי חללי אלאקצא (ת/106 עמ' 3, 6). ואולם במהלך חקירתו בשב"כ הודה הנאשם כי היה מפקד הפת"ח בגדה ומפקד התנזים (זכ"ד ת/18 ס' 3 שהוגש ואושר על ידי החוקר "נדב" בעמ' 78), וכי הקים את גדודי חללי אלאקצא והיה אחראי על פעילותם; מטעם זה התנגדו לפעילותו מנגנוני הביטחון של הרשות (דברי פלוני 1 בזכ"ד ת/117 ס' 15, שהוגש על ידי החוקר "רוברט" בעמ' 154).

P 7: 000380

הנאשם אמר למדובב "פלוני 3" בשיחתם, כי הוא אכן אחראי על הפת"ח ועל גדודי חללי אלאקצא, אך הוא "לא משוגע לחתום" את שמו על דף נייר בו הדברים ירשמו; כאשר המדובב אמר לנאשם כי הוא בכל זאת אחראי למעשי המפגעים, השיב הנאשם כי הוא אמנם אחראי אך "הוא לא טיפש לומר זאת לחוקרים" (זכ"ד ת/123 עמ' 2, שהוגש על ידי החוקר "אופיר"). במפגש בין הנאשם לבין אחמד ברגותי בעת מעצרם, כאשר הוקלטו ללא ידיעתם, סיפר הנאשם לאחמד כי אמר בחקירתו שאין לו כל קשר לגדודי חללי אלאקצא. השניים צחקו, ואחמד יעץ לנאשם לומר כי רק לו - לאחמד - יש קשר עם הגדודים; הנאשם השיב לו כי אמר בחקירתו שהיה מפטר את אחמד לו ידע שיש לו קשר עם הגדודים, ואחמד צחק למשמע הדברים (תמליל שיחה ת/127ג עמ' 87).

הנאשם אישר בחקירתו כי לבד מהיותו מנהיג פוליטי, הוא גם שימש כאחראי על העניינים הצבאיים של הפת"ח (זכ"ד ת/59 ס' 6 שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). הנאשם הגדיר עצמו כ"**אחראי על כל הפעילות של התנזים בפת"ח באזור שלו**" (תמליל ת/98ד עמ' 42). הוא אף הודה כי היה "**אחראי לכל הנעשה כגון אספקת כספים לחוליות, רכישות נשק וביצוע פיגועים**" (זכ"ד ת/29 ס' 1ג שהוגש ואושר על ידי החוקר "סמית" בעמ' 85), וכי הוא נחשב כ"**מפקד צבאי**", וכ"**אחראי על העניינים הצבאים של הפת"ח**", בנוסף להיותו מנהיג פוליטי ונבחר ציבור (זכ"ד ת/19 ס' 2 וזכ"ד ת/59 ס' 5- 6, שהוגשו ואושרו על ידי החוקר "מופז" בעמ' 58).

הנאשם אמר כי בשנה שקדמה למעצרו "**החל מוצא עצמו יותר ויותר עוסק בענייני אמל"ח וענייני פעילות צבאית**" (זכ"ד ת/25 ס' 19, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58, וכן ראה תמליל שיחה ת/98ד עמ' 15). הוא הסביר כי היה חייב ליטול חלק "בפעילות הצבאית" על מנת לשלוט ברחוב הפלסטינאי ולדחוק את רגלי החמא"ס והג'יהאד האיסלאמי, ועל מנת שיוכל להצביע על עצמו בעתיד כעל מי שפעל הן למען השלום והן במלחמה (זכ"ד ת/52, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

ג. **עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם ומעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו**

18. התביעה איננה טוענת כי הנאשם יזם או נטל חלק ישיר בביצוע הפיגועים נשוא כתב האישום, שכן היא ערה לכך שמחומר הראיות עולה כי למפקדי השטח ולפעילי השטח הוקנו סמכויות רחבות ומרחב תמרון רב בביצוע הפיגועים, והם לא נדרשו לקבל אישור מהנאשם לכל פיגוע. התביעה גם מסכימה כי הנאשם לא ידע מראש על כל פיגוע ופיגוע: הוא היה מודע באופן כללי לפעילותם של מפקדי השטח ופעילי הטרור הכפופים לו, אשר פעלו בהתאם למדיניות הפיגועים שהוא היה שותף לעיצובה; לעיתים עודכן לפני הפיגוע, ולעיתים עודכן בדיעבד (עמ' 47 לסיכומי התביעה).

כפי שעולה מהראיות שתפורטנה להלן, היה הנאשם מנהיגם של חוליות הטרור מקרב התנזים וגדודי חללי אלאקצא. לפחות חלק מחברי חוליות אלו סרו למרותו, ופעלו על פי המדיניות שהתווה. בנוסף על כך, עולה בבירור מן הראיות שהנאשם סייע למפקדי החוליות ופעילי הטרור באספקת אמצעי לחימה ומימון כספי. במספר מקרים אישר הנאשם מראש ביצוע פיגועים כנגד ישראל. יש, אפוא, לבחון בפרק זה מי היו פעילי הטרור שפעלו תחת הנהגתו של הנאשם, ומה היו קשריו של הנאשם עם פעילים אלו. בפרק הבא יבחנו הפיגועים שבהם היו מעורבים פעילי טרור אלו, ומידת הקשר של הנאשם אליהם.

(1) **נאצר עויס**

19. נאצר עויס (להלן: "**עויס**") היה אחד מפעילי הטרור הבכירים של התנזים באזור שכם. בגין פעילותו זו הוא נדון בבית משפט זה ל - 14 מאסרי עולם ועוד 50 שנות מאסר בפועל במצטבר (ת/172א-ב). בעדותו (עמ' 180-182) סרב עויס להשיב על שאלות, ולאחר שהוכרז כעד עוין הוגשו הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/172 – ת/177). הדבר היחיד שהיה מוכן עויס לומר בעדותו הוא כי כל מה שנרשם בהודעותיו הם שקרים של השב"כ, וגם כתב היד המופיע בהודעותיו הוא של אנשי השב"כ. הוא טען כי עבר אמצעי חקירה מאוד קשים.

ההודעות שמסר עויס במשטרה נכתבו בכתב ידו ותורגמו לעברית על ידי החוקר שגבה את ההודעות ואישר את גבייתן, ואף העיד כי ההודעות נגבו מרצונו החופשי של עויס (רס"מ רוני עמאר בעמ' 191-192). כמו כן, הוגשו דוחות שרשמו חוקרי השב"כ על דברי עויס בחקירתו (ת/178א-ד). דברים אלו אושרו על ידי חוקרי השב"כ, שהעידו כי הדברים נאמרו על ידי עויס מרצונו החופשי, אם כי מדובר במסמך שאיננו משקף אלא את תמצית החקירה, ולא את הדברים כפי שנאמרו מילה במילה ("אריאל" בעמ' 203, "עדי" בעמ' 204, "יואל" בעמ' 204-205). זכ"ד ת/178ג' נרשם בידי החוקר "צדוק", שלא התייחס אליו בעדותו (עמ' 83-84), ולא חזר להעיד לאחר עדותו של עויס, ולכן יש להתעלם ממנו.

20. עויס סיפר בהודעתו ת/172ב (עמ' 1-2), שנכתבה בכתב ידו, כי לאחר פרוץ "אינתיפאדת אלאקצא" בחודש ספטמבר 2000, הוא החל לבצע פיגועים כנגד מטרות ישראליות, ובאותה עת עבד במנגנון הביטחון הלאומי הפלסטינאי בשכם בדרגה של סרן (נקיב). הוא ביצע פיגועי ירי ופיגועים נוספים נגד מטרות ישראליות באזור יהודה ושומרון ובתוך ישראל, ופרט בהודעותיו ת/172-ת/174 פיגועים אלו, שכללו ירי לעבר עמדות צבאיות ורכבים צבאיים; מסירת אמצעי לחימה לאחרים לשם ביצוע פיגועי התאבדות בירושלים, בנתניה וחדרה, ועוד.

21. עויס אמר בהודעותיו כי ביצע את הפיגועים בשם גדודי חללי אלאקצא, בהסבירו כי גוף זה משתייך לתנועת הפת"ח ותנזים הפת"ח, וכי הנאשם היה האחראי על התנזים (ת/172ב עמ' 3). עויס אמר כי המימון לפיגועים בא מאנשי התנזים, וכי הנאשם עצמו מימן את הנשק לפיגועים בהם

P 7: 000382