חלק רביעי :    ניתוח משפטי ומסקנות

1. **פעילות וחברות בארגון טרוריסטי**

139.    בכתב האישום מיוחסות לנאשם, בין היתר, העבירות של פעילות וחברות בארגון טרוריסטי. סעיפים 1-3 לפקודת מניעת טרור, התש"ח-1948 קובעים לאמור :

## "1.   *פירושים*

"ארגון טרוריסטי" פירושו חבר אנשים המשתמש בפעולותיו במעשי אלימות העלולים לגרום למותו של אדם או לחבלתו, או באיומים במעשי אלימות כאלה;

"חבר בארגון טרוריסטי" פירושו אדם הנמנה עליו, וכולל אדם המשתתף בפעולותיו, המפרסם דברי תעמולה לטובת ארגון טרוריסטי, פעולותיו או מטרותיו, או אוסף כספים או חפצים לטובת ארגון טרוריסטי או פעולותיו".

## 2.   *פעילות בארגון טרוריסטי*

אדם הממלא תפקיד בהנהלה או בהדרכה של ארגון טרוריסטי, או משתתף בדיוניו או בקבלת החלטותיו של ארגון טרוריסטי, או משמש חבר בבית-דין של ארגון טרוריסטי, או נואם נאום תעמולה באסיפה פומבית או ברדיו מטעם ארגון טרוריסטי, ייאשם בעבירה, ובצאתו חייב בדין, יהא צפוי לעונש מאסר עד עשרים שנה.

3.   *חברות בארגון טרוריסטי*
אדם שהוא חבר בארגון טרוריסטי, ייאשם בעבירה, ובצאתו חייב בדין, יהא צפוי לעונש מאסר עד חמש שנים".

סעיף 7 לפקודת מניעת טרור קובע כי :

"7.    *הוכחה על קיום ארגון טרוריסטי*
כדי להוכיח בכל דיון משפטי, שחבר אנשים מסויים הוא ארגון טרוריסטי, יספיק להוכיח כי –

(א)   מטעם אותו חבר אנשים או בפקודתו ביצע אחד או יותר מחבריו בכל זמן שהוא לאחר ה׳ באייר תש"ח (14 במאי 1948) מעשי אלימות העלולים לגרום למותו של אדם או לחבלתו, או איומים במעשי אלימות כאלה; או

(ב)   חבר אנשים, או אחד או יותר מחבריו מטעמו או בפקודתו, הכריז שאותו חבר אנשים אחראי למעשי אלימות העלולים לגרום למותו של אדם או לחבלתו, או איומים במעשי אלימות כאלה, או שהכריז שחבר האנשים היה מעורב במעשי אלימות או איומים כאלה, בתנאי שמעשה האלימות או האיומים נעשו אחרי ה׳ באייר תש"ח (14 במאי 1948)".

P 7: 000427

140. עובדת היותם של הפת"ח, התנזים וגדודי חללי אלאקצא ארגונים טרוריסטיים, כפי שנאמר בחוות דעתו של תא"ל קופרווסר ת/1, הוכחה בבירור ממסמכי השלל שנתפסו במבצע "חומת מגן" והוגשו כראיות בפנינו, כמו גם מעדויותיהם של פעילי הטרור והנאשם עצמו (ראה לעיל: סעיפים 7-10; עדותו של עויס בסעיפים 21-23; עדותו של אבו חמיד בסעיף 25; עדותו של אחמד ברגותי בסעיף 29; עדותו של אחויל בסעיף 35; עדותו של עיאדיה בסעיף 40; עדותו של שריף בסעיף 55; עדותו של אבו רדאחה בסעיף 57; ודברי הנאשם בחקירתו כמפורט בסעיפים 60- 64). הפיגועים נשוא כתב האישום, ורבים אחרים, בוצעו על ידי פעילי השטח של הפת"ח – אנשי התנזים – ועל ידי חוליות שהתאגדו במסגרת המכונה "גדודי חללי אלאקצא". הנאשם היה מנהיג הפת"ח בגדה, ומפקד התנזים וגדודי חללי אלאקצא, כפי שהודה בחקירתו, וכפי שהוכח בראיות נוספות רבות (ראה סעיף 17 וסעיפים 60-65 לעיל).

תפקידיו של הנאשם בהנהגת ארגוני הטרור פורטו בהרחבה אף הם (ראה חלק שני, פרק ד' לעיל). הנאשם היה מפקדם של ארגוני הטרור וחוליות הטרור, גם אם לעיתים אלה חרגו מהנחיותיו, והוא דאג לספק להם אמצעי לחימה וכספים לצורך פעילותם (ראה חלק שני פרק ד(1) ו-(3) לעיל). הוא אף היה מעורב באופן אישי בחלק מן הפיגועים שביצעו הארגונים שבהנהגתו (ראה חלק שני פרק ד) 2 לעיל). הנאשם אף טיפל בסיוע למבוקשים ולמשפחות העצורים והחללים, ובגיוס פעילים לארגוני הטרור והדרכתם (ראה חלק שני פרק ד(4)-(5) לעיל). הוא היה האדם אשר ביטא את עמדתם של ארגוני הטרור באמצעי התקשורת (ראה פרק ד(6) לעיל).

אין מדובר, איפוא, אך ורק "באדם הממלא תפקיד בהנהלה או בהדרכה של ארגון טרוריסטי", כלשון סעיף 2 לפקודת מניעת טרור, אלא הנאשם הוא מי שעמד בראש ארגוני הטרור הנ"ל, התווה את מדיניותם ונשא נאומי תעמולה מטעמם באמצעי התקשורת.
בכך הוכחו יסודות סעיפים 2 ו- 3 לפקודת מניעת טרור, קרי חברות בארגון טרוריסטי ופעילות בארגון שכזה.

2. **אחריותו של מבצע בצוותא, משדל ומסייע והאבחנה ביניהם**

141. כתב האישום מייחס לנאשם אחריות ישירה של "מבצע בצוותא" לגבי כל מעשי הרצח וניסיון הרצח נשוא כתב האישום, כאשר מדובר ב- 37 פיגועים שונים.
כתב האישום מייחס לנאשם גם את העבירות של סיוע ושידול לרצח, אם כי טענת המאשימה בסיכומיה היא, כי יש לראות בנאשם מבצע בצוותא של עבירות אלו, ולא רק מסייע או משדל לביצוען, וזאת עקב היותו מנהיג ארגוני טרור, והאחראי העיקרי לביצוע פיגועי הרצח שהוציאו ארגונים אלה לפועל. יש לסקור, איפוא, את מידת אחריותו הנטענת של הנאשם לפיגועי הטרור נשוא כתב האישום: ראשית - כמי שביצע את מעשי הרצח בצוותא חדא עם פעילי השטח והמפגעים; שנית – כמי ששידל לביצוע מעשים אלה; שלישית – כמי שסייע לביצוע מעשי הרצח. במסגרת זו יש לבחון מה הקווים המאפיינים את "המבצע בצוותא", תוך הבחנתם מן המאפיינים את המסייע והמשדל.

142. סעיף 29(ב) לחוק העונשין, התשל"ז-1977 קובע את אחריותו של המבצע בצוותא, כדלקמן:

"המשתתפים בביצוע עבירה תוך עשיית מעשים לביצועה, הם מבצעים בצוותא, ואין נפקה מינה אם כל המעשים נעשו ביחד, או אם נעשו מקצתם בידי אחד ומקצתם בידי

"אחר".

סעיף 30 לחוק העונשין, התשל"ז-1997 קובע את אחריותו של המשדל כדלקמן:

"המביא אחר לידי עשיית עבירה בשכנוע, בעידוד, בדרישה, בהפצרה או בכל דרך שיש בה משום הפעלת לחץ, הוא משדל לדבר עבירה".

סעיף 31 לחוק העונשין, התשל"ז-1977 קובע את אחריותו של המסייע כדלקמן:

"מי אשר, לפני עשיית העבירה או בשעת עשייתה, עשה מעשה כדי לאפשר את הביצוע, להקל עליו או לאבטח אותו, או למנוע את תפיסת המבצע, גילוי העבירה או שללה, או כדי לתרום בדרך אחרת ליצירת תנאים לשם עשיית העבירה, הוא מסייע".

143.   על מנת שאדם יחשב כמבצע העבירה בצוותא עם אחרים, צריך להתקיים התנאי הבסיסי של "עשיית מעשים לביצועה" של העבירה, כפי שמורה סעיף 29(ב) לחוק.

הפסיקה נתנה פירוש רחב למושג "ביצוע", כשהיא מגדירה בצורה רחבה את מהות המעשה הנדרש לצורך כך. באופן דומה קבעה הפסיקה אמות מידה גמישות בנוגע למידת הקירבה הנדרשת של המשתתף למעגל המבצעים, וליכולתו להשפיע על הביצוע (דנ"פ 1294/96, 1365/96 **עוזי משולם ואח' נ' מדינת ישראל**, פ"ד נב(5) 1, בעמ' 21 (כב' השופט א. מצא), בעמ' 54-55 (כב' השופט מ. חשין), ובעמ' 63-64 (כב' השופט י.קדמי)).

אשר למעשה הנדרש על מנת שניתן יהיה לראות באדם מבצע בצוותא, נפסק כי די במעשה לביצוע העבירה החורג מהכנה גרידא (זה אף המבחן לקיומה של עבירת ניסיון), ואשר מלווה ביסוד הנפשי המתאים (דנ"פ 1294/96 הנ"ל בעניין **משולם**, בעמ' 23-24). מעשה זה איננו חייב להיות חיוני להצלחת העבירה, ואף איננו חייב להיות מעשה הנמנה עם רכיבי היסוד העובדתי שבעבירה; די בכך שהמעשה משולב בתוכנית העבירה, ומהווה השתתפות בביצועה, כמו למשל תכנון העבירה, מתן הנחיות לביצועה או חלוקת התפקידים בין המשתתפים (דנ"פ 1294/96 הנ"ל בעניין **משולם**, בעמ' 63-64 (כב' השופט י. קדמי)).

א.   **מבצע בצוותא לעומת מסייע**

144. ההבחנה בין "מבצע בצוותא" של העבירה לפי סעיף 29(ב) לחוק העונשין, לבין "מסייע" לפי סעיף 31 לחוק, הפכה להיות בעלת חשיבות מעשית רבה לאחר שנכנס לתוקף חוק העונשין (תיקון מס׳ 39) (חלק מקדמי וחלק כללי), התשנ״ד-1984, שכן על-פי סעיף 32 לחוק כנוסחו היום - עונשו של המסייע הוא מחצית מעונשו של המבצע בצוותא, בעוד שעל-פי הדין הקודם עונשם היה זהה. עונשו המירבי של המסייע לרצח הוא 20 שנות מאסר (סעיף 32(1) לחוק), בעוד שהמבצע עבירת רצח בצוותא עם אחר, בהעדר נסיבות של אחריות מופחתת, דינו מאסר-עולם חובה.

בע״פ 8573/96, 8620, 8710, 8873, 8901 **מרקדו ואח׳ נ׳ מדינת ישראל** ("משפט הדיסקונטאים"), פ״ד נא(5) 481, אמר כבוד השופט א. גולדברג בעמ׳ 545:

"תיקון מס׳ 39 לחוק מבטא את ההכרה שהאשמה המוסרית, והמסוכנות הסובייקטיבית והאובייקטיבית שבסיוע פחותות מאלה שבביצוע בצוותא. פער זה הוא שעומד ביסוד ההבחנה בתוצאות העונשיות בין מבצע בצוותא למסייע, והוא זה שגם צריך להנחות אותנו בקביעת המבחנים המשמשים להבחנה בין מבצע עיקרי למסייע".

145. ההבחנה בין "מבצע בצוותא" לבין "מסייע" הובהרה בע״פ 4389/93, 4497/93 **יוסי מרדכי ואח׳ נ׳ מדינת ישראל**, פ״ד נג(3) 239, בע״פ 2796/95, 2813/95, 2814/95 **פלונים נ׳ מדינת ישראל**, פ״ד נא(3) 388, דנ״פ 1294/96 הנ״ל בעניין **משולם**; ע״פ 8573/96 הנ״ל בעניין **מרקדו**, בעמ׳ 543-550; וע״פ 2111/99 **חיירו נ׳ מדינת ישראל**, פ״ד נח(1) 411 ההבחנה בין מבצע בצוותא לבין מסייע מצויה הן ביסוד העובדתי של העבירה, והן ביסוד הנפשי שלה. בעיקרון, "**איכות תרומתו של המסייע לביצוע העבירה פחותה מאיכות תרומתו של המבצע העיקרי**" (ע״פ 8573/96 הנ״ל, בעמ׳ 545).

אשר **ליסוד העובדתי** של העבירה - ההבחנה העיקרית היא בין שותף ישיר לביצוע העבירה לבין שותף עקיף לביצועה. המבצעים בצוותא הם "**משתתפים בביצוע העבירה תוך עשיית מעשים לביצועה**", אך לא נדרש כי כל אחד מהם יבצע בעצמו את כל היסודות העובדתיים של העבירה (סעיף 29(ב) לחוק). לעומת זאת, המסייע עושה מעשה שיש בו כדי לתרום בדרך כלשהי "**ליצירת תנאים לשם עשיית העבירה**" (סעיף 31 לחוק). המבצע בצוותא הוא חלק מן המעגל הפנימי של ביצוע העבירה, בעוד שתרומתו של המסייע לביצוע העבירה היא חיצונית בלבד. לכן, בוחן בית-המשפט את מידת הקירבה של כל אחד מן המשתתפים לביצוע העבירה, קרי: האם הוא מהווה חלק מן המעגל הפנימי של המשימה העבריינית (ע״פ 3390/98 **רוש נ׳ מדינת ישראל**, פ״ד נג(5) 871

, 878). זהו, איפוא, "**מבחן הקירבה**", שהובהר על ידי כב' הנשיא א. ברק בע"פ 4389/93 הנ"ל בעניין **מרדכי**, בעמ' 250:

"השוני בין המבצע בצוותא לבין המסייע מתבטא בכך שהמבצעים בצוותא משמשים גוף אחד לביצוע המשימה העבריינית. כולם עבריינים ראשיים... תרומתו של כל אחד מהמבצעים בצוותא היא 'פנימית'... אכן, לעניין הביצוע בצוותא תיתכן חלוקת עבודה בין העבריינים, באופן שהם יפעלו במקומות שונים ובזמנים שונים, ובלי שכל אחד מהם מיצה את העבירה, ובלבד שחלקו הוא מהותי להגשמת התכנית המשותפת. אחדות המקום והזמן אינה חיונית, ובלבד שחלקו של כל אחד מהם הוא חלק פנימי של המשימה העבריינית".

146. בפסקי הדין שצוטטו לעיל, סקר בית-המשפט העליון את המבחנים השונים שהוצעו בפסיקה ובספרות המשפטית לשם תיחום הגבולות בין מבצע בצוותא לבין מסייע. יש אשר שמים דגש על "**מבחן השליטה**", כמאפיין של המבצע בצוותא: למבצע בצוותא יש שליטה, יחד עם האחרים, על ביצוע העבירה; הוא מהווה חלק מן התוכנית המשותפת לביצוע העבירה, ופועל יחד עם האחרים להגשמתה. על מעמדו של המבצע בצוותא לאור "מבחן השליטה", אמר כבוד הנשיא א. ברק בע"פ 2796/93 הנ"ל בעניין **פלונים** (פסקה 28):

"המאפיין את המבצע בצוותא שהוא אדון לפעילות העבריינית. בידיו השליטה הפונקציונאלית-מהותית, יחד עם המבצעים בצוותא האחרים, על העשיה העבריינית. הוא חלק מהחלטה משותפת לביצוע העבירה. הוא חלק מהתוכנית הכוללת להגשמת הפעולה העבריינית האסורה. הוא פועל יחד עם המבצעים בצוותא האחרים, כך שכל אחד מהם שולט - יחד עם האחרים – על הפעילות כולה. מעמדו ביחס להחלטה לביצוע העבירה הוא של איש 'פנים'. תרומתו היא 'פנימית'. חלקו הוא מהותי להגשמת התוכנית המשותפת...".

כך גם נפסק בע"פ 8573/96 הנ"ל בעניין **מרקדו**, בעמ' 547-548. לעומת זאת, בהתייחסו למסייע אמר כבוד הנשיא ברק כי המסייע "**אינו אבי הרעיון**" לביצוע העבירה, ובפסקה 30 אמר כדלקמן:

"המסייע הוא שותף עקיף ומשני (פרשת **מרדכי**, פסקה 14). הוא מצוי מחוץ למעגל הפנימי של הביצוע. הוא גורם "חיצוני". אין הוא יוזם הביצוע ואף לא משדל לביצועו... אין הוא המחליט על הביצוע ואין הוא שולט על הביצוע...".

(ראה גם ע"פ 4389/93 הנ"ל בעניין **מרדכי**, פסקאות 13-14).

147. לעומת "מבחן השליטה", יש המדגישים את ה"**מבחן הפונקציונאלי**", לפיו מבצע בצוותא הוא מי שנטל חלק מהותי בביצוע העבירה גופה, בעוד שחלקו של המסייע מתבטא בפעולות עזר החיצוניות לעבירה.

מבחן זה מוצא את ביטויו בלשון סעיף 29(ב) לחוק ("**משתתפים בביצוע העבירה תוך עשיית מעשים לביצועה**"). בע"פ 2796/93 הנ"ל בעניין **פלונים** (פסקה 27), אמר כבוד הנשיא א. ברק בהתייחסו למבצעים בצוותא:

"הם השותפים הראשיים בביצוע העבירה. השותפות ביניהם מתבטאת בכך שהם נטלו חלק בביצוע העבירה כמבצעים ישירים. הם משמשים גוף אחד לביצוע המשימה העבריינית... כל אחד מהם נוטל חלק בביצוע העיקרי של העבירה".

ובהמשך דבריו (פסקה 27) אמר כבוד הנשיא ברק:

"ביצוע בצוותא מחייב תיכנון משותף. הוא מבוסס על חלוקת עבודה בין המבצעים...".

דברים ברורים באשר לחשיבותו המכרעת של ה"מבחן הפונקציונאלי" אמר כבוד השופט י. קדמי בע"פ 5206/98 **חליל עבוד נ. מדינת ישראל**, פ"ד נב(4) 185 (פסקה 2):

"'המבצעים בצוותא' אינם רק אלה המשתתפים בעשיית 'מעשה' העבירה גופו; אלא – נמנה עליהם כל מי ש'נוטל חלק' בביצועה של העבירה, במובן הרחב של המושג 'ביצוע'. ואילו כל מי שרק 'תורם' לביצוע, מבלי לקחת בו חלק – לאמור: מבלי למלא 'תפקיד' במסגרתו – נותר ב'מעגל החיצוני' של האחראים לביצוע. הוא אינו משתתף בביצוע; וחלקו מצטמצם ל'סיוע' גרידא למימושו של הביצוע.

ההבחנה בין הנמנים עם ה'מעגל הפנימי' – 'המבצעים בצוותא' – לבין הנמנים עם ה'מעגל החיצוני' – 'המסייעים', נעוצה, איפוא, בטיב ואופי מעורבותם בביצוע: אם 'נטלו-חלק-בביצוע' – קרי: אם היה להם 'תפקיד' בביצוע הריהם 'מבצעים בצוותא'; ואילו אם אך 'תרמו' לו מבחוץ – הריהם 'מסייעים' בלבד".

בהמשך דבריו מבהיר כבוד השופט קדמי כי ההבחנה בין מבצע בצוותא למסייע **איננה** תלויה בשאלה האם היה בהתנהגותו של הנאשם משום סיוע לביצוע העבירה, שכן גם מבצע בצוותא מסייע לביצועה; השאלה היא "**אם נטל חלק – קרי: אם מילא תפקיד – בביצוע העבירה**."

בדנ"פ 1294/96, 1365 **משולם ואח' נגד מדינת ישראל**, פ"ד נב(5)1, בעמ' 63, אמר כבוד השופט י. קדמי:

"'מעשה-של-השתתפות' אינו חייב לבטא פעילות המשולבת בביצוע ה'מעשה', הנמנה עם רכיבי היסוד העובדתי שבעבירה, ומשמעותו רחבה ומקיפה כל 'מעשה' המבטא 'השתתפות' בביצועה של העבירה. סעיף 29 לחוק העונשין, המגדיר 'מעשה-של השתתפות', אינו דורש ש'המעשה' ייעשה *תוך כדי ביצוע היסוד העובדתי של העבירה*, ודי שיהא בו לבטא 'השתתפות' בביצוע. 'השתתפות', כאמור, יכול שתתחיל בהעלאת הרעיון בפני המיועדים לבצע את העבירה..."

כבוד השופט מ. חשין ציין באותו עניין כי החוק איננו דורש שמעשה ההשתתפות בביצוע העבירה ייעשה תוך כדי ביצועה בפועל, או בסמוך לכך (עמ' 53-54).

148.    בדנ"פ 1294/96 הנ"ל בעניין **משולם**, הבהיר בית-המשפט העליון כי "מבחן השליטה" הינו מבחן עזר, שאיננו מבחן יחיד ובלעדי, ויש לשלבו עם מבחנים ושיקולים אחרים; שליטה בביצוע מהווה אמנם ראיה חשובה להיותו של אדם מבצע בצוותא, אך היעדר שליטה, או העדר תרומה פיזית חיונית לביצוע העבירה, אינם שוללים בהכרח מסקנה זו (כבוד הנשיא א. ברק בעמ' 50; כבוד השופט א. מצא בעמ' 24-27; כבוד השופט י. קדמי בעמ' 65). זאת ועוד; גם כאשר בית-המשפט נעזר ב"מבחן השליטה", נעשה הדבר תוך הדגשה כי אין מדובר ביכולת שליטה רצופה במהלך ביצוע העבירה כולה, אלא מדובר ב"**שליטה במשבצת הביצוע שהוקנתה למבצע**

P 7: 000433

**המסוים**" (כבוד השופט י. קדמי בעמ' 64).

149. אשר ל**יסוד הנפשי** של העבירה – הרי שיחסו הנפשי של המסייע נמצא בדרגה נמוכה יותר מזו של המבצע העיקרי, בכל הנוגע למידת מודעותו לפרטים הנוגעים לביצוע העבירה, ורצונו להגשימה. לגבי מסייע, נפסק כי די בכך שהוא מודע לכך שהתנהגותו תורמת ליצירת התנאים הדרושים לשם ביצוע העבירה העיקרית, ושהמבצע העיקרי עומד לבצעה. בנוסף, לנגד עיני המסייע צריכה לעמוד המטרה לסייע למבצע העיקרי לעבור את העבירה, או להקל עליו את ביצועה. ואולם, כאשר העבירה העיקרית היא תוצאתית, ונדרש בה יסוד של פזיזות או כוונה מיוחדת – אין צורך להוכיח שגם המסייע פעל מתוך כוונה שכזו, או שהוא התכוון לכך שהמבצע העיקרי יגשים את מטרתו. כך למשל, בעבירת רצח אין צורך להוכיח שהמסייע התכוון שהמבצע העיקרי ירצח את הקורבן, או שהוא חפץ בכך: די בכך שהמסייע שם לנגד עיניו את המטרה לסייע לעבריין העיקרי, יהיו מניעיו של המסייע אשר יהיו (הלכות אלו הובהרו בע"פ 320/99 **פלונית נ' מדינת ישראל**, פ"ד נה(3) 22, בעמ' 31-37).

לעומת זאת, כאשר במבצע בצוותא עסקינן, יש להוכיח מעורבות נפשית גבוהה ומודעות מצידו לפרטי העבירה המתבצעת, בנוסף על רצונו להגשימה:

"**המבצע בצוותא תורם את תרומתו לאירוע עברייני רב-משתתפים מתוך יחס נפשי של יוצר העבירה auctoris onimo. הוא רואה את עשיית העבירה כעניינו הוא, ולא של אחר**" (דברי ש"ז פלר, בספרו **יסודות בדיני עונשין**, שצוטטו בע"פ 4389/93 הנ"ל בעניין **מרדכי**, בעמ' 251).

**כללו של דבר**: המבצע בצוותא, בניגוד למסייע, צריך להיות בעל יסוד נפשי זהה לזה של מבצעי העבירה האחרים, וצריכים להתקיים לגביו כל מרכיבי היסוד הנפשי שנקבעו בחוק לגבי העבירה שהוא נוטל חלק בביצועה (ע"פ 2796/95 הנ"ל בעניין **פלונים**, בעמ' 402).

בע"פ 8573/96 הנ"ל בעניין **מרקדו**, אמר כבוד השופט א. גולדברג, בעמ' 548-549, כי סיווגו של הנאשם כמבצע בצוותא או כמסייע מתקבל כתוצאה ממבחן משולב של היסוד הנפשי והיסוד העובדתי – מבחן אשר כמוהו כמקבילית כוחות:

"**ככל שהיסוד הנפשי של עושה העבירה (מבחינת מידת העניין שלו בביצועה) רב יותר, יש מקום להסתפק בדרגה נמוכה יותר של היסוד העובדתי. ברוח זו כבר נאמר כי 'משהוכח יסוד 'נפשי' זה (המודעות – א' ג'), אין עוד חשיבות לחלוקת התפקידים בין המעורבים באירוע**' (ע"פ 4188/95, 5235 הנ"ל [43], בעמ' 550). ולהפך, ככל שמידתו של

היסוד העובדתי אצל עושה העבירה, מבחינת איכות תרומתו לביצועה, רבה יותר, כן ניתן להסתפק בדרגה נמוכה יותר של היסוד הנפשי".

דברים אלו אושרו בדנ"פ 1294/96 בעניין **משולם** הנ"ל (בעמ' 27, מפי כב' השופט א. מצא).

150.   מן ההלכות שצוטטו לעיל עולה, כי השתתפות בתכנון העבירה מהווה סממן מובהק של מבצע בצוותא, ובמקרה שכזה אין צורך בנוכחות פיזית בזירת העבירה על מנת להיחשב כמבצע בצוותא.

בדנ"פ 1294/96 הנ"ל בעניין **משולם**, בעמ' 64, פסק כב' השופט י. קדמי:

"**'השתתפות', כאמור, יכול שתתחיל בהעלאת הרעיון בפני המיועדים לבצע את העבירה, ומכל מקום, לשיטתי, אין ספק, שתכנון הביצוע, מתן הנחיות והתווית קווי הפעולה, לרבות חלוקת תפקידים בין המשתתפים, מהווים 'מעשה' המבטא 'השתתפות' כאמור**."

בע"פ 3596/93 **חמוד אבו סרור נ. מדינת ישראל**, פ"ד נב(3) 481, אמר כבוד השופט א' מצא בעמ' 491:

"**תרומתו המעשית של המערער לביצוע הרצח אכן היתה קטנה משל שני מרעיו. ואולם השתתפותו בפעילות המכינה, ותפקיד המתריע אותו מילא, היקנו לו שליטה על הוצאתה לפועל של התוכנית הרצחנית. מכך שהשתתף בהכנות לביצוע ופעל להצלחת התוכנית עולה, כי היה בעל המחשבה הפלילית הנדרשת לשכלול אחריותו בגין עבירת רצח בכוונה תחילה**."

בע"פ 2796/95 הנ"ל בעניין **פלונים**, הורשעו ארבעה נערים בביצוע רצח בכוונה תחילה, למרות שרק אחד מהם השליך את הרימון שגרם למותו של קורבן העבירה. האחד (זאב) הורשע כמבצע בצוותא משום שנטל חלק בכל שלבי התכנון והביצוע, ונכח בזירת ביצוע העבירה, למרות שהחליט שלא לזרוק את הרימון הקטלני בעצמו ("**הוא לא ביצע את אקט הקטילה. אין בכך ולא כלום, שכן מבצע בצוותא אחראי גם אם לא ביצע בעצמו את כל יסודות העבירה...**" – עמ' 407). השני (גרשון) הורשע כמבצע בצוותא, אף כי לא נכח כלל בזירת הרצח, וכל תפקידו היה לדווח לתקשורת על המעשה לאחר ביצועו, משום שביצע את התפקיד שהוקצה לו מראש לשם הגשמת העבירה (עמ' 408). השלישי (טל) הורשע כמבצע בצוותא, למרות שגם הוא לא נכח בזירת ביצוע הרצח, משום

שהשתתף בתכנון העבירה, היווה חלק מן החבורה שהחליטה לבצע את הרצח, ואף עמד בראשה (עמ׳ 408-409).

151. כאשר לעבירה העיקרית קדמה קשירת קשר לביצועה, תהא הנטיה לראות בכל אחד מן הקושרים מבצע בצוותא של העבירה העיקרית, ובלבד שנטל חלק ממשי בביצועה. הטעם לכך הוא שקשירת קשר לביצוע עבירה מעידה על עניין שיש לכל אחד מהקושרים בביצועה. כדברי ש״ז פלר, שצוטטו בע״פ 8573/96 הנ״ל בעניין **מרקדו**, בעמ׳ 550: ״קשירת קשר בין שני אנשים, או יותר, לביצוע עבירה פלילית, טומנת בחובה גיבוש מחשבה משותפת למימוש מטרת הקשר – כל אחד במעמד עתידי של מבצע ישיר, ברוח יצירת animo auctoris.״

בע״פ 3390/98 הנ״ל בעניין **רוש**, בעמ׳ 878, אמר כבוד השופט א׳ מצא:

״המבחן הנוסף בדבר ׳קירבת המעשה׳, שעל-פיו נדרש שחלקו של כל אחד מהמבצעים בצוותא יהיה ׳חלק פנימי של המשימה העבריינית׳, נועד אך להבטיח שעשיית מעשה גבולי, שלפי טיבו עשוי להיכנס להגדרה של ׳ביצוע׳, לא תטיל על העושה אחריות כמבצע בצוותא כאשר טיב יחסו הנפשי לביצוע העבירה מוטל בספק (דנ״פ 1294/96 משולם נ׳ מדינת ישראל (להלן – פרשת משולם [3]), בעמ׳ 22-21).

לא כן הדבר ביחס לקביעת אחריותו של מי אשר מעיקרה נימנה עם המשתתפים בהכנת התוכנית העבריינית, ואין מתעורר כל ספק ביחס להיותו בעל המחשבה הפלילית הנדרשת לשכלולה של העבירה המתוכננת. צד כזה לעבירה נושא באחריות כ׳מבצע בצוותא׳, אפילו אם תרומתו הפיזית לביצועה אינה גדולה מתרומתו של מסייע (ע״פ 3596/93 **אבו סרור נ׳ מדינת ישראל** [4], בעמ׳ 491)״.

152. אשר לנוכחות בזירת ביצוע העבירה, הרי שזו איננה הכרחית על מנת לראות באדם מבצע בצוותא, ובלשונו של כבוד הנשיא א. ברק בע״פ 2796/95 הנ״ל בעניין **פלונים** (פסקה 27): ״ביצוע בצוותא אינו מבוסס בהכרח על אחידות המקום והזמן״ (ראה גם דנ״פ 1294/96 הנ״ל בעניין **משולם**, בעמ׳ 30, 38, 49, 51, 54-53 ו-64). עם זאת, נוכחות אקראית של אדם בזירה בה מתבצעת עבירה, יוצרת חזקה הניתנת לסתירה להיותו מבצע בצוותא של העבירה (ראה: ע״פ 3006/96 **מטיאס נ. מדינת ישראל**, דינים עליון, כרך נב 526).

ב.  **עבירת הסיוע**

**153.** היסוד העובדתי והנפשי של עבירת הסיוע בכלל, והסיוע לרצח בפרט, הובהרו לאחרונה בפסק דינו של כבוד הנשיא א' ברק בע"פ 320/99 **<u>פלונית נגד מדינת ישראל</u>**, פ"ד נה(3) 22, בעמ' 31-37 (אושר בע"פ 11131/02 **<u>אנג'ליקה יוסופוב נ' מדינת ישראל</u>**, טרם פורסם). ניתן לסכם את ההלכות שנפסקו בפסק דין זה כדלקמן:

**א.** המאפיין את ההתנהגות המסייעת הוא, שהיא מהווה תרומה עקיפה ומשנית לביצועה של העבירה העיקרית: התרומה של המסייע נחשבת עקיפה ומשנית, משום שהוא איננו נוטל חלק בביצוע העיקרי של העבירה, אלא רק תורם בעקיפין להגשמתה של העבירה העיקרית. המסייע הוא גורם "חיצוני", אשר מצוי מחוץ למעגל הפנימי של ביצוע העבירה (ראה גם: ע"פ 7085/93 **<u>נג'אר ואח' נ' מדינת ישראל</u>**, פ"ד נא(4) 221, בעמ' 238).

**ב.** **היסוד העובדתי** של עבירת הסיוע, שהיא עבירת התנהגות, הוא מעשה או מחדל שיש בו כדי ליצור את התנאים להגשמתו של היסוד העובדתי בעבירה המבוצעת על ידי המבצע העיקרי. הסיוע צריך להיות "מסוגל" לסייע להגשמת העבירה העיקרית, אך אין דרישה שהסיוע יהיה אפקטיבי, או תנאי שבלעדיו העבירה העיקרית לא היתה מתגבשת (ראה גם ע"פ 4317/97 **<u>פולאיקוב נ' מדינת ישראל</u>**, פ"ד נג(1) 289, בעמ' 307). כמו כן אין דרישה שהעבירה העיקרית תתבצע בפועל, שכן עבירת הסיוע איננה עבירה תוצאתית. בנוסף, יש צורך להוכיח, כחלק מהיסוד העובדתי של עבירת הסיוע, את הנסיבה הנוגעת לפליליותה של ההתנהגות שהסיוע מהווה לה גורם משני ועקיף.

**ג.** הסיוע צריך שיופנה כלפי עבירה בעלת ייעוד מוחשי, דהיינו, פעולה הנעשית על מנת לסייע לביצועה של עבירה **מסוימת**, להבדיל מעבירה סתם (ראה גם ע"פ 426/67 **<u>יוסף בארי ואח' נ' מדינת ישראל</u>**, פ"ד כב(1) 477, בעמ' 481; ע"פ 7085/93 הנ"ל בעניין **<u>נג'אר</u>**, בעמ' 238-239).

**ד.** **היסוד הנפשי** של עבירת הסיוע כולל שלושה תנאים מצטברים:

**(1)** מודעות לטיב ההתנהגות המסייעת, קרי: לכך שההתנהגות תורמת ליצירת התנאים לשם עשיית עבירה עיקרית בעלת ייעוד מוחשי;

**(2)** מודעות לקיום הנסיבות הרלבנטיות בעת ההתנהגות המסייעת, דהיינו: מודעות לכך שהמבצע העיקרי מבצע, או עומד לבצע עבירה, הגם שלא נדרשת מודעות לכל פרטי מפרטי העבירה (ראה גם ע"פ 7085/93 הנ"ל בעניין **<u>נג'אר</u>**, בעמ' 238-239).

**(3)** לנגד עיניו של המסייע צריכה לעמוד המטרה לסייע למבצע העיקרי לבצע את העבירה, או להקל עליו את הביצוע.

על דרישה זו ניתן להחיל את "הילכת הצפיות", דהיינו: מודעותו של המסייע לכך שהתנהגותו עשויה, קרוב לוודאי, להוות תרומה מסייעת למבצע העיקרי – שקולה כנגד המטרה לסייע לו, גם אם הוא לא חפץ כלל בביצוע העבירה העיקרית (ראה גם דעת המיעוט של כבוד השופט י' אנגלרד בע"פ 4317/97 הנ"ל בעניין **<u>פוליאקוב</u>**, בעמ' 320- 323, ודעתו של כבוד השופט מ' אילן בע"פ 807/99 **<u>מדינת ישראל נ' עזיזיאן</u>**, פ"ד נג(5) 747, בעמ' 757-758).

**ה.** כאשר העבירה העיקרית היא תוצאתית, ונדרש בה יסוד נפשי של פזיזות או כוונה מיוחדת –

P 7: 000437

אין צורך להוכיח שגם המסייע פעל מתוך פזיזות או כוונה שכזו, או שהוא התכוון לכך שהמבצע העיקרי יגשים את מטרתו. כאשר מדובר בסיוע לרצח, פירוש הדבר הוא שאין צורך להוכיח שהמסייע התכוון שהמבצע העיקרי ירצח את הקורבן, או אפילו שהוא חפץ בכך. המחשבה הפלילית של המסייע איננה צריכה להיות זהה למחשבתו של העבריין העיקרי: די בכך שהמסייע שם לנגד עיניו את המטרה לסייע לעבריין העיקרי, יהיו מניעיו של המסייע אשר יהיו.

154. לעניין דרגת ההסתברות כי העבריין העיקרי יבצע את העבירה, חשוב לציין כי על פי ההלכה שנפסקה מפי כבוד הנשיא א' ברק בע"פ 320/99 הנ"ל בעניין **פלונית**, די בכך שהמסייע **מודע** לכך שהמבצע העיקרי עומד לבצע עבירה בעלת ייעוד מוחשי (עמ' 31-32 לפסק הדין). הדרישה למודעות בדרגת הסתברות **קרובה לוודאי**, נוגעת ליסוד המטרה, קרי: מודעותו של המסייע לכך שהתנהגותו עשויה, קרוב לוודאי, לתרום לביצוע העבירה העיקרית; מודעות שכזו, שקולה כנגד המטרה לסייע לעבריין העיקרי. כפי שאמר הנשיא א' ברק: "**היסוד הנפשי של מטרה ('כדי') מכוון איפוא כלפי פעולת הסיוע ולא כלפי פעולתו של העבריין העיקרי**" (עמ' 35).

בהקשר זה מתעוררת השאלה מתי נאמר כי לנאשם היתה "מודעות" לכך שהעבריין העיקרי עומד לבצע עבירה בעלת ייעוד מוחשי.

ההלכה היא כי "עצימת עיניים", המכונה אף "עיוורון מכוון", שקולה כנגד מודעות לטיב המעשה ולקיום הנסיבות. הלכה זו, מוצאת כיום את ביטויה **בסעיף 20(ג)(1) לחוק העונשין**, אשר קובע כדלקמן:

> "רואים אדם שחשד בדבר טיב ההתנהגות או בדבר אפשרות קיום הנסיבות כמי שהיה מודע להם, אם נמנע מלבררם".

(וראה: י' קדמי, **על הדין בפלילים**, עדכון והשלמה (1996), חלק ראשון, בעמ' 37, וע"פ 3417/99 **מרגלית הר-שפי נ' מדינת ישראל**, פ"ד נה(2) 735, בעמי 757-758).

בספרו הנ"ל של י' קדמי נאמר, בעמ' 37:

> "א.   סעיף 20(ג)(1) לתיקון, מעגן בהוראה חקוקה, את הכלל שלפיו: מקום שאדם 'חושד', בפועל, שטיב התנהגותו מביא אותה בגדרה של התנהגות אסורה או שיש אפשרות, מעשית, שמתקיימות הנסיבות הדרושות להרשעה, והוא נמנע מלברר את 'אמיתותו' של החשד, רואים אותו כמי שהיה מודע לטיבה האמיתי של ההתנהגות ולקיומה של הנסיבה (אם מתברר כי נתקיימה בפועל).
>
> ב.   גם כאן... נראה כי רמת החשד צריכה להיות לפחות 'רמה מסתברת', לאמור: כי סביר יותר שהחשד אמיתי מאשר שאין לו אחיזה".

ההלכה בעניין זה מבוארת בספרו של פרופ' ש"ז פלר, **יסודות בדיני עונשין** (כרך א', תשמ"ד), בעמ' 519, כפי שאף הפנה אליה כבוד השופט מ' חשין בע"פ 3417/99 הנ"ל, בעמ' 758, לאמור:

> "**מודעות לאפשרות** קיום הנסיבה, בה תלויה העבירה, מחייבת את האדם לבדוק, עובר לביצוע מעשהו, את המצב בכל הנוגע לאותה נסיבה, כדי להימנע ממנו, במקרה שקיום הנסיבה מתאושש.

אם חרף החשד, לא עשה האדם כן, בין משום שבכל תנאי היה מנוי וגמור עמו לעשות את המעשה, ובין משום שהיה לו נוח יותר שלא לדעת או מכל שיקול אחר, פירוש הדבר שהשלים עם דבר קיומה של הנסיבה.
לכן, שקולה ההתעלמות *המודעת* מאפשרות הקיום של מערכת נסיבות כנגד *מודעות* לעצם קיום זה; שהרי מערכת נסיבות זו עמדה לנגד עיני האדם, אלא שלא טרח לבדוק את מצב הדברים כדי לברים. אם מתברר בדיעבד כי הנסיבות הרלוואנטיות אכן התקיימו, שקולה המודעות לאפשרות קיומן עקב החשד בכך, כנגד המודעות לעצם קיומן".

בספרו הנ"ל של י' קדמי, בעמי 37, נאמר באשר לרמת החשד הדרושה לצורך יישום ההלכה בדבר "עצימת עיניים", כי לפני תיקון תשנ"ד לחוק העונשין נעה ההלכה הפסוקה בין רמה "סבירה" לבין רמה "גבוהה". בעניין זה נאמר בספרו של פרופי פלר, **דיני עונשין**, כרך א', עמי 523, כדלקמן:

"אין לדעתנו כל יסוד לסברה כי, מלבד רציונאליות החשד – הסובייקטיבית כמובן – או, ביתר דיוק, במקום הרציונאליות שלו, צריך החשד להיות גם בדרגה גבוהה, עד כדי הסתברות קרובה לוודאי, או עד כדי העדר ספק של ממש בלבו של אדם בדבר אמיתותו... לשם השתוות 'עצימת עיניים' למודעות, די במודעות לחשד רציונאלי בדבר אפשרות קיומן של הנסיבות ובהמנעות מלברר את הדבר לאשורו".

ובעמ' 524 נאמר:

"לסיכום, די בהיות החשד מעוגן במציאות, כלומר רציונאלי, כדי להגדיר את המעשה כמבוצע תוך 'עצימת עיניים', אם, עובר למעשה, נמנע העושה מלבדוק את החשד ומלעמוד על מצב הדברים לאשורו. אין צורך במידה גבוהה של הסתברות אובייקטיבית של אמיתות החשד".

המבחן לקיומה של "עצימת עיניים" העולה כדי מודעות הוא, כאמור לעיל, סובייקטיבי. עם זאת, בתי המשפט נוהגים להיעזר לצורך קביעת רמת מודעותו הסובייקטיבית של הנאשם גם במבחן האובייקטיבי של האדם הסביר (וראה: ע"פ 15/78 **משה ביבס נ. מדינת ישראל**, פ"ד לב(3) 64, בעמי 83; ע"פ 5612/92 **מדינת ישראל נ. באריי ואח'**, פ"ד מח(1) 302, בעמי 363; והשווה להחלת מבחן האדם הסביר בנוגע למודעות הנאשם להסתברות גבוהה של פגיעה בבטחון המדינה: ע"פ 3116/99 **יהודה גיל נ. מדינת ישראל**, פ"ד נד (4) 193, בעמי 204).

155. מן ההלכות שפורטו לעיל, ובעיקר אלו שנפסקו בע"פ 320/99 הנ"ל בעניין **פלונית**, עולה כי אדם אשר חושד כי חברו עומד לבצע עבירה מסוימת, אך נמנע מלברר את העניין, ואף מסייע לחברו לבצע את העבירה מתוך מודעות לכך שמעשהו יסייע, קרוב לוודאי, לביצוע העבירה בידי חברו - אם תבוצע - נחשב כמסייע על פי סעיף 31 לחוק העונשין. מהלכות אלו עולה כי אין צורך להוכיח שהמסייע צפה את ביצוע העבירה העיקרית כאפשרות קרובה לוודאי: די בכך שהיה מודע לאפשרות ההגיונית, הסבירה והממשית של ביצוע העבירה העיקרית, וחרף כך סייע לביצועה, מתוך מודעות לכך שהתנהגותו עשויה, קרוב לוודאי, לסייע למבצע העיקרי. כמו כן אין צורך להוכיח שהמסייע חפץ בביצוע העבירה העיקרית, או כי פעל מתוך כוונה שהעבירה העיקרית תבוצע.

ואולם, בע"פ 11131/02 הנ"ל בעניין **יוסופוב** נפסק מפי כבי השופט א. ריבלין כי התביעה צריכה להוכיח שהנאשם ידע שהתנהגותו עשויה לסייע, קרוב לוודאי, לביצוע עבירת רצח על ידי העבריין

העיקרי וכי: "**על מנת שתוחל הלכת הצפיות, יש להראות, כאמור, מודעות בדרגה של קרוב לוודאי לאפשרות ביצוע העבירה...**" (פסקה 19 לפסק הדין). דברים אלו שונים בנימתם מאלה שנאמרו בע"פ 320/99 הנ"ל בעניין __פלונית__, כאשר גם כב' השופט ריבלין אמר בע"פ 11131/02 הנ"ל בתחילת פסק הדין (פסקה 9), כי:

"המודעות – הן לטיב ההתנהגות המסייעת והן לנסיבה של ביצוע העבירה העיקרית – יכול שתהיה מוחלפת בחשד באשר לטיבה של ההתנהגות, ובמודעות לאפשרות התקיימות הנסיבה של ביצוע העבירה על ידי העבריין העיקרי, בהתאם להוראת סעיף 20 (ג)(1) לחוק העונשין ("עצימת עיניים")".

156.   מן ההלכות דלעיל עולה כי לא נדרשת הוכחה לכך שהנאשם היה מודע לכל פרט מפרטי העבירה שלביצועה הוא מסייע. בעניין זה נאמרו בע"פ 11131/02 הנ"ל בעניין __יוסופוב__, מפי כב' השופט א. ריבלין, דברים בעלי חשיבות לענייננו:

"בצדק ציין בית המשפט קמא, כי מודעות לכך שהמבצע העיקרי עומד לבצע עבירה אין משמעה מודעות לכל פרט מפרטי העבירה אותה הוא מתכנן (ראו למשל: ע"פ 7085/93 נג'אר נ' מדינת ישראל, פ"ד נא(4) 221, 239). בעניינו, המערערת ידעה כי זייד, אליו התלוותה, נושא עימו חומר נפץ, כי הוא ביצע כבר פיגוע בעבר, וכי הוא מבקש לנקום את מות אחיו, אשר נהרג בפעולה של כוחות הביטחון. בית המשפט קמא התרשם מעדותה של המערערת, כי זו הבינה היטב שזייד עומד לבצע פיגוע בעיר תל אביב. אין חשיבות, בהקשר זה, לשאלה אם ידעה באיזה מיקום מדויק מתכוון הוא להניח את חומר הנפץ".

עוד נפסק מפי כב' השופט ריבלין באותו עניין:

"אכן, כפי שכבר ציינו, אין המסייע נדרש להיות מודע לכל הפרטים של העבירה אותה עומד לבצע המבצע העיקרי. יחד עם זאת, עליו להיות מודע, בעת שהוא מגיש את הסיוע למבצע העיקרי, לכך שקיימת אפשרות כי פעולתו תסייע למבצע העיקרי בביצועה של עבירה ממשית, ובמילים אחרות – לכך שלמבצע העבירה היה "ייעוד מוחשי" (ראו גם: ע"פ 426/67 באריה נ' מדינת ישראל, פ"ד כב(1) 477 , 481-482; ע"פ 5544/91 מויאל נ' מדינת ישראל (לא פורסם). אין די בידיעה על נכונות ערטילאית והיפותטית של המבצע לבצע עבירה, כדי להפוך אדם למסייע.

ייתכן אמנם, כפי שכבר ציינו, כי המודעות לקיום הנסיבה שביסוד העובדתי – כלומר מודעות לכך שהמבצע העיקרי עומד לבצע עבירה – תוחלף במודעות לאפשרות שהוא עומד לבצע עבירה.

אך על מנת שנאמר כי המסייע "עצם את עיניו" עלינו להשתכנע כי התקיים, בפועל, חשד רציונאלי-סובייקטיבי בעיני רוחו של המסייע, לפיו עומדת להתבצע עבירה (ש"ז פלר בספרו הנ"ל (כרך א') 521-524, 530).

זאת ועוד, על המסייע להיות ער לאפשרות שהעבירה תבוצע, בעת שהוא מושיט את הסיוע. אם סבור המסייע, בעת שהוא מבצע את הפעולות העולות לכדי סיוע, כי לא מתקיימת עוד אפשרות ממשית שהמבצע העיקרי עומד לבצע את העבירה, הרי שאין לראות בו מסייע – אף אם הערך, בשלב קודם, כי התקיימה אפשרות

P 7: 000440