(הנאשם דובר עברית טובה), בהם נרשמו עיקרי הדברים שנאמרו על ידי הנאשם (ראה החוקר "סטיב" בעמ׳ 53, החוקר "אמילי" בעמ׳ 55 והחוקר "רוני" בעמ׳ 60).

4.    אשר להודעות הנאשם במשטרה, הרי שהנאשם הודיע בכל חקירותיו במשטרה - בניגוד לדרך בה נהג בעת חקירותיו בשב"כ - כי הוא כופר בזכותה של משטרה לחקור אותו, ולכן סירב לענות על שאלות החוקרים (ראה הודעה ת/99-ת/109). לפיכך, הודעותיו של הנאשם כוללות שאלות רבות שהוצגו לו על ידי החוקרים, וסירובו להשיב עליהן. במקרים בודדים ביותר התייחס הנאשם בקצרה לדברים שנאמר לו החוקר, ובהזדמנויות אלו הכחיש לחלוטין את כל הטענות שהוצגו לו - גם אלה בהם הודה בחקירתו בשב"כ. הנאשם הכחיש כי היה מנהיגם של גדודי חללי אלאקצא והתנזים (הודעה ת/101 עמ׳ 6, הודעה ת/105 עמ׳ 2, הודעה ת/106 עמ׳ 3)؛ הכחיש כי הכיר את פעילי הטרור שתעידו כי היו בקשר עמו (כפי שיפורט להלן), ואפילו הכחיש כי הכיר את ראיד כרמי (ת/104 עמ׳ 8). כל אלו הוכחו, כפי שיבואר להלן, לא רק מפי פעילי השטח, אלא גם מפי הנאשם עצמו,    מהמסמכים שנתפסו במשרדו, אשר הנאשם הכחיש בחקירתו כל קשר אליהם, וטען כי כתב ידו לא מופיע עליהם (ראה הודעה ת/108-ת/109).

הודעותיו של הנאשם הוגשו על ידי החוקרים דוד זריהן ורפי נוריאל (עמ׳ 113, 38), אשר הסבירו כי הנאשם סירב לחתום על האזהרה ועל ההודעה, וכי הוא נחקר בעברית. זריהן אף העיד כי הנאשם סירב למסור טביעת אצבע ולהצטלם. הנאשם אמר באופן כללי להודעתו ת/106 כי כל ההאשמות כנגדו אינן נכונות, וכי הוא חף מכל אשמה.

5.    בפתח משפטו העלה הנאשם טענות מקדמיות הנוגעות לסמכות בית משפט זה לשפוט אותו, ואלה נדחו בהחלטת בית המשפט מיום 19.01.03 (עמ׳ 1-34 לפרוטוקול). הנאשם בחר שלא להסתייע בשירותיו של סניגור, ואף דחה דחה נמרצות ובעקביות כל ניסיון של בית המשפט לשכנעו להיעזר בסניגוריה הציבורית או בסניגור מטעמו.

בית המשפט הטיל אמנם על הסניגוריה הציבורית לייצג את הנאשם, חרף בקשותיה החוזרות ונשנות להשתחרר מייצוגו, ולמעשה היא מייצגת את הנאשם עם כיום ונכחה בכל הדיונים. ואולם הסניגוריה הציבורית בחרה להיעתר לבקשת הנאשם שלא להעלות טענות כלשהן מטעמו במהלך המשפט, לרבות טענות משפטיות, ואף לא לחקור את העדים.

כך התנהל ההליך על פי בחירתו של הנאשם, אשר ממשיך לכפור בסמכות בית המשפט לשפוט אותו. בנסיבות אלו בחר הנאשם גם שלא להגיב על כתב האישום. כמו כן נמנע הנאשם מלהעיד בעצמו או להביא עדים מטעמו. עם זאת, הנאשם הגיב מידי פעם על דברי העדים או על טענות שטענה ב"כ המאשימה במהלך הדיון, ודבריו נרשמו בפרוטוקול כלשונם. בנוסף הגיב הנאשם על סיכומי התביעה בעל פה (שהוגשו גם בכתב), בנאום סניגוריה שנשא במסגרת הסיכומים בעל פה, ואשר לא התייחס לגופן של ההאשמות שהועלו כנגדו. למותר לציין כי הנאשם קיבל בעצמו, ובאמצעות הסניגוריה הציבורית, את כל חומר הראיות, הפרוטוקולים והסיכומים.

6.    העבירות נשוא כתב האישום הן ברובן "עבירות פנים" הנוגעות לפיגועים שבוצעו בישראל, וחלקן "עבירות חוץ", שבוצעו בתחומי האיזור (קרי: יהודה ושומרון). ואולם, כפי שהבהרנו בהחלטה שניתנה בנוגע לטענותיו המקדמיות של הנאשם, מוסמך בית משפט בישראל לדון בעבירות חוץ כנגד בטחון המדינה, או נגד אזרח או תושב ישראלי, יהא מקום ביצוע העבירה אשר יהא (סעיף 13(א)-(ב) לחוק העונשין, תשל"ז-1977). זו היא אותה "תחולה פרוטקטיבית", אשר נועדה להגן על אזרחים ותושבים ישראלים כנגד פעולות טרור הנעשות בחסותן ובגיבויין של מדינות אחרות (ש"ז פלר, מ׳ קרמניצר, "**תגובה לחיבור בגנות התחולה הנציונלית של דיני העונשין**", פלילים ה1 (1996) 65, בעמ׳ 83, והשווה דעתו של י. שחר, שם בעמ׳ 5). עוד פסקנו בהחלטה שניתנה בטענותיו המקדמיות של הנאשם, כי לא נראה שהתנאים הקבועים בסעיף 14(ב) לחוק העונשין רלבנטיים למקרה זה, אם הם חלים כלל על הסמכות הפרוטקטיבית שבסעיף 13 לחוק (להבדיל מהסמכות

הפרסונלית שבסעיף 14), שכן הרשות הפלסטינאית איננה מדינה. העבירות המיוחסות לנאשם בכתב האישום הן עבירות כנגד בטחון המדינה, כנגד אזרחיה ותושביה, ועל כן הן נופלות במסגרת סעיף 13 לחוק העונשין, ובית משפט זה מוסמך לדון בהן.

## חלק שני :  מסכת הראיות

### א.   הפת"ח, התנזים וגדודי חללי אלאקצא כאירגוני טרור

7.    ראש חטיבת המחקר באגף המודיעין של צה"ל, תא"ל י. קופרווסר, הגיש במהלך עדותו (עמ' 38) חוות דעת בה הוא מתייחס לפעילותם של הפת"ח, התנזים וגדודי חללי אלאקצא (ת/1). אל חוות הדעת צורפו מסמכי שלל שנתפסו על ידי צה"ל במבצע "חומת מגן" הנוגעים לענייני זה. **הפת"ח** (ראשי תיבות במהותך בערבית של "התנועה לשחרור פלסטין") דגל מאז יסודו על ידי יאסר ערפאת בשנת 1959 במאבק מזוין כנגד ישראל, אשר התבטא בביצוע פיגועי טרור נגד יעדים ישראליים בארץ ובחו"ל. לאחר חתימת הסכמי אוסלו נדחק עיקרון "המאבק המזוין" למקום משני, אך נותר כאופציה להשגת מטרות הארגון במקרה שהמו"מ עם ישראל לא יצלח. עם פרוץ האינתיפאדה השניה בחודש ספטמבר 2000, הוביל הפת"ח את פיגועי הטרור בשטחים, וזאת באמצעות שתי ועדות עליונות המנהלות את הפעילות - האחת באזור יהודה ושומרון, והשניה באזור רצועת עזה. בראש הועדה העליונה של אזור יהודה ושומרון עמד הנאשם עד ליום מעצרו (סעיפים 1-3 לחוו"ד).

הדרג המבצע של הפת"ח כלל את כל פעילי השטח של התנועה - **התנזים** (ארגון - בערבית). פעילי התנזים מהווים את חוד החנית בפעילותם החבלנית של הפת"ח כנגד ישראל. גדודי חללי אלאקצא הוא שם כיסוי להתארגנויות טרור של הפת"ח, אשר נוטלות אחריות פומבית למעשי הטרור. אנשי "הגדודים" הם למעשה פעיליה של הפת"ח, כאשר מרבית ההתארגנויות רואות בנאשם מקור סמכות מרכזי לפעילותן (סעיפים 4-5 לחוו"ד).

התנזים וגדודי חללי אלאקצא מהווים, על פי חוות דעתו של תא"ל קופרווסר, את הזרוע הצבאית הבלתי ממוסדת של הפת"ח, שבראשה עמד הנאשם. מסמך שלל המצורף כנספח א' לחוו"ד של תא"ל קופרווסר הוא מכתב החתום בידי הפת"ח וגדודי חללי אלאקצא גם יחד. מסמכי שלל אחרים שצורפו לחוות הדעת מראים כי גדודי חללי אלאקצא פונים בבקשה לסיוע כספי מיאסר ערפאת (מסמך 2), וכי הפת"ח וגדודי חללי אלאקצא חתומים על כרוזים המשבחים פעילות טרור שבוצעה בתחומי ישראל (מסמכים 3, 5). במסמך 6 שצורף לחוו"ד, ואשר נשלח ביום 8.5.01 מאת גדודי חללי אלאקצא אל הנאשם, מופיע פירוט פעילותם של גדודי חללי אלאקצא במחוז ג'נין (כולל פיגועי באום אלפאאחם), ובקשה לסיוע באמצעי לחימה וכסף לשם המשך ביצוע של פעילות זו. מסמכים אחרים של גדודי חללי אלאקצא שהופנו ליאסר ערפאת, כוללים בקשות לסיוע למבוקשים הנרדפים על ידי ישראל ולמשפחות החללים (נספח ב' ומסמכים 4-2 לנספח זה). חלק מן המסמכים נכתבו על ידי הנאשם. יצויין כי כינויו של הנאשם היה, על שם בנו הבכור, "**אבו אלקסאם**" (הודעת הנאשם ת/107 עמ' 1, והדרך בה פנה אחיו אל הנאשם בעמ' 164).

8.    על פי חוות דעתו של תא"ל קופרווסר ביצעו אנשי הפת"ח למעלה מ- 1,200 פיגועים כנגד ישראל (נכון ליום 18.8.02), בהם נהרגו 176 ישראלים ונפצעו רבים אחרים. פיגועים אלו כוללים התאבדות, ירי ממרגמות ונשק קל. במהלך האינתיפאדה עברו התארגנויות הטרור של הפת"ח יותר ויותר לביצוע פיגועי התאבדות בתחומי ישראל (סעיף 5 לחוו"ד). חודשים שקדמו למבצע "חומת מגן" ביצעו גדודי חללי אלאקצא פיגועי התאבדות בחדרה, תל אביב, מחולה, מחנה 80, מחסום מכבים, נתניה, אשדוד, כפר סבא ואפרת, ובעקבות כך הוכנסו לרשימה האמריקאית של ארגוני הטרור ביום 27.3.02 (סעיף 10 לחוו"ד ונספח ג' המפרט את פיגועי ההתאבדות שבוצעו על ידי תנועת הפת"ח).

**9.** לגבי חוות הדעת של תא"ל קופרווסר יש לומר, כי מבחינת דיני הראיות אינני רשאים להסתמך על הערכות ומסקנות מודיעיניות אשר מבוססות על מקורות מידע שונים שלא הובאו בפני בית המשפט, בהיותם עדות שמיעה. נוכל לסמוך על חוו"ד זו רק במידה שהיא תואמת ראיות קבילות אחרות שהובאו בפנינו. אולם, פעילות הטרור בחסות הפת"ח של שלושת הארגונים הנ"ל עולה בבירור מראיות ישירות רבות שהובאו במשפט, כולל הודאות שמסרו בחקירותיהם הנאשם ופעילי הטרור, כפי שיפורט בהמשך הכרעת הדין.

נאצר אבו חמיד, שהיה אחד ממפקדי השטח הבכירים ביהודה ושומרון, סיפר בהודעתו במשטרה (ת/149(א), בעמ' 3-2, 8-7, 17-13), על הקמת גדודי חללי אלאקצא ביום 1.1.01, על מנת שיחו מיליציה של הפת"ח, ויבצעו פיגועים נגד מתנחלים וחיילי צה"ל. הוא מפרט בהודעתו הנ"ל (וכן בהודעתו ת/149 (ג)) את הפיגועים שבוצעו על ידו ועי' אנשיו כנגד מטרות אזרחיות וצבאיות של ישראל, תחת הנהגתו ובסיועו של הנאשם (כפי שיפורט בהמשך).

**10.** גם מדברים שאמר הנאשם בחקירתו, וממסמכים שנכתבו בכתב ידו, ניתן ללמוד על פעילותם של ארגוני הטרור הנ"ל. הנאשם הסביר את דרך פעולתן של החוליות המכונות "גדודי חללי אלאקצא", שלדבריו ביצעו "פעילות צבאית" (ת/19 סעיף 14, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58). כך גם הסביר הנאשם בחקירתו את הדרך שבה נוצרו גדודי חללי אלאקצא באזור יהודה ושומרון, ופעלו בצורה מפוזרת, וטען כי הפת"ח לא פיקח על פעילותם; אך הוא הודה כי חוליות אלו פנו אליו לקבלת כסף, משום שראו בו "**אחראי של פת"ח בגדה המערבית**" (תמליל ת/ 98 (ה) עמי 60-61). כפי שיבוצא בהמשך, הפנו פעילי הטרור מגדודי חללי אלאקצא את בקשותיהם לסיוע כספי לשם רכישת נשק וביצוע פיגועים אל הנאשם, והלה היה פונה בשמם ועבורם אל יו"ר הרשות הפלסטינאית ומנהיג הפת"ח, יאסר ערפאת. מכאן ברור הקשר של גדודי חללי אלאקצא לארגון הפת"ח, והקשר של הנאשם לגדודים אלו.

**ב.    מעמדו של הנאשם ותפקידו בארגוני הטרור, ותמיכתו בפיגועים כנגד ישראל**

**11.** תא"ל קופרווסר הגיש בעדותו חוו"ד נוספת, המתייחסת למעורבותו של הנאשם בטרור (ת/ 2). לחוו"ד זו צורפה שורה של נספחים הכוללים ראיונות עם הנאשם באמצעי התקשורת השונים ומסמכים שכתב הנאשם או שנמצאו במשרדו. גם חוות דעת זו כפופה להערה שפורטה בסעיף 9 לעיל, בנוגע לקבילותם של הערכות מודיעיניות הנסמכות על מקורות מידע שלא פורטו ולא הובאו בפנינו, ולכן גם בנושא זה נזקק לראיות עצמאיות וקבילות שהובאו במשפט.

**12.** בחוות הדעת של תא"ל קופרווסר ת/2 נאמר כי הנאשם היה עד למעצרו ראש הועדה העליונה של הפת"ח ביהודה ושומרון, ולפיכך שימש כמנהיג הפת"ח בגדה. זאת ניתן ללמוד מן המסמכים השונים שכתב הנאשם ושנכתבו אליו, ואשר צורפו לחוות הדעת ת/1 ות/2. בתפקידו הנ"ל היווה הנאשם מקור סמכות מרכזי לבכירי הפת"ח, וציונור מקשר בין ראש הרשות הפלסטינאית, יאסר ערפאת, לבין דרגי השטח בתנועה (סעיפים 2-1).

עוד נאמר בחוות הדעת הנ"ל (סעיף 4), כי עם פרוץ האינתיפאדה בחודש ספטמבר 2000, תפס הנאשם חלק מרכזי ביותר בהובלת הטרור נגד ישראל על ידי גורמי פת"ח בכלל. מעורבותו באה לידי ביטוי בדרכים שונות: **ראשית,** הנאשם היווה מקור השראה והתווה את מדיניות הפיגועים, באמצעות פגישות אישיות עם פעילי הטרור של תנועת הפת"ח והתבטאויות פומביות. **שנית,** הנאשם היה מקור סמכות וממומן לפעילי הטרור של תנועת הפת"ח: הוא נתפס בעיני גדודי חללי אלאקצא כמנהיג המרכזי בפעילותם, שימש כצינור קשר בינם לבין יו"ר הרשות הפלסטינאית והעביר לרשותו סכומי כסף המסתכמים בעשרות אלפי שקלים לצורך פעילות הטרור. **שלישית,** הנאשם העביר הנחיות ישירות לפעילי הטרור - הן במישור האסטרטגי, והן במישור הטקטי הנוגע לפיגועים נקודתיים.

**.13**    הנאשם לא הסתיר בחקירתו בשב"כ את עמדתו הברורה, לפיה תנועת הפת"ח חייבת
להוביל את "המאבק המזוין נגד ישראל", וכי זו הדרך היחידה להשגת מטרות התנועה עם הפלסטיני
לאחר כשלון תהליך השלום, ולאחר שהנאשם עצמו היה פעיל שנים רבות (זכ"יד ת/59
סי' 2-5, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). הוא הבהיר  כי כאשר הוא משתמש בביטוי
"מאבק מזוין", הוא מתכוון לפיגועים (תמליל חקירה ת/98יא עמ' 3-2). הנאשם הסביר כי מנהיגי
הפת"ח חששו מהיחלשות כוחם ברחוב הפלסטיני למול התנועות האיסלאמיות, דבר שדרבן אותם
לנקוט קו של פיגועים נגד ישראל (זכ"יד ת/21 סעיף 5, שהוגש ואושר על ידי החוקר "רוברטי" בעמ'
63 (בטענת נרשם בפרוטוקול
ת/41); זכ"יד ת/23 סי' 5, שהוגש ואושר על ידי החוקר "דני" בעמ' 90 ; זכ"יד ת/27 סי' 12-10 וזכ"יד
ת/55 סי' 3 שהוגשו ואושרו על ידי החוקר "סמית" בעמ' 85 ; זכ"יד ת/30 סי' 12-8 וזכ"יד ת/58 סי' 5
שהוגשו ואושרו על ידי החוקר "אמילי" בעמ' 54 ; זכ"יד ת/40 סי' 15 שהוגש ואושר על ידי החוקר
"מופז" בעמ' 58 ; זכ"יד ת/70 סי' 3 שהוגש ואושר על ידי החוקר "סטיב" בעמ' 53).
הנאשם אמר בחקירתו כי **"עמדתו המוצהרת הינה מאבק מזוין מול הכיבוש הישראלי, ומי שיש
לו נשק שיבצע פיגועים זה הקו הכללי"** (ת/23 סי' 5, וכן ראה זכ"יד ת/6 סי' 12-11, שהוגש ואושר
על ידי החוקר "רוברטי" בעמ' 62). הוא הסביר כי לפי השקפתו פיגועים שיכאיבו לישראל יקדמו
את השלום, ויגרמו לישראלים להבין שיש להם מה להפסיד (ת/40 סעיף 15, ות/70 סעיף 4).
הנאשם הבהיר כי מבחינתו אזרחים ישראליים היים בהתנחלויות הם אויב שיש לפגוע בו (זכ"יד
ת/63 סי' 16, שהוגש ואושר על ידי החוקר "נאור" בעמ' 82). הוא אף אמר כי פיגועים נגד מתנחלי
יהודה ושומרון הם לגיטימיים, גם כאשר מדובר בנשים וילדים (זכ"יד ת/6 סי' 13, שהוגש ואושר ע"י
החוקר "רוברטי" בעמוד 62, זכ"יד ת/77 סי' 2 שהוגש ואושר על ידי החוקרים "צדוק" ו"אופיר"
בעמ' 83, 87).

הנאשם חזר והדגיש במהלך חקירתו כי בויכוח שהתנהל בתוך הרשות והפת"ח בעניין סוג הפיגועים
נגד ישראל - דגל ערפאת והוא בקו הקובע כי יש להתמקד בפיגועים נגד צה"ל והמתנחלים, בעוד
שמנהיגים כמו אבו עלא ואבו מאזן התנגדו לכל סוג של אלימות ; רק מעט מאנשי הפת"ח תמכו
בפיגועים בתוך ישראל (ת/27 סעיפים 13-12 ; ת/30 סעיף 8 ;
ת/70 סעיף 3). חרף התנגדותם של ערפאת והנאשם לפיגועים בתוך ישראל, הם איבדו שליטה על
החוליות ופעילי השטח במהלך האינתיפאדה (זכ"יד ת/55 סי' 3ו, שהוגש ואושר על ידי החוקר
"סמית" בעמ' 85).

**.14**    עמדתו של הנאשם כמפורט לעיל באה לידי ביטוי גם בדבריו בחקירה שתומללו. לגבי
עמדתו של הנאשם כי אין לבצע פיגועי התאבדות בתוך ישראל, הוא הסביר כי פגיעה בהתנחלויות
כמוה כפגיעה בבבא, ולכן בעניין זה לא היה ויכוח בתוך הפת"ח; אך הוא הודה כי בתקופה
האחרונה שלפני מעצרו החל הפת"ח לבצע גם פיגועי התאבדות בתוך ישראל, ואף אישר כי הפת"ח
נגרר לתוך פעילות זו כדי שלא להישאר את השליחו בשטח לאירגונים האיסלאמים (ת/98ד עמ'
27-29). הנאשם הסביר כי הוא באופן אישי הסתייג מכל פעילות בתוך ישראל, אך תמך "במאבק
המזוין נגד הכיבוש הישראלי", ואף עשה זאת בצורה פומבית בטלוויזיה (ת/98ז עמ' 7, 10).

הנאשם אישר כי בחמשת החודשים האחרונים שקדמו למעצרו נטל הפת"ח תפקיד מרכזי בהשלמת
רמת האלימות, והנהיג את המלחמה ; הנאשם לא הכחיש כי כיחד כי הוא נטל חלק בכך      (ת/98יב עמ' 35,
ת/98ה עמ' 4-3).

הנאשם הדגיש בחקירתו כי הוא תמך בהסכם השלום, ופעל למען שנים במשך 10, אך ההשלמה
נבעה לדבריו מהעדר תקווה להשגת פתרון פוליטי עם ראש הממשלה שרון (ת/98יב עמ' 45-44).
הנאשם אף הביע דעתו כי הפלשתינאים טעו כאשר דחו את הצעות ישראל, ועוד יותר מכך את
הצעת הנשיא קלינטון, בועידת "קמפ דיוויד", שכן לו קיבלו את ההצעות הללו - היתה להם היום
מדינה עצמאית (זכ"יד ת/95, שהוגש ואושר על ידי החוקר "אופיר" בעמ' 87).

**15.** על גישתו של הנאשם בנושא הפיגועים, ועל תפקידו של הפת״ח בביצוע פיגועים כנגד ישראל, ניתן ללמוד גם משיחות שניהל הנאשם עם המובלבים שהוכנסו לתאו. המדובב שכונה "פלוני 1", הציג עצמו בפני הנאשם כפלשתינאי משכם, הוא מסר לחוקרי השב״כ את הדברים שאמר לו הנאשם לאחר קיום השיחות, ואלו נרשמו בזכ״דיים של חוקרי השב״כ שהעידו במשפט ("רוברטי" בעמ׳ 154, "מיקי" בעמ׳ 155, "אופיר" בעמ׳ 156 ו"מופז" בעמ׳ 157), וכן העיד פלוני 1 עצמו (עמ׳ 107-101). פלוני 1 העיד כי הוא קרא את כל הדו״חות שרשמו אנשי השב״כ על שיחותיו עם הנאשם, ואישר את תוכנם (עמוד 105). בדרך דומה פעל והופעל המדובב פלוני 3, שזיהה את קולו של הנאשם בקלטת ת/124ב (ראה עדותו בעמ׳ 107-110, ומוצגים ת/122-ת/125).

על פי עדותו של פלוני 1, סיפר לו הנאשם שהוא היה זה שהקים את גדודי חללי אלאקצא והיה אחראי עליהם (עמ׳ 106). בזכ״ד שנרשם מפיו (ת/117 שהוגש ואושר על ידי החוקר "רוברטי" בעמ׳ 154), אמר פלוני 1 כי הנאשם אמר לו שהאינתיפאדה למעשה הייתה מתוכננת לאור המצב המדיני, הרחבת ההתנחלויות והמשך הכיבוש והלחץ על הפלסטינאים בשטחים, וכי ביקורו של אריאל שרון בהר הבית היה רק "הקש ששבר את גב הגמל", והצית את האינתיפאדה שהיתה צפויה ממילא (ראה גם זכ״ד ת/25 סי׳ 18, שהוגש ואושר על ידי החוקר "מופז" בעמ׳ 58).

לאחר האירוע בהר הבית, ביקשו מנגנוני הביטחון של הפת״ח מערפאת להורות על הפסקת האינתיפאדה, וערפאת לא הגיב. הנאשם עצמו סיפר כי עוז בזעם את הישיבה לאור בקשת המנגנונים, וכי הוא שנוא עליהם משום ש״ימשך את העם להשלמת המצב״. הנאשם אמר לפלוני 1 כי מטרת האינתיפאדה הייתה פגיעה בחיילים ובמתנחלים כדי לגרום לעזיבתם, וכדי להוכיח לעולם שהפלסטינאים נלחמים בכיבוש. ואולם לאחר שישראל החלה במדיניות החיסולים, ובעיקר לאחר שפגעו בראיד כרמי, עבר הפת״ח לפעול בתוך ישראל במטרה לפגוע באזרחים, על מנת לפגוע בכלכלת ישראל ובתיירות, ולהפעיל לחץ על הרחוב בישראל שילחץ על הממשלה לסגת מהשטחים (שם, סי׳ 12-13, 17, 20-21). כמו כן אמר הנאשם לפלוני 1 כי מבחינתו הפיגועים מהווים הגנה עצמית של הפלסטינים, אשר מוכנים להושיט יד לשלום, וכי פיגועי ההתאבדות נובעים מן הכיבוש ומן המצב של הפלסטינאים בשטחים (זכ״ד ת/110 סי׳ 22, 27).

עמדתו של הנאשם התומכת בהמשך האינתיפאדה באה לידי ביטוי גם במכתב ששלח ליאסר ערפאת ביום 31.12.00 (ת/5 ט/42א)).

**16.** באשר למדיניות הפיגועים של הפת״ח, הסביר הנאשם בחקירתו כי כאשר ערפאת היה מעוניין בהפסקת אש, הוא היה דואג להעביר הנחיה זו לגורמים רבים, ובהם הנאשם; אך כאשר היה מעוניין בהמשך הפעילות הוא דאג שהפעילים, יבינו זאת מהתגובות, ובעיקר אי-התגובות שלו. הנאשם אמר: "**אם הוא** (ערפאת) **למשל, לא רוצה בהפסקת אש הוא מסתדר אחרת. לא אומר שום דבר**" (זכ״ד ת/24 סי׳ 3ב, שהוגש ואושר על ידי החוקר "סמתי" בעמ׳ 85, ותמליל חקירתו של הנאשם ת/98ט עמ׳ 32-33). הנאשם אמר שערפאת מעולם לא הורה לו בצורה מפורשת לבצע פיגועים. אך הוא הוסיף כי מהעובדה שערפאת התנגד לביצוע פיגועים בתוך ישראל בלבד, ניתן היה להבין שהוא תומך בפיגועים בשטחים, ולכן גם לא הורה להפסיקם; ערפאת אמר בתקשורת כמה פעמים כי "**מיליון שאהידים בדרכם לירושלים**", והנאשם שאל באוזני רטורי האם אין זו הצהרה התומכת בביצוע פיגועים (זכ״ד ת/60 סי׳ 7-4 שהוגש ואושר על ידי החוקר "אמילי" בעמ׳ 54; זכ״ד ת/61 סי׳ 8-1, שהוגש ואושר על ידי החוקר "מיקי" בעמ׳ 81; זכ״ד ת/62 סי׳ 5-3 שהוגש ואושר על ידי החוקר "דני" בעמ׳ 90).

הנאשם הסביר כי לא היה צורך בהוראות ישירות של ערפאת לביצוע פיגועים, שכן הדברים היו מובנים מבין השורות (זכ״ד ת/63 סי׳ 13-11 שהוגש ואושר על ידי החוקר "נאור" בעמ׳ 82). הנאשם הוסיף כי גם האינתיפאדה לא הוראתו לא היה צריך לתת הנחיה מפורשת לביצוע פיגועים (זכ״ד ת/64 שהוגש ואושר על ידי החוקר "רוברטי" בעמ׳ 62, ות/66 שהוגש ואושר על ידי החוקר "אמילי" בעמ׳

54). עוד ציין הנאשם כי הבין את התמיכה של ערפאת בפיגועים גם לאור העובדה שערפאת היה מאשר לו את הבקשות הכספיות שהגיש עבור פעילי השטח של הפת"ח שביצעו פיגועים (זכ"ד ת/70 סי 17ח/, שהוגש ואושר על ידי החוקר "סטיב" בעמ' 53). הנאשם תיאר את הקשר שלו עם ערפאת כ**"אישי וישיר"** (תמליל שיחה ת/98ח עמ' 55).

גם לנאשם, מסתבר, היתה דרך משלו להודיע לאנשי החוליות על הפסקת הפיגועים ועל חידושם. הוא הסביר בחקירתו כי כאשר רצה בהפסקתם אש היה מתקשר לחוליות הגדולות, אם כי קרה שהיו אנשים שלא שמעו להוראתו ; כאשר הנאשם היה מעוניין בחידוש האש הוא היה מודיע על כך בטלוויזיה, כאשר קרא "למאבק מזוין". כאשר נשאל כיצד היה מודיע על רצונו בחידוש האש, השיב הנאשם :

**"לא רוצה אש, אני מדבר בטלוויזיה אם אני רוצה שלום, יעני אני לא מתקשר לפלוני ואומר לו ואוללה תבצע בשבילנו פיגוע. ואללה תעשה לנו לא יודע מה, אין אצלי כזה דבר, אני דובר בשם התנועה בפועל קורא לאינתיפאדה אני קורא למאבק מזוין"** (ת/98ח עמ' 3).

חרף דברים אלו של הנאשם, הרי שמעדותו של פעיל הטרור עויס עולה שהנאשם הורה לו לחדול מביצוע פיגועים בעת ביקורו של השליח האמריקאי אנתוני זיני באזור (ראה להלן). מן הדברים שאמר המדובב פלוני 1 בחקירתו, בעקבות שיחותיו עם הנאשם, עולה כי הנאשם הביע כעס רב על כך שעויס מסר פרטים אלו בחקירתו (זכ"ד ת/113א1א סי 9-8, זכ"ד ת/114א1א סי 8 שהוגשו ואושרו על ידי החוקר "רוברטו" בעמ' 154). כמו כן הובאו ראיות על מקורות אחרים בהם הורה הנאשם באופן ישיר לפעילי הטרור המקורבים אליו לבצע פיגועים כנגד ישראלים (ראה להלן).

**17.** בתחילת חקירתו בשב"כ הכחיש הנאשם כי היה מנהיג התנזים וגדודי חללי אלאקצא, אך אישר את אחריותו לפעילות הצבאית של הפת"ח (זכ"ד ת/17 סי 6, שהוגש ואושר על ידי החוקר "ארבלי" בעמ' 80, זכ"ד ת/43 סי 6 שהוגש ואושר על ידי החוקר "רוברטו" בעמ' 62, ותמליל חקירה ת/98ח1ה/ עמ' 44-43). הנאשם טען כי גדודי חללי אלאקצא אינם אלא חוליות מפוזרות בכל שטח הגדה המערבית, ושאין להן מבנה מאורגן ומסודר ומפקדת מרכזית (תמליל שיחה ת/98ה/ עמ' 60- 61). עוד אמר הנאשם בחקירתו כי ערפאת הוא למעשה, מפקדו הישיר והממונה עליו, ואת עצמו הגדיר כ**"אחראי לכל פעילות פת"ח בגדה מעצם היותו מזכ"ל הארגון בגדה"** (ת/24 סי 3ב, 5).

הנאשם אישר כי הוא היה מנהיג "השטח" של הפת"ח, בעוד שיאסר ערפאת עמד בראש הפת"ח (תמליל שיחה ת/98ח עמ' 67). כך הסביר הנאשם בחקירתו גם את העובדה שאנשי החוליות פנו אליו לקבלת כסף, משום שראו בו "מפקדי", וכן **"אחראי של פת"ח בגדה המערבית"**, בשל היותו הדובר הפוליטי של התנועה, ומשום שנקט קו ועמדות התומכים במאבק בכיבוש (תמליל ת/ 98ח עמ' 4-3, 61, ת/98ד/ עמ' 35-33). הנאשם הסביר כיצד נראה בעיני אנשי החוליות, באומרו : **"אני המפקד שלהם, הם חושבים אותי לסמל שלהם"**, ואף אישר כי אין אדם אחר שנחשב כמנהיג שלהם (ת/98ט עמ' 7-6).

בדברים שהשמיע במהלך משפטו טען הנאשם לא פעם כי הוא היה "מנהיג פוליטי" בפת"ח, בהדגישו את תפקידו כמזכ"ל הפת"ח בגדה, והיותו חבר הפרלמנט הפלסטינאי. כך גם טען בתחילת חקירתו בשב"כ. גם בחקירתו במשטרה הכחיש הנאשם כי היה אחראי על התנזים או על גדודי חללי אלאקצא (ת/106 עמ' 3, 6). ואולם במהלך חקירתו בשב"כ הודה הנאשם כי היה מפקד הפת"ח בגדה ומפקד התנזים (זכ"ד ת/18 סי 3 שהוגש ואושר על ידי החוקר "נדב" בעמ' 78), וכי הקים את גדודי חללי אלאקצא והיה אחראי על פעילותם ; מטעם זה התנגדו לפעילותו מנגנוני הביטחון של הרשות (דברי פלוני 1 בזכ"ד ת/117 סי 15, שהוגש על ידי החוקר "רוברטו" בעמ' 154).

הנאשם אמר למדובב "פלוני 3" בשיחתם, כי הוא אכן אחראי על הפת"ח ועל גדודי חללי אלאקצא, אך הוא "לא משוגע לחתום" את שמו על דף נייר בו הדברים ירשמו ; כאשר המדובב אמר לנאשם כי הוא בכל זאת אחראי למעשי המפגעים, השיב הנאשם כי הוא אמנם אחראי אך "הוא לא טיפש לומר זאת לחוקרים" (זכ"ד ת/123 עמ' 2, שהוגש על ידי החוקר "אופירי"). במפגש בין הנאשם לבין אחמד ברגותי בעת מעצרם, כאשר הוקלטו ללא ידיעתם, סיפר הנאשם לאחמד כי אמר בחקירתו שאין לו כל קשר לגדודי חללי אלאקצא. השניים צחקו, ואחמד יעץ לנאשם לומר כי רק לו - לאחמד - יש קשר עם הגדודים ; הנאשם השיב לו כי אמר בחקירתו שהיה מפטר את אחמד לו ידע שיש לו קשר עם הגדודים, ואחמד צחק למשמע הדברים (תמליל שיחה ת/127ג עמי 87).

הנאשם אישר בחקירתו כי לבד מהיותו מנהיג פוליטי, הוא גם שימש כאחראי על העניינים הצבאיים של הפת"ח (זכ"ד ת/59 סי 6 שהוגש ואושר על ידי החוקר "ואדיי" בעמי 96). הנאשם הגדיר עצמו כ"**אחראי על כל הפעילות של התנזים בפת"ח באזור שלו**" (תמליל ת/98א עמ' 42). הוא אף הודה כי היה "**אחראי לכל הנעשה כגון אספקת כספים לחוליות, רכישות נשק וביצוע פיגועים**" (זכ"ד ת/29 סי 1ג שהוגש ואושר על ידי החוקר "סמיית" בעמי 85), וכי הוא נחשב כ"**מפקד צבאי**", וכ"**אחראי על העניינים הצבאיים של הפת"ח**", בנוסף להיותו מנהיג פוליטי ונבחר ציבור (זכ"ד ת/19 סי 2 וזכ"ד ת/59 סי 5- 6, שהוגשו ואושרו על ידי החוקר "מופזי" בעמי 58).

הנאשם אמר כי בשנה שקדמה למעצרו "**החל מוצא עצמו יותר ויותר עוסק בענייני עסק בענייני אמל"ח וענייני פעילות צבאית**" (זכ"ד ת/25 סי 19, שהוגש ואושר על ידי החוקר "מופזי" בעמי 58, וכן ראה תמליל שיחה ת/98א עמי 15). הוא הסביר כי היה ליטול חלק חייב בפעילות הצבאית" על מנת לשלוט ברחוב הפלסטינאי ולדחוק את רגלי החמא"ס והג'יהאד האיסלאמי, ועל מנת שיוכל להצביע על עצמו בעתיד כעל מי שפעל הן למען השלום והן במלחמה (זכ"ד ת/52, שהוגש ואושר על ידי החוקר "סמיית" בעמי 85).

ג.    **עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם ומעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו**

18.    התביעה איננה טוענת כי הנאשם יזם או נטל חלק ישיר בביצוע הפיגועים נשוא כתב האישום, שכן היא ערה לכך שמחומר הראיות עולה כי מפקדי השטח ופעילי הטרור הוקנו סמכויות רחבות ומרחב תמרון רב בביצוע הפיגועים, והם לא נדרשו לקבל אישור מהנאשם לכל פיגוע. התביעה גם מסכימה כי הנאשם לא ידע מראש על כל פיגוע ופיגוע: הוא היה מודע באופן כללי לפעילותם של מפקדי השטח ופעילי הטרור הכפופים לו, אשר פעלו בהתאם למדיניות הפיגועים שהוא היה שותף לעיצובה; לעיתים עודכן לפני הפיגוע, ולעיתים עודכן בדיעבד (עמ' 47 לסיכומי התביעה).

כפי שעולה מהראיות שתפורטנה להלן, היה הנאשם מנהיגם של חוליות הטרור מקרב התנזים וגדודי חללי אלאקצא. לפחות חלק מחברי חוליות אלו סרו למרותו, ופעלו על פי המדיניות שהתוותה. בנוסף על כך, עולה בבירור מן הראיות שהנאשם סייע למפקדי החוליות ופעילי הטרור באספקת אמצעי לחימה ומימון כספי. במספר מקרים אישר הנאשם מראש ביצוע פיגועים כנגד ישראל. יש, אפוא, לבחון בפרק זה מי היו פעילי הטרור שפעלו תחת הנהגתו של הנאשם, ומה היו קשריו של הנאשם עם פעילים אלו. בפרק הבא יבחנו הפיגועים שבהם היו מעורבים פעילי טרור אלו, ומידת הקשר של הנאשם אליהם.

(1)    **נאצר עויס**

19.    נאצר עויס (להלן: "**עויס**") היה אחד מפעילי הטרור הבכירים של התנזים באזור שכם. בגין פעילותו זו הוא נדון בבית משפט זה ל - 14 מאסרי עולם ועוד 50 שנות מאסר בפועל במוצקטבר (ת/172א1-ב). בעדותו (עמ' 180-182) סרב עויס להשיב על שאלות, ולאחר שהוכרז כעד עוין הוגשו הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/172 – ת/177). הדבר היחיד שהיה מוכן עויס לומר בעדותו הוא כי כל מה שנרשם בהודעותיו הם שקרים של השב"כ, וגם כתב היד המופיע בהודעותיו הוא של אנשי השב"כ. הוא טען כי עבר אמצעי חקירה מאוד קשים.

ההודעות שמסר עויס במשטרה נכתבו בכתב ידו ותורגמו לעברית על ידי החוקר שגבה את ההודעות ואישר את גבייתן, ואף העיד כי ההודעות נגבו מרצונו החופשי של עויס (רס"מ רוני עמאר בעמ' 191-192). כמו כן, הוגשו דוחות שרשמו חוקרי השב"כ על דברי עויס בחקירתו (ת/178א-ד). דברים אלו אושרו על ידי חוקרי השב"כ, שהעידו כי הדברים נאמרו על ידי עויס מרצונו החופשי, אם כי מודעו במסמך שאינט משקף אלא את תמצית החקירה, ולא את הדברים כפי שנאמרו מילה במילה ("אריאל" בעמ' 203, "עדי" בעמ' 204, "יואל" בעמ' 204-205). זכ"ד ת/178ג' נרשם בידי החוקר "צדוק", שלא התייחס אליו בעדותו (עמ' 84-83), ולא חזר להעיד לאחר עדותו של עויס, ולכן יש להתעלם ממנו.

20.    עויס סיפר בהודעתו ת/172ב (עמ' 1-2), שנכתבה בכתב ידו, כי לאחר פרוץ "אינתיפאדת אלאקצא" בחודש ספטמבר 2000, הוא החל לבצע פיגועים כנגד מטרות ישראליות, ובאותה עת עבד במנגנון הביטחון הלאומי הפלסטיני בשכם בדרגה של סרן (נקיב). הוא ביצע פיגועי ירי ופיגועים נוספים נגד מטרות ישראליות באזור יהודה ושומרון ובתוך ישראל, ופרט בהודעותיו ת/172-ת/174 פיגועים אלו, שכללו ירי לעבר עמדות צבאיות ורכבים צבאיים; מסירת אמצעי לחימה לאחרים לשם ביצוע פיגועי התאבדות בירושלים, בנתניה וחדרה, ועוד.

21.    עויס אמר בהודעותיו כי ביצע את הפיגועים בשם גדודי חללי אלאקצא, והסבירו כי גוף זה משתייך לתנועת הפת"ח ותנזים הפת"ח, וכי הנאשם היה האחראי על התנזים    (ת/172ב עמ' 3). עויס אמר כי המימון לפיגועים בא מאנשי התנזים, וכי הנאשם עצמו מימן את הנשק לפיגועים בהם

היה מעורב עויס - לעיתים באופן ישיר, ולעיתים באמצעות מאג'ד אלמצרי - בידיעו שעויס מבצע פיגועים נגד מטרות ישראליות. במקרה אחד העביר הנאשם לעויס שיק מאושר על ידי היו"ר ערפאת (עמ' 7-6). עוד אמר עויס בחקירתו כי היה בקשר עם הנאשם לכל אורך הזמן; הוא נשאל אם הנאשם ידע על כך שהוא מבצע מבצע פיגועים כנגד מטרות ישראליות, והשיב (עמ' 4-5):

**"כן ידע ושמי אף פורסם בעיתונות ובטלוויזיה וברדיו והייתי משוחח עמו מידי פעם וכשהמצב הפוליטי היה מתדרדר ורע לנו היה מבקש שנמשיך בפיגועים וכשנפגש שמעון פרס ועמיר שרון עם מנהיגים ברשות התקשר אליי מרואן ברגותי וביקש שנעצור את הפיגועים... באותה תקופה היה זיני בזאור ומרואן אמר לי שעדיף מאחד וההגנרל זיני נפגש עם מנהיגים ברשות שלא נבצע פיגועים בשם חללי אלאקצא ויש לציין שהתקדמו בשיחות לא בוצעו פיגועים".**

הנאשם הביע כעס בפני המדובב "פלוני 1" על כך שעויס הודה בחקירתו כיצד נהג הנאשם בעת ביקורו של הגנרל זיני באזור (ת/113א סעיפים 8-9, ת/114א סעיף 8, שהוגשו ואושרו על ידי החוקר "רוברטי" בעמ' 154, ותמליל חקירת הנאשם ת/98ח עמ' 3).

22.     אשר לקשריו עם הנאשם, אמר עויס בחקירתו בשב"כ כי הגיש לנאשם בקשת סיוע עבור שורה של פעילי שטח, וכי הוא עצמו קיבל שלוש פעמים כסף מהנאשם (זכ"ד ת/178א סעיף 10). הנאשם היה הממונה עליו בתנזים, והעביר לו ולפעילים אחרים סיוע כספי, לאחר קבלת אישור מהיו"ר ערפאת (ת/178ב סעיף 10). בדרך כלל קיבל עויס את הכספים מהנאשם באמצעות המתווך מאג'ד אלמצרי, אך לעיתים היה הנאשם שולח לו כספים בצורה ישירה; עויס לא נהג לומר לנאשם מה מטרת הכסף, אך ברחבי הגדה ידעו היטב מה טיב הפעילות של עויס (ת/178א סעיף 5יא).

עויס אמר בחקירתו כי הפיגועים של התנזים בוצעו בידיעת מנהיגי התנזים ובסיועם. לאחר הפיגוע באולם השמחות בחדרה, וכל זמן שהתנהלו שיחות עם ישראל, הם היו מורים על הפסקת הפיגועים; ואולם כאשר השיחות לא התקדמו, שבו הפעילים לבצע פיגועים, עד שניתנה להם הוראה חדשה על ידי המנהיגים להפסיק. במסגרת זו נתן הנאשם הוראה להפסיק את הפיגועים בעת ביקורם של הגנרל זיני ומנהיגים מרוסיה ומאירופה בארץ (ת/178ד סעיף 5י').

23.     דבריו של עויס בחקירתו בכל הנוגע לקשריו עם הנאשם נתמכים בדברים שאמר הנאשם בחקירתו בשב"כ. כאשר הופגשו הנאשם ועויס במהלך החקירה (ת/79ב), ועויס החל לקרוא את הודעתו במשטרה, ציווה עליו הנאשם לומר כי מדובר בזיוף, ועויס אכן מיהר לומר כך (החוקר "צדוק" בעמ' 84). ואולם הנאשם עצמו אישר בחקירתו כי עויס היה הפעיל הצבאי הבכיר ביותר של תנזים פת"ח בשכם, ואחראי על גדודי חללי אלאקצא בשכם (זכ"ד ת/90 סי' 7, שהוגש ואושר על ידי החוקר "סטיבי" בעמ' 53). הנאשם הודה כי ידע שעויס מבצע "פעילות צבאית" ענפה, וכאשר רצה להבטיח הפסקה של הפיגועים היה פונה גם לעויס ומורה לו על הפסקת הפיגועים (זכ"ד ת/24 סי' 6, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85, ותמליל שיחה ת/98ט עמ' 3-2).

הנאשם הודה כי מסר לידי עויס באמצעות מאג'ד אלמצרי ואחמד ברגותי סכום כספי של כ- 20,000 ₪, ואולי אף 50,000 - 70,000 ₪, למימון פעילותו, וכי קיבל אישור לכך מהיו"ר ערפאת, בלא שציין את מטרת הסיוע הכספי (זכ"ד ת/19 סי' 16, שהוגש ואושר על ידי החוקר "מופזי" בעמ' 58; זכ"ד ת/38 סי' 4, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85; זכ"דים ת/40 סי' 8 ו- ת/41 סי' 9, שהוגשו ואושרו על ידי החוקר "מופזי" בעמ' 58; תמליל חקירה ת/98טט עמ' 4-3). הנאשם אף הודה

כי חלק מהכספים שהעביר לידי עויס נועדו לרכישת 1000 כדורים לרובה M-16 ולרובה מסוג "גלילי", ואף הצהיר כי הוא "מקבל אחריות על כל הכסף שנאצר (עויס) קיבל עבור מימון פיגועים בשטחים הכבושים, עבור רכישת כלי נשק ותחמושת" (ת/41 סי׳ 9-6).

עוד אישר הנאשם בחקירתו כי עויס הפעיל חוליות שהיו מאורגנות תחת פיקודו של הנאשם (זכ״ד ת/29 סי׳ 1, שהוגש ואושר על ידי החוקר "סמיתי" בעמ׳ 85). אך הנאשם הדגיש כי הוא עצמו לא הורה לעויס לבצע פיגועים (זכ״ד ת/31 סי׳ 6). לעומת זאת, המדובב "פלוני 1" העיד כי הנאשם אמר לו כי נתן לעויס הוראות לבצע פיגועים (עמ׳ 104).

הנאשם הודה הוא כי לאחר הפיגוע בנווה יעקב בו נרצח עטרה (הנאשם לא זכר איזה מהם) שלח אליו עויס את הכרוז הנוטל אחריות, והנאשם אישר זאת בשיחה עם עויס (זכ״ד ת/49 סעיף 7, שהוגש ואושר על ידי החוקר "אמילי" בעמ׳ 54, וזכ״ד ת/52 שהוגש ואושר על ידי החוקר "סמיתי" בעמ׳ 85).

<u>(2)        נאצר נאג׳י אבו חמיד</u>

**24.**        נאצר נאג׳י אבו חמיד (להלן: **"אבו חמיד"**) היה אחד ממנהיגי התנזים וגדודי חללי אלאקצא באיזור ירושלים ורמאללה, ואף היה היה כפוף לנאשם וקיבל ממנו סיוע לצורך ביצוע פיגועים כנגד ישראל. בגין פעילותו זו נדון אבו חמיד, על סמך הודאתו, לשבעה מאסרי עולם ועוד 50 שנות מאסר במצטבר (ת/148א-ב). בעדותו סרב אבו חמיד להשיב על שאלות כלשהן, הוכרז כעד עוין והודעותיו משטרה הוגשו לפי סעיף 10א. לפקודת הראיות (עמ׳ 41-40). הודעות אלו (ת/ 149א-ד) הוגשו באמצעות חוקרי המשטרה אברהים אלקרעאן, יעקב ברזני ומשה לוי (עמ׳ -194 195, 207, 211), אשר העידו כי אבו חמיד מסרן מרצונו החופשי וחתם עליהן. ההודעות נמסרו בעברית לפי בקשתו של אבו חמיד, אשר לדבריו החוקרים דובר עברית היטב.

**25.**        בהודעותיו פרט אבו חמיד את פיגועי הרצח כנגד ישראלים בהם היה מעורב, וסיפר כי פנה אל הנאשם לקבלת כספי לרכישת תחמושת, והנאשם הפנה אותו אל קרובו אחמד ברגותי המכונה "אלפרנסי"; הלה אכן מסר כמה פעמים לאבו חמיד כסף לרכישת נשק ותחמושת (ת/149 א, עמ׳ 9, ת/149ג עמ׳ 6-5). גם חברים אחרים בחוליה של אבו חמיד פנו לנאשם לקבלת כספים לצורך רכישת נשק (ת/149ג עמ׳ 6). בשלב מסוים פנה אבו חמיד לנאשם לשם מימון רכישת מקלע, ובסופו של דבר הכסף למטרה זו ניתן לו על ידי אחמד ברגותי (ת/149א עמ׳ 7). אבו חמיד אף סיפר כי הנאשם נפגש עם סוחר נשק בעניין רכישת רימוני יד, שהיו לבסוף רק רימוני הלם (עמ׳ 8-7).

אבו חמיד אמר כי הוא הקים את גדודי חללי אלאקצא לאחר תחילת האינתיפאדה בחודש דצמבר 2000 (עמ׳ 4). הוא הסביר כי הוצע לו לצרף את החוליה שברשותו עמד למנגנונו הביטחוני של הרשות הפלשתינאית בראשות תאופיק טיראווי, אך הוא העדיף את הצעתו של הנאשם להיות כפוף לו, ולקבל ממנו משכורת לו ולאנשיו, כיוון שראה בנאשם "מנהיג פוליטי שלא ישקר" (ת/149א עמ׳ 16-15).

לאחר מכן גייס אבו חמיד פעילים נוספים לתמיכה בנאשם, הקים את גדודי חללי אלאקצא, והחל לבצע פיגועים כנגד מחסומי צה״ל והמתנחלים (עמ׳ 17). הוא אמר לגבי הנאשם כי ראה בו "מנהיג פוליטי", אם כי הוא עצמו השתייך לפלג הצבאי של הארגון (עמ׳ 17). כאשר נהרג מפקד החוליה, הכיר אבו חמיד את יורשו לנאשם (ת/149ג עמ׳ 7).

באחת מהודעותיו סיפר אבו חמיד על אירוע בו נכח יחד עם חברי חוליה אחרים, ואחד מהם סיפר לנאשם על כוונתו לבצע פיגוע באזור שכם, וביקש מהנאשם סיוע ברכישת נשק ומכונית, וכן ביקש מהנאשם ליצור קשר עם עויס על מנת שיעזור בביצוע הפיגוע. אבו חמיד אמר כי הנאשם התקשר עם עויס, שאכן סייע לחולייה לבצע פיגוע; לאחר הפיגוע הוא דיווח לנאשם כי בהתיקלות עם חיילי צה״ל איבדו חברי החוליה את הנשק, והנאשם הבטיח לטפל בנושא (ת/149ג עמ׳ 9).

P 7: 000384

לקראת סוף שנת 2001, כאשר החל ירי מרגמות לעבר ישובים ישראליים, שוחח אבו חמיד עם הנאשם על הצורך להשיג מרגמות בעלות טווח ירי גדול יותר. אבו חמיד פנה אל הנאשם לשם מימון רכישת פצצות המרגמה, והנאשם השיב לו כי מחירן גבוה מדי, וכי "יש לו הפתעה" בעניין זה, כפי שיסביר לו אחמד ברגותי, ואחרון הסביר לאבו חמיד כי יש כבר בידיהם מרגמה ופצצות (ת/149ג עמ' 10). אבו חמיד אף דיווח לנאשם על ביצוע ירי מרגמה לעבר הישוב פסגות, והנאשם ביקש שלא לספר לו על כך לאיש, באומרו כי אם ערפאת ידע על כך הוא יכניס אותו לכלא (עמ' 11).

**26.**   מהודעותיו של אבו חמיד ניתן להתרשם שהוא השתדל למנוע מן הנאשם מעורבות ישירה בפיגועים, ואף אמר לפעילים האחרים שלא לסבך את הנאשם במעשיהם, שכן הנאשם צריך להישאר "מנהיג פוליטי" (ת/149ג עמ' 8-9, 12). במסגרת ניסיונו של אבו חמיד לחפות על מעורבותו של הנאשם בפיגועים, הוא ניסה לגמד גם את חלקו של אחמד ברגותי, שהיה מקורבו ועוזרו של הנאשם; אבו חמיד הודה כי ניסה תחילה להעלים את חלקו של אחמד ברגותי ברצח טליה ובנימין כהנא ז"ל, אשר בוצע באמצעות נשק שמסר אחמד ברגותי למפגע (ת/149ג עמ' 5, וראה פרטי האירוע בפרק ה(1) להלן).

**27.**   הנאשם הודה בחקירתו כי הנחה את עלי עאידיה (איש הכספים שלו) לרכוש אמל"ח עבור הפעילות של התנזים, ולהעביר את האמל"ח לאבו חמיד. הנאשם אף מתייחס בחקירתו לאירוע המתואר בהודעתו של אבו חמיד, הנוגע לרכישת רימונים מקולקלים (זכ"ד ת/43 סי' 5-2, שהנושא ואושר על ידי החוקר "רוברטי" בעמ' 62). הנאשם הודה כי החוליות של אבו חמיד זכו לסיוע מצדו בסכום של כ- 40,000 ₪ (זכ"ד ת/63 סי' 20, שהנושא ואושר על ידי החוקר "נאורי" בעמ' 82). הנאשם אמר כי כאשר קיבל החלטה אסטרטגית לבצע פיגועים הוא הקים חוליה, כאשר את הפיגועים הוביל, בין היתר, אבו חמיד (זכ"ד ת/35 סי' 1, שהנושא ואושר על ידי החוקר "דני" בעמ' 90). כאשר נשאל הנאשם בחקירתו מי מאנשי חוליות הפיגועים היו תחת שליטתו, הוא אמר על אבו חמיד: "הוא נחשב עלי" (תמליל שיחה ת/98איא עמ' 34, שבו בטעות נרשם בעברית "אחמד" במקום אבו חמיד).

### (3)   אחמד ברגותי

**28.**   אחמד ברגותי (המכונה "אלפרנסיי") הוא קרוב משפחה של הנאשם, אשר היה עוזרו הקרוב, בנוסף על היותו נהג ושומר ראשו של הנאשם (ראה דבריו בהודעתו ת/165א עמ' 1, וזכ"ד ת/165ו שהנושא ואושר על ידי החוקרים "אדם" ו"דני" בעמ' 200-201). אחמד ברגותי אמר בחקירתו כי היה נתון למרותו המלאה והישירה של הנאשם (זכ"ד ת/165י שהנושא ואושר על ידי החוקר "אדם" בעמ' 201). אין זה מקרה שאחמד ברגותי נעצר יחד עם הנאשם, שכן שמו עולה בחומר הראיות בהקשרים רבים הנוגעים לפיגועים שבוצעו פעילי השטח של התנזים וגדודי חללי אלאקצא.

אחמד ברגותי סירב להשיב על שאלות כלשהן בעת עדותו (עמ' 161-163), ולאחר שהוכרז כעד עוין הוגשו הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/165א-ה). הודעות אלו הוגשו ואושרו על ידי השוטרים דוד מזרחי, יצחק יעקובוב ומשה משה (בעמ' 184, 171 ו- 206-207). החוקרים העידו כי תחקרו את אחמד ברגותי בערבית, אך רשמו את עדותו בעברית (שלא על פי המקובל והנדרש). כל החוקרים העידו כי ההודעות נמסרו מרצונו החופשי של הנחקר.

כמו כן הוגש מסמך שכתב אחמד ברגותי בכתב ידו בערבית ותורגם (ת/165(ג)(2-1)), והוא הודה בחקירתו כי כתב מסמך זה בכתב ידו (מזרחי בעמ' 185). בנוסף, הוגשו על ידי חוקרי השב"כ זכ"דים שרשמו במהלך חקירתו של אחמד ברגותי (ת/165ו-יט, שהנושא ואושר כדלקמן:ת/165ז על ידי "אדם" בעמ' 201 ו"דני" בעמ' 200; ת/165ח על ידי "אדם" בעמ' 201; ת/165יג על ידי

"אדם" בעמ' 201; ת/165יד על ידי "דני" בעמ' 200). הזכ"דים ת/165ז-ח, ת/165יא-יב ו- ת/165
טו לא זכו להתייחסות כלשהי בעדויותיהם של חוקרי השב"כ "מיקי", "ארבלי", "אדם" ו"דקלי",
ולכן יש להתעלם מהם.

**29.** אחמד ברגותי סיפר בחקירתו כי הוא ועויס היו האחראים על גדודי חללי אלאקצא בשנה
שקדמה למעצרו (הודעה ת/165ה). הוא סיפר בהודעותיו על מעורבותו הישירה והעקיפה בפיגועים
שבוצעו כנגד ישראל, ועל כלי נשק והרכב שסיפק לפעילי השטח שיצאו לבצע פיגועים שונים
באזור יהודה ושומרון ובתוך ישראל, כולל פיגועי התאבדות.

באשר לפיגוע במסעדת **"סי פוד מרקט"** בתל-אביב, סיפר אחמד ברגותי כי כאשר קיבל הודעה
שהמפגע אברהים חסונה עומד לצאת ולבצע את הפיגוע, וגם כאשר דווח לו כי הלה כבר יצא לדרכו
עם מוביליו, הוא התקשר לנאשם והודיעו על כך; הנאשם אישר את הפיגוע **לפני** ביצועו, אך הורה
שלא יבוצע בתוך ישראל אלא בשטחים; אחמד ברגותי אמר לו: "יהיה בסדר" (זכ"ד ת/165י"ג
שהוגש ואושר על ידי החוקר "אדם" בעמ' 201 וזכ"ד ת/165יד שהוגש ואושר על ידי החוקר "דני"
בעמ' 200). מייד לאחר ביצוע הפיגוע ב"סי פוד מרקט", שאחמד ברגותי עצמו היה מעורב בהוצאתו
לפועל, הוא התקשר אל הנאשם בשעה 03:15 לפנות בוקר ודיווח לו על ביצוע הפיגוע; הנאשם
נשמע מרוצה (הודעה ת/165ה עמ' 1, זכ"ד ת/165יד). לדברי אחמד ברגותי, אמר לו הנאשם להודיע
לעויס שלא ליטול אחריות על פיגוע זה קודם שידבר עם הנאשם, שכן הנאשם היה מעוניין לנסח את
הכרוז (ת/165ה עמ' 1, וזכ"ד ת/165יד). אחמד ברגותי נשאל מדוע דיווח על הפיגוע לנאשם, והוא
השיב: **"למרואן ברגותי הודעתי באופן רגיל".**

**30.** אחמד ברגותי סיפר בחקירתו גם על הפיגוע **בתחנת הדלק בגבעת זאב**, שנעשה כנקמה על
חיסולו של ראד כרמי. לדבריו, הוא ביקש מהמבצע אבו סתחה שלא להודיע על כך מראש לנאשם.
אך אבו סתחה שוחח עם הנאשם על כך, והנאשם אמר לו שלא לבצע את הפיגוע, כנראה משום
שחשש לחייו של אבו סתחה שהיה שומר ראשו (זכ"ד ת/165גג עמ' 2 וזכ"ד ת/165יג שהוגש ואושר
על ידי החוקר "אדם" בעמ' 201). זו אחת הדוגמאות לניסיונו של אחמד ברגותי במהלך כל
החקירות לחפות על מעשי הנאשם, שכן הנאשם עצמו נטל בחקירתו אחריות לפיגוע זה, וברור
מדבריו שהוא הורה על ביצועו (ראה סעיפים 66(5) ופרק ה(7) להלן).

במקרה אחר, עליו סיפר אחמד ברגותי בחקירתו, דחה הנאשם את בקשתה של צעירה בת 15 לבצע
פיגוע התאבדות, באומרו **"שהיא עוד צעירה לעשות זאת"**, והורה לאחמד ברגותי להודיע לה זאת
(ת/165גג עמ' 4, וזכ"ד ת/165יג סי' 2י, שהוגש ואושר על ידי החוקר "אדם" בעמ' 201). גרסה דומה
עולה מדברי הנאשם בחקירתו (זכ"ד ת/25 סי' 7-6, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85,
ותמליל חקירה ת/98א עמ' 9-8).

במקרה נוסף עליו סיפר אחמד ברגותי, התקשר ג'יהאד ג'יערה לנאשם בבקשה לבצע פיגוע,
והנאשם אמר לו שלא לעשות זאת בתוך ישראל או בירושלים; ואולם ג'יערה השאיר מכונית תופת
שהתפוצצה למחרת ליד קניון מלחה בירושלים, חרף דברי הנאשם (ת/165 עמ' 18). דברים אלו
אושרו על ידי הנאשם בחקירתו (ראה סעיף 66(ה) ופרק ה(20) להלן).

**31.** לאורך כל חקירתו, ניכרת אצל אחמד ברגותי מגמה ברורה לגמד ולהעלים את מעורבותו
של הנאשם בפיגועים השונים. כאשר היה מזכיר את שמו של הנאשם, היה זה בדרך כלל על מנת
לציין שהנאשם התנגד לביצוע הפיגוע. עם זאת, אחמד ברגותי אישר בהודעה שנכתבה בכתב ידו כי
שורה של פעילי שטח בחוליות קיבלו כספים ממשרדו של הנאשם ובידיעתו, וכי הכספים שקיבל
מהנאשם שימשו אותו לצורך ביצוע פיגועים שלו ושל אחרים (הודעה ת/165ג(1) עמ' 6, הודעה ת/

165ג עמי 2 וזכ״ד ת/165יג סי 2ג ו- 2ז שהוגש ואושר על ידי החוקר ״אדם״ בעמי 201).

כמו כן ברור מדברי אחמד ברגותי כי הנאשם היה מורה לו מדי פעם להפסיק או לדחות את ביצוע הפיגועים (זכ״ד ת/165יג סי 2ח, שהוגש ואושר על ידי החוקר ״אדם״ בעמי 201). מכאן עולה כי במקרים אחרים הם בוצעו באישורו של הנאשם, גם אם לא ידע מראש על כל פיגוע ופיגוע.

**32.**    בתחילת חקירתו ניסה הנאשם לגונן על קרוב משפחתו אחמד ברגותי, וטען כי נעצר עמו משום ״שעבר במקרה במקום״ (זכ״ד ת/9 סי 10 שהוגש ואושר על ידי החוקר ״רוברט״ בעמי 62). הנאשם טען כי אחמד ברגותי הפסיק לעבוד אצלו כנהג כשמונה חודשים לפני מעצרו, ואין שום קשר ביניהם בנוגע לביצוע פיגועים (זכ״ד ת/10 סי 1, שהוגש ואושר על ידי החוקר ״דני״ בעמי 90, וזכ״ד ת/21 סי 23, שהוגש ואושר על ידי החוקר ״רוברט״ בעמי 63). בחקירתו במשטרה טען הנאשם כי אחמד ברגותי לא היה מזכיר או אג שומר ראש שלו (ת/104 עמי 4). בגישתו שהיתה בין הנאשם לאחמד ברגותי בעת מעצרם, ושהוקלטה ללא ידיעתם, תיאמו השניים עמדותם לגבי החקירה, ואחמד ברגותי אמר לנאשם כי הוא בחקירה שהוא אינגי קשור לפיגועים, אלא רק שימש כנהג; הנאשם אמר כי גם הוא אמר כך (תמליל שיחה ת/127ג עמי 2-3). אחמד ברגותי סיפר לנאשם באותה פגישה מה בדיוק אמר בחקירותיו לגבי הנאשם, כשהם מתייחסים לפיגועים השונים אליהם התייחס אחמד ברגותי בחקירתו (עמי 4).

ואולם, בהמשך בחקירתו בשב״כ אישר הנאשם כי ידע שאחמד ברגותי קשור למספר חוליות ולביצוע פיגועים רבים כנגד ישראל, וכי כאשר ביקש להפסיק את הפיגועים היה מודיע זאת גם לאחמד ברגותי. לדבריו, אמר לאחמד ברגותי שהוא ״לא מרשה״ לבצע פיגועים בתוך ישראל (תמליל ת/98יא עמי 18-20). הנאשם אמר כי היה תיאום בינו לבין אחמד ברגותי, שכלל דיווח ומתן כספים, וכי מבחינתו אחמד ברגותי היה אחראי על הפעילות הצבאית באזור רמאללה ביחד עם אבו אמדיר, וכי השניים היו מבצעים פיגועים באמצעות מספר חוליות (זכ״ד ת/27 סי 3-2 שהוגש ואושר על ידי החוקר ״סמית״ עמי 85).

הנאשם הודה כי היה נותן כסף לאחמד ברגותי, ותמך בפעולותיו, אף כי טען שאחמד ברגותי לא היה מדווח לו **לפני** ביצוע פיגועים (תמליל ת/98ח עמי 3, 17, 24-20, וזכ״ד ת/24 סי 4, שהוגש ואושר על ידי החוקר ״סמית״ בעמי 85).

הנאשם הודה כי אחמד ברגותי היה מדווח לו **לאחר** ביצוע פיגועים (תמליל ת/98י עמי 25-19, 40, ותמליל ת/98יא עמי 9). בשיחתו עם המדובב ״פלוני 1״, אמר הנאשם כי אחמד ברגותי שילח ארבעה פיגועי התאבדות באישורו (עדות המדובב בעמי 106). דברים אלו תואמים דברים שאמר הנאשם בחקירתו, כאשר נטל אחריות על כמה פיגועים אותם אישר אישית (ראה סעיף 66 להלן).

הנאשם לא הסתיר כי מסר לאחמד ברגותי עשרות אלפי דולרים לרכישת כלי נשק שונים, כגון רובי סער ואקדחים, עבור אנשי החוליות שביצעו פיגועים כנגד ישראל. אחמד ברגותי היה האחראי מטעם הנאשם על רכישת הנשק. הוא פעל תחת פיקודו של הנאשם, והיה אחראי על ״הפעילות הצבאית״ באזור רמאללה. הנאשם הודה כי ידע שאחמד ברגותי קשור לפיגועים כנגד ישראל, ובניגתם פיגועים בירושלים ובי׳סי-פוד מרקטי׳ בתל אביב (לכל אלה ראה: זכ״ד ת/23 סי 4-5 שהוגש ואושר על ידי החוקר ״דני״ בעמי 90; זכ״ד ת/25 סי 11-10 שהוגש ואושר על ידי החוקר ״מופז״ בעמי 58; ת/27 סי 2, 4 ו- ת/29 סי 1 שהוגש ואושר על ידי החוקר ״סמית״ בעמי 85; ת/28 סי 4 שהוגש ואושר על ידי החוקר ״אבו ואדי״ בעמי 96; ת/65 סי 4 ו- ת/70 סי 9 שהוגש ואושר על ידי החוקר ״סטיב״ בעמי 53; וכן ראה דברי הנאשם בתמלילים ת/98י עמי 6-2, ת/98ח עמי -20 24, ת/98י עמי 11-10 ו- ת/98יא עמי 8).

**לסיכום קשרי הנאשם עם אחמד ברגותי**, ניתן לומר כי הקשר של הנאשם עם הטרור היה באמצעות קרובו ומקורבו אחמד ברגותי. כפי שאמר הנאשם בחקירתו על אחמד: ״**הוא יוצר קשר עם החוליות האלה. באופן ישיר איתם ישירות. יעני בלעדיו לא היתה לי התקשרות ישירה עם אף**

**חוליה"** (תמליל ת/98יא עמ' 8). כאשר נשאל הנאשם בחקירתו מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, השיב הנאשם כי אחמד ברגותי היה **"חלקית תחת שליטתי וחלקית עבד עם נאצר (עויס)"** (תמליל שיחה ת/98יא עמ' 34).

<u>(4)    **מוחמד מצלח (אבו סטחה)**</u>

**33.**    מוחמד מצלח המכונה "אבו סטחה" (להלן : **"אבו סטחה"**) היה פעיל שטח נוסף, שעמד בראש חוליה אשר ביצעה פיגועי רצח. הוא גם היה שומר ראשו של הנאשם בתקופה מסוימת, ומקורב אליו. בגין פעילותו זו הורשע אבו סטחה על פי הודאתו ונדון לעונש של 9 מאסרי עולם במצטבר (ת/155א-ג). בעדותו פתח אבו סטחה והצהירה כי לא היה לו שום קשר עם הנאשם, וכי הנאשם הוא **"אדם פוליטי"** שאין לו קשר עם ה"פעולות הצבאיות". מעבר לכך לא היה מוכן אבו סטחה להשיב על שאלה כלשהי, ולפיכך הוכרז כעד עוין והוגשו הודעותיו במשטרה ת/156א-ג לפי סעיף 10א. לפקודת הראיות (עמ' 68-66).

ההודעה ת/156א לא הוגשה באמצעות מי שגבה אותה (השוטר יעקב ברזאני), ולפיכך יש להתעלם ממנה. ההודעות ת/156ב-ג הוגשו ואושרו על ידי השוטרים מרקו דהאן ומשה לוי (בעמ' 198, 210), אשר העידו כי ההודעות נמסרו מרצונו החופשי של אבו סטחה. החקירה התנהלה בשפה הערבית אך ההודעות נרשמו בעברית (שלא על פי המקובל והנדרש).

בהודעותיו מפרט אבו סטחה את הפיגועים שביצע, ומדבריו עולה שאחמד ברגותי, עוזר הקרוב של הנאשם, היה מעורב ברבים מהם בצורה ממשית.

**34.**    הנאשם אישר בחקירתו כי אבו סטחה עבד במשרדו ופעל תחת אחריותו, באמצעות אחמד ברגותי, וכי הוא ידע שאבו סטחה ביצע פיגועים שונים כנגד אזרחים גבעת זאב ובפםגת זאב (זכ"ד ת/30 סי' 3-2, שהוצג ואושר על ידי החוקר "אמילי" בעמ' 54, תמליל ת/98יא עמ' 35). כאשר נשאל הנאשם מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, הוא כלל בהם את אבו סטחה, באומרו : **"אני לא בורח מזה"** (תמליל ת/98יא עמ' 34).

<u>(5)    **ג'מאל אחויל**</u>

**35.**    ג'מאל אחויל (להלן : **"אחויל"**) היה פעיל שטח נוסף שקיבל סיוע מהנאשם, והיה איש הקשר שלו במחנה הפליטים בג'נין.

אחויל סירב להשיב על שאלות בעת עדותו, הוכרז כעד עוין והוגשה הודעתו במשטרה ת/166 לפי סעיף 10א. לפקודת הראיות (עמ' 165-164), באמצעות השוטר מטאנס חדאד שגבה אותה (עמ' 169). אחויל כתב את הודעתו בכתב ידו, וחדאד תרגם אותה לעברית.

אחויל פעל במסגרת גדודי חללי אלאקצא, ואמר בחקירתו כי קיבל סיוע כספי, בין היתר, מהנאשם, והיה מחלק כסף זה לפעילים אחרים, וביניהם מבוקשים על ידי צה"ל; חלק מהכסף שימש לרכישת נשק (ת/166 עמ' 1). אחויל היה בקשר רצוף עם הנאשם, והיה מדווח לו על פעילותם גדודי חללי אלאקצא, ועל המתרחש במחנה ג'נין; לעיתים היו הפעילים בגדודים אלו מדווחים לנאשם באופן ישיר, כפי שהיה עושה עויס (ת/166 עמ' 5).

הנאשם הכחיש בחקירתו במשטרה כי הכיר את אחויל (ת/106 עמ' 6). אך בחקירתו בשב"כ אמר הנאשם כי אחויל היה מנהיג מחנה הפליטים בג'נין, וחבר בגדודי חללי אלאקצא, אשר השתייך לחוליות של עויס. הנאשם הכיר היטב את אחויל, אך טען שמעולם לא מסר לידיו נשק או כסף, אם

כי אחוויל פנה אליו בבקשות סיוע; הנאשם הסביר כי היה פועל מול עויס, ועויס היה זה שהיה ממלא את בקשותיו של אחוויל (זכ"ד ת/31 סי 7-9, שהוגש ואושר על ידי החוקר "מופז" בעמי 58). כמו כן אישר הנאשם כי העביר לערפאת את בקשותיו של אחוויל לקבלת סיוע (זכ"ד ת/67 סי 4 שהוגש ואושר על ידי החוקר "אמילי" בעמי 54).

<div dir="rtl">

**(6)     נאצר א-שויש**

**36.**     נאצר א-שויש (להלן: **"שויש"**) היה אף הוא פעיל בפיגועים שביצעו גדודי חללי אלאקצא. בגין פעילות זו הורשע על פי הודאתו, ונדון ל- 4 מאסרי עולם במצטובר (ת/157א-ד). שויש סירב לענות על שאלות בעדותו, אך טען כי הנאשם הוא מנהיגו פוליטיי שאין לו קשר ל"ענינים צבאיים". הוא הוכרז כעד עוין, הכחיש את הדברים שאמר בחקירתו, ואף טען כי לא הודה בכלום (עמי 69- 71). הודעותיו של שויש ת/158א-ב הוגשו לפי סעיף 10א. לפקודת הראיות, באמצעות השוטרים מטאנס חדאד ועוואד עטאף (עמי 165, 168).

גובי ההודעות העידו כי ההודעות נרשמו בערבית בכתב ידו של הנחקר מרצונו החופשי, ותורגמו לעברית על ידי החוקרים. השוטר חדאד העיד כי נכח במשפטו של שויש, והלה אישר שם את ההודעה בטרם הורשע, שכן לא היה לו סניגור.

**37.**     בחקירתו (הודעה ת/158א, עמי 6 והודעה ת/158ב, עמי 2-4) סיפר שויש כי קיבל חגורת נפץ במשקל של כ- 18 ק"ג במפקדת המודיעין המסכל ברמאללה על מנת לשמור אותה ברכבו. לאחר מכן פגש את הנאשם בבית החולים בו טופלה אשתו, והנאשם ביקש לשוחח אתו בנפרד. בשיחתם שאל אותו הנאשם האם הוא מכיר אנשים אשר יודעים כיצד להכין חגורת נפץ, או כאלה שיש להם חגורת נפץ. באוזני מעמד התקיימו שויש לאדם שמסר לו את חגורת הנפץ (מזויד אלמצרי), וקיבל את הסכמתו למסור אותה לנאשם, והנאשם הודיע לו שאחמד ברגותי ישוחח איתו בעניין. למחרת התקיימו אחמד ברגותי אל שויש, והאחרון מסר לו את חגורת הנפץ. שויש שמע באותו יום כי האדם שהחזיק את החגורה נתפס בירושלים בדרכו לביצוע פיגוע התאבדות.

שויש נשאל בחקירתו האם הנאשם ידע על פיגועי התאבדות ופעילות צבאית, והשיב כי יום לפני ביצוע פיגוע ההתאבדות על ידי מחמוד חשאיכה נפגש שויש עם הנאשם, וסיפר לו כי אדם בשם עבד אלכרים אמור לשלוח מתאבד לישראל; הנאשם אמר לשויש להתקשר אליו אם יזקק לדבר מה בקשר לפיגוע, נתן לו סכום של 600 דולר, וביקש לעדכן אותו בפרטי הפיגוע (עמי 6-7). הפיגוע בוצע בירושלים, ואז התקשר הנאשם אל שויש, אשר אמר לו כי הפיגוע בוצע על ידי גדודי חללי אלאקצא. הנאשם ביקש ממנו להביא לו את הקלטת המצ(צ)לומת של המתאבד חשאיכה (עמי 6-7 להודעה ת/158א). בהודעתו השניה ת/158ב סיפר שויש על הסיוע הכספי הכסף(?) שקיבל מהנאשם (עמי 5).

**38.**     הנאשם הכחיש בחקירתו במשטרה כי הכיר את שויש, וכן הכחיש בהודעתו את דבריו של שויש (ת/106 עמי 7-9). לא הובאו בפנינו ראיות נוספות על האירועים הנ"ל אליהם התייחס שויש בחקירתו, ולכן אין כל חיזוק לדבריו אלו, ולא ניתן לסמוך ממצאים עליהם.

**(7)     עלי עיאדיה**

**39.**     עלי עיאדיה (להלן: **"עיאדיה"**) היה פעיל בתנזים שעסק בעיקר בהדרכת צעירים בשימוש בנשק, ובעניין זה פעל בהנחיית הנאשם. כמו כן השתתף בביצוע פיגועי ירי לעבר חיילים. בעדותו סרב להשיב על שאלות שנשאל, וטען כי הנאשם הוא "איש שלום" (עמי 169-171). לפיכך הוכרז עד עוין, והודעתו ת/168 הוגשה לפי סעיף 10א לפקודת הראיות, באמצעות השוטר יעקב ברזני, שגבה אותה בשפה הערבית ותרגמה לעברית (עמי 208).

</div>

**.40**   עיאדיה סיפר בחקירתו על מעורבותו של הנאשם בקורס הירי לצעירים (ת/168, עמ' 2-1), ועל הפגועים שהוא עצמו ביצע. כמו כן אמר עיאדיה: **"ראש התנזים מרואן ברגותי היה יודע מכל אירועי הירי אותם ביצעו פעילי התנזים עוד לפני שעשו אותם והוא הסכים להם"** (עמ' 5). הוא ציין כי כמה חודשים לפני מעצרו ביקש ממנו הנאשם "לקנות נשק מכל סוגי", ולהעבירו דרך אבו חמיד (עמ' 5).

הנאשם הכחיש בחקירתו במשטרה את הדברים שאמר עיאדיה בחקירתו (ת/106 עמ' 7). ואולם באחת מחקירותיו הודה הנאשם כי הורה לעיאדיה לרכוש אמל"ח ולמסרם לאבו חמיד (זכ"ד ת/43 ס' 3, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 92), דבר שמחזק את דברי עיאדיה בחקירתו.

### (8)   איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ער

**.41**   איסמעיל רדאידה (להלן : **"רדאידה"**) ביקש לבצע פיגוע, ופנה בעניין זה לנאשם. הוא ביצע את את פיגוע הירי במעלה אדומים שבו נרצח הנוזי היווני גרמנוס ציפוקטיקוס ז"ל (ראה פרק ה(3) להלן). בגין פעילותו החבלנית הורשע רדאידה על פי הודאתו, ונדון למאסר עולם ועוד 20 שנות מאסר במצטבר. בעדותו בתיק זה (עמ' 44-42) סירב רדאידה להשיב על שאלות, הוכרז כעד עוין והודעותיו במשטרה הוגשו מכוח סעיף 10א. לפקודת הראיות (הודעות ת/151א-א,ת/151ג, הודעה בכתב יד ת/151ד שנקראה, שוחזרה ותורגמה, וקלטות בה שיחזר רדאידה את רצח הנוזי ותומללה - ת/151א).

הודעותיו של רדאידה הוגשו על ידי החוקרים מרקו דהאן ויצחק יעקבוב, שגבו את ההודעות בערבית, אך רשמו אותן בעברית (בניגוד למקובל ולנדרש), והעידו כי הן נמסרו מרצונו החופשי של רדאידה. הודעתו של רדאידה ת/151ד נרשמה בכתב ידו בנוכחות יעקבוב (עמ' 171, 198). עורך השיחזור (מרקו דהאן) לא התייחס לכך בעדותו, ועל כן יש להתעלם מקלטות השיחזור, בהיותה אמרת חוץ של עד שלא הוגשה כדין.

**.42**   בהודעתו הראשונה (ת/151א) סיפר רדאידה כי החליט לבצע פיגוע כאשר ראה בטלוויזיה שתינוקת פלסטינאית נהרגה, ועל כן ניגש למשרדו של הנאשם. השיחה ביניהם התנהלה ביחידות, ורדאידה אמר לנאשם כי הוא רוצה לבצע פיגוע ודרוש לו נשק לשם כך. הנאשם הפנה את רדאידה אל אדם בשם מוהנד (אבו חלאוה) שכינויו "עלאא" (להלן : **"מוהנד"**), והורה למוהנד לחשש נשק לרדאידה. בהודעתו השניה (ת/151ב) הוסיף רדאידה כי הוא הביהר לנאשם שהנשק דרוש לו על מנת לבצע פיגועים נגד מטרות ישראליות, ואז הפנה אותו הנאשם אל מוהנד. מוהנד אמר לרדאידה כי ישיג לו שני רובי קלצ'ניקוב, וכי מעתה ואילך הקשר שלו יהיה עם מוהנד ולא עם הנאשם. כעבור כשבועיים התקשר מוהנד אל רדאידה, אשר בינתיים צירף אדם נוסף לפיגוע, והודיע כי הנשקים מוכנים. רדאידה קיבל את הנשקים והתחמושת ממוהנד, אשר תדרך את רדאידה ואת חברו כיצד להפעילם.

לאחר כמה ימים בהם הכינו רדאידה וחברו את הפיגוע, ותיצפתו לעבר כביש מעלה אדומים, הם ביצעו את הפיגוע, כאשר פתחו בירי לעבר הרכב שבו נסע הנוזי ונמלטו. למחרת התברר לרדאידה בחדשות כי הרג נזיר יווני, ומוהנד התקשר אליו ובא אליו בטענות על כך ; רדאידה הסביר כי חשב שמדובר במתנחל. רדאידה נשאל בחקירתו מדוע פנה לנאשם כאשר החליט לבצע פיגוע, והשיב כי ראה את הנאשם כמה פעמים בטלוויזיה והבין **"שהוא האדם היחיד שיכול לעזור לי בהשגת הנשק"** (עמ' 5).

בהודעתו השלישית (ת/151ג), גילה רדאידה כי כוונתו המקורית היתה לעשות פיגוע התאבדות, אך הנאשם אמר לו : **"פיגועי התאבדות זה העבודה של החמאס והג'יהאד האיסלמי ושהתנזים עושה פיגועים נגד הצבא והמתנחלים"**.

**רדאידה** הוסיף ואמר: **"מרואן ברגותי אמר שהוא מוכן לתת לי אמל"ח כדי שאני אעשה פיגועים נגד חיילים ונגד מתנחלים"** (עמ' 1). גרסתו הנ"ל של רדאידה עולה גם מן המסמך שכתב בכתב ידו (ת/151ד), אם כי בצורה מתומצתת יותר.

43.     דבריו של רדאידה נתמכים בדברי הנאשם בחקירתו (תמליל ת/98יא עמ' 37-38, ותמליל ת/98ד עמ' 2-4, 11-12 שבהם נרשם בטעות השם אימעמיל אלדבע במקום אימעמיל רדאידה). בחקירתו במשטרה הכחיש הנאשם כי מוהנד עבד במשרדו או היה סגנו, ואמר כי מוהנד לא קשור לתנזים (הודעה ת/102 עמ' 3, ת/103 עמ' 5, ת/105 עמ' 2, ת/106 עמ' 1). גם בתחילת חקירתו בשב"כ הכחיש הנאשם כי הכיר את רדאידה, וכי מוהנד עבד במשרדו (זכ"ד ת/9 ס' 8-9 וזכ"ד ת/21 ס' 22 שהוגשו ואושרו ע"י החוקר "רוברטי" בעמ' 62-63).

ואולם בהמשך חקירתו הודה הנאשם כי רדאידה בא אליו בהצעה לבצע פיגוע התאבדות, והנאשם אמר לו: **"אנחנו לא עובדים בפיגועי התאבדות"**. הנאשם הפנה אותו אל מוהנד, ואמר למהנד שרדאידה **"צריך אימון...תמצא לו מישהו"**. כמו כן אמר הנאשם: **"שיכנע איתו מוהנד וניסו לעשות פיגוע פה במעלה אדומים או במקום אחר, אני ידעתי יותר מאוחר... אז הם ירו על הרכב ונפצע מישהו אלחורי... נהרג יעני"** ("אלחורי" משמעותו "יכומרי" בערבית - ע.ב.). הודאה דומה של הנאשם בגיוסו של רדאידה לשם ביצוע פיגועים באמצעות מוהנד עולה מדבריו שאמר בחקירותיו (ראה: זכ"ד ת/22 ס' 12-16 וזכ"ד ת/40 ס' 9 שהוגשו ואושרו על ידי החוקר "מופז" בעמ' 58, זכ"ד ת/23 ס' 6 שהוגש ואושר על ידי החוקר "דני" בעמ' 90, ותמליל חקירתו של הנאשם ת/98ד עמ' 21-26, ות/98ז' עמ' 8).

עוד הודה הנאשם בחקירתו כי נפגש עם מוהנד, והעביר לו כספים לצורך ביצוע פיגועים, לאחר שמוהנד סיפר לו כי החולים של כי ביצעה מספר פיגועים, כולל רצח בני הזוג כהנא ז"ל. הנאשם אמר כי נתן למוהנד סך של כ- 3,000 דולר ואף נשק (זכ"ד ת/43 ס' 14-16 שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 62; זכ"ד ת/59 ס' 10 שהוגש ואושר על ידי החוקר "ואדיי" בעמ' 56; זכ"ד ת/67 ס' 6 שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54; זכ"ד ת/68 שהוגש ואושר על ידי החוקר "סטיבי" בעי' 53).

בתמליל חקירתו של הנאשם (ת/98ד עמ' 21-23), הוא מספר על כך שמוהנד הודיע לו שהחוליה שלו נתפסה, והסביר שמוהנד התייחס **"לאלה שאנחנו סידרנו להם נשק"**.

44.     קשריו של הנאשם עם מוהנד עולים גם מדברים שאמר בהודעתו כמאל אבו ועד (להלן: **"ועד"**), לפיהם היה הוא מקבל כסף ממוהנד בידיעתו ובהוראתו של הנאשם. בדרך זו קיבל מהנאשם, באמצעות מוהנד, סכום של כ- 25,000 ₪, שרובו יועד לייצור מרגמה וקניית אקדחים. בשלב מסוים חל הנאשם להתקשר ישירות אל ועד, ולברר מהם צרכיו. כמו כן אמר ועד בחקירתו כי הנאשם היה מעביר לו כספים גם דרך ג'מאל אחויל, וכי לאחר ביצוע הפיגוע במירج התקשר אליו הנאשם כדי לברר שמות האנשים שהשתתפו בפיגוע, על מנת להעביר להם כספים (ת/181ב עמ' 4-5 , וזכ"ד ת/181ד סעי' 6). וער אמר בחקירתו כי הוא ומוהנד היו מחלוטים ביניהם למה הוא זקוק, ואז הנאשם היה שולח להם את הכסף; הנאשם נהג להתקשר לוער ולברר שהכסף ששלח לו עם מוהנד אכן הגיע (זכ"ד ת/181ד סעי' 6.1). בשלב מסוים ניתק הקשר בין ועד לבין מוהנד, והנאשם אמר לוער כי יש לו בעיות כלכליות, ואין לו כסף לקניית כדורים; בשלב זה הפנה הנאשם את וער לג'מאל אחויל לצורך קבלת כספים (זכ"דים ת/181ג סעי' 15 ו- ת/181ד סעי' 6.1).

45.     וער ביצע מספר פיגועי ירי במסגרת פעילותם של גדודי חללי אלאקצא, והוא פרט את הפיגועים בהם השתתף בהודעותיו במשטרה ובחקירותיו בשב"כ. בעדותו סרב לחשוף על שאלות (עמ' 188-189), ולפיכך הוגשה הודעתו במשטרה (ת/181א-ב) לפי סעיף 10א. לפקודת הראיות, באמצעות החוקר גדיר אבו סאלח, שהעיד כי היא נמסרה מרצונו החופשי של ועד בשפה הערבית, אך

נרשמה בעברית (עמ׳ 209). כמו כן הוגשו שני זכ״דים מחקירתו של ועד בשב״כ (ת/181ג-ד, שהוגשו באמצעות החוקר ״נווה״ בעמ׳ 205). אמרות החוץ של ועד אמנם אינן נתמכות בראיות נוספות, אך הובאו ראיות רבות על הסיוע שהגיש הנאשם לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

### (9)  נאסר (חלום) נאג׳י אבו חמיד

**46.**  נאסר חלום נאג׳י אבו חמיד (להלן: **״חלום״**) הוא אחיו של אבו חמיד, והוא ביצע פיגועי ירי מסגרת גדודי חללי אל-אקצא. חלום היה מעורב בפיגוע בו נורתה למוות גלית גלית ארביב ז״ל בנווה יעקב ירושלים (ראה פרק ה(10) להלן). הוא גם השתתף בהכנת הפיגוע הקטלני במסעדת ״סי פוד מרקט״ בתל אביב (ראה פרק ה(12) להלן). הוא הורשע על פי הודאתו ונדון לעונש של חמישה מאסרי עולם מצטברים (ת/161א׳-ב׳).

בעדותו סרב חלום להשיב על שאלות (עמ׳ 76-73), וטען כי הנאשם הוא מנהיג פוליטי שאין לו קשר עם ״עניינים צבאיים״. לפיכך הוגשו הודעותיו במשטרה (ת/162א׳-ג׳ על ידי השוטרים מזרחי ואלקרעאן בעמ׳ 184, 194). הקשר של חלום היה עם אחמד ברגותי, שהיה עוזרו הקרוב של הנאשם.

### (10)  זיאד חמודה

**47.**  זיאד חמודה (להלן: **״חמודה״**) היה פעיל בתנזים. בעדותו סרב חמודה להשיב על שאלות, ולאחר שהוגשה הודעתו לפי סעיף 10א. לפקודת הראיות, כאשר הוכרז כעד עויין, הוא טען כי חתם על הודעתו על מנת שיעשו לו ניתוח אפנדציט (עמ׳ 197-166). הוא הכחיש את הדברים שאמר בהודעתו ת/167ב׳, וטען כי הנאשם הוא ״איש שלום״. הודעתו של חמודה נגבתה על ידי השוטר אבי עקיבא, אשר לא הובא לעדות, ולפיכך היא לא הוגשה כדין ויש להתעלם ממנה.

חמודה הורשע על פי הודאתו בשורה ארוכה של עבירות ביטחוניות (ת/167א). בכתב האישום בו הודה חמודה, נטען כי הוא גויס לתנזים על ידי הנאשם, לצורך הכשרה צבאית, והובטח לו כי הנאשם ידאג לו לסיוע כספי. כמו כן נטען בכתב האישום בו הודה חמודה כי הוא פנה אל הנאשם לקבלת נשק לצורך ביצוע פיגועי ירי לעבור הישוב פסגות, והנאשם הפנה אותו אל מוהנד לצורך קבלת נשק (פרט חמישי ופרט שביעי לכתב האישום). בחקירתו בשב״כ אישר הנאשם כי חמודה ביקש ממנו נשק, ולמיטב זכרונו לא קיבל זאת (זכ״ד ת/34 ס׳ 5 שהוגש ואושר על ידי החוקר ״איתי״ בעמ׳ 52).

במקום אחר בחקירתו אמר הנאשם כי ייתכן שחמודה קיבל ממנו רובה MP-5 (תמליל חקירה ת/98י׳ עמ׳ 67). אין בחומר הראיות דבר המפליל את הנאשם זולת הודאתו של חמודה בעובדות כתב האישום לפיו הורשע, ולא ניתן לבסס ממצאי כלשהו על סמך הודאה שכזו (ראה סעיף 132(ג) להלן). אך הובאו ראיות רבות אחרות בדבר הסיוע שהגיש הנאשם לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

### (11)  ריאד עמור

**48.**  ריאד עמור (להלן: **״עמור״**) היה פעיל שטח נוסף של התנזים, שפרט בחקירתו את הפיגועים בהם נטל חלק. בעדותו סרב עמור להשיב על שאלות (עמ׳ 174-172), וטען כי לא היה לו קשר עם הנאשם. הוא הוכרז כעד עויין, והודעותיו ת/169א׳-ב׳ הוגשו באמצעות השוטרים דוד מזרחי ויעקב ברזאני, שהעידו כי עמור מסר אותן וחתם עליהם מרצונו החופשי (עמ׳ 186,208). ההודעות נגבו בערבית ונרשמו בעברית (שלא על פי המקובל והנדרש). עמור הורשע עפ״י הודאתו בביצוע פיגועים רבים (ת/169ג׳-ד׳).

P 7: 000392

**.49**　　עמור סיפר בחקירתו כי פגש את הנאשם כחצי שנה לפני מעצרו, והנאשם אמר לו כי הוא
מרוצה מהפעילות של עמור וחבריו בבית לחם, וכי עדיף שיעשו פיגועים כנגד הצבא ולא כנגד
מטרות אזרחיות, כי **"זה עושה בעיות"**, וי**"גורם כאב ראש ליו"ר"** (ת/169אי עמי 3, ת/169בי עמי
11). הנאשם טען בחקירתו במשטרה כי איננו מכיר כלל את ריאד עמור
(ת/104 עמי 9), ואין כל ראיה לסתור טענה זו זולת אמרת החוץ של עמור הטעונה חיזוק, שלא
נמצא לה. אך הובאו ראיות רבות אחרות בדבר עמדתו הכללית של הנאשם בעד ביצוע פיגועים כנגד
חיילים ומתנחלים.

**(12)　　נאצר חאגי**

**.50**　　נאצר חאגי (להלן: **"חאגי"**) פעל אף הוא במסגרת הפת"ח, ופרט בהודעתו ת/170אי את
הפיגועים בהם נטל חלק. בעדותו סרב תחילה להשיב על שאלות, ולאחר מכן הכחיש את כל מה
שאמר בחקירתו (עמי 176-175).
לפיכך הוגשה הודעתו לפי סעי 10א. לפקודת הראיות, באמצעות החוקר משה לוי, שהעיד כי חאגי
מסר את ההודעה מרצונו החופשי לאחר שהוזהר בדבר זכויותיו (עמי 212-211).

בהודעתו הנ"ל אמר חאגי כי פנה יחד עם פעילים אחרים למשרדו של הנאשם בבקשה לקבל כספים
ונשק. הנאשם אמר להם לחפש נשק, וכי הוא יממן את רכישתו. מאוחר יותר נתן לו הנאשם 1,200
דולר לצורך רכישת נשק (עמי 5-4). אין בחומר הראיות דבר לחיזוק אמרת החוץ של חאגי
הטעונה חיזוק, אך הובאו ראיות רבות לסיוע שהגיש הנאשם לאנשי השטח ברכישת נשק לצורך
ביצוע פיגועים.

**(13)　　תחריר ברגותי**

**.51**　　תחריר ברגותי (להלן: **"תחריר")**, שהוא קרוב משפחה של הנאשם, ביצע על פי מה שמסר
בחקירתו פיגועי ירי רבים. הוא סרב להשיב על שאלות בבית משפט (עמי 178-177), ולפיכך הוגשו
הודעותיו במשטרה לפי סעי 10א. לפקודת הראיות (ת/171אי-די), באמצעות השוטר יעקב ברזאני
שגבה אותן, והעיד כי ההודעות נמסרו מרצונו החופשי של תחריר בשפה הערבית, ותורגמו לעברית
לאחר מכן (עמי 207).

**.52**　　תחריר אמר בחקירתו כי פנה אל הנאשם בבקשה לסייע לו להקים חוליה. הנאשם הבטיח
לעזור לתחריר בכסף ובתחמושת, ולסייע לאנשיו אם ייעצרו. הנאשם אף הציע לתחריר להיות
אחראי על החוליה, ולהתרחק מפעילות בעצמו. תחריר הסביר בחקירתו כי פנה אל הנאשם על מנת
לקבל נשק לחוליה שהקים (ת/171די עמי 3). לאחר מכן נמשך הקשר באמצעות מוחנד, שרמז לו כי
הנאשם אינו מעוניין שהוא יקח חלק בפעילות; הנאשם עצמו הסביר לתחריר כי עמדתו זו נובעת
מכך שחברי החוליה שלו הם נוכלים (ת/171 עמי 4).

הנאשם הכחיש בחקירתו במשטרה את כל דבריו של תחריר (ת/104 עמי 9-10). ואולם בחקירתו
בשב"כ הודה הנאשם כי תחריר פנה אליו על מנת לבצע פיגועים, וביקש נשק לצורך כך,
אלא שלטענת הנאשם הוא לא נענה לבקשה (זכ"ד ת/30 סי 1, שהוגש ואושר על ידי החוקר **"אמילי"**
בעמי 54). אין בחומר הראיות דבר זולת אמרת החוץ של תחריר, הטעונה חיזוק שלא נמצא,
לסתירת טענתו של הנאשם. אך הובאו ראיות רבות לכך שהנאשם סייע לכך שהנאשם סייע לאנשי חוליות הטרור
לרכוש נשק לצורך ביצוע פיגועים.

**(14)　　אחמד מוצפר**

**53.** אחמד מוצפר היה סוחר נשק שסיפק כלי נשק לאנשי התנזים ולגדודי חללי אלאקצא. בעדותו (עמ׳ 186-188) סרב להשיב על שאלות, והתכחש לכל מה שאמר בחקירתו. מוצפר הוכרז כעד עוין והודעתו במשטרה הוגשה לפי סעיף 10א (ת/179), באמצעות החוקר יעקב ברזאני, שהעיד כי ההודעה נמסרה לאחר שמוצפר קיבל אזהרה לגבי זכויותיו, וחתם על ההודעה שנגבתה בערבית, אך נרשמה בעברית (עמ׳ 208).

בהודעתו סיפר מוצפר על פגישה שלו ושל חבריו במשרדו של הנאשם, יומיים לפני הריגתו של ראיד כרמי. הנאשם אמר להם כי הם צריכים להמשיך בפעילות בכפר מגוריהם, ולא ברמאללה, והבטיח לעזור להם. לאחר מותו של כרמי קיבל מוצפר הוראה לבצע פיגוע נקמה; ההוראה הגיעה ממחמוד ג׳אבר, שעבד במשרדו של הנאשם, ולכן הבין מוצפר שמדובר בהנחיה של הנאשם (ת/179 עמ׳ 7-6). הנאשם הכחיש בחקירתו במשטרה את דבריו של מוצפר (ת/104 עמ׳ 3), ואין ראיה לחיזוק אמרת החוץ של מוצפר, זולת הראיות הרבות שהובאו בדבר קריאתו של הנאשם לנקום בדרך פיגוע את מותו של כרמי.

### (15) שריף נאג׳י

**54.** שריף נאג׳י (להלן: ״שריף״), היה חבר בחוליה של אחיו אבו חמיד, שביצעה פיגועים כנגד אורחים ישראלים, והוא גם היה שומר ראשו של הנאשם. שריף היה זה שליווה את המתאבד אברהם חסונה, אשר ביצע את הפיגוע ב״סי פוד מרקט״ בתל-אביב, הוא פירט בהודעתו את כל מעלליו.

שריף, כמו יתר חבריו, סרב בעדותו להשיב על שאלות, פרט לכך שטען כי הכיר את הנאשם רק מהטלוויזיה. הוא הוכרז כעד עוין והודעתו ת/182, אליה צורף כתב ידו המתורגם בערבית ת/182א, הוגשה באמצעות החוקר אבי בן לולו, שהעיד כי ההודעה נמסרה מרצונו החופשי של שריף (עמ׳ 210).

**55.** בהודעתו ת/182 מספר שריף על פיגועי הירי שביצע לעבר חיילים ומתנחלים במסגרת ארגון התנזים של פתח״ח. הוא הסביר כי ביצע את הפיגועים על מנת שהאינתיפאדה תימשך דווקא משום שהוא מעוניין בשלום, והוסיף: **״כך היו אומרים לנו ערפאת ומרואן ברגותי וחוסין אשיך היו אומרים בטלוויזיה הפלשתינאית ובאלג׳זירה... הם היו אומרים שאם האינתיפאדה תימשך אז אנחנו נקבל יותר שטחים ויותר דברים מישראל״** (עמ׳ 4). הנאשם הכחיש בחקירתו במשטרה אמירת דברים אלו (ת/103 עמ׳ 5).

לאחר שהחוליה של שריף התפרקה בשל מותו של מוחמד עומסי, החל שריף לשמש כשומר ראשו של הנאשם במשך כחצי שנה עד למעצרו. הוא אמר בחקירתו על הנאשם: **״הייתי שומע אותו אומר לאנשים שלו שימשיכו בפיגועים והיה אומר זאת בטלוויזיה הישראלית והערבית באופן חופשי״** (עמ׳ 5). בחלקה השני של הודעתו סיפר שריף על חלקו בפיגוע במסעדת ״סי פוד מרקט״ בתל-אביב, ועל מעורבותו של אחמד ברגותי בפיגוע (עמ׳ 11-5). הנאשם הכחיש בחקירתו כי היה לו קשר כלשהו עם שריף, אם כי הכיר אותו (זכ״ד ת/34 ס׳ 4, שהוגש ואושר על ידי החוקר ״איתי״ בעמ׳ 52). ואולם הדברים שאמר שריף נתמכים בראיות רבות שהובאו על כך שהנאשם היה קורא באמצעי התקשורת לבצע פיגועים כנגד ישראל, וכך אף הורה לאנשיו לעשות.

### (16) אמיד אבו רדאחה

**56.** אמיד אבו רדאחה (להלן: ״אבו רדאחה״) היה פעיל נוסף בתנזים שביצע פיגועי ירי לעבר חיילים ומתנחלים, כפי שסיפר בחקירתו. בעדותו טען שלא היה לו שום קשר עם הנאשם ועם אחמד ברגותי, וכי לא קיבל נשק מהנאשם אלא מהרשות הפלשתינאית.

הוא טען שהחוקרים כתבו בהודעתו דברים שלא אמר, והכחיש את הדברים המופיעים בהודעתו
(עמ' 192-194). הודעתו של אבו רדאחה (ת/183) הוגשה באמצעות החוקר מאיר כהן, אשר העיד כי
ההודעה נמסרה מרצונו החופשי של אבו רדאחה, נגבתה בערבית אך נרשמה בעברית (שלא על פי
המקובל והנדרש), והנחקר חתם עליה (עמ' 209).

**.57**     אבו רדאחה סיפר בהודעתו כי את הנשק והתחמושת לביצוע פיגועים קיבל מהנאשם
ומאחמד ברגותי, שאף נתנו לאנשי החוליה כסף להוצאות שוטפות (עמ' 2, 6). הנאשם הכחיש
בחקירתו במשטרה את דבריו של אבו רדאחה (ת/104 עמ' 3). ואולם הובאו ראיות רבות על כך
שהנאשם עסק באספקת כספים ונשק לאנשי השטח של התנזים לצורך ביצוע פיגועים כנגד ישראל.

### (17)     אשרף ג'אבר

**.58**     אשרף ג'אבר (להלן: "ג'אבר") היה אף הוא פעיל שטח בתנזים, שביצע פיגועים כנגד מטרות
ישראליות יחד עם אחרים, וביניהם אבו רדאחה. ג'אבר סרב להשיב על שאלות בעדותו (עמ' -195
197), ולפיכך הוגשה הודעתו בצרוף שרטוט שערך (ת/184א-ב) באמצעות החוקר משה לוי, אשר
העיד כי ההודעה נמסרה מרצונו הטוב של הנחקר, נגבתה בערבית ותורגמה לעברית (עמ' 212).

**.59**     בהודעתו ת/184א סיפר ג'אבר על הפיגועים שביצע, וציין כי פנה עם חבריו למשרדו של
הנאשם בבקשה לקבל תחמושת וכספים לחברי החוליה; הנאשם הבטיח כי הוא ישלם עבור
התחמושת, ואכן עשה כן באמצעות אחמד ברגותי, שהכדורים נמסרו לו תמורת סך של 3,000 ש.
ג'אבר הסביר  כי מסר את הכדורים לנאשם, משום שהוא ראש התנזים והוא מחלק את הכדורים
לפעילי התנזים (עמ' 3-4).

הנאשם הודה בחקירתו כי ג'אבר ביקש ממנו סיוע כספי ונשק, אך אמר שאיננו זוכר מה בדיוק נתן
לו (זכ"ד ת/48 סי' 3-2, שהוגש ואושר על ידי החוקר "רוברטי"בעמ' 62).

### ד.     דברי הנאשם בחקירתו וראיות נוספות בדבר תפקידו ומעורבותו בפיגועים נגד
ישראל

### (1)     אחריותו הכוללת של הנאשם לפעילות חוליות הטרור ומידת שליטתו בהן

**.60**     הנאשם, כאמור לעיל, לא הכחיש בחקירתו בשב"כ כי היה מפקדם ומנהיגם של פעילי
השטח של הפת"ח בגדה, היה מפקד הפת"ח והתנזים בגדה, הקים את גדודי חללי אלאקצא והיה
אחראי על פעילותם. הוא גם אישר כי היה אחראי על אספקת כספים ואמל"ח לחוליות השטח, וכן
היה אחראי על פעילויות הצבאית (ראה סעיף 17 לעיל). הנאשם הסביר בחקירתו כי מצא עצמו
מעורב יותר ויותר בקשר עם "החוליות הצבאיות", אשר היו פונות אליו בבקשות סיוע שונות, שכן
אנשים כמו ראיד כרמי ונאצר עויס ראו בו את מפקדם. הוא גם אמר כי הקשר שלו עם אנשי
החוליות בוצע באמצעות עוזרו ונהגו האישי אחמד ברגותי. הנאשם עשה אבחנה בין פיגועים בתוך
ישראל, שעליהם סרב לקחת אחריות, לבין פיגועים שביצע הפת"ח בגדה המערבית, עליהם הוא
לוקח בחקירתו אחריות מלאה (זכ"ד ת/25 סי' 20, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58).
הנאשם הדגיש כי הוא אחראי לפעילות של הפת"ח בגדה, אך איננו בקיא בפרטים, כגון סוג הנשק,
אופן רכישתו, תכנון הפיגועים וביצועם (זכ"ד ת/27 סי' 1, שהוגש ואושר על ידי החוקר "סמיתי"
בעמ' 85).

בחלק מחקירותיו טען הנאשם כי הוא איננו אחראי באופן ישיר מבחינה פיקודית לפעילותן של
חוליות השטח (זכ"ד ת/42 סי' 7, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). ואולם בשלבים

אחרים של חקירתו הודה הנאשם כי הוא אחראי לפעילותיו של החוליות שפעלו עם אחמד ברגותי ואבו סטחאת, משום שאלה היו קרובים אליו והוא מימן את פעילותם ; ביתר פירוט הוא ציין כי הוא רואה עצמו אחראי לשלושה פיגועים, בגבעת זאב, בגבעה הצרפתית, ובגשר עטרה (המבוא לזכ"ד ת/ 38 שהוגש ואושר על ידי החוקר "סמית" עמ' 85). הנאשם לא ראה עצמו אחראי, בדבריו אלה, לפיגועים שביצעו החוליות של עויס, מנצור שרם ואחרים שצויין, ולא ראה עצמו כמפקדם. הנאשם אמר על יחסיו עם עויס : "אני יש לי שליטת כבוד על נאצר, לא שליטה בפועל" (תמליל שיחה ת/ 98יא עמ' 17). הנאשם הסביר בחקירתו, בהתייחסו לחוליות שביצעו פיגועים כנגד ישראל (תמליל שיחה ת/98יא עמ' 4) :

"החוליות האלה מצאה לעצמה יותר מכתובת אחת. מה זאת אומרת כתובת. כתובת שהיא פונה אליו ומבקשת מימון. לתאם איתו את העבודה שלה, אני אחד מהכתובות האלה, אני כתובת מכמה כתובות. ראשי מנגנוני הביטחון הם גם כתובות".

מכאן נובע כי לדברי הנאשם לפחות חלק מהחוליות תיאמו עמו את הפיגועים, וראו בו כתובת למימונם, כפי שאכן עולה מראיות רבות שהובאו בפנינו. הנאשם אמר בעניין זה כי הקשר שלו עם החוליות לא היה ישיר, משום שהוא לא רצה להיכנס לתחום הצבאי, ולא רצה לעסוק "בהרס" (תמליל שיחה ת/98יא עמ' 6). אכן, בעיקרו של דבר, הקשר של הנאשם עם חוליות הפיגוע התקיים באמצעות אנשי קשר שהיו מקורבים אל הנאשם, ועיקרי אחמד ברגותי. כפי שאמר הנאשם על אחמד ברגותי : "הוא יוצר קשר עם החוליות האלה. באופן ישיר איתם ישירות. יעני בלעדיו לא היתה לי התקשרות ישירה עם שום חוליה" (תמליל שיחה ת/98יא עמ' 8).

הנאשם טען אמנם כי חוליות השטח היו מבצעות פיגועים גם אלמלא תמיכתו בהן, וגם אלמלא הסיוע הכספי והארגוני שהעניק להן (זכ"ד ת/63 סי' 18-20 שהוגש ואושר על ידי החוקר "נאורי" בעמ' 82). טענה זו איננה מפחיתה במאומה מאחריותו של הנאשם לפיגועים שביצעו חוליות אלו.

61.    בתחילת חקירתו בשב"כ הכחיש הנאשם כי היה אחראי למתן כספים ונשק לשם ביצוע פיגועים (זכ"ד ת/14 סי' 4 שהוגש ואושר על ידי החוקר "גבי" בעמ' 93, זכ"ד ת/10 סי' 1, שהוגש ואושר על ידי החוקר "דני" בעמ' 90). ואולם בהמשך חקירתו הודה הנאשם (זכ"ד ת/29 סי' 1ג-ד שהוגש ואושר על ידי החוקר "סמית" בעמ' 85) :

"במסגרת תפקידי כמזכיר הפת"ח אני אחראי לכל הנעשה כגון אספקת כספים לחוליות, רכישות נשק וביצוע פיגועים. יש חוליות רבות בשטח, חלקן מאורגנות תחת פיקודי באמצעות מס' אנשים כגון אחמד ברגותי, נאצר עויס, ויש בשטח גם חוליות לא מאורגנות מטעם הפת"ח שאליהן ועימן אין לי קשר".

הנאשם לא התכחש ליכולת ההשפעה שלו על חוליות הטרור שלהן סייע בכסף ובמתן נשק, ואמר בהתייחסו לחוליה שכזו (תמליל בחקירתו ת/98ד עמ' 32) : "אם אתה קנית לה נשק, אם אתה נותן לה את הנשק, אם אתה מממן אותה ואתה מתכנן בשבילה. על זו אתה יכול להשפיע". ואולם הנאשם הוסיף : "משפיע, אתה לא יכול לשלוט" (שם, עמ' 37).

62.    הנאשם סיפר בחקירתו כי כאשר קיבל החלטה אסטרטגית לבצע פיגועים כנגד ישראל על מנת להתנגד לכיבוש, הוא הקים חוליה, וסיפק לה באופן לא ישיר כסף כספים ואמל"ח לצורך ביצוע פיגועים. הוא ציין כי את הפיגועים הוביל בעיקר אבו חמדי, אחמד ברגותי ועויס (זכ"ד ת/35 סי' 1, שהוגש ואושר על ידי החוקר "דני" בעמ' 90). מבחינתו, מי שהיה מטפל בפעילות הצבאית באזור רמאללה היו אחמד ברגותי ואבו חמדי, שהפעילו כמה חוליות (זכ"ד ת/27 סי' 2, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).