הנאשם הודה כי תמך באחמד ברגותי וסייע לו בכספים, וכי שהוא אחראי לביצוע פיגועים שונים (תמליל ת/98א עמי 24-20). כמו כן, הודה הנאשם כי היה מעודד את ראיד כרמי לבצע "פעילות כנגד הכיבוש", וסייע לו מבחינה כספית, כאשר בקשות הסיוע הועברו לערפאת שאישר אותם (זכ"ד ת/67 סי 8, שהוגש ואושר על ידי החוקר "אמיל" עמי 54). בחקירתו במשטרה, לעומת זאת, הכחיש הנאשם כל קשר עם ראיד כרמי (ת/104 עמי 8), ובתחילת חקירתו בשב"כ טען כי העביר לו כספים בלא כסימו לאיזו מטרה נועדו (זכ"ד ת/18 סי 5, שהוגש ואושר על ידי החוקר "נדב" בעמי 78).

**63.**   קשריו של הנאשם עם פעילי הטרור של הפת"ח, והסיוע השוטף שהגיש להם, עולים בבירור מן המסמכים שנתפסו על ידי צה"ל במבצע "חומת מגן" במשרדי הארגונים, כולל משרדו של הנאשם (קלסר ת/5).

התביעה הגישה חוות דעת של מומחה מז"יפ המוכיחה כי הנאשם חתום על חלק מהמסמכים, ולגבי חלקם האחר ניתן להסיק מסקנות מתחייבות מעצם העובדה שהם נשלחו אל הנאשם, או נמצאו במשרדו. רס"ין ל, סגן מפקד היחידה העוסקת באיסוף מסמכי שלל, העיד על תפיסת המסמכים, סימונם ומיונם (בעמי 48-46). המסמכים שנתפסו הועברו לחוקר השב"כ "עוגן" (ראה עדותו בעמי 48), אשר זיהה בעדותו את המסמכים שצורפו לכד"יים מחקירתו של הנאשם (עמי 50-48). הנאשם אמר בשיחתו עם אחמד ברגותי, שהוקלטה בלא ידיעתם של שניים, כי מדובר במסמכים שנתפסו במשרדו, והשניים היו מוטרדים מאוד מכך שתפסו את "כל הארכיון" של הנאשם; הנאשם אמר "**כל הארכיון המשרד, כאו**" (ת/127ג עמי 62-61).

חוות דעת מז"יפ לגבי כתב ידו של הנאשם (ת/5), ניתנה על ידי יאיר בן שמש, והיא התבססה על שלושה כתבי יד של הנאשם, שלגביהם הוא אישר בחקירתו כי הם נכתבו בכתב ידו (שלושת המסמכים בת/5 הם 12, 96-94 ו- 35, והנאשם מתייחס אליהם בזכ"דיים ת/28, ת/228א, ת/47, ת/85 ות/85א, שהוגשו ואושרו על ידי חוקרי השב"כ "יאדי"כ "ואדי"כ 96 וי"אופיר" בעמי 87). חוקר מז"יפ חילק את המסמכים לארבעה קטגוריות: אלה שנכתבו על ידי הנאשם ללא ספק של ממש; אלה שקיימת אפשרות סבירה שנכתבו על ידו; אלה שסביר מאוד שנכתבו על ידו; ואלה שהנאשם זיהה בחקירתו כי הם נכתבו על ידו. בחקירתו במשטרה הכחיש הנאשם לגבי כל מסמך שהוצג לו כי כתב ידו מופיע עליו (ת/109-108).

**64.**   מסמך ת/5 (5-3) הוא דו"ח שנשלח לנאשם ביום 8.5.01, וסוקר את פעילות גדודי חללי אלאקצא באזור גינין. בדו"ח מופיעים מספר החברים והמבוקשים בקרב גדודי חללי אלאקצא, חלוקתם של הגדודים, פירוט פעילותם והוצאות הפיגועים שביצעו.
בין הפעולות שביצעו הגדודים לפי מסמך זה מנויים פיגועי ירי בכביש יהודה ושומרון, הריגתם ופציעתם של מתנחלים, ופיגוע בתוך שטח ישראל (אום אלפאחם), שבו נהרג קצין ישראלי ונפצעה אזרחית. בנוסף כולל המכתב בקשה לסייע לגדודים מבחינה כספית.

---

### (2)   מעורבותו האישית של הנאשם בפיגועי הטרור שביצעו חוליות שתחת פיקודו

**65.**   מייד עם מעצרו טען הנאשם כי הוא "איש פוליטיי", אשר אינו מעורב בפעילות צבאית ובביצוע, תכנון, מימון או הנחיה של פיגועים נגד כוחות הביטחון או כנגד ישראלים (זכ"דים ת/6 סי 3 ות/9 סי 2 שהוגשו ואושרו ע"יי החוקר "רוברטי" בעמי 62, זכ"ד ת/14 סי 4 שהוגש ואושר על ידי החוקר "יגבי" בעמי 93). ואולם, בהמשך חקירתו בשב"יכ הודה הנאשם במעורבות עמוקה בפעילות "הצבאית", שהיא שפה נקיה לביצוע פיגועי רצח כנגד אזרחים ישראליים. במקרים מסוימים, כך מסתבר מדברי הנאשם, הוא אף הורה על ביצוע פיגועים באופן ספציפי, או נתן את האישור

המוקדם לביצועם.

הנאשם טען בחקירתו כי הוא עצמו מעולם לא תכנן פיגועים לפרטיו, וכי החוליות היו מערבות את אחמד ברגותי, ולא אותו, בביצוע הפיגועים שלא תמיד היו על דעתו (זכ"ד ת/72 סי' 3, שהוגש ואושר על ידי החוקר "דני" בעמ' 90). כך למשל הדגיש הנאשם כי הוא דחה את כל ניסיונותיו של אחמד ברגותי להביא אליו אנשים שיבצעו פיגועי התאבדות (זכ"ד ת/53 סי' 11-13, שהוגש ואושר על ידי החוקר "מופזי" בעמ' 58). עם זאת, הנאשם הודה כי הוא **"נושא באחריות קולקטיבית על הפעילות של אנשי הפת"ח הצבאיים"** (זכ"ד ת/21 סי' 14, שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 63). הנאשם אמר בחקירתו: **"אני לא הוצאתי פקודות לשום חוליה שואלה באנו ואמרנו ואלה אנו רוצים את הפיגוע פלוני במקום מסויים כזה, ומן זה אנחנו משאירים בשבילה ובשביל האווירה שלה, ולרצון האישי שלה..."** (תמליל שיחה ת/98יא עמ' 9).

לדברי הנאשם, לאחר הריגתו של ראיד כרמי בחודש ינואר 2001, עברו הפיגועים לתוך שטח ישראל. הוא ניסה להפעיל את השפעתו על החוליות שסרו למרותו על מנת למתן את הפיגועים בתוך ישראל, אך לא תמיד הצליח בכך (זכ"ד ת/70 סי' 17ז, שהוגש ואושר על ידי החוקר "סטיבי" בעמ' 53). כך למשל אירע בעניינו של מנצור שרם, שהיה אחראי לפיגועי ההתאבדות בחדרה כנקמה על הריגתו של כרמי.

הנאשם שוחח על כך לאחר הפיגוע עם עויס ומנצור ודיווח על כך לערפאת (זכ"ד ת/45 סי' 6-11, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). יצויין כי מנצור שרם היה מחלופו של ראיד כרמי, ומינוי זה אושר על ידי הנאשם (ראה דברי אחמד ברגותי בהודעתו ת/165יג עמ' 5).

הנאשם אמר בחקירתו כי בדרך כלל היה שומע על הפיגוועים לאחר ביצועם מעויס או מאחמד ברגותי, וכי לא היה יורד לפרטים כיצד בוצע הפיגוע ועל ידי איזו חוליה; הוא פירט בחקירתו את הפיגועים שלגביהם קיבל דיווח לאחר ביצועם (זכ"ד ת/70 סי' 9, 12, 17, שהוגש ואושר על ידי החוקר "סטיבי" בעמ' 53, וזכ"ד ת/39 סי' 8 שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). הנאשם הדגיש אמנם לכל אורך חקירתו כי פרט למקרה אחד הוא לא היה מעורב בעצמו בנטילת האחריות הפומבית על הפיגועים שביצעם גזודי חללי אלאקצא. מי שהיה מוציא את גילוי הדעת לאחר הפיגוע היה עויס בתיאום עם אחמד ברגותי. ואולם לא זו בלבד שאחמד ברגותי פעל כזרועו הארוכה של הנאשם, אלא שהנאשם עצמו הושיף על הדברים דלעיל ואמר: **"אני נותן כיסוי לעניין הזה. פוליטי תקשורתי... אני מדבר על העניין הזה... אני קורא למאבק, אני מעריך את הפיגועים האלה במאבק וכו'..."** (תמליל שיחה ת/98יא עמ' 46-40). במילים אחרות: הנאשם היה נוטל אחריות על הפיגועים באמצעי התקשורת, בצורה עקיפה וכוללנית מבלי להתייחס לפיגוע ספציפי, ואילו פקודיו היו נוטלים את האחריות הספציפית לכל פיגוע ופיגוע.

מה שברור מדברי הנאשם הוא שמפקדי חוליות הטרור ראו בו את מנהיגם, וכי הוא תמך בהם וסייע להם באספקת אמל"ח לאורך כל פעילותם, ביודעו שהם מבצעים פיגועי רצח כנגד מטרות צבאניות ומטרות אזרחיות בשטחי יהודה ושומרון ובתוך ישראל, כולל פיגועי התאבדות - שלטענת הנאשם היו למורת רוחו. העובדה שפעילי הטרור חבו חובת דיווח לנאשם, מוכיחה שהם הבינו כי הם כפופים לנאשם וכי הם סרו למרותו. כאשר המשיך הנאשם לתמוך בפעילים אלו ולסייע להם לאחר שדיווחו לו על פיגועים - גם כשהיו אלה פיגועי התאבדות בתוך ישראל - הביע הנאשם בכך את תמיכתו בהמשך פעילותם, כולל פעילות שהוא כביכול לא תמך בה.

הנאשם עצמו סיפר בחקירתו כי יאסר ערפאת נזף בו על הפיגועים שבוצעו בתוך ישראל (זכ"ד ת/141 סי' 10, שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 58); מכאן נובע שגם ערפאת ראה בנאשם אחראי לכל הפיגועים שבוצעו על ידי חוליות התנזים וגדודי חללי אלאקצא שתחת פיקודו של הנאשם.

הנאשם נתן אישור, ולו בדיעבד, לפיגועים שביצעו החוליות שסרו למרותו: בחלקם תמך במפורש, ובחלקם האחר תמך בהתנהגותו או בהסכמתו שבשתיקה. הוא הפעיל את החוליות שתחת פיקודו בצורה עקיפה, באמצעות הכפופים והמקורבים לו, כגון אחמד ברגותי, אבו חמיד, אבו סטחה ועויס, תוך שמירה על ריחוק מן המפגעים עצמם, והימנעות מכוונת מלערב עצמו באופן אישי בתכנון הפיגועים וביצועם. גם נטילת האחריות על הפיגועים נעשתה על ידי הנאשם בצורה "נקיה" ועקיפה - לא באמצעות גילוי דעת של גדודי חללי אלאקצא, אלא בצורה פוליטית, כביכול, ומרומזת בתקשורת.

**66.** מן האמור לעיל עולה כי הנאשם הודה בחקירתו בדברים אשר עולים בבירור גם מעדותיהם של פעילי הטרור, דהיינו, כי מבחינה פיקודית הוא היה אחראי על פעילות התנזים וגדודי חללי אלאקצא בגדה המערבית, שראו בנאשם את מנהיגם; סייע לפעילי הטרור במתן כספים ואמל"ח לצורך ביצוע הפיגועים; הנהיג באופן אישי חלק מחוליות הטרור, באמצעות מקורביו; עודד את חוליות הטרור לבצע פיגועים נגד ישראל; קיבל דיווחים מן החוליות לאחר ביצוע הפיגועים - וכל זאת ביודעו כי חוליות אלו מבצעות פיגועי רצח והתאבדות גם בתוך ישראל, וגם כנגד אזרחים.

זאת ועוד: הנאשם אף הודה בחקירתו במעורבות **אישית** הנוגעת לפיגועי רצח ספציפיים של החוליות שבהנהגתו, כדלקמן:

## (אא) הפיגוע בתחנת הדלק בגבעת זאב

לאחר הריגתו של ראיד כרמי ביום 14.1.02, קרא הנאשם בטלוויזיה של אבו דאבי לגדודי חללי אלאקצא לבצע פיגועי נקמה נגד ישראל (ת/3 מיום 14.1.02). ואולם הנאשם לא הסתפק בקריאה פומבית זו. הוא הורה לאחמד ברגותי להוציא לפועל פיגוע נקמה על מותו של כרמי. ואכן, ביום 15.1.02 בערב נתן אחמד ברגותי נשק לאבו סטחה על מנת לבצע את הפיגוע כאמור. בערב יום זה ירו חברי החוליה של אבו סטחה לעבר מכוניתם של יואלה חן ז"ל ליד גבעת זאב, רצחו אותה ופצעו את הנוסעת שהיתה עמה (על פיגוע זה ראה פרק ה(7) להלן).

הנאשם הודה בחקירתו כי לאחר מותו של כרמי הוא אמר לאחמד ברגותי כי הוא מעוניין בפיגוע נקם, ואחמד וחבריו ביצעו את הפיגוע בגבעת זאב, ודיווחו לו לאחר מכן כי היתה הרוגה אחת בפיגוע (תמליל ת/98אא, עמי 45-44). הוא אף הודה כי פיגוע זה בוצע על פי הוראתו, ונטל אחריות לביצועו (זכ"ד ת/23 סי 10-8, שהוגש ואושר על ידי החוקר "דני" בעמי 90; זכ"ד ת/24 סי 5 והמובא לזכ"ד ת/38 שהוגש ואושרו על ידי החוקר "סמיתי" בעמי 85; זכ"ד ת/26 סי 6-3, שהוגש ואושר על ידי החוקר "נדב" בעמי 79). הנאשם אמר: **"אני דיברתי בסוגיא האבלים, שצריך לנקום ולהשיב על המעשה הזה..."**, אם כי לטענתו לא היה מדובר ב"פקודה" שהוא נתן לאחמד ברגותי. באחד מחקירותיו הודה הנאשם: **"אמרנו לאחמד שיעני יבצע פיגוע"** (תמליל שיחה ת/98 עמי 19, וכן עמי 45-20).

הנאשם הסביר כי חיסולו של כרמי הביא את כרמי לאובדן השליטה בפת"ח, ולכן **"קרא לתשובה על חיסול של ראיד כרמי בכל אמצעי התקשורת... ובאמת החלו התגובות. ובפעם הראשונה פת"ח חוצה את הקו האדום בביצוע פיגועים בתוך ישראל"** (תמלילי חקירה ת/98י עמי 30-31, ו- ת/98יא עמי -9

10, 12-15, 44-45). הוא ציין בחקירתו כי ההוראה שנתן לבצע פיגוע נקמה בעקבות הריגתו של כרמי נבעה מכך שהוא חש אחריות למותו של כרמי בעיצומה של הפסקת אש, שבה קרא הנאשם לכל הפלגים להפסיק את הפיגועים על סמך התחייבות של ראש השב"כ שלא לבצע פעולות חיסול כנגד אנשי הפת"ח;

היתה זו הפעם היחידה בה הימרה את פיו של ערפאת, אשר דרש באותה עת שלא לבצע פיגועים (זכ"ד ת/31 סי' 12, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58, תמליל שיחה ת/98א עמ' 31-29, תמליל שיחה ת/98א'י עמ' 13-11). הודאה זו של הנאשם תואמת את הדברים שאמר בחקירתו אחמד ברגותי (ראה סעיף 30 לעיל), וכן הדברים שאמרו אבו סטחה (הודעה ת/156ב עמ' 5) ומוצפר (סעיף 53 לעיל).

**(בב)    רצח הנזיר היווני במעלה אדומים**

הנאשם אישר כי כאשר הציע לו רדאידה לבצע פיגוע התאבדות, הוא הפנה אותו אל מוהנד על מנת שיכוון אותו לביצוע פיגועים מהסוג שחולית הפת"ח מבצעות; בעקבות כך בוצע הפיגוע במעלה אדומים בו נרצח נזיר יווני, מתוך מחשבה כי מדובר ביהודי (ראה דברי רדאידה בסעיפים 42-43 להלן, ופרק ה(3) להלן הדן בפיגוע זה).

**(גג)    הפיגוע במסעדת "סי פוד מרקט" בתל-אביב**

הנאשם קשר עצמו בחקירתו בצורה ברורה לפיגוע במסעדת "סי פוד מרקט" בתל-אביב, שבו נרצחו שלושה אנשים (על פיגוע זה ראה פרק ה(12) להלן). אמנם בתחילת חקירתו בשב"כ טען הנאשם כי אין לו קשר לפיגוע זה, שעות עומד מאחוריו, וכי ערפאת כעס מאוד על ביצוע פיגוע זה (זכ"ד ת/25 סי' 13-12, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58). ואולם, בהמשך חקירתו הודה הנאשם כי ידע מפי מקורבו אחמד ברגותי, שהיה אחד ממתכנני הפיגוע, על הכוונה לבצע את הפיגוע, ואת כשבוע **לפני** ביצועו; אחמד הודיע לנאשם כי אברהים חסונה - המפגע - מוכן לביצוע הפיגוע. הנאשם הדגיש כי הוא לא ליווה את ביצוע הפיגוע, ואף הנחה את אחמד ברגותי שהפיגוע יבוצע ביהודה ושומרון, בהתנחלות או במחסום צבאי, ולא בתוך ישראל (זכ"דים ת/44 סעיפים 7-3 ו- ת/53 סי' 3, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58; זכ"ד ת/50 סי' 1, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96; זכ"ד ת/52 שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85).

דבריו אלו של הנאשם תואמים את גרסתו בחקירה של אחמד ברגותי, פרט לכך שהאחרון אמר בחקירתו כי דיווח לנאשם לא רק זמן מה לפני הפיגוע, אלא גם ממש בשעה שבה יצא המפגע לדרך, וכי הנאשם היה מעורב בניסוח הכרוז הנוטל אחריות לאחר ביצוע הפיגוע (ראה סי' 29 לעיל). הנאשם, לעומת זאת, אמר בחקירתו כי לא היה מעורב בניסוח הכרוז שקיבל אחריות על הפיגוע הנ"ל, אם כי הודה שנתן אישור לפרסם כרוז הנוטל אחריות על הפיגוע שהתבצע בגשר עטרה (פיגוע מסי 18 בנספח לכתב האישום) (זכ"ד ת/52 הנ"ל וזכ"ד ת/58 סי' 3, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58).

**סיכומו של דבר**: הנאשם הודה, כפי שאף עולה מדברי ברגותי, כי הוא אישר מראש את ביצוע הפיגוע הנ"ל, אם כי ההוראה היתה להרוג אנשים אחרים במקום אחר.

**(דד)    ניסיון לפיגוע ליד קניון מלחה בירושלים**

הנאשם סיפר בחקירתו כי העניק סיוע, באמצעות אחמד ברגותי, לפעילים שביצעו פיגועים באזור חברון. באחד הימים דיווח לו אחמד ברגותי כי אחד מפעיליו אלה (ג'יהאד ג'יועאברה) מתכנן פיגוע התאבדות בירושלים. הנאשם אמר כי נתן הנחיה באמצעות אחמד ברגותי שהפיגוע יבוצע בשטחים הכבושים ולא בתוך ישראל (על פיגוע זה ראה פרק ה(20) להלן). למחרת דווח לו כי הפיגוע

ההתאבדות ליד קניון מלחה בירושלים  נכשל (זכ״ד ת/36, שהוגש ואושר על ידי החוקר ״סמיתי״ בעמ׳ 85). גם כאן אישר הנאשם לבצע פיגוע כנגד ישראל, אם כי במקום אחר.

**(3)    אספקת כספים ואמל״ח לשם ביצוע פיגועי טרור**

**67.** בתחילת חקירתו בשב״כ טען הנאשם כי איננו עוסק בטרור, וכי מעולם לא מסר לאף אדם נשק ולא ירה בנשק (זכ״ד ת/10 סי 1, שהוגש ואושר על ידי החוקר ״זני״ בעמ׳ 90). ואולם בהמשך חקירתו הודה הנאשם כי היה אחראי על מתן כספים ואמצעי לחימה לחוליות השטח של התנזים וגדודי חללי אלאקצא, וכי ידע כי אלה משמשים לביצוע פיגועים כנגד ישראל.
כפי שאמר הנאשם: **״במסגרת תפקידי כמזכיר הפת״ח אני אחראי לכל הנעשה כגון אספקת כספים לחוליות, רכישת נשק וביצוע פיגועים״** (ראה הציטוט מזכ״ד ת/29 בסי 61 לעיל, וכן ראה זכ״ד ת/59 ס/ 7, שהוגש ואושר על ידי החוקר ״ואדי״י בעמ׳ 96).
הנאשם הסביר כי היה מעביר את בקשות הפעילים לרכישת אמל״ח ליאסר ערפאת תחת הכותרת ״סיוע אישיי״, או ״סיוע כלכלי״ (זכ״ד/יים ת/22 סי 6, ו-ת/25 סי 14 שהוגשו ואושרו על ידי החוקר ״מופזי״ בעמ׳ 58). הנאשם אף הודה כי בכך שרכש נשק לחוליות, הוא השיג השפעה על פעילותן (סי 61 לעיל). עוד הודה הנאשם כי סייע מבחינה כספית לאחמד ברגותי ולראיד כרמי, ותמך בהם לצורך ביצוע פיגועים (ראה סי 62 לעיל).

מסמך ת/5 (70-73) שנתפס במבצע ״חומת מגן״, הוא מכתב של ראיד כרמי אל הנאשם מיום 20.1.02, בו מבקש כרמי סיוע לרשימה של פעילים, ובהם כאלו שהיו מעורבים בפיגועי טרור על פי הראיות שהובאו בתיק זה; הנאשם הפנה את הבקשה ליאסר ערפאת בכתב ידו (לפי חוות דעת מז״פ ת/5). מכתב נוסף שנתפס הוא ת/5(140), שבו פנה מבוקש בשם סאמח בני חניש לנאשם בבקשה להחזיר לו נשק שהוחרם; כתב ידו של הנאשם נמצא על המכתב (חוות דעת מז״פ ת/5). במכתב ת/5(103) פנתה אל הנאשם קבוצת פעילים בבקשה לרכישת כלי נשק, וצייינו כי הם ביצעו התקפות רבות כנגד הצבא ומתנחלים, והפכו למבוקשים; גם על מכתב זה מצוי כתב ידו של הנאשם (לפי חוות דעת מז״פ ת/5).

**68.** הנאשם הסביר בחקירתו כי הן החוליות, והן בודדים מן החוליות, היו פונים אליו לקבלת כספים לשם מימון רכישת נשק ולמטרות אחרות, והוא היה מעביר בקשות אלו ליאסר ערפאת (זכ״ד ת/19 סי 14, זכ״ד ת/22 סי 6 וזכ״ד ת/25 סי 14, 19, שהוגשו ואושרו על ידי החוקר ״מופזי״ בעמ׳ 58; זכ״ד ת/70 סי 10, שהוגש ואושר על ידי החוקר ״סטיבי״ בעמ׳ 53; תמליל חקירתו של הנאשם: ת/98א בעמ׳ 16-13, 20-21, ת/98א עמ׳ 7, 17-18, 30, ות/98א עמ׳ 14-13). לדבריו הוא לא היה מציין בפנייתיו לערפאת כי הכסף מיועד לרכישת נשק (זכ״ד ת/30 סי 6, שהוגש ואושר על ידי החוקר ״אמילי״ בעמ׳ 54). במסגרת פעילות זו נרכשו כ- 15 כלי נשק ותחמושת בהם בוצעו פיגועים (זכ״ד ת/29 סי ח׳, שהוגש ואושר על ידי החוקר ״סמיתי״ בעמ׳ 85, זכ״ד ת/60 סי 5, שהוגש ואושר על ידי החוקר ״אמילי״ בעמ׳ 54).
הנאשם הדגיש כי הפעילות הצבאית לא היתה יכולה להתקיים בלא מימון של ערפאת (ת/60 הנ״ל סי 7). הוא אמר בעניין זה: **״יש מישהו שבא ואומר לי אני רוצה אלף שקל, אולי הוא מקבל אלף שקל, אני לא שואל אותו, אולי אחרי שבוע הוא ילך לירות, לא אכפת לי״** (ת/98א עמ׳ 30). הנאשם לא יכול היה לזכור בחקירתו את פרטי הסיוע הכספי שהגיש לפעילי השטח של הפת״ח, והסביר כי מאות פעילים היו פונים אליו בבקשת סיוע כספי לשם מימון הפעילות הצבאית (זכ״ד ת/49 סי 10, שהוגש ואושר על ידי החוקר ״אמילי״ בעמ׳ 54).

**69.** במסגרת רכישות הנשק עבור פעילי הטרור, הסכים הנאשם לממן רכישת מרגמה בסך של 1,500 דינר, והנאשם  פירט בחקירתו את הבעיות המבצעיות שבהפעלתה (זכ״ד ת/29 סי ו׳ וזכ״ד ת/38 סי 2, שהוגשו ואושרו על ידי החוקר ״סמיתי״ בעמ׳ 85; זכ״ד ת/42 סי 15-13, שהוגשו ואושרו על ידי החוקר ״ואדי״י, בעמ׳ 96; תמליל חקירתו של הנאשם ת/98א עמ׳ 8-7). הנאשם ציין

בחקירתו כי הוא עצמו התנגד לירי ממרגמה לעבר ישראל, משום שהוכח שהירי איננו גורם נזק
לישראלים, אך עלול לגרום נזק רב לפלשתינאים (זכ״ד ת/38 הנ״ל). גרסתו של הנאשם בעניין זה
תואמת את גרסתו של אבו-חמיד, אשר הסביר כי הירי במרגמה בוצע לעבר הישוב פסגות, וכי
הנאשם ביקש שלא לדבר על כך עם איש (ראה סעיף 25 לעיל).

### (4)    סיוע למבוקשים ולמשפחות העצורים והחללים

**70.**    הנאשם מימן בפעילותו לא רק את פעילי הטרור, אלא גם את בני משפחותיהם. הוא הודה
בחקירתו כי העביר לערבאת בקשות לסיוע למשפחות המתאבדים, ואף הדגיש זאת בכך שאין
הבדל בין מתאבד לבין אדם שנהרג; כולם בעיניו ״שהידים״, קרי: מי שמת מות קדושים (זכ״ד ת/
10 שהוגש ואושר על ידי החוקר ״דני״ בעמ׳ 90; זכ״ד ת/54 סי׳ 5, שהוגש ואושר על ידי החוקר
״ואדי״ בעמ׳ 96; שיחת הנאשם עם המדובב ״פלוני 3״ ת/124ג עמי 7, 22-23). כמו כן דאג הנאשם
למימון משפחות העצורים והמבוקשים מקרב פעילי הפת״ח (שיחת הנאשם עם ״פלוני 3״ ת/124ג
עמי 22-23).

בנושא זה נתפסו כמה וכמה מסמכים במבצע ״חומת מגן״, אשר מהווים בקשות סיוע שהפנו
המבוקשים לנאשם לצורך רכישת אמלי״ח, ועל מנת להסיר מעליהם את עול הפרנסה (ראה: ת/5 )
2-12) שהנאשם אישר בעת חקירתו אשר תועדו בזכ״ד ת/47 שהוגש ואושר על ידי החוקר ״ואדי״
בעמי 96; ת/5 (64-65), ת/5 (87), ת/5 (105), ת/5 (117), ת/5 (118)). כמו כן דאג הנאשם
להסדיר מינויים או מקומות עבודה למבוקשים (ראה למשל המכתבים ת/5 (78-79), שלפי חוות
דעת מז״פ ת/5 סביר מאוד להניח כי נכתבו על ידי הנאשם).

מסמך נוסף הוא ת/5 (133), הכולל פניה לנאשם לסייע לאנשים בתנועה הפת״ח שביצעו פיגועים
ונעצרו על ידי ישראל, ולמבוקשים אחרים; הנאשם העיר על מסמך זה: **״יש עדיפות להכללתם
בסיוע״**, ולפי חוות דעת מז״פ ת/5 הערה זו נכתבה, במידה שאינה מותירה ספק של ממש, בידי
הנאשם.

עימאד אלשיקר הוא פעיל תנזים שרצח ישראלי בסלפית, וכאשר הפך להיות מבוקש פנה  לנאשם
בבקשה לקבלת עזרה, ואף סיפר לו על מעשה הרצח שביצע. הוא הסביר בעדותו כי פנה אל הנאשם,
משום שהיה ידוע שהנאשם מסייע למבוקשים שכאלו, אך תיאר את הנאשם **״כאיש פוליטי שלא
משתתף בדברים צבאיים״** (עמי 184-182).

### (5)    גיוס פעילים לאירגוני הטרור והדרכתם

**71.**    הנאשם אישר בחקירתו בשב״כ את הדברים שמסר במשטרה אבו חמיד, לפיהם העניק
הנאשם סיוע כספי לשם הקמת מחנה אימונים צבאי לפעילי התנזים, על מנת להכשירם ללוחמת
גרילה ושימוש בנשק (הודעת אבו חמיד ת/149ג עמי 1-2). הנאשם אף אישר כי ראיין בעצמו את
הצעירים המתאמנים במשרדו (זכ״ד ת/28 סעיפים 10-11, שהוגש ואושר על ידי החוקר ״ואדי״
בעמי 96, זכ״ד ת/34 סי׳ 3, שהוגש ואושר על ידי החוקר ״איתי״ בעמי 52, ותמליל חקירת הנאשם
ת/98יא עמי 9). בחקירתו במשטרה הכחיש הנאשם כל קשר לאימונים או הדרכה של פעילי השטח
(ת/106 עמי 3).

אבו חמיד סיפר בהודעתו הנ״ל (עמי 6-7) כיצד מינה הנאשם את מוהנד כמפקד חוליה לאחר מותו
של המפקד הקודם. הנאשם גם אישר בחקירתו את הדברים שאמר במשטרה רדאידה, בנוגע
לתהליך גיוסו באמצעות הנאשם (ראה סי׳ 43 לעיל). מדברי הנאשם ורדאידה עולה כי הנאשם שמע
מרדאידה על כוונתו לבצע פיגוע ירי, והפנה אותו למטרה זו אל מוהנד, שהיה מפקד שטח בכיר
שביצע פיגועים כנגד מטרות ישראליות. כתוצאה מהפנייה זו בוצע הפיגוע שבו נרצח הנער היווני.

**(6)** **קריאותיו הפומביות של הנאשם לבצע פיגועים כנגד ישראל**

**72.** כפי שכבר בואר לעיל, לא הסתיר הנאשם בחקירתו את תמיכתו בביצוע פיגועים כנגד מטרות צבאיות ואזרחיות בגדה המערבית, קרי: חיילים ומתנחלים (ראה ס' 16-13 לעיל). הנאשם גם הסביר כי מידי פעם פעם היה מורה לחוליות שסרו למרותו להפסיק את הפיגועים, ולאחר מכן היה מודיע על חידושם, וזאת באמצעות הופעות פומביות בטלוויזיה (ראה ס' 16 לעיל). הנאשם היה ער להשפעה שיש לדבריו על מבצעי הפיגועים, ואמר: **"אני משפיע כי אני מדבר באמצעי התקשורת. יעני אני אומר את העמדה באמצעי התקשורת... המילה שלי נשמעת וכאילו אני דובר בשם תנועת הפת"ח"** (תמליל חקירה ת/98ד עמ' 33, וכן ראה עמ' 37-39). הנאשם אף לא הכחיש כי אנשי החוליות היו פונים אליו לקבלת סיוע, משום שהיה מופיע כדובר הפת"ח בתקשורת, ונקט עמדה הקוראת למאבק מזוין (תמליל חקירה ת/98ד עמ' 61). הוא הודה כי עודד בהופעותיו הפומביות את הפעילים לבצע פיגועים בתוך השטחים כנגד הצבא (תמליל חקירה ת/98ד עמ' 25, וזכ"ד ת/29 ת/1ב, שהוגשו ואושר על ידי החוקר "סמיתי" בעמ' 85).

**73.** קריאותיו הפומביות של הנאשם לביצוע פיגועים כנגד ישראל תועדו בידי אמי"ן, והוגשו בקלסר ת/3 (כולל הקלטות המקוריות ת/3א-ב) על ידי ראש חטיבת המחקר באמי"ן, תא"ל י. קופרווסר (עמ' 38). בעניין זה יש להתעלם ממסמכים הכלולים בקלסר ת/3, אשר אינם תיעוד של דברים שאמר הנאשם עצמו ברדיו או בטלוויזיה, ושאף הוקלטו. כתבה עיתונאית או ידיעה אחרת המייחסת לנאשם אמירת דברים כאלה או אחרים איננה קבילה לפי דיני הראיות, בהיותה עדות שמיעה.

באופן כללי ניתן לומר כי מעיון בדברים שאמר הנאשם לכלי התקשורת השונים, עולה בבירור כי הוא מדבר בשם גדודי חללי אלאקצא והתנזים, ועומד בראשם. הנאשם קורא לגופים אלה - לעניים בצורה ברורה ולעיתים בצורה משתמעת - להמשיך ולבצע פיגועים כנגד ישראל. לאחר כל פעולה של ישראל, הוא הודיע בשם תנועת הפת"ח וגדודי חללי אלאקצא כי הנקמה לא תאחר לבוא (ראה למשל ראיונות בטלוויזיה של אבו דאבי ביומים 14.1.02, ו- 15.8.01). למרות טענותו של הנאשם כי התנגד לפיגועים בתוך ישראל, הוא נשמע בראיונות השונים תומך בפיגועים שבוצעו בתוך ישראל, ואף משבח את מבצעיהם (ראה הצדקת הפיגוע בנתניה בראיון לטלוויזיה של אלג'זיירה ביום 18.5.01, הצדקת הפיגוע בירושלים של אלג'זירה ביום 9.8.01, ופיגוע נוסף בירושלים אותו הצדיק הנאשם בטלוויזיה "יוטן" ביום 31.10.02).

**74.** במהלך הלוויותיו של עמאד אלענבתאי ביום 2.10.00, אמר הנאשם בטלוויזית "יוטן" רמאללה: **"חלפו הימים בהם רק אנו מקריבים קורבנות. עלינו לנקום. יש להרוג ישראלים. יש להרוג ישראלים. כן. יש לנו כדורים. יש לנו רובים והם יופנו לעבר הכיבוש".**

בראיון טלפוני לעיתון "אלשרק אלאוסט" ביום 1.3.01 נשאל הנאשם האם ההתנגדות של הפלסטינאים עלולה להתפתח מאבנים לכלי נשק, והשיב: **"המאבק המזויין הוא חלק מהאינתיפאדה כעת ואין מסתמכים רק על אבנים. מאז החלה האינתיפאדה הצלחנו להרוג מתוכם 66 ופצענו 416 וזוהי תוצאה טובה".**

ביום 29.10.01 התראיין הנאשם לטלוויזית "יוטן" רמאללה, ונשאל מהי תגובתו לשני פיגועים שהתבצעו באותו יום בחדרה ובבאקה אלע'רביה, והשיב: **"זכותו של העם הפלסטיני, ולמעשה חובה על לוחמיו, להגיב על התוקפנות בנקמה על מעשי הטבח שהתבצעו בבית רימא, בית לחם וטול כרם. לפיכך מה שארע היום הינו תגובה טבעית של הלוחמים הפלסטינים למעשי הטבח הישראליים".**

ביום 4.3.02 התראיין הנאשם לעיתון "אלזמאן" היוצא בלונדון, ולדברי הכתב נג'אל אלליתי אמר

הנאשם כי שני פיגועי ההתאבדות (בבית ישראל וליד עפרה) הינם **"מסר המופנה לישראלים כדי שיחדלו מתמיכתם בשרון"**.

לאחר מותו של ראיד כרמי ביום 14.1.02 קרא הנאשם לגדודי חללי אלאקצא לבצע פיגועי נקמה כנגד ישראל, וזאת בטלוויזיה של אבו דאבי (ת/3 - מיום 14.1.02). כך הודה הנאשם בחקירתו (תמליל שיחה ת/98ז עמ' 78).

ביום 19.5.01 שודרה בטלוויזיה של "וטן" רמאללה תהלוכה שבראשה עמדו הנאשם ובכיר בחמאס. במהלך התהלוכה דיבר הנאשם ברמקול אל ההמון, והילל את הרוגי האינתפאדה, וביניהם מבצע הפיגוע בנתניה. כמו כן הבטיח הנאשם להמשיך ולפגוע במתנחלים, ובירך את הפוגעים במתנחלים.

.

### ה.    הקשר של הנאשם לפיגועים נשוא כתב האישום

**75.**    בכתב האישום מיוחסת לנאשם מעורבות ב- 37 פיגועים שפורטו בנספח לכתב האישום, אשר בוצעו על ידי מפקדי השטח ופעילי הארגון שהיו כפופים לנאשם.

בסיכומיה התייחסה התביעה אך ורק ל- 21 פיגועים מתוך הנספח שצורף לכתב האישום, ולפיכך גם הכרעת הדין תתייחס אך ורק לאותם 21 פיגועים, שבעניינם הובאו ראיות שלטענת התביעה קושרות את הנאשם לביצועם. ההתייחסות לפיגועים אלה תכלול את הראיות שהובאו לגבי התרחשות הפיגוע עצמו, מי היו מתכנניו ומבצעיו ומה היה הקשר של הנאשם לפיגוע או למתכננים או המבצעים.

#### (1)    רצח טליה ובנימין כהנא ז"ל ליד עפרה

**76.**    ביום 31.12.00 בשעה 06.30, בוצע ירי מן המארב בכביש מספר 60 ליד הישוב עפרה, לעבר מכוניתם של בני הזוג טליה ובנימין כהנא ז"ל וחמשת ילדיהם. כתוצאה מן הירי התדרדרה המכונית לתעלה בצד הכביש. בפיגוע נרצחו בני הזוג כהנא (תעודות פטירה ת/128א'י-ב'), ונפצעו חמשת ילדיהם (ראה דוחו"ת פעולה של אלי קוגימן ורפי"ק עפר שלוש ת/128גי-ד', לוחות התצלומים ת/128ה'-ט' שהוצאו ע"י קוגימן ושלתם בעדויותיהם בעמ' 121, 127, ותעי"צ של רפי"ק עובדיה ת/128ה'). בבדיקת מזי"פ התברר על פי התרמילים של רובה הקלצ'ניקוב שנתפסו בזירה כי הנשק ששימש בפיגוע זה, שימש גם בפיגוע מספר 6 בנספח לכתב האישום, שבו נרצח אליהו כהן ז"ל ליד גבעת זאב (חוו"ד המומחה האוורד סילברבוטר ת/128ו'-ז').

**77.**    בחקירתו במשטרה הודה אבו חמיד כי הוא היה זה שסיפק את הנשק והתחמושת למפגע שרצח את בני הזוג כהנא ז"ל, אחמד עינדור (הודעתו של אבו חמיד ת/149(א) עמי 4-6, שנגבתה ע"י רסי"ר אברהים אלקורעאן, על פי עדותו בעמ' 194). בהודעתו הני"ל סיפר אבו חמיד כי עינדור ביקש ממנו את הנשק (קלצ'ניקוב) והתחמושת לצורך ביצוע ירי לעבר רכב ישראלי ליד רמאללה, ולמחרת דיווח לו על ביצוע רצח בני הזוג כהנא ז"ל, כפי שהסתבר לו מן הדיווח ברדיו.

בעניין זה רשאים אנו להתייחס אך ורק לעדותו של אבו חמיד, ומצווים אנו להתעלם מן הדברים שאמר לו עינדור לגבי ביצוע הפיגוע, בהיותם עדות שמיעה. לפיכך, אין בפני בית המשפט ראיה קבילה על ביצוע הרצח בנשק שמסר אבו חמיד לעינדור. לכן, גם אין ראיה הקושרת את הנאשם לרצח בני הזוג כהנא ז"ל (הנאשם סיפר בחקירתו כי הכיר את עינדור, שנהרג מפליטת כדור - זכי"ד ת/68 סי 2). אמנם הובאו ראיות למכביר בדבר אחריותו הכוללת והעליונה של הנאשם לפיגועים שנעשו על ידי אנשי הפתי"ח בנשק שמסר אבו חמיד והנאשם, בהיותו מי שהנהיג פעילות זו, קרא לביצועה וסייע להוצאתה לפועל באספקת כספים ואמלי"ח. ואולם אין ראיה קבילה על כך שהפיגוע הנ"ל אכן בוצע בידי אנשי הפתי"ח.

הראיה הקבילה היחידה שיש בעניין זה היא שהנאשם סייע לאבו חמיד לרכוש נשק ותחמושת לצורך ביצוע פיגועים, כפי שהודו בחקירתם אבו חמיד והנאשם (ראה פרק ג(2) לעיל), וכי אבו חמיד אכן מסר את הנשק שרכש בסיועו של הנאשם לעינדור למטרת ביצוע פיגוע ירי. מעבר לכך אין בפנינו ראיות.

#### (2)    רצח עקיבא פשקוס ז"ל באזור התעשיה בעטרות

**78.**    ביום 25.1.01 בשעה 18:25 בוצע ירי מן המארב לעבר רכבו של אלעזר עקיבא פשקוס ז"ל באזור התעשייה בעטרות. המנוח נסע ברכב G.M.C., ונורה באקדח קליבר 9 מיימ (ראה חוו"ד מזי"פ מ/129ג). כתוצאה מן הירי נפטר המנוח (תעודת פטירה ת/129א), והוא נמצא במכוניתו ללא רוח חיים כדקה לאחר הירי (ראה עדותו של הרמן ספאק בעמי 150, דוי"ח של רפי"ק ליאור נדיבי ת/129ב, ועדותו בעמ' 132). הארוע מתואר גם בתמונות שצולמו על ידי אבינועם אליה, שצורפו

לתעודת ציבור שהגיש (ת/129ד).

**.79**    אחמד ברגותי הודה בחקירתו כי הוא מסר לאבו סטחה ולאדם אחר רכב לצורך ביצוע פיגוע, ולאחר כמה שעות, השניים דיווחו לו כי ירו על יהודי שנסע ברכב G.M.C באיזור עטרות, וכי הוא נפגע מהירי (הודעה ת/165א' עמ' 3, שהוגשה ע"י רס"ר דוד מזרחי בעמ' 184).

אבו סטחה הודה בחקירתו כי ביצע את הפיגוע באיזור התעשיה בעטרות, וירה באקדח אל עבר נהג שנסע ברכב G.M.C ספארי בצבע אפור (כפי שנראה בתמונות ת/129ד' שצולמו לאחר הפיגוע), ולאחר מכן דיווח על כך לאחמד ברגותי, שהוא - כפי שאמר אבו סטחה - **"נהגו ויד ימינו"** של הנאשם (הודעה ת/156ב', שהוגשה ע"י השוטר מרקו דהן בעמ' 198).

**.80**    אין בידי התביעה ראיה כלשהי הקושרת את הנאשם בצורה ישירה לפיגוע הנ"ל. עם זאת, הובאו ראיות כלליות למכביר לפיהן היה אחמד ברגותי עוזרו הקרוב של הנאשם, ופעל בידיעתו ותחת חסותו בארגון וביצוע פיגועים. הנאשם הודה כי מימן פיגועים שאחמד ברגותי היה מעורב בהם ותמך בפעולותיו, וכי אחמד ברגותי היה מדווח לו לאחר ביצוע הפיגועים. הנאשם גם הודה כי מבחינתו אחמד ברגותי היה האחראי על הפעילות הצבאית באיזור רמאללה, וכי הוא פעל בתיאום עם הנאשם. הנאשם אף הבהיר בחקירתו כי הקשר שלו עם חוליות הטרור נעשה באמצעות אחמד ברגותי (ראה פרק ג(3) לעיל).

גם אבו סטחה היה מקורב לנאשם, ובתקופה מסוימת אף שימש כשומר ראשו. הנאשם אישר בחקירתו כי אבו סטחה עבד במשרדו והיה תחת אחריותו, באמצעות אחמד ברגותי, והוא ידע שהשניים מבצעים פיגועים כנגד אזרחים באיזור ירושלים (ראה פרק ג'(4) לעיל).

גם הנאשם אמר בחקירתו כי הוא רואה עצמו אחראי לפעילותן של החוליות שפעלו עם אחמד ברגותי ואבו סטחה - להבדיל מחוליות אחרות - משום ששניים אלו היו קרובים אליו, והוא מימן את פעילותם (ראה סעיף 60 לעיל). הנאשם אף הכיר בכך שבאמצעות הסיוע והנשק שנתן לחוליות אלו הוא רכש השפעה על פעילותם (ראה סעיף 61 לעיל).

כל אלה באים בגדרם לאחריות העל של הנאשם כמפקדם ומנהיגם של כל פעילי הטרור של הפת"ח בגדה המערבית, כפי שהוא עצמו הודה (ראה סעיף 65 לעיל), ובנוסף לעובדה שהנאשם עודד באופן פומבי ופרטני את פעילי הטרור לבצע פיגועים.

השאלה המשפטית הקשה, האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

<u>**(3)    רצח הנזיר היווני ציפוקטקיס גרמנוס ז"ל במעלה אדומים**</u>

**.81**    ביום 12.6.01 בשעה 22.30 בוצע ירי מן המארב בכביש ירושלים מעלה אדומים, לעבר רכב הפרטי של הנזיר היווני ציפוקטקיס גרמנוס ז"ל מסוג טנדר פג'ו, שנשא לוחית זיהוי ישראלית. מן הירי נרצח גרמנוס ז"ל (תעודת פטירה ת/132א' וחוו"ד פתולוגית של פרופ' היס ת/ 130ב'). על פיגוע זה העידו רפ"ק ניסים מזרחי (עמ' 131), שהגיש את דו"ח הביקור הראשוני בזירה ותצלומים (ת/130וג'-ד'), וכן הוגשה תע"צ (ת/130ו') על ידי רס"ב אבי לוי ממוז"פ. התרמילים שנתפסו בזירה נבדקו במז"פ (ראה חוו"ד מומחה של רפ"ק אבי קופמן, ת/130ז'-ט').

**82.** רדאידה הודה בחקירתו כי הוא ביצע את הפיגוע הנ"ל, ותאר את נסיבות ביצועו. הוא סיפר כי פנה אל הנאשם על מנת לבצע פיגוע התאבדות. הנאשם הפנה אותו אל מוהנד, והורה למוהנד לתת נשק לרדאידה, וכך היה. הנאשם אמר לרדאידה כי התנגוים עושה פיגועים נגד הצבא והמתנחלים, ולא פיגועי התאבדות, וכי הוא נותן לו נשק למטרה זו. ואכן, בנשק (קלצ'ניקוב) שקיבל רדאידה ממוהנד, על פי הוראתו הישירה של הנאשם, הוא ביצע את רצח הנזיר גרמנוס ז"ל כפי שתואר בחקירתו, בהסבירו כי סבר בטעות שמדובר במתנחל (ראה פרק ג(8) לעיל סע' 42-41).

**83.** הנאשם עצמו אישר בחקירתו את דבריו של רדאידה, ואמר כי הפנה אותו אל מוהנד לאחר שביקש להתאבד, ולאחר מכן שמע כי הוא הרג בטעות את הנזיר היווני (סעיף 43 לעיל). לאור כל אלה ברורה אחריותו הישירה והאישית של הנאשם לפיגוע זה.

<u>(4)    רצח יניב ושרון בן שלום ז"ל ודורון יוסף סוורי ז"ל בכביש 443</u>

**84.** ביום 25.8.01 בשעה 22.30 נרצחו בני הזוג יניב ושרון בן שלום ז"ל, וכן יוסף סוורי ז"ל (אחיה של שרון), שנסעו יחד עם שני ילדיהם במכונית מסוג "פאסאט" בעלת לוחית זיהוי ישראלית, וזאת שעה שנסעו בכביש 443 ליד תחנת דלק "דור אנרגיה" (ראה תעודות פטירה וחוו"ד פתולוגיות ת/131א'-ג').
את תוצאות הפיגוע תארו השוטרים חיים טולדנו ורס"מ שבי עובדיה (עמ' 123, 139, ודוח"ות הפעולה שלהם ת/131ד'-ה', בליווי לוח תצלומים ת/131ו'). הקליעים שנתפסו נשלחו לבדיקת מז"פ, ונמצא שהם נורו משני כלי נשק : תת מקלע MP5 וקלצ'ניקוב (חוו"ד מומחה ת/131ז').

**85.** אחמד ברגותי סיפר בחקירתו כי מסר את רובה ה- MP5 שלו לאבו סטחה, לאחר שאבו סטחה ביקש זאת עבור החוליה שלו, וכעבור זמן מה, שמע מאבו סטחה, וגם בחדשות, כי חברי החוליה שלו ביצעו פיגוע בו נהרגו 3 יהודים ליד בית עור (הודעה ת/165א' עמ' 2, שהוגשה על ידי רס"ר מזרחי בעמ' 184). גם אבו סטחה סיפר בחקירתו, כי קיבל מאחמד ברגותי את רובה ה- MP5 ומחסנית מלאה כדורים, ומסר אותם לשניים מהחוליה שלו : חוסאם ופיראס. השניים סיפרו לו כי ביצעו את הפיגוע ליד בית עור, בו נהרגו 3 ישראלים (הודעה ת/156ב' עמ' 3, שהוגשה על ידי החוקר דהן בעמ' 198).

מבצע הפיגוע, חוסאם שחאדה, אישר בחקירתו כי הוא ואחר ביצעו את הפיגוע ליד בית עור בכביש 443, בסמוך לתחנת הדלק "דור", כאשר ירה במכונית לבנה מסוג "פאסאט" (ראה התצלומים). הוא ציין כי את הירי ביצעו ברובה ה- MP5 שקיבל מאחמד ברגותי, ושותפו לפיגוע היה מצוייד בקלצ'ניקוב. למחרת שמע שחאדה בחדשות כי נהרגו 3 ישראלים כתוצאה מהפיגוע, ודיווח על כך לאחמד ברגותי, שהעביר את הדיווח לנאשם (הודעה ת/160א' עמ' 4-5, שהוגשה על ידי דהאן בעמ' 198). שחאדה סירב להשיב על שאלות בעדותו. לפיכך הוכרז כעד עוין והוגשו הודעותיו ת/160א'-ג'. כמו כן הוגשו כתב האישום, הכרעת הדין וגזר הדין שניתנו בעניינו (ת/159א'-ד'). הוא אמר בעדותו אך ורק : "**אני סיפרתי מה שהיה ולא רוצה להגיד כלום**" (עמ' 73). שחאדה הורשע בביצוע פיגוע זה.

**86.** לא הובאה ראיה הקושרת את הנאשם לפיגוע זה, זולת הקשר העקיף של הנאשם, כאמור לעיל, לפיגועים בהם היו מעורבים מקורביו, אחמד ברגותי ואבו סטחה (ראה סעיף 80 לעיל). הנאשם סיפק כספים ונשק לחברי החוליות, באמצעות אחמד ברגותי, לשם ביצוע פיגועים, והנשק ששימש בפיגוע זה סופק על ידי אחמד ברגותי.
השאלה האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשי הרצח שבוצעו בפיגוע זה, כאשר אין ראיה הקושרת את הנאשם ישירות לפיגוע, תבחן בפרק המסקנות.

<u>(5)    רצח מאיר וייזבורץ ז"ל בכביש מס' 9 בירושלים</u>

**.87** ביום 15.9.01 בשעה 23:15 נורה מן המערב רכב שנסע בכביש מס׳ 9 בירושלים, מהגבעה הצרפתית לשדרות גולדה מאיר. ברכב מסוג רנו אקספרס בצבע לבן נהג משה וייס, אשר העיד כי נפגע מכדור הנמצא בגופו עד היום בעמוד השדרה, ואילו בן דודו מאיר וייזבוייג ז״ל נהרג מן הירי (עמ׳ 138, תעודת פטירה ת/132ב, דו״ח פעולה של רפ״ק ליאור נדיבי ת/132ועדותו של נדיבי בעמ׳ 132, וכן לוח התצלומים ת/132א). בזירה נתפסו תרמילי רובה שנשלחו לבדיקת מז״פ, ונקבע כי הם נורו, כפי הנראה, מאקדח ומתת-מקלע MP ־ 5, שממנו נורו גם היריות הקטלניות שרצחו שלושה אנשים בבאירוע מס׳ 4 הנ״ל (חוו״ד מז״פ ת/132ד).

**.88** חוסאם שחאדה אמר בהודעתו ת/160א עמ׳ 6, שנגבתה על ידי רס״מ מרק דהן (עמ׳ 198 לפרוטוקול), כי קיבל מאחמד ברגותי אקדח ותת-מקלע MP-5, ונסע עם שניים אחרים (פיראס והיימס) ברכב עד שהגיעו לכביש מס׳ 9 לכיוון רמות והגבעה הצרפתית. כאשר הבחינו ברכב טנדר מסחרי בצבע לבן, הם פתחו באש לעבר נוסעי הרכב ונמלטו לרמאללה. לאחר האירוע ביקש שחאדה מאבו סטאחה, שעבד במשרדו של הנאשם, לדווח לנאשם ולאחמד ברגותי על ביצוע הירי. למחרת הוא שמע כי אחד הנוסעים שנפצע מן היריות מת מפציעו (ראה גם סעיף 85 לעיל בנוגע לעדותו של שחאדה). דבריו של שחאדה נתמכים בדברים שאמרו אחמד ברגותי ואבו סטאחה בחקירותיהם (ראה סעיף 85 לעיל).

**.89** הקשר של הנאשם לפיגוע זה, כמו לפיגוע מס׳ 4 הנ״ל שבוצע אף הוא על ידי שחאדה, איננו ישיר, שכן לא הובאו ראיות למעורבותו הישיר של הנאשם בפיגוע זה.
הקשר העקיף של הנאשם לפיגוע נובע מכך שהוא הוצא לפועל על ידי מקורביו ועוזריו של הנאשם, אחמד ברגותי ואבו סטאחה, שהנאשם אף מימן את פעולותיהם, כולל רכישת כלי נשק.
השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע זה - תבחן בפרק המסקנות.

### (6) רצח אליהו כהן ז״ל בפיגוע ירי בכביש 443 ליד גבעת זאב

**.90** ביום 21.12.00 בשעה 20:30 נורה מן המערב רכבו של אליהו כהן ז״ל, בנוסעו בכביש 443 כקילומטר וחצי מהיישוב גבעת זאב (ראה תעודת פטירה ת/133א, חוו״ח פתולוגית ת/133ב, ודו״ח מעבדת נייזד מז״פ ת/133ג שעליו העיד רפ״ק שלוש בעמ׳ 127). על פיגוע זה העיד בראיון מלקולם שפירא, שהיה עד ראיה לפיגוע (עמ׳ 149). בבדיקת התרמילים שנתפסו בזירה נמצא כי כלי הנשק ששימש לפיגוע היה כפי הנראה רובה קלצ׳ניקוב, ששימש גם לביצוע רצח בני הזוג כהנא ז״ל (ראה חוו״ד ת/133ד ו- ת/128ו).

**.91** אבו חמיד סיפר בחקירתו על פעילותיה של חולית אחמד עינדור, שביצעה פיגוע זה (הודעה ת/149א עמ׳ 10-12, שנגבתה על ידי אלקורראען: עדותו בעמ׳ 194). אבו חמיד אמר בחקירתו כי סיפק לעינדור רובה קלצ׳ניקוב ותחמושת שקיבל למטרה זו מאחמד ברגותי, וכי אישר לעינדור לבצע את הירי בכביש 443 שבו נהרג אליהו כהן ז״ל. עוד סיפר אבו חמיד כי את הפיגוע ביצעו מוהנד ושוויש, וזאת על פי מה שסיפרו לו מוהנד לאחר ביצוע הפיגוע. מוהנד לא היה עד במשפט, ואילו חקירתו של שוויש, שגם העיד בפנינו, איננה מתייחסת לאירוע זה, והפיגוע הנ״ל לא נכלל בכתב האישום שהוגש כנגד שוויש (ת/157א).

לאור האמור לעיל, יש בידינו אך ורק את עדותו של אבו חמיד, לפיה אישר לבצע פיגוע ירי כנגד רכב ישראלי בסוף שנת 2000 בכביש 443 וסיפק נשק לביצועו. אין בפנינו ראיה קבילה לגבי זהות מבצע הפיגוע, ולכן גם אין ראיה קבילה הקושרת את הנאשם לפיגוע באמצעות אבו חמיד.

כל שיש בפנינו הן ראיות לפיהן הנאשם סייע לאבו חמדי לרכוש נשק ותחמושת לצורך ביצוע פיגועים, וכי אבו חמדי מסר את הנשק שרכש בסיוע הנאשם לעינדור למטרת ביצוע פיגועי ירי (זה המצב גם לגבי רצח בני הזוג כהנא ז״ל, שבוצע באותו כלי נשק : ראה פרק ה(1) לעיל).

(7)     <u>רצח יואלה חן ז״ל ליד תחנת דלק גבעונים בכביש 443</u>

**92.**     ביום 15.1.02 בשעה 19:55 הגיעה יואלה חן ז״ל ברכב ״פיאט אונו״ לתחנת הדלק בצומת גבעונים, ולידה ישבה רשל עיני. שני מחבלים התקרבו לעבר רכבה, וירו בשתיים מטווח קצר עשרות כדורים. כתוצאה מן הירי נרצחה יואלה חן ז״ל (תעודת פטירה ת/134א), ורשל עיני נפצעה בראשה ובכתפה. עד ראיה לאירוע, סמי וקנין, העיד כי ראה שני בחורים נמלטים בריצה לעבר הכפר השכן אלג׳יב לאחר ביצוע הירי, והוא סייע בחילוץ הנוסעות (עמ׳ 143). כמו כן תיארו את האירוע רפ״ק עמי לייפר ורס״ב אלי קוג׳מן (בעמ׳ 130 לפרוטוקול ודו״חות ת/134ד-1, בנוסף ללוח תצלומים ת/134ב ות- 134/ד2).

**93.**     הפיגוע בו נרצחה יואלה חן ז״ל בוצע בהוראתו הישירה של הנאשם, כנקמה על הריגתו של ראיד כרמי יום לפני הפיגוע, ובכך הודה הנאשם בחקירתו. הנאשם סיפר בחקירתו כי הורה למקורבו אחמד ברגותי לבצע פיגוע נקמה זה, וכי אחמד דיווח לו על ביצוע הפיגוע. הנאשם אף נטל אחריות לביצוע פיגוע זה, וציין כי זו היתה הפעם הראשונה בה ביצע הפת״ח פיגוע בתוככי ישראל (ראה סעיף 66(א) לעיל).

דבריו של הנאשם בחקירתו מתיישבים עם הדברים שאמרו בחקירתם אחמד ברגותי, אבו סטחה ומוספר (ראה סעיפים 30 ו- 53 לעיל, הודעת אבו סטחה ת/156ב עמ׳ 5-6 שעל גבייתה העיד דהן בעמ׳ 198, והודעות אחמד ברגותי ת/165א עמ׳ 3 ות/165ג עמ׳ 1-2 שעל גבייתן העיד מזרחי בעמ׳ 184). הם תיארו את הפיגוע שבוצע בתחנת הדלק באמצעות ירי לעבר מכונית ״פיאט אונו״, שבו נרצחה אישה אחת ונפצעה חברתה. אבו סטחה, שביצע את הירי, טען כי תחילה החליט שלא לירות בשתיים בהיותן נשים, אך לאחר שהחלו לצעוק ירה עליהן יחד עם חברו טארק.
אבו סטחה טען כי ביצע את הפיגוע לפי הוראת אחמד ברגותי, בעוד שהאחרון טען כי אבו סטחה היה יוזם הפיגוע, ולשם כך מסר לו רובה 5 - MP. אחמד ברגותי טען בהודעתו כי אבו סטחה אמר לו כי דיווח על כוונתו לבצע את הפיגוע לנאשם לפני הביצוע, וכי הנאשם אמר לו שלא יצא לפיגוע זה.

אחמד ברגותי הסביר כי אבו סטחה היה שומר ראשו ונהג של הנאשם, ולכן הנאשם חשש לחייו. בשיחה שהתקיימה בין הנאשם לבין אחמד ברגותי במהלך מעצרם, כאשר הוקלטו ללא ידיעתם, תיאמו השניים גרסאות לגבי פיגוע זה, ואחמד ברגותי אמר לנאשם כי הדגיש בחקירתו שהוא הורה על ביצוע הפיגוע מאחורי גבו של הנאשם (תמליל שיחה ת/128ג עמ׳ 14, 17). ואולם הנאשם, כאמור לעיל, הודה כי הורה לבצע את הפיגוע, ומכאן כי מקורבו אחמד ברגותי ניסה לחלצו מן המעורבות הישירה בפיגוע זה, כמו גם בפיגועים אחרים.

(8)     <u>רצח 6 אנשים באולם השמחות ״ארמון דוד״ בחדרה</u>

**94.**     ביום 17.1.02 בשעה 22:45 בוצע פיגוע ירי באולמי ״ארמון דוד״ בחדרה. המחבל עבד אלסלאם חסונה ירה במאבטח בכניסה לאולם, פרץ פנימה ופתח באש מנשקו אוטומטי לעבר קהל החוגגים באירוע בת-המצווה של נינה קרדישוב, עד שכמה מהם השתלטו עליו, והוא נורה למוות (חוו״ד פתולוגית ת/135ו). כתוצאה מן הירי נרצחו 6 אנשים ועשרות נפצעו, חלקם בארוח קשה. הנרצחים הם: בורים מליחוב ז״ל (תעודת פטירה ת/135ב), דינה ביניאב ז״ל (תעודת פטירה ת/135 ג), אנטולי בקשייב ז״ל (תעודת פטירה ת/135ד), אבי יזדי ז״ל (תעודת פטירה ת/135ה), אדוארד

בקשייב ז"ל (חוו"ד פתולוגית ת/135ה) ואהרון בן ישראל אליס ז"ל (חוו"ד פתולוגית ת/135ז). עד
הראיה קונסטנטין קרדשוב בעדותו על התרחשות האירוע (עמ' 125), וניתן לראות את
האירוע גם במצגת של המשטרה וקלטות שצולמו בעת האירוע (ת/135יא, ת/135יא-יב). בזירה
נתפס רובה סער אם-16ורימון שבהם השתמש המחבל (ראה חוו"ד ת/135ח-ט ועדותו של רפ"ק לייפר
בעמ' 130).

**95.**     נאסר עויס היה אחראי על ביצוע הפיגוע הנ"ל, והוא זה שמסר את הנשק לצורך ביצועו
למחבל חסונה (הודעתו ת/172ב, שעל גבייתה העיד רס"י עמאר בעמ' 191). כך עולה גם מהודעתו
של אחמד ברגותי, שסיפר כי עויס דיווח לו על ביצוע הפיגוע באולם השמחות בחדרה (הודעה ת/
165ד שעל גביייתה העיד רס"ר יעקובוף מעמ' 171). אחמד ברגותי סיפר כי שמע על ביצוע הפיגוע
בטלוויזיה בהיותו עם הנאשם, ומיד התקשר לעויס שנטל אחריות על ביצוע הפיגוע.

גם אבו חמיד התייחס בחקירתו לפיגוע זה, והסביר כי אף הוא היה נקמה על  חיסולו של ראיד
כרמי, ולכן המפגע יצא מטול-כרם, שבה התגורר כרמי (ת/149ב עמ' 14-15, שעל גביייתה העיד
רס"ר אלקוראעאן בעמ' 194).

**96.**     אין כל ראיה ישירה לכך שהנאשם היה מעורב באופן ישיר בתכנון הפיגוע הנ"ל, או ידע על
ביצועו מראש. הנאשם טען כי היה שומע על הפיגועים מאחמד ברגותי ומעויס רק לאחר
ביצועם, ובשיחתו עם המדובב "פלוני 1" אמר כי ידע על הפיגוע רק בדיעבד (דו"ח ת/118 ס' 4
שהוגש על ידי "ד ורברשי"). הקשר העקיף של הנאשם לפיגוע בחדרה נובע מכך שסיפק לעויס כספים
ואמל"ח לצורך ביצוע הפיגועים, הלה ראה בו מנהיג ומפקד, ולכן גם דיווח לו לאחר כל פיגוע.
הנאשם הודה באספקתם כספים לעויס לצורך רכישת נשק, ואמר כי רצה להבטיח הפסקים של
הפיגועים היה פונה בעניין זה גם לעויס (ראה סעיף 23 לעיל). עם זאת, הנאשם לא ראה עצמו
אחראי לפעולותיו של עויס, בניגוד לפעולותיהם של אחמד ברגותי, אבו סטאחה ואבו חמיד (ראה
סעיפים 60 ו- 65 לעיל). גם עויס סיפר בחקירתו כי ביצע את הפיגועים שהוציא לפועל במסגרת
תנזים פתח"ח, שעליו היה אחראי הנאשם, וכי הנאשם סייע לו במימון הפיגועים ואספקת נשק. הוא
ציין כי הנאשם היה ממונה עליו (ראה סעיפים 21-22 לעיל).

השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצעו
בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע זה - תיבחן בפרק המסקנות.

<u>(9)     רצח שתי נשים בפיגוע ירי ברחוב יפו פינת לונץ בירושלים</u>

**97.**     ביום 22.1.02 בשעה 16:20 פתח המחבל סעיד רמדאש באש מרובה M-16 לעבר עוברים
ושבים ברחוב יפו פינת לונץ בירושלים, עד אשר נורה ונהרג. כתוצאה מן הירי נרצחו שרה המבורגר
ז"ל ואורה סנדלר ז"ל (תעודות פטירה ת/136ב-ג), ונפצעו עשרות אזרחים. על האירוע העיד חנן בן
נעים, שהרג את המחבל (עמ' 121). כמו כן הוגשה מצגת של המשטרה לגבי האירוע, והוגש דו"ח
פעולה של רפ"ק נדיבי שהעיד במשפט (ת/136א,  ת/136ד והעדות בעמ' 132). נשקו של המחבל
נתפס ונשלח למז"פ (ת/136ה ועדותם של רס"ימ אזולאי ורפ"ק לייפר בעמ' 130-134).

**98.**     אחמד ברגותי נטל בחקירתו אחריות על הוצאתו לפועל של הפיגוע הנ"ל (ראה הודעה ת/
165א עמ' 4-5, שעל גביייתה העיד מורד"ח בעמ' 184). הוא סיפר כי חילק להחדיר מחבל מתאבד
לתוך ישראל, ולשם כך נעזר בעויס, אשר שלח אליו את המפגע סעיד רמדאץ. השניים הכינו את
המפגע לפיגוע, לקחו אותו להתפלל, קנו לו בגדים והשיגו עבורו רובה M-16 וכדורים. באותו יום
אחר הצהריים שמע אחמד על ביצוע הפיגוע בירושלים.

אין ראיה ישירה הקושרת את הנאשם לפיגוע הנ״ל, והוא אף סיפר בחקירתו כי הוא וערפאת כעסו על אחמד ברגותי בשל ביצוע הפיגוע (תמליל שיחה ת/98א עמ׳ 32). מעורבותו העקיפה של הנאשם בפיגועים שביצעו אחמד ברגותי ועויס, בעצמם או באמצעות אחרים, בוארה לעיל. השאלה המשפטית האם זי בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

**(10)    פיגוע ירי בשכונת נוה-יעקב בירושלים בו נהרגה השוטרת גלית ארביב ז״ל**

**99.**    ביום 25.2.02 בשעה 18:25 בוצע פיגוע ירי על ידי מפגע בודד חמוש ברובה M-16 ורימון יד בכביש הראשי של שכונת נוה-יעקב בירושלים.

מעדותו של עד הראיה, השוטר אדם גרפילד, עולה כי המחבל פתח באש לעבר כלי רכב שנעו בכביש, וכן לעבר אזרחים ושוטרים שהגיעו למקום. בניידת המשטרה של גרפילד ישבה גם השוטרת גלית ארביב ז״ל, אשר הסתתרה על המחבל באקדח שלוף. המחבל רצח בירויות את השוטרת ארביב ז״ל (תעודת פטירה ת/137לב), פצע קשות את השוטר גרפילד, שנותר נכה עד היום, ואת השוטר עמיחי דהן. רימון שהשליך המחבל לא התפוצץ (ראה עדותו של גרפילד בעמ׳ 127, עדותו של רפי״ק ליאור נדיבי בעמ׳ 132 והדו״חות והצילומים שהגיש ת/137ג, ת/137ז, וכן המצגת ת/137א ולוח התצלומים ת/137ד). נשקו של המחבל, הרימון שלא התפוצץ ותרמילי הכדורים שירה נתפסו והועברו לבדיקת מו״פ (עדות רפי״ק עמי לייפר בעמ׳ 130, חווי״ד של רפי״ק אבי קאופמן ת/137ד-ה וחווי״ד של פק״ד יניב רון ת/137ו).

**100.**    המחבל שנתפס במהלך הפיגוע הוא ראמי נור, כפי שאמר אבו חמיד בהודעתו ת/149ג בעמ׳ 11-12 (שהוגשה על ידי רס״מ יעקב בראזני בעמ׳ 207). אבו חמיד סיפר כי בעת שהוא ואחיו, חלום אבו חמיד, צפו בפיגוע הנ״ל בנוה-יעקב בטלוויזיה, הזכיר לו אחיו כי המפגע ראמי נור היה בביתם יום לפני כן, וחלום אמר כי הוא זה ששמר לראמי נור כדורים וכדורים, ושילח אותו לפיגוע לאחר שצילם קלטת וידיאו שהראה לאחיו נאסר לאחר הפיגוע. חלום אמר לאחיו נאסר כי קיבל את הנשק ואת המפגע ראמי נור מאחמד ברגותי. אבו חמיד הביע בהודעתו הנ״ל כעס על כך, בהסבירו שפיגוע זה עלול לסבך את הנאשם, בשל קרבתו לאחמד ברגותי, כאשר הסתבר שהמפגע נותר בחיים ויחקר בידי השב״כ.

עוד סיפר אבו חמיד בהודעתו הנ״ל, כי יאסר ערפאת הזמין למשרדו את הנאשם ואת אחמד ברגותי בעקבות הפיגוע; אחמד ברגותי ברח, והודיע לאבו חמיד שיתכן שעומדים לעצור את הנאשם בגלל הפיגוע הנ״ל. הנאשם אמר לאבו חמיד לאחר מכן, כי הסביר לערפאת שבאותו שלב לא היתה הוראה על הפסקת אש, וכי הוא - הנאשם - עומד מאחורי אנשיו כל עוד ערפאת לא יוציא הוראה נשיאותית להפסקת הפיגועים. אבו חמיד גם סיפר בהודעתו כי אחמד ברגותי הודה בפניו כי מסר את הנשק לאחיו של אבו חמיד (חלום), לצורך ביצוע הפיגוע בנוה-יעקב.

**101.**    מן הדברים האמורים לעיל עולה כי נאסר אבו חמיד לא נטל חלק בתכנון ובהוצאה לפועל של הפיגוע הנ״ל, ומי שעשו זאת היו אחיו חלום ואחמד ברגותי, שהיו עדים במשפט. חלום אבו חמיד הורשע על פי הודאתו בשורה של מעשי טרור, כולל אחריותו לביצוע הפיגוע הנ״ל בנוה-יעקב (ראה פרט 13 בכתב האישום המתוקן ת/161א, ופסק הדין ת/161ב). חלום סיפר על אחריותו לפיגוע הנ״ל, כמפורט לעיל, בהודעותיו ת/162א-ב, שנגבו על ידי אברהים אלקורואען (עדותו בעמ׳ 194) ורס״ר דוד מזרחי (עדותו בעמ׳ 184).

חלום סיפר בהודעותיו הנ״ל (ת/162א עמ׳ 9-6, ת/162ב עמ׳ 4-2) כי הכין את ראמי נור לביצוע הפיגוע, ארגן לו מסיע ומסר לו רימון רסס ורובה M-16 עם כדורים. בעת שהכין את ראמי נור לפיגוע, הגיע אחמד ברגותי ובירר כיצד מתקדמים העניינים בעניין תכנון הפיגוע; אחמד ברגותי רצה שהפיגוע יעשה במקום הומה אדם בירושלים, אך לבסוף סוכם שהוא יבוצע בצפון ירושלים

בשל המחסומים, ואחמד ברגותי אישר זאת.

**102.** אחמד ברגותי אישר בחקירתו את הקשר שלו לפיגוע בנוה-יעקב. בהודעתו ת/165א סיפר כי נאסר עויס שלח אליו את המפגע ראמי נור לצורך ביצוע הפיגוע בנוה-יעקב, ואז הפנה את ראמי נור אל חלום אבו חמיד כדי שיסייע לו להיכנס לירושלים (הודעה ת/165א עמ׳ 6, שנגבתה על ידי רס״ר מזרחי לפי עדותו בעמ׳ 184). גם אחמד ברגותי, כמו אנסר נאסר אבו חמיד, סיפר בחקירתו על כך שבעקבות הפיגוע זומן יחד עם הנאשם למשרדו של ערפאת; הנאשם שאל אותו אם הוא אחראי לפיגוע, אחמד ברגותי השיב בחיוב, ושמע מהנאשם שערפאת כעס על ביצוע הפיגוע (הודעה ת/165ג עמ׳ 5 שנגבתה על ידי רס״ר מזרחי לפי עדותו בעמ׳ 184).

**103.** לאור האמור לעיל מתכונג הפיגוע היו עויס ואחמד ברגותי. בעת פגישתם של אחמד ברגותי והנאשם בחקירה, כאשר הוקלטו ללא ידיעתם, חזר אחמד כמה פעמים והדגיש בפני הנאשם כי סיפר בחקירתו שהנאשם שמע על הפיגוע הנ״ל רק לאחר הביצוע (תמליל שיחה ת/127ג עמ׳ 4, 11).

אין ראיות הקשורות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו הכוללת והעקיפה בפיגועים שתכננו וביצעו אחמד ברגותי ועויס, כמבואר לעיל (ראה סעיפים 80, 86 ו־ 96 לעיל). לא לחינם זימן יאסר ערפאת את ברגותי לבירור לאחר ביצוע הפיגוע הנ״ל, שכן גם הוא סבר שהנאשם הוא הכתובת לטענות בעניו. השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

**(11)    רצח גד רג׳ואן ז״ל במפעל בשקביץ בעטרות**

**104.** ביום 27.2.02 בשעה 06:30 נרצח גד רג׳ואן ז״ל במפעל ״קפה בשקביץ״ באיזור התעשיה בעטרות, על ידי עבד אלמגיד מהדי שהועסק בעבר במפעל (תעודת פטירה ת/138א וחוו״ד פתולוגית ת/138ב). והרן שחאדה שהיה במקום סיפר כי כאשר שמע את היריות ראה אדם נמלט מן המקום, וגד רג׳ואן שכב על הרצפה וביקש להזעיק עזרה (עמ׳ 146).

גד רג׳ואן ז״ל נפטר כתוצאה מן הירי, ומותו נקבע במקום (ראה דו״ח פעולה ת/138ד ועדותו של רפ״ק ליאור נדיבי בעמ׳ 132, וכן דו״ח המעבדה הניידת שרשם רפ״ק ניסים מזרחי ת/138ד ועדותו בעמ׳ 131). תצלומי זירת האירוע הוגשו כמוצגים ת/138ד ו- 138ו, על ידי מזרחי ונדיבי בעדויותיהם. הרצח בוצע באמצעות אקדח (חוו״ד ת/138ה), שכמה קליעים שנורו ממנו פגעו פגיעות קטלניות בגופו של המנוח (חוו״ד ת/138ב).

**105.** אבו חמיד סיפר בהודעתו ת/149ב (עמ׳ 25-28) כי פנה אליו עבד אלמגיד שסיפר לו כי עבד במפעל של משפחת רג׳ואן, וביקש לבצע פיגוע יחד עם אדם בשם רמזי. השלושה ישבו ותכננו את הפיגוע, ואבו חמיד נתן לכל אחד מן השניים אקדח. כעבור 20 דקות דיווח רמזי לאבו חמיד על ביצוע הפיגוע, ועבד אלמגיד סיפר כיצד ירה למוות ברג׳ואן ז״ל.
אבו חמיד התקשר למשטרה ונטל אחריות על ביצוע הפיגוע בשם גדודי חללי אלאקצא (הודעתו של אבו חמיד הוגשה על ידי רס״ר אלקוראעין בעמ׳ 194).

**106.** מן האמור לעיל עולה כי לגבי פיגוע זה אין ראיה ישירה לגבי זהות מבצעו, שכן הדברים שנאמרו לאבו חמיד על ידי עבד אלמגיד שלא העיד בפנינו הם בבחינת עדות שמיעה לא קבילה.

ואולם, ניתן לקבוע על פי ראיות נסיבתיות חד-משמעיות כי הפיגוע בוצע על ידי עבד אלמגיד, בסיועו ובאישורו של אבו חמיד, כפי שסיפר אבו חמיד בעדותו. אבו חמיד סיפר כי עבד אלמגיד הודיע לו שהוא יוצא לבצע פיגוע במפעל של משפחת רג׳ואן בו עבד בעבר, ולצורך כך הוא צייד

אותו באקדח; זמן קצר לאחר מכן דיווח לו עבד אלמגיד על כך שירה למוות בגד רג'ואן ז"ל, והוא אכן נרצח ביריות אקדח.

אין ראיות הקושרות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו הכוללת והעקיפה בפיגועים שתכנן וביצע אבו חמיד, כמבואר לעיל (ראה סעיפים 27, 65-60 לעיל). השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תיבחן בפרק המסקנות.

### (12)    הפיגוע במסעדת "סי פוד מרקט" בתל אביב

**107.**    ביום 5.3.02 בשעה 02:30 בוצע פיגוע במסעדת "סי פוד מרקט" בתל אביב על ידי המחבל אברהים חסונה, שהגיע למקום חמוש ברובה M-16, רימון יד וסכין. את האירוע תיארו עדי הראיה ווליס חזן (עמ' 148) ואליאון גורונשטיין (עמ' 129) שנכחו במסעדה בעת הפיגוע. המחבל פתח באש עם הרובה שבידיו לעבר היושבים במסעדה, עד אשר ארע מעצור בנשק, ורימוני היד שהשליך לא התפוצצו. בשלב זה החל חסונה לדקור אנשים, כולל השוטר רס"ר סלים בריכאת ז"ל שניסה להפסיק את מסע הירי ונדקר למוות בידי המחבל. בפיגוע נרצחו פרט לרס"ר בריכאת גם יוסף הב' ז"ל ואליהו דהן ז"ל (ראה חוו"ד פתולוגיות ת/139ב-עד ת/139ד). רבים אחרים נפצעו. המחבל עצמו נורה ונהרג בפיגוע, והתברר כי מדובר באברהים חסונה (חוו"ד פתולוגיות ת/139יא, ובדיקת ד.נ.א. ת/139ו).

תוצאות הפיגוע נראות בלוח התצלומים ת/139ו שהוגש על ידי השוטר אפי ימין (עמ' 151), וכן במצגת שהכינה המשטרה (ת/139א). אפי ימין הגיש גם דו"ח פעולה שרשם במקום, והוא זה שתפס את סכינו של המחבל המגואלת בדם, קליע מרוסק, תרמילים, כדורים ורובה M-16 (ת/139ה). הנשק נתפס והובא לבדיקת מז"פ (ת/139ח, ועדותו של רפ"י עמי לייפר בעמ' 130).

**108.**    הפיגוע ב"סי פוד מרקט" בוצע על ידי אברהים חסונה, והוא תוכנן על ידי אחמד ברגותי, אבו חמיד ועויס, כפי שסיפר אחמד ברגותי בחקירתו (ראה סעיף 29 לעיל). גם אחיו של אבו חמיד (שריף נאג'י) היה מעורב בפיגוע, כפי שסיפר בחקירתו (ראה סעיף 55 לעיל), וכך הוא קושר את אחמד ברגותי לתכנונו. אחמד ברגותי סיפר בחקירתו כי המפגע חסונה נשלח אליו על ידי עויס, והוא נתן לו כסף, קנה לו בגדים (דאג לכך שיהיה מי שיסיע אותו לישראל לצורך ביצוע הפיגוע (טארק מלחי). הוא דיווח לנאשם בטלפון כי הפיגוע יוצא לדרך, והנאשם אמר כי איננו מעוניין שהפיגוע יתבצע בתוך ישראל. עוד סיפר אחמד ברגותי כי לאחר הפיגוע אמר לו הנאשם להודיע לעויס שלא ליטול אחריות על הפיגוע בתקשורת קודם שישוחח על כך עם הנאשם (ראה סעיף 29 לעיל).

במהלך שיחה שהתקיימה בין הנאשם לבין אחמד ברגותי בעת מעצרם, כאשר הם הוקלטו ללא ידיעתם, טרח אחמד להדגיש בפני הנאשם כמה פעמים כי הוא אמר שרק שוחח עם הנאשם בטלפון **לאחר** הפיגוע, והוסיף: **"תזהר, אני לא הייתי איתך, אני לא הייתי איתך, דיברתי איתך בטלפון"** (תמליל שיחה ת/127ג עמ' 4-5, 11). השניים תיאמו עמדותם לגבי חקירתם בנקודה זו.

גם אבו חמיד סיפר בחקירתו על מעורבותו בפיגוע (הודעה ת/149 עמ' 6 שהוגשה על ידי רס"ר אלקוראען בעמ' 194). הוא סיפק לצורך הפיגוע רימון יד וכדורים לרובה M-16, כאשר ראה את חסונה מצויד ברובה M-16 לפני צאתו לפיגוע. כאשר דווח בלילה על הפיגוע, ועל כך שחסונה דקר למוות שוטר, נזכר אבו חמיד כי נאסר חלום (אחיו של אבו חמיד) נתן למפגע את הסכין, והסביר לו להשתמש בו אם יהיה לו מעצור בנשק.

כך גם אמר בחקירתו חלום אבו חמיד (הודעתו ת/162 עמ' 9, שהוגשה על ידי רס"ר קוראען בעמ'

194, והודעה ת/162ב עמ' 4 שהוגשה על ידי רס"ר מזרחי בעמ' 184). חלום סיפר כי הוא אמן את חסונה בשימוש ברובה 16-M. שריף נאג'י אבו חמיד'ה (אף הוא אח של אבו חמיד) סיפר בחקירתו על כך שליווה את המפגע לתל אביב, והשיג רכב עבור הפיגוע (הודעתו ת/182, שהוגשה על ידי רס"ר בן לולו בעמ' 182).

**109.** הנאשם קשור בצורה עקיפה לפיגועים שתכננו והוציאו לפועל אחמד ברגותי, אבו חמיד ועויס, כפי שפורט לעיל. ואולם, ככל שמדובר בפיגוע במסעדת "סי פוד מרקט", שתוכנן והוצא לפועל על ידי השלושה, אחראי הנאשם גם באופן אישי לביצועו. נושא אחריותו של הנאשם לפיגוע זה פורטה לעיל (ראה סעיפים 29, 55 ו- 66(ג) לעיל). הנאשם הודה בחקירתו כי אישר לאחמד ברגותי את ביצוע הפיגוע הנ"ל **לפני** הוצאתו לפועל, אם כי נתן הנחיה שהפיגוע יבוצע בשטחי יהודה ושומרון ולא בתוך ישראל. כך גם עולה מן הדברים שאמר אחמד ברגותי בחקירתו.

(13)    <u>**פיגוע ירי במלון "ג'רמי" בנתניה**</u>

**110.** ביום 9.3.02 בשעה 20:25 נכנסו שני מחבלים למלון "ג'רמי" בנתניה, כשהם חמושים ברובי 16-M ורימוני יד. השניים השליכו רימוני יד וירו על עוברי אורח ותיירים. את האירוע תיאר עד ראייה שכונה יג', שהיה מפקד צוות ביחידת "אלמוג" של מג"ב. כאשר שמע את היריות הוא הגיע למלון בתוך 30 שניות, נתקל בפצועים בשער שעדיין נמשכו היריות. יג' פתח במרדף אחרי המחבלים, ושניהם אותרו במדרגות של קניון הנמצא בסביבה, נורו ונהרגו (ראה חוו"ד פתולוגית של המחבל שאדי גנימ ת/140א, וכן חוו"ד של המחבל השני ת/140ט). יג' אישר בעדותו כי למרבה הצער חלק מן הנפגעים היו מאש אנשי מג"ב (עמ' 117-118). בפיגוע נרצחו התינוקת אביה מלכה ז"ל וישראל יחיא ז"ל (ראה טופס הודעה על פטירה ת/140ב).


צוער רמי מלכה הגיש דו"ח ביקור טכנאי מז"פ בזירת הפיגוע, המתאר את תוצאותיו ואת הממצאים בזירה (ת/140ו ועדותו בעמ' 118), ותצלומים מהזירה (ת/140ז). חוו"ד של מחלקת החבלה של המשטרה קבעה כי למלון הושלך רימון יד שהתפוצץ (ת/140ה). מהדו"ח של רס"ר מלכה עולה כי במקום נתפסו שני רובי 16-M ששימשו את המחבלים (ראה גם עדותו של רפ"ק לייפר בעמ' 130).

**111.** נאסר עויס סיפר בחקירתו כי הוא הוציא לפועל את פיגוע הירי הנ"ל בנתניה, שבוצע על ידי שני אנשים ששמותיהם לא היו ידועים לו. השניים נשלחו אליו על ידי פעיל טרור אחר (אחמד אבו חדר), ועויס ארגן את הסעתם של השניים באמצעות ממונד טיסי, ואף מסר לאחמד אבו חדר שני רימונים ושני רובי 16-M. כמה שעות לאחר שהשניים הוסעו לבאקין אל שרקיה, משם נכנסו לישראל ברגל, שמע עויס בטלוויזיה על הפיגוע במלון בנתניה. הוא התקשר לכלל התקשורת ונטל אחריות על ביצוע הפיגוע (הודעתו של עויס ת/174ב עמ' 5, שהוגשה על ידי רס"מ רוני עמר בעמ' 191).

גם בפיגוע זה ניתן לקבוע על פי ראיות נסיבתיות חד-משמעיות כי עויס עומד מאחורי הפיגוע הנ"ל, אשר בוצע זמן קצר לאחר שצייד את המחבלים ברובי 16-M ורימונים, והסיעם לנקודה על הקו הירוק הקרובה לנתניה. הפיגוע אכן בוצע על ידי שני מחבלים בשער מצוידים ברובי 16-M וברימונים, כמה שעות לאחר שעויס ארגן את הסעתם לנתניה, ומכאן ברור שזה הפיגוע עליו דיבר עויס בחקירתו.

אין ראיות הקושרות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו הכוללת והעקיפה בפיגועים שתכנן וביצע עויס (ראה סעיף 96 לעיל). השאלה המשפטית האם די בכל אלה

כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

### (14)    רצח קונסטנטין דנילוב ז"ל בבאקה אלע'רביה

**112.**    ביום 30.3.02 בשעה 13:00 זיהה צוות של מג"ב רכב שנסע במהירות מופרזת לכיוון באקה אלע'רביה, ובו שני חשודים. בעת שהצוות עקב אחר המחבלים, הם פתחו באש ורצאו את קונסטנטין דנילוב ז"ל (ראה תעודת פטירה ת/141ט). שאר אנשי הצוות ירו על המחבלים, וחגורת הנפץ שהיתה על אחד מהם התפוצצה. שני המחבלים נהרגו, לאחר שקודם לכן השליכו רימונים לעבר הצוות (ראה עדותו של סני"צ פריד ג'אנם בעמ' 122, שהשתתף באירוע).

צילומי האירוע הוגשו עם תעודתא עובד ציבור של פרוספר אוחנה (ת/141ג). בבדיקת מז"פ נקבע כי אחד המחבלים החזיק חגורת נפץ מאולתרת שהתפוצצה על גופו (ת/141ה).

**113.**    עויס אמר בחקירתו כי שלח מתאבדים יחד עם מחמוד אל טיטי ואחמד אבו חדיר, וכי השיג לאחד מהם חגורת נפץ כדי לבצע פיגוע בתוך ישראל. אותו מתאבד נסע עם אדם נוסף כשעליו חגורת נפץ לשם ביצוע פיגוע בישראל, אך נהרג עם חברו בחילופי ירי עם שוטרי משמר הגבול בבאקה אלע'רביה, לאחר שהרגו שוטר מג"ב (הודעה ת/173ב עמ' 9-10 שהוגשה על ידי רס"מ עמר בעמ' 191). עוד סיפר עויס בחקירתו כי הפיגוע הנ"ל היה אמור להתבצע בחדרה (הודעה ת/172ב עמ' 3 שהוגשה על ידי עמר בעמ' 191).

**114.**    גם בפיגוע זה ניתן לקבוע על פי ראיות נסיבתיות חד-משמעיות כי הפיגוע בוצע על ידי אנשים שנשלחו על ידי עויס, צוידו על ידו בחגורת נפץ. ברור מחקירתו של עויס כי הפיגוע אליו התייחס בחקירתו הוא הפיגוע הנדון.

אין ראיות הקושרות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו הכוללת והעקיפה בפיגועים שתכננו ובוצעו עויס (ראה סעיף 96 לעיל). השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

### (15)    פיגוע ירי בין עטרת לביר-זית

**115.**    ביום 25.2.01 בשעה 13:00 בוצע ירי מן המארב בכביש 465 לכיוון רכבו של יוסף כהן ( G.M.C.), שנע מכיוון עטרת אל ביר-זית. הירי בוצע ממרכב עוקף. כהן נפצע קשה בפיגוע, ורכבו הדרדר לשוליים (עדותו בעמ' 142). עשרות כדורים נורו לעבר רכבו, והוא נפגע משלושה כדורים בראש ושניים בצוואר, ובדרך נס נותר בחיים (ראה משב לגבי מצב הרכב ת/142ג ודו"ח תפיסה וסימון של תרמילי הכדורים ת/142א שהוגשה על ידי משה לביא בעמ' 124, וכן דו"ח בדיקת הרכב ת/142ד שהוגש על ידי השוטר מזרחי בעמ' 131).

תיאור של זירת הפיגוע מופיע בלוח התצלומים ת/142 שהוגש על ידי רפ"ק מזרחי בעמ' 139).

**116.**    אחמד ברגותי סיפר בחקירתו על פיגוע זה (הודעתו ת/165א עמ' 1 שהוגשה על ידי רס"ר מזרחי בעמ' 184, וזכ"ד ת/165ו שהוגש על ידי החוקר "דני" בעמ' 200) כיצד תכנן את הפיגוע יחד עם מוהנד, אבו סטחה ואחרים, שביקשו ממנו נשק ורכב כדי לבצע פיגוע. אחמד ברגותי מסר להם

רובה MP-5 וכדורים, וכן נתן להם את רכבו. כעבור כמה שעות הם החזירו לו את הרכב והנשק, וסיפרו לו כי ירו על רכב באיזור גשר עטרה תוך כדי עקיפתו, וכי הנהג של הרכב נפצע. דבריו של אחמד ברגותי מתיישבים עם הראיות לגבי דרך ביצוע הפיגוע, מקום ביצועו ותוצאותיו, ולפיכך יש ראיות נסיבתיות חד-משמעיות מהן עולה כי הפיגוע עליו סיפר אחמד ברגותי הוא הפיגוע הנ"ל בגשר עטרה.

אין ראיות הקשורות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו הכוללת והעקיפה בפיגועים שתכננו וביצעו אחמד ברגותי ואבו סטחח (ראה סעיף 80 לעיל). השאלה המשפטית האם די בכל אלו כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

### (16)  ניסיון פיגוע בפאב "ביאנקיני" בירושלים

**117.**  ביום 19.05.01 בשעה 03:00 גילתה דינה דגן, בעלת פאב "ביאנקיני" בירושלים, מטען חבלה שהונח בשירותים של המקום על ידי סאעד ג'אבר, שהיה מוכר לה כפלסטינאי מרמאללה שמכר לה מידי פעם מוצרים לנרגילה. בעדותה (עמ' 139-142) סיפרה דגן כי ג'אבר ישב איתה במסעדה כדי לרשום הזמנה למוצרים, ואז נכנס לשירותים כשאין בידיו דבר. כעבור כמה דקות יצא מהשירותים עם שקית ניילון, הניח אותה במרכז הפאב, וכאשר שאלה אותו מה יש בשקית הוא אמר לה כי היא מכילה בגדים. היא ניגשה לבדוק את השקית, גילתה כי מדובר במטען חבלה מוסתר מתחת למעיל, ובשלב זה ג'אבר נעלם.

במקום ישבו באותה עת כ- 150-170 בני נוער. דגן גילתה תושיה ואומץ לב ראויים לשבח: היא נטלה את המטען בידיה, צעקה לאחד העובדים הפלסטינאים במקום לפנות את הצעירים, והוא היה גם זה שעזר לה להרחיק את המטען מחוץ למסעדה. המשטרה שהגיעה למקום פוצצה את המטען, באופן שגרם נזק לחנויות באזור. כך עולה מעדותו של חבלן המשטרה אייל אלבו (עמ' 119, וכן ראה חוו"ד מומחה במעבדת החבלה, פקד יניב רון, ת/143א, חוו"ד מומחה של מז"פ שניתנה על ידי שרה אברמוביץ'-בר, ת/143ב, ולות תצלומים ת/143ג).

**118.**  אבו חמיד סיפר בחקירתו (הודעה ת/149ב עמ' 12-10, שהוגשה על ידי רס"ר אלקוראען בעמ' 194), כי סאעד אלדין פנה אליו בתחילת חודש מאי 2002, וביקש ממנו להכין עבורו מטען חבלה, על מנת להניחו בירושלים בפאב ברחוב יפו. הלה הסביר לאבו חמיד כי בעלת המקום נוהגת לקנות ממנו מוצרים לנרגילה, וצייר לאבו חמיד את הפאב. אבו חמיד הנחה אותו היכן להטמין את המטען, והסביר לו כיצד לחבר את החוטים למטף כיבוי אש שהכיל את המטען (אכן המטען היה בתוך מטף כעולה מחוו"ד ת/143א).

לאחר מכן שלח אבו חמיד את ג'אבר לפאב, וג'אבר כיסה את המטען במעיל. כאשר הגיע ג'אבר לפאב הוא התקשר לאבו חמיד, אמר לו משפט קוד ממנו הבין אבו חמיד שהוא עומד להניח את הפצצה בפאב, ואבו חמיד אישר זאת.
ג'אבר התקשר לאבו חמיד וסיפר לו שבעלת המקום ראתה אותו מניח את המטען, והוא שמע בחדשות כי המטען פוצץ על ידי המשטרה.

**119.**  מן האמור לעיל עולה כי הוכח בבירור שניסיון הפיגוע בפאב בוצע על ידי ג'אבר בהנחייתו ובסיועו של אבו חמיד. הפרטים שמסר אבו חמיד בחקירתו תואמים את עדותה של דגן ואת הממצאים בשטח.

אין ראיות הקשורות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו הכוללת

והעקיפה בפיגועים שתכנן וביצע אבו חמיד, כמבואר לעיל (ראה סעיפים 27, 65-60 לעיל). השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תיבחן בפרק המסקנות.

### (17)   פיגוע ירי בכביש 9 ליד הגבעה הצרפתית בירושלים

**120.**   ביום 3.10.01 בשעה 23:30 בוצע ירי לעבר רכב חולף שנע לכיוון הגבעה הצרפתית, בו נסעו מלי ופנחס כהן שנפגעו מן הירי (ראה דו"ח ביקור ראשוני בזירה של רפ"ק ליאור נדיבי, ועדותו בעמ' 132, דו"ח תפיסה וסימון של רפ"ק נדיבי ת/144ב, דו"ח ביקור ראשוני בזירה של רפ"ק עמי לייפר ועדותו בעמ' 130, וחוו"ד של מעבדת נשק ת/144ד).

**121.**   אבו סטחה אמר בחקירתו (הודעה ת/156ב עמ' 5-4, שהוגשה על ידי רס"מ דהן בעמ' 198), כי הוא ביצע פיגוע זה יחד עם מוחמד סמי עבדאללה, כשהם נוסעים במכונית מאזדה וברשותו רובה MP-5, אותו קיבל מאחמד ברגותי לצורך ירי לעבר מטרות ישראליות. הוא סיפר בחקירתו כי לאחר שירה לעבר רכב הנוסע במנהרה בכיוון הגבעה הצרפתית הוא הבחין כי מדובר בנהגת, ולכן הפסיק לירות ואמר לחברו שיש מעצור בנשק. לאחר מכן הוא המשיך לנסוע לכיוון הגבעה הצרפתית, ושם ירה לעבר רכב תוך כדי עקיפתו. למחרת שמע ברדיו כי בפיגוע נפצעו גבר ואישה.

**122.**   הראיות שהובאו על ידי התביעה לגבי פיגוע זה דלות ביותר, וכוללות אך ורק דו"ח ביקור ראשוני בזירה של המשטרה, באופן שכל מידע לגבי ביצוע הפיגוע הוא בבחינת עדות שמיעה. כמו כן קשה לדעת מעדותו של אבו סטחה אם דבריו מתייחסים לפיגוע הנדון, שכן לא ברור מה מועד הפיגוע אליו מתייחס אבו סטחה, ובאיזה רכב ירה.

כל שיש בפנינו הוא ראיה על כך שאבו סטחה ביצע פיגועי ירי כנגד מטרות ישראליות, תוך שימוש בנשק שקיבל מאחמד ברגותי, שהיה עוזרו ומקורבו של הנאשם. זאת ועוד, אבו סטחה עצמו היה שומר ראשו של הנאשם, והנאשם עצמו אישר כי אבו סטחה עבד במשרדו והיה תחת אחריותו, וכי הוא ידע שאבו סטחה מבצע פיגועים כנגד אזרחים בגבעת זאב ובפסגת זאב (ראה סעיפים 33-34 לעיל).

### (18)   ניסיון לפיגוע התאבדות בבית חנינא בירושלים

**123.**   ביום 8.03.02 בשעה 16:15 נלכד המחבל מחמוד סאלח בדרכו לביצוע פיגוע התאבדות בירושלים, כשהוא נושא על גופו חגורת נפץ. המחבל ניסה להפעיל את המטען כאשר שכב על הרצפה, ואז נורה ונהרג (ראה עדותו של סנ"צ דורון ידיד בעמ' 133, ודו"ח מעבדת חבלה ת/145ד).

**124.**   אחמד ברגותי סיפר בחקירתו כי לואי עודה ביקש ממנו להכין חגורת נפץ למתאבד, והוא הפנה את עודה אל נאצר שווויש שנתן לו חגורת נפץ. המתאבד שוכן בדירה ששכר אחמד ברגותי ברמאללה, ושם הלבישו עליו את חגורת הנפץ. מאוחר יותר נודע לאחמד ברגותי כי הוא נהרג מירי כוחות צה"ל באיזור בית חנינא בדרכו לביצוע הפיגוע (הודעה ת/165ב עמ' 2, 11, שהוגשה על ידי רס"ר יעקובוף בעמ' 171).

גם עויס סיפר בחקירתו (הודעה ת/173ב בעמ' 4, שהוגשה על ידי רס"מ עמאר בעמ' 191), כי לואי עודה, שגויס על ידו לגדודי חללי אלאקצא, איתר עבורו מתאבד, אך הפיגוע נכשל מכיוון שהמתאבד נורה על ידי שוטרים לפני הביצוע בכניסה לירושלים.

**125.**   מן האמור לעיל עולה כי עויס ואחמד ברגותי היה מעורבים בניסיון הפיגוע הנ"ל. אין ראיות הקושרות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו הכוללת

והעקיפה בפיגועים שתכננו ובוצעו השניים, כמפורט לעיל. השאלה המשפטית האם די בכל אלו כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

**(19)    פיגוע ירי בכביש בית אל - פסגות**

**126.**    ביום 17.03.02 בשעה 06:45 בוצע ירי מן המארב מנשק אוטומטי לעבר רכבו של סמיר קרש (פולסוונג פסאט), והוא נפצע מן הירי (ראה דו"ח ביקור בזירת העבירה ת/146א ותצלומים של רס"ב אלי קוג'מן שהוגשו בעדותו בעמ' 121).

התביעה לא הגישה ראיות נוספות לגבי פיגוע זה, והדו"ח של קוג'מן הינו בבחינת עדות שמיעה בכל הנוגע לדרך ביצוע הפיגוע.

התביעה מייחסת בסיכומיה את האחריות לפיגוע זה לאחמד ברגותי, והוא אכן הודה בהעמרבותו בפיגוע זה והורשע בכך (ת/165 ת/ז-יז פרט אישום 43). פרט לכך לא הפנתה התביעה לכל ראיה אחרת מבין הודעותיו של אחמד ברגותי, או הדברים שמסר בחקירתו בשב"כ. לאור האמור לעיל לא הובאו לגבי פיגוע זה ראיות המאפשרות לקבוע ממצא עובדתי ברור בדבר הקשר של אחמד ברגותי לפיגוע הנ"ל, וגם הראיות לגבי עצם ביצוע הפיגוע דלות ביותר.

**(20)    ניסיון פיגוע בקניון מלחה בירושלים**

**127.**    ביום 26.03.02 בשעה 10:30 התפוצץ רכב מסוג "רנו אקספרס" ובו שני חבלנים שהיו בדרכם לביצוע פיגוע (שאדי אברהים חמאמרה ומוסא יוסף מוחמד חאלד - ראה דו"ח הובלת גופות ת/147ב, שהוגש על ידי אילן גרנות בעמ' 135, ודו"ח פעולה ת/147ג שהוגש על ידי רס"מ אסף אזולאי בעדותו בעמ' 134).

**128.**    אחמד ברגותי סיפר בחקירתו (הודעה ת/165ג עמ' 5 שהוגשה על ידי רס"ר יעקובוף בעמ' 171, וזכ"ד ת/165יא סעיף 15 שהוגש על ידי חוקר השב"כ "אדם" בעמ' 201), כי גיאהאד גיוערה התקשר אל הנאשם יום לפני שמצאו את המכונית ליד הקניון בירושלים, ואמר לו שהוא רוצה לבצע פיגוע. הנאשם אמר לו שלא יבצע פיגוע בתוך ישראל, והעביר את גיוערה אל אחמד ברגותי על מנת שישוחח איתו. אחמד ברגותי טען כי גם הוא אמר לגיוערה שלא לבצע פיגוע בישראל או בירושלים. ואולם, למחרת התקשר  גיוערה אל אחמד ברגותי, ואמר לו כי המכונית שהתפוצצה ליד הקניון בירושלים נשלחה על ידו לביצוע פיגוע בירושלים.

**129.**    הנאשם עצמו אמר בחקירתו (זכ"ד ת/36 שהוגש על ידי חוקר השב"כ "סמית" בעמ' 85), כי אחמד ברגותי דיווח לו על כוונת אנשיו של גיאהאד לבצע פיגוע התאבדות בירושלים. הנאשם אמר כי הוא הורה לאחמד ברגותי שהפיגוע לא יבוצע בתחומי ישראל, אלא בשטחי יהודה ושומרון. הנאשם אמר בחקירתו בעניין זה, כשהוא מוסר על פנייתו של אחמד ברגותי אליו בעניין רצונו של גיאהאד לבצע פיגוע (תמליל שיחה ת/98יא עמ'19-20) :

| | |
|---|---|
| "הנאשם : | ... שג'יהאד, הוא אמר לו שאנחנו יש לנו פעילות. ויש לנו פיגועים וכו'. אז אני אמרתי לאחמד, אמרתי לו מה שחשוב זה שלא יעשו שום פיגוע בתוך ישראל. |
| החוקר : | או.קי וכשבא רשמית ואמר לך שהם רוצים לבצע פיגוע התאבדות, מה אתה אמרת לו? |
| הנאשם : | אמרתי לו לא, אני לא מרשה. |
| החוקר : | לא. זה לא כמו שסיפרת לי. אמרת לו, אין בעיה. אבל לא 'בפנים' (בתוך |

ישראל.

**הנאשם:** כן, לא בישראל... זאת אומרת שאני לא רוצה פיגועים בישראל".

הנאשם סיפר כי למחרת קיבל דיווח מאחמד ברגותי שפיגוע ההתאבדות נכשל, וכי הרכב התפוצץ לא רחוק מהמחסום, ושני חברי החוליה נהרגו.

**130.** מן האמור לעיל עולה כי הוכחה מעורבותו של הנאשם באישור פיגוע ההתאבדות הנ"ל, וזאת גם על פי גרסתו. הנאשם אמנם הורה שהפיגוע יתבצע במקום אחר, אך לכך אין כל משמעות מבחינת אחריותו הפלילית לניסיון הפיגוע. דברי הנאשם בחקירתו נתמכים בגרסת מקורבו לאחמד ברגותי, אם כי הלה "שיפץ" את העובדות, וטען כי הנאשם הורה שלא לבצע את הפיגוע כלל. מדברי הנאשם ברור כי הוא הורה לבצע את הפיגוע במקום אחר.

חלק שלישי:     **הערכת הראיות ומשקלן**

**131.**   הואיל והנאשם בחר שלא להעיד ולא להביא עדים מטעמו, ואף הורה לנציגי הסנגוריה
הציבורית שמונו לייצגו להמנע מחקירתם הנגדית של עדי התביעה - מבוססות הראיות כנגד
הנאשם על כמה נדבכים שונים.

**ראשית,** דברים שאמר הנאשם בחקירתו בשב״כ, אשר חלקם הועלו על הכתב בתמצית בזכ״דים
שרשמו החוקרים, ואשר הוגשו על ידם, וחלקם הוקלטו ותומללו. במסגרת זו כלולים גם דברים
שאמר הנאשם בשיחות שהוקלטו ללא ידיעתו עם מקורבו אחמד ברגותי, ועם המדובבים "פלוני 1"
ו-"פלוני 3".

**שנית,** עדויות המפללות את הנאשם, שמסרו פעילי הטרור מקרב הפת״ח לאחר מעצרם. הכוונה
להודעות שמסרו בחקירותיהם בשב״כ ובמשטרה, שכן כולם - כאיש אחד - סרבו להשיב על שאלות
כלשהן בבית המשפט, כאשר הובאו כעדים מטעם התביעה.

**שלישית,** דברים שאמר הנאשם בכלי התקשורת בתקופה שקדמה למעצרו.

**רביעית,** מסמכים שנתפסו במשרדיו של הנאשם ובמשרדי הרשות הפלסטינאית במבצע "חומת
מגן".

**חמישית,** עדויותיהם של נפגעי הטרור, עדי הראיה לפיגועים נשוא כתב האישום והעדים שעסקו
בחקירתם.

**132.**   לעניין הערכת הראיות ומשקלן יש להעיר את ההערות הבאות:

**א.**   המנעותו של הנאשם מלהעיד במשפט ולחשוף עצמו לחקירה נגדית עשוייס לשמש חיזוק
למשקל הראיות כנגדו, ואף להוות סיוע לראיות התביעה מקום שדרוש לחן סיוע, כקבוע
בסעיף 162(ב) לחוק סדר הדין הפלילי [נוסח משולב], התשמ״ב-1982 (להלן: **"החסד״פ"**).
כמו-כן, המנעותו של הנאשם מלהשיב על כתב האישום, כפי שעשה, עשויה לשמש חיזוק
למשקל ראיות התביעה, כקבוע בסעיף 152(ב) לחסד״פ. דברים אלו הובהרו לנאשם על ידי
בית המשפט.

עניין זה מקבל משנה חשיבות לאור העובדה שעל פי הדין נדרש חיזוק להודעות של עדים
שסרבו להעיד במשפט, או התכחשו לתוכן הדברים שמסרו בחקירותיהם (ראה ס״ק ג(5)
להלן). כך פסק בית המשפט שהעלין כי הימנעות נאשם ממתן עדות מהווה חיזוק משמעותי
להודעות בחקירה שמסרו עדים במשפט, ואשר טענות חיזוק לפי סעיף 10א(ד) לפקודת
הראיות [נוסח חדש], התשל״א-1971 (להלן: **"פקודת הראיות"**) (ע״פ 1497/92 **מדינת
ישראל נ' צוברי**, פ״ד מז(4) 177, בעמ' 202). בית המשפט הבהיר באותו עניין: **"הנאשם
השותק - להבדיל מן העד השותק - פועל במסגרת הדין; אולם לבית המשפט נתונה
הרשות לפרש את התנהגותו לפי התרשמותו והבנתו"** (בעמ' 203, וראה גם ד״נ 308/91
**קוזלי נ' מדינת ישראל**, פ״ד מה(4) 441, בעמ' 486).

אמנם, בית המשפט רשאי שלא ליתן משקל לשתיקת הנאשם כאשר יש לה הסבר סביר
(ראה: ע״פ 277/81 **הלוי נ' מדינת ישראל**, פ״ד לח(2) 369, בעמ' 386). אולם, משנדחו
הטענות המקדמיות של הנאשם בעניין סמכות בית המשפט לשפוט אותו - לא היה בידיו כל
הסבר סביר ומוצדק להימנעותו ממתן עדות. ברור למדי כי הנאשם, אשר נחשף במהלך