"Adam", on p. 201; Prosecution/165 (n) by "Danny", on p. 200). Transcripts Prosecution/165 (g) – (h), Prosecution/165 (k) – (l) and Prosecution/165 (p) were not mentioned in the testimony of any of the Israel Security Agency interrogators, "Mickey," "Arbel," "Adam" and "Dekel" and therefore they are to be ignored.

29.  ███████ said during the course of his interrogation that he and ███ were in charge of the al-Aqsa Martyrs Brigades during the year preceding his arrest (Statement Prosecution/165 (e)). In his statement he also related his direct and indirect involvement in terrorist attacks that have been carried out against Israel and about the weapons and the vehicle that he supplied to the field operatives who went out to carry out the various terrorist attacks in the Judea and Samaria area and also within Israel, including suicide terrorist attacks.

With respect to the terrorist attack at the **Seafood Market** Restaurant in Tel Aviv, ███████ said when he received the announcement that the terrorist ███████ would soon depart for the terrorist attack, and when he was told that he had already departed with his escort, he called the Defendant and told him about this; the Defendant authorized the terrorist attack **before** it was carried out but gave orders that it should not be perpetrated in Israel but rather in the territories; ███████ told him, "It will be okay" (Transcript Prosecution/165 (m), which was submitted and verified by an interrogator by the name of "Adam", on p. 201; and Transcript Prosecution/165 (n), which was submitted and verified by an interrogator by the name of "Danny", on p. 200). Immediately after the terrorist attack at Seafood Market, in which ███████ himself was personally involved, he called the Defendant at 3:15 a.m. and reported to him on the perpetration of the terrorist attack; the Defendant sounded annoyed (Statement Prosecution/165 (c) on p. 1, Transcript Prosecution/165 (n)). According to ███████, the Defendant told him to tell ███ not to take responsibility for this attack before speaking with the Defendant, since the Defendant was interested in wording the announcement (Prosecution/165 (d) on p. 1, Transcript Prosecution/165 (n)) ███████ was asked why he reported on the terrorist attack to the Defendant and he answered: "**I reported to Marwan Barghouti in the usual manner.**"

30. During the course of his interrogation, ▓▓▓▓ also spoke about the terrorist attack at the **gas station in Givat Ze'ev,** which was carried out as revenge for the targeted assassination of ▓▓▓▓. He claimed that he asked that the perpetrator, ▓▓▓▓, not inform the Defendant about it in advance. However, ▓▓▓▓ did discuss it with the Defendant and the Defendant told him not to carry out the terrorist attack, apparently because he feared for the life of ▓▓▓▓, who was his bodyguard (Transcript Prosecution/165 (c) on p. 2 and Transcript Prosecution/165 (m) that was submitted and verified by an interrogator by the name of "Adam", on p. 201). This is one example of ▓▓▓▓'s efforts during the course of his interrogation to cover up the Defendant's actions, since the Defendant himself took responsibility for this terrorist attack during his own interrogation and it is clear from his statements that he gave orders for its perpetration (see Sections 66 (5) and Chapter E (7), below).

In another instance that ▓▓▓▓ spoke about during the course of his interrogation, the Defendant rejected the request of the young 15 year old woman to perpetrate a suicide terrorist attack, saying, **"She is too young to do this"**, and instructed ▓▓▓▓ to tell her that (Prosecution/165 (c), on p. 4; and Transcript Prosecution/165 (m) Section 2 (j), which was submitted and verified by an interrogator by the name of "Adam", on p. 201). A similar version emerges from the comments of the Defendant during the course of his interrogation (Transcript Prosecution/25 Sections 6 – 7, which was submitted and verified by an interrogator by the name of "Smith"; on p. 85, and the transcript of the Interrogation Prosecution/98 (j), on pp. 8 – 9).

In an additional incident that was described by ▓▓▓▓, ▓▓▓▓ called the Defendant and asked to commit a terrorist attack, and Defendant told him not to do it in Israel or in Jerusalem. However, ▓▓▓▓ left the car bomb that exploded the following day next to the Malha Mall in Jerusalem despite the Defendant's orders (Prosecution/165 on p. 18). This description was confirmed by the Defendant during the course of his interrogation (see Section 66 (e) and Chapter E (20), below).

31. Throughout the course of his entire interrogation, ▓▓▓▓ showed a clear tendency to minimize the Defendant's involvement in various terrorist attacks. When he referred to the Defendant by name he would usually do so in order to say that the Defendant opposed the perpetration of the terrorist attack. However, ▓▓▓▓ did confirm in the statement, which he wrote by his own hand, that a series of field operatives in the cells received money from office of the Defendant, with his knowledge, and that the money received from the Defendant was used, by himself and by others, to carry out terrorist attacks (Statement Prosecution/165 (c) (1) on p. 6, Statement Prosecution/

[Stamp] P 7: 000386 [continued]

165 (c) on p. 2 and Statement Prosecution/165 (m) Sections 2 (c) and 2 (g) that was submitted and verified by an interrogator by the name of "Adam", on p. 201).

Similarly, it is clear from the statements that were made by ▇▇▇▇▇▇ that the Defendant would occasionally instruct him to cease or to postpone the perpetration of a terrorist attack (Transcript Prosecution/165 (m) Section 2 (g), which was submitted and verified by an interrogator by the name of "Adam", on p. 201). From this, it becomes apparent that in other cases, they were perpetrated with the Defendant's authorization, even if he did not know in advance about each and every terrorist attack.

32. At the beginning of his interrogation, the Defendant tried to protect his family member, ▇▇▇▇▇▇, and he claimed that he had been arrested with him because he "just happened to be passing by" (Transcript Prosecution/9 Section 10 that was submitted and verified by an interrogator by the name of "Robert", on p. 62). The Defendant claimed that ▇▇▇▇▇▇ had stopped working for him as a driver eight months before his arrest and that there was no connection between them with regard to the perpetration of terrorist attacks (Transcript Prosecution/10 Section 1, which was submitted and verified by an interrogator by the name of "Danny", on p. 90; and Transcript Persecution/21 Section 23, which was submitted and verified by an interrogator by the name of "Robert", on p. 63). In his police interrogation, Defendant claimed that ▇▇▇▇▇▇ was neither his secretary nor his bodyguard (Prosecution/104 on p. 4). In a meeting between the Defendant and ▇▇▇▇▇▇ at the time they were arrested, which was recorded without their knowledge, the two coordinated their positions with respect to the interrogation, and ▇▇▇▇▇▇ told the Defendant that he had claimed during the course of his interrogation that he is not connected to the Defendant but only served as his driver; the Defendant said he told them the same thing (Transcription of Conversation Prosecution/127 (c) on pp. 2-3). ▇▇▇▇▇▇ told the Defendant at that meeting exactly what he had said during the course of his interrogation with respect to the Defendant and his relationship to the various terrorist attacks that ▇▇▇▇▇▇ mentioned during the course of his interrogation (on p. 4).

[Stamp] P 7: 000387

However, during his Israel Security Agency interrogation, the Defendant confirmed that he knew that ▮▮▮ was connected to several cells and the perpetration of many terrorist attacks against Israel, and that when he wanted to stop the terrorist attacks, he would also tell this to ▮▮▮. He claimed that he had told ▮▮▮ that he "does not permit" carrying out terrorist attacks within Israel (Transcript Prosecution/98 (k) on pp. 18-20). The Defendant said that there was coordination between himself and ▮▮▮, which included reporting and providing money, and that he considered ▮▮▮ in charge of military operations in the Ramallah region, together with ▮▮▮, and that the two would carry out terrorist attacks by using several cells (Transcript Prosecution/27 Sections 2-3 that was submitted and verified by an interrogator by the name of "Smith", on p. 85).

The Defendant admitted that he gave money to ▮▮▮ and supported his activity although he claimed that ▮▮▮ did not report to him **prior** to the perpetration of terrorist attacks (Transcript Prosecution/98 (h) on pp. 3, 17, 20-24; and Transcript/24 Section 4, which was submitted and verified by an interrogator by the name of "Smith", on p. 85).

The Defendant admitted that ▮▮▮ would report to him **subsequent to** carrying out terrorist attacks (Transcript Prosecution/98 (g) on pp. 19-25, 40; Transcript Prosecution 98 (k) on p. 9). In his conversation with Agent John Doe No. 1, the Defendant said that ▮▮▮ dispatched four suicide terrorist attacks with his approval (Testimony of the agent on p. 106). These statements are consistent with those stated by the Defendant during the course of his interrogation when he took responsibility for several terrorist attacks that he had personally authorized (see Section 66, below).

[Stamp] P 7: 000387 [continued]

The Defendant did not hide the fact that he had given ▮▮▮▮▮ tens of thousand of dollars for the purchase of a variety of weapons, including assault rifles and pistols, for members of the cells that had mounted terrorist attacks against Israel. ▮▮▮▮▮ was responsible, on behalf of the Defendant, for the purchase of the weapons. He worked under the command of the Defendant and was in charge of "military operations" in the Ramallah region. The Defendant admitted that he knew that ▮▮▮▮▮ was connected to terrorist attacks against Israel, including the terrorist attacks in Jerusalem and at the Seafood Market Restaurant in Tel Aviv (with respect to all of these see: Transcript Prosecution/23 Sections 4-5 that was submitted and verified by an interrogator by the name of "Danny", on p. 90; Transcript Prosecution/25 Sections 10-11 that was submitted and verified by an interrogator by the name of "Mofaz", on p. 58; Prosecution/27 Sections 2, 4 and Prosecution/29 Section 1 that were submitted and verified by an interrogator by the name of "Smith", on p. 85; Prosecution/28 Section 4 that was submitted and verified by an interrogator by the name of ▮▮▮▮▮, on p. 96; Prosecution/65 Section 4 and Prosecution/70 Section 9 that were submitted and verified by an interrogator by the name of "Steve", on p. 53; see also the Defendant's comments in Transcript Prosecution/98 (g) on pp. 2-6, Transcript Prosecution/98 (h) on pp. 20-24, Prosecution/98 (j) on pp. 10-11 and Prosecution/98 (k) on p. 8).

**In order to summarize the relationship between the Defendant and ▮▮▮▮▮**, it can be stated that the connection of the Defendant with terrorism operatives was through his family member and close associate, ▮▮▮▮▮. As the Defendant stated when he was being questioned about ▮▮▮▮▮: **"He makes contact with the cells, both directly and indirectly. That is to say that without him I would not have direct communication with any**

[Stamp] P 7: 000387 [continued]

cells" (Transcript Prosecution/98 (k) on p. 8). When the Defendant was asked during questioning who headed the terrorist cells that operated under his control, the Defendant said, "███████████ **was partially under my control and partially worked with ███████**" (Transcript of Conversation Prosecution/98 (k) on p. 34).

**(4)** ███████████████████████

33. ███████████████████████ (hereinafter – ███████) was another field operative who headed a cell that perpetrated murderous terrorist attacks. He was also the Defendant's bodyguard for a time, as well as his close associate. For this activity, ███████ was convicted, on the basis of his confession, and sentenced to nine cumulative terms of life imprisonment (Prosecution/155 (a) – (c)). In his testimony, ███████ began by stating that he did not have any connection with the Defendant and the Defendant was "**a political person**" who had no connection to the "military operations." Beyond this, ███████ was not willing to answer any other questions and therefore was declared a hostile witness and his police statements Prosecution/156 (a) – (c) were submitted in accordance with Section 10 (a) of the Rules of Evidence (on pp. 66 – 68). The Statement Prosecution/156 (a) was not submitted by an interrogator by the name of to whom it was given (the police officer ███████████) and therefore should be ignored. The Statements Prosecution/156 (b) – (c) that were submitted and verified by the police officers ███████ and ███████ (on pp. 198, 210) who testified that the statements were given by ███████ of his own free will. The interrogation was conducted in Arabic but the statements were written in Hebrew (which is not in accordance with that which is customary and required).

In his statement, ███████ describes the terrorist attacks that he perpetrated and from his statements it becomes apparent that ███████████, the Defendant's close assistant, was involved in many of them in a concrete manner.

34. The Defendant confirmed during the course of his interrogation that ███████ worked in his office and operated under his responsibility, through ███████████, and that he knew that ███████ had carried out various terrorist attacks against civilians in Givat Ze'ev and Pisgat Ze'ev (Transcript Prosecution/30 Sections 2 – 3, which was submitted and verified by an interrogator by the name of "Emile", on p. 54, Prosecution/98 (k) on p. 35). When the Defendant was asked about the leaders of the terrorist attacks cells that operated under his control, he included ███████ among them, and said "**I am not running away from this**" (Transcript Prosecution/98 (k) on p. 34).

(5) ▮

35.   ▮ (hereinafter – ▮) was an additional field operative who assisted the Defendant and was his contact person in the Jenin refugee camp.

▮ was not willing to answer any questions during the course of his testimony; he was declared a hostile witness and his police statements were submitted in Prosecution/166, in accordance with Section 10 (a) of the Rules of Evidence (on pp. 164 – 165), by the police officer ▮ to whom it was made (on p. 169). ▮ gave his statement in his own handwriting and ▮ translated it into Hebrew.

▮ operated within the framework of the al-Aqsa Martyrs Brigades and stated during the course of his interrogation that he had received financial, among other, assistance from the Defendant and that he would distribute this money to other operatives, including some operatives who were wanted by the Israel Defense Forces; some of the money was used for the purchase of weapons (Prosecution/166 on p. 1). ▮ was in continuous contact with the Defendant and would report to him about the operations of the al-Aqsa Martyrs Brigades and on offenses in the Jenin camp; sometimes operatives from these Brigades would report to the Defendant directly, as was the case with ▮ (Prosecution/166 on p. 5).

The Defendant, in his police interrogation, denied that he was acquainted with ▮ (Prosecution/106 on p. 6). However, while being interrogated by the Israel Security Agency, the Defendant did say that ▮ was a leader from the Jenin refugee camp and a member of the al-Aqsa Martyrs Brigades that belong to the cells of ▮ The Defendant was well acquainted with ▮ but claimed that he never gave him weapons or money, although

[Stamp] P 7: 000388 [continued]

▮▮▮ had asked him for assistance; the Defendant explained that he worked with ▮▮▮ and ▮▮▮ was the one who would answer ▮▮▮'s requests (Transcript Prosecution/31 Sections 7 – 9, which was submitted and verified by an interrogator by the name of "Mofaz", on p. 58). Similarly, the Defendant confirmed that he sent requests for assistance from ▮▮▮ to Arafat (Transcript Prosecution/67 Section 4 that was submitted and verified by an interrogator by the name of "Emile", on p. 54).

**(6)** ▮▮▮▮▮▮

36. ▮▮▮▮▮▮ (hereinafter "▮▮▮▮") was another operative who was involved in terrorist attacks that were carried out by the al-Aqsa Martyrs Brigades. For this activity, he was convicted, on the basis of his confession, and sentenced to four cumulative life sentences (Prosecution/157 (a) – (d)). ▮▮▮▮ refused to answer any questions during his testimony but did claim that the Defendant was a political leader who did not have any connection to "military affairs." He was declared a hostile witness, denying the things that he said during the course of his interrogation and even claimed that he had not admitted anything (on pp. 69 – 71). ▮▮▮▮'s Statements Prosecution/158 (a) – (b) were submitted in accordance with Section 10 (a) of the Rules of Evidence by the police officers ▮▮▮▮ and ▮▮▮▮ (on pp. 165, 168).

Regarding his statement, he testified that it was written in Arabic in his own handwriting, of his own free will, and translated into Hebrew by the interrogators. Police officer ▮▮▮ testified that he was present at the trial of ▮▮▮ and that he verified his statement before his conviction, since he did not have a defense attorney.

37. During the course of his interrogation (Statement Prosecution/158 (a), on p. 6 and Statement Prosecution/158 (b), on pp. 2 – 4) ▮▮▮ said that he had received an explosive belt weighing approximately 18 kg from the headquarters of the Counter-intelligence Force in Ramallah in order to store it in his car. Later, he met the Defendant at the hospital where his wife was being treated and Defendant asked to speak with him privately. During the course of their conversation, he was asked by the Defendant if he was acquainted with anyone who knew how to prepare an explosive belt or any one who had an explosive belt. At that time, ▮▮▮ called the person who had given him the explosive belt ▮▮▮▮ called him and received his agreement for giving it to the Defendant. The Defendant informed him that ▮▮▮▮ would discuss the matter with him. The next day ▮▮▮▮ called ▮▮▮ and the latter gave him the explosive belt. ▮▮▮ heard later that day that the person who was carrying the belt had been caught in Jerusalem on his way to perpetrate a suicide terrorist attack.

[Stamp] P 7: 000389

▇▇▇▇ was asked during the course of his interrogation if the Defendant knew about the suicide terror attacks and military operations. He answered that the day before the suicide terrorist attack was carried out by Mohammed Hashayka, ▇▇▇▇ met with the Defendant and told him that a person named ▇▇▇▇ was supposed to be sending the suicide bomber to Israel; the Defendant told ▇▇▇▇ to call him if he needed anything for the terrorist attack and gave him $600 and asked to be informed of details of the terrorist attack (on pp. 6 – 7). The terrorist attack was carried out in Jerusalem, and then the Defendant called ▇▇▇▇, who told him that the terrorist attack had been perpetrated by the al-Aqsa Martyrs Brigades. The Defendant asked him to bring him the videotape of the suicide [bomber] Hashayka (on pp. 6 – 7 of Statement Prosecution/158 (a)). In his second statement Prosecution/158 (b), ▇▇▇▇ spoke about the financial assistance that he had received from the Defendant (on p. 5).

38. The Defendant denied in his police interrogation that he was acquainted with ▇▇▇▇ and in his statement he also denied the statements made by ▇▇▇▇ (Prosecution/106 on pp. 7 – 9). No additional evidence was presented to us with respect to the events that ▇▇▇▇ described during the course of his interrogation and therefore they are not supported and it is not possible to use them to support findings.

(7) ▇▇▇▇

39. ▇▇▇▇ (hereinafter – ▇▇▇▇) was a Tanzim operative who was primarily involved in training young people in the use of weapons, and in this matter he received orders from the Defendant. Similarly, he participated in shooting terrorist attacks aimed at soldiers. ▇▇▇▇ refused to answer any questions during his testimony and claimed that the Defendant was a "man of peace" (on pp. 169 – 171). Therefore, he was declared a hostile witness and his Statement Prosecution/168 was submitted in accordance with Section 10 (a) of the Rules of Evidence by the police officer ▇▇▇▇ who took the statement in the Arabic language and who translated it into Hebrew (on p. 208).

[Stamp] P 7: 000389 [continued]

40. During the course of his interrogation, ▇ spoke of the Defendant's participation in the shooting course for young people (Prosecution/168, on pp. 1 – 2) and the terrorist attacks that he himself had perpetrated. Similarly, ▇ said: "**The head of the Tanzim, Marwan Barghouti, would know about all of the shooting incidents that have been carried out by Tanzim operatives before they had been perpetrated, and he had approved them**" (on p. 5). He noted that several months before his arrest, the Defendant asked him "to buy a weapon of any type" and to transfer it by way of ▇ (Transcript Prosecution/43 Section 3, which was submitted and verified by an interrogator by the name of "Robert", on p. 92), which supports what ▇ said during the course of his interrogation.

(8) ▇, ▇ and ▇

41. ▇ (hereinafter – ▇) wanted to perpetrate a terrorist attack and approached the Defendant for that purpose. He perpetrated the shooting terrorist attack near Ma'ale Adumin, where the Greek Orthodox monk Germanos Tsibouktzakis [Translator's note: as written], of blessed memory, was murdered (see Chapter E (3), below). For his terrorist activity, ▇ was convicted, on the basis of his confession, and sentenced to life in prison and another 20 consecutive years' imprisonment. In his testimony in this case (on pp. 42 – 44), ▇ refused to answer questions; he was declared a hostile witness and his police statement was submitted on the basis of Section 10 (a) of the Rules of Evidence (Statements Prosecution/151 (a) – Prosecution/151 (c), handwritten Statement Prosecution 151 (d) that was torn, reconstructed and translated and the recording in which ▇ reenacted the murder of the monk and its transcript – Prosecution/151 (a)).

▇'s statement was submitted by an interrogator by the name of ▇ and ▇ who heard his statement in Arabic but recorded in Hebrew (which is not in accordance with that which is customary and required), and testified that it was given by ▇ of his own free will. ▇ wrote his Statement Prosecution/151 (d) in his own handwriting, in the presence of ▇ (on pp. 171, 198). The person who conducted the re-enactment ▇ made no reference to this fact in his testimony and therefore the recording of the re-enactment is not to be considered, as it is an external statement of a witness that was not submitted as required by law.

[Stamp] P 7: 000390

42. In his first statement, ▮▮▮ (Prosecution/15 (a)) said that he decided to perpetrate the terrorist attack when he saw on television that a Palestinian baby girl had been killed, and therefore he went to the office of the Defendant. The conversation between them was held in private and ▮▮▮ told the Defendant that he wanted to perpetrate the terrorist attack and demanded a weapon for that purpose. The Defendant referred ▮▮▮ to a person by the name of ▮▮▮ who is known as ▮▮▮ (hereinafter – ▮▮▮) and instructed ▮▮▮ to obtain a weapon for ▮▮▮. In his second statement (Prosecution/15 (b)), ▮▮▮ added that he made it clear to the Defendant that he required the weapon in order to carry out terrorist attacks against Israeli targets, and then the Defendant had referred him to ▮▮▮ ▮▮▮ told ▮▮▮ that that he would obtain two Kalashnikov rifles for him and that from now on his contact would be with ▮▮▮ and not with the Defendant. About two weeks later, ▮▮▮ called ▮▮▮ – who had meanwhile added another person to the terrorist attack – and told him that the weapons were ready. ▮▮▮ received weapons and ammunition from ▮▮▮, who instructed him and his comrade in their operation.

After several days of preparation for the terrorist attack, ▮▮▮ and his comrade ▮▮▮ went to an observation point on the Ma'ale Adumin Road; they carried out the terrorist attack by shooting at the car in which the monk was traveling, and then fled. The next day, ▮▮▮ learned from the news that he had killed a Greek monk and ▮▮▮ called him to complain about this; ▮▮▮ explained that he thought it was a settler. During the course of his interrogation, ▮▮▮ was asked why he went to the Defendant when he wanted to perpetrate a terrorist attack and he answered that he had seen the Defendant several times on television and understood **"that he is the only person who could help me to obtain a weapon"** (on p. 5).

In his third Statement (Prosecution/15 (c)), ▮▮▮ revealed that his original intent was to perpetrate a suicide terrorist attack but the Defendant told him, **"Suicide attacks are the work of Hamas and the Islamic Jihad; the Tanzim carries out attacks against the army and the settlers."**

[Stamp] P 7: 000390 [continued]

███████ continued, saying, "**Marwan Barghouti said that he was willing to give me weapons and explosives so that I could carry out attacks against soldiers and settlers**" (on p. 1). This version by ███████ also emerges from the document that he wrote in his own hand (Prosecution/15 (d)), although in a more condensed version.

43. ███████'s story is also supported by the Defendant's version during the course of his interrogation (Transcript Prosecution/98 (k) on pp. 37-38; and Transcript Prosecution/98 (d) on pp. 2-4, 11-12, where it mistakenly reads ███████ instead of ███████). In his police interrogation, the Defendant denied that ███████ worked in his office or was his deputy and said that ███████ was not connected to the Tanzim (Statement Prosecution/102 on p. 3, Prosecution/103 on p. 5, Prosecution/105 on p. 2, Prosecution/106 on p. 1). Early during the course of his interrogation by the Israel Security Agency, the Defendant also denied that he was acquainted with ███████ and said that ███████ worked in his office (Transcript Prosecution/9 Sections 8-9 and Transcript Prosecution/21 Section 22 that were submitted and verified by an interrogator by the name of "Robert", on pp. 62-63).

However, as the interrogation continued, the Defendant admitted that ███████ had come to him to propose the perpetration of a suicide terrorist attack and that the Defendant told him, "**We do not work with suicide attacks**." The Defendant referred ███████ to ███████ and told ███████ that ███████ "**needs training… find something for him**." Similar the Defendant said, "███████ **reached an agreement with him that he would try to carry out an attack here in Ma'ale Adumim or somewhere else, I knew about it later… then they fired on a car and injured some fellow Elhouri… meaning they killed him**" ("Elhouri" means "Priest" in Arabic – A.B.). A similar confession with respect to the recruitment of ███████ by way of ███████ emerges from points that he had made during the interrogation (see: Transcript Prosecution/22 Sections 12-16 and Transcript Prosecution/40 Section 9 that were submitted and verified by an interrogator by the name of "Mofaz", on p. 58, Transcript Prosecution/23 Section 6 that was submitted and verified by an interrogator by the name of "Danny", on p. 90; and transcript of the interrogation of the Defendant Prosecution/98 (d) on pp. 21-26; and Prosecution/98 (g), on p. 8).

The Defendant further admitted that he met with ███████ and gave him money for the purpose of carrying out terrorist attacks, after ███████ told him that his cell had perpetrated several terrorist attacks, including the murder of the Kahane couple, of blessed memory. The Defendant said that he gave ███████ a sum of approximately $3,000, as well as weapons (Transcript Prosecution/43 Sections 14-16 that was submitted and verified by

[Stamp] P 7: 000391