The Defendant confessed that he had supported ▓▓▓▓▓ and had supplied him with money and that he knew that he was responsible for the perpetration of a variety of terrorist attacks (Transcript Prosecution/98 (h) on pp. 20 – 24). In addition, the Defendant confessed that he had encouraged ▓▓▓▓▓ to carry out "operations against the occupation," and assisted him financially, while requests for assistance were transferred to Arafat, who approved them (Transcript Prosecution/67 Section 8, that was submitted and verified by an interrogator by the name of "Emile", on p. 54). By contrast, during the course of his police interrogation, the Defendant denied any connection to ▓▓▓▓▓ (Prosecution/104, on p. 8) and at the beginning of his Israel Security Agency interrogation claimed that he transferred money to him without knowing for what purpose it was intended (Transcript, Prosecution/18 Section 5 that was submitted and verified by an interrogator by the name of "Nadav", on p. 78).

63. The Defendant's connections with terrorism operatives of the Fatah and the regular assistance that he provided for them emerge clearly from the documents that were seized by the Israel Defense Forces from the offices of the organizations including the office of the Defendant during Operation Protective Shield (Binder Prosecution/5).

The Prosecution submitted an Expert Opinion by an expert from the Division of Identification and Forensic Science (DIFS) of the Israel Police, stating that the Defendant had signed some of the documents and from others it is possible to draw the necessary conclusions from the very fact that they were sent to the Defendant and were found in his office. Major L., the deputy commander of the unit that deals with the collection of captured documents, testified about the capture of the documents, their marking and the manner in which they were sorted (on pp. 46 – 48). The captured documents were transferred to a Israel Security Agency interrogator by the name of "Ogen" (see his testimony on p. 48). During his testimony, he identified the documents that were appended to the transcript from the interrogation of the Defendant (on pp. 48 – 50). In the conversation between the Defendant and ▓▓▓▓▓, which was recorded without their knowledge, the Defendant said that this referred to documents that had been seized in his office and the two were very concerned about the fact that the Defendant's "entire archive" had been seized. The Defendant said, **"the entire archive of the office [is] here"** (Prosecution/127 (c), on pp. 61 – 62).

The Expert Opinion of the DIFS with respect to the Defendant's handwriting (Prosecution/5) was rendered by Yair Ben Shemesh and is based on three samples of his handwriting that the Defendant confirmed during the course of his interrogation as being written in his hand (the three documents in Prosecution/5 are 94 – 96, 112 and 35, which the Defendant related to in Transcript Prosecution/28, Prosecution/28 (b), Prosecution/47,

[Stamp] P 7: 000397

Prosecution/85, and Prosecution/85 (a) that were submitted and verified by the Israel Security Agency interrogators "Wadi", on p. 96 and "Ofir", on p. 37). The interrogator from the DIFS divided the documents into four categories: those with respect to which there is no real doubt were written by the Defendant, those that might reasonably have been written by the Defendant, those that very likely were written by him, and those that the Defendant identified during the course of his interrogation as having been written by him. During the course of his police interrogation, the Defendant denied that his handwriting appeared on any of the documents that he had been shown (Prosecution/108-109).

64. Document Prosecution/5 (3-5) is a report that was sent to the Defendant on May 8, 2001, and which reviews the operations of the al-Aqsa Martyrs Brigades in the Jenin area. This report includes the number of people in the al-Aqsa Martyrs Brigades, their division into Brigades, details of their activities and the results of the terrorist attacks that they had perpetrated.

The activities listed in this document include shooting terrorist attacks on roads in Judea and Samaria, killing and injuring settlers, and terrorist attacks within Israeli territory (Uhm al-Fahm) in which an Israeli officer was killed and a civilian was injured. In addition, it includes a letter that requested financial assistance for the Brigades.

**(2) The Defendant's personal involvement in the terrorist attacks that have been carried out by the cells under his command**

65. Immediately subsequent to his arrest, the Defendant claimed that he was a "political person" who is not involved in military operations or in the perpetration, planning, funding or guidance of terrorist attacks against security forces or against Israelis (Transcript Prosecution/6 Section 3 and Prosecution/9 Section 2 that were submitted and verified by an interrogator by the name of "Robert", on p. 62; Transcript Prosecution/14 Section 4 that was submitted and verified by an interrogator by the name of "Gabi", on p. 93). However, as his Israel Security Agency interrogation continued, the Defendant admitted to deep involvement in "military" operations, which is a euphemism for the perpetration of murderous terrorist attacks against Israeli civilians. In certain instances, it can be understood from the Defendant's statements, he even issued specific orders for the perpetration of terrorist attacks or gave his

[Stamp] P 7: 000397 [continued]

advance approval for their perpetration.

The Defendant claimed during the course of his interrogation that he himself had never planned the details of a terrorist attack and that the cells would involve ▇▇▇▇▇▇▇ and not himself in carrying out terrorist attacks and he did not always agree with them (Transcript Prosecution/72 Section 3 that was submitted and verified by an interrogator by the name of "Danny", on p. 90). Thus, for example, the Defendant emphasized that he rejected all of ▇▇▇▇▇▇▇'s attempts introduce him to people who would perpetrate suicide terrorist attacks (Transcript Prosecution/53 Sections 11 – 13 that was submitted and verified by an interrogator by the name of "Mofaz", on p. 58). In spite of this, the Defendant confessed that **"there is collective responsibility for the activity of Fatah's military members"** (Transcript Prosecution/21 Section 14, which was submitted and verified by an interrogator by the name of "Robert", on p. 63). The Defendant said during the course of his interrogation: **"I did not issue orders to any cells** [that said] **'hey we've come, and hey we want to carry out a certain terrorist attack in a particular place, this we are leaving for it and for its atmosphere, and personal desire…** (Transcript of Conversation Prosecution/98 (k) on p. 9).

According to the Defendant, after ▇▇▇▇▇▇▇ was killed in January 2001, the terrorist attacks were brought into Israeli territory. He tried to use his influence over the cells that followed his orders in order to moderate the terrorist attacks within Israel, but he was not always able to do so (Transcript Prosecution/70 Section 17 (g) that was submitted and verified by an interrogator by the name of "Steve", on p. 53). An example of this is the case of ▇▇▇▇▇▇▇, who was responsible for the suicide terrorist attack in Hadera in revenge for the killing of ▇▇▇▇.

The Defendant discussed this with ▇▇▇▇ and ▇▇▇▇▇ after the attack and reported it to Arafat (Transcript Prosecution/45 Sections 6 – 11 that was submitted and verified by an interrogator by the name of "Wadi", on p. 96). It should be noted that ▇▇▇▇▇▇▇ was ▇▇▇▇▇▇▇'s replacement, and this appointment had been approved by the Defendant (see the comments by ▇▇▇▇▇▇▇ in his Statement Prosecution/165 (m) on p. 5).

During the course of his interrogation, the Defendant said that in general he heard about the terrorist attacks after they were perpetrated, from either ▇▇▇▇ or ▇▇▇▇▇▇▇, and that he would not go into details about how exactly the terrorist attack was carried out and by which cell; during the course of his interrogation, he listed the terrorist attacks about which he received reports after they were perpetrated (Transcript Prosecution/70 Sections 9, 12, 17 that was submitted and verified by an interrogator by the name of "Steve", on

page 53; and Transcript Prosecution/39 Section 8 that was submitted and verified by an interrogator by the name of "Wadi", on p. 96). However, throughout the course of his entire interrogation, the Defendant emphasized that with one exception he had not been personally involved in taking public responsibility for terrorist attacks that have been carried out by the al-Aqsa Martyrs Brigades. The person who issued the public statements subsequent to attacks was ▬▬, in coordination with ▬▬▬▬▬▬. Beyond this, ▬▬▬▬▬▬ served as an extension of the long arm of the Defendant, but the Defendant himself added to the above mentioned comment and said: "**I provide coverage for this issue. Politically in the media… I talk about the issue… I call for a struggle, I appraise the terrorist attacks as part of the struggle etc**…" (Transcript of Conversation Prosecution/98 (m) pages 40 – 46). In other words, the Defendant would take responsibility for the terrorist attacks through the media in an indirect and general manner without relating to a specific terrorist attack, while his subordinates would take specific responsibility for each individual attack.

What is clear from the Defendant's words is that the terrorist cell commanders considered him their leader and he supported them and assisted them by supplying weapons and explosives for the duration of their activity, although he knew that they were perpetrating murderous terrorist attacks against military and civilian targets in the Judea and Samaria region as well as within Israel, including suicide terrorist attacks, which the Defendant claims displeased him. When the Defendant continued supporting these operatives and assisting them after they reported the terrorist attacks to him, even when these were suicide terrorist attacks within Israel, the Defendant thereby expressed his support for their continued activity, including the activity that he supposedly did not support.

During the course of his interrogation, the Defendant himself said that Yasser Arafat had reprimanded him for the terrorist attacks that had been carried out within Israel (Transcript Prosecution/141 Section 10, which was submitted and verified by an interrogator by the name of "Robert", on p. 58); from this it follows that Arafat also considered the Defendant responsible for all of the terrorist attacks that have been carried out by the Tanzim and the cells of the al-Aqsa Martyrs Brigades that were under the command of the Defendant.

[Stamp] P 7: 000398 [continued]

The Defendant gave his approval, if only after the fact, to the terrorist attacks that have been carried out by the cells that accepted his authority: some he supported explicitly and some he supported by his behavior or with his silent agreement. He operated the cells under his command in an indirect manner through his subordinates and close associates such as ▇▇▇▇▇, ▇▇▇▇▇▇▇ and ▇▇▇, while keeping his distance from the people who actually perpetrated the attacks and intentionally avoiding getting himself personally involved with the planning and perpetration of the terrorist attacks. Even taking responsibility for the terrorist attacks was done by the Defendant in a "clean," indirect manner, not by way of a public statement issued by the al-Aqsa Martyrs Brigades, but rather in a political – as it were – implied manner in the media.

66. From that which has been set forth above, it becomes apparent that the Defendant confessed during the course of his interrogation to the things that also emerge from the testimony of the terrorist operatives, meaning that from a command perspective, he was responsible for the operations of the Tanzim and of the al-Aqsa Martyrs Brigade in the West Bank, which considered him their leader; he assisted terrorism operatives by providing money, weapons and explosives in order to carry out terrorist attacks; he personally led some of the terrorism cells, through his close associates; he encouraged the terrorist cells to carry out terrorist attacks against Israel; he received reports from the cells subsequent to the perpetration of terrorist – all of this while knowing that these cells were perpetrating murderous and suicidal terrorist attacks both within Israel and against civilians.

Furthermore: during the course of his interrogation, the Defendant even confessed to **personal** involvement in specific murderous terrorist attacks of the cells that he led, as follows:

**(aa) Terrorist attack at the gas station in Givat Ze'ev**

After the killing of ▇▇▇▇▇▇▇ on January 14, 2002, the Defendant, speaking on Abu Dhabi television, called on the al-Aqsa Martyrs Brigades to perpetrate revenge attacks against Israel (Prosecution/3 from January 14, 2002); however, the Defendant was not satisfied with this public statement. He instructed ▇▇▇▇▇▇▇ to bring to fruition a terrorist attack avenging ▇▇▇. Indeed, in the evening of January 15, 2002, ▇▇▇▇▇▇▇ gave a weapon to ▇▇▇▇ for the purpose of perpetrating the above mentioned terrorist attack. On the evening of that day, members of ▇▇▇▇'s cell fired at the car of Yoela Chen, of blessed memory, near Givat Ze'ev, murdered her and injured the passenger who was with her (on this terrorist attack, see Chapter E (7), below).

[Stamp] P 7: 000399

The Defendant confessed during the course of his interrogation that after the death of ▓, he told ▓ that he was interested in a revenge terrorist attack, and that ▓ and his comrades perpetrated the terrorist attack in Givat Ze'ev and reported to him later that one person was killed in the terrorist attack (Transcript Prosecution/98 (k), on pp. 44 – 45). He even confessed that this terrorist attack was carried out in accordance with his orders and took responsibility for its perpetration (Transcript Prosecution/23 Sections 8 – 10, which was submitted and verified by an interrogator by the name of "Danny", on p. 90; Transcript Prosecution/24 Section 5 and the introduction to Transcript Prosecution/38 that were submitted and verified by an interrogator by the name of "Smith", on p. 85; Transcript Prosecution/26 Sections 3 – 6, which was submitted and verified by an interrogator by the name of "Nadav", on p. 79). The Defendant said, "**I said in the mourners' tent, that we need to avenge and respond to an event like this**… ", although he claimed that he did not "command" ▓ ▓. During one of his interrogations, the Defendant confessed, "**We said to ▓ something like implement a terrorist attack**" (Conversation Transcript Prosecution/98 (g) on p. 19 and also on pp. 20 – 45).

The Defendant explained that the assassination of ▓ led him to lose control of Fatah, and therefore he "**called for a response to the targeted assassination of ▓ in all media outlets… and responses did begin. For the first time, Fatah crossed the red line and carried out terrorist attacks within Israel**" (Transcript of Interrogation Prosecution/98 (j) on pp. 30-31 and Prosecution/98 (k) on pp. 9-

[Stamp] P 7: 000399 [continued]

10, 12-15, 44-45). He noted during the course of his interrogation that the order that was given to perpetrate a terrorist attack in revenge for the killing of ▮▮▮▮ derived from his feeling of responsibility for the death of ▮▮▮ during a cease-fire, when the Defendant had called on all of the factions to stop the terrorist attacks because of the commitment given by the head of the Israel Security Agency that there would not be any targeted assassinations against leaders of Fatah; this was the only time when he went against Arafat who, at the time, asked that there be no terrorist attacks (Transcript Prosecution/31 Section 12, which was submitted and verified by an interrogator by the name of "Mofaz", on p. 58; Conversation Transcript Prosecution/98 (j) on pp. 29 – 31; Conversation Transcript Prosecution/98 (k) on pp. 11 – 13).

This confession of the Defendant corresponds with statements that were made by ▮▮▮▮ during the course of his interrogation (see Section 30, above), as well as with statements that were made by ▮▮▮ (Statement Prosecution/156 (b) on p. 5) and ▮▮▮ (see Section 53 above).

**(bb) Murder of the Greek Orthodox monk in Ma'ale Adumim**

The Defendant confirmed that when ▮▮▮ proposed the perpetration of a suicide terrorist attack, he referred him to ▮▮▮ so that he could direct him towards the type of terrorist attacks that Fatah cells carry out. The result of this was the terrorist attack in Ma'ale Adumim, in which the Greek Orthodox monk was murdered because it was thought he was a Jew (see statements by ▮▮▮ in Sections 42 – 43 above and Chapter E (3) below that deals with this terrorist attack).

**(cc) Terrorist attack on the Seafood Market Restaurant in Tel Aviv**

During the course of his interrogation, the Defendant clearly connected himself to the terrorist attack at the Seafood Market Restaurant in Tel Aviv, in which three people were murdered (on this terrorist attack see Chapter E (12) below). Although at the beginning of his Israel Security Agency interrogation, the Defendant claimed that he did not have any connection to this terrorist attack, which ▮▮▮ was behind, and that Arafat was very angry about the perpetration of this terrorist attack (Transcript Prosecution/25 Section 12-13, which was submitted and verified by an interrogator by the name of "Mofaz", on p. 58). However, as his interrogation continued, the Defendant admitted that he knew about the intent to perpetrate this terrorist attack from his close associate ▮▮▮, who was one of the people who planned the terrorist attack, and this was approximately one week **before** it was carried out ; ▮▮▮ informed the Defendant that ▮▮▮ – the terrorist – was ready to perpetrate a terrorist attack. The Defendant emphasized that he was not the one who supervised the perpetration of the terrorist attack and that he had instructed ▮▮▮ to perpetrate the attack in Judea and Samaria,

[Stamp] P 7: 000400

in a settlement or at a military roadblock, and not within Israel (Transcript Prosecution/44 Sections 3-7 and Prosecution/53 Section 3, which were submitted and verified by an interrogator by the name of "Mofaz", on p. 58; Transcript Prosecution/50 Section 1, which was submitted and verified by an interrogator by the name of "Wadi", on p. 96; Transcript Prosecution/52 that was submitted and verified by an interrogator by the name of "Smith" on p. 85).

These statements by the Defendant correspond with his version during the interrogation of ▮▮▮▮▮▮ [Translator's note: as written], aside from the fact that the latter said during the course of his interrogation that he reported to the Defendant not a short time prior to the terrorist attack but rather when the terrorist was already on his way, and that the Defendant was involved in wording the announcement taking responsibility after the terrorist attack was carried out (see Section 29 above). The Defendant, in contrast, said that he was not involved in wording the announcement taking responsibility for this terrorist attack although he did admit to giving his approval to the announcement taking responsibility for another terrorist attack that was carried out on the Atara Bridge (Terrorist Attack No. 18 in the appendix to the indictment) (Transcript Prosecution/52 as referenced above and Transcript Prosecution/58 Section 3, which was submitted and verified by an interrogator by the name of "Mofaz", on p. 58).

**In conclusion**: Despite what emerges from the words of ▮▮▮▮▮▮, the Defendant admitted that he gave advance approval for perpetrating this particular terrorist attack, even if the orders were to kill other people in a different place.

**(dd) Attempted terrorist attack near the Malha Mall in Jerusalem**

During his interogation, the Defendant said that he had provided assistance, by means of ▮▮▮▮▮▮ ▮▮▮▮▮▮, to the terrorism operatives who perpetrated attacks in the Hebron area. One day, ▮▮▮▮▮▮ reported that one of these operatives (▮▮▮▮▮▮) was planning a suicide terrorist attack in Jerusalem. The Defendant said that he issued orders, by means of ▮▮▮▮▮▮ ▮▮▮▮▮▮, that the terrorist attack should be in the Occupied Territories and not within Israel (for more on this terrorist attack, see Chapter E (20) below). The next day, he received a report that the suicide terrorist attack

[Stamp] P 7: 000400 [continued]

near the Malha Mall in Jerusalem had failed (Transcript Prosecution/36, which was submitted and verified by an interrogator by the name of "Smith", on p. 85). In this case, too, the Defendant approved the terrorist attack against Israel, although in a different location.

**(3) Provision of funds, weapons and explosives for carrying out terrorist attacks**

67. At the beginning of his Israel Security Agency interrogation, the Defendant claimed that he was not involved in terrorism and that he never given anyone weapons and had not shot a gun (Transcript Prosecution/10 Section 1, which was submitted and verified by an interrogator by the name of "Danny", on p. 90). However, later in the interrogation the Defendent did admit that he had been responsible for giving money, weapons and explosives to the field cells belonging to the Tanzim and al-Aqsa Martyrs Brigades and that he knew that they were using them for terrorist attacks against Israel.

As the Defendant said, "**As part of my position as Secretary General of the Fatah, I was responsible for everything that was done, including supplying money to cells, purchasing weapons and carrying out terrorist attacks**." (See the quote in Transcript Prosecution/29 Section 61 as mentioned above, and also Transcript Prosecution/59 Section 7, which was submitted and verified by an interrogator by the name of "Wadi", on p. 96).

The Defendant explained that he would transmit cells' requests for the purchase of weapons to Yasser Arafat under the heading "Personal Assistance" or "Financial Assistance" (Transcripts Prosecution/22 Section 6 and Prosecution/25 Section 14 that were submitted and verified by an interrogator by the name of "Mofaz", on p. 58). The Defendant also admitted that by purchasing weapons for cells, he acquired influence over their activities (see Section 61, above). In addition, the Defendant admitted that he gave financial assistance to ▮▮▮▮ and ▮▮▮▮ and supported them so they could perpetrate terrorist attacks (see Section 62 above).

Document Prosecution/5 (70 – 73) that was seized during Operation "Protective Shield" is a letter dated January 20, 2002, from ▮▮▮▮ to the Defendant, in which ▮▮▮▮ requests assistance for a list of operatives, including those who were involved in terrorists attacks in accordance with evidence presented in this case; the Defendant directed the request to Yasser Arafat in his own handwriting (in accordance with the Opinion of DIFS Prosecution/5). Another seized letter is Prosecution/5 (104) in which a wanted man named ▮▮▮▮ wrote to the Defendant asking that he return his weapons that had been confiscated; the Defendant's handwriting appears on the document (Opinion of DIFS Prosecution/5). In Letter Prosecution/5 (103), a group of operatives approached the

[Stamp] P 7: 000401