85. ▄▄▄▄▄ said during the course of his interrogation that he gave his MP5 rifle to ▄▄▄▄ after ▄▄▄▄ requested it for his cell, and a short time later, he heard from ▄▄▄▄ and also on the news that a member of his cell perpetrated a terrorist attack in which three Jews were killed near Beit Ghur (Statement Prosecution/165 (a) on p. 2, which was submitted by ▄▄▄▄ on p. 184). ▄▄▄▄ also said during interrogation that he received the MP5 rifle and a full cartridge of bullets from ▄▄▄▄ and gave them to two members of his cell, ▄▄▄▄ and ▄▄▄▄. The two told him that they perpetrated the terrorist attack near Beit Ghur in which three Israelis were killed (Statement Prosecution/156 (b) on p. 3, which was submitted by an interrogator by the name of Dahan on p. 198).

The terrorist who perpetrated the attack, ▄▄▄▄, confirmed during interrogation that he and another person perpetrated the terrorist attack near Beit Ghur on Route 443 by the Dor Energy gas station by firing at a white Passat car (see photographs). He noted that the shots were fired with an MP5 rifle that he received from ▄▄▄▄ and that his partner in the terrorist attack was armed with a Kalashnikov. On the following day, ▄▄▄▄ heard that three Israelis were killed as a result of the terrorist attack and reported this to ▄▄▄▄, who passed a report on to the Defendant (Statement Prosecution/160 (a) on pp. 4 – 5, which was submitted by Dahan on p. 198). ▄▄▄▄ refused to answer questions during his testimony. Consequently, he was declared a hostile witness and his statements Prosecution/160 (a) – (c) were submitted together with the indictment verdict and sentence in his case (Prosecution/159 (a) – (d)). During his testimony he said only, "**I have said what I had to say and do not want to say anything else**" (on p. 73). ▄▄▄▄ was convicted of perpetrating this terrorist attack.

86. No evidence was presented connecting the Defendant to this terrorist attack other than his indirect connection, in accordance with that which has been set forth above, in the cases of the terrorist attacks in which his close associates, ▄▄▄▄ and ▄▄▄▄, were involved (see Section 80 above). The Defendant supplied money and weapons to the members of the cell, by way of ▄▄▄▄, in order to carry out terrorist attacks and the weaponry used for this terrorist attack was supplied by ▄▄▄▄.

The question of whether this is sufficient to substantiate the Defendant's criminal liability for the acts of murder which were perpetrated during this terrorist attack when there is no evidence connecting the Defendant directly to this terrorist attack, will be examined in the chapter of conclusions.

(5) **Murder of Meir Weissboiz, of blessed memory, on Route No. 9 in Jerusalem**

[Stamp] P 7: 000407 [continued]

87. On September 15, 2001, at 9:15 p.m., shots were fired from an ambush on a vehicle traveling on Route No. 9 in Jerusalem, from French Hill towards Golda Meir Boulevard. The vehicle, a white Renault Express, was driven by Moshe Weiss, who testified that he was injured by a bullet that is lodged in his body – in his spine – to this day, and his cousin Meir Weissboiz, of blessed memory, was killed by the shots (on p. 138, Death Certificate Prosecution/132 (b), Action Report of ▇▇▇ Prosecution/132 (c) and the testimony of ▇▇▇ on p. 132, and also the Photograph Board Prosecution/132 (c)). Bullet shells were collected at the scene and sent to DIFS for examination, which determined that they were apparently fired from a pistol and an MP5 submachine gun from which the fatal shots that killed the three people mentioned in incident No. 4, above, were fired (DIFS Expert Opinion Prosecution/132 (d)).

88. ▇▇▇ said in his Statement Prosecution/160 (a) on p. 6, that was collected by ▇▇▇ (on p. 198 of the transcript) that he received the pistol and the MP5 submachine gun from ▇▇▇ and traveled with two other people (▇▇▇ and ▇▇▇) in the car until they reached Route No. 9 in the direction of Ramot and French Hill. When they saw the white utility vehicle, they began to fire at its passengers and fled to Ramallah. After the incident, ▇▇▇ asked ▇▇▇, who worked in the office of the Defendant, to report to the Defendant and to ▇▇▇ about the shooting. The following day, he heard that one of the passengers who was injured by the shots had died of his wounds (see also Section 85 above, with respect to ▇▇▇'s testimony). ▇▇▇'s statements are supported by comments said by ▇▇▇ and ▇▇▇ in their interrogations (see Section 85 above).

89. The connection of the Defendant to this terrorist attack, like the attack in Section 4 above, which was also perpetrated by ▇▇▇, is not direct, since no evidence was submitted with respect to the Defendant's involvement in this terrorist attack. The indirect connection of the Defendant to this terrorist attack is derived from the fact that it was executed by his close associates and assistants, ▇▇▇ and ▇▇▇, whose activities the Defendant funded, including the purchase of weapons.

The legal question of whether this is sufficient to substantiate the criminal liability of the Defendant for the act of murder that was carried out during this terrorist attack, when there is no evidence connecting the Defendant directly to this particular terrorist attack, will be examined in the chapter of conclusions.

**(6)** **Murder of Eliahu Cohen, of blessed memory, in the shooting terrorist attack on Route 443 near Givat Ze'ev**

[Stamp] P 7: 000408

90. On December 21, 2000, at 8:30 p.m., shots were fired from an ambush at the car of Eliahu Cohen, of blessed memory, traveling on Route 443 approximately 1.5 km [0.93 miles] from the settlement Givat Ze'ev (see the Death Certificate Prosecution/133 (a), Pathology Opinion Prosecution/133 (c) and the report of the mobile DIFS Laboratory Prosecution/133 (c) about which ▬▬▬ testified on p. 127). ▬▬▬, an eyewitness to the terrorist attack, testified about it (on p. 149). Examination of the bullet shells that were gathered at the scene found that the weaponry used in this terrorist attack was apparently the Kalashnikov rifle that was also used to murder the Kahane couple, of blessed memory (see Opinion Prosecution/133 (d) and Prosecution/128 (f)).

91. During the course of his interrogation, ▬▬▬ spoke about the activities of the ▬▬▬ cell, which perpetrated this terrorist attack (Statement Prosecution/149 (a) on pp. 10 – 12, which was collected by ▬▬▬ his testimony is on p. 194). ▬▬▬ said during interrogation that he supplied ▬▬▬ with the Kalashnikov rifle and ammunition that he received for this purpose from ▬▬▬ and that he gave ▬▬▬ permission to perpetrate a shooting terrorist attack on Route 443 where Eliahu Cohen, of blessed memory, was killed. ▬▬▬ also said that the terrorist attack was carried out by ▬▬▬ and ▬▬▬ on the basis of what ▬▬▬ told him after the terrorist act. ▬▬▬ was not a witness in this trial, and the interrogation of ▬▬▬, who did testifiy before us, did not relate to this event and this terrorist attack was not included in the indictment filed against ▬▬▬ (Prosecution/157 (a)).

In light of that which was mentioned above, we have before us only the testimony of ▬▬▬, in which he said that he approved a shooting terrorist attack against an Israeli vehicle on Route 443 in late 2000, and that he supplied the weapon to the perpetrators. We do not have before us any admissible evidence with respect to the identity of the person who perpetrated the terrorist attack, meaning that we do not have any admissible evidence connecting the Defendant to a terrorist attack perpetrated through ▬▬▬.

The only evidence before us is that the Defendant assisted ▓▓▓▓ in purchasing weapons and ammunition for terrorist attacks and that ▓▓▓▓ gave the weapon that was purchased with the assistance of the Defendant to ▓▓▓▓ in order to perpetrate a shooting terrorist attack (this is the same situation as in the case of the murder of the Kahane couple, of blessed memory, which was carried out using the same weapon; see Chapter E (1) above).

**(7) Murder of Yoela Chen, of blessed memory, near the Givonim gas station on Route 443**

92. On January 15, 2002, at 7:55 p.m., Yoela Chen, of blessed memory, arrived in a Fiat Uno at the gas station near the Givonim intersection. Rochelle Eini was sitting next to her. Two terrorists approached her car and shot dozens of bullets at the two, from short range. As a result of the shooting, Yoela Chen, of blessed memory, was murdered (Death Certificate 134 (a)) and Rochelle Eini was injured in her head and shoulder. An eyewitness to the event, ▓▓▓▓ testified he saw a young man running away towards the neighboring village of al-Jib after the shooting, and he helped rescue the travelers (on p. 143). ▓▓▓▓ and ▓▓▓▓ described the incidents in similar manner (on p. 130 of the transcript and Reports Prosecution/134 (b)-(d.1), in addition to the Photograph Board Prosecution/134 (b) and Prosecution/134 (d.2)).

93. The terrorist attack in which Yoela Chen, of blessed memory, was murdered was carried out following direct orders given by the Defendant in revenge for the killing of ▓▓▓▓ the day before the terrorist attack, as the Defendant admitted during the course of his interrogation. During the interrogation, the Defendant said that he instructed his close associate, ▓▓▓▓, to perpetrate this revenge terrorist attack and that ▓▓▓▓ reported to him that the terrorist attack had been perpetrated. The Defendant even took responsibility for perpetrating this attack and noted that this was the first time that Fatah had perpetrated an attack deep within Israel (see Section 66 (a) above.)

The Defendant's comments during the course of his interrogation are consistent with those of ▓▓▓▓, ▓▓▓▓ and ▓▓▓▓ during their interrogations (see Sections 30 and 53 above; ▓▓▓▓'s Statement Prosecution/156 (b) on pp. 5-6 about which collection ▓▓▓▓ testified, on p. 198; and the Statement of ▓▓▓▓ Prosecution/165 (a) on p. 3 and Prosecution/165 (c) on pp. 1-2, about which collection ▓▓▓▓ testified, on p. 184.) They described the terrorist attack that was carried out at the gas station by shooting at a Fiat Uno car in which one woman was murdered and her companion was injured. ▓▓▓▓, who actually fired the shots, claimed that he originally decided not to shoot at the two because they were women but after they began to shout, he shot at them, as did his comrade ▓▓▓▓.

[Stamp] P 7: 000409

███████ claimed that he perpetrated the terrorist attack in accordance with the orders given by ███████, while the latter claimed that ███████ was the one who initiated the terrorist attack and therefore he gave him the MP5 rifle. ███████ claimed in his statement that ███████ told him that he had reported his intentions to perpetrate a terrorist attack before he perpetrated it and the Defendant told him not to undertake this terrorist attack.

███████ explained that ███████ was the Defendant's bodyguard and driver and that the Defendant feared for his life. In the conversation between the Defendant and ███████ after they were arrested, which was recorded without their knowledge, the two coordinated versions with respect to this terrorist attack and ███████ told the Defendant that he emphasized during the course of his interrogation that he had given the orders to perpetrate this terrorist attack behind the Defendant's back (Transcript of Conversation Prosecution/128 (c) on pp. 14, 17). However, the Defendant, as noted above, admitted that he gave orders to perpetrate this terrorist attack and therefore it is clear that his close associate ███████ tried to save him from being directly involved in this terrorist attack, like other terrorist attacks.

**(8) <u>Murder of six people in David's Palace Banquet Hall in Hadera</u>**

94. On January 17, 2002, at 10:45 p.m., a shooting terrorist attack was carried out at David's Palace Banquet Hall in Hadera. The terrorist, ███████, shot the security guard at the entrance to the hall, charged in, and began firing an automatic weapon at the crowd, until several people overtook him and he was shot to death (Pathologist's Opinion Prosecution/135 (j)). They were celebrating at the Bat Mitzvah party of Nina Kardashova. As a result of this shooting, six people were murdered and dozens were injured, some of them seriously. Those who were murdered are: Boris Melikhov, of blessed memory, (Death Certificate Prosecution/135 (b)); Dina Binayev, of blessed memory, (Death Certificate Prosecution/135 (c)); Anatoly Bakshayev, of blessed memory, (Death Certificate Prosecution/135 (d)); Avi Yazdi, of blessed memory, (Death Certificate Prosecution/135 (e)); Edward

[Stamp] P 7: 000409 [continued]

Bakshayev, of blessed memory, (Death Certificate Prosecution/135 (f)); and Aharon Ben Yisrael-Ellis, of blessed memory, (Death Certificate Prosecution/135 (g)). During his testimony, eyewitness ▓▓▓▓▓▓▓▓▓▓ related the course of events (on p. 125), and the incident can also be seen in the police presentation and cassettes that were recorded during the incident (Prosecution/135 (a), Prosecution/135 (k) – (l)). An M-16 assault rifle and a grenade that were used by the terrorist were seized at the scene (see Opinion Prosecution/135 (g) – (i) and the testimony of Superintendent Leifer on p. 130).

95. ▓▓▓▓▓▓▓ was responsible for the perpetration of this terrorist attack and he was the one who provided the terrorist ▓▓▓▓ with the weapon for this purpose (see his statement Prosecution/172 (b), about which collection Major ▓▓▓▓ testified on p. 191). This also emerges from the statement given by ▓▓▓▓▓▓▓ who said that ▓▓▓▓ reported to him on the terrorist attack that was carried out in the banquet hall in Hadera (Statement Prosecution/165 (d) about which collection ▓▓▓▓▓▓▓▓▓▓▓▓▓ testified on p. 171). ▓▓▓▓▓▓▓ said that he heard about perpetration of the terrorist attack on television while he was with the Defendant and immediately called ▓▓▓▓, who took responsibility for perpetrating the terrorist attack.

▓▓▓▓▓▓▓ also related to this terrorist attack during the course of his interrogation and he also explained that it was in revenge for the targeted assassination of ▓▓▓▓▓▓ and therefore the terrorist departed from Tulkarm, where ▓▓▓▓ had lived (Prosecution/149 (b) on pp. 14-15 about which collection ▓▓▓▓▓▓▓▓▓▓▓ testified on p. 194).

96. There is no direct evidence that the Defendant was directly involved in the planning of the above mentioned terrorist attack or knew about its perpetration in advance. The Defendant claimed that he would hear reports of terrorist attacks from ▓▓▓▓▓▓▓ and ▓▓▓▓ only after they occurred, and in his conversation with Agent John Doe No. 1 he said that he knew about this terrorist attack only after the fact (Report Prosecution/118 Section 4 that was submitted by "Robert"). The indirect connection of the Defendant to the terrorist attack in Hadera is created by the fact that he supplied ▓▓▓▓ with money, weapons and explosives in order to carry out terrorist attacks and that the latter considered him a leader and commander and therefore reported to him after every terrorist attack. The Defendant admitted to providing ▓▓▓▓ with money in order to purchase weapons and said that when he wanted to ensure that the terrorist attacks would cease he would also contact ▓▓▓▓ about this (see Section 23, above). In spite of this, the Defendant did not consider himself responsibile for the activities of ▓▓▓▓ unlike the activities of ▓▓▓▓▓▓▓▓, ▓▓▓▓ and ▓▓▓▓▓▓▓ (see Sections 60 and 65, above). During the course of his

[Stamp] P 7: 000410

interrogation, ▌ also said that he perpetrated the terrorist attacks that he initiated within the framework of Tanzim Fatah for which the Defendant was responsible, and that the Defendant helped them with funding terrorist attacks and supplying weapons. He noted that the Defendant was his superior (see Sections 21-22, above).

The legal question of whether all this is sufficient to substantiate the Defendant's criminal liability for the acts of murder that have been carried out during this terrorist attack – when there is no evidence directly connecting the Defendant to the terrorist attack – will be examined in the chapter of conclusions.

**(9) Murder of two women in the shooting terrorist attack at the corner of Jaffa Road and Lunz Street in Jerusalem**

97. On January 22, 2002, at 4:20 p.m., the terrorist Sa'id Ramadan opened fire with an M-16 rifle at passersby on Jaffa Street, at the corner of Lunz, in Jerusalem until he was shot and killed. As a result of the shooting, Sarah Hamburger, of blessed memory, and Ora Sandler, of blessed memory, were murdered (Death Certificates Prosecution/136 (b) – (c)), and dozens of civilians were injured. ▌, who killed the terrorist, testified regarding this incident (on p. 121). Similarly, a police presentation with respect to the incident was submitted in addition to the action report of ▌ who testified during the trial (Prosecution/136 (a), Prosecution/136 (d) and testimony on p. 132). The terrorist's weapon was seized and sent to DIFS (Prosecution/136 (e) and testimony of ▌ and ▌ on pp. 130 – 134).

98. ▌ took responsibility for the perpetration of this terrorist attack (see Statement Prosecution/165 (a) on pp. 4 – 5, about which collection ▌ testified on p. 184). He said that he decided to insert a suicide terrorist bomber into Israel and for that was assisted by ▌ who sent the terrorist Sa'id Ramadan to him. The two prepared the terrorist for the terrorist attack, took him to pray, bought him clothing and obtained an M-16 rifle and bullets for him. That day, in the afternoon, ▌ heard about the terrorist attack that had been perpetrated in Jerusalem.

[Stamp] P 7: 000410 [continued]

There is no direct evidence that connects the Defendant to this terrorist attack and he even said during the course of his interrogation that he and Arafat were angry at ▓▓▓▓ ▓▓▓▓▓▓ because this terrorist attack had been perpetrated (Transcript of Conversation Prosecution/98 (k) on p. 32). The indirect involvement of the Defendant in the terrorist attacks that had been carried out by ▓▓▓▓▓▓▓▓▓ and ▓▓▓▓, by themselves or through others, was explained above. The legal question about whether this is sufficient in order to substantiate the Defendant's criminal liability for the acts of murder that have been carried out by this terrorist attack – where there is no evidence connecting the Defendant directly to the terrorist attacks – will be examined in the chapter of conclusions.

**(10) Shooting terrorist attack in the Neve Ya'akov neighborhood in Jerusalem, in which police officer Galit Arbiv, of blessed memory, was killed**

99. On February 25, 2002, at 6:25 p.m., a terrorist attack was carried out by a single terrorist armed with an M-16 rifle and a hand grenade on the main road of the Neve Ya'akov neighborhood in Jerusalem.

   From the testimony of an eyewitness, police officer ▓▓▓▓▓▓▓, it becomes apparent that the terrorist opened fire on vehicles that were traveling on the road and also at civilians and police officers who were at the scene. Police officer Galit Arbiv, of blessed memory, was sitting in the police car with ▓▓▓▓▓▓, and charged at the terrorist with her pistol drawn. The terrorist murdered police officer Arbiv, of blessed memory, by shooting her (Death Certificate Prosecution/137 (b)), seriously injured police officer ▓▓▓▓▓, who remains disabled to this day, and police officer Amichai Dahan. The grenade that was thrown by the terrorist did not explode (see ▓▓▓▓▓▓'s testimony on p. 127, the testimony of ▓▓▓▓▓▓▓▓▓▓▓▓ on p. 132 and the reports and photographs that were submitted in Prosecution/137 (c), Prosecution/137 (g) plus Presentation Prosecution/137 (a) and the Photograph Board Prosecution/137 (g)). The terrorist weapons, the hand grenade that did not explode and the spent bullet shells were collected and sent to DIFS for examination (testimony of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on p. 130, Opinion of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Prosecution/137 (d) – (e) and the Opinion of ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ 137 (e)).

100. The terrorist who was captured during the attack is ▓▓▓▓▓▓▓, in accordance with that which has been set forth by ▓▓▓▓▓▓ in his Statement Prosecution/149 (c) on pp. 11 – 12 (which was submitted by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on p. 207). ▓▓▓▓▓▓▓ said that when he and his brother ▓▓▓▓▓▓▓▓▓▓▓ saw the terrorist attack in Neve Ya'akov on television, his brother reminded him that the terrorist ▓▓▓▓▓▓ had been in their home the previous day, and ▓▓▓▓▓▓ said that he was the one who had given ▓▓▓▓▓▓

[Stamp] P 7: 000411

the M-16 rifle and bullets and sent him to perpetrate a terrorist attack after filming a video tape, which he showed his brother ▓▓▓ after the terrorist attack. ▓▓▓ told his brother ▓▓▓ that he had received the weapon and the terrorist ▓▓▓ from ▓▓▓. In his above mentioned statement, ▓▓▓ expressed anger about this and explained that this terrorist attack might entrap the Defendant because of his close ties to ▓▓▓ ▓▓▓, when it transpired that the terrorist had survived and would be interrogated by the Israel Security Agency.

In his above mentioned statement, ▓▓▓ also said that Yasser Arafat summoned the Defendant and ▓▓▓ to his office as a result of this terrorist attack. ▓▓▓ ▓▓▓ fled and told ▓▓▓ that it is likely that they would arrest the Defendant because of this terrorist attack. The Defendant told ▓▓▓ later that he explained to Arafat that there was no instruction with respect to a cease-fire at that time and then he – the Defendant – stood behind his people as long as Arafat had not issued a presidential order to stop the terrorist attacks. ▓▓▓ also said in his statement that ▓▓▓ ▓▓▓ admitted to him that he had given the weapon to the brother of ▓▓▓ ▓▓▓ in order to perpetrate the terrorist attack in Neve Ya'akov.

101. From that which has been set forth above, it becomes apparent that ▓▓▓ did not take part in the planning and perpetration of this terrorist attack, but that it was done by his brother ▓▓▓ and by ▓▓▓, who were witnesses at the trial. ▓▓▓ ▓▓▓ was convicted, on the basis of his confession, for several acts of terrorism, including responsibility for implementing the above mentioned terrorist attack in Neve Ya'akov (see item 13 in the amended Indictment Prosecution/161 (a), and Ruling Prosecution/161 (b)). ▓▓▓ told of his responsibility for the above mentioned terrorist attack, in accordance with that which has been set forth above, in his Statement Prosecution/162 (a)-(b), which was collected by ▓▓▓ (his testimony is on p. 194) and ▓▓▓ (his testimony is on p. 184).

In his above mentioned statement (Prosecution/162 (a) on pp. 6-9, Prosecution/162 (b) on pp. 2-4), ▓▓▓ said that he prepared ▓▓▓ for the terrorist attack, arranged for someone to transport him, and gave him the shrapnel grenade and an M-16 rifle with bullets. While he was preparing ▓▓▓ for the terrorist attack, ▓▓▓ came to inquire about how preparations for the terrorist attack were progressing. ▓▓▓ ▓▓▓ wanted the terrorist attack to be perpetrated in a crowded part of Jerusalem; however, they finally agreed that it would perpetrated in northern Jerusalem

[Stamp] P 7: 000411 [continued]

because of the roadblocks, and ▮▮▮▮▮ gave his approval for this.

102. During the course of his interrogation, ▮▮▮▮▮ confirmed his connection to the terrorist attack in Neve Ya'akov. In his statement Prosecution/165 (a), he said that ▮▮▮▮▮ sent the terrorist ▮▮▮▮▮ to him in order to perpetrate the terrorist attack in Neve Ya'akov, and he referred ▮▮▮▮▮ to ▮▮▮▮▮ so that he could assist him in entering Jerusalem (Statement Prosecution/165 (a) on p. 6, which was gathered by ▮▮▮▮▮ in accordance with his testimony on p. 184). ▮▮▮▮▮, like his friend ▮▮▮▮▮, said during the course of his interrogation that he was summoned, together with the Defendant, to Arafat's office as a result of this terrorist attack; the Defendant asked him if he was responsible for the terrorist attack and ▮▮▮▮▮ responded in the affirmative, and heard from the Defendant that Arafat was angry about the terrorist attack (Statement Prosecution/165 (c) on p. 5 that was collected by ▮▮▮▮▮ in accordance with his testimony on p. 184).

103. On the basis of the above mentioned, the terrorist attack was planned by ▮▮▮▮▮ and ▮▮▮▮▮. During the meeting between ▮▮▮▮▮ and the Defendant after their arrests, when they were recorded without their knowledge, ▮▮▮▮▮ repeated several times and emphasized to the Defendant that during the course of his interrogation he had said that the Defendant heard about this terrorist attack only after it was carried out (Transcript of the Conversation Prosecution/127 (c) on pp. 4, 11).

There is no evidence that connects the Defendant directly to this terrorist attack, other than the connection created by his general, indirect involvement to the terrorist attacks that were planned and perpetrated by ▮▮▮▮▮ and ▮▮▮▮▮, as explained above (see Sections 80, 86 and 96 above). There is a reason that Yasser Arafat summoned ▮▮▮▮▮ for clarification after this terrorist attack was carried out, since he also thought that the Defendant was the end-point for complaints in this matter. The legal question of whether this is sufficient in order to substantiate the Defendant's criminal liability for the act of murder that was carried out in this terrorist attack – where there is no evidence connecting the Defendant directly to this terrorist attack – will be examined in the chapter of conclusions.

**(11) Murder of Gad Rejwan, of blessed memory, in the Bashkevitz factory in Atarot**

104. On February 22, 2002, at 6:30 a.m., Gad Rejwan, of blessed memory, was murdered in the Bashkevitz factory in the Atarot industrial area by ▮▮▮▮▮, who had been employed in the factory in the past (Death Certificate Prosecution/138 (a) and Pathologist's Opinion Prosecution/138 (b)). ▮▮▮▮▮, who was at the scene, said that when he

[Stamp] P 7: 000412

heard shots, he saw a man running from the scene and Gad Rejwan lying on the floor and asking for someone to call for help (on p. 146).

Gad Rejwan, of blessed memory, died from the shooting, and his death was pronounced at the scene (see Action Report 138 (c) and the testimony of ▮▮▮▮ on p. 132, as well as the report from the mobile laboratory that was recorded by ▮▮▮▮ Prosecution/138 (d) and his testimony on p. 131). The photographs of the scene of this event were submitted as Exhibition Prosecution/138 (d) and 138 (f) by ▮▮▮ and ▮▮▮ during their testimony. The murder was carried out with a pistol (Opinion Prosecution/138 (e)); a number of the bullets fired from it caused fatal wounds in the body of the deceased (Opinion Prosecution/138 (b)).

105. ▮▮▮ said in his Statement Prosecution/149 (b) (on pp. 25-28) that he was approached by ▮▮▮ who said that he had worked in the Rejwan family's factory and wanted to perpetrate a terrorist attack together with a person named the ▮▮▮. The three met together and planned the attack; ▮▮▮ gave each of them a pistol. Twenty minutes later, ▮▮▮ reported to ▮▮▮ that they had perpetrated a terrorist attack, and ▮▮▮ related how he had shot Rejwan, of blessed memory, to death.

▮▮▮ called the police and took responsibility for the terrorist attack in the name of the al-Aqsa Martyrs Brigades (Statement of ▮▮▮ that was submitted by ▮▮▮ on p. 194).

106. From that which has been set forth above, it becomes apparent that there is no direct evidence with respect to the identity of the perpetrators, since that which ▮▮▮, who did not testify in this Court, told ▮▮▮ is inadmissible hearsay evidence.

However, on the basis of unequivocal circumstantial evidence it can be determined that the terrorist attack was carried out by ▮▮▮ with ▮▮▮'s assistance and authorization, as ▮▮▮ said in his testimony. ▮▮▮ said that ▮▮▮ told him that he was going to perpetrate a terrorist attack in the factory of the ▮▮▮ family, in which he had once worked, and for this purpose he equipped him

[Stamp] P 7: 000412 [continued]