In the above mentioned Criminal Appeal 2796/95, in the matter of **John Does**, four adolescents were convicted of premeditated murder, in spite of the fact that only one of them throw the grenade that caused the death of victim of the crime. One (Ze'ev) was convicted as a joint perpetrator because he took part in all of the stages of planning and perpetration, and was present at the scene when the crime was committed, in spite of the fact that he decided not to throw that the fatal grenade himself ("**he did not implement the act of killing. This is meaningless since a joint perpetrator is responsible even if he himself did not commit all of the foundations of the crime…** " – on p. 407). The second (Gershon) was convicted as a joint perpetrator even though he was not even present at the scene of the murder and his entire role was to report the deed to media after it had been committed, because he fulfilled the role that was assigned to him in advance, for the purpose of the perpetration of the crime (on p. 408). The third (Tal) was convicted as a joint perpetrator, in spite of the fact that he, too, was not present at the scene of the murder because

[Stamp] P 7: 000435 [continued]

he had participated in the planning of the crime, and was part of the group that decided to commit the murder and even was its leader (on pp. 408-409).

151. When the principal crime is preceded by a conspiracy to commit the crime, there is a tendency to consider each of the conspirators as a joint perpetrator in the main crime, and only if they took a genuine part in the commission thereof. The reason for this is that the conspiracy to commit a crime is evidence of the fact that each of the conspirators is interested in its commission. According to the statements that have been set forth by S. Z. Feller, which were quoted in the above mentioned Criminal Appeal 8573/96, in the matter of **Mercado**, on p. 550: "**Conspiracy between two or more people to commit a criminal offense includes the development of joint thought in order to realize the goal of the conspiracy – each is a future candidate to be the direct perpetrator, in the spirit of creating** *animo auctoris*."

   In the above mentioned Criminal Appeal 3390/98, in the matter of **Rosh**, on p. 878, the Honorable Justice A. Matza wrote:

   > "**The additional test with respect to 'proximity to the act', which requires that the role of each joint perpetrator be an 'internal part of the criminal act', is intended to ensure that commission of a marginal act, which on the basis of its nature could be included in the definition of 'perpetration', will not make the person who commits it responsible as a joint perpetrator when the nature of his mental basis for committing the crime is doubtful (Additional Criminal Hearing 1294/96** *Meshulam v. The State of Israel* **(hereinafter – 'the** *Meshulam* **matter [3],' on pp. 21-22).**
   >
   > **It is not the same when determining the responsibility of someone who, as a matter of principle, is included as a participant in preparing the criminal plan, and no doubt arises with respect to his having the required criminal intent for inclusion in the planned crime. This type of party to a crime carries the responsibility of a 'joint perpetrator' even if his physical contribution to commission is no greater than that of an accessory (Criminal Appeal 3596/93,** *Abu Sror v. The State of Israel***, [4], on p. 491)."**

[Stamp] P 7: 000436

**152.** With respect to **presence at the scene of the crime**, indeed this is not essential in order for a person to be considered a joint perpetrator, and in the language of the Honorable Presiding Justice A. Barak in the above mentioned Criminal Appeal 2796/95, in the matter of **John Does** (see Section 27): "**Being a joint perpetrator is not necessarily based on uniform place and time**" (see also the above mentioned Additional Criminal Hearing 1294/96, in the matter of **Meshulam**, on pp. 30, 38, 49, 51, 53 – 54 and 64). However, the non-random presence of a person at the scene where a crime is being committed does create an assumption, which may be contradicted, that he is a joint perpetrator in the crime (see: Criminal Appeal 3006/96 **Matias v. The State of Israel**, Supreme Court Laws, Volume 52 526).

**B.  The Crime of the Accessory**

[Stamp] P 7: 000436 [continued]

153. The factual basis and the mental basis of the crime of the accessory in general, and of the accessory to murder specifically, were recently clarified in a verdict that was written by the Honorable Presiding Justice A. Barak in Criminal Appeal 320/99 **Jane Doe v. The State of Israel**, PD 55 (3) 22, on pp. 31 – 37 (which was upheld in Criminal Appeal 11131/02 **Angelika Yosefov v. The State of Israel**, not yet published). The law, as determined by these rulings, can be summarized as follows:

   a. The characteristic behavior of the accessory is that it is an indirect, secondary contribution to the commission of the main crime: the contribution of the accessory is considered indirect and secondary because he does not take part in the main commission of the crime but only makes an indirect contribution to the realization of the main crime. The accessory is an "external" force who is outside the inner circle of the crime (see also: Criminal Appeal 7085/93 **Najar et al. v. The State of Israel**, PD 51 (4) 221, on p. 238).

   b. **The factual basis** for the crime of the accessory, which is a crime of behavior, is the action or lack of action which creates the conditions for realization of the factual basis of the crime that is being committed by the principal. The accessory needs to be "able" to assist in the perpetration of the main crime but there is no requirement that this assistance be effective or the condition without which the main crime could not have taken place (see also Criminal Appeal 4317/97 **Poliakov v. The State of Israel**, PD 53 (1) 289, on p. 307). Similarly, it is not necessary that the principle crime actually be committed since the crime of an accessory is not a consequential crime. In addition, it is necessary to prove as part of the factual basis of the crime of the accessory, that the circumstance relating to the criminality of this behavior is secondary and indirect.

   c. The accessory must be directed towards a crime that has a concrete purpose, meaning that the action is done in order to **assist** the commission of a specific crime, rather than simply a crime (see also Criminal Appeal 426/67 **Yosef Be'eri et al. v. The State of Israel**, PD 22 (1) 477, on p. 481; the above mentioned Criminal Appeal 7085/93, in the matter of **Najar**, on pp. 238 – 239).

   d. **The mental basis** of the crime of the accessory includes three cumulative conditions:

      (1) Awareness of the nature of the accessory behavior, meaning: of the fact that this behavior contributes to the creation of conditions for the commission of the main crime, which has a concrete goal;

[Stamp] P 7: 000437

(2) Awareness of the existence of the relevant circumstances at the time of the accessory's behavior, meaning: awareness that the principal is committing or about to commit the crime, even though awareness of the specific details of the crime is not necessary (see also the above mentioned Criminal Appeal 7085/93, in the matter of **Najar**, on pp. 238 – 239).

(3) The accessory must be aware of having the goal of assisting the principal in committing the crime or of making it easier for him to commit the crime.

The "ability to anticipate" can be applied to this requirement, meaning: the awareness of the accessory to the fact that his behavior might almost certainly be the contribution that assists the principal is weighed against his purpose for aiding him, even if he is not at all interested in the commission of the main crime (see also the minority opinion of the Honorable Justice Y. Englard in the above mentioned Criminal Appeal 4317/97 in the matter of **Poliakov**, on pp. 320 – 323 and the expert opinion of the Honorable Justice M. Ilan in Criminal Appeal 807/97 **State of Israel v. Azizian**, PD 53 (5) 747, on pp. 757 – 758).

e. When the principal crime is consequential and it requires a mental basis of haste or special intent,

[Stamp] P 7: 000437 [continued]

it is not necessary to prove that the accessory acted out of intent of this type or that he intended that the principal perpetrator would realize his goals. For example, in the case of murder, it is not necessary to prove that the accessory intended for the principal to murder the victim or that he wanted that outcome; it is sufficient that the accessory's intent be to aid the principal criminal, whatever the accessory's motivations might be.

154. With respect to the required degree of likelihood that the principal offender will commit the crime, it is important to note that in accordance with the rule that was cited by the Honorable Presiding Justice A. Barak in the above mentioned Criminal Appeal 320/99, in the matter of **Jane Doe**, it is sufficient that the accessory is **aware** of the fact that the principal offender is going to commit a crime with a concrete goal (on pp. 31 – 32 of the ruling). The requirement for awareness at a level of a **almost certain** likelihood relates to the foundation of the purpose, meaning: the accessory's awareness that his behavior is likely almost certainly to contribute to the commission of the principal crime; this type of awareness is equivalent to the goal of assisting the principal criminal. As stated by Presiding Justice A. Barak : "**The mental basis of the goal ('in order that') is therefore directed towards the act of assisting and not towards the act of the main crime**" (on p. 35).

In this context, the question arises of when it can be said that the Defendant was "aware" that the main criminal would be committing a crime with a concrete purpose.

The rule is that "turning a blind eye", which is also referred to as "intentional blindness", is considered to be equivalent to awareness of the nature of the act and other existing circumstances. This ruling is currently expressed in Section 20 (c) (1) of the Penal Code which states as follows:

> "**A person who suspects something about the nature of his behavior or the possibility of existing circumstances is considered that he was aware of them, if he avoided clarification.**"

(See: Y. Kedmi, **On Criminal Law**, updated and expanded edition (1966), Part One, on p. 37, and Criminal Appeal 3417/99 **Margalit Har-Shefi v. The State of Israel**, PD 55 (2) 735, on pp. 757 – 758).

In Y. Kedmi's above mentioned book, it is written on p. 37:

[Stamp] P 7: 000438

> "a.     Section 20 (c) (1) of the amendment anchors in firm instruction the general principle whereby: when a person actually 'suspects' that the nature of his behavior could lead him into the bounds of forbidden behavior, if there is a practical possibility that the circumstances exist that are necessary for a conviction and he refrains from clarifying the 'veracity' of the suspicion, he is considered as someone who was aware of the true nature of his behavior and the existence of the circumstance (if it is found that it actually exists).
>
> b.     Here, too… it seems that the level of suspicion needs to be at least 'the level of likelihood' meaning: it is more reasonable that the suspicion is true than that it is unfounded."

The law in this regard is clarified by Professor S. Z. Feller, **Fundamentals of Criminal Law** (Volume 1, 5744 [1984]), on p. 519, which was also referred to by the Honorable Justice M. Cheshin in the above mentioned Criminal Appeal 3417/99, on p. 758, stating:

> "**Awareness of *the possibility* of the existence of a circumstance, on which the crime is dependent, obligates a person to check, prior to the commission of his action, the situation that pertains to that circumstance, in order to refrain from it, in the event that the existence of that circumstance is confirmed.**

[Stamp] P 7: 000438 [continued]

> **If, in spite of the suspicion, the person did not do so, whether because he was determined to complete the act regardless of the circumstances or because it was more expedient for him not to know or based upon any other consideration, it means that he accepted the existence of that circumstance.**
>
> **Therefore, *conscious* disregard of the possibility that there exists a set of circumstances is considered to be equivalent to consciousness that this does exist; since this set of circumstances was apparent to the person but he did not bother to examine the situation or to clarify the circumstances. If it turns out after the fact that the relevant circumstances did in fact exist, awareness of the possibility that they might exist, because of a suspicion, is considered to be equivalent to awareness of their very existence.**

In the above mentioned book by Y. Kedmi, on p. 37, it was stated that the level of suspicion that is necessary in order to implement the law of "turning a blind eye" ranged from the level of "reasonable" prior to the amendment of 5754 [1994] to the Penal Code, to the level of "high." In this matter, Professor Feller, **Fundamentals of Criminal Law** (Volume 1) stated on p. 523 of his book as follows:

> "In our opinion there is no basis to the assumption that other than the rationality of the suspicion – which is, of course, subjective – or more precisely in lieu of its rationality, the suspicion needs to be of a high level to the point of being nearly certain or lacking in any real doubt in the mind of the person with respect to its veracity…
>
> In order to compare "turning a blind eye" to awareness, it is sufficient that there be awareness of this rational suspicion with respect to the possible existence of circumstances and refraining from the clarification of the actual situation at hand."

And on p. 524 it says:

> In conclusion, it is sufficient for the suspicion to be anchored in reality, in other words rational, in order to define the act as having been committed by "turning a blind eye" if, prior to the action, the person avoids checking the suspicion and assessing the actual situation. It is not necessary for there to be a high degree of objective likelihood that the suspicion is true.

[Stamp] P 7: 000439

The test for the existence of "turning a blind eye" that becomes tantamount to awareness is, as set forth above, a subjective one. In spite of this, the Courts regularly determine a Defendant's subjective awareness using the objective test of a reasonable person (see also: Criminal Appeal 15/78 **Moshe Bivas v. The State of Israel**, PD 32 (3) 64, on p. 83; Criminal Appeal 5612/92 **The State of Israel v. Be'eri** *et al.*, PD 48 (1) 302, on p. 363; compare with the application of the test of a reasonable man with respect to awareness of the Defendant of a high likelihood of damage to national security: Criminal Appeal 3116/99 **Yehuda Gil v. The State of Israel**, PD 54 (4) 193, on p. 204).

155. From the rulings that have been been set forth above, especially those that were made in the above mentioned Criminal Appeal 320/99 in the matter of **Jane Doe**, it becomes apparent that a person who suspects that another person is about to commit a certain crime but refrains from clarifying the issue and even helps that person to commit the crimes despite the awareness that he is, almost certainly, helping that person to commit the crime – if it is committed – is considered to be an accessory in accordance with Section 31 of the Penal Code. From these rulings, it becomes apparent that it is not necessary to prove that the accessory expected the commission of the main crime as a nearly certain possibility: it is sufficient that he is aware of the logical, reasonable and realistic possibility that the main crime will be committed and, in spite of this, he assists its commision, based upon an awareness that his behavior is likely, almost certainly, to assist the principal perpetrator. Similarly, it is not necessary to prove that the accessory desired the commission of the principal crime or that he acted out of an intent that the principal crime be committed.

However, in the above mentioned Criminal Appeal 11131/02, in the case of **Yosefov,** the Honorable Justice E. Rivlin ruled that the Prosecution needs to prove that the Defendant knew that his behavior would be likely, almost certainly, to assist the crime of murder committed by the

[Stamp] P 7: 000439 [continued]

principal offender and that: **"in order for the doctrine of foreseeability to apply, it is necessary to show, as stated, awareness of near absolute certainty of the possibility of the commission of the crime…"** (see Section 13 of the ruling). This statement is different in its nuances from that in the above mentioned Criminal Appeal 320/99, in the matter of **Jane Doe**, where the Honorable Justice Rivlin said in the above mentioned Criminal Appeal 11131/02, at the beginning of the ruling (see Section 9), that:

> **"The awareness – both with respect to the nature of the accessory conduct and with respect to the commission of the main crime – can be replaced by a suspicion with respect to the accessory nature of the act and awareness of the possibility that they are circumstances for the commission of a crime by the principal, in accordance with the orders of Section 20 (c) (1) of the Penal Code ('turning a blind eye')."**

156. From the rulings above it becomes apparent that it is not necessary to prove that the Defendant was aware of every detail with respect to the crime to which he is an accessory. In this regard, the Honorable Justice E. Rivlin wrote, in the above mentioned Criminal Appeal 1131/02, in the matter of **Yosefov**, the following statements, which are important to our case:

> "The previous Court has rightly said that awareness that the principal is going to a commit a crime does not mean awareness of all of the details of the crime that he is planning (see for example: Criminal Appeal 7085/93 Najar v. The State of Israel, PD 51 (4) 221, 239). In the matter before us, the appellant knew that Zayid, whom she accompanied, was carrying explosives with him, and that he had already carried out terrorist attacks in the past, and that he was seeking revenge for the death of his brother who had been killed by an action of the security forces. Based on the appellant's testimony, the lower Court had gained the impression that she understood quite well that Zayid was planning to perpetrate a terrorist attack in the city of Tel Aviv. In this context, the question of whether or not she knew the exact location where he intended to place the explosives is of no importance."

On the same issue, the Honorable Justice Rivlin also wrote:

[Stamp] P 7: 000440