153. היסוד העובדתי והנפשי של עבירת הסיוע בכלל, והסיוע לרצח בפרט, הובהרו לאחרונה בפסק דינו של כבוד הנשיא א' ברק בע"פ 320/99 **פלונית נגד מדינת ישראל**, פ"ד נה(3) 22, בעמ' 31-37 (אושר בע"פ 11131/02 **אנג'ליקה יוסופוב נ' מדינת ישראל**, טרם פורסם). ניתן לסכם את ההלכות שנפסקו בפסק דין זה כדלקמן:

א. המאפיין את ההתנהגות המסייעת הוא, שהיא מהווה תרומה עקיפה ומשנית לביצועה של העבירה העיקרית: התרומה של המסייע נחשבת עקיפה ומשנית, משום שהוא איננו נוטל חלק בביצוע העיקרי של העבירה, אלא רק תורם בעקיפין להשמתה של העבירה העיקרית. המסייע הוא גורם "חיצוני", אשר מצוי מחוץ למעגל הפנימי של ביצוע העבירה (ראה גם: ע"פ 7085/93 **נג'אר ואח' נ' מדינת ישראל**, פ"ד נא(4) 221, בעמ' 238).

ב. **היסוד העובדתי** של עבירת הסיוע, שהיא עבירת התנהגות, הוא מעשה או מחדל שיש בו כדי ליצור את התנאים להגשמתו של היסוד העובדתי בעבירה המבוצעת על ידי המבצע העיקרי. הסיוע צריך להיות "מסוגל" לסייע להגשמת העבירה העיקרית, אך אין דרישה שהסיוע יהיה אפקטיבי, או תנאי שבלעדיו העבירה העיקרית לא היתה מתגבשת (ראה גם ע"פ 4317/97 **פוליאקוב נ' מדינת ישראל**, פ"ד נג(1) 289, בעמ' 307). כמו כן אין דרישה שהעבירה העיקרית תתבצע בפועל, שכן עבירת הסיוע איננה עבירה תוצאתית. בנוסף, יש צורך להוכיח, כחלק מהיסוד העובדתי של עבירת הסיוע, את הנסיבה הנוגעת לפליליותה של ההתנהגות שהסיוע מהווה לה גורם משני ועקיף.

ג. הסיוע צריך שיופנה כלפי עבירה בעלת ייעוד מוחשי, דהיינו, פעולה הנעשית על מנת לסייע לביצועה של עבירה **מסוימת**, להבדיל מעבירה סתם (ראה גם ע"פ 426/67 **יוסף בארי ואח' נ' מדינת ישראל**, פ"ד כב(1) 477, בעמ' 481; ע"פ 7085/93 הנ"ל בעניין **נג'אר**, בעמ' 238-239).

ד. **היסוד הנפשי** של עבירת הסיוע כולל שלושה תנאים מצטברים:

(1) מודעות לטיב ההתנהגות המסייעת, קרי: לכך שההתנהגות תורמת ליצירת התנאים לשם עשיית עבירה עיקרית בעלת ייעוד מוחשי;

(2) מודעות לקיום הנסיבות הרלבנטיות בעת ההתנהגות המסייעת, דהיינו: מודעות לכך שהמבצע העיקרי מבצע, או עומד לבצע עבירה, הגם שלא נדרשת מודעות לכל פרטי מפרטי העבירה (ראה גם ע"פ 7085/93 הנ"ל בעניין **נג'אר**, בעמ' 238-239).

(3) לנגד עיניו של המסייע צריכה לעמוד המטרה לסייע למבצע העיקרי לבצע את העבירה, או להקל עליו את הביצוע.

על דרישה זו ניתן להחיל את "הילכת הצפיות", דהיינו: מודעותו של המסייע לכך שהתנהגותו עשויה, קרוב לודאי, להוות תרומה מסייעת למבצע העיקרי – שקולה כנגד המטרה לסייע לו, גם אם הוא לא חפץ כלל בביצוע העבירה העיקרית (ראה גם דעת המיעוט של כבוד השופט י' אנגלרד בע"פ 4317/97 הנ"ל בעניין **פוליאקוב**, בעמ' 320 -323, ודעתו של כבוד השופט מ' אילן בע"פ 807/99 **מדינת ישראל נ' עזיזיאן**, פ"ד נג(5) 747, בעמ' 757-758).

ה. כאשר העבירה העיקרית היא תוצאתית, ונדרש בה יסוד נפשי של פזיזות או כוונה מיוחדת –

P 7: 000437

אין צורך להוכיח שגם המסייע פעל מתוך פזיזות או כוונה שכזו, או שהוא התכוון לכך שהמבצע העיקרי יגשים את מטרתו. כאשר מדובר בסיוע לרצח, פירוש הדבר הוא שאין צורך להוכיח שהמסייע התכוון שהמבצע העיקרי ירצח את הקורבן, או אפילו שהוא חפץ בכך. המחשבה הפלילית של המסייע איננה צריכה להיות זהה למחשבתו של העבריין העיקרי: די בכך שהמסייע שם לנגד עיניו את המטרה לסייע לעבריין העיקרי, יהיו מניעיו של המסייע אשר יהיו.

154. לעניין דרגת ההסתברות כי העבריין העיקרי יבצע את העבירה, חשוב לציין כי על פי ההלכה שנפסקה מפי כבוד הנשיא א׳ ברק בע״פ 320/99 הנ״ל בעניין **פלונית**, די בכך שהמסייע **מודע** לכך שהמבצע העיקרי עומד לבצע עבירה בעלת ייעוד מוחשי (עמ׳ 31-32 לפסק הדין). הדרישה למודעות בדרגת הסתברות **קרובה לוודאי**, נוגעת ליסוד המטרה, קרי: מודעותו של המסייע לכך שהתנהגותו עשויה, קרוב לודאי, לתרום לביצוע העבירה העיקרית; מודעות שכזו, שקולה כנגד המטרה לסייע לעבריין העיקרי. כפי שאמר הנשיא א׳ ברק: "**היסוד הנפשי של מטרה ('כדי') מכוון איפוא כלפי פעולת הסיוע ולא כלפי פעולתו של העבריין העיקרי**" (עמ׳ 35).

בהקשר זה מתעוררת השאלה מתי נאמר כי לנאשם היתה "מודעות" לכך שהעבריין העיקרי עומד לבצע עבירה בעלת ייעוד מוחשי.

ההלכה היא כי "עצימת עיניים", המכונה אף "עיוורון מכוון", שקולה כנגד מודעות לטיב המעשה ולקיום הנסיבות. הלכה זו, מוצאת כיום את ביטויה **בסעיף 20(ג)(1) לחוק העונשין**, אשר קובע כדלקמן:

"רואים אדם שחשד בדבר טיב ההתנהגות או בדבר אפשרות קיום הנסיבות כמי שהיה מודע להם, אם נמנע מלברם."

(וראה: י׳ קדמי, **על הדין בפלילים**, עדכון והשלמה (1996), חלק ראשון, בעמ׳ 37, וע״פ 3417/99 **מרגלית הר-שפי נ׳ מדינת ישראל**, פ״ד נה(2) 735, בעמ׳ 757-758).

בספרו הנ״ל של י׳ קדמי נאמר, בעמ׳ 37:

"א.     סעיף 20(ג)(1) לתיקון, מעגן בהוראה חקוקה, את הכלל שלפיו: מקום שאדם 'חושד', בפועל, שטיב התנהגותו מביא אותה בגדרה של התנהגות אסורה או שיש אפשרות, מעשית, שמתקיימות הנסיבות הדרושות להרשעה, והוא נמנע מלברר את 'אמיתותו' של החשד, רואים אותו כמי שהיה מודע לטיבה האמיתי של ההתנהגות ולקיומה של הנסיבה (אם מתברר כי נתקיימה בפועל).

ב.     גם כאן... נראה כי רמת החשד צריכה להיות לפחות 'רמה מסתברת', לאמור: כי סביר יותר שהחשד אמיתי מאשר שאין לו אחיזה."

ההלכה בעניין זה מבוארת בספרו של פרופ׳ ש״ז פלר, **יסודות בדיני עונשין** (כרך א׳, תשמ״ד), בעמ׳ 519, כפי שאף הפנה אליה כבוד השופט מ׳ חשין בע״פ 3417/99 הנ״ל, בעמ׳ 758, לאמור:

"מודעות *לאפשרות* קיום הנסיבה, בה תלויה העבירה, מחייבת את האדם לבדוק, עובר לביצוע מעשהו, את המצב בכל הנוגע לאותה נסיבה, כדי להימנע ממנו, במקרה שקיום הנסיבה מתאושש.

אם חרף החשד, לא עשה האדם כן, בין משום שבכל תנאי היה מנוי וגמור עמו לעשות את המעשה, ובין משום שהיה לו נוח יותר שלא לדעת או מכל שיקול אחר, פירוש הדבר שהשלים עם דבר קיומה של הנסיבה.

לכן, שקולה ההתעלמות *המודעת* מאפשרות הקיום של מערכת נסיבות כנגד *מודעות* לעצם קיום זה; שהרי מערכת נסיבות זו עמדה לנגד עיני האדם, אלא שלא טרח לבדוק את מצב הדברים כדי לברנם. אם מתברר בדיעבד כי הנסיבות הרלוואנטיות אכן התקיימו, שקולה המודעות לאפשרות קיומן עקב החשד בכך, כנגד המודעות לעצם קיומן".

בספרו הנ"ל של י' קדמי, בעמ' 37, נאמר באשר לרמת החשד הדרושה לצורך יישום ההלכה בדבר "עצימת עיניים", כי לפני תיקון תשנ"ד לחוק העונשין נעה ההלכה הפסוקה בין רמה "סבירה" לבין רמה "גבוהה". בעניין זה נאמר בספרו של פרופ' פלר, **דיני עונשין**, כרך א', עמ' 523, כדלקמן:

"אין לדעתנו כל יסוד לסברה כי, מלבד רציונאליות החשד – הסובייקטיבית כמובן – או, ביתר דיוק, במקום הרציונאליות שלו, צריך החשד להיות גם בדרגה גבוהה, עד כדי הסתברות קרובה לוודאי, או עד כדי העדר ספק של ממש בלבו של אדם בדבר אמיתותו... לשם השתוות 'עצימת עיניים' למודעות, די במודעות לחשד רציונאלי בדבר אפשרות קיומן של הנסיבות ובהמנעות מלברר את הדבר לאשורו".

ובעמ' 524 נאמר:

"לסיכום, די בהיות החשד מעוגן במציאות, כלומר רציונאלי, כדי להגדיר את המעשה כמבוצע תוך 'עצימת עיניים', אם, עובר למעשה, נמנע העושה מלבדוק את החשד ומלעמוד על מצב הדברים לאשורו. אין צורך במידה גבוהה של הסתברות אובייקטיבית של אמיתות החשד".

המבחן לקיומה של "עצימת עיניים" העולה כדי מודעות הוא, כאמור לעיל, סובייקטיבי. עם זאת, בתי המשפט נוהגים להיעזר לצורך קביעת רמת מודעותו הסובייקטיבית של הנאשם גם במבחן האובייקטיבי של האדם הסביר (וראה: ע"פ 15/78 **משה ביבס נ. מדינת ישראל**, פ"ד לב(3) 64, בעמ' 83; ע"פ 5612/92 **מדינת ישראל נ. באר ואח'**, פ"ד מח(1) 302, בעמ' 363; והשווה להחלת מבחן האדם הסבר בנוגע למודעות הנאשם להסתברות גבוהה של פגיעה בבטחון המדינה: ע"פ 3116/99 **יהודה גיל נ. מדינת ישראל**, פ"ד נד(4) 193, בעמ' 204).

155. מן ההלכות שפורטו לעיל, ובעיקר אלו שנפסקו בע"פ 320/99 הנ"ל בעניין **פלונית**, עולה כי אדם אשר חושד כי חברו עומד לבצע עבירה מסוימת, אך נמנע מלברר את העניין, ואף מסייע לחברו לבצע את העבירה מתוך מודעות לכך שמעשהו יסייע, קרוב לוודאי, לביצוע העבירה בידי חברו - אם תבוצע - נחשב כמסייע על פי סעיף 31 לחוק העונשין. מהלכות אלו עולה כי אין צורך להוכיח שהמסייע צפה את ביצוע העבירה העיקרית כאפשרות קרובה לוודאי: די בכך שהיה מודע לאפשרות ההגיונית, הסבירה והממשית של ביצוע העבירה העיקרית, וחרף כך סייע לביצועה, מתוך מודעות לכך שהתנהגותו עשויה, קרוב לוודאי, לסייע למבצע העיקרי. כמו כן אין צורך להוכיח שהמסייע חפץ בביצוע העבירה העיקרית, או כי פעל מתוך כוונה שהעבירה העיקרית תבוצע.

ואולם, בע"פ 11131/02 הנ"ל בעניין **יוסופוב** נפסק מפי כב' השופט א. ריבלין כי התביעה צריכה להוכיח שהנאשם ידע שהתנהגותו עשויה לסייע, קרוב לוודאי, לביצוע עבירת רצח על ידי העבריין

העיקרי וכי: "על מנת שתוחל הלכת הצפיות, יש להראות, כאמור, מודעות בדרגה של קרוב לוודאי **לאפשרות ביצוע העבירה...**" (פסקה 19 לפסק הדין). דברים אלו שונים בנימתם מאלה שנאמרו בע"פ 320/99 הנ"ל בעניין **פלונית**, כאשר גם כב' השופט ריבלין אמר בע"פ 11131/02 הנ"ל בתחילת פסק הדין (פסקה 9), כי:

> "המודעות – הן לטיב ההתנהגות המסייעת והן לנסיבה של ביצוע העבירה העיקרית – יכול שתהיה מוחלפת בחשד באשר לטיבה של המסייע של ההתנהגות, ובמודעות לאפשרות התקיימות הנסיבה של ביצוע העבירה על ידי העבריין העיקרי, בהתאם להוראת סעיף 20 (ג)(1) לחוק העונשין ("עצימת עיניים")".

156. מן ההלכות דלעיל עולה כי לא נדרשת הוכחה לכך שהנאשם היה מודע לכל פרט מפרטי העבירה שלביצועה הוא מסייע. בעניין זה נאמרו בע"פ 11131/02 הנ"ל בעניין **יוסופוב**, מפי כב' השופט א. ריבלין, דברים בעלי חשיבות לענייננו:

> "בצדק ציין בית המשפט קמא, כי מודעות לכך שהמבצע העיקרי עומד לבצע עבירה אין משמעה מודעות לכל פרט מפרטי העבירה אותה הוא מתכנן (ראו למשל: ע"פ 7085/93 **נג'אר נ' מדינת ישראל**, פ"ד נא(4) 221, 239). בענייננו, המערערת ידעה כי זייד, אליו התלוותה, נושא עימו חומר נפץ, כי הוא ביצע כבר פיגוע בעבר, וכי הוא מבקש לנקום את מות אחיו, אשר נהרג בפעולה של כוחות הביטחון. בית המשפט קמא התרשם מעדותה של המערערת, כי זו הבינה היטב שזייד עומד לבצע פיגוע בעיר תל אביב. אין חשיבות, בהקשר זה, לשאלה אם ידעה באיזה מיקום מדוייק מתכוון הוא להניח את חומר הנפץ".

עוד נפסק מפי כב' השופט ריבלין באותו עניין:

> "אכן, כפי שכבר ציינו, אין המסייע נדרש להיות מודע לכל הפרטים של העבירה אותה עומד לבצע המבצע העיקרי. יחד עם זאת, עליו להיות מודע, בעת שהוא מגיש את הסיוע למבצע העיקרי, לכך שקיימת אפשרות כי פעולתו תסייע למבצע העיקרי בביצועה של עבירה ממשית, ובמילים אחרות – לכך שלמבצע העבירה היה "יעוד מוחשי" (ראו גם: ע"פ 426/67 **באדי נ' מדינת ישראל**, פ"ד כב(1) 477, 481-482; ע"פ 5544/91 **מויאל נ' מדינת ישראל** (לא פורסם). אין די בידיעה על נכונות ערטילאית והיפותטית של המבצע לבצע עבירה, כדי להפוך אדם למסייע.

> ייתכן אמנם, כפי שכבר ציינו, כי המודעות לקיום הנסיבה שביסוד העובדתי – כלומר מודעות לכך שהמבצע העיקרי עומד לבצע עבירה – תוחלף במודעות לאפשרות שהוא עומד לבצע עבירה.

> אך על מנת שנאמר כי המסייע "עצם את עיניו" עלינו להשתכנע כי התקיים, בפועל, חשד רציונאלי-סובייקטיבי בעיני רוחו של המסייע, לפיו עומדת להתבצע עבירה (ש"ז פלר בספרו הנ"ל (כרך א') 521-524, 530).

> זאת ועוד, על המסייע להיות ער לאפשרות שהעבירה תבוצע, בעת שהוא מושיט את הסיוע. אם סבור המסייע, בעת שהוא מבצע את הפעולות העולות לכדי סיוע, כי לא מתקיימת עוד אפשרות ממשית שהמבצע העיקרי עומד לבצע את העבירה, הרי שאין לראות בו מסייע – אף אם העריך, בשלב קודם, כי התקיימה אפשרות

שכזו".

בעניין הדרישה למודעות לגבי כוונת המבצע העיקרי לבצע עבירה בעלת יעוד מוחשי, פסק כב' השופט מ. לנדוי (כתוארו אז) בע"פ 426/67 **יוסף בארי ואח' נ' מדינת ישראל**, פד"י כב (1) 477, בעמ' 481, כי כאשר הסיוע מתבטא באספקת כלי לביצוע העבירה, כגון רכב או נשק – די בכך שהמסייע מספק את הכלי ששימש לביצוע העבירה למטרת ביצוע עבירה מאותו סוג שבוצע, ולא דווקא אותה עבירה ממש. כב' השופט לנדוי אמר שהלכה זו, הנסמכת על פסיקה אנגלית, תחול **"לפחות לגבי אותם מקרים, בהם משאיר המסייע 'שיקול דעת' לעבריין העיקרי, לבחירת שעת הכושר ומקום הכושר להגשמת הכוונה הפלילית המשותפת לשניהם".**

כך פסק כב' השופט לנדוי, במקרה הנ"ל, כי אילו הוכח שהמערער (אשר זוכה לבסוף) מסר את מכוניתו למבצע העיקרי של מעשה השוד על מנת להקל על הסתלקותו ממקום הפשע - לא היה צורך להוכיח שהוא התכוון דווקא לשוד התיירת שנשדדה בסוף.

157.   הדרישה למודעות הנאשם לקיומה של עבירה ספציפית בעלת יעוד מוחשי, מרוככת גם על ידי "הכלל בדבר כוונה מועברת", המוצא את ביטויו בסעיף 20(ג)(2) לחוק העונשין, התשל"ז-1977.

סעיף זה קובע לגבי הכוונה הפלילית כי: **"אין נפקה מינה אם נעשה מעשה באדם אחר או בנכס אחר, מזה שלגביו אמור היה המעשה להיעשות"** (וראה: י. קדמי, **על הדין בפלילים – עדכון והשלמה**, מהד' 1966, חלק ראשון, בעמ' 38). על יסוד כלל זה נפסק עוד לפני שחוקק סעיף 20(ג)( 2) לחוק בשנת תשנ"ד, כי: **"המתכוון לרצוח את זה והרג את זה, דינו דין רוצח"** (ע"פ 406/72 **שניר נ' מדינת ישראל**, פד"י כח(1) 234, בעמ' 242-243; ע"פ 388/76 **אברהים נ' מדינת ישראל**, פד"י לא(1) 601, בעמ' 607; ע"פ 6059/92 **שיבאס נ' מדינת ישראל**, תק'-על 93(4) 255; ע"פ 887/96 **בטון נ' מדינת ישראל**, תק-על 97(1) 848). כפי שאמר כב' השופט ח. כהן בעניין **שניר** הנ"ל: "אין רואים כוונה פלילית כאילו מכוונת היא לאדם מסוים דווקא". זהו אף הכלל במשפט האנגלי, כפי שציין כב' השופט ח. כהן.

ג.   **עבירת השידול וההבחנה בין מבצע בצוותא למשדל**

158.   סעיף 34ד. לחוק העונשין, תשל"ז-1977 קובע:

"מלבד אם נאמר בחיקוק או משתמע ממנו אחרת, כל דין החל על הביצוע העיקרי של העבירה המושלמת חל גם על ניסיון, שידול, ניסיון לשידול או סיוע, לאותה עבירה".

מכאן נובע כי חבותו של המשדל היא כחבותו של המבצע העיקרי, שכן המשדל נחשב כשותף ראשי של המבצע בצוותא – שלא כמו המסייע הנחשב כשותף משני – בשל תרומתו המהותית להתרחשות העבירה, המתבטאת בכך שהוא מביא אדם אחר לידי ביצוע עבירה (ראה: דברי כב' הנשיא א. ברק בע"פ 2796/95 הנ"ל בעניין **פלונים**, בעמ' 404, אשר מתייחס אל המשדל, חרף הדברים הללו, כאל "שותף עקיף", ודברי כב' השופטת ד. ביניש בע"פ 8464/99 **אביגדור אסקין נ. מדינת ישראל**, פ"ד נה(2) 65, בעמ' 82-83, למול דברי כב' השופט מ. חשין בעניין **פלונים** הנ"ל, בעמ' 416, המסתייג מן הביטוי "שותף עקיף", שכן לדעתו תרומתו של משדל הינה תרומה ישירה, ממש כתרומתו של המבצע העיקרי).

P 7: 000441

ההוראה הכלולה בסעיף 34ד. לחוק העונשין, נגזרת מן ההתייחסות אל המשדל כאל שותף ראשי לביצוע העבירה: לכן נקבע בהוראה זו, דבר שהודגש אף בפסיקה, כי עונשו של המשדל זהה לעונשו של המבצע העיקרי (ראה: ע"פ 2796/95 הנ"ל בעניין **פלונים**, בעמ' 402-401, 415; ע"פ 8469/99 הנ"ל בעניין **אסקין**, בעמ' 82; דנ"פ 1294/96 הנ"ל בעניין **משולם**, בעמ' 43-42).

159.   בע"פ 2796/95 הנ"ל בעניין **פלונים**, הבהיר כב' הנשיא א. ברק (בעמ' 404) את אחריותו של המשדל לביצוע העבירה ומהותה, לאמור:

"**תרומתו של המשדל מתבטאת בכך שהוא הביא את המבצע לידי קבלת ההחלטה לבצע את העבירה** (ראה פלר, בספרו הנ"ל (8), בעמ' 228). **הוא זה שהשפיע על המבצע – אם המבצע העצמי (או העיקרי) ואם המבצע בצוותא – והביא לידי כך שהתגבשה בו ההחלטה לבצע העבירה, ונעשו צעדים להגשמתה** (בגדרי ניסיון או ביצוע מושלם). הוא 'האב הרוחני' של העבירה' (מ. גור אריה "הצעת חוק העונשין (חלק מקדמי וחלק כללי), התשנ"ב–1992" (13), בעמ' 46). אכן, החברה מבקשת להגן על עצמה לא רק כלפי מי שמבצע עבירה – אם כמבצע עצמי ואם כמבצע בצוותא – אלא גם כלפי חוג רחב יותר של אנשים המביאים לידי כך שאחרים מבצעים עבירות...

'קירבתו' של המשדל מתבטאת בכך שהוא זה שנטע בלב העבריין העיקרי את המחשבה הפלילית לביצוע עבירה. הוא 'המבצע האינטלקטואלי' – 'auteur intellectuel' של העבירה' (ראה פלר, בספרו הנ"ל (8), בעמ' 226-225). **הוא זה שהביא לידי כך שאצל המבצע נתגבש הרעיון לבצע את העבירה – אם בכך שהוא נטע בו את הרעיון מראש, ואם על ידי כך שהטה את הכף במקום בו המבצע היסס**."

כב' השופט מ. חשין פסק בעניין **פלונים** הנ"ל בעמ' 415, כי פעילותו של המשדל מתבטאת בעיקרה בכך שבשיחתו עם אחר הוא גורם לו לבצע עבירה, אשר לולא המשדל אפשר שלא היתה מתבצעת כלל.

דברים אלו מובילים לשאלת קשר הסיבתי הנדרש בין השידול לבין ביצוע העבירה בידי המשודל. כב' הנשיא ברק פסק, בקטע המצוטט לעיל, כי המשדל הוא זה שהשפיע על המבצע להחליט לבצע את העבירה, בין אם נטע בראשו את הרעיון, ובין אם הטה את הכף במקום בו המבצע היסס (עמ' 404).

בע"פ 8469/99 הנ"ל בעניין **אסקין**, פסקה כב' השופטת ד. ביניש (בעמ' 79-78), לגבי מהות השידול ודרישת הקשר הסיבתי, כי: "**העיקר הוא כי התנהגות המשדל תהא בעלת 'אפקטיביות פוטנציאלית' העשויה להשפיע על המשודל לבצע את העבירה נשוא השידול, כך שמתקיים קשר סיבתי בין ההתנהגות המשדלת לתחילת ביצוע העבירה**". ואולם – הוסיפה כב' השופטת ביניש (בעמ' 79):

"במסגרת יסודות השידול, אין זה הכרחי, ואף אין זה מספיק, כי היוזמה או הרעיון לביצוע העבירה יהיו של 'המשדל'. הרכיב הנסיבתי בעבירת השידול – קיומו של אחר ('משודל') הטעון הנעה מנטלית לצורך קבלת ההחלטה לבצע את העבירה – עשוי להתקיים גם במצבים שבהם הרעיון העבריייני עלה לראשונה במחשבתו של 'המשודל',

אך טרם גובשה אצלו החלטה לבצעו. במקרה כאמור, אם ההתנהגות המשדלת הביאה להחלטתו הסופית של 'המשודל' לבצע את העבירה, הרי נתקיים היסוד העובדתי הנדרש בעבירת השידול״.

160. לעניין היסוד הנפשי של עבירת השידול פסקה כבי השופטת ד. ביניש בע״פ 8469/99 הנ״ל בעניין **אסקין**, בעמ׳ 81:

״ככלל, לצורך התקיימות היסוד הנפשי במסגרת פעולת השידול יש להוכיח התקיימותן של שתי דרישות: ראשית, על המשדל להיות מודע לכך שיש בהתנהגותו כדי להביא את האחר (ה׳משודל׳) לידי ביצוע העבירה נושא השידול. דרישה זו עניינה מודעות לטיב ההתנהגות המשדלת וכן מודעות לקיומו של אחר הזקוק להנעה מנטלית על מנת לבצע את העבירה נושא השידול. שנית, על המשדל להתכוון להביא את המשודל לידי ביצוע העבירה יעד השידול. לשון אחר, השידול צריך להיות מלווה בשאיפה – מטרה – מצד המשדל כי העבירה נושא השידול אכן תבוצע, על כל יסודותיה, על ידי ה״משודל״ (ראו פלר בספרו הנ״ל (כרך ב) (18), בעמ׳ 234)״.

161. בפסיקה הנוגעת לאחריותו של משדל – להבדיל מן הפסיקה הנוגעת לאחריותו של מסייע – לא צויין שהשידול צריך להתייחס לעבירה מסוימת בעלת ייעוד מוחשי, אולי משום שהדבר ברור מאליו. אך דרישה זו מובנית ביסודות עבירת השידול, ומתבקשת מקל וחומר בעניינו של המשדל, שעונשו זהה לעונשו של המבצע העיקרי (לעומת המסייע שעונשו הוא מחצית מעונשו של המבצע העיקרי). לצורך הוכחת עבירת השידול יש להראות קשר סיבתי בין השידול לבין ביצוע העבירה העיקרית בידי המשודל, ואף מטרה ושאיפה מצד המשדל שהעבירה אכן תבוצע. כל אלו מחייבים שהשידול יתייחס לעבירה ספציפית בעלת ייעוד מוחשי, כפי שנפסק אף לגבי עבירת הסיוע. וכך נאמר בספרו של ש״ז פלר, **יסודות בדיני עונשין**, תשמ״ז – 1987, כרך ב׳ בעמ׳ 226:

״ראוי להבהיר מראש כי מושג השידול, כצורת שותפות לדבר עבירה, הוא בעל משמעות שאינה תמיד הולמת את המשמעות הרגילה של מטבע לשון זה. המדובר במשמעות הנותנת ביטוי ליחס בין *פרט לפרט*, משדל למשודל, ולא גם ליחס בין פרט לבין קהל מקום שהפרט מסית, מדיח, מתסיס, קהל מסויים או קהל בלתי מוגדר, ללא הבדל הזהות הפרטית של הנמנים על אותו קהל, לבצע עבירה פלילית.

פעולות כאלה עשויות להצמיח עבירות ספציפיות, ואפילו משתמשים בו בתבה ״שדל״ לשם הגדרתן, אין זה אותו ״שידול״, כצורה של שותפות לדבר עבירה, בו נדון בהמשך״.

עם זאת, כפי שנפסק לגבי סיוע, אין צורך להוכיח שהמשדל היה מודע לכל פרט מפרטי העבירה נושא השידול, ודי בכך שהוא שידל את המבצע לעבור עבירה מאותו סוג של העבירה שבוצעה לבסוף (ראה סעיף 156 לעיל). זאת ועוד, גם לעניין השידול, כמובן, חל הכלל בדבר כוונה מועברת: אין נפקה מינה שהעבירה נושא השידול נעשתה לבסוף לגבי אדם אחר.

**כללו של דבר**: לא ניתן להרשיע אדם בעבירת שידול כללית לביצוע מעשי רצח, כאשר הוא קורא

לביצוע פיגועים כנגד ישראל; לכך קיימת העבירה של הסתה לאלימות או לטרור (סעיף 144ד2 לחוק העונשין, התשל"ז-1977). כך גם לא ניתן להרשיע אדם בעבירה של סיוע למעשי רצח, כאשר הוא מספק כספים או אמצעי לחימה לשם ביצוע עבירות שונות שאינן מסוימות. לכך קיימת העבירה של מתן אמצעים לביצוע פשע לפי סעיף 498 לחוק העונשין, התשל"ז-1977, שחוקקה במיוחד על מנת להתמודד עם מצבים בהם לא ניתן להוכיח ידיעה ודאית של מוסר האמצעים על כוונת מקבלם לבצע עבירה מסוימת, באופן שלא ניתן לראות בו מסייע (ראה דברי ההסבר להצעת חוק לתיקון פקודת החוק הפלילי (מס' 36), תשל"ג-1972, ה"ח תשל"ג 1021, בעמ' 20).

162.   אשר לקו המבחין בין משדל לבין מבצע בצוותא, פסק כב' הנשיא א. ברק בע"פ 2796/95 הנ"ל בעניין **פלונים** בעמ' 406, כי: **"תרומתו של המשדל היא בכך שהוא גרם ליצירת היסוד הנפשי של המבצעים"**, וכי: **"ככל שהשידול של המשדל אינטנסיבי יותר וככל שמתלוות אליו לא רק פעולות במישור הנפשי אלא גם פעולות במישור העובדתי, כך מתקרב המשדל למבצע בצוותא"**. בעניין **פלונים** הנ"ל הורשע הקטין ט. בעבירת רצח, כמבצע בצוותא ולא רק כמשדל, בשל זריקת רימון לעבר ערבים, אף שהוא סרב להצטרף לפעולה עצמה, משום שנפסק כי הוא השתתף בתכנון העבירה, והיה **"ראש וראשון לכולם"** (עמ' 408-409).

בנוגע לאבחנה בין מסייע לבין משדל, אמר כב' הנשיא ברק (בעמ' 406), כי כאשר הסיוע הוא "רוחני" – עשוי המסייע להפוך למשדל: **"קו הגבול עובר באבחנה בין עזרה למי שכבר גיבש לעצמו מחשבה פלילית (המסייע) לבין תרומה לגיבוש עצם המחשבה הפלילית (המשדל)"**.

בדנ"פ 1294/96 הנ"ל בעניין **משולם**, פסק כב' השופט י. קדמי (בעמ' 63) :

"כאמור, אחריותו של ה'מבצע בצוותא' נעוצה – כאמור בסעיף 29 לחוק העונשין – ב'השתתפות' – בביצוע של עבירה תוך 'עשיית מעשים' לביצוע... ובהיעדרו של 'מעשה השתתפות' – כאמור – אין בסיס לאחריות בתור שכזה... לעומת זאת, אחריותו של 'משדל' לביצוע של עבירה על-ידי אחר נעוצה בעשיית 'מעשה-של-שידול', מן המעשים המפורטים בסעיף 30 לחוק העונשין. מעשה כזה אינו מהווה 'מעשה-של-השתתפות' בביצוע, אלא מותיר את העושה 'מחוץ' למסגרת הביצוע."

בעמ' 66 אמר כב' השופט י. קדמי :

"עיונית, המבחין בין המשדל לבין המבצע בצוותא נעוץ בכך שתרומתו של המשדל לביצועה של העבירה היא ביצירת ה'יסוד הנפשי' הדרוש לביצוע העבירה אצל המשודל, שהוא המבצע העיקרי; בעוד שתרומתו של המבצע בצוותא היא, בעיקרה, במישור ההתנהגותי של הביצוע, שהרי נדרשת ממנו 'השתתפות' תוך עשיית מעשים לביצועה של העבירה (ראה בעניין זה פלר בספרו הנ"ל (כרך ב) [20], בעמ' 196, 228). ואילו מן ההיבט המעשי, קו הגבול בין המשדל למבצע בצוותא מתוח בין מי ש'משתתף' בביצוע – דהיינו נמנה על הגרעין הפנימי של המבצעים – לבין מי ש'מעורב' בביצוע בלבד, דהיינו מצוי מחוץ למעגל הפנימי של המבצעים."

ד.   אחריותו של מנהיג חבורה עבריינית כמבצע בצוותא או כמשדל

163.   לעניין קביעת אחריותו של נאשם כמבצע בצוותא או כמשדל, העניקו בתי המשפט משקל מכריע לעובדת היותו של הנאשם מנהיג החבורה העבריינית שביצעה את העבירה העיקרית. בע"פ 2796/95 הנ"ל בעניין **פלונים** הורשע הקטין ט. כמבצע בצוותא, ולא רק כמשדל, בלא שהצטרף

P 7: 000444

לביצוע עבירת הרצח עצמה, משום שהשתתף בתכנון והיה מנהיג החבורה, ובלשונו של כב׳ הנשיא א. ברק "ראש וראשון לכולם".

בע"פ 8469/99 הנ"ל בעניין **אסקין**, הורשע הנאשם כמשדל לביצוע עבירות של הצתה וכניסה ללא רשות למקום פולחן או קבורה, שבוצעו על ידי אדם שהיה כפוף לנאשם וסר למרותו; בית המשפט הדגיש את היותו של הנאשם "מנהיג ומוביל", וכן את העובדה שהנאשם היה זה שנתן את "הסכמתו ואישורו" לביצוע העבירות, וקיבל דיווח לאחר השלמת הביצוע (עמ׳ 81-77, 84, 91-90). עם זאת, יש לציין כי הנאשם באותו מקרה נטל חלק בתכנון העבירה, וסייע בכסף לביצועה. בנסיבות אלו, העירה כב׳ השופטת ד. ביניש, אגב אורחא, כי ייתכן שהיה מקום להרשיעו כמבצע בצוותא, ולא רק כמשדל, באומרה (בעמ׳ 84):

"אף לו היינו אומרים כי עיקר 'תרומתו' של המערער לביצוע העבירה היה במתן 'אישורו' לתוכנית העבריינית ולמימושה, הרי שבנסיבות מיוחדות אפשר ש'הסכמה' לביצוע תהווה השתתפות 'בביצוע עבירה תוך עשיית מעשים לביצועה', כאמור בסעיף 29 לחוק העונשין".

בדבריה אלו הפנתה כב׳ השופטת ביניש לדברי כב׳ השופט י. קדמי בע"פ 5589/98 **ביסאן סולטאן נ. מדינת ישראל**, תק-על (3)99 98, פסקה 9. באותו עניין הורשע המערער בעבירת רצח בכוונה תחילה, כאשר הוכח שנתן את הסכמתו ואישורו לביצוע הרצח, ושלח את המבצע העיקרי להוציא לפועל את הרצח, ואף הנחה אותו לגבי שיטת הביצוע.

השופט קדמי הדגיש שלולא הסכמתו של המערער לא היה הרצח מתבצע, ולכן מתן האישור לבצע את הרצח היה משול "לירית ההזנקה המשלחת ספורטאי למרוץ", והיא עולה כדי "מעשה של השתתפות בביצוע העבירה". לכן הורשע המערער כמבצע בצוותא ולא כמשדל, ובית המשפט הדגיש כי הוא היה מצוי "במעגל הפנימי של הביצוע", כמי שהיה לו תפקיד בביצוע, והיה "המוח של החבורה", בעוד שמשדל מצוי מחוץ למעגל הפנימי של הביצוע.

כב׳ השופט קדמי הוסיף ואמר כי בנסיבות המתוארות לעיל, כאשר המערער נתן "אור ירוק לרצח" וההנחיות אופרטיביות בדבר דרך הביצוע, היה בהתנהגותו לפחות "מנה גדושה של שידול על דרך העידוד". גם בע"פ 8469/99 הנ"ל בעניין **אסקין**, נפסק כי די היה בכך שהמערער אישר את ביצוע ההצתה, בהיותו המנהיג והמוביל, כדי להגיע למסקנה שהיה במתן אישור זה משום עידוד למבצע העיקרי להוציא את רעיון ההצתה מן הכוח אל הפועל (בעמ׳ 93).

164.   שאלת אחריותו של מנהיג קבוצת עבריינים, אשר איננו משתתף באופן פיזי בביצוע העבירה בידי אלו הסרים למרותו, התעוררה במלוא חריפותה בדנ"פ 1294/96 הנ"ל בעניין **משולם**. בית המשפט פסק בדעת רוב של ששה שופטים, כי רב-עבריינים אשר מנהיג קבוצת עבריינים המבצעת עבירות בשליחותו ועל-פי תכנונו והנחיותיו, איננו רק משדל: הוא נחשב כמבצע בצוותא בשל השליטה המלאה שיש לו על ביצוע העבירה ועל מבצעיה. כב׳ השופטת ד. דורנר סברה בדעת מיעוט כי יש לראות באדם שכזה משדל בלבד (עמ׳ 47-42). דעה אחרת, לפיה יש לראות במנהיג ארגון פשע כ"מבצע באמצעות אחר" לפי סעיף 29(ג) לחוק העונשין, מובעת במאמריהם של מ. קרמניצר "המבצע בדיני העונשין קווים לדמותו", פלילים-א׳ (תש"ן-1990) 65, בעמ׳ 72, ומ. גור-אריה, "צדדים לעבירה-תיקון 39 לחוק העונשין במבחן הפסיקה", מגמות בפלילים, עמ׳ 83. במאמרו של פרופ׳ קרמניצר נאמר בעמ׳ 72:

"דומה כי לא צריך להכביר מילים על כך שהמושגים הרגילים של השתתפות עקיפה (סיוע ושידול) אינם הולמים תופעות עברייניות, כגון פשעי מלחמה, פשעים המתבצעים

על ידי מדינה פושעת (פשעי הנאצים) או על ידי ארגון פשע ('המאפיה'). מי שנמצא בעמדת שליטה במערכת כזו (ולא רק ראש ההיררכיה) הנותן פקודה להמית אדם, איננו סתם משדל או מסייע לרצח כאשר פקודתו מתבצעת. האופי המיוחד של מעשהו מתבטא בכך שבעת מתן הפקודה הוא יכול לסמוך על כך שהוראתו תבוצע, מבלי שיהיה עליו להכיר את המבצע הפיזי. הוא

יודע שאם אחד האורגנים הבאים בחשבון לביצוע לא ימלא את המשימה, יבוא אחר במקומו, והעיקר – המשימה תבוצע.

המבצע הישיר שולט אמנם על המעשה (הוא מבצע במו-ידיו את המעשה, מתוך היסוד הנפשי הנדרש, וללא כפייה), ואולם מבחינתו של נותן ההוראה הוא נתפס לגמרי אחרת – כפיגורה אנונימית וניתנת להחלפה, כבורג או גלגל בתוך מנגנון הפעולה של הארגון הנתון בידיו של נותן ההוראה. הפונגיביליות של המבצע הישיר הופכת את השליט בארגון למבצע באמצעות אחר"׃

165.   בדנ"פ 1294/96 הנ"ל בעניין **משולם**, פסק כב' השופט א. מצא כי: "יש לראות במשתתף כזה – שבידו שליטה מלאה על הביצוע ושעשייתו כוללת לא רק פעולות שידול והכנה, אלא גם הנחיית העבריינים הפועלים ופיקוח על פעילותם - מבצע בצוותא לכל דבר״ (עמ' 27). הוא הדגיש כי נוכחות בזירת העבירה איננה יסוד חיוני להיותו של אדם מבצע בצוותא, ואמר (בעמ' 30):

״במציאות המשפטית החדשה, התניית האחריות הישירה בנוכחות, פרושה ש׳סנדקים׳ ומנהיגי קבוצות עבריינים, המשלחים לזירת הביצוע את ׳דגי הרקק׳ הסרים למרותם, בעוד הם מנהיגים את הפעילות הפלילית מרחוק, יראו לא כמבצעים בצוותא אלא רק כמשדלים. ואפשרות זו, שבוודאי אינה משקפת את הדין הרצוי, איננה מתחייבת אף מן הדין המצוי״.

כב' השופט א. מצא הדגיש לעניין השליטה של המנהיג באנשיו, את העובדה שהנאשם יכול היה להורות לאנשיו לחדול מביצוע העבירה (עמ' 32, וראה גם דברי כב' השופט קדמי בעמ' 63).

כב' הנשיא ברק הצטרף לדעתו של כב' השופט א. מצא, אך הדגיש גם את העובדה שהנאשם באותו מקרה היה נוכח בזירת ביצוע העבירה עד למעצרו, ובאותה עת הניע את תוכנית העבירה (עמי 50). כב' הנשיא ברק פסק (בעמ' 51):

״מעמדו של משולם אינו מאפשר לראות בו משדל בלבד. משולם הוא ראש הקבוצה. הוא המנהיג. הוא תכנן את המבצע. זהו מבצע שלו. הוא איננו בעל רעיון עברייני ; הוא איננו רק 'אב רוחני' של העבירה. הוא איננו אדם חיצוני המבקש כי מישהו אחר יבצע עבירה. הוא בעל תרומה פנימית לביצוע העברייני... בידיו של משולם, כראש הקבוצה, השליטה האפקטיבית על הארוע העברייני, ואצלו המחשבה הפלילית הנדרשת לגיבוש אחריותו כמבצע בצוותא"׃

כב' השופט מ. חשין פסק (בעמ' 55) אף הוא כי: ״רב-עבריינים פלוני, היוזם, המתכנן, קובע

**משימות והשולח את 'חייליו' לביצוע העבירה"** – נחשב כמבצע בצוותא הגם שאינו נוכח בזירת ביצוע העבירה. הוא הוסיף כי אדם שכזה, שהוא "הרוח הרעה בכל מעשה העבריינות" איננו יכול להחשב כמשדל בלבד, שאחריותו תהיה פחותה מאחריותו של המבצע בצוותא. וכך אמר כב' השופט חשין (בעמ' 59):

"נדע מכאן, כי בסווגנו את רב-העבריינים כמשדל – להבדילו ממבצע-בצוותא – כמו הפחתנו באחריותו והקלנו עימו. 'חיילים' ששלח רב-העבריינים לביצוע מעשה פשע, אלה יישאו באחריות מלאה לעבירה שונה ונוספת שביצעו, ואילו הוא – הרב-מוח והמנהיג העליון – ישא באחריות פחותה, אף כש'אדם מן הישוב יכול היה להיות מודע לאפשרות עשייתה' של אותה עבירה שונה ונוספת. מסקנה זו תמוהה ומוזרה ויקשה עלי לקבלה."

ועוד אמר כב' השופט חשין (בעמ' 59):

"הנקבל כי הרב-מוח יהא זוטר ל'חייליו' עושי-דברו? אכן, אם הרב-מוח אכן רב-מוח הוא – שבלעדיו לא יוכל תמנון-השותפות-לעבירה להניע את זרועותיו – יקשה עלינו לקבל כי אחריותו תהא פחותה מאחריות המבצע בצוותא. רוחו הרעה של המנהיג שורה על כל המבצע העבריני, מוחו מילא את הקפיץ מפעיל-העבירה קודם תחילתה, ולעת עשייתה של העבירה הוא 'נמצא' עם העבריינים כמבצע – בצוותא עימהם. הוא ימשיך וי'ימצא' בינותם עד אם יעשה מעשה גלוי לעין למניעת העבירה, לא פחות."

כב' השופט חשין נימק מסקנה זו גם באנלוגיה שהקיש מסעיף 29(ג) לחוק העונשין, בראותו את המנהיג המשלח את "חייליו" לביצוע העבירה כמעין "מבצע באמצעות אחר", ובאומרו: "'חיילים' ישמעו להוראות מנהיגם עד שיבטלו את רצונם לחלוטין מפני רצונו" (בעמ' 60). לגבי הנאשם באותו מקרה, הדגיש כב' השופט חשין כי: "אחריותו נגזרת מתוך תכנון וביצוע 'המרד' קודם מעצרו – תכנון וביצוע של מנהיג – ואותה אחריות נמשכה והלכה גם לאחר מעצרו וכל-עוד לא עשה מעשה גלוי לעין לעצור את העגלה המתדרדרת במדרון" (עמ' 61).

כב' השופט י. קדמי פסק ברוח דברים אלו (בעמ' 66-67), באומרו:

"במצב דברים זה, במקום שמעורבותו של מנהיג של חבורה, שהחליטה על ביצועה של עבירה, באה לכלל ביטוי בתכנון, בהנחיה ובחלוקת תפקידים, השאלה אם בפנינו 'מבצע בצוותא' או 'משדל', תוכרע על-פי אופייה של ה'מעורבות': אם היתה זו 'מעורבות' שיש בה תרומה של 'השתתפות' בביצוע; או שמא 'מעורבות' חיצונית של שידול בלבד.

יישומה של ההבחנה האמורה אינו תמיד קל, אך תמיד אפשרי. מכל מקום, כאשר מדובר במנהיג – או בראש חבורה – המציג לנוהים אחריו ולעושי דברו תכנית קונקרטית לביצועה של עבירה, כאשר זו כוללת חלוקת תפקידים ומתן הנחיות בדבר אורח הביצוע, לא יכול להיות ספק כי לא ב'משדל' המדובר, אלא במנהיג ש'השתתפותו' בביצוע באה לכלל ביטוי ב'מעשה התכנון' האמור. 'מעשה של תכנון' – להבדיל מ'מעשה-של-שידול' – מהווה מעשה של 'השתתפות' בביצוע, משום שבפועל יש בו משום שלב ראשון של הוצאה לפועל של התכנית העבריינית של הביצוע, קרי: של הביצוע. זאת, להבדיל מן ה'שידול', שאינו חלק

P 7: 000447

מן הביצוע, אלא גורם חיצוני המניע את המבצע.

כפי שהוסבר לעיל, ניתן להסתייע בעניין זה, בבחינת קיומה של 'זיקת שליטה'. קיומה של 'זיקת שליטה' תאשר, כי ראש החבורה הינו 'מבצע בצוותא' על כל הנובע מכך; כאשר במקום שבו אין מתקיימת 'זיקת שליטה' כמוסבר לעיל, תהיה אינדיקציה לאפשרות שהמדובר במעורבות המקימה אחריות של 'משדל' בלבד."

166.   על גישתו דלעיל, חזר כב' השופט י. קדמי בע"פ 4720/98, 5310/98, 5454/98 **נחמן כהן ואח' נגד מדינת ישראל**, דינים עליון, כרך נ"ז 366. במקרה זה הורשע נחמן כמבצע בצוותא, לאחר שהוכח כי היה היוזם, המזמין והמוביל של מזימת הרצח, ומי שאישר את זהות המתנקש המיועד שהוצג בפניו. כב' השופט י. קדמי אמר (בפסקה 9):

"לשיטתי, אותה הצגתי לא פעם בעבר, 'מנהיגה' של חבורה, היוזם ומוביל ביצועה של עבירה ע"י חבורתו, נמנה בין 'מבצעיה'. המנהיג, 'משתתף' בביצוע העבירה במשמעות שיש לדרישה זו בסעיף 29 לחוק העונשין. גורלו קשור בגורלם של המבצעים בפועל; והוא נושא באחריות לביצוע כאילו היה 'לצידם' של המבצעים בשעת הביצוע. זה דינו של 'המנהיג' וזה דינם של ה'מתכננים' וממלאי 'תפקידים חיוניים' אחרים, שתרומתם לביצוע 'מסתיימת' אמנם פורמלית לפני תחילתו, אך היא נותרת חלק בלתי נפרד ממנו. גורלם של אלה – המנהיג, המתכנן ודומיהם – קשור בגורלם של המבצעים בפועל: הם מהווים גוף אחד, שכל איבריו נושאים באחריות למעשים שעושים 'ידיו'.

לשיטתי, מנהיג של 'חבורה' שחברה לביצועה של עבירה, אינו 'משדל' של חבריו לחבורה, אלא מי שעומד בראשם ו'מוביל' אותם להגשמת מזימתם המשותפת. המשדל מצוי מחוץ למעגל הפנימי של ה'ביצוע'; ומעשה השידול הינו שידול 'נטו', לאמור: מעשה עצמאי ונפרד מן המאמץ הכולל של הביצוע. מי ש'משתתף' בביצוע – ולשיטתי, כמתחייב מן האמור לעיל, יש ליתן למושג 'השתתפות' בהקשר זה משמעות רחבה – אינו יכול להיות 'משדל'. בין ה'משדל' לבין ביצוע העבירה 'חוצץ' המבצע שסימנו 'מילוי תפקיד' בביצוע; ובמקום ש'שידול' מלווה ב'מילוי תפקיד' כאמור – לא 'משדל' ניצב בפנינו, אלא 'מבצע בצוותא'.'"

3. **מסקנות בעניין אחריותו של הנאשם כמבצע בצוותא, משדל ומסייע**

167. ניתוח חומר הראיות כמפורט לעיל, מביא למסקנות **העובדתיות** הבאות לגבי חלקו ותפקידו של הנאשם בפיגועים נשוא כתב האישום:

א. הנאשם היה מפקד הפת"ח והתנזים בגדה המערבית. הוא היה מנהיג השטח של הפת"ח בגדה, ואחראי על ה"פעילות הצבאית" של הפת"ח בכל שטחי הגדה. הביטוי בו השתמש הנאשם, קרי: "הפעילות הצבאית", איננו אלא שפה נקיה לפיגועי הטרור כנגד ישראל, שבוצעו על ידי חוליות השטח של הפת"ח, שהתארגנו בתנועת התנזים ובמסגרת גדודי חללי אלאקצא. הנאשם הקים את גדודי חללי אלאקצא, והיה אחראי על פעילותם, בהיותו מנהיגם ומפקדם של אנשי חוליות השטח ומפקדיהם. בפעילותו זו היה הנאשם כפוף באופן ישיר ליו"ר הרשות הפלסטינאית יאסר ערפאת. פעילותו "הצבאית" של הנאשם כמתואר לעיל, נעשתה במקביל לפעילותו הפוליטית כמזכ"ל הפת"ח בגדה, והיותו חבר הפרלמנט הפלסטינאי.

ב. הנאשם החזיק בדעה כי תנועת הפת"ח חייבת להוביל את "המאבק המזוין כנגד ישראל", ולכן תמך בגלוי בביצוע פיגועים כנגד חיילים ומתנחלים. זו היתה עמדתו המוצהרת של הנאשם, אשר הבהיר כי מבחינתו גם נשים וילדים המתגוררים בהתנחלויות נחשבים כאויב שיש לפגוע בו. הנאשם התנגד באופן עקרוני לפיגועים בתוך ישראל, קרי: מעבר לקו הירוק, וכן היה נגד פיגועי התאבדות. ואולם בפועל, הוא לא חדל מלתמוך באנשיו, ולסייע להם באספקת כספים ואמצעי לחימה, גם כאשר נוכח שוב ושוב שהם מבצעים פיגועים, כולל פיגועי התאבדות, בתוך ישראל. בכך הביע הנאשם את הסכמתו לכל סוגי הפיגועים שביצעו אנשי השטח של הפת"ח. עמדתו של הנאשם כמתואר לעיל, באה לידי ביטוי גם בהופעותיו באמצעי התקשורת, בהן עודד את פעילי הפת"ח לבצע פיגועים כנגד ישראל, ואף שיבח את מבצעי הפיגועים – כולל אלו שבוצעו בתוך ישראל.

ג. לנאשם לא היתה שליטה מוחלטת באנשי החוליות ומפקדיהם. אך היתה לו מידה רבה של השפעה עליהם, מכוח היותו מנהיגם, ובשל הסיוע שהגיש להם, אשר התבטא באספקת כספים ואמצעי לחימה. השפעתו של הנאשם על אנשי החוליות ומפקדיהם באה לידי ביטוי בכך שמידי פעם היה מורה להם להפסיק את הפיגועים כנגד ישראל, ולאחר מכן היה קורא לחידוש הפיגועים – בין היתר על פי הנחיות שקיבל מערפאת. יאסר ערפאת לא היה נותן את הנחיותיו בצורה מפורשת, אך דאג שהכפופים לו יבינו היטב מתי הוא מעוניין בהפסקת אש, ומתי הוא מעוניין בפיגועים כנגד ישראל. גם ערפאת ראה עצמו בנאשם כמי ששולט באנשי השטח, ולכן היה נוזף בו כאשר בוצע פיגוע שלא על דעתו של היו"ר.

ד. לאנשי חוליות השטח ולמפקדיהם היתה מידה רבה של עצמאות בביצוע הפיגועים. הם לא נהגו בדרך כלל לערב את הנאשם בתכנון הפיגועים, ואין גם ראיות כי נהגו לדווח לו לפני ביצוע הפיגועים (למעט מקרים בודדים). עם זאת, הנאשם היה מקבל מהמפקדים דיווח לאחר כל פיגוע. מתכונת פעילות זו נבעה מרצונו של הנאשם, כמו גם רצונם של מפקדי החוליות, להגן על הנאשם מפני ישראל, ולשמר אותו כ"דמות פוליטית", שאיננה מעורבת, כביכול, בפיגועי הרצח כנגד ישראל. מטעם זה לא היה לנאשם קשר ישיר עם מבצעי הפיגועים, למעט מקרים חריגים. כך גם נזהר הנאשם שלא ליטול בעצמו אחריות בשם הפת"ח או גדודי חללי אלאקצא לאחר ביצוע הפיגועים, דבר שנעשה על ידי מפקדי החוליות. הנאשם הסתפק בנטילת אחריות באמצעי התקשורת בצורה עקיפה וכוללנית, מבלי להתייחס לפיגוע ספציפי, וזאת על ידי הבעת תמיכה בפיגועים שבוצעו.

ה.   לבד מאחריותו הכוללת והעליונה של הנאשם על כל אנשי התנזים וגדודי חללי אלאקצא, בהיותו מפקדם, הוא שלט בצורה טובה יותר בכמה מן החוליות שהתנהלו תחת פיקודם של אנשים שהיו עוזריו הקרובים, ונהנו מסיוע ותמיכה מיוחדת שלו, כמו ▉, ▉.

הנאשם נטל אחריות בחקירתו לפעילותן של החוליות שפעלו בפיקודם של אנשים אלה (למעט ▉), אם כי טען שהוא היה רק אחת מן "הכתובות" אליהן פנו אנשים אלה לשם קבלת סיוע ומימון, וכי לא היתה לו שליטה מלאה בהם, אלא רק השפעה עליהם.

ו.   לנאשם לא היה בדרך כלל קשר ישיר עם אנשי השטח שביצעו את הפיגועים: הקשר היה באמצעות המקורבים לנאשם, שפעלו בסביבתו, ובהם: ▉ ▉, ▉. אנשים אלו, שפעלו בסביבתו של הנאשם ובתמיכתו, תכננו והוציאו לפועל פיגועי רצח, כשהם משתמשים בכספים ובאמצעי הלחימה שהנאשם דאג לספק להם לצורך כך.

ז.   הנאשם היה אחראי על אספקת כספים ואמצעי לחימה לחוליות השטח, באמצעות המקורבים אליו, כגון ▉. הוא היה מפנה את הבקשות לאישורו של ערפאת, והיה אחראי על רכישות הנשק ואספקתו לאנשי החוליות באמצעות מקורביו. הנאשם גם הגיש סיוע למבוקשים ולמשפחות המפגעים.

ח.   למרות שהנאשם, כמו גם אנשיו, נזהרו בדרך כלל שלא לערב אותו באופן אישי בתכנון והוצאה לפועל של פיגועים, הרי שהובאו ראיות חד-משמעיות לגבי ארבעה פיגועים שבוצעו בידיעתו, באישורו ובעידודו של הנאשם, ושניים מהם אף ביוזמתו.

הפיגוע בתחנת הדלק בגבעת זאב, בו נרצחה יואלה חן ז"ל, בוצע על פי הוראתו הישירה של הנאשם לאנשיו, כנקמה על חיסולו של ▉, והנאשם הודה בחקירתו באחריות לפיגוע זה.

כך גם בוצע הפיגוע בו נרצח הנזיר היווני ציפוקטקיס גרמנוס ז"ל במעלה אדומים, בעקבות פניה של המפגע ▉ אל הנאשם לשם ביצוע פיגוע התאבדות.

הנאשם הפנה את ▉ אל האדם שידריך אותו ויספק לו נשק, והנחה אותו לבצע פיגוע ירי ולא פיגוע התאבדות. כתוצאה מכך יצא ▉ לביצוע הפיגוע, וירה בנזיר היווני למוות מתוך מחשבה שהוא יהודי.

בנוסף, נתן הנאשם את אישורו לביצוע הפיגוע במסעדת "סי פוד מרקט" בתל אביב, וזאת בטרם יצא המפגע לדרכו. הנאשם אמנם הורה לאנשיו שהפיגוע יבוצע בהתנחלות או במחסום צבאי, ולא בתוך ישראל, אך הוא אישר את הפיגוע עצמו.

כמו כן, אישר הנאשם לאנשיו לבצע פיגוע התאבדות באמצעות פיצוץ מכונית תופת, אם כי הנחה את אנשיו שהפיגוע יבוצע בשטחים הכבושים ולא בתוך ישראל. הפיגוע הסתיים במותם של שני המחבלים ליד קניון מלחה בירושלים, אשר התפוצצו ברכב בדרכם לביצוע הפיגוע.

ט.   זולת ארבעת הפיגועים שפורטו בסע"ק ח' לעיל, לא הובאו ראיות הקושרות את הנאשם
     באופן אישי וישיר למעורבות בפיגועים נשוא כתב האישום. משיחתו של הנאשם עם
     מקורבו ▇▇▇▇▇▇, שהוקלטה ללא ידיעתם, עולה חשש ממשי כי הנאשם ידע הרבה
     יותר ממה שהוא ואנשיו חשפו בחקירותיהם, אך לא ניתן לקבוע זאת במידת הוודאות
     הנדרשת במשפט פלילי על סמך הראיות הקיימות.
     כך או כך: ברור מן הראיות שהובאו, כי פיגועי רצח לא מעטים מאלו שפורטו בכתב
     האישום תוכננו והוצאו לפועל על ידי מפקדי השטח שפעלו בקרבת הנאשם ובתמיכתו, תוך
     שימוש בנשק שהנאשם סייע ברכישתו, ואשר נמסר למפגעים על ידי מפקדי החוליות
     המקורבים אל הנאשם (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). הנאשם קיבל מאנשיו
     דיווחים על פיגועים אלה לאחר ביצועם, ונתן את הסכמתו - לפחות בשתיקה ובהתנהגות -
     להמשך ביצועם.

168.  ניתוח חומר הראיות כמפורט לעיל, מביא למסקנה הברורה שהנאשם תרם תרומה ממשית
      לפיגועי הטרור שבוצעו על ידי חוליות הפת"ח, התנזים וגדודי חללי אלאקצא, גם כאשר לא נטל
      חלק בביצועם.

      הסיוע במתן אמצעי לחימה וכספים לאותן חוליות, גיוס פעילי השטח, הטיפול בהדרכתם והסיוע
      למשפחותיהם - כל אלה יצרו את התנאים שנדרשו לביצוע מעשי הרצח של חוליות הטרור. הנאשם
      היה מודע, ללא ספק, לעובדה זו, וגם ידע שאנשי השטח הנתמכים על ידו עומדים להמשיך ולבצע
      פיגועי רצח כנגד ישראל, והוא פעל מתוך מטרה ברורה לסייע להם לפעול בדרך זו. אין מדובר רק
      בחשד סביר או ב"עצימת עיניים" מצד הנאשם, אלא בידיעה ממשית שאנשי החוליות מבצעים,
      ועתידים להמשיך לבצע, פיגועי רצח כנגד ישראל, תוך שימוש באמצעי הלחימה והכספים שהעמיד
      לרשותם למטרה ספציפית זו. יתר על כן: הנאשם לא רק היה מודע למעשי הרצח שמבצעים אנשי
      החוליות, אלא שהוא שהעניק להם סיוע, כמפורט לעיל, מתוך מטרה ושאיפה שהם יפעלו בדרך זו.

      עם זאת, למעט ארבעה מקרים שיפורטו בהמשך, אין ראיות שהנאשם היה מעורב בתכנון ובביצוע
      הפיגועים, או כי ידע מראש על הפיגועים העומדים להתבצע על ידי אנשי השטח ומפקדי החוליות
      שנתמכו על ידו, ושהוא למעשה היה מפקדם. אמנם ▇▇▇▇▇▇▇ סיפר בחקירתו כי הנאשם ידע
      ואישר מראש את כל פיגועי הירי של אנשי התנזים (ראה סעיף 40 לעיל). אך פרט לעדות בודדת זו,
      מפי אדם שלא היה מקורב לנאשם, אין ראיות אחרות על כך שהנאשם ידע מראש על כל פיגוע
      העומד להתבצע, והוא עצמו הכחיש טענה זו. גם התביעה אינה טוענת כי הנאשם ידע מראש על כל
      הפיגועים (ראה עמ' 47 לסיכומיה).

169.  זאת ועוד: מחומר הראיות עולה כי לנאשם לא היתה שליטה מוחלטת במפקדי החוליות
      ואנשי השטח. אמנם הוא נחשב למנהיגם ומפקדם, והיתה לו השפעה עליהם, אך בכל זאת היתה
      להם מידה לא מבוטלת של שיקול דעת עצמאי בתכנון הפיגועים וביצועם, ואין כל ראיה שהם היו
      מתייעצים עם הנאשם בעניין זה. ממכלול הראיות עולה כי גדודי חללי אלאקצא אינם גוף המאורגן
      תחת הנהגה אחת, אלא מקבץ של חוליות שטח, שלכל אחת מהן יש מפקד משלה. עובדה העולה
      מחומר הראיות, היא כי אנשיו של הנאשם ביצעו פיגועי התאבדות, ופיגועים בתחומי הקו הירוק,
      בניגוד לעמדתו המוצהרת של הנאשם, ולעיתים גם בניגוד לדעתו של היו"ר ערפאת. בנוסף, מחומר
      הראיות עולה שאנשי השטח שהיו מעורבים בביצוע הפיגועים השתדלו להרחיק את הנאשם ולנתקו
      ממעורבות אישית בפיגועים על מנת להגן עליו מפני ישראל, ולשמרו כ"דמות פוליטית".

גם הנאשם עצמו ביקש להתרחק ככל האפשר מפעילות "צבאית", ומקשר ישיר עם החוליות שביצעו פיגועים, ואלו הופעלו למעשה על ידי מפקדי השטח, שחלקם היו מקורביו של הנאשם, ופעלו תחת שליטתו, בסיועו ובעידודו (כגון ▮▮▮▮▮▮▮▮▮▮▮). עובדה זו מחזקת את המסקנה שהנאשם לא ידע מראש בדרך כלל על ביצוע הפיגועים, ולא היה מעורב באופן אישי בתכנונם או באישורם, שכן זו היתה מתכונת הפעילות שנבחרה על ידו ועל ידי אנשיו במתכוון.

אכן, התביעה מסכימה בסיכומיה (עמ' 47), כי:

"במסגרת ההיערכות הארגונית של הארגונים הטרוריסטים, הוקנו למפקדים ולפעילי השטח סמכויות נרחבות ומרחב תמרון רב בביצוע פעולות הטרור, והם לא נדרשו לקבל אישור מהנאשם לכל פעילות טרור, שבוצעה בהתאם למדיניות שעיצבו הנאשם והנהגת הארגונים, כאמור לעיל.

לנאשם היתה מודעות לפעילותם של הכפופים לו והוא עודכן בעניין זה, בחלק מהמקרים מראש ולעיתים בדיעבד, וזאת בהתאם לתפיסה על פיה התנהלה הפעילות של הארגונים הנ"ל."

170. ההלכה, כאמור לעיל, היא שהסיוע צריך שיופנה במודע כלפי **עבירה מסוימת בעלת יעוד מוחשי**, ויש להוכיח כי המסייע היה מודע לכך שהמבצע העיקרי עומד לבצע, קרוב לוודאי, עבירה שכזו, קרי: עבירה בעלת יעוד מוחשי; אין די בידיעה של המסייע על נכונות ערטילאית של המבצע העיקרי לבצע עבירה. אמנם אין צורך להוכיח כי המסייע היה מודע לכל פרט מפרטי העבירה, כגון המיקום המדויק של העבירה (ע"פ 11131/02 הנ"ל בעניין **יוסופוב**), או זהותו של קורבן העבירה וזמן הביצוע (ע"פ 426/67 הנ"ל בעניין **באריי**): די בכך שהוא מודע לכך שהמבצע העיקרי עומד לבצע עבירה מסוימת מן הסוג שבוצע לבסוף, וחרף כך מסייע לביצועה.

ואולם במקרה דנא – ככל שהדבר נוגע למרבית הפיגועים נשוא כתב האישום, ולמעט ארבעה פיגועים בהם היה הנאשם מעורב אישית - אין כל ראיה שהנאשם ידע על הכוונה לבצעם, במובן של מודעות לכוונה לבצע **עבירה מסוימת בעלת יעוד מוחשי**, כפי שנדרש בפסיקה. היתה לנאשם ידיעה כללית שאנשי השטח המשתייכים לארגון שבהנהגתו מבצעים מעת לעת פיגועי רצח כנגד ישראלים, תוך שימוש באמצעי לחימה וכספים שהוא דאג לאספקתם. אך לא הובאו ראיות כלשהן הקושרות סיוע מצד הנאשם באופן ספציפי לפיגוע זה או אחר (למעט רצח הנזיר היווני שידון בהמשך). אין כל ראיה כי הנאשם סיפק אמצעי לחימה או כספים לצורך ביצוע פיגוע מסוים. אמנם בחלק מן המקרים הוכח שהפיגוע בוצע באמצעות כלי נשק שנמסר למפגע על ידי אחד ממקורבי הנאשם, כמו ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

אך על פי הראיות שהובאו, הסיוע שהגיש הנאשם למקורביו בעניין זה היה כללי, ולא התייחס לפיגוע זה או אחר, או למפגע זה או אחר: הנאשם דאג באופן כללי לכך שאנשי השטח יהיו מצוידים באמצעי לחימה ובכספים, וזאת באמצעות מקורביו ומפקדי השטח שסרו למרותו, ובידיעו שאמצעי הלחימה והכספים משמשים אותם למטרות פיגועים. ואולם על פי ההלכות שבוארו לעיל, אין די בכל אלו על מנת להרשיע את הנאשם בסיוע לכל אחת מעבירות הרצח שבוצעו על ידי אנשים שנעזרו בסיוע כללי זה, באמצעות מקורביו של הנאשם, לצורך ביצוע פיגועים.

171. אין זה המקרה בו אדם מסייע לאנשים הסרים למרותו, ביודעו כי הם עומדים לבצע עבירה

מסוימת ומוחשית, אלא שהוא רק אינו יודע היכן, מתי, באיזה אופן ועל ידי מי מאנשיו תבוצע העבירה, ומי יהיה קורבנה. מדובר במקרה בו אין כל ראיה הקושרת את הנאשם לביצועה של עבירה מסוימת, הן מבחינת היסוד העובדתי של העבירה, והן מבחינת היסוד הנפשי שלה, שכן לא הוכח שהנאשם ידע כלל על התוכנית לביצוע. בנסיבות אלו, וככל שהדבר נוגע למרבית הפיגועים נשוא כתב האישום, לא ניתן לייחס לנאשם עבירה כוללנית וגורפת של סיוע לרצח בכוונת תחילה בגין כל פיגוע ופיגוע, רק בשל מודעותו הכללית לכך שאנשיו מבצעים פיגועים תוך שימוש בנשק ובכספים שהוא דאג להשיג עבורם.

אין זאת אומרת שהנאשם איננו נושא כלל באחריות פלילית למעשיו, שהביאו לפיגועים שבוצעו תוך שימוש באמצעי הלחימה והכספים שדאג להעביר למפקדי השטח. לשם כך קיימת העבירה הכללית של פעילות בארגון טרוריסטי, שדינה מאסר עד 20 שנה, וכן העבירה הכללית (בה לא הואשם הנאשם), של מתן אמצעים לביצוע פשע לפי סעיף 498 לחוק העונשין התשל"ז-1977. עבירה זו נועדה למקרה של מסירת אמצעים לביצוע פשע **כלשהו**, כאשר לא ניתן להוכיח ידיעה של המוסר על כוונה לבצע עבירה מסוימת (ראה: ע"פ 507/79 **מדינת ישראל נ' אליהו אסרף**, פד"י לג(3) 620, בעמ' 622-623). זה המקרה שבפנינו.

172. המסקנות דלעיל הנוגעות לעבירת הסיוע, ישימות גם לגבי העבירה של שידול למעשי רצח המיוחסת לנאשם. כשם שלא ניתן להרשיע אדם בישראל בעבירה כללית של סיוע למעשי רצח, כך גם לא ניתן להרשיעו בעבירה כללית של שידול למעשי רצח. כשם שהסיוע חייב להתייחס לעבירה מסוימת בעלת יעוד מוחשי, כך גם חייב השידול להיות בין פרט לפרט, ולהתייחס לשידול לבצע עבירה מסוימת בעלת יעוד מוחשי. מסקנה זו מתבקשת לגבי שידול מקל וחומר, שהרי עונשו של המשדל, שלא כמו המסייע, זהה לעונשו של העבריין העיקרי. כאשר נאשם איננו מודע כלל לכוונה לבצע עבירה מסוימת, לא ניתן להוכיח את גורם הקשר הסיבתי, דהיינו : שהמבצע העיקרי שודל על ידו לבצע את העבירה.

במקרה דנא, וככל שהדבר נוגע למכלול הפיגועים נשוא כתב האישום (פרט לארבעה פיגועים שידונו בהמשך), אין כל ראיה כי הנאשם השפיע על מפקדי השטח שבהנהגתו, או על אנשי החוליות, לבצעם, שהרי אין הוכחה שהנאשם ידע כלל על הכוונה לבצע פיגועים אלו. מן הראיות שהובאו נראה כי איש לא היה צריך לשדל אותם לכך : מפקדי השטח ואנשי החוליות פעלו, בדרך כלל, על פי יוזמה ושיקול דעת עצמאיים, כשהם מקפידים שלא לערב את הנאשם באופן אישי בתכנון או ביצוע הפיגועים. כמו כן, לא ניתן להרשיע את הנאשם בעבירה גורפת של שידול למעשי הרצח נשוא כתב האישום בשל מה שניתן לכנות "שידול המופנה אל הכלל", קרי : דברי ההסתה של הנאשם באמצעי התקשורת, בהם קרא לאנשים שתחת הנהגתו, ולאחרים, לבצע פיגועים כנגד ישראל. לשם כך קיימות העבירות הכלליות של הסתה לאלימות או לטרור, פעילות בארגון טרור, וכו' (ראה סעיף 161 לעיל).

173. על פי העקרונות המשפטיים וההלכות שפורטו לעיל, גם לא ניתן לראות בנאשם מבצע בצוותא של כל הפיגועים נשוא כתב האישום, יחד עם המפגעים והמתכננים שהוציאו אותם אל הפועל, שכן אין כל ראיה לכך שהוא היה מודע לכוונה לבצעם (פרט לארבעת הפיגועים בהם היה מעורב אישית, כפי שיפורטו בהמשך). חרף הפרשנות הרחבה מאוד שניתנה בפסיקה למילים "המשתתפים בביצוע עבירה תוך עשיית מעשים לביצועה", וההלכות הנוגעות לאחריותו של מנהיג חבורת פשע – לא ניתן לקבל את טענת התביעה, לפיה יש לראות בנאשם מבצע בצוותא של כל הפיגועים נשוא כתב האישום. המינימום הנדרש על פי הפסיקה שבוארה לעיל, לצורך הטלת

אחריות של מבצע בצוותא על מנהיג חבורה שאיננו נוכח בזירת העבירה, הוא השתתפות בתכנון העבירה או קשירת קשר לביצועה; מתן הנחיות או אישור לביצוע העבירה; פיקוח על ביצוע העבירה; או העלאת הרעיון לביצוע העבירה בצירוף סיוע או תכנון. כל אחד מאלו עשוי להיחשב על פי הפסיקה כ"עשייית מעשים לביצוע העבירה", אשר מבססת אחריות של מבצע בצוותא. אך אין די בכך שהמנהיג שולט באנשיו, ואלה סרים למרותו, כדי להטיל עליו אחריות של מבצע בצוותא למכלול העבירות שיבצעו אנשיו, כאשר אין כל ראיה הקושרת את המנהיג בדרך כלשהי לתכנון או לביצוע, ואף אין כל ראיה כי ידע על הכוונה לבצע.

התביעה חייבת להוכיח שהנאשם קשור בדרך זו או אחרת לעבירה **מסוימת** – הן ביסוד העובדתי של העבירה, והן ביסוד הנפשי שלה, וזאת לא הוכיחה פרט לארבעת הפיגועים שיפורטו להלן.

התביעה משליכה את יהבה על ההלכה שנפסקה בדנ"פ 1294/96 הנ"ל בעניין **משולם**, בעתירתה להרשיע את הנאשם כמבצע בצוותא בכל הפיגועים נשוא כתב האישום.

ואולם, **משולם** הורשע כמבצע בצוותא, יחד עם חבורת החסידים שהקיפה אותו ושביצעה עבירות שונות, לאחר שנקבע לגביו כי הוא נתן הנחיות לאנשיו, פיקח על פעילותם, היה בעל שליטה עליהם ונמנע במתכוון מלהורות להם לחדול מביצוע העבירות (כב' השופט מצא בעמ' 30, 32). כן נקבע כי היה נוכח בזירת ביצוע העבירות בסמוך לפני תחילתן, ובאותה עת הניע את תוכנית העבירה, והוא אף היה מי שתכנן את המבצע (כב' הנשיא א. ברק בעמ' 50-51); ותכנן וביצע את ה"מרד" קודם למעצרו (כב' השופט חשין בעמ' 61).

גם כב' השופט קדמי, התייחס בדבריו בעניין **משולם** למי שמעורבותו בביצוע באה לידי ביטוי בתכנון, בהנחיה ובחלוקת תפקידים, וציין כי משולם נמנע מלהורות לאנשיו לחדול מביצוע העבירות (עמ' 63, 67-66).

מאפיינים אלה של שליטה מלאה במבצעי העבירה, נוכחות לצד המבצעים בזירת האירועים עד לתחילתם, מעורבות בתכנון העבירות, מתן הנחיות לביצוען ופיקוח על מעשי המבצעים - אינם מתקיימים בענייננו, כאשר לא הוכח שהנאשם ידע מראש על הכוונה לבצע את מרבית הפיגועים נשוא כתב האישום.

הנאשם לא היה מעורב אישית ביזום, תכנון או ביצוע של הפיגועים נשוא כתב האישום (פרט לפיגועים בודדים שיפורטו בהמשך). הנאשם גם לא נתן הנחיות או אישור לביצוע פיגועים אלה, והוא גם לא סייע או שידל באופן ספציפי לביצועם, כאמור לעיל. כך גם נושא השליטה של הנאשם במבצעי הפיגועים ומתכנניהם איננו נקי מספקות, כפי שפורט לעיל. על אף היותו של הנאשם נושא בתואר הלא-רשמי של מפקד התנזים וגדודי חללי אלאקצא. אין כל ראיה שהנאשם היה חלק מן ההחלטה המשותפת לביצוע הפיגועים נשוא כתב האישום, או כי פעל יחד עם האחרים למען הגשמת פיגועים אלה, או כי נטל חלק בביצועם או בתכנונם. בהעדר כל אלה, ועל פי הכללים שנקבעו בפסיקה לאור הוראות חוק העונשין, לא ניתן לראות בנאשם מבצע בצוותא של הפיגועים נשוא כתב האישום, שלגביהם לא היתה לו כל מעורבות וידיעה אישית, רק מכוח היותו המנהיג הלא מוכתר של התנזים וגדודי חללי אלאקצא, או בשל קרבתו למתכנני הפיגועים והסיוע הכללי שהגיש להם.

174.   לסיכום כל האמור לעיל, המצב החוקי השורר במדינת ישראל איננו מאפשר להרשיע מנהיג של חבורה עבריינית או ארגון טרור כמבצע בצוותא של עבירות שנעשו על ידי חברי אותה חבורה או אותו ארגון, ואף לא בסיוע או בשידול לביצוען, כאשר הוא עצמו איננו מעורב אישית ובצורה פרטנית בשום אופן בעבירות עצמן, לא לפני ולא בעת ביצוען. כזה הוא המצב, הגם שברור כי אותו