מנהיג נותן את ברכתו לביצוע העבירות, ומעניק לאנשיו סיוע כללי שלא לצורך ביצוע עבירה זו או אחרת.

הנאשם, במקרה דנא, עודד והמריץ את מפקדי החוליות ואנשי השטח לבצע פיגועים, ודאג שיהיו בידיהם כספים ואמצעי לחימה לצורך ביצוע הפיגועים. הוא היה מנהיגם של המפקדים ואנשי השטח, והייתה לו מידה לא מבוטלת של השפעה עליהם.

רבים מן הפיגועים נשוא כתב האישום הוצאו לפועל ותוכננו בידי מפקדי השטח שהיו מקורבים אל הנאשם, ונתמכו על ידו. חרף כל אלה, לא ניתן לייחס לנאשם על פי הדין הישראלי אחריות פלילית של מבצע בצוותא, מסייע או משדל - ככל שהדבר נוגע לפיגועים שאין כל ראיה הקושרת את הנאשם אליהם, וכאשר לא הוכח כי ידע על הכוונה לבצעם.

אכן, קיים פער בין אחריותו הכללית והקולקטיבית של הנאשם לביצוע הפיגועים נשוא כתב האישום, שלא לדבר על האחריות המוסרית לביצועם, לבין האפשרות המשפטית לייחס לו אחריות פלילית לביצועם של פיגועים ספציפיים שלא הוכח כי ידע על התוכנית לבצעם. לא מוכר לנו תקדים להרשעת אדם בעבירת רצח, או בשידול או סיוע לרצח, כאשר אין כל ראיה הקושרת אותו למעשה זה באופן ספציפי. הנאשם נושא אמנם באחריות הכבדה והנוראית לפיגועים נשוא כתב האישום, בהם קפדו את חייהם אנשים רבים, בהיותו מנהיג ומפקד חוליות הטרור שביצעו את הפיגועים. אך זוהי אחריות פיקודית "מעין מיניסטריאלית", ולא אחריות שניתן לבססה מבחינת דיני העונשין. אל לנו למתוח את הוראות חוק העונשין אל מעבר לגבולותיו הטבעיים, הגם שבמקרה זה ניצבת בפנינו בעיה שקשה לפתרה באמצעות הוראות החוק הקיימות.

תוצאה משפטית זו רחוקה מלהשביע רצון, ואף מקוממת. לכך כוונו דבריו של פרופ' מ. קרמניצר שצוטטו לעיל, כי המושגים המקובלים של סיוע ושידול אינם הולמים תופעות עברייניות של ארגוני פשע וטרור, ולכן גם הועלתה הצעתה של פרופ' מ. גור-אריה לתקן את החוק באופן שניתן יהיה לראות במנהיג שכזה "מבצע באמצעות אחר" (ראה סעיף 164 לעיל). בדנ"פ 1294/96 הנ"ל בעניין **משולם**, דחה בית המשפט את האפשרות לראות במנהיג חבורת עבריינים "מבצע באמצעות אחר" לפי סעיף 29(ג) לחוק העונשין, אף שהשופט מ. חשין גזר מהוראת חוק זו אנלוגיה לעניין אחריותו של מבצע בצוותא לעומת אחריותו של משדל (עמ' 59-60).

175.   לאחרונה נעשה ניסיון של המחוקק להתמודד, ולו בצורה חלקית, עם בעיה משפטית זו. הכנסת חוקקה חוק מאבק בארגוני פשיעה, התשס"ג-2003, המאפשר להטיל על העומד בראש ארגון פשיעה עונש של עד 20 שנות מאסר, כאשר הארגון מבצע עבירות מסוג פשע שעונשו עולה על 20 שנות מאסר. חוק זה איננו חל על העבירות נשוא כתב האישום, שבוצעו קודם לחקיקתו. אך הוא משתרע גם על ארגוני טרור ומנהיגיהם (ראה התוספת הראשונה המחילה את החוק על עבירות לפי סעיף 4 לפקודת מניעת טרור, ודברי ההסבר להצעת החוק: ה"ח תשס"ב 3155, בעמ' 762). מדברי ההסבר להצעת החוק ניתן להבין כי המחוקק היה ער לבעיה המשפטית הנובעת מהעדר היכולת להרשיע את העומדים בראש ארגוני פשע בביצוע עבירות הנעשות על ידי הכפופים להם, בשל ריחוקם מן העבירות. וכך נאמר בדברי ההסבר (עמ' 762):

"הצעת חוק מאבק בארגוני פשיעה, התשס"ב-2002, באה להתמודד במישור החקיקתי עם התופעות של פשיעה מאורגנת ועם המבנה של ארגוני פשיעה, הגורם לעתים קרובות קושי בהוכחת הקשר בין ראשיהם ומוביליהם של ארגונים מסוג זה לבין ביצוען של עבירות שנעברו על ידי אחרים; זאת לאור המבנה ההיררכי של אחדים מארגונים אלו,

היוצר מרחק בין מקבלי ההחלטות ומתווי המדיניות לבין מבצעי העבירות".

כך גם נאמר בדברי ההסבר להצעת החוק (עמ' 763), כי סעיף 2 לחוק המאפשר להטיל עונש עד 20 שנות מאסר על העומד בראש ארגון פשיעה "**בא להתמודד עם הקושי להוכיח את הקשר בין נושאי תפקידים בארגוני פשיעה לבין עבירות שנעברו בפועל, והוא קובע, כי די בעצם העמידה בראש הארגון, ניהולו, מימונו וכד' כדי שהדבר יהווה עבירה...**".
עוד נאמר בהמשך לדברים אלה כי לגבי חברי ארגון פשיעה בדרג נמוך יותר, "**יוותר הצורך להוכיח קשר לעבירה מסוימת**".

מכאן ברור שהחוק בא להתמודד עם הבעיה העומדת להכרעה גם בתיק זה, דהיינו, העדר היכולת, על פי המצב החוקי הקיים, להרשיע מנהיג של ארגון פשיעה או ארגון טרור בביצוע, בשידול או בסיוע לעבירות ספציפיות המבוצעות על ידי אנשי הארגון.

ואולם, אין בחוק זה מענה לשאלה שהציב כב' השופט מ. חשין בדנ"פ 1294/96 הנ"ל בעניין **משולם** (בעמ' 59), לאמור: "**הנקבל כי הרב-מוח יהא זוטר ל'חיילי' עושי דברו?**". גם לפי חוק זה יהא עונשו של העומד בראש ארגון פשיעה קל מעונשם של הסרים למרותו, כאשר אלו ביצעו עבירה של רצח שדינה מאסר עולם. זאת ועוד, ככל שמדובר בארגון טרור אין צורך בחוק זה, שכן על פי סעיף 2 לפקודת מניעת טרור צפוי מנהיג בארגון טרור, ממילא, לעונש מאסר עד 20 שנה בשל עצם היותו ממלא תפקיד ניהולי בארגון (ראה תת-פרק (1) לעיל).

176.   הדברים האמורים לעיל נוגעים למרבית הפיגועים המיוחסים לנאשם בכתב האישום, כפי שפורטו בפרק ה' לחלקו השני של הכרעת הדין. בפיגועים אלה, כפי שבואר לעיל, לא ניתן להרשיע את הנאשם בעבירות של סיוע או שידול למעשי רצח, ואף לא כמבצע בצוותא. יחד עם זאת, הובאו ראיות ברורות ומשכנעות למעורבותו של הנאשם בשלושה פיגועי רצח שבוצעו על ידי אנשיו, ובניסיון לבצע פיגוע רצח נוסף, ואלה הם:

א.   **פיגוע הרצח בתחנת הדלק בגבעת זאב**

בפיגוע זה, שבוצע ביום 15.1.02, נרצחה יואלה חן ז"ל, ונפצעה נוסעת שהיתה עמה. מן הראיות שהובאו עולה בבירור כי בעת היותו בסוכת האבלים שהוקמה לאחר חיסולו של ▆▆▆ ביום 14.1.02, הורה הנאשם למקורבו ▆▆▆ לבצע פיגוע נקם. ▆▆▆ מסר נשק לאבו סטחה, אף הוא מקורב של הנאשם הסר למרותו, ואנשי החוליה של ▆▆▆ ביצעו את הרצח, ומיד לאחר מכן דיווחו לנאשם על תוצאותיו.

הנאשם הודה כי פיגוע זה בוצע בהוראתו, ונטל אחריות לביצועו, כשהוא מדגיש כי זה הפיגוע הראשון של הפת"ח שבוצע בתוך ישראל. במקרה זה אחראי הנאשם באופן ישיר לביצוע הרצח, משום שהוא עצמו הורה על ביצועו.

בוודאי שהוראה שכזו של הנאשם לאנשים הסרים למרותו מהווה שידול לרצח, גם אם הנאשם לא התעניין באופן ספציפי באיזה מקום ובאיזה אופן יבוצע הפיגוע. כאשר הנאשם הורה לבצע פיגוע נקם, היה ברור לו ולאנשיו שהכוונה היא לרצוח ישראלים. אולם אחריותו של הנאשם אינה רק כשל משדל, אלא כמבצע בצוותא יחד עם המבצעים האחרים, שהם ▆▆▆, אבו סטחה ואנשיו. הנאשם היה חלק מן התכנית המשותפת

לביצוע הפיגוע, כמי שיזם את ביצועו. היתה לו מעורבות נפשית גבוהה וידיעה על כך שהעבירה עומדת להתבצע על פי הוראתו. הנאשם לא רק הביא אחרים לידי ביצוע העבירה במקרה זה, ולא רק נתן את אישורו לביצוע העבירה, אלא הוא **הורה** לבצע את העבירה, ובשל מעמדו כמנהיג ומפקד, ומערכת יחסיו עם ▇, היתה הוראה זו משולה ללחיצה על ההדק שהביאה לרציחתה של יואלה חן ז"ל.

למצב דברים כגון זה כוונו דבריה של כב' השופטת ד. ביניש בע"פ 8469/99 הנ"ל בעניין **אסקין**, כי: **"בנסיבות מיוחדות אפשר ש'הסכמה' לביצוע תהווה השתתפות 'בביצוע עבירה תוך עשיית מעשים לביצועה' כאמור בסעיף 29 לחוק העונשין".** כך גם פסק כב' השופט י. קדמי בע"פ 5589/98 הנ"ל בעניין **סולטאן**, כי מתן **"אור ירוק לרצח"** משול ל"ירית ההזנקה המשלחת ספורטאי למרוץ", והוא עולה כדי **"מעשה של השתתפות בביצוע העבירה"** (ראה סעיף 163 לעיל).

בדנ"פ 1294/96 הנ"ל בעניין **משולם** אמר כב' השופט מ. חשין (בעמ' 59): **"רוחו הרעה של המנהיג שורה על כל המבצע העבריני, מוחו מילא את הקפיץ מפעיל-העבירה קודם תחילתה, ולעת עשייתה של העבירה הוא 'נמצא' עם העבריינים כמבצע – בצוותא עימהם".** כך יש לומר על הנאשם שבפנינו, ולפיכך יש להרשיעו לגבי פיגוע רצח זה כמבצע בצוותא של רצח בכוונת תחילה, ולא רק כמשדל.

ב. **רצח הנזיר היווני ציפוקטקיס גרמנוס ז"ל במעלה אדומים**

גם פיגוע זה בוצע בהוראת הנאשם ובייזמתו ביום 12.6.01. המפגע ▇ פנה אל הנאשם על מנת לקבל נשק ולבצע פיגוע התאבדות.

הנאשם הניח אותו שלא לבצע פיגוע התאבדות, אלא פיגוע ירי "כמקובל בתנזים", והפנה אותו אל ▇ לצורך קבלת נשק והדרכה בירי, בידיעה ברורה ש▇ עומד לבצע פיגוע ירי ולרצוח ישראלים על פי הנחייתו. כך אכן עשה ▇ יחד עם מפגע נוסף, כאשר קיבלו שני רובי קלצ'ניקוב מ▇, ואף קיבלו ממנו הדרכה כיצד להשתמש בהם - כל זאת על פי הוראת הנאשם. בפיגוע נרצח הנזיר היווני ציפוקטקיס גרמנוס ז"ל במעלה אדומים, כאשר המפגעים חשבו אותו בטעות ליהודי.

גם במקרה זה אחריותו של הנאשם לרצח הנזיר היווני היא כשל מבצע בצוותא, ולא רק כמשדל. הנאשם לא רק שכנע את ▇ לבצע פיגוע ירי רצחני אלא הוא הנחה אותו כיצד לבצע את הפיגוע, סייע לו בהשגת נשק והדרכה לצורך הפיגוע, והורה לו למי עליו לפנות על מנת להוציא לפועל את הפיגוע. במקביל הורה הנאשם לאנשיו לסייע ל▇ לבצע את הפיגוע, ואלה אכן פעלו על פי הוראת הנאשם.

על פי ההלכה, שידול שמתלווה אליו מעשה לביצוע, כגון: תכנון או מתן הוראות וביצוע - מהווה השתתפות בביצוע, ולא רק שידול. כפי שאמר כב' הנשיא א. ברק בע"פ 2796/95 הנ"ל בעניין **פלונים**: **"ככל שהשידול של המשדל אינטנסיבי יותר, וככל שמתלווה אליו לא רק פעולות במישור הנפשי אלא גם פעולות במישור העובדתי, כך מתקרב המשדל למבצע בצוותא"** (ראה סעיף 161 לעיל). לכן הורשע באותו מקרה הקטין ט' כמבצע בצוותא, ולא רק כמשדל, משום שהשתתף בתכנון העבירה, והיה "ראש וראשון לכולם".

גם במקרה דנא, אחריותו של הנאשם כמבצע בצוותא נגזרת ממעמדו כמנהיג ומפקד, ומן ההנחיות שנתן לרדאידה ולאנשיו לגבי דרך ביצוע הפיגוע. הנאשם לא רק סייע לביצוע הפיגוע, ולא רק שידל לביצועו על ידי עידודו של ▇ לפעול כפי שפעל, אלא הנאשם היה

חלק מן התוכנית המשותפת לביצוע פיגוע זה, ולמעשה הורה על ביצועו. על משמעותה של
הוראה שכזו עמדנו בס"ק א' לעיל, ולפיכך יש להרשיע את הנאשם גם לגבי פיגוע זה
בעבירה של רצח בכוונה תחילה.

ג.   **פיגוע הרצח במסעדת "סי פוד מרקט" בתל אביב**

פיגוע זה בוצע ביום 5.3.02 במסעדת "סי פוד מרקט" בתל אביב על ידי המפגע
███████, שרצח במהלכו את יוסף הבי ז"ל, אליהו דהן ז"ל והשוטר רס"ר סלים בריכאת ז"ל.
מן הראיות שהובאו עולה כי הפיגוע תוכנן והוצא לפועל על ידי מקורביו של הנאשם███████
███████ וכי ███████ דיווח לנאשם לפני שהפיגוע יצא לדרך על כך
שהוא עומד להתבצע. הנאשם אישר את ביצוע הפיגוע, ורק הורה לבצעו שלא בתוך ישראל,
אלא בהתנחלות או במחסום צבאי בגדה המערבית. מיד לאחר ביצוע הפיגוע התקשר
███████ לנאשם על מנת לדווח לו על כך, והנאשם הורה ל███ שלא ליטול אחריות על
הפיגוע, כיוון שבוצע בתוך ישראל.

מן הראיות שפורטו לעיל, ברורה אחריותו של הנאשם לפיגוע זה כמבצע בצוותא. הנאשם
היה שותף לתוכנית הפיגוע, נתן הנחיות לגבי מקום ביצועו ואישר לבצעו. העובדה
שהמבצעים סטו מההנחיות שנתן להם הנאשם, אינה מעלה ואינה מורידה דבר לעניין
אחריותו הפלילית. כפי שבואר לעיל, אחריותו של הנאשם לפיגוע זה איננה רק כשל משדל,
שכן הוא נתן את אישורו לביצוע פיגוע רצח, דבר שמהווה מעשה של השתתפות בביצוע
העבירה. הנאשם היה חלק מתוכנית הפיגוע, ונתן למתכנן הפיגוע הנחיות לגבי מקום
הביצוע, ולכן גם קיבל ממנו דיווח מייד לאחר על הביצוע. מנהיג חבורה עברייינית המאשר
ביצוע רצח, ונותן הנחיות לביצועו, נושא באחריות לרצח כמבצע בצוותא, ולא רק כמשדל,
על פי ההלכות שבוארו לעיל. לפיכך יש להרשיע את הנאשם גם בגין פיגוע זה באחריותו של
מבצע בצוותא לעבירה של רצח בכוונה תחילה של שלושה אנשים.

ד.   **ניסיון פיגוע ליד קניון מלחה בירושלים**

מתכנן הפיגוע, ███████, הודיע לנאשם יום לפני הפיגוע על הכוונה לפוצץ מכונית
תופת, והנאשם אישר את הפיגוע, אך הורה לבצעו שלא בתוך ישראל, אלא בגדה המערבית.
בפועל התפוצצו שני המחבלים עם מכונית התופת ליד קניון מלחה בירושלים, בדרכם לבצע
את הפיגוע. גם בפיגוע זה נעזר הנאשם במקורבו ███████.

גם כאן אחריותו של הנאשם אינה רק כמשדל, אלא כמבצע בצוותא אשר נתן "אור ירוק
לרצח", בצירוף הנחיות ביצוע. הואיל והפיגוע נכשל, יש להרשיע את הנאשם במקרה זה
בעבירה של ניסיון לרצח.

**חלק חמישי:**   **סיכום**

177.   הנאשם הצהיר בשלב הסיכומים: "אני נגד הרג חפים מפשע, נגד רצח ילדים ונשים. צריך

להתנגד לכיבוש בשטחים, אני נגד פעולה צבאית או התאבדות. לא נכון שהייתי אחראי לכך שהיו **התאבדויות**" (עמ' 24 לישיבה מיום 29.9.03). אולם בפועל הוכח מעבר לכל ספק שהנאשם נטל חלק, ועמד בראש, פעילות רצחנית שמטרתה פגיעה בחפים מפשע - הן בשטחי יהודה ושומרון והן בתחומי "הקו הירוק" - כולל פיגועי התאבדות.

178. הנאשם בחר שלא להתגונן כנגד האשמות החמורות העולות מחומר הראיות שנצבר כנגדו, כפי שפורט לעיל. טענותיו שהועלו במהלך הדיון ובדברי הסיכום שנשא התמקדו בשאלת סמכותו של בית משפט זה לדון בענייננו, ובהצדקת מה שהוא רואה כהתנגדות לכיבוש הישראלי. לטענות אלו של הנאשם התייחסנו בהחלטתנו המקדמית שניתנה ביום 19.01.03 – ככל שמדובר בטענות שאינן במישור הפוליטי בלבד. דחינו טענות אלו, ופסקנו כדלקמן:

א. בית משפט בישראל מוסמך לדון ב"עבירות חוץ" כנגד בטחון המדינה, או כנגד אזרח או תושב ישראלי, יהא מקום ביצוע העבירה אשר יהא, על פי סעיף 13(א)-(ב) לחוק העונשין, התשל"ז-1977, אם כי רוב העבירות נשוא כתב האישום הן "עבירות פנים" הנוגעות לפיגועים שבוצעו בישראל.

ב. חוק יישום הסכם הביניים בדבר הגדה המערבית ורצועת עזה (סמכויות שיפוט והוראות אחרות), התשנ"ו-1996, הנותן תוקף להסכם הביניים ישראלי-פלסטיני בדבר הגדה המערבית ורצועת עזה, כמו גם תקנה 2 לתוספת לחוק להארכת תוקפן של תקנות שעת חירום (יהודה והשומרון וחבל עזה – שיפוט בעבירות ועזרה משפטית), התשל"ח-1977 – אינם שוללים את סמכותו של בית משפט בישראל לדון בעבירות חוץ או בעבירות פנים המיוחסות לנאשם. חיקוקים אלו העבירו לרשות הפלסטינאית את סמכות השיפוט לגבי פלסטינאים שביצעו עבירות בשטחה, אך לא בגין עבירות שבוצעו כנגד אזרחי או תושבי ישראל בשטח מדינת ישראל או בשטחי יהודה ושומרון ורצועת עזה.

ג. לנאשם לא עומדת חסינות כלשהי בגין העבירות שיוחסו לו בכתב האישום, גם אם כיהן כחבר הפרלמנט הפלסטינאי, שכן המשפט הבינלאומי אינו מכיר בחסינות שכזו.

ד. הנאשם איננו זכאי למעמד של "שבוי מלחמה" על פי אמנת ז'נבה השלישית, ועל כן אין מניעה להעמידו לדין על מעשים שביצע כלוחם בלתי חוקי. אדם הפועל מחוץ למסגרת הלחימה החוקית, ובניגוד לדיני המלחמה, ואשר מעורב בביצוע פעולות טרור שמטרתן לפגוע ללא אבחנה באוכלוסיה אזרחית, חושף עצמו לסנקציות הפליליות הרגילות של המשפט הפלילי הבינלאומי, ואיננו זכאי להגנה הניתנת במשפט הבינלאומי.

ה. התנגדות לכיבוש, כפי שטוען הנאשם, איננה מהווה צידוק על פי דין כלשהו לביצוע מעשי הרג של אזרחים חפים מפשע. פעילות טרור שמפרה את דיני המלחמה, ואיננה מבחינה בין מטרות צבאיות לבין מטרות אזרחיות, איננה נחשבת כפעילות לוחמתית המוכרת על פי כללי המשפט הבינלאומי, גם אם מטרתה היא הסרת הכיבוש – כפי שטוען הנאשם.

179. **לסיכום**: לאור כל הטעמים שפורטו בהכרעת הדין לא מצאנו בסיס משפטי להרשעת הנאשם בביצוע מכלול הפיגועים נשוא כתב האישום, ומן הדין להרשיעו בעבירות הכלליות שיוחסו לו בכתב האישום, ובעבירות הרצח וניסיון הרצח הנוגעות לארבעה פיגועים שבכתב האישום (מס' 3

, 7, 12 ו- 36 בנספח לכתב האישום).

על סמך התשתית הראייתית, ולאור הניתוח המשפטי דלעיל, אנו מרשיעים את הנאשם בביצוע העבירות הבאות :

א.   רצח בכוונה תחילה לפי סעיף 300(א)(2) לחוק העונשין, התשל"ז-1977 (בשלושה מקרים בהם נרצחו חמישה בני אדם);

ב.   ניסיון לרצח לפי סעיף 305(1) לחוק העונשין, התשל"ז-1977;

ג.   פעילות בארגון טרור לפי סעיף 2 לפקודת מניעת טרור, התש"ח-1948;

ד.   חברות בארגון טרור לפי סעיף 3 לפקודת מניעת טרור, התש"ח-1948.

ה.   העבירה של קשירת קשר לביצוע פשע לפי סעיף 499 לחוק העונשין, תשל"ז-1977 הוכחה אף היא, ככל שהדבר נוגע לארבעת הפיגועים בהם הורשע הנאשם, והיא נבלעת בעבירה העיקרית של רצח בכוונה תחילה וניסיון רצח.

ניתן והודע היום כ"ט באייר תשס"ד (20 במאי, 2004) בנוכחות ב"כ התביעה, הסניגוריה הציבורית והנאשם.

_____            _____            _____
שרה סירוטה, ס"נ              אברהם טל, שופט              ד"ר עמירם בנימיני, שופט
                                                          אב"ד

P 7: 000460