**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Avraham Bayaz**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-first count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Eti Bablar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                    25

[Stamp] P7: 51 [continued]

**Seventy-second count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Yitzhak Bablar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-third count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Israel Shikar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-fourth count**: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 52

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Shoshana Magmari**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.


### Seventy-fifth count: (Detailed Incident 5601/02 Rishon le Zion)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Sharuk Rassan**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                    26

[Stamp] P7: 52 [continued]

**Seventy-sixth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Nawa Hinawi**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-seventh count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Nir Lovatin**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Seventy-eighth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 53

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Regina Malka Boslan**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.


**Seventy-ninth count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Daliah Masa**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.


Prosecution case 380/03                    27

[Stamp] P7: 53 [continued]

**Eightieth count**: **(Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Pnina Hikri**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Eighty-first count**: **(Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused the intentional death of **the late Edna Cohen**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment.

**Eighty-second count**: **(Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

[Stamp] P7: 54

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, attempted to cause the deaths of as many civilians as possible.

As a result of the detonation of the explosive devices that were activated as described in the sixty-seventh count of the indictment, **59 people** were injured.

**Eighty-third count: (Detailed Incident 5601/02 Rishon le Zion)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on May 7, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth in the sixty-seventh count of the indictment, by his acts described in the sixty-seventh count of the indictment, caused heavy damage to the Sheffield Club, located at 1 Sacharov Street in Rishon Le Zion, and to the entire said building in which the explosive devices were detonated as described in the sixty-seventh count of the indictment.

Prosecution case 380/03                28

[Stamp] P7: 54 [continued]

**Eighty-fourth count: (Detailed Incident 2881/02 Glilot)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on May 23, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in May 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2.  Salah 2 informed the Defendant that Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area, was asking that the Defendant should manufacture an explosive device that would "stick" to iron, for the purpose of carrying out a bombing attack. The Defendant agreed to manufacture the explosive device in order for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3.  Following the said request, the Defendant manufactured an explosive device that could be "stuck" to iron using magnets, which the Defendant attached to the explosive device, which was activated using a cellular telephone handset.

4.  The Defendant delivered the above mentioned explosive device to Salah 2 for the purpose of carrying out the planned suicide attack. Salah 2 conveyed the explosive device to Ibrahim Hamad.

5.  In May 2002, Ibrahim Hamad met Mohamed Hassan Ahmed Arman (known as Abu Muaz) and informed the latter that he wanted to carry out a bombing attack and detonate a fuel tanker, with the intent of causing the deaths of as many people as possible. Following the above mentioned, Mohamed Arman met with Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, and told him about Ibrahim Hamad's plan to carry out a bombing attack. Abu Sa'ad said that he would check out the matter and see what could be done.

6.  After a few days, Mohamed Arman met with Abu Sa'ad again. Abu Sa'ad said that he and his colleagues had found a fuel tanker that regularly traveled to the Pi Glilot site.

[Stamp] P7: 55

7.  On May 22, 2002, Mohamed Arman met with Ibrahim Hamad in Ramallah and reported to the latter about the above mentioned fuel tanker. Ibrahim Hamad asked to meet Mohamed Arman in a few hours' time at the same place.

8.  After a few hours, the two met again. Ibrahim Hamad delivered the explosive device that the Defendant had manufactured as set forth above to Mohamed Arman. In addition, Ibrahim Hamad delivered a cellular telephone handset to Mohamed Arman, through which the explosive device could be called in order to detonate it.

9.  Mohamed Arman delivered the above mentioned explosive device to Walid Abed Aziz Abed Hadi Anjas, who conveyed it to Safa. Mohamed Arman arrived in Safa and from there traveled in his automobile, with Walid Anjas, to Beit Iksa.

10. There, Mohamed Arman met with Abu Sa'ad and together with Walid Anjas, delivered the above mentioned explosive device with a cellular telephone handset connected to it and the additional cellular telephone handset to Abu Sa'ad.

11. In the early morning hours on the following day, May 23, 2012, Abu Sa'ad traveled to Holon with Wasam Sa'id Abasi, while they were in possession of the above mentioned explosive device. In Holon, Abu Sa'ad attached the above mentioned explosive device, using a magnet, to the bottom front part of the fuel tank mounted on a fuel tanker, license no. 2622700. The above mentioned fuel tanker had been found earlier by Wasam Abasi and Alaa A-Din Mahmoud Abasi as an objective for carrying out a bombing attack. Abu Sa'ad waited in his vehicle until[…]

[Stamp] P7: 55 [continued]

[Stamp] Authentic copy          [Stamp] * The Military Appellate Court in Judea and Samaria * [Signature]

[…]that the fuel tanker driver had arrived and thereafter drove after the above mentioned fuel tanker to the Pi Glilot site. After Abu Saad had made sure that the fuel tanker, to which the above mentioned explosive device had been attached, had entered the Pi Glilot site, Abu Saad activated the above mentioned explosive device that the Defendant had manufactured using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

12. The above mentioned explosive device exploded and caused serious damage to the above mentioned fuel tanker. Only by a miracle was nobody hurt.


**Eighty-fifth count**: (Detailed Incident 3975/02 Lod)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, whether within the Area or elsewhere, on June 30, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or the Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, was asking the Defendant to manufacture an explosive device that would be activated using a cellular telephone handset for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the request as set forth, the Defendant manufactured an explosive device that could be activated using a cellular telephone handset.

4.  The Defendant delivered the above mentioned explosive device to Salah 2. Salah 2 transferred the above mentioned explosive device to Ibrahim Hamil Abd Ghani Hamad, known as Salah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area.

5.  Ibrahim Hamad contacted Mohamed Hassan Ahmed Arman (known as Abu Muaz) and suggested that they carry out a bombing attack by placing an explosive device on a railway track inside the State of Israel, with the intent of causing the deaths of as many people as possible.

6.  Mohamed Arman contacted Waal Mahmoud Mohamed Ali Qassam, known as Abu Saad, and asked him to check the possibility of carrying out a bombing attack on railway tracks in Israel. After some time, Abu Saad contacted Mohamed Arman and informed him that he had found a suitable place for carrying out the planned attack. Mohamed Arman reported this to Ibrahim Hamad.

7.  After some time, Mohamed Arman met in Ramallah Ibrahim Hamad, who delivered the explosive device, which the Defendant had manufactured as set forth above, to him.

8.  On June 29, 2002, or thereabouts, Mohamed Arman transferred the above mentioned explosive device with the cellular telephone handsets to Abu Saad and explained to the latter how to activate the above mentioned explosive device.

9.  In the evening hours of that day, Abu Saad, along with Wassam Sa'id Abasi, traveled to Lod and placed the above mentioned explosive device on the railway tracks in Lod in a place that had been identified earlier by Wassam Abasi and Alaa A-Din Mahmoud Abasi as suitable for carrying out the planned attack. Thereafter, Abu Saad and Wassam Abasi returned to Jerusalem.

Prosecution Case 380/03

[Stamp] P 7: 187 [continued]

10. In the early hours of the following morning, June 30, 2012, Abu Sa'ad and Wasam Abasi traveled to Lod. Wasam Abasi positioned himself next to the explosive device that had been placed, as set forth above, on the railroad tracks. At about 7:00 a.m., when Wasam Abasi noticed a train approaching the said site, he informed Abu Sa'ad, who activated the above mentioned explosive device using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

11. The above mentioned explosive device exploded.

12. As a result of the detonation of the above mentioned explosive device, 4 people were injured. In addition, damage was sustained by the train's locomotive and by the railroad track.

**Eighty-sixth count: (Detailed Incident 9913/02 Rehovot)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 21, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, had asked that the Defendant should manufacture an explosive device that was activated by cellular telephone handset, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the said request, the Defendant manufactured an explosive device, which was activated by cellular telephone handset.

[Stamp] P7: 56

4.    The Defendant delivered the above mentioned explosive device to Salah 2. Salah 2 transferred the above mentioned explosive device to Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area.

5.    Ibrahim Hamad contacted Mohamed Hassan Ahmed Arman (known as Abu Muaz) and suggested that an additional bombing attack be carried out by placing an explosive device on the railroad track inside the State of Israel, with the intent of causing the deaths of as many people as possible.

6.    Mohamed Arman contacted Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, and asked him to find a place to carry out an additional bombing attack on the railroad track in Israel. After some time, Abu Sa'ad turned to Mohamed Arman and told him that he had found a suitable place for carrying out the planned attack. Mohamed Arman reported this to Ibrahim Hamad.

7.    After some time, Hamad Arman met in Ramallah Ibrahim Hamad, who delivered to him the explosive device that the Defendant had manufactured, as set forth above, for the purpose of carrying out the planned attack.

8.    On July 20, 2002, Mohamed Arman delivered the above mentioned explosive device to Walid Abed Aziz Abed Hadi Anjas and asked the latter to transfer it to Safa. Thereafter, Mohamed Arman arrived in Safa and met there Walid Anjas. From there, the two traveled together to Beit Iksa.

9.    In Beit Iksa, Mohamed Arman and Walid Anjas transferred the above mentioned explosive device, along with the cellular telephone handsets, to Abu Sa'ad.

Prosecution case 380/03                    31

[Stamp] P7: 56 [continued]

10. That night, Abu Sa'ad, along with Wasam Sa'id Abasi and Alaa A-Din Mahmoud Abasi, traveled to the Rehovot area and placed the above mentioned explosive device on the railroad track near the exit from Rehovot, next to Kfar Gvirol, a place that was selected earlier by Abu Sa'ad and Wasam Abasi. Thereafter, the three returned to Jerusalem.

11. On the following day, July 21, 2002, in the early morning hours, Abu Sa'ad and Wasam Abasi traveled to the site at which the above mentioned explosive device had been placed. At about 7:30 a.m., Abu Sa'ad activated the above mentioned explosive device with the aim of causing the deaths of as many people as possible – after Wasam Abasi reported to him by cellular telephone that a train was approaching the site at which the explosive device had been placed.

12. The above mentioned explosive device exploded. As a result of the explosion of the explosive device, one person was injured. In addition, damage was caused to the train's locomotive and to the railroad track.

**Eighty-seventh count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in July 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, asked that the Defendant should manufacture an explosive device hidden in a bag, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

[Stamp] P7: 57

3.   Following the said request, the Defendant manufactured an explosive device, which was made using a large shampoo bottle filled with explosives, which had been concealed inside a rigid black cloth bag (similar to a briefcase). In addition, the Defendant filled the above mentioned bag with hardware nuts for the purpose of increasing the destructive power of the device. According to Salah 2's request, the Defendant attached a wireless activation mechanism to the above mentioned explosive device, so that the explosive device would be activated using a cellular telephone handset.

4.   The Defendant delivered the above mentioned explosive device and three additional shampoo containers, filled with explosives, to Salah 2.

5.   Salah 2 transferred the above mentioned explosive device to Ibrahim Jamil Abed Ghani Hamad, known as Shalah 1 or Sheikh, the head of the military arm of the Hamas Organization in the Ramallah area.

6.   Ibrahim Hamad approached Mohamed Hassan Ahmed Arman (known as Abu Muaz) and asked to find a place in Jerusalem in which a bombing attack could be carried out with the intent of causing the deaths of as many people as possible. Mohamed Arman approached Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, and asked the latter to find a suitable place for carrying out a bombing attack.

7.   After a few days, Abu Sa'ad informed Mohamed Arman that he had found a suitable place for carrying out a mass attack, which was the Hebrew University in Jerusalem, the Mount Scopus campus. Mohamed Arman reported the site that had been found to Ibrahim Hamad.

Prosecution case 380/03                    32

[Stamp] P7: 57 [continued]

8. For the purpose of carrying out the planned bombing attack, Ibrahim Hamad delivered to Mohamed Arman the explosive device that the Defendant had manufactured as set forth above. Mohamed Arman added three bottles of shampoo filled with explosives to the said explosive device, which Salah 2 had received from the Defendant.

9. Thereafter, Mohamed Arman traveled along with Walid Abed Aziz Abed Hadi Anjas to Beit Iksa with the aim of transferring the above mentioned explosive device to Abu Sa'ad in order for the latter with his colleagues to carry out the planned bombing attack using them.

10. In Beit Iksa, Mohamed Arman and Walid Anjas met Abu Sa'ad. The two delivered the above mentioned explosive device along with the two cellular telephone handsets to Abu Sa'ad, one handset being connected to the explosive device and serving as an activation mechanism.

11. On July 28, 2002, Abu Sa'ad, along with Mohamed Ashak Ouda, transferred the above mentioned explosive device to Jerusalem. Abu Sa'ad and Mohamed Ouda brought the above mentioned explosive device into the Mount Scopus campus of the Hebrew University in Jerusalem. Mohamed Ouda was very familiar with the site because he had worked there previously and also made use of an employee card, which he had retained, to enter the above mentioned campus. Mohamed Ouda placed the above mentioned explosive device inside the cafeteria located in the Frank Sinatra building of the above mentioned campus. Thereafter, Abu Sa'ad and Mohamed Ouda tried to activate the above mentioned explosive device using a cellular telephone, but the explosive device did not explode due to a fault in it. Thereafter, Mohamed Ouda returned to the place at which he had put the above mentioned explosive device, collected the explosive device, and together with Abu Sa'ad, traveled to Beit Iksa.

12. Thereafter, on July 29, 2002, Mohamed Arman and Walid Anjas met with Abu Sa'ad again. Abu Sa'ad returned the above mentioned explosive device to Mohamed Arman. Abu Sa'ad stated that he and his colleagues had placed the above mentioned explosive device in the Hebrew University in Jerusalem, the Mount Scopus Campus, with the intent of detonating it and causing the deaths of as many people as possible, but the above mentioned explosive device had not exploded. Mohamed Arman and Walid Anjas transferred the above mentioned explosive device to Harbata Bni-Hareth.

13. Mohamed Arman repaired the above mentioned explosive device after inspecting it and discovering that there was a problem with the electrical wires.

[Stamp] P7: 58

14. On the following day, July 30, 2002, Mohamed Arman met Walid Anjas again and with the latter, transferred the above mentioned explosive device to Beit Iksa.

15. In Beit Iksa, Mohamed Arman and Walid Anjas met with Abu Sa'ad. Mohamed Arman delivered the above mentioned explosive device to Abu Sa'ad.

16. That night, Abu Sa'ad and Mohamed Ashak Ouda took the above mentioned explosive device to Jerusalem and concealed it among the trees in the botanic garden in the Mount Scopus campus of the Hebrew University.

17. On the following day, July 31, 2002, Abu Sa'ad and Mohamed Ouda traveled again to the Mount Scopus campus of the Hebrew University. While Abu Sa'ad was waiting outside, Mohamed Ouda entered the campus, collected the above mentioned explosive device and placed it in the cafeteria located in the Frank Sinatra building in the Mount Scopus campus of the Hebrew University in Jerusalem. At about 1:30 p.m., after Mohamed Ouda left the area of the campus and joined Abu Sa'ad, Abu Sa'ad activated the above mentioned explosive device that had been manufactured by the Defendant, via a cellular telephone handset, with the intent of causing the deaths of as many people as possible. Abu Sa'ad and Mohamed Ouda chose to carry out the attack at around 1:00 p.m. because, according to the information that Mohamed Ouda had gathered, the above mentioned cafeteria was crowded with people at that time.

18. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Daphna Spruch**, who was killed as a result of the explosive device as described in the eighty-seventh count of the indictment.

[Stamp] P7: 58 [continued]