**Eighty-eighth count**: (Detailed Incident 1197/02 Shalem)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Marla Anne Bennett**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Eighty-ninth count**: (Detailed Incident 1197/02 Shalem)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Dina Carter**, who was killed as a result of the explosive device as described in the eighty-seventh count of the indictment.

**Ninetieth count**: (Detailed Incident 1197/02 Shalem)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 59

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Benjamin Thomas Blutstein,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-first count: (Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Revital Barashi,** who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

Prosecution case 380/03                            34

[Stamp] P7: 59 [continued]

**Ninety-second count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late David (Diego) Ladowski**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-third count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Levina Shapira**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-fourth count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 60

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late Janis Ruth Coulter**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-fifth count:** (Detailed Incident 1197/02 Shalem)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused the intentional death of **the late David Gritz**, who was killed as a result of the detonation of the explosive device as described in the eighty-seventh count of the indictment.

**Ninety-sixth count:** (Detailed Incident 1197/02 Shalem)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, attempted to cause the intentional death of as many civilians as possible. As a result of the detonation of the explosive device that was activated as described in the eighty-seventh count of the indictment, **81 people** were injured.

**Ninety-seventh count:** (Detailed Incident 1197/02 Shalem)

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 31, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty-seventh count of the indictment, by his acts described in the eighty-seventh count of the indictment, caused heavy damage to the Frank Sinatra Building in the Mount Scopus campus of the Hebrew University in Jerusalem, in which an explosive device was activated as described in the eighty-seventh count of the indictment.

**Ninety-eighth count:** (Detailed Incident 9638/02 Rishon le Zion)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 61

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 7, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early August 2002, in Ramallah or thereabouts, met with Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

2. Salah 2 informed the Defendant that Ibrahim Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the commander of the military arm of the Hamas Organization in the Ramallah area, had asked the Defendant to manufacture two explosive devices concealed inside biscuit boxes – one activated by cellular telephone handset and the other activated by remote control, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive devices in order for them to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the said request, the Defendant manufactured two explosive devices, which were concealed inside biscuit boxes. To one of the explosive devices, the Defendant connected an activation mechanism consisting of a cellular telephone handset, while to the other explosive device, the Defendant attached an activation mechanism so that the device could be activated by remote control.

4. The Defendant delivered the above mentioned explosive devices to Salah 2. Salah 2 transferred the above mentioned explosive device to Ibraham Jamil Abed Ghani Hamad, known as Salah 1, the head of the military arm of the Hamas Organization in the Ramallah area.

Prosecution case 380/03               36

[Stamp] P7: 61 [continued]

5. In early august 2002, Mohamed Hassan Ahmed Arman (known as Abu Muaz) met Waal Mahmoud Mohamed-Ali Qassam, known as Abu Sa'ad, who asked to obtain an explosive device. Abu Sa'ad explained that he intended to place the explosive device under a vehicle and detonate it with the intent of causing the deaths of as many Israeli civilians as possible.

6. Mohamed Arman turned to Ibrahim Hamad and asked to obtain an explosive device for the purpose of carrying out the planned attack. After a few days, in Ramallah or thereabouts, Ibrahim Hamad transferred an explosive device to Mohamed Amran, which the Defendant had manufactured, as set forth above, which was activated by a cellular telephone handset.

7. On that same day, August 6, 2002, Mohamed Arman, together with Walid Abed Aziz Abed Hadi Anjas, traveled to Beit Iksa while in possession of the above mentioned explosive device. In Beit Iksa, the two met with Abu Sa'ad, and transferred the above mentioned explosive device to him.

8. On the following day, August 7, 2002, Abu Sa'ad and Wasam Sa'id Abasi attached the above mentioned explosive device to a fuel tanker, license no. 3388300, which was parked in the Pisgat Ze'ev neighborhood in Jerusalem or thereabouts. After a few hours, at about 1:50 p.m., Abu Sa'ad activated the above mentioned explosive device using a cellular telephone handset, with the intent of causing the deaths of as many people as possible. The device that was planted on the said fuel tanker exploded while the tanker was in a garage at 23 Shmotkin Street in Rishon le Zion.

9. As a result of the detonation of the above mentioned explosive device, damage was sustained by the fuel tanker, and only by a miracle was nobody hurt.

**Ninety-ninth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in early September 2002 or thereabouts, in Ramallah or thereabouts, met Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in the Hamas Organization.

[Stamp] P7: 62

2. Salah 2 asked the Defendant to make two explosive belts for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive belts in order for them to be used for carrying out a suicide attack with the intent of causing the deaths of as many people as possible. Following the said request, the Defendant manufactured two explosive belts.

3. The Defendant delivered the above mentioned explosive belts to Salah 2, who had them transferred through Hasnin Rumana to Mahmoud Hamad Mahmoud Sharitah, a military operative in the Hamas Organization, for the purpose of carrying out the planned suicide attack.

4. In late July 2004, Hasnin Rumana called Mahmoud Sharitah and asked to arrange a meeting between Iad Naim Subahi Radad, known as Omar, and a person known as Abu Khaled. Hasnin Rumana explained that the said meeting was intended for the purpose of carrying out a suicide attack, which the above mentioned Omar was supposed to carry out. Mahmoud Sharitah called Omar and informed him where and how he must meet Abu Khaled. After two days, Omar reported that Abu Khaled did not arrive to the arranged meeting.

5. Immediately after the above mentioned conversation, Mahmoud Sharitah returned to Ramallah and met Hasnin Rumana and reported to the latter that the scheduled meeting had not taken place. At the end of the above mentioned meeting, Mahmoud Sharitah called Ashraf Zaghair, known as Abu Sharif.

Prosecution case 380/03            37

[Stamp] P7: 62 [continued]

6. After a few days, Mahmoud Sharitah met Hasnin Rumana again, who asked to arrange another meeting between Omar and Abu Khaled.

7. After about a week, Hasnin Rumana requested that if Abu Khaled should not show up at the said meeting, Mahmoud Sharitah would take responsibility for Omar and the second suicide terrorist, Rafat Radad.

8. After the above mentioned conversation, Mahmoud Sharitah met Abu Sharif in Ramallah and asked the latter to find a place within the Israel that would be suitable for carrying out a suicide attack. Mahmoud Sharitah made it clear to Abu Sharif that he would have to lead two suicide terrorists to the place that he would find in order for them to carry out a bombing attack there with the aim of causing the deaths of as many people as possible. Abu Sharif agreed, but contended that it would take time to find a place where a double suicide attack could be carried out. During the above mentioned conversation, Abu Sharif reported that he had rented an apartment in Dahiat Al-Barid.

11. Omar informed Mahmoud Sharitah that he had learned from Rafat Mukadi about a large banquet hall, Whitehall, in Or Yehuda. Omar suggested that he and Rafat Mukadi carry out the suicide attack in the above mentioned banquet hall, after first shooting with weapons at the occupants of the banquet hall and then detonating the explosive belts that they would be carrying on their persons, with the intent of causing the deaths of as many people as possible. Mahmoud Sharitah agreed to the above mentioned idea and sent Abu Sharif to inspect the above mentioned banquet hall. Abu Sharif traveled to the above mentioned banquet hall and reported that the planned attack could not be carried out there because of the large number of security guards who were posted at the site.

12. Mahmoud Sharitah reported to Hasnin Rumana concerning his activity that had been carried out for the purpose of carrying out the planned suicide attack. Mahmoud Sharitah asked Hasnin Rumana to obtain two explosive belts and two small weapons for the purpose of carrying out the planned suicide attack. Hasnin Rumana promised to see to the explosive belts and the weapons.

13. After a few days, Mahmoud Sharitah and Abu Sharif obtained two explosive belts that the Defendant had manufactured as set forth above, and two Uzi submachine guns with magazines filled with cartridges.

[Stamp] P7: 63

14. Thereafter, Mahmoud Sharitah met Omar and informed the latter that the explosive belts were ready and he could depart to carry out the planned suicide attack along with his cousin, Rafat Mukadi. Omar responded that he himself was prepared to carry out the suicide attack as soon as possible, but Rafat Mukadi was not ready to carry out the planned suicide attack, because his sister was in the USA and he wanted to wait until she returned to the Area.

15. Mahmoud Sharitah turned to Abu Sharif again and asked to act urgently to find a suitable place to carry out the planned suicide attack. After a few days, Abu Sharif reported that he had found a place in Tel Aviv that was suitable for carrying out the planned suicide attack.

16. On September 17, 2002, or thereabouts, Mahmoud Sharitah met Omar in the safe-house apartment in A-Ram and explained to the latter how to put on and how to activate the explosive belt. Mahmoud Sharitah stayed in the above mentioned apartment with Omar until September 18, 2002.

17. On September 19, 2002, Omar departed from Ramallah to carry out the planned suicide attack, while carrying one of the suicide belts on his person, which the Defendant had manufactured as set forth above.

Prosecution case 380/03              38

[Stamp] P7: 63 [continued]

18. Abu Sharif transported Omar to Tel Aviv in his vehicle. Upon arriving in Tel Aviv, Abu Sharif instructed Omar to explode where there were many people, so that the explosion would cause the deaths of as many people as possible.

19. At about 12:55 p.m., on September 19, 2002, or thereabouts, Omar boarded Dan bus no. 4, license no. 9105201, at 94 Allenby Street in Tel Aviv. As soon as the above mentioned bus started to move, Omar activated the explosive belt that the Defendant had manufactured, which he was carrying on his person, and caused a strong explosion, with the intent of causing the deaths of as many people as possible. The suicide terrorist, Iad Naim Subahi Radad, known as Omar, was killed as a result of the detonation of the above mentioned explosive device.

20. As a result of the explosion of the suicide terrorist with the above mentioned explosive device, six people were killed, as described in the following counts of the indictment.

21. As a result of the explosion of the suicide terrorist with the said explosive device, many other people were injured, as will be described in the following counts of the indictment.

22. As a result of the explosion of the suicide terrorist with the said explosive device, extensive damage was sustained by the above mentioned bus, by the vehicles that were near the site of the explosion and by nearby stores.

23. By his acts described above, the Defendant caused the intentional death of **the late Yossi Mamistavlov**, aged 39 at the time of his death, who was killed as a result of the explosion of the explosive device as set forth above.


**One hundredth count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P7: 64

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Ofer Zinger**, aged 39 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred first count: (Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Rosanna Siso**, aged 63 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

Prosecution case 380/03            39

**One hundred second count:** (Detailed Incident 19284/02 Yarkon)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Yaffa Shem-Tov**, aged 49 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.


**One hundred third count:** (Detailed Incident 19284/02 Yarkon)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Solomon Hoenig**, aged 79 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.


**One hundred fourth count:** (Detailed Incident 19284/02 Yarkon)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P7: 65

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Jonathan Jesner**, aged 19 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

**One hundred fifth count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, attempted to cause the intentional death of all of the individuals who were in the vicinity of the suicide terrorist, who exploded with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, **approximately 84 people** who were aboard and near the above mentioned bus at the time of the explosion **were injured**.

**One hundred sixth count**: (Detailed Incident 19284/02 Yarkon)

**Nature of the offense**: Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The aforementioned Defendant, both within the Area and elsewhere, on September 19, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, maliciously and unlawfully caused heavy damage to the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, and caused damage to additional vehicles and to stores and to businesses that were near the site of the attack described in the ninety-ninth count of the indictment, which were damaged as a result of the explosion of the explosive device that the Defendant had manufactured.

**One hundred seventh count**: (Detailed incident 21011/02 Yarkon)

**Nature of the offense**: Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on October 11, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1. The above mentioned Defendant, in early September 2002, in Ramallah or thereabouts, manufactured two explosive belts for the purpose of carrying out suicide attacks with the intent of causing the deaths of as many people as possible, as described in the ninety-ninth count of the indictment.

2. The Defendant transferred the two explosive belts to Sid Abed Karim Khader Sheikh-Qassam, known as Salah 2, a military operative in Hamas, who had them transferred to Mahmoud Hamad Mahmoud Sharitah, as described in the ninety-ninth count of the indictment.

[Stamp] P7: 66

3. After carrying out the attack described in the ninety-ninth count, Mahmoud Sharitah decided to carry out an additional suicide attack using the explosive belt that the Defendant had manufactured for that purpose.

4. For the purpose of advancing his above mentioned plan, Mahmoud Sharitah recruited Rafat Mukadi to carry out the planned suicide attack.

5. Mahmoud Sharitah also met with Ashraf Munir Zaghair, known as Abu Sharif, and instructed the latter to find a suitable site for carrying out the planned suicide attack. After a few days, Abu Sharif reported that he had found two places in Tel Aviv that were suitable for carrying out the planned suicide attack.

6. On October 11, 2002, Abu Sharif brought Rafat Mukadi from the village of Arabeh to the safe house in A-Ram. Mahmoud Sharitah explained to Rafat Mukadi how to put on and how to activate the explosive belt. Mahmoud Sharitah attached the explosive belt that the Defendant had manufactured to the body of Rafat Mukadi.

7. Abu Sharif transported Rafat Mukadi to Tel Aviv in order for the latter to carry out the planned suicide attack there.

8. At about 8:15 p.m., on October 11, 2002, Abu Sharif dropped off Rafat Mukadi on the beach promenade in Tel Aviv and instructed the latter to detonate the explosive belt, which he was carrying on his person, in a restaurant that was full of people.

9. Rafat Mukadi attempted to enter the Yotvata restaurant located on Herbert Samuel Street (Tel Aviv promenade), but the security guard at the site noticed him, suspected that he was a suicide terrorist and prevented

Prosecution case 380/03                  41

     his entry. Rafat Mukadi tried to flee from the site, but was caught after a pursuit and with the assistance of other security guards who arrived at the site.

10. By his acts described above, the above mentioned Defendant attempted to cause the deaths of as many people as possible.

**One hundred eighth count:**

**Nature of the offense:** Military training without a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in February 2003 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, administered military training to a person, a resident of Nablus, who had been sent to him by Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area.

During the said training, the Defendant taught the above mentioned person how to manufacture explosive devices, electrical circuits for activating explosive devices and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

During the above mentioned military training, the Defendant and the above mentioned person were masked.

**One hundred ninth count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2003 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

[Stamp] P7: 67

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, conveyed to Ibraham Jamil Abed Ghani Hamad, known as Salah 1 or Sheikh, the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area, computer diskettes containing instructions for manufacturing the explosives and the explosive devices.

Ibrahim Hamad asked the Defendant to obtain the above mentioned diskettes in order to transfer them to the operatives of the Palestinian Islamic Jihad Organization, who had asked to learn how to manufacture explosives and explosive devices.