5. בראשית חודש אוגוסט 2002, מחמד חסן אחמד ערמאן (מכונה "אבו מועאזי") נפגש עם ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעד", אשר ביקש לקבל מטען חבלה. "אבו סעד" הסביר כי בכוונתו להניח את מטען החבלה מתחת לרכב ולפוצצו בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

6. מחמד ערמאן פנה אל אברהים חאמד וביקש לקבל מטען חבלה לצורך ביצוע הפיגוע המתוכנן. לאחר מספר ימים, ברמאללה או בסמוך לכך, אברהים חאמד העביר לידי מחמד ערמאן מטען חבלה, אותו ייצר הנאשם, כאמור לעיל, אשר היה מופעל באמצעות מכשיר טלפון סלולרי.

7. באותו היום, 06.08.02, מחמד ערמאן, ביחד עם וליד ע/עזיז ע/האדי אנג'אס נסעו לבית איכסא כאשר ברשותם מטען החבלה הנ"ל. בבית איכסא, השניים נפגשו עם "אבו סעד" והעבירו לידיו את מטען החבלה הנ"ל.

8. ביום למחרת, 07.08.02, "אבו סעד" ווסאם סעיד עבאסי הצמידו את מטען החבלה הנ"ל למיכלית דלק, מ.ר. 3388300, שחנתה בשכונת פסגת זאב בירושלים או בסמוך לכך. לאחר מספר שעות, בסמוך לשעה 13:50, "אבו סעד" הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המטען שהונח במיכלית הדלק האמורה התפוצץ, וזאת כאשר מיכלית הדלק היתה במוסך ברחוב שמוטקין 23 בראשון לציון.

9. כתוצאה מפיצוץ מטען החבלה הנ"ל נגרם נזק למיכלית הדלק ורק בנס איש לא נפגע.

<u>**פרט תשעים ותשעה:**</u> (פ.א. 19284/02 ירקון)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שיך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" ביקש מהנאשם לייצר שתי חגורות נפץ וזאת לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את חגורות הנפץ וזאת על מנת שישתמשו בהן לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות הבקשה האמורה, הנאשם ייצר שתי חגורות נפץ.

3. הנאשם מסר את חגורות הנפץ הנ"ל לידי "צלאח 2", אשר דאג להעבירן באמצעות חסנין רומאנה אל מחמוד חמאד מחמוד שריתח, פעיל צבאי בארגון החמאס, וזאת לצורך הוצאה לפועל של פיגוע התאבדות המתוכנן.

4. בסוף חודש יולי 2002, חסנין רומאנה התקשר אל מחמוד שריתח וביקש כי לתאם פגישה בין איאד נעים צובחי רדאד, המכונה "עומר", לבין אדם המכונה "אבו חאלד". חסנין רומאנה הסביר כי הפגישה האמורה נועדה לצורך ההוצאה לפועל של פיגוע התאבדות, אשר אותו היה אמור לבצע "עומר" הנ"ל. מחמוד שריתח התקשר אל "עומר" ומסר לאחרון איפה וכיצד עליו לפגוש את אבו חאלד. כעבור יומיים, "עומר" הודיע כי אבו חאלד לא הגיע לפגישה שנקבעה.

5. מיד לאחר השיחה הנ"ל, מחמוד שריתח חזר לרמאללה ונפגש עם חסנין רומאנה ודיווח לאחרון כי הפגישה המתוכננת לא יצאה אל הפועל. בתום הפגישה הנ"ל, מחמוד שריתח התקשר אל אשרף זעייר, המכונה "אבו ש ריף".

6. לאחר מספר ימים, מחמדו שריתח נפגש שוב עם חסנין רומאנה, אשר ביקש כי לתאם פגישה נוספת בין "עומר" לאבו חאלד.

7. כעבור כשבוע ימים, חסנין רומאנה ביקש כי במקרה שאבו חאלד לא יגיע לפגישה האמורה, מחמוד שריתח ייקח אחריות על "עומר" ועל המחבל המתאבד השני, ראפת רדאד.

8. לאחר השיחה הנ"ל, מחמדו שריתח עקב אחרי "עומר" וראה כי "עומר" ממתין במקום המפגש וכי אבו חאלד לא הגיע. כעבור רבע שעה של המתנה מחמוד שריתח ניגש אל "עומר" והודיע לאחרון כי מרגע זה הנאשם יהיה אחראי עליו.

9. "עומר" מסר כי יש לו בן דוד, ראפת מוקדי, אשר גם הוא רוצה לבצע פיגוע התאבדות. "עומר" ביקש לבצע פיגוע התאבדות ביחד עם בן-דודו ה נ"ל.

10. לאחר מספר ימים, מחמוד שריתח נפגש ברמאללה עם "אבו שריף" והורה לאחרון למצוא מקום בתוך מדינת ישראל המתאים לביצוע פיגוע התאבדות. מחמדו שריתח הבהיר ל"אבו שריף" כי יהיה עליו להוביל למקום שאותו יאתר שני מחבלים מתאבדים על מנת שיבצעו שם פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. "אבו שריף" הסכים, אך טען כי ייקח זמן לאתר מקום ניתן לבצע פיגוע התאבדות כפול. במהלך השיחה הנ"ל, "אבו שריף" דיווח כי שכר דירה בדחיית אל-ב ריד.

11. "עומר" מסר למחמוד שריתח כי נודע לו מראפת מוקדי על אולם שמחות גדול "וייט הול" הנמצא באור-יהודה. "עומר" הציע כי הוא וראפת מוקדי יבצעו את פיגוע ההתאבדות באולם השמחות הנ"ל, כאשר תחילה שניהם יירו בכלי נשק לעבר האנשים שיהיו בתוך אולם השמחות ולאחר מכן יפוצצו את חגורות הנפץ שיישאו על גופם, וכל זאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמוד שריתח הסכים לרעיון הנ"ל ושלח את "אבו שריף" לבדוק את אולם השמחות הנ"ל. "אבו שריף" נסע לאולם השמחות הנ"ל ודיווח כי לא ניתן לבצע שם את הפיגוע המתוכנן בגלל מספר גדול של מאבטחים שנמצאים במקום.

12. מחמוד שריתח דיווח לחסנין רומאנה לגבי פעילותו שבוצעה לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. מחמוד שריתח ביקש מחסנין רומאנה לקבל שתי חגורות נפץ ושני כלי נשק קטנים, כל זאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. חסנין רומאנה הבטיח לדאוג לחגורות הנפץ ולכלי הנשק.

13. לאחר מספר ימים מחמוד שריתח ו"אבו שריף" קיבלו שתי חגורות הנפץ, אותן ייצר הנאשם כאמור לעיל, וכן שני תת-מקלעים "עוזי" עם מחסניות מלאות בכדו רים.

14. לאחר מכן, מחמוד שריתח נפגש עם "עומר" ומסר לאחרון כי חגורות הנפץ מוכנות והוא יכול לצאת לביצוע פיגוע התאבדות המתוכנן ביחד עם בן-דודו, ראפת מוקדי. "עומר" השיב כי הוא עצמו מוכן לבצע את פיגוע ההתאבדות בהקדם האפשרי, אך ראפת מוקדי לא מוכן לבצע את פיגוע ההתאבדות המתוכנן, מכיוון שאחותו שוהה בארה"ב והוא מבקש להמתין לשובה ל איזור.

15. מחמוד שריתח פנה שוב ל"אבו שריף" וביקש לפעול דחוף לאיתור מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן. לאחר מספר ימים, "אבו שריף" דיווח כי איתר מקום בתל-אביב שהוא מתאים לביצוע פיגוע ההתאבדות המתוכ נן.

16. ביום 17.09.02 או בסמוך לכך, מחמוד שריתח נפגש בדירת המסתור בא-ראם עם "עומר" והסביר לאחרון כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריתח נשאר בדירה הנ"ל, ביחד עם "עומר" עד ליום 18.0 9.02.

17. ביום 19.09.02, "עומר" יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן כשהוא נושא על גופו את אחת מחגורות הנפץ, אשר ייצר הנאשם כאמור ל עיל.

18. "אבו שריף" הסיע את "עומר" ברכבו לתל-אביב. בהגיעם לתל-אביב, "אבו שריף" הנחה את "עומר" להתפוצץ שבו נמצאים אנשים רבים וזאת על מנת שהפיצוץ יגרום למותם של אנשים רבים ככל הני תן.

19. בסמוך לשעה 12:55, ביום 19.09.02, או במועד הסמוך לכך, "עומר" עלה לאוטובוס בקו 4 של "דן", מ.ר. 9105201, ברחוב אלנבי 94 בתל-אביב. מיד כשהאוטובוס.הנ"ל התחיל בנסיעה, "עומר" הפעיל את חגורת הנפץ, אותה ייצר הנאשם, שנשא על גופו וגרם לפיצוץ עז, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המחבל המתאבד, איאד נעים צובחי רדאד המכונה "עומר", נהרג כתוצאה מפיצוץ מטען החבלה ה נ"ל.

20. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו שישה בני אדם, כפי שיתואר בפרטי האישום ה באים.

21. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

22. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לאוטובוס הנ"ל, לכלי רכב שהיו בסמוך למקום הפיצוץ, וכן לחנויות הס מוכות.

23. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של **יוסי ממיסטלוב ז"ל**, בן 39 במותו, אשר נהרג כתוצאה מהתפוצצות מטען החבלה כאמור לעיל.

<u>פרט מאה:</u> **(פ.א. 19284/02 ירקון)**

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **עופר זינגר ז"ל**, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה ואחד:</u> **(פ.א. 19284/02 ירקון)**

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של **רוזנה סיסו ז"ל**, בת 63 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**<u>פרט מאה ושניים:</u>** (פ.א. 19284/02 ירקון)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של **יפה שם-טוב ז״ל**, בת 49 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו ״דן״ 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**<u>פרט מאה ושלושה:</u>** (פ.א. 19284/02 ירקון)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **סלומון הוניג ז״ל**, בן 79 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו ״דן״ 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**<u>פרט מאה וארבעה:</u>** (פ.א. 19284/02 ירקון)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **יונתן ג׳סנר ז״ל**, בן 19 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו ״דן״ 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**<u>פרט מאה וחמישה:</u>** (פ.א. 19284/02 ירקון)

**<u>מהות העבירה:</u>** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען החבלה באוטובוס, מ.ר. 9105201, קו ״דן״ 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.
כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה **נפצעו כ-84 בני אדם** שהיו באוטובוס הנ״ל ובסמוך אליו בעת הפיצוץ.

**פרט מאה ושישה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם במזיד ושלא כדין נזק כבד לאוטובוס, מ.ר. 9105201, שנסע בקו 4 של "דן" ברחוב אלנבי בתל-אביב וכן גרם נזק לכלי רכב נוספים ולחנויות ובתי עסק שהיו בקרבת מקום הפיגוע המתואר בפרט האישום התשעים ותשעה, ואשר נפגעו כתוצאה מפיצוץ מטען החבלה, אותו ייצר הנאשם.

**פרט מאה ושבעה:** (פ.א. 21011/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 11.10.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002, ברמאללה או בסמוך לכך, ייצר שתי חגורות נפץ לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר, וזאת כפי שתואר בפרט האישום התשעים ותשעה.

2. הנאשם העביר את שתי חגורות הנפץ לידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס, אשר דאג להעבירן למחמוד חמאד מחמוד שריתח, כפי שתואר בפרט האישום התשעים ותשעה.

3. לאחר ביצוע הפיגוע המתואר בפרט האישום התשעים ותשעה, מחמוד שריתח החליט להוציא לפועל פיגוע התאבדות נוסף באמצעות חגורת הנפץ, אשר אותה ייצר למטרה זו הנאשם.

4. לצורך קידום תכניתו הנ"ל, מחמוד שריתח גייס את ראפת מוקדי לביצוע פיגוע ההתאבדות המתוכנן.

5. מחמוד שריתח נפגש גם עם אשרף מוניר זעייר, המכונה "באו שריף", והורה לאחרון לאתר מקום מתאים לביצוע פיגוע התאבדות המתוכנן. לאחר מספר ימים, "אבו שריף" דיווח כי איתר שני מקומות בתל-אביב המתאימים לביצוע פיגוע ההתאבדות המתוכנן.

6. ביום 11.10.02 "אבו שריף" הביא את ראפת מוקדי מכפר עראבה לדירת המסתור בא-ראם. מחמוד שריתח הסביר לראפת מוקדי כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריתח הלביש על גופו של ראפת מוקדי את חגורת הנפץ, אשר אותה ייצר הנאשם.

7. "אבו שריף" הסיע את ראפת מוקדי לתל-אביב על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן.

8. בסמוך לשעה 20:15, ביום 11.10.02, "אבו שריף" הוריד את ראפת מוקדי בטיילת החוף בתל-אביב והנחה את האחרון לפוצץ את חגורת הנפץ, שהוא נשא על גופו, במסעדה שיש בה אנשים רבים.

9. ראפת מוקדי ניסה להיכנס למסעדה "יוטבתה" הנמצאת ברחוב הרברט סמואל (טיילת תל-אביב), אך המאבטח שהיה במקום הבחין בו, חשד כי מדובר במחבל מתאבד ומנע את

כניסתו פנימה. ראפת מוקדי ניסה להימלט מהמקום, אך נתפס לאחר מרדף ובסיוע של מאבטחים נוספים שהגיעו למקום.

10. במעשיו המתוארים לעיל, הנאשם הנ״ל ניסה לגרום בכוונה למותם של אנשים רבים ככל האפשר.

__פרט מאה ושמונה:__

__מהות העבירה:__ אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

__פרטי העבירה:__ הנאשם הנ״ל, באיזור, בחודש פברואר 2003 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, העביר אימון צבאי לאדם, תושב שכם, אשר נשלח אליו על-ידי אברהים ג׳מיל ע/עיאני חאמד, המכונה ״צלאח 1״ או ״השיח׳״, ראש ״גדודי עז א-דין אל קסאם״ באיזור רמאללה.
במהלך האימון האמור הנאשם לימד את האדם הנ״ל לייצר מטעני חבלה, מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.
במהלך האימון הצבאי הנ״ל, הנאשם והאדם הנ״ל היו רעולי פנים.

__פרט מאה ותשעה:__

__מהות העבירה:__ ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

__פרטי העבירה:__ הנאשם הנ״ל, באיזור, בתחילת שנת 2003 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, העביר לידי אברהים ג׳מיל ע/עיאני חאמד, המכונה ״צלאח 1״ או ״השיח׳״, ראש ״גדודי עז א-דין אל קסאם״, הזרוע הצבאית של ארגון החמאס, באיזור רמאללה, דיסקטים למחשב ועליהם הוראות לייצור חומרי הנפץ ומטעני החבלה.
אברהים חאמד ביקש מהנאשם לקבל את הדיסקטים הנ״ל לצורך העברתם לפעילי הארגון ג׳יהאד אסלאמי פלסטיני, אשר ביקשו ללמוד לייצר חומרי נפץ ומטעני חבלה.

<u>עדי התביעה:</u>

1. רס"ר יצחק יעקובוף, מ.א. 1008358, לח"ק יהודה. [גובה אמרות הנאשם מיום 12.03.03, 13.03.03, 30.03.03, 15.05.03 ומיום 22.05.03 ומגיש תמונות שהוצגו בפני הנאשם ביום 30.03.03 + ציור בכתב-ידו של הנאשם]
2. רס"ר משה לוי, מ.א. 953117, לח"ק יהודה. [גובה אמרת הנאשם מיום 12.05.03]
3. פרוטוקול דיון הארכת המעצר של הנאשם מיום 12.05.03.
4. אשרף מוניר זעייר, ת.ז. 035660679. (עצור)
5. ראפת רשיד עבדאללה מוקדי, ת.ז. 907945026. (עצור)
6. מחמוד חמאד מחמוד שריתח, ת.ז. 900718750. (עצור) (ת.ת. 976/02)
7. מחמד טאהר מחמוד ברגותי, ת.ז. 859121287. (עצור) (ת.ת. 241/03)
8. אכרם צאלח אחמד א-חסין (ברגותי), ת.ז. 988965372. (עצור) (ת.ת. 210/03)
9. וסאם סעיד מוסא עבאסי, ת.ז. 033714403. (אסיר)
10. ואאל מחמוד מחמד-עלי קאסם, ת.ז. 028192755. (אסיר)
11. מחמד אסחאק עודה, ת.ז. 026291302. (אסיר)
12. עלאא א-דין מחמוד עבאסי, ת.ז. 029194818. (אסיר)
13. וליד ע/עזיז ע/האדי אנג'אס, ת.ז. 906448105. (עצור) (ת.ת. 889/02)
14. מחמד חסן אחמד ערמאן, ת.ז. 901056259. (עצור) (ת.ת. 888/02)
15. מחמד ואאל מחמד דע'לאס, 905167375. (אסיר) (ת.ת. 846/01)
16. אחלאם עארף אחמד תמימי, דרכון ירדני G052933. (עצורה) (ת.ת. 815/01)
17. בלאל יעקוב אחמד (עת'מאן) ברגותי, ת.ז. 902826262. (אסיר) (ת.ת. 344/02)
18. אחמד טאלב מוצטפא ברגותי, ת.ז. 994466860. (עצור) (ת.ת. 444/02)
19. מוראד חליל ע/חאק עמירה, ת.ז. 980743066. (עצור) (ת.ת. 946/02)

<u>רשימת העדים הטכניים מתיקי הפ.א. הבאים תימסר על-ידי התביעה, במידת הצורך, במהלך המשפט:</u>

1. 6554/01 צ יון
2. 6891/01 מ ת"מ י-ם
3. 10283/01 ציון
4. 1512/02 מוריה
5. 5601/02 ראש לי"צ
6. 2881/02 גלילות
7. 3975/02 לוד
8. 9913/02 ר חובות
9. 1197/02 שלם
10. 9638/02 ראשל"צ
11. 19284/02 ירקון
12. 21011/02 ירקון

מיכאל קוטליק, סרן
תובע צבאי

תאריך: 29.05.2003
סימוכין: 380-03