
PLAINTIFF'S EXHIBIT 452

KAS/ 236B

| Israel | Defense | Forces |
|---|---|---|

In the Military Court  
in Beit El  
Before a panel

Court Case: *3380*/03  
Prosecution Case: 380/03  
Detailed Incident Case: 6891/01 Jerusalem Special Duties Department  
6554/01 Zion  
10283/01 Zion  
1512/02 Moria  
9638/02 Rishon le Zion  
5601/02 Rishon le Zion  
2881/02 Glilot  
3975/02 Lod  
9913/02 Rehovot  
1197/02 Shalem  
19284/02 Yarkon  
21011/02 Yarkon  
1425/03 Binyamin

**In the trial between the Military Prosecutor – The Prosecutor**

- v. -

Abdullah Ghaleb Abdullah Barghouti (Jamal) (known as "Kamal", "the Engineer")  
Identity No. (fictitious): 30300028 (Jordanian passport E-891198), born October 15, 1972, a resident of Beit Rima  
Detained since March 5, 2003

- **The Defendant** -

# Indictment

**The above mentioned Defendant is hereby accused of committing the following offenses:**

**First count:**

**Nature of the offense:** Attempt to manufacture an explosive device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 29

**Details of the offense:** The above mentioned Defendant, in the Area, in May 2001 or thereabouts, manufactured a firearm, ammunition, a bomb, a hand grenade, an explosive or incendiary object, without possessing a permit certificate having been issued to him by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the above mentioned time, [in] Beit Rima or thereabouts, met ▮▮▮▮▮ and asked the latter to introduce military operatives to him. ▮▮▮▮▮ asked the Defendant to come to his home. After the Defendant came to the home of ▮▮▮▮▮, the latter provided the Defendant with an explosive device.

The Defendant took the device with him and in the Defendant's supermarket in Beit Rima, dismantled the explosive device. The Defendant attempted to ignite the explosives that he had extracted from the explosive device and learned that they were good explosives. The Defendant made an activation mechanism for the above mentioned explosive device using an alarm clock but was unable to activate the above mentioned explosive device using the above mentioned activation mechanism.

Prosecution Case 380/03

1

[Stamp] P 7: 29 [continued]

**Second count:**

**Nature of the offense:** Membership in an unlawful association, an offense pursuant to Regulation 85 (1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from May 2001 until the day of his arrest, was a member or acted as a member of an unlawful association, as follows:

The above mentioned Defendant, during the period set forth, was a member of the Az-Adin Alqassam Brigades, the military arm of the Hamas Organization, which is an unlawful association.

The Defendant, within the framework of his activity in the military arm of Hamas, was responsible for manufacturing explosive devices and training other individuals in the manufacture of explosive devices. In view of his "success" in the said function, the Defendant acquired the alias "the Engineer".

In May 2001, in Beit Rima or thereabouts, the Defendant turned to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, a military operative in Hamas and asked the latter to recruit the Defendant into the ranks of the military arm of the organization. The Defendant informed ▇▇▇▇▇▇ that he could manufacture explosive devices for Hamas. ▇▇▇▇▇▇ had the Defendant meet ▇▇▇▇▇▇ in Nablus; he was a senior military operative of Hamas, who recruited the Defendant into the Az-Adin Alqassam Brigades.

In late 2001, in Ramallah or thereabouts, the Defendant met ▇▇▇▇▇▇▇▇▇▇▇▇, known as Salah 1 or the ▇▇▇▇, the head of the Az-Adin Alqassam Brigades in the Ramallah area. The Defendant agreed to ▇▇▇▇▇▇ s proposal to act under the command of the latter and to manufacture explosive devices for the purpose of carrying out attacks against the Israeli targets. ▇▇▇▇▇▇ gave the Defendant the nom de guerre ▇▇▇▇. Later, the Defendant did act as had been agreed between him and ▇▇▇▇▇▇.

During the Defendant's activity under the command of ▇▇▇▇▇▇ the Defendant was in contact with the above mentioned individual through dispatches that were conveyed by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ known as Salah 2.

In exchange for his activity in Hamas, the Defendant received financial support from ▇▇▇▇▇▇, which was transferred to the Defendant by Salah 2. In total, the Defendant received the sum of **117,000 U.S. dollars** from Ibrahim Hamad.

In addition, the Defendant received immediate financial support in the total of 500 U.S. dollars from ▇▇▇▇▇▇, the head of the Tanzim of the Fatah.

[Stamp] P 7: 30

**Third count:**

**Nature of the offense:** Military training without possessing a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, during the months of May-June 2001 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant met ▇▇▇▇▇▇▇, during the period set forth, in Nablus or thereabouts, on three different occasions; he was a senior military operative of Hamas.

During the above mentioned meetings, ▇▇▇▇▇▇▇ taught the Defendant how to make the Um Al Abed (TATP) explosive, explosive devices, the activation mechanisms for the explosive devices (including wireless mechanisms), hand grenades and explosive belts.

▇▇▇▇▇▇▇ taught the Defendant how to camouflage the explosive devices as stones and as beverage cans.

▇▇▇▇▇▇▇ taught the Defendant how to make poison from potatoes, which are inserted into the explosive device to turn them into chemical charges.

At the end of each of these training sessions, the Defendant received a sheet from ▇▇▇▇ ▇▇▇▇, which listed instructions for making explosive devices that the Defendant learned to manufacture.

Prosecution Case 380/03

2

[Stamp] P 7: 30 [continued]

**Fourth count:**

**Nature of the offense:** Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968 and Section 67A (D) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The aforementioned Defendant, in the Area, in December 2000 or thereabouts, conspired with another person to coerce another person by force or threats or tempt him by trickery to go from the place at he was, for the purpose of blackmail or threat, as follows:

The above mentioned Defendant, at the time set forth, conspired with ▮▮▮▮▮▮▮, the Defendant's commander in Hamas, to participate in the abduction of Israel Defense Forces soldiers. The Defendant was ordered to prepare an apartment in which Israel Defense Forces soldiers would be held after their abduction by Hamas activists.

Within the preparations for the abduction, the Defendant prepared a room in his home in Beit Rima for holding abducted Israel Defense Forces soldiers.

**Fifth count:**

**Nature of the offense:** Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, traded in or otherwise dealt with war materiel, without possessing a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, received 15 kilograms of Um Al Abed (TATP) explosives and a 9-mm pistol with a magazine and 14 cartridges from ▮▮▮▮▮▮▮, a senior military operative in the Hamas organization. The Defendant transferred the explosives and the pistol to Beit Rima and hid them there.

About a week later, ▮▮▮▮▮▮▮ transferred to the Defendant 20 liters of hydrogen peroxide, which is used for making Um Al Abed (TATP) explosives. The Defendant hid this hydrogen peroxide in Beit Rima as well.

[Stamp] P 7: 31

**Sixth count:**

**Nature of the offense:** Manufacturing an explosive device, an offense pursuant to Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, manufactured a firearm, ammunition, bomb, hand grenade, explosive or incendiary device, without possessing a permit certificate having been issued to him by or on behalf of a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, in a storeroom that he had rented, set up a laboratory for manufacturing explosives and explosive devices.

The Defendant transferred to the above mentioned laboratory 15 kilograms of explosives of Um Al Abed (TATP), 20 liters of hydrogen peroxide and a number of wireless mechanisms for detonation of the explosive devices.

In the above mentioned bomb laboratory, he made two explosive devices that were camouflaged as stones.

The Defendant transferred the first explosive device to ███████████, a senior military activist in Hamas, through a dead drop point in Salfit. Along with the above mentioned explosive device, the Defendant forwarded a sheet with directions for the operation of the above mentioned explosive device.

The Defendant transferred the second explosive device personally to ███████████, a senior military operative in the Hamas Organization.

Prosecution Case 380/03

3

[Stamp] P 7: 31 [continued]

**Seventh count:**

**Nature of the offense:** Giving shelter, an offense pursuant to Section 57 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, assisted or gave shelter to some person who had committed an offense against the security legislation or had been or was involved in some activity which was intended to harm the public welfare, the welfare of the Israel Defense Forces troops and soldiers and the maintenance of public order or concerning whom there are reasonable grounds to suspect that he did so, whether by giving information, shelter, food, drink, money, clothing, weapons, ammunition, supplies, animal fodder, means of transport, petroleum or fuel of any type and kind whatsoever, or in any other way, as follows:

The above mentioned Defendant, at the time set forth, in his home in Beit Rima or thereabouts, during one night, hid ▬▬▬▬, who was wanted by the Israeli security forces. The Defendant talked to ▬▬▬▬ and it turned out that the latter was the one who had obtained the explosive device that had been camouflaged as a stone described in the sixth count of the indictment.

In the morning, the Defendant transported the above mentioned wanted person to Salfit.

**Eighth count:**

Trading in war materiel, an offense pursuant to Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, at the time set forth in the previous count of the indictment or thereabouts, traded in or otherwise dealt with war materiel, without possessing a permit signed by or on behalf of the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, delivered to ▬▬▬▬, set forth in the previous count of the indictment, the 14 pistol along with 150 cartridges. In exchange, the Defendant received a 7 pistol from the above mentioned person.

[Stamp] P 7: 32

**Ninth count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in June 2001 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, met ▇▇▇▇▇▇▇, a senior military operative in the Hamas Organization, which is an unlawful association. ▇▇▇▇▇▇▇ delivered the amount of 100 U.S. dollars to the Defendant. According to ▇▇▇▇▇▇▇ request, the Defendant transferred the above mentioned money to the wanted person described in the seventh count of the indictment.


**Tenth count: (Detailed Incident 6554/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on July 30, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1. In early July 2001, in Nablus or thereabouts, the Defendant met ▇▇▇▇▇▇▇, a senior military operative of the Hamas Organization. ▇▇▇▇▇▇▇ informed the Defendant that he had a person who was prepared to carry out a suicide attack inside Israel.

2. At the request of ▇▇▇▇▇▇▇, the Defendant contacted ▇▇▇▇▇▇▇, a senior military operative in the Hamas organization, and asked the latter to find a person who would be able to bring a suicide terrorist into

Prosecution Case 380/03

4

[Stamp] P 7: 32 [continued]

the State of Israel in order for the latter to carry out a suicide attack there with the intent of causing the deaths of as many people as possible.

3. ▉▉▉▉▉▉▉ recruited ▉▉▉▉▉▉▉▉▉▉▉ for the purpose set forth. ▉▉▉▉▉▉▉ recruited ▉▉▉▉▉▉▉▉▉▉▉ for the said purpose; he was a student at Bir Zeit University, [and] an operative in the Az-Adin Alqassam Brigades, the military arm of the Hamas.

4. After the Defendant reported the recruitment of the above mentioned people to ▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉ asked that first the Defendant should deliver a small explosive device to the above mentioned people, in order for them to first try to carry out an attack in Israel using the small explosive device before they could be trusted, and have the suicide terrorist delivered to them.

5. On the following day, in Ramallah or thereabouts, the Defendant received a small explosive device, which had been sent to him by ▉▉▉▉▉▉▉ from Nablus via courier.

6. On July 27, 2001, ▉▉▉▉▉▉▉ paid a visit to Jerusalem, with which she was very familiar, along with her nephew, ▉▉▉▉▉▉▉▉▉▉▉, in order to identify a location in which the explosive device would be placed. During the visit, ▉▉▉▉▉▉▉ visited the Co Op supermarket in the Hamashbir Lazarchan building in King George Street. On the following day, ▉▉▉▉▉▉▉ met ▉▉▉▉▉▉▉ at Bir Zeit University and the latter informed him that she had found a location in Jerusalem to carry out a bombing attack using an explosive device.

7. The above mentioned report was forwarded to the Defendant through ▉▉▉▉▉▉▉. In addition, ▉▉▉▉▉▉▉ recommended to the Defendant that the explosive device be hidden inside a can of juice.

8. Following the above mentioned, the Defendant put the above mentioned explosive device into a can of beer and attached an activation mechanism. The Defendant delivered the above mentioned explosive device to ▉▉▉▉▉▉▉ in order for the latter to deliver it to the individuals he had recruited, in order for them to use it to carry out an attack with the aim of causing the deaths of as many people as possible.

9. ▉▉▉▉▉▉▉ delivered the above mentioned explosive device to ▉▉▉▉▉▉▉ and the latter, on July 30, 2001, delivered it to ▉▉▉▉▉▉▉

10. On that day, at 11:45 a.m., ▮▮▮▮▮▮▮▮ arrived at the Co Op supermarket in Jerusalem described above, while carrying in her bag the explosive device that she had received from the Defendant.

11. ▮▮▮▮▮▮▮▮ put the can of beer in which the above mentioned explosive device was hidden on a shelf of cans, at the front of the shelf in the above mentioned supermarket, so that once the explosive device would detonate, it would cause the deaths of the people nearby. ▮▮▮▮▮▮▮▮ activated the above mentioned explosive device and left the above mentioned store.

12. At about 1:10 p.m. on that day, the explosive device described above detonated in the abovementioned supermarket. As a result of the detonation of the explosive device, a great amount of damage was caused in the above mentioned store, and only by a miracle was nobody hurt.

**Eleventh count: (Detailed Incident 6554/01 Zion)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 30, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the previous count of the indictment, by his acts described in the previous count of the indictment, caused heavy damage to the Co Op supermarket located in the Hamashbir Lazarchan building in King George Street, in which the explosive device was detonated as described in the previous count of the indictment.

Prosecution Case 380/03

5

[Stamp] P 7: 33 [continued]

**Twelfth count:** (Detailed Incident 6891/01 Jerusalem Special Duties Unit)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

1. After carrying out the attack in the supermarket in Jerusalem, which is described in the tenth count of the indictment, the Defendant made contact with ██████████ a senior military operative in the Hamas Organization, and according to the plan set forth in the tenth count of the indictment, asked ██████████ to forward a large explosive device and the suicide terrorist to the Defendant for the purpose of carrying out the planned suicide attack.

2. In early August 2001, in Ramallah or thereabouts, the Defendant received a large explosive device that consisted of two shampoo bottles filled with explosives, from ██████████ via courier.

3. At the request of ██████████, the Defendant inserted the above mentioned explosive device into a guitar that ██████████ brought. In addition to the above mentioned explosive device, the Defendant put two plastic bags filled with explosives inside the above mentioned guitar. In addition, the Defendant affixed screws inside the guitar using glue. The Defendant sealed the opening in the guitar using glass so that its contents could not be seen. The Defendant connected an activation mechanism to the above mentioned explosive device.

4. The Defendant put the above mentioned guitar inside a black guitar case. The Defendant threaded a wire out of the case, with the activation button for the explosive device, so that the explosive device could be activated without opening the guitar case.

5. The Defendant reported the preparation of the explosive device to ██████████ and asked the latter to send the suicide terrorist to him.

6. A few days later, the suicide terrorist ██████████ (hereinafter: the "Suicide Terrorist"), who was dispatched by ██████████, came to Ramallah. ██████████ met the Suicide Terrorist and put him up overnight in Ramallah with ██████████ ██████████

[Stamp] P 7: 34

7. The Defendant transferred the above mentioned booby-trapped guitar to ▮ in order for the latter to deliver it to the Suicide Terrorist, in order for the latter to use it to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

8. On August 8, 2001, at the instruction of ▮ (as set forth in the tenth count of the indictment), ▮ (set forth in the tenth count of the indictment) traveled to Jerusalem in order to find a location at which to carry out the bombing attack that the Defendant had planned with his above mentioned colleagues and for whose execution the above mentioned ▮ and ▮ were recruited. ▮ noticed that there was a large presence of security forces in Jerusalem, but nobody inspected her because she was wearing a short vest in an attempt to look Jewish. ▮ reached the conclusion that one could leave Ramallah and carry out an attack in central Jerusalem.

9. On that day, ▮ instructed the Suicide Terrorist on the activation of the above mentioned explosive device that the Defendant had made.

10. On August 9, 2011, ▮ introduced ▮ to the Suicide Terrorist, who was carrying the booby-trapped guitar. The Suicide Terrorist had gotten a haircut before carrying out the planned attack and wore clothes that were supposed to make him look like a Jew. Thereafter, ▮ and the Suicide Terrorist departed to carry out the planned attack.

11. After ▮ and the Suicide Terrorist entered Jerusalem, ▮ instructed the Suicide Terrorist to carry the guitar inside the black case that was described above on his back in order not

Prosecution Case 380/03

[Stamp] P 7: 34 [continued]

        to arouse the suspicion of the Israeli security forces. ▓▓▓▓▓▓▓▓ also took off the jacket she was wearing and remained in a short vest.

12. ▓▓▓▓▓▓▓▓ led the Suicide Terrorist to the junction of Jaffa and King George Streets in Jerusalem, which is a central junction and a crowded place. ▓▓▓▓▓▓▓▓ briefed the Suicide Terrorist on activation of the explosive device in the center of the said junction while many people were crossing and thereby to attack as many civilians and vehicular travelers waiting at the traffic light as possible, causing their deaths. ▓▓▓▓▓▓▓▓ told the Suicide Terrorist that he was also allowed to choose another place for carrying out the planned attack, but that it had to be in King George Street, which was full of people.

13. ▓▓▓▓▓▓▓▓ left the Suicide Terrorist in the place set forth and walked towards the Nablus Gate of the old city in order to return to Ramallah.

14. At about 1:55 p.m., the Suicide Terrorist, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ entered the Sbarro restaurant at the corner of Jaffa and King George Streets, which was then crowded. There the Suicide Terrorist detonated the explosive device that the Defendant had prepared as described above, with the intent of causing the deaths of as many people as possible.

15. As a result of the explosion of the Suicide Terrorist with the said explosive device, fifteen people were killed, as will be described in the next counts of the indictment.

16. As a result of the explosion of the Suicide Terrorist with the said explosive device, many other people sustained injuries, as will be described in the next counts of the indictment.

17. As a result of the explosion of the Suicide Terrorist with the said explosive device, extensive damage was caused to property in the Sbarro restaurant and to automobiles and buildings nearby.

18. By his acts described above, the Defendant caused the intentional death of **the late Frieda Mendelsohn**, aged 62 at the time of her death, who was killed as a result of the explosion of the explosive device as set forth above.

**Thirteenth count:** (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

                                                                                              [Stamp] P 7: 35

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Lily Shimashvili-Mesengiser**, aged 33 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

7

[Stamp] P 7: 35 [continued]

**Fourteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tamar Shimashvili-Mesengiser**, aged 8 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Fifteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the twelfth count of the indictment, caused the intentional death of **the late Tehila Maoz**, aged 20 at the time of her death, who was killed as a result of the explosion of the Suicide Terrorist with the explosive device at the Sbarro restaurant at the corner of Jaffa and King George Streets in Jerusalem, as described in the twelfth count of the indictment.

**Sixteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 7: 36