**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, caused the intentional death of **the late Jonathan Jesner**, aged 19 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.


**One hundred fifth count**: (Detailed Incident 19284/02 Yarkon)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, attempted to cause the intentional death of all of the individuals who were in the vicinity of the suicide terrorist, who exploded with the explosive device on the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, as described in the ninety-ninth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, **approximately 84 people** who were aboard and near the above mentioned bus at the time of the explosion **were injured**.

Prosecution case 380/03                    40

[Stamp] P7: 65 [continued]

**One hundred sixth count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense:** Malicious damage to property, an offense pursuant to Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on September 19, 2002, or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, by his acts described in the ninety-ninth count of the indictment, maliciously and unlawfully caused heavy damage to the bus, license no. 9105201, Dan line no. 4, on Allenby Street in Tel Aviv, and caused damage to additional vehicles and to stores and to businesses that were near the site of the attack described in the ninety-ninth count of the indictment, which were damaged as a result of the explosion of the explosive device that the Defendant had manufactured.


**One hundred seventh count**: **(Detailed incident 21011/02 Yarkon)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, both in the Area and elsewhere, on October 11, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early September 2002, in Ramallah or thereabouts, manufactured two explosive belts for the purpose of carrying out suicide attacks with the intent of causing the deaths of as many people as possible, as described in the ninety-ninth count of the indictment.

2.  The Defendant transferred the two explosive belts to ███████████████████ ███████ known as Salah 2, a military operative in Hamas, who had them transferred to ███████████████████████ as described in the ninety-ninth count of the indictment.

[Stamp] P7: 66

3.  After carrying out the attack described in the ninety-ninth count, ▆▆▆▆▆▆▆▆ decided to carry out an additional suicide attack using the explosive belt that the Defendant had manufactured for that purpose.

4.  For the purpose of advancing his above mentioned plan, ▆▆▆▆▆▆▆▆ recruited ▆▆▆ ▆▆▆ to carry out the planned suicide attack.

5.  ▆▆▆▆▆▆▆▆ also met with ▆▆▆▆▆▆▆▆, known as ▆▆▆▆▆ and instructed the latter to find a suitable site for carrying out the planned suicide attack. After a few days, ▆▆▆▆▆ reported that he had found two places in Tel Aviv that were suitable for carrying out the planned suicide attack.

6.  On October 11, 2002, ▆▆▆▆▆ brought ▆▆▆▆▆▆ from the village of Arabeh to the safe house in A-Ram. ▆▆▆▆▆▆▆▆ explained to ▆▆▆▆▆ how to put on and how to activate the explosive belt. ▆▆▆▆▆▆ attached the explosive belt that the Defendant had manufactured to the body of ▆▆▆▆▆

7.  ▆▆▆▆▆ transported ▆▆▆▆▆▆ to Tel Aviv in order for the latter to carry out the planned suicide attack there.

8.  At about 8:15 p.m., on October 11, 2002, ▆▆▆▆▆ dropped off ▆▆▆▆▆▆ on the beach promenade in Tel Aviv and instructed the latter to detonate the explosive belt, which he was carrying on his person, in a restaurant that was full of people.

9.  ▆▆▆▆▆ attempted to enter the Yotvata restaurant located on Herbert Samuel Street (Tel Aviv promenade), but the security guard at the site noticed him, suspected that he was a suicide terrorist and prevented

[Stamp] P7: 66

his entry. ███████████ tried to flee from the site, but was caught after a pursuit and with the assistance of other security guards who arrived at the site.

10.  By his acts described above, the above mentioned Defendant attempted to cause the deaths of as many people as possible.


**One hundred eighth count:**

**Nature of the offense:** Military training without a permit, an offense pursuant to Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in February 2003 or thereabouts, trained or administered military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, administered military training to a person, a resident of Nablus, who had been sent to him by ███████████ ███████████, known as Salah 1 or ███████ the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area.

During the said training, the Defendant taught the above mentioned person how to manufacture explosive devices, electrical circuits for activating explosive devices and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

During the above mentioned military training, the Defendant and the above mentioned person were masked.


**One hundred ninth count:**

**Nature of the offense:** Performance of a service for an unlawful association, an offense pursuant to Regulation 85 (1) (C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2003 or thereabouts, performed some work or performed some service for an unlawful association, as follows:

[Stamp] P7: 67

The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, conveyed to ███████████████████████ known as Salah 1 or ██████ the head of the Az A-Din Al Qassam Brigades, the military arm of the Hamas Organization in the Ramallah area, computer diskettes containing instructions for manufacturing the explosives and the explosive devices.

███████████████ asked the Defendant to obtain the above mentioned diskettes in order to transfer them to the operatives of the Palestinian Islamic Jihad Organization, who had asked to learn how to manufacture explosives and explosive devices.

Prosecution case 380/03                    42

[Stamp] P7: 67 [continued]

**Witnesses of the Prosecution:**

1. ███████████████████████████████ Judea Investigations Office. [took the statements of the Defendant dated March 12, 2003, March 13, 2003, March 30, 2003, May 15, 2003 and May 22, 2030, and submitted photographs that were shown before the Defendant on March 30, 2003 & a drawing in the handwriting of the Defendant]

2. ████████████████████████ Judea Investigations Office. [took the statement of the Defendant on May 12, 2003]

3. Transcript of the remand hearing of the Defendant dated May 12, 2003.

4. ███████████████, Identity No. ███████ (detainee)

5. ██████████████████, Identity No. ███████ (detainee)

6. ████████████████████, Identity No. ███████ (detainee) (Prosecution Case 976/02)

7. ██████████████████████, Identity No. ███████ (detainee) (Prosecution Case 241/03)

8. ███████████████████████████, Identity No. ███████. (detainee) (Prosecution Case 210/03).

9. ████████████████, Identity No. ███████. (prisoner)

10. ██████████████████, Identity No. ███████ prisoner)

11. ███████████, Identity No. ███████ (prisoner)

12. ███████████████, Identity No. ███████. (prisoner)

13. █████████████████, Identity No. ███████ (detainee) (Prosecution Case 889/02)

14. ████████████████, Identity No. ███████. (detainee) (Prosecution Case 888/02)

15. █████████████████████, (prisoner) (Prosecution Case 846/01)

16. █████████████, Jordanian Passport ███████ (detainee) (Prosecution Case 815/01)

[Stamp] P7: 68

17. ████████████████████ Identity No. ██████ (prisoner) (Prosecution Case 344/04)

18. ███████████████ Identity No. ██████ (detainee) (Prosecution Case 444/02)

19. ███████████████ Identity No. ██████. (detainee) (Prosecution Case 946/02)

<u>The list of technical witnesses from the detailed following incident cases will be delivered to the Prosecution if necessary, during the trial:</u>

1. 6554/01 Zion

2. 6891/01 Jerusalem Special Duties Department

3. 10283/01 Zion

4. 1512/02 Moria

5. 5601/02 Rishon le Zion

6. 2881/02 Glilot

7. 3975/02 Lod

8. 9913/02 Rehovot

9. 1197/02 Shalem

10. 9638/02 Rishon le Zion

11. 19284/02 Yarkon

12. 21011/02 Yarkon

[Signature]
Michael Kotlik,      Captain
Military Prosecutor

Date: May 29, 2003
Reference: 380-03

Prosecution case 380/03                    43

[Stamp] P7: 68 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                Plaintiffs,

    vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.      The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as "Abdullah Barghouti Indictment."

2.      I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.      To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as "Abdullah Barghouti Indictment."

Dated: May 8, 2014

                                              _____
                                              Rina Ne'eman

ss.: New Jersey

On the 8 day of May, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
8 day of May, 2014

Notary Public

SHELLY TESSEIN
Notary Public
State of New Jersey
My Commission Expires Nov. 16, 2017
I.D.# 2427073

קא״ש/236ב

צבא הגנה לישראל

| | | | |
|---|---|---|---|
| בבית המשפט הצבאי | | תיק ביהמ״ש : | 3380/03 |
| בבית אל | | תיק תביעה : | 380/03 |
| בפני הרכב | | תיק פ.א. : | 6891/01 מתי״מ י-ם |
| | | | 6554/01 ציון |
| | | | 10283/01 ציון |
| | | | 1512/02 מוריה |
| | | | 9638/02 ראשל״צ |
| | | | 5601/02 ראשל״צ |
| | | | 2881/02 גלילות |
| | | | 3975/02 לוד |
| | | | 9913/02 רחובות |
| | | | 1197/02 שלם |
| | | | 19284/02 ירקון |
| | | | 21011/02 ירקון |
| | | | 1425/03 בנימין |

**<u>במשפט שבין התובע הצבאי - המאשים</u>**

**- נ ג ד -**

עבדאללה ע׳אלב עבדאללה ברגותי (גימל) (המכונה ״כאמלי״, ״המהנדס״)
ת.ז. (פיקטיבי) 030300028 (דרכון ירדני E-891198), יליד 15.10.72, תושב בית-רימא
עצור מיום 05.03.03

**- ה נ א ש ם -**

# כ ת ב - א י ש ו ם

**<u>הנאשם הנ״ל מואשם בזאת בביצוע העבירות הבאות:</u>**

**<u>פרט ראשון:</u>**

**<u>מהות העבירה:</u>** ניסיון לייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ״ל, באיזור, בחודש מאי 2001 או בסמוך לכך, ייצר כלי יריה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בית רימא או בסמוך לכך, נפגש עם [redacted] [redacted] וביקש מהאחרון כי יכיר לו פעילים צבאיים. [redacted] ביקש כי הנאשם יגיע אליו לביתו. לאחר שהנאשם הגיע לביתו של [redacted], האחרון מסר לידי הנאשם מטען חבלה. הנאשם לקח את המטען עמו ובסופרמרקט של הנאשם בבית רימא פירק את מטען החבלה. הנאשם ניסה להצית את חומר הנפץ שהוציא ממטען החבלה ונכח לדעת כי מדובר בחומר נפץ טוב. הנאשם ייצר מנגנון הפעלה למטען החבלה הנ״ל משעון מעורר, אך לא הצליח להפעיל את המטען הנ״ל באמצעות מנגנון ההפעלה הנ״ל.

P 7: 29

**פרט שני:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מחודש מאי 2001 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר ב"גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, שהוא התאחדות בלתי מותרת.
הנאשם, במסגרת פעילותו בזרוע הצבאית של ארגון החמאס, היה אחראי על ייצור מטעני החבלה ואימון אנשים אחרים בייצור מטעני החבלה. לאור "הצלחתו" בתפקיד האמור הנאשם "זכה" לכינוי "המהנדס".
בחודש מאי 2001, בבית רימא או בסמוך לכך, הנאשם פנה אל [redacted], פעיל צבאי בארגון החמאס, וביקש כי האחרון יצרף את הנאשם לשורות הזרוע הצבאית של הארגון. הנאשם מסר ל[redacted] כי יכול לייצר מטעני חבלה עבור ארגון החמאס.
[redacted] הפגיש את הנאשם בשכם עם [redacted], פעיל צבאי בכיר בארגון החמאס, אשר גייס את הנאשם ל"גדודי עז א-דין אל קסאם".
בסוף שנת 2001, ברמאללה או בסמוך לכך, הנאשם נפגש עם [redacted] המכונה "צלאח 1" או [redacted], ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה. הנאשם הסכים להצעתו של [redacted] לפעול תחת פיקודו של האחרון ולייצר מטעני חבלה לצורך ביצוע פיגועים נגד המטרות הישראליות. [redacted] העניק לנאשם כינוי פח"עי [redacted].
בהמשך, הנאשם פעל כפי שסוכם בינו לבין [redacted].
במהלך פעילותו של הנאשם תחת פיקודו של [redacted], הנאשם עמד בקשר עם הנ"ל באמצעות האשגרים, אשר הועברו על-ידי [redacted], המכונה "צלאח 2".
בתמורה לפעילותו בארגון החמאס, הנאשם קיבל סיוע כספי מ[redacted], אשר הועבר לנאשם על-ידי "צלאח 2". סך הכל, הנאשם קיבל מ[redacted] כספים בסכום של **117,000 דולר ארה"ב**.
כמו כן, הנאשם קיבל סיוע כספי בסך 500 דולר ארה"ב מידי [redacted], ראש "התנזים" של הפת"ח.

**פרט שלישי:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך החודשים מאי - יוני 2001 או בסמוך לכך, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, בשכם או בסמוך לכך, ב-3 הזדמנויות שונות, נפגש עם [redacted], פעיל צבאי בכיר בארגון החמאס.
במהלך המפגשים הנ"ל, [redacted] לימד את הנאשם לייצר חומר נפץ "אום אלעבד" (TATP), מטעני חבלה, מנגנוני ההפעלה למטעני החבלה (כולל מנגנונים אלחוטיים), רימוני-יד וחגורות נפץ.
[redacted] לימד את הנאשם להסוות את מטעני החבלה לאבן ולפחית שתייה.
לימד את הנאשם לייצר רעל מתפוחי אדמה, אשר אותו מכניסים אל מטעני החבלה על מנת להפכם למטעני חבלה כימיים.
בסוף כל אחד מהאימונים הנ"ל, הנאשם קיבל מ[redacted] דף, עליו היו רשומים הוראות לייצור מטעני החבלה, אותם למד הנאשם לייצר.

2 ת.ת. 380/03

P 7: 30

**פרט רביעי:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968 וסעיף 67א(ד) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש דצמבר 2000 או בסמוך לכך, קשר עם אדם אחר לכפות אדם בכוח או באיומים או לפתותו באמצעות תרמית ללכת מן המקום שהוא נמצא בו, וזאת כדי לסחוט או לאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, קשר עם [redacted], מפקדו של הנאשם בארגון החמאס, להשתתף בחטיפת חיילי צה"ל. על הנאשם הוטל להכין דירה, אשר בה יוחזקו חיילי צה"ל לאחר ייחטפו על-ידי פעילי ארגון החמאס.
במסגרת ההכנות לקראת החטיפה, הנאשם הכין חדר בביתו בבית-רימא לצורך החזקתם של חיילי צה"ל החטופים.

**פרט חמישי:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, קיבל מידי [redacted], פעיל צבאי בכיר בארגון החמאס, 15 ק"ג של חומר נפץ מסוג "אום אלעבד" (TATP) ואקדח 9 מ"מ עם מחסנית ו-14 כדורים. הנאשם העביר את חומר הנפץ ואת האקדח לבית רימא והסתירם שם.
לאחר כשבוע, [redacted] העביר אל הנאשם 20 ליטר של מי חמצן, אשר משמשים לייצור חומר הנפץ מסוג "אום אלעבד" (TATP). גם את מי החמצן הנ"ל, הנאשם הסתיר בבית רימא.

**פרט שישי:**

**מהות העבירה:** ייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ייצר כלי יריה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בבית רימא או בסמוך לכך, במחסן אשר אותו הוא שכר, הקים מעבדה לייצור חומרי נפץ ומטעני חבלה.
הנאשם העביר למעבדה הנ"ל 15 ק"ג של חומר הנפץ מסוג "אום אלעבד" (TATP), 20 ליטר של מי חמצן וכן מספר מנגנונים אלחוטיים להפעלת מטעני החבלה.
במעבדת החבלה הנ"ל הנאשם ייצר שני מטעני חבלה המוסווים לאבנים.
את מטען החבלה הראשון הנאשם העביר לידי [redacted], פעיל צבאי בכיר בארגון החמאס, דרך נקודת משלש בסלפית. ביחד עם מטען החבלה הנ"ל, הנאשם העביר דף עם ההנחיות להפעלת מטען החבלה הנ"ל.
את מטען החבלה השני הנאשם העביר באופן אישי ל[redacted], פעיל צבאי בכיר בארגון החמאס.

P 7: 31

**פרט שביעי:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעבר עבירה על תחיקת הביטחון או עסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו:
הנאשם הנ"ל, במועד האמור, בביתו בבית רימא או בסמוך לכך, במשך לילה אחד, הסתיר את [redacted], אשר היה מבוקש לכוחות הביטחון הישראליים. הנאשם שוחח עם [redacted] והסתבר כי האחרון היה זה, אשר קיבל את מטען התבלה המוסווה לאבן, המתואר בפרט האישום השישי.
בבוקר, הנאשם הסיע את המבוקש הנ"ל לסלפית.

**פרט שמיני:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במועד האמור בפרט האישום הקודם או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, בבית רימא או בסמוך לכך, מסר ל[redacted], האמור בפרט האישום הקודם, את אקדח 14 יחד עם 150 כדורים. בתמורה, הנאשם קיבל מהאדם הנ"ל אקדח 7.

**פרט תשיעי:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.
**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, נפגש עם [redacted], פעיל צבאי בכרי בארגון החמאס, שהוא התאחדות בלתי מותרת. איימן חלאווה מסר לנאשם סכום של 100 דולר ארה"ב. על-פי בקשתו של [redacted], הנאשם העביר את הכסף הנ"ל לידי המבוקש המתואר בפרט האישום השביעי.

**פרט עשירי:** (פ.א. 6554/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.07.01 או במועד הסמוך לכך, ניסה בכוונה לגרום למותו של אחר, דהיינו:

1. בתחילת חודש יולי 2001, בשכם או בסמוך לכך, הנאשם נפגש עם [redacted], פעיל צבאי בכיר בארגון החמאס. [redacted] מסר לנאשם כי יש לו אדם המוכן לבצע פיגוע התאבדות בתוך ישראל.

2. על-פי בקשתו של איימן חלאווה, הנאשם פנה אל [redacted], פעיל צבאי בכיר בארגון החמאס, וביקש מהאחרון למצוא אדם אשר יוכל להכניס מחבל מתאבד אל תוך

P 7: 32

מדינת ישראל על מנת שהאחרון יבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. [redacted] גייס למטרה האמורה את [redacted], [redacted] גייס למטרה האמורה את [redacted], סטודנטית באוניברסיטת ביר זית, פעילה ב"גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס.

4. לאחר שהנאשם דיווח ל[redacted] על גיוס האנשים הנ"ל, [redacted] ביקש כי קודם ימסור הנאשם לידי האנשים הנ"ל מטען חבלה קטן, וזאת על שינסו תחילה לבצע פיגוע בישראל באמצעות מטען חבלה קטן, לפני שניתן יהיה לסמוך עליהם ולמסור להם את המחבל המתאבד.

5. יום למחרת, ברמאללה או בסמוך לכך, הנאשם קיבל מטען חבלה קטן, אשר נשלח אליו על-ידי [redacted] משכם באמצעות שליח.

6. ביום 27.07.01, [redacted] ערכה סיור בירושלים, אשר אותה הכירה היטב, ביחד עם אחיינה, [redacted], על מנת לאתר מקום שבו יונח מטען החבלה. במהלך הסיור ביקרה [redacted] בחנות הסופרמרקט "קו אופי" הנמצא בבניין "המשביר לצרכן" ברחוב קינג ג'ורג'. למחרת היום, [redacted] נפגש באוניברסיטת ביר זית עם [redacted] והאחרונה הודיעה לו כי איתרה מקום בירושלים לביצוע פיגוע תופת באמצעות מטען חבלה.

7. הדיווח הנ"ל הועבר באמצעות [redacted] אל הנאשם. כמו כן, [redacted] המליץ לנאשם כי מטען החבלה יוסתר בתוך פחית מיץ.

8. בעקבות האמור, הנאשם הכניס את מטען החבלה הנ"ל אל תוך פחית בירה והרכיב מנגנון הפעלה. הנאשם מסר את מטען החבלה הנ"ל לידי [redacted] על מנת שהאחרון ימסור אותו לידי האנשים אותם גייס, וזאת על מנת שיבצעו באמצעותו פיגוע בכוונה לגרום למותם של אנשים רבים ככל הניתן.

9. [redacted] מסר את מטען החבלה הנ"ל למחמד דגלס והאחרון, ביום 30.07.01, מסר אותו לידי [redacted].

10. באותו היום, בסביבות השעה 11:45, [redacted] הגיעה לחנות הסופרמרקט "קו אופי" בירושלים, המתוארת לעיל, כשבתיקה נמצא מטען החבלה אותו קיבלה מה נאשם.

11. [redacted] הניחה את פחית הבירה שבתוכה הוסתר מטען החבלה הנ"ל במדף של פחיות, בקדמת המדף בחנות הסופרמרקט הנ"ל, וזאת על מנת שכשמטען החבלה יתפוצץ הוא יגרום למותם של האנשים שיהיו בקרבת המקום. [redacted] הפעילה את מטען החבלה האמור ועזבה את החנות הנ"ל.

12. בסביבות השעה 13:10, באותו היום, מטען החבלה המתואר לעיל התפוצץ בחנות הסופרמרקט האמורה. כתוצאה מפיצוץ מטען החבלה נגרם רב לרכוש בחנות הנ"ל, ורק בנס איש לא נפגע.

<u>פרט אחד-עשר:</u> (פ.א. 6554/01 ציון)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.07.01 או בסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשיו המתוארים בפרט האישום הקודם, גרם נזק כבד לחנות הסופרמרקט "קו אופי" תנמצא בבניין "המשביר לצרכן" ברחוב קינג ג'ורג', אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום הקודם.

**פרט שנים-עשר:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. לאחר ביצוע הפיגוע בסופרמרקט בירושלים, המתואר בפרט האישום העשירי, הנאשם יצר קשר עם [redacted], פעיל צבאי בכיר בארגון החמאס, ובהתאם לתכנון האמור בפרט האישום העשירי, ביקש כי [redacted] יעביר לנאשם מטען חבלה גדול ואת המחבל המתאבד לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.

2. בתחילת חודש אוגוסט 2001, ברמאללה או בסמוך לכך, הנאשם קיבל מ[redacted], באמצעות שליח, מטען חבלה גדול, אשר היה מורכב משני בקבוקי שמפו מלאים בחומר נפץ.

3. על-פי בקשתו של [redacted], הנאשם הכניס את מטען החבלה הנ"ל אל תוך גיטרה, אותה הביא [redacted] בנוסף למטען החבלה הנ"ל, הנאשם הכניס אל תוך הגיטרה הנ"ל שתי שקיות ניילון מלאות בחומר נפץ. כמו כן, הנאשם הדביק בתוך הגיטרה ברגים באמצעות דבק. את הפתח של הגיטרה הנאשם סגר באמצעות זכוכית כך שלא ניתן יהיה לראות מה יש בתוכה. אל מטען החבלה הנ"ל, הנאשם חיבר מנגנון הפעלה.

4. הנאשם הכניס את הגיטרה הנ"ל אל תוך נרתיק גיטרה שחור. הנאשם הוציא חוט עם כפתור ההפעלה של מטען החבלה אל מחוץ לנרתיק, כך שניתן יהיה להפעיל את מטען החבלה בלי לפתוח את הנרתיק של הגיטרה.

5. הנאשם דיווח אודות הכנת מטען החבלה אל [redacted] וביקש מהאחרון כי ישלח אליו את המחבל המתאבד.

6. לאחר מספר ימים המחבל המתאבד [redacted] (להלן: המחבל המתאבד), אשר נשלח על-ידי [redacted] הגיע לרמאללה. [redacted] פגש את המחבל המתאבד וביחד עם [redacted] הלין אותו ברמאללה.

7. הנאשם העביר את הגיטרה הממולכדת הנ"ל לידי [redacted] על מנת שהאחרון ימסור אותה לידי המחבל המתאבד וזאת על מנת שהאחרון יבצע באמצעותה פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל הניתן.

8. ביום 08.08.2001, על-פי הוראתו של [redacted] (האמור בפרט האישום העשירי), נסעה [redacted] (האמורה בפרט האישום העשירי) לירושלים על מנת לאתר מקום שבו יבוצע פיגוע התופת, אשר אותו תכנן הנאשם ביחד עם חבריו הנ"ל ואשר לצורך הוצאתו לפועל גויסו [redacted] ו[redacted] הנ"ל. [redacted] הבחינה כי אמנם ישנה נוכחות גדולה של כוחות הביטחון בירושלים, אך אף אחד לא בדק אותה כי היא לבשה גופיה קצרה מתוך ניסיון להיראות כיהודייה. [redacted] הגיעה למסקנה כי ניתן לצאת מרמאללה ולבצע פיגוע במרכז ירושלים.

9. באותו היום, [redacted] הדריך את המחבל המתאבד איך מפעילים את מטען החבלה הנ"ל, אשר יוצר על-ידי הנאשם.

10. ביום 09.08.2001, [redacted] הפגיש את [redacted] עם המחבל המתאבד, אשר נשא את הגיטרה הממולכדת. המחבל המתאבד הסתפר לקראת ביצוע הפיגוע המתוכנן ולבש בגדים, אשר היו אמורים לגרום לו להיראות כיהודי. לאחר מכן, [redacted] והמחבל המתאבד יצאו לביצוע הפיגוע המתוכנן.

11. לאחר ש[redacted] והמחבל המתאבד נכנסו לירושלים, [redacted] הורתה למחבל המתאבד לשאת את הגיטרה שהיתה בתוך נרתיק שחור, המתואר לעיל, על הגב על מנת לא

לעורר את חשדם של כוחות הביטחון הישראליים. [redacted] אף הורידה את הג'קט שלבשה ונותרה בגו פיה קצרה.

12. [redacted] הובילה את המחבל המתאבד לצומת הרחובות יפו וקינג ג'ורג' בירושלים, שהוא צומת מרכזי והומה אדם. [redacted] תדרכה את המחבל המתאבד להפעיל את מטען החבלה במרכז הצומת האמורה כשאנשים רבים חוצים אותן וכך לפגוע בכמות גדולה ככל הניתן של האזרחים ונוסעי המכוניות העומדות ברמזור ולגרום למותם. [redacted] ציינה בפני המחבל המתאבד כי הינו רשאי לבחור גם במקום אחר לביצוע הפיגוע המתוכנן, אולם זה צריך להיות ברחוב קינג ג'ורג' שהוא מלא אנשים.

13. [redacted] השאירה את המחבל המתאבד במקום האמור ופנתה לכיוון שער שכם של העיר העתיקה על מנת לחזור לרמא ללה.

14. בסמוך לשעה 13:55, המחבל המתאבד, [redacted], נכנס למסעדה "סבארו" הנמצאת בפינת הרחובות יפו וקינג ג'ורג', אשר היתה הומת אדם בשעה זו. שם המחבל המתאבד הפעיל את מטען החבלה, אותו הכין הנאשם כפי שתואר לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל ה אפשר.

15. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו חמישה-עשר בני אדם, כפי שיתואר בפרטי האישום הבאים.

16. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

17. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לרכוש, הן למסעדה "סבארו", הן למכוניות ומבנים שהיו בסמוך.

18. במעשיו, המתוארים לעיל, גרם הנאשם בכוונה למותה של **פרידה מנדלסון ז"ל**, בת 62 במותה, אשר נהרגה כתוצאה מהתפוצצות מטען החבלה כאמור לעיל.

**פרט שלושה-עשר: (פ.א. 6891/01 מת"מ י-ם)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **לאלי שימשיאשוילי-מסנגיסר ז"ל**, בת 33 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**<u>פרט ארבעה-עשר:</u> (פ.א. 6891/01 מת"מ י-ם)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **תמר שימשיאשוילי-מסנגיסר ז"ל**, בת 8 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**<u>פרט חמישה-עשר:</u> (פ.א. 6891/01 מת"מ י-ם)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **תהילה מעוז ז"ל**, בת 20 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**<u>פרט שישה-עשר:</u> (פ.א. 6891/01 מת"מ י-ם)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **מיכל רזיאל ז"ל**, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**<u>פרט שבעה-עשר:</u> (פ.א. 6891/01 מת"מ י-ם)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **מלכה רוט ז"ל**, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט שמונה-עשר:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **יוכבד ששון ז"ל**, בת 10 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט תשעה-עשר:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **מרדכי רפאל סחיווסחורדר ז"ל**, בן 44 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **צירה סחיווסחורדר ז"ל**, בת 41 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים ואחד:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **רעיה סחיווסחורדר ז"ל**, בת 14 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

נאמן למקור

בית המשפט הצבאי יהודה ושומרון

ת.ת 380/03

**פרט עשרים ושניים:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **אברהם יצחק סחיווסחורדר ז"ל**, בן 4 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים ושלושה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **חמדה סחיווסחורדר ז"ל**, בת שנתיים במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים וארבעה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **ג'ודית ליליאן גרינבוים ז"ל**, בת 31 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים וחמישה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **גיורא בלאש ז"ל**, בן 69 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים ושישה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **צבי גולומבק ז"ל**, בן 26 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים ושבעה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.
כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה נפצעו יותר מ-127 בני אדם שהיו באיזור מקום ההתפוצצות.

**פרט עשרים ושמונה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או בסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השנים-עשר, במעשיו המתוארים בפרט האישום השנים-עשר, גרם נזק כבד למסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום השנים-עשר, וכן לבניינים הסמוכים ולכלי הרכב שעברו במקום בזמן הפיצוץ.

**פרט עשרים ותשעה:**

**מהות העבירה:** עבירות ברשיונות ומסמכים שהוצאו על-פי תחיקת הביטחון, עבירה לפי סעיף 60(ג) ו-(ז) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מהמחצית השניה של שנת 2001 ועד ליום מעצרו או בסמוך לכך, שינה או הניח לאחר לשנות כל מסמך שהוצא על פי תחיקת הביטחון והחזיק ברשותו מסמך שהוצא על פי תחיקת הביטחון שאינו ערוך על שמו, מתוך כוונה להטעות, דהיינו:
הנאשם הנ"ל, במחצית השניה של שנת 2001, ברמאללה או בסמוך לכך, קיבל מידי [redacted], המכונה "צלאח 2", שתי תעודות זהות - האחת על שמו של [redacted], והשנייה על שמו של [redacted]. בשתי תעודות הזהות הנ"ל הוכנסו תמונותיו של הנאשם.
במהלך התקופה האמורה לעיל, הנאשם עשה שימוש בתעודת הזהות המזויפת על שמו של [redacted] בעת שעבר בדיקות על-ידי חיילי צה"ל ברמאללה ובסמוך אליה, וזאת מתוך כוונה להטעות את חיילי צה"ל.

**פרט שלושים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, שוחח עם [redacted], המכונה "צלאח 1" או [redacted], ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה. [redacted] ביקש כי הנאשם ירכוש עבורו תמ"ק עוזי. הנאשם פנה אל [redacted] (המכונה [redacted]'), אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש לרכוש ממנו תמ"ק עוזי. אחמד ברגותי הפגיש את הנאשם עם [redacted], פעיל צבאי בכיר ב"גדודי חללי אלאקצא", והנאשם רכש מידי האחרון תמ"ק עוזי.
לאחר כשבועיים, הנאשם העביר את תמ"ק עוזי הנ"ל לידי [redacted], המכונה "צלאח 2", אשר העבירו לידי [redacted]

**פרט שלושים ואחד:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, פנה אל [redacted] (המכונה "[redacted]"), אחד מראשי הארגון "גדודי חללי אלאקצא" באיזור רמאללה, וביקש לרכוש ממנו תמ"ק MP-5. [redacted] הפגיש את הנאשם עם [redacted], פעיל צבאי בכיר ב"גדודי חללי אלאקצא", והנאשם רכש מידי האחרון תמ"ק MP-5.

**פרט שלושים ושניים:**

**מהות העבירה:** החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל ממועד האמור בפרט האישום הקודם ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר המתוכנן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק בתמ"ק MP-5, המתואר בפרט האישום הקודם, וכן אקדח.
הנאשם החזיק בכלי הנשק הנ"ל ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.

**פרט שלושים ושלושה:**

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מהמחצית השניה של שנת 2001 ועד ליום מעצרו, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, ברמאללה ובסמוך אליה, הקים מספר מעבדות לייצור חומרי נפץ ומטעני חבלה. הנאשם נהג להחליף את המיקום של המעבדה הנ"ל כל כמה חודשים וזאת על מנת שלא תיחשף על-ידי כוחות הביטחון הישראליים.
אל המעבדות הנ"ל, הנאשם וחבריו נהגו להעביר חומרים כימיים שונים המשמשים לייצור חומרי נפץ. חומרי הנפץ הנ"ל נרכשו הן על-ידי הנאשם עצמו, הן על-ידי חבריו לארגון החמאס. חומרי הנפץ הנ"ל נרכשו בכספים של ארגון החמאס.

P 7: 39

הנאשם ייצר מהחומרים הכימיים הנ"ל עשרות קילוגרמים של חומר נפץ, בעיקר מהסוג "אום אלעבד" (TATP). מחומרי הנפץ, אותם ייצר, הנאשם הכין מספר רב של מטעני חבלה מסוגים שונים, וזאת בנוסף למטעני החבלה אותם כפי שתואר בפרטי האישום הקודמים וכפי שיתואר בפרטי האישום הבאים.
הנאשם ייצר את מטעני החבלה הנ"ל במטרה שפעילי ארגון החמאס יבצעו באמצעותם פיגועים נגד המטרות הישראליות. הנאשם תדרך את פעילי ארגון החמאס איך להפעיל את מטעני החבלה הנ"ל.
בנוסף לאמור לעיל, הנאשם ניסה לייצר רימוני-יד ומטען וכן תכנן להרכיב מטען חבלה על רכב צעצוע המופעל באמצעות שלט רחוק.
במהלך התקופה האמורה, הנאשם אף קיבל הוראות לייצור טילי "קסאם", אך החליט כי אין ביכולתו לייצר את הטילים.

**<u>פרט שלושים וארבעה:</u>**

**<u>מהות העבירה:</u>** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, לימד את [redacted] המכונה "צלאח 2", פעיל בארגון החמאס, אשר שימש כאיש קשר בין הנאשם לבין מפקדו בארגון החמאס, לייצר חומרי נפץ ומטעני חבלה.

**<u>פרט שלושים וחמישה:</u>**

**<u>מהות העבירה:</u>** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי ל[redacted] (מכונה "[redacted]"), פעיל צבאי בארגון החמאס.
במהלך האימון האמור הנאשם לימד את [redacted] לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.
בסוף האימון הנאשם העביר ל[redacted] תיק עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דף עם ההוראות לייצורם.
החומרים לצורך האימון הצבאי הנ"ל נרכשו על-ידי [redacted], ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה.
הנאשם הציג את עצמו בפני [redacted] בכינוי "המהנדס". במהלך האימון הצבאי הנ"ל, הנאשם ו[redacted] היו רעולי פנים.

**<u>פרט שלושים ושישה:</u>**

**<u>מהות העבירה:</u>** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, כיומיים לאחר המועד האמור בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי לשני אנשים, אשר הובאו לדירה על-ידי [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

במהלך האימון האמור הנאשם לימד את שני האנשים הנ"ל לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.
בסוף האימון הנאשם העביר לשני האנשים הנ"ל שני תיקים עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.

**<u>פרט שלושים ושבעה:</u>**

**<u>מהות העבירה:</u>** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, בסמוך לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי ל[redacted], אשר הובא לדירה על-ידי [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.
במהלך האימון האמור הנאשם לימד את [redacted] לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי. כמו כן, הנאשם העביר ל[redacted] אימון תיאורטי ומעשי בפירוק והרכבה של תמ"ק עוזי ואקדח 14.
בסוף האימון הנאשם העביר ל[redacted] תיק עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.
בסוף האימון האמור, הנאשם העניק ל[redacted] כינוי "עבדאללה 5", וזאת מכיוון שזה היה האדם החמישי, אותו לימד לייצר את חומרי הנפץ ומטעני החבלה.

**<u>פרט שלושים ושמונה:</u>** (פ.א. 10283/01 ציון)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במהלך חודש נובמבר 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, ייצר חומר נפץ מסוג "אום אלעבד" (TATP).

2. מחומר הנפץ הנ"ל, הנאשם ייצר שלושה מטעני חבלה. את מטען החבלה הראשון הנאשם הכניס אל תוך מארז מחשב. את מטען החבלה השני הנאשם הכניס אל תוך תיק בד שחור. את מטען החבלה השלישי הנאשם הכין בצורה של חגורת נפץ. בנוסף לחומר הנפץ הנאשם הכניס למטעני החבלה רסס, המורכב ממסמרים ואומים. בשלושת מטעני החבלה הנ"ל הנאשם הרכיב את מנגנוני ההפעלה. כאשר מטעני החבלה שהורכבו בחגורת הנפץ ובמארז מחשב הופעלו על-ידי לחיצה על מפסק ההפעלה ואילו מטען החבלה שהוסתר בתוך תיק בד שחור הופעל באמצעות שעון עצר. בשלושת מטעני החבלה הנ"ל הנאשם הוסיף אומים ומסמרים על מנת להגביר את עוצמת הפגיעה של מטעני החבלה. כמו כן, הנאשם הכניס לשלושת מטעני החבלה חומר רעיל, גם זאת על מנת להפוך את המטענים לקטלניים יותר.

3. הנאשם ייצר את מטעני החבלה הנ"ל לבקשתו של [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס. "צלאח 2" פנה אל הנאשם על-פי בקשתו של [redacted], המכונה "צלאח 1" או [redacted], מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

4. הנאשם מסר את שלושת מטעני החבלה הנ״ל ל״צלאח 2״ על מנת שהאחרון ידאג להעבירם לפעילי ארגון החמאס, אשר יבצעו באמצעות מטעני החבלה הללו פיגועי תופת בכוונה לגרום למותם של אנשים רבים ככל הניתן.

5. ״צלאח 2״ ו[redacted], בעצמם או באמצעות אנשים אחרים, העבירו את מטעני החבלה הנ״ל לידי [redacted] ו[redacted] וכן הטמינו את מטען החבלה, אשר הוסתר בתיק בד שחור, בתוך רכב מסוג אופל קדט, מ.ר. 4774987.

6. ביום 01.12.01, בסמוך לשעה 23:36, בכניסה מכיכר ציון לרחוב בן יהודה בירושלים או בסמוך לכך, מחבל מתאבד [redacted] הפעיל את מטען החבלה, אשר יוצר על-ידי הנאשם והוסתר בתוך מארז מחשב כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטען החבלה הנ״ל התפוצץ.

7. באותו היום, בסמוך לשעה הנ״ל, בצומת הרחובות בן-יהודה - לונץ בירושלים או בסמוך לכך (מרחק של מטרים ספורים ממקום פיצוץ המטען הראשון), מחבל מתאבד [redacted] הפעיל את מטען החבלה, אשר יוצר על-ידי הנאשם בצורה של חגורת נפץ כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטען החבלה הנ״ל התפוצץ.

8. באותו היום, מספר דקות לאחר ששני המחבלים המתאבדים הנ״ל הפעילו את מטעני החבלה הנ״ל, הופעל מטען החבלה שיוצר על-ידי הנאשם והוסתר בתוך תיק בד שחור כאמור לעיל. מטען החבלה השלישי הופעל ברכב מסוג אופל קדט, מ.ר. 4774987, אשר חנה ברחוב הרב קוק בסמוך לפינת רחוב יפו בירושלים (מרחק של כמה עשרות מטרים ממקום פיצוצם של שני מטעני החבלה הנ״ל). מטען החבלה הנ״ל הופעל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

9. כתוצאה מפיצוץ שלושת מטעני החבלה הנ״ל, אשר פוצצו על-ידי כפי שתואר לעיל, נהרגו עשרה ונפצעו כ-191 בני אדם, כפי שיפורט בפרטי האישום הבאים.

10. במעשיו המתוארים לעיל, הנאשם הנ״ל גרם בכוונה למותו של **יוסף אעזרה ז״ל**, בן 18 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה במרכז ירושלים כפי שתואר לעיל.

**פרט שלושים ותשעה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **אסף אביטן ז״ל**, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

P 7: 42

**פרט ארבעים:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **גיא וקנין ז"ל**, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים ואחד:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **יוני קורגנוב ז"ל**, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים ושניים:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **יעקב ישראל דנינו ז"ל**, בן 17 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים ושלושה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **מיכאל דהאן ז"ל**, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.