**פרט ארבעים וארבעה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **גולן תורג'מן ז"ל**, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים וחמישה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **אדם וינשטיין ז"ל**, בן 14 שנה במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים ושישה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **משה ידיד-לוי ז"ל**, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

**פרט ארבעים ושבעה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **ניר חפצדי ז"ל**, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

P 7: 44

**פרט ארבעים ושמונה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, ניסה לגרום למותם של אזרחים רבים ככל האפשר. כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה, נפצעו 191 בני אדם.

**פרט ארבעים ותשעה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם נזק כבד לבתים ולבתי העסק הנמצאים באיזור הרחובות בן-יהודה, לונץ, יפו, הרב קוק ולכלי רכב אשר היו במקום, אשר בו הופעלו שלושה מטעני החבלה, כפי שתואר בפרט האישום השלושים ושמונה.

**פרט חמישים:**

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של [redacted], ראש "התנזים" של הפת"ח, ייצר שני מטעני חבלה. [redacted] ביקש מהנאשם לייצר עבורו שני מטעני חבלה על מנת לעשות בהם שימוש אם כוחות צה"ל ייכנסו לרמאללה.

**פרט חמישים ואחד:**

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ייצר שלושה מטעני חבלה, אשר היו מוסווים בקרטונים של מיץ, וכן ארבעה מטעני חבלה, אשר היו מוסווים לאבנים.
מטעני החבלה הנ"ל הועברו על-ידי [redacted], המכונה "צלאח 2" לידי [redacted], המכונה "צלאח 1", שהוא ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

ת.ת. 380/03

P 7: 45

**פרט חמישים ושניים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי [redacted] (המכונה "[redacted]"), אחד מראשי הארגון "גדודי חללי אלאקצא", רוס"ר קלצ'ניקוב עם שתי מחסניות מלאות בכדורים וכן אקדח 14 עם מחסנית מלאה בכדורים.
הנאשם ביצע את האמור לעיל על-פי בקשתו של [redacted], פעיל צבאי בארגון החמאס.
לאחר רכישת כלי הנשק הנ"ל, הנאשם מסרם לידי [redacted] הנ"ל.

**פרט חמישים ושלושה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2001 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם אדם פלוני. הנאשם נפגש עם האדם הנ"ל על-פי בקשתו של [redacted], המכונה "צלאח 1" או [redacted], ראש "גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, באיזור רמאללה. [redacted] מסר לנאשם כי האדם הנ"ל צריך לצאת לביצוע פיגוע התאבדות וביקש כי הנאשם יבדוק אם האדם הנ"ל איתן בדעתו לבצע פיגוע התאבדות.
הנאשם הסכים ושוחח עם האדם הנ"ל. הנאשם התרשם כי האדם הנ"ל איתן בדעתו וזאת לאור העובדה כי האדם הנ"ל מבקש, באמצעות ביצוע פיגוע ההתאבדות, לטהר את שם אביו, שנחשד בשיתוף הפעולה עם כוחות הביטחון הישראליים.
הנאשם מסר את מסקנותיו הנ"ל ל[redacted], אשר השיב כי לא יוציא את האדם הנ"ל לביצוע פיגוע התאבדות, שכן אינו מוכן שאדם יבצע פיגוע התאבדות רק על מנת לטהר את שמו.

**פרט חמישים וארבעה:** (פ.א. 1512/02 מוריה)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם האחראי עליו בארגון החמאס, [redacted], המכונה "צלאח 1" או [redacted], [redacted]. [redacted] ביקש כי הנאשם ייצר חגורת נפץ עבור מחבל מתאבד, על מנת שהאחרון יבצע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל הניתן.

2. הנאשם הסכים לבקשתו של [redacted]. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מחגורה מבד דמוי עור, עלי הודבקו ברגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל.

3. לאחר שהנאשם סיים להכין את חגורת הנפץ הנ"ל, הנאשם העבירה באמצעות [redacted], המכונה "צלאח 2", אל [redacted], וזאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.

P 7: 46

4. [redacted] פנה גם אל [redacted] (מכונה "[redacted]") וביקש כי האחרון יפנה אל [redacted], המכונה "[redacted]", ויבקש ממנו לאתר מקום מתאים לביצוע פיגוע ההתאבדות.

5. [redacted] נפגש עם "[redacted]" וביקש לאתר מקום בישראל המתאים לביצוע פיגוע ההתאבדות. לאחר מספר ימים "[redacted]" פנה אל [redacted] ומסר כי איתר מקום המתאים לביצוע פיגוע ההתאבדות המתוכנן והוא - בית-קפה "מומנט", הנמצא ברחוב עזה בירושלים. "[redacted]", ביחד עם [redacted] ו[redacted], ביצע סיורים באיזור בית-קפה "מומנט" לצורך תכנון פיגוע ההתאבדות. הנאשם דיווח ל"שיח'" אודות המקום שאותר על-ידי "אבו סעד" וחבריו.

6. ביום שבת, 09.03.02, בסביבות השעה 20:00, ברמאללה או בסמוך לכך, [redacted] נפגש עם [redacted] ועם [redacted], [redacted] עזבו את מקום המפגש למשך כחצי שעה על מנת ש[redacted] ילבש חגורת נפץ. [redacted] הלביש על [redacted] את חגורת הנפץ, אשר הוכנה על-ידי הנאשם, כאמור לעיל, לצורך ביצוע פיגוע התאבדות.

7. לאחר מכן, [redacted], ביחד עם [redacted] ליוו את [redacted], אשר נשא על גופו את חגורת הנפץ הנ"ל, לתחנת מוניות "קלנדיה" ברמאללה והעלו את האחרון לרכב הסעות שנסע לבית חנינא. [redacted], [redacted] נסעו ביחד לבית חנינא ברכב הסעות. [redacted] הובילו את [redacted] למקום המפגש, אשר אותו קבע הנאשם עם "[redacted]".

8. "[redacted]" נפגש עם המחבל המתאבד, [redacted], במקום האמור, ולאחר מכן, ביחד עם [redacted] הסיע את המחבל המתאבד לירושלים. "[redacted]" [redacted] הובילו את [redacted] לבית-קפה "מומנט" הנמצא ברחוב עזה בירושלים.

9. בסמוך לשעה 22:30, ביום 09.03.02 או במועד הסמוך לכך, [redacted] אשר נשא על גופו את חגורת הנפץ, אותה ייצר למטרה זו הנאשם, נכנס אל תוך בית-קפה "מומנט", אשר היה באותה שעה הומה אדם, והפעיל את חגורת הנפץ הנ"ל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **אברהם רחמים ז"ל**, אשר נהרג כתוצאה מפיצוץ חגורת הנפץ בבית-קפה "מומנט" כפי שתואר לעיל.

**<u>פרט חמישים וחמישה:</u> (פ.א. 1512/02 מוריה)**

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **ניר בורוכוב ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט חמישים ושישה:</u>** **(פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **לימור בן שוהם ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט חמישים ושבעה:</u>** **(פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **דן אימוני ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט חמישים ושמונה:</u>** **(פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **דנית דגן ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט חמישים ותשעה:</u>** **(פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **אורי פליקס ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט שישים:</u> (פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **ברוך לרנר ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט שישים ואחד:</u> (פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **טלי אליהו ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט שישים ושניים:</u> (פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **לבנת דבש ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**<u>פרט שישים ושלושה:</u> (פ.א. 1512/02 מוריה)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **אורית אוזרוב ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**פרט שישים וארבעה:** (פ.א. 1512/02 מוריה)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **נתנאל כוכבי ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**פרט שישים וחמישה:** (פ.א. 1512/02 מוריה)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר.
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה, נפצעו **65 בני אדם**.

**פרט שישים ושישה:** (פ.א. 1512/02 מוריה)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם נזק כבד לבית-קפה "מומנט" הנמצא ברחוב עזה בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום החמישים וארבעה.

**פרט שישים ושבעה:** (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, **דהיינו**:

1. הנאשם הנ"ל, בסוף חודש מרץ - חודש אפריל 2002, ברמאללה או בסמוך לכך, נפגש עם [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי [redacted], המכונה "צלאח 1" או [redacted], מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר חגורת נפץ ותיק נפץ לצורך ביצוע פיגוע התאבדות. הנאשם הסכים לייצר את שני מטעני החבלה

P 7: 50

וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מחגורה מבד דמוי עור, עלי הודבקו ברגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל. חגורת הנפץ הנ"ל היתה דומה לזו שהנאשם ייצר עבור הפיגוע בבית-קפה "מומנט" בירושלים, המתואר בפרט האישום החמישים וארבעה.

4. כמו כן, הנאשם ייצר, ברמאללה או בסמוך לכך, מטען נפץ, אשר הורכב מבקבוקי שמפו מלאים בחומר נפץ, אשר הוכנסו אל תוך תיק בצבע שחור. הנאשם הכניס אל תוך התיק הנ"ל ברגים לצורך הגברת עוצמת הפגיעה של מטען החבלה. הנאשם הרכיב בתיק האמור מנגנון הפעלה למטען החבלה, המורכב משעון עצר.

5. הנאשם מסר את חגורת הנפץ הנ"ל ביחד עם תיק הנפץ הנ"ל לידי "צלאח 2", על מנת שהאחרון יעבירם לידי אברהים חאמד וזה יעבירם לידי המחבל המתאבד.

6. בחודש אפריל 2002 [redacted] פנה אל [redacted] (מכונה [redacted]") ומסר לאחרון כי יש צורך לבצע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. [redacted] מסר ל[redacted] כי יש לו אדם שמוכן לבצע את פיגוע ההתאבדות.

7. לאחר מספר ימים, ברמאללה או בסמוך לכך, [redacted] הכיר ל[redacted] את [redacted] (להלן: המחבל המתאבד), אשר היה אמור לבצע את פיגוע ההתאבדות המתוכנן. במהלך הפגישה סוכם כי לאחר מספר ימים [redacted] יביא את המחבל המתאבד לפגישה עם [redacted] ברמאללה והאחרון ייקח את המחבל המתאבד לביצוע פיגוע ההתאבדות המתוכנן.

8. ביום 07.05.02, [redacted] נפגש עם המחבל המתאבד ברמאללה לפי הסיכום הנ"ל. על-פי בקשתו של [redacted], [redacted] ליווה את המחבל המתאבד מרמאללה לצפא. בצפא השניים הנ"ל נפגשו עם [redacted] ונסעו ביחד לבית ענאן. שם מחמד ערמאן מסר לידי המחבל המתאבד את חגורת הנפץ, אשר אותה ייצר הנאשם כאמור לעיל ואשר הועברה לידי [redacted] על-ידי [redacted], [redacted] הלביש את חגורת הנפץ הנ"ל על גופו של המחבל המתאבד וכן נתן לאחרון תיק עם מטען חבלה נוסף, אשר גם אותו ייצר הנאשם כאמור לעיל ואשר הועבר לידי [redacted] על-ידי [redacted].

9. [redacted] הסיע ברכבו את המחבל המתאבד עם מטען החבלה הנ"ל ועם חגורת הנפץ הנ"ל מבית ענאן לבית איכסא.

10. בבית איכסא או בסמוך לכך, הנאשם והמחבל המתאבד פגשו ב[redacted] [redacted], המכונה [redacted]", אשר לקח את המחבל המתאבד לביצוע הפיגוע המתוכנן.

11. באותו הערב, "[redacted]" ביחד עם [redacted], הסיעו את המחבל המתאבד לראשון לציון ושם ליוו אותו עד למועדון "שפילד-קלאבי" הנמצא ברחוב סחרוב 1 באיזור התעשיה החדש, אשר אותר קודם לכן על-ידי "[redacted] [redacted]" כמקום מתאים לביצוע פיגוע ההתאבדות. [redacted] הצביעו למחבל המתאבד על המועדון האמור והסבירו לו כי זה המקום שבו עליו לבצע את פיגוע ההתאבדות המתוכנן.

12. בסמוך לשעה 22:50, ביום 07.05.02 או במועד הסמוך לכך, המחבל המתאבד נכנס למועדון הנ"ל והפעיל את חגורת הנפץ ואת מטען החבלה הנוסף, אשר אותם ייצר הנאשם למטרה זו, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

13. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **רחמים קמחי ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה כפי שתואר לעיל.

נאמן למקור

ת.ת. 380-03

P 7: 186

<u>פרט שישים ושמונה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **רפאל חיים ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שישים ותשעה:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **ענת טרמפורוש ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **אברהם בייז ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ואחד:</u> (פ.א. 5601/02 ראשל"צ)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **אתי בבלאר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ושניים:</u> (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **יצחק בבלאר ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים ושלושה:</u> (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **ישראל שיקאר ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים וארבעה:</u> (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **שושנה מגמרי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>פרט שבעים וחמישה:</u> (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **שארוק רסאן ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**<u>פרט שבעים ושישה:</u>** (פ.א. 5601/02 ראשל"צ)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **נואה חינאווי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**<u>פרט שבעים ושבעה:</u>** (פ.א. 5601/02 ראשל"צ)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **ניר לובטין ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**<u>פרט שבעים ושמונה:</u>** (פ.א. 5601/02 ראשל"צ)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **רגינה מלכה בוסלן ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**<u>פרט שבעים ותשעה:</u>** (פ.א. 5601/02 ראשל"צ)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **דליה מסה ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**<u>פרט שמונים:</u>** (פ.א. 5601/02 ראשל"צ)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **פנינה הקרי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**<u>פרט שמונים ואחד:</u>** (פ.א. 5601/02 ראשל"צ)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של **עדנה כהן ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**<u>פרט שמונים ושניים:</u>** (פ.א. 5601/02 ראשל"צ)

---

**<u>מהות העבירה:</u>** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל האפשר.
כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה, נפצעו 59 **בני אדם**.

**<u>פרט שמונים ושלושה:</u>** (פ.א. 5601/02 ראשל"צ)

**<u>מהות העבירה:</u>** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם נזק כבד למועדון "שפילד-קלאב" הנמצא ברחוב סחרוב 1 בראשון לציון וכן לכל הבניין האמור, אשר בו הופעלו מטעני החבלה, כפי שתואר בפרט האישום השישים ושבעה.

**פרט שמונים וארבעה:** (פ.א. 2881/02 גלילות)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 23.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש מאי 2002, ברמאללה או בסמוך לכך, נפגש עם [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי [redacted], המכונה "צלאח 1" או [redacted] מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה אשר "נדבק" אל ברזל וזאת לצורך ביצוע פיגוע תופת. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר ניתן "להדביקו" לברזל באמצעות המגנטים, אותם הרכיב הנאשם על מטען החבלה, ואשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2" לצורך ההוצאה לפועל של פיגוע התופת המתוכנן. "צלאח 2" העביר את מטען החבלה לידי [redacted]

5. בחודש מאי 2002 [redacted] נפגש עם [redacted] (מכונה "[redacted]") ומסר לאחרון כי ברצונו לבצע פיגוע תופת ולפוצץ מיכלית דלק, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות האמור, מחמד ערמאן נפגש עם [redacted], המכונה [redacted], וסיפר לו אודות תכנונו של [redacted] לבצע פיגוע תופת. [redacted] אמר כי יבדוק את העניין ויראה מה ניתן לעשות.

6. לאחר מספר ימים, [redacted] נפגש שוב עם [redacted]. "[redacted]" מסר כי הוא וחבריו איתרו מיכלית דלק הנוסעת באופן קבוע לאתר "פי גלילות".

7. ביום 22.05.02, [redacted] נפגש עם [redacted] ברמאללה ודיווח לאחרון אודות מיכלית הדלק הנ"ל. [redacted] ביקש להיפגש עם [redacted] בעוד מספר שעות באותו המקום.

8. לאחר מספר שעות השניים נפגשו שוב. [redacted] מסר לידי [redacted] את מטען חבלה, אשר אותו ייצר הנאשם כאמור לעיל. כמו כן, [redacted] מסר ל[redacted] מכשיר טלפון סלולרי, אשר ממנו יש להתקשר אל המכשיר המחובר למטען החבלה על מנת להפעילו.

9. [redacted] מסר את מטען החבלה הנ"ל לידי [redacted], אשר העבירו לצפא. [redacted] הגיע לצפא ומשם נסע במכוניתו, ביחד עם [redacted], לבית איכסא.

10. [redacted] נפגש שם עם "[redacted]" וביחד עם [redacted] מסר לידי [redacted] את מטען החבלה הנ"ל עם מכשיר טלפון סלולרי המחובר אליו וכן את מכשיר הטלפון הסלולרי הנוסף.

11. בשעות הבוקר המוקדמות למחרת, יום 23.05.02, "[redacted]" נסע לחולון ביחד עם [redacted], כשברשותם מטען החבלה הנ"ל. בחולון, "[redacted]" הצמיד את מטען החבלה הנ"ל באמצעות מגנט אל חלקו הקדמי התחתון של מיכל הדלק המורכב על מיכלית דלק, מ.ר. 2622700. מיכלית הדלק הנ"ל אותרה קודם לכן כיעד לביצוע פיגוע תופת על-ידי [redacted]. "[redacted]" המתין ברכבו עד

P 7: 55

שהגיע נהג מיכלית הדלק ולאחר מכן נסע אחרי מיכלית הדלק הנ"ל עד לאתר "פי גלילות". לאחר ש"אבו סעד" וידא כי מיכלית הדלק, אשר אליה חובר מטען החבלה הנ"ל, נכנסה אל תוך האתר "פי גלילות", [redacted] הפעיל את מטען החבלה הנ"ל, אשר אותו ייצר הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

12. מטען החבלה הנ"ל התפוצץ וגרם נזק כבד למיכלית הדלק הנ"ל. רק בנס איש לא נפגע.

**פרט שמונים וחמישה:** (פ.א. 3975/02 לוד)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.06.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי [redacted], המכונה "צלאח 1" או "[redacted]", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי [redacted], המכונה "צלאח 1" או "[redacted]", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. [redacted] פנה אל מחמד [redacted] (מכונה "[redacted]") והציע לבצע פיגוע תופת באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. [redacted] פנה אל [redacted], המכונה "[redacted]", וביקש ממנו לבדוק אפשרות של ביצוע פיגוע תופת על פסי הרכבת בישראל. לאחר זמן מה, "[redacted]" פנה אל [redacted] ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. [redacted] ערמאן דיווח על כך ל[redacted].

7. לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם [redacted], אשר מסר לו את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל.

8. ביום 29.06.02 או בסמוך לכך, [redacted] העביר את מטען החבלה הנ"ל ביחד עם מכשירי הטלפון הסלולריים לידי "[redacted]" והסביר לאחרון כיצד מפעילים את מטען החבלה הנ"ל.

9. בשעות הערב באותו היום, "[redacted]" ביחד עם [redacted] נסע ללוד והניח את מטען החבלה הנ"ל על פסי הרכבת בלוד במקום שאותר קודם לכן כמתאים לביצוע הפיגוע המתוכנן על-ידי [redacted] ו[redacted]. לאחר מכן, "[redacted]" ו[redacted] חזרו לירושלים.

נאמן למקור

30

ת.ת 380/03

P 7: 187

10. בשעות המוקדמות של הבוקר למחרת, 30.06.02, [redacted] ו[redacted] נסעו ללוד. [redacted] התמקם ליד מטען החבלה שהונח כאמור לעיל על פסי הרכבת. בסמוך לשעה 07:00, ברגע ש[redacted] הבחין ברכבת המתקרבת למקום האמור, הוא הודיע ל[redacted] [redacted]", אשר הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. מטען החבלה הנ"ל התפוצץ.

12. כתוצאה מפיצוץ מטען החבלה הנ"ל נפצעו 4 בני אדם. כמו כן נגרם נזק לקטר הרכבת ולמסילת הברזל.

<u>פרט שמונים ושישה:</u> (פ.א. 9913/02 רחובות)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 21.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם [redacted] [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי [redacted], המכונה "צלאח 1" או [redacted]", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי [redacted], המכונה "צלאח 1" או [redacted]", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. [redacted] פנה אל [redacted] (מכונה "[redacted]") והציע לבצע פיגוע תופת נוסף באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. [redacted] פנה אל [redacted], המכונה "[redacted]", וביקש ממנו למצוא מקום לביצוע פיגוע תופת נוסף על פסי הרכבת בישראל. לאחר זמן מה, "[redacted]" פנה אל [redacted] ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. [redacted] [redacted] דיווח על כך לאברהים תאמד.

7. לאחר זמן מה, [redacted] נפגש ברמאללה עם [redacted], אשר מסר לו את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל לצורך ההוצאה לפועל של הפיגוע המתוכנן.

8. ביום 20.07.02, [redacted] מסר את מטען החבלה הנ"ל ל[redacted] וביקש מהאחרון להעבירו לצפא. לאחר מכן, [redacted] הגיע לצפא ונפגש שם עם [redacted] [redacted]. משם, השניים נסעו ביחד לבית איכסא.

9. בבית איכסא, [redacted] ו[redacted] העבירו את מטען החבלה הנ"ל ביחד עם מכשירי הטלפון הסלולריים לידי "[redacted]

10. באותו הלילה, [redacted], ביחד עם [redacted] ו[redacted], נסעו לאיזור רחובות והניחו את מטען החבלה הנ"ל על פסי הרכבת בסמוך ליציאה מרחובות, ליד כפר גבירול, מקום שנבחר קודם לכן על-ידי [redacted] ו[redacted] לאחר מכן השלושה חזרו לירושלים.

11. למחרת, 21.07.02, בשעות הבוקר המוקדמות, [redacted] ו[redacted] נסעו למקום שבו הונח מטען החבלה הנ"ל. בסמוך לשעה 07:30, "[redacted]" הפעיל את מטען החבלה הנ"ל בכוונה לגרום למותם של אנשים רבים ככל האפשר, לאחר שוסאם עבאסי דיווח לו באמצעות מכשיר טלפון סלולרי כי רכבת מגיעה למקום שבו הונח מטען החבלה.

12. מטען החבלה הנ"ל התפוצץ. כתוצאה מפיצוץ מטען החבלה נפצע אדם אחד. כמו כן, נגרם נזק לקטר הרכבת ולמסילת הברזל.

**<u>פרט שמונים ושבעה:</u> (פ.א. 1197/02 שלם)**

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יולי 2002, ברמאללה או בסמוך לכך, נפגש עם [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי [redacted], המכונה "צלאח 1" או "[redacted]", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המוסתר בתוך תיק וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר הורכב ממיכל שמפו גדול מלא בחומר נפץ, אשר הוסתר בתוך תיק שחור קשיח מבד (דומה לתיק "ג'יימס בונד"). כמו כן, הנאשם מילא את התיק הנ"ל באומים לצורך הגברת עוצמת הפגיעה של המטען. על-פי בקשתו של "צלאח 2", הנאשם הרכיב למטען החבלה הנ"ל מנגנון הפעלה אלחוטי, כך שמטען החבלה היה מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל וכן שלושה מיכלי שמפו נוספים, מלאים בחומר נפץ, לידי "צלאח 2".

5. "צלאח 2" העביר את מטען החבלה הנ"ל לידי [redacted], המכונה "צלאח 1" או "[redacted]", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

6. [redacted] פנה אל [redacted] (מכונה "[redacted]") וביקש לאתר מקום בירושלים שבו ניתן לבצע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. [redacted] פנה אל [redacted], המכונה "[redacted]", וביקש מהאחרון לאתר מקום מתאים לביצוע פיגוע תופת.

7. לאחר מספר ימים, "[redacted]" מסר ל[redacted] כי איתר מקום מתאים לביצוע פיגוע המוני והוא האוניברסיטה העברית בירושלים, קמפוס הר-הצופים. [redacted] דיווח אודות המקום שאותר ל[redacted]

8. לצורך ביצוע פיגוע התופת המתוכנן, [redacted] מסר ל[redacted] את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל. [redacted] הוסיף אל מטען החבלה האמור את שלושת בקבוקי שמפו, המלאים בחומר נפץ, אותם קיבל "צלאח 2" מהנאשם.

9. לאחר מכן, [redacted] נסע ביחד עם [redacted] לבית איכסא במטרה להעביר את מטען החבלה הנ"ל ל"[redacted]" על מנת שאחרון ביחד עם חבריו יבצע באמצעותו את פיגוע התופת המתוכנן.

10. בבית איכסא [redacted] ו[redacted] נפגשו עם [redacted]. השניים מסרו לידי [redacted]" את מטען החבלה הנ"ל יחד עם שני מכשירי טלפון סלולריים, כאשר מכשיר אחד היה מחובר למטען החבלה ושימש כמנגנון הפעלה.

11. ביום 28.07.02, [redacted], ביחד עם [redacted], העבירו את מטען החבלה הנ"ל לירושלים. [redacted]" ו[redacted] הכניסו את מטען החבלה הנ"ל אל תוך קמפוס הר-הצופים של האוניברסיטה העברית בירושלים. [redacted] הכיר היטב את המקום מכיוון שעבד שם בעבר ואף עשה שימוש בכרטיס עובד, אשר עדיין נשאר ברשותו, כדי להיכנס אל תוך הקמפוס האמור. [redacted] הניח את מטען החבלה הנ"ל בתוך הקפיטריה הנמצאת בבניין ע"ש פרנק סינטרה בקמפוס הנ"ל. לאחר מכן, [redacted]" ו[redacted] ניסו להפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, אך מטען החבלה לא התפוצץ עקב תקלה שבו. לאחר מכן, [redacted] חזר אל המקום שבו הניח את מטען החבלה הנ"ל, אסף את מטען החבלה וביחד עם "[redacted]" נסע לבית איכסא.

12. לאחר מכן, ביום 29.07.02, [redacted] ו[redacted] נפגשו שוב עם "[redacted]. "[redacted]" החזיר ל[redacted] את מטען החבלה הנ"ל. "[redacted]" מסר כי הוא וחבריו הניחו את מטען החבלה הנ"ל באוניברסיטה העברית בירושלים, קמפוס הר-הצופים, בכוונה לפוצצו ולגרום למותם של אנשים רבים ככל האפשר, אך מטען החבלה הנ"ל לא התפוצץ. [redacted] העבירו את מטען החבלה הנ"ל לחרבותא בני חארס.

13. [redacted] תיקן את מטען החבלה הנ"ל, לאחר שבדק אותו וגילה כי יש בעיה עם חוטי החשמל.

14. יום למחרת, ביום 30.07.02, [redacted] נפגש שוב עם [redacted] וביחד עם האחרון העביר את מטען החבלה הנ"ל לבית איכסא.

15. בבית איכסא, [redacted] נפגשו עם "[redacted]". [redacted] מסר לידי [redacted] את מטען החבלה הנ"ל.

16. באותו הלילה, [redacted] לקחו את מטען החבלה הנ"ל לירושלים והסתירו אותו בין העצים בגן הבוטני בקמפוס הר-הצופים של האוניברסיטה העברית.

17. למחרת, ביום 31.07.02, [redacted] נסעו שוב לקמפוס הר-הצופים של האוניברסיטה העברית. בעת ש[redacted] המתין בחוץ, [redacted] נכנס אל תוך הקמפוס, אסף את מטען החבלה הנ"ל והניחו בקפיטריה הנמצאת בבניין ע"ש פרנק סינטרה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים. לאחר ש[redacted] בסמוך לשעה 13:30, עזב את שטח הקמפוס והצטרף אל [redacted], [redacted]" הפעיל את מטען החבלה הנ"ל, אשר יוצר על-ידי הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. [redacted] בחרו לבצע את הפיגוע דווקא בסמוך לשעה 13:00 מאחר שלפי המידע שאסף מחמד עודה בקפיטריה הנ"ל בשעה האמורה יש ריכוז גדול של בני אדם.

18. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של **דפנה שפרוך ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה באוניברסיטה העברית, כפי שתואר לעיל.

**<u>פרט שמונים ושמונה:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **מרלה אן בנט ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**<u>פרט שמונים ותשעה:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **דינה קרטר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**<u>פרט תשעים:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **בנימין תומאס בלוטשטיין ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**<u>פרט תשעים ואחד:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **רויטל בראשי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**<u>פרט תשעים ושניים:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **דוד (דיאגו) לדובסקי ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**<u>פרט תשעים ושלושה:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **לוינא שפירא ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**<u>פרט תשעים וארבעה:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של **ג'ניס רות קולטר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**<u>פרט תשעים וחמישה:</u>** (פ.א. 1197/02 שלם)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **דוד גריץ ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים ושישה:** (פ.א. 1197/02 שלם)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים ככל האפשר. כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה, נפצעו **81 בני אדם**.

**פרט תשעים ושבעה:** (פ.א. 1197/02 שלם)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם נזק כבד לבניין ע"ש פרנק סינטרה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים ושמונה:** (פ.א. 9638/02 ראשל"צ)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 07.08.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש אוגוסט 2002, ברמאללה או בסמוך לכך, נפגש עם [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי [redacted], המכונה "צלאח 1" או "[redacted]", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר שני מטעני חבלה המוסתרים בתוך הקופסאות של ביסקוויטים - אחד המופעל באמצעות מכשיר טלפון סלולרי, והשני המופעל שלט רחוק, וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטעני החבלה וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר שני מטעני חבלה, אשר הוסתרו בתוך קופסאות של ביסקוויטים. לאחד ממטעני החבלה הנאשם חיבר מנגנון הפעלה המורכב ממכשיר טלפון סלולרי, ואילו למטען החבלה השני הנאשם הרכיב מנגנון הפעלה כך שהמטען יופעל באמצעות שלט רחוק.

4. הנאשם מסר את מטעני החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי [redacted], המכונה "צלאח 1" או "[redacted]", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. בראשית חודש אוגוסט 2002, [redacted] (מכונה "[redacted]") נפגש עם [redacted], המכונה "[redacted]", אשר ביקש לקבל מטען חבלה. "[redacted]" הסביר כי בכוונתו להניח את מטען החבלה מתחת לרכב ולפוצצו בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

6. [redacted] פנה אל [redacted] וביקש לקבל מטען חבלה לצורך ביצוע הפיגוע המתוכנן. לאחר מספר ימים, ברמאללה או בסמוך לכך, [redacted] העביר לידי [redacted] מטען חבלה, אותו ייצר הנאשם, כאמור לעיל, אשר היה מופעל באמצעות מכשיר טלפון סלולרי.

7. באותו היום, 06.08.02, [redacted], ביחד עם [redacted] נסעו לבית איכסא כאשר ברשותם מטען החבלה הנ"ל. בבית איכסא, השניים נפגשו עם "[redacted]" והעבירו לידיו את מטען החבלה הנ"ל.

8. ביום למחרת, 07.08.02, "[redacted]" ו[redacted] הצמידו את מטען החבלה הנ"ל למיכלית דלק, מ.ר. 3388300, שחנתה בשכונת פסגת זאב בירושלים או בסמוך לכך. לאחר מספר שעות, בסמוך לשעה 13:50, "[redacted]" הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המטען שהונח במיכלית הדלק האמורה התפוצץ, וזאת כאשר מיכלית הדלק היתה במוסך ברחוב שמוטקין 23 בראשון לציון.

9. כתוצאה מפיצוץ מטען החבלה הנ"ל נגרם נזק למיכלית הדלק ורק בנס איש לא נפגע.

**פרט תשעים ותשעה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם [redacted], המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" ביקש מהנאשם לייצר שתי חגורות נפץ וזאת לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את חגורות הנפץ וזאת על מנת שישתמשו בהן לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות הבקשה האמורה, הנאשם ייצר שתי חגורות נפץ.

3. הנאשם מסר את חגורות הנפץ הנ"ל לידי "צלאח 2", אשר דאג להעבירן באמצעות [redacted] אל [redacted] פעיל צבאי בארגון החמאס, וזאת לצורך הוצאה לפועל של פיגוע התאבדות המתוכנן.

4. בסוף חודש יולי 2002, [redacted] התקשר אל [redacted] וביקש כי לתאם פגישה בין [redacted], המכונה [redacted], לבין אדם המכונה [redacted]. [redacted] הסביר כי הפגישה האמורה נועדה לצורך ההוצאה לפועל של פיגוע התאבדות, אשר אותו היה אמור לבצע "[redacted]" הנ"ל. [redacted] התקשר אל "[redacted]" ומסר לאחרון איפה וכיצד עליו לפגוש את [redacted]. כעבור יומיים, "[redacted]" הודיע כי [redacted] לא הגיע לפגישה שנקבעה.

5. מיד לאחר השיחה הנ"ל, [redacted] חזר לרמאללה ונפגש עם [redacted] ודיווח לאחרון כי הפגישה המתוכננת לא יצאה אל הפועל. בתום הפגישה הנ"ל, [redacted] התקשר אל [redacted], המכונה "[redacted]".

6. לאחר מספר ימים, [redacted] נפגש שוב עם [redacted], אשר ביקש כי לתאם פגישה נוספת בין "[redacted]" ל[redacted].

7. כעבור כשבוע ימים, [redacted] ביקש כי במקרה ש[redacted] לא יגיע לפגישה האמורה, [redacted] ייקח אחריות על "[redacted]" ועל המחבל המתאבד השני, [redacted] [redacted].

8. לאחר השיחה הנ"ל, [redacted] עקב אחרי "[redacted]" וראה כי "[redacted]" ממתין במקום המפגש וכי [redacted] לא הגיע. כעבור רבע שעה של המתנה [redacted] ניגש אל "[redacted]" והודיע לאחרון כי מרגע זה הנאשם יהיה אחראי עליו.

9. "[redacted]" מסר כי יש לו בן דוד, [redacted], אשר גם הוא רוצה לבצע פיגוע התאבדות. "[redacted]" ביקש לבצע פיגוע התאבדות ביחד עם בן-דודו הנ"ל.

10. לאחר מספר ימים, [redacted] נפגש ברמאללה עם "[redacted]" והורה לאחרון למצוא מקום בתוך מדינת ישראל המתאים לביצוע פיגוע התאבדות. [redacted] הבהיר ל"[redacted]" כי יהיה עליו להוביל למקום שאותו יאתר שני מחבלים מתאבדים על מנת שיבצעו שם פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. "[redacted]" הסכים, אך טען כי ייקח זמן לאתר מקום ניתן לבצע פיגוע התאבדות כפול. במהלך השיחה הנ"ל, "[redacted]" דיווח כי שכר דירה בדחיית אל-בריד.

11. [redacted] מסר ל[redacted] כי נודע לו מ[redacted] על אולם שמחות גדול "וייט הול" הנמצא באור-יהודה. [redacted] הציע כי הוא ו[redacted] יבצעו את פיגוע ההתאבדות באולם השמחות הנ"ל, כאשר תחילה שניהם יירו בכלי נשק לעבר האנשים שיהיו בתוך אולם השמחות ולאחר מכן יפוצצו את חגורות הנפץ שיישאו על גופם, וכל זאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. [redacted] הסכים לרעיון הנ"ל ושלח את "[redacted]" לבדוק את אולם השמחות הנ"ל. [redacted] נסע לאולם השמחות הנ"ל ודיווח כי לא ניתן לבצע שם את הפיגוע המתוכנן בגלל מספר גדול של מאבטחים שנמצאים במקום.

12. [redacted] דיווח ל[redacted] לגבי פעילותו שבוצעה לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. [redacted] ביקש מ[redacted] לקבל שתי חגורות נפץ ושני כלי נשק קטנים, כל זאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. [redacted] [redacted] הבטיח לדאוג לחגורות הנפץ ולכלי הנשק.

13. לאחר מספר ימים [redacted] ו"[redacted]" קיבלו שתי חגורות הנפץ, אותן ייצר הנאשם כאמור לעיל, וכן שני תת-מקלעים "עוזי" עם מחסניות מלאות בכדורים.

14. לאחר מכן, [redacted] נפגש עם "[redacted]" ומסר לאחרון כי חגורות הנפץ מוכנות והוא יכול לצאת לביצוע פיגוע התאבדות המתוכנן ביחד עם בן-דודו, [redacted]. "[redacted]" השיב כי הוא עצמו מוכן לבצע את פיגוע ההתאבדות בהקדם האפשרי, אך [redacted] לא מוכן לבצע את פיגוע ההתאבדות המתוכנן, מכיוון שאחותו שוהה בארה"ב והוא מבקש להמתין לשובה לאיזור.

15. [redacted] פנה שוב ל"[redacted]" וביקש לפעול דחוף לאיתור מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן. לאחר מספר ימים, "[redacted]" דיווח כי איתר מקום בתל-אביב שהוא מתאים לביצוע פיגוע ההתאבדות המתוכנן.

16. ביום 17.09.02 או בסמוך לכך, [redacted] נפגש בדירת המסתור בא-ראם עם "[redacted]" והסביר לאחרון כיצד לובשים וכיצד מפעילים את חגורת הנפץ. [redacted] נשאר בדירה הנ"ל, ביחד עם "עומר" עד ליום 18.09.02.

17. ביום 19.09.02, "[redacted]" יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן כשהוא נושא על גופו את אחת מחגורות הנפץ, אשר ייצר הנאשם כאמור לעיל.

.18 [redacted]' הסיע את "[redacted]" ברכבו לתל-אביב. בהגיעם לתל-אביב, "[redacted] הנחה את [redacted]' להתפוצץ שבו נמצאים אנשים רבים וזאת על מנת שהפיצוץ יגרום למותם של אנשים רבים ככל הני תן.

.19 בסמוך לשעה 12:55, ביום 19.09.02, או במועד הסמוך לכך, "עומר" עלה לאוטובוס בקו 4 של "דן", מ.ר. 9105201, ברחוב אלנבי 94 בתל-אביב. מיד כשהאוטובוס.הנ"ל התחיל בנסיעה, "[redacted]" הפעיל את חגורת הנפץ, אותה ייצר הנאשם, שנשא על גופו וגרם לפיצוץ עז, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המחבל המתאבד, [redacted] המכונה '[redacted]', נהרג כתוצאה מפיצוץ מטען החבלה ה נ"ל.

.20 כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו שישה בני אדם, כפי שיתואר בפרטי האישום ה באים.

.21 כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

.22 כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לאוטובוס הנ"ל, לכלי רכב שהיו בסמוך למקום הפיצוץ, וכן לחנויות הס מוכות.

.23 במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של **יוסי ממיסטלוב ז"ל**, בן 39 במותו, אשר נהרג כתוצאה מהתפוצצות מטען החבלה כאמור לעיל.

**<u>פרט מאה:</u>** (פ.א. 19284/02 ירקון)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **עופר זינגר ז"ל**, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**<u>פרט מאה ואחד:</u>** (פ.א. 19284/02 ירקון)

**<u>מהות העבירה:</u>** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**<u>פרטי העבירה:</u>** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של **רוזנה סיסו ז"ל**, בת 63 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

P 7: 64

**פרט מאה ושניים:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של **יפה שם-טוב** ז"ל, בת 49 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה ושלושה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **סלומון הוניג** ז"ל, בן 79 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה וארבעה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **יונתן ג'סנר** ז"ל, בן 19 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה וחמישה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.
כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה **נפצעו כ-84 בני אדם** שהיו באוטובוס הנ"ל ובסמוך אליו בעת הפיצוץ.

P 7: 66

**פרט מאה ושישה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם במזיד ושלא כדין נזק כבד לאוטובוס, מ.ר. 9105201, שנסע בקו 4 של "דן" ברחוב אלנבי בתל-אביב וכן גרם נזק לכלי רכב נוספים ולחנויות ובתי עסק שהיו בקרבת מקום הפיגוע המתואר בפרט האישום התשעים ותשעה, ואשר נפגעו כתוצאה מפיצוץ מטען החבלה, אותו ייצר הנאשם.

**פרט מאה ושבעה:** (פ.א. 21011/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 11.10.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002, ברמאללה או בסמוך לכך, ייצר שתי חגורות נפץ לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר, וזאת כפי שתואר בפרט האישום התשעים ותשעה.

2. הנאשם העביר את שתי חגורות הנפץ לידי [redacted] המכונה "צלאח 2", פעיל צבאי בארגון החמאס, אשר דאג להעבירן ל[redacted], כפי שתואר בפרט האישום התשעים ותשעה.

3. לאחר ביצוע הפיגוע המתואר בפרט האישום התשעים ותשעה, [redacted] החליט להוציא לפועל פיגוע התאבדות נוסף באמצעות חגורת הנפץ, אשר אותה ייצר למטרה זו הנאשם.

4. לצורך קידום תכניתו הנ"ל, [redacted] גייס את [redacted] לביצוע פיגוע ההתאבדות המתוכנן.

5. [redacted] נפגש גם עם [redacted], המכונה "[redacted]", והורה לאחרון לאתר מקום מתאים לביצוע פיגוע התאבדות המתוכנן. לאחר מספר ימים, "[redacted]" דיווח כי איתר שני מקומות בתל-אביב המתאימים לביצוע פיגוע ההתאבדות המתוכנן.

6. ביום 11.10.02 "[redacted]" הביא את [redacted] מכפר עראבה לדירת המסתור בא-ראם. [redacted] הסביר ל[redacted] כיצד לובשים וכיצד מפעילים את חגורת הנפץ. [redacted] הלביש על גופו של [redacted] את חגורת הנפץ, אשר אותה ייצר הנאשם.

7. "[redacted]" הסיע את [redacted] לתל-אביב על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן.

8. בסמוך לשעה 20:15, ביום 11.10.02, "[redacted]" הוריד את [redacted] בטיילת החוף בתל-אביב והנחה את האחרון לפוצץ את חגורת הנפץ, שהוא נשא על גופו, במסעדה שיש בה אנשים רבים.

9. [redacted] ניסה להיכנס למסעדה "יוטבתה" הנמצאת ברחוב הרברט סמואל (טיילת תל-אביב), אך המאבטח שהיה במקום הבחין בו, חשד כי מדובר במחבל מתאבד ומנע את

כניסתו פנימה. [redacted] ניסה להימלט מהמקום, אך נתפס לאחר מרדף ובסיוע של מאבטחים נוספים שהגיעו למקום.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל ניסה לגרום בכוונה למותם של אנשים רבים ככל האפשר.

**פרט מאה ושמונה:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2003 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר אימון צבאי לאדם, תושב שכם, אשר נשלח אליו על-ידי [redacted], המכונה "צלאח 1" או "[redacted]", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה.
במהלך האימון האמור הנאשם לימד את האדם הנ"ל לייצר מטעני חבלה, מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.
במהלך האימון הצבאי הנ"ל, הנאשם והאדם הנ"ל היו רעולי פנים.

**פרט מאה ותשעה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2003 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר לידי [redacted], המכונה "צלאח 1" או "[redacted]", ראש "גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, באיזור רמאללה, דיסקטים למחשב ועליהם הוראות לייצור חומרי הנפץ ומטעני החבלה.
[redacted] ביקש מהנאשם לקבל את הדיסקטים הנ"ל לצורך העברתם לפעילי הארגון ג'יהאד אסלאמי פלסטיני, אשר ביקשו ללמוד לייצר חומרי נפץ ומטעני חבלה.

P 7: 67

**<u>עדי התביעה:</u>**

1. [redacted], לח"ק יהודה. [גובה אמרות הנאשם מיום 12.03.03, 13.03.03, 30.03.03, 15.05.03 ומיום 22.05.03 ומגיש תמונות שהוצגו בפני הנאשם ביום 30.03.03 + ציור בכתב-ידו של הנאשם]
2. [redacted], לח"ק יהודה. [גובה אמרת הנאשם מיום 12.05.03]
3. פרוטוקול דיון הארכת המעצר של הנאשם מיום 12.05.03.
4. [redacted], ת.ז. [redacted]. (עצור)
5. [redacted], ת.ז. [redacted] (עצור)
6. [redacted], ת.ז. [redacted]. (עצור) (ת.ת. 976/02)
7. [redacted], ת.ז. [redacted]. (עצור) (ת.ת. 241/03)
8. [redacted] ת.ז. [redacted]. (עצור) (ת.ת. 210/03)
9. [redacted], ת.ז. [redacted]. (אסיר)
10. [redacted], ת.ז. [redacted]. (אסיר)
11. [redacted] ת.ז. [redacted]. (אסיר)
12. [redacted] ת.ז. [redacted] (אסיר)
13. [redacted] ת.ז [redacted] (עצור) (ת.ת. 889/02)
14. [redacted] ת.ז. [redacted]. (עצור) (ת.ת. 888/02)
15. [redacted], [redacted]. (אסיר) (ת.ת. 846/01)
16. [redacted] דרכון ירדני [redacted] (עצורה) (ת.ת. 815/01)
17. [redacted] ת.ז. [redacted] (אסיר) (ת.ת. 344/02)
18. [redacted], ת.ז. [redacted] (עצור) (ת.ת. 444/02)
19. [redacted], ת.ז. [redacted] (עצור) (ת.ת. 946/02)

<u>רשימת העדים הטכניים מתיקי הפ.א. הבאים תימסר על-ידי התביעה, במידת הצורך, במהלך המשפט</u>:

1. 6554/01 ציון
2. 6891/01 מ ת"מ י-ם
3. 10283/01 ציון
4. 1512/02 מוריה
5. 5601/02 ראש לי"צ
6. 2881/02 גלילות
7. 3975/02 לוד
8. 9913/02 ר חובות
9. 1197/02 שלם
10. 9638/02 ראשל"צ
11. 19284/02 ירקון
12. 21011/02 ירקון

מיכאל קוטליק, סרן
תובע צבאי

תאריך: 29.05.2003
סימוכין: 380-03