במהלך האימון האמור האנשים לימדו את שני האנשים הנ"ל ליצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגנים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.

בסוף האימון האנשים העבירו לשני האנשים הנ"ל שני תיקים עם חומרים שונים המשמשים ליצור חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות ליצורם.

## פרט שלושים ושבעה:

**מהות העבירה:** אימונים צבאיים שלא כהותר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, בסמוך לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אמר לאמן צבאי בנשק או במלאכת הנשק הנ"ל, תכונתו או מערכות מפעלות צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי _____, אשר הובא לדירה על-ידי _____.

המכונה "צלאח 2", פעיל צבאי בארגון התמאס. ליצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי. כמו כן, הנאשם העביר ל _____ אימון תיאורטי ומעשי בפירוק והרכבת של תמיד עוזי ואקדח 14.

בסוף האימון הנאשם העביר ל _____ תיק עם חומרים שונים המשמשים ליצור חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות ליצורם. כינוי "עבדאללה 5", וזאת מכיוון שוח היה האדם החמישי, אותו לימד ליצר את חומרי הנפץ ומטעני החבלה.

## פרט שלושים ושמונה: (פ.א. 10283/01, ציון)

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון), (מס' 378), התשי"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במהלך חודש נובמבר 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, ייצר חומר נפץ מסוג "אום אלעבד" (TATP).

2. מחמאר הנפץ הנ"ל, הנאשם ייצר שלושה מטעני חבלה. את מטען החבלה הראשון הנאשם הכניס אל תוך מארז מתכתי. את מטען החבלה השני הנאשם הכניס אל תוך תיק בד שחור. את מטען החבלה השלישי הנאשם הכין בצורה של חגורת נפץ. בנוסף לחומר הנפץ הנאשם הכניס למטעני החבלה רסס, תמורכב ממסמרים ואומים. בשלושת מטעני החבלה הנ"ל הנאשם הכניס מנגנוני הפעלה, כאשר מטעני החבלה שהורכבו בחגורה ובמארז תיק כאשר היה מתוכננן על-ידי לחיצה על מפסק ההפעלה ואילו מטען החבלה שהוהתב תוך תיק בד שחור הופעל באמצעות שעון עצר. בשלושת מטעני החבלה הנ"ל הנאשם תוסיף מנגנון ומסמרים על מנת להגביר את עוצמת הפגיעות של מטעני החבלה. כמו כן, הנאשם הכניס לשלושת מטעני החבלה חומר דעיל, גם זאת על מנת להגביר את המיטענים לקטלניים יותר.

3. _____, המכונה הנאשם ייצר את מטעני החבלה הנ"ל לבקשתו של "צלאח 2", פעיל צבאי בארגון התמאס. _____ פנה אל הנאשם על-פי בקשתו של _____, המכונה "צלאח 1" או _____, מפקד הזרוע הצבאית של ארגון התמאס באיזור רמאללה.

14

ת.ה 03-550

P 7:41

4. הנאשם מסר את שלושת מטעני החבלה הנ"יל ל"יצלאח 2" על מנת שהאחרון ידאג להעבירם לפעילי ארגון החמאס, אשר יבצעו באמצעות מטעני החבלה הללו פיגועי הוצת בכוונה לגרום למותם של אנשים רבים ככל הניתן.

5. "יצלאח 2" הנ"ל, בעצמם או באמצעות אנשים אחרים, העבירו את מטעני החבלה הנ"ל לידי █████████ ( █████████ ) וכן הסמינו את מטען החבלה, אשר הוטמן בתיק ב־ שחור, בתוך רכב מסוג אופל קדט, מ.ר. 4774987.

6. ביום 01.12.01, בסמוך לשעה 23:36, בכניסה מכיוור ציון לרחוב בן יהודה בירושלים או בסמוך לכך, מתוך מתוכ מתוכבד █████████ הפעיל את מטען החבלה, אשר יוצר על־ידי הנאשם והוטמן בתוך מארו מחשב כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטעון החבלה הנ"ל התפוצץ.

7. כאותו היום, בסמוך לשעה הנ"ל, בצומת הרחובות בן־יהודה - לוצ'י בירושלים או בסמוך לכך (מרחק של מטרים ספורים ממקום פיצוץ המטען הראשון), מתוך מתוכבד █████████ הפעיל את מטעון החבלה, אשר יוצר על־ידי הנאשם בצורה של חגורת נפץ כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטעון החבלה הנ"ל התפוצץ.

8. באותו היום, מספר דקות לאחר שׁשׁני המתאבדים המתאבבים הנ"ל הפעילו את מטעני החבלה הנ"ל, הופעל מטעון החבלה השלישי שׁוֹצר על־ידי הנאשם והוסתר בתוך תיק ב־ שחור כאמור לעיל, מטעון החבלה השׁלישׁי הופעל ברכב מסוג אופל קדט, מ.ר. 4774987, אשר חנה ברחוב הרב קוק בסמוך לפינת רחוב יפו בירושלים (מרחק של כמה עשרות מטרים ממקום פיצוצם של שׁני מטעני החבלה הנ"ל). מטעון החבלה הנ"ל הופעל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

9. כתוצאה מפיצוץ שלושת מטעני החבלה הנ"ל, אשר בוצעו על־ידי פוצצו כפי שתואר לעיל, נהרגו עשרות ונפצעו כ־191 בני־אדם, כפי שיפורט בפרטי האישום הבאים.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של יוסף אעוזר ז"יל, בן 18 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה במרכז ירושלים כפי שתואר לעיל.

**פרט שלושׁים ותשעה :** (פ.א. 10283/01 ציון)

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 51א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל־1970, וסעיף 14א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מסי 225), תשכ"ח־1968.

**פרטי העבירה :** הנאשם הנ"ל, הן באיזור ו/הן במהצרה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במעשׂיו המתוארים לעיל, במעשׂיו האמור, במקום האמור ובמקום פרט האישׁים השלושׁים ושמונה, גרם בכוונה למותו של אסף אביטן ז"ל, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שׁהוּפֿעלוּ כפי שתואר בפרט האישׁים השׁלושׁים ושמונה.

15

ת.ת. 356/60

<u>פרט ארבעים:</u> (פ.א. 10283/01 ציון).

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: בפרט האישום השלושים ושמונה, כמעשיו הנאשם הנ"ל, במותו האמור, במקום האמור בפרט האישום השלושים ושמונה, בן 19 במותו, המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של גיא וקנין ז"ל, המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של גיא וקנין ז"ל, כפי שתוארו בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ואחד:</u> (פ.א. 10283/01 ציון).

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: בפרט האישום השלושים ושמונה, כמעשיו הנאשם הנ"ל, במותו האמור, במקום האמור בפרט האישום השלושים ושמונה, בן 20 במותו, המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של יוני קורנגוב ז"ל, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושניים:</u> (פ.א. 10283/01 ציון).

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: בפרט האישום השלושים ושמונה, כמעשיו הנאשם הנ"ל, במותו האמור, במקום האמור בפרט האישום השלושים ושמונה, בן 17 במותו, המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של יעקב ישראל דנונו ז"ל, בן 17 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושלושה:</u> (פ.א. 10283/01 ציון).

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: בפרט האישום השלושים ושמונה, כמעשיו הנאשם הנ"ל, במותו האמור, במקום האמור בפרט האישום השלושים ושמונה, בן 20 במותו, המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של מיכאל דהאן ז"ל, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום השלושים ושמונה.

16

<u>פרט ארבעים וארבעה:</u>    (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעולד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של גולן תורג'מן ז"ל, בן 15
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו. כפי שתואר בפרט האישום השלושים
ושמונה.


<u>פרט ארבעים וחמישה:</u>    (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של אדם וינשטיין ז"ל, בן 14
שנה במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו. כפי שתואר בפרט האישום
השלושים ושמונה.


<u>פרט ארבעים ושישה:</u>    (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של משה ידיד-לוי ז"ל, בן 19
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו. כפי שתואר בפרט האישום השלושים
ושמונה.


<u>פרט ארבעים ושבעה:</u>    (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של נ'ר חמצדי ז"ל, בן 19 במותו,
אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו. כפי שתואר בפרט האישום השלושים ושמונה.

17

**פרט ארבעים ושמונה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ם-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, חן באיזור ותן כוחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: הנאשם הנ"ל, במלוא האמור, במקום האמור בפרט חמישים ושלושים. ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, ניסה לגרום למותם של אזרחים רבים, ככל האפשר כתוצאה מפיצוץ מטעני-החבלה שהופעלו בפרט האישום השלושים ושמונה, ונפגעו 191 בני אדם.

**פרט ארבעים ותשעה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ם-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, חן באיזור וחן מוחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו: הנאשם הנ"ל, במלוא האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם נזק כבד לבניינים ולבתי העסק הממצאים באיזור הרחובות בן-יהודה, לונץ, יפו, חרב קוק ולכלי רכב, אשר היו במקום, אשר בו הופעלו שלושה מטעני החבלה, כפי שתואר בפרט האישום השלושים ושמונה.

**פרט חמישים:**

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשל"ם-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-ירייה, תחמושת, מצצה, חפץ נפיץ או מבעיר, ללא תעודות היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של ████████, ראש "התנזים" של השומרון, ייצר שני מטעני חבלה, אשר בו הופעלו לייצר עבורו שני מטעני חבלה על מנת לעשות בהם שימוש אם כוחות צה"ל ייכנסו לרמאללה.

**פרט חמישים ואחד:**

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשל"ם-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-ירייה, תחמושת, מצצה, חפץ נפיץ או מבעיר, ללא תעודות היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, ייצר שלושה מטעני חבלה, אשר היו מוסווים לאבנים. מוסווים בקרטונים של מיץ, וכן ארבעה מטעני חבלה, אשר היו מוסווים לאבנים. ████████, ████████, הממונה "ייצלאח ב'" לידי מטעני התבלה הנ"ל העביר על-ידי ████████, הממונה "ייצלאח ב'", שהוא ראש הזרוע הצבאית של ארגון התמאס באיזור רמאללה.

**פרט חמישים ושניים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי ███████████████ (רומכנה ███), אחד מראשיו הארגון "יזדדיי חללי אלאקצאי", רוסיר קלציניקוב עם שתי מחסניות מלאות בכדורים וכן אקדח 14 עם מחסניות מלאה בכדורים. הנאשם ביצע את האמור לעיל על-פי בקשתו של ██████████ פעיל צבאי בארגון התנאמס.

לאחר רכישת כלי הנשק הנ"ל, הנאשם מסרם לידי ███████ הנ"ל.

**פרט חמישים ושלושה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2001 או בסמוך לכך, עשה עבודות כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו: הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם אדם פלוני. הנאשם נפש את האדם הנ"ל על-פי בקשתו של ████████████, המכונה "אלאחא 1" או ███████████, ראש "יזדדיי עז א-דין אל קסאם", הורוג תצבאית של ארגון התנאמס, באיזור רמאללה. ███ מסך לאנשם כי האדם הנ"ל צריך לצאת לביצוע פיגוע התאבדות ובידק כי הנאשם יבדוק אם האדם הנ"ל איתו בדעתו לבצע פיגוע התאבדות. הנאשם הסכים ושוחח עם האדם הנ"ל. הנאשם התרשם כי האדם הנ"ל איתו בדעתו זאת לאור העובדה כי האדם הנ"ל מבקש, באמצעות בצוע פיגוע התאבדות, לטהר את שם אביו, שנחשד בשיתוף הפעולה עם כוחות הביטחון הישראליים. הנאשם מסר את מסקנותיו הנ"ל ל███████, אשר השיב כי לא יוציא את האדם הנ"ל לביצוע פיגוע התאבדות, שכן אינו מוכן שאדם יבצע פיגוע התאבדות רק על מנת לטהר את שמו.

**פרט חמישים וארבעה:** (פ.א. 1512/02 מוריה):

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור ותן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם האחראי עליו בארגון התנאמס, ██████████ המכונה "אלאחא 1" או ███████████████ ביקש כי הנאשם ייצר חגורת נפץ עבור מחבל מתאבד, על מנת שהאחרון יבצע פיגוע התאבדות בכוונה למותם של אנשים רבים בכל הניתן.

2. הנאשם חסכים לבקשתו של ██████. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מתחגורה מבד דמוי עור, עלי חודדקו ברגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל.

3. לאחר שהנאשם סיים להכין את חגורת הנפץ הנ"ל, הנאשם העבירה באמצעות ████████████, המכונה "אלאחא 2", אל ███████ וזאת לצורך התוצאה לפועל של פיגוע ההתאבדות המתוכנן.

19

ת.ת. 59dcda

P 7: 46

4. ‏██████ לא גם פנה (מכונה ██████) וביקש כי
‏██████ הכנה, ██████ את מינה האחרון
‏מקום מתאים לביצוע פיגוע התאבדות.

5. ‏██████ עם נפגש ‏██████ לאתר מקום בישראל המתאים לביצוע פיגוע
‏התאבדות. לאתר מספר ימים ‏██████ פנה אל ‏██████ ומסר כי אתר מקום
‏המתאים לביצוע פיגוע התאבדות. המתוכנן והוא – בית-קפה "מומנט", הנמצא ברחוב
‏עזה בירושלים. ‏██████, ביחד עם ‏██████ תכנן פיגוע התאבדות. האשם דיווח
‏לייש");██████ אודות המקום שאותר על-ידי "אבן סעיד" וחבריו.

6. ‏ביום שבת, 09.03.02, בסביבות השעה 20:00, ברמאללה או בסמוך לכך, ‏██████ את
‏נפגש עם ‏██████ ועם ‏██████ לביש חגורת נפץ. ‏██████ מנת ש██████ את
‏מקום המפגש למשך כחצי שעה על ‏██████, אשר הוכנה על-ידי האשם, כאמור לעיל,
‏הלביש על ‏██████ את חגורת הנפץ,
‏לצורך ביצוע פיגוע התאבדות.

7. ‏לאחר מכן, ‏██████, אשר נשא על
‏גופו את חגורת הנפץ הנ"ל, לתחנת מוניות "קלנדיה" ברמאללה והעלו את האחרון לרכב
‏הסעה שמתג לבית חניא. ‏██████ נסע ביחד לבית
‏חניא ברכב הסעה. ‏██████ הוביל את ‏██████ למקום
‏המפגש, אשר אותו קבע האשם עם "██████".

8. ‏██████ נפגש עם המחבל המתאבד, ולאחר מכן, ביחד
‏עם ‏██████ הסיע את המחבל המתאבד לירושלים. "██████"
‏הוביל את ‏██████ לבית-הקפה "מומנט" הנמצא ברחוב עזה בירושלים.

9. ‏בסמוך לשעה 22:30 ביום 09.03.02 או במועד הסמוך לכך, ‏██████ אשר נשא על
‏גופו את חגורת הנפץ, אותה ייצר למטרה זו האשם, נכנס אל תוך בית-הקפה "מומנט",
‏אשר היה באותה שעה הומה בני אדם, ותפעיל את חגורת הנפץ הנ"ל בכוונה לגרום למותם של
‏אנשים רבים ככל האפשר.

10. ‏במעשיו המתוארים לעיל, האשם הנ"ל גרם בכוונה למותם של אברהם רחמים ז"ל, אשר
‏נגרם כתוצאה מפיצוץ חגורת הנפץ בבית-קפה "מומנט" כפי שתוארו לעיל.

## פרט חמישים וחמישה : (פ.א. 1512/02 מוריה)

מהות העבירה: גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
‏והשומרון) (מס' 378), התש"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה
‏והשומרון) (מס' 225), התשכ"ח-1968.

פרטי העבירה: האשם הנ"ל, הן באזור ומן מתוארו לו, ביום 09.03.02 או במועד הסמוך לכך,
‏גרם בכוונה למותו של אחר, דהיינו:
‏האשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
‏המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של ניד בורהוב ז"ל, אשר נגרם
‏כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתוארו בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושישה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, בעשישו
המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של לימור בן שוהם ז"ל, אשר
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושבעה:</u> (פ. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של דין אימוני ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ושמונה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, בעשישו
המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של דנית דגן ז"ל, אשר נהרגה
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט חמישים ותשעה:</u> (פ. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו
המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של אורי פליקס ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

ת.ת. 383/03

P 7: 48

<u>פרט שישים:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א), לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשכ"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כן באיזור, והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של בוינו לרנר ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ואחד:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשכ"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כן באיזור וכן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של טלי אליהו ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ושניים:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשכ"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של לבנת דב"ש ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>פרט שישים ושלושה:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א), לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשכ"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של אוריה אחרזב ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

22

<div dir="rtl">

פרט שישים וארבעה:   (פ.א. 1512/02 מוריה)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של נתנאל קובני ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

פרט שישים וחמישה:   (פ.א. 1512/02 מוריה)

מהות העבירה: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, ניסה לגרום למותם של אזרחים רבים, מכל האפשר.
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה, נפצעו 65 בני אדם.

פרט שישים ושישה:   (פ.א. 1512/02 מוריה)

מהות העבירה: היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם נזק כבד לבית-קפה "מומנט" הנמצא ברחוב עזה בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום החמישים וארבעה.

פרט שישים ושבעה:   (פ.א. 5601/02 ראש"צ)

מהות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

פרטי העבירה: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1.   הנאשם הנ"ל, בסוף חודש אפריל 2002 - חודש מרץ, ברמאללה, נפגש עם ████████. המכונה "אבו אללה 2", פעיל צבאי בארגון החמאס.

2.   "אבו אללה 2" מסר לנאשם כי ████████, המכונה "אבו אללה 2" או ████, מפקד זרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר חגורת נפץ ותיק נפץ לצורך ביצוע פיגוע התאבדות. הנאשם הסכים לייצר את שני מטעני החבלה

</div>



וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. הנאשם יצר, ברמאללה או בסמוך לכך, תגורת נפץ. חגורת הנפץ הנ"ל חורכבה מחגורה מבד דמוי עור, עלי תודבקו ברגים ובבקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ"ל. חגורת הנפץ היתה דומה לזו שהנאשם יצר עבור הפלוג בבית-כפה "מומנטי" בירושלים, המתוארת בפרק הנאשם החמישים וארבעה.

4. כמו כן, הנאשם יצר, ברמאללה או בסמוך לכך, מטען נפץ, אשר הורכב מבקבוקי שמפו מלאים בחומר נפץ. אשר הוכנסו אל תוך תיק. בבצע שחור. הנאשם הכניס אל תוך תיק התיק הנ"ל ברגים לצורך הגברת עוצמת הפגיעה של מטען החבלה. הנאשם הרכיב בתיק האמור מנגנון הפעלה למטען החבלה, המורכב ממשען עצר.

5. הנאשם מסר את חגורת הנפץ הנ"ל ביחד עם תיק הנפץ הנ"ל ליצא "2", על מנת שהאחרון יעביר את תגורת הנפץ ואת הטיק ליד אברהים חמאד וזה יעבירם לידי המחבל המתאבד.

6. בחודש אפריל 2002 ████ פנה אל ████ (מכונה ██") ומסר לאחרון כי יש צורך לבצע פיגוע התאבדות בכוונה למותם לגרום של אנשים רבים ככל האפשר. ████ מסר ל████ כי יש לו אדם שמוכן לבצע את פיגוע התאבדות.

7. לאחר מספר ימים, ברמאללה או בסמוך לכך, הכיר ל████ ████ את (החבל: המחבל המתאבד), אשר היה אמור לבצע את פיגוע התהבדות המתוכנן. בהמשך הפגישה סוכם כי לאחר מספר ימים יבוא ████ את המתאבד המואבד לפגישה עם ברמאללה והאחרון ייקח אות המחבל המתאבד לביצוע פיגוע התאבדות המתוכנן.

8. ביום 07.05.02, ████ נפגש עם המחבל המתאבד ברמאללה לפי הסיכום הנ"ל. על-פי בקשתו של ████ ליווה את המחבל המתאבד מרמאללה לבפאם. בצפא השוניים הנ"ל נפגשו עם ████ ונסעו ביחד לבית נגאן. שם פותח עראמצאן מסר לידי המחבל המתאבד את חגורת הנפץ, אשר אותה יצר הנאשם כאמור לעיל ואשר הועברה לידי ████ על-ידי ████. הלביש את חגורת הנפץ הנ"ל על גופו של המחבל המתאבד וכן נתן לאחרון תיק עם מטען נוסף, אשר גם אותו ייצר הנאשם כאמור לעיל ואשר הועבר לידי ████ על-ידו.

9. ████ הסיע ברכבו את המחבל המתאבד עם מטען חבלה הנ"ל ועם תגורות הנפץ הנ"ל מבית עגאן לבית-איכסא.

10. בבלת איכסא או בסמוך לכך, הנאשם והמחבל המתאבד פגשו ב████ המכונה ████, אשר לקח את המחבל המתאבד לביצוע הפיגוע המתוכנן.

11. באותו הערב, ████ " ביחד עם ████ הסיע את המחבל המתאבד לראשון לציון ושם ליוו אותו עד למעדון ישיפ'פע-קלאב' הממצא ברחוב סחרוב 1 באיזור התעשייה התחדש. אשר אותר קודם לכן על-ידי ████ " כפוקום מתאים ████████ הצביעו למחבל המתאבד על המועדון האמור והסבירו לו כי זה המקום שבו עליו לבצע את פיגוע ההתאבדות המתוכנן.

12. בסמוך לשעה 22:50, ביום 07.05.02 או במועד הסמוך לכך, המחבל המתאבד נכנס למועדון הנ"ל והפעיל את חגורת הנפץ ואת מטען חבלה הנוסף, אשר אותם ייצר הנאשם למטרה זו, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

13. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של רחמים קמחי ז"ל, אשר נהרג כתוצאה מפיעול מטעני החבלה כפי שתואר לעיל.



24

ה ת 380-03

<div dir="rtl">

**פרט שישים ושמונה:** (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של רפאל חיים ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שישים ותשעה:** (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של עות טרמפורוש ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים:** (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, גרם בכוונה למותו של אברהם ביזי ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ואחד:** (פ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של אתי בבלאו ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

</div>

ת.פ 1093/02

P 7: 51

__פרט שבעים ושניים:__ (פ.א. 5601/02 ראשל"צ)

__מהות העבירה:__ גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

__פרטי העבירה:__ הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של יצחק בלבאו ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום השישים ושבעה.

__פרט שבעים ושלושה:__ (פ.א. 5601/02 ראשל"צ)

__מהות העבירה:__ גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

__פרטי העבירה:__ הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של ישראל שיקאר ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום השישים ושבעה.

__פרט שבעים וארבעה:__ (פ.א. 5601/02 ראשל"צ)

__מהות העבירה:__ גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

__פרטי העבירה:__ הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של שושנה מגמרי ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום השישים ושבעה.

__פרט שבעים וחמישה:__ (פ.א. 5601/02 ראשל"צ)

__מהות העבירה:__ גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

__פרטי העבירה:__ הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של שארוק ריסאן ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתוארו בפרט האישום השישים ושבעה.

<div dir="rtl">

**פרט שבעים ושישה:** (פ.א. 5601/02) ראשל"צ.

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור וזהן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של נזאת חינאווי ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ושיבעה:** (פ.א. 5601/02) ראשל"צ.

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור וזהן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של ניר לנקסטין ז"ל, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ושמונה:** (פ.א. 5601/02) ראשל"צ.

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור וזהן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של דיינה מלכה בוטון ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ותשעה:** (פ.א. 5601/02) ראשל"צ.

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של דלית מסה ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

</div>

27

**פרט שמונים: (פ.א. 5601/02 ראשל"צ)**

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של פנינה חקרי ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שמונים ואחד (פ.א 5601/02 ראשל"צ)**

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותה של עדנה כהן ז"ל, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שמונים ושניים: (פ.א. 5601/02 ראשל"צ)**

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותה של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים בכל האפשר, כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה, ופצע 59 בני אדם.

**פרט שמונים ושלושה: (פ.א. 5601/02 ראשל"צ)**

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, חיבל ברכוש אם מנע בו במזיד תשלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם נזק כבד למועדון "שפילד-קלאב" הנמצא ברחוב סתרוב 1 בראשון לציון וכן לכל הבניין האמור, אשר בו הופעלו מטעני החבלה, כפי שתואר בפרט האישום השישים ושבעה.

28

P 7: 64

<u>פרט שמונים וארבעה:</u>    (ת.פ.א. 2881/02 גלילות)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א)(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 23.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1.   הנאשם הנ"ל, בחודש מאי 2002, ברמאללה או בסמוך לכך, נפגש עם ▆▆▆▆▆▆▆▆, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2.   "צלאח 2" מסר לנאשם כי ▆▆▆▆▆, המכונה "צלאח 3" או מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה אשר "יודבק" אל ברזל ואותו לצורך ביצוע פיגוע תופת. הנאשם הסכים לייצר את מטען החבלה ואת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3.   בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר ניתן "להדביקו" לברזל באמצעות המגנטים, אותם הרכיב הנאשם על מטען החבלה, ואשר מופעל באמצעות מכשיר טלפון סלולרי.

4.   הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2" לצורך ההוצאה לפועל של פיגוע התופת המתוכנן. "צלאח 2" העביר את מטען החבלה לידי ▆▆▆▆▆▆▆.

5.   בחודש מאי 2002 נפגש עם ▆▆▆▆▆▆ (המכונה "▆") וסיכם לאחרון כי ברצונו לבצע פיגוע תופת ולפוצץ מיכלית דלק, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות האמור, מתחייד זימן ערמונא נפגש עם ▆▆▆▆▆▆, המכונה ▆, וסיפר לו אודות תכנונו של לבצע פיגוע תופת. ▆▆▆▆▆ אמר כי יבדוק את העניין ויראה מה-ניתן לעשות.

6.   לאחר מספר ימים, ▆▆▆▆▆ נפגש שוב עם ▆▆▆▆▆. "▆▆▆" מסר כי חוא וחברתו איתרו מיכלית דלק חוסעת באופן קבוע לאתר "▆▆" גלילות.

7.   ביום 22.05.02, ברמאללה ודיווח לאחרון אודות מיכלית הדלק הנ"ל. ▆▆▆▆▆ נפגש עם ▆▆▆▆▆▆▆ ביקש להיפגש עם ▆▆▆▆▆ בעוד מספר שעות באותו המקום.

8.   לאחר מספר שעות השניים נפגשו שוב. ▆▆▆▆ מסר לידי ▆ את מטען חבלה, אשר אותו ייצר הנאשם כאמור לעיל, כמו כן, מסר לו ▆▆ מכשיר טלפון סלולרי, אשר ממנו יש להתקשר אל המכשיר המחובר למטען החבלה על מנת להפעילו.

9.   ▆▆▆▆ מסר את מטען החבלה הנ"ל לידי ▆▆▆▆▆, אשר העבירו לצפא. ▆▆▆▆▆▆ הגיע לצפא ומשם נסע במכוניתו, ביחד עם ▆▆▆▆▆, לבית איכסא.

10.  ▆▆▆▆ נפגש שם עם "▆▆▆▆▆" וביחד עם ▆▆▆▆▆ מסר לידי ▆▆▆ את מטען החבלה הנ"ל עם מכשיר טלפון סלולרי המחובר אליו וכן את מכשיר הטלפון הסלולרי הנוסף.

11.  כשעתים הבוקר המוקדמות למחרת, יום 23.05.02, "▆▆▆▆" נסע לחולון עם ▆▆▆ בשרשותם מטען חבלה הנ"ל. בחולון, ▆▆▆▆ הצמיד את מטען החבלה הנ"ל באמצעות מגנט אל חלקו הקדמי תחתמ) של מיכל הדלק המתודרת על מיכלית דלק, ה.ר. 2622700, מיכלית הדלק הנ"ל אותרה קודם לכן כיעד לביצוע פיגוע תופת על-ידי "▆". "▆▆▆▆▆" המתינו ברכבו עד



שהגיע נהג מיכלית הדלק לאחר מכן נסע אחרי מיכלית הדלק הנ"ל. עד לאחר "פי
גילעדי". לאחר שי"אבו סעדי" וידא כי מיכלית הדלק, אשר אליה חובר מטען החבלה הנ"ל,
נכנסה אל תוך האתר "פי גילעדי", הפעיל את מטען החבלה הנ"ל, אשר אותו
ייצר הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים
רבים ככל האפשר.

12.   מטען החבלה הנ"ל התפוצץ וגרם נזק כבד למיכלית הדלק הנ"ל. רק בנס איש לא נפגע.

**פרט שמונים וחמישה:** (פ.א. 3975/02 לוד)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.06.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותם של אחר, דהיינו:-

1.   הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם
      ▮▮▮▮▮, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2.   "צלאח 2" מסר לנאשם כי ▮▮▮▮▮ המכונה "צלאח ג'" או ▮▮▮▮▮,
      מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען
      חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה
      לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת
      על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל
      האפשר.

3.   בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון
      סלולרי.

4.   הנאשם מסר את מטען-החבלה הנ"ל לידי "צלאח 2". "צלאח ג'" העביר את מטען החבלה
      הנ"ל לידי ▮▮▮▮▮, המכונה "צלאח ג'" או ▮▮▮▮▮", ראש הזרוע
      הצבאית של ארגון החמאס באיזור רמאללה.

5.   ▮▮▮▮▮ פנה אל מוחמד ▮▮▮▮▮ (מכונה ▮▮▮▮▮) והציע לבצע פיגוע
      תופת באמצעות הנחת מטען חבלה על פסי רכבת. בתוך מדינת ישראל וזאת, מתוך כוונה
      לגרום למותם של אנשים רבים ככל האפשר.

6.   ▮▮▮▮▮ פנה אל ▮▮▮▮▮, המכונה ▮▮▮▮▮, וביקש ממנו
      לבדוק אפשרויות של ביצוע פיגוע תופת על פסי הרכבת בישראל. לאחר זמן מה, "
      פנה אל ▮▮▮▮▮ ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן."
      ערמאן דיווח על כך ל▮▮▮▮▮.

7.   לאחר זמן מה, מחנה' ערמאן נפגש ברמאללה עם ▮▮▮▮▮, אשר מסר לו את מטען
      החבלה, אשר אותו ייצר הנאשם כאמור לעיל.

8.   ביום 29.06.02 או בסמוך לכך, העביר את מטען החבלה הנ"ל ביחד עם
      מכשירי הטלפון הסלולריים לידי ▮▮▮▮▮" והסביר לאחרון כיצד מפעילים את מטען
      החבלה הנ"ל.

9.   בשעות הערב באותו היום, ▮▮▮▮▮ ביחד עם ▮▮▮▮▮ נסע ללוד והניח את
      מטען החבלה הנ"ל על פסי הרכבת בלוד במקום שאותו סימן כן כמתאים לביצוע הפיגוע
      המתוכנן על-ידי ▮▮▮▮▮ ו▮▮▮▮▮. לאחר מכן, "▮▮▮▮▮" ו"
      ▮▮▮▮▮ חזרו לירושלים.

30

10. בשעות המוקדמות של הבוקר למחרת, 30.06.02, נסעני ללוד. ████ ו████ ████
    הממסק ליד מטען חתבלה שהונח כאמור לעיל על פסי הרכבת. בסמוך לשעה
    07:00, ברגע ש████ הבחין ברכבת המתקרבת למקום האמור, הוא הוחיג ████
    "████", אשר הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה
    לגרום למותם של אנשים רבים ככל האפשר.

11. מטען חחבלה הנ"ל התפוצץ.

12. כתוצאה מפיצוץ מטען החתבלה הנ"ל נפצעו 4 בני אדם. כמו כן נגרם נזק לקטר הרכבת
    ולמסילה הברזל.

**פרט שמונים ושישה: (ת.פ.א. 9913/02 רחובות)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, תן באיזור ותן מחוצה לו, ביום 21.07.02 או במועד הסמוך לכך,
ניסה לגרום למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם
   ████ ████ ████, הכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי ████ ████, הממכונה "צלאח 1" או
   מפקד הזרוע הצבאית של ארגון החמנאס באיזור רמאללה, מבקש מהנאשם ליוצר מטען
   חבלה הממופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פגוע תופת בכוונה
   לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים ליוצר את מטען החבלה הנ"ל וזאת
   על מנת שישותופעו בו לצורך ביצוע פיגוע, תופת בכוונה לגרום למותם של אנשים רבים ככל
   האפשר.

3. בעקבות הבקשה האמורה, הנאשם יוצר מטען חבלה, אשר מונעל באמצעות מכשיר טלפון
   סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה
   הנ"ל לידי ████ ████, הממכונה "צלאח 1" או ████, ראש הזרוע
   הצבאית של ארגון החמאס באיזור רמאללה.

5. פנה אל ████ ████ (ממכונה "████") והצעע לבצע פיגוע
   תופת נוסף באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך
   כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. פנה אל ████ ████, הממכונה "████", ובקש ממנו
   למצוא מקום לביצוע פיגוע נוסף על פסי הרכבת בישראל. לאחר זמן מה, ████
   פנה אל ████ ████ ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן.
   דיווח על כך לאברהים האמור.

7. לאחר זמן מה, ████ נפגש ברמאללה עם ████, אשר מסר לו את מטען
   החבלה, אשר אותו יוצר הנאשם כאמור לעיל לצורך התהוצאה לפועל של הפיגוע המתוכנן.

8. ביום 20.07.02, ████ מסר את מטען החבלה הנ"ל ל████
   ובקשו מהאחרון לחעבירו לצפת. לאחר מכן, ████ הגיע לצפת ונפגש שם עם ████
   ████ משם, השניים נסעו ביחד ביתו לבית איכסא.

9. בבית איכסא, ████ ו████ העבירו את מטען החבלה הנ"ל ביחד עם
   מכשירי הטלפון הסלולריים לידי ████ ████

31                                                                    ת.ת. 03-0816

10. באותו הלילה; ▮▮▮▮▮▮▮▮, ביחד עם ▮▮▮▮▮▮▮▮ (ו▮▮▮▮▮▮, נסעו לאיזור רחובות ותכננו את מטען החבלה הנ"ל על פסי הרכבת בסמוך לתחנת רחובות, ליד כפר ▮▮▮▮▮▮▮, מקום שנבחר קודם לכן על-ידי ▮▮▮▮▮▮▮ ו▮▮▮▮▮▮ לאחר מכן השלושה חזרו לירושלים.

11. למחרת, 21.07.02, בשעות הבוקר חקר המוקדמות, ▮▮▮▮▮▮▮▮ נסעו למקום שבו הונח מטען החבלה הנ"ל. בסמוך לשעה 07:30, ▮▮▮▮▮▮ הפעיל את מטען חבלה הנ"ל בכוונה לגרום למותם של אנשים רבים בכל האפשר. לאחר שנשאו עצמאי דיווח לו באמצעות מכשיר טלפון סלולרי כי רכבת מגיעה למקום שבו הונח מטען החבלה.

12. מטען החבלה הנ"ל התפוצץ, כתוצאה מהיפוצו מטען החבלה נפצע אדם אחד. כמו כן, נגרם נזק לקטר הרכבת ולמסילת הברזל.

### פרט שמונים ושבעה: (ת.א. 1197/02 שלם)

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, תוך באיזור יהו מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יולי 2002, ברמאללה או בסמוך לכך, נפגש עם ▮▮▮▮▮▮▮▮▮▮▮▮▮, המכונה "אלאחה ל", פעיל צבאי בארגון החמאס.

2. "אלאחה ל" מסר לנאשם כי ▮▮▮▮▮▮▮▮▮▮▮; המכונה "אלאחה ל" או "▮▮▮▮ ל", מקורו הדזרע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם ליצר מטען חבלה.המנצחר בתוך תיק וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים בכל האפשר. הנאשם הסכים ליצר את מטען החבלה וזאת על מנת שיותנשתו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים בכל האפשר.

3. בעקבות הבקשות האמורה, הנאשם יצר מטען חבלה, אשר הורכב מסיכל שמפו גדול מלא בחומר נפץ, אשר הוסתר בתוך תיק שחור קשיח מבד (זמק לתיוק "ג'יימס בונד"). כמו כן, הנאשם מילא את המטען הנ"ל באזמים לצורך הגברת עצמת הפגיעה של המטען. על-פי בקשתו של "אלאחה ל", הנאשם הרכיב למטען החבלה הנ"ל מנגנון הפעלה אלחוטי, כך שמטען החבלה היה מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל וכן שלושה מיכלי שמפו נוספים, מלאים בחומר נפץ, לידי "אלאחה ל".

5. "אלאחה ל" העביר את מטען החבלה הנ"ל לידי ▮▮▮▮▮▮▮▮, המכונה "אלאחה ל" או ▮▮▮▮▮▮▮▮▮▮", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

6. ▮▮▮▮▮▮ פנה אל ▮▮▮▮▮▮▮▮ (המכונה "▮▮▮▮ ל) וביקש לאתר מקום בירושלים שבו ניתן לבצע פיגוע תופת בכוונה לגרום למותם של אנשים רבים בכל האפשר. ▮▮▮▮▮▮▮▮▮▮▮▮ פנה אל ▮▮▮▮▮▮▮, המכונה "▮▮▮▮▮▮" וביקש מהאחרון לאתר מקום מתאים לביצוע פיגוע תופת.

7. לאחר מספר ימים, ▮▮▮▮▮▮ מסר ל▮▮▮▮▮▮▮ כי איתר מקום מתאים לביצוע פיגוע הממוקם והוא האוניברסיטה העברית בירושלים, קמפוס הר-הצופים. דיווח אודות המקום שאותר ל▮▮▮▮▮▮

32

8. לצורך ביצוע פיגוע התופת המתוכנן, ████ את מטען ████ :מסר █ את מטען התופת, אשר אותו יצר הנאשם כאמור לעיל. ████ חוסיף אל שמיען החבלה האמור את שלושת בקבוקי שמפו, המלאים בחומר נפץ, אותם קיבל יצלאח ב'י ממנהאשם.

9. לאחר מכן, ████ נסע ביחד עם ████ לבית איבסא במסרה להעביר את מטען החבלה הנ'ל לי ████ '' על מנת שאחרון ביחד עם חברים יבצע באמצעותו את פיגוע התופת המתוכנן.

10. בבית איבסא ████ ו ████ השניים מסרו לידי ████ 'י את מטען החבלה הנ'ל יחד עם שני מכשירי טלפון סלולריים, כאשר מכשיר אחד היה מחובר למטען החבלה ושימש כמנגנון הפעלה.

11. ביום 28.07.02, ביחד עם ████ ,'' העבירו את מטען החבלה הנ'ל לירושלים. ████ טמניסו את מטען החבלה הנ'ל אל תוך קמפוס הר-הצופים של האוניברסיטה העברית בירושלים. ████ הכיר היטב את המקום מכיוון שעבד שם בעבר ואף עשה שימת בכרטיסו עובד, אשר עדיין נשאר ברשותו, כדי להיכנס אל תוך הקמפוס האמור. ████ הניח את מטען החבלה הנ'ל בתוך הקפיטריה הנמצאת בבניין עיש פרנק סינוקרה בקמפוס הנ'ל. לאחר מכן, ████ ' ניסו לתפעיל את מטען החבלה הנ'ל באמצעות מכשיר טלפון סלולרי, אך פוטען החבלה לא התפוצץ עקב תקלה שבו. לאחר מכן, ████ חזר אל המקום שבו הניח את מטען החבלה הנ'ל, אסף את מטען החבלה וביחד עם ████ ' נסע לבית איבסא.

12. לאחר מכן, ביום 29.07.02, ████ ו ████ נפגשו שוב עם ████ '' החזיר ל ████ את מטען החבלה הנ'ל. ████ מסר כי הוא וחבריו הניחו את מטען החבלה הנ'ל באוניברסיטה העברית בירושלים, בקמפוס הר-הצופים, במקום לפוצצו ולגרום למותם של אנשים רבים כבל האפשר, אך מטען החבלה הנ'ל לא התפוצץ. ████ העבירו את מטען החבלה הנ'ל לחרבתא בני חארט.

13. ████ תיקן את מטען החבלה הנ'ל, לאחר שבדק אותו וגילה כי יש בעיה עם חוטי החשמל.

14. יום למחרת, ביום 30.07.02, ████ נפגש שוב עם ████ וביחד עם ████ העביר את מטען החבלה הנ'ל לבית איבסא.

15. בבית איכסא, ████ '. נפגשו עם ████ ו-'' ████ מסר לידי ████ את מטען החבלה הנ'ל.

16. באותו הלילה, ████ לקחו את מטען החבלה הנ'ל לירושלים והסתירו אותו בין חפצים בגן הבוטני בקמפוס הר-הצופים של האוניברסיטה העברית.

17. למחרת, ביום 31.07.02, ████ נסעו שוב לקמפוס הר-הצופים של האוניברסיטה העברית. בעת ש ████ המתין בחוץ, ████ נכנס אל תוך הקמפוס, אסף את מטען החבלה הנ'ל והניח בקפיטריה הנמצאת בבניין עיש פרנק סילוקרה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים. לאחר ש ████ הפעיל בסמוך לשעה 30 :13, עזב את שטח הקמפוס והתפוצץ אל ████ , פוצץ ████ את מטען החבלה הנ'ל, אשר יוצר על-ידי הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים כבל האפשר. ████ בחרו לבצע את הפיגוע דווקא בסמוך לשעה 13:00 מאחר שלפי מועדע מראש שאשר עדות בקפיטריה הנ'ל בשעה האמורה יש ריכוז גדול של בני אדם.

18. במעשיו המתוארים לעיל, האשם הנ'ל גרם בכוונה למותם של דמנה שפרון ז'ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה באוניברסיטה העברית, כפי שתואר לעיל.

<u>פרט שמונים ושמונה:</u> (פ.א. 1397/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ובמקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של מרלה אן בנט ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט שמונים ותשעה:</u> (פ.א. 1397/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, ובמקום האמור בפרט האישום השמונים ושבעה, גרם בכוונה למותה של דינה של דינה קרטר ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים:</u> (פ.א. 1397/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של בנימין תומאס בלוטשטיין ז"ל, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ואחד:</u> (פ.א. 1397/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), התשל"ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותה של רויטל בראשי ז"ל, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

34

<u>מהות תשעים ושניים:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור וחן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של דדי (דיאנו) לדובנסקי ז"ל,
אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושלושה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של לוינה שפירא ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וארבעה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, גרם בכוונה למותו של ג'ניס רות קולטר ז"ל, אשר
נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים וחמישה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו
הנתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של דוד גריץ ז"ל, אשר נהרג
כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

P 7: 60

<u>פרט תשעים ושישה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם חג"ל, הן באיזור ותן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותם של אחר, דהיינו:
הנאשם חג"ל, במועד האמור, במקום האמור בפרט האישום השמונים ושלושה, במעשיו המתוארים בפרט האישום השמונים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים בכל האפשר. בכתוצאה ממימוש מטען חחבלה שהופעל כפי שתואר בפרט האישום השמונים, ושבעה, נפצעו 81 בני אדם.

<u>פרט תשעים ושבעה:</u> (פ.א. 1197/02 שלם)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53, לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השמונים, ושלושה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם נזק כבד לבניין עשוי פרק סיננטה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום השמונים ושבעה.

<u>פרט תשעים ושמונה:</u> (פ.א. 9638/02 ראשל"צ)

<u>מהות העבירה:</u> ניסיון לגריימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, כיון באיזור ובין מחוצה לו, ביום 08.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותם של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש אוגוסט 2002, ברמאללה או בסמוך לכך, נפגש עם ████, המכונה "יצלאח 2", פעיל צבאי בארגון החמאס.

2. "יצלאח 2" מסר לנאשם כי ████, המכונה "יצלאח 1" או "████", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר שני מטעני חבלה המוסתרים בתוך הקופסאות של ביסקוויוטים - אחד המופעל באמצעות מכשיר טלפון סלולרי, והשני המופעל שלט רחוק, וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים בכל האפשר. הנאשם הסכים לייצר את מטעני החבלה וזאת על מנת שישמשו בהם לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים בכל האפשר.

3. בעקבות ובקשה האמורה, הנאשם ייצר שני מטעני חבלה, אשר הוסתרו בתוך קופסאות של ביסקוויוטים. לאחד ממטעני החבלה חיבר הנאשם מנגנון הפעלה המורכב ממכשיר טלפון סלולרי, ואילו למטען חבלה השני הנאשם הרכיב מנגנון הפעלה כך שהמטעט יופעל באמצעות שלט רחוק.

4. הנאשם מסר את מטעני החבלה הנ"ל לידי "יצלאח 2". "יצלאח 2" העביר את מטעני החבלה הנ"ל לידי ████, המכונה "יצלאח 1" או "████", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. בראשית חודש אוגוסט 2002, ‏(מכונה "█████") נפגש עם █████████, המכונה "█████", אשר ביקש לקבל מטען חבלה. █████ הסביר כי בכוונתו להניח את מטען החבלה מתחתו לרכב ולפוצצו בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

6. █████████ פנה אל █████ וביקש לקבל מטען חבלה לצורך ביצוע הפיגוע המתוכנן. לאחר מספר ימים, ברמאללה או בסמוך לכך, █████ העביר לידו █████ מטען חבלה, אותו ייצר הנאשם, כאמור לעיל, אשר היה מופעל באמצעות מכשיר טלפון סלולרי.

7. באותו היום, 06.08.02, █████████, ביחד עם █████████ נסעו לבית אוכסא כאשר ברשותם מטען החבלה הנ"ל. בבית אוכסא, השניים נפגשו עם "█████" והעבירו לידיו את מטען החבלה הנ"ל.

8. ביום למחרת, 07.08.02, █████ ו-█████ הצמידו את מטען החבלה הנ"ל למוכלית דלק, מ.ר. 3388300, שהיתה בשכונת פסגת זאב בירושלים או בסמוך לכך. לאחר מספר שעות, בסמוך לשעה 50 13:, █████ הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הטכנאי שהגיע במוכלית הדלק האמורה התפוצץ, וזאת כאשר מוכלית הדלק היתה במוסך ברחוב שמוטקין 23 בראשון לציון.

9. כתוצאה מפיצוץ מטען החבלה הנ"ל נגרם נזק למוכלית הדלק ורק בנס לא נפגע.

**פרט תשיעים ותשעה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור יהודה ורן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:-

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם █████████, המכונה "█████", פעיל צבאי בארגון החמאס.

2. "█████" ביקש מהנאשם ליזור שתי חגורות נפץ וזאת לצורך ביצוע פגוע התאבדות בכוונה למותם של אנשים רבים ככל האפשר. הנאשם הסכים ליזור את החגורות הנפץ וזאת, על מנת שישמשנה בהן לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות הבקשה האמורה, הנאשם ייזר שתי חגורות נפץ.

3. הנאשם מסר את חגורות הנפץ הנ"ל לידי "ייצלאח █████", אשר דאג להעבירן באמצעות █████ פעיל צבאי בארגון החמאס, וזאת לצורך ביצוע של פיגוע התאבדות המתוכנן.

4. בסוף חודש יולי 2002, █████████ המכונה █████, וביקש כי לתאם פגישה בין █████████, לבין אדם המכונה █████. █████ הסביר כי הפגישה האמורה נועדה לצורך ביצוע פגוע התאבדות, אשר אותו היה אמור לבצע █████ הנ"ל. █████ התקשר אל "█████" ומסר לא התקשר אל "█████", █████ בעבור יומיים, █████ הודיע כי לא הגיע לפגישה שנקבעה.

5. מיד לאחר השיחה הנ"ל חזר לרמאללה ונפגש עם █████████ ביחוה לאחרון כי הפגישה המתוכננת לא יצאה אל הפועל. בתום הפגישה הנ"ל, התקשר אל █████████, המכונה "█████".

37

6. לאחר מספר ימים, ████ נפגש שוב עם ████, אשר ביקש כי לתאם
פגישה נוספת בין ████ ל-████.

7. כעבור כשבוע ימים, ████ ביקש כי במקרה ש████ לא יגיע לפגישה
האמורה, ████ יקח אחריות על ████" ועל המחבל "המתאבד השני.

8. לאחר השיחה הנ"ל, ████ עקב אחרי ████". ונראה כי ████" נמתין במקום
המפגש וכי ████ לא הגיע. כעבור רבע שעה של תמתנה ████ ניגש אל
████" והודיע לאחרון כי מרגע זה הנאשם יהיה אחראי עליו.

9. ████ מסר כי יש לו בן דוד, ████ אשר גם הוא רוצה לבצע פיגוע התאבדות.
████ ביקש לבצע פיגוע התאבדות ביחד עם בן-דודו ה"חייל.

10. לאחר מספר ימים, ████ נפגש ברמאללה עם ████" והורה לאחרון למצוא
מקום בתוך מדינת ישראל שמתאים לביצוע פיגוע התאבדות. ████ הבהיר
כי יהיה עליו להוביל למקום שאותו יאתר שני מתאבדים מתאבדים על מנת שיבצעו
שם פיגוע נוסף בכוונה לגרום למותם של אנשים רבים ככל האפשר. ████ הסכים,
אך טען כי יקח זמן לאתר מקום ניתן לבצע פיגוע התאבדות כפול. במהלך השיחה הנ"ל,
████" דיווח כי שכר דירה בדחיית אל-ב דוד.

11. ████ מסר כ████ כי נודע לו מ████ על אולם שמחות גדול יורייס חולי
הממצא באורי-יהודה. ████ הצעה כי הוא ████ יבצעו את פיגוע התאבדות
באולם השמחות הנ"ל, כאשר תחילה שנים ירדו בכלי נשק לעבר האנשים שיהיו בתוך
אולם השמחות ולאחר מכן יפוצצו את חגורות הנפץ שילישאו על גופם, וכל זאת בכוונה
לגרום למותם של אנשים רבים ככל האפשר. ████ הסכים לרעיון הנ"ל ושלח את
████" לבדוק את אולם השמחות הנ"ל. ████ נסע לאולם השמחות הנ"ל
ודיווח כי לא ניתן לבצע שם את הפיגוע המתוכנן בגלל מספר גדול של מאבטחים שנמצאים
במקום.

12. ████ דיווח ל████ לגבי פעילותו שבוצעה לצורך התוצאות לפועל של
פיגוע התאבדות המתוכנן. ████ ביקש ג████ לקבל שתי חגורות נפץ
ושני כלי נשק קטנים, כל זאת לצורך התוצאות לפועל של פיגוע התאבדות הנ"ל.
████ הבטיח לדאוג לחגורות הנפץ ולכלי הנשק.

13. לאחר מספר ימים ████" ו████ קיבלו שתי חגורות נפץ, אותן ייצר
הנאשם כאמור לעיל, וכן שני מת-מקלעים "יעוזי" עם מחטניות מלאות בכדורים.

14. לאחר מכן, ████ נפגש עם ████ ונמסר לאחרון כי חגורות הנפץ מוכנות ונהוא
יכול לצאת לביצוע פיגוע התאבדות המתוכנן ביחד עם בן-דודו, ████.
השיב כי-הוא עצמו מוכן לבצע את פיגוע התאבדות בתקופה האפשרי, אך
לא מוכן לבצע את פיגוע התאבדות המתוכנן, מכיוון שאמתינו שוהה בארה"ב והוא מבקש
להמתין לשובה לאיזור.

15. ████ פנה שוב ל████" ביקש לפעל דחוף לאיתור מקום מתאים לביצוע
פיגוע התאבדות המתוכנן. לאחר מספר ימים, י████" דיווח כי איתר מקום
בתל-אבנ-ע שהוא מתאים לביצוע פיגוע התאבדות המתוכנן.

16. ביום 17.09.02 או בסמוך לכך, ████ נפגש בדירת המסתור באל-ראם ועם "████"
והסביר לאחרון כיצד לובשים את חגורת הנפץ. ████ נשאר
בדירה הנ"ל, ביחד עם "עוזר" עד ליום 18.09.02.

17. ביום 19.09.02 "████" יצא מרמאללה לביצוע פיגוע התאבדות המתוכנן כשהוא נושא
על גופו את אתת מחגורות הנפץ, אשר ייצר הנאשם כאמור לעיל.

38

18. הסיע את "████" ברכבו לתל-אביב. בהגיעם לתל-אביב, "████" ████ הונחה את ████ להתפוצץ שבו נמצאים אנשים רבים וזאת על מנת שהפיצוץ יגרום למותם של אנשים רבים ככל הני תן.

19. בסמוך לשעה 12:55, ביום 19.09.02, או במועד הסמוך לכך, "יוסי" עלה לאוטובוס בקו 4 של "יזי", מ.ר. 9105201, ברחוב אלנבי 94 בתל-אביב. מיד כשהאוטובוס החל בהתחלת בנסיעה, "████" הפעיל את מטען הנפץ, אותה יצר הנאשם, שנשא על גופו וגרם לפיצוץ עז, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המחבל המתאבד, ████ ████ המכונה "████", נהרג כתוצאה מפיצוץ מטען חהבלה ה ג י ״ל.

20. כתוצאה מהתפוצצות המחבל המתאבד עם מטען חהבלה האמור, נהרגו שישה בני אדם, כפי שיתואר בפרטי האישום ה באים.

21. כתוצאה מהתפוצצות המחבל המתאבד עם מטען חהבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתוַאר בפרטי האישום הבאים.

22. כתוצאה מהתפוצצות המחבל המתאבד עם מטען חהבלה האמור נגרם נזק רב לאוטובוס הג י ״ל, לכל רכב שהיו בסמוך למקום הפיצוץ, וכן לתכוניות חס ג בוכות.

23. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של יוסי ג מיטסליב ז״ל, בן 39 במותו, אשר נהרג כתוצאה מהתפוצצות מטען חבלה כאמור לעיל.

**פרט מאתה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה; עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל״ל-1970; וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של עופר זינגר ז״ל, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען חהבלה באוטובוס, מ.ר. 9105201, קו "יזי" 4 ברחוב אלנבי בתל-אביב, כפי שמואר בפרט האישום התשעים ותשעה.

**פרט מאה מאחד:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל״ל-1970, וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותם של רוזה סיסו ז״ק, בת 63 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חהבלה באוטובוס, מ.ר. 9105201, קו "יזי" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

ת.ז. 05:365

P 7: 64

<u>פרט מאה ושניים:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף (א)14 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של יפה שם-טוב ז"ל, בת 49 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה ושלושה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף (א)14 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של סלומון מזגני ז"ל, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה וארבעה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף (א)14 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של יונתן ג'סטר ז"ל, בן 19 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

<u>פרט מאה וחמישה:</u> (פ.א. 19284/02 ירקון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף (א)51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים (א)14 ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד והסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר תופצצו עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.
כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה נפצעו כ-84 בני אדם שהיו באוטובוס הנ"ל ובסמוך אליו בסעת חפוצצו.

40

<u>פרט מאה ושישה:</u> (פ.א. 19284/02 ירקון)

<u>נתוני העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, הרס רכוש או פגע בו בנוסח שלא כדין, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם במזיד ושלא כדין נזק כבד לאוטובוס, מ.ר. 9105201, שנסע בקו 4 של "דן" ברחוב אלנבי בתל-אביב וכן גרם נזק לכלי רכב נוספים ולחנויות ובתי עסק שהיו בקרבת מקום הפיגוע המתואר בפרט האישום התשעים ותשעה, ואשר נפגעו כתוצאה מפיצוץ מטען חחבלה, אותו ייצר הנאשם.

<u>פרט מאה ושבעה:</u> (פ.א. 21011/02 ירקון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א). לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 11.10.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1.  הנאשם הנ"ל, בתחילת חודש ספטמבר 2002, כירמאללה או בסמוך לכך, ייצר שתי חגורות נפץ לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר, וזאת כפי שתוארו בפרט האישום התשעים ותשעה.

2.  הנאשם העביר את שתי חגורות הנפץ ליד ▇▇▇▇▇ ▇▇▇ המכונה "צלאח י", מפעיל צבאי בארגון התמאס, אשר דאג להעבירן ל ▇▇▇▇▇▇▇, כפי שתוארו בפרט האישום התשעים ותשעה.

3.  לאחר ביצוע הפיגוע המתואר בפרט האישום התשעים ותשעה, החליט ▇▇▇▇▇ לחזור ▇▇▇▇▇▇▇ לפעול פיגוע התאבדות נוסף באמצעות חגורת הנפץ, אשר אותה ייצר למטרה זו הנאשם.

4.  לצורך קידום תכניתו הנ"ל, גייס ▇▇▇ את ▇▇▇▇▇ לביצוע פיגוע ההתאבדות הנ"ל הנוכ.

5.  ▇▇▇▇ נפגש גם עם ▇▇▇▇▇▇, המכונה ▇▇▇▇▇▇▇ ", והורה לאחרון לאתר נקום מתאים לביצוע פיגוע התאבדות המתוכנן. לאחר מספר ימים, ▇▇▇▇▇ דיווח כי איתר שני מקומות בתל-אביב, הנתאימים לביצוע פיגוע ההתאבדות המתוכנן.

6.  ביום 11.10.02 ▇▇▇▇▇▇ הביא את ▇▇▇▇▇▇ מכפר ערעבה לדירה המסתור בא-ראם. ▇▇▇▇▇ והסביר ל ▇▇▇▇▇ כיצד לובשים וכיצד מפעילים את חגורת הנפץ, ▇▇▇▇▇▇ הלבישו על גופו של ▇▇▇▇▇ את חגורת הנפץ, אשר אותה ייצר הנאשם.

7.  ▇▇▇▇▇ " הסיע את ▇▇▇▇▇ לתל-אביב על מנת שהאחרון יבצע שם את פיגוע ההתאבדות הנ"ל המתוכנן.

8.  בסמוך לשעה 15:20, ביום 11.10.02, ▇▇▇▇▇ " הוריד את ▇▇▇▇▇ בטיילת החוף בתל-אביב, והנ"ל נתחבר את האחרון לפעיל את חגורת הנפץ, שהוא נשא על גופו, במסעדות שיש בה אנשים רבים.

9.  ▇▇▇ ניסה להיכנס למסעדת "יוטבתה" הנמצאת ברחוב הרברט סמואל (טיילת תל-אביב), אך המאבטחים שהיה במקום הבחין בו, חשד כי מדובר במחבל מתאבד ומנע את

כניסתו פנימה, ████ ניסה להימלט מהמקום, אך נתפס לאחר מרדף ובסיוע של מאבטחים נוספים שהגיעו למקום.

10. במעשיו המתוארים לעיל, הנאשם חייל ניסה לגרום בכוונה למותם של אנשים רבים ככל האפשר.

<u>פרט מאה ושמונה:</u>

<u>מהות העבירה:</u> אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בחודש פברואר 2003 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות צבאית, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר אימון צבאי לאדם, תושב שכם, אשר נשלח אליו על-ידי ████████, המכונה "פלאח ז'" או "████████", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה.

במהלך האימון האמור הנאשם הנ"ל לימד את האדם הנ"ל לייצר מטעני חבלה, מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מנגנון הפעלה למטעני חבלה המורכבים ממשעון, שלט רחוק ומכשיר טלפון סלולרי.

במהלך האימון הצבאי הנ"ל, הנאשם והאדם הנ"ל היו רעולי פנים.

<u>פרט מאה ותשעה:</u>

<u>מהות העבירה:</u> ביצוע שירות עבור ותאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בתחילת שנת 2003 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, הוביר לידו ████████ או ████████, ראש "גדודי עז א-דין אל קסאם", הזרע הצבאית של ארגון החמאס, באיזור רמאללה, דיסקטים למחשב ועליהם הוראות לייצור חומרי הנפץ ומטעני חבלה.

ביקוש מהנאשם לקבל את הדיסקטים הנ"ל לצורך העברתם למפעילי הארגון ג'יהאד אסלאמי פלסטיני, אשר ביקשו ללמוד לייצר חומרי נפץ ומטעני חבלה.

ת.פ. 03-350

P 7: 67

<u>עדי התביעה:</u>

1. ████████, לחייק יהודה. [נגבה אמרת הנאשם מיום 12.03.03,
13.03.03, 30.03.03, 15.05.03 ומיום 22.05.03 ומגיש תמונות שהוצגו בפני הנאשם ביום
30.03.03 + צוזר בכתב-חדו של הנאשם]

2. ████████, לחייק יהודה. [נגבה אמרת הנאשם מיום 12.05.03]

3. פרוטוקול דיון הארכת המעצר של הנאשם מיום 12.05.03.

4. ████████ ת.ג.1 (עצור)

5. ████████ ת.ג.1 (עצור)

6. ████████ ת.ג.1 (עצור) (ת.ת. 976/02)

7. ████████ ת.ג.1 (עצור) (ת.ת. 241/03)

8. ████████ ת.ג.1 (עצור) (ת.ת. 210/03)

9. ████████ ת.ג.1 (אסיר)

10. ████████ ת.ג.1 (אסיר)

11. ████████ ת.ג.1 (אסיר)

12. ████████ ת.ג.1 (אסיר)

13. ████████ ת.ג.1 (עצור) (ת.ת. 889/02)

14. ████████ ת.ג.1 (עצור) (ת.ת. 888/02)

15. ████████ ת.ג.1 (אסיר) (ת.ת. 846/01)

16. ████████ דרכון ירדני (עצורה) (ת.ת. 815/01)

17. ████████ ת.ג.1 (אסיר) (ת.ת. 344/02)

18. ████████ ת.ג.1 (עצור) (ת.ת. 444/02)

19. ████████ ת.ג.1 (עצור) (ת.ת. 946/02)

<u>רשימת העדים הטכניים מתיקי הפ.א. הבאים תיסמך על-ידי התביעה, במידת הצורך, במהלך
המשפט:</u>

1. 6554/01 צ יון

2. 6891/01 מ תימ י-ם

3. 10283/01 ציון

4. 1512/02 מוריה

5. 5601/02 ראש לצ"ג

6. 2881/02 גלילות

7. 3975/02 לוד

8. 9913/02 ר חובות

9. 1197/02 שלם

10. 9638/02 ראשל"יצ

11. 19284/02 ירקון

12. 21011/02 ירקון

סרן
צבאי

מיכאל ק----עקב
תובע

תאריך: 29.05.2003
סימוכין: 38.0-03

43

ת.ח. 380/03