Date: July 29, 2009                                                                                                File No.: 3052/06

But not only the test of the numerous items indicate the credibility which should be ascribed to the Defendant's statements. Rather, in accordance with that which has been set forth above, these statements have external verifying supplements, in the form of the statement given by Mahmoud Abiyat and in the form of Prosecution Exhibit No. 8. Moreover, the seizure of the arms ship *Karine A* is also in line with the statements which were made by the Defendant. Let us not forget that the Defendant himself did not deny, in his testimony before us, many details which appear in his statements, including a meeting with the Iranians.

In accordance with that which has been set forth above, the independent weight of the statements is high. The additional item, in this case, points to the Defendant's involvement in at least some of the offenses, and verifies all of the Defendant's statements. More precisely: the matters which are set forth in the Defendant's statements are all related to his position and his status as the head of the Finance Department of the Palestinian Security Services. When there is an internal affinity and a pertinent relationship between the various offenses, the evidentiary supplement which exists for one offense may also extend to another offense (see Criminal Appeal 241/87, **Cohen v. State of Israel**, PD 42 (1) 743; Criminal Appeal 7758/04, **al-Qadr v. State of Israel**, Supreme Court Compendium 2007 (3) 710; Criminal Appeal 378/03, **John Doe v. State of Israel**, Supreme Court Compendium 2005 (2) 1128). Accordingly, in the case that is before us, even though an evidentiary supplement exists with regard to only some of the statements made by the Defendant, in view of the pertinent relationship of the actions which are described in the indictment to those which are set forth in his statements, the evidentiary supplements should be considered as verifying all of the things which were stated by the Defendant in his interrogations. Accordingly, even if there is no external evidentiary supplement for a specific section of the indictment, in view of the affinity among all of the charges in this case, the statements made by the Defendant are sufficient to substantiate the conviction, insofar as it arises from the statements.

Now that we have clarified the evidentiary infrastructure before us, we shall address each of the counts of the indictment.

**Count 1 of the indictment:**

The arguments that have been set forth by the defense with regard to this count of the indictment are arguments both in fact and in law. First of all, as to the factual aspect, the defense did not deny that the Defendant took part in the purchase of the materiel as set forth in this count of the indictment; however, it claims that this was a purchase of material which was aimed at taking weapons from residents of the Authority so that they would be in the hands of the Palestinian Authority forces. This argument was raised by the Defendant both in Court and during his interrogation. Second, it was argued that the Defendant was entitled to

41

Date: July 29, 2009                                                                                                         File No.: 3052/06

benefit from the defense of "act of state" because all that he did was to act with no independent discretion, but rather, in accordance with the instructions of the chairman of the Authority, Arafat, who approved the transfer of monies from the Authority for the purpose of purchasing the arms. The Defendant's role in this case was to sign documents which approved payment. It was argued that this act is not a war crime or a crime against humanity, because it has not been proved that the Defendant knew that the arms would reach the al-Aqsa Martyrs Brigades organization, which would use them for terrorism.

It was further argued that the Defendant could avail himself of the defense of justification, because obeying the instruction by the Authority, which was aimed at taking weapons from irresponsible entities and transferring them to the responsible control of the Authority, is a legitimate act, which is governed by the defense of justification.

It appears that the arguments that have been set forth by the defense cannot be accepted, even if only on factual grounds.

In order for the defense of "act of state" to be allowed, it is necessary to show that the entity on behalf of which the Defendant operated was a state. As set forth in the ruling on the preliminary arguments, which was handed down by my colleague, the Deputy President, the Palestinian Authority is not a state, and certainly, during the period which is relevant to the indictment, it was much farther from the status of an independent authority. Accordingly, the Deputy President of the Court stated that: "This being the case, I believe that it should be ruled that the Defendant's actions pursuant to the indictment were not acts of state, as they were not committed on behalf of an entity which is a state; rather, at the very most, they were personal actions in the guise of state actions, through the use of resources of an unformed diplomatic entity."

No further support or additional evidence, which could have modified our conclusion with regard to the status of the Palestinian Authority, has been brought before us.

Secondly: the argument to the effect that the collection of the arms was intended to transfer weapons from residents, who were likely to use them for partisan purposes, to responsible entities, is unfounded. The Defendant raised this argument on a number of occasions, including in his interrogation, however, we do not have the impression that this argument is substantiated in any way whatsoever. In accordance with that which has been set forth above, we have already pointed out that our impression of the Defendant is that he is a sophisticated person, who is trying to shrug off the burden of responsibility and liability. Concurrently with the argument that the collection of the arms was intended to prevent irresponsible entities from using them, it appears that the Defendant approved the financing of actions which have absolutely nothing to do with the collection of weapons from

Date: July 29, 2009                                          File No.: 3052/06

irresponsible entities. Thus, for example, the subject of the financing of the setup of a factory for the production of explosives by people belonging to the Palestinian Authority itself, the financing of lathe shops, the financing of arms smuggling by outside entities such as Hezbollah and the Iranians, and so forth. If the entire objective had been the collection of "partisan" weapons, why is it necessary to finance the bringing of additional weapons which originate outside the confines of the Palestinian Authority – especially when the weapons in question are of a specifically offensive nature, such as rockets and missiles of various types? If the matter in question concerns only the purchase of weapons from civilians, why did the Defendant act to finance the costs of smuggling the weapons from Hezbollah into the hands of entities within the Palestinian Authority?

The answer to these questions is clear. The collection of weapons has nothing to do with the desire to prevent those "irresponsible" entities from using them for terrorist purposes. The objective of the collection of the weapons was to transfer them to entities within the Palestinian Authority which obeyed Arafat and which made it possible to engage in warfare against Israel, its forces and its civilians. As the Defendant himself stated, in the memorandum dated March 15, 2006, 6:15 p.m., in Section 30: "**Yasser Arafat gave an instruction that all of the weapons would be purchased by the Palestinian Authority, and not by Hamas or other organizations, so that he himself would be able to control everything that happened. In this way, Yasser Arafat would be able to control the strength of the intifada.**"

As we have seen, this is no innocent and "responsible" objective; rather, it is a clear objective which was intended to enable entities of the Palestinian Authority, headed by Yasser Arafat, to use offensive firepower to control the strength of the intifada – that is: the strength of Palestinian terrorism.

It should further be stated that the argument to the effect that the Defendant did not know that the weapons had been transferred to the al-Aqsa Martyrs Brigades organization, which used it for the purposes of terrorism, is an argument which is not in line with the evidentiary material. Thus, for example, in the memorandum dated March 15, 2006, 6:15 p.m., in Section 36, the following appears: "**The subject explained that each of the security organizations purchased materiel in large quantities and the subject approved the payment. All of the al-Aqsa Martyrs organizations used the weapons which were supplied by the security forces, which carried out the massive procurement.**"

As we have seen, the Defendant knew very well that the materiel which was purchased was transferred to the al-Aqsa Martyrs Brigades, which used those weapons. Obviously, the Defendant knew what the al-Aqsa Martyrs Brigades organization was and what its activities were. His attempt to tell us that he did not know what the organization was is an untenable

43

Date: July 29, 2009																	File No.: 3052/06

attempt to represent himself as an innocent person. We do not believe this argument. It is clear to us that the Defendant – who held a senior position in Fatah for decades and was close to Yasser Arafat – knew very well what the al-Aqsa Martyrs Brigades organization was, what its activities were, and knew very well that the organization in question was a tool in the hands of the Palestinian Authority for directing terrorism against the State of Israel and its residents.

It should further be stated that we did not gain the impression that the Defendant was a clerk who followed instructions with no discretion of his own. This results both from the senior nature of his position and from the facts which were brought before us, as well as from the statements which were made by the Defendant in Court. Thus, for example, on no small number of occasions, it transpired that the Defendant acted on his own initiative, with no approval whatsoever – and certainly with no explicit instructions – from Yasser Arafat, in the context of monetary expenditures. This was the case with regard to the "business initiatives" which were intended to make a profit for Fatah; his contacts with the Iranians, which were not known in advance by Yasser Arafat (but only retroactively); and the Defendant's own words to the effect that Yasser Arafat liked to see and to get results, and was not involved in the entire process itself from the outset. We shall also recall that the Defendant, in his own words in his testimony before us, confirmed that he did not transfer money if he did not have the appropriate amount, or if the purpose of the expenditure did not match a recognized item in the budget. This is not in line with a person who merely fulfilled every instruction by Arafat. Moreover, the Defendant stated, in his testimony before us on November 18, 2008, that if he were to receive an instruction which appeared strange to him, he would not carry out the action, and added that: "I had many disputes with the *Ra'is* on such things, and in the end, he came and told me that I was right." These words, which appeared to have been uttered with great pride on the Defendant's part, indicate that the Defendant was not merely a rubber stamp. When he thought there was a problem with this or that instruction by Arafat, he would tell him so, and would even argue with him.

In the case that is before us, and with regard to the action set forth in the indictment, the Defendant did not see fit to argue, even though we know that, had he seen fit to do so, he would have done so. The obvious conclusion is that the Defendant – by virtue of his position, *de facto* in his relationship with Yasser Arafat, and in light of his own actions, as those actions arise from the evidentiary material before us – had the discretion to approve, or not to approve, the transfer of funds. The Defendant knew very well what the purpose of the transfer of funds was, and he knew very well that the arms which were purchased with the monies in question were intended for the purposes of a terrorist organization – the al-Aqsa Martyrs Brigades.

44

Date: July 29, 2009                  File No.: 3052/06

**Summary:**

From the factual standpoint, no infrastructure has been laid which enables support of the arguments that have been set forth by the defense with regard to the availability of the defense of justification, or the defense of "act of state", for the Defendant. It has been proved that the Defendant knew very well that the purchases in question were of weapons which were to be transferred to the use of a terrorist organization – the al-Aqsa Martyrs Brigades. This was not a case of the purchase of weapons with a view to taking weapons out of the hands of residents and transferring them to "responsible hands", as has been argued by the defense.

The Palestinian Authority is not a state, and in any event, the transfer of weapons for the purposes of terrorism against the citizens and residents of the State of Israel cannot take shelter under the defense of "act of state", even if a state were involved.

Second: with regard to the defense of justification, even if we were to adopt the method advanced by my colleague, the Deputy President of the Court, who is prepared to recognize the defense of justification for entities in the Palestinian Authority under certain conditions, the act in question is not a legitimate act on the part of the Authority, and the purchase of weapons which are intended for the purposes of the terrorist organization is clearly an illegal act.

Because the Defendant was a partner to the purchase of weapons as set forth in Section 1 of the indictment, we convict him with regard to that which has been set forth in this section of the indictment.

**Count 2 of the indictment:**

This count concerns the transfer of salaries to operatives in the al-Aqsa Martyrs Brigades, as well as the transfer of a requisition by Marwan Barghouti for the payment of money for materiel.

The basis for this count lies in the statements by the Defendant, but also in the statements which were made by Mahmoud Abiyat to the police. The Defendant, in fact, confessed in his interrogation that he had transferred salaries to Mahmoud Abiyat's men, and the latter confirms this matter in his statement. Accordingly, the opening passage of this Count of the indictment is based on statements by the Defendant and has been given a significant evidentiary supplement in the statement by Mahmoud Abiyat. Accordingly, and in light of the factual analysis set forth above, there is a solid basis for convicting the Defendant of that which has been set forth in the opening passage of Count 2 of the indictment, because it involved the transfer of monies to terrorist operatives.

Date: July 29, 2009 File No.: 3052/06

The closing passage of Count 2 of the indictment – the subject of the materiel sought by Marwan Barghouti – also appears, in detail, in the Defendant's statements, and, in essence, constitutes part of the general series of offenses which is described in Count 1 of the indictment, which involves the Defendant's share in financing various items of materiel for persons in the Palestinian Authority and for the al-Aqsa Martyrs Brigades.

With regard to the closing passage of this count of the indictment, the defense argued that the Defendant did not commit any offense, because all that he did was to forward the document to Arafat. The Defendant did not pay the amount requested, because his office did not have the budget to do so, and the payment for the requisition came from the budget of the Palestinian Ministry of Finance.

I cannot accept the argument that this was not an offense. The charge which is attributed to the Defendant is "Performance of a service for a prohibited organization". The service which the Defendant performed for the al-Aqsa Martyrs Brigades organization admittedly did not involve the transfer of money from his office; nevertheless, he did perform a service. This service included accepting the requisition and forwarding it to Arafat. The Defendant was the channel through which the requisition was handled and carried out. In accordance with that which has been set forth above, and as we have seen in the analysis of the facts in Count 1 of the indictment, the Defendant was a significant link in all of the acts of procurement and finances. Furthermore, he was also the channel through which all of the financial requisitions reached Yasser Arafat. The same holds true in this case as well. This act is a service for a proscribed organization, and accordingly, it is necessary to convict him of the charges which are attributed to him in the closing passage of this Count of the indictment as well.

It should further be stated that the statements set forth above with regard to the defenses of "act of state" and justification, which were raised by the defense, apply even more forcefully to this count of the indictment, because, in this case, the Defendant granted assistance and a direct service to the terrorist organization known as the al-Aqsa Martyrs Brigades.

**Count 3 of the indictment:**

This count concerns the Defendant's part in the procurement of the ship *Karine A*.

According to an argument that has been set forth by the Defense, the Defendant did not commit any offense whatsoever. The money for the purchase of the ship did not come from his budget, but rather, from the budget of another office, which was headed by Harbi Sarsur. The Defendant did not initiate the bringing of the arms ship, and, at most, had indirect and not concrete knowledge of the fact that the ship would be carrying weapons. All that he did was to pass on the information about the ship to Yasser Arafat, who thought it was a plot to murder him.

46

Date: July 29, 2009                                                                                         File No.: 3052/06

After examining the evidentiary material, we have found that the facts which are attributed to the Defendant in this count of the indictment have been proved as required. In actual fact, not even the defense disputed the fact that the facts set forth in the indictment were proven by the Defendant's statements. I shall comment that, with regard to the purchase of the ship, nothing bears out the allegation that Yasser Arafat refused this matter or thought that it was a plot. What was said by the Defendant referred to his meetings with the Iranians, which are set forth in Count 4 of the indictment, and not to the purchase of the *Karine A*, which Arafat approved with no problems whatsoever, according to the Defendant's own statements.

The central question which the defense raised is whether these acts constitute the offense of trading in war materiel.

The definition of the word "trading" in the Prohibition on Trading in War Materiel Order is as follows: "Purchase, sale, mediation, delivery, storage, transport, transfer, dispatch or repair".

This means that trading in war materiel does not only include acts of purchase and sale, but also mediation and transport of arms.

In the case that is before us, the Defendant took part in the following actions: he accepted the request by Fathi Ghazem for financing an arms ship which would come from the Iranians; it was explained to the Defendant that the weapons which would be on board the ship would be financed by the Iranians, and that the Palestinian Authority would have to finance only the ship and its expenses; the Defendant handled the request and passed it on to Yasser Arafat, who approved the conspiracy and agreed to the purchase; the Defendant was the one who transferred the requisition for payment to Arafat, who approved the transfer of the funds; when the Defendant announced that his office did not have an appropriate budget, Arafat gave an instruction for the payment to be made from the office of Harbi Sarsur, and the Defendant transferred that instruction by means of a messenger from his office; Fathi Ghazem was in contact with the Defendant for the purpose of receiving the information as to whether the order for the transfer of the funds had been issued.

These facts indicate that the Defendant was involved in the mediation and the financing of the arms deal. Even if his office did not pay the money directly, the Defendant was the one who made contact with Arafat and brought the subject of the arms deal before him for his consideration, study and decision. The Defendant was the entity which mediated between Fathi Ghazem, the Iranians and others and Yasser Arafat. The Defendant's role is accordingly not minor, but significant. It may be said that the Defendant was a significant factor in concluding the transaction, because his contacts with Arafat were of supreme importance for the purpose of executing the transaction.

Date: July 29, 2009                                              File No.: 3052/06

Even if the Defendant's office did not finance the transaction from the current budget, it should still be stated that the Defendant was involved "up to his neck" in this transaction, and that he constitutes an entity which took real and material action for the purpose of obtaining the financing for the purchase of the ship. Accordingly, he should be considered as having been involved in the purchase of the weapons, in the negotiations which he conducted with the Iranians from the beginning, in the purchase of means of transport of the weapons, and at the very least, in actions which constitute mediation for the purchase of the weapons.

In this case as well, it is obvious that the defenses of "act of state" and justification do not apply. In this case, the initial contact began even before Arafat knew about the subject of the arms ship, so that the Defendant certainly cannot say that his actions merely consisted of following orders.

Accordingly, the Defendant should be convicted of that which is attributed to him in this count of the indictment.

**Count 4 of the indictment:**

This count concerns negotiations which the Defendant conducted with Iranian representatives outside the Area.

The defense did not dispute, with regard to this count, that the Defendant held a meeting with people who represented themselves as Iranians, and held a general conversation with regard to possibilities for Iran's assistance to the Palestinian Authority. The defense argued that the prosecution would have to produce an evidentiary supplement of the "additional item" type in order to prove that such a meeting took place, and that the persons with whom the Defendant spoke were actually Iranians. It was further argued that, as far as the Defendant was concerned, those meetings were full of suspicion and caution and were not based on a desire to cooperate, and that, in fact, Arafat, upon receipt of a document which described the meeting, rejected the idea set forth therein.

First of all, with regard to the required evidentiary supplement, we believe that, in this case, even in the absence of any evidentiary supplement with regard to this count itself, the existence of an evidentiary supplement for other counts constitutes an evidentiary supplement for this count of the indictment as well.

As we pointed out above, a supplement of the "additional item" type is a supplement which is intended to verify the Defendant's statements. Because it is a supplement for the purposes of verification and not of embroilment, there is no necessity for the evidentiary supplement to refer to each and every one of these counts of the indictment separately, provided that there is a relationship between the various counts of the indictment in question.

48

Date: July 29, 2009                                                                                       File No.: 3052/06

In accordance with that which has been set forth above, in the case that is before us, there is an affinity between the Defendant's actions as set forth in this count of the indictment and his actions as set forth in the previous counts of the indictment. All of them concern his work and his status as the Finance Officer in the Palestinian Authority and as a person close to Arafat. Accordingly, the evidentiary supplements which were found with regard to Counts 1 and 2 of the indictment (Prosecution Exhibit No. 8 and the statement by Mahmoud Abiyat) also constitute an evidentiary supplement with regard to this count.

Furthermore, it is necessary to reject the argument that has been set forth by the defense, to the effect that these were only contacts with no real intention. While these were apparently initial contacts, nevertheless, by the very nature and quality of initial contacts of this type, they are at times accompanied by suspicion. This does not mean that the Defendant did not want to promote the contacts thereafter; in fact, he even brought the subject of the contacts before Yasser Arafat for decision.

Let us not forget that the elements of the offense in question require only the existence of the contact between the Defendant and another entity which is part of a hostile organization. In the case that is before us, it appears, on the basis of the proven facts, that not only did the Defendant actually meet and hold contacts with operatives of an enemy country; the Defendant acted on the basis of a desire to bring about what had been agreed upon with the Iranians and "to get results" for Arafat. Accordingly, we believe that all of the elements of the offense, in this case, were fulfilled by the Defendant.

I shall further state that, in this case as well, it is obvious that the defenses of justification and "act of state" do not apply, because the Defendant did not receive any order or instruction to carry out that which is attributed to him in this Count; rather, he acted on his own initiative and on his own recognizance, and only retroactively brought the results of the meeting to Arafat for his approval.

This being the case, the Defendant should be convicted of that which is attributed to him in Count 4 of the indictment.

**Conclusion**

We have not seen fit to accept the preliminary argumentation that has been set forth on the part of the Defendant. We have seen fit to attribute full weight to his statements to the police and to the transcripts of his interrogations by the Israel Security Agency, and to prefer his statements, wherever the Defendant argued otherwise before us. In light of the content of the Defendant's statements, we believe that there is a complete factual infrastructure for proving the charges that have been attributed to the Defendant.

49

Date: July 29, 2009 					File No.: 3052/06

The Defendant cannot avail himself of any defense in this case. In the case that is before us, the defense of "act of state" does not apply, *inter alia*, because the Palestinian Authority is not a state and, during the relevant period of time, its status was even farther from statehood than it is today. Even if this defense had existed under law in the Area, the Defendant could not have taken shelter under it, in light of the fact that he transferred weapons, knowing that the weapons were meant to be used by a terrorist organization such as the al-Aqsa Martyrs Brigades.

The Defendant cannot avail himself of the defense of justification, because, even in accordance with the broadest interpretation of this defense (which, in accordance with that which has been set forth above, appears in the ruling which was handed down by my colleague, the Deputy President of the Court, with regard to the preliminary arguments), the Defendant took part in actions which are not legitimate, in a way which is not in accordance with the powers which were granted to the Palestinian Authority in the interim agreements; he acted many times on his own initiative, and not as a follower of orders; and even if there were cases in which he followed orders, the acts in question are clearly illegal, since, in accordance with that which has been set forth above, they have to do with the transfer of weapons and resources to terrorist organizations.

In light of that which has been set forth above, we have decided to convict the Defendant of all of the charges which have been attributed to him in the indictment.

**Judge Lieutenant Colonel Ronen Atzmon:**

I concur.

**Judge Lieutenant Colonel Tal Band:**

I concur.

**Handed down and notified this day, July 29, 2009, in public and in the presence of the parties.**

| _____ | _____ | _____ |
|:---:|:---:|:---:|
| **Judge** | **President of the Court** | **Judge** |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

                Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

                Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as "Israeli Military Court Case File No. 3052/06 The Military Prosecution v. Fuad Hejazi Shubaki, Verdict dated July 29, 2009."

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as "Israeli Military Court Case File No. 3052/06 The Military Prosecution v. Fuad Hejazi Shubaki, Verdict dated July 29, 2009."

Dated: March 7, 2014

_____
Rina Ne'eman

ss.: New Jersey

On the 7 day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
7 day of March, 2014

_____
Notary Public

SHELLY TESSEIN
Notary Public
State of New Jersey
My Commission Expires Nov. 16, 2017
I.D.# 2427073

# בית המשפט הצבאי יהודה

**בפני כב׳ הנשיא: סא״ל צבי לקח**

**השופט: סא״ל רונן עצמון**

**השופט: סא״ל טל בנד**

**התביעה הצבאית**

(באמצעות סגן אנדריי ורשצ׳גין)

**נגד**

**הנאשם: פואד חג׳אזי שובכי ת.ז. 410026173/שב״ס**

(באמצעות ב״כ עו״ד אביגדור פלדמן)

---

## הכרעת דין

**הנשיא סא״ל צבי לקח:**

הנאשם שלפנינו מואשם בארבעה פרטי אישום שעניינם העברת כספים לצרכי רכישת אמצעי לחימה כפי שיפורט להלן.

**פרט ראשון – סחר בציוד מלחמתי**: מיוחס לנאשם כי החל משנת 2000 ועד לסוף ינואר 2002 עסק בסחר בציוד מלחמתי. נטען כי הנאשם נטל חלק בישיבה בה הורה יאסר ערפאת לו ולראשי מנגנוני הביטחון לרכוש כל כמות של נשק מכל מקום אפשרי. הנאשם פעל ממועד פגישה זו יחד עם אחרים לרכוש כמויות גדולות של אמצעי לחימה. הנאשם שעמד בראש משרד הכספים הפלסטיני ריכז את בקשות אנשי המנגנונים השונים ואלו הועברו אליו כניירות עבודה. על מנת לוודא שאמצעי הלחימה עליהם הוא משלם אכן קיימים, דרש הנאשם מהפונים אליו להביא את כלי הנשק למשרדיו ולצורך כך החזיק מחסן אמצעי לחימה ברמאללה וכן מחסן נוסף ברצועת עזה. לאחר שאמצעי הלחימה הועברו לרשותו, היה הנאשם מגיש את נייר העבודה לאישורו של יאסר ערפאת, ולאחר אישורו של זה, היה הנאשם חותם אף הוא על הבקשה ומאשר לאנשיו להעביר את הכסף לפונה באמצעות העברה בנקאית. במהלך התקופה הנ״ל נרכשו כ- 1000 טונות של אמצעי לחימה תמורת 7-10 מיליון דולר. את אמצעי הלחימה דאג הנאשם להעביר למנגנוני הביטחון הפלסטיניים ביודעו כי חלק ניכר מאנשיהם הינם חברים בזרוע הצבאית של ארגון הפת״ח שביצעה פיגועים רבים אותה עת.