**פרט שני – ביצוע שירות עבור התאחדות בלתי מותרת**: נטען כי בתקופה האמורה בפרט האישום הראשון העביר הנאשם לחברי החוליות הצבאיות של ארגון גדודי חללי אלאקצא באזור בית לחם משכורת חודשית בסך 500 ₪. באותה עת ביצעו חברי חוליות אלה פיגועים רבים. בחודש אוקטובר 2001 קיבל הנאשם בקשה לתשלום של 25,000 דינר מידי מרואן ברגותי לצורך רכישת אמצעי לחימה וחומרים לייצור מטענים, ולצורך תשלום משכורות ל-268 חברים בגדודי חללי אלאקצא. הנאשם העביר בקשה זו לידי יאסר ערפאת, אשר הורה לו לשלם את הכסף באמצעות משרד האוצר.

**פרט שלישי - סחר בציוד מלחמתי**: פרט זה מפרט את חלקו לכאורה של הנאשם במימון וארגון ספינת הנשק קארין A, שנתפסה בתאריך 3.1.02 כשעליה כמויות גדולות של אמצעי לחימה מסוגים שונים, ובכלל זה רקטות, מרגמות ומקלעים. נטען כי בחודש ספטמבר 2001 נפגש הנאשם עם פתחי ראזם, וזה עדכן אותו בדבר מגעיו עם האיראנים בכל הנוגע למימון ספינת הנשק. פתחי ראזם הודיע לנאשם כי על הרש"פ לשאת בעלות של 125,000 דולר. הנאשם הסכים לכך ואף הסכים לפנות ליאסר ערפאת לקבלת המימון הדרוש לכך. בשלב מאוחר יותר העביר הנאשם ליאסר ערפאת את דרישת התשלום וזה חתם עליה. הנאשם העביר את הוראתו של יאסר ערפאת באמצעות שליח למשרדו של תרבי צרצור, אחראי על הדלק ברש"פ. הספינה ועליה הציוד המלחמתי עגנה בתימן. הנאשם, שהיה בתימן אותה עת, עודכן בדבר הגעת הספינה וקיבל דיווח על הכוונה להכין דרכונים לשניים מאנשי הספינה. לאחר שהספינה הפליגה מתימן לתעלת סואץ, נתפסה בידי כוחות צה"ל ביום 3.1.02, כאמור.

**פרט רביעי – מגע עם ארגון עוין מחוץ לאזור**: פרט זה עניינו מגעים שקיים הנאשם עם גורמים איראניים, במטרה לתאם את שיתוף הפעולה הצבאי בין איראן לבין הרש"פ. בין היתר עלו אפשרויות להקמת מפעלי תחמושת בתחומי הרש"פ, העברת אמצעי לחימה מלבנון דרך החיזבאללה, ואימונים צבאיים לאנשי הרש"פ בלבנון ובאיראן. כמו כן נערך מסמך סיכום המפגש, וזה הוצג לאחר מכן על ידי הנאשם ליאסר ערפאת.

**<u>גדר הכפירה</u>**

לא הוכחש כי הנאשם היה אחראי על ענייני הכספים של מנגנוני הביטחון ברשות הפלסטינית, בתקופה הרלוונטית לכתב האישום. עם זאת נטען כי הוא פעל ברשות ובסמכות. עוד נטען, כי חלק מהעובדות המפורטות בכתב האישום אינן נכונות. בנוסף, נטען כי אמרותיו של הנאשם, המבססות את עיקרו המכריע של כתב האישום, נגבו ממנו שלא כדין.

**<u>ניהול המשפט</u>**

בראשיתו של ניהול התיק הועלו טענות מקדמיות אולם אלה נדחו בהחלטה שניתנה ביום 04.12.06. לאחר החלטה זו, ובעקבות כפירת הנאשם באשמה, החלה פרשת הבאת הראיות. מרבית חומר הראיות הוגש בהסכמה, אולם הסכמה זו התייחסה אך ורק לחומר הראייתי שלא התייחס באופן ישיר לנאשם. כך, למשל, לא הייתה מחלוקת כי נתפסה ספינת הנשק קארין A.

כאמור, כתב האישום מבוסס בעיקרו על אמרות הנאשם. מאחר והייתה מחלוקת על קבילותן של אמרות אלה, נוהל משפט זוטא. הוסכם על ידי הצדדים כי ההכרעה במשפט הזוטא תינתן במסגרת הכרעת הדין בתיק כולו. במסגרת התיק העיקרי נדרשנו לשמוע עד אחד בלבד מטעם התביעה, מחמוד עביאת, וכל יתר חומר הראיות, למעט אמרות הנאשם, הוגש בהסכמה. במסגרת פרשת ההגנה העיד הנאשם.

התביעה הגישה סיכומיה בכתב, והסניגוריה השמיעה לבסוף את סיכומיה בעל פה, הגם שבאיחור ניכר של 4 חודשים.

**<u>משפט הזוטא</u>**

**<u>כללי</u>**

כאמור, לאור טענת ההגנה כי אמרות הנאשם נגבו באופן שאינו חופשי ומרצון, נוהל משפט זוטא. במסגרתו, ולאור טיעוני הזוטא שהועלו, נשמעו שלושת חוקרי המשטרה שגבו את אמרותיו של הנאשם, וכן שלושה חוקרים של שירות הביטחון הכללי שניהלו את עיקר חקירתו של הנאשם. במסגרת פרשת ההגנה במשפט הזוטא העיד הנאשם וכן העיד מר מחמד חיג׳אזי, אשר היה עם הנאשם באותו תא בחלק מהתקופה בה נחקר.

**<u>טיעוני הזוטא</u>**

א. נטען כי הנאשם נחקר לאורך חודשיים חקירות ממושכות במשך רוב שעות היממה תוך שנמנעת ממנו שינה.

ב. נטען כי הנאשם הינו אדם חולה, שנזקק לטיפול תרופתי במחלות כרוניות, ותרופותיו לא ניתנו לו ואף לא סופק לו תחליף הולם.

ג. נטען כי הנאשם היה אזוק בידיו וברגליו במהלך החקירה, דבר שגרם לו לכאבים עזים ולתחושת השפלה קשה. עוד נטען שלעתים היו חוקריו משאירים אותו לבד בחדר כשהוא אזוק, למשך ארבע עד שבע שעות, דבר שהביא את הנאשם למצב של כאב, פחד וחרדה עמוקים.

ד. במהלך שהותו בחקירה, הרסו כוחות צה״ל את ביתו של הנאשם, עקרו עצי הדר ועצי זית רבים בחלקתו והשמידו טון וחצי דבש. הידיעה אודות ההרס הביאה את הנאשם לחרדה ופחד ביחס לגורל בני משפחתו. החוקרים ניצלו זאת כדי לומר לנאשם שאם יודה יוכל לצאת לחופשי ולסייע לבני משפחתו.

ה. נטען כי נאמר לנאשם שבשל העובדה שהוא אדם זקן וחולה ולא נותרו לו שנים רבות לחיות, חוקריו אינם מעוניינים לחקור ולהחזיק אותו במעצר זמן ממושך. על כן, אם יודה יצא מייד לחופשי. הודאותיו ניתנו בכפוף להבטחות אלה ובשל פעולת פיתוי זו.

ו. נטען כי חוקריו של הנאשם הטיחו בו האשמות שווא, וחזרו ואמרו לו שהוא משקר להם. החוקרים נקטו בשיטות של התשה פיזית ונפשית. הנאשם שהינו אדם מבוגר ומכובד

בקהילתו חש מושפל מהתנהגות החוקרים הצעירים כלפיו, ובצירוף מצבו הפיזי הקשה, ייחל למותו ולרגע שבו יסיים את החקירות.

ז. נטען כי הנאשם חתם על הודאותיו על מנת לרצות את חוקריו, ומבלי שידע מה כתוב באמרות שנכתבו בשפה העברית, אותה אינו קורא. חוקרי המשטרה הסתמכו על זכ״דים של השב״כ וכשעמד על אי הדיוקים והטעויות המנויים בזכ״דים נתנו לו חוקרי המשטרה להבין כי ״תוהו ובוהו״ יתרחש אם יחזור בו מהודאותיו.

נקדים ונאמר, כי לאור עדותו של הנאשם עצמו במשפט הזוטא, אשר לא עמד על חלק ניכר מטיעוני הזוטא, צמצמה ההגנה בסיכומיה את טיעוניה לטענות זוטא שעניינן יחס משפיל כלפי הנאשם.

<u>**הראיות במשפט הזוטא**</u>

**עדותו של השוטר דוד מזרחי**

עד זה מסר כי הוא דובר ערבית מהבית, מלימודיו ומהעבודה. בעת שהעיד בפנינו ציין כי הוא זוכר את תווי פניו של הנאשם, אך לא זכר את פרטי החקירה במאת האחוזים. העד מסר שהוא נוהג לזהות את החשוד שבפניו, ולאחר מכן הוא מזדהה כשוטר. הוא מקריא לו את תוכן האזהרה, ולאחר שהחשוד מבין את תוכנה וחותם עליה, נגבית העדות בצורה של שאלות ותשובות. העדות נגבית בשפה הערבית, ונכתבת על ידו בשפה העברית. בתום כל עמוד הוא מקריא אותו לחשוד בשפתו, וזה חותם עליו. לפי הרשום באמרה הוא כיבד את הנאשם בסיגריה ואיפשר לו לעשן. העד ציין כי התרשם שמצבו של החשוד היה ״בסדר״ ושהוא מסוגל למסור עדות, שלולא כן היה רושם זכ״ד בעניין, או מציין זאת באמרה, ונמנע מהמשך גביית העדות. כך הדבר גם לגבי אירועים חריגים במהלך העדות. כשהתבקש לציין דוגמאות לאירועים מיוחדים שהיה רושם לו התרחשו, מסר כי הדבר יכול להיות למשל, שחשוד מתלונן על כאבי ראש, כי אינו חש בטוב, או כי אינו מסוגל למסור את העדות. הוא ציין כי תוך כדי גביית האמרה הוא מציין אירועים כגון כיבוד החשוד בשתייה, או מתן סיגריה וכדומה.

העד מסר כי במהלך החקירה שניהל האווירה הייתה נינוחה, והנאשם לא ציין בעיה כלשהי. כשהנאשם ביקש לעשן ניתנה לו האפשרות לעשות כן, ולא היה דבר חריג מעבר לכך. עוד ציין כי במהלך החקירה הנאשם ישב מולו כשרגליו כבולות. העד מסר כי לא יכול להיות שהשאיר את הנאשם בחדר לבד למשך זמן רב, שכן המדובר בחדר חקירה בו נמצאים תיקים נוספים, ובכלל זה תיקו האישי, כך שלא יכול להיות שעזב את החדר.

העד נשאל לגבי הטענה כי נאמר לנאשם שביתו נהרס, שנעקרו עצי זית והדר והושמדו טון וחצי דבש. הוא השיב כי עד למועד מתן העדות בבית המשפט כלל לא ידע שלנאשם עצי הדר ודבש, והוא (החוקר) בכל מקרה לא אמר דבר כזה.

העד טען שמעולם לא אמר לנאשם כי נותרו לו שנים מעטות לחיות וכי אם יודה ישוחרר מייד, ומסר כי הדבר אסור, והוא אינו נוקט אמצעים כאלה.

העד ציין כי עיין בזכ"דים של השב"כ לפני גביית העדות, וכי על סמך הזכ"ד הקריא לנאשם את החשד נגדו, וזה היווה גם קו מנחה לעדות שנגבתה.

העד הכחיש את הטענה לפיה אמר לנאשם שאם יחזור בו מדבריו בשב"כ יקרה "תוהו ובוהו".

העד נשאל האם תקירת השב"כ והמשטרה התנהלו באותו מקום, ומסר כי אף שמדובר באותו מתקן, העדות נגבתה בחדר החוקרים של המשטרה. הוא ציין כי הוא לא נכנס לחדרי החקירות של השב"כ, והם (השב"כ) לא נכנסים לחדרי החקירות של המשטרה. הוא אף ציין שחדר החקירות של המשטרה נראה שונה מחדרי החקירות של השב"כ.

העד מסר כי אינו יודע לכתוב בערבית ולכן כתב את האמרה בעברית, חזר על כך שאת מה שכתב תרגם לנאשם, וכן ציין כי הזהיר את הנאשם בערבית. העד ציין כי לא ידע כמה שעות ישן הנאשם לפני העדות שגבה, וגם לא ידע כמה יממות נחקר קודם לכן על ידי השב"כ והמשטרה. העד ציין כי היה בפניו זכ"ד של הדברים שנאמרו במהלך החקירה בשב"כ טרם גביית ההודעה, אך לא השתלשלות של כל החקירה או כל האירועים שקדמו לה. הוא מסר כי בדרך כלל נמצא בפניו זכ"ד אחד, אך הוא אינו זוכר לגבי מקרה זה.

**עדותו של השוטר משה לוי**

עד זה ציין בעדותו בפנינו כי הוא זוכר את החקירה באופן כללי, אך לא לפרטי פרטים. הוא מסר כי את הודעותיו של הנאשם גבה במתקן אשקלון, לאחר שהזהירו כחוק. החקירה התנהלה בשפה הערבית והאמרות נכתבו בשפה העברית. לאחר מכן הקריא את ההודעות לנאשם בערבית והוא אישר אותן בחתימת ידו.

העד מסר כי הוא מתעד אירועים חריגים המתרחשים במהלך חקירה באמרות עצמן או בזכ"ד נפרד. במקרה של הנאשם הוא ציין בגוף האמרות את העובדה שנתן לנאשם לאכול ולשתות. הוא מסר כי האווירה בחקירה הייתה נינוחה. הוא זכר את הנאשם כאדם בעל סבר פנים יפות, חייכן, ששיתף פעולה וענה לשאלות שנשאל.

הוא זכר שהנאשם נזקק לטיפול תרופתי עקב מצבו הבריאותי – וכי תרופות סופקו לו על ידי מרפאת הכלא. הוא זכר כי פעם אחת נכנס חובש לחדר וביקש לתת לנאשם את התרופה היומית שלו. הוא מסר כי לאחר בירור שעשה, איפשר לנאשם ליטול את תרופתו, והוא תיעד זאת בגוף האמרה (הודעה מס' 7 מיום 2.4.06 גיליון 3 ש' 62).

העד מסר כי עד כמה שהוא זוכר הנאשם ישב מולו בחקירה לא אזוק. הוא הכחיש שאמר לנאשם כי ביתו נהרס או כי עצים נעקרו ודבש הושמד, ואף הכחיש כי אמר לנאשם שאם יודה הוא

ישוחרר בשל מצבו הבריאותי וגילו, או כי אם יחזור בו מדברים שמסר בחקירת השב״כ יקרה ״תוהו ובוהו״.

העד ציין כי הגופנים (FONT) השונים באמרות המודפסות נובעים מכך שהמדובר בטופס מובנה, והכחיש כי דובר בהעתקה ממקום אחר. הוא ציין כי בפתח הדברים באמרה מיום 19.3.06 שאל את הנאשם לשלומו, והנאשם ענה ״ברוך השם בסדר״ והדבר נרשם. הוא טען כי כיוון שהנאשם אדם מבוגר הוא שאל כדי להיות בטוח לגבי מצבו, ותיעד זאת בגוף האמרה. הוא מסר כי באופן כללי ידע על מצבו הבריאותי של הנאשם, אך לא זכר בדיוק מתי נודע לו עניין זה. העד ציין כי הוא לא זכר שקרא משהו יוצא דופן בזכ״דים של השב״כ לפני החקירה. העד עמד על כך שבחקירה שהוא ערך, הנאשם הבין כי יש לו זכות לשתוק או לספר כל דבר. הוא הוסיף כי בפתח החקירה הוא מציג את עצמו ומסביר לנחקר היכן הוא נמצא ולאחר מכן מקריא את האזהרה. עניין זה הוא מבצע תמיד לכל חשוד ולכן הוא לא תיעד זאת באמרה, למעט פרטיו האישיים הרשומים. הוא טען כי הוא מקריא כל דבר, גם את פרטיו האישיים של החשוד בפניו כדי לוודא שאכן אלו פרטיו, וגם את האזהרה.

העד אישר כי החקירה בוצעה בחדר חקירות של המשטרה, המצוי במתחם חקירות של השב״כ באשקלון.

העד ציין כי אינו זוכר התייחסות למצבו הרפואי של הנאשם בזכ״דים של השב״כ אותם קרא, והוסיף כי אם הייתה בעיה רפואית הדבר היה עולה. מכיוון שהאמרה אכן נגבתה, משמעות הדבר הינה שהנאשם היה כשיר לחקירה. הוא לא זכר אירוע יוצא דופן לגבי מצבו הרפואי של הנאשם אבל זכר שהוא כיבד את הנאשם בשתייה חמה וקרה ובסיגריות, ושהנאשם עישן הרבה.

העד ציין כי ההודעה השביעית נגבתה לא בתאריך 4.2.06 כפי שרשום באמרה, אלא בתאריך 2.4.06, והמדובר בטעות סופר.

**עדותו של השוטר יעקב ברזגי**

עד זה מסר כי הוא זוכר את הנאשם אך הוא מסתמך על הכתוב באמרות שגבה. הוא ציין כי הוא גבה את האמרות בשפה הערבית, רשם אותן בעברית, ולאחר מכן תרגם אותן שוב בעל פה לערבית עבור הנאשם. בעדות מיום 26.3.06 הוא הטיח בנאשם דברים שאמרו עליו אחרים, והנאשם התייחס אליהם. העד לא מצא מעיון באמרה כי היו אירועים חריגים במהלך החקירה, אחרת, לדבריו, היו אלה נרשמים. בעדות מיום 14.5.06 הוא הציג לנאשם מסמכים וזה התייחס לכל אחד מהם. הוא ציין כי האווירה בחקירה הייתה טובה, וציין כי מדובר באדם מבוגר. העד מסר כי הנאשם זכר פרטים מתוך המסמכים שהוצגו לו, ולהערכתו יש לנאשם זיכרון טוב.

העד מסר כי אם הנאשם היה מבקש להיבדק על ידי רופא, הוא היה רושם זאת באמרה ואף מפסיק את גבייתה, שכן ידועה לו משמעותה של אמרה שנגבתה מנחקר שאינו במצב המאפשר למסור עדות בצורה טובה. הוא ציין כי נחקרים המובאים בפניו אינם אזוקים אלא אם כן ישנו

חשש כי הם מסוכנים ועלולים להתפרע. במקרה של הנאשם דובר באדם מבוגר ולא היה בכך צורך.

העד נשאל האם אמר לנאשם כי הרסו את ביתו, עקרו עצים והשמידו דבש, וענה כי זאת הפעם הראשונה שהוא שומע על כך שנהרס ביתו של הנאשם. העד אף הכחיש כי אמר לנאשם שאם יודה אזי בשל גילו המבוגר ומצבו הרפואי ישותרר מיד. העד ציין כי לא השתמש באמצעי לחץ פיזי או מילולי כלשהו, והכחיש בתוקף כי נתן לנאשם להבין שאם יחזור בו מהודאותיו בשב״כ יקרה ״תוהו ובוהו״. העד טען כי לא היה צורך להפעיל כוח או לחץ, והכל התרחש באווירה טובה.

בחקירתו הנגדית ציין העד כי אינו יודע כמה זמן נחקר הנאשם לפני שהוא חקר אותו, אך היו מקרים שבהם הייתה חקירה רצופה לפני כן, ואז המתינו החוקרים על מנת לאפשר לנחקר זמן מנוחה כחוק. הוא אישר כי הוא מסתמך על זכ״דים של השב״כ, הכתובים עברית, וציין כי תרגם לנאשם חלק מהזכ״ד בו יוחסה לו הברחת נשקים. העד אישר כי הוא זה שביקש הארכת מעצר בחלק מהמקרים, אולם לא זכר מהן פעולות החקירה שהתבקשו, ואמר כי לצורך כך יש לבחון את הדו״חות שהוצגו לשופט שדן במעצר. העד ציין כי לא ידע מי תפס את המסמכים שהוצגו לנאשם במסגרת האמרה מיום 14.5.06, או מי תרגם אותם. הוא ציין כי הוא עצמו אינו קורא ערבית, ולכן הסתמך על התרגום, אולם לנאשם הציג את המקור בערבית. עוד ציין כי את העדות של אחר אותה הציג לנאשם תרגם לו לערבית כיוון שזו הייתה כתובה בעברית והנאשם אינו קורא עברית.

**עדותו של המכונה ״יורי״**

עד זה היה הממונה על חקירת הנאשם מטעם שירות הביטחון הכללי. העד מסר כי הוא זוכר את החקירה ואת הנאשם. הוא טען כי דובר בחקירה מורכבת כשבסך הכל האווירה הייתה מאוד נינוחה, עם הרבה מאוד כבוד הדדי. העד הוסיף שהנאשם הוחזק בתא מעצר ככל העצורים, אולם זכה בחקירה ליחס מאוד מכובד בהתאם למעמדו. הוא ציין כי כמעט בכל תקופת החקירה הנאשם כובד באוכל ממטבח החוקרים, עישן סיגריות, וקיבל מענה גם לבקשות מיוחדות כגון לבנים מסוג ״בוקסר״, ספר קוראן, ואפילו היו מקרים שהוא ביקש להישאר בחקירה כי שיעמם לו.

העד דחה את הטענה כאילו הנאשם לא זכה לטיפול רפואי, ואמר כי מפאת גילו של הנאשם ועקב תלונותיו נבדק על ידי רופא שב״ס והיה במעקב צמוד של מרפאת שב״ס. הוא הוסיף שהוא אישית היה בקשר עם מרפאת שב״ס ווידא שהנאשם נבדק ובעיותיו הרפואיות טופלו בהתאם לשיקול דעתם המקצועי של הרופאים. העד ציין כי מסר לנאשם שאין אפשרות להעביר לו תרופות, אולם עורך דינו יכול להעביר פירוט של התרופות בהן הנאשם עושה שימוש. יחד עם זאת, העד מסר שהאחריות על הטיפול הרפואי נתונה בידי רופא הכלא.

העד התבקש לומר את התרשמותו ממצבו של הנאשם, ומסר כי לא התרשם שהנאשם לא יכול היה להיחקר. הוא זכר מקרה אחד בו הנאשם יצא מהתא עייף מאוד ולכן הובא חובש לחדר

החקירה, והנאשם הסביר כי הדבר קשור למצבו הנפשי ולא הפיזי באותו היום. העד חזר וציין כי היו מקרים בהם הנאשם ביקש להישאר בחדר החקירות דווקא.

העד התבקש להתייחס לשאלת אזיקתו של הנאשם בחקירה. הוא מסר כי ככלל, במרבית החקירה לא היה הנאשם אזוק כלל. יחד עם זאת, היו מקרים בהם הנאשם התעצבן וסטר לעצמו. על רקע זה נאזק כדי לא לפגוע בעצמו, ומיד לאחר שנרגע הוסרה האזיקה. הוא ציין כי במקרים בהם יצא מחדר החקירה למספר דקות היה הנאשם אזוק לכסא, אולם מדובר באזיקים עם שרשרת ארוכה המאפשרת תנועת ידיים חופשית כולל עישון. הוא הדגיש כי מעולם לא יצא לפרקי זמן של 4-7 שעות כפי שנטען בטיעוני הזוטא, ובדרך כלל דובר במספר דקות ולכל היותר לחצי שעה. הוא הוסיף כי הנאשם לא התלונן על כך בפניו. לשאלת בית המשפט ענה העד כי לנאשם לא היה שעון.

העד התבקש להתייחס לטענה כי נאמר לנאשם שביתו נהרס, עצים נעקרו ודבש הושמד. העד ענה כי זו הפעם הראשונה שהוא שומע על כך שלנאשם היה דבש, לא נאמר לנאשם דבר הנוגע לביתו והחקירה כלל לא הגיעה לנושא זה. העד הכחיש כי נאמר לנאשם שאם יודה יוכל להשתחרר לעזור למשפחתו או כי יוכל להשתחרר בשל גילו ומצבו הרפואי.

העד אישר כי במהלך החקירה הוטחו בנאשם האשמות על בסיס החשדות שהיו בידי החוקרים, והיו מקרים בהם נאמר לו שהוא משקר, אולם לא הייתה כוונה להשפילו. לדבריו, החקירה נוהלה בהרבה כבוד הדדי ובמספר פעמים בחקירה אף ציין הנאשם לחיוב את היחס שקיבל מהעד. העד עמד על כך שלא נעשה שימוש באיומים או בכוח, כי החקירה התנהלה בשיג ושיח ארוך, וכי הוא זוכר את האווירה בחקירה זו כיוצאת דופן לטובה ביחס לחקירות אחרות שניהל. הנאשם שיתף פעולה בחלקים נרחבים של החקירה, והיו ימים בהם די היה לומר לנאשם כותרת של נושא והנאשם מסר גרסה מפורטת בעניין.

בחקירתו הנגדית מסר העד כי נודע לו על מעצרו של הנאשם מכלי התקשורת כשעה לפני שפגש אותו במתקן החקירה. עוד ציין העד כי את חקירתו הראשונה של הנאשם ניהל החוקר המכונה "האדי", ואילו הוא לא היה מודע לה באותו זמן, אלא רק בדיעבד.

העד מסר כי גודלו של התא בו שהה הנאשם הוא סטנדרטי, יש בו חלון אולם זה סגור והאוורור מתבסס על מערכת מיזוג מרכזית.

העד נשאל מדוע הנאשם נחקר ברצף ביום 15.3.06 החל משעה 10:55 ועד לאחר חצות, וזאת כאשר הנאשם כבר נחקר לפנות בוקר משעה 02:40 ועד 05:45. העד ענה כי דובר בתחילת החקירה, הנאשם ביקש לפרט את פעולותיו באופן כרונולוגי וזה לקח זמן. הנאשם לא הביע רצון להפסיק את החקירה או ללכת לישון, ובמהלכה הוא אכל, שתה ועישן להנאתו.

העד התבקש להתייחס לאמירות המופיעות בזכ"דים שערך החוקר המכונה "ג'ינו", כמו "אתה מתנהג כמו ילד קטן, יושב ומשקר במצח נחושה" והאם הן שומרות על כבודו של הנחקר. העד ענה כי בכל חקירה יש נקודות של עימות ואי הסכמה, ועדיין כבודו של הנחקר נשמר.

העד ציין כי הנאשם לא היה מנוע מפגש עם עו"ד, אך כל נושא הקשר עם עו"ד הוא באחריות המשטרה. למיטב ידיעתו זו הודיעה לעו"ד על מעצרו של הנאשם, אולם הוא לא בדק זאת.

הסניגור הפנה את העד לזכ"ד מיום 19.3.06 בשעה 16:35, בו אמר הנאשם שמלבישים לו האשמות ועדיף שיביאו חרב ויקטעו את ראשו, ושאל האם זה מצביע על אדם שקט ושליו. העד השיב כי הוא לא התרשם שהנאשם הוא אדם שקט ושליו, אלא אדם שנוטה להתפרצויות חימה. הוא הוסיף כי התנהגות זו ודומות לה של הנאשם אפיינו אותו לעיתים, למרות שרוב החקירה נוהלה באווירה חיובית מאוד עם הרבה כבוד הדדי.

העד התבקש להסביר מהי "שיחת שכנוע" ומסר כי זו שיחה במהלכה מוצע לנחקר להגיע להבנה, להודות במיוחס לו ומוסבר לו אופי המידע שברשות החוקרים. אופי השיחה תלוי בנחקר ובאופיו. במקרה של הנאשם, עיקר השיחה עסק ברומו של עולם ובנושאים כלליים, כיוון שהנאשם הינו אדם שהסתובב בהרבה מאוד מקומות, אך בסוף השיחה תמיד חוזרת לנושא החקירה. העד לא זכר בדיוק מה נאמר באותה שיחה שלא הניבה פירות חקירתיים, אולם ציין שבין היתר נאמר שעדיף לנאשם להודות.

העד נשאל האם אמירה לנאשם ש"יגיע להבנה עם חוקריו" פירושה הסכם שהנאשם יודה ואחר כך ילך הביתה כי הוא זקן. העד ציין כי לא נאמר לנאשם שילך הביתה או כי הוא זקן. העד אמר שלא קרה דבר כשהנאשם לא הודה, אולם הודאה היא לטובתו שכן כך תסתיים החקירה.

העד נשאל האם לא הופעל לחץ גדול על הנאשם באופן שגרם לו לרצות לפגוע בעצמו, כפי שמופיע בזכ"ד מיום 21.3.06. העד אמר כי דובר בהתקף זעם של הנאשם בתחילת החקירה, ולאחר מכן הוא נרגע וחזר לשיחה נינוחה, ארוכה ומפורטת.

העד הכחיש שהבטיח לנאשם שאם יימצא דובר אמת בפוליגרף לא ימשיכו לשאול אותו על אותם דברים בהם יצא דובר אמת. נכון הוא שלאחר הבדיקה התמקדו בנושאים אחרים, אך אין מניעה לחזור לאותם נושאים. לדבריו, הסיכום וההבנה עם הנאשם היו רק למקרה בו יצא דובר שקר.

העד הכחיש כי אמר לנאשם שאם יסיים את החקירה יעבור לבית הסוהר, שם התנאים טובים יותר ולכן עדיף לו לסיים את החקירה. כשהופנה לזכ"ד מיום 9.4.06 שעה 13:30 סעיף 8 בו נכתב שהנאשם נשאל אם אינו רוצה לסיים את חקירתו ולעבור לכלא, שם יזכה לביקורי משפחתו, ענה העד כי השאלה שהוצגה לנאשם הייתה בעיקר דרך לומר לו לגמור את החקירה. העד הוסיף כי החקירה לא התמקדה רק בנושא הספינה "קארין A" אלא גם בנושא מקורותיו הכספיים וקשריו לתנזים פת"ח. ה"הבנה" בה מדובר היא שהנאשם ימסור מידע, לאו דווקא זה המוביל להפללתו.

**עדותו של המכונה "האדי"**

עד זה הוא חוקר השב"כ שחקר את הנאשם ביום בו הגיע למתקן החקירה, ופעם נוספת בשלב מאוחר יותר.

העד מסר שהנאשם נשאל לשלומו וענה כי הוא חש בטוב אם כי אמר לו שהוא סובל מסרטן. הנאשם לא התלונן על כאבים, ואם היה עושה זאת הוא היה מזמין רופא או חובש. העד אמר כי לא נמסרו לידיו תרופות מעורך דינו של הנאשם, וכלל לא זכור לו שהנאשם ביקש תרופות. העד נשאל לגבי שעת החקירה הראשונה, 02:40 וענה כי נדרש להתחיל בחקירה על ידי ראש הצוות וכך עשה. עוד ציין כי למיטב זכרונו לא חקר את הנאשם כשזה אזוק, וגם אם היה עם אזיקים, ולהערכתו לא היה, לא דובר באזיקי רגליים. העד הכחיש כי הוא השאיר את הנאשם פרקי זמן של 4-7 שעות בחדר החקירות לבדו כשהוא אזוק. העד אף הכחיש שאמר או כי הכיר אמירה לנאשם שביתו נהרס, עצים נעקרו והושמד דבש. הוא הכחיש כי הבטיח לנאשם כי ישוחרר אם יודה.

העד אישר כי נאמר לנאשם שהוא משקר, וטען כי המדובר בטענה לגיטימית מצדו של חוקר. הוא מסר כי לא היה שימוש באיומים או בכוח בחקירה, ואם הנאשם פחד זה עניין סובייקטיבי אך הוא לא הפחיד אותו בכוונה.

בחקירתו הנגדית מסר העד כי הוא ידע מיהו הנאשם וידע שהוא פעיל ותיק מאוד בפת"ח, והיה אחראי על מנגנון הרכש והכספים בארגון זה.

העד ציין כי מסר לנאשם דף המפרט בשפה הערבית את זכויותיו כעצור וכנחקר, אך הוא לא הקריא לו אותו בעצמו. הוא אישר כי המשפט הראשון שרשם בזכ"ד היה המשפט הראשון שאמר לו הנאשם, והוא כי "נמאס לנאשם מהסיפור של קארין A".

העד התבקש לתאר את התרשמותו ממצבו של הנאשם בחקירה הראשונה שהתנהלה לפנות בוקר, ואמר כי הוא זכר שנכנס איש מבוגר, עייף יחסית, בהתאם לשעה בה הגיע. הם שוחחו כרגיל, והוא זכר כי הנאשם היה מעשן כבד, קיבל הרבה סיגריות, וכי השיחה התנהלה באווירה חיובית. הוא לא זכר אם הנאשם היה נסער או מדוכא, ולא זכר דבר חריג אחר. לדבריו, למיטב הבנתו, האמירה של הנאשם ש"נמאס לו" מתיישבת עם העובדה שהיה במעצר הגנתי או מניעתי בעקבות פרשת קארין A.

העד עמד על כך שתפקידו להגיע לחקר האמת, ואם הנאשם היה מוסר תזה הגיונית שהייתה מתיישבת עם המידע המודיעיני, הוא היה מקבל אותה.

העד חזר ואמר כי הוא לא זוכר אם הנאשם היה אזוק בחקירות שערך, אבל אם היה שימוש באזיקים הרי זה רק אם העד הרגיש מאויים. הוא הוסיף כי הוא לא זוכר דבר כזה, ואם הנאשם היה צועק או משתולל הוא היה רושם זאת.

העד חזר והדגיש כי מסר את דף הזכויות והחובות לנאשם, ושם רשומות זכויותיו. הוא עצמו לא אמר לנאשם כי זכותו לשמור על זכות השתיקה או להיות מיוצג בידי עו״ד.

העד עמד על כך שאם הנאשם היה מתלונן בפניו על שלא נותנים לו להכניס למתקן המעצר את תרופותיו, או כי הוא מרגיש רע ואינו מקבל עזרה מרופא הכלא, הוא היה רושם זאת. עם זאת, ציין כי ידע שהנאשם הוא אדם חולה. הוא אישית לא קיבל כל פנייה על הכנסת תרופות.

העד חזר והדגיש כי חקר האמת הוא ״קדוש״ והוא המטרה, ולכן כאשר הנאשם אמר לו שהוא מוכן ״להודות בכל דבר״, הסביר לו כי אין מקום לדיבורים אלה ועליו לספר בעצמו מבלי להוסיף או לגרוע. הוא התרשם שהנאשם לא מוכן להודות בכל דבר, וידע לעמוד על שלו בחקירה. העד אמר כי חקירת הנאשם נמשכה מאחר שהיו נושאים שדרשו ליבון והבהרה, והיו ידיעות אחרות שהוא בחר להכחיש או לא להסביר אותן.

**עדותו של המכונה ״ג׳ינו״**

עד זה היה חוקר שב״כ שנטל חלק בחקירתו של הנאשם, וציין בפתח דבריו כי מאחר שחלפו שנתיים ממועד החקירה, חלק ממנה הוא לא זכר.

העד עומת עם טיעוני הזוטא, ומסר כי הנאשם קיבל טיפול רפואי ממרפאת הכלא. הוא זכר שבאחד הזכ״דים מסר הנאשם שיש לו פוליפים בקיבה, ותוך זמן קצר הוצא לבדיקה ולטיפול רפואי. העד מסר כי כחוקר הוא אינו הסמכות בנוגע להעברת תרופות לנאשם, וכי ההחלטות בנושא זה הן של רופא הכלא. עוד ציין כי לא זכור לו מקרה בו הנאשם הסב את תשומת ליבו לכך שהוא זקוק לטיפול תרופתי.

העד הכחיש כי הנאשם היה אזוק ברגליו בחקירות בהן נכח, והוסיף כי הנאשם נאזק בידיו לאחר שחבט בעצמו ולאחר שהוזהר כי אם ימשיך לחבוט בעצמו ייאזק, על מנת שלא יוכל לפגוע בעצמו.

העד טען כי לא היה מקרה בו הושאר הנאשם אזוק לבדו בחדר למשך 4-7 שעות, וטען כי לא אמר לנאשם שכוחות צה״ל הרסו את ביתו והשמידו עצים ודבש. העד הוסיף כי אף לא נאמר על ידו לנאשם שאם יודה הוא יצא לחופשי לאור גילו.

העד ציין כי לא פעם אמר לנאשם שהוא מסתיר מידע ומסרב לתיתו לחוקריו, אולם לא השתמש באלימות, איומים או ניסיונות הפחדה.

בחקירתו הנגדית נשאל העד ביחס למשמעות האמירה לנאשם כי ״הובא לחקירה על מנת להודות בכבוד״. העד מסר כי להודות באמת זה כבוד, ומטרתו כחוקר היא שהנחקר יודה הודאת אמת.

העד ציין כי נושא החקירה היה מעורבותו של הנאשם בנושא הספינה קארין A, קשריו למימון והברחת אמל״ח, וקשריו לאיראנים ולאחרים ממדינות ערב, שמטרתם ביצוע פח״ע נגד ישראל.

העד מסר כי רשם בזכ״ד שהנאשם ״התנהג כילד קטן״, שכן חרף גילו המבוגר התנהג לפעמים בחקירה בצורה ילדותית. כשהתבקש להסביר למה הכוונה ענה, שהתנהגות ילדותית היא כשאדם נחקר על מידע ומוסר גרסת כיסוי הפוטרת אותו מאחריות, אף שהוא יודע שחוקריו יודעים על מה הם מדברים איתו.

העד ציין שנאמר לנאשם כי אל לו ״להתנהג כמו פרחח״, ובמילה ״פרחח״ כוונתו הייתה לאדם שצועק, משקר, חסר כבוד שעושה הכול כדי להציל את עורו.

העד ציין כי ככל הנראה ידע באותה עת על כך שהנאשם נחקר לפנות בוקר על ידי החוקר המכונה ׳האדי׳, אולם לא מצא כל מניעה מלחקור את הנאשם עד השעה 18:00.

העד נשאל על דבריו מחקירה שתועדה בזכ״ד מיום 20.3.06, בה נרשם שאמר לנאשם שאין זה מקרה שמעצרו הוארך ב-18 ימים לאור המידע הרב שהוא מסתיר מחוקריו. נטען בפניו כי בכך הוא אמר לנאשם למעשה, כי ככל שיסתיר מידע מעצרו יתמשך. העד השיב על כך שניתן להבין שבית המשפט החליט להאריך את המעצר בהסתמך על המידע שהיה בפניו. העד נשאל על התבטאות נוספת שלו כלפי הנחקר שתועדה בזכ״ד מיום 27.3.06. שם נרשם כי אמר לנאשם ש״בסופו של דבר יודה״. נטען בפני העד כי ההגיון אומר שהמשמעות הינה שעד שהנאשם לא יודה – החקירה לא תסתיים. העד השיב כי זה לא מה שנכתב, ובסופו של דבר הנאשם אכן העביר הרבה מידע.

העד נשאל על המקרים בהם הנאשם היכה את עצמו ואמר כי הוא זוכר שהנאשם היכה את עצמו מספר פעמים בכפות ידיו, ומספר פעמים הצליחו להרגיע אותו על ידי בקשות שיפסיק זאת. עוד ציין העד כי לדעתו זו התנהגות ילדותית. העד נשאל אם אין התנהגות זו מעידה על ייאושו של הנאשם, והשיב כי להערכתו זו הייתה הצגה, שכן עובדה שלאחר מכן הנאשם מסר עוד הרבה מידע.

**עדויות עדי התביעה במשפט הזוטא - סיכום ביניים**

ניתן לחלק את העדויות שנשמעו לעדויות אנשי המשטרה ולעדויות אנשי השב״כ. אנשי המשטרה מסרו כי החקירה נוהלה בנינוחות, ללא בעיה כלשהי, וכי הנאשם מסר דברים מרצונו הטוב והחופשי. עוד נמסר כי הנאשם כובד במהלך החקירות במזון ובמשקה, לא הושאר לבדו, ולא הושמעו כלפיו איומים כלשהם, או הבטחות בהקשר לחקירתו.

עדי השב״כ ציינו כי הנאשם קיבל יחס של כבוד בהתאם למעמדו. הם לא הכחישו כי היו בחקירתו מקרים של ״עימות״ במסגרתם הטיחו בנאשם כי הוא משקר וכי הוא מסתיר מידע, אולם טענו כי הדבר הינו טבעי כחלק מחקירה. החוקרים הכחישו כי הנאשם הושאר פרקי זמן ארוכים לבדו בחדר החקירות. לדבריהם, אמנם היו מספר מקרים בהם הושאר הנחקר לבדו, אולם דובר בפרקי זמן קצרים, במהלכם היה אזוק בידיו באזיקים עם שרשרת ארוכה. עוד צויין כי הנאשם לא היה

אזוק במהלך החקירות, למעט במקרים בהם סטר לעצמו וניסה לפגוע בעצמו. גם במקרים אלה, לאחר שהנאשם נרגע, הוסרו האזיקים.

גם חוקרי השב״כ הכחישו כי השמיעו כלפי הנאשם איומים, או כי מסרו לו שביתו נהרס וכיו״ב, או כי הובטחו לו הבטחות שאם יודה ישוחרר מפאת גילו.

בכל הנוגע למצבו הרפואי, ציינו חוקרי השב״כ כי הטיפול בנאשם היה על ידי מרפאת הכלא, ולאור גילו אף דאגו לכך שיקבל טיפול בהתאם לשיקול הדעת של גורמי הרפואה, עליהם אינם אחראים.

**עדות הנאשם במשפט הזוטא – החקירה הראשית**

הנאשם פתח וציין כי הוא סובל מיתר לחץ דם, טחורים, אולקוס וכאבי גב.

הנאשם תיאר כי היה בכלא יריחו תחת פיקוח אמריקאי ובריטי, וכיצד ביום 14.3.06 בשמונה בבוקר החל מצור של צה״ל על המוקטעה ביריחו, עד אשר הגיע דחפור והרס את המבנה. הוא ואחרים נלקחו למת״ק יריחו ובשעות הערב הועבר למגרש הרוסים. הנאשם ציין כי היה לו קר כיוון שהיה לבוש בפיג׳מה בלבד. ממגרש הרוסים הועבר לאשקלון, וכל אותו זמן היה נתון באזיקים.

חקירתו בשב״כ החלה באותו הלילה ונאמר לו כי הוא חייב להודות בכל דבר. הנאשם ציין כי אמר לחוקרו שאין נגדו דבר, והוא אדם שמבצע את עבודתו וממלא הוראות.

לטענתו, היה אזוק במהלך החקירה בידיו וברגליו, וציין כי ידיו היו מלפנים. הנאשם אמר כי לא קיבל את התרופות שהוא נוטל דרך קבע, ואף שביקש לראות רופא נאמר לו כי יראה אותו רק למחרת. הנאשם טען כי נלקח לרופא רק לאחר שהתחנן פעמים רבות שיועבר לבדיקה. לאחר בדיקת הרופא ניתנה לו תרופה רק נגד לחץ דם, אולם לא טיפלו בבעיותיו האחרות.

הנאשם ציין כי הוחזק בתא שגודלו מטר וחצי על שני מטר, והוא היה נרדם מהר מרוב עייפות, אולם עקב הכאבים מהם סבל התעורר הרבה.

הנאשם אמר כי אינו זוכר רבות מחקירתו. הוא זכר שחוקריו רצו שהוא יודה שהוא קנה את קארין A, אולם אין לו קשר לכך. לטענתו, חוקריו דיברו אליו בחוצפה, פעמים התייחסו אליו בצורה אלימה ופעמים בצורה רגועה.

הנאשם טען כי חוקריו אמרו לו שהם מעוניינים בהודאה מפורשת ומפורטת על כך שהוא יודע על הפרשייה של קארין A, ושאם יודה - יוכל ללכת הביתה. הנאשם טען כי אמר לחוקריו שהוא מוכן להודות אך לא לשקר.

הנאשם מסר כי עורך דינו אמר לו שהרסו את ביתו, וגרפו עצים וכוורות. לדבריו, החוקרים אמרו לו שהם שמעו על כך, והעניין השפיע עליו באופן שלילי.

הנאשם נשאל על ביקוריו אצל רופא הכלא, ואמר כי גם כשהיה מתלונן היה מקבל רק אקמול. כשנאמר לו שלאחר שהתלונן בחקירתו על בעיות עיכול קיבל תרופה בשם ״גסטרו״ ענה כי אינו זוכר זאת. במקרה אחר זכר הנאשם שקיבל פראפין לבעיית העצירות שלו, אולם טען כי זה היה חד פעמי. לדבריו, אף שקיבל תרופות ללחץ דם, הרגיש כי זה לא עזר לו. הנאשם נשאל אם סיפר לרופא על המחלות הכרוניות שלו, ואמר כי סיפר הכל וגם כי יש לו אסטמה, כי הוא מתקשה לנשום בצורה טובה וכי הוא סובל מפעימות לב מואצות.

עוד ציין כי השוטר שגבה את אמרתו ישב עם דו״ח השב״כ ושאל אותו לגביו, אולם הוא אינו יודע מה כתב השוטר, שכן החקירה התנהלה בערבית והדברים נרשמו בעברית.

הנאשם נשאל אם האמין שישוחרר אם ימסור את מה שחוקריו רצו לשמוע וענה שכן. לדבריו, חוקריו סיפרו לו על נחקר אחר שהיה צפוי לקבל 4 מאסרי עולם, אולם מוחמד דחלאן התערב בעניינו והם שחררו אותו.

הנאשם מסר כי לא ביקש מהחוקרים שיתקשרו לעו״ד, ומשפחתו היא זו שהתקשרה לעו״ד עבורו. הנאשם הוסיף כי ביקש מחוקריו לראות עו״ד ותשובתם הייתה שאם יבוא עו״ד וישאל עליו הם יתנו לו לראות אותו.

**עדות הנאשם במשפט הזוטא – החקירה הנגדית**

הנאשם מסר כי הרגיש מושפל בחקירתו. עוד מסר כי אמר לחוקריו את כל מה שהם רצו לשמוע. לאחר מכן נשאל הנאשם באיזה שלב של החקירה ״נשבר״. הנאשם לא השיב על כך ישירות ותחת זאת טען כי מההתחלה אמר לחוקריו שמה שיש לו לומר הוא יספר, ואת מה שהוא ידע הוא אכן סיפר. כשנשאל אם הדברים שמסר ביום הראשון לחקירתו נאמרו לאחר לחץ, ענה כי סיפר את הדברים כי זה מה שקרה וכיון שלא דובר בעניין סודי. עוד טען כי בחקירתו לא שיקר בשום שלב, וסיפר את מה שהוא ידע, אולם אינו יודע מה נרשם בעברית.

לטענתו, חוקריו השפילו אותו, אמרו לו שהוא שקרן ודיברו אליו בצורה ״מלוכלכת״. עוד טען כי היו עוזבים אותו בחדר ריק לבד כשהוא אזוק, וחוזרים רק כעבור כמה שעות.

הנאשם אמר כי בחקירתו פעל לפי הוראות החוקרים ובודאי לא הכתיב דרישות או את תנאי החקירה. כשנשאל כיצד מצא את הכוח לומר לחוקריו כי ״מדינת ישראל חייבת לו כסף״, לא השיב תשובה ישירה. הנאשם אישר כי עישן בחקירתו ואמר כי לקח סיגריות מחוקריו בהתאם לבקשתו. הנאשם נשאל מה עוד קיבל והשיב ״כלום״. כשנשאל באופן ספציפי, אם קיבל קוראן, קפה, תה ולבנים, ענה שקיבל. לדבריו הוא לא ביקש זאת אלא חוקריו הביאו לו.

הנאשם חזר על כך שהיה נתון בלחץ כבר מהיום הראשון, אולם הדגיש כי בחקירתו מסר רק את האמת. עוד ציין כי הכחיש כל קשר לספינה קארין A וכי התעקש על כך.

לשאלות בית המשפט ענה כי הדברים הרשומים באמרותיו תורגמו לו, אולם הוא לא ידע מה נרשם בפועל. עוד ציין הנאשם כי היה מתעצבן לעיתים בחקירתו (״מרוב הדיבורים הבן אדם משתגע״) אולם עצביו התבטאו בכך שהוא ״התפוצץ מבפנים״ ולא הראה זאת לחוקריו.

**עדותו של מוחמד חיג׳אזי**

עד זה מסר כי היה עם הנאשם באותו תא בכלא אשקלון באפריל 2006, למשך כשבועיים. הוא מסר כי הנאשם היה חולה וחלש והיה קשה לו לנשום, ללכת או לעמוד על רגליו. הוא טען כי פעמים רבות הוא וחבריו לתא דפקו על דלת התא וביקשו רופא עבור הנאשם, כי ״הוא הולך למות״ והסוהרים נתנו לנאשם ״מקסימום אקמול״. הוא ציין כי מעולם לא הגיע רופא לתא.

בחקירתו הנגדית ציין העד כי היה עם הנאשם בתא החל מ-12/04/06 למיטב זכרונו. הוא טען כי בתקופה של השבועיים שהיה יחד עם הנאשם בתא יצא זה רק לשירותים ולמקלחת, ולאחר מכן הוסיף כי יצא גם לחקירות. כשנשאל לתגובתו לכך שישנם מסמכים רבים של חובשים ורופאים כי ראו את הנאשם באותה תקופה, ענה כי בתקופה שהיו ביחד זה לא קרה. עוד הוסיף כי כל פעם שהנאשם חזר מחקירה הוא סיפר להם (לחבריו לתא) על כך. העד התבקש לומר שמות אנשים נוספים איתם ישב באותה תקופה וענה כי יש אנשים שהוא זוכר את שמותיהם, אך לא נקב בשם כלשהו.

העד ציין כי הנאשם אמר לו שהחקירה גורמת לו ללחץ נפשי, שהוא כל הזמן היה כפות לכיסא ושהוא קיבל יחס רע. עוד אמר לו הנאשם שהוא סובל מסרטן והוא צריך תרופות. העד אמר כי הנאשם לא סיפר על הדברים שקיבל מחוקריו, כגון פירות, סיגריות ותחתונים.

<u>**הכרעה במשפט הזוטא**</u>

ניתן לומר שטיעוני הזוטא מעלים טיעונים בתחום ה״השפלה״, נקיטה בשיטת חקירה בלתי הוגנת על ידי יצירת לחץ נפשי בלתי הוגן כמו גם פיתוי והשאה. ההכרעה במקרה זה הינה הכרעה עובדתית, הנובעת מהתרשמותנו הבלתי אמצעית מהדברים שנאמרו בפנינו.

**<u>הערכת העדויות במשפט הזוטא – מהימנות ומשקל</u>**

**מהימנות עדי התביעה**

לא מצאנו כי עדי התביעה היו חסרי אמינות, כפי שביקשה לטעון ההגנה. אכן, אין ספק כי הנאשם היה נתון בחקירה במהלכה ביקשו החוקרים לקבל מידע רב ככל האפשר מהנאשם בנוגע לפעילותו במימון הטרור הפלסטיני.

ככל חקירה, היא לא התנהלה בתנאים נוחים ונעימים. הנאשם היה כלוא במתקן חקירות, ונחקר תקופה ממושכת. יחד עם זאת, ישנו פער בין חוסר הנוחות האינהרנטי לקיומה של חקירה, לבין נקיטת אמצעים שיכולים לשלול את רצונו החופשי ואת יכולתו לבחור אם למסור מידע מפליל על עצמו.

כעולה מהכתוב באמרות, ועל כך לא חלק הנאשם בעדותו, במהלך חקירתו במשטרה הוא קיבל סיגריות לעישון כאוות נפשו, וכובד בשתייה ובמזון במהלך החקירה. כך למשל, באמרה מיום 19.3.06 גליון 5 ש' 132 נרשם "בשלב זה החשוד מבקש להתפלל והודאת החשוד מופסקת לעניין זה", וכן נרשם בגליון 6 ש' 164 במהלך הודאתו כובד החשוד בשתייה חמה, שתייה קרה ועוגיות". באמרה מיום 20.3.06 עמ' 1 ש' 18 נכתב "החשוד מקבל סיגריה ומעשן" ובהמשך (עמ' 2 ש' 19) נרשם כי "החשוד מקבל מים לבקשתו כדי לבלוע כדור". באמרה מיום 22.3.06 גליון 5 ש' 118 נרשם כי כובד בשתייה חמה, שתיה קרה וסיגריות, ובאמרה מיום 30.3.06 גליון 6 ש' 144 נרשם דבר דומה. גם באמרות שנגבו ביום 2.4.06 (ת/9 ות/10) נרשם כי קיבל כיבוד. קשה לתאר מצב בו חקירה מתנהלת באופן דורסני ואכזרי, כטענת ההגנה, ואגב כך ניתנת לנאשם האפשרות להתפלל, לעשן כרצונו, לאכול ולשתות, וכמובן ליטול תרופות.

יש לומר כי כיבוד כגון אוכל שתייה וסיגריות ניתן לנאשם גם במהלך חקירותיו בשב"כ. כבר בחקירתו הראשונה (זכ"ד מיום 15.3.06 שעה 02:40) כובד בקפה, ובחקירה שלאחר מכן (זכ"ד מיום 15.3.06 שעה 10:55) כובד בארוחת צהריים, סיגריות וקפה. ניתן לראות כי יחס זה נמשך לאורך כל חקירותיו, וכמעט בכל זכ"ד מופיע כי הנאשם קיבל אוכל, שתייה וסיגריות. אף ניתנו לו קוראן (זכ"ד 16.3.06 שעה 10:00, זכ"ד מיום 21.3.06 שעה 12:00), האפשרות לצאת לשירותים (זכ"ד מיום 20.3.06 שעה 11:40) והאפשרות להעלות בעיות הנוגעות לתנאי כליאתו בפני חוקריו (זכ"ד מיום 3.4.06 שעה 11:00, סעיף 1). הנאשם לא חלק על קביעות אלה שבזכ"דים. יחס זה אינו אופייני למי שמבקשים לרמוס את רצונו החופשי, להשפילו ולפגוע בו.

מעבר לנושא התקרובת שהוגשה לנאשם, מהזכ"דים מחקירת השב"כ לא עולה כי דובר בנחקר "שבור" ומושפל, שכן הנאשם התייחס פעמים רבות לנושאים שאינם קשורים לחקירה, כנושאים פוליטיים ומדיניים כלליים (זכ"ד מיום 16.3.06 שעה 10:00 סעיפים 24-25, זכ"ד מיום 27.3.06 שעה 16:30 סעיף 1, זכ"ד מיום 11.4.06 שעה 10:00 סעיף 12), ואף אמר לחוקריו כי מדינת ישראל חייבת לו 275 אלף דולר שלקחה מארון במוקטעה (זכ"ד מיום 19.3.09 שעה 16:35, סעיף 18). התנהגות כזו אינה אופיינית למי שנשבר בחקירתו ומוכן לרצות את חוקריו ולומר כל דבר שהם