רוצים רק על מנת שהחקירה תסתיים, אלא למי שמרגיש מספיק בטוח בעצמו כדי לומר את אשר על ליבו.

חשוב להדגיש כי עדי התביעה לא ניסו לייפות את תנאי החקירה. הם לא הכחישו כי היו תקופות קצרות בהן הושאר לבדו בחדר, ואז נותר אזוק, אולם נטען כי דובר בפרקי זמן קצרים. הם אף לא הכחישו כי הנאשם נאזק לאחר שסטר לעצמו והחל להשתולל (זכ"ד מיום 21.3.06 שעה 12:00 סעיפים 2-3). החוקרים אף לא טענו כי הנאשם היה אדם נינוח ושליו, אלא אמרו כי הנאשם הינו אדם מהיר חימה, ואת זעמו היה מפנה כלפי עצמו, ולכן נדרשו לאזקו לעתים. הם גם לא הכחישו כי מדי פעם פנו לנאשם במילים שלא נעמו לאוזנו – כגון אמירה שהנאשם משקר, מתנהג בילדותיות או כפרחח – אך לא הוכח כי נקטו השפלה כשיטת חקירה.

תיאור זה של החוקרים נראה לנו אמין. לא מצאנו כי יש בו פירכות או סתירות, והוא תואם את הדברים הרשומים בזכ"דים, ובמידה מסוימת את עדותו של הנאשם בבית המשפט. ודוק: ישנו פער משמעותי בין עדות הנאשם בבית המשפט, לבין טיעוני הזוטא שהעלתה ההגנה בתחילה – טיעונים שנזנחו בשלב הסיכומים לאור עדות הנאשם. כבר עתה ניתן לומר שהרושם העולה מעדותו של הנאשם לא תאם את טיעוני הזוטא שמסר.

**אמינות עדותו של מוחמד חיג'אזי**

בטרם נדון במהימנותו של הנאשם נקדים ונאמר כי אמינותו של מוחמד חיג'אזי בעינינו הייתה נמוכה מאוד. תמוה בעינינו כיצד העד זכר "היטב" את כל שקרה לנאשם, וכיצד "התחננו" לטיפול רפואי עבורו שלא ניתן, אולם לא ידע לומר מי עוד היה כלוא איתו בתא בתקופה זו. דבריו אף אינם מתיישבים עם תיקו הרפואי של הנאשם, ממנו עולה כי גם במהלך התקופה עליה העיד מוחמד חיג'אזי, טופל הנאשם מספר פעמים על ידי מרפאת הכלא. על פניו נראה היה כי עדותו של מוחמד חיג'אזי הינה עדות שכל מטרתה לסייע לנאשם במשפטו, וכך, לכל הפחות, הוקצן עד מאוד מצבו הרפואי של הנאשם. עוד יש לומר כי מוחמד חיג'אזי אמר שהנאשם התלונן בפניו על כך שהותזק כפות לכיסא – טענה שהנאשם עצמו לא חזר עליה. לפיכך, לא מצאנו לנכון להעניק לעדותו של מוחמד חיג'אזי משקל כלשהו.

**מהימנות הנאשם – כללי**

הנאשם טען, באופן חד משמעי, כי לא מסר בחקירתו דבר שאינו אמת. למרות ניסיונו של התובע להבין באיזה שלב "נשבר" הנאשם והחל למסור לחוקריו דברים בהתאם לרצונם כביכול, עמד הנאשם על כך כי מסר את כל הידוע לו בלא בעיה כלשהי. הנאשם הכחיש כי קשר עצמו לספינה קארין A, בניגוד למופיע באמרות המשטרתיות.

נראה כי הגם שהנאשם טען כי חש מושפל, לא היה בכך, בהתאם לטענתו, כדי להשפיע עליו לומר דבר שלא היה ברצונו לומר. נדגיש כי הנאשם לא טען שגם את דברי האמת שמסר סירב למסור לחוקריו, וזו הוצאה ממנו שלא באופן חופשי ומרצון. הנאשם טען לאורך עדותו בפנינו כי מסר

דברי אמת, כי דברים אלה נמסרו מרצונו כיוון שלא התבייש בהם וכיוון שלא היה בהם משום סוד כלשהו.

כאמור, הדבר היחיד שהנאשם לא היה מוכן לקבל היו הדברים הרשומים באמרותיו, ולטענתו המדובר בדברים שלא נרשמו מפיו, ומכיוון שאינו יודע לקרוא עברית, לא יכול היה לדעת כי אלה נכתבו. נראה כי הנאשם זנח את טיעון הזוטא לפיו חוקרי המשטרה איימו עליו ב"תוהו ובוהו" אם לא יחזור על הרשום בזכ"דים של חוקרי השב"כ, שכן לא הזכיר זאת בעדותו בפנינו כלל.

עוד נציין כי הרושם הבלתי אמצעי מעדות הנאשם היה של מי שהגזים בעוצמת ההשפלה שחש ובטענות בנוגע ליחס שקיבל, בהתאם לקו הנטען במשפט הזוטא. מכל מקום, גם אם סובייקטיבית חש השפלה במצב אליו נקלע, נדגיש כי הוא לא היה מוכן לאשר ולומר כי מסר דבר שאינו נכון, או כי נשבר בחקירתו. הרושם שלנו הוא כי הנאשם נקט קו "עצמאי" מקו ההגנה במשפט, ביחס לדברים שהוא חשב שצריך להשמיע לבית המשפט. הנאשם רצה לומר שמסר רק דברים נכונים ואמיתיים מרצונו, אך באותה עת לומר שסבל בחקירתו. הדברים אינם יכולים להתיישב עם הטענה כי אמרותיו נגבו שלא מרצונו החופשי. ברור שסיטואציה של חקירה אינה נוחה ואינה נעימה, ודאי לא לאדם מבוגר שהחזיק בעבר בעמדה בכירה. עם זאת, לא התרשמנו כי הנאשם חש בשלב כלשהו בחקירה מצוקה שמנעה ממנו לבוא בדרישות או שהובילה אותו לומר דברים שלא מרצונו הטוב והחופשי.

**מהימנות הנאשם – הטיפול הרפואי**

טענותיו של הנאשם בנוגע לטיפול רפואי או העדרו אינן מתיישבות כלל עם המצוי בתיקו הרפואי. כך, למשל, במסמך המתעד את בדיקתו לפני קליטתו במתקן הכליאה ביום 14.3.06 נכתב מפיו של הנאשם כי "מציין שלשול כרוני, נוטל COLATAL לפי הצורך, שולל מחלת לב, סוכר, יל"ד או בעיות אחרות". ביום 15.3.06 בשעה 14:19 נבדק שוב בכלא שקמה. גם במקרה זה, ואף שנבדק על ידי רופא אחר, הרי בחלק בו נשאל על מחלות בעבר נרשם "שוללי", וכן נרשם כי הוא משתמש בתרופה אחת והיא COLATAL לקיבה. רישומים אלה אינם מתיישבים כלל עם דבריו כי הוא סבל מבעיות רבות וכי מסר את הדברים לרופאי הכלא. ביום 15.3.06 בשעה 18:15 שוב הובא בפני רופא, ושם נרשם כי הנאשם התלונן על עצירות וצרבת וניתן לו טיפול תרופתי. עינינו הרואות, כי ברגע בו התלונן הנאשם על בעיה כלשהי, לא רק שלא נמנעה ממנו גישה לרופא, אלא הוא נבדק על ידי רופא ארבע שעות בלבד לאחר פעם הקודמת בה נבדק על ידי רופא. כמו כן ראה הנאשם רופא ביום 19.3.06, וגם במקרה זה ניתנו לו תרופות. לא למותר לציין כי התרופות אינן "אקמולי" כפי שנטען, אלא תרופות אחרות (משלושה סוגים שונים).

הנאשם נבדק על ידי רופא וקיבל טיפול לבעיית העצירות גם בימים 20.3.06, ו-21.3.06. ביום 22.3.06 הובא הנאשם לבדיקה יזומה, היינו ביוזמת רשויות הכליאה ולא לבקשתו, ובעקבות תלונותיו נקבע כי ייערך לו מעקב לחץ דם יומי ואף נרשמו לו תרופות. באותו יום בשעה 19:00 נרשם כי נבדק שוב על ידי רופא "**על פי בקשה של חוקר**".

לא רק שנרשמו לו תרופות שונות ומסוגים שונים, אלא גם טענתו כי קיבל רק פעם אחת שמן פראפין אינה תואמת את הרישומים הרפואיים, מהם עולה כי קיבל פראפין במספר הזדמנויות, בתאריכים 20.3.06, 21.3.06, 30.3.06, 1.4.06, 3.4.06, 4.4.06 ו-17.4.06.

לפיכך, נראה כי טענותיו של הנאשם בכל הנוגע להעדר טיפול רפואי - אין להן על מה לסמוך. הנאשם קיבל תרופות שונות כנדרש בהתאם למצבו, ראה רופא פעמים רבות – אחת מהן אפילו ביוזמת חוקרו – וזכה לטיפול בהתאם לשיקול דעת רופאיו. נראה כי טענותיו בנוגע לטיפול הרפואי נועדו להעצים את טיעוני הזוטא, בלא שיש להן בסיס כלשהו במציאות, והדבר משליך על חוסר אמינותו בפנינו.

**מהימנות הנאשם – שלב החקירה**

מלבד הנושא הרפואי, עליו עמדנו לעיל, ניתן להצביע על ניסיונו של הנאשם לומר כי לא קיבל דבר מחוקריו כדוגמא נוספת לחוסר האמינות של הנאשם– טענה שנועדה להפריז בתיאור מצבו הקשה בחקירה. מרגע שעומת עם הדברים שקיבל (ארוחות, זמן לתפילה, סיגריות, קפה, תה, קוראן, תחתונים), "פתאום נזכר" ואישר כי אלה אכן ניתנו לו, אולם הוסיף כי ניתנו לו שלא לבקשתו. בנוסף, הנאשם עצמו ציין כי כל מה שהיה בחקירתו גרם לו "להתפוצץ מבפנים", והוא כלל לא הראה זאת לחוקריו – בניגוד לדברים מפורשים שנכתבו בזכ"דים ועליהם העידו החוקרים, כי הנאשם איבד את שלוותו מפעם לפעם, ועל כן נאלצו לאזוק אותו. אין זה הגיוני כי החוקרים ימציאו וירשמו כי הנאשם סטר לעצמו וכי נאלצו לאזוק אותו בעקבות כך, אם הדבר לא התרחש. טענת הנאשם כי הוא רק "התפוצץ מפנים" אינה מתיישבת עם רישומי החוקרים ועדויותיהם בפנינו, והיא חלק מהקו בו נקט על מנת להראות כי השפילו אותו מצד אחד, אולם הוא לא נכנע לחוקריו מצד שני. אנו העדפנו את עדותם של החוקרים בעניין זה.

יש לומר כי הרושם מעדותו של הנאשם היה של אדם המודע היטב לדברים שנאמרו על ידו הן בבית המשפט והן בחקירתו בשב"כ ובמשטרה, אולם הוא דבק בגרסה שנעשה לו עוול. עוול זה, לשיטתו, לא נגרם מהדברים שהוא אמר בחקירתו, אלא כתוצאה מהחשפלה שננקטה כלפיו כעומדת בפני עצמה, ולא ככזו שהשפיעה עליו בחקירה. עוד גורם ליעוולי זה נובע מדברים שנרשמו בעברית ללא אישורו ושלא בהתאם לדברים שאמר. ודוק: הנאשם אישר בעדותו בפנינו כי הדברים הרשומים לכאורה מפיו באמרותיו תורגמו לו, כפי שציינו חוקרי המשטרה, אולם טען כי אינו יודע מה נכתב כיוון שאינו יודע עברית.

לא מצאנו להאמין לנאשם בנקודה זו. לא התרשמנו כי חוקרי השב"כ והמשטרה רשמו דברים אחרים מאלה שמסר להם הנאשם, או כי סילפו את הדברים שנרשמו בעברית עת תרגמו לו אותם, או כי הפעילו עליו לחץ ששלל את יכולתו לבחור אם למסור דברים לחוקריו. נראה כי הנאשם ידע היטב מדוע הוא נמצא בחקירה, ידע היטב מה מחפשים חוקריו, ובהתאם לכך התנהל בחקירתו. הנאשם מודע לכך שמסר דברים בנוגע לפעילותו ביחס לקארין A – דברים שאינם מתיישבים עם גרסתו הנוכחית כי אינו קשור לספינת הנשק.

יתר על כן, הדברים הרשומים בזכ"די החקירה מצביעים על כך שהנאשם מסר פרטים רבים, כפי שהעיד בפנינו, כבר ביומו הראשון בחקירה. יחד עם זאת, הנאשם לא מסר מיד את כל הידוע לו, שכן חקירתו הייתה "חקירה מתפתחת", ונוספו בה עם הזמן פרטים שונים בנוגע לפעילותו. כעולה מהזכ"דים, בתחילה כשהוטחו בו טענות נהג להכחיש, אולם כשהציגו לו ראיות המפריכות את הכחשתו החל לספר את הידוע לו. התנהלות כזו מלמדת דווקא על אדם המתנהל באופן מחושב, ומוכן לספר דברים רק כאשר הוא יודע שממילא יש לחוקריו את המידע על כך, מבלי שהוא מנדב מידע נוסף. אם הייתה יכולה לעלות טענה כאילו הפרטים הנוספים שמסר בעקבות הראיות שהוצגו לו נמסרו בעקבות הלחץ שהופעל בחקירה, אזי הנאשם עצמו סתר והפריך טענה זו.

**מהימנות הנאשם - סיכום**

אל מול הרושם האמין של חוקרי המשטרה והשב"כ, אנו יכולים לומר כי עדותו של הנאשם לא הייתה אמינה במיוחד. כאמור, על פי עדותו של הנאשם עצמו, "השפלתו" ו"מצבו הרפואי" לא שינו דבר מיכולתו לומר את הדברים שרצה לומר, או לגרום לו לומר דברים שלא רצה. לא היה שלב בו הלחץ בחקירה הוביל אותו להודות בדבר כלשהו בניגוד לרצונו, ולא היה שום שלב בו "נשבר".

מכלל הראיות במשפט הזוטא שוכנענו כי אמרותיו בפני חוקרי המשטרה נגבו באופן נינוח וללא כל לחץ פסול. בניגוד למה שנטען בטיעוני הזוטא הוא לא ניסה להעמיד את חוקרי המשטרה על טעויות שנפלו בזכ"דים, ואף אחד מהם לא אמר לו כי יקרה "תוהו ובוהו" אם לא יודה. שוכנענו כי חוקריו לא מסרו לו הבטחות כי אם יודה ישוחרר, לא אמרו לו דבר בכל הנוגע להרס ביתו (דבר אותו חלק מהחוקרים כלל לא ידעו עד מועד הדיון בפנינו) ולפיכך, אין לנו אלא לדחות את טענותיו בדבר "השפלה" כלשהי או פיתוי והבטחות כלשהן שגרמו לו לומר דברים שלא מרצונו החופשי. הנאשם קיבל טיפול רפואי מלא וכנדרש, בניגוד לדבריו, ולא היה במצבו הרפואי כדי לשנות את יכולתו לומר את דבריו באופן חופשי ומרצון.

**<u>משפט הזוטא - הכרעה</u>**

לאור מסקנותינו העובדתיות בכל הנוגע לאמינות עדי התביעה מחד גיסא, ולהעדר האמינות של עדי ההגנה מאידך גיסא, אנו קובעים כי אמרותיו של הנאשם נגבו באופן חופשי ומרצון והינן קבילות במשפט זה.

**<u>המשפט העיקרי</u>**

**עדותו של מחמוד עביאת**

עד זה מסר כי היה חבר בחוליה צבאית עליה היה אחראי עאטף עביאת, ונשפט על עבירות רצח אותן ביצע. העד מסר כי הוא וחבריו לחוליה היו חיילים, והם קיבלו משכורת חודשית בסוף כל חודש. העד טען כי הוא לא יודע מי העביר להם את המשכורות. העד עומת עם זכ"ד מחקירתו

בשב"כ בו נרשם כי את המשכורות העביר פואד שובכי. העד טען כי אינו מכיר את פואד שובכי, ומעולם לא שמע את השם הזה. העד טען כי מי שהעביר להם את המשכורות היה אדם בשם פואד שומאלי, שהיה פקיד במשרד הכספים. בחקירתו הנגדית ציין כי מעולם לא ראה את הנאשם ולא קיבל ממנו כסף, וכלל אינו יודע מי אחראי הכספים ברש"פ.

**אמרות הנאשם במשטרה**

הנאשם מסר שמונה אמרות משטרתיות, מלבד הזכ"דים הרבים שנגבו ממנו בשב"כ. להלן נסקור כרונולוגית את האמרות שנגבו ממנו ואת הדברים שמסר בהן -- דברים התואמים ככלל את הדברים שמסר בחקירתו בשב"כ.

<u>ת/5 – אמרת הנאשם מיום 19.3.09</u>: באמרה זו מסר הנאשם אודות פעילותו במסגרת הארגון לשחרור פלסטין (אש"ף) לפני שנת 2000. בהמשך האמרה מסר כי בשנת 2000 הייתה פגישה במשרדי יאסר ערפאת בנוכחות ע/ראזק מג'אידה, חאג' אסמעיל ג'אבר, ע'אזי ג'באלי, סלים בורדני, מחמד דחלאן, רשיד אבו שבאכ, אמין אל הינדי, מוסא ערפאת ומחמוד אבו מרזוק. יאסר ערפאת אמר להם לקנות כל נשק שייכנס לעזה או לגדה וכל אחד מהבכירים הללו שהייתה לו הצעה (לרכישת נשק – צ.ל.), היה מגיע אל הנאשם עם נייר עבודה, הנאשם היה מעבירו ליאסר ערפאת, ולאחר שזה חתם היה הנאשם מאשר לאנשיו להעביר כסף לאותו בכיר. הנאשם מפרט דוגמאות לכמויות וסוגי הנשק שניקנו וסכומי הכסף ששולמו תמורתם.

הנאשם הוסיף כי ביולי 2001, פתחי ראזם ועאדל מוגרבי הבריחו מלבנון מיכל עם פצצות אר.פי.ג'י ומטולים שהגיעו מהחיזבאללה, באישורו של יאסר ערפאת, והכות הימי לקח אותם. הוא שילם לפתחי ראזם 50,000 דולר באישור ערפאת.

הנאשם הוסיף כי פגש בירדן את פתחי ראזם, שמסר לו כי נפגש עם פעילי חיזבאללה ועם איראני וסיכם איתם כי הם יעבירו שלושה מיכלים עם נשק על גבי ספינה. הוא ביקש מהנאשם לדבר על כך עם יאסר ערפאת, כדי שייתן כסף. הנאשם מסר על כך לערפאת וזה נתן הוראה לחרבי צרצור שיתן לכך כסף. הנאשם גם מסר כי פגש בתימן את תייסיר עגיינה שסיפר לו שעאדל מוגרבי ביקש שיכינו לו ולעומר עכאווי דרכון, וכי הוא (עאדל) בא לראות את הספינה קארין A שהגיעה לתימן עם הנשק.

<u>ת/1 – אמרת הנאשם מיום 20.3.06</u>: באמרה זו מסר הנאשם כי פגש בשנת 2001 בירדן בפתחי ראזם וזה מסר לו אודות מגעים עם האיראנים, לפיהם האחרונים מוכנים לשלם עבור ספינת נשק. פתחי אמר לנאשם כי צריך שהוא (הנאשם) יפגוש בנציג האיראני בדובאי. הנאשם מסר כי הגיע לדובאי ושם יחד עם עאדל מוגרבי פגש שני נציגים איראנים – אבו מחמד ואחמד סאלם. האיראנים מסרו לנאשם ולעאדל כי הם מוכנים לממן אימונים של פלסטינים בלבנון ובאירן וכי הם מוכנים לעזור בכסף ובנשק. הנאשם הוסיף כי עאדל כתב דו"ח לערפאת והם אמרו לאיראנים כי לאחר שתהיה תשובה מערפאת הם יודיעו על כך לאיראנים. לטענתו, כשערפאת ראה את

Case 1:04-cv-00397-GBD-RLE Document 910-26 Filed 05/13/15 Page 5 of 14

הדו"ח הוא הגיב בכעס ואמר כי האיראנים שקרנים. עוד מסר הנאשם באמרה זו על מגעיו עם העיראקים ועל הסכמתם להעניק במתנה שני מיליון חביות נפט לפלסטינים.

<u>ת/6 – אמרת הנאשם מיום 22.3.06</u>: באמרה זו מסר הנאשם פרטים נוספים אודות הפגישה עם האיראנים. הוא מסר כי מי שיצר קשר ראשוני עמם היה אבו חסן אל זינב. הנאשם הפגישו עם פתחי ראזם והשניים יצאו לפגוש את האיראנים בדובאי. לאחר מפגש זה מסר פתחי ראזם לנאשם כי האיראנים מבקשים לפגוש אותו. הנאשם יצא לדובאי לקנות מכוניות ואמר לפתחי שלאחר מכן יפגוש את האיראנים. הנאשם נשאל מדוע לא סיפר ליאסר ערפאת כי יצא לפגוש באיראנים, וענה "כי יאסר ערפאת אהב שאני מביא לו תוצאות ולא דיבורים". הנאשם יצא לדובאי, ולאחר פגישתו בנוגע למכוניות יצא לפגוש את האיראנים עם עאדל מוגרבי. מאחר שהיה עייף סוכם שייפגשו שוב בערב. הנאשם אכן פגש שוב באיראנים בערב, שאל אותם אם הם רוצים לעבוד יחדיו בשיתוף פעולה, והאיראנים מסרו שכן. עאדל דיבר עמם על נושאים צבאיים כעל הצורך באימונים מתקדמים לייצור רימוני יד ומטולים, וכי הם רוצים גם תחמושת ונשק. אחרי כן הם (ובכלל זה הנאשם) שוחחו על כיצד מקימים מפעל לייצור תחמושת בשטחי הרש"פ, והנאשם אף אמר להם כי צריך כסף, והם הסכימו גם לכך. האיראנים אף מסרו כי יעבירו נשק ותחמושת ממחסני אמל"ח שיש להם בלבנון. אחד האיראנים ביקש כי ישלחו לו סיכום יומי של התקשורת הישראלית. הם סיכמו להמשיך ולהיפגש והנאשם אמר כי הוא יבקש רשות מיאסר ערפאת לבוא לפגישות. עאדל כתב את תוכן הפגישה והוא והנאשם חתמו על כך. כשחזר לאזור מסר הנאשם את המסמך ליאסר ערפאת, שאמר כי המדובר באנשים רמאים שרוצים להרוג אותו.

הנאשם מסר כי בשנת 2002 שמע על תפיסת קארין A. הוא הבין שיאסר ערפאת רוצה שהוא "ייקח את הנושא עליו" ולכן מסר בועדת החקירה כי יאסר ערפאת נתן את ההוראות והוא היה איש קשר בין פתחי ראזם ועאדל מוגרבי לערפאת. הנאשם הוסיף כי שמע מפתחי על התכנון להביא את הספינה עוד באוגוסט 2001, חודשיים לפני המפגש עם האיראנים, וכי הפגישה עם ערפאת, בה סוכם על העברת 125,000 דולר לפתחי לפרוייקט הספינה, הייתה אחרי שפתחי היה בסוריה ובלבנון. הפגישה עם האיראנים בדובאי נועדה ליצור קשר פלסטיני-איראני וקשר של פתחי ועאדל מול משמרות המהפכה בלבנון, והוא ועאדל לא דיברו על הספינה עם האיראנים.

<u>ת/11 – אמרת הנאשם מיום 26.3.06</u>: באמרה זו מסר הנאשם אודות פרטי עסקאות נשק שונות להן היה שותף. בתחילה מסר כי הגיע אליו אדם וסיפר לו שמצאו בים חביות עם טילי אר.פי.ג'י וביקש עבור זה 7,000 דולר. הנאשם הורה לשלם את הסכום. הנאשם סיפר כי קיבל פנייה לרכישת 10 טילי אר.פי.ג'י תמורת 45,000 דולר, והוא העביר את הכסף לפונה. הנאשם הוסיף ומסר כי הדבר עדיף על כך שהנשק יגיע לחמאס או לארגונים אחרים. הנאשם סיפר כי בשנת 2002 גנב רשיד אבו שבאכ את כל הנשק שרכש ושהיה במחסנים שלהם. הנאשם הוסיף וסיפר כי מחמוד אבו מרזוק פנה אליו בשנת 2001, ביקש 20,000 דולר כדי להקים מפעל לייצור אמל"ח ורימוני יד, וערפאת הורה לנאשם לתת לו את הכסף. הנאשם העביר את הכסף ושמע מאוחר יותר כי היה פיצוץ בדירה ששכר מחמוד אבו מרזוק.

הנאשם נשאל לגבי רכישות של סירות עבור פתחי ראזם ומסר כי ערפאת הורה לו בשנת 2000 להעביר 150,000 דולר לרכישת 2 סירות דייגים. הנאשם ציין כי כסף זה העביר עוד לפני שהעביר לפתחי 125,000 דולר עבור הקארין A.

הנאשם סיפר על כספים שהעביר לצורך רכישת תחמושת בבית לחם וכן כי מימן משכורות לאנשי מחמוד עביאת. לטענתו, חלק מהכספים שהעביר שימשו למשכורות (500 ש״ח לאדם) וחלק שימש לרכישת תחמושת.

ת/7 – אמרת הנאשם מיום 30.3.06: הנאשם נשאל אודות היכרותו עם מחמוד זוהירי ומסר כי זה היה אחראי על רכישת אמל״ח בגדה וכי הוא רכש 1000 רובי קלצ׳ניקוב. הנאשם ציין כי הוא העביר למחמוד זוהירי את הכסף לרכישה בסך של כ-2 מיליון דולר.

הנאשם מסר כי שילם לג׳ומעה אבו שכרי 570,000 דולר תמורת 7 טילי סאגר ו-18 רובים מקולקלים אותם החזירו. לדבריו, את הטילים החזיק ב׳דיוואן׳ ליד ביתו בעזה ומאוחר יותר העבירים לע/ראזק מג׳אידה. הנאשם הוסיף ומסר פרטים אודות אנשים שונים אשר הביאו אמל״ח, וציין כי הוא היה מעביר את הכסף, ואת הנשק היו מחזיקים במחסן בתוך המשרד שלו. לטענתו, יאסר ערפאת היה נותן לו הוראה למי להעביר את האמל״ח, והוא היה מורה לסגנו לתת נשקים בהתאם להוראותיו של ערפאת.

הנאשם מסר כי מחמוד אבו מרזוק ייצר מטענים לע/ראזק מג׳אידה, והוא העביר למג׳אידה את הכסף על מנת שיועבר למחמוד אבו מרזוק. הנאשם מסר מידע גם אודות עסקאות נשק נוספות.

לנאשם הוצג במהלך החקירה מסמך (ת/8) והוא ציין כי המדובר בנייר של מחמוד אבו מרזוק עליו רשומות הצעות מחירים של נשקים, ובהתאם למחירים שצויינו התחשבן איתו על הכסף.

ת/9 – אמרת הנאשם מיום 2.4.06 שעה 09:50: בראשית חקירתו הופנה הנאשם לאמרתו מיום 19.3.06, בה מסר שהברית נשקים בספינה, והוא אישר כי סיפר זאת. הנאשם נשאל על מעורבותם של אחרים בהברחת הנשקים וסיפר על כך. בין היתר מסר הנאשם כי ביולי 2001 מסר לפתחי ראזם 50,000 דולר בהוראת ערפאת עבור הברחת פצצות ומטולי אר.פי.ג׳י. הנאשם ציין כי את הכסף העביר עבור ההברחה ולא עבור האמל״ח, שכן זה ניתן להם בחינם מהחיזבאללה.

הנאשם התבקש לספר שוב אודות קארין A ומסר כי פגש את פתחי ראזם בירדן, שסיפר לו כי נפגש בלבנון עם נציגי חיזבאללה ואיראן. אלה הסכימו להעביר להם 3 מיכלים עם אמל״ח במימון האיראנים, והם (הפלסטינים – צ.ל.) יצטרכו לשלם רק עבור הוצאות הספינה. הנאשם מסר כי הוצע להם לקחת נשק מאחמד ג׳יבריל אולם הם לא עשו זאת. כשנשאל למה, ענה ״כי יש לנו נשק בחינם מהחיזבאללה ומהאיראנים אז למה לקחת ממנו״. הוא מסר כי התכנון היה להביא ספינות עם נשק לנמל עלי, והוא ופתחי שוחחו עם ערפאת ואמרו לו שצריך 125,000 דולר. יאסר ערפאת אמר לנאשם לתת את הכסף והנאשם אמר כי אין לו. יאסר ערפאת אמר לפתחי לכתוב נייר בקשה

עם הדרישה לכסף, ולאחר שפתחי עשה זאת, הנאשם לקח את הבקשה לרמאללה, העבירה לערפאת וזה כתב לחרבי צרצור שישלם את הכסף. חרבי העביר את הכסף לפתחי.

הנאשם התבקש לחזור ולספר על המפגש עם האיראנים. לדבריו, פגש בשני נציגים, שלהערכתו הבכיר בהם היה אחד בשם אחמד סאלם.

<u>ת/10 – אמרת הנאשם מיום 2.4.06 שעה 14:01</u> (במאמר מוסגר אציין כי התאריך הרשום על גבי אמרה זו הינו 4.2.06. המדובר בטעות שהובהרה בת/13, והתאריך הנכון הוא 2.4.06. בל נשכח כי לא ייתכן שביום 4.2.06 הנאשם נחקר, כיוון שנעצר רק כחודש וחצי לאחר מכן).

הנאשם מסר כי הקים ועדת רכש, שהקימה מחסן נשק בו שמו כל מה שהועדה קנתה. הנאשם נשאל על הועדה המדעית ואמר כי פעילות ועדה זו הינה העברת קורסים בייצור אמל״ח. תפקיד הועדה בגדה היה לבדוק שהנשק שנרכש היה תקין. הוצג לנאשם מסמך והוא ציין כי המדובר במסמך של הועדה המדעית בו הם מבקשים מכונות הלחמה ומחרטות. הנאשם העביר את הבקשה לערפאת והוא לא יודע מה נעשה איתה. הנאשם מסר כי הועדה המדעית היא של הפת״ח, גדודי חללי אל אקצא הם פעילי פת״ח, ויאסר ערפאת היה נותן לגדודי חללי אלאקצא כסף לפעילות ״מתחת לשולחן״.

הנאשם ציין כי אנשי משרדו העבירו לפתחי ראזם 150,000 דולר על מנת שיקנה שתי סירות דייג, ועוד לפני כן העביר הנאשם 50,000 דולר, כדי שייתן אותם ללבנונים לכיסוי הוצאות הברחת חביות נשק עליהן סיפר קודם לכן (באמרה קודמת).

הנאשם מסר כי פתחי ראזם פגש בלבנון את עאדל מוגרבי, את החיזבאללה ואת משמרות המהפכה של האיראנים. הנאשם שאל אותו אם הוא סיפר זאת לערפאת ופתחי אמר לו שהוא סיפר לו על תכנון הברחת הספינה ועל פגישותיו בהקשר זה. פתחי אמר לנאשם כי הוא רוצה שידבר עם ערפאת כי פתחי צריך 125,000 דולר להוצאות הספינה. הנאשם דיבר על כך עם יאסר ערפאת בשדה התעופה בירדן. יאסר ערפאת אמר לנאשם שפתחי יכין נייר בקשה לקבלת הכסף. פתחי עשה זאת ולאחר 3 ימים נתן הנאשם לערפאת את המסמך. ערפאת כתב לנאשם שצריך להעביר את הכסף לפתחי דרך חרבי צרצור והנאשם העביר את הנייר דרך שליח לחרבי צרצור ומסר על כך לפתחי.

הנאשם מסר כי העביר כסף למחמוד זוהירי, כדי שיקנה נשק ״מבחוץ״ (היינו: מחוץ לשטחי הרש״פ). הנאשם מסר כי היה לו מחסן ברמאללה, בו שמו את כל הנשקים שקנו ממחמוד זוהירי, והם היו מחלקים את הנשקים בהתאם להוראת יאסר ערפאת.

הנאשם מסר כי בחודש אוגוסט 2001 קנה מג׳ומעה אבו זכרי 7 טילים, תמורתם שילם 75,000 דולר, והעבירם לע/ראזק מג׳אידה.

הנאשם מסר כי בשנת 2001 הגיע אליו שליח ממרואן ברגותי עם שני ניירות – באחד בקשה לקנות תחמושת לפעילי גדודי חללי אלקצא ב-25,000 דינר, והנייר השני פירט את מספר הלוחמים בכל איזור על מנת שתועבר להם משכורת חודשית. הנאשם העביר את הניירות ליאסר ערפאת שיחליט בעניין, ויאסר ערפאת נתן לו הוראה לתת למרואן ברגותי את הכסף שביקש. הנאשם הודיע כי אין לו כסף, ואז נתן ערפאת הוראה למשרד האוצר להעביר את הכסף.

הנאשם מסר כי כשהגיע לתימן, קיבל את פניו תייסיר עג׳ינה, ומסר לו שהספינה של עאדל ופתחי הגיעה אליהם. תייסיר אמר לנאשם כי הכינו לעאדל מוגרבי דרכון והם רצו להכין דרכון גם לעומר עכאווי, הקפטן של הספינה.

הנאשם הוסיף וסיפר כי העביר כסף לעלי מחסין, בכיר בצבא תימן, במסגרת שותפות שמטרתה מכירת תחמושת של כדורים נותבים תמורת רווח, אולם לבסוף לא התבצעה עיסקה והוא קיבל את הכסף שלהם בחזרה.

<u>ת/12 – אמרת הנאשם מיום 14.5.06</u>: בפתח החקירה הוצג לנאשם מסמך, והנאשם מסר כי מסמך זה עוסק בבקשה שקיבל לקנות מחרטה וסכינים. את המסמך הזה העביר מרואן ברגותי, והנאשם שלח את המסמך לערפאת. המסמך לא חזר אליו עם הוראת תשלום. הנאשם זכר כי צורפו למסמך זה שני ניירות נוספים, באחד מהם בקשה לרכישת נשק, ובשני בקשה לתשלום משכורות לאנשי ״שוהדא אל אקצא״, אולם שמותיהם לא הופיעו אצלו ברשימה ולכן לא יכול היה לשלם להם.

הנאשם נשאל מה יש לו להוסיף לגבי טילי הסאגר שקנו, ואמר כי הגיעה הוראה מערפאת לשלם עבור הטילים, כיוון שפחדו שאנשים יקנו אותם וישתמשו בהם.

**עדות הנאשם בתיק העיקרי – חקירה ראשית**

הנאשם פתח עדותו בכך שהוא מנהל מחלקת הכספים ברשות הפלסטינית וסמכויותיו היו של פקיד שקיבל את הוראותיו מהראיס, יאסר ערפאת, ומסגן הראיס, ע/ראזק מגיאידה. לדבריו, לא הייתה לו כל סמכות לקבל החלטות בעצמו, אלא הוא פעל רק על פי הוראות כתובות.

הנאשם אישר כי אכן התקיימה פגישה בשנת 2000 של כל האחראים על גופי הבטחון במשרדו של יאסר ערפאת בעזה. הוא ציין כי כל הנוכחים בפגישה מלבדו היו נוהגים להיפגש עם מפקדים ישראלים. לטענתו, מה שנאמר במפגש זה היה כי יש לאסוף את כלי הנשק שבידי הציבור והאזרחים, ואם צריך אף יש לשלם עליהם. לטענתו, תפקידו היה לברר מי הבעלים של כלי הנשק, מה מחירם, ולקבל אישור מהראיס שיחתום על התשלום. רק לאחר קבלת הוראה הוא שחרר את הכסף לתשלום.

לטענת הנאשם, הנשק נאסף כדי שלא ישמש בידי גורמים כחמאס וכג׳יהאד האיסלמי, שאינם מכירים בהסכמי אוסלו. הנאשם טען כי לא נרכש נשק מחוץ לתחומי הרשות. עוד טען הנאשם כי הנשק הגיע למחסן בבניין של הביטחון הלאומי, בו היו גם משרדיו, אולם הוא לא היה אחראי על

המחסן. למיטב ידיעתו, מבצע איסוף הנשק היה דבר ידוע בציבור. עוד טען הנאשם כי אינו יודע כמה נשק נרכש וכמה כסף שולם עבורו, וחזר על כך שכל הוצאה אושרה על ידי יאסר ערפאת. הנאשם טען כי לא הוא העביר את כלי הנשק, והוא אינו יודע אם הועברו לארגון התנזים.

הנאשם אישר כי הוא מכיר את האנשים אשר שמותיהם מופיעים בפרט האישום הראשון, ובכלל זה מחמוד זוהרי. לטענתו, האחרון היה מושאל למשרדו מראזי ג'באלי, ותפקידו היה להביא את המסמכים החתומים מיאסר ערפאת. הנאשם טען כי לא ידע אם תפקידו של זוהרי כלל את רכישת הנשק, ובכל מקרה לא היה לנאשם מחסן תחת אחריותו. לדבריו, התשלומים היו נערכים בצ'קים או במזומן, וכל סכום היה נרשם. הנאשם טען כי הוא לא ראה נשק, לא קנה ולא נתן נשק. הוא רק עבד עם המסמכים, והוא עצמו מפחד מנשקים. הנאשם שב והדגיש, כי הוא לא יודע כמה כסף שולם, ואיזה נשק נרכש. כל שעשה היה לקבל מסמכים מגורמי הבטחון השונים, ולתת הוראות תשלום לאנשים. הנאשם הכחיש כי רכש וחילק אקדחים או כי ידוע לו על כך.

הנאשם הכחיש תשלום לאנשי הפת"ח והכחיש כי שילם לאנשים באזור בית לחם. לטענתו, הייתה הוראה מיאסר ערפאת לשלם 500 ש"ח אבל הוא לא ידע עבור מה שילמו. אף אחד לא אמר לו כי האנשים הללו שייכים לגדודי חללי אלאקצא. הנאשם הכחיש כי הגיע אליו שליח ממרואן ברגותי, או כי ראה דו"ח כספי שכלל הוצאות רכישת חומרים-כימיים לייצור חומרי נפץ. הוא אף הכחיש כי שילם הוצאות כספיות אחרות של גדודי חללי אלאקצא או כי קיבל הוראה מיאסר ערפאת לשלם למרואן ברגותי 25,000 דינר, ובכל מקרה לא היה לו סכום כזה להעביר.

הנאשם הכחיש כל קשר לספינת הנשק קארין A. לטענתו, שמע עליה רק לאחר שנעצר ביריחו. הנאשם אישר כי הוא מכיר את פתחי ראזם, סגן מפקד חיל הים הפלסטיני, ואישר כי פתחי ראזם העביר לו מסמך מיאסר ערפאת לפיו על הנאשם לשלם לפתחי 125,000 דולר. לטענת הנאשם, לא ידע עבור מה נדרש התשלום, והוא סירב לשלם כי לא היה בתקציב סכום כזה.

הנאשם אישר כי כשהיה בדובאי למטרות רכש כלי רכב פנה אליו עאדל מוגרבי, וביקש ממנו להעביר מכתב ליאסר ערפאת. הוא פגש את עאדל מוגרבי עם אנשים נוספים, וקיבל מהם מכתב. הוא העבירו ליאסר ערפאת, ובדיעבד נודע לו כי תוכן המכתב עוסק בהצעה של האיראנים לסייע לרשות הפלסטינית, אולם הוא לא ידע ולא מסר דבר בנוגע לספינת נשק.

הנאשם אישר כי פגש בתימן את תייסיר עגיינה בשגרירות הפלסטינית שם, אולם לא היה מודע לכך שבזמן הזה הגיעה ספינת נשק לנמל חודיידה בתימן. הוא אישר כי תייסיר סיפר לו שמכינים דרכון תימני לעאדל מוגרבי, אך לא ידע מדוע.

הנאשם מסר כי הרשות הפלסטינית קיבלה מעירק מתנה של שני מיליון חביות נפט גולמי, והוצע לו ליצור קשר עם האיראנים על מנת שהם ימכרו את החביות עבור הפלסטינים ויתחלקו בתמורה. לצורך כך נפגש עם הנספח המסחרי-כלכלי האיראני. הנאשם הכחיש כל קשר מצידו או ידיעה מצידו בנוגע להצעה מטעם האיראנים לסייע לפלסטינים באימונים ובנשק, או כי היה נוכח

בישיבה בה הועלתה הצעה כזו. הנאשם הכחיש כי חתם על פרוטוקול של ישיבה כזו. לטענתו, רק העביר מכתב מעאדל מוגרבי ליאסר ערפאת, וזה סירב לקשר עם האיראנים.

**עדות הנאשם בתיק העיקרי – חקירה נגדית**

בחקירתו הנגדית נשאל הנאשם אם הוא מכיר את ארגון גדודי חללי אלאקצא, השיב בשלילה, ואמר כי רק שמע עליהם בתקשורת. לטענתו, גם בחקירתו אמר כי אין דבר שקוראים לו ״גדודי חללי אלאקצא״. הנאשם עומת עם שני מסמכים אשר הוצגו לו בחקירתו ביום 14.5.06, וטען כי אינו יודע דבר על המסמכים הללו. כשנמסר לו כי במשטרה אמר שאחד המסמכים הוא בקשה להקמת מחרטה, והשני בקשה למשכורות של גדודי חללי אלאקצא, טען כי אינו יודע ולא אמר את הדברים הללו.

לטענתו, הוא היה בישיבה עם יאסר ערפאת בה הוחלט על רכש כלי נשק מתוקף תפקידו כאיש כספים, והמטרה הייתה איסוף נשק מידי אזרחים. לדבריו, כל שהוא עשה היה למלא אחר הוראותיו של יאסר ערפאת, אשר אישר באופן פרטני רכישה של כל נשק.

הנאשם נשאל לגבי פצצות אר.פי.ג׳י שהגיעו בספינה ביוני 2001, ואמר כי קיבל הוראה לשלם לדייגים שמצאו את הפצצות, כפרס כספי. הנאשם אמר כי אינו יודע מהיכן הגיעה הספינה של הפצצות וכאשר נמסר לו כי במשטרה אמר שזו הגיעה מטריפולי, טען כי לא אמר זאת. כך גם כאשר עומת עם הטענה שמסר במשטרה ובשב״כ שנקנה נשק מלבנון וממצרים. לדבריו, הנשק שנרכש על ידו נרכש רק מאזרחים, על מנת שלא יגיע לחמאס, והוא אינו יודע מה נכתב באמרותיו.

הנאשם אישר כי העביר למחמוד אבו מרזוק 20,000 דולר בהוראתו של יאסר ערפאת. לטענתו לא ידע מה הסיבה לכך. כשנאמר לו שבמשטרה מסר כי הדבר נועד לשם הקמת מפעל לייצור אמל״ח ורימוני יד, טען שאמר כי הבית של מחמוד אבו מרזוק התפוצץ, ולאחר מכן נודע כי השתמשו בו לייצור מטענים.

הנאשם טען כי אינו יודע מיהם מחמוד עביאת או עאטף עביאת. הנאשם עומת עם דבריו במשטרה לפיהם העביר להם כספים כדי שלא ילכו לחמאס, וטען כי אמר שקיבל הוראה מיאסר ערפאת להעביר 500 ש״ח לעאטף עביאת (הכוונה כמשכורת חודשית – צ.ל.), אותו הוא לא מכיר באופן אישי, אך הוא מכיר אותו בשם, בניגוד לדבריו קודם לכן.

הנאשם עומת עם מסמך נוסף שהוצג לו בחקירתו וטען כי אינו מכיר אותו. כשנאמר לו שבחקירתו מסר כי המדובר במסמך של מתמוד זוהירי בו ישנן הצעות מחיר של נשקים אמר כי לא סיפר זאת.

הנאשם מסר כי היה אחראי על כספים של מנגנוני הבטחון הפלסטיניים, וכי הוא אחראי לשלם בהתאם להוראות בכתב שניתנו על ידי יאסר ערפאת.

הנאשם נשאל על ידינו האם הכיר את התקציב וסעיפיו, ואישר כי הכיר אותו, וכי הוראת תשלום צריכה להיות מתאימה לסעיף המצויין בתקציב. משום כך נהגו לשאול את מבקשי התשלום לצורך מה נדרש הכסף שהם מבקשים. אם להוראת תשלום לא היה סעיף תקציבי מתאים, או אם סרבו לומר מה מטרת התשלום – נהג הנאשם לסרב לשלם או מפנה את המבקש ליאסר ערפאת. לטענתו, סעיף רכישת הנשק נקרא "תשלום על הנשקים אשר נאספים מידי האזרחים מתוך המדינה". הנאשם מסר כי אם היה מקבל הוראה חריגה לשלם, למשל, כסף לפעיל חמאס או לקנות ספרי לימוד לבית ספר הוא לא היה מבצע את הפעולה. יתר על כן, הנאשם ציין כי היו לו קשרים טובים עם ערפאת, וכי היו מקרים שבהם התווכח עם יאסר ערפאת על הוצאות מסוימות, ובסופו של דבר אמר לו ערפאת כי הוא צודק. עוד ציין כי הוא זכה לשבחים על דרכו בניהול הכספים. רק לאחר מכן ציין, כי אם לא היה מבצע הוראת תשלום – היו מעמידים אותו לדין. בחקירה החוזרת בידי הסנגור מסר הנאשם, כי כל סכום שצריך היה להוציא מחשבון הרשות הפלסטינית חייב חתימה של שלושת בעלי זכות החתימה בחשבון, והוא לבדו לא יכול היה להוציא "אפילו לא גרוש".

<u>**הערכת העדויות – מהימנות ומשקל**</u>

**עדות הנאשם – מהימנות ומשקל**

עדות הנאשם לא עשתה עלינו רושם אמין. ניכר היה כי הוא דבק בגרסה לפיה אין הוא קשור לספינת הנשק קארין A, אין הוא קשור למגעים עם האיראנים שנגעו לתיאום אימונים ורכישת נשק על ידי הרשות הפלסטינית, ובכל הנוגע לרכישת נשק הוא היה שותף לישיבה שמטרתה רכישת נשק מאזרחים על מנת שלא ישמשו ארגונים כגון החמאס.

כאשר הנאשם עומת עם דברים שנרשמו או הוצגו לו בחקירה, ובכלל זה מסמכים מהם עולה כי הכיר וידע למה בוצע תשלום כלשהו, באופן שאינו תואם את גרסתו במשפט, טען כי לא אמר את מה שמיוחס לו בחקירה. אין בידינו לקבל זאת. תמוה כי דברים הרשומים באמרותיו והתואמים את גרסתו במשפט נאמרו על ידו במשטרה ונרשמו, ואילו דברים שאינם תואמים את גרסתו במשפט לא נאמרו על ידו אלא נרשמו על ידי החוקרים ללא ידיעתו. הסבר פשטני זה בדבר הרישום על ידי החוקרים אינו מעורר אמון כלשהו.

יתר על כן, חלק מטיעוניו הינם חסרי אמינות על פניהם – כך למשל, טענתו כי אינו מכיר ואינו יודע מהו ארגון גדודי חללי אלקצא, או למשל טענתו כי אינו יודע מיהו עאטף עביאת, כשמיד לאחר מכן הוא ציין כי שולם לאותו אדם כסף על ידי המשרד בבית לחם. כשהבין את טעותו זו, טען כי אינו מכיר את עאטף עביאת באופן אישי.

כפי שכבר ציינו ביחס למשפט הזוטא, שוכנענו כי הדברים הרשומים באמרותיו של הנאשם במשטרה נרשמו מפיו והם משקפים דברים שהוא עצמו אמר. לפיכך, יש לקבוע כי טענתו שהדברים לא נאמרו על ידו - הינה שקרית.

כמו כן, טענותיו של הנאשם כי רק מילא הוראות וכי לא ידע בגין מה הועברו חלק מהכספים אינה תואמת את הדברים שמסר בסוף חקירתו, כי הוא תמיד וידא שהתשלום תואם סעיף תקציבי, ופירושו של דבר כי ידע למה נועד התשלום. גרסתו כי הוא רק ממלא הוראות, אינה מתיישבת עם דבריו כי אם היה מקבל הוראה חריגה או מוזרה לתשלום היה מסרב לבצע אותה, או עם דבריו שלו בחקירה כי פעל (בכל הנוגע למפגש עם האיראנים) עוד לפני שיאסר ערפאת אמר לו דבר בעניין, כיוון שהאחרון ״רוצה לראות תוצאות״.

**עדותו של מחמוד עביאת – מהימנות ומשקל**

עדותו בבית המשפט של מחמוד עביאת הייתה חסרת מהימנות בעינינו ולפיכך חסרת משקל. טענתו כי מסר בחקירתו אודות אדם ששמו שומאלי ולא שובאכי, הינה טענה שנועדה בבירור להרחיק את האשמה מעל הנאשם. לא שוכנענו כי יש בטענה זו שמץ של אמת. יש לומר כי הנאשם מסר בחקירתו כי הוא העביר כספים למחמוד עביאת, דבר התואם את אמרתו המשטרתית של מחמוד. לפיכך, אנו מעדיפים את אמרותיו המשטרתיות של מחמוד עביאת על פני עדותו בבית המשפט.

**<u>התשתית העובדתית – סיכום</u>**

מצאנו לנכון להעדיף את המצוי באמרותיו המשטרתיות של הנאשם על פני עדותו בפנינו. בכל מקום בו ישנה סתירה בין השניים, סברנו כי הדברים המופיעים באמרות המשטרתיות הינם עדיפים. כך הדבר גם ביחס לאמרותיו המשטרתיות של מחמוד עביאת. לאור תשתית עובדתית זו, עלינו לבדוק כעת את פרטי האישום שיוחסו לנאשם, ולראות האם אשמתו עולה מחומר הראיות שלפנינו.

עוד קודם לבחינה פרטנית של כל אחד ואחד מפרטי האישום, מאחר שעיקרו של כתב האישום מבוסס על אמרותיו של הנאשם, עלינו לבדוק אם קיימת תוספת ראייתית מסוג ״דבר מה נוסף״ לאמרות אלה.

במקרה שלפנינו לא סברנו כי קיים קושי ממשי כלשהו בעניין זה. תוספת ראייתית לאמרותיו של הנאשם מצויה הן באמרתו של מחמוד עביאת, שאישר את העברת המשכורות לו ולאנשיו בבית לחם, כפי שמסר הנאשם, ובנוסף בפנינו ת/8, שהינו מסמך בו פורטו בקשות לרכישת כלי נשק ומחירם, כפי שמסר הנאשם.

ברע״פ 4142/04 **מילשטיין נ׳ התובע הצבאי הראשי**, תק-על 2006(4), 4022, התייחס כב׳ השופט לוי למהותה של התוספת הראייתית מסוג דבר מה וקבע כדלקמן (בפסקה 20):

*״דרישת ה״דבר מה נוסף״ היא גמישה ובעלת רקמה פתוחה. סוג העניינים שעשויים להביא לסיפוקה משתנה ממקרה למקרה, ותלוי גם במהימנות ההודאה גופה. ככל שהודאה זו זוכה למשקל גדול יותר – כך יקטן משקלו*

*של "דבר מה" הדרוש לאימות ההודאה, ולהפך, ככל שההודאה זוכה למשקל מועט – כך יגדל משקלו של "דבר מה". על כן גם נקבע כי אפשר שיתעורר מקרים שבהם ניתן יהיה להסתפק ב"דבר מה" שמשקלו "קל כנוצה"*

וכפי שציינה כב׳ השופטת ארבל באותו פסק דין (בפסקה 20 לפסק דינה):

*"הדרישה ל"דבר מה נוסף", הינה – בדומה "לדבר לחיזוק" ובשונה מן ה"סיוע" – דרישה לתוספת ראייתית "מאמתת". לפיכך, בשונה מן ה"סיוע", ה"דבר מה הנוסף" אינו צריך להצביע על אשמת הנאשם, אלא די בראיה ישירה או נסיבתית, חיצונית להודאת הנאשם, אשר יש בה לאשר במידת מה את תוכן ההודאה ולהצביע על אמיתותה .... דרישת ה"דבר מה הנוסף" באה להסיר חשש שמא הנאשם נוטל על עצמו אחריות למעשה שנעשה על-ידי אדם אחר או שלא נעשה כלל, ולפיכך, עקרונית, מספיקה ראיה קלה מאוד כדי לענות עליה... בהתאם לכך ציינה הפסיקה לא פעם כי ראיה זו "יכולה להיות קלה שבקלות".. ואף בעלת משקל "קל כנוצה". די בכך שתניח את דעתו של בית המשפט שההודאה אינה "בדותא בעלמא", ותשכנעו כי הסיפור שסיפר הנאשם בהודאתו אמנם סיפור אפשרי הוא"*

במקרה שלפנינו עניין לנו בהודאה של הנאשם המתפרשת על פני אמרות רבות, הן במשטרה והן בשב"כ. הודאתו כוללת פרטי פרטים של עסקאות נשק שונות, ובכלל זה שמות, כלי נשק ומחירם, כמו גם התייחסות מפורטת למגעיו עם גורמים שונים של הרשות הפלסטינית ועם גורמים מחוצה לה (כאיראנים). המשקל העצמי של אמרות אלה הינו גבוה מאוד. הן תוכנן והן הדרך בה הדברים נאמרו מלמדים על המהימנות הגבוהה שיש להעניק להם (השווה ע"פ 6613/99 **סמירק נ׳ מדינת ישראל**, פ"ד נו(3) 529, בפסקה 12 לפסק דינה של כב׳ השופטת (כתוארה דאז) ביניש).

אך לא רק מבחן הפרטים הרבים מלמד על האמינות שיש לייחס לאמרות הנאשם, אלא כאמור לעיל, לאמרות אלה ישנן תוספות מאמתות חיצוניות בדמות אמרתו של מחמוד עביאת ובדמות ת/8. לא כל שכן, שתפיסת ספינת הנשק "קארין A" תואמת אף היא את הדברים שמסר הנאשם. בל נשכח כי הנאשם עצמו לא הכחיש בעדותו בפנינו פרטים רבים מהמופיע באמרותיו, ובכלל זה מפגש עם האיראנים.

כאמור, משקלן העצמי של האמרות הינו גבוה. הדבר מה הנוסף במקרה זה מצביע על מעורבותו של הנאשם לכל הפחות במקצת העבירות, ומאמת את כלל אמרותיו של הנאשם. ודוק: הדברים המפורטים באמרותיו של הנאשם כולם קשורים לתפקידו ומעמדו כאחראי על מחלקת הכספים של שירותי הביטחון הפלסטיניים. כאשר קיימת זיקה פנימית וקרבה עניינית בין העבירות השונות, התוספת הראייתית הקיימת לעבירה אחת יכולה להתפרש גם על עבירה אחרת (ראו ע"פ 241/87 **כהן נ׳ מדינת ישראל**, פ"ד מב(1) 743, ע"פ 7758/04 **אלקאדר נ׳ מדינת ישראל**, תק-על 2007(3) 710, ע"פ 378/03 **פלוני נ׳ מדינת ישראל**, תק-על 2005(2) 1128). לפיכך, במקרה שלפנינו,