הגם שקיימות תוספות ראייתיות אך למקצת הדברים שמסר הנאשם, הרי לנוכח הקרבה העניינית של המעשים המתוארים בכתב האישום והמפורטים באמרותיו, יש לראות את התוספות הראייתיות כמאמתות את כלל הדברים שמסר הנאשם בחקירותיו. על כן, גם אם לפרט אישום מסויים לא תמצא תוספת ראייתית חיצונית, הרי שלנוכח הזיקה בין כלל האישומים במקרה זה, די יהיה באמרות הנאשם כדי לבסס את ההרשעה, ככל שזו עולה מהאמרות.

כעת, ומשהבהרנו את התשתית הראייתית העומדת לפנינו, נפנה לכל אחד ואחד מפרטי האישום.

**<u>פרט אישום ראשון:</u>**

טענות ההגנה באשר לפרט אישום זה הינן עובדתיות ומשפטיות כאחת. ראשית, מן הפן העובדתי, לא כפרה ההגנה בכך שהנאשם נטל חלק ברכישת האמל"ח כאמור, אלא לטענתה דובר ברכישת אמל"ח שמטרתה איסוף נשק מתושבי הרשות על מנת שיהיה בידי כוחות הרשות הפלסטינית. טענה זו העלה הנאשם הן בבית המשפט והן במהלך חקירתו. שנית, נטען כי הנאשם זכאי להנות מהגנת "מעשה מדינה" כיוון שכל מה שעשה היה לפעול ללא שיקול דעת עצמאי, אלא בהתאם להוראות יו"ר הרשות ערפאת, שאישר העברת כספי הרשות לצורך רכישת הנשק. תפקידו של הנאשם במקרה זה היה חתימה על מסמכים שאישרו תשלום. נטען כי מעשה זה אינו פשע מלחמה או פשע נגד האנושות, שכן לא הוכח שהנאשם ידע שהנשק יגיע לארגון גדודי חללי אלאקצא, שיעשה בו שימוש לטרור.

עוד נטען כי עומדת לנאשם הגנת הצידוק, שכן ציות להוראת הרשות שמטרתה איסוף נשק מגורמים לא אחראיים והעברתו לידי שליטה אחראית של הרשות הינה מעשה לגיטימי החוסה תחת הגנת הצידוק.

דומה כי אין לקבל את טענות ההגנה, ולו מהטעם העובדתי.

על מנת שתתקבל הגנה של "מעשה מדינה" יש צורך להראות כי הגוף מטעמו פעל הנאשם היה מדינה. כפי שנקבע בהחלטה בטענות המקדמיות מפי חברי סגן הנשיא, הרשות הפלסטינית אינה מדינה, ובוודאי שבתקופה הרלוונטית לכתב האישום הייתה רחוקה הרבה יותר ממעמד של רשות עצמאית. על כן ציין סגן הנשיא כי "לפיכך, אני סבור שיש לקבוע, שמעשיו של הנאשם לפי כתב האישום לא היו פעולות ממשל (ACT OF STATE), שכן לא נעשו מטעם גוף שהוא מדינה, אלא לכל היותר פעולות אישיות בכסות ממשלית, תוך שימוש במשאבים של ישות מדינית בלתי מגובשת".

לא הובאו כל תימוכין נוספים או ראיות נוספות שיש בהם כדי לשנות ממסקנתנו זו בנוגע למעמדה של הרשות הפלסטינית.

שנית, הטענה כי איסוף הנשק נועד להעברת כלי נשק מתושבים העלולים לעשות בהם שימוש פרטיזאני לידי גורמים אחראיים, אין לה על מה שתסמוך. אמנם, הנאשם טען זאת במספר הזדמנויות, ובכלל זה בחקירתו, אולם לא התרשמנו כי לטענה זה יש בסיס כלשהו. כאמור, כבר

ציינו לעיל כי התרשמותנו מהנאשם הינה כי המדובר באדם מתוחכם, המנסה להעביר מעליו את נטל האחריות. בד בבד עם הטענה כי איסוף הנשק נועד למנוע מגורמים לא אחראיים את השימוש בו, עולה כי הנאשם אישר מימון פעולות אשר אין בינן ולבין איסוף נשק מגורמים לא אחראיים ולא כלום. כך למשל, נושא מימון הקמת מפעל לייצור חומרי נפץ בידי אנשי הרשות הפלסטינית עצמה, מימון מחרטות, מימון הברחת נשק מגורמי חוץ כחיזבאללה והאיראנים וכדומה. אם כל המטרה הינה איסוף נשק "פרטיזאני", מדוע יש צורך לממן הבאת נשק נוסף שמקורו מחוץ לשטחי הרשות הפלסטינית, לא כל שכן כשמדובר בנשק התקפי מובהק, כרקטות וטילים מסוגים שונים? אם מדובר רק ברכישת נשק מאזרחים, מדוע פעל הנאשם למימון עלויות הברחת הנשק מהחיזבאללה בידי גורמים של הרשות הפלסטינית?

התשובה לשאלות האמורות הינה ברורה. אין בין איסוף הנשק לבין הרצון למנוע אותו מגורמים "לא אחראיים" העלולים לעשות בו שימוש טרוריסטי ולא כלום. מטרת איסוף הנשק היא העברתו לידי גורמים ברשות הפלסטינית המצייתים לערפאת ואשר מאפשרים לחימה בישראל, בכוחותיה ובאזרחיה. כפי שציין הנאשם עצמו בזכ"ד מיום 15.3.06 שעה 18:15 בסעיף 30: **"יאסר ערפאת נתן הוראה שכל הנשק יירכש על ידי הרש"פ ולא על ידי החמאס או ארגונים אחרים וזאת על מנת שהוא עצמו יוכל לשלוט בכל מה שקורה. באופן זה יאסר ערפאת יוכל לשלוט בעוצמת האינתיפאדה"**.

עינינו הרואות כי אין המדובר במטרה תמימה "ואחראית", אלא במטרה ברורה שנועדה לאפשר לגורמים של הרשות הפלסטינית, ובראשם יאסר ערפאת, לשלוט באמצעות נשק חם והתקפי בעוצמת "האינתיפאדה", היינו: בעוצמת הטרור הפלסטיני.

עוד יש לומר כי הטענה שהנאשם לא ידע שהנשק הועבר לארגון גדודי חללי אלאקצא, שעשה בו שימוש לצרכי טרור, הינה טענה שאינה תואמת את חומר הראיות. כך למשל, בזכ"ד מיום 15.3.06 שעה 18:15 בסעיף 36 נרשם: **"הנחקר הסביר כי כל אחד ממנגנוני הבטחון רכשו אמל"ח בכמויות גדולות והנחקר אישר התשלום. כל ארגוני שהדא אל אקצא השתמשו בכלי הנשק שסופקו על ידי מנגנוני הבטחון שביצעו את הרכש המאסיבי"**.

עינינו הרואות כי הנאשם ידע היטב שהאמל"ח שנרכש הועבר לידי גדודי חללי אלאקצא שעשו שימוש בנשק זה. ברור כי הנאשם ידע מהו ארגון גדודי חללי אלקאצא ומהם פעילויותיו. ניסיונו לומר בפנינו כי אינו יודע מהו ארגון זה הינו ניסיון מופרך להציגו כאדם תמים. איננו מאמינים לטיעון זה. ברור לנו כי הנאשם – שהיה בעל משרה בכירה בפת"ח במשך עשרות שנים והיה מקורב ליאסר ערפאת - ידע היטב מהו ארגון גדודי חללי אלקצא, מהן פעילויותיו, והוא ידע היטב כי ארגון זה הוא כלי בידי הרשות הפלסטינית להפעיל טרור נגד מדינת ישראל ותושביה.

עוד יש לציין כי לא התרשמנו כי הנאשם היה פקיד שמילא הוראות ללא שהיה לו שיקול דעת כלשהו. הדבר נובע הן מאופיו הבכיר של תפקידו, אך גם מהעובדות שעלו בפנינו כמו גם הדברים שמסר הנאשם בבית המשפט. כך למשל, במקרים לא־מעטים עולה כי הנאשם פעל מיוזמתו הוא, בלא אישור כלשהו – ובוודאי בלא הוראה מפורשת - של יאסר ערפאת בהוצאת כספים. כך

"ביוזמות חעסקיות" שנועדו להשיג רווחים לארגון הפת"ח, מגעיו עם האיראנים שהיו ללא ידיעה מראש של יאסר ערפאת (אלא רק בדיעבד), ודבריו של הנאשם כי יאסר ערפאת אהב לראות ולקבל תוצאות ולא היה מעורב בכל התהליך עצמו מלכתחילה. עוד נזכיר, כי הנאשם אישר במו פיו בעדותו בפנינו כי לא העביר כסף אם לא היה בידו הסכום המתאים או שמטרת ההוצאה לא התאימה לסעיף מוכר בתקציב. דבר זה אינו מתיישב עם מי שרק ממלא כל הוראה של ערפאת, ויתר על כן, הנאשם אמר בעדותו בפנינו ביום 18.11.08 כי אם היה מקבל הוראה שבעיניו היא מוזרה הוא לא היה מבצע את הפעולה, והוסיף כי "היו לי הרבה מחלוקות עם הראיס על דברים כאלה ובסופו של דבר הוא בא ואמר לי שאני צודק". מדברים אלה, שנראה כי נאמרו בגאווה רבה מצידו של הנאשם, עולה כי הנאשם לא היה חותמת גומי. כאשר סבר שישנה בעיה עם הוראה כזו או אחרת של ערפאת הוא היה אומר לו זאת ואף מתווכח איתו.

במקרה שלפנינו, ובכל הנוגע למעשים המפורטים בכתב האישום, לא מצא הנאשם לנכון להתווכח, אף שאנו יודעים כי לו היה חושב לנכון לעשות כן היה עושה זאת. המסקנה המתבקשת הינה כי לנאשם, הן מתוקף מעמדו, הן דה פקטו ביחסיו מול יאסר ערפאת, והן לאור מעשיו שלו כעולה מחומר הראיות בפנינו, היה שיקול דעת אם לאשר העברת כספים אם לאו. הנאשם ידע היטב מה מטרת העברת הכספים, וידע היטב כי הנשק שנרכש באמצעות אותם הכספים נועד לצורכי ארגון טרור – גדודי חללי אלאקצא.

**סיכום:**

לא הונחה מבחינה עובדתית כל תשתית המאפשרת לתמוך בטענת ההגנה באשר להגנת הצידוק העומדת לנאשם או להגנת "מעשה מדינה". הוכח כי הנאשם ידע היטב כי המדובר ברכישת נשק לצורכי העברתו לשימוש ארגון טרור – גדודי חללי אלאקצא. לא דובר במקרה זה ברכש נשק שמטרתו הוצאת נשק מתושבים והעברתו ל"ידיים אחראיות" כטענת ההגנה.

הרשות הפלסטינית אינה מדינה, ובכל מקרה, העברת נשק לצורכי טרור נגד אזרחי ותושבי מדינת ישראל אינה יכולה לחסות תחת הגנת "מעשה מדינה", אף לו דובר במדינה.

שנית, גם בנוגע להגנת הצידוק, אף אם נלך לשיטתו של חברי סגן הנשיא, אשר מוכן להכיר בהגנת הצידוק לגורמים של הרשות הפלסטינית בתנאים מסויימים, אין המדובר במעשה לגיטימי מצידה של הרשות, ורכישת נשק שנועד לצורכי ארגון טרור, הינה בבירור מעשה בלתי חוקי.

מאחר שהנאשם היה שותף לרכישת נשק כמפורט בפרט האישום הראשון, אנו מרשיעים אותו במיוחס לו בפרט אישום זה.

<u>**פרט אישום שני:**</u>

פרט זה עניינו בהעברת משכורות לפעילי גדודי חללי אלאקצא, וכן בהעברת בקשה של מרואן ברגותי לתשלום כסף עבור אמצעי לחימה.

Case 1:04-cv-00397-GBD-RLE Document 910-27 Filed 05/13/15 Page 3 of 7

הבסיס לפרט זה מצוי באמרותיו של הנאשם, אך גם בדברים שמסר מחמוד עביאת במשטרה. הנאשם הודה למעשה בחקירתו כי העביר משכורות לאנשיו של מחמוד עביאת, ואילו האחרון אישר עניין זה באמרתו. לפיכך, הרישא של פרט אישום זה מבוססת על אמרות הנאשם וזוכה לתוספת ראייתית משמעותית באמרתו של מחמוד עביאת. לפיכך, ולאור הניתוח העובדתי דלעיל, יש בסיס מוצק להרשעת הנאשם ברישא של פרט האישום השני, שכן המדובר בהעברת כספים לפעילי טרור.

הסיפא של פרט האישום השני – נושא האמצעים שביקש מרואן ברגותי, אף הוא מופיע באמרותיו של הנאשם ומפורט שם, והינו במהותו חלק מאותה מסכת כללית המתוארת בפרט האישום הראשון, הנוגעת לחלקו של הנאשם במימון אמצעי לחימה שונים של אנשי הרשות הפלסטינית ושל גדודי חללי אלאקצא.

בכל הנוגע לסיפא של פרט אישום זה טענה ההגנה כי הנאשם לא ביצע כל עבירה, שכן כל שעשה היה להעביר לערפאת את המסמך. הנאשם לא שילם את הסכום המבוקש בהעדר תקציב במשרדו, והבקשה שולמה בכלל מתקציב משרד האוצר הפלסטיני.

אין בידי לקבל את הטענה שאין המדובר בעבירה. האישום המיוחס לנאשם הינו ביצוע שירות עבור התאחדות בלתי מותרת. השירות שהעניק הנאשם לארגון גדודי חללי אלאקצא אמנם לא התבטא בכך שהעביר כסף ממשרדו, אך שירות עדיין נעשה מצידו. שירות זה כלל קבלת הבקשה והעברתה לערפאת. הנאשם היה הצינור באמצעותו טופלה ומומשה הבקשה. כאמור לעיל, וכפי שהראינו בניתוח העובדות בפרט האישום הראשון, הנאשם היה חוליה משמעותית בכל מעשי הרכש והכספים. לא זו אף זו, אלא הוא היה הצינור דרכו עברו כל הבקשות הכספיות ליאסר ערפאת. כך גם במקרה זה. מעשה זה הינו שירות עבור התאחדות בלתי מותרת, ועל כן יש להרשיעו במיוחס לו גם בסיפא של פרט אישום זה.

עוד יש לומר כי הדברים האמורים ביחס להגנות "מעשה מדינה" וצידוק שהועלו על ידי ההגנה, נכונים גם ביחס לפרט אישום זה וביתר שאת, הואיל ובמקרה זה מדובר בסיוע ושירות ישיר שהעניק הנאשם לארגון הטרור גדודי חללי אלאקצא.

<u>**פרט אישום שלישי:**</u>

פרט זה עניינו חלקו של הנאשם ברכש הספינה קארין A.

לטענת ההגנה הנאשם לא ביצע עבירה כלשהי. הכסף לרכישת הספינה לא הגיע מתקציבו אלא מתקציב משרד אחר, עליו היה אחראי חרבי צרצור. הנאשם לא יזם את הבאת ספינת הנשק, והייתה לו לכל היותר ידיעה עקיפה ולא קונקרטית שהספינה תוביל נשק. כל שעשה היה להעביר את המידע בדבר הספינה ליאסר ערפאת, שחשב שמדובר במזימה לרצוח אותו.

לאחר שבחנו את חומר הראיות, מצאנו כי העובדות המיוחסות לנאשם בפרט אישום זה הוכחו כנדרש. למעשה, גם ההגנה לא חלקה על כך שהעובדות המפורטות בכתב האישום הוכחו באמרותיו של הנאשם. אעיר כי בכל הנוגע לרכש הספינה לא עלה כלל כי יאסר ערפאת סירב לנושא או חשב כי המדובר במזימה. דברים אלה שנאמרו על ידי הנאשם, התייחסו למפגשים שלו עם האיראנים המפורטים בפרט האישום הרביעי, ולא לנושא רכש הקארין A, אותו אישר ערפאת ללא בעיות כלשהן, בהתאם לאמרות הנאשם.

השאלה המרכזית אותה העלתה ההגנה הינה האם מעשים אלה מהווים עבירה של סחר בציוד מלחמתי.

הגדרת המילה ״סחר״ בצו בדבר איסור סחר בציוד מלחמתי הינה כדלקמן: ״קניה, מכירה, תיווך, מסירה, איחסון, הובלה, העברה, משלוח או תיקון״.

פירושו של דבר, שסחר בציוד מלחמתי כולל לא רק פעולות של רכישה ומכירה, אלא גם תיווך והובלה של נשק.

במקרה שלפנינו, הנאשם נטל חלק במעשים הבאים: הוא קיבל את פנייתו של פתחי ראזם למימון ספינת נשק שתגיע מהאיראנים; הובהר לנאשם כי הנשק שיהיה על הספינה יהיה במימון איראני ואילו על הרשות הפלסטינית לממן רק את הספינה והוצאותיה; הנאשם טיפל בפניה, הוא העביר את הדברים ליאסר ערפאת אשר אישר את הקשר והסכים לרכישה; הנאשם הוא זה שהעביר את בקשת התשלום לערפאת, וזה אישר את העברת הכסף; כאשר הנאשם הודיע כי אין למשרדו תקציב מתאים, הורה ערפאת כי התשלום יבוצע ממשרדו של חרבי צרצור והנאשם העביר גם הוראה זו באמצעות שליח ממשרדו; פתחי ראזם עמד בקשר עם הנאשם לצורך קבלת הידיעה האם ניתנה ההוראה להעברת הכסף.

מעובדות אלה עולה כי הנאשם היה מעורב בתיווך ובמימון של עסקת הנשק. גם אם משרדו לא שילם את הכסף באופן ישיר, הנאשם הוא זה שיצר את הקשר עם ערפאת והעלה לשיקולו, לעיונו ולהכרעתו את נושא עסקת הנשק. הנאשם היה הגורם המתווך בין פתחי ראזם, האיראנים ואחרים לבין יאסר ערפאת. חלקו של הנאשם, לפיכך, אינו מינורי, אלא משמעותי. ניתן לומר כי הנאשם היה גורם משמעותי בקיומה של העסקה, שכן קשריו עם ערפאת היו בעלי חשיבות עליונה לצורך הוצאתה לפועל של העיסקה.

גם אם משרדו של הנאשם לא מימן את העסקה מתקציבו השוטף, עדיין יש לומר כי הנאשם היה מעורב בעסקה זו עד צוואר, והוא מהווה גורם אשר פעל באופן מהותי וממשי לצורך השגת המימון לרכישת הספינה. לפיכך, יש לראותו כמי שהיה מעורב בקניה של הנשק במגעים שניהל מלכתחילה עם האיראנים, ברכישת האמצעי להובלת הנשק, ולכל הפחות במעשים המהווים תיווך לרכישת הנשק.

גם במקרה זה, ברור כי לא חלות ההגנות של מעשה מדינה וצידוק. במקרה זה הקשר הראשוני החל עוד בטרם ידע ערפאת על נושא ספינת הנשק, כך שהנאשם ודאי אינו יכול לומר כי פעל מתוך מילוי הוראות בלבד.

על כן יש להרשיע את הנאשם במיוחס לו בפרט אישום זה.

**<u>פרט אישום רביעי:</u>**

פרט זה עניינו מגעים שניהל הנאשם עם נציגים איראנים מחוץ לאזור.

ההגנה לא חלקה בכל הנוגע לפרט זה כי הנאשם קיים פגישה עם מי שהציגו עצמם כאיראנים, וניהל שיחה כללית בדבר אפשרויות שאירן תסייע לרשות הפלסטינית. ההגנה טענה כי על התביעה להביא תוספת ראייתית מסוג דבר מה על מנת להוכיח כי התקיימה פגישה כזו, וכי בני שיחו של הנאשם היו אכן איראנים. עוד נטען כי מבחינתו של הנאשם היו פגישות אלה רוויות חשדנות וזהירות ולא היו מתוך רצון לשתף פעולה, ועובדה כי ערפאת, שהועבר אליו מסמך המתאר את הפגישה, דחה את הרעיון שעלה בה.

ראשית, בכל הנוגע לתוספת הראייתית הנדרשת, אנו סבורים כי במקרה זה, גם בהיעדר תוספת ראייתית לפרט זה כשלעצמו, קיומה של תוספת ראייתית לפרטים האחרים, מהווה תוספת ראייתית גם ביחס לפרט אישום זה.

כפי שציינו לעיל, תוספת מסוג "דבר מה" הינה תוספת שנועדה לאמת את אמרות הנאשם. מכיוון שמדובר בתוספת מאמתת ולא בתוספת מסבכת, אין הכרח כי התוספת תתייחס לכל אחד ואחד מפרטי האישום בנפרד, ובתנאי כי ישנו קשר בין פרטי האישום השונים בהם מדובר.

כאמור, קיימת במקרה שלפנינו זיקה בין מעשיו של הנאשם המפורטים בפרט אישום זה, למעשיו המפורטים בפרטי האישום הקודמים. כולם נוגעים לעבודתו ומעמדו כאחראי הכספים ברשות הפלסטינית וכאדם המקורב לערפאת. לפיכך, התוספות הראייתיות שנמצאו ביחס לפרטי האישום הראשון והשני (ת/8 ואמרתו של מחמוד עביאת) מהוות גם תוספת ראייתית לפרט זה.

עוד יש לדחות את טענת ההגנה כי המדובר במגעים ללא כוונה ממשית. אמנם, נראה כי המדובר במגעים ראשוניים, אולם מעצם טיבם וטבעם של מגעים ראשוניים מסוג זה, הם מלווים, לעתים, בחשדנות. אין פירושו של דבר כי הנאשם לא רצה לקדם את המגעים לאחר מכן, והוא אף העביר את נושא המגעים להחלטתו של יאסר ערפאת.

בל נשכח כי יסודות העבירה בה מדובר דורשים אך את קיומו של מגע, בין הנאשם לבין גורם אחר שהינו חלק מארגון עוין. במקרה שלפנינו נראה מהעובדות שהוכחו כי לא זו בלבד שהנאשם אכן נפגש וקיים מגעים עם פעילי מדינת אויב, אלא שהנאשם פעל מתוך רצון לממש את הסיכום עם

האיראנים ו"להביא תוצאות" לערפאת. לפיכך, אנו סבורים כי כל יסודות העבירה התקיימו במקרה זה בנאשם.

עוד אציין כי גם במקרה זה ברור כי לא חלות ההגנות של צידוק ו"מעשה מדינה", כיוון שהנאשם לא קיבל כל הוראה או הנחייה לבצע את המיוחס לו בפרט זה, אלא פעל מיוזמתו ועל דעתו, ורק בדיעבד העביר את תוצאות המפגש לאישורו של ערפאת.

לפיכך יש להרשיע את הנאשם במיוחס לו בפרט האישום הרביעי.

<u>**סוף דבר**</u>

לא מצאנו לנכון לקבל את טיעוני הזוטא של הנאשם. מצאנו לנכון להעניק לאמרותיו המשטרתיות ולזכ"דים מחקירותיו בשב"כ משקל מלא, ולהעדיף את אמרותיו בכל מקום בו טען הנאשם אחרת בפנינו. לאור המצוי באמרות הנאשם, סברנו כי קיימת תשתית עובדתית מלאה להוכחת האישומים המיוחסים לנאשם.

לא עומדת לנאשם כל הגנה במקרה זה. לא חלה במקרה שלפנינו הגנת מעשה מדינה, בין היתר כיוון שהרשות הפלסטינית אינה מדינה, ובתקופה הרלוונטית מעמדה היה רחוק עוד יותר ממדינה מאשר כיום. אף אם הייתה קיימת הגנה זו במשפט האזור, לא היה הנאשם יכול לחסות בצילה, לאור העובדה כי העביר נשק בידיעה כי זה עתיד לשמש ארגון טרור, כגדודי חללי אלאקצא.

לא עומדת לנאשם הגנת הצידוק, שכן גם בהתאם לפרשנות המרחיבה ביותר של הגנה זו (כאמור בהחלטת חברי סגן הנשיא באשר לטענות המקדמיות), הנאשם נטל חלק במעשים שאינם לגיטימיים, שלא בהתאם לסמכויות שניתנו לרשות הפלסטינית בהסכמי הביניים, פעל פעמים רבות מיוזמתו, ולאו דווקא כממלא הוראות, ואף אם היו מקרים בהם מילא הוראות, דובר במעשים שהינם בבירור בלתי חוקיים שכן כאמור, דובר בהעברת נשק ואמצעים לגורמי טרור.

אשר על כן החלטנו להרשיע את הנאשם בכל המיוחס לו בכתב האישום.

<u>**השופט סא"ל רונן עצמון:**</u>

אני מסכים.

<u>**השופט סא"ל טל בנד:**</u>

אני מסכים.

**ניתן והודע היום, 29/07/09, בפומבי ובמעמד הצדדים.**

| | | |
|---|---|---|
| שופט | נשיא | שופט |