# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESLYE KNOX, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 03 CV 4466 (VM) |
| ) | |
| THE PALESTINE LIBERATION ) | |
| ORGANIZATION, THE PALESTINIAN ) | |
| AUTHORITY, et al., ) | |
| ) | |
| Defendants. ) | |

## SUPPLEMENTAL DECLARATION OF PRIME MINISTER SALAM FAYYAD

Pursuant to 28 U.S.C. § 1746, I, Dr. Salam Fayyad, declare under penalty of perjury as follows:

1. I am over eighteen years old, and I am competent to make this declaration. Unless otherwise stated herein, the facts set forth below are based on my personal knowledge.

2. I am the Prime Minister and Finance Minister of the Palestinian National Authority ("PNA"). I also serve as the director of the Palestine Liberation Organization's ("PLO") Economic Affairs Department.

3. I submit this declaration as a supplement to my declaration dated May 8, 2008, ("May 8, 2008, Declaration") which I understand was previously submitted in support of the Motion to Reduce Amount of Bond filed by Defendants in the above-captioned matter. I rely on, but will not repeat in this Supplemental Declaration, the facts in my May 8, 2008, Declaration indicating the basis for my knowledge of the information set forth below. This Declaration also supplements the May 10, 2008, Declaration of Yasser Abed Rabbo, also submitted in support of the Motion to Reduce Amount of Bond. I am familiar with the contents of Mr. Abed Rabbo's

declaration, and I am in a position to supplement it with the information contained herein, as a result of the execution of my current duties with the PLO, as well as the execution of my various duties with the PNA over the last six years.

4. Shortly following my appointment as the PNA's Minister of Finance in June 2002 (*see* my May 8, 2008, Declaration, ¶ 7), and as part of my efforts to reform the PNA's financial reporting and bring greater transparency to the financial operations of the PNA (*see* my May 8, 2008, Declaration ¶¶ 12-13), I initiated and oversaw an extensive process to identify, document and analyze the PNA's financial operations, as well as its then-existing assets.

5. My efforts in this regard received substantial media coverage, an example of which is an article by Mr. James Bennet that appeared in the *New York Times* on or about March 1, 2003. A copy of that article from the *New York Times*' website is attached hereto as Exhibit A.

6. In August 2002, a non-governmental organization known as the Democracy Council began implementing a project on behalf of the PNA known as "The Palestinian Transparency & Accountability Project" ("PTAP"). That project included efforts to establish and organize an entity that became known as the Palestinian Investment Fund ("PIF"), the formation of which had been ordered by a Presidential decree dated January 2000. The PIF was not actually organized, however, until August 14, 2002, following my appointment as Minister of Finance.

7. Based on the Ministry's internal review of the financial operations of the PNA and its investments in various commercial enterprises that were titled at the time in the name of the Palestinian Commercial Services Company (PCSC), a Gaza-based company owned by the

2

PNA, I determined that a restructuring of the PNA's financial operations was not only necessary, but critical.

8. As part of that restructuring, I sought to have all PCSC investments, as well as any other commercial investments held by the PNA, transferred to PIF. Where assets had minimal or zero value, I initiated a transparent process to liquidate such assets. The process of transferring or liquidating assets yielded no net proceeds to the PNA.

9. As part of this transfer of assets, and at my direction, the Democracy Council and Standard & Poor's conducted an extensive analysis and valuation of the commercial assets, which assets, as I note above, were in the process of being transferred to PIF.

10. As part of their work for the PNA, Standard & Poor's and the Democracy Council issued an extensive written report dated February 2003, detailing their findings. The report contained, among other things, (a) a list of the 79 commercial assets that were in the process of being transferred to PIF, (b) valuation and transparency diagnostic reports by the Democracy Council and Standard & Poor's on the ten largest investments, and (c) a listing of current bank accounts that, according to the Democracy Council, were formerly controlled by the PCSC. A copy of the first 19 pages, comprising a summary from that report, as well as Appendix C, are attached hereto as Exhibit B.

11. As of December 31, 2003, according to PIF's Annual Report, the total asset value of PIF was reported to be approximately US $800 million. A copy of PIF's 2003 Annual Report is attached hereto as Exhibit C. (To reduce the document size for electronic filing, three pages of photographs have been omitted from the attachment, but will be provided at the request of the Plaintiffs or Court.)

12.  As described below, the PNA currently owns no material assets:

   a.  The PNA does not hold real estate, other than property located in the Occupied Territory used for daily government operation. There are no existing schedules comprehensively listing such real estate holdings.

   b.  The PNA does not hold buildings, plants or equipment, other than buildings, plants, and equipment located in the Occupied Territory used by PNA employees in the course of performing governmental functions. There are no existing schedules comprehensively listing such buildings, plants or equipment.

   c.  Pursuant to the recent satisfaction of judgment in *Bucheit v. PLO*, a case in the United States, there has been a transfer of ownership to the PNA of a concrete fabrication workshop in the Gaza Strip. The PNA will attempt to dispose of this workshop in the very near future, and I am unsure whether there would be an existing market for the workshop. In any event, the concrete fabrication workshop is not viewed as having much, if any, net realizable value.

   d.  The PNA does not hold securities, negotiable instruments or other paper investments. In short, the PNA holds no investments or similar assets, and the PNA is not otherwise engaged in any business activities.

13.  As of January 2008, the PNA had an accrued deficit of approximately US $1.6 billion. Even if the donors were to pay each and every financial commitment that they have made to date, by December 2008, there would still be a deficit of at least US $400 million. In addition, as of June 11, 2008, the PNA's existing short-term and long-term liabilities totaled approximately US $211.6 million. Attached as Exhibit D is a true and genuine copy of a schedule of outstanding debts owed by the PNA, which was prepared on June 11, 2008, at my

direction, by the General Accountant of the Ministry of Finance. The PNA is unable to satisfy its debts at this time, and given accruing interest, the debts will only increase as time goes by. As a result, the PNA is in no position even to request a line of credit so as to post a bond in sums as large as the one in question.

14. Even the PNA's cash holdings cannot be described as assets. The PNA suffers from a liquidity shortage. In order to satisfy its operational costs, including salary payments and payment to service providers, it has opened various credit facilities in, or obtained loans from, regional banks, including the Bank of Jordan, the Cairo Amman Bank, the Arab Bank, and the Bank of Palestine. The PNA also maintains depository accounts at those banks. Those cash deposits of the PNA vary from day to day as they are used to meet the PNA's operating needs. They are also encumbered by the bank's right of curtailment against those deposits in the event that those credit facilities or loans are terminated or called. The PNA's current outstanding obligations on the credit facilities and loans far exceed the existing cash balances at those banks. The PNA does not hold any depository accounts at banks with which it does not have credit facilities or loan agreements. When the PNA draws down from its bank accounts, therefore, it is not drawing down on an asset. It is, instead, drawing down on borrowed money.

15. In terms of accounts receivable, the PNA does not have any businesses that generate moneys owed to it. The primary sources of governmental funds are domestic tax revenues; clearance revenues, including the VAT collected, and *de facto* controlled by Israel; domestic fees and charges such as registration and licensing fees; and donor funds. These sources of funds and their insufficiency were described in my May 8, 2008, Declaration.

16. For purposes of this Supplemental Declaration, I am not including any assets titled in the name of either PIF or the Palestinian Pension Fund for the State Administrative

5

Employees in the Gaza Strip ("PPF"). I understand that the attorneys who are representing the Plaintiffs in the above-captioned action are conducting litigation in various courts in the United States regarding whether assets titled in the name of PIF or the PPF constitute assets of the PNA, as well as the nature of PNA's relationship to PIF and the PPF.

17.  The PNA does not compile balance sheets listing its current and long-term assets. In seeking foreign aid through entities such as the International Monetary Fund and the World Bank, the PNA does produce reports and progress reviews regarding the restructuring and reform of its macroeconomic and fiscal framework. It also prepares annual and quarterly fiscal operations reports. Copies of the foregoing were included as exhibits to the May 8, 2008, Declaration.

18.  Based on the additional information set forth in this Supplemental Declaration, I reiterate the conclusion contained in my May 8, 2008, Declaration that the PNA lacks the financial ability to post or secure the bond that the Court previously set in this case.

19.  On December 21, 2006, I was appointed the head of the Economic Affairs Department in the PLO and an observing member of the PLO's Executive Committee.

20.  In my capacity as head of the PLO's Economic Affairs Department, I have had the opportunity to become familiar with the finances and financial operations of the PLO.

21.  Prior to my appointment as Director of the PLO's Economic Affairs Department, in the early days of my tenure as Minister of Finance, I sought to identify, document, and analyze all the assets then being held by the PLO. I desired to identify any such assets in order to bring them under the control and use of the PNA. Despite media reports suggesting the PLO held substantial assets, the processes that I helped launch to document any such assets suggested that the funds held independently by the PLO were very limited indeed.

22. The PLO does not compile and issue financial statements such as balance sheets listing its current and long-term assets. This is because, apart from cash holdings, the PLO currently owns very few assets. The PLO does not hold real estate, other than property, such as overseas missions and representative offices, used for its diplomatic operations. A schedule of properties owned by, or on loan to, the PLO is attached hereto as Exhibit E. The PLO also does not hold buildings, plants or equipment, other than buildings and equipment used by PLO employees in the course of performing diplomatic functions.

23. Aside from minimal operational accounts, the only PLO assets of material value are the PLO cash holdings, held in two bank accounts in the Amman branch of the Arab Bank, totaling, as of March 31, 2008, approximately US $10.7 million.

24. In terms of accounts receivable, the PLO does not have any businesses that generate moneys owed to it. The primary source of funds in PLO accounts is monthly budgetary support given by the PNA for wages and salaries and operational expenses.

25. I understand that a claim has been made that the PNA and/or the PLO have substantial undisclosed assets. I further understand that a claim has been made that these alleged assets could be used to post the $192 million bond in this case. I am not aware of any such undisclosed assets. Moreover, if they exist, I would want to be made aware of them, given that they could be used to alleviate the problems and suffering of the Palestinian people. To my knowledge, the PLO and the PNA do not own, as of the date hereof, any material assets other than those described herein and in the previously submitted affidavits.

26. I am aware that this Supplemental Declaration is being filed in further support of a motion by the PNA and PLO to reduce the bond that the Court has ordered as a condition of vacating the default judgment in this action. I have authorized the use of this Supplemental Declaration for such purpose.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of June, 2008, in Istanbul, Turkey.

_____
Dr. Salam Fayyad
Prime Minister of the Palestinian National Authority
Finance Minister of the Palestinian National Authority
Director of the Economic Department of the PLO

8

# EXHIBIT D

**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK )
)  ss
)
COUNTY OF NEW YORK )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Arabic into English, and consisting of one page of text.

Abigail Simone, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this 12 day of June, 20 08.

EVAN FINCH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6134600
Qualified in New York County
My Commission Expires October 03, 2009

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel 212.631.7432 fax 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A. tel 415.576.9500 fax 415.520.0525
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom tel +44.(0)20.7936.9002 fax +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com  |  www.geotext.com

In the Name of Allah, Most Gracious, Most Merciful

**Palestinian National Authority**
**Ministry of Finance**

[logo]

[See original for bilingual text in Arabic and English.]

**General Accountant**

### Loan Balances as of 6/11/2008

| Loan | Current Balance with Interest/Dollar |
|---|---|
| Jerusalem Development & Investment Bank Loan | 10,196,995 |
| Jordan Kuwait Bank Loan | 7,060,396 |
| Bank of Palestine P.L.C. Loan | 30,865,347 |
| International Bank of Palestine Loan | 25,447,749 |
| Real Estate Bank of Egypt Loan | 24,394,387 |
| Palestine Investment Bank Loan | |
| Current Debit 5 million | 5,097,768 |
| Loan 1: 25 million | 11,307,692 |
| Loan 2: 23 million | 14,701,862 |
| Total | 31,107,322 |
| Arab Bank Loan | |
| 311/100084 | 55,742,284 |
| 312/100084 | 6,243,575 |
| 313/100084 | 20,546,038 |
| Total | 82,531,897 |
| **Grand Total** | **211,604,093** |

### Loans of the Public Petroleum Authority

| Bank | Current Balance with Interest |
|---|---|
| Jordan Bank | 57,300,000 shekels |
| Arab Bank | 68,907,829 shekels |
| Islamic Palestinian Bank | 28,551,431 dollars |
| Islamic Arab Bank | 10,151,704 dollars |
| | 39,989,092 dollars |

Phone 2978798    Fax 2978799