PLAINTIFF'S
EXHIBIT
261

Israel _____ Defense _____ Forces

| | | |
|---|---|---|
| Before the Military Court | Court Case: | *2270*/04 |
| in Judea | Prosecution Case: | 1247/04 |
| Before a panel | Detailed Incident Case: | 1329/04 Hebron |
| | | 9891/04 Jerusalem Special |
| | | Duties Department |
| | | 178694/04 Moria |

In the trial between

### The Military Prosecutor

- The Prosecutor -

- v. -

### Ahmed Salah Ahmed Salah

(detained since March 8, 2004)

Identity No. 901739656, born January 23, 1977, from Bethlehem

-The Defendant-

[Stamp] This indictment received _____
on date: *May 20, 2004*
and entered into the log in case _____
by the court officer *Irit Goren*

### Indictment

The above mentioned Defendant is accused hereby of committing the following offenses:

**First count:**

**Nature of the offense:** Manufacturing a bomb, an offense pursuant to Regulation 53 (A) (3) of the Security Provision Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, during March 2002 or thereabouts, manufactured a bomb without possessing a permit from or for a military commander.

To wit: at the above mentioned time, ███████████████████████
████████████ (hereinafter: "████████████) approached the
military operative ████████████ and

[Stamp] P 2: 149

███████ referred ████████ to the Defendant and told him

████████ met the Defendant and received 4 kilograms of Um Al Abed explosive from him. ████████ made four pipe bombs using part of the quantity that he received, and kept the remaining quantity.

[Stamp] P 2: 149 [continued]

**Second count:**

**Nature of the offense:** Membership in an illegal organization, an offense pursuant to Regulations 85 (1) (A) and 84 (1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from early 2004 or thereabouts, was a member of an illegal organization, as follows:

At the above mentioned time, the above mentioned Defendant was a member of a military cell of the Al Aqsa Martyrs Brigades organization.

The Defendant's membership in the organization continued until the day of his arrest.

**Third count:**

**Nature of the offense:** Shooting at a person or a place in which persons may be, an offense pursuant to Regulation 58 (A) of the Defense Regulations (Time of Emergency), 1945; and Section 14 of the Rules of Liability for an Offense Order (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in early 2004 or thereabouts, was an accomplice in shooting at a person or a place in which people may be, as follows:

At the above mentioned time, the above mentioned Defendant left with fellow members of his military cell – ███████████, ███████ and ████████████ (hereinafter: ████████, who was armed with a Kalashnikov rifle and a hand grenade – in order to carry out a shooting attack against IDF forces in the DCO military base. When they arrived at the site, the Defendant and ██████████ got out of the vehicle while in possession of the weapons in order to carry out the shooting attack, while ████████ and his accomplice ███████ remained in the vehicle.

After a few minutes, the Defendant and his accomplice fired at a vehicle; thereafter ██████████ and his accomplice fled from the site towards the home of the Defendant.

[Stamp] P 2: 150

There, they waited for the Defendant to return.

**Fourth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2003 or thereabouts, was an accomplice in an attempt to cause the intentional death of others, as follows:

1.  At the above mentioned time, the above mentioned Defendant suggested to ████████████ to depart with […]

[Stamp] P 2: 150 [continued]

2

[...] him to carry out a shooting attack at Israeli vehicles. The latter ████ departed with the Defendant and conducted a preliminary visit of the site that the Defendant had found. The Defendant and ████████ arrived at the area of the Talita Kumi School and found that this was a good site for carrying out the attack. The Defendant instructed ████████████ to carry out a shooting attack at the site with additional operatives.

2. Shortly thereafter, ████████████        ████

████                                    and departed at about 2:00 a.m. for the site, to make sure that there were no obstacles on the way. In addition, ████████████ enlisted ████████████ (known as ████████ (hereinafter: ████████ ) and military operative ████████████ (hereinafter: ████████ ') to carry out the shooting attack with them.

3. At about 3:00 a.m., ████████        ████████████ and

4. Accordingly, ████████████ departed, armed with a Kalashnikov rifle, with ████████ who was armed with an M-16 rifle and with ████████████ who was armed with an M-16 rifle, towards the area in order to carry out the attack; ████████ transported them in a vehicle that he had brought.

5. When they arrived in the planned area, ████████ ████ waited in hiding 20 meters from the road for Israeli vehicles that would pass by. ████████ remained in the vehicle.

6. At about 3:30 a.m., a military jeep passed by; then ████████████ and his accomplice opened fire at the jeep.

7. The jeep continued on its journey; ███████████ and his accomplice fled towards the vehicle in which Ismail Alfarajin was waiting, and together they escaped from the site.

**Fifth count:**     **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, within the Area or elsewhere, on January 29, 2004, or thereabouts, was an accomplice in causing the intentional death of another person, as follows:

[Stamp] P 2: 151 [continued]

4

1.    In early January 2004 or thereabouts, ███████████████ (hereinafter: ████████████████ contacted military operative ████████████████

████ met ████████████ in accordance with the direction of ████████████ During the meeting, ███████████████

2.    Shortly thereafter, the military operative ███████████████ ████████ (hereinafter: ████████████) contacted Ali Ja'ara and offered him a meeting with the military operative to send him to carry out a suicide attack. Ali Ja'ara (hereinafter: the "**Suicide Terrorist**")

Accordingly, ██████████ introduced **the above mentioned Defendant** to the Suicide Terrorist. During the meeting, the Defendant checked the degree of willingness of the Suicide Terrorist to carry out a suicide attack.

During the meeting, the Suicide Terrorist e ████████████ . Accordingly, the Defendant asked the Suicide Terrorist to prepare to carry out the suicide attack.

3.    Shortly thereafter, ████████████████ ████████████████

████ transferred the Um Al Abed explosive to ██████████ and ███████ de, [both of] which are used for making explosives.

[Stamp] P 2: 152

4.   On the following day, ████████████████ met ████████ and obtained 36 liters of acetone and 10 liters of hydrogen peroxide from him; ████████

█
t
c

█
█

5.   A few days later, the Defendant came to the home of ████████████ ████████ and told him that he had found a person who was prepared to carry out a suicide attack.

On January 28, 2004, or thereabouts, the Defendant again approached ████ ████████████ and asked him urgently to prepare an explosive bag using the explosives in his possession, because he intended to send the Suicide Terrorist to carry out the suicide attack.

At that time, ████████████████
r
b

5

[...] and with ███████████ purchased everything requested for ███████ ███████ so that he could make the explosive bag as soon as possible. In addition, the Defendant and ███████████ tried to find a video camera to film the Suicide Terrorist before carrying out the attack, but were unable to do so, and therefore they decided to dispatch the Suicide Terrorist to carry out the attack without filming him using a video camera.

6.    Shortly thereafter, the Defendant approached the military operative ██████████████████ (hereinafter: ██████████████) and asked him to transport a suicide terrorist armed with an explosive belt to carry out a suicide attack within the territory of the State of Israel. ███████████

Accordingly, the Defendant had ████████████ meet the Suicide Terrorist.

7.    At the time of the foregoing, ██████████████ made an additional quantity of Um Al Abed explosive weighing 12 kilograms, and made an explosive bag using it for carrying out a suicide attack.

███████████████

8.    A few minutes later, the Defendant arrived, with the Suicide Terrorist and ████████████ at the home of ████████████ ███████ waited outside, while the Suicide Terrorist and the Defendant entered ███ ████████████'s home. █████████

gave the explosive bag for use in a suicide attack to them, with the aim of causing the deaths of Israeli civilians.

9.    Shortly thereafter, the Defendant, ████████████ and the Suicide Terrorist departed towards the university in Bethlehem; there, the Defendant deactivated the safety mechanism of the explosive device in order to prepare it for use. After that, the Defendant left ████████████ with the Suicide Terrorist.

[Stamp] P 2: 153

10. Thereafter, at about 6:30 a.m., ███████████ transported the Suicide Terrorist in the direction of Jerusalem through the village of Walaja until they arrived near the Malha Mall in Jerusalem. There, ███████████ parted from the Suicide Terrorist and returned to the Area.

11. Shortly thereafter, the Suicide Terrorist boarded Egged Bus No. 19, which was driving towards Paris Square, when the bus reached the corner of Arlozorov and Aza Streets, at about 8:45 a.m., the Suicide Terrorist activated the explosive bag that was in his possession, with the aim of causing the deaths of a large number of individuals. As a result of this, the explosive bag detonated aboard the bus (hereinafter: the **"Suicide Attack"**).

12. As a result of the Suicide Attack, the death of **the late Mr. Avraham Balhasan** was caused.

[Stamp] P 2: 153 [continued]

6

**Sixth count:**    (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Ms. Hannah Bonder** was caused.

**Seventh count:**    (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Ms. Anat Darom** was caused.

**Eighth count:**    (Detailed Incident 09891/04 Jerusalem Special Duties Department)

[Stamp] P 2: 154

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Mr. Yehezkel Goldberg** was caused.

[Stamp] P 2: 154 [continued]

**Ninth count:**      (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Mr. Vladi Tzadik Manbara** was caused.

**Tenth count:**      (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Mr. Viorel Octavian Florescu** was caused.

[Stamp] P 2: 155

**Eleventh count:** **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Ms. Rose Boneh** was caused.

[Stamp] P 2: 155 [continued]

8

**Twelfth count:**     (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Ms. Dana Itach** was caused.

**Thirteenth count:**     (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Mr. Roman Hondiashvili** was caused.

[Stamp] P 2: 156

**Fourteenth count:**     (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Mr. Eli Zfira** was caused.

[Stamp] P 2: 156 [continued]

9

**Fifteenth count:   (Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – the death of **the late Ms. Natalia Gamril** was caused.

**Sixteenth count:   (Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in attempting to cause the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth [sic] count of the indictment – more than 50 civilians were injured from severe to slight degrees of injury; and the Suicide Terrorist died.

[Stamp] P 2: 157

**Seventeenth count:    (Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

1.  A few days before the above mentioned date, ███████████ and the military operative █████████ planned to carry out a suicide attack with the aim of causing the deaths of Israeli civilians.

[Stamp] P 2: 157 [continued]

10

2.   On February 17, 2004, or thereabouts, ▉▉▉▉▉▉ met the Suicide Terrorist in the village of Hussan; during the meeting, the Suicide Terrorist agreed to carry out the planned suicide attack. At its end, ▉▉▉▉▉▉ concluded with the Suicide Terrorist that they would meet him near the Nativity Church in Bethlehem on February 21, 2004, at 4:00 p.m.

▉▉▉▉▉▉ ▉▉▉▉▉▉ and transferred the amount of NIS 3,000 to the account in the Arab Bank in Bethlehem, which is registered to the title of ▉▉▉▉▉▉ for financing the suicide attack, as was agreed with ▉▉▉▉▉▉

4.   On February 18, 2004, or thereabouts, ▉▉▉▉▉▉ went to the Arab Bank in Bethlehem and withdrew the amount of money that had been transferred to him from ▉▉▉▉▉▉

▉▉▉▉▉▉ used some of the amount of money to purchase a video camera and an ordinary camera for filming and photographing the Suicide Terrorist. In addition, ▉▉▉▉▉▉ transferred to ▉▉▉▉▉▉ and **to the Defendant** an amount of money for them to purchase materials for preparing the explosive bag for the suicide attack.

5.   Accordingly, ▉▉▉▉▉▉ received four liters of hydrogen peroxide from the military operative ▉▉▉▉▉▉ (hereinafter: ▉▉▉▉▉▉ ) and from the military operative ▉▉▉▉▉▉ 40 liters of acetone; ▉▉▉▉▉▉ transferred to ▉▉▉▉▉▉ 12 liters of hydrogen peroxide and 12 liters of acetone.

6.   On February 20, 2004, ███████████ made the Um Al Abed explosive that was intended for carrying out the suicide attack, with ███ and ███████████ n the home of ███████ ███████ explained to ██████████ how to prepare a wooden box for the explosive bag, and he made the box as explained to him.

7.   Shortly thereafter, ████ ████████████████████ к ................ .................... . Accordingly, the Defendant met ███████████ and asked him to transport an additional suicide terrorist to carry out a suicide attack within the territory of the State of Israel. ██████████ agreed to this.

[Stamp] P 2: 158 [continued]

11

That evening, the Defendant came to the home of ▮▮▮▮▮▮▮▮▮▮▮▮ with a leaflet called "The Aiman Juda Cell of the Al Aqsa Martyrs Brigades Organization" in his possession; the Defendant passed the leaflet along to ▮▮▮▮▮▮▮▮▮▮▮ in order to serve as a background picture when filming the Suicide Terrorist – and also updated ▮▮▮▮▮▮▮▮▮▮ that ▮▮▮▮▮▮▮▮▮▮ was prepared to transport the Suicide Terrorist.

8.    On the following morning, the Defendant gave ▮▮▮▮▮▮▮▮ iron nails in order for the latter to attach them to the explosive bag, in order to increase and worsen the injuries at the time of the detonation of the explosive bag. ▮▮▮▮▮▮▮▮▮▮▮▮ accepted the iron nails and attached them to the explosive bag.

On that same day, at about 4:10 p.m., ▮▮▮▮▮▮▮▮ came, accompanied by the Suicide Terrorist, to the home of ▮▮▮▮▮▮▮▮▮▮ in order to prepare him for departing on the attack.

In addition, the Defendant brought a Kalashnikov rifle and a hand grenade to ▮▮▮▮▮▮▮▮▮▮ in order for ▮▮▮▮▮▮▮▮▮▮ to film the Suicide Terrorist holding these weapons.

9.    ▮▮▮▮▮▮▮▮▮▮▮nd ▮▮▮▮▮▮▮▮ gave the Suicide Terrorist food and new clothes. After they had dinner with the Suicide Terrorist, ▮▮▮▮▮wrote a will for the Suicide Terrorist; ▮▮▮▮▮▮▮▮▮▮ and ▮ ▮▮▮▮▮▮▮ filmed the Suicide Terrorist reading out his will. When they finished filming the Suicide Terrorist, ▮▮▮▮▮▮▮▮ started to make the explosive belt that would be used in the execution of the suicide attack. At about 5:30 a.m. on the following day, ▮▮▮▮▮▮▮▮▮▮ finished making the explosive belt.

10.    When he finished making the explosive belt, as set forth on ~~April~~ *February* 22, 2004. ▮▮▮▮▮▮▮▮▮▮                                        'm that

Accordingly, the Defendant contacted ███████████ and asked him to meet him. They both met and together they traveled towards the home of ███████████████████████ where the Suicide Terrorist was hiding. The Defendant asked ████████████████ to wait near a place in the center of Bethlehem.

11.   At about 6:00 a.m., the Defendant came to the home of ███████████ ████████ took the explosive bag from ███████████████ and departed with the Suicide Terrorist toward the center of Bethlehem; there, he had the Suicide Terrorist meet ████████████ From there, the Suicide Terrorist departed with ██████████ towards Jerusalem, passing through the village of Walaja, in order to carry out the planned suicide attack.

12.   At about 6:15 a.m., the Defendant met ██████████████ and updated him that the Suicide Terrorist had gone out with the transporter to carry out the suicide attack. Accordingly, ██████████████ updated [...]

12

[...] his brother ███████████ of the departure of the Suicide Terrorist to carry out the suicide attack.

13. ███████████ transported the Suicide Terrorist to a place that was near Malha Mall in Jerusalem; there, he parted from him and returned to the Area.

14. Shortly thereafter, the Suicide Terrorist boarded bus no. 14, which was traveling from the direction of Denia toward Liberty Bell Park, while in possession of the explosive bag. When the bus stopped at one of the traffic lights, the Suicide Terrorist detonated the explosive bag with the intent of causing the deaths of a large number of people. As a result of this, the explosive bag exploded aboard the bus (hereinafter: the "**Suicide Attack**").

15. As a result of the Suicide Attack, the death of **the late Ms. Yaffa Ben-Shimol** was caused.

**Eighteenth count:**    **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that ███████████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Yuval Ozana** was caused.

[Stamp] P 2: 160

**Nineteenth count:**     **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that █████████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Rahamim Doga** was caused.

[Stamp] P 2: 160 [continued]

13

**Twentieth count:**    **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that ███████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Yehuda Haim** was caused.

**Twenty first count:**    **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that ███████ performed with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Ilan Avisidris** was caused.

[Stamp] P 2: 161

**Twenty second count:**    **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that ███████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Benia Yonatan Zuckerman** was caused.

[Stamp] P 2: 161 [continued]

14

**Twenty third count:**    (Detailed Incident 17869/04 Moria Station)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that ███████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Lior Azulai** was caused.

**Twenty fourth count:**    (Detailed Incident 17869/04 Moria Station)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that ███████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Natanel Havshush** was caused.

[Stamp] P 2: 162

**Twenty fifth count:**     **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in attempting to cause the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist ▉▉▉▉▉▉▉▉ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – more than 50 civilians were injured from severe to slight degrees of injury; in addition, the Suicide Terrorist died.

15

|                        |
|------------------------|
| [Signature]            |

**Naji Amar,    Captain**
**Military    Prosecutor**

**List of witnesses for the Prosecution:**

1. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (took the confession of the Defendant on March 10, 2004; March 16, 2004; and March 17, 2004, seizure of the handwriting of the Defendant + maker of photograph lineup).

2. ▇▇▇▇▇▇▇▇▇▇▇ (took the confession of the Defendant on March 17, 2004).

3. ▇▇▇▇▇▇▇▇▇▇ (detained in Prosecution Case 1338/04).

4. ▇▇▇▇▇▇▇▇▇▇▇ (detained in Prosecution Case 1300/04).

5. ▇▇▇▇▇▇▇▇▇▇▇ (detained in Prosecution Case 1246.04).

6. ▇▇▇▇▇▇▇▇▇ (detained in Prosecution Case 1216/04).

7. ▇▇▇▇▇▇▇▇▇▇▇ (detained in Prosecution Case 1332/04).

**Detailed Incident 09891/04 Special Duties Department, Jerusalem:** (suicide attack aboard Bus No. 19)

8. ▇▇▇▇▇▇ (details held by the Prosecution).

9. ▇▇▇▇▇▇ (details held by the Prosecution).

10. ▇▇▇▇ (details held by the Prosecution).

11. ▇▇▇▇▇ (details held by the Prosecution).

12. ▇▇▇▇ (details held by the Prosecution).

13. ▇▇▇▇▇▇ (details held by the Prosecution).

14. ▇▇▇▇▇▇ (details held by the Prosecution).

[Stamp] P 2: 163

15. ███████████████ (details held by the Prosecution).

16. ███████████████ (details held by the Prosecution).

17. ██████████████ (details held by the Prosecution).

18. ████████████████ (details held by the Prosecution).

19. ███████████████ (details held by the Prosecution).

20. ███████████████ (details held by the Prosecution).

21. █████████████ (details held by the Prosecution).

22. ██████████████ (details held by the Prosecution).

23. ██████████████ (details held by the Prosecution).

24. ████████████████ (details held by the Prosecution).

[Stamp] P 2: 163 [continued]

16

25. ██████████████ (details held by the Prosecution).

26. ████████████ (details held by the Prosecution).

27. ████████████ (details held by the Prosecution).

28. ████████████ (details held by the Prosecution).

29. ██████████████ (medical documents related to Mr. Naim Barzawi).

30. ███████████████ (medical documents related to Ms. Sarah Keisar).

31. ██████████████ (medical documents related to Ms. Bahira Saadu).

32. █████████ (medical documents related to Ms. Bahira Saadu).

33. Expert opinion of bomb disposal laboratory (to be forwarded later).

34. Medical documents.

35. List of casualties (institutional record).

**(Detailed Incident 17869/04 Moria Station):** (suicide attack aboard bus No. 14)

36. ████████ (details held by the Prosecution).

37. ████████████ (details held by the Prosecution).

38. ██████████████ (details held by the Prosecution).

39. ████████████ (details held by the Prosecution).

40. ████████████████ (details held by the Prosecution).

41. ████████████ (details held by the Prosecution).

42. ███████████ (details held by the Prosecution).

43. ██████████████ (details held by the Prosecution).

44. █████████████ (details held by the Prosecution).

45. ████████████ (details held by the Prosecution).

46. ███████████████ (details held by the Prosecution).

47. ████████ (medical documents).

[Stamp] P 2: 164

48. ██████████████ (details held by the Prosecution).

49. ██████ (medical documents).

50. ███████████ (details held by the Prosecution).

51. █████████ (medical documents)

52. ███████████ (details held by the Prosecution).

53. █████████ (details held by the Prosecution).

54. ███████████ (details held by the Prosecution).

55. ███████████ (details held by the Prosecution).

56. ████████████ (details held by the Prosecution).

[Stamp] P 2: 164 [continued]

57. ███████████████ (details held by the Prosecution).

58. ██████████ (medical documents)

59. ███████████████ (details held by the Prosecution).

60. ████████████████ (medical documents).

61. ██████████████████ (details held by the Prosecution).

62. █████████████ (medical documents).

63. ███████████████ (details held by the Prosecution).

64. █████████████ (details held by the Prosecution).

65. █████████████ (details held by the Prosecution).

66. ███████████████ (details held by the Prosecution).

67. ████████████ (medical documents).

68. ██████████████ (details held by the Prosecution).

69. ██████████████ (details held by the Prosecution).

70. █████████████ (details held by the Prosecution).

71. ██████████ (medical documents).

72. ██████████████ (details held by the Prosecution).

73. ██████████████ (details held by the Prosecution).

74. Medical documents (institutional record).

75. ██████████████ (seizure report).

76. ██████████ (genetic specimens).

77. ███████████ (genetic specimens).

78. █████████████ (memorandum).

79. ██████████ (memorandum).

80. Bomb laboratory expert opinion (to be forwarded later).

81. ██████████████████████████ (seizure and marking report).

82. ████████ (pathology expert opinion).

83. ██████████.

84. ████████████████████ (pathology expert opinion).

85. ████████████.

86. ██████████ (pathology expert opinion).

87. ██████████.

88. ██████████ (expert opinion of the National Institution of Forensic Medicine).

89. ██████████ (pathology expert opinion).

90. ██████████████ (pathology expert opinion).

18

91.    Death certificates.

[Stamp] P 2: 166

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.  The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 149-166.

2.  I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.  To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 149-166.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
2332704

בבית המשפט הצבאי       תיק בימ"ש 04/ 2270

ב י ה ו ד ה         תיק תביעה 1247/04

בפני      הרכב        תיק פ.א. 1329/04 חברון

9891/04 מתי"מ י-ם

178694/04 מוריה

במשפט שבין :

התובע הצבאי

- המאשים -

- נ ג ד -

אחמד צלאח אחמד צלאח

(עצור מיום 8/3/04)

ת.ז. 901739656 יליד 23/1/77 מבית-לחם

- הנאשם -

## כתב אישום

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות :

**פרט ראשון :**

**מהות העבירה :** ייצור פצצה, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות ביטחון (נוסח) (מס' 378), תש"ל – 1970.

**פרטי העבירה :** הנאשם הנ"ל, באזור, במהלך חודש מרץ 02' או בסמוך לכך, ייצר פצצה מבלי שהיה ברשותו היתר ממפקד צבאי או מטעמו.

דהיינן, במועד הנ"ל, פנה ▮▮▮▮▮▮▮▮▮▮▮▮ (להלן – ▮▮▮▮▮▮) אל הפעיל הצבאי ▮▮▮▮▮▮▮▮ וביקש ממנו מטעני חבלה. ▮▮▮▮▮ הפנה את ▮▮▮▮▮▮ אל הנאשם ואמר לו כי הנאשם יספור לו חומר נפץ מסוג "אום-אלעבד" לייצור מטעני התבלה.

▮▮▮▮▮▮▮ נפגש עם הנאשם וקיבל ממנו 4 ק"ג חומר נפץ מסוג "אום-אלעבד". ▮▮▮▮▮▮ ייצר באמצעות חלק מהכמות שקיבל 4 מטעני צינור, ואת יתר הכמות שמר.

C:\Documents and Settings\s6903112\Local Settings\Temporary Internet Files\OLK2\1247-04.doc

P 2: 149

2

**פרט שני:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) ו- 84(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באזור, החל מתחילת שנת 04' או בסמוך לכך, היה חבר בהתאחדות בלתי מותרת, דהיינו:

במועד הנ"ל, היה הנאשם הנ"ל חבר בחוליה צבאית של ארגון גדודי חללי "אלאקצא".

חברותו של הנאשם בארגון נמשכה עד יום מעצרו.

**פרט שלישי:**

**מהות העבירה:** ירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, עבירה לפי תקנה 58(א) לתקנות ההגנה (שעת חירום), 1945; וסעיף 14 לגו לדבר כללי האחריות לעבירה (ויי"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בתחילת שנת 04' או בסמוך לכך, היה שותף לירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, דהיינו:

במועד הנ"ל, יצא הנאשם הנ"ל יחד עם חברי חולייתו הצבאית ███████████ (להלן █████ ████████████████████████████████) שהיה חמוש ברובה קלצ'ניקוב וריצמון יד וזאת עיים לבצע פיגוע ירי כנגד כוחות צה"ל בבסיס הצבאי של ה- D.C.O. כשהגיעו למקום ירדו הנאשם ██████████████ מהרכב כשברשותם האמל"ח עיים לבצע את פיגוע הירי ואילו █████████ וחברו ██████ נותרו ברכב.

כעבור מספר דקות ירו הנאשם וחברו לעבר כלי רכב; ואו-אז נמלטו ██████████ וחברו מהמקום לכיוון ביתו של הנאשם.

שם המתינו לחזרתו של הנאשם.

**פרט רביעי:**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לגו לדבר הוראות ביטחון (ויי"ש) (מס' 378), תש"ל – 1970; וסעיפים 19-20, 14 לגו לדבר כללי האחריות לעבירה (ויי"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בסוף שנת 03' או בסמוך לכך, היה שותף לניסיון גרימת מוות של אחרים בכוונה, דהיינו:

1.  במועד הנ"ל, הציע הנאשם הנ"ל ל ██████████ לצאת עימו לבצע פיגוע ירי לעבר כלי רכב ישראליים. האחרון נענה בחיוב, ויצא יחד עם

3

הנאשם ████ הנאשם וערך סיור מקדים במקום שאותו איתר הנאשם.
████ הגיעו לאיזור בית-הספר "תלית קומי" ומצאו כי מקום זה
טוב לביצוע הפיגוע. הנאשם הורה ל-████ לבצע במקום פיגוע
ירי יחד עם פעילים נוספים.

2. בסמוך לכך, ביקש ████ מהפעיל הצבאי ████
████ (לחלן – ████) לצאת ולבצע סיור מקדים באיזור
בית-הספר "תלית קומי" וזאת מכיוון שמתוכנן פיגוע ירי באיזור.
████ נענה בחיוב, ויצא בסמוך לשעה 2:00 למקום וזאת כדי לודא שאין
מכשולים בדרך. בנוסף גייס ████ את
████ (חממונה ████) והפעיל – לחלן)
הצבאי ████ (לחלן –
████) לביצוע יחד עימם את פיגוע הירי.

3. בסמוך לשעה 3:00, התקשר ████ ועידכן
אותו כי אין מניעה לבצע את הפיגוע המתוכנן.

4. בהתאם לכך, יצא ████ כשהוא חמוש ברובה קלצ'ניקוב יחד
עם ████ שהיה חמוש ברובה M-16 ו
████ כשהוא חמוש ברובה M – 16 ו לכיוון האיזור ע"מ לבצע את הפיגוע,
████ הסיע אותם ברכב שהביא.

5. כשהגיעו לאיזור המתוכנן, הורה ████ לחזור
לביתו, ████ ו ████ ארבו בסמוך למקום במרחק
20 מטר מהכביש לכלי רכב ישראליים שיעברו במקום. ████
נותר ברכב.

6. בסמוך לשעה 3:30, עבר במקום ג'יפ צבאי; או-אז פתחו ████
████ וחברו באש לעבר הג'יפ.

7. הג'יפ המשיך בנסיעה, ████ וחברו נמלטו לכיוון הרכב בו
████ המתין להם, וביחד נמלטו מהמקום.

<u>פרט חמישי: (פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשל"ל – 1970, וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירת
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

P 2: 151

4

1. בתחילת חודש ינואר 04׳ או בסמוך לכך, יצר ████ קשר עם ████ הפעיל הצבאי ████ וביקש ממנו כי יכיר לו פעילים צבאיים שיעזרו לו בייצור חומרי נפץ ומטעני חבלה וזאת ע״מ לבצע פיגועים נגד מטרות ישראליות, וכן איתור מתאבדים לצורך ביצוע פיגועי התאבדות. בהתאם לכך, יצר ████ קשר עם הפעיל הצבאי ████ וביקש ממנו כי ייפגש עם פלוני (בכוונו ל████) ע״מ לעזור לו בפעילותו הצבאית. ████ נפגש עם ████ בהתאם להנחייותיו של ████, בפגישה ביקש ממנו ████ כי יעזור לו בייצור חומרי נפץ. הלה הסכים לכך.

2. בסמוך לכך פנה הפעיל הצבאי ████ (להלן – ████) אל עלי גישארה והציע ותיאר לו להפגישו עם פעיל צבאי שישלח אותו לביצוע פיגוע התאבדות. עלי גישארה (להלן – המתאבד) הביע נכונות לכך.

בהתאם לכך, הפגיש ████ את הנאשם הנ״ל עם המתאבד בפגישה שבמהלכה בירר הנאשם עם המתאבד את מידת נכונותו לבצע פיגוע התאבדות.

במהלך הפגישה הביע המתאבד נכונות לבצע את הפיגוע. בהתאם ביקש הנאשם מהמתאבד להתכונן לביצועו פיגוע ההתאבדות.

3. בסמוך לכך, פנה ████ ל████ ועידכן אותו כי הצלחה להשיג שני ק״ג חומר נפץ מסוג אום-אלעבד וכן חומר כימי מסוג אצטון. בהזדמנות זו העביר ████ ל████ את חומר הנפץ מסוג אום-אלעבד, ו████ ביקש ממנו כי יעביר אליו את האצטון ובנוסף חומר כימי מסוג מי-חמצן המשמשים לייצור חומר נפץ.

4. ביום שלמחרת, נפגש ████ עם ████ וקיבל ממנו 36 ליטר של אצטון וכן 10 ליטר של מי-חמצן; ████ סיפר ל████ כי בכוונתו להשתמש בחומרים אלה ע״מ לייצר חומר נפץ שישמש מתאבד בביצוע פיגוע התאבדות; בהזדמנות זו הסביר ████ ל████ כיצד יש לערבב את החומרים כדי ליצור את חומר הנפץ. ████ הסתיר את החומרים בביתו.

5. כעבור מספר ימים הגיע הנאשם לביתו של ████ וסיפר לו כי איתר אדם המוכן לבצע פיגוע התאבדות.

ביום 28/1/04 או בסמוך לכך, פנה שוב הנאשם ל████, וביקש ממנו כי יכין בדחיפות תיק נפץ באמצעות חומר הנפץ שברשותו וזאת מאחר ובכוונתו לשלוח את המתאבד לפיגוע ההתאבדות.

או-אז, ביקש ████ מהנאשם כי יקנה עבורו חומרים לייצור תיק הנפץ (שכללו בין היתר: תיק, סוללות, מפסק וכו׳...]. הנאשם נענה

5

בחיוב ונקנה ביחד עם ████████ עבור ████ את כל
שנתבקש וואת כדי שיוכל להכין את תיק הנפץ בהקדם האפשרי. בנוסף,
ניסה הנאשם (██████████) למצוא מצלמת וידאו על מנת לצלם את המתאבד
בטרם ביצוע הפיגוע, אולם לא הצליחו בכך – ולפיכך החליטו להוציא את
המתאבד לביצוע הפיגוע מבלי לצלמו במצלמת וידאו.

6. בסמוך לכך, פנה הנאשם אל הפעיל הצבאי ████████████
(לחלן – ██████) וביקש ממנו להוביל מתאבד חמוש בחגורת נפץ
לביצוע פיגוע התאבדות בתוך שטח מדינת ישראל. ████ הביע
נכונות לכך.

בהתאם לכך, חפגיש הנאשם את ████ עם המתאבד.

7. במקביל לאמור לעיל, ייצר ████████████ כמות נוספת של חומר הנפץ
"אום אלעבד" במשקל 12 ק"ג, וייצר באמצעותו תיק נפץ לביצוע פיגוע
התאבדות.

ביקש מהנאשם לבוא ע"מ לקחת את תיק הנפץ.

8. כעבור מספר דקות הגיע הנאשם יחד עם המתאבד ו████████ לביתו
של ████████ ; ████████ המתין בחוץ ואילו המתאבד
והנאשם נכנסו לביתו של ████████. ████████ הסביר
לנאשם ולמתאבד כיצד להפעיל את תיק הנפץ והעביר להם את תיק הנפץ
ע"מ שזה ישמש בפיגוע התאבדות וזאת בכוונה לגרום למותם של אזרחים
ישראליים.

9. בסמוך לכך, יצאו הנאשם, ████████ והמתאבד לכיוון האוניברסיטה
בבית-לחם; שם נטרל הנאשם את מנגנון האבטחה של מטען החבלה ע"מ
להכין אותו לפעולה. לאחר-מכן עזב הנאשם את ████████ עם
המתאבד.

10. לאחר-מכן בסמוך לשעה 6:30, הוביל ████████████ את המתאבד לכיוון
ירושלים דרך כפר וולניה עד שהגיעו סמוך לקניון מלחה בירושלים. שם
נפרד ████████ מהמתאבד וחזר לאיזור.

11. בסמוך לכך, עלה המתאבד לאוטובוס אגד בקו 19 שנסע לכיוון כיכר פריז;
כשהגיע האוטובוס לפינת רחובות ארלוזורוב ועזה, סמוך לשעה 8:45,
הפעיל המתאבד את תיק הנפץ שהחזיק עליו בכוונה לגרום למותם של
מספר רב של בני אדם. כתוצאה מכך, התפוצץ תיק הנפץ בתוך האוטובוס
(לחלן – **פיגוע ההתאבדות**).

12. כתוצאה מפיגוע ההתאבדות נגרם מותו של __אברהם בלחסן ז"ל__.

6

**פרט שישי: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גישארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של **גב' חנה בוגדר ז"ל.**

**פרט שביעי: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גישארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של **גב' ענת דרום ז"ל.**

**פרט שמיני: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גישארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של **מר יחזקאל גולדברג ז"ל.**

7

<u>פרט התשיעי: (פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפגיעת ההתאבדות שאותו ביצע המתאבד עלי גיאערה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של <u>מר ולדי צדיק מנגירה ז"ל</u>.

<u>פרט עשירי: (פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפגיעת ההתאבדות שאותו ביצע המתאבד עלי גיאערה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של <u>מר ויורל אוקטביא פלורסקו ז"ל</u>.

<u>פרט אחד עשר: (פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפגיעת ההתאבדות שאותו ביצע המתאבד עלי גיאערה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי –
נגרם מותו של <u>גב' רוזה בונה ז"ל</u>.

8

**פרט שנים עשר: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשי"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיאצרה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותה של **גב' דנה איטח ז"ל**.

**פרט שלושה עשר: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשי"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיאצרה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של **מר רומן חונדיאשווילי ז"ל**.

**פרט ארבעה עשר: (פ"א 09891/04 מת"מ ירושלים)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשי"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיאצרה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של **מר אלי צפורה ז"ל**.

9

<u>פרט חמישה עשר (פ"א 09891/04 מת"מ ירושלים):</u>

<u>מהות העבירה :</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א)(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה :</u> הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של גב' <u>נטליה גמריל ז"ל</u>.

<u>פרט שישה עשר (פ"א 09891/04 מת"מ ירושלים):</u>

<u>מהות העבירה :</u> ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א)(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ל – 1970 ; וסעיפים 20-19, 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה :</u> הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לניסיון גרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות ; וכן מת המחבל המתאבד.

<u>פרט שבעה עשר (פ"א 17869/04 תחנת מוריה):</u>

<u>מהות העבירה :</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א)(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה :</u> הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

1. מספר ימים לפני המועד הנ"ל, תיכננו ██████ ██████ והפעיל חצבאי ██████ לבצע פיגוע התאבדות וזאת במטרה לגרום למותם של אזרחים ישראליים.

██████ הודיע ל ██████ כי אותר אדם בשם ██████ (להלן – <u>המתאבד</u>) המוכן לבצע פיגוע התאבדות.

P 2: 157

10

2. ביום 17/2/04 או בסמוך לכך, נפגש ███████ עם המתאבד בכפר
תוסאן, בבמהלך הפגישה הסכים המתאבד לבצע את פיגוע ההתאבדות
הממוכנן. בסיומה סיכם ███████ עם המתאבד להיפגש עימו בסמוך
לכניסת המולד בבית-לחם ביום 21/2/04 בשעה 16:00.

3. ███████ עידכן את ███████ בדבר תוכן הפגישה ובדבר
הסכמתו של המתאבד לבצע את פיגוע ההתאבדות; בהתאם לכך, יצר
███████ קשר עם אחיו הפעיל הצבאי ███████ שגר בעזה,
עידכן אותו בדבר התכנון לבצע פיגוע ההתאבדות, וביקש ממנו סכום של
3,000 ש"מ כדי להכין את תיק הנפץ לפיגוע ההתאבדות וכן לקנות מצלמת
וידאו לצורך צילום המתאבד (וזאת בהתאם לבקשתו של ███████
לצלם את המתאבד בטרם ביצוע פיגוע ההתאבדות).

███████ נענה בחיוב לבקשתו של ███████ והעביר
לחשבון בבנק הערבי בבית-לחם, שרשום על שמו של ███████,
███, סכום של 3,000 ש"מ לצורך מימון פיגוע ההתאבדות, וזאת כפי שסוכם עם
███████.

4. ביום 18/2/04 או בסמוך לכך, ניגש ███████ לבנק הערבי בבית-
לחם ומשך את סכום הכסף שהועבר אליו מ███████
רכש באמצעות חלק מסכום הכסף מצלמת וידאו
ומצלמה רגילה לצורך צילום המתאבד. כמו-כן העביר ███████
ל███████ ולנאשם סכום כסף וזאת ע"מ שירכשו חומרים לצורך
הכנת תיק הנפץ לפיגוע ההתאבדות.

5. בהתאם, ███████ קיבל מהפעיל הצבאי ███████
(להלן – ███████) ארבעה ליטר של חומר כימי מסוג מי-
תמצן, ומהפעיל הצבאי אחמד עודה 40 ליטר חומר כימי מסוג אצטון; ███
העביר ל███████ 12 ליטר חומר כימי מסוג מי-
תמצן ו-12 ליטר חומר כימי מסוג אצטון.

6. ביום 20/2/04 ייצר ███████ יחד עם ע███████ ו███████
בביתו של ███████ את חומר הנפץ מסוג "אום-אלעבד"
המיועד לביצוע פיגוע ההתאבדות. ███████ הסביר ל███████
כיצד להכין קופסת מעץ לתיק הנפץ, וזה הכין את הקופסה כפי
שהסביר לו ███.

7. בסמוך לכך, ביקש ███████ מהנאשם לבדוק עם ███████
אם הוא מוכן להוביל את המתאבד לביצוע פיגוע ההתאבדות. בהתאם לכך,
נפגש הנאשם עם ███████ וביקש ממנו כי יוביל מתאבד נוסף לביצוע
פיגוע ההתאבדות בתוך שטח מדינת ישראל. ███████ נענה בחיוב לכך.

11

באותו יום בשעות הערב, הגיע הנאשם לביתו של ████████
כאשר ברשותו כרוז שעליו כתוב "חוליית איימן ג'ודה של ארגון גדודי חללי
אלאקצא", הנאשם העביר את הכרוז ל████████ וזאת כדי
שישמש כתמונת רקע בעת צילומו של המתאבד – וכמו-כן עידכן את
████████ כי ████████ מוכן להוביל את המתאבד.

8. למחרת בבוקר, העביר הנאשם ל████████ מסמרי ברזל, וזאת
עייַמ שהאחרון ידביק אותם לתיק הנפץ וזאת כדי להגביר ולהחמיר את
הפגיעות בעת פיצוץ מטען הנפץ. ████████ קיבל את מסמרי
הברזל והדביק אותם לתיק הנפץ.

באותו יום, בסמוך לשעה 10:16, הגיע ████████ מלווה במתאבד
לביתו של ████████ עייַמ להכין אותו לקראת היציאה לפיגוע.

בנוסף, הביא הנאשם ל████████ רובה קלצ'ניקוב ורימון יד עייַמ
ש████████ יצלם את המתאבד כשהוא מחזיק ברשותו אמלייַח
זה.

9. ████████ נתנו למתאבד אוכל ובגדים חדשים.
לאחר שסעדו ביחד עם המתאבד את ארוחות הערב כתב ████████
████████ צוואה עבור המתאבד; ████████ צילמו את
המתאבד כשהוא מקריא את הצוואה שלו. כשסיימו לצלם את המתאבד
החל ████████ לייצר את תיק הנפץ שישמש בביצוע פיגוע
ההתאבדות. סמוך לשעה 5:30 בבוקר של היום שלמחרת סיים
████████ לייצר את תיק הנפץ.

10. כשסיים לייצר את תיק הנפץ, כאמור ביום 22/7/04, התקשר ████████
אל הנאשם, הודיע לו כי הכל מוכן ובִיקש ממנו לבוא עייַמ להוציא
את המתאבד לביצוע פיגוע ההתאבדות.

בהתאם לכך, יצר הנאשם קשר עם ████████ ובִיקש ממנו שיפגש
עימו. שניהם נפגשו וביחד נסעו לכיוון ביתו של ████████ שבו
הסתתר המתאבד. הנאשם ביקש מ████████ כי ימתין בסמוך למקום
הנמצא במרכזו בית-לחם.

11. בסמוך לשעה 6:00 הגיע הנאשם לביתו של ████████ לקח
מ████████ את תיק הנפץ ויצא ביחד עם המתאבד לכיוון מרכז
בית-לחם; שם הפגיש את המתאבד עם ████████. משם יצא המתאבד
יחד עם ████████ לכיוון ירושלים כאשר הם עוברים דרך כפר הולוגניה
וזאת עייַמ לבצע את פיגוע ההתאבדות המתוכנן.

12. סמוך לשעה 6:15 נפגש הנאשם עם ████████ עידכן אותו כי
המתאבד יצא עם ה████מוביל לביצוע פיגוע ההתאבדות. בהתאם לכך, עידכן

12

את אחיו ██████ ██████ בדבר יציאתו של המתאבד
לביצוע פיגוע ההתאבדות.

13. ██████ הוביל את המתאבד למקום הנמצא בסמוך לקניון מלחה
בירושלים; שם נפרד ממנו וחזר לאיזור.

14. בסמוך לאחר-מכן עלה המתאבד לאוטובוס אגד בקו 14 שנסע.מכיוון דניה
לכיוון גן הפעמון, כשברשותו תיק הנפץ. כשנעצר האוטובוס באחד
הרמזורים הפעיל המתאבד את תיק הנפץ בכוונה לגרום למותם של מספר
רב של בני אדם, כתוצאה מכך התפוצץ תיק הנפץ בתוך האוטובוס (להלן –
פיגוע ההתאבדות).

15. כתוצאה מפיגוע ההתאבדות נגרם מותה של <u>גב' יפה בן שימול ז"ל</u>.

## <u>פרט שמונה עשר :(פ"א 17869/04 תחנת מוריה)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ██████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר יובל אוזנה ז"ל</u>.

## <u>פרט תשעה עשר :(פ"א 17869/04 תחנת מוריה)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ██████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר רחמים דנגה ז"ל</u>.

13

<u>פרט עשרים: (פ"א 17869/04 תחנת מוריה)</u>

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) ו- 7(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970, וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ███████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר יהודה חיים ז"ל.</u>

<u>פרט עשרים ואחד: (פ"א 17869/04 תחנת מוריה)</u>

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) ו- 7(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970, וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ███████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר אילן אביסדריס ז"ל.</u>

<u>פרט עשרים ושנים: (פ"א 17869/04 תחנת מוריה)</u>

**מהות העבירה:** גרימת מות בכוונה, עבירה לפי סעיף 51(א) ו- 7(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ███████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר בניה יונתן צוקרמן ז"ל.</u>

14

**פרט עשרים ושלושה: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ███████ בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – גרם מותו של <u>מר אזולאי ליאור ז"ל</u>.

**פרט עשרים וארבעה: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ███████ בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – גרם מותו של <u>מר נתנאל חבשוש ז"ל</u>.

**פרט עשרים וחמישה: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיפים 20-19, 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לניסיון גרימת מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ███████ בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נפגעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות ; וכן מת המחבל המתאבד.

15



נאג'י      עאמר,      סרן
תובע                    צבאי

<u>רשימת עדי התביעה :</u>



1. ████████ (גובה הודעת הנאשם מיום 10/3/04  מיום 16/3/04 ומיום 17/3/04 תופס כתב ידו של הנאשם + עורך מסדר תמונות).

2. ████████ (גובה הודעת הנאשם מיום 17/3/04).

3. ████ י (עצור בת.ת. 1338/04).

4. ████████ (עצור בת.ת. 1300/04).

5. ████████ (עצור בת.ת. 1246.04).

6. ████████ (עצור בת.ת. 1216/04).

7. ████████ (עצור בת.ת. 1332/04).

<u>פ"א 09891/04 מת"מ ירושלים :</u> (פיגוע התאבדות בתוך אוטובוס קו 19)



8. ████ (פרטים בתביעה).

9. ████ (פרטים בתביעה).

10. ████ (פרטים בתביעה).

11. ████ (פרטים בתביעה).

12. ████ (פרטים בתביעה).

13. ████ י (פרטים בתביעה).

14. ████ (פרטים בתביעה).

15. ████ (פרטים בתביעה).

16. ████ (פרטים בתביעה).

17. ████ (פרטים בתביעה).

18. ████ (פרטים בתביעה).

19. ████ (פרטים בתביעה).

20. ████ (פרטים בתביעה).

21. ████ (פרטים בתביעה).

22. ████ (פרטים בתביעה).

23. ████ (פרטים בתביעה).

24. ████ (פרטים בתביעה).

16



25. (פרטים בתביעה).
26. (פרטים בתביעה).
27. (פרטים בתביעה).
28. (פרטים בתביעה).
29. (מסמכים רפואיים הנוגעים למר נעים ברזאוי).
30. (מסמכים רפואיים הנוגעים לגבי שרה קיסר).
31. (מסמכים רפואיים הנוגעים לגבי בחירה סעדו).
32. (מסמכים רפואיים הנוגעים לגבי בחירה סעדו).
33. חוו"ד מעבדת חבלה (נתעבר בהמשך).
34. מסמכים רפואיים.
35. רשימות נפגעים (רשומה מוסדית).



**(פ"א 17869/04 תחנת מוריה): (פיגוע התאבדות בתוך אוטובוס קו 14)**

36. (פרטים בתביעה).
37. (פרטים בתביעה).
38. (פרטים בתביעה).
39. (פרטים בתביעה).
40. (פרטים בתביעה).
41. (פרטים בתביעה).
42. (פרטים בתביעה).
43. (פרטים בתביעה).
44. (פרטים בתביעה).
45. (פרטים בתביעה).
46. (פרטים בתביעה).
47. (מסמכים רפואיים).
48. (פרטים בתביעה).
49. (מסמכים רפואיים).
50. (פרטים בתביעה).
51. (מסמכים רפואיים).
52. (פרטים בתביעה).
53. (פרטים בתביעה).
54. (פרטים בתביעה).
55. (פרטים בתביעה).
56. (פרטים בתביעה).

17



57. (פרטים בתביעה).
58. (מסמכים רפואיים).
59. פרטים בתביעה.
60. (מסמכים רפואיים).
61. (פרטים בתביעה).
62. (מסמכים רפואיים).
63. (פרטים בתביעה).
64. (פרטים בתביעה).
65. (פרטים בתביעה).
66. (פרטים בתביעה).
67. (מסמכים רפואיים).
68. (פרטים בתביעה).
69. (פרטים בתביעה).
70. (פרטים בתביעה).
71. (מסמכים רפואיים).
72. (פרטים בתביעה).
73. (פרטים בתביעה).
74. מסמכים רפואיים (רשומה מוסדית).
75. (דו"ח תפיסה).
76. (דגימות גנטיות).
77. (דגימות גנטיות).
78. (זכ"ד).
79. (מזכר).
80. חוו"ד מעבדת חבלה (תעבר בהמשך).
81. (דו"ח תפיסה וסימון).
82. (חווי"ד פתולוגית).
83.
84. (חווי"ד פתולוגית).
85.
86. (חווי"ד פתולוגית).
87.
88. (חווי"ד המכון הלאומי לרפואה משפטית).
89. (חווי"ד פתולוגית).
90. (חווי"ד פתולוגית).

18

‫91. תעודות פטירה.‬