

PLAINTIFF'S
EXHIBIT
275

<u>Israel</u>              Defense              Forces

| | | |
|---|---|---|
| Before the Military Court | Court Case: | *2271*/04 |
| in Judea | Prosecution Case: | 1238/04 |
| Before a panel | Detailed Incident Case: | 1271/04 Hebron |
| | | 9891/04 Jerusalem Special |
| | | Duties Department |
| | | 178694/04 Moria |

In the trial between

**The Military Prosecutor**

- The Prosecutor -

- v. -

**Abdul Rahman (Zahir) Yousef Abdul Rahman Maqdad (known as "Abu-Ahmed", "Abu Al-Qassam")**

(detained since March 6, 2004)

Identity No. 410066625, born August 4, 1976, from Bethlehem

-The Defendant-

[Stamp] This indictment received _____
        on date: *May 20, 2004*
        and entered into the log in case _____
        by the court officer *Irit Goren*

<u>Indictment</u>

The above mentioned Defendant is accused hereby of committing the following offenses:

<u>First count</u>:

<u>Nature of the offense:</u> Shooting at a person or a place in which persons may be, an offense pursuant to Regulation 58 (A) of the Defense Regulations (Time of Emergency), 1945; and Section 14 of the Rules of Liability for an Offense Order (No. 225), 5728-1968.

<u>Details of the offense:</u> The above mentioned Defendant, in the Area, in July 2001 or thereabouts, was an accomplice in shooting at a person or place in which persons may be, as follows:

[Stamp] P 2: 207

At the above mentioned time, the above mentioned Defendant went out, armed with a Kalashnikov type rifle, towards the settlement of Beit Jala in order to carry out a shooting attack against Israeli civilians at Mount Gilo.

The Defendant reached a point at which a number of operatives joined him in order to shoot toward Mount Gilo.

Using the above mentioned rifle, the Defendant fired five rounds, and the others who were at the site also fired toward Mount Gilo.

C:\Documents and Settings\s6903112\Local Settings\Temporary Internet Files\OLK2\1238-04.doc

[Stamp] P 2: 207 [continued]

2

**Second count:**

**Nature of the offense:** Possession of war materiel, an offense pursuant to Section 53 (A) (1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, during March 2002 or thereabouts, had in his possession explosives, a bomb and a firearm, without possessing a permit from or on behalf of a military commander.

To wit: At the above mentioned time, the above mentioned Defendant turned to military the operative ███████ and asked him for explosive devices.

*with*

The Defendant met ███████ and received from him 4 kilograms of Um Al Abed explosives. The Defendant used some of the quantity that he obtained to make four pipe bombs, and kept the remaining quantity.

During Operation "Defensive Shield", the Defendant hid in the Church of the Nativity in Bethlehem while in possession of the explosive devices.

In addition, during his stay in the said church, the Defendant found a pistol; the Defendant took the pistol and concealed it behind a cupboard in the church – and when he returned to take it [from there] he did not find it there.

**Third count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2003 or thereabouts, was an accomplice in an attempt to cause the intentional death of others, as follows:

[Stamp] P 2: 208

▇▇. The Defendant answered positively, and left with ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ and conducted a preliminary visit of the site that ▇▇▇▇▇▇ had found. The Defendant and ▇▇▇▇▇▇▇▇▇▇ arrived at the area of the Talita Kumi School and found that this was a good site for carrying out the attack.

2.   Shortly thereafter, the Defendant asked the military operative ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ (hereinafter: ▇▇▇▇▇▇▇▇ to go out and carry out a preliminary visit of the Talita Kumi School area, because a shooting attack in the area had been planned. ▇▇▇▇▇▇▇ agreed to this and departed at about 2:00 a.m. for the site, to make sure that there were no [...]

[Stamp] P 2: 208 [continued]

3

[...] obstacles on the road. In addition, the Defendant enlisted ███████ ██████████ (known as ██████████ (hereinafter: ███████████ and the military operative ████████████ (hereinafter: ██████████) to carry out the shooting attack with them.

t the

4.   Accordingly, the Defendant departed, armed with a Kalashnikov rifle, with ██████████ who was armed with an M-16 rifle; and ███ █████ who was armed with an M-16 rifle, towards the area in order to carry out the attack; ██████████ transported them in a vehicle that he had brought.

5.   When they arrived in the planned area, the Defendant instructed ██████ ████ to return to his home, and the Defendant and ██████████ waited in hiding 20 meters from the road for Israeli vehicles that would pass by. ██████████ remained in the vehicle.

6.   At about 3:30 a.m., a military jeep passed by; then the Defendant and his accomplice opened fire at the jeep.

7.   The jeep continued on its journey; the Defendant and his accomplice fled towards the vehicle in which ██████████ was waiting, and together they escaped from the site.

**Fourth count:**     **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

[Stamp] P 2: 209

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of other persons, as follows:

1.  In early January 2004 or thereabouts, the Defendant contacted the military operative ▮▮▮▮▮▮▮ and asked him to introduce military operatives to him, who would help him produce explosives and explosive devices in order to carry out attacks against Israeli targets, and to find suicide terrorists for carrying out suicide attacks. Accordingly, ▮

    ▮▮▮▮▮met the Defendant in accordance with the directions of ▮▮▮▮
    ▮▮▮▮ During the meeting, the Defendant asked him to help him in the making of explosives. ]

[Stamp] P 2: 209 [continued]

4

Ali Ja'ara (hereinafter: the **"Suicide Terrorist"**) expressed willingness to do so.

During the meeting, ███████ checked the degree of willingness of the Suicide Terrorist to carry out a suicide attack.

the attack. Accordingly: ████████████

3.                               ████████████

                                            . On this occasion, ██████████ transferred the Um Al Abed explosive to the Defendant, and the Defendant asked him to transfer the acetone to him and in addition the chemical hydrogen peroxide [both of] which are used for making explosives.

4.   On the following day, the Defendant met ████████ and obtained 36 liters of chemical of acetone and 10 liters of hydrogen peroxide from him; the Defendant told ████████ that he intended to use these materials to produce explosives that would be used by a suicide terrorist in carrying out a suicide attack; on this occasion, ████████████████████████ The Defendant hid the substances in his home.

5.   A few days later, ████████████ came to the home of the Defendant

At that time, the Defendant asked ███████████ to buy him materials for making an explosive bag [which included, *inter alia*, a bag, batteries and a switch]. ████████████ agreed and with ████ ███████ purchased everything requested for the Defendant so that he could make the explosive bag as soon as possible. In addition, ████ ███████ and ████████████ tried to find a video camera to film the Suicide Terrorist before carrying out the attack, but were unable to do so, and therefore they decided to dispatch the Suicide Terrorist to carry out the attack without filming him using a video camera.

6.  :

████████████

5

Accordingly, ██████████ had ██████████ meet the Suicide Terrorist.

7.   At the time of the foregoing, the Defendant made an additional quantity of Um Al Abed explosives weighing 12 kilograms, and made an explosive bag using it for carrying out a suicide attack.

The Defendant asked ██████████ to come to take the explosive bag.

8.   A few minutes later, ██████████ arrived, with the Suicide Terrorist and ██████████ at the home of the Defendant; ██████████ waited outside, while the Suicide Terrorist and ██████████ entered the Defendant's home. The Defendant explained to ██████████ and to the Suicide Terrorist how to activate the explosive bag and gave the explosive bag for use in a suicide attack to them, with the aim of causing the deaths of Israeli civilians.

9.   Shortly thereafter, ██████████ the Suicide Terrorist and ██████ departed towards the university in Bethlehem; there, ██████████ deactivated the safety mechanism of the explosive device in order to prepare it for use. After that, ██████████ left ██████ with the Suicide Terrorist.

10.  Thereafter, at about 6:30 a.m., ██████████ transported the Suicide Terrorist in the direction of Jerusalem through the village of Walaja until they arrived near the Malha Mall in Jerusalem. There, ██████████ parted from the Suicide Terrorist and returned to the Area.

11.  Shortly thereafter, the Suicide Terrorist boarded Egged Bus No. 19, which was driving towards Paris Square; when the bus reached the corner of Arlozorov and Aza Streets, at about 8:45 a.m., the Suicide Terrorist activated the explosive bag that was in his possession with the aim of causing the deaths of a large number of individuals. As a result of this, the explosive bag detonated aboard the bus (hereinafter: the "**Suicide Attack**").

[Stamp] P 2: 211

12.    As a result of the Suicide Attack, the death of **the late Mr. Avraham Balhasan** was caused.

**Fifth count:**    **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Hannah Bonder** was caused.

[Stamp] P 2: 211 [continued]

6

**Sixth count:**        <u>(Detailed Incident 09891/04 Jerusalem Special Duties Department)</u>

<u>Nature of the offense</u>: Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

<u>Details of the offense</u>: The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of <u>the late Ms. Anat Darom</u> was caused.


**Seventh count:**      <u>(Detailed Incident 09891/04 Jerusalem Special Duties Department)</u>

<u>Nature of the offense</u>: Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

<u>Details of the offense</u>: The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of <u>the late Mr. Yehezkel Goldberg</u> was caused.

[Stamp] P 2: 212

**Eighth count:**       **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Vladi Tzadik Manbara** was caused.

[Stamp] P 2: 212 [continued]

7

**Ninth count:**          **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Mr. Viorel Octavian Florescu** was caused.

**Tenth count:**          **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Rose Boneh** was caused.

[Stamp] P 2: 213

**Eleventh count:**   (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Dana Itach** was caused.

[Stamp] P 2: 213 [continued]

8

**Twelfth count:**    **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Mr. Roman Hondiashvili** was caused.

**Thirteenth count:**    **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Mr. Eli Zfira** was caused.

[Stamp] P 2: 214

**Fourteenth count:**  **(Detailed Incident 09891/04 Jerusalem Special Duties Department)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the death of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – the death of **the late Ms. Natalia Gamril** was caused.

[Stamp] P 2: 214 [continued]

**Fifteenth count:**   (Detailed Incident 09891/04 Jerusalem Special Duties Department)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on January 29, 2004, was an accomplice in attempting to cause the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist Ali Ja'ara carried out with the intent to cause the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the fourth count of the indictment – more than 50 civilians were injured from sever to slight degrees of injury; and the Suicide Terrorist died.

**Sixteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in February 2004 or thereabouts, was an accomplice in an attempt to cause the intentional deaths of others, as follows:

1.   At the above mentioned time, the above mentioned Defendant and the military operative ███████████ planned to carry out a shooting attack in the Al Khader area.

Accordingly, the Defendant and ███████████ departed for the Al Khader area to conduct observations at the site. In accordance with the observations, the Defendant and his accomplice decided to carry out the attack that same day, at nighttime.

[Stamp] P 2: 215

2.  The Defendant made contact with the military operative ███████████ and asked him to meet him at his home. ████████████ agreed to the request of the Defendant, met him at home and told him about the planned shooting attack.

    The Defendant suggested to ████████████ to take part as a spotter during the performance of the attack and to clear the way before executing the attack; █

3.  Accordingly, the Defendant departed, armed with a Kalashnikov rifle, with ████████████ who was armed with an M-16 rifle and with ████████ towards the Al Khader area, in order to carry out the attack.

4.  When they arrived in the planned area, they decided to defer the date to carry out the attack in order not to harm the preparations for the Suicide Attack that the cell members had planned.

[Stamp] P 2: 215 [continued]

10

**Seventeenth count:**   (Detailed Incident 17869/04 Moria Station)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

1.  A few days after the above mentioned date, the above mentioned Defendant and the military operative ██████████ planned to carry out a suicide attack with the aim of causing the deaths of Israeli civilians.

2.  On February 17, 2004, or thereabouts, ██████████ met the Suicide Terrorist in the village of Hussan.

3.  Defendant contacted his brother, ██████████ who lived in Gaza, updated him of the planning to carry out the suicide attack, and asked him for NIS 3,000 in order to prepare the explosive bag for the suicide attack and to purchase a video camera for filming the Suicide Terrorist (in accordance with the request of ██████ to film the Suicide Terrorist before carrying out the suicide attack).

    ██████ and transferred the amount of NIS 3,000 to the account in the Arab Bank in Bethlehem, which is registered to the title of the Defendant, for financing the suicide attack, as was agreed with the Defendant.

[Stamp] P 2: 216

4.  On February 18, 2004, or thereabouts, the Defendant went to the Arab Bank in Bethlehem and withdrew the amount of money that had been transferred to him from ██████████████

The Defendant used some of the amount of money to purchase a video camera and an ordinary camera for filming and photographing the Suicide Terrorist. In addition, the Defendant transferred to ████████████ and to ██████████████ an amount of money for them to purchase materials for preparing the explosive bag for the suicide attack.

5.  Accordingly, ████████████ received four liters [of hydrogen peroxide] from the military operative ██████████████████ (hereinafter: ██████████████") [...]

[Stamp] P 2: 216 [continued]

11

[...] [of hydrogen peroxide] from the military operative ███████ 40 liters of acetone; ███████ transferred to the Defendant 12 liters of hydrogen peroxide and 12 liters of acetone.

6.   On February 20, 2004, the Defendant made the Um Al Abed explosive that was intended for carrying out the suicide attack, with ███████ and ██ in the home of the Defendant. The Defendant explained to ███████ how to prepare a wooden box for the explosive bag, and he made the box as the Defendant explained to him.

7.   Shortly thereafter, the Defendant asked ███████ to check with ███████ whether he was prepared to transport the Suicide Terrorist for executing the suicide attack.

That evening, ███████ came to the home of the Defendant, with a leaflet called "The Aiman Juda Cell of the Al Aqsa Martyrs Brigades Organization" in his possession; ███████ passed the leaflet along to the Defendant, in order to serve as a background picture when filming the Suicide Terrorist – and also updated the Defendant that ███████ was prepared to transport the Suicide Terrorist.

8.   On the following morning, ███████ gave iron nails to the Defendant in order for the latter to attach them to the explosive bag, in order to increase and worsen the injuries at the time of the detonation of the explosive device. The Defendant accepted the iron nails and attached them to the explosive bag.

On that same day, at about 4:10 p.m., ███████ came, accompanied by the Suicide Terrorist, to the home of the Defendant in order to prepare him for departing on the attack.

In addition, ███████ brought a Kalashnikov rifle and a hand grenade to the Defendant in order for the Defendant to film the Suicide Terrorist holding these weapons.

[Stamp] P 2: 217

9. The Defendant and ██████████ gave the Suicide Terrorist food and new clothes. After they had dinner with the Suicide Terrorist, ██████████ wrote a will for the Suicide Terrorist; the Defendant and ██████████ filmed the Suicide Terrorist reading out his will. When they finished filming the Suicide Terrorist, the Defendant started to make the explosive belt that would be used in the execution of the suicide attack. At about 5:30 a.m. on the following day, the Defendant finished making the explosive belt.

10. When he finished making the explosive belt, as set forth on April 22, 2004, the Defendant called ██████████ informed him that everything was ready and asked him to come to take the Suicide Terrorist out to carry out the suicide attack.

[Stamp] P 2: 217 [continued]

12

⸻ et him. They both met and together they traveled towards the home of the Defendant, where the Suicide Terrorist was hiding. ████

11. At about 6:00 a.m., ████████████ came to the home of the Defendant, took the explosive bag from the Defendant and departed with the Suicide Terrorist toward the center of Bethlehem; there, he had the Suicide Terrorist meet ████████ From there, the Suicide Terrorist departed with ████████ toward Jerusalem, passing through the village of Walaja, in order to carry out the planned suicide attack.

12. A
   h:

   ⸻k. Accordingly, the Defendant updated his brother ████
   ████ of the departure of the Suicide Terrorist to carry out the suicide attack.

13. ████████ transported the Suicide Terrorist to a place that was near Malha Mall in Jerusalem; there, he parted from him and returned to the Area.

14. Shortly thereafter, the Suicide Terrorist boarded bus no. 14, which was traveling from the direction of Denia toward Liberty Bell Park, while in possession of the explosive bag. When the bus stopped at one of the traffic lights, the Suicide Terrorist detonated the explosive bag with the intent of causing the deaths of a large number of people. As a result of this, the explosive bag exploded aboard the bus (hereinafter; the "**Suicide Attack**").

15. As a result of the Suicide Attack, the death of <u>the late **Ms. Yaffa Ben-Shimol**</u> was caused.

[Stamp] P 2: 218

**Eighteenth count: (Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional deaths of others, as follows:

As a result of the Suicide Attack that ██████████ performed with the intent of causing the deaths of Israeli Civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Yuval Ozana** was caused.

[Stamp] P 2: 218 [continued]

13

**Nineteenth count:**    **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that ▬▬▬▬▬▬ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Rahamim Doga** was caused.


**Twentieth count:**    **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that ▬▬▬▬▬▬ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Yehuda Haim** was caused.

[Stamp] P 2: 219

**Twenty first count:** (Detailed Incident 17869/04 Moria Station)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that ███████████ performed with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Ilan Avisidris** was caused.

[Stamp] P 2: 219 [continued]

14

**Twenty second count:** (Detailed Incident 17869/04 Moria Station)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that ▬▬▬▬ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Benia Yonatan Zuckerman** was caused.

**Twenty third count:** (Detailed Incident 17869/04 Moria Station)

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that ▬▬▬▬ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Lior Azulai** was caused.

[Stamp] P 2: 220

**Twenty fourth count:**     **(Detailed Incident 17869/04 Moria Station)**

**Nature of the offense:** Causing intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in causing the intentional death of others, as follows:

As a result of the Suicide Attack that ███████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – the death of **the late Mr. Natanel Havshush** was caused.

[Stamp] P 2: 220 [continued]

14

**Twenty fifth count:**      (Detailed Incident 17869/04 Moria Station)

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) and 7 (C) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19-20, 14 and 2 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in and outside the Area, on February 22, 2004, was an accomplice in attempting to cause the intentional deaths of others, as follows:

As a result of the Suicide Attack that the Suicide Terrorist ████████ carried out with the intent of causing the deaths of Israeli civilians, in which the Defendant was an accomplice as set forth in the seventeenth count of the indictment – more than 50 civilians were injured from severe to slight degrees of injury; in addition, the Suicide Terrorist died.

**Twenty sixth count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

To wit: At the above mentioned time, the above mentioned Defendant planned with the military operative ████████ to lay an explosive device in the Beit Jala area and detonate it alongside a military jeep that might pass by. According to the plan, at the time of detonation of the explosive device by the military jeep, the Defendant and his accomplices would open fire at the soldiers in the jeep with the intent of causing their deaths.

[Stamp] P 2: 221

The Defendant and his accomplice planned to snatch the bodies of the soldiers at the end of the act and hide them away in order to negotiate with the State of Israel for the release of Palestinian prisoners.

For this task, the Defendant and his accomplice planned to enlist three more military operatives to participate with them in the commission of the shooting at the jeep.

However, after a few days, the Defendant and his accomplice were arrested, and as a result of that, this plan was thwarted.

[Stamp] P 2: 221 [continued]

16

**Twenty seventh count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

To wit: At the above mentioned time, the above mentioned Defendant planned to hijack an Israeli bus and bring it to the Church of the Nativity in Bethlehem, in order to negotiate the release of prisoners with the State of Israel. In accordance with this plan, which the Defendant had devised: two suicide terrorists armed with explosive belts would board an Israeli bus filled with passengers and order the bus driver to travel to the church in Bethlehem. If the bus driver disobeyed the instructions of the suicide terrorists, they would threaten to detonate the explosive belts.

In accordance with the plan, when the bus would arrive in Bethlehem, all of its passengers would enter the church and the hijackers would start to negotiate the release of Palestinian prisoners in exchange for the release of the passengers of the bus.

The Defendant planned to booby trap the yard of the church, using explosive devices, in order to prevent IDF forces from approaching the church. In addition, the Defendant planned to deploy two suicide terrorists armed with gas cylinders inside the church, who would be prepared to explode inside the church if IDF forces were to enter the church.

The Defendant updated the military operative ███████ regarding the plan, and

[Stamp] P 2: 222

In addition, the Defendant updated the military operative ███████████ regarding the plan.

████████████ had hydrogen peroxide and acetone in his possession, and the Defendant planned to make, using these substances and other materials, the explosive belts that would be used by the suicide terrorists.

According to the plan that was devised, in order to expedite the negotiations for the release of the prisoners, the Defendant and his accomplice ███████████ planned to plant an explosive device on one of the captives and send him toward IDF forces who would gather at the site, and detonate him on them. At the end of the negotiations, the Defendant and his accomplices planned to demand their passage to Gaza as a condition to the release of the hostages.

On March 5, 2004, the Defendant advised his brother ███████████ of the plan that had been devised; but he was not enthusiastic about the plan and asked the Defendant to continue to carry out suicide attacks.

A few days later, the Defendant was arrested, thus thwarting this plan.

[Stamp] P 2: 222 [continued]

17

**Twenty eighth count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

To wit: At the above mentioned time, the above mentioned Defendant conspired with his accomplice ███████ to carry out a double suicide attack, in which one of the suicide terrorists would explode in a crowded place in Israel with the intent of causing the deaths of Israeli civilians, while the other suicide terrorist would wait in a car bomb near a place in which the government would convene to make a decision on response to the attack, so that when one of the ministers would come to the government meeting, the other suicide terrorist would detonate the car bomb with the intent of causing the death of the minister.

However, shortly afterward, the Defendant and his accomplice were arrested, thus thwarting this plan.

**Twenty ninth count:**

**Nature of the offense:** Conspiring to cause intentional death, an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, and Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense:** The above mentioned Defendant, in the Area, in early March 2003 or thereabouts, conspired with others to cause the intentional death of another person.

[Stamp] P 2: 223

To wit: At the above mentioned time, the Defendant and his accomplice ███████ ███ planned to execute a double suicide attack within the territory of the State of Israel; according to the plan, one of the suicide terrorists would board a bus crowded with passengers and detonate himself aboard the bus with the intent of causing the deaths of a large number of passengers, while the other suicide terrorist would wait by the side, wearing the clothes of rescue forces and at the same time having a 25-kg explosive device, and when the rescue forces would approach the site, the suicide terrorist would detonate himself, with the aim of causing the death of as many civilians and possible.

The Defendant and his accomplice planned to equip one of the suicide terrorists with an explosive device weighing 25 kilograms in order to increase the power and size of the explosion.

However, shortly thereafter, the Defendant and his accomplice were arrested, and as a result, this plan was not carried out.

[Stamp] P 2: 223 [continued]

18

[Signature]

Naji Amar,   Captain
Military      Prosecutor

### List of witnesses of the Prosecution:

1.  ████████████████████████ (took the confessions of the Defendant dated March 7, 2004 and March 9, 2004, seizer of the handwriting of the Defendant dated March 7, 2004).

2.  ████████████████████ (took the confession of the Defendant on March 8, 2004, and made photograph lineup for the Defendant on March 8, 2004).

3.  ████████████████████ (took the confession of the Defendant on March 24, 2004 and seizure of the handwriting of the defendant on March 24, 2004).

4.  ████████████████ (detained in Prosecution Case 1338/04).

5.  ██████████████████████ (detained in Prosecution Case 1300/04).

6.  ██████████████████████ (detained in Prosecution Case [Translator's note: missing number]).

7.  ████████████████████ (detained in Prosecution Case 1246/04).

8.  ██████████████████ (detained in Prosecution Case 1216/04).

9.  ████████████████ (detained in Prosecution Case 1247/04).

### Detailed Incident 09891/04 Special Duties Department, Jerusalem: (suicide attack aboard Bus No. 19)

10. ████████████ (details held by the Prosecution).

11. ████████████ (details held by the Prosecution).

12. ████████ (details held by the Prosecution).

13. ██████████ (details held by the Prosecution).

14. ████████ (details held by the Prosecution).

[Stamp] P 2: 224

15. ████████████ (details held by the Prosecution).

16. ████████████ (details held by the Prosecution).

17. ████████████ (details held by the Prosecution).

18. ████████████ (details held by the Prosecution).

19. ████████████ (details held by the Prosecution).

20. ████████████ (details held by the Prosecution).

21. ████████████ (details held by the Prosecution).

22. ████████████ (details held by the Prosecution).

23. ████████████ (details held by the Prosecution).

24. ████████████ (details held by the Prosecution).

25. ████████████ (details held by the Prosecution).

26. ████████████ (details held by the Prosecution).

27. ████████████ (details held by the Prosecution).

28. ████████████ (details held by the Prosecution).

[Stamp] P 2: 224 [continued]



19

29. ██████████ (details held by the Prosecution).

30. ██████████ (details held by the Prosecution).

31. ████████████ (medical documents related to Mr. ████████).

32. █████████████ (medical documents related to Ms. ████████).

33. ████████████ (medical documents related to Ms. ████████).

34. ████████ (medical documents related to Ms. ██████).

35. Expert opinion of bomb disposal laboratory (to be forwarded later).

36. Medical documents.

37. List of casualties (institutional record).


**(Detailed Incident 17869/04 Moria Station):** (suicide attack aboard bus no. 14)

38. █████████ (details held by the Prosecution).

39. ██████████ (details held by the Prosecution).

40. ████████████ (details held by the Prosecution).

41. █████████ (details held by the Prosecution).

42. █████████ (details held by the Prosecution).

43. ████████ (details held by the Prosecution).

44. █████████ (details held by the Prosecution).

45. ██████████ (details held by the Prosecution).

46. ██████████ (details held by the Prosecution).

47. █████████ (details held by the Prosecution).

48. █████████ (details held by the Prosecution).

49. ███████ (medical documents).

[Stamp] P 2: 225

50. ███████████████ (details held by the Prosecution).

51. ██████ (medical documents).

52. ████████████████ (details held by the Prosecution).

53. █████████ (medical documents).

54. ████████████ (details held by the Prosecution).

55. ████████████ (details held by the Prosecution).

56. ██████████████ (details held by the Prosecution).

57. ████████████ (details held by the Prosecution).

58. ██████████████ (details held by the Prosecution).

59. ██████████████ (details held by the Prosecution).

60. ███████████████ (medical documents).

20

61. ██████████████ (details held by the Prosecution).

62. ██████████████ (medical documents).

63. ████████████████ (details held by the Prosecution).

64. █████████████ (medical documents).

65. ██████████████ (details held by the Prosecution).

66. ███████████ (details held by the Prosecution).

67. ████████████ (details held by the Prosecution).

68. ████████████ (details held by the Prosecution).

69. █████████████ (medical documents).

70. ██████████████ (details held by the Prosecution).

71. ██████████████ (details held by the Prosecution).

72. █████████████ (details held by the Prosecution).

73. ██████████ (medical documents).

74. █████████████ (details held by the Prosecution).

75. █████████████ (details held by the Prosecution).

76. Medical documents (institutional record).

77. ████████████ (seizure report).

78. ████████████ (genetic specimens).

79. ████████████ (genetic specimens).

80. ████████████ (memorandum).

81. ██████████ (memorandum).

82. Bomb laboratory expert opinion (to be forwarded later).

83. ████████████████ (seizure and marking report).

[Stamp] P 2: 226

84. ███████████ (pathology expert opinion).

85. ███████████

86. ███████████████ (pathology expert opinion).

87. ███████████

88. ███████████ (pathology expert opinion).

89. ███████████

90. ███████████ (expert opinion of the National Institution of Forensic Medicine).

91. ███████████ (pathology expert opinion).

92. ███████████████ (pathology expert opinion).

93. Death certificates.

[Stamp] P 2: 226 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                    Plaintiffs,

        vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                    Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief.  The document is designated as P 2: 207-226.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience.  I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document designated as P 2: 207-226.

Dated: March 6 , 2014

                                        _____
                                        Rina Ne'eman

ss.:  New Jersey

On the _6_ day of March, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.


Sworn to me this
_6th_ day of March, 2014


_Leonor Troyano_
Notary Public


**LEONOR TROYANO**
ID # 2385580
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/8/2014

צבא    הגנה    לישראל

בבית המשפט הצבאי          תיק בימ"ש 04/ 9371
ב י ה ו ד ה                  תיק תביעה 1238/04
בפני    הרכב                 תיק פ.א.   1271/04 חברון
                             9891/04 מתיא"ם י-ם
                             178694/04 מוריה

כתב אישום זה נחתם
בתאריך... 2.6.6.2
ועותקו בוצע בתי...
...ליד ... צ/יהדה ...

במשפט שבין :          התובע הצבאי

                      - המאשים -

- נ ג ד -

ע"א-רחמאן (זאהר) יוסף ע"א-רחמאן מקדאד (המכונה: "אבו-אחמד"ן "אבו אל-קאסם")

(עצור מיום 6/3/04)

ת.ז. 410066625 יליד 4/8/76 מבית-לחם

- הנאשם -

**כתב אישום**

הנאשם הנ"ל מואשם בזאת, בביצוע העבירות הבאות :

**פרט ראשון :**

**מהות העבירה :** ירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, עבירה לפי תקנה 58(א)
לתקנות ההגנה (שעת חירום), 1945 ; וסעיף 14 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח- 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור, במהלך חודש יולי 01' או בסמוך לכך, היה שותף לירי לעבר
אדם או מקום שבני אדם עשויים להימצא בו, דהיינו:

במועד הנ"ל, יצא הנאשם הנ"ל כשהוא חמוש ברובה מסוג קלצניקוב לכיוון
הישוב בית-גיאלא ע"מ לבצע פיגוע ירי לעבר אזרחים ישראלים בהר גילה.

הנאשם הגיע לנקודה שבה הצטרפו מספר פעילים ביחד עימו ע"מ לירות לעבר הר
גילה.

הנאשם ירה מהרובה האמור חמישה כדורים, והאחרים שהיו במקום ירו גם הם
לעבר הר גילה.

C:\Documents and Settings\s6903112\Local Settings\Temporary Internet
Files\OLK2\1238-04.doc

2

<u>פרט שני</u> :

<u>מהות העבירה</u> : החזקת אמל"ח, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות ביטחון (יו"ש) (מסי
378), תשי"ל – 1970.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באזור, במהלך חודש מרץ '02 או בסמוך לכך, החזיק ברשותו
חומר נפץ, פצצה וכלי ירית מבלי שהיה ברשותו היתר ממפקד צבאי או מטעמו.

דהיינו, במועד הנ"ל, פנה הנאשם הנ"ל אל הפעיל הצבאי ███████ וביקש
ממנו מטעני חבלה. היפנה את הנאשם אל חבר חוליתו הצבאית ███████
(להלן – ███████) ███████ (המכונה:) ואמר לו כי ███████ ימסור לו חומר נפץ מסוג "אוס-אלבעד" לייצור
מטעני החבלה.

הנאשם נפגש עם ███████ וקיבל ממנו 4 ק"ג חומר נפץ מסוג "אוס-
אלבעד". הנאשם ייצר באמצעות חלק מהכמות שקיבל 4 מטעני צינור, ואת יתר
הכמות שמר.

במהלך מבצע "חומת מגן" הסתתר הנאשם בכנסיית המולד בבית-לחם
כשברשותו המטענים.

בנוסף, במהלך שהייתו בכנסייה האמורה מצא הנאשם אקדח; הנאשם לקח את
האקדח והסתיר אותו מאחורי ארון בכנסייה – וכשחזר לקחת אותו לא מצא
אותו במקום.

<u>פרט שלישי</u> :

<u>מהות העבירה</u> : ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יו"ש) (מסי 378), תשי"ל – 1970 ; וסעיפים 20-19, 14 לצו בדבר כללי האחריות
לעבירה (יו"ש) (מסי 225), תשכ"ח- 1968.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באזור, בסוף שנת '03 או בסמוך לכך, היה שותף לניסיון גרימת
מוות מתוכנן של אחרים בכוונה, דהיינו :

1. במועד הנ"ל, הציע הפעיל הצבאי ███████ לנאשם הנ"ל לצאת עימו
לבצע פיגוע ירי לעבר כלי רכב ישראליים. הנאשם נענה בחיוב, ויצא יחד עם
███████ וערך סיור מקדים במקום שאותו איתר
הנאשם ו ███████ הגיעו לאיזור בית-הספר "תליתא קומי" ומצאו
כי מקום זה טוב לביצוע הפיגוע.

2. בסמוך לכך, ביקש הנאשם מהפעיל הצבאי ███████
(להלן – ███████) לצאת ולבצע סיור מקדים באיזור בית-הספר
"תליתא קומי" וזאת מכיוון שמתוכנן לבצע פיגוע ירי באזור.
███████ נענה בחיוב, ויצא בסמוך לשעה 2:00 למקום וזאת כדי לודא שאין

3

מכשולים בדרך. בנוסף גייס הנאשם את ███████ (המכונה ███████) (להלן – ███████) והפעיל הצבאי ███████ (להלן – ███████) לביצוע יחד עימם את פיגוע הירי.

3. בסמוך לשעה 3:00, התקשר ███████ לנאשם ועידכן אותו בדבר המצב ואמר לו כי אין מניעה לבצע את הפיגוע המתוכנן.

4. בהתאם. לכך, יצא הנאשם כשהוא ברכוב ברובה קלצ'ניקוב יחד עם ███ ███████ שהיה חמוש ברובת M-16 ו ███████ כשהוא חמוש ███████ רובה 16 – M לכיוון האיזור ע"מ לבצע את הפיגוע; ███████ הסיע אותם ברכב שהביא.

5. כשהגיעו לאיזור המתוכנן, הורה הנאשם ל ███████ לחזור לביתו, והנאשם ו ███████ ארבו בסמוך למקום במרחק 20 מטר מהכביש לכלי רכב ישראליים שיעברו במקום. ███████ נותר ברכב.

6. בסמוך לשעה 3:30, עבר במקום ג'יפ צבאי; או-אז פתחו הנאשם וחברו באש לעבר הג'יפ.

7. הג'יפ המשיך בנסיעה, הנאשם וחברו נמלטו לכיוון הרכב בו המתין להם ███████ וביחד נמלטו מהמקום.

<u>פרט רביעי</u> : (פ"א 09891/04 מת"מ ירושלים)

<u>מהות העבירה</u> : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תשל"ו – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

1. בתחילת חודש ינואר 04' או בסמוך לכך, יצר הנאשם קשר עם הפעיל הצבאי ███████ וביקש ממנו כי יכיר לו פעילים צבאיים שיעזרו לו בייצור חומרי נפץ (מטעני) חבלה וזאת ע"מ לבצע פיגועים נגד מטרות ישראליות, וכן איתור מתאבדים לצורך ביצוע פיגועי התאבדות. בהתאם לכך, יצר ███████ קשר עם הפעיל הצבאי ███████ וביקש ממנו כי ייפגש עם פלוני (בכוונו לנאשם) ע"מ לעזור לו בפעילותיו הצבאיות. ███████ נפגש עם הנאשם בהתאם להנחיותיו של ███████, בפגישה ביקש ממנו הנאשם כי יעזור לו בייצור חומרי נפץ. הלה הסכים לכך.

4

2. בסמוך לכך פנה הפעיל הצבאי ████ ████ (להלן – ████
████) אל עלי גישארה והציע לו להפגישו עם פעיל צבאי שישלח אותו
לביצוע פיגוע התאבדות. עלי גישארה (להלן – **המתאבד**) הביע נכונות לכך.

בהתאם לכך, הפגיש ████ את הפעיל הצבאי ████ ████ עם
המתאבד בפגישה שבמהלכה בירר ████ עם המתאבד את מידת
נכונותו לבצע פיגוע התאבדות.

במהלך הפגישה הביע המתאבד נכונות לבצע את הפיגוע. בהתאם ביקש
████ מהמתאבד להתכונן לביצוע פיגוע ההתאבדות.

3. בסמוך לכך, פנה ████ לנאשם ועידכן אותו כי הצליח להשיג שני
קי"ג חומר נפץ מסוג אום-אלעבד וכן חומר כימי מסוג מסוכן אצטון. בהזדמנות זו
העביר ████ לנאשם את חומר הנפץ מסוג אום-אלעבד, והנאשם
ביקש ממנו כי יעביר אליו את האצטון ובנוסף חומר כימי מסוג מי-חמצן
המשמשים לייצור חומר נפץ.

4. ביום שלמחרת, נפש הנאשם עם ████ וקיבל ממנו 36 ליטר של
אצטון וכן 10 ליטר של מי-חמצן. הנאשם סיפר ל ████ כי בכוונתו
להשתמש בחומרים אלה עימ לייצר חומר נפץ שישמש מתאבד בביצוע
פיגוע התאבדות; בהזדמנות זו הסביר ████ לנאשם כיצד יש
לערבב את החומרים כדי ליצור את חומר הנפץ. הנאשם הסתיר את
החומרים בביתו.

5. כעבור מספר ימים הגיע לביתו של הנאשם ████ וסיפר לו. כי
איתר אדם המוכן לבצע פיגוע התאבדות.

ביום 28/1/04 או בסמוך לכך, פנה שוב ████ לנאשם, וביקש
ממנו כי יכין בדחיפות תיק נפץ באמצעות חומר הנפץ שברשותו וזאת מאחר
ובכוונתו לשלוח את המתאבד לפיגוע ההתאבדות.

או-אז, ביקש הנאשם מ ████ כי יקנה עבורו חומרים לייצור תיק
הנפץ (שכללו בין היתר: תיק, סוללות, מפסק וכו'...[.].]. ████ נענה
בחיוב וקנה ביחד עם ████ עבור הנאשם את כל שנתבקש וזאת כדי
שיוכל להכין את תיק הנפץ בתקדם האפשרי. בנוסף, ניסו
ו ████ למצוא מצלמת וידאו עימ לצלם את המתאבד בטרם ביצוע
הפיגוע, אולם לא הצליחו בכך – ולפיכך החליטו להוציא את המתאבד
לביצוע הפיגוע מבלי לצלמו בלי מצלמת וידאו.

6. בסמוך לכך, פנה ████ ████ אל הפעיל הצבאי ████
████ (להלן – ████) וביקש ממנו להוביל מתאבד חמוש בחגורת
נפץ לביצוע פיגוע התאבדות בתוך מדינת ישראל. ████ הביע
נכונות לכך.

5

בהתאם לכך, הפגיש ████████ את ████ עם המתאבד.

7. במקביל לאמור לעיל, ייצר הנאשם כמות נוספת של חומר הנפץ "אום אלעבד" במשקל 12 ק"ג, וייצר באמצעותה תיק נפץ לביצוע פיגוע התאבדות. הנאשם ביקש מ ████████ לבוא עימ"מ לקחת את תיק הנפץ.

8. כעבור מספר דקות הגיע ████████ יחד עם המתאבד ██████ לביתו של הנאשם; ████████ המתין בחוץ ואילו המתאבד ו██ נכנסו לביתו של הנאשם. הנאשם הסביר ל███████ ולמתאבד כיצד להפעיל את תיק הנפץ והעביר להם את תיק הנפץ ע"מ שזה ישמש בפיגוע התאבדות ואת בכוונה לגרום למותם של אזרחים ישראליים.

9. בסמוך לכך, יצאו ████████, המתאבד ו██████ לכיוון האוניברסיטה בבית-לחם; שם נטרל ████ את מנגנון האבטחה של מטען חבלה ע"מ להכין אותו לפעולה. לאחר-מכן עזב ████████ את ████ עם המתאבד.

10. לאחר-מכן בסמוך לשעה 6:30, הוביל ████████ את המתאבד לכיוון ירושלים דרך כפר וולמה עד שהגיעו סמוך לקניון מלחה בירושלים. שם נפרד ████ מהמתאבד וחזר לאיזור.

11. בסמוך לכך, עלה המתאבד לאוטובוס אגד בקו 19 שנסע לכיוון כיכר פריז; כשהגיע האוטובוס לפינת רחובות ארלוזורוב ועזה, סמוך לשעה 8:45, הפעיל המתאבד את תיק הנפץ שהחזיק עליו בכוונה לגרום למותם של מספר רב של בני אדם. כתוצאה מכך, התפוצץ תיק הנפץ בתוך האוטובוס (להלן - פיגוע ההתאבדות).

12. כתוצאה מפיגוע ההתאבדות נגרם מותו של <u>אברהם בלתסן ז"ל</u>.

<u>פרט חמישי :</u>    <u>(פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה :</u> גרימת מוות בכוונה, עבירה לפי סעיף (א)51 ו- (ג)7 לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה :</u> הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מוות של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ביעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של <u>גב' חנה בונדר ז"ל</u>.

6

<u>פרט שישי :</u>    (פ"א 09891/04 מת"מ ירושלים)

<u>מהות העבירה</u> :    גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u> :    הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותה של <u>גב' ענת דרום ז"ל.</u>

<u>פרט שביעי :</u>    (פ"א 09891/04 מת"מ ירושלים)

<u>מהות העבירה</u> :    גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u> :    הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של <u>מר יחזקאל גולדברג ז"ל.</u>

<u>פרט שמיני :</u>    (פ"א 09891/04 מת"מ ירושלים)

<u>מהות העבירה</u> :    גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u> :    הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של <u>מר ולדי צדיק מנברה ז"ל.</u>

7

**פרט תשיעי :** (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (ט"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (ט"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

בתוצאה מפיגועי ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של <u>מר ויורל אוקטביא פלורסקו ז"ל</u>.

**פרט עשירי :** (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (ט"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (ט"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

בתוצאה מפיגועי ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של <u>גב' רוזה בונה ז"ל</u>.

**פרט אחד עשר :** (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (ט"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (ט"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

בתוצאה מפיגועי ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של <u>גב' דנה איטח ז"ל</u>.

8

<u>פרט שנים עשר: (פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשל"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיאערה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של <u>מר רומן חונדיאשווילי ז"ל</u>.

<u>פרט שלושה עשר: (פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשל"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיאערה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של <u>מר אלי צפורה ז"ל</u>.

<u>פרט ארבעה עשר: (פ"א 09891/04 מת"מ ירושלים)</u>

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשל"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיאערה בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותה של <u>גב' נטליה גמריל ז"ל</u>.

9

**פרט חמישה עשר: (פ"א 09891/04 מת"מ ירושלים)**

<u>מהות העבירה</u>: ניסיון גרימת מות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות
ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיפים 20-19, 14 ו- 2 לצו בדבר כללי
האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04 היה שותף לניסיון גרימת
מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע התאבדות שאותו ביצע המתאבד על פי גישארה בכוונה לגרום
למותם של אזרחים ישראלים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות ; וכן מת המחבל
המתאבד.

**פרט שישה עשר :**

<u>מהות העבירה</u>: ניסיון גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיפים 20-19 ו- 14 לצו בדבר כללי האחריות
לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, במהלך חודש פברואר 04' או בסמוך לכך, היה שותף
לניסיון גרימת מותם של אחרים בכוונה, דהיינו:

1. במועד הנ"ל, תיכננו הנאשם הנ"ל והפעיל הצבאי ▆▆▆▆ לבצע
   פיגוע ירי באיזור אלחדר.

   בהתאם לכך, יצאו הנאשם ו▆▆▆▆ לאיזור אלחדר לערוך תצפיות
   במקום. בהתאם לתצפיות, החליטו הנאשם וחברו לעשות את הפיגוע באותו
   יום בשעות הלילה.

2. הנאשם יצר קשר עם הפעיל הצבאי ▆▆▆▆ וביקש ממנו כי ייפגש
   עימו בביתו. ▆▆▆▆ נענה בחיוב לבקשת הנאשם, נפגש עימו בביתו,
   וסיפר לו אודות פיגוע הירי המתוכנן.

   הנאשם הציע ל▆▆▆▆ ליטול ותפקיד של תצפיתן במהלך ביצוע
   הפיגוע וכן לבדוק את הדרך בטרם ביצוע הפיגוע ; ▆▆▆▆ הסכים
   להצעתו של הנאשם.

3. בהתאם, יצאו הנאשם, כשהוא חמוש ברובה קלצ'ניקוב, ▆▆▆▆,
   שהיה חמוש ברובה M – 16 ו▆▆▆▆ לכיוון איזור אלחדר וזאת
   עימ עם שאר בתכנון לבצע את הפיגוע.

4. כשהגיעו לאיזור המתוכנן החליטו לדחות את מועד ביצוע הפיגוע וזאת כדי
   לא לפגוע בהכנות לפיגוע התאבדות שאותו תכננו חברי החוליה.

10

<u>פרט שבעה עשר</u> (פ"א 17869/04 <u>תחנות מוריה</u>):

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשל"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מוותם
של אחרים בכוונה, דהיינו:

1. מספר ימים עובר למועד הנ"ל, תיכננו הנאשם הנ"ל והפעיל החצבאי ▇▇▇▇
   לבצע פיגוע התאבדות וזאת במטרה לגרום למותם של אזרחים
   ישראליים.

   ▇▇▇▇ הודיע לנאשם כי איתר אדם בשם ▇▇▇▇ (להלן –
   <u>המתאבד</u>) המוכן לבצע פיגוע התאבדות.

2. ביום 17/2/04 או בסמוך לכך, נפגש ▇▇▇▇ עם המתאבד בכפר
   חוסאן, במהלך הפגישה הסכים המתאבד לבצע את פיגוע ההתאבדות
   המתוכנן. בסיומה סיכם ▇▇▇▇ עם המתאבד להיפגש עימו בסמוך
   לכנסיית המולד בבית-לחם ביום 21/2/04 בשעה 16:00.

3. עידכן את הנאשם בדבר תוכן הפגישתו ובדבר הסכמתו של
   המתאבד לבצע את פיגוע ההתאבדות ; בהתאם לכך, יצר הנאשם קשר עם
   אחיו הפעיל החצבאי ▇▇▇▇ שגר בעזות, עידכן אותו בדבר התכנון
   לבצע פיגוע ההתאבדות, וביקש ממנו סכום של 3,000 ₪ ע"מ לחכין את תיק
   הנפץ לפיגוע ההתאבדות וכן לקנות מצלמת וידאו לצורך צילום המתאבד
   (וזאת בהתאם לבקשתו של ▇▇▇▇ לצלם את המתאבד בטרם ביצוע
   פיגוע ההתאבדות).

   נענה בחיוב לבקשתו של הנאשם והעביר לחשבון בבנק
   הערבי בבית-לחם, שרשום על שמו של הנאשם, סכום של 3,000 ₪ לצורך
   מימון פיגוע ההתאבדות, וזאת כפי שסוכם עם הנאשם.

4. ביום 18/2/04 או בסמוך לכך, ניגש הנאשם לבנק הערבי בבית-לחם ומשך
   את סכום הכסף שהתעבר אליו מ▇▇▇▇
   הנאשם רכש באמצעות חלק מסכום הכסף מצלמת וידאו ומצלמה רגילה
   לצורך צילום המתאבד. כמו-כן העביר הנאשם ל▇▇▇▇
   ▇▇▇▇ סכום כסף וזאת ע"מ שירכשו חומרים לצורך הכנת תיק הנפץ
   לפיגוע ההתאבדות.

5. בהתאם, ▇▇▇▇ קיבל מהפעיל החצבאי ▇▇▇▇
   ▇▇▇▇ (להלן – ▇▇▇▇) ארבעה ליטר של חומר כימי מסוג גמי-

P 2: 216

11

חמצן ומהפעיל הצבאי אחמד עודה 40 ליטר חומר כימי מסוג אצטון; ██████ העביר לנאשם 12 ליטר חומר כימי מסוג מי-חמצן ו- 12 ליטר חומר כימי מסוג אצטון.

6. ביום 20/2/04 ייצר הנאשם יחד עם ██████ ו██████ בביתו של הנאשם את חומר הנפץ מסוג "אום-אלעבד" המיועד לביצוע פיגוע התאבדות. הנאשם הסביר ל██████ כיצד להכין קופסה מעץ לתיק הנפץ, וזה הכין את הקופסה כפי שהסביר לו הנאשם.

7. בסמוך לכך, ביקש הנאשם מ██████ לבדוק עם ██████ אם הוא מוכן להוביל את המתאבד לביצוע פיגוע התאבדות. בהתאם לכך, נפגש ██████ עם ██████; ו██████ ביקש ממנו כי יובל מתאבד נוסף לביצוע פיגוע התאבדות בתוך שטח מדינת ישראל. ██████ נענה בחיוב לכך.

באותו יום בשעות הערב, הגיע ██████ לביתו של הנאשם כאשר ברשותו כרוז שעליו כתוב יחוליית אימוב גיחדה של ארגון גדודי חללי אלאקצא"; ██████ העביר את הכרוז לנאשם וזאת כדי שישמש כתמונת רקע בעת צילומו של המתאבד – וכמו-כן עידכן את הנאשם כי ██████ מוכן להוביל את המתאבד.

8. למחרת בבוקר, העביר ██████ ו██████ לנאשם מסמרי ברזל, וזאת ע"מ שהאחרון ידביק אותם לתיק הנפץ וזאת כדי להגביר ולהחמיר את הפגיעות בעת פיצוץ מטען הנפץ. הנאשם קיבל את מסמרי הברזל והדביק אותם לתיק הנפץ.

באותו יום, בסמוך לשעה 16:10, הגיע ██████ מלווה במתאבד לביתו של הנאשם ע"מ להכין אותו לקראת היציאה לפיגוע.

בנוסף, הביא ██████ לנאשם רובה קלצ'ניקוב ורימון יד ע"מ שהנאשם יצלם את המתאבד כשהוא מחזיק ברשותו אמליית זה.

9. הנאשם ו██████ נתנו למתאבד אוכל ובגדים חדשים. לאחר שסעדו ביחד עם המתאבד את ארוחת הערב כתב ██████ צוואה עבור המתאבד; הנאשם ו██████ צילמו את המתאבד כשהוא מקריא את הצוואה שלו. כשסיימו לצלם את המתאבד התל הנאשם לייצר את תיק הנפץ שישמש בביצוע פיגוע התאבדות. סמוך לשעה 5:30 בבוקר של היום שלמחרת סיים הנאשם לייצר את תיק הנפץ.

10. כשסיים לייצר את תיק הנפץ, כאמור ביום 22/4/04, התקשר הנאשם אל ██████, הודיע לו כי הכל מוכן וביקש ממנו כי לבוא ע"מ להוציא את המתאבד לביצוע פיגוע התאבדות.

12

בהתאם לכך, יצר אחמד אבו-עידב קשר עם █████████ביקש ממנו כי
ייפגש עימו. שניהם נפגשו וביחד נסעו לכיוון ביתו של הנאשם שבו הסתתר
המתאבד. █████ ביקש מ█████ כי ימתין בסמוך למקום
הנמצא במרכז בית-לחם.

11. בסמוך לשעה 6:00 הגיע █████ לביתו של הנאשם, לקח מהנאשם
את תיק הנפץ ויצא ביחד עם המתאבד לכיוון מרכז בית-לחם; שם חפגיש
את המתאבד עם █████. משם יצא המתאבד יחד עם
█████ לכיוון ירושלים כאשר הם עוברים דרך כפר הוולגיה וזאת ע"מ לבצע את
פיגוע ההתאבדות המתוכנן.

12. סמוך לשעה 6:15 נפגש █████ עם הנאשם ועידכן אותו כי
המתאבד יצא עם המוביל לביצוע פיגוע ההתאבדות. בהתאם לכך, עידכן
הנאשם את אחיו █████ בדבר יציאתו של המתאבד לביצוע פיגוע
ההתאבדות.

13. █████ הוביל את המתאבד למקום הנמצא בסמוך לקניון מלחה
בירושלים; שם נפרד ממנו וחזר לאיזור.

14. בסמוך לאחר-מכן עלה המתאבד לאוטובוס אגד קו 14 שנסע מכיוון דניה
לכיוון גן הפעמון, כשברשותו תיק הנפץ. כשנעצר האוטובוס באחד
הרמזורים הפעיל המתאבד את תיק הנפץ בכוונה לגרום למותם של מספר
רב של בני אדם, כתוצאה מכך התפוצץ תיק הנפץ בתוך האוטובוס (להלן –
**פיגוע ההתאבדות)**.

15. כתוצאה מפיגוע ההתאבדות נגרם מותה של <u>גב' יפה בן שימול ז"ל</u>.

**פרט שמונה עשר :** (פ"א 17869/04 תחנת מוריה)

**מהות העבירה :** גרימת מות בכוונה, עבירה לפי סעיף 51(א) ו- 7(א) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תשל"ו – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה :** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד █████ בכוונה לגרום
למותם של אזרחים ישראליים והנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר יובל אחנה ז"ל</u>.

13

<u>פרט תשעה עשר</u> (פ"א 17869/04 תחנת מוריה):

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ██████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר רחמים דוגה ז"ל</u>.

<u>פרט עשרים</u> (פ"א 17869/04 תחנת מוריה):

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ██████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר יהודה חיים ז"ל</u>.

<u>פרט עשרים ואחד</u> (פ"א 17869/04 תחנת מוריה):

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ██████ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נגרם מותו של <u>מר אילן אביסדריס ז"ל</u>.

14

<u>פרט עשרים ושניים</u>: (פ"א 17869/04 תחנת מוריה)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע התהאבדות שאותו ביצע המתאבד ████ בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נגרם מותו של <u>מר בניה יונתן צוקרמן ז"ל</u>.

<u>פרט עשרים ושלושה</u>: (פ"א 17869/04 תחנת מוריה)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע התהאבדות שאותו ביצע המתאבד ████ בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נגרם מותו של <u>מר אזולאי ליאור ז"ל</u>.

<u>פרט עשרים וארבעה</u>: (פ"א 17869/04 תחנת מוריה)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע התהאבדות שאותו ביצע המתאבד ████ בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום השבעה עשר – נגרם מותו של <u>מר נתנאל חבשוש ז"ל</u>.

15

**פרט עשרים וחמישה: (פ"א 17869/04 תחנת מוריה)**

**מהות העבירה:** ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א)(1) ו- (7) לצו בדבר הוראות
ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיפים 19-20, 14, ו- 2 לצו בדבר כללי
האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לניסיון גרימת
מותם של אחרים בכוונה, דהיינו:

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד ▇▇▇▇ בכוונה לגרום
למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
השבעה עשר – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות; וכן מת
המחבל המתאבד.                                                            ✓

**פרט עשרים וששה:**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות
לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968 ; וסעיף 51(א) לצו בדבר הוראות
ביטחון (יו"ש) (מס' 378), תש"ל – 1970.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בתחילת חודש מרץ 03' או בסמוך לכך קשר קשר עם
אחרים לגרום למותו של אחר.

דהיינו, במועד הנ"ל תיכנן הנאשם הנ"ל יחד עם הפעיל הצבאי ▇▇▇▇▇▇
להניח מטען חבלה באיזור בית-ג'יאלה ולהפעילו כנגד ג'יפ צבאי שיעבור במקום.
עפ"י התוכנית, בעת פיצוץ מטען החבלה לעבר הג'יפ הצבאי יפתחו הנאשם וחברו
בירי לעבר החיילים שבג'יפ וזאת בכוונה לגרום למותם.

הנאשם וחברו תיכננו לחטוף בסיום הפעולה את גופת החיילים ולהסתיר אותן
במקום מסתור וזאת ע"י לנהל מו"מ עם מדינת ישראל לשחרור אסירים
פלסטיניים.

הנאשם וחברה תיכננו לגייס למשימה זו עוד שלושה פעילים צבאיים שישתתפו
יחד עימם בביצוע הירי לעבר הג'יפ.

אולם, כעבור מספר ימים נעצרו הנאשם וחברו וכתוצאה מכך סוכלה תוכנית זו.

16

<u>פרט עשרים ושבעה</u> :

<u>מהות העבירה</u> : קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות
לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968; וסעיף 51(א) לצו בדבר הוראות
ביטחון (יו״ש) (מס׳ 378), תש״ל – 1970.

<u>פרטי העבירה</u> : הנאשם הנ״ל, באזור, בתחילת חודש מרץ 03׳ או בסמוך לכך קשר קשר עם
אחרים לגרום בכוונה למותו של אחר.

דהיינו, במועד הנ״ל תיכנן הנאשם הנ״ל לחטוף אוטובוס ישראלי ולהוביל אותו
לכנסייית המולד בבית-לחם וזאת ע״מ לנהל מו״מ עם מדינת ישראל לשחרור
אסירים. בהתאם לתוכנית שאותה רקם הנאשם: שני מתאבדים חמושים
בחגורות נפץ יעלו לאוטובוס ישראלי מלא בנוסעים ויורו לנתב האוטובוס לנסוע
לכנסייה בבית-לחם. במידה ונהג האוטובוס לא ייעתר להוראות המתאבדים
יאיימו עליו אלה בפיצוץ חגורות הנפץ.

עפ״י התוכנית, כאשר האוטובוס יגיע לבית-לחם יוכנסו כל נוסעיו לתוך
הכנסייה, והחוטפים יחלו בניהול מו״מ לשחרור אסירים פלסטיניים בתמורה
לשחרור נוסעי האוטובוס.

הנאשם תיכנן למלכד את החצר של הכנסייה במטעני חבלה ע״מ למנוע מכוחות
צה״ל מלהתקרב לכנסייה. בנוסף תיכנן הנאשם להציב בתוך הכנסייה שני
מתאבדים חמושים בבלוני-גז שיהיו מוכנים להתפוצץ בתוך הכנסייה במידה
וכוחות צה״ל יכנסו לכנסייה.

הנאשם עידכן את הפעיל הצבאי ███████ אודות התוכנית, וזה הביע
נכונות ליטול בה חלק.

בנוסף עידכן הנאשם את הפעיל הצבאי ███████ אודות התוכנית; וזה
התלהב מהרעיון וסיפר לו כי הוא מכיר אדם תושב הכפר וולמיר בשם
███ שהביע נכונות לבצע פיגוע התאבדות וכי ניתן לשלב אותו בביצוע
הפיגוע בהתאם לתוכנית שרקם הנאשם. ברשותו של ███████ היה מי-
חמנן ואצטון, והנאשם תיכנן לייצר באמצעות חומרים אלה וחומרים נוספים את
חגורות הנפץ שישמשו את המתאבדים.

עפ״י התוכנית שנרקמה, ע״מ להאיץ את ניהול המו״מ לשחרור האסירים תיכננו
הנאשם וחברו ███████ להניח על אחד החטופים מטען חבלה ולשלוח
אותו לכיוון כוחות צה״ל שיתאספו במקום ולפוצצו אותו עליהם. בסיום המו״מ
תיכננו הנאשם וחבריו להתנות את שחרור בני הערובה בהסעתם לעזה.

ביום 5/3/04 עידכן הנאשם את אחיו ███████ בדבר התוכנית שנרקמה;
אולם זה לא התלהב מהתוכנית וביקש מהנאשם כי ימשיך להוציא אל הפועל
פיגועי התאבדות.

כעבור מספר ימים נעצר הנאשם, וכך סוכלה תוכנית זו.

17.

<u>פרט עשרים ושמונה</u>:

<u>מהות העבירה</u>: קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות
לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968; וסעיף 51(א) לצו בדבר הוראות
ביטחון (יו״ש) (מס׳ 378), תשי״ל – 1970.

<u>פרטי העבירה</u>: הנאשם הנ״ל, באזור, בתחילת חודש מרץ 03׳ או בסמוך לכך קשר קשר עם
אחרים לגרום בכוונה למותו של אחר.

דהיינו, במועד הנ״ל תיכנן הנאשם הנ״ל יחד עם חברו ████████ לבצע פיגוע
התאבדות כפול, שבמסגרתו יתפוצץ אחד המתאבדים במקום חומה אדם
בישראל וזאת בכוונה לגרום למותם של אזרחים ישראליים, ובמקביל ימתין
מתאבד נוסף במכונית תופת בסמוך למקום שבו תתכנס הממשלה לצורך קבלת
החלטות ותגובה על הפיגוע; או-אז כאשר יגיע אחד השרים לישיבת הממשלה,
יפוצץ המתאבד השני את מכוניתו התופת בכוונה לגרום למותו של השר.

ברם, בסמוך לאחר-מכן נעצרו הנאשם וחברו וכך סוכלה תוכנית זו.

<u>פרט עשרים ותשעה</u>:

<u>מהות העבירה</u>: קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיף 22 לצו בדבר כללי האחריות
לעבירה (יו״ש) (מס׳ 225), תשכ״ח – 1968; וסעיף 51(א) לצו בדבר הוראות
ביטחון (יו״ש) (מס׳ 378), תשי״ל – 1970.

<u>פרטי העבירה</u>: הנאשם הנ״ל, באזור, בתחילת חודש מרץ 03׳ או בסמוך לכך קשר קשר עם
אחרים לגרום בכוונה למותו של אחר.

דהיינו, במועד הנ״ל תיכנן הנאשם וחברו ████████ להוציא לפועל פיגוע
התאבדות כפול בתוך שטח מדינת ישראל, עפ״י התכנון, אחד המתאבדים יעלה
לאוטובוס חומה נוסעים ויפוצץ את עצמו בתוך האוטובוס וזאת בכוונה לגרום
למותם של מספר רב של נוסעים – ואילו המתאבד השני ימתין בצד כשהוא לבוש
בבגדי כוחות ההצלה, כשברשותו מטען חבלה השוקל 25 ק"ג, וכאשר יתקרבו
למקום כוחות ההצלה יפוצץ המתאבד את עצמו וזאת בכוונה לגרום למותם של
כמה שיותר אזרחים ישראליים.

הנאשם וחברו תיכננו לציד את אחד המתאבדים במטען במשקל 25 ק"ג וזאת
ע"מ להגביר את עוצמת הפיצוץ והיקפו.

ברם, בסמוך לאחר-מכן נעצרו הנאשם וחברו וכתוצאה מכך לא יצאה תוכנית זו
אל הפועל.

P 2: 223

18

נאג'י      עאמר,      סרן
תובע      צבאי



**רשימת עדי התביעה:**

1. ‫(גובה הודאות הנאשם מיום 7/3/04 ומיום 9/3/04, ותופס‬ ‫כתב יד הנאשם מיום 7/3/04).‬

2. ‫(גובה הודאת הנאשם מיום 8/3/04 ועורך מסדר תמונות לנאשם‬ ‫מיום 8/3/04).‬

3. ‫(גובה הודאת הנאשם מיום 24/3/04 ותופס כתב ידו של הנאשם‬ ‫מיום 24/3/04).‬

4. ‫(עצור בת.ת. 1338/04).‬

5. ‫(עצור בת.ת. 1300/04).‬

6. ‫(עצור בת.ת. ).‬

7. ‫(עצור בת.ת. 1246.04).‬

8. ‫(עצור בת.ת. 1216/04).‬

9. ‫(עצור בת.ת. 1247/04).‬

‫ב"א 09891/04 מת"מ ירושלים: (פיגוע התאבדות בתוך אוטובוס קו 19)‬

10. ‫(פרטים בתביעה).‬

11. ‫(פרטים בתביעה).‬

12. ‫(פרטים בתביעה).‬

13. ‫(פרטים בתביעה).‬

14. ‫(פרטים בתביעה).‬

15. ‫(פרטים בתביעה).‬

16. ‫(פרטים בתביעה).‬

17. ‫(פרטים בתביעה).‬

18. ‫(פרטים בתביעה).‬

19. ‫(פרטים בתביעה).‬

20. ‫(פרטים בתביעה).‬

21. ‫(פרטים בתביעה).‬

22. ‫(פרטים בתביעה).‬

23. ‫(פרטים בתביעה).‬

24. ‫(פרטים בתביעה).‬

25. ‫(פרטים בתביעה).‬

26. ‫(פרטים בתביעה).‬

27. ‫(פרטים בתביעה).‬

28. ‫(פרטים בתביעה).‬

19



29. (פרטים בתביעה).
30. (פרטים בתביעה).
31. (מסמכים רפואיים הנוגעים למר ███).
32. (מסמכים רפואיים הנוגעים לגבי ███).
33. (מסמכים רפואיים הנוגעים לגבי ███).
34. (מסמכים רפואיים הנוגעים לגבי ███).
35. חוו"ד מעבדת חבלה (תועבר בהמשך).
36. מסמכים רפואיים.
37. רשימות נפגעים (רשומה מוסדית).

(פ"א 17869/04 <u>תחנת מוריה</u>): (פיגוע התאבדות בתוך אוטובוס קו 14)



38. (פרטים בתביעה).
39. (פרטים בתביעה).
40. (פרטים בתביעה).
41. (פרטים בתביעה).
42. (פרטים בתביעה).
43. (פרטים בתביעה).
44. (פרטים בתביעה).
45. (פרטים בתביעה).
46. (פרטים בתביעה).
47. (פרטים  בתביעה).
48. (פרטים בתביעה).
49. (מסמכים רפואיים).
50. (פרטים בתביעה).
51. (מסמכים רפואיים).
52. (פרטים בתביעה).
53. (מסמכים רפואיים).
54. (פרטים בתביעה).
55. (פרטים בתביעה).
56. (פרטים בתביעה).
57. (פרטים בתביעה).
58. (פרטים בתביעה).
59. (פרטים בתביעה).
60. (מסמכים רפואיים).

20



61. (פרטים בתביעה).
62. (מסמכים רפואיים).
63. (פרטים בתביעה).
64. (מסמכים רפואיים).
65. (פרטים בתביעה).
66. (פרטים בתביעה).
67. (פרטים בתביעה).
68. (פרטים בתביעה).
69. (מסמכים רפואיים).
70. (פרטים בתביעה).
71. (פרטים בתביעה).
72. (פרטים בתביעה).
73. (מסמכים רפואיים).
74. (פרטים בתביעה).
75. (פרטים בתביעה).
76. מסמכים רפואיים (רשומה מוסדית).
77. (דו"ח תפיסה).
78. (דוגמות גנטיות).
79. (דוגמות גנטיות).
80. (זכ"ד).
81. (מזכר).
82. חווי"ד מעבדת חבלה (תועבר בהמשך).
83. (דו"ח תפיסה וסימון).
84. (חווי"ד פתולוגית).
85.
86. (חווי"ד פתולוגית).
87.
88. (חווי"ד פתולוגית).
89.
90. (חווי"ד המכון הלאומי לרפואה משפטית).
91. (חווי"ד פתולוגית).
92. (חווי"ד פתולוגית).
93. תעודות פטירה.