
PLAINTIFF'S EXHIBIT 291

[Line numbering in Hebrew original]

Date: 12 Tishri 5765
September 27, 2004

File Number: 2268/04

Prosecutor: We have not yet filed the materials, since we have spoken with the Defense Attorney and it seemed possible that we might come to agreed-upon facts. Therefore the evidentiary material that the Prosecution was supposed to file was not filed.

Defense Attorney: No objection to the material being filed.

## DECISION

**The Defendant's statement dated March 30, 2004, is accepted and marked Prosecution/1.**
**The Defendant's statement dated April 15, 2004, is accepted and marked Prosecution/2.**

The Prosecutor will file the rest of the evidentiary material which was agreed upon in the previous hearing, by written notice later today.

**Given and notified this day, September 27, 2004, in public and in the presence of the parties.**

| | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **Presiding Judge** | **Judge** |

Prosecutor: We have reached a plea bargain, according to which the Defendant will move to withdraw his not guilty plea, and will admit in writing to the indictment, and the parties will argue as to penalty.

**The Court makes clear to the parties that it is not bound by the plea bargain arranged between them.**

Defense Attorney: I confirm the statement of my colleague, and move to allow the Defendant to withdraw his not guilty plea.

## DECISION

We permit the Defendant to withdraw his not guilty plea.

**Given and notified this day, September 27, 2004, in public and in the presence of the parties.**

| | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **Presiding Judge** | **Judge** |

[Stamp] P 2: 282

1

Defense Attorney: I have explained the indictment to my client, he understands it and admits to it.

Defendant: My defense attorney has explained the indictment to me, I understand it and admit to it.

## VERDICT

On the basis of his admission of guilt, we convict the Defendant of the offenses attributed to him the indictment, that is, throwing a burning object, 2 offenses of placing a bomb, 19 offenses of intentionally causing death, and 2 offenses of attempting to cause death, pursuant to Regulation 58 of the Defense (Emergency) Regulations and Section 51 of the Security Provisions Order.

**Given and notified this day, September 27, 2004, in public and in the presence of the parties.**

| [Signature] | [Signature] | [Signature] |
|:---:|:---:|:---:|
| **Judge** | **Presiding Judge** | **Judge** |

-2-

[Stamp] P. 2: 282 [continued]

[Line numbering in Hebrew original]

Date: 12 Tishri 5765                                                                    File Number: 2268/04
September 27, 2004

Prosecutor: I submit the criminal record (**accepted and marked ProsecutionM/1**). There are no suspended sentences in the record that may be activated.

Defense Attorney: No evidence as to penalty.

Prosecutor, summing up: The Defendant stands before us for the most serious of crimes that humankind encounters. The Defendant received a proposal from his accomplices, as detailed in the indictment, and brought a suicide terrorist into the territory of Israel. The Defendant knew that the person that he was supposed to bring into Israel intended to blow himself up and kill as many civilians as possible. Indeed, in line with the plan, on January 29, 2004, the Defendant brought in a suicide terrorist, carrying on his person explosives, and took him to a place where there was a concentration of people, the Malha Mall in Jerusalem. From there on the suicide terrorist's path was prepared to carry out his vile intention, thanks to the Defendant who was able to bring him in, and avoid the security agencies who fight against this phenomenon. The suicide terrorist boarded a Number 19 bus, and detonated himself, thus causing the deaths of **the late Avraham Balhasan, the late Hannah Bonder, the late Anat Darom, the late Yechezkel Goldberg, the late Vladi Zadik Menbere, the late Viorel Octavian Florescu, the late Rose Boneh, the late Dana Itach, the late Roman Hondiashvili, the late Eli Tzipora, the late Natalia Gamril.**

After carrying out that which was described above, the Defendant returned to his accomplices, and continued to plan the next terrorist attack, this being while the families of those killed had not finished mourning for their family members. On February 22, 2004, the Defendant received a further proposal to transport another suicide terrorist into the State of Israel. The Defendant was pleased to get the proposal, and took on the mission. Indeed, the suicide terrorist, who had been brought into the territory of Israel by the Defendant, blew himself up on a bus. This explosion killed **the late Yaffa Ben Shimol, the late Yuval Ozana, the late Rahamim Doga, the late Yehuda Haim, the late Ilan Avisidris, the late Benaya Yehonatan Zuckerman, the late Lior Azulay, the late Netanel Havshush.**

When we look at the Defendant's actions, we cannot think that the Defendant was influenced by the planners. We can clearly see from counts 1, 2, 3 of the indictment that he himself attempted to cause the deaths of other people. We see in the Defendant a man for whom the killing of others is his course. The Defendant's actions, even though he was not an accomplice to the planning from the outset, begin at a critical phase. His accomplices inform him
. The Defendant consents. At the same time his accomplices have completed preparation of the explosives. This is not the kind of

[Stamp] P 2: 283

3

instance in which the planners planned everything, and at the last minute called on the Defendant to take the suicide terrorist to Israel, although in that instance too the Defendant had the opportunity of refusing or agreeing. The beginning of the Defendant's involvement shows that he was a central figure in planning the terrorist attacks that were executed, and as a result of these terrorist attacks, in addition to the large number of persons killed, there is also a large number of wounded. With a person for whom the value of life is not a value for him, we should relate to him and remove him forever from human society. I would therefore request that the Court sentence the Defendant to a term of life imprisonment for each person who was murdered by him, and a further term of life imprisonment for the rest of the crimes of which he was convicted. This was the mass wounding of people, as attributed to him in the two counts of the indictment of attempting to cause death. I would request that the terms of life imprisonment be served cumulatively.

Defense attorney, summing up: The question is asked, who is guilty. My client admitted in writing to the indictment, but the question still remains as to whether he is guilty, or whether there is another party who is more guilty than he. I have spoken with my client on many occasions, and I have come to the conclusion that my client did not know any of the people who were killed in the terrorist attacks, and has no connection with them. On the contrary, he said to me that, were we to meet, at some time, in some other place, we might perhaps have been friends, or we might have had a commercial relationship, or we might have been enemies. He meant that, if he would have met with the murder victims, perhaps there would have been a relationship between them

-3-

[Stamp] P 2: 283 [continued]

[Line numbering in Hebrew original]

Date: 12 Tishri 5765  
September 27, 2004

File Number: 2268/04

of some kind, which would have lasted like any other relationship. But fate decided that my client meet these people in most unbalanced circumstances.

One nation conquers another, rapes its land and its rights, although it has no right to anything. People stand at checkpoints for hours on end, for no reason, and it is the soldier who decides whether to let a man go home, or to arrest him. This shows that there is no respect for the individual. The last thing that the soldier is thinking about is the dignity of that individual. It matters not to him if that man is going to look for food for his family, or to visit a friend in the hospital. The decision derives from the mind, and the decision of the soldier at the checkpoint. Maybe he'll let him pass, maybe not. My client went on with his life, and as time passed, the questions accumulated: "What crime did my people commit, that we should be discriminated against in this way, why should we suffer every day, why should we sleep in fear that one day they will come and knock on the door, or break it down, and then arrest members of the family." In conversation between himself and his friends, they asked, "Why?" This question was addressed to me by my client, ·                                           Until now, I have not been able to give them the answer, although I know it. Why should a young man, of the age of my client, decide to die? To die does not necessarily mean to lose one's life; death is also to live in jail for all of one's life. He would die before that in his own home. There is no difference between his living conditions and those of his friends. I think the time has come to find a man with the courage to say who the real guilty party is. Is it the Defendant, who by chance is here today? Tomorrow some other person will be here. All of these acts will continue to repeat themselves. The time has come to respond to the question of who is the guilty party. I say that the guilty party is the occupation. With the disappearance of the occupation, the reasons to die will disappear. All that I ask is to find a convincing answer for Mohamed's mother, his sister, his neighbor, and his friend.

With regard to the penalty requested by the Prosecutor, it is not strange, in spite of the fact that we are waiting, the same story repeats itself. Ten years ago and today, the penalty remains the same penalty. I leave the decision to the discretion of the Court, but I would ask the Court to gather up the courage and answer my client's question, "Why? Who is the real guilty party?"

Defendant, in his final statement: I have nothing to say.

[Stamp] P 2: 284

## DECISION

The sentence will be handed down on a date to be determined by the Court Secretariat, in coordination with the judges on the panel.

**Given and notified this day, September 27, 2004, in public and in the presence of the parties.**

| [Signature] | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **Presiding Judge** | **Judge** |

-4-

[Stamp] P 2: 284 [continued]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, et al.,

           Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, et al.,

           Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1. The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 282-284.

2. I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3. To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 282-284.

_____
Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
26 day of February, 2014

_____
Notary Public

HIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

תאריך: י"ב תשרי, תשס"ה
27 ספטמבר, 2004

תיק מס': 2268/04

1. תובע: טרם הגשנו את החומר כיוון ששוחחנו עם הסניגור והיה מצב שנגיע לעובדות
2. מוסכמות. על כן לא הוגש חומר הראיות שהתביעה הייתה אמורה להגיש.
3.
4. סניגור: אין התנגדות שהחומר יוגש.
5.
6.
7. **ה ח ל ט ה**
8. אמרת הנאשם מיום 30/03/04 מתקבלת ומסומנת ת/1.
9. אמרת הנאשם מיום 15/04/04 מתקבלת ומסומנת ת/2.
10.
11. התובע יגיש את יתר חומר הראיות עליו הוסכם בישיבה הקודמת בהודעה בכתב
12. בהמשך היום.
13.
14. **ניתן והודע היום, 27/09/2004, בפומבי ובמעמד הצדדים.**
15.
16.
17. _____   _____   _____
    שופט        אב"ד        שופט
18.
19. תובע: הגענו להסדר טיעון, במסגרתו הנאשם יבקש לחזור בו מכפירתו ויודה בכתב
20. האישום והצדדים יטענו לעונש.
21.
22. **ביהמ"ש מבהיר לצדדים כי אינו כבול להסדר הטיעון שנקשר ביניהם.**
23.
24. סניגור: אני מאשר את דברי חברי ומבקש להתיר לנאשם לחזור בו מכפירתו.
25.
26.
27. **ה ח ל ט ה**
28. אנו מתירים לנאשם לחזור בו מכפירתו.
29.
30. **ניתן והודע היום, 27/09/2004, בפומבי ובמעמד הצדדים.**
31.
32.
33. _____   _____   _____
    שופט        אב"ד        שופט
34.
35. סניגור: הסברתי למרשי את כתב האישום, הוא מבין אותו ומודה בו.
36.
37. נאשם: סניגורי הסביר לי את כתב האישום, אני מבין אותו ומודה בו.
38.
39. **ה כ ר ע ת - ד י ן**
40.
41. על יסוד ההודאה באשמה, אנו מרשיעים את הנאשם בעבירות המיוחסות לו בכתב
42. האישום, היינו יידוי חפץ מבעיר, 2 עבירות של הנחת פצצה, 19 עבירות של גרימת
43. מוות בכוונה ו-2 עבירות של ניסיון לגרימת מוות בכוונה, לפי תקנה 58 לתקנות
44. ההגנה וסעיף 51 לצו בדבר הוראות בטחון.
45.
46. **ניתן והודע היום, 27/09/2004, בפומבי ובמעמד הצדדים.**
47.
48.
49. _____   _____   _____
    שופט        אב"ד        שופט

-2-

תאריך: י"ב תשרי, תשס"ה
27 ספטמבר, 2004

תיק מס': 2268/04

1. 
2. תובע: אני מגיש גיליון רישום פלילי (מתקבל ומסומן ת.מ/1). אין ברישום תנאי בר
3. הפעלה.
4. 
5. סניגור: אין ראיות לעונש.
6. 
7. תובע מסכם: הנאשם עומד בפנינו בגין העבירות החמורות ביותר שהמין האנושי
8. נתקל בהן. הנאשם קיבל הצעה מחבריו, כפי שמפורט בכתב האישום, והוביל מחבל
9. מתאבד לתוך שטח ישראל. הנאשם ידע שהאדם שהוא אמור להכניס לישראל
10. מתכוון לפוצץ את עצמו ולהרוג כמה שיותר אזרחים. אכן לפי התכנון הנאשם הכניס
11. ביום 29/01/04 מחבל מתאבד שנשא על גופו חומר נפץ, ולקח אותו למקום בו יש
12. ריכוז אוכלוסין, קניון מלחה בירושלים. מכאן והלאה דרכו של המתאבד הייתה
13. סלולה לביצוע זממו הנתעב, הודות לנאשם אשר הצליח להכניס אותו ולהתחמק
14. מגורמי הביטחון, שנלחמים בתופעה זו. המתאבד עלה על קו 19 ופוצץ את עצמו, בכך
15. גרם למותם של **אברהם בלחסן ז"ל, חנה בונדר ז"ל, ענת דרום ז"ל, יחזקאל
16. גולדברג ז"ל, ולדי צדיק מנברה ז"ל, ויורל אוקטביא פלורסקו ז"ל, רוזה בונה ז"ל,
17. דנה איטח ז"ל, רומן חונדיאשווילי ז"ל, אלי צפורה ז"ל, נטליה גמריל ז"ל.**
18. לאחר שביצע את המתואר לעיל, חזר הנאשם לחיק חבריו והמשיך לתכנן את הפיגוע
19. הבא, זאת בעוד משפחות החרוגים לא סיימו להתאבל על משפחתם. בתאריך
20. 22/02/04 הנאשם קיבל הצעה נוספת להסיע עוד מחבל מתאבד לתוככי מדינת
21. ישראל. הנאשם שש להצעה זו ולקח על עצמו את המשימה. אכן המחבל המתאבד,
22. שמוכנס לשטח ישראל על ידי הנאשם, מפוצץ את עצמו באוטובוס. בפיצוץ הזה
23. נרצחים **יפה בן שימול ז"ל, יובל אוזנה ז"ל, רחמים דוגה ז"ל, יהודה חיים ז"ל,
24. אילן אביסדריס ז"ל, בניה יונתן צוקרמן ז"ל, אזולאי ליאור ז"ל, נתנאל חבושוש
25. ז"ל.**
26. כשאנו מסתכלים על מעשיו של הנאשם, הרי אין אנו יכולים לחשוב כי הנאשם
27. הושפע על ידי המתכננים. עיניינו רואות מפרטי האישום 1,2,3, שהוא בעצמו ניסה
28. לגרום למותם של אנשים נוספים. אנו רואים בנאשם אדם שהריגת אנשים היא
29. דרכו. מעשיו של הנאשם, על אף שלא היה שותף בתכנון מלכתחילה, הרי הינם
30. מתחילים מזמן קריטי. שותפיו מודיעים לו כי זקוקים הם לאדם שיכניס מחבל
31. מתאבד לשטח ישראל. הנאשם מסכים. בד בבד השלימו שותפיו את הכנת חומר
32. הנפץ. זה לא מסוג המקרים שהמתכננים תכננו את הכל וברגע האחרון הזמינו את
33. הנאשם לקחת את המתאבד לישראל, על אף שגם במקרה כזה ישנה אפשרות
34. לנאשם לסרב או להסכים. תחילת מעורבותו של הנאשם מראה כי הוא היה גורם
35. מרכזי בתכנון הפיגועים שנעשו, וכתוצאה מהפיגועים האלה, בנוסף למספר הרב של
36. החרוגים, הרי ישנם מספר רב של פצועים. אדם שערך החיים אינו ערך בשבילו, הרי
37. כך אנו צריכים להתייחס אליו ולהרחיק אותו לצמיתות מחברת אדם. על כן אבקש
38. מביהמ"ש לגזור על הנאשם מאסר עולם בגין כל אדם שנרצח תחת ידו, וכן מאסר
39. עולם נוסף בגין יתר העבירות בהן הורשע. המדובר בפציעה רבה של אנשים, כפי
40. שמיוחס לו בשני פרטי אישום של ניסיון לגרימת מוות. אבקש שמאסרי העולם
41. ירוצו במצטבר.
42. 
43. סניגור מסכם: נשאלת השאלה מי אשם. מרשי הודה בכתב האישום, אולם עדיין
44. קיימת השאלה האם הוא אשם, או שיש צד אחר שיותר אשם ממנו. דיברתי עם
45. מרשי הרבה פעמים, והגעתי למסקנה שמרשי לא הכיר אף אחד מהאנשים שנרצחו
46. בפיגועים, ואין לו קשר אליהם. להיפך, הוא אמר לי שאם היינו נפגשים מתישהו
47. במקום אחר, אולי היינו חברים, או שהיה בינינו קשר מסחרי, או שאולי היינו
48. אויבים. הוא התכוון שאם הוא היה נפגש אם הנרצחים, אולי היה ביניהם קשר

-3-

תאריך: י"ב תשרי, תשס"ה
27 ספטמבר, 2004
תיק מס׳: 2268/04

1. כלשהו שהיה מתקיים כמו כל קשר אחר. אבל הגורל החליט שמרשי יפגוש את
2. האנשים האלה בנסיבה לא מאוזנת בכלל.
3. עם כובש עם אחר, אונס את אדמתו ואת זכויותיו, למרות שאין לו זכות לשום דבר.
4. עומדים במחסומים שעות על גבי שעות, בלי כל סיבה, והחייל הוא זה שמחליט
5. לשחרר את האדם לביתו, או לעוצרו. בכך אין כל כבוד לאדם. הדבר האחרון
6. שהחייל חושב עליו הוא הכבוד של אותו אדם. לא מעניין אותו אם האדם הולך
7. לחפש אוכל למשפחה, או לבקר חבר בבית החולים. ההחלטה נובעת מהשכל
8. והחלטות החייל שנמצא במחסום. אולי הוא יאפשר לו לעבור ואולי לא. מרשי
9. המשיך בחייו, ועם הזמן השאלה הצטברו השאלות, "מה הפשע שעשה עמי כדי
10. שיקפחו אותנו בצורה כזו, למה עלינו לסבול יום יום, למה עלינו לישון בפחד שמה
11. יום אחד יבואו לדפוק בדלת או יפרצו אותה, ואחר כך יעצרו אנשים מהמשפחה".
12. בשיחה בינו לבין חבריו הם שאלו "למה?". השאלה הזו הופנתה אלי על ידי מרשי
13. וכן על ידי הרבה עצורים אחרים. עד עכשיו לא יכולתי לתת להם את התשובה,
14. למרות שאני יודע אותה. למה מחליט בחור בגילו של מרשי למות? למות זה לא
15. אומר לאבד את החיים בהכרת, מוות זה גם להיות בכלא לכל החיים. הוא היה מת
16. גם לפני כן בביתו. אין הבדל בין תנאי המחייה שלו לבין אלה של חבריו. אני חושב
17. שהגיע הזמן שנמצא אדם עם אומץ כדי שיגיד מי הוא האשם האמיתי. האם זה
18. הנאשם, שבמקרה נמצא כאן היום. מחר יהיה כאן אדם אחר. כל המעשים הללו
19. ימשיכו לחזור על עצמם. הגיע הזמן שנענה לשאלה מי האשם. אני אומר שהאשם
20. הוא הכיבוש. עם העלמות הכיבוש, יעלמו הסיבות למוות. כל מה שאני מבקש זה
21. למצוא תשובה משכנעת לאימו של מחמד, לאחותו, לשכנו ולחברו.
22. בקשר לעונש שביקש התובע, זה לא מוזר למרות שאנחנו מחכים, הסיפור חוזר על
23. עצמו. לפני עשר שנים והיום, העונש נשאר אותו עונש. אני משאיר את ההחלטה
24. לשיקול דעת ביהמ"ש, אולם אני מבקש מביהמ"ש שיאזור אומץ ויענה לשאלת
25. מרשי "למה? מי הוא האשם האמיתי".

הנאשם בדברו האחרון: אין לי מה לומר.

<u>ה ח ל ט ה</u>

גזר הדין יינתן בתאריך שיקבע על ידי מזכירות ביהמ"ש בתיאום עם שופטי ההרכב.

ניתן והודע היום, 27/09/2004, בפומבי ובמעמד הצדדים.

_____       _____       _____
   שופט                    אב"ד                    שופט

-4-

P 2: 284