PLAINTIFF'S
EXHIBIT
298

Date: 25 Elul 5766                                                          Case No.: 2305/04
     September 18, 2006

**The Judea Military Court**    *Verdict*

Before the Honorable President of the Court:    Major Yair Tirosh
                           Judge:    Major Dalia
                                    Kaufman
                           Judge:    Major Amir Dahan

**The military prosecution**
(by Captain Sagiv Lichtman)

- v. -

**The Defendant: Ahmed Mohamed Ahmed Saad, Identity No. 911744878 / IPS**
(by Counsel Adv. Osama Ouda)

**Shift supervisor: Corporal Yulia Gelman**

---

## Verdict

**Honorable Judge Major Amir Dahan**

A.    The Defendant, Ahmed Mohamed Ahmed Saad, Identity No. 911744878 of Douha, was prosecuted in an indictment in Case 2305/04 that was filed with this Court on May 23, 2004.

B.    **The evidential meaning of the procedural arrangements between the parties**

1.    According to the procedural arrangements between the parties, the Court will consider the statements PW/3,9 to be proven facts, but a conviction according to them will require additional evidence of corroborative evidence type.

    As is common practice concerning statements in writing that have been filed in contradiction to oral testimony of individuals who are accomplices to or are involved in an offense in an offense deal, an increased level of additional evidence of corroborating evidence will be required.

2.    According to the procedural arrangements between the parties, the Court will consider the rest of the material in the statements of the Defendant to be proven facts, without a need for additional evidence, and the statements of the Defendant will be considered as statements that have been given freely and voluntarily.

[Stamp] P2: 324

1

3.  In counts 15-22, there is consent and the Defendant admitted therein the offense of aiding in causing death, and in count 23 aiding in an attempt to cause death.

4.  In counts 3-14, the parties agreed concerning the correctness of all of the factual details of the event, but not concerning the mental foundation that is required for convicting the Defendant of the offenses of aiding in causing death.

5.  The prosecution has informed us that it will not assert these counts but rather aiding in causing death.

6.  Concerning counts 1, 2, 24, the Defendant asserts his not guilty plea.

[Stamp] P2: 324 [continued]

Date: 25 Elul 5766                                            Case No.: 2305/04
      September 18, 2006

7.   I have determined the types of additional evidence according to evidence laws that would
     be used if the statements had been heard before us as actual testimony and had the material
     been filed pursuant to Sections 10 A, 54 (A) A or 12 of the Evidence Ordinance (New
     Version), 5731-1971. This is all within the context of the giver of the statement to the
     Defendant and the legal proceeding against him.

**C.   Establishing factual findings and their legal significance**

**1.   First count of the indictment: (possession of explosive material to a total weight of 4.5
     kg on two occasions)**

     **Discussion:**

     **Key evidence:** The key evidence is the statement of the Defendant P/2 from page 1, line
                 20 onward, where the Defendant describes how ██████████ brought the
                 explosives, how he elaborated his knowledge concerning its composition
                 and properties and how that Defendant [sic] in his home and started to try
                 it.

     **Additional evidence:**  According to the consent of the parties, the statements were filed as
                 consent to their content.

     **The result is that I suggest to my colleague to convict the Defendant of this count.**

**2.   Second count: (conspiring to make a bomb with ██████████ and ██████████ )**

     **Key evidence:** The key evidence is the statement of the defendant P/16 and P/2. This
                 statement was filed, as set forth, with full consent, without any need for
                 additional evidence.

The Defendant explains in his statement P/6 page 5 from line 26 how he conspired with
others to make explosives for the purpose of attacks on IDF soldiers; the mental foundation
is confirmed by an inspection of the statement, in which the Defendant declares the
conspiracy with additional people and his extensive knowledge of bomb making, all this
being aimed against IDF soldiers in the Area.

[Stamp] P2: 325

3

In addition, the Defendant adds in P/2 page 1 line 6 onward how the threesome learned to make explosive devices, how it convened and how it planned, while there was a clear mental foundation of knowledge and initiative in planning the future attacks using the bombs that would be made.

**The result is that I suggest to my colleague to convict the defendant of this count.**

3.   **Third to fourteenth counts of the indictment (suicide attack on Line 19)**

**The contentions of the prosecution:**

Due to the statements of the Defendant, which are supported by the statements of █████████ █████ all of which were filed with consent to their content, it is not possible that the Defendant did not know of the purpose of the acetone and the attack and therefore he demonstrates a mental foundation as required.

[Stamp] P2: 325 [continued]

4

Date: 25 Elul 5766                                              Case No.: 2305/04
      September 18, 2006

**Contentions of the defense:**

The Defendant carried out that which has been attributed to him in the indictment without knowledge that his acts constituted aiding in a suicide attack and did not know that the quantity of acetone that he had purchased and his other acts set forth in the indictment may be used for an attack.

The defense counsel focused his contentions on an attempt to convince the Court that the excerpts from the statements that were filed consensually and showing the knowledge and intent of the Defendant relate to the second attack.

**Discussion:**

Indeed, the prosecution is right. The statements of the Defendant and the statements of ▮▮▮▮ ▮▮▮▮ leave no room for any doubt. I shall cite some of them on the matter of the order of the things and I shall show that there is no doubt that the Defendant knew that he was providing material that was vital for preparing a large quantity of explosives for the purpose of murderous attacks.

Before I go into detail with the intent of examining the contentions of the parties, I shall state the meaning of consensual filing of written evidence.

Consensual filing of written evidence is treated as though the witnesses attested that which is written in their statements.

I must already emphasize now that the interpretation by which detrimental parts of the statements must be chosen instead of relating to beneficial ones is not consistent with the spirit of criminal law evidence rules that are used in it and in my opinion does not constitute correct interpretation of the rule in the Appellate Court.

Facts are facts and testimony is testimony and consent does not mean choosing and discriminating from among the facts based on the question of which party they serve.

**The statements of the Defendant:**

P/2 page 2 line 12, a citation that does not require an explanation:

                                                        [Stamp] P2: 326

5

*Even I alone had made small quantities of hydrogen peroxide and acetone, it would be enough to make large quantities of explosives afterward"*

<u>On page 3 of P/2</u>, the Defendant states his great expertise in the secret of making explosives in large quantities and of different types, including chemical formulas and a professional evaluation of types of high explosives.

<u>On P/ 4 line 11</u>, intent and knowledge become, means and the Defendant makes genuine laboratory infrastructures to start making sophisticated explosives in quantities.

[Stamp] P2: 326 [continued]

6

Date: 25 Elul 5766                                                                    Case No.: 2305/04
         September 18, 2006

<u>In P/4 page 7 line 20</u>, the Defendant states the following:

>   "*Q. Tell me what* ████████████ *told you before the first attack that occurred in Jerusalem.*

>   *Q. Did you know what exactly they were going to do with the explosives?*

>   *A. Of course I knew. I knew that they were going to take explosives and carry out an attack; I did not know exactly that it was going to be a suicide attack, this does not matter to me....*

>   *Q. And if you had known that it was going to be a suicide attack, then what?*

>   *A. Then it is better, there is no difference and there is no problem at all.*

>   *Q. When you started this activity, did you know what you were going to do?*

>   *A. Yes, I knew and understood everything, there is no problem.*

>   *Q. Okay, what was behind the first attack in Jerusalem ...."*

This statement clearly shows that it deals with **the first attack** and the mental foundation of the people before it, and it shall be emphasized that his knowledge of the results of death are enough, regardless of whether the fuse would be human or not. The Defendant came and shuffled the cards, without caring what type of attack he would be aiding.

The statements of the Defendant are further strengthened by P/1 page 7 line 7, in which the Defendant describes how back in 2003 ████████

[Stamp] P2: 327

7

We shall point out that these statements were filed without a need for additional evidence as evidence of the veracity of their content.

The defense counsel relies in his summations on the statements of the Defendant in Hebrew and in Arabic, which reveal that the Defendant did not know (or did not know exactly) what the acetone that he had brought to ████████ would be used for.

This interpretation cannot hold, as the Defendant was involved together with ████████████ in the preparation of explosives using acetone in quantities and with knowledge, while acting in obedience to the instructions of ████████████ to execute suicide attacks.

Support from the statements of ████████████

Further support of the fact that the Defendant had full mental foundations to help cause intentional death in the first attack set forth in counts 3-14 appears in the testimonies of ████████ ████████ P/20 and P/19.

In P/20 that was filed with full consent to its content, ████████ says as follows (p. 1 line 13-18)

████████

P/20 page 2 line 17

> *Q. Okay. Do you have something to add concerning the first suicide attack? That you did in Jerusalem? ......*

> *Did* ████████████ *buy something before the attack.*

> *Yes, he bought 20 liters of acetone for NIS 400 from* ████████████ *in the Douha area. He has a store before Deheyshe Refugee Camp.*

[Stamp] P2: 327 [continued]

8

Date: 25 Elul 5766                                                          Case No.: 2305/04
        September 18, 2006

> *Why did he buy acetone?*
>
> *A. Because I requested it from him for a suicide attack*
>
> *Q. And who is the suicide terrorist who performed the second suicide attack...*

The foregoing indicates in aggregate that the Defendant was well aware before the first attack
(with the suicide terrorist Ali Ja'ara – Line 19) what the acetone that he had purchased before
and after the attack was intended for and anticipated the deadly outcome and the massacre that
could have resulted from his acts.

Therefore, I suggest to my colleague to convict the Defendant of aiding in causing intentional
death (counts 3-13 of the indictment) and aiding in an attempt to cause intentional death, count
14.

### Counts 15-23 (suicide attack on line 14)

The Defendant admitted the facts of these counts and there is an agreement as set forth in Section
B3 of this verdict.

Therefore, I suggest to my colleague to convict the defendant of counts 15-23 of the Indictment,
of aiding in causing intentional death (counts 15-22) and aiding in an attempt to cause intentional
death, count 23.

### Count 24: (conspiring with ███████████ to carry out a suicide attack)

Key evidence: In his statement P/16 page 1, lines 21-28, the Defendant talks about the case of
charge No. 24 in full. He describes the conspiracy that was interrupted by his arrest, in the
framework of which he was supposed to prepare an explosive device with 12 kg of explosives in
order for ████████ [Translator's note: as written] to carry out an attack using it.

The statements of the Defendant provide both the factual foundation of the conspiracy and the
mental foundation, including knowledge and anticipation of the outcome.

Because the parties have agreed to file the statement of the Defendant as evidence for the
veracity of its content without qualification, I suggest to my colleagues to convict the Defendant
of this count.

[Stamp] P2: 328

9

<u>**Results of the findings**</u>

I suggest to my colleagues to convict the Defendant of the following offenses:

1. **Aiding in causing intentional death** – an offense pursuant to Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Section 14 of the Security Provisions Order (Judea and Samaria) (No. 225), 5728-1968. **(19 offenses)**

2. **Aiding in an attempt to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 14, 19, 20 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968. **(2 offenses)**

3. **Conspiring to cause intentional death** – an offense under Section 51 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and pursuant to Sections 21, 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968. **(one offense)**

[Stamp] P2: 328 [continued]

10

Date: 25 Elul 5766                                              Case No.: 2305/04
     September 18, 2006

4. **Conspiring to make a bomb** – an offense pursuant to Section 22 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968, Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970. **(one offense)**

5. **Possession of explosives** 1968 Section 53 (A) (3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970. **(one offense)**.

**Honorable Judge Major Yair Tirosh**

I agree.

**Honorable Judge Major Dalia Kaufman**

I agree.

**Conclusion**

Decreed as delivered by Judge Dahan.

Due to a technical problem, the arguments of the decision were forwarded to the parties belatedly.

**Handed down this day, September 18, 2006, in chambers.**

| [Signature] | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **President of the Court** | **Judge** |

[Stamp] P2: 329

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                  Plaintiffs,

   vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                  Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.    The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P2: 324-329.

2.    I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.    To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P2: 324-329.

Rina Ne'eman

ss.: New Jersey

On the [28] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014

_____
Notary Public

MIRUT J MHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D.# 2332704

תאריך: כ"ה אלול, תשס"ו       תיק מס': 2305/04
18 ספטמבר, 2006

# בית המשפט הצבאי יהודה

בפני כב' האב"ד: רס"ן יאיר תירוש
השופטת: רס"ן דליה קאופמן
השופט: רס"ן אמיר דהאן

התביעה הצבאית
(באמצעות סרן שגיב ליכטמן)

נגד

הנאשם: אחמד מוחמד אחמד סעד ת.ז. 911744878 / שב"ס
(באמצעות ב"כ עו"ד אוסאמה עודה)

רמ"שית: רב"ט יוליה גלמן

## הכרעת דין

## כב' השופט רס"ן אמיר דהאן

א . הנאשם, אחמד מחמד אחמד סעד ת.ז 911744878 מדוחח, הועמד
לדין בכתב אישום בתיק 2305/04 שהוגש ביום 23/5/04 לבית משפט זה.

ב. **המשמעות הראייתית של ההסדרים הדיוניים בין הצדדים**

1. ע"פ ההסדרים הדיוניים בין הצדדים יראה בית המשפט באמרות עת/3,9
עובדות שהוכחו, אך הרשעה על פיהן תדרוש תוספת ראייתית מאמתת מסוג
"דבר לחיזוק".

כמקובל לענייו אמרות בכתב שהוגשו בסתירה לעדות בעיפ או אמרות בכתב
ובעיפ של שותפים לעבירה או מעורבים ב"עסקת עבירה" תידרש תוספת
ראייתית מוגברת מסוג "דבר לחיזוק".

2. ע"פ ההסדרים הדיוניים בין הצדדים יראה בית המשפט בשאר החומר
באמרות הנאשם עובדות שהוכחו, ללא צורך בתוספת ראייתית ויראו
באמרות הנאשם אמרות שנתגנו באופן חופשי ומרצון.

3. בפרטי אישום 22-15 ישנה הסכמה והנאשם הודה בהם בעבירת סיוע לגרימת
מוות ובפרט 23 סיוע לנסיון לגרימת מוות.

4. בפרטי האישום 14-3 הסכימו הצדדים על נכונותם של כל הפרטים
העובדתיים של האירוע אך לא ליסוד הנפשי הנדרש להרשיע את הנאשם
בעבירות של סיוע לגרימת מוות.

5. התביעה הודיעה לנו כי לא תעמוד בפרטים אלה אלא על סיוע לגרימת מוות.

6. לגבי פרטי אישום 1,2,24 עומד הנאשם בכפירתו.

-1-

<div dir="rtl">

תיק מס׳: 2305/04                                      תאריך: כ״ה אלול, תשס״ו
                                                          18 ספטמבר, 2006

7. את סוגי התוספות הראייתיות קבעתי על פי דיני הראיות שהיו נוהגים אילו
   נשמעו האמרות בפנינו בעדויות ממש והחומר חיה מוגש לפי סעיפים 10א,
   54א(א) א, או 12 לפקודת הראיות (נוסח חדש) התשל״א 1971. הכל לפי
   החשק של נותן האמרה לנאשם ולהליך המשפטי נגד.

**ג.קביעת ממצאים עובדתיים- ומשמעותם המשפטית**

**1. פרט אישום ראשון:** (החזקת חומר נפץ במשקל כולל של 4.5 ק״ג בשתי
   הדוגמניות)

**דיון:**

**ראייה מרכזית:** הראייה המרכזית היא אמרת הנאשם ת/2 החל מדף 1 עמ׳ 20
   ואילך שם מתאר הנאשם כיצד חבא ███████████ את
   חומר הנפץ כיצד פירט את ידיעותיו בחרכבו ותכונותיו וכיצד
   אותו הנאשם בביתו והחל לנסותו.

**תוספת ראייתית:** ע״פ הסכמת הצדדים הוגשו האמרות כהסכמה לתוכן.

**התוצאה** היא שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה.

**2. פרט אישום שני:** (קשירת קשר לייצור מצצה עם ████████████████)

**ראייה מרכזית:** הראייה המרכזית היא אמרת הנאשם ת/6א- ת/2 אמרה זו
   הוגשה כאמור בהסכמה מלאה ללא כל צורך בתוספת ראייתית.
   הנאשם מסביר באמרתו ת/6 עמ׳ 5 החל משורה 26 איך קשר עם אחרים להכין
   חומרי נפץ לצורך פיגועים בחיילי צה״ל, חיסור הנפשי מתאשר בעינו באמרת
   שם מביריר הנאשם על הקשר עם אנשים נוספים ועל הידע הנרחב שלו
   בעשיית פצצות כשהכל מכוון נגד חיילי צה״ל באזור.

כן מוסיף הנאשם בת/2 עמ׳ 1 שורה 6 ואילך כיצד כיצד למדה השלישייה להכין
   מטעניים,כיצד התכנסה וכיצד תכנית וחכל  תוך קיום יסוד נפשי ברור
   של ידיעה ויוזמה לתכנן את הפיגועים לעתיד לבוא באמצעות הפצצות שייוצרו.

**התוצאה** היא שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה.

**3. פרטי אישום שלישי – ארבעה עשר (פיגוע ההתאבדות בקו 19)**

**טענות התביעה:**

עקב אמרותינו של הנאשם הנתמכות באמרות ███████████ אשר כולן הוגשו
   תוך הסכמה לתוכנן, לא יתכן כי הנאשם לא ידע על מטרת האצטון והפיגוע ולכן
   הוא מקיים יסוד נפשי כנדרש.

</div>

-2-

תיק מס׳ : 2305/04                                    תאריך :כ״ה אלול, תשס״ו
                                                    18 ספטמבר, 2006

טענות ההגנה :                                                              1
                                                                          2
הנאשם ביצע את המיוחס לו בכתב האישום ללא ידיעה שמעשיו                      3
מהווים סיוע לפיגוע והתאבדות ולא ידע כי כמות האצטון אותו רכש ושאר          4
מעשיו המפורטים בכתב האישום עלולה לשמש לפיגוע .                             5
                                                                          6
את עיקר טענותיו מיקד הסניגור בניסיון לשכנע את בית המשפט כי קטעי          7
האמרות שהוגשו בהסכמה מראים את ידיעתו וכוונתו של הנאשם מתייחסים            8
לפיגוע השני.                                                              9
                                                                         10
דיון :                                                                   11
                                                                         12
אכן הדין עם התביעה אמרותיו של הנאשם ואמרות ████████ אינן                  13
מותירות מקום לשום ספק . אביא מעט מהן לענייני סדר הדברים ואראה כי לא        14
נותר ספק שהנאשם ידע שהוא מספק חומר חיוני להכנת נפיצים בכמות גדולה         15
לשם פיגועים רצחניים.                                                     16
                                                                         17
לפני שארד לפרטים מתוך מגמה לבחון את טענות הצדדים אציין משמעותה של          18
הגשת ראיות בכתב בהסכמה.                                                  19
                                                                         20
הגשת ראיות בכתב בהסכמה משמעותה כאילו העידו העדים את הכתוב                  21
באמרותיהם .                                                              22
                                                                         23
אדגיש כבר כעת כי הפרשנות לפיה יש לברור מתוך האמרות את החובה ולא            24
להתייחס לכולה אינה תואמת את רוח המשפט הפלילי ודיני הראיות הנוהגים בו       25
ואף אינה מהווה להערכתי פרשנות נכונה של ההלכה בבית המשפט לערעורים.          26
                                                                         27
עובדות הן עובדות ועדות היא עדות ואין משמעותה של הסכמה ברירה ואפליה         28
של עובדות זו מזו על רקע השאלה איזה צד חן משרתות.                           29
                                                                         30
אמרות הנאשם :                                                            31
                                                                         32
ת/2 עמ׳ 2 שורה 12 ציטוט שאנו דורש הסבר :                                  33
                                                                         34
"גם אני לבדי יוצרתני כמויות קטמות של מי חמצן האצטון די לעשות אחו״כ חומר נפץ   35
בכמויות גדולות״                                                           36
                                                                         37
בעמ׳ 3 לת/2 פירש הנאשם  מומחיות גדולה בסוד יצור חומרי הנפץ                 38
בכמויות גדולה ומסוגים שונים לרבות מסתאות כימיות והערכה מקצועית            39
לסוגים של חומר נפץ מרסק .                                                40
                                                                         41
בת/4 עמ׳ 11 הופכים הכוונה והידיעה לאמצעים והנאשם יוצר לו תשתית             42
מעבדתית של ממש להתחיל וליייצר חומרי נפץ מתוחכמים בכמויות.                  43
                                                                         44
                                                                         45
                                                                         46
                                                                         47
                                                                         48
                                                                         49

                            -3-

תיק מס׳ : 2305/04                                    תאריך :כ״ה אלול, תשס״יו
18 ספטמבר,
2006

בת/4עמ׳ 7 שורה 20 מפרט הנאשם כך :

"ש. ספר לי מה ████ סיפר לך לפני הפיגוע הראשון שהיה בירושלים ?
ת. ████ סיפר לי שהוא רוצה לתת את היד לחבר שלו שאת שמו לא אמר לי את
בלון חמי חמצן .........ובגים שבו הגאתי את בלון האצטון הראשון שקניתי מ████
ת ████ לקחת את שני הבלונים ונתן אותם לחבר שלו ועלי סיפר לי שיותר טוב שזה אצל
חבר שלו נמה זה מתבכן לתכון חומר נפץ למטעגי חבלה
ש.האם אתה יודע למה למה בדיוק הולכים לעשות חומר חנפ
ת.בטח שידעתי ידעתי שעם התוסר נפ היה הולכים לעשות פיגוע זה שלא ידעתי בדיוק
שזה הולך לפעמעו התאבבות זה לא משטה לי ........
ש. אם היית יודע שזה הולך לפעמעו התאבבות או מה ?
ת.אז יותר טוב שזה אין הבדל ואין בעייה בכלל
ש. משעכנסת למעילות הזו הבנת מה אתה הולך לעשות ?
ת.כן ידעתי והבנתי הכל אין בעייה
ש.בסדר מה היה אחרי הפיגוע הראשון ביים .........״

העולה מאמרה זו ברור היכוב , עניינה בפיגוע הראשון וביטוד .הנפשי של הנאשם
לפניו, ויודגש, די בידיעתו על תוצאת המוות ואין זה משנה אם המרעום יהיה
אנשאי או לא בא הנאשם וטורף את חקלפים,לא אכפת לו לאיזה סוג של פיגוע
הוא מענויי סינוע.

אמרות הנאשם מתחזקות עד ב -ת/1 עמ׳ 7 שורה 7 שם מתאר הנאשם כיצד עד
באמצע 2003 סיפר לו ████ על פקודה המחייבת אותו ואת ████
להוציא לפעול פיגועי התאבדות.
נזכיר כי אמרות אלה הוגשו ללא צורך בתוספת ראייתית  כראיות לאמיתות תוכנן.

הסנגור מסתמך בסיכומיו על אמרות הנאשם בעברית ובערבית מהן עולה כי הנאשם
לא ידע (או לא ידע בבדיוק) למה יושמ יושמ האצטון שהביא ב ████

פירוש זה אינו יכול לעמוד , תואיל והנאשם היה מׄערב , יׄחד עם ████
בהכנת חומרי נפץ מאצטון בכמויות וידע כשהוא פועל בצית ׄ להוראות
להוציא פיגועי התאבדות.

████ חיזוקים מאמרות

חיזוק נוסף לעובדד שלנאשם היה חסד׳ נפשי מלא לסיוע לגרימת מוות בכוונה
לפיגוע הראשון האמור בפרטי אישום 3-14 מופיע בעדויות ████
ת/20-ו ו- ת/19.

כך (עמ׳ 1 שורה 13-18) ████ ב-ת/20 שהוגש בהסכמה מלאה לתוכנו אומר
״אני הקמתי חוליה צבאית ובה היו 1 .אני 2 . ████ בן 18 תושב דוחה היום
עצור סיפרורי עליו הוא חבר שלי והעויר שלי בפעילות ועזר לי לייצר מטעגים והיה
שותף בכל התכמנים שלי ה........ ████ אצלו ספרים וחומר שממנו עושים חומר נפׄי״.

ת/20עמ׳ 2 שורה 17

ש. בסדר יש לך מה להתוסיף בקשר לפיגוע התתאבדות הראשון ;
שטשיהה בירושלים ? .............
האם ████ קנה משהוו לפני חפיגוע ;
כן הוא קנה 20 ליסר אצטון ב- 400- ש ████ באזור דוחא יש לו תגותלפני מ.פ
דוחיישת

תיק מס׳: 2305/04

תאריך: כ״ה אלול, תשס״ו
18 ספטמבר, 2006

*למה הוא קנה אצלון ?*
1  *ת. כי אני ביקשתי ממנו את זה לפגיעת התאבדות.*
2  *ש. ומי המתאבד שביצע את פיגוע ההתאבדות ושכו .........*
3

4  העולה מן המקובץ הוא כי הנאשם ידע היטב לפני הפיגוע הראשון (עם המתאבד עלי
5  גיירה – קו 19) למה מיועד האצטון שקנה לפני הפיגוע ולאחריו וצפה את תוצאת
6  המוות והטבח העלולה לנבוע ממעשיו.
7

8  לפיכך, אני מציע לחברי להרשיע את הנאשם בסיוע לגרימת מוות בכוונה (פרטי
9  אישום (13-3)) ובסיוע לניסיון לגרימת מוות בכוונה פרט אישום 14.
10

11
12  **פרטי אישום  15-23 (פיגוע ההתאבדות בקו 14)**
13

14  בעובדות פרטי אישום אלה הודה הנאשם וישנה הסכמה עייפ האמור בסעיף ב 3
15  להכרעת דין זו.
16

17  אשר על כן, אני מציע לחברי להרשיע את הנאשם בפרטי אישום 15-23 בסיוע
18  לגרימת מוות בכוונה (פרטי אישום (22-15)) ובסיוע לניסיון לגרימת מוות בכוונה
19  פרט אישום 23.
20

21  **פרט אישום 24 : (קשירת קשר עם ▉▉▉▉▉▉ לביצוע פיגוע התאבדות)**
22

23  ראיה מרכזית: באמרתו ת/6 עמ׳ 1 שורות 21-28 מספר הנאשם את פרשת האישום
24  מסי 24 במלואה , הוא מתאר את הקשר שנקטע במעצרו ובמסגרתו היה אמור להכין
25  מטעני של 12 ק״ג חומר נפץ על מנת ש▉▉▉▉▉ יבצע בעזרתו פיגוע.
26  בדבריו הנאשם טמון גם הסוד העובדתי של הקשר וגם היסוד הנפשי לרבות ידיעת
27  התוצאה וצפייתה.
28

29  כיוון שהצדדים הסכימו להגיש את אמרת הנאשם כראיה לאמיתות תוכנה וללא
30  הסתייגות הרי שאני מציע לחברי להרשיע את הנאשם בפרט אישום זה.
31

32
33  **העולה מן המקובץ**
34

35  אני מציע לחברי להרשיע את הנאשם בעבירות הבאות:
36

37
38  1. **סיוע לגרימת מוות בכוונה** – עבירה לפי סעי 51 לצו בדבר הוראות ביטחון (יהודה
39  ושומרון) (מסי 378), התשייל – 1970 ולפי סעיף 14 לצו בדבר הוראות ביטחון
40  (יהודה והשומרון) (מסי 225), תשכ״ח- 1968. **(19 עבירות)**
41

42  2. **סיוע לניסיון גרימת מוות בכוונה** – עבירה לפי סעי 51 לצו בדבר הוראות ביטחון
43  (יהודה והשומרון) (מסי 378), התשייל – 1970 ולפי סעיפים 14,19,20 לצו בדבר
44  כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ״ח – 1968.   **(2**
45  **עבירות)**
46

47  3. **קשירת קשר לגרימת מוות בכוונה** – עבירה לפי סעי 51 לצו בדבר הוראות ביטחון
48  (יהודה ושומרון) (מסי 378), התשייל – 1970 ולפי סעי 21,22 לצו בדבר כללי
49  האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ״ח – 1968. **(עבירה אחת)**
50

51

-5-

תאריך: כ"ה אלול, תשס"ו     תיק מס' 04/2305
18 ספטמבר, 2006

4. **קשירת קשר לייצור פצצה** עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה
(יהודה והשומרון) (מס' 225), תשכ"ח – 1968. סעיף 53 (א)(3) לצו בדבר הוראות
ביטחון (יהודה ושומרון) (מס' 378), התשי"ל – 1970. **(עבירה אחת)**

5. **החזקת חומר נפיץ** סעיף 1968 53 (א)(3) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), התשי"ל – 1970. **(עבירה אחת)**

**כב' השופט רס"ן יאיר תירוש**

אני מסכים.

**כב' השופטת רס"ן דליה קאופמן**

אני מסכימה.

**סוף דבר**

הוכרע כדעתו של השופט דהאן.

עקב בעיה טכנית העברנו נימוקי ההחלטה לצדדים באיחור.

*ניתן היום, 18/09/06, בלשכה.*

_____     _____     _____
שופטת              אב"ד                שופט

P 2: 329