PLAINTIFF'S
EXHIBIT
418

Israel                                    Defense                                    Forces

Before the Military Court                    Court Case: 3250/02
in Beit El                                Prosecution case: 242/02
Before a panel                    Detailed incident case: 3135/00 Binyamin
                                          234/01 Jerusalem Special Duties
                                              Department
                                          2159/01 Binyamin
                                          7915/01 Zion
                                          481/01 Zion
                                          8379/01 Zion
                                          5/01 Binyamin
                                          457/01 Binyamin
                                          502/02 Zion

### In the trial between the military prosecutor – The Prosecutor

#### - v. -

Mohamed Abed Rahman Salem Moslah (known as "Abu Satha")
Identity No. 902845653, born on April 25, 1977, a resident of Ain Um Sharait – Ramallah
Detained since February 17, 2002

#### - The Defendant -

## Amended Indictment

**The above mentioned Defendant is accused hereby of committing the following offenses:**

**First count:** (Detailed Incident 234/01 Jerusalem Special Duties Department)

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, at the time set forth, met ███████████ and ███████ ████████████ in Ramallah. The Defendant conspired with his above mentioned collaborators to travel to A-Ram and steal a vehicle from there.

[Stamp] P 6: 44

1

2.   The Defendant, together with ███████████ and ███████████ , traveled to A-Ram. There, the Defendant and his above mentioned collaborators looked for a vehicle to steal. After they did not find a vehicle that they could steal, the Defendant returned to Ramallah, while ███████████ and ███████████ stayed in A-Ram with the aim of continuing to look for a vehicle that could be stolen.

3.   In Ramallah, the Defendant met ███████████████████████ , the bodyguard of ███████ ........h. The Defendant asked ███████████ for a pistol and a vehicle for the purpose of carrying out a shooting attack against Jews.

Prosecution Case 242/02 Amended                    1

[Stamp] P.6: 44 [continued]

4.  At the request of the Defendant, ▮▮▮▮▮▮▮ provided him with a "16" pistol with a magazine full of cartridges and a stolen silver Volkswagen Bora.

5.  The Defendant drove the above mentioned Volkswagen to A-Ram, while armed with the above mentioned "16" pistol. In A-Ram, the Defendant met ▮▮▮▮▮ and ▮▮▮▮▮▮

6.  The Defendant suggested to ▮▮▮▮▮ that he get into the Volkswagen and travel to the Atarot area to look for an Israeli vehicle, with the aim of carrying out a shooting attack at it and causing the deaths of the occupants of the vehicle. ▮▮▮▮▮ agreed to the Defendant's suggestion and got into the Volkswagen.

7.  The Defendant continued to drive the Volkswagen and handed the above mentioned "16" pistol to ▮▮▮▮▮ The Defendant instructed ▮▮▮▮▮ to shoot using the above mentioned pistol at an Israeli vehicle, which the two had found in the Atarot area, with the aim of causing the deaths of the occupants of the vehicle.

8.  At about 6:15 p.m., in the Atarot Industrial Zone, the Defendant and ▮▮▮▮▮ noticed a GMC Safari, license no. 7901306 (hereinafter: the "Vehicle"), which the late Elazar Akiva Fashkos was driving.

9.  The Defendant started to drive after the Vehicle. The Defendant followed the Vehicle from the Atarot Industrial Zone to A-Ram Junction and back.

10. When the Vehicle returned to the Atarot Industrial Zone and drove on the main road, the Defendant drove the Volkswagen near the Vehicle.

11. ▮▮▮▮▮ opened the window and fired with the above mentioned "16" pistol, which the Defendant had delivered to him, approximately seven rounds at the Vehicle, with the intent of causing the death of the Vehicle's driver. A number of bullets hit the Vehicle, one of which hit the late Elazar Akiva Fashkos, who was driving the Vehicle, in the neck and another hit his chest.

12. Once the Defendant saw that the Vehicle had stopped, he fled in the Volkswagen, along with ▮▮▮▮▮ , to Ramallah.

13. In Ramallah, the Defendant returned the Volkswagen and the "16" pistol to ▮▮▮▮▮ The Defendant gave ▮▮▮▮▮ a few cartridges instead of the cartridges that ▮▮▮▮▮ had fired as set forth above.

[Stamp] P 6: 45

3

14. Thereafter, the Defendant made contact with ███████████ (known as ██████████ ), the bodyguard of ████████ ██ ██ the Area, which is an illegal organization, and reported to him the attack that he had carried out with ████████

15. By his acts described above, the above mentioned Defendant caused the intentional death of **the late Elazar Akiva Fashkos**, who died as a result of the impact of the bullets that were fired by ████████ as described above.

16. A day later, ███████████ delivered approximately 300 U.S. dollars to ████████ for carrying out the above mentioned attack. ███████████ received the above mentioned money from ████████

**Second count:**

**Nature of the offense:** Membership in an illegal organization, an offense pursuant to Regulations 84 (1) (A) and 85(1) (A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The above mentioned Defendant, in the Area, from mid-2001 until the day of his arrest, was a member or acted as a member of an illegal organization, as follows:

The above mentioned Defendant, during the period set forth, was a member of a military cell whose purpose was carrying out attacks against Israeli civilians within the Area and elsewhere. The Defendant acted in the said military cell along with ███████████ ███████████ (known as ████████ ), and ████████

For the purpose of his activity in the above mentioned cell, the defendant and his fellow cell members regularly received financial assistance from ███████████ the assistant of ████████ ██ ██ the Defendant himself on several occasions received various amounts of money, from 100 to 300 U.S. dollars each time.

The Defendant operated in the said military cell as described in the various counts of the indictment.

[Stamp] P 6: 45 [continued]

<u>Third count</u>: (Detailed Incident 2159/01 Binyamin)

<u>Nature of the offense</u>: Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

<u>Details of the offense</u>: The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, in August 2001, in Ein Um Sharait in Ramallah, met ███████████████████████████████████ (known as "███") and ███████████████

3.  On August 25, 2001, ████████████████████ and ████████████ Defendant and a

4.  On that day, the Defendant approached ███████████████ (known as "██ ████), the bodyguard of ████████████████ ████ .n in the area, which is an illegal organization. The Defendant asked ████████████ for weapons for the purpose of carrying out a shooting attack against Israeli civilians. A short time later, on that day, ██████████ delivered to the Defendant an MP-5 submachine gun with a magazine filled with cartridges.

5.  In the evening hours on that same day, in Ramallah or thereabouts, the Defendant delivered the above mentioned MP-5 submachine gun and ammunition to ████████████ and ████████ ████████, who arrived in an Isuzu pickup belonging to ████, in order for ██ and ████████ to use the above mentioned weapon to carry out a shooting attack and cause the deaths of Israeli civilians.

[Stamp] P 6: 46

5

6.  Immediately after receiving the weapon, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮ departed from Ramallah towards Highway 443 with the
    aim of carrying out the planned shooting attack there. The above mentioned individuals
    traveled in two vehicles – one was an Isuzu pickup belonging to ▮▮▮▮▮▮▮ and the
    other was a stolen Subaru that ▮▮▮▮▮ had brought for the purpose of carrying out the
    planned attack.

7.  Upon reaching Highway 443, ▮▮▮▮▮▮▮ continued to travel alone in the Isuzu, about a
    kilometer ahead of the Subaru in which ▮▮▮▮▮▮ and ▮▮▮▮▮ were traveling, in
    order to inform his above mentioned collaborators of IDF and police checkpoints along the
    way.

8.  All of these individuals traveled on Highway 443 towards Tel Aviv, with ▮ driving the
    Subaru; next to him sat ▮▮▮▮▮▮▮▮ armed with a Kalashnikov assault rifle; in the
    back seat sat ▮▮▮▮▮▮▮, armed with an MP-5 submachine gun, which the Defendant
    had delivered to him.

9.  On that day, August 25, 2001, at about 10:30 p.m., next to the Dor Energy fuel station, the
    occupants of the above mentioned Subaru noticed a Volkswagen Passat, license
    no. 6902818, in which the late Yaniv and Sharon Ben-Sharon and their children and the
    late Doron Yosef Sviri were traveling.

10. ▮▮▮▮▮ who was driving the Subaru, overtook the above mentioned Volkswagen and
    drove parallel to it. At this stage, ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮ discharged
    automatic gunfire with the MP-5 submachine gun, which the Defendant had provided, and
    with the Kalashnikov assault rifle, at the above mentioned Volkswagen, with the aim of
    causing the deaths of its occupants.

11. A large number of bullets that were fired by ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ hit the
    Volkswagen and its occupants.

12. After the occupants of the Subaru noticed that the Volkswagen was zigzagging, they sped
    up and fled to the village Beit Likia. There, ▮▮▮▮▮▮▮ waited for them. ▮▮▮▮▮
    ▮▮▮▮▮▮ and ▮▮▮▮▮▮ got into ▮▮▮▮▮▮ Isuzu and traveled to the
    village Beit Sira, where they hid the weapons near ▮▮▮▮▮▮▮ house. Thereafter,
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮ returned to Ramallah in
    ▮▮▮▮▮▮ vehicle.

[Stamp] P 6: 46 [continued]

13. Immediately after they returned to Ramallah, the Defendant met ███████ in Ein Um Sharait. ˈ

14. A few days later, ███████ brought the above mentioned MP-5 submachine gun from Beit Sira and returned it to the Defendant. The Defendant transferred the above mentioned weapon to ███████ and reported to the latter the shooting attack that had been carried out with this weapon.

15. The above mentioned Defendant, by his acts described above, caused the intentional death of **the late Yaniv Ben-Shalom**, who died of gunshot wounds to his head and back, from bullets that were fired from the MP-5 submachine gun described above, and from a Kalashnikov assault rifle by ███████ and ███████

16. After a few days, at the request of the Defendant, ███████ transferred to the Defendant a sum of 500 U.S. dollars for carrying out this attack; this was for the Defendant to distribute to his friends who had carried out the attack described above.

Prosecution Case 242/02 Amended                3

**Seventh count: (Detailed Incident 2159/01 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the third count of the indictment, by his acts described in the third count of the indictment, caused the intentional death of **the late Sharon Ben-Shalom**, who died of gunshot wounds to her head and back, from bullets that were fired from an MP-5 submachine gun, which the Defendant delivered as described in the third count of the indictment, and from a Kalashnikov assault rifle.

**Fifth count: (Detailed Incident 2159/01 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on August 25, 2001, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, on the date set forth, at the place set forth in the third count of the indictment, by his acts described in the third count of the indictment, caused the intentional death of **the late Doron Yosef Sviri**, who died of gunshot wounds from bullets that were fired from an MP-5 submachine gun, which the Defendant had delivered as described in the third count of the indictment, and from a Kalashnikov assault rifle.

**Sixth count: (Detailed Incident 7915/01 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on September 15, 2001, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P 6: 47

8

1.  In mid-September 2001, ██████████████████ (known as ██████████) and
    another person approached the Defendant

2.  The Defendant consented to provide the requested weapon for the purpose of carrying out
    the planned shooting attack, and on September 15, 2001, he contacted ██████████████
    the bodyguard of ██ _____ ￼ the Area, which is an
    illegal organization. ████████████████ referred the Defendant to ██████████ The ·
    Defendant contacted ████████████ and obtained the MP-5 submachine gun from the
    latter.

3.  Later that day, the Defendant delivered the above mentioned MP-5 submachine gun to
    ████████████████ with the aim of the latter using it to carry out a shooting attack and causing
    the deaths of Israeli civilians.

4.  Later that day, ████████████████████ met ████████████████████
    ████████████ (known as ████████████), ████████████████████ and █
    ████████. ████████████████ arrived to this meeting armed with an MP-5 submachine gun,
    which ████████████ had obtained from the Defendant for the purpose of carrying out a
    shooting attack, while ████████████ arrived armed with a revolver.

5.  The above mentioned collaborators of the Defendant decided to depart for Jerusalem and
    carry out a shooting attack with the aim of causing the deaths of Israeli civilians.

6.  At about 10:00 p.m. on September 15, 2001, the above mentioned Defendants traveled
    from Ramallah to Jerusalem in Firas Ghanem's Isuzu pickup.

7.  ████████████ drove the above mentioned Isuzu and traveled with ████████████████ and
    his collaborators in order to show them a place where they would carry out the planned
    shooting attack and in order to show his collaborators how to escape after carrying out the
    attack as set forth. ████████████ transported his collaborators to Highway No. 9, which
    connects the [...]

Prosecution Case 242/02 Amended            4

[Stamp] P 6: 47 [continued]

9

[...] Ramot neighborhood to the French Hill neighborhood in Jerusalem. ███████ showed his collaborators where to carry out the planned attack and how to escape thereafter. At the end of the said visit, the above mentioned gang returned to Ramallah.

8.  At about 10:30 p.m. that day, ████████████ along with ██████████ and ████████████ traveled in a stolen gray vehicle with Israeli license plates, which ██ had supplied to them for carrying out the planned attack (hereinafter: the "Vehicle"). Ahead of them drove ██████████ in the above mentioned Isuzu, in order to inform his collaborators by cellular telephone of police and IDF checkpoints.

9.  ████████████ drove the above mentioned Vehicle; next to him sat ████████ who was armed with an MP-5 submachine gun, and in the rear seat sat ██████ who was armed with a revolver.

10. The above mentioned gang stopped on Highway No. 9 near a junction leading to the Ramat Shlomo neighborhood and waited for a single Israeli vehicle to arrive at the site with the aim of carrying out a shooting attack against it and causing the deaths of the occupants of the vehicle.

11. After a few minutes, at about 11:10 p.m., a white Renault Express, license no. 2273706 (hereinafter: the "Renault"), arrived at the site from the direction of the Ramat Shlomo nationhood and turned to Highway No. 9 towards the Ramot neighborhood.

12. ████████████ started to drive after the Renault and overtook it.

13. When the Vehicle was driving parallel to the Renault, ██████████ and ████████ opened fire using an MP-5 submachine gun and a revolver against the occupants of the Renault with the aim of causing their deaths.

14. A number of bullets that were fired by ████████████ and ████████████ hit the Renault and the two occupants of the Renault – the late Moshe Weiss and Meir Weisshaus. Thereafter, ████████████ continued to travel towards the Ramot neighborhood and, near a site at which a new bridge was being built, turned right to a dirt track leading to Bir Nabala.

15. Before entering Bir Nabala, ████████████ and his collaborators, who were with him in the Vehicle, met ████████ who was waiting for them at the site in the Isuzu. From there, they all continued to travel together to Bir Nabala and thereafter fled to Ramallah.

[Stamp] P 6: 48

16. Thereafter, ███████████████████████████████ and █████████ came to
the Defendant, returned the above mentioned MP-5 submachine gun to him and reported
the attack, which they had carried out using the above mentioned weapons.

17. By his acts described above, the Defendant caused the intentional death of **the late Meir
Weisshaus**, who died in the hospital later that day as a result of gunshot wounds from
bullets that were fired by the collaborators of the Defendant using the MP-5 submachine
gun, which the Defendant had supplied, and the revolver.

**Seventh count: (Detailed Incident 7915/01 Zion)0**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A)
of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A)
and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere,
on September 15, 2001, or thereabouts, attempted to cause the intentional death of another
person, as follows:

The above mentioned Defendant, at the time set forth, at about 11:10 p.m., at the place described
in the previous count of the indictment, by his acts set forth in the previous count of the
indictment, attempted to cause the intentional death of Moshe Weiss, who was driving a white
Renault Express, license no. 2273706, described in the previous count of the indictment. One of
the bullets that were fired by the collaborators of the Defendant, as described in the previous
count of the indictment, hit the head of Moshe Weiss and injured him.

**Eighth count: (Detailed Incident 481/01 Zion and Detailed Incident 8379/01 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A)
of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A)
and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere,
on October 3, 2001, or thereabouts, attempted to cause the intentional death of another person, as
follows:

1. The above mentioned Defendant, in early October 2001, in Ramallah or thereabouts, along
with ████████████████████████████████████ and ████████
████████ (known as ████████████ ) decided to carry out a shooting attack with the aim of
causing the deaths of Israeli civilians.

[Stamp] P 6: 48 [continued]

11

2.   For the purpose of carrying out the planned shooting attack, the Defendant obtained from
     ████ a resident of Albira, a stolen gray Mazda 323 with Israeli license plates.

Prosecution Case 242/02 Amended                    5

[Stamp] P 6: 48 [continued]

12

3. For the purpose of carrying out the planned shooting attack, the Defendant had obtained an MP-5 submachine gun from ▌▌▌▌▌, the bodyguard of ▌▌▌▌▌, the ▌▌▌▌▌ in the Area, which is an illegal organization.

4. On October 3, 2001, the Defendant departed from Ramallah towards Jerusalem with the aim of carrying out the planned shooting attack, in possession of the above mentioned MP-5 submachine gun and traveling in the above mentioned Mazda, which ▌▌▌▌▌ was driving.

5. ▌▌▌▌▌ and ▌▌▌▌▌ traveled in an Isuzu pickup belonging to ▌▌▌▌▌ ahead of the Mazda in which ▌▌▌▌▌ was traveling, with the aim of informing him of police and IDF checkpoints along the way.

6. The Defendant and his above mentioned collaborators arrived at New Beit Hanina in Jerusalem. There, ▌▌▌▌▌ parked the Mazda and with the Defendant, hid the above mentioned MP-5 submachine gun in the vehicle.

7. The Defendant and ▌▌▌▌▌ got into the Isuzu and from there continued in the Isuzu with ▌▌▌▌▌ and ▌▌▌▌▌ towards the Begin Road.

8. The Defendant and his above mentioned collaborators reached the Begin Road. There, ▌▌▌▌▌ showed the Defendant and his other collaborators where to carry out the planned shooting attack and how to escape after carrying out the shooting attack. The Defendant and his above mentioned collaborators decided to carry out the planned shooting attack in the first tunnel of the Begin Road from the direction of Ramot, so that the gunshots would be inaudible. Thereafter, the Defendant and his above mentioned collaborators returned to Beit Hanina, to the place at which the above mentioned Mazda was left.

9. The Defendant got into the Mazda armed with the above mentioned MP-5 submachine gun while ▌▌▌▌▌ drove the said Mazda. From there, the Defendant drove the Mazda to the Begin Road with the aim of carrying out the planned shooting attack there and causing the deaths of Israeli civilians.

10. The Defendant and ▌▌▌▌▌ traveled on the Begin road back and forth several times looking for a single Israeli vehicle with the aim of carrying out the planned shooting attack against it with the aim of causing the deaths of the occupants of the vehicle.

[Stamp] P 6: 49

11. At about 11:35 p.m., while driving northward, in the last tunnel in their direction of travel, the Defendant and ███████████████ noticed a Honda Accord, license no. 1103217, traveling northward on the Begin Road. The occupants of the Honda were Tonie Amiel, Pini Maimon and Pazit Maimon.

12. ███████████████ overtook the above mentioned Honda. While ███████████████ drove parallel to the above mentioned Honda, the Defendant fired a single round from the MP-5 submachine gun that he was carrying at the occupants of the Honda, with the intent of causing their deaths. The bullet that was fired by the Defendant did not hit the above mentioned Honda.

13. After carrying out the said shooting attack, the Defendant and ███████████████ continued their journey towards Highway No. 9, which connects the Ramot neighborhood to the French Hill neighborhood.

14. The Defendant and ███████████████ carried out the shooting attack as described above; the two continued to travel in the Mazda towards Highway No. 9, which connects the Ramot neighborhood to the French Hill neighborhood, with the aim of reaching Beit Hanina from there continuing to Ramallah.

15. During this journey, the Defendant, at the request of ███████████████ checked the function of the MP-5 submachine gun, which he was holding, and also fired several rounds into the air.

16. During the journey on the above mentioned Highway No. 9, at about 11:45 p.m., the Defendant and ███████████████ noticed a Skoda, license no. 6567709, which was traveling on Highway No. 9 towards French Hill. Malka Cohen and Pinchas Cohen were traveling in this Skoda.

17. The Defendant and ███████████████ decided to carry out a shooting attack at the above mentioned Skoda and cause the deaths of its occupants. ███████████████ who, as stated, was driving the Mazda, overtook the Skoda.

18. While ███████████████ drove parallel to the above mentioned Skoda, the Defendant fired a number of rounds from MP-5 submachine gun at the above mentioned Skoda with the aim of causing the deaths of the occupants of the Skoda.

19. A number of bullets that were fired by the Defendant hit the Skoda. Two bullets that were fired by the Defendant hit Pinchas Cohen and another bullet hit Malka Cohen.

[Stamp] P 6: 49 [continued]

20. Pinchas Cohen was moderately injured by gunshot wounds from two bullets in his abdomen, while Malka Cohen, who was 28 weeks pregnant, was moderately injured by a gunshot wound from a bullet to her head.

21. After carrying out the said shooting attack, the Defendant and ▮▮▮▮▮▮▮▮▮▮▮ continued to drive towards French Hill and from there they reached New Beit Hanina. There, the Defendant and ▮▮▮▮▮▮▮▮▮ parked their vehicle and contacted ▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮ (known as ▮▮▮▮▮) by telephone; they arrived at the site in the Isuzu belonging to ▮▮▮▮▮▮, in order to pick up ▮▮▮ and ▮▮▮▮▮▮▮, according to the planning set forth in the previous count of indictment.

22. The Defendant and ▮▮▮▮▮▮▮ concealed the above mentioned MP-5 submachine gun in the Isuzu and got into the Isuzu. The Defendant and his three collaborators tried to return from Jerusalem to Ramallah, but were unable to do so because of IDF and police checkpoints. The Defendant and his above mentioned collaborators stayed to sleep overnight in the home of ▮▮▮▮▮▮ a friend of ▮▮▮▮▮▮, in New Beit Hanina in Jerusalem.

23. On the following day, October 4, 2001, ▮▮▮▮▮ transported the Defendant in his Isuzu to Ramallah.

[Stamp] P 6: 49 [continued]

**Ninth count: (Detailed Incident 39/02 Binyamin)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 15, 2002, or thereabouts, caused the intentional death of another person, as follows:

1.  On January 14, 2002, Raed Karmi, who was a senior military operative in the Tanzim Fatah Organization, which is an illegal organization, was killed. Following the death of the above mentioned Raed Karmi, the head of the Tanzim Fatah in the area, ███████ ████████ pitched a mourning tent in Albira.

2.  On January 15, 2002, the Defendant came to the above mentioned mourning tent and met ███████████████████████████████████████ (known as ██ ████████), ██████████████ and █████████████ and ██████ (known as ████████████), the bodyguard of the above mentioned ████████████.

3.  The above mentioned ████████████ informed the Defendant and his above mentioned collaborators th~

    ██ ███ ████ ████████ ██ ██ ██ ██ ██ ██ :s. For the purpose of carrying out the attack, ████████████ provided the Defendant with an MP-5 submachine gun and a "16" pistol.

4.  The Defendant and his above mentioned collaborators, in the above mentioned mourning tent, decided to carry out an attack that evening at the Givonim fuel station, located on Highway 443 near the entrance to Givat Ze'ev and to cause the deaths of Israeli civilians.

5.  In the evening hours of that day, January 15, 2002, ████████████ left the above mentioned mourning tent with ███████████. ████████████ and █████ traveled in an Isuzu pickup belonging to ████████ to the above mentioned fuel station with the aim of carrying out the planned shooting attack there. The Defendant, armed with a "14" pistol; █████ armed with a "16" pistol; and ████████ armed with an MP-5 submachine gun. The three drove in a light brown Mazda towards the above mentioned fuel station with the aim of carrying out the planned attack there.

[Stamp] P 6: 50

16

6. The Defendant and all of his above mentioned collaborators reached an earth mound that blocked the exit from the villages Bir Nabala and Aljib to Highway 443, about 100 meters from the Givonim fuel station. The above mentioned collaborators of ▮▮▮▮▮▮▮ parked their vehicles, the Isuzu and Mazda, facing the village Bir Nabala so that they could escape from the site immediately after carrying out the planned attack.

7. The Defendant, armed with a "14" pistol; ▮▮▮▮ armed with a "16" pistol; and ▮▮▮▮▮ ▮▮▮▮ armed with an MP-5, alighted form the vehicles and walked to the above mentioned fuel station with the aim of carrying out the planned shooting attack and causing the deaths of Israeli civilians there.

8. ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮ stayed in the above mentioned vehicles in order to make sure that no IDF patrol or other people would come to the site. ▮▮▮▮▮▮▮▮ sat in the driver's seat of the Mazda so that he could immediately extract his three collaborators who had left to carry out the planned attack immediately after carrying out the attack.

9. The Defendant and ▮▮▮▮▮▮ stood at the entrance to the above mentioned fuel station.

10. After a few minutes, at about 7:45 p.m., the Defendant and ▮▮▮▮▮▮ noticed a white Fiat Uno, license no. 6424905, entering the above mentioned fuel station, which was driven by the late Yoela Chen, and Rachel Eini was sitting next to her.

11. The Defendant and ▮▮▮▮▮▮ approached the above mentioned Fiat with the aim of carrying out a shooting attack against it and causing the deaths of the vehicle occupants. The occupants of the Fiat noticed the pistol that the Defendant was holding and started to shout and sound the horn. The Defendant put the pistol into his trousers and told the vehicle occupants not to fear.

12. At this stage, ▮▮▮▮▮▮ opened fire with bursts from the MP-5 submachine gun at the occupants of the Fiat with the intent of causing their deaths. Then, the Defendant took out his pistol again and started to shoot at the vehicle's occupants, with the intent of causing their deaths.

13. The Defendant and ▮▮▮▮▮▮ fired a large number of rounds at very close range at the late Yoela Chen, and at Rachel Eini, who were in the above mentioned Fiat.

14. Approximately 28 bullets, which were fired by the Defendant and ▮▮▮▮▮▮ hit the front windshield of the vehicle; a number of bullets hit the side of the vehicle and the driver's door window.

[Stamp] P 6: 50 [continued]

17

15. During the commission of the described shooting attack, ▓▓▓ who was standing a short distance behind the Defendant and ▓▓▓▓▓ served as a lookout and spotter.

16. ▓▓▓▓▓▓ immediately after hearing the gunfire, drove from the site with his Isuzu in order to inform his collaborators whether there were checkpoints on the way to Ramallah.

Prosecution Case 242/02 Amended              7

[Stamp] P 6: 50 [continued]

18

17. The Defendant, [REDACTED] and [REDACTED] after having carried out the shooting attack as set forth above, ran back to the Mazda in which [REDACTED] was waiting. After the three got into the vehicle, [REDACTED] drove them to Ramallah.

18. In Ramallah, the Defendant, [REDACTED] and [REDACTED] met [REDACTED] [REDACTED]

19. Thereafter, the Defendant met [REDACTED] in Ramallah, returned the MP-5 submachine gun and the vehicle to him and reported the attack that he had carried out as described above.

20. By his acts described above, the Defendant caused the intentional death of **the late Yoela Chen**, who died at the scene as a result of gunshot wounds from bullets that were fired by the Defendant and [REDACTED]

**Tenth count: (detailed incident 39/02 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 15, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the above mentioned time, at about 7:45 p.m., in the place described in the previous count of the indictment, by his acts set forth in the previous count of the indictment, attempted to cause the intentional death of Rachel Eini, who was traveling in a white Fiat Uno vehicle, license No. 6424905, described in the previous count of the indictment. One of the bullets that were fired by the Defendant and [REDACTED] as described in the previous count of the indictment, hit Rachel Eini in the head and two other bullets hit her left shoulder, injuring her moderately.

**Eleventh count: (Detailed Incident 3135/00 Binyamin)**

**Nature of the offense:** Undermining the security of the Area, an offense pursuant to Section 53 (A) (4) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

[Stamp] P 6: 51

19

**Details of the offense:** The above mentioned Defendant, in the Area, on October 12, 2000, or thereabouts, committed an act or default constituting an undermining or damage to, disruption of or danger to the security of the Area or the security of IDF forces and soldiers or the action, use or security of any of the following: a ship, aircraft, port, quay, jetty, dock, airport, railway, sea lane, road, dirt road, locomotive, vehicle, any cargo or other public transport or public communication device, or any factory, institute or equipment used or capable of being used for the manufacture, supply, storage, transfer, delivery or distribution of water, fuel, gas or electricity or any property of the State of Israel or the IDF, as follows:

1.  On October 12, 2000, at about 10:00 a.m., two IDF soldiers, the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz, mistakenly entered the city of Ramallah, which was under the control of the Palestinian Authority. Because the two above mentioned IDF soldiers traveled in a vehicle bearing Israeli license plates, the Palestinian policemen serving at the Palestinian police station in Ramallah noticed them and stopped them.

2.  After the Palestinian policemen understood that these were two IDF soldiers, they took away the guns and personal belongings of the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz, took them out of the vehicle in which the two had travelled and brought them to the Palestinian Police station in Ramallah. In the police station, the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were questioned about their arrival in Ramallah and were also beaten by the Palestinian police officers who were at the site.

3.  Near the Palestinian Police station in Ramallah, there was a funeral procession passing by at the time, in which the Defendant participated, and the rumor spread that there were two Israeli soldiers inside the police station. The people who participated in the funeral then went to the police station with the aim of murdering the two IDF soldiers who were there. The Defendant himself continued with the funeral procession.

4.  The riotous crowd, after having reached the Palestinian police station in Ramallah, destroyed and torched the vehicle of the late Corporal Vadim Nurzhitz, which was left outside the above mentioned police station.

5.  The crowd wanted to enter the above mentioned police station with the aim of murdering the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz.

[Stamp] P 6: 51 [continued]

20

6.  The crowd tried to reach the door of the above mentioned police station, but was stopped there by Palestinian police officers, who asked the crowd

------ -----

Prosecution Case 242/02 Amended                    8

[Stamp] P 6: 51 [continued]

7. Despite everything, a large number of rioters succeeded in entering the above mentioned police station while carrying clubs, knives and iron pipes.

8. The rioters who succeeded in entering the above mentioned police station reached the room on the second floor in which the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were kept at that time. The rioters, with the Palestinian police officers who were at the site, beat with their hands, kicked and struck with blunt instruments and stabbed with sharp implements the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz.

9. The above mentioned rioters threw the late Corporal Vadim Nurzhitz, who was severely injured, out of the window of the above mentioned room on the second floor of the said police station, into the yard of the station.

10. A large number of rioters came to the late Corporal Vadim Nurzhitz, with the aim of murdering him. The crowd took the late Corporal Vadim Nurzhitz to a street outside the yard of the above mentioned police station, where the crowd of rioters continued to beat the late Corporal Vadim Nurzhitz all over his body.

11. At this stage, people who were in the crowd of rioters dragged the late Corporal Vadim Nurzhitz to Manara Square.

12. The Defendant was in Manara Square, armed with an M-16 assault rifle. The above mentioned Defendant fired a number of rounds using the above mentioned assault rifle into the late Corporal Vadim Nurzhitz. The crowd of people who were at the place lifted the Defendant onto their shoulders in view of the act that he had carried out before their eyes as set forth above.

13. Thereafter, the people who were at the site poured gasoline onto the late Corporal Vadim Nurzhitz and set him on fire.

14. As a result of the blows and stab wounds that the mass of rioters caused, the IDF soldiers the late Sergeant First Class Yosef Avrahami and the late Corporal Vadim Nurzhitz were killed.

[Stamp] P 6: 52

22

**Twelfth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in late 2000 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, during the period set forth, near Ayosh Junction, on three different occasions, fired using an M-16 assault rifle that he had obtained from ▉▉▉▉▉▉ ▉▉▉▉ at IDF soldiers who were at the site, with the intent of causing the deaths of the above mentioned IDF soldiers.

With the Defendant were many other people, who also shot at the above mentioned IDF soldiers, with the aim of causing their deaths.

**Thirteenth count: (Detailed Incident 5/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on January 1, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:



1.  The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, met ▉▉▉▉▉ and ▉▉▉▉▉ and ▉▉▉▉▉ traveled in a white Seat, bearing Israeli license plates. ▉▉▉ and ▉▉▉ were each armed with a pistol. ▉▉▉ and ▉▉▉ suggested to the Defendant to carry out a shooting attack at Israeli vehicles in the Kalandia area with the intent of causing the deaths of Israeli civilians.



2.  The Defendant agreed to the above mentioned suggestion. The Defendant got into the above mentioned Seat and sat in the driver's seat. The Defendant drove the Seat from Ramallah towards Kalandia in order to carry out the planned shooting attack there. ▉▉▉ ▉▉▉ and ▉▉▉ traveled with the Defendant in the above mentioned Seat, armed with the above mentioned pistols.

[Stamp] P 6: 52 [continued]

3.   The Defendant and his above mentioned collaborators traveled to Kalandia Junction and there turned left to the road leading to Adam Junction. After traveling about 500 meters, the Defendant and his above mentioned collaborators noticed a white Renault Kangoo, license no. 4424829, in which Ze'ev Adar and Avraham David were traveling from the direction of Atarot to the direction of the settlement Adam.

4.   The Defendant and his above mentioned collaborators decided to carry out a shooting attack at the above mentioned Renault vehicle with intent of causing the deaths of is occupants.

Prosecution Case 242/02 Amended                9

[Stamp] P 6: 52 [continued]

5.  The Defendant overtook the Renault, and while the Defendant was traveling parallel to the Renault, ▮▮▮▮ and ▮▮▮▮▮ opened fire, using the pistols that they were carrying, at the Renault with the aim of causing the deaths of the occupants of the Renault.

6.  A number of bullets that had been fired by the collaborators of the Defendant hit the Renault.

7.  One bullet, which was fired by the above mentioned collaborators of the Defendant, hit Avraham David, who was traveling in the above mentioned Renault, in the upper left back, wounding him.

8.  Immediately after carrying out this shooting attack, the Defendant and his above mentioned collaborators fled to Ramallah.

**Fourteenth count: (Detailed Incident 457/01 Binyamin)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, on February 25, 2001, or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, at the time set forth, met  ▮▮▮▮▮ and ▮▮▮▮▮▮ the bodyguard of ▮▮▮ ▮ , in Ramallah.

2.  The Defendant and his above mentioned collaborators discussed the situation in the Area. ▮▮▮▮ asked the Defendant and his above mentioned collaborators what could be done to improve the situation. The Defendant and his named collaborators asked ▮▮▮▮ ▮▮▮▮ to provide them with a vehicle and weapons and they would carry out an attack against Israeli civilians with the aim of causing their deaths.

3.  ▮▮▮▮▮ consented to the above mentioned proposal. ▮▮▮▮▮ delivered to the Defendant and his above mentioned collaborators a 2001 model gray Volkswagen Bora bearing Israeli license plates, and an MP-5 submachine gun with a magazine and cartridges.

[Stamp] P 6: 53

25

4.  The Defendant, ███████████████ and ██████████████ traveled in the above mentioned vehicle, armed with the above mentioned MP-5 submachine gun and a Kalashnikov assault rifle. The Defendant and his above mentioned collaborators reached the Atara Bridge area.

5.  At about 1:15 p.m., the Defendant and his above mentioned collaborators noticed a GMC Vandura, license no. 3082518, which Yosef Cohen was driving, this vehicle leaving the settlement Ateret and turning towards the Atara Bridge.

6.  The Defendant and his above mentioned collaborators decided to carry out a shooting attack against the above mentioned GMC with the intent of causing the deaths of its occupants.

7.  The Defendant and his above mentioned collaborators decided to wait until the Citroen that was driving in front of them would pass the GMC, and then overtake the GMC [themselves] and carry out the planned shooting attack against it.

8.  In the above mentioned Citroen were travelling ██████████████████████████, ██████████████ and ██████████████████████████████, armed with two Kalashnikov assault rifles and an M-16 assault rifle. The above mentioned occupants of the Citroen opened fire, using the weapons mentioned above, at the above mentioned GMC with the intent of causing the deaths of its occupants. Twenty-nine bullets that were fired by these individuals hit the above mentioned GMC. Three bullets hit the head and neck of Yosef Cohen, who was driving the above mentioned GMC. As a result of the impact of these bullets and the impact of fragments throughout his body, Yosef Cohen was severely injured.

9.  After the Defendant and his above mentioned collaborators noticed that the GMC was hit and swerved off the road, and the driver of the vehicle was injured as a result of the shooting attack that was carried out from the Citroen that was driving before them, the Defendant and his above mentioned collaborators fled back to Ramallah.

10. In Ramallah, the Defendant and his above mentioned collaborators returned the above mentioned Volkswagen and the above mentioned MP-5 submachine gun to ████████ ██████████ The Defendant, ██████████████ and ██████████████ reported to ██████████████ that they had carried out a shooting attack using the above mentioned vehicle and weapons and that a Jewish driver had been wounded as a result.

Prosecution Case 242/02 Amended            10

[Stamp] P 6: 53 [continued]

**Fifteenth count:**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, in the Area, in mid-2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, met ▮▮▮▮▮▮▮▮▮▮▮ and ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Ramallah. The Defendant and his above mentioned collaborators decided to carry out a shooting attack in the Atarot area, during which they would shoot at an Israeli vehicle while driving by it with the intent of causing the deaths of Israeli civilians.

The Defendant and his above mentioned collaborators departed from Ramallah by vehicle, which the Defendant drove. Next to the Defendant sat ▮▮▮▮▮▮▮▮ armed with a Sig-Sauer pistol and an M-16 assault rifle; and in the rear seat sat ▮▮▮▮▮ armed with a "14" pistol.

The Defendant and his above mentioned collaborators traveled to Atarot. There, the Defendant and his above mentioned collaborators noticed a GMC with Israeli license plates. The Defendant and his above mentioned collaborators decided to travel after the above mentioned GMC with the aim of overtaking it and carrying out a shooting attack against it with the intent of causing the deaths of the occupants in the GMC. But ▮▮▮▮▮▮.

**Sixteenth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, caused the intentional death of another person, as follows:

[Stamp] P 6: 54

27

1. The ▮▮▮▮▮▮▮▮▮▮▮▮ the bodyguard of ť ▮▮▮▮▮▮▮▮▮ – in January 2002, decided that he wanted to carry out a suicide attack inside the territory of the State of Israel in order to cause the deaths of as many Israeli civilians as possible.

2. ▮▮▮▮▮▮▮▮ telephoned ▮▮▮▮▮▮▮ which is an illegal organization, in Nablus. ▮▮▮▮▮▮▮▮ asked ▮▮▮▮

3. A few days later, on January 22, 2002, in Ramallah, ▮▮▮▮▮▮▮▮ met Sa'id Ramadan, a resident of Kfar Tal in the Nablus district, who informed ▮▮▮▮▮▮

4. ▮▮▮▮▮▮▮▮ called the Defendant and asked the latter to come to him.

5. The Defendant met ▮▮▮▮▮▮▮ and the above mentioned Sa'id Ramadan that day in Ramallah. ▮▮▮▮▮▮▮ introduced the two to each other. The Defendant and ▮▮▮▮▮▮▮ took Sa'id Ramadan to a barber shop to have his hair cut before carrying out the planned suicide attack.

6. Thereafter, the Defendant and ▮▮▮▮▮▮▮ called ▮▮▮▮▮▮▮ (known as ▮▮▮▮ and asked the latter to transport a suicide terrorist from Ramallah to Jerusalem in order for the suicide terrorist to carry out a suicide attack in Jerusalem and to cause the deaths of as many Israeli civilians as possible.

7. ▮▮▮▮▮▮▮ came to Ramallah with ▮▮▮▮▮▮▮▮ after the latter agreed to participate in driving the suicide terrorist from Ramallah to Jerusalem. ▮▮ came to the meeting in his Isuzu pickup with Israeli license plates.

8. According to the instruction of ▮▮▮▮▮▮, ▮▮▮▮ and ▮▮▮▮▮▮ traveled in the above mentioned Isuzu from Ramallah to Jerusalem in order to find a way that had no police or IDF checkpoints, with the aim of driving the suicide terrorist, who would carry out the planned attack in Jerusalem later, using the same route.

Prosecution Case 242/02 Amended               11

[Stamp] P 6: 54 [continued]

9.  ████████████ and ████████ traveled from Ramallah via Rafat and arrived at the Atarot Industrial Zone, where the two returned to the Jerusalem-Ramallah main road and traveled left to the junction leading to the Rama Camp, where they turned right and traveled to Adam Junction. At Adam Junction the two turned right and traveled to Hizma Junction, where they turned right and entered Anta. Through Anta, they arrived at French Hill Junction, where the two turned right and returned to Ramallah. ████████ and ████████ saw that in the manner that they were traveling, the suicide terrorist could be driven to Jerusalem without being stopped at police or IDF checkpoints.

10. At the same time, in Ramallah, the Defendant and ████████████ took the above mentioned Sa'id Ramadan to pray and also bought for the above mentioned Sa'id Ramadan food, new clothes and shoes. ████████████ paid for these purchases the amount of NIS 1,200, with his own money. The Defendant and ████████████ took Sa'adi [Translator's note: as written] Ramadan to the home of the Defendant's brother in order for him to change his clothes.

11. The Defendant, ████████ brought an M-16 assault rifle and three magazines for the said assault rifle filled with cartridges, two of which were connected with a magazine coupler.

12. According to the plan of ████████████ and his above mentioned collaborators, Sa'id Ramadan was to arrive in Jerusalem and there shoot at Israeli civilians with the intent of causing their deaths until he himself would be killed by the Israeli security forces.

13. Thereafter, on the same day, the Defendant, ████████████ and Sa'id Ramadan met ████████████ and ████████ in the area of the City Inn Hotel in Albira.

15. ████████████ and ████████ hid the above mentioned M-16 assault rifle and magazines, which the Defendant had brought for carrying out the planned suicide attack, in the above mentioned Isuzu.

[Stamp] P 6: 55

29

16. The Defendant and ██████████ ████ ██████████████ and the three traveled to Jerusalem. The Defendant told ████████████ and ████████ that they would have to take Sa'id Ramadan to carry out the suicide attack in any place of their choosing in Jerusalem.

17. ████████ drove the Isuzu, Sa'id Ramadan sat in the seat next to the driver's seat and ██████████ sat in the back seat.

18. ████████ and ████████ transported Sa'id Ramadan to Jerusalem on a route that they had inspected earlier that day as described above.

19. In Jerusalem, ██████████ and ████████ traveled to Sheikh Jarah Street. There they took out the M-16 assault rifle and magazines that were hidden inside the vehicle and handed them over to Sa'id Ramadan. ████████████ moved to the seat next to the driver's seat while Sa'id Ramadan moved to the back seat, holding the M-16 assault rifle and the magazines in his hands.

20. ████████ and ████████ drove Sa'id Ramadan to Hanevi'im Street.

21. During the journey, Sa'id Ramadan ⋯ ████████ ᴐ ⸳⸳⸳⸳⸳⸳⸳⸳⸳ ⸳⸳⸳⸳⸳⸳⸳⸳ ████████████ took off his Reebok shoes and handed them over to Sa'id Ramadan, saying " ".

22. Upon reaching the junction of Strauss and Hanevi'im Streets, ██████████ and ██████ stopped the Isuzu.

23. ██████████ and ████████

24. After Sa'id Ramadan got out of the vehicle with the M-16 assault rifle and the ammunition, ████████ and ████████ drove away from the site in the Isuzu, left through the Musrara neighborhood to Highway No. 1 and from there drove via the main road to Ramallah.

25. Sa'id Ramadan, a few minutes after having gotten out of ████████ and ██████ vehicle, arrived at Jaffa Street.

[Stamp] P 6: 55 [continued]

26. At about 4:20 p.m., while standing opposite house no. 47 in Jaffa Street or thereabouts, Sa'id Ramadan loaded the M-16 assault rifle that he was carrying, shouted "Allahu Akbar" and discharged automatic gunfire indiscriminately at the people who were in Jaffa Street, at the bus stop at the site, aboard the Egged bus no. 27 that was this stop at the time and at the people who were in the stores nearby, with the aim of causing the deaths of as many people as possible. Sa'id Ramadan, while continuing to fire, fled from the site towards the parking lot in Harav Kook Street. There, Sa'id Ramadan changed magazines and continued to shoot at civilians with the aim of causing their deaths. Sa'id Ramadan fired more than 38 cartridges with the M-16 assault rifle that he carried. Sa'id Ramadan continued to shoot at civilians until he was killed by civilians and police officers who arrived at the site.

Prosecution Case 242/02 Amended          12

[Stamp] P 6: 55 [continued]

27.  By his acts described above, the above mentioned Defendant caused the intentional death of **the late Ora (Svetlana) Sandler**, who died as a result of gunshot wounds caused by the bullets that were fired by Sa'id Ramadan.

28.  After ██████████ learned about the execution of the above mentioned attack, ██████ ██████ approached ██████████████ and received from the latter the amount of 1,000 U.S. dollars for executing the said attack. ██████████ gave the Defendant, ██████ and ██████████ 100 U.S. dollars each for their participation in the execution of this attack.

**Seventeenth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Causing intentional death, an offense under Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Section 14 (A) of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere; on January 22, 2002, or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the previous count of the indictment, by his actions described in the previous count of the indictment, caused the intentional death of **the late Sarah Hamburger**, who died of gunshot wounds from the bullets that were fired by Sa'id Ramadan using an M-16 assault rifle, which the Defendant had provided to him.

**Twenty eighth count: (Detailed Incident 502/02 Zion)**

**Nature of the offense:** Attempt to cause intentional death, an offense pursuant to Section 51 (A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970, and Sections 14 (A) and 19 of the Rules of Liability for an Offense Order (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the Area or elsewhere, on January 22, 2002, or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, at the place set forth in the sixteenth count of the indictment, by his actions described in the sixteenth count of the indictment, attempted to cause the intentional death of as many civilians as possible who at the time were in and near Jaffa Street. As a result of the gunfire that was discharged by Sa'id Ramadan at the site, using an M-16 assault rifle that the Defendant had provided, **more than 45 civilians were injured**.

[Stamp] P 6: 56

**Witnesses of the prosecution:**

1. ███████████████████████████ Judea Investigations Office [person who recorded the Defendant's statement on February 25, 2002]

2. ███████████████████████ Judea Investigations Office [person who recorded the Defendant's statement on March 19, 2002]

3. ████████████████████████████, Judea Investigations Office [person who recorded the Defendant's statement on April 18, 2002]

4. ████████████████████████████████ (detainee) (Prosecution Case ████████

5. ███████████████████████████████ (detainee) (Prosecution Case ████

6. ██████████████████████████████ (detainee) (Prosecution Case ████

7. ████████████████████████████████ (detainee) (Prosecution Case ████████

8. ██████████████████████████████████ (detainee)

9. ████████████████████████████████████ (Prosecution Case ████████

10. ███████████████████████████████ (detainee) (Prosecution Case ██████

11. ██████████████████████████████ (detainee)

───────────────────────

**Detailed Incident 3135/00 Binyamin**

12. ███████████████████████████████ (detainee) (Prosecution Case ████████

13. █████████████████████████████ (detainee) (Prosecution Case ████████

14. ████████████████████████████████ (detainee) (Prosecution ████████

33



15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (detainee) (Prosecution Case ▮▮▮▮

16. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (detainee) (Prosecution Case ▮▮▮▮

17. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Binyamin Station. [statement]

18. ▮▮▮▮▮▮▮▮▮▮▮ (details held by the prosecution) [statement]

Prosecution Case 242/02 Amended            13

[Stamp] P 6: 56 [continued]

19. ████████████████████████ Hadassah Ein Kerem Hospital, Jerusalem [submitter physician's certificate dated July 13, 2001] (will be summoned upon explicit demand of the defense only).

20. ██████████████, the National Center of Forensic Medicine. [submitter of expert opinion] (will be summoned upon explicit demand of the defense only).

---

**Detailed Incident 5/01 Binyamin**

21. ██████████████████████████████████, Yehuda Forensic Identification. [submitter of visit/seizure and marking report & action/seizure and marking report & photograph tables].

22. ████████████████████████ (details held by the prosecution [traveled in the vehicle that was damaged]

23. Avraham David, Identity No. 033781949 (details held by the prosecution) [injured in the attack]

---

**Detailed Incident 234/01 Jerusalem Special Duties Department.**

24. ██████████████████ IDF. (details held by the prosecution) [statement]

25. ████████████████████ (details held by the prosecution) [statement]

26. ████████████████████. (details held by the prosecution) [statement]

27. ██████████████████████████ Forensic Identification – Zion Station. [submitter of seizure and marking report]

28. ████████████████████████████████, Mobile Laboratory, Forensic Identification, National Headquarters – Jerusalem. [submitter of vehicle inspection report]

29. ██████████████████████████, Investigations - Zion Station. [submitter of exhibit cover form]

[Stamp] P 6: 57

30. ████████████████████████████████ the Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

31. ████████████████████ Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 555/01] (will be summoned upon explicit demand of the defense only)

32. ████████████████████ [statement - pronouncement of the death of the late Elazar Akiva Fashkos]

33. ████████████████ Clalit Healthcare Service - Jerusalem. [statement & submitter of death notice]

---

**Detailed Incident 457/01**

34. ████████████████████ , Binyamin Station. [submitter of action report]

35. ████████████████████ Binyamin Station. [submitter of memorandum – GMC & drawing of incident scene & seizure and marking report & exhibit cover form]

36. ████████████████████ , Yehuda Forensic Identification. [submitter of photograph tables & memorandum]

37. ████████████████████ , Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of photograph tables & vehicle inspection report]

38. Yosef Cohen, Identity No. 069397198. (details held by the prosecution) [wounded in the shooting attack]

39. ████████████████ (details held by the prosecution) [arrived first at the scene of the attack]

40. ████████████████ Hadassah Hospital - Mount Scopus, Jerusalem. [submitter of physician's certificate - interim summary] (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 57 [continued]

**Detailed Incident 2159/01 Binyamin**

41. ███████████████████████████████ Binyamin Station. [submitter of action report]

42. ███████████████████████████████ Binyamin Station. [submitter of photograph tables & seizure and marking report].

43. ███████████████████████████████ Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of initial incident scene visit report - seizure of cartridge cases and bullet fragments]

44. ███████████████████████████████ Binyamin Station. [submitter of memorandum - exhibit chain & exhibit cover form & crime scene visit report]

45. ███████████████████████████████████ Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

46. █████████████████ Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 4238/01] (will be summoned upon explicit demand of the defense only)

47. ███████████████████████ Magen David Adom ambulance service - Lod station. [submitter of medical reports from scene & death notice & statement]

48. ██████████████████████, IDF. [statement]

49. ███████████████████, National Institution of Forensic Medicine. [submitter of two expert opinions] (will be summoned upon explicit demand of the defense only)

50. ██████████████████ (details held by the prosecution) [identification of victims]

[Stamp] P 6: 57 [continued]

**Detailed Incident 7915/01 Zion**

51. ███████████████████████████, Zion Station. [submitter of action report]

52. ███████████████████████████, Forensic Identification - Zion Station. [submitter of initial scene visit report & photograph tables]

53. ██████████████████Zion Station. [finder of cartridge cases at the incident scene - chain of evidence]

54. ████████████████████████, Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of vehicle inspection report – seizure of bullet fragments]

55. ████████████████████████, Zion Station Special Duties Department. [submitter of exhibit cover form]

56. ███████████████████ Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

57. ████████████████ Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 4239/01] (will be summoned upon explicit demand of the defense only)

58. ███████████████ Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of ██████████ (will be summoned upon explicit demand of the defense only)

59. █████████████ Hadassah Ein Kerem Hospital, Jerusalem. [submitter of death certificate of the late Meir Weisshaus] (will be summoned upon explicit demand of the defense only)

60. Moshe Weiss, Identity No. 024001505. (details held by the prosecution) (severely injured in the attack)

61. ███████████████████ (details held by the prosecution) (eyewitness)

[Stamp] P 6: 58

**Detailed Incident 481/01 Zion**

62. Tonie Amiel, Identity No. 032441040. (details held by the prosecution) (driver of the Honda)

63. Pini Maimon, Identity No. 025759762. (details held by the prosecution) (passenger in the Honda)

64. Pazit Maimon, Identity No. 040128084. (details held by the prosecution) (passenger in the Honda)

---

**Detailed Incident 8379/01 Zion**

65. ███████████████████████████, Forensic Identification - Zion Station. [submitter of initial scene visit report & seizure and marking report]

66. ███████████████████████████ Special Duties Department - Zion Station. [submitter of exhibit cover report]

67. ███████████████████████████, Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of vehicle inspection report - seizure of bullet fragments]

68. ███████████████████████████, Special Duties Department - Zion Station. [submitter of exhibit cover report]

69. ███████████████████████████, Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

70. ███████████████████████████, Exhibits Office - Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate - receipt of exhibits for examination] (will be summoned upon explicit demand of the defense only)

71. ███████████████████ Firearms Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of expert opinion from Forensic Identification Case BI/07 - 4723/01] (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 58 [continued]

39

72. ███████████████ [finding of cartridge cases in the field – chain of evidence]

73. Malka Cohen, Identity No. 038791386. (details held by the prosecution) (injured in the attack)

74. Pinchas Cohen, Identity No. 038348256. (details held by the prosecution) (injured in the attack)

75. ████████████████████ (details held by the prosecution) (eyewitness - cared for casualties)

76. ███████████████████, Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Pinchas Cohen] (will be summoned upon explicit demand of the defense only)

77. ████████████████████ Hadassah Ein Kerem Hospital, Jerusalem. [submitter of discharge certificate of Malka Cohen] (will be summoned upon explicit demand of the defense only)

---

**Detailed Incident 39/02 Binyamin**

78. ██████████████████, Patrol Unit - Binyamin Station. [submitter of action report]

79. ████████████████ Binyamin Station. [submitter of investigation memorandum / seizure and marking]

80. ████████████████ Yehuda Forensic Identification. [submitter of photograph tables & collected cartridge cases from the incident scene]

81. ██████████████████ Mobile Laboratory, Forensic Identification, National Headquarters - Jerusalem. [submitter of photograph tables & vehicle inspection report]

82. ████████████████, Binyamin Station. [submitter of exhibit cover report]

[Stamp] P 6: 58 [continued]

83. ████████████████████████████, Exhibits Office – Forensic Identification, National Headquarters - Jerusalem. [submitter of civil servant certificate – receipt exhibits for examination] (will be summoned upon explicit demand of the defense only)

84. ████████████████████████ IDF (details held by the prosecution) [statement - pronouncement of the death of the late Yoela Chen & care for the casualty]

Prosecution Case 242/02 Amended          15

[Stamp] P 6: 58 [continued]

85. ███████████████████████ Hadassah Ein Kerem Hospital, Jerusalem. [submitter of physician's certificate - illness summary of Rachel Eini] (will be summoned upon explicit demand of the defense only)

86. Rachel Eini, Identity No. 075966614. (details held by the prosecution) (injured in the attack)

87. ███████████████████████, (details held by the prosecution) [statement & sketch] (eyewitness)

88. ███████████████████████ (details held by the prosecution) (identification of the victim)

---

**Detailed Incident 502/02 Zion**

89. ███████████████████████ Special Duties Department - Zion Station [submitter of memorandum, seizure and marking report]

90. ███████████████████ Special Duties Department - Zion Station [submitter of seizure and marking report]

91. ███████████████ Special Duties Department - Zion Station [submitter of memorandum, seizure and marking report & photographs]

92. ███████████████████████ Special Duties Department - Zion Station [submitter of action report - finding of magazine coupler]

93. ███████████████████████, Questioning - Zion Station [submitter of seizure and marking report]

94. ███████████████████ (details held by the prosecution) (eyewitness - pursued the terrorist)

95. ███████████████████████ (eyewitness - pursued and shot at the terrorist)

96. ███████████████████████████ (eyewitness - shot at the terrorist)

[Stamp] P 6: 59

97. ███████████████████████████████ (eyewitness - pursued and shot at the terrorist)

98. ███████████████████████████████████████
(eyewitness - pursued the terrorist, disarmed the terrorist after the terrorist was killed)

99. ████████████████████████████ (details held by the prosecution).
(eyewitness – a security guard who was at the site - opened fire and shot the terrorist)

100. ████████████████████████████████████ (eyewitness - pursued and shot at the terrorist)

101. ██████████████████████████████████ (eyewitness - shot at the terrorist)

102. ██████████████████████ (details held by the prosecution) (eyewitness - driver of Egged bus who was at the site of the attack)

103. ██████████████████████ (details held by the prosecution) (eyewitness)

104. ██████████████████████████. (details held by the prosecution) (eyewitness)

105. ████████████████ (details held by the prosecution) (eyewitness)

106. ████████████████ (details held by the prosecution) (eyewitness)

107. ████████████████ (details held by the prosecution) (eyewitness)

108. ██████████████████ (details held by the prosecution) (eyewitness)

109. ████████████████████ (details held by the prosecution) (eyewitness)

110. ████████████████████ (details held by the prosecution) (eyewitness – saw the terrorist arriving at the attack site on foot)

111. ██████████████████████ (details held by the prosecution) (identification of the body of the late Ora (Svetlana) Sandler)

112. ████████████████████ Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Ora (Svetlana) Sandler) (will be summoned upon explicit demand of the defense only)

[Stamp] P 6: 59 [continued]

43

113. ███████████ Hadassah Ein Kerem Hospital, Jerusalem. (submitter of death notice of the late Sarah Hamburger) (will be summoned upon explicit demand of the defense only)

An additional list of witnesses with respect to the casualties in the attack in Jaffa Street on January 22, 2002, and medical certificates related to their injury will be delivered during the trial

[Signature]
Michael Kotlik, Captain
Military Prosecutor

Date: January 12, 2003
Reference No.: 242-02 Amended

Prosecution Case 242/02 Amended                16

[Stamp] P 6: 59 [continued]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                 Plaintiffs,

vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                 Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

### DECLARATION OF RINA NE'EMAN

Rina Ne'eman hereby certifies as follows:

1.  The attached translation from Hebrew to English is an accurate representation of the document received by Rina Ne'eman Hebrew Language Services, to the best of my knowledge and belief. The document is designated as P6: 44-59.

2.  I am a professional translator with a B.A. in International Relations from the Hebrew University of Jerusalem (Israel) and 30 years of translation experience. I am fluent in Hebrew and English, and I am qualified to translate accurately from Hebrew to English.

3.  To the best of my knowledge and belief, the accompanying text is a true, full and accurate translation of the Hebrew-language document bearing the bates number, P6: 44-59.

                                                Rina Ne'eman

ss.: New Jersey

On the 28 ] day of February, 2014 before me, the undersigned, personally appeared Rina Ne'eman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is signed to this Declaration and acknowledged to me that he executed the same in his capacity, and that by his signature on this Declaration, the individual executed the Declaration.

Sworn to me this
28 day of February, 2014


Notary Public

HIRUT J MIHRETE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 7, 2015
I.D. # 2332704

לישראל

3250/02
242/02
3135/00 בנימין
234/01 מת״מ י-ם
2159/01 בנימין
39/02 בנימין
7915/01 ציון
481/01 ציון
8379/01 ציון
5/01 בנימין
457/01 בנימין
502/02 ציון

הנגה

תיק ביה"ימ
תיק תביעה
תיק פ.א.

צבא

בכית        המשפט
בכית
בנגי

הצבאי
אל
הרכב

## במשפט שבין התובע הצבאי - המאשים

### - נ ג ד -

מחמד ע/רחמאן סאלם מצלח (מכונה "אבו סטחחי")
ת.ז. 902845643, יליד 25.04.77, תושב עין אום שרא"ט - רמאללה
עצור מיום 17.02.02

### - ה נ א ש ם -

## כ ת ב - א י ש ו ם   מ ת ו ק ן

### הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

**פרט ראשון:** (פ.א. 234/01 מת״מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש״ל-1970 וסעיף 51א(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 25.01.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם תנ"ל, במועד האמור, נפגש ברמאללה עם ▓▓▓▓▓▓▓▓▓▓ ולנגוע לא-ראם ולנגוע שם ורכב.
2. הנאשם, ביחד עם ▓▓▓▓▓▓▓▓▓ נסע לא-ראם שם, הנאשם וחבריו הנ"ל חיפשו
   רכב לנגונ  לאחר שלא מצאו רכב שאפשר לגנוב אותו, הנאשם חזר לרמאללה, ואילו ▓▓▓
   ▓▓▓▓▓▓ נשארו בא-ראם במטורה להמשיך לחפש רכב שניתן לגנוב אותו.
3. בימאללה, הנאשם נפגש עם ▓▓▓▓▓▓▓▓▓ . שומר ראשו של ▓▓▓▓▓
   ראש "התנגנים" של הפת"ח  הנאשם ביקש מ▓▓▓▓▓▓▓ אקדחה ורכב לצורך ביצוע פיגוע ירי
   נגד יהודים

ח ה 59/21 מ/היריך                                                                                   ב ה 59/21 מ/היריך

1

P 6: 44

4 כפי בקשתו של הנאשם, ████ מסר לו אקדח 16 עם מחסנית המלאה בכדורים וכן
רכב פולקסווגון גנוב בצבע כסף.

5 הנאשם נסע ברכב הפולקסווגון הנ״ל לא-ראם, כשהוא חמוש באקדח 16 הנ״ל. בא-ראם,
הנאשם נפגש עם ████.

6 הנאשם הגיע ל████ לעלות ברכב הפולקסווגון ולנסוע לאיזור עטרות לחפש רכב ישראלי
במטרה לבצע לעברו פיגוע ירי ולגרום למוותם של נוסעי הרכב. ████ הסכים להצעתו של
הנאשם ועלה לרכב הפולקסווגון.

7 הנאשם המשיך לנהוג ברכב הפולקסווגון ומסר את אקדח 16 הנ״ל לידי ████. הנאשם
הורה ל████ לירות באמצעות האקדח הנ״ל לעבר רכב ישראלי, אשר אותו השניים
ימצאו באיזור עטרות, וזאת במטרה לגרום למוותם של נוסעי הרכב.

8 סמוך לשעה 18:15, באיזור התעשייה עטרות, הנאשם ו████ הבחינו ברכב ®GMC ספארי,
מ.ר. 7901304, (נהלק: הרכב) אשר בו נהג אלעזר עקובא פשקוס ז״ל

9 הנאשם החל לנסוע אחרי הרכב. הנאשם עקב אחרי הרכב מאיזור התעשייה עטרות עד צומת
א-ראם וחזרה.

10 כאשר הרכב חזר לאיזור התעשייה עטרות ונסע בכביש הראשי, הנאשם נסע ברכב הפולקסווגון
בסמוך לרכב.

11 ████ פתח את החלון וירה באקדח 16, אשר אותו מסר לו הנאשם, 7-6 כדורים לעבר
הרכב במטרה לגרום למוותו של נהג הרכב. מספר קליעים פגעו ברכב, כאשר קליע אחד פגע
בצוארו ואחד בחזהו של אלעזר עקובא פשקוס ז״ל, אשר נהג ברכב.

12 משהבחין הנאשם כי הרכב נעצר, הוא נמלט ברכב הפולקסווגון, ביחד עם ████
לרמאללה.

13 ברמאללה, הנאשם החזיר את הרכב ואת האקדח 16 ל████. הנאשם מסר ████
████ מספר כדורים במקום הכדורים, אשר אותם ירה ████ כאמור לעיל.

14 לאחר מכן הנאשם יצר קשר עם ████ (הממונה ████), שומר ראשו של
████, ראש "התנועיים" של הפתח באיזור, שהוא התאחדות בלתי מותרת, ודיווח לו
על חיסולו שביצע ביחד עם ████.

15 במעשיו המתוארים לעיל, הנאשם הנ״ל גרם בכוונה למותו של אלעזר עקובא פשקוס ז״ל,
אשר נפטר כתוצאה מפגיעת הקליעים שנורו על-ידי ████ כפי שתואר.

16 לאחר יום, ████ מסר ל████ כ-300 דולר ארה״ב עבור ביצועו הפיגוע הנ״ל. את
הכסף האמור ████ קיבל מיידי

---

## פרט שני:

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84(1)(א) 85(1)(א) ו-85(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, החל מאמצע שנת 2001 ועד ליום מעצרו, היה חבר או פעל
כחבר בהתאחדות בלתי מותרת, דהיינו
הנאשם הנ״ל, במהלך תקופות האמורה, היה חבר בחוליה צבאית, אשר שמה לה למטרה ביצוע
פיגועים נגד אזרחים ישראליים הן באיזור, הן מחוצה לו. הנאשם פעל בחוליה הצבאית האמורה
ביחד עם ████
(המכונה ████).
לצורכי פעילותו בחוליה האמורה, הנאשם וחבריו לחוליה נהנו לקבל סיוע כספי מ████
████, עוזרו של ראש "התנועיים" של הפתח״ה, ████ הנאשם עצמו קיבל במספר
הזדמנויות סכומי כסף שונים, בין 100 ל-300 דולר ארה״ב בכל פעם.
הנאשם פעל בחוליה הצבאית האמורה כפי שיתואר בפרטי האישום הבאים.

2

<u>פרט שלישי:</u>  (פ.א. 2159/01 בנימין)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש אוגוסט 2001, בעין אום שרשייט שברמאללה, נפגש עם ▓▓▓▓▓▓ ▓▓▓▓▓▓▓ (המכונה ▓▓▓) ו ▓

2. ▓▓▓▓▓▓ אמרו לנאשם כי בכוונתם לבצע פיגוע ירי במטרה לגרום למותם של אורחים ישראליים. השלושה ביקשו מן הנאשם כי יספק להם כלי נשק לצורך ביצוע פיגוע הירי המתוכנן.

3. ביום 25.08 01, פנו אל הנאשם ▓▓▓▓▓▓▓ ▓▓▓▓ וביקשו לקבל עוד באותו היום כלי נשק לצורך ביצועו פיגוע הירי המתוכנן.

4. באותו היום, הנאשם פנה אל ▓▓▓▓▓▓▓ (המכונה ▓) ▓▓▓▓▓▓▓, שומר ראשי של ▓▓▓▓ ▓▓▓. ראש "התנזים" של חפתי"ח באיזור, שהוא התאחדות בלתי מותרת. הנאשם ביקש מ▓ לקבל כלי נשק לצורך ביצוע פיגוע ירי נגד אורחים ישראליים. לאחר זמן קצר, עוד באותו היום, ▓▓▓▓ מסר לידי הנאשם תמי"ק MP-5 עם מחסנית הטעונה בכדורים.

5. בשעות הערב, באותו היום, ברמאללה או בסמוך לכך, הנאשם מסר את תמי"ק MP-5 והתחמושת הנ"ל ▓▓▓▓▓ אשר הגיעו ברכב איסוזו טנדר של ▓▓▓▓▓▓▓ וזאת על מנת ש▓▓ ו ▓▓▓▓▓▓▓ יבצעו באמצעות הנשק הנ"ל פיגוע ירי ויגרמו למותם של אורחים ישראליים.

6. מיד לאחר קבלת הנשק, ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ יצאו מרמאללה לכיוון כביש 443 במטרה לבצע שם את פיגוע הירי המתוכנן. האנשים הנ"ל נסעו בשני כלי רכב - האחד, איסוזו טנדר של ▓▓▓▓▓ והשני, רכב סיבארו גונב שהביא ▓▓▓▓▓▓▓ לצורך ביצוע הפיגוע המתוכנן.

7. בהגיעם לכביש 443, ▓▓▓▓▓▓▓ המשיך לנסוע לבדו ברכב האיסוזו, כקילומטר לפני רכב הסיבארו שבו נסעו ▓▓▓▓▓▓▓ על מנת להודיע לחברים הנ"ל על מחסומי צה"ל והמשטרה בדרך.

8. כל האנשים הנ"ל נסעו בכביש 443 לכיוון תל-אביב, כאשר עלי נוהג ברכב הסיבארו, לידו יושב ▓▓▓▓▓. החמישה ברוסיי קלציניקוב. ובמושב האחורי יושב ▓▓▓ החמש בתמי"ק MP-5, אשר אותו סיפק הנאשם.

9. באותו היום, 25.08 01, סמוך לשעה 22:30, ליד תחנת הדלק "דור אנרגיה", הבחינו נוסעי רכב הסיבארו הנ"ל ברכב פולקסווגן פאסאט, מ.ר. 6902818, אשר בו נסעו בני הזוג יניב ושרון בן שלום ז"ל עם שני ילדיהם ודורון יוסף סורו ז"ל.

10. ▓▓▓▓▓, שנהג ברכב הסיבארו, עקף את רכב הפולקסווגן הנ"ל ונסע במקביל אליו  בשלב זה, ▓▓▓ פתחו באש אוטומטית בתמי"ק MP-5, אשר אותו סיפק הנאשם, ו▓▓▓▓▓▓ ברוסיי קלציניקוב, לעבר רכב הפולקסווגן הנ"ל במטרה לגרום למותם של נוסעיו.

11. מספר רב של הקליעים שנורו על-ידי ▓▓▓▓▓ פגעו ברכב הפולקסווגן ובנוסעיו.

12. לאחר שנוכעו רכב הסיבארו הנ"ל וחבחינו כי רכב הפולקסווגן נוסע בזיגוג, הם האיצו את המהירות ונמלטו לעבר בית ליקיא  שם המתין להם ▓▓▓▓▓▓▓. ▓▓▓▓▓ ונסעו לכפר בית סירא, שם הם הסתירו את כלי הנשק בסמוך לביתו של ▓▓▓. לאחר מכן, ▓▓▓▓▓▓ חזרו לרמאללה ברכבו של ▓▓▓.

13. מיד לאחר חורדתם לרמאללה, הנאשם נפגש בעין עם שרצייט עם ▓▓▓▓▓▓▓▓, אשר דיווח לנאשם על הפיגוע שבוצעו באמצעות הנשק שנמסר למטרה זו על-ידי הנאשם.

14. לאחר מספר ימים, ▓▓▓▓▓▓▓ הביא את תמי"ק MP-5 הנ"ל מבית סירא וחזירו לנאשם. הנאשם העביר את כלי הנשק הנ"ל לידי ▓▓▓▓▓▓ הנ"ל ודיווח לאחרון על פיגוע הירי שבוצע בכלי הנשק הנ"ל.

15. הנאשם הנ"ל, במעשיו המתוארים לעיל, גרם בכוונה למותו של יניב בן שלום ז"ל, אשר נפטר כתוצאה מפגיעות קליעים בראשו ובגבו, אשר נורו מתמי"ק MP-5 המתואר לעיל, וברוסיי"ר קלציניקוב על-ידי ▓▓▓.

16. לאחר מספר ימים, על-פי בקשתו של הנאשם, ▓▓▓▓▓ מסר לנאשם סכום של 500 דולר ארהי"ב על מנת שהנאשם יחלק לאנשי לחבריי, איתו לחבריי, אשר ביצעו את הפיגוע המתואר לעיל.

3

ח.ח. 242/02 מחויים

<u>פרט רביעי:</u> (פ.א. 2159/01 בנימין)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו - הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלישי, במעשיו המתוארים בפרט האישום החמישי, גרם בכוונה למותה של שרון בן שלום ז"ל, אשר נפטרה כתוצאה מפגיעות קליעים מראשית ובגבה, אשר נורו מתמ"ק 5-MP, אשר אותו סיפק הנאשם כמתואר בפרט האישום השלישי, וברוסי"ר קלצ'ניקוב.

<u>פרט חמישי:</u> (פ.א. 2159/01 בנימין)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, ביום 25.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו - הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום חשלישי, במעשיו המתאוארים בפרט האישום החמישי, גרם בכוונה למותו של דודו יוסף סוזרי ז"ל, אשר נפטר כתוצאה מפגיעות הקליעים, אשר נורו מתמ"ק 5-MP, אשר אותו סיפק הנאשם כמתואר בפרט האישום השלישי, ומרוסי"ר קלצ'ניקוב.

<u>פרט שישי:</u> (פ.א. 7915/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו -

1   באמצע חודש ספטמבר 2001, פנה אל הנאשם ▉▉▉▉ [המכונה ▉▉ ▉') ניתאו עם אדם נוסף וביקש לקבל תמ"ק 5-MP על מנת לבצע באמצעותו פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים.

2   הנאשם הסכים לספק את כלי הנשק המבוקש לצורך ביצוע פיגוע הירי המתוכנן וביום 15.09.01 פנה אל ▉▉▉▉▉ , שומר ראשו של ▉▉▉▉▉ , ראש ה"התנגוים" של הפת"ח באיזור, שהוא התאחדות בלתי מותרת, והפנה את הנאשם אל ▉▉▉ הנאשם פנה אל ▉▉ וקיבל מהאחרון תמ"ק 5-MP.

3   מאוחר יותר באותו היום, הנאשם מסר את תמ"ק 5-MP הנ"ל ▉▉▉▉▉ במטרה שהאחרון יבצע באמצעותו פיגוע ירי ויגרום למותם של אזרחים ישראליים.

4   יותר מאוחר באותו היום, ▉▉▉▉▉ נפגש ברמאללה עם ▉▉▉ (המכונה ▉') ▉▉▉▉ הגיע לפגישה הנ"ל כשהוא חמוש בתמ"ק 5-MP, אשר אותו קיבל מידי הנאשם לצורך ביצוע פיגוע ירי, ואילו ▉▉▉ הגיע כשהוא חמוש באקדח טופי.

5   חברי הנאשם הנ"ל החליטו לצאת לירושלים ולכצע שם פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים.

6   בסביבות השעה 22:00, ביום 15.09.01, האנשים הנ"ל נסעו מרמאללה לירושלים ברכב איסוזו טנדר ש▉▉▉▉▉

7   ▉▉▉▉ נהג ברכב האיסוזו הנ"ל ונסע ביחד עם ▉▉▉ וחבריו על מנת להראות להם מקום שבו יבצעו את פיגוע הירי המתוכנן וכן על מנת להראות לחבריו איך להימלט לאחר ביצוע הפיגוע האמור ▉▉▉▉ הסיע את חבריו לכביש מסי 9 המחבר בין שכונת

4

ת.פ ▉▉24/01 מ/▉01

רמות לבין שכונת הנביאה הצרפתית בירושלים. ████ הראה לוחבריו איפה לבצע את
הפיגוע. הממתוכנן. איך להיחלט לאחר מכן בסיוע הסיור האמור. החבורה הנ"ל חזרה
לרמאללה.

8. בסביבות השעה 22.30, באותו היום, ████ ביחד עם
████ נסע ברכב גונב בצבע אפור עם לוחיות רישוי ישראליות, אשר איתו טימף להם
████ לצורך ביצוע הפיגוע המתוכנן (להלן: הרכב). לפניהם נסע ████ ברכב האיסוזו
הנ"ל וזאת על מנת להזהיר באמצעות טלפון סלולרי לחבריהם על מחסומ" משטרה וצה"ל.

9. ████ נהג ברכב הנ"ל, לירו ישב ████, התמוש בתמ"ק 5-MP, ובמושב
האחורי ישב ████. חמנושו באקדח טופי.

10. החבורה הנ"ל עברה בכביש מס' 9 בסמוך לצומת המוביל לשכונת רמת שלמה והמתחנה לרכב
ישראל" בודד שיגיע למקום. במשטרה לבצע לעברני פיגוע ירי ולגרום למותם של נוסעי הרכב.

11. לאחר מספר דקות, בסמוך לשעה 23.10, הגיע למקום רכב דנו אקספרס לבן, מ.ר. 2273706
(להלן: הרנו) אשר נסע מכיוון שכונת רמת שלמה ופנה לכביש מס' 9 לכיוון שכונת רמות.

12. ████ החל לנסוע אחרי הרנו ועקף אותו

13. כשהרכב נסע במקביל לרנו, ████ פתחו באש בתמ"ק 5-MP
ובאקדח טופי לעבר נוסעי הרנו במטרה לגרום למותם.

14. מספר קליעים שוורי על-ידי ████ פגעו ברנו ובשעי נוסעי הרנו ·
משה ויים ומאיר וייסבוזי ז"ל. לאחר מכן, ████ המשיך לנסוע לכיוון שכונת רמות
ובסמוך למקום שבו בונים אשר חדש פנה ימינה לדרך עפר המוב"לה לביר נבאללה.

15. לפני הכניסה לביר נבאללה, ████ וחבריו שהיו עמו ברכב נפגשו עם ████
שהמתינו להם במקום ברכב האיסוזו משם כולם ברכב ביחד המשיכו כנסיעה לביר נבאללה ולאחר
מכן נמלטו לרמאללה.

16. לאחר מכן, ████ הגיע אל הנאשם,
החזיר לו את תמ"ק 5-MP הנ"ל ודיווח על הפיגוע, אשר אותו ביצעו באמצעות כל הנשק
הנ"ל.

17. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של מאיר וייסבוזי ז"ל, אשר נפטר בבית
החולים מאוחר יותר באותו חיום כתוצאה מפגיעות "קליעים שנורו על-ידי חברי הנאשם
בתמ"ק 5-MP, אשר אותו טימף הנאשם ובאקדח טופי.

---

__פרט שביעי__ : (פ.א. 7915/01 ציון)0(

__מהות העבירה__ : ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ו-1970, וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירות
(יהודה והשומרון) (מס' 225), תשכ"ח-1968.

__פרטי העבירה__ : הנאשם הנ"ל, בין באיוור ובין מחוצה לו, ביום 15.09.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, בסמוך לשעה 23.10, במקום המתואר בפרט האישום הקודם,
במעשיין האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותו של משה ויים, אשר נהג
ברכב דנו אקספרס לבן, מ.ר. 2273706, המתואר בפרט האישום הקודם. אחד מחברי הנאשם שוורו
על-ידי חברי הנאשם, כפי שתואר בפרט האישום הקודם, פגע בראשו של משה ויים ופצע אותו

---

__פרט שמיני__ : (פ.א. 481/01 ציון ו-פ.א. 8379/01 ציון)

__מהות העבירה__ : ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ו-1970, וסעיף 19 לצו בדבר כללי האחריות לעבירות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

__פרטי העבירה__ : הנאשם הנ"ל, בין באיוור ובין מחוצה לו, ביום 03.10.01 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :

1. הנאשם הנ"ל, בראשית חודש אוקטובר 2001, ברמאללה או בסמוך לכך, ביחד עם ████
████ והתכונה ████ החליט לבצע פיגוע ירי במטרה לגרום למותם של אזרחים ישראליים

2. לצורך ביצוע פיגוע הירי המתוכנן, הנאשם קיבל מידי ████, תושב אלביה, רכב מזדה 323
גונב בצבע אפור עם לוחיות רישוי ישראליות.

5

P 6: 48

3. לצורך ביצוע פיגוע הירי המתוכנן, הנאשם קיבל מ█████. שומר ראשו של
█████. ראש "יחמוסים" של הפת"ח באזור, שהוא התאחדות בלתי מותרת, תמ"ק 5-MP.

4. ביום 03.10.01, הנאשם יצא מרמאללה לכיוון ירושלים במטרה לבצע יום את פיגוע הירי
המתוכנן כשהוא מחזיק בתמ"ק 5-MP הנ"ל ונוסע ברכב המוזדה הנ"ל, אשר בו נוהג █████

5. █████ נסע ברכב איסוזו טנדר של █████ לפני רכב המוזדה שבו
נסע הנאשם וזאת במטרה להודיע על מחסומי המשטרה וצה"ל בדרך.

6. הנאשם וכל חברי הנ"ל הגיעו לבית חנינא החדשה שבירושלים. שם █████ תחנה
את רכב המוזדה וביחד עם הנאשם שהתיר בתוך הרכב את תמ"ק 5-MP הנ"ל

7. █████ עלו על רכב האיסוזו ומשם המשיכו ברכב האיסוזו ביחד עם
הנאשם █████ לכיוון כביש בגין.

8. הנאשם וחבריו הנ"ל הגיעו לכביש בגין. שם, █████ הראה לנאשם ושאר חבריו איפה
לבצע את פיגוע הירי המתוכנן ואיך להימלט לאחר ביצוע פיגוע הירי. הנאשם וחבריו הנ"ל
החליטו לבצע את פיגוע הירי המתוכנן במנהרה הראשונה של כביש בגין מכוונון רמות וזאת על
מנת שלא ישמעו את קולות הירי. לאחר מכן, הנאשם וכל חבריו הנ"ל חזרו לבית חנינא,
למקום שבו הושאר רכב המוזדה.

9. הנאשם עקב לרכב המוזדה כשהוא אוחז חמש בתמ"ק 5-MP הנ"ל, ואילו █████ נהג ברכב
המוזדה האמור. משם הנאשם נסע ברכב המוזדה לכביש בגין במטרה לבצע שם את פיגוע הירי
המתוכנן ולגרום למותם של אזרחים ישראליים.

10. הנאשם █████ נסע בכביש בגין הלוך ושוב מספר פעמים כשהם מחפשים רכב
ישראלי בודד במטרה לבצע לעברו את פיגוע הירי המתוכנן במטרה לגרום למותם של נוסעי
הרכב.

11. בסמוך לשעה 35 ,23, כשהם נוסעים לכיוון צפון, במנהרה האחרונה בכיוון נסיעתם, הנאשם
█████ הבחינו ברכב הונדה אקורד, מ.ר. 1103217, חונים בכביש בגין לכיוון צפון.
ברכב הונדה נסעו טוני עמינאל, פני ונימון ופזית נימון.

12. █████ נסע במקביל לרכב
הונדה הנ"ל, הנאשם ירה כדור אחד בתמ"ק 5-MP, אשר בו החזיק, לעבר נוסעי רכב
הונדה, במטרה לגרום למותם כלקולע שונרה על-ידי הנאשם לא פגע ברכב הונדה הנ"ל

13. לאחר ביצוע פיגוע הירי האמור, הנאשם █████ המשיכו בנסיעתם לכיוון כביש מס'
9 המחובר בין שכונת רמות לשכונת הגבעה הצרפתית.

14. לאחר שהנאשם █████ ביצעו את פיגוע הירי כפי שתואר
לעיל, השניים המשיכו בנסיעתם ברכב המוזדה לכיוון כביש מס' 9, המחובר בין שכונת רמות
לשכונת הגבעה הצרפתית במטרה להגיע משם לבית חנינא בתחנתך לרמאללה.

15. במהלך הנסיעה הנ"ל, הנאשם, על-פי בקשתו של █████ בדק את הקינותיו של
תמ"ק 5-MP, אשר בו החזיק, ואף ירה מספר כדורים באוויר.

16. במהלך הנסיעה בכביש מס' 9 הנ"ל, בסמוך לשעה 45 ,23, הנאשם █████ הבחינו
ברכב סקודה, מ. ר. 6587709, אשר נסע בכביש מס' 9 לכיוון הגבעה הצרפתית. ברכב הסקודה
הנ"ל נסעו מלכה כהן ובנה ופנחס כהן.

17. הנאשם █████ החליטו לבצע פיגוע ירי לעבר רכב הסקודה הנ"ל ולגרום למותם של
█████. החליטו, כאמור, נהג ברכב המוזדה, עקף את רכב הסקודה █████
הנוסעים בו.

18. בעת ש█████ נסע במקביל לרכב הסקודה הנ"ל, הנאשם ירה בתמ"ק 5-MP מספר
יריות לעבר רכב הסקודה האמור במטרה לגרום למותם של נוסעי רכב הסקודה.

19. מספר קליעים שנורו על-ידי הנאשם פגעו ברכב הסקודה. שני קליעים שנורו על-ידי הנאשם
פגעו בפנחס כהן וקליע נוסף פגע במלכה כהן. אילו מלכה כהן, שהיתה בשבוע
ה-28 להריון, נפצעה באורח קל.

20. פנחס כהן נפצע באורח קשה כתוצאה משבירה שני קליעים בגופו, ואילו מלכה כהן.
נפצעה באורח בינוני מפגיעת קליע בראשה.

21. לאחר ביצוע פיגוע הירי האמור, הנאשם █████ המשיכו בנסיעה לכיוון הגבעה
הצרפתית ומשם הגיעו לבית חנינא החדשה. שם, הנאשם ו█████ התחו את רכב
המזודה █████ ו1, אשר הגיעו למקום האמור בפרט האישום הקודם █████ וירדו לקשר טלפוני עם █████ על מנת לאסוף את הנאשם

22. הנאשם █████ הסתירו את תמ"ק 5-MP הנ"ל ברכב האיסוזו ועלו לרכב האיסוזו.
הנאשם ושלושת חבריו הנ"ל ניסו לחזור מירושלים לרמאללה, אך לא הצליחו לעשות כן בגלל
מחסומי צה"ל והמשטרה. הנאשם וחבריו הנ"ל נשארו ללון אצל █████, חברו של
█████, בבית חנינא החדשה בירושלים.

23. ביום המחרת, 04.10.01, █████ הסיע את הנאשם, ברכב האיסוזו שלו, לרמאללה.

6

P 6: 49

<u>פרט תשיעי</u>: (פ.א. 39/02 בנימין)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשל"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באירוע, ביום 02 15.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. ביום 14.01.02 נהרג ▮▮▮▮ אשר היה מעיל צבאי בכיר ב"תנזים" של ארגון הפת"ח, שהוא התאחדות בלתי מותרת. בעקבות מותו של ▮▮▮▮ הנ"ל, ראש "התנזים" של הפת"ח באיזור ▮▮▮▮ פתח אוהל אבלים באקבירה

2. ביום 15.01.02, הנאשם הניע לאוהל האבלים הנ"ל ונפגש שם עם ▮▮▮▮ (הממונה ▮▮▮).

3. ▮▮▮▮ (הממונה ?) שהוא שומר ראשו של ▮▮▮▮ הנ"ל, ראש "התנזים" של הפת"ח באיזור, מבקש כי הנאשם וחבריו יבצעו באופן מיידי פיגוע נקמה על מותו של ▮▮▮▮ הנ"ל וירגיל למותם של אזרחים ישראליים. לצורך ביצוע הפיגוע, ▮▮▮▮ מסר לנאשם תמ"ק 3 MP-5 ואקדח 16.

4. הנאשם וחבריו הנ"ל, באוהל האבלים הנ"ל, החליטו לבצע עוד באותו ערב פיגוע בתחנת דלק בגבעים הנמצאת בכביש 443 בסמוך לכניסה לטבוע ואב ולגרום למותם של אזרחים ישראליים.

5. בשעות הערב באותו חיום, 15.01.02, יצא מאוהל האבלים הנ"ל ביחד עם ▮▮▮▮ ▮▮▮▮ נסעו ברכב איסוזו טנדר של ▮▮▮▮ לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן, אחרי רכב האיסוזו הנ"ל נסעו הנאשם, החמוש באקדח 14, ו▮▮▮▮, החמוש באקדח 16, ו▮▮▮▮, החמוש בתמ"ק 3 MP-. השלושה נסעו ברכב מזדה בצבע חום בתוי לעבר תחנת הדלק הנ"ל במטרה לבצע שם את הפיגוע המתוכנן.

6. הנאשם וכל חבריו הנ"ל הגיעו עד ערמת עפר החוסמת את היציאה מכפרים ביר נבאללה ואלליב לכביש 443 במרחק של 50-100 מטר מתחנת הדלק הנבעגים. הנאשם וחבריו החנו את כלי הרכב שלהם, איסוזו ומזדה, עם הפנים לכיוון הכפר ביר נבאללה על מנת שיוכלו להימלט מהמקום מיד לאחר ביצוע הפיגוע המתוכנן.

7. הנאשם, החמוש באקדח 14 שלו, ▮▮▮▮ החמוש באקדח 16, ▮▮▮▮ חמוש ב-5 MP-, ירדו מכלי הרכב והלכו לתחנת הדלק הנ"ל במטרה לבצע שם את פיגוע הירי המתוכנן ולגרום למותם של אזרחים ישראליים.

8. ▮▮▮▮ נשארו בכלי הרכב הנ"ל על מנת לשמור שלא יגיע למקום סיור של צה"ל או אנשים אחרים. ▮▮▮▮ ישב בכיסא הנהג ברכב המזדה על מנת שיוכל למלט באופן מיידי את שלושת חבריו שיצאו לבצע את הפיגוע המתוכנן מיד לאחר ביצוע הפיגוע.

9. הנאשם ו▮▮▮▮ עמדו בכניסה לתחנה הדלק הנ"ל.

10. לאחר מספר דקות, בסמוך לשעה 19:45, הנאשם ו▮▮▮▮ הבחינו ברכב פיאט אונו לבן, מ.ר 6424905, שנכנס לתחנת הדלק הנ"ל ונהג בו נהנה יאאלה חן י"ל וילדה יאכלה רשל (רחל) עיני

11. הנאשם ו▮▮▮▮ ניגשו אל רכב הפיאט הנ"ל במטרה לבצע בעברו פיגוע ירי וכגרים למותו של נוסעיו ברכב. נוסעות רכב הפיאט הבחינו באקדחים שבו החזיק הנאשם והחלו לצעוק ולצפור. הנאשם הכניס את האקדח קומכנסיו ואמר לנוסעות ברכב שלא יפחדו

12. בשלב זה, ▮▮▮▮ פתח באש אוטומטית בתמ"ק 5-MP לעבר נוסעות רכב הפיאט במטרה לגרום למותן. אז גם הנאשם שוב הוציא את אקדחו והחל לירות לעבר נוסעות הרכב במטרה לגרום למותן.

13. רנאשם ▮▮▮▮ ירו מטוחח קצר מאוד מספר רב של כדורים לעבר יאאלה חן נ"ל ולעבר רשל (רחל) עיני שהיו ברכב הפיאט הנ"ל.

14. כ-28 קליעים, שנורו על-ידי הנאשם ▮▮▮▮ פגעו בשמישה הקדמנית של הרכב. מספר קליעים פגעו בצד הרכב ובשמשת חלון דלת הנהג.

15. במהלך ביצוע פיגוע הירי המתואר, ▮▮▮▮ אשר עמד במרחק קצר מאחורי הנאשם ו▮▮▮▮ שימש כשומר ומתריע.

16. ▮▮▮▮ מיד לאחר ששמעו את קולות הירי, נסע מהמקום ברכב האיסוזו שלו על מנת להודיע לנאשם וחבריו אם יש מחסומים בדרך לרמאללה.

7

ת"פ 39/02 שילד

17. הנאשם, ▉▉▉▉ לאחר שביצע את פיגוע חירי כאמור לעיל, חזרה בריצה אל רכב
    המזדה שבו המתינו ▉▉▉▉ לאחר שהשלושה הניידו עלו לרכב, הסיע
    אותם לרמאללה.
18. ברמאללה הנאשם, ▉▉▉▉ נפגשו עם ▉▉▉▉
19. לאחר מכן, הנאשם נפגע ברמאללה עם הנ"ל, החזיר לו את תמ"ק ה-5MP ואת
    הרכב וכן ריווח על הפוגעו שביצע כמתואר לעיל.
20. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותם של יהלום חן ז"ל, אשר נפטרה במקום
    כתוצאת מפגיעות הקליעים שנורו על-ידי הנאשם ו▉▉▉▉

**פרט עשירי:**   (פ.א. 39/02 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
[יהודה והשומרון] (מס' 378), תש"ל-1970 וסעיפים 19 לצו בדבר כללי האחריות לעבירות [יהודה
והשומרון] (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 15.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, בסמוך לשעה 19.45, במקום המתואר בפרט האישום הקודם,
במעשיו האמורים בפרט האישום הקודם, ניסה לגרום בכוונה למותם של רשל (רחל) עיני, אשר
נסעה ברכב פיאט אונו לבן, מ.ר. 6424905, המתוארת בפרט האישום הקודם. אחד הקליעים שנורו
על-ידי הנאשם ו▉▉▉▉ כפי שתוארו בפרט האישום הקודם, פגע בראשה של רשל (רחל עיני)
ושני קליעים נוספים פגעו בכתפה השמאלי ופצעו אותה בארוחה בינוני.

**פרט אחד-עשר:**   (פ.א. 3135/00 בנימין)

**מהות העבירה:** פגיעה בביטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות ביטחון
[יהודה והשומרון] (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 12.10.00 או במועד הסמוך לכך, עשה מעשה או מחדל
שיש בהם פגיעה, חיזוק, הפרעה או סכנה לביטחון האיזור או לביטחון כוחות צה"ל וחייליו או
לפעולתם, שימושם או ביטחונם של כל אחד מאלה : אניה, אוירון, נמל, רציף, מזח, מנעו, שדה
תעופה, מסילת ברזל, נתיב מים, דרך, דרך-עפר, כלי רכב, כלי משא או כל אמצעי אחר של הובלה
ציבורית, או תקשורת ציבורית או כל מפעל מוסד. או ציוד המשמש מסווג לשמש ליוצורם,
הספקתם, החסנתם, העברתם, מסירותם או הצצתם של מים, דלק, גז או חשמל או כל רכוש של
מדינת ישראל או של צה"ל, דהיינו :

1. ביום 12.10.00, בסמוך לשעה 10:00, כנכסו שני חיילי צה"ל, רס"ל יוסף אברהמי וייל ורב"ט
   ודים נורוייץ ז"ל בטעות לתוך העיר רמאללה, הותקנו לשליטות הרשות הפלסטינית. מאחר
   ששני חיילי צה"ל הני"ל נסעו ברכב הנושא לוחיות רישוי ישראליות, חבחינו בהם השוטרים
   הפלסטינים המשמרתיים בתחנת המשטרה הפלסטינית ברמאללה ועצרו אותם.
2. לאחר שהשוטרים הפלסטינים הבינו כי מדובר בשני חיילי צה"ל, הם נטלו מרס"ר יוסף
   אברהמי וייל ורב"ט ודים נורוייץ וייל את נשקיהם ואת חפצתם האישיים. הוציאו אותם מתוך
   הרכב, בו נסעו השניים, והכניסו אותם לתוך תחנת המשטרה הפלסטינית ברמאללה. בתוך
   תחנת המשטרה נתקרו רס"ר יוסף אברהמי ז"ל ורב"ט ודים נורוייץ ז"ל בניגוד להתגלגם
   לרמאללה ואף הובן על-ידי השוטרים הפלסטינים שהיו במקום.
3. בסמוך לתחנת המשטרה הפלסטינית ברמאללה עברה באותה עת תהלוכת הלוויה, אשר בה
   השתתפו הנאשם, ונפוצה השמועה כי בתוך תחנת המשטרה נמצאים שני חיילים ישראלים. אז
   פרו האנשים שהשתתפו בלווית אל תחנת המשטרה בניסיון לרצוח את שני חיילי צה"ל שהיו
   שם נאשם עצמו המשיך עם תהלוכת הלוויה.
4. המון המתפרעים, לאחר שהגיע אל תחנת המשטרה הפלסטינית ברמאללה, חרס והעלה באש
   את רכבו של רב"ט ודים נורוייץ ז"ל, אשר נשאר מחוץ לתחנת המשטרה הני"ל.
5. החמון ביקש להיכנס אל תוך תחנת המשטרה הני"ל במטרה לרצוח את רס"ר יוסף אברהמי
   ז"ל ורב"ט ודים נורוייץ ז"ל
6. החמון ניסה להגיע אל תחת של תחנת המשטרה הני"ל. אך שם נעצר על-ידי שוטרים
   פלסטיניים, אשר ביקשו מהחמון כי להתפרץ אל תוך התחנה, כאשר הם מבטיחים להוציא
   את שני חיילי צה"ל אל מחוץ לתחנת המשטרה ואז החמון יוכל לרצוח אותם

6

7. למרות הכל הצליחו מספר רב של המתפרעים להכנס אל תוך תחנת המשטרה תנ"יל בשניריהם אלות, סכינים וצינורות ברזל.

8. המתפרעים אשר הצליחו לחיכנס לתחנת המשטרה תנ"יל, הגיעו אל החדר בקומה השניה שבו היו באותת עת רס"ל יוסף אברהמי ז"יל ורב"יט ודים נירוץ' ז"יל המתפרעים, ביחד עם השוטרים הפלסטיניים שהיו במקום, הוכו את רס"ל יוסף אברהמי ז"יל ורב"יט ודים נירוץ' ז"יל בידיים, בעטו בהם, היכו אותם במכשירים קהים וזקרו אותם במכשירים חדים.

9. המתפרעים תנ"יל חשליכו את רב"יט ודים נירוץ' ז"יל, כשהוא פצוע קשה, מחתלון של החדר תנ"יל בקומות השניה של תחנת המשטרה האמונה, אל חצר התחנה.

10. מספר רב של המתפרעים הגיעו אל רב"יט ודים נירוץ' ז"יל, במטרה לרצות אותו. ההמון הוציא את רב"יט ודים נירוץ' ז"יל לרחוב מחוץ לתחנת המשטרה המשטרה תנ"יל, שם המון המתפרעים המשיך להתעלל את רב"יט ודים נירוץ' ז"יל בכל חלקי גופו.

11. בשלב זה, אנשים שהיו בין המון המתפרעים גררו את רב"יט ודים נירוץ' ז"יל לכיכר מנצארה.

12. הנאשם היה בכיכר מנצארה, כשהוא חמוש ברוס"יר M.16. הנאשם תנ"יל ירה באמצעות רוס"יר M.16 תנ"יל מספר כדורים ברב"יט ודים נירוץ' ז"יל. המון האנשים שהיו במקום הרימו את הנאשם על כתפיהם לאור המעשה שביצע כאמור לעיל אל מול עיניהם.

13. לאחר מכן, האנשים היו במקום שבו ראו על רב"יט ודים נירוץ' ז"יל בנוי והציתו אותו.

14. כתוצאה מהתכונות והדקירות שגרם המון המתפרעים נהרגו חיילי צה"יל רב"יט ודים נירוץ' ורס"יל יוסף אברהמי ז"יל.

## פרט שנים-עשר:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"יל-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם תנ"יל, באיזור, בסוף שנת 2000 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחד, דהיינו:

האנשם תנ"יל, במהלך התקופה האמונה, כסמוך לנומת איה"ש, ב-ג' הזדמנויות שונות, ירה ברוס"יר M.16, אשר אותו קיבל מ████████, לעבר חיילי צה"יל שהיו במקום, וזאת בכוונה לגרום למותם של חיילי צה"יל תנ"יל.

בידת הנאשם היו אנשים רבים נוספים, אשר גם הם ירו לעבר חיילי צה"יל תנ"יל בכוונה לגרום למותם.

## פרט שלושה-עשר: (פ.א. 5/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 375), תש"יל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם תנ"יל, באיזור, ביום 01.01.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחד, דהיינו:

1. הנאשם תנ"יל, במועד האמור, ברמאללה או בסמוך לכך, נפגש עם ████████ יעם, ████████ נסעו ברכב סיאא בצבע לבן, נשא לוחיות ████████ היו חמושים כל אחד בארקדה ████████ רישיון ישראליות הציעו לנאשם לבצע פיגוע ירי לעבר כלי ישראליים באיזור קלנדיה במטרה לגרום למותם של אזרחים ישראליים.

2. האנשם הסכים להצעת הנאשם תנ"יל. האנשם עלה לרכב הסיאאט תנ"יל והתיישב בכיסא' הנתג, הנאשם נתג ברכב הסיאאט מרמאללה לכיוון קלנדיה על מנת לבצע שם את פיגוע הירי המתוכנכ. נסעו ביחד עם האנשם ברכב הסיאאט תנ"יל, כשהם חמושים באקדחיהם תנ"יל.

3. האנשם וחבריו תנ"יל נסעו לצומת קלנדיה ושם לגו שמאלה לכביש המוביל לצומת אדם לאחר חנסיעת של כ-500 מטר. האנשם וחבריו תנ"יל הבחינו ברכב רנו קנגו רב.ד 2924829, אשר בו נסעו וא באו ארז ואגנברג דוד, מכיוון עטרות לכיוון היישוב אדם.

4. האנשם וחבריו תנ"יל החליטו לבצע פיגוע ירי לעבר רכב הרנו תנ"יל בכוונה לגרום למותם של הנוסעים בו.

ת.פ 242/02 נ/חוטבו

P 6: 52

5    הנאשם עקף את רכב הרנו ובזמן שהנאשם נסע במקביל לרכב הרנו, ███ פתחו באש באקדחים, אשר בהם החזיקו, לעבר רכב הרנו בכוונה לגרום למותם של נוסעי רכב הרנו

6    מספר קליעים, אשר נורו על-ידי חברי הנאשם, פגעו ברכב הרנו.

7    קליע אחד, אשר נורה על-ידי חברי הנאשם, פגע-בבב עליון שמאל של אברהם דוד, אשר נסע ברכב הרנו הנ"ל, ופגע את אברהם דוד.

8    מיד לאחר ביצוע פיגוע הירי הנ"ל, הנאשם וחבריו הנ"ל נמלטו מהמקלטה לרמאללה.

---

**פרט ארבעה-עשר:**   (פ.א. 457/01 בנימין)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו1א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשכ"ל-1970 וסעיפים 14(א)ב) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, ביום 25.02.01 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1.   הנאשם הנ"ל, במועד האמור, נפגש ברמאללה עם ███ ███ שהוא ראש "התגונוזי" של ███ ███ שומר ראשו של ███ המת"ח

2.   הנאשם וחבריו הנ"ל דנו במצב באיזור. הנאשם וחבריו הנ"ל טענו כי אין פעילות נגד מטטרות הישראליות. ███ שאל את הנאשם וחבריו הנ"ל מה ניתן לעשות על מנת לשפר את המצב. הנאשם וחבריו הנ"ל ביקשו כי ███ יספק להם רכב וכלי נשק והם יבצעו פיגוע נגד האזרחים הישראליים בכוונה לגרום למותם.

3.   ███ מסר לידי הנאשם וחבריו הנ"ל רכב מסוג פולקסוואגן בורה, צבע אפור, מודל שנת 2001, נושא לוחיות רישוי ישראליות, וכן תמ"יק MP-5 עם מחסנית וכדורים.

4.   הנאשם, ███ נסעו ברכב הנ"ל, כשהם חמושים בתמ"יק MP-5 וברוסיי"ר קלצ'ינקוב. הנאשם וחבריו הנ"ל הגיעו לאיזור גשר עטארה.

5.   בסמוך לשעה 13:15, הנאשם וחבריו הנ"ל הבחינו ברכב GMC ואנדורה, מ.ר. 3082518, אשר בה נהג יוסף כהן, כשהרכב האמור יוצא מיישוב עטרות ופונה לכיוון גשר עטארה.

6.   הנאשם וחבריו הנ"ל החליטו לבצע פיגוע ירי לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של נוסעים בו.

7.   הנאשם וחבריו הנ"ל החליטו להמתין עד שרכב הסיוטרואן שנסע לפניהם יעקוף את רכב ה-GMC ואז לעקוף את רכב ה-GMC ולבצע לעברו את פיגוע הירי המתוכנן.

8.   ברכב הסיטרואן הנ"ל נסעו ███ החמושים ב-2 רוסיי"רי קלצ'ינקוב ורוסיי"ר 16-M. נוסעי רכב הסיטרואן הנ"ל פתחו באש בכלי הנשק הנ"ל לעבר רכב ה-GMC הנ"ל בכוונה לגרום למותם של הנוסעים בו. 29 קליעים שנורו על-ידי האנשים הנ"ל פגעו ברכב ה-GMC הנ"ל. 3 קליעים פגעו בראשו ובצווארו של יוסף כהן, אשר נהג ברכב ה-GMC הנ"ל. כתוצאה מפגיעות הקליעים הנ"ל וכן מפניעות הרסיסים בכל חלקני נופו. יוסף נפצע באורח קשה.

9.   לאחר שהנאשם וחבריו הנ"ל הבחינו כי כתוצאה מפיגוע הירי שבוצע מרכב הסיטרואן שנסע לפניהם, רכב ה-GMC נפגע, רכב ה-מהכביש ונהג הרכב נפצע, הנאשם וחבריו הנ"ל נמלטו מהחזור לרמאללה.

10.   ברמאללה, הנאשם וחבריו הנ"ל החזירו ל-███ את רכב הפולקסוואגן הנ"ל ואת תמ"יק MP-5 הנ"ל. הנאשם, ███ דיווחו ל-███ כי ביצעו פיגוע ירי באמצעות הרכב וכלי הנשק הנ"ל וכי כתוצאה מכך נפצע נהג יהודי.

10

**פרט החמישה-עשר:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצי בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשי״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, באמצע שנת 2001 או בסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו: ▉▉▉▉▉

הנאשם הנ״ל, במועד האמור, נפגש ברמאללה עם ▉▉▉▉▉ ועם ▉▉▉▉▉ . הנאשם וחבריו הנ״ל חלחלטו לבצע פיגוע ירי, אשר במהלכו יירו מרכב חולף לעבר רכב ישראלי באיזור עטרות בכוונה לגרום למותם של אזרחים ישראליים. הנאשם וחבריו הנ״ל יצאו מרמאללה ברכב, אשר בו נהג הנאשם. ליד הנאשם ישב ▉▉▉▉▉ , החמוש באקדח מסוג זיג-זאור וברובה״ר M-16, ובמושב האחורי ישב ▉▉▉▉▉ , החמוש באקדח 14.

הנאשם וחבריו הנ״ל הגיעו לעטרות. שם הנאשם וחבריו הנ״ל הבחינו ברכב GMC עם לוחיות רישוי ישראליות. הנאשם וחבריו הנ״ל החלו לנסוע אחרי רכב ה-GMC הנ״ל במטרה לעקוף אותו ולבצע לעברו פיגוע ירי בכוונה לגרום למותם של הנוסעים ברכב ה-GMC אך ▉▉▉▉▉ טען כי נהג רכב ה-GMC הינו ערבי ולכן הנאשם וחבריו הנ״ל לא ביצעו את פיגוע הירי המתוכנן וחזרו לרמאללה.

---

**פרט שישה-עשר:** (פ.א. 502/02 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשי״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. ▉▉▉▉▉ , שומר ראשון של ראש של ״התנוזיים״ של פת״ח - ▉▉▉▉▉
בחודש ינואר 2002, חלחלט כי ברצונו להוציא לפועל פיגוע התאבדות בתוך שטחה של מדינת ישראל על מנת לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

2. ▉▉▉▉▉ פנה באמצעות טלפון אל ▉▉▉▉▉ , פעיל בכיר ב״התנוזיים״ של הפת״ח, שהוא התאחחות בלתי מותרת, בשם ▉▉▉▉▉ . ביקש כ ▉▉▉▉▉ לשלוח אליו אדם המוכן לבצע פיגוע התאבדות. ▉▉▉▉▉ מסר ל ▉▉▉▉▉ כי הוא עצמו ידאג לרכיב את המתנה המתאבד לירושלים על מנת שיבצע שם פיגוע התאבדות.

3. לאחר מספר ימים, ביום 22.01.02, ברמאללה, ▉▉▉▉▉ נפגש עם סעיד רמדאן, תושב כפר תל בנפת שכם, אשר הודיע כי נשלח על-ידי ▉▉▉▉▉ לצורך ביצוע פיגוע התאבדות.

4. ▉▉▉▉▉ הקשיב אל הנאשם וביקש מהאחרון להגיע אליו.

5. הנאשם נפגש עם ▉▉▉▉▉ ועם סעיד רמדאן הנ״ל באותו היום ברמאללה. הנאשם ערך היכרות בין השניים. הנאשם ▉▉▉▉▉ לקחו את סעיד רמדאן למספרה על מנת שישתפר לפני ביצוע פיגוע ההתאבדות המתוכנן.

6. לאחר מכן, הנאשם ▉▉▉▉▉ התכנסו אל ▉▉▉▉▉ (מכונה ▉▉▉▉▉ ״) וביקשו מהאחרון להסיע מחבל מתאבד מרמאללה לירושלים על מנת שהמתחבל מתאבד יבצע ביירושלים פיגוע התאבדות וינרום למותם של אזרחים ישראליים רבים ככל האפשר.

7. ▉▉▉▉▉ הגיע לרמאללה ביחד עם ▉▉▉▉▉ . וזאת לאחר שהאחרון הסכים להשתתף בהסעת המחבל המתאבד מרמאללה לירושלים. ▉▉▉▉▉ הגיע למפגישה ברכב פרטי ▉▉▉▉▉ לוחיות רישוי ישראליות.

8. לפי הוראתו של ▉▉▉▉▉ נסע ברכב האישריו הנ״ל מרמאללה לירושלים על מנת למצוא דרך שאין בה מחסום משטרה וזאת במטרה להסיע יותר מאוחר באותה הדרך את המחבל המתאבד שיבצע את הפיגוע המתוכנן ביירושלים.

11

ת פ ▉▉▉▉ מ פתוניה

9. ▮▮▮ נסעו מרמאללה דרך ראפאת והגיעו לאיזור התעשיה עטרות, שם השניים חזרו לכביש הראשי ירושלים-רמאללה ונסעו שמאלה עד לצומת המוביל ממחנה רמה, שם הם פנו ימינה ונסעו עד לצומת אדם. בצומת אדם השניים פנו ימינה ונסעו עד לצומת חיזמה, שם הם פנו ימינה ונכנסו לענתא. דרך ענתא, הם הגיעו לצומת הנביאים הצרפתית, שם השניים פנו ימינה וחזרו לרמאללה. ▮▮▮▮▮ 'או כי בדרך שבת נסעו ניתן להוריל את המחבל המתאבד לירושלים מבלי להיעצר במחסומי משטרה וצה"ל.

10. באותו הזמן, ברמאללה, הנאשם ו▮▮▮ לקחו את סעיד רמדאן הנ"ל להתפלל ואף קנו עבור סעיד רמדאן הנ"ל אוכל, בגדים ונעלים חדשים. ▮▮▮ שילם בכספו שלו עבור הקניות הנ"ל סכום של 1,200 ש"ח. הנאשם ▮▮▮ לקחו את סעיד רמדאן לביתו של אחיו של הנאשם על מנת שיחליף שם בגדיו.

11. הנאשם, על-פי בקשתו של ▮▮▮▮▮ הביא רוסי"ר M-16 ו-3 מחסניות לרוסי"ר הנ"ל מלאות בדגירות, כאשר שתי מחסניות היו מחוברות בצולבנת.

12. לפי התכנון של הנאשם וחבריו הנ"יל, היה על סעיד רמדאן להגיע לירושלים ולירות שם באזרחים ישראליים בכוונה לגרום למותם עד שהוא עצמו ייהרג מאש כוחות הביטחון הישראליים.

13. לאחר מכן, באותו היום, הנאשם, ▮▮▮ וסעיד רמדאן נפגשו עם ▮▮▮ באיזור הנמלון "סיטי איגן" באלבירה.

14. הסכירו ▮▮▮ כי סעיד רמדאן הנ"ל הוא המחבל המתאבד, אשר אותו הם צריכים להוביל לירושלים על מנת שיבצע שם פיגוע התאבדות כשיירה לעבר אזרחים ישראליים במטרה לגרום למותם של אזרחים רבים ככל הניתן.

15. ▮▮▮ הסתירו את רוסי"ר M-16 והמחסניות , אשר אותם הביא הנאשם לצורך ביצוע פיגוע התאבדות המתוכנן, ברכב האיסוזו הנ"ל.

16. הנאשם ו▮▮▮ איחלו לסעיד רמדאן הצלחה והשלושה נסעו לירושלים. הנאשם אמר ל▮▮▮ כי עליהם לקחת את סעיד רמדאן לבצע את פיגוע ההתאבדות בכל מקום בירושלים שהם יבחרו.

17. ▮▮▮ נהג ברכב האיסוזו, סעיד רמדאן ישב בכיסא שליד כיסא הנהג ו▮▮▮ התיישב במושב האחורי.

18. ▮▮▮ הסיעו את סעיד רמדאן לירושלים בדרך, אשר אותה בדקו מוקדם יותר באותו היום כפי שתוואר לעיל.

19. בירושלים, ▮▮▮ נסעו לרחוב שיחי ביראח. שם הם הוציאו את רוסי"ר M-16 והמחסניות שהיו מוסתרים בתוך הרכב ומסרו אותם לידי סעיד רמדאן. ▮▮▮ עבר לשבת בכיסא שליד כיסא הנהג ואילו סעיד רמדאן עבר למושב האחורי, כשהוא מחזיק בידיו את רוסי"ר M-16 ואת המחסניות.

20. ▮▮▮ הסיעו את סעיד רמדאן לרחוב הנביאים.

21. במהלך הנסיעה, סעיד רמדאן התלונן בפני ▮▮▮ כי הנעלים החדשות, אשר אותם קנה לו הנאשם עבור הפיגוע, קטנות ולוחצות לו. ▮▮▮ הוריד את נעלי "ריבוק" ומסר אותן לסעיד רמדאן באומרו "תעלה לגן עדן עם נעלי "ריבוק"".

22. בהגיעם לצומת הרחובות שטראוס והנביאים, ▮▮▮ עצרו את רכב האיסוזו.

23. ▮▮▮ אמרו לסעיד רמדאן לרדת ברגל לרחוב יפו ולהתחיל לירות במקום שיראה בו הרבה אנשים.

24. לאחר שסעיד רמדאן ירד מהרכב עם רוסי"ר M-16 והתחמושת, ▮▮▮ נסעו מהמקום ברכב האיסוזו, יצאו דרך שכונת מוסררה לכביש מספר 1, ומשם נסעו דרך הכביש הראשי לרמאללה.

25. סעיד רמדאן, מספר דקות לאחר שירד מהרכב של ▮▮▮ הגיע לרחוב יפו.

26. בסביבות השעה 16.20, כשהוא עומד מול בית מסי 47 ברחוב יפו או בסמוך לכך, סעיד רמדאן טען את רוסי"ר M-16, אשר אותו טיפק הנאשם, צעק "יאללה הוא אכבר" ופתח בירי אוטומטי לכל עבר, לעבר האנשים שהיו ברחוב יפו, בתחנת האוטובוס הנמצאת במקום, בתוך אוטובוס "אגד" קו 27 שחיה באותה עת בתחנה הנ"ל וכן לעבר האנשים שהיו בתוך החנויות הסמוכות בכוונה לגרום למותם של אנשים רבים ככל הניתן. סעיד רמדאן, כשהוא ממשיך לירות, נמלט מהמקום לעבר התניון הנמצא ברחוב הרב קוק. שם סעיד רמדאן החליף מחסניות וממשיך לירות לעבר האזרחים בכוונה לגרום למותם. סעיד רמדאן ירה ברוסי"ר M-16, שני החיים, מעל 38 כדורים. סעיד רמדאן המשיך לירות לעבר האזרחים עד שנהרג על-ידי האזרחים והשוטרים שהגיעו למקום.

ת.פ 242/02 שחיתי

27. במעשיו המתוארים לעיל, חמאשם הנ"ל גרם בכוונה למותה של אורח (סבטלנה) סנדלר ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן.

28. לאחר שנודע ל▇▇▇▇ על ביצוע הפיגוע הנ"ל, ▇▇▇▇▇ ניגש אל ▇▇▇▇ וקיבל מהאחרון סכום של 1,000 דולר ארה"ב עבור ביצוע הפיגוע הנ"ל. ▇▇▇▇▇ נתן לנאשם וכן ל▇▇▇▇ 100 דולר ארה"ב לכל אחד עבור השתתפותם בהוצאה לפועל של הפיגוע הנ"ל.

### פרט שבעה-עשר:  (פ.א. 502/02 ציון)

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970) וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 02 01 22 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום בכוונה למותה של שרה המבורגר ז"ל, אשר נפטרה כתוצאה מפגיעות הקליעים שנורו על-ידי סעיד רמדאן ברוסי"ר M-16, אשר אותו סיפק הנאשם.

### פרט שמונה-עשר:  (פ.א 502/02 ציון)

<u>מהות העבירה</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970) וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה</u>: הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 22.01.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום בכוונה למותה של אזרחים רבים ככל היתן, אשר היו באותת עת ברחוב יפו וכתרבתו. כתוצאה מהירי שבוצע במקום על-ידי סעיד רמדאן ברוסי"ר M-16, אשר אותו סיפק הנאשם נפצעו מעל 45 אזרחים.

### עדי התביעה:



| | |
|---|---|
| לחייק יהודה. [גובה אמרת הנאשם מיום 25 02 02] | 1 |
| לחייק יהודה. [גובה אמרת הנאשם מיום 19.03.02] | 2 |
| ▇, לחייק יהודה. [גובה אמרת הנאשם מיום 18.04 02] | 3 |
| ▇▇ (עצור) (ת.ת. | 4. |
| . (עצור) (ת.ת. | 5. |
| (עצור) (ת.ת | 6. |
| (עצור) (ת.ת. | 7 |
| (עצור) | 8 |
| (עצור) (ת.ת. | 9 |
| (עצור) (ת.ת | 10. |
| (עצור) | 11 |

### פ.א. 3135/00 בנימין

| | |
|---|---|
| (עצור) (ת.ת. | 12. |
| (עצור) (ת.ת. | 13. |
| (עצור) (ת.ת | 14. |
| (עצור) (ת.ת. | 15. |
| (עצור) | 16. |
| , תחנת בנימין [עדות] | 17 |
| [פרטיים בתביעה] [עדות] | 18 |

ת.פ. 42/02 מתיכו

19. ▮▮▮▮▮ ביה"ח הדסה עין-כרם, ירושלים [מגיש תעודת רופא מיום
01.07.13] [יוזמן ע"פ דרישה מפורשת של הסניגוריה בלבד]

20. ▮▮▮▮▮ המרכז הלאומי לרפואה משפטית. [מגיש חוו"ד מומחה] [יוזמן ע"פ דרישה
מפורשת של הסניגוריה בלבד]

**פ.א. 5/01 בנימין**

21. ▮▮▮▮▮ זיהוי יהודה. [מגיש דו"ח ביקור/תפיסה וסימון + דו"ח
פעולה/תפיסה וסימון + לוחות תצלומים]

22. ▮▮▮▮▮ [פרטים בתביעה] [נסע ברכב שנפגע]

23. אברהם דוד, ת.ז. 033781949. [פרטים בתביעה] [נפגע בפיגוע]

**פ.א. 234/01 מת"ן י-ם**

24. ▮▮▮▮▮ צה"ל. [פרטים בתביעה] [עדות]

25. ▮▮▮▮▮ [פרטים בתביעה] [עדות]

26. ▮▮▮▮▮ [פרטים בתביעה] [עדות]

27. ▮▮▮▮▮ מז"פ - תחנת ציון. [מגיש דו"ח תפיסה וסימון]

28. ▮▮▮▮▮ המעבדה הניידת, מז"פ, מטא"יר - ירושלים. [מגיש דו"ח
בדיקת רכב]

29. ▮▮▮▮▮ חקירות - תחנת ציון. [מגיש טופס לווי למוצגים]

30. ▮▮▮▮▮ משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגיש
תע"יצ - קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

31. ▮▮▮▮▮ מעבדת נשק, מז"פ, מטא"יר - ירושלים. [מגיש חוו"ד מומחה מתיק
מז"פ 555/01 ו/ו01.] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

32. ▮▮▮▮▮ צה"ל. [עדות - קביעת מותו של אלעוג עקיבא פשקוס ז"ל]

33. ▮▮▮▮▮ קופ"ח כללית - ירושלים. [עדות + מגיש הודעת פטירה]

**פ.א. 457/01 בנימין**

34. ▮▮▮▮▮ תחנת בנימין. [מגיש דו"ח פעולה]

35. ▮▮▮▮▮ תחנת בנימין. [מגיש זכ"י-דרכב GMC + שרטוט וירח
האירוע + דו"ח תפיסה וסימון + טופס לווי למוצגים]

36. ▮▮▮▮▮ מז"פ יהודה. [מגיש לוחות תצלומים + מוזר]

37. ▮▮▮▮▮ המעבדה הניידת, מז"פ - מטא"יר, ירושלים. [מגיש
לוחות תצלומים + דו"ח בדיקת רכב]

38. יוסף כהן, ת.ז. 069397198. [פרטים בתביעה] [נפצע בפיגוע הירי]

39. ▮▮▮▮▮ [פרטים בתביעה] [הגיע ראשון לזירת הפיגוע]

40. ▮▮▮▮▮ ביה"ח הדסה - הר-הצופים, ירושלים. [מגיש/ה תעודת
רופא - סכום ביניים] [תזומן לפי דרישה מפורשת של הסניגוריה בלבד]

**פ.א. 2159/01 בנימין**

41. ▮▮▮▮▮ תחנת בנימין. [מגיש דו"ח פעולה]

42. ▮▮▮▮▮ מז"פ, תחנת בנימין. [מגיש לוחות תצלומים + דו"ח

43. ▮▮▮▮▮ המעבדה הניידת, מז"פ, מטא"יר - ירושלים. [מגיש דו"ח
תפיסה וסימון]

44. ▮▮▮▮▮ ביקור ראשוני בזירת האירוע - תפיסת תרמילים ושרידי קליעים]
▮▮▮▮▮ תחנת בנימין. [מגיש זכ"יד - שרשרת מיצג + טופס
לווי למוצגים + דו"ח ביקור בזירת העבירה]

45. ▮▮▮▮▮ משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגיש
תע"יצ - קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

46. ▮▮▮▮▮ מעבדת נשק, מז"פ, מטא"יר - ירושלים. [מגיש חוו"ד מומחה מתיק מז"פ
ו/ו07 - 4238/01.] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

47. ▮▮▮▮▮ מד"א - תחנת לוד. [מגיש דו"ח/ות רפואיים מהשטח +
הודעות פטירה + עדות]

48. ▮▮▮▮▮ צה"ל. [עדות]

49. ▮▮▮▮▮ המכון הלאומי לרפואה משפטית. [מגיש שתי חוו"ד מומחה] [יוזמן לפי
דרישה מפורשת של הסניגוריה בלבד]

50. ▮▮▮▮▮ [פרטים בתביעה] [זיהוי הרוגים]

14

P 6: 57

פ.א. 7915/01 ציון

51. ████████, תחנת ציון. [מגיש דו"ח פעולה]
52. ████████, מז"פ - תחנת ציון. [סנגיש דו"ח ביקור ראשוני בזירה +
לוחות תצלומים]
53. ████████ תחנת ציון. [מוצא תרמילים בזירת האירוע - שרשרת ראיות]
54. ████████ המעבדה הניידת, מז"פ, מטא"יר - ירושלים. [מגיש דו"ח
בדיקת רכב - תפיסת שרידי קליע]
55. ████████ - מתי"מ - תחנת ציון. [מגישה טופס לוואי למוצגים]
56. ████████ משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגישה תעי"צ -
קבלת מוצגים לבדיקה] [תכונו לפי דרישה מפורשת של הסניגוריה בלבד]
57. ████████, מעבדת נשק, מז"פ, מטא"יר - ירושלים. [מגיש חו"ד מומחה מתיק מז"פ
זב/ 07/ - 4539/01] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
58. ████████ בית"ח הדסה עין-כרם, ירושלים [מגיש תעודת שחרור של
משה וייס] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
59. ████████ בית"ח הדסה עין-כרם, ירושלים. [מגיש חודעת פטירה של מאיר
וייסבוד ז"ל] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
60. ████████ משה וייס. ת.ז. 024001505. [פרטים בתביעה] [מפצע קשה בפיגוע]
61. ████████ [פרטים בתביעה] [עדת ראיה]

פ.א. 481/01 ציון

62. ████████ טוני עמראל. ת.ז. 032441040. [פרטים בתביעה] [נהגת רכב ההונדה]
63. ████████ פיני מימון. ת.ז. 025759762. [פרטים בתביעה] [נוסע ברכב ההונדה]
64. ████████ מזית מימון. ת.ז. 040128084. [פרטים בתביעה] [נוסעת רכב ההונדה]

פ.א. 8379/01 ציון

65. ████████, מז"פ - תחנת ציון. [מגיש דו"ח ביקור ראשוני בזירה +
דו"ח תפיסה וסימון]
66. ████████ מתי"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
67. ████████ המעבדה הניידת, מז"פ, מטא"יר - ירושלים [מגיש דו"ח
בדיקת רכב - תפיסת שרידי קליע]
68. ████████ מתי"מ - תחנת ציון. [מגיש טופס לוואי למוצגים]
69. ████████, משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגיש תעי"צ -
קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
70. ████████, משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגיש תעי"צ
- קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
71. ████████, מעבדת נשק, מז"פ, מטא"יר - ירושלים. [מגיש שתי חווי"ד מומחה מתיק
מז"פ זב/ 07/ - 4723/01] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
72. ████████, תחנת ציון. [מציאת תרמילים בשטח - שרשרת ראיות]
73. ████████ מלכה כהן, ת. ז. 038791386. [פרטים בתביעה] [נפגעה בפיגוע]
74. ████████ מנחם כהן, ת.ה. 038348256. [פרטים בתביעה] [נפגעה בפיגוע]
75. ████████ [פרטים בתביעה] [עד ראיה - טיפל בפצועים]
76. ████████ בית"ח הדסה עין-כרם, ירושלים [מגיש תעודת שחרור של
מנחם כהן] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
77. ████████ בית"ח הדסה עין-כרם, ירושלים. [מגיש תעודת שחרור של
מלכה כהן] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]

פ.א. 39/02 בנימין

78. ████████, סיור - תחנת בנימין. [מגיש דו"ח פעולה]
79. ████████, תחנת בנימין. [מגיש וכ"ד תחקור+תפיסה וסימון]
80. ████████ מז"פ יהודה. [מגיש לוחות תצלומים + אסף תרמילים
בזירת האירוע]
81. ████████ המעבדה הניידת, מז"פ, מטא"יר - ירושלים. [מגיש לוחות
תצלומים + דו"ח בדיקת רכב]
82. ████████, תחנת בנימין. [מגיש טופס לוואי למוצגים]
83. ████████ משרד מוצגים - מז"פ, מטא"יר - ירושלים. [מגישה תעי"צ -
קבלת מוצגים לבדיקה] [יוזמן לפי דרישה מפורשת של הסניגוריה בלבד]
84. ████████ צהיל. [פרטים בתביעה] [עדות - קביעת מיתה של יאלה
חן ז"ל + טיפול בפצועים]

ה.ת. 202/24 מתוך

85. ביה"ח הדסה עין-כרם, ירושלים. [מגיש תעודת רופא -
סיכום מחלה של רשל (רחל) עיני] [זימון לפי דרישה מפורשת של הסניגוריה בלבד]
86. רחל (רשל) עיני, ת.ז. 075966614. [פרטים בתביעה]. [נמצאת בפיגוע]
87. [פרטים בתביעה] [עדות + סקיצה] [עד ראיה]
88. [פרטים בתביעה] [זיהוי ההרוגה]

**מ.א. 502/02 ציון**

89. [                    ] מתי"מ - תחנת ציון. [מגיש דו"ח זכ"יד, תפיסה וסימון]
90. [                    ] מתי"מ - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
91. [                    ] מתי"מ - תחנת ציון. [מגיש דו"ח זכ"יד, תפיסה וסימון + תצלומים]
92. [                    ] מתי"מ - תחנת ציון. [מגיש דו"ח פעולה - מציאת צולבת]
93. תשאול - תחנת ציון. [מגיש דו"ח תפיסה וסימון]
94. [פרטים בתביעה] [עד ראיה - רדף אחרי המחבל]
95. מג"ב ירושלים. [עד ראיה - רדף אחרי המחבל וירה לעבר המחבל]
96. [                    ] יח"יד 2 - תחנת ציון. [עד ראיה - ירה לעבר המחבל]
97. [                    ] ימ"יר ירושלים. [עד ראיה - רדף אחרי המחבל וירה לעבר המחבל]
98. [                    ] יסי"מ אופנועים - תחנת שלם. [עד ראיה - רדף אחרי המחבל, הרחיק את נשקו של המחבל לאחר שהמחבל נהרג]
99. [                    ] [פרטים בתביעה] [עד ראיה - מאבטחת שהיה במקום - ירה לעבר המחבל ופגע בו]
100. [                    ] בילוש - ימ"יר ירושלים. [עד ראיה - רדף אחרי המחבל, ירה לעבר המחבל]
101. [                    ] בילוש - ימ"יר ירושלים. [עד ראיה - ירה לעבר המחבל]
102. [פרטים בתביעה] [עד ראיה - נהג אוטובוס "אגד" שזיהה
במקום הפיגוע]
103. [פרטים בתביעה] [עד ראיה]
104. [                    ] [פרטים בתביעה] [עד ראיה]
105. [פרטים בתביעה] [עד ראיה]
106. [                    ] [פרטים בתביעה] [עד ראיה]
107. [פרטים בתביעה] [עדת ראיה]
108. [פרטים בתביעה] [עד ראיה]
109. [פרטים בתביעה] [עד ראיה]
110. [פרטים בתביעה] [עד ראיה - ראה את המחבל מגיע למקום
הפיגוע ברגל]
111. [פרטים בתביעה] [זיהוי גופתה של אורח (סבטלנה) סנדלר
112. [                    ] ביה"ח הדסה עין-כרם, ירושלים. [הזומן לפי דרישה הודעת פטירה של
אורח (סבטלנה) סנדלר ז"ל] [הזומן לפי דרישה מפורשת של הסניגוריה בלבד]
113. [                    ] ביה"ח הדסה עין-כרם, ירושלים. [מגישה הודעת פטירה של שרה
המברורר ז"ל] [הזומן לפי דרישה מפורשת של הסניגוריה בלבד]
רשימת עדים נוספת בנוגע לפציעים בפיגוע ברחוב יפו ביום 22.01.02 והעדות רפואיות הקשורות
לפציעתם תימסר במהלך המשפט

מיכאל מורייבים     סרן
צבאי                  תובע

תאריך - 12.01.2003
סימוכין 242-02 מתוקן

16

P 6: 59