

Squire Patton Boggs (US) LLP
30 Rockefeller Plaza
23rd Floor
New York, NY 10112

O    +1 212 872 9800
F    +1 212 872 9815
squirepattonboggs.com

Gassan A. Baloul
gassan.baloul@squirepb.com

July 16, 2015

Honorable George B. Daniels
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
Room 1310
500 Pearl Street
New York, NY 10007-1312

      Re:    Motion for Conference Regarding Plaintiffs' Unauthorized Sur-reply; *Sokolow v. Palestine Liberation Organization, et al.*, No. 1:04-cv-0397 (GBD)

Dear Judge Daniels,

      We are counsel to the Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") in this action. The Court has scheduled oral argument for July 28 on all open motions[1] related to the February 23, 2015 verdict in this case, including the PA and PLO's Rule 62 Motion for Stay and to Waive the Bond Requirement ("Rule 62 Motion") (Dkt. #897). Briefing completed on the Rule 62 Motion on June 15, 2015, pursuant to an agreed schedule entered by the Court on May 11, 2015 (Dkt. #904). We respectfully request a prompt telephone conference with the Court concerning Plaintiffs' untimely and unauthorized July 13 filing of extensive sur-reply papers opposing the Rule 62 Motion, including purported expert affidavits and reports and documents, none of which was previously disclosed ("Unauthorized Sur-reply"). (Dkt. ##928-931).

      The PA and PLO respectfully request further that the Court strike Plaintiffs' Unauthorized Sur-reply and not consider it in connection with Defendants' Rule 62 Motion. Plaintiffs have flouted the Court's briefing Order, the Court's Rules, and the Local and Federal Rules. *See Homeless Patrol v. Joseph Volpe Family*, 09 Civ. 3628, 2010 U.S. Dist. LEXIS 73914, at *21 (S.D.N.Y. June 29, 2010) (Maas, M.J.) ("Kastner was not granted leave to file any surreplies. Accordingly, I have not considered their contents."), adopted by *Homeless Patrol v. Volpe Family*, 09 cv 3628, 2010 U.S. Dist. LEXIS 73888 (S.D.N.Y. July 20, 2010) (Daniels, J.).

---

[1] Defendants' Motion for Judgment as a Matter of Law, Dkt. 794, filed 2/9/2015; Defendants' Motion for Judgment as a Matter of Law, Dkt. 818, filed 2/18/2015; Plaintiffs' Notice of Presentment of Proposed Judgment, Dkt. 822, filed 2/23/2015; Plaintiffs' 2/25/2015 Notice of Presentment of Correct Proposed Final Judgment, Dkt. 826; Plaintiffs' 3/5/2015 Letter to Judge Daniels with a Revised Proposed Final Judgment, Dkt. 884; Defendants' Renewed Motion to Dismiss for Lack of Personal Jurisdiction, and in the Alternative, Motion for Judgment as a Matter of Law or New Trial under Rule 50(b) and Rule 59, Dkt. 895, filed 5/1/2015; Defendants' Motion to Stay Execution of the Judgment and Waive the Bond Requirement, Dkt. 897, filed 5/4/2015.

44 Offices in 21 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP

July 16, 2015

The PA and the PLO are substantially prejudiced by the filing of the Unauthorized Sur-reply just two weeks prior to argument on the Rule 62 Motion. The PA and PLO have no opportunity to test the opinions of Plaintiffs' purported new experts, or to respond thoroughly to Plaintiffs' brief and affidavits with their own evidence. Even if given permission by this Court to respond, the PA and PLO cannot complete a comprehensive response in time for the July 28 argument.

Alternatively, if the Court does not strike Plaintiffs' Unauthorized Sur-reply, the PA and PLO respectfully request that the Court adjourn argument on the Rule 62 Motion, and allow Defendants to submit responsive papers before that argument is rescheduled. If necessary, Defendants also respectfully request that the Court stay entry of and execution on the judgment for the interim period pending the rescheduled argument on the Rule 62 Motion.

## Background

In early May, Plaintiffs asked counsel for the PA and PLO to agree to a briefing schedule on the Rule 62 Motion that included time for Plaintiffs to file a cross-motion seeking payment by the PA and PLO of funds into the Court's registry for purposes of securing a Rule 62 stay. The PA and PLO objected that we "consider the proposed cross-motion to be material that properly belongs in an opposition, and that any reply in support of that cross-motion would be an improper sur-reply." Ex. A (May 7 email from Burlingame to Yalowitz). Plaintiffs' counsel responded later that day that "[y]ou should not assume by our silence on the subject of a cross-motion that we agree with your position. However, we can address that issue at the appropriate time." *Id.*

Plaintiffs' proposed briefing schedule (Dkt. #902), which the Court endorsed (Dkt. #904), provided that "Defendant's reply," due June 15, 2015 would close the briefing on the Rule 62 Motion. Plaintiffs never again raised the "cross-motion" issue, either with the Court or with counsel, thereby leaving the Court-approved briefing schedule as the last word on the subject.

When Plaintiffs filed their Opposition on May 29, Plaintiffs' brief was styled simply as that, although it stated on a separate line on the cover page that it contained an "Application" for payment of funds into the registry. At the time, counsel for the PA and PLO confirmed with the Clerk's Office that Plaintiffs had not recorded the filing as a separate motion or cross-motion, as would be required by ECF procedure and Local Rule 7. *See* ECF Docket (recording Plaintiffs' May 29 solely as a "MEMORANDUM OF LAW in Opposition re: 897 MOTION to Stay *Execution of the Judgment and to Waive the Bond Requirement*"). The body of the Opposition did not contain any further references to the "Application" or to a cross-motion, but simply included a section arguing that Court should order payment of some security into the Court's registry instead of granting the PA and PLO's Rule 62 Motion to waive the bond requirement.

## Plaintiffs' Sur-Reply is Unauthorized and Untimely

Plaintiffs likely will respond with a semantic debate about the word "application." But Plaintiffs' May 29 Opposition focused only on the denial of the Rule 62 Motion to waive the bond requirement. Likewise, Plaintiffs' unauthorized "Reply" also is focused singularly on challenging the substance of the Rule 62 Motion and the supporting Declaration of PA Minister of Finance Shukry Bishara. In substance, Plaintiffs' July 13 papers are a sur-reply, no matter how they are labeled. *See*

Squire Patton Boggs (US) LLP

July 16, 2015

*Planck v. Schenectady County*, No. 12-336, 2012 U.S. Dist. LEXIS 76241, *4-5 (N.D.N.Y June 1, 2012) (striking unauthorized surreply that used the reply on cross-motion to address the plaintiff's original motion, because the "reply may address only the party's own cross-motion, and not the opponent's original motion; otherwise, the "reply" would, in part, constitute a surreply"); *see also Carlwood Dev. Inc. v. U.S.*, No. 10-1773, 2011 U.S. Dist. LEXIS 4194, at *3-4 (D. Nev. Jan. 10, 2011) (explaining that the court "construed the [cross-motion] as only a response to the opening brief, and not a cross-motion," and ordering that the reply brief supporting the cross-motion be struck from the docket, because "[t]he Government's purported cross-motion is, therefore, nothing more than a disingenuous attempt to get the last word").

Had Plaintiffs sought to do more than simply oppose Defendants' request to waive the bond requirement, then Plaintiffs would have been required under Local Rule 7.1(b), at the very least, to file a separate Notice of Motion. They did not do so. Nor did they seek the Court's permission to submit a sur-reply. *See* Individual Rules and Practices of Judge George B. Daniels, Rule III.B (5/11/2015) ("Sur-reply memoranda will not be accepted without prior permission of the Court.").

Beyond those failings and Rule violations, even if their so-called "Reply" could be considered a legitimate reply in support of a genuine cross-motion, Plaintiffs are impressively late. Local Rule 6.1(b) requires a Reply to be filed within 7 days after the response is filed. Plaintiffs' "Reply" thus would have been due on June 22, 7 days after Defendants filed their Rule 62 Reply.

Clearly attempting an ambush, Plaintiffs prepared and filed their sur-reply papers without any advance disclosure to the Court or to Defendants. Plaintiffs apparently will seek to explain away their untimely actions with the same assertion they made in their July 14 cover letter to the Court, namely that their July 13 "Reply" contains evidence that only recently became available. *See* July 14 letter from Yalowitz to J. Daniels (not filed on ECF). This is simply not true. Plaintiffs base their sur-reply papers entirely on evidence and documents that Plaintiffs admit have been available since at least 2009, or that were submitted with the Rule 62 Motion. Further, Plaintiffs' "expert" reports and declarations necessarily have been in process for many weeks; indeed, Plaintiffs conspicuously omit the date when they engaged these experts and the experts' engagement letters, suggesting that the experts were hired even before Plaintiffs filed their Rule 62 Opposition.

Confirming this point, Plaintiffs have submitted the affidavit of Eitan Arusy, an investigator who claims, based on unnamed "confidential sources," that the PLO has substantial undisclosed assets. Arusy Aff. at ¶¶ 12, 15, 17, 18. Mr. Arusy's affidavit claims that this information has been available since 2009, thus refuting Plaintiffs' assertion that this is "additional evidence that has become available to plaintiffs since" they filed their Opposition on May 29. July 14 letter from Yalowitz to J. Daniels (not filed on ECF).[2] In any event, the PA and PLO cannot properly and fully

---

[2] Further, even a cursory review shows that Mr. Arusy's affidavit contains fatal methodology and evidentiary flaws, warranting the exclusion of the affidavit as a matter of substance. For example, Mr. Arusy makes numerous unsupported allegations about PLO business interests and assets. Mr. Arusy claims that the PLO established two companies, Samed and Al-Sachra, in the 1970's "to hold and manage the PLO's assets and investments." *Id.* at ¶ 8. He alleges, without any documentary or other evidentiary support, that "Fatah and PLO leadership" transferred PLO assets from Samed and Al-Sachrah into Al-Sanabel. He does not describe which PLO assets Samed and Al-Sachrah previously held, or which of those assets were transferred to Al-Sanabel. He does not document any ownership interest the PLO has in Al-Sanabel, noting only that four senior PLO, PA, and/or Fatah officials are shareholders in Al-Sanabel. Further, he does not

test the assertions of an investigator who refuses to disclose his primary sources of information, and certainly cannot do so on short notice, given that Mr. Arusy is located in Tel Aviv.

Similarly, Plaintiffs have submitted the affidavit of Bradley Wendt, a purported "municipal finance" expert, regarding the PA's "ability to pay the Plaintiffs' awarded damages of $655.5 million out of operating income," and further, "what is a reasonable time horizon for the PA" to do so. Wendt Aff. at ¶ 2. Plaintiffs, or their experts, should have addressed these questions in their May 29 Opposition, because both issues arise entirely out of the Rule 62 Motion. Mr. Wendt's analysis is based exclusively on documents created prior to the May 29 Opposition—primarily, the Bishara Declaration and its supporting exhibits, which were attached to the May 4, 2015 Rule 62 Motion; a May 18, 2015 International Monetary Fund report; a May 27, 2015 World Bank report; and, a March 31, 2015 U.N. report. *See* Wendt Aff. (all footnotes and exhibits to the affidavit); *id.* at Ex. 2 (listing of all documents considered, including only one document dated after May 29, 2015, which appears not to be cited in the affidavit). All of these sources were available prior to the filing of Plaintiffs' Opposition on May 29, contrary to their July 14 representation to this Court. *See* July 14 letter from Yalowitz to J. Daniels (not filed on ECF).

A preliminary review raises critical questions about the propriety and admissibility of Mr. Wendt's testimony, moreover. Mr. Wendt is actually opining on geopolitics and the proper operation of the Palestinian government, not on any "municipal finance" issue within his expertise. His breathtaking thesis is that, if the PA merely fixes longstanding fundamental political, social and macroeconomic problems, then the PA can readily pay or secure the *Sokolow* verdict. Among Mr. Wendt's suggestions are that the PA should "resolv[e] commercial issues with [the government of] Israel that, once resolved, will generate approximately $230 million per year for the PA." Wendt Aff. at ¶ 43. Indeed. These same questions have confounded no less than the United Nations, the International Monetary Fund, the World Bank, the U.S. government, and the PA, but domestic politics in Israel have blocked any Israeli government progress on this front. If Mr. Wendt's "municipal finance" expertise has given him the tool-kit for cutting this Gordian Knot with Israel, then he should be eligible for Nobel Prizes in both Peace and Economics.

While Mr. Wendt purports simply to be applying recommendations made by the IMF, among other independent observers, he has selectively relied on the IMF reports to advance his conclusions. *See* Wendt Aff. at ¶ 53. Noticeably absent from Mr. Wendt's consideration is the IMF's warning just two months ago, in April 2015, that the PA is in a "financial crisis" that "would deepen with the potential need to meet financial obligations related to the [*Sokolow*] private lawsuit" and that this "financial crisis, in turn, could lead to social unrest and strikes and ultimately, if left unchecked, would threaten the PA's financial viability." *See* IMF Assessment Letter of April 8, 2015 (Dkt. # 899-4), at ¶ 8.

Equally misguided is Mr. Wendt's suggestion that the PA should generate cost-savings by drastically reducing its "largest" and "outsized" expenditures on "[p]ublic order and safety." Wendt

---

explain how the PLO can access Al-Sanabel's assets. Mr. Arusy makes other unsubstantiated claims that the PLO owns real estate and factories, but fails to provide the names, locations or any other identifying information or evidence to support those claims.

Squire Patton Boggs (US) LLP

July 16, 2015

Aff. at ¶¶ 31-34.  This suggestion is alarming, to say the least, given Secretary of State Kerry's recent reminder of the PA's vital role in protecting the regional "security of both Palestinians and Israelis." *See* PA/PLO Rule 62 Reply (Dkt. #925), at 2.

### Prejudice to Defendants and Request for Relief

As the above examples illustrate, the PA and PLO have substantial bases to dispute Plaintiffs' late-filed expert reports. However, the PA and PLO cannot reasonably or effectively do so at the eleventh hour before the July 28 argument on the Rule 62 Motion. The July 28 argument date has long been set, and the PA and PLO have been diligently preparing to be heard on their Rule 62 Motion and other open motions. Much is at stake: if the PA is forced to pay the *Sokolow* verdict, or to make substantial payments to the Court to secure that verdict, the PA's current "financial crisis . . . would deepen" and could spin off into "social unrest and strikes" and "threaten the PA's financial viability." IMF Assessment Letter of April 8, 2015 (Dkt. # 899-4), at ¶ 8.

Although ruination of the PA is Plaintiffs' stated objective,[3] Plaintiffs should not gain a head-start toward their goal by violating the Rules against sur-replies and ambushing Defendants with last-minute, surprise experts. The PA and PLO accordingly request that the Court strike Plaintiffs' Unauthorized Sur-reply in its entirety.

If the Court is not inclined to strike Plaintiffs' Unauthorized Sur-reply, then the PA and PLO should have the opportunity to respond comprehensively. The PA and PLO need time to do so, however, which would necessitate an adjournment of the July 28 argument on the Rule 62 Motion, although the July 28 argument could proceed as to all other open motions. In that event, and to avoid any unintended consequences until the Rule 62 Motion can be argued, the Court should stay judgment-execution for the interim period pending rescheduled argument on the Rule 62 Motion.

Respectfully submitted,

Gassan A. Baloul

cc: All Counsel

---

[3] *See* PA/PLO Rule 62 Reply (Dkt. #925) at 1, n.3 ("In truth, as Plaintiffs' counsel has declared repeatedly to the international media, their goal is entirely political: to use *Sokolow* to create "financial instability" in order to "obstruct" and "bankrupt" the PA and PLO, and thereby extinguish any chance for Palestinian Statehood: "If they want to become a State, they have to show that they can meet their obligations.").