Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK I. SOKOLOW, et al.,<br>　　　Plaintiffs,<br><br>v.<br><br>PALESTINE LIBERATION ORGANIZATION, et al.,<br>　　　Defendants. | No. 1:04-cv-0397 (GBD) (RLE) |

## DECLARATION OF ABDEL HAMID AL ABWAH

I, ABDEL HAMID AL ABWAH, declare, Pursuant to 28 U.S.C. § 1746, as follows:

1.　I am the Chief Audit Executive of the Palestine Investment Fund ("PIF"). In that capacity, my responsibilities include oversight of PIF's audit, governance and risk management functions. In that capacity, further, I have personal knowledge of the facts set forth in this Declaration, unless otherwise stated herein.

2.　I have been informed of assertions made on July 13, 2015, on behalf of the Plaintiffs in the lawsuit captioned above, concerning the relationship between PIF and the Palestinian Authority ("PA"). This Declaration responds to those assertions, and explains the independence of PIF from the PA, and the Bylaws under which PIF operates.

3.　PIF has a comprehensive transparency and disclosure policy that is in line with international leading practices to ensure timely and full disclosure of its finances, operations, and investment activities. PIF prepares its annual financial statements in accordance with International Financial Reporting Standards. These financial statements are independently

1

audited by Ernst & Young ("EY").  In line with PIF's principles of transparency and accountability, PIF's audited financial statements and EY's Independent Auditor's Report to the Shareholders of PIF are included in the PIF annual report, which is published and is available on PIF's website (http://www.pif.ps, and, in English, http://www.pif.ps/index.php?lang=en),

4. PIF was registered in 2003 as an independent public shareholding company in order to strengthen the Palestinian economy through strategic investments and by job creation.

5. As provided in PIF's Bylaws (Article 2), PIF is an independent legal entity. Further, as provided in PIF's Bylaws (Article 2.2), PIF is entirely financially and administratively independent of the PA's budgets and government departments.  A true and copy of PIF's 2007 Bylaws and its amendments, which are in full force today, is attached hereto as Exhibit A.

6. PIF holds and manages its investments and other assets on behalf, and for the benefit, of the Palestinian people, who are PIF's shareholders.  PIF's Bylaws (Article 6) state that all shares of PIF "shall be owned entirely by the Palestinian people."  Further, PIF's Bylaws (Article 8.1) expressly confirm: "The Company shares shall be registered in the name of the Palestinian people."  Consistent with the Bylaws, PIF's publicly-available annual reports consistently state that the people of Palestine are "PIF's ultimate shareholder."  (*See* PIF's 2014 annual report ("2014 Annual Report") at 17, available at http://www.pif.ps, and, in English, http://www.pif.ps/index.php?lang=en.

7. The 2007 Bylaws changed PIF's shareholding structure.  Before the year 2007, the PA, in its capacity as the domestic government of Palestine, used to hold all of PIF's issued and outstanding shares on behalf of the Palestinian people.  This accounts for the reference to the "Palestinian National Authority" as PIF's "shareholders" in the Certificate of a Public

Shareholding Company that the Plaintiffs provided to the Court, which bears a date-stamp from 2007.  Consistent with the change in shareholding brought about by PIF's 2007 Bylaws, the attached certification from the Companies Controller of PA Ministry of National Economy (dated August 3, 2015) (Exhibit B hereto, both in Arabic and in English translation) confirms that the Palestinian people are PIF's shareholders.  The Companies Controller oversees all company-registrations and related records of company shareholders, directors, authorized signatories, and business objectives for companies established in Palestine.

8.  As the sole shareholder of PIF, the Palestinian people are the owners of the equity value of PIF.  The equity value, which fluctuates annually, is reported on PIF financial statements.  *See* 2014 Annual Report at 52.

9.  The PA has no power to, and does not, direct PIF's management, investment decisions, or any other aspect of PIF's operations.  Rather, pursuant to PIF's Bylaws (Article 15), all such decisions are made by PIF's management and Board of Directors, which are independent of the PA.  In turn, pursuant to PIF's Bylaws (Article 26), PIF's Board of Directors is subject to oversight of PIF's General Assembly, which is "the representative body of the shareholder (Palestinian people) in the Company" as provided in Article 24.3 of PIF's Bylaws.

10.  PIF's Board of Directors, subject to approval of the General Assembly, has the sole authority to approve dividend distributions out of PIF's annual retained earnings.  PIF's annual financial statements, at Note 20, record all actions by the Board of Directors and General Assembly to approve and distribute dividends.  *See* 2014 Annual Report at 77.

11.  Pursuant to Companies (Corporate) Law Number 12 for the year 1964 applicable in Palestine ("Companies' Law"), the maximum amount available for distribution as dividends on an annual basis cannot exceed PIF's retained earnings for that year.  The amount of PIF's

3

annual retained earnings is reported in our audited financial statements. *See* 2014 Annual Report at 52. It should be noted that retained earnings is calculated after deducting a statutory reserve of 10% of PIF's annual net profits. Statutory reserve represents accumulation of profits transferred at 10% of annual net profit in accordance with the Companies' Law and may not be distributed to shareholders. *See* PIF Bylaws, Articles 6 and 30.1.

12. As a matter of business judgment, PIF's Board of Directors and General Assembly prefer not to distribute the full amount of the company's retained earnings as dividends, so that a portion of retained earnings may be used to fund new investments by PIF. Further pursuant to the Companies' Law, PIF is prohibited from liquidating assets to fund dividends in excess of retained earnings, and may not distribute any portion of the company's required minimum capital as a dividend.

13. As explained in Note 20 of our financial statements, following approval by the Board of Directors and the General Assembly, PIF dividends either are remitted to the Palestinian Treasury (a unit within the Ministry of Finance), or are deducted from receivables owed to PIF by the PA. In receiving PIF dividends, the PA acts as the representative, and for the benefit, of PIF's shareholders, the Palestinian people, just as the PA acts for the benefit of the Palestinian people when the PA receives foreign assistance donations.

14. Article 30.3 of PIF's Bylaws authorizes the President of the PA, in emergency circumstances, to request an advance distribution of PIF dividends. The total amount of any such advance dividend distribution cannot exceed the annual amount available for distribution, meaning PIF's reported retained earnings. In other words, advance dividend distributions pursuant to such Presidential requests cannot exceed the amount that PIF's Board of Directors and General Assembly have available to distribute as dividends in the ordinary course of PIF's

business. All such Presidential emergency requests for advance dividend distributions are subject to ratification by PIF's General Assembly. Pending the General Assembly's ratification, advance distribution of PIF dividends based on Presidential emergency requests are treated as a receivable owed to PIF by the PA, and accounted for as such in the "Shareholder's current account" recorded in Note 18 of our financial statements. *See* 2014 Annual Report at 77.

15. All decisions concerning the management, sale, or other disposition of PIF investments and other PIF assets are made by the Board of Directors, as specified in Article 15 of PIF's Bylaws. The PA does not control the management, sale, liquidation, or other disposition of, the investments and other assets owned by PIF.

16. PIF shares may not be pledged or mortgaged for any purpose, as specified in Articles 8.2 or 9.14 of PIF's Bylaws. Consistent with Article 9.14 of the Bylaws, PIF from time to time will pledge or mortgage shares of companies in which PIF has invested in order to provide collateral for loans either to PIF or to companies in which PIF has invested. For example, our 2014 financial statements describe the following mortgages of PIF investments and assets: (a) "an amount of U.S. $47,982,000 of properties mortgaged to local and regional banks against loans" listed in Note 21 of the financial statements; (b) "land lots with a carrying value of U.S. $24,920,000 mortgaged to local and regional banks against loans" listed in Note 21 of the financial statements; and (c) "77,658,000 shares with a total market value of U.S. $66,009,300" in Wataniya Palestine Mobile Telecommunications Company ("Wataniya") "mortgaged against a syndicated loan granted from banks to Wataniya." *See* 2014 Annual Report at 67, 70 (Notes 4, 7, 8).

17. Pursuant to Article 6 of its Bylaws, the PIF must maintain capital of $625 million. In addition, as discussed above, PIF must maintain an additional reserve funded annually with

10% of its net profits. Liquidation of PIF would be required upon "[d]epreciation of its capital wholly or partly," as specified in Article 32.2 of PIF's Bylaws.

18. A 75% majority vote of the members of an Extraordinary General Assembly of PIF would be required under Articles 32.3 and 28.2 of our Bylaws in order to dissolve and liquidate the company. The President of the PA would then have to issue a decision to liquidate PIF based upon the 75% majority vote of an Extraordinary General Assembly.

19. The process for liquidating PIF is specified in Articles 32 through 37 of PIF's Bylaws. In a liquidation scenario, the liquidator could not expect to obtain book value for the disposition of many PIF investments in the domestic Palestine economy. Many such investments are illiquid or have shares that are traded in insufficient volume and frequency to generate ready liquidity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 5, 2015.

_____
ABDEL HAMID AL ABWAH