F8OSSOKC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARK I. SOKOLOW, et al.,

                Plaintiffs,

            v.                              04 CV 397 (GBD)

PALESTINE LIBERATION ORGANIZATION, et al.,

                Defendants.

------------------------------x

                                            New York, N.Y.
                                            August 24, 2015
                                            10:00 a.m.

Before:

                    HON. GEORGE B. DANIELS,

                                            District Judge

                            APPEARANCES

ARNOLD & PORTER LLP
        Attorneys for Plaintiffs
BY:  KENT A. YALOWITZ
        TAL MACHNES
        CARMELA T. ROMEO
        LUCY S. McMILLAN

SQUIRE PATTON BOGGS, LLP
        Attorneys for Defendants
BY:  GASSAN A. BALOUL
        JOHN A. BURLINGAME
        ALEXANDRA E. CHOPIN
        MITCHELL R. BERGER

F8OSSOKC

```
 1            (Case called)
 2            THE COURT:  Good morning.  I have reviewed all the
 3    papers, and I also have reviewed the submission by the State
 4    Department through the Justice Department.  I have considered
 5    their position.  I am prepared to address and to rule on all of
 6    these outstanding motions.
 7            Mr. Yalowitz, did you want to be heard any further on
 8    any of these motions?
 9            MR. YALOWITZ:  If your Honor's prepared to rule, we
10    will abide the ruling.
11            THE COURT:  All right.  Does defense want to be heard
12    any further on any of these issues.
13            MR. BERGER:  Good morning, your Honor.  Mitchell
14    Berger.  The one issue that is not clear is whether you want to
15    hear from us now or after your Honor gets into the substance of
16    the matters.
17            Last time when we met on July 28, the court gave some
18    guidance and asked us to go speak with our client.  We
19    certainly took that to heart, and Mr. Baloul has been out to
20    the region and met with the finance minister.  I don't know if
21    the court is prepared to hear from me or Mr. Baloul now.
22            THE COURT:  I think it would be useful to hear from
23    you now.
24            MR. BERGER:  With the court's permission, if
25    Mr. Baloul could start.
```

F8OSSOKC

1          MR. BALOUL:  Good morning, your Honor.  For your

2     guidance, we went back to our client, as Mr. Berger said.  I

3     was in the region, and I had extensive discussions with the

4     finance minister.  The finance minister has spoken with other

5     officials in the PA to carefully consider your guidance.

6     Obviously they did so in the context of the PA's dire financial

7     situation and the importance of maintaining the PA's viability

8     and stability.

9          The finance minister instructed me to personally

10    relate to you that the response they have to you today, which

11    Mr. Berger will address, is a good faith effort and is

12    reasonable under the dire circumstances.

13          Furthermore, your Honor, the PA sent its advisor,

14    Mr. Waseem Kamal, to show further expression of good faith.

15    Mr. Kamal and I are happy to contact the finance minister at

16    any time, should you want us to relay any further messages.

17          I'll turn it over to Mr. Berger, with your permission.

18          THE COURT:  Yes, Mr. Berger.

19          MR. BERGER:  Thank you, your Honor.

20          What we are trying to do, obviously we laid out our

21    position in the papers.  Your Honor has to come back with

22    something that the court would think is reasonable.

23    Understanding we have a judgment entered, we are seeking a

24    stay.  Your Honor indicated last time that there would likely

25    be a bond associated with that.  I won't rehash what is in our

F8OSSOKC

papers or what is in the State Department's papers, but I would like to make five or six brief points and tell you what the PA thinks it can do.

Number one, we cited the _Olympia_ case out of the Seventh Circuit which has some good guidance here when dealing with insolvent judgment debtors. One of the things that the majority in _Olympia_ says is, if you are dealing with a treble damages judgment and an insolvent debtor, focus on the base amount for purposes of the bond and put aside the trebling multiplier portion.

The second thing _Olympia_ says -- and, by the way, what I noticed, when Mr. Yalowitz tendered a proposed judgment here, he is, in fact, asking the court to tease out the multiplier portion from the base amount. So on that minimal extent, I believe we are on the same wavelength.

The second thing _Olympia_ says in its terms is, look at the base amount and think about what the notional market value of judgment debt there would be on the date that it is entered, because for insolvent debtors, it is trading on cents on a dollar. For example, take Greece. We all know Greece is in dire financial circumstances. Its sovereign debt is trading today 25 cents on the dollar. So we know that debts of sovereigns, whether in the form of bonds or whether they are in the form of judgments, trade at a considerable discount to par, if you will.

F8OSSOKC

1          The third thing is that the numbers here are very

2    important for the PA.  I have to put them in context because,

3    just as the plaintiffs always ask you to consider, as they

4    should, the human consequences of their case, there are human

5    consequences for the bond.  For example, for every million

6    dollars that the Palestinian Authority has to divert to

7    security in this case, it means any of the following:  Firing

8    or defunding 955 Palestine authority employees, because

9    $1 million pays their average monthly salary; terminating

10   welfare aids to 9500 vulnerable families, because that is what

11   it takes to support 9500 vulnerable families living below the

12   poverty line in Palestine each month; eliminating the

13   reconstruction of one destroyed school in Gaza; eliminating the

14   reconstruction of one and a half destroyed hospitals or clinics

15   in Gaza.

16          Then I also took a look at the financial statements

17   again to see what is the actual amortization on long-term debt

18   per month that the PA has.  There were six loans that had been

19   amortized over the last month, and the average amortization is

20   $430,000 a month.  That is about the level at which the PA can

21   generate cash.

22          So respectfully, $1 million means a lot to the

23   Palestine authority, PLO, because it is financially dependent

24   on the Palestinian Authority.  In that context and with the

25   framework that the U.S. government has urged the court not to

F8OSSOKC

impose financial burdens that would severely compromise the PA,

what the PA thinks it can do at this point, in order to have a

bond, is offer up $10 million down as an upfront deposit and

then $1 million a month over the time of the appeal.

Now, your Honor, when I had one of the 9/11 cases

before your Honor, it took 24 months from the date you entered

judgment in June of 2011 to June of -- I'm sorry -- June 2011

until the mandate issued in June or July of 2013.  So

24 months.  If you take $10 million down plus $1 million

monthly times 24 months, that's a $34 million bond over time.

That represents 16 percent of the base amount of the judgment,

and that is in the ballpark, in view of the cents on the dollar

kinds of things, that we are talking about with the Greek

government.  There isn't even a secondary market in PA debt.

So we are trying to come up with something that the

Palestinian Authority, recognizing that $1 million goes a lot

longer in Palestine than perhaps plaintiffs think it does.

They are to do what is necessary to do the financial

engineering to come up with that kind of bond, but most

importantly, we are trying to meet the court's request that we

come back with something other than no bond and to recognize

the reality that with $5.4 billion of other creditors ahead of

the line of the plaintiffs.  Any money that comes into the

registry of this court is a positive alteration in the status

quo in favor of the plaintiffs, because there is money here.

F8OSSOKC

1    The status quo would otherwise be without a stay and without a

2    bond, that they are going to spend money to chase money

3    overseas, and likely come up with nothing.

4           So that said, your Honor, as Mr. Baloul said, we are

5    not here with an inflexible position.  We are trying to be

6    reasonable.  The finance minister has sent his policy advisor

7    here.  If necessary, we can be directly in touch with the

8    finance minister this morning, but that is how we have come

9    back in response to the court's guidance.

10          I am happy to answer any questions.

11          THE COURT:  Are you proposing a bond or proposing a

12   deposit of cash?

13          MR. BERGER:  It would be a deposit of cash.  I'm

14   sorry.  It would be deposited cash into the court's registry to

15   abide to the disposition of the appeal.

16          THE COURT:  Mr. Yalowitz, do you want to be heard?

17          MR. YALOWITZ:  I do.

18          First of all, with regard to the Olympia case, I read

19   that case very carefully preparing for today, and one thing

20   that they said is they expected -- the Seventh Circuit expected

21   some showing of a good faith attempt to actually pay for a

22   bond.  It is not clear on this record that the defendants have

23   done anything to explore the possibility of obtaining a bond.

24   The typical cost of a bond is one percent per year.  With

25   $10 million, you know, that is a billion dollar bond.  That is

F8OSSOKC

1    more than they need.  If they want to spend their $10 million,

2    I rather they spend it on a bond for $655 million than a cash

3    deposit.

4            The first thing is they made no showing that they have

5    made any efforts to obtain a bond or what it would cost them or

6    anything like that.

7            The second thing is, this idea that, you know, we just

8    compare a PA judgment to Greek bonds, there is nothing in the

9    record here that supports that kind of analysis.  The PA is not

10   sovereign.  The PA has been subject to judgment execution in

11   the past, which we detailed in the papers.  Although I wanted

12   to make one correction, your Honor, which is the tax revenue in

13   the Ungar case was 18 million shekels per month.  I think we

14   miscalculated the exchange rate or there was some error.  That

15   should be about 5 million a month, not 10 million a month.  So

16   their past record is 5 million a month of tax revenue, 5

17   million a month at the same time into the registry of this

18   court under Judge Marrero's order in the Knox case.

19           Quite frankly, if you were to do $20 million a month,

20   which is effectively double what they were doing at a time when

21   they had significantly less revenue, significantly less

22   expenditure, that would be appropriate and within the realm of

23   the court's discretion and supported by the analysis.

24           With regard to the human consequences, I understand

25   there are human consequences to terror on both sides, but

F8OSSOKC

1   rather than focus on rebuilding schools, maybe the PA could

2   focus on taking terrorists off their payroll.  Right now they

3   are spending more than $60 million every single year paying

4   terrorists who sit in jail.  It ought to outrage the court --

5   it outrages me -- that they are prepared to pay those

6   terrorists for the service of killing civilians more money than

7   they are prepared to post as security in front of this court as

8   a consequence of their policies and their actions.

9           That is my response to Mr. Berger's comments.  I guess

10  I just want to leave the court with there are a couple of

11  things I want to address after we hear the court's ruling, if

12  it is appropriate, regarding post-judgment discovery and

13  regarding the timing of our fee petition and regarding the

14  timing of the notice of appeal.  We can discuss those after the

15  court rulings or now, as you wish.

16          MR. BERGER:  Can I be heard briefly in response?

17          THE COURT:  Yes.

18          MR. BERGER:  Right off the bat, I am afraid I have to

19  make a factual correction.  Mr. Yalowitz apparently overlooked

20  paragraph 57 of the finance minister's original declaration,

21  docket 899, in which we addressed our efforts to obtain a bond

22  by using cash to pursue a bond.  There were several salient

23  points in paragraph 57 of his declaration.

24          Number one, bonding companies wouldn't even talk to us

25  about making an upfront cash payment.

F8OSSOKC

```
 1            Number two, they were going to require full cash
 2    collateral for any amount of the bond.  At that time, talking
 3    about a bond in the full amount of the judgment.
 4            And third, and most importantly, Mr. Yalowitz blithely
 5    says we are not insolvent.  The fact is, we are something.  We
 6    are a government.  We are a political entity.  What the surety
 7    said is that there is too much political risk for us to issue a
 8    bond where we are basically standing as your surety and hoping
 9    that you are going to pay us back.  That is why we need full
10    collateral.  We explored the bond, that is the first thing we
11    told the court, and that is why we are offering cash deposits.
12            Second, Mr. Yalowitz also likes to talk about Knox and
13    Ungar and how much money we quote-unquote put into the court.
14    We never did.  The rulings were made, first of all, against a
15    very different financial situation.  As Mr. Yalowitz told the
16    court on July 28, those cases settled because of the crushing
17    financial burden of those rulings.  Those payments never had to
18    be paid because the payor simply couldn't make them.
19            Maybe what Mr. Yalowitz is looking for here is some
20    leverage to try to force the PA to settle.  We intend to appeal
21    when the court enters an adverse judgment, and it is not right
22    to try to use the bond mechanism as settlement leverage.  The
23    fact is that the PA couldn't afford those payments then, and if
24    anything is clear, including from our August 7 supplemental
25    declaration of Finance Minister Bishara, the financial
```

F8OSSOKC

1    condition is worse.

2            Mr. Yalowitz says it is better.  He doesn't know.  The

3    finance minister does.  He explains it that it is worse.  Don't

4    take his word for it, don't take my word for it, take the word

5    of the U.S. government that looked into it.  The deputy

6    secretary of state submitted his statement because the PA's

7    financial position is vicarious.  It is too easy to say, pay

8    $20 million a month, it is inconsistent with what the U.S.

9    government says, that it is a significant financial burden on

10   the PA.  $20 million a month is $240 million a year.  That adds

11   50 percent to the existing financing gap in the budget of the

12   PA.  That would destabilize the PA.  That would crush the PA.

13   That would bring about all of the adverse consequences the U.S.

14   government mentioned.

15           Now, the prison payments.  I wasn't here during the

16   trial.  I read all of the testimony.  Mr. Yalowitz argued about

17   the prisoner payments in his papers.  We went back and asked

18   the questions.  Here is the story.  The prisoner payments,

19   those payments are not terrorists on the payroll of the PA.

20   Most of those payments go to families of those who are

21   incarcerated so that they don't have to live in poverty while

22   people are being incarcerated.

23           Secondly, the vast majority of the people who are

24   incarcerated, among the 800,000 detainees that Israel

25   incarcerated since 1970, are administrative detainees, not

F8OSSOKC

```
 1   convicted terrorists.  It is because of that widespread
 2   administrative detention of the Palestinians that the PA has
 3   this program to provide support.  What the prisoners get when
 4   they're in prison is cigarette money.  Oddly enough, that
 5   money, because they're in Israeli prisons, is administered by
 6   the Israeli government.  The PA pays it, the Israeli government
 7   deliveries it, so the prisoners get cigarette money.  It is not
 8   a question of getting terrorists.  This is the welfare program
 9   for families who have been abandoned and left behind because of
10   the administrative detainees being held by the Israeli
11   government.
12        Your Honor, we are trying to do the best we can.  We
13   recognize this is a judgment we have to contend with.  The
14   court asked us to demonstrate respect for the law, respect for
15   the court, seriousness and purpose, and that is why we are here
16   today to make the offer we do.
17        Thank you.
18        THE COURT:  Mr. Yalowitz, I do want to hear you with
19   regard to the issues that you wanted to raise because I want to
20   get all of this in context.
21        MR. YALOWITZ:  Good.  Please don't assume by my
22   silence with regard to Mr. Berger's factual position that I
23   agree with it.  You and I sat through the trial.  We know that
24   this is not cigarette money.
25        First of all, 18 U.S.C. 2333 provides for automatic
```

F8OSSOKC

```
 1    payment of attorneys' fees.  Under Rule 54(d), the plaintiffs
 2    have 14 days in order to submit a fee petition to the court.
 3    We would like a little bit more time than that.  I think we
 4    would like until September 14.  We would like leave to file
 5    that by September 14.  I want to make sure that that filing of
 6    that fee petition does not trigger a stay by the court for the
 7    time to appeal.
 8            The Rule 54(d) motion gives the court discretion to
 9    say the time for appeal, based on one of the items, like a
10    Rule 60 motion is automatic, a Rule 59 motion is automatic, a
11    fee motion is discretionary.  I want to make sure that
12    everybody in the room, particularly that your Honor is on board
13    with the concept, that we are going to file that fee petition.
14    It is automatic.  It is not going to slow down the appeal
15    process.  We would like until September 14 and we want to make
16    sure that it doesn't stay the appeal.
17            THE COURT:  You still want judgment entered prior to
18    determination of the fee petition?
19            MR. YALOWITZ:  Correct.
20            THE COURT:  You want until September 14 to submit your
21    fee petition?
22            MR. YALOWITZ:  Correct.
23            THE COURT:  Do you want that issue decided prior to
24    the decision on appeal?
25            MR. YALOWITZ:  The fee petition?
```

F8OSSOKC

1           THE COURT:  Yes.

2           MR. YALOWITZ:  In other words, is your Honor inclined

3   to stay the --

4           THE COURT:  I don't know.  I am asking you.

5           MR. YALOWITZ:  I don't care.  I don't care.  I want to

6   get the fee petition in because --

7           THE COURT:  Right.

8           MR. YALOWITZ:  -- it is records, time passes, and so

9   forth.

10          THE COURT:  Would you anticipate the second fee

11  petition with regard --

12          MR. YALOWITZ:  Following the appeal?

13          THE COURT:  Yes.

14          MR. YALOWITZ:  It is possible.  I doubt it would be

15  material in comparison to the size of the first fee petition,

16  let alone in comparison to the size of the judgment.  It is

17  certainly possible.

18          THE COURT:  Are you trying to just preserve that

19  issue, or do you want that issue decided?

20          MR. YALOWITZ:  I need to preserve it.  I don't need it

21  decided before the appeal is completed.

22          THE COURT:  I just want to know whether the parties

23  wanted to litigate that at the same time.

24          MR. YALOWITZ:  I have no problem with filing the

25  petition and staying the time for an answer.  I just want to

F8OSSOKC

1    get it on file.

2              THE COURT:  All right.  I'll hear from you in a

3    second.

4              MR. YALOWITZ:  It wouldn't be an opposition.  It would

5    just be on file and stayed.

6              THE COURT:  Mr. Berger, did you have a position on

7    that?

8              MR. BERGER:  This is the first I have heard of it.

9    I'm sorry, with Mr. Yalowitz's insistence on cooperation with

10   the parties, we didn't hear about this in advance.

11             Let me say this reacting on the fly, which is, if in

12   fact he wants a judgment for attorneys' fees -- it doesn't

13   sound like he does right now -- that it is insufficient for the

14   Court of Appeals to get two seriatim judgments.  It is best to

15   have it rolled into one.

16             If he wants to stay his fee petition and revisit it, I

17   guess, after all appellate proceedings are concluded, maybe

18   that is what I am hearing from Mr. Yalowitz.  We don't have any

19   objection to that.  It might entail discovery to respond to a

20   fee petition and the like, and we don't have to deal with any

21   of that.  He files it and stays it.

22             THE COURT:  Given that, is there any reason why he

23   can't go ahead and file his petition, even if you don't need to

24   respond to it, but give you an opportunity or not to respond to

25   it.  If he wants to file September 14, we just know what it is.

F8OSSOKC

1        MR. BERGER:  Absolutely.  I have no objection to him

2    filing.  I am just reacting to what I am hearing.

3        THE COURT:  That's why I asked whether or not you

4    wanted this adjudicated or whether he wanted to preserve that

5    issue by making the filing.

6        MR. BERGER:  It sounds like he wants to preserve it.

7    I have no problem with his preserving it.  If he wants to file

8    it on September 14 and then stay all further fee proceedings

9    until further order of the court, we have no objection to that.

10        THE COURT:  Is that what you are looking for?

11        MR. YALOWITZ:  That sounds great to us.

12        THE COURT:  Okay.  Let's proceed in that manner.

13        You had another issue?

14        MR. YALOWITZ:  Right.  I want to make sure that we are

15    clear that the stay on execution is not a stay on discovery,

16    post-judgment discovery.  There are some disputed issues which

17    we have already sussed out about the nature of the Palestine

18    investment fund and who owns it, the nature of this Al-Sanabel

19    entity and who owns it.  The defendants have denied that they

20    own these assets.  Their offer today of sort of a token payment

21    into the registry of the court does not account for any of

22    those assets.

23        So if the court is going to rely on the record that we

24    have right now to set bond or to set alternate security, that

25    is our request, that we rely on the current record, but I want

F8OSSOKC

```
 1   to be able to pursue post-judgment discovery, understanding
 2   there will be a stay on execution if the court so rules.  But I
 3   want to be clear that, given these disputed factual issues, it
 4   may turn out that there is much more valuable assets than is
 5   being represented to the court and there may be a time
 6   following post-judgment discovery when it is appropriate to
 7   come ask the court to increase the security or otherwise deal
 8   with the fact that there may be additional assets.
 9              MR. BERGER:  May I be heard on that, your Honor?
10              THE COURT:  Yes.
11              MR. BERGER:  Again, something I am hearing for the
12   first time here today.  I think what Mr. Yalowitz is asking for
13   is to have his cake and eat it too.  Rule 69(a)(2) is clear
14   that post-judgment discovery is available only in aid of
15   judgment or execution.  If your Honor is going to stay
16   execution, there is no need to have discovery in aid of
17   execution.  That creates additional cost for us, creates
18   additional complexity for the court, because we are going to
19   have disputes over discovery.
20              Our efforts ought to be directed, with all due respect
21   to Mr. Yalowitz, in the Appellate Court once your Honor has
22   given us the rulings here, because we don't need to be fighting
23   in two courts at the same time.  If he doesn't believe what we
24   have said factually, the time to have made an application for
25   discovery was earlier.  I believe your Honor said something to
```

F8OSSOKC

the context, the jurisdictional discovery -- in another case,
the name escapes me right now -- don't come in on summary
judgment after we have a jurisdictional discovery period and
tell me you don't like the discovery results that you got.  The
time to have raised those issues was in jurisdictional
discovery.

        Ditto here.  We are here today for rulings, as I
understand it, on the Rule 62 motion.  For him to be saying I
don't mind a stay on execution, I want discovery in aid of
execution, that is having it both ways, and the rules don't
allow it.

        MR. YALOWITZ:  In aid of the judgment, your Honor.

        THE COURT:  Well, my position would be this,
Mr. Yalowitz.  If there is a stay on execution of the judgment,
that would also stay any active discovery with regard to assets
unless there is some evidence that there is a transfer of
assets or something comparable to a fraudulent transfer that
indicates that the defendants are taking action to put money
out of the reach of the plaintiffs.  But I don't see that.

        MR. YALOWITZ:  I don't have a problem with that.  I
don't have a problem -- what I understand you to be saying is
fraudulent conveyance actions are not going to be stayed by
this order that the court is contemplating?

        THE COURT:  I am saying that if you have some evidence
to demonstrate that that may be what is taking place, then I

F8OSSOKC

```
1    will reconsider whether or not there should be discovery with

2    regard to identifying or preserving assets.  Otherwise, I don't

3    think it would be appropriate to engage in discovery with

4    regard to assets if execution of judgment is stayed for a

5    limited period of time.

6              MR. YALOWITZ:  Let me start over.  My view is that in

7    order to bring that issue to the attention of the court, we

8    would obviously have to have a good faith evidentiary basis

9    that fraudulent conveyances either were taking place or had

10   taken place during the pendency of the action such that a

11   pleading alleging fraudulent conveyance could be filed, and

12   then the court would consider what to do with that.

13             THE COURT:  I can tell you that if there were such a

14   circumstance, one of the things available to consider would be

15   whether or not the stay would be lifted or whether or not a

16   bond would be increased.

17             MR. YALOWITZ:  Okay.

18             THE COURT:  I am going to assume that we are not going

19   to confront that circumstance.

20             MR. BERGER:  Your Honor, if I may respond to that?

21   Not only are we not going to confront the circumstance, but I

22   will say that the Palestinian Authority has an admirable record

23   of financial transparency.  We have given your Honor the

24   monthly financial statements.  They are posted on the website

25   of the Ministry of Finance.  The European union, which is a
```

F8OSSOKC

1    major foreign aid donor to the Palestinian Authority, regularly

2    audits the Palestinian Authority.  It has given it high marks

3    for financial transparency.

4          So not only are we not in the business of trying to

5    hide assets or to move them surreptitiously, our finances, more

6    so than the U.S. government's finances, are right up there on

7    the Internet for anybody to follow.  We don't have any problem

8    with the court's admonition.  We are already living by it.

9          THE COURT:  Mr. Yalowitz, anything further?

10          MR. YALOWITZ:  Just my usual caution that my silence

11    in response to that does not mean I agree with it.

12          THE COURT:  Certainly.

13          MR. YALOWITZ:  It is fine.  He can say whatever he

14    wants about whether they are engaging in fraudulent

15    conveyances.  If we have evidence and choose to file a

16    pleading, we will confront that with the court.  I think that,

17    just to be clear, we have a disagreement right here today about

18    the payments to terrorists in jail, and we will pursue that as

19    we see appropriate.

20          THE COURT:  Did you have any other issues that you

21    wanted to raise?

22          MR. YALOWITZ:  No.  I think we have adequately

23    addressed the other issues in the papers.  The only other thing

24    I would say is that, to the extent that any stay is premised on

25    posting of a bond or posting of alternate security, one

F8OSSOKC

```
 1    condition of that is the immediate file by the PA and the PLO
 2    of their notice of appeal so that they start the appellate
 3    process.
 4            I don't think they can wait the 30 -- I think Rule 62
 5    is clear that they can't wait the 30 days and have a stay.
 6    They need to have their notice of appeal on file immediately.
 7            MR. BERGER:  That is a provision of Rule 62 I confess,
 8    your Honor, I never have actually seen or read.  We are putting
 9    the cart before the horse.
10            Your Honor indicated that you have rulings to make.
11    Depending on whether those rulings are oral or whether they are
12    going to be forthcoming written rulings, that obviously has an
13    impact on the timing of the notice of appeal.  I don't know
14    that we debate that further.  If there is a stay pending
15    appeal, it doesn't extend the 30-day period for filing a notice
16    of appeal.  We will have to act within 30 days.
17            THE COURT:  All right.
18            MR. YALOWITZ:  It is Rule 62(d), if an appeal is
19    taken, the appellant may obtain a stay by supersedeas bond, if
20    an appeal is taken.
21            So I don't see how they can obtain a stay until they
22    take an appeal, if an appeal is taken.  It is right there, the
23    first five words in the rule.
24            THE COURT:  The first thing would be entering a
25    judgment.  I don't think it is unreasonable that the standard
```

F8OSSOKC

1    time period that, obviously, from the date that the judgment is

2    entered, they must file an appeal within 30 days or they have

3    no appeal.

4              MR. YALOWITZ:  I think the point is, until they comply

5    with the court's stay order, they have no stay.  In order to

6    comply with the stay order, they have to not only do whatever

7    you order them to do, they also have to take an appeal, unless

8    Rule 62 doesn't come into effect.  They can read the rule as

9    well as I can and take whatever risks they think are

10   appropriate.

11             MR. BERGER:  Your Honor, I am recalling the court's

12   admonition that the court is all about works.  Obviously when

13   the court is done, if the court is going to deny our post-trial

14   motions and enter judgment, we are going to take an appeal.  I

15   don't think we need to worry about semantics on how he reads

16   Rule 62(d).

17             Our Rule 62 motion was to have a stay entered pending

18   an appeal, once we take one.  I don't think there is any real

19   doubt about what we are seeking.  We are not seeking a stay

20   until the appeal is taken, so long as the judgment remains

21   stayed while we are filing our notice of appeal.

22             Now, under Rule 62(a) or (b), I can't remember which,

23   judgment is stayed automatically for 14 days after it is

24   entered.  We are really talking about a narrow window of time.

25   If the court today is going to indicate that the court is

F8OSSOKC

```
 1   denying the motions and that, of course, is going to grant a
 2   stay pending appeal, we are guided by whatever the court says
 3   in that regard.
 4          MR. YALOWITZ:  I guess given Mr. Berger's game-playing
 5   here, I guess I have to say I would also request that the court
 6   include, as a condition for any stay, an expeditious
 7   prosecution and briefing of the appeal.  We know what the
 8   issues on appeal are going to be.  They have been briefed and
 9   re-briefed and re-re-rebriefed in this court and in other
10   courts, and there is no reason for the defendants to drag their
11   feet on appeal and delay the day of recording.
12          MR. BERGER:  Your Honor, I understand Mr. Yalowitz's
13   point.  That doesn't give him the right to make ad hominem
14   remarks on game-playing that are inappropriate.  I am calling
15   to the court's insistence that, under Rule 62(a), there is an
16   automatic 14-day stay following the entry of judgment.
17          Mr. Yalowitz has offered the court to legal authority
18   that says we have to act sooner than the 14 day expires.  There
19   is no legal authority that says we have to act sooner than the
20   30 days.  We couldn't be here asking your Honor for guidance if
21   these rules were all clear.  I do object, your Honor, this is
22   the second hearing and the second ad hominem remark he made
23   about defense counsel.  It is completely uncalled for.
24          THE COURT:  This is what I am going to do.  First of
25   all, let me address the Rule 50 and Rule 59 motions.
```

F8OSSOKC

1          The defendants have moved for judgment as a matter of

2     law in their favor, and in the alternative, for a new trial.  I

3     am going to deny that motion.  I have considered all the

4     grounds on which those motions were made and made two general

5     determinations, and I'll follow it up with an order consistent

6     with that decision.

7          I believe that the jury had legally sufficient

8     evidentiary basis to find in favor of the plaintiff and against

9     the defendant.  In addition, I find that no error in either the

10    giving of instructions or any additional instructions or any

11    evidentiary ruling omitting or precluding evidence affected the

12    fairness of the trial and the reasonable determination that the

13    jury made based on the evidence that was presented to them.

14         With regard, the defendants have also moved to renew

15    their motion to dismiss for lack of personal jurisdiction.  I

16    have considered that motion.  Obviously I have reviewed that

17    issue several times, and my position remains the same.  Even in

18    light of the determinations made by the United States District

19    Court in the District of Columbia, my position remains

20    unchanged.  I believe that there is a sufficient basis for

21    asserting general jurisdiction over the PA for this trial.

22         With regard to the sufficiency of the evidence,

23    defendants argue that one of the arguments was that there was

24    no sufficient basis, there is no basis under the ATA for

25    respondeat superior liability.  Again, those issues were

F8OSSOKC

addressed on summary judgment and that argument was rejected by
this court.  The evidentiary rulings of the court, I believe,
were proper.  In fact, I would venture to say that the vast
majority of the evidence presented in this case against the
defendants were objected to and was specifically the subject of
extensive discussion, and any offer of evidence by the
defendant was also the subject of significant discussion, and
full consideration, and I believe proper rulings.

          With regard to, for example, the arguments about the
experts, the experts' testimony complied with both the Federal
Rules of Evidence, Federal Rule 702, and under <u>Daubert</u>.  That
testimony was properly admitted and properly limited to the
extent that it was appropriate.

          The defendants' objections that this court did not
allow the defendants to somehow put further extensive evidence
into this regard, because I think that there were numerous
items before this jury about the circumstances and the
motivations.  The defendants contended that were appropriate
for consideration by this jury, but as the defense
characterizes it, and I think characterizes it appropriately,
that their desire to put before this jury and highlight for
this jury the "political and social context" at the time is
exactly what was not an appropriate determination or
consideration by this jury.

          This case was tried on specific claims and it was not

F8OSSOKC

1        about the Israeli/Palestinian conflict, as the defendants want

2        to characterize it.  There was nothing that the defendants

3        offered at trial with regard to the nature of the activities of

4        the Israeli government or the nature of the activities

5        vis-a-vis the Israeli and the Palestinian Authority or the PLO

6        that was the subject of proper review in consideration by this

7        jury beyond that which was already admitted or spilled over

8        into this case before this jury.

9            I have also considered the motion with regard to the

10       original application for separate trials.  The joint trial, the

11       PA and the PLO were not prejudiced, either entity.  A trial of

12       each one of these incidents, separate trials for each one of

13       these incidents, would have been quite inefficient, and a joint

14       trial was not prejudicial to the defendants.

15           The jury was specifically instructed and reminded by

16       the parties that each plaintiff and each subject attack was a

17       separate claim made against separate entities, and they were to

18       consider each of those separately.  The jury demonstrated that

19       they did a proper job doing that.  In fact, reflected in the

20       verdict is a very discriminate way that the jury evaluated each

21       case.  It came up independently with damage awards for

22       plaintiffs that were clearly damage awards that were

23       individually assessed with regard to each plaintiff.

24           As a matter of fact, it was different from that which

25       was even urged upon them by the plaintiffs.  Their award, given

F8OSSOKC

1    their damage of liability, was reasonable and it demonstrated

2    that they individually considered each one of these attacks and

3    considered what the appropriate award was for each one of the

4    separate plaintiffs.

5            Related to that, there was no error in allowing the

6    plaintiffs to suggest an amount to the jury.  In this case,

7    that was appropriate guidance and within the court's

8    discretion.  In fact, particularly in a case like this, where

9    over 99 percent of the damages were not financial damages or

10   loss of income, but mostly pain and suffering and related

11   physical and emotional damages, we set up a process.  The

12   defendants knew exactly what the plaintiffs were going to

13   suggest, had an opportunity to address that, made a

14   determination not to address it, and again, giving this jury

15   significant credit in their evaluation of the case, they came

16   back with awards that, I believe, if my recollection is

17   correct, I am not sure that there was any particular plaintiff

18   that got the amount of damages that were specifically

19   requested.  Most if not all of the damages, damage awards, were

20   below what the plaintiffs had suggested to the jury.

21           Sufficient jury instruction was given to the jury that

22   they should make their own proper determination what

23   appropriate damages were and the jury took that to heart and

24   obviously did not simply accept the numbers as appropriate, as

25   was suggested to them.  Even without argument against those

F8OSSOKC

1    numbers, made their own determination to come back with what

2    they believe was reasonable compensation for the plaintiffs,

3    each plaintiff in this case.

4         The defendants have cited errors in the jury

5    instructions.  The jury instructions, we went over these jury

6    instructions for a significant period of time.  One of the

7    examples the defendants use is the improper jury instruction on

8    agency coupled with an improper reference to that issue by the

9    defense.  The jury was properly instructed on agency, given a

10   standard-approved agency instruction by the court, and was

11   specifically reminded in the jury instruction that they were to

12   take the law from the court and not from the attorneys.

13        I don't believe that any statement of the law was

14   improper or inconsistent with the jury instructions that were

15   given by plaintiffs' counsel, but to the extent any legal

16   principle could have been misstated, the jury was reminded that

17   they should take the law from the court and that if any

18   attorney stated a legal principle different from that which

19   they were instructed by the court, that it was the court's

20   instructions that they must follow.

21        I have considered all, and on numerous occasions, most

22   of the issues on numerous occasions, but I considered all the

23   issues raised on these motions.  It is my determination, as I

24   said, that the jury had a legally sufficient evidentiary basis

25   to find in the plaintiffs' favor and against the defendants,

F8OSSOKC

1    and there was no error in the presentation of the evidence, the

2    admission of evidence, the exclusion of evidence, or any jury

3    instructions that would be a basis to set aside the jury's

4    verdict or to enter judgment as a matter of law in defendant's

5    favor or to order a new trial based on the nature of the

6    evidence presented and admitted and excluded at this trial.

7         I will issue an order consistent with that opinion.  I

8    will deny the Rule 50 and Rule 59 motions in their entirety and

9    be prepared to move forward with a judgment on which the

10   defendants can file their appeal.

11        What I am going to do with regard to judgment, first

12   of all, I have a proposed judgment that I will share with the

13   parties.  The parties can review it and within the next 10 days

14   can give me any reactions that they have to what I would

15   propose to have entered as a judgment.

16        This is what I am going to do.  I have considered the

17   arguments with regard to judgment and a stay and posting of

18   bond, and I have fully considered and given serious

19   consideration to the statement of interest for the United

20   States.

21        First of all, I will enter final judgment in favor of

22   the plaintiffs against the defendant in the amount of the jury

23   award of $218.5 million trebled automatically pursuant to the

24   ATA to $655.5 million.  I will enter that judgment within the

25   next 60 days.

F8OSSOKC

1          The plaintiffs' request for prejudgment interest is

2     denied.  I believe that the nature of the award, the nature of

3     the case presented, and the nature of the arguments presented

4     to the jury with regard to the award would make prejudgment

5     interest inappropriate in this case and make the award

6     excessive in light of the automatic treble and the jury's award

7     and the automatic treble of that award pursuant to the statute.

8          I will allow the defendants, upon posting of a bond or

9     cash in the amount of $10 million within 30 days and $1 million

10    each successive 30 days during the pendency of the appeal, I

11    will enter an order staying execution of judgment pending the

12    appeal.

13         What I will expect is that, on or about October 23 the

14    latest, I will enter judgment in favor of the plaintiffs.  If

15    the defendants have posted bond or cash in the amount of

16    $10 million within the next 30 days and made the first

17    additional monthly $1 million payment within the next 30 days,

18    I will enter judgment and I will stay execution of judgment

19    pending the appeal.

20         If those amounts are not deposited with the court on

21    that schedule, then I will enter judgment within the next

22    60 days, and I will not stay that execution of that judgment

23    pending appeal.

24         I would expect that $10 million cash or bond to be

25    deposited with this court before September 23, before September

F8OSSOKC

23.  The first 30-day amount should be deposited with this

court before October 23.  In any event, within 48 hours of

making that second deposit, I will enter judgment consistent

with my determination here.  If those amounts are not deposited

with the court on that schedule, on October 23, I will enter

judgment in favor of the plaintiff and I will not stay its

execution.  I will enter full judgment in favor of the

plaintiff.

MR. BERGER:  Your Honor, may I ask a question?

THE COURT:  Yes.

MR. BERGER:  In order for us to deposit money in the

registry, we clearly need to work with someone in the clerk's

office.

THE COURT:  Yes.

MR. BERGER:  I would anticipate we would need the

transcript and whatever order your Honor enters incorporating

the bench ruling you just made for us to work with the clerk of

the court.  But if there is anyone in particular in the clerk's

office the court wishes to direct us to make sure we comply

with those directions, that would be helpful.

THE COURT:  We have communicated about the process

with Dave Thomas who is in orders and judgment.  He should be

aware of the possibility or there might be a bond posted and

what the process would be for posting of a bond or posting of

the cash.  I believe the cash would be deposited with the court

F8OSSOKC

1    in an interest-bearing account that would be returned to the

2    defendants if an appeal is successful, but obviously be held on

3    behalf for payment to the plaintiff if appeal is unsuccessful.

4            MR. BERGER:  Understood.  Thank you, your Honor.

5            THE COURT:  As a matter of fact, I am going to issue

6    an order consistent with that determination today.  Literally

7    probably within an hour or two of when we finish here it should

8    be up on the docket.  I will get that out first, and then

9    within the next couple days, I will issue an order with regard

10   to the denial, if not today.

11           What I have given you is my version of what a simple

12   direct judgment would be in this case.  You should look it

13   over, and if you have a reaction to it positively or negatively

14   or any suggestion, you should give me that by letter.  If you

15   can give me that within, I would say, within the next 14 days.

16   I have considered the submissions that have already been made

17   and I think for the clerk's office purposes, it would probably

18   be the simplest and most direct way to do it.  I have consulted

19   with them on the form of the judgment.

20           Once I issue the order, as I have just stated it, and

21   the denial of the motion then, as I say, you can prepare to go

22   ahead and file your appeal anytime after October 23 and move

23   forward to litigate those issues before the Second Circuit

24   Court of Appeals.

25           Mr. Yalowitz.

F8OSSOKC

1          MR. YALOWITZ:  So I have a question, and then I guess

2    I'll make a run at you on one issue.

3          THE COURT:  Certainly.

4          MR. YALOWITZ:  Which past performance is no guarantee

5    of future results.  Maybe you'll change your mind.

6          The judgment does not indicate that the court

7    dismissed certain of the plaintiffs' claims prior to trial.  I

8    don't know whether that might be something that the court wants

9    to include or you may have thought about it and have a reason

10   not to mention that.  I honestly don't care.  It was something

11   that the defendants asked for.  I think that regardless of

12   whether the judgment says, you know, in favor of the defendants

13   and against the following plaintiffs, it is obvious from the

14   record in the case that that is what has happened.

15         THE COURT:  The other way around, in favor of the

16   plaintiffs.

17         MR. YALOWITZ:  Right.  As you say it, in favor of the

18   plaintiffs, on the plaintiffs who prevailed at trial, and there

19   were six or seven plaintiffs whose claims were dismissed prior

20   to trial.

21         THE COURT:  I don't think that it needs to be or is

22   appropriate to be in the judgment.  I thought there was an

23   order on file dismissing those plaintiffs?

24         MR. YALOWITZ:  Absolutely, there is.  Certainly there

25   is no doubt that those plaintiffs were dismissed.

F8OSSOKC

| | |
|---|---|
| 1 | THE COURT: I thought I issued a specific order |
| 2 | addressing that. |
| 3 | MR. YALOWITZ: The court's November 19 of 2014 summary |
| 4 | judgment decision order clearly says that with regard to most |
| 5 | of them, and then there was one plaintiff in the days coming up |
| 6 | to trial also got dismissed. There may be an order on that. |
| 7 | It may just be in the transcript. |
| 8 | THE COURT: Let me do this. The most appropriate |
| 9 | thing is to issue an order with regard to those plaintiffs. I |
| 10 | know we issued at least one order, maybe the one during the |
| 11 | trial. |
| 12 | MR. YALOWITZ: If there is not an order, we will let |
| 13 | you know. |
| 14 | THE COURT: If you just give me a proposed order |
| 15 | dismissing those, telling me which of the plaintiffs that you |
| 16 | have the record that were dismissed, share with the other side. |
| 17 | If they have no objection, then I will issue that order, and I |
| 18 | will issue that order immediately upon payment of the parties, |
| 19 | that they agreed those plaintiffs were dismissed and the form |
| 20 | of the order dismissing those plaintiffs is appropriate, and I |
| 21 | will do that right away before entering the judgment. |
| 22 | MR. YALOWITZ: All right. |
| 23 | THE COURT: I can't remember, but I think probably |
| 24 | there is some record indicating all of the plaintiffs that were |
| 25 | dismissed from the case. |

F8OSSOKC

1           MR. YALOWITZ:  There is.

2           THE COURT:  We can put that in one final order, if you

3      wish, and have that put aside before judgment is entered.

4           MR. YALOWITZ:  Let's just, as a housekeeping matter,

5      we will do that.  We will need it for our purposes potentially.

6           THE COURT:  Sure.

7           MR. YALOWITZ:  The other thing, you know, I know you

8      have thought about this carefully and I don't lightly ask you

9      to reconsider, but on the timing, I don't have a problem with

10     conditioning the stay on compliance with the court's order with

11     regard to making cash deposits, but as plaintiffs, particularly

12     because we are so severely under secured as plaintiffs, there

13     is a matter of urgency to getting the judgment entered, getting

14     the appellate process started, getting the Court of Appeals to

15     review and complete its review of the judgment.

16          Quite frankly, a delay of 60 days hurts.  I don't have

17     a problem with the timing that you have suggested in terms of

18     when they post their bond or post their cash deposit, when they

19     start making their monthly cash deposits.  Obviously I don't

20     have a problem with the amount, but I am not asking you to

21     reconsider that.  That's your ruling.  But in terms of the

22     timing of the process, the sooner we get the judgment entered,

23     the less insecure the plaintiffs are going to be.

24          One of the things that the court did in the Olympia

25     Leasing case in the Seventh Circuit was they said, we are going

F8OSSOKC

1     to expedite the oral argument on the merits.  I think given the

2     nature of the court's order, that is going to be something that

3     is appropriate for the circuit.  Obviously that is up to the

4     circuit, not up to the district court.  But a 60-day delay in

5     the entry of judgment seriously hurts the plaintiffs.  It

6     really doesn't do anything beneficial for the defendant other

7     than delay the ultimate day of reckoning.

8          I am not asking to take enforcement acts during the

9     period between when you enter judgment and when they make that

10    second deposit.  I am saying let's get us started in the Court

11    of Appeals.  I don't remember which rule it is, but I know that

12    there is a rule that has some precatory language about promptly

13    entering judgment after the jury verdict.

14         Obviously this is a complicated case.  The court

15    wanted to carefully consider the post-judgment motions.  I

16    think, quite frankly, you are to be commended for the speed at

17    which you put on us a clock and resolved the post-judgment

18    motions.  But now that they are resolved, I don't have a

19    problem with giving the parties some time to comment on the

20    form of judgment.  I don't think that anybody needs two weeks.

21    I do have a problem with delaying the entry of judgment past

22    the comment time.  That is not something you have to decide

23    this minute.

24         THE COURT:  I can tell you, Mr. Yalowitz, part of my

25    intent was to have this money, particularly the $10 million,

F8OSSOKC

1    posted before I entered judgment and stay the action.

2            Now, what you are proposing is that I move forward

3    before they post the $10 million.  I am not sure that that is

4    necessarily what -- let's put it this way.  I wanted to see the

5    money deposited before I issued judgment and issued a stay.

6    Now if you don't, then I'll reconsider that.

7            MR. YALOWITZ:  I don't.  I want the judgment entered.

8    The price I am willing to pay for that is a stay without seeing

9    the money.  If it turns out they don't deposit the money, they

10   haven't met the condition, the stay will dissolve of its own

11   force, they haven't met the condition.  But I don't want to

12   delay for 60 days while we wait for them to put $11 million in,

13   which, quite frankly, for this defendant is around a year.

14           THE COURT:  Well, let me just raise one more issue

15   with you.  We can talk it out, and maybe you may come to some

16   agreement or you may convince me, but I have given this

17   significant amount of thought.  One of my concerns is also in

18   whose hands this case remains or is transferred once I issue

19   judgment.  If I issue judgment today and you have a problem

20   tomorrow, this may not be the forum in which you could resolve

21   it.

22           As I say, be careful with what you ask for, you may

23   get it.  I think that is an unanswered question.  I don't know.

24   Once I issue judgment, I am not sure that I am going to have

25   any jurisdiction to address any complication or issue that

F8OSSOKC

1    arises after judgment is entered.

2         MR. YALOWITZ:  I honestly have to say, I have not

3    looked at that issue in the context of this case.  I think it

4    is a valid point you raise that I ought to look at and the

5    defendants ought to look at.  My experience in other cases is

6    that the district court does have certain continuing

7    jurisdiction with regard to post-judgment matters, but as I

8    say, I have not looked at it within the context of this case.

9         THE COURT:  If I entered judgment, I don't know the

10   answer to that.  I am not going to pretend that I do.  If I

11   entered judgment on this case tomorrow and they file an appeal

12   the day after, if you got a problem, you have to go to the

13   Court of Appeals it seems to me.  I am not sure that I have any

14   authority to take action on this case once they file their

15   appeal.

16        MR. YALOWITZ:  That would be something we would want

17   to consider.  I think you are right that that is something that

18   is relevant to our views.  I want to reflect on it and come

19   back to you.

20        Understanding that potential concern subject to

21   confirmation, I think our view remains we would rather get the

22   judgment entered and get the appeal process under way.

23        THE COURT:  Obviously my thought is that there is

24   great incentive under this scenario and what they propose is

25   not significantly different than what I had considered prior to

F8OSSOKC

1    this proposal.  But there is great incentive for both sides to

2    get a quick resolution in the Second Circuit, particularly with

3    the provision of the monthly deposit of $1 million into this

4    court until that issue is resolved.

5            As they say, in your perspective, if you believe that

6    they are dragging their feet, they are paying $1 million a

7    month to do so.  That money is constructively in your hands

8    rather than money that you have to find or may or may not be

9    available if they were to lose on appeal.  It seems to me that,

10   a year from now, you could possibly be better off if there is

11   $20 million in the court to transfer to your client.

12           MR. YALOWITZ:  As I said, I think the concept is

13   right, I just think the numbers are -- I think that what we

14   will see is those numbers for these defendants are such a token

15   amount, that they'll drag their feet.  I understand the court's

16   ruling.  I don't want to reargue it.

17           THE COURT:  I will consider whatever you think is

18   reasonable.  I have given significant thought to these issues

19   and this perspective.  I think that this scenario, and also

20   without going into all of the details as I indicated, I gave

21   serious consideration to a statement of interest of the United

22   States, and I think that this is consistent with that to, one,

23   address my concerns to demonstrate some good faith on their

24   part, intention to pay judgment if a judgment is legally

25   upheld, and two, to preserve some amount of money, not the

F8OSSOKC

1    total amount of money.

2         In any event, if there was no bond, you would still be

3    out there running the streets trying to find to collect on

4    this.  I think that this preserves some amount of money, and a

5    growing amount of money, to be distributed to the plaintiffs if

6    the judgment is upheld on appeal.  I see very little incentive,

7    under this scenario, for the defendants to delay in the

8    resolution of these issues that will be before the Second

9    Circuit.

10         As I say, considering all of those, I hear you at this

11    point saying that you don't want me to make a determination on

12    that now, you want to think about it some more?

13         MR. YALOWITZ:  Right.  So here is what I am going to

14    do.  I am going to come back to you very quickly on the form of

15    the judgment, which it is not going to take me 14 days.  I am

16    going to come back to you very quickly on the timing of when we

17    want the judgment entered.

18         If you're right that the defendants are actually

19    incented to move quickly by the bond amount that they have

20    offered and that you're now ordering them to remit or the

21    security amount, cash security, they'll also come back very

22    quickly.

23         My guess is, my prediction is they will not come back

24    quickly.  They will take the entire 14 days.  They will take

25    every hour that is allotted to them, at least every day that is

F8OSSOKC

1    allotted to them, to delay the ultimate day of reckoning, and

2    so you can be guided by their actions as well.

3         You will see us come back and what we want and the

4    reasons we want it and you'll see their actions and you can

5    make a determination accordingly.  I want to be very clear what

6    I am asking for is entry of judgment on the understanding that

7    execution of the judgment is going to be stayed in accordance

8    with the court's order, whether it is entered this week or next

9    week or in October.

10        MR. BERGER:  May I be heard briefly, your Honor?

11        THE COURT:  Yes.

12        MR. BERGER:  If Mr. Yalowitz would spend more time

13   worrying about his client than my client, I think we could move

14   along more smartly here.  That is a lot at stake.  That is what

15   the government told you.  I don't think there is any way other

16   than the way your Honor has approached this.

17        To give Mr. Yalowitz and the court some comfort on

18   this, our view is so long as any judgment that is entered is

19   stayed from execution from the point of entry subject to the

20   conditions that your Honor set, we are prepared to confer with

21   Mr. Yalowitz and to advise the court as to timing issues.  I

22   understand why your Honor has set the timing that your Honor

23   has done.  I think it is perfectly appropriate.

24        There are ways to shorten the appellate process once

25   judgment is entered.  We won't be opposing expedition.  This is

F8OSSOKC

1    a judgment, for the reasons we have expressed to your Honor, we

2    believe we have a likelihood of success on appeal.  It is a

3    reputational harm to the PA/PLO.  They want to pursue their

4    appeal.  There is no reason for a foot drag.

5            As your Honor has pointed out, it costs money per

6    month for the PA to appeal, to abide to these conditions, so

7    the process can be compressed more than Mr. Yalowitz's worried

8    about.  I gave your Honor the 24-month period only because

9    those were high-profile appeals as well, the 9/11 appeals.  The

10   Court of Appeals moves at its own speed.  I don't mind if we

11   want to try to expedite things there.

12           There is nothing that I know of about the entry of a

13   judgment that is going to improve Mr. Yalowitz's clients'

14   position on security.  The only way you can turn a judgment

15   with an unsecured creditor into a secured creditor under New

16   York law is putting a lien on assets, and a stay of execution

17   is going to prevent putting a lien on assets.  We won't be able

18   to do that either.  There is no real difference between the

19   judgment entered 60 days from now or six minutes from now.

20           But let us at least consult with our client about the

21   form of the judgment.  I am sure Mr. Yalowitz plans to consult

22   with all his clients about the form of the judgment, and then

23   we will come back to the court within the 14-day period and

24   then we will see if the court wishes to enter judgment sooner.

25           Our *sine qua non* is, once judgment is entered, so long

F8OSSOKC

1    as it is stayed from execution, then the timing is certainly

2    whatever the court decides is in the best interest.

3             THE COURT:  Why don't you consult with each other and

4    get back to me collectively or individually and I will consider

5    it.

6             MR. YALOWITZ:  Okay.  We will look for your honor's

7    orders on the stay.

8             THE COURT:  Yes.

9             MR. YALOWITZ:  We will prepare a form of order on the

10   dismissed plaintiffs.

11            THE COURT:  All right then.

12            Is there anything else we need to address,

13   Mr. Yalowitz?

14            MR. YALOWITZ:  No, your Honor.  Let's hope we don't

15   see each other on the pretrial.

16            THE COURT:  We may not see each other at all again on

17   this case.  If I rule on this motion and enter judgment, then

18   it is before the Court of Appeals.  Unless, as they say, unless

19   it is someone within my jurisdiction that I have to address on

20   this case, I am going to rule today, I am going to issue orders

21   today consistent with my rulings on the record, and you can

22   move forward to start to file -- the defendants can start to

23   deposit the monies as quickly as they can.

24            As soon as I see you agree that I should go ahead and

25   enter judgment or I see that first monthly payment being made,

F8OSSOKC

1    it is made early, I will be prepared to issue judgment.

2              Anything further, Mr. Berger?

3              MR. BERGER:  No, your Honor.  We will get started on

4    it right away.  We will work with Mr. Thomas in the clerk's

5    office.  We will advise our client.  I am certain, without even

6    advising our client, I speak for the Ministry of Finance and

7    the rest of the PA government in thanking the court for the

8    careful consideration of our submissions.

9              MR. YALOWITZ:  We will see each other.

10             (Adjourned)