

Squire Patton Boggs (US) LLP
30 Rockefeller Plaza
23rd Floor
New York, NY 10112

O    +1 212 872 9800
F    +1 212 872 9815
squirepattonboggs.com

Gassan A. Baloul
gassan.baloul@squirepb.com

March 30, 2016

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      RE:    *Sokolow, et al. v. Palestinian Liberation Organization, et al.*, Docket No. 04-CV-397 (GBD)(RLE); Response to Plaintiffs' March 28, 2016 Letter

Dear Judge Daniels:

      On behalf of Defendants, the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), we respectfully oppose the March 28, 2016 letter application by Plaintiffs' counsel, Kent A. Yalowitz, Esq. (Dkt. #990) seeking – without advance notice to Defendants, contrary to the protocol established by the Court (*see* Dkt. #968, 7/28/15 Hr'g Tr. at 12, 138) – to modify the Court's August 24, 2015 Order staying execution of the judgment (Dkt. #957), as affirmed by the Second Circuit on October 14, 2015 following Plaintiffs' appeal.

      Plaintiffs' application should be denied because it is premature and unripe for adjudication and, separately, interferes with the jurisdiction of a coordinate federal court with jurisdiction over the funds in issue.

## Background

      Plaintiffs ask this Court to exercise jurisdiction over a provisional bond Defendants posted in January 2010 pursuant to a condition imposed by the U.S. District Court in Washington, D.C., in its December 28, 2009 order vacating Defendants' default in *Gilmore v. Palestinian Interim Self-Government, et al.*, Case No. 01-CV-853 (D.D.C.). *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104 (D.D.C. 2009). Defendants thereafter litigated the case on the merits and obtained summary judgment in their favor, *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191 (D.D.C. 2014), from which the Plaintiffs appealed. *See Gilmore v. Palestinian Interim Self-Gov't*, Case No. 14-7129 (D.C. Cir.). Because the purpose of the vacatur bond had been fully discharged once summary judgment was entered in Defendants' favor, the vacatur bond should have been released in

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. George B. Daniels
March 30, 2016

accordance with its original purpose.

Undersigned counsel subsequently assumed responsibility for Defendants' representation in *Gilmore* and, in the course of preparing Defendants' D.C. Circuit brief filed February 19, 2016, discovered that the vacatur bond funds remained in the registry of the D.C. federal court. Accordingly, Defendants informed Plaintiffs' counsel of their intent to secure release of the bond funds, and sought their position. Because the *Gilmore* plaintiffs did not consent, Defendants on March 3, 2016 filed a motion with the D.C. federal court to release the vacatur bond funds. *See Gilmore* Dkt. #393 (copy attached as Ex. A).

The *Gilmore* Plaintiffs failed to timely oppose Defendants' motion, and Defendants so informed the D.C. federal court. *Gilmore* Dkt. #397 (copy attached as Ex. B). *Gilmore* plaintiffs' counsel, Robert Tolchin, Esq., who is also one of Plaintiffs' counsel in this action, thereupon sought a belated extension of time to oppose Defendants' motion to release the *Gilmore* bond funds. *See Gilmore* Dkt. #398 (copy attached as Ex. C). Mr. Tolchin attributed the Gilmore plaintiffs' failure to submit a timely opposition to "a miscommunication among plaintiffs' counsel." *Id.* Under the *Gilmore* plaintiffs' requested schedule, briefing of Defendants' motion to release the vacatur bond funds will be completed on May 23, 2016. The *Gilmore* plaintiffs said nothing to the D.C. federal court about the *Sokolow* Plaintiffs' interest in the *Gilmore* bond funds, even though Mr. Tolchin is counsel in both cases. *Id.* The D.C. federal court granted the *Gilmore* plaintiffs' proposed briefing schedule, without opposition from Defendants. *See Gilmore* Dkt. #399 (copy attached as Ex. D).

Thereafter, without advance notice to Defendants, Mr. Yalowitz—who, with Mr. Tolchin, is counsel for the *Gilmore* plaintiffs in the D.C. Circuit appeal—filed the present application, which seeks a ruling from this Court before the D.C. federal court can address Defendants' *Gilmore* bond-release motion under the schedule sought by Mr. Tolchin. Under the circumstances, it seems plain that the *Sokolow* and *Gilmore* plaintiffs, through their common counsel, are trying to steal a march in this Court before the D.C. federal court can act.

## Argument

**Plaintiffs' Application Improperly Interferes with the Jurisdiction of Another Court, is Premature and Unripe, and Would Impose an Onerous Additional Condition on the Stay of Execution.**

This Court should deny Plaintiffs' letter application for four reasons:

*First*, Plaintiffs' application improperly interferes with the jurisdiction of a coordinate federal court, which has in rem jurisdiction over the *Gilmore* bond funds. A longstanding common law rule "prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991) (citing *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir. 1989)). "The purpose of the rule is the maintenance of comity between courts." *One 1985 Cadillac Seville*, 866 F.2d at 1145. Although "it is a

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. George B. Daniels
March 30, 2016

prudential limitation," it is not a matter left "within the discretion of a district court," but rather it "must yield" to a prior court proceeding. *Id.* That doctrine forecloses action on Plaintiffs' application at least until the D.C. federal court takes action releasing the *Gilmore* bond funds from its in rem jurisdiction.

*Second*, and relatedly, the *custodia legis* doctrine "bars any attachment of funds in a court's registry that would prevent the court from disposing of the funds in accordance with the purpose for which they were deposited." *Landau v. Vallen*, 895 F.2d 888, 893-94 (2d Cir. 1990). The doctrine is "most frequently invoked when the order of one court interferes with the authority of another to dispose of a res within its custody." *Id.*

The *Sokolow* Plaintiffs in substance seek an improper attachment, issued by this Court, of funds in the registry of the D.C. federal court. Further, the *Sokolow* Plaintiffs ask this Court to interfere with "the purpose for which" the *Gilmore* bond was posted, *i.e.*, to ensure that Defendants would litigate the *Gilmore* action to conclusion on the merits. The purpose of the *Gilmore* bond was <u>not</u> to provide security to the *Sokolow* Plaintiffs.

*Third*, to the extent that the *Sokolow* Plaintiffs would argue that they seek a provisional attachment, which would only activate in the future, if the D.C. federal court grants Defendants' bond-release motion, their application is premature and unripe. "[A] federal court lacks the power to render advisory opinions." *United States v. Broad. Music, Inc.*, 275 F.3d 168, 179 (2d Cir. 2001) (internal citation omitted). As such, "[t]he [ripeness] doctrine prevents the premature adjudication of issues that may never arise." *Motor Vehicle Mfrs. Ass'n of the United States v. New York State Dep't of Envtl. Conservation*, 79 F.3d 1298, 1305 (2d Cir. 1996).

The Court should deny Plaintiffs' application for these reasons alone. However, to assist this Court, and to avoid the needless competition between this Court and the D.C. federal court that Plaintiffs seek, Defendants will notify this Court if the D.C. federal court grants Defendants' motion and releases the *Gilmore* bond funds, in advance of any action by Defendants to transfer those funds back to the PA treasury from which they were initially posted more than six years ago. Plaintiffs accordingly have no need of any further action by this Court at this time.

*Fourth*, however, if this Court concludes that it should address the merits of Plaintiffs' application now, then Defendants respectfully submit that the Court should reject Plaintiffs' request to add the *Gilmore* bond funds as additional collateral for the Court's *Sokolow* judgment-stay order. This Court has already evaluated thousands of pages of the Defendants' unrebutted financial records, carefully weighed the national security and foreign policy interests of the United States government, and granted a stay conditioned upon a $10 million down payment and $1 million monthly payments thereafter. *See* Dkt. #957. The Second Circuit reviewed this same record and affirmed this Court's Order. *See* Dkt. #987 (Order and Mandate from the Second Circuit).

Defendants have fully complied with the Court's judgment-stay conditions, and there is no reason to alter those conditions at this time, particularly given that:

      i.      Oral argument of the appeals in *Sokolow* will be conducted in less than two weeks, on April 12, 2016;

      ii.      Defendants learned only fortuitously, during appellate briefing, that the *Gilmore* bond remained pending, even though that bond should have been released by its terms once summary judgment was entered for Defendants on July 28, 2014, well in advance of the *Sokolow* judgment; and

      iii.      Defendants would be adversely affected by requiring them to divert another $1 million to provide judgment security for the *Sokolow* Plaintiffs, given the PA's dire financial condition, with which the Court is familiar and which the U.S. government confirmed in its Statement of Interest.

      As to the last point, the PA's financial condition remains dire, and indeed has deteriorated, in the months following this Court's August 24, 2015 judgment-stay order and the Second Circuit's October 14, 2015 affirmance. *See* "IMF Staff Concludes Visit to West Bank and Gaza," http://www.imf.org/external/np/sec/pr/2016/pr1657.htm (noting slowed economic growth, a dire humanitarian situation, "stubbornly high" unemployment, and a "sharp drop in donor aid contribut[ing] to higher public debt, including arrears.") (Feb. 11, 2016).

      Poignantly, a recent teacher strike in the West Bank confirms the PA's need for the additional funds that would be provided by release of the *Gilmore* bond. As recent news reports confirmed, the *Gilmore* bond funds ($1 million plus interest) can provide one-month's salary for more than 1,650 teachers in Palestine. *See* "Palestinian teachers end month-long strike following assurances by Abbas," http://www.i24news.tv/en/news/international/middle-east/105998-160313-palestinian-teachers-end-month-long-strike-following-assurances-by-abbas (more than 25,000 teachers in the West Bank, paid on average $600 per month, recently went on strike over pay and benefits, "causing chaos for schools, pupils and parents, and prompting the Palestinian Authority to deploy police on the streets in Ramallah.") (March 13, 2016). *See also* Dkt. #977, 8/24/2015 Hr'g Tr., at 5:1-15 (for every $1 million the PA has to divert to security in this case, it means "[f]iring or defunding 955 [PA] employees . . . terminating welfare aids to 9500 vulnerable families . . . living below the poverty line in Palestine each month; eliminating the reconstruction of one and a half destroyed hospitals or clinics in Gaza.").

      For the foregoing reasons, Defendants respectfully submit that Plaintiffs' application to amend the Court's August 24, 2015 Order staying enforcement of the judgment.

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. George B. Daniels
March 30, 2016

Respectfully submitted,

Squire Patton Boggs (US) LLP

/s/Gassan A. Baloul
Gassan A. Baloul

cc: All ECF Counsel