# EXHIBIT B



Squire Patton Boggs (US) LLP
30 Rockefeller Plaza
23rd Floor
New York, NY 10112

O    +1 212 872 9800
F    +1 212 872 9815
squirepattonboggs.com

Gassan A. Baloul
gassan.baloul@squirepb.com

September 12, 2016

**VIA ECF**

Hon. George B. Daniels
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      RE:    *Sokolow, et al. v. Palestinian Liberation Organization, et al.*, Docket No.
             04-CV-397 (GBD)(RLE); Request to Modify Stay Conditions Pending Mandate.

Dear Judge Daniels:

      On behalf of Defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), we respectfully request this Court immediately modify its August 24, 2015 order staying enforcement of the judgment (Dkt. #957 ("Bond Order"))[1], to suspend the requirement that Defendants post additional monthly $1 million payments. Now that the Court of Appeals has vacated the judgment in this action and directed dismissal of the case,[2] there is no basis to compel Defendants to make any further payments pursuant to the Bond Order. Moreover, although Plaintiffs filed a Petition for Rehearing and for Rehearing *En Banc* this afternoon,[3] because rehearing by the Court of Appeals is improbable,[4] and because Defendants'

---

[1] The Bond Order provides that, pending Defendants' appeal to the United States Court of Appeals for the Second Circuit, execution of the judgment would be stayed provided Defendants "post[ed] a bond or deposit[ed] cash with the Clerk of the Court in the amount of $10 million before September 23, 2015, and in the amount of $1 million every thirty (30) days thereafter." Dkt. # 957.

[2] *Sokolow v. Palestinian Liberation Organization, et al.*, Nos. 15-3135 and 15-3151, 2016 U.S. App. LEXIS 16089, at *1-2, ___ F.3d ___ (2d Cir. Aug. 31, 2016).

[3] *See Sokolow v. Palestine Liberation Organization, et al.*, Nos. 15-3135 and 15-3151 (2d Cir.), at Dkt. # 216,

[4] The Second Circuit rarely rehears cases en banc, and often circulates opinions in advance to all active judges of the Court to reduce the likelihood of disagreement within the full Court. *See* Steven M. Witzel & Samuel P. Groner, *Mini En-Banc Review In the Second Circuit*, New York Law Journal, Jan. 7, 2016, at 1 (noting that "the Second Circuit consistently 'hears the fewest cases en banc of any circuit by a substantial margin, both in absolute terms and when considering the relative size of [its] docket.") (collecting authorities) (available at http://www.friedfrank.com/siteFiles/Publications/070011608%20Fried.pdf). Further, here the Panel acted unanimously, making Panel rehearing improbable.

44 Offices in 21 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

| | |
|---|---|
| Squire Patton Boggs (US) LLP | Hon. George B. Daniels |
| | September 12, 2016 |
| VIA ECF | |

financial condition is dire, it would be unjust to prolong the monthly-deposit requirement, whose purpose was solely to secure enforcement of a now-vacated judgment. As soon as the Court of Appeals issues its mandate,[5] Defendants will further move this Court to return the substantial funds already deposited to date pursuant to the Bond Order.

This Court retains jurisdiction over the Bond Order, with which Defendants have complied in good faith, having deposited $22 million in the Court's registry to date. Immediate action by this Court is required because the next $1 million installment payment comes due on September 23, 2016.

## Background

This Court entered the Bond Order after considering extensive evidence of Defendants' financial condition and the potentially destabilizing impact of a substantial bond as confirmed by both the Palestinian Ministry of Finance and the United States government's Statement of Interest.

Plaintiffs have twice unsuccessfully sought to alter the Bond Order, first by taking an appeal that unsuccessfully challenged the Bond Order as an abuse of this Court's discretion,[6] and more recently in March 2016 by (again unsuccessfully) asking this Court to "modify its stay of enforcement in this case, by imposing an additional condition" of directing Defendants to deposit any additional funds returned to them by the U.S. District Court for the District of Columbia "as additional security for (and not a substitute for) the security already required by this Court's order of August 24, 2015." *See* Dkt. #990, denied at Dkt. #992. Plaintiffs' March 2016 application effectively acknowledged this Court's jurisdiction to modify the Bond Order pending issuance of the mandate.[7]

## Argument

The Court should exercise its discretion to suspend immediately the Bond Order requirement of additional $1 million monthly payments pending issuance of the mandate. Because the judgment has been vacated—in substance, if not yet formally because the mandate has not yet issued—further monthly installments are not needed to secure collection of that judgment. *See Augustin v. Nassau Cnty. Sheriff's Dep't*, 783 F.3d 414, 417 (2d Cir. 2015) ("The purpose of [Rule 62(d)] is to ensure 'that the prevailing party will recover in full, <u>if the decision should be affirmed</u> . . . .'") (emphasis added).

---

[5] Given that Plaintiffs have sought rehearing, despite the improbability that it will be granted (*see supra* n.4), it is unclear when the mandate will issue.

[6] *See Sokolow v. Palestine Liberation Org., et al.*, No. 15-2739 (2d Cir.) at Dkt. #100.

[7] *See also Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) ("notwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters"); *see also Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985) ("A district court, during the pendency of an appeal is not divested of jurisdiction . . . to issue orders regarding the filing of bonds or supersedeas bonds . . . .").

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. George B. Daniels
September 12, 2016

Although the mandate has not yet issued, there is ample precedent for releasing a *supersedeas* bond when, as here, the defendant has in substance already prevailed on appeal. *See Am. Fed. Grp. v. Rothenberg*, 91 Civ. 7860, 1998 U.S. Dist. LEXIS 7832, at *9, *11 (S.D.N.Y. May 27, 1998) (releasing a *supersedeas* bond after judgment was vacated and the case remanded for further proceedings even when "the Second Circuit's decision . . . affirm[ed] a number of [the district court's] findings and its approach to damages, and . . . [could] fairly be read as suggesting a belief that the record may support a judgment in favor of plaintiffs" on remand because there was "presently … no judgment against the defendant, and there [was] no judgment to stay or to secure with a bond. Surely, the Bond was not intended to remain in effect to secure a non-existent judgment.") (emphasis added).

Moreover, continued enforcement of the $1 million monthly deposit requirement would impose unjustifiable injury on Defendants, whose financial circumstances remain at least as challenging now as when this Court entered the Bond Order in August 2015. For example, recent independent reports by the International Monetary Fund and World Bank confirm that the PA continues to experience enormous budget deficits and financing gaps. *See* International Monetary Fund Report to the Ad Hoc Liaison Committee on the West Bank and Gaza at 11, http://www.imf.org/~/media/Files/Countries/ResRep/WBG/2016WBGRR.ashx, August 26, 2016 ("August IMF Report"); *see also* World Bank Economic Monitoring Report to the Ad Hoc Liaison Committee at 1, 7-8 (discussing "large" 2015 and 2016 financing gaps), http://documents.worldbank.org/curated/en/780371468179658043/pdf/104808-WP-v1-2nd-revision-PUBLIC-AHLC-report-April-19-2016.pdf, April 19, 2016 ("World Bank Report"). Indeed, in 2016, IMF projects that the PA's financing gap could be anywhere from $500 million to "above $600 million." *See* August IMF Report at 11, 16.

These fiscal challenges severely constrain the PA's ability to deal with Palestine's ongoing and acute humanitarian crisis. *See* World Bank Report at 1 (noting a "sharp deceleration in economic growth," which has "stifled the economy's ability to create jobs for a growing youth population," contributing "a large wage bill and weak revenue performance" and a large deficit to GDP ratio); *see also* International Monetary Fund Report to the Ad Hoc Liaison Committee on the West Bank and Gaza at 4 & n.5, https://www.imf.org/~/media/Files/Countries/ResRep/WBG/WBG040516.ashx, April 5, 2016 ("[p]ersistently high unemployment rates, especially among youth and recent graduates, risk compounding political strains").

Consequently, every $1 million that the PA does not have to deposit into the registry of this Court to support a now-vacated judgment will help reduce that financing gap, and allow the PA to address vital humanitarian needs. *See* August IMF Report at 9 ("pressures for deeper spending cuts or additional arrears" could "exacerbate social tensions, compounding the risk of escalating violence or difficulties in containing spending, resulting in a vicious cycle of political and fiscal risks").[8]

---

[8] The World Bank recently confirmed that the PA's financing gap for 2015 was $650 million, a shortfall worse than was projected. *See* World Bank Report at 5.

3

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. George B. Daniels
September 12, 2016

### Conclusion

For the foregoing reasons, Defendants respectfully request that this Court immediately modify the Bond Order to suspend the requirement that Defendants post additional monthly $1 million payments into the Registry of this Court.

Respectfully submitted,

Squire Patton Boggs (US) LLP


/s/Gassan A. Baloul
Gassan A. Baloul


cc: All ECF Counsel

4