# EXHIBIT C

# 15-3135(L)

## 15-3151(XAP)

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

---

**MARK I. SOKOLOW,** *et al.*,
*Plaintiffs-Appellants*,

v.

**PALESTINE LIBERATION ORGANIZATION,** *et al.*,
*Defendants-Appellees.*

---

On Appeal From The United States District Court for the Southern District of New York, Case No. 04-cv-0397 (GBD)

---

### DEFENDANTS' OPPOSITION TO PLAINTIFFS'
### EMERGENCY MOTION TO STAY MANDATE PENDING PETITION
### FOR WRIT OF CERTIORARI

---

Gassan A. Baloul
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 872-9800
Facsimile: (202) 457-6315

Mitchell R. Berger
Pierre H. Bergeron
John A. Burlingame
Alexandra E. Chopin
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000

*Attorneys for Defendants Palestinian Authority*
*and Palestine Liberation Organization*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................iii

INTRODUCTION................................................................................................... 1

ARGUMENT .......................................................................................................... 4

I.      THERE IS NO "SUBSTANTIAL QUESTION" FOR THE SUPREME
        COURT, AND THUS NO REASONABLE LIKELIHOOD THAT
        PLAINTIFFS' PETITION FOR WRIT OF CERTIORARI WILL BE
        GRANTED ..................................................................................................... 4

        A.      This Court Has Already Rejected Plaintiffs' Arguments In Support Of
                The Motion In Prior Rulings. ...................................................... 5

        B.      Plaintiffs' Arguments For Certiorari Have Been Heard, and Rejected, By
                The Supreme Court In Other Antiterrorism Act Cases. ............................ 8

        C.      The Sokolow Panel Decision Did Not Create a Circuit Split or Unsettle
                Federal Law ............................................................................... 10

II.     PLAINTIFFS HAVE FAILED TO DEMONSTRATE "GOOD CAUSE"
        FOR A STAY ............................................................................................... 13

        A.      There Is No Irreparable Harm To Plaintiffs From Issuing the
                Mandate .................................................................................... 13

        B.      Defendants Have Prevailed In This Court, and Therefore Cannot Be
                Required To Secure Plaintiffs While They Pursue a Discretionary
                Appeal ....................................................................................... 14

        C.      The Balance of Equities Necessitates That Plaintiffs' Motion Be Denied
                Because A Stay Would Irreparably Harm Defendants ............................ 16

                1.      The United States Government Submitted a Statement Of
                        Interest Here To Emphasize the Importance of the PA to U.S.
                        Public Interest. .............................................................. 16

                2.      The Evidence Continues to Show That Defendants' Financial
                        Condition Is Dire, and the Vast Majority of Palestinians Depend
                        on Government Support to Survive ...................................18

i

Case 15-3135, Document 209, 11/03/2016, 1900017, Page3 of 29

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Marbu v. Mukasey,*
    525 F.3d 497 (7th Cir. 2008) ....................................................................... 2, 5

*Asahi Metal Industry Co. v. Superior Court of Cal.,*
    480 U.S. 102 (1986) ....................................................................................... 10

*Books v. City of Elkhart,*
    239 F.3d 826 (7th Cir. 2001) ..................................................................... 4, 16

*Doe v. Miller,*
    418 F.3d 950 (8th Cir. 2005) ......................................................................... 5

*Estate of Klieman v. Palestinian Auth.,*
    2 F. Supp. 3d 237 (D.D.C. 2015) ............................................................ 12, 15

*Gates v. Syrian Arab Republic,*
    Nos. 13-2280 & 14-1452, 2014 U.S. App. LEXIS 21445 (7th Cir.
    2014) ............................................................................................................. 14

*Gilmore v. Palestinian Interim Self-Government Auth.,*
    53 F. Supp. 3d 191, 212 (D.D.C. 2014) ...................................................... 15

*Handley v. Ind. & Mich. Elec. Co.,*
    732 F.2d 1265 (6th Cir. 1984) ..................................................................... 11

*Hollingsworth v. Perry,*
    558 U.S. 183 (2010) ..................................................................................... 13

*In re Nassau County Strip Search Cases,*
    783 F.3d 414 (2d Cir. 2015) ........................................................................ 14

*Khulumani v. Barclay Nat'l Bank Ltd.,*
    509 F.3d 148 (2d Cir. 2008) ....................................................................... 1, 4

*Knox v. PLO,*
    628 F. Supp. 2d 507 (S.D.N.Y. 2001) ......................................................... 15

*Ledbetter v. Baldwin*,
    479 U.S. 1309 (1986) ..................................................................... 16

*Livnat v. Palestinian Auth.*,
    82 F. Supp. 3d 19 (D.D.C 2015) ............................................... 12, 5

*McBride v. CSX Transp. Inc.*,
    611 F.3d 316 (7th Cir. 2010) ....................................................... 14

*Nara v. Frank*,
    494 F.3d 1132 (3d Cir. 2007) ......................................................... 4

*Neeley v. Bankers Trust. Co. of Texas*,
    848 F.2d 658 (5th Cir. 1988) ........................................................ 14

*Olympia Equipment Leasing Co. v. Western Union Tel. Co.*,
    786 F.2d 794 (7th Cir. Ill. 1986) .................................................. 18

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) ........................................................................ 10

*Patterson v. Aker Solutions, Inc.*,
    826 F.3d 231 (5th Cir. 2016) ........................................................ 12

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002) .......................................................... 11

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ...................................................... 11

*Safra v. Palestinian Authority*,
    82 F. Supp. 3d 37 (D.D.C. 2015) ............................................. 12, 15

*Sampson v. Murray*,
    415 U.S. 61 (1974) .......................................................................... 3

*United States v. Scophony*,
    333 U.S. 795 (1948) ...................................................................... 13

*Waldman v. PLO*,
    No. 15-3135-cv(L), 2016 U.S. App. Lexis 16089 (2d Cir. 2016) .............................. 9

*Williams v. Chrans*,
    50 F.3d 1358 (7th Cir. 1995) ........................................................ 10

iv

**Constitution and Rules**

Fed. R. App. P. 35 ..................................................................................... 5, 6

Fed. R. App. P. 35(b) ..................................................................................... 5

Fed. R. App. P. 35(b)(1)(B) ........................................................................... 6

Fed. R. App. P. 41 ..............................................................................1, 2, 4, 5

Fed. R. App. P. 41(d)(2)(A) ....................................................................... 4, 5

Fed. R. App. P. 41(d)(2)(C) ............................................................................ 1

S. Ct. R. 10 .................................................................................................. 4, 5

U.S. CONST. amend. V ............................................................................*passim*

U.S. CONST. amend. XIV .........................................................................*passim*

**Other Authorities**

16AA Charles Ann Wright, Arthur R. Miller, Edward H. Cooper &
    Catherine T. Struve, *Federal Practice and Procedure* § 3987.1 (4th ed.
    2008) ........................................................................................................ 5

20A 341 Moore's Federal Practice-Civil §341.14 ......................................... 5

IMF Report to the Ad Hoc Liaison Committee on the West Bank and
    Gaza (Apr. 5, 2016)
    https://www.imf.org/~/media/Files/Countries/ResRep/WBG/W
    BG040516.ashx .................................................................................... 19

IMF Report to the Ad Hoc Liaison Committee on the West Bank and
    Gaza (Aug. 26, 2016)
    http://www.imf.org/~/media/Files/Countries/ResRep/WBG/201
    6WBGRR.ashx .................................................................................18, 19

Oliver Roeder, FiveThirtyEight, "The Supreme Court's Caseload Is on
    Track to Be the Lightest in 70 Years",
    http://fivethirtyeight.com/features/the-supreme-courts-caseload-is-
    on-track-to-be-the-lightest-in-70-years/ ............................................... 1

PA June Financials
    http://www.pmof.ps/documents/10180/813287/merged_2016+jun
    e+eng.pdf/b0e0cbbb-d073-4207-8e7a-44070fc23347................................................ 18

Report of the Director of Judicial Business of the United States Courts,
    Table B-2—U.S. Courts of Appeals Judicial Business (September 30,
    2015): U.S. Courts of Appeals—Petitions for Review on Writ of
    Certiorari to the Supreme Court, United States Courts,
    http://www.uscourts.gov/statistics/table/b-2/judicial-
    business/2015/09/30....................................................................................................... 1

World Bank Economic Monitoring Report to the Ad Hoc Liaison
    Committee (Apr.19, 2016)
    http://documents.worldbank.org/curated/en/780371468179658043
    /pdf/104808-WP-v1-2nd-revision-PUBLIC-AHLC-report-April-19-
    2016.pdf ................................................................................................................... 21

World Bank Economic Monitoring Report to the Ad Hoc Liaison
    Committee (Sept.19, 2016)
    http://documents.worldbank.org/curated/en/474311473682340785
    /pdf/108205-V2-WP-PUBLIC-SEPT-14-2PM-September-2016-
    AHLC-World-Bank-Report.pdf................................................................................. 19

# INTRODUCTION

At stake in this Motion is $22 million in Palestinian government money currently held as *supersedeas* security for a now-vacated judgment,[1] which is urgently needed to address the critical humanitarian needs of the Palestinian people. Plaintiffs—the losing party—point to no law entitling them to be secured by the prevailing party while they pursue the extremely low likelihood of *certiorari* review and reversal by the Supreme Court.[2]  If anything, Federal Rule of Appellate Procedure 41(d)(2)(C) indicates that it is Plaintiffs who should post a bond pending their *certiorari* petition.  The mandate should issue forthwith, further, because Plaintiffs have failed to demonstrate under FRAP 41 that their *certiorari* petition will present a "substantial question and that there is good cause for a stay."  *See also Khulumani v. Barclay Nat'l Bank Ltd.*, 509 F.3d 148, 152 (2d Cir. 2008) (emphasizing that, "<u>even if</u> the movant makes the required showing [under FRAP 41], our decision is discretionary") (emphasis added).

---

[1] The express terms of the bond order require Defendants to secure Plaintiffs only during the pendency of Defendants' appeal in this Court, and not during Plaintiffs' anticipated petition for writ of *certiorari* to the Supreme Court.  *See* Bond and Stay Order, *Sokolow et al. v. Palestine Liberation Organization, et al.*, Case No. 1:04-cv-397-GBD-RLE (S.D.N.Y.) ("*Sokolow* (S.D.N.Y.)"), DE 957.

[2] The Supreme Court has granted well less than 1% of all petitions for writ of certiorari in recent years.  *See, e.g.*, Report of the Director of Judicial Business of the United States Courts, Table B-2—U.S. Courts of Appeals Judicial Business (September 30, 2015): U.S. Courts of Appeals—Petitions for Review on Writ of Certiorari to the Supreme Court, United States Courts, *available at* http://www.uscourts.gov/statistics/table/b-2/judicial-business/2015/09/30 (last accessed Oct. 30, 2016); *see also, e.g.*, Oliver Roeder, FiveThirtyEight, "The Supreme Court's Caseload Is on Track to Be the Lightest in 70 Years", http://fivethirtyeight.com/features/the-supreme-courts-caseload-is-on-track-to-be-the-lightest-in-70-years/ (last accessed Oct. 30, 2016).

This Court has already rejected precisely the same substantive (and often verbatim) arguments that Plaintiffs raise in their Motion to Stay ("Motion")—under the same tests and standards of review—in its unanimous denials of Plaintiffs' Petition for Rehearing and for Rehearing *En Banc* ("Petition"), and Plaintiffs' appeal from the District Court's order setting the conditions of the *supersedeas* bond ("2015 Denial of Bond Appeal").[3] *See Al-Marbu v. Mukasey*, 525 F.3d 497, 500 (7th Cir. 2008) (denying motion to stay the mandate because, "[t]he <u>matters [plaintiff] intends to raise in his petition for certiorari have been examined thoroughly in the proceedings in this court</u> and further delay in the issuance of our mandate is not justified") (emphasis added).

Plaintiffs' claim that they face "irreparable harm" unless this Court perpetuates the $22 million bond is <u>contradicted by their deliberate failure just six weeks ago</u> to oppose the District Court's termination of Defendants' recurring $1 million monthly *supersedeas* bond payments.[4]   Plaintiffs cannot sit on their supposed rights in September, but complain they face irreparable harm in October.   In any event, Plaintiffs' claims of irreparable harm fail because Plaintiffs are capable of being

---

[3] 2016 Denial of Petition for Rehearing and for Rehearing *En Banc*, DE 233; *Sokolow v. PLO*, Case No. 15-2739 (2d Cir.), 2015 Denial of Bond Appeal, DE 101.

[4] *See Sokolow* (S.D.N.Y.), DE 994 (Defs.' Request to Modify Stay Conditions Pending Mandate). Plaintiffs filed no opposition, and the Court granted termination of the monthly *supersedeas* deposit on Sept. 19, 2016. *Id.*, DE 995.

compensated adequately if the judgment is reinstated.[5]  Whatever challenges Plaintiffs might face in collecting a judgment in the highly unlikely scenario that 1) *certiorari* is granted, 2) this Court's decision is reversed, and, 3) the judgment is reinstated do not amount to irreparable harm; those commonplace challenges are the same ones faced by all other judgment creditors.

Finally, the balance of equities weighs decidedly against Plaintiffs and favors immediate release of the $22 million *supersedeas* security in view of the PA's dire financial circumstances and the substantial public interest in the continued financial stability of the PA.  The United States Government submitted a Statement of Interest in this case to stress that the U.S. considers the PA a partner for peace in the region, and that it has "provided billions of dollars in assistance to … expand Palestinian economic growth and help create the conditions for peace."[6]  Even so, the PA remains billions in debt, and is "almost entirely dependent on foreign aid to meet its budget and development obligations."[7]  Accordingly, the U.S. urged the District Court to exercise caution when setting a bond, because "[a]n event that deprives the

---

[5] *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal citation omitted).

[6] *Sokolow* (S.D.N.Y.), DE 953-1 (U.S. Statement of Interest), at ¶11.  A year later, the conditions remain dire, and are reportedly deteriorating in light of a massive 28% decline in foreign aid to Palestine in 2016.  *See* April World Bank Report, at 7 (cited *infra*, n.41).

[7] *Sokolow* (S.D.N.Y.), DE 899 (Bishara Decl.), ¶ 66.

3

PA of a significant portion of its revenues would likely severely compromise the PA's ability to operate as a governmental authority," and that "the continued viability of the PA is essential to key U.S. security and diplomatic interests, including advancing peace between Israel and the Palestinians, supporting the security of U.S. allies such as Israel, Jordan, and Egypt, combatting extremism and terrorism."[8]

Ultimately, Plaintiffs fail to show how theirs is one of the "exceptional cases" that warrant a stay of the mandate.[9]  The Motion accordingly should be denied, and the Court's mandate should issue forthwith.

## ARGUMENT

**I.    There Is No "Substantial Question" For The Supreme Court, and Thus No Reasonable Likelihood That Plaintiffs' Petition For Writ of Certiorari Will Be Granted.**

The grant of a stay of a mandate pending *certiorari* "is far from a foregone conclusion," because the moving party must show "that the petition will present a substantial question and that there is good cause for a stay" and "a reasonable chance of succeeding on the merits."[10]   Supreme Court Rule 10 guides the FRAP 41 "substantial question" analysis, and requires this Court to consider whether it (i)

---

[8] *Sokolow* (S.D.N.Y.), DE 953-1 (Statement of Interest), ¶7, ¶11.

[9] *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) ("In <u>exceptional</u> cases, a party may obtain a stay of our mandate if it can demonstrate that its petition presents a 'substantial question and that there is good cause for a stay.'") (emphasis added) (citing cases from other Circuits in accord) (quoting Fed. R. App. P. 41(d)(2)(A)); 20A-341 Moore's Federal Practice-Civil §341.14.

[10] *See Books v. City of Elkhart*, 239 F.3d 826, 827 (7th Cir. 2001)(internal citation omitted); *see also Khulumani v. Barclay Nat'l Bank Ltd.*, 509 F.3d 148, 153 (2d Cir. 2007).

"decided an important federal question in a way that conflicts with the relevant decisions of [the Supreme Court]"; (ii) "decided an important question of federal law that has not been, but should be, settled by [the Supreme Court], or (iii) entered a decision in conflict with the decision of another United States court of appeals on the same important matter."[11]

This Court weighed these same factors under FRAP 35 in denying Plaintiffs' Petition, and concluded that none was present. *See* Fed. R. App. P. 35(b) (providing that a successful petition for rehearing will identify that "the panel decision conflicts with a decision of the United States Supreme Court," "an issue on which the panel decision conflicts with the authoritative decisions of other United States courts of appeals" or otherwise presents a "question[] of exceptional importance"). Plaintiffs' Motion fails to show, therefore, "a reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse the judgment of this court."[12]

### A. This Court Has Already Rejected Plaintiffs' Arguments In Support Of The Motion In Prior Rulings.

FRAP 35 instructs this Court to apply effectively the same analysis in determining whether to grant a rehearing *en banc* as it will under FRAP 41 on a motion

---

[11] S. Ct. R. 10; *see also Al Marbu v. Mukasey*, 525 F.3d 497, 499-500 (7th Cir. 2008) (weighing factors identified in Supreme Court Rule 10 in deciding whether to stay the mandate); *Doe v. Miller*, 418 F.3d 950, 952 (8th Cir. 2005) (same).

[12] *See Books*, 239 F.3d at 827-29 (7th Cir. 2001); 16AA Charles Ann Wright, Arthur R. Miller, Edward H. Cooper & Catherine T. Struve, Federal Practice and Procedure § 3987.1 (4th ed. 2008).

to stay the mandate.  This is a critical point, because Plaintiffs substantially recycle in

their Motion for Stay (indeed cutting and pasting word for word in many instances)

the arguments in their Petition for rehearing.[13]  Plaintiffs likewise repeat their same

"good cause" arguments from the 2015 Bond Appeal, which this Court denied in

October 2015.  Accordingly, this Court need look no further than its October 2016

denial of Plaintiffs' petition for rehearing *en banc* under FRAP 35 and its 2015 Denial

of the Bond Appeal to conclude that Plaintiffs have failed to raise a "substantial

question" and "good cause" meriting a stay of the mandate.

The following chart reflects this remarkable recycling:

| Plaintiffs' Motion to Stay Mandate Arguments | Plaintiffs' Petition for Rehearing and Plaintiffs' Bond Appeal Arguments[14] |
|---|---|
| This case "would present a substantial question," because it "involves a legal question of exceptional importance." *Motion* at 3, 4. | This case involves a "question of exceptional importance." *Petition* at 1, 3-4. |
| The panel decision applied Due Process to restrict the exercise of personal jurisdiction in a case "fitting the exact paradigm Congress and the President specifically envisioned when they enacted the [ATA]," thus holding the statute | The jury verdict "fit the exact paradigm that Congress and the President foresaw when they enacted the ATA." The panel decision erroneously held that the ATA was "constitutionally inadequate under Fourteenth Amendment Cases." |

---

[13] Plaintiffs raise the specter of a Circuit split for the first time in their Motion to Stay, but it is reasonable to presume that this Court considered and rejected this issue in the course of deciding the Petition for rehearing. *See* Motion at 11-14; Fed. R. App. P. 35(b)(1)(B) (noting that a question of exceptional importance may "involve[] an issue on which the panel decision conflicts with the authoritative decisions of other United States Court of Appeals that have addressed the issue"); FRAP 35(b)(1)(B) advisory committee's note to 1998 amendment (emphasizing "intercircuit conflict" as the basis for rehearing *en banc*).

[14] *Sokolow,* Case No. 15-2739 (2d Cir.), Ps.' "Emergency" Mot. to Modify Stay ("Bond Appeal"), DE 14-2.

| | |
|---|---|
| "unconstitutional when applied to the paradigm case for which it was designed." *Motion* at 4, 5. | *Petition* at 1, 9. |
| The panel decision improperly subjected a civil case to "a more restrictive due process test than [is applied to] criminal cases," which "threatens harm to other federal statutory schemes as well." *Motion* at 5-6, 16. | The panel decision improperly subjected a civil case to a more restrictive due process test than is applied to criminal cases, which would have "far-reaching effects" on other federal statutory schemes. *Petition* at 11-13. |
| The panel decision improperly held that the provision of material support to foreign terror organizations ("FTO") "does not reflect that the organization has aimed its conduct at the United States." *Motion* at 8. | The panel decision improperly held that the provision of material support to an FTO "does not reflect that the organization has aimed its conduct at the United States." *Petition* at 7-8. |
| Defendants ostensibly "intended their terror campaign to influence U.S. policy," which the panel decision held was "insufficient for purposes of due process." *Motion* at 8-9. | Defendants ostensibly "intended their terror campaign to influence U.S. policy," which the panel decision held was "insufficient for purposes of due process." *Petition* at 8. |
| The panel decision erred by applying a "rigid territorial" test while "refus[ing] to consider U.S. sovereign interests" in conflict with Supreme Court precedent. *Motion* at 9-11 (emphasis omitted). | The panel decision erred by applying a "strict territorial test" while "refusing to consider U.S. sovereign interests" in conflict with "the law of this Circuit and the Supreme Court." *Petition* at 2, 4-9. |
| The panel decision improperly applies "Fourteenth Amendment Cases to Restrict Federal Judicial Power," thus conflicting with other circuits. *Motion* at 11 (§ I(D)), 11-13. | "The Panel Decision Improperly Applies Fourteenth Amendment Cases to Restrict Federal Judicial Power." *Petition* at 9 (§III), 9-11. |
| The ATA is the Federal Government exercising power "as an undivided whole," and "courts should hesitate long before limiting or embarrassing such powers." An Act of Congress is due a "strong presumption of constitutionality", which the panel decision failed to afford. *Motion* at 14-15, 15. | The ATA is the Federal Government exercising power "as an undivided whole," and "courts should hesitate long before limiting or embarrassing such powers." *Petition* at 10-11. "In evaluating the ATA's constitutionality, the courts have given 'significant weight' to "the considered judgment of Congress and the Executive," which the panel decision failed to afford. |

| | *Ps.' R. 28(j) Letter*, DE 224 at 1-2. |
|---|---|
| JASTA finding that those knowingly providing material support to an FTO "direct their conduct at the United States, and should reasonably anticipate being brought to court in the United States," should be afforded deference. *Motion at* 11, 14-15 (emphasis omitted). | JASTA finding that those knowingly providing material support to an FTO "direct their conduct at the United States, and should reasonably anticipate being brought to court in the United States," should be afforded deference. *28(j)* at 1. |
| The panel decision "created a number of absurd and dangerous results" that may "trouble the Supreme Court." *Motion* at 16 (outlining alleged "absurd and dangerous results"). | The panel decision "countenance[s] . . . absurd and dangerous results" supporting panel or *en banc* review. *Petition* at 2-3 (listing the exact same alleged "absurd and dangerous results" as in the Motion to Stay). |
| Defendants have "stymied collection in other cases." *Motion* at 17-18. | Defendants have "stymied collection other cases." *Bond Appeal* at 18-20. |
| "Defendants will respond that they need the money returned to them because they are effectively insolvent," but "[t]hey are not" and "[t]he return of the money currently on deposit . . . will have no material effect on their operations," while leaving Plaintiffs with nothing to collect if the judgment is reinstated.<br><br>*Motion* at 18. | "[D]efendants moved for a stay of execution of the judgment pending appeal, claiming they are effectively insolvent," but the evidence showed "that the PA alone could afford to pay $20 million per month out of current operating revenues." The district court's stay order "leaves plaintiffs severely under-secured." *Bond Appeal* at 2, 4, 7-8, 8-20. |

**B.   Plaintiffs' Arguments For Certiorari Have Been Heard, and Rejected, By The Supreme Court In Other Antiterrorism Act Cases.**

Plaintiffs' arguments that *certiorari* is likely to be granted also substantially overlap with those made by the petitioners and rejected by the Supreme Court in *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks)*, No. 13-318, 2013 U.S. S. Ct. Briefs LEXIS 3753, *cert. denied*, *O'Neil v. Al Rajhi Bank*, 134 S. Ct. 2870 (2014) and *Federal*

*Insurance Co. v. Kingdom of Saudi Arabia*, No. 08-640 (Nov. 12, 2008), *cert. denied*, *Federal Insurance Co. v. Kingdom of Saudi Arabia*, 557 U.S. 935 (2009).

Most pertinently, in *O'Neill* and *Federal Insurance Company*, the petitioners argued for a broader standard of personal jurisdiction in light of both the ATA's material support provisions and the general federal interest in combatting terrorism. Those petitioners, like Plaintiffs here, posited that the federal legislative "assessment that material support for terrorism provided abroad to organizations targeting the United States very directly implicates U.S. interests, justifying the exercise of personal jurisdiction over those who provide such support." *See* Pet. for Writ of Cert., *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks)*, No. 13-318, 2013 U.S. S. Ct. Briefs LEXIS 3753 *47; Pet. for Writ of Cert., *Fed. Ins. Co. v. Kingdom of Saudi Arabia*, No. 08-640 at *31-33 (Nov. 12, 2008) (arguing that federal interests justify broad civil personal jurisdiction in terrorism cases); and Motion at 10-11 (arguing that broad civil personal jurisdiction is appropriate given the general federal interest in combatting terrorism and the specific findings in JASTA concerning FTOs).

In advance of the Supreme Court's denial of *certiorari* in *O'Neill*, the Solicitor General demonstrated that this Court had properly applied "settled standards"[15] of

---

[15] Plaintiffs also mischaracterize this panel decision as expanding those "settled standards" to preclude jurisdiction where an individual knowingly targeted U.S. citizens. Motion at 7. In fact, the panel decision correctly concluded that mere foreseeability of harm to U.S. citizens was insufficient to establish specific personal jurisdiction under *Walden*. *Waldman v. PLO*, Nos. 15-3135-cv(L) and 15-3151(XAP), 2016 U.S. App. Lexis 16089, *45 (2d Cir. 2016) ("*Sokolow*").

jurisdictional due process when it rejected in that case—as here—the plaintiffs' expansive theory of ATA jurisdiction. Those "settled standards" of jurisdictional due process are the same ones that this Court applied here as well. As these arguments previously were raised with, and rejected by, the Supreme Court, they "certainly are not evidence of the probability" that the Supreme Court will grant certiorari. *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995).

## C.   The *Sokolow* Panel Decision Did Not Create a Circuit Split or Unsettle Federal Law.

Plaintiffs incorrectly argue that there is a split among the Circuits pertaining to the congruence of Fourteenth Amendment and Fifth Amendment jurisdictional due process standards,[16] other than for the broader (nationwide) geographic scope of relevant forum contacts under the Fifth Amendment. In fact, the Circuits are in agreement that, while the Supreme Court left that issue open in *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987), and *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 n.* (1986), there is no longer any real doubt that the only difference between the Fifth Amendment "minimum contacts" analysis and the parallel Fourteenth Amendment analysis is the need to evaluate "the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits." *Omni Capital*, 484 U.S. at 102 n.5; *see also Asahi*, 480 U.S. at 113 n.* (same).

---

[16] *See* Motion at 11-13.

10

Indeed, Plaintiffs' cited cases in purported support of a Circuit split actually <u>confirm</u> the congruence of the Fifth and Fourteenth Amendment due process inquiry, save for the different geographic scope. In *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 944 (11th Cir. 1997), for example, the Eleventh Circuit held that cases analyzing the Fourteenth Amendment's Due Process Clause instruct a court's interpretation of the Fifth Amendment's Due Process Clause because "the language and motivating policies of the due process clauses of [the Fifth and Fourteenth Amendments] are substantially similar." Although the *BCCI* Court made note of the federal interest in the litigation as part of its "fairness" analysis, it did so only after establishing that the defendants' forum contacts satisfied a Fourteenth Amendment minimum contacts test—adjusted only to consider nationwide, rather than single-State, contacts.[17] Similarly, in *Handley v. Ind. & Mich. Elec. Co.*, 732 F.2d 1265, 1271 (6th Cir. 1984) and *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 370-71 (3d Cir. 2002), both Fifth Amendment cases, the Sixth and Third Circuits addressed whether the defendants had sufficient contacts under a Fourteenth Amendment minimum contacts test—again, adjusted only to consider nationwide, rather than single-State, contacts before addressing "fairness."

More recent decisions addressing Fifth Amendment personal jurisdiction standards in ATA cases, like the Court's decision here in *Sokolow*, likewise have

---

[17] *BCCI Holdings*, 119 F.3d at 945 n.16.

11

applied the Fourteenth Amendment personal jurisdiction test this way.[18]   In fact, *Sokolow* expressly aligned itself with those ATA decisions from courts of other Circuits, further reducing any prospect that the Supreme Court would perceive a Circuit split on this issue.[19]   *Sokolow*, and the jurisprudence with which it conforms, adhered to the "settled standards" of jurisdictional due process on which the Solicitor General rested her views in *O'Neill*.

Faced with these "settled standards" concerning the congruence of the Fourteenth and Fifth Amendments jurisdictional due process tests, then, and although neither party challenged the constitutionality of the ATA's service of process provision,[20] Plaintiffs imagine that this Court held that the ATA's service-of-process provision was unconstitutional.[21]   To the contrary, this Court narrowly emphasized that the scope of its jurisdiction could not constitutionally be dictated by the ATA's

---

[18] *See, e.g.*, *Safra v. Palestinian Authority*, 82 F. Supp. 3d 37, 46-48 (D.D.C. 2015); *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 28-29 (D.D.C. 2015); *see also Patterson v. Aker Solutions, Inc.*, 826 F.3d 231, 234 (5th Cir. 2016) (applying *Daimler* "at home" standard to claims governed by Fifth Amendment jurisdictional due process requirements).

[19] There is similarly no circuit split concerning the application of *Daimler* and *Walden* to either of Defendants.  *Sokolow* narrowly applied recent Supreme Court guidance to conclude that it had no personal jurisdiction over Defendants.  *See Sokolow* at 27-36 (applying *Daimler*), 36-60 (applying *Walden*).  In fact, *Sokolow* expressly aligned itself with courts in the D.C. Circuit that applied *Walden* and *Daimler* to Defendants in precisely the same fashion.  *See id.* at 16, 29, 30 (quoting *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 237, 245-46 (D.D.C. 2015) and *Safra v. Palestinian Auth.*, 82 F. Supp. 3d 37, 47-48 (D.D.C. 2015) (quoting *Estate of Klieman v. Palestinian Auth.*, 2 F. Supp. 3d 237, 245-46 (D.D.C. 2015)).

[20] *See Sokolow* at 19.

[21] *See* Motion at 5-6.

service-of-process provision.[22] *Sokolow* acknowledged Plaintiffs' and *amici*'s arguments concerning Congress's intended reach of the ATA, but rejected the notion that congressional intent can usurp jurisdictional due process, because "the federal courts cannot exercise jurisdiction in a civil case beyond the limits prescribed by the due process clause of the Constitution."[23]

## II.    Plaintiffs Have Failed to Demonstrate "Good Cause" for a Stay.

### A.    There Is No Irreparable Harm To Plaintiffs From Issuing the Mandate.

To obtain a stay of the mandate, Plaintiffs must demonstrate that there is "a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). While Plaintiffs acknowledge that their Motion must demonstrate "irreparable harm" under *Hollingsworth*, they nowhere do so. Instead, their Motion claims only that Plaintiffs "are at substantial risk of suffering hardship in the collection of their [now non-existent] judgment."[24]

---

[22] *Sokolow* at 59 ("It is clear that the ATA permitted service of process . . . .  However, the statute does not answer the constitutional question of whether due process is satisfied"); *see also Sokolow* at 37.

[23] *Id.* at 23-24, 61.  Both *Sokolow* and *United States v. Scophony Corp. of Am.*, 333 U.S. 795 (1948), confirm that a federal service-of-process statute is not deemed to be held unconstitutional when a court applies due process limits on jurisdiction that otherwise would be acquired by statutorily-authorized service.  *Sokolow* at 59-60 ("*Scophony* affirms the understanding . . . that due process analysis . . . applies even when federal-service-of-process statutes are satisfied").

[24] Motion at 17.

13

There is no irreparable harm, first, because Plaintiffs admit that their claimed harm can be cured by the payment of money.[25]  Indeed, Plaintiffs' claim of irreparable harm is belied by their failure to oppose the District Court's termination of Defendant's $1 million monthly bond-deposit obligation after this Court vacated the judgment.  Untroubled by the termination of that monthly accretion of funds, Plaintiffs equally are unharmed by the release of funds that accumulated by virtue of those recurring deposits.[26]

## B. Defendants Have Prevailed In This Court, and Therefore Cannot Be Required To Secure Plaintiffs While They Pursue a Discretionary Appeal.

A prevailing defendant cannot be obligated to secure a losing plaintiff's efforts to obtain discretionary Supreme Court review.  Rather, once a defendant prevails on appeal, the *supersedeas* bond must be released—even if the defendant could once again be held liable after further proceedings.[27]

Further, because there is no judgment against Defendants, it is irrelevant whether Defendants long ago ever failed or refused to pay judgments in unrelated

---

[25] *See Gates v. Syrian Arab Republic*, Nos. 13-2280 & 14-1452, 2014 U.S. App. LEXIS 21445, at *2, *3 (7th Cir. 2014) (no irreparable injury when there is some risk that a prevailing party cannot collect when a "court's judgment requires a transfer of money or property"; "Those risks alone are not enough to call for a stay of the mandate.") citing *McBride v. CSX Transp. Inc.*, 611 F.3d 316, 318 (7th Cir. 2010) (Ripple, J., in chambers) (denying stay)).

[26] *See Sokolow* (S.D.N.Y.), DE 994-995.

[27] *See, e.g., Neeley v. Bankers Trust. Co. of Texas*, 848 F.2d 658, 659, 660-61 (5th Cir. 1988) (releasing *supersedeas* bond after judgment was vacated, although the case remanded for a new trial on damages); *see also, e.g., In re Nassau County Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (the purpose of a Rule 62(d) *supersedeas* bond is to protect the prevailing party on appeal if the decision should be affirmed).

14

cases on unrelated facts and circumstances.  Since at least 2007, moreover, after seeking the advice of the U.S. State Department, Defendants have consistently and actively litigated in good faith the merits of cases pending against them, and have posted bonds to vacate earlier defaults when ordered to do so.[28]  Defendants were entirely compliant with the various conditions of the *supersedeas* bond set by the District Court in this case.  Defendants likewise have prevailed after litigating in good faith in several other cases pending in the D.C. federal district courts,[29] and are actively engaging in the appeals in each of those cases.[30]

---

[28] *See Gilmore v. Palestinian Interim Self-Gov't Auth., et al.*, Case No. 01-cv-0853-GK (D.D.C.), DE 107-2 (letter from Secretary of State Condoleeza Rice to President Mahmoud Abbas noting her "full[] recogni[tion] [of] the already significant economic crisis that exists for the Palestinian people," but nevertheless encouraging the PA and PLO "to respond to U.S. legal proceedings in good faith and a timely manner").  *See also Shatsky v. Syrian Arab Republic, et al.*, Case No.1:02-cv-2280-RJL (D.D.C.), Docket Entry of Aug. 16, 2011 ($1 million); *Gilmore v. Palestinian Interim Self-Gov't Auth., et al.*, Case No. 1:01-cv-853-GK (D.D.C.), Docket Entries of Jan. 29 and Feb. 1, 2007 ($1 million).

[29] *See Est. of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237 (D.D.C. 2015), *appeal docketed*, No. 15-7034 (D.C. Cir. Apr. 8, 2015); *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19 (D.D.C. 2015), *appeal docketed*, No. 15-7024 (D.C. Cir. Mar. 18, 2015); *Safra v. Palestinian Auth.*, 82 F. Supp. 3d 37 (D.D.C. 2015), *appeal docketed*, No. 15-7025 (D.C. Cir. Mar. 18, 2015); *Gilmore v. Palestinian Interim Self-Government Auth.*, 53 F. Supp. 3d 191 (D.D.C. 2014), *appeal docketed*, No. 14-7129 (D.C. Cir. Aug. 29, 2014).

[30] The D.C. Circuit consolidated *Livnat* and *Safra* [*see* Apr. 16, 2015 Order, Case Nos. 15-7024 and 15-7025 (D.C. Cir.), DE 1547757], and ordered that *Klieman* be held in abeyance pending resolution of the appeals in *Gilmore* and *Livnat/Safra* [*see* May 28, 2015 Order, Case No. 15-7034 (D.C. Cir.), DE 1554702].  The *Gilmore* and *Livnat/Safra* appeals have been fully briefed, and oral argument was held on September 14, 2016.

### C.     The Balance of Equities Necessitates That Plaintiffs' Motion Be Denied Because A Stay Would Irreparably Harm Defendants.

#### 1.     The United States Government Submitted a Statement Of Interest Here To Emphasize the Importance of the PA to U.S. Public Interest.

The balance of equities weighs against a stay of the mandate here, first,[31] because the United States has "significant concerns about the harms that could arise if the Court were to impose a bond that severely compromised the Palestinian Authority's ("PA") ability to operate as a governmental authority."[32]   The United States submitted a Statement of Interest in this case, and "urge[d] the Court to carefully consider the impact of its decision on the continued viability of the PA in light of the evidence about its financial situation."[33]   The United States urged caution with respect to these bond funds, because "[t]he PA is in the midst of a deteriorating economic and political environment, generating a slow-onset humanitarian crisis in the West Bank that threatens to unravel the economic, security, and humanitarian gains of the past ten years.   In Gaza, where the situation is far more dire, a worsening

---

[31] *See Ledbetter v. Baldwin*, 479 U.S. 1309, 1310-11 (1986) (Powell, J., in chambers) (balancing the irreparable injuries to the parties while ruling on a stay application); *Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) ("[I]t is necessary to balance the equities of granting a stay by assessing the harm to each party if a stay is granted.").

[32] *Sokolow* (S.D.N.Y.), DE 953 (Statement of Interest), at 2.

[33] *Id.*, DE 953-1 (Statement of Interest), at ¶7.

Case 15-3151, Document 229-1, 11/03/2016, 1900017, Page24 of 28

economic situation could be exploited by Hamas to create an atmosphere for violent conflict."[34]

The United States, International Monetary Fund ("IMF"), World Bank and other independent observers have all agreed on this point, "because the PA is the working government in Palestine, and while the PA is responsible for providing government services, welfare relief and employment to millions of people, it is effectively insolvent."[35]  As Defendants informed this Court, relying on reports from the IMF, United Nations and World Bank, and Defendants' evidentiary submissions:

> [T]he United States government, the IMF, the World Bank, United Nations and the PA's Ministry of Finance all have urged, in the most emphatic terms, that no less at stake are the foreign policy interests of the United States; the safety and security of the Palestinian people and their neighbors in Israel, Jordan, and Egypt, particularly '[a]t a time when the United States is leading international efforts to counter extremism and degrade and defeat the Islamic State'; and, the ability of the PA to feed, house, employ, and provide medical care and schooling to Palestinians devastated by the 2014 war with Israel.[36]

---

[34] *Id.*, ¶10.

[35] *Sokolow*, Case No. 15-2739 (2d Cir.), Defs.' Opp. to Ps' Emergency Motion to Modify Stay Pending Appeal, DE 60-1 (09/14/2015), at 17 (citing Baloul Decl., Ex. C (Suppl. Bishara Decl.), at ¶ 12; *see also id.*, Ex. B (Bishara Decl.), at ¶¶ 22, 23 (describing programs that PA provides to Palestinian people)).

[36] *Id.* (quoting Statement of Interest, ¶ 9).

## 2. The Evidence Continues to Show That Defendants' Financial Condition Is Dire, and the Vast Majority of Palestinians Depend on Government Support to Survive.

Defendants continue to balance at the edge of the financial precipice, as they were when this Court affirmed the District Court bond on October 14, 2015.[37] Without question, a stay of the mandate and concomitant hold on the $22 million would further devastate the Palestinian people who depend in vast numbers on the Palestinian Authority for their employment, safety and, indeed, their survival. Twenty million dollars would pay for nearly all of the PA's social assistance payments to vulnerable families for an entire month.[38]

The PA's Finance Minister previously submitted declarations to the District Court, which continue to reflect current conditions in Palestine.[39] The IMF and World Bank have recently confirmed that the PA continues to experience enormous budget deficits and financing gaps, with the 2016 gap projected to be at least $600 million.[40] Defendants therefore badly need the deposits presently held in the District Court's registry, because:

---

[37] *See Sokolow*, Case No. 15-2739 (2d Cir.), DE 101; *see also Olympia Equipment Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794, 800 (7th Cir. Ill. 1986) (Easterbrook, J., concurring) (explaining that a supersedeas bond should not push the judgment debtor "over the brink").

[38] *See* PA June Financials at Schedule 10d, Table 8A http://www.pmof.ps/documents/10180/813287/merged_2016+june+eng.pdf/b0e0cbbb-d073-4207-8e7a-44070fc23347 (using an exchange rate of 3.81 NIS per US dollar, *see* https://www.oanda.com/currency/converter/).

[39] *See Sokolow* (S.D.N.Y), Bishara Decl., DE 849; *id.*, Suppl. Bishara Decl., DE 949.

[40] *See* IMF to the Ad Hoc Liaison Committee on the West Bank and Gaza at 11, http://www.imf.org/~/media/Files/Countries/ResRep/WBG/2016WBGRR.ashx, August 26,

- Palestinian unemployment exceeds 27%, with Gaza's 43% unemployment the highest in the world, and more than 20% of Palestinians subsist on one dollar a day or less;[41]
- *Two-thirds* of Gazans are refugees, more than half a million of whom "live in the eight recognized Palestine refugee camps, which have one of the highest population densities in the world";
- For every $1 million in security, the PA is unable to rebuild 1 and a half hospitals or 7 health clinics, a particularly critical impact because the 2014 war materially damaged or destroyed *half* of Gaza's hospitals and health centers;
- For every $1.2 million in security, the PA is unable to rebuild one school, a vital need because the 2014 war destroyed 140 schools, and a current U.N. budget shortfall meant a projection that 700 schools would not open for the 2015-16 school year.[42]

These challenges severely constrain Defendants' ability to address Palestine's ongoing and acute humanitarian crisis.

## CONCLUSION

Plaintiffs' Motion to Stay Mandate Pending Petition for Certiorari should be denied, and the mandate should issue forthwith.

---

2016 ("August IMF Report"); *see also* World Bank Economic Monitoring Report to the Ad Hoc Liaison Committee at 4, 5, 8, http://documents.worldbank.org/curated/en/474311473682340785/pdf/108205-V2-WP-PUBLIC-SEPT-14-2PM-September-2016-AHLC-World-Bank-Report.pdf, Sept. 19, 2016 ("World Bank Report").

[41] *See* World Bank Report at 4 (27% unemployment in 2016); at 7; *see also* IMF Report to the Ad Hoc Liaison Committee on the West Bank and Gaza at 4 & n.4, https://www.imf.org/~/media/Files/Countries/ResRep/WBG/WBG040516.ashx, April 5, 2016 ("[p]ersistently high unemployment rates, especially among youth and recent graduates, risk compounding political strains") ("April World Bank Report").

[42] *Sokolow*, Case No. 15-2739 (2d Cir.), Defs.' Opp'n to Ps.' Emergency Mot. to Modify Stay Pending Appeal, , DE 60-1 at 7.  *See also Sokolow* (S.D.N.Y.), Rule 62 Supersedeas Bond Hr'g Tr. (Aug. 24, 2016), DE 977 at 5:1-15.

November 3, 2016

Respectfully submitted,

/s/ Gassan A. Baloul

Gassan A. Baloul
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 872-9800

Mitchell R. Berger
Pierre H. Bergeron
John A. Burlingame
Alexandra E. Chopin
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants Palestinian Authority and Palestine Liberation Organization*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2016, a true and correct copy of the foregoing was filed with the Clerk of the United States Court of Appeals for the Second Circuit via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

/s/Gassan A. Baloul
Gassan A. Baloul
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 872-9800

*Attorney for Defendants the Palestinian Authority and the Palestine Liberation Organization*