# Arnold & Porter

Kent A. Yalowitz
+1 212.836.8344 Direct
Kent.Yalowitz@arnoldporter.com

September 10, 2020

**BY ECF**

Hon. George B. Daniels
United States District Court
　for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

　　　　Re:　*Sokolow et al. v. Palestine Liberation Organization et al.*
　　　　　　No. 04 Civ. 397 (GBD)

Dear Judge Daniels:

　　As the Court recalls, this Court dismissed the above-referenced action on December 2, 2016, for lack of personal jurisdiction, in compliance with the Second Circuit's mandate.

　　There have been material developments since that time. Most immediately, on September 8, 2020, the Second Circuit recalled its mandate and issued a *Jacobson* remand to this Court "for the limited purposes of determining the applicability of the PSJVTA to this case, and, if the PSJVTA is determined to apply, any issues regarding its application to this case including its constitutionality." (Copy enclosed.) The "PSJVTA" referenced in that order is the Promoting Security and Justice for Victims of Terrorism Act of 2019, Pub. L. No. 116–94, div. J, tit. IX, § 903 (PSJVTA) (codified in part at 18 U.S.C. § 2334(e)).

## Request

　　Plaintiffs respectfully request that the Court permit plaintiffs to conduct discovery for the purpose of determining the applicability to this case of the PSJVTA.

　　The Court may also wish to consider whether to refer this case to a Magistrate Judge for the supervision of such discovery.

## Events Leading to The Second Circuit's Remand

　　On October 3, 2018, Congress enacted the Anti-Terrorism Clarification Act, Pub. L. No. 115-253 § 4 (adding 18 U.S.C. § 2334(e), set out as originally enacted in a note to

**Arnold & Porter**

Hon. George B. Daniels
September 10, 2020
Page 2

18 U.S.C. § 2334) (ATCA). The ATCA provided that certain entities would be deemed to consent to personal jurisdiction in civil cases under the Anti-Terrorism Act of 1992 (18 U.S.C. § 2334) if they engaged in specified conduct after the law's enactment.

Plaintiffs asked the Second Circuit to recall its mandate in light of the ATCA. In an order dated June 19, 2019, the Second Circuit denied that motion. *Waldman v. Palestine Liberation Org.*, 925 F.3d 570 (2d Cir. 2019). Plaintiffs petitioned for Supreme Court review.

While plaintiffs' request for Supreme Court review was pending, Congress amended 18 U.S.C. § 2334(e) by enacting the PSJVTA, which clarified and expanded the bases for exercising jurisdiction over the PLO and PA.

The Supreme Court granted review, vacated the judgment of the Second Circuit and remanded for further consideration in light of the PSJVTA. *Sokolow v Palestine Liberation Org.*, No. 19-764 (U.S. Apr. 27, 2020).

In response to the Supreme Court's order, the Second Circuit has, in turn, issued a *Jacobson* remand "for the limited purposes of determining the applicability of the PSJVTA to this case, and, if the PSJVTA is determined to apply, any issues regarding its application to this case including its constitutionality."

### The PSJVTA Provides New Bases for the Exercise of Personal Jurisdiction

The PSJVTA expressly applies to the Palestine Liberation Organization (PLO) and the Palestinian Authority (PA). 18 U.S.C. § 2334(e)(5).

The PSJVTA provides that if defendants engage in certain conduct after specified dates, they are deemed to have consented to the exercise of personal jurisdiction in this action. A defendant may consent to personal jurisdiction "at any stage of a proceeding, including…on appeal," even if the defendant had previously objected to the exercise of personal jurisdiction. *Shatsky v. Palestinian Liberation Org.*, 955 F.3d 1016, 1029 (D.C. Cir. 2020).

Section § 2334(e)(1) provides three bases for the exercise of personal jurisdiction in this case. *First*, paragraph (A) provides that a defendant "shall be deemed to have consented to personal jurisdiction" in ATA cases if, after April 18, 2020, it "makes any payment, directly or indirectly—"

**Arnold & Porter**

Hon. George B. Daniels
September 10, 2020
Page 3

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or
>
> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual.

18 U.S.C. § 2334(e)(1)(A).

*Second*, paragraph (B) provides for consent if a defendant "continues to maintain any office, headquarters, premises, or other facilities or establishments in the United States," unless "used exclusively for the purpose of conducting official business of the United Nations," 18 U.S.C. § 2334(e)(1)(B)(i), (3)(A), (4).

*Third*, paragraph (B) further provides for consent if, after January 4, 2020, the defendant "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority," subject to specified exceptions. 18 U.S.C. § 2334(e)(1)(B)(iii), (3)(B)-(F).

**Discovery is Needed to Determine
the Applicability of the PSJVTA to this Case**

Discovery is necessary to comply with the Second Circuit's mandate determine the applicability of § 2334(e). While there are strong indications that defendants voluntarily engaged in jurisdiction-creating conduct after the statutory trigger dates, the relevant facts and information are known to defendants but are otherwise not available to plaintiffs and the Court.

**1. "Pay-for-Slay" Consent.**—As the Court recalls, the evidence at trial showed that defendants make monthly payments to the designees and families of individuals convicted of, or killed while, perpetrating terror attacks that killed or injured U.S. nationals. *See* Plaintiffs' Trial Exhibits 2, 3, 7, 10, 25, 48, 49, 58, 104, 105, 106, 108, 109, 112, 116, 118, 123, 127, 128, 1120, 1121 (filed as exhibits to ECF Docs. 909, and 927). Defendants stipulated on October 31, 2014 that "the Palestinian Authority's practices concerning the promotions of prisoners, payments to prisoners' families, and payments to martyrs' families have not materially changed" since the close of fact discovery in 2012. ECF Doc.

# Arnold & Porter

Hon. George B. Daniels
September 10, 2020
Page 4

632-1 (S.D.N.Y. Oct. 31, 2014). In 2018, Congress found that such payments were continuing. *See* Taylor Force Act, 22 U.S.C. § 2378c-1 note.; *see also* Editorial, "Pay for Slay in Palestine," *Wall St. Journal* (Mar. 27, 2017).

     Defendants' recent public statements indicate that they voluntarily continued these payments after the relevant date in the PSJVTA, April 18, 2020. On July 5, 2020—well *after* April 18—Defendants' own official news service announced that Defendants' "Finance Ministry had transferred *all of the prisoners' allowances* into their bank accounts, along with the date the allowances were to be paid," and that any *failure* by any bank to credit any prisoner's account "would violate the directives of the [Palestine] Monetary Authority and the government." (emphasis added). (Copy enclosed.) Then, on July 9, the head of defendants' Committee of Prisoners and Ex-Prisoners, was interviewed on official Palestinian Television; when asked about the prisoner payments he stated: "Regarding the salaries, everything was fine. On Wednesday [July 8], obviously, after having discussions with some of the banks that were disbursement stations, … we didn't receive almost any phone call from any prisoner [family]…. They went to the banks and they [the banks] disbursed to them." (Copy enclosed.)

     Accordingly, while there are clear indications that defendants have continued to make these terror payments without interruption or distinction subsequent to the April 18, 2020 trigger date, discovery is necessary to obtain proof of the existence and extent of payments meeting the definitions set forth in 18 U.S.C. § 2334(e)(1)(A).

     **Second:** Discovery is needed concerning defendants' maintenance of "any…office…or other facilities…in the United States," which constitutes consent to personal jurisdiction. § 2334(e)(1)(B)(i). The statute provides that *any* facility "within the territory of the United States that is not specifically exempted by paragraph (3)(A) shall be considered to be in the United States for purposes of paragraph (1)(B)." § 2334(e)(4). That exemption is strictly limited to a facility "used exclusively for the purpose of conducting official business of the United Nations." § 2334(e)(3)(A). Discovery is therefore needed to assess defendants' uses of their East 65th Street Townhouse and other facilities in the United States.

     **Third:** Discovery is also needed concerning defendants' U.S. activities, which also constitute consent to personal jurisdiction. § 2334(e)(1)(B)(iii). Defendants maintain a network of agents in the United States who perform services of a "consular" nature and a permanent staff in Manhattan. Certain activities by this staff—including promotional activities—have long been recognized in this Circuit as non-UN activities cognizable for personal jurisdiction purposes. *See, e.g., Klinghoffer v. SNC Achille Lauro*, 795 F. Supp.

# Arnold & Porter

Hon. George B. Daniels
September 10, 2020
Page 5

112, 114 (S.D.N.Y. 1992). Discovery is needed to determine the extent to which defendants have engaged in such activities after the PSJVTA's trigger date.

\* \* \* \* \*

    Accordingly, in view of the Second Circuit's new mandate, Plaintiffs respectfully request that the Court permit plaintiffs to conduct discovery for the purpose of determining the applicability of the PSJVTA to this case.

                                         Respectfully submitted,

                                         Kent A. Yalowitz

Enclosures
cc:  ECF Counsel